**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,[1]<br><br>                  Debtor. | Chapter 11 Case No.<br><br>22-50073 (JAM)<br><br>February 28, 2022 |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S RESPONSE IN OPPOSITION TO DEBTOR'S MOTION TO EXTEND TIME TO FILE SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Pacific Alliance Asia Opportunity Fund L.P. ("PAX") files this opposition to debtor Ho Wan Kwok's ("Kwok") *Motion to Extend Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs* [ECF No. 27] (the "Motion").  For the reasons discussed below, the Motion should be denied.

## INTRODUCTION

Kwok seeks an extension of time to file his Schedules and SOFAs,[2] arguing that his case is "extraordinary."  It is extraordinary, but only because of the remarkable extent of Kwok's prolonged pattern of deceitful and contumacious behavior.  Days before Kwok filed his chapter 11 petition, New York Supreme Court Justice Barry Ostrager entered a final contempt order against Kwok for his continued failure to return his yacht, the Lady May—purchased for €28 million in 2015—to the New York court's jurisdiction.[3]  This contempt is just one of many

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

[2] Schedules of Assets and Liabilities and Statements of Financial Affairs are referred to as "Schedules and SOFAs" throughout this Opposition.

[3] *Declaration of Peter Friedman in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Response in Opposition to Ho Wan Kwok's Motion to Extend Time*, attached hereto as <u>Exhibit A</u> ("Friedman Decl.") at Ex. 1, Decision + Order on Mot. at 10, *PAX v. Kwok,* Index No. 652077/2017 (Feb. 9, 2022, N.Y. Sup. 2022), Dkt No. 1181 ("February 9 Contempt Order").

examples in which Kwok—who invoked the Fifth Amendment in response to all of PAX's post-judgment discovery requests—has flouted court orders and abused the judicial process in an attempt to evade enforcement of the $116 million judgment PAX won against him.  As Justice Ostrager found, "Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[4]  As a result of his elaborate schemes to avoid his creditors, the New York Supreme Court docket amassed over 1,180 entries, "almost all of which involve . . . [Kwok's] efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members."[5]  Kwok's chapter 11 petition is just his latest dishonest gambit.  As detailed below, there are at least three materially false and/or misleading statements in his petition.  Most notably, Kwok's sworn (mis)representation that he has less than $100,000 in assets is completely incompatible with Justice Ostrager's finding just days before that Kwok "holds a beneficial interest in and controls the Lady May."[6]  Second, Kwok falsely stated under penalty of perjury in his petition that none of his affiliates had filed bankruptcy petitions, despite the ongoing chapter 11 proceedings in the Southern District of New York of Genever Holdings LLC ("Genever NY"), a Kwok-related shell entity.  And, third, he listed as his second largest "creditor" an obvious "insider" entity that he set up as part of the maze of family entities he uses to hold his own assets and fund his lifestyle.  In his Initial Debtor Interview with the United States Trustee he admitted that this entity, Golden Spring (New York), pays for "all of his living expenses."[7]

---

[4] *Id* at 1.
[5] *Id*.
[6] *Id*.at 9.
[7] *See* United States Trustee's Objection to Debtor's Motion for Extension of Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs [ECF No. 49] ("UST Objection") at ¶ 12.; *see also* Official Form 104, List of Creditors Who have the 20 Largest Unsecured Claims Against You and Are Not Insiders [ECF No. 20] ("Unsecured Creditors List") at 1 (listing Golden Spring New York).

This Court should not allow Kwok to delay timely filing of his Statements and SOFAs until May 2, 2022, because, as the falsehoods in his petition make clear, Kwok cannot be permitted to drag his feet on filing complete and accurate disclosures.  Creditors need immediate disclosures so they can conduct a fulsome inquiry of the debtor pursuant to 11 U.S.C. § 341, and immediate disclosure will also aid in determining whether there is any purpose to a reorganization for Kwok instead of conversion (or dismissal) of this case.[8]  In any event, Kwok's extremely dubious claim that his assets are worth less than $100,000 undercuts his own assertion that additional time is needed to prepare the requisite schedules.  It cannot be both true that he has virtually no material assets and that he requires significant additional time to identify them.  As for Kwok's counsel's assertions (based on no supporting evidence) that Kwok needs more time to identify potential malpractice suits and defamation cases, court docket searches reveal he has been an active plaintiff over the years already, with precious little to show for it.[9]  In any event, those lawsuits are known and can be scheduled immediately. And, delaying the schedule in light of those claims would in any event be the tail wagging the dog – Kwok owns and controls massive, real assets.  He should focus first on identifying those assets and bringing them into his estate for the creditors' benefit.  Kwok should also be scheduling claims against the myriad shell "corporations, trusted confidants and family members" in which he has parked his substantial assets.[10]  Claims against these entities and individuals are already known to Kwok

---

[8] Kwok's statements (referenced in the UST Objection) that he has no assets, property, bank accounts, and has no income raise very serious questions about the legitimacy of this case. *See* UST Objection at ¶ 12.

[9] For example, Kwok was awarded $100,00 after prevailing on one defamation lawsuit where the defendant called him a "Chinese spy."  *See* Friedman Decl, Ex. 2 Complaint, *Kwok v. Sinclair Broadcast Group, Inc.*, Case No. 9:19-cv-81099 (D. Fla. 2019), ECF No. 1.  Another defamation lawsuit against a large media corporation in which Kwok claimed damages of not less than $50 million was also settled in August 2019.  *See* Friedman Decl., Ex 3, Notice of Settlement, *Kwok v. Sinclair Broadcast Group, Inc.*, Case No. 9:19-cv-81099 (D. Fla. 2019), ECF No. 25.  Given that Kwok asserts he has less than $100,000 in assets, either the settlement was of very limited value or he fraudulently transferred the proceeds away at a time when he owed PAX on his personal guarantee.

[10] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 1.

and they should be identified immediately.  If other potential causes of action for malpractice or defamation materialize (for which there is no evidence of their existence), those can be identified on amended Statements and SOFAs.  Therefore, PAX respectfully requests that this Court deny Kwok the opportunity to further frustrate creditors, and reject his dilatory request for an extension of time to file his Schedules and SOFAs.

## **BACKGROUND**

1.        In 2011, PAX signed a loan agreement with a Kwok-owned entity called Shiny Times.[11]  Kwok personally guaranteed that loan.[12]  Despite multiple repayment extensions and numerous attempts by PAX to settle the debt, Kwok never repaid the loan.[13]

2.        As a result, PAX sued Kwok for breach of contract on April 18, 2017 in New York State Supreme Court (Hon. Barry M. Ostrager presiding).[14]  After nearly four years of litigation, on February 3, 2021, the New York court issued a judgment against Kwok for $116,402,019.57.[15]  PAX then "undertook a year's-long effort to enforce [the] judgment by first identifying and then attempting to levy upon Kwok's assets in the United States."[16]  This was no small task because, as Justice Ostrager found, "Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[17]  And just about a month after the summary judgment decision was issued, on March 11, 2021, Kwok invoked the Fifth Amendment in response to all of PAX's post-judgment discovery requests. Kwok has yet to repay any of the $116,402,019.57 judgment, which (at least until this

---

[11] Friedman Decl., Ex. 4, Decision + Order on Mot. at 2, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 549.
[12] *Id*. at 5-7.
[13] *Id.*
[14] Friedman Decl., Ex. 5, Compl., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2017), ECF No. 2.
[15] Friedman Decl., Ex. 6, Judgment at 2, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 716.
[16] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 1.
[17] *Id*.

bankruptcy filing) accrued 9% post-judgment interest.[18]

3.     One of Kwok's identifiable assets is a yacht named the Lady May, which was purchased in 2015 for €28 million.  On September 30, 2020, Justice Ostrager issued a temporary restraining order preventing Kwok "from making or causing any sale, assignment, transfer or interference with any property in which he has an interest…."[19]  Two weeks later, on October 15, 2020, Justice Ostrager specified that the September 30 order included the Lady May.[20]  But unbeknownst to Justice Ostrager and PAX, the Lady May had already left New York for Florida on or about October 9.[21]  The yacht then went to the Bahamas, and finally to Europe, where PAX understands it remains to this day.[22]

4.     In response to its discovery that the Lady May had left, and remained outside of, New York in violation Justice Ostrager's orders, PAX filed a civil contempt motion[23] and on March 16, 2021, the court issued a conditional order of civil contempt directing Kwok or the boat's registered owner to return the Lady May to the court's jurisdiction in New York by May 15, 2021, and imposing a $500,000 fine for every day thereafter that the yacht remained away.[24]  The New York Appellate Division, First Department, unanimously affirmed the trial court's

---

[18] N.Y. C.P.L.R. 5004 (McKinney's 2022); Friedman Decl., Ex. 4 at 7; *see also* Friedman Decl., Ex. 7, Statement of Material Facts in Support of Pl.'s Mot. for Partial Summ. J., Ex. 23 at KWOK000652, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 455 ("2011 Personal Guarantee").

[19] Friedman Decl., Ex. 8, Order to Show Cause, *PAX v. Kwok*, 652077/2017 (N.Y. Sup. 2020), ECF No. 590 at 1–2.

[20] Friedman Decl., Ex. 9, Decision + Order on Mot. at 1, *PAX v. Kwok*, 652077/2017 (N.Y. Sup. 2020), ECF No. 630.

[21] *See* Friedman Decl., Ex. 1 (February 9 Contempt Order) at 2; *see also* Friedman Decl., Ex. 10, VESSELFINDER, Voyage Analyzer, https://voyage.vesselfinder.com/dcad1f224b32615145e66055d9856504 (last visited Feb. 28, 2022); *see also* Friedman Decl., Ex. 11, Feb. 2, 2022 Hr'g Tr., *PAX v. Kwok.*, Index No. 652077/2017 (N.Y. Sup. 2022), at 84:10–86:12 (Captain Heaslop testifying that although he could not remember the exact day he left, he thought he took the Lady May down to Florida the first week of October, 2020).

[22] As of the morning of February 28, 2022, the Lady May is located in Genoa, Italy.  See Friedman Decl., Ex. 10.

[23] *See* Friedman Decl., Ex. 12, PAX Mem. of Law in Supp. of Mot. for Order of Contempt Against Def. Kwok, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 689; *see also* Friedman Decl., Ex. 13, PAX Mem. of Law in Further Supp. of Mot. For Order of Contempt Against Def. Kwok, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 709.

[24] Friedman Decl., Ex. 14, Decision + Order on Mot., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 728 ("Initial Contempt Order").  In other words, the court provided Mr. Kwok a full two-month grace period to return the yacht and thereby avoid any fine at all.

order, finding that (i) PAX had "established by clear and convincing evidence that [Kwok] had violated a lawful clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to [PAX's] rights…"; and (ii) "the daily fine of $500,000 was intended to strongly encourage [Kwok] to purge himself of the contempt."[25]  Accordingly, the First Department instructed Justice Ostrager to "proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties" before issuing a final contempt order.[26]

5.     Justice Ostrager held that evidentiary hearing on February 2, 2022.  After receiving testimony from seven witnesses, Justice Ostrager concluded that "[t]he testimony adduced at the hearing out of the mouths of [Kwok]'s witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[27]  The court further found that notwithstanding that Kwok's daughter technically holds the yacht's title, "Kwok control[s] the yacht, [and] it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[28]  As a result, Justice Ostrager entered the February 9 Contempt Order, directing Kwok to remit $134,000,000 to PAX by February 16, 2022, among other things, or else run the risk that the court would exercise its full authority under Judiciary Law § 753.[29]

6.     The same day the Contempt Order was entered, Kwok stated his intention, in a public social media posting, to "start an all-out war with the PA[X]" and to flee the United

---

[25] *Pac. All. Asia Opportunity Fund L.P. v. Kwok Ho Wan*, 199 A.D.3d 423, 423 (1st Dep't 2021).
[26] *Id*.
[27] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 4.
[28] *Id*. at 8.
[29] *Id.* at 10.

States.[30]  Kwok also sought to avoid paying the civil contempt fine by seeking an emergency administrative stay of the February 9 Contempt Order pending appeal.  That request was summarily denied, [31] and on the night before his $134 million payment was to become due, Kwok filed this chapter 11 case.[32]

7.      Kwok filed an amended petition over a week after filing his original chapter 11 petition.[33]  Tellingly, neither the original nor amended filing included the value of the Lady May as an asset, despite Justice Ostrager's clear ruling just six days before the bankruptcy filing that "Kwok beneficially owns and controls the Lady May."[34]  Even if Kwok disputes that finding, a complete and truthful petition would have disclosed the value of the yacht to this Court and Kwok's creditors.  Instead, in order to benefit from additional time to avoid making mandatory disclosures, Kwok now seeks a 60-day delay to file his required Schedules and SOFAs. 11 U.S.C. § 521; Fed. R. Bankr. P. 1007(b)–(c).

8.      Given Kwok's prolonged history of contumacious behavior, evading disclosure of valuable assets, and "secret[ing] his assets in a maze of corporate entities and with family members,"[35] this Court should minimize Kwok's time to secrete his assets further by denying Kwok's Motion.

## ARGUMENT

## I.      THE GOVERNING LAW SUPPORTS DENYING KWOK'S MOTION

9.      It is hornbook law that the chapter 11 process is designed to "maximiz[e] the

---

[30] *See* Friedman Decl., Ex. 15, Feb. 15, 2022 Letter from S. Sarnoff to Clerk of the Appellate Division, First Department at 3, *PAX v. Kwok*, Case No. 2022-00609 (N.Y. App. Div. 2022), ECF No. 4; *see also* Miles Kwok (@MilesGuo) Feb. 9, 2022 Post, GETTR, https://gettr.com/post/ptjrkz9237 (last visited Feb. 28, 2022).
[31] Friedman Decl., Ex. 16, Order, *PAX v. Kwok*, Case No. 2022-00609; 2022-00610, (App. Div. 2022), ECF No. 5, at 2.
[32] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1, at 7.
[33] *Amended Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 19.
[34] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 4.
[35] *Id.* at 1.

value of the bankruptcy estate" for the benefit of creditors. *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 986 (2017) (citing *Toibb v. Radloff*, 501 U.S. 157, 163–64 (1991)). Crucial to this objective is the timely and accurate filing of Schedules and SOFAs. In a voluntary case, a debtor is required to file Schedules and SOFAs with, or within 14 days of, the petition. *See* Fed. R. Bankr. P. 1007(c). "The purpose of filing properly completed and timely schedules is to 'furnish the trustee and creditors with detailed information about the debtor's financial condition.'" *In re McDermitt*, No. 05-11710, 2006 WL 1582390, at *3 (D. Vt. May 30, 2006); *see also In re Eldorado Canyon Props., LLC*, 505 B.R. 601, 604 (1st Cir. B.A.P. 2014) ("Bankruptcy schedules serve the important purpose of ensuring that adequate information is available for the trustee and creditors."). Indeed, the "[t]he effective administration of a bankruptcy case" depends on "the filing of complete and accurate schedules within the prescribed time period." *Eldorado Canyon Props., LLC*, 505 B.R. at 604 (emphasis added). Without timely and accurate Schedules and SOFAs, courts, the Office of the United States Trustee, and creditors cannot accurately evaluate a debtor's financial position, nor can they determine whether the bankruptcy petition has been filed in good faith. *See In re Anvil Holdings* LP, 595 B.R. 622, 627–28 (Bankr. W.D.N.Y. 2019) (without accurate and complete financial documents the court and parties could not make sense of the debtor's financial operations and the court was concerned the debtor was acting in bad faith).

10.     Uncertainty respecting these important issues is intolerable as the protections of the Bankruptcy Code, and the concomitant suspension of creditors rights, are effective immediately upon filing a petition. *See* 11 U.S.C. § 362; *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) ("The stay is effective immediately upon the filing of the petition."). Creditors cannot be left in limbo, without the ability to assess their rights against a

debtor, while their rights and remedies outside of bankruptcy are placed on hold.  And courts do not permit debtors to enjoy the protections of the Bankruptcy Code without timely adhering to the duties of disclosure.  *See* 9 Collier on Bankruptcy ¶ 1007.03 (16th ed. 2021) ("If the schedules, statements, or other documents are not filed on time, the United States trustee may move to dismiss the case"); *In re Mutty*, No. 04-10634, 2004 WL 2647705, at *7 (Bankr. D. Vt. Nov. 19, 2004) (dismissing case for failure to file accurate schedules with good faith and candor); *Eldorado Canyon Properties*, 505 B.R. at 604–05 (affirming dismissal of bankruptcy case for failure to timely file Schedules and SOFAs).  As one court in this Circuit noted:

> the benefits received by an honest debtor in a bankruptcy case, including a discharge of all dischargeable debts, a 'fresh start,' are extraordinarily disproportionate to the few demands and expectations placed upon a debtor by the Bankruptcy Code and Rules.  One of these few, but very important duties, which is seemingly easy for any debtor, even a consumer or typical individual debtor to perform, is to ensure that all of their assets are properly scheduled.

*In re Ptasinski*, 290 B.R. 16, 26 (Bankr. W.D.N.Y. 2003).  That court emphasized that debtors and their attorneys must ensure that schedules are "complete and accurate to the best of the debtor's knowledge and information" because the protections of the Bankruptcy Code are not available to those who "play fast and loose with their assets or with the reality of their affairs." *Id.* at 26–27 (citing *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987)).

## II.   KWOK'S REQUEST FOR ADDITIONAL TIME SHOULD BE DENIED GIVEN THE "EXTRAORDINARY" CIRCUMSTANCES PRESENTED HERE

11.   Kwok's "extraordinary" behavior raises numerous red flags, and weighs strongly against his extension request.  Justice Ostrager's February 9 Contempt Order chronicles Kwok's long history of flagrant disregard for court orders.[36]  Even so, Kwok has now upped his "gamesmanship, dissembling, and deceit."[37]  The same day that Justice Ostrager issued the

---

[36] Friedman Decl., Ex. 1 (February 9 Contempt Order).
[37] Friedman Decl., Ex. 14 (Initial Contempt Order) at 2.

February 9 Contempt Order (less than three weeks ago), Kwok publicly announced his intention to "start an all-out war with the PA[X]" and flee the country.[38]  And one week later, on the eve of the February 9 Contempt Order compliance date, Kwok filed for bankruptcy.

12.      As previewed above, Kwok's bankruptcy petition is materially false and misleading in at least three respects. First, the sworn representation by Kwok — a self-proclaimed billionaire — that his assets are valued between $50,001 and $100,000 is belied by Justice Ostrager's finding that Kwok beneficially owns and controls the Lady May.  It also directly undercuts any claim that he needs significantly more time to identify those (purportedly non-existent) assets. This is only bolstered by Kwok's statements to the Office of the United States Trustee that Kwok has no bank accounts, credit cards, is not employed, does not directly own any real estate, cars and does not insure any assets.[39]

13.      Second, Kwok misrepresented that he had no affiliates in bankruptcy proceedings. The one asset that Kwok admits owning is a holding company established in the British Virgin Islands called Genever Holdings Corporation ("Genever BVI").[40]  Genever BVI, in turn, owns 100 percent of the voting equity of Genever NY,[41] a New York entity that owns a luxury, full-floor apartment at the Sherry Netherland Hotel in New York City that Kwok bought for nearly $70 million in March 2015 and in which he has lived.[42]  Genever NY filed a chapter 11 case in the Southern District of New York in late 2020 on the heels of PAX winning summary judgment

---

[38] *See* Friedman Decl., Ex. 15 at 3.
[39] UST Objection at ¶ 12.
[40] Friedman Decl., Ex. 17, Sept. 22, 2021 Hr'g Tr. at 16:8–12, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2021),.
[41] Friedman Decl., Ex. 18,  Def. Kwok's Resps. & Objections to Pl. [PAX]'s Third Set of Interrogatories, *PAX v. Kwok*, Index No. 652077/2017, ECF No. 756 at 9.
[42] *See* Friedman Decl., Ex. 19, Exhibit 11 to PAX's Mem. of Law. In Supp. of Mot. for Pre-J. Attachment at SN0036, Index No. 652077/2017 (N.Y. Sup. 2018), ECF No. 256 (Executed Contract of Sale listing "Genever Holdings LLC" as the purchaser); *see also id.* at SN 0047 (Purchase Application listing "'Miles' Kwok Ho Wan (Genever Holdings LLC)" as the applicant).

against Kwok.[43]  Because Kwok indirectly controls the voting equity of Genever NY, it is his

affiliate under 11 U.S.C. § 101(2)(B).  Kwok's failure to list that proceeding was thus dishonest.

14.     Third, and equally disturbing, is Kwok's listing of Golden Spring New York

("GSNY") in his top 20 "non-insider" creditor list.  *See* Unsecured Creditors List, [ECF No. 20]

at 1; 11 U.S.C. § 101(31)(A).  The instructions on the chapter 11 petition form are clear that only

*non-insiders* should be listed in the top 20 creditors.  Kwok "set[] up [GSNY]. . .  by transferring

funds from one of [his] accounts at UBS to Golden Spring New York's JPMorgan Chase bank

account."[44]  After funding GSNY with his own money, Kwok has used it as his personal piggy

bank to pay virtually all of his multi-million dollar personal living, and legal, expenses.[45]

Indeed, in addition to Justice Ostrager,[46] at least one federal court has also found that GSNY is

Kwok's company that he maintains as a "family office."[47]  And Kwok not only listed GSNY as

one of his top 20 non-insider creditors, but in the same sworn petition, he listed GSNY and its

address as "[w]here [he] live[s]."[48]  These facts show that GSNY is anything but an arm's-length

creditor and easily meets the test of non-statutory insider.[49]  Thus, Kwok's listing of GSNY as a

non-insider purported creditor is outright deceptive and fraudulent.[50]

15.     In addition to these above-described material misstatements and omissions,

---

[43] *See In re Genever Holdings LLC*, Case No. 20-12411-jlg (Bankr. S.D.N.Y. 2020).
[44] Friedman Decl., Ex. 20, Affidavit of Kwok Ho Wan in Supp. of Pl.'s Opp. to Def's Mot. to Dismiss the Compl., *Ace Decade Holdings Ltd. v. UBS AG*, Index No. 653316/2015 (N.Y. Sup. 2016), ECF No. 27, at ¶ 36.
[45] Friedman Decl., Ex. 21, May 27, 2021 Hr'g Tr. at 9:25–10:3, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 833 ("It's quite undisputed that Golden Springs has funded seven-figure payments to facilitate Mr. Kwok's lifestyle, and Mr. Kwok leads a rather extravagant lifestyle").
[46] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 5, 9.
[47] Friedman Decl., Ex. 22, Findings of Fact and Conclusions of Law at 2, *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, Case No. 1:18-cv-02185-LJL (S.D.N.Y. 2021), ECF No. 372.
[48] Amended Voluntary Petition, ECF No. 19 at 2 (in response to "Where you live," Kwok stated "c/o Golden Spring (New York) Ltd., 162 East 64th Street, New York, NY 10065")
[49] Even on Kwok's version of events, GSNY is purportedly owned by a Hong Kong company that—like other companies in which Kwok shields his assets—is owned by Kwok's son, Qiang Guo.  Friedman Decl., Ex. 23, Kwok Dep. Tr., *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 785 at 63:17–18.
[50] As PAX will demonstrate at the appropriate time, the same is true for "insider" Lamp Capital, a smaller top 20 purported "creditor" (technically owned by his son) that Kwok has listed on his schedule.

Kwok's penchant for using his family members to shield his assets[51] creates an additional concern.  Kwok stated an intention to seek debtor-in-possession financing and that he "will need the support of his family members to fund an exit from [C]hapter 11."[52]  Although the appropriateness of debtor-in-possession financing is not the subject of this filing, the notion that Kwok cannot file Statements and SOFAs until he engages in more shuffling of money around among family members under the guise of arms-length "loans" raises the very serious concern that he intends to use his ***own money*** to leapfrog PAX and other creditors in priority, thereby effectively giving himself an unlawful preference and first claim to assets of the estate.  These anticipated machinations provide no basis for granting the Motion or delaying disclosures.

16.    Taken together, Kwok's protracted pattern of deception and misbehavior precludes PAX — or this Court — from having any confidence in his *bona fides* in filing for bankruptcy, or his professed "clear intention of satisfying his creditors' allowed claims in full."[53] His threat to "start an all-out war with the PA[X]" and to flee the United States on the same day that Justice Ostrager issued the February 9 Contempt Order only underscores what Justice Ostrager deemed Kwok's "utter contempt for the Court and the judicial process"[54] and the urgent need for his prompt compliance with the Bankruptcy Rules.  There is no reason to believe this bankruptcy filing was a watershed moment for Kwok that signals a change of heart after somber and careful reflection.  It was just the latest card Kwok had to play after years of delay and obfuscation, and he was only forced to play it after pushing Justice Ostrager to the point of all but threatening to issue an arrest warrant if he failed to comply with the February 9 Contempt

---

[51] *See* Friedman Decl., Ex. 1 (February 9 Contempt Order) at 1 (referencing Kwok's "efforts to avoid and deceive his creditors by parking his substantial assets with a series of corporations, trusted confidants, and family members….").
[52] Debtor's Motion to Extend Time at ¶¶ 10, 12.
[53] *Id* at ¶ 12.
[54]  Friedman Decl., Ex. 1 (February 9 Contempt Order) at 4.

Order.

## RESERVATION OF RIGHTS

Notwithstanding anything in this Opposition, PAX reserves all rights, claims and defenses with respect to these chapter 11 proceedings, including but not limited to the right to contest venue, seek dismissal of the case, and any other remedy.

## CONCLUSION

PAX is justifiably very concerned that this forum is only the latest one that Kwok will seek to exploit in his ongoing effort to further obstruct and delay PAX's legitimate judgment collection efforts.  Accordingly, Kwok's motion for an extension of time should be denied, and this Court should require Kwok to timely file the complete and accurate Schedules and SOFAs required by the Bankruptcy Code.

Dated:  Hartford, Connecticut
        February 28, 2022

**Pacific Alliance Asia Opportunity Fund L.P.**

By: */s/  Patrick M. Birney*
   Patrick M. Birney (CT No. 19875)
   Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone:  (860) 275-8275
Facsimile:  (860) 275-8299
E-mail: pbirney@rc.com
      asmith@rc.com

Peter Friedman (admitted *pro hac vice*)
Stuart M. Sarnoff (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2293
E-Mail: pfriedman@omm.com
      ssarnoff@omm.com