# **<u>EXHIBIT A</u>**

Friedman Declaration

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| HO WAN KWOK[1] | 22-50073 (JAM) |
| Debtor. | February 28, 2022 |

**DECLARATION OF PETER FRIEDMAN IN SUPPORT PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S RESPONSE IN OPPOSITION TO HO WAN KWOK'S MOTION TO EXTEND TIME TO FILE SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

I, Peter Friedman, declare:

1.      I am an attorney admitted to practice law in the State of New York and Washington, D.C. and am a partner at the law firm of O'Melveny & Myers, 7 Times Square, New York, NY 10036, counsel for Pacific Alliance Asia Opportunity Fund L.P. ("PAX"). I respectfully submit this Declaration in support of PAX's Response in Opposition to Ho Wan Kwok's Motion to Extend Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs.

2.      Attached as Exhibit 1 is a true and correct copy of the February 9, 2022 Decision and Order of Justice Ostrager in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2022), ECF No. 1181.

3.      Attached as Exhibit 2 is a true and correct copy of the August 2, 2019 Complaint, in *Kwok v. Sinclair Broadcast Group, Inc.*, Case No. 9:19-cv-81099 (D. Fla. 2019), ECF No. 1.

4.      Attached as Exhibit 3 is a true and correct copy of the November 11, 2019, Notice

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

of Settlement, in *Kwok v. Sinclair Broadcast Group, Inc.*, Case No. 9:19-cv-81099 (D. Fla. 2019), ECF No. 25.

5.       Attached as Exhibit 4 is a true and correct copy of the September 15, 2020 Decision and Order in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 549.

6.       Attached as Exhibit 5 is a true and correct copy of the Complaint dated April 18, 2017, in *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 2.

7.       Attached as Exhibit 6 is a true and correct copy of the February 3, 2021 Judgment in *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 716.

8.       Attached as Exhibit 7 is a true and correct copy of the Personal Guarantee, filed as Exhibit 23 to PAX's Statement of Material Facts in Support of PAX's Motion for Partial Summary Judgment, at KWOK000652, in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 455.

9.       Attached as Exhibit 8 is a true and correct copy of the September 30, 2020 Order to Show Cause in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 590.

10.      Attached as Exhibit 9 is a true and correct copy of the October 15, 2020 Decision and Order in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 630.

11.      Attached as Exhibit 10 is a true and correct copy of screenshots from the website https://voyage.vesselfinder.com/dcad1f224b32615145e66055d9856504 (last visited on Feb. 28, 2022).

12.      Attached as Exhibit 11 is a true and correct copy of excerpts from a transcript of the February 2, 2022 Evidentiary Hearing before Justice Ostrager in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2022).

13.     Attached as Exhibit 12 is a true and correct copy of PAX's Memorandum of Law in Support of Motion for Order of Contempt dated December 24, 2020, in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 689.

14.     Attached as Exhibit 13 is a true and correct copy of PAX's Memorandum of Law in Further Support of Motion for Order of Contempt dated January 27, 2021, in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 709.

15.     Attached as Exhibit 14 is a true and correct copy of the March 16, 2021 Decision and Order in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 728.

16.     Attached as Exhibit 15 is a true and correct copy of a letter from S. Sarnoff to the Clerk of the Appellate Division, First Department, dated February 15, 2022 in *PAX v. Kwok, et al.*, (Case Nos. 2022-00609, 2022-00610; NY Co. Clerk's Index No. 652077/2017).

17.     Attached as Exhibit 16 is a true and correct copy of the February 15, 2022 Order of the Appellate Division in *PAX v. Kwok*, Case Nos. 2022-00609; 2022-00610, (1st Dep't 2022) ECF No. 5.

18.     Attached as Exhibit 17 is a true and correct copy of excerpts from a transcript of the September 22, 2021 hearing before Justice Ostrager in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021).

19.     Attached as Exhibit 18 is a true and correct copy of Kwok's Responses and Objections to PAX's Third Set of Interrogatories, dated December 4, 2020, in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021).

20.     Attached as Exhibit 19 is a true and correct copy of an Executed Contract of Sale, filed as Exhibit 11 to PAX's Memorandum of Law in Support of Motion for Pre-Judgment Attachment, in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 256.

21.    Attached as Exhibit 20 is a true and correct copy of the Affidavit of Kwok Ho Wan in Support of Plaintiff's Opposition Motion to Dismiss the Complaint dated February 5, 2016, in *Ace Decade Holdings Ltd. v. UBS AG*, Index No. 653316/2015 (N.Y. Sup. 2016), ECF No. 27.

22.    Attached as Exhibit 21 is a true and correct copy of excerpts from a transcript of the May 27, 2021 hearing before Justice Ostrager in *PAX v. Kwok, et al.*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 833.

23.    Attached as Exhibit 22 is a true and correct copy of the June 22, 2021 Findings of Fact and Conclusions of Law in *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC, No.* 1:18-cv-02185-LJL (S.D.N.Y. Jun. 22, 2021), ECF No. 372.

24.    Attached as Exhibit 23 is a true and correct copy of excerpts of the October 3, 2018 Deposition of Miles Kwok filed as Exhibit 5 to Memorandum of Law in Support of PAX's Order to Show Cause (I) to Compel Compliance With Article 52 Subpoena Served on Nonparty Golden Spring (New York) Limited, and (II) to Modify the Court's October 15, 2020 Order in *PAX v. Kwok et al*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 785.

Dated: February 28, 2022
New York, New York

Respectfully submitted,

*/s/ Peter Friedman*
Peter Friedman
pfriedman@omm.com
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorney for Pacific Alliance Asia
Opportunity Fund L.P.*

# EXHIBIT 1

Case 22-50073    Doc 50-1    Filed 02/28/22    Entered 02/28/22 21:19:53    Page 7 of 73

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:    **HON. BARRY R. OSTRAGER**        PART        **IAS MOTION 61EFM**

*Justice*

---------------------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER: HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION,

Defendants.

| INDEX NO. | 652077/2017 |
|---|---|
| MOTION DATE | |
| MOTION SEQ. NO. | 019 |

**DECISION + ORDER ON MOTION**

---------------------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

In this 2017 case with 1,180 docket entries – almost all of which involve defendant Kwok Ho Wan's ("Kwok") efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members -- this Court is called upon to determine whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has met the burden of establishing that the Court should enter a final Order of Civil Contempt against Kwok. For the reasons that follow, this Court is simultaneously issuing a final Order of Civil Contempt.

PAX secured a judgment against Kwok in the sum of $116,402,019.57 on February 3, 2021 (NYSCEF Doc. No. 716). Thereafter, PAX undertook a year's long effort to enforce its judgment by first identifying and then attempting to levy upon Kwok's assets in the United States. PAX encountered difficulty identifying assets over which Kwok exercised control because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members. This scheme has enabled Kwok to assert that he has no assets despite his lavish lifestyle, which plaintiff has catalogued with material from social

media clippings, photographs and videotapes showing Kwok living large and boasting of his

wealth, expensive homes, private plane, and yacht. As noted in the transcript of proceedings of

February 2, 2022, this evidence is of little probative value, as the witnesses sponsoring this

evidence have no first-hand knowledge of the authenticity of this "evidence" other than that it is

accessible on various websites.

On February 2, 2022, this Court held an evidentiary hearing at which seven witnesses

submitted direct testimony by affidavit and were made available for cross-examination. The

hearing followed protracted proceedings by PAX to locate and levy upon assets owned by

defendant Kwok. Those proceedings established, among other things, that Kwok exercised

dominion and control over a yacht called the Lady May and resulted in a series of orders

restraining Kwok and/or the registered owners of the yacht called Lady May from removing the

Lady May from the Court's jurisdiction. The first such Order was issued on September 30,

2020, as described in detail *infra,* and was followed by an October 15, 2020 Order that restrained

"Mr. Kwok and/or the registered owners of . . . the yacht, the 'Lady May'" from leaving the

jurisdiction. (NYSCEF Doc. No. 630). As detailed *infra*, Kwok spent much of July, August and

September of 2020 on the Lady May. Contemporaneously with the proceedings resulting in the

September 30 and October 15, 2020 restraining Orders, Kwok and his cohorts made arrangement

for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas. On

March 16, 2021, the Court issued a conditional order of civil contempt which directed that if

Kwok failed to return the Lady May to the jurisdiction of this Court by May 31, 2021, he would

be subject to a $500,000.00 fine for each day that the Lady May remained outside the jurisdiction

of this Court.

The Appellate Division, First Department, affirmed this Court's order holding Kwok in

conditional civil contempt, finding that "the daily fine of $500,000.00 was intended to strongly

encourage defendant to purge himself of the contempt, which, despite being permitted to accomplish, he has shown no interest in doing. . .” NYSCEF Doc. No. 953, 199 AD3d 423 (2021). The Appellate Division further held:

> The motion court acted within its discretion in holding defendant in civil contempt, as plaintiff established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015]; Judiciary Law § 753). … The motion court is instructed to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties.

Pursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht. Kwok failed to testify at the February 2, 2022 hearing, having previously invoked his Fifth Amendment right to decline to testify or respond to discovery requests relating to the Lady May in response to PAX's asset discovery efforts. PX 27, 28, 29, 30.[1] This invocation of the Fifth Amendment notwithstanding, Kwok is an active litigant in multiple fora and he has given prior testimony in this and other proceedings.

Kwok also filed a complaint in this court captioned *Guo Wengui a/k/a Miles Kwok v Hong Zeng*, 157025/2020, which references a blog post from Freebeacon.com dated September 8, 2017 in which Kwok complains about "several incidents involving *his* 152-foot motor yacht, Lady May..."  (Complaint ¶ 8, NYSCEF Doc. No. 001) ("the Zeng Complaint").  The Zeng Complaint describes Kwok as an "outspoken critic of the CCP" who has gone to great "lengths to expose the rampant corruption within the CCP and the Chinese government."  The *Washington Post* reported that a former advisor to President Trump, Steve Bannon, was arrested in 2020 while on board the Lady May, and described Mr. Bannon as a friend and business

---

[1] "PX" refers to Plaintiff's Trial Exhibits.

associate of Kwok, "a vocal online critic of the Chinese government who was once close with that country's intelligence service but is now wanted by authorities in Beijing on charges of fraud, blackmail and bribery." Other news outlets have reported that Mr. Bannon utilized Kwok's private jet on more than one occasion to travel to political rallies.

The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process.

Kwok once was the sole shareholder of Hong Kong Investments Limited ("HK International"). The testimony adduced at the hearing established that in 2014 Kwok transferred a 100% interest in HK International to one Qu Guo Jiao for no consideration. Ms. Qu was a trusted business associate of the Kwok family. Thereafter, Kwok fled China and on February 23, 2015, HK International purchased the Lady May for £ 28 million GBP. No testimony adduced at the hearing established the source of funds to purchase the Lady May, but the uncontradicted testimony of Kwok's daughter Mei Guo established that Ms. Qu did not provide the funds to purchase the yacht. Tr. 44.[2] Consequently, a reasonable inference is that Kwok provided the funds to HK International which were used to purchase the yacht. It is undisputed that Ms. Qu transferred the ownership of the Lady May to Kwok's daughter, Mei Guo, on or around June 17, 2017, for $1 or no consideration. Tr. 47. According to Ms. Guo's affidavit (NYSCEF Doc. No. 1162), Ms. Guo ultimately transferred ownership of the Lady May to the current title holder HK International Funds Investments (USA) Limited, LLC ("HK USA"). Ms. Guo further avers that she is the sole owner of HK USA, although all of the multi-million dollar annual expenses for the

---

[2] "Tr." refers to the transcript of the evidentiary hearing, efiled at NYSCEF Doc. No. 1179.

4

Lady May, including fuel, maintenance, and the captain and crew are paid by Golden Spring

(New York) Ltd. ("Golden Spring."), which is allegedly the Kwok family office.

At the hearing Ms. Guo testified that her brother had bought the Lady May for her.  Tr.

46.  The Court cannot credit this testimony as there is no evidence that Ms. Guo's brother was

involved with the corporate transactions leading to Ms. Guo's acquisition of the title to the yacht.

And, indeed, in response to a question from the Court, Ms. Guo acknowledged that her brother

was not involved in any of the transfers that occurred before she acquired the yacht.  Tr. 47.

Other testimony adduced at the hearing established that Kwok was repeatedly on the

yacht every summer and that Ms. Guo was infrequently on the yacht.  Trial Tr. 88:8-20.  The

Lady May's captain testified that Kwok was aboard the yacht for a significant portion of the

months of July, August and September in 2020 and that this was consistent with his usual

practice in the summer.  Trial Tr. 87:24-88:7.  Subsequent to this Court's September 30, 2020

restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for

repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of

Golden Spring.  Ms. Guo acknowledged that she was aware of both this Court's September 30,

2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady

May be returned to the Court's jurisdiction  Tr. 55; 57-60; 62.

Ms. Guo testified that on the one hand, she directed the Lady May's itinerary but, on the

other hand, testified that security for Kwok was such a concern that there would be no

memorialization of any itinerary.  Tr. 52.  She further testified that when her father was on the

yacht unaccompanied by her he had the freedom to choose wherever he wanted to go.  Tr. 50.

The fundamental issue, however, is who directed the yacht to be removed from this Court's

jurisdiction in October 2020.  Ms. Guo claims that in early October 2020 she no longer wished to

use the yacht and relayed that instruction to Golden Spring which, in turn, relayed her directive to the then captain of the ship, Captain Heaslop. Tr. 53.

Upon further questioning, Ms. Guo admitted that it was Golden Spring that advised her that the yacht needed to be moved to a warmer place. Tr. 55. Ms. Guo then repeated her retracted testimony that her brother had given her the yacht, and she stated that her brother is the sole owner of Golden Spring. Tr. 56. This testimony is not credible given that on September 30, 2020 the Court entered a temporary restraining order restraining Kwok

> . . . from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, or from paying over or otherwise disposing of any debt now due or thereafter coming due to him, subject to the exceptions set forth in CPLR 5222 and in the ordinary course.

NYSCEF Doc. No. 591. Significantly, Captain Heaslop, the then Captain of the Lady May, testified that Mr. Kwok told Captain Heaslop that Kwok would no longer be a guest on the Lady May "a few days" before the Lady May departed for Florida in early October 2020 (and apparently after the issuance of this Court's September 30, 2020 Order). Tr. 89. Captain Heaslop also contradicted Ms. Guo's testimony that Ms. Guo gave Captain Heaslop instructions about the yacht's movement. Tr. 94.

Ms. Guo also acknowledged having subsequently read the Court's March 16, 2021 Order requiring the Lady May to be returned to the Court's jurisdiction by May 31, 2021 (NYSCEF Doc. No. 728). She further acknowledged that she had discussed the Order with her lawyer (whose services were paid for by Golden Spring) and that she had *ignored* the Order.

Russell Stockil, the Yacht Management Director for Yachtzoo SARL, testified that his company had a management contract with HK USA dated May 2021 and that he communicated with HK USA and Golden Spring, but never with Ms. Guo. Tr. 78. This was also the testimony of successor Captain Momchil Ivanov. Tr. 82. In short, Ms. Guo's testimony that she owns and

controls the Lady May cannot be credited in any respect.  Ms. Guo appears to be a woman in her

twenties, has introduced no evidence that she exercised dominion and control of the Lady May,

and provided no confirmation that she came into possession of the Lady May, other than as a

ruse to shield the Lady May from being levied upon by her father's creditors.

The machinations associated with the shell game Kwok has orchestrated with respect to

the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken

during the five years this litigation has been pending, which is why there are 1,180 docket entries

in this case.

The Court has the authority to hold Kwok in civil contempt under Judiciary Law

§ 753—and "to punish [him], by fine and imprisonment"—where, as here, the Court "expressly

find[s] that [Kwok's] actions were calculated to or actually did defeat, impair, impede, or

prejudice the rights or remedies of a party to a civil proceeding." *Oppenheimer v. Oscar Shoes,

Inc.*, 111 A.D.2d 28, 28 (1st Dep't 1985) (citing N.Y. Judiciary Law § 753).   Section 753 sets

forth four requirements:

> [T]o find that contempt has occurred in a given case, it must be determined that
> [1] a lawful order of the court, clearly expressing an unequivocal mandate, was in
> effect. [2] It must appear, with reasonable certainty, that the order has been
> disobeyed . . . [3] Moreover, the party to be held in contempt must have had
> knowledge of the court's order, although it is not necessary that the order actually
> have been served upon the party . . . [4] Finally, prejudice to the right of a party to
> the litigation must be demonstrated.

*Fleetwood Fin. v Walter J. Dowd, Inc.*, 2016 WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016)

(citing *McCormick v Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)).   The

testimony adduced in this case satisfies each element of this standard.   Indeed, the Appellate

Division intimated as such.  *See Pacific Alliance Asia Opportunity Fund L.P.*, 199 A.D.3d 423

(1st Dep't 2021) ("[PAX has] established by clear and convincing evidence that [Kwok] violated

Case 22-50073    Doc 50-1    Filed 02/28/22    Entered 02/28/22 21:19:53    Page 14 of 73

a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights. . .").

The extent of PAX's ongoing "prejudice" turns on whether PAX has demonstrated that it could ultimately levy on the Lady May to satisfy its now centi-million dollar judgment against Kwok.  Under CPLR § 5225, "money or other personal property" is leviable where the debtor holds the requisite "interest." To satisfy this requirement, "[i]t is not necessary that the judgment debtor have legal title to the property; a beneficial interest is sufficient."  Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.09. "A beneficial interest is '[a] right or expectancy in something . . . as opposed to legal title to that thing.'"  *Peterson v. Islamic Rep. of Iran*, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing Black's Law Dictionary, Interest (9th ed. 2009)).  Kwok has much more than a beneficial interest in the Lady May.  Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht.

The key factor is whether "the property benefitted [the beneficial owner] as if he had received the property directly." *Id*. (quoting *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010); *see also Gliklad v. Chernoi*, 129 A.D.3d 604 (1st Dep't 2015) (upholding rejection of the judgment debtor's contention that he no longer held an interest in property because he transferred his interest to his daughters); *Colfin Bulls Funding B, LLC v. Ampton Invs., Inc*., 112 N.Y.S.3d 868 (Table), at *2, 6 (N.Y. Sup. Ct. 2018) (granting judgment creditor's turnover motion notwithstanding judgment debtor's assertion that he transferred property to a corporation, because even if true, the evidence showed that he "retained control and/or an interest" in the property).

The evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May. In the latter connection, the Court takes notice of the filing of the Zeng case and draws an inference from all the record facts that Kwok has taken extraordinary steps to shield the yacht from his creditors. Moreover, Kwok's "family office" funds the yacht's day-to-day operations and maintenance.

The Court finds that Ms. Guo's testimony was not only internally inconsistent and dissembling, but also significantly undermined by the testimony of Captains Heaslop and Ivanov and Mr. Stockil, who stated that they have never taken yacht-related direction from Ms. Guo in the four and-a-half years that she directly or indirectly held title to the yacht.

In addition, it is established New York law that a party's invocation of the Fifth Amendment in a civil proceeding "may form the basis of an adverse factual inference." *DeBonis v. Corbisiero*, 155 AD2d 299, 300 (1st Dep't 1989). An adverse inference may be applied whenever a factual determination is necessary or permitted, including in the context of contempt motions. *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *10 (S.D.N.Y. Dec. 19, 2013), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *LiButti v. United States*, 107 F.3d 110, 120–25 (2d Cir. 1997).

Similarly, under the missing witness rule, "[a] trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify." *Crowder v. Wells & Wells Equip., Inc.*, 11 A.D.3d 360, 361 (1st Dep't 2004) (applying adverse inference where defendant who failed to appear "would be knowledgeable about a material issue raised by the evidence").

PAX is entitled to an adverse inference under both of these avenues. Kwok has invoked his Fifth Amendment right against self-incrimination in response to PAX's post-judgment discovery, including in response to requests specifically about the Lady May. While Kwok

9

argues that an adverse inference is not appropriate here because "[o]nly after a threshold showing that a piece of evidence is authentic is a party obligated to respond to it," this contention fails of its own weight. PAX has proffered substantial admissible evidence that Kwok has the requisite beneficial interest in and control of the Lady May. *See People v. Primo*, 96 N.Y.2d 351, 753 N.E.2d 164 (2001) (explaining that evidence is probative if it "tends to prove the existence or non-existence of a material fact, *i.e.*, a fact directly at issue in the case").

As of February 7, 2022, the Lady May has remained outside the jurisdiction of the Court for 268 days. Based on the daily fine of $500,000 imposed by this Court and affirmed by the Appellate Division, the resultant fine would amount to $134,000,000.00, which is more than PAX's outstanding judgment of nearly $120 million and a multiple of the GBP £ 28 million purchase price of the Lady May.  Nevertheless, if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law.  Kwok must remit $134,000,000.00 to PAX within five business days of the service of this Court's Order with Notice of Entry. The Court is prepared to exercise its full authority under Judiciary Law § 753 in the event the fine is not timely paid.

Dated:  February 9, 2022

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | CASE DISPOSED | | X NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- |
| APPLICATION: | X GRANTED | DENIED | GRANTED IN PART | OTHER |
| | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

10

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**WENGUI GUO**
**a/k/a MILES KWOK**                                      Civil Action No.:

**Plaintiff,**

**v.**

**SINCLAIR BROADCAST GROUP, INC., and**
**JAY O'BRIEN**

**Defendants.**

Plaintiff, Guo Wengui a/k/a Miles Kwok ("Guo" or "Plaintiff"), for his complaint and action for money damages against Defendants Sinclair Broadcast Group, Inc. and Jay O'Brien, alleges as follows:

### PARTIES

1.      Plaintiff Guo is a Hong Kong citizen currently residing in New York, New York. Plaintiff left China at the end of 2014 and is currently seeking political asylum in the United States. Guo has been a longstanding critic of corruption within elements of the Chinese government and a leading advocate for government reform in China.

2.      Upon information and belief, Defendant Sinclair Media Group, Inc. (hereinafter, "Sinclair") is a publicly traded telecommunications conglomerate, operating within and broadcasting from the state of Florida, with offices at -- and broadcasting from -- 1100 Fairfield Drive, West Palm Beach, Florida.

3.      Defendant Jay O'Brien is a reporter for WPEC (hereinafter, "CBS12"), a local CBS television affiliate based in West Palm Beach which is owned and operated by Defendant Sinclair.

4.      Upon information and belief, Defendant O'Brien is an employee of Defendant Sinclair.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over this matter because Plaintiff is a foreign citizen residing in New York and Defendant Sinclair Broadcast Group, Inc. is a United States Corporation with significant affiliates and offices within the State of Florida. Further, upon information and belief, Defendant Jay O'Brien is a U.S. Citizen and resident of Florida who is employed by Defendant Sinclair. The damages sought in this matter are in excess of $75,000.00.

6.      Venue is proper in this Court because Defendant Sinclair has offices in Florida, Defendant O'Brien is a resident of Florida, and the broadcast containing the defamatory statements set forth herein was broadcast from Florida.

## BACKGROUND FACTS

7.      Guo is a Hong Kong citizen who fled from China for fear of political persecution. Guo has been the most outspoken and vitriolic critic of the CCP.

8.      Guo's willingness to air publicly his political views towards the CCP and Chinese government, has led to a backlash by senior members of the CCP and Chinese government towards Guo and his family, including, but not limited to, the detention and arrest of Guo's family members and colleagues; and the freezing of Guo's assets.

9.      Two brothers and a niece of Guo were sentenced to imprisonment of three years, three years and five months, and two years and six months respectively. These family members remain imprisoned in China.

10.     Because of the CCP's political persecution, Guo was forced to leave China and is seeking political asylum in the U.S.

11.     Since his exile, the CCP has seized more than USD30 billion in cash and assets owned by Guo's family and himself.

12.     Because of Guo's whistleblower actions, China has gone to extensive lengths to silence Guo and have him extradited back to China. These efforts have included:

   a.   Requesting that Interpol issue a "red notice" for his arrest based on false accusations;

   b.   requesting the chief executives of several large U.S. corporations reach out to President Trump in an effort to convince him to have Guo extradited;

   c.   hiring Elliot Broidy, a lobbyist and former chairman of the Republican National Committee, to peddle his influence and convince the Trump Administration to extradite Guo in exchange for a success fee in the millions of dollars payable to Broidy; and

   d.   using social media to drum up fake accusations about Guo.

13.     In another effort to silence Guo, in May 2017, the CCP secretly sent Liu Yanping, the then Secretary of Commission for Discipline Inspection, Ministry of National Security of China, along with three other agents to New York City to speak with Guo. In exchange for Guo's silence and return to China, the CCP promised to unfreeze his assets and release his family members from jail.

14.     The congressional U.S. China Economic and Security Commission found that Guo has been the target of an unprecedented Chinese government disinformation campaign to discredit Guo.[1]

---

[1] https://www.uscc.gov/sites/default/files/Annual_Report/Chapters/Chapter%203%2C%20Section%205%20-%20China%27s%20Domestic%20Information%20Controls%2C%20Global%20Media%20Influence%2C%20and%20Cyber%20Diplomacy_0.pdf

15.     To counter this unprecedented disinformation campaign, Guo has taken to U.S. courts in reliance on the rule of law to challenge those who seek to discredit him.

16.     To wit, Guo has now successfully sued numerous individuals for defamation for calling Guo a "spy" for the CCP; a "fraud"; a "liar" and other nefarious terms.

17.     Specifically, Guo sued Xia Yeliang in the United States District Court for the Eastern District of Virginia, for defamation and defamation *per se* because Xia stated publicly that Guo a "spy," "rapist", "fraud", "liar", and "swindler."[2] (the "Xia Litigation"). A unanimous jury found that these allegations – i.e. that Guo is a Chinese "spy" were false, defamatory and defamatory *per se*, and awarded Guo $100,000 as damage to his reputation.

18.     Guo also sued Li Hongkuan in the United States District Court for the District of Maryland for defamation and defamation *per se* because Li made multiple public statements that Guo is a "rapist, is a *communist spy* … and is an organized crime leader" (the "Li Litigation"). The Court found that these statements were false, defamatory and defamatory *per se*.[3]

## CBS12'S DEFAMATORY NEWS BROADCAST

19.     On July 24, 2019, Defendant Sinclair on its news broadcast ran a story that accused Plaintiff of being a spy.[4]

20.     On the broadcast, Defendant O'Brien affirmatively stated that the accusations against Plaintiff were the "second instance of Chinese intelligence operations" within Mar-a-Lago thereby attempting to pass these fabricated allegations as factual -- which they are not.

---

[2] *See Guo Wengui v. Xia Yeliang*, 18-cv-174 (E.D.Va.)

[3] *See Guo Wengui v. Hongkuan Li*, 2019 WL 2288348, *2 (D. Maryland)

[4] Adding further injury, CBS12 posted the story to its website. https://cbs12.com/news/local/chinese-billionaire-and-mar-a-lago-member-accused-of-spying-he-disputes.

21.     The broadcast also included what appears to be edited comments by a woman named Lisa Ruth, identified by Defendants as a former CIA asset recruiter, who, in the portion broadcast by CBS12, states that "If someone has access, that what makes them a good spy". Again, implying to the viewers that Plaintiff, because he was a member at Mar-a-Lago, must be spy.

22.     This truncated statement by Ms. Ruth is inserted into the broadcast without any factual basis or context as to excerpt that CBS12 chose to broadcast. Thereby creating the implication that a former CIA asset recruiter is stating that Plaintiff is a spy in order to manufacture intrigue and raise viewership.

23.     Defendant O'Brien further states in a definitive tone, but without basis, that "foreign governments could be targeting Mar-a-Lago members like Guo." (emphasis added.)

24.     Given Mr. Guo's outspoken defiance of the Chinese government it would be irrational to think that the Chinese government would target him as a potential asset. Mr. Guo has made it his life's work to remove the Chinese Communist Party from power and bring the Rule of Law to China. The only possible basis that Defendant O'Brien could have for his insinuation is the fact that Mr. Guo was born in China – an insinuation which reeks of racism.

25.     In its broadcast, CBS12 uses another excerpt from its recorded statements by Ms. Ruth which are, again, truncated to definitively imply that because Plaintiff has been a member at Mar-a-Lago for a long time, "an intelligence agency will attempt to recruit them". This statement as presented by CBS12 clearly intends to have its viewers believe that intelligence agencies have attempted to recruit Plaintiff. Once again, providing no basis for the abridged statement, or context from Ms. Ruth's entire prerecorded statement.

26. Clearly, the intent was to garner views for the sensational "story" with no regard for the truth and even less investigation into the underlying facts.

27. The CBS12 broadcast went on to make a number of further false statements, along with various other statements intended to mislead its viewers and cast Plaintiff in a negative light.

28. To be clear, and while the assertion does not dignify a response, Mr. Guo is not, nor has he ever been a spy for China. To the Contrary, he has been an outspoken critic of the corruption in the Chinese Government and its ruling communist party. He has publicly vowed and contributed much of his considerable wealth, along with his heart and soul, into bringing the Rule of Law to China.

29. Defendant O'Brien, in an attempt to further sensationalize the "news" story, creates a non-existent connection between Mr. Guo being a member at Mar-a-Lago and the fact that a woman, Yujing Zhang, was previously arrested at Mar-a-Lago in possession of a thumb-drive containing malware.

30. There is no connection between Mr. Guo and Yujing Zhang, nor do Defendants provide any basis for insinuating that the two may be connected -- because there is no connection -- except that they are both of Chinese descent and happen to have been to Mar-a-Lago.

31. Even the Mar-a-Lago commonality is a stretch with Mr. Guo being a long-standing member of the club and Yujing Zhang being arrested trying to sneak into Mar-a-Lago.

32. In fact, on a number of occasions, Mr. Guo warned the staff at Mar-a-Lago of the potential for attempts by agents of China to infiltrate the club.

## CAUSE OF ACTION
## (DEFAMATION *PER SE*)

33.     Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs "1" through "32", as though fully set forth herein.

34.     In the broadcast on July 24, 2019, Defendants broadcasted and published untrue statements about Plaintiff, including stating that Mr. Guo had committed espionage.

35.     Espionage is a serious federal crime pursuant to the Espionage Act of 1917.

36.     Similar statements made against Mr. Guo are demonstrably false and have, in fact, been ruled to be defamatory in two separate courts.

37.     To further embellish their story, Defendants made statements that insinuated that Mr. Guo was associated with Yujing Zhang, the woman arrested sneaking into Mar-a-Lago with malware.

38.     Defendants knew or should have known that the statements were false, as even a cursory review of court records would have shown Defendants statements to be false.

39.     Further, even a modicum of due diligence would have shown the falsity of these statements.

40.     Instead, with a reckless disregard for the truth, Defendants made the above false statements, causing harm to Plaintiff, all for the sake of potential increased viewership.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request entry of Judgment in their favor and against Defendants as follows:

A.  That Defendants be held liable for the damages sustained by Plaintiff as a result of the claims asserted herein in an amount to be determined at trial, but estimated to be not less than $50 million;

B. That Defendant Sinclair must remove the story from any online and physical publications and must publish a retraction of the false claims against Plaintiff on the front page of their website and physical publications;

C. Such other relief as the Court deems necessary and proper.

## **Demand for Jury**

Plaintiff demands a jury trial on all issues so triable by a jury.

Dated this 2nd day of August, 2019.

Respectfully submitted,

By its attorneys,
/s/ Brian M. Silverio
Fla. Bar No. 0183301
bsilverio@silveriohall.com
Silverio & Hall, P.A.
255 8th Street South
Naples, FL 34102
Tel: 239-649-1001
*Attorneys for Plaintiff*

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**WENGUI GUO**
**a/k/a MILES KWOK**

                             **Plaintiff,**                  **Civil Action No.: 9:19-cv-81099**

   **v.**

**SINCLAIR BROADCAST GROUP, INC., and**
**JAY O'BRIEN**

                             **Defendants.**

## NOTICE OF SETTLEMENT

The Plaintiff, WENGUI GUO, a/k/a MILES KWOK, by and through his undersigned counsel, gives notice to the Court that the parties have reached a settlement of this matter. The settlement agreement is being translated and circulated for execution. The Plaintiff has withheld the filing of its response in light of the settlement reached. The Parties request seven (7) days to either file a fully executed settlement agreement and notice of voluntary dismissal or Plaintiff's response to the motion to dismiss. Undersigned counsel has conferred with counsel for the Defendants and confirmed that the Defendants have no objection to this filing.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested herein and any other relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that, on this 11th day of November, 2019, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner to those parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

By its attorneys,
/s/ Brian M. Silverio
Fla. Bar No. 0183301
bsilverio@silveriohall.com
Silverio & Hall, P.A.
255 8th Street South
Naples, FL 34102
Tel: 239-649-1001
*Attorneys for Plaintiff*

# EXHIBIT 4

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:          **HON. BARRY R. OSTRAGER**          PART          **IAS MOTION 61EFM**

*Justice*

-------------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

|  |  |
|---|---|
| **INDEX NO.** | 652077/2017 |
| **MOTION DATE** |  |
| **MOTION SEQ. NO.** | 007 |

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION,

**DECISION + ORDER ON MOTION**

Defendants.

-------------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

Before the Court is plaintiff Pacific Alliance Asia Opportunity Fund L.P.'s ("Pacific Alliance") motion for partial summary judgement on Count I of the Amended Complaint against defendant Kwok Ho Wan a/k/a Miles Kwok ("Kwok") and defendant Kwok's cross-motion for reargument on motion 006. The Court heard oral argument via Skype on September 14, 2020. Based on the papers submitted and the arguments made on the record of September 14, 2020, and for the reasons that follow, Pacific Alliance's motion for partial summary judgment is granted, and Kwok's motion for reargument on motion 006 is denied.

**Background**

In 2008, Pacific Alliance entered into an agreement with Spirit Charter Investment Limited ("Spirit"), one of Kwok's business entities, under which Pacific Alliance provided Spirit with a loan facility in the principal amount of $30 million. Kwok executed a personal Guarantee of the loan. In September 2009, Spirit executed a deed under which Shiny Times Holdings Limited ("Shiny Times"), a business listing Kwok as its sole shareholder and director, assumed

INDEX NO. 652077/2017

RECEIVED NYSCEF: 09/15/2020

the loan debt that Spirit owed to Pacific Alliance. Kwok again executed a personal guarantee in favor of Pacific Alliance to secure Shiny Times' repayment obligation.

In March 2011, Pacific Alliance and Shiny Times entered into a new loan facility ("2011 Loan Facility") that expressly superseded and replaced the 2009 Deed of Settlement and a 2010 Letter Agreement. Simultaneously, Kwok entered into a new personal guarantee ("2011 Personal Guarantee") which expressly superseded the 2009 Guarantee. The 2011 Personal Guarantee is the operative agreement in this action.

In April 2013, the parties entered into a Deed of Settlement, whereby the outstanding loan amount would no longer be due and owing to Pacific Alliance if Pacific Alliance purchased certain apartments from Beijing Pangu Investment Inc. ("Beijing Pangu"), another Kwok business entity, and Shiny Times' made certain installment payments to Pacific Alliance. Beijing Pangu was required to satisfy ten conditions precedent in connection with the sale and purchase of each of the apartments by Pacific Alliance. If any such condition was not satisfied by June of 2013, the Deed of Settlement would be terminated in its entirety. Pacific Alliance and Kwok subsequently executed four extensions of the Deed of Settlement, changing only the date by which the conditions precedent needed to be satisfied. The latest Deed of Settlement required that the conditions precedent be satisfied by June of 2015.

Pacific Alliance seeks summary judgment on Count I of the Amended Complaint which alleges that Kwok failed to satisfy the conditions precedent by June of 2015 and thus, per the terms of the agreement, the Deed of Settlement was terminated in its entirety and the 2011 Personal Guarantee again controlled.

The Court recently held, in response to Pacific Alliance's motion for sanctions, that Kwok was judicially estoppel from challenging the authenticity of documents that Kwok had

previously sponsored in proceedings before this Court. *See* NYSCEF Doc. No. 404. Specifically, at his November 2019 deposition, Kwok denied having signed several agreements discussed above, including the 2011 Loan Facility, the 2011 Personal Guarantee, the 2013 Deed of Settlement, and the four Supplemental Deeds. Kwok testified that the documents were forgeries. On the motion for contempt, Pacific Alliance argued, and the Court found, that these denials were inconsistent with the positions Kwok had taken throughout the duration of this 2017 case. As such, the Court held that Kwok was judicially estopped from challenging the authenticity of these agreements in opposition to Pacific Alliance's motion for summary judgment or at trial.

**Kwok's Cross-Motion**

Turning first to defendant Kwok's cross-motion for leave to reargue the Court's Decision and Order dated July 7, 2020 (NYSCEF Doc. No. 404), this motion is denied. As stated above, the Court held that Kwok was judicially estopped from challenging the authenticity of the agreements that Kwok had previously sponsored as authentic before the Court in this proceeding. Kwok argues that the Court misapprehended the law in reaching this holding. This Court rejects that argument in its entirety.

At the outset of this case, Kwok moved to dismiss this action on *forum non conveniens* grounds (motion 001). The Court granted Kwok's motion (NYSCEF Doc. No. 102), which decision was subsequently reversed and remitted by the First Department (NYSCEF Doc. 121). In making his motion to dismiss, Kwok argued that the contracts at issue were governed by Hong Kong law. Specifically, Kwok attached to his motion "true and correct" copies of several agreements among the parties including the 2011 Personal Guarantee (NYSCEF Doc. No. 17) and the 2013 Deed of Settlement (NYSCEF Doc. No. 18), which he now contests.

3

Kwok now argues that because the thrust of his argument on the motion to dismiss and the Court's decision related to *forum non conveniens,* (1) he is not actually changing his position on the authenticity of the documents, and (2) the Court did not actually determine the authenticity of the documents. This argument is incorrect. Kwok's assertion that the case should have been dismissed in favor of a resolution in Hong Kong *because the agreements on their face are governed by Hong Kong law* necessarily required an argument by Kwok, and an acceptance by the Court, that the agreements were authentic and not forgeries, as Kwok now claims.

Kwok further argues that in any event judicial estoppel cannot apply because there was no final determination on the merits on the issue of whether the contracts were authentic, because the First Department reversed this Court's decision on the motion to dismiss. This argument is not supported by the case law in the First Department. Judicial estoppel is an equitable doctrine used to prevent a party from changing its position during the same litigation. *See e.g. Nestor v. Britt*, 270 A.D.2d 192, 193 (2000) ("[u]nder the doctrine of judicial estoppel, or estoppel against inconsistent positions, a party is precluded from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding."). Indeed, because judicial estoppel is used to prevent parties from changing their position in the same litigation – a final determination *cannot* be a prerequisite for judicial estoppel. *See id* (precluding the landlord from relying on a different lease on appeal than had been relied on at the trial-court level in the same proceeding).

Additionally, the Court notes that Kwok never pleaded that the documents were forgeries in either of his Answers, which is an affirmative defense. *See e.g., Proner v. Julien & Schlesinger, P.C.*, 214 A.D.2d 460, 461 (First Dept. 1995) (granting a motion for leave to amend the pleadings to add affirmative defense of forgery); *Great Am. Ins. Co. v. Giardino,* 71 A.D.2d

4

836, 836 (Fourth Dept. 1979) (holding that "proof of defendants' handwriting was material in light of their affirmative defense of forgery").

Kwok's recent, uncorroborated assertion that the agreements are forgeries is inconsistent with his prior position in this litigation – and therefore provides an appropriate basis for judicial estoppel. Accordingly, Kwok's cross-motion for reargument is denied, and the agreements previously sponsored by Kwok are accepted as authentic for the purpose of evaluating plaintiff's motion for partial summary judgment.

## Pacific Alliance's Motion

The Court is granting summary judgment in favor of plaintiff Pacific Alliance holding defendant Kwok liable for breach of contract under the 2011 Personal Guarantee. By the plain terms of the 2013 Deed of Settlement, the failure to satisfy the conditions precedent to the settlement by June 30, 2015, would result in reverting to the 2011 Personal Guarantee being in full force and effect. *See* NYSCEF Doc. 461.

> **Clause 3.4:** Reversion of the Facility Letter after 31 July 2013. In the event that all conditions precedent set out in Clause 3.2 for all Apartments have not been satisfied by 31 July 2013 (or such later date agreed by the Parties in writing[— here, 30 June 2015, per the fourth and final supplemental Deed of Settlement]), **then the entire settlement as contemplated under this Deed shall be terminated and the Parties acknowledge that the Facility Letter shall revert and be in full force and effect immediately** after 31 July 2013 (or such later date agreed by the Parties in writing) and Shiny Times shall be obliged to settle the Total Outstanding Amount and any interest accrued thereon in accordance with the terms and conditions of the Facility Letter. (emphasis added).

*See also* NYSCEF Doc. No. 472 "Fourth Supplemental Deed of Settlement" (changing the date to satisfy the conditions precedent to "30 June 2015").

Plaintiff Pacific Alliance has shown, and defendant Kwok has failed to refute, that several of the conditions precedent in the 2013 Deed of Settlement were not fulfilled. Namely, defendant Kwok failed to deliver clean title, failed to provide plaintiff with an invoice for the

purchase of the apartments, failed to provide plaintiff with evidence regarding the payment of all relevant taxes and charges in connection with the sale and purchase of the apartments, and failed to deliver the House Ownership Certificates of any of the Apartments to plaintiff. *See* NYSCEF Doc. No. 461 ¶ 3.2 (e)(g)(h)(i).

Kwok does not dispute that these conditions were never satisfied. Instead, in opposition, Kwok argues that plaintiff Pacific Alliance failed to mitigate its damages when it allegedly did not act on an opportunity to potentially seize the three apartments with the aid of Beijing police.

First, even taking Kwok's version of events as true, mitigation speaks to damages, not liability, and thus these events would not preclude partial summary judgment on liability. Second, as demonstrated by the documentary evidence sponsored by both parties, the alleged opportunity to take possession of the three apartments with the aid of police only came up *after* June 2015, and thus the 2013 Deed of Settlement had already been nullified in its entirety and the 2011 Personal Guarantee was in full force and effect. Third, Kwok has never pleaded, in either of his Answers, mitigation, which is an affirmative defense. *See e.g. Eskenazi v. Mackoul,* 72 A.D.3d 1012, 1014 (2d Dep't 2010) (referring to "the affirmative defense of failure to mitigate damages").

Finally, under Hong Kong law, a party is only required to act *reasonably* to mitigate damages. *See* Affirmation of Vishal Prakash Melwani at ¶17.2 (NYSCEF Doc. No. 535) *and see* Affirmation of Phillip Loukis Georgiou (NYSCEF Doc. No. 498)  at ¶¶ 18.3 and 21. The record currently indicates that to take advantage of the alleged offer of the Beijing Police, Pacific Alliance would have needed to pay RMB35m [approximately USD$5.5 million] per unit to get them released. *See* NYSCEF Doc. No. 519 PAX-KWOK-017288.  The prospect of paying approximately $16 million for assets that the parties had agreed would be transferred free of

6

charge to settle a debt would likely not have qualified as a *reasonable* opportunity to mitigate damages under Hong Kong law. Nevertheless, the Court reserves decision as to the issue of damages.

Under the 2011 Personal Guarantee

- Kwok "irrevocably and unconditionally. . . guarantee[d] to PAX [Pacific Alliance] the due and punctual payment of [Shiny Times'] [o]bligations [under the 2011 Facility] and agree[d] that promptly on PAX's demand he will pay to PAX all [o]bligations that are due but unpaid";

- Kwok "irrevocably and unconditionally agree[d] (as primary obligor and not only as surety) to indemnify and hold harmless PAX on demand from and against any and all losses incurred by PAX as a result of any [o]bligation [of Shiny Times] being or becoming void, voidable, unenforceable, or ineffective as against Shiny Times for any reason whatsoever . . . .";

- Kwok agreed that his "obligations . . . under this Guarantee shall constitute and be continuing obligations which shall not be released or discharged by any intermediate payment of [Shiny Times'] [o]bligations [under the 2011 Loan Facility] or any of them, shall continue in full force and effect until the unconditional and irrevocable payment and discharge in full of [those o]bligations and are in addition to and independent of, and shall not prejudice or merge with, any other security (or any right of setoff) which PAX may at any time hold in respect of [those o]bligations or any of them;"

- PAX was permitted to seek recourse against Kwok as primary obligor without first enforcing the debt against Shiny Times; and

- Kwok agreed to a catchall waiver of any defenses based on "any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law."

Kwok does not argue that either he or Shiny Times made any payments under the 2011 Loan Facility or the 2011 Personal Guarantee to satisfy the debt. Accordingly, the Court finds Kwok liable for breach of the 2011 Personal Guarantee.

**Conclusion**

The remaining issue in the action – Count II of the Amended Complaint – seeks to hold two of Kwok's companies—Genever Holdings LLC and Genever Holdings Corporation— liable

INDEX NO. 652077/2017

RECEIVED NYSCEF: 09/15/2020

for Kwok's debt to Pacific Alliance as alter egos. This action was scheduled for a jury trial on

October 5, 2020. Due to the Covid-19 pandemic, the Court is unable to have a jury trial on that

date and the trial is rescheduled for January 15, 2021.

Accordingly, it is hereby,

ORDERED that defendant Kwok's cross-motion for reargument is denied; and it is

further

ORDERED that plaintiff's motion for partial summary judgment on Count I of the

Amended Complaint is granted in favor of Pacific Alliance Asia Opportunity Fund L.P. and

against Kwok Ho Wan, a/k/a Kwok Ho, a/ka, GWO Wen Gui, a/ka/ Gui Wengui, a/ka/ Guo

Wen-Gui, a/ka/ Wan Gue Haoyun a/k/a Miles Kwok a/ka/ Haoyun Guo to the extent of holding

defendant Kwok liable for breach of contract; and it is further

ORDERED that plaintiff shall move no later than October 14, 2020 by notice of motion

returnable in the Submissions Part to establish damages on Count I by presenting affidavits on

personal knowledge and evidence in admissible form as to the principal amount due and owing

under the 2011 Personal Guarantee, the rate of interest applicable under the 2011 Personal

Guarantee, and the date from which interest is accruing, so that the Clerk of Court may calculate

the total amount due and owing as of the date of entry of judgment; and it is further

ORDERED that plaintiff shall simultaneously move for an award of legal fees and

expenses, setting forth the document which plaintiff is relying on and attaching invoices for

services rendered; and it is further

8

ORDERED that the parties appear for a status conference on December 22, 2020 at 10:20 am.

Dated: September 15, 2020

_____
BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

9

# EXHIBIT 5

Case 22-50073   Doc 50-1   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 40 of 73

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

            Plaintiff,

            v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,

            Defendant.

Index No.

**COMPLAINT**

## NATURE OF THE ACTION

1.      This is a straightforward breach of contract case.  Kwok Ho Wan, a/k/a Kwok Ho, a/k/a

Gwo Wen Gui, a/k/a Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok,

a/k/a Haoyun Guo ("Kwok"), a reported billionaire, and his controlled entities borrowed millions of

dollars from Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX LP") but have failed to pay

any of the amount owed to PAX LP under binding written agreements.

2.      In 2008, PAX LP entered into a written agreement with Spirit Charter Investment

Limited ("Spirit Charter"), one of Kwok's business entities, under which PAX LP made available to

Spirit Charter a loan facility in the principal amount of $30 million.  This loan facility was conditioned

on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

3.      In 2009, another of Kwok's entities, Shiny Times Holdings Limited ("Shiny Times"),

assumed the debt that Spirit Charter owed to PAX LP, which the parties agreed at the time totaled

$45,357,534.25.  Kwok executed a personal guarantee of this debt.

4.      Then in 2011, PAX LP and Shiny Times entered into a written agreement (the "2011

Facility Letter") that expressly superseded prior agreements between the parties.  In the 2011 Facility

Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount

(plus 15% annual interest from December 31, 2010) by June 30, 2012.

5.      That same day, Kwok entered into a separate personal guarantee (that similarly

expressly superseded Kwok's prior personal guarantee) under which Kwok guaranteed payment of all

amounts owed to PAX LP by Shiny Times under the 2011 Facility Letter (the "Personal Guarantee").

6.      To date, neither Shiny Times nor Kwok have paid any amount owed to PAX LP under

either the 2011 Facility Letter or the Personal Guarantee.

7.      PAX LP has taken all necessary and appropriate steps in accordance with its contracts

with Shiny Times and Kwok to recover the monies it is owed—now totaling approximately

$88 million including contractual interest—but has recovered nothing because it has been ignored by Shiny Times and Kwok at each step.

8.      Given that Kwok regularly transacts business, is domiciled and resides, and owns real estate in New York, PAX LP brings this action in this Court to enforce its contractual rights against Kwok.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Kwok pursuant to New York's general personal jurisdiction statute, C.P.L.R § 301, because he is engaged in a continuous and systematic course of "doing business" in New York and is domiciled in the state.

10.     Venue is proper in this Court under C.P.L.R § 503(a) because Kwok's residence is in New York County.

## PARTIES

11.     Plaintiff PAX LP is an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands.

12.     Defendant Kwok is a Chinese national who is domiciled in New York and engages in a continuous and systematic course of "doing business" in New York.

13.     Kwok resides on the 18th Floor of The Sherry-Netherland Hotel in New York City—a residence he purchased in 2015 for $67.5 million through Genever Holdings, LLC ("Genever"), a domestic limited liability company that he solely owns and that maintains its principal place of business in New York State at 80 State Street in Albany.

14.     Kwok also maintains offices at 767 Fifth Avenue for Golden Spring (New York) Ltd. ("Golden Spring"), a Delaware company that he owns, which is registered to do business as a foreign corporation in New York and has a registered agent for service of process in New York.

2

15.    Kwok also has employees or agents in New York, including those who work for Golden Spring and the attorneys he hired to represent him in two cases in the United States District Court for the Southern District of New York over the last two years.[1]

## STATEMENT OF FACTS

### *The Shiny Times Loan and Kwok's Personal Guarantee to Repay PAX LP*

16.    PAX LP and Kwok have had business dealings since approximately February 4, 2008, when PAX LP entered into a written agreement (the "2008 Facility Agreement") with Spirit Charter, one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million.

17.    This loan facility was conditioned on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

18.    On March 12, 2008, PAX LP and Spirit Charter amended and restated the 2008 Facility Agreement ("Amended and Restated 2008 Facility Agreement").

19.    By a deed dated September 17, 2009 (the "September 2009 Deed"), Shiny Times (another of Kwok's entities), Spirit Charter, PAX LP, and various other parties agreed that Shiny Times would replace Spirit Charter as the borrower under the Amended and Restated 2008 Facility Agreement.  The parties to the September 2009 Deed also agreed that the outstanding amount under the Amended and Restated 2008 Facility Agreement, including accrued and unpaid interest, was then $45,357,534.25 as of September 12, 2009 (the "Amended 2008 Loan Facility").

---

[1] In 2015, Kwok and Golden Spring were sued for violations of the Fair Labor Standards Act, and in that lawsuit, Kwok (through counsel) acknowledged that he was properly served with a summons and complaint at The Sherry-Netherland Hotel.  *Ahn v. Golden Spring (New York) Ltd. et al.*, No. 1:15-cv-09697 (S.D.N.Y. Dec. 11, 2015).  In 2016, Kwok and Genever filed a lawsuit (through counsel) against The Sherry-Netherland Hotel and others relating to a leak in his apartment at the hotel.  *Genever Holdings, LLC and Miles Kwok v. The Sherry-Netherland, Inc., et al.*, No. 1:16-cv-06246-GBD (S.D.N.Y. Aug. 5, 2016).

20.     The September 2009 Deed required Kwok to execute a personal guarantee in favor of PAX LP to secure Shiny Times' due and punctual performance and repayment of the Amended 2008 Loan Facility.  Kwok executed his personal guarantee on November 18, 2009.

21.     PAX LP, Kwok, and Shiny Times thereafter agreed to supersede the foregoing agreements with two contracts executed on March 16, 2011—the 2011 Facility Letter (attached as Exhibit A) and the Personal Guarantee (attached as Exhibit B).

22.     In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount (plus 15% annual interest from December 31, 2010) by June 30, 2012.

23.     The parties further agreed in the 2011 Facility Letter that any failure by Shiny Times to pay any amount owed to PAX LP under the 2011 Facility Letter would constitute an Event of Default, and that in such event PAX LP could (i) declare the entire loan, accrued and unpaid interest, and any other money payable to be immediately due and payable without further demand or notice or other legal formality of any kind, and/or (ii) declare the 2011 Facility Letter terminated.

24.     Finally, like the prior agreements between the parties, the 2011 Facility Letter was expressly conditioned on Kwok's execution of the Personal Guarantee to fully backstop Shiny Times' payment obligations to PAX LP:

> The Lender [PAX LP] and the Borrower [Shiny Times] agree to enter into this Agreement . . . on the condition that a new personal guarantee of Mr. Kwok (the "Personal Guarantee"), in favour of the Lender is delivered to secure the due and punctual performance of the Borrower to fully repay the [2011 Facility Letter] plus all accrued and unpaid interest in accordance with this Agreement.

25.     Kwok signed the 2011 Facility Letter as a Director of Shiny Times and also, on the same day, signed the Personal Guarantee, under which Kwok agreed to "irrevocably and unconditionally" guarantee Shiny Times' payment of all amounts owed under the 2011 Facility Letter. In particular, Kwok:

4

Case 22-50073   Doc 50-1   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 45 of 73

(a)     guaranteed to PAX LP the "due and punctual payment" of Shiny Times' obligations under the 2011 Facility Letter;

(b)     agreed "that promptly on [PAX LP's] demand [Kwok] will pay to [PAX LP] all [such amounts] that are due but unpaid";

(c)     agreed to "indemnify and hold harmless [PAX LP] on demand from and against all losses incurred by [PAX LP] as a result of any obligation of Shiny Times under the 2011 Facility Letter being or becoming void, voidable, unenforceable or ineffective as against Shiny Times for any reason whatsoever";

(d)     agreed that PAX LP's demand for payment would constitute *prima facie* evidence that such payment was due and owing;

(e)     agreed that PAX LP could seek repayment from either Shiny Times or Kwok; and

(f)     agreed to indemnify PAX LP from "any and all costs, claims losses, [and] expenses (including legal fees)" incurred as a result of exercising or enforcing the Personal Guarantee.

26.     Furthermore, Kwok agreed to waive several defenses, including those based on the winding up or dissolution of Shiny Times, or PAX LP's inability to recover against Shiny Times "for any reason." Kwok also agreed to a catchall waiver of any conceivable defenses based on "any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law."

27.     In other words, Kwok signed an unambiguous and ironclad guarantee that he would satisfy Shiny Times' debt to PAX LP under any circumstances.

### *The Extensions and Shiny Times' Ultimate Failure to Repay PAX LP*

28.     Shiny Times did not repay any portion of the loan principal or accrued interest before the June 30, 2012 repayment date set forth in the 2011 Facility Letter, and the parties subsequently entered into a series of extensions, each labeled a "Deed of Settlement."

5

29.     PAX LP, Shiny Times, and Kwok entered into the first Deed of Settlement (the "Original Deed of Settlement") along with Beijing Pangu Investment Inc. ("Beijing Pangu"), another company within the Kwok empire, on April 19, 2013.

30.     The Original Deed of Settlement provided that the total outstanding amount due under the 2011 Facility Letter plus all accrued and unpaid interest was $52 million as of the date of the Original Deed of Settlement, and that amount would be no longer due and owing upon the satisfaction of the following conditions:

(a)     If PAX LP completed the purchase of three apartments from Beijing Pangu in a series of three separate transactions for approximately $5 million each, for a total of approximately $15 million; and

(b)     If Shiny Times completed three installment payments to PAX LP of approximately $5 million each—one installment payment to be made after each separate apartment purchase—for a total of approximately $15 million.

31.     Before PAX LP could purchase any of the three apartments from Beijing Pangu, however, Beijing Pangu was required under the Original Deed of Settlement to satisfy certain conditions precedent relating to title, taxes, and other common aspects of real estate transactions.  If any of these conditions were not met for any of the three apartments by July 31, 2013, the Original Deed of Settlement expressly provided that it would be terminated in its entirety, and the 2011 Facility Letter would revert into full effect.

32.     Beijing Pangu failed to satisfy these conditions precedent by July 31, 2013,  PAX LP therefore did not complete its purchase of any of the apartments, and Shiny Times did not make any of the three installment payments it owed to PAX LP under the Original Deed of Settlement.

33.     Four supplemental deeds of settlement—on December 3, 2013, May 15, 2014, July 11, 2014, and February 10, 2015—extended the dates in the Original Deed of Settlement, including the repayment date and the date for Beijing Pangu to satisfy the conditions precedent.

6

Case 22-50073   Doc 50-1   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 47 of 73

34.     Each of the supplemental deeds had the same terms as the Original Deed of Settlement. And the result was the same each time: Beijing Pangu never met the conditions it was required to satisfy, PAX LP therefore was not required to, and did not, complete its purchase of any of the apartments, and Shiny Times never made any of the three installment payments it owed to PAX LP under the 2011 Facility Letter.

35.     Finally, on March 31, 2015, Shiny Times and PAX LP, together with Worldwide Opportunity Holdings Limited and Empire Growth Holdings Limited, entered into an Option Agreement (the "Option Agreement") that provided, among other things, for the repayment via share sale transaction of amounts owed by Shiny Times to PAX LP.

36.     Pursuant to its terms, the Option Agreement was to terminate if certain conditions relating to the transfer of property (as stated in the Option Agreement) were not satisfied. None of these conditions were satisfied, and the Option Agreement was terminated without negating Shiny Times' obligation to pay PAX LP.

37.     Thus, the 2011 Facility Letter reverted to being in full force and effect, Kwok's obligations under the Personal Guarantee are fully enforceable, and Kwok is independently liable under the Personal Guarantee for the full amount of Shiny Times' debt owed to PAX LP under the 2011 Facility Letter.

### PAX LP Seeks to Enforce Its Contractual Rights and Collect Amounts Owed

38.     On October 16, 2015, after the Deeds of Settlement and Option Agreement were terminated and the 2011 Facility Letter reverted to being in full force and effect, PAX LP sent a written notice of demand (the "Notice of Demand") to Kwok's address in Hong Kong, as specified under the terms of the Personal Guarantee.

Case 22-50073   Doc 50-1   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 48 of 73

39.     The Notice of Demand informed Kwok that "Shiny Times ha[d] failed to repay any part

of the sum due" under the 2011 Facility Letter and demanded immediate payment of $71,818,633.44.

The Notice of Demand also informed Kwok that legal proceedings might be commenced against him if

he did not make immediate payment, and reserved PAX LP's contractual rights under both the 2011

Facility Letter and the Personal Guarantee.

40.     Kwok never responded to the Notice of Demand.

41.     On February 19, 2016, PAX LP sent a letter to Shiny Times demanding payment of

$82,219,404.08 due and owing under the 2011 Facility Letter (the "Shiny Times Demand Letter"),

which represented the principal plus contractual interest of 15% per annum calculated up to the date of

the Shiny Times Demand Letter.

42.     Shiny Times never responded to the Shiny Times Demand Letter.

43.     When Shiny Times did not respond, PAX LP submitted an application to court in the

British Virgin Islands ("BVI") on February 29, 2016 seeking the appointment of joint liquidators to put

Shiny Times, which is a BVI corporation, into liquidation.  The application alleged that (i) Shiny

Times had failed to pay the sum then-owing of $82,410,197.87, (ii) Shiny Times was unable to pay its

debts, and (iii) Shiny Times was insolvent and should be liquidated.

44.     Although Shiny Times was in fact placed into liquidation as a result of the BVI

proceeding, PAX LP was unable to collect any of the monies owed to it under the 2011 Facility Letter.

45.     To date, Kwok has not repaid any of the money due and owing to PAX LP under the

Personal Guarantee.  The sum due and owing—which includes the outstanding principal plus accrued

and unpaid interest—is currently approximately $88 million.

46.     As a result of Kwok's failure to repay any of the money due and owing to PAX LP,

Plaintiff has incurred "costs, claims losses, [and] expenses (including legal fees)" in connection with

8

enforcing the Personal Guarantee. Kwok is obligated to indemnify those amounts under the express terms of the Personal Guarantee (*see* Paragraph 25(f)).

### COUNT I – BREACH OF CONTRACT
**Against Defendant Kwok**

47.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46 as though fully set forth herein.

48.    The Personal Guarantee obligates Kwok to repay PAX LP for the loan facility (as amended) that PAX LP made available to Spirit Charter, along with unpaid interest. The current amount due and owing is approximately $88 million.

49.    Plaintiff performed its own obligations under the Personal Guarantee (and other related agreements).

50.    Kwok has not repaid any of the money due and owing to PAX LP under the Personal Guarantee.

51.    As a direct result of Kwok's breach of his payment obligations under the Personal Guarantee, Plaintiff continues to suffer the loss of approximately $88 million dollars, an amount that continues to incur interest.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

(a)    in the amount of $46,426,489 under the Personal Guarantee;

(b)    in the amount of $41,096,982.46 in interest;

(c)    the reasonable attorneys' fees, costs, and expenses PAX LP has incurred, and will continue to incur, in connection with its enforcement of the Personal Guarantee against Kwok under the Personal Guarantee's indemnification clause; and

(d)    such other and further relief to which PAX LP shows itself justly entitled.

9

DATED:     New York, New York
           April 18, 2017

                        Respectfully submitted,

                        THE SEIDEN GROUP

                        By:_____
                        Robert W. Seiden (rseiden@seidenlegal.com)
                        1120 Avenue of the Americas
                        New York, NY 10036
                        (212) 626-6708

                        -and-

                        O'MELVENY & MYERS LLP
                        Stuart Sarnoff (ssarnoff@omm.com)
                        Edward Moss (emoss@omm.com)
                        7 Times Square
                        New York, NY 10036
                        (212) 326-2000


                        *Attorneys for Plaintiff*

10

# EXHIBIT 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

        Plaintiff,

    v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

        Defendants.

17 652077

Index No. 652077/2017

[~~PROPOSED~~] JUDGMENT

WHEREAS, on April 18, 2017, Plaintiff Pacific Alliance Asia Opportunity Fund L.P.,

filed a complaint against Defendant Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Gwo Wen Gui, a/k/a

Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok, a/k/a Haoyun Guo

("Kwok"), alleging a cause of action for breach of contract against Defendant Kwok.

WHEREAS, on April 18, 2019, Plaintiff filed a First Amended Complaint against Kwok,

and Genever Holdings LLC, and Genever Holdings Corporation (together with Genever

Holdings LLC, the "Genever Defendants"), alleging causes of action for (i) breach of contract

against Defendant Kwok and (ii) veil piercing against the Genever Defendants.

WHEREAS, on July 24, 2020, Plaintiff moved for partial summary judgment on its

breach of contract claim against Kwok, and the motion was fully briefed and heard before Justice

Barry R. Ostrager, who issued a Decision and Order dated September 15, 2020, which was

entered in the New York County Clerk's Office on September 16, 2020, granting Plaintiff's

motion on Count I of the Amended Complaint for breach of contract, and directed Plaintiff move

by Notice of Motion to establish damages on Count I no later than October 14, 2020.

FILED: NEW YORK COUNTY CLERK 02/03/2021 12:28 PM
NYSCEF DOC. NO. 716

INDEX NO. 652077/2017
RECEIVED NYSCEF: 02/03/2021

Case 22-50073   Doc 50-1   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 53 of 73

17 652077

WHEREAS, (i) on September 21, 2020, Plaintiff moved by Notice of Motion to establish damages, legal fees and expenses; (ii) Plaintiff agreed to temporarily withdraw, without prejudice and with the Court's permission and the other parties' understanding that it would be renewed at a later date, the portion of its application relating to legal fees and expenses (i.e., enforcement costs); and (iii) the motion was fully briefed and heard before Justice Barry R. Ostrager, who issued a Decision and Order dated December 18, 2020 (the "Damages Order"), and entered into the New York County Clerk's office on December 18, 2020, directing the Clerk of Court to enter judgment in favor of Plaintiff and against Defendant Kwok in the amount of $46,426,489.00 plus contractual interest at a rate of 15% per annum from effective date of December 31, 2010 and at the statutory rate of 9% per annum from the date of entry of this decision and order.

NOW, upon motion of O'Melveny & Myers LLP, attorneys for Plaintiff, it is:

ADJUDGED that Plaintiff Pacific Alliance Asia Opportunity Fund L.P., having a business address at 33/F, Three Pacific Place, 1 Queen's Road East, Hong Kong, have judgment against and do recover from Defendant Kwok Ho Wan, residing at 781 Fifth Avenue, 18th Floor, New York, NY 10022, the amount of _____**$46,426,489.00**_____, plus contractual interest in the amount of _____**$69,448,939.71**_____, plus post-judgment interest at the statutory rate of 9% in the amount of _____**$526,590.86**_____, for a total of

**X**  _____**$116,402,019.57**_____, and Plaintiff shall have execution thereof.

~~Judgment signed and entered this ___th day of _____, 2021~~

**F I L E D
Feb 03 2021
NEW YORK
COUNTY CLERK'S OFFICE**

_Milton Adan Tingling_ .
Clerk

3 rd        Feb.        2021

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

        Plaintiff,

    v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

        Defendants.

Index No. 652077/2017

**AFFIRMATION OF EDWARD MOSS, ESQ.**



FILED
Feb 03 2021
NEW YORK
COUNTY CLERK'S OFFICE

      I, Edward Moss, an attorney duly admitted to practice before the Courts of the

State of New York, hereby affirm, under penalty of perjury, pursuant to the Civil Practice Law

and Rules of the State of New York § 2106, as follows:

      1.    I am a member of the bar of this Court and a partner in the law firm of O'Melveny

& Myers LLP, counsel of record for Plaintiff Pacific Alliance Asia Opportunity Fund L.P.

("PAX") in this matter.

      2.    I am fully familiar with the facts and circumstances in this action.  For purposes

of entry of this judgment, I submit this affirmation waiving costs and disbursements.

Dated:   January 25, 2021         By: */s/ Edward Moss*
        New York, New York         Edward Moss

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
Index No. 652077/2017

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND
L.P.,

Plaintiff,

-against-

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN
GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI,
a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK,
a/k/a HAOYUN GUO, GENEVER HOLDINGS
CORPORATION, and GENEVER HOLDINGS LLC,

Defendants.

---

## JUDGMENT

[PROPOSED] JUDGMENT

---

**O'MELVENY & MYERS LLP**

TIMES SQUARE TOWER
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 326-2000

Attorneys for Plaintiff Pacific Alliance Asia Opportunity
Fund, L.P.

F I L E D
Feb 03 2021
NEW YORK
COUNTY CLERK'S OFFICE

# EXHIBIT 7

DATED THE 16th DAY OF MARCH 2011


KWOK HO WAN
as Guarantor

in favour of

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.


PERSONAL GUARANTEE


Hong Kong

154

KWOK000651

THIS GUARANTEE is made the 16th day of March 2011

BETWEEN:

(1)     KWOK HO WAN (郭浩云) holder of Hong Kong Identity card no. P746467(7) of Room 411, 4th Floor, Nan Fung Tower, 173 Des Voeux Road Central, Hong Kong (the "Guarantor"); and

(2)     PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P., an exempted limited partnership established under the laws of the Cayman Islands whose registered office is at P.O. Box 472, 2nd Floor, Harbour Place, Grand Cayman, Cayman Islands ("PAX").

RECITALS

A.     On or about the date of this Guarantee, PAX and Shiny Times Holdings Limited ("Shiny Times") entered into a facility letter (the "Facility Letter") whereby it was agreed that (a) the total principal amount under the Facility Letter as of the Effective Date US$46,428,489 (the "Outstanding Amount") and (b) the Outstanding Amount shall be deemed as the new revised principal amount under the Facility Letter, which shall accrue interest at the rate of 15% per annum from the Effective Date until fully repaid.  It was further agreed that the maturity date for payment of the Loan (as defined in the Facility Letter) shall be on or before 30 June 2012.

B.     A condition precedent to the completion under the Facility Letter is the Guarantor's delivery of this Guarantee to secure due and punctual performance of all of Shiny Times' payment and performance obligations whatsoever (the "Obligations", and "Obligation" shall be construed accordingly), under or in relation to the Facility Letter.

C.     It was further agreed that, immediately after the Effective Date, and upon the completion of the conditions precedent under the Facility Letter, Shiny Times and the Guarantor shall be discharged and released in full from all the obligations, liabilities and responsibilities under the Deed and Letter Agreement (both terms are defined in the Facility Letter) respectively and claims arising out of or in connection with the Deed and Letter Agreement shall also be fully discharged.

1.     INTERPRETATION

1.1     References to Agreements

Unless otherwise stated, any reference in this Guarantee to any agreement or document (including any reference to this Guarantee or the Facility Letter) shall be construed as a reference to:

(a)     such agreement or document as amended, varied, novated or supplemented from time to time;

(b)     any other agreement or document whereby such agreement or document is so amended, varied or novated; and

(c)     any other agreement or document entered into pursuant to or in accordance with such agreement or document.

1

KWOK000652

### 1.2    Clause Headings

Clause headings are for ease of reference only and shall not affect the construction of this Guarantee.

### 2.    GUARANTEE

### 2.1    Guarantee and Indemnity

The Guarantor hereby irrevocably and unconditionally:

(a)    guarantees to PAX the due and punctual payment of the Obligations and agrees that promptly on PAX's demand he will pay to PAX all Obligations that are due but unpaid; and

(b)    agrees (as primary obligor and not only as surety) to indemnify and hold harmless PAX on demand from and against all losses incurred by PAX as a result of any Obligation being or becoming void, voidable, unenforceable or ineffective as against Shiny Times for any reason whatsoever (whether or not known to PAX or any other person), the amount of such loss being the amount that PAX would otherwise have been entitled to recover from Shiny Times,

PROVIDED THAT the total liabilities of the Obligations or amount due from the Guarantor under this Guarantee shall always be limited to the sum of the Outstanding Amount plus interest of the rate of 16% per annum accrued from 31 December 2010 to the date on which all such liabilities are paid in full.

For the avoidance of doubt, this Guarantee came into effect on 31 December, 2010 (the "Effective Date").

### 2.2    Demands

The amount specified in a demand made by PAX pursuant to this Guarantee as to the amount of any Obligation or the amount due from the Guarantor under this Guarantee shall be *prima facie* evidence that such Obligation or such amount is due and payable.

### 3.    CONTINUING SECURITY

### 3.1    Continuing and Independent Obligations

The obligations of the Guarantor under this Guarantee shall constitute and be continuing obligations which shall not be released or discharged by any intermediate payment of the Obligations or any of them, shall continue in full force and effect until the unconditional and irrevocable payment and discharge in full of the Obligations and are in addition to and independent of, and shall not prejudice or merge with, any other security (or any right of set-off) which PAX may at any time hold in respect of the Obligations or any of them.

### 3.2    Avoidance of Payments

Where any release, discharge or other arrangement, in respect of any Obligation PAX may hold for such Obligation, is given or made in reliance on any payment or other disposition that is avoided or must be repaid (whether in whole or in part) in an insolvency, liquidation or otherwise, and whether or not PAX has conceded or compromised any claim that any such payment or other disposition will or should be avoided or repaid (in whole or in part), this

2

KWOK000653

Guarantee shall continue as if such release, discharge or other arrangement had not been given or made.

### 3.3  Immediate Recourse

PAX shall not be obliged before exercising any of the rights conferred on it by this Guarantee or by law to seek to recover amounts due from Shiny Times or to exercise or enforce any other right or security it may have or hold in respect of the Obligations.

### 3.4  Waiver of Defences

Neither the obligations of the Guarantor contained in this Guarantee nor the rights, powers and remedies conferred upon PAX by this Guarantee or by law shall be discharged, impaired or otherwise affected by:

(a)  the winding-up, dissolution, administration or re-organisation of Shiny Times or any other person or any change in the status, function, control or ownership of Shiny Times or any such person;

(b)  any of the Obligations or any security held by PAX in respect thereof being or becoming illegal, invalid, unenforceable or ineffective in any respect;

(c)  any time or other indulgence being granted or agreed (i) to or with Shiny Times or any other person in respect of the Obligations or any of them or (ii) in respect of any security held by PAX in respect thereof;

(d)  any amendment to, or any variation, waiver or release of, the Obligations or any of them or any security held by PAX in respect thereof;

(e)  any total or partial failure to take or perfect any security proposed to be taken in respect of the Obligations or any of them;

(f)  any total or partial failure to realise the value of, or any release, discharge, exchange or substitution of, any security held by in respect of the Obligations or any of them; or

(g)  any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers and remedies conferred upon PAX by this Guarantee or by law.

### 3.5  No Competition with PAX

Any right which the Guarantor may have by way of contribution or indemnity in relation to the Obligations, or otherwise to claim or prove as a creditor of Shiny Times or any other person or its estate in competition with PA, shall be exercised by the Guarantor only if and to the extent that PAX so requires and in such manner and upon such terms as PAX may specify, and the Guarantor shall hold all monies, rights or security held or received by it as a result of the exercise of any such right on trust for PAX for application in accordance with the terms of this Guarantee as if such monies, rights or security were held or received by PAX under this Guarantee.

### 3.6  Appropriation

PAX shall not be obliged to apply any sum held or received by it in respect of the Obligations in or towards payment of the Obligations and all such sums may be credited to a suspense or impersonal account and held in such account pending the application from time to time

3

**157**

KWOK000654

(as PAX may think fit) of such sums in or towards the discharge of such obligations of the Guarantor to PAX as PAX may select.

4.    PAYMENTS

4.1    **Grossing Up**

All payments made by the Guarantor under this Guarantee shall be made free and clear and without any deduction and free and clear of, and without deduction for or on account of, tax except, in the latter case, to the extent that the Guarantor is required by law to make payment subject to tax. If any tax or amount in respect of tax must be deducted, or any other deduction must be made, from any amount payable or paid by the Guarantor under this Guarantee, the Guarantor shall pay such additional amounts as may be necessary to ensure that PAX receives a net amount equal to the full amount which it would have received had payment not been made subject to tax.

4.2    **Payments without Set-off**

All payments made by the Guarantor under this Guarantee shall be made free and clear of and without any deduction for or on account of any set-off or counterclaim.

4.3    **Manner of Payment**

All payments made by the Guarantor under this Guarantee shall be paid in the manner required by PAX.

5.    COSTS AND EXPENSES

5.1    **Transaction Costs**

The Guarantor shall on demand of PAX reimburse to PAX on a full indemnity basis all costs and expenses (including legal fees), incurred by PAX in connection with the preparation, negotiation and execution of this Guarantee.

5.2    **Stamp Taxes**

The Guarantor shall promptly pay all stamp, registration and other taxes to which this Guarantee or any judgment given in connection with this Guarantee is or at any time may be subject and shall on demand indemnify PAX against all Obligations, costs, claims and expenses (including legal fees) resulting from any failure to pay or delay in paying any such tax.

5.3    **Indemnity**

The Guarantor shall indemnify and hold harmless PAX from and against any and all costs, claims losses, expenses (including legal fees) and Obligations, which PAX may incur as a result of the exercise or enforcement by PAX of any of the rights or powers conferred on it under this Guarantee or by law.

6.    WAIVERS AND REMEDIES

No failure by PAX to exercise, nor any delay by PAX in exercising, any right or remedy under this Guarantee shall operate as a waiver thereof nor shall any single or partial exercise of any such right or remedy prevent any further or other exercise thereof or the exercise of any other such right or remedy.

4

**158**

KWOK000655

7. **ADDITIONAL PROVISIONS**

7.1 **Partial Invalidity**

If at any time any provision of this Guarantee is or becomes illegal, invalid or unenforceable in any respect, or this Guarantee is or becomes ineffective in any respect under the law of any jurisdiction, such illegality, invalidity, unenforceability or ineffectiveness shall not affect:

(a)    the legality, validity or enforceability of the remaining provisions of this Guarantee or the effectiveness in any other respect of this Guarantee under such law; or

(b)    the legality, validity or enforceability of such provision or the effectiveness of this Guarantee under the law of any other jurisdiction.

7.2 **Potentially Avoided Payments**

If PAX determines that an amount paid to it under the Facility Letter is capable of being avoided or otherwise set aside on the liquidation or administration of the person by whom such amount was paid, then for the purposes of this Guarantee, such amount shall be regarded as not having been paid.

7.3 **Currency Conversion**

In order to apply any sum held or received by PAX in or towards payment of the Obligations, PAX may purchase an amount in another currency and the rate of exchange to be used shall be that at which, at such time as it considers appropriate, PAX is able to effect such purchase.

7.4 **Currency Indemnity**

If any sum due from the Guarantor under this Guarantee or any order or judgment given or made in relation to this Guarantee has to be converted from the currency (the "first currency") in which the same is payable under this Guarantee or under such order or judgment into another currency (the "second currency") for the purpose of (a) making or filing a claim or proof against the Guarantor, (b) obtaining an order or judgment in any court or other tribunal, or (c) enforcing any order or judgment given or made in relation to this Guarantee, the Guarantor shall indemnify and hold harmless PAX from and against any loss suffered or incurred as a result of any discrepancy between (i) the rate of exchange used for such purpose to convert the sum in question from the first currency into the second currency, and (ii) the rate or rates of exchange at which PAX may in the ordinary course of business purchase the first currency with the second currency upon receipt of a sum paid to it in satisfaction, in whole or in part, of any such order, judgment, claim or proof.

7.5 **Rights Cumulative**

The rights and remedies provided by this Guarantee are cumulative and not exclusive of any right or remedy provided by law.

8. **ASSIGNMENTS**

8.1 **The Guarantor's Rights and Obligations**

The rights and obligations of the Guarantor under this Guarantee are not assignable or transferable and the Guarantor shall not purport to assign any or all such rights or obligations, without the prior written consent of PAX.

5

159

KWOK000656

8.2   PAX's Rights

The rights of PAX under this Guarantee are assignable in whole or in part, and PAX may assign all or any such right without the consent of the Guarantor.

9.    NOTICES

9.1   Communications in Writing

Each communication to be made under this Guarantee shall be made in writing but, unless otherwise stated, may be made by fax or letter.

9.2   Delivery of Notices

Any communication or document to be made or delivered by one person to another pursuant to this Guarantee shall (unless that other person has by 3 days' written notice to the other specified another address or fax number) be made or delivered to that other person at the authorized address or fax number of that person and shall be deemed to have been made or delivered when despatched (in the case of any communication made by fax), or (in the case of any communication made by letter) when left at that address or (as the case may be) five days after being deposited in the post postage prepaid in an envelope addressed to it at that address. Subject to the foregoing, the authorised address and fax number of each party, for the purpose of Clause 9, are as follows:

PA:

Address:

15/F, AIA Central
1 Connaught Road Central
Hong Kong

Fax:   +852 2918 0881
Attn:  Jon Lewis, Group General Counsel

The Guarantor:

Address:  Room 411, 4th Floor, Nan Fung Tower,
173 Des Voeux Road Central
Hong Kong

*with a copy to*

Address:  Stevenson, Wong & Co.
4th Floor, Central Tower
28 Queen's Road Central
Hong Kong
Fax:   +852 2868 9928
Attn:  Hank Lo

9.3   Notices to PA

Any communication or document to be made or delivered to PAX shall be effective only when received by PAX and then only if it is expressly marked for the attention of the

8

160

KWOK000657

department or officer identified with PA's signature below or such other department or officer as PAX shall from time to time specify for this purpose.

### 9.4   English Language

Each communication and document made or delivered by one party to another pursuant to this Guarantee shall be in English or accompanied by a translation into English which is certified (by an officer of the person making or delivering the same) as being a true and accurate translation.

### 10.   GOVERNING LAW   .

This Guarantee is governed by and shall be construed in accordance with the laws of Hong Kong.

### 11.   JURISDICTION

### 11.1   Courts of Hong Kong

Each of the Guarantor and PAX irrevocably agrees that the courts of Hong Kong shall have jurisdiction to hear and determine any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with this Guarantee (respectively, "Proceedings" and "Disputes") and, for such purposes, irrevocably submits to the jurisdiction of such courts.

### 11.2   Appropriate Forum

The Guarantor irrevocably waives any objection which he might now or hereafter have to Proceedings being brought or Disputes settled in the courts of Hong Kong and agrees not to claim that any such court is not a convenient or appropriate forum.

### 11.3   Service of Process

The Guarantor agrees that the process by which Proceedings are begun may be served on him by being delivered to him personally in connection with all Proceedings in Hong Kong.

### 11.4   Proceedings in Other Jurisdictions

Nothing in Clause 11.1 (*Courts of Hong Kong*) shall (and shall not be construed so as to) limit the right of PAX to take Proceedings against the Guarantor in any other court of competent jurisdiction nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not) if and to the extent permitted by applicable law.

### 11.5   General Consent

The Guarantor consents generally in respect of any Proceedings to the giving of any relief or the issue of any process in connection with such Proceedings including the making, enforcement or execution against any property whatsoever (irrespective of its use or intended use) of any order or judgment which may be made or given in such Proceedings.

### 12.   COUNTERPARTS

This Guarantee may be executed in counterparts and such counterparts taken together shall constitute one and the same instrument.

### 13.   SOVEREIGN IMMUNITY

7

**161**

KWOK000658

To the extent that the Guarantor may be entitled, in any Hong Kong Court or other court, to claim for himself or his revenues, assets or properties, sovereign immunity from service of process, from suit, from the jurisdiction of any court, from attachment in aid of execution or enforcement of a judgment (interlocutory or final), or from any other legal process, and to the extent that, in any such jurisdiction there may be attributed such a sovereign immunity (whether claimed or not), the Guarantor irrevocably agrees not to claim, and hereby irrevocably waives, such sovereign immunity.

IN WITNESS WHEREOF this Guarantee has been duly executed by the Guarantor and has been signed by PAX.

8

162

KWOK000659

EXECUTION PAGE

PERSONAL GUARANTEE

SIGNED, SEALED AND DELIVERED
by KWOK HO WAN
in the presence of:

Signature
of Witness:

Name:
Address:

Occupation:

SIGNED by                                    )
Jon Lewis                                    )
Director, Pacific Alliance Group Asset       )
Management Limited,                          )
the General Partner of                       )
PACIFIC ALLIANCE ASIA                        )
OPPORTUNITY FUND L.P.                        )
in the presence of:-                         )

Signature
of Witness:

Name:  STEFFI TAM
Address:  15/F, AIA CENTRAL, 1 CONNAUGHT ROAD CENTRAL, HONG KONG

Occupation:  LEGAL COUNSEL

163

KWOK000660

# EXHIBIT 8

At Commercial Division Part 61 of the Supreme Court of the State of New York, County of New York, held at the Courthouse at 60 Centre Street, New York, New York, on the 30ʰ Day of _September_, 2020.

PRESENT:

THE HONORABLE BARRY OSTRAGER, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,
                    Plaintiff,

        v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS LLC, *and* GENEVER
HOLDINGS CORPORATION,

                    Defendants.

Index No. 652077/2017

Hon. Barry R. Ostrager

Part 61

Mot. Seq. No. 11

**ORDER TO SHOW CAUSE**

**ORAL ARGUMENT REQUESTED**

    **UPON** reading Plaintiff Pacific Alliance Asia Opportunity Fund L.P.'s ("PAX")

Memorandum of Law in Support of its CPLR 5229 Motion and Request for TRO, the

Affirmation of Jon Lewis, dated September 25, 2020, the Affirmation of Edward Moss, Esq.,

dated September 25, 2020, and the exhibits annexed thereto, and all prior papers filed herein, and

good cause having been alleged, it is hereby:

    **ORDERED,** that Defendant Kwok Ho Wan a/k/a Miles Kwok show cause, if there be

any, before this Court at IAS Part 61, Room 232 of the New York County Courthouse, located at

60 Centre Street, New York, New York 10007, or at a Remote Conference Part via Microsoft

1

Teams, on the 15th day of October, at 10:00 a.m. | p.m., or as soon thereafter as counsel can be

heard, why an Order should not be made and entered in favor of PAX, pursuant to CPLR 5229

that:

1. Enjoins and restrains Defendant Kwok, with the same effect as if a restraining
   order had been served upon him after judgment, from making or causing any sale,
   assignment, transfer, or interference with any property in which he has an interest,
   or from paying over or otherwise disposing of any debt now due or thereafter
   coming due to him subject to the exceptions set forth in CPLR 5222;

2. Permits PAX to issue restraining notices permitted by CPLR 5222 with respect to
   Defendant Kwok;

3. Permits PAX to conduct the disclosure permitted by CPLR 5229, including
   disclosure as set forth in CPLR 5223 and 5224; and

4. Grants PAX such other, further, and different relief as this Court deems just and
   proper.

**ORDERED that sufficient cause being alleged therefore, pending a hearing on this**

**Order to Show Cause,** that Kwok shall preserve the status quo and be temporarily restrained

under CPLR 6301 *et seq.*, until the hearing described in the above paragraph, from making or

causing any sale, assignment, transfer, or interference with any property in which he has an

interest, or from paying over or otherwise disposing of any debt now due or thereafter coming

due to him subject to the exceptions set forth in CPLR 5222; and it is further

**ORDERED,** that service of this Order to Show Cause, together with the papers upon

which it is granted, shall be made through the New York State Courts Electronic Filing System

("NYSCEF") on Defendant Kwok through his attorneys, Mark Harmon and Jillian Searles, of

Hodgson Russ LLP, on or before the 30th day of September, 2020, which shall be deemed good

and sufficient service thereof; and it is further

2

**ORDERED**, that opposition to this Order to Show Cause shall be served on PAX's

counsel, O'Melveny & Myers LLP, by electronic filing on NYSCEF no later than the ~~13th~~ *13th* day of

_October_____, 2020, *at 4:00 p.m.*, and it is further

**ORDERED**, that PAX shall serve any reply papers by NYSCEF on counsel for

Defendant Kwok, Hodgson Russ LLP, no later than the *14th* day of _October_____,

2020, *at 4:00 p.m.*

ENTERED:

_____
Justice Barry Ostrager, J.S.C.
BARRY R. OSTRAGER, J.S.C.

The parties must provide the Court with a Joint Appearance Sheet containing all contact
information (including email addresses) and representation.  Please send this  information
in ONE email to plperuta@nycourts.gov no later than October 5, 2020 at noon.

3

# EXHIBIT 9

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| PRESENT: | **HON. BARRY R. OSTRAGER** | PART | IAS MOTION 61EFM |
|---|---|---|---|
| | *Justice* | | |

----------------------------------------------------------------------------- X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION,

Defendants.

----------------------------------------------------------------------------- X

| INDEX NO. | 652077/2017 |
|---|---|
| MOTION DATE | |
| MOTION SEQ. NO. | 011 |

**DECISION + ORDER ON MOTION**

HON. BARRY R. OSTRAGER

On October 15, 2020, the Court held oral argument via Microsoft Teams, with counsel for all parties participating, on plaintiff's motion for a post-judgment restraining order pursuant to CPLR 5229 (motion 011). On September 15, 2020, the Court granted summary judgment in favor of plaintiff on liability, with damages and the issue of whether the corporate defendants are defendant Kwok's alter egos to be determined at a later date. NYSCEF Doc. 549.

Plaintiff's motion for a restraining order pursuant to CPLR 5229 is granted. Mr. Kwok is restrained from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, whether directly or indirectly, and from paying over or otherwise disposing of any debt now due or thereafter coming due to him subject to the exceptions set forth in CPLR 5222, in accordance with the proceedings on the record of October 15, 2020.

Specifically, Mr. Kwok and/or the registered owners of (1) the Residence at the Sherry-Netherland Hotel and (2) the yacht, "the Lady May" are restrained from making or causing any sale, assignment, transfer, or interference with those assets.

Case 22-50073   Doc 50-1   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 73 of 73

Plaintiff is entitled, under CPLR 5229, to take discovery into the above-identified assets as well as to seek discovery into any other assets that Mr. Kwok may own, whether directly or indirectly.

The next appearance will be a pre-trial conference on November 12, 2020 at 2:00 pm via Microsoft Teams.

October 15, 2020
**DATE**

_Barry Ostrager_

BARRY R. OSTRAGER, J.S.C.

**CHECK ONE:** [ ] CASE DISPOSED    [X] NON-FINAL DISPOSITION

[X] GRANTED    [ ] DENIED    [ ] GRANTED IN PART    [ ] OTHER

**APPLICATION:** [ ] SETTLE ORDER    [ ] SUBMIT ORDER

**CHECK IF APPROPRIATE:** [ ] INCLUDES TRANSFER/REASSIGN    [ ] FIDUCIARY APPOINTMENT    [ ] REFERENCE

2