# EXHIBIT 10









# EXHIBIT 11

1

1   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK : PART 61
2   ----------------------------------------------X
    PACIFIC ALLIANCE ASIA OPPORTUNITY FUND, LP,

3
                         Plaintiff(s),
4
               - against -
5
    KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI,
6   a/k/a GUO WENGUI, a/k/a GUO WEN GUI, a/k/a WAN
    GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO,
7   GENEVER HOLDINGS CORPORATION, and GENEVER HOLDINGS LLC

8                        Defendant(s).

9   ----------------------------------------------X
    Index No. 652077/2017
10

11                      February 2, 2022 - Via Microsoft Teams

12

13  B E F O R E:   HONORABLE BARRY OSTRAGER, JSC

14

15  A P P E A R A N C E S:

16          O'MELVENY & MYERS LLP
                 Attorneys for Plaintiff
17               7 Times Square
                 New York, New York 10036
18               BY:  STUART SARNOFF, ESQ.
                     DAVID HARBACH, ESQ.
19                   LAURA ARONSSON, ESQ.

20

21          BAKER & HOSTETLER LLP
                 Attorneys for Defendant Kwok Ho Wan
22               45 Rockefeller Plaza
                 New York, New York 10111
23               BY:  JOHN SIEGAL, ESQ.
                     TRACY COLE, ESQ.
24                   ERICA BARROW, ESQ.

25

                    Rachel C. Simone, CSR, RMR, CRR

2

1   APPEARANCES CONTINUED:

2

3              CHIESA SHAHINIAN GIANTOMASI PC
                   Attorneys for HK International
4                  11 Times Square, 34th Floor
                   New York, New York 10036
5                  BY:  LEE VARTAN, ESQ.

6

7

8                         - 0 -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Ivanov - by Defendant - Cross / Harbach

82

```
 1        A    Lady May is currently in Genoa, Italy.

 2        Q    How long has it been there?

 3        A    I believe the boat arrived approximately a week before

 4   I joined the boat, so I would say late September.  I am not sure

 5   about the exact date.

 6        Q    Late September of 2021?

 7        A    Yes, that's correct.

 8        Q    When was the last time that the Lady May sailed

 9   anywhere with you as the captain?

10        A    I believe the boat has never sailed with me as a

11   captain.  Since I joined the both in early October, the boat has

12   been ported in Genoa.

13        Q    It hasn't gone anywhere?

14        A    That's correct, sir.

15             MR. HARBACH:  One second, Judge, please.

16                  (Brief pause)

17        Q    Mr. Ivanov, one of my colleagues was curious whether

18   you are on the Lady May at this moment?

19        A    Yes, sir, I am indeed.

20        Q    Thank you.

21             MR. HARBACH:  I have no further questions for this

22        witness.

23             Mr. Ivanov, thank you.

24             THE COURT:  You are excused, Mr. Ivanov.

25             Next witness, please.
```

**Heaslop - by Defendant - Cross / Harbach**

83

1           MR. VARTAN:  Your Honor, the defendant would call

2    Craig Heaslop to the stand.

3           Mr. Heaslop likewise has previously submitted an

4    affidavit which the parties and the Court have.  We offer

5    that as his direct testimony and again offer him for

6    cross-examination.

7           THE COURT:  The affidavit is received.  And if you

8    will locate the witness, we will swear him in and have him

9    cross-examined.

10           MR. VARTAN:  He sent me a note saying that he is

11    having some difficulty logging in, but he is keeping me

12    posted.

13           THE COURT:  Fine.  Thank you.

14                 (Brief pause)

15           THE COURT:  Mr. Heaslop?

16           THE WITNESS:  Can you hear me okay?

17           THE COURT:  Yes.  Can you raise your right hand,

18    please.  Witness sworn.

19           (Craig Heaslop is duly sworn/affirmed.)

20        CRAIG HEASLOP, having been called on behalf of

21  Defendant, first having been duly sworn, was examined and

22  testified as follows:

23  CROSS-EXAMINATION

24  BY MR. HARBACH:

25      Q    Sir, can you please tell me how to say your last name?

1      A      Heaslop.

2      Q      Okay.  Thank you.

3             Could you please spell your name for the court

4   reporter, first and last.

5      A      Craig, C-R-A-I-G.  Heaslop, H-E-A-S-L-O-P.

6      Q      I want to direct your attention to your screen.  Tell

7   me if you can see your affirmation in this case on the screen in

8   front of you?

9      A      Yes.

10     Q      The first question for you is going to be clear down in

11  Paragraph 16.  You say there that when you took the Lady May down

12  to Florida you left in the first week of October.  Do you

13  remember the exact day that you left?

14     A      No, I can't.

15     Q      Are you familiar with a website on the internet called

16  VesselFinder?  Have you ever heard of that?

17     A      Yeah, I know VesselFinder.

18     Q      Would looking at a VesselFinder plot for the Lady May

19  help you remember the exact date that you left New York?

20     A      I don't know if it will help me remember it, no.

21     Q      Would you be willing to take a look at it?

22     A      I can look at it, yeah.

23     Q      I have pulled up on the screen -- and this is just for

24  refreshment purposes and it will not be offered as an exhibit.

25             For the record, I have a Voyage Analyser up on the

1  screen for the Lady May with International Maritime Organization

2  1012359.

3      A    That's it.

4      Q    Say again?

5      A    That's it.

6      Q    That's it, okay.

7            So I will zoom in, and I'm also going to point out

8  to you that the operative date range that has been selected is

9  September 1 of 2020 and January 31 of 2022, okay?

10            MR. VARTAN:  Your Honor, I'd object to this.  I

11      don't know that this has been provided prior to the hearing.

12      So this would echo Mr. Siegel's objection that --

13            THE COURT:  He can use anything he wishes to

14      attempt to refresh the witness's recollection.  If it

15      doesn't refresh the witness's recollection, it doesn't

16      refresh the witness's recollection.

17            MR. VARTAN:  Well, that's the other point, your

18      Honor.  I don't believe that the witness said this would

19      refresh his recollection.

20            THE COURT:  I understand, but let's see what

21      happens when he looks at it.

22      Q    I am going to zoom in on New York City, Mr. Heaslop.

23  There appears to be a trajectory from the south of Manhattan out

24  into the Atlantic, and there is a little triangle on that route

25  dated October 9 of 2020.

86

1       A     Yes.

2       Q     And a little farther down the track off the coast of

3   New Jersey there is another one that says October 9, 2020.

4             So the question for you is:  Does this refresh

5   yours memory that the actual date of departure of the Lady May

6   was October 9 of 2020?

7       A     I don't pay much attention to the actual date that we

8   leave.  For me it is more what the weather is doing.  I pick the

9   day and date on the weather.

10      Q     Okay, that's fine.  All I can do is ask if it helps you

11  remember.  And you said the first week of October.  That's pretty

12  darn close if it was the 9th.

13            Okay, let's go back to your affidavit.  In

14  Paragraph 17 you say that prior to your departure you had a

15  conversation with Mr. Kwok.

16            My first question is was that conversation in

17  person?

18      A     No.

19      Q     Your affidavit says that he was a guest on the yacht at

20  the time.  Where were you?

21      A     Personally?  I was on the yacht.

22      Q     That's what I was trying to get at, maybe inartfully.

23            You were on the yacht.  Mr. Kwok was on the yacht.

24  Was the conversation, nevertheless, over a telephone or

25  something?

Heaslop - by Defendant - Cross / Harbach

87

1    A    No.  Mr. Kwok was not on the yacht when I had that

2  conversation with him.  We were docked.

3    Q    Okay.  So maybe I just misunderstood your affidavit.

4  Read the first sentence of Paragraph 17.  Just read it to

5  yourself.  I am just trying to figure out who was a guest on the

6  yacht at the time.

7    A    Okay.  What I was saying there was that he was a guest.

8  I guess that's probably a better way to phrase it.  He wasn't

9  physically on the boat when we had that conversation.  He had

10 been a guest on the boat.

11   Q    I think you said a moment ago you said that when you

12 had this conversation with him, you yourself was on the yacht?

13   A    I was on the yacht, yes.

14   Q    You remember that?

15   A    Yes.

16   Q    Okay.  And --

17            THE COURT:  Prior to October 2020, when was the

18      last time you recall Mr. Kwok being on the yacht?

19            THE WITNESS:  Prior to October 2020?

20            THE COURT:  Yes.

21            THE WITNESS:  He was on and off the yacht

22      throughout the summer as usual.  Specific dates I couldn't

23      tell you retrospectively when they came and went.

24            THE COURT:  Was he on the yacht for a significant

25      part of the month of July?

Heaslop - by Defendant - Cross / Harbach

88

1          THE WITNESS:  That was COVID.  Yes, he was.

2          THE COURT:  How about during the month of August,

3     2020?

4          THE WITNESS:  Yes.

5          THE COURT:  And how about during the month of

6     September 2020?

7          THE WITNESS:  I believe also, yes.

8          THE COURT:  And was Ms. Guo on the yacht during

9     September 2020?

10          THE WITNESS:  We did see Ms. Guo late in the

11     summer.  I am trying to remember what month it was.  I

12     couldn't recall exactly what month.

13          THE COURT:  As between Mr. Kwok and Ms. Guo, how

14     would you compare the duration of the time each of them

15     spent on the yacht during July, August, and September of

16     2020?

17          THE WITNESS:  During those months Mr. Kwok spent

18     more time on the yacht than Ms. Guo.

19          THE COURT:  A lot more time or a little more time?

20          THE WITNESS:  It was a lot more time.

21          THE COURT:  All right.

22          I interrupted you, Mr. Harbach.

23          MR. HARBACH:  That's all right, your Honor.

24     BY MR. HARBACH:

25     Q    Do you recall how long prior to your departure you had

# EXHIBIT 12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                Plaintiff,

      v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

                Defendants.

Index No. 652077/2017

Hon. Barry Ostrager

Part 61

Mot Seq. No. __

**MEMORANDUM OF LAW IN SUPPORT OF PACIFIC ALLIANCE ASIA
OPPORTUNITY FUND L.P.'S MOTION FOR ORDER OF CONTEMPT AGAINST
DEFENDANT KWOK**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

CONCLUSION ....................................................................................................................... 6

i

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Financial v. Walter J. Dowd, Inc.*
 No. 113484/2011, 2016 WL 11546917 (Sup. Ct. N.Y. Cnty. Sept. 14, 2016)..…………..….4

*McCormick v. Axelrod,*
 59 N.Y.2d 574, *amended*, 60 N.Y.2d 652 (1983)……………………………………………...4

**Statutes**

Judiciary Law § 753 ...........……………….........................…………….........................1, 4

CPLR § 5104 ...........……………..........................……… § …….........................…..1

Pacific Alliance Asia Opportunity Fund L.P. ("PAX") respectfully submits this memorandum of law in support of its motion, under CPLR § 5104 and Judiciary Law § 753, for an order (i) finding Defendant Miles Kwok in contempt of Court for disobeying the Court's October 15, 2020 Restraining Order (the "Order"); (ii) directing Kwok immediately to cause the return of his yacht (the "Lady May") to the jurisdiction of the Court; and (iii) granting such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

This Court previously has recognized that Kwok has "flaunted or exceedingly liberally interpreted" its orders, and has made "intentional or unintentional misstatements that have misled the Court."[1]  In the words of Yogi Berra, it is déjà vu all over again:  there is no doubt that Kwok knowingly has violated this Court's Order restraining him from moving his yacht[2] outside the Court's jurisdiction and—perhaps worse—he has once again put his counsel in the line of fire by instructing him to *request the Court's permission to move the yacht even though Kwok knew it already had been moved outside of U.S. territorial waters at the time that request was made*. The Court should hold Kwok in contempt, require him immediately to return the yacht to the jurisdiction, and grant whatever additional relief it deems necessary and appropriate to finally stop Kwok from making a mockery of this proceeding.

---

[1] Dkt. 647 at 26:6–8.

[2] Any suggestion by Kwok in opposition that the yacht technically is not "his" would be disingenuous nonsense.  If Kwok advances that false argument (which is directly contradicted by, among other evidence and admissions, Kwok's counsel's request at a recent conference *for Kwok* to be able to move the yacht outside this Court's jurisdiction), PAX will respond on reply. PAX notes, however, that any such argument would be irrelevant to this motion because the Order expressly covers the yacht even if it is held by another registered owner (whether it be a Kwok shell company or family member).

1

## BACKGROUND

On September 30, 2020, this Court entered a Temporary Restraining Order (the "TRO")

preventing Kwok from, among other things, "interference with any property in which he has an

interest."[3]  In issuing the TRO, the Court noted that "[a]ny violation . . . shall be considered

criminal contempt."[4]  About two weeks later, on October 15, 2020, the Court issued the Order,

which granted PAX's motion under CPLR 5229 and expressly restrained the Lady May:

> Mr. Kwok is restrained from making or causing any sale, assignment,
> transfer, or interference with any property in which he has an interest,
> whether directly or indirectly, and from paying over or otherwise
> disposing of any debt now due or thereafter coming due to him subject to
> the exceptions set forth in CPLR 5222, in accordance with the proceedings
> on the record of October 15, 2020.  ***Specifically, Mr. Kwok and/or the
> registered owners of*** (1) the Residence at the Sherry-Netherland Hotel and
> (2) ***the yacht, "the Lady May" are restrained from making or causing
> any sale, assignment, transfer, or interference with those assets.***[5]

On November 12, 2020, the Court held a conference, during which Kwok's counsel

(presumably at his client's instruction) made a specific point to ask this Court if Kwok could

move the yacht offshore:[6]

> Apparently the boat is registered offshore I believe in the British Virgin
> Islands, and there is a requirement that it return to its home port at six-
> month intervals.  It is not an issue that is going to affect in any way
> ownership or title, but ***it needs to travel offshore at some point for a brief
> period and then come back into the United States***.  And we just wanted to
> disclose that so that there is no thought that this is being secreted or
> transferred.  This is just an ordinary thing it has to do for licensing
> purposes.[7]

---

[3] [Dkt. 591](#) at 1.

[4] *[Id.](#)* at 2.

[5] [Dkt. 630](#).

[6] Moss Aff. Ex. 1 (Nov. 12, 2020 Conf. Tr.) at 12:23–25.

[7] *Id.* at 13:9–18.

Case 22-50073   Doc 50-2   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 20 of 82

The Court unequivocally responded that Kwok was ***not*** permitted to remove the yacht from this

jurisdiction and would be required to make a motion before doing so:

> You will have to make that application on papers.  I don't know anything
> about the requirement that an asset that has been restrained in the United
> States should be allowed to go to the British Virgin Islands.  I seriously
> doubt [PAX] wants that yacht to be outside the jurisdiction of the Court . .
> . You will make a motion with supporting documentation on notice to
> [PAX], and I will rule on it.  What I am not going to have happen is Mr.
> Kwok move the yacht to the British Virgin Islands and then it becomes
> potentially unavailable for [PAX] to levy upon . . . that's an application
> that has to be made on formal motion papers with supporting
> documentation and appropriate opportunity for [PAX] to reply.[8]

Although Kwok's counsel responded that he "[u]nderstood" "the Court's directive" and would

"provide that information in writing,"[9] Kwok made no such motion.

Given their experience with Kwok and his misbehavior, PAX and its counsel were

concerned by Kwok's counsel's question and did some research.  A few days later—based on

publicly available information accessed at MarineTraffic.com—PAX learned that the yacht had

in fact departed Fort Lauderdale, Florida, on ***November 1, 2020***, and as of November 18, 2020,

was located in the Bahamas at or near Old Fort Bay, Nassau.[10]  In other words, Kwok had

actually moved the yacht out of United States waters approximately ***two weeks after the Order***

and ***two weeks before his counsel sought permission for Kwok to do precisely that at the***

***November 12 conference.***

In light of this information, PAX's counsel wrote to Kwok's counsel on November 18,

2020, providing the information it had accessed as to the yacht's whereabouts, expressing its

---

[8] *Id.* at 13:19–15:4.

[9] *Id.* at 14:2–3, 15:5–6.

[10] Moss Aff. Ex. 2 (Nov. 18, 2020 Ltr.) at Ex. A.

Case 22-50073    Doc 50-2    Filed 02/28/22    Entered 02/28/22 21:19:53    Page 21 of 82

concern "given Mr. Kwok's history of making misrepresentations throughout this litigation," and asking Kwok's counsel to "confirm the location of the Lady May" and "that the vessel will be back in New York within 48 hours."[11]

Kwok's counsel never responded.  Rather, later that night, Kwok's counsel filed a letter with the Court claiming to know nothing and committing to investigate and report back:

> [W]e have just become aware this evening that the yacht, the Lady May, referenced in this Court's restraining order (NYSCEF Doc. 630) and discussed during the Pre-Trial conference held before this Court on November 11, 2020, is currently in international waters.  Although Plaintiff's counsel has just sent us a letter regarding the purported whereabouts of the yacht, we have not confirmed any details . . . We are attempting to gain additional information and will promptly inform the Court and counsel when we learn anything further.[12]

But as of today's filing—*five weeks later*—Kwok's counsel has provided no further information to either the Court or to PAX's counsel.  Also as of today, according to MarineTraffic.com, the yacht is still moored in or around Nassau, Bahamas.[13]


**ARGUMENT**

Under Judiciary Law section 753:

> In order to find that contempt has occurred in a given case, [(1)] it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect.  [(2)] It must appear, with reasonable certainty, that the order has been disobeyed.  [(3)] Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party.  [(4)] Finally, prejudice to the right of a party to the litigation must be demonstrated.

---

[11] *Id.*

[12] Dkt. No. Dkt. 649.

[13] *See* Moss Aff. ¶ 5.

4

*McCormick v. Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983); *see also Financial v. Walter J. Dowd, Inc.* No. 113484/2011, 2016 WL 11546917, at *2 (Sup. Ct. N.Y. Cnty. Sept. 14, 2016) (Ostrager, J.) (citing *McCormick* and applying the four-pronged test). PAX easily satisfies each of the four elements for contempt here.

**First**, the Order is a lawful order of the Court: an unequivocal mandate that Kwok is "restrained from making or causing any sale, assignment, transfer, or interference with [the yacht]."[14]

**Second**, Kwok disobeyed the Order by causing the yacht to leave the jurisdiction about two weeks after the Court issued the Order (and continues to disobey it).

**Third**, Kwok is a sophisticated party, who is involved with this litigation and obviously had knowledge of the Order. Moreover, his counsel specifically sought clarification of the Order at the November 12 conference,[15] during which he stated that he "[u]nderstood" "the Court's directive" that Kwok was required to make a motion before removing the yacht from the jurisdiction.[16]

**Fourth**, PAX has been prejudiced by Kwok's intentional flouting of the Order. Kwok has been trying for years to frustrate the eventual judgment of this Court, and he has been trying for far longer than that to avoid repaying his debt to PAX. Kwok shields his assets through family members and shell companies, and it will be difficult enough for PAX to collect on assets within the United States. If Kwok were permitted to expand his shell game by hiding his yacht

---

[14] *See supra* n.5.

[15] *See supra* n.6.

[16] *See supra* n.9.

somewhere on the open seas outside this Court's jurisdiction, PAX's chances of enforcing

against that asset would decrease significantly.

## CONCLUSION

For these reasons, PAX respectfully requests that the Court enter an order, under CPLR

5104 and Judiciary Law section 753, (i) finding Kwok in contempt of Court for disobeying the

Order; (ii) directing Kwok immediately to cause the return of his yacht, the Lady May, to the

jurisdiction of the Court; and (iii) granting such other and further relief as the Court deems just

and proper.


DATED: December 24, 2020                 Respectfully submitted,
         New York, New York

                                    O'MELVENY & MYERS LLP
                                    By: */s/ Edward Moss*
                                    Stuart Sarnoff (ssarnoff@omm.com)
                                    Edward Moss (emoss@omm.com)
                                    7 Times Square
                                    New York, NY 10036
                                    (212) 326-2000

                                    -and-

                                    Robert W. Seiden
                                    (rseiden@seidenlegal.com)
                                    1120 Avenue of the Americas
                                    New York, NY 10036
                                    (212) 626-6708

                                    *Attorneys for Plaintiff Pacific Alliance*
                                    *Asia Opportunity Fund L.P.*

6

## CERTIFICATION OF WORD COUNT

Plaintiff hereby certifies that this document complies with the word count provisions of Commercial Division Rule 17. This memorandum of law was prepared using Microsoft Word, and the total number of words in this memorandum of law, exclusive of the caption, title, and signature block, is less than 4,200 words.

DATED: December 24, 2020　　　Respectfully submitted,
　　　　　New York, New York

　　　　　　　　　　　　　　　O'MELVENY & MYERS LLP
　　　　　　　　　　　　　　　By: */s/ Edward Moss*　　　　
　　　　　　　　　　　　　　　Edward Moss (emoss@omm.com)
　　　　　　　　　　　　　　　7 Times Square
　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　(212) 326-2000

　　　　　　　　　　　　　　　*Attorneys for Plaintiff Pacific Alliance*
　　　　　　　　　　　　　　　*Asia Opportunity Fund L.P.*

# EXHIBIT 13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

               Plaintiff,

      v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

               Defendants.

Index No. 652077/2017

Hon. Barry Ostrager

Part 61

Mot Seq. No. 12

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S MOTION FOR ORDER OF CONTEMPT AGAINST DEFENDANT KWOK

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    The October 15 Order Prohibited the Lady May from Being Moved
        Outside this Court's Jurisdiction............................................................................ 1

    II.   The Court Should Hold Kwok in Contempt. ......................................................... 4

CONCLUSION..................................................................................................................... 11

i

Case 22-50073   Doc 50-2   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 28 of 82

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*1319 Third Ave. Realty Corp. v. Chateaubriant Rest. Dev. Co., LLC,*
    2007 WL 2701271 (N.Y. Sup. Ct. Sept. 17, 2007) ................................................... 10

*2619 Realty, LLC v. Fid. & Guar. Ins. Co.,*
    303 A.D.2d 299 (1st Dep't 2003) ........................................................................... 2

*Bogoni v. Friedlander,*
    197 A.D.2d 281 (1st Dep't 1994) ........................................................................... 6

*Dep't of Hous. Pres. & Dev. of City of New York v. Deka Realty Corp.,*
    208 A.D.2d 37 (2d Dep't 1995) ............................................................................. 10

*L & R Expl. Venture v. Grynberg,*
    2011 WL 1564647 (N.Y. Sup. Ct. Apr. 19, 2011) ................................................. 10

*Wengui v. Zeng,*
    Index No. 157025 (N.Y. Sup. Ct. Sept. 2, 2020) .................................................... 5

**Other Authorities**

MERRIAM-WEBSTER.COM, *Interfere* ........................................................................... 2

**Rules**

N.Y. R. Professional Conduct 3.3 ................................................................................ 4

## PRELIMINARY STATEMENT[1]

Given this case's history, it is not clear whether Kwok's Opposition is the single most disingenuous submission he has made to this Court. But it certainly is up there. With a straight face, Kwok argues that (i) moving and keeping the Lady May outside this Court's jurisdiction did not violate the October 15 Order—even though the Court expressly and repeatedly has said that it did; and (ii) even if moving the yacht were a violation, Kwok should not be sanctioned because he does not own the Lady May—even though he repeatedly has stated, both in a court filing and on social media, that he does. Enough is enough. The Court should hold Kwok in contempt and impose a sanction sufficient to motivate him to comply with the Order and bring his yacht back to this jurisdiction—and keep it here.

## ARGUMENT

### I.  The October 15 Order Prohibited the Lady May from Being Moved Outside this Court's Jurisdiction.

Kwok does not dispute that (i) the October 15 Order restrained, "in accordance with the proceedings on the record of October 15, 2020," both "Kwok and/or the registered owners of . . . 'the Lady May' . . . from making or causing any sale, assignment, transfer, or *interference* with th[at] asset[]";[2] or (ii) the Lady May has been moved out of U.S. waters. Instead, he argues that the move out of the Court's jurisdiction did not technically violate the October 15 Order because

---

[1] This brief refers to (i) Defendant Kwok Ho Wan's Memorandum of Law in Opposition to Plaintiff's Motion for an Order of Contempt (Dkt. No. 698) as the "Opposition" or "Opp;" (ii) the Affirmation of Edward Moss in Further Support of  Pacific Alliance Asia Opportunity Fund L.P.'s Motion for Order of Contempt Against Defendant Kwok as the "Moss Reply Aff."; and (iii) the Affirmation of Nathaniel Francis in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Motion for Order of Contempt Against Defendant Kwok as the "Francis Aff." Unless otherwise specified, (i) defined terms have the meaning given to them in the Memorandum of Law in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Motion for Order of Contempt Against Defendant Kwok (Dkt. No. 689), (ii) all emphasis is added, and (iii) all internal citations and quotations are omitted.

[2] Opp. at 3 (citing (Dkt. No. 630)).

1

(i) the Lady May's "ownership" has not changed; (ii) "Plaintiff neither asked for nor received

any direction from the Court prohibiting the Lady May's relocation" at the October 15 hearing;

and (iii) the Court explained at the October 15 hearing that ordinary course expenditures—for

example, "if Mr. Kwok wants to take a vacation in the middle of the coronavirus pandemic"—

were permitted.[3]

These arguments are frivolous.  To begin, Kwok has no answer for why moving the yacht

does not count as "interference" with the October 15 Order (it does),[4] nor how spending money

in the ordinary course on a vacation somehow equates to moving a restrained, multi-million

dollar asset outside of the jurisdiction (it does not).  Indeed, the Court already has rejected

Kwok's "ordinary-course" argument.  In response to Kwok's counsel's question seeking

clarification as to whether the restraining order applied to the payment of legal fees, the Court

explained the contours of what it meant by "ordinary course."[5]  *Immediately after that*

*clarification*, Kwok's counsel asked whether the Lady May could be moved to the British Virgin

Islands because that was "just an *ordinary thing* that is has to do for licensing purposes."[6]  The

Court responded in no uncertain terms that Kwok *was not permitted to move the yacht before*

*making (and winning) a motion seeking leave to do so*.[7]

---

[3] Opp. at 6–9.

[4] "[I]t is common practice for the courts of this State to refer to the dictionary to determine the plain and
ordinary meaning of words to a contract."  *2619 Realty, LLC v. Fid. & Guar. Ins. Co.*, 303 A.D.2d 299,
301 (1st Dep't 2003).  The ordinary meaning of "to interfere" is "to interpose in a way that hinders or
impedes."  MERRIAM-WEBSTER.COM, *Interfere* (*available at* https://www.merriam-
webster.com/dictionary/interfere).

[5] *See* Dkt. 691 at 12:23–13:5 (permitting legal fees that are "customary and reasonable").

[6] *Id.* at 13:9–18.

[7] *Id.* at 13:19–24.

2

Worse, Kwok completely ignores this Court's ***repeated, clear, and unequivocal statements*** that moving the Lady May ***would (and did) violate the Order***.  First, at the October 15 hearing (which was expressly incorporated into the October 15 Order that issued later that day), the Court specifically discussed the Lady May and directed Kwok that the yacht and other assets not be moved so that they would be available for collection if PAX were to prevail (*i.e.*, so as not to ***interfere*** with PAX's potential judgment-enforcement efforts):

> ***Wherever these assets are held, <u>they are going to remain held where they presently reside</u>*** and if it's determined that the entities that are presently listed as the owners of the assets are the alter ego of Mr. Kwok or are wholly dominated and controlled by Mr. Kwok, ***those assets will be made available to satisfy any judgment that the plaintiff recovers.***[8]

Then, at the November 20 hearing, Kwok's counsel asked "two questions . . . ***clarifying the scope of the restraining order*** that the Court has entered"—one of which was whether the Lady May could be moved outside the jurisdiction (even though, we now know, it already had been moved by that time).[9]  As noted above, the Court unequivocally answered "no"—not without first making and winning a motion and a further Court order:

> You will have to make that application on papers.  ***I don't know anything about the requirement that an asset that has been restrained in the United States should be allowed to go to the British Virgin Islands***.  I seriously doubt Mr. Moss wants that yacht to be outside the jurisdiction of the Court. . . . ***<u>What I am not going to have happen is Mr. Kwok move the yacht to the British Virgin Islands</u> and then it becomes potentially unavailable for Mr. Moss's client to levy upon***. . . . Mr. Siegal asked me a question about ***<u>whether the restraining order can be modified to allow this yacht to move from a US port to the British Virgin Islands</u>***, and I said that's an application that has to be made on formal motion papers with supporting documentation and appropriate opportunity for Mr. Moss to reply.[10]

---

[8] [Dkt. No. 647](#) at 22:8–14.

[9] [Dkt. No. 691](#) at 12:23–25.

[10] [Dkt. No. 691](#) at 13:19–15:4.

3

Case 22-50073    Doc 50-2    Filed 02/28/22    Entered 02/28/22 21:19:53    Page 32 of 82

Finally, at the most recent hearing on December 18, the Court again reiterated what should have been quite obvious to Kwok by that point:

> Okay. So, let me ask you, we have an issue **with respect to a <u>boat that I enjoined Mr. Kwok from moving</u>** which he may or may not have **<u>moved in violation of the Court's order</u>**. . . . It seems to me **<u>I ordered the boat not be moved</u>**.[11]

Given the plain meaning of "interference" (*see supra* note 4) and the Court's repeated, unequivocal directives, there is no question that the October 15 Order has been violated. Kwok's suggestion otherwise is misleading.[12] And if Kwok argues that he should get a pass because the yacht already had been moved by the time of the October 15 hearing (*i.e.*, before his counsel asked and was denied permission to move it), then the answer is quite simple: it should have been brought back *immediately* after the Court issued the October 15 Order.[13]

## II.    The Court Should Hold Kwok in Contempt.

While Kwok advances several other meritless arguments for why he personally should

---

[11] Dkt. No. 695 at 25:15–18, 27:21–22.

[12] *See* N.Y. R. Professional Conduct 3.3(a)(1) (providing that a lawyer's duty of candor toward the tribunal prohibits him or her from knowingly "mak[ing] a false statement of fact or law to a tribunal"); *see also* Dkt. No. 647 at 21:11–16 ("The Court believes . . . that Mr. Kwok has attempted to mislead the Court. The Court believes that Mr. Kwok is, as the plaintiff contends, playing a shell game with his assets, and has violated if not the letter of court orders, the spirit of court orders."), 26:5–9 ("While orders of the Court are either flaunted or exceedingly liberally interpreted, and while intentional or unintentional misstatements that have misled the Court have been made to the Court, we are going to have closure in this case in January of 2021.").

[13] We take Kwok's counsel at his word that he did not know the Lady May already had been moved out of the jurisdiction when he asked the Court if the Lady May could be moved out of the jurisdiction. But later—after being informed by PAX that the yacht was actually out of the jurisdiction—Kwok's counsel wrote to the Court and explained that because his firm had just been informed by PAX about the yacht's location, "we have not confirmed any details," but were "attempting to gain additional information and will promptly inform the Court and counsel when we learn anything further." Dkt. No. 649. Contrary to that representation, however, Kwok did not, before responding to this Motion, provide any additional information to the Court about the yacht's location. *See* N.Y. R. Professional Conduct 3.3(b) ("A lawyer who represents a client before a tribunal and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.").

4

not be held in contempt, they all reduce to his core assertion that he does not own—and therefore cannot control the movements of—the Lady May.  Who does Kwok think he's kidding?

As PAX already has demonstrated, Kwok alleged fewer than five months ago—in a September 1, 2020 complaint *he filed i*n New York Supreme Court—that "pawns of the Chinese Communist Party . . . have attempted to cause Guo [a/k/a Kwok] injury while on *his yacht*."  *See Wengui v. Zeng*, Index No. 157025/2017 (N.Y. Sup. Ct. Sept. 2, 2020), <u>Dkt. No. 1</u> (Complaint at ¶ 8).  That sentence in Kwok's own complaint ends with a footnote that cites and links to (and thereby incorporates by reference) an article by *freebeacon.com* entitled "Beijing Suspected in Hacking Yacht *Owned by* Chinese Billionaire," which states that "Guo Wengui, who uses the English name *Miles Kwok, said* several incidents involving *his 152-foot motor yacht, Lady May*, appear to be part of a Chinese government effort to threaten and intimidate him."[14]  It is not surprising, then, that in the context of restraining the Lady May, the Court described it as the "27 million-dollar yacht *which Mr. Kwok once claimed to have owned*."[15]

Notably, counsel for the Genever Defendants in this action, Aaron Mitchell, serves as counsel for Kwok personally in *Wengui v. Zeng*.  Mr. Mitchell signed the complaint that repeatedly referred to the Lady May as "his [*i.e.*, Kwok's] yacht" and incorporated by reference the *freebeacon.com* article reporting that the yacht was "owned" by Kwok.  Even though Mr. Mitchell supposedly does not represent Kwok in this case, he argued on Kwok's behalf at the December 18 hearing, contending that his September 2020 complaint "wasn't referring to ownership," but rather merely to "the fact that Mr. Kwok was on that boat," and chided PAX's

---

[14] *See id.* at 3 n.1 (citing <u>https://rntfnd.org/2017/09/18/fbi-investigating-possible-china-cyberattack-on-yacht-in-new-york/</u>).  The complaint also refers to the Lady May as "his" (*i.e.*, Kwok's) yacht in Paragraph 7 and in Prayer for Relief (d).

[15] <u>Dkt. No. 647</u> at 22:5–6.

Case 22-50073   Doc 50-2   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 34 of 82

counsel for its "absurd reliance" on that pleading.[16]  Given Kwok's track record, perhaps Mr. Mitchell was onto something when he suggested it was "absurd" for PAX to actually rely on Kwok's own words.

Kwok's Opposition is even more disingenuous; it mischaracterizes PAX as arguing that Kwok owns the yacht in part because he was supposedly a "guest" on it (something PAX has never argued), and claims that PAX has no evidence of ownership.[17]  Even if Kwok's ***own pleading***—a judicial admission[18]—were insufficient to establish ownership (and it is more than sufficient), PAX has much, much more:

On May 10, 2017, Kwok "tweeted" (on his since-suspended Twitter account) the following photo of himself sitting on the Lady May, accompanied by Chinese characters that, translated, state "I am posting a few photos of the yacht ***I gave to my daughter*** and named after her. . . . Her name is Lady May. . . . ***I bought it for 41 million euro***":[19]

---

[16] Dkt. No. 695 at 26:23–27:12.

[17] Opp. at 8–9.

[18] *See Bogoni v. Friedlander*, 197 A.D.2d 281, 291–292 (1st Dep't 1994) (An admission in an initial pleading is a "formal judicial admission" which is "evidence of the facts admitted.").

[19] Francis Aff. Ex. A.

6



20

Then, on August 27, 2017, Kwok (again, on his since-suspended account), referred to the "Lady May" as "*my ship*" and recalled that "two years ago when I was in Miami . . . *I [] signed the most important investment contract of my life*," and it "all seems so meaningful."[21]

But we have saved the best for last. As an October 14, 2017 YouTube video shows,[22] Kwok was filmed *stating unequivocally that the boat was his*:[23]

> *I decided to sell it* because it has an aluminum body. With an aluminum body, it drifts a bit at sea. It's okay in shallow waters. I wanted to use the heavier one, the bigger one, which is also a Feadship, since it is made of steel. I wanted to go further out to sea. . . . *I advertised it twice*, but my offers were relatively high, about US$50 million, 31 million euros, which

---

[20] *Id.*

[21] *Id.*

[22] *See* Moss Reply Aff. ¶ 3 (directing the Court to minute 2:50 through minute 4:15 in a YouTube video available at https://youtu.be/T_EkmRpIqh8).

[23] Moss Reply Aff. Ex. 4.

7

was around US$50 million.  When *I listed* it at that higher price, *I had one offer* just below *my* asking price, but *I did not sell it.*





[24]

This is all straight from Kwok's mouth:  *He* bought the Lady May, *he* had it shipped, *he* decided to list it for sale, and *he* put it in his daughter's name to shield it from creditors.  Kwok's contention that he is merely some "guest" aboard the yacht is (yet another) flat-out lie.

---

[24] *Id.*  The screenshots were taken directly from YouTube and already included the captions, which a certified translation confirms are substantially accurate.  *See* Moss Aff. Ex. 4.

Of course, Kwok's contention that he does not own or control the Lady May and that it is really owned by an entity, HK International Funds Investments (USA) Limited LLC, which is wholly owned and controlled by his daughter Mei (pronounced "May") Guo, is right on-brand. Kwok is a self-proclaimed billionaire who, when it suits him, pretends to have no assets[25] precisely because his practice is to use shell companies and his children and employees to shield his assets. For example, Kwok is now claiming in the Genever bankruptcy case that the Genever Defendants are beneficially owned by another shell company that is owned by his son—despite never disclosing that to the Sherry-Netherland and never making that argument before this Court to try to avoid an attachment.[26] And not only has Kwok repeatedly stated that the Lady May is "his" (including in the above-described September 2020 complaint that he filed *after* he supposedly gave the yacht to his daughter), but HK International is a mere shell company (i) that did not have the yacht registered in its name until April 2020 (when PAX was in the red zone in this litigation);[27] and (ii) with a "principal office" address of 162 E. 64th Street—the same address as (surprise!) the offices of Mr. Mitchell—who regularly represents Kwok or his shell entities, depending on the case.[28]

*     *     *

During the October 15 hearing, even before the Court knew that Kwok had moved the yacht, it explained that in this "2017 case in which there's been a great deal of gamesmanship, a

---

[25] Dkt. No. 580 at 100:2–3 (testifying that his net worth is "negative"); 101:3–5 (testifying that "[i]n reality, under the law" he has "no" assets).

[26] *See* Moss Reply Aff. Ex. 5 at ¶ 4 (claiming that Bravo Luck is (i) "the beneficial owner" of the Sherry-Netherland apartment and (ii) "a company owned by Mr. Qiang Guo, the son of Mr. Kwok Ho Wan a/k/a Miles Kwok").

[27] *See* Opp. at 4, n.2.

[28] *See* Dkt. No. 705 at 1.

great deal of dissembling, and some flagrant disregard of court orders . . . [t]he Court believes

that Mr. Kwok is, as the plaintiff contends, playing a shell game with his assets . . . ."[29]  The

Court further stated that "we are not going to have any more shell games."[30]  Unfortunately,

Kwok's shell games have continued, his dissembling and gamesmanship have only intensified,

and he has once again flagrantly violated an order of this Court.

This Court has the discretion to impose a sanction on Kwok sufficient to motivate him to

comply with the October 15 Order.  Indeed, "the purpose of civil contempt is to coerce

obedience to a court order."[31]  In a separate case against him in Nevada, for example, Kwok was

sanctioned $250,000 per day until he finally complied with a court order requiring him to meet

his most basic discovery obligations.[32]  The violation here is far worse.

Given Kwok's repeated violation of this Court's orders, his obvious financial means as a

self-proclaimed multi-billionaire, and the gravity of and materiality to PAX of the current

violation, PAX respectfully requests a sanction—monetary or otherwise—that is sufficient to

compel Kwok to comply with the October 15 Order and bring the Lady May back to the

jurisdiction immediately.

---

[29] Dkt. No. 647 at 24:9–11; 21:13–15.

[30] Id. at 22:7.

[31] *1319 Third Ave. Realty Corp. v. Chateaubriant Rest. Dev. Co., LLC*, 2007 WL 2701271, at *2 (N.Y. Sup. Ct. Sept. 17, 2007); *see also Dep't of Hous. Pres. & Dev. of City of New York v. Deka Realty Corp.*, 208 A.D.2d 37, 42 (2d Dep't 1995) ("A civil contempt penalty is imposed not to punish but, rather, to compensate the injured private party or to coerce compliance with the court's mandate."); *L & R Expl. Venture v. Grynberg*, 2011 WL 1564647, at *4 (N.Y. Sup. Ct. Apr. 19, 2011) ("The court has authority to punish a litigant that disobeys a lawful mandate.  The purpose of civil contempt is to coerce compliance with a court order or to compensate a party who is injured as a result of disobedience of a court order.").

[32] *See* Dkt. No. 557 at 2 (ordering Kwok to provide the Court with a phone number where he could be reached and either (i) an address where he would accept service of discovery documents, or (ii) and email address where such documents may be sent).

## CONCLUSION

For these reasons, PAX respectfully submits that the Court should hold Kwok in

contempt and order appropriate sanctions.


DATED: January 27, 2021          Respectfully submitted,
       New York, New York
                               O'MELVENY & MYERS LLP
                               By: */s/ Edward Moss*
                               Stuart Sarnoff (ssarnoff@omm.com)
                               Edward Moss (emoss@omm.com)
                               7 Times Square
                               New York, NY 10036
                               (212) 326-2000

                               -and-

                               Robert W. Seiden
                               (rseiden@seidenlegal.com)
                               1120 Avenue of the Americas
                               New York, NY 10036
                               (212) 626-6708

                               *Attorneys for Plaintiff Pacific Alliance*
                               *Asia Opportunity Fund L.P.*

## CERTIFICATION OF WORD COUNT

PAX hereby certifies that this document complies with the word count provisions of

Commercial Division Rule 17. This memorandum of law was prepared using Microsoft Word,

and the total number of words in this memorandum of law, exclusive of the caption, title, and

signature block, is less than 4,200 words.


DATED: January 27, 2021                    Respectfully submitted,
      New York, New York

                                        O'MELVENY & MYERS LLP
                                        By: */s/ Edward Moss*
                                        Edward Moss (emoss@omm.com)
                                        7 Times Square
                                        New York, NY 10036
                                        (212) 326-2000

                                        *Attorneys for Plaintiff Pacific Alliance*
                                        *Asia Opportunity Fund L.P.*

# EXHIBIT 14

INDEX NO. 652077/2017
NYSCEF DOC. NO. 728
RECEIVED NYSCEF: 03/16/2021

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:   **HON. BARRY R. OSTRAGER**        PART        **IAS MOTION 61EFM**

*Justice*

-------------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

|  |  |
|---|---|
| **INDEX NO.** | 652077/2017 |
| **MOTION DATE** |  |
| **MOTION SEQ. NO.** | 012 |

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, et al.,

**DECISION + ORDER ON MOTION**

Defendants.

-------------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

Before the Court is Motion 012 by Plaintiff Pacific Alliance Asia Opportunity Fund L.P.

("PAX") to hold Defendant Kwok Ho Wan ("Kwok") in contempt. This Court previously issued

three orders restraining Kwok's interest in the yacht called the "Lady May." On September 30,

2020, this Court entered a Temporary Restraining Order (the "TRO") preventing Kwok from,

among other things, "interference with any property in which he has an interest." NYSCEF Doc.

No. 591. In issuing the TRO, the Court noted that "[a]ny violation . . . shall be considered

criminal contempt." *Id.* On October 15, 2020, the Court issued the Order, which granted PAX's

motion under CPLR 5229 and expressly restrained the Lady May:

> Mr. Kwok is restrained from making or causing any sale, assignment, transfer, or
> interference with any property in which he has an interest, whether directly or
> indirectly, and from paying over or otherwise disposing of any debt now due or
> thereafter coming due to him subject to the exceptions set forth in CPLR 5222, in
> accordance with the proceedings on the record of October 15, 2020. Specifically,
> Mr. Kwok and/or the registered owners of (1) the Residence at the Sherry-
> Netherland Hotel and (2) the yacht, "the Lady May" are restrained from making
> or causing any sale, assignment, transfer, or interference with those assets.

NYSCEF Doc. No. 630. Counsel for Kwok specifically asked the Court whether Kwok could move the yacht from the jurisdiction for licensing purposes. The Court denied this request at the time and directed counsel to make a motion if necessary.

Plaintiff brings this motion because, despite these orders, the Lady May has been moved outside of the United States.

The Court has reviewed the extensive submissions of the parties in connection with PAX's motion to hold Kwok in contempt.  Passing the issue of whether any of Mr. Kwok's attorneys have violated the Code of Professional Conduct, it is clear that there has been an intolerable amount of gamesmanship, dissembling. and deceit in proceedings before this Court relating to the whereabouts and ownership of the yacht "Lady May."

The defendant claims that the yacht was removed from the jurisdiction of this Court for "ordinary course" "winter maintenance" notwithstanding restraints imposed on the movement of the yacht by the Court.  Rather than catalogue the many "shell games" defendant Kwok has engaged in with the assistance of counsel who should know better, the Court grants the motion for contempt to the following extent:  For every day that the yacht is outside the jurisdiction of this Court after May 15, 2021, defendant Kwok will be fined $500,000.  The other restraints relating to the ownership and control of the yacht remain in place.

NYSCEF DOC. NO. 728

INDEX NO. 652077/2017
RECEIVED NYSCEF: 03/16/2021

A status conference remains scheduled for May 4, 2021 at 10:00 am.

Dated: March 16, 2021

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | ☒ GRANTED | | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

3

# EXHIBIT 15

FILED: APPELLATE DIVISION - 1ST DEPT 02/15/2022 09:09 AM

NYSCEF DOC. NO. 4

2022-00609

RECEIVED NYSCEF: 02/15/2022

**O'Melveny**

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

February 15, 2022

**Stuart Sarnoff**
D: +1 212-326-2293
ssarnoff@omm.com

**VIA NYSCEF**

Ms. Susanna Molina Rojas
Clerk of the Court
Supreme Court of the State of New York
Appellate Division, First Judicial Department
27 Madison Avenue
New York, NY 10010

Re:   *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok, et al. (Case Nos. 2022-00609,
2022-00610; New York County Clerk's Index No. 652077/2017)*

Dear Ms. Rojas:

    We write on behalf of Plaintiff-Appellee Pacific Alliance Asia Opportunity Fund L.P.
("PAX") concerning Defendant-Appellant Miles Kwok's request for an interim administrative
stay pending his appeal of Justice Ostrager's February 9, 2022 Decision and Order in the above-
captioned case, as well as the Final Order of Civil Contempt issued the same day. For the
reasons set forth below, PAX respectfully requests that the Court deny the entry of an interim
stay unless Kwok posts a bond in the amount of $134 million pursuant to CPLR § 5519(a)(2).[1]

    The underlying litigation concerns a 2008 loan from PAX to Kwok, which Kwok has
avoided repaying for well over a decade. On December 18, 2020, PAX obtained a judgment
against Kwok in the amount of $116,402,019.57.[2] Kwok appealed that judgment but did not
post a bond, and to date has not paid one penny of the outstanding amount, which is now over
$127 million with accrued interest. In the interim, as Justice Ostrager has repeatedly observed,
Kwok has engaged in a series of increasingly elaborate "shell games"[3]—including, among other
things, concealing and shielding his substantial assets in shell companies and family members—
to avoid satisfying the judgment.

---

[1] This letter addresses only Kwok's request for an interim administrative stay. PAX reserves the
right to file a more fulsome brief in opposition to Kwok's motion for a stay pending resolution of
Kwok's appeal of Justice Ostrager's February 9, 2022 Decision and Order and the Final Order of
Civil Contempt. Exhibits cited as Ex. [NUMBER] are attached to this letter. Exhibits cited as
Ex. [LETTER] are attached to the Affirmation of Ira Brad Matetsky in support of Kwok's Stay
Motion, Dkt. 3.
[2] Ex. 1, Judgment, Feb. 3, 2021, Index No. 652077/2017, Dkt. No. 716, at 2.
[3] Ex. 2, Hearing Transcript, Oct. 15, 2020, at 21:13-16, 22:7-14.

---

Austin  ·  Century City  ·  Dallas  ·  Los Angeles  ·  Newport Beach  ·  New York  ·  San Francisco  ·  Silicon Valley  ·  Washington, DC
Beijing  ·  Brussels  ·  Hong Kong  ·  London  ·  Seoul  ·  Shanghai  ·  Singapore  ·  Tokyo

O'Melveny

This appeal involves one such willful and unlawful evasion tactic that has already been condemned by this Court.  Specifically, after the motion court granted summary judgment in PAX's favor, Justice Ostrager restrained Kwok from transferring ownership in or physically moving his major assets outside the jurisdiction—including an almost $70 million Fifth Avenue apartment and the *Lady May*, his luxury yacht worth approximately $30 million.  Yet, in blatant violation of the motion court's unambiguous directive, Kwok thereafter moved his yacht to the Caribbean and then to Europe.  In response, the motion court issued an order of conditional contempt in March 2021, allowing Kwok two months (until May 15, 2021) to return the *Lady May* to New York or else face a daily fine of $500,000.  This Court unanimously affirmed the motion court's conditional contempt order on November 4, 2021, holding that the contempt determination was proper because PAX had "established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights."  *Pac. All. Asia Opportunity Fund L.P. v. Wan*, 199 A.D.3d 423, 423 (1st Dep't 2021).  Further, this Court condoned the motion court's imposition of a $500,000 fine for each day the yacht remained outside of New York after May 15, 2021, holding that the fine was properly "intended to strongly encourage defendant to purge himself of the contempt, which, despite being permitted two months to accomplish, he has shown no interest in doing."  *Id.*  This Court then instructed the motion court to "proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties."  *Id.*

In accordance with this Court's directive, the motion court held an evidentiary hearing on February 2, 2022.  Seven witness presented direct testimony by affidavit and each affiant was cross-examined.  On February 9, 2022, Justice Ostrager issued a final order of civil contempt against Kwok, holding that the evidence adduced at the hearing "clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[4]  Imposing the $500,000 daily fine previously affirmed by this Court, Justice Ostrager ordered Kwok to remit $134 million to PAX within five business days.[5]

Kwok noticed his appeal from that ruling on February 10, 2022, and now seeks both an interim stay and a stay pending appeal.  There are two independent reasons the interim stay should be denied.  First, Kwok has no likelihood of success on the merits because this Court has already rejected his legal challenges to Justice Ostrager's contempt order.  Indeed, all that remained after this Court rejected Kwok's previous contempt-related appeal was for the trial court to conduct an evidentiary hearing to determine "ownership and control of the yacht, and to assess appropriate penalties."  199 A.D.3d at 423.  There is no real chance that the Court will reverse the trial court's evidence and credibility-based factual findings on appeal, and, as noted above, Kwok's legal challenges to the contempt order (including to the size of the fine) have already been rejected by this Court.

The second and more immediate reason for denying an interim stay is that further delay will irreparably harm PAX.  CPLR § 5519(a)(2) provides for a stay of "all proceedings to

---

[4] Ex. A, Dkt. 1181 at 4.

[5] *Id.* at 2.

enforce the judgment or order appealed from" where "the judgment or order directs the payment of a sum of money, and an undertaking in that sum is given" such that if the judgment appealed from is affirmed, the appellant "shall pay the amount directed to be paid by the judgment." *See, e.g.*, *CT Chems. (U.S.A.) Inc. v. Vinmar Impex, Inc.*, 189 A.D.2d 727, 729 (1st Dep't 1993) (defendant was not protected from levy because it failed to post an undertaking pursuant to CPLR 5519(a)(2)); *Agai v. Liberty Mut. Agency Corp.*, 118 A.D.3d 830, 832 (2d Dep't 2014) (explaining that the "posting of the bond" under CPLR 5519(a)(2) effected a "stay of enforcement of the order and the judgment," which was extinguished upon the court's determination of the appeal). In the event Kwok posts such a bond, PAX would consent to his request for an interim stay and a stay pending appeal, and already has told him so.[6] But if Kwok does not post a bond, any delay will vastly increase the likelihood that Kwok will evade satisfying the trial court's contempt judgment, just as he has evaded satisfying the final judgment on the merits.

Indeed, the same day the trial court issued its contempt order (February 9), Kwok took to social media, announcing his plan to "wage a full-scale war on the PA[X] case," and expressing his intention to flee the country.[7] Kwok stated that "I'll probably go to two places very soon …. One is London, the other is Japan."[8] Kwok then reaffirmed that "I'll probably move to London and Japan," explaining that "[t]his may happen at any time," and that he "may leave tomorrow, or next week."[9] It is no coincidence that Kwok's threats to abscond came just hours after Justice Ostrager ordered Kwok to pay $134 million to PAX, and Kwok's reaction is—as the motion court wrote in the context of its final contempt ruling—"of a piece with every other evasive and contemptuous act Kwok has taken during this litigation."[10] Kwok has consistently demonstrated that he has "utter contempt for [the] Court and the judicial process,"[11] and that he will go to great lengths to avoid satisfying his legal obligations to PAX. Accordingly, as a self-described multi-billionaire with access to private jets, Kwok's threats to evade the trial court's reach by fleeing the jurisdiction should be taken at their word. Granting an interim stay would give Kwok more time to plan his escape and thereby greatly jeopardize PAX's ability to enforce the motion court's order, not to mention the underlying $127 million judgment.

Meanwhile, there are no equities at all in Kwok's favor. Kwok could have avoided the imposition of even one dollar of a fine had he simply returned his yacht to New York before May 15, 2021, so he has no one to blame for his completely avoidable current situation. Nor can Kwok claim surprise or prejudice. He has known for over a year that the yacht was restrained—and that he faced the very real risk of civil contempt sanctions at the rate of $500,000 multiplied

---

[6] PAX conveyed its position to Kwok's counsel in a February 13, 2022 email in response to Kwok's counsel asking whether PAX would consent to an interim stay and a stay pending appeal. *See* Ex. 3, Feb. 14 email from S. Sarnoff.

[7] Ex. 4, Feb. 9. 2022 GETTR Posts; *see* Ex. 5, Bowden, John, *Fugitive Chinese Billionaire and Bannon Ally Threatens to Leave the US After Judge Orders Him to Pay $134m or Face Arrest*, THE INDEPENDENT (Feb. 10, 2022).

[8] Ex. 4, Feb. 9. 2022 GETTR Posts.

[9] *Id.*

[10] Ex. A, Dkt. 1181 at 7.

[11] *Id.* at 4.

O'Melveny

by the number of days since May 15, 2021—yet he has taken no steps to obviate that fine or purge himself of contempt, as this Court previously recognized. 199 A.D.3d at 423. Kwok was provided a two-month grace period to comply with the motion court's directive and thereby entirely avoid any fine, and he has now had over 275 additional days to return the yacht to New York and thereby suspend the accrual of additional contempt fees. Yet Kwok has consistently refused to take any of these remedial steps, choosing instead to continue to flout and mock the judicial process.[12] Entering an interim stay would only reward what Justice Ostrager has described as Kwok's contemptuous "machinations,"[13] including, now, his threat imminently to abscond without satisfying either the underlying or civil contempt judgments. Accordingly, the equities weigh against Kwok's request for an interim stay.

For these reasons, the Court should deny Kwok's request for an interim stay unless Kwok posts a bond of $134,000,000 under CPLR § 5519(a)(2).

Respectfully submitted,

Stuart Sarnoff
for O'MELVENY & MYERS LLP

cc:      All counsel of record

---

[12] Kwok contends that he would be prejudiced absent an interim stay because of the possibility the motion court would subject him to imprisonment. Stay Mot. at 22. But all Kwok has to do to avoid that result is post a bond, which should not be a problem for a self-proclaimed multi-billionaire.

[13] *Id.* at 7.

# EXHIBIT 1
# TO EX. 15

Case 22-50073    Doc 50-2    Filed 02/28/22    Entered 02/28/22 21:19:53    Page 51 of 82

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

        Plaintiff,

    v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

        Defendants.

17 652077

Index No. 652077/2017

[~~PROPOSED~~] JUDGMENT

WHEREAS, on April 18, 2017, Plaintiff Pacific Alliance Asia Opportunity Fund L.P.,

filed a complaint against Defendant Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Gwo Wen Gui, a/k/a

Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok, a/k/a Haoyun Guo

("Kwok"), alleging a cause of action for breach of contract against Defendant Kwok.

WHEREAS, on April 18, 2019, Plaintiff filed a First Amended Complaint against Kwok,

and Genever Holdings LLC, and Genever Holdings Corporation (together with Genever

Holdings LLC, the "Genever Defendants"), alleging causes of action for (i) breach of contract

against Defendant Kwok and (ii) veil piercing against the Genever Defendants.

WHEREAS, on July 24, 2020, Plaintiff moved for partial summary judgment on its

breach of contract claim against Kwok, and the motion was fully briefed and heard before Justice

Barry R. Ostrager, who issued a Decision and Order dated September 15, 2020, which was

entered in the New York County Clerk's Office on September 16, 2020, granting Plaintiff's

motion on Count I of the Amended Complaint for breach of contract, and directed Plaintiff move

by Notice of Motion to establish damages on Count I no later than October 14, 2020.

17 652077

WHEREAS, (i) on September 21, 2020, Plaintiff moved by Notice of Motion to establish damages, legal fees and expenses; (ii) Plaintiff agreed to temporarily withdraw, without prejudice and with the Court's permission and the other parties' understanding that it would be renewed at a later date, the portion of its application relating to legal fees and expenses (i.e., enforcement costs); and (iii) the motion was fully briefed and heard before Justice Barry R. Ostrager, who issued a Decision and Order dated December 18, 2020 (the "Damages Order"), and entered into the New York County Clerk's office on December 18, 2020, directing the Clerk of Court to enter judgment in favor of Plaintiff and against Defendant Kwok in the amount of $46,426,489.00 plus contractual interest at a rate of 15% per annum from effective date of December 31, 2010 and at the statutory rate of 9% per annum from the date of entry of this decision and order.

NOW, upon motion of O'Melveny & Myers LLP, attorneys for Plaintiff, it is:

ADJUDGED that Plaintiff Pacific Alliance Asia Opportunity Fund L.P., having a business address at 33/F, Three Pacific Place, 1 Queen's Road East, Hong Kong, have judgment against and do recover from Defendant Kwok Ho Wan, residing at 781 Fifth Avenue, 18th Floor, New York, NY 10022, the amount of _____**$46,426,489.00**_____, plus contractual interest in the amount of _____**$69,448,939.71**_____, plus post-judgment interest at the statutory rate of 9% in the amount of _____**$526,590.86**_____, for a total of

**X**  **$116,402,019.57**_____, and Plaintiff shall have execution thereof.

~~Judgment signed and entered this ___ th day of _____, 2021~~

**F I L E D**
**Feb 03 2021**
NEW YORK
COUNTY CLERK'S OFFICE

_Milton Adair Tingling_

Clerk

3 rd          Feb.          2021

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

           Plaintiff,

    v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

           Defendants.

Index No. 652077/2017

**AFFIRMATION OF EDWARD MOSS,
ESQ.**



        I, Edward Moss, an attorney duly admitted to practice before the Courts of the

State of New York, hereby affirm, under penalty of perjury, pursuant to the Civil Practice Law

and Rules of the State of New York § 2106, as follows:

       1.     I am a member of the bar of this Court and a partner in the law firm of O'Melveny

& Myers LLP, counsel of record for Plaintiff Pacific Alliance Asia Opportunity Fund L.P.

("PAX") in this matter.

       2.     I am fully familiar with the facts and circumstances in this action.  For purposes

of entry of this judgment, I submit this affirmation waiving costs and disbursements.

Dated:   January 25, 2021            By:  */s/ Edward Moss*
         New York, New York                 Edward Moss

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
Index No. 652077/2017

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND
L.P.,

Plaintiff,

-against-

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN
GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI,
a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK,
a/k/a HAOYUN GUO, GENEVER HOLDINGS
CORPORATION, and GENEVER HOLDINGS LLC,

Defendants.

**JUDGMENT**

~~[PROPOSED]~~ JUDGMENT

**O'MELVENY & MYERS LLP**

TIMES SQUARE TOWER
7 TIMES SQUARE
NEW YORK, NEW YORK  10036
(212) 326-2000

Attorneys for Plaintiff Pacific Alliance Asia Opportunity
Fund, L.P.

**F I L E D**

**Feb 03 2021**

NEW YORK
COUNTY CLERK'S OFFICE

# EXHIBIT 2
# TO EX. 15

1

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF NEW YORK:  TRIAL TERM PART 61

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

4   PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

5                              Plaintiff,

6        - against -

7   KWOK HO WAN, a/k/a KWOK HO a/k/a GWO WEN GUI
    a/k/a GUO WENGUI a/k/a GUO WEN-GUI a/k/a
8   WAN GUE HAOYUN a/k/a MILES KWOK a/k/a HAOYUN GUO,
    GENEVER HOLDINGS CORPORATION and GENEVER HOLDINGS LLC,
9
                               Defendants.
10
    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
11  Index No. 652077/2017

12                      October 15, 2020
                        Teams Proceeding
13
    B E F O R E:   THE HONORABLE BARRY R. OSTRAGER, Justice
14
    A P P E A R A N C E S:
15
    O'MELVENY & MYERS LLP
16  Attorneys at Law
    7 Times Square
17  New York, New York 10036
    BY:  STUART SARNOFF, ESQ.
18       EDWARD MOSS, ESQ.

19  BAKER & HOSTETLER LLP
    Attorneys at Law
20  45 Rockefeller Plaza, 14th Floor
    New York, New York 10111
21  BY:  JOHN SIEGAL, ESQ.
         MELISSA CARVALHO, ESQ.
22       ERICA BARROW, ESQ.

23

24

25              (Appearances continued on next page.)

                            tav

Case 22-50073   Doc 50-2   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 57 of 82

1   A P P E A R A N C E S:  (Continuing)

2   LAWALL & MITCHELL LLC
    Attorneys at Law
3   162 East 64th Street
    New York, New York 10065
4   BY:  AARON A. MITCHELL, ESQ.

5

6

7

8                          Terry-Ann Volberg, CSR, CRR
                           Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

Proceedings

1      the "adverse party," and Mr. Kwok's assets not previously

2      the subject of prior discovery and court orders relating to

3      a transfer.

4              Thank you, your Honor.

5              THE COURT:  Okay.  Does anybody from Genever want

6      to say anything?

7              MR. MITCHELL:  No, your Honor.  I think that was

8      well said.  I join Ms. Carvalho in her argument.

9              THE COURT:  All right.

10             Look, this is a 2017 case.  We've had multiple

11     motions relating to Mr. Kwok's assets.  The Court believes,

12     as reflected in the September 15, 2020, order that Mr. Kwok

13     has attempted to mislead the Court.  The Court believes that

14     Mr. Kwok is, as the plaintiff contends, playing a shell game

15     with his assets, and has violated if not the letter of court

16     orders, the spirit of court orders.  This is going to come

17     to an end on or shortly after January 15, 2021, when we have

18     the trial on the alter ego issue, but between now and the

19     commencement of the January 15, 2021, trial Mr. Kwok and any

20     entities that he directly or indirectly controls are

21     restrained from alienating or transferring any property that

22     Mr. Kwok has a direct or indirect interest including most

23     specifically the apartment at the Sherry-Netherland Hotel

24     which was the subject of 2018 discovery and a consent order

25     to which counsel for Mr. Kwok referenced, and also the yacht

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM          INDEX NO. 652077/2017
NYSCEF DOC. NO. 647    Case 22-50073   Doc 50-2   Filed 02/28/22   Entered 02/28/22 21:19:53   Page 59 of 82   RECEIVED NYSCEF: 11/10/2020

22

Proceedings

1    which Mr. Kwok has at various times claimed ownership of.

2    So the net result is that I exercise my discretion under

3    CPLR 5229 to restrain any further transfers of the

4    Sherry-Netherland apartment which Mr. Kwok once owned, and

5    the 27 million-dollar yacht which Mr. Kwok once claimed to

6    have owned.

7              So we are not going to have any more shell games.

8    Wherever these assets are held, they are going to remain

9    held where they presently reside, and if it's determined

10   that the entities that are presently listed as the owners of

11   the assets are the alter ego of Mr. Kwok or are wholly

12   dominated and controlled by Mr. Kwok, those assets will be

13   made available to satisfy any judgment that the plaintiff

14   recovers.

15             In the interim, between now and the January 15,

16   2021 trial on the alter ego issues, the plaintiff can

17   conduct discovery of any of the entities that claim to own

18   the Sherry-Netherland apartment or the yacht, and counsel

19   for Genever and counsel for Mr. Kwok are directed to

20   forthwith provide counsel for the plaintiff with information

21   identifying the record owners of those two assets.

22             That's the order of the Court.

23             MS. CARVALHO:  Your Honor, could I ask for some

24   clarification?

25             We understand the order of the Court today,

# EXHIBIT 3
# TO EX. 15

| | |
|---|---|
| **From:** | Sarnoff, Stuart M. |
| **Sent:** | Sunday, February 13, 2022 3:24 PM |
| **To:** | Ira B. Matetsky |
| **Cc:** | Metlitsky, Anton; Mark C. Zauderer; Jason T. Cohen |
| **Subject:** | Re: Pacific Alliance Asia Opportunity Fund L.P. v. Kwok |

Mr. Matetsky:

Assuming Mr. Kwok posts a bond in the amount of the February 9, 2022 contempt judgment, PAX will consent to a stay pending appeal. Absent the bond, PAX will oppose any stay request, whether interim or otherwise.

-Stuart.

## O'Melveny

**Stuart M. Sarnoff**
Partner
ssarnoff@omm.com
O: +1-212-326-2293
C: +1-646-573-6299

_____

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

On Feb 13, 2022, at 3:07 PM, Ira B. Matetsky <IMatetsky@ganfershore.com> wrote:

[EXTERNAL MESSAGE]

Dear Mr. Sarnoff:

We are appellate counsel in this action for Kwok Ho Wan a/k/a Myles Kwok. We will be moving in the Appellate Division, First Department tomorrow for a stay of the contempt orders pending appeal. We will also be seeking an interim stay until the motion can be heard and determined. Please advise whether your client will consent.

We will provide you with copies of the motion papers when they are finalized and will advise when the parties are to appear on the application.

Regards,

**Ira B. Matetsky**
*Partner*

360 Lexington Avenue
New York, New York 10017
**Main:** 212.922.9250
**Direct:** 212.922.9149
**Fax:** 212.922.9335
IMatetsky@ganfershore.com



Celebrating Over 40 Years Serving Clients

NOTE: The information contained in this E-Mail is confidential and may be legally privileged.  If you are not the intended recipient, you must not read, use or disseminate the information.  Although this E-Mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender or Ganfer Shore Leeds & Zauderer LLP for any loss or damage arising in any way from its use. This E-Mail is not intended to create a binding agreement of any kind, nor is it intended to be a binding counter-offer to any offer that may be pending, unless otherwise expressly stated. It is intended to be an informal response to any pending proposal, part of an ongoing negotiation which awaits a written agreement signed by the party or parties to be charged before being legally binding. For this E-Mail to create any form of a binding agreement, it must include an affirmative statement to that effect.

# EXHIBIT 4
# TO EX. 15



**MILES GUO** ✔ @Miles · Feb 9

2/9/2022 Miles Guo: Three major events today - 1) I have started to openly fight the swamp in court for the first time; 2) I will go to the UK and Japan to fight the CCP at close range; 3) I will prepare for the worst in case of the CCP's threats. We will wage a full-scale war on the PAG case and will thoroughly expose the CCP's BGY scheme and infiltration against the West

2/9/2022 文贵直播：今天的三件大事 - 1) 首次在法庭上跟沼泽地公开较量; 2) 文贵将去英国与日本与中共短兵相接; 3) 面对中共的威胁，文贵将做好一切最坏准备；我们将对PAG案全面开战并彻底揭露中共对西方的蓝金黄和渗透



💬 196    👍 4.2K    🔁 2.9K

 **MILES GUO** ✔ @Miles · Feb 9    · · ·

2/9/2022 Miles Guo: To recover the wealth, dignity, and justice that the Chinese people have lost in the past 70 years, I will make myself a person that owns nothing and will move to London to fight UBS in court. After that, I will go to Japan to fight against the CCP at close range and will let the people across Communist China hear my voice directly.

2/9/2022 文贵直播：为找回中国人70年来失去的财富、尊严和公正，文贵将让自己变得一无所有，到伦敦跟UBS打官司，再到日本与中共短兵相接，让中共国每个角落都将直接听到七哥的声音





💬 210    👍 4.1K    🔁 2.7K

 **MILES GUO** ✓ @Miles · Feb 9 · · ·

2/9/2022 Miles Guo: To recover the wealth, dignity, and justice that the Chinese people have lost in the past 70 years, I will make myself a person that owns nothing and will move to London to fight UBS in court. After that, I will go to Japan to fight against the CCP at close range and will let the people across Communist China hear my voice directly.

2/9/2022 文贵直播：为找回中国人70年来失去的财富、尊严和公正，文贵将让自己变得一无所有，到伦敦跟UBS打官司，再到日本与中共短兵相接，让中共国每个角落都将直接听到七哥的声音





💬 210   👍 4.1K   🔁 2.7K



**MILES GUO** ✅ @Miles · Feb 9

2/9/2022 Miles Guo: To recover the wealth, dignity, and justice that the Chinese people have lost in the past 70 years, I will make myself a person that owns nothing and will move to London to fight UBS in court. After that, I will go to Japan to fight against the CCP at close range and will let the people across Communist China hear my voice directly.

2/9/2022 文贵直播：为找回中国人70年来失去的财富、尊严和公正，文贵将让自己变得一无所有，到伦敦跟UBS打官司，再到日本与中共短兵相接，让中共国每个角落都将直接听到七哥的声音



💬 210     👍 4.1K     🔁 2.7K



**MILES GUO** ✔ @Miles · Feb 9                                    · · ·

2/9/2022 Miles Guo: To recover the wealth, dignity, and justice that the Chinese people have lost in the past 70 years, I will make myself a person that owns nothing and will move to London to fight UBS in court. After that, I will go to Japan to fight against the CCP at close range and will let the people across Communist China hear my voice directly.

2/9/2022 文贵直播：为找回中国人70年来失去的财富、尊严和公正，文贵将让自己变得一无所有，到伦敦跟UBS打官司，再到日本与中共短兵相接，让中共国每个角落都将直接听到七哥的声音



💬 210          👍 4.1K          🔁 2.7K                                    ↪



**MILES GUO** ✅ @Miles · Feb 9

2/9/2022 Miles Guo: To recover the wealth, dignity, and justice that the Chinese people have lost in the past 70 years, I will make myself a person that owns nothing and will move to London to fight UBS in court. After that, I will go to Japan to fight against the CCP at close range and will let the people across Communist China hear my voice directly.

2/9/2022 文贵直播：为找回中国人70年来失去的财富、尊严和公正，文贵将让自己变得一无所有，到伦敦跟UBS打官司，再到日本与中共短兵相接，让中共国每个角落都将直接听到七哥的声音



💬 210        👍 4.1K        🔁 2.7K        ↗

# EXHIBIT 5
# TO EX. 15

# <u>Fugitive</u> <u>Chinese</u> <u>billionaire</u> and Bannon ally threatens to leave the US after judge orders him to pay $134m or face arrest

**The Independent**

**Feb 10, 2022 15:25**

Copyright 2022 Independent Digital News and Media Limited All Rights Reserved

## The ♥ INDEPENDENT

**Author:** John Bowden
**Section:** NEWS,WORLD,AMERICAS,US POLITICS
**Print Edition:** The Independent (United Kingdom)
**Length:** 506 words
**Highlight:** Chinese billionaire faces threat of arrest from furious judge

## Body

A judge on Thursday issued a furious order targeting a Chinese billionaire and ally of Steve Bannon , a member of Donald Trump 's inner circle, ordering him to either pay $134m or face arrest for his violation of a previous court order.

In a ruling, a judge from the New York County Supreme Court excoriated Guo Wengui for hiding billions of dollars' worth of assets around the US and elsewhere including in the form of a superyacht named the Lady May. Judge

Barry Ostrager faulted Mr Guo in his ruling for hiding the craft outside of US jurisdiction in the Bahamas in violation of a previous order.

"Those proceedings established, among other things, that [Guo] exercised dominion and control over a yacht called the Lady May and resulted in a series of orders restraining [Guo] and/or the registered owners of the yacht called Lady May from removing the Lady May from the Court's jurisdiction," wrote the judge.

Nevertheless, "[Guo] and his cohorts made arrangement for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas," the court filing continues, adding that a subsequent judgement ordered Mr Guo to return the yacht to US waters or face a fine of $500,000 per day.

That fine has now compounded to a $134m fee that Mr Guo was ordered on Thursday to pay within five business days, or risk arrest.

"The Court has the authority to hold [Mr Guo] in civil contempt ... and '"to punish [him], by fine and imprisonment'"', wrote the judge.

Mr Guo subsequently announced plans to flee the US on a livestream first reported by J Michael Waller of the Center for Security Policy, where he reportedly talked about leaving for Japan or possibly the UK. He will likely not return to China, where he is accused of a host of crimes including rape, any time soon. Mr Guo has denied the accusations which he claims are linked to his criticism of China's Communist Party.

Mr Bannon was arrested on the Lady May in 2020. He was charged, at the time, with fraud in relation to the "We Build The Wall" scheme, a privately-fundraised effort to construct fencing along stretches of land near the US-Mexico border. Mr Bannon was later pardoned by Mr Trump as one of his last acts before leaving Washington.

He also previously served on the board of a nonprofit, the Rule of Law Society, which is tied to Mr Guo. The New York Times reported that Mr Bannon and Mr Guo began working together shortly after Mr Bannon was ousted from the White House by then-chief of staff John Kelly.

It isn't clear if the wealthy businessman has ever interacted with Donald Trump personally, but he was reported by the Times to be a member at Mr Trump's Mar-a-Lago club in Florida. It was reported in 2017 by The Wall Street Journal that Mr Trump, while president, decided against extraditing Mr Guo to China after learning of his membership at the club.

Read More

President Joe Biden drops in approval ratings -latest

AOC optimistic Pelosi will allow for ban on stock trading for Congress

Trump backer, 4 others charged with voter fraud in Wisconsin

## Classification

**Industry:**
Streaming Media (73%)

**Subject:**
Judges (91%), Decisions & Rulings (90%), Law Courts & Tribunals (90%), Negative Personal News (90%), Wealthy People (90%), Arrests (89%), Communism (89%), US Presidential Candidates 2012 (89%), US Presidential Candidates 2016 (89%), US Presidential Candidates 2020 (89%), Crime, Law Enforcement & Corrections (78%), Criminal Fines (78%), Criminal Offenses (78%), Fines & Penalties (78%), Fraud & Financial Crime (78%), Jurisdiction (78%), Litigation (78%), Negative News (78%), Public Policy (78%), Rule Of Law (78%), Political Parties (73%), Sexual Assault (73%), Supreme Courts (73%), Pardons (61%)

**Load Date:** Feb 10, 2022 16:52



About   Privacy Policy   Cookies
Terms & Conditions

RELX ™
Copyright © 2022 LexisNexis®

# EXHIBIT 16

FILED: APPELLATE DIVISION - 1ST DEPT 02/15/2022 03:13 PM
FILED: APPELLATE DIVISION - 1ST DEPT 02/14/2022 02:37 PM
2022-00609
2022-00609
NYSCEF DOC. NO. 3
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 02/15/2022
RECEIVED NYSCEF: 02/14/2022

## SUMMARY STATEMENT ON APPLICATION FOR
## EXPEDITED SERVICE AND/OR INTERIM RELIEF
### (SUBMITTED BY MOVING PARTY)

Date: February 14, 2022                                   Case # 2022-00609;2022-00610

Title of Matter: Pacific Alliance Asia Opportunity Fund L.P.        Index/Indict/Docket # 652077/2017

v. Kwok Ho Wan, a/k/a, et al.

Appeal by **Defendant** from  Order ☑ Judgment ☐ Decree ☐  of  Supreme ☑ Surrogate's ☐ Family ☐   County New York

Court entered on Feb. 9, 20 2022

Name of Judge Barry R. Ostrager

Notice of Appeal filed on Feb. 10, 20 22

If from administrative determination, state agency _____

Nature of action or proceeding Breach of Contract

Provisions of ☑ order ☐ judgment ☐ decree  appealed from All

This application by appellant / respondent is for a stay of a contempt order pending appeal.

Defendant-Appellant seeks a stay prior to February 16, 2022, by which date he has been ordered to pay a $134,000,000 contempt fine to Plaintiff.

If applying for a stay, state reason why requested The $134,000,000 contempt fine is excessive, disproportionate, and unconstitutional, and the motion court has invoked the prospect of imprisonment if it is not paid within five business days, i.e. by February 16, 2022.

Has any undertaking been posted No.                    If "yes", state amount and type _____

Has application been made to court below for this relief No.    If "yes", state Disposition _____
Has there been any prior application here in this court _____   If "yes", state dates and nature _____

Has adversary been advised of this application Yes.       Does he/she consent No.

|  | |
|---|---|
| <u>Attorney for Movant</u> | <u>Attorney for Opposition</u> |

Name  Ira Brad Matetsky and Jason T. Cohen

O'Melveny & Myers LLP

Address  360 Lexington Avenue

7 Times Square

New York, New York 10017

New York, New York 10036

212-326-2000

Tel. No.  212-365-3391 (cell); 2120922-9149 (office)

New York

Email  imatetsky@ganfershore.com

Appearing by  Ira B. Matetsky

Stuart Sarnoff (ssarnoff@omm.com); 212-326-2293

Jason T. Cohen (jcohen@ganfershore.com); 646-250-4141

Anton Metlitsky (ametlitsky@omm.com); 212-316-2291

Mark C. Zauderer (mzauderer@ganfershore.com); 917-331-7762

-----------------------------------------------------------------------------------------------------

(**Do not write below this line**)

<u>DISPOSITION</u>

Appellant's application for a stay is denied.

February 15, 2022

Justice BEP                                    Date

Motion Date  2/28/22     Opposition  2/23     Reply  2/28  10am

EXPEDITE ___✓___  PHONE ATTORNEYS _____  DECISION BY _____

ALL PAPERS TO BE SERVED PERSONALLY.        _____

Court Attorney

"Revised 10/19"

# EXHIBIT 17

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CIVIL TERM:  PART 61
 2   ------------------------------------------------X
     PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,
 3
                              Plaintiff,
 4
                      - against -                    INDEX #
 5                                                   6520772017
     KWOK HO WAN a/k/a KWOK HO a/k/a GWO WEN GUI
 6   a/k/a GUO WENGUI a/k/a GUO WEN-GUI a/k/a WAN
     GUE HAOYUN a/k/a MILES KWOK a/k/a HAOYUN
 7   GUO, GENEVER HOLDINGS CORPORATION
     and GENEVER HOLDINGS LLC,
 8
                              Defendants.
 9   ------------------------------------------------X
     Motion
10

11                              September 22, 2021
                                Microsoft Teams Teleconference
12

13   B E F O R E:  THE HONORABLE BARRY OSTRAGER,
                                Justice of the Supreme Court
14

15
     A P P E A R A N C E S:
16

17              O'MELVENY & MYERS LLP
                Attorneys for the Plaintiff
18              7 Times Square
                New York, NY 10036
19              By: EDWARD MOSS, ESQ.
                    STUART SARNOFF, ESQ.
20

21              BAKER HOSTETLER LLP
22              Attorneys for the Defendant
                45 Rockefeller Plaza
23              New York, NY 10111
                By: MELISSA CARVALHO, ESQ.
24                  ERICA BARROW, ESQ.

25

                              mlp
```

1    A P P E A R A N C E S: (Cont'd)

2

3                    LAWALL & MITCHELL LLC
                     Attorneys for Defendant Genever Holdings
4                    99 Church Street, 4th Floor
                     White Plains, NY 10601
5                    By: AARON MITCHELL, ESQ.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                    MICHELE PANTELOUKAS
                                      Senior Court Reporter
25

                              mlp

Proceedings

1    yesterday another motion to approve the settlement was

2    filed in the Bankruptcy Court.  Yet PAX now seeks to

3    undermine the bankruptcy protect; harm other interested

4    parties and creditors; and deprive Genever relief available

5    to it in the Bankruptcy Court, which would allow it to seek

6    to extend the automatic stay to non-debtor entities.

7         As Your Honor can see, PAX is all over the place.

8    It wants the Sherry and it wants it now.  But the fact of

9    the matter is that these issues are being addressed by

10   other Courts right now.  And those Courts will be making

11   determinations shortly.

12        PAX is not harmed by waiting for the BVI and

13   Bankruptcy Courts to determine these issues, as the status

14   quo has been maintained by freeze orders and restraints.

15   PAX should not forum shop its way into a faster resolution

16   of these pending issues.

17        Lastly, should this Court be inclined to grant

18   PAX's motion to appoint a receiver, the receiver should not

19   be PAX.  PAX is not disinterested as a judgment creditor,

20   and should be disqualified from acting as a receiver.  In

21   fact, in the Bankruptcy Court PAX itself has acknowledged

22   the importance of appointing an independent third party.

23   We ask that the Court deny PAX's motion in its entirety.

24        Thank you, Your Honor.

25        THE COURT:  All right.  Mr. Mitchell.

Proceedings

1        MR. MITCHELL:  Your Honor, Aaron Mitchell for

2    Genever defendants.

3        Ms. Carvalho hit on all of the points that I was

4    going to address, so I don't need to add anything further

5    at this time.

6        THE COURT:  Okay.  Anyone else want to tell me

7    anything?  I don't need to hear from Mr. Moss again.

8        All right.  Mr. Kwok identified his ownership

9    interest in Genever Holdings BVI as his only asset worth

10   more than $10,000 in response to PAX's post-judgment

11   interrogatories, which is document number 756 in this case

12   at page nine.

13       The ownership of shares in a company can be

14   turned over in satisfaction of a money judgment, the same

15   way as any other personal property.

16       CPLR section 5225 extends to shares of stock as

17   well as money.  Therefore, this Court believes that there

18   is no impediment to directing that the shares that Mr. Kwok

19   owns in Genever Holdings BVI be turned over to PAX.

20       The Court is not inclined to appoint any

21   receiver.  And the Court's order directing the turnover is

22   expressly conditioned on the approval of the BVI Court

23   overseeing the related action in the BVI, in which Justice

24   Jack has issued a stay.

25       It is undisputed that the Sherry Netherland

mlp

Proceedings

1   apartment is owned by Genever Holdings, which is a

2   subsidiary of Genever BVI.  And Genever Holdings is

3   involved in bankruptcy proceedings in the Southern District

4   of New York.  This Court has ruled that until and unless

5   the bankruptcy stay in the Genever Holdings bankruptcy is

6   lifted, this Court cannot hold a trial on the issue of

7   alter ego as against Genever New York and Genever BVI.  And

8   so any action which PAX may wish to take with respect to

9   Genever Holdings requires the approval of Judge Garrity in

10   the New York bankruptcy proceedings involving Genever New

11   York, because Genever New York is in bankruptcy.

12          All this Court is doing today is directing,

13   subject to the approval of the BVI Court, which has issued

14   a stay order, is instructing Genever BVI's registered agent

15   to update Genever BVI's registered members to reflect that

16   PAX, or its designee, is the legal owner of Mr. Kwok's

17   shares in Genever Holdings BVI.  And that's the resolution

18   of motion sequence 18.

19          Any questions or comments?

20          Mr. Moss, you are muted.

21          MR. MOSS:  Your Honor, sorry about that.

22          Your Honor, if I may, I have two brief ones.

23          The first one is, I just want to clarify, on

24   subject to approval of the BVI Court, do you simply mean

25   that we need to get Justice Jack's permission in order for

mlp