**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>Ho Wan Kwok[1]<br><br>                Debtor.<br><br>————————————————<br>Pacific Alliance Asia Opportunity Fund L.P.,<br><br>              Movant,<br><br>vs.<br><br>Ho Wan Kwok,<br><br>              Respondent | Chapter 11 Case No.<br><br>22-50073 (JAM)<br><br><br><br><br><br><br><br><br><br><br><br><br><br>March 1, 2022 |

**MOTION OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. FOR ENTRY OF AN ORDER CONFIRMING THE INAPPLICABILITY OF THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(2) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JULIE A. MANNING,
UNITED STATES BANKRUPTCY JUDGE:

      Pacific Alliance Asia Opportunity Fund L.P. ("PAX") moves (this "Motion") for an

order, substantially in the form attached hereto as Exhibit A, confirming that the automatic stay

is inapplicable to a discrete pre-petition proceeding pending in the Supreme Court of the State of

New York (Justice Ostrager presiding), holding the debtor, Ho Wan Kwok ("Kwok"), in civil

contempt for failure to return his yacht, the "Lady May," to New York in violation of that court's

orders.[2]  In issuing his February 9, 2022 final Order of Civil Contempt against Kwok, Justice

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.
[2] Liquidation of the Lady May, which Justice Ostrager found Kwok "beneficially owns and controls," and distribution of resulting proceeds should occur in the chapter 11 process (to the extent this case is not dismissed).

Ostrager warned, "if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law."[3]  This applies with equal force to these chapter 11 proceedings. Kwok cannot exploit the protections of the Bankruptcy Code to evade Justice Ostrager's orders, and the automatic stay does not allow him to do so.

Kwok's contumacious behavior is long-standing and flagrant.  First, Kwok moved the Lady May out of the jurisdiction of the New York Supreme Court in direct violation of that court's September 30 and October 15, 2020 Orders.[4]  Then, in March 2021, Justice Ostrager issued a conditional order of civil contempt—which was unanimously affirmed by the New York Appellate Division, First Department[5]—requiring Kwok or the registered owner to return the Lady May by May 15, 2021 or face a daily $500,000 fine for each day that the yacht remained outside of that court's jurisdiction.[6]  Nearly a year later, after an evidentiary hearing, Justice Ostrager entered the February 9 Contempt Order directing (i) Kwok to pay $134 million ($500,000 per day for the period between May 15, 2021 and February 7, 2022); and (ii) continued accrual of the $500,000 daily fine if the Lady May was not returned to the court's jurisdiction within ten business days from notice of entry.[7]  One day before the deadline to pay the $134 million contempt fine to PAX, and after Kwok's efforts to obtain an emergency stay of that order pending appeal failed, Kwok filed this chapter 11 case.  But bankruptcy protection is

---

[3] *See* Declaration of Peter Friedman in support of Motion of Pacific Alliance Asia Opportunity Fund L.P. for a Declaration of Inapplicability of the Automatic Stay or Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code, attached hereto as <u>Exhibit B</u> ("Friedman Decl."), Ex. 1. Decision + Order on Mot, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2022), ECF No. 1181 (the "February 9 Contempt Order") at 10.

[4] Friedman Decl., Ex. 2, Decision + Order on Mot., *PAX v. Kwok*, 652077/2017 (N.Y. Sup. 2020), ECF No. 591; Friedman Decl., Ex. 3, Decision + Order on Mot., *PAX v. Kwok*, 652077/2017 (N.Y. Sup. 2020), ECF No. 630.

[5] *Pac. All. Asia Opportunity Fund L.P. v. Wan*, 199 A.D.3d 423, 423 (1st Dep't 2021).

[6] Friedman Decl., Ex. 4, Decision + Order on Mot., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 728 ("Initial Contempt Order," and together with the February 9 Contempt Order, the "Contempt Orders").

[7] Friedman Decl., Ex. 5, Final Order of Civil Contempt, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2022), ECF No. 1182, at 2.

for honest, good-faith debtors. And the automatic stay does not shield debtors from the consequences of defying court orders and assaulting the dignity of the judicial system. Therefore, PAX asks this Court to enter an order confirming its right to institute further proceedings to enforce Justice Ostrager's February 9 Contempt Order.

Alternatively, PAX moves for relief from the automatic stay under Section 362(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001of the Federal Rules of Bankruptcy Procedure to permit enforcement of the February 9 Contempt Order, except to the extent it requires Kwok to immediately pay money to PAX. Such relief includes enforcing the February 9 Contempt Order to ensure the return of the Lady May to New York, allowing continued accrual of fines (which constitute debts that Kwok cannot discharge in this chapter 11 case), and permitting Justice Ostrager to order any other appropriate sanctions (including issuance of an arrest warrant),[8] if Kwok fails to promptly return the Lady May to New York.[9]

In support thereof, PAX respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334, and, for purposes of this Motion, PAX accepts that venue may be proper in this district without prejudice to any future motion to transfer venue. This Motion is a core proceeding under 28 U.S.C. §157(b), and the basis for PAX's requested relief is section 362(d) of the Bankruptcy Code.

---

[8] *See, e.g.*, NY Judiciary Law § 753 ("A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced.").

[9] PAX intends to initiate an adversary proceeding to confirm the non-dischargeability of the civil contempt fines issued by Justice Ostrager. *See In re Singer*, No. 10–00045, 2010 WL 3732944 (D.N.J. Sept. 17, 2010) (contempt sanctions non-dischargeable in bankruptcy); *In re Marini*, 28 B.R. 262, 266 (E.D.N.Y. 1983) (same).

## **BACKGROUND**

2.      Nearly eleven years ago, PAX signed a loan agreement with a Kwok-owned entity called Shiny Times.[10]  Kwok personally guaranteed that loan.[11]  Despite multiple repayment extensions and PAX's numerous attempts to settle the debt, Kwok has never repaid the loan.[12]

3.      PAX sued Kwok for breach of the personal guarantee contract on April 18, 2017 in New York State Supreme Court.[13]  Following nearly four years of litigation, on February 3, 2021, PAX secured a judgment against Kwok for $116,402,019.57.[14]  PAX then "undertook a year's-long effort to enforce [the] judgment by first identifying and then attempting to levy upon Kwok's assets in the United States."[15]  This was no small task because, as Justice Ostrager found, "Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[16]  Kwok has yet to repay any of the $116,402,019.57 judgment, which accrued post-judgment interest at the rate of 9 percent per year.[17]

---

[10] Friedman Decl., Ex. 6, Decision + Order on Mot., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 549, at 2.

[11] *Id.*

[12] *Id.* at 7.

[13] Friedman Decl., Ex. 7, Compl., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2017), ECF No. 2.

[14] Friedman Decl., Ex. 8, Judgment, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 716 at 2.

[15] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 1.

[16] *Id*.

[17] N.Y. C.P.L.R. 5004 (McKinney's 2022); Friedman Decl., Ex. 8 at 2; *see also* Friedman Decl., Ex. 9, Statement of Material Facts in Support of Pl.'s Mot. for Partial Summ. J., Ex. 23 at KWOK000652, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 455 ("2011 Personal Guarantee").

4.    Although Kwok claims to have no assets,[18] he has (at a minimum) beneficial

ownership of the Lady May, purchased in 2015 for € 28 million.[19]  On September 30, 2020,

Justice Ostrager issued a temporary restraining order preventing Kwok "from making or causing

any sale, assignment, transfer or interference with any property in which he has an interest...."[20]

Two weeks later, on October 15, 2020, Justice Ostrager specified that this restraint on Kwok

included the Lady May.[21]  But unbeknownst to Justice Ostrager and PAX, the Lady May had

already left New York for Florida on or about October 9.[22]  The yacht then went to the Bahamas,

and finally to Europe, where it remains to this day.[23]

5.    In response, PAX filed a contempt motion[24] and on March 16, 2021, the court

issued a conditional order of civil contempt directing Kwok or the boat's registered owner to

return the Lady May to the court's jurisdiction by May 15, 2021, and imposing a $500,000 fine

for every day thereafter that the yacht remained beyond its jurisdiction.[25]  The New York

Appellate Division, First Department, unanimously affirmed the trial court's order, finding that

(i) PAX had "established by clear and convincing evidence that [Kwok had] violated a lawful

---

[18] *See United States Trustee's Objection to Debtor's Motion for Extension of Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs*, ECF No. 49, at ¶ 12 (during his Initial Debtor Interview with the United States Trustee, Kwok "disclosed he has no bank accounts, no credit cards, is not employed such that he earns income, and that all of his living expenses are paid for and through an entity known as Golden Spring (New York) Ltd. ('Golden Spring'). [He] also disclosed that he does not directly own any real estate, does not own any cars, and does not insure any assets.").

[19] Friedman Decl., Ex. 1 at 4. Although Kwok denies it, he also owns a full-floor luxury apartment at the Sherry Netherland hotel that is currently listed for sale at $45 million in connection with a related bankruptcy proceeding in the Southern District of New York.

[20] Friedman Decl., Ex. 2.

[21] Friedman Decl., Ex. 3 at 1.

[22] *See* Friedman Decl., Ex. 10 (VESSELFINDER, Voyage Analyzer
https://voyage.vesselfinder.com/dcad1f224b32615145e66055d9856504) (last visited Feb. 28, 2022).

[23] As of February 28, 2022, the Lady May is located in Genoa, Italy.  *See id.*

[24] *See* Friedman Decl., Ex. 11, PAX Mem. of Law in Supp. of Mot. for Order of Contempt Against Def. Kwok, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 689; *see also* Friedman Decl., Ex. 12, PAX Mem. of Law in Further Supp. of Mot. For Order of Contempt Against Def. Kwok, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 709.

[25] Friedman Decl., Ex. 4 (Initial Contempt Order) at 2.  In other words, the court provided Mr. Kwok a full two-month grace period to return the yacht and thereby avoid any fine at all.

clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to [PAX's] rights…"[26]; and (ii) "the daily fine of $500,000 was intended to strongly encourage [Kwok] to purge himself of the contempt."[27]  Accordingly, the First Department instructed Justice Ostrager to "proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties" before issuing a final contempt order.[28]

6.      Justice Ostrager held that evidentiary hearing on February 2, 2022.  After hearing testimony from seven witnesses,[29] Justice Ostrager concluded that "[t]he testimony adduced at the hearing out of the mouths of [Kwok]'s witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[30]  The court further found that "[n]ot only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[31]  As a result, Justice Ostrager entered the February 9 Contempt Order.[32]

7.      Consistent with his past practice of flouting court orders, Kwok failed to pay the contempt fine, and has not returned the yacht to the United States.[33]  Instead, on February 15, 2022, Kwok filed for bankruptcy in this Court.[34]  Kwok's bankruptcy petition lists $50,001-

---

[26] *Pac. All. Asia Opportunity Fund L.P.*, 199 A.D.3d at 423.
[27] *Id.* at 424.
[28] *Id.*
[29] Kwok invoked his Fifth Amendment rights in response to PAX's post-judgment discovery efforts and Kwok did not testify at the February 2 hearing.  *See*  Friedman Decl., Ex. 1 (February 9 Contempt Order) at 3.
[30] *Id.* at 4.
[31] *Id.* at 8.
[32] Friedman Decl., Ex. 5.
[33] *See supra* note 23.
[34] Voluntary Petition, ECF No. 1 at 7.

$100,000 in assets[35]—omitting the valuable Lady May, which remains outside of the United States,[36] unsupervised by any trustworthy fiduciary.

8.      In light of Kwok's history of contumacious behavior and extensive "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members,"[37] PAX respectfully urges this Court to order that the automatic stay does not bar it from resuming the contempt proceedings before Justice Ostrager to seek to force Kwok to return the Lady May to New York, and to permit Justice Ostrager to impose any available penalties on Kwok other than ordering him to make an immediate monetary payment to PAX.  In the alternative, PAX respectfully requests this Court provide narrow relief from the automatic stay to allow PAX to proceed before Justice Ostrager to obtain the same result.

## RELIEF REQUESTED

9.      By this Motion, PAX requests a determination that the automatic stay is inapplicable to the enforcement of Justice Ostrager's February 9 Contempt Order.  In the alternative, PAX requests an order modifying the automatic stay to permit PAX to enforce the February 9 Contempt Order, except to the extent any relief requires Kwok to immediately pay any money to PAX.[38]

---

[35] *Id.* at 7.

[36] *See supra* note 23.  As noted above, Kwok also fails to list the considerable value of the Sherry-Netherland apartment that he purchased for $67.5 million in March 2015, which he owns through two shell companies, Genever Holdings Corporation ("Genever BVI") and Genever Holdings LLC ("Genever NY").  *See* Friedman Decl., Ex. 13, Executed Contract of Sale, *Kwok v. PAX*, Index No. 652077/2017, ECF No. 256 (Executed Contract of Sale listing "Genever Holdings LLC" as the purchaser); *see also id.* at SN 0047 (Purchase Application listing "'Miles' Kwok Ho Wan (Genever Holdings LLC)" as the applicant).  Consistent with Kwok's actions here, Genever NY also declared bankruptcy immediately after PAX won summary judgment in late 2020.  *In re Genever Holdings LLC*, Case No. 1:20-bk-12411 (Bankr. S.D.N.Y.).

[37] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 1.

[38] PAX filed—prepetition—another contempt motion in the New York court concerning Kwok's failure to turn over his shares in a British Virgin Islands-registered company, Genever BVI, in accordance with Justice Ostrager's September 22, 2021 order.  *See* Friedman Decl., Ex. 14, Decision + Order on Mot., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 904.  That motion has been fully briefed since January 24, 2022 and is

## ARGUMENT

## I. THE AUTOMATIC STAY IS INAPPLICABLE TO THE CONTEMPT ORDER AS IT RELATES TO THE RETURN OF THE LADY MAY.

10.     Criminal contempt proceedings are statutorily exempt from the automatic stay. *See* § 11 U.S.C. 362(b)(1) ("commencement or continuation of a criminal action or proceeding against the debtor" not subject to the stay.)  Civil contempt remedies can be issued by courts to "secure future compliance with a court order" or "provide compensation or other remedial relief" to a party for another party's failure to comply with a court order.  *Universal City Studios v. New York Broadway Int'l Corp.*, 705 F.2d 94, 96 (2d Cir.1983); *Allstate Ins. Co. v. Nair*, 3:10cv88 (SRU), 2011 WL 1832774, at *2 (D. Conn. May 13, 2011).  Although there is no *per se* exception from the automatic stay for civil contempt proceedings, "certain civil contempt proceedings may continue even in the face of a bankruptcy petition."  *Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 727 (S.D.N.Y. 1986).  Courts distinguish between civil contempt "motion[s] made to punish, and [those] made to collect on a judgment," finding the former exempt from the stay.  *Id.* at 729; *see also Booth v. Wilson,* No. 96 CIV. 920 (RO), 1997 WL 241050, at *2 (S.D.N.Y. May 7, 1997) ("The threshold issue is whether the motion for contempt is made to satisfy a judgment or if it is directed at an asserted defiance of a court order.").

11.     Courts routinely hold that civil contempt orders that are designed to punish debtors for non-compliance with court orders are not subject to the automatic stay because bankruptcy does not provide a safe harbor for parties that have engaged in sanctionable conduct

---

pending.  On February 18, 2022, Justice Ostrager issued a notice requesting that PAX, by March 3, 2022, withdraw the motion without prejudice in light of Kwok's bankruptcy filing.  Friedman Decl., Ex. 15, Court Notice, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2022), ECF No. 1191.  PAX intends to do so, and is not now seeking this Court's confirmation that the automatic stay is inapplicable to that contempt proceeding, but may, and reserves the right to, do so in the future.

that is an affront to the dignity of a court. And the bankruptcy process may not be "used as a sword" to prevent courts from punishing contemptuous acts. *Int'l Distrib. Ctrs, Inc.,* 62 B.R. at 730. For example, in *Roberts v. Bennaceur*, No. 3:12-CV-01222, 2015 WL 1471889, (D. Conn. 2015), the defendant filed for bankruptcy after repeatedly failing to disclose information relating to its assets and financial condition. Judge Meyer held that the bankruptcy filing did not preclude the Court from issuing sanctions relating to the debtor's abuses of the disclosure and discovery process, stating:

> [t]he bankruptcy stay does not preclude plaintiff from seeking sanctions against the individual defendants' [violations of the Court's orders], even violations relevant to claims that are stayed. I am entitled to 'continue to ... consider whether the defendant[s]' 'may be sanctioned as a result of their failure 'to comply with a prior [] order' as long as the sanction does not have the effect of 'securing assets protected by the stay or harassing' the debtor.

*Id.* at *16 (internal citations omitted). Accordingly, the court sanctioned the debtor and its officers *after* the bankruptcy filing. Other courts agree, recognizing that contempt orders may be enforced against a debtor in bankruptcy to protect the dignity of the court and punish the debtor for disobeying court orders. *See Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC*, 16 Civ. 6805, 2017 WL 6413993, at *10 (S.D.N.Y. 2017) (motion for relief from the stay unnecessary where "the proceeding in reality is one to punish the debtor for contumacious conduct against the dignity of [the] court."); *In re Cohoes Indus. Terminal, Inc.*, 62 B.R. 369, 378 (Bankr. S.D.N.Y. 1986) *aff'd*, 70 B.R. 214 (S.D.N.Y.1986), 831 F.2d 283 (2d Cir.1987) ("a state court prepetition order which does not relate to the collection of prepetition claims or property of the estate may be enforced by contempt proceedings against the debtor and its officers in order to vindicate the dignity of the state court without violating the automatic stay."); *Int'l Distrib. Ctrs, Inc.*, 62 B.R. at 729–30 (concluding that its "inherent power to 'punish the debtor for contumacious conduct against the dignity of either the state or federal court,' is not

curtailed by the bankruptcy action" and finding stay inapplicable where contempt request was "designed to uphold an order of this Court, and [wa]s not one calculated to enforce a money judgment."); *Booth*, 1997 WL 241050, at *2 ("this contempt order enforcing my pre-bankruptcy order to compel discovery is not stayed by § 362(a) as it is 'vindicat[ing] the integrity of the court.'").

12.    Consistent with these authorities, the automatic stay is inapplicable to past and future contempt orders designed to ensure Kwok's compliance with court orders. Justice Ostrager did not hold Kwok in contempt for failing to satisfy PAX's judgment or to compensate PAX for any monetary loss. Indeed, the fine imposed is separate from the judgment on PAX's breach of contract claim. That court held Kwok in contempt because of his flagrant and continued disregard of court orders. And PAX is not "moving at this time out of a 'collection motive,'" but rather for leave to seek enforcement of Justice Ostrager's February 9 Contempt Order requiring the return of the Lady May to New York,[39] which has remained outside of the New York Supreme Court's jurisdiction contrary to court orders for more than a year. *See Int'l Distrib. Ctrs., Inc.*, 62 B.R. at 730 (stay inapplicable where movant was not moving out of a "collection motive"). Continuation of the contempt proceedings is necessary to protect the dignity of the New York Supreme Court (and has the added benefit of forcing Kwok to return property he beneficially owns to the United States). Therefore, the New York Supreme Court should be permitted to take any actions it deems necessary in the contempt proceedings, short of enforcing the collection of fines, without stay relief.

13.    To the extent this Court may be concerned about any impact on Kwok's estate, the Court can clarify that the automatic stay applies to the enforcement or collection of any fines

---

[39] *See* Friedman Decl., Ex. 4 (Initial Contempt Order) at 2 ("Counsel for Kwok specifically asked the court whether Kwok could move the yacht from the jurisdiction for licensing purposes. The Court denied this request.").

or other relief against property of the estate during the pendency of the automatic stay. *See Int'l Distrib. Ctrs, Inc.*, 62 B.R. at 730 (the automatic stay is inapplicable where the order is not "calculated to *enforce a money judgment*, or to harass a defendant.") (emphasis added). Moreover, this Court can make clear that future disposition of the Lady May is within the exclusive purview of this Court (absent further Court order).

## II.    IN THE ALTERNATIVE, THE AUTOMATIC STAY SHOULD BE MODIFIED TO ALLOW PARTIAL ENFORCEMENT OF JUSTICE OSTRAGER'S ORDERS.

14.    Even if the automatic stay applies to the February 9 Contempt Order, good cause exists to modify the stay pursuant to Bankruptcy Code section 362(d)(1).

15.    The decision to modify the automatic stay is "committed to the sound discretion of the court." *In re David X. Manners Co. Inc.*, No. 15–51490, 2018 WL 2325758, at \*2 (Bankr. D. Conn. May 22, 2018); *In re Wysocki*, No. 3:16-CV-248, 2016 WL 4099031, at \*4 (D. Conn. Aug. 2, 2016). Under Bankruptcy Code section 362(d), relief from the automatic stay shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." *See* 11 U.S.C. §362(d)(1). The Bankruptcy Code does not define "cause." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). In *Sonnax*, the Second Circuit enumerated twelve factors which serve as the touchpoint when courts determine whether relief from the automatic stay should be granted to permit litigation to continue in another forum.[40]

*See, e.g., In re Case*, 384 F. App'x 43, 44 (2d Cir. 2010) (noting the Bankruptcy Court properly

---

[40] Those factors are: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *Sonnax*, 907 F.2d at 1286.

considered the *Sonnax* factors); *In re Friedberg*, No. 08–51245, 2009 WL 1292273, at *2

(Bankr. D. Conn., May 8, 2009) (applying the *Sonnax* factors). The Court need not assign equal

weight to each factor, nor are all factors relevant in each case. *See In re David X. Manners Co.*

*Inc.*, No. 15–51490, 2018 WL 1997674, at *5 (Bankr. D. Conn. Apr. 26, 2018), *appeal*

*dismissed,* No. 28cv778, 2018 WL 3079470 (D. Conn, Jun. 21, 2018). Rather, "[w]hen applying

these factors and considering whether to modify the automatic stay, the Court should take into

account the particular circumstances of the case, and ascertain what is just to the claimants, and

the estate." *Id.* at *5 (citing *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)).

Here, the relevant *Sonnax* factors are:

- "(1) whether relief would result in a partial or complete resolution of the issues;"

- "(2) lack of any connection with or interference with the bankruptcy case;"

- "(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;"

- "(7) whether litigation in another forum would prejudice the interests of other creditors;"

- "(10) the interests of judicial economy and the expeditious and economical resolution of litigation;" and

- "(12) impact of the stay on the parties and the balance of harms." [41]

A.    **Stay Relief Will Resolve Issues Important to the Bankruptcy Case.**

16.    The first *Sonnax* factor weighs in favor of lifting the stay. The February 9

Contempt Order has the ultimate goal of seeing the return of the Lady May to New York.

---

[41] The other *Sonnax* factors are inapposite. In particular, there is no possible basis for equitably subordinating PAX's claim on a personal guarantee from Kwok (*Sonnax* factor 8), and none of the orders issued by Justice Ostrager will give rise to a voidable lien (*Sonnax* factor 9).

17.     As Justice Ostrager determined, the Lady May is an asset available for satisfaction of Kwok's debts.[42]   The court found that Kwok "has much more than a beneficial interest in the Lady May," he not only "control[s] the yacht" but "provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[43]   Accordingly, Kwok's interests in the Lady May must be made available to creditors in this chapter 11 case, despite Kwok's "extraordinary steps to shield the yacht from his creditors."[44]   Not only did Kwok fail to return the Lady May to New York in violation of Justice Ostrager's orders, but on filing his bankruptcy petition (and in his amended petition), notwithstanding Justice Ostrager's clear findings in his February 9, 2022 Order, Kwok failed to include the Lady May's value among his assets.[45]   A chapter 11 debtor has a duty to disclose all assets—of all types—in a chapter 11 petition.  *See* 11 U.S.C. § 541(a)(1) (a debtor's estate consists of "all legal or equitable interests of the debtor in property."); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 52 (S.D.N.Y. 1999) ("A basic tenet of bankruptcy law is that all assets of the debtor . . . are assets of the bankruptcy estate that must be scheduled for the benefit of creditors."); *In re Beckford*, 729 F. App'x 127, 128 (2d Cir. 2018) ("The filing of a bankruptcy petition creates a bankruptcy estate that is comprised of 'all legal or equitable interests of the debtor.'").  Kwok's willful failure to include the value of the Lady May as an asset in his petition—just six days after Justice Ostrager unambiguously ruled that Kwok beneficially owned and controlled it—is a continuation of his scheme to keep the Lady May out of the reach of his creditors.  This scheme must end.

---

[42] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 8–9.
[43] *Id.*
[44] *Id.* at 9; *see also id.* at 7 (discussing the "machinations associated with the shell game Kwok has orchestrated with respect to the Lady May.")
[45] Amended Voluntary Petition, ECF. No. 19 at 7 (listing assets as between $50,001 - $100,000); *cf.* Friedman Decl., Ex. 1 (February 9 Contempt Order) at 10 (noting the € 28 million [sic] purchase price of the Lady May).

18.     Allowing continued efforts before Justice Ostrager to have the Lady May returned to New York will resolve a pertinent issue to this chapter 11 case. *See In re Fleming*, No. 19-51611, 2020 WL 3816282, at *3 (Bankr. D. Conn. Jul. 2, 2020) (the fact state court proceedings could resolve issues in an adversary proceeding, weighed in favor of stay relief). Return of the Lady May to New York will facilitate the marshaling of that asset and the ultimate distribution of the proceeds for the benefit of all creditors. It will also resolve PAX's year-long effort to have the yacht within the New York Supreme Court's jurisdiction, a further factor supporting relief from the automatic stay. *In re Ice Cream Liquidation Inc.*, 281 B.R. 154, 166 (Bankr. D. Conn. 2002) (complete resolution of an issue related to the Debtor favored stay relief); *David X. Manners Co.*, 2018 WL 1997674 at *6 (even partial resolution of the issues weighs in favor of lifting the stay).

### B.     Enforcement of the February 9 Contempt Order Will Not Interfere with the Bankruptcy Case.

19.     For similar reasons, enforcement of the February 9 Contempt Order will not interfere with the bankruptcy case; rather, it will complement and facilitate these proceedings, *In re Dunne*, No. 13–50484, 2015 WL 7625609, at *6 (Bankr. D. Conn., Nov. 25, 2015) (stay relief granted where continuation of litigation "complement[ed] the [] bankruptcy case"), and protect the interests of all creditors by ensuring a critical estate asset is brought to the United States. Therefore, the second, seventh and tenth *Sonnax* factors weigh heavily in PAX's favor.

20.     Stay relief is favored where it would facilitate progress in a bankruptcy case. *See David X. Manners Co. Inc.*, 2018 WL 1997674, at *6 (this factor weighed in favor of stay relief where "the progress of th[e] case "appear[ed] dependent upon and require[d] the resolution of the issues . . . awaiting judgment in the state court."); *In re Mildred Deli Grocery, Inc.*, No. 18-10077, 2018 WL 1136017, at *4 (Bankr. S.D.N.Y. Feb. 28, 2018) (permitting claims to proceed

14

in the district court which would "assist resolution of the bankruptcy action"). Here, returning

the Lady May is a threshold issue: the Lady May has a value many multiples of the assets Kwok

listed in his petition. Its prompt return benefits the estate as well as creditors.[46] Further, return

facilitates an essential function of this bankruptcy case: to "maximiz[e] the value of the

bankruptcy estate." *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 985–86 (2017) (the

purpose of the Bankruptcy Code is to maximize the value of the estate). Thus, relief from the

automatic stay would "assist resolution of the bankruptcy action." *Mildred Deli Grocery, Inc.*,

2018 WL 1136017, at *4.

21.     Returning the Lady May also will not interfere with this Court's jurisdiction over

reorganization (or liquidation) of Kwok's debts or the orderly distribution of his assets to

creditors. Nor will it result in any immediate distribution to PAX. Rather, return will assist in

marshaling an estate asset to enable liquidation of that asset and distribution to creditors in order

of priority under the supervision of this Court (unless the case is dismissed). *See Serio v. Black,

Davis & Shue Agency, Inc.*, No. 05 Civ. 15, 2006 WL 176983, at *2 (S.D.N.Y. Jan. 23, 2006)

(the goals of a bankruptcy proceeding "require a marshaling of the debtor's assets and an orderly

payment of claims in order of priority").

22.     Further, this Court should not allow Kwok to use the bankruptcy case to evade

state court sanctions. The contempt proceedings sanction Kwok's flagrant and repeated past

disregard of the New York Supreme Court's orders and, if the stay relief is granted, can be used

to prevent further noncompliance. Kwok filed his Chapter 11 petition six days after the New

York Supreme Court announced it was "prepared to exercise its full authority under Judiciary

Law § 753"—which could include issuing an order for Kwok's arrest—if Kwok continued to

---

[46] *See* Amended Voluntary Petition, ECF. No. 19 at 7 (listing assets as between $50,001 - $100,000); *cf.* Friedman Decl., Ex. 1 (February 9 Contempt Order) at 10 (noting the purchase price of the Lady May).

ignore its orders.[47]  Kwok should not be permitted to exploit the bankruptcy process to avoid

sanctions. *See In re Rudaw/Empirical Software Prod. Ltd*., 83 B.R. 241, 247 (Bankr. S.D.N.Y.

1988) ("The automatic stay imposed under 11 U.S.C. § 362(a) may not be used as a shield to

sanction contumacious conduct in violation of a prepetition order enjoining a debtor from

violating a party's property rights." (citing *In re Cinnabar 2000 Haircutters, Inc*., 20 B.R. 575

(Bankr. S.D.N.Y. 1982))).  Misuse of the bankruptcy process is itself an interference with this

bankruptcy case, as bankruptcy protections are reserved for "the honest but unfortunate debtor."

*In re Ciarcia*, 578 B.R. 495, 503 (Bankr. D. Conn, 2017).  To the extent the bankruptcy petition

prevented the New York court enforcing its orders, the stay should be modified to prevent that

outcome.

        23.    This Court can also protect creditors by tailoring stay relief to avoid depletion of

estate assets by prohibiting collection of any fines for the duration of the stay and making clear

the ultimate liquidation of the Lady May and the distribution of proceeds is subject to the Court's

further orders.  *David X. Manners Co. Inc*., 2018 WL 1997674 at *6 (risk to creditors addressed

by limiting the scope of stay relief to "allow the state court to determine the issues up to the entry

of judgment, but not enforcement.")

        **C.    The New York Court Has the Necessary Expertise to Enforce the February 9 Contempt Order and Lifting the Stay Facilitates Judicial Economy.**

        24.    *Sonnax* factors four and ten favor relief from the automatic stay because the New

York court has "the necessary expertise" to enforce its orders and "the interests of judicial

economy and the expeditious and economical resolution of litigation" are served by modification

of the stay.  *See Sonnax*, 907 F.2d at 1286.  Justice Ostrager has been overseeing the dispute

between PAX and Kwok since April 2017, rendering it "considerably more advanced on the

---

[47] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 10.

'learning curve' with respect to the merits of this matter." *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 167–68 (as litigation was pending before the district court for almost five years it was presumed to be significantly more advanced on the merits of the matter). As Justice Ostrager noted in his February 9 Contempt Order, over 1,180 docket entries have accumulated in the almost five years that the litigation has been pending.[48] All discovery, motion practice, evidentiary hearings, and conferences precipitating the contempt orders have taken place before that court. Justice Ostrager developed a full factual record leading to the issuance of the February 9 Contempt Order and is uniquely well-versed in the procedural history of the case.

25.    Moreover, the proceedings relating of the Lady May are far-advanced; not only has the New York court issued the final February 9 Contempt Order, but it has also already considered imminent further action to ensure compliance with that order.[49] This too favors stay relief. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. at 167–68 (considering relevant that the case was close to completion). This vividly demonstrates Justice Ostrager's familiarity with and competence to enforce the February 9 Contempt Order, and it illustrates that his court is a more efficient venue for that undertaking, weighing heavily in favor of lifting the stay. *See In re Mildred Deli Grocery, Inc.*, 2018 WL 1136017, at *4 (the fact the District Court was "familiar with the particular issues involved in the FLSA Litigation" and "[a]ll discovery and the majority of pre-trial motions [were] completed and the matter [was] ready for trial" weighed heavily in favor of lifting the stay); *see also In re Fleming*, 2020 WL 3816282, *3 (granting relief from the stay where restarting the process of confirming an arbitration award where the State Court had already commenced that process would "not be an effective use of judicial resources.").

---

[48] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 7.
[49] *See id.* at 10 (the Court stated it is "prepared to exercise its full authority under Judiciary Law § 753" if Kwok continues to ignore its orders.")

26.    In contrast, asking this Court to parse the voluminous record to determine appropriate enforcement mechanisms would not be efficient.  Therefore, stay relief is in the interest of judicial economy.

### D.    Modifying the Stay Will Not Prejudice Other Creditors and the Balance of Harms Favors Stay Relief.

27.    *Sonnax* factors seven and twelve also favor stay relief.  Modifying the stay benefits all creditors because it will bring the valuable Lady May to the United States and prevent its dissipation.  The Lady May is debtor property, as the New York court has ruled, and Kwok must act as a fiduciary for his creditors with respect to it.  That starts by following court orders regarding the Lady May.

28.    PAX is not now seeking to levy on the Lady May or obtain any priority status for its debts compared to the debts of other legitimate creditors.  No creditor would be prejudiced or harmed by return of the Lady May to New York. *See In re Mildred Deli Grocery*, *Inc.*, 2018 WL 1136017, at *4 (creditors were not harmed as claimant did not seek to collect on its claim against the debtor); *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 167 (lifting the stay would cause no legally cognizable harm on the estate, except some minor expenses, weighing in favor of lifting the stay).  To the contrary, creditors as a whole will only benefit by the yacht's return to New York.

29.    Absent stay relief, Kwok will have no incentive to bring the Lady May back within reach of his creditors.  His gambit in filing bankruptcy will have borne fruit, as he will be effectively shielded from the February 9 Contempt Order—a clear misuse of the bankruptcy process.

30.    For these reasons, the balance of harms favors relief from the stay.

## RESERVATION OF RIGHTS

Notwithstanding anything in this Motion, PAX reserves all rights, claims and defenses with respect to these chapter 11 proceedings, including but not limited to the right to contest venue, seek dismissal or conversion of the case, and any other remedy.

## CONCLUSION

PAX respectfully requests this Court enter an order (i) that the automatic stay is inapplicable to contempt proceedings before the New York Supreme Court related to Kwok's failure to return the Lady May to New York, or (ii) in the alternative, granting relief from the automatic stay to permit PAX to seek enforcement of the New York Supreme Court's February 9 Contempt Order; and (iii) granting such other relief as may be just and proper.

Dated:  Hartford, Connecticut
        March 1, 2022

**Pacific Alliance Asia Opportunity Fund L.P.**

By: */s/  Patrick M. Birney*
    Patrick M. Birney (CT No. 19875)
    Annecca H. Smith (CT No. 31148)
    **ROBINSON & COLE LLP**
    280 Trumbull Street
    Hartford, CT 06103
    Telephone:  (860) 275-8275
    Facsimile:  (860) 275-8299
    E-mail: pbirney@rc.com
           asmith@rc.com

    -and-

    Peter Friedman (admitted *pro hac vice*)
    Stuart M. Sarnoff (admitted *pro hac vice*)
    **O'MELVENY & MYERS LLP**
    Times Square Tower
    7 Times Square
    New York, NY 10036
    Telephone: (212) 326-2293
    E-mail: pfriedman@omm.com
           ssarnoff@omm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2022, a copy of the foregoing Motion was filed electronically through the Court's CM/ECF System and served, with notice of this filing being sent by email to all Notice Parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties in interest may access this document through the court's CM/ECF system.

*/s/ Patrick M. Birney*_____
Patrick M. Birney