**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Ho Wan Kwok, | : | Case No. 22-50073 |
| | : | |
| Debtor.[1] | : | |
| | : | |

### DEBTOR'S APPLICATION FOR AUTHORIZATION
### TO RETAIN AND EMPLOY STRETTO AS CLAIMS AND NOTICING AGENT

Mr. Ho Wan Kwok, debtor and debtor-in-possession ("Mr. Kwok" or the "Debtor") in the above-captioned chapter 11 case (this "Chapter 11 Case"), hereby submits this application (this "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing him to retain and employ Stretto, Inc. ("Stretto") as his claims and noticing agent (the "Claims and Noticing Agent"), in accordance with the terms and conditions set forth in the services agreement a copy of which is attached hereto as **Exhibit B** (the "Services Agreement"). In support of this Application, the Debtor submits the declaration of Sheryl Betance, Senior Managing Director, Corporate Restructuring, of Stretto, attached hereto as **Exhibit C** (the "Betance Declaration"), and further incorporates the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions* (the "Kwok Declaration"), filed contemporaneously herewith. In further support of this Application, the Debtor respectfully states as follows:

### JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This proceeding is core pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

3.      The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On February 15, 2022 (the "Petition Date"), the Debtor commenced the above-captioned bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtor is a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      No trustee, examiner, or statutory committee has been appointed in this Chapter 11 Case, nor has any official committee been appointed pursuant to section 1102 of the Bankruptcy Code.

## RELIEF REQUESTED

7.      The Debtor seeks entry of an order authorizing him to retain and employ Stretto as his Claims and Noticing Agent effective as of the Petition Date in accordance with the terms and conditions set forth in the Services Agreement.

8.      The Debtor seeks to retain Stretto as his Claims and Noticing Agent, including having Stretto assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in this Chapter 11 Case.  The Debtor's selection of Stretto to act as the Claims and Noticing Agent is appropriate under the circumstances and in the best interest of his estate.  Moreover, the Debtor submits that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.

## STRETTO'S QUALIFICATIONS

9.       Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Stretto's professionals have acted as official claims and noticing agent in several large bankruptcy cases nationwide.  Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Stretto's recent active and former cases include: *In re Carla's Pasta, Inc.*, Case No. 21-20111 (JJT) (Bankr. D. Conn. March 19, 2021); *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.*, Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC,* Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.,* Case No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); *In re Dean & Deluca N.Y., Inc.,* Case No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020); *In re Seabras 1 USA, LLC*, Case No. 19-14006 (SMB) (Bankr. S.D.N.Y. Dec. 27, 2019); *In re Agera Energy LLC*, Case No. 19-23802 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); and *In re Barneys New York, Inc.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 7. 2019).[2]

---

[2]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these cited orders are available upon request to the Debtor's counsel.

## SERVICES TO BE RENDERED

10.     Under the Services Agreement, Stretto will perform the following services (collectively, the "Services"), as the Claims and Noticing Agent, at the request of the Debtor or the Clerk of the Bankruptcy Court (the "Clerk"):

a.     assist the Debtor with the preparation and distribution of all required notices and documents in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including: (i) notice of the commencement of this Chapter 11 Case and the initial meeting of creditors under Bankruptcy Code section 341(a); (ii) notice of any claims bar date; (iii) notice of any proposed sale of the Debtor's assets; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of any plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor, Court, or Clerk may deem necessary or appropriate for an orderly administration of this Chapter 11 Case;

b.     maintain an official copy of the Debtor's Schedules, listing the Debtor's known creditors and the amounts owed thereto;

c.     maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and update and make said lists available upon request by a party-in-interest or the Clerk;

d.     to the extent applicable, furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.     maintain a post office box or address for receiving claims and returned mail, and process all mail received;

f.     for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service no more frequently than every 7 days that includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the

pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

g.     receive and process all proofs of claim, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

h.     provide an electronic interface for filing proofs of claim;

i.     maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) address for payment, if different from the notice address; (v) the amount asserted; (vi) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vii) the Debtor; and (viii) any disposition of the claim;

j.     provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

k.     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

l.     implement reasonable security measures designed to ensure the completeness and integrity of the Claims Registers and the safekeeping of any proofs of claim;

m.     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto not less than weekly;

n.     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

o.     identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such information is available);

p.     assist in the dissemination of information to the public and respond to requests for administrative information regarding this Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

q.    provide docket updates via email to parties who subscribe for such service through the Debtor's case website and/or call center;

r.    comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements in connection with the Services rendered pursuant to the Services Agreement;

s.    Assist with, among other things, solicitation, balloting, and tabulation of votes; prepare any related reports, as required in support of confirmation of a chapter 11 plan;

t.    Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

u.    Assist with the preparation of the Debtor's schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

v.    Provide a confidential data room;

w.    Manage and coordinate any distributions pursuant to a chapter 11 plan if designated as distribution agent under such plan; and

x.    Provide such other solicitation, balloting and other administrative services described in the Engagement Agreement as may be requested from time to time by the Debtor, the Bankruptcy Court or the Office of the Clerk of the Bankruptcy Court.

y.    if this Chapter 11 Case is converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within 3 days of notice to Stretto of entry of the order converting the cases;

z.    30 days prior to the close of this Chapter Case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this Chapter 11 Case;

aa.    within 7 days of notice to Stretto of entry of an order closing this provide to the Court the final version of the Claims Registers as of the date immediately before the close of the cases; and

bb.    at the close of this Chapter 11 Case: (i) box and transport all original documents, in proper format, as provided by the Clerk, to any location requested by the Clerk; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

## DISINTERESTEDNESS OF STRETTO

11.    Stretto has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

12.    To the best of the Debtor's knowledge, Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as Stretto represents in the Betance Declaration, among other things, that:

a.    Stretto is not a creditor of the Debtor;

b.    Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

c.    By accepting employment in this Chapter 11 Case, Stretto waives any rights to receive compensation from the United States government in connection with this Chapter 11 Case;

d.    In its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Stretto will not be an agent of the United States and will not act on behalf of the United States;

e.    Stretto will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this Chapter 11 Case;

f.    Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

g.    In its capacity as Claims and Noticing Agent in this Chapter 11 Case, Stretto will not intentionally misrepresent any fact to any person;

h.    Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

      i.      Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

      j.      None of the services provided by Stretto as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk's office.

13.     Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure

14.     To the extent that there is any inconsistency between this Application, the Order, and the Services Agreement, the Order shall govern.

## COMPENSATION OF STRETTO

15.     The Debtor respectfully requests that the undisputed fees and expenses incurred by Stretto in the performance of the above Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Services Agreement without further application to or order of the Court.

16.     Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve, no less frequently than monthly, invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from this Court.

17.     In addition, under the terms of the Services Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances

specified in the Services Agreement, except in circumstances resulting from Stretto's bad faith, gross negligence, willful misconduct, or as otherwise provided in the Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this Chapter 11 Case.

**BASIS FOR RELIEF**

18.    Section 156(c) of title 28 of the United States Code authorizes the Court to use facilities other than those of the Clerk for the administration of chapter 11 cases, provided the Debtor's estate pay the cost of such services:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

26 U.S.C. § 156(c).

19.    In light of the significant number of anticipated claimants and other parties in interest in this Chapter 11 Case, as well as the complexity of the Debtor's financial assets and obligations, the Debtor submits that the appointment of Stretto as the Claims and Noticing Agent will provide the most effective and efficient means of—and relieve the administrative burden on the Debtor and/or the Office of the Clerk of the Bankruptcy Court of—noticing, administering certain claims-related tasks, and, therefore, is in the best interests of the Debtor's estate.

**NOTICE**

20.    Notice of this Application will be provided to (a) the Office of the United States Trustee; (b) the holders of the largest unsecured claims against the Debtor; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Connecticut; and (e) any other party that has requested service pursuant to Bankruptcy Rule 2002 as of the time of service

(collectively, the "Notice Parties").  The Debtor believes that no further notice is required under the circumstances.

### NO PRIOR REQUEST

21.     No previous request for the relief sought herein has been made by the Debtor in this or in any other court.

### CONCLUSION

**WHEREFORE**, Mr. Kwok respectfully requests that this Court enter an order in the form attached hereto as **Exhibit A** authorizing him to employ and retain Stretto as his Claims and Noticing Agent and granting such other and further relief as is just and proper.

Dated: March 16, 2022

Ho Wan Kwok, Debtor and Debtor-in-Possession

By: */s/ Ho Wan Kwok*
    Ho Wan Kwok

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2022 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

*/s/ William Baldiga*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| Ho Wan Kwok, | : | Case No. 22-50073 |
| | : | |
| Debtor. [1] | : | |
| | : | |

## ORDER GRANTING DEBTOR'S APPLICATION FOR AUTHORIZATION
## TO RETAIN AND EMPLOY STRETTO AS CLAIMS AND NOTICING AGENT

Upon consideration of the *Debtor's Application for Authorization to Retain and Employ Stretto as Claims and Noticing Agent* (the "<u>Application</u>")[2] and the Betance Declaration and Kwok Declaration and any response(s) to the Application; and due and proper notice of the Application having been given; and it appearing that no other or further notice of the Application is required; and the Court having jurisdiction to consider the Application in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the relief requested in the Application and provided for herein being in the best interest of the Debtor, his estate, and creditors; and after due deliberation and sufficient cause appearing therefor, and due and proper notice of the Application having been provided to the Notice Parties; and it appearing that no other or further notice need be provided; and the Court having held one or more hearings to consider the relief requested in the Application and all of the proceedings had before this Court; and all objections to the Application having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth

---

[1]    The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.
[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Application.

in the Application and the Betance Declaration and Kwok Declaration establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY ORDERED THAT:**

1.      The Application is GRANTED as provided herein.

2.      The Debtor is authorized to retain and appoint Stretto as his Claims and Noticing Agent under the terms of the Services Agreement as set forth herein.

3.      Stretto is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in this Chapter 11 Case, and other related tasks as described in the Application, the Services Agreement, and this Order. The Clerk shall provide Stretto with CM/ECF credentials that allow Stretto to receive CM/ECF notifications and file certificates of service.

4.      Stretto shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case and is authorized and directed to maintain official claims registers for each of the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      Stretto is authorized to provide an electronic interface for filing of proofs of claim and to obtain a post office box or address for the receipt of proofs of claim. Stretto shall provide public access to the claims register, including complete proofs of claim with attachments, if any, without charge.

6.       Stretto is authorized to take such other action to comply with all duties and Services set forth in the Application and the Services Agreement.

7.      Notwithstanding sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016, the Debtor is authorized to compensate Stretto in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services

provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8.    Stretto shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices.

9.    The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Services Agreement or monthly invoices; provided that the parties may seek resolution of the matter from the Court if resolution is not achieved.

10.    Without further order of the Court, pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtor's estate.

11.    Stretto may apply any advance to all prepetition invoices, which advance may be replenished to the original advance amount, and thereafter, Stretto may hold its advance under the Services Agreement during this Chapter 11 Case as security for the payment of fees and expenses incurred under the Services Agreement.

12.    The Debtor shall indemnify Stretto under the terms of the Services Agreement, as modified pursuant to this Order.

13.    Stretto shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the services provided under the Services

Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

14.     Notwithstanding anything to the contrary in the Services Agreement, the Debtor shall have no obligation to indemnify Stretto, or provide contribution or reimbursement to Stretto, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen solely from Stretto's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty (if any) as provided in this Order; (b) for a contractual dispute in which the Debtor allege the breach of Stretto's contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (c) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *Unsecured Creditors' Committee v. Pelofsky (In re Thermadyne Holdings Corp.)*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); or (d) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Stretto should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

15.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing this Chapter 11 Case, Stretto believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including the advancement of defense costs, Stretto must file an application therefor in this Court, and the Debtor may not pay any such amounts to Stretto before the entry of an order by this Court

4

approving the payment. If Stretto seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Services Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Stretto's own applications, both interim and final, but determined by this Court after notice and a hearing. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Stretto for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Stretto. All parties in interest shall retain the right to object to any demand by Stretto for indemnification, contribution, or reimbursement.

16.     In the event Stretto is unable to provide the Services set forth in this Order, Stretto will immediately notify the Clerk and the Debtor's attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's attorney.

17.     After entry of an order terminating Stretto's services, upon the closing of this Chapter 11 Case, or for any other reason, Stretto shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and shall be compensated by the Debtor in connection therewith.

18.     Stretto shall not cease providing claims processing services during this Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

19.     In the event of any inconsistency between the Services Agreement, the Application, and this Order, this Order shall govern.

20.     The Debtor and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

5

21.     This Order pertains only to the work to be performed by Stretto under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c), and the Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Stretto but is not specifically authorized by this Order.

22.      Notwithstanding the relief granted in this Order, any payment made by the Debtor pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court regarding Debtor's postpetition financing and/or use of cash collateral.

23.     Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

24.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of the Bankruptcy Rules are satisfied by such notice.

25.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

 

 

_____
Honorable Julie A. Manning
United States Bankruptcy Judge
District of Connecticut

**<u>Exhibit B</u>**

**Services Agreement**

## Services Agreement

This Services Agreement (this "Agreement") is entered into as of March 4, 2022 between Stretto, Inc. ("Stretto") and Ho Wan Kwok.

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to approval of this agreement and Mr. Kwok's retention of Stretto in chapter 11 case No. 22-50073 (Bankr. D. Conn.) (the "Chapter 11 Case"), the parties hereto agree as follows:

1. **Services**

    (a) Stretto agrees to provide Mr. Kwok with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("Claims Administration, Noticing, and Solicitation Services"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "Services").

    (b) Mr. Kwok acknowledges and agrees that Stretto will often take direction from Mr. Kwok's representatives, employees, agents, and/or professionals (collectively, the "Kwok Parties") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and Mr. Kwok agrees to be bound by, any requests, advice, or information provided by the Kwok Parties to the same extent as if such requests, advice, or information were provided by Mr. Kwok.

    (c) Mr. Kwok agrees and understands that Stretto shall not provide Mr. Kwok or any other party with legal advice.

2. **Rates, Expenses and Payment**

    (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of Mr. Kwok. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "Preferred Rate Structure"). Mr. Kwok agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including Mr. Kwok) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates.  Mr. Kwok agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

    (b) Subject in all respects to the United States Bankruptcy Code and any orders governing compensation that may be entered and applicable in the Chapter 11 Case: (i)  Stretto will bill Mr. Kwok no less frequently than monthly; (ii)  all invoices shall be due and payable by Mr. Kwok upon receipt; (iii) where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from Mr. Kwok before the performance of Services hereunder; and (iv) if any amount is unpaid as of 30 days after delivery of an invoice, Mr. Kwok agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

1

(c) In the case of a dispute with respect to an invoice amount, Mr. Kwok shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) Mr. Kwok shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by Mr. Kwok or the Kwok Parties.

(f) Mr. Kwok shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Stretto shall provide 30 days' written notice to Mr. Kwok of such increases.

(h) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Client using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3.  Retention in Bankruptcy Case**

(a) Mr. Kwok promptly shall file any necessary application with the Bankruptcy Court in the Chapter 11 Case to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Chapter 11 Case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) Mr. Kwok and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is or may be required to disclose any confidential information pursuant to a subpoena, court order, or any request or order from a governmental authority: (i) such party shall provide written notice to the other party promptly after receiving such subpoena, court order, or request or order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to

prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

## 5. Property Rights

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "Property") furnished by Stretto for itself or for use by Mr. Kwok hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by Mr. Kwok do not vest in Mr. Kwok any rights in such Property. Such Property is only being made available for Mr. Kwok's use during and in connection with the Services provided by Stretto hereunder.

## 6. Bank Accounts

At the request of Mr. Kwok or the Kwok Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for Mr. Kwok to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to Mr. Kwok pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

## 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "Cause" means (i) gross negligence or willful misconduct of Stretto that causes material harm to Mr. Kwok's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of Mr. Kwok to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, Mr. Kwok promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, Mr. Kwok shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with Mr. Kwok and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. Mr. Kwok agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to Mr. Kwok hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the

3

foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

9. **Indemnification**

   (a) To the fullest extent permitted by applicable law, Mr. Kwok shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "Indemnified Parties") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "Losses") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

   (b) Stretto and Mr. Kwok shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

   (c) Mr. Kwok's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

   (d) Mr. Kwok's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Stretto's liability to Mr. Kwok for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by Mr. Kwok to Stretto for the portion of the particular work that gave rise to the alleged Loss. In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Data**

   (a) Mr. Kwok is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any of the Kwok Parties submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "SOFAs and Schedules"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and Mr. Kwok is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

   (b) Mr. Kwok agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) Mr. Kwok has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

   (c) Any data, storage media, programs or other materials furnished to Stretto by Mr. Kwok may be retained by Stretto until the Services provided hereunder are paid in full. Mr. Kwok shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to Mr. Kwok; provided that if Mr. Kwok has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by Mr. Kwok for the expense of such disposition, after giving Mr. Kwok 30 days' notice. Mr. Kwok agrees to initiate and maintain backup files that would

4

allow Mr. Kwok to regenerate or duplicate all programs, data, or information provided by Mr. Kwok to Stretto.

(d) Stretto and Mr. Kwok agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as <u>Exhibit A</u>, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. California Consumer Privacy Act.

(a) Definitions.  In this Section 12,
   (i) "CCPA" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii) "Personal Information" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any data provided to Stretto by Mr. Kwok in order for Stretto to provide Services under this Agreement; and
   (iii) "Commercial Purposes," "Sell," "Business," and "Service Provider" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent Mr. Kwok is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Mr. Kwok's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

## 13. Non-Solicitation

Mr. Kwok agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

## 14. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

## 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 16. Arbitration

Any disputes related to this Agreement shall be decided by the bankruptcy court in the Chapter 11 Case.

STRETTO

## 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by Mr. Kwok or an authorized representative of Mr. Kwok and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other.

## 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Stretto: | Stretto<br>410 Exchange, Ste. 100<br>Irvine, CA 92602<br>Attn: Sheryl Betance<br>Tel: 714.716.1872<br>Email: sheryl.betance@stretto.com |
| If to Mr. Kwok: | Ho Wan Kwok<br>c/o Golden Spring (New York) Ltd.<br>162 East 64th Street<br>New York, NY 10065<br>Email: admin@gsnyus.com |
| With a copy to: | Brown Rudnick LLP<br>Attn: Bennett S. Silverberg<br>7 Times Sq. 47th Fl.<br>New York, NY 10036<br>Email: bsilverberg@brownrudnick.com |

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

6



Stretto

By: Sheryl Betance

Title: Senior Managing Director


Ho Wan Kwok

By:

**Exhibit A**

**STRETTO**

## GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "Agreement") by and between Stretto (the "Processor")[1] and Mr. Kwok (together, the "Parties").

### RECITALS

WHEREAS,

(A)    The Processor and Mr. Kwok have agreed to the following terms regarding the Processing of Kwok Personal Data.

(B)    Mr. Kwok acts as a Controller of Mr. Kwok Personal Data.

(C)    Mr. Kwok wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)    Mr. Kwok instructs the Processor to process Kwok Personal Data.

(E)    The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "GDPR").

NOW THEREFORE, Mr. Kwok and the Processor agree as follows:

1.    **Definitions.**  The Parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)    "Addendum" shall mean this GDPR Addendum;

(b)    "Kwok Personal Data" means any Personal Data Processed by the Processor or a Subprocessor on behalf of Mr. Kwok pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Mr. Kwok's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)    "Data Protection Laws" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)    "Services" means the services the Processor provides to Mr. Kwok pursuant to the Agreement;

(e)    "Subprocessor" means any person appointed by or on behalf the Processor to process Personal Data on behalf of Mr. Kwok in connection with the Agreement;

---

[1] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

STRETTO

(f)    "Technical and organizational security measures" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)    The terms "Commission", "Controller", "Data Subject", "Member State", "Personal Data", "Personal Data Breach", "Processor", "Processing", "Special Categories of Personal Data", and "Supervisory Authority" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.    **Obligations of Mr. Kwok.**  Mr. Kwok agrees and warrants:

(a)    that the Processing, including the transfer itself, of Mr. Kwok Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)    that it has instructed and throughout the duration of the Services will instruct the Processor to process Mr. Kwok Personal Data transferred only on Mr. Kwok's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)    that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)    that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect Mr. Kwok Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)    that it will ensure compliance with the technical and organizational security measures; and

(f)    that Mr. Kwok Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.    **Obligations of the Processor.**  The Processor agrees and warrants:

(a)    to comply with the Data Protection Laws;

(b)    to process Mr. Kwok Personal Data only on behalf of Mr. Kwok and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly Mr. Kwok of its inability to comply, in which case Mr. Kwok is entitled to suspend the processing of data and/or terminate the Agreement;

(c)    that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from Mr. Kwok and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to Mr. Kwok as soon as it is aware, in which case Mr. Kwok is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)    that it has implemented reasonable and appropriate technical and organizational security measures before processing Mr. Kwok Personal Data;

(e)    that it will promptly notify Mr. Kwok about:

    i.    any legally binding request for disclosure of Mr. Kwok Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

    ii.    any accidental or unauthorized access; and

    iii.    any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by Mr. Kwok or as required by any applicable law;

(f)    to deal promptly and properly with all inquiries from Mr. Kwok relating to its Processing of Mr. Kwok Personal Data and to abide by the advice of the supervisory authority with regard to the processing of Mr. Kwok Personal Data;

(g)    to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to Mr. Kwok Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Kwok Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)    that it shall not use (or disclose any Kwok Personal Data to) any Subprocessor unless required or authorized by Mr. Kwok with prior written consent.

**4.**    **Obligations after Termination of Personal Data Processing Services.**

(a)    The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of Mr. Kwok, return all Kwok Personal Data and the copies thereof to Mr. Kwok or shall destroy all Mr. Kwok Personal Data and certify to Mr. Kwok that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of Mr. Kwok Personal Data. In that case, the Processor warrants that it will guarantee the confidentiality of Mr. Kwok Personal Data and will not further process Mr. Kwok Personal Data.

(b)  The Processor and any Subprocessor warrant that upon request of Mr. Kwok and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.  **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.

64547349 v1-WorkSiteUS-038210/0001

# **Exhibit C**

**Betance Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Ho Wan Kwok, | : | Case No. 22-50073 |
| | : | |
| Debtor.[1] | : | |
| | : | |

**DECLARATION OF SHERYL BETANCE IN SUPPORT**
**OF DEBTOR'S APPLICATION FOR AUTHORIZATION TO**
**RETAIN AND EMPLOY STRETTO AS CLAIMS AND NOTICING AGENT**

I, Sheryl Betance, declare under penalty of perjury as follows:

1.     I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc.

("Stretto"), a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine,

California 92602.  Except as otherwise noted, I have personal knowledge of the matters set forth

herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.     This declaration (this "Declaration") is made in support of the above-captioned

debtor's (the "Debtor") *Debtor's Application Seeking Entry of an Order (I) Authorizing and*

*Approving the Appointment of Stretto as Claims and Noticing Agent and (II) Granting Related*

*Relief*, filed contemporaneously herewith (the "Application").[2]

**Qualifications**

3.     Stretto is a chapter 11 administrator comprised of leading industry professionals

with significant experience in both the legal and administrative aspects of large, complex

chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration,

solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and

---

[1]    The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.
[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

experience in matters of this size and complexity. Stretto's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's cases include: *In re Carla's Pasta, Inc.*, Case No. 21-20111 (JJT) (Bankr. D. Conn. March 19, 2021); *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.,* Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC,* Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.,* Case No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); *In re Dean & Deluca N.Y., Inc.,* Case No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020); *In re Seabras 1 USA, LLC*, Case No. 19-14006 (SMB) (Bankr. S.D.N.Y. Dec. 27, 2019); *In re Agera Energy LLC*, Case No. 19-23802 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); and *In re Barneys New York, Inc.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 7. 2019).[3]

### Services to be Rendered

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform, at the request of the Office of the Clerk of the Court (the "Clerk's Office"), the services specified in the Application and the Engagement Agreement, and, at the Debtor's request, any related administrative, technical, and support services as specified in the Application and

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these cited orders are available upon request to the Debtor's counsel.

the Engagement Agreement.  In performing such services, Stretto will charge the Debtor the rates

set forth in the Services Agreement, which is attached as **Exhibit B** to the Application.

     5.     Stretto represents, among other things, the following:

     a.    Stretto is not a creditor of the Debtor;

     b.    Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

     c.    By accepting employment in this chapter 11 case, Stretto waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

     d.    In its capacity as the Claims and Noticing Agent in this chapter 11 case, Stretto will not be an agent of the United States and will not act on behalf of the United States;

     e.    Stretto will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

     f.    Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

     g.    In its capacity as Claims and Noticing Agent in this chapter 11 case, Stretto will not intentionally misrepresent any fact to any person;

     h.    Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

     i.    Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

     j.    None of the services provided by Stretto as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

     6.     Although the Debtor does not propose to retain Stretto under section 327 of

the Bankruptcy Code pursuant to the Application (such retention will be sought by separate

application), I caused to be submitted for review by our conflicts system the names of potential

parties-in-interest (the "Potential Parties in Interest") in this chapter 11 case.  A list of Potential

Parties in Interest was provided by the Debtor and included, among other parties, the Debtor, non-Debtor affiliates, creditors, lenders, the United States Trustee and persons employed in the office of the United States Trustee, and other parties.  The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries. Stretto's internal database also includes Stone Point Capital LLC ("Stone Point"), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "Stone Point Searched Parties").  The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision.  At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest.  Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtor, his creditors or other relevant parties.

8.      Stretto has and will continue to represent clients in matters unrelated to this chapter 11 case.  In addition, in matters unrelated to this chapter 11 case, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in this chapter 11 case.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.  To the best of my knowledge,

Stretto does not provide professional services to any entities or persons that have been identified as Potential Parties in Interest.

9.      To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the District of Connecticut, the United States Trustee for Region 2, or any attorney known by Stretto to be employed in the Office of the United States Trustee serving the District of Connecticut.

10.     Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtor while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when this chapter 11 case were filed. To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in this chapter 11 case.

11.     Stretto and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest.  To the best of my knowledge, Stretto does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified as Potential Parties in Interest or who have filed a notice of appearance in this chapter 11 case.

12.     In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point.  Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut.  The firm has raised and managed eight private equity funds – the Trident

Funds – with aggregate committed capital of approximately \$25 billion. Stone Point targets investments in the global financial services industry and related sectors.

13.    The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

14.    Stretto has searched the names of the Debtor and the names of the Potential Parties in Interest against the Stone Point Searched Parties. Based solely on the foregoing search, Stretto has determined that neither the Trident VI Funds, Stone Point nor the Stone Point Searched Parties have been identified on the parties in interest list in this chapter 11 case as of the date hereof and to the best of its knowledge, that there are no material connections that require disclosure. To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtor, Stretto will promptly file a supplemental disclosure. Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtor with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

15.    From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be the Debtor, often without Stretto's or its personnel's knowledge. Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or

they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

16.     From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be affiliated with the Debtor.  Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained.  Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of the Debtor or any affiliate thereof.

17.     To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtor's estate; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of the Debtor, and (iii) does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtor, his creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 16, 2022

*/s/ Sheryl Betance*
Sheryl Betance
Senior Managing Director
Stretto
410 Exchange, Ste. 100
Irvine, California 92602