**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>Ho Wan Kwok[1]<br><br>               Debtor. | Chapter 11 Case No.<br><br>22-50073 (JAM) |
| Pacific Alliance Asia Opportunity Fund L.P.,<br><br>               Movant,<br><br>vs.<br><br>Ho Wan Kwok,<br><br>               Respondent | March 18, 2022 |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER CONFIRMING THE INAPPLICABILITY OF THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(2)
<u>OF THE BANKRUPTCY CODE</u>**

TO THE HONORABLE JULIE A. MANNING,
UNITED STATES BANKRUPTCY JUDGE:

      PAX submits this reply in support of its *Motion for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief From the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code* [ECF No. 57] (the "<u>Motion</u>") and in response to the *Debtor's Objection to Motion of Pacific Alliance Asia Opportunity Fund L.P. For*

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

*Entry of An Order Confirming the Inapplicability of the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code* [ECF No. 83] (the "Objection").[2]

## REPLY

1.  Contrary to Kwok's misrepresentations, PAX brings this Motion to ensure that a valuable estate asset is brought to New York where it can be protected for the benefit of Kwok's creditors subject to further order of the Court—not to put Kwok in jail. Consistent with his past behavior that led to the Supreme Court of the State of New York (Justice Ostrager presiding) (the "NY State Court") ordering Kwok to return the Lady May to New York and holding him in contempt, Kwok continues to resist all efforts to marshal his assets and act on behalf of anyone's interests, but his family's and his own. In doing so, Kwok leaves the Lady May at risk of misuse and abuse by his family (who asserts they exclusively own the Lady May—a claim rejected by the NY State Court) and, if Kwok is to be believed, at risk of seizure in foreign waters by the same foreign governments he claims have frozen his purported other assets.[3]

2.  The Objection seeks improperly to re-litigate the facts underpinning the February 9 Contempt Order, which was preceded by a full evidentiary hearing with testimony from seven witnesses, including Kwok's daughter. *See* February 9 Contempt Order at 2. Following that hearing, the NY State Court found that "[t]he testimony adduced at the hearing out of the mouths of [Kwok's] witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May." *Id.* at 4.

---

[2] Capitalized terms used but not defined in this reply shall have meanings given to such terms in the Motion.

[3] *See* Global Notes and Statements of Limitations, ECF No. 77 at 6–7 (describing a Hong Kong court order freezing and subjecting to seizure "[a]s much as billions [] of funds and property . . . purportedly subject to the Debtor's 'effective control'"); *see also*, Notes to Question 19 (describing the Chinese government's raid and seizure of certain of Kwok's business records).

3. But rather than seeking relief from the stay to continue his appeal of the February 9 Contempt Order (to which PAX would not object), Kwok opposes the Motion and impermissibly seeks to re-litigate the NY State Court finding that the Lady May is his property. As explained in more detail below, under the *Rooker-Feldman* doctrine and the principle of *res judicata*, this Court cannot revisit the NY State Court's determination that Kwok "beneficially owns and controls" the Lady May.

4. Kwok also mischaracterizes the Motion. The Motion's purpose is to request confirmation that the automatic stay does not apply to the February 9 Contempt Order, or in the alternative, to request a narrow modification of the automatic stay to allow the NY State Court to enforce its order insofar as it required Kwok to return the Lady May to New York, which will benefit all of Kwok's creditors. *See* Motion at ¶ 8. The Motion does not seek, and is not intended to seek, to put Kwok in jail. PAX—acting for the benefit of all creditors—filed the Motion to enforce the February 9 Contempt Order to ensure that the €28 million Lady May is returned to New York so it can be monitored and safeguarded for the benefit of satisfying the claims of Kwok's creditors pursuant to further order of the Court. As Kwok acknowledges, any interest that he holds in the Lady May is part of his bankruptcy estate under section 541 of the Bankruptcy Code. *See* Objection at ¶ 4. If Kwok were a true fiduciary for the benefit of his estate, Kwok would not only support the Motion, but would be actively seeking the turnover of the Lady May and prosecuting stay violations against his family members.[4] Of course, Kwok has done no such thing, choosing instead to persist in his judicially discredited claim that he has no control over the yacht.

---

[4] Hong Kong International Funds Investments (USA) Limited, LLC, whose sole member is Mei Guo, Kwok's daughter, holds legal title to the Lady May. *See* February 9 Contempt Order at 4. Ms. Guo testified at the February 9, 2022 hearing that her brother Qiang Guo, purchased the boat for her. *Id.* at 5. Her testimony was not supported by documentary evidence and Justice Ostrager discredited her testimony on this point. *Id.* Golden Spring New York Ltd., Kwok's "family office," pays the multi-million dollar annual expenses in yacht upkeep. *Id.* at 4-5.

If that course of conduct results in Kwok's imprisonment pursuant to a court order, it will be a consequence of his behavior and his fault, no one else's. *See* February 9 Contempt Order at 7.

5. The February 9 Contempt Order is designed to secure Kwok's compliance with the NY State Court's prior orders to return the Lady May to its jurisdiction. As such, it falls within the exception to the automatic stay for certain categories of civil contempt orders.[5] But even if the February 9 Contempt Order does not fall within that exception, relief from the automatic stay is warranted to permit the NY State Court to compel the return of the Lady May to New York.[6] As discussed in the Motion—and contrary to Kwok's argument that doing so unfairly prejudices the administration of his chapter 11 estate—returning the Lady May would unquestionably benefit the estate and all of its creditors (all of whom support the primary relief sought in the Motion). Indeed, the only people who could be prejudiced by the return of the fugitive Lady May are those currently enjoying it as it floats around European waters in violation of repeated judicial orders, risking damage and depreciation of a valuable estate asset and potential seizure by foreign authorities.[7] As to the administration of Kwok's estate, this is an individual chapter 11 case for a debtor who asserts he has no job and virtually no assets to satisfy his creditors, and thus no estate to administer.[8] Accordingly, the Court should grant the Motion and permit the NY State Court to enforce the February 9 Contempt Order to seek the return of the Lady May to New York.

---

[5] The Objection notes that the NY State Court requested that PAX withdraw another contempt motion because of Kwok's bankruptcy filing. *See* Objection at ¶ 6. Although the Motion only applies to the February 9 Contempt Order, PAX reserves all rights regarding the application of the automatic stay to its other contempt motion.

[6] In the event that removal of the NY State Court action is valid, PAX consents to a federal court ordering Kwok to return the Lady May to the locale of the applicable federal court with appropriate sanctions to be imposed if he fails to do so.

[7] *See supra* note 3.

[8] *See* Official Form 106A/B, Schedule A/B: Property, ECF No. 78 at 3–7 (claiming to have $3,850 in assets); see also Official Form 106I, Schedule I: Income, ECF No. 78 at 14–15 (claiming to have $0 in income).

### I. **KWOK IS BARRED FROM SEEKING TO RE-LITIGATE THE ISSUE OF OWNERSHIP OF THE LADY MAY BEFORE THIS COURT**

6. The Objection argues, based on a purported declaration from Kwok that was never filed,[9] that the February 9 Contempt Order was "wrongfully issued against him." Objection at ¶ 14.[10] Kwok further asserts that "[w]hatever interest the Debtor *may ultimately be determined* to have in the Lady May is now part of the bankruptcy estate and squarely under [the Bankruptcy Court's] jurisdiction." Objection at ¶ 4 (emphasis added). For purposes of the Motion (and, as explained below, for all purposes in this case) Kwok is bound by the NY State Court's ruling. Kwok cannot oppose the Motion by claiming he does not own the Lady May or cannot bring it to New York: his property interest in, and control over, the Lady May was determined by the NY State Court after a full evidentiary hearing with witnesses and an opportunity for Kwok to testify (which he declined to do, having previously invoked his fifth amendment right against self-incrimination). *See* February 9 Contempt Order at 9–10.

7. It is undisputed that "[p]roperty interests are created and defined by state law." *Butner v. U.S.*, 440 U.S. 48, 55 (1979). The "[u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy." *Id.* (internal quotation marks and citation omitted); *see also In re Cysen/Montenay Energy Co.*,

---

[9] The Objection states that "contemporaneously with the filing of this Objection, the Debtor filed the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Cases and Certain Motions*, dated March 15, 2022." Objection at 1. As of the filing of this reply, no such declaration has been filed.

[10] Apropos of nothing, Kwok also continues to assert that his personal guaranty that had been at issue in the NY State Court contract dispute was a "forgery" that his prior litigation counsel submitted without showing it to him first. PAX will not sidetrack this Court by detailing the numerous ways this assertion is perjurious nonsense that was repeatedly rejected by the NY State Court (*e.g.,* Kwok produced the guaranty from his own files; he admitted its authenticity in responses to requests for admission; and he relied on the agreement for years in litigation before going rogue at his merits deposition and claiming he had never seen it before). Suffice it to say that for the same reason described in this reply that Kwok cannot challenge the February 9 Contempt Order in this Court, Kwok cannot re-litigate the validity of the February 3, 2021 NY State Court merits judgment.

902 F.2d 1098, 1101 (2d Cir. 1990) ("[S]tate law determines the 'nature of a debtor's interest' in a given item." (internal citation omitted)); *In re de Hertogh,* 412 B.R. 24, 29 (Bankr. D. Conn. 2009) (in order to determine whether property constituted property of the debtors' estate, the court had to determine "whether, under applicable Connecticut law, the Debtors had a legally cognizable interest in the [property] as of the Petition Date.").

8. Bankruptcy court review of the NY State Court's findings regarding Kwok's ownership and control of the Lady May is barred by both the *Rooker-Feldman* doctrine and *res judicata*. The *Rooker-Feldman* doctrine is "aimed at 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.'" *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (internal citations omitted). The doctrine applies to state court judgments that remain subject to appeal.[11] It "directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Id.* at 154 (internal citations omitted).

9. Kwok is a multiple time "state-court loser." Before his chapter 11 case, Kwok lost on the issue of ownership of the Lady May in the NY State Court, resulting in the issuance of the February 9 Contempt Order, and his Objection is, in effect, a complaint that he has been and will

---

[11] *See Caldwell v. Gutman*, 701 F. Supp. 2d 340, 346–47 (E.D.N.Y. 2010) ("Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment. . . . This is what Rooker–Feldman prohibits." (internal citations omitted)); *see also Cohen v. Rosenthal*, No. 3:15-cv-01043 (CSH), 2016 WL 7340280, at *4 , n.7 (D. Conn. Dec. 19, 2016) ("Although the Second Circuit has not yet addressed whether all state proceedings, including appeals, must have ended before the federal action commences for purposes of applying the Rooker-Feldman doctrine, district courts within the Second Circuit have not confined application of the Rooker-Feldman doctrine to situations where the federal plaintiffs have exhausted their state-court appeals." (internal quotation marks and citations omitted)).

6

be injured by that order.[12] Under the *Rooker-Feldman* doctrine, Kwok cannot use this Court to review the findings of the NY State Court. S*ee McKithen v. Brown*, 626 F.3d at 154–55 (refusing to consider challenge to state court judgment on application of the *Rooker-Feldman* doctrine, holding "[t]he proper vehicle for [the Plaintiff] to challenge the state court's interpretation of section 440.30(1–a)(a) was an appeal to the New York Appellate Division" (internal citation omitted)); *In re Booker*, No. 19-30787, 2020 WL 504799, at *6 (Bankr. D. Conn. Jan. 30, 2020), *reconsideration denied*, No. 19-30787 (AMN), 2020 WL 930091 (Bankr. D. Conn. Feb. 26, 2020) (applying the *Rooker-Feldman* doctrine and concluding, "the bankruptcy court lacks jurisdiction to review the state court's decision . . . and therefore must accept the judgment."); *cf. In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010) (finding that the state court judgment and order had "conclusively establish[ed]" the issues that the debtor was seeking to re-litigate and holding that "[u]sing a chapter 11 case as a platform to attack final orders of other courts constitutes Other Cause" to dismiss the chapter 11 case (internal citations omitted)).

10.     *Res judicata* also bars Kwok from arguing the Motion should be denied because he lacks ownership or control of the Lady May.[13] *Res judicata*, or claim preclusion, provides that "a

---

[12] In an attempt to re-litigate these issues, Kwok has sought to remove the NY State Court Action to this Court. *See* Objection at ¶ 7. But as these issues are subject to pending appeals that are fully briefed, removal is improper, and PAX will be seeking remand to the NY State Court. *See In re Briarpatch Film Corp.*, 281 B.R. 820, 830–31 (Bankr. S.D.N.Y. 2002) (ordering remand of state court actions that were part of a "long, tangled history of litigation" where "the doctrine of comity strongly supports remand . . . so that the State court can enforce its own orders and, if an appeal lies from the Order and Judgment, review its own judgments."). Notably, the Court in *Briarpatch* also dismissed the debtor's chapter 11 petition as a bad faith filing finding that the debtor who was "devoid of assets as well as business and corporate legitimacy" had "no cognizable intent to reorganize but filed the Chapter 11 petition in order to relitigate issues already determined by the State Court." *Id.* at 831, 835. PAX will pursue the same relief here.

[13] Kwok is also collaterally estopped from re-litigating the ownership of the Lady May. *See DiSorbo v. Hoy*, 343 F.3d 172, 182–83 (2d Cir. 2003) ("Under New York law, collateral estoppel may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate. . . . [T]he mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." (internal quotation marks and citations omitted)); *Sec. & Exch. Comm'n v. Penn*, 225 F. Supp. 3d 225, 233 (S.D.N.Y. 2016) (Defendant was "collaterally estopped from challenging the facts underlying his criminal convictions. . . . The fact that [he] ha[d] an appeal pending from his criminal convictions d[id] not affect the collateral estoppel analysis." (internal citations omitted)).

final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir. 1994) (internal citation omitted).[14] Under New York's doctrine of *res judicata* "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Yeiser v. GMAC Mortgage Corp.,* 535 F.Supp.2d 413, 422 (S.D.N.Y. 2008) (internal citation omitted). As discussed above, the NY State Court's decision on ownership and control was based on extensive briefing and substantial written and live testimonial evidence.[15] Kwok had every opportunity to litigate these issues in the NY State Court.[16] This Court must accept Justice Ostrager's orders and accordingly, Kwok's only vehicle to challenge the NY State Court's findings regarding the Lady May is to proceed with his appeal of the February 9 Contempt Order.

11.     Thus, under the *Rooker-Feldman* doctrine and *res judicata*, Kwok cannot re-litigate whether he "beneficially owns and controls" the Lady May, and his already judicially discredited

---

[14] *Res judicata* also applies here notwithstanding the February 9 Contempt Order remains on appeal. *See Oparaji v. Mun. Credit Union*, No. 19-CV-4034 (JPC)(SN), 2020 WL 9815188, at *1 (S.D.N.Y. Dec. 21, 2020), *report and recommendation adopted*, No. 19 CIV. 4034 (JPC), 2021 WL 2414859 (S.D.N.Y. June 14, 2021) ("Under New York law, 'the mere pendency of an appeal does not deprive a challenged judgment of its res judicata effects.'" (internal citations omitted)); *Truong v. Hung Thi Nguyen*, No. 10 CIV. 386 (DAB) (HBP), 2011 WL 1198254, at *4 (S.D.N.Y. Mar. 3, 2011) (collecting cases, holding: "[u]nder New York law, a judgment entered by a trial court is 'final' for purposes of res judicata, even where an appeal is pending from the trial court's judgment." (internal citations omitted)).

[15] The parties fully briefed the contempt issue before Justice Ostrager, which resulted in the Initial Contempt Order. *See* Motion at ¶ 5. Kwok subsequently appealed Justice Ostrager's decision to the Appellate Division First Department. *See id*. The parties re-briefed the issue on appeal and the First Department found that "[t]he motion court acted within its discretion in holding defendant in civil contempt, as plaintiff established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights." *Pac. All. Asia Opportunity Fund L.P. v. Wan*, 199 A.D.3d 423, 423 (1st Dep't 2021). The Appellate Division upheld the daily fine of $500,000 and instructed the motion court to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties. *Id*. Justice Ostrager then conducted a full evidentiary hearing on February 2, 2022, after which he determined that PAX had clearly and convincingly demonstrated that Kwok beneficially owns and controls the yacht. *See* February 9 Contempt Order at 4. Accordingly, the NY State Court issued a final order of civil contempt. *Id*. at 10.

[16] *See supra* note 15.

contention that he does not own or control the Lady May is not a proper basis for objecting to the Motion.

## II. THE MOTION FALLS WITHIN THE EXCEPTION TO THE AUTOMATIC STAY FOR CIVIL CONTEMPT ORDERS

12. Kwok spends a significant portion of the Objection trying to convince the Court that the February 9 Contempt Order is civil and not criminal in nature. *See* Objection at ¶¶ 16–30. That is undisputed. The Motion specifically argues that the automatic stay is inapplicable to the February 9 Contempt Order because the *civil contempt* order was designed to punish Kwok's flagrant and continued disregard of the NY State Court's orders, and PAX relies on cases where courts found the stay inapplicable to the enforcement of civil contempt orders. *See* Motion at ¶ 12.

13. Moreover, contrary to Kwok's claims, PAX is not seeking payment of the fines that the NY State Court levied against him for failing to return the Lady May to its jurisdiction. *See* Motion at ¶ 13. Rather, PAX wants the Lady May returned for the benefit of all of Kwok's creditors. Kwok's mischaracterization of the February 9 Contempt Order as one addressing compensation ignores both the Motion and the origins of the February 9 Contempt Order. The February 9 Contempt Order resulted from Kwok's failure to comply with *two other* NY State Court orders. First, Kwok moved the Lady May outside of New York in direct violation of the NY State court's September 30 and October 15, 2020 orders. *See* Motion at ¶ 4. Second, in March 2021, the NY State Court issued a conditional order of civil contempt—which was unanimously affirmed by the New York Appellate Division, First Department—requiring Kwok or the yacht's registered owner to return the Lady May by May 15, 2021, or face a $500,000 fine for each day that the yacht remained outside of that court's jurisdiction. *See id.* at ¶ 5. More than eight months later, after the Lady May was *still* outside of the court's jurisdiction in violation of its prior orders,

the NY State Court held the February 2, 2022 evidentiary hearing, the findings of which are reflected in the February 9 Contempt Order. *See id.* at ¶ 6.

14. In the Objection, Kwok relies heavily on *In re White*, 478 B.R. 177, 181 (Bankr. S.D.N.Y. 2012) to argue that the automatic stay is applicable to the February 9 Contempt Order. *See* Objection at ¶ 32. In *White*, the movant had an outstanding judgment against the debtors, and served subpoenas on one of the debtors pre-petition to ascertain the location of his assets to satisfy the judgment. *In re White*, 478 B.R. at 179–80. The state court ordered compliance with the subpoena, which the debtor ignored, resulting in a state court contempt order and warrant directing the sheriff to compel the debtor's compliance. *Id.* at 80.

15. The bankruptcy court found that the contempt order involved civil contempt but that this did "not end the inquiry" as "[c]ourts have recognized a non-statutory exception to the automatic stay where the goal of a civil contempt proceeding is to vindicate the dignity of the court rather than collect a pre-petition claim or obtain property of the estate." *Id* at 183–84. Ultimately, the movant's motion to enforce the contempt order was held to be subject to the stay because it fell outside of that exception, as an effort to "recover a pre-petition claim for ***damages***." *Id* at 184 (emphasis added). The additional relief sought—enforcement of the subpoenas and if necessary, imprisonment of the debtor if he failed to comply—did not change the result because the bankruptcy court had already issued a Rule 2004 order authorizing the movant to obtain the information sought by the subpoenas. *Id.*

16. Here, unlike in *White*, the Motion explicitly states that PAX is not seeking to collect on its pre-petition contempt fines[17] or take possession of the Lady May. *See* Motion at ¶ 12. Rather,

---

[17] The February 9 Contempt Order does not constitute "damages" suffered by PAX, but is a monetary sanction imposed to punish Kwok for his repeated insults to the dignity of the NY State Court. This monetary sanction is separate from PAX's judgment against Kwok.

10

PAX is seeking to marshal and protect an estate asset for the benefit of all creditors. *See id.* at ¶ 21. Accordingly, the Motion fits squarely within the exception to the automatic stay for certain civil contempt orders. *See, e.g., Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 727 (S.D.N.Y. 1986) (concluding that its "inherent power to 'punish the debtor for contumacious conduct against the dignity of either the state or federal court,' is not curtailed by the bankruptcy action" and finding the stay inapplicable where contempt request was "designed to uphold an order of this Court, and [wa]s not one calculated to enforce a money judgment." (internal citation omitted)); *Booth v. Wilson*, No. 96 CIV. 920 (RO), 1997 WL 241050, at *2 (S.D.N.Y. May 7, 1997) ("[T]his contempt order enforcing my pre-bankruptcy order to compel discovery is not stayed by § 362(a) as it is 'vindicat[ing] the integrity of the court.'"); *Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC*, 16 Civ. 6805, 2017 WL 6413993, at *10 (S.D.N.Y. Nov. 22, 2017) (motion for relief from the stay unnecessary where "the proceeding in reality is one to punish the debtor for contumacious conduct against the dignity of [the] court." (internal citation omitted)).

17.     Kwok attempts to distinguish *Roberts v. Bennaceur*, No. 3:12-CV-01222, 2015 WL 1471889 (D. Conn. 2015) on the basis that the contempt sanctions issued against corporate officers in that case did not apply to the debtor. *See* Objection at ¶ 38. However, the court in *Roberts* confirmed that it could issue contempt sanctions "as long as the sanction does not have the effect of 'securing assets protected by the stay or harassing' the debtor." *Id.* at *16 (internal citations omitted). The court relied on *David v. Hooker, Ltd.*, 560 F.2d 412, 418 (9th Cir. 1977), which held that "'suits' or 'actions' to be stayed, as used in the bankruptcy statutes and rules, would not include contempt proceedings arising out of disobedience of a state court order made prior to the stay." Accordingly, "it was entirely consistent for the trial court to grant a stay of the principal proceedings but to continue to order the corporate defendant and its managing agent to comply

11

with a prior discovery order issued by the United States Magistrate and later adopted by the trial court . . . it was also within the trial judge's power to consider whether the defendant and its agent were in contempt of court . . . for failure to follow the prior orders. " *Id.* Further, the court in *Roberts* acknowledged its authority "in the midst of a bankruptcy stay, to decide contempt motions designed to 'to punish the debtor for contumacious conduct against the dignity of either the state or federal court.'" *Roberts*, 2015 WL 1471889 at *16 (*citing Serio v. Black, Davis & Shue Agency, Inc.*, 2006 WL 176983, at *1 (S.D.N.Y.2006)). Here, PAX is neither trying to secure an asset for itself, nor is it harassing Kwok. By continuing to do nothing to protect his assets for the benefit of his creditors, this is a situation of Kwok's own making.

### III.    PAX IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

18. If this Court determines that the automatic stay applies to the February 9 Contempt Order, PAX's narrow request for relief from the automatic stay to allow Justice Ostrager to impose an appropriate, non-monetary sanction if Kwok fails to bring the Lady May back to New York should be granted. The Motion describes in detail that *Sonnax* factors (1), (2), (4), (7), (10), and (12) weigh in favor of granting relief from the automatic stay. *See* Motion at ¶¶ 12–18. Specifically,

- Sonnax Factor 1: Modifying the stay will resolve PAX's year-long effort to have the yacht safeguarded and in the United States.

- Sonnax Factor 2: Enforcement of the February 9 Contempt Order will not interfere with the bankruptcy case.

- Sonnax Factors 4 &10: The NY State Court has been overseeing the dispute between PAX and Kwok for five years. All discovery, motion practice, evidentiary hearings, and conferences precipitating the February 9 Contempt Order has taken place before Justice Ostrager.

- Sonnax Factors 7 & 12: Creditors will not be prejudiced or harmed by the return of the Lady May. To the contrary, absent stay relief, creditors will be directly harmed as Kwok will have no incentive to bring the Lady May back to New York.

19. Most importantly, the return of the Lady May will bring an extremely valuable asset back to the United States for the benefit of Kwok's creditors. This is in contrast to the facts of *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990), which Kwok inexplicably relies on in his Objection. In *Sonnax*, the debtor filed a chapter 11 petition after failing to obtain relief in New York state courts from an injunction prohibiting it from soliciting business from, or doing business with, customers of another entity called Tri Component. *Id.* at 1282. Following Sonnax's bankruptcy filing, Tri Component moved to modify the automatic stay to allow it to continue prosecution of its state court claim and to pursue completely new motions for contempt for violation of the state court injunction. *Id.* In deciding not to modify the automatic stay, the *Sonnax* court focused on the effect lifting the stay would have on Sonnax's bankruptcy case, finding that:

- "[T]he state-court injunction barred Sonnax from doing business with any customers of Tri Component, its chief competitor," and would constitute "a prohibition that may have a drastic impact on a company in a narrow market." *Id.*

- Modifying the stay might "doom Sonnax's attempts to reorganize" because it "would prevent Sonnax from doing much of its usual business." *Id.*

- The interest of judicial economy supported denial of relief from the stay because "the litigation in state court has not progressed even to the discovery phase." *Id.* at 1287

20. None of these concerns are present here; in fact, their stark absence underscores how strongly stay relief is warranted. First, Kwok is an individual debtor with no job and, allegedly, no assets. He thus has no operating business that would be affected by modifying the stay.[18] Second, far from "dooming Kwok's attempts to reorganize," bringing the Lady May back to the United States will aid Kwok's bankruptcy case by preventing an asset from being misused or dissipated. Third, modifying the stay will not prevent Kwok from doing any business because, by his own admission, he has no business. And finally, as discussed in the Motion, the NY State

---

[18] *See* Official Form 107, Statement of Financial Affairs for Individuals Filing Bankruptcy, ECF No. 77 at 14–15.

Court has overseen the dispute between PAX and Kwok for five years. Summary judgment was granted on PAX's underlying claim, and all discovery, motion practice, evidentiary hearings, and conferences precipitating the February 9 Contempt Order (which arose in the context of post-judgment proceedings) have taken place before Justice Ostrager (in comparison to *Sonnax*, where no discovery had occurred and the contempt motion had not even been filed, much less litigated to completion). Even if Kwok were not precluded by the *Rooker-Feldman* doctrine and *res judicata* (he is), it would be a gross mismanagement of the estate's allegedly limited assets to have this Court adjudicate these issues when they are already far-advanced in the NY State Court. Simply put, this case is nothing like *Sonnax*.

21.    Similarly, Kwok's reliance on *In re Residential Capital, LLC*, 501 B.R. 624 (Bankr. S.D.N.Y. 2013) for the conclusory proposition that allowing PAX to enforce the February 9 Contempt Order would have a "drastic impact" on Kwok and his estate is misplaced. *See* Objection at ¶ 24. In *Residential Capital*, a creditor sought relief from the stay to pursue an appeal of a state court litigation it had already lost. *Id.* at 631. In denying the stay motion, the court found that "[l]itigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases." *Id.*

22.    *Residential Capital* is an absurd comparison to this case. As Judge Glenn observed in a different *Residential Capital* proceeding, "before filing for bankruptcy, the Debtors were a leading originator of residential mortgage loans and, together with their non-Debtor affiliates, the fifth largest servicer of residential mortgage loans in the United States, servicing approximately $374 billion of domestic residential mortgage loans and working with more than 2.4 million mortgage loans across the United States." *Residential Cap., LLC v. UMB Bank, N.A. (In re*

*Residential Cap., LLC)*, 501 B.R. 549, 558 (Bankr. S.D.N.Y. 2013). Permitting piecemeal litigation in a case with thousands of creditors while the debtors sought to unwind a massive book of residential real estate loans would be disruptive. In contrast (and, at the risk of being repetitive), Kwok claims to have no business with which to interfere. Moreover, Judge Glenn's decision focused on the interests of all of the debtors' creditors; here, creditors support lifting of the stay.[19] And in *Residential Capital*, the court noted that modifying the automatic stay there would not completely resolve any piece of litigation. *In re Residential Capital, LLC*, 501 B.R. at 644. Here, the limited relief PAX seeks will resolve a discrete issue: whether Kwok will return the Lady May to the United States or not. No other issue need be litigated in the NY State Court at this time. Further, granting PAX's requested relief would not cause Kwok to expend "time and resources that would otherwise be spent on the resolution of this case," but rather will materially enhance resolution of this case.

23.     Bringing the Lady May—worth an estimated €28 million—to New York would have a drastic impact on Kwok's chapter 11 case. But the impact would be for the benefit of his estate and creditor body rather than to their detriment as Kwok claims. According to the schedules of assets and liabilities filed in this chapter 11 case, Kwok asserts that he has effectively no assets to satisfy the approximately $374 million in claims asserted against him.[20] The return of the Lady May and the potential satisfaction of creditor claims from the proceeds of its liquidation would provide an immense benefit to Kwok's creditors that greatly outweighs any harm to Kwok.[21] The

---

[19] *See Statement of Creditors Rui Ma and Zheng Wu in Qualified Support of Relief Requested by Pacific Alliance Asia Opportunity Fund L.P.* ECF No. 84 (expressing support for the relief requested by PAX in the Motion); *Creditor Logan Cheng's Reply to Objection to Motion to Stay* ECF No. 97 (same).

[20] *See* Official Form 106A/B, Schedule A/B (Property), ECF. No. 78 at 3; *see also* Official Form E/F, Creditors Who Have Unsecured Claims, ECF No. 78 at 10, 19–21.

[21] In fact, to permit the Lady May to remain in international waters could lead to significant harm to creditors as the yacht is subject to seizure by foreign jurisdictions under maritime law and is at constant risk of being damaged or

only people who benefit from denying the Motion are Kwok's family members, who get continued use of the Lady May, which is debtor property, and Kwok personally, who continues to ignore court orders.

24. Kwok's argument that his interests in the Lady May are already protected because the Lady May is part of his worldwide bankruptcy estate provides no comfort to Kwok's creditors. *See* Objection at ¶ 4. Kwok has demonstrated no respect for court orders. Indeed, the NY State Court found that "[t]he machinations associated with the shell game Kwok has orchestrated with respect to the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken during the five years this litigation has been pending." February 9 Contempt Order at 7. There is no reason to believe that Kwok's machinations and disregard of court orders will stop with the filing of his chapter 11 case.

25. Finally, Kwok's argument that enforcement of the February 9 Contempt Order will lead to his incarceration (and harm his chapter 11 case) does not warrant denial of the Motion. First, if Kwok wants to avoid incarceration, he can simply return the yacht. The NY State Court has held that it is within his power. Second, as discussed above, there is no chapter 11 case to administer. Kwok has no operating business, he allegedly has no assets, and he has not sought turnover of any assets from family members. His (non-existent) businesses will not suffer if he is incarcerated for his continued contempt. And, while Kwok's incarceration may negatively impact the continued viability of this chapter 11 case (which has no legitimate purpose), that would be an unfortunate consequence of Kwok's own contumacious behavior.

---

otherwise devalued by Kwok's family members who continue to use and enjoy the yacht in violation of the NY State Court's orders.

## RESPONSE TO THE STATEMENT OF QUALIFIED SUPPORT

26. The *Statement of Creditors Rui Ma and Zheng Wu in Qualified Support of Relief Requested by Pacific Alliance Asia Opportunity Fund L.P.* [ECF No. 84] (the "Statement") filed by creditors Rui Ma and Zheng Wu (the "Supporting Creditors") supports the relief requested in the Motion and proposes two modifications to the proposed order granting the Motion. *See* Statement at ¶ 3.[22] With respect to the Supporting Creditors' first proposed modification, PAX believes that such modification is not necessary because the Motion is not an effort for PAX to obtain the Lady May for its own benefit. However, PAX agrees with the Supporting Creditors that upon the return of the Lady May, any further disposition of the yacht should be subject to further order of this Court. With respect to the Supporting Creditors' second proposed modification, PAX is not, at this point, seeking the imposition of additional monetary sanctions against Kwok, however, PAX agrees that if any additional monetary sanctions are imposed, the priority and payment of such sanctions *vis-à-vis* any party that holds an allowed, unsubordinated claim should be subject to further Court order. PAX will work with the Supporting Creditors to arrive at mutually acceptable language on these two points.

## CONCLUSION

For the reasons stated above and in the Motion, this Court should find that (i) the automatic stay is inapplicable to the February 9 Contempt Order with respect to the return of the Lady May to New York or (ii) in the alternative, relief from the automatic stay is warranted to permit PAX to seek enforcement of the February 9 Contempt Order to seek the return of the Lady May for the benefit of all creditors.

---

[22] An additional creditor, Logan Cheng joins in the Supporting Creditors' support for the Motion and request for modification of the proposed order granting the Motion. *See Creditor Logan Cheng's Reply to Objection to Motion to Stay* ECF No. 97. PAX will include Mr. Cheng in any discussions with the Supporting Creditors regarding modifications to the proposed order.

| | |
|---|---|
| Dated: March 18, 2022<br>Hartford, Connecticut | **Pacific Alliance Asia Opportunity Fund L.P.**<br><br>*By*: */s/ Patrick M. Birney*<br>Patrick M. Birney (CT No. 19875)<br>Annecca H. Smith (CT No. 31148)<br>**ROBINSON & COLE LLP**<br>280 Trumbull Street<br>Hartford, CT 06103<br>Telephone: (860) 275-8275<br>Facsimile: (860) 275-8299<br>E-mail: pbirney@rc.com<br>         asmith@rc.com<br><br>-and-<br><br>Peter Friedman (admitted *pro hac vice*)<br>Stuart M. Sarnoff (admitted *pro hac vice*)<br>**O'MELVENY & MYERS LLP**<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>Email:  pfriedman@omm.com<br>         ssarnoff@omm.com |