## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

| | |
|---|---|
| In re | **Chapter 11** |
| **HO WAN KWOK** | **Case No. 22-50073 (JAM)** |
| **a/k/a WENGUI GUO** | |
| **a/k/a MILES GUO,** | |
| **Debtor.** | |

---

## UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF AN EXAMINER OR, IN THE ALTERNATIVE, MOTION FOR ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. §§ 586(a)(3), (a)(5), and (a)(8) respectfully moves, through counsel, for an order directing the appointment of an examiner under 11 U.S.C. § 1104(c)(1) and/or (2) for the chapter 11 case of Ho Wan Kwok a/k/a Wengui Guo a/k/a Miles Guo ("Debtor" and/or "Kwok"). In the alternative, the United States Trustee moves for an order directing the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(2) based on the best interests of creditors and the estate. In support of this motion, the United States Trustee, through counsel, respectfully represents and alleges as follows:

### PRELIMINARY STATEMENT

The Debtor is a public figure who, according to numerous news reports and postings on the internet, is a self-proclaimed billionaire living in exile from his native China.[1]  While seemingly having access to significant funds, including the ability to procure a $1 million dollar

---

[1] *See, e.g.,* Lauren Hilgers, *The Mystery of the Exiled Billionaire Whistle-Blower*, New York Times Magazine, January 10, 2018; Alexander Gladstone, *Exiled Chinese Businessman Guo Wengui Files for U.S. Bankruptcy*, Wall Street Journal, February 16, 2022.

retainer for his counsel, the Debtor, in his chapter 11 filing to date, claims that he has no regular income and virtually no assets. The limited assets identified to date by the Debtor amount to less than $10,000, with the majority, including certain causes of action, being valued at "unknown." Despite his alleged minimal assets and lack of income, the Debtor lists unsecured debts exceeding $373 million, an incredible figure for an individual debtor, particularly one with such limited assets. ECF 1; 20; and 78.[2] All of this raises many questions.

The odd combination of what appears to be artificial self-created "poverty" by the Debtor to insulate himself from creditors and the Debtor's emergency filing of chapter 11 to obtain protection from creditors owed millions gives rise to obvious concerns. Validating these concerns is the Debtor's marginalization of his schedules and statement of financial affairs to the point of being meaningless. In these documents, the Debtor brazenly disclaims any responsibility or liability for any of the information in the bankruptcy documents pursuant to self-serving, anti-fiduciary language in the "Global Notes." *See* ECF 77 at pages 1 to 3. The plainly exculpatory language in the Global Notes telegraphs the Debtor's inability and/or unwillingness to recognize and accept his obligations to provide full, complete and accurate information, to fulfill fiduciary obligations to his estate and his creditors, and to meet his obligations as a debtor in possession.

A related and relevant concern is that the Debtor's pre-petition history of avoiding creditors and asserting the Fifth Amendment in response to questions about his assets and his financial dealings. In fact, this chapter 11 case was filed in response to a $134 million dollar contempt award against the Debtor in a New York state court action arising out of the Debtor's

---

[2] Unless otherwise noted, references herein to "ECF __" are to documents filed in the Debtor's case. Due to the length of the various "ECF" documents referred to herein that are filed in the Debtor's case, the United States Trustee has not attached them hereto, but does incorporate them herein by reference and reliance thereon.

involvement in secreting a luxury yacht out of New York to protect it from being seized by creditor Pacific Alliance Asia Opportunity Fund L.P. ("PAX"). As discussed more fully *infra*, the contempt decision and other decisions issued in the New York state court action contain multiple findings regarding the Debtor's concerted and deceitful efforts to evade his creditors and to defy the court. The Debtor's pre-petition conduct in other litigation has also evidenced a persistent unwillingness to respond to questions about his assets, his money, and corporate entities, and a frequent assertion of his Fifth Amendment right.

To protect the integrity and transparency of the bankruptcy process, and to protect the estate and its creditors, the appointment of an examiner to investigate the Debtor's financial interests and dealings is imperative to develop a true and accurate picture of the Debtor's financial condition, which can be reported to the Court. Section 1104(c) authorizes the Court to direct the United States Trustee to appoint an examiner, upon the request of a party in interest or the United States Trustee, where such appointment is in the interests of creditors and other interests of the estate or where a debtor's fixed, liquidated unsecured debts exceed $5 million dollars, exclusive of debts owed for goods, services, taxes or debts to insiders. Because the Debtor's fixed, liquidated unsecured debts exceed $5 million dollars and because the Debtor's assets, income, and corporate interests lack transparency, the appointment of an examiner is warranted in this case. Accordingly, the United States Trustee requests that the Court direct the United States Trustee to appoint an examiner in this case to conduct an investigation concerning the Debtor's assets, post-petition income and post-petition expenses as follows: (1) identify the Debtor's post-petition income from all sources, (2) identify the Debtor's uses of post-petition income, (3) identify and understand the Debtor's interests, including beneficial, control, equitable and legal, in corporate entities across the globe, and identify and understand the assets

3

and liabilities of those corporate entities; and (4) examine whether the Debtor is fulfilling all of his fiduciary duties and complying with all the reporting requirements imposed upon debtors-in-possession, including the disclosure of all assets and causes of action.

Alternatively, the United States Trustee seeks an order directing the appointment of a chapter 11 trustee. The Debtor claims that he has no meaningful assets, no income, and no employment, but that he owes over $373 million to creditors. He further attempts to avoid any responsibility or liability for his bankruptcy documents and his signatures under penalty of perjury on those documents. Against that backdrop, the Debtor has publicly maintained thus far that he will fund payments to creditors from future litigation winnings and help from family, friends or others. The pre-petition litigation history as told by PAX, however, paints a picture of a Debtor who has flouted court orders and been repeatedly found (by the court in the PAX litigation in New York) to be obstructive, evasive and unwilling to pay his debts while sheltering, hiding, and protecting his assets using friends, family and corporate entities. The level of acrimony and distrust between the Debtor's largest creditor PAX and the Debtor is evident and not likely to dissipate. That acrimony, along with the Debtor's conduct thus far in this chapter 11 case regarding his bankruptcy documents, warrants the appointment of a chapter 11 trustee.

## **BACKGROUND**

1.      Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system.   *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-296 (3d Cir.1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary

interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing United States Trustee as "watchdog").

2.　　　Under 11 U.S.C. §§ 307 and 1104, the United States Trustee has standing to raise and be heard on this Motion.

3.　　　The United States Trustee has solicited for the formation of a committee of unsecured creditors in this case. As of the filing of this motion, the United States Trustee has not yet appointed an official committee of unsecured creditors.

4.　　　The appointment of an examiner is necessary to protect the estate and its creditors and to preserve the integrity of the Chapter 11 process. Section 1104(c)(1) authorizes the appointment of an examiner, upon the request of a party in interest or the United States Trustee, where such appointment is in the interests of creditors and other interests of the estate and Section 1104(c)(2) requires such an appointment where a debtor's fixed, liquidated unsecured debts exceed $5 million dollars, exclusive of debts owed for goods, services, taxes or debts to insiders. The Debtor's Summary of Schedules reflects approximately $374 million in unsecured debt, zero secured debt, and zero priority unsecured debt. ECF 78 at page 1. Of the general unsecured debt listed on Schedule E/F, the Debtor lists fixed and non-contingent debt of approximately $278 million owed to an aggregate of fourteen (14) creditors who are not known to be insiders.[3] ECF 78 at pages 10, 11, 19-21. Of this $278 million, $254 million is owed to PAX. ECF 78 at page 20. The Debtor's Schedule E/F therefore reflects debts that meet the threshold requirements of Section 1104(c)(2) for the appointment of an examiner. The assets and

---

[3] The Debtor's Second Amended List of 20 Largest Unsecured Creditors filed on February 23, 2022 lists debts totaling approximately $376,439,784.00, of which approximately $254,000,000.00 is owed to "Pacific Alliance Asia Opportunity," which is PAX. ECF 20. As discussed *infra*, the sum of approximately $116 million is owed to PAX by virtue of a judgment entered in 2021.

income of the Debtor should be investigated by an independent party and publicly reported to the Court to further the Bankruptcy Code's goals of transparency and disclosure to parties in interest.

5.     The United States Trustee seeks the appointment of an examiner to conduct an investigation concerning the Debtor's assets, post-petition income, and post-petition expenses as follows: (1) identify the Debtor's post-petition income from all sources, (2) identify the Debtor's uses of post-petition income, (3) identify and understand the Debtor's interests, including beneficial, control, equitable and legal, in corporate entities across the globe, and identify and understand the assets and liabilities of those corporate entities; and (4) examine whether the Debtor is fulfilling all of his fiduciary duties and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all assets and causes of action.

6.     Alternatively, the United States Trustee seeks the appointment of a chapter 11 trustee under Section 1104(a)(2) to protect the interests of creditors and the estate.

## FACTS

7.     The Debtor, also known as Wengui Guo and Miles Kwok, as well as numerous other aliases, filed a voluntary chapter 11 petition ("Petition") on February 15, 2022 ("Petition Date"). ECF 1.[4]

---

[4] The Debtor's Petition does not disclose the Debtor's actual residential address and uses a "residential address" that is c/o Golden Spring (New York) Ltd. ("Golden Spring") in New York City. According to information provided by the Debtor's counsel during a call with the Office of the United States Trustee on February 16, 2022 ("Initial Call") and confirmed by a February 18, 2022 letter to Assistant U.S. Trustee Kim McCabe ("BR Initial Letter"), the Debtor has resided in Connecticut since February 2020. In contrast, the Debtor's residence has been disclosed as The Sherry-Netherland Inc. on Fifth Avenue in New York City ("NYC Residence") as of October 2020 and as of April 2021. *See* footnote 5 *infra* and first day declaration dated October 20, 2020 in the GH Bankruptcy Case at ECF 1 at paragraph 12; *see also* transcript of Deposition of Ho Wan Kwok ("Kwok April 2021 Transcript") at pages 11-12, 77 taken in the lawsuit known as *Cheng v. Kwok*, Case No. 1:20-cv-05678-KPF pending in the Southern District of New York ("Cheng Case"), attached as Exhibit A. As instructed by the Court on March 1, 2022 in response to concerns raised by the United States Trustee about the Debtor's failure to disclose his residence on the Petition, the Debtor filed a change of address form on March 10, 2022 which reported his mailing address in Greenwich, Connecticut. ECF 81.

8.      The Debtor is a public figure who has claimed he is seeking asylum in the United States after fleeing his native China. ECF 27, 77. He claims to have "amassed a following on various digital and media platforms where he shares his personal views and opinions concerning the People's Republic of China (the "PRC") and other world-affairs." ECF 27 at ¶ 5.

9.      The Debtor is currently managing his financial affairs and his business interests pursuant to Sections 1107 and 1108 of the Bankruptcy Code.[5]

10.     No trustee or examiner has been appointed in this case. Prior to this motion, no party has sought the appointment of a trustee or an examiner.

11.     The Debtor's Petition was filed by the firm of Brown Rudnick LLP ("BR Counsel"). ECF 1. The Debtor recently filed an application to employ BR Counsel as his chapter 11 counsel. ECF 86. BR Counsel was paid $1 million dollars pre-petition from Lamp Capital, LLC arising from a loan taken out by the Debtor from Lamp Capital, LLC. *See* ECF 54; ECF 86; ECF 77 at page 17; ECF 78 at page 20. The Court has scheduled a hearing on April 12, 2022 to consider the application to employ BR Counsel. ECF 91.

12.     The Debtor has also recently filed an application to employ Verdolino & Lowey, P.C. as his financial advisor and Stretto, Inc. as a claims and noticing agent. ECF 90 and 87. Both applications are scheduled to be considered by the Court on April 12, 2022. ECF 91.

_____

[5] A company connected to the Debtor, Genever Holdings, LLC ("GH"), has a current pending chapter 11 case in the Southern District of New York bearing case number 20-12411-jlg ("GH Bankruptcy Case"). GH is a single member New York limited liability company. *See* GH's Disclosure Statement filed on January 7, 2022 at ECF 165 in the GH Bankruptcy Case ("GH ECF 165") and GH's Liquidating Plan filed on January 7, 2022 at ECF 164 in the GH Bankruptcy Case; *see also* Statement of Financial Affairs at ECF 4 in the GH Bankruptcy Case. The sole member of GH is Genever Holdings Corporation, a special purpose entity organized in the British Virgin Islands. *Id*. The Debtor personally manages Genever Holdings Corporation ("GH Corp"). *Id.* The primary asset of GH is the NYC Residence, a luxury apartment and auxiliary units that occupy the entire 18th floor of The Sherry-Netherland Inc. on Fifth Avenue in New York City purchased for approximately $70 million in 2015. *See* GH ECF 165 and GH ECF 164; *see also* GH Bankruptcy Case at ECF 1 and 83.

13.     The meeting of creditors pursuant to 11 U.S.C. §341(a) is scheduled for March 21, 2022. ECF 6.

14.     On February 15, 2022, the Debtor filed a Debtor's Chapter 11 Statement of Your Current Monthly Income (Form 122B) ("Chapter 11 Income Statement"). ECF 3.

15.     On February 24, 2022, the Debtor filed a motion for extension of time seeking an approximately sixty (60) day extension of time to May 2, 2022 to file his required schedules of assets and liabilities and his statement of financial affairs, without prejudice to seek a further extension ("Extension Motion"). ECF 27. The Extension Motion characterized the requested extension as "short" despite the fact that the original deadline to file these documents was March 1, 2022 and the requested extension would be to a date that is six (6) weeks after the scheduled date for the 341 Meeting. ECF 27 at ¶ 13. Additionally, the Extension Motion appeared to posit that orders approving the employment of professionals, including bankruptcy counsel, litigation counsel, and potentially a financial advisor, as well as an order approving a funding mechanism for the chapter 11 professionals, were both necessary pre-requisites to the Debtor filing his schedules of assets and liabilities and his statement of financial affairs. ECF 27 at ¶¶ 9 and 10.

16.     After considering the objections of PAX and the United States Trustee to the Extension Motion, the Court granted a limited extension to March 9, 2022. ECF 49, 50, 60.

17.     On March 9, 2022, the Debtor filed his Summary of Your Assets and Liabilities and Certain Statistical Information ("Summary"), his Schedules A/B through J ("Schedules"), and his Declaration About An Individual's Schedules ("Declaration"). ECF 78 and 79. The Debtor's handwritten signature appears on the Declaration below a declaration of penalty of perjury attesting that the Summary and Schedules are true and accurate. ECF 79.

18.     On March 9, 2022, the Debtor filed his Statement of Financial Affairs ("SOFA"). ECF 77.   The Debtor's handwritten signature appears on page 7 of SOFA below a declaration of penalty of perjury attesting that the answers on the SOFA are true and accurate. ECF 77 at page 20 of 25.

19.     On March 9, 2022, the Debtor filed an amended Debtor's Chapter 11 Statement of Your Current Monthly Income (Form 122B) ("Amended Chapter 11 Income Statement"). ECF 80.

20.     Also on March 9, 2022, as part of the SOFA, the Debtor filed "Global Notes" and "Specific Notes" which refer to and comment upon the information contained in in the Schedules and SOFA, provide some additional information, and purport to limit, disclaim, and/or eliminate the Debtor's responsibility, accountability and liability for the information in the Schedules and the SOFA notwithstanding the fact that the Summary, Schedules and the SOFA are signed by the Debtor under penalty of perjury. ECF 77 and 78. The "Global Notes" span 3 pages. ECF 77 at pages 1 to 3. The "Specific Notes" span 9 pages. ECF 77 at pages 4 to 13. Neither the "Global Notes" or the "Specific Notes" are directly supported by a signature of the Debtor. In pertinent part, the "Global Notes" contain the following:

      a.     The last paragraph on page 1 of ECF 77 states that "nothing contained in the Schedules, SOFA, or Notes shall constitute a waiver of the Debtor's rights or *an admission with respect to his chapter 11 case*." ECF 77 at page 1 (emphasis added);

      b.     Paragraph 8 on pages 2 and 3 of ECF 77 contains 6 sub-paragraphs that purport to limit the Debtor's liability with respect to his Schedules and SOFA and reserve his rights to change/modify/edit/dispute/challenge the

information contained therein; and

    c.   Paragraph 9 on page 3 of ECF 77 states the following: "<u>Global Notes</u>

<u>Control</u>. In the event that the Schedules or SOFA differ from any of the

Global Notes, the Global Notes shall control."

*Initial Debtor Interview*

21.    By email dated February 18, 2022 to BR Counsel, the United States Trustee

requested to schedule the Initial Debtor Interview ("IDI") with the Debtor for February 28, 2022.

In connection with the IDI, the United States Trustee requested that the Debtor provide a variety

of financial information, including tax returns. The Debtor has provided tax returns for the years

2019 and 2020.

22.    On February 28, 2022, representatives of the United States Trustee conducted the

IDI with the Debtor. BR Counsel attended the IDI, as did litigation and other counsel. An

interpreter hired by the United States Trustee translated for the Debtor, and the Debtor also had

in-person access to a personal translator. During the IDI, the Debtor disclosed he has no bank

accounts, no credit cards, is not employed such that he earns income, and that all of his living

expenses are paid for and through Golden Spring.[6]  The Debtor also disclosed that he does not

directly own any real estate, does not own any cars, and does not insure any assets. Further, the

---

[6] Consistent with this, according to the Initial Call and/or the BR Initial Letter, the Debtor is not employed (such that he receives direct compensation from employment), has no regular source of income, has no credit cards issued in his name, and has no financial accounts (bank, brokerage or any other financial accounts). Also according to the Initial Call and/or the BR Initial Letter, Golden Spring and/or family members and/or corporate entities (unspecified) fund all of the Debtor's living expenses. The BR Initial Letter also states that the Golden Spring is a Delaware corporation and the parent company of Golden Spring is a company known as China Golden Spring Group (Hong Kong) Ltd, which is based in Hong Kong and owned by the Debtor's son, Qiang Guo ("Son").

10

Debtor disclosed that he is not leasing any real or personal property and does not have any secured creditors. Lastly, the Debtor disclosed that he has over forty (40) creditors, some of which have filed lawsuits.

*Assets, Liabilities, Income, and Expenses – Schedules A/B to J*

23.    The Debtor's Petition discloses estimated assets of $50,000.00 to $100,000.00 and estimated debts of $100 million to $500 million. ECF 1.

24.    Schedule A/B requires a debtor to disclose "legal or equitable" interests in all types of personal and real property. The Debtor's Schedule A/B discloses no real estate, no vehicles, no watercraft or recreational vehicles, no cash, no financial accounts of any kind, no household goods, no jewelry, no collectibles, no firearms, no stock or interests in businesses (incorporated or unincorporated, LLC, partnership, or joint venture), no security deposits, no retirement or pension accounts, no annuities, no trusts (or equitable or future interests in property), and no inheritances. *See* Schedule A/B at ECF 78 at pages 3 to 7.

25.    The Debtor's sole assets according to Schedule A/B are: clothing (value unknown), a family dog (value unknown), non-negotiated tax refunds and Covid-related relief valued at a total of $3,850.00, lawsuits and claims against third parties (not described/listed, value unknown; *see* questions 30, 33, 34 which simply refer to SOFA at question 9), health insurance policy (no value), and a potential malpractice claim against Boies Schiller (value unknown). *See* Schedule A/B at ECF 78 at pages 3 to 7.[7]

---

[7] Additionally, the Debtor did not directly answer question 53 on Schedule A/B which requires the Debtor to disclose any other property of any kind that is not already listed in Schedule A/B, and instead responded only: "Refer to Question 53 in Global Notes." *See* Schedule A/B at ECF 78 at page 7. In the "Specific Notes," there is a reference to question 53 which mentions the Debtor's membership at The Mar-a-Lago Club through his family. ECF 77 at page 8.

26.     Schedule A/B at question 30 required the Debtor to disclose "other amounts someone owes you" and the Debtor responded by saying he is a plaintiff in a number of actions (not specified) and referred to SOFA at question 9, and he listed the value of such actions as "unknown." *See* Schedule A/B at ECF 78 at page 6. As one point of unexplained contrast, the "Specific Notes," disclose the Debtor was awarded $12,000 from a judgment in his favor in a lawsuit in Virginia and that such funds are being held by "counsel for the Debtor" (unclear what "counsel" that refers to). *See* ECF 77 at page 8 at ¶ q. That $12,000 does not appear to be listed elsewhere in Schedule A/B.

27.     The total value of the Debtor's assets as listed on Scheduled A/B is $3,850.00. *See* Schedule A/B at ECF 78 at page 7.

28.     The Debtor's Schedule C (exemptions) reflects no claims of exemption in any property. *See* Schedule C at ECF 78 at page 8.

29.     The Debtor did not fill out the forms for Schedules D, E/F, G or H. *See* ECF 78 at pages 9 to 13. Instead, the Debtor's responses to the questions on Schedules D, E/F, G and H refer to attached charts which purport to contain the information required by the specific schedules. *Id.* The attached charts, however, are incomplete and do not provide all of the

information required by the various questions in Schedules D,[8] E/F,[9] G[10] and H.[11]

30. The Debtor's Schedule I (income) reports that the Debtor is not employed and has no income of any kind from any source. *See* ECF 78 at pages 14 to 15. The Debtor did not disclose on Schedule I that he receives financial support from family and other sources to pay his regular life expenses (or that others directly pay his regular life expenses). *See* lines 8a, 8b, 8c and 11 of Schedule I at ECF 78 at pages 14 to 15.[12]

---

[8] The Debtor's chart for Schedule D lists only one secured creditor, Golden Spring, yet lists this creditor 5 times with the exact same information. *See* ECF 78 at page 18. The chart for Schedule D does not disclose the amounts of the secured claims held by Golden Spring, nor the dates the debt was incurred. *Id.* The chart for Schedule D also fails to provide a real answer to the type of collateral for each of the secured debts, stating only "certain claims and recoveries therto [sic]." *Id.* No explanation is given on the chart for Schedule D as to what the claims and/or recoveries are or what they might be, thus there is no disclosure of the scope of Golden Spring's security interests.

[9] The Debtor's Schedule E/F reflects that the Debtor does not have any priority unsecured debt. *See* Schedule E/F at ECF 78 at page 10. The Debtor's Schedule E/F states that the Debtor has general unsecured debt totaling $373,803.498.09. *See* Schedule E/F at ECF 78 at pages 10 and 11. The Debtor's chart for Schedule F lists 159 unsecured creditors. *See* ECF 78 at pages 19 to 21. Of the total unsecured debt listed of $373,803,498.09, the sum of $278,445,685 is listed as disputed, but the Debtor did not list the debts as unliquidated and contingent. *Id.* In other words, while the amount of $278,445,685 is disputed, this debt is also fixed and not contingent. *Id.* Additionally, the chart for Schedule F does not list addresses for all creditors (36 are missing addresses) and two of the creditors without addresses also do not appear to have full names (see Weng and Moa-Fu on page 20 of ECF 78). Further, the chart for Schedule F does not list the dates of the debt, nor whether the debt is subject to offset, nor whether there are others obligated on the debts. *See* chart for Schedule F at ECF 78 at pages 19 to 21.

[10] The chart for Schedule G lists 17 parties. *See* ECF 78 at page 22. The chart for Schedule G, however, does not disclose the nature of the agreements, stating only "engagement letter" *Id.*

[11] The chart for Schedule H lists 38 parties. *See* ECF 78 at page 23. The chart for Schedule H, however, does not provide the information required by Schedule H in that it does not disclose/correlate the parties to debts on Schedules D, E/F, or G. *Id.* Further, the chart for Schedule H does not list addresses for 26 of the 38 listed parties. *Id.*

[12] The Debtor's Chapter 11 Income Statement filed on February 15, 2022 reports that the Debtor is married and that the Debtor's current monthly income from other sources that is used to pay his household expenses is $19,488.00. ECF 3 at line 4. No information about the source of this income was included with the Chapter 11 Income Statement. The Chapter 11 Income Statement also reports no income from wages (line 2), no income from operation of business or profession (line 5), no income from rental or real property (line 6), and no income from interest, dividends or royalties (line 7). *Id.* In contrast, the Debtor's Amended Debtor's Chapter 11 Income Statement filed on March 9, 2022 discloses no income of any kind from any source. ECF 80.

31.    Debtor's Schedule J (expenses) lists no expenses of any kind. *See* ECF 78 at pages 16 to 17. Schedule J discloses the Debtor is married and does not have any dependents. *See* ECF 78 at page 16.

*SOFA*

32.    The Debtor's SOFA reflects limited information, with most of the questions being answered with "no." *See* ECF 77.

33.    In response to question 18 of the SOFA which asks if the Debtor transferred any property outside the ordinary course of business or financial affairs within the two-year period prior to the bankruptcy, the Debtor responded "no." *See* ECF 77 at page 17. This response appears to be contradicted by the Global Notes which discloses, in vague terms, the Debtor's granting of security interests in litigation outcomes to litigation funding sources. *See* ECF 77 at page 13.

34.    In response to question 23 of the SOFA which asks if the Debtor holds or controls any property that someone else owns, the Debtor did not provide a substantive answer and instead responded only "refer to the Global Notes Question 23." *See* ECF 77 at page 18. The Global Notes regarding question 23 refer to the residence in Greenwich, vehicles, and household items that the Debtor uses but claims not to legally own. *See* ECF 77 at page 13.

35.    In response to question 27 of the SOFA which requires disclosure of businesses owned by the Debtor, or connected to the Debtor, within the four-year period prior to the bankruptcy filing, the Debtor disclosed only GH Corp, Shiny Times Holdings, LTD, and Well Origin Limited. *See* ECF 77 at page 19. This response appears to be at odds with the Debtor's list of lawsuits in response to question 9 of the SOFA which include a litany of corporate entities, as well as pleadings filed by PAX. *See* ECF 50 and 57.

14

*Disputes with PAX*

36.     The Debtor lists disputed unsecured debt of $254,000,000 owed to PAX. *See* ECF 78 at page 20. The Debtor does not claim the debt owed to PAX is unliquidated or contingent. *Id.*

37.     The debt to PAX arises out of debt guaranteed by the Debtor and pursued in a collection case known as *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan a/k/a Kwok Ho a/k/a Gwo Wen Gui a/k/a Guo Wengui a/k/a Guo Wen-Gui a/k/a Wan Gue Haoyun a/k/a Miles Kwok a/k/a Haoyun Guo, et al*, Case No. 652077/2017 in the Supreme Court of the State of New York ("PAX Lawsuit"). The PAX Lawsuit was instituted in 2017 against the Debtor, GH, and GH Corp to recover on certain loan obligations.

38.     On February 3, 2021, a judgment was entered in the PAX Lawsuit against the Debtor in the total amount of $116,402,019.57 ("PAX Judgment"). *See* PAX Lawsuit at NYSCEF Doc. No. 716, copy attached hereto as Exhibit B. The Debtor timely appealed the PAX Judgment to the New York Supreme Court, Appellate Division, First Judicial Department (Case No. 2021-00740) and such appeal was pending and undecided as of the chapter 11 filing. No stay was imposed.

39.     Subsequent to the PAX Judgment, PAX engaged in efforts to locate and collect on assets of the Debtor. Such efforts were met with resistance by the Debtor and difficulty in collection because the Debtor "had secreted his assets in a maze of corporate entities and with family members." *See* February 9, 2022 decision of the Hon. Barry R. Ostrager ("NY Court") in the PAX Lawsuit at NYSCEF Doc. No. 1181 at page 1 ("February 2022 Contempt Decision," copy attached as Exhibit C). The Debtor filed his chapter 11 case just days after the February 2022 Contempt Decision and on eve of the deadline to pay PAX a contempt award of

15

$134,000,000 imposed by the February 2022 Contempt Decision.

*Facts from the PAX Lawsuit Relevant to the Need for an Examiner*

40.     The February 2022 Contempt Decision in the PAX Lawsuit discusses the

Debtor's unwillingness and/or refusal to cooperate with court orders and with the post-judgment

discovery issued by PAX. *See* Exhibit C. The February 2022 Contempt Decision begins with the

statement that almost all of the 1,180 docket entries in the PAX Lawsuit involve the Debtor's

"efforts to avoid and deceive his creditors by parking his substantial personal assets with a series

of corporations, trusted confidants, and family members." *See* Exhibit C at page 1. The NY

Court went on to state that the Debtor had engaged in a "scheme" to "assert that he has no assets

despite his lavish lifestyle." *Id.*

41.     On October 15, 2020, the NY Court issued an order in the PAX Lawsuit

restraining the Debtor and/or the registered owners of a 152-foot yacht known as the Lady May

and restricting the Lady May from leaving the jurisdiction of New York. *See* Exhibit C at page 2.

42.     On March 16, 2021, the NY Court issued a contempt order in the PAX Lawsuit in

response to a motion by PAX about the movement of the Lady May outside of the jurisdiction of

New York. *See* PAX Lawsuit at NYSCEF Doc. No. 728 ("March 2021 Contempt Order," copy

attached as Exhibit D).

43.     The March 2021 Contempt Order imposed a $500,000 per day fine on the Debtor

for every day the Lady May is outside the jurisdiction of the NY Court. *See* Exhibit D. The

March 2021 Contempt Order states that "it is clear that there has been an intolerable amount of

gamesmanship, dissembling, and deceit in proceedings before this Court" and notes the "many

'shell games'" the Debtor "has engaged in with the assistance of counsel who should know

better." *Id.* at page 2.

44.     In defiance of the restraining orders, the Lady May left the jurisdiction of New York and remained outside the jurisdiction for 268 days as of February 7, 2022. *See* Exhibit C at page 10. The NY Court held an evidentiary hearing in the PAX Lawsuit on February 2, 2022 to address the disputes over ownership and control of the Lady May. *See* Exhibit C. At this hearing, evidence was presented about the purchase of the Lady May for the sum of GBP £ 28 million in 2015 by a company known as Hong Kong Investments Limited ("HK International"). *See* Exhibit C at page 4. The Debtor was the sole shareholder of HK International in 2014 and transferred his 100% interest to Qu Guo Jiao in 2014 for no consideration. *Id.*

45.     After considering all of the evidence presented, the NY Court concluded in the February 2022 Contempt Decision that the "evidence clearly and convincingly demonstrates that Kwok [the Debtor] holds a beneficial interest in and controls the Lady May." *See* Exhibit C at page 9. Further, the NY Court stated that the Debtor "has taken extraordinary steps to shield the yacht [Lady May] from his creditors." *See* Exhibit C at page 9.

46.     As noted in the February 2022 Contempt Decision, the Debtor asserted his Fifth Amendment right to decline or testify or respond to the discovery requests, including discovery related to the Lady May, in response to PAX's post-judgment discovery efforts. *See* Exhibit C at pages 3 and 9; *see also* PAX pre-hearing brief filed at PAX Lawsuit at NYSCEF Doc. No. 1172 at page 5 stating that Kwok's counsel had informed PAX in March 2021 that "Kwok is asserting his Fifth Amendment right in response to all discovery addressed to him individually and declines to provide any additional and/or further information and/or documents"; copy attached as Exhibit E). Notably, the Debtor also failed to testify at the February 2, 2022 evidentiary hearing. *See* Exhibit C at page 3.

17

47.    To protect himself from further orders of the NY Court, the Debtor filed this chapter 11 case on the eve of a deadline to pay PAX the contempt award of $134,000,000 imposed by the February 2022 Contempt Decision.

48.    On March 1, 2022, PAX filed a motion for relief from stay to return to the NY Court to pursue return of the Lady May to New York ("PAX Stay Relief Motion"). ECF 57. The PAX Stay Relief Motion is scheduled to be heard by the Court on March 22, 2022.

<u>Other Assertions of the Fifth Amendment by the Debtor in 2021</u>

49.    In a recent lawsuit involving Logan Cheng f/k/a Shuiyan Cheng, the Debtor repeatedly asserted his Fifth Amendment right against self-incrimination in refusing to answer basic questions about his assets and income.

50.    At a deposition held on April 1, 2021 in the Cheng Case, the Debtor, through counsel, asserted his Fifth Amendment right in response to questions about the following, among many others, as reflected in the Kwok April 2021 Transcript (*see* Exhibit A):

  a.  How much the Debtor gets paid for his work as a consultant and for being in "broadcasting" (page 12);

  b.  What the Debtor's relationship is to Golden Spring (page 24);

  c.  Why Golden Spring pays the Debtor's bills (page 40);

  d.  Whether the Debtor has had any income in the last five years (pages 41-42);

  e.  Whether the Debtor paid any taxes to New York State or the federal government for the year 2020 (page 44);

  f.  Why Golden Spring is paying the Debtor's legal bills for the PAX Lawsuit (pages 47-48);

18

g.   What are the assets of Golden Spring (page 50);

h.   Why Golden Spring is paying for the Debtor's groceries and his clothes (page 76);

i.   What and when was the Debtor's last paid employment job (page 89); and

j.   Whether the Debtor has ever been employed in the United States (page 91).

## **LEGAL ARGUMENT**

I.     **The Court Should Order the Appointment of an Examiner under Section 1104(c)(1) and/or (2) of the Bankruptcy Code.**

Based on all the circumstances which include, but are not limited to, the Debtor's numerous deficiencies in his Schedules and his SOFA, the over $373 million dollars in unsecured debt, and the NY Court's February 2022 findings that the Debtor has engaged in "efforts to avoid and deceive his creditors" and has taken "extraordinary steps" to shield a multi-million dollar yacht from his creditors, the Debtor's chapter 11 case warrants immediate investigation by an examiner. *See* Exhibit C at page 9. Bankruptcy is meant to be a safe harbor for the honest but unfortunate debtor. The bankruptcy system depends on full disclosure by a debtor and the public confidence in the bankruptcy system is eroded when there is a lack of transparency and when debtors are evasive about their financial affairs. It is in the best interest of the Debtor's creditors that a neutral party be appointed to investigate and publicly disclose the Debtor's finances and assets and address the questions of what the Debtor has done or is doing with his money.

19

*a.  Standard for appointment of an examiner.*

The appointment of a chapter 11 examiner is governed by 11 U.S.C. § 1104(c), which

provides as follows:

> (c)  If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

Section 1104(c) expressly provides that the court cannot appoint an examiner if a

trustee is appointed. This limitation, however, was not intended to require the denial of a

motion to appoint a trustee as a precondition to the appointment of an examiner.  *See*

*Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 855 (Bankr. S.D.N.Y. 1994).

In *Keene*, the court rejected the creditors' committee's argument that the court could not

appoint an examiner unless it first refused to appoint a trustee, holding that "[a] motion to

appoint an examiner stands on its own, and need not be part of an unsuccessful motion to

appoint the trustee." *Id.; see also In re Gilman Serv., Inc.*, 46 B.R. 322, 327 (Bankr. D.

Mass. 1985) (court granted United States Trustee's motion to appoint examiner, where no

separate motion to appoint a trustee had been filed).

20

From the express language of the statute, it is apparent that appointment of an examiner is premised on four factors being satisfied: <u>First</u>, the debtor must still be in possession of the estate and a trustee must not have been appointed. <u>Second</u>, a plan must not have been confirmed. <u>T</u>hird, a party in interest or the United States Trustee, as is the case here, must request the appointment. <u>Lastly</u>, one of the conditions set out in (c)(1) or (c)(2) must be satisfied: either the appointment of the examiner is in the best interests of the creditors <u>or</u> the specified unsecured debts exceed $5 million. *See, e.g., In re UAL Corp.*, 307 B.R. 80, 84 (Bankr. N.D.Ill. 2004) ("[A]ppointment of an examiner is mandatory if the four conditions are met, but the court retains the discretion to determine the nature and scope of the examiner's investigation"); *In re Residential Capital, LLC*, 474 B.R. 112 (Bankr. S.D.N.Y. 2012) (discussing mandatory requirement to appoint when conditions are met).

The appointment of an examiner is mandatory if the Court finds that the specific debt threshold provisions of Section 1104(c)(2) are met. *See, e.g., Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500-501 (6th Cir. 1990); *Loral Stockholders Protective Comm. v. Loral Space & Commc'ns, Ltd. (In re Loral Space & Commc'ns, Ltd.),* 2004 WL 2979785, *5 (S.D.N.Y. Dec. 23, 2004), *rev'g*, 313 B.R. 57 (Bankr. S.D.N.Y. 2004); *Walton v. Cornerstone Ministries, Invs., Inc. (In re Cornerstone Ministries Invs., Inc.)*, 398 B.R. 77, 84 (N.D. Ga. 2008). Debts listed as "disputed" can be included in the calculation of the debt threshold. *In re Vision Development Group of Broward County, LLC*, 2008 WL 2676827, *3 (Bankr. S.D.Fla. June 30, 2008) (Section 1104(c) does not use the word "undisputed" and does not require debts to be undisputed).

*b. An examiner is warranted and appropriate in the Debtor's case.*

Here, there cannot be any disagreement that all of the factors of Section 1104(c) are met and that an examiner is appropriate. The Debtor is operating as a debtor in possession, no plan has been proposed (or confirmed), the Debtor's fixed debts exceed the statutory threshold, and the United States Trustee is seeking the appointment of an examiner. Lastly, the Debtor has a pre-petition history of being unwilling to explain and disclose his financial affairs. Against this backdrop, the Debtor has disclosed an estimated asset range of $50,000 to $100,000 on his Petition despite being the beneficial owner of a 152-foot luxury yacht and managing an entity that indirectly owns an entire floor of The Sherry-Netherland. To ensure full understanding and transparent disclosure of the Debtor's assets and his financial dealings, it is in the best interest of the Debtor's creditors that the Debtor's financial affairs be investigated by a neutral party. For all of the factual reasons set forth herein, the appointment of an examiner is required and is clearly in the best interests of the estate and its creditors.

## II. In the alternative, the Court Should Order the Appointment of Chapter 11 Trustee under Section 1104(a)(2) of the Bankruptcy Code.

If the Court determines that, based upon the circumstances and facts of this case, the preferable remedy is the appointment of a chapter 11 trustee under Section 1104(a)(2), the United States Trustee will promptly select an appropriate candidate and present the candidate for approval by the Court.

Section 1104(a) provides that the Court may order the appointment of a trustee at any time after the commencement of the case, but prior to confirmation of a plan, on request of a

party in interest or the United States Trustee, and after notice and a hearing. 11 U.S.C. § 1104(a).

This provision sets forth the following grounds for the appointment of a trustee:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor ...;
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate ...

11 U.S.C. § 1104(a)(1) and (2).

A number of courts have indicated that grounds for the appointment of a trustee must be established by clear and convincing evidence. *See In re Bayou Group LLC*, 564 F.3d 541, 546 (2nd Cir. 2009); *see also In re Tripodi*, 313 B.R. 358 (Bankr. D.Conn. 2004). Other courts, however, have held that the appropriate burden of proof is "preponderance of the evidence." *See Tradex Corp. v. Morse*, 339 B.R. 823, 829-32 (D. Mass. 2006).

<u>*A Chapter 11 Trustee would be in the Best Interests of Creditors*</u>

Section 1104(a)(2) allows appointment of a trustee even when no "cause" exists. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under Section 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). *See, e.g., In re Sharon Steel*, 871 F.2d at 1226; *Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F. 2d 239, 242 (4th Cir. 1987).

Under Section 1104(a)(2), courts look to the practical realities and necessities. *In re Adelphia Comm's Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). Accordingly, the standard for appointment of a Chapter 11 trustee under Section 1104(a)(2) is flexible. *In re Adelphia*; 336 B.R. at 658; *In re The 1031 Tax Group, LLC*, 374

23

B.R. 78, 90-91 (Bankr. S.D.N.Y. 2007). The factors considered by the courts in assessing

motions brought under Section 1104(a)(2) include: (1) the trustworthiness of the debtor, (2) the

debtor's past and present performance and prospects for rehabilitation, (3) the confidence – or

lack thereof – of the business community and of creditors in present management, and (4) the

benefits derived from the appointment of a trustee, balanced against the cost of the appointment.

*In re Adelphia*; 336 B.R. at 658; *In re Euro-American*, 365 B.R. at 427; *In re 1031 Tax Group*,

374 B.R. at 91.

     Acrimony between a debtor and creditors is a well-known basis to appoint a trustee. *See,*

*e.g., In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998); *In re ElJamal*, 2018

WL 4735719 (S.D.N.Y. September 28, 2018); *In re Eurospark Indus., Inc.*, 424 B.R. 621

(Bankr. E.D.N.Y. 2010). As one court has stated, "it is important to note that the '[a]ppointment

of a Chapter 11 trustee, pursuant to § 1104(a)(2), is not punishment, nor does it imply a finding

of fault'" and instead the purpose is the facilitation of a chapter 11 case that is productive. *In re*

*ElJamal*, 2018 WL 4735719 at *9 (internal citations omitted); *see also In re China Fishery*

*Group Limited (Cayman)*, 2016 WL 6875903 *14-18 (Bankr. S.D.N.Y. October 28, 2016)

(same). The appointment of a chapter 11 trustee can be the right move to achieve forward

progress, and while "'the debtor loses a degree of personal control over the estate, the

responsibilities of a Chapter 11 trustee are, in almost every respect, no different than those

already held by the debtor-in-possession.'" *In re ElJamal*, 2018 WL 4735719 at *9 (internal

citation omitted).

     Here, years of litigation between PAX and the Debtor led to the filing of this chapter 11.

PAX has filed three pleadings in this case to date, an objection to the Extension Moton, the PAX

Stay Relief Motion and a reply to the Debtor's objection to same, which collectively outline a

long and difficult history of litigation with the Debtor. ECF 50, 57, and 98. The Debtor, rather

than comply with the February 2022 Contempt Decision, filed this chapter 11 to stall PAX and to frustrate its collection efforts. The Debtor, through the Extension Motion, the Global Notes, the disclosure of limited assets, the suggestion that payments to creditors would be funded by litigation winnings, as well as his pre-petition conduct, has set the stage for a long, protracted case that features countless disputes with PAX. Further, the Global Notes cause real concern that the Debtor is unable or unwilling to respect and perform the fiduciary duties necessary to administer his estate. The interests of creditors and the estate are best served by an independent trustee who can devote undivided attention to the bankruptcy case and who will assure the proper administration of the Debtor's bankruptcy estate and preserve its assets.

### **CONCLUSION**

WHEREFORE, for all the foregoing reasons, the United States Trustee respectfully requests that the Court direct the appointment of an examiner to investigate and report on the following: (1) identify the Debtor's post-petition income from all sources, (2) identify the Debtor's uses of post-petition income, (3) identify and understand the Debtor's interests, including beneficial, control, equitable and legal, in corporate entities across the globe, and identify and understand the assets and liabilities of those corporate entities; and (4) examine whether the Debtor is fulfilling all of his fiduciary duties and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all assets and causes of action.   In the alternative, the United States Trustee respectfully requests that the Court direct

the appointment of a chapter 11 trustee. Lastly, the United States Trustee respectfully reserves

the right to supplement this motion should it become appropriate to do so.


Dated: March 19, 2022                    Respectfully submitted,
      New Haven, Connecticut            WILLIAM K. HARRINGTON
                                       UNITED STATES TRUSTEE FOR REGION 2

                                    By:    /s/ Holley L. Claiborn
                                            Holley L. Claiborn

                                          /s/ Steven E. Mackey
                                          Steven E. Mackey

                                          Trial Attorneys
                                          Office of the United States Trustee
                                          Giaimo Federal Building, Room 302
                                          150 Court Street
                                          New Haven, CT 06510
                                          Holley.L.Claiborn@usdoj.gov
                                          Federal Bar No.: ct17216 (Connecticut)
                                          Steven.E.Mackey@usdoj.gov
                                          Federal Bar No: ct09932 (Connecticut)
                                          (203) 773-2210

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| HO WAN KWOK<br>a/k/a WENGUI GUO<br>a/k/a MILES GUO, | Case No. 22-50073 (JAM) |
| Debtor. | |

---

*PROPOSED*
**ORDER GRANTING UNITED STATES TRUSTEE'S MOTION FOR AN ORDER
DIRECTING THE APPOINTMENT OF AN EXAMINER OR, IN THE
ALTERNATIVE, MOTION FOR ORDER DIRECTING THE
<u>APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>**

The United States Trustee having moved for an order directing the appointment of an

examiner under 11 U.S.C. § 1104(c)(1) and/or (2) for the chapter 11 case of Ho Wan Kwok a/k/a

Wengui Guo a/k/a Miles Guo ("Debtor" and/or "Kwok"), or in the alternative, an order directing

the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(2) based on the best interests

of creditors and the estate ("Motion"), and a hearing having been held on the Motion on

_____, 2022 and the Court having found cause to grant the Motion, it is hereby

**ORDERED** that the Motion is granted pursuant to 11 U.S.C. § 1104(c)(1) and (2); and it

is further

**ORDERED** that the United States Trustee is directed to appoint an examiner in the

Debtor's case; and it is further

**ORDERED** that the examiner shall perform the duties set forth in 11 U.S.C. § 1104(d)

and those that may be ordered by the Court upon future order, and in particular, the examiner

shall investigate and report on the following: (1) identify the Debtor's post-petition income from

27

all sources, (2) identify the Debtor's uses of post-petition income, (3) identify and understand the Debtor's interests, including beneficial, control, equitable and legal, in corporate entities across the globe, and identify and understand the assets and liabilities of those corporate entities; and (4) examine whether the Debtor is fulfilling all of his fiduciary duties and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all assets and causes of action.