SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

               Plaintiff,

          v.

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO
WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN
GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES
KWOK, a/k/a HAOYUN GUO, GENEVER
HOLDINGS CORPORATION, and GENEVER
HOLDINGS LLC,

               Defendants.

Index No:  652077/2017

Hon. Barry R. Ostrager

Part 61

Mot. Seq. No. 19

**PRE-HEARING BRIEF IN SUPPORT OF PACIFIC ALLIANCE ASIA
OPPORTUNITY FUND L.P.'S MOTION FOR A FINAL ORDER OF CIVIL
CONTEMPT AGAINST DEFENDANT KWOK**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ...................................................................................2

ARGUMENT ...........................................................................................................7

    I.     PAX Meets the Standard of Judiciary Law § 753 Because PAX Has
          Demonstrated That Kwok Has a Beneficial Interest in the Lady May,
          Making It a Leviable Asset ..............................................................................7

    II.    PAX is Entitled to an Adverse Inference That Kwok Holds a Beneficial
          Interest in the Lady May ..................................................................................9

    III.   Kwok's Evidentiary Objections Have No Merit ...............................................11

         A.    PAX's Pre-March 15, 2021 Evidence Is Relevant ...................................11

         B.    Kwok's Social Media Posts Are Authentic and Admissible ...................12

         C.    The Videos Depicting Kwok Are Authentic and Admissible .................15

         D.    The Court Should Draw an Adverse Inference With Respect to
             Authenticity ...........................................................................................18

    IV.   Kwok's Latest Challenge to the Amount of the Fine Has No Merit ..................19

         A.    The Contempt Penalty Does Not Amount to an "Improper
             Windfall" ...............................................................................................19

         B.    The Penalty Properly Began to Accrue on May 15, 2021 .......................20

         C.    The Fine Is Not an Unconstitutional Penalty ..........................................20

CONCLUSION .......................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baxter v. Palmigiano*,
425 U.S. 308 (1976) ...................................................................................................19

*Colfin Bulls Funding B, LLC v. Ampton Invs., Inc.*,
112 N.Y.S.3d 868 (N.Y. Sup. Ct. 2018)..................................................................8

*Commodity Futures Trading Com'n v. Int'l Fin. Servs. (N.Y.), Inc.*,
323 F. Supp. 2d 482 (S.D.N.Y. 2004) ...................................................................10

*Crowder v. Wells & Wells Equip., Inc.*,
11 A.D.3d 360 (1st Dep't 2004) ...........................................................................10

*DeBonis v. Corbisiero*,
547 N.Y.S.2d 274 (1st Dep't 1989) .........................................................................9

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*,
609 F.3d 111 (2d Cir. 2010) ...................................................................................8

*Farrell v. Labarbera*,
181 A.D.2d 715 (2d Dep't 1992) ...........................................................................10

*Fleetwood Fin. v. Walter J. Dowd, Inc.*,
No. 113484/2011, 2016 WL 11546917 (N.Y. Sup. Ct. Sept. 14, 2016) ...................7

*Gliklad v. Chernoi*,
129 A.D.3d 604 (1st Dep't 2015) .............................................................................8

*Guo v. Liang*,
Index No. 151428/2018 (N.Y. Sup Ct. 2018) ........................................................13

*Guo v. Shuiyuan Cheng*,
Case No. A-18-779172-C (D.C. NV. 2019) ...........................................................13

*Guo v. Yuan*,
Case No. 2:18-cv-2276 (D.C. Ca. 2018) ...............................................................13

*International Union, United Mine Workers of America v. Bagwell*,
512 U.S. 821 (1994).................................................................................................21

*Johnson v. Hatzidakis*,
30 Misc. 3d 1229(A) (Co. Ct. 2011) ......................................................................10

*Lebewohl v. Heart Attack Grill LLC*,
890 F. Supp. 2d 278 (S.D.N.Y. 2012) ....................................................................14

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*LiButti v. United States*,
   107 F.3d 110, (2d Cir. 1997) ........................................................................9

*McCormick v. Axelrod*,
   59 N.Y.2d 574, *amended*, 60 N.Y.2d 652 (1983) ........................................7

*Oppenheimer v. Oscar Shoes, Inc.*,
   111 A.D.2d 28 (1st Dep't 1985) ...................................................................7

*Pac. All. Asia Opportunity Fund L.P. v. Wan*,
   199 A.D.3d 423 (2021).........................................................................19, 20

*People v. Caballero*,
   2021 N.Y. Slip Op. 06509, 2021 WL 5410135 (4th Dep't Nov. 19, 2021) ......11, 16

*People v. Dyson*,
   169 A.D.3d 917 (2d Dep't 2019)..........................................................11, 18

*People v. Ely*,
   68 N.Y.2d 520 (2020) ..................................................................................15

*People v. Goldman*,
   35 N.Y.3d 582 (N.Y. 2020) .........................................................................15

*People v. Legrand*,
   194 A.D.3d 1073 (2d Dep't 2021) ........................................................12, 14

*People v. Lostumbo*,
   182 A.D.3d 1007, 123 N.Y.S.3d 319 (4th Dep't 2020) ...........................11, 17

*People v. Mateo*,
   2 N.Y.3d 383 (2004) ....................................................................................11

*People v. Moreno*,
   70 N.Y.2d 403 (1987) ..................................................................................15

*People v. Price*,
   80 N.E.3d 1005 (2017) ......................................................................12, 13, 14

*People v. Primo*,
   96 N.Y.2d 351 (2001) ............................................................................18, 19

*People v. Scarola*,
   71 N.Y.2d 769 (1988) ..................................................................................11

*People v. Tong Khuu*,
   293 A.D.2d 424 (1st Dep't 2002) ................................................................11

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Peterson v. Islamic Rep. of Iran*,
  2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ................................................................8

*Ruesch v. Ruesch*,
  106 A.D.3d 976 (2d Dep't 2013) ................................................................................20

*S.E.C. v. Durante*,
  No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226 (S.D.N.Y. Dec. 19, 2013), *aff'd*,
  641 F. App'x 73 (2d Cir. 2016) ...................................................................................9

*United States v. Pettway*,
  No. 1:12-CR-103, 2018 WL 4958962 (W.D.N.Y. Oct. 15, 2018), *aff'd sub nom.*
  *United States v. Washington*, 814 F. App'x 664 (2d Cir. 2020) ...............................15

**Statutes**

CPLR § 5225 ..........................................................................................................1, 8

N.Y. Judiciary Law § 753 .......................................................................................1, 7

**Other Authorities**

Black's Law Dictionary, Interest (9th ed. 2009) ........................................................8

**Treatises**

Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.09 .......................8

# INTRODUCTION[1]

Once again, Mr. Kwok asks this Court to suspend disbelief in favor of a story woven of layers of shell companies designed to obscure his beneficial interest in and control over his yacht, the Lady May.  But despite his attempts to obfuscate the truth, all roads lead back to Kwok.  This Court already determined that PAX made "more than a prima facie showing that each of these entities that allegedly control the yacht, the Lady May, are controlled by Mr. Kwok."[2]  As the Court predicted,[3] the affidavit "evidence" Kwok's witnesses have proffered for the February 2 hearing "to resolve a dispute as to ownership and control of the yacht"[4] does not move the needle.  Kwok's witnesses do not offer credible, probative evidence.  And Kwok himself says nothing, relying instead on empty technical arguments aimed at precluding some of PAX's evidence that demonstrates that at all relevant times, Kwok held a ***beneficial interest*** in the Lady May—the relevant standard to levy on the yacht under CPLR § 5225, and thus to satisfy the "prejudice" standard for civil contempt under New York Judiciary Law § 753.

And because Kwok—***the*** material witness—has invoked the Fifth Amendment in response to PAX's discovery requests and will not testify at the February 2 hearing, the Court should draw an adverse inference against Kwok in further support of a finding that Kwok holds a beneficial interest in the Lady May.

Finally, Kwok's complaints about the nature of the contempt fine this Court imposed were already considered and rejected by the First Department on November 4, 2021, when it

---

[1] Unless otherwise specified, defined terms have the meaning given to them in the Memorandum of Law in Support of PAX's Motion for Order of Contempt Against Defendant Kwok (Dkt. 689).
[2] July 21, 2021, Hr'g Tr., Dkt. 898 at 13:20–23; *see also id.* at 17:21–25 ("Mr. Kwok is in contempt, and his entities are in contempt of prior orders of the Court.").
[3] Jan. 14, 2022, Hr'g Tr., Dkt. 1120 at 29:1–3 (". . . I'll be very surprised if substantial evidence is produced that Mr. Kwok has no involvement with this boat.").
[4] Decision & Order, New York Supreme Court, Appellate Division, First Department, Dkt. 953 (citations omitted).

affirmed this Court's conditional contempt order. Accordingly, the Court should enter a final civil contempt order against Kwok for his continued disregard of the Court's Order.[5]

## FACTUAL BACKGROUND

The ownership and whereabouts of the Lady May have been the subject of extensive briefing and argument before the Court.[6] Therefore, PAX summarizes below only the evidence most relevant to the February 2 hearing.

### Kwok Forms HK International, Transfers His Entire Interest for No Consideration, and HK International Buys the Lady May

On October 3, 2006, Kwok formed Hong Kong International Funds Investments Limited ("HK International").[7] Kwok was HK International's sole shareholder and director through late 2014.[8] Shortly before Kwok fled China,[9] on October 10, 2014, he transferred his HK International ownership to Qu Guo Jiao[10] for no apparent consideration. HK International purchased the Lady May for €28 million on February 23, 2015.[11]

---

[5] Mar. 16, 2021, Order, Dkt. 728 at 2.

[6] See Dkt. 689, 709, 1060.

[7] PX-006 at PX-006-0001–0006. In prior briefing, PAX referred to this entity as "HKI HK." The January 28, 2022 Affidavit of Mei Guo ("Guo Aff.") refers to this entity as "HK International." Guo Aff. ¶ 11. For the sake of clarity, PAX will use "HK International" here.

[8] PX-007 at PX-007-0006; PX-008 at PX-008-0006; PX-009 at PX-009-0006; PX-010 at PX-010-0006; PX-011 at PX-011-0006; PX-012 at PX-012-0006; PX-013 at PX-013-0006; PX-015 at PX-015-00016.

[9] See Guo Aff. ¶ 3 ("My father fled mainland China, and ultimately Hong Kong to the United States in early 2015 . . . .").

[10] PX-015 at PX-015-0016. According to Ms. Guo, Ms. Qu was a family business associate. Guo Aff. ¶ 8.

[11] PX-016 at PX-016-0001. Around the same time, Kwok incorporated the Genever defendants and applied to buy the Sherry-Netherland apartment, also with HK International funds. Dkt. 252 at SN 0159 (Genever Holdings Corporation), SN 0198 (Genever Holdings LLC); Dkt. 256 at SN 0046-47.

2

Case 22-50073    Doc 102-5    Filed 03/19/22    Entered 03/19/22 13:56:36    Page 8 of 28

***Ms. Qu Transfers HK International to Ms. Guo for $1 in Mid-2017; Kwok Makes Public
Statements Demonstrating his Continued Interest in and Control Over the Lady May***

For more than two years, the Lady May's legal title was parked under Ms. Qu's name.  On

June 27, 2017, Ms. Qu transferred ownership of HK International to Mei Guo ***for $1***.[12]

Nevertheless, throughout 2017, Kwok made public statements evincing that he remained the

beneficial interest holder in control of the yacht, irrespective of who held the Lady May's legal

title.  For example, in May 2017, one month before Ms. Qu transferred HK International to Ms.

Guo, Kwok posted on his Twitter handle @KwokMiles that he "gave" the yacht to his

daughter.[13]  But two months later Kwok continued to refer to the Lady May as "***my ship***" on

Twitter.[14]  Then in a YouTube video posted on October 14, 2017, Kwok stated that "***I bought***

***this boat*** in 2014" and that he had considered selling it and "***got an offer close to [my] asking***

***price, but did not take it***."[15]  And in a November 2017 Vice News interview, Kwok again

referred to the Lady May as "***my yacht***."[16]

***The Lady May Is Transferred to a New Entity – HK USA***

On April 1, 2019, HK International Funds Investments (USA) Limited, LLC ("HK

USA")[17] was formed with Mei Guo as "the sole member of the company"[18] and with the same

address as ***Kwok's 162 East 64th Street office***.[19]  In April 2020, Ms. Guo transferred the yacht

from HK International to HK USA.[20]

---

[12] PX-016 at PX-016-0004.
[13] PX-001-0001, PX-001A at PX-001A-0002 (Certified Translation).
[14] *Id.*
[15] PX-002 at 2:50–4:15.
[16] PX-019 at 4:28.
[17] In prior briefing, PAX referred to this entity as "HKI Delaware."  The January 28, 2022
Affidavit of Mei Guo refers to this entity as "HK USA."  Guo Aff. ¶ 11.  For the sake of clarity,
PAX will use "HK USA" here.
[18] JX-003 at JX-003-0001.
[19] *Id.*
[20] Guo Aff. ¶ 11.

Case 22-50073    Doc 102-5    Filed 03/19/22    Entered 03/19/22 13:56:36    Page 9 of 28

***Kwok Continues to Represent Publicly that he has an Interest in and Control Over the Yacht
and Did Not Disavow this Fact***

In September 2020, Kwok filed a complaint alleging that on August 30, 2020, "pawns of
the Chinese Communist Party . . . attempted ***to cause Guo [a/k/a Kwok] injury while on his
yacht***."[21]  The complaint referred to the Lady May as "***his***" yacht three times, and included a
hyperlink to an article reporting in its headline and text that Mr. Kwok was the yacht's owner.[22]
This Court correctly noted that Kwok's complaint constitutes a judicial admission.[23]

On October 15, 2020, the Court restrained "Mr. Kwok and/or the registered owners of the
yacht, 'the Lady May.'"[24]  Kwok's counsel did not argue at the time that the Lady May was
improperly restrained because Kwok did not own it; nor did Kwok appeal that order.  Neither
Ms. Guo nor HK USA intervened to argue that the Lady May was unfairly restrained.  Instead, in
November 2020, Kwok's counsel asked the Court whether the yacht could be moved to the BVI
"for licensing purposes."[25]  Kwok's counsel again did not suggest that Kwok was not in control
of the yacht.

---

[21] JX-001 at JX-001-0004.  That sentence ends with a footnote linking to an article entitled
***"Beijing Suspected in Hacking Yacht Owned by Chinese Billionaire***," which states "***Guo
Wengui, who uses the English name Miles Kwok, said several incidents involving his 152-foot
motor yacht, Lady May***, appear to be part of a Chinese government effort to threaten and
intimidate him."
[22] JX-001 at JX-001-0004 ( ¶¶ 7, 8), JX-001-0006 (Prayer for Relief (d)).  Aaron Mitchell, who
filed Kwok's complaint, now belatedly contends—just as he tried to at the December 18, 2020
hearing (Dkt. 695 at 26:23–27:12)—that each of the three times he referred to the Lady May as
Kwok's yacht, he did not in fact intend to convey anything about the yacht's ownership.
[23] Dkt. 1120 at 19:16–17.
[24] Oct. 15, 2020, Order, Dkt. 630.
[25] Nov. 12, 2020 Hr'g Tr., Dkt. 691 at 13:9–18.

4

***Kwok Invokes his Fifth Amendment Right, Blocking PAX's Discovery of his Assets, Including the Lady May***

In late 2020, in connection with PAX's asset-discovery efforts, PAX sent Kwok discovery requests,[26] including several related to the Lady May. On March 11, 2021, Kwok's lawyers informed PAX that "Kwok is asserting his Fifth Amendment right in response to all discovery addressed to him individually and ***declines to provide any additional and/or further information and/or documents***."[27]

***Asset Discovery and Evidence Proffered for the February 2 Hearing Confirm That Kwok's Shell Companies Fund the Yacht's Operational and Legal Expenses***

The evidence Kwok has proffered for the February 2 hearing reveals that Kwok's two personal-funding sources – Golden Spring (New York) ("GSNY")[28] and Lamp Capital LLC ("Lamp") – pay all of the yacht's expenses and are involved in its operations.

For example, the Lady May's captain from September 2017 through May 2021, Craig Heaslop, stated that although he had "interacted" with Ms. Guo and communicated with her "sporadically via phone and text,"[29] he took "direction about the movement of the Yacht exclusively from representatives of [HK International], [HK USA], or [GSNY]."[30] Momchil Ivanov, the new captain since October 2021, similarly does not receive direction from Ms. Guo.[31] Instead, Ivanov claims to receive instruction from a yacht management company

---

[26] PX-027, PX-028.

[27] PX-029.

[28] Kwok has conceded that he "set[] up [GSNY] by transferring funds from one of [his] accounts at UBS to [GSNY]'s JPMorgan Chase bank account." Dkt. 764 ¶ 36. And this Court has already determined that GSNY "has funded seven-figure payments to facilitate Mr. Kwok's . . . rather extravagant lifestyle, [and] purports to have zero assets whatsoever." May 27, 2021, Hr'g Tr., Dkt. 833 at 9:25–10:3.

[29] January 28 Aff. of C. Heaslop, Dkt. 1158, ("Heaslop Aff.") ¶ 24

[30] *Id.* ¶ 25

[31] January 28 Aff. of M. Ivanov, Dkt. 1157, ("Ivanov Aff.") ¶ 6.

(Yachtzoo SARL), which in turn, he believes, comes from HK USA representatives.[32]  Russell

Stockil, whose Yacht Management company Yachtzoo SARL purports to have a yacht

management contract with HK USA dated May 2021, admits only to having "spoken and

communicated" about the Lady May with "representatives from [HK USA], [GSNY], or Lamp

Capital LLC," and **not Ms. Guo herself**.[33]

Further, HK International and HK USA have no "source of income…[a]ll expenses for the

Lady May, including fuel, maintenance, and costs for the captain and crew, were paid for by

[Kwok's] family office, Golden Spring (New York) Ltd. ('[GSNY]'), and now by Lamp Capital

LLC."[34]  This was also confirmed by HK USA counsel, Lee Vartan, who represented to PAX

that "all expenses for the Lady May yacht, including staff, crew, and maintenance, are paid by

Golden Spring New York."[35]  Moreover, HK USA has "no directors, officers, or employees; [it]

has no dedicated e-mail server or e-mail suffix; does not file tax returns; and has no bank account

and is not otherwise 'capitalized.'"[36]

HK USA also produced precious few documents regarding ownership of its $30 million

asset.  To date, aside from a few formal corporate formation and title documents,[37] Ms. Guo and

her father have tried to place in evidence just **a single additional document**.[38]  That one

document is a yacht management contract apparently signed on November 11, 2021 – a week

**after** the First Department's affirmance of this Court's conditional contempt ruling.  That

---

[32] *Id.* ¶ 7.
[33] January 28 Aff. of R. Stockil, Dkt. 1156, ("Stockil Aff.") ¶¶ 5, 8–9.
[34] M. Guo Aff. ¶ 12.
[35] PX-017.
[36] *Id.*  HKI USA's lawyer in this action is also paid by GSNY and Lamp Capital.  PX-033.
[37] *E.g.*, JX-002; DX-005.
[38] DX-005.

Case 22-50073   Doc 102-5   Filed 03/19/22   Entered 03/19/22 13:56:36   Page 12 of
28

document reflects that Ms. Guo signed it **on behalf of the counter-party, Phoenix Crew IC Limited,** not HK USA, and **the agreement is not countersigned by Phoenix**.[39]

**The Lady May Remains Outside the Court's Jurisdiction**

Since at least October 2020, the Lady May has been outside of the Court's jurisdiction.[40]

## ARGUMENT

**I.     PAX Meets the Standard of Judiciary Law § 753 Because PAX Has Demonstrated That Kwok Has a Beneficial Interest in the Lady May, Making It a Leviable Asset**

The Court has the authority to hold Kwok in contempt under Judiciary Law § 753, and "to punish [him], by fine and imprisonment," where it "expressly find[s] that [Kwok's] actions were calculated to or actually did defeat, impair, impede, or prejudice the rights or remedies of a party to a civil proceeding." *Oppenheimer v. Oscar Shoes, Inc.*, 111 A.D.2d 28, 28 (1st Dep't 1985) (citing N.Y. Judiciary Law § 753). Section 753 sets forth four requirements:

> [T]o find that contempt has occurred in a given case, it must be determined that [1] a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. [2] It must appear, with reasonable certainty, that the order has been disobeyed . . . [3] Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party . . . [4] Finally, prejudice to the right of a party to the litigation must be demonstrated.

*Fleetwood Fin. v. Walter J. Dowd, Inc.*, No. 113484/2011, 2016 WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016) (Ostrager, J.) (citing *McCormick v. Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)). The First Department already held on appeal of this motion that PAX met this standard.[41]

---

[39] *Id.* at DX-005-0007.

[40] Dkt. 689, 690, 691, 692, 693; Heaslop Aff. ¶ 16.

[41] Order, *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, No. 2021-01010 at 1 (1st Dep't Nov. 4, 2021) (citations omitted) ("[PAX has] established by clear and convincing evidence that [Kwok] violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights.").

7

The extent of PAX's ongoing "prejudice" turns on PAX showing whether it could ultimately levy on the Lady May to satisfy its more-than-$116 million judgment against Kwok.[42] Under CPLR § 5225, an interest in "money or other personal property," like the Lady May, is leviable where the debtor holds the requisite "interest."  To satisfy this requirement, ***"[i]t is not necessary that the judgment debtor have legal title to the property; a beneficial interest is sufficient."*** Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.09.  "A beneficial interest is '[a] right or expectancy in something ... as opposed to legal title to that thing.'"  *Peterson v. Islamic Rep. of Iran*, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing Black's Law Dictionary, Interest (9th ed. 2009)).  ***The key factor is whether "the property benefitted [the beneficial owner] as if he had received the property directly."*** *Id.* (quoting *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010)); *see also Gliklad v. Chernoi*, 129 A.D.3d 604 (1st Dep't 2015) (upholding rejection of the judgment debtor's contention that he no longer held an interest in property because he transferred his interest to his daughters); *Colfin Bulls Funding B, LLC v. Ampton Invs., Inc.*, 112 N.Y.S.3d 868 (Table), at *2, 6 (N.Y. Sup. Ct. 2018) (granting judgment creditor's turnover motion notwithstanding judgment debtor's assertion that he transferred property to a corporation, because even if the transfer occurred, the evidence showed that the judgment debtor "retained control and/or an interest" in the property).

As PAX previously has detailed, Kwok holds a beneficial interest in the Lady May sufficient for turnover pursuant to CPLR § 5225.  Nothing Kwok now argues, or has just placed

---

[42] *See* Nov. 12, 2020, Hr'g Tr., Dkt. 691at 14:4-8 (explaining that the Lady May "has been restrained in the United States" and that "[w]hat I am not going to have happen is Mr. Kwok move the yacht to the British Virgin Islands and then it becomes potentially unavailable for [PAX] to levy upon").

in evidence, changes the analysis. As an initial matter, Kwok argues that he never held legal title to HK International or HK USA. PAX does not dispute this, but that is not the relevant fact. Kwok (i) set up and solely owned HK International, (ii) shielded the yacht in his shell companies, (iii) repeatedly called the yacht his own, (iv) has the authority to decide when, whether, and at what price to sell it, and (v) funds the yacht's operations through his "family office" shell companies. As such, Kwok has a beneficial interest in and control over his yacht.

Kwok has not and cannot proffer any probative evidence supporting his claim that his daughter actually owned and controlled the Lady May during the three-and-a-half years from taking title in 2017 until the yacht left New York Harbor in late 2020. Rather, Kwok offers only Ms. Guo's self-serving say-so, which is undermined by the yacht crew, who stated that they do not take direction from Ms. Guo, but from unnamed representatives of various Kwok shell entities.

## II. PAX is Entitled to an Adverse Inference That Kwok Holds a Beneficial Interest in the Lady May

PAX is entitled to an adverse inference on the beneficial interest issue because Kwok (i) has invoked his Fifth Amendment right against self-incrimination in response to PAX's discovery requests, and (ii) will not testify at the February 2 hearing, triggering the "missing witness rule."

A party's invocation of the Fifth Amendment in a civil proceeding "may form the basis of an adverse factual inference." *DeBonis v. Corbisiero*, 547 N.Y.S.2d 274, 276 (1st Dep't 1989). An adverse inference may be applied whenever a factual determination is necessary or permitted, including in the context of contempt motions, *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *10 (S.D.N.Y. Dec. 19, 2013), *aff'd*, 641 F. App'x 73 (2d Cir. 2016), *LiButti v. United States*, 107 F.3d 110, 120-25 (2d Cir. 1997). Courts have drawn

adverse inferences where a defendant asserts blanket Fifth Amendment invocations in discovery.

*See, e.g.*, *S.E.C. v. Durante*, No. 01 CIV. 9056 DAB AJP, 2013 WL 6800226, at *11 (S.D.N.Y.
Dec. 19, 2013)*, aff'd*, 641 F. App'x 73 (2d Cir. 2016) (drawing adverse inference "on all
unanswered questions" at defendant's wife's deposition); *Commodity Futures Trading Com'n v.
Int'l Fin. Servs. (N.Y.), Inc.*, 323 F. Supp. 2d 482, 507 (S.D.N.Y. 2004) (drawing adverse
inference from defendant's assertion of the Fifth Amendment at his deposition and in response to
requests for admissions).

Similarly, under the "missing witness rule," "[a] trier of fact may draw the strongest
inference that the opposing evidence permits against a witness who fails to testify." *Crowder v.
Wells & Wells Equip., Inc.*, 11 A.D.3d 360, 361 (1st Dep't 2004); *see also*, *Farrell v. Labarbera*,
181 A.D.2d 715, 716 (2d Dep't 1992) (holding that missing witness charge should have been
given where defendant failed to testify concerning his duty as a landowner to keep his land in a
reasonably safe condition). Such an inference is equally applicable in a bench trial, *Johnson v.
Hatzidakis*, 30 Misc. 3d 1229(A) (Co. Ct. 2011), and against a party to a civil action who fails to
testify for ***any*** reason, *Crowder*, 11 A.D.3d at 361 (applying adverse inference where defendant
who failed to appear "would be knowledgeable about a material issue raised by the evidence").

PAX is entitled to an adverse inference under either avenue. Kwok has invoked his Fifth
Amendment right in response to PAX's post-judgment discovery requests, including about the
Lady May. For similar reasons, the missing witness rule also applies here, where Kwok, who
undoubtedly holds material information concerning the extent of his interest in the Lady May,
refuses to speak. Kwok has stonewalled PAX at every turn, and his silence speaks volumes.

10

FILED: NEW YORK COUNTY CLERK 02/01/2022 04:11 PM INDEX NO. 652077/2017

NYSCEF DOC. NO. 1172    Case 22-50073    Doc 102-5    Filed 03/19/22    Entered 03/19/22 13:56:36    Page 16 of RECEIVED NYSCEF: 02/01/2022
28

### III.    Kwok's Evidentiary Objections Have No Merit

Kwok challenges two categories of PAX's evidence:  (1) Kwok's social media (PX-001, PX-025) and (2) videos of Kwok available online (PX-002, PX-019, PX-020).[43]  Under New York law, "[a]ll relevant evidence is" "admissible at trial unless barred by some exclusionary rule." *People v. Mateo*, 2 N.Y.3d 383, 424–25 (2004).  Relevant evidence "may still be excluded" "if its probative value is substantially outweighed by the potential for prejudice." *Id.* (citing *People v. Scarola*, 71 N.Y.2d 769, 777 (1988)).  But "[a]t a bench trial, the 'court is presumed capable of disregarding the prejudicial aspect of the evidence' admitted therein." *People v. Lostumbo*, 182 A.D.3d 1007, 123 N.Y.S.3d 319, 323 (4th Dep't 2020) (*quoting People v. Tong Khuu*, 293 A.D.2d 424, 425 (1st Dep't 2002)).  Courts in bench trials are "presumed to have considered only competent evidence in reaching [their] verdict." *People v. Dyson*, 169 A.D.3d 917, 918 (2d Dep't 2019); *accord People v. Caballero*, 2021 N.Y. Slip Op. 06509, 2021 WL 5410135, at *3 (4th Dep't Nov. 19, 2021); *see, e.g.*, *Tong Khuu*, 293 A.D.2d at 425 (improperly admitted evidence of prior conviction "could not have caused [] any prejudice" "where the court is presumed capable of disregarding the prejudicial aspect of the evidence").

Al of PAX's proffered exhibits are authentic and admissible, and their probative value outweighs any alleged prejudice.  Moreover, because Kwok has invoked the Fifth Amendment, the Court may draw an adverse inference that each of these party admissions is authentic.

### a.    PAX's Pre-March 15, 2021 Evidence Is Relevant

Kwok attempts to exclude PAX's evidence dated before the Court's March 15, 2021 order as irrelevant.  Kwok's argument is baseless and undercut by his own submissions. The

---

[43] Kwok also challenges photographs of Kwok onboard the Lady May contained in self-authenticating publications (PX-021, PX-022, and PX-033).  Without conceding anything about their admissibility, PAX withdraws these exhibits as unnecessary for this hearing.

11

relevant inquiry at this hearing is ***whether Kwok has a beneficial interest in the Lady May***.  *See*

*supra* at 7–8.  Pre-2021 evidence bearing on this issue obviously is relevant to the question

before the Court.  Moreover, Kwok himself has offered plenty of pre-2021 evidence, but of

course only that he believes is favorable to him (*e.g.*, documents reflecting the HK International

transfers, statements from Kwok's witnesses).[44]  Kwok's argument should be rejected.

    **b.**    **Kwok's Social Media Posts Are Authentic and Admissible**

Not only are they relevant and probative, but Kwok's social media posts are authentic

and admissible. Under *People v. Price*, 80 N.E.3d 1005 (2017), social media evidence may be

authenticated by sufficient proof that the evidence is attributable to a certain party or witness,

including whether:

1. the defendant was known to use an account on the website in question;
2. the defendant had ever communicated with anyone through the account;
3. the account could be traced to electronic devices owned by the defendant;
4. the account was password protected or accessible by others;
5. non-account holders could post pictures to the account; and
6. the website permitted defendant to remove pictures from his account if he objected to what was depicted therein.

*Price*, 80 N.E.3d at 479.  Courts have also found that social media account postings and

photographs may be admitted into evidence where the offering party "present[s] sufficient

evidence that the subject social media accounts belonged to and were controlled by the

defendant."  *People v. Legrand*, 194 A.D.3d 1073, 1073 (2d Dep't 2021).

PAX has sufficient proof that the social media account posts, PX-001 and PX-025, satisfy

*Price* elements (1) and (2) because Kwok was known to use and communicate with both social

---

[44] *See, e,g.*, Jan. 14, 2022 Hr'g Tr. at 18:7–11 (Kwok's counsel contending that the evidence shows that Kwok "*never* owned the Lady May"); M. Guo Aff. at ¶ 9 (stating that "*from the time of its purchase*, the Lady May was always intended to be my boat"); Heaslop Aff. ¶ 3 (stating that "[f]rom in or about *September 2017 through in or about May 2021*, I served as ship's captain of the motor yacht 'Lady May'").

media accounts in question. *Price*, 80 N.E.3d at 479. Kwok admits "he maintained a verified

Twitter account in th[e] name" @KwokMiles.[45] Indeed, Kwok has made *several* admissions in

other cases that @KwokMiles, from which the Tweets in PX-001 were posted, belonged to

him.[46] For example, Kwok admitted that he "**maintains** the **active**, verified Twitter account

'@KwokMiles'"[47] and during his deposition in this case, Kwok made statements suggesting that

the @KwokMiles Twitter account was his before it was "shut down,"[48] which is corroborated by

current account captures confirming it was suspended.[49] And the Instagram account reflected in

PX-025, @guowengui, includes in the profile bio: "Guo Wengui Twitter: @KwokMiles."[50]

Moreover, Kwok has admitted to having an Instagram account with "22,500 Instagram

followers" in a pleading, which is consistent with the followers for the account @guowengui.[51]

     *Price* factors (4), (5), and (6) are also satisfied. On both Twitter and Instagram: (i)

accounts are password-protected; (ii) non-account holders cannot post original content or

---

[45] Def. Mr. Kwok Ho Wan's Pre-Hearing Mem. in Opp'n to a Final Order of Contempt, Dkt. No.
1166 ("Def.'s Br.") at 14.

[46] *See, e.g.*, PX-036 at PX-036-002 (verified complaint filed by Kwok stating: "Guo's Twitter
account, @KwokMiles, presently has approximately 491,000 followers."); *Guo v. Liang*, Index
No. 151428/2018 (N.Y. Sup Ct. 2018) (Feb. 14, 2018) at ¶ 4 (complaint filed by Kwok stating:
"Guo's Twitter account, @KwokMiles, has approximately 491,000 followers at present."); *Guo
v. Shuiyuan Cheng*, Case No. A-18-779172-C (D.C. NV. 2019) (August 9, 2018) ¶ 7 (complaint
filed by Kwok stating: "Guo's Twitter account, @KwokMiles, has approximately 475,000
followers at present."); *Guo v. Yuan*, Case No. 2:18-cv-2276 (D.C. Ca. 2018) (July 26, 2018) ¶
10 (demand for jury trial complaint filed by Kwok stating: "[Kwok] [d]enies the allegations set
forth in Paragraph '21' of the Counterclaim, except to admit that Counter-Defendant currently
has a Twitter account under @KwokMiles."); *Guo v. Yuan*, Case No. 2:18-cv-2276 (D.C. Ca.
2018) (March 20, 2018) ¶ 5 (complaint filed by Kwok stating: "Guo's Twitter account,
@KwokMiles, has approximately 495,000 followers at present.").

[47] PX-034 at PX-034-004; PX-035 at PX-035-002.

[48] *See* Kwok Dep. Tr. (Dec. 11, 2019) at 310–12.

[49] PX-032.

[50] PX-031.

[51] PX-014 at PX-014-0005.

pictures to the account; and (iii) only allow the account-holder to remove content posted to the account.[52]  *Price*, 80 N.E.3d at 479.

Courts have also found that social media postings and photographs may be admitted into evidence where the offering party demonstrates "that the photographs . . . [are] accurate representations of what was posted on the social media accounts."  *Legrand*, 194 A.D.3d at 1073; *see also Price*, 80 N.E.3d at 1009 (citations omitted) ("[A]ny person having the requisite knowledge of the facts may verify, or an expert may testify that the photograph has not been altered.");  *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 298 (S.D.N.Y. 2012) (same).

In short, PAX has met its burden of proof demonstrating that these are all accurate representations of what was posted to both the social media accounts.  First, Nathaniel Francis, Senior Investigator and Certified Fraud Examiner, affirmed that both PX-001 and PX-025 are accurate representations, which he independently accessed and captured.[53]  *Price*, 80 N.E.3d at 1009.  Moreover, Page Vault, a software services company that captures web content for use in court, captured key metadata to further authenticate PX-025 (PX-001 is no longer available, as the @KwokMiles Twitter account has been suspended).[54]  Page Vault's captures confirm that PX-025 is unaltered and identical to the original Instagram post.

Kwok's suggestion that these posts are prejudicial should also be rejected.  PX-025 is a post of Kwok onboard the Lady May, stating in the caption, "just got the US! Came to my ship from Europe!"  That Kwok is on the Lady May and describes it as *his* ship tends to establish

---

[52] Francis Aff., Dkt. 1124, ¶¶ 4–5.
[53] *See* Francis Aff., Dkt. 1121 (Instagram); Francis Aff., Dkt. 1124 (Twitter).  PAX expects that if asked, Mr. Francis will clarify that he believes he obtained the screenshot of the Tweet dated August 27, 2017 from another website that reproduces or catalogs Tweets.
[54] *See* Page Vault Aff., Dkt. 1138 ¶ 10; PX-025B.

14

Case 22-50073   Doc 102-5   Filed 03/19/22   Entered 03/19/22 13:56:36   Page 20 of 28

Kwok's beneficial interest in the yacht.  Although Kwok may not like this evidence, it does not

bear any "prejudice" the evidentiary rules were designed to prevent, and Kwok's showing of is

no more than labeling it as such.  *See, e.g.*, *People v. Moreno*, 70 N.Y.2d 403, 406 (1987).

### c.     The Videos Depicting Kwok Are Authentic and Admissible

In New York, "moving picture evidence," like a YouTube video, may be authenticated

where the video contains "distinctive identifying characteristics."  *People v. Goldman*, 35

N.Y.3d 582, 594, 595 (N.Y. 2020).  The party seeking to introduce social media evidence need

not authenticate the defendant's voice on the video nor demonstrate that the defendant uploaded

the video.  *United States v. Pettway*, No. 1:12-CR-103, 2018 WL 4958962 (W.D.N.Y. Oct. 15,

2018), *aff'd sub nom. United States v. Washington*, 814 F. App'x 664 (2d Cir. 2020).  Indeed, in

*Pettway*, a case the Court relied on extensively in *Goldman*, the defendant argued that the

government had failed to provide sufficient evidence to demonstrate the authenticity of the video

because no one had authenticated his voice on the video or testified that the defendant had been

the one to upload the video to YouTube.  *Id.* at *5.  The court denied the motion, finding that

"the question on authentication is whether sufficient evidence existed to create a ***reasonable***

***likelihood*** that the video was what the government claimed it to be: a video downloaded from

YouTube that depicted the Defendant performing rap music."  *Id.* (emphasis added).[55]

---

[55] Defendants' reliance on *People v. Ely*, 68 N.Y.2d 520, 527 (2020) as the guiding legal
principle for authentication of the video evidence here is inapposite.  In *Ely*, the court had before
it a tape-recorded telephone conversation.  Here, Mr. Kwok is visible and speaking directly into a
camera.  Further, PAX submits three separate sworn affidavits by Mr. Francis, concerning his
process for collecting and preserving the three videos PAX submits here.  Dkt. 1132, 1133, 1134.
Because, as explained below, each of PAX's offered video exhibits contains "distinctive
identifying characteristics," the appropriate standard is whether there is a reasonable likelihood
that the video is what PAX claims it to be.  PAX has established this and more.

15

PAX has established (at the very least) a reasonable likelihood that each piece of video evidence is what PAX says it is.  Kwok's unsupported and contrary claims that these videos only "purport to show Mr. Kwok" without more, is insufficient to overcome PAX's showing.[56]

**PX-002**.  Plaintiff's Exhibit 2 is a YouTube video entitled "Lady May, Miles Kwok's super yacht."  PAX has made clear to Kwok that its interest in this video is the stretch from the 2:50 timer mark to the 4:15 mark, during which Mr. Kwok appears on the screen and engages in a monologue about his yacht.  In this excerpt there is no sign of editing, splicing, or dubbing.  Despite PAX's representations about the key portion of this exhibit, Kwok focuses on the remainder of the video to substantiate his claim that it has been spliced together.  Although that is true, it glosses over that there is no splicing during the 2:50 to 4:15 mark.  Additionally, PAX has offered a sworn affidavit from Page Vault, which confirms that the video capture is identical to the original video posted on the YouTube site.[57]  PAX has thus established more than a reasonable likelihood that the video—or if nothing else the portion for which PAX is offering it—is what PAX claims it to be:  a YouTube video of Mr. Kwok discussing *his* yacht.

Further, PX-002 is undeniably relevant to the issues here.  In the video, posted on October 14, 2017, Kwok stated "I bought this boat in 2014," and explained that he had considered selling the Lady May and "got an offer close to [his] asking price, but did not take it."  Kwok's statement that he bought the Lady May, that he considered selling it, and that he ultimately did not accept the offer all bolster that he was and is in control of the Lady May and that he therefore has – at minimum – a beneficial interest in the yacht.  *See Caballero*, 2021 WL 5410135, at *3.  And not only is Kwok's suggestion that the video is prejudicial because it

---

[56] Def.'s Br. at 13.
[57] PX-26A.

INDEX NO. 652077/2017
RECEIVED NYSCEF: 02/01/2022

"highlight[s] the luxury of the Lady May"[58] inaccurate as to the key portion of the video, but

even if it were accurate, "highlighting the luxury" of the Lady May does not come close to even

matching the probative value of the video, much less outweigh it.  Not to mention, the Court is

"presumed capable of disregarding [any] prejudicial aspect of the evidence admitted therein."

*Lostumbo*, 123 N.Y.S.3d at 323.

**PX-019.**  Plaintiff's Exhibit 19 is a Vice News segment titled "This exiled Chinese

billionaire uses YouTube to wage a war on corruption."  In each designated segment, there is an

unobstructed view of Mr. Kwok speaking uninterrupted in front of the camera.  There is, again,

no sign of splicing, dubbing, or other manipulation to the video during the minute markers that

PAX has designated.  And in addition to the fact that the video captures Mr. Kwok speaking

directly in front of the camera, the video is distinctive because it is filmed in Mr. Kwok's unique

and recognizable Sherry Netherland apartment, which has been featured in countless news

articles and broker listings.[59]  PAX has also offered a sworn affidavit from Page Vault that

confirms the video capture is completely unaltered and remains as it appears on the Vice News

website.[60]

The video reflects relevant admissions.  Throughout the designated portions of PX-019,

Kwok refers to the Lady May as "my yacht," (4:25-4:40) and states that he owns "the most

advanced yachts" (6:42-7:06).  Such statements make it more probable that Kwok has a

beneficial interest in the yacht because he describes the yacht as his own.  Kwok argues that the

video is intended to prejudice the Court because of its descriptions of Kwok's lavish lifestyle,[61]

---

[58] Def.'s Br. at 13.
[59] *See, e.g.*, Dkt. 68.
[60] PX-19A.
[61] Def.'s Br. at 14.

Case 22-50073   Doc 102-5   Filed 03/19/22   Entered 03/19/22 13:56:36   Page 23 of
28

but PAX specifically has designated only the portions of the video pertaining to the central

question before the Court, and in any event, the court will consider "only competent evidence in

reaching its verdict." *Dyson*, 169 A.D.3d at 918.

**PX-020.**  Plaintiff's Exhibit 20 is a YouTube video titled "2019.07.27 Mr. Miles Kwok

spending time with friends on boat (bed)."  Kwok's characterization of the video as "video

footage spliced together"[62] is false and misleading.  To the contrary, it is one continuous live

stream of Mr. Kwok being served a meal aboard the Lady May before he converses with the

crew and disembarks onto a smaller boat.  And aside from the fact that the video captures Mr.

Kwok speaking directly in front of the camera, the video is distinctive in that it is filmed aboard

the Lady May itself.  This is clear based on photographs of the yacht that PAX has submitted

into evidence,[63] as well as the fact that the ship's name is partially visible in the video.[64]  PAX

again has offered a sworn affidavit from Page Vault, which confirms that the video capture is

unaltered and remains as it appears on YouTube.[65]

Further, PX-020 is relevant because Kwok's enjoyment of the yacht and interactions with

the crew tend to show that Kwok has a beneficial interest in the yacht, precisely because he is

exercising authority over the boat and its crew.  *People v. Primo*, 96 N.Y.2d 351, 355 (2001).

Moreover, Kwok offers no explanation for how the video is prejudicial in any way, and it is not

"duplicative" because a staff member audibly calls Kwok "boss."

### d.    The Court Should Draw an Adverse Inference With Respect to Authenticity

Finally, the Court's authenticity analysis should also be informed by Kwok's Fifth

Amendment-based refusal to testify.  Indeed, Kwok's absence from the February 2 hearing and

---

[62] *Id.* at 10.
[63] *See* PX-38.
[64] *See* PX-20 at 44:01.
[65] PX-20A.

his refusal to engage in any meaningful post-judgment discovery triggers an adverse inference on the merits of this motion, *see supra* at 9–10, as well as on issues related to admissibility. The Fifth Amendment allows courts to draw "adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). In *Baxter*, the Court upheld an adverse inference where an inmate chose to remain silent at a disciplinary hearing "in the face of evidence that incriminated him." *Id.* The Court observed that "[s]ilence is often evidence of the most persuasive character." *Id.* at 319.

Kwok tries to skirt an adverse inference by claiming that PAX has failed to proffer any "probative" evidence.[66] Not only is Kwok wrong, but the relevant analysis for whether evidence is probative is if it "tends to prove the existence or non-existence of a material fact, *i.e.*, a fact directly at issue in the case." *Primo*, 96 N.Y.2d at 355. PAX's evidence does just that, and Kwok's refusal to testify about it warrants an adverse inference as to authenticity.

## IV. Kwok's Latest Challenge to the Amount of the Fine Has No Merit

Kwok raises three challenges to the amount of the civil contempt fine.[67] Each of these contentions lacks merit.

### a. The Contempt Penalty Does Not Amount to an "Improper Windfall"

Kwok recycles his argument – already considered and rejected by the First Department in its affirmance of this Court's conditional contempt order – that the fine represents an impermissible "windfall" because it exceeds the value of the Lady May. *See Pac. All. Asia Opportunity Fund L.P. v. Wan*, 199 A.D.3d 423, 423 (2021).[68] The First Department squarely

---

[66] Def.'s Br. at 7–8.
[67] *Id.* at 16–19.
[68] Dkt. 921.

Case 22-50073   Doc 102-5   Filed 03/19/22   Entered 03/19/22 13:56:36   Page 25 of 28

rejected this contention, upholding "the daily fine of $500,000" because it properly "was intended to strongly encourage defendant to purge himself of the contempt, which, despite being permitted two months to accomplish, he has shown no interest in doing." *Id.* Kwok's argument ignores that civil contempt fines are permissible *either* to compensate the injured party *or* to "coerce[] the recalcitrant party into compliance with a court order," and that the First Department already upheld the fine on the basis of this second purpose. *Ruesch v. Ruesch*, 106 A.D.3d 976, 977 (2d Dep't 2013).

### b.     The Penalty Properly Began to Accrue on May 15, 2021

The First Department's decision likewise disposes of Kwok's second argument, which asserts, without basis, that the fine could not properly begin to accrue on the date specified in the conditional contempt order.[69] Kwok cites no authority for this; indeed, such a rule would be nonsensical, since it is beyond dispute that this Court is authorized to impose a fine of the appropriate amount on the date of the final adjudication, and the conditional contempt order simply provided notice to Kwok regarding the amount of the fine he faced in the event of his noncompliance. In any event, as explained above, the First Department has already upheld the "fine of $500,000 for every day after May 15, 2021 in which [the Lady May] remains outside the court's jurisdiction." *See Pac. All.*, 199 A.D.3d at 423. Kwok cannot overcome this square ruling by the First Department rejecting his contention.

### c.     The Fine Is Not an Unconstitutional Penalty

Finally, Kwok complains that the "accrued fine at issue is so large" that it is unconstitutional.[70] This argument – which Kwok could have but did not raise on appeal – is

---

[69] Def.'s Br. at 17.
[70] *Id.*

unavailing.  Kwok's position hinges entirely on recharacterizing the civil contempt fine as a criminal sanction; yet it has none of the characteristics that caused the Supreme Court in *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994), to conclude that certain challenged fines were criminal rather than civil in nature.  In *International Union*, the Court relied on the fact that the "sanctionable conduct did not . . . implicate the court's ability to maintain order and adjudicate the proceedings before it," and that the sanctioned party's "contumacy [did not] involve simple, affirmative acts" but rather "widespread, ongoing . . . violations of a complex injunction," such that the court "effectively policed . . . compliance with an entire code of conduct that the court itself had imposed." 512 U.S. at 837.  Here, by contrast, Kwok's noncompliance both thwarted this Court's ability to maintain order and adjudicate this case, and involved the violation of a simple, unmistakable directive.  Because the contempt fine at issue here is civil, not criminal, in nature, Kwok's constitutional argument fails.

In any event, it is beyond dispute that the amount of the fine could have been zero had the Lady May been returned to this Court's jurisdiction by May 15, 2021.  If the Court determines Kwok does not control the yacht and so did not have the ability to comply with the Court's directive, then no fine will follow.  But if, instead, the Court concludes that Kwok has a beneficial interest in the yacht such that he *was* able to comply, the amount of the fine will be entirely proper, given that it has reached its current magnitude solely due to the breathtaking extent of Kwok's willful noncompliance.

## CONCLUSION

Kwok has flagrantly violated this Court's October 15, 2020 restraining order, and willfully failed and refused to return the Yacht to New York by May 15, 2021.  Enough is enough.  The Court should enter a final order of civil contempt against Kwok.

DATED:  February 1, 2022
New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP

By: */s/ Stuart Sarnoff*
Stuart Sarnoff (ssarnoff@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

*Attorneys for Plaintiff Pacific Alliance
Asia Opportunity Fund L.P.*

22

## CERTIFICATION OF WORD COUNT

I hereby certify that this document complies with the word count provisions of

Commercial Division Rule 17.  This memorandum of law was prepared using Microsoft Word,

and the total number of words in this memorandum of law, exclusive of the caption, title, and

signature block is less than 7,000 words.


DATED:  February 1, 2022        By: */s/ Stuart Sarnoff*
New York, New York          O'MELVENY & MYERS LLP
                           Stuart Sarnoff (ssarnoff@omm.com)
                           7 Times Square
                           New York, NY 10036
                           (212) 326-2000

                           *Attorneys for Plaintiff Pacific Alliance*
                           *Asia Opportunity Fund L.P.*

23