**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------------X
                                          :
In re:                                    :  Chapter 11
                                          :
    Ho Wan Kwok,                          :  Case No. 22-50073 (JAM)
                                          :
                                          :  Date:
           Debtor.[1]                 :  Time:
                                          :
---------------------------------------------------------------------X

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL DIP ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN UNSECURED, SUBORDINATED POSTPETITION FINANCING AND (II) SCHEDULING INTERIM AND FINAL HEARINGS, AND (III) GRANTING RELATED RELIEF

Mr. Ho Wan Kwok, the debtor and debtor-in-possession ("Mr. Kwok" or the "Debtor") in the above-captioned chapter 11 case, by and through his undersigned counsel, hereby files this motion (the "Motion"), for entry of an interim order substantially in the form attached hereto as Exhibit A (the "Interim DIP Order") and a final order in the form attached hereto as Exhibit B (the "Final DIP Order," and together with the Interim DIP Order, the "DIP Orders") granting the relief described below. In support of this Motion, the Debtor submits and incorporates (i) the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions* (the "Kwok Declaration") [Docket No. 107]; (ii) a version of *Appendix H – Checklist for Motions and Orders Pertaining to the Use of Cash Collateral and Post-Petition Financing*, as required by Local Bankruptcy Rule 4001-3, attached as Exhibit C hereto; and (iii) a copy of the proposed *Debtor-In-Possession Credit Agreement* (the "DIP Loan Agreement"), attached as Exhibit D hereto.  In further support of the Motion, Mr. Kwok states as follows:

---

[1]    The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

## PRELIMINARY STATEMENT

1.    The Debtor herein seeks approval of eight million dollars ($8,000,000) in postpetition financing.  The proposed financing is structured on an unsecured basis, subordinated to the claims of the Debtor's prepetition creditors, and without any administrative or other priority repayment rights.  In effect, the loan is proposed to be repaid if and only if all allowed claims of the Debtor's creditors are paid in full or otherwise satisfied pursuant to the terms of a plan.

2.    The proposed lender, Golden Spring (New York) Ltd. (the "DIP Lender"), is an entity owned and controlled by the Debtor's son.  Having considered the circumstances, the Debtor requested, and the DIP Lender agreed, that the DIP Financing would be for the benefit of all estate professionals, without imposing any lien or priority rights that could potentially prejudice the interests of the Debtor's creditors.  An additional condition of the loan is that the Debtor's proposed financial advisor, Verdolino & Lowey, P.C. ("V&L"), shall take receipt of the loan proceeds and shall be the sole authorized signatory for disbursement of funds in accordance with the Budget.

3.    The Debtor believes that the proposed financing is on the best terms available. Given these generous terms, the Debtor believes that any attempt to obtain financing from another source on competitive terms would be a waste of resources and futile, and as discussed below, the ordinary postpetition financing provisions of the Bankruptcy Code do not expressly apply.  The Debtor further believes that the proposed financing is being extended in good faith, does not prejudice any of his creditors rights or interests, is in the best interests of his estate, and should therefore be approved.

## RELIEF REQUESTED

4.      By this Motion, pursuant to sections 105, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-3, 9006-1, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), Mr. Kwok seeks the entry of the Interim DIP Order authorizing him to obtain postpetition financing on a very limited basis as set forth herein.

5.      In addition, Mr. Kwok requests that the Court schedule a final hearing (the "Final Hearing") to consider the relief requested herein on a final basis and entry of the Final DIP Order.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

6.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended).  This is a core proceeding under 28 U.S.C. § 157(b). Venue of this Chapter 11 Case and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein are sections 105(a), 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rules 2002-1, 4001-3, 9006-1, and 9013-1.

## BACKGROUND

8.      On February 15, 2022 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code.

9.    The Debtor is a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

10.    No trustee or examiner has been appointed in this Chapter 11 Case. On March 21, 2022, the Office of the United States Trustee for the District of Connecticut (the "U.S. Trustee") appointed the official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

11.    The Debtor's general background is provided in the Kwok Declaration and incorporated herein.  He is an outspoken Chinese political dissident and a prominent Chinese pro-democracy activist.  Over the years, he has amassed a following on various digital and media platforms where he shares his personal views and opinions concerning the People's Republic of China (the "PRC") and other world affairs.  His views and opinions on the Chinese Communist Party (the "CCP"), as the ruling party of the PRC, have been influenced by his living through the Tiananmen Square Massacre of 1989, his subsequent imprisonment in China following political activism against CCP officials, and his direct knowledge of and personal experiences involving high-level CCP corruption.  He currently lives in the United States, where his asylum application remains pending.

12.    The Debtor is a named party as a plaintiff, defendant or co-defendant in over 30 active cases pending all over the world, including the United States, the United Kingdom, the British Virgin Islands, and Canada – the majority of these suits remain active here in the United States. *See* SOFA [ECF No. 77].  Prepetition, the Debtor was actively prosecuting several litigations, two of which now comprise some of the estate's more significant assets:

    a.   **The UBS Claim**: Before the Royal Courts of Justice in the United Kingdom, the Debtor (along with certain co-plaintiffs) asserted a claim against UBS AG (London Branch) ("UBS").  In this action, the claimants assert more than $500 million of damages related to negligent misrepresentation and advice by UBS in connection with the Debtor's attempt to cause the acquisition of, and acquire certain shares issued by, a Chinese financial institution, Haitong, in 2015.  As recently as February 9, 2022, the Debtor prevailed on a jurisdictional challenge and the claim remains before the courts of the United Kingdom.

    b.   **The Clark Hill Claim**: The Debtor asserted claims against the law firm Clark Hill PLC and one of its members, Thomas K. Ragland (together, "Clark Hill").  This lawsuit is currently pending in the United States District Court for the District of Columbia.  The Debtor is seeking $50 million in compensatory damages, and additional punitive damages, against Clark Hill for breach of duties of legal representation.

*See* Kwok Declaration at Section III, ¶ 32.

13.    Prior to the Petition Date, the Debtor's son funded his legal fees to prosecute these litigation claims, through loan advances to be repaid from anticipated recoveries.

### EFFORTS TO OBTAIN FINANCING, GOOD FAITH

14.    The Debtor filed for Chapter 11 relief to: (a) create a single forum to orderly address the various competing claims asserted against him; (b) afford stakeholders an efficient opportunity to investigate his assets, liabilities, and financial affairs; (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims; and, to (d) reach consensus with his creditors on a fair and equitable resolution of claims and distribution of assets pursuant to a Chapter 11 plan.

15.    For the Debtor to conduct his Chapter 11 case, he requires financing for, among other budgeted items, the retention and employment of estate professionals.  Accordingly, after the Petition Date, the Debtor asked his son to extend additional credit to that end.

16.    In requesting such financing, the Debtor was mindful that certain parties have already opposed, and may continue to oppose, both specific relief requested in this Motion and

the Debtor's broader attempts to restructure his finances through this Chapter 11 case.  Having no desire to further impose on the rights of his creditors to any assets of the estate, the Debtor requested that any financing be on terms that could not prejudice the interests of his creditors or raise suspicion of impropriety.  The key terms of the Debtor's request, subject to certain exceptions set forth herein, were that: (i) the financing be on a fully unsecured basis; (ii) the financing be subordinated in priority to the claims of all prepetition creditors; and (iii) the loan proceeds be held and administered solely by a third-party professional with significant experience in Chapter 11 restructuring, subject to a budget.

17.     The DIP Lender, an entity controlled by the Debtor's son, has agreed to extend the DIP Financing, on the terms requested by the Debtor and as described in further detail below. The Debtor reasonably believes that he has no other prospects or sources to fund this Chapter 11 Case; indeed, the terms of the financing to be extended are so unusually generous that pursuit of financing from any alternative source would waste the Debtor's resources. No DIP Loan proceeds will be used to pay or reimburse the DIP Lender for any costs, expenses, or indemnification in connection with the DIP Facility.  Accordingly, the Debtor submits that the loan is offered in good faith and that the relief requested is in the best interest of his Chapter 11 estate, his creditors, and other parties in interest.

## SUMMARY OF FINANCING TERMS

18.     Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-3 require that a motion for authority to obtain postpetition financing summarize, and set out the location within the relevant documents, all material provisions of the proposed DIP Loan Agreement and form of order, including the interest rate, maturity, events of default, liens, borrowing limits and borrowing conditions. The principal terms of the DIP Facility are as follows:

| Summary and Material Terms | | |
|---|---|---|
| *Borrower* | Mr. Ho Wan Kwok | Introduction and Recitals, p. 1 |
| *DIP Lender* | Golden Spring (New York) Ltd. | Introduction and Recitals, p. 1 |
| *Commitment* | A term loan facility in an aggregate principal amount of US$8,000,000 (the "DIP Loan," and together with all other obligations under the DIP facility, the "DIP Loan Obligations;" such DIP facility, the "DIP Facility"). | Recital B, p. 1 |
| *Availability and Funding Conditions* | The DIP Loan shall be made, upon entry of the Interim DIP Loan in an initial amount of US$2,000,000 (the "Interim DIP Loan") and, upon entry of the Final DIP Order, up to three subsequent advances each in the amount of US$2,000,000 upon request (each a "Subsequent DIP Loan").<br><br>The DIP Facility and the advancing of the Interim DIP Loan shall be conditioned upon the satisfaction of the following conditions:<br><br>(a) Each DIP Loan Document shall be in form and substance reasonably satisfactory to the DIP Lender, and shall have been duly executed by the Debtor and any other necessary parties and delivered to the DIP Lender;<br><br>(b) The Interim DIP Order shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the DIP Lender in its sole and absolute discretion;<br><br>(c) The DIP Lender shall have received the Initial Budget;<br><br>(d) The Debtor Account shall have been established; and<br><br>(e) No Event of Default shall have occurred and be continuing or result after giving effect to the making of such DIP Loan. | 2.01, 3.01, 3.02 |

The obligation of the DIP Lender to make any Subsequent DIP Loan is subject to satisfaction or waiver of the following conditions:

(a) Entry of the Final DIP Order, which, together with the Interim DIP Order, shall remain in full force and effect, and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the DIP Lender in its sole and absolute discretion

(b) No Event of Default shall have occurred and be continuing or result from such Subsequent Funding; and

(c) The aggregate principal amount of all DIP Loans then outstanding shall and after giving effect to the making of such Subsequent DIP Loan shall not exceed the DIP Commitment.

In accordance with the terms of the DIP Facility, upon the occurrence of an Event of Default, the DIP Lender shall be obligated to fund an additional DIP Loan in an amount sufficient to the Professional Fees Escrow, subject to satisfaction of the following conditions:

(a) The DIP Orders shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b) An Event of Default shall have occurred and be continuing;

(c) The proceeds of the Interim DIP Loan and each Subsequent DIP Loan shall be insufficient to fund the Professional Fees Escrow in accordance with Section 8.02; and

(d) The aggregate principal amount of all DIP Loans then outstanding and after giving effect to the making of the Escrow Funding Loan shall not exceed the DIP Commitment.

| | | |
|---|---|---|
| *Budget / Use of Proceeds* | No proceeds of the DIP Loan shall be used to fund the fees of the DIP Lender. The Debtor's administrative expenses, including professional fees of the Debtor, any official creditors committee, or any examiner (if appointed), the quarterly fees of the United States Trustee and the fees of the Bankruptcy Court, provided that the aggregate disbursements for payment of: (i) the Debtor's professional fees shall not exceed US$4,000,000; and (ii) any official creditors committee, or any examiner (if appointed), the quarterly fees of the United States Trustee and the fees of the Bankruptcy Court, collectively, shall not exceed US$4,000,000; *provided, however*, that the proceeds of the Interim DIP Loan shall only be used to pay the administrative expenses of ordinary course professionals of the Debtor (which shall exclude, for the avoidance of doubt, Brown Rudnick LLP, V&L, and Stretto, Inc.) and, until entry of the Final DIP Order, may not be used to pay the expenses of professionals of the Debtor other than ordinary course professionals (collectively, the "<u>Permitted Payments</u>").<br><br>The DIP Lender shall be entitled to remittance of certain funds upon an Event of Default (see below).<br><br>On the first day of each calendar month, commencing on May 1, 2022, the Debtor shall deliver to the DIP Lender an updated budget, setting forth in reasonable detail, the projected Permitted Payments for the six-month period commencing with the date such budget is delivered. Each budget delivered by the Debtor shall be presumed acceptable to the DIP Lender unless the DIP Lender objects to such updated budget in writing within three (3) days following delivery thereof. Estate professionals (including, but not limited to, professionals retained by the Debtor, any official committee, and/or any examiner) shall provide weekly fee accrual reports to the DIP Lender in accordance with the terms of the Interim DIP Order. | 2.04, 5.01 8.02 Interim Order, ¶¶ 7,8 Final Order, ¶. 9. |
| *Purpose* | The proceeds of any DIP Loan shall be used to fund the Debtor's administrative expenses (including the fees of the Debtor's retained professionals) and other costs related to the Chapter 11 Case. Ordinary living expenses of the Debtor will not be funded by the DIP Facility. | 2.04 |

| | | |
|---|---|---|
| *Term and Maturity* | The earliest of (i) eighteen months after the Closing Date, (ii) the effective date of any plan of reorganization of the Debtor, and (iii) the acceleration of the DIP Loan Obligations pursuant to an event of default. | Definition, p. 3 2.01 8.01 8.02 |
| *Interest Rate* | 5.0% per annum, capitalized quarterly on the last day of each quarter.  Additional 2.0% interest on amounts not paid when due. | 2.02 2.03 |
| *Security and Priority* | All DIP Obligations will be unsecured and subordinated in right to payment of the claims of all other creditors of the Debtor existing as of the Petition Date, with the sole exception that upon a finding of an Event of Default or violation of the DIP Orders upon notice and hearing, the DIP Lender shall have an allowed superpriority claim in the amount of any Proceeds then held by the Debtor, and the Debtor shall be authorized to remit all such Proceeds, less the Carve-Out, to the DIP Lender. | Recital B, p. 1, 8.02(b), Interim Order, ¶ 8 Final Order, ¶. 9. |
| *Fees, Expenses, and Indemnification* | The Debtor shall reimburse the DIP Lender only for Out-of-Pocket Expenses (including reasonable fees, disbursement and other charges of counsel) in connection with monitoring the Debtor's compliance with the terms of the DIP Loan Agreement (the "<u>DIP Lender's Fees</u>"), which the Debtor shall pay in-kind by capitalizing as principal.  The Debtor shall indemnify and hold harmless the DIP Lender, and the officers, directors, members, managers, employees, attorneys and agents of the DIP Lender (each an "<u>Indemnified Party</u>") from, and holds each of them harmless against, any and all losses, liabilities, obligations, claims, actions, damages, costs and expenses (including reasonable attorney's fees) insofar as such losses, liabilities, obligations, claims, actions, damages, costs, fees or expenses are with respect to the DIP Loan and DIP Loan Documents, except and to the extent that the same results solely and directly from the gross negligence or willful misconduct of such Indemnified Party. | Definitions, p. 3 7.01 |
| *Events of Default* | (a) default in due and punctual payment of principal or other amounts due; (b)-(d) breach of covenants, warranties or other DIP Loan Document provisions (including, *e.g.*, compliance with budget and reporting requirements, milestones, validity of obligations, and other terms of the Agreement); | 8.01 |

| | | |
|---|---|---|
| | (e) the Bankruptcy Court shall enter an order granting relief from the automatic stay in connection with *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup.) (the "PAX Litigation"), and/or the United States District Court for the Southern District of New York shall deny a motion to transfer venue of the PAX Litigation;<br><br>(f) without consent of the DIP Lender, the Chapter 11 Case is dismissed or converted to a case under chapter 7 of Title 11, or the Debtor shall file a motion or other pleading seeking such dismissal or conversion;<br><br>(g) there shall be appointed a chapter 11 trustee, or the Debtor shall file a motion or other pleading seeking such appointment; and<br><br>(h) the Bankruptcy Court shall terminate the Debtor's exclusive right to file a plan of reorganization pursuant to section 1121(b) of the Bankruptcy Code. | |
| *Milestones* | Not later than forty-five (45) days after filing the Motion, the Bankruptcy Court shall have entered the Final DIP Order. | 6.01 |
| *Effect on Existing Liens, Determinations Thereon* | Not applicable | |
| *Carve-out* | Budgeted estate professional fees and expenses shall be placed in escrow on a rolling basis for payment to Professional Persons.  Upon an event of default or violation of the DIP Orders, amounts escrowed plus $500,000 may be used to satisfy allowed professional claims. | Final Order ¶. 8. |
| *Cross-collateralization* | Not applicable | |
| *Payments of Pre-Petition Debt* | Not applicable | |
| *Equities of the Case, 506(c)* | Not applicable | |

| *Other Conditions* | No provision of the DIP Facility limits the DIP Lender's obligations based upon the filing of any challenge, entry of any order concerning the automatic stay, or any other condition stated in Rule 4001(c) or Local Rule 4001-3(a)(7). | |
| *Joint Liability of Debtors* | Not applicable | |
| *Funding of Non-Debtor Affiliates* | Not applicable | |
| *Effect on nonbankruptcy law, litigation* | Not applicable | |

## **BASIS FOR RELIEF**

19.     The Court should authorize Mr. Kwok, as an exercise of his sound business judgment, to obtain and enter into the DIP Financing as set forth herein.  Although the financing terms are so generous that it is not clear which provision of the Bankruptcy Code authorizes the Court to approve it or provides a standard of cause for approval, the financing is clearly in the best interests of the estate and the Debtor and his creditors.

20.     The Debtor's request for financing approval is likely subject to the standards for approval of transactions set forth in sections 363 and/or 364 of the Bankruptcy Code.

21.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain unsecured credit "as an administrative expense" either in the ordinary course or otherwise.  11 U.S.C. § 364(a)-(b).  Likewise, section 364 permits the Court to authorize the obtaining of secured and superpriority postpetition financing.  *Id.* § 364(c)-(d).  However, although postpetition financing is procured through section 364 in nearly every instance in chapter 11 practice, no provision of section 364 addresses a request for postpetition financing that is neither secured nor entitled to priority (much less, as here, subordinated to the claims of prepetition creditors).

22.     Accordingly, it is not clear that section 364 applies to the present request for postpetition financing.  As discussed below, the request may be more appropriately subject to section 363, governing "use, [sale], or lease" of property in the estate, in that the Debtor is simply incurring a liability that may ultimately require a use of estate property in satisfaction thereof, and the Debtor is requesting authority to use the loan proceeds as specified in the Budget and described herein.  *See* 11 U.S.C. § 363(b).

23.     Additionally, section 105(a) of the Bankruptcy Code allows the Court to "issue any order…that is necessary or appropriate to carry out the provisions of this title."  Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."  *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (*en banc*).  The powers granted to the Court under section 105 are broadly designed to address relief of the type requested here—*i.e.*, relief so atypically generous to a debtor and his creditors that Congress did not draft the Bankruptcy Code with the expectation that it might ever occur.

24.     Under the circumstances of the financing proposed, and given the broad powers of the Court, the Debtor believes that the permissive standard of section 363 should apply and deference should be given to the Debtor's business judgment.  Regardless, as further provided herein, the proposed financing satisfies any applicable standard.

## I.     The Court Should Approve the Proposed Financing as an Exercise of the Debtor's Business Judgment.

25.     A debtor should be authorized to use, sell or lease assets outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code and prior to obtaining a confirmed plan of reorganization if it demonstrates a sound business purpose for doing so.  *See*, *e.g.*,

*Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *see*, *e.g.*, *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983).

26.     Here, the Debtor has a clear business justification for entering into the proposed financing and undertaking related uses of estate property.  The Debtor requires financing to, among other things, maximize value of the estate by employing ordinary course professionals to liquidate the Debtor's litigation assets, and restructuring professionals to negotiate and pursue confirmation of a plan of reorganization.  These actions are not possible without financing, and it is not reasonable to imagine that any financing might be arranged on more preferable terms.

27.     Once a court has determined there is a sound business justification for a use of property outside of a plan, the court must also determine that (a) the debtor has provided the interested parties with adequate and reasonable notice, (b) the terms are fair and reasonable, and (c) the counterparty is proceeding in good faith. *See In re Gen. Motors Corp.*, 407 B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009); *In re Betty Owens Sch.*, No. 96 Civ. 3576 (PKL), 1997 U.S. Dist. LEXIS 5877, at *14 (S.D.N.Y. Apr. 16, 1997); *Polvay v. B.O. Acquisitions, Inc. (In re Betty Owens Sch., Inc.)*, No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997).

28.     This Motion is being noticed to the Debtor's most significant creditors and the matter will be considered at the hearing thereon; accordingly, the Debtor submits that adequate and reasonable notice is being provided.  Likewise and again, it cannot be reasonably asserted that the terms of financing offered are not fair and reasonable; indeed, the terms are deliberately generous so as to provide assurance to the Debtor's creditors that their interests will not be

prejudiced by the Debtor's financing of this Chapter 11 case.  The Debtor believes that the generous terms offered by the DIP Lender demonstrate ample good faith.

**II.    Even Under the Strict Section 364 Standard,**
**    Postpetition Financing Should Be Approved.**

29.    Under the stricter standards of section 364(c), applicable where a debtor seeks to impose liens on property and thus potentially prejudice recoveries for prepetition unsecured creditors, bankruptcy courts still provide debtors considerable deference in acting in accordance with their sound business judgment in obtaining such credit.  *See In re Barbara K. Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

30.    Although not applicable in this instance, courts have articulated a three-part test to determine whether a debtor-in-possession is entitled to secured financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

a.    the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, *i.e.*, by allowing a lender only an administrative claim;

b.    the credit transaction is necessary to preserve the assets of the estate; and

c.    the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*See In re Ames Dep't Stores*, 115 B.R. at 37–40; *In re Los Angeles Dodgers, LLC*, 457 Bankr. 308, 312-13 (Bankr. D. Del. 2011).

31.     Here, the first prong of the test is not applicable, as the Debtor seeks approval of unsecured, subordinated financing, subject to the limited exceptions set forth herein.

32.     Again notwithstanding the strict inapplicability of the 364(c) test, the Debtor asserts that this stricter test is easily satisfied under the circumstances of this Chapter 11 Case.

### A.  The DIP Financing Is Necessary to Preserve Estate Assets and Liquidate the Debtor's Liabilities.

33.     As debtor-in-possession, the Debtor has a fiduciary duty to protect and maximize the value of his chapter 11 estate.  *See, e.g.*, *In re Ames Dept. Stores*, 115 Bankr.. at 38 (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (holding that a debtor-in-possession enjoys the powers that would otherwise vest in the bankruptcy trustee, which include, inter alia, a "trustee's fiduciary duty to maximize the value of the bankruptcy estate.") (internal citation and quotations marks omitted).

34.     Here, as discussed above, the assets of the estate are primarily the litigation claims brought by the Debtor, and the Debtor's liabilities are primarily litigation claims as well. The Debtor requires access to postpetition financing to continue his litigation, potentially to judgment, for the benefit of his creditors.  Likewise, the Debtor requires financing to negotiate and achieve confirmation of a plan of reorganization.  Without access to the DIP Financing, the Debtor will be unable to retain and compensate the attorneys currently prosecuting his litigation assets, and liabilities may similarly increase if the Debtor is unable to defend, settle, and/or litigate claims brought against him (either within this proceeding or, if stay relief is granted, in

other venues). Thus, the Debtor's Chapter 11 estate may suffer immediate and irreparable harm if the DIP Financing is not granted.

### B. The Loan Terms Are More than Fair, and the Debtor Cannot Obtain DIP Financing On More Favorable Terms.

35. To satisfy the requirements of section 364(c) of the Bankruptcy Code, courts generally require "only a showing of reasonable effort" by a debtor to establish that credit was not available to a debtor on an unsecured or administrative expense basis. *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010); *see also In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[A] debtor must show that it has made a reasonable effort to seek other sources of credit available under section 364(a) & (b).") (collecting cases); *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (applying a "good faith effort" standard to determine whether credit was not available to appointed trustee on less favorable terms). Under the "reasonable effort" standard, courts recognize that section 364(c) "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Republic Airways Holdings Inc.*, 16-10429(SHL), 2016 WL 2616717, at *10 (Bankr. S.D.N.Y. May 4, 2016) ("The debtor is not required to 'seek credit from every possible source' but rather must demonstrate 'that it has made a reasonable effort to seek other sources of credit available under section 364(a) and (b).'") (collecting cases) (internal citations and quotations marks omitted); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992) (*citing In re Snowshoe*).

36. Here, of course, the Debtor has obtained credit on an unsecured basis. Notwithstanding, even construing the 364(c) requirement as a requirement to seek competitive financing terms, the Debtor asserts that any such requirement is unwarranted. Terms such as

those proposed here—unsecured, subordinated, low-interest rates—are virtually unheard of in Chapter 11 practice.  The Debtor respectfully submits that any effort to procure alternative financing on competitive terms would be a waste of estate resources.

### III.    The DIP Lender Should Be Deemed a Good Faith Lender.

37.    Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.  Although it is not clear that section 364 necessarily applies, the Debtor requests that analogous protections be afforded to the DIP Lender in this instance, if appropriate through the Court's powers under section 105(a).

38.    Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

39.    Although the term "good faith" is not defined in the Bankruptcy Code, courts often look to case law under section 363(m). 7 Collier on Bankruptcy, 16th ed. ¶ 364.08, p. 37 ("Section 364(e) is consistent with section 363(m), which provides similar protection to a buyer or lessee of property of the estate in a section 363 transaction."). Some courts interpret the term as "the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders*." In re Pan Am Corp.*, No. 91 CIV. 8319 (LMM), 1992 WL 154200, at *4 (S.D.N.Y. June 18, 1992) (*citing In re Rock Indus. Mach. Corp.*, 572 F.2d

1195, 1198 (7th Cir. 1978)); *accord In re Gen. Growth Props., Inc.*, 423 B.R. 716, 722 (S.D.N.Y. 2010).

40.     Here, again, the Debtor believes that the DIP Facility embodies the most favorable terms on which he could obtain debtor-in-possession financing. The terms and conditions of the DIP Financing are fair and reasonable, and purposefully designed to avoid prejudice to the interests of any creditor. The proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code, in accordance with the DIP Loan Documents and the DIP Budget, and administered by experienced restructuring professionals. Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section

## REQUEST FOR HEARING AND AUTHORITY
## FOR INTERIM BORROWING UNDER THE DIP FACILITY

41.     Rule 4001(c) of the Bankruptcy Rules provides that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Fed. R. Bankr. P. 4001(c).  Upon request, however, this Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  *See* Local Rule 9013-2 (providing that any request for (i) entry of an order with less than seven (7) days' notice and (ii) prior to the earlier of the creditor's committee formation meeting or the Section 341 Creditors' Meeting, "shall be confined to matters required to avoid irreparable harm to the assets of the estate and to maintain ongoing business operations and such other matters as the Court may deem appropriate.").

42.     In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions set forth above.

43.     Pursuant to Rule 4001(c) of the Bankruptcy Rules and Rule 9013-2 of the Local Rules, the Debtor respectfully requests that this Court conduct a preliminary hearing on the Motion and authorize the Debtor from the entry of the Interim DIP Order until the Final Hearing to obtain access to the US$2 million in proceeds of the Interim DIP Loan upon the date of entry of the Interim DIP Order to avoid immediate and irreparable harm to the Debtor's estates pending a final hearing on the Motion.

44.     As more fully set forth in the Kwok Declaration, unless the DIP Facility—limited only to the Interim DIP Loan—is approved on an interim basis as requested, the Debtor does not have sufficient liquidity (nor any material assets) to retain his prepetition attorneys and advisors prosecuting his litigation claims against UBS and Clark Hill and other pending litigations claims representing the estate's more significant assets—assets which may be necessary to formulate and potentially confirm a plan of reorganization.  If the Debtor does not have immediate access to funding to ensure the continued services of these prepetition advisors, then their collective knowledge, expertise, and familiarity in connection with their prepetition work may be lost and this Chapter 11 estate will incur substantial additional and unnecessary expenses in educating and retaining replacement professionals necessary to preserve and continue prosecuting these valuable litigation claims.  Thus, if the DIP Facility is not approved on an interim basis in the limited fashion set forth herein, then the Chapter 11 estate will be negatively impacted.

## REQUEST FOR A FINAL HEARING

45.    Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing as soon as practicable, and fix a date and time prior to the Final Hearing for parties to file objections to approval of the Motion and entry of a Final DIP Order.

## NOTICE

46.    Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) each of the Debtor's 20 largest unsecured creditors; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the District of Connecticut; (v) the proposed DIP Lender; (vi) the official committee of unsecured creditors; and (vii) any such other party entitled to receive notice pursuant to Local Rule 2002. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

47.    No previous request for the relief sought herein has been made by the Debtor to this or any other court.

*"**Concluded on following page**"*

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests the entry of the Interim DIP Order, substantially in the form submitted herewith, (a) authorizing him to obtain the DIP Financing from the DIP Lender pursuant to the DIP Loan Agreement, (b) setting the Final Hearing on the Motion and entry of the Final DIP Order, and (c) granting the Debtor such other and further relief as the Court deems just and proper.

Dated: March 22, 2022

**BROWN RUDNICK LLP**

By: /s/ *William R. Baldiga*
BROWN RUDNICK LLP
185 Asylum Street
Hartford, CT 06103
Attn: Dylan Kletter, Esq.
Telephone:  (860) 509-6500
Facsimile:  (860) 509-6653
Email: dkletter@brownrudnick.com

Seven Times Square
New York, NY 10036
Attn: William R. Baldiga, Esq. (*pro hac* pending)
Attn: Bennett S. Silverberg, Esq. (*pro hac* pending)
Attn: Uriel Pinelo, Esq. (*pro hac* pending)
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email: wbaldiga@brownrudnick.com
        bsilverberg@brownrudnick.com
        upinelo@brownrudnick.com

**<u>EXHIBIT A</u>**

**INTERIM DIP ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------------X
                                                      :
In re:                                                :   Chapter 11
                                                      :
     Ho Wan Kwok,                                   :   Case No. 22-50073 (JAM)
                                                      :
                                                      :   Date:
                Debtor. [1]           :   Time:
                                                      :
-------------------------------------------------------------------X

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN UNSECURED,**
**SUBORDINATED POSTPETITION FINANCING, (II) SCHEDULING FINAL**
**HEARING, AND (III) GRANTING RELATED RELIEF**

Upon the motion dated March 22, 2022 (the "DIP Financing Motion")[2] of the above-captioned debtor-in-possession (the "Debtor") in the above-referenced chapter 11 case (the "Chapter 11 Case") seeking the entry of an Interim DIP Order and Final DIP Order authorizing the Debtor to obtain postpetition financing from Golden Spring (New York) Ltd. ("GSNY" or "DIP Lender"), scheduling and approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rules 2002-1, 4001-3, 9006-1, and 9013-1 of the Local Bankruptcy Rules for the District of Connecticut (the "Local Rules"), and granting related relief.

This Court having reviewed the DIP Financing Motion, the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions*, and all matters brought to the Court's attention at the interim hearing, which was held on [●], 2022 (the "Interim Hearing"); and after considering all of the pleadings filed with this Court; and after consideration of the

---

[1]    Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2]    Capitalized terms used in this Interim DIP Order, unless defined herein, shall have the meanings given such terms in the DIP Financing Motion or the DIP Loan Agreement (as hereinafter defined).

evidence presented on the record at the Interim Hearing; and the Court having found that due and sufficient notice of the DIP Financing Motion and the Interim Hearing was provided by the Debtor in accordance with Bankruptcy Rules 2002 and 4001(b)(1) and Local Rule 4001-2 and 9013-2; and it appearing that the relief requested in the DIP Financing Motion, to the extent granted by this Interim DIP Order, is fair and reasonable and in the best interests of the Debtor, his estate, creditors, and all parties-in-interest, and is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

**THE COURT HEREBY FINDS AND DETERMINES:**

A.  <u>Petition Date</u>.  On February 15, 2022 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief with this Court commencing the Chapter 11 Case.  The Debtor is a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.  <u>Other Estate Parties</u>.  No trustee or examiner has been appointed in this Chapter 11 Case. On March 21, 2022, the Office of the United States Trustee for the District of Connecticut (the "<u>U.S. Trustee</u>") appointed the official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

C.  <u>Jurisdiction; Core Proceeding; Venue</u>.  The Court has subject matter jurisdiction over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this Chapter 11 Case and the DIP Financing Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Notice</u>.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001 and Local Rule 9013-2, and the notice provided by the Debtor of the Interim Hearing and the relief requested in the DIP Financing Motion, was, under the circumstances, due and sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of this Court, and no other notice of the relief sought at the Interim Hearing was necessary or required.

E.    <u>Immediate Financing Need</u>.  An ongoing need exists for the Debtor to obtain financing of the type sought herein, to maximize the value of the estate by liquidating certain litigation claims and seeking confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code.  The Debtor is unable to obtain financing in the form of a credit facility with terms preferable to those extended by the DIP Lender.  Within the timeframe required by the need to avoid irreparable harm, the Debtor can best obtain financing in the amounts required upon the terms extended by the DIP Lender.

F.    <u>DIP Facility</u>.  The Debtor has requested that the DIP Lender establish a facility in favor of the Debtor (the "<u>DIP Facility</u>") pursuant to which the Debtor may obtain a loan (the "<u>DIP Loan</u>") through multiple advances in the aggregate principal amount of US$8,000,000; the DIP Loan shall be made, upon entry of this Interim DIP Loan, in an initial amount of US$2,000,000 (the "<u>Interim DIP Loan</u>") and, upon entry of the Final DIP Order, up to three subsequent advances each in the amount of US$2,000,000 upon request (each, a "<u>Subsequent DIP Loan</u>"); <u>provided</u> that the proceeds of such DIP Facility shall be used by the Debtor in accordance with this Interim DIP Order and the DIP Loan Documents (as hereinafter defined), solely for the purposes and amounts set forth in the Budget (as hereinafter defined).

G.    <u>Good Cause</u>.  Based upon the record presented at the Interim Hearing, it appears that good cause has been shown for the entry of this Interim DIP Order.  The entry of this Interim DIP Order will preserve the assets of the Debtor's estate for the benefit of creditors, and is in the best interests of the Debtor and his creditors.  The terms of the proposed financing appear fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

H.    <u>Good Faith</u>.  Based upon the record presented at the Interim Hearing, the DIP Loan Documents have been negotiated in good faith between the Debtor and DIP Lender. Therefore, all extensions of credit to the Debtor pursuant to the DIP Loan Documents shall be deemed to have been made by the DIP Lender in good faith within the meaning of section 364(e) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

1.    **Disposition.**  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference.  Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby reserved to the Final Hearing, without prejudice to any party-in-interest's rights to raise further objections.  This Interim DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.  The term of this Interim DIP Order and the DIP Loan Documents authorized hereunder shall expire, and the DIP Loan made pursuant to the DIP Loan Agreement shall mature and become due and payable in accordance with the terms of the DIP Loan Agreement.

2.    **Good Cause.**  The ability of the Debtor to obtain financing is vital to the estate of the Debtor and his creditors, so that the Debtor can maximize the value of his estate and confirm

a plan of reorganization.  The Debtor's estate will be irreparably harmed if this Interim DIP Order is not entered.  Good cause has, therefore, been shown for the relief sought in the DIP Financing Motion.

3.      **Good Faith.**  Based upon the pleadings and the record presented at the Interim Hearing, the DIP Loan Documents and this Interim DIP Order have been negotiated in good faith between the Debtor and the DIP Lender.  The terms of the DIP Loan Documents described in this Interim DIP Order, including, without limitation, the interest rates and fees payable pursuant to the DIP Loan Documents, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with the Debtor's fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Any DIP Loan and/or other financial accommodations made to the Debtor by the DIP Lender pursuant to this Interim DIP Order and the DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereunder.

4.      **Authorization of Borrowing.**   The Debtor's execution of the DIP Loan Documents is hereby authorized, ratified and affirmed.  Upon entry of this Interim DIP Order, the Debtor is immediately authorized to (a) execute the DIP Loan Documents; (b) obtain the Interim DIP Loan pursuant to the DIP Loan Documents; and (c) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof.  The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the Interim DIP Loan and may rely upon the Debtor's representations that the use thereof is in accordance with the requirements of this Interim DIP Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).  The Interim DIP Loan shall be due and payable, and shall be paid,

by the Debtor in accordance with the requirements of the Interim DIP Order and the DIP Loan Documents.  The Debtor is hereby authorized and directed to pay the foregoing, in accordance with the terms of the DIP Loan Documents and this Interim DIP Order, without the necessity of the Debtor or the DIP Lender filing any further application with the Court for approval or payment thereof.

5.  **Authority to Execute and Deliver Necessary Documents.**  The DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms with respect to the Interim DIP Loan.  In furtherance of the provisions of paragraph 4 of this Interim DIP Order, the Debtor is authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents to the extent required by the DIP Loan Documents, in each case as may be necessary or, in the opinion of the DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, or as otherwise required or contemplated by the DIP Loan Documents.

6.  **Amendments and Modifications.**  Upon entry of the Interim DIP Order, the Debtor and the DIP Lender shall not implement any amendments to and modifications of any of the DIP Loan Documents (in accordance with the terms of the applicable DIP Loan Documents), until such time that the DIP Financing Motion is considered at the Final Hearing and entry of the Final DIP Order.

7.  **Budget; Permitted Uses of Loan Proceeds and Cash Collateral.**

(a)  On the first day of each calendar month subsequent to the entry of this Interim DIP Order, the Debtor shall deliver to the DIP Lender and the official committee of unsecured creditors an updated budget and a report in form and substance reasonably acceptable to the DIP Lender, reporting all disbursements Debtor made for the preceding month.

(b)      On Friday of each calendar week subsequent to the entry of this Interim DIP Order, each professional firm retained by the Debtor, the official committee of unsecured creditors, any examiner then appointed, and any other party seeking payment from the Debtor's estate on an administrative priority basis shall deliver to the DIP Lender a report of fee and/or cost accruals from the preceding week.

(c)      Except as otherwise set forth in this Interim DIP Order, if applicable, the Interim DIP Loan proceeds shall be remitted to the "Debtor Account" maintained by Verdolino & Lowey, PC ("V&L"), as defined in the DIP Loan Agreement.  In no event shall the Debtor maintain any cash or other funds in any deposit account or securities or investment account other than the Debtor Account.  The Debtor may disburse amounts from the Debtor Account only at the direction of Craig Jalbert of V&L and solely to the extent necessary to pay the Permitted Payments authorized in paragraph 8(a) of this Interim DIP Order and the DIP Loan Documents

(d)      No proceeds of the Interim DIP Loan or any Subsequent DIP Loan shall be used to pay or reimburse the DIP Lender for any costs, expenses or indemnification in connection with the DIP Facility.

8.      **Fees and Expenses of Professional Persons.**

(a)      The Debtor is authorized to use proceeds of the DIP Loan solely for purposes authorized by this Interim DIP Order and by the DIP Loan Agreement, including to pay such professional compensation and expense reimbursements, administrative priority claims, court fees, and United States Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Court, as applicable (together, the "Authorized Disbursements"); provided, however, that the proceeds of the Interim DIP Loan shall only be used to pay the administrative expenses of ordinary course professionals of the Debtor (which shall exclude, for

the avoidance of doubt, Brown Rudnick LLP, V&L, and Stretto, Inc.) and, until entry of the Final DIP Order, may not be used to pay the expenses of professionals of the Debtor other than ordinary course professionals (collectively, the "Permitted Payments").

(b)     The Debtor is directed, for so long as no Carve-Out Event (as defined below) has occurred and is continuing, to deposit, when provided by the Budget, into an escrow account (the "Disbursement Escrow") maintained by V&L on behalf of the Debtor, the amounts of any Permitted Payments not yet paid (the "Pending Disbursements"). Such amounts shall remain in escrow pending authorization and payment. Notwithstanding anything to the contrary in this or any other order or the DIP Loan Documents, the Permitted Payments shall not be subject to the control of the DIP Lender unless and to the extent of any residual cash in the Disbursement Escrow after either disapproval or approval and satisfaction of all Authorized Disbursements and Pending Disbursements. So long as the DIP Lender has not delivered a notice of Carve-Out Event, the Debtor shall be authorized to fund the Disbursement Escrow in accordance with the DIP Loan Documents. Except as otherwise set forth in subparagraph (e) of this paragraph, the Debtor shall be authorized to remit payment from Disbursement Escrow from time to time (whether or not a notice of Carve-Out Event has been delivered) pursuant to procedures authorized by, or orders of, the Court.

(c)     The DIP Lender shall not have any duty to ensure that the Debtor discharges any of his obligations under subparagraphs (a) and (b) of this paragraph. Notwithstanding anything to the contrary contained in this Interim DIP Order, the rights of the DIP Lender shall be subject and subordinate to the rights of any party entitled to payment from the Debtor held in the Disbursement Escrow. Accordingly, neither the Debtor nor any of his creditors shall have any claim to or interest in the amounts on deposit in the Disbursement Escrow; provided, however,

that to the extent any Pending Disbursements or other amounts that are escrowed subsequently become disallowed or ordered to be disgorged by final order of the Court, or remain in escrow following full payment of all allowed Professional Fees and Expenses (the "Excess Escrow Funds"), such Excess Escrow Funds shall be paid over and delivered to the Debtor and applied as specified in the DIP Loan Documents and/or orders of the Court as applicable.

(d)     Nothing in this Interim DIP Order shall preclude the DIP Lender from asserting any objections to professional fees and expenses sought to be paid under the provisions of sections 330, 331 and 503 of the Bankruptcy Code.

(e)     Notwithstanding anything to the contrary in this Interim DIP Order, if a Carve-Out Event occurs, the Debtor shall not pay any further amounts into the Disbursement Escrow until such Carve-Out Event has been cured or waived in writing by the DIP Agent.

9.     **Events of Default; Remedies.**   Upon or after a written notice to the Debtor of a violation of any provision of this Interim DIP Order that in the DIP Lender's reasonable discretion has an adverse effect on the DIP Lender or the occurrence of an "Event of Default" under (and as defined in) the DIP Loan Agreement: (i) the DIP Lender shall be fully authorized, in its sole discretion, to, without providing any prior notice thereof, accelerate the DIP Loan Obligations under the DIP Loan Documents, charge interest at the default rate set forth in the DIP Loan Agreement, and subject to the following sentences, decline to issue any Subsequent DIP Loan requested by the Debtor; and (ii) following the expiration of three business days from the date of such written notice to the Debtor, the Debtor's right to use any remaining amounts received on account of the DIP Loan Obligations (the "Proceeds") pursuant to the Budget shall expire and the Debtor shall no longer, pursuant to this Interim DIP Order, the DIP Loan Documents, or otherwise, be authorized to use the Proceeds.  Thereafter, the DIP Lender may

seek a finding by this Court upon notice and a hearing that a violation of the Interim DIP Order or an Event of Default has occurred.  Upon such finding, the DIP Lender may demand and shall be entitled to immediate remittance of any Proceeds held by the Debtor less US$500,000 and excluding all amounts in the Disbursement Escrow Account (the "Carve-Out"), and DIP Lender may otherwise take any appropriate action and exercise all applicable remedies under the DIP Loan Documents and applicable law that may be necessary or deemed appropriate by the DIP Lender to collect the DIP Loan Obligations, to proceed against or realize the Proceeds as if this Chapter 11 case or any superseding Chapter 7 case were not pending and otherwise to enforce the DIP Loan Documents or this Interim DIP Order.

(b)      The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Interim DIP Order shall be in addition to and cumulative with those contained in the DIP Loan Documents, provided, however, that with the exception of the preceding sub-paragraphs authorizing remittance of Proceeds held by the Debtor upon a violation of this Interim DIP Order or an Event of Default, nothing in this Interim DIP Order shall be construed to grant any security interest or priority repayment rights to DIP Lender in respect of any DIP Loan Obligations.

10.      **Subsequent Reversal or Modification.**  Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated or stayed on appeal, that action will not affect:

(a)      the validity of any obligation, indebtedness, or liability granted or incurred by the Debtor to the DIP Lender prior to the effective date of such stay, modification, or vacation; or

(b)      the validity or enforceability of any action taken pursuant to this Interim DIP Order.

Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtor to the DIP Lender under the DIP Loan Documents prior to the effective date of such action shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, benefits, and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability.  All amounts advanced under the DIP Loan Documents are advanced in reliance upon this Interim DIP Order, and, therefore, the indebtedness resulting from such advance prior to the effective date of any stay, modification, or vacatur of this Interim DIP Order cannot be deprived of the benefit under this Interim DIP Order or the DIP Loan Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case, of the Debtor.

11.     **No Deemed Control.**  By consenting to this Interim DIP Order and extending the DIP Loan, the DIP Lender shall not be deemed to be in control of the Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute).

12.     **Successors and Assigns.**  The provisions of this Interim DIP Order shall be binding upon all parties-in-interest in the Chapter 11 case, including, without limitation, the DIP Lender, the Debtor and his respective successors and assigns, and shall inure to the benefit of the DIP Lender, the Debtor and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy Code or otherwise.  In no event shall

the DIP Lender have any obligation to make the DIP Loan at the direction of any chapter 7 or chapter 11 trustee appointed or elected for the estate of the Debtor.

13.     **Binding Nature of Agreement.**  Each of the DIP Loan Documents to which the Debtor are and will become parties shall constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms.  The DIP Loan Documents have been or shall be properly executed and delivered to the DIP Lender by the Debtor.

14.     **Priority of Terms; Budget.**

(a)     To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Interim DIP Order shall govern and control.

(b)     For the avoidance of doubt, notwithstanding anything to the contrary in this Interim DIP Order, any of the DIP Loan Documents, or any other order entered by this Court or any other court of competent jurisdiction at any time and from time to time, the Debtor shall not make any disbursements other than those set forth in the Budget.  Without limiting the foregoing, notwithstanding any relief granted in any other order entered by the Court, but subject to the terms and conditions of this Interim DIP Order, the Debtor shall not make any expenditures authorized by such orders unless, and to the extent that, such expenditures are encompassed by and expressly included in this Interim DIP Order, the DIP Loan Documents, and the Budget.

15.     **No Waiver.**  This Interim DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtor or the DIP Lender may have to bring or be heard on any matter brought before this Court.

16.    **Adequate Notice.**    The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required.  Promptly after the entry of this Interim DIP Order, the Debtor shall mail, by first class mail, a copy of this Interim DIP Order to the Notice Parties and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Interim DIP Order.

17.    **Entry of Order.**    This Interim DIP Order Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim DIP Order on the Court's docket in this Chapter 11 Case.

18.    **Final Hearing**.

(a)    The Final Hearing to consider entry of the Final DIP Order and final approval of the DIP Facility is scheduled for [●], 2022, at [●] (ET) at the United States Bankruptcy Court for the District of Connecticut.

(b)    On or before two business days after entry of this Interim DIP Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim DIP Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim DIP Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final DIP Order shall file written objections with the Clerk of the Court no later than [●] at [●] (ET), which objections shall be

served so that the same are received on or before such date by the Notice Parties and any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.

19.    **Retention of Jurisdiction.**    The Court has and will retain jurisdiction to enforce this Interim DIP Order according to its terms.

Dated:

      Bridgeport, Connecticut

                                    _____
                                      UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

## **FINAL DIP ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------------------X
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
    Ho Wan Kwok,                                          :    Case No. 22-50073 (JAM)
                                                                 :
                                                                 :    Date:
                Debtor. [1]                    :    Time:
                                                                 :
-----------------------------------------------------------------X

**FINAL ORDER (I) AUTHORIZING DEBTOR**
**TO OBTAIN UNSECURED, SUBORDINATED**
**POSTPETITION FINANCING AND (II) GRANTING RELATED RELIEF**

Upon the motion dated March 21, 2022 (the "<u>DIP Financing Motion</u>")[2] of the above-captioned debtor-in-possession (the "<u>Debtor</u>") in the above-referenced Chapter 11 case seeking the entry of an Interim DIP Order and this Final DIP Order authorizing the Debtor to obtain postpetition financing from Golden Spring (New York) Ltd. (the "<u>DIP Lender</u>"), scheduling and approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>") and Rule 4001-3 of the Local Bankruptcy Rules for the District of Connecticut (the "<u>Local Rules</u>"), and granting related relief.

This Court having reviewed the DIP Financing Motion, the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions*, and all matters brought to the Court's attention at the final hearing, which was held on [●], 2022 (the "<u>Final Hearing</u>"); and after considering all of the pleadings filed with this Court; and after consideration of the evidence presented on the record at the Final Hearing; and the Court having found that due and

---

[1]    The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2]    Capitalized terms used in this Final Order, unless defined herein, shall have the meanings given such terms in the DIP Financing Motion or the DIP Loan Agreement (as hereinafter defined).

sufficient notice of the DIP Financing Motion and the Final Hearing was provided by the Debtor in accordance with Rules 2002, 4001(b)(1), and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rules 2002-1, 4001-3, 9006-1, and 9013-1 of the Local Bankruptcy Rules for the District of Connecticut (the "Local Rules"); and it appearing that the relief requested in the DIP Financing Motion, to the extent granted by this Final Order, is fair and reasonable and in the best interests of the Debtor, his estate, creditors, and all parties-in-interest, and is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

### THE COURT HEREBY FINDS AND DETERMINES:

A.    Petition Date.  On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court commencing the Chapter 11 case.  The Debtor is a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    Other Estate Parties.  No trustee or examiner has been appointed in this Chapter 11 case. On March 21, 2022, the Office of the United States Trustee for the District of Connecticut (the "U.S. Trustee") appointed the official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

C.    Jurisdiction; Core Proceeding; Venue.  The Court has subject matter jurisdiction over the Chapter 11 case, the parties, and the Debtor's property pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Chapter 11 Case and the DIP Financing Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.   <u>Notice</u>.  The Final Hearing was held pursuant to Bankruptcy Rule 4001, and the notice provided by the Debtor of the Final Hearing and the relief requested in the Motion, was, under the circumstances, due and sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of this Court, and no other notice of the relief sought at the Final Hearing was necessary or required.

E.   <u>Financing Need</u>.  An ongoing need exists for the Debtor to obtain financing of the type sought herein, to maximize the value of the estate by liquidating certain litigation claims and seeking confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code. The Debtor is unable to obtain financing in the form of a credit facility with terms preferable to those extended by the DIP Lender.  Within the timeframe required by the need to avoid irreparable harm, the Debtor can best obtain financing in the amounts required upon the terms extended by the DIP Lender.

F.   <u>DIP Facility</u>.  The Debtor has requested that the DIP Lender establish a facility in favor of the Debtor (the "<u>DIP Facility</u>") pursuant to which the Debtor may obtain a loan (the "<u>DIP Loan</u>") through multiple advances in the aggregate principal amount of $8,000,000; <u>provided</u> that the proceeds of such DIP Facility shall be used by the Debtor in accordance with this Final Order and the DIP Loan Documents (as hereinafter defined), solely for the purposes and amounts set forth in the Budget (as hereinafter defined).

G.   <u>Good Cause</u>.  Based upon the record presented at the Final Hearing, it appears that good cause has been shown for the entry of this Final Order.  The entry of this Final Order will preserve the assets of the Debtor's estate for the benefit of creditors, and is in the best interests of the Debtor and his creditors.  The terms of the proposed financing appear fair and

reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

H.    <u>Good Faith</u>.  Based upon the record presented at the Final Hearing, the DIP Loan Documents have been negotiated in good faith between the Debtor and DIP Lender.  Therefore, all extensions of credit to the Debtor pursuant to the DIP Loan Documents shall be deemed to have been made by the DIP Lender in good faith within the meaning of section 364(e) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

1.    **<u>Disposition</u>.**  The DIP Financing Motion is hereby granted on a final basis to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference.  Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby overruled.  This Final Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.  The term of this Final Order and the DIP Loan Documents authorized hereunder shall expire, and the DIP Loan made pursuant to the DIP Loan Agreement and this Final Order shall mature and become due and payable in accordance with the terms of the DIP Loan Agreement.

2.    **<u>Good Cause</u>.**  The ability of the Debtor to obtain financing is vital to the estates of the Debtor and his creditors, so that the Debtor can maximize the value of his estate and confirm a plan of reorganization.  The Debtor's estate will be irreparably harmed if this Final Order is not entered.  Good cause has, therefore, been shown for the relief sought in the DIP Financing Motion.

3.    **<u>Good Faith</u>.**  Based upon the pleadings and the record presented at the Final Hearing, the DIP Loan Documents and this Final Order have been negotiated in good faith

between the Debtor and the DIP Lender.  The terms of the DIP Loan Documents described in this Final Order, including, without limitation, the interest rates and fees payable pursuant to the DIP Loan Documents, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with the Debtor's fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Any DIP Loan and/or other financial accommodations made to the Debtor by the DIP Lender pursuant to this Final Order and the DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereunder.

4.      **Authorization of Borrowing.**   The Debtor's execution of the DIP Loan Documents is hereby authorized, ratified and affirmed.  Upon entry of this Final Order, the Debtor is immediately authorized to (a) execute the DIP Loan Documents; (b) obtain the DIP Loan pursuant to the DIP Loan Documents and to incur any and all liabilities and obligations thereunder and to pay all interest, fees, costs, expenses (including attorneys' fees) and other obligations provided for under the DIP Loan Documents; and (c) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof.  The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the DIP Loan and may rely upon the Debtor's representations that the use thereof is in accordance with the requirements of this Final Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).  The DIP Loan shall be due and payable, and shall be paid, by the Debtor in accordance with the requirements of the Final Order and the DIP Loan Documents.  All fees, previously paid and payable, expenses, and/or costs reimbursed or reimbursable under the DIP Loan Documents, this Final Order, or otherwise by the Debtor to the DIP Lender are hereby

ratified and approved.  The Debtor is hereby authorized and directed to pay the foregoing, in accordance with the terms of the DIP Loan Documents and this Final Order, without the necessity of the Debtor or the DIP Lender filing any further application with the Court for approval or payment thereof.  Upon payment of such fees, such fees shall be deemed fully earned, indefeasibly paid, and non-refundable.

5.        **Authority to Execute and Deliver Necessary Documents.**    The DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.  In furtherance of the provisions of paragraph 4 of this Final Order, the Debtor is authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents to the extent required by the DIP Loan Documents, in each case as may be necessary or, in the opinion of the DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, or as otherwise required or contemplated by the DIP Loan Documents.

6.        **Amendments and Modifications.**    The Debtor and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any amendments to and modifications of any of the DIP Loan Documents (in accordance with the terms of the applicable DIP Loan Documents) without the need for further notice and hearing or any further order of the Court on the following conditions: (a) the amendment or modification must not constitute a material change to the terms of the DIP Loan Documents and (b) copies of the amendment or modification must be served upon counsel for the U.S. Trustee and the official committee of unsecured creditors at least one (1) business day before it is proposed to become effective.  Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.  For purposes of this paragraph, a "material change" shall

include, without limitation, a change that operates to shorten the maturity of the DIP Facility, implement any case milestones or deadlines, increase the aggregate amount of the commitments under the DIP Facility, increase the rate of interest other than as currently provided in or contemplated by the DIP Loan Documents, impose covenants or defaults on the Debtor more onerous than such covenants or defaults in the DIP Loan Documents, and/or add specific Events of Default or enlarge the nature and extent of default remedies available to the DIP Lender following an Event of Default.  For the avoidance of doubt, a waiver by the DIP Lender in writing of any covenant, condition or Event of Default under the DIP Loan Documents shall not constitute a material change.

       7.       **Budget; Permitted Uses of Loan Proceeds and Cash Collateral.**

(a)      On the first day of each calendar month subsequent to the entry of this Final Order, the Debtor shall deliver to the DIP Lender and the official committee of unsecured creditors an updated budget and a  report in form and substance reasonably acceptable to the DIP Lender, reporting all disbursements Debtor made for the preceding month.

(b)      On Friday of each calendar week subsequent to the entry of this Final Order, each professional firm retained by the Debtor, the official committee of unsecured creditors, any examiner then appointed, and any other party seeking payment from the Debtor's estate on an administrative priority basis shall deliver to the DIP Lender a report of fee and/or cost accruals from the preceding week.

(c)      Except as otherwise set forth in this Final Order, if applicable, all proceeds of the DIP Loan shall be remitted to the "Debtor Account" maintained by Verdolino & Lowey, P.C. ("V&L"), as defined in the DIP Loan Agreement.  In no event shall the Debtor maintain any cash or other funds in any deposit account or securities or investment account other than the Debtor

Account.  The Debtor may disburse amounts from the Debtor Account only at the direction of Craig Jalbert of V&L and solely to the extent necessary to pay the items authorized in this Final Order and the DIP Loan Documents.

       8.     **Fees and Expenses of Professional Persons.**

      (a)    The Debtor is authorized to use proceeds of the DIP Loan solely for purposes authorized by this Final Order and by the DIP Loan Agreement, including to pay such professional compensation and expense reimbursements, administrative priority claims, court fees, and United States Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Court, as applicable (together, the "<u>Authorized Disbursements</u>").

      (b)    The Debtor is directed, for so long as no Carve-Out Event (as defined below) has occurred and is continuing, to deposit, when provided by the Budget, into an escrow account (the "<u>Disbursement Escrow</u>") maintained by V&L on behalf of the Debtor, (i) the amounts of any Authorized Disbursements not yet paid, and (ii) the amounts of any professional compensation and expense reimbursements, administrative priority claims, court fees, and United States Trustee fees requested to be paid but not yet authorized ("<u>Pending Disbursements</u>").  Such amounts shall remain in escrow pending authorization and payment.  Notwithstanding anything to the contrary in this or any other order or the DIP Loan Documents, the Disbursement Escrow shall not be subject to the control of the DIP Lender unless and to the extent of any residual cash in the Disbursement Escrow after either disapproval or approval and satisfaction of all Authorized Disbursements and Pending Disbursements.  So long as the DIP Lender has not delivered a notice of Carve-Out Event, the Debtor shall be authorized to fund the Disbursement Escrow in accordance with the DIP Loan Documents.  Except as otherwise set forth in subparagraph (e) of this paragraph, the Debtor shall be authorized to remit payment from

Disbursement Escrow from time to time (whether or not a notice of Carve-Out Event has been delivered) pursuant to procedures authorized by, or orders of, the Court.

(c)     The DIP Lender shall not have any duty to ensure that the Debtor discharges any of his obligations under subparagraphs (a) and (b) of this paragraph.  Notwithstanding anything to the contrary contained in this Final Order, the rights of the DIP Lender shall be subject and subordinate to the rights of any party entitled to payment from the Debtor held in the Disbursement Escrow.  Accordingly, neither the Debtor nor any of his creditors shall have any claim to or interest in the amounts on deposit in the Disbursement Escrow; provided, however, that to the extent any Pending Disbursements or other amounts that are escrowed subsequently become disallowed or ordered to be disgorged by final order of the Court, or remain in escrow following full payment of all allowed Professional Fees and Expenses (the "Excess Escrow Funds"), such Excess Escrow Funds shall be paid over and delivered to the Debtor and applied as specified in the DIP Loan Documents and/or orders of the Court as applicable.

(d)     Nothing in this Final Order shall preclude the DIP Lender from asserting any objections to professional fees and expenses sought to be paid under the provisions of sections 330, 331 and 503 of the Bankruptcy Code.

(e)     Notwithstanding anything to the contrary in this Final Order, if a Carve-Out Event occurs, the Debtor shall not pay any further amounts into the Disbursement Escrow until such Carve-Out Event has been cured or waived in writing by the DIP Agent.

9.     **Events of Default; Remedies.**  Upon or after a written notice to the Debtor of a violation of any provision of this Final Order that in the DIP Lender's reasonable discretion has an adverse effect on the DIP Lender or the occurrence of an "Event of Default" under (and as defined in) the DIP Loan Agreement: (i) the DIP Lender shall be fully authorized, in their sole

discretion, to, without providing any prior notice thereof, accelerate the DIP Loan Obligations under the DIP Loan Documents, charge interest at the default rate set forth in the DIP Loan Agreement, and subject to the following sentences, decline to issue any Subsequent Funding requested by the Debtor; and (ii) following the expiration of three business days from the date of such written notice to the Debtor, the Debtor's right to use any remaining amounts received on account of the DIP Loan Obligations (the "Proceeds") pursuant to the Budget shall expire and the Debtor shall no longer, pursuant to this Final Order, the DIP Loan Documents, or otherwise, be authorized to use the Proceeds.  Thereafter, the DIP Lender may seek a finding by this Court upon notice and a hearing that a violation of the Final Order or an Event of Default has occurred. Upon such finding, the DIP Lender may demand and shall be entitled to immediate remittance of any Proceeds held by the Debtor less $500,000 and excluding all amounts in the Disbursement Escrow Account (the "Carve-Out"), and DIP Lender may otherwise take any appropriate action and exercise all applicable remedies under the DIP Loan Documents and applicable law that may be necessary or deemed appropriate by the DIP Lender to collect the DIP Loan Obligations, to proceed against or realize the Proceeds as if this Chapter 11 case or any superseding Chapter 7 case were not pending and otherwise to enforce the DIP Loan Documents or this Final Order.

(b)     The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Final Order shall be in addition to and cumulative with those contained in the DIP Loan Documents, provided, however, that with the exception of the preceding sub-paragraphs authorizing remittance of Proceeds held by the Debtor upon a violation of this Final Order or an Event of Default, nothing in this Final Order shall be construed to grant any security interest or priority repayment rights to DIP Lender in respect of any DIP Loan Obligations.

10.     **Subsequent Reversal or Modification.**  Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed on appeal, that action will not affect:

(a)     the validity of any obligation, indebtedness, or liability granted or incurred by the Debtor to the DIP Lender prior to the effective date of such stay, modification, or vacation; or

(b)     the validity or enforceability of any action taken pursuant to this Final Order.

Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtor to the DIP Lender under the DIP Loan Documents prior to the effective date of such action shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, benefits, and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability.  All amounts advanced under the DIP Loan Documents are advanced in reliance upon this Final Order, and, therefore, the indebtedness resulting from such advance prior to the effective date of any stay, modification, or vacation of this Final Order cannot be deprived of the benefit under this Final Order or the DIP Loan Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case, of the Debtor.

11.     **No Deemed Control.**  By consenting to this Final Order and extending the DIP Loan, the DIP Lender shall not be deemed to be in control of any Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute).

12.    **Successors and Assigns.**  The provisions of this Final Order shall be binding upon all parties-in-interest in the Chapter 11 case, including, without limitation, the DIP Lender, the Debtor and their respective successors and assigns, and shall inure to the benefit of the DIP Lender, the Debtor and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy Code or otherwise.  In no event shall the DIP Lender have any obligation to make the DIP Loan at the direction of any chapter 7 or chapter 11 trustee appointed or elected for the estate of any Debtor.

13.    **Binding Nature of Agreement.**  Each of the DIP Loan Documents to which the Debtor are and will become parties shall constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms.  The DIP Loan Documents have been or shall be properly executed and delivered to the DIP Lender by the Debtor.

14.    **Priority of Terms; Budget.**

(a)    To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Final Order shall govern and control.

(b)    For the avoidance of doubt, notwithstanding anything to the contrary in this Final Order, any of the DIP Loan Documents, or any other order entered by this Court or any other court of competent jurisdiction at any time and from time to time, the Debtor shall not make any disbursements other than those set forth in the Budget.  Without limiting the foregoing, notwithstanding any relief granted in any other order entered by the Court, but subject to the

terms and conditions of this Final Order, the Debtor shall not make any expenditures authorized by such orders unless, and to the extent that, such expenditures are encompassed by and expressly included in this Final Order, the DIP Loan Documents, and the Budget.

15.    **No Waiver.**    This Final Order shall be construed in any way as a waiver or relinquishment of any rights that the Debtor or the DIP Lender may have to bring or be heard on any matter brought before this Court.

16.    **Adequate Notice.**    The notice given by the Debtor of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no further notice of the request for relief granted at the Final Hearing is required.  Promptly after the entry of this Final Order, the Debtor shall mail, by first class mail, a copy of this Final Order to the Notice Parties and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Final Order.

17.    **Entry of Order.**    This Final Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in this Chapter 11 case.

Dated:

       Bridgeport, Connecticut

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

United States Bankruptcy Court
District of Connecticut
Local Rules of Bankruptcy Procedure

## Appendix H - Checklist for Motions and Orders Pertaining to the Use of Cash Collateral and Post-Petition Financing

Connecticut Local Form Checklist for Motions and Orders for Use of Cash Collateral and Post-Petition Financing (09/04/2018)

Case 22-50073    Doc 117    Filed 03/22/22    Entered 03/22/22 12:08:06    Page 54 of 70

# CHECKLIST FOR MOTIONS AND ORDERS FOR USE OF
# CASH COLLATERAL AND POST- PETITION FINANCING

This is to certify that the following checklist information reflects the substantive content of the motion and proposed order for use of cash collateral or for post-petition financing pursuant to 11 U.S.C. §§ 363 and/or 364 as indicated below:

## 1. Identification of Proceeding:

| | | Yes | No | N/A |
|---|---|---|---|---|
| a. | Preliminary motion/order | ☑ | ☐ | ☐ |
| b. | Final motion/order | ☑ | ☐ | ☐ |
| c. | Continuing use of cash collateral(§ 363) | ☐ | ☐ | ☑ |
| d. | New financing(§ 364) | ☑ | ☐ | ☐ |
| e. | Combination of§§ 363 and 364 financing | ☐ | ☑ | ☐ |
| f. | Emergency hearing (immediate and irreparable harm) | ☑ | ☐ | ☐ |

## 2. Representations:

| | | Yes | No | N/A |
|---|---|---|---|---|
| a. | Brief history of Debtor's businesses and status of Debtor's prior relationships with lender | | | |
| b. | Brief statement of purpose and necessity of financing | ☑ | ☐ | ☐ |
| c. | Brief statement oftype offinancing (i.e.) accounts receivable, inventory) | ☑ | ☐ | ☐ |
| d. | Are lender's pre-petition security interest(s) and liens deemed valid, fully perfected and non-avoidable? | ☐ | ☑ | ☐ |
| | (i) Are there provisions to allow for objections to above? | ☐ | ☐ | ☑ |
| e. | Is there a post-petition financing agreement between lender and Debtor? | ☑ | ☐ | ☐ |
| f. | If there is an agreement, are lender's post-petition security interests and liens deemed valid, fully perfected and non-avoidable? | ☐ | ☐ | ☑ |
| g. | Has lender's non-cash collateral been appraised? | ☐ | ☐ | ☑ |
| h. | Insert date of latest appraisal. | | | |
| i. | Is Debtor's proposed budget attached? | ☐ | ☑ | ☐ |
| j. | Are all pre-petition loan documents identified? | ☑ | ☐ | ☐ |
| k. | Are pre-petition liens? | ☐ | ☑ | ☐ |
| l. | Are there pre-petition guaranties of debt? | ☐ | ☑ | ☐ |

**3. Grant of Liens:**

| | | |
|---|---|---|
| a. | Do post-petition liens secure pre-petition debts? | ☐ Yes ☐ No ☑ N/A |
| b. | Is there cross-collateralization? | ☐ Yes ☐ No ☑ N/A |
| c. | Is the priority of post-petition liens equal to or higher than existing liens? | ☐ Yes ☐ No ☑ N/A |
| d. | Do post-petition liens have retroactive effect? | ☐ Yes ☐ No ☑ N/A |
| e. | Are there restrictions on granting further liens or liens of equal or higher priority? | ☐ Yes ☑ No ☐ N/A |
| f. | Is lender given liens on claims under §§ 506(c), 544-50 and §§ 522? | ☐ Yes ☐ No ☑ N/A |
| | (i) Are lender's attorney's fees to be paid? | ☑ Yes ☐ No ☐ N/A |
| | (ii) Are Debtor's attorney's fees excepted from § 506(c)? | ☐ Yes ☐ No ☑ N/A |
| g. | Is lender given liens upon proceeds of causes of action under §§ 544, 547, and 548? | ☐ Yes ☑ No ☐ N/A |

**4. Administrative Priority Claims:** ☑ Yes ☐ No ☐ N/A

| | | |
|---|---|---|
| a. | Is lender given an administrative priority? | ☐ Yes ☑ No ☐ N/A |
| b. | Is administrative priority higher than § 507(a)? | |
| c. | Is there a conversion of pre-petition secured claim to post-petition administrative claim by virtue of use of existing collateral? | ☐ Yes ☐ No ☑ N/A |

**5. Adequate Protection (§ 361):**

| | | |
|---|---|---|
| a. | Is there post-petition debt service? | ☐ Yes ☑ No ☐ N/A |
| b. | Is there a replacement/additional § 361 (1) lien? | ☐ Yes ☐ No ☑ N/A |
| c. | Is the lender's claim given super-priority? | ☐ Yes ☑ No ☐ N/A |
| d. | Are there guaranties? | ☐ Yes ☑ No ☐ N/A |
| e. | Is there adequate insurance coverage? | ☐ Yes ☐ No ☑ N/A |

**6. Waiver/Release Claims v. Lender:**

| | | |
|---|---|---|
| a. | Debtor waives or releases claims against lender, including, but not limited to, claims under §§ 506(c), 544-550, 552, and 553 of the Code? | ☐ Yes ☑ No ☐ N/A |
| b. | Does the Debtor waive defenses to claim or liens of lender? | ☐ Yes ☑ No ☐ N/A |
| c. | Is the proposed lender also the pre-petition lender? | ☑ Yes ☐ No ☐ N/A |
| d. | New post-petition lender? | ☐ Yes ☑ No ☐ N/A |
| e. | Is the lender an insider? | ☐ Yes ☑ No ☐ N/A |

**7. Modification of Stay**

    a.    Is any modified lift of stay allowed? — ☐ Yes ☑ No ☐ N/A

    b.    Will the automatic stay be lifted to permit lender to exercise self-help upon default without further order? — ☐ Yes ☑ No ☐ N/A

    c.    Are there any other remedies exercisable without further order of court? — ☐ Yes ☑ No ☐ N/A

    d.    Is there a provision that any future modification of order shall not affect status of Debtor's post-petition obligations to lender? — ☑ Yes ☐ No ☐ N/A

## 8. Creditors' Committee

    a.    Has creditors' committee been appointed? — ☐ Yes ☑ No ☐ N/A

    b.    Does creditors' committee consent? — ☐ Yes ☐ No ☑ N/A

## 9. Restrictions on Parties in Interest:

    a.    Is a plan proponent restricted in any manner, concerning modification of lender's rights, liens and/or causes? — ☐ Yes ☑ No ☐ N/A

    b.    Is the Debtor prohibited from seeking to enjoin the lender in pursuit of rights? — ☐ Yes ☑ No ☐ N/A

    c.    Is any party in interest prohibited from seeking to modify this order? — ☐ Yes ☑ No ☐ N/A

    d.    Is the entry of any order conditioned upon payment of debt to lender? — ☐ Yes ☑ No ☐ N/A

    e.    Is the order binding on subsequent trustee on conversion? — ☑ Yes ☐ No ☐ N/A

## 10. *Nunc Pro Tunc:*

    a.    Does any provision have retroactive effect? — ☐ Yes ☑ No ☐ N/A

| | | | |
|---|---|---|---|
| a. | Is shortened notice requested? | ☑Yes ☐No ☐N/A | |
| b. | Is service requested to shortened list? | ☐Yes ☑No ☐N/A | |
| c. | Is time to respond to be shortened? | ☑Yes ☐No ☐N/A | |
| d. | If final order sought, have 15 days elapsed since service of motion pursuant to FRBP 4001(b)(2)? | ☑Yes ☐No ☐N/A | |
| e. | If preliminary order sought, is cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing? | ☐Yes ☐No ☑N/A | |
| f. | Is a Certificate of Conference included? | ☐Yes ☑No ☐N/A | |
| g. | Is a Certificate of Service included? | ☑Yes ☐No ☐N/A | |
| h. | Is there verification of transmittal to U.S. Trustee included pursuant to FRBP 9034? | ☑Yes ☐No ☐N/A | |
| i. | Has an agreement been reached subsequent to filing motion? | ☐Yes ☑No ☐N/A | |
| | i. If so, has notice of the agreement been served pursuant to FRBP 4001 (d)(l)? | ☐Yes ☐No ☑N/A | |
| | ii. Is the agreement in settlement of motion pursuant to FRBP 4001 (d)(4)? | ☐Yes ☐No ☑N/A | |
| | iii. Does the motion afford reasonable notice of material provisions of the agreement pursuant to FRBP 4001(d)(4)? | ☐Yes ☐No ☑N/A | |
| | iv. Does the motion provide for opportunity for hearing pursuant to FRBP 9014? | ☐Yes ☐No ☑N/A | |

**Signed on** _____

By: _____

**EXHIBIT C**

## DEBTOR-IN-POSSESSION
## CREDIT AGREEMENT

**DEBTOR-IN-POSSESSION CREDIT AGREEMENT,** dated as of March 22, 2022 (as amended, restated, supplemented or otherwise modified from time to time, this "**Agreement**"), by and among **HO WAN KWOK (a/k/a Miles Kwok, a/k/a Miles Guo, a/k/a Wengui Guo)**, an individual, as borrower (the "**Debtor**") and **GOLDEN SPRING (NEW YORK) LTD.**, as lender hereunder ("**Lender**").

### BACKGROUND

A.    On February 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary case under Chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "**Bankruptcy Court**"), Case No. 22-50073 (JAM) (the "**Chapter 11 Case**"), and the Debtor has retained possession of his assets as debtor-in-possession.

B.    In connection with the Chapter 11 Case, the Debtor has requested that the Lender provide him with a debtor-in-possession term loan facility in an aggregate principal amount not to exceed $8,000,000.00 (the "**DIP Facility**"). All of the Debtor's obligations under the DIP Facility are to be unsecured and shall be subordinated in right to payment to the claims of all other creditors of the Debtor existing as of the Petition Date. The Lender is willing to extend such credit under the DIP Facility to the Debtor on the terms and subject to the conditions set forth herein.

C.    This Agreement and the rights and obligations of the Lender and Debtor hereunder shall be subject to approval of the Bankruptcy Court in the Chapter 11 Case pursuant to the Financing Orders (as defined herein).

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**Section 1.    DEFINITIONS**

1.01.    As used in this Agreement, the following terms shall have the meanings set forth below:

**Bankruptcy Code** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified, or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

**Bankruptcy Court** has the meaning assigned thereto in the recitals to this Agreement.

**Business Day** shall mean any day that is not Saturday, Sunday or a Legal Holiday as such term is defined in Rule 9006(a)(6) of the Federal Rules of Bankruptcy Procedure.

**Closing Date** shall mean the date that this Agreement has been duly executed by the parties hereto and delivered to each other and the conditions of Section 3.01 have been satisfied or waived.

**Closing Date DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Debtor** shall have the meaning set forth in the preamble of this Agreement.

**Debtor Account** shall mean the segregated deposit account established on the Debtor's behalf under which Craig Jalbert, of Verdolino & Lowey, PC ("**Verdolino**"), shall be the sole authorized signatory and into which the proceeds of the DIP Loans shall be deposited.

**Default** shall mean any event or condition which constitutes an Event of Default or which upon notice, lapse of time or both would, unless cured or waived, become an Event of Default.

**Default Rate** shall have the meaning assigned to such term in Section 2.03.

**DIP Commitment** shall mean the commitment of the Lender to make DIP Loans pursuant to Section 2.01 in an aggregate principal amount not to exceed $8,000,000.

**DIP Facility** shall have the meaning set forth in the recitals to this Agreement.

**DIP Loan Documents** shall mean this Agreement, the Financing Orders, and each other document, instrument and certificate executed from time to time in connection with this Agreement, as may be renewed, amended, restated, extended, increased or supplemented from time to time.

**DIP Loan Obligations** shall mean each DIP Loan, the proceeds of which have been disbursed in accordance with Section 2.04 and Section 8.02(a), and all other advances and extensions of credit made or to be made by the Lender to the Debtor, or to others for the Debtor's account, pursuant to this Agreement from time to time, including, without limitation, all PIK Interest and all Out-of-Pocket-Expenses (including all amounts capitalized pursuant to Section 7.01), whether such obligation is absolute or contingent, joint or several, matured or unmatured, direct or indirect and whether the Debtor is liable to the Lender for such indebtedness as principal, surety, endorser, guarantor or otherwise.

**DIP Loans** shall have the meaning given to such term in Section 2.01.

**Event of Default** shall have the meaning provided for in Section 8.01 of this Agreement.

**Final Financing Order** shall mean the final order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on a final basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Financing Orders** shall mean the Interim Financing Order and the Final Financing Order.

**Initial Budget** shall mean a budget agreed to by the Debtor and the Lender, setting forth in reasonable detail the projected Permitted Payments for the six-month period commencing with the month in which the Closing Date occurs.

**Interim Financing Order** shall mean the interim order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related

relief on an interim basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Maturity Date** shall mean the earliest of (i) eighteen months after the Closing Date, (ii) the effective date of any plan of reorganization of the Debtor, and (iii) the acceleration of the DIP Loan Obligations pursuant to Section 8.02.

**Out-of-Pocket Expenses** shall mean (a) all reasonable out-of-pocket expenses of DIP Lender (i) associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including reasonable fees, disbursements and other charges of counsel) and (ii) incurred by DIP Lender in connection with the Chapter 11 Case; and (b) all out-of-pocket expenses of DIP Lender (including the fees, disbursements and other charges of counsel in connection with the enforcement of the DIP Loan Documents).

**Person** shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**Permitted Payments** shall have the meaning given to such term in Section 2.04.

**Petition Date** shall have the meaning provided for in the recitals of this Agreement.

**PIK Interest** shall have the meaning given to such term in Section 2.02.

**Professional Fees Escrow** shall have the meaning given to such term in Section 8.02.

**Subsequent DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Verdolino** shall have the meaning given to such term under the definition of "Debtor Account".

## Section 2.    DIP LOAN

2.01.    _DIP Loans_.

(a)    _Closing Date DIP Loan_. On the Closing Date, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a term loan to the Debtor in an aggregate principal amount equal to $2,000,000.00 (the "**Closing Date DIP Loan**").

(b)    _Subsequent Draws_. Subject to the conditions hereof, the Debtor may request no more than three (3) additional term loans, each in a principal amount of $2,000,000.00 (each such term loan, a "**Subsequent DIP Loan**"), pursuant to a written notice (which may be by email) by Verdolino to the Lender that the accrued and unpaid Permitted Payments are projected to exceed the aggregate proceeds of the Closing Date DIP Loan and any Subsequent DIP Loan remaining in the Debtor Account (a "**Draw Request**").  No later than two (2) Business Days following receipt of any Draw Request, the Lender shall fund the Subsequent DIP Loan in accordance with Section 2.04.  All DIP Loan Obligations shall become immediately due and payable on the Maturity Date. Amounts repaid at any time to the Lender may not be reborrowed.

3

(c)      Draws Following an Event of Default.    Upon the occurrence of an Event of Default that has not been waived by the Lender, to the extent the aggregate remaining proceeds of the Closing Date DIP Loans and each Subsequent DIP Loan maintained in the Debtor Account as of the date of the occurrence of such Event of Default are insufficient to fund the Professional Fees Escrow, the Lender shall make an additional DIP Loan (the "**Escrow Funding Loan**", and together with the Closing Date DIP Loans and each Subsequent DIP Loans, the "**DIP Loans**") in an aggregate principal amount sufficient to permit he funding of the Professional Fees Escrow from the Debtor Account in accordance with Section 8.02.

(d)      Notwithstanding anything in this Section 2.01 to the contrary, (i) during the period commencing upon entry of the Interim Financing Order but prior to the entry of the Final Financing Order, the maximum aggregate principal amount of all DIP Loans to be drawn by the Debtor shall be limited to $2,000,000 and (ii) in no event shall the aggregate principal amount of the DIP Loans made, or required to be made, pursuant to this Section 2.01 exceed the DIP Commitment.

2.02.    Interest Rate; Interest Payments.    The outstanding principal amount of the DIP Loans shall bear interest at a per annum rate equal to five percent (5.0%) (the "**Interest Rate**").    Accrued interest shall be payable in-kind on the last day of each calendar quarter by capitalizing, compounding and adding the accrued amount thereof to the principal amount of the DIP Loans then outstanding (such interest, "**PIK Interest**") for so long as any portion of the DIP Loans remain outstanding; provided, however, that in the event of any repayment or prepayment of any portion of the DIP Loans, accrued interest on the principal amount being repaid or prepaid shall be payable cash on the date of such repayment or prepayment; provided, that any remittance of Undisbursed DIP Loans pursuant to Section 8.01 shall not constitute a repayment or prepayment and shall not be subject to the requirements of this sentence.

2.03.    Default Interest.    Notwithstanding the foregoing, (i) if any principal of, or interest on, the DIP Loans or any fee or other amount payable by the Debtor hereunder or under any other DIP Loan Document is not paid when due, whether at stated maturity, upon acceleration or otherwise, such overdue amount shall bear interest at a rate per annum equal to two percent (2.0%) plus the Interest Rate (the "**Default Rate**"); and (ii) during the occurrence and continuance of an Event of Default other than an Event of Default resulting from the circumstances described in clause (i) of this Section 2.03, the Lender may, at its option, by notice to the Debtor, declare that the DIP Loans any other amounts outstanding hereunder shall bear interest at the Default Rate as provided in the preceding paragraphs of this Section.

2.04.    Use of Proceeds; Disbursements from Debtor Account.    The proceeds of the DIP Loans shall be deposited into the Debtor Account.    So long as no Event of Default shall have occurred and be continuing, the proceeds of the Closing Date DIP Loan and each Subsequent DIP Loan shall be disbursed from time to time by Verdolino to fund (x) the Debtor's administrative expenses, including professional fees of the Debtor in an aggregate amount not to exceed $4,000,000 and (y) to fund the professional fees of any official creditors committee or any examiner (if appointed), the quarterly fees of the United States Trustee and the fees of the Bankruptcy Court in an aggregate amount not to exceed $4,000,000; *provided* that the proceeds of the Closing Date DIP Loan, shall only be used to pay the administrative expenses of ordinary course professionals of the Debtor (which shall exclude, for the avoidance of doubt, Brown Rudnick LLP, Verdolino and Stretto) and, until entry of the Final Financing Order, may not be used to pay the expenses of professionals of the Debtor other than ordinary course professionals (collectively, the "**Permitted Payments**").    The proceeds of the DIP Loans will not be utilized to pay for ordinary living

expenses of the Debtor.  Upon the occurrence of an Event of Default, the proceeds of the DIP Loans shall only be used in accordance with Section 8.02.

2.05.    All payments due by the Debtor under this Agreement, whether for principal, interest, fees, costs, indemnities, expenses or otherwise, shall be payable in United States dollars in accordance with the wire instructions provided by Lender to Debtor, without setoff, counterclaim or other deduction of any kind.

## Section 3.        CONDITIONS TO EFFECTIVENESS AND FUNDING

3.02.    <u>Conditions to the Funding of the Closing Date DIP Loan</u>.  The obligation of the Lender to make the Closing Date DIP Loan is subject to the satisfaction by Debtor or waiver by Lender of the following conditions precedent:

(a)    Each DIP Loan Document shall be in form and substance reasonably satisfactory to the Lender, and shall have been duly executed by the Debtor and any other necessary parties and delivered to the Lender;

(b)    The Interim Financing Order shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(c)    The Debtor Account shall have been established;

(d)    The Debtor shall have delivered the Initial Budget; and

(e)    No Event of Default shall have occurred and be continuing or result after giving effect to the making of the Closing Date DIP Loan.

3.02.    <u>Conditions to the Funding of each Subsequent DIP Loan</u>.  The obligation of the Lender to make each Subsequent DIP Loan is subject to the satisfaction by the Debtor or waiver by Lender of the following conditions precedent:

(a)    The Financing Orders shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)    No Event of Default shall have occurred and be continuing or result after giving effect to the making of such Subsequent DIP Loan; and

(c)    The aggregate principal amount of all DIP Loans made pursuant to Section 2.01 then outstanding shall and after giving effect to the making of such Subsequent DIP Loan shall not exceed the DIP Commitment.

3.03.    <u>Conditions to the Funding of the Escrow Funding Loan</u>.  The obligation of the Lender to make the Escrow Funding Loan is subject to the satisfaction of the following conditions precedent:

(a)    The Financing Orders shall be in full force and effect and shall not have been stayed,

vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)      An Event of Default shall have occurred and be continuing;

(c)      The proceeds of the Closing Date DIP Loan and each Subsequent DIP Loan shall be insufficient fund the Professional Fees Escrow in accordance with Section 8.02; and

(d)      The aggregate principal amount of all DIP Loans made pursuant to Section 2.01 then outstanding and after giving effect to the making of the Escrow Funding Loan shall not exceed the DIP Commitment.

**Section 4.      REPRESENTATIONS AND WARRANTIES.**

The Debtor represents and warrants to the Lender that:

4.01.    <u>Authorization; Enforceability</u>.  Subject to any restrictions arising on account of the Debtor's status as "debtor" under the Bankruptcy Code, the Debtor has all requisite legal capacity to enter into this Agreement and the other DIP Loan Documents.  Upon entry of the Financing Orders, this Agreement and each other DIP Loan Document shall constitute a legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms, subject to any restrictions arising on account of the Debtor's status as a "debtor" under the Bankruptcy Code and subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.02.    <u>Approvals; No Conflicts</u>.  Subject to entry of the Financing Orders, this Agreement and the other DIP Loan Documents do not require any consent or approval of, registration or filing with, or any other action by, any governmental authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any DIP Loan Document, except such as have been obtained or made and are in full force and effect.

**Section 5.      REPORTING.**

5.01.    <u>Budget</u>.

(a)      On the first day of each calendar month, commencing on May 1, 2022, the Debtor shall deliver to the Lender an updated budget, setting forth in reasonable detail, the projected Permitted Payments for the six-month period commencing with the date such budget is delivered.  Each budget delivered by the Debtor pursuant to this Section 5.01(a) shall be presumed acceptable to the Lender unless the Lender shall object to such updated budget in writing within three (3) days following delivery thereof.

(b)      Estate professionals (including but not limited to professionals retained by the Debtor, any official committee, and/or any examiner) shall provide weekly fee accrual reports to DIP Lender in accordance with the terms of the Financing Orders.

6

5.02.   <u>Information</u>.  If reasonably requested by Lender, the Debtor will furnish to the Lender such financial reports and information in such detail as shall be reasonably satisfactory to the Lender.

## Section 6.      MILESTONES.

6.01.   The Debtor shall take or complete the following milestone by the following date:

(a)      Within 45 of the entry of the Interim Financing Order, the Bankruptcy Court shall have entered the Final Financing Order.

## Section 7.      EXPENSE REIMBURSEMENT; INDEMNITY.

7.01.   The Debtor shall reimburse or pay the Lender for all Out-of-Pocket Expenses, which expenses shall be paid in-kind by capitalizing, compounding and adding the amount thereof to the principal amount of the DIP Loans.  The Debtor hereby agrees to indemnify and hold harmless the Lender, and the officers, directors, members, managers, employees, attorneys and agents of the Lender (each an "**Indemnified Party**") from, and holds each of them harmless against, (a) any and all losses, liabilities, obligations, claims, actions, damages, costs and expenses (including reasonable attorney's fees) insofar as such losses, liabilities, obligations, claims, actions, damages, costs, fees or expenses are with respect to the DIP Loans and DIP Loan Documents, except and to the extent that the same results solely and directly from the gross negligence or willful misconduct of such Indemnified Party. The Debtor hereby agrees that this indemnity shall survive termination of this Agreement.

## Section 8.      EVENTS OF DEFAULT AND REMEDIES

8.01.   Notwithstanding anything hereinabove to the contrary, each of the following shall constitute an "**Event of Default**":

(a)      (i) if a Default occurs in the due and punctual payment of the principal of the DIP Loans (including any PIK Interest or other amounts capitalized pursuant to Section 7.01) when and as the same shall become due and payable pursuant to the terms of this Agreement, whether on the Maturity Date or otherwise and (ii) if a Default occurs in the due and punctual payment of any other amounts payable to the Lender within fifteen (15) Business Days after the date on which the same shall be come due and payable;

(b)      a breach by the Debtor in the performance or observation of any of the covenants set forth in Sections 5.01 or 6.01;

(c)      a breach by the Debtor in the performance or observation of any other covenant set forth in this Agreement or any other DIP Loan Documents not set forth in clauses (a) and (b) of this Section 8.01 and the same remains uncured within sixty (60) days after the occurrence thereof;

(d)      breach by the Debtor of any warranty, representation or covenant contained herein or in any other DIP Loan Document and the same remains unremedied for a period of sixty (60) days from the date of such breach;

(e)      the Bankruptcy Court shall enter an order granting relief from the automatic stay in connection with PAX v. Kwok, Index No. 652077/2017 (N.Y. Sup.) (the "**PAX Litigation**"), and/or the

7

United States District Court for the Southern District of New York shall deny a motion to transfer venue of the PAX Litigation;

(f)    without the consent of the DIP Lender, the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of the Chapter 11 Case or seeking conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(g)    there shall be appointed a chapter 11 trustee, or the Debtor shall file a motion or other pleading seeking such appointment; or

(h)    the Bankruptcy Court shall terminate the Debtor's exclusive right to file a plan of reorganization pursuant to section 1121(b) of the Bankruptcy Code.

8.02.    Remedies.

(a)    Subject to the Financing Orders, upon the occurrence and during the continuance of an Event of Default which has not been waived by the Lender, (i) the Lender may declare by written notice to the Debtor that all DIP Loan Obligations are immediately due and payable, (ii) subject to, and without limiting, the Lender's obligation to fund the Escrow Funding Loan pursuant to Section 2.01(c), the DIP Commitment shall terminate and the Lender shall have no obligation to make any additional DIP Loans, (iii) Verdolino shall disburse from the Debtor Account to an escrow account the lesser of (x) an amount equal to fees and expenses incurred or accrued and pending applications for Debtor's professionals and any official committee of unsecured creditors incurred in the Chapter 11 Case prior the occurrence of such Event of Default, plus $500,000 and (y) the aggregate undisbursed DIP Loan Proceeds maintained in the Debtor Account (the "**Professional Fees Escrow**") and (iv) all proceeds of the DIP Loans deposited in the Debtor Account which have not been disbursed for payment of Permitted Payments in accordance with Section 2.04 or the funding of the Professional Fees Escrow in accordance with this Section 8.02(a) (the "**Undisbursed DIP Loans**"), if any, shall be immediately remitted and returned to the Lender and shall, upon such remittance, be deemed a payment by the Debtor of a portion of the DIP Loans in an amount equal to the Undisbursed DIP Loans.

(b)    Solely in order to facilitate the return of Undisbursed DIP Loans in accordance with clause (iv) of Section 8.02(a), upon the occurrence of an Event of Default which has not been waived by the Lender, the Lender shall be automatically granted an administrative expense claim having priority over any or all other administrative expenses of any kind specified in Section 503(b), 506(c), and 507(b) of the Bankruptcy Code, in an amount equal to the Undisbursed DIP Loans.

8.03.    No delay or omission of the Lender to exercise any right or remedy hereunder, whether before or after the happening of any Event of Default, shall impair any such right or shall operate as a waiver thereof or as a waiver of any such Event of Default. No single or partial exercise by the Lender of any right or remedy precludes any other or further exercise thereof, or precludes any other right or remedy.

8.04.    Application of Proceeds. Subject to the Financing Orders (including, for the avoidance of doubt, the rights of creditors of the Debtor existing as of the Petition Date), after the occurrence of an Event of Default (or after the DIP Loan Obligations have automatically become immediately due and

payable), any amounts received on account of the DIP Loan Obligations shall be applied by Lender in the following order:

*First*, to Lender for the payment of that portion of the DIP Loan Obligations constituting fees, indemnification claims, expenses and other amounts including fees, charges and disbursements of counsel;

*Second*, to Lender for the payment of that portion of the DIP Loan Obligations constituting accrued and unpaid interest on the DIP Loans;

*Third*, to Lender for the payment of that portion of the DIP Loan Obligations constituting unpaid principal of the DIP Loans; and

*Last*, the balance, if any, after all of the DIP Loan Obligations (other than indemnification obligations that expressly survive pursuant to the terms of this Agreement) have been indefeasibly paid in full, to Debtor's bankruptcy estate or as otherwise required by law.

## Section 9.    MISCELLANEOUS

9.01.    This Agreement and the other DIP Loan Documents constitute the entire agreement between the Debtor and the Lender with respect to the matters contained herein and therein; supersede any prior agreements; can be waived or changed only by a writing signed by each party hereto or thereto, and shall bind and benefit each party hereto or thereto and their respective successors and assigns, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

9.02.    In no event shall the Debtor, upon demand by the Lender for payment of any DIP Loan Obligations, by acceleration of the maturity thereof or otherwise, be obligated to pay interest and fees in excess of the amount permitted by law and the Lender shall never be entitled to receive, charge or apply, as interest on any DIP Loan Obligations, any amount in excess of the maximum amount of interest permissible under applicable law. If the Lender ever receives, collects or applies any such excess, it shall be deemed a partial repayment of principal and treated as such; and if principal is paid in full, any remaining excess shall be refunded to the Debtor. This paragraph shall control every other provision hereof and each other DIP Loan Document.

9.03.    If any provision hereof or of any other agreement made in connection herewith is held to be illegal or unenforceable, such provision shall be fully severable, and the remaining provisions of the applicable agreement shall remain in full force and effect and shall not be affected by such provision's severance.

9.04.    <u>GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS</u>.

(a)    THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING

RELATING TO THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, ANY UNITED STATES FEDERAL COURT OR NEW YORK STATE COURT SITTING IN NEW YORK COUNTY AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND APPELLATE COURTS FROM ANY THEREOF; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN OR IN ANY OTHER DIP LOAN DOCUMENT WILL PREVENT ANY PARTY FROM BRINGING ANY ACTION TO ENFORCE ANY AWARD OR JUDGMENT OR EXERCISE ANY RIGHT UNDER THE DIP LOAN DOCUMENTS IN ANY OTHER FORUM IN WHICH JURISDICTION CAN BE ESTABLISHED. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS.

9.05.    <u>Notices</u>.    Except as otherwise herein provided, any notice or other communication required hereunder shall be in writing (provided that, any electronic communications including electronic mail shall constitute a notice or communication in writing), and shall be deemed to have been validly served, given or delivered when (i) hand delivered, (i) in the case of any electronic communications, the day sent, (iii) one (1) Business Day after deposit with a nationally recognized overnight delivery service, or (iv) three Business Days after deposit in the United States mails, with proper first class postage prepaid, return receipt requested, and addressed to the party to be notified or to such other address as any party hereto may designate for itself by like notice, as follows:

(a)    if to the Lender, at:

> Golden Spring (New York) Ltd. 162 E 64th St.  New York, NY 10065
> Email: admin@gsnyus.com

> With a copy to:

> Email arethusaf@protonmail.com
> - and -
> Cohn Birnbaum & Shea, P.C.
> 100 Pearl Street, Hartford, CT 06103, Attention:  Scott D. Rosen
> Email srosen@cbshealaw.com

(b)    if to the Debtor, to

> 373 Taconic Road
> Greenwich, CT 06831

> With a copy to:

> Brown Rudnick LLP
> Seven Times Square

New York, NY 10036
Attention: Bennett S. Silverberg
Email bsilverberg@brownrudnick.com
Attention: Steven D. Pohl
Email spohl@brownrudnick.com

     9.06.    In the event of any inconsistency between the terms of any Financing Order, on the one hand, and this Agreement and the other DIP Loan Documents, on the other hand, the terms of such Financing Order shall control.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective, executed, accepted and delivered as of the date first set forth above by their proper and duly authorized officers as of the date set forth above.

**DEBTOR:**

_____

Ho Wan Kwok (a/k/a Miles Kwok a/k/a Miles Guo a/k/a Wengui Guo)

**LENDER:**

**GOLDEN SPRING (NEW YORK) LTD.**

By: _____
Name: _____
Title: _____

64528892 v8

12