**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------------X
                                          :
In re:                                    : Chapter 11
                                          :
   Ho Wan Kwok,                            : Case No. 22-50073 (JAM)
                                          :
                                          : Requested Hearing:
               Debtor.                : Date: TBD
                                          : Time: TBD
---------------------------------------------------------------------X

**AFFIDAVIT OF WILLIAM R. BALDIGA IN SUPPORT OF APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF BROWN RUDNICK LLP AS COUNSEL FOR THE DEBTOR**

     I, William R. Baldiga, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

     1.    I am an attorney admitted to practice law in the State of New York and the Commonwealth of Massachusetts and before the United States District Courts for the Districts of New York and Massachusetts. I am a member of the firm of Brown Rudnick LLP ("Brown Rudnick"), which maintains its offices at, among other places, Seven Times Square, New York, New York 10036 and One Financial Center, Boston, Massachusetts 02111. I am familiar with the matters set forth herein and make this Affidavit (this "Affidavit") in support of the application filed by Mr. Ho Wan Kwok (the "Debtor" or "Mr. Kwok"), as the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), for entry of an order authorizing the employment and retention of Brown Rudnick as counsel for Mr. Kwok.

     2.    Unless otherwise stated, I have personal knowledge of the facts set forth hereinafter. To the extent that any information disclosed herein requires amendment or modification upon Brown Rudnick's completion of further analysis or as additional party-in-interest information becomes available to me, I will submit a supplemental affidavit to this Court.

3.     Except as otherwise disclosed herein, neither I, Brown Rudnick nor any member, counsel or associate of Brown Rudnick, insofar as I have been able to ascertain:  (i) represents entities or individuals other than Mr. Kwok in connection with this Chapter 11 Case; (ii) has any connections with Mr. Kwok, his creditors or any other party-in-interest (except as more fully described herein); or (iii) holds any interest adverse to Mr. Kwok or his Chapter 11 estate with respect to the matters on which Brown Rudnick is to be retained and employed in this Chapter 11 Case.

4.     More specifically, Brown Rudnick, its partners, counsel and associates:

(a)     are not creditors or insiders of the Debtor;

(b)     are not and were not, within two years before the date of the filing of the Debtor's chapter 11 petition, employees of the Debtor; and

(c)     do not have an interest materially adverse to the interest of the Debtor's estate or any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

5.     Accordingly, I submit that Brown Rudnick is a "disinterested person," as that term is defined in section 101(14) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as modified by section 1107(b) thereof.

**BROWN RUDNICK'S PREPETITION RELATIONSHIP
WITH MR. KWOK AND NATURE OF RETENTION**

6.     Prior to the Chapter 11 Petition Date, commencing on February 14, 2022 (the "Engagement Date"), Mr. Kwok engaged Brown Rudnick to provide advice in connection with, and to prepare for filing of, this Chapter 11 Case.  Attached as **Exhibit A** is an executed copy of the engagement agreement (the "Engagement Agreement").

7.     Brown Rudnick is not a creditor of Mr. Kwok.  In the 90-day period prior to the Chapter 11 Petition Date, all of which occurred on or the day after the Engagement Date, Brown

2

Rudnick received payments totaling US$1,000,000.00 on account of services to be performed and expenses incurred in connection with its advice to Mr. Kwok and the preparation for the commencement and prosecution of this Chapter 11 Case, as follows: US$500,000.00 on February 14, 2022 and US$500,000.00 on February 15, 2022, each by wire from Lamp Capital LLC as a retainer for services to be performed in the preparation of this Chapter 11 Case.  To fund the Retainer, Lamp Capital LLC made a US$1,000,000.00 loan to Mr. Kwok, and Mr. Kwok directed Lamp Capital LLC to remit the proceeds directly to Brown Rudnick.

8.      Brown Rudnick charged US$51,835.20 against the retainer for preparation and services in connection with the filing of Mr. Kwok's Chapter 11 Petition, and holds the remaining retainer balance of US$948,164.80  for application toward and payment of postpetition fees and expenses as may be allowed by this Court.

9.      I understand that Mr. Kwok has selected Brown Rudnick to be his bankruptcy counsel because of Brown Rudnick's broad range of experience in bankruptcy proceedings.  Over the last several years, Brown Rudnick has represented debtors, creditors' committees, institutional lenders, creditors and various other parties-in-interest in numerous bankruptcy cases.  Brown Rudnick believes it has assembled a highly qualified team of professionals and paraprofessionals to provide services to Mr. Kwok during this Chapter 11 Case.  The core Brown Rudnick team includes myself, Robert Stark, Steven D. Pohl, Bennett S. Silverberg, all partners in the Firm's Restructuring & Finance department, and Tristan Axelrod and Uriel Pinelo, associates in the same department.  The Brown Rudnick team has extensive experience in corporate restructuring and related matters.

## SERVICES TO BE RENDERED

10.     Brown Rudnick will render the following services, among others, to Mr. Kwok, as requested by Mr. Kwok:

(a)     provision of legal advice with respect to Mr. Kwok's rights and duties as a debtor in possession, including preparation of his Schedules and SOFAs, monthly operating reports, and other documents to be filed with this Court;

(b)     conferring with other professionals retained by Mr. Kwok and other parties-in-interest;

(c)     preparation on behalf of Mr. Kwok of all necessary petitions, applications, motions, objections, responses, answers, orders, reports and other legal papers, including all trial preparation as may be necessary;

(d)     Taking all necessary legal actions to protect and preserve Mr. Kwok's chapter 11 estate, including prosecuting actions on his behalf, defending any action commenced against Mr. Kwok, and representing him in negotiations concerning litigation in which Mr. Kwok is currently involved with or may become involved with, including objections to claims filed against the estate;

(e)     Taking all necessary action on behalf of Mr. Kwok to obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto

(f)     appearance before this Court, any appellate courts and the U.S. Trustee to protect the interests of Mr. Kwok; and

(g)     performance of all other legal services for Mr. Kwok that are necessary and proper in this proceeding.

11.     It is my understanding that Mr. Kwok has sought or intends to seek to retain other professionals to perform specific tasks that are unrelated to the work to be performed by Brown Rudnick as bankruptcy counsel to the Debtor. Brown Rudnick intends to work closely with such other professionals retained by Mr. Kwok to ensure that there is no unnecessary duplication of services performed for or charged to Mr. Kwok's Chapter 11 estate.

## **BROWN RUDNICK'S RATES AND BILLING PRACTICES**

12.     Brown Rudnick has been asked to serve as bankruptcy counsel to Mr. Kwok in his above-captioned Chapter 11 case. Mr. Kwok proposes to compensate Brown Rudnick on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by it

4

according to its customary reimbursement policies. The following hourly rates for Brown Rudnick attorneys and paraprofessionals are currently in effect, but are subject to periodic adjustments: hourly rates for partners/counsel range from $715 to $1,875, for associates from $530 to $975, and for paralegals from $375 to $490. Other staff hourly rates range from $290 to $560. Brown Rudnick shall file a supplemental affidavit with this Court and provide not less than ten (10) business days' notice to Mr. Kwok, the U.S. Trustee, and the Committee (if any is appointed) prior to any increases in the rates set forth herein. The supplemental affidavit shall explain the basis for any such requested rate increases in accordance with Bankruptcy Code Section 330(a)(3)(F) and state whether Mr. Kwok has consented thereto. No rate increase shall be effective in this case prior to January 1, 2023.

13.     Brown Rudnick intends to apply for compensation for professional services rendered and for reimbursement of expenses incurred in accordance with applicable provisions of title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules, and the orders of this Court. Such expenses include, without limitation, travel costs, international calls, express mail, messenger service, photocopying costs, temporary employment of additional staff, Lexis and Westlaw expenses, court fees, transcript costs and, in general, all identifiable expenses that would not have been incurred but for the representation of a particular client. Brown Rudnick will bill non-working travel time at half the otherwise applicable hourly rate.

14.     Brown Rudnick acknowledges that all amounts paid to Brown Rudnick during this Chapter 11 Case are subject to final allowance by this Court. In the event that any fees or expenses paid to Brown Rudnick during this Chapter 11 Case are disallowed by this Court, the fees and expenses will be disgorged by Brown Rudnick and returned to Mr. Kwok or as otherwise ordered by this Court.

15.     Except as described below, neither Brown Rudnick, any member of Brown Rudnick, nor any professional or attorney associated with or employed by Brown Rudnick has received a promise as to payment or compensation in connection with this Chapter 11 Case. Brown Rudnick does not have any agreement with any other entity to share with any such entity any compensation received by Brown Rudnick.

16.     By reason of the foregoing, I believe that Brown Rudnick is eligible for employment and retention by Mr. Kwok pursuant to section 327(a) of the Bankruptcy Code, the applicable Bankruptcy Rules and the Local Rules.

17.     The foregoing constitutes the statement of Brown Rudnick pursuant to sections 327(a), 329 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

18.     To the best of my knowledge, no member or associate of Brown Rudnick is a relative of, or has been so connected with, any judge of the Bankruptcy Court for this District. Accordingly, I understand that the appointment of Brown Rudnick is not prohibited by Bankruptcy Rule 5002.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

19.     The following information is provided pursuant to paragraph D.1 of the U.S. Trustee Guidelines:

| QUESTION: | Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? |
|---|---|
| Response: | No. |
| QUESTION: | Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? |
| Response: | No. |

| QUESTION: | If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. |
|---|---|
| Response: | Brown Rudnick briefly represented Mr. Kwok prior to the Petition Date on terms identical to the postpetition terms, excluding Bankruptcy Court approval of retention and allowance of fees. |
| QUESTION: | Has your client approved your prospective budget and staffing plan, and, if so, for what budget period? |
| Response: | Mr. Kwok has approved Brown Rudnick's general staffing plan, which is described in the Application. |

**BROWN RUDNICK DISCLOSURE PROCEDURES**

20.     Brown Rudnick[1] and partners and associates of Brown Rudnick may have in the past represented, currently represent and may in the future represent other entities that are claimants against the Debtor in matters totally unrelated to this Chapter 11 Case. Brown Rudnick has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations, some of which may be or become claimants in this Chapter 11 Case or otherwise have an interest in therein. As addressed further below, Brown Rudnick will apprise the Court and parties of interest regarding connections to any claimants against Mr. Kwok or other relevant connections to parties in interest in this Chapter 11 Case.

21.     In preparing this Affidavit, I used a set of procedures developed by Brown Rudnick to ensure compliance with the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") regarding the retention of professionals by a

---

[1]     For the avoidance of doubt, "Brown Rudnick" is a single firm comprising two legal entities, both named Brown Rudnick LLP. One entity is domiciled in the United States and the other in the United Kingdom; both are limited liability partnerships. Partners of the U.K. entity are also partners of the U.S. entity. References herein to Brown Rudnick refer to Brown Rudnick, including both legal entities and all related personnel and representations, and no other law firm.

7

debtor under the Bankruptcy Code.  Pursuant to those procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Affidavit and to ascertain Brown Rudnick's connection thereto:

(a)    A comprehensive list of the types of entities and individuals that have contacts with Mr. Kwok was developed through discussions with Brown Rudnick attorneys and Mr. Kwok and his advisors, which includes, among others:

1)    Mr. Kwok and his family members and affiliates;

2)    professionals used by Mr. Kwok;

3)    parties to litigation with Mr. Kwok;

4)    Mr. Kwok's largest unsecured creditors;

5)    state and other governmental entities with a possible interest in or connection with Mr. Kwok;

6)    all applicable taxing authorities;

7)    the U.S. Trustee's office and attorneys; and

8)    the judges of the United States Bankruptcy Court for the District of Connecticut.

22.    In connection with Mr. Kwok's proposed retention of Brown Rudnick, an extensive review (the "Connections Check") of Brown Rudnick's connections (as such term is used in Bankruptcy Rule 2014(a)) with Mr. Kwok, his creditors, any other party-in-interest herein, or their respective attorneys or accountants (collectively, the "Case Parties") was conducted.  For the purpose of compiling a list of the Case Parties, Brown Rudnick utilized the interested party listing provided by Mr. Kwok's counsel and advisors in connection with his retention of Brown Rudnick in this Chapter 11 Case against which to perform the Connections Check.

23.    Attached hereto as **Schedule 1** is a list of the Case Parties that were checked against a database containing Brown Rudnick's connections. For purposes of this Chapter 11 Case, only potential connections that we were able to identify as of March 6, 2022, through the date hereof

were checked. These connections were then reviewed to identify any relationship that would need to be disclosed in accordance with Bankruptcy Rule 2014. During the course of preparing the Schedules and SOFAs Brown Rudnick identified additional connections which are still in the process of being reviewed.

24.    The Connections Check performed by Brown Rudnick included an email circulated to all Brown Rudnick attorneys (and posted on Brown Rudnick's intranet site for further review) alerting all professionals at Brown Rudnick to identify any connections with the Case Parties. A summary of the results of the Connections Check is annexed hereto as **Schedule 2**.

25.    To the best of my knowledge after diligent inquiry, neither Brown Rudnick, any member of Brown Rudnick, nor any attorney associated with or employed by Brown Rudnick, has any "connection" (as such term is used in Bankruptcy Rule 2014(a)) with Mr. Kwok, his creditors, any other party-in-interest herein, their respective attorneys or accountants, except to the extent set forth herein or on **Schedule 2**. Except as set forth herein or on **Schedule 2**, all of Brown Rudnick's connections are unrelated to Mr. Kwok or this Chapter 11 Case.

26.    Brown Rudnick has been involved in unrelated cases with various professionals involved in this case, both in adverse and non-adverse roles.

27.    Brown Rudnick has a well-known reorganization and restructuring practice which encompasses the representation of many investors, financial institutions and other persons or entities, some of which may become creditors or parties-in-interest. Further, as part of its practice, Brown Rudnick appears in cases, proceedings, and transactions involving numerous attorneys, accountants, and financial advisors. Brown Rudnick has not and will not represent any of these creditors, investors, potential acquirers, parties-in-interest, attorneys, financial advisors, accountants, or any other entity in connection with this Chapter 11 Case.

28.    I periodically review and will continue to periodically review potential conflicts.  If I learn that Brown Rudnick has a relationship with, or has represented, a party-in-interest in this Chapter 11 Case, then I will immediately supplement this affidavit and promptly notify the U.S. Trustee.

29.    I submit that none of the representations described above and/or on **Schedule 2** have resulted or will result in an interest of Brown Rudnick adverse to the Debtor or his estate with respect to the matters on which Brown Rudnick is to be retained, and that Brown Rudnick is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) thereof.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 16, 2022
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　*/s/ William R. Baldiga*
　　　　　　　　　　　　　　　　　　　William R. Baldiga

## EXHIBIT A TO BALDIGA AFFIDAVIT

**The Engagement Agreement**

# brownrudnick

WILLIAM R. BALDIGA
direct dial: 212.209.4942
wbaldiga@brownrudnick.com

February 14, 2022

Guo Wengui (a/k/a Miles Guo)

**RE:   Confirmation of Engagement**

Dear Mr. Guo:

We are very pleased that Guo Wengui ("**you**" or the "**Client**") has engaged Brown Rudnick LLP ("**Brown Rudnick**," "**us**," "**we**," "**our**," or the "**Firm**").  Enclosed please find the Client Engagement Terms (the "**Terms**"), which supplement this letter and include additional information setting forth the terms on which the Firm will provide legal services, the scope of such services, billing and payment arrangements, the Firm's relationship with its clients, and other matters (this letter, together with the Terms, is the "**Engagement Agreement**").  Please carefully review the Engagement Agreement.  I am of course available to answer any questions you may have regarding the engagement.

## *Scope of Engagement*

We have agreed to represent you as of February 14, 2022 in connection with your chapter 11 bankruptcy petition to be filed in the Connecticut Bankruptcy Court, subject to you accepting this Engagement Agreement, and payment of the retainer.

## *Staffing, Fees, and Expenses*

I will have primary responsibility for the engagement.  To the extent necessary and appropriate, other lawyers and Firm personnel may work on this matter as well.

Fees for our services will be based on the time expended by each lawyer and other Firm personnel (including personnel we may temporarily engage) on your matter, multiplied by that person's hourly rate.  My hourly rate is currently $1,570.

In addition to the fees for services, you also shall pay, and reimburse the Firm for, all costs and expenses incurred by the Firm in connection with the engagement including, without limitation, those identified in the attached Schedule of Disbursement Charges.  We will not incur any cost or expense in excess of $5,000 without your prior approval.



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 2

The Firm's statements of fees for professional services and related costs and expenses will generally be prepared and mailed to you during the month following the month in which services are rendered or costs or expenses are incurred.  Payments are due within thirty (30) days of the date of the statement.

The Firm shall have the right to charge interest at the rate of nine percent (9%) per annum on all unpaid amounts commencing on the date that is thirty (30) days after the initial due date.  Any interest charged for the previous billing period will be added to the following month's charge and shall bear like interest.

It is possible that you may have insurance policies relating to the matter that is the subject of our engagement.  **You should carefully check the insurance policies you have purchased and, if coverage may be available, you should provide notice to all insurers that may provide such coverage as soon as possible.**  Although we will be pleased to assist you in assessing the potential for coverage under any policies you may have, our engagement will not include advising you with respect to the existence or availability of insurance coverage for matters within the scope of our engagement unless you supply us with copies of your insurance policies and expressly request our advice on the potential coverage available under such policies.

### *Retainer*

You shall deliver to the Firm a retainer of $1,000,000 (the "**Retainer**").  The Retainer, as well as any future deposits, will be held in the Firm's retainer account.  The Firm may use the Retainer to pay the fees and other charges you incur, and any unused portion will be returned to you as you direct.  As discussed, payment of our fees going forward for the post-filing work will be subject to a process of submitting our proposed fees to the Bankruptcy Court, and payment can be made only when and as the Court permits.  You will be provided with all information in that regard.  You remain responsible for payment of our fees and expenses as set forth in this Engagement Agreement.

### *Conflicts of Interest*

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between any client of an attorney or law firm and their existing and former clients.  The nature and scope of our work for other clients may give rise to conflicts at this time or in the future.  The Terms include an Existing and Future Conflicts Waiver section in which you agree to certain waivers of conflicts of interest, including a limited, future waiver of certain potential or actual conflicts of interest.  This means that, subject to the limits described in the Terms, the Firm may represent another client in certain matters in which its interests are, will be, or have been adverse to your interests.  As set forth in the Terms, the Firm would in any such matter protect the confidentiality of all information that you have shared with us.



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 3

### *Communication*

We will keep you apprised of significant developments in the course of the engagement and will obtain your direction on critical issues. While we will endeavor to consult with you about the Firm's work on an ongoing basis, if at any point you wish to discuss any issues or to clarify the legal advice we have provided you, please call upon us.

### *Governing Law*

The Engagement Agreement shall be governed by and construed in accordance with the laws of the State of New York (the "**Specified State**") without giving effect to its choice of law provisions that would result in the application of the laws of a different jurisdiction, provided that our obligations to you shall also be subject to any applicable professional rules or codes of conduct applicable to the provision of our services to you, except to the extent the applicability of such provisions is permitted to be waived thereby and is waived by you.

### *Acknowledgement*

If you have any questions regarding the Engagement Agreement or any aspects of the Firm's representation of you, please do not hesitate to contact me. Your instructing us or continuing to instruct us on this matter will constitute your full acceptance of the terms set out in this Engagement Agreement whether or not you sign the Engagement Agreement, but we do ask that you sign, date, and return to me the enclosed copy of this Engagement Agreement as additional confirmation that it correctly reflects the understanding between you and the Firm. We look forward to representing you and are pleased that you have chosen us to do so.

Very truly yours,

BROWN RUDNICK LLP

William R. Baldiga

Consented and Agreed to:

Guo Wengui (a/k/a Miles Guo)

Dated: 02 / 15 / 2022

WRB:ljc



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 4

### BROWN RUDNICK LLP

### Client Engagement Terms

We are very pleased that you have engaged the Firm. These Client Engagement Terms (the "**Terms**"), supplement the letter to which they are attached (the "**Engagement Letter**"). Terms defined in the Engagement Letter shall have the same meanings when used in these Terms. The Engagement Letter, together with these Terms, is a contract for our engagement and comprises the "**Engagement Agreement**".

We are of course available to answer any questions you may have regarding the engagement or the Engagement Agreement.

### Welcome to Brown Rudnick

Brown Rudnick is a limited liability partnership organized under the laws of the Commonwealth of Massachusetts, which may, when necessary to provide services to you under this Engagement Agreement, collaborate and share resources and information with its subsidiaries or affiliates (the "**Brown Rudnick Affiliates**"). You understand and agree that such information may include your confidential or proprietary information and that the partners and employees of Brown Rudnick Affiliates may render services to you, whether or not they are identified as such on the Firm's invoices, all of which shall be governed by the Engagement Agreement. For purposes of the conflicts of interests and professional ethics rules described herein, each of the Firm and the Brown Rudnick Affiliates, in their sole discretion, may elect to treat the other's clients as its own clients.

### The Engagement

The Firm's engagement to represent you is limited to the matter(s) described in our Engagement Letter and to any additional matters for which the Firm expressly agrees to provide legal representation. In the event we provide services beyond the original scope or for a separate matter(s), this Engagement Agreement and our then prevailing standard terms and conditions, hourly rates, and policies shall automatically govern unless otherwise agreed.

With respect to the legal services provided pursuant to the Engagement Agreement, the Firm does not represent anyone other than the identified Client, and no attorney-client relationship shall exist between the Firm and any other person or entity, including, without limitation, any affiliates, parents and subsidiaries, shareholders, bondholders, partners, members, managers, principals, agents, beneficiaries, clients, customers, directors, officers, or employees not specifically identified as the Client ("**Client Affiliates**"). However, in the event that the Firm is instructed by an affiliate of the Client to represent it, or is, notwithstanding the foregoing sentence or anything else herein to the contrary, at any time or from time *deemed* to represent an affiliate of the Client, the terms of this Engagement Agreement shall be deemed to apply to such affiliate as if it were also the Client at all times during and following such representation or deemed representation (including prior to a court decision deeming such affiliate to have been represented by the Firm), and such representation or deemed representation shall constitute such affiliate's full acceptance, as an additional Client, of the terms set out in this Engagement Agreement, including, without limitation, the waivers of conflicts of interest set forth herein, effective as of and following the commencement of such representation or deemed representation.

You acknowledge that the Firm has not provided you with legal advice concerning the terms and conditions of our Engagement Agreement.

### Charges for Legal Services

**A.      Legal Fees and Disbursements**

Fees for our services and charges for our costs and expenses will be incurred and be payable by you in accordance with these Terms and the "**Staffing, Fees, and Expenses**" provisions of the Engagement Letter.

Currently, our hourly rates for partners/counsel vary from $715 to $1,875, for associates from $530 to $975, and for paralegals from $395 to $490. Other staff hourly rates range from $375 to $690. These hourly rates are subject to change on a periodic basis.



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 5

As mentioned in the Engagement Letter, fees for our services may include services provided by personnel that we may temporarily engage. Such personnel may include outside contract lawyers or other professionals not associated with Brown Rudnick. In recognition of our management and administration of the legal and other services provided by these outside contract lawyers and other professionals, we may charge you for their services, including charges based on hourly rates, in an amount that exceeds the amounts we are being charged by them for such services, and we understand that you have consented to our doing so.

We may provide you with an estimate of our fees and disbursements that you may incur, based on our best judgment. Such estimates, however, are by their nature inexact and are not intended to be binding upon the Firm.

**B.     Payment/Questions**

Payment should be made by you in the full amount of our statement and you will be responsible also for any withholding tax or other deduction that may be chargeable to you by any relevant taxing authorities or by a governmental entity. If you have any questions about any statement that we submit, you should promptly contact the lawyer responsible for your engagement so that we may understand and address your concerns promptly.

**C.     Third Party Payment Responsibility**

If a third party (including, without limitation, an insurer or affiliate) undertakes to pay any portion of the Firm's bills, 1) you will remain responsible for payment of any amounts billed by the Firm and not paid by that third party, 2) you hereby consent to the application of those funds to the outstanding balance of your account with the Firm and waive any right you might otherwise have to direct us to pay or apply those funds in any other fashion, and 3) to the extent any such third party makes payment to us on your behalf accompanied by directions as to what portion of outstanding fees and expenses are to be covered by such payment, you hereby consent to us adhering to those directions and waive any right you might otherwise have to direct us to pay or apply those funds in any other fashion. Such payment shall not create an attorney-client relationship between the Firm and the payer. If you are awarded legal fees or costs by a

court or other party, you will remain responsible for payment of the Firm's billed fees and other charges, even if the award to you is less than the amounts we have billed you or that you cannot collect all or part of the award for any reason. Where we have agreed to represent multiple clients in a matter, each client will be jointly and severally responsible for payment of the Firm's statements.

**Termination**

You may, of course, terminate our services at any time. Your termination of our services will not affect your responsibility to pay for billed and unbilled legal services rendered or other charges incurred as of the date of termination and, where appropriate, for such expenses as we may incur in effecting an orderly transition to successor lawyers of your choice.

Subject to ethical rules by which we are bound, we also reserve the right to suspend our services or withdraw from the engagement described in this Engagement Agreement at any time, but barring unusual circumstances we will discuss such suspension or withdrawal with you before doing so and expect to do so only if there are good reasons for such withdrawal, including, without limitation, non-payment of our statements on a timely basis, significant differences between our professional judgment and your judgment, the existence of any facts or circumstances that would render the Firm's continuing representation of you unlawful or unethical, or any other concerns that may arise under the ethical rules by which we are bound. The obligations of the Firm under this Engagement Agreement are and will be subject to court orders, statutes, laws, rules, and regulations governing Client's legal rights and Client authorizes the Firm to take whatever action is necessary to comply with the requirements of such authorities.

Unless it is previously terminated, our representation of you, and our lawyer-client relationship with you, will be deemed to have been terminated upon the conclusion of our services.

We may ask that you provide additional confirmation of such termination by signing a substitution or withdrawal of counsel and/or such other documents as may be reasonably necessary to evidence or effect the Firm's termination of our lawyer-client relationship, including the Firm's withdrawal



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 6

of its prior appearance in any court or other litigated proceeding. You agree to sign such a substitution or withdrawal of counsel and/or such other documents.

After the conclusion or termination of our representation of you as described in the Engagement Agreement, changes in relevant laws, regulations, or decisional authorities may affect your rights and obligations. Unless you engage the Firm to provide future services and to advise you with respect to any issues that may arise in the future as a result of such changes, we will have no continuing obligation to advise you with respect to future legal developments.

### Communication

We expect that you will cooperate with us and will fully and accurately disclose to us all facts and documents that may be relevant to our representation of you or that we may otherwise request. For instance, you should be reasonably available to attend meetings, discovery proceedings, conferences, and other proceedings.

You authorize and direct us to take all actions which we deem advisable on your behalf in our representation of you except those specific decisions, if any, set forth in the Engagement Letter which must be made by you. We will notify you of significant developments and consult with you in advance of any significant decisions.

We will use our professional judgment and efforts in representing you; however, we have given no assurance to you regarding the outcome. Any statements concerning our representation of you or the results that might be anticipated made by us are merely expressions of our opinion as attorneys, limited by the information known to us at the time and are not to be construed as promises or guaranties of any particular results.

The Firm can provide communications in various modes, depending upon your requirements. These may be accessed from mail accounts on the Internet and other electronic networks. These communication services are used with your understanding that while the Firm will use appropriate measures to protect client confidentiality, they may be subject to security risks. Absent special arrangements, we do not employ encryption technologies in our electronic

communications. Should you not wish the Firm to use one or more of the communication methods described above, please advise us of such in writing. We will use reasonable efforts to use the communication services you specify.

### Confidentiality

**A.      Confidentiality and Disclosure**

We owe a duty of confidentiality to all our clients and we will protect your confidential information accordingly. As we have discussed, we will take special care to protect the confidentiality of the documents and other information that you share with us. While we will not at this time (unless you request otherwise) construct a formal ethical wall, we will make the documents that you provide to us available only to the lawyers and other employees of our Firm who are actually working on the matter. Similarly, we are not required to disclose to you, or use on your behalf, any confidential documents or information in our possession.

**B.      Disclosure to Certain Third Parties**

You agree that we may, when required by our insurers, auditors, or other advisers, provide details to them of any matter or matters on which we have represented you.

**C.      Data Protection**

This paragraph, and Annex 1, are added pursuant to our obligations under EU data privacy law. If you are a non-EU citizen or resident based outside of the EU, EU data privacy law will apply to the extent that Brown Rudnick processes any personal data provided by you or on your behalf in the context of its EU establishment.

In this paragraph, the terms "**data controller**", "personal data", "**data processor**", "**data subject**", and "**process(ing)**" will have the meanings ascribed to them in the EU General Data Protection Regulation ("**GDPR**") and/or with any applicable national laws implementing or replacing the GDPR (together, "**Data Protection Law**").

Brown Rudnick, whether acting as a data controller of personal data relating to your partners, directors, officers or employees, or as a data processor in processing personal data on your behalf and in accordance with your instructions, will



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 7

comply with the GDPR and/or with any applicable national laws implementing or replacing the GDPR.  Please see the Privacy Notice set out in Annex 1, which provides further information in respect of when Brown Rudnick is acting as a data controller, including what personal data we collect, why and where we process it, the legal bases for our processing, and the rights of the data subjects to which the personal data relates.

You hereby confirm that you, acting as our agent in respect of data subjects who are your directors, officers, employees, agents or other contacts, have no reason to believe that you have not complied with all of your obligations under Data Protection Law (to the extent applicable) in respect of your collection and use of such subjects' data and your provision of it to us, in each case as necessary for us to provide you with our services.

To the extent we are acting as a data processor in processing personal data on your behalf we agree, whenever the GDPR applies, to:

(a) act only on documented instructions from you in respect of any personal data processed by us;

(b) have appropriate technical and organizational measures in place against unauthorized or unlawful processing of personal data and against accidental or unlawful loss or destruction of, alteration or unauthorized disclosure of or access or damage to, personal data held or processed by it, appropriate to the harm that might result from such accidental, unauthorized or unlawful processing or loss, destruction or damage to personal data and the nature of the personal data;

(c) ensure the on-going confidentiality, integrity, availability and resilience of processing systems and services as well as the ability to restore the availability and access to personal data in a prompt manner in the event of a physical or technical incident as required under Data Protection Law;

(d) not engage another processor without your prior written consent, and where another processor is engaged (a "**Sub-Processor**") we shall:

(i) ensure that the Sub-Processor complies with the obligations set out in this paragraph and Data Protection Law;

(ii) in the case of a general consent from you for use of Sub-Processors, inform you of any changes concerning the addition or replacement of Sub-Processors to which you have the right to object; and

(iii) remain liable for any act or omission of any Sub-Processor in respect of its obligations arising from its processing of the personal data;

(e) assist you to comply with your obligations under Data Protection Law, including in relation to the security of personal data;

(f) assist you, at your cost, to respond to requests by data subjects to exercise their rights under Data Protection Law in respect of our engagement, including taking any action required by you to comply with such requests and immediately notifying you of any such requests received by us or any Sub-Processor without responding to such requests or enquiries unless expressly otherwise instructed by you;

(g) take all necessary steps to ensure the reliability of any of our staff who have access to personal data processed under this agreement and ensure that they are subject to appropriate obligations of confidentiality;

(h) allow you to audit as and when necessary, in accordance with the Data Protection Law, the technical and organizational measures in place to ensure compliance with the Data Protection Law and to make available to you all information necessary to demonstrate such compliance;

(i) inform you where in our opinion any of your instructions will result in a breach of Data Protection Law;

(j) if required by you, delete or return all personal data in our possession or control to the extent technically feasible save as required by any applicable law; and



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 8

(k) notify you without undue delay if we become aware of any breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, personal data relating to you, and provide all information regarding such breach that you specifically request or which may reasonably be expected to be required or appropriate in order for you to comply with your legal obligations under the Data Protection Law.

## Document Retention

At your request, we will return to you, your original hard copy documents and property (your "**client file**"), except as set forth herein. Subject to applicable rules of ethics by which we are bound, we may condition delivery of your client file upon our receipt of payment for outstanding fees and other charges and your client file will be subject to any lien permissible under applicable rules of professional responsibility. We may provide your client file in original format or an electronic format on a CD, DVD, or other medium. Should you decide not to request or accept any portion of your client file at the conclusion or termination of our representation of you, you authorize us to destroy such portion of your client file at our discretion and without further notice to you, subject to any applicable ethics rules by which we are bound.

You agree that our drafts of documents, notes, internal working papers, internal e-mail and electronic databases and other attorney work product shall be and remain the property of the Firm and shall not, except in our sole and absolute discretion or as otherwise required by the ethical rules by which we are bound, be considered part of your client file.

The Firm retains the right to make copies of your client file, at our expense, for our own information and retention purposes.

## Anti-Money Laundering Laws

Numerous countries have enacted Anti-Money Laundering ("**AML**") laws. If the Firm's lawyers are engaged to assist you in matters within the scope of our engagement that become subject to AML requirements, it will be necessary to comply with the applicable AML laws. In connection

therewith, we or our lawyers may be required to obtain additional, specific evidence of client identity from you.

## Dispute Resolution

### A.    Resolving Problems and Disputes

If you have any complaints or concerns about our work for you, please raise these in the first instance with the lawyer responsible for your engagement or with the Firm's Chief Executive Officer (William R. Baldiga: 617-856-8586) or Chief Legal Officer (Joel S. Miliband: 949-440-0227). We will investigate your complaint promptly and carefully and do what we reasonably can to resolve the difficulties to your satisfaction.

### B.    General

Except as provided herein, should any dispute arise in connection with our representation of you or in connection with any other matter arising under this Engagement Agreement, you and we both agree to seek to resolve the dispute amicably, including, if appropriate, utilization of mediation or other methods of alternative dispute resolution. If the dispute cannot be resolved amicably, you and we both agree that any action or proceeding relating to or arising out of the dispute will be exclusively brought in a state or federal court located in the Specified State and you and we each agree that any such court has, and may exercise, personal jurisdiction over each of you and us in any such action. You agree that in any proceeding in which an order or judgment is entered in our favor, you are responsible for payment of our reasonable attorneys' fees relating to such matter, including, without limitation, the reasonable fees of attorneys employed at the Firm as well as any outside counsel. Conversely, we agree that in any proceeding in which an order or judgment is entered in your favor, we will be responsible for payment of your reasonable attorneys' fees relating to such matter, including, without limitation, the reasonable fees of attorneys employed by you as well as any outside counsel.

### C.    New York Fee Dispute Process

If any of our New York licensed lawyers work on this matter and if a material portion of the legal services we provide to



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 9

you takes place in New York, you may have an option to invoke arbitration should a fee dispute arise between you and us during or at the conclusion of this engagement. Specifically, in any civil matter where the fee dispute involves a sum of up to $50,000, you may have a right to compel resolution by binding arbitration. In addition, whether or not binding arbitration is available, both you and we are encouraged to seek resolution of lawyer-client disputes, including fee disputes, through mediation, and the New York Courts and Bar have established a program for mediation of such disputes by an impartial mediator. In the event that any fee dispute should arise in this engagement which is not promptly and satisfactorily resolved between you and us, we shall furnish you with further details concerning the procedures and effects of arbitration and mediation, so that you can make an informed decision as to how to proceed in the circumstances.

**D.      California Dispute Process**

If any of our California licensed lawyers work on this matter, or if you are a California resident, you may have a right to invoke arbitration should a fee dispute arise between you and us during or at the conclusion of this engagement, under the California Mandatory Fee Arbitration Program (Business & Professions Code §§ 6200 et seq.).

**Limitation of Representation; Client Responsibilities**

The Firm has no obligation to provide legal services until the Firm is satisfied that you have accepted the Engagement Agreement and paid any initial retainer called for in the Engagement Letter.

Except as expressly agreed to in the Engagement Letter, our representation of you in any litigation matter will be limited to the final disposition of the matter described therein, whether by trial, judgment, settlement, or other final disposition, by the court, agency, or other administrative body where it is initially pending and shall not include any appeals therefrom to any other court, agency, or administrative body. Should we agree to represent you in an appeal, the terms and conditions of that representation shall be set forth in a separate Engagement Agreement.

Our services will not include advice on tax related issues or the tax implications of any transaction or course of action unless (and then only to the extent that) this is expressly agreed at the commencement, or during the course, of a matter.

**Publicity**

We are often asked to provide examples of our relevant experience in certain fields of work, for use, for example, in the Firm's publicity material. Unless you advise to the contrary, we will assume that we can refer to the fact that we act for you, and may describe in general terms the nature of the work. In the event that we wish to publicize any further details, we would first seek your express authority to do so.

**Severance of Terms**

If all or any part of the Engagement Agreement is or becomes illegal, invalid, or unenforceable in any respect, the remainder will remain valid and enforceable.

**No Third Party Rights**

No provision of the Engagement Agreement is intended to be enforceable by any third party. Accordingly, no third party shall have any right to enforce or rely on any provision of the Engagement Agreement.

**Integration Clause; Inconsistencies**

This Engagement Agreement supersedes any earlier terms of business we may have agreed with you and, in the absence of express agreement to the contrary, will apply to the services referred to in any Engagement Letter accompanying these Terms and all subsequent legal services we provide to you. In the event of any inconsistency between these Terms and the Engagement Letter, the Engagement Letter shall prevail.

You acknowledge that the terms of this Engagement Agreement govern the relationship between the Firm and the Client, notwithstanding any terms of any outside counsel guidelines or the like that you may have sent or send to us from time to time, except to the extent that we may otherwise expressly agree in writing. To the extent that we agree to the applicability of any such guidelines, and the terms of such



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 10

guidelines and the Engagement Agreement materially conflict, the Engagement Agreement shall control, except to the extent that we may otherwise expressly agree in writing.

**Existing and Future Conflicts Waiver**

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between multiple clients of an attorney or law firm and their existing and former clients (collectively, "**the Conflicts Rules**").

The nature and scope of our work for other clients may give rise to conflicts at this time or in the future. The purpose of this section of the Engagement Agreement is to explain how we propose to treat existing or future conflicts issues so that you can decide now whether or not to be represented by the Firm. In other words, the purpose of this section of the Engagement Agreement is to seek and obtain a waiver of existing and future conflicts, but to do so subject to the conditions and limitations noted herein.

Your acceptance of the Engagement Agreement indicates to us that you find these consents, waivers, and conditions requested and sought below to be acceptable and agree that our representing you in these matters will not prevent or disqualify us from representing clients adverse to you in other matters as set forth herein and that you consent in advance to our undertaking such adverse representations.

The Firm seeks a waiver only for work that is entirely factually and legally unrelated to the matters on which we represent you (the "**Matters**"). Thus the Firm **does not** request a waiver that would allow it:

- At any time, to disclose or use adversely to you any confidential Client information we obtain in the course of representing you in the Matters;

- For so long as the Firm continues to represent you, to refrain from any requirements under applicable Conflicts Rules to screen the lawyers who work for you from any lawyers who may work on matters adverse to you, and vice versa; or

- To sue you on behalf of another client during the Firm's representation of you.

Outside of these limitations, the Firm is and will remain free to represent other clients adverse to you. In other words, we may represent other clients in negotiations, business transactions, trading claims, trading debt, trading equity interests, trading securities and trading other types of rights and obligations, litigation (unless you are named as a party in a litigation in which we represent another client that is suing you in such litigation), alternative dispute resolution, administrative proceedings, interpleader proceedings, bankruptcy and other insolvency proceedings, and discovery and discovery disputes, including, without limitation, subpoenas, document requests, and depositions, class actions (unless you are named as a party in a class action in which we represent another client that is suing you), or other legal matters even if those matters are adverse to you or if those clients are competitors, including, without limitation, with respect to advice relating to intellectual property strategy, due diligence, licensing and development agreements, joint ventures, and intellectual property protection matters, including, without limitation, trademarks, patents, and copyrights. For example, the Firm shall be permitted to represent other parties in transactions, where you are not represented by the Firm, or in an interpleader, bankruptcy, or other insolvency proceeding, including in adversary proceedings thereunder, such as a debtor, other creditors or creditor groups or an Official Committee of Unsecured Creditors, including, but not limited to, in connection with a matter in which you are a party in interest. Further, if you are or become adverse to another client of the Firm in any matter, whether or not we represent you in such matter, the Firm will also remain free to represent the Firm's other client in other matters, without regard to whether the matter in which you are adverse to the Firm's other client involves negotiations, business transactions, trading claims, trading debt, trading equity interests, trading securities and trading other types of rights and obligations, litigation, alternative dispute resolution, administrative proceedings, interpleader proceedings, bankruptcy and other insolvency proceedings, discovery and discovery disputes, subpoenas, document requests, depositions, class actions, or other legal matters.

**BR**

Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 11

You acknowledge that the Firm might now represent or in the future represent other clients in matters in which its other clients' interests are adverse to the interests of Client Affiliates. You acknowledge and agree that, except as the Firm may otherwise agree in writing, (a) the Firm represents only the Client and not the Client Affiliates, (b) you do not view our current or future representation of other clients with interests that are adverse to Client Affiliates as creating a conflict of interest with our representation of Client, and (c) you will not use or permit others to use our representation of Client as a basis for objecting to or seeking our disqualification from our representation of other clients in current and future matters, including litigation, in which our other clients' interests are adverse to the interests of Client Affiliates.

The Firm represents other clients to whom the Firm does not provide legal services, such as its government relations clients, and the Conflicts Rules do not apply to such services. You understand and agree that the Firm may provide non-legal services to such other clients in matters that might be directly adverse to you or your interests.

The Firm regularly represents companies in bid protest actions before the U.S. Government Accountability Office ("**GAO**"), state and federal agencies, and the U.S. Court of Federal Claims ("**CFC**"). Those actions are filed against contract award and selection decisions by agencies or in support of those decisions. You agree that the Firm may represent any protester or intervenor in any GAO, CFC, or state actions, even where you or a company affiliated with you is a party to such actions as an awardee or intervenor.

Although unlikely, it may be necessary in the course of your representation for our lawyers to analyze or address their professional duties or responsibilities or those of the Firm, and to consult with the Firm's general counsel or other lawyers in doing so. To the extent we are addressing our duties, obligations or responsibilities to you in those consultations, it is possible that a conflict of interest might be deemed to exist as between our lawyers or the Firm and you. As a condition of this engagement, you consent to any conflict of interest that might be deemed to arise out of any such consultations. You further agree that these consultations are protected from disclosure by the Firm's attorney-client privilege and that you will not seek to

discover or inquire into them. Of course, nothing in the foregoing shall diminish or otherwise affect our obligation to keep you informed of material developments in your representation, including any conclusions arising out of such consultations to the extent that they affect your interests.

We have conducted a search of our Firm's conflicts database. We have disclosed to you any ethical conflicts of interest that existed at such time, as defined by the applicable rules of professional conduct, other than those to which you have consented herein. You agree that such disclosed conflicts, if any, have been resolved to your satisfaction.

Subject to any applicable Conflicts Rules, the terms of this waiver and consent shall last indefinitely.

As you know, you have had the opportunity to discuss this conflicts waiver and its potential implications with us by phone or in person, and we strongly urge you not to accept this Engagement Agreement if you have any unanswered or unaddressed reservations or concerns. Any time a client makes a decision to waive future conflicts of interest, there are questions it should address, including:

- Is there a material risk of adverse disclosure or use of confidential client information?

- Is there a material risk that the law firm will be less zealous or eager when representing the client in the applicable matter because of other adverse representation?

- Is the client ready, willing, and able to live by its commitments in the future?

As to the first two questions, we believe that any risk to you is minimal to nonexistent in light of the protections and limitations contained in this Engagement Agreement. As to the final question, that is necessarily your choice and not ours.

You have advised us that this waiver will be treated as an express exception to any of your general policies against granting waivers of conflicts of interest, provided that it is limited to the terms described in this Engagement Agreement for our representation of you in connection with



Guo Wengui (a/k/a Miles Guo)
February 14, 2022
Page 12

the Matters, and that you have obtained any requisite internal approvals for this exception.



| BROWN RUDNICK LLP | |
| :---: | :---: |
| *Schedule of Disbursement Charges* | |
| **TYPE** | **RATE** |
| Photocopying or Laser Printing or Scanned Copies | 30¢ per page |
| Oversized/Color Copies or Color Laser Printing | $1.80 per page |
| Telecopy | $2.00 per page |
| Binding | $3.00<br>11¢ per tab<br>20¢ per pocket |
| Courier Services | $30.00 minimum |
| Legal Analyst Services | $90.00 per hour |
| Electronic Discovery and Document Maintenance Database Charges | $30 per user per month for Viewpoint license and $7 per GB per month for storage of data. |
| Imaging Costs | <u>Electronic Binder:</u><br>Document Indexing $1.75 per bookmark<br>Oversized Documents $1.80 per document<br>Master CD $60.00<br>Additional Copies $30.00 each<br><br><u>Summation:</u><br>Single TIF imaging 11¢ each<br>Single TIF OCR 3¢ each<br>TIF to PDF conversion 5¢ each |
| Mileage Allowances | 58¢ per mile |
| Outgoing Long Distance Telephone | 34¢ per minute |
| Lexis/Westlaw or other document retrieval | Usage Charge as assessed by Service Provider[1] |
| Messenger Services | $20 minimum |
| Postage | Actual Cost |
| Taxi Services | Actual Cost |
| Supplies | Actual Cost |
| Food Services | Actual Cost |
| Travel Expenses | Actual Cost |
| News Watch Services | <u>News Watch email alerts:</u><br>Weekly @ $50 per week; Daily @ $45 per day |
| Accuroute Scan | 30¢ per page |
| Docketing System Charges | Actual Cost |
| Third-Party Electronic Document Maintenance Charges | $75 per user per month for Case Notebook license and $30 per GB per month for storage of data.<br>$75 per user per month for CaseLogistix license and $30 per GB per month for storage of data. |

---

[1] Brown Rudnick may benefit from a different, bulk pricing formula.



**ANNEX 1**

**ENGAGEMENT LETTER PRIVACY NOTICE**

In this privacy notice, the terms "**personal data**", "**data subject**", "**data controller**" and "**processing**" shall have the meanings ascribed to them in the General Data Protection Regulation (EU/2016/679) ("**GDPR**") and in any applicable national legislation implementing or replacing the GDPR (together "**Data Protection Law**").

This privacy notice applies to:

- Brown Rudnick LLP, a limited liability partnership organized in the Commonwealth of Massachusetts, USA and with its principal office at One Financial Center, Boston, MA 02111, and
- Brown Rudnick LLP, a limited liability partnership registered in England and Wales with company number OC300611 and its registered office at 8 Clifford Street, London W1S 2LQ,

together, referred to in this privacy notice as "**Brown Rudnick**", the "**Firm**", "**we**", "**us**" and "**our**".  Our UK entity is registered with the UK Information Commissioner's Office ("**ICO**") with number ZA073920.

This privacy notice applies to the extent that Brown Rudnick collects and/or processes personal data in the capacity of a data controller.  Any updates to this privacy notice will be notified to you.  This engagement letter privacy notice is in addition to our website privacy notice at www.brownrudnick.com/privacy-policy, which applies to the extent that you interact with our website at www.brownrudnick.com.

## 1.        What personal information we collect

In the course of entering into the arrangements documented in this letter and in supplying legal services to you, Brown Rudnick will collect and process personal data.  The following personal data may be collected in respect of you, your partners, directors, officers and employees (as applicable if you are an incorporated entity), and also your agents and other data subjects connected with you:

- Identity information, such as name, title, place and date of birth, gender, nationality, organization name and position, and information from photographic identity documents such as driving license or passport information.
- Contact data, such as address and email and personal and business telephone details.
- Financial and/or employment information including business activities and source of funds.  If you ask us to provide you with specific legal services, we may also ask you for further information relating to your employment.
- Details in respect of political exposure or any actual or alleged criminal convictions.
- Expressions of opinion, including in relation to the performance and other attributes of a data subject.



- Marketing and communications data, including preferences in receiving marketing and other communications from us.

We will process this data in accordance with this privacy notice, and with Data Protection Law. Other than as listed above, we do not usually collect 'special categories' of personal data from our clients, although we may do so if necessary to provide legal services to you, or if otherwise required by law. ('Special categories' of data include details about race or ethnicity, religious or philosophical beliefs, sex life, sexual orientation, political opinions, trade union membership, and health information.)

**2.      How we collect personal data**

You may provide us with personal data including identity and contact information, marketing and communications preferences, and financial data when you:

- join us as a client and undergo our 'know your client' and anti-money laundering process;
- correspond with us;
- provide us with access to your (or your organization's) corporate and financial records; or
- subscribe to our newsletters and updates.
- We may also obtain or verify information from public sources (such as Companies House) and/or third party search agencies for anti-money laundering and audit purposes. Information obtained from third parties may include your name (and other family names), address, any directorships you hold, political exposure, and any alleged or actual criminal offences.

**3.      How we use personal data**

We process personal data:

- where it is necessary to provide our services to you in accordance with the terms of engagement to which this privacy notice is annexed;
- in order to comply with our legal obligations (for example, to comply with anti-money laundering legislation and regulatory investigations);
- where the data subject has given his or her consent to the processing; and/or
- for our legitimate interests or those of any third party recipient of the personal data (for example, to enable to administer and manage our operations).

We will only retain this data for as long as is necessary to fulfill the purposes for which it was collected or to comply with legal, regulatory or internal policy requirements.



**4.      How we share your personal data**

We will only disclose your personal data where we are required to do so to comply with our legal or regulatory obligations; where we need to do so for business management or administration purposes; or because you have asked us to.  This is likely to include:

- within the Firm;
- to third parties who process your personal data on our behalf (such as IT systems providers and other service providers);
- to third parties who process your personal data on their own behalf but in connection with a service provided to us or you on our behalf (such as accountants, consultants, barristers and other providers of professional services, and in the case of disputes, with the Court or alternative dispute resolution providers);
- to companies providing services for money laundering checks and other fraud and crime prevention services;
- in the case of a business reorganization or restructuring, or our assignment or novation of our obligations; and/or
- to any government, regulatory agency, enforcement or exchange body or court where we are required to do so by applicable law or regulation.

**5.      International transfers of personal data**

Brown Rudnick is an international law firm.  Our provision of legal services to you will entail our transferring personal data outside of the European Economic Area.

When we transfer your data outside of the EEA to a country which the European Commission does not deem to have adequate data privacy laws, we will ensure that such transfer(s) are in accordance with applicable data privacy laws.  In respect of transfers within the Firm, we have executed a data transfer agreement giving effect to the Model Clauses pursuant to Commission decision 2004/915/EC.

In respect of transfers outside of the firm, we either implement the Model Clauses pursuant to Commission decision 2004/915/EC or 2010/87/EU (as appropriate) with the recipient of your personal data; and/or ensure that the recipient of your data is registered with the EU-US Privacy Shield.

You can obtain further information in this respect (including a copy of the Model Clauses) by contacting us.

**6.      How we protect your personal data**

We are committed to safeguarding and protecting personal data and maintain appropriate technical and organizational measures to protect any personal data provided to us from accidental or unlawful destruction,



loss, alteration, or unauthorized disclosure. We also have in place safeguards including data encryption in motion and at rest, data access and security monitoring, and 24/7 network security monitoring for breaches or anomalous behavior to ensure the security of your data.

**7.      Data subject rights**

Under Data Protection Law, data subjects have a number of rights with regard to their personal data. They have the right to request from us access to and rectification or erasure of their personal data, the right to restrict or object to processing, as well as in certain circumstances the right to data portability.

If a data subject has provided consent for the processing of their data, he or she has the right (in certain circumstances) to withdraw that consent at any time.

Any data subject wishing to exercise any of the above rights should email us at: gdprcommunications@brownrudnick.com.

We endeavor to respond to such requests within a month or less, although we reserve the right to extend this period for complex requests. We also reserve the right to charge you a reasonable administrative fee for any manifestly unfounded or excessive requests concerning access to personal data, and for any additional copies of the personal data requested from us.

**8.      Lodging a complaint with the regulator**

Any data subject may lodge a complaint with our data protection regulator if they consider that we have breached their data protection rights. Our data protection regulator is the Information Commissioner's Office, which can be contacted at:

Wycliffe House, Water Lane, Wilmslow, Cheshire, SK9 5AF, United Kingdom.
Telephone: 0303 123 1113 (local rate) or (+44) 1625 545 745 (national rate)
Fax: 01625 524 510
Email: enquiries@ico.org.uk

We would, however, be grateful if you would contact us in the first instance so we can endeavor to deal with your concerns direct.

**9.      Contacting us**

If you have any queries about this privacy notice, or about how your personal data (or personal data provided by you) is processed, please contact us using the details set out below:
Data Protection Officer at gdprcommunications@brownrudnick.com or you can write to these individuals at the addresses set out below:



James Darsigny
Brown Rudnick LLP
One Financial Center
Boston, MA 02111

Tamara Quailey-Tulloch
Brown Rudnick LLP
8 Clifford Street
London W1S 2LQ

64455298 v3-WorkSiteUS-000001/5113

## SCHEDULE 1

**Debtor and Aliases**

Guo Haoyun
Guo Wen Gui
Guo Wengui
Guo Wen-Gui
Gwo Wen Gui
Hao Yung Guo
Haoun Guo
Haoyun Guo
Haoyunguo
Ho Kwok
Ho Wan Kwok
Ho Wankwok
Kwok Ho
Kwok Ho Wan
Miles Guo
Miles Kwok
Wan Gue Haoyun
Wan Gui Haoyun
Wen Gui Gwo
Wengui Guo

**Professionals and Related Vendors**

Aaron Mitchell
Ari Casper
Baker Hostetler LLP
Bankruptcy Management Solutions, Inc.
(trade name Stretto)
Brown Rudnick LLP
Clayman Rosenberg Kirshner & Linder LLP
Craig R. Jalpbert
Damon Parker
Dr. Eric Goldsmith
Forbes Hare
Ganfer Shore  Leeds & Zauderer LLP
Guy Petrillo
Harcus Parker Limited
Isabelle Kirshner
Janover LLC
Jeffrey Gavenman
John Lau
John Siegal
Lalive
Lawall & Mitchell, LLC
Mark Zauderer
Martello Financial Services

**Professionals and Related Vendors (cont.)**

Matthew Hoyle Ltd.
Melissa Francis
Mindy Kamen
Montbrial Avocats
Petrillo Klein & Boxer LLP
Professor Brad Wendel
Robert Nader
Sa'ad Hossain
Sandrine Giroud
Schulman Bhattacharya, LLC
Sebastian Isaac
Shane Shook
The Casper Firm, LLC
The Francis Firm PLLC
Thibault de Montbrial
Una Wilkinson
Verdolino & Lowey, P.C.
Victor Cerda
VX Cerda & Associates
William Wendel

**Debtor's Family**

Hing Chi Ngok
Mei Guo
Qiang Guo (a/k/a Mileson)

**US Trustee Staff**

Erin Hogan
Frank Marino
Holley L. Claiborn
Jennifer J. Morey
John Gervais
Joseph H. Flamini
Kim McCabe
Nicole Neely
Sharon Warner
Steven E. Mackey
William Harrington

**Bankruptcy Court Judges & Clerk**

Judge Ann M. Nevins
Judge James J. Tancredi
Judge Julie A. Manning
Pietro Cicolini

**Taxing Authority**
Internal Revenue Service

**Debtor's Co-Defendants**
Beijing Pangu Investment Co.
Beijing Zenith Holdings Co.
Bravo Luck Ltd.
Dongna Fang
G Club Operations LLC
Genever Holdings Corporation
Genever Holdings LLC
GTV Media Group, Inc.
Lihong Wei Lafrenz (a/k/a Sara Wei)
Rule of Law Foundation III Inc.
Rule of Law Society IV, Inc.
Saraca Media Group, Inc.
Voice of Guo Media, Inc.

**Hong Kong Restraining Order Parties**
AAGC Limited
Alfa Global Ventures Limited
Alfonso Global Limited
Allied Capital Global Limited
Anton Development Limited
BSA Strategic Fund I
China Golden Spring Group (Hong Kong) Limited
Creative Apex Investments Limited
Crystal Breeze Investments Limited
Elite Well Global Limited
Globalist International Limited
Guo Lijie
Han Chunguang
Hong Kong International Funds Investments Limited
Infinite Increase Limited
Infinitum Developments Limited
Insight Phoenix Fund
Leading Shine Limited
Noble Fame Global Limited
Qu Guojiao
Rosy Acme Ventures Limited
Zhang Wei

**Unsecured Creditors & Other Parties in Interest**
Ace Decade Holdings Limited
Boxun, Inc.
Chao-Chih Chiu
Cheng Jian Wu Jian She
Chenglong Wang
Chong Shen Raphanella
Clark Hill PLC
Dawn State Limited
Eastern Profit Corporation Limited
Fan Bingbing
Forgepoint Capital
Gao Bingchen
Golden Spring (New York) Ltd.
Guo Baosheng
Haihong Wang
Hero Grand Limited
Hong Kong Interior Design and Engineering Company
Hong Qi Qu
Hong Zeng
Huizhen Wang
Jia Li Wang
Jiamei Lu
Jian Gong
Jianhu Yi And Qiuju Jia
Jiansheng Xie
Jiefu Zheng
Jonathan Young
Jumbo Century Limited
Jun Chen Aka Jonathan Ho
Jun Liu
June Juzhen Shi
Kaixin Hong
Keyi Zilkie
Lamp Capital, LLC
Liehong Zhuang/Xiao Yan Zhu
Linda Cheng
Linda He Cheung
Logan Cheng f/k/a Shuiyan Cheng
Mao-Fu Weng
Nan Tong Si Jian
New Dynamic Development Limited
Ning Ye
One Essex Court

**Unsecured Creditors & Other Parties in Interest (cont.)**

Pacific Alliance Asia Opportunity
Quiju Jia
Rafael Vargas
Real Rise Academy
Rong Zhan
Rui Ma
Ruqin Wang
Sail Victory Limited
Samuel Dan Nunberg
Samuel Nunberg
Sherry Netherland, Inc.
Shuang Wang
Strategic Vision
Teli Chen
Thomas Ragland
Transperfect
UBS AG
UBS AG (London Branch)
Us Legal Support
Veritext Legal Solutions
Wa&Hf, LLC/Ruizeng An
Weican ("Watson") Meng
Weiguo Sun
Weixiand Ge
Well Origin
Well Origin Limited
Wen Lin
Xaio Yan Zhu
Xiaobo He
Xiaodan Wang
Xiaoping Luo
Xingyu Yan
Xiqiu ("Bob") Fu, (Pastor Fu Or Dr. Fu)
Xiqiu Fu
Yan Gao
Yan Zhao
Yang Lan And Wu Zheng
Yeliang Xia
Yi Li
Ying Liu
Yua Hua Zhuang Shi
Yue Hua Zhu Shi
Yunxia Wu
Zeichner Ellman & Krause Llp

**Unsecured Creditors & Other Parties in Interest (cont.)**

Zheng Wu A/K/A Bruno Wu
Zhengjun Dong

**SCHEDULE 2**

| Entity Name | Relationship to Debtor | Current Client | Former Client | Adverse To Or Aligned With Current Or Former Clients In Unrelated Matters | Other Connection |
|---|---|---|---|---|---|
| Craig R. Jalbert* | Professional Advisor | X (solely in his capacity as trustee for a creditor trust) | X (solely in his capacity as trustee for a creditor trust) | | |
| Forbes Hare | Professional Advisor | | X | | |
| Internal Revenue Service | Taxing Authority | | X | X | |
| Judge Julie A. Manning | Bankruptcy Judge | | | | A Brown Rudnick member who is not involved in this matter has a previous professional and social connection to Judge Manning |
| UBS AG | Unsecured Claimant | | | X | |
| Verdolino & Lowey, P.C.* | Professional Advisor | | X | | |
| ZHENG WU a/k/a BRUNO WU | Top 20 Unsecured Claimant | | X (applicable to entity affiliated with searched entity) | | |

*Mr. Jalbert and Verdolino & Lowy, and Brown Rudnick, each have extensive insolvency practices and, for that reason, have been involved (at times for the same client, at other times for opposing interests, and at other times representing one another directly) on many occasions. However, none of other matters are related directly or indirectly to the Debtor or these proceedings