**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| HO WAN KWOK<br>a/k/a WENGUI GUO<br>a/k/a MILES GUO, | Case No. 22-50073 (JAM) |
| Debtor. | Re: ECF 86 |

**UNITED STATES TRUSTEE'S STATEMENT OF OBJECTION
CONCERNING THE APPLICATION OF THE DEBTOR FOR ENTRY
OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
<u>BROWN RUDNICK LLP AS COUNSEL FOR THE DEBTOR</u>**

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3)(I), respectfully files this statement of objection concerning the Application Of The Debtor For Entry Of An Order Authorizing The Employment And Retention Of Brown Rudnick LLP As Counsel For The Debtor ("Application") as chapter 11 counsel Ho Wan Kwok a/k/a Wengui Guo a/k/a Miles Guo ("Debtor" and/or "Kwok"). ECF 86. In support of his statement of objection, the United States Trustee, through his undersigned counsel, respectfully represents and states the following:

<u>**PRELIMINARY STATEMENT**</u>

The Debtor seeks to employ Brown Rudnick LLP ("BR") as his chapter 11 bankruptcy counsel. The Application, however, invites several concerns that warrant denial of the Application in its current form because it fails to meet the requirements of Section 327(a) and

1

Rule 2014(a) and provides for inappropriate relief. As described herein, the United States Trustee objects to the Application because BR fails, in a case wherein transparency has been at issue, to adequately disclose BR's connections to the Debtor and his creditors. Further, BR inappropriately seeks approval by this Bankruptcy Court of an illegal and improper prospective global conflicts waiver, seeks to have protections for its compensation, and also inappropriately seeks to circumvent the jurisdiction of this Bankruptcy Court over the Application and to cede jurisdiction regarding any disputes to state courts in New York.

The United States Trustee asks the Court to deny the Application without prejudice or, in the alternative, defer determination until such time as BR has supplemented and/or revised the Application to address the issues raised herein.

## FACTS

1. The Debtor, also known as Wengui Guo, Miles Guo, and Miles Kwok, as well as numerous other aliases, filed a voluntary chapter 11 petition ("Petition") on February 15, 2022. ECF 1.

2. The Debtor is currently managing his financial affairs and his business interests pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in this case. ECF 108. To date, the Committee has not filed an application to employ counsel.

4. On March 16, 2022, the Debtor filed the Application seeking to employ BR as his chapter 11 bankruptcy counsel. ECF 86. The Application is supported by the Affidavit of William Baldiga. *Id.*

*Compensation for services*

5.  The Affidavit of William Baldiga discloses that the Debtor signed an engagement agreement with BR dated February 14, 2022 ("Engagement Agreement") and refers to the Engagement Agreement being attached thereto as Exhibit A. ECF 86. The Engagement Agreement, however, was not attached to the Affidavit of William Baldiga or filed with the Application.

6.  On March 30, 2022, upon being notified by the undersigned that the Engagement Agreement had not been filed with the Application, BR filed a full version of the Affidavit of William Baldiga which included the Engagement Agreement ("Affidavit"). ECF 142.

7.  Paragraph 17 of the Application discloses that a $1 million dollar retainer was paid to BR by the Debtor on February 14-15, 2022 in tranches of $500,000.00 and funded by a loan to the Debtor by an entity known as Lamp Capital, LLC ("Lamp Capital"), which the Debtor claims is owned by his son. *See* Application at ¶ 17. BR discloses that it used and applied $51,835.00 of the $1 million dollars during the approximately 24-hour period between being engaged on February 14, 2022 and the February 15, 2022 petition filing. *See* Application at ¶ 17; Affidavit at ¶¶ 7, 8. BR is currently holding $948,164.80 as a retainer ("Retainer"). *See* Application at ¶ 17; Affidavit at ¶¶ 7, 8.

8.  According to the Application and the Affidavit, BR's compensation structure includes hourly rates ranging from $1,685.00 per hour to $435.00 per hour. *See* Application at ¶ 13. Further, the Application states that BR will draw down on the Retainer to pay approved fees and expenses until the Retainer has a balance of $250,000.00, at which point it will transform into an evergreen or security retainer which will be held by the BR as security for any unpaid

fees. *See* Application at ¶ 18.

9.  The Engagement Agreement states that BR has the right to charge 9% interest on fees unpaid after 30 days. *See* ECF 142 at Engagement Agreement at ECF page 13 of 35.

10. The Engagement Agreement also includes a schedule of disbursement charges for certain services that conflicts in certain respects with Appendix D to the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut ("Local Bankruptcy Rules") and 11 U.S.C. § 330. See ECF 142 at Engagement Agreement at ECF page 24 of 35. For example, BR charges more for copies than the limit stated in Appendix D and BR says that it may "benefit from a different, bulk pricing formula" with "Lexis/Westlaw or other document retrieval" despite the limitation in the Local Bankruptcy Rules and in Section 330 to seek reimbursement of only actual expenses. *Id.*

11. Additionally, the Engagement Agreement excludes any appellate work. *See* ECF 142 at Engagement Agreement at ECF page 20 of 35.

12. Lastly, the Engagement Agreement provides that the relationship with the Debtor, and any disputes therewith, is governed by New York law and by New York courts. *See* ECF 142 at Engagement Agreement at ECF page 20 of 35.

*Disclosures required by Section 327(a) and Rule 2014(a)*

13. The Affidavit discusses the efforts of BR to search and disclose the connections and representations to certain parties in this case required pursuant to Section 327(a) and Rule 2014(a).

14. BR's disclosures, however, are incomplete.

15. Paragraph 23 of the Affidavit states that there are "additional connections which are still in the process of being reviewed" but does not state what these additional connections are, nor has BR supplemented its disclosures since filing the Application. *See* Affidavit at ¶ 23.

16. Further, paragraph 25 of the Affidavit contains language that could be interpreted and understood to mean that BR has *not* disclosed all of its connections to the persons/parties listed in Rule 2014(a). Paragraph 25 says: "Except as set forth herein or on **Schedule 2**, all of Brown Rudnick's connections are unrelated to Mr. Kwok or this Chapter 11 Case." (emphasis in original). It is unclear whether BR has disclosed any and all connections to the persons/parties listed in Rule 2014(a).

17. Additionally, BR discloses that it has a client relationship with the Debtor's proposed financial advisor, Verdolino & Lowey, P.C. ("V&L"), and with Craig Jalbert ("Jalbert"), a principal of V&L. *See* Schedule 2 to Affidavit. The disclosure is that both V&L and Jalbert are former clients of BR, and that Jalbert is a current client in his capacity as a trustee for a creditor trust.[1] Neither the Application nor the Affidavit discuss a conflict waiver being executed by V&L and Jalbert so as to enable BR to be adverse to them should circumstances in this case so warrant.

18. Further, BR discloses that it has a former client relationship with a Zheng Wu a/k/a Bruno Wu ("Creditor Wu"), who is a creditor on the List of Twenty Largest Unsecured Creditors (ECF 20). *See* Schedule 2 to Affidavit. BR does not explain the nature of this representation, nor does BR indicate that it has obtained a conflict waiver so as to enable BR to

---

[1] The Debtor's application to employ V&L discloses that BR is currently counsel to Jalbert in his capacity as the post-confirmation fiduciary in a chapter 11 case, and BR was formerly counsel to Jalbert in his capacity as the post-confirmation fiduciary in two other chapter 11 cases. ECF 90 at Affidavit of Craig Jalbert at ¶4(a).

be adverse to Creditor Wu should circumstances in this case so warrant.

19.     Lastly, Schedule 2 to the Affidavit contains a column titled "Adverse to or Aligned with Current or Former Clients in Unrelated Matters" and has checked that column with respect to Forbes Hare, a pre-petition professional of the Debtor, and with respect to UBS AG, a defendant in one of the Debtor's primary litigation claims. *See* Declaration of Debtor, ECF 107 at ¶ 32. It is unclear what this column of Schedule 2 is intended to disclose and what a reader should understand about the relationships with Forbes Hare and UBS AG.[2]

20.     The Engagement Agreement purports to serve as a universally applicable waiver of current *and* future conflicts of interest. *See* ECF 142 at Engagement Agreement at ECF pages 21-23 of 35.

## ARGUMENT

**I.     Requirements of Section 327(a) and Rule 2014(a)**

The legal standards governing retention of a professional by the Debtor are generally contained in 11 U.S.C. § 327(a).[3] Pursuant to Section 327(a), there are two basic requirements for retention of counsel to represent a debtor's estate: (1) the attorney must not "hold or represent an interest adverse to the estate," and (2) the attorney must be a "disinterested person." 11 U.S.C. § 327(a); *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 107 (2d Cir. 2001). Section 327(c) applies when, as here, the proposed counsel represents a creditor of the debtor:

> In the case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the

---

[2] Litigation against UBS AG is alleged to be one of the Debtor's primary assets and recovery from UBS AG will be used to fund a plan. *See* Declaration of Debtor, ECF 107 at ¶¶ 40 and 54.

[3] An exception exists for the retention of "Special Counsel" for a specific purpose which is governed by the "looser" standards of 11 U.S.C. § 327(e) which are not applicable here.

> United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

Section 327(c) "does not obviate the essential requirement that a professional not have an interest adverse to the estate." *In re Project Orange Assocs., LLC*, 431 B.R. 363, 371 (Bankr. S.D.N.Y. 2010) (citing *In re Arochem Corp.*, 176 F.3d 610, 621 (2d Cir. 1999)). Where there is an objection to the retention of proposed counsel for the debtor and an actual conflict of interest exists, the Court must disqualify the counsel. *In re Project Orange Assocs., LLC*, 431 B.R. at 371.

The Second Circuit defines "adverse interest" as follows:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Arochem Corp.*, 176 F.3d 610, 621 (2d Cir. 1999). The "determination of an adverse interest is objective and concerned with the appearance of impropriety." *In re Angelika Films 57th Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998). "The disqualifying adverse interest addressed in § 327. . . is either an actual or a reasonably probable conflict of interest." *In re AroChem*, 181 B.R. 693, 700 (Bankr. D.Conn. 1995) (Shiff, J.), *aff'd, In re AroChem Corp.*, 176 F.3d 610 (2nd Cir. 1999). "Whether an adverse interest exists is best determined on a case-by-case basis." *In re Arochem Corp.*, 176 F.3d at 623 (*citations omitted*). The standards in section 327(a) are "phrased in the present tense, permitting representation by professionals 'that do not *hold* or *represent* an interest adverse to the estate.'" *Id*. (emphasis in original).

The Bankruptcy Code defines a "disinterested person" as one who is "not a creditor, equity security holder, or an insider", and who "does not have an interest materially adverse to the interest of the estate or any class of creditors … by reason of any indirect or direct relationship to, connection with, or interest in, the debtor …" 11 U.S.C. § 101(14)(A) and (E). "The 'materially adverse' standard incorporated in the disinterestedness test and the 'interest adverse to the estate' language in section 327(a) overlap. To this extent, the two prongs of section 327(a) are duplicative and form a single test to judge conflicts of interest." *In re Granite Partners, L.P.,* 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998); *see also JMK Construction Group, Ltd.,* 441 B.R. 222, 229 (Bankr. S.D.NY. 2010).

Bankruptcy Rule 2014(a) requires affirmative disclosure in a retention application of, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants." Fed. R. Bankr. P. 2014(a). "It is abundantly clear that Fed. R. Bankr. P. 2014(a) requires a significant level of disclosure of the proposed professional's 'connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants' … ." *In re Matco Electronics Group, Inc.,* 383 B.R. 848, 852-853 (Bankr. N.D.N.Y. 2008). Furthermore,

> It is equally clear that the level of disclosure outlined in the Rule is mandatory, whether or not that disclosure would unearth a conflict of interest. It is also apparent that the obligation to disclose is not a subjective one, whereby the professional discloses only those "connections" that he/she/it concludes are relevant …
>
> As indicated, the existence of a conflict of interest is not the quid pro quo for whether or not the disclosure must be made. Sanctions are imposed for the failure to disclose, regardless of the consequences of the non-disclosure … '[I]n the Second Circuit a

8

> violation of the disclosure rule alone is sufficient to deny
> compensation regardless of whether the undisclosed connection
> was materially adverse to the estate.'

*Id.* (*internal citations omitted*); *see also In re Peterson*, 163 B.R. 665, 670 (Bankr. D. Conn. 1994) (citing *Futuronics Corp. v. Arutt, Nachamie & Benjamin (Matter of Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir. 1981) ("As a general rule, the consequences of failure to make a full disclosure under Section 327(a) and Rule 2014(a) is the denial of all compensation for post-petition services.")). "Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees … disclosures must be direct and comprehensive; that is, the attorney must make a full, candid and complete disclosure." *In re Chin Kim*, 2012 WL 3907490 at *4 (Bankr. E.D.N.Y. 2012) (*internal citations omitted*).

"Counsel for a chapter 11 debtor owes a fiduciary duty of loyalty and care to his client which is the debtor-in-possession." *In re Angelika Films 57th Inc.*, 227 B.R. 29, 39 (Bankr. S.D.N.Y. 1998) (*citing In re Rancourt*, 207 B.R. 338, 360 (Bankr. D. NH 1997)) (debtor's counsel, who also represented debtor's principal, denied all compensation due to conflict). Disqualification of counsel is appropriate when "'it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation'" *In re Granite Partners, L.P.*, 219 B.R. at 33 (quoting *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)).

"'By regulating the trustee's ability to hire professionals, section 327 serve[s] the important policy of ensuring that all professionals appointed [to represent the debtor] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Homesteads Community at Newtown, LLC*, 390 B.R. 32, 47 (Bankr. D.Conn. 2008) (*quoting In re AroChem Corp.*, 176 F.3d 610, 621 (2nd Cir. 1999)). "The

mandatory provisions of section 327(a) do not allow for waiver." *In re Granite Partners, L.P.*, 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998) (*citations omitted*).

## II. **Deficiencies in the Application**

### a. *Inadequate Disclosure*

A bankruptcy professional seeking to be employed has a duty to both identify a potential conflict or adverse interest AND provide the detail which creates that potential or actual conflict and provide specific information which demonstrates that that potential conflict or adverse interest does not disqualify it from employment by the bankruptcy estate. BR has failed to meet its obligations for a full and comprehensive disclosure and has not properly addressed conflict issues.

Paragraph 23 of the Affidavit states that there are "additional connections which are still in the process of being reviewed" but does not state what these additional connections are, nor has BR supplemented its disclosures since filing the Application. *See* Affidavit at ¶ 23. Paragraph 25 of the Affidavit contains language that could be interpreted and understood to mean that BR has *not* disclosed all of its connections to the persons/parties listed in Rule 2014(a). Paragraph 25 says: "Except as set forth herein or on **Schedule 2**, all of Brown Rudnick's connections are unrelated to Mr. Kwok or this Chapter 11 Case." (emphasis in original). It is unclear whether BR has disclosed any and all connections to the persons/parties listed in Rule 2014(a).

Additionally, Schedule 2 to the Affidavit leaves unanswered the questions of the nature of BR's relationship with UBS AG and Forbes Hare and whether BR can be adverse to UBS AG and Forbes Hare. Further, Schedule 2 to the Affidavit notes client relationships with V&L and Jalbert without providing proof of conflict waivers and seems to purportedly waive any issues by

reference to the terms of the Engagement Agreement. The same is true with respect to Creditor Wu.

Conflict waivers should be an independent document which fully discloses the conflict, a debtor's rights to waive or not waive such conflict, and the consequences of doing either. Here, the Engagement Agreement contains three pages of nuanced and specific language in small print about conflicts and waivers that purports to relieve BR of current and future conflict issues, and that is not specific to the Debtor or his bankruptcy case. Such language is inadequate to meet the rigorous requirements of Section 327(a) and should not be permitted to govern the employment analysis.

    *b. Compensation and Reimbursement of Expenses*

BR is holding a Retainer of $948,164.80. This amount is significant, especially in view of the fact that the Debtor's limited assets identified to date amount to less than $10,000, with the majority, including certain causes of action, being valued at "unknown." ECF 78. Further, the Application states that BR intends to keep a balance of $250,000.00 as a retainer in this case. *See* Application at ¶ 18. Given the lack of liquid assets in this case, the United States Trustee opposes a retainer that has a floor (and which may be interpreted as an evergreen retainer) because it provides a protection exclusive to BR.

The United States Trustee also opposes as inappropriate BR's position that it may charge 9% interest on unpaid fees and that it may seek reimbursement of expenses at a level and in a manner that conflicts with the Local Bankruptcy Rules by, as just one example, charging more for copies than the limit stated in Appendix D of the Local Bankruptcy Rules. BR should be held to the requirements of the Local Bankruptcy Rules and Section 330/331 and BR should not be permitted to charge interest. Further, the reference to Section 328(a) in the proposed order should

be removed so as to avoid any limitations on the fee review and approval process. Lastly, all disputes relating to the services of BR should be determined pursuant to Connecticut law and in this Court, not New York.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the United States Trustee respectfully requests that the Court deny the Application without prejudice, or, in the alternative, defer determination until such time as BR has supplemented and/or revised the Application to address the issues raised herein.

Dated: April 6, 2022  
      New Haven, Connecticut

Respectfully submitted,  
WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE FOR REGION 2

By:   /s/ Holley L. Claiborn  
      Holley L. Claiborn

/s/ Steven E. Mackey  
Steven E. Mackey

Trial Attorneys  
Office of the United States Trustee  
Giaimo Federal Building, Room 302  
150 Court Street  
New Haven, CT 06510  
Holley.L.Claiborn@usdoj.gov  
Federal Bar No.: ct17216 (Connecticut)  
Steven.E.Mackey@usdoj.gov  
Federal Bar No: ct09932(Connecticut)  
(203) 773-2210

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing objection was served on all appearing parties via the Court's electronic case filing system noted below:

William Baldiga on behalf of Debtor Ho Wan Kwok
wbaldiga@brownrudnick.com

William R. Baldiga on behalf of Debtor Ho Wan Kwok
wbaldiga@brownrudnick.com

Patrick M. Birney on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
pbirney@rc.com, ctrivigno@rc.com

Carollynn H.G. Callari on behalf of 20 Largest Creditor Rui Ma
ccallari@callaripartners.com

Carollynn H.G. Callari on behalf of 20 Largest Creditor Weican Meng
ccallari@callaripartners.com

Carollynn H.G. Callari on behalf of Creditor Zheng Wu
ccallari@callaripartners.com

David S. Forsh on behalf of 20 Largest Creditor Rui Ma
dforsh@callaripartners.com

David S. Forsh on behalf of 20 Largest Creditor Weican Meng
dforsh@callaripartners.com

David S. Forsh on behalf of Creditor Zheng Wu
dforsh@callaripartners.com

Peter Friedman on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
pfriedman@omm.com

Irve J. Goldman on behalf of Creditor Committee Official Committee of Unsecured Creditors
igoldman@pullcom.com, rmccoy@pullcom.com

David V. Harbach, II on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
dharbach@omm.com

Jonathan Kaplan on behalf of Creditor Committee Official Committee of Unsecured Creditors
jkaplan@pullcom.com, prulewicz@pullcom.com;rmccoy@pullcom.com

Dylan Kletter on behalf of Debtor Ho Wan Kwok
dkletter@brownrudnick.com,
adeering@brownrudnick.com;upinelo@brownrudnick.com;bsilverberg@brownrudnick.com;rstark@brownrudnick.com

Kristin B. Mayhew on behalf of 20 Largest Creditor Rui Ma
kmayhew@mdmc-law.com, kwarshauer@mdmc-law.com;bdangelo@mdmc-law.com

Kristin B. Mayhew on behalf of 20 Largest Creditor Weican Meng
kmayhew@mdmc-law.com, kwarshauer@mdmc-law.com;bdangelo@mdmc-law.com

Kristin B. Mayhew on behalf of Creditor Zheng Wu
kmayhew@mdmc-law.com, kwarshauer@mdmc-law.com;bdangelo@mdmc-law.com

Timothy D. Miltenberger on behalf of Interested Party Golden Spring (New York) LTD
Tmiltenberger@cbshealaw.com, msullivan@cbshealaw.com;dtempera@cbshealaw.com

Scott D. Rosen on behalf of Interested Party Golden Spring (New York) LTD
srosen@cb-shea.com, kseaman@cbshealaw.com

Stuart M. Sarnoff on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
ssarnoff@omm.com

Bennett Silverberg on behalf of Debtor Ho Wan Kwok
bsilverberg@brownrudnick.com

Annecca H. Smith on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
asmith@rc.com

Jay Marshall Wolman on behalf of Creditor Logan Cheng
jmw@randazza.com, ecf-6898@ecf.pacerpro.com

Peter J. Zarella on behalf of 20 Largest Creditor Rui Ma
pzarella@mdmc-law.com

Peter J. Zarella on behalf of 20 Largest Creditor Weican Meng
pzarella@mdmc-law.com

Peter J. Zarella on behalf of Creditor Zheng Wu
pzarella@mdmc-law.com

By:  /s/ Holley L. Claiborn
     Holley L. Claiborn