**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| HO WAN KWOK<br>a/k/a WENGUI GUO<br>a/k/a MILES GUO, | Case No. 22-50073 (JAM) |
| Debtor. | Re: ECF 117 |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL DIP ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN UNSECURED, SUBORDINATED POSTPETITION FINANCING AND (II) SCHEDULING INTERIM AND FINAL HEARINGS, AND (III) GRANTING RELATED RELIEF**

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), through counsel, hereby objects to Debtor's Motion For Entry Of Interim And Final DIP Orders (I) Authorizing The Debtor To Obtain Unsecured, Subordinated Postpetition Financing, And (II) Scheduling Interim And Final Hearings, And (III) Granting Related Relief (ECF 117) ("DIP Financing Motion") filed by chapter 11 debtor Ho Wan Kwok a/k/a Wengui Guo a/k/a Miles Guo ("Debtor" and/or "Kwok"). In support of his objection to the DIP Financing Motion, the United States Trustee states follows:

**Preliminary Statement**

Ordinarily, a debtor's request for approval of a DIP financing motion, which ostensibly seeks approval of an unsecured subordinated DIP loan, would appear to be a positive development in a chapter 11 case. However, like all of Debtor's filings to date in this case, the DIP Financing Motion raises more questions than it answers.

The DIP Financing Motion provides little to no information regarding the identity of the Proposed DIP lender, Golden Spring NY, and its relationship to the Debtor. Throughout the case, the Debtor has maintained that he is not employed, has no income, and no assets, other than certain potential litigation claims. However, the DIP Financing Motion contains no information regarding why the Proposed DIP Lender is willing to make such a significant and generous loan to the Debtor, who has no disclosed ability to satisfy the loan in the future. The Debtor also has claimed to have no ownership interest in or control over the Proposed DIP Lender, which may or may not be controlled by his son or a member of his family. However, the Proposed DIP Lender has in the past - allegedly without being reimbursed - gifted funds to the Debtor to pay for all of his living expenses and has also paid for litigation expenses. Furthermore, the DIP Motion provides no information as to why the proposed DIP Lender has included certain onerous and inappropriate default provisions in its proposed terms, which seemingly inure to the sole benefit of the Debtor allowing the Debtor to exert inappropriate leverage over the bankruptcy process to the potential detriment of his current creditors including the proposed DIP Lender.

As noted above, the DIP Financing Motion seemingly offers funding to the Debtor's estate in a package that is enticing at first glance and appears to be on favorable terms to the Debtor and his creditors, but contained therein are a number of onerous and improper provisions designed to allow the Debtor to manipulate and control his chapter 11 case through an insider entity allegedly owned by the Debtor's son or a member of his family and to leverage the bankruptcy process to the potential detriment of his creditors. The DIP Financing Motion proposes an $8 million dollar loan in exchange for, among other things, the *quid pro quo* of the Court's denial of the pending motion for relief from stay filed by creditor Pacific Alliance Asia

Opportunity Fund L.P. ("PAX") and the Court not appointing a chapter 11 trustee at any time during the pendency of the chapter 11 case.

Accordingly, the DIP Financing Motion, while seemingly a positive development in the case, is in reality a tool designed by the Debtor to implement the Debtor's one-sided agenda, to continue to frustrate his creditors, to protect himself from the consequences of his conduct in the litigation with PAX in New York, and to continue his litigation tactics. But even worse than that, it seeks to tie the Court's hands and simultaneously cede, for all practical purposes, control of the chapter 11 case to the Debtor through terms and conditions imposed by an insider the Proposed DIP Lender. The DIP Financing Motion should not be approved.

## Background Facts

1.      The Debtor, also known as Wengui Guo, Miles Guo, and Miles Kwok, as well as numerous other aliases, filed a voluntary chapter 11 petition ("Petition") on February 15, 2022. ECF 1.

2.      The Debtor's Petition was filed by the firm of Brown Rudnick LLP ("BR Counsel"). ECF 1. The Debtor has filed an application to employ BR Counsel as his chapter 11 counsel and that application is scheduled to be heard on April 13, 2022. ECF 86 and ECF 123.

3.      The Debtor is currently managing his financial affairs and his business interests pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      On March 1, 2022, creditor PAX filed a motion for relief from stay to return to the litigation against the Debtor pending in Supreme Court of the State of New York ("PAX Lawsuit") to pursue return of the yacht known as the Lady May to New York ("PAX Stay Relief Motion"). ECF 57. The Debtor filed his chapter 11 case just days after a February 9, 2022 decision in the PAX Lawsuit that imposed a contempt award of $134,000,000 due to the

3

Debtor's failure to return the Lady May to New York ("February 2022 Contempt Decision"). *Id.*

5.  The PAX Stay Relief Motion, and the Debtor's objection thereto, was preliminarily considered by the Court on March 22, 2022 and continued for further hearing on April 13, 2022. ECF 57, 83, 98, 122. The Debtor also subsequently filed a supplemental brief in support of his objection to the PAX Stay Relief Motion. ECF 141.

6.  On March 19, 2022, the United States Trustee the filed a motion seeking an order directing the appointment of an examiner or, in the alternative, an order directing the appointment of a chapter 11 trustee ("UST Examiner/Trustee Motion"). ECF 102. The UST Examiner/Trustee Motion is scheduled for a hearing on April 13, 2022.

7.  On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in this case. ECF 108. To date, the Committee has not filed an application to employ counsel.

8.  The meeting of creditors pursuant to 11 U.S.C. §341(a) ("341 Meeting") commenced on March 21, 2022 and will reconvene on April 6, 2022. ECF 6; ECF 112.

### *DIP Financing Motion*

9.  The DIP Financing Motion seeks approval of an $8 million dollar loan ("DIP Loan") from Golden Spring (New York) Ltd. ("Golden Spring NY" or the "Proposed DIP Lender"), an insider and alleged secured creditor of the Debtor. ECF 117. Attached to the DIP Financing Motion is a proposed interim order, a proposed final order, and a loan document ("DIP Loan Document"). *Id.*

10. The DIP Financing Motion states that the DIP Loan is necessary to (a) retain and employ estate professionals, as well as to pay estate professionals, and (b) pay administrative expenses of the chapter 11 case. ECF 117 at ¶ 15, at chart on page 9, and at ¶26 and ¶ 34.

Without the DIP Loan, the Debtor asserts that he will be unable to retain and compensate his litigation professionals needed to pursue his litigation assets and will not be able to employ restructuring professionals to pursue reorganization. ECF 117 at ¶¶ 34, 26. The DIP Financing Motion does not discuss the fact that BR is currently holding $948,164.80 as a retainer ("Retainer") funded by a loan to the Debtor from another insider. ECF 86 at ¶ 17; ECF 142 at ¶¶ 7, 8.

11.     In the DIP Financing Motion, the Debtor claims that the proposed lender, Golden Spring NY, is allegedly owned by his son, Qiang Guo. ECF 117 at ¶¶ 2, 17.

12.     In other documents filed in this case, Golden Spring NY is also known as the "family office" and "my son's family office," but such term has not yet adequately been explained by the Debtor. ECF 107 at ¶ 17; ECF 77. The Debtor has not disclosed the assets of Golden Spring NY.[1]

13.     The Debtor has no bank accounts, no credit cards, is not employed such that he earns income, and all of his living expenses are paid for and through Golden Spring NY. ECF 107 at ¶ 17; ECF 78.

14.     The Debtor's Schedule D lists Golden Spring NY as a secured creditor owed an undetermined amount and secured by unidentified collateral. ECF 78. The chart for Schedule D fails to provide a real answer to the type of collateral for each of the secured debts, stating only

---

[1] The Debtor has stated in other court pleadings that Golden Spring NY was established to find investors interested in investing in Ace Decade Holdings Limited, that Golden Spring NY is incorporated in Delaware, and that Golden Spring NY registered to do business in New York in March 2015. *Ace Decade Holdings Limited v. UBS AG*, Supreme Court of New York, Index No. 653316/2015, ECF 37, ¶ 58 -60. The Debtor further stated that around that time he transferred funds from his accounts at UBS to Golden Spring NY, and that he conducted business for Golden Spring NY through at least May 1, 2016. *Id.* at ¶ 60. The Debtor is currently a plaintiff in litigation against UBS in London, which action appears to be a "re-do" of the New York action against UBS that was dismissed. ECF 117 at ¶ 13.

"certain claims and recoveries therto [sic]." *Id*. No explanation is given on the chart for Schedule D as to what the claims and/or recoveries are or what they might be, thus there is no disclosure of the scope of Golden Spring NY's security interests. The DIP Financing Motion does not disclose or discuss the fact that the Debtor's Schedule D lists Golden Spring NY as a secured creditor of the Debtor, nor the fact that Golden Spring NY may have an security interest in the litigation that the Debtor intends to fund using the DIP Loan.[2]

### *DIP Loan Terms*

15. The loan terms of the DIP Loan are inextricably entwined with the outcome of certain events in this case.

16. The DIP Loan ostensibly is an unsecured loan, accruing interest at 5% and subordinated in payment to general unsecured creditors. The DIP Loan terms, however, contain events of default which, if they occur, would terminate the loan and under certain circumstances give Golden Spring NY an automatic super-priority administrative claim that includes default interest, costs, expenses that are not challengeable.

17. The events of default in Section 8 of the DIP Loan Document include: (1) granting of the PAX Stay Relief Motion, (2) appointment of a chapter 11 trustee, or consent of the Debtor to appointment of a chapter 11 trustee, (3) breach of budgeting information obligations by the Debtor, (4) lack of a final order on the DIP Financing Motion within 45 days of the interim order approving the DIP Financing Motion, (5) dismissal or conversion of the Debtor's case without the consent of Golden Spring NY, and (6) termination of exclusivity. ECF

---

[2] Paragraph 13 of the DIP Financing Motion states that the Debtor's son (not Golden Spring NY) funded pre-petition legal fees relating to the litigation against UBS AG and Clark Hill, and that the son expects to be repaid from "anticipated recoveries." ECF 117 at ¶ 13. It is unclear if the Debtor's son funded other litigation and whether the Debtor's son will assert a secured position with respect to recoveries in other litigation.

117 at pages 65-66 of 70. Notably, the appointment of an examiner is *not* an event of default.

18. Paragraph 9 of the proposed interim order also permits Golden Spring NY to declare a default if the Debtor has violated the interim order in a way that in Golden Spring NY's "reasonable discretion that has an adverse effect on" Golden Spring NY. ECF 117 at proposed interim order at paragraph 9. This is an entirely subjective event of default and permits Golden Spring NY to have unfettered control.

19. In the event of a default, under Section 8 of the DIP Loan Document, the DIP Loan matures and Golden Spring NY is entitled to immediate payment of all monies loaned, plus interest and all costs associated with making and enforcing the DIP Loan. DIP Loan Document at Section 8. Additionally, Golden Spring NY is entitled to an automatic super-priority administrative claim for unreturned funds without the option for parties to dispute the amount that Golden Spring NY claims is due. *Id.*

20. Two events of default loom over the Debtor's case right now: the PAX Stay Relief Motion and the UST Examiner/Trustee Motion. The DIP Loan is conditioned on the Court denying PAX relief from the automatic stay and on the Court not ordering the appointment of a chapter 11 trustee in this case.

21. If the DIP Financing Motion is approved on an interim basis, only the first $2 million dollars of the DIP Loan will be made available and is restricted to fund **only** the ordinary course professionals pursuant to the Debtor's Motion For Entry Of An Order Authorizing (I) Employment And Payment Of Professionals Utilized In The Ordinary Course, (II) Payment Of Prepetition Claims And (III) Granting Related Relief (ECF 119) ("OCP Motion"). ECF 117 at proposed interim order at paragraphs F, 7, and 8.

22. The DIP Loan Document segregates the use of the $8 million loan into two components of $4 million each: (a) the Debtor's professionals, and (b) Committee professionals, any examiner appointed, and chapter 11 quarterly fees. ECF 117 at DIP Loan Document at Section 2.04. The chapter 11 quarterly fees are not protected with a first priority position.

23. The DIP Loan terms are binding on any future trustee (chapter 11 or 7). ECF 117 at proposed interim order at paragraph 12. The interim order also provides that any monies loaned are (a) protected by the terms of the order and the terms of the DIP Loan Document and (b) cannot be changed, challenged, modified or vacated by any subsequent order in this case or in any superseding case of the Debtor. ECF 117 at proposed interim order at paragraph 10.

24. Lastly, pursuant to Section 9.04 of the DIP Loan Document, the DIP Loan is governed by New York law and disputes are to be heard in New York courts.

## DISCUSSION

The DIP Financing Motion posits that the Debtor's case has no ability to move forward without funding and that the DIP Loan is the best option available for the estate. The DIP Loan, however, is designed to protect the Debtor's status as a debtor in possession while abdicating control of the case to Golden Spring NY, and at the same time dictate to the Court and creditors how the chapter 11 case will proceed. The DIP Financing Motion is yet another example of the Debtor's unwillingness to recognize his fiduciary obligations to his creditors and his estate and to make decisions that are in their best interest.

Loans from an insider, such as here, require heightened scrutiny. *See, e.g., In re Latam Airlines Group S.A.*, 620 B.R. 722, 769-770 (Bankr. S.D.N.Y. 2020). Insider transactions are "inherently suspect because they are rife with the possibility of abuse." *Id.* at 769 *(internal quotation and citation omitted; citing cases)*. Because of this, insider transactions are evaluated

8

using the "entire fairness" standard, not the business judgment rule. *Id.* (*citing cases*). The burden is on the insider to demonstrate the good faith and fairness of the transaction. *Id.* (*citing cases*).[3]

The terms of the DIP Loan are an intentional move to persuade the Court, the creditors and the United States Trustee to keep this case in chapter 11 and to oppose/deny the PAX Stay Relief Motion. That is because the granting of the PAX Stay Relief Motion in any form is an event of default that terminates/matures the DIP Loan. The PAX Stay Relief Motion is scheduled for the same hearing date as the DIP Financing Motion and thus sets up an immediate conflict to be considered by the Court. When proposed financing is considered, the impact on the case and its future must be evaluated. *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37 (S.D.N.Y. 1990) (in considering financing requests that meet threshold requirements, court should focus attention on "terms that would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits"); *In re Barbara K. Enters., Inc.*, No. 08-11474 (MG), 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (denying post-petition financing in exercise of the court's "important oversight role" and finding that the court's "normal function in reviewing requests for post-petition financing is to defer to a debtor's own business judgment so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the

---

[3] Should the Court determine some form of the DIP Loan is appropriate, the Court should not permit Golden Spring NY to have a super-priority administrative claim on chapter 5 causes of actions or their proceeds. Avoidance actions are rights held by the estate for the benefit of unsecured creditors. *See In re Cybergenics, Corp.*, 226 F. 3d 237, 244 (3d Cir. 2000).

reorganization to one party in interest." (*citation omitted*)).

The DIP Financing Motion is a non-starter in its current form. It undermines the integrity of the bankruptcy process and should not be approved. The Debtor filed this case to avoid the repercussions of the New York Supreme Court's February 2022 Contempt Decision, benefit from the automatic stay while frustrating his creditors and litigants suing him, and surreptitiously maintain control and possession of the Lady May. Knowing the cost of his intentions would be significant, the Debtor used a $1 million loan from another insider to fund the professional fees of his chapter 11 counsel so they would be willing to initiate this chapter 11 case. Borrowing now from Golden Spring NY under the terms proposed is plainly another attempt to control and impair creditors, and to manipulate the chapter 11 process by dictating to the Court how this case should proceed.

Since Golden Spring NY has, according to the Debtor, funded his living expenses for the past several years and will continue to fund them, Golden Spring NY can fund the costs of this chapter 11 without any strings or controls over the direction of the case. Golden Spring NY should do so because the Debtor wants to be in chapter 11 and protected from creditors and the Debtor has stated he has no funds to facilitate the expenses associated with chapter 11. Alternatively, Golden Spring NY can fund expenses of this chapter 11 on its own without an approved loan, like it was doing pre-petition by funding the Debtor's litigation. The Court should not approve the DIP Financing Motion.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the United States Trustee respectfully requests that the Court deny the DIP Financing Motion as proposed. Should Golden Spring NY wish to fund this chapter 11 case without attaching any strings of any kind and with repayment

Case 22-50073    Doc 160    Filed 04/06/22    Entered 04/06/22 11:50:11    Page 11 of 13

subordinated in full to the payment of all allowed unsecured claims, the United States Trustee would support same. Until then, the Court should see the DIP Financing Motion for what it is – an improper attempt to tie the Court's hands and control the chapter 11 process so that the Debtor can avoid the consequences of his contemptuous conduct – and the Court should deny it.

Dated: April 6, 2022  
      New Haven, Connecticut

Respectfully submitted,  
WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE FOR REGION 2

By:   /s/ Holley L. Claiborn  
      Holley L. Claiborn

/s/ Steven E. Mackey  
Steven E. Mackey

Trial Attorneys  
Office of the United States Trustee  
Giaimo Federal Building, Room 302  
150 Court Street  
New Haven, CT 06510  
Holley.L.Claiborn@usdoj.gov  
Federal Bar No.: ct17216 (Connecticut)  
Steven.E.Mackey@usdoj.gov  
Federal Bar No: ct09932(Connecticut)  
(203) 773-2210

11

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing objection was served on all appearing parties via the Court's electronic case filing system noted below:

William Baldiga on behalf of Debtor Ho Wan Kwok
wbaldiga@brownrudnick.com

William R. Baldiga on behalf of Debtor Ho Wan Kwok
wbaldiga@brownrudnick.com

Patrick M. Birney on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
pbirney@rc.com, ctrivigno@rc.com

Carollynn H.G. Callari on behalf of 20 Largest Creditor Rui Ma
ccallari@callaripartners.com

Carollynn H.G. Callari on behalf of 20 Largest Creditor Weican Meng
ccallari@callaripartners.com

Carollynn H.G. Callari on behalf of Creditor Zheng Wu
ccallari@callaripartners.com

David S. Forsh on behalf of 20 Largest Creditor Rui Ma
dforsh@callaripartners.com

David S. Forsh on behalf of 20 Largest Creditor Weican Meng
dforsh@callaripartners.com

David S. Forsh on behalf of Creditor Zheng Wu
dforsh@callaripartners.com

Peter Friedman on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
pfriedman@omm.com

Irve J. Goldman on behalf of Creditor Committee Official Committee of Unsecured Creditors
igoldman@pullcom.com, rmccoy@pullcom.com

David V. Harbach, II on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
dharbach@omm.com

Jonathan Kaplan on behalf of Creditor Committee Official Committee of Unsecured Creditors
jkaplan@pullcom.com, prulewicz@pullcom.com;rmccoy@pullcom.com

Dylan Kletter on behalf of Debtor Ho Wan Kwok
dkletter@brownrudnick.com,
adeering@brownrudnick.com;upinelo@brownrudnick.com;bsilverberg@brownrudnick.com;rstark@brownrudnick.com

Kristin B. Mayhew on behalf of 20 Largest Creditor Rui Ma
kmayhew@mdmc-law.com, kwarshauer@mdmc-law.com;bdangelo@mdmc-law.com

Kristin B. Mayhew on behalf of 20 Largest Creditor Weican Meng
kmayhew@mdmc-law.com, kwarshauer@mdmc-law.com;bdangelo@mdmc-law.com

Kristin B. Mayhew on behalf of Creditor Zheng Wu
kmayhew@mdmc-law.com, kwarshauer@mdmc-law.com;bdangelo@mdmc-law.com

Timothy D. Miltenberger on behalf of Interested Party Golden Spring (New York) LTD
Tmiltenberger@cbshealaw.com, msullivan@cbshealaw.com;dtempera@cbshealaw.com

Scott D. Rosen on behalf of Interested Party Golden Spring (New York) LTD
srosen@cb-shea.com, kseaman@cbshealaw.com

Stuart M. Sarnoff on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
ssarnoff@omm.com

Bennett Silverberg on behalf of Debtor Ho Wan Kwok
bsilverberg@brownrudnick.com

Annecca H. Smith on behalf of 20 Largest Creditor Pacific Alliance Asia Opportunity Fund L.P.
asmith@rc.com

Jay Marshall Wolman on behalf of Creditor Logan Cheng
jmw@randazza.com, ecf-6898@ecf.pacerpro.com

Peter J. Zarella on behalf of 20 Largest Creditor Rui Ma
pzarella@mdmc-law.com

Peter J. Zarella on behalf of 20 Largest Creditor Weican Meng
pzarella@mdmc-law.com

Peter J. Zarella on behalf of Creditor Zheng Wu
pzarella@mdmc-law.com

|  |  |  |
|---|---|---|
| By: | /s/ Holley L. Claiborn | |
|  | Holley L. Claiborn | |