**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
|    Ho Wan Kwok, | : Case No. 22-50073 |
| | : |
|    Debtor.¹ | : |
| | : |
| | : |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
LIMITED OBJECTION TO DEBTOR'S APPLICATION FOR ENTRY
OF AN ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF BROWN RUDNICK LLP AS COUNSEL FOR THE DEBTOR**

The Official Committee of Unsecured Creditors (the "Committee") of Debtor and Debtor in Possession, Ho Wan Kwok (the "Debtor"), herby submits this Limited Objection to the Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Brown Rudnick LLP ("Brown Rudnick") as Counsel for the Debtor (Dkt. No. 86, the "Brown Rudnick Application").

In support of the Objection, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. In objection to the Brown Rudnick Application, the Committee does not challenge Brown Rudnick's qualifications or its disinterestedness. Rather, the Committee objects to the grossly excessive $1 million retainer and requests that the Court disgorge sums that are in excess of $375,000 and order that they be returned to the estate. Not only is this retainer far in excess of the norm or what should be expected of an individual chapter 11 case of this size, it also substantially exceeds the amount that Brown Rudnick received for other debtor cases where there was an actual operating business. This is especially the case where the Debtor purports to

have no income, minimal assets and substantial debts, and the primary focus will be on the alleged connections between the Debtor and his purported shell companies. Giving Debtor's counsel a massive war-chest to continue to flaunt creditors would be a disservice to the Debtor's creditors and an affront to the bankruptcy process.

2. Further, the Committee challenges the hourly rates that Brown Rudnick is seeking to charge as being far in excess of the market rates in this District, and even far in excess of what Brown Rudnick has charged in other debtor cases, where it has offered blended rates substantial below what it seeks in this case.

## RELEVANT PROCEDURAL HISTORY

3. On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has remained a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

4. No trustee or examiner has yet been appointed in the Debtor's bankruptcy case, although on March 19, 2022, the United States Trustee ("UST") filed a Motion for Order Directing Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Examiner/Trustee Motion"). The Examiner/Trustee Motion is scheduled for hearing on April 13, 2022, and according to the UST's Amended Proposed Order at n. 1 (ECF No. 116), the Debtor has agreed to the Court's directing the UST to appoint an examiner in this case.

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

5. On March 21, 2022, the Committee was officially appointed by the United States Trustee and on March 28, 2022, selected Pullman & Comley, LLC ("P&C") as its counsel.[2]

6. On March 16, 2022, the Debtor filed the Brown Rudnick Application, which seeks to appoint Brown Rudnick as counsel to the Debtor and current Debtor-In-Possession. The Brown Rudnick Application identifies various services to be provided to the Debtor. ECF. No. 86, ¶11. Brown Rudnick identifies the principal persons who will work on the matter, with hourly rates ranging from $765 to $1,685 – with four attorneys seeking hourly rates in excess of $1,185. Id. ¶13.

7. Brown Rudnick received a retainer of $1,000,000, via two payments of $500,000 on February 14 and 15, 2022, respectively (the "Retainer"). Id. ¶17. Brown Rudnick asserts that it applied $51,835.20 of the Retainer for preparation and services in connection with the filing of the Petition and that the balance of the retainer is $948,164.80. Id. The source of the retainer was a loan from Lamp Capital, LLC to the Debtor, who then directed that the loan proceeds be remitted to Brown Rudnick. Id. Brown Rudnick asserts that the Retainer will be used to pay its approved professional fees, with its fees to be thereafter paid by the proposed debtor-in-possession financing, provided that Brown Rudnick "maintain[s] a Retainer balance not to exceed $250,000." Id. ¶18.

8. Brown Rudnick submitted a copy of the Engagement Agreement with its Disclosure of Attorney Compensation. ECF No. 54, Exhibit A; see also ECF No. 142, Ex. A. The Engagement Agreement was dated February 14, 2022, with Brown Rudnick agreeing to represent the Debtor as of February 14, 2022. The Engagement Agreement does not provide any restriction on the amount of the Retainer that Brown Rudnick must maintain during the pendency of the proceeding. The Engagement Agreement provides that "any unused portion will be

---

[2] The Committee filed an application for authority to employ P&C on April 5, 2022.

3

returned" to the Debtor, *id.,* thus indicating that the loan proceeds are property of the Debtor and therefore property of his estate.

9.  The Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions states that Debtor "needs highly capable and experienced restructuring counsel to advise and help structure my exit from Chapter 11, potentially in the form of a confirmed plan of reorganization." ECF No. 107, ¶49.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction over the Claims Agent Application and the contested matter initiated thereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## COMMITTEE POSITION

### I. THE RETAINER IS EXCESSIVE AND A PORTION OF IT SHOULD BE RETURNED TO THE ESTATE

11.  11 U.S.C. § 329(a) obligates an attorney representing a debtor to disclose the compensation paid or agreed to be paid within one year of the petition date, as well as the source of compensation.

12.  In the Brown Rudnick Application, the Affidavit of William R. Baldiga, and the Disclosure of Compensation of Attorney for Debtor (ECF Nos. 86, 142 and 54, respectively) Brown Rudnick disclosed that it received the Retainer of $1,000,000 via two payments of $500,000, with the first delivered on February 14, 2022 – the date of its engagement - and the second delivered on February 15, 2022 – the Petition Date. ECF No. 86, ¶17; ECF No. 54, ¶1. The Debtor obtained the funds for the Retainer via a loan from Lamp Capital, LLC ("Lamp"), a company allegedly owned by the Debtor's son. ECF No. 86, ¶17; ECF No. 54, ¶2. Lamp is

4

listed as a creditor on the Debtor's Schedule F. ECF No. 78. The Debtor then directed the proceeds of the loan to be remitted directly to Brown Rudnick. ECF No. 86, ¶17. Any amounts in excess of the retainer would be paid from debtor-In-possession financing. ECF. No. 54, ¶3. Brown Rudnick also asserts that its "approved professional fees will be paid first from the Retainer and then from any approved debtor-in-possession financing, provided that Brown Rudnick shall maintain at all times a Retainer balance not to exceed $250,000." ECF No. 86, ¶18. Finally, Brown Rudnick assets that it charged $51,835.20 against the Retainer for preparation and services in connection with the filing of the Petition.[3]

13. 11 U.S.C. § 329(b) provides as follows with regard to attorney compensation:

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

    (1) the estate, if the property transferred--
        (A) would have been property of the estate; or
        (B) was to be paid by or on behalf of the debtor under a plan
        under chapter 11, 12, or 13 of this title; or
    (2) the entity that made such payment.

14. Federal Rule of Bankruptcy Procedure 2017(a) provides as follows:

On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly *or indirectly and in contemplation of the filing of a petition under the Code* by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

Fed. R. Bankr. P. 2017(a) (emphasis added).

15. Courts have authority to review and disgorge fees paid more than a year prior to filing. *In re Glemaud*, 2013 WL 4498677 at *9 (Bankr. D. Conn 2013); *In re Laferriere*, 286

---

[3] The Engagement Agreement was dated February 14, 2022 and Brown Rudnick agreed to represent the Debtor as of that date. The Debtor filed the petition the following day. It is difficult to understand how

B.R. 520, 529-30 (Bankr. D. Vt. 2002). Similarly, Courts have the authority to determine that a retainer paid to a Debtor's counsel is excessive. "All prepetition retainers for bankruptcy services, regardless by whom paid, are subject to review and disgorgement under § 329(b) and Bankruptcy Rule 2017, if they are excessive or unreasonable." *In re Printing Dimensions, Inc.*, 153 B.R. 715, 719–20 (Bankr. D. Md. 1993) (citing *In re Stoecker*, 114 B.R. 865, 971, 978 (Bankr. N.D. Ill. 1990); *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 995–96 (Bankr. N.D. Ill. 1990)).

16.     "Once a question of the reasonableness of counsel's fees is raised by a party in interest bringing a motion, the attorney bears the burden of proving his fee was reasonable." *In re Chez,* 441 B.R. 724, 730 (Bankr.D.Conn.2010) (citing *In re Wood,* 408 B.R. 841, 848 (Bankr.D.Kan.2009)). *See also Snyder v. Dewoskin* (*In re Mahendra*)*,* 131 F.3d 750, 757 (8th Cir.197), *cert. denied,* 523 U.S. 1107, 118S.Ct. 1678, 140 L.Ed.2d 815(1998) (footnote omitted). *See also In re Glemaud*, No. 11-31697, 2013 WL 4498677, at *4–5 (Bankr. D. Conn. 2013).

17.     The Committee submits that the $1,000,000 Retainer is excessive for this matter, and that the portion above $375,000.00 should be disgorged and transferred to the estate. When, as in this case, the retainer for bankruptcy counsel is a security retainer, as opposed to an advance payment, the retainer is property of the estate and subject to return to the estate to the extent it is excessive. *See In re D.L.I.C., Inc.*, 120 B.R. 348, 351 (Bankr. S.D.N.Y. 1990). Here, the $1,000,000 fee is excessive, especially when considering the types of retainers that Brown Rudnick has typically required for major businesses undergoing chapter 11 and the nature of the services that will be needed in this matter.

---

$51,835.20 in services were provided in twenty-four hours, especially when the Debtor only filed a bare bones filing of a petition without any first day motions or schedules.

18.     It does not appear that Brown Rudnick has required retainers of this size in other recent bankruptcies where it represented a chapter 11 debtor.  For example, Brown Rudnick served as counsel to debtor HMH Media, Inc. f/k/a Herald Media Holdings, Inc. ("HMH"), which owned the Boston Herald, in its consolidated Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Delaware.  Docket 17-12881-LSS.  In their Application for Employment, Brown Rudnick only had a retainer of approximately $14,200 at the time of filing.  Docket No. 17-12811-LSS, Dkt. No. 28, ¶18, attached as Exhibit A.  If one were to include under the category of a retainer the amounts paid for services performed and expenses incurred in advance of the petition date ($269,100.00), the amount was less than $300,000.  *Id*.

19.     Similarly, Brown Rudnick served as counsel to the chapter 11 debtor, Dean & Deluca New York, Inc., in its consolidated chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of New York.  Docket. No. 20-10916 (MEW).  In their Application for Employment, Brown Rudnick reported receiving a retainer of approximately $374,150.89 at the time of filing.  Docket. No. 20-10916(MEW), Dkt. No. 26, ¶¶18-19, attached as Exhibit B.  The Committee is using this amount as a baseline of an appropriate retainer for the Debtor in this much smaller case.

20.     In light of the anticipated services to be rendered, the Committee submits that the reduced retainer is appropriate and sufficient.  This is not a business bankruptcy case of an operating debtor, where numerous first-day motions are typically filed and there are multiple interim hearings on traditional debtor-In-possession financing, and the like.  This is an individual chapter 11 bankruptcy where the Debtor asserts that he has meager assets except for two causes

of action with unknown value,[4] has no income, and exorbitant debt in excess of $373 million. It is not clear exactly why a retainer of this size is warranted, especially when considering the services that would need to be rendered. The Brown Rudnick Application identifies the services to be rendered on behalf of the Debtor. Dkt. No. 86, ¶8d. These are typical services rendered to a debtor, including preparation of Schedules, SOFAs and monthly operating reports, conferring with professionals, preparation of pleadings, seeking approval of a disclosure statement and confirmation of a plan, and appearing in court. Nothing suggests why an excessive retainer is warranted or why a substantial portion should not be returned for the benefit of the estate.

21. Of equal importance are concerns that the Debtor will not serve the best interests of the estate and creditors, and Debtor's counsel will use the war-chest of a retainer to frustrate and delay the Committee and other parties' efforts to uncover assets and maximize the value of the estate. An individual chapter 11 debtor in possession is a fiduciary for his or her creditors, *In re Sillerman*¸ 605 B.R. 631, 647 (Bankr. S.D.N.Y. 2019), and must "marshal assets in a way that maximizes their value for the benefit, primarily of creditors …." *USHA SoHa Terrace, LLC v. RGS Holding, LLC* (*In re Futterman*), 584 B.R. 609. 618 (Bankr. S.D.N.Y. 2018). This fiduciary duty includes the "duty to wisely manage the estate's legal claims," *Smart World Techs., LLC v. Juno Online Servs., Inc.* (*In re Smart World Techs., LLC*), 423 F.3d 166, 175 (2d Cir.2005).

22. As such, Brown Rudnick is serving not only as counsel to the Debtor, but counsel to the Debtor as a debtor-in-possession. Inasmuch as chapter 11 debtors-in-possession "have fiduciary responsibilities to unsecured creditors and other parties in interest requiring them to act in the capacity of a bankruptcy trustee," "lawyers representing debtors-in-possession are also charged with special responsibilities of insuring that when the interest of the estate conflicts with

---

[4] Debtor is seeking to retain counsel to prosecute these actions via the Motion for Entry of Authorizing (I) Employment and Payment of Professionals Utilized in the Ordinary Course, (II) Payment of Prepetition

the interest of the individual who signs his checks, that the interest of the estate prevails." *In re Harp*, 166 B.R. 740, 746 (Bankr. N.D. Ala. 1993).

23. The Debtor has already acted in contravention of his duty to marshal and maximize the value of assets of the estate, as well as to wisely manage the estate's legal claims, by appealing Judge Ostrager's February 9, 2022 ruling that the Debtor has the beneficial interest in the Lady May and opposing that ruling as having binding effect in this case. Any responsible fiduciary would act on that ruling and finding as having preclusive effect, as it would significantly augment the estate, yet the Debtor, through Brown Rudnick, has argued the opposite before this Court in opposing the Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code (the "PAX Motion").

24. Further, the Debtor is alleged to have frustrated creditors in prior lawsuits, including invoking the Fifth Amendment over questions concerning his assets and financial dealings. *See e.g. Examiner/Trustee Motion* ¶¶46, 49, 50.

25. The foregoing demonstrates a concern over whether the Debtor, and thus his counsel, will be acting in the best interest of creditors and to benefit the debtor's estate. As observed by the court in *In re JLM, Inc.*, 210 B.R. 19 (B.A.P. 2d Cir. 1997):

> Under no circumstances, however, may the lawyer for a bankruptcy estate pursue a course of action, unless he has determined in good faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate.

*Id.* at 26 (quoting *Everett v. Perez* (*In re Perez*), 30 F.3d 1209, 1219 (9th Cir.1994)).

---

Claims and (III) Granting Related Relief.  ECF No. 119.

26.  It is obvious that creditors and the estate would be best served if the Debtor responded to questions concerning his assets and financial dealings and disclosed his "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members." Examiner/Trustee Motion, ¶40 (citing to February 2022 Contempt Decision).

27.  Although the Debtor has proposed the funding of an investigation of his assets with a DIP loan from what he asserts is his son's company, Golden Spring (New York) Ltd. (ECF No. 117), the loan is rigged to become unavailable if there is an appointment of a chapter 11 trustee, the Court grants the PAX Motion, or the Debtor's exclusive period is terminated. These conditions are paradigmatic features of DIP financing that "leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on the merits." *In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990). Until provisions such as these are removed, and given the finding of Judge Ostrager that the Debtor has engaged in a shell game with his assets, it hardly seems sensible to allow his bankruptcy counsel to hold onto a $1 million Retainer while creditors are left with the untested process that has been proposed for investigating the Debtor's assets.

28.  Finally, the Brown Rudnick Application proposes that Brown Rudnick's approved fees would first be paid from the Retainer and then from the DIP financing that has been proposed, provided that Brown Rudnick will "maintain at all times a Retainer balance not to exceed $250,000." ECF No. 86, ¶18. It is patently unfair for Brown Rudnick to hold onto a $250,000 kitty for it own fees, after having been paid $750,000 from the Retainer if fees to that extent are allowed, and then revert to the DIP financing for payment of its fees. Instead, the

amount of the Retainer should be shared with other estate professionals and if the DIP financing is approved, all estate professionals would be paid from that source.

## II.

### THE HOURLY RATE IS EXCESSIVE

29. The Brown Rudnick Application further identifies the hourly rates that it seeks to charge, with four attorneys charging in excess of $1,000 per hour including three attorneys from $1,450 - $1,658 per hour. ECF No. 86, ¶8d. Brown Rudnick also seeks approval of expenses, including travels costs, although it "will bill non-working travel time at half the otherwise applicable hourly rate." ECF No. 86, Declaration ¶13.

30. "The reasonable hourly rate in the lodestar method should be based on the prevailing market rates for attorneys with comparable skill and standing in the pertinent legal community." *In re Jackson*, 630 B.R. 700, 728 (Bankr. D. Conn. 2021) (citing *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000)).

31. The hourly rates claimed by Brown Rudnick substantially exceed the prevailing market rates in the District of Connecticut. It's more than double, nearly triple, what is often seen in this district.

32. The hourly rates claimed by Brown Rudnick are even excessive in comparison to its prior work as Debtor's counsel. For example, in *In re HMH Media, Inc.*, Brown Rudnick offered a blended rate of $615 per hour. See Ex A, ¶16 ("Brown Rudnick proposes to render its services on an hourly fee basis according to a blended hourly rate of $615 per hour for all attorney time"). Similarly, in *In re Dean and Deluca New York, Inc.*, Brown Rudnick offered a blended rate of $850 per hour. *See Ex. B*, ¶14 ("Brown Rudnick proposes to render its services on an hourly fee basis according to a blended hourly rate of $850 per hour for all attorney time").

33. The Committee also questions the amount charged for travel time. Even though Brown Rudnick offered to charge half of its hourly rate for travel time, the Debtor selected counsel who work out of Brown Rudnick's offices in Boston and New York even though it has offices in Connecticut. With the return of in-person hearings, and the likely appearance of multiple attorneys at such hearings that have been identified as working on the Debtor's case, this is an unnecessary and unwarranted charge.

**WHEREFORE,** the Committee respectfully requests that the Brown Rudnick Application should not be approved by the Court unless a portion of the Retainer is refunded to the estate and the terms of the engagement are modified as proposed herein.

Dated: Bridgeport, Connecticut
April 6, 2022

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HO WAN KWOK**

By: */s/Irve J. Goldman*
Irve J. Goldman
Jonathan A. Kaplan
Pullman & Comley, LLC
850 Main Street, 8th Floor
PO Box 7006
Bridgeport, CT 06601-7006
(203) 330-2213
igoldman@pullcom.com

Its Attorneys (Application Pending)

ACTIVE/83201.1/JKAPLAN/10237433v4