fUNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re | : Chapter 11 |
| Ho Wan Kwok, | : Case No. 22-50073 |
| Debtor.[1] | : |
| Pacific Alliance Asia Opportunity Fund, L.P., | : |
| Movant, | : |
| vs. | : |
| Ho Wan Kwok, | : |
| Respondent. | : |

**POSITION STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN LIMITED SUPPORT OF MOTON OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. FOR ENTRY OF AN ORDER CONFIRMING THE INAPPLICABILITY OF THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(2) OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee") of Debtor and Debtor in Possession, Ho Wan Kwok (the "Debtor"), herby submits this Position Statement in limited support of the Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code (the "PAX Motion").

In support of the PAX Motion, the Committee respectfully represents as follows:

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

**PRELIMINARY STATEMENT**

1. The Committee was appointed in this case by a Notice of Appointment of Creditors' Committee filed by United States Trustee on March 21, 2022 (ECF No. 108). The Committee thereafter promptly engaged in the process of selecting its counsel, which it was only able to complete on March 28, 2022. Thus, by the time the Committee was able to select its counsel, all of the papers in support of or in opposition to the PAX Motion either had already been filed with the Court or were filed on the same day that the Committee selected its counsel.[2]

2. While the Committee recognizes that the Court has already received extensive briefing on the issues raised by the PAX Motion, the Committee, with due regard for avoiding duplication or repetition of arguments heretofore made by the principal parties[3], wishes to articulate its position to the Court in advance of the April 13 hearing on the PAX Motion, as opposed to addressing the Court for the first time at the hearing.[4]

---

[2] The PAX Motion was filed on March 1, 2022 (ECF No. 57), the Debtor's Objection to the PAX Motion was filed on March 15, 2022 (ECF No. 83), PAX's Reply to the Debtor's Objection was filed on March 18, 2022 (ECF No. 98) (the "PAX Reply"), and the Debtor's Supplemental Objection to the PAX Motion was filed on March 28, 2022 (ECF No. 141) (the "Debtor Supp. Obj.").

[3] The Committee is aware that at the March 22, 2022 hearing on the PAX Motion, the Court stated that other than a response by the Debtor to ¶¶8, 9, 10 and 11 of the PAX Reply, which would be due on or before March 28, 2022, no more briefing would be allowed in connection with the PAX Motion. Inasmuch as the Committee was not even appointed at that time, the Committee believes that the Court's directive could only have been intended for the principal parties to the PAX Motion and not to any creditors' committee that might later be appointed.

[4] In this regard, the Committee would ask to be recognized as a party in interest that has a right to be heard on the PAX Motion pursuant to section 1109(b) of the Bankruptcy Code. *See generally Metro North State Bank v. The Barrick Group, Inc.* (*In re The Barrick Group, Inc.*), 98 B.R. 133, 135 (Bankr. D. Conn. 1989) (unsecured creditors have a right to oppose and otherwise be heard on motion for relief from the automatic stay pursuant to section 1109(b) of the Bankruptcy Code, but in the absence of formal intervention, have no right to take discovery).

**RELEVANT PROCEDURAL HISTORY**

3. On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has remained a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

4. No trustee or examiner has yet been appointed in the Debtor's bankruptcy case, although on March 19, 2022, the United States Trustee ("UST") filed a Motion for Order Directing Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Examiner/Trustee Motion"). The Examiner/Trustee Motion is scheduled for hearing on April 13, 2022, and according to the UST's Amended Proposed Order at n. 1 (ECF No. 116), the Debtor has agreed to the Court's directing the UST to appoint an examiner in this case.

5. On March 21, 2022, the Committee was officially appointed by the United States Trustee and on March 28, 2022, selected Pullman & Comley, LLC ("P&C") as its counsel.[5]

6. Additional procedural history relevant to the PAX Motion is set forth in the papers of the principal parties and will not be reiterated here. The Committee wishes to advise the Court, however, of the status of removal proceedings initiated by the Debtor whereby, in a further act of forum shopping, he seeks to remove the New York Supreme Court action, *PAX v. Kwok¸* Index No. 652077/2017 (the "New York Action"), to this Court.[6]

---

[5] The Committee filed an application for authority to employ P&C on April 4, 2022.

[6] It is obvious that, by the removal action, the Debtor desperately seeks to avoid having to confront Judge Ostrager to answer for the contemptuous actions he committed before the New York Supreme Court, not this Court, and would prefer that this Court, in effect, take over for Judge Ostrager in deciding the Debtor's fate for disregarding multiple court orders in the New York Action. While the Court should not abide this gambit, the Committee notes that this Court has the power to order the imprisonment of a

7. On March 15, 2022, the Debtor filed with the New York Supreme Court a Notice of Removal of the New York Action to the U.S. District Court for the Southern District of New York (Doc. No. 1195), and on March 18, 2022, followed that up with the filing of a Notice of Removal in the United States District Court for the Southern District of New York, Civil Action No. 22-cv-2258 (MKV).[7] The District Court immediately referred the removed action to the United States Bankruptcy Court for the Southern District of New York on March 21, 2022, where it remains pending under Case No. 22-1073, styled as *PAX v. Kwok*.

8. On March 23, 2022, the Debtor filed a Motion to Transfer Case with the Bankruptcy Court in the Southern District of New York (ECF No. 4), requesting that the removed action be transferred to the United States District Court for the District of Connecticut, for referral to this Court. No motion for remand, 28 U.S.C. § 1452(b), or other response has yet been made by PAX to the removal of the New York Action or the motion to transfer venue to this Court.

9. The Committee notes that once an action is removed, the Rules direct that "[t]he parties shall proceed no further in that court [referring to the court from which the action was removed] unless and until the claim or cause of action is remanded. A remand is available on "any equitable ground." 28 U.S.C. § 1452(b).

---

debtor's representative for civil contempt based on a disregard of court orders. *Matter of Kossoff PLLC*, Case No. 21-10699 (DSJ), 2021 WL 5492186 (Bankr. S.D.N.Y. Nov. 22, 2021). The Committee believes such action is necessary in order to facilitate the return of the Lady May to its proper jurisdiction and for its further administration before this Court.

[7] These filings were actually in the reverse of what the Bankruptcy Rules require. See Fed. R. Bankr. P. 9027(a)(1), (c) (notice of removal to be filed in the federal district within which is located the state court where the removed action is pending, and "[p]romptly after filing the notice of removal, the party filing

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the PAX Motion and the contested matter initiated thereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 362(a), (b)(4), (d)(1), 105(a), Fed. R. Bankr. P. 9014, and D. Conn. LBR 9014-1.

**COMMITTEE POSITION**

**I.
WHETHER OR NOT THE AUTOMATIC STAY IS APPLICABLE,
THE DEBTOR SHOULD NOT BE PERMITTED TO USE THE
BANKRUPTCY COURT AS A REFUGE FOR HIS WRONGDOING**

11. While the Debtor lectures about the purposes of the automatic stay, which he himself invoked to avoid facing the consequences of Judge Ostrager's February 9, 2022 Decision and Order, and attempts to distinguish much of the case authority relied upon by PAX (Debtor Obj. at 8-14, 16-19, 24-29), he overlooks the one bedrock principle of bankruptcy law that is most applicable to the PAX Motion: Congress did not "intend that the bankruptcy court could be a haven for wrongdoers." *Berry Estates, Inc. v. State of New York* (*In re Berry Estates*), 812 F.2d 67, 71 (2d Cir. 1987). *See also Yates v. The District of Columbia* (*In re Yates*), 274 Fed. Appx. 312, 317 (4th Cir. Apr. 21, 2008) ("'fresh start' principle is limited by the concept that a discharge in bankruptcy is not intended to be a haven for wrongdoers" ) (internal quotation and citation omitted); *Fezler v. Davis* (*In re Davis*), 194 F.3d 570, 573 (5th Cir. 1999) ("bankruptcy courts are not to be used as 'a haven for wrongdoers'") (quoting *In re DeFelice*, 77 B.R. 376, 378 (Bankr. D. Conn. 1987)).

---

the notice shall file a copy of it with the clerk of the court from which … the cause of action is removed").

12. Pursuant to this fundamental principle, the Committee submits that rather wade into the thicket of case authorities concerning the applicability of the § 362(b)(4) exception to private parties seeking remedies for contempt, the Court, for "cause," 11 U.S.C. § 362(d)(1), should simply modify the automatic stay to allow further proceedings before Judge Ostrager to take place to consider appropriate contempt remedies, other than the payment or continued accrual of monetary fines. In the Committee's view, such proceedings are necessary to facilitate the return of the Lady May, inasmuch as there is little, if any, doubt the Debtor will not cause its return to the U.S. jurisdiction unless further compelled to do so, and imprisonment may be the recourse that finally makes the Debtor accept that he is not above the law. Thus, the Committee would urge the Court to find "cause" to permit contempt proceedings to proceed subject to the limitations expressed below. 11 U.S.C. § 362(d)(1).

13. Under section 362(d)(1) of the Bankruptcy Code, the Court can and should limit stay relief and impose conditions to it that would: (i) prevent the assessment of any postpetition fines or monetary sanctions that could arguably constitute administrative claims to the detriment of general unsecured creditors, or require any such fines or monetary sanctions to be subordinated to general unsecured creditors; (ii) limit the stay relief to marshaling the Lady May back to the US jurisdiction for the benefit of creditors of the estate, but making clear that PAX is prohibited from obtaining a postpetition lien on the yacht for its own advantage; and (iii) subject to the Debtor agreeing to return the Lady May to the U.S. jurisdiction within a period of 20 days from April 13, 2022 and demonstrating his inability to have done so prior to that time and his good faith steps to cause its return to occur, condition the effectiveness of the Court's lift stay order on the passage of 20 days from April 13, 2022 without the Lady May having been returned to the U.S. jurisdiction. For all other matters and actions by PAX, the automatic stay would

remain in effect.  The Court has the power to fashion such relief and it is appropriate to do so under the circumstances of this case.

## II.
## UNDER THE ROOKER-FELDMAN DOCTRINE AND PRINCIPLES OF CLAIM AND ISSUE PRECLUSION, THE DEBTOR IS BARRED FROM RELITIGATING THE ISSUES OF HIS BENEFICIAL OWNERSHIP AND CONTROL OF THE LADY MAY

14. As relevant here, Judge Ostrager found that the Debtor "has much more than a beneficial interest in the Lady May.  Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the yacht" (PAX Motion, Ex. 1, at 8). Judge Ostrager further found that "[t]he evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May" (*Id.*, Ex. 1 at 9).

15. As this Court recognized in *U.S. Bank, N.A. v. Conrad* (*In re Conrad*), 614 B.R. 20 (Bankr. D. Conn. 2020), "[t]he Rooker-Feldman doctrine bars federal courts from reviewing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments'." *Id.* at 26 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).  It applies under the following circumstances:

> (1) the plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of the state court judgment, and (4) the state judgment must have been rendered before the district court proceedings commenced.

*Id.* (citing *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009)).  All of these elements are satisfied here.  The Debtor did lose in the New York Action, he is now complaining that Judge Ostrager erred and is inviting this Court to reconsider the issue of his control and beneficial

7

ownership of the Lady May, and the February 9, 2022 decision was rendered before the commencement of this case.

16. The Debtor has suggested that the Rooker-Feldman doctrine does not apply because Judge Ostrager's February 9, 2022 decision is on appeal and that he lacked jurisdiction to determine the Debtor's interest in the Lady May (Debtor Supp. Obj. at 1-3). The Debtor is mistaken. District Courts in this Circuit have held that "Rooker-Feldman applies despite pending state court appeals." *Campbell v. Bank of America, N.A.*, 19 CV 11 (VB), 2019 WL 4083078, at *4 (S.D.N.Y. Aug. 29, 2019). And the Second Circuit itself "has strongly suggested" that the Rooker-Feldman doctrine does apply "even when there is a pending state appeal of the challenged judgment." *Butcher v. Wendt*, 975 F.3d 236, 244 n. 5 (2d Cir. 2020).

17. As for the Debtor's challenge to Judge Ostrager's jurisdiction, courts in this Circuit have held that "'no exception to the *Rooker/Feldman* doctrine exists when there is a challenge to the state court's personal or subject matter jurisdiction'." *Gunn v. Ambac Assurance Corp.*, No. 11 Civ. 5497 (PAC)(JLC), 2012 WL 3188849, at *4 (S.D.N.Y. Aug. 6, 2012) (quoting *In re Salem*, 290 B.R. 479, 483 (S.D.N.Y. 2003)). Thus, the Debtor cannot escape the controlling effect of Judge Ostrager's February 9, 2022 decision by claiming that the New York Supreme Court had no jurisdiction to render it.

18. As for *res judicata*, the Committee agrees with PAX that it applies to preclude relitigation of the issues of the Debtor's beneficial ownership and control (PAX Reply at 8), irrespective of the Debtor's appeal of Judge Ostrager's February 9, 2020. *See Arnold v. Beth Abraham Health Services, Inc.*, 2009 WL 5171736, at *4 (S.D.N.Y. Dec. 30, 2009) ("[u]nder New York law, the pendency of an appeal does not deprive a challenged judgment of preclusive effect" (citing *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003), which applied preclusive effect

8

to a New York Supreme Court judgment notwithstanding an appeal pending before the Appellate Division, and *Petrella v. Siegel*, 843 F. 2d 87, 90 (2d Cir. 1988), which held that "the determination of the [New York] state supreme court... is entitled to res judicata effect, even though the [party] may be appealing that determination."). *See also CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz,* 2016 WL 1271686, at *4 (S.D.N.Y. Mar. 29, 2016) (collecting New York federal and state cases); *Plaza PH2001 LLC v. Plaza Residential Owner, L.P.*, 98 A.3d 89, 98, 947 N.Y.S.2d 498, 505 (1st Dept. Appellate Div. 2012) ("the pending appeal did not alter the applicability of the doctrine of res judicata at that time").

19. The Committee further submits that the issues of the Debtor's beneficial ownership and control of the yacht are precluded from relitigation by the doctrine of collateral estoppel as issues that were conclusively decided in the New York Action. It is well settled that the doctrine of collateral estoppel applies in bankruptcy proceedings. *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir.2006) (citing *Grogan v. Garner*, 498 U.S. 279, 285–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

20. When determining whether a state court judgment should be accorded collateral estoppel effect, "the court must apply the preclusive law of the rendering state." *Options Unlimited, Inc. v. McCann* (*In re McCann*), 634 B.R. 207, 215 (Bankr. D. Conn. 2021). Under New York law, collateral estoppel will bar the relitigation of an issue "when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Ottimo*, 469 F.3d at 281.

21. The issue of the Debtor's interest in the Lady May is identical to the issue of whether that interest constitutes property of the estate. *See e.g. Breeden v. Bennett* (*In re Bennett*

9

*Funding Group, Inc.*), 367 B.R. 269, 289 (Bankr. N.D.N.Y. 2007).  In *Bennet Funding*, the bankruptcy court, in determining whether a criminal conviction should be accorded collateral estoppel effect on a trustee's claim of turnover, observed that in the context of turnover, "courts routinely look to state law in order to determine whether the property in question is property of the estate." *Id.* (citing *In re Mid–Island Hospital*, 254 B.R. 71, 74 (E.D.N.Y.2000) as "holding that whether a particular item is property of the estate in bankruptcy is governed by principles of state law").

22. Here, Judge Ostrager determined that the Debtor had a beneficial interest in and was in control of the yacht and thus, the determination of those issues is collateral estoppel on whether the Debtor's interest in the yacht is property of the estate and whether he controls the yacht.  And there is no question that the Debtor had a full and fair opportunity to litigate the issue of his interest in and control of the yacht in the New York State Action.  Thus, collateral estoppel applies.

23. As with *res judicata*, "[t]he pendency of an appeal does not preclude application of the doctrine of collateral estoppel." *Marini v. Adamo* (*In re Adamo*), 560 B.R. 642, 649 (Bankr. E.D.N.Y. 2016) (citing authorities).  *See also In re Southold Development Corp.*, 136 B.R. 40, 42 (E.D.N.Y. 1992) (applying collateral estoppel to decision on contested issue of debtor's ownership interest in Robins Island even though decision was on appeal to the Second Circuit).

### III.
### REMOVAL SHOULD HAVE NO EFFECT ON THE DEBTOR'S INABILITY TO RELITIGATE THE ISSUES RELATED TO THE LADY MAY IN THIS COURT

24. "A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Loc*. 272, 642 F.3d 321, 327 (2d Cir. 2011) (citation

omitted). Federal jurisdiction over a removed action is not proper when the Rooker-Feldman doctrine would apply to prevent the federal court from effectively vitiating a related state court ruling. *See Yonkers Electric Contracting Corp. v. Local Union No. 3, International Brotherhood Electrical Workers' AFL-CIO*, 220 F.Supp2d 254, 260 (S.D.N.Y. 2002) (remanding removed action to state court after concluding there was a lack of "subject matter jurisdiction over this matter under the *Rooker-Feldman* doctrine," and observing that if Judge Lefkowitz's [the state court judge's] decision is to be overturned, the Appellate Division will have to do it").

25.    Thus, the Debtor's removal of the New York Action and attempt to transfer it to this Court has accomplished nothing but a temporary delay of the Debtor's day of reckoning and an unreasonable multiplication of these proceedings.

**WHEREFORE**, the Committee respectfully submits that the PAX Motion should be granted, but only to provide a conditional lifting of the automatic stay that would: (i) preclude the assessment or accrual of any postpetition contempt fines or monetary sanctions; (ii) limit stay relief to marshaling the Lady May back to the US jurisdiction for the benefit of creditors of the estate, but making clear that PAX is prohibited from obtaining a postpetition lien on the yacht for its own advantage; and (iii) subject to the Debtor agreeing to return the Lady May to the U.S. jurisdiction within a period of 20 days from April 13, 2022 and demonstrating his inability to have done so prior to that time and his good faith steps to cause its return to occur, condition the effectiveness of the Court's lift stay order on the passage of 20 days from April 13, 2022 without the Lady May having been returned to the U.S. jurisdiction.

Dated: Bridgeport, Connecticut
      April 6, 2022

                                       **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HO WAN KWOK**

By:    */s/Irve J. Goldman*
        Irve J. Goldman
        Jonathan A. Kaplan
        Pullman & Comley, LLC
        850 Main Street, 8th Floor
        PO Box 7006
        Bridgeport, CT 06601-7006
        (203) 330-2213
        igoldman@pullcom.com

        Its Attorneys (Application Pending)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Ho Wan Kwok, | : Case No. 22-50073 |
| | : |
| Debtor.[1] | : |
| | : April 6, 2022 |
| | : |

**CERTIFICATION OF SERVICE**

I Irve J. Goldman, herby certify that on the 6th day of April, 2022, The Official Committee of Unsecured Creditors' (the "Committee") *Position Statement in Limited Support of Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code* was filed via the Court's CM/ECF electronic filing system ("CM/ECF"), which sent notice to all parties receiving notification through CM/ECF.

*/s/ Irve J. Goldman*
Irve J. Goldman

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.