**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Ho Wan Kwok, | : Case No. 22-50073 |
| | : |
| Debtor.[1] | : |
| | : |
| | : |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL DIP ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN UNSECURED, SUBORDINATED POSTPETITION FINANCING, AND (II) SCHEDULING INTERIM AND FINAL HEARINGS, AND (III) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Debtor and Debtor in Possession, Ho Wan Kwok (the "Debtor"), herby submits this Limited Objection to the Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing, and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief (the "DIP Motion").

In support of this Limited Objection, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      By the DIP Motion and the loan for which it seeks court approval (the "DIP Loan"), the Debtor and his son, Qiang Guo (the "Son")[2], have dangled the carrot of a postpetition loan to the Debtor of up to $8 million to fund professional fees and other

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2] The proposed loan is, in name, to be extended by Golden Spring (New York), Ltd. ("Golden Spring"), which the Debtor maintains is "an entity owned and controlled by [his] son" (DIP Motion ¶2). The Debtor acknowledges that, in effect, it is his Son who is offering to provide the loan (DIP Motion ¶15) ("… the Debtor asked his son to extend additional credit to that end").

administrative expenses to be incurred in this case, but only on terms that co-opt and otherwise leverage the chapter 11 process by making it an event of default, thereby terminating the availability of funding, if any one of the following events occurs: (i) the Bankruptcy Court shall enter an order granting relief from the automatic stay in connection with *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup.) (the "PAX Litigation"); (ii) the United States District Court for the Southern District of New York shall deny a motion to transfer venue of the PAX Litigation[3]; (iii) without the consent of the DIP Lender, the Debtor's chapter 11 case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of the case or seeking conversion of it to a case under chapter 7 of the Bankruptcy Code; (iv) there shall be appointed a chapter 11 trustee, or the Debtor shall file a motion or other pleading seeking such appointment; or (v) the Bankruptcy Court shall terminate the Debtor's exclusive right to file a plan of reorganization pursuant to section 1121(b) of the Bankruptcy Code (DIP Motion, Ex. C[4], Debtor-In-Possession Credit Agreement (the "DIP Loan Agreement") § 8.01(e)-(h)) (collectively, the "Offending Provisions").

---

[3] On March 15, 2022, the Debtor filed with the New York Supreme Court a Notice of Removal of the PAX Litigation to the U.S. District Court for the Southern District of New York (Doc. No. 1195), and on March 18, 2022, followed that up with the filing of a Notice of Removal in the United States District Court for the Southern District of New York, Civil Action No. 22-cv-2258 (MKV). The District Court immediately referred the removed action to the United States Bankruptcy Court for the Southern District of New York on March 21, 2022, where it remains pending under Case No. 22-1073, styled as *PAX v. Kwok*. On March 23, 2022, the Debtor filed a Motion to Transfer Case with the Bankruptcy Court in the Southern District of New York (ECF No. 4), requesting that the removed action be transferred to the United States District Court for the District of Connecticut, for referral to this Court.

[4] There are actually two Exhibit Cs to the DIP Motion – the Appendix H Checklist for Motions and Orders Pertaining to the Use of Cash Collateral and Post-Petition Financing ("DIP Checklist") (ECF No. 117 at 52-53), and the DIP Loan Agreement (ECF No. 117 at 58-59).

2. While, according to the Debtor, the DIP Loan "provides for a fair opportunity for an investigation into [the Debtor's] affairs" and that "the Chapter 11 case will provide a forum to conclusively determine which other assets potentially comprise [the Debtor's] bankruptcy estate" (Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions ("Kwok Dec.") ¶¶36, 41), the DIP Loan is demonstrably rigged to tilt the chapter 11 process in the direction the father and Son want it to go. Accordingly, unless the Offending Provisions of the DIP Loan are removed, the Committee objects to its approval by the Court.

## RELEVANT PROCEDURAL HISTORY

3. On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has remained a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

4. No trustee or examiner has yet been appointed in the Debtor's bankruptcy case, although on March 19, 2022, the United States Trustee ("UST") filed a Motion for Order Directing Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Examiner/Trustee Motion"). The Examiner/Trustee Motion is scheduled for hearing on April 13, 2022, and according to the UST's Amended Proposed Order at n. 1 (ECF No. 116), the Debtor has agreed to the Court's directing the UST to appoint an examiner in this case.

4. On March 21, 2022, the Committee was officially appointed by the United States Trustee and on March 28, 2022, selected Pullman & Comley, LLC ("P&C") as its counsel.[5]

---

[5] The Committee filed an application for authority to employ P&C on April 5, 2022.

3

5.      On March 1, 2022, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") filed its Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code (the "PAX Motion"). On March 15, 2022, the Debtor filed its Objection to the PAX Motion, to which PAX filed a Reply on March 18, 2022 (ECF No. 98) (the "PAX Reply").  On March 28, 2022, the filed a Supplemental Objection to the PAX Motion (the "Debtor Supp. Obj.").

6.      By the PAX Motion, PAX seeks to return to the PAX Litigation for purposes of compelling the Debtor to return to U.S. jurisdiction a yacht known as the Lady May, which the Debtor and/or the registered owners of the Lady May had been ordered not to remove, but did remove, from the New York court's jurisdiction well over one year ago (PAX Motion, Ex. A, February 2, 2022 Decision and Order of Judge Barry R. Ostrager, the "February 2, 2022 Decision," at 2).

7.      Of relevance to the DIP Motion, the February 2, 2022 Decision found that:

- the Debtor had engaged in "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members" (p. 1)

- the Debtor had "secreted his assets in a maze of corporate entities and with family members" (p. 1)

- the Debtor "and his cohorts made arrangement for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas" in violation of a September 2020 restraining order (p. 2)

- the Debtor's daughter testified "that it was Golden Spring that advised her that the yacht needed to be moved to a warmer place" (p. 6)

- according to testimony of the managing director of the Lady May's yacht management company, he communicated with Golden Spring and HK USA, apparently the legal titleholder, concerning the Lady May (p. 6).

8. Accordingly, the so-called "DIP Lender" here, Golden Spring, appears to have been directly involved in, and aided and abetted, the Debtor's violations of the New York court's orders. Golden Spring, in collaboration with the Debtor, is now attempting to dictate what must or must not occur in this Court and in the Southern District of New York by conditioning the continued availability of the DIP Loan on certain outcomes not taking place in this case and in the removed case. *See supra.* n. 3. The Court should not abide this gambit.

9. On March 19, 2022, the United States Trustee filed a Motion for an Order Directing the Appointment of an Examiner or, in the Alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Examiner/Trustee Motion").

10. On March 20, 2022, the Debtor filed the DIP Motion.

11. Interestingly, while the Debtor acknowledges that Golden Spring is owned and controlled by his Son, he maintained in the DIP Checklist that Golden Spring, the proposed DIP Lender, is not an insider. While Golden Spring may not fit into the category of "insider" listed in section 101(31)(A) of the Bankruptcy Code, there should be no dispute that Golden Spring is a non-statutory insider based on its close connection with persons who are statutory insiders, *viz*. the Debtors' Son. *See Mishkin v. Siclari* (*In re Adler, Coleman Clearing Corp.*), 277 B.R. 520, 565 (Bankr. S.D.N.Y. 2002) ("insider" is any person with a "close personal relationship with a statutory insider"). The Debtor's Son is an insider under section 101(31)(A)(i) and his company, Golden Spring, is an insider by virtue of being owned and controlled, ostensibly, by the Debtor's Son.

12. The PAX Motion, the Examiner/Trustee Motion, the DIP Motion and the retention applications for certain professionals of the Debtor are scheduled for hearing on April 13, 2022 at 10:00 a.m.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the DIP Motion and the contested matter initiated thereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 363(b), 364, 105(a), Fed. R. Bankr. P. 9014, and D. Conn. LBR 9014-1.

## ARGUMENT

### I.
### THE OFFENDING PROVISIONS IMPROPERLY LEVERAGE THE CHAPTER 11 PROCESS AND THUS, THE DIP LOAN SHOULD NOT BE APPROVED UNLESS THEY ARE REMOVED

14. Preliminarily, it is open to question whether a proposed postpetition loan such as the DIP Loan – which is not in the Debtor's ordinary course of business and does not seek an administrative priority or lien[6] – falls within the scope of section 364 of the Bankruptcy Code. Decisions under section 364 of the Bankruptcy Code are nonetheless relevant to considering the propriety of the DIP Loan, as the Debtor's DIP Motion acknowledges.

15. The leading case on whether provisions of the type proposed by the DIP Loan are permissible is *In re Ames Dept. Stores, Inc.*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990). Most relevant to the DIP Loan proposed here is the following admonition in the *Ames* decision:

> Acknowledging that Congress, in Chapter 11, delicately balanced the hope of debtors to reorganize and the expectations of creditors for payment, the courts have focused their attention on proposed terms that would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or ***leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits***.

---

[6] The DIP Loan seeks only a superpriority administrative expense for any "Undisbursed DIP Loans" (DIP Loan Agreement § 8.02(b), which would likely never come into effect considering that the Debtor's financial advisor, Verdolino & Lowery, PC, will be holding any "Undisbursed DIP Loans" in the "Debtor Account" (DIP Loan Agreement at 2).

6

*Id.* at 37 (emphasis added).

16. In particular, the court in *Ames* expressly disapproved of the same Offending Provisions that infect the DIP Loan here:

> It is similarly the practice of this Court not to approve financing arrangements containing clauses triggering default on the appointment of a trustee or examiner under section 1104. Such entrenchment of management may not be in the best interests of the estate and only precludes parties-in-interest from seeking to redress fraud or gross mismanagement through such an appointment. Nor are clauses requiring debtor retention of exclusivity approved. Clauses providing for absolute control over fees and entrenchment of management clauses skew the carefully designed balance of debtor and creditor protections that Congress drew in crafting Chapter 11.

*Id.* at 38.

17. The DIP Loan's Offending Provisions which trigger a default if the PAX Motion is granted, the PAX Litigation is not transferred to this district, a chapter 11 trustee is appointed or the Debtor's exclusive period is terminated, are precisely the types of provisions that leverage and indeed offend the chapter 11 process and should not be countenanced. Unless they are removed, the DIP Loan should not be approved.

## II.
## THERE IS NO BASIS FOR A FINDING OF GOOD FAITH AND OTHER PROVISIONS OF THE PROPOSED INTERIM DIP ORDER MUST BE MODIFIED

18. The proposed Interim DIP Order calls for a finding of good faith in the negotiations of the DIP Loan Documents and for all extensions of credit under the DIP Loan "within the meaning of section 364(e) of the Bankruptcy Code" (Interim DIP Order ¶H. *See also* Interim DIP Order ¶3). The Committee has not even begun its investigation into whether Golden Spring, as well as other companies ostensibly owned or controlled by the Son or other Kwok family members, are among the "maze of corporate entities' which Judge Ostrager found were

acting as fronts for the Debtor's assets. A finding of "good faith," therefore, should not even be considered until such an investigation is completed.

19. In any event, section 364(e) of the Bankruptcy Code only attaches significance to a finding of good faith for purposes of protecting loan advances made during the pendency of an appeal when "an authorization under this section" is reversed or modified on appeal. As noted, it is questionable whether section 364 even applies to the DIP Loan as it is purportedly not ordinary course credit giving rise to an administrative expense, 11 U.S.C. § 364(a), nor does it purportedly seek an administrative expense, superpriority administrative expense, or a lien on property of the estate. 11 U.S.C. §§ 364(b), (c), (d). As such, a finding of good faith is not necessary.

20. The Committee also objects to the proposed findings that there is good cause for the DIP Loan so that the Debtor can confirm a plan of reorganization and that the Debtor's estate will be irreparably harmed if the Interim DIP Order is not entered (Interim DIP Order ¶2). These findings are unnecessary and unsupported.

21. The Committee further objects to any default remedies that are not preceded with adequate notice (more than three days) to the Committee and other parties in interest and a right to contest the existence or legitimacy of any default before the Court. Under ¶9 of the Interim DIP Order, if the DIP Lender believes there is an "Event of Default," it is "fully authorized, in its sole discretion," to "accelerate the DIP Loan Obligations" and "decline to issue any Subsequent Advances." When the transaction is between the Debtor and his Son, safeguards are absolutely necessary to ensure fairness and transparency.

22. Paragraph 9 of the Interim DIP Order also improperly provides that upon a finding of an Event of Default, the "DIP Lender may otherwise take any appropriate action and

exercise all applicable remedies under the DIP Loan Documents and applicable law that may be necessary and appropriate by the DIP Lender *to collect the DIP Loan Obligations*, to proceed against or realize the Proceeds as if this Chapter11 case or any superseding Chapter 7 case were not pending and otherwise to enforce the DIP Loan Documents or this Interim Order." (emphasis added).  If, as the Debtor proposes, the DIP Loan will be an unsecured loan that is subordinate to payment of the claims of general unsecured creditors, this proposed enforcement provision is wholly inappropriate and should be removed.

23. Under the proposed Interim DIP Order, no funding of professional fees will be made available except "to pay the administrative expenses of ordinary course professionals of the Debtor (which shall exclude, for the avoidance of doubt) Brown Rudnick LLP, V&L, and Stretto, Inc.) and, until entry of the Final DIP Order, [the DIP Loan] may not be used to pay the expenses of professionals of the Debtor other than ordinary course professionals" (DIP Motion at 9).  The Committee objects to the selective payment of the Debtor's ordinary course professionals, but not the Committee's professionals, during the period the Interim DIP Order is in effect.

24. Paragraph 15 of the Interim DIP Order provides that the Interim DIP Order shall not be construed as a waiver or relinquishment of any rights that the Debtor or the DIP Lender may have to bring or be heard on any matter brought before this Court.  This provision should be expanded to reserve rights and protect against a waiver of rights for the Committee or any other estate representative to investigate and pursue any claims or causes of action that may exist against Golden Hill, and to make clear that the approval of the DIP Loan is not to be construed as a finding that Golden Hill is not the alter ego of the Debtor or the recipient of fraudulent

9

transfers. *See generally In re Sillerman*, 605 B.R. 631 (Bankr. S.D.N.Y. 2019), in which the court aptly observed:

> …where an individual chapter 11 debtor remains in possession as a fiduciary of his estate and his creditors, it appears to the Court that there is a heightened concern for an inherent conflict of interest that may not exist in the case of a corporate chapter 11 debtor. Tasking the individual debtor with the responsibility of bringing avoidance actions against a family member or an entity in which the debtor has a substantial interest may be daunting. Moreover, the temptation for self-dealing may be heightened in the case of an individual debtor whose natural instinct is to protect his own self-interest. This scenario demands that the debtor provide full transparency with regard to its activities and that the Court be vigilant where, as here, allegations of conflict of interest or self-dealing are raised.

*Id.* at 647.

### III.
### IF THE COURT DETERMINES THE DIP LOAN IS NOT GOVERNED BY SECTION 364 OF THE BANKRUPTCY COURT, IT IS A TRANSACTION OUTSIDE THE ORDINARY COURSE OF BUSINESS BETWEEN THE DEBTOR AND AN INSIDER AND DEMANDS STRICT SCRUTINY UNDER SECTION 363(b) OF THE BANKRUKPTCY CODE

25. The Debtor posits that if the DIP Loan does not come within the terms of section 364 of the Bankruptcy Code, it should be tested by the business judgement rule that is applied under section 363(b) of the Bankruptcy Code (DIP Motion ¶27) (citing *In re Gen Motors Corp.*, 407 B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009)[7] and other cases). The Debtor is mistaken.

26. "The business judgment rule is not applicable to transactions among a debtor and an insider of the Debtor." *In re Latham Airlines Group S.A.*, Case No. 20-11254, 2022 WL 272167, at *14 (Bankr. S.D.N.Y. Jan. 22, 2022). Rather, "courts apply a 'heighted scrutiny' test in assessing the *bona fides* of a transaction among a debtor and an insider of the debtor." *Id.*

10

(internal quotation and citation omitted). "In applying heightened scrutiny, courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration." *Id.* (internal quotation and citation omitted).

27.  The Committee submits that under the heightened scrutiny test, the same considerations that should be taken into account in determining the propriety of the Offending Provisions and other proposed findings the Committee has challenged, as set forth above, should also apply if the transaction is assessed under section 363(b) of the Bankruptcy Code.

**WHEREFORE**, the Committee respectfully requests that the Court deny the DIP Motion unless and until the objections raised herein are fully and adequately addressed.

Dated:  Bridgeport, Connecticut
April 6, 2022

        **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HO WAN KWOK**

By:  */s/Irve J. Goldman*
     Irve J. Goldman
     Jonathan A. Kaplan
     Pullman & Comley, LLC
     850 Main Street, 8th Floor
     PO Box 7006
     Bridgeport, CT 06601-7006
     (203) 330-2213
     igoldman@pullcom.com

     Its Attorneys (Application Pending)

---

[7] *Gen. Motors* applied the business judgment rule in determining whether to approve a § 363 sale. *Gen.Motors¸* 407 B.R. at 493-94 ("the inquiry turns to whether the routine requirements for any section 363 sale, and appropriate exercise of the business judgment rule, have been satisfied").

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Ho Wan Kwok, | : Case No. 22-50073 |
| | : |
| Debtor.[1] | : |
| | : April 6, 2022 |
| | : |

**CERTIFICATION OF SERVICE**

I Irve J. Goldman, herby certify that on the 6th day of April, 2022, The Official Committee of Unsecured Creditors' (the "Committee") *Limited Objection Of The Official Committee Of Unsecured Creditors To Debtor's Motion For Entry Of Interim And Final Dip Orders (I) Authorizing The Debtor To Obtain Unsecured, Subordinated Postpetition Financing, And (II) Scheduling Interim And Final Hearings, And (III) Granting Related Relief* was filed via the Court's CM/ECF electronic filing system ("CM/ECF"), which sent notice to all parties receiving notification through CM/ECF.

*/s/ Irve J. Goldman*
Irve J. Goldman

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

ACTIVE/83201.1/IJG/10245551v1