## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| In re:<br><br>Ho Wan Kwok,[1]<br><br>　　　　　　Debtor. | Chapter 11 Case No.<br><br>22-50073 (JAM) |

### PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S OBJECTION TO DEBTOR'S APPLICATION FOR AUTHORIZATION TO RETAIN AND EMPLOY VERDOLINO & LOWEY, P.C. AS FINANCIAL ADVISOR

TO THE HONORABLE JULIE A. MANNING,
UNITED STATES BANKRUPTCY JUDGE:

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by and through its undersigned counsel, respectfully submits this objection (the "Objection") to the *Debtor's Application for Authorization to Retain and Employ Verdolino & Lowey, P.C. as Financial Advisor* [ECF No. 90] (the "Application").[2] In support of this Objection, PAX respectfully states as follows:

### OBJECTION[3]

1.　　The Application seeks to retain Verdolino & Lowey, P.C. ("V&L") to provide "financial advisory, consulting, accounting services, tax and other services" to the Debtor. Application at ¶ 8. As demonstrated by the below analysis of V&L's proposed services, it is clear the Debtor cannot demonstrate that these services would confer any benefit to the Debtor's estate, let alone one sufficient to justify the cost of V&L's services.

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

[2] Capitalized terms used but not defined in this reply shall have meanings given to such terms in the Application.

[3] PAX reserves its rights to supplement this Objection based on information it learns in discovery from the Debtor and its advisors.

| **V&L's Proposed Services** | **PAX's Response** |
|---|---|
| Assistance with preparation of the Statement of Financial Affairs and the Schedules, and all support thereto and any amendments, if necessary. Application at ¶ 10(a). | The Debtor disclosed (i) less than $5,000 of assets on Schedule A/B, (ii) no exempt property on Schedule C, (iii) five claims on Schedule D, (iv) no claims on Schedule E, (v) two and a half pages of claims on Schedule F (the vast majority of which were listed with unknown amounts), (vi) 17 engagement letters on Schedule G, (vii) 38 co-debtors on Schedule H (from which the Debtor purports to receive no income or assets), (viii) no income on Schedule I, and (ix) no expenses on Schedule J. *See Schedules of Assets and Liabilities* [ECF No. 78] (the "Schedules").<br><br>Similarly, the Debtor disclosed minimal information in his *Statement of Financial Affairs* [ECF No. 77] (the "SOFA"). Only two of the Debtor's responses to the questions in the SOFA required additional space. *See* SOFA, Responses to Questions 6 and 9.<br><br>Given the unusually sparse nature of the Debtor's disclosures in the Schedules and SOFA, it is unclear how V&L's services were necessary to prepare such documents, especially given the lack of detailed financial analysis contained therein. The information that was disclosed in the Schedules and SOFA could readily have been prepared by the Debtor's bankruptcy counsel or claims and noticing agent, and did not require the assistance of a separate financial advisor incurring additional fees. |
| Assistance with preparation and/or review of cash flow and related budget projections and including advising as to post-filing finances. Application at ¶ 10(b). | As disclosed in the Schedules and SOFA, the Debtor has *no income and no expenses*. *See* Schedules I and J; SOFA, Response to Question 4. Accordingly, there is no basis for the debtor to engage V&L on this basis. With respect to post-filing finances, the Debtor has no business to operate—the requested postpetition financing is only to be used to pay professional expenses.[4] V&L has no unique insight into budgeting for other professional's expenses; each professional can provide their own estimate. |
| Opening and maintaining the DIP account, and effectuating disbursements when necessary and providing accounting of all cash activity. Application at ¶ 10(c). | In the event the Debtor's requested postpetition financing is approved, a bank or escrow agent can maintain an account and provide monthly statements regarding cash activity. Indeed, the Debtor's proposed retention of Stretto, Inc. ("Stretto") already |

---

[4] *See Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings and (III) Granting Related Relief* [ECF No. 117] at ¶ 15.

2

| V&L's Proposed Services | PAX's Response |
|---|---|
|  | includes these services.[5] Retention of V&L on this same basis would be duplicative, unnecessary, and wasteful. |
| Preparation, review, and analysis of Monthly Operating Reports and/or Quarterly Reporting. Application at ¶ 10(d). | The Debtor's first monthly operating report [ECF No. 120] was virtually blank. The only amounts disclosed on the report were $161,323 in disbursements made by a third party for the Debtor's benefit. *See id.* at 2. Again, given the Debtor's sworn representation that he has no income and no expenses, there is no need for a financial advisor to assist in the preparation of the Debtor's monthly operating reports. |
| Assistance with preparation and/or review of estate federal and state income tax filings. Application at ¶ 10(e). | In the event the Debtor needs to file substantial tax filings, the Debtor can seek the limited retention of a tax accountant to assist with such filings. At this time the Debtor has not established such services are needed. |
| Assistance with reviewing, reconciling, analyzing and, if necessary, objecting to proofs of claim. Application at ¶ 10(f). | The majority of the Debtor's claims are litigation claims. *See* Schedule F. The Debtor has been in ongoing litigation with these claimants for years and is intimately familiar with the asserted claims. It is unclear from the Application what specific services (or expertise) V&L would provide with respect to claim reconciliation, and whether such services would be duplicative of those of Debtor's counsel or any of his other advisors.[6] |
| Assistance with reviewing the Debtor's books and records for possible avoidable transactions such as preference and fraudulent transfer claims. Application at ¶ 10(g). | In response to Question 6 of the SOFA, the Debtor disclosed prepetition payments to 21 professional service firms within 90 days of the filing of his bankruptcy case. *See* SOFA, Response to Question 6. This is not a case with hundreds, let alone thousands, of payments to trade creditors prior to the petition date. In addition, the idea that the Debtor or someone working on his behalf will effectively evaluate claims against his own professionals is not credible. Accordingly, retaining a financial advisor to review these claims is unnecessary at this point, especially when the Debtor's proposed retention of Stretto already includes these services.[7] |
| Assistance with any necessary litigation support. Application at ¶ 10(h). | It is unclear from the Application what specific services V&L would provide with respect to litigation support and what V&L's qualifications are to handle such services. In addition, it is unclear whether such services would be duplicative of those of any of the Debtor's other advisors. |

---

[5] *See* Stretto Services Agreement [ECF No. 143] at ¶ 1(a) (listing "depository management [and] treasury services" among the services to be provided by Stretto).

[6] *See id.* (listing "claims analysis and reconciliation" among the services to be provided by Stretto).

[7] *See id.* (listing "preference analysis and recovery" among the services to be provided by Stretto).

3

| V&L's Proposed Services | PAX's Response |
|---|---|
| Assistance with plan development and preparation, including feasibility. Application at ¶ 10(i). | As disclosed in the Schedules and SOFA, the Debtor has no tangible assets to satisfy creditors' claims. The Debtor has neither filed a chapter 11 plan nor even proposed a framework for such a plan. It is also unclear how a financial advisor could provide testimony on feasibility in this case given the Debtor's sworn claim that he has no source of income or assets other than unliquidated litigation claims.[8] At this time, it is completely unnecessary to retain a separate financial advisor to assist with plan preparation. |

2. Based on the above, the Debtor has failed to meet his burden of proving that the terms and conditions of the proposed retention of V&L are in the best interests of the estate. *See In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991) ("[T]he burden of proof to establish that proposed terms and conditions of employment are reasonable is on the moving party. The Court must be persuaded that the terms and conditions are in the interest of the estate." (internal citations and quotation marks omitted)). The Debtor has also failed to provide the "specific facts showing the necessity" for V&L's retention in accordance with Bankruptcy Rule 2014.

3. Beyond vague generalities, neither the Debtor nor V&L have provided any detail regarding the actual benefit of V&L's services, and the firm's expertise and skills to perform such services. This alone warrants denial of V&L's retention. *See In re High Voltage Eng'g Corp.,* 311 B.R. 320, 334-35 (Bankr. S.D.N.Y. 2004) (denying financial advisor retention application where, *inter alia,* the "Court ha[d] been given no information about the specific scope and complexity of the assignment or specialized skills needed for it."); *see also In re Trans. Nat. Commc'ns Int'l,*

---

[8] The only assets identified in the Debtor's Schedules and SOFA that could possibly be available to satisfy creditors are the speculative damages that could be awarded in the event the Debtor is successful in the litigation of certain causes of action identified in the Schedules and SOFA. *See Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs* [ECF No. 77] at 8. Regardless, the Application is silent on V&L's qualifications and expertise to assist the Debtor in valuing such litigations.

4

*Inc.,* 462 B.R. 339, 347 (Bankr. D. Mass. 2011) (denying investment banker retention where the application did not supply the detailed information regarding the retention required by local rule). Similar to the Application here, in *High Voltage*, the debtor sought to retain Evercore to provide a generic list of financial advisory services. *High Voltage,* 311 B.R. at 327. In denying the retention application, the court found that it was "not in a position to gauge the reasonableness of the terms and conditions of Evercore's employment" based on the "vague descriptions of the tasks Evercore intends to perform." *Id.* at 335.

4. Given the nature of the Debtor's chapter 11 case (*i.e.,* an individual debtor who contends he has no business, income, assets, or operating expenses), the majority of the proposed services could be, and may already being, performed by the Debtor's bankruptcy counsel or claims and noticing agent. *See In re Wang Labs., Inc.*, 143 B.R. 794, 795 (Bankr. D. Mass. 1992) (finding that retention of financial advisor "is not necessary for the estate because most, if not all, of Smith Barney's proposed services are duplicative of the services to be performed by either Skadden, Arps or E & Y."). None of V&L's proposed services require the retention of a separate financial advisor and this estate should not bear the substantial cost of the retention of a financial advisor. Accordingly, the Application should be denied.

## CONCLUSION

5. For the reasons stated above, and while reserving all other rights and remedies, PAX respectfully requests that this Court: (i) deny the relief requested in the Application and (ii) grant such other and further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: April 6, 2022　　　　　　　　　**Pacific Alliance Asia Opportunity Fund L.P.**
Hartford, Connecticut

*By*: */s/ Patrick M. Birney*
Patrick M. Birney (CT No. 19875)
Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
　　　　asmith@rc.com

-and-

Peter Friedman (admitted *pro hac vice*)
Stuart M. Sarnoff (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email:  pfriedman@omm.com
　　　　ssarnoff@omm.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 6, 2022, a copy of the foregoing was filed electronically through the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties in interest may access this filing through the Court's CM/ECF System.

/s/   *Patrick M. Birney*
Patrick M. Birney