**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | CHAPTER 11 |
|  | : |  |
| HO WAN KWOK, | : | Case No. 22-50073(JAM) |
| Debtor. | : |  |
|  | : | April 6, 2022 |

**OBJECTION OF CREDITORS RUI MA AND WEICAN MENG**
**TO THE DEBTOR'S PROPOSED RETENTION OF**
**VERDOLINO & LOWEY, P.C. AS FINANCIAL ADVISOR**

Creditors Rui Ma and Weican Meng ("**Creditors**"), by and through their undersigned counsel, hereby submit this objection to the Debtor's application to retain and employ Verdolino & Lowey, P.C. ("**V&L**") as financial advisor (the "**FA Motion**") [ECF 90], and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.    The FA Motion fails to justify engaging any financial advisor for the Debtor in this case. Simply, the circumstances of this case do not warrant it. While the FA Motion sets forth the standard laundry list of services that financial advisors generally provide to chapter 11 corporate debtors, no explanation is offered why such services are necessary in this case or how they would benefit the estate. This case involves an individual that claims to have no assets, no income and to not operate any business. The Debtor should be required to be judicious in incurring administrative expenses. To the extent some services are needed, the need for such services should be explained and a budget should be presented and approved by the Court. Accordingly, the FA Motion should be denied.

KBM/M1738/1001/1823623v1
04/06/22-HRT/BD

## CREDITORS' OBJECTION

2.      By the FA Motion, the Debtor seeks to engage V&L to perform services that financial advisors typically provide to chapter 11 corporate debtors.  The services to be rendered by V&L pursuant to the FA Motion are described as financial advisory, consulting, accounting services, tax and other related services that include the following:

(a)     Assistance with preparation of the Statement of Financial Affairs and the Schedules, and all support thereto and any amendments, if necessary;

(b)     Assistance with preparation and/or review of cash flow and related budget projections and including advising as to post-filing finances;

(c)     Opening and maintaining the DIP account, and effectuating disbursements when necessary and providing accounting of all cash activity;

(d)     Preparation, review, and analysis of Monthly Operating Reports and/or Quarterly Reporting;

(e)     Assistance with preparation and/or review of estate federal and state income tax filings;

(f)     Assistance with reviewing, reconciling, analyzing and, if necessary, objecting to proofs of claim;

(g)     Assistance with reviewing Debtor books and records for possible avoidable transactions such as preference and fraudulent transfer claims;

(h)     Assistance with any necessary litigation support;

(i)     Assistance with plan development and preparation, including feasibility; and

(j)     General consulting and assistance with any other matters and tasks that may arise, and as may be directed by you or the Debtor.

[ECF 90 at pp. 3-4].

3.      The Creditors acknowledge that V&L has the expertise to provide these services.[1] The Creditors' objection concerns the fact that this case involves potentially limited funds, a self-professed non-income producing individual Debtor with purportedly no business to manage and

---

[1] The Creditors note, however, that the Jalbert Affidavit, attached as Exhibit C to the FA Motion, identifies various prior and existing relationships between V&L and certain key law firms involved in this case, including disclosing that Brown Rudnick currently is V&L's counsel in certain other cases. [ECF 90 at pp. 19-21]. These relationships call into question V&L's disinterestedness.

minimal assets, and therefore this case does not warrant engaging V&L for these types of services or incurring such expenses.

4.      In particular, the Debtor's Statement of Financial Affairs and Schedules have already been filed [ECF 77, 78] and are little more than a collection of zeros and a listing of approximately 150 creditors.  The Debtor's first monthly operating report [ECF 120] is yet another collection of zeros and null entries.  No doubt the Debtor is capable of continuing to complete such reports or amendments thereto with the assistance of his counsel as necessary.

5.      The facts presented to the Court by the Debtor thus far show no special "cash flow" analysis is required here – the Debtor purportedly has no income.  The bulk of the claims scheduled by the Debtor pertain to litigations (many of which have been pending for years) and professional services creditors.  The Debtor did not require V&L's services for the litigations prior to the Petition Date (*i.e.*, V&L was not engaged by the Debtor prepetition), and no facts have been presented to indicate that V&L's services are now required in connection with the litigations or claims process.  The Debtor's Schedules also only show purportedly that approximately 20 payees received payments from the Debtor during the 90-day period immediately preceding the Petition Date -- all of which are for "professional services". [ECF 77 at p. 21].  These facts do not support engaging a financial adviser for the services outlined in the FA Motion.  Simply put, presently, as presented by the Debtor to the Court, this is not a financially complex case that necessitates engagement of a financial advisor.[2]

6.      Notably, one of the proposed services to be performed by V&L is to control disbursements of proceeds from the Debtor's proposed postpetition financing facility (the "**DIP**

---

[2] This statement should not be mistaken to state that unwinding the Debtor's shell game of hiding assets is simple— it is not.  But the creditors will undertake the effort to locate and recover such assets.  The estate should not pay a financial adviser to hinder such efforts.  It is the routine bankruptcy services set forth in the FA Motion that do not require a financial adviser based on the circumstances of this case.

KBM/M1738/1001/1823623v1
04/06/22-HRT/BD

Facility"). Contemporaneously herewith, the Creditors are filing an objection to the proposed DIP Facility on grounds that the proposed facility is illusory and gives inequitable leverage over the course of this case to the Debtor (and lender), among other things. To the extent that the objection is overruled and the DIP Facility, or another facility with a similar mechanism, is approved, the Creditors submit that a similar result can be achieved in other ways, perhaps at lower cost. V&L's role under the DIP appears to be akin to an escrow agent and payment processor. Without a budget by V&L, it appears such services could be handled in a more cost-effective manner than by the payment terms set forth in the FA Motion.

7.      In the event creditors are able to identify and marshal assets to the estate, the situation of this case may change. But the FA Motion is premature at best. While the panoply of services set forth in the FA Motion is excessive here, to the extent certain services delineated in the FA Motion are found by the Court to be necessary, a budget for the specified services should be established and subject to approval by the Court.[3]

**CONCLUSION**

**WHEREFORE**, the Creditors request that the Court deny the FA Motion and grant such other and further relief as is just and proper.


Dated: April 6, 2022              */s/   Kristin B. Mayhew*
                                  Kristin Mayhew
                                  **MCELROY, DEUTSCH, MULVANEY &**
                                  **CARPENTER, LLP**
                                  30 Jelliff Lane
                                  Southport, CT 06890
                                  (203) 319-4000
                                  kmayhew@mdmc-law.com

                                  - and -

---

[3] There was no disclosure in the FA Motion of any retainer having been paid to V&L, and therefore seemingly no retainer was paid to V&L, but it should be clarified.

4

Carollynn H.G. Callari (*pro hac vice*)
David S. Forsh (*pro hac vice*)
**CALLARI PARTNERS LLC**
One Rockefeller Plaza, 10th Floor
New York, NY 10020
(212) 202-3050
ccallari@callaripartners.com
dforsh@callaripartners.com

*Attorneys for Rui Ma and Weican Meng*

5

## CERTIFICATE OF SERVICE

I, Kristin B. Mayhew, hereby certify that a true and accurate copy of the foregoing Objection of Creditors Rui Ma and Weican Meng to the Debtor's Proposed Retention of Verdolino & Lowey, P.C. as Financial Advisor was filed with the Court on April 6, 2022. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.

/s/ Kristin B. Mayhew
Kristin B. Mayhew