**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------X
                       :
In re:                           : Chapter 11
                       :
     Ho Wan Kwok,           : Case No. 22-50073 (JAM)
                       :
                       : Ref. Dkt. No. 102
             Debtor.         :
                       :
-------------------------------------------------------------X

**DEBTOR'S RESPONSE TO UNITED STATES**
**TRUSTEE'S MOTION FOR AN ORDER DIRECTING THE**
**APPOINTMENT OF AN EXAMINER OR, IN THE ALTERNATIVE, MOTION**
**FOR ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Ho Wan Kwok (the "<u>Debtor</u>"), through his undersigned proposed counsel, hereby files this

response ("<u>Response</u>") to the *United States Trustee's Motion for an Order Directing the*

*Appointment of an Examiner or, in the Alternative, Motion for Order Directing the Appointment*

*of a Chapter 11 Trustee*, dated March 19, 2022 [Dkt. No. 102] (the "<u>UST Motion</u>"), and

respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      As the Debtor indicated in his declaration in support of this case,[1] and as reiterated

at the March 22, 2022 hearing, the Debtor supports the appointment of an examiner in this case

pursuant to 11 U.S.C. § 1104(c) (the "<u>Examiner</u>").  The Debtor filed this case to allow for a fair

investigation of his financial condition and a reasoned vetting of all pertinent demonstrable case

facts, with the ultimate goal of confirming a Chapter 11 plan.  The Debtor believes that the

---

[1]   <u>See</u> *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions*, dated March
2022 [Dkt. No. 107] (the "<u>Kwok Declaration</u>" or "<u>Kwok Decl.</u>").  Capitalized terms used herein but not otherwise
defined shall have the meanings ascribed to them in the Kwok Declaration.

appointment of an Examiner will benefit the estate and its creditors, and that an investigation by the Examiner can be completed expeditiously and complement and inform a concurrent Chapter 11 plan process.

2.      Attached hereto as **Exhibit A** is a revised form of order appointing the Examiner, which, among other things, clarifies aspects of the U.S. Trustee's proposed order and addresses pertinent issues that are absent from the U.S. Trustee's form.  Attached hereto as **Exhibit B** is a redline comparison of the Debtor's and the U.S. Trustee's proposed orders.  The Debtor intends to engage with the U.S. Trustee prior to the final hearing on the UST Motion in an effort to reach consensus regarding the proposed order.  To the extent that the parties are unable to agree on the terms, the Debtor requests that the Court enter the proposed order attached hereto as **Exhibit A**.

3.      The Debtor is eager to work with the Examiner and other key case constituents, including the recently-appointed Official Committee of Unsecured Creditors (the "Official Creditors Committee"), in an effort to resolve this case.  To facilitate this process, and ensure that no creditor is any worse off as a result of the same, the Debtor negotiated and obtained an *unsecured* post-petition loan *with repayment priority below all prepetition creditors*.  See Dkt. No. 117.  That proposed financing contemplates that up to $4 million in financing would be made available to fund the work of an Examiner and the Official Creditors Committee.

4.      The Debtor files this Response for two reasons.  First, to oppose the alternative relief requested under the UST Motion, *i.e.*, the appointment of a Chapter 11 trustee.  As set forth herein, the U.S. Trustee has failed to satisfy the very high burden for the "extraordinary remedy" of a Chapter 11 trustee appointment.  In the context of this case, it is difficult to discern how a Chapter 11 trustee would benefit the estate.  A Chapter 11 trustee's role here would be limited to elucidating facts regarding the assets of the estate.  That is the nature of this case.  There is no

operating business to preserve or enhance. Instead, there is a limited pool of non-operating assets. This case is, at its core, about identifying what assets are, and are not, in the bankruptcy estate — a task for which an examiner is best suited. At a minimum, the request for a Chapter 11 trustee is premature and should be denied without prejudice. Rather, the Examiner should be appointed, conduct its investigation, and, once the Examiner's report is filed, the Court and all parties in interest can consider appropriate next steps in an informed manner.

5.　　　Notably, the U.S. Trustee's request for a Chapter 11 trustee comes in the form of alternative relief, only if the Examiner appointment were denied. The U.S. Trustee's basis for a Chapter 11 trustee is the litigation history between the Debtor and PAX and purported "concerns" with the Debtor's disclosures pre- and post-bankruptcy filing. Neither of these purported bases, separately or together, satisfy the high evidentiary bar that would justify the appointment of a Chapter 11 trustee.

6.　　　Acrimony between a debtor and creditor does not require the appointment of a Chapter 11 trustee, particularly where, as here, adequate alternative measures already exist to alleviate any concerns (e.g., the appointment of the Examiner and the existence of the Official Creditors Committee). The U.S. Trustee offers no evidence demonstrating how the appointment of a Chapter 11 trustee would help move this case towards resolution. Indeed, the opposite is true, as the appointment of a Chapter 11 trustee would disrupt the case (including by triggering an event of default under the DIP financing agreement) and materially hamper the Debtor's efforts regarding a Chapter 11 plan. Further, the analysis under Section 1104(a) focuses on the Debtor's post-petition conduct, and, here, the Debtor has satisfied his fiduciary obligations to date. Finally, the U.S. Trustee's references to the Debtor's disclosures thus far in this case are misguided. The Debtor's disclosures throughout this case have been transparent and proper, and the U.S. Trustee's

selective citations to certain (appropriate) disclosures fall well short of justifying the extraordinary relief of a Chapter 11 trustee appointment.

7.    <u>Second</u>, the Debtor files this Reply to address certain misstatements in the UST Motion regarding the Debtor's disclosures in this case and related issues.  The Debtor notes that, since the filing of the UST Motion, the Debtor filed the Kwok Declaration, which goes into great detail regarding his background, history, financial condition, and the events precipitating this Chapter 11 case.  Many of the concerns raised in the UST Motion are addressed through the since-filed Kwok Declaration.  Otherwise, the UST Motion spends considerable time selectively citing and quoting from the Debtor's *Statement of Financial Affairs* [Dkt. No. 77] ("<u>SOFA</u>") and *Schedules of Assets and Liabilities* [Dkt. No. 78] ("<u>Schedules</u>").  These documents are publicly filed and speak for themselves, and the Debtor refers to, and incorporates herein by reference, his SOFA and Schedules, as well as the Kwok Declaration.  Finally, the Debtor corrects certain misstatements by the U.S. Trustee to the extent that they are not addressed in the Kwok Declaration, Schedules, or SOFA, and otherwise merit a response.

## **RESPONSE**

A.    **The U.S. Trustee Has Failed To Satisfy The Requirements For**
      **Appointment Of A Chapter 11 Trustee; Such Alternative Relief Should Be Denied.**

8.    The focus of the UST Motion is on the appointment of the Examiner.  But, to the extent that the Court were to deny the appointment of the Examiner, the U.S. Trustee requests, as alternative relief, the appointment of a Chapter 11 trustee.  Appointment of a Chapter 11 trustee is an "extraordinary remedy," and "[t]he standard for § 1104 appointment is very high."  <u>Adams v. Marwil (In re Bayou Group LLC)</u>, 564 F.3d 541, 546 (2d Cir. 2009) (quoting <u>Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)</u>, 423 F.3d 166, 174 n. 10 (2d Cir. 2005)); <u>Schuster v. Dragone (In re Dragone)</u>, 266 B.R. 268, 271 (D. Conn. 2001) ("[W]e start

4

with the belief that the appointment of a trustee under Chapter 11 is the exception rather than the rule and that this is an extraordinary remedy available to creditors."); In re BAJ Corporation, 42 B.R. 595, 597-98 (Bankr. D. Conn. 1984) ("Case law on this subject supports the view that the appointment of a trustee in a Chapter 11 case is an extraordinary remedy, and that interpretation is consistent with the design of Chapter 11 which mandates management by the debtor unless a party in interest is able to prove that the appointment of a trustee is warranted.").

9.      Appointment of a Chapter 11 trustee is permitted "only in certain circumstances," specifically: (i) "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor," or (ii) "if such appointment is in the interests of creditors." Bayou Group, 564 F.3d at 546 (citing 11 U.S.C. § 1104(a)).

10.     The U.S. Trustee must satisfy a "very high" burden of demonstrating, through "clear and convincing evidence," that the limited circumstances warranting appointment of a Chapter 11 trustee exist. Id. at 546 ("The U.S. Trustee has the burden of showing by 'clear and convincing evidence' that the appointment of a trustee is warranted."). The few paragraphs in the UST Motion dedicated to this extraordinary remedy do not satisfy the U.S. Trustee's burden.

11.     The U.S. Trustee does not seek appointment of a Chapter 11 trustee under Section 1104(a)(1); does not allege that the Debtor has been engaged in "fraud, dishonesty, incompetence, or gross mismanagement"; and does not attempt to offer any evidence in this respect. Accordingly, the requirements for appointment under Section 1104(a)(1) are plainly not satisfied. Id. at 547 ("In the instant case, the U.S. Trustee has not met the 'very high' standard for a § 1104 appointment. The U.S. Trustee has not attempted to show that Marwil has engaged in 'fraud, dishonesty, incompetence, or gross mismanagement of' Bayou's affairs.").

12.     Rather, the U.S. Trustee suggests that the extraordinary remedy of appointment of a Chapter 11 trustee is warranted because of: (i) the prepetition litigation history between the Debtor and PAX; and (ii) purported concerns regarding the Debtor's pre- and post-filing disclosures.  <u>See</u> U.S. Trustee Motion at 24-25.  This a thin reed on which to seek such exceptional relief and falls far short of satisfying the U.S. Trustee's very high burden.

13.     Acrimony between a debtor and creditor, alone, does not require the appointment of a Chapter 11 trustee.  <u>See</u> <u>In re G-I Holdings, Inc.</u>, 385 F.3d 313, 321 (3d Cir. 2004) ("There is unquestionably considerable acrimony between the debtor and the asbestos claimants, but as the Bankruptcy Court noted, some of the most contentious disputes will presumably be addressed in other pending litigation, and it was the Bankruptcy Court's judgment that the debtor in possession would be able to discharge its fiduciary obligations with regard to other matters."); <u>In re Sundale, Ltd.</u>, 400 B.R. 890, 909 (Bankr. S.D. Fla. 2009) ("Neither loss of confidence, however reasonable, or acrimony, however bitter, necessarily results in appointment of a trustee.").

14.     This is particularly the case where, as here, there are other measures readily available to address any underlying concerns regarding the relationship between the debtor and certain creditors, such as the appointment of an examiner and an official creditors committee.  <u>See</u> <u>Dragone</u>, 266 B.R. at 270 ("The appointment of an examiner and the additional steps taken by the Court to preserve the assets of the Estate greatly mitigated against the need for appointing a trustee."); <u>In re The 1031 Tax Group, LLC</u>, 374 B.R. 78, 91 (Bankr. S.D.N.Y. 2007) ("Where a case has an active creditors committee functioning effectively and working well with the debtors, as it does here, there is little benefit in appointing a trustee.").

15.     As noted at the March 22nd hearing, the Debtor intends to propose a Chapter 11 plan as soon as practicable, and is eager to engage the Official Creditors Committee and other case

constituents in good faith discussions regarding the same. The Debtor believes that an investigation by the Examiner would assist in these efforts, as it would provide the Court, creditors, and all parties in interest with an objective, independent analysis of the Debtor's assets, liabilities, and current financial condition. The U.S. Trustee has not offered any evidence demonstrating how the upheaval attendant with the appointment of a Chapter 11 trustee would help move this case forward; to the contrary, such appointment would substantially disrupt this case and hamper the Debtor's efforts to reach a resolution. Bayou Group, 564 F.3d at 547 ("While appellees have pointed out ways in which Marwil's removal would hamper the bankruptcy proceedings, the U.S. Trustee has not indicated how replacing Marwil would facilitate them.") (internal citations omitted).

16.    The U.S. Trustee's other purported basis for the appointment of a Chapter 11 trustee (i.e., concerns regarding the Debtor's pre- and post-petition disclosures) likewise fails. As a starting point, consideration of a Chapter 11 trustee appointment focuses on the debtor's post-petition conduct. See Bayou Group, 564 F.3d at 547 n. 3 (citing In re The 1031 Tax Group, LLC, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007)).

17.    Here, the Debtor has satisfied his fiduciary requirements and is operating this case in good faith. The Debtor has, among other things: (i) appeared for and participated fully in his initial debtor interview with the U.S. Trustee; (ii) appeared for and participated fully in the Section 341 meeting of creditors (over multiple days); (iii) timely filed his schedules and statements; (iv) timely filed monthly operating reports (and will continue to do so); (v) retained highly capable and qualified counsel and other professional advisors to assist him in the administration of the case; and (vi) negotiated and obtained post-petition financing to fund this case (including an Examiner and Official Creditors Committee), on an unsecured and fully subordinated basis. Moreover, the

Debtor has consented to the appointment of the Examiner, and has clearly expressed his desire to commence meaningful, good faith negotiations with his creditors regarding a Chapter 11 plan.

18.     In short, the Debtor has acted in good faith and fulfilled his fiduciary obligations throughout this case, and will continue to do so.  The U.S. Trustee offers no evidence to the contrary and, accordingly, its request for alternative relief in the form of the appointment of a Chapter 11 trustee should be denied.

**B.     <u>The UST Motion Contains Numerous Misstatements And Inaccuracies</u>.**

19.     The U.S. Trustee raises purported "concerns" regarding the Debtor's statements and schedules, but such concerns are misstated and/or misplaced.  <u>See</u> <u>BAJ Corporation</u>, 42 B.R. at 597-98 ("Finally, while Yervant emphasizes the claim that the debtor's books and records are deficient, few if any specific deficiencies were proven.  Instead Yervant merely produced the documents and asked the court to conclude they were inadequate.  Apart from the observation that it is not this court's obligation to sift through evidence to find support for a litigant's position, a review of the documents indicates that, while they are not a model for emulation, they are not so deficient as to warrant the appointment of a trustee.").

20.     As an initial matter, the Debtor notes that the U.S. Trustee did not have the benefit of the Kwok Declaration before filing the UST Motion.  The Kwok Declaration provides substantial information regarding the Debtor's background, income, and financial condition, and adequately addresses many of the purported concerns raised in the UST Motion.  Further, the UST Motion contains several citations and quotes from the Debtor's Schedules and SOFA.  The Debtor would respectfully refer the Court to the as-filed Schedules and SOFA, which speak for themselves.

21.     The U.S. Trustee takes issue with certain statements and reservations contained in the Global Notes included in the Debtor's SOFA, suggesting that the Debtor is "brazenly disclaiming" responsibility for the contents of the Schedules and SOFA. See UST Motion at 2, ¶ 20.  This is wrong.  The Debtor, as the U.S. Trustee acknowledges, signed his Schedules and SOFA under penalty of perjury.  The routine statements and reservations cited by the U.S. Trustee — e.g., a reservation of rights regarding admissions, a reservation of rights regarding the Debtor's ability to amend or modify the Schedules and SOFA, a notation that the Global Notes control in the event of a conflict — are customary disclosures, largely serving to clarify that the Debtor is reserving rights that he already has.  Reservations of this nature appear commonly in schedules and statements filed in bankruptcy cases throughout the country, including in cases filed with this Bankruptcy Court.  See, e.g., In re Carla's Pasta, Inc., Case No. 21-20111 (JJT), Dkt. No. 161 at 2-5; Dkt. No. 162 at 2-5 (Bankr. D. Conn. Feb. 24, 2021); In re The Rosegarden Health and Rehabilitation Center LLC., Case No. 18-30623 (AMN), Dkt. No. 156 at 2-6; Case No. 18-50488 (AMN), Dkt. No. 53 at 2-6 (Bankr. D. Conn. May 10, 2018); In re O.W. Bunker Holding North America Inc., Case No. 14-51720 (AHWS), Dkt. No. 206, 2-9; Dkt. No. 210 at 2-9 (Bankr. D. Conn. Dec. 19, 2014); see also In re Cambridge Analytica LLC, Case No. 18-11500 (SHL), Dkt. No. 12 at 2-8 (Bankr. S.D.N.Y. May 31, 2018); In re Intelsat S.A., Case No. 20-32299 (KLP), Dkt. No. 7 at 1-5 (Bankr. E.D. Va. July 11, 2020); In re Specialty Retail Shops Holding Corp., Case No. 19-80064 (TLS), Dkt. No. 491 at 1-4 (Bankr. D. Neb. Feb. 22, 2019).[2]  Moreover, the standard reservations included in the Global Notes are particularly appropriate here, given that the Debtor:

---

[2]     Copies of the "Global Notes" included in the foregoing submissions are attached hereto as **Exhibits C-1** through **C-6**.

(i) commenced this case under a compressed timeframe in light of Justice Ostrager's February 9, 2022 ruling; and (ii) needed to have the Schedules and SOFA translated to his native language.

22.     The U.S. Trustee also appears to take issue with the Debtor's filing of the *Debtor's Motion to Extend Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs* [Dkt. No. 27] (the "Extension Motion").  It is unclear precisely what issue the U.S. Trustee has with the Extension Motion, which sought a form of relief that is common in bankruptcy proceedings (*i.e.*, an extension of the deadline for the Debtor to file his Schedules and SOFA) and, as set forth in the Extension Motion, was amply supported.  The Court granted a limited extension of the aforementioned deadline through March 9, 2022, and the Debtor timely filed his Schedules and SOFA in accordance therewith.  See Dkt. Nos. 60, 77, 78.

23.     The UST Motion contains the U.S. Trustee's description of the PAX litigation. UST Motion ¶¶ 36-48.  The Debtor has provided a full description of the PAX litigation in his Declaration, which is incorporated herein by reference, and refers to the same in response.  See Kwok Decl. ¶¶ 20-24.  The UST Motion further contains a description of Justice Ostrager's February 9 Contempt Order and ruling.  As discussed further in the Kwok Declaration, the Debtor respectfully disagrees with the NY State Court's ruling, believes that it was wrongly issued, and has properly and timely filed an appeal regarding the same.  See Kwok Decl. ¶ 24.  Moreover, the February 9 Contempt Order is limited in its scope and, for the reasons set forth in the Debtor's supplemental response to PAX's lift stay motion, the February 9 Contempt Order does not bind this Court or preclude proper findings as to the extent to which the Debtor's estate holds any interest in property.  See *Debtor's Supplement to Objection to Motion of Pacific Alliance Asia Opportunity Fund L.P for Entry of an Order Confirming the Inapplicability of the Automatic Stay*

*or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code*, dated March 28, 2022 [Dkt. No. 141].

24.     The U.S. Trustee cites to the Debtor's past invocation of his Fifth Amendment rights.  UST Motion ¶¶ 49-50.  As various federal district courts have found, the Debtor properly invoked such constitutional rights in the past based on the advice of counsel, and such proper exercise of rights is irrelevant to the relief requested in the UST Motion.  Moreover, as noted by counsel at the March 22nd hearing, the Debtor fully understands that Chapter 11 requires transparency and, as an example of this understanding, the Debtor participated in his initial debtor interview with the U.S. Trustee and was examined for hours in connection with the initial Section 341 meeting, and at no point in either proceeding did the Debtor invoke his Fifth Amendment rights.  See Mar. 22, 2022 Hr'g Tr. at 23:11-24:2 ("The debtor will toe the line in this courtroom.  As an example, in prior proceedings, the debtor did take the Fifth Amendment protection, from time to time.  The debtor understands that while Chapter 11 debtors have from time to time exercised their rights, Constitutional rights not to testify, a Chapter 11 case requires extraordinary transparency.  The debtor was examined for four hours yesterday by creditors and by the United States Trustee.  There was no exercise of any Fifth Amendment privilege or any other privilege.  Every single question was answered and there will be many more hours of testimony and every question will be continued to [be] answered.").

25.     The U.S. Trustee makes additional statements and allegations in the UST Motion that are not only wrong, but also largely irrelevant to the matter at hand.  As noted, with respect to the Debtor's background, income, and financial condition, the Debtor refers the Court to the Kwok Declaration.  The Debtor responds to certain other misstatements as follows:

(i)    The U.S. Trustee's suggestion that the Debtor's situation represents an "odd combination of what appears to be artificial self-created 'poverty' by the Debtor to insulate himself from creditors" is wrong.  UST Motion at 2.  As set forth in the Kwok Declaration, the Debtor's current financial condition is, in large part, a result of actions taken by the Chinese Communist Party ("CCP"), including the freezing and seizing of family assets, in response to the Debtor's outspoken criticism of the CCP's corruption and human rights abuses.  Kwok Decl. ¶¶ 4-18.

(ii)   Contrary to the U.S. Trustee's assertion, the Debtor does not have "numerous aliases."  UST Motion ¶ 7.  Rather, he has one current legal name, Ho Wan Kwok.  His legal name in China, where he was born, was Guo Wengui, but his name was effectively cancelled by the CCP when he became a Hong Kong citizen, because China does not recognize dual citizenship.  Kwok Decl. ¶ 11.  As many Chinese persons who reside in the West have done, the Debtor has adopted an informal anglicized "nickname" of Miles.

(iii)  The U.S. Trustee's statement that the Debtor has a "pre-petition history of avoiding creditors and asserting the Fifth Amendment" is mistaken.  UST Motion at 2.  The Debtor is a named defendants in approximately 21 lawsuits, many of which involve parties with links to the CCP.  Kwok Decl. ¶¶ 19-26.  The Debtor has, at times, exercised his Fifth Amendments rights at the advice of counsel in connection with these actions.

(iv)   The U.S. Trustee's assertion that the Debtor's prepetition conduct indicates a "persistent unwillingness to respond to questions about his assets, his money, and corporate entities" is incorrect.  UST Motion at 3.  As set forth herein, the Debtor

has provided robust disclosures in this case thus far, and welcomes the appointment of an Examiner to provide an objective assessment of the Debtor's assets and financial condition.

(v)     The U.S. Trustee's statement that the Debtor "attempts to avoid any responsibility or liability for his bankruptcy documents" is mistaken. UST Motion at 4. As noted above, the Debtor signed the Schedules, SOFA, and Kwok Declaration under penalty of perjury, and the standard reservations contained in those documents are customary in bankruptcy.

(vi)    The U.S. Trustee's assertion that all of the Debtor's living expenses are "paid for and through Golden Spring" is inaccurate. UST Motion ¶ 22. As set forth in the Kwok Declaration, the Debtor's family and GSNY principally provide for his needs; his family retains ownership of nearly everything the Debtor uses, except for certain personal items. Kwok Decl. ¶ 17.

(vii)   The U.S. Trustee's suggestion that the Debtor intentionally and inappropriately misstated his address is wrong. The Debtor initially included an address in New York City, care of GSNY, out of concern for his safety and the safety of his family. As instructed by the Bankruptcy Court on March 1, 2022, the Debtor filed a change of address form on March 10, 2022, which reported his mailing address in Greenwich, Connecticut. See Kwok Decl. ¶ 7 n. 4; Dkt. No. 81.


*[Remainder of page intentionally left blank.]*

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court: (i) enter an order, substantially in the form attached hereto as **Exhibit A**, appointing an Examiner; (ii) deny the UST Motion to the extent that it requests alternative relief in the form of the appointment of a Chapter 11 trustee; and (iii) grant to the Debtor such other or further relief as deemed just and proper.

Dated: April 6, 2022

**BROWN RUDNICK LLP**

By: */s/ William R. Baldiga*
Dylan P. Kletter, Esq.
185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 509-6500
Facsimile: (860) 509-6501
Email: dkletter@brownrudnick.com

-and-

William R. Baldiga, Esq.
Robert J. Stark, Esq.
Jeffrey L. Jonas, Esq.
Bennett S. Silverberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: wbaldiga@brownrudnick.com
        rstark@brownrudnick.com
        jjonas@brownrudnick.com
        bsilverberg@brownrudnick.com

*Proposed Counsel for*
*Ho Wan Kwok, Debtor*

# **Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
----------------------------------------------------------------X
                                              :
In re:                                        : Chapter 11
                                              :
        Ho Wan Kwok,                          : Case No. 22-50073 (JAM)
                                              :
                                              : Ref. Dkt. No. 102
                        Debtor.               :
                                              :
----------------------------------------------------------------X
```

**PROPOSED ORDER DIRECTING**
**THE APPOINTMENT OF AN EXAMINER**

The United States Trustee, having filed a motion for an order directing the appointment of an examiner under 11 U.S.C. § 1104(c) (the "Examiner") in the chapter 11 case of Ho Wan Kwok (the "Debtor") (and such motion, the "Motion") (ECF 102), and a hearing having been held on the Motion on April 13, 2022, and this Court having considered the Debtor's consent to the appointment of an examiner on the terms set forth in this Order, and having concluded that the appointment of an examiner under 11 U.S.C. § 1104(c) of the Bankruptcy Code to conduct the investigation set forth herein is in the best interests of creditors and the estate, and the Court having found that there was sufficient notice of the Motion, and the Court having found cause to grant the Motion, and the Court having considered any objections to the Motion and overruled such objections, it is hereby

**(1)      ORDERED** that the Motion is granted pursuant to 11 U.S.C. § 1104(c)(1) and (2); *provided*, *however*, that the Court is not making any findings or determinations as to any of the allegations set forth in the Motion, and the rights of all parties in interest are reserved with respect to the same; and it is further

(2)     **ORDERED** that the United States Trustee is directed to appoint an Examiner in the Debtor's case; and it is further

(3)     **ORDERED** that the Examiner is directed to: (a) identify the Debtor's post-petition income, sources of funds, and payment of Debtor's obligations from all sources; (b) identify the Debtor's uses of post-petition income; (c) identify and understand the extent of the Debtor's interests in property as of the Petition Date in accordance with 11 U.S.C. § 541, including any beneficial, controlling, equitable or legal interests in any corporate entities, and identify and understand the assets and liabilities of those corporate entities; (d) identify any competing legal or equitable interests or claims in respect of estate property and any limitations on the Debtor's interests in such property; (e) identify the Debtor's past and present use of family-related real property and conveyances; (f) identify the Debtor's past and present services provided for the benefit of family-member related businesses and entities; and (g) examine whether the Debtor is fulfilling all of his fiduciary duties under the Bankruptcy Code and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all estate assets and causes of action (the "Investigation"); and it is further

(4)     **ORDERED** that the United States Trustee shall file the notice of appointment of the Examiner ("Notice of Appointment") within seven (7) days after entry of this Order; and it is further

(5)     **ORDERED** that, within seven (7) days after the Notice of Appointment has been filed, the Examiner shall file with the Court a proposed work plan and budget for the Investigation, which shall be subject to approval by the Court on seven (7) days' notice to the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), and all parties that have requested notice pursuant to Bankruptcy Rule 2002; and it is further

(6)     **ORDERED** that, before commencing the Investigation, the Examiner shall meet and confer with representatives from the Debtor and the Committee to discuss the Investigation; and it is further

(7)     **ORDERED** that the Examiner, the Debtor, the Committee, or the United States Trustee shall have the right to petition the Court to modify the scope of the Investigation if during such Investigation other relevant matters are revealed which the Examiner, the Debtor, the Committee or the United States Trustee believe should be brought to the attention of the Court, and the rights of all parties in interest with respect to any such petition are fully preserved; and it is further

(8)     **ORDERED** that the Debtor and the Committee are directed to fully cooperate with the Examiner in conjunction with the Investigation (it being understood that any information provided to the Examiner shall be provided pursuant to a reasonably acceptable non-disclosure agreement between the parties, or a protective order entered by this Court and, for the avoidance of doubt, nothing in this Order shall be deemed a waiver of any rights or privileges that the Debtor may have or assert), and that the Debtor and the Committee shall use their respective best efforts to coordinate with the Examiner to avoid unnecessary interference with, or duplication of, the Investigation; and it is further

(9)     **ORDERED** that the Examiner is authorized to seek the cooperation of and information from the Debtor's family members and/or entities affiliated with such family members, including Golden Spring (New York) Ltd.; HK International Funds Investments (USA) Limited, LLC; and Ms. Mei Guo; and it is further

**(10)**    **ORDERED** that until the Examiner has filed his or her report, neither the Examiner nor the Examiner's representatives or agents shall make any public disclosures concerning the performance of the Investigation or the Examiner's duties; and it is further

**(11)**    **ORDERED** that the Examiner shall prepare and file a report, as is required by 11 U.S.C. § 1106(a)(4), within ninety (90) days following the approval of the work plan by the Court, unless such time shall be extended by order of the Court on notice to the Debtor, the Committee, and all parties that have requested notice pursuant to Federal Rules of Bankruptcy Procedure; and it is further

**(12)**    **ORDERED** that the Examiner shall provide the Debtor with a substantially final draft of the report at least three (3) business days before filing it with the Court so that the Debtor may review for information subject to any non-disclosure obligations and, if necessary, seek a protective order or other appropriate relief; and it is further

**(13)**    **ORDERED** that the Examiner may retain counsel and other professionals if he or she determines that such retention is necessary to discharge his or her duties, with such retention being subject to Court approval under standards equivalent to those set forth in 11 U.S.C. § 327; and it is further

**(14)**    **ORDERED** that the Examiner and any professionals retained by the Examiner pursuant to any order of this Court shall be compensated and reimbursed for their expenses in accordance with any procedures for interim compensation and reimbursement of expenses of professionals that are established in this case.  Compensation and reimbursement of the Examiner shall be determined pursuant to 11 U.S.C. § 330, and compensation and reimbursement of the Examiner's professionals shall be determined pursuant to standards equivalent to those set forth in 11 U.S.C. § 330; and it is further

**(15)     ORDERED** that the Examiner shall cooperate fully with any governmental agencies (such cooperation shall not be deemed a public disclosure as referenced in paragraph 10 above) including, but not limited to, any federal, state or local government agency that may be investigating the Debtor, and the Examiner shall use best efforts to coordinate with such agencies in order to avoid unnecessary interference with, or duplication of, any investigations conducted by such agencies; *provided* that the Examiner shall promptly provide written notice to the Debtor of any request for information by any such governmental agency so that the Debtor has an opportunity to seek a protective order or other appropriate relief; and it is further

**(16)     ORDERED** that the Examiner shall have the standing of a "party-in-interest" with respect to the matters that are within the scope of the Investigation, and shall be entitled to appear and be heard at any and all hearings in this case; *provided*, *however* that the Examiner shall not have standing or the ability to prosecute any claim or cause of action on behalf of the estate; and it is further

**(17)     ORDERED** that nothing in this Order shall impede the right of the United States Trustee or any other party to request any other lawful relief, including but not limited to, the appointment of a trustee, and the rights of all parties in interest with respect to any such request are fully preserved; and it is further

**(18)     ORDERED** that Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# **<u>Exhibit B</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-----------------------------------------------------------------X
                                    :

In re:                              : Chapter 11
                                      :

      Ho Wan Kwok,               : Case No. 22-50073 (JAM)
                                      :

                                      : Ref. Dkt. No. 102

              Debtor.            :
                                      :
-----------------------------------------------------------------X

~~NOTICE OF *AMENDED*[1]~~ PROPOSED ORDER DIRECTING ~~ORDER GRANTING UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DIRECTING~~ THE APPOINTMENT OF AN EXAMINER ~~OR, IN THE ALTERNATIVE, MOTION FOR ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE~~

~~The United States Trustee, William K. Harrington, through the undersigned counsel, hereby provides notice to the Court that the Debtor has advised the United States Trustee that the Debtor has no objection to the appointment of an examiner in the above-captioned case.~~

~~The United States Trustee also submits the amended proposed order as follows:~~

The United States Trustee, having ~~moved~~filed a motion for an order directing the appointment of an examiner under 11 U.S.C. § 1104(c) (~~1) and/or (2) for~~the "Examiner") in the chapter 11 case of Ho Wan Kwok ~~a/k/a Wengui Guo a/k/a Miles Guo~~ ((the "Debtor") (and such motion, ~~or in~~ the ~~alternative, an order directing the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(2) based on the best interests of creditors and the estate (~~"Motion") (ECF 102), and a hearing having been held on the Motion on ~~————~~April 13, 2022, and this ~~court~~Court

---

[1] ~~Although the Debtor has agreed to the Court's directing the United States Trustee to appoint an examiner in the Debtor's Chapter 11 case, neither the Debtor nor other parties in interest have agreed to the terms of the Amended Proposed Order herein. The United States Trustee files this Notice of Amended Proposed Order to provide notice of the proposed terms to all parties and the Court in advance of the hearing on the United States Trustee's Motion.~~

having considered ~~the evidence and~~ the Debtor's consent to the ~~Motion and~~appointment of an examiner on the terms set forth in this Order, and having concluded that the appointment of an examiner under 11 U.S.C. § 1104(c)~~(2)~~ of the Bankruptcy Code to ~~investigate the affairs of the Debtor is mandatory as the Debtor's fixed, liquidated unsecured debts exceed $5 million. The court further finds that grounds exist for the appointment of an examiner under 11 U.S.C. 1104(c)(1) as the appointment of an examiner to investigate the affairs of the Debtor and the Debtor's affiliates~~conduct the investigation set forth herein is in the best ~~interest~~interests of creditors and ~~other interest of~~ the estate. ~~The~~, and the Court having found that there was sufficient notice of the Motion, and the Court having found cause to grant the Motion, and the Court having considered any objections to the Motion and overruled such objections, it is hereby

**(1)   ORDERED** that the Motion is granted pursuant to 11 U.S.C. § 1104(c)(1) and (2); *provided, however, that the Court is not making any findings or determinations as to any of the allegations set forth in the Motion, and the rights of all parties in interest are reserved with respect to the same;* and it is further

**(2)   ORDERED** that the United States Trustee is directed to appoint an Examiner in the Debtor's case; and it is further

**(3)   ORDERED** that the ~~examiner~~Examiner is directed to: (a) identify the Debtor's ~~postpetition~~post-petition income, sources of funds, and payment of Debtor's obligations from all sources~~,~~; (b) identify the Debtor's uses of post-petition income~~,~~; (c) identify and understand the extent of the Debtor's interests in property as of the Petition Date in accordance with 11 U.S.C. § 541, including any beneficial, ~~control~~controlling, equitable ~~and~~or legal~~, in~~ interests in any corporate entities ~~across the globe~~, and identify and understand the assets and liabilities of those corporate entities; (d) identify any competing legal or equitable interests or claims in respect of

estate property and any limitations on the Debtor's interests in such property; (e) identify the Debtor's past and present use of family-related real property and conveyances; (ef) identify the Debtor's past and present services provided for the benefit of family-member related businesses and entities; and (fg) examine whether the Debtor is fulfilling all of his fiduciary duties under the Bankruptcy Code and complying with all the reporting requirements imposed upon debtors-in-possession, including disclosure of all estate assets and causes of action (the "Investigation"); and it is further

(4)    **ORDERED** that the United States Trustee shall file the notice of appointment of the Examiner ("Notice of Appointment") within seven (7) days after entry of this Order; and it is further

(5)    **ORDERED** that, within seven (7) days after the Notice of Appointment has been filed, the Examiner shall file with the Court a proposed work plan and budget for the Investigation, which shall be subject to approval by the Court on seven (7) days' notice to the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), and all parties that have requested notice pursuant to Bankruptcy Rule 2002; and it is further

(6)    **ORDERED** that, before commencing the Investigation, the Examiner shall meet and confer with representatives from the Debtor and the Committee to discuss the Investigation; and it is further

(7)    (4) **ORDERED** that the Examiner, the Debtor, the Committee, or the United States Trustee shall have the right to petition the Court to further expand modify the scope of the Investigation, if during such Investigation other relevant matters are revealed which the Examiner, the Debtor, the Committee or the United States Trustee believe should be brought to

the attention of the Court, and the rights of all parties in interest with respect to any such petition are fully preserved; and it is further

**(8)**    (5) **ORDERED** that the Debtor, the Debtor's affiliates, family members and their businesses and entities, and the Committee are directed to fully cooperate with the Examiner in conjunction with the performance of any of the examiner's duties and the Investigation,Investigation (it being understood that any information provided to the Examiner shall be provided pursuant to a reasonably acceptable non-disclosure agreement between the parties, or a protective order entered by this Court and, for the avoidance of doubt, nothing in this Order shall be deemed a waiver of any rights or privileges that the Debtor may have or assert), and that the Debtor and the Committee shall use their respective best efforts to coordinate with the Examiner to avoid unnecessary interference with, or duplication of, the Investigation; and it is further

**(9)**    **ORDERED** that the Examiner is authorized to seek the cooperation of and information from the Debtor's family members and/or entities affiliated with such family members, including Golden Spring (New York) Ltd.; HK International Funds Investments (USA) Limited, LLC; and Ms. Mei Guo; and it is further

**(10)**    (6) **ORDERED** that until the examinerExaminer has filed his or her report, neither the examiner nor the examiner'sExaminer nor the Examiner's representatives or agents shall make any public disclosures concerning the performance of the Investigation or the examiner'sExaminer's duties; and it is further

**(11)**    (7) **ORDERED** that the examinerExaminer shall prepare and file a report, as is required by 11 U.S.C. § 1106(a)(4), within 120ninety (90) days following the approval of the work plan by the Court, unless such time shall be extended by order of the Court on Notice

~~to~~notice to the Debtor, the Committee, and all parties that have requested notice pursuant to Federal Rules of Bankruptcy Procedure; and it is further

**(12)**   **ORDERED** that the Examiner shall provide the Debtor with a substantially final draft of the report at least three (3) business days before filing it with the Court so that the Debtor may review for information subject to any non-disclosure obligations and, if necessary, seek a protective order or other appropriate relief; and it is further

**(13)**   ~~(8)~~ **ORDERED** that the ~~examiner~~Examiner may retain counsel and other professionals~~,~~ if he or she determines that such retention is necessary to discharge his or her duties, with such retention being subject to Court approval under standards equivalent to those set ~~for~~forth in 11 U.S.C. § 327; and it is further

**(14)**   ~~(9)~~ **ORDERED** that the ~~examiner~~Examiner and any professionals retained by the ~~examiner~~Examiner pursuant to any order of this Court shall be compensated and reimbursed for their expenses in ~~accord~~accordance with any procedures for interim compensation and reimbursement of expenses of professionals that are established in this case.  Compensation and reimbursement of the ~~examiner~~Examiner shall be determined pursuant to 11 U.S.C. § 330, and compensation and reimbursement of the ~~examiner's~~Examiner's professionals shall be determined pursuant to standards equivalent to those set forth in 11 U.S.C. § 330; and it is further

**(15)**   ~~(10)~~ **ORDERED** that the ~~examiner~~Examiner shall cooperate fully with any governmental agencies (such cooperation shall not be deemed a public disclosure as referenced in paragraph ~~6~~10 above) including, but not limited to, any federal, state or local government agency that may be investigating the Debtor, ~~any person, corporation or entity in which the Debtor may have a relationship, and the examiner~~and the Examiner shall use best efforts to

coordinate with such agencies in order to avoid unnecessary interference with, or duplication of, any investigations conducted by such agencies; *provided that the Examiner shall promptly provide written notice to the Debtor of any request for information by any such governmental agency so that the Debtor has an opportunity to seek a protective order or other appropriate relief;* and it is further

**(16)**    (11) **ORDERED** that the ~~examiner~~Examiner shall have the standing of a "party-in-interest" with respect to the matters that are within the scope of the Investigation, and shall be entitled to appear and be heard at any and all hearings in this case; *provided, however that the Examiner shall not have standing or the ability to prosecute any claim or cause of action on behalf of the estate;* and it is further

**(17)**    (12) **ORDERED** that nothing in this Order shall impede the right of the United States Trustee or any other party to request any other lawful relief, including but not limited to, the appointment of a trustee~~.~~, and the rights of all parties in interest with respect to any such request are fully preserved; and it is further

64659425 v1-WorkSiteUS-000002/3313

**(18)**    **ORDERED** that Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# Exhibit C-1

Case 21-20111   Doc 1061   Filed 04/06/24   Entered 04/06/24 16:24:35   Page 2 of 104

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CARLA'S PASTA, INC., *et al.*, | : | Case No. 21-20111 |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

## GLOBAL NOTES AND STATEMENT OF
## LIMITATIONS, METHODOLOGY, AND DISCLAIMER
## REGARDING CARLA'S PASTA'S SCHEDULES OF ASSETS
## AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Carla's Pasta, Inc. ("Carla's Pasta" or the "Debtor") as debtor-in-possession in the above-captioned, jointly administered, chapter 11 cases, have filed its Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs", and collectively with the "Schedules," the "Schedules and Statements") in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"). The Debtor, with the assistance of its advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Carla Squatrito, the Chief Executive Officer of the Debtor, has signed the Schedules and Statements. In reviewing and signing the Schedules and Statements, Ms. Squatrito has necessarily relied upon the efforts, statements, and representations of various personnel of the Debtor. Ms. Squatrito has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

These *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Schedules and Statements* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes should be referred to and reviewed in connection with any review of the Schedules and Statements. In the event that the Schedules and Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the Debtor's financial statements. The Schedules and Statements contain unaudited information that is subject to further review and potential

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Carla's Pasta, Inc. (5847) and Suri Realty, LLC (5847).   The Debtors' corporate headquarters and service address is 50 Talbot Lane, South Windsor, Connecticut 06074.

adjustment. In preparing the Schedules and Statements, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. The Debtor has made reasonable and good faith efforts to ensure the accuracy and completeness of such financial information, but further research or discovery may identify subsequent information that may necessitate material amendments to the Schedules and Statements. As a result, the Debtor is unable to warrant or represent that the Schedules and Statements are without inadvertent errors, omissions, or inaccuracies and may be amended in the future.

Nothing contained in the Schedules and Statements shall constitute a waiver of any of the Debtor's rights or an admission with respect to the above-referenced chapter 11 cases, including, without limitation, any issues involving substantive consolidation, equitable subordination, offsets or defenses, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant applicable laws to recover assets or avoid transfers.

**Summary of Significant Reporting Policies**. The following is a summary of significant reporting policies:

a)      Allocation of Liabilities. The Debtor allocated liabilities between the prepetition and postpetition periods based on research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. The Debtor reserves all rights to modify, amend, and supplement the Schedules and Statements as is necessary and appropriate.

b)      Amendments and Supplements. While the Debtor made reasonable and good faith efforts to file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The Debtor reserves all rights to amend or supplement the Schedules and Statements as is necessary and appropriate.

c)      "As-Of" Date. Financial information for the Debtor's assets are, unless otherwise noted herein or in the Schedules and Statements, provided as of January 31, 2021.   Financial information for the Debtor's liabilities are, unless otherwise noted herein or in the Schedules and Statements, provided as of January 31, 2021.

d)      Bankruptcy Court Orders. Pursuant to various orders entered or to be entered by the Bankruptcy Court (collectively, the "Pre-petition Payment Orders"), the Debtor was or will be authorized to pay certain outstanding pre-petition claims, including, without limitation, certain claims of employees for wages, salaries and benefits, certain customer programs, and certain tax claims. As a result, and as detailed herein, the Debtor has not listed these claims in the Schedules. To the extent such claims are listed on the Schedules and Statements, inadvertently or otherwise, the Debtor does not waive any right to amend the Schedules and Statements and/or subsequently object to such claims on any basis, including that such claims have already been satisfied through payments with respect to the Pre-petition Payment Orders.

e)      Claims Description. Any failure to designate a claim on the Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtor

reserves all rights to dispute any claim, whether reflected on their respective Schedules and Statements or asserted pursuant to a filed proof of claim, on any grounds, including, without limitation, amount, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent," or "unliquidated."

f)      Classifications. Listing a claim or contract (i) on Schedule D as "secured," (ii) on Schedule E as "unsecured priority", (iii) on Schedule F as "unsecured," or (iv) on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant, or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract.

g)      Causes of Action. Despite reasonable and good faith efforts, the Debtor may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements. The Debtor reserves all rights with respect to any causes of action and nothing in the Global Notes or the Schedules and Statements shall be deemed a waiver of any such causes of action. Similarly, in instances where the Debtor is defendant in pending causes of action, nothing in the Global Notes or the Schedules and Statements shall be deemed as an admission or determination with respect to, or a waiver of any defense or objection to, such causes of action, and all of the Debtor's defenses, objection and other rights with respect to such causes of action are hereby preserved.

h)      Confidential, Private, and Commercially Sensitive Information. In certain instances, the Debtor may have intentionally altered, revised, redacted or consolidated certain information in the Schedules and Statements due to the nature of an agreement between the Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information or concerns for the privacy of an individual. In addition, in certain instances, the sensitivity of such information may require its omission from the Schedules and Statements. To the extent possible, the alterations, redactions, consolidations and omissions have been limited to the extent determined by the Debtor to be necessary or appropriate to protect the Debtor or third parties while also providing interested parties with sufficient information in response to the Schedules and Statements.

i)      Entity Classification Issues. The Debtor (and together with Suri Realty, LLC, the "Debtors") has endeavored in good faith to identify the assets owned by each Debtor and the liabilities owed by each Debtor. While the Schedules reflect the results of this effort, several factors may impact the ability of the Debtor to precisely assign assets and liabilities to particular Debtor entities, including but not limited to (i) certain assets may be primarily used by a Debtor other than the entity which holds title to such assets according to the Debtors' books and records; (ii) certain liabilities may have been nominally incurred by one Debtor, yet such liabilities may have actually been incurred by, or the invoices related to such liabilities may have been issued to or in the name of, another Debtor; and (iii) certain creditors of the Debtors may have treated one or more of the Debtors as a consolidated entity rather than as differentiated entities.

j)      Estimates and Assumptions. In preparing the Schedules and Statements, the Debtor was required to make certain estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosure and potential values of contingent assets and liabilities on the date the Schedules and Statements were filed and the reported amounts of revenues and

expenses during the reporting period. Actual results could differ from those estimates, perhaps materially.

k)    <u>Excluded Assets and Liabilities</u>. The Debtor has excluded certain categories of assets and liabilities from the Schedules and Statements such as de minimis deposits, and accrued liabilities including, without limitation, tax accruals and accrued accounts payable. Other immaterial assets and liabilities may also have been excluded. Finally, certain deferred charges, accounts, or reserves recorded for GAAP reporting purposes only are not included in the Debtor's Schedules.

l)    <u>Executory Contracts and Unexpired Leases</u>. The Debtor has not necessarily set forth executory contracts and unexpired leases as assets in the Schedules and Statements, even though these contracts may have some value to the Debtor's estate. The Debtor's executory contracts and unexpired leases have been set forth in Schedule G. The Debtor's rejection of executory contracts and unexpired leases will result in the assertion of rejection damages claims; however, the Schedules and Statements do not reflect any rejection damages claims. The Debtor reserves the right to make any arguments and objections with respect to the assertion of any such claims.

n)    <u>Insiders</u>. For purposes of the Schedules and Statements, the Debtor defines "insiders" pursuant to section 101(31) of the Bankruptcy Code as: (i) directors; (ii) officers; (iii) persons in control of the Debtor; (iv) relatives of directors, officers, or persons in control of the Debtor; and (v) affiliates. Persons listed as "insiders" have been included for informational purposes only. The Debtor does not take any position with respect to: (i) such person's influence over the control of the Debtor; (ii) the management responsibilities or functions of such individual; (iii) the decision-making or corporate authority of such individual; or (iv) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability, or for any other purpose. The listing of a party as an insider is not intended to be nor should it be construed as a legal characterization of such party as an insider, nor should it be construed as an admission that such party is an insider, all such rights, claims and defenses are expressly reserved.

o)    <u>Intercompany Claims</u>. Receivables and payables among the Debtors in these cases (each an "<u>Intercompany Receivable</u>" or "<u>Intercompany Payable</u>" and, collectively, the "<u>Intercompany Claims</u>") are reported on Schedule B(16) or Schedule F as a receivable or payable due to or from the applicable Debtor to or from the other Debtors. Where no balance is listed, the Debtor does not believe, based on information currently available, that the applicable Debtor has any Intercompany Receivables or Intercompany Payables.

p)    <u>Litigation</u>. The Debtor has listed on Schedule F all known claimants related to any pending or threatened litigation action as contingent, unliquidated and disputed with unknown amounts. Although claim amounts were not estimated, allowed claims, if any, for these claimants may be substantial.

q)    <u>Net Book Value</u>. In certain instances, market valuations are neither maintained by, nor readily available to, the Debtor. In other instances, market valuations are available but they

are out-of-date. It would be prohibitively expensive, unduly burdensome and an inefficient use of estate assets for the Debtor to obtain current market valuations of all of its assets. Accordingly, unless otherwise indicated, the Debtor's Schedules and Statements reflect the Debtor's assets at net book values. Market values of these assets may vary, at some times materially, from the net book value of such assets. As applicable, assets that have been fully depreciated or were expensed for accounting purposes have no net book value.

r)      <u>Recharacterization</u>. Notwithstanding that the Debtor has made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtor nonetheless may have improperly characterized, classified, categorized, or designated certain items. Thus, the Debtor reserves all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate as additional information becomes available.

s)      <u>Third-Party Property</u>. In the ordinary course of its business, the Debtor leases equipment from certain third-party lessors for use in the daily operation of its business and otherwise use and hold property owned by third-parties pursuant to contracts and leases with such parties. The property subject to any such leases or contracts is not reflected in either Schedule A or Schedule B as either owned property or assets of the Debtor. Neither is the property subject to any such leases or contracts reflected in the Debtor's SOFAs as property or assets of third-parties within the control of the Debtor. Nothing contained in the Schedules and Statements is or shall be construed as an admission or determination as to the legal status of any lease (including, but not limited to, whether any lease is a true lease or a financing arrangement) or contract (including, but not limited to, whether the contract is, in fact, an executory contract), and the Debtor reserves all rights with respect to any such issues.

s)      <u>Undetermined Amounts</u>. The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

*          *          *          *          *

5

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CARLA'S PASTA, INC., *et al.*, | : | Case No. 21-20111 |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

## GLOBAL NOTES AND STATEMENT OF
## LIMITATIONS, METHODOLOGY, AND DISCLAIMER
## REGARDING CARLA'S PASTA'S SCHEDULES OF ASSETS
## AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Carla's Pasta, Inc. ("Carla's Pasta" or the "Debtor") as debtor-in-possession in the above-captioned, jointly administered, chapter 11 cases, have filed its Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs", and collectively with the "Schedules," the "Schedules and Statements") in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"). The Debtor, with the assistance of its advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Carla Squatrito, the Chief Executive Officer of the Debtor, has signed the Schedules and Statements. In reviewing and signing the Schedules and Statements, Ms. Squatrito has necessarily relied upon the efforts, statements, and representations of various personnel of the Debtor. Ms. Squatrito has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

These *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Schedules and Statements* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes should be referred to and reviewed in connection with any review of the Schedules and Statements. In the event that the Schedules and Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the Debtor's financial statements. The Schedules and Statements contain unaudited information that is subject to further review and potential

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Carla's Pasta, Inc. (5847) and Suri Realty, LLC (5847).  The Debtors' corporate headquarters and service address is 50 Talbot Lane, South Windsor, Connecticut 06074.

adjustment. In preparing the Schedules and Statements, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. The Debtor has made reasonable and good faith efforts to ensure the accuracy and completeness of such financial information, but further research or discovery may identify subsequent information that may necessitate material amendments to the Schedules and Statements. As a result, the Debtor is unable to warrant or represent that the Schedules and Statements are without inadvertent errors, omissions, or inaccuracies and may be amended in the future.

Nothing contained in the Schedules and Statements shall constitute a waiver of any of the Debtor's rights or an admission with respect to the above-referenced chapter 11 cases, including, without limitation, any issues involving substantive consolidation, equitable subordination, offsets or defenses, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant applicable laws to recover assets or avoid transfers.

**Summary of Significant Reporting Policies**. The following is a summary of significant reporting policies:

a) <u>Allocation of Liabilities</u>. The Debtor allocated liabilities between the prepetition and postpetition periods based on research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. The Debtor reserves all rights to modify, amend, and supplement the Schedules and Statements as is necessary and appropriate.

b) <u>Amendments and Supplements</u>. While the Debtor made reasonable and good faith efforts to file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The Debtor reserves all rights to amend or supplement the Schedules and Statements as is necessary and appropriate.

c) <u>"As-Of" Date</u>. Financial information for the Debtor's assets are, unless otherwise noted herein or in the Schedules and Statements, provided as of January 31, 2021. Financial information for the Debtor's liabilities are, unless otherwise noted herein or in the Schedules and Statements, provided as of January 31, 2021.

d) <u>Bankruptcy Court Orders</u>. Pursuant to various orders entered or to be entered by the Bankruptcy Court (collectively, the "<u>Pre-petition Payment Orders</u>"), the Debtor was or will be authorized to pay certain outstanding pre-petition claims, including, without limitation, certain claims of employees for wages, salaries and benefits, certain customer programs, and certain tax claims. As a result, and as detailed herein, the Debtor has not listed these claims in the Schedules. To the extent such claims are listed on the Schedules and Statements, inadvertently or otherwise, the Debtor does not waive any right to amend the Schedules and Statements and/or subsequently object to such claims on any basis, including that such claims have already been satisfied through payments with respect to the Pre-petition Payment Orders.

e) <u>Claims Description</u>. Any failure to designate a claim on the Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtor

2

reserves all rights to dispute any claim, whether reflected on their respective Schedules and Statements or asserted pursuant to a filed proof of claim, on any grounds, including, without limitation, amount, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent," or "unliquidated."

      f)      <u>Classifications</u>. Listing a claim or contract (i) on Schedule D as "secured," (ii) on Schedule E as "unsecured priority", (iii) on Schedule F as "unsecured," or (iv) on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant, or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract.

      g)      <u>Causes of Action</u>. Despite reasonable and good faith efforts, the Debtor may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements. The Debtor reserves all rights with respect to any causes of action and nothing in the Global Notes or the Schedules and Statements shall be deemed a waiver of any such causes of action. Similarly, in instances where the Debtor is defendant in pending causes of action, nothing in the Global Notes or the Schedules and Statements shall be deemed as an admission or determination with respect to, or a waiver of any defense or objection to, such causes of action, and all of the Debtor's defenses, objection and other rights with respect to such causes of action are hereby preserved.

      h)      <u>Confidential, Private, and Commercially Sensitive Information</u>. In certain instances, the Debtor may have intentionally altered, revised, redacted or consolidated certain information in the Schedules and Statements due to the nature of an agreement between the Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information or concerns for the privacy of an individual. In addition, in certain instances, the sensitivity of such information may require its omission from the Schedules and Statements. To the extent possible, the alterations, redactions, consolidations and omissions have been limited to the extent determined by the Debtor to be necessary or appropriate to protect the Debtor or third parties while also providing interested parties with sufficient information in response to the Schedules and Statements.

      i)      <u>Entity Classification Issues</u>. The Debtor (and together with Suri Realty, LLC, the "<u>Debtors</u>") has endeavored in good faith to identify the assets owned by each Debtor and the liabilities owed by each Debtor. While the Schedules reflect the results of this effort, several factors may impact the ability of the Debtor to precisely assign assets and liabilities to particular Debtor entities, including but not limited to (i) certain assets may be primarily used by a Debtor other than the entity which holds title to such assets according to the Debtors' books and records; (ii) certain liabilities may have been nominally incurred by one Debtor, yet such liabilities may have actually been incurred by, or the invoices related to such liabilities may have been issued to or in the name of, another Debtor; and (iii) certain creditors of the Debtors may have treated one or more of the Debtors as a consolidated entity rather than as differentiated entities.

      j)      <u>Estimates and Assumptions</u>. In preparing the Schedules and Statements, the Debtor was required to make certain estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosure and potential values of contingent assets and liabilities on the date the Schedules and Statements were filed and the reported amounts of revenues and

expenses during the reporting period. Actual results could differ from those estimates, perhaps materially.

      k)      <u>Excluded Assets and Liabilities</u>. The Debtor has excluded certain categories of assets and liabilities from the Schedules and Statements such as de minimis deposits, and accrued liabilities including, without limitation, tax accruals and accrued accounts payable. Other immaterial assets and liabilities may also have been excluded. Finally, certain deferred charges, accounts, or reserves recorded for GAAP reporting purposes only are not included in the Debtor's Schedules.

      l)      <u>Executory Contracts and Unexpired Leases</u>. The Debtor has not necessarily set forth executory contracts and unexpired leases as assets in the Schedules and Statements, even though these contracts may have some value to the Debtor's estate. The Debtor's executory contracts and unexpired leases have been set forth in Schedule G. The Debtor's rejection of executory contracts and unexpired leases will result in the assertion of rejection damages claims; however, the Schedules and Statements do not reflect any rejection damages claims. The Debtor reserves the right to make any arguments and objections with respect to the assertion of any such claims.

      n)      <u>Insiders</u>. For purposes of the Schedules and Statements, the Debtor defines "insiders" pursuant to section 101(31) of the Bankruptcy Code as: (i) directors; (ii) officers; (iii) persons in control of the Debtor; (iv) relatives of directors, officers, or persons in control of the Debtor; and (v) affiliates. Persons listed as "insiders" have been included for informational purposes only. The Debtor does not take any position with respect to: (i) such person's influence over the control of the Debtor; (ii) the management responsibilities or functions of such individual; (iii) the decision-making or corporate authority of such individual; or (iv) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability, or for any other purpose. The listing of a party as an insider is not intended to be nor should it be construed as a legal characterization of such party as an insider, nor should it be construed as an admission that such party is an insider, all such rights, claims and defenses are expressly reserved.

      o)      <u>Intercompany Claims</u>. Receivables and payables among the Debtors in these cases (each an "<u>Intercompany Receivable</u>" or "<u>Intercompany Payable</u>" and, collectively, the "<u>Intercompany Claims</u>") are reported on Schedule B(16) or Schedule F as a receivable or payable due to or from the applicable Debtor to or from the other Debtors. Where no balance is listed, the Debtor does not believe, based on information currently available, that the applicable Debtor has any Intercompany Receivables or Intercompany Payables.

      p)      <u>Litigation</u>. The Debtor has listed on Schedule F all known claimants related to any pending or threatened litigation action as contingent, unliquidated and disputed with unknown amounts. Although claim amounts were not estimated, allowed claims, if any, for these claimants may be substantial.

      q)      <u>Net Book Value</u>. In certain instances, market valuations are neither maintained by, nor readily available to, the Debtor. In other instances, market valuations are available but they

are out-of-date. It would be prohibitively expensive, unduly burdensome and an inefficient use of estate assets for the Debtor to obtain current market valuations of all of its assets. Accordingly, unless otherwise indicated, the Debtor's Schedules and Statements reflect the Debtor's assets at net book values. Market values of these assets may vary, at some times materially, from the net book value of such assets. As applicable, assets that have been fully depreciated or were expensed for accounting purposes have no net book value.

      r)    <u>Recharacterization</u>. Notwithstanding that the Debtor has made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtor nonetheless may have improperly characterized, classified, categorized, or designated certain items. Thus, the Debtor reserves all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate as additional information becomes available.

      s)    <u>Third-Party Property</u>. In the ordinary course of its business, the Debtor leases equipment from certain third-party lessors for use in the daily operation of its business and otherwise use and hold property owned by third-parties pursuant to contracts and leases with such parties. The property subject to any such leases or contracts is not reflected in either Schedule A or Schedule B as either owned property or assets of the Debtor. Neither is the property subject to any such leases or contracts reflected in the Debtor's SOFAs as property or assets of third-parties within the control of the Debtor. Nothing contained in the Schedules and Statements is or shall be construed as an admission or determination as to the legal status of any lease (including, but not limited to, whether any lease is a true lease or a financing arrangement) or contract (including, but not limited to, whether the contract is, in fact, an executory contract), and the Debtor reserves all rights with respect to any such issues.

      s)  <u>Undetermined Amounts</u>. The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

*        *        *        *        *

# Exhibit C-2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| THE ROSEGARDEN HEALTH AND | § | Case No. 18-30623 (AMN) |
| REHABILITATION CENTER LLC, *et al.*, | § | |
| | § | (Joint Administration) |
| Debtors.[1] | § | |
| | § | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND
DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND
LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

The Rosegarden Health and Rehabilitation Center LLC, *et al.*, the above-referenced debtors and debtors in possession (collectively, the "Debtors" and each a "Debtor"), as debtors in possession in the above-captioned chapter 11 case, with assistance of their advisors, are filing their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements" or "SOFAs") in the Bankruptcy Court for the District of Connecticut, (the "Bankruptcy Court") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules and Statements (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of all of the Debtors' Schedules and Statements. The Global Notes should be referred to, considered, and reviewed in connection with any review of the Schedules and Statements.

The Statements and Schedules do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of the Debtors. Additionally, the Statements and Schedules contain unaudited information that is subject to further review, potential adjustment, and reflect the Debtors' commercially reasonable efforts to report the assets and liabilities of each of the Debtors.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable

---

[1] The Debtors in these cases and the last four digits of each Debtor's tax identification number are: The Rosegarden Health and Rehabilitation Center LLC (4423) and Bridgeport Health Care Center Inc. (6665).

efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized. In no event shall the Debtors or their agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against any Debtor or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Chief Financial Officer Chaim Stern has signed each of the Statements and Schedules. Mr. Stern is an authorized signatory for the Debtors. In reviewing and signing the Statements and Schedules, Mr. Stern has relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors. Mr. Stern has not (and could not have) personally verified the accuracy of each statement and representation contained in the Statements and Schedules, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

## Global Notes and Overview of Methodology

1. **Reservation of Rights.** Reasonable efforts have been made to prepare and file complete and accurate Statements and Schedules; however, inadvertent errors or omissions may exist. The Debtors reserve all rights to (i) amend or supplement the Statements and Schedules from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Statements and Schedules with respect to claim ("Claim") description or designation; (ii) dispute or otherwise assert offsets or defenses to any Claim reflected in the Statements and Schedules as to amount, liability, priority, status or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated"; or object to the extent, validity, enforceability, priority, or avoidability of any Claim. Any failure to designate a Claim in the Statements and Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by Debtor that such Claim or amount is not "disputed," "contingent," or "unliquidated." Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed. Furthermore, nothing contained in the Statements and Schedules shall constitute a waiver of rights with respect to each Debtor's chapter 11 case, including, without limitation, issues involving Claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Statements and Schedules except as may be required by applicable law.

2. **Description of the Case and "As Of" Information Date.** On April 18, 2018 (the "Petition Date"), each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The asset information provided herein represents the asset data as of the close of business on April 18, 2018. The liability information represents the liability data of the Debtors as of the close of business on April 18, 2018, except as otherwise noted.

3. **Net Book Value of Assets.** Unless otherwise indicated, the asset data contained in the Statements and Schedules reflect net book value as of April 18, 2018. Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets and may differ materially from the actual value of the underlying assets.

4. **Recharacterization.** Notwithstanding the Debtors' commercially reasonable efforts to properly characterize, classify, categorize, or designate certain Claims, assets, executory contracts, unexpired leases, and other items reported in the Statements and Schedules, the Debtors may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to re-characterize, reclassify, recategorize, redesignate, add, or delete items reported in the Statements and Schedules at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired post petition. Disclosure of information in one or more Schedules, one or more Statement question, or one or more exhibits or attachments to the Statements and Schedules, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

5. **Liabilities.** The Debtors have sought to allocate liabilities between the prepetition and post-petition periods and between Debtor and Non-Debtor entities based on the information and research conducted in connection with the preparation of the Statements and Schedules. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and post-petition periods may change. Accordingly, each Debtor reserves all of its rights to amend, supplement, or otherwise modify its Statements and Schedules as is necessary or appropriate.

The liabilities listed on the Schedules do not reflect any analysis of Claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted Claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim.

6. **Excluded Assets and Liabilities.** The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Statements and Schedules, including, without limitation, goodwill, accrued salaries, employee benefit accruals, and accrued accounts payable. The Debtors have also excluded certain assets and liabilities that they believe are property or obligations of Non-Debtor affiliates. The Debtors have also excluded rejection damage Claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage Claims exist. In addition, certain immaterial assets and liabilities may have been excluded.

The Bankruptcy Court has authorized (but not directed) the Debtors to pay, in their discretion, certain outstanding Claims on a post-petition basis. Prepetition liabilities that have been paid post-petition or those that each Debtor anticipates paying via this authorization have not been included in the Schedules. Please see the notes to Schedule E/F for additional information.

7. **Insiders.** For purposes of the Statements and Schedules, the Debtors defined "insiders" pursuant to section 101(31) of the Bankruptcy Code as: (a) directors; (b) officers; (c) persons in control of the Debtors; (d) relatives of the Debtors' directors, officers or persons in control of the Debtors; and (e) debtor/non-debtor affiliates of the foregoing. Persons listed as "insiders" have been included for informational purposes only and the inclusion of them in the Statements and Schedules, shall not constitute an admission that those persons are insiders for purposes of section 101(31) of the Bankruptcy Code. Moreover, the Debtors do not take any position with respect to: (a) any insider's influence over the control of the Debtors; (b) the management responsibilities or functions of any such insider; (c) the decision making or corporate authority of any such insider; or (d) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose.

8. **Intellectual Property Rights.** Exclusion of any intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction.

9. **Classifications**. Listing (a) a Claim on Schedule D as "secured," (b) a Claim on Schedule E/F as "priority," (c) a Claim on Schedule E/F as "unsecured," or (d) a contract on Schedule G as "executory" or "unexpired," does not constitute an admission by any Debtor of the legal rights of the claimant or a waiver of any Debtor's rights to re-characterize or reclassify such Claims or contracts or to setoff of such Claims.

10. **Claims Description.** Schedules D and E/F permit the Debtors to designate a Claim as "disputed," "contingent," and/or "unliquidated." Any failure to designate a Claim on the Statements and Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by any Debtor that such amount is not "disputed," "contingent," or "unliquidated," or that such Claim is not subject to objection. The Debtors reserve all of their rights to dispute, or assert offsets or defenses to, any Claim reflected on their Statement and Schedules on any grounds, including liability or classification. Additionally, the Debtors expressly reserve all of their rights to subsequently designate such Claims as "disputed," "contingent" or "unliquidated." Moreover, listing a Claim does not constitute an admission of liability by the Debtor.

11. **Causes of Action.** Despite making commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third-parties as assets in the Statements and Schedules, including, without limitation, causes of actions arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.

The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross-claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") it may have, and neither these Global Notes nor the Statements and Schedules shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

12. **Summary of Significant Reporting Policies.** The following is a summary of significant reporting policies

- Undetermined Amounts. The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

- Totals. All totals that are included in the Statements and Schedules represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total maybe different than the listed total.

- Paid Claims. The Debtors were authorized (but not directed) to pay certain outstanding prepetition Claims pursuant to one or more orders entered by the Bankruptcy Court. The Debtors reserve all of their rights to amend or supplement the Statements and Schedules or take other action as is necessary or appropriate to avoid over-payment of or duplicate payments for any such liabilities. Please see notes to Schedule E/F for additional information.

- Liens. Property and equipment listed in the Statements and Schedules are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

13. **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars.

14. **Intercompany Payables and Receivables.** Intercompany receivables/payables are set forth on Schedules B and E/F, respectively. The listing by each Debtor of any account between a Debtor and another affiliate is a statement of what appears in the Debtors' books and records and does not reflect any admission or conclusion of any Debtor regarding the allowance, classification, characterization, validity, or priority of such account. The Debtors periodically record intercompany amounts for combined entities, which could result in discrepancies for allocation between legal entities. The Debtors take no position in these Statements and Schedules as to whether such accounts would be allowed as a Claim, an Interest, or not allowed at all. The Debtors and all parties in interest reserve all rights with respect to such accounts.

15. **Setoffs.** The Debtors periodically incur certain setoffs in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, returns, refunds, negotiations and/or disputes between a Debtor and its customers and/or suppliers. These normal setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Statements and Schedules.

16. **Employee Addresses.** Current employee and director addresses have been reported as the Debtors' business address throughout the Statements and Schedules, where applicable.

17. **Debtors' Addresses.** For the purposes of the Statements and Schedules, all addresses for all Debtors have been reported as the Debtor Bridgeport Health Care Center Inc.'s principal place of business in Bridgeport, Connecticut.

18. **Global Notes Control.** In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

## Specific Notes with Respect to the Debtors' Schedules of Assets and Liabilities

The Schedules neither purport to represent financial statements prepared in accordance with GAAP, nor are they intended to be fully reconciled with the financial statements of the Debtors. Additionally, the Schedules contain unaudited information that is subject to further review and potential adjustment, and reflect the Debtors' reasonable best efforts to report the assets and liabilities of each Debtor. Moreover, given, among other things, questions about the characterization of certain assets and the valuation and nature of certain liabilities, to the extent that any Debtor shows more assets than liabilities, this is not an admission that such Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent any Debtor shows more liabilities than assets, this is not an admission that such Debtor was insolvent as of the Petition Date or at any time before the Petition Date.

1. **Schedule D**

Except as specifically stated herein, real property lessors, utility companies and other parties that may hold security deposits have not been listed on Schedule D. The Debtors have not included parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights, including certain parties from whom the Debtors have received lien notices but whose notices the Debtors understands have not yet been filed or recorded. While reasonable efforts have been made, determination of the date upon which each claim in Schedule D was incurred or arose would be unduly burdensome or cost prohibitive, and therefore the Debtors may not list a date for each claim listed on Schedule D.

6

Finally, the Debtors are taking no position on the extent or priority of any particular creditor's lien in this document.

**2.     Schedule E/F**

Certain of the claims of state and local taxing authorities set forth in Schedule E/F, ultimately may be deemed to be secured claims pursuant to state or local laws. In addition, certain of the claims owing to various taxing authorities to which any Debtor may be liable may be subject to ongoing audits. The Debtors reserve the right to dispute or challenge whether claims owing to various taxing authorities are entitled to priority and the listing of any claim on Schedule E/F does not constitute an admission that such claim is entitled to priority treatment pursuant to section 507 of the Bankruptcy Code.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Although reasonable efforts have been made to identify the date of incurrence of each claim, determination of each date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtor does not list a date for each claim listed on Schedule E/F.

The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to any Debtor. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

Pursuant to the Order Granting Debtors' Motion Seeking Authorization to Pay Prepetition Compensation and Related Obligations to Employees and to Maintain Employee Benefit Programs Post-Petition [Docket No. 56] (the "Wages Order"), the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for wages, salaries, and other compensation, and employee medical and similar benefits. The Debtors have not listed on Schedule E/F any wage or wage-related obligations that the Debtors were granted authority to pay pursuant to any order that has been entered by the Bankruptcy Court, including the Wages Order. The Debtors believe that all such claims have been, or will be, satisfied in the ordinary course during their chapter 11 cases pursuant to the authority granted in the Wages Order.

Schedule E/F does not include certain deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific Claims as of the Petition Date. The Debtors have made every effort to include as contingent, unliquidated, or disputed the Claim of any vendor not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

7

The Debtors routinely pay vendor invoices by credit card and keep track of payments made by utilizing the online credit card account statements. However, Debtors' corporate credit card issued by American Express ("AMEX") was canceled when the Debtors filed for Chapter 11 and all related account statements were removed from the AMEX website. As the result, the Debtors have been unable to access their AMEX statements to confirm the amounts paid to vendors using this AMEX corporate card. The Debtors have attempted to identify all affected vendors on Schedule E/F by assigning an Unliquidated denotation alongside outstanding pre-petition accounts payable amounts and have requested that AMEX restore Debtors' access to the account statements as quickly as possible. Accordingly, Schedule E/F does not reflect all pre-petition payments made by the Debtors using the AMEX corporate card. The Debtors reserve the right to supplement and/or amend Schedule E/F once the account statements become available.

3. **Schedule G**

Certain of the instruments reflected on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional lands, and other miscellaneous rights. Such rights, powers, duties, and obligations are not separately set forth on Schedule G. The Debtors hereby expressly reserve the right to assert that any instrument listed on Schedule G is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code. In addition, each Debtor reserves all of its rights, claims, and causes of action with respect to claims associated with any contracts and agreements listed on Schedule A/B, including their right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement).

Certain confidentiality and non-compete agreements may not be listed on Schedule G. The Debtors reserves all of their rights with respect to such agreements.

Certain of the contracts and agreements listed on Schedule G may consist of several parts, including purchase orders, amendments, restatements, waivers, letters and other documents that may not be listed on Schedule G or that may be listed as a single entry.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, it is the Debtor's intent that each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed

8

thereon. In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

**<u>Specific Notes with Respect to Each Debtor's Statement of Financial Affairs</u>**

1. **SOFA Question 3 – Certain payments or transfers to creditors within 90 days before filing this case**

   The Debtors routinely pay vendor invoices by credit card and keep track of payments made by utilizing the online credit card account statements. However, Debtors' corporate credit card issued by American Express ("AMEX") was canceled when the Debtors filed for Chapter 11 and all related account statements were removed from the AMEX website. As a result, the Debtors have been unable to access their AMEX statements to confirm the amounts paid during the 90-day period using this AMEX corporate card. The Debtors have requested that AMEX restore Debtors' access to the account statements as quickly as possible. Accordingly, Debtors' responses to SOFA Question 3 do not include pre-petition payments made by the Debtors during the 90-day period using the AMEX corporate card. The Debtors reserve the right to supplement and/or amend their responses to SOFA Question 3 once the account statements become available.

   In addition, the Debtors' responses to SOFA Question 3 do not include certain Internal Revenue Service, Connecticut Department of Social Services, and Connecticut Department of Revenue Services levies that occurred during the 90-day period or certain Merchant Cash Advance payments that were made by the Debtors during the 90-day period as the precise dates and amounts of such levies and payments are still being ascertained. The Debtors reserve the right to supplement and/or amend their responses to SOFA Question 3 once such information become available.

2. **SOFA Question 4 – Payments or transfers to insiders within 1 year before filing this case**

   Mr. Stern receives an annual salary of $257,744 from the Debtors. In addition, the Debtors made numerous loan repayments to Mr. Stern within 1 year before the Petition Date. Given the total number of transfers involved and the limited time allotted for the completion of these Schedules and Statements of Financial Affairs, the Debtors' responses to SOFA Question 4 may not be complete. The Debtors are working to identify all payments and transfers that are responsive to SOFA Question 4 and reserve the right to supplement and/or amend their responses to SOFA Question 4.

3. **SOFA Question 21 – Property held for another**

   The Debtors maintain three (3) bank accounts to hold funds deposited by their patients, to be withdrawn by the patients as needed for incidentals.

   END OF GLOBAL NOTES

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT
### NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| THE ROSEGARDEN HEALTH AND | § | Case No. 18-30623 (AMN) |
| REHABILITATION CENTER LLC, *et al.*, | § | |
| | § | (Joint Administration) |
| Debtors.[1] | § | |
| | § | |

## GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

The Rosegarden Health and Rehabilitation Center LLC, *et al.*, the above-referenced debtors and debtors in possession (collectively, the "Debtors" and each a "Debtor"), as debtors in possession in the above-captioned chapter 11 case, with assistance of their advisors, are filing their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements" or "SOFAs") in the Bankruptcy Court for the District of Connecticut, (the "Bankruptcy Court") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules and Statements (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of all of the Debtors' Schedules and Statements. The Global Notes should be referred to, considered, and reviewed in connection with any review of the Schedules and Statements.

The Statements and Schedules do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of the Debtors. Additionally, the Statements and Schedules contain unaudited information that is subject to further review, potential adjustment, and reflect the Debtors' commercially reasonable efforts to report the assets and liabilities of each of the Debtors.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable

---

[1] The Debtors in these cases and the last four digits of each Debtor's tax identification number are:  The Rosegarden Health and Rehabilitation Center LLC (4423) and Bridgeport Health Care Center Inc. (6665).

efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized. In no event shall the Debtors or their agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against any Debtor or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Chief Financial Officer Chaim Stern has signed each of the Statements and Schedules. Mr. Stern is an authorized signatory for the Debtors. In reviewing and signing the Statements and Schedules, Mr. Stern has relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors. Mr. Stern has not (and could not have) personally verified the accuracy of each statement and representation contained in the Statements and Schedules, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

## Global Notes and Overview of Methodology

1. **Reservation of Rights.** Reasonable efforts have been made to prepare and file complete and accurate Statements and Schedules; however, inadvertent errors or omissions may exist. The Debtors reserve all rights to (i) amend or supplement the Statements and Schedules from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Statements and Schedules with respect to claim ("Claim") description or designation; (ii) dispute or otherwise assert offsets or defenses to any Claim reflected in the Statements and Schedules as to amount, liability, priority, status or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated"; or object to the extent, validity, enforceability, priority, or avoidability of any Claim. Any failure to designate a Claim in the Statements and Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by Debtor that such Claim or amount is not "disputed," "contingent," or "unliquidated." Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed. Furthermore, nothing contained in the Statements and Schedules shall constitute a waiver of rights with respect to each Debtor's chapter 11 case, including, without limitation, issues involving Claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Statements and Schedules except as may be required by applicable law.

2. **Description of the Case and "As Of" Information Date.** On April 18, 2018 (the "Petition Date"), each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The asset information provided herein represents the asset data as of the close of business on April 18, 2018. The liability information represents the liability data of the Debtors as of the close of business on April 18, 2018, except as otherwise noted.

3. **Net Book Value of Assets.** Unless otherwise indicated, the asset data contained in the Statements and Schedules reflect net book value as of April 18, 2018. Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets and may differ materially from the actual value of the underlying assets.

4. **Recharacterization.** Notwithstanding the Debtors' commercially reasonable efforts to properly characterize, classify, categorize, or designate certain Claims, assets, executory contracts, unexpired leases, and other items reported in the Statements and Schedules, the Debtors may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to re-characterize, reclassify, recategorize, redesignate, add, or delete items reported in the Statements and Schedules at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired post petition. Disclosure of information in one or more Schedules, one or more Statement question, or one or more exhibits or attachments to the Statements and Schedules, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

5. **Liabilities.** The Debtors have sought to allocate liabilities between the prepetition and post-petition periods and between Debtor and Non-Debtor entities based on the information and research conducted in connection with the preparation of the Statements and Schedules. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and post-petition periods may change. Accordingly, each Debtor reserves all of its rights to amend, supplement, or otherwise modify its Statements and Schedules as is necessary or appropriate.

The liabilities listed on the Schedules do not reflect any analysis of Claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted Claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's Claim.

6. **Excluded Assets and Liabilities.** The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Statements and Schedules, including, without limitation, goodwill, accrued salaries, employee benefit accruals, and accrued accounts payable. The Debtors have also excluded certain assets and liabilities that they believe are property or obligations of Non-Debtor affiliates. The Debtors have also excluded rejection damage Claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage Claims exist. In addition, certain immaterial assets and liabilities may have been excluded.

The Bankruptcy Court has authorized (but not directed) the Debtors to pay, in their discretion, certain outstanding Claims on a post-petition basis. Prepetition liabilities that have been paid post-petition or those that each Debtor anticipates paying via this authorization have not been included in the Schedules. Please see the notes to Schedule E/F for additional information.

7. **Insiders.** For purposes of the Statements and Schedules, the Debtors defined "insiders" pursuant to section 101(31) of the Bankruptcy Code as: (a) directors; (b) officers; (c) persons in control of the Debtors; (d) relatives of the Debtors' directors, officers or persons in control of the Debtors; and (e) debtor/non-debtor affiliates of the foregoing. Persons listed as "insiders" have been included for informational purposes only and the inclusion of them in the Statements and Schedules, shall not constitute an admission that those persons are insiders for purposes of section 101(31) of the Bankruptcy Code. Moreover, the Debtors do not take any position with respect to: (a) any insider's influence over the control of the Debtors; (b) the management responsibilities or functions of any such insider; (c) the decision making or corporate authority of any such insider; or (d) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose.

8. **Intellectual Property Rights.** Exclusion of any intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction.

9. **Classifications**. Listing (a) a Claim on Schedule D as "secured," (b) a Claim on Schedule E/F as "priority," (c) a Claim on Schedule E/F as "unsecured," or (d) a contract on Schedule G as "executory" or "unexpired," does not constitute an admission by any Debtor of the legal rights of the claimant or a waiver of any Debtor's rights to re-characterize or reclassify such Claims or contracts or to setoff of such Claims.

10. **Claims Description.** Schedules D and E/F permit the Debtors to designate a Claim as "disputed," "contingent," and/or "unliquidated." Any failure to designate a Claim on the Statements and Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by any Debtor that such amount is not "disputed," "contingent," or "unliquidated," or that such Claim is not subject to objection. The Debtors reserve all of their rights to dispute, or assert offsets or defenses to, any Claim reflected on their Statement and Schedules on any grounds, including liability or classification. Additionally, the Debtors expressly reserve all of their rights to subsequently designate such Claims as "disputed," "contingent" or "unliquidated." Moreover, listing a Claim does not constitute an admission of liability by the Debtor.

11. **Causes of Action.** Despite making commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third-parties as assets in the Statements and Schedules, including, without limitation, causes of actions arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.

The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross-claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") it may have, and neither these Global Notes nor the Statements and Schedules shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

12. **Summary of Significant Reporting Policies.** The following is a summary of significant reporting policies

- Undetermined Amounts. The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

- Totals. All totals that are included in the Statements and Schedules represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total maybe different than the listed total.

- Paid Claims. The Debtors were authorized (but not directed) to pay certain outstanding prepetition Claims pursuant to one or more orders entered by the Bankruptcy Court. The Debtors reserve all of their rights to amend or supplement the Statements and Schedules or take other action as is necessary or appropriate to avoid over-payment of or duplicate payments for any such liabilities. Please see notes to Schedule E/F for additional information.

- Liens. Property and equipment listed in the Statements and Schedules are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

13. **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars.

14. **Intercompany Payables and Receivables.** Intercompany receivables/payables are set forth on Schedules B and E/F, respectively. The listing by each Debtor of any account between a Debtor and another affiliate is a statement of what appears in the Debtors' books and records and does not reflect any admission or conclusion of any Debtor regarding the allowance, classification, characterization, validity, or priority of such account. The Debtors periodically record intercompany amounts for combined entities, which could result in discrepancies for allocation between legal entities. The Debtors take no position in these Statements and Schedules as to whether such accounts would be allowed as a Claim, an Interest, or not allowed at all. The Debtors and all parties in interest reserve all rights with respect to such accounts.

15. **Setoffs.** The Debtors periodically incur certain setoffs in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, returns, refunds, negotiations and/or disputes between a Debtor and its customers and/or suppliers. These normal setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Statements and Schedules.

16. **Employee Addresses.** Current employee and director addresses have been reported as the Debtors' business address throughout the Statements and Schedules, where applicable.

17. **Debtors' Addresses.** For the purposes of the Statements and Schedules, all addresses for all Debtors have been reported as the Debtor Bridgeport Health Care Center Inc.'s principal place of business in Bridgeport, Connecticut.

18. **Global Notes Control.** In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

## Specific Notes with Respect to the Debtors' Schedules of Assets and Liabilities

The Schedules neither purport to represent financial statements prepared in accordance with GAAP, nor are they intended to be fully reconciled with the financial statements of the Debtors. Additionally, the Schedules contain unaudited information that is subject to further review and potential adjustment, and reflect the Debtors' reasonable best efforts to report the assets and liabilities of each Debtor. Moreover, given, among other things, questions about the characterization of certain assets and the valuation and nature of certain liabilities, to the extent that any Debtor shows more assets than liabilities, this is not an admission that such Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent any Debtor shows more liabilities than assets, this is not an admission that such Debtor was insolvent as of the Petition Date or at any time before the Petition Date.

1. **Schedule D**

Except as specifically stated herein, real property lessors, utility companies and other parties that may hold security deposits have not been listed on Schedule D. The Debtors have not included parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights, including certain parties from whom the Debtors have received lien notices but whose notices the Debtors understands have not yet been filed or recorded. While reasonable efforts have been made, determination of the date upon which each claim in Schedule D was incurred or arose would be unduly burdensome or cost prohibitive, and therefore the Debtors may not list a date for each claim listed on Schedule D.

6

Finally, the Debtors are taking no position on the extent or priority of any particular creditor's lien in this document.

2.      **Schedule E/F**

Certain of the claims of state and local taxing authorities set forth in Schedule E/F, ultimately may be deemed to be secured claims pursuant to state or local laws. In addition, certain of the claims owing to various taxing authorities to which any Debtor may be liable may be subject to ongoing audits. The Debtors reserve the right to dispute or challenge whether claims owing to various taxing authorities are entitled to priority and the listing of any claim on Schedule E/F does not constitute an admission that such claim is entitled to priority treatment pursuant to section 507 of the Bankruptcy Code.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Although reasonable efforts have been made to identify the date of incurrence of each claim, determination of each date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtor does not list a date for each claim listed on Schedule E/F.

The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to any Debtor. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

Pursuant to the Order Granting Debtors' Motion Seeking Authorization to Pay Prepetition Compensation and Related Obligations to Employees and to Maintain Employee Benefit Programs Post-Petition [Docket No. 56] (the "Wages Order"), the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for wages, salaries, and other compensation, and employee medical and similar benefits. The Debtors have not listed on Schedule E/F any wage or wage-related obligations that the Debtors were granted authority to pay pursuant to any order that has been entered by the Bankruptcy Court, including the Wages Order. The Debtors believe that all such claims have been, or will be, satisfied in the ordinary course during their chapter 11 cases pursuant to the authority granted in the Wages Order.

Schedule E/F does not include certain deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific Claims as of the Petition Date. The Debtors have made every effort to include as contingent, unliquidated, or disputed the Claim of any vendor not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

7

The Debtors routinely pay vendor invoices by credit card and keep track of payments made by utilizing the online credit card account statements. However, Debtors' corporate credit card issued by American Express ("AMEX") was canceled when the Debtors filed for Chapter 11 and all related account statements were removed from the AMEX website. As the result, the Debtors have been unable to access their AMEX statements to confirm the amounts paid to vendors using this AMEX corporate card. The Debtors have attempted to identify all affected vendors on Schedule E/F by assigning an Unliquidated denotation alongside outstanding pre-petition accounts payable amounts and have requested that AMEX restore Debtors' access to the account statements as quickly as possible. Accordingly, Schedule E/F does not reflect all pre-petition payments made by the Debtors using the AMEX corporate card. The Debtors reserve the right to supplement and/or amend Schedule E/F once the account statements become available.

3.      **Schedule G**

Certain of the instruments reflected on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional lands, and other miscellaneous rights. Such rights, powers, duties, and obligations are not separately set forth on Schedule G. The Debtors hereby expressly reserve the right to assert that any instrument listed on Schedule G is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code. In addition, each Debtor reserves all of its rights, claims, and causes of action with respect to claims associated with any contracts and agreements listed on Schedule A/B, including their right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement).

Certain confidentiality and non-compete agreements may not be listed on Schedule G. The Debtors reserves all of their rights with respect to such agreements.

Certain of the contracts and agreements listed on Schedule G may consist of several parts, including purchase orders, amendments, restatements, waivers, letters and other documents that may not be listed on Schedule G or that may be listed as a single entry.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, it is the Debtor's intent that each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed

8

thereon. In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

**Specific Notes with Respect to Each Debtor's Statement of Financial Affairs**

1. **SOFA Question 3 – Certain payments or transfers to creditors within 90 days before filing this case**

   The Debtors routinely pay vendor invoices by credit card and keep track of payments made by utilizing the online credit card account statements. However, Debtors' corporate credit card issued by American Express ("AMEX") was canceled when the Debtors filed for Chapter 11 and all related account statements were removed from the AMEX website. As the result, the Debtors have been unable to access their AMEX statements to confirm the amounts paid during the 90-day period using this AMEX corporate card. The Debtors have requested that AMEX restore Debtors' access to the account statements as quickly as possible. Accordingly, Debtors' responses to SOFA Question 3 do not include pre-petition payments made by the Debtors during the 90-day period using the AMEX corporate card. The Debtors reserve the right to supplement and/or amend their responses to SOFA Question 3 once the account statements become available.

   In addition, the Debtors' responses to SOFA Question 3 do not include certain Internal Revenue Service, Connecticut Department of Social Services, and Connecticut Department of Revenue Services levies that occurred during the 90-day period or certain Merchant Cash Advance payments that were made by the Debtors during the 90-day period as the precise dates and amounts of such levies and payments are still being ascertained. The Debtors reserve the right to supplement and/or amend their responses to SOFA Question 3 once such information become available.

2. **SOFA Question 4 – Payments or transfers to insiders within 1 year before filing this case**

   Mr. Stern receives an annual salary of $257,744 from the Debtors. In addition, the Debtors made numerous loan repayments to Mr. Stern within 1 year before the Petition Date. Given the total number of transfers involved and the limited time allotted for the completion of these Schedules and Statements of Financial Affairs, the Debtors' responses to SOFA Question 4 may not be complete. The Debtors are working to identify all payments and transfers that are responsive to SOFA Question 4 and reserve the right to supplement and/or amend their responses to SOFA Question 4.

3. **SOFA Question 21 – Property held for another**

   The Debtors maintain three (3) bank accounts to hold funds deposited by their patients, to be withdrawn by the patients as needed for incidentals.

   END OF GLOBAL NOTES

9

# Exhibit C-3

3.    **Confidential Information**.  There may be instances in the Schedules and Statements where the Debtors deemed it necessary and appropriate to redact from the public record information such as names, addresses or amounts.  Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality, or concerns for the privacy of an individual.

4.    **Description of Case and "as of" Information Date**.  On November 13, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are conducting an orderly liquidation of their assets while continuing to manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

As applicable, and except as otherwise noted herein, the information (including the Debtors' assets and liabilities) set forth in the Statements and Schedules reflects such information as of the close of business, November 13, 2014.

5.    **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

6.    **Summary of Significant Reporting Policies**.  The following is a summary of significant reporting policies:

    a.    Undetermined Amounts.  The description of an amount as "unknown," "TBD" or "undetermined" is not intended to reflect upon the materiality of such amount.

    b.    Totals.  All totals that are included in the Schedules and Statements represent totals of all known amounts.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

    c.    Paid Claims.  The Debtors were authorized (but not directed) to pay certain outstanding prepetition Claims pursuant to various orders entered by the Bankruptcy Court.  Accordingly, certain outstanding liabilities may have been reduced by postpetition payments made on account of prepetition liabilities.  To the extent the Debtors pay any of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all of their rights to amend or supplement the Schedules and Statements or take other action as is necessary or appropriate to avoid over-payment of, or duplicate payments for, any such liabilities.

    d.    Excluded Assets and Liabilities.  The Debtors have excluded certain accrued liabilities, including accrued employee benefits and tax accruals from the Schedules and Statements that are not yet due and payable.  Certain other immaterial assets and liabilities may also have been excluded.

e.  <u>Liens</u>.  Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

f.  <u>Intercompany Claims</u>.  Receivables and payables among the Debtors in these Chapter 11 Cases and their non-debtor affiliates are reported on Schedule B16 and Schedule F, respectively, at book value.  In the ordinary course of business there are receivables and payables created between and among the various Debtors and their non-debtor affiliates.  Unless otherwise noted in the Schedules and Statements, the Debtors record the resulting net balances of these transactions in their books and records as equalized entries that have been entered into in the ordinary course of business.  The listing of any amounts with respect to such receivables and payables is not and shall not be construed as an admission of the characterization of such balances, as debt, equity or otherwise.  Furthermore, the listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or claim status of any intercompany liability account.  The Debtors reserve all rights to later change the characterization, classification, categorization or designation of intercompany accounts reported in the Schedules and Statements.

7.  **Estimates**.  To prepare and file the Schedules and Statements in accordance with the deadline established in the Chapter 11 Cases, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

8.  **Net Book Value of Assets**.  It would be prohibitively expensive, unduly burdensome and an inefficient use of estate assets for the Debtors to obtain current market valuations for their assets.  Thus, unless otherwise indicated, the Schedules and Statements reflect approximate net book values as of November 13, 2014. As the book values of certain assets, including, without limitation, interests in insurance policies and recovery from pending legal matters, may materially differ from their fair market values, the Debtors listed certain assets with undetermined values.  In addition, certain assets may not appear in the Schedules and Statements, because the Debtors have depreciated the entire book value of such assets or otherwise expensed such assets in their entirety.  Finally, certain of the Debtors have significant assets related to their ultimate equity interests in certain non-debtor foreign affiliates, the market value of which may differ significantly from the reported book value and therefore the Schedules and Statements only reflect the undetermined value of the Debtors' ownership of their direct subsidiaries.

9.  **Reporting of Liabilities**.  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements.  As additional information

becomes available, the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtors reserve all of their rights to amend, supplement or otherwise modify the Schedules and Statements as is necessary or appropriate to reflect any change in the allocation of liabilities between the prepetition and postpetition periods.

The liabilities listed on the Schedules do not reflect a complete analysis of any Claims that may arise under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any Claims asserted under section 503(b)(9) of the Bankruptcy Code.

10. **Classification of Claims**. Listing a Claim on (a) Schedule D as "secured," (b) Schedule E as "priority," (c) Schedule F as "unsecured" or (d) listing a contract on Schedule G as "executory" or "unexpired" is not (i) an admission by the Debtors with respect to any legal rights associated with such Claim or executory contract; or (ii) a waiver of the Debtors' rights to recharacterize or reclassify such Claim or executory contract or exercise any right of setoff or other defense that may exist with respect to such Claim or executory contract.

11. **Description of Claims**. Schedules D, E, and F permit the Debtors to designate a Claim as "disputed," "contingent" and/or "unliquidated." Any failure to designate a Claim on a given Schedule as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent" or "unliquidated," or that such Claim is not subject to objection. The Debtors reserve all of their rights to dispute and assert rights of setoff or any other defense to any Claim listed in the Schedules. Additionally, the Debtors expressly reserve all of their rights to subsequently designate any Claim as "disputed," "contingent" or "unliquidated." The Debtors' listing of a Claim in the Schedules does not constitute an admission of liability by the Debtors.

12. **Setoffs**. Setoffs in the ordinary course can result from various items including, without limitation, intercompany transactions. These normal setoffs are consistent with the Debtors' ordinary course of business and can be particularly voluminous with respect to intercompany transactions, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are not itemized in the response to Question 13 in the Statements.

13. **Recharacterization**. Notwithstanding the Debtors' reasonable efforts to properly characterize, classify, categorize or designate certain Claims, assets, executory contracts, unexpired leases and other items reported in the Schedules and Statements, the Debtors may nevertheless seek to recharacterize, reclassify, recategorize, redesignate, add or delete items. Accordingly, as additional information becomes available and as otherwise necessary and appropriate, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add or delete items reported in the Schedules and Statements.

14. **Definition of Insiders**. For purposes of the Schedules and Statements, the Debtors define "insiders" to include the following: (a) directors; (b) officers; (c) shareholders holding in excess of 5% of the voting shares of one of the Debtor entities (whether directly or indirectly);

(d) relatives of directors, officers or shareholders of the Debtors (to the extent known by the Debtors); and (e) Debtor/non-Debtor affiliates.

With respect to any person listed as an insider, the Debtors do not take a position with respect to: (a) such person's influence over the control of the Debtors; (b) the management responsibilities or functions of such individual; (c) the decision-making or corporate authority of such individual; or (d) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose. The listing of a party as an "insider" is not intended to be, nor shall be, construed as a legal characterization or determination of such party as an actual insider and does not act as an admission of any fact, claim, right, or defense, and the Debtors expressly reserve such rights, claims, and defenses.

15.     **Intellectual Property Rights**. The Debtors' inadvertent exclusion of certain intellectual property from the Schedules and Statements is not an admission that the Debtors have abandoned, terminated or assigned such intellectual property or that such intellectual property has not expired by its own terms or was not transferred pursuant to a sale, acquisition or other transaction. Conversely, the Debtors' inclusion of certain intellectual property in the Schedules and Statements is not an admission that the Debtors have not abandoned, terminated or assigned such intellectual property or that such intellectual property has not expired by its own terms or was not transferred pursuant to a sale, acquisition or other transaction.

In addition, although the Debtors have made diligent efforts to list only their owned intellectual property, in certain instances, an affiliate may be the actual owner of certain intellectual property listed in the Schedules and Statements. The Debtors reserve all of their rights with respect to the legal status of their intellectual property rights.

16.     **Executory Contracts**. While the Debtors made all reasonable efforts to identify the correct legal entities that are party to each of the Debtors' executory contracts, in certain instances, the Debtors may have incorrectly identified parties to their executory contracts. The Debtors reserve all of their rights with respect to the named parties associated with their executory contracts, including, without limitation, the right to amend Schedule G.

17.     **Causes of Action**. Despite their reasonable efforts to identify all known assets, the Debtors may not have identified or listed all of the Debtors' causes of action and similar items, or potential causes of action or similar items, against third parties as assets in the Schedules and Statements. This may include, without limitation, causes of actions to recover assets or avoid transfers arising under chapter 5 of the Bankruptcy Code or other applicable non-bankruptcy law. The Debtors reserve the right to amend their Schedules and Statements to add, delete or otherwise modify any information relating to their causes of action and similar items.

The Debtors further reserve all of their rights with respect to all of their causes of actions and similar items (collectively, the "Causes of Action"), including, without limitation, all rights relating to any: (a) controversy; (b) right of setoff or recoupment; (c) cross-Claim; (d) counter-Claim; (e) Claim arising from a contract; (f) Claim for the breach of any duty imposed by law or in equity; and (g) demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or

character whatsoever.  The Debtors reservation of rights with respect to the Causes of Action remains applicable, regardless of whether such Causes of Action are known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other applicable theory of law.  Neither the Global Notes nor the Schedules and Statements constitute a waiver of any Claim or Cause of Action or, in any way, prejudice or impair the assertion of any Claim or Cause of Action.

## Specific Disclosures with Respect to the Debtors' Schedules

**Schedule B2**.  Amounts listed in Schedule B2 reflect actual amounts in the respective accounts as of November 13, 2014 and may vary from the amounts contained in the Debtors' books and records.

**Schedule B9**.  The Debtors have attempted to list all insurance policies in which they are the direct signatory or a beneficiary on an affiliate policy.  It could be that certain insurance policies executed by non-filing affiliates may be omitted from the list.

**Schedule B16**.  The Debtors have disclosed the net book value with respect to accounts receivable listed on Schedule B16, which represents the amount of the accounts receivable netted against any "doubtful accounts."  For purposes of Schedule B16, "doubtful accounts" are those accounts for which the Debtors believe they are unlikely to receive payment based upon the time such accounts have been outstanding.

**Schedule B21**.  In the ordinary course of their business, the Debtors may have accrued, or may subsequently accrue, certain rights with respect to counter-claims, setoffs, supplier refunds and potential warranty claims against their suppliers.  Additionally, the Debtors may be parties to existing or future litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims as a defendant.  Because such claims are unknown or not quantifiable as of the Petition Date, they are not listed on Schedule B21.

**Schedule B30**. The value of the inventory is based upon the book value as of the Petition Date.  However, since that time the debtors have conducted an auction of much of the inventory which resulted in a sale price of approximately $11,013,080.00.  Therefore, the book value should not be relied upon as an accurate reflection of the true value for the inventory.

**Schedule E**.  The listing of any Claim on Schedule E does not constitute an admission by the Debtors that such Claim is entitled to priority treatment under section 507 of the Bankruptcy Code.  The Debtors have omitted from Schedule E any wage and/or benefit-related obligations for which the Debtors have been granted authority to pay by the Bankruptcy Court.  The Debtors believe that all such claims as described in the applicable order of the Bankruptcy Court will be satisfied in the ordinary course of business during these Chapter 11 Cases pursuant to the authority granted by the Bankruptcy Court.  The Debtors reserve all of their rights to dispute the amount and the priority status of any Claim on any basis at any time.  Certain Claims listed on the Debtors' Schedule E are Claims owing to various taxing authorities to which the Debtors may potentially be liable.  Certain of such Claims, however, may be subject to ongoing audits and the

Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the remaining Claims listed on Schedule E. Accordingly, the Debtors have listed all such Claims as unknown in amount, pending final resolution of ongoing audits or other outstanding issues.

**Schedule F**. The Debtors have used their reasonable best efforts to report all general unsecured Claims on Schedule F based upon the Debtors' existing books and records as of the Petition Date. The Claims of individual creditors for, among other things, products, goods or the providing of services are listed as either the lower of the amounts invoiced by such creditor or the amounts entered on the Debtors' books and records and may not reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all of their rights with respect to any such credits and allowances including the right to assert objections and/or setoffs with respect to the Claims listed on Schedule F. Schedule F does not include certain deferred charges, deferred liabilities, accruals, or general reserves. Such accruals are general estimates of liabilities and do not represent specific Claims as of the Petition Date. The Debtors have made every effort to include the Claims of any vendors that would not appear on the Debtors' open accounts payable, including vendors with an account that has an accrual or a receipt not invoiced. Each of these Claims is listed as contingent, unliquidated or disputed on Schedule F. In addition, certain Claims listed on Schedule F may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

The Claims listed in Schedule F arose or were incurred on various dates. In certain instances, the date on which a Claim arose is an open issue of fact. Although reasonable efforts have been made to identify the date each Claim was incurred or arose, determining the date that each Claim listed in Schedule F was incurred or arose would be unduly burdensome and cost prohibitive. As such, Schedule F may not include the date that each Claim arose or was incurred for every Claim listed thereon.

Schedule F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. Additionally, Schedule F does not include potential rejection damage Claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

**Schedule G**. Although the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts, and diligent efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions or over-inclusions may have occurred. Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained through the use of reasonable efforts. The listing of a contract, agreement or lease on Schedule G does not constitute an admission that such contract, agreement or lease is an executory contract or unexpired lease or that such contract, agreement or lease was effective as of the Petition Date, or is valid or enforceable. The Debtors reserve all of their rights with respect to the contracts, agreements or leases listed in Schedule G, including, without limitation, the Debtors' rights to dispute the validity, status, or enforceability of any contracts, agreements or leases and to amend or supplement Schedule G as necessary.

Certain of the contracts, agreements and leases listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G.

Certain of the contracts, agreements and leases listed on Schedule G may consist of several parts, including, without limitation, purchase orders, amendments, restatements, waivers, letters and other documents, each of which may not be listed on Schedule G or that may be listed as a single entry. The Debtors expressly reserve their rights to challenge whether such related materials constitute an executory contract or unexpired lease, a single contract, agreement or lease, or multiple, severable or separate contracts, agreements or leases.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda and other documents, instruments and agreements. These additional documents may not be listed on Schedule G despite the Debtors' use of reasonable efforts to identify such documents.

The Debtors may have entered into various other types of agreements in the ordinary course of their business, such as subordination, nondisturbance, and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, indemnity agreements and confidentiality agreements. Such documents may not be set forth on Schedule G.

Any executory agreements that have not been reduced to writing, if any, are not included on Schedule G.

The omission of any contract, agreement or lease from Schedule G does not constitute an admission by the Debtors that such omitted contract, agreement or lease is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts, agreements or leases are not impaired by the omission.

In addition, nothing herein is an admission or waiver of the Debtors' rights to argue that certain contracts or leases constitute a single executory contract or unexpired lease or that a single document may constitute one or more executory contracts or unexpired leases.

The Debtors reserve the right to dispute the effectiveness of any such contract or lease listed on Schedule G or to amend Schedule G at any time to remove any contract, agreement or lease.

**Schedule H**. The Debtors may not have identified certain guarantees associated with the Debtors' executory contracts, unexpired leases, debt instruments and other such agreements. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-Claims and counter-Claims against other parties. Because all such Claims are contingent, disputed, or unliquidated, such Claims have not been set forth individually on

Schedule H.  Litigation matters can be found on the Debtors' Schedule F and Statement 4a, as applicable.

## Specific Disclosures with Respect to the Debtors' Statements

**Statement 3b**.  The information provided lists payments made by a Debtor on behalf of itself or on behalf of another Debtor in accordance with routine business practices.  There may be other payments made on behalf of a debtor which, pursuant to the cash management structure of the global operations, including non-filing affiliates, were made out of non-debtor bank accounts.  These transactions are not disclosed on Statement 3b.  For additional information refer to the description contained in the Debtors' cash management motion (Docket #5). The response to question 3b includes any disbursement or other transfer made by the Debtor except for those made to (a) insiders or other Debtors (which payments appear in response to Statement question 3c);  (b) non-insider employees;  and (c) bankruptcy professionals (which payments appear in response to Statement question 9).

**Statement 3c**.  Statement 3c accounts for the Debtors' transactions between themselves, with non-debtor affiliates and other transfers to insiders, as applicable.  As described in the Cash Management Motion, in the ordinary course of business certain of the Debtors and certain of the Debtors' non-debtor affiliates maintain business relationships with each other, resulting in intercompany receivables and payables (the "Intercompany Claims").  Any intercompany transactions between the Debtors or between Debtors and their non-debtor affiliates are captured by the difference between the opening balance and ending balance of Intercompany Claims in the year before the commencement of the chapter 11 cases.  These differences reflect all intercompany activity during the period, including, but not limited to, new Intercompany Claims incurred, payments made to settle outstanding Intercompany Claims due and the contribution or other non-cash settlement of Intercompany Claims.

**Statement 4a**.  Information provided in Statement 4a includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial or other adjudicative forum.  In the Debtors' attempt to provide full disclosure, to the extent a legal dispute or administrative proceeding is not formally recognized by an administrative, judicial or other adjudicative forum due to certain procedural conditions that remain unsatisfied, the Debtors still may have identified such matter on Schedule F.  Additionally, any information contained in Statement 4a is not a binding representation of the Debtors' liabilities with respect to any of the suits and proceedings identified therein.

**Statement 17**.  The company is unaware of any disclosures regarding environmental issues.  However, it may be that the Debtors were notified in the past of potential exposure.  If the company discovers any material information regarding environmental disclosures, it will amend its statements, as appropriate.

**Statement 19d**.  The Debtors have provided consolidated financial statements in the ordinary course of their business to numerous financial institutions, creditors, and other parties within two years immediately before the Petition Date.  Considering the number of such recipients and the possibility that such information may have been shared with parties without the Debtors'

knowledge or consent, the Debtors have not disclosed any parties that may have received such financial statements for the purposes of Statement 19d.

**Statement 23**.  The Debtors included a comprehensive response to Statement 23 in Statement 3c.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**

**BRIDGEPORT DIVISION**

```
-------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11
                                          :
O.W. Bunker Holding North America Inc., et al.,¹  :   Case No. 14-51720 (AHWS)
                                          :
                    Debtors.              :   (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

## GLOBAL NOTES, METHODOLOGY, AND SPECIFIC DISCLOSURES REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

### <u>Introduction</u>

O.W. Bunker Holding North America Inc. and its affiliated debtors in possession (collectively, the "<u>Debtors</u>", or the "<u>Company</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"), with the assistance of their advisors, each has filed their respective Schedules of Assets and Liabilities (the "<u>Schedules</u>") and Statements of Financial Affairs (the "<u>Statements</u>," and together with the Schedules the "<u>Schedules and Statements</u>") with the United States Bankruptcy Court for the District of Connecticut Bridgeport Division (the "<u>Bankruptcy Court</u>"), pursuant to section 521 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

These Global Notes, Methodology, and Specific Disclosures Regarding the Debtors' Schedules and Statements (the "<u>Global Notes</u>") pertain to, are incorporated by reference in, and constitute an integral part of, the Schedules and Statements. Any individual reviewing the Schedules and Statements should refer to, consider and consult the Global Notes in connection with such review.

The Schedules and Statements reflect the Debtors' reasonable best efforts to report the assets and liabilities of each Debtor on an unconsolidated basis. The Debtors prepared the Schedules and Statements on an independent basis and without taking into account generally accepted accounting principles in the United States ("<u>GAAP</u>"). The Schedules and Statements may not reconcile with the financial statements that the Debtors prepare in the ordinary course of

---

[1] On November 13, 2014 the following three Debtors filed chapter 11 bankruptcy petitions (the last four digits of their respective U.S. taxpayer identification numbers follow in parentheses): O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158), and O.W. Bunker USA Inc. (3556). The location of the Debtors' corporate headquarters and the Debtors' service address is: 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

their business.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

In preparing the Schedules and Statement, the Debtors relied upon information derived from their books and records that was available at the time of such preparation.  Although the Debtors have made reasonable efforts to ensure the accuracy and completeness of the financial information contained in the Schedules and Statements, inadvertent errors or omissions, as well as the discovery of conflicting, revised, or subsequent information, may cause material changes to the Schedules and Statements.  Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements as the Debtors deem necessary and appropriate.  Notwithstanding the foregoing, the Debtors make no affirmative representation that they will revise, amend or otherwise update the Schedules and Statements.

Mr. Adrian Tolson has signed the Schedules and Statements.  Mr. Tolson serves as the Vice President for all three Debtors.  In reviewing and signing the Schedules and Statements, Mr. Tolson necessarily has relied upon the efforts, statements and representations of various personnel employed by the Debtors and their advisors.  Mr. Tolson has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements.

## Global Notes and Overview of Methodology

**1.      Global Notes Control**.   In the event that the Schedules and Statements differ from the Global Notes, the Global Notes will control.

**2.      Reservation of Rights**.  The Debtors and their advisors have made reasonable efforts to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions in the Schedules and Statements may exist.  The Debtors reserve all rights to amend, supplement or otherwise modify the Schedules and Statements as may be necessary or appropriate, including, without limitation, reserving the right to amend the Schedules and Statements with respect to any claim or other amounts listed therein (collectively, a "Claim") (including, without limitation, reserving the right to:  (a) alter the description or designation of any Claim; (b) dispute or otherwise assert a right of setoff or other defenses to any Claim, including, without limitation, any defenses relating to amount, liability, priority, status or classification; (c) subsequently designate any Claim as "disputed," "contingent" or "unliquidated;" and/or (d) object to the extent, validity, enforceability, priority, or avoidability of any Claim).  Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent" or "unliquidated" is not an admission by the Debtors that they consider any such Claim as not "disputed," "contingent" or "unliquidated."  The Debtors' inclusion of a Claim in the Schedules and Statements is not an admission of liability by the Debtors.  Furthermore, nothing contained in the Schedules and Statements will constitute a waiver of any right the Debtors may possess, including, without limitation, any right involving Claims, defenses, equitable subordination and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Global Notes will in no way limit the scope or breadth of the general reservation of rights contained in this paragraph.

**3.** **Confidential Information**. There may be instances in the Schedules and Statements where the Debtors deemed it necessary and appropriate to redact from the public record information such as names, addresses or amounts. Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality, or concerns for the privacy of an individual.

**4.** **Description of Case and "as of" Information Date**. On November 13, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are conducting an orderly liquidation of their assets while continuing to manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

As applicable, and except as otherwise noted herein, the information (including the Debtors' assets and liabilities) set forth in the Statements and Schedules reflects such information as of the close of business, November 13, 2014.

**5.** **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

**6.** **Summary of Significant Reporting Policies**. The following is a summary of significant reporting policies:

    a.    Undetermined Amounts. The description of an amount as "unknown," "TBD" or "undetermined" is not intended to reflect upon the materiality of such amount.

    b.    Totals. All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

    c.    Paid Claims. The Debtors were authorized (but not directed) to pay certain outstanding prepetition Claims pursuant to various orders entered by the Bankruptcy Court. Accordingly, certain outstanding liabilities may have been reduced by postpetition payments made on account of prepetition liabilities. To the extent the Debtors pay any of the Claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all of their rights to amend or supplement the Schedules and Statements or take other action as is necessary or appropriate to avoid over-payment of, or duplicate payments for, any such liabilities.

    d.    Excluded Assets and Liabilities. The Debtors have excluded certain accrued liabilities, including accrued employee benefits and tax accruals from the Schedules and Statements that are not yet due and payable. Certain other immaterial assets and liabilities may also have been excluded.

     e.        <u>Liens</u>.  Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

     f.        <u>Intercompany Claims</u>.  Receivables and payables among the Debtors in these Chapter 11 Cases and their non-debtor affiliates are reported on Schedule B16 and Schedule F, respectively, at book value.  In the ordinary course of business there are receivables and payables created between and among the various Debtors and their non-debtor affiliates.  Unless otherwise noted in the Schedules and Statements, the Debtors record the resulting net balances of these transactions in their books and records as equalized entries that have been entered into in the ordinary course of business.  The listing of any amounts with respect to such receivables and payables is not and shall not be construed as an admission of the characterization of such balances, as debt, equity or otherwise.  Furthermore, the listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or claim status of any intercompany liability account.  The Debtors reserve all rights to later change the characterization, classification, categorization or designation of intercompany accounts reported in the Schedules and Statements.

**7.**     **Estimates**.  To prepare and file the Schedules and Statements in accordance with the deadline established in the Chapter 11 Cases, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

**8.**     **Net Book Value of Assets**.  It would be prohibitively expensive, unduly burdensome and an inefficient use of estate assets for the Debtors to obtain current market valuations for their assets.  Thus, unless otherwise indicated, the Schedules and Statements reflect approximate net book values as of November 13, 2014. As the book values of certain assets, including, without limitation, interests in insurance policies and recovery from pending legal matters, may materially differ from their fair market values, the Debtors listed certain assets with undetermined values.  In addition, certain assets may not appear in the Schedules and Statements, because the Debtors have depreciated the entire book value of such assets or otherwise expensed such assets in their entirety.  Finally, certain of the Debtors have significant assets related to their ultimate equity interests in certain non-debtor foreign affiliates, the market value of which may differ significantly from the reported book value and therefore the Schedules and Statements only reflect the undetermined value of the Debtors' ownership of their direct subsidiaries.

**9.**     **Reporting of Liabilities**.  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements.  As additional information

becomes available, the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtors reserve all of their rights to amend, supplement or otherwise modify the Schedules and Statements as is necessary or appropriate to reflect any change in the allocation of liabilities between the prepetition and postpetition periods.

The liabilities listed on the Schedules do not reflect a complete analysis of any Claims that may arise under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any Claims asserted under section 503(b)(9) of the Bankruptcy Code.

10.    **Classification of Claims**. Listing a Claim on (a) Schedule D as "secured," (b) Schedule E as "priority," (c) Schedule F as "unsecured" or (d) listing a contract on Schedule G as "executory" or "unexpired" is not (i) an admission by the Debtors with respect to any legal rights associated with such Claim or executory contract; or (ii) a waiver of the Debtors' rights to recharacterize or reclassify such Claim or executory contract or exercise any right of setoff or other defense that may exist with respect to such Claim or executory contract.

11.    **Description of Claims**. Schedules D, E, and F permit the Debtors to designate a Claim as "disputed," "contingent" and/or "unliquidated." Any failure to designate a Claim on a given Schedule as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent" or "unliquidated," or that such Claim is not subject to objection. The Debtors reserve all of their rights to dispute and assert rights of setoff or any other defense to any Claim listed in the Schedules. Additionally, the Debtors expressly reserve all of their rights to subsequently designate any Claim as "disputed," "contingent" or "unliquidated." The Debtors' listing of a Claim in the Schedules does not constitute an admission of liability by the Debtors.

12.    **Setoffs**. Setoffs in the ordinary course can result from various items including, without limitation, intercompany transactions. These normal setoffs are consistent with the Debtors' ordinary course of business and can be particularly voluminous with respect to intercompany transactions, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are not itemized in the response to Question 13 in the Statements.

13.    **Recharacterization**. Notwithstanding the Debtors' reasonable efforts to properly characterize, classify, categorize or designate certain Claims, assets, executory contracts, unexpired leases and other items reported in the Schedules and Statements, the Debtors may nevertheless seek to recharacterize, reclassify, recategorize, redesignate, add or delete items. Accordingly, as additional information becomes available and as otherwise necessary and appropriate, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add or delete items reported in the Schedules and Statements.

14.    **Definition of Insiders**. For purposes of the Schedules and Statements, the Debtors define "insiders" to include the following: (a) directors; (b) officers; (c) shareholders holding in excess of 5% of the voting shares of one of the Debtor entities (whether directly or indirectly);

(d) relatives of directors, officers or shareholders of the Debtors (to the extent known by the Debtors); and (e) Debtor/non-Debtor affiliates.

With respect to any person listed as an insider, the Debtors do not take a position with respect to: (a) such person's influence over the control of the Debtors; (b) the management responsibilities or functions of such individual; (c) the decision-making or corporate authority of such individual; or (d) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose. The listing of a party as an "insider" is not intended to be, nor shall be, construed as a legal characterization or determination of such party as an actual insider and does not act as an admission of any fact, claim, right, or defense, and the Debtors expressly reserve such rights, claims, and defenses.

**15.     Intellectual Property Rights**.  The Debtors' inadvertent exclusion of certain intellectual property from the Schedules and Statements is not an admission that the Debtors have abandoned, terminated or assigned such intellectual property or that such intellectual property has not expired by its own terms or was not transferred pursuant to a sale, acquisition or other transaction.  Conversely, the Debtors' inclusion of certain intellectual property in the Schedules and Statements is not an admission that the Debtors have not abandoned, terminated or assigned such intellectual property or that such intellectual property has not expired by its own terms or was not transferred pursuant to a sale, acquisition or other transaction.

In addition, although the Debtors have made diligent efforts to list only their owned intellectual property, in certain instances, an affiliate may be the actual owner of certain intellectual property listed in the Schedules and Statements.  The Debtors reserve all of their rights with respect to the legal status of their intellectual property rights.

**16.     Executory Contracts**.  While the Debtors made all reasonable efforts to identify the correct legal entities that are party to each of the Debtors' executory contracts, in certain instances, the Debtors may have incorrectly identified parties to their executory contracts.  The Debtors reserve all of their rights with respect to the named parties associated with their executory contracts, including, without limitation, the right to amend Schedule G.

**17.     Causes of Action**.  Despite their reasonable efforts to identify all known assets, the Debtors may not have identified or listed all of the Debtors' causes of action and similar items, or potential causes of action or similar items, against third parties as assets in the Schedules and Statements.  This may include, without limitation, causes of actions to recover assets or avoid transfers arising under chapter 5 of the Bankruptcy Code or other applicable non-bankruptcy law. The Debtors reserve the right to amend their Schedules and Statements to add, delete or otherwise modify any information relating to their causes of action and similar items.

The Debtors further reserve all of their rights with respect to all of their causes of actions and similar items (collectively, the "Causes of Action"), including, without limitation, all rights relating to any:  (a) controversy; (b) right of setoff or recoupment; (c) cross-Claim; (d) counter-Claim; (e) Claim arising from a contract; (f) Claim for the breach of any duty imposed by law or in equity; and (g) demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or

character whatsoever.  The Debtors reservation of rights with respect to the Causes of Action remains applicable, regardless of whether such Causes of Action are known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other applicable theory of law.  Neither the Global Notes nor the Schedules and Statements constitute a waiver of any Claim or Cause of Action or, in any way, prejudice or impair the assertion of any Claim or Cause of Action.

## Specific Disclosures with Respect to the Debtors' Schedules

**Schedule B2**.  Amounts listed in Schedule B2 reflect actual amounts in the respective accounts as of November 13, 2014 and may vary from the amounts contained in the Debtors' books and records.

**Schedule B9**.  The Debtors have attempted to list all insurance policies in which they are the direct signatory or a beneficiary on an affiliate policy.  It could be that certain insurance policies executed by non-filing affiliates may be omitted from the list.

**Schedule B16**.  The Debtors have disclosed the net book value with respect to accounts receivable listed on Schedule B16, which represents the amount of the accounts receivable netted against any "doubtful accounts."  For purposes of Schedule B16, "doubtful accounts" are those accounts for which the Debtors believe they are unlikely to receive payment based upon the time such accounts have been outstanding.

**Schedule B21**.  In the ordinary course of their business, the Debtors may have accrued, or may subsequently accrue, certain rights with respect to counter-claims, setoffs, supplier refunds and potential warranty claims against their suppliers.  Additionally, the Debtors may be parties to existing or future litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims as a defendant.  Because such claims are unknown or not quantifiable as of the Petition Date, they are not listed on Schedule B21.

**Schedule B30**. The value of the inventory is based upon the book value as of the Petition Date. However, since that time the debtors have conducted an auction of much of the inventory which resulted in a sale price of approximately $11,013,080.00.  Therefore, the book value should not be relied upon as an accurate reflection of the true value for the inventory.

**Schedule E**.  The listing of any Claim on Schedule E does not constitute an admission by the Debtors that such Claim is entitled to priority treatment under section 507 of the Bankruptcy Code.  The Debtors have omitted from Schedule E any wage and/or benefit-related obligations for which the Debtors have been granted authority to pay by the Bankruptcy Court.  The Debtors believe that all such claims as described in the applicable order of the Bankruptcy Court will be satisfied in the ordinary course of business during these Chapter 11 Cases pursuant to the authority granted by the Bankruptcy Court.  The Debtors reserve all of their rights to dispute the amount and the priority status of any Claim on any basis at any time.  Certain Claims listed on the Debtors' Schedule E are Claims owing to various taxing authorities to which the Debtors may potentially be liable.  Certain of such Claims, however, may be subject to ongoing audits and the

Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the remaining Claims listed on Schedule E. Accordingly, the Debtors have listed all such Claims as unknown in amount, pending final resolution of ongoing audits or other outstanding issues.

**Schedule F**. The Debtors have used their reasonable best efforts to report all general unsecured Claims on Schedule F based upon the Debtors' existing books and records as of the Petition Date. The Claims of individual creditors for, among other things, products, goods or the providing of services are listed as either the lower of the amounts invoiced by such creditor or the amounts entered on the Debtors' books and records and may not reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all of their rights with respect to any such credits and allowances including the right to assert objections and/or setoffs with respect to the Claims listed on Schedule F. Schedule F does not include certain deferred charges, deferred liabilities, accruals, or general reserves. Such accruals are general estimates of liabilities and do not represent specific Claims as of the Petition Date. The Debtors have made every effort to include the Claims of any vendors that would not appear on the Debtors' open accounts payable, including vendors with an account that has an accrual or a receipt not invoiced. Each of these Claims is listed as contingent, unliquidated or disputed on Schedule F. In addition, certain Claims listed on Schedule F may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

The Claims listed in Schedule F arose or were incurred on various dates. In certain instances, the date on which a Claim arose is an open issue of fact. Although reasonable efforts have been made to identify the date each Claim was incurred or arose, determining the date that each Claim listed in Schedule F was incurred or arose would be unduly burdensome and cost prohibitive. As such, Schedule F may not include the date that each Claim arose or was incurred for every Claim listed thereon.

Schedule F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. Additionally, Schedule F does not include potential rejection damage Claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

**Schedule G**. Although the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts, and diligent efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions or over-inclusions may have occurred. Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained through the use of reasonable efforts. The listing of a contract, agreement or lease on Schedule G does not constitute an admission that such contract, agreement or lease is an executory contract or unexpired lease or that such contract, agreement or lease was effective as of the Petition Date, or is valid or enforceable. The Debtors reserve all of their rights with respect to the contracts, agreements or leases listed in Schedule G, including, without limitation, the Debtors' rights to dispute the validity, status, or enforceability of any contracts, agreements or leases and to amend or supplement Schedule G as necessary.

Certain of the contracts, agreements and leases listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G.

Certain of the contracts, agreements and leases listed on Schedule G may consist of several parts, including, without limitation, purchase orders, amendments, restatements, waivers, letters and other documents, each of which may not be listed on Schedule G or that may be listed as a single entry. The Debtors expressly reserve their rights to challenge whether such related materials constitute an executory contract or unexpired lease, a single contract, agreement or lease, or multiple, severable or separate contracts, agreements or leases.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda and other documents, instruments and agreements. These additional documents may not be listed on Schedule G despite the Debtors' use of reasonable efforts to identify such documents.

The Debtors may have entered into various other types of agreements in the ordinary course of their business, such as subordination, nondisturbance, and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, indemnity agreements and confidentiality agreements. Such documents may not be set forth on Schedule G.

Any executory agreements that have not been reduced to writing, if any, are not included on Schedule G.

The omission of any contract, agreement or lease from Schedule G does not constitute an admission by the Debtors that such omitted contract, agreement or lease is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts, agreements or leases are not impaired by the omission.

In addition, nothing herein is an admission or waiver of the Debtors' rights to argue that certain contracts or leases constitute a single executory contract or unexpired lease or that a single document may constitute one or more executory contracts or unexpired leases.

The Debtors reserve the right to dispute the effectiveness of any such contract or lease listed on Schedule G or to amend Schedule G at any time to remove any contract, agreement or lease.

**__Schedule H__**.  The Debtors may not have identified certain guarantees associated with the Debtors' executory contracts, unexpired leases, debt instruments and other such agreements. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-Claims and counter-Claims against other parties. Because all such Claims are contingent, disputed, or unliquidated, such Claims have not been set forth individually on

Schedule H.  Litigation matters can be found on the Debtors' Schedule F and Statement 4a, as applicable.

## Specific Disclosures with Respect to the Debtors' Statements

**Statement 3b**.  The information provided lists payments made by a Debtor on behalf of itself or on behalf of another Debtor in accordance with routine business practices.  There may be other payments made on behalf of a debtor which, pursuant to the cash management structure of the global operations, including non-filing affiliates, were made out of non-debtor bank accounts.  These transactions are not disclosed on Statement 3b.  For additional information refer to the description contained in the Debtors' cash management motion (Docket #5). The response to question 3b includes any disbursement or other transfer made by the Debtor except for those made to (a) insiders or other Debtors (which payments appear in response to Statement question 3c);  (b) non-insider employees;  and (c) bankruptcy professionals (which payments appear in response to Statement question 9).

**Statement 3c**.  Statement 3c accounts for the Debtors' transactions between themselves, with non-debtor affiliates and other transfers to insiders, as applicable.  As described in the Cash Management Motion, in the ordinary course of business certain of the Debtors and certain of the Debtors' non-debtor affiliates maintain business relationships with each other, resulting in intercompany receivables and payables (the "Intercompany Claims").  Any intercompany transactions between the Debtors or between Debtors and their non-debtor affiliates are captured by the difference between the opening balance and ending balance of Intercompany Claims in the year before the commencement of the chapter 11 cases.  These differences reflect all intercompany activity during the period, including, but not limited to, new Intercompany Claims incurred, payments made to settle outstanding Intercompany Claims due and the contribution or other non-cash settlement of Intercompany Claims.

**Statement 4a**.  Information provided in Statement 4a includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial or other adjudicative forum.  In the Debtors' attempt to provide full disclosure, to the extent a legal dispute or administrative proceeding is not formally recognized by an administrative, judicial or other adjudicative forum due to certain procedural conditions that remain unsatisfied, the Debtors still may have identified such matter on Schedule F.  Additionally, any information contained in Statement 4a is not a binding representation of the Debtors' liabilities with respect to any of the suits and proceedings identified therein.

**Statement 17**. The company is unaware of any disclosures regarding environmental issues.  However, it may be that the Debtors were notified in the past of potential exposure.  If the company discovers any material information regarding environmental disclosures, it will amend its statements, as appropriate.

**Statement 19d**.  The Debtors have provided consolidated financial statements in the ordinary course of their business to numerous financial institutions, creditors, and other parties within two years immediately before the Petition Date.  Considering the number of such recipients and the possibility that such information may have been shared with parties without the Debtors'

knowledge or consent, the Debtors have not disclosed any parties that may have received such financial statements for the purposes of Statement 19d.

**Statement 23**.  The Debtors included a comprehensive response to Statement 23 in Statement 3c.

# **Exhibit C-4**

## GLOBAL NOTES REGARDING THE DEBTOR'S SCHEDULES
## OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

The above-captioned debtor (the "**Debtor**") is filing its Schedules of Assets and Liabilities (each a "**Schedule**" and collectively, the "**Schedules**") and Statement of Financial Affairs (each, a "**SOFA**" and collectively, the "**Statements**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"). These *Global Notes Regarding the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs*, including the specific notes set forth below with respect to the Schedules and Statement (collectively, the "**Global Notes**") are incorporated by reference in, and comprise an integral part of, each of the Debtors' Schedules, sub-Schedules, Statements and sub-Statements, exhibits and continuation sheets, and should be referred to and reviewed in connection with any review of the Schedules and Statements. Disclosure of information in one Schedule, sub-Schedule, Statement, sub-Statement, exhibit or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit or continuation sheet.

**The Schedules, Statements and Global Notes should not be relied upon by any person for information relating to current or future financial conditions, events, or performance of the Debtor.**

The Debtors' management prepared the Schedules and Statements with the assistance of its advisors. The Schedules and Statements are unaudited. In addition, several of the computer servers (the "**Servers**") containing the vast majority of the Debtor's financial and other records that were located and maintained at the London offices of the Debtor's affiliates in the United Kingdom (the "**UK**") that are currently in administration proceedings in the UK, were seized by

DOC ID - 28205707.1

the Information Commissioner's Office of the UK (the "**ICO**") on or about March 23, 2018.
Despite its efforts, the Debtor has been unable to obtain the Servers from the ICO.  Without access
to the records and information contained on the Servers, the Debtor's ability to provide complete
and accurate Statements and Schedules has been significantly inhibited.   The Debtor's
management and advisors have made every reasonable effort to ensure that the Schedules and
Statement are as accurate and complete as possible under the circumstances based on the
information that was available to them at the time of preparation; however, subsequent information
or discovery may result in material changes to the Schedules and Statement and inadvertent errors
or omissions may exist or have occurred.  For the foregoing reasons, including the lack of access
to necessary financial and other records and the fact that the Schedules and Statements contain
unaudited information, which is subject to further review, verification and potential adjustment,
there can be no assurance that the Schedules and Statements are accurate and/or complete.  The
Debtor may, but shall not be required to, update the Schedules and Statement as a result of the
discovery of any errors or omission or new information.

The Debtor has made reasonable efforts to, among other things, identify, disclose,
characterize, classify, categorize and/or designate the claims, assets, liabilities, obligations,
transfers, payments, income, executory contracts, unexpired leases and other items reported in the
Schedules and Statements correctly.  However, as discussed herein, given the lack of access to the
Servers and the records and information contained therein pertaining to the Debtor, the Debtor
may not have identified and included all of the information required by the Statements and
Schedules and may have improperly characterized, classified, categorized and/or designated one
or more of the items on the Statements and/or Schedules.  In addition, certain items reported in the
Schedules and Statements could be included in more than one category.  In those instances, one

category has been chosen to avoid duplication. Further, the designation of a category is not meant to be wholly inclusive or descriptive of the rights or obligations represented by such item.

The Debtor reserves all rights to amend the Schedules, Statements and the Global Notes from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offset or defenses to any claim reflected on the Schedules and Statement as to amount, liability or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules and Statements or the Global Notes shall constitute an admission or waiver of rights with respect to the Debtor's chapter 7 case, including, without limitation, with respect to any issues involving any causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.

1. **Description of the Cases**. On May 17, 2018 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 7 of the Bankruptcy Code before this Court (the "**Bankruptcy Court**"). On May 7, 2018, Salvatore LaMonica was appointed as the chapter 7 Trustee (the "**Chapter 7 Trustee**").

2. **Methodology and Limitations**.

    a. **Reporting Date**. All asset and liability information, except where otherwise noted, is provided as of the Petition Dates.

    b. **Basis of Presentation**. The Schedules and Statement do not purport to represent a financial statement prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statement of the Debtor. Additionally, the Schedules and Statement contain unaudited information that is subject to further review and potential adjustment, and reflect the Debtor's reasonable efforts to report the assets and liabilities of the Debtor.

    c. **Confidential Information**. In certain limited instances in the Schedules and Statement, the Debtor has deemed it necessary and appropriate to redact from the public record information such as names, addresses, or amounts. The Debtor have generally used this approach because of an agreement between the Debtor and a third

DOC ID - 28205707.1

party, concerns of confidentiality, or concerns for the privacy of an individual. Copies of the unredacted information will be provided to the Chapter 7 Trustee, the Office of the United States Trustee for the Southern District of New York, and any parties in interest who have a reasonable basis for review of such information.

d. **Estimates and Assumptions**. The preparation of the Schedules and Statements required the Debtor to make estimates and assumptions that affected the reported amounts of certain assets and liabilities, the disclosure of certain contingent assets and liabilities and the reported amounts of revenue and expense. Actual results could differ materially from these estimates.

e. **Net Book Value of Assets**. The Debtor does not have current market valuations for its assets. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtor to obtain current market valuations for its assets. Wherever possible or available based on the information that was in the Debtor's possession, unaudited net book values as of the Petition Date are presented. When necessary, the Debtor has indicated that the value of certain assets is "Unknown". Amounts ultimately realized may vary materially from net book value (or whatever value was or may be ascribed). Accordingly, the Debtor reserves all rights to amend, supplement, or adjust the asset values set forth in the Schedules and Statement.

f. **Unknown Amounts**. The description of an amount as "Unknown" is not intended to reflect upon the materiality of such amount. Certain amounts may be clarified during the course of the chapter 7 case.

g. **Totals**. All totals that are included in the Schedules and Statements represent totals of all known amounts based on information available to the Debtor. To the extent there are unknown or undetermined amounts, the actual totals may be different than the listed totals.

h. **Liabilities**. Unless otherwise indicated, all liabilities are listed as of the Petition Date. Some of the scheduled liabilities are unknown, contingent and/or unliquidated at this time. In such cases, the amounts are listed as "Unknown". Accordingly, the Schedules and Statements may not equal the aggregate value of the Debtor's total liabilities as noted on any previously issued finance statements.

i. **Contingent Assets and Causes of Action**. Despite their reasonable efforts to identify all known assets, the Debtor may not have listed all of its causes of action or potential causes of action against third

parties as assets in its Schedules and Statements, including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets. The Debtor reserves all of their rights with respect to any claims, causes of action, or avoidance actions it may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of actions, or avoidance actions or in any way prejudice or impair the assertion of such claims. The Debtors may also possess contingent and unliquidated claims against affiliated entities (both Debtor and non-Debtor) for various financial accommodations and similar benefits they have extended from time to time, including, but not limited to, contingent and unliquidated claims for contribution, reimbursement, and/or indemnification arising from various (i) guarantees, (ii) indemnities, (iii) tax sharing agreements, (iv) warranties, (v) operational and servicing agreements, (vi) shared service agreements and (vii) other arrangements.

j.   **Currency**. All amounts shown in the Schedules and Statement are in U.S. Dollars, unless otherwise indicated.

k.   **Estimates and Assumptions**. The preparation of the Schedules and Statements required the Debtor to make estimates and assumptions that affected the reported amounts of certain assets and liabilities, the disclosure of certain contingent assets and liabilities and the reported amounts of revenue and expense. Actual results could differ materially from these estimates.

l.   **Totals.** All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual totals may be different than the listed totals.

m.   **Asset Presentation and Valuations**. The Debtor's assets are presented at values consistent with their books and records to which the Debtor has access. Generally speaking, for assets that are valued at fair value or the lower of cost or fair value, the Debtor valued these assets using modeling techniques currently used in the industry and uses market based information to the extent possible in these valuations. These values do not purport to represent the ultimate value that would be received in the event of a sale, and may not represent economic value as determined by an appraisal or other valuation technique. As it would be prohibitively expense and an inefficient use of estate assets for the Debtor to obtain current economic valuations for all of its assets, the carrying value on the Debtor's books, rather than current economic values is reflected on

6

the Schedules and Statements.

n. **Intercompany Transfers**. The listing in the Schedules or Statement by the Debtor of any obligation between a Debtor and another Debtor or non-Debtor affiliate is a statement of what appears in the Debtor's books and records that are available to the Debtor, and does not reflect any admission or conclusion of the Debtor regarding whether such amount should be allowed as a claim or how such obligations may be classified and/or characterized by the Bankruptcy Court or otherwise. Moreover, given the Debtor's lack of access to the Servers containing relevant records and information, the Statements and Schedules may not include a complete or accurate information regarding the intercompany transactions between the Debtor and any affiliate of the Debtor. To the extent the Debtor is able to regain access to the Servers and reconcile the information contained therein related to intercompany transactions, the Debtor may amend the relevant Schedules and Statements accordingly.

o. **Setoff**. Prior to the Petition Dates, and in the ordinary course of their businesses, the Debtor may have incurred setoffs in connection with, among other things, intercompany and third-party transactions. Unless otherwise stated, to the extent any setoffs were incurred in the ordinary course or under customary practices, they are not listed in the Schedules and Statements and the Debtor has not intentionally offset amounts listed on Schedules A/B, D or E/F. Nonetheless, some amounts listed may have been affected by setoffs of which the Debtor is are not yet aware. The Debtor reserves all rights to challenge any setoff and/or recoupment rights that may be asserted.

a. **Insiders**. For purposes of the Schedules and Statements, the Debtor has listed its officers and directors to the extent available based on current records available to the Debtor.[2] Further, for purposes of the Schedules and Statements, the Debtor defines insiders (in accordance with in section 101(31) of the Bankruptcy Code) as the Debtor's (a) current and former directors; (b) current and former senior level officers; (c) persons in control of the Debtor; (d) relatives of each of the foregoing; (e) affiliates of the Debtor, including equity holders holding 20% or more of the Debtor' voting securities and corporations of which the Debtor (or their major equity holders) hold 20% or more of voting securities; and (f) insiders of such affiliates, all to the extent known to the Debtor (each, an "**Insider**"). Persons listed as Insiders have been included

---

[2] On April 27, 2018, Anaxi Solutions Inc., a former subsidiary of the Debtor, merged with the Debtor, leaving the Debtor as the surviving entity. Accordingly, for purposes of the Schedules and Statements, the Debtor has only listed its officers and directors (and made the necessary disclosures relating thereto) and not of any entity that was merged into the Debtor prior to the Petition Date.

for information purposes only. The Debtor does not take any position with respect to (a) such person's influence over the control of the Debtor; (b) the management responsibilities or functions of such individual; (c) the decision-making or corporate authority of such individual; or (d) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose.

3. **Debtor's Reservation of Rights**. Nothing contained in the Schedules, Statements, or the Global Notes shall constitute an admission or waiver of rights with respect to this chapter 7 case, including, without limitation, any issues involving equitable subordination, characterization or recharacterization of contracts or claims, assumption or rejection of executory contracts or unexpired leases under the provisions of chapter 3 of the Bankruptcy Code and causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any applicable non-bankruptcy laws to recover assets or avoid transfers.

   a. Any failure to designate a claim listed on the Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtor reserves the right to dispute, or to assert setoff rights, counterclaims, or defenses to any claim reflected on its Schedules as to the nature, amount, liability, status, classification, or to amend the Schedules and Statement to subsequently designate any claim as "disputed," "contingent," or "unliquidated."

   b. Listing a claim on the Schedules as "secured", "priority", or "unsecured priority", or listing a contract or lease as "executory" or "unexpired", does not constitute an admission by the Debtor of the legal rights of the claimant and/or a contractual counterparty, or a waiver of the Debtor's rights to reclassify or recharacterize such claim or contract. Moreover, although the Debtor may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtor's assets in which such creditors may have a lien has been undertaken. The Debtor reserves all rights to dispute or challenge the secured nature of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

   c. The inclusion on Schedule D of any creditors that have asserted liens against the Debtors is not an acknowledgement of the validity, extent or priority of any such liens, and the Debtors reserve their right to challenge such liens and the underlying claims on any ground

DOC ID - 28205707.1

whatsoever. Reference to the applicable agreements and other relevant documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in these Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements. Certain liens may have been inadvertently marked as disputed but had previously been acknowledged in an order of the Court as not being disputed by the Debtors. It is not the Debtor's intent that Schedules be construed to supersede any orders entered by the Bankruptcy Court.

a.  Although the Debtor has made reasonable efforts to ensure the accuracy of its Schedules and Statements, inadvertent errors, omissions, or inclusions may have occurred. The Debtor reserves all of its rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth on the Schedules and Statements and to amend further or supplement the Schedules and Statement as necessary.

b.  The Debtor further reserves all of its rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim. The placing of a contract or lease onto the Schedules shall not be deemed an admission that such contract is an executory contract or unexpired lease, or that it is necessarily a binding, valid, and enforceable contract. The Debtor expressly reserves the right to assert that any contract listed on the Schedules does not constitute an executory contract within the meaning of section 365 of the Bankruptcy Code.

c.  The Debtor used its reasonable efforts to locate and identify guarantees and other secondary liability claims (the "**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments and other agreements. Where such Guarantees have been identified, they are included in the relevant schedule. The Debtor placed Guaranty obligations on Schedule H for both the primary obligor and the guarantor of the relevant obligation. Guarantees embedded in the Debtor's executory contracts, unexpired leases, secured financings, debt instruments and other agreements may have been inadvertently omitted. Thus, the Debtor reserves its rights to amend or supplement the Schedules to the extent that additional Guarantees are identified. In addition, the Debtor reserves the right to amend the Schedules and Statement to recharacterize or reclassify any such contract or claim.

d.  In the ordinary course of business, the Debtor leased facilities and/or

equipment from certain third-party lessors for its use in its daily operations. Any such leases are set forth in Schedule G. The property subject to any of such leases is not reflected in either Schedule A or Schedule B as either owned property or assets of the Debtor. Neither is the property subject to any such leases reflected in the Statements as property or assets of third-parties within the control of the Debtor. Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtor reserves all rights with respect to any such issues.

89. **Specific Notes Regarding the Debtor's Schedules of Assets and Liabilities**

In addition to the foregoing, the following conventions were adopted by the Debtor in the preparation of the Schedules and Statements:

1. **Schedule A/B**.

    a. **Generally**. To the extent a line item pertaining to the Debtor's assets indicates a value of "$0.00," Debtor notes that such amount is either "unknown" or "undetermined" and such "$0.00" designation does not constitute an admission that assets are, in fact, valued at "$0.00." Because certain assets or liabilities are noted as "$0.00," summary line items in Schedule A/B reflect totals that may be less than the ultimate value of such assets or liabilities. Furthermore, due to the seizure of the Servers by the ICO, the Debtor has been unable to quantify the value of certain assets included on Schedule A/B, including its office furniture, fixtures, and equipment.

    b. **Schedule A/B, Items 1-9**. Unless otherwise noted, the amounts shown are based on closing account balances or amounts on deposit/prepaid as of the Petition Date.

    c. **Schedule A/B, Item 38.** The value of office furniture, fixtures, equipment and collectibles is unknown on a per item basis because the asset register was seized by the ICO. The net book value of all fixed assets has been discounted by seventy (70%) percent to estimate a current total value.

    d. **Schedule A/B, Items 60-64**. The omission of any patent, trademark, copyright, trade secret or other intellectual property from Schedule A/B Items 60-64 does not constitute a waiver of any such patent, trademark, copyright, trade secret or other intellectual property.

DOC ID - 28205707.1

18-13600-shl  Doc 12  Filed 05/31/18  Entered 05/31/18 23:57:16  Main Document

    e.   **Schedule A/B, Item 72**. The omission of any tax refund or net operating loss from Schedule A/B Item 72 does not constitute a waiver of any tax refund or net operating loss.

    f.   **Schedule A/B, Items 74 and 75**. The omission of any counterclaim, claim, or cause of action from Schedule A/B Items 74 and 75 does not constitute a waiver of any such counterclaim, claim, or cause of action. As previously described, to the extent a line item pertaining to the Debtor's assets indicates a value of "$0.00," the Debtor notes that such amount is either "unknown" or "undetermined" and such "$0.00" designation does not constitute an admission that assets are, in fact, valued at "$0.00."

2.   **Schedule D**.

    a.   Based on the information currently available to the Debtor, the Debtor does not believe that there are any creditors with secured claims against the Debtor.  To the extent the Debtor discovers that any such claims exist, the Debtor may amend the Schedule D accordingly to reflect such claims.

    b.

    c.   Except as specifically stated herein, real property lessors, utility companies and other parties that may hold security deposits may not have been listed on Schedule D.

    d.   The Debtor reserves all of its rights to amend Schedule D to the extent that the Debtor determines that any claims associated with such agreement should be reported on Schedule D. Nothing herein shall be construed as an admission by the Debtor of the legal rights of the claimant, deemed a modification or interpretation of the terms of such agreements, or considered a waiver of the Debtor's rights to recharacterize or reclassify such claim or contract.

    e.   Moreover, the Debtor has not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

    f.   Except as otherwise agreed or ordered by the Bankruptcy Court, the Debtor reserves its rights to dispute or challenge the validity, perfection or immunity from avoidance of any lien purported to be granted or perfected in any specific asset of a secured creditor of the Debtor. Moreover, the Debtor reserves all of its rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such

11

transaction or any document or instrument related to such creditor's claim.

3. **Schedule H**

    a.  The Debtors may not have identified certain guarantees associated with the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

    b.  In the ordinary course of their businesses, the Debtors may be involved in pending or threatened litigation. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because all such claims are contingent, disputed and/or unliquidated, such claims have not been set forth individually on Schedule H.

4. **Schedule E/F**

    a.  The Debtor has used reasonable efforts to report all unsecured claims against the Debtor on Schedule E/F based upon the Debtor's existing books and records that were in Debtor's possession or to which the Debtor had access as of the Petition Date. The claims listed on Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Although reasonable efforts have been made to identify the date of incurrence of each claim, determination of the date that each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive. Additionally, due to the seizure of the Servers by the ICO, the Debtor has been unable determine the precise date that certain of the claims set forth on Schedule E/F arose. Therefore, while the Debtor does not list a date for each claim listed on Schedule E/F, to the best of the Debtor's knowledge, all claims listed on Schedule E/F have arisen or were incurred before the Petition Date.

    b.  The Debtor reserves the right to assert any such claims are contingent, unliquidated and/or disputed, as applicable.

    c.  The Debtor reserves the right to assert that any claim listed on Schedule E/F does not constitute a priority claim under section 507 of the Bankruptcy Code and thus constitutes an unsecured

nonpriority claim.

d.   Schedule E/F does not include certain balances including deferred liabilities, accruals, or general reserves. Such accruals primarily represent general estimates of liabilities and do not represent specific claims as of the Petition Date. The Debtor has made reasonable efforts to include as contingent, unliquidated and/or disputed the claim of any party not included on the Debtor's open accounts payable that is associated with an account that has accrual or receipt not invoiced.

e.   The claims of individual creditors may not reflect credits and/or allowances due from creditors to the Debtor.  The Debtor reserves all of its rights with respect to any such credits and/or allowances, including the right to assert objections and/or setoffs with respect to same.

f.   Schedule E/F does not include pending litigations or legal actions involving the Debtor.  However, these are reflected in response to Question 7 in the Statements.  In all instances, the amount that is the subject of the litigation is uncertain or undetermined. The Debtors believe that the amount of any potential claims associated with any such pending litigation is contingent, unliquidated, and disputed. The inclusion of any litigation in the Statements or otherwise does not constitute an admission of liability alleged in such litigation.

g.   To the extent they are known, Schedule E/F represents the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or the assumption and assignment of an executory contract or unexpired lease. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

5.   **Schedule G**.

Although the Debtor's existing records and information systems to which the Debtor has access have been relied upon to identify and schedule executory contracts and unexpired leases and reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. The Debtor reserves all rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement Schedule G as necessary. The contracts, agreements and leases listed therein may have expired or been modified, amended, or supplemented from time to time by various amendments, restatement, waivers, estoppel certificates, letters, memoranda and other documents, instruments, and

13

agreements which may not be listed therein. Moreover, due to the seizure of the Servers by the ICO, the Debtor may not have access to all of its contracts and leases and the Schedules and Statements reflect only the contracts and leases to which the Debtor has access.

    a. The presence of a contract or agreement on Schedule G does not constitute an admission as to the existence, validity or enforceability of the contract or agreement, or that such contract or agreement is an executory contract or unexpired lease, and the omission of a contract or agreement from Schedule G does not constitute an admission that a contract or agreement does not exist. The Debtor reserves all rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the rights to dispute or challenge the characterization or the structure of any transaction document or instrument. Certain executory agreements may not have been memorialized in writing and could be subject to dispute.

90. **Specific Notes Regarding the Debtor's Statement of Financial Affairs**

   1. **Statement Question 1.** The Debtor has used reasonable efforts to state the revenue correctly without having access to full records due to the ICO's seizure of the Servers containing the relevant records and information reflecting such information.

   2. **Statement Questions 3 and 4**. Due to the seizure of the Servers by the ICO, for purposes of Questions 3 and 4 the Debtor has listed those payments and transfers based on the records to which it has access. There may be other payments and transfers made to parties or during the periods reflected in these questions that are not reflected in the responses thereto because the Debtor does not have access to the relevant records and information to identify such payments and transfers.

   3. **Statement Question 7**. The Debtor has made reasonable best efforts to identify all current pending litigation, investigation and other legal actions involving the Debtor. However, certain omissions may have occurred. The inclusion of any legal action in this question does not constitute an admission by the Debtor of any liability, the validity of any litigation or the amount of any potential claim that may result from any claims with respect to any legal action and the amount and treatment of any potential claim resulting from any legal action currently pending or that may arise in the future.

   4. **Statement Question 25**. As noted herein, prior to the Petition Date, on April 27, 2018, the former subsidiaries of the Debtor, Anaxi Solutions Inc., Cambridge Analytica Political LLC and Cambridge Analytical Commercial LLC, were merged with the Debtor, with the Debtor remaining as the surviving entity, and, therefore, these entities no longer exist and the Debtor

14

had no subsidiaries as of the Petition Date. Nevertheless, out of an abundance of caution the Debtor has listed these entities as entities in which it had an interest.

5. **<u>Statement Questions 28 and 29</u>**. The Debtor has made reasonable best efforts to list the known current and former officers and directors of the Debtor on a review of available books and records and other available information which may not be complete and updated as of the Petition Date.  In addition, give the seizure of the Servers and the relevant records contained therein, the Debtor does not have access to the information necessary to provide a complete response to these questions.  As such, there may be inadvertent errors or omissions for the Statement in Questions 28 and 29 due to these limitations.

15

# Exhibit C-5

other foreign jurisdiction, as applicable, nor are they intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules and Statements contain unaudited information that is subject to further review, potential adjustment, and reflect the Debtors' commercially reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. Accordingly, the Debtors and their directors, managers, officers, agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements. In no event shall the Debtors or their directors, managers, officers, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Stephen Bacica, Principal Accounting Officer of Intelsat S.A., and an authorized signatory at each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Bacica necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals. Mr. Bacica has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

For the avoidance of doubt, the Debtors reserve all of their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate, but the Debtors and their agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law or order of the Bankruptcy Court.

## **Global Notes and Overview of Methodology**

1.  **Description of the Cases**. On May 13, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.[3] The chapter 11 cases are being jointly administered under Case No. 20-32299 (KLP). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 15, 2020, an order

---

[3]     Certain Debtors filed their voluntary petitions on May 14, 2020.

was entered directing joint administration of these chapter 11 cases [Docket No. 89]. The Debtors have not been substantively consolidated and accordingly, each Debtor has filed its own Schedules and Statements. The asset information provided herein, except as otherwise noted, represents the asset data of each Debtor as of April 30, 2020, the date of the Debtors' month end closure to their balance sheet, and the liability data of each Debtor as of the close of business on the Petition Date.

2.   **Global Notes Control**.  Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.  In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

3.   **Reservations and Limitations**.  Commercially reasonable efforts were made to prepare and file complete and accurate Schedules and Statements.  However, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate but do not undertake any obligation to do so, except as required by applicable law.  Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any claims against the Debtors, any rights or claims of the Debtors against any third party or any issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.  Nothing contained in the Schedules and Statements or the Global Notes is intended as, or should be construed as, an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

(a)   **Net Book Value of Assets.**  Unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values as of April 30, 2020.  For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value.  Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets and may differ materially from the actual value and/or performance of the underlying assets.  As such, the value listed in these Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

(b)   **Recharacterization and Classifications**.  The Debtors have made commercially reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  However, the Debtors may have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in

the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

(c)    **Classifications**.  Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

(d)    **Claims Description**.  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate.  Listing a claim does not constitute an admission of liability by the Debtors.

(e)    **Estimates and Assumptions**.  The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts, including but not limited to, amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of filing the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results could differ materially from such estimates.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities, contingent assets and contingent liabilities, and revenues and expenses to reflect changes in those estimates or assumptions.

(f)    **Causes of Action**.  Despite their commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a

waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

(g)  **Intellectual Property Rights**.  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.   Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

(h)  **Insiders**.  For purposes of the Schedules and Statements, the Debtors defined "insiders" pursuant to section 101(31) of the Bankruptcy Code as:  (a) directors; (b) officers; (c) persons in control of the Debtors; (d) relatives of the Debtors' directors, officers or persons in control of the Debtors; and (e) debtor/non-debtor affiliates of the foregoing.  The Debtors have limited the listing of insider officers to "executive officers" consistent with Securities and Exchange Commission (the "SEC") filings, in control of the Debtors.

The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Persons listed as "insiders" have been included for informational purposes only.  The Debtors do not take any position with respect to: (i) such person's influence over the control of the Debtors; (ii) the management responsibilities or functions of such individual; (iii) the decision-making or corporate authority of such individual; or (iv) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose.

4.  **Methodology**.

(a)  **Basis of Presentation**.  For financial reporting purposes, the Debtors and certain of their non-Debtor affiliates ordinarily prepare consolidated financial statements. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP.  Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP or any other generally accepted accounting principles of foreign jurisdictions, as applicable, nor are they intended to fully reconcile to the financial statements prepared by the Debtors.  Unlike the consolidated financial statements, the Schedules and Statements reflect the assets and liabilities of

each separate Debtor, except where otherwise indicated. Accordingly, the totals listed in the Schedules will likely differ, at times materially, from the consolidated financial reports prepared by the Debtors for financial reporting purposes or otherwise.

The Schedules and Statements are not intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules and Statements contain unaudited information that is subject to further review and potential adjustment, and reflect the Debtors' commercially reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis. Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

(b)     **Confidential or Sensitive Information**. There may be instances in the Schedules and Statements where the Debtors deemed it necessary and appropriate to redact from the public record, information such as names, addresses, or amounts. Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual (including as authorized by the *Order (A) Extending Time to File Schedules and Statements of Financial Affairs and Rule 2015.3 Reports, (B) Authorizing the Debtors to File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (C) Authorizing the Debtors to File a Consolidated List of the Debtors' Forty Largest Unsecured Creditors, (D) Waiving the Requirement to File a List of Equity Security Holders, (E) Authorizing the Debtors to Redact Certain Personal Identification Information, and (F) Granting Related Relief* [Docket No. 129] (the "Creditor Matrix Order"). The alterations were limited to only what is necessary to protect the Debtors or a third party.

(c)     **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(d)     **Executory Contracts**. Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

(e)     **Umbrella or Master Agreements**. Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.

(f)     **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule F of the Schedules.

(g)     **Valuation**.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets.  Accordingly, unless otherwise indicated, net book values as of April 30, 2020 are reflected on the Schedules and Statements.  Exceptions to this include operating cash and certain other assets.  Operating cash is presented at bank balance as of the Petition Date, and intercompany receivables are presented as the balance as of the Petition Date.  Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values.  Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material.  Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.  Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date or any time prior to the Petition Date.

(h)     **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  To the extent possible, any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

(i)     **Undetermined Amounts**.  The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

(j)     **Unliquidated Amounts**.  Amounts that could not be fairly or readily quantified by the Debtors are scheduled as "unliquidated."

(k)     **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  To the extent a Debtor is a guarantor

of debt held by another Debtor, the amounts reflected in these Schedules are inclusive
of each Debtor's guarantor obligations.

(l)     **Allocation of Liabilities**.  The Debtors have sought to allocate liabilities between the
        prepetition and postpetition periods based on the information and research that was
        conducted in connection with the preparation of the Schedules and Statements.  As
        additional information becomes available and further research is conducted, the
        allocation of liabilities between prepetition and postpetition periods may change.  The
        Debtors reserve the right to amend the Schedules and Statements as they deem
        appropriate in this regard.

        The liabilities listed on the Schedules do not reflect any analysis of claims under
        section 503(b)(9) of the Bankruptcy Code.  Accordingly, the Debtors reserve all of
        their rights to dispute or challenge the validity of any asserted claims under section
        503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such
        transaction or any document or instrument related to any creditor's claim.

(m)     **Paid Claims**.  Pursuant to certain orders of the Bankruptcy Court entered in the
        Debtors' chapter 11 cases entered on or about May 15, 2020 (collectively, the "First
        Day Orders"), the Debtors were authorized (but not directed) to pay, among other
        things, certain prepetition claims of employees, lienholders, customer obligations,
        claimants under section 503(b)(9) of the Bankruptcy Code, and taxing authorities.
        Accordingly, certain prepetition liabilities that have been reduced by postpetition
        payments made on account of prepetition liabilities have been omitted from the
        Schedules and Statements.  To the extent the Debtors pay any of the claims listed in
        the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court,
        the Debtors reserve all of their rights to amend or supplement the Schedules and
        Statements or take other action as is necessary or appropriate to avoid overpayment of
        or duplicate payments for any such liabilities.  In addition and regardless of whether
        such claims are listed in the Schedules and Statements, to the extent claims are paid
        pursuant to an order of the Bankruptcy Court (including the First Day Orders), the
        Debtors reserve all rights to amend or supplement their Schedules and Statements.

(n)     **Other Paid Claims**.  To the extent the Debtors have reached any postpetition
        settlement with a vendor or other creditor, the terms of such settlement will prevail,
        supersede amounts listed in the Debtors' Schedules and Statements, and shall be
        enforceable by all parties, subject to any necessary Bankruptcy Court approval.  To
        the extent the Debtors pay any of the claims listed in the Schedules and Statements
        pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights
        to amend and supplement the Schedules and Statements and take other action, such as
        filing claims objections, as is necessary and appropriate to avoid overpayment of or
        duplicate payments for such liabilities.  Nothing contained herein should be deemed
        to alter the rights of any party in interest to contest a payment made pursuant to an
        order of the Bankruptcy Court where such order preserves the right to contest.

(o)     **Credits and Adjustments**. The claims of individual creditors for, among other things,
        goods, products, services, or taxes are listed as the amounts entered on the Debtors'

books and records and may either (a) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (b) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and postpetition payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claim objections and/or setoffs with respect to the same.

(p)     **Intercompany Claims**. Receivables and payables among and between the Debtors and (i) other Debtors or (ii) their non-Debtor affiliates, are reported on Statement 4, Schedule A/B, and Schedule E/F, respectively, per the Debtors' unaudited books and records. As described more fully in the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Continue to Operate Their Cash Management System, (II) Maintain Existing Business Forms and Books and Records, and (III) Perform Intercompany Transactions and Granting Administrative Expense Status to Intercompany Transactions and (B) Granting Related Relief* [Docket No. 8] (the "Cash Management Motion"), the Debtors engage in a range of intercompany transactions in the ordinary course of business. Pursuant to the *Final Order (A) Authorizing the Debtors to (I) Continue to Operate Their Cash Management System, (II) Maintain Existing Business Forms and Books and Records, and (III) Perform Intercompany Transactions and Granting Administrative Expense Status To Intercompany Transactions and (B) Granting Related Relief* [Docket No. 260] (the "Cash Management Order"), the Bankruptcy Court has granted the Debtors authority to continue to engage in intercompany transactions in the ordinary course of business subject to certain limitations set forth therein. Thus, intercompany balances as of the Petition Date, as set forth on Statement 4 and in Schedule A/B and Schedule E/F may not accurately reflect current positions.

The Debtors have also provided a schedule of historical intercompany transactions from May 2014 between Debtor entities Intelsat S.A., Intelsat Investment Holdings S.a.r.l., Intelsat Holdings S.A., Intelsat Investments S.A., Intelsat (Luxembourg) S.A., Intelsat Envision Holdings LLC, Intelsat Connect Finance S.A., and Intelsat Jackson Holdings S.A., available at https://cases.stretto.com/intelsat/.

The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise or an admission as to the validity of such receivables and payables. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes. Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted in the Debtors' books and records. Such treatment is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, characterization of the amount and/or validity or priority of any such intercompany receivables and payables or the validity of any netting or

offsets per the Debtors' books and records. The Debtors take no position in these Schedules and Statements as to whether any such amounts would be allowed as a claim or an interest, or not all allowed at all. The listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or claim status of any intercompany liability account. The Debtors reserve all rights to later change the amounts, characterization, classification, categorization, or designation of intercompany accounts reported in the Schedules and Statements.

In addition, certain of the Debtors act on behalf of other Debtors. Commercially reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment. The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

As more fully described in the Cash Management Motion, the Debtors recorded numerous intercompany transactions in their books and records each month, including cash transfers and journal entries. Instead of listing each of these numerous transactions and entries in their Statements and Schedules for each month, the Debtors have included monthly balances and net activity for the one year prior to the Petition Date. In addition, the Debtors have separately listed any cash payments between Debtors and between Debtors and non-Debtor affiliates. These cash transactions are also recorded in the net monthly activity listing in the Debtors' books and records.

(q) **Guarantees and Other Secondary Liability Claims**. The Debtors have used commercially reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "<u>Guarantees</u>") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Where such Guarantees have been identified, they have been included in the relevant Schedule G and Schedule H for the Debtor or Debtors affected by such Guarantees. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. Thus, the Debtors reserve all of their rights to amend the Schedules to the extent that additional Guarantees are identified.

(r) **Claims of Third-Party Related Entities**. While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to the same. Thus, the Debtors reserve all of their rights with respect to disputed claims.

(s) **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including, but

not limited to: certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; goodwill and other intangibles; deferred revenue accounts; and certain accrued liabilities including, but not limited to, accrued salaries and employee benefits. The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage claims exist. In addition and as set forth above, the Debtors may have excluded amounts for which the Debtors have been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court. Also, certain immaterial assets and liabilities may have been excluded.

(t) **Liens**. The inventories, property, and equipment listed in the Schedules and Statements are presented without consideration of any mechanic's, materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment, and the Debtors reserve all of their rights with respect to such liens.

(u) **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

(v) **Setoffs**. The Debtors incur certain setoffs and other similar rights during the ordinary course of business. Offsets in the ordinary course can result from various items, including, without limitation, intercompany transactions, pricing discrepancies, refunds, and other disputes between the Debtors and their suppliers. These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately. Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules. In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

(w) **Employee Addresses**. Employee addresses have been removed from entries listed throughout the Schedules and Statements, where applicable, and certain employee names have been removed, pursuant to the Creditor Matrix Order.

5. **Specific Schedules Disclosures**.

(a) **Schedule A/B, Part 1 – Cash and Cash Equivalents.** Details with respect to the Debtors' cash management system and bank accounts are provided in the Cash Management Motion and Cash Management Order.

The Debtors' cash balances are listed as of the Petition Date, May 13, 2020, at bank balances.

(b) **Schedule A/B, Part 2 – Deposits and Prepayments.** The Bankruptcy Court, pursuant to *Final Order (A)(I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, (III) Prohibiting Utility Providers from*

*Altering, Refusing, or Disconnecting Services, and (IV) Authorizing Fee Payments to
the Debtors' Third-Party Utility Service Vendor and (B) Granting Related Relief*
[Docket No. 280], authorized the Debtors to provide adequate assurance of payment
for future utility services.  In addition, certain retainers or deposits reflect payments to
professionals made by a certain Debtor entity, but may be subject to applicable
allocation amongst the Debtors.  The retainers and deposits are listed as of the Petition
Date, May 13, 2020.

(c)    **Schedule A/B, Part 3 – Accounts Receivable, Item 11.**  The Debtors' reported
accounts receivable include amounts that may be uncollectible.  Notwithstanding the
foregoing, the Debtors have used reasonable efforts to deduct doubtful or uncollectible
accounts.  The Debtors are unable to determine with certainty what amounts will
actually be collected.

(d)    **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in
Incorporated and Unincorporated Businesses, including any Interest in an LLC,
Partnership, or Joint Venture.**  Ownership interests in subsidiaries, partnerships,
joint ventures and investments in non-publicly traded securities have been listed in
Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair
market value of such ownership is dependent on numerous variables and factors and
may differ significantly from their net book value.

(e)    **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and
Collectibles.**  Dollar amounts are presented net of accumulated depreciation and other
adjustments.

(f)    **Schedule A/B, Part 8 – Machinery, Equipment, and Vehicles.**  For those Debtors
that own machinery, equipment and vehicles, dollar amounts are presented net of
accumulated depreciation and other adjustments.  Due to the volume, the individual
fixed asset schedules have not been included in Schedule A/B, Part 8.

(g)    **Schedule A/B, Part 9 – Real Property.**  For those Debtors that own real property,
such owned real estate is reported at book value, net of accumulated depreciation.  Any
buildings and land improvements are listed on Schedule A/B, Part 9, independent of
whether the real property to which the building or land improvement is connected is
Debtor-owned property.  The Debtors may have listed certain assets as real property
when such assets are in fact personal property, or the Debtors may have listed certain
assets as personal property when such assets are in fact real property.  The Debtors
reserve all of their rights to recategorize and/or recharacterize such asset holdings to
the extent the Debtors determine that such holdings were improperly listed.

(h)    **Schedule A/B, Part 10 – Intangibles and Intellectual Property, Items 59-66.**  The
Debtors review goodwill and other intangible assets having indefinite lives for
impairment annually or when events or changes in circumstances indicate the carrying
value of these assets might exceed their current fair values.  Given the chapter 11 filing,
results from an impairment test were unavailable at the time that the Schedules and
Statements were prepared, and therefore several of the Debtors' intangible asset values

may be listed as undetermined. The Debtors report intellectual property assets as net book value based on the Debtors' books and records whenever applicable. For purposes of the Schedules, the Debtors have listed goodwill and customer lists only at entities for which these assets are recorded on their books. The exclusion of listing similar assets at additional Debtors should not be construed as an admission that other Debtors do not possess similar assets.

(i)     **Schedule A/B, Part 11 – All Other Assets.** Dollar amounts are presented net of impairments and other adjustments.

     (i)     ***Item 72 – Tax Refunds and Unused Net Operating Losses (NOLs).*** The Debtors may receive refunds for sales and use tax at various times throughout their fiscal year. As of the Petition Date, however, certain of these amounts are unknown to the Debtors and, accordingly, may not be listed on Schedule A/B. Additionally, the Debtors may be entitled to apply certain net operating losses or other tax attributes. The Debtors have provided a summary of certain of their tax attributes and related considerations in Item 72.

     (ii)     ***Item 73 – Interests in Insurance Policies or Annuities.*** A list of the Debtors' insurance policies and related information is available in the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Maintain, Renew, or Supplement Their Insurance Policies and Honor All Obligations In Respect thereof, and (II) Maintain, Renew, or Supplement Their Surety Bond Program, and (B) Granting Related Relief* [Docket No. 13]. The Debtors believe that there is little or no cash value to the vast majority of such insurance policies.

     (iii)     ***Items 74 and 75 – Causes of action against third parties (whether or not a lawsuit has been filed) and other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtors and rights to set off claims.*** The Debtors attempted to list known causes of action and other claims. Potential preference actions and/or fraudulent transfer actions were not listed because the Debtors have not completed an analysis of such potential claims. The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause of action, claim, or right does not exist, and should not be construed as a waiver of such cause of action, claim, or right. In addition, the Debtors have described the potential right to receive certain payments in connection with the relocation of satellite operations in the lower 300 MHz spectrum of the "C-band" within the contiguous United States in Item 75.

     (iv)     ***Item 77 – Other property of any kind not already listed.*** The Debtors have included intercompany receivables as of the Petition Date. In addition, the Debtors are party to numerous Frequency Coordination Agreements ("FCA") with other satellite operators which establish technical specifications between the parties for operating satellites within specific shared radio frequencies. The omission of a specific listing of FCAs within the Schedules should not be

construed as an admission that these agreements are not assets and are or are not executory contracts.

(v)     ***Executory Contracts and Unexpired Leases*.**  The Debtors have listed their executory contracts and unexpired leases on Schedule G.  The Debtors reserve all of their rights with respect to any and all executory contracts and unexpired leases, including whether such agreements are or are not executory contracts and the right to amend Schedule G.

(j)     **Schedule D – Creditors Who Have Claims Secured by Property**.  Except as otherwise agreed pursuant to a stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset for the benefit of a secured creditor listed on a Debtor's Schedule D. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the nature or structure of any such transaction or any document or instrument (including without limitation, any intercompany agreement) related to such creditor's claim.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors.  No claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are or may be otherwise satisfied or discharged.

Schedule D does not include beneficiaries of letters of credit.  Although the claims of these parties may be secured by a letter of credit, the Debtors' obligations under the letters of credit run to the issuers thereof, and not to the beneficiaries thereof.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in these Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements or documents.

Except as specifically stated herein, real property lessors, utility companies, and other parties which may hold security deposits have not been listed on Schedule D.  The Debtors have not included parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Debtors' Motion for Entry of a Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Granting Liens and Superpriority Administrative Expense Claims, (C) Granting Adequate Protection to the Prepetition Secured Parties, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* [Docket No. 74].

(k)    **Schedule E/F – Creditors Who Hold Unsecured Claims.**  Schedule E/F does not include certain deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.  The Debtors have made every effort to include as contingent, unliquidated, or disputed the claim of any vendor not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

(i)    ***Part 1 – Creditors with Priority Unsecured Claims.***  The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy Code.  The Debtors reserve all of their rights to dispute the amount and the priority status of any claim on any basis at any time.

Pursuant to the *Final Order (A) Authorizing the Payment of Certain Prepetition Taxes and Fees and (B) Granting Related Relief* [Docket No. 277] (the "Taxes Order"), the Debtors have been granted the authority to pay certain tax liabilities that accrued prepetition.  Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been paid or may be paid pursuant to the Taxes Order or pursuant to further Bankruptcy Court order are not listed in Schedule E.  The Debtors believe that any undisputed tax claims for prepetition amounts, whether allowable as a priority or nonpriority claim have been or will be satisfied.

Moreover, in lieu of listing all of the Debtors' possible taxing authorities for notice purposes in Schedule E/F, the Debtors have only listed those taxing authorities with which the Debtors have pending audits.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

Pursuant to the *Final Order (A) Authorizing the Debtors to (I) Pay Prepetition Wages, Compensation, and Benefit Obligations and (II) Continue Employee Compensation and Benefits Programs, and (B) Granting Related Relief* [Docket No. 262] (the "Final Wages Order"), the Debtors received final authority to pay, in their discretion, certain prepetition obligations, including, without limitation, obligations related to employee wages and other employee benefits, in the ordinary course of business.  Accordingly, no undisputed, prepetition claims of non-insiders related to employee wages and other employee benefits that have been paid or may be paid pursuant to the Final Wages Order or pursuant to further Bankruptcy Court order is listed in Schedule E/F Part 1.

(ii)   ***Part 2 – Creditors with Nonpriority Unsecured Claims.***  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and

records.  The Debtors made a commercially reasonable effort to set forth their
unsecured obligations, although the actual amount of claims against the
Debtors may vary from those liabilities represented on Schedule E/F, Part 2.
The listed liabilities may not reflect the correct amount of any unsecured
creditor's allowed claims or the correct amount of all unsecured claims.

The Debtors generally allocate individual liabilities to particular
Debtors.  However, in certain cases, it would be a time-consuming and
inefficient use of estate resources, or impracticable, to assign a given liability
to a particular Debtor based on a contractual obligation.  Instead, the Schedules
reflect the liability based on the Debtors' books and records.

Certain Debtors have historically repurchased certain publicly-traded third-
party Company debt on the open market.  The Debtors have listed the gross
amount of third-party debt on their Schedules and have indicated amounts
owed to an affiliate (if any) within the description of such debt (and have not
listed the debt as an intercompany payable).  The Debtors have listed the
intercompany receivable for such purchased debt at the par value (gross
amount) of such debt although the purchase may have been made at less than
par value.

Schedule E/F, Part 2 (Statements Part 3, Question 7), contains information
regarding threatened or pending litigation involving the Debtors.  The amounts
for these threatened or pending claims are listed as "undetermined" and are
marked as contingent, unliquidated, and disputed in the Schedules and
Statements.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to
counterparties to executory contracts and unexpired leases.  Such prepetition
amounts, however, may be paid in connection with the assumption or
assumption and assignment of an executory contract or unexpired lease.  In
addition, Schedule E/F, Part 2, does not include claims that may arise in
connection with the rejection of any executory contracts or unexpired leases,
if any, that may or have been rejected in these chapter 11 cases.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or
were incurred on various dates or on a date or dates that are unknown to the
Debtors or are subject to dispute.  Where the determination of the date on which
a claim arose, accrued, or was incurred would be unduly burdensome and
costly to the Debtors' estates, the Debtors have not listed a specific date or
dates for such claim.

As of the time of filing of the Schedules and Statements, the Debtors may not
have received all invoices for payables, expenses, and other liabilities that may
have accrued prior to the Petition Date.  Accordingly, the information
contained in Schedules D and E/F may be incomplete.  The Debtors reserve

their rights to, but undertake no obligations to, amend Schedules D and E/F if and as they receive such invoices.

Liabilities listed on Schedule E/F reflect the Debtors' books and records balance as of the Petition Date. These amounts <u>do not</u> include any prepetition amounts paid under various authority granted by the Bankruptcy Court that have been issued postpetition. The Debtors expect that certain suppliers may continue to receive payments on account of prepetition amounts through the pendency of these chapter 11 cases (as approved by the Bankruptcy Court).

(l) **Schedule G – Executory Contracts and Unexpired Leases.** While commercially reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, and unintended duplication of items may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all their rights to dispute the validity, status, or enforceability of any contracts, agreements, leases or instruments set forth in Schedule G and to amend or supplement Schedule G as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. The Debtors hereby expressly reserve the right to assert that any instrument listed on Schedule G is or is not an executory contract within the meaning of section 365 of the Bankruptcy Code. In addition, the Debtors may have entered into certain confidentiality and non-compete agreements or various other types of agreements in the ordinary course of their businesses, such as supplemental agreements and letter agreements, which documents may not be set forth in Schedule G. The Debtors reserve all of their rights with respect to such agreements.

The Debtors reserve all of their rights, claims, and causes of action with respect to claims associated with any contracts and agreements listed on Schedule G, including their right to dispute or challenge the characterization, nature or structure of any transaction, agreement, contract, document or instrument (including any intercompany agreement) related to a creditor's claim.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of commercially reasonable efforts to identify such documents.

Unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any

manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon. In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract, agreement or instrument on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract, agreement or instrument. The Debtors reserve the right to dispute the effectiveness of any such contract, agreement or instrument listed on Schedule G or to amend Schedule G at any time to remove any contract, agreement or instrument.

Omission of a contract, agreement or instrument from Schedule G does not constitute an admission that such omitted contract, agreement or instrument is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts, agreements or instruments are not impaired by the omission.

In some cases, contract counterparties from dormant legacy businesses and historical acquisitions may not have been updated to reflect assignment to active Debtor entities although the Debtors have assumed and continue to perform under the terms and conditions of such agreements, as amended if applicable. In such cases, Debtors have included such items on Schedule G of the Debtor entity that performs the terms and conditions of such agreements as of the Petition Date.

Certain Debtors are guarantors and parties to guaranty agreements regarding the Debtors' prepetition credit facilities. The guaranty obligations arising under these agreements are reflected on Schedules D and F only.

(m)   **Schedule H – Co-Debtors.** In the ordinary course of their businesses, certain Debtors pay certain expenses for and on behalf of their subsidiaries. For purposes of Schedule H, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. As such, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become unenforceable.

The Debtors have not listed any litigation-related co-Debtors on Schedule H. Instead, all such listings can be found on the Debtors' Schedule E/F.

## 6.   Specific Statements Disclosures.

(a)   **Statements, Part 1, Question 2 – Non-Business Revenue.** Non-business revenue includes such items as rental income, interest and other income.

(b)   **Statements, Part 2, Question 3 – Certain payments or transfers to creditors within 90 days before filing this case.** Any payments made to the Debtors'

bankruptcy case professionals and/or insiders within the 90 days prior to the Petition Date are disclosed in response to SOFA 11 and SOFA 30, respectively, and therefore are not listed in response to SOFA 3. Payments made to the Debtors' non-insider employees also are not listed herein. Payments made to employees for compensation are not included; however, transfers made to third-party administrators used to compensate employees have been included.

(c) **Statements, Part 2, Question 4 – Payments or other transfers of property made within 1 year before filing this case that benefited any insider.** Please refer to Question 30 of the Statements for Intelsat S.A. regarding all payments to insiders. Individual payments to Debtor affiliates are not reflected in Question 4 due to their complexity and voluminous nature.

(d) **Statements, Part 2, Question 6 – Setoffs.** For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 4(v) of these Global Notes.

(e) **Statements, Part 6, Question 11 – Payments Related to Bankruptcy.** Certain disbursements listed in Statement 11 reflect payments to professionals made by a certain Debtor entity, but may be subject to applicable allocation amongst the Debtors. The Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their postpetition lenders or other parties on account of any applicable fee arrangements.

(f) **Statements, Part 12, Questions 22-24 – Details about Environmental Information.** The Debtors have endeavored to disclose all applicable information in response to Statements, Part 12, Questions 22–24.

(g) **Statements, Part 13, Question 26 – Books, Records, and Financial Statements.** Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, at the end of each of its fiscal quarters and years and upon the occurrence of significant events, Debtor Intelsat S.A. prepares and files or furnishes with the SEC Quarterly Reports on Form 10-Q, Annual Reports on Form 10-K and Current Reports on Form 8-K, among others (collectively, the "SEC Filings"). Certain of Intelsat S.A.'s SEC Filings contain consolidated financial information relating to the Debtor and certain of its affiliates. Additionally, the Debtors have historically provided information, such as annual reports, on their website. Because the SEC Filings and other reports are of public record, the Debtor does not maintain records of the parties who requested or obtained copies of any of the SEC Filings from the SEC, the Debtors, or other sources.

(h) **Statements, Part 13, Question 28 – Current Partners, Officers, Directors, and Shareholders.** The Debtors incorporate by reference the *List of Equity Security Holders* filed as part of their voluntary petitions for relief under chapter 11. In addition, the Debtors have listed only entities that are directly owned by an individual Debtor as of the Petition Date.

(i) **Statements, Part 13, Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.** The information reported on Question 30 is

representative of the total payments made to insiders on behalf of multiple Debtor entities during the one (1) year prior to the Petition Date.  For the avoidance of doubt, the information reported on Question 30 may include payments to individuals who may have been insiders at the time they were employed by a Debtor but are no longer employed by a Debtor.

# <u>Exhibit C-6</u>

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064 (TLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SCHEDULE OF ASSETS AND LIABILITIES FOR
## <u>SPECIALTY RETAIL SHOPS HOLDING CORP. (CASE NO. 19-80064)</u>

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

Case 19-80064-TLS    Doc 849    Filed 02/22/19    Entered 02/22/19 23:31:08    Desc Main
Document    Page 116 of
129

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*, | ) Case No. 19-80064-TLS |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## GLOBAL NOTES AND
## STATEMENT OF LIMITATIONS, METHODOLOGY,
## AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES
## OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Specialty Retail Shops Holding Corp. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases, (the "Debtors") have filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

Russell L. Steinhorst has signed each set of the Schedules and Statements. Mr. Steinhorst serves as the Chief Executive Officer at Debtor Specialty Retail Shops Holding Corp., and he is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Steinhorst has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' legal and financial advisors. Given the scale of the Debtors' business and the hundreds of stores covered by the Schedules and Statements, Mr. Steinhorst has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting,

communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event shall the Debtors or their agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

## Global Notes and Overview of Methodology

1. **Description of Cases.** On January 16, 2019, (the "<u>Petition Date</u>"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 16, 2019, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 25]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The information provided herein, except as otherwise noted, is reported as of the close of business on the Petition Date.

2. **Global Notes Control.** These Global Notes pertain to and comprise an integral part of each of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof. In the event that the Schedules and Statements conflict these Global Notes, these Global Notes shall control.

3. **Reservations and Limitations.** Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate. Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

   (a) **No Admission.** Nothing contained in the Schedules and Statements is intended or should be construed as an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

(b)   **Recharacterization.**   Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

(c)   **Classifications.**   Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

(d)   **Claims Description.**   Any failure to designate a claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve all rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent," or "unliquidated" or object to the extent, validity, enforceability, priority, or avoidability of any claim.   Moreover, listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors.   The Debtors reserve all rights to amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to claim description and designation.

(e)   **Estimates and Assumptions.**   The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods.   Actual results could differ from such estimates.

(f)   **Causes of Action.**   Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.   The Debtors reserve all rights with respect to any causes of action, and nothing in these Global Notes or the Schedules and Statements should be construed as a waiver of any such causes of action.

(g)   **Intellectual Property Rights.**   Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been

abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

(h)    **Insiders.**    In the circumstance where the Schedules and Statements require information regarding "insiders" the Debtors have included information with respect to the individuals who the Debtors believe are included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities. In the interest of additional disclosure, the Debtors have also included certain individuals who may have officer titles in their responses to Statements, Part 13, Question 28.

The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for the purposes of determining control of the Debtors, the extent to which any individual exercised management responsibilities or functions, corporate decision-making authority over the Debtors, or whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or any other purpose.

4.    **Methodology.**

(a)    **Basis of Presentation.**    The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of each Debtor. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment. The Schedules and Statements reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.

(b)    **Confidential Information.**    There may be instances in the Schedules and Statements where the Debtors deemed it necessary and appropriate to redact from the public record information such as names, addresses, or amounts. Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality and protection of sensitive commercial information (*e.g.*, names of customers), or concerns for the privacy of an individual.

(c)      **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments
may properly be disclosed in response to multiple parts of the Statements and
Schedules.  To the extent these disclosures would be duplicative, the Debtors have
determined to only list such assets, liabilities and prepetition payments once.

(d)      **Net Book Value.**  In certain instances, current market valuations for individual
items of property and other assets are neither maintained by, nor readily available
to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules
and Statements reflect net book values as of January 15, 2019.  Market values may
vary, at certain times materially, from net book values.  The Debtors believe that it
would be an inefficient use of estate assets for the Debtors to obtain the current
market values of their property.  Accordingly, the Debtors have indicated in the
Schedules and Statements that the values of certain assets and liabilities are
undetermined.  Also, assets that have been fully depreciated or that were expensed
for accounting purposes either do not appear in these Schedules and Statements or
are listed with a zero-dollar value, as such assets have no net book value.  The
omission of an asset from the Schedules and Statements does not constitute a
representation regarding the ownership of such asset, and any such omission does
not constitute a waiver of any rights of the Debtors with respect to such asset.

(e)      **Property and Equipment.**  Unless otherwise indicated, owned property and
equipment are valued at net book value.  The Debtors may lease furniture, fixtures,
and equipment from certain third-party lessors.  To the extent possible, any such
leases are listed in the Schedules and Statements.  Nothing in the Schedules and
Statements is, or should be construed as, an admission as to the determination of
the legal status of any lease (including whether any lease is a true lease or a
financing arrangement), and the Debtors reserve all rights with respect thereto.

(f)      **Allocation of Liabilities.**  The Debtors allocated liabilities between the prepetition
and postpetition periods based on the information and research conducted in
connection with the preparation of the Schedules and Statements.  As additional
information becomes available and further research is conducted, the allocation of
liabilities between the prepetition and postpetition periods may change.

(g)      **Undetermined Amounts.**  The description of an amount as "undetermined" is not
intended to reflect upon the materiality of such amount.

(h)      **Unliquidated Amounts.**  Amounts that could not be fairly quantified by the
Debtors are scheduled as "unliquidated."

(i)      **Totals.**  All totals that are included in the Schedules and Statements represent totals
of all known amounts.  To the extent there are unknown or undetermined amounts,
the actual total may be different than the listed total.

(j)      **Paid Claims.**  The Debtors have authority to pay certain outstanding prepetition
payables pursuant to bankruptcy or other court order; as such, outstanding liabilities
may have been reduced by any court-approved postpetition payments made on

prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements with the exception that liabilities with respect to the Debtors' prepetition vendors may be listed at the amount outstanding as of the Petition Date, regardless of whether such claims have been settled and paid postpetition in accordance with the *Order (I) Authorizing the Debtors to Pay Prepetition Claims of Lien Claimants, Import Claimants, and 503(B)(9) Claimants, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* [Docket No. 74] (the "Lien Claimants Order"). To the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Bankruptcy Court where such order preserves the right to contest.

(k)     **Intercompany Claims.** Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are used for accounting purposes only and are never settled in cash. Furthermore, as these claims net to zero on a consolidated basis, they are not included in the Statements and Schedules.

(l)     **Guarantees and Other Secondary Liability Claims.** The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, secured financings, and other such agreements. Where guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors. The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

(m)     **Excluded Assets and Liabilities.** The Debtors have excluded the following categories of assets and liabilities from the Schedules and Statements: certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; goodwill and other intangibles; deferred revenue accounts; and certain accrued liabilities including, but not limited to, accrued salaries and employee benefits. Other immaterial assets and liabilities may also have been excluded.

(n)     **Liens.** The inventories, property and equipment listed in the Schedules and Statements are presented without consideration of any liens.

(o)     **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars.

(p)     **Setoffs.** The Debtors routinely incur setoffs and net payments in the ordinary course of business. Such setoffs and nettings may occur due to a variety of

transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or disputes between Debtors and their customers and/or suppliers. These normal, ordinary course setoffs and nettings are common to the retail industry. Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements. In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

5. **Specific Schedules Disclosures.**

(a) **Schedule A/B, Part 1, Question 4.** The Debtors consider credit card A/R as a "cash equivalent" and such amounts are listed in Schedule A/B, Part 1, Question 4 rather than A/B Part 3, Question 11.

(b) **Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments.** Details with respect to the Debtors' cash management system and bank accounts are provided in the *Debtors' Motion for Entry of a Final Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 18] (the "Cash Management Motion") and any orders of the Bankruptcy Court granting the Cash Management Motion.

As described in the Cash Management Motion, the Debtors have 285 non-consolidated store-level deposit accounts, all of which are swept daily to a zero balance. For purposes of the Schedules and Statements, therefore, the Debtors have listed such balances at the amount as of January 15, 2019.

Additionally, the Bankruptcy Court, pursuant to the *Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services,(III) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, and (IV) Granting Related Relief* [Docket No. 71], has authorized the debtors to provide adequate assurance of payment for future utility services, including an initial deposit in the aggregate amount of $1.29 million. Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of the Petition Date.

(c) **Schedule A/B, Part 3, Question 11.** No doubtful or uncollectible amounts are listed in either Question 11a or 11b. The Debtors' accounting practice is to list the

full value of the receivable and write that amount off to the extent it becomes uncollectable.

(d) **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.** Ownership interests in subsidiaries, partnerships, and joint ventures have been listed in Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors, and may differ significantly from their net book value.

(e) **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.** Dollar amounts are presented net of accumulated depreciation and other adjustments.

(f) **Schedule A/B, Part 11 – All Other Assets.** Dollar amounts are presented net of impairments and other adjustments.

Additionally, the Debtors may receive refunds for sales and use tax at various times throughout their fiscal year. As of the Petition Date, however, certain of these amounts are unknown to the Debtors, and accordingly, may not be listed in Schedule A/B.

***Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.*** In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, refunds with their customers and suppliers, or potential warranty claims against their suppliers. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant. Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

***Interests in Insurance Policies or Annuities.*** A list of the Debtors' insurance policies and related information is available in the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Continue and Renew their Liability, Property, Casualty, and Other Insurance Policies and Honor all Obligations in Respect Thereof, (B) Continue and Renew their Prepetition Insurance Premium Financing Agreements, and (C) Continue the Surety Bond Programs, and (II) Granting Related Relief* [Docket No. 13]. The Debtors believe that there is little or no cash value to the vast majority of such insurance policies. To the extent an insurance policy is determined to have value, it will be included in Schedule A/B.

***Executory Contracts and Unexpired Leases.*** Because of the large number of the Debtors' executory contracts and unexpired leases, as well as the size and scope of

8

such documents, the Debtors have not attached such agreements to Schedule A/B. Instead, the Debtors have only listed such agreements in Schedule G.

(g)     **Schedule A/B, Part 11, Question 72**. The amounts listed reflect a tax effective rate that is an estimate for the go-forward used NOLs and tax refunds assuming a change in control.

(h)     **Schedule D – Creditors Who Have Claims Secured by Property.**  Except as otherwise agreed pursuant to a stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D.  Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.  Although there are multiple parties that hold a portion of the debt included in the secured facilities, only the administrative agents have been listed for purposes of Schedule D.

Additionally, the treatment of certain secured creditors' claims listed in Schedule D are subject to the payment priority set forth in that certain Third Amended and Restated Loan and Security Agreement, dated as of February 7, 2012 (as amended by that certain Ratification and Amendment Agreement, dated as of January 16, 2019, and as further amended, restated, supplemented, or otherwise modified from time to time).

(i)     **Schedule E/F – Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims.*  Pursuant to the *Order (I) Authorizing the Payment of Certain Prepetition and Postpetition Taxes and Fees and (II) Granting Related Relief* [Docket No. 68] (the "Taxes Order"), the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition. Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been paid pursuant to the Taxes Order are not listed in Schedule E.

Moreover, in lieu of listing all of the Debtors' possible taxing authorities for notice purposes in Schedule E/F—a list that numbers in the thousands—the Debtors have only listed those taxing authorities with which the Debtors have pending audits.

(j)    Furthermore, pursuant to the *Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 98] (the "Wages Order") the Debtors received final authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to pay pursuant to the Employee Wage Order or other order that may be entered by the Bankruptcy Court. The Debtors believe that any non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, have been or will be satisfied, and such satisfied amounts are not listed.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims.*** The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

The Debtors generally allocate individual liabilities to particular Debtors. However, in certain cases, it would be a time-consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation. Instead, the Schedules reflect the liability based on the Debtors books and records.

Schedule E/F, Part 2, contains information regarding certain compensation-related claims of insiders of the Debtors, with such claims being listed as both "contingent" and "unliquidated." In scheduling such claims, the Debtors make no representation or assertion as to the validity of such claims, and the Debtors reserve all rights, claims, and defenses in connection therewith.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtors. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements. For the avoidance of doubt, demand letters received from potential litigants as a result of alleged injuries sustained at one of the Debtors' stores that do not list a specific Debtor are listed on Debtor Specialty Retail Shops

Holding Corp.'s ("Specialty Retail") Schedules as Specialty Retail is the signatory to all store leases.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim.

As of the time of filing of the Schedules and Statements, the Debtors had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligations, to amend Schedules D and E/F if and as they receive such invoices.

(k)    **Schedule G – Executory Contracts and Unexpired Leases.** While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. Additionally, relationships between the Debtors and its customers are often governed by a master services agreement, under which customers also place work and purchase orders, which may be considered executory contracts. Disclosure of all of these purchase and work orders, however, is impracticable and unduly burdensome. Accordingly, to the extent the Debtors have determined to disclose master services agreements in Schedule G, purchase and work orders placed thereunder may have been omitted.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements and letter agreement, which documents may not be set forth in Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission. Certain Debtors are guarantors and parties to guaranty agreements regarding the Debtors' prepetition credit facility. The guaranty obligations arising under these agreements are reflected on Schedules D and F only.

(l)  **Schedule H – Co-Debtors.** For purposes of Schedule H, only the agent under the prepetition credit facility or counterparties that are subject to a guaranty are listed as Co-Debtors on Schedule H. The Debtors have not listed any litigation-related Co-Debtors on Schedule H. Instead, all such listings can be found on the Debtors' Schedule E/F.

6.  **Specific Statements Disclosures.**

(a)  To the extent: (i) a person qualified as an "insider" in the year prior to the Petition Date, but later resigned their insider status or (ii) did not begin the year as an insider, but later became an insider, the Debtors have only listed those payments made while such person was defined as an insider in Statements, Part 2, Question 4.

(b)  **Statements, Part 2, Question 6 – Setoffs.** For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 4(p) of these Global Notes.

(c)  **Statements, Part 5, Question 10 – Certain Losses.** Given the scale of the Debtors' store footprint, certain losses, including those losses attributable to theft, are unable to be tracked by the Debtors with complete accuracy, and accordingly, such losses have not been listed on the Debtors' Statements. Additionally, the Debtors only account for general recoveries of such losses, with this general amount being the recovery listed in the Statements for the 1 year immediately before the Petition Date.

(d)  **Statements, Part 6, Question 11 – Payments Related to Bankruptcy.** The attachment to Question 11 on all Statements reflect payments to professionals on behalf of the Debtors on a consolidated basis. The Debtors believe that it would be

an inefficient use of the assets of the Debtors' estates for the Debtors to allocate these payments on a Debtor-by-Debtor basis.

(e) **Statements, Part 6, Question 13 – Transfers not Already Listed on Statements.** In the ordinary course of their business, the Debtors often close or remodel store locations, and in the process of doing so, may give away certain fixtures possessing little to no economic value. Given the frequency of such gifts and the difficulty in accounting for them, the Debtors have not listed such transfers in their Statements.

(f) **Statements, Part 11, Question 21 – Property Held for Another.** The Debtors are obligated under various agreements and programs to remit certain funds held for third parties to those parties, and have received authorization to do so under both the Lien Claimants Order and Wages Order. To the extent that any of the funds described above are held or paid for the benefit of third parties, such funds may not constitute property of the Debtors' estates, and the Debtors therefore have not included such amounts in their responses to Statement Question 21. The Debtors further reserve all rights they have as to whether any such funds constitute property of the estate.

(g) **Statements, Part 7, Question 14 – Prior Locations.** The Debtors operate a national enterprise with locations throughout the U.S. The Debtors have not disclosed the addresses of all of these locations. Rather, the address of each Debtor's main center of operations or headquarters was included in the Debtors' Voluntary Petitions. For most of these locations, the dates of occupancy are not readily available.

(h) **Statements, Part 12, Questions 22-24 – Details About Environmental Information.** The Debtors have endeavored to disclose all applicable information in response to Statements, Part 12, Questions 22–24.

(i) **Statements, Part 13, Question 26 – Books, Records, and Financial Statements.** The Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors, with financial statements that may not be part of a public filing. The Debtors do not maintain complete lists or other records tracking such disclosures. Therefore, the Debtors have not provided full lists of these parties in their Responses to Statement Question 26.

(j) **Statements, Part 13, Question 28 – Current Partners, Officers, Directors, and Shareholders.** The Debtors incorporate by reference the *List of Equity Security Holders* filed as part of their Voluntary Petitions.

(k) **Statements, Part 13, Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.** Distributions by the Debtors to their directors and officers are listed on the attachment to Question 4. Certain directors and executive officers of Shopko are also directors and executive officers of certain of Shopko's Debtor and non-Debtor affiliates. To the extent payments to such individuals are not listed in the response to Question 4 on the Statements for such Debtor affiliates,

they did not receive payment for their services as directors or executive officers of these entities.  Certain of the Debtors' directors and executive officers received distributions net of tax withholdings in the year preceding the Petition Date.  The amounts listed under Question 4 reflect the gross amounts paid to such directors and executive officers, rather than the net amounts after deducting for tax withholdings.

*    *    *    *    *