**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK[1]<br><br>               Debtor. | Chapter 11 Case No.<br><br>22-50073 (JAM) |
| Pacific Alliance Asia Opportunity Fund L.P.,<br><br>               Movant<br><br>v.<br><br>Ho Wan Kwok,<br><br>               Respondent. | |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S MOTION TO DISMISS CHAPTER 11 CASE OR, IN THE ALTERNATIVE, PARTIAL JOINDER TO UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 7

BACKGROUND ..................................................................................................... 10

JURISDICTION ...................................................................................................... 22

RELIEF REQUESTED............................................................................................. 22

ARGUMENT ........................................................................................................... 22

I.      THE COURT SHOULD DISMISS THE PETITION FOR CAUSE. ............................ 22

      A.      The Court Should Dismiss the Petition for Cause Because Kwok Is Misusing the Bankruptcy System. ......................................................... 23

      B.      The Court Should Dismiss This Chapter 11 Case as a Bad Faith Filing. ................................................................................................... 29

      C.      The Court Should Dismiss the Petition for Cause Because Kwok's Estate Continues to Diminish and There Is No Reasonable Likelihood of Rehabilitation. .............................................................. 35

      D.      The Court Should Dismiss the Petition for Cause Because Kwok Is Grossly Mismanaging the Estate ........................................................... 36

II.      DISMISSAL—RATHER THAN CONVERSION OR THE APPOINTMENT OF A TRUSTEE OR EXAMINER—IS THE BEST DISPOSITION UNDER THE CIRCUMSTANCES. ...................................................................................... 39

III.      IN THE ALTERNATIVE, PAX JOINS IN THE UNITED STATES TRUSTEE'S MOTION FOR A CHAPTER 11 TRUSTEE. ................................................. 39

      A.      There is "Cause" to Appoint a Trustee. ................................................. 40

      B.      Appointing a Trustee Is in the Interests of All Parties........................... 43

CONCLUSION........................................................................................................ 44

## TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**Cases**

*Baker* v. *Latham Sparrowbush Assocs.*, *(In re Cohoes Indus. Terminal, Inc.),*
   931 F.2d 222 (2d Cir. 1991) ................................................................ 23

*C-TC 9th Ave. P'ship* v. *Norton Co. (In re C-TC 9th Ave. P'ship),*
   113 F.3d 1304 (2d Cir. 1997) .................................................. 17, 25, 29

*E. Profit Corp. Ltd. v. Strategic Vision US LLC,*
   No. 18-CV-2185 (LJL), 2021 WL 2554631 (S.D.N.Y. June 22, 2021) ............ 15, 16

*Falk & Siemer, LLP* v. *Maddigan (In re Maddigan),*
   312 F.3d 589 (2d Cir. 2002) ................................................................ 18

*Grogan* v. *Garner,*
   498 U.S. 279 (1991).......................................................................... 18

*In re 167 West 133rd St. Hous. Dev. Fund Corp.,*
   No. 18-12043 (JLG), 2018 WL 4637460 (Bankr. S.D.N.Y. Sept. 25, 2018) ........... 23, 25

*In re 68 West 127 Street, LLC,*
   285 B.R. 838 (Bankr. S.D.N.Y. 2002) ................................................ 24, 28

*In re AdBrite Corp.,*
   290 B.R. 209 (Bankr. S.D.N.Y. 2003)...................................................... 29

*In re Am. Prop. Corp.,*
   44 B.R. 180 (Bankr. M.D. Fla. 1984) ...................................................... 18

*In re AMC Realty Corp.,*
   270 B.R. 132 (Bankr. S.D.N.Y. 2001)...................................................... 17

*In re Ancona,*
   No. 14-10532, 2016 WL 7868696 (Bankr. S.D.N.Y. Nov. 30, 2016)........ 34, 35, 36, 37

*In re Ashley River Consulting, LLC,*
   No. 14-13406 (MG), 2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015) ........... 34, 35

*In re Babayoff,*
   445 B.R. 64 (Bankr E.D.N.Y 2011)........................................................ 33

*In re Balco Equities Ltd., Inc.,*
   312 B.R. 734 (Bankr. S.D.N.Y. 2004)...................................................... 17

*In re BH S & B Holdings, LLC,*
   439 B.R. 342 (Bankr. S.D.N.Y. 2010)...................................................... 29

*In re Bonded Mailings Inc.,*
   20 B.R. 781 (Bankr. E.D.N.Y. 1982)....................................................... 35

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*In re Briarpatch Film Corp.*,
281 B.R. 820 (Bankr. S.D.N.Y. 2002) .................................................................. 24

*In re Briggs-Cockerham, L.L.C.*,
2010 WL 4866874 (Bankr. N.D. Tex. 2010) ......................................................... 29

*In re Builders Grp. & Dev. Corp.*,
No. 13-04867 (ESL), 2014 Bankr. LEXIS 2092 (Bankr. D.P.R. May 8, 2014) ...................... 31

*In re D&G Constr. Dean Gonzalez, LLC*,
635 B.R. 232 (Bankr. E.D.N.Y. 2021).................................................................. 21

*In re Eljamal*,
No. 17-CV-7870 (KMK), 2018 WL 4735719 (S.D.N.Y. Sept. 28, 2018) .............................. 38

*In re Futterman*,
584 B.R. 609 (Bankr. S.D.N.Y. 2018).................................................................. 37

*In re Gateway Access Solutions. Inc.*,
374 B.R. 556 (Bankr. M.D. Pa. 2007) .................................................................. 31

*In re G-I Holdings, Inc.*,
385 F. 3d. 313 (3rd Cir. 2004) ........................................................................ 31

*In re Halal 4 U LLC*,
No. 08–15216, 2010 WL 3810860 (Bankr. S.D.N.Y. 2010) .................................................. 31

*In re Hampton Hotel Inv'rs, L.P.*,
270 B.R. 346 (Bankr. S.D.N.Y. 2001)................................................................... 36

*In re HBA E., Inc.*,
87 B.R. 248 (Bankr. E.D.N.Y. 1988).................................................................... 22

*In re Head*,
223 B.R. 648 (Bankr. W.D.N.Y. 1998) .................................................................. 17

*In re Hostess Brands, Inc.*,
No. 12-22052 (RDD), 2013 WL 82914 (Bankr. S.D.N.Y. Jan. 7, 2013) ............................... 21

*In re Ionosphere Clubs Inc.*,
113 B.R. 164 (Bankr. S.D.N.Y. 1990).............................................................. 34, 38

*In re Island Helicopters, Inc.*,
211 B.R. 453 (Bankr. E.D.N.Y. 1997)................................................................... 23

*In re Murray*,
543 B.R. 484 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53
(2d Cir. 2018)...................................................................................... 17, 28

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Nat'l Rifle Assoc'n of Am. and Sea Girt LLC*,
No. 21-30085, 2021 WL 1970738 (Bankr. N.D. Tex. May 11, 2021) .................................... 19

*In re Red Bull Taxi Inc.*,
2017 Bankr. LEXIS 1209 (Bankr. S.D.N.Y. May 3, 2017) ..................................................... 29

*In re Rent-A-Wreck of America, Inc.*,
580 B.R. 364 (Bankr. D. Del. 2018) ........................................................................................ 19

*In re Ridgemour Meyer Props., LLC*,
413 B.R. 101 (Bankr. S.D.N.Y. 2008) ...................................................................................... 38

*In re Sakon*,
617 B.R. 7 (Bankr. D. Conn. 2020) .......................................................................................... 30

*In re Sapphire Dev., LLC*,
No. 13-50043, 2015 WL 5579545 (Bankr. D. Conn. June 26, 2015) *aff'd sub nom. Sapphire Dev., LLC v. McKay*, 549 B.R. 556 (D. Conn. 2016) .......................................................... 17, 33

*In re SGL Carbon Corp.*,
200 F.3d 154 (3d Cir. 1999) ............................................................................................... 21, 24

*In re Sillerman*,
605 B.R. 631 (Bankr. S.D.N.Y. 2019) ................................................................................ 31, 34

*In re Syndicom Corp.*,
268 B.R. 26 (Bankr. S.D.N.Y. 2001) .............................................................................. 23, 24, 26

*In re The Bridge to Life, Inc.*,
330 B.R. 351, 357 (Bankr. E.D.N.Y. 2005) ............................................................................. 22

*In re V. Savino Oil & Heating Co., Inc.*,
99 B.R. 518 (Bankr. E.D.N.Y. 1989) ....................................................................................... 34

*In re Wally Findlay Galleries (New York) Inc*,
36 B.R. 849 (Bankr. S.D.N.Y. Feb. 10, 1984) ................................................................... 21, 22

*Liona Corp., Inc.* v. *PCH Assocs., (In re PCH Assocs.)*,
949 F.2d 585 (2d Cir. 1991) ..................................................................................................... 21

*Marrama* v. *Citizens Bank of Mass.*,
549 U.S. 365 (2007) .................................................................................................................... 1

*Marsch v. Marsch (In re Marsch)*,
36 F.3d 825 (9th Cir. 1994) ...................................................................................................... 21

*Midatlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*,
4 B.R. 635 (Bankr. E.D.N.Y. 1980) .......................................................................................... 34

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Pac. All. Asia Opportunity Fund L.P. v. Wan*,
  199 A.D.3d 423 (1st Dep't 2021) ............................................................. 12

*Sapphire Dev., LLC* v. *McKay*,
  549 B.R. 556 (D. Conn. 2016) ................................................................. 23

*SEC* v. *Miller*,
  808 F.3d 623 (2d Cir. 2015) .................................................................... 19

*Taberna Preferred Funding IV, Ltd.* v. *Opportunities II Ltd. (In re Taberna Preferred Funding IV, Ltd.)*,
  594 B.R. 576 (Bankr. S.D.N.Y. 2018) ............................................... 17, 23

*Wilk Auslander LLP* v. *Murray (In re Murray)*,
  900 F.3d 53 (2d Cir. 2018) .................................................. 17, 21, 22, 23

**Statutes**

11 U.S.C. § 1104(a)(1) ............................................................................. 34

11 U.S.C. § 1104(a)(2) ............................................................................. 35

11 U.S.C. § 1112(b) ................................................................................. 16

11 U.S.C. § 1112(b)(1) ............................................................................. 33

11 U.S.C. § 1112(b)(4)(A) ........................................................................ 29

Pacific Alliance Asia Opportunity Fund L.P. ("PAX") hereby (i) moves pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order dismissing the above-captioned case; or (ii) in the alternative, partially joins in the United States Trustee's Examiner/Trustee Motion (as defined below) to the extent it requests the appointment of a chapter 11 trustee pursuant to Bankruptcy Code section 1104(a), and respectfully represents as follows:

## PRELIMINARY STATEMENT[2]

1.     This is not a proper chapter 11 case.  There is no "honest but unfortunate debtor" seeking a clean start or to use the Bankruptcy Code to reorganize.[3]  There is no business to reorganize and, taking Ho Wan Kwok (the "Debtor" or "Kwok") at his word, no value to protect. Nor is there a proverbial "race to the courthouse" among creditors seeking recoveries.  Instead, this chapter 11 case is the latest, most strident gambit of Kwok to delay, deceive, and defraud his creditors, and to continue to evade legitimate court orders.

2.     Kwok's *modus operandi* is to park, shield and secrete his assets through family members and shell companies to protect his fortune and to avoid repaying his debt to PAX.  As described in more detail below, after years of unsuccessfully trying to get Kwok to repay the loan he had personally guaranteed, PAX tracked down and sued Kwok in New York State Court, and secured a more than $116 million judgment.[4]  But that judgment didn't resolve matters, as it should have; rather, it was just the beginning of a still-ongoing cat-and-mouse game that has forced PAX to expend enormous time and resources chasing collection, as Kwok had "secreted his assets in a

---

[2] All exhibit citations are to the exhibits attached to the Declaration of Peter Friedman in Support of PAX's Motion to Dismiss ("Friedman Decl.").  The Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2 attached to the Voluntary Petition for Non-Individuals Filing for Bankruptcy [ECF No. 1] is referred to as the "Debtor's Decl." Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

[3] *Marrama* v. *Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).

[4] *See* Friedman Decl., Ex. 1, Judgment at 1, *PAX v. Kwok*, Supreme Court of the State of New York (the "New York Court"), Index. No. 652077/2017 (the "New York Action"), Dkt. No. 716 (Feb. 3, 2021).

maze of corporate entities and with family members."[5]   In fact, the New York Court noted that the case against Kwok contained "1,180 docket entries—almost all of which involve defendant Kwok['s] efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members."[6]

3.     Not only did Kwok frustrate and hinder PAX's collection efforts, he repeatedly flouted New York State court orders, which led to the entry of a $134 million civil contempt fine payable to PAX.[7]  And one day before that fine was due to be paid, Kwok filed this chapter 11 case in an obvious attempt to avoid both payment and possible incarceration for his contumacious behavior.[8]

4.     Kwok's post-petition behavior has been no better, and the Court should dismiss this case for a number of reasons:

- ***First***, Kwok is abusing the bankruptcy system.  He has no business to reorganize or liquidate, and creditors will not benefit from his attempted use of the bankruptcy process.  This case is a litigation tactic in what is essentially a two-party civil dispute. PAX is by far Kwok's largest creditor and the debt owed to PAX, and the consequences of Kwok hiding assets, impelled Kwok to file this chapter 11 case.  Of the 158 supposed creditors, only one other beside PAX has a judgment against Kwok, and the amount of that judgment is only for attorney's fees.[9]  All others are speculative potential liabilities or alleged debts owed to insiders.

---

[5] Friedman Decl., Ex. 2, Decision & Order on Motion, at 1, *PAX v. Kwok,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 1181 (Feb. 9, 2022) (the "Final Contempt Order").
[6] *Id.* at 1.
[7] *Id.* at 10.
[8] *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy, (Feb. 15, 2022) ECF No. 1.
[9] Friedman Decl., Ex. 3, March 1, 2022 Hrg. Tr. at 43:5–20.

- ***Second***, Kwok is acting in bad faith by improperly attempting to make PAX relitigate already-resolved legal issues in a new forum.[10]  Kwok's proposed debtor-in-possession financing agreement confirms his bad faith: he is proposing to borrow $8 million from family members (PAX believes this money is actually Kwok's) to protect what he asserts is an estate worth $3,850. [11]  And the vast majority of that loan will go to fight with creditors over their claims, rather than enhance creditor recoveries.

- ***Third***, Kwok's estate is diminishing and has no reasonable prospect of rehabilitation, an enumerated cause for dismissal under the Bankruptcy Code.

5.      But if the Court is unwilling to dismiss this case, PAX joins in the United States Trustee's request for appointment of a chapter 11 trustee because Kwok cannot serve as a fiduciary for creditors based on his long and disturbing record of hiding assets, playing shell games, and the conflict of interests that align himself and his family on the one hand against his legitimate creditors like PAX on the other.  A debtor-in-possession must put his non-insider creditors first, something that Kwok has shown he cannot and will not do.  As the United States Trustee noted, the Debtor's submission of self-serving filings to the Court "telegraphs the Debtor's inability and/or unwillingness to recognize and accept his obligations to provide full, complete and accurate

---

[10] As PAX will explain in greater detail in its forthcoming motion to remand, Kwok's initiation of this chapter 11 proceeding and subsequent removal of the civil action pending before the New York State Supreme Court (Index. No. 652077/2017) is a transparent attempt to re-litigate issues already decided by that court.  Specifically, Kwok inappropriately seeks to challenge (i) the New York Court's order granting summary judgment in PAX's favor on PAX's breach-of-contract claim, and (ii) the New York Court's February 9, 2022 order holding Kwok in civil contempt for failing to return the Lady May yacht—which the New York Court found Kwok "beneficially owns and controls"—to New York, and imposing a $134 million fine against Kwok.

[11] *See* Official Form 106 Summary of Assets & Liabilities & Certain Statistical Information (Mar. 9, 2022), ECF No. 78. The Court can infer two things from that proposed transaction: First, the Debtor knows that his asset disclosures are materially false and Golden Spring's cash is readily available to defend his falsehoods. Second, Golden Spring will spend massive sums to manipulate this proceeding to protect itself from alter ego, veil piercing, and substantive consolidation claims. Otherwise, spending over 2,000% of the Debtor's alleged assets to fund a chapter 11 case makes no sense.  Understood in this light, the proposed financing is further evidence of Kwok's bad faith.

information, **to fulfill fiduciary obligations** to his estate and his creditors, and to meet his obligations as a debtor in possession."[12]

## BACKGROUND

6.      PAX sued Kwok in April 2017 in New York, asserting a breach-of-contract claim under Hong Kong law against Kwok.  In April 2019, PAX added a veil-piercing claim against Genever Holdings LLC ("Genever NY") and Genever Holdings Corporation ("Genever BVI" and, together with Genever NY, the "Genever Defendants").[13]  PAX won its breach-of-contract claim in September 2020 and judgment was entered in February 2021.[14]  Since then, PAX has been attempting to collect against Kwok by focusing principally on two assets:  a New York City penthouse apartment in the Sherry-Netherland Hotel that Kwok owns through shell companies (the "Residence") and a luxury yacht called the "Lady May."

**The Parties' Relationship and PAX's Initial Loans**

7.      In early 2008, Kwok sought funding from PAX to finish construction of the Beijing Pangu Plaza, one of Kwok's real estate projects.[15]  PAX loaned Kwok's companies $100 million in two installments, which, after a series of partial repayments and extensions, by early 2011 had a balance owed of approximately $46 million.[16]

8.      On March 16, 2011, PAX and a Kwok-controlled entity named Shiny Times Holdings Limited ("Shiny Times") entered a new facility (the "2011 Loan Facility") that Kwok guaranteed (the "2011 Personal Guarantee").  These contracts superseded the parties' prior

---

[12] United States Trustee's Mot. for an Order Directing the Appointment of an Examiner or, in the Alternative, Mot. for Order Directing the Appointment of a Chapter 11 Trustee (Mar. 19, 2022) ECF No. 102 at 2 (emphasis added).
[13] Friedman Decl., Ex. 4, Amended Complaint, *PAX v. Kwok et al.,* Case No. 22-01073-dsj (Bankr. S.D.N.Y.), ECF No. 3.
[14] *See* Friedman Decl., Ex. 1.
[15] Friedman Decl., Ex. 5, Statement of Material Facts in Supp. of Pl. PAX's Mot. for Partial Summary Judgment, at ¶ 1, *PAX v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. 410.
[16] *Id.* at ¶ 23.

agreements, recapitalized the amount due as $46,426,489, and provided that interest would accrue at 15% annually until a repayment date of June 30, 2012.[17]  Under the 2011 Personal Guarantee, Kwok "irrevocably and unconditionally . . . guarantee[d] to PAX the due and punctual payment of [Shiny Times'] [o]bligations [under the 2011 Facility] and agree[d] that promptly on PAX's demand he will pay to PAX all [o]bligations that are due but unpaid."[18]  The Personal Guarantee also entitled PAX to reimbursement, including legal fees, for its enforcement efforts.[19]

9.      Neither Shiny Times nor Kwok made any payments under the 2011 Loan Facility or the 2011 Personal Guarantee by the mid-2012 deadline.[20]

10.      To resolve the outstanding debt, the parties then entered into a series of settlement agreements, but Kwok and his companies continually failed to perform their obligations thereunder.[21]  Specifically, in April 2013, PAX, Shiny Times, Kwok, and Beijing Pangu Investment Co. Ltd. ("Beijing Pangu") (another Kwok-affiliated entity) entered into a deed of settlement ("2013 Deed of Settlement"), which provided that Shiny Times' debt to PAX would be discharged in return for PAX receiving legal ownership of three apartments at Pangu Plaza (the "Apartments").[22]  The 2013 Deed of Settlement contained ten conditions precedent in connection with the sale and purchase of each of the Apartments that needed to be satisfied by June 2013, or else the settlement would terminate and the 2011 Loan Facility and 2011 Personal Guarantee would revert to being in full force and effect.[23]  PAX and Kwok subsequently executed four extensions to the 2013 Deed of Settlement, the last of which required that all ten conditions

---

[17] *Id.* at ¶ 1.

[18] Friedman Decl., Ex. 6, The 2011 Personal Guarantee, at KWOK000653, *PAX v. Kwok,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 455.

[19] *Id.* at KWOK000655.

[20] *See* Friedman Decl., Ex. 5, at ¶¶ 29–30.

[21] *See id.* at 10–17.

[22] *Id.* at ¶¶ 39–40.

[23] *Id.* at 12–13.

precedent all be satisfied by June 2015.[24]  Kwok again failed to comply by that revised deadline,[25] and the 2011 Loan Facility and 2011 Personal Guarantee reverted to being fully operative as of June 30, 2015.[26]

**Kwok Flees China and Purchases the Residence**

11.    In "late January or early February 2015," the Government of the People's Republic of China ("PRC") charged Kwok with multiple crimes, including corruption, and seized his PRC assets—among them the Beijing Pangu complex that included the Apartments.[27]  Shortly before that, in late 2014, Kwok fled China.[28]  Notably, Kwok and PAX agreed on February 10, 2015 to the fourth and final extension of the 2013 Deed of Settlement, setting a June 30, 2015 deadline to satisfy the conditions precedent.[29]

12.    On or around February 13, 2015,[30] just three days after signing the final extension with PAX, Kwok formed two shell companies:  (i) Genever NY[31] and (ii) Genever BVI.[32]  Kwok is the sole shareholder[33] and director of Genever BVI,[34] which in turn is the sole member of the

---

[24] *Id.* at ¶ 47.

[25] *Id.* at ¶¶ 54–55. Namely, Kwok failed (i) to deliver clean title, (ii) to provide PAX with an invoice for the purchase of the apartments, (iii) to provide PAX with evidence regarding the payment of relevant taxes and charges in connection with the sale and purchase of the apartments, and (iv) to deliver the house ownership certificates of any of the three apartments to PAX.  *Id.* at ¶¶ 55–59.

[26] *Id.* at ¶ 62.

[27] Friedman Decl., Ex. 7, Wengui Compl., *Wengui v. Wu*, Case No. 18-cv-00845 (S.D.N.Y.), at ¶ 57.

[28] *Id.* at ¶ 23.

[29] Friedman Decl., Ex. 8, Fourth Deed of Settlement, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 472.

[30] Friedman Decl., Ex. 9, Genever Defendants' Corporate Documents, *PAX v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 252 at SN 0159 (Genever Holdings Corporation), SN 0196 (Genever Holdings LLC).

[31] *Id.* at SN 0198–206.

[32] *Id.* at SN 0159.

[33] *Id.* at SN 0160–61; Friedman Decl., Ex. 10, Yan Ping Wang Aff., at ¶ 4 & Ex. A, *Pax v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 182.

[34] Friedman Decl., Ex. 9 at SN 0162–63.

Genever NY.[35]   Kwok then purchased—through the Genever Defendants—the Residence on March 6, 2015[36] for $67.5 million in cash.[37]

13.    Neither Genever NY nor Genever BVI has any assets,[38] employees,[39] phone number,[40] offices,[41] or source of revenue. [42]

**HK International Purchases the Lady May**

14.    Also in February 2015, Hong Kong Investments Limited ("HK International") purchased the Lady May for €28 million.  HK International is a Hong Kong company that Kwok set up and funded in 2006, before parking it in late 2014 with a family business associate for no consideration just before being criminally charged and fleeing Asia.[43]   In June of 2017, the business associate transferred HK International to Kwok's daughter, Mei Guo, for $1.[44] Subsequently, Ms. Guo established Hong Kong International Funds Investments (USA) Limited, LLC ("Hong Kong International USA"), a Delaware LLC, [45] and transferred title to the Lady May to that Delaware shell entity, once again for no consideration.[46]

---

[35] *Id.* at SN 0198–206.
[36] Friedman Decl., Ex. 11, Executed Contract of Sale at SN 0349,  *PAX v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 256.
[37] Friedman Decl., Ex. 12 at 4, *In re Genever Holdings LLC*, Case No. 20-12411-jlg (Bankr. S.D.N.Y.), ECF No. 4. Given accruing interest, this amount was almost equal to what Kwok owed to PAX at that point in time under his March 16, 2011 personal guarantee.
[38] Friedman Decl., Ex. 13, Podhaskie Dep. Tr. at 47:19–22; 100:10–101:19.
[39] *Id.* at 36:17–19; 96:18–20.
[40] *Id.* at 36:20–23; 96:21–23.
[41] *Id.* at 35:4–6; 96:10–14.
[42] *Id.* at 100:8–25.
[43] Final Contempt Order at 4.
[44] *Id*.
[45] *Id*.
[46] Hong Kong International USA is a company with "no directors, officers, or employees; [it] has no dedicated e-mail server or e-mail suffix; does not file tax returns; and has no bank account and is not otherwise 'capitalized.'" Friedman Decl., Ex. 14, June 7, 2021 letter from L. Vartan to E. Moss, *PAX v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1075.

**PAX Prevails in New York Action Breach-of-Contract Claim**

15.    On September 15, 2020, the New York Court granted partial summary judgment in PAX's favor on the breach-of-contract claim (the "Summary Judgment Order").[47]  On December 18, 2020, the New York Court awarded PAX "damages of $46,426,489.00 plus contractual interest pursuant to the 2011 Personal Guarantee at a rate of 15% per annum from effective date of December 31, 2010 and at the statutory rate of 9% per annum from the date of entry of this decision and order."[48]  The judgment was entered on February 3, 2021 as $116,402,019.57.[49]

16.    The New York Court scheduled a trial on the veil-piercing claim against the Genever Defendants for January 2021,[50] but, due to the COVID-19 pandemic, that trial subsequently was postponed indefinitely.  On October 12, 2020, Genever NY filed for chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of New York (the "Genever NY Bankruptcy Case"),[51] temporarily staying PAX's judgment efforts against Genever NY and the Genever Defendants, until that court granted stay relief to allow PAX to prosecute, and Genever NY to defend, the New York Action.[52]

---

[47] Friedman Decl., Ex. 15, Decision & Order on Motion at 7, *PAX v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 549.
[48] Friedman Decl., Ex. 16, Decision & Order on Damages, at 5, *PAX v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 685.
[49] Friedman Decl., Ex. 1 at 2.
[50] Friedman Decl., Ex. 15 at 7–8.
[51] *In re Genever Holdings,* Case No. 20-12411-jlg (Bankr. S.D.N.Y.).
[52] Friedman Decl., Ex. 17, Order Granting Debtor's Second Renewed Motion to Approve the Revised Settlement Agreement, *In re: Genever Holdings, LLC*, Case No. 20-12411-jlg (Bankr. S.D.N.Y.), ECF 141.  As explained below, PAX later successfully moved for turnover of Kwok's shares of Genever BVI under New York CPLR § 5225.  *See infra* ¶¶ 22–23.

17.    On March 4, 2021, Kwok appealed the Summary Judgment Order.[53]  The appeal is fully briefed and argued, and was pending in the New York Appellate Division, First Department, but is now stayed due to Kwok's chapter 11 filing.[54]

**Post-Judgment Collection Efforts**

18.    On September 30, 2020, the New York Court entered a temporary restraining order preventing Kwok from, among other things, "interference with any property in which he has an interest."[55]  On October 15, 2020 the New York Court permanently (i) "restrained [Kwok] from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, whether directly or indirectly, and from paying over or otherwise disposing of any debt now due or thereafter coming due to him . . . "; and (ii) specifically restrained "Mr. Kwok and/or the registered owners of (1) the Residence at the Sherry-Netherland Hotel and (2) the yacht, 'the Lady May' . . . from making or causing any sale, assignment, transfer, or interference with those assets."[56]  The New York Court also held that PAX was entitled to post-judgment discovery of the Residence and the Lady May and any other assets that Kwok directly or indirectly owns.[57]

19.    PAX then undertook a year-long effort to enforce its judgment,[58] during which time "PAX encountered difficulty identifying assets over which Kwok exercised control because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members.  This scheme has enabled Kwok to assert that he has no assets despite his

---

[53] Friedman Decl., Ex. 18, Notice of Appeal, *PAX v. Kwok.,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 725.
[54] *See* Friedman Decl., Ex. 19, Appellant's Br., *PAX v. Kwok.,* Case No. 2021-00740 (N.Y. App. Div.), Dkt. No. 12; Friedman Decl., Ex. 20, Respondent's Br., *PAX v. Kwok.,* Case No. 2021-00740 (N.Y. App. Div.), Dkt. No. 14; Friedman Decl., Ex. 21,  Reply Br., *PAX v. Kwok.,* Case No. 2021-00740 (N.Y. App. Div.), Dkt. No. 16.
[55] Friedman Decl., Ex. 22, Decision & Order on Motion, *PAX v. Kwok.,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 591.
[56] Friedman Decl., Ex. 23, Decision & Order on Motion, at 1, *PAX v. Kwok,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 630.
[57] *Id.* at 2.
[58] Final Contempt Order, at 1.

lavish lifestyle . . ."[59]  PAX's efforts were further thwarted by Kwok's invocation of his Fifth Amendment right in connection with PAX's post-judgment discovery requests.[60]

20.    One of the funding sources from which PAX sought discovery was Golden Spring (New York) Limited ("GSNY").

21.    GSNY purportedly is wholly owned by a Hong Kong company,[61] which (like other companies in which Kwok shields his assets) is technically owned by Kwok's son, Qiang Guo,[62] and allegedly is the Kwok "family office."[63]  Kwok has conceded that (i) when he fled China, he set up GSNY and funded it with his own money,[64] and (ii) GSNY paid all of his personal expenses and funds his litigation.[65]  The New York Court observed that it was "quite undisputed that [GSNY] has funded seven-figure payments to facilitate Mr. Kwok's lifestyle, and Mr. Kwok leads a rather extravagant lifestyle, [despite] purport[ing] to have zero assets whatsoever."[66]

**Genever BVI Turnover Proceedings**

22.    Because they were the sole asset Kwok admitted to owning, PAX moved for turnover of Kwok's shares in Genever BVI, the ultimate owner of the Residence, under CPLR

---

[59] *Id.*

[60] *Id.* at 9.

[61] Friedman Decl., Ex. 24, Aff. of Kwok Ho Wan in Supp. of Pl.'s Opp'n to Def.'s Mot. to Dismiss the Compl., *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 764 at ¶ 33.

[62] *See* Friedman Decl., Ex. 25, Kwok Dep. Tr. at 63:19–20, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 785.

[63] Final Contempt Order, at 5; Friedman Decl., Ex. 26, Feb. 2, 2022 Hr'g Tr. at 79:4–7, *PAX v. Kwok et al.,* Index No. 652077/2017, (N.Y. Sup. Ct.) (Stockil testifying that direction comes "through the family office," which "is called Golden Spring").

[64] Friedman Decl., Ex. 24 at ¶ 36 ("In April 2015, Mr. Wong, Ms. Fu, and Ms. Lam assisted me with setting up Golden Spring New York by transferring funds from one of my accounts at UBS to Golden Spring New York's JPMorgan Chase bank account in New York.").

[65] *See* Friedman Decl., Ex. 27, Feb. 1, 2021 Letter from M. Carvalho, counsel for Kwok, to E. Moss, counsel for PAX, at 2, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 765; Decl. of Mr. Ho Wan Kwok In Supp. of the Chapter 11 Case & Certain Motions, ECF No. 107 at ¶¶ 17, 18, 35.

[66] Friedman Decl., Ex. 28, May 27, 2021 Hr'g Tr. at 9:25–10:3, *PAX v. Kwok et al.,* Index No. 652077/2017, (N.Y. Sup. Ct.). In connection with the same discovery motion, the court said that Kwok "ha[d] exhausted the Court's patience with his antics," and that "Kwok believes that these court proceedings are a game of evasion" "that he wants to play."  *Id.* at 9:1–3, 9:23–24.

§ 5225.[67]  On September 22, 2021, the New York Court granted PAX's motion (the "Genever Turnover Order") and, subject to the BVI court modifying certain restraining orders it previously had issued (which it did in early December 2021), required Kwok to "take whatever steps are necessary in the British Virgin Islands to turn[]over all share certificates with respect to his 100% ownership interest in Genever Holdings Corporation."[68]  Kwok did not appeal the Genever Turnover Order.

23.    When Kwok failed to initiate the turnover of his shares, PAX moved for another order of civil contempt.[69]  That motion was fully briefed on January 25, 2022.[70]  When Kwok filed this chapter 11 case, PAX, at the recommendation of the New York Court,[71] withdrew its motion without prejudice.[72]

**The Lady May Contempt Proceedings**

24.    Despite the New York Court's orders restraining Kwok and/or the registered owners of the Lady May from removing the yacht from the court's jurisdiction, Kwok allowed the Lady May to flee New York on or around October 9, 2021.[73]  PAX moved for, and the New York Court granted, PAX's motion for civil contempt on March 16, 2021, explaining that "it is clear that there has been an intolerable amount of gamesmanship, dissembling, and deceit in proceedings

---

[67] *See* Friedman Decl., Ex. 29, PAX's Mot. for a Turnover Order Against Def. Miles Kwok & Appointment of a Receiver, *PAX v. Kwok et al.,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 846.

[68] Friedman Decl., Ex. 30, Decision & Order on Post-Judgment Turnover, at 1, *PAX v. Kwok et al.,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 904.

[69] Friedman Decl., Ex. 31, Notice of Motion for Order of Civil Contempt for Failure to Comply with Court's Turnover Order, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1078.

[70] Friedman Decl., Ex. 32, PAX's Reply Mem. of Law in Further Supp. of Mot. for Order of Civil Contempt, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1116.

[71] Friedman Decl., Ex. 33, Feb. 18, 2022 Court Notice, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1191; Freidman Decl., Ex. 34, Suggestion of Bankruptcy, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1190.

[72] Friedman Decl., Ex. 35, Decision & Order on Voluntary Withdrawal of Contempt Motion, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1193.

[73] Friedman Decl., Ex. 36, Decision & Order of Conditional Contempt, at 2, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 728.

before this New York Court relating to the whereabouts and ownership of the yacht 'Lady May' . . . . Rather than catalogue the many 'shell games' defendant Kwok has engaged in with the assistance of counsel who should know better," "[f]or every day the yacht is outside the jurisdiction of this Court after May 15, 2021, defendant Kwok will be fined $500,000."[74]

25.    Kwok appealed the New York Court's March 16, 2021 order to the First Department, but remained in contempt for 268 days.[75]  The First Department affirmed the New York Court's order on November 4, 2021, finding that "[t]he motion court acted within its discretion in holding defendant in civil contempt, as plaintiff established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights."[76]  The First Department held that "the daily fine of $500,000.00 was intended to strongly encourage [Kwok] to purge himself of the contempt, which, despite being permitted to accomplish, he has shown no interest in doing."[77]  The First Department also "instructed" the New York Court "to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht."[78]

26.    That evidentiary hearing was held on February 2, 2022, and the New York Court heard testimony from seven witnesses, including Kwok's daughter, the purported owner of the Lady May.[79]  On February 9, 2022 the New York Court issued a final Order of Civil Contempt (the "Yacht Contempt Order").[80]  The New York Court found that "Kwok exercised dominion and

---

[74] *Id.*

[75] *Pac. All. Asia Opportunity Fund L.P. v. Wan*, 199 A.D.3d 423, 423 (1st Dep't 2021).

[76] *Id*.

[77] *Id.*

[78] *Id.*  Kwok filed a Motion for Leave to Appeal to the Court of Appeals on December 3, 2021, which was denied by the First Department on January 20, 2022. Friedman Decl., Ex. 37, Order, *PAX v. Kwok,* Case No. 2021-01010 (N.Y. App. Div.), Dkt. No. 22.

[79] Friedman Decl., Ex. 38, Third Interim Decision + Order on Conditional Contempt, *PAX v. Kwok et al.,* Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 1098.

[80] Final Contempt Order at 1.

control over [] the Lady May"[81] and that "[t]he testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[82]

27.    The New York Court imposed a $134 million fine, based on the "268 days," "[a]s of February 7, 2022," that "the Lady May ha[d] remained outside the jurisdiction of the Court."[83] The New York Court ordered Kwok to remit the $134 million to PAX within five business days, noting that the Court would be "prepared to exercise its full authority Judiciary Law § 753," New York's civil contempt provision.[84]

28.    On February 14, 2022, Kwok filed a notice of appeal of the Yacht Contempt Order and requested an emergency interim stay pending appeal.[85]    The Appellate Division, First Department denied Kwok's request the next day.[86]

29.    Also on February 14, 2022, Kwok borrowed $1 million and used it to pay Brown Rudnick as a retainer fee in connection with this chapter 11 case—a final pre-bankruptcy act of contempt in violation of the New York Court's October 15, 2020 restraining order.[87]

---

[81] *Id.* at 2.
[82] *Id.* at 4.
[83] *Id.* at 10.
[84] *Id.* at 10; *see also* Friedman Decl., Ex. 39, Final Order of Civil Contempt, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1182.
[85] Friedman Decl., Ex. 40, Notice of Appeal, *PAX v. Kwok,* Case No. 2022-00609 (N.Y. App. Div., First Dep't), Dkt. No. 1.
[86] *See* Friedman Decl., Ex. 41, Summary Statement on Application For Expedited Service and/or Interim Relief, *PAX v. Wan*, Case No. 2022-00609 (App. Div., First Dep't), NYSCEF Doc. No. 5.
[87] *See Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs*, ECF No. 77 at 13 ("Lamp loaned the Debtor $1 million, and the Debtor directed Lamp to remit the proceeds of the loan directly to Brown Rudnick" as a retainer fee in connection with these proceedings). *See also id.*, at 17 (documenting two payments pf $500,000 by Lamp, on behalf of Kwok, to Brown Rudnick LLP on 2/14/2022 and 2/15/2022).  Lamp Capital LLC is also an insider of the Debtors.

**Kwok Files For Bankruptcy**

30.    The evening before the contempt fine was due to be paid, Kwok filed this chapter 11 case.[88]   Although Kwok represents under oath that he has only $50,001 to $100,000 in assets[89]—omitting the valuable Lady May, which remains outside of the United States,[90] unsupervised by any trustworthy fiduciary—Kwok did not file for bankruptcy when the $116 million judgment in PAX's favor was rendered against him on the underlying breach of contract claim.

31.    On March 19, 2022, the United States Trustee filed the *United States Trustee's Motion for an Order Directing the Appointment of an Examiner or, in the Alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee* [ECF No. 102] (the "Examiner/Trustee Motion").

32.    On March 20, 2022, the Debtor filed the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions* [ECF No. 107] (the "Kwok Declaration"). The Kwok Declaration shows that Kwok's purpose in this chapter 11 case is to relitigate issues previously determined by the New York Court, including the validity of his personal guaranty and his ownership of the Lady May.[91] As described below, the attempt to relitigate these issues is not a proper use of the bankruptcy system.

---

[88] *See* Voluntary Chapter 11 Petition, ECF No. 1.

[89] Voluntary Chapter 11 Petition, ECF No. 1 at 7. Notably, this representation is itself inconsistent with his subsequently filed Summary of Assets, filed on March 9, 2022 (ECF No. 78 at 1), which thereafter listed his aggregate assets at only $3,850, and his interest in the payments made on his behalf  to retain Brown Rudnick's services. *See Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs*, ECF 77 at 17 (documenting two payments pf $500,000 by Lamp, on behalf of Kwok, to Brown Rudnick LLP on 2/14/2022 and 2/15/2022).

[90] Friedman Decl., Ex. 42 (location of Lady May as of April 6, 2022).

[91] *See, e.g.*, ECF No. 107, Kwok Declaration at ¶ 41 (stating that ownership of the Lady May is an issue that "will be presented squarely to this Court for appropriate resolution.").

33.    On March 22, 2022, the Debtor filed the *Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief* [ECF No. 117] (the "Kwok DIP Motion").  In the Kwok DIP Motion, Kwok continued his pattern of deception, claiming that the proposed debtor-in-possession loan was not from an insider, even though the lender is Golden Spring.[92]

**The Eastern Profit Case**

34.    In addition to the facts set out above, the Court should consider relevant findings of fact in the *Eastern Profit* case—a matter involving another one of Kwok's shell companies.[93] That case confirms Kwok's history of misbehavior, and casts further doubt on representations Kwok and his counsel have made to this Court.  For example, although Kwok claims he is a dissident persecuted by the Chinese Communist Party (the "CCP"),[94] the *Eastern Profit* court concluded that there was "no clear and convincing evidence as to whether [Kwok] is a supporter or opponent of the CCP," after hearing extensive evidence.[95]

35.    There, one of Kwok's shell companies, Eastern Profit Corporation Limited ("Eastern Profit"), filed a breach-of-contract claim against Strategic Vision US LLC ("Strategic Vision").  Eastern Profit had hired Strategic Vision to collect intelligence on Chinese government officials.[96]   During contract negotiations, Kwok indicated that "to protect his confidentiality and anonymity, he would not sign or be a party to the Agreement but that a separate entity would sign

---

[92] *See* Checklist for Motions and Orders for Use of Cash Collateral and Post-Petition Financing at § (6)(e), attached as Exhibit C to the Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings and (III) Granting Related Relief, ECF No. 117.
[93] *See E. Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL), 2021 WL 2554631, at *1 (S.D.N.Y. June 22, 2021) (Liman, J.).
[94] Kwok Declaration, at ¶ 4; Friedman Decl., Ex. 3, March 1, Hrg. Tr. at 15:20–25.
[95] *E. Profit Corp.* 2021 WL 2554631, at *18..
[96] *Id.* at *2.

and be a party."[97]  Kwok later tried to distance himself from Eastern Profit, but the court held that it was a "shell for [Kwok] and his family."[98]  The court reasoned "[a]t the time, Eastern was registered to the same address as [Kwok's] family office in Hong Kong. It is now registered to an address that is also the residential address of [Kwok's] daughter."[99]  The court also pointed out that although the company was held by a third party at the time the parties entered into the contract, it was since transferred to Kwok's daughter for no consideration.[100]  Additionally, the court held that Kwok directed transfers of funds in and out of shell companies and had shell companies make gifts on his behalf.[101] The parallels here are unmistakable.

## JURISDICTION

36.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory bases for the relief requested herein are Bankruptcy Code sections 1104 and 1112.

## RELIEF REQUESTED

37.    Pursuant to Bankruptcy Code section 1112(b), PAX requests entry of an order dismissing the above-captioned chapter 11 case.  In the alternative, pursuant to Bankruptcy Code section 1104(a), PAX requests that the Court appoint a chapter 11 trustee.

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THE PETITION FOR CAUSE.**

38.    Under Bankruptcy Code section 1112(b), this Court can dismiss a chapter 11 petition for "cause."  11 U.S.C. § 1112(b).

---

[97] *Id.* at *7.
[98] *Id.*
[99] *Id.*
[100] *Id.*
[101] *Id.* at 1, 6, 12, 28.

39.     The Bankruptcy Code contains sixteen non-exhaustive examples of cause and also vests the Court with considerable discretion to dismiss this bankruptcy case for any "unenumerated cause."[102]   Four distinct instances of cause are directly applicable here: the first two are unenumerated and the final two are enumerated in section 1112(b)(4).   ***First***, the Debtor's bankruptcy case is an abuse of the bankruptcy system for illegitimate purposes—it provides no benefit to creditors and is a dilatory litigation tactic in what is essentially a two-party dispute with PAX.   ***Second***, the Debtor's chapter 11 case was filed in bad faith.   ***Third***, Kwok's self-proclaimed $3,850 estate continues to diminish while its prospects for "rehabilitation" are non-existent, providing cause for dismissal under Bankruptcy Code section 1112(b)(4)(A).   ***Fourth***, Kwok's behavior constitutes "gross mismanagement of the estate," as set forth in Bankruptcy Code section 1112(b)(4)(B).

### A.     The Court Should Dismiss the Petition for Cause Because Kwok Is Misusing the Bankruptcy System.

40.     Misuse of the Bankruptcy Code constitutes "cause" for dismissal.   *Wilk Auslander LLP v. Murray (In re Murray)*, 900 F.3d 53, 60–61 (2d Cir. 2018) (*citing In re Head*, 223 B.R. 648, 653–54 (Bankr. W.D.N.Y. 1998) (dismissing for an "unenumerated cause")); *Taberna Preferred Funding IV, Ltd.* v. *Opportunities II Ltd. (In re Taberna Preferred Funding IV, Ltd.)*, 594 B.R. 576, 602 (Bankr. S.D.N.Y. 2018) (finding cause where "no bankruptcy purpose is served by this filing" and dismissing petition).   The Court should dismiss this chapter 11 case because

---

[102] *See In re Murray*, 543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018); *In re AMC Realty Corp.*, 270 B.R. 132, 147 (Bankr. S.D.N.Y. 2001) (dismissing chapter 11 case for "non-enumerated cause"); *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 748–49 (Bankr. S.D.N.Y. 2004) (observing that "cause" under section 1112(b) "may be found based on unenumerated factors").   By having discretion to dismiss for non-enumerated causes, courts can use their "equitable powers to reach an appropriate result in individual cases."   *C-TC 9th Ave. P'ship* v. *Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 n.5 (2d Cir. 1997).   *See also, In re Sapphire Dev., LLC*, No. 13-50043, 2015 WL 5579545, at *3 (Bankr. D. Conn. June 26, 2015), *aff'd sub nom. Sapphire Dev., LLC v. McKay*, 549 B.R. 556 (D. Conn. 2016).

Kwok is misusing the bankruptcy system for at least three reasons under well-settled controlling authority.

### (i)    Kwok's Purposes for the Chapter 11 Case Are Illegitimate

41.    *First*, this is not a legitimate reorganization.  "[A] central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan* v. *Garner*, 498 U.S. 279, 286 (1991).  As the Second Circuit has emphasized, "the general purpose of bankruptcy law is to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all his debts." *Falk & Siemer, LLP* v. *Maddigan (In re Maddigan)*, 312 F.3d 589, 596 (2d Cir. 2002).  To that end, "debtors seeking protection of the Bankruptcy Court must have real debt, real creditors, and a legitimate business purpose." *In re Am. Prop. Corp.*, 44 B.R. 180, 182 (Bankr. M.D. Fla. 1984).

42.    This case represents a classic misuse of the bankruptcy process.  Here, Kwok has no legitimate business purpose for this chapter 11 case and is not seeking a new opportunity to engage in any future business.  The articulated purpose for this bankruptcy case is to "allow a reasoned vetting of all pertinent demonstrable case facts, without prejudicing any creditor's economic rights."[103]  Kwok's own words prove the case for dismissal.  If no creditor's economic rights are to be prejudiced, then all creditors will be paid in full (presumably by Kwok or his family members).  A chapter 11 case is not needed to do that.  Instead, what Kwok really wants is another bite at the litigation apple—that is, for this Court to "vet" Justice Ostrager's findings and prevent Justice Ostrager from making new findings.  But, the vetting of the facts has either already occurred

---

[103] Decl. of Mr. Ho Wan Kwok In Supp. of the Chapter 11 Case & Certain Motions, ECF No. 107 at ¶ 4.

or can occur in the applicable non-bankruptcy fora.  The New York Court—on the basis of an extensive, multi-year evidentiary record and, with respect to Kwok's contempt of court, a live trial—already has determined that Kwok owes PAX hundreds of millions of dollars.  Relitigating those facts established by competent authority is not a valid bankruptcy purpose, but rather, as discussed below, an improper litigation tactic aimed at delaying and evading judgment enforcement.

43.    The other principal purpose of this chapter 11 case—to avoid incarceration or the other consequences of Kwok's civil contempt—is equally anathema to the purposes of the Bankruptcy Code.  "[T]he Bankruptcy Code does not provide sanctuary from this kind of threat." *In re Nat'l Rifle Assoc'n of Am. and Sea Girt LLC*, No. 21-30085, 2021 WL 1970738, at *14 (Bankr. N.D. Tex. May 11, 2021).

### (ii)    Kwok's Chapter 11 Case Fails to Preserve Value for Creditors

44.    *Second*, Kwok's chapter 11 case does not provide  value to creditors that would be lost outside of bankruptcy.  As a Delaware bankruptcy court explained, a bankruptcy case must "seek to create or preserve some value that would otherwise be lost—not merely distributed to a different stakeholder—outside of bankruptcy."  *In re Rent-A-Wreck of America, Inc.,* 580 B.R. 364, 373 (Bankr. D. Del. 2018) (dismissing a chapter 11 petition filed shortly after a contempt order was issued after years of litigation unfavorable to debtors, whose "sole motive" was to reject a franchise agreement it had been unsuccessful in terminating).  Value is often created in chapter 11 by "centraliz[ing] all disputes concerning property of the debtor's estate," which is "one of the core purposes of bankruptcy."  *SEC* v. *Miller*, 808 F.3d 623, 630 (2d Cir. 2015).  But Kwok is barely making an effort to do so.  Kwok expressly disclaims having any valuable assets other than a few business suits and a dog—including his continued protestation that he has no ownership in

or control over the Lady May.[104]  Also, notwithstanding his prior representations that he (and/or his shell companies) owns the Residence, he now avers that he has no economic interest in it.[105] And in any event, Kwok and his family are attempting to have claims regarding the Residence resolved in the Genever NY Bankruptcy Case (or a proceeding in the British Virgin Islands), not here.

45.      Although Kwok makes a feeble nod to the concept of a "race to the courthouse" among "competing" unsecured creditors,[106] this notion makes no sense given that this chapter 11 case was, in Debtor's own words, commenced with the "clear intention of satisfying his creditors' allowed claims in full,"[107] using funds Kwok will receive purportedly from his family members or his speculative litigation claims.  If creditor claims (all of which arise under non-bankruptcy law) can be satisfied in full without using estate assets, this chapter 11 case serves no point.  With the exception of the PAX litigation, roughly two dozen cases against the Debtor represent independent, contingent claims that, although they ultimately might yield claims against Debtor's property, have not yet resulted in disputes over Kwok's assets.[108]  These cases have no apparent common nucleus of operative facts or overlapping legal issues.  Thus, with designs to pay these claims in full out of purported non-estate assets, Kwok's chapter 11 case is a transparent attempt at improper forum shopping.

46.      Indeed, the PAX litigation is essentially the *only* dispute over satisfying a current, non-contingent creditor—there is no risk of creditors overrunning the debtor and precluding their equal treatment.  The questions surrounding what constitutes property available to judgment

---

[104] *See, e.g.*, *id.* at ¶ 41.
[105] *Id.* at ¶ 17 (stating that he "hold[s] the interest in the Sherry-Netherland apartment in trust for my son").
[106] *Id.* at ¶ 4.
[107] Debtor's Motion to Extend Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs, ECF 27, at ¶ 12.
[108] Kwok Declaration, at 10–12.

creditors have either already been litigated or otherwise may most easily be litigated in their existing jurisdictions.

> ### (iii) Kwok's Bankruptcy Petition Is Fundamentally a Litigation Tactic in a Two-Party Dispute

47.     *Third*, and relatedly, courts dismiss bankruptcy petitions where the filing of a case under the Bankruptcy Code is a "litigation tactic" in a "two-party dispute."  *In re Murray*, 900 F.3d at 60–61 (holding that such misuse is "cause" for dismissal, whether or not classified as "bad faith"); *see also In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) ("Because filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' courts have typically dismissed Chapter 11 petitions under these circumstances . . . .") (quoting *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994)); *In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. 232, 240 (Bankr. E.D.N.Y. 2021) ("[U]se of the bankruptcy process merely as a platform to delay the lawful exercise of state law rights and attack final orders of other courts, warrants dismissal [. . .].").  "A bankruptcy proceeding by its very nature requires collective action," *Liona Corp., Inc.* v. *PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 605 (2d Cir. 1991), and "the bankruptcy process . . . is a multi-party process, and not just a simple two-party dispute."  *In re Hostess Brands, Inc.*, No. 12-22052 (RDD), 2013 WL 82914, at *3 (Bankr. S.D.N.Y. Jan. 7, 2013).  This sham filing has nothing to do with collective action or multiple parties.  It is about Kwok frantically trying to extricate himself from the consequences of the breach-of-contract and civil contempt judgments entered in PAX's litigation against him.

48.     The bankruptcy court's decision in *In re Wally Findlay Galleries (New York) Inc.* bears special emphasis. 36 B.R. 849, 851 (Bankr. S.D.N.Y. Feb. 10, 1984).  The court there dismissed the bankruptcy because, like here, (i) the petition was filed around the same time of an

adverse ruling in the underlying litigation in attempt to avoid the consequences of that ruling, and

(ii) there was no valid reorganization prospect:

> It is clear that the debtor did not file its petition to reorganize, but rather as a litigating tactic in its dispute with [the creditors]. The petition was filed the same day that judgments on the promissory notes were entered in the state court . . . ***The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating.*** . . . The debtor is unable to propose a meaningful plan of reorganization until its litigation with [the creditors] is resolved. Thus, it is evident that the debtor seeks to use this court not to reorganize, but to relitigate. ***This is an impermissible use of Chapter 11 of the Bankruptcy Code.***

*Id.* (emphasis added).

49.     Here, the judgment Kwok is running from is a two-party dispute "involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11." *In re The Bridge to Life, Inc.*, 330 B.R. 351, 357 (Bankr. E.D.N.Y. 2005) (quoting *In re HBA E., Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988)).

50.     *Murray* is also instructive. There, a creditor filed an involuntary Chapter 7 petition against an individual to enforce a judgment where the debtor's sole asset was an apartment he owned with his wife. *In re Murray*, 900 F.3d at 53, 57. The creditor was prohibited under state law from enforcing the judgment against the wife's interest, and so sought bankruptcy remedies that could force the sale of the entire apartment. *Id.* The court dismissed the petition as an improper use of the bankruptcy system for two principal reasons: (i) the petitioning creditor was not substantially prejudiced by relying on non-bankruptcy remedies, and (ii) the interest of the debtor and the bankruptcy system as a whole would be advanced by dismissal. *Id.* at 61.

51.     The same is true here. Kwok would not be prejudiced by finally having to answer for a debt he agreed to guarantee nearly a decade ago. PAX easily proved its breach-of-contract claim, and the time has come for Kwok to repay. The only "prejudice" to Kwok, if any, from

dismissing this chapter 11 case is that he will not be able to perpetuate his ongoing shell game before this Court and will have to return to Justice Ostrager, who has already made clear that he will not tolerate any further gamesmanship. As in *Murray*, Kwok's mere "preference for bankruptcy remedies to solve (or more accurately here, to avoid the consequences of) a two-party dispute cannot outweigh the lack of any other bankruptcy-related purpose." *Id.* at 62. Moreover, the bankruptcy system has no interest in keeping this case, which, as explained above, serves no bankruptcy-related purpose. *See In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. at 602, 606 (following *Murray* and dismissing involuntary chapter 11 petition for unenumerated cause).

**B.     The Court Should Dismiss This Chapter 11 Case as a Bad Faith Filing.**

52.     "It is well-settled that the filing of a bankruptcy petition in bad faith constitutes cause for dismissal or conversion of a case under the Bankruptcy Code section 1112(b)." *In re 167 West 133rd St. Hous. Dev. Fund Corp.*, No. 18-12043 (JLG), 2018 WL 4637460, at *8 (Bankr. S.D.N.Y. Sept. 25, 2018); *Baker* v. *Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 228 (2d Cir. 1991) ("[B]ankruptcy filings must be made in good faith."). And "courts that consider bad faith to be cause to dismiss often classify . . . inappropriate use [of the Bankruptcy Code] as evidence of bad faith." *In re Murray*, 900 F.3d at 60. The good-faith requirement is thus a "policing mechanism" to ensure that those who seek bankruptcy relief "do so only to accomplish the aims and objectives of bankruptcy reorganization philosophy and for no other purpose." *In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) (quoting *In re Island Helicopters, Inc.*, 211 B.R. 453, 462 (Bankr. E.D.N.Y. 1997)). "Bankruptcy is an equitable remedy. When it is invoked to accomplish ends inconsistent with its equitable purposes, the bankruptcy court must dismiss the proceeding." *Sapphire Dev., LLC* v. *McKay*, 549 B.R. 556, 558 (D. Conn. 2016). The "good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons . . . available only to those debtors and

29

creditors with clean hands." *In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999). Here, Kwok's unclean hands preclude his use of this Court to further delay and defraud creditors.

53.    Since lack of good faith does not lend itself to precise definition, courts "may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions." *In re Syndicom Corp.*, 268 B.R. at 49. Once the good faith of a debtor is called into question, the burden shifts to the debtor to demonstrate that the petition was filed in good faith. *Id.*

54.    Kwok has engaged in a protracted wrongful pattern and practice of evading the repayment of his debts to PAX. Kwok filed this chapter 11 case immediately upon facing the consequences of the civil contempt order against him. He did so to have another bite at the apple in a different forum before a different judge. As noted above, Kwok's chapter 11 filing is accurately characterized as an attempt to relitigate his losses before Justice Ostrager. This is the essence of bad faith. *See In re Briarpatch Film Corp.*, 281 B.R. 820, 834–35 (Bankr. S.D.N.Y. 2002) (finding bad faith when the reason for filing bankruptcy was to relitigate merits of state court decision).

55.    As discussed above, the Court need not reach the bad-faith inquiry because it can and should dismiss this chapter 11 case for the independent reason that Kwok is seeking to misuse the bankruptcy system. In any event, it is difficult to imagine a more compelling example of bad faith than this chapter 11 case, where Kwok is brazenly abusing judicial process.

56.    As courts within the Second Circuit have observed, the "critical" test for a debtor's lack of good faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor would emerge from bankruptcy. *In re 68 West 127 Street, LLC*, 285 B.R. 838, 846 (Bankr. S.D.N.Y.

2002).  Thus, a lack of good faith requires both (i) subjective bad faith—"meant to insure that the Debtor actually intends to use chapter 11 to reorganize . . . and not simply to cause hardship or delay"—and (ii) objective futility—"whether a reorganizing is realistically possible."  *In re 167 West 133rd St. Hous. Dev. Fund Corp.*, No. 18-12043 (JLG), 2018 WL 4637460, at *8, 10 (Bankr. S.D.N.Y. Sept. 25, 2018).  PAX can establish both elements here.

### (i)   Subjective Bad Faith

57.    Kwok is acting in bad faith because he does not intend to use the bankruptcy to reorganize.  Self-evidently, there is nothing to reorganize.  Kwok asserts that, aside from a few business suits and a dog, he has no personal assets (other than speculative litigation claims) and will rely on "gifts" from family members to satisfy in full claims against him.  What Kwok actually wants is to forestall contempt sanctions, and to relitigate cases he has previously lost with the ultimate goal of frustrating (or at least delaying) PAX's ability to collect on its judgments.

Courts consider the eight bad-faith factors laid out in *C-TC*:

(1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P-Ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997).

58.    Courts also consider four additional factors set forth in *Syndicom*: (1) whether the case was filed as a "tactical" step in connection with the debtor's state court battles; (2) whether there was financial pressure on the debtor occasioned by a creditor other than the counterparty to the two-party dispute, or financial distress as a consequence of other creditors' claims; (3) whether

unsecured creditors would not benefit in any material way from the debtor's filing and would not be prejudiced in any material way as a result of relief from the stay; and (4) whether the case was filed with the purpose and effect of securing benefits for non-debtor individuals in contrast to securing benefits for the debtor. *Syndicom*, 268 B.R. at 52–53.

59. Here, as set forth below, ***almost all*** of the factors weigh in PAX's favor:

| | |
|---|---|
| ***C-TC* Factor 1:**<br><br>Single Asset | Kwok claims to have title only to *de minimis* assets with only contingent litigation claims (for which he needs funds from debtor-in-possession financing from his family members to prosecute). By his telling, he will rely on "gifts" from his family to satisfy creditor claims rather than using his own assets. Although there is obvious reason to doubt the veracity of Kwok's claims that the money he is using is not his own (which PAX intends to prove at an appropriate time), by Kwok's own word, this factor weighs against him. |
| ***C-TC* Factor 2:**<br><br>Few, Relatively Small Unsecured Creditors | The petition has nothing to do with protecting secured creditors or legitimate unsecured creditors. If anything, PAX's claim, which has been liquidated and was on the cusp of reaching Kwok's hidden assets, is harmed by this chapter 11 case. For purposes of this factor, given the size and status of PAX's claim and the absence of any secured creditors, PAX is tantamount to a secured creditor. Kwok has no interest in using estate assets to protect his other contingent creditors. |
| ***C-TC* Factor 3:**<br><br>Asset Subject to Foreclosure | Before this case, PAX was targeting the *Lady May* to partially satisfy its judgment in New York. The Residence is currently subject to the Genever NY Bankruptcy Case. In both cases, Kwok claims these assets do not belong to him (despite his numerous representations to the contrary). |
| ***C-TC* Factor 4:**<br><br>Financial Condition Essentially from Two-Party Dispute That Can Be Resolved in Pending State Action | This case should be seen as a classic two-party dispute that began with a litigation filed 2017 and ultimately resolved in 2021, and was precipitated by Kwok's obvious effort to evade the serious consequences of a final civil contempt order. Even after entry of the Summary Judgment Order against Kwok, he did not seek bankruptcy protection despite his claim he would never be able to pay that debt. Even when he was being fined $500,000 per day for being in contempt of court, he did not seek bankruptcy protection despite his assertion he would never be able to pay *that* debt. Only when confronted with severe contempt sanctions—when his litigation defenses were exhausted—did Kwok hastily file this chapter 11 case. |

| *C-TC* **Factor 5:**<br><br>Timing of Filing Evidences Intent to Delay or Frustrate Legitimate Enforcement | The petition's timing makes plain that this chapter 11 case is an attempt to avoid the New York Court order and frustrate PAX's legitimate efforts to enforce its rights as a judgment creditor. This factor weighs extremely heavily in favor of dismissal, because the timing of Kwok's filing was motivated by something far worse than frustration of a secured creditor's rights: this case was filed to undermine the rule of law and allow Kwok to circumvent compliance with a court-ordered sanction. Moreover, this chapter 11 case was filed in an effort to keep the Lady May outside of the United States and in the hands of Kwok's family members, rather than being returned to and secured within the jurisdiction for use as an asset to satisfy creditor claims. |
|---|---|
| *C-TC* **Factor 6:**<br><br>Little or No Cash Flow | Kwok claims to have no material cash flows other than gifts or loans from family. |
| *C-TC* **Factor 7:**<br><br>Cannot Meet Current Expenses | Kwok claims to have no assets at all (other than a few business suits, a dog and some speculative litigation claims) and no living expenses. |
| *C-TC* **Factor 8:**<br><br>No Employees | Kwok has represented under oath that he has no business, employees or operations. |
| *Syndicom* **Factor 1:**<br><br>Case Filed as Tactical Step in State Court Battles | Given the timing and the petition's stated purpose—re-litigating state court claims—it is an obviously improper "tactical step" in Kwok's dispute with PAX. |
| *Syndicom* **Factor 2:**<br><br>Financial Pressure Other Than Two-Party Dispute | There was no financial pressure on Kwok from any creditor other than PAX. All of the other creditors are unliquidated, *de minimis*, or insiders. |
| *Syndicom* **Factor 3:**<br><br>Unsecured Creditors Benefit or Prejudiced by Filing or Relief from Stay | This chapter 11 case will not help any legitimate unsecured creditors but will materially prejudice the largest unsecured creditor with a major claim: PAX has an enforceable breach-of-contract judgment and an enforceable contempt judgment. Kwok's only purpose in filing the petition is to gain a new forum in which to try to argue that he has no assets to satisfy those judgments—the precise type of shell game that Justice Ostrager said must stop. |

| ***Syndicom* Factor 4:**<br><br>Case Filed for Securing Benefits for Non-Debtors, Not Creditors | The only purpose of this chapter 11 case was to benefit Kwok and his family. It was not filed to benefit any legitimate creditor.  Kwok is disavowing assets he has either been found by a court of competent jurisdiction to own (i.e., the *Lady May*) or assets, like the Residence and the shares of Genever BVI, that he has held himself out to own.<br><br>Rather than marshaling it for creditors, Kwok is fighting to keep the *Lady May* in his family's possession.  Additionally, Kwok's purported reliance on support from family members and other affiliates to fund creditor claims is clearly a precursor to those parties seeking debtor and third-party releases for their participation in the shell games identified by Justice Ostrager as designed to harm PAX. And the notion that his "family office" (GSNY) would provide $8 million in DIP financing in connection with an estate the Debtor claims is worth only $3,850—i.e., providing more than $2,000 in financing for every $1 in the estate—demonstrates that this case is being used improperly to protect Golden Spring (and the other entities controlled by Kwok's family where his assets really lie). |

### (ii)    Objective Futility

60.    "[A] debtor's behavior can be so egregious.  . . that there may be no need to look into . . . the reasonable likelihood of the debtor confirming a chapter 11 plan in a reasonable time." *In re 68 West 127 Street, LLC*, 285 B.R. 838, 847 (Bankr. S.D.N.Y. 2002).  Kwok's behavior here can readily be characterized as such, given the timing of the filing of this chapter 11 case and its purpose.  But even if the Court were to consider objective futility, that test is met here because Kwok's stated goal is to account for his (alleged $3,850 worth of) assets, an outcome that can just as easily be achieved outside of bankruptcy through state court litigation.  *See In re Murray*, 543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018) (bankruptcy can't be used where available non-bankruptcy remedies are available).

61.    Moreover, it is unlikely Kwok could ever confirm a plan he proposes.  As noted above, the Debtor's creditors consist of (i) PAX; (ii) contingent litigation creditors with unliquidated claims; and (iii) family-member insiders, who, even if a "creditor," or "impaired,"

34

whose votes on a plan will not be counted pursuant to Bankruptcy Code section 1129(a)(1).  PAX is the largest creditor by a very significant margin (even larger when considering only non-insider creditors)—its assent will be necessary for any successful plan.  In the face of PAX's opposition to this entire sham bankruptcy, the bankruptcy case is objectively futile.  *See In re C-TC*, 113 F.3d at 1311–12  (where debtor's "financial problems involve only a two party dispute with [a single creditor] that can be resolved in [a] pending state court action," the debtor "enjoyed no likelihood of rehabilitation and would be unable to effectuate a plan due to [that single creditor's] opposition").

### C.   The Court Should Dismiss the Petition for Cause Because Kwok's Estate Continues to Diminish and There Is No Reasonable Likelihood of Rehabilitation.

62.    Section 1112(b)(4)(A) directs dismissal where there is a "substantial or continuing loss" to the estate and "the absence of a reasonable likelihood of rehabilitation."   As to the first factor, multiple courts find that substantial or continuing loss occurs when the debtor has a negative cash flow.  *See, e.g.*, *In re Red Bull Taxi Inc.*, 2017 Bankr.  LEXIS 1209, at *6 (Bankr. S.D.N.Y. May 3, 2017) (citing *In re AdBrite Corp.*, 290 B.R. 209, 215–16 (Bankr. S.D.N.Y. 2003) (collecting cases)).

63.    Courts have also recognized that that where a debtor proposes a liquidating reorganization, there is no likelihood of rehabilitation, as that term is used in Bankruptcy Code section 1112(b)(4)(A), so that the second prong of that ground for cause is necessarily established.  *See, e.g.*, *In re BH S & B Holdings, LLC*, 439 B.R. 342, 353 (Bankr. S.D.N.Y. 2010).

64.    Courts have also found cause under section 1112(b)(4)(A) where the debtor had no "hard" assets, no operations, no employees, and no ongoing business to rehabilitate, and where its only potential assets were litigation claims.  *See In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH, 2010 WL 4866874 (Bankr. N.D. Tex., Nov. 23, 2010).  For example, in *In re Sakon*, this

Court found "cause" under a continuing loss theory, given that the individual chapter 11 debtor had no operating business to rehabilitate, no cash flow, no revenues, and no incremental or meaningful progress toward the filing and funding of a feasible and confirmable plan. 617 B.R. 7, 15–18 (Bankr. D. Conn. 2020).

65.     Kwok claims to have no liquid assets or cash flow. In Kwok's view of the world presented to this Court under oath, essentially every penny of cash that comes into the estate is either a gift or a loan from the assets of family members for the purpose of funding administrative expenses. This continued accrual of expenses with no income constitutes a "continuing loss" to the estate under the first prong of section 1112(b)(4)(A).[109] And Kwok's professed lack of any business or other value-generating activities means there is nothing to "rehabilitate" under the second prong. Continuing the chapter 11 proceedings would only drive up the administrative expenses without any apparent benefit to Kwok's creditors—aside from the insiders and their professionals whose fees continue to accrue. The dismissal of Kwok's chapter 11 case is the appropriate, statutorily prescribed fix to derail this gravy train.

**D.     The Court Should Dismiss the Petition for Cause Because Kwok Is Grossly Mismanaging the Estate**

66.     To determine "gross mismanagement of the estate," under section 1112(b)(4)(B) of the Bankruptcy Code, case law requires the Court to look to the Debtor's actions towards its creditors. *In re Builders Grp. & Dev. Corp.*, No. 13-04867 (ESL), 2014 Bankr. LEXIS 2092, at

---

[109] In reality, we still know very little about the actual value of Kwok's real assets, which PAX believes are hidden across the globe in the name of affiliated entities or family members, or how much income they may actually generate. Given these assets are not being treated by the estate's fiduciary as estate assets, we assume they are also diminishing in value available to creditors. (Kwok and his family have every incentive to strip these assets of value for themselves before the shell game is up and the truth is uncovered.) But that assumption is unnecessary for the Court's purposes here. Without prejudice to PAX's rights to contest the scope and value of Kwok's actual estate in the future, and crediting every inference in favor of Kwok's sworn representations to this Court, then the estate contains only one potentially material asset—comprised of his unrealized litigation claims— which at best is speculative, illiquid, and essentially unaffected by this chapter 11 case. By definition, the continued accrual of administrative expenses and other obligations is diminishing the estate.

*19–20 (Bankr. D.P.R. May 8, 2014). "A debtor in possession is vested with significant powers under the provision of the Bankruptcy Code. As is often the case, those powers come with certain responsibilities. Significantly, a debtor in possession owes a fiduciary duty to its creditors." *In re Gateway Access Solutions. Inc.*, 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007) (citing *In re G-I Holdings, Inc.*, 385 F. 3d. 313, 319 (3rd Cir. 2004)). *See also In re Sillerman,* 605 B.R. 631, 651 (Bankr. S.D.N.Y. 2019) (noting failure to discharge fiduciary duties and conflicts of interest as "gross mismanagement" under section 1112(b)(4)(B) of the Bankruptcy Code).

67.     It is hard to conceive of a more egregious violation of Kwok's duty to creditors than to openly flout Judge Ostrager's order to return the *Lady May* to the jurisdiction of the United States for the satisfaction of debt owed to creditors. The fact that this valuable asset continues to this day to be off the coast of Europe[110] and thus out of reach of creditors, and that Kwok has not lifted a finger to bring it back to local waters, is a stark betrayal of Kwok's duty as a debtor-in-possession in this chapter 11 case.

68.     Moreover, Kwok continues to mislead the Court and his creditors about his assets. Courts have concluded that a debtor's postpetition behavior supported a finding of "gross mismanagement" within the meaning of Bankruptcy Code section 1112(b)(4)(B) where the debtor had failed to accurately represent its interests in its properties, among other things. *See In re Halal 4 U LLC*, No. 08–15216, 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010). Here, Kwok simply cannot be believed about the nature of his assets, where they have been secreted, or what is happening to them. As noted above, Kwok has made various transfers of assets to insiders for no consideration and is making no effort to recover them. And, as the evidence regarding the

---

[110] *See* Friedman Decl., Ex. 42. (location of Lady May as of April 6, 2022 in France).

Residence shows, Kwok has continued his pattern of representing that he owns valuable assets when it suits him, but denying it when doing so benefits his family and harms his creditors.

69.    Under section 1112(b)(2) of the Bankruptcy Code, once a party establishes cause to convert or dismiss, the debtor or any party opposing conversion/dismissal can defeat the motion to dismiss or convert by showing (1) unusual circumstances exist, (2) a reasonable likelihood that a chapter 11 plan will be timely confirmed, and (3) that a reasonable justification exists for the act or omission constituting cause, and that such act or omission will be rectified within a reasonable period of time.[111]  This provision provides no refuge for Kwok.  It is difficult to conceive of any unusual circumstances that could possibly justify Kwok's protracted contemptuous behavior. Kwok will not find any case support for such a proposition.  That alone must end the inquiry, since to fall under the exception the Debtor must meet all three tests.  But, as noted above, Kwok would also fail to show any likelihood of a chapter 11 plan being confirmed.  Moreover, Kwok has conditioned the funding of the case on his remaining in control over his estate, so without that untenable outcome, there will be no funding to confirm a chapter 11 plan.[112]  Finally, while Kwok can certainly change course and in the future refrain from his gross mismanagement of the estate, there is certainly no reasonable justification for it thus far, or cause to believe anything will differ going forward.  Accordingly, Kwok's gross mismanagement constitutes "cause" to dismiss his chapter 11 case.

---

[111] Cause based on substantial or continuing loss and the absence of a reasonable likelihood of rehabilitation, covered in section I.C. above, is not subject to this exception (and, therefore, not subject to cure).

[112] Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief, ECF No. 117, Ex. C (DIP Loan Agreement) at §§ 8.01 (f), (g).

## II.   DISMISSAL—RATHER THAN CONVERSION OR THE APPOINTMENT OF A TRUSTEE OR EXAMINER—IS THE BEST DISPOSITION UNDER THE CIRCUMSTANCES.

70.   Once cause for relief under section 1112(b) is established, the Bankruptcy Code requires the Court to either dismiss the case, convert it to chapter 7, or appoint a chapter 11 trustee or examiner, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). Courts have "wide discretion to decide whether to convert the case to one under Chapter 7 or to dismiss." *In re Sapphire Dev., LLC,* No. 13-50043, 2015 WL 5579545, at *6 (Bankr. D. Conn. June 26, 2015) (citing *In re Babayoff,* 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011)) (internal citations omitted).  In *Sapphire Development*, the Court ordered dismissal of the case after determining that the petition was filed in bad faith, finding that as between conversion or dismissal, the result was the same for all creditors and the movant had specifically requested dismissal. *Id.*, at *6–7.

71.   Here, dismissal is clearly the most appropriate remedy.  It is what PAX has requested, and each creditor should be permitted to pursue their unrelated claims and remedies in state court.  PAX's efforts to date in state court have ensured that at least some of Kwok's sizable assets are revealed, and, if successful, its veil-piercing claims will pave the way for other creditors to collect on future judgments as well.

## III.   IN THE ALTERNATIVE, PAX JOINS IN THE UNITED STATES TRUSTEE'S MOTION FOR A CHAPTER 11 TRUSTEE.

72.   If the Court declines to dismiss the case, then it should appoint a chapter 11 trustee under Bankruptcy Code section 1104(a), which is the alternative relief requested by the United States Trustee in the Examiner/Trustee Motion.[113]

---

[113] A chapter 11 trustee is preferable to conversion to chapter 7 because it allows for increased creditor involvement in the trustee process—PAX is by far the largest creditor of the Kwok estate—and it provides additional flexibility under chapter 11 for the simultaneous pursuit of claims and consideration of a plan.

39

73.    Section 1104(a)(1) of the Bankruptcy Code provides that the Court "***shall*** order the appointment of a trustee for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case." 11 U.S.C. § 1104(a)(1) (emphasis added).  The enumerated "list of wrongs constituting 'cause' that warrants the appointment of a trustee is not exhaustive."  *In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015) (citation omitted).  "[A]ny one of these causes . . . mandates appointment of a trustee."  *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 527 (Bankr. E.D.N.Y. 1989).  "A court may consider both the pre- and post-petition misconduct of the current management when making the determination that 'cause' exists for the appointment of a trustee."  *In re Ashley River Consulting*, 2015 WL 1540941 at *10 (citing *Midatlantic Nat'l Bank v. Anchorage Boat Sales, Inc.  (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635, 644–45 (Bankr. E.D.N.Y. 1980)).  "The statute is mandatory and dictates that upon a finding of cause, the court is required to appoint a chapter 11 trustee."  *In re Sillerman*, 605 B.R. 631, 642 (Bankr. S.D.N.Y. 2019).

74.    "Even if a court does not find that cause exists to appoint a chapter 11 trustee under" section 1104(a)(1), the court may still appoint a trustee under section 1104(a)(2) "if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate . . ."  *In re Ancona*, No. 14-10532, 2016 WL 7868696, at *12 (Bankr. S.D.N.Y. Nov. 30, 2016) (citing 11 U.S.C. § 1104(a)(2)).  Section 1104(a)(2) "creates a flexible standard and allows the appointment of a trustee even when no 'cause' exists."  *In re Ionosphere Clubs Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).

**A.    There is "Cause" to Appoint a Trustee.**

75.    ***First***, there is "cause" to appoint a trustee because, as detailed above, Kwok has a long history of dishonest and fraudulent conduct.  *See, e.g., In re Ashley River Consulting*, 2015

WL 1540941 at \*10 (finding cause under § 1104(a)(1) where "the Debtors' principal . . . was not only found to be guilty of affirmative fraud and gross, wanton, and willful misconduct . . . but he was also found to be the 'alter ego of [debtor]' that should be held accountable for diverting and commingling funds . . ."); *In re Bonded Mailings Inc.*, 20 B.R. 781, 786 (Bankr. E.D.N.Y. 1982) (appointment of a trustee warranted where debtor had committed fraud upon one of its creditors by conduct designed to frustrate the creditor's attempt to enforce its judgment which resulted in a shifting of assets between two corporate debtors and hopelessly confused their records).

76.     Justice Ostrager recognized precisely that in the State Court Action:

> The Court believes, as reflected in the September 15, 2020 [summary judgment] order that **Mr. Kwok has attempted to mislead the Court**. The Court believes that **Mr. Kwok is, as the plaintiff contends, playing a shell game with his assets, and has violated if not the letter of court orders, the spirit of court orders**. . . . So we are not going to have any more shell games.[114]

77.     **Second**, there is "cause" to appoint a trustee because the Debtor has inherent conflicts of interest with its related entities. "[F]actors warranting the appointment of a trustee under section 1104(a)(1) include conflicts of interest." *In re Ancona*, 2016 WL 7868696 at \*9. Here, as detailed above, the Debtor suffers from incurable conflicts of interest that require appointment of a trustee. Kwok filed the petition for the precise purpose of evading contempt sanctions, trying to avoid bringing his assets into a jurisdiction where they could be used to satisfy creditor claims, and getting another bite at the apple at hiding his assets among family and affiliates. Kwok intends to satisfy creditor claims using assets of the very family members and shell entities that Justice Ostrager held he had conspired with and misused to the detriment of creditors. That Kwok engages in this behavior was also confirmed in the *Eastern Profit* case, where Judge Liman made findings of fact that Kwok uses shell companies and family members to

---

[114] Friedman Decl., Ex. 43, October 15, 2020 Hr'g Tr., *PAX v. Kwok et al.,* Index No. 652077/2017, (N.Y. Sup. Ct.), at 21:14–22:7 (emphasis added).

make gifts on his own behalf. Kwok cannot possibly be expected to act as a fiduciary and navigate this chapter 11 case for the benefit of creditors when, taking Kwok at his word, his real purpose in filing was antithetical to paying creditors, and when the only realistic sources of recovery lie with his own family and affiliates.

78.     It would thus be impossible for Kwok to comply with his fiduciary duty to fairly marshal assets for the benefit of *all* creditors, including PAX—because he filed this chapter 11 case precisely to try to exploit bankruptcy to PAX's detriment (and Kwok's own benefit). Under similar circumstances, Courts have determined such a conflict untenable and grounds for appointment of a trustee. *See, e.g.*, *In re Ancona*, 2016 WL 7868696 at \*9–10 (debtor's "refusal … to investigate claims that are held by insiders evidences the unhealthy conflict of interest in this case, and highlights the need to appoint a neutral trustee to carry out, in an unbiased manner, the Debtor's fiduciary duties."); *In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. 346, 357 (Bankr. S.D.N.Y. 2001) ("If allowed to manage the Debtor, [Debtor's general partner] would continue to face a blatant conflict of interest, as between maximizing the assets of the partnership available for satisfaction of creditor claims, on the one hand, and looking to his personal resources to satisfy those claims, on the other. [Debtor's general partner] has every incentive to delay and/or impair any attempt to marshal his assets for the benefit of the Debtor's creditors.").

79.     Here, for example, Kwok eschews ownership of the Residence, while previously having held himself out as its owner. And he has refused to turn over the *Lady May*, presumably so his family can continue to use and enjoy it in direct violation of court orders. In fact, Kwok has not lifted a finger to use his ample powers under the Bankruptcy Code to seek return of the Lady May. Instead, he has shown he wants to try to re-litigate ownership of his yacht for the benefit of

his family members.[115]  Kwok wants these assets to remain with his family and not be used to pay

his creditors.  Kwok's alignment is thus, untenably, with his family (and the affiliated entities he

controls), and not his creditors.

80.    ***Third***, there is "cause" to appoint a trustee because, as detailed above (section I.D.),

the Debtor is unable or unwilling to comply with his basic fiduciary duties.  *See, e.g.*, *In re*

*Futterman*, 584 B.R. 609, 619 (Bankr. S.D.N.Y. 2018) (finding cause under section 1104(a)(1)

due to a lack of "confidence that [debtor] will abide by the fiduciary obligations that he would

owe" and noting that debtor "does not have the confidence of his main creditors…"); *see also, In*

*re Ancona*, 2016 WL 7868696 at *8 (finding cause under § 1104(a) "based on its finding of 'cause'

under section 1112(b)" including debtor's failure to comply with the fiduciary duties of a debtor-

in-possession).[116]

### B.    Appointing a Trustee Is in the Interests of All Parties.

81.     Even if the Court finds there are no grounds for cause (and PAX respectfully

submits that such grounds are overwhelming), the Court should appoint a trustee under the interest

of creditors' test of subsection (a)(2).  Among the factors to be considered in appointing a trustee

under section 1104(a)(2) are:

> (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present
> performance and prospects for the debtor's rehabilitation; (iii) the confidence—or
> lack thereof—of the business community and of creditors in present management;
> and (iv) the benefits derived by the appointment of a trustee, balanced against the
> cost of the appointment.

---

[115] In his Objection to PAX's motion to confirm the inapplicability of the stay to the Final Contempt Order, Kwok
previewed his intent to attempt to re-litigate the issue of ownership of the Lady May.  Kwok asserts that the Final
Contempt Order was "wrongfully issued against him," and that Kwok's interest in the Lady May is "ultimately [to]
*be determined*."  Objection to Lift Stay, ECF No. 83 (Mar. 15, 2022), at ¶¶ 4, 14.

[116] In addition to the foregoing bases for appointment of a chapter 11 trustee, facts supporting a finding of "cause"
under § 1112(b) also support cause under 1104(a), including, among other things, inadequate reporting (section I. C.
n. 109, *supra*).  *See, In re Ancona*, 2016 WL 7868696 at *8 (finding cause under § 1104(a) "based [on] its finding of
'cause' under section 1112(b).").

*In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 112 (Bankr. S.D.N.Y. 2008) (quoting *In re Ionosphere Clubs Inc.*, 113 B.R. at 168).  However, "the standard is a flexible one."  *In re Eljamal*, No.  17-CV-7870 (KMK), 2018 WL 4735719, at *7 (S.D.N.Y. Sept. 28, 2018) (quoting *Ridgemour Meyer Props., LLC*, 413 B.R.  at 112).

82.   As set forth in detail above, those factors all weigh heavily against the Debtor remaining in possession.  ***First***, Kwok is the antithesis of trustworthy.  ***Second***, Kwok commenced this chapter 11 case for the sole and improper purpose of delaying and frustrating the unfavorable outcomes and consequences of the action before the New York Court; the Debtor has no prospects for rehabilitation because he either has no assets or refuses to properly disclose and make them available for creditors.  ***Third***, PAX, Kwok's largest creditor, rightfully has absolutely no confidence in Kwok's management and control of his estate or his ability to do anything constructive (or legal) with the estate for the benefits of creditors.  ***Fourth***, the benefits of appointing a trustee far outweigh the costs.  No business will suffer, no employees will lose their jobs, no vendors will go unserved if a trustee is appointed, because Kwok avers to have no business to rehabilitate and no employees, jobs or vendors to protect.  Once appointed, the trustee would assume immediate control and oversight over Kwok's affairs and begin working for creditors rather than against them.  And, if Kwok's family (or, as PAX suspects, more accurately Kwok himself) does not wish to fund a chapter 11 case with a trustee appointed, they—and Kwok—can face the consequences of case dismissal.

## CONCLUSION

83.   WHEREFORE, PAX respectfully requests for all of the reasons stated above that this Court:  (i) dismiss the chapter 11 case; (ii) in the alternative, appoint a chapter 11 trustee; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: April 6, 2022
Hartford, Connecticut

**Pacific Alliance Asia Opportunity Fund L.P.**

*By: /s/ Patrick M. Birney*
Patrick M. Birney (CT No. 19875)
Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
       asmith@rc.com

-and-

Peter Friedman (admitted *pro hac vice*)
Stuart M. Sarnoff (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
       ssarnoff@omm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2022, a copy of the foregoing was filed electronically through

the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties receiving

notice by operation of the court's electronic filing system. Parties in interest may

access this filing through the Court's CM/ECF System.

<u>/s/ *Patrick M. Birney*</u>
Patrick M. Birney