# EXHIBIT 9

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 2 of
104

# Genever Holdings LLC

## Corporate Documents

SN 0155

## LIABILITY COMPANY AGREEMENT

### OF

### GENEVER HOLDINGS LLC

LIMITED LIABILITY COMPANY AGREEMENT made as of the 17th day of February, 2015 by and among (a) GENEVER HOLDINGS LLC (the "Company"), and (b) the persons identified on <u>Schedule A</u> as members of the Company (hereinafter referred to as the "Members" and each individually, a "Member").

The Members are entering into this Agreement in order to form the Company as a New York limited liability company by organizing the Company in accordance with the New York Limited Liability Company Law, as amended from time to time (the "Act").

The parties hereto desire to set forth the terms and conditions for the operation of the Company. This Agreement sets forth fully the agreements and understandings of the Members in respect of the Company.

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. <u>Definitions</u>.

   1.1 "Family Group," with respect to any Member, includes (i) with respect to any Member who is an individual, such Member's spouse and descendants, (ii) with respect to any Member that is a trust, any beneficiary of the trust and the spouse and descendants of any beneficiary and (iii) with respect to any Member that is an entity, any beneficial owner of such entity and the spouse and descendants of any such beneficial owner.

   1.2 "Membership Interest" means the ownership interest of a Member in the Company. The Membership Interest of each of the Members as of the date hereof is set forth on <u>Schedule A</u>.

   1.3 "Property" shall have the meaning set forth in Section 5.

2. <u>Name</u>. The name of the Company shall be GENEVER HOLDINGS LLC.

3. <u>Articles; Certificates</u>. The Members, from time to time as such Members deem advisable, may, by written instrument, elect one or more additional natural persons and designate them as "authorized persons" of the Company. The Members or any officer or authorized person shall execute, deliver and file any other articles and/or certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

# GENEVER HOLDINGS CORPORATION

## GENEVER HOLDINGS LLC

Designation of Authorized Person

The undersigned, being an Authorized Person of Genever Holdings Corporation, a British Virgin Islands limited company (the "Corporation"), hereby makes the following delegation of authority:

**THE AUTHORIZED PERSON** hereby designates each of Ira Gilbert, Esq. and Steven Simkin, Esq., acting alone or jointly, as an "Authorized Person" of Genever Holdings LLC ( "Genever New York"), a New York limited liability company of which the Corporation is the sole member,  and delegates authority to and directs each of them to enter into a purchase agreement with Sherry 1800s LLC, as seller, for the purchase of certificates of stock in The Sherry-Netherland, Inc., a cooperative apartment located at 781 Fifth Avenue, New York City, New York (the "Sherry-Netherland") with respect to UNITS 1801, 1804, 1807, 1809, 1811, and Servant's Room 1519) on terms and conditions as have been discussed among representatives of the Corporation and Genever New York and the director and sole shareholder of the Corporation. This authority is non-delegable by either of Messrs. Gilbert and Simkin.

 **Pursuant to this designation of authorized person,** Messrs. Gilbert and Simkin are each authorized to take such other actions and make such revisions to the purchase documents as such person deems advisable or necessary in order to carry out the actions authorized in this designation, the approval of such revised documents being evidence of such authorized person's determination.

Dated as of February 17, 2015

Michael F. O'Connor
Authorized Person

SN 0157

# British Virgin Islands

# Certificate of Incorporation

SN 0158

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252

INDEX NO. 652077/2017

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 6 of
104

RECEIVED NYSCEF: 11/28/2018

TERRITORY OF THE BRITISH VIRGIN ISLANDS
BVI BUSINESS COMPANIES ACT, 2004



15CB941595

CERTIFICATE OF INCORPORATION
(SECTION 7)

The REGISTRAR of CORPORATE AFFAIRS, of the British Virgin Islands HEREBY CERTIFIES, that pursuant to the BVI Business Companies Act, 2004, all the requirements of the Act in respect of incorporation having been complied with,

**Genever Holdings Corporation**

BVI COMPANY NUMBER: 1862840

is incorporated in the BRITISH VIRGIN ISLANDS as a BVI BUSINESS COMPANY, this 13th day of February, 2015.



*for* **REGISTRAR OF CORPORATE AFFAIRS**
13th day of February, 2015

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252

INDEX NO. 652077/2017

RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 7 of
104

# British Virgin Islands

# Share Certificate

SN 0160

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 8 of
104



Incorporated under the BVI Business Companies Act, 2004

Number of certificate

1

Number of shares

1,000

**Genever Holdings Corporation**

This is to certify that Ho Wan Kwok of 49th Floor, Bank of China Tower, No. 1 Garden Road, Central, Hong Kong is the registered holder of **One Thousand (1,000) Ordinary shares** with **USD$0.001 par value** each being fully paid in the above-named company, subject to the Memorandum and Articles of Association of the company.

Given under the seal of the company dated 13 February 2015.

For and on behalf of
Elian First Director (BVI) Limited
**Director**

British Virgin Islands

Director Registry

SN 0162

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 10 of
104

Client Register of Directors
OG BVI Live

18. February 2015

Page    1

faull

## Genever Holdings Corporation

### Current Directors

| | | | |
|---|---|---|---|
| **Formal Name** | Mr Ho Wan Kwok | | |
| **Residential Address** | 49th Floor | **Statutory Ref.** | |
| | Bank of China Tower | **Occupation** | Investor |
| | No.1 Garden Road | **Nationality** | Chinese |
| | CENTRAL | **Date of Birth** | 10/05/68 |
| | Hong Kong | **Date Appointed** | 13/02/15 |
| | | **Notes** | |

**Former Names**
**Surname**
**Forename**

### Current Secretary

| | | | |
|---|---|---|---|
| **Company Name** | Elian Secretaries (BVI) Limited | | |
| **Place Of Incorporation** | British Virgin Islands | **Statutory Ref.** | |
| | | **Date Appointed** | 13/02/15 |
| **Principal Office** | Nemours Chambers | **Notes** | |
| | Road Town | | |
| | Tortola VG1110 | | |
| | British Virgin Islands | | |

**Former Names**
**Previous Name**

### Former Directors

| | | | |
|---|---|---|---|
| **Company Name** | Elian First Director (BVI) Limited | | |
| **Place Of Incorporation** | British Virgin Islands | | |
| | | **Date Appointed** | 13/02/15 |
| **Principal Office** | Nemours Chambers | **Date Resigned** | 13/02/15 |
| | Road Town | **Notes** | |
| | Tortola VG1110 | | |
| | British Virgin Islands | | |

**Former Names**
**Previous Name**

SN 0163

# British Virgin Islands

## Bylaws

SN 0164

No: 1862840



**British Virgin Islands**

**The BVI Business Companies Act 2004**



MEMORANDUM OF ASSOCIATION
ARTICLES OF ASSOCIATION
OF

Genever Holdings Corporation

A BVI BUSINESS COMPANY
INCORPORATED 13 FEBRUARY **2015**

**Elian Fiduciary Services (BVI) Limited**
Nemours Chambers
Road Town, Tortola
British Virgin Islands VG1110

Regulated by the British Virgin Islands Financial Services Commission.



-15520821-2

SN 0165

Territory of the British Virgin Islands

The BVI Business Companies Act 2004

Memorandum of Association

of

Genever Holdings Corporation

a company limited by Shares

**1**   **Name**

1.1   The name of the Company is Genever Holdings Corporation.

**2**   **Status**

2.1   The Company is a company limited by Shares,

**3**   **Registered office and registered agent**

3.1   The first registered office of the Company is at Nemours Chambers, Road Town, Tortola, British Virgin Islands, the office of the first registered agent.

3.2   The first registered agent of the Company is Elian Fiduciary Services (BVI) Limited of Nemours Chambers, Road Town, Tortola, British Virgin Islands.

3.3   The Company may change its registered office or registered agent by a resolution of directors or a resolution of members. The change shall take effect upon the Registrar registering a notice of change filed under section 92 of the Act.

**4**   **Capacity and power**

4.1   The Company has, subject to the Act and any other British Virgin Islands legislation for the time being in force, irrespective of corporate benefit:

    (a)   full capacity to carry on or undertake any business or activity, do any act or enter into any transaction; and

    (b)   for the purposes of 4.1(a), full rights, powers and privileges.

4.2   There are subject to clause 4.1 no limitations on the business that the Company may carry on.

-15520821-2

SN 0166

**5       Number and classes of Shares**

5.1     The Company is authorised to issue a maximum of 50,000 Shares of US$0.001 par value each of a single class.

5.2     The Company may issue fractional Shares and a fractional Share shall have the corresponding fractional rights, obligations and liabilities of a whole Share of the same class or series of Shares.

**6       Designations powers preferences of Shares**

6.1     Each Share in the Company confers upon the Member:

    (a)     the right to one vote at a meeting of the Members of the Company or on any Resolution of Members;

    (b)     the right to an equal Share in any dividend paid by the Company; and

    (c)     the right to an equal Share in the distribution of the surplus assets of the Company on its liquidation.

6.2     The directors may at their discretion by Resolution of Directors redeem, purchase or otherwise acquire all or any of the Shares in the Company subject to Regulation 3 of the Articles.

**7       Variation of rights**

The rights attached to Shares as specified in Clause 6 may only, whether or not the Company is being wound up, be varied with the consent in writing of or by a resolution passed at a meeting by the holders of more than 50 per cent of the issued Shares of that class.

**8       Rights not varied by the issue of Shares pari passu**

The rights conferred upon the holders of the Shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the Shares of that class, be deemed to be varied by the creation or issue of further Shares ranking pari passu therewith.

**9       Registered Shares**

9.1     The Company shall issue registered Shares only.

9.2     The Company is not authorised to issue bearer Shares, convert registered Shares to bearer Shares or exchange registered Shares for bearer Shares.

-15520821-2

SN 0167

**10      Transfer of Shares**

10.1    A Share may, subject to the provisions of the Articles, be transferred subject to the prior or subsequent approval of the Company contained in a Resolution of Members or a Resolution of Directors.

10.2    The Members and/or the directors may in their absolute and unfettered discretion refuse to approve any intended transfer of a Share.

**11      Amendment of memorandum and articles**

11.1    The Company may amend its Memorandum or Articles by a Resolution of Members or by a Resolution of Directors, save that no amendment may be made by a Resolution of Directors:

(a)    to restrict the rights or powers of the Members to amend the Memorandum or Articles;

(b)    to change the percentage of Members required to pass a Resolution of Members to amend the Memorandum or Articles;

(c)    in circumstances where the Memorandum or Articles cannot be amended by the Members; or

(d)    to Clauses 7 or 8 or this Clause 11.

**12      Definitions and interpretation**

12.1    In this Memorandum of Association and the attached Articles of Association, if not inconsistent with the subject or context:

**Act** means the BVI Business Companies Act and includes the regulations made under the Act;

**Articles** means the attached Articles of Association of the Company;

**Chairman of the Board** has the meaning specified in Regulation 13;

**Distribution** in relation to a distribution by the Company means the direct or indirect transfer of an asset, other than Shares, to or for the benefit of a Member in relation to Shares held by a Member, and whether by means of a purchase of an asset, the redemption or other acquisition of Shares, a distribution of indebtedness or otherwise, and includes a dividend;

**Eligible Person** means individuals, corporations, trusts, the estates of deceased individuals, partnerships and unincorporated associations of persons;

**Member** means an Eligible Person whose name is entered in the register of members of the Company as the holder of one or more Shares or fractional Shares;

3                                                        -15520821-2

SN 0168

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM

INDEX NO. 652077/2017

NYSCEF DOC. NO. 252

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 16 of
104

RECEIVED NYSCEF: 11/28/2018

**Memorandum** means this Memorandum of Association of the Company;

**Resolution of Directors** means either:

(a)     a resolution approved at a duly convened and constituted meeting of directors of the Company or of a committee of directors of the Company by the affirmative vote of a majority of the directors present at the meeting who voted except that where a director is given more than one vote, he shall be counted by the number of votes he casts for the purpose of establishing a majority; or

(b)     a resolution consented to in writing by all directors or by all Members of a committee of directors of the Company, as the case may be;

**Resolution of Members** means either:

(a)     a resolution approved at a duly convened and constituted meeting of the Members of the Company by the affirmative vote of a majority of the votes of the Shares entitled to vote thereon which were present at the meeting and were voted; or

(b)     a resolution consented to in writing by a majority of the votes of Shares entitled to vote thereon;

**Seal** means any seal which has been duly adopted as the common seal of the Company;

**Securities** means Shares and debt obligations of every kind of the Company, and including without limitation options, warrants and rights to acquire Shares or debt obligations;

**Share** means a Share issued or to be issued by the Company;

**Treasury Share** means a Share that was previously issued but was repurchased, redeemed or otherwise acquired by the Company and not cancelled; and

**written** or any term of like import includes information generated, sent, received or stored by electronic, electrical, digital, magnetic, optical, electromagnetic, biometric or photonic means, including electronic data interchange, electronic mail, telegram, telex or telecopy, and "in writing" shall be construed accordingly.

12.2    In the Memorandum and the Articles, unless the context otherwise requires a reference to:

(a)     a Regulation is a reference to a regulation of the Articles;

(b)     a Clause is a reference to a clause of the Memorandum;

(c)     voting by Member is a reference to the casting of the votes attached to the Shares held by the Member voting;

4

-15520821-2

SN 0169

    (d)    the Act, the Memorandum or the Articles is a reference to the Act or those documents as amended; and

    (e)    the singular includes the plural and vice versa.

12.3    Any words or expressions defined in the Act unless the context otherwise requires bear the same meaning in the Memorandum and Articles unless otherwise defined herein.

12.4    Headings are inserted for convenience only and shall be disregarded in interpreting the Memorandum and Articles.

We, Elian Fiduciary Services (BVI) Limited of Nemours Chambers, Road Town, Tortola, British Virgin Islands, for the purpose of incorporating a BVI business company under the laws of the British Virgin Islands hereby sign this Memorandum of Association.

Dated the 13th day of February, 2015

Incorporator

**Signed for and on behalf of** Elian Fiduciary Services (BVI) **Limited of** Nemours Chambers, Road Town, Tortola, British Virgin Islands

Signature of authorised signatory    Signature of authorised signatory

**Charlotte Bailey**    Susan Palmer
**Print name**    Print name

-15520821-2

SN 0170

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018
Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 18 of
104

Territory of the British Virgin Islands

The BVI Business Companies Act 2004

Articles of Association

of

Genever Holdings Corporation

a company limited by Shares

**1      Registered Shares**

1.1      Every Member is entitled to a certificate signed by a director of the Company or under the Seal specifying the number of Shares held by him and the signature of the director and the Seal may be facsimiles.

1.2      Any Member receiving a certificate shall indemnify and hold the Company and its directors and officers harmless from any loss or liability which it or they may incur by reason of any wrongful or fraudulent use or representation made by any person by virtue of the possession thereof. If a certificate for Shares is worn out or lost it may be renewed on production of the worn out certificate or on satisfactory proof of its loss together with such indemnity as may be required by a Resolution of Directors.

1.3      If several Eligible Persons are registered as joint holders of any Shares, any one of such Eligible Persons may give an effectual receipt for any Distribution.

**2      Shares**

2.1      Shares and other Securities may be issued and option to acquire Shares or other Securities may be granter at such times, to such Eligible Persons, for such consideration and on such terms as the directors may by Resolution of Directors determine.

2.2      Section 46 of the Act does not apply to the Company.

2.3      A Share may be issued for consideration in any form, including money, a promissory note, real property, personal property (including goodwill and know-how) or a contract for future services.

2.4      No Shares may be issued for a consideration other than money, unless a Resolution of Directors has been passed stating:

(a)      the amount to be credited for the issue of the Shares;

(b)      their determination of the reasonable present cash value of the non-money consideration for the issue; and

6                                          -15520821-2

SN 0171

(c)      that, in their opinion, the present cash value of the non-money consideration for the issue is not less than the amount to be credited for the issue of the Shares.

(d)      The Company shall keep a register (**register of members**) containing:

(e)      the names and addresses of the persons who hold Shares;

(f)      the number of each class and series of Shares held by each Member;

(g)      the date on which the name of each Member was entered in the register of members; and

(h)      the date on which any Eligible Person ceased to be a Member.

2.5      The register of members may be in any such form as the directors may approve, but if it is in magnetic, electronic or other data storage form, the Company must be able to produce legible evidence of its contents. Until the directors otherwise determine, the magnetic, electronic or other data storage form shall be the original register of members.

2.6      A Share is deemed to be issued when the name of the Member is entered in the register of members.

**3        Forfeiture**

3.1      Shares that are not fully paid on issue are subject to the forfeiture provisions set forth in this Regulation and for this purpose Shares issued for a promissory note or a contract for future services are deemed to be not fully paid.

3.2      A written notice of call specifying the date for payment to be made shall be served on the Member who defaults in making payment in respect of the Shares.

3.3      The written notice of call referred to in Regulation 3.1 shall name a further date not earlier than the expiration of 14 days from the date of service of the notice on or before which the payment required by the notice is to be made and shall contain a statement that in the event of non-payment at or before the time named in the notice the Shares, or any of them, in respect of which payment is not made will be liable to be forfeited.

3.4      Where a written notice of call has been issued pursuant to Regulation 3.2 and the requirements of the notice have not been complied with, the directors may, at any time before tender of payment, forfeit and cancel the Shares to which the notice relates.

3.5      The Company is under no obligation to refund any moneys to the Member whose Shares have been cancelled pursuant to Regulation 3.3 and that Member shall be discharged from any further obligation to the Company.

-15520821-2

SN 0172

**4      Transfer of Shares**

4.1     Subject to the Memorandum Shares may be transferred by a written instrument of transfer signed by the transferor and containing the name and address of the transferee, which shall be sent to the Company for registration.

4.2     The transfer of a Share is effective when the name of the transferee is entered on the register of members.

4.3     If the directors of the Company are satisfied that an instrument of transfer relating to Shares has been signed but that the instrument has been lost or destroyed, they may resolve by Resolution of Directors:

      (a)     to accept such evidence of the transfer of Shares as they consider appropriate; and

      (b)     that the transferee's name should be entered in the register of members notwithstanding the absence of the instrument of transfer.

4.4     Subject to the Memorandum, the personal representative of a deceased Member may transfer a Share even though the personal representative is not a Member at the time of the transfer.

**5      Distributions**

5.1     The directors of the Company may, by Resolution of Directors, authorise a distribution at a time and of an amount they think fit if they are satisfied, on reasonable grounds, that, immediately after the distribution, the value of the Company's assets will exceed its liabilities and the Company will be able to pay its debts as they fall due.

5.2     Dividends may be paid in money, Shares, or other property.

5.3     Notice in writing of any dividend that may have been declared shall be given to each Member in accordance with Regulation 21 and all dividends unclaimed for 3 years after notice shall have been given to a Member may be forfeited by Resolution of Directors for the benefit of the Company.

5.4     No dividend shall bear interest as against the Company and no dividend shall be paid on Treasury Shares.

**6      Redemption of Shares and Treasury Shares**

6.1     The Company may purchase, redeem or otherwise acquire and hold its own Shares save that the Company may not purchase, redeem or otherwise acquire its own Shares without the consent of Member whose Shares are to be purchased, redeemed or otherwise acquired unless the Company is permitted by the Act or any other provision in the Memorandum or Articles to purchase, redeem or otherwise acquire the Shares without such consent.

-15520821-2

SN 0173

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM

INDEX NO. 652077/2017

NYSCEF DOC. NO. 252

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 21 of

RECEIVED NYSCEF: 11/28/2018

104

6.2    The purchase redemption or other acquisition by the Company of its own Shares is deemed not to be a distribution where:

6.3    The Company purchases, redeems or otherwise acquires the Shares pursuant to a right of a Member to have his Shares redeemed or to have his Shares exchanged for money or other property of the Company, or

6.4    The Company purchases, redeems or otherwise acquires the Shares by virtue of the provisions of section 179 of the Act.

6.5    Sections 60, 61 and 62 of the Act shall not apply to the Company.

6.6    Shares that the Company purchases, redeems or otherwise acquires pursuant to this Regulation may be cancelled or held as Treasury Shares except to the extent that such Shares are in excess of 50 percent of the issued Shares in which case they shall be cancelled but they shall be available for reissue.

6.7    All rights and obligations attaching to a Treasury Share are suspended and shall not be exercised by the Company while it holds the Share as a Treasury Share.

6.8    Treasury Shares may be disposed of by the Company on such terms and conditions (not otherwise inconsistent with the Memorandum and Articles) as the Company may by Resolution of Directors determine.

6.9    Where Shares are held by another body corporate of which the Company holds, directly or indirectly, Shares having more than 50 percent of the votes in the election of directors of the other body corporate, all rights and obligations attaching to the Shares held by the other body corporate are suspended and shall not be exercised by the other body corporate.

**7    Mortgages and charges of Shares**

7.1    A Member may by an instrument in writing mortgage or charge his Shares.

7.2    There shall be entered in the register of members at the written request of the Member:

(a)    a statement that the Shares held by him are mortgaged or charged;

(b)    the name of the mortgagee or chargee; and

(c)    the date on which the particulars specified in 7.2(a) and 7.2(b) are entered in the register of members.

(d)    Where particulars of a mortgage or charge are entered in the register of members, such particulars may be cancelled:

(e)    with the written consent of the named mortgagee or chargee or anyone authorised to act on his behalf; or

9                                    -15520821-2

SN 0174

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 22 of
104

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

(f)    upon evidence satisfactory to the directors of the discharge of the liability secured by the mortgage or charge and the issue of such indemnities as the directors shall consider necessary or desirable.

(g)    Whilst particulars of a mortgage or charge over Shares are entered in the register of members pursuant to this Regulation:

(h)    no transfer of any Share the subject of those particulars shall be effected;

(i)    the Company may not purchase, redeem or otherwise acquire any such Share; and

(i)    no replacement certificate shall be issued in respect of such Shares,

(ii)    without the written consent of the named mortgagee or chargee.

## 8   Meetings and consents of Members

8.1   Any director of the Company may convene meetings of the Members at such times and in such manner and places within or outside the British Virgin Islands as the director considers necessary or desirable.

8.2   Upon the written request of Members entitled to exercise 30 per cent or more of the voting rights in respect of the matter for which the meeting is requested the directors shall convene a meeting of Members.

8.3   The director convening a meeting shall give not less than 7 days' written notice of a meeting of Members to:

(a)   those Members whose names on the date the notice is given appear as Members in the register of members of the Company and are entitled to vote at the meeting; and

(b)   the other directors.

8.4   The director convening a meeting of Members may fix as the record date for determining those Members that are entitled to vote at the meeting the date notice is given of the meeting, or such other date as may be specified in the notice, being a date not earlier than the date of the notice.

8.5   A meeting of Members held in contravention of the requirement to give notice is valid if Members holding at least 90 per cent of the total voting rights on all the matters to be considered at the meeting have waived notice of the meeting and, for this purpose, the presence of a Member at the meeting shall constitute waiver in relation to all the Shares which that Member holds.

8.6   The inadvertent failure of a director who convenes a meeting to give notice of a meeting to a Member or another director, or the fact that a Member or another director has not received notice, does not invalidate the meeting.

-15520821-2

SN 0175

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 23 of
104

8.7    A Member may be represented at a meeting of Members by a proxy who may speak and vote on behalf of the Member.

8.8    The instrument appointing a proxy shall be produced at the place designated for the meeting before the time for holding the meeting at which the person named in such instrument proposes to vote.

8.9    The instrument appointing a proxy shall be in substantially the following form or such other form as the chairman of the meeting shall accept as properly evidencing the wishes of the Member appointing the proxy.

**[Name of Company]**

> I/We being a Member of the above Company HEREBY APPOINT [ ] or failing him [ ] of [ ] to be my/our proxy to vote for me/us at the meeting of Members to be held on the [ ] day of [ ], 20[ ] and at any adjournment thereof.
>
> (Any restrictions on voting to be inserted here.)
>
> Signed this [ ] day of [ ], 20[ ].
>
> ...........................................
>
> Member

8.10    The following applies where Shares are jointly owned:

(a)    if two or more persons hold Shares jointly each of them may be present in person or by proxy at a meeting of Members and may speak as a Member;

(b)    if only one of the joint owners is present in person or by proxy he may vote on behalf of all joint owners; and

(c)    if two or more of the joint owners are present in person or by proxy they must vote as one and in the event of disagreement between any of the joint owners of Shares then the vote of the joint owner whose name appears first (or earliest) in the register of members in respect of the relevant Shares shall be recorded as the vote attributable to the Shares.

8.11    A Member shall be deemed to be present at a meeting of Members if he participates by telephone or other electronic means and all Members participating in the meeting are able to hear each other.

8.12    A meeting of Members is duly constituted if, at the commencement of the meeting, there are present in person or by proxy not less than 50 per cent of the votes of the Shares entitled to vote on Resolutions of Members to be considered at the meeting.  If the Company has two or

-15520821-2

SN 0176

more classes of Shares, a meeting may be quorate for some purposes and not for others. A quorum may comprise a single Member or proxy and then such person may pass a Resolution of Members and a certificate signed by such person accompanied where such person holds a proxy by a copy of the proxy instrument shall constitute a valid Resolution of Members.

8.13    If within two hours from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of Members, shall be dissolved; in any other case it shall stand adjourned to the next business day in the jurisdiction in which the meeting was to have been held at the same time and place, and if at the adjourned meeting there are present within one hour from the time appointed for the meeting in person or by proxy not less than one third of the votes of the Shares or each class or series of Shares entitled to vote on the matters to be considered by the meeting, those present shall constitute a quorum but otherwise the meeting shall be dissolved.

8.14    At every meeting of Members, the Chairman of the Board shall preside as chairman of the meeting. If there is no Chairman of the Board or if the Chairman of the Board is not present at the meeting, the Members present shall choose one of their number to be the chairman. If the Members are unable to choose a chairman for any reason, then the person representing the greatest number of voting Shares present in person or by proxy at the meeting shall preside as chairman failing which the oldest individual Member or representative of a Member present shall take the chair.

8.15    The chairman may, with the consent of the meeting, adjourn any meeting from time to time, and from place to place.

8.16    At any meeting of the Members the chairman is responsible for deciding in such manner as he considers appropriate whether any resolution proposed has been carried or not and the result of his decision shall be announced to the meeting and recorded in the minutes of the meeting. If the chairman has any doubt as to the outcome of the vote on a proposed resolution, he shall cause a poll to be taken of all votes cast upon such resolution. If the chairman fails to take a poll then any Member present in person or by proxy who disputes the announcement by the chairman of the result of any vote may immediately following such announcement demand that a poll be taken and the chairman shall cause a poll to be taken. If a poll is taken at any meeting, the result shall be announced to the meeting and recorded in the minutes of the meeting.

8.17    Subject to the specific provisions contained in this Regulation for the appointment of representatives of Members other than individuals the right of any individual to speak for or represent a Member shall be determined by the law of the jurisdiction where, and by the documents by which, the Member is constituted or derives its existence. In case of doubt, the directors may in good faith seek legal advice and unless and until a court of competent jurisdiction shall otherwise rule, the directors may rely and act upon such advice without incurring any liability to any Member or the Company.

-15520821-2

SN 0177

8.18    Any Member other than an individual may by resolution of its directors or other governing body authorise such individual as it thinks fit to act as its representative at any meeting of Members or of any class of Members, and the individual so authorised shall be entitled to exercise the same rights on behalf of the Member which he represents as that Member could exercise if it were an individual.

8.19    The chairman of any meeting at which a vote is cast by proxy or on behalf of any Member other than an individual may at the meeting but not thereafter call for a notarially certified copy of such proxy or authority which shall be produced within 7 days of being so requested or the votes cast by such proxy or on behalf of such Member shall be disregarded.

8.20    Directors of the Company may attend and speak at any meeting of Members and at any separate meeting of the holders of any class or series of Shares.

8.21    An action that may be taken by the Members at a meeting may also be taken by a Resolution of Members consented to in writing, without the need for any prior notice. If any Resolution of Members is adopted otherwise than by the unanimous written consent of all Members, a copy of such resolution shall forthwith be sent to all Members not consenting to such resolution. The consent may be in the form of counterparts, each counterpart being signed by one or more Members. If the consent is in one or more counterparts, and the counterparts bear different dates, then the resolution shall take effect on the earliest date upon which Eligible Persons holding a sufficient number of votes of Shares to constitute a Resolution of Members have consented to the resolution by signed counterparts.

9       **Directors**

9.1     The first directors of the Company shall be appointed by the first registered agent within 30 days of the incorporation of the Company, and thereafter, the directors shall be elected by Resolution of Members or by Resolution of Directors for such term as the Members or directors determine.

9.2     No person shall be appointed as a director of the Company unless he has consented in writing to act as a director.

9.3     The minimum number of directors shall be one and there shall be no maximum number of directors.

9.4     Each director holds office for the term, if any, fixed by the Resolution of Members or Resolution of Directors appointing him, or until his earlier death, resignation or removal. If no term is fixed on the appointment of a director, the director serves indefinitely until his earlier death, resignation or removal.

9.5     A director may be removed from office with or without cause by,

        (a)     a Resolution of Members passed at a meeting of Members called for the purposes of removing the director or for purposes including the removal of the director or by a

-15520821-2

SN 0178

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 26 of
104

written resolution passed by a least seventy five per cent of the Members of the Company entitled to vote; or

(b)    a Resolution of Directors passed at a meeting of directors.

9.6    A director may resign his office by giving written notice of his resignation to the Company and the resignation has effect from the date the notice is received by the Company at the office of its registered agent or from such later date as may be specified in the notice. A director shall resign forthwith as a director if he is, or becomes, disqualified from acting as a director under the Act.

9.7    The directors may at any time appoint any person to be a director either to fill a vacancy or as an addition to the existing directors. Where the directors appoint a person as director to fill a vacancy, the term shall not exceed the term that remained when the person who has ceased to be a director ceased to hold office.

9.8    A vacancy in relation to directors occurs if a director dies or otherwise ceases to hold office prior to the expiration of his term of office.

9.9    The Company shall keep a register of directors containing:

(a)    the names and addresses of the persons who are directors of the Company;

(b)    the date on which each person whose name is entered in the register was appointed as a director of the Company;

(c)    the date on which each person named as a director ceased to be a director of the Company; and

(d)    such other information as may be prescribed by the Act.

9.10    The register of directors may be kept in any such form as the directors may approve, but if it is in magnetic, electronic or other data storage form, the Company must be able to produce legible evidence of its contents. Until a Resolution of Directors determining otherwise is passed, the magnetic, electronic or other data storage shall be the original register of directors.

9.11    The directors may, by a Resolution of Directors, fix the emoluments of directors with respect to services to be rendered in any capacity to the Company.

9.12    A director is not required to hold a Share as a qualification to office.

**10    Powers of directors**

10.1    The business and affairs of the Company shall be managed by, or under the direction or supervision of, the directors of the Company. The directors of the Company have all the powers necessary for managing, and for directing and supervising, the business and affairs of

14

-15520821-2

SN 0179

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 27 of
NYSCEF DOC. NO. 252
104
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

the Company. The directors may pay all expenses incurred preliminary to and in connection with the incorporation of the Company and may exercise all such powers of the Company as are not by the Act or by the Memorandum or the Articles required to be exercised by the Members.

10.2    If the Company is the wholly owned subsidiary of a holding company, a director of the Company may, when exercising powers or performing duties as a director, act in a manner which he believes is in the best interests of the holding company even though it may not be in the best interests of the Company.

10.3    If the Company is a subsidiary, but not a wholly owned subsidiary, of a holding company, and the shareholders other than the holding company agree in advance, a director of the Company may, when exercising powers or performing duties as a director in connection with the carrying out of the joint venture, act in a manner which he believes is in the best interests of a Member or some Members even though it may not be in the best interests of the Company.

10.4    If the Company is carrying out a joint venture between shareholders, a director of the Company may, when exercising powers or performing duties as a director, act in a manner which he believes is in the best interests of the holding company even though it may not be in the best interests of the Company.

10.5    Each director shall exercise his powers for a proper purpose and shall not act or agree to the Company acting in a manner that contravenes the Memorandum, the Articles or the Act. Each director, in exercising his powers or performing his duties, shall act honestly and in good faith in what the director believes to be the best interests of the Company.

10.6    Any director which is a body corporate may appoint any individual as its duly authorised representative for the purpose of representing it at meetings of the directors, with respect to the signing of consents or otherwise.

10.7    The continuing directors may act notwithstanding any vacancy in their body.

10.8    The directors may by Resolution of Directors exercise all the powers of the Company to incur indebtedness, liabilities or obligations and to secure indebtedness, liabilities or obligations whether of the Company or of any third party.

10.9    All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for moneys paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as shall from time to time be determined by Resolution of Directors.

10.10   Section 175 of the Act shall not apply to the Company.

-15520821-2

SN 0180

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018
Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 28 of
104

**11      Proceedings of directors**

11.1    Any one director of the Company may call a meeting of the directors by sending a written notice to each other directors.

11.2    The directors of the Company or any committee thereof may meet at such times and in such manner and places within or outside the British Virgin Islands as the notice calling the meeting provides.

11.3    A director is deemed to be present at a meeting of directors if he participates by telephone or other electronic means and all directors participating in the meeting are able to hear each other.

11.4    A director shall be given not less than 3 days' notice of meetings of directors, but a meeting of directors held without 3 days' notice having been given to all directors shall be valid if all the directors entitled to vote at the meeting who do not attend waive notice of the meeting, and for this purpose the presence of a director at a meeting shall constitute waiver by that director.  The inadvertent failure to give notice of a meeting to a director, or the fact that a director has not received the notice, does not invalidate the meeting.

11.5    A meeting of directors is duly constituted for all purposes if at the commencement of the meeting there are present in person or by alternate not less than one-half of the total number of directors, unless there are only 2 directors in which case the quorum is 2.

11.6    A director may by a written instrument appoint an alternate who need not be a director and the alternate shall be entitled to attend meetings in the absence of the director who appointed him and to vote or consent in place of the director until the appointment lapses or is terminated.

11.7    If the Company has only one director the provisions herein contained for meetings of directors do not apply and such sole director has full power to represent and act for the Company in all matters as are not by the Act, the Memorandum or the Articles required to be exercised by the Members.  In lieu of minutes of a meeting the sole director shall record in writing and sign a note or memorandum of all matters requiring a Resolution of Directors. Such a note or memorandum constitutes sufficient evidence of such resolution for all purposes.

11.8    At meetings of directors at which the Chairman of the Board is present, he shall preside as chairman of the meeting.  If there is no Chairman of the Board or if the Chairman of the Board is not present, the directors present shall choose one of their number to be chairman of the meeting.  If the directors are unable to choose a chairman for any reason, then the oldest individual Director present (and for this purpose an alternate director shall be deemed to be the same age as the director that he represents) shall take the chair.

11.9    An action that may be taken by the directors or a committee of directors at a meeting may also be taken by a Resolution of Directors or a resolution of a committee of directors

-15520821-2

SN 0181

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 29 of
104

consented to in writing by all directors or by all members of the committee, as the case may be, without the need for any notice. The consent may be in the form of counterparts each counterpart being signed by one or more directors. If the consent is in one or more counterparts, and the counterparts bear different dates, then the resolution shall take effect on the date upon which the last director has consented to the resolution by signed counterparts.

**12      Committees**

12.1    The directors may, by Resolution of Directors, designate one or more committees, each consisting of one or more directors, and delegate one or more of their powers, including the power to affix the Seal, to the committee.

12.2    The directors have no power to delegate to a committee of directors any of the following powers:

(a)      to amend the Memorandum or the Articles;

(b)      to designate committees of directors;

(c)      to delegate powers to a committee of directors;

(d)      to appoint directors;

(e)      to appoint an agent;

(f)      to approve a plan of merger, consolidation or arrangement; or

(g)      to make a declaration of solvency or to approve a liquidation plan.

12.3    Regulations 12.2(b) and 12.2(c) do not prevent a committee of directors, where authorised by the Resolution of Directors appointing such committee or by a subsequent Resolution of Directors, from appointing a sub-committee and delegating powers exercisable by the committee to the sub-committee.

12.4    The meetings and proceedings of each committee of directors consisting of 2 or more directors shall be governed mutatis mutandis by the provisions of the Articles regulating the proceedings of directors so far as the same are not superseded by any provisions in the Resolution of Directors establishing the committee.

**13      Officers and agents**

13.1    The Company may by Resolution of Directors appoint officers of the Company at such times as may be considered necessary or expedient. Such officers may consist of a Chairman of the Board of Directors, a Chief Executive Officer, one or more vice-presidents, secretaries and treasurers and such other officers as may from time to time be considered necessary or expedient. Any number of offices may be held by the same person.

-15520821-2

SN 0182

13.2    The officers shall perform such duties as are prescribed at the time of their appointment subject to any modification in such duties as may be prescribed thereafter by Resolution of Directors. In the absence of any specific prescription of duties it shall be the responsibility of the Chairman of the Board to preside at meetings of directors and Members, the Chief Executive Officer to manage the day to day affairs of the Company, the vice-presidents to act in order of seniority in the absence of the Chief Executive Officer but otherwise to perform such duties as may be delegated to them by the Chief Executive Officer, the secretaries to maintain the register of members, minute books and records (other than financial records) of the Company and to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the treasurer to be responsible for the financial affairs of the Company.

13.3    The emoluments of all officers shall be fixed by Resolution of Directors.

13.4    The officers of the Company shall hold office until their death, resignation or removal. Any officer elected or appointed by the directors may be removed at any time, with or without cause, by Resolution of Directors. Any vacancy occurring in any office of the Company may be filled by Resolution of Directors.

13.5    The directors may, by a Resolution of Directors, appoint any person, including a person who is a director, to be an agent of the Company. An agent of the Company shall have such powers and authority of the directors, including the power and authority to affix the Seal, as are set forth in the Articles or in the Resolution of Directors appointing the agent, except that no agent has any power or authority with respect to the matters specified in Regulation 12.1. The Resolution of Directors appointing an agent may authorise the agent to appoint one or more substitutes or delegates to exercise some or all of the powers conferred on the agent by the Company. The directors may remove an agent appointed by the Company and may revoke or vary a power conferred on him.

14      Conflict of Interests

14.1    A director of the Company shall, forthwith after becoming aware of the fact that he is interested in a transaction entered into or to be entered into by the Company, disclose the interest to all other directors of the Company.

14.2    For the purposes of Regulation 14.1, a disclosure to all other directors to the effect that a director is a Member, director or officer of another named entity or has a fiduciary relationship with respect to the entity or a named individual and is to be regarded as interested in any transaction which may, after the date of the entry or disclosure, be entered into with that entity or individual, is a sufficient disclosure of interest in relation to that transaction.

14.3    A director of the Company who is interested in a transaction entered into or to be entered into by the Company may:

        (a)    vote on a matter relating to the transaction;

-15520821-2

SN 0183

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 31 of
104

(b)     attend a meeting of directors at which a matter relating to the transaction arises and be included among the directors present at the meeting for the purposes of a quorum; and

(c)     sign a document on behalf of the Company, or do any other thing in his capacity as a director, that relates to the transaction,

and, subject to compliance with the Act shall not, by reason of his office be accountable to the Company for any benefit which he derives from such transaction and no such transaction shall be liable to be avoided on the grounds of any such interest or benefit.

## 15     Indemnification

15.1    Subject to the limitations hereinafter provided the Company shall indemnify against all expenses, including legal fees, and against all judgments, fines and amounts paid in settlement and reasonably incurred in connection with legal, administrative or investigative proceedings any person who:

(a)     is or was a party or is threatened to be made a party to any threatened, pending or completed proceedings, whether civil, criminal, administrative or investigative, by reason of the fact that the person is or was a director of the Company; or

(b)     is or was, at the request of the Company, serving as a director of, or in any other capacity is or was acting for, another company or a partnership, joint venture, trust or other enterprise.

15.2    The indemnity in Regulation 15.1 only applies if the person acted honestly and in good faith with a view to the best interests of the Company and, in the case of criminal proceedings, the person had no reasonable cause to believe that their conduct was unlawful.

15.3    The decision of the directors as to whether the person acted honestly and in good faith and with a view to the best interests of the Company and as to whether the person had no reasonable cause to believe that his conduct was unlawful is, in the absence of fraud, sufficient for the purposes of the Articles, unless a question of law is involved.

15.4    The termination of any proceedings by any judgment, order, settlement, conviction or the entering of a nolle prosequi does not, by itself, create a presumption that the person did not act honestly and in good faith and with a view to the best interests of the Company or that the person had reasonable cause to believe that his conduct was unlawful.

15.5    The Company may purchase and maintain insurance in relation to any person who is or was a director, officer or liquidator of the Company, or who at the request of the Company is or was serving as a director, officer or liquidator of, or in any other capacity is or was acting for, another company or a partnership, joint venture, trust or other enterprise, against any liability asserted against the person and incurred by the person in that capacity, whether or not the

-15520821-2

SN 0184

Company has or would have had the power to indemnify the person against the liability as provided in the Articles.

**16      Records**

16.1    The Company shall keep the following documents at the office of its registered agent:

    (a)      the Memorandum and the Articles;

    (b)      the register of members, or a copy of the register of members;

    (c)      the register of directors, or a copy of the register of directors; and

    (d)      copies of all notices and other documents filed by the Company with the Registrar of Corporate Affairs in the previous 10 years.

    (e)      If the Company maintains only a copy of the register of members or a copy of the register of directors at the office of its registered agent, it shall:

    (f)      within 15 days of any change in either register, notify the registered agent in writing of the change; and

    (g)      provide the registered agent with a written record of the physical address of the place or places at which the original register of members or the original register of directors is kept.

16.2    The Company shall keep the following records at the office of its registered agent or at such other place or places, within or outside the British Virgin Islands, as the directors may determine:

    (a)      minutes of meetings and Resolutions of Members and classes of Members;

    (b)      minutes of meetings and Resolutions of Directors and committees of directors; and

    (c)      an impression of the Seal, if any.

16.3    Where any original records referred to in this Regulation are maintained other than at the office of the registered agent of the Company, and the place at which the original records is changed, the Company shall provide the registered agent with the physical address of the new location of the records of the Company within 14 days of the change of location.

16.4    The records kept by the Company under this Regulation shall be in written form or either wholly or partly as electronic records complying with the requirements of the Electronic Transactions Act.

-15520821-2

SN 0185

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 33 of
104

**17     Registers of charges**

17.1     The Company shall maintain at the office of its registered agent a register of charges in which there shall be entered the following particulars regarding each mortgage, charge and other encumbrance created by the Company:

(a)     the date of creation of the charge;

(b)     a short description of the liability secured by the charge;

(c)     a short description of the property charged;

(d)     the name and address of the trustee for the security or, if there is no such trustee, the name and address of the chargee;

(e)     unless the charge is a security to bearer, the name and address of the holder of the charge; and

(f)     details of any prohibition or restriction contained in the instrument creating the charge on the power of the Company to create any future charge ranking in priority to or equally with the charge.

**18     Continuation**

The Company may by Resolution of Members or by a Resolution of Directors continue as a company incorporated under the laws of a jurisdiction outside the British Virgin Islands in the manner provided under those laws.

**19     Seal**

The Company may have more than one Seal and references herein to the Seal shall be references to every Seal which shall have been duly adopted by Resolution of Directors. The directors shall provide for the safe custody of the Seal and for an imprint thereof to be kept at the registered office. Except as otherwise expressly provided herein the Seal when affixed to any written instrument shall be witnessed and attested to by the signature of any one director or other person so authorised from time to time by Resolution of Directors.   Such authorisation may be before or after the Seal is affixed, may be general or specific and may refer to any number of sealings.  The directors may provide for a facsimile of the Seal and of the signature of any director or authorised person which may be reproduced by printing or other means on any instrument and it shall have the same force and validity as if the Seal had been affixed to such instrument and the same had been attested to as hereinbefore described.

-15520821-2

SN 0186

**20    Accounts and audit**

20.1    The Company shall keep records that are sufficient to show and explain the Company's transactions and that will, at any time, enable the financial position of the Company to be determined with reasonable accuracy.

20.2    The Company may by Resolution of Members call for the directors to prepare periodically and make available a profit and loss account and a balance sheet.  The profit and loss account and balance sheet shall be drawn up so as to give respectively a true and fair view of the profit and loss of the Company for a financial period and a true and fair view of the assets and liabilities of the Company as at the end of a financial period.

20.3    The Company may by Resolution of Members call for the accounts to be examined by auditors.

20.4    The first auditors shall be appointed by Resolution of Directors; subsequent auditors shall be appointed by a Resolution of Members or a Resolution of Directors.

20.5    The auditors may be Members, but no director or other officer shall be eligible to be an auditor of the Company during their continuance in office.

20.6    The remuneration of the auditors of the Company:

(a)    in the case of auditors appointed by the directors, may be fixed by Resolution of Directors; and

(b)    subject to the foregoing, shall be fixed by Resolution of Members or in such manner as the Company may by Resolution of Members determine.

20.7    The auditors shall examine each profit and loss account and balance sheet required to be laid before a meeting of the Members or otherwise given to Members and shall state in a written report whether or not:

(a)    in their opinion the profit and loss account and balance sheet give a true and fair view respectively of the profit and loss for the period covered by the accounts, and of the assets and liabilities of the Company at the end of that period; and

(b)    all the information and explanations required by the auditors have been obtained.

20.8    The report of the auditors shall be annexed to the accounts and shall be read at the meeting of Members at which the accounts are laid before the Company or shall be otherwise given to the Members.

20.9    Every auditor of the Company shall have a right of access at all times to the books of account and vouchers of the Company, and shall be entitled to require from the directors and officers of the Company such information and explanations as he thinks necessary for the performance of the duties of the auditors.

-15520821-2

SN 0187

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 252
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 35 of
104

20.10 The auditors of the Company shall be entitled to receive notice of, and to attend any meetings of Members at which the Company's profit and loss account and balance sheet are to be presented.

**21    Notices**

21.1 Any notice, information or written statement to be given by the Company to Members may be given by personal service or by mail addressed to each Member at the address shown in the register of members.

21.2 Any summons, notice, order, document, process, information or written statement to be served on the Company may be served by leaving it, or by sending it by registered mail addressed to the Company, at its registered office, or by leaving it with, or by sending it by registered mail to, the registered agent of the Company.

21.3 Service of any summons, notice, order, document, process, information or written statement to be served on the Company may be proved by showing that the summons, notice, order, document, process, information or written statement was delivered to the registered office or the registered agent of the Company or that it was mailed in such time as to admit to its being delivered to the registered office or the registered agent of the Company in the normal course of delivery within the period prescribed for service and was correctly addressed and the postage was prepaid.

**22    Voluntary winding up**

The Company may by a Resolution of Members or by a Resolution of Directors appoint a voluntary liquidator.

We, Elian Fiduciary Services (BVI) Limited of Nemours Chambers, Road Town, Tortola, VG1110, British Virgin Islands, for the purpose of incorporating a BVI business company under the laws of the British Virgin Islands hereby sign these Articles of Association.

Dated the 13th day of February, 2015

Incorporator

**Signed for and on behalf of Elian Fiduciary Services (BVI) Limited** of Nemours Chambers, Road Town, Tortola, British Virgin Islands

| Signature of authorised signatory | Signature of authorised signatory |
|---|---|
| Charlotte Bailey | Susan Palmer |
| Print name | Print name |

23

-15520821-2

SN 0188

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO: 252
Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 36 of
RECEIVED NYSCEF: 11/28/2018
104

British Virgin Islands

Director's Authorization

SN 0189

## AUTHORIZATION TO DATE DIRECTOR'S RESOLUTION

The undersigned is forming a corporation under the laws of the British Virgin Islands, such corporation to be known as Genever Holdings Corporation (the "Company"). In connection with the formation of the Company, the undersigned has executed a Director's Resolution (the "Resolution") nominating certain "Authorized Persons," providing for the formation of a limited liability company under the laws of the State of New York to be known as Genever Holdings LLC (the "LLC"), and further providing for the purchase by the LLC of one or more certificates of stock in a cooperative association, all as set forth in more detail in the Resolution.

The undersigned hereby authorizes, effective as of this 12th day of February 2015, any of Robert B. Barnett, Jerry L. Shulman or Michael F. O'Connor of the law firm of Williams & Connolly LLP to date the Resolution effective on or after the date on which the formation of the Company is complete.

KWOK Ho Wan

## GENEVER HOLDINGS CORPORATION

Written Consent of Sole Director

The undersigned, being the sole director of Genever Holdings Corporation, a British Virgin Islands limited company (the "Corporation"), acting by written consent without a meeting pursuant to _____[BVI law], does hereby consent to the adoption of the following resolutions:

**RESOLVED,** that Andrea L. Sanft, Esq., is hereby authorized as an "Authorized Person" of the Corporation to file a certificate of formation for the formation of a New York limited liability company named Genever Holdings LLC ("Genever New York") and take such other acts and do such other things as are necessary to permit Genever New York to exist and obtain authority to do business in the State of New York and New York City. To the extent necessary to complete such actions, the Corporation, as the sole member of Genever New York, hereby authorizes Ms. Sanft to enter her name as "Authorized Person" for Genever New York for the same purpose.

**RESOLVED, FURTHER,** that Michael F. O'Connor, Esq., is hereby authorized to execute a limited liability company agreement for Genever New York as an "Authorized Person" with such terms and conditions as Mr. O'Connor deems appropriate.

**RESOLVED, FURTHER,** that Michael F. O'Connor, Esq., is hereby authorized as an "Authorized Person" of the Corporation to cause the Corporation's subsidiary, Genever New York, to enter into a purchase agreement with Sherry 1800s LLC, as seller, for the purchase of certificates of stock in The Sherry-Netherland, Inc., a cooperative apartment located at 781 Fifth Avenue, New York City, New York (the "Sherry-Netherland") with respect to UNITS 1801, 1804, 1807, 1809, 1811, and Servant's Room 1519) on terms and conditions as have been discussed among representatives of the Corporation and Genever New York and the director and sole shareholder of the Corporation. This authority is delegable by Mr. O'Connor who may designate one or more "Authorized Persons" of Genever New York for the same purpose.

**RESOLVED, FURTHER,** that Ms. Sanft and Mr. O'Connor are each authorized to take such other actions and make such revisions to documents as such person deems advisable or necessary in order to carry out the actions set forth in these resolutions, the approval of such revised documents being evidence of such authorized person's determination. Each of the Authorized Persons shall act, perform and exercise their sole discretion in the best interest of the Corporation and its shareholder in any respect and the director of the Corporation is and be authorized to change any of the Authorized Persons as he thinks fit

Dated as of February 12, 2015

Ho Wan KWOK

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO: 252

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 40 of
104

British Virgin Islands/New York

Designation of Authorized Persons

SN 0193

## GENEVER HOLDINGS CORPORATION

## GENEVER HOLDINGS LLC

- Designation of Authorized Person

The undersigned, being an Authorized Person of Genever Holdings Corporation, a British Virgin Islands limited company (the "Corporation"), hereby makes the following delegation of authority:

**THE AUTHORIZED PERSON** hereby designates each of Ira Gilbert, Esq. and Steven Simkin, Esq., acting alone or jointly, as an "Authorized Person" of Genever Holdings LLC ("Genever New York"), a New York limited liability company of which the Corporation is the sole member, and delegates authority to and directs each of them to enter into a purchase agreement with Sherry 1800s LLC, as seller, for the purchase of certificates of stock in The Sherry-Netherland, Inc., a cooperative apartment located at 781 Fifth Avenue, New York City, New York (the "Sherry-Netherland") with respect to UNITS 1801, 1804, 1807, 1809, 1811, and Servant's Room 1519) on terms and conditions as have been discussed among representatives of the Corporation and Genever New York and the director and sole shareholder of the Corporation. This authority is non-delegable by either of Messrs. Gilbert and Simkin.

   **Pursuant to this designation of authorized person,** Messrs. Gilbert and Simkin are each authorized to take such other actions and make such revisions to the purchase documents as such person deems advisable or necessary in order to carry out the actions authorized in this designation, the approval of such revised documents being evidence of such authorized person's determination.

Dated as of February 12, 2015

Michael F. O'Connor
Authorized Person

SN 0194

New York LLC

Evidence of Formation

SN 0195

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM        INDEX NO. 652077/2017
NYSCEF DOC. NO. 252        Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 43 of        RECEIVED NYSCEF: 11/28/2018
104

NYS Department of State - Corporations Public Inquiry System - Session ID: 1586          Page 1 of 1

```
DOSPITECS            CORPORATIONS PUBLIC INQUIRY SYSTEM            02/17/15
                         CURRENT STATUS INFORMATION
CURR NAME GENEVER HOLDINGS LLC


NAME ASSMD ********* TYPE 01DA A STATUS A
    EFFECTIVE DATE 02/17/2015      BIENNIAL RPT
ORIG NAME GENEVER HOLDINGS LLC


INC. DATE   COUNTY   DURATION    JURISDICTION       FOR. INC.    NFP TYPE
02/17/2015  NEWY                                     __/__/____
                                                   CORPID 4711112


Process Name CORPORATION SERVICE COMPANY_____
Address       80 STATE STREET_____
City,St,Zip  ALBANY_____ , NY_ 12207  - 2543


CEO Name     _____
Address      _____
City,St,Zip  _____ , __ _ - ____
INF101 - PRESS APPROPRIATE FUNCTION KEY FOR DESIRED ACTION
===> _____
1=CERT SEAL 2=      3=PREVIOUS 4=LIST     5=HISTORY  6=STOCK
7=        8=        9=NAMES   10=CURR ADD 11=BIEN RPT 12=NAME ENTRY
```

| | Increase Font | Decrease Font | Disconnect | AT OFF |

SN 0196

# New York LLC

# Operating Agreement

SN 0197

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO: 252    Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    RECEIVED NYSCEF: 11/28/2018    Page 45 of

104

# LIABILITY COMPANY AGREEMENT

## OF

### · GENEVER HOLDINGS LLC

LIMITED LIABILITY COMPANY AGREEMENT made as of the *13th* day of *February*, 2015 by and among (a) GENEVER HOLDINGS LLC (the "Company"), and (b) the persons identified on Schedule A as members of the Company (hereinafter referred to as the "Members" and each individually, a "Member").

The Members are entering into this Agreement in order to form the Company as a New York limited liability company by organizing the Company in accordance with the New York Limited Liability Company Law, as amended from time to time (the "Act").

The parties hereto desire to set forth the terms and conditions for the operation of the Company. This Agreement sets forth fully the agreements and understandings of the Members in respect of the Company.

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1.    Definitions.

1.1    "Family Group," with respect to any Member, includes (i) with respect to any Member who is an individual, such Member's spouse and descendants, (ii) with respect to any Member that is a trust, any beneficiary of the trust and the spouse and descendants of any beneficiary and (iii) with respect to any Member that is an entity, any beneficial owner of such entity and the spouse and descendants of any such beneficial owner.

1.2    "Membership Interest" means the ownership interest of a Member in the Company. The Membership Interest of each of the Members as of the date hereof is set forth on Schedule A.

1.3    "Property" shall have the meaning set forth in Section 5.

2.    Name: The name of the Company shall be GENEVER HOLDINGS LLC.

3.    Articles; Certificates. The Members, from time to time as such Members deem advisable, may, by written instrument, elect one or more additional natural persons and designate them as "authorized persons" of the Company. The Members or any officer or authorized person shall execute, deliver and file any other articles and/or certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

SN 0198

2

4.    Term. This Agreement shall be effective as of the filing of the Company's Articles of Organization with the Secretary of State of New York and shall have perpetual existence.

5.    Purposes. The purposes of the Company are to acquire, own, hold, manage, operate, maintain, repair, improve, renovate, sell, finance, refinance and otherwise use or deal with the property described on Schedule B hereto, such other real property as the Members shall determine to acquire and any tangible personal property usually located therein or used or of use in connection therewith (collectively, the "Property"); and to engage in any other lawful business or activities for which limited liability companies may be organized under the Act. In furtherance of its purposes, the Members shall have the power and are hereby authorized to take any and all actions and engage in such activities as may be necessary, convenient, advisable or incidental with respect to the conduct of the business of the Company as determined by the Members in their sole discretion (but subject to the further provisions of this Agreement), including, but not limited to, acquiring, maintaining, improving, selling, leasing, and mortgaging real property, and the Members shall have and exercise all of the power and rights conferred upon limited liability companies formed pursuant to the Act.

6.    Powers. The Company shall have the power to do all things necessary or desirable in the conduct of its business to the fullest possible extent. Limited Liability. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Members shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member of the Company.

8.    Office. The principal office and place of business of the Company shall be located at such place as the Members may from time to time determine.Management.    Management of the Company shall be vested in the Members. The Members shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company and to take all such actions as the Members deem necessary or appropriate to accomplish the purposes of the Company as set forth herein.

9.1.1    The Members shall have sole power to bind the Company, except and to the extent that such power is expressly delegated to any other person or entity by the Members, and such delegation shall not cause the Members to cease to have such powers. The Members and/or, to the extent determined by the Members, any officers appointed by the Members in accordance with Section 9.3 shall each have the power and authority to do any and all acts necessary or convenient to or for the furtherance of the purposes of the Company set forth in this Agreement.

9.1.2    If any vote or consent of the Members is required by the Act at a time when there is only one Member, then the vote of such Member shall be considered the vote or consent of the Members. If there is more than one Member, then, unless a greater majority is required by the Act or this Agreement, the vote of Members holding a majority of the Membership Interests in the Company shall be considered the

SN 0199

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 252
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 47 of
104

3

vote or consent of the Members. Any action of the Members may be taken by written consent without a meeting and without prior notice.

9.2     In addition to the powers granted by law, the Members shall have full power to do everything in administering the Company that the Members may deem advisable, to the full extent that an individual owning property would have and without prior court authority, including the power: To retain so long as the Members may deem advisable and to acquire by purchase or otherwise, any kind of real property or personal property; to sell for cash or on credit (at public or private sale), exchange, mortgage, lease for any period (either as landlord or tenant and including renewals of the term) and modify, extend or cancel leases, grant options or otherwise dispose of or deal with any real or personal property, all without regard to statutory restrictions, in such manner and upon such terms and conditions as they deem advisable without first obtaining a court order; to erect, renovate or alter buildings or otherwise improve and manage buildings and property; demolish buildings; make ordinary and extraordinary repairs; grant easements and make party wall contracts; dedicate roads; subdivide; adjust boundary lines and partition; to distribute in kind or in money or partly in each, even if shares be composed differently; to hold property in the names of nominees or so that it will pass on delivery; to renew, assign, alter, extend, compromise, abandon or release or arbitrate claims asserted by or against the Company; to engage and rely on brokers and investment counsel, accountants, appraisers and other experts and legal counsel and to compensate them; to employ custodians of the assets and bookkeepers and clerks and other assistants; and to borrow money for any purpose.

9.3     Officers.  The Members may, from time to time as they deem advisable, select one or more natural persons and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person.  The Members may, by written instrument, delegate to any Officer or any other agent of the Company any of the Members' powers under this Agreement, including, without limitation, the power to bind the Company.  Any delegation pursuant to this Section 9.3 may be revoked at any time by the Members.  An Officer may be removed with or without cause by the Members.  Any Officer may resign at any time by giving written notice to the Members.  Any vacancy in any office, due to death, incapacity, resignation or removal, shall be filled by the Members. Officers may be Members or non-Members.

9.4     Fiduciary Duty of the Members and Officers.  In exercising the powers granted by this Agreement and in performing the duties required by this Agreement with respect to the management and operation of the Company, each Member and Officer, pursuant to general principles of law, has a fiduciary duty to act reasonably in (or not opposed to) the best interests of the Company and the Members.

10.     Other Business.  The Members and any person or entity affiliated with any of the Members may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  None of the Company or the other Members shall have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM   INDEX NO. 652077/2017
NYSCEF DOC. NO. 252      Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   RECEIVED NYSCEF: 11/28/2018

Case 22-50073        Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 48 of
104

4

11.    Liability and Indemnity.

11.1    To the fullest extent permitted by applicable law, no Member, Officer, employee or agent of the Company ("Covered Person") shall be liable to the Company, any Member or any other person or entity who is a party to or otherwise bound by this Agreement for any liability, loss, damage or claim suffered or incurred by reason of any act or omission performed or omitted by such Covered Person, except that a Covered Person shall be liable for any such liability, loss, damage, cost or claim suffered or incurred by reason of such Covered Person's (a) gross negligence or willful misconduct, (b) violation of any express provision of this Agreement or of the implied contractual covenant of good faith and fair dealing, and/or (c) breach of such Covered Person's duty of loyalty ("Unprotected Acts and Omissions"). Consistent with the preceding sentence, each Covered Person may act or refrain from acting without liability to the Company or to any Member in reliance upon any opinion of any consultant or advisor on any matter which the Covered Person reasonably believes to be within the consultant or advisor's professional competence.

11.2    To the fullest extent permitted by applicable law, and to the extent of its assets, the Company shall indemnify, defend and hold harmless any Covered Person for any liability, loss, damage, cost or claim suffered or incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in connection with the Company, provided, however, that (i) no Covered Person shall be entitled to be indemnified in respect of any such liability, loss, damage, cost or claim suffered or incurred by such Covered Person by reason of such person's Unprotected Acts and Omissions, and (ii) any indemnity under this Section 11.2 shall be provided out of, and to the extent of, Company assets only, and no Member shall have personal liability on account thereof.

11.3    To the fullest extent permitted by law, expenses ((including, without limitation, reasonable attorneys' fees and expenses) incurred in defending any action, suit or proceeding subject to this Section 11 shall be paid or reimbursed by the Company in advance of the final disposition of any proceeding and without any determination as to the Covered Person's ultimate entitlement to indemnification; provided, however, that the payment of such expenses incurred in advance of the final disposition of a proceeding shall be made only upon delivery to the Company of a written affirmation by such person of his good faith belief that he or she has met the standard of conduct necessary for indemnification under this Section and a written undertaking, by or on behalf of such person, to repay all amounts so advanced if it shall ultimately be determined that such person is not entitled to be indemnified.

12.    Registered Agent. The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is: c/o Brad Karp, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, New York 10019-6064.

**SN 0201**

5

13. <u>Capital Contributions</u>. The initial Members agree to contribute to the capital of the Company the cash or property described on <u>Schedule A</u>. In exchange for such contribution, each Member shall receive a Membership Interest in the Company in the percentage set forth on <u>Schedule A</u>. The Company shall maintain a separate Capital Account for each Member in accordance with Treasury Regulations promulgated from time to time under Section 704(b) of the Code.

14. <u>Additional Contributions/Member Loans</u>. No Member is required to make any additional capital contributions to the Company. A Member may extend credit to the Company with an affirmative vote of the Members. Member loans shall not constitute Capital Contributions.

15. <u>Allocations</u>.

15.1 <u>Profits and Losses</u>. The Company's profits and losses shall be allocated to the Members pro rata, in accordance with their Membership Interests. The allocations set forth in this section shall have economic effect equivalence within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(i) and, solely for tax purposes, be made in accordance with the Regulations promulgated under Code Section 704(c).

15.2 <u>Use of Property</u>.

15.2.1 If the Property is not being leased to a tenant, the Members and any one or more of any Member's Family Group may use the Property in an equitable fashion to be determined by the Members by a vote of a majority in interest of the Members.

15.2.2 Persons who are neither Members nor members of a Family Group of any Member may use the Property only upon the prior unanimous approval of the Members.

15.2.3 Nothing herein shall preclude any Member from inviting guests to stay at the Property while such Member or members of any Member's Family Group are using the Property in accordance with Section 15.2.1 above.

16. <u>Distributions</u>. Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Members. Such distributions shall be allocated among the Members in the same proportion as their then positive capital account balances. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

17. <u>Sale of the Property</u>. Any part or all of the Property may be sold upon the vote of the Members.

SN 0202

6

18.   Assignment of Membership Interests.

18.1    A Member shall have the right to sell, assign, mortgage, pledge, or otherwise voluntarily transfer or encumber any portion or all of such Member's Membership Interest with the consent of a majority in interest of the Members other than the Member requesting such assignment, provided, however, that no such transfer may be made that would cause the Company to violate any rules, regulations, bylaw or other governing arrangements of any cooperative association or other legal person of which the Company is a shareholder or member, and any purported sale, assignment, mortgage, pledge or other transfer or encumbrance not in conformity with this Section 18.1 shall be null and void.

18.2    In addition, any interest as a Member that is held by a custodian for a minor under a Uniform Gifts to Minors Act, Uniform Transfers to Minors Act or any similar act shall be fully transferable and assignable to the minor when the minor reaches the age of termination of such custodianship under the applicable statute. Any interest held by an entity may be fully transferable and assignable to the beneficial owners thereof.

18.3    Any assignee who receives a Membership Interest in accordance with this Section shall be admitted as a Member only upon his, her or its delivery to the Company of a written instrument by which he, she or it approves and adopts all of the provisions of this Agreement, as amended. Such admission shall be deemed effective immediately prior to the transfer, and, in the case of a transfer of all of a transferor Member's Interest in the Company, immediately following such admission, the transferor Member shall cease to be a Member of the Company. In the event of an assignment and admission of a transferee in accordance with this Section 18.3, the Company shall continue without dissolution.

19.   Admission of Additional Members by the Company. One or more additional Members of the Company may be admitted to the Company with the consent of the Members and upon his, her or its delivery to the Company of a written instrument by which he, she or it approves and adopts all of the provisions of this Agreement, as amended.

20.   Withdrawal of a Member. A Member may withdraw from the Company at any time.

21.   Dissolution.

21.1    The Company shall dissolve and its affairs shall be wound up upon the first to occur of the following: (i) upon the unanimous vote of the Members; (ii) any time there are no Members of the Company unless the Company is continued in accordance with this Agreement and the Act; or (iii) as otherwise required in the Act.

21.2    Upon dissolution of the Company, the Members shall (i) wind up the affairs of the Company, (ii) pay all outstanding expenses, real property taxes and other debts and liabilities of the Company (including without limitation to any

SN 0203

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 252
Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 51 of
RECEIVED NYSCEF: 11/28/2018
104

7

Member), (iii) establish any reserves against liabilities or obligations of the Company that the Members deem appropriate and (iv) distribute the remaining assets of the Company to the Members (a) in proportion to their positive capital accounts until such capital accounts reach zero and (b) thereafter in accordance with their respective Membership Interests.

22.    Tax Matters. The Company shall designate a "tax matters partner" in accordance with Section 6231(a)(7) of the Code. In the event that the Company has more than one Member, it shall be treated as a partnership for federal and state income tax purposes. In the event that the Company has a single Member, it shall be treated as a sole proprietorship and a disregarded entity for federal and state income tax purposes.

23.    Amendments. This Agreement may be modified, altered, supplemented or amended from time to time only upon the unanimous written consent of the Members.

24.    Binding Agreement; Successors and Assigns. The Members agree that this Agreement shall be binding upon the parties hereto and their respective successors and permitted assigns and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

25.    Separability of Provisions. Each provision of this Agreement shall be considered separable, and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

26.    Counterparts. This Agreement may be executed in any number of counterparts, including by facsimile or electronic signature, each of which shall be deemed an original of this Agreement.

27.    Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior understandings or agreements between the parties with respect to such subject matter.

28.    Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of New York (without regard to any otherwise applicable conflict of laws principles), all rights and remedies being governed by said laws.

29.    Rule Against Perpetuities. If this Agreement or any covenants or provisions herein would otherwise be unlawful, void or voidable for violation of the Rule Against Perpetuities, then this Agreement, or such covenant or provision, as the case may be, shall terminate twenty-one (21) years after the death of the survivor of all of the descendants of King George V of England living on the date hereof.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

**MEMBER:**

Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 52 of
104

8

GENEVER HOLDINGS CORPORATION

By: _____

Michael O'Connor, Authorized Person
_____
Name and Title


GENEVER HOLDINGS LLC

By: Genever Holdings Corporation, sole
Member

By: _____
Name and Title

Michael O'Connor

Authorized Person

SN 0205

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 252
RECEIVED NYSCEF: 11/28/2018

Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 53 of
104

## Schedule A

| Member | Membership Interest |
|---|---|
| Genever Holdings Corporation | 100% |
| TOTAL | 100% |

SN 0206

# EXHIBIT 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

*Plaintiff*,

-against-

KWOK HO WAN *a/k/a* KWOK HO *a/k/a* GWO
WEN GUI *a/k/a* GUO WENGUI *a/k/a* GUO
WEN-GUI *a/k/a* WAN GUE HAOYUN *a/k/a*
MILES KWOK *a/k/a* HAOYUN GUO,

*Defendant*.

Index No. 652077/2017

Hon. Barry R. Ostrager
IAS Part 61

Motion Sequence No. 003

**AFFIDAVIT OF
YAN PING WANG**

STATE OF NEW YORK      )
                                           ) ss.:
COUNTY OF NEW YORK   )

YAN PING WANG, being duly sworn, deposes and says that:

1.      I am the President of Golden Spring (New York) Ltd., and in that capacity

serve as an administrator for the interests of the defendant, sued herein as Kwok Ho Wan, *a/k/a*

Kwok Ho, *a/k/a* Gwo Wen Gui, *a/k/a* Guo Wengui, *a/k/a* Guo Wen-Gui, *a/k/a* Wan Gue

Haoyun, *a/k/a* Miles Kwok, *a/k/a* Haoyun Guo ("Mr. Kwok"), and his family.  I submit this

affidavit in opposition to the application of plaintiff Pacific Alliance Asia Opportunity Fund L.P.

("PAX") seeking an attachment of real property located on the eighteenth floor of the Sherri

Netherland Hotel, 781 Fifth Avenue, New York County, City and State of New York ("the

Apartment").

2.      Mr. Kwok's ownership interest in the Apartment, through a limited

liability company, is not in real property.  Rather, it consists of an ownership interest in certain

shares of The Sherry-Netherland, Inc., a cooperative housing association and owner of the

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/16/2018

Sherry-Netherland Hotel, and the assignment of a proprietary lease agreement for Unit 18 (the

"Proprietary Lease Agreement"). The funds used to purchase the Apartment came from family

and third-party funding unrelated to the loan at issue in this action.

3.      The shares of The Sherry-Netherland, Inc., and therefore the Apartment

itself, are not owned by Mr. Kwok individually. Genever Holdings LLC, a domestic limited

liability company ("Genever USA") is both the owner of the shares in The Sherry-Netherland,

Inc. and the holder of the Proprietary Lease Agreement.

4.      Genever USA is owned by Genever Holdings Corporation, a corporation

organized and existing under the laws of the British Virgin Islands ("Genever BVI"). Mr. Kwok

is the sole shareholder of Genever BVI. Annexed hereto as <u>Exhibit A</u> is a true and correct copy

of the register of members of Genever BVI confirming that Mr. Kwok is its sole shareholder.

5.      Pursuant to a pledge and security agreement entered into in or about May

2015, all of the shares of Genever BVI have been pledged as collateral to a third party Roscalitar

2, an exempted company incorporated in the Cayman Islands. Roscalitar 2 is not owned by Mr.

Kwok. Annexed hereto as <u>Exhibit B</u> is a true and correct copy of a certificate of registration of

charge confirming that the assets of Genever BVI, which by virtue of its ownership of Genever

USA include the Apartment, were pledged to Roscalitar 2 in or about May 2015.

6.      Annexed hereto as <u>Exhibit C</u> are three property acceptance confirmation

notes for the three (3) apartments which were the subject of the settlement deeds entered by the

parties. These documents, which demonstrate that possession of the apartments was delivered to

- 2 -

and accepted by the PAX entities on or about November 14, 2013, were provided by Savills, the

property management company.

_____
YAN PING WANG

Sworn to before me this
15th day of May, 2018

_____
Notary Public

*Amy K. Hawk*
*Notary Public, State of New York*
*No. 01HA6192626*
*Qualified in Queens County*
*Commission Expires Sept. 2, 20___*

- 3 -

FILED: NEW YORK COUNTY CLERK 05/16/2018 06:44 PM

NYSCEF DOC. NO. 183

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/16/2018

Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 58 of
104

# EXHIBIT A

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/16/2018

FILED: NEW YORK COUNTY CLERK 05/16/2018 06:44 PM
NYSCEF DOC. NO. 183

## Genever Holdings Corporation

### Register of Members as of 18-Feb-2015

| | |
|---|---|
| Registered No. | 18-Feb-2015 |
| 1862840 | Page    1 |
| | faull |

| Currency Code | Share Class | Share Class Description | Authorised | Par Value | Issued Shares | Share Premium |
|---|---|---|---|---|---|---|
| USD | ORD | Ordinary Shares | 50,000 | 0.001 | 1,000 | 0 |

Share Holder . . . . . . . Mr Ho Wan Kwok
49th Floor
Bank of China Tower
No.1 Garden Road
CENTRAL
Hong Kong

Date Appointed. . . . . . 13-Feb-2015     Date Ceased to be a Member . . . . . .

| Posting Date | Certificate No. | Shares | Amount | Running Balance | Share Premium | Description |
|---|---|---|---|---|---|---|
| 13-Feb-2015 | 1 | 1,000 | 1.00 | 1.00 | 0.00 | Issue of a Fully Paid 0.001 USD ORD Share. |
| Total for Share Holder. . | | 1,000 | | 1.00 | 0.00 | |

# EXHIBIT 11

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 256

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 61 of
104

Susan Hennelly

| | |
|---|---|
| **From:** | Susan Hennelly |
| **Sent:** | Tuesday, March 03, 2015 3:31 PM |
| **To:** | BoardOfDirectors |
| **Subject:** | Sale of Apartment 1801 and Maid's Room 2219 |
| **Attachments:** | Kwok board package.pdf |

We have received a contract for the sale of the 2,950 shares allocated to Apartment 1801 and the 50 shares allocated to Maid's Room 2219 from Sherry 1800s, LLC (Haroche) to Genever Holdings LLC (Miles Kwok).

Attached are copies of the contract of sale, Mr. Kwok's application and several letters of reference.

The purchase price is $67,500,000, plus $2,500,000 for the furnishings. The 2015 maintenance is $55,214 per month plus an additional $936 for the Maid's Room. This is a residential apartment and will be used by Mr. Kwok and his family.

Due to Mr. Kwok's foreign status and purchasing in an LLC, he will be required to sign an occupancy agreement and personally guarantee the lease. He will also be required to provide a security deposit.

This apartment encompasses the entire floor and is approximately 7,300 sq. ft. plus 2,170 sq. ft. of terraces. Attached is a floor plan.

Mr. Kwok has also entered into a contract to purchase Maid's Room 719 which he will purchase simultaneously, if approved.

Michael Horvitz and Fred Seegal have interviewed Miles Kwok and his son, Mileson Kwok. His wife, Hing Chi, was present via Skype.

Very truly yours,

Michael J. Ullman
Executive Vice President
& Chief Operating Officer
The Sherry Netherland Hotel
781 Fifth Avenue
New York, NY 10022
P: 212-231-6811  F: 212-832-4845
For reservations and special offers, go to

1

SN 0027

Executed Contract of Sale

SN 0028

Contract of sale cooperative apartment (7-2000)
Prepared by the Committee on Condominiums and Cooperatives of the Real Property Section of the New York State Bar Association

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

## Contract of Sale - Cooperative Apartment

This Contract is made as of February_____, 2015 between the "Seller" and the "Purchaser" identified below.

1 Certain Definitions and Information
1.1 The "Parties" are:

1.1.1 "Seller": Sherry 1800s, LLC
*Prior names used by Seller:*
*Address: 1233 Rock Rimmon Road, Stamford, CT 06903*

*Tax ID. No.: 20-0780554*

1.1.2 "Purchaser": Genever Holdings LLC

*Address:*

*S.S. No.:*

1.2 The "Attorneys" are *(name, firm name, address and telephone, fax).*

1.2.1 "Seller's Attorney"
Michael J. Jones, Esq.
Ivey, Barnum & O'Mara, LLC
170 Mason Street, Greenwich, CT 06830
Tel: 203-661-6000
Fax: 203-661-7088
mjones@ibolaw.com

1.2.2 "Purchaser's Attorney"
Ira Gilbert, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the America
New York, NY 10019-6064
Tel: 212-373-3529
Fax: 212-492-0529
igilbert@paulweiss.com

1.3 The "Escrowee" is *the [Seller's]* Attorney.

1.4 The Managing Agent is *(name, address and telephone, fax):*
Sherry Netherland Hotel
Susan Hennelly
781 Fifth Avenue, 1", New York, NY 10022
Tel: 212-231-6811 Fax: 212-832-4845

(*) /See 1.12 below.

1.12 Specifically excluded from this sale is all personal property not included in ¶ 1.11 and all contents included in the unit with the exception of 13 paintings and drawings, one antique secretary desk on east wall of LR (will be replaced) personal "knick knacks" such as small boxes, clocks, picture frames, pictures, etc.

1.5 The real estate "Broker(s)" (see ¶ 12) is/are: John Burger, and Kathy Sloane, Brown Harris Stevens and Serena Boardman, Sotheby's 1.6 The name of the cooperative housing corporation ("Corporation") is:
Sherry Netherland, Inc.

1.7 The "Unit" number is: 1801, which encompasses the entire *

1.8 The Unit is located in "Premises" known as: 781 Fifth Avenue, New York, NY

1.9 The "Shares" are the shares of the Corporation allocated to the Units.

* 18th Floor, except elevator hallway and including Maid's Room 1519

1.10 The "Lease" is the Corporation's proprietary lease or occupancy agreement for the Unit, given by the Corporation which expires on

1.11 "Personalty" is the following personal property, to the extent existing in the Unit on the date hereof: the refrigerators, freezers, ranges, ovens, built-in microwave ovens, dishwashers, garbage disposal units, cabinets and counters, lighting fixtures, chandeliers, wall-to-wall carpeting, plumbing and heating fixtures, central air-conditioning and/or window or sleeve units, washing machines, dryers, screens and storm windows, window treatments, switch plates, door hardware, mirrors, built-ins not excluded in ¶ 1.12 and all of the "furnishings including but not limited to everyday china, pots, pans, cooking items, flatware, as well as crystal glasses and decanters, etc in the bar area and personal property (except as specifically excluded in 1.12), including but not limited to all items set forth in the series of videos contained in the DVD(the "DVD") delivered by Brown Harris Stevens to Unit 1801 at 2.00 pm of February 20, 2015.

1.13 The sale [does] [does not] Include Seller's interest in [Storage]/ [Servant's Room #1519]/ [Parking Space] ("Included Interests")

1.14 The "Closing" is the transfer of ownership of the Shares and Lease.

1.15 The date scheduled for Closing is no later than 3/6/15 ("Scheduled Closing Date") at 10:00 A.M. (See ¶¶ 9 and 10)

1.16 The "Purchase Price" is: $67,500,000.00

1.16.1 The "Contract Deposit" is: $7,000,000.00

1.16.2 The "Balance" of the Purchase price due at Closing is: $63,000,000.00 (See ¶ 2.2.2)  See SR18 in Second Rider

1.17 The monthly "Maintenance" charge is $57,085.53 (See ¶ 4)

1.18 The "Assessment", if any, payable to the Corporation, at the date of this Contract is NONE, payable as follows:

1.19 [Purchaser] shall pay the Corporation's flip tax, transfer fee (apart from the transfer agent fee) and/or waiver of option fee ("Flip Tax"), if any.

1.20 Financing Options (Delete two of the following ¶¶ 1.20.1, 1.20.2 or 1.20.3)

1.20.1 Purchaser may apply for financing in connection with this sale and Purchaser's obligation to purchase under this Contract is contingent upon issuance of a Loan Commitment Letter by the Loan Commitment Date ([18.1.2).

1.20.2 Purchaser may apply for financing in connection with this sale but Purchaser's obligation to purchase under this Contract is not contingent upon issuance of a Loan Commitment letter.

1.20.3 Purchaser shall not apply for financing in connection with this sale.

1.21 If ¶ 1.20.1 or 1.20.2 applies, the "Financing Terms" for ¶ 18 are: a loan of $ _____ for a term of _____ years or such lesser

(*) 1.12 – Specifically excluded from this sale are thirteen (13) paintings and drawings; one antique secretary desk on east wall of LR (to be replaced by a piece of furniture that resembles this); personal 'knick knacks' such as small boxes, clocks, picture frames, pictures, etc. (but if 'knick knacks' are in the DVD, they are included); file cabinets in GII's office and contents thereof; all the clothing, framed photographs(except specific frame to be designated by buyer) and the model of the Seller's private yacht located in Seller's office.

**SN 0029**

*Contract of sale cooperative agreement, 7-1901*
*Prepared by the Committee on Condominium and Cooperative of the Real Property Section of the New York State Bar Association*

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

## Contract of Sale - Cooperative Apartment

This Contract is made as of February **21**, 2015 between the "Seller" and the "Purchaser" identified below.

**1 Certain Definitions and Information**

1.1 The "Parties" are:

1.1.1 "Seller": Sherry 1800s, LLC
*Prior names used by Seller:*
*Address: 1233 Rock Rimmon Road, Stamford, CT 06903*

Tax ID. No.: 20-0780154

1.1.2 "Purchaser": Genever Holdings LLC

Address:

S.S. No.:

1.2 The "Attorneys" are (*name, firm name, address and telephone, fax*).

1.2.1 "Seller's Attorney"
Michael J. Jones, Esq.
Ivey, Barnum & O'Mara, LLC
170 Mason Street, Greenwich, CT 06830
Tel: 203-661-6000
Fax: 203-661-7088
mjones@ibholaw.com

1.2.2 "Purchaser's Attorney"
Ira Gilbert, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the America
New York, NY 10019-6064
Tel: 212-373-3529
Fax: 212-492-0529
igilbert@paulweiss.com

1.3 The "Escrowee" is *the [Seller's] Attorney.*

1.4 The Managing Agent is (*name, address and telephone, fax*):
Sherry Netherland Hotel
Susan Hennelly
781 Fifth Avenue, 1", New York, NY 10022
Tel: 212-231-6811 Fax: 212-832-4845

1.5 The real estate "Broker(s)" (*see ¶ 12*) is/are: John Burger, and Kathy Sloane, Brown Harris Stevens and Serena Boardman, Sotheby's 1.6 The name of the cooperative housing corporation ("Corporation") is:
Sherry Netherland, Inc.

1.7 The "Unit" number is: 1801, which encompasses the entire *

1.8 The Unit is located in "Premises" known as: 781 Fifth Avenue, New York, NY

1.9 The "Shares" are the shares of the Corporation allocated to the Unit.
* 18th Floor, except elevator hallway and including Maid's Room 1519

1.10 The "Lease" is the Corporation's proprietary lease or occupancy agreement for the Unit, given by the Corporation which expires on

1.11 "Personalty" is the following personal property, to the extent existing in the Unit on the date hereof: the refrigerators, freezers, ranges, ovens, built-in microwave ovens, dishwashers, garbage disposal units, cabinets and counters, lighting fixtures, chandeliers, wall-to-wall carpeting, plumbing and heating fixtures, central air-conditioning and/or window or sleeve units, washing machines, dryers, screens and storm windows, window treatments, switch plates, door hardware, mirrors, built-ins not excluded in ¶ 1.12 and all of the ~~furnishings including but not limited to everyday china, pots, pans, cooking items, flatware, as well as crystal glasses and decanters etc. in the bar area~~ and personal property (except as specifically excluded in 1.12), including but ~~not limited to all items set forth in~~ the series of videos contained in the DVD (the "DVD") delivered by Brown Harris Stevens to Unit 1801 at 2:00 pm on February 20, 2015.

/See 1.12 below/

1.12 Specifically excluded from this sale is all personal property ~~not included in ¶ 1.11 and all contents included in the unit with the exception of 13 paintings and drawings, one antique secretary desk on east wall of LR (will be replaced) personal "knick-knacks" such as small boxes, clocks, picture frames, pictures, etc.~~

1.13 The sale [does] [**does not**] include Seller's interest in [Storage]/ [Servant's Room #1519]/ ~~[Parking Space]~~
("Included Interests")

1.14 The "Closing" is the transfer of ownership of the Shares and Lease.

1.15 The date scheduled for Closing is **no later than 3/6/15** ("Scheduled Closing Date") at 10:00 A.M. (See ¶ 9 and 10)

1.16 The "Purchase Price" is: $67,500,000.00

1.16.1 The "Contract Deposit" is: $7,000,000.00

1.16.2 The "Balance" of the Purchase Price due at Closing is: $63,000,000.00 (See ¶ 2.2.2)  **See SR18 in Second Rider**

1.17 The monthly "Maintenance" charge is $57,085.53    (See ¶ 4)

1.18 The "Assessment", if any, payable to the Corporation, at the date of this Contract is NONE, payable as follows:

1.19 [Purchaser] shall pay the Corporation's flip tax, transfer fee (apart from the transfer agent fee) and/or waiver of option fee ("Flip Tax"), if any.

1.20 Financing Options (*Delete two of the following ¶¶ 1.20.1, 1.20.2 or 1.20.3*)

~~1.20.1 Purchaser may apply for financing in connection with this sale and Purchaser's obligation to purchase under this Contract is contingent upon issuance of a Loan Commitment Letter by the Loan Commitment Date (¶13.1.2).~~

~~1.20.2 Purchaser may apply for financing in connection with this sale but Purchaser's obligation to purchase under this Contract is not contingent upon issuance of a Loan Commitment Letter.~~

~~1.20.3 Purchaser shall not apply for financing in connection with this sale.~~

~~1.21 If ¶ 1.20.1 or 1.20.2 applies, the "Financing Terms" for ¶18 are: a loan of $ ___ (or a term of ___ years at such lease~~

⊛ **1.12** – Specifically excluded from this sale are thirteen (13) paintings and drawings; one antique secretary desk on east wall of LR (to be replaced by a piece of furniture that resembles this desk); personal 'knick knacks' such as small boxes, clocks, picture frames, pictures, etc. (but if 'knick knacks' are in the DVD, they are included); file cabinets in Gil's office and contents thereof; all the clothing, framed photographs(except specific frame to be designated by buyer) and the model of the Seller's private yacht located in Seller's office.

SN 0030

~~amount or shorter term as applied for or acceptable to Purchaser;~~
~~and the "Loan Commitment Date" for ¶ 18 is _____ calendar~~
~~days after the Delivery Date.~~

1.22 The "Delivery Date" of this Contract is the date on which a fully executed counterpart of this Contract is deemed given to and received by Purchaser or Purchaser's Attorney as provided in ¶ 17.3.

1.23 All "Proposed Occupants" of the Unit are:

1.23.1 persons and relationship to Purchaser:

1.23.2 pets:

1.24 The Contract Deposit shall be held in [a **non-**] IOLA escrow account. If the account is a non- IOLA account then interest shall be paid to the Party entitled to the Contract Deposit. The Party receiving the interest shall pay any income taxes thereon. The escrow account shall be a segregated bank account at Depository: **BNY MELLON**

Address: 10 Mason Street, Greenwich, CT 06830 (See ¶ 27)

1.25 This Contract is continued on attached rider(s).

**2 Agreement to Sell and Purchase; Purchase Price; Escrow**

2.1 Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, the Seller's Shares, Lease, Personalty and any Included Interests and all other items included in this sale, for the Purchase Price and upon the terms and conditions set forth in this Contract.

2.2 The Purchase Price is payable to Seller by Purchaser as follows:

2.2.1 the Contract Deposit at the time of signing this Contract by Purchaser's good check to the order of Escrowee; and

2.2.2 the Balance at Closing, only by cashier's or official bank check or certified check of Purchaser payable to the direct order of Seller. The check(s) shall be drawn on and payable by a branch of a commercial or savings bank, savings and loan association or trust company located in the same City or County as the Unit. Seller may direct, on reasonable Notice (defined in ¶ 17) prior to Closing, that all or a portion of the Balance be made payable to persons other than Seller (see ¶ 17.7).

**3 Personalty**

3.1 Subject to any rights of the Corporation or any holder of a mortgage to which the Lease is subordinate, this sale includes all of the Seller's interest, if any, in the Personalty and the Included Interests.

3.2 No consideration is being paid for the Personalty or for the Included Interests; nothing shall be sold to Purchaser if the Closing does not occur.

3.3 Prior to Closing, Seller shall remove from the Unit all the furniture, furnishings and other property not included in this sale, and repair any damage caused by such removal.

**4 Representations and Covenants**

4.1 Subject to any matter affecting title to the Premises (as to which Seller makes no representations or covenants), Seller represents and covenants that:

4.1.1 Seller is, and shall at Closing be, the sole owner of the Shares, Lease, Personalty and Included Interests, with the full right, power and authority to sell and assign them. Seller shall make timely provision to satisfy existing security interest(s) in the Shares and Lease and have the same delivered at Closing (See ¶10.1);

4.1.2 the Shares were duly issued, fully paid for and are non-assessable;

4.1.3 the Lease is, and will at Closing be, in full force and effect and no notice of default under the Lease is now or will at Closing be in effect;

4.1.4 the Maintenance and Assessments payable as of the date hereof are as specified in ¶ 1.17 and 1.18;

4.1.5 as of this date, Seller neither has actual knowledge nor has received any written notice of any increase in Maintenance or any Assessment which has been adopted by the Board of Directors of the Corporation and is not reflected in the amounts set forth in ¶¶ 1.17 and 1.18;

4.1.6 Seller has not made any material alterations or additions to the Unit without any required consent of the Corporation or, to Seller's actual knowledge, without compliance with all applicable law. This provision shall not survive Closing.

4.1.7 Seller has not entered into, shall not enter into, and has no actual knowledge of any agreement (other than the Lease) affecting title to the Unit or its use and/or occupancy after Closing, or which would be binding on or adversely affect Purchaser after Closing (e.g. a sublease or alteration agreement);

4.1.8 Seller has been known by no other name for the past 10 years except as set forth in ¶ 1.1.1.

4.1.9 at Closing in accordance with ¶ 15.2:

4.1.9.1 there shall be no judgments outstanding against Seller which have not been bonded against collection out of the Unit ("Judgments");

4.1.9.2 the Shares, Lease, Personalty and any Included Interests shall be free and clear of liens (other than the Corporation's general lien on the Shares for which no monies shall be owed), encumbrances and adverse interests ("Liens");

4.1.9.3 all sums due to the Corporation shall be fully paid by Seller to the end of the payment period immediately preceding the date of Closing;

4.1.9.4 Seller shall not be indebted for labor or material which might give rise to the filing of a notice of mechanic's lien against the Unit or the Premises; and

4.1.9.5 no violations shall be of record which the owner of the Shares and Lease would be obligated to remedy under the Lease.

4.2 Purchaser represents and covenants that:

4.2.1 Purchaser is acquiring the Shares and Lease for residential occupancy of the Unit solely by the Proposed Occupants identified in ¶ 1.23

4.2.2 Purchaser is not, and within the past 7 years has not been, the subject of a bankruptcy proceeding.

4.2.3 if ¶ 1.20.5 applies, Purchaser shall not apply for financing in connection with this purchase.

4.2.4 Each individual comprising Purchaser is over the age of 18 and is purchasing for Purchaser's own account (beneficial and of record);

4.2.5 Purchaser shall not make any representations to the Corporation contrary to the foregoing and shall provide all documents in support thereof required by the Corporation in connection with Purchaser's application for approval of this transaction; and

4.2.6 there are not now and shall not be at Closing any unpaid tax liens or monetary judgments against Purchaser.

4.3 Each Party covenants that its representations and covenants contained in ¶ 4 shall be true and complete at Closing and, except for ¶ 4.1.6, shall survive Closing but any action based thereon must be instituted within one year after Closing.

**5 Corporate Documents**

Purchaser has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risk of not having examined, the Lease, the Corporation's Certificate of Incorporation, By-laws, House Rules, minutes of shareholders' and directors' meetings, most recent audited financial statement and most recent statement of tax deductions available to the Corporation's shareholders under Internal Revenue Code ("IRC") §216 (or any successor statute).

**6 Required Approval and References**

6.1 This sale is subject to the unconditional consent of the Corporation.

6.2 Purchaser shall in good faith:

6.2.1 submit to the Corporation or the Managing Agent an application with respect to this sale on the form required by the Corporation, containing such data and together with such documents as the Corporation requires, and pay the applicable

fees and charges that the Corporation imposes upon Purchaser. All of the foregoing shall be submitted within 10 bus.ness days after the Delivery Date, or, if ¶ 1.20.1 or 1.20.2 applies and the Loan Commitment Letter is required by the Corporation, within 3 business days after the earlier of (i) the Loan Commitment Date (defined in ¶ 1.21) or (ii) the date of receipt of the Loan Commitment Letter (defined in ¶ 18.1.23);

6.2.2 attend (and cause any Proposed Occupant to attend) one or more personal nterviews, as requested by the Corporation; and

6.2.3 promptly submit to the Corporation such further references, data and documents reasonably requested by the Corporation.

6.3 Either Party, after learning of the Corporation's decision, shall promptly advise the other Party thereof. If the Corporation has not made a decision on or before the Scheduled Closing Date, the Closing shall be adjourned for 30 business days for the purpose of obtaining such consent. If such consent is not given by such adjourned date, either Party may cancel this Contract by Notice, provided that the Corporation's consent is not issued before such Notice of cancellation is given. If such consent is refused at any time, either Party may cancel this Contract by Notice. In the event of cancellation pursuant to this ¶ 6.3, the Escrowee shall refund the Contract Deposit to Purchaser.

6.4 If such consent is refused, or not given, due to Purchaser's bad faith conduct. Purchaser shall be in default and ¶ 13.1 shall govern.

**7 Condition of Unit and Personalty; Possession**

7.1 Seller makes no representation as to the physical condition or state of repair of the Unit, the Personalty, the Included Interests or the Premises. Purchaser has inspected or waived inspection of the Unit, the Personalty and the Included Interests and shall take the same "as is", as of the date of this Contract, except for reasonable wear and tear. However, at the time of Closing, the appliances shall be in working order and required smoke detector(s) shall be installed and operable.

7.2 At Closing, Seller shall deliver possession of the Unit, Personalty and Included Interests in the condition required by ¶ 7.1, broom-clean, vacant and free of all occupants and rights of possession.

**8 Risk of Loss**

8.1 The provisions of General Obligations Law § 5-1311, as modified herein, shall apply to this transaction as if it were a sale of realty. For purposes of this paragraph, the term "Unit" includes built-in Personalty.

8.2 Destruction shall be deemed "material" under GOL § 5-1311, if the reasonably estimated cost to restore the Unit shall exceed 5% of the Purchase Price.

8.3 In the event of any destruction of the Unit or the Premises, when neither legal title nor the possession of the Unit has been transferred to Purchaser, Seller shall give Notice of the loss to Purchaser ("Loss Notice") by the earlier of the date of Closing or 7 business days after the date of the loss.

8.4 If there is material destruction of the Unit without fault of Purchaser, this Contract shall be deemed canceled in accordance with ¶ 16.3, unless Purchaser elects by Notice to Seller to complete the purchase with an abatement of the Purchase Price; or

8.5 Whether or not there is any destruction of the Unit, if without fault of Purchaser, more than 10% of the units in the Premises are rendered uninhabitable, or reasonable access to the Unit is not available, then Purchaser shall have the right to cancel this Contract in accordance with ¶ 16.3 by Notice to Seller.

8.6 Purchaser's Notice pursuant to ¶ 8.4 or ¶ 8.5 shall be given within 7 business days following the giving of the Loss Notice except that if Seller does not give a Loss Notice, Purchaser's Notice may be given at any time at or prior to Closing.

8.7 In the event of any destruction of the Unit, Purchaser shall not be entitled to an abatement of the Purchase Price (i) that exceeds the reasonably estimated cost of repair and restoration or (ii) for any loss that the Corporation is obliged to repair or restore; but Seller shall assign to Purchaser, without recourse, Seller's claim, if any, against the Corporation with respect to such loss.

**9 Closing Location**

The Closing shall be held at the location designated by the Corporation or, if no such designation is made, at the office of Seller's Attorney.

**10 Closing**

10.1 At Closing, Seller shall deliver or cause to be delivered:

10.1.1 Seller's certificate for the Shares duly endorsed for transfer to Purchaser or accompanied by a separate duly executed stock power to Purchaser, and in either case, with any guarantee of Seller's signature required by the Corporation;

10.1.2 Seller's counterpart original of the Lease, all assignments and assumptions in the chain of title and a duly executed assignment thereof to Purchaser in the form required by the Corporation;

10.1.3 FIRPTA documents required by ¶ 25;

10.1.4 keys to the Unit, building entrance(s), and, if applicable, garage, mailbox, storage unit and any locks in the Unit;

10.1.5 if requested, an assignment to Purchaser of Seller's interest in the Personalty and Included Interests;

10.1.6 any documents and payments to comply with ¶ 15.2

10.1.7 If Seller is unable to deliver the documents required in ¶ 10.1.1 or 10.1.2 then Seller shall deliver or cause to be delivered all documents and payments required by the Corporation for the issuance of a new certificate for the Shares or a new Lease.

10.2 At Closing, Purchaser shall:

10.2.1 pay the Balance in accordance with ¶2.2.2;

10.2.2 execute and deliver to Seller and the Corporation an agreement assuming the Lease, in the form required by the Corporation; and

10.2.3 if requested by the Corporation, execute and deliver counterparts of a new lease substantially the same as the Lease, for the balance of the Lease term, in which case the Lease shall be canceled and surrendered to the Corporation together with Seller's assignment thereof to Purchaser.

10.3 At Closing, the Parties shall complete and execute all documents necessary:

10.3.1 for Internal Revenue Service ("IRS") form 1099-S or other similar requirements;

10.3.2 to comply with smoke detector requirements and any applicable transfer tax filings; and

10.3.3 to transfer Seller's interest, if any, in and to the Personalty and Included Interests.

10.4 Purchaser shall not be obligated to close unless, at Closing, the Corporation delivers:

10.4.1 to Purchaser a new certificate for the Shares in the name of Purchaser; and

10.4.2 a written statement by an officer or authorized agent of the Corporation consenting to the transfer of the Shares and Lease to Purchaser and setting forth the amounts of and payment status of all sums owed by Seller to the Corporation, including Maintenance and any Assessments, and the dates to which each has been paid.

**11 Closing Fees, Taxes and Apportionments**

11.1 At or prior to Closing,

11.1.1 Seller shall pay, if applicable:

11.1.1.1 the cost of stock transfer stamps; and

11.1.1.2 transfer taxes, except as set forth in ¶ 11.1.2.2

11.1.2 Purchaser shall pay, if applicable:

11.1.2.1 any fee imposed by the Corporation relating to Purchaser's financing; and

SN 0032

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 256
RECEIVED NYSCEF: 11/28/2018

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 67 of
104

11.1.2.2 transfer taxes imposed by statute primarily on Purchaser (e.g., the "mansion tax"),

11.2 The Flip Tax, if any, shall be paid by the Party specified in ¶ 1.19.

11.3 Any fee imposed by the Corporation and not specified in this Contract shall be paid by the Party upon whom such fee is expressly imposed by the Corporation, and if no Party is specified by the Corporation, then such fee shall be paid by Seller.

11.4 The Parties shall apportion as of 11:59 P.M. of the day preceding the Closing, the Maintenance, and any other periodic charges due the Corporation (other than Assessments) and STAR Tax Exemption (if the Unit is the beneficiary of same), based on the number of days in the month of Closing.

11.5 Assessments, whether payable in a lump sum or installments, shall not be apportioned, but shall be paid by the Party who is the owner of the Shares on the date specified by the Corporation for payment. Purchaser shall pay any installments payable after Closing provided Seller had the right and elected to pay the Assessment in installments.

11.6 Each Party shall timely pay any transfer taxes for which it is primarily liable pursuant to law by cashier's, official bank, certified or attorney's escrow check. This ¶11.6 shall survive Closing.

11.7 Any computational errors or omissions shall be corrected within 6 months after Closing. This ¶11.7 shall survive Closing.

**12 Broker**

12.1 Each Party represents that such Party has not dealt with any person acting as a broker, whether licensed or unlicensed, in connection with this transaction other than the Broker(s) named in ¶ 1.5.

12.2 Seller shall pay the Broker's commission pursuant to a separate agreement The Broker(s) shall not be deemed to be a third-party beneficiary of this Contract.

12.3 This ¶12 shall survive Closing, cancellation or termination of this Contract.

**13 Defaults, Remedies and Indemnities**

13.1 In the event of a default or misrepresentation by Purchaser, Seller's sole and exclusive remedies shall be to cancel this Contract, retain the Contract Deposit as liquidated damages and, if applicable, Seller may enforce the indemnity in ¶ 13.3 as to brokerage commission or sue under ¶ 13.4. Purchaser prefers to limit Purchaser's exposure for actual damages to the amount of the Contract Deposit, which Purchaser agrees constitutes a fair and reasonable amount of compensation for Seller's damages under the circumstances and is not a penalty. The principles of real property law shall apply to this liquidated damages provision.

13.2 In the event of a default or misrepresentation by Seller, Purchaser shall have such remedies as Purchaser is entitled to at law or in equity, including specific performance, because the Unit and possession thereof cannot be duplicated.

13.3 Subject to the provisions of ¶ 4.3, each Party indemnifies and holds harmless the other against and from any claim, judgment, loss, liability, cost or expense resulting from the indemnitor's breach of any of its representations or covenants stated to survive Closing, cancellation or termination of this Contract. Purchaser indemnifies and holds harmless Seller against and from any claim, judgment, loss, liability, cost or expense resulting from the Lease obligations accruing from and after the Closing. Each indemnity includes, without limitation, reasonable attorneys' fees and disbursements, court costs and litigation expenses arising from the defense of any claim and enforcement or collection of a judgment under this indemnity, provided the indemnitee is given Notice and opportunity to defend the claim. This ¶ 13.3 shall survive Closing, cancellation or termination of this Contract.

13.4 In the event any instrument for the payment of the Contract Deposit fails of collection, Seller shall have the right to sue on the uncollected instrument. In addition, such failure of collection shall be a default under this Contract, provided Seller gives Purchaser Notice of such failure of collection and, within 3 business days after Notice is given, Escrowee does not receive from Purchaser an unendorsed good certified check, bank check or immediately available funds in the amount of the uncollected funds. Failure to cure such default shall entitle Seller to the remedies set forth in ¶ 13.1 and to retain all sums as may be collected and/or recovered.

**14 Entire Agreement; Modification**

14.1 All prior oral or written representations, understandings and agreements had between the Parties with respect to the subject matter of this Contract, and with the Escrowee as to ¶ 27, are merged in this Contract, which alone fully and completely expresses the Parties' and Escrowee's agreement. 14.2 The Attorneys may extend in writing any of the time limitations stated in this Contract. Any other provision of this Contract may be changed or waived only in writing signed by the Party or Escrowee to be charged.

**15 Removal of Liens and Judgments**

15.1 Purchaser shall deliver or cause to be delivered to Seller or Seller's Attorney, not less than 10 calendar days prior to the Scheduled Closing Date a Lien and Judgment search, except that Liens or Judgments first disclosed in a continuation search shall be reported to Seller within 2 business days after receipt thereof, but not later than the Closing. Seller shall have the right to adjourn the Closing pursuant to ¶ 16 to remove any such Liens and Judgments. Failure by Purchaser to timely deliver such search or continuation search shall not constitute a waiver of Seller's covenants in ¶4 as to Liens and Judgments. However, if the Closing is adjourned solely by reason of untimely delivery of the Lien and Judgment search, the apportionments under ¶ 11.3 shall be made as of 11:59 P.M. of the day preceding the Scheduled Closing Date in ¶ 1.15.

15.2 Seller, at Seller's expense, shall obtain and deliver to the Purchaser the documents and payments necessary to secure the release, satisfaction, termination and discharge or removal of record of any Liens and Judgments. Seller may use any portion of the Purchase Price for such purposes.

15.3 This ¶ 15 shall survive Closing.

**16 Seller's Inability**

16.1 If Seller shall be unable to transfer the items set forth in ¶ 2.1 in accordance with this Contract for any reason other than Seller's failure to make a required payment or other willful act or omission, then Seller shall have the right to adjourn the Closing for periods not exceeding 60 calendar days in the aggregate, but not extending beyond the expiration of Purchaser's Loan Commitment Letter, if ¶ 1.20.1 or 1.20.2 applies.

16.2 If Seller does not elect to adjourn the Closing or (if adjourned) on the adjourned date of Closing Seller is still unable to perform, then unless Purchaser elects to proceed with the Closing without abatement of the Purchase Price, either Party may cancel this Contract on Notice to the other Party given at any time thereafter.

16.3 In the event of such cancellation, the sole liability of Seller shall be to cause the Contract Deposit to be refunded to Purchaser and to reimburse Purchaser for the actual costs incurred for Purchase's lien and title search, if any.

**17 Notices and Contract Delivery**

17.1 Any notice or demand ("Notice") shall be in writing and delivered either by hand. Overnight delivery or certified or registered mail, return receipt requested, to the Party and simultaneously, in like manner, to such Party's Attorney, if any, and to Escrowee at their respective addresses or to such other address as shall hereafter be designated by Notice given pursuant to this ¶ 17.

SN 0033

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 256
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 68 of
104

17.2 The Contract may be delivered as provided in ¶

17.1 or by ordinary mail.

17.3 The Contract or each Notice shall be deemed given and received:

17.3.1 on the day delivered by hand;

17.3.2 on the business day following the date sent by overnight delivery;

17.3.3 on the 5th business day following the date sent by certified or registered mail; or

17.3.4 as to the Contract only, 3 business days following the date of ordinary mailing.

17.4 A Notice to Escrowee shall be deemed given only upon actual receipt by Escrowee.

17.5 The Attorneys are authorized to give and receive any Notice on behalf of their respective clients.

17.6 Failure or refusal to accept a Notice shall not invalidate the Notice.

17.7 Notice pursuant to ¶¶ 2.2.2 and 13.4 may be delivered by confirmed facsimile to the Party's Attorney and shall be deemed given when transmission is confirmed by sender's facsimile machine.

18 Financing Provisions

18.1 The provisions of ¶¶ 18.1 and 18.2 are applicable only if ¶ 1.20.1 or 1.20.2 applies.

18.1.1 An "Institutional Lender" is any of the following that is authorized under Federal or New York State law to issue a loan secured by the Shares and Lease and is currently extending similarly-secured loan commitments in the county in which the Unit is located: a bank, savings bank, savings and loan association, trust company, credit union of which Purchaser is a member, mortgage banker, insurance company or governmental entity.

18.1.2 A "Loan Commitment Letter" is a written offer from an Institutional Lender to make a loan on the Financing Terms (see ¶ 1.21) at prevailing fixed-or-adjustable-interest rates and on other customary terms generally being offered by Institutional Lenders making cooperative share loans. An offer to make a loan conditional upon obtaining an appraisal satisfactory to the Institutional Lender shall not become a Loan Commitment Letter unless and until such condition is met. An offer conditional upon any factor concerning Purchaser (e.g. sale of current home, payment of outstanding debt, no material adverse change in Purchaser's financial condition, etc.) is a Loan Commitment Letter whether or not such condition is met. Purchaser accepts the risk that, and cannot cancel this Contract if, any condition concerning Purchaser is not met.

18.2 Purchaser, directly or through a mortgage broker registered pursuant to Article 12-D of the Banking Law, shall diligently and in good faith:

18.2.1 apply only to an Institutional Lender for a loan on the Financing Terms (see ¶ 1.21) on the form required by the Institutional Lender containing truthful and complete information and submit such application together with such documents as the Institutional Lender requires, and pay the applicable fees and charges of the Institutional Lender, all of which shall be performed within 5 business days after the Delivery Date;

18.2.2 promptly submit to the Institutional Lender such further references, data and documents requested by the Institutional Lender; and

18.2.3 accept a Loan Commitment Letter meeting the Financing Terms and comply with all requirements of such Loan Commitment Letter (or any other loan commitment letter accepted by Purchaser) and all of the Institutional Lender in order to close the loan; and

18.2.4 furnish Seller with a copy of the Loan Commitment Letter promptly after Purchaser's receipt thereof.

18.2.5 Purchaser is not required to apply to more than one Institutional Lender.

18.3 If ¶ 1.20.1 applies, then

18.3.1 provided Purchaser has complied with all applicable provisions of ¶ 18.2 and this ¶ 18.3, Purchaser may cancel this Contract as set forth below, if:

18.3.1.1 any Institutional Lender denies Purchaser's application in writing prior to the Loan Commitment Date (see ¶ 1.21); or

18.3.1.2 a Loan Commitment Letter is not issued by the Institutional Lender on or before the Loan Commitment Date; or

18.3.1.3 any requirement of the Loan Commitment Letter other than one concerning Purchaser is not met (e.g. failure of the Corporation to execute and deliver the Institutional Lender's recognition agreement or other document, financial condition of the Corporation, owner occupancy quota, etc.); or

18.3.1.4 (i) the Closing is adjourned by Seller or the Corporation for more than 30 business days from the Scheduled Closing Date and (ii) the Loan Commitment Letter expires on a date more than 30 business days after the Scheduled Closing Date and before the new date set for Closing pursuant to this paragraph and (iii) Purchaser is unable in good faith to obtain from the Institutional Lender an extension of the Loan Commitment Letter or a new Loan Commitment Letter on the Financing Terms without paying additional fees to the Institutional Lender, unless Seller agrees, by Notice to Purchaser within 5 business days after receipt of Purchaser's Notice of cancellation on such ground, that Seller will pay such additional fees and Seller pays such fees when due. Purchaser may not object to an adjournment by Seller for up to 30 business days solely because the Loan Commitment Letter would expire before such adjourned Closing date.

18.3.2 Purchaser shall deliver Notice of cancellation to Seller within 5 business days after the Loan Commitment Date if cancellation is pursuant to ¶ 18.3.1.1 or 18.3.1.2 and on or prior to the Scheduled Closing Date if cancellation is pursuant to ¶ 18.3.1.3 or 18.3.1.4.

18.3.3 If cancellation is pursuant to ¶ 18.3.1.1, then Purchaser shall deliver to Seller, together with Purchaser's Notice, a copy of the Institutional Lender's written denial of Purchaser's loan application. If cancellation is pursuant to ¶ 18.3.1.3, then Purchaser shall deliver to Seller together with Purchaser's Notice evidence that a requirement of the Institutional Lender was not met.

18.3.4 Seller may cancel this Contract by Notice to Purchaser, sent within 5 days after the Loan Commitment Date, if Purchaser shall not have sent by then either (i) Purchaser's Notice of cancellation or (ii) a copy of the Loan Commitment Letter to Seller, which cancellation shall become effective if Purchaser does not deliver a copy of such Loan Commitment Letter to Seller within 10 business days after the Loan Commitment Date.

18.3.5 Failure by either Purchaser or Seller to deliver Notice of cancellation as required by this ¶ 18.3 shall constitute a waiver of the right to cancel under this ¶ 18.3.

18.3.6 If this Contract is cancelled by Purchaser pursuant to this ¶ 18.3, then thereafter neither Party shall have any further rights against, or obligations or liabilities to, the other by reason of this Contract, except that the Contract Deposit shall be promptly refunded to Purchaser and accept as set forth in ¶ 13. If this Contract is cancelled by Purchaser pursuant to ¶ 18.3.1.4, then Seller shall reimburse Purchaser for any non-refundable financing and

inspection expenses and other sums reimbursable pursuant to ¶ 16.

18.3.7 Purchaser cannot cancel this Contract pursuant to ¶ 18.3.1.4 and cannot obtain a refund of the Contract Deposit if the Institutional Lender fails to fund the loan.

SN 0034

~~18.3.7.1 because a requirement of the Loan Commitment Letter concerning Purchaser is not met (e.g., Purchaser's financial condition or employment status suffers an adverse change; Purchaser fails to satisfy a condition relating to the sale of an existing residence, etc.); or~~

~~18.3.7.2 due to the expiration of a Loan Commitment Letter issued with an expiration date that is not more than 30 business days after the Scheduled Closing Date.~~

### 19 Singular/Plural and Joint/Several

The use of the singular shall be deemed to include the plural and vice versa, whenever the context so requires. If more than one person constitutes Seller or Purchaser, their obligations as such Party shall be joint and several.

### 20 No Survival

No representation and/or covenant contained herein shall survive Closing except as expressly provided. Payment of the Balance shall constitute a discharge and release by Purchaser of all of Seller's obligations hereunder except those expressly stated to survive Closing.

### 21 Inspections

Purchaser and Purchaser's representatives shall have the right to inspect the Unit within 48 hours prior to Closing, and at other reasonable times upon reasonable request to Seller.

### 22 Governing Law and Venue

This Contract shall be governed by the laws of the State of New York without regard to principles of conflict of laws. Any action or proceeding arising out of this Contract shall be brought in the county or Federal district where the Unit is located and the Parties hereby consent to said venue.

### 23 No Assignment by Purchaser; Death of Purchaser

23.1 Purchaser may not assign this Contract or any of Purchaser's rights hereunder. Any such purported assignment shall be null and void.

23.2 This Contract shall terminate upon the death of all persons comprising Purchaser and the Contract Deposit shall be refunded to the Purchaser. Upon making such refund and reimbursement, neither Party shall have any further liability or claim against the other hereunder, except as set forth in ¶ 12.

### 24 Cooperation of Parties

24.1 The Parties shall each cooperate with the other, the Corporation and Purchaser's Institutional Lender and title company, if any, and obtain execute and deliver such documents as are reasonably necessary to consummate this sale.

24.2 The Parties shall timely file all required documents in connection with all governmental filings that are required by law. Each Party represents to the other that its statements in such filings shall be true and complete. This ¶ 24.2 shall survive Closing.

### 25 FIRPTA

The parties shall comply with IRC §§ 897, 1445 and the regulations thereunder as same may be amended ("FIRPTA"). If applicable, Seller shall execute and deliver to purchaser at Closing a Certification of Non- Foreign Status ("CNS") or deliver a Withholding Certificate from the IRS. If Seller fails to deliver a CNS or a Withholding Certificate, Purchaser shall withhold from the Balance, and remit to the IRS, such sum as may be required by law. Seller hereby waives any right of action against Purchaser on account of such withholding and remittance. This ¶ 25 shall survive Closing.

### 26 Additional Requirements

26.1 Purchaser shall not be obligated to close unless all of the following requirements are satisfied at the time of the Closing:

26.1.1 the Corporation is in good standing;

26.1.2 the Corporation has fee or leasehold title to the Premises, whether or not marketable or insurable; and

26.1.3 there is no pending in rem action, tax certificate/ ion sale or foreclosure action of any underlying mortgage affecting the Premises.

26.2 If any requirement in ¶ 26.1 is not satisfied at the time of the Closing, Purchaser shall give Seller Notice and if the same is not satisfied within a reasonable period of time thereafter, then either Party may cancel this Contract (pursuant to ¶ 16.3) by Notice.

### 27 Escrow Terms

27.1 The Contract Deposit shall be deposited by Escrowee in an escrow account as set forth in ¶ 1.24 and the proceeds held and disbursed in accordance with the terms of this Contract. At Closing, the Contract Deposit shall be paid by Escrowee to Seller. If the Closing does not occur and either Party gives Notice to Escrowee demanding payment of the Contract Deposit, Escrowee shall give prompt Notice to the other Party of such demand. If Escrowee does not receive a Notice of objection to the proposed payment from such other Party within 10 business days after the giving of Escrowee's Notice, Escrowee is hereby authorized and directed to make such payment to the demanding party. If Escrowee does receive such a Notice of objection within said period, or if for any reason Escrowee in good faith elects not to make such payment, Escrowee may continue to hold the Contract Deposit until otherwise directed by a joint Notice by the Parties or a final, non-appealable judgment, order or decree of a court of competent jurisdiction. However, Escrowee shall have the right at any time to deposit the Contract Deposit and the interest thereon, if any, with the clerk of a court in the county as set forth in ¶ 22 and shall give Notice of such deposit to each Party. Upon disposition of the Contract Deposit and interest thereon, if any, in accordance with this ¶ 27, Escrowee shall be released and discharged of all escrow obligations and liabilities.

27.2 The Party whose Attorney is Escrowee shall be liable for loss of the Contract Deposit. If the Escrowee is Seller's attorney, then Purchaser shall be credited with the amount of the contract Deposit at Closing.

27.3 Escrowee will serve without compensation. Escrowee is acting solely as a stakeholder at the Parties' request and for their convenience. Escrowee shall not be liable to either Party for any act or omission unless it involves bad faith, willful disregard of this Contract or gross negligence. In the event of any dispute, Seller and Purchaser shall jointly and severally (with right of contribution) defend (by attorneys elected by Escrowee), indemnify and hold harmless Escrowee from and against any claim, judgment, loss, liability, cost and expenses incurred in connection with the performance of Escrowee's acts or omissions not involving bad faith, willful disregard of this Contract or gross negligence. This indemnity includes, without limitation, reasonable attorneys' fees either paid to retain attorneys or representing the fair value of legal services rendered by Escrowee to itself and disbursements, court costs and litigation expenses.

27.4 Escrowee acknowledges receipt of the Contract Deposit, by check subject to collection.

27.5 Escrowee agrees to the provisions of this ¶ 27.

27.6 If Escrowee is the Attorney for a Party, Escrowee shall be permitted to represent such Party in any dispute or lawsuit.

27.7 This ¶ 27 shall survive Closing, cancellation or termination of this Contract

### 28 Margin Headings

The margin heading do not constitute part of the text of this Contract.

### 29 Miscellaneous

This Contract shall not be binding unless and until Seller delivers a fully executed counterpart of this Contract to Purchaser (or Purchaser's Attorney) pursuant to ¶ 17.2 and 17.3. This Contract shall bind

and inure to the benefit of the Parties hereto and their respective heirs, personal and legal representatives and successors in interest.

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 256

Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 70 of
104

INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

**30 Lead Paint**
If applicable, the complete and fully executed Disclosure of
Information on Lead Based Paint and or Lead-Based Paint
Hazards is attached hereto and made a part hereof.

**In Witness Whereof,** the Parties hereto have duly executed this Contract as of the date first above written.

ESCROW TERMS AGREED TO:

Michael J. Jones ESCROWEE

SELLER:
SHERRY 1800s, LLC

By: _____

PURCHASER:
**GENEVER HOLDINGS LLC**

By: _____

SN 0036

## FIRST RIDER ANNEXED TO AND FORMING A PART OF CONTRACT OF SALE FOR THE 18TH FLOOR KNOWN AS UNIT 1801 AT SHERRY NETHERLAND, INC., 781 FIFTH AVENUE, NEW YORK, NEW YORK, A COOPERATIVE APARTMENT BETWEEN SHERRY 1800s, LLC, AS SELLER, AND GENEVER HOLDINGS LLC, AS PURCHASER, DATED FEBRUARY 21, 2015

31.     In the event of any conflict between the provision of this Rider or any other Rider, and the provisions of the Contract to which this Rider is attached, the provisions of this Rider shall control.

32.     In addition to the representation made by Purchaser in Paragraph 4 of this Contract, Purchaser, jointly and severally, represents and warrants to Seller that Purchaser knows of no outstanding judgments or tax liens and knows of no threatened lawsuit or claim (including criminal and/or tax proceedings).

33.     Supplementing Paragraph 20, the acceptance of the Shares and the assumption of the Lease by Purchaser and the delivery of possession of the Unit and keys by Seller shall be deemed full performance by Seller of Seller's obligations under this Contract, except any of which that survive Closing, and such acceptance and assumption by Purchaser shall discharge Seller from all terms, conditions, representations and agreements required to be performed by Seller under this Contract, except any of which that survive Closing. No liability on the part of Seller shall survive the Closing except as expressly set forth in this Contract.

34.     In the event that there is any refund on real estate taxes attributable to the time period in which Seller has owned the Unit, such refund shall belong solely to Seller. In this regard, Purchaser shall cooperate with Seller in connection with obtaining such refund and Purchaser agrees to sign any reasonable documentation to assist Seller in obtaining such refund. If such refund is delivered to Purchaser (or credited towards Purchaser's monthly maintenance by the Corporation), Purchaser shall promptly remit such refund to Seller. The Parties acknowledge that the provision of this Paragraph 34 shall survive the Closing

35.     An increase in the maintenance or the imposition of an assessment after the date hereof shall not be deemed a misrepresentation or breach by Seller hereunder. In this regard, any assessment imposed by the Corporation after the date of this Contract, shall be solely the obligation of Purchaser if such assessment is payable on or after the date of Closing,  Seller will send Purchaser a copy of any notices from the Corporation regarding material facts relating to the Corporation including any maintenance increases.

36.     A "Disclosure of Information on Lead-Based Paint and/or Lead Based Paint Hazards" is attached hereto as Exhibit A hereto.  Such document may be executed in counterparts. This Contract shall be deemed executed when signed by the parties hereto notwithstanding that the Broker's signature on such Exhibit A have not yet been obtained.  Purchaser acknowledges that Purchaser has received the pamphlet Protect Your Home From Lead in Your Home and Purchaser hereby waives the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards in the Unit and/or the Premises. Purchaser acknowledges that Seller has made no representations to Purchaser concerning the presence of lead paint in the Premises except in the Unit and then only to the extent expressly set forth in the attached disclosure form. Notwithstanding any requirements pursuant to any Local Law, Purchaser

accepts the Premises and Unit in their current "as is" condition concerning the presence of lead paint and any hazards related to same.

37.     All representations made by the Seller in the Contract or any Rider thereto are made to the best of Seller's knowledge and belief without independent investigation and shall not survive the closing.

        **IN WITNESS WHEREOF**, of the parties hereto have executed this Rider to Contract of Sale as of the date first above written.

                        **SELLER:**

                        **SHERRY 1800s, LLC**

                        By: _____

                        **PURCHASER:**

                        **GENEVER HOLDINGS LLC**

                        By: _____

SN 0038

SECOND RIDER TO CONTRACT OF SALE DATED AS OF FEBRUARY *21*, 2015,
BETWEEN SHERRY 1800S LLC, AS SELLER, AND GENEVER HOLDINGS LLC, AS
PURCHASER, COVERING PREMISES LOCATED AT 781 FIFTH AVENUE, NEW YORK,
NEW YORK, 18TH FLOOR (UNITS 1801, 1804, 1807, 1809, 1811, SERVANT'S ROOM 1519)

SR1.    In case of any inconsistency or conflict between the printed portion of this
Contract or the First Rider, and the provisions of this Second Rider, the provisions of this Second
Rider shall control.

SR2.    Seller shall, promptly after receipt thereof, deliver to Purchaser copies of
any written notices from the Corporation received after the Delivery Date and relating to: (1) any
increase in the amount of the monthly Maintenance as set forth in paragraph 1.17; (2) any
intended or proposed assessment other than the Assessment; (3) any intended or proposed
changes to the "flip tax" or other transfer fee charged by the Corporation or its Managing Agent;
(4) any proposed amendment or modification of the Lease, the Certificate of Incorporation of the
Corporation or the Corporation's By-Laws; (5) any proposed construction or repair work the cost
of which is intended to be borne by the Corporation, its insurers or its shareholders; (6) any
refinancing or other material change with respect to any mortgage affecting the Premises; or (7)
any damage or casualty to the Unit or the Premises.

SR3.    Supplementing paragraph 3.3: In the event Seller removes any light
fixtures from the Unit, such fixtures will be replaced with standard fixtures, so that no exposed
wiring or bulbs remain in place of the removed fixtures. Seller shall, at its own expense and
prior to the Closing, remove from the Unit all furniture, furnishings and other personal property
and/or fixtures not included in this transaction and shall repair in a good and workmanlike
manner any material damage caused by such removal. Any of Seller's personal property not
included in the sale contemplated hereby which is not removed from the Unit prior to the Closing
shall be deemed abandoned property. Purchaser may (but shall not be obligated to) cause any
such abandoned property to be removed from the Unit at Seller's risk and expense. The
provisions of this paragraph shall survive the Closing.

SR4.    Notwithstanding the provisions of paragraph 7 or any other provision of
this Contract to the contrary, Seller represents and warrants that the plumbing, heating, electrical
and air conditioning systems and fixtures and all Personalty shall be in working order at the
Closing, to the extent the responsibility of Seller under the Lease.

SR5.    (a)    As a material inducement to Purchaser entering into this Contract,
Seller hereby represents that Seller has obtained all necessary approvals, permits and certificates
from the Corporation and the New York City Department of Buildings for any work done by
Seller to the Unit. Further, Seller is not obligated to perform any work or expend any monies

Doc#: US1:9841154v4

SN 0039

2

(other than maintenance) pursuant to any agreement (other than the Lease and other Co-op Documents) with the Corporation that would be binding on Purchaser after Closing.

(b)    Prior to Closing, Seller shall, at its sole cost and expense, cause any and all open permits against the Unit to be closed, discharged, and otherwise paid for, and shall deliver satisfactory proof of same to Purchaser. A Letter of Completion from the NYC Department of Buildings shall be deemed satisfactory proof. Notwithstanding the foregoing, Seller shall not be required to close two open permits that are listed by the New York City Department of Buildings as Job Nos. 101785169 and 101778836, copies of which Jobs are attached hereto. The parties acknowledge the reason for the prior sentence is that the Corporation has stated it will agree in writing to duly close these two open permits. In the event the Corporation does not deliver such written agreement, then Seller may either elect to close these permits, but if it does not, then either party may terminate this Contract.

(c)    Seller shall either (a) deliver to Purchaser a letter of completion from the New York City Department of Buildings evidencing that the Unit has been legally combined, or (b) at Closing, execute and file with the transfer taxes returns an affidavit stating the reasons that the Unit is properly and legally considered to be a single unit with one kitchen and that transfer tax should be paid to New York City at the rate of 1.425%. Seller shall also deliver an indemnity letter to Purchaser indemnifying Purchaser against any costs and damages (including, but not limited to penalties and interest for late payment) resulting from the City's requiring payment at a higher rate of taxation. Notwithstanding the foregoing, if (i) Seller is unable to deliver a letter of completion as set forth above, and (ii) Seller elects to pay the New York City transfer tax at the rate of 1.425% (rather than the so-called "bulk rate" of 2.625%), then Seller's attorneys shall hold in escrow the sum of $840,000 representing the difference between these rates of taxation. Seller's attorneys shall hold such sum for the shorter of (i) two (2) years (representing the current audit period for this tax by the New York City Department of Finance ("DOF"), or (ii) until such time that the Corporation delivers satisfactory written evidence from the New York City Department of Buildings (and/or other appropriate governmental entities) that the Unit has been properly and legally combined. Seller's attorneys shall either release the balance to Seller if it is determined that 1.425% was the appropriate rate of taxation, or pay this sum, plus interest and penalties, if any, in the event it is determined by DOF that 2.625% was the appropriate transfer tax rate.

SR6.    Supplementing paragraph 4.1: "4.1.10. To Seller's knowledge, Seller has not received any written notice of any major repairs or replacements contemplated to the Premises or to the building systems in the Premises (including, without limitation, the heating, plumbing and electrical systems) that could materially affect the Premises or the Unit.

"4.1.11. To Seller's knowledge, there are currently no water leaks into the Unit and there have been no such leaks during the twelve (12)- month period immediately

Doc#: US1:9841154v4

SN 0040

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
NYSCEF DOC. NO. 256
INDEX NO. 652077/2017
RECEIVED NYSCEF: 11/28/2018

Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 75 of
104

3

preceding the date hereof. In addition, Seller has not been notified during said twelve (12)-month period of any water leaks elsewhere in the Premises which were purported to emanate from the Unit."

"4.1.12  During Seller's ownership of the Unit, to Seller's knowledge, Seller has not been aware of (a) the presence any toxic mold in either the Unit, or (b) any bedbug infestation in the Unit."

"4.1.13  That to Seller's knowledge, there are no claims, actions, suits or legal proceedings of any kind pending or threatened (in writing), which affect the Unit, Seller's ownership of the Unit or which may cause a lien of any kind to be imposed against the Unit or the Seller."

"4.1.14  To Seller's knowledge, in the last twelve (12) months, that neither Seller, nor any person acting on behalf of Seller, has made any complaint (in writing, electronic communication or by telephone) to the Corporation, Managing Agent, superintendent or any other unit owner or tenant-shareholder at the Premises regarding noise, offensive odors, offensive conduct, lack of heat or hot water, or any other disturbance or adverse condition affecting the Unit."

SR7.    All representations, warranties and covenants of Seller set forth in this Contract shall be true in all material respects as of the Closing, and Purchaser's obligation to perform under this Contract is expressly conditioned upon there being no breach, inaccuracy or misrepresentation in any of the same.

SR8.    If the Corporation approves the Purchaser's application but conditions its consent upon Purchaser complying with requirements outside the scope of the Contract, such as a demand for the Purchaser to deposit funds into escrow, then Purchaser may elect, in its sole discretion, to either (i) comply with such conditions and proceed with the Purchase, or (ii) decline to comply with such conditions. If Purchaser declines to comply, then Purchaser shall deliver to Seller written notice of same and this Contract shall be deemed canceled, and Escrowee shall promptly refund the Contract Deposit to Purchaser. Further, Seller acknowledges and agrees that Purchaser shall only be required to disclose to the Corporation liquid assets of $420,000,000.00 (more than five times the Purchase Price), with supporting documentation as may be required by the Corporation as to the aforesaid amount (such as bank statements). Submission by Purchaser of the foregoing shall be deemed complete for purposes of the "Financial Statement", "Statement of Assets and Liabilities signed by Purchaser or Accountant" and supporting "Verification of Assets" which are required by the Corporation as part of its "Standard Transfer Requirements" Board application. Purchaser may, in its sole discretion, decline any request by the Corporation to submit any documentation showing liquid assets in excess of the aforesaid amount, so that in the event the Corporation rejects the Purchaser's

Doc# US1:9841154v4

SN 0041

4

application for any reason (other than willful bad faith by Purchaser), this Contract shall be deemed canceled, and Escrowee shall promptly refund the Contract Deposit to Purchaser.

SR9.    Supplementing paragraph 11.1.1.2: Seller's obligation with respect to payment of transfer taxes shall apply to transfer taxes imposed by both the City and the State of New York. Within fourteen (14) days following the Closing, Seller shall furnish to Purchaser's attorney proof of filing of such transfer taxes. Seller shall indemnify and hold Purchaser harmless from and against any and all costs, loss or expenses incurred by Purchaser, including reasonable attorneys' fees and disbursements, by reason of Seller's failure to timely perform its obligations with respect to such transfer taxes. The provisions of this paragraph shall survive the Closing.

SR10.    Supplementing paragraph 13: "13.5  Should either party willfully default in its obligations hereunder, it shall be liable to the other for reasonable attorneys' fees and costs incurred by the other party in enforcing this Contract as determined by a court of competent jurisdiction. In the event that either party purports to cancel this Contract and Seller elects to retain the Contract Deposit as liquidated damages, the prevailing party in any subsequent lawsuit shall recover its reasonable attorneys' fees and costs from the non-prevailing party. The award of such attorneys' fees and costs shall be recoverable as actual compensatory damages in addition to the amount of the Contract Deposit and/or liquidated damages which may be payable by either party."

SR11.    Supplementing paragraph 15.1: Purchaser may also deliver a supplemental list of such Liens at a later date but not subsequent to the Closing if Purchaser becomes aware of the same at such later date.

SR12.    Supplementing paragraph 16: "16.4. Seller shall not be deemed unable to transfer the Lease and the Shares if such inability can be overcome by the payment of a sum of money by Seller not in excess of the Purchase Price less any loan payoff, brokerage commission, transfer taxes and customary closing costs."

SR13.    Seller agrees to deliver to Purchaser, at or prior to the execution of this Contract, to the extent within Seller's actual possession, all drawings and plans of the Unit, including the original floor plans, and all renderings of any proposed or completed renovations therein. In addition, Seller agrees to deliver to Purchaser, at or prior to the Closing and to the extent within Seller's actual possession, originals of all instruction manuals and all guaranties and warranty agreements affecting the Unit or any of the appliances or other personalty included in this sale, the rights under which shall be deemed assigned, to the extent assignable, to Purchaser at the Closing.

SR14.    This Contract may be executed in any number of counterparts. Each such counterpart shall for all purposes be deemed to be an original, and all such counterparts shall

Doc#: US1:9841154v4

5

together constitute and be but one and the same instrument. Facsimile signatures or scanned signatures sent by e-mail shall bind the parties.

SR15   Seller hereby agrees to cooperate with Purchaser if Purchaser elects to obtain leasehold title insurance or the Eagle 9 UCC Cooperative Interest Insurance Policy in connection with Purchaser's purchase of the Unit, including, without limitation, signing a title affidavit in the form requested by the issuer of the Eagle 9 UCC Cooperative Interest Insurance Policy.

SR16.   If for any reason the Corporation does not permit the Purchaser to purchase the Unit, then Purchaser may assign this Contract to another entity within the control of the Purchaser herein.

SR17.   Each of the parties hereto desire that this Contract and the terms thereof (the "Confidential Aspects") be kept confidential to the greatest extent practicable.  Accordingly, each of the parties hereto shall, and shall instruct his or her agents, representatives and contractors to, maintain the confidentiality of the Confidential Aspects.  It is understood, however, that the Confidential Aspects may be disclosed: (a) to the professional advisors of each of the parties (for example, without limitation, their attorneys and accountants), and to various other third parties (such as, for example, title insurance companies) who may be involved in aspects of the transactions or are otherwise necessary in order to consummate the transactions contemplated hereby; (b) if required to be disclosed by court order, subpoena, or other government process, or if required by law; (c) with the consent of the parties; or (d) if already in the public domain.

SR18.   Notwithstanding anything contained herein to the contrary, the parties hereby agree that the sum of (a) $67,500,000 is hereby allocated to the Purchase Price for the Unit, and that the additional sum of (b) $2,500,000 is hereby allocated to the Personalty included in the Unit.  Accordingly, appropriate New York State and City transfer taxes shall be paid by the respective parties based upon the sum of $67,500,000, and, in addition, Purchaser shall pay the New York State sales tax on the Personalty, which Seller shall collect at Closing.

SR19.   Seller represents it will cause the third party sale of an additional maid's in the Building to Purchaser either prior to or simultaneously with the closing of this transaction.  In the event that Purchaser is unable to buy this additional maid's room either prior to or simultaneous with the actual Closing of this transaction, Seller acknowledges that Purchaser may terminate this Contract and receive a full and prompt refund of the Contract Deposit, with interest.  It is within the sole discretion of Purchaser whether to exercise or waive this option to terminate.  It is also noted that the Brokers listed in this Contract shall pay for the maid's room, including costs and expenses associated therewith (including transfer taxes).

Doc#: US1:9841154v4

SN 0043

6

SR20. In the event that for any reason the parties are unable to close this transaction by March 6, 2015, then Purchaser may terminate this Contract and receive a full refund of the Contract Deposit. It is within the sole discretion of Purchaser whether to exercise or waive this option to terminate.

SR21. Seller shall pay the brokerage commissions based upon the total consideration being paid by Purchaser for both the Unit and Personalty (which is the sum of $70,000,000.00).

SHERRY 1800s LLC, Seller

Name:
Title:

GENEVER HOLDINGS LLC, Purchaser

By: _____
Ira J. Gilbert, Authorized Person

Doc#: US1:9841154v4

SN 0044

3142—Lead paint disclosure, sale of dwelling.
24 CFR Part 35, 40 CFR Part 745, 9-6-96.                                        Blumberg Excelsior, Publisher, NYC 10013

# Disclosure of Information on
# Lead-Based Paint and/or Lead-Based Paint Hazards
## SALES

## Lead Warning Statement

**Every purchaser of any interest in residential** real property on which a residential dwelling was **built prior to 1978 is notified that such property** may present exposure to lead from lead-based paint **that may place young children at risk of developing** lead poisoning. Lead poisoning in young children **may produce permanent neurological damage,** including learning disabilities, reduced intelligence **quotient, behavioral problems, and impaired memory.** Lead poisoning also poses a particular risk to **pregnant women. The seller of any interest in residential** real property is required to provide the buyer **with** any information on lead-based paint hazards from risk assessments or inspections in the seller's **possession and notify the buyer of any known lead-based** paint hazards. **A risk assessment or inspec-tion** for possible lead-based paint hazards is recommended prior to purchase.

## Seller's Disclosure

(a) Presence of lead-based paint and/or lead-based paint hazards *(Check (i) or (ii) below):*
   (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing *(explain).*

   (ii) ☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller *(Check (i) or (ii) below):*
   (i) ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing *(list documents below).*

   (ii) ☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

## Purchaser's Acknowledgment *(initial)*

(c) _____ Purchaser has received copies of all information listed above.
(d) __X__ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*
(e) _____ Purchaser has *(check (i) or (ii) below):*
   (i) ☐ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assess-ment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
   (ii) ☒ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

## Agent's Acknowledgment *(initial)*

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

## Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| SELLER | DATE | SELLER | DATE |
|---|---|---|---|
| Genever (U.S.) LLC | | for Sherry 1800r LLC | 2/18/15 |
| PURCHASER | DATE | PURCHASER | DATE |
| for Y. Bell, authorized person 2-13-15 | | | |
| AGENT | DATE | AGENT | DATE |

SN 0045

# Purchase Application

SN 0046

Purchase Application

New York     February 26     20 15

Applicant's Name     "Miles" Kwok Ho Wan     (Genever Holdings LLC)
(Name or Names must be entered above in manner that Stock Certificate and other Documents are to be drawn.)

Applicant's Attorney     Ira Gilbert, Esq. (igilbert@paulweiss.com)     Telephone 212-373-3529

Attorney's Firm and Address     Paul, Weiss, Rifkind, Wharton, & Garrison LLP
1285 Avenue of the Americas, New York, NY 10019-6064

Seller's Name     Sherry 1800s, LLC

Seller's Attorney     Michael J. Jones, Esq.     Telephone 203-661-6000

Attorney's Firm and Address     Ivey, Barnum & O'Mara LLC
170 Mason Street, Greenwich, CT 06830

Closing Date and Time   No later than 3/6/15 at 10am     Date of Possession No later than 3/6/15

The undersigned hereby offers to purchase _____3,000_____ shares of the
capital stock of The Sherry-Netherland, Inc. and the accompanying proprietary lease for
Apartment ___1801*___ in the building located at 781 Fifth Avenue, New York, New York, on
the following terms and conditions. * and Maid's room 1519

Purchase Price of Stock $ ___67,500,000___ Present Estimated Proprietary Rental Per
Month $ 57,085.53

Deposit $ 7,000,000     Special conditions, if any: Additional sum of $2,500,000
is allocated to the personal property included in the unit

Financing:   Yes ☐   No ☒   Amount ___None___   Bank_____
( Note: This proposal shall result in no legal obligation until a formal contract of purchase and sale is executed by the
parties concerned.)

The undersigned has filled out the information sheet below and understands that this
information is essential in considering this application. It is further understood that this
application, when signed by the undersigned, is to be subject to approval by the Seller or
Authorized Representative and to the Terms and Conditions on the reverse side hereof.

Broker: Seller: John Burger, Brown Harris Stevens
and Serena Boardman, Sotheby's                    Signature of Purchase Applicant
Purchaser: Kathy Sloane, Brown Harris
Stevens                                            Signature of Purchase Applicant

Information Regarding Applicant

Home Address: 16A, South Bay Road, Hong Kong     Telephone +852 2160 0888

Business Connection and Position: President and Owner (Securities and Real Estate Investments)

Business Address: 49/F, Bank of China Tower, No.1     Telephone +852 2160 0888
Garden Road, Central Hong Kong
Names of all persons who will reside in the apartment and if children, state number and their
approximate ages:(1) Kwok Ho Wa, Purchaser (2) Ngok Hing Chi, Wife of Purchaser (3)
Guo Qiang; Son of Purchaser (4) Guo Mei; Daughter of Purchaser (5) Yaz Qinghua;
Sister of Purchaser's Wife

Names of all clubs and society memberships, fraternities and honorary societies to which
applicant belongs:     Mar-a-Lago Club, Palm Beach, FL
Trump Golf Course, Palm Beach, FL

Schools and colleges attended by husband, wife and children:
Mr. and Mrs. Kwok received their education in China
Guo Qiang (son of Mr. Kwok) attended Bard College

SN 0047

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 256
Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 82 of
104
RECEIVED NYSCEF: 11/28/2018

Names of all residents in the building known by the applicant: __None__

Does applicant wish to maintain pets, and if so please specify: __No__

References

Landlord:

Present Landlord or Agent __Own a private residence__

Address __16A South Bay Road, Hong Kong__

Approximate Length of Occupancy _____

Previous Landlord or Agent _____

Address _____

Address of previous residence and approximate length of occupancy: _____

Financial:

A.  (Bank- Personal Account) __Steven Wong__

Address __UBS AG 52/F Two International Finance Centre, 8 Finance Street, Central, Hong Kong__

B.  (Business) __Hank Lo, Partner - Stevenson, Wong & Co.__

Address __Central Tower, 28 Queen's Road, Central, Hong Kong__

C.  Stock Broker, C.P.A, Executor, if any _____

Address _____

D.  For information regarding source of income contact _____

Address _____

Personal:

1.  Name __The Rt. Hon. Tony Blair__

Address __PO Box 60519, London W27JU UK__

2.  Name _____

Address _____

3.  Name _____

Address _____

4.  Name _____

Address _____

Special Remarks:

Please give any additional information which may be pertinent or helpful: _____

Mr. and Mrs. Kwok are very impressed with The Sherry-Netherland and
look forward to making The Sherry-Netherland the principle residence for
their family.

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 256
Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 83 of
104
RECEIVED NYSCEF: 11/28/2018

Purchase Application

New York _____ 20___

Applicant's Name __KWOK Ho Wan___
(Name or Names must be entered above in manner that Stock Certificate and other Documents are to be drawn.)

Applicant's Attorney __Ira J. Gilbert Esq.__ Telephone (212) 373-3529
Attorney's Firm and Address __Paul, Weiss, Rifkind, Wharton & Garrison LLP
1385 Avenue of the Americas, New York, N.Y. 10019-6064__

Seller's Name _____

Seller's Attorney_____ Telephone_____

Attorney's Firm and Address_____

Closing Date and Time_____ Date of Possession_____

The undersigned hereby offers to purchase _____ shares of the capital stock of The Sherry-Netherland, Inc. and the accompanying proprietary lease for Apartment _____ in the building located at 781 Fifth Avenue, New York, New York, on the following terms and conditions.

Purchase Price of Stock $_____Present Estimated Proprietary Rental Per Month $_____

Deposit $ 7,000,000 Special conditions, if any:_____

Financing:    Yes ☐ No ☒    Amount_____ Bank_____
( Note: This proposal shall result in no legal obligation until a formal contract of purchase and sale is executed by the parties concerned.)

The undersigned has filled out the information sheet below and understands that this information is essential in considering this application. It is further understood that this application, when signed by the undersigned, is to be subject to approval by the Seller or Authorized Representative and to the Terms and Conditions on the reverse side hereof.

Broker_____

Signature of Purchase Applicant

Signature of Purchase Applicant

## Information Regarding Applicant

Home Address: 10A, South Bay Road, Hong Kong, Telephone +852

Business Connection and Position:_____

Business Address: 49/F, Bank of China Tower, No.1 Garden Road, Central, Hong Kong
Telephone +852 2160 6888

Names of all persons who will reside in the apartment and if children, state number and their approximate ages: (1) KWOK Ho Wan (2) NGOK Hing Chi (Ms) (3) Guo Qiang (4) Guo Mei (Ms) (5) Yue Qinghua (Ms)
(1) purchaser (2) wife of purchaser (3) Son of purchaser (4) daughter of purchaser
(5) Sister of purchasers wife

Names of all clubs and society memberships, fraternities and honorary societies to which applicant belongs: Mar-a-Lago Club, the Trump Golf Course

Schools and colleges attended by husband, wife and children: Guo Qiang (son of Mr. Guo) had attended Bard College.

SN 0049

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO: 256
Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 84 of
104
RECEIVED NYSCEF: 11/28/2018

Personal Letter of Reference

SN 0050

From The Rt Hon Tony Blair

February 2015

Dear Ladies and Gentlemen of the Board of The Sherry Netherland,

It is my great pleasure that I am writing you this letter of reference for Miles Kwok as a potential owner in your building. I have known Miles for seven years and have only the highest respect for him in business and as a friend. I have worked closely with Miles over the years and have always admired his honesty and loyalty.

Miles is dependable, sincere and extremely responsible as an individual; conducting himself with dignity and intelligence. Miles is honest, forthright and has impeccable taste.

I would highly recommend him to your building as I know that Miles would be a wonderful addition as your neighbour at The Sherry Netherland. Miles is a very accomplished man and, in my opinion, would be a most valuable asset to The Sherry Netherland.

*Tony Blair*

PO Box 60519
London
W2 7JU
www.tonyblairoffice.org

Business Letter of Reference

SN 0052

## Stevenson, Wong & Co.
### 史蒂文生黃律師事務所

In association with | AllBright Law Offices | 錦天城律師事務所

Partners:
Willy Y.P. Cheng**          鄭炎潘
Hank H.F. Lo**             勞恒晃
Catherine K.G. Po**        清景元
Eric C.H. Lui*             呂志豪
Neville J.J. Watkins**     韋健士
Wendy W.S. Lam*           林穎詩
Lai S. Lam*                林麗姍
Cornelia W.C. Chu*         朱惠澄
Janice L.H. Chin           陳麗卿
Heidi H.Y. Chui*           徐凱怡
Erica Y.Y. Cheng           鄭廷蕊

Senior Consultant:
Angus Forsyth**            霍晉

Consultant:
Sherlynn G. Chan           陳蓮基

• Notary Public of Hong Kong
  香港公證律師
◦ China-Appointed Attesting Officer
  中國委托公証人
♦ Civil Celebrant of Marriages
  婚姻監禮人

Our Ref : EYC/HLO(P)/75450/15

Your Ref :

Reply Fax :

Date : 17 February 2015

**BY POST**

Board of Directors of The Sherry-Netherland
The Sherry-Netherland
781 Fifth Avenue
New York, NY 10022

Dear Board members of The Sherry Netherland,

I am writing this letter of recommendation in support of the application of Mr. Kwok Ho Wan (also known as Miles Kwok) to become a resident shareholder of your cooperative.

I first met Miles when he engaged my law firm in one of his business transactions about seven years ago. I was and am a partner of my firm. We have since established a long-standing relationship. Over the years, my firm has acted for Miles in various business transactions in different areas, including project financing, fund-raising, corporate mergers and acquisitions and acquisition of aircrafts, leisure boats and properties in Hong Kong, China and different parts of the world.

Miles is a successful businessman and a polite, dependable and responsible individual who conducts himself with dignity and intelligence. Putting aside our work relations, Miles has also been a good friend of mine. Personally, I know Miles to be delightful, considerate and respectful. I trust that his personal qualities will definitely make him a good neighbor and responsible steward of your building.

In my opinion, Miles will be a valued addition to your building.

If you wish to contact me personally, please feel free to call me at +852 2533 2552.

Yours faithfully,

**Hank Lo**
Partner
STEVENSON, **WONG & CO.**

香港中環皇后大道中28號     電話 Tel: +852 2526 6311     香港 廣州 上海 北京 成都 重慶 杭州 南京 深圳 蘇州 太原 青島 廈門
中匯大厦4樓、5樓及1602室     傳真 Fax: +852 2845 0638     Hong Kong Guangzhou Shanghai Beijing Chengdu Chongqing
4/F, 5/F & 1602, Central Tower,     電郵 Email: info@sw-hk.com     Hangzhou Nanjing Shenzhen Suzhou Taiyuan Qingdao Xiamen
28 Queen's Road Central, Hong Kong     www.sw-hk.com     Member of Interlaw since 1982

SN 0053

18 February 2015

**BY POST**

Board of Directors of The Sherry-Netherland
The Sherry-Netherland
781 Fifth Avenue
New York, NY 10022

Dear Ladies and Gentlemen of the Board of The Sherry Netherland,

It is a great pleasure for me to recommend Kwok Ho Wan, also known as Miles Kwok, to be a shareholder in The Sherry-Netherland, Inc. and a resident in your building. I am a managing director of the Wealth Management and Swiss Bank Department at UBS AG and attach my name card for your kind reference.  I have known Miles for about five years since he first began working with UBS AG. Miles has since been working with us in the areas of securities investment and also in financing his various projects in areas such as aircraft acquisitions.

Miles has been a successful and accomplished entrepreneur who has developed and managed a number of companies, both domestically and internationally.  Over the years, Miles has earned his credibility in our bank.  He is very reliable and always fulfills his repayment obligations. For this reason, our bank is happy to have him as our long-term client.

From a personal standpoint, Miles is a sincere and modest gentleman with a warm heart.   He is financially sound but very humble.   He is also one of the most intelligent, genuine and respectful people I have ever known.

Based on my long standing relationship with Miles, I do recommend Miles to be a shareholder in your cooperative and a resident in your building. I am sure your community will be pleased to have him and his family join you at The Sherry.

If you have any questions, please do not hesitate to contact me at stephen-kc.wong@ubs.com.

Yours faithfully,

**Stephen Wong**

SN 0054

Financial Letter of Reference

SN 0055

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 256
Case 22-50073   Doc 183-2   Filed 04/06/22   Entered 04/06/22 17:07:45   Page 90 of
RECEIVED NYSCEF: 11/28/2018
104

UBS

Hong Kong Branch
52/F Two International Finance Centre
8 Finance Street,
Central, Hong Kong
Tel. +852-2971 8888
Fax +852-2971 8001

Feb. 23, 2015

Board of Directors of the Sherry-Netherland
The Sherry-Netherland
781 Fifth Avenue
New York, NY 10022

Dear Sirs,

### Bank Reference – [Application for Real Estate Investments]

We have been asked to provide a reference letter in connection with Application for Real Estate Investments. We confirm that:

**Kwok Ho Wan**
[client's ID: P746467(7)]

has been a client of ours through a personal investment company since July 2012  and during this time Mr. Kwok Ho Wan has had a satisfactory banking relationship with us. As at 18 Feb, 2015, the funds involved in this banking relationship is not less than USD400, 000,000.

The above information is based on our experience of this banking relationship as at current date and is given in confidence for your private use only, without any responsibility on the part of UBS AG or its employees. This letter may only be used in the business context outlined at the beginning of this letter and does not constitute a guarantee or any other obligation on the part of UBS AG. In particular, we are under no obligation to inform you of any subsequent change of circumstances in this banking relationship.

Yours faithfully,
For and on behalf of
UBS AG Hong Kong Branch

Tommy Cheung
Managing Director

Stephen Wong
Managing Director

**SN 0056**

FILED: NEW YORK COUNTY CLERK 11/28/2018 12:22 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO.: 256
Case 22-50073    Doc 183-2    Filed 04/06/22    Entered 04/06/22 17:07:45    Page 91 of
RECEIVED NYSCEF: 11/28/2018
104



# EXHIBIT 12

Case 20-12411 Doc 418 Filed 03/06/22 Entered 03/06/22 13:07:45 Main Document Pg 93 of

<table>
<tr><td colspan="2">**Fill in this information to identify the case:**</td></tr>
</table>

| | |
|---|---|
| Debtor name | **Genever Holdings LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, MANHATTAN DIVISION |
| Case number (if known) | **20-12411** |

☐ Check if this is an amended filing

Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors  12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

| | Declaration and signature |
|---|---|

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

■ *Schedule H: Codebtors* (Official Form 206H)

■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule*

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

| Executed on | **November  2, 2020** | X */s/ Yan Ping Wang* |
|---|---|---|
| | | Signature of individual signing on behalf of debtor |
| | | **Yan Ping Wang** |
| | | Printed name |
| | | **Authorized Representative** |
| | | Position or relationship to debtor |

| Fill in this information to identify the case: |
| --- |
| Debtor name **Genever Holdings LLC** |
| United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK, MANHATTAN DIVISION |
| Case number (if known) |

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property
12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of debtor's interest

2.  **Cash on hand** — $90,037.48

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
    Name of institution (bank or brokerage firm)       Type of account       Last 4 digits of account number

4.  **Other cash equivalents** *(Identify all)*

5.  **Total of Part 1.** — $90,037.48
    Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
| --- | --- |

**6. Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
■ Yes Fill in the information below.

7.  **Deposits, including security deposits and utility deposits**
    Description, including name of holder of deposit

    7.1.   The Sherry Netherland - 5 year security deposit. — $3,312,850.20

8.  **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
    Description, including name of holder of prepayment

9.  **Total of Part 2.** — $3,312,850.20
    Add lines 7 through 8. Copy the total to line 81.

| Part 3: | Accounts receivable |
| --- | --- |

**10. Does the debtor have any accounts receivable?**

Official Form 206A/B          Schedule A/B Assets - Real and Personal Property          page 1

Debtor    Genever Holdings LLC                     Case number *(If known)* _____
        _Name_

☐ No.  Go to Part 4.
☑ Yes Fill in the information below.

11.  **Accounts receivable**

11a. 90 days old or less:      0.00    -         0.00   = ....        __unknown__
                    _face amount_            _doubtful or uncollectible accounts_

---

12.  **Total of Part 3.**

Current value on lines 11a + 11b = line 12.  Copy the total to line 82.        | __TBD__ |

**Part 4:**  **Investments**

**13. Does the debtor own any investments?**

☑ No.  Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:**  **Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:**  **Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:**  **Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No.  Go to Part 8.
☐ Yes Fill in the information below.

**Part 8:**  **Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No.  Go to Part 9.
☐ Yes Fill in the information below.

**Part 9:**  **Real property**

**54. Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
☑ Yes Fill in the information below.

55.  **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

Official Form 206A/B           Schedule A/B Assets - Real and Personal Property           page 2

Debtor  **Genever Holdings LLC**                                          Case number *(If known)* _____
        Name

factory, warehouse, apartment or
office building, if available.

| | | | | | |
|---|---|---|---|---|---|
| 55.1. | **781 5th Ave Apt 1801, New York, NY 10022-5520 Apartment 1801** | Coop Apartment | $67,500,000 *original purchase price* | TBD | TBD |
| 55.2. | **781 5th Ave Apt 719, New York, NY 10022-1074 Maid's Room No. 719** | Coop Apartment | $2,500,000 *original purchase price* | TBD | TBD |

56.     **Total of Part 9.**

       Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
       Copy the total to line 88.

                                                         **$70,000,000**

57.     **Is a depreciation schedule available for any of the property listed in Part 9?**
       ■ No
       ☐ Yes

58.     **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
       ■ No
       ☐ Yes

**Part 10:**    **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

       ■ No.  Go to Part 11.
       ☐ Yes Fill in the information below.

**Part 11:**    **All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
       Include all interests in executory contracts and unexpired leases not previously reported on this form.

       ■ No.  Go to Part 12.
       ☐ Yes Fill in the information below.

Software Copyright (c) 2020 CINGroup - www.cincompass.com

Debtor   **Genever Holdings LLC**
      Name

Case number *(If known)* _____

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $90,037.48 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $3,312,850.20 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9*..............................................> | | $70,000,000 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $3,402,887.68 | + 91b. |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $73,402,887.68 |

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | **Genever Holdings LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, MANHATTAN DIVISION |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 206D
# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1:  List Creditors Who Have Secured Claims

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A | Column B |
|---|---|---|---|
| | | **Amount of claim** | **Value of collateral that supports this claim** |
| | | Do not deduct the value of collateral. | |
| **2.1  The Sherry Netherland** <br> Creditor's Name <br><br> **781 5th Ave** <br> **New York, NY 10022-1092** <br> Creditor's mailing address <br><br><br> Creditor's email address, if known <br><br> **Date debt was incurred** <br><br> **Last 4 digits of account number** <br><br> **Do multiple creditors have an interest in the same property?** <br> ■ No <br> ☐ Yes. Specify each creditor, including this creditor and its relative priority. | Describe debtor's property that is subject to a lien <br> **781 5th Ave Apt 1801, New York, NY 10022-5520** <br> **Apartment 1801** <br><br> Describe the lien <br><br> **Is the creditor an insider or related party?** <br> ■ No <br> ☐ Yes <br> **Is anyone else liable on this claim?** <br> ■ No <br> ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) <br><br> As of the petition filing date, the claim is: <br> Check all that apply <br> ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | $891,362.06 | TBD |

**3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**  | $891,362.06 |

### Part 2:  List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

Software Copyright (c) 2020 CINGroup - www.cincompass.com

---

**Fill in this information to identify the case:**

Debtor name    **Geneverr Holdings LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK, MANHATTAN DIVISION

Case number (if known) _____

☐ Check if this is an amended filing

---

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims      12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:  List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**Internal Revenue Service**<br>**Centralized Insolvency Operations**<br>**PO Box 7346**<br>**Philadelphia, PA 19101-7346** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$0.00** | **$0.00** |
| | Date or dates debt was incurred | Basis for the claim:<br>**For notice purposes** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address<br>**NYC Dep't of Finance**<br>**Legal Affairs**<br>**345 Adams St Fl 3**<br>**Brooklyn, NY 11201-3719** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$0.00** | **$0.00** |
| | Date or dates debt was incurred | Basis for the claim:<br>**For notice purposes** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

---

| Debtor | Genever Holdings LLC | | | Case number *(if known)* | |

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |

6. **Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |

**Part 3:** Legal Actions or Assignments

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| | Case title / Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan (various akas), Genever Holdings LLC and Genever Holdings Corporation 652077/2017 | | Supreme Court of the State of New York 60 Centre St New York, NY 10007-1402 | ■ Pending ☐ On appeal ☐ Concluded |
| 7.2. | Genever Holdings LLC v. The Sherry-Netherland, Inc. 152838/2020 | | Supreme Court, New York County 60 Centre St New York, NY 10007-1402 | ■ Pending ☐ On appeal ☐ Concluded |
| 7.3. | The Sherry-Netherland, Inc. v. Genever Holdings LLC 154853/2020 | | Supreme Court, New York County 60 Centre St New York, NY 10007-1402 | ■ Pending ☐ On appeal ☐ Concluded |
| 7.4. | The Sherry-Netherland, Inc. v. Genever Holdings LLC, 781 Fifth Avenue, Apartment 1801, NY NY 10022 154854/2020 | | Supreme Court, New York County 60 Centre St New York, NY 10007-1402 | ■ Pending ☐ On appeal ☐ Concluded |
| 7.5. | The Sherry-Netherland, Inc. v. Genever Holdings LLC, "John Doe" and/or "Jane Doe" 155038/2020 | | Supreme Court, New York County 60 Centre St New York, NY 10007-1402 | ■ Pending ☐ On appeal ☐ Concluded |

8. **Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:** Certain Gifts and Charitable Contributions

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

Software Copyright (c) 2020 CINGroup - www.cincompass.com

| Debtor | **Genever Holdings LLC** | | Case number *(if known)* | | |
|---|---|---|---|---|---|
| | Name | | | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | $0.00 | $0.00 |
|---|---|---|---|---|---|

**2.3**    Priority creditor's name and mailing address

**NYS Dep't of Taxation
Bankruptcy/Special Procedure
PO Box 5300
Albany, NY 12205-0300**

Date or dates debt was incurred

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:
**For notice purposes only**

Is the claim subject to offset?
☑ No
☐ Yes

$0.00    $0.00

---

| Part 2: | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

**3.**   List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Adam Leitman Bailey P.C.**

**1 Battery Park Plz Fl 18
New York, NY 10004-1646**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☑ Unliquidated
☐ Disputed

Basis for the claim: **for notice purposes**

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply* | $67,500,000.00 |
|---|---|---|---|

**Bravo Luck Limited**

**P.O. Box 957
Off Shore Incoropration Ce**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,800,000.00 |
|---|---|---|---|

**Golden Spring New York Ltd**

**162 E 64th St
New York, NY 10065-7478**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $121,000,000.00 |
|---|---|---|---|

**Pacific Alliance Asia Opportunity Fund LP
c/o O'Melveny & Myers
7 Times Sq
New York, NY 10036-6524**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply* | $5,000,000.00 |
|---|---|---|---|

**Qiang Guo c/o Bravo Luck Limited**

**P.O. Box 957
Off Shore Incoropration Ce**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Genever Holdings LLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
| | **Romer Debbas LLP** | ☐ Contingent | |
| | **275 Madison Ave Ste 801** | ■ Unliquidated | |
| | **New York, NY 10016-1153** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **for notice purposes** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

---

**Part 3:    List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **New York State Attorney General**<br>**120 Broadway**<br>**New York, NY 10271-0002** | Line **2.3**<br><br>☐ Not listed. Explain ____ | _ |
| 4.2 | **NYC Dept of Law**<br>**Attn: Bernadette Brennan, Esq.**<br>**100 Church St Rm 5-233**<br>**New York, NY 10007-2601** | Line **2.2**<br><br>☐ Not listed. Explain ____ | _ |

---

**Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | 0.00 |
| **5b. Total claims from Part 2** | 5b. | + $ | 195,300,000.00 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | 195,300,000.00 |

**Fill in this information to identify the case:**

Debtor name    **Genever Holdings LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK, MANHATTAN DIVISION

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**

    ☑ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.

    ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

**2. List all contracts and unexpired leases**      **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

2.1    State what the contract or lease is for and the nature of the debtor's interest

     State the term remaining

     List the contract number of any government contract   _____   _____

2.2    State what the contract or lease is for and the nature of the debtor's interest

     State the term remaining

     List the contract number of any government contract   _____   _____

2.3    State what the contract or lease is for and the nature of the debtor's interest

     State the term remaining

     List the contract number of any government contract   _____   _____

2.4    State what the contract or lease is for and the nature of the debtor's interest

     State the term remaining

     List the contract number of any government contract   _____   _____

Software Copyright (c) 2020 CINGroup - www.cincompass.com

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Genever Holdings LLC** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, MANHATTAN DIVISION |
| Case number (if known) | |

☐ Check if this is an
amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

■ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.
☐ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

Column 1: **Codebtor**                                          Column 2: **Creditor**

| Name | Mailing Address | Name | Check all schedules that apply: |
|---|---|---|---|
| 2.1 _____ | _____<br>Street<br>_____<br>City          State          Zip Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.2 _____ | _____<br>Street<br>_____<br>City          State          Zip Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.3 _____ | _____<br>Street<br>_____<br>City          State          Zip Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.4 _____ | _____<br>Street<br>_____<br>City          State          Zip Code | _____ | ☐ D<br>☐ E/F<br>☐ G |