UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

-------------------------------------------------------------------X
:
In re:                                              :   Chapter 11
:
   Ho Wan Kwok,                                   :   Case No. 22-50073 (JAM)
:
                               :   Hearing Date: April 13, 2022
             Debtor.[1]                         :   Hearing Time: 10:00 A.M. (ET)
:
:   Docket Nos.: 117, 160, 168, 172, 179
:
-------------------------------------------------------------------X

**OMNIBUS REPLY OF DEBTOR**
**IN SUPPORT OF ENTRY OF ORDER APPROVING DIP FACILITIES**

Mr. Ho Wan Kwok, the debtor and debtor-in-possession ("Mr. Kwok" or the "Debtor") in the above-captioned chapter 11 case, by and through his undersigned counsel, respectfully files this reply (the "Reply") in support of *Debtor's Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief* [Docket No. 117] (the "DIP Motion") and in response to the objections and limited objections filed by the United States Trustee for Region 2 at Docket No. 160 (the "UST Objection" filed by the "United States Trustee"), the Official Committee of Unsecured Creditors at Docket No. 168 (the "UCC Objection" filed by the "Committee"), Creditors Rui Ma and Weican Meng at Docket No. 172 (the "Creditors Objection" filed by the "Individual Creditors"), and Pacific Alliance Asia Opportunity Fund L.P. at Docket No. 179 (the "PAX Objection" filed by "PAX;" the foregoing collectively, the "Objections" filed by the "Objectors"). In support of this Reply, the Debtor submits the revised

---

[1]    The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

proposed order attached hereto as **Exhibit A** (the "Revised Proposed Order"), with changes shown at **Exhibit B**, and the revised DIP Loan Agreement attached hereto as **Exhibit C** (the "Revised DIP Loan Agreement") with changes shown at **Exhibit D**, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This Chapter 11 Case commenced with substantial litigation presented to this Court.  The Debtor wants to utilize the proceedings to resolve his personal liabilities.  There will be a substantial cost to do so, which his family is willing to bear in the form of a substantially below-market DIP Loan.  The Objectors point to the Events of Default on the loan, among other concerns, as evidence of an effort by the Debtor and the DIP Lender to influence the Chapter 11 Case.

2.      To this, the Debtor admits that he does, of course,  wish to influence the course of this case, exactly as required of all chapter 11 debtors: to confirm a chapter 11 plan that provides substantial benefit to all holders of valid claims, and is otherwise fair and reasonable, and in the interim to take those steps to fund that plan process and conduct this case in a responsible manner in all respects in compliance with the Bankruptcy Code. And, the Debtor is fortunate here to have obtained financing to do just that, on terms that are fair and highly beneficial to the estate.    The Debtor's goals here are entirely appropriate: to permit a fair investigation of his financial affairs (including by an appointed examiner and an official committee), to resolve his liabilities through confirmation of a chapter 11 plan, and to stay a free man so that he is safe from severe harm and can administer his estate.  There is simply nothing wrong with requesting that his family provide financing, on a subordinated basis, to fund what is required.  The terms provided here are

substantially more generous than those routinely approved by courts, even where, as here, the proposed lender is an insider of the debtor.

3.    Notwithstanding that the financing, as initially proposed, was fair in all respects, having considered the filed objections, the Debtor has requested, and the DIP Lender and other persons and entities associated with the Debtor's family have agreed, to a number of amendments to address concerns raised in the Objections and related recent filings.  These include the following:

a.    The Debtor has filed a proposed plan of reorganization (the "Plan").  The Plan provides for the *Lady May* itself to be contributed to fund distributions to holders of allowed claims against the Debtor.

b.    Likewise contemporaneously, the owner of the *Lady May* has filed or will file with the Court certain documents describing the vessel's current condition and whereabouts and providing assurance that the vessel will be placed within the jurisdiction of this Court, at substantial cost to the owner.

c.    The revisions to the Proposed Order and DIP Loan Agreement include, among other things, that:

  i.    Events of Default have been removed and replaced by defined "Termination Events," the occurrence of which cannot be subject to reasonable dispute;

  ii.    The DIP Lender will provide, unfettered,  an additional $1,000,000 to the Debtor's Estate, which shall not be utilized for payment of administrative claims and professional fees, and otherwise without usage restriction – squarely satisfying the concern that there is no unfettered cash in this estate, even before below-market financing and the very substantial committed plan funding;

  iii.    The DIP Lender shall not have any rights to administrative or other priority claims, and continues to assert or obtain no liens to secure the millions of dollars to be loaned;

  iv.    The proceeds of each draw upon the DIP Facility will be held by the Debtor DIP loan will be held in a debtor-in-possession account and disbursed by the Debtor at the direction of the Court;

  v.    The Committee's rights to be heard are expressly preserved;

  vi.    The Revised Proposed Order does not include findings of good faith; and

vii.   The proceeds of interim draws on the DIP Loan shall be available to pay all approved fees of estate professionals.

4.      With these changes, and for the reasons further discussed below, the Debtor and the DIP lender clearly demonstrate their good faith and fairness to the Debtor, his estate, and his creditors in proposing the DIP Facility.  The DIP Motion should be granted.

## REPLY

### I.      The DIP Motion Reflects the Debtor and His Family's Good Faith Intention to Confirm a Plan of Reorganization and Should Be Approved.

5.      The Objectors generally contend that the proposed DIP Facility is inappropriate, unnecessary, and should not be approved.  Particularly in light of the revised relief proposed herein, each of these objections is without merit and should be overruled.

#### A.      The DIP Motion Provides the Only Avenue to Fund Plan Confirmation.

6.      The Debtor filed this Chapter 11 Case, in his own words, to: "(a) create a single forum to orderly address the various competing claims asserted against me; (b) afford stakeholders an efficient opportunity to investigate my assets, liabilities, and financial affairs, given what I perceive to be misunderstandings in that regard; (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims; and, hopefully (d) reach consensus with my creditors on a fair and equitable resolution of claims and distribution of assets pursuant to a Chapter 11 plan." Kwok Declaration ¶3.  Additionally and specifically, the Debtor specifically aims to avoid imprisonment, which would frustrate the purposes of this Case and possibly endanger his life. *Id.* ¶4, 24 FN11.

7.      This case cannot proceed, and the rights of all creditors be protected against a race against PAX to the courthouse, without post-petition financing.  Estate professionals cannot be paid from the gifts of non-Debtors, and would not invest their time and effort upon the promise of such gifts.  To that end, the Debtor has requested various wholly customary relief from this Court:

requesting post-petition financing, retention of professionals, interim compensation procedures and so on. The recently filed Plan additionally evidences the Debtor's good faith attempt to provide value to creditors, with his family's assistance, to resolve his financial difficulties. None of the relief requested by the Debtor is unusual in and of itself, aside from the unusually generous terms agreed by the DIP Lender.

8.      The Debtor supports an investigation to be conducted by an independent Examiner not chosen by or affiliated with any party. *See* Docket No. 180 (response to United States Trustee's request for appointment). The Debtor supports and welcomes an independent and "reasoned vetting of all pertinent demonstrable case facts, without prejudicing any creditor's economic rights—except to the extent that any unsecured creditor hope[s] to jump ahead in payment priority." Kwok Declaration ¶4.

9.      PAX has requested, variously, dismissal of the Chapter 11 Case, appointment of a Chapter 11 Trustee, and relief from the automatic stay. Its efforts are incompatible with the efforts of the Debtor to propose and confirm a plan that protects the rights of all of his creditors.

10.      Plainly, either PAX is right about the Debtor and his assets and behavior, or the Debtor is. The Debtor is asking that his family be permitted to finance an investigation by an independent professional so that the Court can make a determination regarding his assets and conduct and whether the Debtor can confirm a plan of reorganization. The DIP Motion outlines a path to such a determination, without obligating the DIP Lender to finance a case if it can go no farther—with the exception, per recent revisions to the requested relief, that the DIP Lender will provide the Debtor's Estate one million dollars ($1,000,000) to fund further litigation or distributions that might be utilized in that event.

11.    The Objectors, however, would have the Court pre-judge the dispute, even before taking evidence and making the types of findings that would be required to prematurely determine the outcome of this Chapter 11 Case.

12.    The Objections are not appropriate.  The Debtor should have the opportunity to pursue a resolution of his financial affairs before this Court, in full compliance with the Code.

**B.    Subject to Revisions Proposed Herein,**
**The Events of Default Proposed are Entirely Fair.**

13.    All of the Objectors oppose the approval of DIP Loan Events of Default that include, among others, (i) an award of stay relief to PAX, (ii) the Chapter 11 Case is dismissed or converted, (iii) there shall be appointed a chapter 11 trustee, or (iv) the Court shall terminate plan exclusivity.  *See* UST Objection p. 9; UCC Objection ¶1; Creditors Objection ¶3; PAX Objection ¶10.

14.    Several of the Objections complain that certain Events of Default were overly subjective, thus granting the Debtor and DIP Lender case control.  Setting aside the Debtor's disagreement therewith, these Events of Default have been removed.  There is no subjectivity to any of the remaining Events of Default.

15.    As noted above: the defined Events of Default would each render impossible the stated aims of the Debtor to finance a reasoned vetting of the case facts and confirm a chapter 11 plan of reorganization.  No Debtor would propose unlimited financing to be made available to attack him and his family while he is imprisoned.  Likewise, no DIP Lender would agree to finance a case indefinitely with no hope of confirming a Plan or having its debt repaid.[1]  Regardless, the

---

[1]    It is of course possible that a plan would be proposed by a non-debtor and confirmed upon appointment of a chapter 11 trustee or termination of plan exclusivity.  It is highly unlikely that any such Plan would be acceptable to the Debtor or the DIP Lender, as the only foreseeable source of near-term consideration for creditors under any Plan would be a voluntary contribution from the Debtor's family.

Debtor and DIP Lender have agreed to extend an "Estate Contribution Loan" of $1,000,000, thus providing the Estate the option of continuing investigation and litigation and/or making distributions following a Termination Event.

16.     The Debtor agrees that the proposed financing should be evaluated as if the DIP Lender were an insider, and the Court should of course review the entire fairness of the transaction.[1]  But to say that a lender must continue to finance a case once it cannot be repaid and its non-monetary aims are rendered impossible is not unfair.  It is not the same as granting a party control over a case.  If that were so, courts would not *routinely* approve debtor-in-possession financing including case milestones and other events of default similar, if not identical, to that proposed here.  And yet they do, even in transactions with purported insiders, and even where the purported insider is granted security interests and administrative priority claims.  *See, e.g., In re LATAM Airlines Group S.A.*, 620 B.R. 722, 816 (Bankr. S.D.N.Y. 2020) (approving insider DIP loan with events of default including failure to meet case milestones, appointment of chapter 11 trustee, etc.);  *In re Dean & DeLuca New York, Inc.*, Case No. 20-10916, Docket No. 77 (Bankr. S.D.N.Y. May 13, 2020) (approving DIP loan from party alleged by official committee as an insider, over committee's objection, with secured and administrative superpriority status, and events of default including failure to meet milestones, proposal of plan without repayment in full, dismissal without repayment in full).

17.     In support of the Objections, the Objectors cite numerous cases that are not analogous.  For instance, various parties cite *Ames Dept. Stores, Inc.*, 115 BR. 34 (S.D.N.Y. 1990)

---

[1]    The checklist filed with the Motion identified the DIP Lender as not being an insider because the DIP Lender is not an insider within the express meaning of the term pursuant to 11 U.S.C. §101(31) and the checklist provided under the Local Rules does not further clarify the term.  However, the DIP Motion expressly identified the DIP Lender as an entity controlled by the Debtor's son.  ¶2.  The Debtor does not dispute that the DIP Lender is an insider and that the Court should apply the legal standard appropriate to transactions with insiders.

for the proposition that the Court should not approve financing requests that "tilt the conduct of the bankruptcy case" and "leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits." In its ruling, the *Ames* court noted the danger of prepetition lenders' excess influence over the debtor, which may have limited ability to negotiate terms. *Ames*, like the similarly oft-cited *In re Tenny Village Co.*, 104 B.R. 562, 567-70 (Bankr. D.N.H. 1989), was concerned with case-control provisions that directed the terms of reorganization, altered or violated fiduciary duties to the estate and creditors, and dictated a plan "specially crafted for the benefit of" a particular creditor. *See Ames*, 115 B.R. at 38 (quoting *Tenny Village*, 104 B.R. at 568).

18.     The ruling in *Ames* discourages courts from approving "sub rosa plans where the terms of the loan include concessions…unauthorized under, or in conflict with, provisions under the Bankruptcy Code." *In re LATAM Airlines Group S.A.*, 620 B.R. 722, 816 (Bankr. S.D.N.Y. 2020) (citing *In re Belk Props., LLC*, 421 B.R. 221, 225-26 (Bankr. N.D. Miss. 2009); *In re Chevy Devco*, 78 B.R. 585, 589 (Bankr. C.D. Cal. 1987)). Nothing in the DIP Motion or any Proposed Order prevents any issue from being decided by this Court on the merits. Nothing in the DIP Motion sets the terms for any plan of reorganization. The DIP Lender's refusal to continue funding a Chapter 11 Case once repayment becomes unfeasible is (i) again, entirely customary, and (ii) does not dictate the terms of any plan or other conduct in this Case.

19.     Similarly, Objectors cite *In re Barbara K. Enters., Inc.*, No. 08-11474 (MG), 2008 WL 2439649 (Bankr. S.D.N.Y. June 16, 2008), which holds that financing should not "unfairly cede control" of the case. As PAX notes, *Barbara K. Enters* concerned a business entity that had no meaningful business plan or prospects for reorganization. 2008 WL 2439649 *15. While the Debtor is not a business, he does have a plan of reorganization, which is now on file and provides

meaningful recoveries for creditors.  Likewise, PAX cites *Norris Square Civic Ass'n v. St. Mary Hospital (In re St. Mary Hospital)*, 86 B.R. 393, 401-03 (Bankr. E.D. Pa. 1988), a case which PAX itself concedes concerned the granting of superpriority liens on unencumbered assets.  The Objectors' own citations demonstrate the inapplicability of these cases.

20.     The concerns expressed in *Ames*, *Tenny Village*, and *Barbara K. Enters* expressly address the multitude of cases where a DIP lender exerts too much control over the case.  *See Ames*, 115 B.R. at 38.  They are hardly apposite where a debtor's empathetic family members extend loans *without* customary case-influencing measures often approved by the courts, such as security interests and administrative priority claims over all estate assets.  With the addition of $1,000,000 in no-strings-attached financing of the Estate outside of the proposed financing of professional and administrative costs, it cannot be fairly stated that the terms of the DIP Loan provide any restriction whatsoever on the decisions this Court or the representatives of the Estate can make in this Chapter 11 Case.

21.     The Debtor should have an opportunity to attempt reorganization.

## II.     The Objections Filed by PAX and Others Contain False and Misleading Statements.

### A.     PAX's Accusations Regarding the Purpose of the Facility Mislead the Court and Contradict the Record.

22.     PAX describes the DIP Motion as an effort to "borrow $8,000,000 from his family to defend purported assets of $3,850."  PAX Objection ¶2.  The statement is blatantly misleading, given the Debtor's disclosure of unliquidated litigation assets, but regardless, PAX asks the Court to infer from its statement that the Debtor's disclosures are false and that he and his family are paying to protect their wealth.  *See id.*  But the Debtor is in danger of imprisonment.  Of course, given that fact, the Court might draw the inference that the Debtor's family is trying to protect the

Debtor from imprisonment, and finance a reasoned vetting of disputes over property they consider their own.

23.    PAX's statements here, and elsewhere in its Objection, ignore the transparent and uncontroverted record of why this case was filed: to permit resolution of the Debtor's affairs, including by investigating and establishing which assets are his own and distributing appropriate property to creditors.  The Debtor believes that he cannot accomplish any such aims if he is imprisoned.  *See* Kwok Declaration ¶¶ 3-4, 24 FN 11.

24.    PAX notes that the Debtor intends to pay creditors in full, and suggests that he and his family do so.  The Debtor's proposed plan provides for tens of millions of dollars to be paid to creditors, if in fact there are valid claims to that extent.  Determining how much each creditor is owed takes time and money.  The Debtor's family has offered to finance the proceedings, including by placing at risk assets of non-Debtors, on condition that the Debtor himself be physically able to participate in the proceedings and administer his estate as is his right and duty.

25.    The Debtor cannot reasonably do so if he is imprisoned.  Moreover, the Debtor has stated that he believes "the CCP would have me assassinated at the earliest possible opportunity if [I were] imprisoned."  Kwok Declaration, ¶4.  PAX has brought litigation against the Debtor and sought rulings that could result in the Debtor's imprisonment.

26.    PAX is entitled to contest the reasonability or truthfulness of the Debtor's beliefs, which the Debtor has acknowledged.  *Id.* ("I do not suggest that the Court or any party-in-interest now accept my views.")  But PAX is not entitled to pre-judgment of property disputes, or to have this Court ignore PAX's role in catalyzing these cases.

   B.    <u>**The Objectors Misconstrue the Lender's Right to Recover Funds**</u>.

27.    Certain Objectors, notably not including the Committee, argue that the DIP Facility abuses the bankruptcy process by providing an administrative claim to the DIP Lender upon a

10

finding of default.  UST Objection p. 9 FN 3; Creditors Objection ¶9; PAX Objection ¶10-11.  The United States Trustee even asks the Court to protect the Estate against a super-priority administrative claim on chapter 5 causes of action.  UST Objection p. 9  FN 3.

28.     Respectfully, the Objectors' complaints are overblown if not outright misleading.  As the Committee rightly observes, "The DIP Loan seeks only a superpriority administrative expense for any 'Undisbursed DIP Loans' … which would likely never come into effect."  Committee Objection ¶14 FN 6.

29.     Regardless, the purportedly offending provisions have been removed.  The Revised Proposed Order and DIP Loan Agreement do not provide for any security interest or administrative priority claim, even solely to recover undisbursed funds.  Quite the opposite, they provide for the extension of an *additional*, unrestricted loan of $1,000,000, providing the Estate extraordinary flexibility even after a Termination Event.

## III.    The Debtor Has Proposed Revisions to the Interim DIP Order That Resolve the Various Concerns and Limited Objections of the Objectors.

30.     The Objectors raise additional concerns, which the Debtor with consent of the DIP Lender has endeavored to resolve by the submission of a Revised Proposed Order, attached hereto as Exhibit A.  The concerns raised by the Objectors and proposed resolutions are as shown in the table below.

| OBJECTION | | RESPONSE AND PROPOSED RESOLUTION | |
|---|---|---|---|
| The Events of Default and Remedies provision provide the DIP Lender excessive case control. | UST p. 9 Creds. ¶¶ 3-4 UCC ¶¶ 14-17 PAX ¶ 10 | Events of Default have been removed and replaced by defined "Termination Events," the occurrence of which is not subjective. | RDLA 8.01 |

| | | | |
|---|---|---|---|
| The DIP Lender should not be granted an administrative priority claim. | UST ¶ 16, p. 9 FN 3 Creds. ¶9 PAX ¶10-11 | The DIP Lender's right to recover undisbursed funds has been removed. | RDLA 8.02 |
| The Interim DIP Order inappropriately restricts funding to ordinary course professionals. | UST ¶ 21 UCC ¶ 23 | When the Motion was initially filed, the Debtor requested the matter be heard on shortened notice on March 28, 2022 so that the Debtor could retain and pay ordinary course professionals to preserve his valuable litigation assets.  Dkt. No. 118.  The Court set the hearing on interim relief for April 13, 2022.  More time having now passed and estate professionals having invested significant time and effort in litigation, the Debtor now agrees with the Objectors, and has proposed through revisions to the Order, that proceeds of the DIP Facility should be available to pay approved fees of all estate professionals. | RPO ¶7 |
| The Interim DIP Order designates proceeds to Debtor and Committee professionals and provides inadequate protection for chapter 11 quarterly fees. | UST ¶ 22 | The Revised DIP Loan Agreement allocates amounts for U.S. Trustee fees. | RDLA 2.01(d) |
| The Interim DIP Order terms are binding on future trustees. | UST ¶ 23 | This provision is customary and no changes have been made. The basis for objection, if any, is not clear. | |
| Monies loaned are protected by the terms of the order and not subject to change, challenge, vacation, etc. | UST ¶ 23 | This provision is customary and no changes have been made. The basis for objection, if any, is not clear. | |

| | | | |
|---|---|---|---|
| The DIP Loan is governed by New York law and disputes are to be heard in New York courts. | UST ¶ 24 | The Interim DIP Order has been revised to provide for resolution by the Bankruptcy Court pursuant to Connecticut law. | RDLA 9.04<br><br>RPO ¶19 |
| The Motion leaves it up to the Debtor and insider Lender to determine the budget themselves. | Creds. ¶ 5 | The revised materials do not require the submission of or compliance with a budget; rather, the Debtor will request funds as necessary to pay estate professional fees and other approved administrative expenses. | |
| Paragraph 15 of the Interim DIP Order should be expanded to preserve rights and protect against a waiver of rights for the Committee. | UCC ¶ 24 | The Interim DIP Order has been revised as proposed by the Committee. | RPO ¶15 |
| The Court should not enter a good faith finding or similar order. | UCC ¶¶ 18-24<br>Creds. ¶ 7<br>PAX ¶ 18 | The Debtor disagrees but consents to remove the findings on an interim basis. | |
| The maturity of the DIP Facility upon confirmation gives the DIP Lender excessive control. | Creds. ¶ 6(b) | This is a customary provision that does not grant the DIP Lender excessive control. Any Plan must set forth treatment of the DIP Lender's claims, and the Debtor intends to do so. But the DIP Lender's claims absent default are not administrative priority and will not be classified as such; moreover, as an insider, the DIP Lender's vote will not be counted for purposes of class voting or cramdown. | |
| The DIP Motion omits the DIP Lender's status as an insider. | UCC ¶¶ 8, 11<br>PAX ¶¶ 4-5 | The DIP Motion and other case documents clearly identify the DIP Lender as an entity controlled by the Debtor's son; the Debtor agrees the DIP Lender is an insider. | |

| | | | |
|---|---|---|---|
| The DIP Motion should be adjudicated under a standard applicable to transactions with insiders. | UCC ¶ 8 UST p. 8 PAX ¶¶ 4-5 Creds. ¶¶ 26-27. | The Debtor agrees and respectfully suggests that the proposed loan is substantially below market and entirely fair to the Debtor, his estate and creditors. | |

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter a final order approving the DIP Motion on an interim basis, overruling the Objections, and granting such other and further relief as the Court deems just and proper.

Dated: April 10, 2022

**BROWN RUDNICK LLP**

By: _/s/ William R. Baldiga_
BROWN RUDNICK LLP
185 Asylum Street
Hartford, CT 06103
Attn: Dylan Kletter, Esq.
Telephone:  (860) 509-6500
Facsimile:  (860) 509-6653
Email: dkletter@brownrudnick.com

Seven Times Square
New York, NY 10036
Attn: William R. Baldiga, Esq. (*pro hac*)
Attn: Bennett S. Silverberg, Esq. (*pro hac*)
Attn: Uriel Pinelo, Esq. (*pro hac*)
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email:  wbaldiga@brownrudnick.com
           bsilverberg@brownrudnick.com
           upinelo@brownrudnick.com

14

## **EXHIBIT A**

**REVISED PROPOSED INTERIM DIP ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------------X
                           :
In re:                          :    Chapter 11
                           :
    Ho Wan Kwok,          :    Case No. 22-50073 (JAM)
                           :
                           :
          Debtor. [1]     :
                           :
-------------------------------------------------------------------X

## INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN UNSECURED, SUBORDINATED POSTPETITION FINANCING, (II) SCHEDULING FINAL HEARING, AND (III) GRANTING RELATED RELIEF

Upon the motion dated March 21, 2022 (the "DIP Financing Motion")[2] of the above-captioned debtor-in-possession (the "Debtor") in the above-referenced chapter 11 case (the "Chapter 11 Case") seeking the entry of an Interim DIP Order and Final DIP Order authorizing the Debtor to obtain postpetition financing from Golden Spring (New York) Ltd. ("GSNY" or "DIP Lender"), scheduling and approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rules 2002-1, 4001-3, 9006-1, and 9013-1 of the Local Bankruptcy Rules for the District of Connecticut (the "Local Rules"), and granting related relief.

This Court having reviewed the DIP Financing Motion, the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions*, and all matters brought to the Court's attention at the interim hearing, which was held on April 13, 2022 (the "Interim Hearing"); and after considering all of the pleadings filed with this Court; and after consideration

---

[1]    Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2]    Capitalized terms used in this Interim DIP Order, unless defined herein, shall have the meanings given such terms in the DIP Financing Motion or the DIP Loan Agreement (as defined in the DIP Financing Motion).

of the evidence presented on the record at the Interim Hearing; and the Court having found that

due and sufficient notice of the DIP Financing Motion and the Interim Hearing was provided by

the Debtor in accordance with Bankruptcy Rules 2002 and 4001(b)(1) and Local Rule 4001-2

and 9013-2; and it appearing that the relief requested in the DIP Financing Motion, to the extent

granted by this Interim DIP Order, is fair and reasonable and in the best interests of the Debtor,

his estate, creditors, and all parties-in-interest, and is a sound and prudent exercise of the

Debtor's business judgment; and after due deliberation and consideration, the Court makes the

following findings of fact and conclusions of law (to the extent any findings of fact constitute

conclusions of law, they are adopted as such, and *vice versa*):

**THE COURT HEREBY FINDS AND DETERMINES:**

A.    <u>Petition Date</u>.  On February 15, 2022 (the "<u>Petition Date</u>"), the Debtor filed a

voluntary petition for relief with this Court commencing the Chapter 11 Case.  The Debtor is a

debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    <u>Other Estate Parties</u>.  No trustee or examiner has been appointed in this Chapter

11 Case. On March 21, 2022, the Office of the United States Trustee for the District of

Connecticut (the "<u>U.S. Trustee</u>") appointed the official committee of unsecured creditors (the

"<u>Committee</u>" pursuant to section 1102 of the Bankruptcy Code.

C.    <u>Jurisdiction; Core Proceeding; Venue</u>.  The Court has subject matter jurisdiction

over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. §§

157(a)-(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this

Chapter 11 Case and the DIP Financing Motion in this District is proper pursuant to 28 U.S.C. §§

1408 and 1409.

D.    <u>Notice</u>.  The Interim Hearing was held on April 13, 2022 pursuant to Bankruptcy Rule 4001 and Local Rule 9013-2, and the notice provided by the Debtor of the Interim Hearing and the relief requested in the DIP Financing Motion, was, under the circumstances, due and sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of this Court, and no other notice of the relief sought at the Interim Hearing was necessary or required.

E.    <u>Immediate Financing Need</u>.  An ongoing need exists for the Debtor to obtain financing of the type sought herein, to maximize the value of the estate by liquidating certain litigation claims and seeking confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code.  The Debtor is unable to obtain financing in the form of a credit facility with terms preferable to those extended by the DIP Lender.  Within the timeframe required by the need to avoid irreparable harm, the Debtor can best obtain financing in the amounts required upon the terms extended by the DIP Lender.

F.    <u>DIP Facility</u>.  The Debtor has requested that the DIP Lender establish a facility in favor of the Debtor (the "<u>DIP Facility</u>") pursuant to which the Debtor may obtain one or more loans (each, a "<u>DIP Loan</u>" and collectively, the "<u>DIP Loans</u>") through multiple advances in the aggregate principal amount of US$9,000,000, subject to the terms and limitations set forth herein and in the DIP Loan Agreement. The initial DIP Loan shall be made no later than two (2) business days following entry of this Interim DIP Order, in an initial principal amount equal to $2,000,000 (the "<u>Interim DIP Loan</u>") and, thereafter, DIP Loans shall be made in subsequent advances, as may be required from time to time in accordance with the terms of the DIP Loan Documents; <u>provided</u> that (a) the aggregate principal amount of all Subsequent DIP Loans outstanding, after giving effect to any Subsequent DIP Loan and Estate Contribution Loan, shall

not exceed $3,000,000 prior to the entry of the Final DIP Order, and (b) the proceeds of the DIP Facility (other than the proceeds of the Estate Contribution Loan (as defined in the DIP Loan Agreement)) shall be used by the Debtor in accordance with this Interim DIP Order and the DIP Loan Documents (as hereinafter defined), solely for the purposes and amounts set forth herein.

G.    <u>Estate Contribution Loan</u>.  The Estate Contribution Loan, as defined in the DIP Loan Agreement shall be made no later than two (2) business days following entry of this Interim DIP Order, in a principal amount equal to $1,000,000 (the "<u>Estate Contribution Loan</u>").

H.    <u>Good Cause</u>.  Based upon the record presented at the Interim Hearing and the record of the case, it appears that good cause has been shown for the entry of this Interim DIP Order.  The entry of this Interim DIP Order will preserve the assets of the Debtor's estate for the benefit of creditors, and is in the best interests of the Debtor and his creditors.  The terms of the proposed financing appear fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

1.    **Disposition**.  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference.  Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby reserved to the Final Hearing, without prejudice to any party-in-interest's rights to raise further objections.  This Interim DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.  The term of this Interim DIP Order and the DIP Loan Documents authorized hereunder shall expire, and the DIP Loan made pursuant to the DIP Loan Agreement shall mature and become due and payable in accordance with the terms of the DIP Loan Agreement.

2.     **Good Cause.**  The ability of the Debtor to obtain financing is vital to the estate of the Debtor and his creditors, so that the Debtor can maximize the value of his estate and confirm a plan of reorganization.  The Debtor's estate will be irreparably harmed if this Interim DIP Order is not entered.  Good cause has, therefore, been shown for the relief sought in the DIP Financing Motion.

3.     **Authorization of Borrowing.**    The Debtor's execution of the DIP Loan Documents is hereby authorized, ratified and affirmed.  Upon entry of this Interim DIP Order, the Debtor is immediately authorized to (a) execute the DIP Loan Documents; (b) obtain the DIP Loans pursuant to the DIP Loan Documents; and (c) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof.  The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the DIP Loans and may rely upon the Debtor's representations that the use thereof is in accordance with the requirements of this Interim DIP Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).  The Interim DIP Loan shall be due and payable, and shall be paid, by the Debtor in accordance with the requirements of this Interim DIP Order and the DIP Loan Documents.  The Debtor is hereby authorized and directed to pay the foregoing, in accordance with the terms of the DIP Loan Documents and this Interim DIP Order, without the necessity of the Debtor or the DIP Lender filing any further application with the Court for approval or payment thereof.

4.     **Authority to Execute and Deliver Necessary Documents.**  The DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms with respect to the Interim DIP Loan.  In furtherance of the provisions of paragraph 3 of this Interim DIP Order, the Debtor is authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents to the

extent required by the DIP Loan Documents, in each case as may be necessary or, in the opinion of the DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, or as otherwise required or contemplated by the DIP Loan Documents.

5.     **Amendments and Modifications.**   Upon entry of this Interim DIP Order, the Debtor and the DIP Lender shall not implement any amendments to or modifications of any of the DIP Loan Documents (in accordance with the terms of the applicable DIP Loan Documents) absent further Order of the Court.

6.     **Permitted Uses of Loan Proceeds and Cash Collateral.**

(a)     On Friday of each calendar week after the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm retained by the Debtor, the Committee and any examiner then appointed shall deliver to the Debtor, the DIP Lender and the Committee a report of fee and/or cost accruals from the preceding week (the "Accrual Report"). The first Accrual Report from each party shall include a report of all unpaid post-Petition Date fees and/or cost accruals.

(b)     The proceeds of each DIP Loan shall be remitted to the Debtor Account, as defined in the DIP Loan Agreement. In no event shall the Debtor maintain any cash or other funds in any deposit account or securities or investment account other than the Debtor Account. The Debtor may disburse amounts from the Debtor Account (other than amounts constituting proceeds of the Estate Contribution Loan) solely to the extent necessary to pay or pay into the the Authorized Disbursements authorized in paragraph 7(a) of this Interim DIP Order and the DIP Loan Documents.

(c)     The Debtor shall provide each monthly bank statement of the Debtor Account to the DIP Lender, the Committee and the United States Trustee. The Debtor's Disbursement

Report shall include a copy of the bank statements of the Debtor Account and Disbursement Account for the applicable reporting period.

(e)        No proceeds of any DIP Loan made pursuant to this Order may be used to pay any claims for services rendered or fees incurred by any party or professional in furtherance of any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (i) invalidating, setting aside, avoiding or subordinating, in whole or in part, this Order or the DIP Loan approved by this Order; or (ii) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the DIP Lender of any of its rights and remedies under this Order and/or the DIP Loan Documents; (iii) for money damages or equitable relief from DIP Lender; (iv) objecting to DIP Lender's claim or claims arising in connection with the DIP Loans in this bankruptcy case. The DIP Lender shall retain its rights as a party in interest to object to any claims of any of the Carve Out Professionals.

(f)        No proceeds of the Interim DIP Loan or any other DIP Loan shall be used to pay or reimburse the DIP Lender for any costs, expenses or indemnification in connection with the DIP Facility.

7.        **Fees and Expenses of Professional Persons.**

(a)        Except as otherwise set forth herein, the Debtor is authorized to use proceeds of the DIP Loan solely for purposes authorized by this Interim DIP Order and by the DIP Loan Agreement, or an order of this Court, including to pay such professional compensation and expense reimbursements, administrative priority claims, court fees, and United States Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Court, as

applicable (together, the "Authorized Disbursements"). Notwithstanding any other provision of this Interim DIP Order, the proceeds of the Estate Contribution Loan shall not be used to pay any Authorized Disbursements or any other fee or expense of the Debtor or the Estate absent further order of this Court.

(b)     The Debtor shall be authorized to make Authorized Disbursements of the proceeds of the Interim DIP Loan prior to entry of the Final DIP Order. Notwithstanding anything to the contrary in this or any other order or the DIP Loan Documents, the Authorized Disbursements shall not be subject to the control of the DIP Lender.

(c)     The DIP Lender shall not have any duty to ensure that the Debtor discharges any of his obligations under subparagraphs (a) and (b) of this paragraph. Notwithstanding anything to the contrary contained in this Interim DIP Order, the rights of the DIP Lender shall be subject and subordinate to the claims of all other creditors of the Debtor existing as of the Petition Date. Without limiting the foregoing, neither the Debtor nor any of his prepetition creditors shall have any claim to or interest in the amounts on deposit in the Debtor Account; provided, however, that to the extent any Pending Disbursements become disallowed or ordered to be disgorged by final order of the Court, or remain in the Debtor Account following full payment of all allowed Professional Fees and Expenses (the "Excess DIP Funds"), such Excess DIP Funds shall be paid over and delivered as specified in the DIP Loan Documents and/or orders of the Court as applicable.

(d)     Nothing in this Interim DIP Order shall preclude the DIP Lender from asserting any objections to professional fees and expenses sought to be paid under the provisions of sections 330, 331 and 503 of the Bankruptcy Code.

8.    **Termination Events; Remedies.**    (a) Upon or after a written notice to the Debtor, the Committee and the U.S. Trustee of the occurrence of a "Termination Event" under (and as defined in) the DIP Loan Agreement, and upon or after the filing of notice of the occurrence of such Termination Event with the Bankruptcy Court: (i) the DIP Lender shall be fully authorized, in its sole discretion, to charge interest at the default rate set forth in the DIP Loan Agreement, provided, the DIP Lender shall provide notice to the U.S. Trustee of its election to charge interest at the default rate; and (ii) the DIP Lender's commitment to make any subsequent DIP Loans pursuant to the DIP Loan Agreement shall be terminated, excluding, for the avoidance of doubt, the DIP Lender's obligation to fund any Escrow Funding Loan or Estate Contribution Loan required to be made pursuant to the terms of the DIP Loan Documents.

(b)    The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Interim DIP Order shall be in addition to and cumulative with those contained in the DIP Loan Documents, provided, however, nothing in this Interim DIP Order shall be construed to grant any security interest or priority repayment rights to DIP Lender in respect of any DIP Loan Obligations.

10.    **Subsequent Reversal or Modification.**    Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated or stayed on appeal, that action will not affect:

(a)    the validity of any obligation, indebtedness, or liability granted or incurred by the Debtor to the DIP Lender prior to the effective date of such stay, modification, or vacation; or

(b)    the validity or enforceability of any action taken pursuant to this Interim DIP Order.

Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtor to the DIP Lender under the DIP Loan Documents prior to the effective date of such action shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, benefits, and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability.  All amounts advanced under the DIP Loan Documents are advanced in reliance upon this Interim DIP Order, and, therefore, the indebtedness resulting from such advance prior to the effective date of any stay, modification, or vacatur of this Interim DIP Order cannot be deprived of the benefit under this Interim DIP Order or the DIP Loan Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case, of the Debtor.

11.     **No Deemed Control.**  By consenting to this Interim DIP Order and extending the DIP Loan, the DIP Lender shall not be deemed to be in control of the Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute).

12.     **Successors and Assigns.**  The provisions of this Interim DIP Order shall be binding upon and inure to the benefit of all parties-in-interest in the Chapter 11 case, including, without limitation, the DIP Lender, the Debtor and his respective successors and assigns, and shall inure to the benefit of the DIP Lender, the Debtor and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy

Code or otherwise.  In no event shall the DIP Lender have any obligation to make the DIP Loan at the direction of any chapter 7 or chapter 11 trustee appointed or elected for the estate of the Debtor.

13.    **Binding Nature of Agreement.**  Each of the DIP Loan Documents to which the Debtor are and will become parties shall constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms.  The DIP Loan Documents have been or shall be properly executed and delivered to the DIP Lender by the Debtor.

14.    **Priority of Terms.**  To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Interim DIP Order shall govern and control.

15.    **No Waiver.**  This Interim DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtor, the DIP Lender, the Committee, or any other Estate representative may have to bring or be heard on any matter brought before this Court.

16.    **Adequate Notice.**   The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required.  Promptly after the entry of this Interim DIP Order, the Debtor shall mail, by first class mail, a copy of this Interim DIP Order to the Notice Parties and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Interim DIP Order.

17.    **Entry of Order.**  This Interim DIP Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim DIP Order on the Court's docket in this Chapter 11 Case.

18.    **Final Hearing.**

(a)    The Final Hearing to consider entry of the Final DIP Order and final approval of the DIP Facility is scheduled for [●], 2022, at [●] (ET) at the United States Bankruptcy Court for the District of Connecticut.

(b)    On or before two business days after entry of this Interim DIP Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim DIP Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim DIP Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final DIP Order shall file written objections with the Clerk of the Court no later than [●] at [●] (ET), which objections shall be served so that the same are received on or before such date by the Notice Parties and any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.

19.    **Retention of Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Interim DIP Order according to its terms.


Dated:

        Bridgeport, Connecticut


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

64666136 v7

**EXHIBIT B**

**REDLINE OF REVISED PROPOSED INTERIM DIP ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------------X
                                                          :
In re:                                                    :    Chapter 11
                                                          :
    Ho Wan Kwok,                      :    Case No. 22-50073 (JAM)
                                                          :
                                                          :    Date:
        Debtor. [1]  :    Time:
                                                          :
-------------------------------------------------------------------X

~~1.~~
## ~~2.~~ INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN UNSECURED, SUBORDINATED POSTPETITION FINANCING, (II) SCHEDULING FINAL HEARING, AND (III) GRANTING RELATED RELIEF

Upon the motion dated March ~~22~~21, 2022 (the "DIP Financing Motion")[2] of the above-captioned debtor-in-possession (the "Debtor") in the above-referenced chapter 11 case (the "Chapter 11 Case") seeking the entry of an Interim DIP Order and Final DIP Order authorizing the Debtor to obtain postpetition financing from Golden Spring (New York) Ltd. ("GSNY" or "DIP Lender"), scheduling and approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rules 2002-1, 4001-3, 9006-1, and 9013-1 of the Local Bankruptcy Rules for the District of Connecticut (the "Local Rules"), and granting related relief.

This Court having reviewed the DIP Financing Motion, the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions*, and all matters brought to the Court's attention at the interim hearing, which was held on ~~[●]~~April 13, 2022 (the "Interim

---

[1]    Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2]    Capitalized terms used in this Interim DIP Order, unless defined herein, shall have the meanings given such terms in the DIP Financing Motion or the DIP Loan Agreement (as ~~hereinafter~~ defined in the DIP Financing Motion).

Hearing"); and after considering all of the pleadings filed with this Court; and after consideration of the evidence presented on the record at the Interim Hearing; and the Court having found that due and sufficient notice of the DIP Financing Motion and the Interim Hearing was provided by the Debtor in accordance with Bankruptcy Rules 2002 and 4001(b)(1) and Local Rule 4001-2 and 9013-2; and it appearing that the relief requested in the DIP Financing Motion, to the extent granted by this Interim DIP Order, is fair and reasonable and in the best interests of the Debtor, his estate, creditors, and all parties-in-interest, and is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

**THE COURT HEREBY FINDS AND DETERMINES:**

A.    <u>Petition Date</u>.  On February 15, 2022 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief with this Court commencing the Chapter 11 Case.  The Debtor is a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    <u>Other Estate Parties</u>.  No trustee or examiner has been appointed in this Chapter 11 Case. On March 21, 2022, the Office of the United States Trustee for the District of Connecticut (the "<u>U.S. Trustee</u>") appointed the official committee of unsecured creditors (the "Committee" pursuant to section 1102 of the Bankruptcy Code.

C.    <u>Jurisdiction; Core Proceeding; Venue</u>.  The Court has subject matter jurisdiction over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this Chapter 11 Case and the DIP Financing Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Notice</u>.  The Interim Hearing was held <u>on April 13, 2022</u> pursuant to Bankruptcy Rule 4001 and Local Rule 9013-2, and the notice provided by the Debtor of the Interim Hearing and the relief requested in the DIP Financing Motion, was, under the circumstances, due and sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of this Court, and no other notice of the relief sought at the Interim Hearing was necessary or required.

E.    <u>Immediate Financing Need</u>.  An ongoing need exists for the Debtor to obtain financing of the type sought herein, to maximize the value of the estate by liquidating certain litigation claims and seeking confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code.  The Debtor is unable to obtain financing in the form of a credit facility with terms preferable to those extended by the DIP Lender.  Within the timeframe required by the need to avoid irreparable harm, the Debtor can best obtain financing in the amounts required upon the terms extended by the DIP Lender.

F.    <u>DIP Facility</u>.  The Debtor has requested that the DIP Lender establish a facility in favor of the Debtor (the "<u>DIP Facility</u>") pursuant to which the Debtor may obtain ~~a loan (the~~<u>one or more loans (each, a</u> "<u>DIP Loan</u><u>" and collectively, the "DIP Loans</u>") through multiple advances in the aggregate principal amount of US$~~8,000,000; the~~<u>9,000,000, subject to the terms and limitations set forth herein and in the DIP Loan Agreement. The initial</u> DIP Loan shall be made~~,~~ ~~upon~~ <u>no later than two (2) business days following</u> entry of this Interim DIP ~~Loan~~<u>Order</u>, in an initial <u>principal</u> amount ~~of US~~<u>equal to </u>$2,000,000 (the "<u>Interim DIP Loan</u>") and, ~~upon~~ <u>thereafter, DIP Loans shall be made in subsequent advances, as may be required from time to time in accordance with</u> <span style="color:green">the terms of the DIP Loan Documents; provided that (a) the aggregate principal amount of all Subsequent DIP Loans  outstanding, after giving effect to any Subsequent DIP</span>

Loan and Estate Contribution Loan, shall not exceed $3,000,000 prior to the entry of the Final DIP Order, ~~up to three subsequent advances each in the amount of US$2,000,000 upon request (each, a "Subsequent DIP Loan"); provided that~~and (b) the proceeds of ~~such~~the DIP Facility (other than the proceeds of the Estate Contribution Loan (as defined in the DIP Loan Agreement)) shall be used by the Debtor in accordance with this Interim DIP Order and the DIP Loan Documents (as hereinafter defined), solely for the purposes and amounts set forth ~~in the Budget (as hereinafter defined)~~herein.

G.     Estate Contribution Loan.  The Estate Contribution Loan, as defined in the DIP Loan Agreement shall be made no later than two (2) business days following entry of this Interim DIP Order, in a principal amount equal to $1,000,000 (the "Estate Contribution Loan").

H.     ~~G.~~ Good Cause.  Based upon the record presented at the Interim Hearing and the record of the case, it appears that good cause has been shown for the entry of this Interim DIP Order.  The entry of this Interim DIP Order will preserve the assets of the Debtor's estate for the benefit of creditors, and is in the best interests of the Debtor and his creditors.  The terms of the proposed financing appear fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

~~H. Good Faith.  Based upon the record presented at the Interim Hearing, the DIP Loan Documents have been negotiated in good faith between the Debtor and DIP Lender. Therefore, all extensions of credit to the Debtor pursuant to the DIP Loan Documents shall be deemed to have been made by the DIP Lender in good faith within the meaning of section 364(e) of the Bankruptcy Code.~~

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

1.      **Disposition.**  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference.  Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby reserved to the Final Hearing, without prejudice to any party-in-interest's rights to raise further objections.  This Interim DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.  The term of this Interim DIP Order and the DIP Loan Documents authorized hereunder shall expire, and the DIP Loan made pursuant to the DIP Loan Agreement shall mature and become due and payable in accordance with the terms of the DIP Loan Agreement.

2.      **Good Cause.**  The ability of the Debtor to obtain financing is vital to the estate of the Debtor and his creditors, so that the Debtor can maximize the value of his estate and confirm a plan of reorganization.  The Debtor's estate will be irreparably harmed if this Interim DIP Order is not entered.  Good cause has, therefore, been shown for the relief sought in the DIP Financing Motion.

3.      ~~**Good Faith.**  Based upon the pleadings and the record presented at the Interim Hearing, the DIP Loan Documents and this Interim DIP Order have been negotiated in good faith between the Debtor and the DIP Lender.  The terms of the DIP Loan Documents described in this Interim DIP Order, including, without limitation, the interest rates and fees payable pursuant to the DIP Loan Documents, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with the Debtor's fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Any DIP Loan and/or other financial accommodations made to the Debtor by the DIP Lender pursuant to this Interim DIP Order and the DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good~~

~~faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be~~

~~entitled to all protections afforded thereunder.~~

~~4~~3.    **Authorization of Borrowing.**    The Debtor's execution of the DIP Loan Documents is hereby authorized, ratified and affirmed.  Upon entry of this Interim DIP Order, the Debtor is immediately authorized to (a) execute the DIP Loan Documents; (b) obtain the ~~Interim~~ DIP ~~Loan~~Loans pursuant to the DIP Loan Documents; and (c) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof.  The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the ~~Interim~~ DIP ~~Loan~~Loans and may rely upon the Debtor's representations that the use thereof is in accordance with the requirements of this Interim DIP Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).  The Interim DIP Loan shall be due and payable, and shall be paid, by the Debtor in accordance with the requirements of ~~the~~this Interim DIP Order and the DIP Loan Documents.  The Debtor is hereby authorized and directed to pay the foregoing, in accordance with the terms of the DIP Loan Documents and this Interim DIP Order, without the necessity of the Debtor or the DIP Lender filing any further application with the Court for approval or payment thereof.

~~5~~4.    **Authority to Execute and Deliver Necessary Documents.**  The DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms with respect to the Interim DIP Loan.  In furtherance of the provisions of paragraph ~~4~~3 of this Interim DIP Order, the Debtor is authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents to the extent required by the DIP Loan Documents, in each case as may be necessary or, in the opinion

of the DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, or as otherwise required or contemplated by the DIP Loan Documents.

65. **Amendments and Modifications.** Upon entry of thethis Interim DIP Order, the Debtor and the DIP Lender shall not implement any amendments to andor modifications of any of the DIP Loan Documents (in accordance with the terms of the applicable DIP Loan Documents), until such time that the DIP Financing Motion is considered at the Final Hearing and entry of the Final DIP Orderabsent further Order of the Court.

76. ~~**Budget;**~~ **Permitted Uses of Loan Proceeds and Cash Collateral.**

(a) ~~On the first day of each calendar month subsequent to~~ the entry of this Interim DIP Order, the Debtor shall deliver to the DIP Lender and the official committee of unsecured creditors an updated budget and a report in form and substance reasonably acceptable to the DIP Lender, reporting all disbursements Debtor made for the preceding month.

(ba) On Friday of each calendar week subsequent toafter the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm retained by the Debtor, the official Committee of unsecured creditors,and any examiner then appointed, and any other party seeking payment from the Debtor's estate on an administrative priority basis shall deliver to the Debtor, the DIP Lender and the Committee a report of fee and/or cost accruals from the preceding week. (the "Accrual Report"). The first Accrual Report from each party shall include a report of all unpaid post-Petition Date fees and/or cost accruals.

(cb) ~~Except as otherwise set forth in this Interim DIP Order, if applicable, the Interim~~The proceeds of each DIP Loan proceeds shall be remitted to the "Debtor Account" maintained by Verdolino & Lowey, PC ("V&L"), as defined in the DIP Loan Agreement. In no

event shall the Debtor maintain any cash or other funds in any deposit account or securities or investment account other than the Debtor Account.  The Debtor may disburse amounts from the Debtor Account ~~only at the direction of Craig Jalbert of V&L and~~(other than amounts constituting proceeds of the Estate Contribution Loan)  solely to the extent necessary to pay ~~the Permitted Payments~~or pay into the the Authorized Disbursements authorized in paragraph ~~8~~7(a) of this Interim DIP Order and the DIP Loan Documents.

(c)      The Debtor shall provide each monthly bank statement of the Debtor Account to the DIP Lender, the Committee and the United States Trustee.  The Debtor's Disbursement Report shall include a copy of the bank statements of the Debtor Account and Disbursement Account for the applicable reporting period.

(e)      No proceeds of any DIP Loan made pursuant to this Order may be used to pay any claims for services rendered or fees incurred by any party or professional in furtherance of any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (i) invalidating, setting aside, avoiding or subordinating, in whole or in part, this Order or the DIP Loan approved by this Order; or (ii) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the DIP Lender of any of its rights and remedies under this Order and/or the DIP Loan Documents; (iii) for money damages or equitable relief from DIP Lender; (iv) objecting to DIP Lender's claim or claims arising in connection with the DIP Loans in this bankruptcy case. The DIP Lender shall retain its rights as a party in interest to object to any claims of any of the Carve Out Professionals.

(~~d~~f)    No proceeds of the Interim DIP Loan or any ~~Subsequent~~other DIP Loan shall be used to pay or reimburse the DIP Lender for any costs, expenses or indemnification in connection with the DIP Facility.

~~8~~7.    **Fees and Expenses of Professional Persons.**

(a)    Except as otherwise set forth herein, the Debtor is authorized to use proceeds of the DIP Loan solely for purposes authorized by this Interim DIP Order and by the DIP Loan Agreement, or an order of this Court, including to pay such professional compensation and expense reimbursements, administrative priority claims, court fees, and United States Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Court, as applicable (together, the "Authorized Disbursements")~~; provided, however, that~~. Notwithstanding any other provision of this Interim DIP Order, the proceeds of the ~~Interim DIP Loan shall only be used to pay the administrative expenses of ordinary course professionals of the Debtor (which shall exclude, for the avoidance of doubt, Brown Rudnick LLP, V&L, and Stretto, Inc.) and, until entry of the Final DIP Order, may not be used to pay the expenses of professionals of the Debtor other than ordinary course professionals (collectively, the "Permitted Payments")~~Estate Contribution Loan shall not be used to pay any Authorized Disbursements or any other fee or expense of the Debtor or the Estate absent further order of this Court.

(b)    The Debtor ~~is directed, for so long as no Carve-Out Event (as defined below) has occurred and is continuing, to deposit, when provided by the Budget, into an escrow account (the "Disbursement Escrow") maintained by V&L on behalf of the Debtor, the amounts of any Permitted Payments not yet paid (the "Pending Disbursements"). Such amounts shall remain in escrow pending authorization and payment~~shall be authorized to make Authorized Disbursements of the proceeds of the Interim DIP Loan prior to entry of the Final DIP Order.

Notwithstanding anything to the contrary in this or any other order or the DIP Loan Documents, the ~~Permitted Payments~~Authorized Disbursements shall not be subject to the control of the DIP Lender ~~unless and to the extent of any residual cash in the Disbursement Escrow after either disapproval or approval and satisfaction of all Authorized Disbursements and Pending Disbursements.  So long as the DIP Lender has not delivered a notice of Carve-Out Event, the Debtor shall be authorized to fund the Disbursement Escrow in accordance with the DIP Loan Documents.  Except as otherwise set forth in subparagraph (e) of this paragraph, the Debtor shall be authorized to remit payment from Disbursement Escrow from time to time (whether or not a notice of Carve-Out Event has been delivered) pursuant to procedures authorized by, or orders of, the Court._

(c)    The DIP Lender shall not have any duty to ensure that the Debtor discharges any of his obligations under subparagraphs (a) and (b) of this paragraph.  Notwithstanding anything to the contrary contained in this Interim DIP Order, the rights of the DIP Lender shall be subject and subordinate to the ~~rights of any party entitled to payment from~~claims of all other creditors of the Debtor ~~held in the Disbursement Escrow.  Accordingly~~existing as of the Petition Date.  Without limiting the foregoing, neither the Debtor nor any of his prepetition creditors shall have any claim to or interest in the amounts on deposit in the ~~Disbursement Escrow~~Debtor Account; provided, however, that to the extent any Pending Disbursements ~~or other amounts that are escrowed subsequently~~ become disallowed or ordered to be disgorged by final order of the Court, or remain in ~~escrow~~the Debtor Account following full payment of all allowed Professional Fees and Expenses (the "Excess ~~Escrow~~DIP Funds"), such Excess ~~Escrow~~DIP Funds shall be paid over and delivered ~~to the Debtor and applied~~ as specified in the DIP Loan Documents and/or orders of the Court as applicable.

(d)      Nothing in this Interim DIP Order shall preclude the DIP Lender from asserting any objections to professional fees and expenses sought to be paid under the provisions of sections 330, 331 and 503 of the Bankruptcy Code.

(e)      ~~Notwithstanding anything to the contrary in this Interim DIP Order, if a Carve-Out Event occurs, the Debtor shall not pay any further amounts into the Disbursement Escrow until such Carve-Out Event has been cured or waived in writing by the DIP Agent.~~

~~9~~8.    **Termination** Events ~~of Default~~**; Remedies.**    (a) Upon or after a written notice to the Debtor ~~of a violation of any provision of this Interim DIP Order~~ ~~that in the DIP Lender's reasonable discretion has an adverse effect on the DIP Lender or~~, the Committee and the U.S. Trustee of the occurrence of ~~an~~a "Termination Event ~~of Default~~" under (and as defined in) the DIP Loan Agreement, and upon or after the filing of notice of the occurrence of such Termination Event with the Bankruptcy Court: (i) the DIP Lender shall be fully authorized, in its sole discretion, to ~~without providing any prior notice thereof, accelerate the DIP Loan Obligations under the DIP Loan Documents,~~ charge interest at the default rate set forth in the DIP Loan Agreement, ~~and subject to the following sentences, decline to issue any Subsequent DIP Loan requested by the Debtor; and (ii) following the expiration of three business days from the date of such written notice to the Debtor, the Debtor's right to use any remaining amounts received on account of the DIP Loan Obligations (the "Proceeds") pursuant to the Budget shall expire and the Debtor shall no longer, pursuant to this Interim DIP Order, the DIP Loan Documents, or otherwise, be authorized to use the Proceeds. Thereafter, the DIP Lender may seek a finding by this Court upon notice and a hearing that a violation of the Interim DIP Order or an Event of Default has occurred. Upon such finding, the DIP Lender may demand and shall be entitled to immediate remittance of any Proceeds held by the Debtor less US$500,000 and~~

excluding all amounts in the Disbursement Escrow Account (the "Carve-Out"), and DIP Lender may otherwise take any appropriate action and exercise all applicable remedies under the DIP Loan Documents and applicable law that may be necessary or deemed appropriate by the DIP Lender to collect the DIP Loan Obligations, to proceed against or realize the Proceeds as if this Chapter 11 case or any superseding Chapter 7 case were not pending and otherwise to enforce the DIP Loan Documents or this Interim DIP Order.   provided, the DIP Lender shall provide notice to the U.S. Trustee of its election to charge interest at the default rate; and (ii) the DIP Lender's commitment to make any subsequent DIP Loans pursuant to the DIP Loan Agreement shall be terminated, excluding, for the avoidance of doubt, the DIP Lender's obligation to fund any Escrow Funding Loan or Estate Contribution Loan required to be made pursuant to the terms of the DIP Loan Documents.

(b)     The rights, remedies, powers and privileges conferred upon the DIP Lender pursuant to this Interim DIP Order shall be in addition to and cumulative with those contained in the DIP Loan Documents, provided, however, that with the exception of the preceding sub-paragraphs authorizing remittance of Proceeds held by the Debtor upon a violation of this Interim DIP Order or an Event of Default, nothing in this Interim DIP Order shall be construed to grant any security interest or priority repayment rights to DIP Lender in respect of any DIP Loan Obligations.

10.     **Subsequent Reversal or Modification.**  Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated or stayed on appeal, that action will not affect:

(a)     the validity of any obligation, indebtedness, or liability granted or incurred by the Debtor to the DIP Lender prior to the effective date of such stay, modification, or vacation; or

(b)      the validity or enforceability of any action taken pursuant to this Interim DIP Order.

Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtor to the DIP Lender under the DIP Loan Documents prior to the effective date of such action shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, benefits, and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability.  All amounts advanced under the DIP Loan Documents are advanced in reliance upon this Interim DIP Order, and, therefore, the indebtedness resulting from such advance prior to the effective date of any stay, modification, or vacatur of this Interim DIP Order cannot be deprived of the benefit under this Interim DIP Order or the DIP Loan Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case, of the Debtor.

11.      **No Deemed Control.**  By consenting to this Interim DIP Order and extending the DIP Loan, the DIP Lender shall not be deemed to be in control of the Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute).

12.     **Successors and Assigns.**   The provisions of this Interim DIP Order shall be binding upon and inure to the benefit of all parties-in-interest in the Chapter 11 case, including, without limitation, the DIP Lender, the Debtor and his respective successors and assigns, and shall inure to the benefit of the DIP Lender, the Debtor and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy Code or otherwise.  In no event shall the DIP Lender have any obligation to make the DIP Loan at the direction of any chapter 7 or chapter 11 trustee appointed or elected for the estate of the Debtor.

13.     **Binding Nature of Agreement.**  Each of the DIP Loan Documents to which the Debtor are and will become parties shall constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms.  The DIP Loan Documents have been or shall be properly executed and delivered to the DIP Lender by the Debtor.

14.     **Priority of Terms; Budget.**

.     (a)     To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Interim DIP Order shall govern and control.

(b)     For the avoidance of doubt, notwithstanding anything to the contrary in this Interim DIP Order, any of the DIP Loan Documents, or any other order entered by this Court or any other court of competent jurisdiction at any time and from time to time, the Debtor shall not make any disbursements other than those set forth in the Budget.  Without limiting the

~~foregoing, notwithstanding any relief granted in any other order entered by the Court, but subject to the terms and conditions of this Interim DIP Order, the Debtor shall not make any expenditures authorized by such orders unless, and to the extent that, such expenditures are encompassed by and expressly included in this Interim DIP Order, the DIP Loan Documents, and the Budget.~~

15.     **No Waiver.**   This Interim DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtor ~~or~~, the DIP Lender, the Committee, or any other Estate representative may have to bring or be heard on any matter brought before this Court.

16.     **Adequate Notice.**   The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required.  Promptly after the entry of this Interim DIP Order, the Debtor shall mail, by first class mail, a copy of this Interim DIP Order to the Notice Parties and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Interim DIP Order.

17.     **Entry of Order.**   This Interim DIP ~~Order~~ Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim DIP Order on the Court's docket in this Chapter 11 Case.

18.     **Final Hearing.**

(a)    The Final Hearing to consider entry of the Final DIP Order and final approval of the DIP Facility is scheduled for [●], 2022, at [●] (ET) at the United States Bankruptcy Court for the District of Connecticut.

(b)    On or before two business days after entry of this Interim DIP Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim DIP Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim DIP Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final DIP Order shall file written objections with the Clerk of the Court no later than [●] at [●] (ET), which objections shall be served so that the same are received on or before such date by the Notice Parties and any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.

19.    **Retention of Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Interim DIP Order according to its terms.

Dated:

Bridgeport, Connecticut

_____
UNITED STATES BANKRUPTCY JUDGE

64666136 v7

| Summary report: Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 4/10/2022 2:24:19 PM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Interim DIP order.docx | |
| **Modified DMS:** iw://WORKSITE/WorkSiteUS/64666136/7 | |
| **Changes:** | |
| Add | 86 |
| Delete | 84 |
| Move From | 9 |
| Move To | 9 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 188 |

# **EXHIBIT C**

## **REVISED DIP LOAN AGREEMENT**

# DEBTOR-IN-POSSESSION
# CREDIT AGREEMENT

**DEBTOR-IN-POSSESSION CREDIT AGREEMENT,** dated as of April [13], 2022 (as amended, restated, supplemented or otherwise modified from time to time, this "**Agreement**"), by and among **HO WAN KWOK (a/k/a Miles Kwok, a/k/a Miles Guo, a/k/a Wengui Guo)**, an individual, as borrower (the "**Debtor**") and **GOLDEN SPRING (NEW YORK) LTD.**, as lender hereunder ("**Lender**").

## BACKGROUND

A.      On February 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary case under Chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "**Bankruptcy Court**"), Case No. 22-50073 (JAM) (the "**Chapter 11 Case**"), and the Debtor has retained possession of his assets as debtor-in-possession.

B.      In connection with the Chapter 11 Case, the Debtor has requested that the Lender provide him with a debtor-in-possession term loan facility in an aggregate principal amount not to exceed $9,000,000.00 (the "**DIP Facility**").  All of the Debtor's obligations under the DIP Facility are to be unsecured and shall be subordinated in right to payment to the claims of all other creditors of the Debtor existing as of the Petition Date. The Lender is willing to extend such credit under the DIP Facility to the Debtor on the terms and subject to the conditions set forth herein.

C.      This Agreement and the rights and obligations of the Lender and Debtor hereunder shall be subject to approval of the Bankruptcy Court in the Chapter 11 Case pursuant to the Financing Orders (as defined herein).

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**Section 1.      DEFINITIONS**

1.01.      As used in this Agreement, the following terms shall have the meanings set forth below:

**Accrual Report** has the meaning assigned thereto in Section 5.01(b).

**Authorized Disbursements** shall have the meaning given to such term in Section 2.04.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified, or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

**Bankruptcy Court** has the meaning assigned thereto in the recitals to this Agreement.

**Business Day** shall mean any day that is not Saturday, Sunday or a Legal Holiday as such term is defined in Rule 9006(a)(6) of the Federal Rules of Bankruptcy Procedure.

**Closing Date** shall mean the date that this Agreement has been duly executed by the parties hereto and delivered to each other and the conditions of Section 3.01 have been satisfied or waived.

**Debtor** shall have the meaning set forth in the preamble of this Agreement.

**Debtor Account** shall mean the segregated deposit account established by the Debtor into which the proceeds of the DIP Loans shall be deposited.

**Default Rate** shall have the meaning assigned to such term in Section 2.03.

**DIP Commitment** shall mean the commitment of the Lender to make DIP Loans (other than the Interim DIP Commitment) pursuant to Section 2.01 in an aggregate principal amount not to exceed $8,000,000.

**DIP Facility** shall have the meaning set forth in the recitals to this Agreement.

**DIP Loan Documents** shall mean this Agreement, the Financing Orders, and each other document, instrument and certificate executed from time to time in connection with this Agreement, as may be renewed, amended, restated, extended, increased or supplemented from time to time.

**DIP Loan Obligations** shall mean each DIP Loan and all other advances and extensions of credit made or to be made by the Lender to the Debtor, or to others for the Debtor's account, pursuant to this Agreement from time to time, including, without limitation, all PIK Interest and all Out-of-Pocket-Expenses (including all amounts capitalized pursuant to Section 7.01), whether such obligation is absolute or contingent, joint or several, matured or unmatured, direct or indirect and whether the Debtor is liable to the Lender for such indebtedness as principal, surety, endorser, guarantor or otherwise.

**DIP Loans** shall have the meaning given to such term in Section 2.01(d).

**Disbursement Escrow** shall have the meaning given to such term in Section 2.04.

**Escrow Funding Loan** shall have the meaning given to such term in Section 2.01(d).

**Estate Contribution Commitment** shall mean the commitment of the Lender to fund a loan for use by the Debtor's estate upon the occurrence of a Termination Event in an aggregate principal amount of $1,000,000.

**Estate Contribution Loan** shall have the meaning given to such term in Section 2.01(b).

**Final Financing Order** shall mean the final order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on a final basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Financing Orders** shall mean the Interim Financing Order and the Final Financing Order.

**Interim DIP Commitment** shall mean the commitment of the Lender to fund the Interim DIP Loan in an aggregate principal amount of $2,000,000.

**Interim DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Interim Financing Order** shall mean the interim order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on an interim basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Letter of Credit** has the meaning assigned to such term in Section 2.06.

**Maturity Date** shall mean the earliest of (i) eighteen months after the Closing Date and (ii) the effective date of any plan of reorganization of the Debtor.

**Out-of-Pocket Expenses** shall mean (a) all reasonable out-of-pocket expenses of DIP Lender (i) associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including reasonable fees, disbursements and other charges of counsel) and (ii) incurred by DIP Lender in connection with the Chapter 11 Case; and (b) all out-of-pocket expenses of DIP Lender (including the fees, disbursements and other charges of counsel in connection with the enforcement of the DIP Loan Documents).

**Person** shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**Petition Date** shall have the meaning provided for in the recitals of this Agreement.

**PIK Interest** shall have the meaning given to such term in Section 2.02.

**Professional Fees Escrow** shall mean an amount equal to all accrued but unpaid professional compensation and expense reimbursements of the Debtor's professionals, the Committee's professionals or the professionals of any examiner that have been incurred or accrued prior to the occurrence of a Termination Event *plus* $500,000.

**Replacement Letter of Credit** means a replacement letter of credit in form and substance satisfactory to Debtor in its sole and absolute discretion that is issued by a commercial bank that is a member of the New York Clearing House Association acceptable to Debtor in its sole and absolute discretion, and at a minimum having a long-term issuer credit rating from S&P Global Ratings of "A" or higher, or a comparable rating from Moody's Investors Service.

**Subsequent DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Termination Event** shall have the meaning provided for in Section 8.01 of this Agreement.

## Section 2.     DIP LOAN

2.01.   DIP Loans.

(a)     Interim DIP Loan. No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim

Financing Order, make a loan to the Debtor in an aggregate principal amount equal to the Interim DIP Commitment (the "**Interim DIP Loan**").

(b)    No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a loan to the Debtor in an aggregate principal amount equal to the Estate Contribution Commitment (the "**Estate Contribution Loan**").

(c)    Subsequent Draws. Subject to the conditions hereof, the Lender shall fund, no later than two (2) Business Days following delivery of the Accrual Reports for such week, a loan (each such loan being, a "**Subsequent DIP Loan**") in an amount equal to the excess, if any, of (x) the sum of (1) the unpaid accruals reflected in all Accrual Reports for such week, (2) all other Authorized Disbursements accrued or incurred since delivery of the last Accrual Reports and (3) $100,000 *over* (y) the funds on deposit in the Disbursement Escrow on the date of delivery of such Accrual Reports. All DIP Loan Obligations shall become immediately due and payable on the Maturity Date. Except as set forth in Section 2.06(c), amounts repaid at any time to the Lender may not be reborrowed.

(d)    Draws Following a Termination Event.   Upon the occurrence of a Termination Event, to the extent the aggregate remaining proceeds of each Subsequent DIP Loan maintained in the Debtor Account and the Disbursement Escrow, as of the date of the occurrence of such Termination Event, are insufficient to fund the Professional Fees Escrow, the Lender shall make an additional loan  (the "**Escrow Funding Loan**", together with the Interim DIP Loan,  and each Subsequent DIP Loan, the "**DIP Loans**") in an aggregate principal amount sufficient to permit the funding of the Professional Fees Escrow from the Debtor Account.

(e)    Notwithstanding anything in this Section 2.01 to the contrary, in no event shall (x) the aggregate principal amount of Subsequent DIP Loans made prior to entry of the Final Financing Order exceed $3,000,000, (y) the aggregate principal amount of the DIP Loans (other than the Interim DIP Loan) made, or required to be made, pursuant to this Section 2.01 exceed the DIP Commitment or (z) the aggregate principal amount of the Interim DIP Loan exceed the Interim DIP Commitment.  The following condition shall apply to the DIP Commitment: (x) at all times prior to the occurrence of a Termination Event there shall remain (after giving effect to any Subsequent DIP Loan) availability under the DIP Commitment an amount equal to $80,000 (the "**U.S. Trustee Sub-Limit**"), which amount shall be reserved and available solely to fund the fees of the U.S. Trustee; and (y) the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund professional fees and expenses of the Debtor's professionals shall not exceed 50% of the DIP Commitment and the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund all professional fees of the Committee or any examiner shall not exceed 50% of the DIP Commitment, in each case, after reducing the DIP Committee to reserve availability for the U.S. Trustee Sub-Limit.

2.02.    Interest Rate; Interest Payments. The outstanding principal amount of the DIP Loans shall bear interest at a per annum rate equal to five percent (5.0%) (the "**Interest Rate**").  Accrued interest shall be payable in-kind on the last day of each calendar quarter by capitalizing, compounding and adding the accrued amount thereof to the principal amount of the DIP Loans then outstanding (such interest, "**PIK Interest**") for so long as any portion of the DIP Loans remain outstanding; provided, however, that in the event of any repayment or prepayment of any portion of the DIP Loans, accrued interest on the principal amount being repaid or prepaid shall be payable cash on the date of such repayment or prepayment.

2.03.   Default Interest.  Notwithstanding the foregoing, (i) if any principal of, or interest on, the DIP Loans or any fee or other amount payable by the Debtor hereunder or under any other DIP Loan Document is not paid when due, such overdue amount shall bear interest at a rate per annum equal to two percent (2.0%) plus the Interest Rate (the "**Default Rate**"); and (ii) during the occurrence and continuance of a Termination Event , the Lender may, at its option, by notice to the Debtor, declare that the DIP Loans any other amounts outstanding hereunder shall bear interest at the Default Rate as provided in the preceding paragraphs of this Section.

2.04.   Use of Proceeds; Disbursements from Debtor Account.  The proceeds of the DIP Loans shall be deposited into the Debtor Account and, other than the proceeds of the Interim DIP Loan and the Estate Contribution Loan and subject to entry of the Final Financing Order and approval of by the Bankruptcy Court of an escrow agreement to be submitted in connection therewith, may be disbursed by the Debtor to into an escrow account (the "**Disbursement Escrow**") maintained by Brown Rudnick LLP ("**Brown Rudnick**") in an amount equal to all accrued but unpaid professional compensation and expense reimbursements, administrative priority claims, court fees, and U.S. Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Bankruptcy Court, as applicable, including all accruals set forth in the Accrual Reports (collectively, "**Authorized Disbursements**"). The proceeds of the Interim DIP Loan shall be used by the Debtor in its discretion to the extent permitted by orders of the Bankruptcy Court.  The proceeds of the DIP Loans will not be utilized to pay for ordinary living expenses of the Debtor.  Alternatively, subject to entry of a Final Financing Order so permitting, the proceeds of the DIP Loans may be deposited into  the Debtor Account or other approved account designated as the Disbursement Escrow.

2.05.   All payments due by the Debtor under this Agreement, whether for principal, interest, fees, costs, indemnities, expenses or otherwise, shall be payable in United States dollars in accordance with the wire instructions provided by Lender to Debtor, without setoff, counterclaim or other deduction of any kind.

2.06.   Standby Letter of Credit.

(a)   As additional credit support for the Lender's obligations to fund the DIP Loans (other than the Interim DIP Loan), the Lender shall, no later than ten (10) Business Days after the entry of the Interim Financing Order (as such date may be extended by the Debtor in its sole and absolute discretion) caused to be delivered to the Debtor, at the Lender's sole cost and expense, a clean, "multi-draw" irrevocable and unconditional standby letter of credit issued in favor of the Debtor with an initial face amount equal to $8,000,000 from a bank which is a member of the New York Clearing House Association and is otherwise satisfactory to the Debtor (the "**Issuer**"), which letter of credit shall (w) be for a term commencing on the Closing Date (or, if such letter of credit is not delivered on the Closing Date, commencing not later than ten (10) Business Days after entry of the Interim Financing Order) and expiring at least three hundred sixty-five (365) days after the date of issuance of such letter of credit and which shall include "evergreen" provisions under which the Issuer agrees that such letter of credit shall renew automatically on such date of expiration for consecutive additional terms of three hundred sixty-five (365) days unless the Debtor has, at least sixty (60) days prior to the then applicable expiration date, received written notice from the Issuer expressly stating that such letter of credit will not be so renewed on the date of expiry (a "**Cancellation Notice**"), (z) provide that the Debtor may draw on such letter of credit at any time, or from time to time, upon written request delivered to Issuer and without any requirement that the Debtor deliver the original letter of credit or any other documentation to effect such draws, (y) provide that such letter of credit is freely

assignable by the Debtor and (z) otherwise contain terms and conditions satisfactory to the Debtor in its sole and absolute discretion (such letter of credit, together with one or more Replacement Letters of Credit, being the "**Letter of Credit**").  The Letter of Credit shall be held by the Debtor as security for the performance by the Lender of its obligations under this Agreement and the other DIP Loan Documents.  Notwithstanding the foregoing, the requirements of this paragraph may be waived by the Debtor with the approval of the Bankruptcy Court.

(b)      Upon the failure of the Lender to fund any DIP Loan (other than the Interim DIP Loan and Estate Contribution Loan), the Debtor shall be entitled to draw upon the Letter of Credit to fund any such DIP Loan without prior notice to, or consent of, the DIP Lender, and without requiring that the Debtor first provide notice to, or make demand for such payment from, the Lender**.**

(c)      The Lender further agrees that following the Issuer's sending a Cancellation Notice, the Debtor may draw the full remaining undrawn amount of the Letter of Credit and deposit such amount in the Debtor Account, and the proceeds of such draw may be used in accordance with Section 2.04; provided, that upon receipt by the Debtor of a Replacement Letter of Credit satisfying the requirement set forth in Section 2.06(a), the Debtor shall return to the Lender any funds drawn from the Letter of Credit and remaining in the Debtor Account at the time of receipt of the Replacement Letter of Credit.  Any draw on the Letter of Credit under this Section 2.06(c) shall not constitute the making of a DIP Loan, nor shall reduce the DIP Commitment; *provided,* however, that the disbursements of any such drawn amount from the Debtor Account to the Disbursement Escrow in accordance with the Section 2.04 shall constitute the making of a DIP Loan in an amount equal to such disbursed amount.

(d)      If any Letter of Credit will expire, or if any Issuer shall have delivered a Cancellation Notice, the Lender shall replace such Letter of Credit by delivering to the Debtor a Replacement Letter of Credit at least thirty (30) days prior to the expiration date of the then effective Letter of Credit in accordance with the terms of this Section 2.06.  If any Letter of Credit Issuer's credit rating is reduced below the requisite level specified above, or if the financial condition of such Issuer changes in any other materially adverse way, or if Debtor believes such Issuer is in a condition that it may soon become insolvent or placed into receivership, then the Lender within thirty (30) days of the Debtor's written request deliver to the Debtor a Replacement Letter of Credit with an issuing bank acceptable to the Debtor and otherwise satisfying the requirements of Section 2.06(a).

(e)      The Lender hereby covenants and agrees not to oppose, contest or otherwise interfere with any attempt by the Debtor to draw on the Letter of Credit.

## Section 3.      CONDITIONS TO EFFECTIVENESS AND FUNDING

3.01.   <u>Conditions to the Funding of the Interim DIP Loan</u>.  The obligation of the Lender to make the Interim DIP Loan is subject to the satisfaction by Debtor or waiver by Lender of the following conditions precedent:

(a)      Each DIP Loan Document shall be in form and substance reasonably satisfactory to the Lender, and shall have been duly executed by the Debtor and any other necessary parties and delivered to the Lender;

(b)      The Interim Financing Order shall be in full force and effect and shall not have been stayed,

vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(c)    The Debtor Account shall have been established; and

(d)    No Termination Event shall have occurred and be continuing or result after giving effect to the making of the Interim DIP Loan.

3.02.    <u>Conditions to the Funding of each Subsequent DIP Loan</u>.  The obligation of the Lender to make each Subsequent DIP Loan is subject to the satisfaction by the Debtor or waiver by Lender of the following conditions precedent:

(a)    The Interim Financing Order or, following entry of the Final Financing Order, the Final Financing Order, shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)    No Termination Event shall have occurred and be continuing or result after giving effect to the making of such Subsequent DIP Loan;

(c)    If such Subsequent DIP Loan is made prior to entry of the Final Financing Order, the aggregate principal amount of all Subsequent DIP Loans then outstanding, after giving effect to the making of such Subsequent DIP Loan, shall not exceed $3,000,000; and

(d)    The aggregate principal amount of all DIP Loans made pursuant to Section 2.01 then outstanding shall and after giving effect to the making of such Subsequent DIP Loan shall not exceed the DIP Commitment (after giving effect to the U.S. Trustee Sub-Limit).

3.03.    <u>Conditions to the Funding of the Escrow Funding Loan</u>.  The obligation of the Lender to make the Escrow Funding Loan is subject to the satisfaction of the following conditions precedent:

(a)    The Financing Orders shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)    A Termination Event shall have occurred and be continuing;

(c)    The proceeds of each Subsequent DIP Loan remaining in the Debtor Account and the Disbursement Escrow shall be insufficient fund the Professional Fees Escrow; and

(d)    The aggregate principal amount of all DIP Loans made pursuant to Section 2.01 then outstanding and after giving effect to the making of the Escrow Funding Loan shall not exceed the DIP Commitment.

**Section 4.    REPRESENTATIONS AND WARRANTIES.**

The Debtor represents and warrants to the Lender that:

4.01.    <u>Authorization; Enforceability</u>.  Subject to any restrictions arising on account of the

7

Debtor's status as "debtor" under the Bankruptcy Code, the Debtor has all requisite legal capacity to enter into this Agreement and the other DIP Loan Documents.  Upon entry of the Financing Orders, this Agreement and each other DIP Loan Document shall constitute a legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms, subject to any restrictions arising on account of the Debtor's status as a "debtor" under the Bankruptcy Code and subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.02.    <u>Approvals; No Conflicts</u>.  Subject to entry of the Financing Orders, this Agreement and the other DIP Loan Documents do not require any consent or approval of, registration or filing with, or any other action by, any governmental authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any DIP Loan Document, except such as have been obtained or made and are in full force and effect.

## Section 5.    REPORTING.

5.01.    <u>Reporting</u>.

(a)    On the tenth (10th) day of each calendar month (or, if such day is not a Business Day, on the immediately preceding day that is a Business Day), commencing on May 10, 2022, the Debtor shall deliver to the Lender a report, setting forth all disbursements Debtor from the Debtor Account to the Disbursement Escrow made for the preceding month.

(b)    On Friday of each calendar week after the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm retained by the Debtor, the Committee and any examiner then appointed shall deliver to the Debtor, the Lender and the Committee a report of fee and/or cost accruals from the preceding week (each, an "**Accrual Report**" and, collectively, the "**Accrual Reports**").

5.02.    <u>Information</u>.  If reasonably requested by Lender, the Debtor will furnish to the Lender such financial reports and information in such detail as shall be reasonably satisfactory to the Lender.

## Section 6.    MILESTONES.

6.01.    [Reserved.]

## Section 7.    EXPENSE REIMBURSEMENT; INDEMNITY.

7.01.    The Debtor shall reimburse or pay the Lender for all Out-of-Pocket Expenses, which expenses shall be paid in-kind by capitalizing, compounding and adding the amount thereof to the principal amount of the DIP Loans.  The Debtor hereby agrees to indemnify and hold harmless the Lender, and the officers, directors, members, managers, employees, attorneys and agents of the Lender (each an "**Indemnified Party**") from, and holds each of them harmless against, (a) any and all losses, liabilities, obligations, claims, actions, damages, costs and expenses (including reasonable attorney's fees) insofar as such losses, liabilities, obligations, claims, actions, damages, costs, fees or expenses are with respect to the DIP Loans and DIP Loan Documents, except and to the extent that the same results solely and directly

from the gross negligence or willful misconduct of such Indemnified Party. The Debtor hereby agrees that this indemnity shall survive termination of this Agreement.

## Section 8.    TERMINATION EVENTS

8.01.    Notwithstanding anything hereinabove to the contrary, each of the following shall constitute a "**Termination Event**":

(a)    the Bankruptcy Court shall enter an order granting relief from the automatic stay in connection with PAX v. Kwok, Index No. 652077/2017 (N.Y. Sup.) (the "**PAX Litigation**"), and/or the United States District Court for the Southern District of New York shall deny a motion to transfer venue of the PAX Litigation;

(b)    without the consent of the DIP Lender, the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of the Chapter 11 Case or seeking conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(c)    there shall be appointed a chapter 11 trustee, or the Debtor shall file a motion or other pleading seeking such appointment; or

(d)    the Bankruptcy Court shall terminate the Debtor's exclusive right to file a plan of reorganization pursuant to section 1121(b) of the Bankruptcy Code.

8.02.    <u>Remedies</u>.

(a)    Subject to the Financing Orders, upon the occurrence and during the continuance of a Termination Event, the Lender's commitment to fund any DIP Loans pursuant to Section 2.01(c) shall terminate and the Lender shall have no obligation to make any additional DIP Loans (other than the Escrow Funding Loan required to be made pursuant to Section 2.01(d)).

(b)    In the event the Chapter 11 Case is dismissed, absent contrary direction contained in an order of the Bankruptcy Court, the Debtor shall return to the DIP Lender any proceeds of the DIP Loans remaining in the Debtor Account.

## Section 9.    MISCELLANEOUS

9.01.    This Agreement and the other DIP Loan Documents constitute the entire agreement between the Debtor and the Lender with respect to the matters contained herein and therein; supersede any prior agreements; can be waived or changed only by a writing signed by each party hereto or thereto, and shall bind and benefit each party hereto or thereto and their respective successors and assigns, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

9.02.    In no event shall the Debtor, upon demand by the Lender for payment of any DIP Loan Obligations, by acceleration of the maturity thereof or otherwise, be obligated to pay interest and fees in excess of the amount permitted by law and the Lender shall never be entitled to receive, charge or apply, as interest on any DIP Loan Obligations, any amount in excess of the maximum amount of interest

permissible under applicable law. If the Lender ever receives, collects or applies any such excess, it shall be deemed a partial repayment of principal and treated as such; and if principal is paid in full, any remaining excess shall be refunded to the Debtor. This paragraph shall control every other provision hereof and each other DIP Loan Document.

9.03.    If any provision hereof or of any other agreement made in connection herewith is held to be illegal or unenforceable, such provision shall be fully severable, and the remaining provisions of the applicable agreement shall remain in full force and effect and shall not be affected by such provision's severance.

9.04.    <u>GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS</u>.

(a)    THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CONNECTICUT AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, ANY CONNECTICUT STATE COURT SITTING IN HARTFORD COUNTY AND THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN OR IN ANY OTHER DIP LOAN DOCUMENT WILL PREVENT ANY PARTY FROM BRINGING ANY ACTION TO ENFORCE ANY AWARD OR JUDGMENT OR EXERCISE ANY RIGHT UNDER THE DIP LOAN DOCUMENTS IN ANY OTHER FORUM IN WHICH JURISDICTION CAN BE ESTABLISHED. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS.

9.05.    <u>Notices</u>. Except as otherwise herein provided, any notice or other communication required hereunder shall be in writing (provided that, any electronic communications including electronic mail shall constitute a notice or communication in writing), and shall be deemed to have been validly served, given or delivered when (i) hand delivered, (i) in the case of any electronic communications, the day sent, (iii) one (1) Business Day after deposit with a nationally recognized overnight delivery service, or (iv) three Business Days after deposit in the United States mails, with proper first class postage prepaid, return receipt requested, and addressed to the party to be notified or to such other address as any party hereto may designate for itself by like notice, as follows:

(a)    if to the Lender, at:

Golden Spring (New York) Ltd.
162 E 64th St.
New York, NY 10065

10

Attention:
Email: admin@gsnyus.com

With a copy to:

Email: arethusaf@protonmail.com

- and -

Cohn Birnbaum & Shea, P.C.
100 Pearl Street, Hartford, CT 06103
Attention: Scott D. Rosen
Email srosen@cbshealaw.com


(b)      if to the Debtor, to

373 Taconic Road
Greenwich, CT 06831

With a copy to:

Brown Rudnick LLP
Seven Times Square
New York, NY 10036
Attention: William R. Baldiga
Email : wbaldiga@brownrudnick.com
Email : Attention: Bennett S. Silverberg
Email bsilverberg@brownrudnick.com


9.06.    In the event of any inconsistency between the terms of any Financing Order, on the one hand, and this Agreement and the other DIP Loan Documents, on the other hand, the terms of such Financing Order shall control.


[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective, executed, accepted and delivered as of the date first set forth above by their proper and duly authorized officers as of the date set forth above.

**DEBTOR:**

_____
Ho Wan Kwok (a/k/a Miles Kwok a/k/a Miles Guo a/k/a Wengui Guo)

**LENDER:**

**GOLDEN SPRING (NEW YORK) LTD.**

By:_____
Name:_____
Title:_____

64669999 v3
64669999 v4

12

# **EXHIBIT D**

## **REDLINE OF REVISED DIP LOAN AGREEMENT**

BR DRAFT 4/9/2022

**DEBTOR-IN-POSSESSION**
**CREDIT AGREEMENT**

**DEBTOR-IN-POSSESSION CREDIT AGREEMENT,** dated as of ~~March 11~~April [13], 2022 (as amended, restated, supplemented or otherwise modified from time to time, this "**Agreement**"), by and among **HO WAN KWOK (a/k/a Miles Kwok, a/k/a Miles Guo, a/k/a Wengui Guo)**, an individual, as borrower (the "**Debtor**") and **GOLDEN SPRING (NEW YORK) LTD.**, as lender hereunder ("**Lender**").

**BACKGROUND**

A.      On February 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary case under Chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "**Bankruptcy Court**"), Case No. 22-50073 (JAM) (the "**Chapter 11 Case**"), and the Debtor has retained possession of his assets as debtor-in-possession.

B.      In connection with the Chapter 11 Case, the Debtor has requested that the Lender provide him with a debtor-in-possession term loan facility in an aggregate principal amount not to exceed $~~8,000,000.00~~9,000,000.00 (the "**DIP Facility**"). All of the Debtor's obligations under the DIP Facility are to be unsecured and shall be subordinated in right to payment to the claims of all other creditors of the Debtor existing as of the Petition Date. The Lender is willing to extend such credit under the DIP Facility to the Debtor on the terms and subject to the conditions set forth herein.

C.      This Agreement and the rights and obligations of the Lender and Debtor hereunder shall be subject to approval of the Bankruptcy Court in the Chapter 11 Case pursuant to the Financing Orders (as defined herein).

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**Section 1.      DEFINITIONS**

1.01.   As used in this Agreement, the following terms shall have the meanings set forth below:

**Accrual Report** has the meaning assigned thereto in Section 5.01(b).

**Authorized Disbursements** shall have the meaning given to such term in Section 2.04.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified, or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

**Bankruptcy Court** has the meaning assigned thereto in the recitals to this Agreement.

**Business Day** shall mean any day that is not Saturday, Sunday or a Legal Holiday as such term is defined

1

in Rule 9006(a)(6) of the Federal Rules of Bankruptcy Procedure.

**Closing Date** shall mean the date that this Agreement has been duly executed by the parties hereto and delivered to each other and the conditions of Section 3.01 have been satisfied or waived.

~~**Closing Date DIP Loan** shall have the meaning assigned to such term in Section 2.01.~~

**Debtor** shall have the meaning set forth in the preamble of this Agreement.

**Debtor Account** shall mean the segregated deposit account established ~~on~~by the ~~Debtor's behalf under which Craig Jalbert, of Verdolino & Lowey, PC ("Verdolino"), shall be the sole authorized signatory and~~Debtor into which the proceeds of the DIP Loans shall be deposited.

~~**Default** shall mean any event or condition which constitutes an Event of Default or which upon notice, lapse of time or both would, unless cured or waived, become an Event of Default.~~

**Default Rate** shall have the meaning assigned to such term in Section 2.03.

**DIP Commitment** shall mean the commitment of the Lender to make DIP Loans <u>(other than the Interim DIP Commitment)</u> pursuant to Section 2.01 in an aggregate principal amount not to exceed $8,000,000.

**DIP Facility** shall have the meaning set forth in the recitals to this Agreement.

**DIP Loan Documents** shall mean this Agreement, the Financing Orders, and each other document, instrument and certificate executed from time to time in connection with this Agreement, as may be renewed, amended, restated, extended, increased or supplemented from time to time.

**DIP Loan Obligations** shall mean each DIP Loan~~, the proceeds of which have been disbursed in accordance with Section 2.04 and Section 8.02(a),~~ and all other advances and extensions of credit made or to be made by the Lender to the Debtor, or to others for the Debtor's account, pursuant to this Agreement from time to time, including, without limitation, all PIK Interest and all Out-of-Pocket-Expenses (including all amounts capitalized pursuant to Section 7.01), whether such obligation is absolute or contingent, joint or several, matured or unmatured, direct or indirect and whether the Debtor is liable to the Lender for such indebtedness as principal, surety, endorser, guarantor or otherwise.

**DIP Loans** shall have the meaning given to such term in Section 2.01<u>(d)</u>.

~~**Event of Default**~~**Disbursement Escrow** shall have the meaning ~~provided for~~<u>given to such term</u> in Section ~~8.01 of this Agreement~~<u>2.04</u>.

<u>**Escrow Funding Loan** shall have the meaning given to such term in Section 2.01(d).</u>

<u>**Estate Contribution Commitment** shall mean the commitment of the Lender to fund a loan for use by the Debtor's estate upon the occurrence of a Termination Event in an aggregate principal amount of $1,000,000.</u>

2

**Estate Contribution Loan** shall have the meaning given to such term in Section 2.01(b).

**Final Financing Order** shall mean the final order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on a final basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Financing Orders** shall mean the Interim Financing Order and the Final Financing Order.

~~**Initial Budget** shall mean a budget agreed to by the Debtor and the Lender, setting forth in reasonable detail the projected Permitted Payments for the six-month period commencing with the month in which the Closing Date occurs.~~

**Interim DIP Commitment** shall mean the commitment of the Lender to fund the Interim DIP Loan in an aggregate principal amount of $2,000,000.

**Interim DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Interim Financing Order** shall mean the interim order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on an interim basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Letter of Credit** has the meaning assigned to such term in Section 2.06.

**Maturity Date** shall mean the earliest of (i) eighteen months after the Closing Date, and (ii) the effective date of any plan of reorganization of the Debtor~~, and (iii) the acceleration of the DIP Loan Obligations pursuant to Section 8.02~~.

**Out-of-Pocket Expenses** shall mean (a) all reasonable out-of-pocket expenses of DIP Lender (i) associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including reasonable fees, disbursements and other charges of counsel) and (ii) incurred by DIP Lender in connection with the Chapter 11 Case; and (b) all out-of-pocket expenses of DIP Lender (including the fees, disbursements and other charges of counsel in connection with the enforcement of the DIP Loan Documents).

**Person** shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

~~**Permitted Payments** shall have the meaning given to such term in Section 2.04.~~

**Petition Date** shall have the meaning provided for in the recitals of this Agreement.

**PIK Interest** shall have the meaning given to such term in Section 2.02.

~~**Professional Fees Escrow** shall have the meaning given to such term in Section 8.02.~~

**Professional Fees Escrow** shall mean an amount equal to all accrued but unpaid professional compensation and expense reimbursements of the Debtor's professionals, the Committee's professionals or the professionals of any examiner that have been incurred or accrued prior to the occurrence of a Termination Event *plus* $500,000.

**Replacement Letter of Credit** means a replacement letter of credit in form and substance satisfactory to Debtor in its sole and absolute discretion that is issued by a commercial bank that is a member of the New York Clearing House Association acceptable to Debtor in its sole and absolute discretion, and at a minimum having a long-term issuer credit rating from S&P Global Ratings of "A" or higher, or a comparable rating from Moody's Investors Service.

**Subsequent DIP Loan** shall have the meaning assigned to such term in Section 2.01.

~~Verdolino~~**Termination Event** shall have the meaning ~~given to such term under the definition of "Debtor Account"~~provided for in Section 8.01 of this Agreement.

**Section 2.**       **DIP LOAN**

2.01.       DIP Loans.

(a)       ~~Closing Date~~Interim DIP Loan. ~~On the Closing Date~~No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a ~~term~~ loan to the Debtor in an aggregate principal amount equal to ~~$2,000,000.00~~the Interim DIP Commitment (the "~~Closing Date~~**Interim** DIP Loan").

(b)       No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a loan to the Debtor in an aggregate principal amount equal to the Estate Contribution Commitment (the "**Estate Contribution Loan**").

(c)       ~~(b)~~Subsequent Draws. Subject to the conditions hereof, the ~~Debtor may request no more than three (3) additional term loans, each in a principal amount of $2,000,000.00 (each such term loan, a "**Subsequent DIP Loan**"), pursuant to a written notice (which may be by email) by Verdolino to the Lender that the accrued and unpaid Permitted Payments are projected to exceed the aggregate proceeds of the Closing Date DIP Loan and any Subsequent DIP Loan remaining in the Debtor Account (a "**Draw Request**").~~Lender shall fund, no later than two (2) Business Days following ~~receipt of any Draw Request, the Lender shall fund the~~delivery of the Accrual Reports for such week, a loan (each such loan being, a "**Subsequent DIP Loan** ~~in accordance with Section 2.04~~") in an amount equal to the excess, if any, of (x) the sum of (1) the unpaid accruals reflected in all Accrual Reports for such week, (2) all other Authorized Disbursements accrued or incurred since delivery of the last Accrual Reports and (3) $100,000 *over* (y) the funds on deposit in the Disbursement Escrow on the date of delivery of such Accrual Reports.  All DIP Loan Obligations shall become immediately due and payable on the Maturity Date.  Except as set forth in Section 2.06(c), amounts repaid at any time to the Lender may not be reborrowed.

(d)       ~~(c)~~Draws Following ~~an~~a Termination ~~Event~~ of Default.   Upon the occurrence of ~~an~~a

4

Termination Event ~~of Default that has not been waived by the Lender~~, to the extent the aggregate remaining proceeds of ~~the Closing Date DIP Loans and~~ each Subsequent DIP Loan maintained in the Debtor Account and the Disbursement Escrow, as of the date of the occurrence of such Termination Event ~~of Default~~, are insufficient to fund the Professional Fees Escrow, the Lender shall make an additional ~~DIP~~ loan (the "**Escrow Funding Loan**", ~~and~~ together with the ~~Closing Date~~Interim DIP ~~Loans~~Loan, and each Subsequent DIP ~~Loans~~Loan, the "**DIP LOANS**") in an aggregate principal amount sufficient to permit ~~he~~the funding of the Professional Fees Escrow from the Debtor Account ~~in accordance with Section 8.02~~.

(e) ~~(d)~~ Notwithstanding anything in this Section 2.01 to the contrary, ~~(i) during the period commencing upon entry of the Interim Financing Order but~~in no event shall (x) the aggregate principal amount of Subsequent DIP Loans made prior to ~~the~~ entry of the Final Financing Order~~, the maximum aggregate principal amount of all DIP Loans to be drawn by the Debtor shall be limited to $2,000,000 and (ii) in no event shall~~exceed $3,000,000, (y) the aggregate principal amount of the DIP Loans (other than the Interim DIP Loan) made, or required to be made, pursuant to this Section 2.01 exceed the DIP Commitment~~.~~ or (z) the aggregate principal amount of the Interim DIP Loan exceed the Interim DIP Commitment. The following condition shall apply to the DIP Commitment: (x) at all times prior to the occurrence of a Termination Event there shall remain (after giving effect to any Subsequent DIP Loan) availability under the DIP Commitment an amount equal to $80,000 (the "**U.S. Trustee Sub-Limit**"), which amount shall be reserved and available solely to fund the fees of the U.S. Trustee; and (y) the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund professional fees and expenses of the Debtor's professionals shall not exceed 50% of the DIP Commitment and the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund all professional fees of the Committee or any examiner shall not exceed 50% of the DIP Commitment, in each case, after reducing the DIP Committee to reserve availability for the U.S. Trustee Sub-Limit.

2.02. <u>Interest Rate; Interest Payments</u>. The outstanding principal amount of the DIP Loans shall bear interest at a per annum rate equal to five percent (5.0%) (the "**Interest Rate**"). Accrued interest shall be payable in-kind on the last day of each calendar quarter by capitalizing, compounding and adding the accrued amount thereof to the principal amount of the DIP Loans then outstanding (such interest, "**PIK Interest**") for so long as any portion of the DIP Loans remain outstanding; provided, however, that in the event of any repayment or prepayment of any portion of the DIP Loans, accrued interest on the principal amount being repaid or prepaid shall be payable cash on the date of such repayment or prepayment~~; provided, that any remittance of Undisbursed DIP Loans pursuant to Section 8.01 shall not constitute a repayment or prepayment and shall not be subject to the requirements of this sentence~~.

2.03. <u>Default Interest</u>. Notwithstanding the foregoing, (i) if any principal of, or interest on, the DIP Loans or any fee or other amount payable by the Debtor hereunder or under any other DIP Loan Document is not paid when due, ~~whether at stated maturity, upon acceleration or otherwise,~~ such overdue amount shall bear interest at a rate per annum equal to two percent (2.0%) plus the Interest Rate (the "**Default Rate**"); and (ii) during the occurrence and continuance of ~~an Event of Default other than an Event of Default resulting from the circumstances described in clause (i) of this Section 2.03~~a Termination Event , the Lender may, at its option, by notice to the Debtor, declare that the DIP Loans any other amounts outstanding hereunder shall bear interest at the Default Rate as provided in the preceding paragraphs of this Section.

2.04.   <u>Use of Proceeds; Disbursements from Debtor Account</u>.  The proceeds of the DIP Loans shall be deposited into the Debtor Account.  ~~So long as no Event of Default shall have occurred and be continuing,~~ and, other than the proceeds of the ~~Closing Date~~Interim DIP Loan and ~~each Subsequent DIP Loan shall be disbursed from time to time by Verdolino to fund (x) the Debtor's administrative expenses, including professional fees of the Debtor in an aggregate amount not to exceed $4,000,000 and (y) to fund the professional fees of any official creditors committee or any examiner (if appointed), the quarterly fees of the United States Trustee and the fees of the Bankruptcy Court in an aggregate amount not to exceed $4,000,000; provided that the proceeds of the Closing Date DIP Loan, shall only be used to pay the administrative expenses of ordinary course professionals of the Debtor (which shall exclude, for the avoidance of doubt, Brown Rudnick LLP, Verdolino and Stretto) and, until~~ entry of the Final Financing ~~Order, may not be used to pay the expenses of professionals of the Debtor other than ordinary course professionals~~the Estate Contribution Loan and subject to entry of the Final Financing Order and approval of by the Bankruptcy Court of an escrow agreement to be submitted in connection therewith, may be disbursed by the Debtor to into an escrow account (the "**Disbursement Escrow**") maintained by Brown Rudnick LLP ("**Brown Rudnick**") in an amount equal to all accrued but unpaid professional compensation and expense reimbursements, administrative priority claims, court fees, and U.S. Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Bankruptcy Court, as applicable, including all accruals set forth in the Accrual Reports (collectively, ~~the "**Permitted Payments**~~**Authorized Disbursements**").  The proceeds of the Interim DIP Loan shall be used by the Debtor in its discretion to the extent permitted by orders of the Bankruptcy Court.  The proceeds of the DIP Loans will not be utilized to pay for ordinary living expenses of the Debtor.  ~~Upon the occurrence of an Event of Default~~Alternatively, subject to entry of a Final Financing Order so permitting, the proceeds of the DIP Loans ~~shall only be used in accordance with Section 8.02~~may be deposited into  the Debtor Account or other approved account designated as the Disbursement Escrow.

2.05.   All payments due by the Debtor under this Agreement, whether for principal, interest, fees, costs, indemnities, expenses or otherwise, shall be payable in United States dollars in accordance with the wire instructions provided by Lender to Debtor, without setoff, counterclaim or other deduction of any kind.

2.06.   <u>Standby Letter of Credit.</u>

(a)   As additional credit support for the Lender's obligations to fund the DIP Loans (other than the Interim DIP Loan), the Lender shall, no later than ten (10) Business Days after the entry of the Interim Financing Order (as such date may be extended by the Debtor in its sole and absolute discretion) caused to be delivered to the Debtor, at the Lender's sole cost and expense, a clean, "multi-draw" irrevocable and unconditional standby letter of credit issued in favor of the Debtor with an initial face amount equal to $8,000,000 from a bank which is a member of the New York Clearing House Association and is otherwise satisfactory to the Debtor (the "**Issuer**"), which letter of credit shall (w) be for a term commencing on the Closing Date (or, if such letter of credit is not delivered on the Closing Date, commencing not later than ten (10) Business Days after entry of the Interim Financing Order) and expiring at least three hundred sixty-five (365) days after the date of issuance of such letter of credit and which shall include "evergreen" provisions under which the Issuer agrees that such letter of credit shall renew automatically on such date of expiration for consecutive additional terms of three hundred sixty-five (365) days unless the Debtor has, at least sixty (60) days prior to the then applicable expiration date, received written notice from the Issuer expressly stating that such letter of credit will not be so renewed

on the date of expiry (a "**Cancellation Notice**"), (z) provide that the Debtor may draw on such letter of credit at any time, or from time to time, upon written request delivered to Issuer and without any requirement that the Debtor deliver the original letter of credit or any other documentation to effect such draws, (y) provide that such letter of credit is freely assignable by the Debtor and (z) otherwise contain terms and conditions satisfactory to the Debtor in its sole and absolute discretion (such letter of credit, together with one or more Replacement Letters of Credit, being the "**Letter of Credit**").  The Letter of Credit shall be held by the Debtor as security for the performance by the Lender of its obligations under this Agreement and the other DIP Loan Documents.  Notwithstanding the foregoing, the requirements of this paragraph may be waived by the Debtor with the approval of the Bankruptcy Court.

(b)    Upon the failure of the Lender to fund any DIP Loan (other than the Interim DIP Loan and Estate Contribution Loan), the Debtor shall be entitled to draw upon the Letter of Credit to fund any such DIP Loan without prior notice to, or consent of, the DIP Lender, and without requiring that the Debtor first provide notice to, or make demand for such payment from, the Lender.

(c)    The Lender further agrees that following the Issuer's sending a Cancellation Notice, the Debtor may draw the full remaining undrawn amount of the Letter of Credit and deposit such amount in the Debtor Account, and the proceeds of such draw may be used in accordance with Section 2.04; provided, that upon receipt by the Debtor of a Replacement Letter of Credit satisfying the requirement set forth in Section 2.06(a), the Debtor shall return to the Lender any funds drawn from the Letter of Credit and remaining in the Debtor Account at the time of receipt of the Replacement Letter of Credit.  Any draw on the Letter of Credit under this Section 2.06(c) shall not constitute the making of a DIP Loan, nor shall reduce the DIP Commitment; *provided,* however, that the disbursements of any such drawn amount from the Debtor Account to the Disbursements Escrow in accordance with the Section 2.04 shall constitute the making of a DIP Loan in an amount equal to such disbursed amount.

(d)    If any Letter of Credit will expire, or if any Issuer shall have delivered a Cancellation Notice, the Lender shall replace such Letter of Credit by delivering to the Debtor a Replacement Letter of Credit at least thirty (30) days prior to the expiration date of the then effective Letter of Credit in accordance with the terms of this Section 2.06.  If any Letter of Credit Issuer's credit rating is reduced below the requisite level specified above, or if the financial condition of such Issuer changes in any other materially adverse way, or if Debtor believes such Issuer is in a condition that it may soon become insolvent or placed into receivership, then the Lender within thirty (30) days of the Debtor's written request deliver to the Debtor a Replacement Letter of Credit with an issuing bank acceptable to the Debtor and otherwise satisfying the requirements of Section 2.06(a).

(e)    The Lender hereby covenants and agrees not to oppose, contest or otherwise interfere with any attempt by the Debtor to draw on the Letter of Credit.

**Section 3.    CONDITIONS TO EFFECTIVENESS AND FUNDING**

3.01.    3.02. Conditions to the Funding of the Closing DateInterim DIP Loan.  The obligation of the Lender to make the Closing DateInterim DIP Loan is subject to the satisfaction by Debtor or waiver by Lender of the following conditions precedent:

(a)    Each DIP Loan Document shall be in form and substance reasonably satisfactory to the Lender, and shall have been duly executed by the Debtor and any other necessary parties and delivered to

the Lender;

(b)      The Interim Financing Order shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(c)      The Debtor Account shall have been established; and

(d) The Debtor shall have delivered the Initial Budget; and

(d)      (e) No Termination Event of Default shall have occurred and be continuing or result after giving effect to the making of the Closing DateInterim DIP Loan.

3.02.    Conditions to the Funding of each Subsequent DIP Loan.  The obligation of the Lender to make each Subsequent DIP Loan is subject to the satisfaction by the Debtor or waiver by Lender of the following conditions precedent:

(a)      The Interim Financing OrdersOrder or, following entry of the Final Financing Order, the Final Financing Order, shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)      No Termination Event of Default shall have occurred and be continuing or result after giving effect to the making of such Subsequent DIP Loan; and

(c)      If such Subsequent DIP Loan is made prior to entry of the Final Financing Order, the aggregate principal amount of all Subsequent DIP Loans then outstanding, after giving effect to the making of such Subsequent DIP Loan, shall not exceed $3,000,000; and

(d)      (c) The aggregate principal amount of all DIP Loans made pursuant to Section 2.01 then outstanding shall and after giving effect to the making of such Subsequent DIP Loan shall not exceed the DIP Commitment (after giving effect to the U.S. Trustee Sub-Limit).

3.03.    Conditions to the Funding of the Escrow Funding Loan.  The obligation of the Lender to make the Escrow Funding Loan is subject to the satisfaction of the following conditions precedent:

(a)      The Financing Orders shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)      AnA Termination Event of Default shall have occurred and be continuing;

(c)      The proceeds of the Closing Date DIP Loan and each Subsequent DIP Loan remaining in the Debtor Account and the Disbursement Escrow shall be insufficient fund the Professional Fees Escrow in accordance with Section 8.02; and

(d)      The aggregate principal amount of all DIP Loans made pursuant to Section 2.01 then outstanding and after giving effect to the making of the Escrow Funding Loan shall not exceed the DIP Commitment.

**Section 4.        REPRESENTATIONS AND WARRANTIES.**

The Debtor represents and warrants to the Lender that:

4.01.    <u>Authorization; Enforceability</u>.  Subject to any restrictions arising on account of the Debtor's status as "debtor" under the Bankruptcy Code, the Debtor has all requisite legal capacity to enter into this Agreement and the other DIP Loan Documents.  Upon entry of the Financing Orders, this Agreement and each other DIP Loan Document shall constitute a legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms, subject to any restrictions arising on account of the Debtor's status as a "debtor" under the Bankruptcy Code and subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.02.    <u>Approvals; No Conflicts</u>.  Subject to entry of the Financing Orders, this Agreement and the other DIP Loan Documents do not require any consent or approval of, registration or filing with, or any other action by, any governmental authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any DIP Loan Document, except such as have been obtained or made and are in full force and effect.

**Section 5.        REPORTING.**

5.01.    ~~Budget~~<u>Reporting</u>.

~~(a) On the first day of each calendar month, commencing on May 1, 2022, the Debtor shall deliver to the Lender an updated budget, setting forth in reasonable detail, the projected Permitted Payments for the six month period commencing with the date such budget is delivered.  Each budget delivered by the Debtor pursuant to this Section 5.01(a) shall be presumed acceptable to the Lender unless the Lender shall object to such updated budget in writing within three (3) days following delivery thereof.~~

<u>(a)        On the tenth (10th) day of each calendar month (or, if such day is not a Business Day, on the immediately preceding day that is a Business Day), commencing on May 10, 2022, the Debtor shall deliver to the Lender a report, setting forth all disbursements Debtor from the Debtor Account to the Disbursement Escrow made for the preceding month.</u>

(b)    ~~Estate professionals (including but not limited to professionals~~<u>On Friday of each calendar week after the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm</u> retained by the Debtor, ~~any official committee, and/or any examiner) shall provide weekly fee accrual reports to DIP Lender in accordance with the terms of the Financing Orders.~~<u>the Committee and any examiner then appointed shall deliver to the Debtor, the Lender and the Committee a report of fee and/or cost accruals from the preceding week (each, an "**Accrual Report**" and, collectively, the "**Accrual Reports**").</u>

5.02.    <u>Information</u>.  If reasonably requested by Lender, the Debtor will furnish to the Lender such financial reports and information in such detail as shall be reasonably satisfactory to the Lender.

**Section 6.     MILESTONES**.

6.01.    [Reserved.]

~~6.01. The Debtor shall take or complete the following milestone by the following date:~~

~~(a) Within 45 of the entry of the Interim Financing Order, the Bankruptcy Court shall have entered the Final Financing Order.~~

**Section 7.     EXPENSE REIMBURSEMENT; INDEMNITY.**

7.01.    The Debtor shall reimburse or pay the Lender for all Out-of-Pocket Expenses, which expenses shall be paid in-kind by capitalizing, compounding and adding the amount thereof to the principal amount of the DIP Loans.  The Debtor hereby agrees to indemnify and hold harmless the Lender, and the officers, directors, members, managers, employees, attorneys and agents of the Lender (each an "**Indemnified Party**") from, and holds each of them harmless against, (a) any and all losses, liabilities, obligations, claims, actions, damages, costs and expenses (including reasonable attorney's fees) insofar as such losses, liabilities, obligations, claims, actions, damages, costs, fees or expenses are with respect to the DIP Loans and DIP Loan Documents, except and to the extent that the same results solely and directly from the gross negligence or willful misconduct of such Indemnified Party. The Debtor hereby agrees that this indemnity shall survive termination of this Agreement.

**Section 8.     TERMINATION EVENTS ~~OF DEFAULT AND REMEDIES~~**

8.01.    Notwithstanding anything hereinabove to the contrary, each of the following shall constitute ~~an~~a "**Termination** Event ~~of Default~~":

~~(a) (i) if a Default occurs in the due and punctual payment of the principal of the DIP Loans (including any PIK Interest or other amounts capitalized pursuant to Section 7.01) when and as the same shall become due and payable pursuant to the terms of this Agreement, whether on the Maturity Date or otherwise and (ii) if a Default occurs in the due and punctual payment of any other amounts payable to the Lender within fifteen (15) Business Days after the date on which the same shall be come due and payable;~~

~~(b) a breach by the Debtor in the performance or observation of any of the covenants set forth in Sections 5.01 or 6.01;~~

~~(c) a breach by the Debtor in the performance or observation of any other covenant set forth in this Agreement or any other DIP Loan Documents not set forth in clauses (a) and (b) of this Section 8.01 and the same remains uncured within sixty (60) days after the occurrence thereof;~~

~~(d) breach by the Debtor of any warranty, representation or covenant contained herein or in any other DIP Loan Document and the same remains unremedied for a period of sixty (60) days from the date of such breach;~~

(a)    ~~(e)~~ the Bankruptcy Court shall enter an order granting relief from the automatic stay in connection with PAX v. Kwok, Index No. 652077/2017 (N.Y. Sup.) (the "**PAX Litigation**"), and/or the

United States District Court for the Southern District of New York shall deny a motion to transfer venue of the PAX Litigation;

(b) ~~(f)~~ without the consent of the DIP Lender, the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of the Chapter 11 Case or seeking conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(c) ~~(g)~~ there shall be appointed a chapter 11 trustee, or the Debtor shall file a motion or other pleading seeking such appointment; or

(d) ~~(h)~~ the Bankruptcy Court shall terminate the Debtor's exclusive right to file a plan of reorganization pursuant to section 1121(b) of the Bankruptcy Code.

8.02.   Remedies.

(a)   Subject to the Financing Orders, upon the occurrence and during the continuance of ~~an Event of Default which has not been waived by the Lender, (i) the Lender may declare by written notice to the Debtor that all DIP Loan Obligations are immediately due and payable, (ii) subject to, and without limiting, the Lender's obligation to fund the Escrow Funding Loan~~ a Termination Event, the Lender's commitment to fund any DIP Loans pursuant to Section 2.01(c), ~~the DIP Commitment~~ shall terminate and the Lender shall have no obligation to make any additional DIP Loans, ~~(iii) Verdolino shall disburse from the Debtor Account to an escrow account the lesser of (x) an amount equal to fees and expenses incurred or accrued and pending applications for Debtor's professionals and any official committee of unsecured creditors incurred in the Chapter 11 Case prior the occurrence of such Event of Default, plus $500,000 and (y) the aggregate undisbursed DIP Loan Proceeds maintained in the Debtor Account (the "**Professional Fees Escrow**") and (iv) all proceeds of the DIP Loans deposited in the Debtor Account which have not been disbursed for payment of Permitted Payments in accordance with Section 2.04 or the funding of the Professional Fees Escrow in accordance with this Section 8.02(a) (the "**Undisbursed DIP Loans**"), if any, shall be immediately remitted and returned to such Lender and shall, upon such remittance, be deemed a payment~~ by the Debtor of a portion of the DIP Loans ~~in an amount equal to the Undisbursed DIP Loans.~~ (other than the Escrow Funding Loan required to be made pursuant to Section 2.01(d)).

(b)   ~~Solely in order to facilitate the return of Undisbursed DIP Loans in accordance with clause (iv) of Section 8.02(a), upon the occurrence of an Event of Default which has not been waived by the Lender, the Lender shall be automatically granted an administrative expense claim having priority over any or all other administrative expenses of any kind specified in Section 503(b), 506(c), and 507(b)~~ In the event the Chapter 11 Case is dismissed, absent contrary direction contained in an order of the Bankruptcy ~~Code, in an amount equal to the Undisbursed~~ Court, the Debtor shall return to the DIP Lender any proceeds of the DIP Loans remaining in the Debtor Account.

~~8.03. No delay or omission of the Lender to exercise any right or remedy hereunder, whether before or after the happening of any Event of Default, shall impair any such right or shall operate as a waiver thereof or as a waiver of any such Event of Default. No single or partial exercise by the Lender of any right or remedy precludes any other or further exercise thereof, or precludes any other right or remedy.~~

11

8.04. Application of Proceeds. Subject to the Financing Orders (including, for the avoidance of doubt, the rights of creditors of the Debtor existing as of the Petition Date), after the occurrence of an Event of Default (or after the DIP Loan Obligations have automatically become immediately due and payable), any amounts received on account of the DIP Loan Obligations shall be applied by Lender in the following order:

*First*, to Lender for the payment of that portion of the DIP Loan Obligations constituting fees, indemnification claims, expenses and other amounts including fees, charges and disbursements of counsel;

*Second*, to Lender for the payment of that portion of the DIP Loan Obligations constituting accrued and unpaid interest on the DIP Loans;

*Third*, to Lender for the payment of that portion of the DIP Loan Obligations constituting unpaid principal of the DIP Loans; and

*Last*, the balance, if any, after all of the DIP Loan Obligations (other than indemnification obligations that expressly survive pursuant to the terms of this Agreement) have been indefeasibly paid in full, to Debtor's bankruptcy estate or as otherwise required by law.

## Section 9.    MISCELLANEOUS

9.01.    This Agreement and the other DIP Loan Documents constitute the entire agreement between the Debtor and the Lender with respect to the matters contained herein and therein; supersede any prior agreements; can be waived or changed only by a writing signed by each party hereto or thereto, and shall bind and benefit each party hereto or thereto and their respective successors and assigns, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

9.02.    In no event shall the Debtor, upon demand by the Lender for payment of any DIP Loan Obligations, by acceleration of the maturity thereof or otherwise, be obligated to pay interest and fees in excess of the amount permitted by law and the Lender shall never be entitled to receive, charge or apply, as interest on any DIP Loan Obligations, any amount in excess of the maximum amount of interest permissible under applicable law. If the Lender ever receives, collects or applies any such excess, it shall be deemed a partial repayment of principal and treated as such; and if principal is paid in full, any remaining excess shall be refunded to the Debtor. This paragraph shall control every other provision hereof and each other DIP Loan Document.

9.03.    If any provision hereof or of any other agreement made in connection herewith is held to be illegal or unenforceable, such provision shall be fully severable, and the remaining provisions of the applicable agreement shall remain in full force and effect and shall not be affected by such provision's severance.

9.04.    GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS.

(a)    THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF

~~NEW YORK~~CONNECTICUT AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, ANY ~~UNITED STATES FEDERAL COURT OR NEW YORK~~CONNECTICUT  STATE COURT SITTING IN ~~NEW YORK~~HARTFORD COUNTY AND THE UNITED STATES DISTRICT COURT FOR THE ~~SOUTHERN~~ DISTRICT OF ~~NEW YORK AND APPELLATE COURTS FROM ANY THEREOF~~CONNECTICUT; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN OR IN ANY OTHER DIP LOAN DOCUMENT WILL PREVENT ANY PARTY FROM BRINGING ANY ACTION TO ENFORCE ANY AWARD OR JUDGMENT OR EXERCISE ANY RIGHT UNDER THE DIP LOAN DOCUMENTS IN ANY OTHER FORUM IN WHICH JURISDICTION CAN BE ESTABLISHED. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS.

9.05.    <u>Notices</u>.   Except as otherwise herein provided, any notice or other communication required hereunder shall be in writing (provided that, any electronic communications including electronic mail shall constitute a notice or communication in writing), and shall be deemed to have been validly served, given or delivered when (i) hand delivered, (i) in the case of any electronic communications, the day sent, (iii) one (1) Business Day after deposit with a nationally recognized overnight delivery service, or (iv) three Business Days after deposit in the United States mails, with proper first class postage prepaid, return receipt requested, and addressed to the party to be notified or to such other address as any party hereto may designate for itself by like notice, as follows:

(a)    if to the Lender, at:

Golden Spring (New York) Ltd.
162 E 64th St.
New York, NY 10065
Attention:
Email: admin@gsnyus.com

With a copy to:

Email: arethusaf@protonmail.com

- and -

Cohn Birnbaum & Shea, P.C.
100 Pearl Street, Hartford, CT 06103
Attention: Scott D. Rosen
Email srosen@cbshealaw.com

(b)    if to the Debtor, to

373 Taconic Road
Greenwich, CT 06831

With a copy to:

Brown Rudnick LLP
Seven Times Square
~~New York, NY 10036~~
New York, NY 10036
Attention: William R. Baldiga
Email : wbaldiga@brownrudnick.com
Email : Attention: Bennett S. Silverberg
Email
~~bsilverberg@brownrudnick.com~~bsilverberg@
brownrudnick.com
~~Attention: Steven D. Pohl~~
~~Email spohl@brownrudnick.com~~

9.06.    In the event of any inconsistency between the terms of any Financing Order, on the one hand, and this Agreement and the other DIP Loan Documents, on the other hand, the terms of such Financing Order shall control.

[SIGNATURE PAGES FOLLOW]

BR DRAFT 4/9/2022

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective, executed, accepted and delivered as of the date first set forth above by their proper and duly authorized officers as of the date set forth above.

**DEBTOR:**

_____
Ho Wan Kwok (a/k/a Miles Kwok a/k/a Miles Guo a/k/a Wengui Guo)

**LENDER:**

**GOLDEN SPRING (NEW YORK) LTD.**

By:_____
Name:_____
Title:_____

64528892 v864669999 v3

| Summary report: Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 4/10/2022 2:02:30 PM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** EXHIBIT D - Ho Wan Kwok_DIP Credit Agreement.docx | |
| **Modified DMS:** iw://WORKSITE/WorkSiteUS/64669999/4 | |
| **Changes:** | |
| Add | 130 |
| Delete | 132 |
| Move From | 14 |
| Move To | 14 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 290 |