**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,<br><br>            Debtor. | Chapter 11<br><br>Case No: 22-50073 (JAM) |
| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND, L.P.,<br><br>            Movant,<br><br>v.<br><br>HO WAN KWOK,<br><br>            Respondent. | Contested Matter [Doc. No. 57] |

**STATEMENT OF HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC REGARDING MOTION OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. FOR ENTRY OF AN ORDER CONFIRMING THE INAPPLICABILITY OF THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(2) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JULIE A. MANNING,
UNITED STATES BANKRUPTCY JUDGE:

    HK International Funds Investments (USA) Limited, LLC ("HK USA"), by and through its undersigned attorneys, Zeisler & Zeisler, P.C., hereby submits this statement (the "Statement") regarding the Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(D)(2) of the Bankruptcy Code (the "Stay Relief Motion"). In support thereof, the HK USA respectfully represents as follows.

1

## I. INTRODUCTION

1. HK USA is the registered owner of that certain vessel, the "Lady May," which is the subject of the Stay Relief Motion filed by Pacific Alliance Asia Opportunity Fund L.P. ("PAX"). A true and genuine copy of the Certificate of British Registry is appended hereto as **Exhibit A**.

2. HK USA submits this statement to convey its consent to the entry of the proposed order (the "Proposed Order") submitted herewith compelling HK USA to transport and deliver the Lady May to the navigable waters of Connecticut on the terms and subject to the conditions set forth in the Proposed Order. The Proposed Order is appended hereto as **Exhibit B**.

3. The terms and conditions set forth in the Proposed Order are reasonable and appropriate based upon the present circumstances involving the Lady May as set forth in the Declaration of Russell Stockil (the "Declaration") appended hereto as **Exhibit C**. Mr. Stockil is the Yacht Management Director for Yachtzoo SARL ("Yachtazoo"), the yacht management company employed by HK USA to manage the Lady May.

4. On Friday, April 8, 2022, HK USA provided a copy of the Proposed Order (in substantially similar form) to counsel for PAX, the Debtor, the Office of the United States Trustee and the Official Committee of Unsecured Creditors for their respective comments.[1] HK USA also provided supporting documentation and offered to make Mr. Stockil available to them to answer any questions they may have or provide any additional information they may request.

5. HK USA respectfully submits that entry of the Proposed Order compelling HK USA to return the Lady May to Connecticut would moot the Stay Relief Motion.

---

[1] The undersigned had an initial conversation with counsel for PAX on Sunday, April 10, 2022, concerning the Proposed Order. As to the other parties, he has not, as of yet, received any comments.

## II. BACKGROUND

6. While HK USA certainly intends to present at the appropriate time the information sufficient to establish that it owns the Lady May, for purposes of the Stay Relief Motion and the return of the Lady May to Connecticut, HK USA limits its background to explaining the Lady May's current circumstances and the process through which it may be transported to Connecticut. The following summarizes those circumstances as attested to by Mr. Stockil in his Declaration.

7. HK USA and Yachtzoo signed a management contract with respect to the Lady May on May 1, 2021. (Decl. ¶ 2.) That contract requires Yachtzoo to provide financial administration, technical support and management, safety management, and human resources services for the Lady May's crew members. (*Id.*) Yachtzoo continues to perform under that contract. (*Id.*)

8. The Lady May is currently alongside the shipyard MB92 La Ciotat SAS ("MB92"), 46 Quai François Mitterrand, 13600 La Ciotat, France, and completing service and maintenance tasks that can be completed in water – such as HVAC servicing, duct cleaning, and servicing of lifesaving appliances and firefighting equipment. (*Id.* ¶ 3.) A true and genuine copy of the original Quotation dated March 16, 2022, provided by MB92 is appended to the Declaration as **Exhibit 1**. (*Id.*) The time frame set forth in the Quotation was estimated before the discovery of the sea inlet valve issue described below. (*Id.*)

9. The timing of such service had originally been dictated by a necessary stabilizer service. (*Id.* ¶ 4.) Stabilizers are an integral part of the vessel's operation. In this instance, stabilizer service became necessary because an unusual noise was observed emitting from the stabilizers.

(*Id.*) The stabilizer service is also considered mandatory at this time because there was no record of a prior service and oil change. (*Id.*)

10. The stabilizer service must be carried out by the stabilizer's manufacturer, Quantum Marine Stabilizer ("Quantum"). (*Id.* ¶ 5.) Quantum dictated the schedule based on its availability. Yachtzoo and HK USA requested stabilizer service from Quantum in December 2021 and paid a deposit on 22nd December 2021 to secure the stabilizer service as soon as possible. (*Id.*) The earliest availability dictated by Quantum was 21st April 2022. (*Id.*) A true and genuine copy of the Estimate dated December 9, 2021, provided by Quantum is appended to the Declaration as **Exhibit 2**. (*Id.*)

11. As soon as this stabilizer service is completed, there will be a sea trial to confirm correct function and then the Lady May will be hauled out of the water to complete other engineering work, including (but not limited to) as follows:

   a. Overboard valves (the scope of this service is still under discussion and this matter could potentially increase the time required in the drydock);
   b. Antifouling;
   c. Clearance measurements for rudder and propeller shafts (need to confirm that they are within the stipulated ranges);
   d. Tank cleaning, inspections and repair (grey/black/water);
   e. Anode replacements;
   f. Windlass service and anchor chain inspection; and
   g. Sea inlet valves replacement.

(*Id.* ¶ 6.)

12. With respect to the replacement of the sea inlet valve (item g above), the bolts on the valves are rusted. (*Id.* ¶ 7.) Unbolting them will be very difficult and some bolts may need to be cut, causing damage to the surrounding elements. (*Id.*) There is also a possibility that the hull flanges and filter may be corroded which would then necessitate their replacement. (*Id.*) Considering the bolts' and valves' conditions, it will take a minimum of 3 weeks to complete this work assuming the best case scenario and that no cutting and no welding will be necessary. (*Id.*)

Worst case scenario, this work may require at least 6 weeks in drydock. (*Id.*) During this sea inlet valve replacement work, no other work can be done in the engine room. (*Id.*) A true and genuine copy of the See Inlet Valves Replacement report is appended to the Declaration as **Exhibit 3**. (*Id.*) As a consequence, the originally contemplated schedule for service and maintenance may be delayed. (*Id.*)

13. These services and maintenance are essential to the proper functioning of the vessel and necessary to avoid more complicated and costly issues in future operation as well as to ensure the safety of the passengers and crew. (*Id.* ¶ 8.)

14. Once the services, maintenance and repairs described above are complete, annual surveys by the vessel Class Society (Lloyds Register) and Flag State (Cayman Islands) are due to be carried out. (*Id.* ¶ 9.) These will be scheduled based on the progress of the shipyard period and conducted during the final period of the stay at La Ciotat shipyard. (*Id.*) These surveys consist of an annual Hull and Machinery survey, Annual Large Yacht Code Compliance (safety) survey, annual safety radio survey, and annual Marine Pollution (air and oil) surveys. (*Id.*)

15. In the absence of any unanticipated delays, it is presently expected that the Lady May will be available for travel from France in June, 2022. (*Id.* ¶ 10.)

16. However, given the design characteristics of the vessel, the Lady May is not capable of safely voyaging across the Atlantic Ocean to the United States of America. (*Id.* ¶ 11.) Accordingly, it must be transported in a freighter. (*Id.*) Arrangements are currently being made for such freighter transportation to take place as soon as the service and maintenance is complete. (*Id.*)

17. Ordinarily, it takes approximately 12 to 15 days to load a yacht onto a freighter and transport the yacht by freighter from the South of France, across the Atlantic Ocean to New York

or Baltimore. (*Id*. ¶ 12.) Baltimore is presently the discharge port for the transport freighter. (Id.) From there, the Lady May can proceed directly to Connecticut. (*Id*.)

18.     Assuming everything proceeds without any extenuating circumstances causing a delay, including the timely loading of the Lady May onto a freighter, HK USA and Yachtzoo reasonably anticipate that the Lady May should arrive in the navigable waters of Connecticut by 1st July, 2022. (*Id*. ¶ 13)

19.     Thus, the minimal delay in commencing the Lady May's return is reasonable and necessary to preserve and protect the Lady May; incurred at HK USA's own significant cost totaling, based on the current estimates, €192,249 due to MB92 and €65,215 due to Quantum (aggregating, based on the current exchange rate, $280,342.25). (*See* Decl. Ex. 1 Quotation at 33; *id*. Ex. 2 Estimate at 2.)

20.     HK USA will also incur the cost to transport the Lady May by freighter and the current proposals range from $430,000 to $695,000.

### III. BASIS FOR STATEMENT

21.     PAX claims that all it seeks by its Stay Relief Motion is the return of the Lady May through the enforcement of the Order of Civil Contempt entered on February 9, 2022, by the Supreme Court of the State of New York (Justice Ostrager presiding) (the "New York Action"). (Stay Relief Motion at 1-3.) PAX represents that it does not seek the immediate payment of money by the Debtor through such enforcement or a levy upon the Lady May. (*Id*. at 3 & 18.)

22.     In response, HK USA proposes that this Court enter—and HK USA consents to the entry of—an order compelling it to return the Lady May as set forth in the Proposed Order.

23.     To address potential concerns that may be raised and to ensure transparency throughout this process, HK USA further proposed in the Proposed Order that this Court enter the following protocol:

> [O]n the first and fifteenth day of each month until the Lady May has been returned to the navigable waters of Connecticut, HK USA shall file with this Court a Progress Report Regarding the Lady May setting forth: (i) the current physical location of the Lady May; (ii) the status of the service and maintenance tasks identified in the Declaration, and the reasonable anticipated timing of the remaining service and maintenance tasks to be performed; (iii) the status of arrangements for the transport by freighter of the Lady May in accordance with this Order or, once departed from France, the status of such transport by freighter of the Lady May; and (iv) the anticipated timing of the return of the Lady May in compliance with this Order.

24.     HK USA also made Mr. Stockil available to answer any questions or provide any additional information that may be necessary, and will continue to make him reasonably available to the parties-in-interest in this bankruptcy case.

25.     The terms and conditions set forth in the Proposed Order are reasonable and appropriate under the circumstances presented as explained in the Declaration.

26.     Thus, HK USA respectfully requests the entry of the Proposed Order.

27.     The entry of such Proposed Order will moot the Stay Relief Motion by granting PAX the very relief it requests – the entry of an order compelling the return of the Lady May.

28.     By having this Court enter such an order, the parties involved avoid further protracted litigation concerning the contempt proceeding in the New York Action and, most significantly, the imposition of penalties designed to coerce the Debtor's performance[2] which may

---

[2] Although Judge Ostrager held that the Debtor had the ability to control the Lady May, the Debtor continues to dispute this finding and that determination is the subject of an appeal. Entry of the Proposed Order avoids this controversy entirely because HK USA is the registered owner of the Lady May and the party who contracted directly with the Lady May's yacht management company, Yachtzoo.

severely prejudice the Debtor and the creditors in this bankruptcy case—such as would occur if the Debtor was incarcerated.

29. The Proposed Order would also enable HK USA to maintain if not enhance the value of the Lady May through the services and maintenance being performed over the next weeks. Although HK USA adamantly disputes that the Lady May constitutes property of the Debtor's bankruptcy estate, if it is ultimately determined that PAX is correct, all of this work on the Lady May (estimated to total approximately $280,000) will inure to the benefit of the bankruptcy estate's creditors including, presumably, PAX.

30. The Proposed Order also specifically provides that it is subject to further order of this Court so any other issues surrounding the continued location, preservation and maintenance of the Lady May can be addressed by this Court, upon motion and after notice and a hearing, in due course.

31. Finally, HK USA intends to commence an adversary proceeding against the Debtor and PAX before this Court in this bankruptcy case seeking a declaratory judgment determining that the Lady May is not property of the Debtor's bankruptcy estate. This Court has exclusive jurisdiction to make such determination. Having this Court control the whereabouts of the Lady May while it hears whether the Lady May constitutes property of this bankruptcy estate avoids any inconsistencies and inefficiencies that may result from separate forums deciding each of these matters independently.

Dated this 11th day of April, 2022.

        HK INTERNATIONAL FUNDS
        INVESTMENTS (USA) LIMITED, LLC


        By: */s/ Stephen M. Kindseth*
        Stephen M. Kindseth (ct14640)
        Aaron A. Romney (ct28144)
        Zeisler & Zeisler, P.C.
        10 Middle Street, 15th Floor
        Bridgeport, CT  06604
        (203) 368-4234
        (203) 549-0872 (fax)
        Email: skindseth@zeislaw.com
               aromney@zeislaw.com
        Its Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of April, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)