**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Ho Wan Kwok, | : Case No. 22-50073 |
| | : |
| Debtor.[1] | : |
| | : |
| | : |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF DEBTOR FOR AUTHORIZATION TO
CONDUCT AN EXAMINATION OF HK INTERNATIONAL FUNDS
INVESTMENT (USA) LIMITED, LLC AND TO
SUBPOENA PRODUCTION OF DOCUMENTS PURSUANT
TO FED. R. BANKR. P. 2004 AND 9016 AND D. CONN. BANKR. L.R. 2004-1**

The Official Committee of Unsecured Creditors (the "Committee") of Debtor and Debtor in Possession, Ho Wan Kwok (the "Debtor"), hereby submits this Motion for Authorization to Conduct an Examination of HK International Funds Investment (USA) Limited, LLC and Subpoena Production of Documents Pursuant to Fed. R. Bankr. P. 2004 and 9016 and D. Conn. Bankr. L.R. 2004-1 (the "Rule 2004 Motion")

In support of its Rule 2004 Motion, the Committee respectfully represents as follows:

**RELEVANT PROCEDURAL HISTORY**

1. On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has remained a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

2. No trustee or examiner has yet been appointed in the Debtor's bankruptcy case, although on March 19, 2022, the United States Trustee ("UST") filed a Motion for Order Directing Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Examiner/Trustee Motion").

3. Oppositions to the Examiner/Trustee Motion have been filed by the Committee, Pacific Alliance Asia Opportunity Fund, L.P. ("PAX"), and creditors Rui Ma and Weican Meng. On April 13, 2022, after a hearing held on the Examiner/Trustee Motion and other motions and applications filed in the case, the Examiner/Trustee Motion was scheduled for a status conference for scheduling purposes on April 27, 2022.

4. On March 21, 2022, the Committee was officially appointed by the United States Trustee and on March 28, 2022, selected Pullman & Comley, LLC ("P&C") as its counsel.[2]

5. On March 1, 2022, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") filed its Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code (the "PAX Motion").

6. On March 15, 2022, the Debtor filed its Objection to the PAX Motion, to which PAX filed a Reply on March 18, 2022 (ECF No. 98) (the "PAX Reply"). On March 28, 2022, the Debtor filed a Supplemental Objection to the PAX Motion (the "Debtor Supp. Obj."), and on April 6, 2022, the Committee filed its Position Statement in limited support of the PAX Motion.

7. By the PAX Motion, PAX seeks to return to the PAX Litigation for purposes of compelling the Debtor to return to U.S. jurisdiction a yacht known as the Lady May, which the

---

[2] The Committee filed an application for authority to employ P&C on April 5, 2022. The application has been scheduled for a hearing on April 27, 2022.

Debtor and/or the registered owners of the Lady May had been ordered not to remove, but did remove, from the New York court's jurisdiction well over one year ago (PAX Motion, Ex. B, Declaration of Peter Friedman, hereinafter the "<u>Friedman Dec</u>.," ¶2, Ex. 1, February 9, 2022 Decision and Order of Judge Barry R. Ostrager, the "<u>February 9, 2022 Decision</u>," at 2).

8. For his contemptuous conduct in failing to return the Lady May, the Debtor was ordered to pay a contempt fine to PAX in the amount of $134,000,000 within five days of service of Judge Ostrager's Final Order of Civil Contempt, failing which the court would "exercise its full authority under New York Judiciary Law § 753" (Friedman Dec., Ex. 5). The Debtor filed his voluntary petition the day before the contempt fine was due to be paid.

9. Notwithstanding Judge Ostrager's finding that the Debtor not only controls, but "has much more than a beneficial interest in the Lady May," as it "appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht" (February 9, 2022 Decision at 8), the Debtor continues to maintain that the Lady May is owned by an entity known as HK International Funds Investment (USA) Limited, LLC ("<u>HK USA</u>"), which is owned by his daughter, Mei Guo.

10. At a February 2, 2022 hearing before Judge Ostrager, Ms. Guo testified that HK (USA) advised her to move the Lady May out of the New York court's jurisdiction and that her brother, Qiang Guo, bought the Lady May for her and is the sole owner of HK (USA) (February 9, 2022 Decision at 5-6).

11. At the April 13, 2022 hearing on the PAX Motion, counsel for HK USA represented that HK USA's only asset was the Lady May, but later in the hearing, HK USA offered to post a $37 million cash bond in order to free the Debtor from having to further defend the PAX Motion and, if granted, from then having to confront Judge Ostrager for the Debtor's acts of contempt. A

status conference to discuss the particulars of the bond was held on April 18, 2022; if the PAX Motion cannot be resolved, the PAX Motion and the objections and responses thereto have been scheduled for a hearing on April 27, 2022.

12.     On March 16, 2022, the Debtor filed a series of applications seeking to retain Brown Rudnick LLP as his counsel, Stretto, Inc. as a claims and noticing agent, and Verdolino & Lowey, P.C. as his financial advisor.  Objections to these applications were filed by the UST, PAX, the Committee and creditors, Rui Ma and Weican Meng; at a hearing held on April 13, 2022, the Debtor withdrew his application to retain Stretto, Inc and the other applications and objections were scheduled for a continued hearing on April 27, 2022.

13.     On March 22, 2022, the Debtor filed a Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing, and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief (the "DIP Motion").

14.     By the DIP Motion and the loan for which it seeks court approval (the "DIP Loan"), the Debtor and his son, Qiang Guo (the "Son")[3], through the Son's company, HK (USA), have dangled the carrot of a postpetition loan to the Debtor of up to $8 million to fund professional fees and other administrative expenses to be incurred in this case, but it comes with termination events that leverage and improperly attempt to influence the direction of this case and the chapter 11 process.  Objections to the DIP Motion have been filed by the UST, PAX, the Committee and creditors, Rui Ma and Weican Meng.  After a hearing held on April 13, 2022, a continued hearing on the DIP Motion and the objections thereto was scheduled for April 27, 2022.

---

[3] The proposed loan is, in name, to be extended by Golden Spring (New York), Ltd. ("Golden Spring"), which the Debtor maintains is "an entity owned and controlled by [his] son" (DIP Motion ¶2).  The Debtor acknowledges that, in effect, it is his Son who is offering to provide the loan (DIP Motion ¶15) ("… the Debtor asked his son to extend additional credit to that end").

15. On March 22, 2022, the Debtor filed a Motion for Entry of an Order Authorizing (I) Employment and Payment of Professionals Utilized in the Ordinary Course, (II) Payment of Prepetition Claims, and (III) Granting Related Relief (the "OCP Motion"). The OCP Motion was denied after a hearing held on April 13, 2022.

16. In the Debtor's application to retain Brown Rudnick, it was disclosed that Brown Rudnick was paid a $1 million retainer with the proceeds of a loan to the Debtor from another one of his Son's companies, Lamp Capital, LLC.

17. Another significant asset owned by the Debtor, but which he maintains is held in trust for his Son, is his interest in the Sherry-Netherland apartment located at 781 Fifth Avenue, New York, NY, which the Debtor purchased in March 2015 for $67.5 million through Genever Holdings LLC ("Genever NY") (the "Sherry-Netherland Apartment") (*See* PAX Motion n. 36 and materials cited therein, and Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions (Kwok Dec.") ¶17).

18. Of particular relevance to the instant motion, the February 9, 2022 Decision found that:

- the Debtor had engaged in "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members" (p. 1)

- the Debtor had "secreted his assets in a maze of corporate entities and with family members" (p. 1)

- the Debtor "and his cohorts made arrangement for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas" in violation of a September 2020 restraining order (p. 2)

- the Debtor's daughter testified "that it was HK (USA) that advised her that the yacht needed to be moved to a warmer place" (p. 6)

5

- according to testimony of the managing director of the Lady May's yacht management company, he communicated with Golden Spring and HK (USA), apparently the legal titleholder, concerning the Lady May (p. 6).

19. In his declaration, the Debtor represents that among the purposes for filing his chapter 11 case were "to … (b) afford stakeholders an efficient opportunity to investigate [his] assets, liabilities, and financial affairs, given what [he] perceive[d] to be misunderstandings in that regard; [and] (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims" (Kwok Dec. ¶3).

20. HK USA filed an appearance in this matter and on April 11, 2022, HK USA filed a Statement concerning the Pax Motion, again implying its intent to challenge Judge Ostrager's rulings, and offered additional details as to the status of the Lady May. ECF No. 203.

21. On April 10, 2022, the Debtor filed a Notice of Filing of Proposed Chapter 11 Plan of Ho Wan Kwok (the "Plan," ECF No. 197), wherein the Debtor proposed that HK USA would contribute the Boat to the Creditor Trust (as defined therein) and identified HK USA as a Plan Funder, wherein HK USA would be eligible for a release under the Plan.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over the Rule 2004 Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. § 1103(c)(2), 105(a), Fed. R. Bankr. P. 2004, and D. Conn. LBR 2004-1.

## RELIEF REQUESTED

23. Pursuant to Bankruptcy Rule 2004, the Committee seeks an order, substantially in the form attached hereto authorizing: (i) the Committee to take a Rule 2004 examination of HK (USA), by a proper corporate representative; and (ii) issue a subpoena to HK (USA), substantially

in the form attached hereto as Exhibit "A" (the "Subpoena"). The Subpoena shall direct HK (USA) to: (i) produce documents responsive to a Subpoena within 14 calendar days of service of the Subpoena; and (ii) appear for an examination under oath on a date acceptable to the Committee within 21 calendar days after the production of documents by HK (USA) in compliance with the Subpoena.

## BASIS FOR RELIEF REQUESTED

24. Bankruptcy Rule 2004(a) permits "the examination of any entity." The examination, consisting of testimony and document production, "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to matter which may affect the administration of the debtor's estate," and in a chapter 11 case, "the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b) (emphasis added).

25. Section 1103(c)(2) of the Bankruptcy Code tracks Bankruptcy Rule 2004(b) by authorizing a creditors' committee to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan."

26. Bankruptcy Rule 2004(c) provides that "[t]he attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in [Bankruptcy] Rule 9016 for the attendance of witnesses at a hearing or trial." Fed R. Bankr. P. 2004(c).

27. "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Group Ltd.*, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (internal quotation and citation omitted). This includes assisting the investigator in revealing the nature and extent of the estate and in discovering assets of the debtor that may have been intentionally or unintentionally concealed. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996).

28. A third party who has a relationship with the debtor may be the subject of a Rule 2004 examination in order to aid in the discovery of assets. *See In re Ionesphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y.), *aff'd*, 17 F.3d 600 (2d Cir. 1994). "[C]ourts routinely permit the examination of witnesses having knowledge of the debtor's acts, conduct, liabilities, assets, etc." *In re Transmar Commodity Group, Ltd.*, Case No. 16-13625, 2018 WL 4006324, at *9 (Bankr. S.D.N.Y. Aug. 17, 2018) (citation omitted).

29. More specifically, it has been held by numerous court decisions that "the use of Rule 2004 discovery to identify or evaluate possible claims against [a third party] fits squarely within the scope of Rule 2004." *In re Transmar Commodity Group, Ltd.*, Case No. 16-13625, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (citing *In re Gawker Media LLC*, No. 16-11700, 2017 WL 2804870, at *6 (Bankr. S.D.N.Y. June 28, 2017), which granted a trustee's Rule 2004 discovery where the stated purpose of the request was to determine whether trustee should commence litigation against the examinees); and *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002), stating that "the investigation of potential claims on behalf of a debtor is not an improper use of Rule 2004 discovery.").

30. Indeed, it has been observed that "[l]egitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (internal quotation and citation omitted). *See also In re Symington*, 209 B.R. 678, 683-84 (Bankr. D. Md. 1997) ("obvious purposes [of Rule 2004] are the discovery of assets of the estate and the exposure of fraudulent conduct.") (citations omitted); *In re Ecam Publications, Inc.*, 131 B.R. 556, 560 (Bankr. S.D.N.Y. 1991) (rejecting argument by witnesses that trustee is improperly using Rule 2004 to take discovery in preparation for asserting claims against them and noting that Rule 2004's intended use is to "determine whether there are grounds to bring an action to recover property of the estate.")

31. The permissible scope of a Rule 2004 examination is very broad and is commonly recognized as in the nature of a "fishing expedition." *See In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002); *In re Balakis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985).

32. It has been recognized that a Rule 2004 examination may be ordered *ex parte*, s*ee In re Meticom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004), and that "[t]he Bankruptcy Court has the discretion to grant a request for a Rule 2004 examination." *In re Cambridge Analytica, LLC¸* 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019). *See also In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y.) (Rule 2004 affords the court "significant discretion").

33. When the purpose of the examination and document requests is not to gain an advantage in pending litigation or to abuse or harass, the requests should be granted. *See In re Meticom, Inc.*, 318 B.R. 263, 268 ("good cause" for Rule 2004 examination is generally "shown

if the Rule 2004 examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice").

34. There is abundant cause to authorize a Rule 2004 examination of, and document production from, HK (USA), which is likely one of corporate entities or "family members" where Judge Ostrager found the Debtor to have parked his assets or, as further found by Judge Ostrager, is among "the maze of corporate entities" or "family members" used by the Debtor to secret his assets. Additionally, the Judge Ortrager found that the Debtor not only controls, but "has much more than a beneficial interest in the Lady May," as it "appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht" (February 9, 2022 Decision at 8).

**WHEREFORE**, the Committee respectfully requests that the Court grant the Rule 2004 Motion by entry of an order substantially in the form annexed hereto and grant such other or further relief as it may deem just, equitable and proper.

Dated: Bridgeport, Connecticut
April 22, 2022

                              **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HO WAN KWOK**

By: */s/Irve J. Goldman*
      Irve J. Goldman
      Jonathan A. Kaplan
      Pullman & Comley, LLC
      850 Main Street, 8th Floor
      PO Box 7006
      Bridgeport, CT 06601-7006
      (203) 330-2213
      igoldman@pullcom.com

      Its Attorneys (Application Pending)