**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, | Case No:  22-50073 (JAM) |
| Debtor. | |
| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND, L.P., | Contested Matter [Doc. No. 57] |
| Movant, | |
| v. | |
| HO WAN KWOK, | |
| Respondent. | |

**STIPULATED ORDER COMPELLING**
**HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC**
**TO TRANSPORT AND DELIVER THAT CERTAIN YACHT, THE "LADY MAY"**

**WHEREAS**, Pacific Alliance Asia Opportunity Fund, L.P. ("PAX") filed that certain

Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the

Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay

Pursuant to Section 362(D)(2) of the Bankruptcy Code [Doc. No. 57] (the "Stay Relief Motion"),

seeking a determination that the automatic stay did not apply or, in the alternative, relief from the

automatic stay to permit it to proceed in that certain civil proceeding captioned *Pacific Alliance*

*Asia Opportunity Fund, L.P. v. Kwok*, Index No. 652077/2017 (the "NY Action") pending in the

Supreme Court of the State of New York, New York County (the "NY Court"), relating to efforts

to compel the debtor, Ho Wan Kwok (the "Debtor"), to cause the return of that certain vessel,

known as the "Lady May";

**WHEREAS**, HK International Funds Investments (USA) Limited, LLC ("HK USA")
filed its statement [Doc. No. 203] (the "Statement") regarding such Stay Relief Motion, wherein
HK USA—the purported "registered owner" of the Lady May—articulated its consent to the
entry of an Order compelling the return of the Lady May, and submitted therewith that certain
Declaration of Russel Stockil (the "Declaration"), the Yacht Management Director for Yachtzoo
SARL, the purported yacht management company for the Lady May, which Declaration was not
admitted into evidence;

**WHEREAS**, to secure HK USA's performance of the Delivery Obligation (as defined
below), HK USA has entered into that certain Escrow Agreement appended hereto as **<u>Exhibit A</u>**
with U.S. Bank National Association (the "Escrow Agent"), and HK USA has deposited with the
Escrow Agent the "Escrow Funds" (as that term is defined and provided for in the Escrow
Agreement) in the amount of Thirty-Seven Million ($37,000,000) Dollars, subject to the terms
and conditions of this Order and the Escrow Agreement; and

**WHEREAS**, HK USA, PAX, the Debtor and the Official Committee of Unsecured
Creditors (the "Committee") appointed in this case, and the creditors, Rui Ma and Zheng Wu,
each acting by and through their respective counsel, stipulate and consent to the entry of this
Order and resolution of the Stay Relief Motion as set forth herein; and

**WHEREAS**, there appears good and sufficient cause to enter this Order;

**NOW THEREFORE**, it is hereby **ORDERED** that:

1.      Immediately upon the completion of the service and maintenance identified in the
Statement or earlier at HK USA's discretion, HK USA shall transport and deliver the Lady May
in good working order (subject to any outstanding service and maintenance to be separately
addressed pursuant to Section 11 of this Order) to the navigable waters of Connecticut, and such

delivery shall occur on or before July 15, 2022 (the "Delivery Obligation"); provided, however, that PAX, the Committee and the creditors, Rui Ma and Zheng Wu reserve all rights to assert any claims for damages to the Lady May that occurred after March 16, 2021; provided further, that nothing contained in this Order or the relief granted herein shall be construed as an acknowledgement, admission, or agreement by PAX, the Committee or the creditors, Rui Ma and Zheng Wu that the Debtor does not control, and cannot deliver, the Lady May himself and PAX, the Committee and the creditors, Rui Ma and Zheng Wu reserve all rights with respect thereto;

2.      Commencing on May 16, 2022, and thereafter on the first and fifteenth day of each calendar month until the Lady May has been returned to the navigable waters of Connecticut, HK USA shall file with this Court a verified Progress Report Regarding the Lady May setting forth: (i) the current physical location of the Lady May; (ii) the status of the service and maintenance tasks identified in the Declaration, and the reasonable anticipated timing of the remaining service and maintenance tasks to be performed; (iii) the status of arrangements for the transport by freighter of the Lady May in accordance with this Order or, once departed from France, the status of such transport by freighter of the Lady May; and (iv) the anticipated timing of the return of the Lady May in compliance with this Order;

3.      Upon performance of the following: (i) HK USA timely satisfying the Delivery Obligation, (ii) due and proper service of a true and genuine copy of this Order being effectuated upon the then master/captain of the Lady May ("Captain") and Yachtzoo SARL, the purported yacht management company of the Lady May, (iii) a Certificate of Service attesting to such service as required hereby being filed with this Court, and (iv) a declaration made pursuant to 28 U.S.C. § 1746 by the Captain and Yachtzoo SARL consenting that each shall be subject to the

jurisdiction of this Court with respect to this Order, acknowledging that they are bound by the provisions of this Order which are applicable to them including specifically that they are restrained from removing the Lady May from the navigable waters of Connecticut until further order of this Court or until the dismissal of this bankruptcy case as provided in Section 9 of this Order, and attesting to the contemporaneous presence of the Lady May in the navigable waters of Connecticut and that the Lady May is in good working order (subject to the outstanding service and maintenance to be separately addressed pursuant to Section 11 of this Order), and (v) the Repair Reserve has been established in accordance with Section 11 of this Order, being filed with this Court (collectively, (i), (ii), (iii) (iv) and (v), the "Certification Conditions"), then HK USA shall file with this Court its declaration made pursuant to 28 U.S.C. § 1746 attesting to the performance of the Certification Conditions (the "HK USA Certification");

4.    PAX, the Committee, the Debtor and the Office of the United States Trustee shall have fifteen (15) days from the filing of the HK USA Certification to object to the HK USA Certification *solely* for the reason—established by a declaration made pursuant to 28 U.S.C. § 1746–that any of the Certification Conditions have, in fact, not been satisfied (an "Objection"); if no timely Objection is filed with this Court, then HK USA may provide a copy of the duly filed HK USA Certification to the Escrow Agent in accordance with the Escrow Agreement whereupon the Escrow Agent shall immediately release and transfer the Escrow Funds to HK USA in accordance with the Escrow Agreement;

5.    If an Objection is timely filed with this Court, HK USA shall not, pending further order of this Court, deliver the HK USA Certification to the Escrow Agent and this Court shall promptly schedule a hearing to determine *solely* whether HK USA failed to satisfy any of the Certification Conditions;

(i)    in the event this Court determines that HK USA satisfied the Certification Conditions then HK USA may provide a copy of the HK USA Certification to the Escrow Agent in accordance with the Escrow Agreement whereupon the Escrow Agent shall immediately release and transfer the Escrow Funds to HK USA in accordance with the Escrow Agreement;

(ii)    in the event this Court determines that HK USA failed to satisfy condition (i) of the Certification Conditions, then the provisions of Section 10 of this Order shall control the disposition of the Escrow Funds; and

(iii)    in the event this Court determines that HK USA failed to satisfy condition (ii), (iii) or (iv) of the Certification Conditions, then the Escrow Funds shall remain with the Escrow Agent subject to this Order and the Escrow Agreement until this Court either (a) determines that HK USA has thereafter satisfied conditions (ii), (iii) and (iv) of the Certificate Condition or (b) enters such other order as reasonable and necessary to ensure that the Lady May remains within the navigable waters of Connecticut subject to further order of this Court as provided in this Order; and, in the event of either (a) or (b), HK USA may then provide a copy of the HK USA Certification to the Escrow Agent in accordance with the Escrow Agreement whereupon the Escrow Agent shall immediately release and transfer the Escrow Funds to HK USA in accordance with the Escrow Agreement; for the avoidance of doubt, HK USA's failure to satisfy Certificate Conditions (ii), (iii) or (iv) shall not result in the release of the Escrow Funds to an account designated by this Court as provided in Section 8 below; and

(iv)      in the event this Court determines that HK USA failed to satisfy condition (v) of the Certification Conditions, then the Escrow Funds shall remain with the Escrow Agent subject to this Order and the Escrow Agreement until this Court determines that the Repair Reserve has been established in accordance with Section 11 of this Order.

6.      Subject to further order of this Court depending upon the particular facts and circumstances then presented, HK USA shall maintain and pay for insurance in the limits and amounts that it has secured prior to the commencement of this case, and provide proof of insurance to the Committee and PAX within five (5) days of the entry of this Order; provided, further, however, HK USA expressly reserves and does not release, waive or relinquish its right to assert in this bankruptcy case an administrative claim including, but not limited to, on account of any benefit conferred by HK USA in connection with the Lady May on or after HK USA's satisfaction of the Delivery Obligation, subject to the objection of any party to this Order or party in interest.

7.      Upon satisfaction of the Delivery Obligation, the Debtor and HK USA and its officers, agents, servants, employees, and attorneys, as well as any and all other persons who are in active concert or participation with HK USA and the Debtor, including, but not limited to, the Captain and Yachtzoo SARL (collectively, the "HK USA Parties"), shall keep and maintain at all times the Lady May physically present in the navigable waters of Connecticut, subject to the provisions of this Order and any further order of this Court upon motion of any party-in-interest, and entered after notice and a hearing.  In the event the HK USA Parties breach this Section 7 of this Order, all other parties in interest, including but not limited to the Committee, PAX, and the two creditors, Rui Ma and Zheng Wu, reserve any and all rights and remedies to seek relief from

this Court, including but not limited to seeking contempt or relief from the autormatic stay to proceed in the NY Action;

8.      HK USA shall not (i) terminate the Captain or its yacht management company, or (ii) engage or hire any other Captain or yacht management company, absent further order from this Court;

9.      In the event this Court enters an order dismissing this bankruptcy case pursuant to 11 U.S.C. § 1112, the obligations, terms and conditions of this Order shall remain in full force and effect and this Court shall continue to have jurisdiction over the parties governed hereby to enforce the provisions of this Order, including, but not limited to the disposition of the Escrow Funds in accordance with this Order; provided, however, that, upon entry of an order dismissing this case and after satisfaction of the Delivery Obligation, the Debtor and/or the HK USA Parties shall transport and deliver the Lady May to the navigable waters of New York and then keep and maintain at all times the Lady May physically present in the navigable waters of New York, and the Lady May shall be subject to further order by the NY Court; provided further, that if the Delivery Obligation has not been satisfied by July 15, 2022, and the Court has entered an order dismissing this case, the Court shall enter a separate order directing the delivery of the Escrow Funds to an account designated by the NY Court with any subsequent disposition of the funds being made upon motion of any party-in-interest before the NY Court, and entered after notice and a hearing.

10.     In the event that this Court determines that HK USA failed to fully, completely, and timely perform the Delivery Obligation, then upon motion of any party-in-interest, and after notice and a hearing, if HK USA is unable able to establish good cause for the delay arising from extenuating circumstances (it being acknowledged that the inability to complete repairs to the

Lady May in France shall not constitute extenuating circumstances justifying a delay in the return of the Lady May to the navigable waters of Connecticut on or before July 15, 2022), then this Court shall enter a separate order directing the delivery of the Escrow Funds in accordance with the Escrow Agreement to an account designated by this Court, where they shall be held as security to the extent of whatever rights and interests the Debtor and/or the bankruptcy estate may hold in the Lady May, with any subsequent disposition of the funds being made upon motion of any party-in-interest, and entered after notice and a hearing, or upon the entry of a judgment (not subject to a stay) determining such rights and interests of the Debtor and/or the bankruptcy estate in the Lady May;

11.    HK USA shall cause, at its sole expense, the service and maintenance identified in the Declaration and otherwise, if necessary, to restore the Lady May to good working order to be performed either prior to the satisfaction of the Delivery Obligation or thereafter upon order entered by this Court after notice and a hearing specifically delineating the time, place and manner by which such service and maintenance shall be performed, including, but not limited to a separate cash reserve (sourced, if available, from the proceeds of the Escrow Funds) in an amount sufficient to pay the estimated costs of the uncompleted service and maintenance tasks identified in the Declaration and otherwise to restore, if necessary, the Lady May to good working order  (the "Repair Reserve") and such funds in the Repair Reserve shall not be released until the service and maintenance tasks have been completed. HK USA shall permit representatives of PAX and/or the Committee to inspect the Lady May upon reasonable request.

12.    PAX, the Debtor, the Committee, and the creditors, Rui Ma and Zheng Wu, shall not take any act to assert, create, perfect or enforce any right, title, lien or other interest in the Escrow Funds while in the possession of the Escrow Agent or their proceeds while in the

possession of HK USA or any other person, including, but not limited to, through the enforcement of any judgment or service of any prejudgment remedy or other legal process; and

13.     The Stay Relief Motion be and hereby is **RESOLVED** as set forth herein.

**IT IS SO ORDERED** at Bridgeport, Connecticut this 29th day of April, 2022.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut

# EXHIBIT

# A

# ESCROW AGREEMENT

This ESCROW AGREEMENT, dated as of April 28, 2022 (this "<u>Escrow Agreement</u>"), is by and among HK International Funds Investments (USA) Limited, LLC, a Delaware limited liability company ("<u>HK USA</u>"), the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the Bankruptcy Case, and U.S. Bank National Association, a national banking association, as escrow agent hereunder ("<u>Escrow Agent</u>" and, together with HK USA and the Committee, sometimes referred to individually as a "<u>Party</u>" or collectively as the "<u>Parties</u>").

## BACKGROUND

A.    The individual, Ho Wan Kwok (the "Debtor"), is presently the debtor and debtor-in-possession in that certain bankruptcy case captioned *In re: Ho Wan Kwok*, Case No. 22-50073 (the "<u>Bankruptcy Case</u>") presently pending before the United States Bankruptcy Court, District of Connecticut, Bridgeport Division, the Honorable Julie A. Manning presiding (the "<u>Bankruptcy Court</u>").

B.    HK USA and the Committee, as well as certain other parties thereto, have stipulated and agreed to the terms and conditions set forth in that certain [Proposed] Stipulated Order Compelling HK International Funds Investments (USA) Limited, LLC To Transport and Deliver That Certain Yacht, The "Lady May" ("<u>Stipulated Order</u>").

C.    Solely as between HK USA and the Committee, capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Stipulated Order.

D.    The Stipulated Order provides that, among other things, HK USA shall deposit the Escrow Funds (as defined below in <u>Section 3</u>) contemporaneously with the execution of this Escrow Agreement into a segregated escrow account to be held by Escrow Agent for the purpose of securing the performance of the "Delivery Obligation" as provided for in Stipulated Order.

E.    Escrow Agent has agreed to accept, hold, and disburse the Escrow Funds in accordance with the terms of this Escrow Agreement.

F.    HK USA has appointed HK USA Representative(s) (as defined below in <u>Section 1</u>) to represent HK USA for all purposes in connection with the Escrow Funds and this Escrow Agreement.

G.    The Committee has appointed the Committee Representative (as defined below in <u>Section 1</u>) to represent the Committee for all purposes in connection with the Escrow Funds and this Escrow Agreement.

## PROVISIONS

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, for themselves, their successors and assigns, hereby agree as follows:

-1-

1.    <u>Definitions</u>.  The following terms shall have the following meanings when used herein:

a.    "<u>Business Day</u>" means any day other than a Saturday or Sunday in the United States, or any day on which the Federal Reserve Bank located in New York, New York is closed.

b.    "<u>Committee Representative(s)</u>" shall mean the person(s) so designated on <u>Schedule B-2</u> hereto or any other person designated in a writing signed by the Committee and delivered to Escrow Agent and the other Parties in accordance with the notice provisions of this Escrow Agreement, to act as the Committee's representative(s) under this Escrow Agreement.

c.    "<u>HK USA Representative(s)</u>" shall mean the person(s) so designated on <u>Schedule B-1</u> hereto or any other person designated in a writing signed by HK USA and delivered to Escrow Agent and the Parties in accordance with the notice provisions of this Escrow Agreement, to act as HK USA's representative(s) under this Escrow Agreement.

d.    "<u>HK USA Certification</u>" shall mean the "HK USA Certification" as defined by and in accordance with the Stipulated Order.

e.    "<u>Escrow Account</u>" shall mean a segregated account, which shall secure the performance of the Delivery Obligation of HK USA as provided in the Stipulated Order.

f.    "<u>Escrow Period</u>" shall mean the period commencing on the date hereof and ending at the close of Escrow Agent's Business Day on the date all of the Escrow Funds have been distributed by Escrow Agent pursuant to the terms hereof.

2.    <u>Appointment of and Acceptance by Escrow Agent</u>.  HK USA hereby appoints Escrow Agent to serve as escrow agent hereunder.  Escrow Agent hereby accepts such appointment and, upon receipt by wire transfer of the Escrow Funds in accordance with <u>Section 3</u> below, agrees to hold, invest and disburse the Escrow Funds in accordance with this Escrow Agreement.

3.    <u>Deposit of Escrow Funds</u>.  Simultaneously with the execution and delivery of this Escrow Agreement, HK USA will transfer cash in the amount of Thirty-Seven Million ($37,000,000) Dollars by wire transfer of immediately available funds (such amount, together with any interest and other income thereon (collectively "<u>Earnings</u>"), the "<u>Escrow Funds</u>"), to an account designated by Escrow Agent (the "<u>Escrow Account</u>").  The Escrow Account will be maintained as a segregated and separately named and numbered account.

4.    <u>Disbursements of Escrow Funds</u>.

a.    Escrow Agent shall disburse the Escrow Funds at any time upon receipt of, and in accordance with, (i) the HK USA Certification, accompanied by a certificate executed by HK USA's counsel, Zeisler & Zeisler, P.C., Bridgeport, Connecticut, to the effect that such HK USA Certification has been duly submitted to the Escrow Agent in accordance with the Stipulated Order, upon which documents Escrow Agent shall conclusively rely, (ii) a final, non-

appealable order entered by the Bankruptcy Court on or after July 16, 2022, directing delivery of the Escrow Funds, accompanied by a certificate executed by the Party requesting disbursement to the effect that such order of the Bankruptcy Court is a final, non-appealable order of the Bankruptcy Court, upon which certificate Escrow Agent shall conclusively rely (a "Final Order"), (iii) a final, non-appealable award, order, decision, judgment or ruling of an arbitrator or court of competent jurisdiction entered on or after July 16, 2022, determining the rights of HK USA, the Debtor and the Committee, creditors of the Debtor, including, but not limited to, Pacific Alliance Asia Opportunity Fund, L.P., an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands ("PAX"), with respect to the Escrow Funds or a portion thereof and directing delivery of the Escrow Funds, accompanied by a certificate executed by the Party requesting disbursement to the effect that such award, order, decision, judgment or ruling of an arbitrator or court is a final, non-appealable award, order, decision, judgment or ruling of an arbitrator or court of competent jurisdiction upon which certificate Escrow Agent shall conclusively rely (a "Final Determination") or (iv) an order not subject to any stay entered by the Bankruptcy Court on or after July 16, 2022, directing delivery of the Escrow Funds in accordance with Section 9 of the Stipulated Order, accompanied by a certificate executed by the Party requesting disbursement to the effect that such order of the Bankruptcy Court is an order of the Bankruptcy Court not subject to any stay, upon which certificate Escrow Agent shall conclusively rely (a "Section 9 Order"). The Party requesting disbursement shall provide a copy of its certificate simultaneously via e-mail to all other Parties in accordance with Section 15 of this Escrow Agreement and Escrow Agent shall, prior to any disbursement, confirm based solely upon its review of such e-mail full compliance with the notice obligations set forth in this sentence. Such HK USA Certification, Final Order, Final Determination, Section 9 Order (or certificate accompanying such HK USA Certification, Final Order, Final Determination Section 9 Order), as the case may be, shall contain complete payment instructions, including wiring instructions or an address to which a check shall be sent.

b.    Prior to any disbursement, Escrow Agent shall have received reasonable identifying information regarding any recipient(s) of such disbursement(s) such that Escrow Agent may comply with its regulatory obligations and commercially reasonable business practices, including without limitation a completed original United States Internal Revenue Service ("IRS") Form W-9 or IRS Form W-8, as applicable.  All disbursements of funds from the Escrow Funds shall be subject to the fees and claims of Escrow Agent pursuant to Section 10 and Section 11.

c.    Escrow Agent shall not disburse any Escrow Funds except as provided herein.

5.    Suspension of Performance; Disbursement into Court.  If, at any time, (a) there shall exist any dispute between HK USA and the Committee with respect to the holding or disposition of all or any portion of the Escrow Funds or any other obligations of Escrow Agent hereunder, (b) Escrow Agent is unable to determine, in good faith, the proper disposition of all or any portion of the Escrow Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or (c) HK USA and the Committee have not, within sixty (60) calendar days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 7, appointed a successor escrow agent to act hereunder, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

i.      suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Escrow Agreement with respect to such Escrow Funds subject to such dispute or uncertainty until Escrow Agent shall have received the HK USA Certification, the Final Order, Final Determination or the Section 9 Order, as the case may be, (together with the certificate contemplated by Section 4(a) hereof to accompany the same) directing delivery of such portion of the Escrow Funds, in which event Escrow Agent shall disburse such portion of the Escrow Funds in accordance with such HK USA Certification, the Final Order, the Final Determination or the Section 9 Order (and such certificate), or until a successor escrow agent shall have been appointed; or

ii.      petition (by means of an interpleader action or any other appropriate method) any court in accordance with <u>Section 14</u>, for instructions with respect to such dispute or uncertainty, and to the extent required or permitted by Law, pay into such court, for holding and disposition in accordance with the instructions of such court, all Escrow Funds subject to such dispute or uncertainty after deduction and payment to Escrow Agent of all documented out-of-pocket fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

Escrow Agent shall have no liability to HK USA or the Committee, or any HK USA Representative or the Committee Representative, or their respective owners, shareholders or members or any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of the Escrow Funds or any delay in or with respect to any other action required or requested of Escrow Agent, unless caused by the bad faith, willful misconduct or gross negligence of Escrow Agent.

6.      <u>Investment of Funds</u>.  Escrow Agent is directed to invest and reinvest the Escrow Funds in the investment identified in <u>Schedule C</u>.   HK USA and the Committee acknowledge that Escrow Agent does not have a duty nor will it undertake any duty to provide investment advice. All investments shall be made in the name of Escrow Agent. Notwithstanding anything to the contrary contained herein, Escrow Agent may, without notice to HK USA and the Committee sell or liquidate any of the foregoing investments at any time for any disbursement of Escrow Funds pursuant to <u>Section 4</u> hereof.  All investment Earnings shall become part of the Escrow Funds and investment losses shall be charged against the Escrow Funds.  Escrow Agent shall not be liable or responsible for loss in the value of any investment made pursuant to this Escrow Agreement, or for any loss, cost or penalty resulting from any sale or liquidation of the Escrow Funds unless such loss, cost or penalty is directly caused by the gross negligence, bad faith or willful misconduct of Escrow Agent.  With respect to any Escrow Funds received by Escrow Agent after three  o'clock, p.m., New York City  Time, Escrow Agent shall not be required to invest such funds or to effect any investment instruction until the next day upon which banks in St. Paul, Minnesota and the New York Stock Exchange are open for business.  Escrow Agent has no responsibility whatsoever to determine the market or other value of any investment and makes no representation or warranty as to the accuracy of any such valuation. To the extent applicable regulations grant rights to receive brokerage confirmations for certain security transactions, HK USA and the Committee waive receipt of such confirmations.

7.    <u>Resignation/Removal of Escrow Agent</u>.  Escrow Agent may (a) resign and be discharged from the performance of its duties hereunder at any time by giving sixty (60) calendar days' prior written notice to HK USA and the Committee specifying a date when such resignation shall take effect, or (b) be removed as Escrow Agent hereunder by HK USA and the Committee upon sixty (60) calendar days' prior written notice executed by HK USA  and the Committee to Escrow Agent.  Upon any such notice of resignation or removal, HK USA shall appoint a successor escrow agent hereunder acceptable in writing by the Committee or as approved by order of the Bankruptcy Court prior to the effective date of such resignation or removal.  If HK USA fails to appoint a successor escrow agent within such time, Escrow Agent shall have the right to petition the Bankruptcy Court to appoint a successor escrow agent, and all documented out-of-pocket costs and expenses (including, without limitation, reasonable attorneys' fees) related to such petition shall be paid by HK USA. The resigning or removed Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all Escrow Funds to the successor escrow agent, after making copies of such records as the resigning or removed Escrow Agent deems advisable after deduction and payment to Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.  After any resigning or removed Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

8.    <u>Binding Effect; Successors</u>.  This Escrow Agreement shall be binding upon the respective Parties and their heirs, executors, successors and permitted assigns.  If Escrow Agent consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business (including the Escrow Account contemplated by this Escrow Agreement) to another corporation, the successor or transferee corporation shall be the successor escrow agent without further act.

9.    <u>Liability of Escrow Agent</u>.  Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied.  Escrow Agent has no fiduciary or discretionary duties of any kind.  Escrow Agent shall have no liability under and no duty to inquire as to the provisions of, and shall not be charged with knowledge of any document other than this Escrow Agreement, including without limitation the Stipulated Order and any pleading or other document in the Bankruptcy Case and any other agreement between any or all of the Parties or any other persons even though reference thereto may be made herein, whether or not a copy of such document has been provided to Escrow Agent.  Escrow Agent shall not be liable for any action taken or omitted by it hereunder, except to the extent that a court of competent jurisdiction determines that Escrow Agent's gross negligence, bad faith or willful misconduct was the cause of any loss to HK USA the Committee.  Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement.  Escrow Agent shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein or in the HK USA Certification, Final Order, Final Determination or Section 9 Order.  Escrow Agent may rely in good faith upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall, in good faith, believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same.  In no event shall Escrow Agent be liable for incidental,

indirect, special, consequential or punitive damages or penalties (including, but not limited to lost profits), even if Escrow Agent has been advised of the likelihood of such damages or penalty and regardless of the form of action. Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control, including, without limitation, acts of God, strikes, lockouts, riots, acts of war or terror, epidemics, governmental regulations, fire, communication line failures, computer viruses, attacks or intrusions, power failures, earthquakes or other natural disasters. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, the Escrow Account, this Escrow Agreement or the Stipulated Order, or to appear in, prosecute or defend any such legal action or proceeding or to take any other action that in Escrow Agent's sole judgement may expose it to potential expense or liability. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving any Party, and shall incur no liability and shall be fully protected in acting in good faith in accordance with the written opinion and instructions of such counsel, and shall be indemnified to the extent provided in <u>Section 10</u>. HK USA and the Committee agree to use reasonable efforts to perform or procure the performance of all further acts and things, and execute and deliver such further documents, as may be required by applicable Law or as Escrow Agent may reasonably request in connection with its duties hereunder. When any action is provided for herein to be done on or by a specified date that falls on a day other than a Business Day, such action may be performed on the next ensuing Business Day.

Escrow Agent is authorized, in its sole discretion, to comply with final and non-appealable orders issued or process entered by any court with respect to the Escrow Funds, which orders or process Escrow Agent is advised in writing by legal counsel may be binding upon it. If any portion of the Escrow Funds is at any time attached, garnished or levied upon under any final and non-appealable court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any final and non-appealable court order, or in case any final and non-appealable order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised in writing by legal counsel selected by it is binding upon it without the need for appeal or other action; and if Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the other Parties or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

10. <u>Indemnification of Escrow Agent</u>. HK USA covenants and agrees to indemnify Escrow Agent (and its directors, officers, employees and affiliates) and to hold Escrow Agent (and its directors, officers, employees and affiliates) harmless against any reasonable documented out-of-pocket damages, costs and expenses (including, but not limited to, reasonable documented out-of-pocket attorneys' fees) arising from or out of, directly or indirectly, any claims (including those made by HK USA or the Committee) or liability resulting from its actions in good faith as Escrow Agent pursuant hereto; *provided*, that such covenant and agreement does not extend to, and Escrow Agent shall not be indemnified with respect to, such costs, expenses, losses and damages incurred or suffered by Escrow Agent that are directly caused by its own gross negligence, bad faith or willful misconduct; *provided, further*, that to the extent such costs,

expenses and damages result from or are attributable to a Party's failure to provide fully executed IRS Forms W-9 or W-8, as applicable, pursuant to <u>Section 4(e)</u>, such Party shall be solely responsible for indemnifying the Escrow Agent for such costs, expenses and damages. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

11.    <u>Compensation of Escrow Agent</u>. HK USA agrees to compensate Escrow Agent for its services hereunder in accordance with <u>Schedule A</u> attached hereto. The obligations of HK USA under this <u>Section 11</u> shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent. HK USA grants Escrow Agent a security interest in and lien upon the Escrow Funds with respect to any compensation, reimbursement or indemnification owed to Escrow Agent hereunder.

12.    <u>Representations and Warranties</u>. HK USA and the Committee each, severally and not jointly, represent and warrant to Escrow Agent that such Party has full legal capacity, power and authority to execute and deliver this Escrow Agreement and to perform its obligations hereunder; and this Escrow Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws of general application affecting enforcement of creditors' rights generally and Laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

13.    <u>Identifying Information</u>. To help the government fight the funding of terrorism and money laundering activities, federal Law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust, or other legal entity, Escrow Agent requires documentation to verify its formation and existence as a legal entity. Escrow Agent may ask to see licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation. The Parties acknowledge that a portion of the identifying information set forth herein is being requested by Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "<u>Act</u>"), and each Party agrees to provide any additional information reasonably requested by Escrow Agent as required by the Act or any other legislation or regulation to which Escrow Agent is subject, in a timely manner.

14.    <u>Consent to Jurisdiction and Venue</u>. In the event that any Party commences a lawsuit or other proceeding relating to or arising from this Escrow Agreement, the Parties agree to the personal jurisdiction by and venue in the federal courts situated in the District of Connecticut, including the U.S. Bankruptcy Court, and the Parties waive any objection to such jurisdiction or venue. Each of the Parties hereby absolutely and irrevocably consents and submits to the jurisdiction and venue of such federal courts in connection with any actions or proceedings brought against any Parties (or each of them) arising out of or relating to this Escrow Agreement. In any such action or proceeding, the Parties absolutely and irrevocably (a) waive any objection to jurisdiction or venue, (b) waive personal service of any summons, complaint, declaration or other process, and (c) agree that the service thereof may be made by certified or registered first-class mail directed to such Party, as the case may be, at their respective addresses in accordance with <u>Section 15</u>.

-7-

15.    <u>Wire Instruction and Notices</u>.  All notices, approvals, consents, requests, and other communications hereunder shall be in writing (provided that any communication sent to Escrow Agent hereunder must be in the form of a document that is signed manually or by way of a digital signature provided by DocuSign) and shall be delivered: (a) by hand delivery, (b) by FedEx or other similar overnight courier service, or (c) via email (to the extent the recipient has an email address below) by way of a PDF attachment thereto.  Notice made in accordance with this <u>Section 15</u> shall be deemed delivered on (a) receipt if delivered by hand or email (proving proof of sending), or (b) the next Business Day after deposit with an overnight courier service if delivered for next day delivery.    Such notices shall be sent to the applicable Party or Parties at the address specified below:

**<u>If to HK USA, at</u>:**

Zeisler & Zeisler, P.C.
10 Middle St., 15th Fl.
Bridgeport, CT 06604

Attn.: Stephen M. Kindseth, Esq. and
Aaron Romney, Esq.

Email:

Stephen M. Kindseth, Esq. (skindseth@zeislaw.com) and

Aaron Romney, Esq. (aromney@zeislaw.com)

With copy to:

Ho Wan Kwok c/o
William R. Baldiga (WBaldiga@brownrudnick.com) and
Jeffrey L. Jonas (JJonas@brownrudnick.com)

**<u>If to the Committee, at</u>:**

Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06601
Attn: Irve Goldman

Email:
Irve Goldman, Esq. (igoldman@pullcom.com) and
Jonathan Kaplan, Esq. (jkaplan@pullcom.com)

With copy to:

Samuel Nunberg, snunberg@winstonashe.com)

And with copy to:

Pacific Alliance Asia Opportunity Fund, L.P.
Email: jlewis@pagasia.com

Peter Friedman, Esq. (pfriedman@omm.com)

Carollynn H.G. Callari, Esq. (ccallari@callaripartners.com)

**If to Escrow Agent at:**

U.S. Bank National Association, as Escrow Agent
Attn:  Global Corporate Trust
185 Asylum Street, 27th Floor
Hartford, CT  06103
Email: laurel.casasanta@usbank.com

and to:

U.S. Bank National Association
Attn:    Jeffrey Biehn
Trust Finance Management, Escrow Dept.
60 Livingston Street
St. Paul, MN 55107
Email:  jeffrey.biehn@usbank.com and
tfmcorporateescrowshared@usbank.com

whose wire transfer instructions for the Escrow Funds are as follows:

RBK:  U.S. Bank N.A
ABA:  091000022
BNF:   U.S. Bank TFM Escrow
        777 E. Wisconsin Avenue
        Milwaukee, WI 53202-5300
Acct:   104793255431
FFC:   HK International Funds Investments (USA) Limited, LLC Escrow
        # 216260000

or to such other address as each Party may designate for itself by like notice and unless otherwise provided herein shall be deemed to have been given on the date received.  The other Parties agree to assume all risks arising out of the use of electronic methods to submit documentation contemplated by Section 4 of this Escrow Agreement and any other instructions or directions to

Escrow Agent, including without limitation the risk of Escrow Agent acting on unauthorized instructions, and the risk of interception and misuse by third parties.

16.    <u>Amendment, Waiver and Assignment</u>.  None of the terms or conditions of this Escrow Agreement may be changed, waived, modified, discharged, terminated or varied in any manner whatsoever unless ordered by the Bankruptcy Court or such other court having jurisdiction over this Escrow Agreement and the Escrow Funds.  No course of conduct shall constitute a waiver of any of the terms and conditions of this Escrow Agreement, unless such waiver is specified in writing, and then only to the extent so specified.  A waiver of any of the terms and conditions of this Escrow Agreement on one occasion shall not constitute a waiver of the other terms of this Escrow Agreement, or of such terms and conditions on any other occasion. Except as provided in <u>Section 8</u>, this Escrow Agreement may not be assigned by any Party without the written consent of the other Parties.

17.    <u>Severability</u>.  To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

18.    <u>Governing Law</u>.  This Escrow Agreement shall be construed and interpreted in accordance with the internal Laws of the State of Connecticut without giving effect to the conflict of laws principles thereof.

19.    <u>Entire Agreement, No Third Party Beneficiaries.</u>  This Escrow Agreement constitutes the entire agreement between the Parties relating to the holding, investment and disbursement of the Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to the Escrow Funds. Except as provided in <u>Section 10</u>, nothing in this Escrow Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this Escrow Agreement.

20.    <u>Execution in Counterparts, Facsimiles</u>.  This Escrow Agreement may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction. The delivery of copies of this Escrow Agreement or any Joint Written Direction and their respective signature pages by PDF or facsimile or other electronic transmission (including any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) shall constitute effective execution and delivery as to the Parties and may be used in lieu of originals for all purposes.

21.    <u>Termination</u>.  This Escrow Agreement shall terminate upon the distribution of all the Escrow Funds pursuant to any applicable provision of this Escrow Agreement.

22.    <u>Dealings</u>.  Escrow Agent and any stockholder, director, officer or employee of Escrow Agent may buy, sell, and deal in any of the securities of HK USA and become pecuniarily interested in any transaction in which HK USA may be interested, and contract and lend money to HK USA and otherwise act as fully and freely as though it were not Escrow Agent under this Escrow Agreement.  Nothing herein shall preclude Escrow Agent from acting in any other capacity for HK USA or for any other entity.

23.    <u>Statements</u>.  Escrow Agent will furnish HK USA, and the Committee monthly cash transaction statements that include detail for all investment transactions made by Escrow Agent.

24.    <u>Tax Reporting</u>.  Escrow Agent shall have no responsibility for the tax consequences of this Escrow Agreement and HK USA and the Committee shall consult with independent counsel concerning any and all tax matters.  HK USA shall provide Escrow Agent with a completed original IRS Form W-9 or IRS Form W-8, as applicable, for each payee, together with any other documentation and information reasonably requested by Escrow Agent in connection with Escrow Agent's reporting obligations under applicable IRS regulations. If such tax documentation is not so provided, Escrow Agent shall withhold taxes as required by the IRS. The Parties agree for all tax purposes that HK USA shall be treated as the owner of the Escrow Account. HK USA and the Committee have determined that any Earnings shall be reported on an accrual basis one hundred percent (100%) for the account of HK USA, and reported by Escrow Agent as earned as such on an IRS Form 1099 or other applicable form. The Parties further agree that to the extent that IRS imputed interest regulations apply, HK USA shall so inform Escrow Agent, and provide Escrow Agent with all imputed interest calculations as HK USA deems appropriate.  Escrow Agent shall rely solely on such provided calculations and information and shall have no responsibility for the accuracy or completeness of any such calculations or information.

25.    <u>WAIVER OF TRIAL BY JURY</u>.  EACH PARTY HEREBY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS ESCROW AGREEMENT OR (B) IN ANY WAY IN CONNECTION WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES TO THIS ESCROW AGREEMENT OR IN CONNECTION WITH THIS ESCROW AGREEMENT OR THE EXERCISE OF ANY SUCH PARTY'S RIGHTS AND REMEDIES UNDER THIS ESCROW AGREEMENT OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES TO THIS ESCROW AGREEMENT, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE. EACH OF THE PARTIES HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT EACH HAS REVIEWED OR HAD THE OPPORTUNITY TO REVIEW THIS WAIVER WITH ITS RESPECTIVE LEGAL COUNSEL, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH SUCH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, THIS ESCROW AGREEMENT MAY BE FILED AS A CONSENT BY ALL PARTIES TO A TRIAL BY THE COURT.

26.    <u>Publicity</u>.  Except to the extent required by applicable Law, no Party will (a) use any other Party's proprietary indicia, trademarks, service marks, trade names, logos, symbols, or brand names, or (b) otherwise refer to or identify any other Party in advertising, publicity releases, or promotional or marketing publications, or correspondence to third parties without, in each case, securing the prior written consent of such other Party.

27.    <u>No Conflicts</u>.  In the event the terms of this Escrow Agreement conflict with the terms of the Stipulated Order as to the rights and obligations of HK USA and the Committee,

then as between HK USA and the Committee (but not as to the Escrow Agent), the terms of the Stipulated Order shall control and supersede any conflicting terms herein.

        28.    <u>No Right to Escrow Funds</u>. Except as otherwise expressly set forth herein, HK USA and the Committee shall not have any right, title or interest in or possession of any of the Escrow Funds.  Without limiting the generality of the foregoing: (i) HK USA and the Committee shall not have the ability to pledge, convey, hypothecate or grant a security interest in any portion of the Escrow Funds unless and until such portion of the Escrow Funds have been disbursed to such person in accordance with the provisions of this Escrow Agreement and (ii) until the Escrow Funds have been disbursed in accordance with the provisions of this Escrow Agreement, the Escrow Agent shall be in sole possession of the Escrow Funds and will not act or be deemed to act as custodian for any Party for purposes of perfecting a security interest therein.

*[Signature pages immediately follow.]*

**IN WITNESS WHEREOF**, the Parties have caused this Escrow Agreement to be executed as of the date first above written.

**HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC**:


By: _____
Name: Mei Guo
Title: Sole Member

**IN WITNESS WHEREOF**, the Parties have caused this Escrow Agreement to be executed as of the date first above written.

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, APPOINTED IN THE BANKRUPTCY CASE, *IN RE:* *HO WAN KWOK*, CASE NO. 22-50073(JAM)**


By: _____
Name: Samuel Nunberg, Chairman

**IN WITNESS WHEREOF**, the Parties have caused this Escrow Agreement to be executed as of the date first above written.

**ESCROW AGENT**:

**U.S. BANK NATIONAL ASSOCIATION**
as Escrow Agent

By: _____
Name:  Laurel Casasanta
Title:   Vice President

**SCHEDULE A**

**Escrow Agent Compensation**

| | |
|---|---|
| Acceptance Fee | $750.00 |
| Administration Fee | $2,500.00 |
| Trades/Investments | $65.00 per trade* |
| Wire Fees | $35.00 each* |
| Counsel Fee | Billed as incurred |
| Out-of-Pocket Expenses | Billed as incurred |

\* Waived if funds are invested in U.S. Bank MMDA

**Extraordinary Administration Expenses:**
Fees for services not specifically set forth in this schedule will be determined by appraisal.  Such services may include, but not be limited to, additional responsibilities and services incurred in connection with amendments or extensions of the governing documents, unusual time spent as in the case of litigation.

**Out-of-Pocket Expenses:**
Any out-of-pocket expenses incurred by us will be billed at cost.  These items will include, but not be limited to, reasonable legal costs, travel expenses, document duplication and facsimiles, courier services, etc.

**Escrow Agent's Counsel:**
The Escrow Agent has engaged Shipman & Goodwin LLP to represent it in this matter.  Escrow Agent's reasonable Counsel fees and disbursements will be billed at cost directly by Shipman & Goodwin LLP.

**Payment Upon Execution of this Agreement**:
The Acceptance Fee and the Administration Fee are due upon closing of the transaction without further invoice from the Escrow Agent to the responsible party.  Wiring instructions for such payment are as set forth in Section 15.  To the extent that fees are included in the incoming wire(s) of the escrow amounts and deposited in the Escrow Funds, the Escrow Agent is hereby authorized to debit such fees from the Escrow Funds.

## SCHEDULE B-1

The following person is a HK USA Representative authorized to execute documents and direct Escrow Agent as to all matters under this Escrow Agreement, including fund transfers, address changes and contact information changes, on HK USA's behalf (only one signature required):


| Stephen M. Kindseth | | (203) 394-1270 |
| --- | --- | --- |
| Name | Specimen signature | Telephone No. |

**SCHEDULE B-2**

The following person is the Committee Representative authorized to execute documents and direct Escrow Agent as to all matters under this Escrow Agreement, including fund transfers, address changes and contact information changes, on Committee's behalf (only one signature required):

Jonathan A. Kaplan _____   _____   (860) 604-9978 _____

Name                                    Specimen signature                Telephone No.

## SCHEDULE C

## U.S. BANK NATIONAL ASSOCIATION
### Investment Authorization Form

## U.S. BANK MONEY MARKET DEPOSIT ACCOUNT

### Description and Terms

The U.S. Bank Money Market Deposit Account is a U.S. Bank National Association ("U.S. Bank") interest-bearing money market deposit account designed to meet the needs of U.S. Bank's Corporate Trust Escrow Group and other Corporate Trust customers of U.S. Bank. Selection of this investment includes authorization to place funds on deposit and invest with U.S. Bank.

U.S. Bank uses the daily balance method to calculate interest on this account (actual/365 or 366). This method applies a daily periodic rate to the principal balance in the account each day. Interest is accrued daily and credited monthly to the account. Interest rates are determined at U.S. Bank's discretion, and may be tiered by customer deposit amount.

The owner of the account is U.S. Bank as agent for its Corporate Trust customers. U.S. Bank's Corporate Trust Escrow Group performs all account deposits and withdrawals. Deposit accounts are FDIC insured per depositor, as determined under FDIC Regulations, up to applicable FDIC limits.

U.S. BANK IS NOT REQUIRED TO REGISTER AS A MUNICIPAL ADVISOR WITH THE SECURITIES AND EXCHANGE COMMISSION FOR PURPOSES OF COMPLYING WITH THE DODD-FRANK WALL STREET REFORM & CONSUMER PROTECTION ACT. INVESTMENT ADVICE, IF NEEDED, SHOULD BE OBTAINED FROM YOUR FINANCIAL ADVISOR.

### Automatic Authorization

In the absence of specific written direction to the contrary, U.S. Bank is hereby directed to invest and reinvest proceeds and other available moneys in the U.S. Bank Money Market Deposit Account. The customer(s) confirm that the U.S. Bank Money Market Deposit Account is a permitted investment under the operative documents and this authorization is the permanent direction for investment of the moneys until notified in writing of alternate instructions.