## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

**NOTICE OF FILING OF (A) FURTHER AMENDED
PROPOSED ORDER AND DIP LOAN AGREEMENT;
AND (B) BLACKLINE OF PROPOSED ORDER AND DIP LOAN
AGREEMENT GRANTING DEBTOR'S MOTION FOR ENTRY OF INTERIM
DIP ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN UNSECURED,
SUBORDINATED POSTPETITION FINANCING AND (II) SCHEDULING
FURTHER STATUS CONFERENCE, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on March 22, 2022, Mr. Ho Wan Kwok, the

debtor and debtor-in-possession ("Mr. Kwok" or the "Debtor") in the above-captioned chapter

11 case, by and through his undersigned counsel, filed the *Debtor's Motion for Entry of Interim

and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated

Postpetition Financing and (II) Scheduling Interim and Final Hearings, and (III) Granting

Related Relief* (the "Motion") [Docket No. 117][1].

**PLEASE TAKE FURTHER NOTICE** that on April 10, 2022 the Debtor filed

the *Omnibus Reply of Debtor in Support of Entry of Order Approving DIP Facilities* (the

"Reply") [Docket No. 198] in reply to objections raised by the Unites States Trustee [Docket No.

160], Official Committee of Unsecured Creditors (the "Committee") [Docket No. 168], certain

individual creditors [Docket No. 172], and Pacific Alliance Asia Opportunity Fund L.P. ("PAX")

[Docket No. 179].  In support of the Reply, the Debtor submitted the revised proposed order

---

[1]    Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Motion and
Reply.

attached thereto as Exhibit A (the "Revised Proposed Order"), and the revised DIP Loan

Agreement attached thereto as Exhibit C (the "Revised DIP Loan Agreement") which

incorporated comments received from the DIP Lender.

      **PLEASE TAKE FURTHER NOTICE** that the Court conducted hearings on the

Motion on April 13 and April 27, 2022, the Debtor substantially resolved the objections of the

individual creditors and Committee prior to the April 27 hearing, and upon conclusion of that

hearing, the Court instructed the Debtor to confer with the various parties and file a further

revised proposed order and related documents.

      **PLEASE TAKE FURTHER NOTICE** that following the April 27, 2022

hearing, the Debtor conferred with Golden Spring (New York) Ltd. (the "DIP Lender"), the

Committee, PAX, and the United States Trustee regarding the form of proposed order, DIP Loan

Agreement, and budget, and the Debtor and DIP Lender agreed to incorporate all comments

thereto.

      **PLEASE TAKE FURTHER NOTICE**  that in connection with the Motion,

Reply and further comments received from the DIP Lender, the Committee, PAX, and the United

States Trustee, please find (i) a further revised form of proposed Order attached hereto as

"**Exhibit 1**";  (ii) a legal blackline of the further revised form of proposed Order against the

version as filed in the Reply, attached hereto as "**Exhibit 2**";  (iii) a further revised form of the

DIP Loan Agreement attached hereto as "**Exhibit 3**";  (iv) a legal blackline of the further revised

form of the DIP Loan Agreement against the version as filed in the Reply attached hereto as

"**Exhibit 4**"; and (v) a proposed budget attached hereto as "**Exhibit 5.**"

      **PLEASE TAKE FURTHER NOTICE** that the attached documents reflect all

comments received from the parties.  The DIP Lender, the Committee, PAX, and the United

States Trustee have each represented that they have no additional comments to the documents attached herein.  Notwithstanding the foregoing, PAX and the United States Trustee continue to object to entry of the order, and the rights of such parties to object to the relief requested are expressly preserved.

**PLEASE TAKE FURTHER NOTICE** that the Debtor intends to seek entry of the Proposed Order at the status conference scheduled for May 4, 2022 at 2:00 p.m. (Eastern Time).

Dated: May 3, 2022

**BROWN RUDNICK LLP**

By: /s/ *William R. Baldiga*
BROWN RUDNICK LLP
185 Asylum Street
Hartford, CT 06103
Attn: Dylan Kletter, Esq.
Telephone:  (860) 509-6500
Facsimile:  (860) 509-6653
Email: dkletter@brownrudnick.com

Seven Times Square
New York, NY 10036
Attn: William R. Baldiga, Esq. (*pro hac vice*)
Attn: Bennett S. Silverberg, Esq. (*pro hac vice*)
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email: wbaldiga@brownrudnick.com
        bsilverberg@brownrudnick.com

## **EXHIBIT 1**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------------X
                                                                    :
In re:                                                              :    Chapter 11
                                                                    :
   Ho Wan Kwok,                                         :    Case No. 22-50073 (JAM)
                                                                    :
                                                                    :    Date:
           Debtor. [1]   :    Time:
                                                                    :
-------------------------------------------------------------------X

### INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN UNSECURED, SUBORDINATED POSTPETITION FINANCING, (II) SCHEDULING FURTHER STATUS CONFERENCE, AND (III) GRANTING RELATED RELIEF

Upon the motion dated March 21, 2022 (the "DIP Financing Motion")[2] of the above-captioned debtor-in-possession (the "Debtor") in the above-referenced chapter 11 case (the "Chapter 11 Case") pursuant to sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2003, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the entry of an Interim DIP Order authorizing the Debtor to obtain postpetition financing from Golden Spring (New York) Ltd. ( the "DIP Lender") and granting related relief.

This Court having reviewed the DIP Financing Motion, the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions*, and all matters brought to the Court's attention at the interim hearing, which was held on April 13, 2022 and April 27, 2022 (the "Interim Hearing"); and after considering all of the pleadings filed with this Court; and after consideration of the evidence presented on the record at the Interim Hearing; and the Court having

---

[1]    Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2]    Capitalized terms used in this Interim DIP Order, unless defined herein, shall have the meanings given such terms in the DIP Financing Motion or the DIP Loan Agreement (as defined in the DIP Financing Motion).

found that due and sufficient notice of the DIP Financing Motion and the Interim Hearing was provided by the Debtor in accordance with Bankruptcy Rules 2002 and 4001(b)(1) and Local Rule 4001-2 and 9013-2; and it appearing that the relief granted by this Interim DIP Order is in the best interests of the Debtor, his estate, creditors, and all parties-in-interest, and is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

**THE COURT HEREBY FINDS AND DETERMINES:**

A.    <u>Jurisdiction; Core Proceeding; Venue</u>.    The Court has subject matter jurisdiction over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this Chapter 11 Case and the DIP Financing Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Notice</u>.  The Interim Hearing was held on April 13, 2022 pursuant to Bankruptcy Rule 4001 and Local Rule 9013-2, and the notice provided by the Debtor of the Interim Hearing and the relief requested in the DIP Financing Motion, was, under the circumstances, due and sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of this Court.

C.    <u>Purpose of DIP Financing</u>.  The Estate is in need of capital so that the Debtor and the Official Committee of Unsecured Creditors and any examiner appointed by this Court can perform their duties under 11 U.S.C. §§ 1103, 1106, 1107 and 1108 and pay fees accruing under 28 U.S.C. § 1930.

D.    <u>Good Cause</u>.  Based on the record before this Court, it appears that the terms and limitations set forth herein and in the DIP Loan Agreement (attached hereto as Exhibit A) are entirely fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with his fiduciary duties, and good cause has been shown for the entry of this Interim DIP Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

1.    **<u>Disposition</u>.**  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein.  Any objections to the DIP Financing Motion that have not previously been overruled, withdrawn or resolved are hereby overruled,  without prejudice to any party-in-interest's rights to raise further objections at any subsequent hearing on the Debtor's request for DIP Financing.  This Interim DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.  Notwithstanding the foregoing and for the avoidance of doubt, the Court has not found at this time that the DIP Loan is "extended…in good faith" within the meaning of 11 U.S.C. § 364(e), and any request for such finding and according treatment is denied without prejudice.

2.    **<u>Authorization to Borrow</u>.**

(a)    The initial DIP Loan shall be made no later than two (2) business days following entry of this Interim DIP Order, in an initial principal amount equal to $2,000,000 (the "<u>Interim DIP Loan</u>") and, thereafter, DIP Loans shall be made in subsequent advances, as may be required from time to time in accordance with the terms of the DIP Loan Documents and Orders of this Court; *provided that* (a) the aggregate principal amount of all Subsequent DIP Loans outstanding shall not exceed $3,000,000 under this Interim DIP Order, and (b) the proceeds of the DIP Facility (other than the proceeds of the Estate Contribution Loan (as defined below)) shall be used by the

Debtor and others, as applicable, in accordance with this Interim DIP Order and the DIP Loan Documents, solely for the purposes set forth herein. A budget reflecting the intended uses of the DIP Facility through May 31, 2021 is annexed hereto as <u>Exhibit B</u>. Amounts reflected in the budget are approximations only and shall not limit the Debtor's ability to make Authorized Disbursements (as defined below) hereunder.

(b)     The Estate Contribution Loan, as defined in the DIP Loan Agreement shall be made by the DIP Lender to the Debtor no later than two (2) business days following entry of this Interim DIP Order, in a principal amount equal to $1,000,000 (the "<u>Estate Contribution Loan</u>"). The proceeds of the Estate Contribution Loan shall be remitted to the Debtor Account.

3.     **<u>Authority to Execute and Deliver Necessary Documents</u>.**

The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the DIP Loans and may rely upon the Debtor's representations that the use thereof is in accordance with the requirements of this Interim DIP Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2). The Debtor's execution of the DIP Loan Documents is hereby authorized and the Debtor is immediately authorized to obtain the Interim DIP Loan, Subsequent DIP Loans, and the Estate Contribution Loan pursuant to the terms of the DIP Loan Agreement. The Debtor is further authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents to the extent required by the DIP Loan Documents and to the extent not inconsistent with this Interim DIP Order.

4.     **<u>Amendments and Modifications</u>.**  The Debtor and the DIP Lender shall not implement any amendments to or modifications of any of the DIP Loan Documents absent further Order of this Court.

5.    **Loan Proceeds; Reporting.**

(a)    On Friday of each calendar week after the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm retained by the Debtor, the Committee and any examiner then appointed shall deliver to the Debtor, the DIP Lender, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and the Committee a report of fee and/or cost accruals from the preceding week (the "Accrual Report").  The first Accrual Report from each party shall include a report of all unpaid post-Petition Date fees and/or cost accruals.

(b)    The proceeds of the Interim DIP Loan shall be remitted to the trust, IOLTA or segregated deposit account of Pullman & Comley, LLC ("P&C"), as counsel to the Committee (the "UCC Account"), and the proceeds of each Subsequent DIP Loan shall be remitted to the Debtor Account as defined in the DIP Loan Agreement.  DIP Loan proceeds remitted to the UCC Account shall remain property of the Debtor's estate until disbursed in accordance with paragraph 6 below.  In no event shall DIP Loan proceeds be disbursed to any account other than the Debtor Account or the UCC Account.  The Debtor or P&C (on behalf of the Debtor), as applicable, pursuant to paragraph 6 below, may disburse amounts from the Debtor Account (other than amounts constituting proceeds of the Estate Contribution Loan) and UCC Account, respectively, solely to the extent necessary to make the Authorized Disbursements set forth in paragraph 6 of this Interim DIP Order and the DIP Loan Documents.

(c)    No later than the 7th of each month, P&C shall provide the prior month's bank account statement for the UCC Account to counsel for the Debtor.  The Debtor's monthly operating reports, filed with this Court, shall include a copy of prior month's bank account statement for

each of the Debtor Account and the UCC Account and a summary of the Accrual Reports received by the Debtor in accordance with paragraph 5(a) hereof.

(d)      No proceeds of the Interim DIP Loan may be used to pay any claims for services rendered or fees incurred by any party or professional for the filing or prosecution of any claim, counterclaim, action, or proceeding, which seeks to obtain any order, judgment, determination, declaration or similar relief: (i) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the DIP Lender of any of its rights and remedies under this Order and/or the DIP Loan Documents; or  (iv) objecting to DIP Lender's claim or claims arising in connection with the DIP Loans in this bankruptcy case.

(e)      No proceeds of the Interim DIP Loan or any other DIP Loan shall be used to pay or reimburse the DIP Lender for any costs, expenses, or indemnification in connection with the DIP Facility.

6.      **Authorized Disbursements.**

(a)      The Debtor may utilize the proceeds of the DIP Loans (other than the Estate Contribution Loan) solely for the purposes authorized by this Interim DIP Order (as may be further amended or superseded) or other order of this Court, including to pay professional compensation and expense reimbursements, administrative priority claims, court fees, and quarterly United States Trustee fees (together, the "Authorized Disbursements").

(b)      Notwithstanding any other provision of this Interim DIP Order, the Debtor is not authorized to make any disbursements from the proceeds of the Estate Contribution Loan absent further order of this Court.

(c)      Notwithstanding any provision of this Interim DIP Order or the DIP Loan Agreement to the contrary, (i) the DIP Lender shall remit proceeds of the Interim DIP Loan directly

by wire transfer to the UCC Account promptly following entry of this Interim DIP Order and provision by Committee counsel of wire instructions to the DIP Lender; (ii) such Interim DIP Loan Proceeds shall thereafter be available solely for Authorized Disbursements to professionals retained by the Committee and/or any examiner thereafter appointed and his or her duly retained professionals; and (iii) Committee counsel shall be authorized to make such Authorized Disbursements as applicable to funds held thereby.  In respect of the foregoing and other consideration provided pursuant to the DIP Facility, and the Committee having so agreed, neither the Committee nor any member thereof shall request any termination of the Debtor's exclusive right to file a plan until 120 days after the Petition Date pursuant to 11 U.S.C. § 1121(b).

(d)     The DIP Lender shall not have any duty to ensure that the Debtor or Committee discharges any of their obligations under subparagraphs (a), (b) or (c) of this paragraph.

(e)     Any claims of the DIP Lender against the Debtor (solely as to any obligations incurred by the Debtor under this Interim DIP Order) shall be subordinated to the claims of all other creditors of the Debtor, including administrative priority claims, whether existing as of the Petition Date or accruing thereafter.

7.     **Termination Events; Remedies**.

(a) Upon or after a written notice to the Debtor, PAX, the Committee and the U.S. Trustee of the occurrence of a "Termination Event" under (and as defined in) the DIP Loan Agreement, and upon or after the filing of notice of the occurrence of such Termination Event with the Bankruptcy Court: (i), the DIP Lender's commitment to make any Subsequent DIP Loans pursuant to the DIP Loan Agreement shall be terminated, excluding, for the avoidance of doubt, the DIP Lender's obligation to fund any Escrow Funding Loan or Estate Contribution Loan required to be made pursuant to the terms of the DIP Loan Documents; and (ii) all amounts in the Debtor Account

and UCC Account, after giving effect to the Escrow Funding Loan, shall be transferred to the Professional Fees Escrow.

(b)     The rights of the DIP Lender pursuant to this Interim DIP Order shall be in addition to and cumulative with those contained in the DIP Loan Documents.

(c)     Nothing in this Interim DIP Order or the DIP Loan Documents shall be construed to grant any security interest or priority repayment rights to DIP Lender in respect of any DIP Loan Obligations.

10.     **Successors and Assigns.**  The provisions of this Interim DIP Order shall be binding upon and inure to the benefit of all parties-in-interest in the Chapter 11 case, including, without limitation, the DIP Lender, the Debtor and his respective successors and assigns, and shall inure to the benefit of the DIP Lender, the Debtor and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person.

11.     **Binding Nature of Agreement.**  Each of the DIP Loan Documents to which the Debtor are and will become parties shall constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms.  The DIP Loan Documents have been or shall be properly executed and delivered to the DIP Lender by the Debtor.

12.     **Priority of Terms.**  To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Interim DIP Order shall govern and control.

13.     **No Waiver.**  This Interim DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtor, the DIP Lender, the Committee, any creditor or

any other Estate representative may have to bring or be heard on any matter brought before this Court, including, without limitation, any claims that may be asserted by the Committee, any creditor or any other Estate representative against the DIP Lender based on any act, conduct or omission relating to the Debtor other than extension of the Interim DIP Loan, which claims may include, but not limited be to, claims based on alter ego, veil-piercing, fraudulent transfer, substantive consolidation, and aiding and abetting breach of fiduciary duty.

14.    **Notice.**   Promptly after the entry of this Interim DIP Order, the Debtor shall mail, by first class mail, a copy of this Interim DIP Order to the Notice Parties and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Interim DIP Order.

15.    **Entry of Order.**   This Interim DIP Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim DIP Order on the Court's docket in this Chapter 11 Case.

16.    **Further Status Conference.**   A status conference to consider any necessary modifications to this Interim DIP Order, including the further availability of Subsequent DIP Loans, is scheduled for [●], 2022, at [●] (ET) at the United States Bankruptcy Court for the District of Connecticut.

17.    **Retention of Jurisdiction.**   The Court has and will retain jurisdiction to enforce this Interim DIP Order according to its terms.

Dated:

     Bridgeport, Connecticut

64683968 v9-WorkSiteUS-038210/0001

# **EXHIBIT 2**

Blackline of Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------------X
                                                        :
In re:                                                  :    Chapter 11
                                                        :
    Ho Wan Kwok,                     :    Case No. 22-50073 (JAM)
                                                        :
                                                        :    Date:
       Debtor. [1]      :    Time:
                                                        :
-------------------------------------------------------------------X

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN UNSECURED, SUBORDINATED POSTPETITION FINANCING, (II) SCHEDULING ~~FINAL HEARING~~ FURTHER STATUS CONFERENCE, AND (III) GRANTING RELATED RELIEF**

Upon the motion dated March 21, 2022 (the "DIP Financing Motion")[2] of the above-captioned debtor-in-possession (the "Debtor") in the above-referenced chapter 11 case (the "Chapter 11 Case") pursuant to sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2003, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the entry of an Interim ~~DIP Order and Final~~ DIP Order authorizing the Debtor to obtain postpetition financing from Golden Spring (New York) Ltd. ("GSNY" or the "DIP Lender") ~~, scheduling and approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001~~ and 9014 of the Federal Rules of Bankruptcy Procedure ~~(as amended, the "Bankruptcy Rules") and Rules 2002-1, 4001-3, 9006-1, and 9013-1 of the Local Bankruptcy Rules for the District of Connecticut (the "Local Rules"),~~ and granting related relief.

---

[1]   Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2]   Capitalized terms used in this Interim DIP Order, unless defined herein, shall have the meanings given such terms in the DIP Financing Motion or the DIP Loan Agreement (as defined in the DIP Financing Motion).

This Court having reviewed the DIP Financing Motion, the *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions*, and all matters brought to the Court's attention at the interim hearing, which was held on April 13, 2022 and April 27, 2022 (the "Interim Hearing"); and after considering all of the pleadings filed with this Court; and after consideration of the evidence presented on the record at the Interim Hearing; and the Court having found that due and sufficient notice of the DIP Financing Motion and the Interim Hearing was provided by the Debtor in accordance with Bankruptcy Rules 2002 and 4001(b)(1) and Local Rule 4001-2 and 9013-2; and it appearing that the relief ~~requested in the DIP Financing Motion, to the extent~~ granted by this Interim DIP Order~~, is~~ ~~fair and reasonable and~~ in the best interests of the Debtor, his estate, creditors, and all parties-in-interest, and is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

**THE COURT HEREBY FINDS AND DETERMINES:**

~~A. Petition Date. On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court commencing the Chapter 11 Case. The Debtor is a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.~~

~~B. Other Estate Parties. No trustee or examiner has been appointed in this Chapter 11 Case. On March 21, 2022, the Office of the United States Trustee for the District of Connecticut (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee" pursuant to section 1102 of the Bankruptcy Code.~~

A. ~~C.~~ Jurisdiction; Core Proceeding; Venue. The Court has subject matter jurisdiction over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28

U.S.C. §§ 157(a)-(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this Chapter 11 Case and the DIP Financing Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  ~~D.~~ Notice.  The Interim Hearing was held on April 13, 2022 pursuant to Bankruptcy Rule 4001 and Local Rule 9013-2, and the notice provided by the Debtor of the Interim Hearing and the relief requested in the DIP Financing Motion, was, under the circumstances, due and sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of this Court~~, and no other notice of the relief sought at the Interim Hearing was necessary or required~~.

C.  Purpose of DIP Financing.  The Estate is in need of capital so that the Debtor and the Official Committee of Unsecured Creditors and any examiner appointed by this Court can perform their duties under 11 U.S.C. §§ 1103, 1106, 1107 and 1108 and pay fees accruing under 28 U.S.C. § 1930.

D.  Good Cause.  Based on the record before this Court, it appears that the terms and limitations set forth herein and in the DIP Loan Agreement (attached hereto as Exhibit A) are entirely fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with his fiduciary duties, and good cause has been shown for the entry of this Interim DIP Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**

~~E. Immediate Financing Need.  An ongoing need exists for the Debtor to obtain financing of the type sought herein, to maximize the value of the estate by liquidating certain litigation claims and seeking confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code.  The Debtor is unable to obtain financing in the form of a credit facility with terms preferable to those extended by the DIP Lender.  Within the timeframe required by the need to avoid irreparable harm, the Debtor can best obtain financing in the amounts required upon the terms extended by the DIP Lender.~~

1.    **Disposition.**  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein.  Any objections to the DIP Financing Motion that have not previously been overruled, withdrawn or resolved are hereby overruled,  without prejudice to any party-in-interest's rights to raise further objections at any subsequent hearing on the Debtor's request for DIP Financing.  This Interim DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.  Notwithstanding the foregoing and for the avoidance of doubt, the Court has not found at this time that the DIP Loan is "extended…in good faith" within the meaning of 11 U.S.C. § 364(e), and any request for such finding and according treatment is denied without prejudice.

2.    **Authorization to Borrow.**

F. DIP Facility.  The Debtor has requested that the DIP Lender establish a facility in favor of the Debtor (the "DIP Facility") pursuant to which the Debtor may obtain one or more loans (each, a "DIP Loan" and collectively, the "DIP Loans") through multiple advances in the aggregate principal amount of US$9,000,000, subject to the terms and limitations set forth herein and in the DIP Loan Agreement.(a)    The initial DIP Loan shall be made no later than two (2) business days following entry of this Interim DIP Order, in an initial principal amount equal to $2,000,000 (the "Interim DIP Loan") and, thereafter, DIP Loans shall be made in subsequent advances, as may be required from time to time in accordance with the terms of the DIP Loan Documents and Orders of this Court; *provided that* (a) the aggregate principal amount of all Subsequent DIP Loans outstanding, after giving effect to any Subsequent DIP Loan and Estate Contribution Loan, shall not exceed $3,000,000 prior to the entry of the Finalunder this Interim DIP Order, and (b) the proceeds of the DIP Facility (other than the proceeds of the Estate Contribution Loan (as defined in the DIP Loan Agreementbelow)) shall be used by the Debtor

and others, as applicable, in accordance with this Interim DIP Order and the DIP Loan Documents (as hereinafter defined), solely for the purposes and amounts set forth herein.  A budget reflecting the intended uses of the DIP Facility through May 31, 2021 is annexed hereto as Exhibit B.  Amounts reflected in the budget are approximations only and shall not limit the Debtor's ability to make Authorized Disbursements (as defined below) hereunder.

G. Estate Contribution Loan.(b)	The Estate Contribution Loan, as defined in the DIP Loan Agreement shall be made by the DIP Lender to the Debtor no later than two (2) business days following entry of this Interim DIP Order, in a principal amount equal to $1,000,000 (the "Estate Contribution Loan").  The proceeds of the Estate Contribution Loan shall be remitted to the Debtor Account.

H. Good Cause.  Based upon the record presented at the Interim Hearing and the record of the case, it appears that good cause has been shown for the entry of this Interim DIP Order.  The entry of this Interim DIP Order will preserve the assets of the Debtor's estate for the benefit of creditors, and is in the best interests of the Debtor and his creditors.  The terms of the proposed financing appear fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:**
3.	**Authority to Execute and Deliver Necessary Documents.**

1.	**Disposition.**  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference.  Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby reserved to the Final Hearing, without prejudice to any party-in-interest's rights to raise further objections.  This Interim DIP Order shall be valid, binding on

all parties-in-interest, and fully effective immediately upon entry.  The term of this Interim DIP Order and the DIP Loan Documents authorized hereunder shall expire, and the DIP Loan made pursuant to the DIP Loan Agreement shall mature and become due and payable in accordance with the terms of the DIP Loan Agreement.

2.    **Good Cause.**  The ability of the Debtor to obtain financing is vital to the estate of the Debtor and his creditors, so that the Debtor can maximize the value of his estate and confirm a plan of reorganization.  The Debtor's estate will be irreparably harmed if this Interim DIP Order is not entered.  Good cause has, therefore, been shown for the relief sought in the DIP Financing Motion.

3.    **Authorization of Borrowing.**  The Debtor's execution of the DIP Loan Documents is hereby authorized, ratified and affirmed.  Upon entry of this Interim DIP Order, the Debtor is immediately authorized to (a) execute the DIP Loan Documents; (b) obtain the DIP Loans pursuant to the DIP Loan Documents; and (c) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof.  The DIPThe DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the DIP Loans and may rely upon the Debtor's representations that the use thereof is in accordance with the requirements of this Interim DIP Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).  The Interim DIP Loan shall be due and payable, and shall be paid, by the Debtor in accordance with the requirements of this Interim DIP Order and the DIP Loan Documents.  The Debtor is hereby authorized and directed to pay the foregoing, in accordance with the termsDebtor's execution of the DIP Loan Documents and this Interim DIP Order, without the necessity of the Debtor or the DIP Lender filing any further application with the Court for approval or payment thereof.

is hereby authorized and the Debtor is immediately authorized to obtain the Interim DIP Loan, Subsequent DIP Loans, 4. **Authority to Execute and Deliver Necessary Documents.** The DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms with respect to the Interim DIP Loan. In furtherance of the provisions of paragraph 3 of this Interim DIP Order, and the Estate Contribution Loan pursuant to the terms of the DIP Loan Agreement. The Debtor is further authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents to the extent required by the DIP Loan Documents, in each case as may be necessary or, in the opinion of the DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Loan Documents, or as otherwise required or contemplated by the DIP Loan Documents. and to the extent not inconsistent with this Interim DIP Order.

54.   **Amendments and Modifications.** Upon entry of this Interim DIP Order, The Debtor and the DIP Lender shall not implement any amendments to or modifications of any of the DIP Loan Documents (in accordance with the terms of the applicable DIP Loan Documents) absent further Order of thethis Court.

65.   **Permitted Uses of Loan Proceeds and Cash Collateral; Reporting.**

(a)   On Friday of each calendar week after the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm retained by the Debtor, the Committee and any examiner then appointed shall deliver to the Debtor, the DIP Lender, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and the Committee a report of fee and/or cost accruals from the preceding week (the "Accrual

Report").   The first Accrual Report from each party shall include a report of all unpaid post-Petition Date fees and/or cost accruals.

(b)      The proceeds of the Interim DIP Loan shall be remitted to the trust, IOLTA or segregated deposit account of Pullman & Comley, LLC ("P&C"), as counsel to the Committee (the "UCC Account"), and the proceeds of each Subsequent DIP Loan shall be remitted to the Debtor Account, as defined in the DIP Loan Agreement.  ~~In no event shall the Debtor maintain any cash or other funds in any deposit account or securities or investment~~DIP Loan proceeds remitted to the UCC Account shall remain property of the Debtor's estate until disbursed in accordance with paragraph 6 below.  In no event shall DIP Loan proceeds be disbursed to any account other than the Debtor Account or the UCC Account.  The Debtor or P&C (on behalf of the Debtor), as applicable, pursuant to paragraph 6 below, may disburse amounts from the Debtor Account (other than amounts constituting proceeds of the Estate Contribution Loan) and UCC Account, respectively, solely to the extent necessary to ~~pay or pay into the~~make the Authorized Disbursements ~~authorized~~set forth in paragraph ~~7(a)~~6 of this Interim DIP Order and the DIP Loan Documents.

(c)      No later than the ~~Debtor~~7th of each month, P&C shall provide ~~each monthly~~the prior month's bank account statement ~~of~~for the UCC Account to counsel for the Debtor ~~Account to the DIP Lender, the Committee and the United States Trustee~~.  The Debtor's ~~Disbursement Report~~monthly operating reports, filed with this Court, shall include a copy of ~~the~~prior month's bank ~~statements~~account statement for each of the Debtor Account and ~~Disbursement Account for the applicable reporting period~~the UCC Account and a summary of the Accrual Reports received by the Debtor in accordance with paragraph 5(a) hereof.

(~~e~~d)     No proceeds of ~~any~~the Interim DIP Loan ~~made pursuant to this Order~~ may be used to pay any claims for services rendered or fees incurred by any party or professional ~~in furtherance~~for the filing or prosecution of any claim, counterclaim, action, or proceeding, ~~application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be~~which seeks to obtain any order, judgment, determination, declaration or similar relief: (i~~) invalidating, setting aside, avoiding or subordinating, in whole or in part, this Order or the DIP Loan approved by this Order; or (ii~~) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the DIP Lender of any of its rights and remedies under this Order and/or the DIP Loan Documents; ~~(iii) for money damages or equitable relief from DIP Lender;~~or (iv) objecting to DIP Lender's claim or claims arising in connection with the DIP Loans in this bankruptcy case. ~~The DIP Lender shall retain its rights as a party in interest to object to any claims of any of the Carve Out Professionals.~~

(~~f~~e)     No proceeds of the Interim DIP Loan or any other DIP Loan shall be used to pay or reimburse the DIP Lender for any costs, expenses, or indemnification in connection with the DIP Facility.

~~7~~6.     ~~Fees and Expenses of Professional Persons~~Authorized Disbursements.

(a)     ~~Except as otherwise set forth herein,~~ The Debtor ~~is authorized to use~~may utilize the proceeds of the DIP Loans (other than the Estate Contribution Loan) solely for the purposes authorized by this Interim DIP Order ~~and by the DIP Loan Agreement, or an~~(as may be further amended or superseded) or other order of this Court, including to pay ~~such~~ professional compensation and expense reimbursements, administrative priority claims, court fees, and quarterly United States Trustee fees ~~as may be required to be paid by the Debtor and/or authorized and approved by the Court, as applicable~~ (together, the "Authorized Disbursements").

(b)     Notwithstanding any other provision of this Interim DIP Order, the Debtor is not authorized to make any disbursements from the proceeds of the Estate Contribution Loan shall not be used to pay any Authorized Disbursements or any other fee or expense of the Debtor or the Estate absent further order of this Court.

(b)     The Debtor shall be authorized to make Authorized Disbursements of the proceeds of the Interim DIP Loan prior to entry of the Final DIP Order.  Notwithstanding anything to the contrary in this or any other order or the DIP Loan Documents, the Authorized Disbursements shall not be subject to the control of the DIP Lender.

(c)     Notwithstanding any provision of this Interim DIP Order or the DIP Loan Agreement to the contrary, (i) the DIP Lender shall remit proceeds of the Interim DIP Loan directly by wire transfer to the UCC Account promptly following entry of this Interim DIP Order and provision by Committee counsel of wire instructions to the DIP Lender; (ii) such Interim DIP Loan Proceeds shall thereafter be available solely for Authorized Disbursements to professionals retained by the Committee and/or any examiner thereafter appointed and his or her duly retained professionals; and (iii) Committee counsel shall be authorized to make such Authorized Disbursements as applicable to funds held thereby.  In respect of the foregoing and other consideration provided pursuant to the DIP Facility, and the Committee having so agreed, neither the Committee nor any member thereof shall request any termination of the Debtor's exclusive right to file a plan until 120 days after the Petition Date pursuant to 11 U.S.C. § 1121(b).

(ed)     The DIP Lender shall not have any duty to ensure that the Debtor or Committee discharges any of histheir obligations under subparagraphs (a) and, (b) or (c) of this paragraph. Notwithstanding anything

10

~~to the contrary contained in~~(e)         Any claims of the DIP Lender against the Debtor

(solely as to any obligations incurred by the Debtor under this Interim DIP Order~~, the rights of~~

~~the DIP Lender~~) shall be ~~subject and subordinate~~subordinated to the claims of all other creditors

of the Debtor, including administrative priority claims, whether existing as of the Petition Date~~.~~

~~Without limiting the foregoing, neither the Debtor nor any of his prepetition creditors shall have~~

~~any claim to or interest in the amounts on deposit in the Debtor Account; provided, however,~~

~~that to the extent any Pending Disbursements become disallowed or ordered to be disgorged by~~

~~final order of the Court, or remain in the Debtor Account following full payment of all allowed~~

~~Professional Fees and Expenses (the "Excess DIP Funds"), such Excess DIP Funds shall be paid~~

~~over and delivered as specified in the DIP Loan Documents and/or orders of the Court as~~

~~applicable.~~ or accruing thereafter.

~~(d)         Nothing in this Interim DIP Order shall preclude the DIP Lender from asserting~~

~~any objections to professional fees and expenses sought to be paid under the provisions of~~

~~sections 330, 331 and 503 of the Bankruptcy Code.~~

~~8~~7.   **Termination Events; Remedies.**

(a) Upon or after a written notice to the Debtor, PAX, the Committee and the U.S.

Trustee of the occurrence of a "Termination Event" under (and as defined in) the DIP Loan

Agreement, and upon or after the filing of notice of the occurrence of such Termination Event

with the Bankruptcy Court: (i)~~ the DIP Lender shall be fully authorized, in its sole discretion, to~~

~~charge interest at the default rate set forth in the DIP Loan Agreement, provided, the DIP Lender~~

~~shall provide notice to the U.S. Trustee of its election to charge interest at the default rate; and~~

~~(ii) the~~, the DIP Lender's commitment to make any Subsequent DIP Loans pursuant to the DIP

Loan Agreement shall be terminated, excluding, for the avoidance of doubt, the DIP Lender's

obligation to fund any Escrow Funding Loan or Estate Contribution Loan required to be made pursuant to the terms of the DIP Loan Documents; and (ii) all amounts in the Debtor Account and UCC Account, after giving effect to the Escrow Funding Loan, shall be transferred to the Professional Fees Escrow.

(b)     The rights, remedies, powers and privileges conferred upon of the DIP Lender pursuant to this Interim DIP Order shall be in addition to and cumulative with those contained in the DIP Loan Documents, provided, however,.

(c)     Nothing in this Interim DIP Order or the DIP Loan Documents shall be construed to grant any security interest or priority repayment rights to DIP Lender in respect of any DIP Loan Obligations.

10.     **Subsequent Reversal or Modification.**   Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated or stayed on appeal, that action will not affect:

(a)     the validity of any obligation, indebtedness, or liability granted or incurred by the Debtor to the DIP Lender prior to the effective date of such stay, modification, or vacation; or

(b)     the validity or enforceability of any action taken pursuant to this Interim DIP Order.

Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtor to the DIP Lender under the DIP Loan Documents prior to the effective date of such action shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, benefits, and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability.   All amounts

advanced under the DIP Loan Documents are advanced in reliance upon this Interim DIP Order, and, therefore, the indebtedness resulting from such advance prior to the effective date of any stay, modification, or vacatur of this Interim DIP Order cannot be deprived of the benefit under this Interim DIP Order or the DIP Loan Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case, of the Debtor.

11.    **No Deemed Control.**  By consenting to this Interim DIP Order and extending the DIP Loan, the DIP Lender shall not be deemed to be in control of the Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute).

1210.    **Successors and Assigns.**  The provisions of this Interim DIP Order shall be binding upon and inure to the benefit of all parties-in-interest in the Chapter 11 case, including, without limitation, the DIP Lender, the Debtor and his respective successors and assigns, and shall inure to the benefit of the DIP Lender, the Debtor and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy Code or otherwise.  In no event shall the DIP Lender have any obligation to make the DIP Loan at the direction of any chapter 7 or chapter 11 trustee appointed or elected for the estate of the Debtor..

1311.    **Binding Nature of Agreement.**  Each of the DIP Loan Documents to which the Debtor are and will become parties shall constitute legal, valid and binding obligations of the

Debtor, enforceable in accordance with their terms.  The DIP Loan Documents have been or shall be properly executed and delivered to the DIP Lender by the Debtor.

1412.  **Priority of Terms.**  To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Interim DIP Order shall govern and control.

1513.  **No Waiver.**  This Interim DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtor, the DIP Lender, the Committee, any creditor or any other Estate representative may have to bring or be heard on any matter brought before this Court., including, without limitation, any claims that may be asserted by the Committee, any creditor or any other Estate representative against the DIP Lender based on any act, conduct or omission relating to the Debtor other than extension of the Interim DIP Loan, which claims may include, but not limited be to, claims based on alter ego, veil-piercing, fraudulent transfer, substantive consolidation, and aiding and abetting breach of fiduciary duty.

1614.  **Adequate Notice.   The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.  Under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required Notice.**  Promptly after the entry of this Interim DIP Order, the Debtor shall mail, by first class mail, a copy of this Interim DIP Order to the Notice Parties and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Interim DIP Order.

1715.  **Entry of Order.**  This Interim DIP Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3),

6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim DIP Order on the Court's docket in this Chapter 11 Case.

18.    **Final Hearing.**

16.    **(Further Status Conference.** A) ~~The Final Hearing~~ status conference to consider ~~entry of the Final~~any necessary modifications to this Interim DIP Order ~~and final approval of the~~, including the further availability of Subsequent DIP ~~Facility~~Loans, is scheduled for [●], 2022, at [●] (ET) at the United States Bankruptcy Court for the District of Connecticut.

~~(b)    On or before two business days after entry of this Interim DIP Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim DIP Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim DIP Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final DIP Order shall file written objections with the Clerk of the Court no later than [●] at [●] (ET), which objections shall be served so that the same are received on or before such date by the Notice Parties and any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.~~

~~19~~17.    **Retention of Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Interim DIP Order according to its terms.

Dated:

    Bridgeport, Connecticut

                                    _____
                                    ~~UNITED STATES BANKRUPTCY JUDGE~~

~~64666136 v7~~64683968 v8-WorkSiteUS-038210/0001

| Summary report: Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 5/3/2022 10:31:16 AM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 64666136_7.doc | |
| **Modified DMS:** iw://WORKSITE/WorkSiteUS/64683968/9 | |
| **Changes:** | |
| Add | 121 |
| Delete | 121 |
| Move From | 16 |
| Move To | 16 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 274 |

## **EXHIBIT 3**

DIP Loan Agreement

## DEBTOR-IN-POSSESSION
## CREDIT AGREEMENT

**DEBTOR-IN-POSSESSION CREDIT AGREEMENT,** dated as of April [13], 2022 (as amended, restated, supplemented or otherwise modified from time to time, this "**Agreement**"), by and among **HO WAN KWOK (a/k/a Miles Kwok, a/k/a Miles Guo, a/k/a Wengui Guo)**, an individual, as borrower (the "**Debtor**") and **GOLDEN SPRING (NEW YORK) LTD.**, as lender hereunder ("**Lender**").

## BACKGROUND

A.     On February 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary case under Chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "**Bankruptcy Court**"), Case No. 22-50073 (JAM) (the "**Chapter 11 Case**"), and the Debtor has retained possession of his assets as debtor-in-possession.

B.     In connection with the Chapter 11 Case, the Debtor has requested that the Lender provide him with a debtor-in-possession term loan facility in an aggregate principal amount not to exceed $9,000,000.00 (the "**DIP Facility**"), $1,000,000 of which shall be reserved for the funding of the Estate Contribution Loan.  All of the Debtor's obligations under the DIP Facility are to be unsecured and shall be subordinated in right to payment to the claims of all other creditors of the Debtor, including administrative priority claims, whether existing as of the Petition Date or accruing thereafter. The Lender is willing to extend such credit under the DIP Facility to the Debtor on the terms and subject to the conditions set forth herein.

C.     This Agreement and the rights and obligations of the Lender and Debtor hereunder shall be subject to approval of the Bankruptcy Court in the Chapter 11 Case pursuant to the Financing Orders (as defined herein).

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**Section 1.     DEFINITIONS**

1.01.     As used in this Agreement, the following terms shall have the meanings set forth below:

**Accrual Report** has the meaning assigned thereto in Section 5.01(b).

**Bankruptcy Code** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified, or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

**Bankruptcy Court** has the meaning assigned thereto in the recitals to this Agreement.

**Business Day** shall mean any day that is not Saturday, Sunday or a Legal Holiday as such term is defined in Rule 9006(a)(6) of the Federal Rules of Bankruptcy Procedure.

1

**Closing Date** shall mean the date that this Agreement has been duly executed by the parties hereto and delivered to each other and the conditions of Section 3.01 have been satisfied or waived.

**Committee** shall mean the Official Committee of Unsecured Creditors in the Chapter 11 Case.

**Debtor** shall have the meaning set forth in the preamble of this Agreement.

**Debtor Account** shall mean the segregated Debtor-in-Possession deposit account established by the Debtor at M&T Bank into which the proceeds of the DIP Loans, other than the Interim DIP Loan, shall be deposited.

**Default Rate** shall have the meaning assigned to such term in Section 2.03.

**DIP Commitment** shall mean the commitment of the Lender to make DIP Loans (other than the Interim DIP Loan) pursuant to Section 2.01 in an aggregate principal amount not to exceed $7,000,000.

**DIP Facility** shall have the meaning set forth in the recitals to this Agreement.

**DIP Loan Documents** shall mean this Agreement, the Financing Orders, and each other document, instrument and certificate executed from time to time in connection with this Agreement, as may be renewed, amended, restated, extended, increased or supplemented from time to time.

**DIP Loan Obligations** shall mean each DIP Loan and all other advances and extensions of credit made or to be made by the Lender to the Debtor, or to others for the Debtor's account, pursuant to this Agreement from time to time, including, without limitation, all PIK Interest and all Out-of-Pocket-Expenses (including all amounts capitalized pursuant to Section 7.01), whether such obligation is absolute or contingent, joint or several, matured or unmatured, direct or indirect and whether the Debtor is liable to the Lender for such indebtedness as principal, surety, endorser, guarantor or otherwise.

**DIP Loans** shall have the meaning given to such term in Section 2.01(d).

**Disbursement Escrow** shall have the meaning given to such term in Section 2.04.

**Escrow Funding Loan** shall have the meaning given to such term in Section 2.01(d).

**Estate Contribution Commitment** shall mean the commitment of the Lender to fund a loan for use by the Debtor's estate in an aggregate principal amount of $1,000,000.

**Estate Contribution Loan** shall have the meaning given to such term in Section 2.01(b).

**Financing Orders** shall mean the Interim Financing Order and each Subsequent Financing Order.

**Interim DIP Commitment** shall mean the commitment of the Lender to fund the Interim DIP Loan in an aggregate principal amount of $2,000,000.

**Interim DIP Loan** shall have the meaning assigned to such term in Section 2.01.

2

**Interim Financing Order** shall mean the interim order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on an interim basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Letter of Credit** has the meaning assigned to such term in Section 2.06.

**Maturity Date** shall mean the earliest of (i) eighteen months after the Closing Date and (ii) the effective date of any plan of reorganization of the Debtor.

**Out-of-Pocket Expenses** shall mean (a) all reasonable out-of-pocket expenses of DIP Lender (i) associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including reasonable fees, disbursements and other charges of counsel) and (ii) incurred by DIP Lender in connection with the Chapter 11 Case; and (b) all out-of-pocket expenses of DIP Lender (including the fees, disbursements and other charges of counsel in connection with the enforcement of the DIP Loan Documents).

**Person** shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**Petition Date** shall have the meaning provided for in the recitals of this Agreement.

**PIK Interest** shall have the meaning given to such term in Section 2.02.

**Professional Fees Escrow** shall mean an amount equal to all accrued but unpaid professional compensation and expense reimbursements of the Debtor's professionals, the Committee's professionals or the professionals of any examiner that have been incurred or accrued prior to the occurrence of a Termination Event *plus* the amount of $500,000, provided that in the event of a Termination Event based on the appointment of a chapter 11 trustee: (i) counsel to the Debtor shall not participate in the first $400,000 of the $500,000 additional funding for such amount, which shall be available to fund the fees and expenses of professionals for the Committee, a chapter 11 trustee and any of his or her professionals and (ii) such Professional Fees Escrow shall be otherwise subject to section 2.01(d) hereof.

**Replacement Letter of Credit** means a replacement letter of credit in form and substance satisfactory to Debtor in its sole and absolute discretion that is issued by a commercial bank that is a member of the New York Clearing House Association acceptable to Debtor in its sole and absolute discretion, and at a minimum having a long-term issuer credit rating from S&P Global Ratings of "A" or higher, or a comparable rating from Moody's Investors Service.

**Subsequent DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Subsequent Financing Order** shall mean any order entered by the Bankruptcy Court subsequent to the entry of the Interim Financing Order (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**UCC Account** shall mean the segregated deposit account to be established by counsel to the Committee

into which the proceeds of the Interim DIP Loan will be deposited and used in accordance with the Interim DIP Order.

**Termination Event** shall have the meaning provided for in Section 8.01 of this Agreement.

**Section 2.     DIP LOAN**

2.01.    <u>DIP Loans</u>.

(a)     <u>Interim DIP Loan</u>. No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a loan to the Debtor in an aggregate principal amount equal to the Interim DIP Commitment (the "**Interim DIP Loan**").

(b)     No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a loan to the Debtor in an aggregate principal amount equal to the Estate Contribution Commitment (the "**Estate Contribution Loan**").

(c)     <u>Subsequent Draws</u>. Subject to the conditions hereof, the Lender shall fund, no later than two (2) Business Days following delivery of the Accrual Reports for such week, a loan (each such loan being, a "**Subsequent DIP Loan**") in an amount equal to the excess, if any, of (x) the sum of (1) the unpaid accruals reflected in all Accrual Reports for such week, (2) all other authorized disbursements accrued or incurred since delivery of the last Accrual Reports and (3) $100,000 *over* (y) the funds on deposit in the Disbursement Escrow on the date of delivery of such Accrual Reports.  All DIP Loan Obligations shall become immediately due and payable on the Maturity Date. Except as set forth in Section 2.06(c), amounts repaid at any time to the Lender may not be reborrowed.

(d)     <u>Draws Following a Termination Event</u>.   Upon the occurrence of a Termination Event, to the extent the aggregate remaining proceeds of each Subsequent DIP Loan maintained in the Debtor Account and the Disbursement Escrow, as of the date of the occurrence of such Termination Event, are insufficient to fund the Professional Fees Escrow, the Lender shall make an additional loan  (the "**Escrow Funding Loan**", together with the Interim DIP Loan the Estate Contribution Loan, and each Subsequent DIP Loan, the "**DIP Loans**") in an aggregate principal amount sufficient to permit the funding of the Professional Fees Escrow from the Debtor Account.

(e)     Notwithstanding anything in this Section 2.01 to the contrary, in no event shall (x) the aggregate principal amount of Subsequent DIP Loans made prior to entry of a Subsequent Financing Order exceed $3,000,000 or (y) the aggregate principal amount of the DIP Loans (other than the Interim DIP Loan) made, or required to be made, pursuant to this Section 2.01 exceed the DIP Commitment.  The following condition shall apply to the DIP Commitment: (i) at all times prior to the occurrence of a Termination Event there shall remain (after giving effect to any Subsequent DIP Loan) availability under the DIP Commitment an amount equal to $80,000 (the "**U.S. Trustee Sub-Limit**"), which amount shall be reserved and available solely to fund the fees of the U.S. Trustee; and (ii) the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund professional fees and expenses of the Debtor's professionals shall not exceed 50% of the DIP Commitment and the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund all professional fees of the Committee or any examiner shall not exceed 50% of the DIP Commitment, in each case, after reducing the DIP

4

Committee to reserve availability for the U.S. Trustee Sub-Limit.

2.02.    Interest Rate; Interest Payments.  The outstanding principal amount of the DIP Loans shall bear interest at a per annum rate equal to five percent (5.0%) (the "**Interest Rate**").  Accrued interest shall be payable in-kind on the last day of each calendar quarter by capitalizing, compounding and adding the accrued amount thereof to the principal amount of the DIP Loans then outstanding (such interest, "**PIK Interest**") for so long as any portion of the DIP Loans remain outstanding; provided, however, that in the event of any repayment or prepayment of any portion of the DIP Loans, accrued interest on the principal amount being repaid or prepaid shall be payable cash on the date of such repayment or prepayment.

2.03.    Default Interest.  Notwithstanding the foregoing, (i) if any principal of, or interest on, the DIP Loans or any fee or other amount payable by the Debtor hereunder or under any other DIP Loan Document is not paid when due, such overdue amount shall bear interest at a rate per annum equal to two percent (2.0%) plus the Interest Rate (the "**Default Rate**"); and (ii) during the occurrence and continuance of a Termination Event , the Lender may, at its option, by notice to the Debtor, declare that the DIP Loans any other amounts outstanding hereunder shall bear interest at the Default Rate as provided in the preceding paragraphs of this Section.

2.04.    Use of Proceeds; Disbursements from Debtor Account.  The proceeds of the DIP Loans, other than the Interim DIP Loan, shall be deposited into the Debtor Account, and the proceeds of the Interim DIP Loan shall be deposited into the UCC Account. Unless otherwise directed by the Bankruptcy Court, such proceeds shall be used by the Debtor or counsel to the Committee, as applicable, in their discretion to the extent permitted by orders of the Bankruptcy Court.  Subject to entry of a Subsequent Financing Order and approval of by the Bankruptcy Court of an escrow agreement to be submitted in connection therewith, proceeds of the DIP Loans, other than the Interim DIP Loan and the Estate Contribution Loan, may (but need not) be disbursed by the Debtor or the Committee, as applicable, into an escrow account (the "**Disbursement Escrow**") maintained by Brown Rudnick LLP ("**Brown Rudnick**") in an amount equal to all accrued but unpaid professional compensation and expense reimbursements, administrative priority claims, court fees, and U.S. Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Bankruptcy Court, as applicable, including all accruals set forth in the Accrual Reports.

2.05.    All payments due by the Debtor under this Agreement, whether for principal, interest, fees, costs, indemnities, expenses or otherwise, shall be payable in United States dollars in accordance with the wire instructions provided by Lender to Debtor, without setoff, counterclaim or other deduction of any kind.

2.06.    Standby Letter of Credit.

(a)    As additional credit support for the Lender's obligations to fund the DIP Loans (other than the Interim DIP Loan and the Estate Contribution Loan), the Lender shall, no later than ten (10) Business Days after the entry of the Interim Financing Order (as such date may be extended by the Debtor in its sole and absolute discretion) cause to be delivered to the Debtor, at the Lender's sole cost and expense, a clean, "multi-draw" irrevocable and unconditional standby letter of credit issued in favor of the Debtor with an initial face amount equal to $6,000,000 from a bank which is a member of the New York Clearing House Association and is otherwise satisfactory to the Debtor (the "**Issuer**"), which letter of credit shall (w) be for a term commencing on the Closing Date (or, if such letter of credit is not delivered on the Closing Date, commencing not later than ten (10) Business Days after entry of the Interim Financing Order) and expiring at least three hundred sixty-five (365) days after the date of issuance of such letter of credit and which shall

5

include "evergreen" provisions under which the Issuer agrees that such letter of credit shall renew automatically on such date of expiration for consecutive additional terms of three hundred sixty-five (365) days unless the Debtor has, at least sixty (60) days prior to the then applicable expiration date, received written notice from the Issuer expressly stating that such letter of credit will not be so renewed on the date of expiry (a "**Cancellation Notice**"), (z) provide that the Debtor may draw on such letter of credit at any time, or from time to time, upon written request delivered to Issuer and without any requirement that the Debtor deliver the original letter of credit or any other documentation to effect such draws, (y) provide that such letter of credit is freely assignable by the Debtor and (z) otherwise contain terms and conditions satisfactory to the Debtor in its sole and absolute discretion (such letter of credit, together with one or more Replacement Letters of Credit, being the "**Letter of Credit**").  The Letter of Credit shall be held by the Debtor as security for the performance by the Lender of its obligations under this Agreement and the other DIP Loan Documents.  Notwithstanding the foregoing, the requirements of this paragraph may be waived by the Debtor with the approval of the Bankruptcy Court.

(b)     Upon the failure of the Lender to fund any DIP Loan (other than the Interim DIP Loan and Estate Contribution Loan), the Debtor shall be entitled to draw upon the Letter of Credit to fund any such DIP Loan without prior notice to, or consent of, the DIP Lender, and without requiring that the Debtor first provide notice to, or make demand for such payment from, the Lender**.**

(c)     The Lender further agrees that following the Issuer's sending a Cancellation Notice, the Debtor may draw the full remaining undrawn amount of the Letter of Credit and deposit such amount in the Debtor Account, and the proceeds of such draw may be used in accordance with Section 2.04; provided, that upon receipt by the Debtor of a Replacement Letter of Credit satisfying the requirement set forth in Section 2.06(a), the Debtor shall return to the Lender any funds drawn from the Letter of Credit and remaining in the Debtor Account at the time of receipt of the Replacement Letter of Credit.  Any draw on the Letter of Credit under this Section 2.06(c) shall not constitute the making of a DIP Loan, nor shall reduce the DIP Commitment; *provided,* however, that the disbursements of any such drawn amount from the Debtor Account in accordance with the Section 2.04 shall constitute the making of a DIP Loan in an amount equal to such disbursed amount.

(d)     If any Letter of Credit will expire, or if any Issuer shall have delivered a Cancellation Notice, the Lender shall replace such Letter of Credit by delivering to the Debtor a Replacement Letter of Credit at least thirty (30) days prior to the expiration date of the then effective Letter of Credit in accordance with the terms of this Section 2.06.  If any Letter of Credit Issuer's credit rating is reduced below the requisite level specified above, or if the financial condition of such Issuer changes in any other materially adverse way, or if Debtor believes such Issuer is in a condition that it may soon become insolvent or placed into receivership, then the Lender within thirty (30) days of the Debtor's written request deliver to the Debtor a Replacement Letter of Credit with an issuing bank acceptable to the Debtor and otherwise satisfying the requirements of Section 2.06(a).

(e)     The Lender hereby covenants and agrees not to oppose, contest or otherwise interfere with any attempt by the Debtor to draw on the Letter of Credit.

**Section 3.        CONDITIONS TO EFFECTIVENESS AND FUNDING**

3.01.    <u>Conditions to the Funding of the Interim DIP Loan</u>.  The obligation of the Lender to make the Interim DIP Loan is subject to the satisfaction by Debtor or waiver by Lender of the following

conditions precedent:

(a)    Each DIP Loan Document shall be in form and substance reasonably satisfactory to the Lender, and shall have been duly executed by the Debtor and any other necessary parties and delivered to the Lender;

(b)    The Interim Financing Order shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(c)    The UCC Account shall have been established; and

(d)    No Termination Event shall have occurred and be continuing or result after giving effect to the making of the Interim DIP Loan.

3.02.    <u>Conditions to the Funding of each Subsequent DIP Loan</u>.  The obligation of the Lender to make each Subsequent DIP Loan is subject to the satisfaction by the Debtor or waiver by Lender of the following conditions precedent:

(a)    The applicable Financing Order, shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)    No Termination Event shall have occurred and be continuing or result after giving effect to the making of such Subsequent DIP Loan;

(c)    If such Subsequent DIP Loan is made prior to entry of a Subsequent Financing Order, the aggregate principal amount of all Subsequent DIP Loans then outstanding, after giving effect to the making of such Subsequent DIP Loan, shall not exceed $3,000,000; and

(d)    The aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) made pursuant to Section 2.01 then outstanding shall and after giving effect to the making of such Subsequent DIP Loan shall not exceed (x) the amount authorized to be borrowed pursuant to the Financing Order then in effect and (y) the DIP Commitment (after giving effect to the U.S. Trustee Sub-Limit).

3.03.    <u>Conditions to the Funding of the Escrow Funding Loan</u>.  The obligation of the Lender to make the Escrow Funding Loan is subject to the satisfaction of the following conditions precedent:

(a)    The Financing Orders shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)    A Termination Event shall have occurred and be continuing;

(c)    The proceeds of each Subsequent DIP Loan remaining in the Debtor Account and the Disbursement Escrow shall be insufficient fund the Professional Fees Escrow; and

(d)    The aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) made pursuant to Section 2.01 then outstanding and after giving effect to the making of the Escrow Funding Loan

shall not exceed the DIP Commitment.

## Section 4.    REPRESENTATIONS AND WARRANTIES.

The Debtor represents and warrants to the Lender that:

4.01.    <u>Authorization; Enforceability</u>.  Subject to any restrictions arising on account of the Debtor's status as "debtor" under the Bankruptcy Code, the Debtor has all requisite legal capacity to enter into this Agreement and the other DIP Loan Documents.  Upon entry of the Financing Orders, this Agreement and each other DIP Loan Document shall constitute a legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms, subject to any restrictions arising on account of the Debtor's status as "debtor" under the Bankruptcy Code and subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.02.    <u>Approvals; No Conflicts</u>.  Subject to entry of the Financing Orders, this Agreement and the other DIP Loan Documents do not require any consent or approval of, registration or filing with, or any other action by, any governmental authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any DIP Loan Document, except such as have been obtained or made and are in full force and effect.

## Section 5.    REPORTING.

5.01.    <u>Reporting</u>.

(a)    On the tenth (10th) day of each calendar month (or, if such day is not a Business Day, on the immediately preceding day that is a Business Day), commencing on May 10, 2022, the Debtor shall deliver to the Lender a report, setting forth all disbursements Debtor from the Debtor Account to the Disbursement Escrow made for the preceding month.

(b)    On Friday of each calendar week after the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm retained by the Debtor, the Committee and any examiner then appointed shall deliver to the Debtor, the Lender and the Committee a report of fee and/or cost accruals from the preceding week (each, an "**Accrual Report**" and, collectively, the "**Accrual Reports**").

5.02.    <u>Information</u>.  If reasonably requested by Lender, the Debtor will furnish to the Lender such financial reports and information in such detail as shall be reasonably satisfactory to the Lender.

## Section 6.    [RESERVED].

## Section 7.    EXPENSE REIMBURSEMENT; INDEMNITY.

7.01.    The Debtor shall reimburse or pay the Lender for all Out-of-Pocket Expenses, which expenses shall be paid in-kind by capitalizing, compounding and adding the amount thereof to the principal amount of the DIP Loans.  The Debtor hereby agrees to indemnify and hold harmless the Lender, and the

officers, directors, members, managers, employees, attorneys and agents of the Lender (each an "**Indemnified Party**") from, and holds each of them harmless against, (a) any and all losses, liabilities, obligations, claims, actions, damages, costs and expenses (including reasonable attorney's fees) insofar as such losses, liabilities, obligations, claims, actions, damages, costs, fees or expenses are with respect to the DIP Loans and DIP Loan Documents, except and to the extent that the same results solely and directly from the gross negligence or willful misconduct of such Indemnified Party. The Debtor hereby agrees that this indemnity shall survive termination of this Agreement.

## Section 8.    TERMINATION EVENTS

8.01.    Notwithstanding anything hereinabove to the contrary, each of the following shall constitute a "**Termination Event**":

(a)    the Bankruptcy Court shall enter an order granting relief from the automatic stay in connection with PAX v. Kwok, Index No. 652077/2017 (N.Y. Sup.) (the "**PAX Litigation**");

(b)    without the consent of the DIP Lender, the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code; or

(c)    there shall be appointed a chapter 11 trustee.

8.02.    Remedies.

(a)    Subject to the Financing Orders, upon the occurrence and during the continuance of a Termination Event, the Lender's commitment to fund any DIP Loans pursuant to Section 2.01(c) shall terminate and the Lender shall have no obligation to make any additional DIP Loans (other than the Escrow Funding Loan required to be made pursuant to Section 2.01(d)).

(b)    In the event the Chapter 11 Case is dismissed, absent contrary direction contained in an order of the Bankruptcy Court, the Debtor shall return to the DIP Lender any proceeds of the DIP Loans remaining in the Debtor Account.

## Section 9.    MISCELLANEOUS

9.01.    This Agreement and the other DIP Loan Documents constitute the entire agreement between the Debtor and the Lender with respect to the matters contained herein and therein; supersede any prior agreements; can be waived or changed only by a writing signed by each party hereto or thereto, and shall bind and benefit each party hereto or thereto and their respective successors and assigns, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

9.02.    In no event shall the Debtor, upon demand by the Lender for payment of any DIP Loan Obligations, by acceleration of the maturity thereof or otherwise, be obligated to pay interest and fees in excess of the amount permitted by law and the Lender shall never be entitled to receive, charge or apply, as interest on any DIP Loan Obligations, any amount in excess of the maximum amount of interest permissible under applicable law. If the Lender ever receives, collects or applies any such excess, it shall be deemed a partial repayment of principal and treated as such; and if principal is paid in full, any remaining excess shall be refunded to the Debtor. This paragraph shall control every other provision hereof and each

other DIP Loan Document.

9.03.    If any provision hereof or of any other agreement made in connection herewith is held to be illegal or unenforceable, such provision shall be fully severable, and the remaining provisions of the applicable agreement shall remain in full force and effect and shall not be affected by such provision's severance.

9.04.    <u>GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS</u>.

(a)    THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CONNECTICUT AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, ANY CONNECTICUT  STATE COURT SITTING IN HARTFORD COUNTY AND THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN OR IN ANY OTHER DIP LOAN DOCUMENT WILL PREVENT ANY PARTY FROM BRINGING ANY ACTION TO ENFORCE ANY AWARD OR JUDGMENT OR EXERCISE ANY RIGHT UNDER THE DIP LOAN DOCUMENTS IN ANY OTHER FORUM IN WHICH JURISDICTION CAN BE ESTABLISHED. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS.

9.05.    <u>Notices</u>. Except as otherwise herein provided, any notice or other communication required hereunder shall be in writing (provided that, any electronic communications including electronic mail shall constitute a notice or communication in writing), and shall be deemed to have been validly served, given or delivered when (i) hand delivered, (i) in the case of any electronic communications, the day sent, (iii) one (1) Business Day after deposit with a nationally recognized overnight delivery service, or (iv) three Business Days after deposit in the United States mails, with proper first class postage prepaid, return receipt requested, and addressed to the party to be notified or to such other address as any party hereto may designate for itself by like notice, as follows:

(a)    if to the Lender, at:

Golden Spring (New York) Ltd.
162 E 64th St.
New York, NY 10065
Email: admin@gsnyus.com

With a copy to:

10

        Email: arethusaf@protonmail.com

        - and -

        Cohn Birnbaum & Shea, P.C.
        100 Pearl Street, Hartford, CT 06103
        Attention: Scott D. Rosen
        Email srosen@cbshealaw.com


(b)      if to the Debtor, to

        373 Taconic Road
        Greenwich, CT 06831

        With a copy to:

        Brown Rudnick LLP
        Seven Times Square
        New York, NY 10036
        Attention: William R. Baldiga
        Email : wbaldiga@brownrudnick.com
        Email : Attention: Bennett S. Silverberg
        Email bsilverberg@brownrudnick.com

     9.06.    In the event of any inconsistency between the terms of any Financing Order, on the one hand, and this Agreement and the other DIP Loan Documents, on the other hand, the terms of such Financing Order shall control.


[SIGNATURE PAGES FOLLOW]


11

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective, executed, accepted and delivered as of the date first set forth above by their proper and duly authorized officers as of the date set forth above.

**DEBTOR:**

_____

Ho Wan Kwok (a/k/a Miles Kwok a/k/a Miles Guo a/k/a Wengui Guo)

**LENDER:**

**GOLDEN SPRING (NEW YORK) LTD.**

By:_____
Name:_____
Title:_____

64669999 v3
64683970 v9-WorkSiteUS-038210/0001

12

## **EXHIBIT 4**

Blackline of DIP Loan Agreement

64693824 v1-WorkSiteUS-038210/0001

# DEBTOR-IN-POSSESSION
# CREDIT AGREEMENT

**DEBTOR-IN-POSSESSION CREDIT AGREEMENT,** dated as of April [13], 2022 (as amended, restated, supplemented or otherwise modified from time to time, this "**Agreement**"), by and among **HO WAN KWOK (a/k/a Miles Kwok, a/k/a Miles Guo, a/k/a Wengui Guo)**, an individual, as borrower (the "**Debtor**") and **GOLDEN SPRING (NEW YORK) LTD.**, as lender hereunder ("**Lender**").

## BACKGROUND

A.     On February 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary case under Chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "**Bankruptcy Court**"), Case No. 22-50073 (JAM) (the "**Chapter 11 Case**"), and the Debtor has retained possession of his assets as debtor-in-possession.

B.     In connection with the Chapter 11 Case, the Debtor has requested that the Lender provide him with a debtor-in-possession term loan facility in an aggregate principal amount not to exceed $9,000,000.00 (the "**DIP Facility**"), $1,000,000 of which shall be reserved for the funding of the Estate Contribution Loan.  All of the Debtor's obligations under the DIP Facility are to be unsecured and shall be subordinated in right to payment to the claims of all other creditors of the Debtor, including administrative priority claims, whether existing as of the Petition Date or accruing thereafter. The Lender is willing to extend such credit under the DIP Facility to the Debtor on the terms and subject to the conditions set forth herein.

C.     This Agreement and the rights and obligations of the Lender and Debtor hereunder shall be subject to approval of the Bankruptcy Court in the Chapter 11 Case pursuant to the Financing Orders (as defined herein).

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**Section 1.     DEFINITIONS**

1.01.     As used in this Agreement, the following terms shall have the meanings set forth below:

**Accrual Report** has the meaning assigned thereto in Section 5.01(b).

~~**Authorized Disbursements** shall have the meaning given to such term in Section 2.04.~~

**Bankruptcy Code** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified, or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

**Bankruptcy Court** has the meaning assigned thereto in the recitals to this Agreement.

1

**Business Day** shall mean any day that is not Saturday, Sunday or a Legal Holiday as such term is defined in Rule 9006(a)(6) of the Federal Rules of Bankruptcy Procedure.

**Closing Date** shall mean the date that this Agreement has been duly executed by the parties hereto and delivered to each other and the conditions of Section 3.01 have been satisfied or waived.

**Committee** shall mean the Official Committee of Unsecured Creditors in the Chapter 11 Case.

**Debtor** shall have the meaning set forth in the preamble of this Agreement.

**Debtor Account** shall mean the segregated Debtor-in-Possession deposit account established by the Debtor at M&T Bank into which the proceeds of the DIP Loans, other than the Interim DIP Loan, shall be deposited.

**Default Rate** shall have the meaning assigned to such term in Section 2.03.

**DIP Commitment** shall mean the commitment of the Lender to make DIP Loans (other than the Interim DIP ~~Commitment~~Loan) pursuant to Section 2.01 in an aggregate principal amount not to exceed $~~8,000,000~~7,000,000.

**DIP Facility** shall have the meaning set forth in the recitals to this Agreement.

**DIP Loan Documents** shall mean this Agreement, the Financing Orders, and each other document, instrument and certificate executed from time to time in connection with this Agreement, as may be renewed, amended, restated, extended, increased or supplemented from time to time.

**DIP Loan Obligations** shall mean each DIP Loan and all other advances and extensions of credit made or to be made by the Lender to the Debtor, or to others for the Debtor's account, pursuant to this Agreement from time to time, including, without limitation, all PIK Interest and all Out-of-Pocket-Expenses (including all amounts capitalized pursuant to Section 7.01), whether such obligation is absolute or contingent, joint or several, matured or unmatured, direct or indirect and whether the Debtor is liable to the Lender for such indebtedness as principal, surety, endorser, guarantor or otherwise.

**DIP Loans** shall have the meaning given to such term in Section 2.01(d).

**Disbursement Escrow** shall have the meaning given to such term in Section 2.04.

**Escrow Funding Loan** shall have the meaning given to such term in Section 2.01(d).

**Estate Contribution Commitment** shall mean the commitment of the Lender to fund a loan for use by the Debtor's estate ~~upon the occurrence of a Termination Event~~ in an aggregate principal amount of $1,000,000.

**Estate Contribution Loan** shall have the meaning given to such term in Section 2.01(b).

**~~Final Financing Order~~** ~~shall mean the final order entered by the Bankruptcy Court (i) authorizing the~~

~~Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on a final basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.~~

**Financing Orders** shall mean the Interim Financing Order and ~~the Final~~each Subsequent Financing Order.

**Interim DIP Commitment** shall mean the commitment of the Lender to fund the Interim DIP Loan in an aggregate principal amount of $2,000,000.

**Interim DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Interim Financing Order** shall mean the interim order entered by the Bankruptcy Court (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief on an interim basis, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**Letter of Credit** has the meaning assigned to such term in Section 2.06.

**Maturity Date** shall mean the earliest of (i) eighteen months after the Closing Date and (ii) the effective date of any plan of reorganization of the Debtor.

**Out-of-Pocket Expenses** shall mean (a) all reasonable out-of-pocket expenses of DIP Lender (i) associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto (including reasonable fees, disbursements and other charges of counsel) and (ii) incurred by DIP Lender in connection with the Chapter 11 Case; and (b) all out-of-pocket expenses of DIP Lender (including the fees, disbursements and other charges of counsel in connection with the enforcement of the DIP Loan Documents).

**Person** shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**Petition Date** shall have the meaning provided for in the recitals of this Agreement.

**PIK Interest** shall have the meaning given to such term in Section 2.02.

**Professional Fees Escrow** shall mean an amount equal to all accrued but unpaid professional compensation and expense reimbursements of the Debtor's professionals, the Committee's professionals or the professionals of any examiner that have been incurred or accrued prior to the occurrence of a Termination Event *plus* the amount of $500,000~~.~~, provided that in the event of a Termination Event based on the appointment of a chapter 11 trustee: (i) counsel to the Debtor shall not participate in the first $400,000 of the $500,000 additional funding for such amount, which shall be available to fund the fees and expenses of professionals for the Committee, a chapter 11 trustee and any of his or her professionals and (ii) such Professional Fees Escrow shall be otherwise subject to section 2.01(d) hereof.

**Replacement Letter of Credit** means a replacement letter of credit in form and substance satisfactory to Debtor in its sole and absolute discretion that is issued by a commercial bank that is a member of the New

York Clearing House Association acceptable to Debtor in its sole and absolute discretion, and at a minimum having a long-term issuer credit rating from S&P Global Ratings of "A" or higher, or a comparable rating from Moody's Investors Service.

**Subsequent DIP Loan** shall have the meaning assigned to such term in Section 2.01.

**Subsequent Financing Order** shall mean any order entered by the Bankruptcy Court subsequent to the entry of the Interim Financing Order (i) authorizing the Debtor to obtain post-petition financing pursuant to this Agreement and (ii) granting certain related relief, as the same may be amended, modified or supplemented from time to time with the express written consent of the Lender.

**UCC Account** shall mean the segregated deposit account to be established by counsel to the Committee into which the proceeds of the Interim DIP Loan will be deposited and used in accordance with the Interim DIP Order.

**Termination Event** shall have the meaning provided for in Section 8.01 of this Agreement.

**Section 2.    DIP LOAN**

2.01.    DIP Loans.

(a)    Interim DIP Loan. No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a loan to the Debtor in an aggregate principal amount equal to the Interim DIP Commitment (the "**Interim DIP Loan**").

(b)    No later than two (2) Business Days following entry of the Interim Financing Order, the Lender shall, subject to the terms and conditions of this Agreement and the Interim Financing Order, make a loan to the Debtor in an aggregate principal amount equal to the Estate Contribution Commitment (the "**Estate Contribution Loan**").

(c)    Subsequent Draws. Subject to the conditions hereof, the Lender shall fund, no later than two (2) Business Days following delivery of the Accrual Reports for such week, a loan (each such loan being, a "**Subsequent DIP Loan**") in an amount equal to the excess, if any, of (x) the sum of (1) the unpaid accruals reflected in all Accrual Reports for such week, (2) all other authorized disbursements accrued or incurred since delivery of the last Accrual Reports and (3) $100,000 *over* (y) the funds on deposit in the Disbursement Escrow on the date of delivery of such Accrual Reports. All DIP Loan Obligations shall become immediately due and payable on the Maturity Date. Except as set forth in Section 2.06(c), amounts repaid at any time to the Lender may not be reborrowed.

(d)    Draws Following a Termination Event.  Upon the occurrence of a Termination Event, to the extent the aggregate remaining proceeds of each Subsequent DIP Loan maintained in the Debtor Account and the Disbursement Escrow, as of the date of the occurrence of such Termination Event, are insufficient to fund the Professional Fees Escrow, the Lender shall make an additional loan  (the "**Escrow Funding Loan**", together with the Interim DIP Loan the Estate Contribution Loan, and each Subsequent DIP Loan, the "**DIP Loans**") in an aggregate principal amount sufficient to permit the funding of the Professional Fees Escrow from the Debtor Account.

4

(e)     Notwithstanding anything in this Section 2.01 to the contrary, in no event shall (x) the aggregate principal amount of Subsequent DIP Loans made prior to entry of ~~the Final~~a Subsequent Financing Order exceed $3,000,000~~,~~ or (y) the aggregate principal amount of the DIP Loans (other than the Interim DIP Loan) made, or required to be made, pursuant to this Section 2.01 exceed the DIP Commitment ~~or (z) the aggregate principal amount of the Interim DIP Loan exceed the Interim DIP Commitment~~. The following condition shall apply to the DIP Commitment: (~~x~~i) at all times prior to the occurrence of a Termination Event there shall remain (after giving effect to any Subsequent DIP Loan) availability under the DIP Commitment an amount equal to $80,000 (the "**U.S. Trustee Sub-Limit**"), which amount shall be reserved and available solely to fund the fees of the U.S. Trustee; and (~~y~~ii) the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund professional fees and expenses of the Debtor's professionals shall not exceed 50% of the DIP Commitment and the aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) used to fund all professional fees of the Committee or any examiner shall not exceed 50% of the DIP Commitment, in each case, after reducing the DIP Committee to reserve availability for the U.S. Trustee Sub-Limit.

2.02.   Interest Rate; Interest Payments.  The outstanding principal amount of the DIP Loans shall bear interest at a per annum rate equal to five percent (5.0%) (the "**Interest Rate**"). Accrued interest shall be payable in-kind on the last day of each calendar quarter by capitalizing, compounding and adding the accrued amount thereof to the principal amount of the DIP Loans then outstanding (such interest, "**PIK Interest**") for so long as any portion of the DIP Loans remain outstanding; provided, however, that in the event of any repayment or prepayment of any portion of the DIP Loans, accrued interest on the principal amount being repaid or prepaid shall be payable cash on the date of such repayment or prepayment.

2.03.   Default Interest.  Notwithstanding the foregoing, (i) if any principal of, or interest on, the DIP Loans or any fee or other amount payable by the Debtor hereunder or under any other DIP Loan Document is not paid when due, such overdue amount shall bear interest at a rate per annum equal to two percent (2.0%) plus the Interest Rate (the "**Default Rate**"); and (ii) during the occurrence and continuance of a Termination Event , the Lender may, at its option, by notice to the Debtor, declare that the DIP Loans any other amounts outstanding hereunder shall bear interest at the Default Rate as provided in the preceding paragraphs of this Section.

2.04.   Use of Proceeds; Disbursements from Debtor Account.  The proceeds of the DIP Loans, other than the Interim DIP Loan, shall be deposited into the Debtor Account, and~~, other than~~ the proceeds of the Interim DIP Loan ~~and the Estate Contribution Loan and~~ shall be deposited into the UCC Account. Unless otherwise directed by the Bankruptcy Court, such proceeds shall be used by the Debtor or counsel to the Committee, as applicable, in their discretion to the extent permitted by orders of the Bankruptcy Court.  Subject to entry of ~~the Final~~a Subsequent Financing Order and approval of by the Bankruptcy Court of an escrow agreement to be submitted in connection therewith, ~~may~~ proceeds of the DIP Loans, other than the Interim DIP Loan and the Estate Contribution Loan, may (but need not) be disbursed by the Debtor ~~to~~or the Committee, as applicable, into an escrow account (the "**Disbursement Escrow**") maintained by Brown Rudnick LLP ("**Brown Rudnick**") in an amount equal to all accrued but unpaid professional compensation and expense reimbursements, administrative priority claims, court fees, and U.S. Trustee fees as may be required to be paid by the Debtor and/or authorized and approved by the Bankruptcy Court, as applicable, including all accruals set forth in the Accrual Reports ~~(collectively, "**Authorized Disbursements**"). The proceeds of the Interim DIP Loan shall be used by the Debtor in its~~

~~discretion to the extent permitted by orders of the Bankruptcy Court.~~ ~~The proceeds of the DIP Loans will not be utilized to pay for ordinary living expenses of the Debtor.~~ ~~Alternatively, subject to entry of a Final Financing Order so permitting, the proceeds of the DIP Loans may be deposited into  the Debtor Account or other approved account designated as the Disbursement Escrow.~~.

2.05.    All payments due by the Debtor under this Agreement, whether for principal, interest, fees, costs, indemnities, expenses or otherwise, shall be payable in United States dollars in accordance with the wire instructions provided by Lender to Debtor, without setoff, counterclaim or other deduction of any kind.

2.06.    <u>Standby Letter of Credit</u>.

(a)    As additional credit support for the Lender's obligations to fund the DIP Loans (other than the Interim DIP Loan <u>and the Estate Contribution Loan</u>), the Lender shall, no later than ten (10) Business Days after the entry of the Interim Financing Order (as such date may be extended by the Debtor in its sole and absolute discretion) ~~caused~~cause to be delivered to the Debtor, at the Lender's sole cost and expense, a clean, "multi-draw" irrevocable and unconditional standby letter of credit issued in favor of the Debtor with an initial face amount equal to $~~8,000,000~~6,000,000 from a bank which is a member of the New York Clearing House Association and is otherwise satisfactory to the Debtor (the "**Issuer**"), which letter of credit shall (w) be for a term commencing on the Closing Date (or, if such letter of credit is not delivered on the Closing Date, commencing not later than ten (10) Business Days after entry of the Interim Financing Order) and expiring at least three hundred sixty-five (365) days after the date of issuance of such letter of credit and which shall include "evergreen" provisions under which the Issuer agrees that such letter of credit shall renew automatically on such date of expiration for consecutive additional terms of three hundred sixty-five (365) days unless the Debtor has, at least sixty (60) days prior to the then applicable expiration date, received written notice from the Issuer expressly stating that such letter of credit will not be so renewed on the date of expiry (a "**Cancellation Notice**"), (z) provide that the Debtor may draw on such letter of credit at any time, or from time to time, upon written request delivered to Issuer and without any requirement that the Debtor deliver the original letter of credit or any other documentation to effect such draws, (y) provide that such letter of credit is freely assignable by the Debtor and (z) otherwise contain terms and conditions satisfactory to the Debtor in its sole and absolute discretion (such letter of credit, together with one or more Replacement Letters of Credit, being the "**Letter of Credit**").  The Letter of Credit shall be held by the Debtor as security for the performance by the Lender of its obligations under this Agreement and the other DIP Loan Documents.  Notwithstanding the foregoing, the requirements of this paragraph may be waived by the Debtor with the approval of the Bankruptcy Court.

(b)    Upon the failure of the Lender to fund any DIP Loan (other than the Interim DIP Loan and Estate Contribution Loan), the Debtor shall be entitled to draw upon the Letter of Credit to fund any such DIP Loan without prior notice to, or consent of, the DIP Lender, and without requiring that the Debtor first provide notice to, or make demand for such payment from, the Lender**.**

(c)    The Lender further agrees that following the Issuer's sending a Cancellation Notice, the Debtor may draw the full remaining undrawn amount of the Letter of Credit and deposit such amount in the Debtor Account, and the proceeds of such draw may be used in accordance with Section 2.04; provided, that upon receipt by the Debtor of a Replacement Letter of Credit satisfying the requirement set

forth in Section 2.06(a), the Debtor shall return to the Lender any funds drawn from the Letter of Credit and remaining in the Debtor Account at the time of receipt of the Replacement Letter of Credit.  Any draw on the Letter of Credit under this Section 2.06(c) shall not constitute the making of a DIP Loan, nor shall reduce the DIP Commitment; *provided,* however, that the disbursements of any such drawn amount from the Debtor Account ~~to the Disbursement Escrow~~ in accordance with the Section 2.04 shall constitute the making of a DIP Loan in an amount equal to such disbursed amount.

(d)      If any Letter of Credit will expire, or if any Issuer shall have delivered a Cancellation Notice, the Lender shall replace such Letter of Credit by delivering to the Debtor a Replacement Letter of Credit at least thirty (30) days prior to the expiration date of the then effective Letter of Credit in accordance with the terms of this Section 2.06.  If any Letter of Credit Issuer's credit rating is reduced below the requisite level specified above, or if the financial condition of such Issuer changes in any other materially adverse way, or if Debtor believes such Issuer is in a condition that it may soon become insolvent or placed into receivership, then the Lender within thirty (30) days of the Debtor's written request deliver to the Debtor a Replacement Letter of Credit with an issuing bank acceptable to the Debtor and otherwise satisfying the requirements of Section 2.06(a).

(e)      The Lender hereby covenants and agrees not to oppose, contest or otherwise interfere with any attempt by the Debtor to draw on the Letter of Credit.

## Section 3.      CONDITIONS TO EFFECTIVENESS AND FUNDING

3.01.    <u>Conditions to the Funding of the Interim DIP Loan</u>.  The obligation of the Lender to make the Interim DIP Loan is subject to the satisfaction by Debtor or waiver by Lender of the following conditions precedent:

(a)      Each DIP Loan Document shall be in form and substance reasonably satisfactory to the Lender, and shall have been duly executed by the Debtor and any other necessary parties and delivered to the Lender;

(b)      The Interim Financing Order shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(c)      The ~~Debtor~~UCC Account shall have been established; and

(d)      No Termination Event shall have occurred and be continuing or result after giving effect to the making of the Interim DIP Loan.

3.02.    <u>Conditions to the Funding of each Subsequent DIP Loan</u>.  The obligation of the Lender to make each Subsequent DIP Loan is subject to the satisfaction by the Debtor or waiver by Lender of the following conditions precedent:

(a)      The ~~Interim Financing Order or, following entry of the Final Financing Order, the Final~~applicable Financing Order, shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)      No Termination Event shall have occurred and be continuing or result after giving effect to the making of such Subsequent DIP Loan;

(c)      If such Subsequent DIP Loan is made prior to entry of ~~the Final~~a Subsequent Financing Order, the aggregate principal amount of all Subsequent DIP Loans then outstanding, after giving effect to the making of such Subsequent DIP Loan, shall not exceed $3,000,000; and

(d)      The aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) made pursuant to Section 2.01 then outstanding shall and after giving effect to the making of such Subsequent DIP Loan shall not exceed (x) the amount authorized to be borrowed pursuant to the Financing Order then in effect and (y) the DIP Commitment (after giving effect to the U.S. Trustee Sub-Limit).

3.03.    Conditions to the Funding of the Escrow Funding Loan.  The obligation of the Lender to make the Escrow Funding Loan is subject to the satisfaction of the following conditions precedent:

(a)      The Financing Orders shall be in full force and effect and shall not have been stayed, vacated, reversed, amended or otherwise modified without the prior written consent of the Lender in its sole and absolute discretion;

(b)      A Termination Event shall have occurred and be continuing;

(c)      The proceeds of each Subsequent DIP Loan remaining in the Debtor Account and the Disbursement Escrow shall be insufficient fund the Professional Fees Escrow; and

(d)      The aggregate principal amount of all DIP Loans (other than the Interim DIP Loan) made pursuant to Section 2.01 then outstanding and after giving effect to the making of the Escrow Funding Loan shall not exceed the DIP Commitment.

**Section 4.      REPRESENTATIONS AND WARRANTIES.**

The Debtor represents and warrants to the Lender that:

4.01.    Authorization; Enforceability.  Subject to any restrictions arising on account of the Debtor's status as "debtor" under the Bankruptcy Code, the Debtor has all requisite legal capacity to enter into this Agreement and the other DIP Loan Documents.  Upon entry of the Financing Orders, this Agreement and each other DIP Loan Document shall constitute a legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms, subject to any restrictions arising on account of the Debtor's status as a "debtor" under the Bankruptcy Code and subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.02.    Approvals; No Conflicts.  Subject to entry of the Financing Orders, this Agreement and the other DIP Loan Documents do not require any consent or approval of, registration or filing with, or any other action by, any governmental authority or any other third Person, nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of any DIP Loan Document, except such as have been obtained or made and are in full force and effect.

**Section 5.    REPORTING.**

5.01.    <u>Reporting</u>.

(a)        On the tenth (10th) day of each calendar month (or, if such day is not a Business Day, on the immediately preceding day that is a Business Day), commencing on May 10, 2022, the Debtor shall deliver to the Lender a report, setting forth all disbursements Debtor from the Debtor Account to the Disbursement Escrow made for the preceding month.

(b)        On Friday of each calendar week after the entry of this Interim DIP Order (commencing on the first Friday following the entry of this Interim DIP Order), each professional firm retained by the Debtor, the Committee and any examiner then appointed shall deliver to the Debtor, the Lender and the Committee a report of fee and/or cost accruals from the preceding week (each, an "**Accrual Report**" and, collectively, the "**Accrual Reports**").

5.02.    <u>Information</u>.  If reasonably requested by Lender, the Debtor will furnish to the Lender such financial reports and information in such detail as shall be reasonably satisfactory to the Lender.

~~Section 6. MILESTONES.~~

**Section 6.**    ~~6.01.~~ **[RESERVED~~.~~].**

**Section 7.    EXPENSE REIMBURSEMENT; INDEMNITY.**

7.01.    The Debtor shall reimburse or pay the Lender for all Out-of-Pocket Expenses, which expenses shall be paid in-kind by capitalizing, compounding and adding the amount thereof to the principal amount of the DIP Loans.  The Debtor hereby agrees to indemnify and hold harmless the Lender, and the officers, directors, members, managers, employees, attorneys and agents of the Lender (each an "**Indemnified Party**") from, and holds each of them harmless against, (a) any and all losses, liabilities, obligations, claims, actions, damages, costs and expenses (including reasonable attorney's fees) insofar as such losses, liabilities, obligations, claims, actions, damages, costs, fees or expenses are with respect to the DIP Loans and DIP Loan Documents, except and to the extent that the same results solely and directly from the gross negligence or willful misconduct of such Indemnified Party. The Debtor hereby agrees that this indemnity shall survive termination of this Agreement.

**Section 8.    TERMINATION EVENTS**

8.01.    Notwithstanding anything hereinabove to the contrary, each of the following shall constitute a "**Termination Event**":

(a)        the Bankruptcy Court shall enter an order granting relief from the automatic stay in connection with PAX v. Kwok, Index No. 652077/2017 (N.Y. Sup.) (the "**PAX Litigation**")~~, and/or the United States District Court for the Southern District of New York shall deny a motion to transfer venue of the PAX Litigation~~;

(b)        without the consent of the DIP Lender, the Chapter 11 Case is dismissed or converted to

a case under chapter 7 of the Bankruptcy Code; or ~~the Debtor shall file a motion or other pleading seeking the dismissal of the Chapter 11 Case or seeking conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;~~

(c)     there shall be appointed a chapter 11 trustee~~, or the Debtor shall file a motion or other pleading seeking such appointment; or~~.

~~(d) the Bankruptcy Court shall terminate the Debtor's exclusive right to file a plan of reorganization pursuant to section 1121(b) of the Bankruptcy Code.~~

8.02.   Remedies.

(a)     Subject to the Financing Orders, upon the occurrence and during the continuance of a Termination Event, the Lender's commitment to fund any DIP Loans pursuant to Section 2.01(c) shall terminate and the Lender shall have no obligation to make any additional DIP Loans (other than the Escrow Funding Loan required to be made pursuant to Section 2.01(d)).

(b)     In the event the Chapter 11 Case is dismissed, absent contrary direction contained in an order of the Bankruptcy Court, the Debtor shall return to the DIP Lender any proceeds of the DIP Loans remaining in the Debtor Account.

## Section 9.   MISCELLANEOUS

9.01.   This Agreement and the other DIP Loan Documents constitute the entire agreement between the Debtor and the Lender with respect to the matters contained herein and therein; supersede any prior agreements; can be waived or changed only by a writing signed by each party hereto or thereto, and shall bind and benefit each party hereto or thereto and their respective successors and assigns, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

9.02.   In no event shall the Debtor, upon demand by the Lender for payment of any DIP Loan Obligations, by acceleration of the maturity thereof or otherwise, be obligated to pay interest and fees in excess of the amount permitted by law and the Lender shall never be entitled to receive, charge or apply, as interest on any DIP Loan Obligations, any amount in excess of the maximum amount of interest permissible under applicable law. If the Lender ever receives, collects or applies any such excess, it shall be deemed a partial repayment of principal and treated as such; and if principal is paid in full, any remaining excess shall be refunded to the Debtor. This paragraph shall control every other provision hereof and each other DIP Loan Document.

9.03.   If any provision hereof or of any other agreement made in connection herewith is held to be illegal or unenforceable, such provision shall be fully severable, and the remaining provisions of the applicable agreement shall remain in full force and effect and shall not be affected by such provision's severance.

9.04.   GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS.

(a)     THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF

CONNECTICUT AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, ANY CONNECTICUT  STATE COURT SITTING IN HARTFORD COUNTY AND THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN OR IN ANY OTHER DIP LOAN DOCUMENT WILL PREVENT ANY PARTY FROM BRINGING ANY ACTION TO ENFORCE ANY AWARD OR JUDGMENT OR EXERCISE ANY RIGHT UNDER THE DIP LOAN DOCUMENTS IN ANY OTHER FORUM IN WHICH JURISDICTION CAN BE ESTABLISHED. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS.

9.05.    Notices.   Except as otherwise herein provided, any notice or other communication required hereunder shall be in writing (provided that, any electronic communications including electronic mail shall constitute a notice or communication in writing), and shall be deemed to have been validly served, given or delivered when (i) hand delivered, (i) in the case of any electronic communications, the day sent, (iii) one (1) Business Day after deposit with a nationally recognized overnight delivery service, or (iv) three Business Days after deposit in the United States mails, with proper first class postage prepaid, return receipt requested, and addressed to the party to be notified or to such other address as any party hereto may designate for itself by like notice, as follows:

(a)    if to the Lender, at:

Golden Spring (New York) Ltd.
162 E 64th St.
New York, NY 10065
Attention:
Email: admin@gsnyus.com

With a copy to:

Email: arethusaf@protonmail.com

- and -

Cohn Birnbaum & Shea, P.C.
100 Pearl Street, Hartford, CT 06103
Attention: Scott D. Rosen
Email srosen@cbshealaw.com

(b)      if to the Debtor, to

     373 Taconic Road
     Greenwich, CT 06831

With a copy to:

     Brown Rudnick LLP
     Seven Times Square
     New York, NY 10036
     Attention: William R. Baldiga
     Email : wbaldiga@brownrudnick.com
     Email : Attention: Bennett S. Silverberg
     Email bsilverberg@brownrudnick.com

    9.06.    In the event of any inconsistency between the terms of any Financing Order, on the one hand, and this Agreement and the other DIP Loan Documents, on the other hand, the terms of such Financing Order shall control.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective, executed, accepted and delivered as of the date first set forth above by their proper and duly authorized officers as of the date set forth above.

**DEBTOR:**

_____

Ho Wan Kwok (a/k/a Miles Kwok a/k/a Miles Guo a/k/a Wengui Guo)

**LENDER:**

**GOLDEN SPRING (NEW YORK) LTD.**

By:_____
Name:_____
Title:_____

64669999 v3
~~61669999 v4~~64683970 v9-WorkSiteUS-038210/0001

13

| Summary report: Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 5/3/2022 10:37:08 AM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 64669999_4.docx | |
| **Modified DMS:** iw://WORKSITE/WorkSiteUS/64683970/9 | |
| **Changes:** | |
| Add | 46 |
| Delete | 40 |
| Move From | 8 |
| Move To | 8 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 102 |

## **EXHIBIT 5**

Proposed DIP Budget

| Ho Wan Kwok | | | | | | |
|---|---|---|---|---|---|---|
| Chapter 11; Case No. 22-50073 (JAM) | | | | | | |
| Professional Fee/UST Fees Accrual Schedule | | | | | | |
| | | | | | | |
| | | Total | | Week Beginning | | |
| | | through 4/30/2022 | 5/1/2022 | 5/8/2022 | 5/15/2022 | 5/22/2022 | 5/29/2022 |
| Professional Fee Accruals | | | | | | |
| | | | | | | |
| *Debtor Professionals* | | | | | | |
| **Brown Rudnick** | | | | | | |
| Accrued Professional Fees & Expenses (Beginning of Period) | $ 1,874,852 | $ 1,874,852 | $ 2,099,852 | $ 2,324,852 | $ 2,549,852 | $ 2,774,852 |
| Fees Accrued During Period | | $ 225,000 | $ 225,000 | $ 225,000 | $ 225,000 | $ 225,000 |
| Cumulative Accrual | $ 1,874,852 | $ 2,099,852 | $ 2,324,852 | $ 2,549,852 | $ 2,774,852 | $ 2,999,852 |
| **Verdolino & Lowey, P.C.** | | | | | | |
| Accrual of Professional Fees & Expenses (Beginning of Period) | $ 150,000 | $ 150,000 | $ 170,000 | $ 190,000 | $ 210,000 | $ 230,000 |
| Fees Accrued During Period | | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 |
| Cumulative Accrual | $ 150,000 | $ 170,000 | $ 190,000 | $ 210,000 | $ 230,000 | $ 250,000 |
| | | | | | | |
| *Committee Professionals* | | | | | | |
| **Pullman & Connolly/FA/Fraud Investigation Consultant** | | | | | | |
| Accrual of Professional Fees & Expenses (Beginning of Period) | $ 110,000 | $ 110,000 | $ 190,000 | $ 270,000 | $ 350,000 | $ 430,000 |
| Fees Accrued During Period | | $ 80,000 | $ 80,000 | $ 80,000 | $ 80,000 | $ 80,000 |
| Cumulative Accrual | $ 110,000 | $ 190,000 | $ 270,000 | $ 350,000 | $ 430,000 | $ 510,000 |
| | | | | | | |
| **United States Trustee** | | | | | | |
| Accrual of Quarterly Fees (Beginning of Period) | $ 944 | $ 944 | $ 944 | $ 944 | $ 944 | $ 944 |
| Fees Accrued During Period | $ - | $ - | $ - | $ - | $ - | $ 24,000 |
| Cumulative Accrual | $ 944 | $ 944 | $ 944 | $ 944 | $ 944 | $ 24,944 |
| | | | | | | |
| | | | | | | |
| **Total accrual** | | | | | | |
| **Debtor Professional Fees** | $ 2,024,852 | $ 2,269,852 | $ 2,514,852 | $ 2,759,852 | $ 3,004,852 | $ 3,249,852 |
| **Committee Professional Fees** | $ 110,000 | $ 190,000 | $ 270,000 | $ 350,000 | $ 430,000 | $ 510,000 |
| **UST Fees** | $ 944 | $ 944 | $ 944 | $ 944 | $ 944 | $ 24,944 |
| **Total Accrued Professional & UST Fees** | $ 2,135,796 | $ 2,460,796 | $ 2,785,796 | $ 3,110,796 | $ 3,435,796 | $ 3,784,796 |
| **(less) Accrued Professional & UST Fees Against Retainers (1)** | $ (698,165) | $ (698,165) | $ (698,165) | $ (698,165) | $ (698,165) | $ (698,165) |
| **DIP Needs to Fund Accruals** | $ 1,437,631 | $ 1,762,631 | $ 2,087,631 | $ 2,412,631 | $ 2,737,631 | $ 3,086,631 |
| | | | | | | |
| | | | | | | |
| **Draws Against DIP Financing** | | | | | | |
| **DIP Loan Draws (Held by OCC) for Application Against OCC Fees** | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 |
| **Subsequent DIP Draws (Held by Debtor Account) for Application Against Debtor & UST Fees** | | | | | | |
| | $ 1,327,631 | $ 1,572,631 | $ 1,817,631 | $ 2,062,631 | $ 2,307,631 | $ 2,576,631 |
| **Total DIP Draws** | $ 3,327,631 | $ 3,572,631 | $ 3,817,631 | $ 4,062,631 | $ 4,307,631 | $ 4,576,631 |
| | | | | | | |
| Note 1:  Remaining DIP Loan Availability (Out of Total $8 Million) | $ 4,672,369 | $ 4,427,369 | $ 4,182,369 | $ 3,937,369 | $ 3,692,369 | $ 3,423,369 |
| Note 2:  Remaining Availability of $2 Million Interim DIP Loan for OCC Professionals | $ 1,890,000 | $ 1,810,000 | $ 1,730,000 | $ 1,650,000 | $ 1,570,000 | $ 1,490,000 |
| Note 3:  Remaining DIP Loan Availability under Interim DIP Order (Out of Interim Availability of $5 Milli | $ 1,672,369 | $ 1,427,369 | $ 1,182,369 | $ 937,369 | $ 692,369 | $ 423,369 |
| | | | | | | |
| (1) $250,000 retainer balance remains after accrual of Brown Rudnick fees against retainer. | | | | | | |