**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Ho Wan Kwok, | : Case No. 22-50073 (JAM) |
| | : |
| Debtor.[1] | : |
| | : |
| | : |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103(a) AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF GREGORY A. COLEMAN OF COLEMAN WORLDWIDE ADVISORS LLC AS FRAUD INVESTIGATION CONSULTANT, EFFECTIVE AS OF MAY 3, 2022**

Pursuant to 11 U.S.C. §328(a) and 1103(a), Federal Rule of Bankruptcy Procedure 2014(a) and D. Conn. LBR 2014-1, the Official Committee of Unsecured Creditors (the "Committee") of the above-named Debtor and Debtor in Possession, Ho Wan Kwok (the "Debtor"), files this application for an order authorizing and approving the employment of Gregory A. Coleman of Coleman Worldwide Advisors LLC, effective as of May 3, 2022 (the "Application").

In support of the Application, the Committee relies upon and incorporates by reference (i) the Declaration of Gregory A. Coleman in Support of the Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing and Approving the Employment and Retention of Gregory A. Coleman of Coleman Worldwide Advisors as a Fraud Investigator (the "Coleman Declaration"), attached hereto as **Exhibit A**, and (ii) the Declaration of Samuel Nunberg, not in his individual capacity but solely his capacity as Chairman of the Committee, in

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

Support of the Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Gregory A. Coleman of Coleman Worldwide Advisors as Fraud Investigator (the "Nunberg Declaration"), attached hereto as **Exhibit B**. In further support of the Application, the Committee respectfully represents:

1. On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has remained a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2. No trustee or examiner has yet been appointed in the Debtor's bankruptcy case, although on March 19, 2022, the United States Trustee ("UST") filed a Motion for Order Directing Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Examiner/Trustee Motion").

3. Following a hearing held on April 27, 2022, the hearing on the Examiner/Trustee Motion was continued to May 25, 2022 at 10:00 a.m., the same date and time as an evidentiary hearing that has been scheduled on Pacific Alliance Asia Opportunity Fund L.P.'s ("PAX") Motion to Dismiss Chapter 11 Case or, in the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee. (the "Dismissal Motion"). According to the UST's Amended Proposed Order at n. 1 (ECF No. 116), the Debtor has agreed to the Court's directing the UST to appoint an examiner in this case.

4. On March 21, 2022, the Committee was officially appointed by the United States Trustee. The members of the Committee are Rui Ma, Ning Ye and Samuel Dan Nunberg. The Committee has selected Pullman & Comley, LLC to serve as its lead counsel in this case, whose retention was approved by order entered on April 29, 2022.

5. On May 3, 2022, the Committee selected Gregory A. Coleman of Coleman Worldwide Advisors ("Mr. Coleman") as its fraud investigation consultant and Dundon Advisers as its financial advisor.

6. Among the first motions to have been filed by the Debtor was a Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing, and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief (the "DIP Motion"), filed on March 22, 2022. It seeks to provide up to $8 million in postpetition financing to fund, *inter alia*, professionals retained by the Committee to properly investigate the Debtor's assets and financial affairs, including assets that may reside with or that are recoverable from entities that are claimed to be owned by the Debtor's son and daughter, as well as other concealed assets or interests.

7. Another significant asset owned by the Debtor, but which he maintains is held in trust for his Son, is his interest in the Sherry-Netherland apartment located at 781 Fifth Avenue, New York, NY, which the Debtor purchased in March 2015 for $67.5 million through Genever Holdings LLC ("Genever NY") (the "Sherry-Netherland Apartment") (*See* PAX Motion, ECF No. 57, n. 36 and materials cited therein, and Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions, ECF No. 107 (Kwok Dec.") ¶17).

8. Various objections were filed to the DIP Motion, all of which, along with the DIP Motion, were the subject of an evidentiary hearing on April 27, 2022. At the conclusion of the evidentiary hearing, the Court directed the parties to attempt to work out an interim order which contains a budget and deletes various findings that were included in the proposed interim order that the Court found were inappropriate to be made and/or could not be supported at this stage of

the proceedings. A status conference has been scheduled to consider a revised Interim DIP Order on May 4 at 2 p.m.

9. On April 10, 2022, the Debtor filed a Proposed Plan of Reorganization (the "Plan"), but without a disclosure statement in contravention of Fed. R. Bankr. P. 3016(b) and without consulting with the Committee, as is contemplated by section 1103(c)(3) of the Bankruptcy Code. The Committee opposes the Plan filed by the Debtor for, among other reasons, (i) its purported "contribution" of the Lady May by its titleholder in exchange for consensual releases of the purported plan funders, Golden Spring (New York) Ltd. and HK International Funds Investments (USA) Limited, LLC (owned and controlled by the Debtor's son and daughter, respectively) (the "Plan Funders"), when the Debtor has already been found to have *the* beneficial ownership in the boat; (ii) its failure to account for significant other assets which the Committee believes a proper and thorough investigation will show belong to the Debtor; and (iii) its release of, and extinguishment of claims and causes of action against, the Plan Funders *and their affiliates*, by virtue of Art. IX.B. of the Plan and the Plan's exclusion from "Creditor Trust Estate Assets" of any and all "Released Claims" (which include all claims or causes of action against the Plan Funders and their affiliates).

10. Prior to the Petition Date, in connection with proceedings held on February 2, 2022 in New York Supreme Court relating to the Debtor's violations of court orders restraining the movement of the yacht known as the "Lady May," which led to $134 million in contempt fines imposed for such violations, a February 9, 2022 Decision of Judge Barry R. Ostrager found, *inter alia*, that: (i) the Debtor had engaged in "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members"; and (ii) the Debtor had "secreted his assets in a maze of corporate entities and

with family members" (PAX Motion, ECF No. 57, Ex. B, Declaration of Peter Friedman, ¶2, Ex. 1).

11. Notwithstanding Judge Ostrager's findings, the Debtor continues to maintain in this case that he has only $3900 in assets and that it his "family" that holds all the wealth, including his son's two companies, Golden Spring (New York), Ltd. and Lamp Capital, LLC, and his daughter's company, HK International Funds Investments (USA) Limited, LLC, which was able to raise $37 million almost instantaneously to post with an escrow agent to ensure the return of the Lady May to this jurisdiction (ECF No. 299).  And, as mentioned, the Debtor claims he holds his interest in the Sherry-Netherlands Hotel in trust for his son.  These "family" assets, and likely others, are of significant interest to the Committee in determining what assets should be included as property of this estate and available to pay creditors.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 328 and 1103, Fed. R. Bankr. P. 2014, and D. Conn. LBR 2014-1.

## RELIEF REQUESTED AND REASONS THEREFOR

12. By this Application, the Committee seeks entry of an Order authorizing and approving the retention and employment of Coleman to perform services in connection with this chapter 11 case.

13. By separate application, the Committee is seeking to retain Dundon as its financial advisor.  There will be no duplication of services or effort as between Dundon and

Coleman, who will coordinate with one another and work collaboratively in rendering services to the Committee.

14. Section 1103(a) of the Bankruptcy Code empowers a committee to employ "one or more attorneys, accountants, or other agents to represent or perform services for [the] committee." Correspondingly, section 328(a) of the Bankruptcy Code empowers a committee appointed under 11 U.S.C. § 1102, with the Court's approval, to employ professionals under 11 U.S.C. § 1103 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis, to perform services for such committee.

15    In light of the scope and scale of the investigation that must be undertaken into the Debtor's interest in so-called family assets and assets that are believed to be concealed, the Committee has selected Mr. Coleman to provide fraud investigation consulting and expert witness services. Mr. Coleman has extensive experience conducting complex investigations of the perpetrators of asset fraud, money laundering, check kiting, wire fraud, and other financial schemes. As such, his services will be vital to the Committee's efforts in this chapter 11 case going forward.

16.    Mr. Coleman is a former FBI agent best known as the case agent responsible for the investigation that led to the prosecution of Jordan Belfort, the Wolf of Wall Street. Mr. Coleman has over two decades of experience investigating financial crimes, money laundering, and fraudulent financial conduct and several years of experience in the seizure and forfeiture of criminally derived assets for the Federal Bureau of Investigation. He is an expert in suspicious activity reporting and tracing proceeds of crime through financial institutions. A curriculum vitae for Mr. Coleman is attached hereto as **Exhibit C.**

17. The professional services that Mr. Coleman will provide to the Committee include, but are not limited to:

    a. investigating the location and sources of assets or property interests in which the Debtor may have an interest;

    b. tracing of assets putatively held or owned by others to the Debtor;

    c. assisting Committee counsel in utilizing the investigatory tools available under the Bankruptcy Code and Rules and in identifying and pursuing potential recoveries of assets for the benefit of the estate and its creditors;

    d. coordinating and working together with the Committee's financial advisor in a manner that will avoid duplication of effort and provide symbiotic services to the Committee;

    e. if necessary, participating as a witness in hearings before the bankruptcy court with respect to matters upon which Coleman has provided services; and

    f. other activities as are approved by the Committee, the Committee's counsel, and as agreed to by Coleman.

18. Subject to the Court's approval and pursuant to §§ 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Connecticut (the "Local Rules") and the rules and other procedures which this Court may fix, the Committee requests that Mr. Coleman be compensated on an hourly basis, plus reimbursement of his actual and necessary expenses incurred, in connection with representing the Committee in this chapter 11 case. The Committee has been advised that Mr. Coleman's compensation shall be in accordance with the ordinary and customary rates which are in effect on the date the services are rendered or the expenses are incurred.

19. Mr. Coleman's standard hourly rate is $500 and other personnel he may use for this engagement do not exceed that rate.

20. The hourly rate set forth above is subject to periodic adjustments to reflect economic and other conditions, and the Committee has been advised of that fact. Mr. Coleman commits to providing ten (10) days' notice to the Debtor, the Committee, and the U.S. Trustee before implementing any increases in his rate.

21. Based upon the Coleman Declaration, filed contemporaneously herewith, the Committee is satisfied that (i) Mr. Coleman represents no interest adverse to the Committee, the Debtor, his estate, or any other party in interest in the matters upon which he is to be engaged and that his employment is in the best interest of the estate, (ii) has no connection with the U.S. Trustee or any other person employed in the office of the U.S. Trustee, and (iii) Mr. Coleman has not been paid any retainer against which to bill fees and expenses. To the best of the Committee's knowledge, Mr, Coleman has no connection with creditors or any other party in interest except as otherwise noted in the Coleman Declaration.

22. No prior application for the relief requested herein has been made to this Court.

**WHEREFORE**, the Committee respectfully requests that an order be entered authorizing it to retain and employ Mr. Coleman as its fraud investigation consultant in the above-captioned case, effective as of May 3, 2022, and granting such other and further relief as may be deemed just and proper.

Dated: May 4, 2022

Respectfully submitted,
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HO WAN KWOK, BY ITS CHAIRMAN,**

By: */s/Samuel Nunberg*
Samuel Dan Nunberg, not in his individual capacity but solely in his capacity as Chairperson of the Official Committee of Unsecured Creditors