**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,<br><br>            Debtor. | Chapter 11<br><br>Case No: 22-50073 (JAM) |

**MEI GUO'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c)(1)(B) and 45(d)(3)(A)(4), made applicable to this proceeding by Fed. R. Bankr. P. 9014 and 9016, and D. Conn. L. Civ. R. 30(a), made applicable to this proceeding by Local Rule of Bankruptcy Procedure 1001-1(b), party in interest Mei Guo ("Ms. Guo"), individually and as the designated representative of party in interest Hong Kong International Funds Investments (USA) LLC ("HKI Delaware"), respectfully moves for a protective order (the "Motion") establishing the means by which Pacific Alliance Asia Opportunity Fund, L.P. ("PAX") may conduct the May 16, 2022, depositions of Ms. Guo and HKI Delaware in connection with PAX's Motion to Dismiss Chapter 11 Case or, In the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee (the "Motion to Dismiss") (Doc. No. 183). In support hereof, Ms. Guo represents as follows:

**Introduction**

This Motion seeks to ensure, to the extent possible, the physical safety and emotional security of a young woman through entry of a Court Order establishing reasonable safeguards related to her upcoming deposition. As set forth in detail below, Ms. Guo is the subject of an ongoing social media campaign to harass and intimidate her that includes dissemination of altered and/or fabricated images of her and public references to her location. These messages advocate and encourage sexual assault and other forms of violence against Ms. Guo and her family.

1

Moreover, the persons responsible for this heinous conduct have a history of exploiting information made public through judicial proceedings, including the Debtor's Chapter 11 Case.

PAX has a right to Ms. Guo's and HKI Delaware's sworn testimony. At the same time, Ms. Guo has a fundamental right to be safe and free from threats and intimidation. Ms. Guo respectfully submits that a Court Order allowing her to testify from an undisclosed location—with her camera turned off once a certified Court reporter has verified her identify— adequately and fairly balances those interests.

**A.** **Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 USC §§ 157 and 1334.

2. The Motion to Dismiss is a core proceeding pursuant to 28 USC § 157(b)(2)(A).

3. Venue is proper in this district pursuant to 28 USC § 1409(a).

**B.** **Good Cause Exists to Issue the Requested Protective Order**

   *i.* *Ms. Guo and Her Family Have Been Persecuted by the Chinese Communist Party*

4. Ms. Guo is the daughter of the debtor Ho Wan Kwok (the "Debtor"). (*See* Affidavit of Mei Guo, sworn to January 28, 2022, (the "January 28 Aff."), submitted to the New York State Supreme Court in support of the Debtor's opposition to motion for contempt in the matter captioned *Pacific Alliance Asia Opportunity Fund, L.P v. Kwok Ho Wan, et al.*, Index No. 652077/2017 (the "New York Action"), at ¶1. A copy of the January 28 Aff. is attached hereto as Exhibit A).

5. The Debtor has been a political target of the Chinese Communist Party ("CCP") for many years; the Debtor fled to the United States in early 2015 after learning that the CCP was going to arrest him on politically motivated charges based upon fabricated evidence. (*Id.*, at ¶2).

6. The CCP took out its anger and frustration over the Debtor's refusal to submit to false charges on Ms. Guo, her mother, and her extended family. (*Id.*, at ¶3).

7. Days after the Debtor arrived in the United States, Ms. Guo and her mother, who remained in mainland China, were detained by the CCP for approximately 10 days. (*Id.*, at ¶4).

8. Ms. Guo was thereafter detained a second time in December 2016. The second detention lasted approximately 40 days. (*Id.*).

9. During each of her detentions, Ms. Guo's communications with her family were cutoff, and she was physically and psychologically tortured. (*Id.*). For example, Ms. Guo was kept awake for 48 hours at a time, monitored every minute of every day, and prohibited from physically moving, using the bathroom, or even brushing her hair, without the permission of her jailers. (*Id.*).

10. Ms. Guo was eventually released by the CCP, but the Debtor remained an outspoken critic of the CCP and its many abuses, which continued to anger Chinese authorities. (*Id.*, at 5).

11. In or about April 2017, a high-ranking Chinese official told Ms. Guo and her mother that they would be permitted to briefly visit the Debtor in the United States in order to convince him to stop exposing the CCP's corruption and to return to China. (*Id.*).

12. On May 16, 2017, Ms. Guo and her mother traveled from China to the United States accompanied by the high-ranking Chinese official and several Chinese security agents. Ms. Guo and her mother were bargaining chips that the CCP intended to use to lure the Debtor back to China. (*Id.*, at 6).

13. The high-ranking Chinese official was unable to coerce the Debtor to return to China, and once in the United States Ms. Guo and her mother were able to evade the Chinese

official's demands that they return to China as well. Instead, they remained in the United States. (*Id.*).

14. Ms. Guo has a significant and well-founded fear of being re-arrested and tortured again if she is returned to China; Ms. Guo is thus presently seeking political asylum in the United States. (*Id.*).

 ii. *Ms. Guo is the Target of Harassment, Violent Threats and Intimidation Over Social Media*

15. Although Ms. Guo is no longer subject to the immediate dangers of living in China, she is not beyond the reach of the CCP and its agents. Indeed, Ms. Guo is regularly the subject of threats on social media, and she is forced to live in constant fear for her safety. (*Id.*).

16. Politically interested third parties have made threats and vile and disgusting social media comments directed to Ms. Guo for years. These threats and comments became more focused when Ms. Guo testified in the New York Action.

17. The organizations and individuals who seek to harass and intimidate Ms. Guo have no boundaries. Without limitation, they have (i) disseminated falsified or altered images purporting to be Ms. Guo from fake social media accounts purporting to belong to her; (ii) attempted to publicly disclose Ms. Guo's location while publicly encouraging people to sexually assault Ms. Guo and perform other horrific and violent acts toward her; and (iii) impersonated individuals who are close with Ms. Guo or her family in order to spread false information about her from *seemingly* credible sources.

18. The social media campaign against Ms. Guo dates back at least 2017, shortly after Ms. Guo escaped mainland China to the United States. In October of 2017, a fake twitter account purporting to belong to Yvette Wang, a business associate of Ms. Guo's brother, posted an altered

image of Ms. Guo that was taken from her phone. The post stated Ms. Guo's age and her height. (See Exhibit B).[1]

19. In November of 2017, someone posted from a Twitter account stating: "if you don't rape Mei Guo tonight, you will have no food tomorrow." (See Exhibit C).

20. In December of 2017, a false Twitter account of someone purporting to be the Debtor's assistant posted Ms. Guo's picture from her Chinese government issued identification from when she was in high school, with an alteration made to one of Ms. Guo's eyes. Only the Chinese government had this photograph. The post purports to say that the owner of the account felt bad for Ms. Guo because her father raped many women and that she was in the hospital with Ms. Guo after her abortion. (See Exhibit D).

21. Additional Tweets around this time no longer bear dates because the accounts have been suspended. For example, a fake Twitter account purporting to belong to an assistant of the Debtor at the time, Yu Yong, which also depicted Ms. Yu's photograph from her government issued identification, purports to say that Ms. Yu had to fly to the United States right away because Ms. Guo was pregnant and needed to have another abortion (allegedly her third). The post includes a falsified record purportedly from Planned Parenthood that refers to Ms. Guo. (See Exhibit E).

22. The social media activity directed to Ms. Guo escalated shortly before she testified in connection with the New York contempt hearing on February 2, 2022. Many of these posts establish that people are watching Ms. Guo's involvement in court proceedings related to the

---

[1] The social media posts described herein are written in Chinese. The undersigned has attached screenshots of these posts to allow any party in interest to verify their content. Ms. Guo has not had time to obtain an official translation of them since the time her counsel determined that this Motion was necessary. Counsel will obtain official translations upon the Court's request.

Debtor's dispute with PAX and using it to disseminate information about Ms. Guo to harass and intimidate her.

23. For example, on January 5, 2022, someone posted from a Twitter account that if someone was raping Ms. Guo to please count him in. (See Exhibit F).

24. On January 6, 2022, someone posted from a Twitter account: "I will stop by Miles Kwok's building today to wait for Mei and to check if she has **** come and join me, I will be there around 2pm." (See Exhibit G).

25. Ms. Guo's January 28 Aff. was signed and filed on the New York Supreme Court's docket on January 28, 2022. On January 29, someone posted a portion of her January 28 Aff. on Twitter, including her notarized signature page, and stated: "Mei Guo is in the states and about to go to the court, according to the document she signed, she signed it on Jan 28th in Queens, she showed her ID and got notarized which means she is in the states!" (Exhibit H).

26. On February 1, 2022, someone posted on Twitter: "Mei Guo's hearing tomorrow is not public, it's like you go to a nude beach but hiding your private parts." (Exhibit I).

27. On February 7, 2022, someone posted on Twitter a Chinese translation of portions of Ms. Guo's testimony from the February 2, 2022, contempt hearing adlibbed with foul language commentary. (Exhibit J).

28. On February 8, 2022, someone posted a screenshot of a letter from Ms. Guo's New York counsel to Judge Ostrager and stated: "Mei Guo writes a letter to the judge and says, 'The lady may be back asap.' Why is this ugly pig always wanting to make a scene? Any judge will F*** her whole family when they see this letter." (Exhibit K).

29. Moreover, the statements directed toward Ms. Guo have continued since the Debtor filed his Chapter 11 petition. On March 2, 2022, someone posted on Twitter: "The hearing was

virtual, I wonder where is Mei Guo" "She will end up in Fengxian (a village in China that they chain up a girl for sex slave for the governor officials)." (Exhibit L).

30. On April 5, 2022, someone posted: "Feb 2nd, after the court. You can just tell from her transcript, her words are confusing and not even make sense, just like her asshole dad...." (Exhibit M).

31. Based on (i) the CCP's actions toward Ms. Guo and her family; (ii) efforts undertaken by third parties, at least some of whom appear to be agents of the CCP, to post fake and/or altered images of Ms. Guo; and (iii) efforts undertaken by third parties to report on Ms. Guo's location while encouraging physical violence and sexual assault against her, Ms. Guo has a compelling need to limit access to her image and information concerning her location in order to protect her physical safety and emotional security.

C. **Law and Argument**

32. Fed. R. Civ. P. 26(c)(1)(B) provides:

(c) PROTECTIVE ORDERS.

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
    *    *    *
(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; . . . .[2]

---

[2] As set forth in the accompanying declaration of Aaron A. Romney, submitted in accordance with D. Conn. L. Civ. R. 37, counsel for Ms. Guo and PAX conferred but were unable to resolve or narrow the matters presented by the Motion.

7

33. Fed. R. Civ. P. 45(d)(3)(A)(4), applicable to the subpoena served on Ms. Guo to conduct her individual deposition, provides in pertinent part:

(3) QUASHING OR MODIFYING A SUBPOENA.

(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

. . .

(iv) subjects a person to undue burden.

34. "A court has broad discretion regarding whether to issue a protective order under Rule 26(c)." *Burgess v. Town of Wallingford*, No. 3:11-CV-1129 (CSH), 2012 U.S. Dist. LEXIS 135781, *21-*22 (D. Conn., Sept. 21, 2012), (citations omitted). Moreover, "[t]he text of Rule 26(c) is construed liberally to include a wide range of potential harms not explicitly listed." *Id.*, at *22-*23, (citations omitted). The party seeking a protective order under Rule 26(c) has the burden to establish the existence of good cause to obtain the relief sought. (*Id.*, at *22-*23), (citations omitted). The same framework applies to a motion to quash or modify a subpoena under Rule 45(d). *Garneau v. Paquin*, No. 3:13-CV-00899(AVC), 2015 U.S. Dist. LEXIS 70272, *3-*4 (D. Conn., June 1, 2015).

35. Ms. Guo has been, and continues to be, subjected to both physical and psychological persecution by the CCP and others. She seeks a protective order solely to minimize the extent that the discovery process in her father's Chapter 11 Case aggravates the abuse to which she is subject. Under the circumstances present here, the discovery process should not require Ms. Guo to reveal her location at any given time or present herself in a manner that would allow third parties to capture and disseminate her image online to an audience that encourages violence and sexual assault against her.

36. For these reasons, good cause exists for the Court to issue a protective order allowing Ms. Guo to testify at her deposition and as HKI Delaware's corporate representative from

8

a remote, undisclosed location without broadcasting her image to anyone other than the Court reporter who agrees to be subject to a confidentiality agreement and will verify her identify. *See Garneau*, 2015 U.S. Dist. LEXIS 70272, at *6 ("Ordinarily, good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'") (citations omitted); *see also Securities Indus. and Fin. Markets. Ass'n. v. Garfield*, 469 F. Supp. 2d 25, 36 (D. Conn. 2007) (granting preliminary injunction preventing on-line publication of a list of political donors and their family members based on privacy rights and noting that "[t]he Internet has revolutionized the scope and manner in which information is available for public access. The Internet has also, unfortunately, provided criminals with a new medium through which to commit crimes."); *Burgess*, at *41-*42 (entering protective order precluding plaintiff from posting transcripts of depositions conducted in the case on-line without redactions because "the personal information disclosed includes such identifying information as addresses, phone numbers, and birth dates—materials which, when placed on the Internet, might provide means for unwanted access to those individuals named"); D. Conn. L. Civ. R. 30(a) (noting that depositions constitute private matters "which the public is not entitled to attend").

37. Ms. Guo's and HKI Delaware's depositions have been noticed and subpoenaed, respectively, for May 16, 2022 beginning at 10:00 a.m.

38. The Notice and the Subpoena each provide in pertinent part that:

1. The deposition will be conducted either in person or remotely, using audio-visual conference technology;
2. The court reporter will either report the deposition from the same location as the witness or a location separate from the witness and will remotely administer the oath to the witness;
3. Counsel for the parties and their clients will participate either from the same location or from separate locations;
4. The witness may be required to provide government-issued identification, which must be legible on camera;
\*    \*    \*

9

      8. The deposition may be recorded by stenographic, electronic, and/or visual means; and

      9. Counsel for all parties will be required to stipulate on the record their consent to this manner of deposition and their waiver of any objection to this manner of taking the deposition, including any objection to the admissibility at trial of this testimony based on the manner of remote deposition taking.

(A copy of the notice of HKI Delaware's Deposition is attached hereto as Exhibit N; a copy of the subpoena compelling Ms. Guo's deposition is attached hereto as exhibit O).[3]

    39.    Ms. Guo does not seek to preclude or delay her deposition or HKI Delaware's deposition. Ms. Guo only requests that the Court order procedural safeguards to protect her legitimate privacy and security interests and prevent third parties from obtaining and disseminating her image or information about her location.

    40.    Under the unique and compelling circumstances present here, Ms. Guo respectively seeks an order directing that her individual deposition and HKI Delaware's deposition proceed as follows:

      a. That PAX conduct the deposition by remote means using either the Microsoft Teams or WebEx platforms. That PAX not be permitted to conduct the deposition on Zoom;

      b. That a court reporter who agrees to a confidentiality agreement control the deposition platform;

      c. That Ms. Guo and the court reporter be permitted to log-in to the platform ten minutes before all other participants so the reporter may confirm Ms. Guo's identity and swear-her-in;

---

[3] PAX originally noticed Ms. Guo's deposition for May 12, 2022. The parties moved it to May 16, 2022 by agreement.

d.  That following confirmation of her identity by the reporter, Ms. Guo be permitted to turn off her camera, that the reporter not be permitted to allow appearing counsel to enter the virtual room until after Ms. Guo has turned off her camera, and that Ms. Guo not be compelled to turn her camera back on during the deposition;

e.  That no party be permitted to compel Ms. Guo to provide any information concerning her residential address, or the physical location from where she is providing testimony. That no party likewise be permitted to compel Ms. Guo to provide any information concerning the residential address or physical location of her family members who have been subjected to persecution by the CCP and ongoing harassment;

f.  That Ms. Guo's individual deposition and HKI Delaware's 30(b)(6) deposition only be recorded by stenographic and audio means and only by the court reporter;

g.  That no person be permitted to record video of any portion of the deposition or take screenshots of the deposition;

h.  That for at least three (3) full business days from when Ms. Guo's counsel receives a copy of the transcript of Ms. Guo's deposition, access to the transcript be limited to the eyes of the attorneys who have appeared for PAX, HKI Delaware, the Debtor, the Office of the United States Trustee and the Official Committee of Unsecured Creditors, in order to allow Ms. Guo's and HKI Delaware's counsel sufficient time to seek an additional protective order limiting the use of certain portions of the transcript. If Ms. Guo and/or HKI

Delaware files such a motion for protective order, Ms. Guo requests that the restrictions on the transcript continue until such time as the Court rules on the motion for protective order.

41. Ms. Guo respectfully submits that the forgoing safeguards will permit PAX to obtain the information it seeks from Ms. Guo and HKI Delaware while ensuring, to the fullest extent possible, Ms. Guo's physical safety and emotional well-being. A copy of Ms. Guo's proposed Order granting this Motion is attached hereto.

## CONCLUSION

Ms. Guo is a non-party to PAX's Motion to Dismiss, which is the contested matter to which the subpoena to Ms. Guo and deposition notice to HKI Delaware relate. Ms. Guo has been persecuted by a foreign government and others. She has documented herein that third parties have wrongfully disseminated her image and information concerning her location in order to threaten, embarrass and humiliate her. The procedural safeguards sought herein are designed to allow Ms. Guo to provide PAX with the sworn testimony that it seeks without compromising Ms. Guo's physical safety or emotional security.

For these reasons, Ms. Guo respectfully requests that the Court grant the relief sought herein and order such further relief as the Court deems just and proper.

Dated this 10th day of May, 2022.

                        MEI GUO

By: */s/ Aaron A. Romney, Esq.*
Stephen M. Kindseth (ct14640)
Aaron A. Romney (ct28144)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
(203) 368-4234
(203) 368-5473 (fax)
Email: skindseth@zeislaw.com
        aromney@zeislaw.com
Its Attorneys

### CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

                        */s/ Aaron A. Romney, Esq.*
                        Aaron A. Romney