# EXHIBIT

# A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK Part 61 – Commercial Division
-----------------------------------------------------------------------------X
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P., :
: Index No.
                          Plaintiff, : 652077/2017
:
                          v. : Hon. Barry
: Ostrager, JSC
KWOK HO WAN, GENEVER HOLDINGS LLC, and :
GENEVER HOLDINGS CORPORATION, : Affidavit of
: Mei Guo
                          Defendants. :
-----------------------------------------------------------------------------X

STATE OF NEW YORK     )
                             )   ss.
COUNTY OF YORK       )

I, Mei Guo, being duly sworn upon oath, depose, and state:

      1.      I submit this Affidavit in support of Defendant Kwok Ho Wan's opposition to the motion of plaintiff, Pacific Alliance Asia Opportunity Fund L.P., seeking to hold Mr. Kwok in contempt. I have personal knowledge of the facts set forth below.

      2.      I am the owner of the yacht, the "Lady May." I have been the owner of the Lady May since in or about June 2017.

      3.      Kwok Ho Wan is my father. He has been a political target of the Chinese Communist Party ("CCP") for years. My father fled mainland China and, ultimately, Hong Kong to the United States in early 2015, after learning that the CCP was going to arrest him on politically motivated charges based upon fabricated evidence. The CCP took his refusal to submit to the false charges out on my mother, my extended family, and me.

      4.      Just days after my father arrived in the United States, representatives of the CCP detained my mother and me for approximately 10 days. I alone was detained a second time in or about December 2016 for approximately 40 days. During each of those detentions, my

communications with my family were cutoff, and I was physically and psychologically tortured. For example, I was kept awake for 48 hours at a time, monitored every minute of every day, and prohibited from physically moving, using the bathroom, or even brushing my hair, without the permission of my jailers.

5. Following my release, my father remained an outspoken critic of the CCP and its many abuses. His criticisms continued to anger Chinese authorities. In or about April 2017, a high-ranking Chinese official told my mother and me that we would be permitted to briefly visit my father in the United States if we could convince him to stop exposing the CCP's corruption and return to China.

6. On May 16, 2017, I traveled from China to the United States with my mother accompanied by the high-ranking Chinese official and several Chinese security agents. My mother and I were bargaining chips. During that visit, the high-ranking Chinese official was unable to coerce my dad to return to China. My mother and I disregarded the Chinese official's demands that we return to China, and remained in the United States. I feared being re-arrested and tortured again in China, and am presently seeking political asylum in the United States.

7. Although removed from the immediate dangers of living in China, I am not beyond the reach of the CCP and its agents. Indeed, I am regularly the subject of threats on social media, and am forced to live in constant fear for my safety.

8. At the time I escaped from the CCP's brutality, the Lady May was owned by Hong Kong International Funds Investments Limited ("HK International"), and the sole member of HK International was Qu Guojiao. I understand that Ms. Qu was a trusted business partner of my brother's, as well as my uncles' and cousins'.

2

9. However, from the time of its purchase, the Lady May was always intended to be my boat given my love of the ocean. Indeed, it bears my name. In June 2017, when I was safely in the United States, ownership of the Lady May was transferred to me.

10. I signed paperwork that is attached to this Affirmation as **Plaintiff's Exhibit 16** at HKI-0017-18, Instrument of Transfer and Sold Note, dated June 27, 2017. That paperwork reflected a transfer of HK International (and its sole asset, the Lady May) from Ms. Qu to me. I chose to put the boat in my name because the Lady May was always intended to be my boat, and because Ms. Qu was under threat from the CCP in Hong Kong.

11. On or about April 17, 2020, I transferred ownership of the Lady May from HK International to HK International Funds Investments (USA) Limited, LLC ("HK USA"). *See* **Plaintiff's Exhibit 16** at HKI-0019-20, Certificate of British Registry, dated April 17, 2020. I did so upon the advice of my counsel. Like HK International, I am the sole owner of HK USA. *See* **Joint Exhibit 3**, HKI International Funds Investments (USA) Limited, LLC Agreement, dated April 1, 2019.

12. Neither HK International nor HK USA has any bank account or source of income. All expenses for the Lady May, including fuel, maintenance, and costs for the captain and crew, were paid for by my family's family office, Golden Spring (New York) Ltd. ("Golden Spring"), and now by Lamp Capital LLC.

13. While Golden Spring and Lamp Capital have been responsible for paying yacht-related expenses, I alone am responsible for directing the Lady May's operations. For example, I directed that crewmembers who staff the Lady May execute nondisclosure agreements countersigned by me. Additionally, I countersigned the contract with Phoenix Crew IC Limited, the company responsible for hiring the boat's crewmembers. A copy of that agreement is

attached as **Defendant's Exhibit 5**, Agreement for the Provision of Employees, dated September 1, 2021.

14. I am likewise solely responsible for directing the Lady May's movements. For example, in early October 2020, I no longer wished to use the boat for the season due to the weather, and I relayed that to Golden Spring. Golden Spring, in turn, relayed my directive to the then captain, Craig Heaslop, who sailed the boat South to warmer waters.

15. While in Florida and the Bahamas, the Lady May underwent needed inspections and maintenance. When completed, my brother, who resides in Europe, asked if he could have access to the yacht.

16. I was happy to accommodate my brother's request, and directed that the Lady May travel to Europe. My directive was relayed by Golden Spring to Captain Heaslop.

17. While I have a basic understanding of the litigation before this Court, I have not been following it closely. Neither HK USA nor I is a party to the action, and beyond producing certain corporate records maintained by HK USA, I have been uninvolved.

18. As a general matter, where the Lady May travels and when it travels is my decision. My father does not control its movements.

19. It was my decision for the boat to travel from New York to Florida in October 2020, not my father's decision.

20. I was aware, through my counsel, of the Court's Order requiring the Lady May to return to New York in May 2021. However, given that I am the owner of the Lady May, and that neither HK USA nor I is a party to this action, I did not want the boat to travel to New York, and, after consulting with counsel, directed instead that it proceed to Europe as had been long-planned at significant expense. Again, that decision was mine alone, not my father's.

_____
MEI GUO

State of New York, County of New York
Subscribed and Sworn to (or affirmed)
before me this 28 day of January,
20 22 by Mei Guo

LILY ZHENG
Notary Public, State of New York
Reg. No. 01ZH6362341
Qualified in Queens County
Commission Expires 07/31/2025

**Certificate of Word Count**

As required by Rule 17 of the Rules of the Commercial Division of the Supreme Court, I certify that this affirmation was prepared using Microsoft Word, and the total number of words in this affirmation, exclusive of the caption, title and signature block, is less than 7,000 words.

Dated: New York, New York
       January 28, 2022

Respectfully submitted,
**BAKER & HOSTETLER LLP**

 /s/  John Siegal_____

John Siegal
45 Rockefeller Plaza
New York, NY 10111
JSiegal@bakerlaw.com

*Attorneys for Defendant Kwok Ho Wan*