**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____
In re                                              : Chapter 11
                                                   :
    Ho Wan Kwok,                             : Case No. 22-50073 (JAM)
                                                   :
       Debtor.[1]                          :
                                                   :
_____:
                                                   :
Pacific Alliance Asia Opportunity Fund L.P.,       :
                                                   :
       Movant                              :
                                                   :
v.                                                 :
                                                   :
Ho Wan Kwok,                                       :
                                                   :
       Respondent.                         :
_____:

**OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S MOTION TO DISMISS CHAPTER 11 CASE OR, IN THE ALTERNATIVE, PARTIAL JOINDER TO UNITED STATES TRUSTEE'S MOTION FOR AN ORDER <u>DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>**

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

## Table of Contents

Page

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT PROCEDURAL HISTORY .................................................................................3

ARGUMENT .................................................................................................................................7

    I.  DISMISSAL OF THE CASE IS NOT WARRENTED UNDER
11 U.S.C. § 1112(b) ...................................................................................................7

        A.  Misuse of the Bankruptcy System Is Not An Independent Ground for
Dismissal Outside the Involuntary Bankruptcy Case Context and, In Any
Event, This Case Is Not a Misuse of the Bankruptcy System ................................8

        B.  Bad Faith Cannot be Established as a Ground for Dismissal ...............................15

        C.  Section 1112(b)(4) Does Not Support Dismissal.....................................................23

        D.  Gross Mismanagement Within the Meaning of Section 1112(b)(4)(b)
Cannot Be Established ..............................................................................................25

        E.  The "Unusual Circumstances" Exception in Section 1112(b)(2) Should
Preclude Dismissal....................................................................................................26

        F.  Even if the Court Finds Cause to Dismiss or Convert, Neither Form of
Relief Should be Granted Because the Appointment of an Examiner
Would Be in the Best Interests of Creditors and the Estate ..................................28

    II. PAX'S JOINDER IN THE UNITED STATES TRUSTEE'S MOTION FOR A
CHAPTER 11 TRUSTEE................................................................................................30

    III. JOINDER IN OBJECTON OF CREDITORS ...........................................................32

CONCLUSION……………………………………………………………………………..33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 167 West 133rd Street Housing Development Fund Corp.*,
Case No. 18-12043 (JLG), 2018 WL 4637460 (Bankr. S.D.N.Y. Sept. 25, 2018) ................................................................................................................15, 16

*In re 412 Boardwalk, Inc.*,
520 B.R. 126 (Bankr. M.D. Fla. 2014) ..................................................................25

*Adams v. Marwil* (*In re Bayou Group, LLC*),
564 F.3d 541 (2d Cir. 2009).............................................................................29, 30

*In re AMC Realty Corp.*,
270 B.R. 132 (Bankr. S.D.N.Y. 2001)...................................................................15

*American National Bank of Austin v. MortgageAmerica Corp.* (*In re MortgageAmerica Corp.*),
714 F.2d 1266 (5th Cir. 1983) ...............................................................................10

*In re Artisanal 2015, LLC*,
Case No. 17-12319 (JLG), 2017 WL 5125545 (Bankr. S.D.N.Y. Nov. 3, 2017)..........8, 16, 21

*Berman, Trustee for Estate of Michael S. Goldberg, LLC v. LaBonte*,
622 B.R. 503 (D. Conn. 2020) ...............................................................................20

*In re C–TC 9th Avenue Partnership*,
113 F.3d 1304 (2d Cir.1997).............................................................................18, 19

*Canadian Pacific Forest Products Limited v. J.D. Irving Limited* (*In re Gibson Group, Inc.*),
66 F.3d 1436 (6th Cir. 1995) .................................................................................13

*Cunard Steamship Company Limited v. Salen Reefer Services AG*,
773 F.2d 452 (2d Cir. 1985)...................................................................................10

*Daly v. Deptula* (*In re Carrozzella & Richardson*),
255 B.R. 267 (Bankr. D. Conn. 2000) ...................................................................16

*In re David X. Manners Company Inc.*,
Case No. 15-51490 (JTT), 2018 WL 1057140 (Bankr. D. Conn. Feb. 23, 2018) ....................................................................................................................13

*Davis v. M&M Developer, LLC* (*In re MBM Entertainment, LLC*),
531 B.R. 363 (Bankr. S.D.N.Y. 2015).....................................................................15

*In re East End Development, LLC*,
    491 B.R. 633 (Bankr. E.D.N.Y. 2013)................................................................15

*In re Express Grain Terminals, LLC*,
    Case No.: 21-11832-SDM, 2022 WL 1051097 (Bankr. N.D. Miss. Apr. 7,
    2022) ...................................................................................................................27

*In re First Connecticut Consulting Group, Inc.*,
    Case No. 02–50852 (JJT), Case No. 02–51167 (JJT), 2018 WL 2121531
    (Bankr. D. Conn. May 7, 2018) ...........................................................................26

*Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*,
    554 U.S. 33, 126 S.Ct. 2326, 171 L.Ed.2d 203 (2008)........................................22

*In re Ford Steel, LLC*,
    629 B.R. 871 (Bankr. S.D. Tex. 2021) .................................................................26

*In re Friedman's, Inc.*,
    356 B.R. 766 (Bankr. S.D. Ga. 2006) ..................................................................17

*In re Gabriel Techs. Corp.*,
    Case No. No. 13–30340 (DM), 2013 WL 2318581 (Bankr.N.D.Cal. May 28,
    2013), *appeal dismissed,* 2013 WL 4672785 (N.D. Cal. Aug 30, 2013)...............24

*In re General Growth Properties, Inc.*,
    409 B.R. 43 (Bankr. S.D.N.Y. 2009) ...................................................................16

*In re Johns-Manville Corp.*,
    36 B.R. 727 (Bankr. S.D.N.Y. 1984) (Lifland, J.), *appeal denied* 39 B.R. 234
    (S.D.N.Y. 1984), *reargument denied* 39 B.R. 998 (S.D.N.Y. 1984),
    *mandamus denied* 749 F.2d 3 (2d Cir. 1984).......................................................11

*Kalb, Voorhis & Co. v. American Financial Corp.*,
    8 F.3d 130 (2d Cir.1993)......................................................................................20

*Keene Corp. v. Coleman* (*In re Keene Corp.*),
    164 B.R. 844 ........................................................................................................20

*In re LightSquared Inc.*,
    513 B.R. 56 (Bankr. S.D.N.Y 2014).....................................................................23

*In re Meier*,
    Bankruptcy No. 14-bk-10105, Adv. No. 14-ap-237, 2014 WL 5426763
    (Bankr. Oct. 21, 2014) ...................................................................................17, 18

*In re Miller*,
    496 B.R. 469 (Bankr. E.D. Tenn. 2013) ..............................................................24

*In re New Towne Development, LLC*,
  404 B.R. 140 (Bankr. M.D. La. 2009) .......................................................27, 28, 29

*NLRB v. Martin Arsham Sewing Co.*,
  873 F.2d 884 (6th Cir. 1989) ...............................................................................10

*In re Norwest Company*,
  LLC, Case No. 20-10990 (MEW), 2020 WL 6927661 (Bankr. S.D.N.Y. Nov.
  20, 2020) ...............................................................................................................25

*In re Purdue Pharma, L.P.*,
  633 B.R. 53 (Bankr. S.D.N.Y. 2021), *vacated on other grounds* 635 B.R. 26
  (S.D.N.Y. 2021), *appeal pending* Nos. 22-85, 22-110 (2d Cir. Jan. 18, 2022)
  (argued April 28, 2022).........................................................................................23

*In re Rent-A-Wreck of America, Inc.*,
  580 B.R. 364 (Bankr. D. Del. 2018) ...............................................................12, 13

*In re Residential Capital, LLC*,
  474 B.R. 112 (Bankr. S.D.N.Y. 2012) .................................................................32

*Sapphire Development v. McKay*,
  549 B.R. 556 (D. Conn. 2016) .............................................................................16

*In re Slettleland*,
  260 B.R. 657 (Bankr. S.D.N.Y. 2001) .................................................................18

*In re Soundview Elite, Ltd.*,
  503 B.R. 571 (Bankr. S.D.N.Y. 2014)..................................................................17

*St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.*,
  884 F.2d 688 (2d Cir. 1989)..................................................................................20

*In re StatePark Building Group, Ltd.*,
  316 B.R. 466 (Bankr. N.D. Tex. 2004).................................................................15

*In re STN Enterprises*,
  779 F.2d 901 (2d Cir.1985)...................................................................................13

*In re Sundale, Ltd.*,
  400 B.R. 890 (Bankr. S.D. Fla. 2009)...................................................................25

*Swiatkowski v. Citibank*,
  745 F.Supp.2d 150 (E.D.N.Y. 2010), *aff'd* 446 Fed. Appx. 360 (2d Cir. 2011) ....................12

*In re The 1031 Tax Group, LLC*,
  374 B.R. 78 (Bankr. S.D.N.Y. 2007)..............................................................26, 30

iii

*In re TMT Procurement Corp.*,
    534 B.R. 912 (Bankr. S.D. Tex. 2015) ...................................................................29

*Toibb v. Radloff*,
    501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)........................................22

*Tronox Worldwide LLC v. Kerr-McGee Corp. (In re Tronax Inc.)*,
    855 F.3d 84 (2d Cir. 2017)........................................................................................20

*In re Wally Findlay Galleries (New York), Inc.*,
    36 B.R. 849 (Bankr. S.D.N.Y. 1984) .......................................................................14

*Wilk Auslander LLP v. Murray (In re Murray)*,
    900 F.3d 53 (2d Cir. 2018).............................................................................8, 9, 10

*In re Zamora-Quezada*,
    622 B.R. 865 (Bankr. S.D. Tex. 2017) .....................................................................25

**Statutes**

11 U.S.C. § 303(b) .............................................................................................................8

11 U.S.C. § 510(c) ...........................................................................................................17

11 U.S.C. § 1104(a)(1) .....................................................................................................30

11 U.S.C. § 1104(c)(1) .....................................................................................................32

11 U.S.C. § 1112(b) ...........................................................................................................7

11 U.S.C. § 1112(b)(1), (2)................................................................................................8

11 U.S.C. § 1112(b)(4) ...........................................................................................8, 15, 23

11 U.S.C. § 1112(b)(4)(B) ...............................................................................................25

11 U.S.C. § 1121(c)(2) and (3) ..........................................................................................3

11 U.S.C. § 1121(d) ...........................................................................................................3

11 U.S.C. § 1129(a)(10) ...................................................................................................23

11 U.S.C. § 1129(b)(2)(B)(ii) ..........................................................................................23

28 U.S.C. § 151................................................................................................................16

The Official Committee of Unsecured Creditors (the "Committee") of the above-named Debtor and Debtor in Possession, Ho Wan Kwok (the "Debtor" or "Kwok"), hereby submits this Opposition to Pacific Alliance Asia Opportunity Fund L.P.'s ("PAX") Motion to Dismiss Chapter 11 Case or, in the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee, filed on April 6, 2022 (the "Dismissal Motion").

In support of its Opposition, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Whether the result of blind rage, denial, or myopic self-interest, PAX seeks to dismiss this chapter 11 case by mischaracterizing it as simply a two-party dispute between PAX and the Debtor (Dismissal Motion at ¶¶47-51) in which PAX is the only legitimate creditor[2], and in a startling display of missing the forest from the trees, stridently proclaims that dismissal would involve zero "risk of creditors overrunning the debtor and precluding their equal treatment" (Dismissal Motion ¶46 ).  By its own account, however, in the event of a dismissal of this case, PAX itself would be the overrunning creditor which seeks to preclude equal treatment among all creditors by allowing it to complete its judgment enforcement actions against: (i) the Lady May (Dismissal Motion at 32, CTC Factor 3); (ii) the Debtor's interest in the Sherry-Netherland apartment (*see* Declaration of Peter Friedman in Support of Dismissal Motion,

---

[2]  According to PAX, "[t]his chapter 11 case will not help any legitimate unsecured creditors but will materially prejudice the largest unsecured creditor with a major claim" (Dismissal Motion at 33, *Syndicom* Factor 3).

hereinafter "<u>Friedman Dec.</u>," Exhibits 30, 31); and (iii) Kwok's "hidden assets" that PAX was "on the cusp of reaching" before this case was filed (Dismissal Motion at 32).[3]

2.      While misperceiving itself to be the only creditor whose rights should be taken into account in this case, PAX ignores that its status as a judgment creditor is only the result of having won the race to the courthouse ahead of what it dismisses as mere "unliquidated" or "*de minimis*" claims that are still in litigation (Dismissal Motion at 33, *Syndicom* Factor 2).  Indeed, while the Debtor has listed a total of 159 unsecured creditors on his Schedule F with claims totaling $373,803,498.09 (of which PAX was listed with a claim of $254,000), 72 of those claims were listed with an "[u]nknown" amount because they were in "[l]itigation" (ECF No. 78 at 19-23).   Thus, once the 72 creditors with "unliquidated" claims have an opportunity to file proofs of claim, there is little question that the unsecured claims pool in this case will substantially increase.

3.      Just because their claims have not yet gone to judgment, the creditors which the Debtor lists as holding claims in "unknown" amounts are no less aggrieved or entitled to consideration in this case than is PAX – perhaps more so, because their claims are based on personal, as opposed to corporate harm.  Moreover, inasmuch as a proof of claim deadline has yet to be established in this case, the creditors with so-called "unliquidated" claims that, according to PAX, should stand aside while it proceeds to realize upon all of the Debtor's assets, have not yet had an opportunity to file and fully articulate the bases and amounts of their claims. Once that occurs, and as mentioned above, it is likely that the $373 million in unsecured claims scheduled by the Debtor will be much greater, as will be the inequity in dismissing this case.

---

[3] Ironically, these judgment enforcement actions, if allowed to take place while other creditors are forced to sit idly by, are precisely the type of actions that the remedy of an involuntary bankruptcy is designed to guard against.

4.      While the Debtor has no doubt engaged in contemptuous conduct and financial chicanery prior to effectively being forced to file for chapter 11 relief, he has resigned himself to a full investigation by creditors to determine and establish the scope and extent of his assets, and the chapter 11 process will provide a centralized forum in which to resolve claims, ensure equality of distribution among creditors and prevent a race of diligence outside of bankruptcy that only PAX will win.

5.      For these reasons, and as more fully set forth below, this chapter 11 case most assuredly should not be dismissed, but rather retained to allow the Committee to complete its investigation, seek asset recoveries with derivative standing if there is a colorable basis to do so, and negotiate with the Debtor and PAX with the prospect that upon expiration of the Debtor's exclusive period on June 17, 2022,[4] the Committee, PAX or any other party in interest may file its own plan of reorganization.

## RELEVANT PROCEDURAL HISTORY

6.      On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has remained a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

---

[4] Under 11 U.S.C. § 1121(c)(2) and (3), a debtor's exclusive period within which to file a plan is, initially, on or before the 120th day from the petition date or, if a plan is filed within that period, the debtor has an additional 60 days (from the 120th day) within which to solicit votes on a plan before another party in interest may file a plan. Here, the Debtor filed what he called a "Proposed Chapter 11 Plan" on April 10, 2022 (ECF No. 197) (the "Plan"), but without a disclosure statement in contravention of Fed. R. Bankr. P. 3016(b). Thus, arguably, the Debtor might have an additional 60 days from June 17, 2022 within which to solicit votes on the Plan before the Committee or another party interest could file their own plan, but the Committee would intend to seek to terminate that additional "exclusive" period under 11 U.S.C. § 1121(d). Notably, under the proposed Interim DIP Order filed with the Court on May 3, 2022 (ECF No. 315), the Committee may seek to terminate the Debtor's exclusive period after the initial 120 days from the Petition Date (Interim DIP Order ¶6(c)).

7.      No trustee or examiner has yet been appointed in the Debtor's bankruptcy case, although on March 19, 2022, the United States Trustee ("UST") filed a Motion for Order Directing Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "Examiner/Trustee Motion").

8.      Oppositions to the Examiner/Trustee Motion have been filed by the Committee, Pacific Alliance Asia Opportunity Fund, L.P. ("PAX"), and creditors Rui Ma and Weican Meng. The Examiner/Trustee Motion has been continued for hearing to May 25, 2022, the same date as the hearing on the Dismissal Motion.

9.      On March 21, 2022, the Committee was officially appointed by the United States Trustee and on March 28, 2022, selected Pullman & Comley, LLC ("P&C") as its counsel.[5]

10.     On March 1, 2022, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") filed its Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code (ECF No. 57) (the "PAX Lift Stay Motion").

11.     On March 15, 2022, the Debtor filed its Objection to the PAX Motion, to which PAX filed a Reply on March 18, 2022 (ECF No. 98) (the "PAX Reply").  On March 28, 2022, the Debtor filed a Supplemental Objection to the PAX Motion (the "Debtor Supp. Obj."), and on April 6, 2022, the Committee filed its Position Statement in limited support of the PAX Motion.

12.     By the PAX Lift Stay Motion, PAX sought to return to its litigation against the Debtor in New York Supreme Court for purposes of compelling the Debtor to return to U.S.

---

[5] On April 29, 2022, this Court entered an order authorizing the retention and employment of P&C as counsel to the Committee.

jurisdiction a yacht known as the *Lady May*, which the Debtor and/or the registered owners of the Lady May had been ordered not to remove, but did remove, from the New York court's jurisdiction well over one year ago (PAX Lift Stay Motion, Ex. B, Declaration of Peter Friedman, hereinafter the "Friedman Lift Stay Motion Dec.," ¶2, Ex. 1, February 9, 2022 Decision and Order of Judge Barry R. Ostrager, the "February 9, 2022 Decision," at 2).

13.    For his contemptuous conduct in failing to return the *Lady May*, the Debtor was ordered to pay a contempt fine to PAX in the amount of $134,000,000 within five days of service of Judge Ostrager's Final Order of Civil Contempt, failing which the court would "exercise its full authority under New York Judiciary Law § 753" (Friedman Lift Stay Dec., Ex. 5).  The Debtor filed his voluntary chapter 11 petition the day before the contempt fine was due to be paid.

14.    Notwithstanding Judge Ostrager's finding that the Debtor not only controls, but "has much more than a beneficial interest in the Lady May," as it "appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht" (February 9, 2022 Decision at 8), the Debtor continues to maintain that the *Lady May* is owned by an entity known as HK International Funds Investment (USA) Limited, LLC ("HK USA"), which is owned by his daughter, Mei Guo.

15.    After a series of hearings on the PAX Lift Stay Motion, it was resolved by an extensively negotiated Stipulated Order Compelling HK International Funds Investment (USA) Limited, LLC to Transport and Deliver That Certain Yacht, the "Lady May" (ECF No. 299) (the "Boat Delivery Order").  In summary, pursuant to the Boat Delivery Order, HK posted $37 million in cash with U.S. Bank as escrow agent to secure the return of the Lady May to this jurisdiction by July 15, 2022.

16.     On March 20, 2022, the Debtor filed his Declaration in Support of Chapter 11 Case and Certain Motions (ECF No. 107) ("Kwok Dec.").  In his declaration, the Debtor represents that among the purposes for filing his chapter 11 case were "to … (b) afford stakeholders an efficient opportunity to investigate [his] assets, liabilities, and financial affairs, given what [he] perceive[d] to be misunderstandings in that regard; [and] (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims" (Kwok Dec. ¶3).

17.     On March 22, 2022, the Debtor filed a Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing, and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief (the "DIP Motion").

18.     By the DIP Motion and the loan for which it seeks court approval (the "DIP Loan"), the Debtor and his son, Qiang Guo (the "Son"), through the Son's company, Golden Spring (New York), Ltd.,[6] proposed a postpetition loan to the Debtor of up to $8 million to fund professional fees and other administrative expenses to be incurred in this case.  Objections to the DIP Motion were filed by the UST, PAX, the Committee and creditors, Rui Ma and Weican Meng.  An evidentiary hearing on the DIP Motion and the objections thereto was held on April 27, 2022.

19.     As directed by the Court, and after negotiations among the parties, the Debtor filed a substantially diluted proposed Interim DIP Order with a reduction in the amount to be borrowed, along with a budget, on May 3, 2022, and on May 4, 2002, the Court held a further

---

[6] As the proposed Interim DIP Order reflects, any approval of the borrowing would be without prejudice to the rights of the Committee or any creditor to seek a finding that Golden Spring is the alter ego of the Debtor or that its corporate veil should be pierced.

hearing on the DIP Motion.  The matter is currently under advisement.   The revised Interim DIP Order provides funding for the Committee's professionals of up to $2 million, on an interim basis through May 2022, to investigate and bring claims against insiders of the Debtor and other third parties and for any other purposes consistent with the Committee's statutory powers and duties.  The borrowing is to be subordinate in priority to the claims of unsecured creditors and administrative expenses.  As a result, if the DIP loan is approved, there should be no accruing administrative expenses as a result of the fees of case professionals.

20.     While the case has proceeded apace, the Committee has filed motions for authorization to take Rule 2004 examinations of, and issue subpoenas for document production, to: (i) Gettr USA, Inc, by motion filed on April 25, 2022 (ECF No. 252); (ii) Golden Spring, by motion filed on April 29, 2022 (ECF No. 297); and (iii) HK USA, by motion filed on April 29, 2022 (ECF No. 295).  On May 4, 2022, the Court entered an Order Authorizing Rule 2004 Examination of Grettr USA, Inc. by its CEO, Jason Miller.

21.     On May 4, 2022, the Committee also filed applications to retain and employ Dundon Advisers LLC as its financial advisor (ECF No. 321) and Gregory A. Coleman of Coleman Worldwide Advisors LLC as its fraud investigation consultant. The Committee is poised to conduct a thorough investigation into the Debtor's assets, financial affairs and possible estate causes of action.

## ARGUMENT

### I.
### DISMISSAL OF THE CASE IS NOT
### WARRANTED UNDER 11 U.S.C. § 1112(b)

22.     PAX has moved to dismiss this case under 11 U.S.C. § 1112(b).  That section provides as follows:

(b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--
(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
(i) for which there exists a reasonable justification for the act or omission; and
(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(1), (2).  Non-exclusive grounds for cause are set forth in 11 U.S.C. §

1112(b)(4).

> **A.** **Misuse of the Bankruptcy System Is Not An Independent Ground for Dismissal Outside the Involuntary Bankruptcy Case Context and, In Any Event, This Case Is Not a Misuse of the Bankruptcy System**

23.     PAX cites two decisions for the proposition that misuse of the Bankruptcy Code

is "cause" for dismissal of a bankruptcy case: *Wilk Auslander LLP v. Murray* (*In re Murray*), 900

F.3d 53 (2d Cir. 2018) and *Taberna Preferrd Funding IV, Ltd. v. Opportunities II Ltd.* (*In re*

*Taberna Preferred Funding IV, Ltd.*).  Both of these decisions addressed cause for dismissal in

the context of cases that were the subject of involuntary petitions under 11 U.S.C. § 303(b).

PAX cites no decision which has applied "misuse of the Bankruptcy Code," ***unconnected with***

***"bad faith***," to a voluntary chapter 11 case.[7]

---

[7] It is well recognized that "[t]he rationale for dismissing a case in bad faith 'is that if a petition is not filed in good faith, it is an abuse of judicial process or of the jurisdiction of the bankruptcy court'."  *In re Artisanal 2015, LLC*, Case No. 17-12319 (JLG), 2017 WL 5125545, at *8 (Bankr. S.D.N.Y. Nov. 3, 2017) (quoting *In re Kingston Square Assoc.*, 214 B.R. 713, 724 (Bankr.

24.     As these cases make clear, whether an "involuntary petition" is being used by petitioning creditors as an "[i]nappropriate use of the Bankruptcy Code," *Murray*, 900 F.3d at 60, involves considerations that, if applied here, actually support the voluntary chapter 11 filing in this case.  In *Murray*, for example, the Second Circuit held it was an inappropriate use of the Bankruptcy Code for a single creditor to file an involuntary petition as a collection device to force a sale of property the debtor owned jointly with his non-debtor spouse when adequate state law remedies existed.  *Id.* at 57, 62-63.

25.     The Second Circuit emphasized, however, that a completely permissible use of an involuntary bankruptcy petition would be to, as it aptly put it, "help ensure the orderly and fair distribution of an estate by giving creditors an alternative to watching nervously as assets are depleted, either by the debtor ***or by rival creditors who beat them to the courthouse***."  *Id.* at 59 (emphasis added).  When viewed in its proper context, therefore, *Murray* supports the continuation of the Debtor's chapter 11 case because without this bankruptcy proceeding, PAX, as a "rival creditor" that beat every other creditor of the Debtor to the courthouse, was poised to complete its judgment enforcement proceedings against the *Lady May* and the Sherry Netherland apartment, and was on the "cusp of reaching Kwok's hidden assets" (Dismissal Motion at 32), when this case was filed.  This case can now properly prevent PAX from relegating other creditors to "watching nervously" as the Debtor's assets are depleted by PAX as a rival creditor that beat them to the courthouse.

26.     To the same effect is the decision in *Taberna*.  *Taberna* involved the filing of an involuntary petition under chapter 11 by three holders of senior classes of notes and was opposed by the debtor and five holders of junior classes of notes.  *Taberna*, 594 B.R. at 580.  The

---

S.D.N.Y. 1997)).  Thus, "abuse" or as PAX calls it, "misuse" of the bankruptcy process is already

evidence clearly established that the petitioning creditors were using the involuntary proceeding to liquidate collateral solely for their benefit, at the expense of other noteholders, and to rewrite the terms of an indenture agreement to which the petitioning creditors and junior noteholders were parties and that "independently establishe[d] the parties' agreement as to liquidation." *Id.* at 603, 604-05.

27.    As in *Murray*, the court in *Taberna* stressed that it is an entirely appropriate use of the bankruptcy process "to guard against other creditors obtaining an unfair and disproportionate share of the alleged debtor's assets," and that a bankruptcy filing that is used "to achieve objectives that benefit all creditors is consistent with the Bankruptcy Code's goal to secure equal distribution among creditors." *Id.* at 601 (internal quotation and citation omitted).

28.    Indeed, the Second Circuit and other courts have made clear that the "guiding premise of the Bankruptcy Code … is the equality of distribution of assets among creditors," *Cunard Steamship Company Limited v. Salen Reefer Services AG*, 773 F.2d 452, 459 (2d Cir. 1985), with the added admonition that "'[t]he road to equity is not a race to the courthouse for the swiftest'." *Id.* (quoting *Israel-British Bank (London) Ltd. v. FDIC*, 536 F.2d 509, 513 (2d Cir. 1976)). *See also NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989) ("[t]hese characteristics of bankruptcy – the exclusive jurisdiction of the Bankruptcy Court, the stay of creditors' piecemeal actions to collect the property of the debtor's estate, and the detailed order of distribution of the debtor's assets – protect equal treatment for all creditors and avoid the incoherent dismemberment of the debtor which would occur under a 'first-come-first-served' scheme"); *American National Bank of Austin v. MortgageAmerica Corp.* (*In re MortgageAmerica Corp.*), 714 F.2d 1266, 1274 (5th Cir. 1983) ("one of the 'prime bankruptcy

---

baked into "bad faith" as a ground for dismissal.

policies' that pervades virtually every provision of the Code is that of 'equality of distribution among creditors,' and, conversely, one the principal bankruptcy *bêtes noires* the 'race of diligence of creditors to dismember the debtor' before its assets are exhausted") (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 178 *reprinted in* 1978 U.S. Code Cong. & Ad.News 5963, 6138).

29.    While PAX maintains that the principal purposes of the Debtor's chapter 11 are to relitigate the February 9, 2022 Decision, with its findings that the Debtor has "the beneficial interest" in the *Lady May*, and to avoid incarceration, the Committee preliminarily notes that in the words of one well-respected bankruptcy jurist: a bankruptcy "filing triggers the springing into existence of important constituencies which, along with the debtor, must be protected by a reorganization court.  Accordingly, the intense focus on the debtor's motives in filing is misplaced."  *In re Johns-Manville Corp.*, 36 B.R. 727, 737 (Bankr. S.D.N.Y. 1984) (Lifland, J.), *appeal denied* 39 B.R. 234 (S.D.N.Y. 1984), *reargument denied* 39 B.R. 998 (S.D.N.Y. 1984), *mandamus denied* 749 F.2d 3 (2d Cir. 1984).

30.    The sagacious observations of Judge Lifland aside, to the extent that one of the Debtor's purposes in filing for chapter 11 relief was to avoid incarceration, the need for incarceration has now been mooted by the Boat Delivery Order and thus, the essential purpose of further enforcing Judge Ostrager's final order of contempt (Friedman Dec., Ex. 39) (the "Final Contempt Order") – to get the *Lady May* back in U.S. jurisdiction – has thereby been vindicated. And although the Debtor has appealed the Final Contempt Order, that maneuver should do little to interfere with marshalling the Debtor's interest in the *Lady May* into this bankruptcy estate. That is because the preclusion principles (res judicata, collateral estoppel and the Rooker-Feldman doctrine) that were fulsomely developed in the PAX Reply (ECF No. 98) and in the

Committee's position statement in limited support of the PAX Motion (ECF No. 167) can be asserted to conclusively determine the estate's interest in the Lady May in the context of HK USA's adversary proceeding, which seeks such a determination (Adv. Pro. No. 22-5003) (the "Boat Adversary Proceeding").[8]

31.     PAX's second premise that there is an improper use of chapter 11 in this case is because the case supposedly "does not provide value to creditors that would be lost outside of bankruptcy" (PAX Motion ¶44).  This proposition is absurd.  What would be lost to the creditors – other than PAX – is the centralized proceedings before this Court that provide jurisdiction over all of the Debtor's property, wherever located, and that can be used to investigate and recover estate assets for the benefit of all creditors.

32.     The decision cited by PAX, *In re Rent-A-Wreck of America, Inc.*, 580 B.R. 364, 373 (Bankr. D. Del. 2018), is not to the contrary and does not support PAX's contention in the slightest.  The statement in *Rent-A-Wreck* quoted by PAX was that a bankruptcy case must "seek to create or preserve some value that would otherwise be lost – not merely distributed to a different stakeholder – outside of bankruptcy" (PAX Motion ¶44).  This statement was not meant to say that if a chapter 11 case is filed to distribute a debtor's assets equally among all creditors, it has no bankruptcy purpose if outside of bankruptcy those same assets with the same value would be available for the taking by one of the stakeholder creditors.

---

[8] Although PAX has not claimed a lien against the *Lady May* and has not been named as an estate representative to defend the Boat Adversary Proceeding, it was confusingly named as a defendant in the Boat Adversary Proceeding.  The Committee contends that it, not PAX, is the appropriate estate representative to advance the estate's interest in the *Lady May* in the Boat Adversary Proceeding and intends to seek to intervene therein.  It is further noted that "[a] court may dismiss a claim on res judicata or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment." *Swiatkowski v. Citibank*, 745 F.Supp.2d 150, 168 (E.D.N.Y. 2010), *aff'd* 446 Fed. Appx. 360 (2d Cir. 2011).

33.     In *Rent-A-Wreck*, the bankruptcy court found that the debtors were solvent, *id.* at 377, and that the purpose of their chapter 11 filing was to redistribute value from a creditor (former founder, David Schwartz), who was found in prepetition litigation to have "an implied-in-fact royalty and fee-free franchise agreement to run a Rent-A-Wreck in Los Angeles," *id.* at 370, to the debtors' shareholder, by seeking to reject Mr. Schwartz's franchise agreement.  *Id.* at 383 (and stating that "[t]he good faith inquiry, therefore, is 'particularly sensitive' where 'the petition seeks to distribute value directly from a creditor to a company's shareholders'") (quoting *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 129 (3d Cir. 2004)).  That principle simply has nothing to do with this case.

34.     PAX's other contention is that this case should be dismissed because the Debtor disclaims he has an interest in the *Lady May*, the Sherry Netherland apartment or any other assets, but adopting the Debtor's position as to what assets are his is a strawman argument.  If, as it appears, the Debtor is unwilling to pursue these or any other assets that are found to belong to him, the well-settled doctrine of derivative standing would enable the Committee, or any single creditor for that matter, to pursue such claims of the Debtor as an estate representative if it is found that the Debtor is unjustifiably failing to pursue them.  *In re STN Enterprises*, 779 F.2d 901, 904 (2d Cir.1985); *Canadian Pacific Forest Products Limited v. J.D. Irving Limited* (*In re Gibson Group, Inc.*), 66 F.3d 1436 (6th Cir. 1995) (single creditor can be conferred derivative standing); *In re David X. Manners Company Inc*., Case No. 15-51490 (JTT), 2018 WL 1057140, at *2 (Bankr. D. Conn. Feb. 23, 2018) (setting forth elements of derivative standing).

35.     PAX contends that the Debtor's express intention to pay all allowed claims in full in the context of this case must mean that the Debtor is engaging in forum shopping by using this chapter 11 case in which to pay claims (Dismissal Motion ¶45).  What PAX overlooks is that

negotiating with 72 or so litigation creditors in piecemeal fashion on liability and damages outside of bankruptcy, while PAX proceeds to realize on all the Debtor's assets – whether the Debtor agrees they are his or not – is not realistically comparable to the results that chapter 11, as a collective proceeding, is designed and has the potential to achieve.  In any event, its use certainly does not suggest forum-shopping.  And PAX's suggestion that "there is no risk of creditors overrunning the debtor and precluding their unequal treatment" ((Dismissal Motion ¶46) is specious.  As detailed *infra.*, PAX would be the "overrunning creditor" that would seize all of the Debtor's assets, hidden or otherwise, and leave all other creditors holding the bag.

36.    PAX's contention that this chapter 11 case is simply a two-party dispute that "has nothing to do with collective action or multiple parties" (Dismissal Motion ¶47) defies reality. As set forth *infra.* at ¶¶ 2, 3, at least 72 creditors listed on the Debtor's schedules with unknown amounts have not had the opportunity to file proofs of claim.  Once they do, the proofs of claim will supersede how the claims were scheduled, Fed. R. Bankr. P. 3003(c)(4), and they will constitute "prima facie evidence of the validity and amount of the claim[s]."  Fed. R. Bankr. P. 3001(f).[9]  To call this case a two-party dispute simply because most of the non-insider claims have not been finalized by a judgment is to call into question the legitimacy of cases like Johns-

---

[9] In this respect, the Debtor's chapter 11 case is distinguishable from the case in *Wally Findlay Galleries.* In that case, there was no suggestion that there were any creditors other than a single noteholder and the debtor's landlord.  The noteholder received a money judgment and the landlord received a judgment of ejectment prior to the chapter 11 filing.  *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 850-51 (Bankr. S.D.N.Y. 1984).  Here, the Debtor has legitimate unsecured creditors other than PAX and the Debtor's appeal of the PAX's judgment can easily go forward and be resolved quickly once relief from the automatic stay is granted for purposes of liquidating the claim.  As PAX notes, the appeal has been fully briefed and argued and is simply awaiting disposition by the New York Appellate Division, First Department (Dismissal Motion ¶17).  Or alternatively, the claim can be conclusively determined in the context of the claims allowance process.

Manville, Purdue Pharma, LTL Management and the host of other chapter 11 cases that have been used to address unliquidated tort claims without successful challenge.

37.     In further support of dismissal, PAX suggests that the only "prejudice" to the Debtor from dismissing the case is that he will not be permitted to perpetuate his ongoing shell game before this Court, but will instead have to answer to Judge Ostrager – where, coincidentally, PAX is the only creditor.  In view of the panoply of rights and remedies that are available to creditors in this chapter 11 case, such as the Rule 2004 process and the services of a financial advisor and fraud investigation consultant that will be funded with a subordinated DIP loan if it is approved, to suggest that this Court and this case will enable Kwok "to perpetuate his ongoing shell game before this Court," is mystifying and, more to the point, simply not accurate.

### B.      Bad Faith Cannot be Established as a Ground for Dismissal

38.     Although not an enumerated ground for dismissal or conversion under 11 U.S.C. § 1112(b)(4), bad faith is well recognized as "cause" to dismiss or convert a chapter 11 case.  But as a ground for dismissal "the concept of [a] bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors, except in extraordinary circumstances." *In re AMC Realty Corp.*, 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001).  *See also In re StatePark Building Group, Ltd.*, 316 B.R. 466, 476 (Bankr. N.D. Tex. 2004) ("[t]o find bad faith, the court must find that the facts surrounding the filing of the petition are particularly egregious").  As a result, most courts in the Second Circuit hold that both subjective and objective bad faith need to be shown before the case can be dismissed on bad faith grounds.  *In re 167 West 133rd Street Housing Development Fund Corp.*, Case No. 18-12043 (JLG), 2018 WL 4637460, at *8 (Bankr. S.D.N.Y. Sept. 25, 2018); *Davis v. M&M Developer, LLC* (*In re MBM Entertainment, LLC*), 531 B.R. 363, 408 (Bankr. S.D.N.Y. 2015), *subsequent determination* 2015 WL 3877285 (Bankr. S.D.N.Y. June 19, 2015) (determination of prejudgment interest); *In re East End Development,*

*LLC*, 491 B.R. 633, 641 (Bankr. E.D.N.Y. 2013); *In re General Growth Properties, Inc.*, 409

B.R. 43, 56 (Bankr. S.D.N.Y. 2009).  *Compare Sapphire Development v. McKay*, 549 B.R. 556,

567 (D. Conn. 2016) (finding that subjective bad faith alone is sufficient for dismissal).[10]

39.    In order to dismiss a chapter 11 case for bad faith, the moving party bears the

burden of establishing that "it is clear that on the filing date there was no reasonable likelihood

that the debtor intended to reorganize and no reasonable probability that it would eventually

emerge from bankruptcy proceedings." *In re Artisanal 2015, LLC*, Case No. 17-12319 (JLG),

2017 WL 5125545, at *8 (Bankr. S.D.N.Y. Nov. 3, 2017) (quoting *Baker v. Latham*

*Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991)).

*See also 167 West 133rd Street Housing Development Fund,* at *8.  If that burden is met, "a

rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to establish good

and sufficient reasons why the relief should not be granted." *Id.* (internal quotation and citation

omitted).

**(i)    Subjective Bad Faith**

40.    PAX's claim that Kwok subjectively commenced this case in bad faith boils down

to the argument that by filing for chapter 11 relief, Kwok sought to forestall contempt sanctions,

including possible imprisonment, and to relitigate cases he previously lost, and that he has no

personal assets, business, employees or operations and no legitimate unsecured creditors except

for PAX (Dismissal Motion  ¶¶57-59).

---

[10] The District Court's decision in *Sapphire* is not binding on this Court and should not be followed as it
goes against the weight of authority in this Circuit.  *Daly v. Deptula* (*In re Carrozzella & Richardson*),
255 B.R. 267, 272 (Bankr. D. Conn 2000) ("[i]t is widely accepted that the decision of one district court
judge is not binding on another district judge, even within the same district [citation omitted].  Logically
then, a judge of the bankruptcy court—a unit of the district court, 28 U.S.C. § 151—is not bound by the
decision of a single district court judge").  PAX itself acknowledges the requirement of establishing both
subjective and objective bad faith (Dismissal Motion ¶56).

41.     While the timing of Kwok's chapter 11 filing suggests that one of the purposes of the filing was to avoid having to pay a $134 million contempt fine to PAX or suffer possible imprisonment, the desire to invoke the stay itself is not sufficient for bad faith.  "Rather, the debtor must intend to obtain the benefit of the automatic stay for an improper purpose, such as merely to frustrate the rights of creditors rather than to reorganize or have an orderly liquidation." *In re Soundview Elite, Ltd.*, 503 B.R. 571, 580 n. 18 (Bankr. S.D.N.Y. 2014).

42.     What PAX overlooks is that a contempt fine based on a debtor's wrongdoing, which has the effect of harming general unsecured creditors, may be subject to equitable subordination in chapter 11 under 11 U.S.C. § 510(c).  *See In re Friedman's, Inc.*, 356 B.R. 766, 774-778 (Bankr. S.D. Ga. 2006) (based on totality of circumstances court equitably subordinated valid penalty claim under state law to claims of general unsecured creditors). [11]  Even if it is not, filing a chapter 11 case to prevent a single creditor from dismembering the debtor's assets and to subject the debtor's financial affairs and potential assets to the scrutiny and investigation of all creditors, as the Debtor is purporting to do (Kwok Dec. ¶3), is not bad faith of the type necessary to support dismissal.

43.     A case in point is *In re Meier*, Bankruptcy No. 14-bk-10105, Adv. No. 14-ap-237, 2014 WL 5426763 (Bankr. Oct. 21, 2014).  There, a creditor who was the recipient of a $10 million jury verdict for punitive damages sought to dismiss the judgment debtor's chapter 11 case, which was commenced before the court had determined compensatory damages or entered a final judgment.  *Id.* at *1.  While recognizing the multi-factor test in the Seventh Circuit that is

---

[11] PAX's Judgment against the Debtor has already afforded it 15% interest on the principal amount owed from and after December 31, *2010* (over 10 years of interest at an exorbitant rate) and then 9% post-judgment interest from and after February 3, 2021.  Under the Judgment, PAX's interest claim exceeds the principal amount owed by about $24 million (Friedman Dec., Ex. 1).

similar to the test set forth in *In re C–TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir.1997),

the court espoused that the "'key test' of good faith" is "whether the debtor has proposed or can

propose a legally and economically feasible plan of reorganization or whether the case and

possible plan can otherwise serve a valid reorganization purpose." *Id.* at *2.

44.     To that point, the court found such a valid purpose on the basis that "[r]easoned

decision making should be favored over piecemeal dismemberment as creditors engage in a race

to collect assets," and that "[f]iling to forestall a citation lien can be a legitimate use of the

Bankruptcy Code because it replaces the race to the courthouse with a collective proceeding."

*Id.* at *3.  In denying dismissal, the court reasoned that the moving creditor's "insistence that he

be paid ahead of other creditors is not a reason to dismiss the bankruptcy case, *id.* at *4, and that

"Meier's bankruptcy filing is not shown to have been in bad faith because he appears to have a

proper reorganizational purpose: creditors have the prospect of recovery in a collective

proceeding in bankruptcy instead of from a race to the courthouse outside of bankruptcy." *Id.* at

*5.  Similarly, here, PAX's insistence that it be allowed to continue its race to collect the

Debtor's assets ahead of other creditors by dismissing this case should not be permitted to

prevail.

45.     As for the Debtor's purported purpose of filing chapter 11 to relitigate the Final

Contempt Order, the Committee agrees that this would not be a proper purpose of filing chapter

11.  But in order to satisfy the subjective element of the bad faith inquiry, the moving party must

show that the debtor filed chapter 11 with "intent to use the bankruptcy process ***solely*** as a means

to delay, frustrate and relitigate State court issues," *In re Slettleland*, 260 B.R. 657, 661-62

(Bankr. S.D.N.Y. 2001) (citing *In re C–TC 9th Avenue Partnership*, 113 F.3d 1304 (2d

Cir.1997)) (emphasis added), and without any intent to reorganize.  *Id.* at 661 (citing *In re*

*Cohoes Industrial Terminal, Inc.*, 931 F.2d 222 (2d Cir.1991) for the proposition that a case "not filed in bad faith if the debtor had 'some intention of reorganizing'").  PAX has not established that relitigating state court issues was the Debtor's sole intent in commencing this case.  And in any event, even if relitigating the Final Contempt Order was one of the Debtor's purposes, it is a futile one that is easily avoided by moving to dismiss the Boat Adversary Proceeding, or for summary judgment, based on the preclusion principles that have been well-developed in prior pleadings.  *See supra.* ¶30.

46.     PAX's analysis of the *C-TC* factors, while neatly packaged into a two-page chart, is replete with inaccuracies.  First, this case most definitely is not a case with a single asset. There is, at a minimum, the *Lady May*, or the estate's rightful claim to it, and the Debtor's equity interest in the Sherry Netherlands apartment held through Genever Holdings Corp.("Genever BVI"), which was the subject of PAX's turnover proceeding in New York Supreme Court and its veil-piercing claims against Genever Holdings, LLC ("Genever NY") and Genever BVI at the time of the Debtor's chapter 11 filing (Dismissal Motion ¶¶ 6, 16, 22).  PAX also has veil piercing or alter ego claims pending in the British Virgin Islands against Genever BVI, Bravo Luck Limited, Kwok and his son, Qiang Guo.[12] There are other possible veil piercing or alter ego claims against family members or their purported companies, such as the one PAX suggests exists against Golden Spring (Dismissal Motion ¶21).  In addition, the Committee has only recently been able to start its investigation into other hidden assets the Debtor may have.

---

[12] These claims are more fully described in the Second Amended and Restated Settlement Agreement filed in the chapter 11 case of Genever NY, Case No. 20-12411 (JLG) (the "Genever Chapter 11 Case") (ECF No. 165-2) (the "Genever Settlement Agreement").  The Genever Settlement Agreement describes these claims at ¶1d as the "BVI Litigation," and ¶7b provides that any party may proceed with the BVI Litigation.

47.     It is well established that causes of action held by a debtor's estate are property of the estate. *Berman, Trustee for Estate of Michael S. Goldberg, LLC v. LaBonte*, 622 B.R. 503, 527 (D. Conn. 2020).  These include veil piercing claims of the type asserted by PAX.  *See Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d 130, 132 (2d Cir.1993).  *See also St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) ("Congress intended to protect all creditors by making the trustee the proper person to assert claims against the debtor. This reasoning extends to common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion"); *Keene Corp. v. Coleman* (*In re Keene Corp*.), 164 B.R. 844, 852 (Bnkr.S.D.N.Y.1994) ("the trustee has standing to assert claims based upon piercing the corporate veil or alter ego liability, and creditors are precluded from pursuing those claims until they have been abandoned").   As aptly explained by the Second Circuit:

> every creditor in bankruptcy has an individual claim (set forth in a proof of claim) against the debtor, whether it be in tort (as here), contract, or otherwise. But often there are claims against third parties that wrongfully deplete the debtor's assets. Individual creditors may wish to bring claims against those third parties to seek compensation for harms done to them by the debtor and secondary harms done to them by the third parties in wrongfully diverting assets of the debtor that would be used to pay the claims of the individual creditor. The fact that an individual creditor may seek to do so does not make those secondary claims particular to the creditor, for it overlooks the obvious: ***Every creditor has a similar claim for the diversion of assets of the debtor's estate. Those claims are general—they are not tied to the harm done to the creditor by the debtor, but rather are based on an injury to the debtor's estate that creates a secondary harm to all creditors regardless of the nature of their underlying claim against the debtor***.

*Tronox Worldwide LLC v. Kerr-McGee Corp.* (*In re Tronax Inc.*), 855 F.3d 84, 103-04 (2d Cir. 2017) (emphasis added).  *See also Trustees of Plumbers Local Union No 1 Welfare Fund,* Civ. No. 17-CV-2846-DLI-SJB, 2018 WL 3635049, at *1, 11-12 (E.D.N.Y. Feb. 12, 2018) (creditor's claim that non-debtor entities, denominated as "Enobrac," were alter egos of the debtor, MJM Plumbing, Inc., alleged harm common to all creditors of MJM and thus trustee was proper person

to "assert … common claims against the debtor's alter ego," and stating that "[i]f MJM has been hiding assets with Enobrac or using Enobrac to avoid contractual or other obligations, then Enobrac's assets may be used to satisfy obligations of all creditors").

48.    As a result of the foregoing, describing this case as if it were a single-asset real estate case or as one where the only assets are Kwok's business suits, a dog and speculative litigation claims (Dismissal Motion at 33, *CT-C* Factor 7) is completely inaccurate.  And comparing PAX's "targeting of the *Lady May*" and the Residence (Sherry Netherland apartment) in the Genever Chapter 11 Case to an "Asset Subject to Foreclosure" (Dismissal Motion at 32, *CT-C* Factor 3) adds insult to injury.  In truth, these assets were not subject to foreclosure or enforcement of any lien held by PAX at the time the chapter 11 petition was filed, but they will no doubt be confiscated by PAX to the exclusion of other creditors if this case is dismissed.

49.    Even more off base is PAX's contention that there are no legitimate creditors in this case other than PAX (Dismissal Motion at 32, *CT-C* Factor 2, *CT-C* Factor 4; Dismissal Motion at 33, *Syndicom* Factor 3).  The 72 or so unliquidated litigation claims that are listed on Kwok's Schedule F are creditors who are just as "legitimate" as PAX, and when they all are given an opportunity to file proofs of claim, the amounts of their claims, combined with the other claims the Debtor listed with liquidated amounts, will likely exceed the amount of PAX's claims.

### (ii)    Objective Futility

50.    Even if subjective bad faith can be established, the moving party must also demonstrate "that the Debtor's reorganization efforts would be objectively futile…."  *In re Artisanal 2015, LLC*, Case No. 17-12319 (JLG), 2017 WL 5125545, at *12 (Bankr. S.D.N.Y. Nov. 3, 2017).  A court "'should reach the conclusion that the Debtor has no demonstrable ability to reorganize only upon the strongest evidentiary showing'."  *Id.* at *10 (quoting *In re*

21

*RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996)).  Such a showing cannot be made here.

51.     This case is not objectively futile. Preliminarily, there is little question that an individual, even one with few non-exempt assets (including a single litigation claim), is eligible for relief under chapter 11.  *Toibb v. Radloff*, 501 U.S. 157, 158, 163, 111 S.Ct. 2197, 2198, 2200, 115 L.Ed.2d 145 (1991).  And chapter 11 is also legitimately used for liquidations. *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n. 2, 126 S.Ct. 2326, 2330, n. 2, 171 L.Ed.2d 203 (2008).

52.     PAX's characterization of this case as one where "Kwok's stated goal is to account for his (alleged $3,850 worth of) assets" is demonstrably false.  An entirely legitimate and constructive part of this case is to investigate, uncover and marshal for all creditors the assets Kwok is known to have (the *Lady May* and the Sherry Netherland apartment) and those assets that are yet to be discovered or established as property of the estate.  In that process, it is not beyond the realm of possibility that the parties will be able to negotiate a plan that would work for all constituents, whether that might involve "contributions" from family members or their companies or other sources.

53.     Moreover, Kwok is not the only constituent in this case that may seek to confirm a chapter 11 plan of reorganization.  Once exclusivity is terminated, the Committee or any other party in interest may file a plan.  And PAX's contention that "its assent will be necessary for any successful plan" (Dismissal ¶61) is not correct.  A plan that would be entirely confirmable, but that would not require PAX's consent, is a form of liquidating plan that would marshal for creditors in the form of a liquidating trust all assets of the Debtor, including causes of action respecting known assets of the Debtor (the *Lady May* and the Sherry Netherland apartment) and

alter ego and veil piercing claims, and once they are liquidated, provide a distribution to creditors on a *pro rata* basis.

54.     Under such a plan, PAX's claim could be separately classified from the claims of other unsecured creditors, as PAX has made it abundantly clear that its interests and goals are different than other unsecured creditors, which PAX believes are insignificant or illegitimate. *See e.g. In re Purdue Pharma, L.P.,* 633 B.R. 53, 70 (Bankr. S.D.N.Y. 2021) ("[a] plan proponent has the right under the Bankruptcy Code to classify similar claims in separate classes if there is a reasonable basis to do so"), *vacated on other grounds* 635 B.R. 26 (S.D.N.Y. 2021), *appeal pending* Nos. 22-85, 22-110 (2d Cir. Jan. 18, 2022) (argued April 28, 2022); *In re LightSquared Inc.*, 513 B.R. 56, 83 (Bankr. S.D.N.Y 2014) ("the separate classification of otherwise substantially similar claims and interests is appropriate so long as the plan proponent can articulate a 'reasonable' (or 'rational') justification for separate classification").  The class of unsecured claims without PAX, if it votes to accept the plan, would constitute the impaired, accepting class required by 11 U.S.C. § 1129(a)(10).  As long as the plan provides that the Debtor will not receive or retain any property, which it would not, PAX could be crammed down under 11 U.S.C. § 1129(b)(2)(B)(ii).

55.     Contrary to PAX's contention, it cannot be shown that there is no demonstrable ability for a reorganization in this case.

### C.     Section 1112(b)(4) Does Not Support Dismissal

56.     Section 1112(b)(4) of the Bankruptcy Code provides that cause exists to convert or dismiss a chapter 11 case if there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4).

57.     PAX argues there is a "continuing loss" to the estate because "every penny of cash that comes into the estate is either a gift or loan from the assets of family members for

23

purposes of funding administrative expenses" (Dismissal Motion ¶65).  PAX overlooks, however, that the monthly living expenses that are being funded by Golden Spring are not loans and thus there is no accrual of administrative expenses as a result of those advances.[13]

58.     While the Debtor's March Monthly Operating Report reflects $1,276,267 in postpetition payables, this amount obviously represents the accrued, but yet to be allowed professional fees of the Debtor.  To the extent the proposed DIP loan is approved and the professional fees are allowed, the fees will be paid from a loan that will be subordinate to administrative expenses and prepetition unsecured claim.  That is not in any sense a substantial or continuing loss to or diminution of the estate.

59.     Even if professional fees are not allowed to be paid by the DIP loan, the mere accrual of professional fees does not constitute a continuing loss to the estate.  *See In re Miller*, 496 B.R. 469, 479 (Bankr. E.D. Tenn. 2013) ("the accrual of liabilities such as professional fees and/or taxes are not the same as the incurring of actual out-of-pocket losses, such as the dissipation of assets that diminishes the estate.") (internal quotation and citation omitted).  *See also In re Gabriel Techs. Corp.*, Case No. No. 13–30340 (DM), 2013 WL 2318581, at *3 (Bankr.N.D.Cal. May 28, 2013) ("[p]erhaps from an accounting perspective (profit and loss), such accruals [professional fees and Delaware state taxes] would constitute such losses. But the accrual of liabilities are not the same as the incurring of actual out-of-pocket losses, such as the dissipation of assets that diminishes the estate. Leaving the Debtors in possession of the chapter 11 estate is not risking some ever-diminishing pool of assets"), *appeal dismissed,* 2013 WL 4672785 (N.D. Cal. Aug 30, 2013).

---

[13] The Debtor's Monthly Operating Report for the period ending February 28, 2022 (ECF No. 120) reflects that $161,323 in disbursements were made on the Debtor's behalf.  It is believed that some

60.     Moreover, in this case, there are significant assets that eclipse the amount of accrued professional fees.  While the Debtor disputes the assets are his, that does not make it so. Judge Ostrager's finding concerning the Debtor's interest in the *Lady May* should result in its becoming an asset of the estate based on res judicata, collateral estoppel or Rooker-Feldman grounds.  And there is a substantial prospect of the same result with respect to the Sherry Netherland apartment.  These assets are worth many multiples of the accruing professional fees.

### D.     Gross Mismanagement Within the Meaning of Section 1112(b)(4)(b) Cannot Be Established

61.     The determination of "gross mismanagement" under 11 U.S.C. § 1112(b)(4)(B) is confined to postpetition conduct only.  *In re Zamora-Quezada*, 622 B.R. 865, 886 (Bankr. S.D. Tex. 2017) ("[t]o determine whether a debtor has engaged in gross mismanagement of the estate, the Court must look at the debtor's post-petition conduct only").  *Accord In re 412 Boardwalk, Inc.*, 520 B.R. 126, 135-36 (Bankr. M.D. Fla. 2014).   PAX's citation to what occurred with the *Lady May* prepetition is therefore not relevant to gross mismanagement under § 1112(b)(4)(B), and the extensive efforts made by all parties to negotiate the consensual Boat Delivery Order demonstrate that Kwok and all interested parties are endeavoring to secure its return postpetition.

62.     "Gross mismanagement suggests some extreme ineptitude" on the part of the debtor in possession, *In re Sundale, Ltd.,* 400 B.R. 890, 907 (Bankr. S.D. Fla. 2009), and "contemplates the presentation of actual proof of gross mismanagement, not merely a statement of suspicions or of a desire for further investigation."  *In re Norwest Company,* LLC, Case No. 20-10990 (MEW), 2020 WL 6927661, at *2 (Bankr. S.D.N.Y. Nov. 20, 2020).  While the Committee does not condone the Debtor's patently unreasonable positions that he owns no assets

---

portion of that amount was used to pay the Debtor's living expenses, but none of the disbursements was recorded as a loan or postpetition payable.

and, in particular, has no interest in the *Lady May* or the Sherry Netherland apartment, the Debtor has at least not failed to disclose the disputes with respect to those assets, and has arranged to fund an investigation into what is believed will show his substantial wealth.  While this investigation would be funded by one of the potential targets of recovery for this estate – Golden Spring – the funding is without prejudice to pursuing Golden Spring for estate recoveries.  For these reasons, the Committee does not believe that "gross mismanagement" can be established.

> ### E.    The "Unusual Circumstances" Exception in Section 1112(b)(2) Should Preclude Dismissal

63.    Section 1112(b)(2) of the Bankruptcy Code provides that the court may not convert or dismiss a chapter 11 case "if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that –":

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
> (i) for which there exists a reasonable justification for the act or omission; and
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).  A court has "wide discretion" to determine if "unusual circumstances" exist.  *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007).  *See also In re First Connecticut Consulting Group, Inc.*, Case No. 02–50852 (JJT), Case No. 02–51167 (JJT), 2018 WL 2121531, *4 (Bankr. D. Conn. May 7, 2018) ("[t]he statute makes clear that courts enjoy significant discretion in determining whether unusual circumstances are present").

64.    "The phrase 'unusual circumstances' is not defined in the Bankruptcy Code, but the word 'unusual' contemplates facts that are not common to chapter 11 cases generally." *In re*

*Ford Steel, LLC*, 629 B.R. 871, 883 (Bankr. S.D. Tex. 2021) (internal quotation and citation

omitted).  This may include taking into account "'the likely consequences of remaining in

chapter 11 or converting the case to chapter 7 and consider[ing] what the likely consequences

would be in the end result under each chapter [and] if the likely outcome for creditors will be

vastly superior under chapter 11, courts find unusual circumstances under § 1112(b)(2)'." *In re*

*Express Grain Terminals, LLC*, Case No.: 21-11832-SDM, 2022 WL 1051097, at *9 (Bankr.

N.D. Miss. Apr. 7, 2022) (quoting *In re Korn,* 523 B.R. 453, 468 (Bankr. E.D. Pa. 2014)).  It also

may include considering whether dismissal of the case would allow a single creditor to foreclose

on the debtor's assets, thereby "reduc[ing] the likelihood of payment of legitimate unsecured

creditors' claims."  *In re New Towne Development, LLC*, 404 B.R. 140, 148 (Bankr. M.D. La.

2009).

65.    The Debtor's case certainly has facts that are not common to chapter 11 cases

generally.  The circumstances leading to the chapter 11 filing, the "family" assets which would

appear to belong to the Debtor, the 100% equity interest the Debtor holds in a multi-million

dollar apartment on Fifth Avenue in New York, the finding of a beneficial interest of the Debtor

in a $37 million yacht, and the various alter ego or veil piercing claims that exist, all serve to

establish a lack of commonality with other chapter 11 cases.  And similar to the situation in *New*

*Towne Development*, dismissal would enable PAX to marshal all of the Debtor's assets to satisfy

its claims only (including a $134 million contempt fine that may be subject to equitable

subordination).

66.    As to the reasonable likelihood of a plan being confirmed within a reasonable

time, the Committee submits that since the case is still in its early stages and thus far has been

overtaken with litigation over non-plan matters, it is simply not possible to conclude there is no

reasonable prospect for an effective reorganization.  *See New Towne Development*, 404 B.R. at

147 ("[i]t is not possible at this early stage to conclude that New Towne has no reasonable

prospect for an effective reorganization").

67.     As to the element required to be established under § 1112(b)(2)(B), the

Committee does not believe that grounds for converting or dismissing the case have been

established, but if such grounds (other than under § 1112(b)(4)(A)) are determined by the Court

to exist, there is a reasonable justification for the chapter 11 filing in that it prevented PAX from

continuing its quest to realize upon the Debtor's assets to satisfy its claims – and its claims only.

68.     In terms of the cure that is required by § 1112(b)(2)(B)(ii), the Boat Delivery

Order should be considered curative of any motive in filing to avoid the consequences of

contempt in the New York Supreme Court action.  The Boat Delivery Order has effectively

secured the *Lady May's* return by putting $37 million in cash on the line if it is not returned in

good working condition by July 15, 2022.  And as PAX has acknowledged by its consent to the

Boat Delivery Order, imprisonment of the Debtor was not its primary goal.  Thus, imprisonment

or other sanctions that might have been meted out by Judge Ostrager must be ruled out as a

necessary "cure" under § 1112(b)(2)(B)(ii).

69.     To the extent the Court finds that a motive to relitigate matters with PAX would

be a ground for dismissal, it is easily cured by asserting res judicata, collateral estoppel and/or

the Rooker-Feldman doctrine to conclusively determine the Debtor's interest in the *Lady May* in

the context of the Boat Adversary Proceeding.  *See supra.* ¶30 and n. 8.

> **F.**     **Even if the Court Finds Cause to Dismiss or Convert, Neither Form of Relief**
>          **Should be Granted Because the Appointment of an Examiner Would Be in**
>          **the Best Interests of Creditors and the Estate**

70.     Section 1112(b)(1) of the Bankruptcy Code provides, in pertinent part, that "the

court shall convert … or dismiss a case under this chapter, whichever is in the best interest of

creditors and the estate, for cause, ***unless the court determines that the appointment of … of a trustee or an examiner is in the best interest of the estate***." 11 U.S.C. § 1112(b)(1) (emphasis added).

71.      "If the parties disagree on conversion, dismissal or appointment of trustee or examiner, the court should evaluate and choose the alternative that would be most advantageous to the parties and the estate as a whole." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[7], at 1112-48 (Richard Levin & Henry Sommer eds., 16th ed. 2021).   This determination should include an assessment of "'the interests of ***all*** creditors.'"   *Id.* at n. 157 (quoting *Rollex Corp. v. Associated Materials, Inc.* (*In re Superior Siding & Window, Inc.*), 14 F.3d 240, 243 (4th Cir. 1994) (emphasis in original)).

72.      Here, if the court finds that cause does exist for conversion or dismissal, it is submitted that the appointment of an examiner would be the most advantageous remedy for the parties and the estate as a whole, because an examiner could work hand-in-hand with the Committee to investigate potential claims and recoveries against third parties and the lawsuits the Debtor claims are valuable assets.  *See e.g. In re TMT Procurement Corp.*, 534 B.R. 912, 921-22 (Bankr. S.D. Tex. 2015) (finding cause for conversion or dismissal but appointing examiner instead to investigate lawsuits).  An examiner would also be a less costly, but equally effective, form of relief than would the appointment of a chapter 11 trustee, inasmuch as the level of estate administration and professional fees would be substantially less[14] and, at this point

---

[14] In considering the appointment of a chapter 11 trustee, the "bankruptcy court must bear in mind that the appointment of a trustee may impose a substantial financial burden on a hard pressed debtor seeking relief under the Bankruptcy Code, by incurring the expenditure of substantial administrative expenses caused by further delay in the bankruptcy proceedings."  *Adams v. Marwil* (*In re Bayou Group, LLC*), 564 F.3d 541, 546-47 (2d Cir. 2009) (internal quotations and citation omitted).

in the case, the only assets to administer are essentially causes of action[15] which the Committee can handle if the Debtor will continue to unjustifiably fail to pursue them.

## II.
## PAX'S JOINDER IN THE UNITED STATES TRUSTEE'S MOTION FOR A CHAPTER 11 TRUSTEE

73.    Preliminarily, the Committee notes that the current Scheduling Order issued by the Court (ECF No. 274) is with respect to the Dismissal Motion alone, and does not, *e.g.*, provide for the filing of witness or exhibit lists as would be necessary for proceedings to adjudicate the separate contested matter that was initiated by the UST's Examiner/Trustee Motion (which, by the Dismissal Motion, PAX seeks, in the alternative, to "join").  Such a separate proceeding would be necessary as the appointment of a chapter 11 trustee is an "extraordinary" remedy and carries "the burden of showing by clear and convincing evidence that the appointment of a trustee is warranted."  *Adams v. Marwil* (*In re Bayou Group, LLC*), 564 F.3d 541, 546 (2d Cir. 2009) (internal quotation and citation omitted).

74.     If the Court were to take up the Examiner/Trustee Motion on the same schedule as the Dismissal Motion, the Committee is of the position that the appointment of a trustee is not warranted at this time.

75.    The determination of whether "cause" exists to appoint a chapter 11 trustee under the 11 U.S.C. § 1104(a)(1) is a factual determination.  *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007).  "[A] court is given wide latitude in determining whether the challenged conduct rises to the level of 'cause'."  *Id.*  The substantial financial burden and delay inherent in appointing a chapter 11 trustee must be considered.  *Bayou Group¸* 564 F.3d at 546-47.

---

[15] These would include the estate's claim to ownership of the *Lady May*, the Sherry Netherland apartment

76.     The Committee does not believe that cause exists for the appointment of a trustee *at this time*, notwithstanding the Debtor's conflicts of interest and other "cause" alleged to exist by PAX.  There are adequate procedural and substantive safeguards in place to ameliorate these conflicts by the investigatory process that is underway by the Committee and the doctrine of derivative standing that is available if it is established that colorable claims exist which the Debtor is unjustifiably failing to pursue.

77.     It is noted that the primary or preferred form of relief requested by the UST in the Examiner/Trustee Motion is the appointment of an examiner.  To the extent the Court finds cause for dismissal or conversion and that the exception contained in § 1112(b)(2) has not been satisfied, the Committee favors the appointment of an examiner.  But absent these findings, an examiner is not mandatorily required in this case if the Court does not appoint a trustee.

78.     Section 1104(c) of the Bankruptcy Code requires the court to appoint an examiner if it does not appoint a trustee, "to conduct such examination of the debtor as is appropriate..., if (1) such appointment is in the best interests of creditors … and other interests of the estate; or (2) the debtor's fixed liquidated unsecured debts, other than debts for goods, services or taxes, or owing to an insider, exceed $5,000,000."  11 U.S.C. § 1104(c).

79.     It has been held that based upon the "as is appropriate" language in 11 U.S.C. § 1104(c), "the facts and circumstances of the case may permit a bankruptcy court to deny the request for appointment of an examiner even in cases with more than $5 million in fixed debts." *In re Residential Capital, LLC*, 474 B.R. 112, 121 (Bankr. S.D.N.Y. 2012).  This reading would also apply to an examiner appointment that is requested pursuant to 11 U.S.C. § 1104(c)(1).  *Id.* at 117.

---

and the alter ego and veil piercing claims heretofore discussed.

80.     Although the *ResCap* court concluded that the appointment of an examiner was warranted in that particular case, the Committee submits it would be appropriate to withhold such an appointment here while it is given the opportunity with its highly qualified financial advisor and fraud investigation consultant to conduct an investigation.  This would allow for substantial cost savings to the estate without sacrificing the extent or quality of the investigation.

### III.
### JOINDER IN OBJECTON OF CREDITORS
### <u>RUI MA, ZHENG WU AND WEICAN MENG</u>

81.     The Committee joins in and adopts by reference the Objection of Creditors Rui Ma, Zheng Wu and Weican Meng to the Dismissal Motion.

## **CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court deny the Dismissal Motion and grant such other or further relief as it may deem just, equitable and proper.[16]

Dated: Bridgeport, Connecticut
　　　May 11, 2022

　　　　　　　　　　　　　　　　OFFICIAL COMMITTEE OF UNSECURED
　　　　　　　　　　　　　　　　CREDITORS OF HO WAN KWOK


　　　　　　　　　　　By:　　*/s/Irve J. Goldman*　　　　　　　
　　　　　　　　　　　　　　Irve J. Goldman
　　　　　　　　　　　　　　Jonathan A. Kaplan
　　　　　　　　　　　　　　Pullman & Comley, LLC
　　　　　　　　　　　　　　850 Main Street, 8th Floor
　　　　　　　　　　　　　　PO Box 7006
　　　　　　　　　　　　　　Bridgeport, CT 06601-7006
　　　　　　　　　　　　　　(203) 330-2213
　　　　　　　　　　　　　　igoldman@pullcom.com

　　　　　　　　　　　　　　Its Attorneys

---

[16] Just as this Opposition was in the process of being finalized, the Debtor filed the Debtor's Consent to Dismissal of Case (ECF No. 344) and his Withdrawal of the DIP Motion (ECF No. 345). The Committee was given no prior notice of these filings. Despite the Debtor's consent to dismissal, the Committee's opposition to the dismissal as set forth herein remains. At a very minimum, conversion of the case, as opposed to dismissal, must now be given serious consideration. As set forth herein, this case is not just a two-party dispute. Other parties' rights must be considered by the Court, which the Committee looks forward to addressing at the hearing on the Dismissal Motion.

**CERTIFICATION OF SERVICE**

I Irve J. Goldman, herby certify that on May 11, 2022, the foregoing Opposition Of The Official Committee Of Unsecured Creditors To Pacific Alliance Asia Opportunity Fund L.P.'S Motion To Dismiss Chapter 11 Case Or, In The Alternative, Partial Joinder To United States Trustee's Motion For An Order Directing The Appointment Of A Chapter 11 Trustee was filed via the Court's CM/ECF electronic filing system ("CM/ECF"), which sent notice to all parties receiving notification through CM/ECF.

*/s/ Irve J. Goldman*
Irve J. Goldman

ACTIVE/83201.6/IJG/10309453v1