**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| | : | CHAPTER 11 |
| In re: | : | |
| | : | |
| HO WAN KWOK,[1] | : | Case No. 22-50073(JAM) |
| Debtor. | : | |
| | : | Hearing Date: May 25, 2022 |

**OBJECTION OF CREDITORS RUI MA, ZHENG WU AND WEICAN
MENG TO THE MOTION OF PACIFIC ALLIANCE ASIA
OPPORTUNITY FUND L.P. FOR DISMISSAL OF THIS CASE OR, IN
THE ALTERNATIVE, FOR APPOINTMENT OF A TRUSTEE**

Creditors Rui Ma, Zheng Wu and Weican Meng ("**Creditors**"), by and through their

undersigned counsel, hereby submit this objection ("**Objection**") to the motion of Pacific

Alliance Asia Opportunity Fund L.P. ("**PAX**") for dismissal of this case or, in the alternative,

for appointment of a trustee (the "**Dismissal Motion**"), and respectfully state as follows:

**PRELIMINARY STATEMENT[2]**

1.      The Creditors join in and adopt by reference the opposition of the Official

Committee of Unsecured Creditors appointed in this Case (the "**Committee**") to the Dismissal

Motion filed contemporaneously with this Objection.

2.      By the Dismissal Motion, PAX seeks the extraordinary remedy of dismissing this

Chapter 11 Case.  Even if the Debtor has engaged in wrongdoing, PAX has failed to meet its

burden of establishing that the reorganization process serves no legitimate purpose and would be

---

[1]  The above-named Debtor and Debtor in Possession, Ho Wan Kwok (the "**Debtor**" or "**Kwok**") is known by the
    following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2]  Capitalized terms used but not defined in this preliminary statement have the meaning ascribed to such terms
    below or in the Dismissal Motion.

1

objectively futile. Moreover, dismissal of the Case at this juncture is not in the best interest of creditors or the estate, and would solely benefit one creditor, PAX.

3.    PAX's proclamation of this Case as a typical "two-party dispute" is simply wrong -- there are dozens of legitimate creditors in this Case. While purporting to take aim at the Debtor, the Dismissal Motion seeks to allow PAX to jump ahead of the Debtor's other creditors to win the proverbial "race to the courthouse" to the detriment of other creditors. This Case should be allowed to proceed (within parameters) to pursue equality of distribution among creditors, which is a legitimate bankruptcy purpose, under the auspices of the Court's oversight and the watchful and discerning eyes of the Committee and the United States Trustee (and, of course, individual creditors such as PAX).

4.    Conversely, PAX is not unreasonably prejudiced by denying the Dismissal Motion at this time. PAX's asserted concerns respecting the Debtor's attempt to relitigate issues already determined by Judge Ostrager in the PAX State Court Litigation and of "continuing loss" to the estate are not compelling. The Court has repeatedly stated it will not relitigate matters already decided by Judge Ostrager, and there is no reason to believe otherwise. Moreover, currently there is no substantial, if any, diminution in estate assets due to, among other reasons, (a) no funds identified as belonging to the estate are being used to pay any administrative claims, (b) the Boat Delivery Order provides that $37 million will remain in escrow pending the return of the Lady May -- and the Lady May is scheduled to be returned to the U.S. jurisdiction by July 15, 2022, and (c) the DIP Lender's claims are subordinated to general unsecured creditors. Moreover, the centralization of disputes concerning the Debtor in this Court, with the expanded investigatory, avoidance and equitable powers that are available in bankruptcy court (such as

Rule 2004 examinations, avoidance of insider and other preferential transactions, debt recharacterization, equitable subordination, and substantive consolidation), and the oversight of the Debtor by this Court as well as the United States Trustee and the Committee, has great benefits for general unsecured creditors (including PAX) over any non-bankruptcy alternative. This Case, therefore, has a legitimate purpose. Accordingly, PAX fails to demonstrate that the Case lacks a legitimate purpose and does not preserve values for creditors.

5.     While the Creditors' share a concern with PAX about the Debtor potentially abusing the Court process by continuing to obfuscate his assets and not pursuing recovery of assets, a dismissal of the Case now is premature. The Court should grant some leeway and evaluate the progress of this Case. Even if mismanagement of the estate and misconduct against the Debtor are ultimately proven, continuation of the bankruptcy process is still the optimal path to facilitate recoveries for all creditors and the Court can fashion procedures to ensure proper management of the Case going forward. This is an unusual case concerning an individual chapter 11 debtor in which there currently are no operations and only de minimis declared assets for a fiduciary to currently manage. And, despite the Creditors' strong distrust of the Debtor, the fortuity of the Debtor's commencement of this Case may be their best, and possibly only, alternative to obtain any real recovery from the Debtor (or his co-conspirators). Any investigative, clawback or turnover demand responsibilities can and should be performed by the Committee. Currently, the Case presents an opportunity for creditors to have key disputes concerning the Debtor heard in a single forum – before the Court. The Debtor has arranged for initial funding to allow the Committee to investigate the Debtor's assets and financial affairs, including potentially identifying hidden and fraudulently transferred assets. The Committee has

begun its investigation process.  A bar date motion has been filed by the Debtor and the claims reconciliation process can soon thereafter commence.  Within weeks, the Debtor's exclusivity could be terminated, and parties (in addition to the Debtor) could propose a plan in this Case, which *has* the possibility of being confirmed (contrary to PAX's assertion that no plan can be confirmed).

6.     In sum, PAX has not demonstrated the requisite "cause" to dismiss the Case at this time.  To the extent "cause" is found to exist, this Case presents unusual circumstances that warrant denying the Dismissal Motion.  The Case provides creditors (including PAX) with the opportunity to investigate the Debtor's assets and to ensure equitable distribution of the Debtor's assets to all his creditors – at the expense of non-Debtor insider parties.  Indeed, this case potentially is the best chance for creditors to obtain recoveries from the Debtor – as evident by the fact that since the Petition Date, these proceedings have resulted in $37 million being deposited into an escrow account within the United States pending the return of the Lady May. The Court has the power to monitor this Case to avoid mismanagement and ensure the Debtor complies with his duties and his (and his counsel's) representations that creditors will be able to fully investigate the Debtor's assets and financial affairs.  If the Debtor fails to comply with such obligations causing a stalemate and/or hindering the progress of this Case, dismissal may be warranted at such time.  The Court also has the power to avoid the relitigation of issues already decided by other courts of competent jurisdiction, and to ultimately approve or disapprove fees and other administrative expenses in this Case.

7.     The Creditors further submit that the Dismissal Motion should be denied as futile. Because of the massive benefits for unsecured creditors from centralizing their disputes, the

4

broad bankruptcy powers to marshal assets, and oversight of this Debtor before this Court as compared to any state court, and to avoid a windfall for PAX of sanctions in an amount more than 100% of its damages claim at the expense of other creditors, if this Case is dismissed the Creditors intend to pursue an involuntary petition against the Debtor. The Dismissal Motion, therefore, serves no effective purpose.

8. Accordingly, the Dismissal Motion should be denied without prejudice for any party to seek dismissal at a future time in the event, among other things, the Debtor fails to cause adequate funding of the Case, hinders the investigation into his assets and/or hinders the progress of this Case toward an orderly resolution of creditors' claims and distribution of the Debtor's assets in accordance with the provisions of the Bankruptcy Code (and other applicable laws and rules).

9. At this time, the Creditors also oppose the appointment of a trustee or examiner in this Case.[3] The Creditors submit that it would be in the best interests of all parties involved for this Case to proceed judiciously at least through the end of July. During that time the Committee will be able to pursue its investigations, and the Debtor will either demonstrate its compliance with (or flout) its obligation to return the Lady May to this jurisdiction by July 15th (without additional tactics to hinder such compliance). The Creditors are concerned about the significant delays and the unnecessary additional and substantial administrative expenses that necessarily will be incurred in the event an examiner or trustee is appointed.

10. Although not required pursuant to Section 1112(b)(2) of the Bankruptcy Code, in the event the Court finds that a chapter 11 trustee or examiner must be appointed if the Case is

---

[3] *See* Creditors' limited opposition to Examiner/Trustee Motion. [ECF No. 170].

5

not dismissed, the Creditors strongly urge the Court to opt for the appointment of an examiner with a scope of examination narrowly tailored to work in concert with, and not duplicate, the investigatory efforts of the Committee, which is already in progress.  Such appointment, to the extent necessary, would be the most efficient and effective due to the unique facts of this Case – not a trustee as supported by PAX in the Dismissal Motion.  Whereas, a trustee would not have any better access (then, for instance, the Committee) to information that is within the control of the individual Debtor, and there currently is no business or accessible assets to "manage".

## **BACKGROUND**

### **A.  The Chapter 11 Case.**

11.     On February 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**") commencing this chapter 11 case (the "**Chapter 11 Case**" or "**Case**").  Since that time, the Debtor has remained a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

12.     No trustee or examiner has yet been appointed in this Chapter 11 Case, although on March 19, 2022, the United States Trustee ("**UST**") filed a Motion for Order Directing Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "**Examiner/Trustee Motion**").  The Examiner/Trustee Motion is scheduled for hearing on May 25, 2022, and according to the UST's Amended Proposed Order at n. 1 [ECF No. 116], the Debtor has agreed to the Court's directing the UST to appoint an examiner in this case.

13.     On March 20, 2022, the Debtor filed his Declaration in Support of Chapter 11 Case and Certain Motions [ECF No. 107] ("**Kwok Dec.**").  In his declaration, the Debtor

represents that among the purposes for filing his chapter 11 case "was to provide a forum to determine, once and for all, the extent of allowed claims against my estate (*see* Kwok Dec., ¶42) and "to ... (b) afford stakeholders an efficient opportunity to investigate [his] assets, liabilities, and financial affairs, given what [he] perceive[d] to be misunderstandings in that regard; [and] (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims" (Kwok Dec., ¶3).

14.    On March 21, 2022, the Committee was officially appointed by the UST.  The Committee has filed motions for authorization to take certain Rule 2004 examinations and issue subpoenas for document production in connection with its investigation into the Debtor's assets and financial affairs. [ECF Nos. 252, 295, 297].  Subject to Court approval, the Committee has also engaged a financial advisor, Dundon Advisers LLC, and Gregory A. Coleman of Coleman Worldwide Advisors LLC, as its fraud investigation consultant, to assist the Committee with, among other things, investigating (and identifying) the Debtor's assets and financial affairs. [ECF Nos. 321, 325].

15.    On March 1, 2022, PAX filed its Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code [ECF No. 57] (the "**PAX Lift Stay Motion**").  In sum, PAX sought to enforce a Decision and Order of Civil Contempt (the "**February 9 Contempt Order**") issued by Judge Barry R. Ostrager ("**Judge Ostrager**") on February 9, 2022 in a certain New York state court litigation (the "**PAX State Court Litigation**") compelling the Debtor to remit a $134 million contempt

fine for not returning the "Lady May" yacht or face imprisonment.[4] Subsequently, objections and supporting briefs were filed by various parties. After a series of hearings on the PAX Lift Stay Motion, it was resolved by an extensively negotiated Stipulated Order Compelling HK International Funds Investment (USA) Limited, LLC ("**HK**") to Transport and Deliver That Certain Yacht, the "Lady May" [ECF No. 299] (the "**Boat Delivery Order**"). In summary, pursuant to the Boat Delivery Order, HK posted $37 million in cash with U.S. Bank, as escrow agent, to secure the return of the Lady May to this jurisdiction by July 15, 2022.

16.    On March 22, 2022, the Debtor filed a Motion for Entry of Interim and Final DIP Orders (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing, and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief (the "**DIP Motion**"). Pursuant to the DIP Motion, an insider entity, Golden Spring (New York), Ltd. (the "**DIP Lender**"), proposes to provide a postpetition unsecured and subordinated loan to the Debtor of up to $8 million. A modified proposed Interim DIP Order was filed with the Court on May 3, 2022 [ECF No. 315]. After briefings and initial hearings, the interim relief sought in the DIP Motion, as modified, is currently under advisement.

**B. The Dismissal Motion.**

17.    On April 6, 2022, PAX filed the Dismissal Motion. In the Dismissal Motion, PAX asserts that the Case should be dismissed "for cause" under section 1112(b) of the Bankruptcy Code. PAX argues "cause" exists due to the Debtor's purported misuse of the Bankruptcy System because (i) the Debtor's purposes for the Case are illegitimate, (ii) the Case fails to preserve value for creditors, and (iii) the Case is a litigation tactic in a "two-party

---

[4]  PAX initially obtained a judgment for damages in an amount of $46,426,489 plus interest, resulting in a total judgment of $116,402,019.57. *See* PAX Lift Stay Motion, Exhibit 1 to Exhibit A, at 2.

8

dispute." *See* Dismissal Motion, 23-29. PAX also argues the Case was filed in bad faith. *See Id.*, 29-35. Included in its "bad faith" argument, PAX asserts that the Case is futile because purportedly PAX's assent will be necessary to confirm a plan and PAX's opposition will prevent any such confirmation. *Id*. ¶ 61. In addition, PAX asserts "cause" also exists to dismiss the Case because purportedly (i) the estate continues to diminish in value and there is no reasonable likelihood of rehabilitation under Section 1112(b)(4)(A), and the Debtor is grossly mismanaging the estate under Section 1112(b)(4)(B). *Id.*, 35-38.[5]

18.    In the alternative, PAX asserts that a chapter 11 trustee should be appointed as requested by the UST in the Examiner/Trustee Motion. PAX argues that cause exists to appoint a chapter 11 trustee and such appointment is in the interests of all creditors if the Case is not dismissed. *Id.*, 39-44.

## ARGUMENT

19.    PAX fails to establish the requisite "cause" for dismissal at this stage of the Case. Moreover, despite PAX's casting the relief request in the Dismissal Motion as beneficial to all creditors (Dismissal Motion ¶¶ 44-46, 65, 71), this Case presents unusual circumstances that establish that dismissal of the Case at this juncture would solely benefit PAX, to the detriment of all other creditors. Accordingly, the Dismissal Motion should be denied.

20.    Section 1112(b) of the Bankruptcy Code provides in relevant part that:

(1) Except as provided in paragraph (2) and subsection (c),[6] on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the

---

[5]  PAX also argues that dismissal rather than conversion or the appointment of a chapter 11 trustee is the best disposition. *Id.*, 39.

[6]  Section 1112(c) prohibits the involuntary conversion of a chapter 11 case of a farmer or non-for-profit debtor, neither of which is applicable here. 11 U.S.C. § 1112(c).

court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) -

> > (i) for which there exists a reasonable justification for the act or omission; and
> > (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(1), (2).

21.    Section 1112(b)(4) sets forth sixteen non-exclusive grounds for "cause", including (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and (B) gross mismanagement of the estate.  11 U.S.C. § 1112(b)(4).

22.    The moving party has the burden of demonstrating "cause" for dismissal under Section 1112(b). *See In re AdBrite Corp.*, 290 B.R. 209, 218 (Bankr. S.D.N.Y. 2003).  "Cause" must be assessed against the backdrop that dismissal is a "drastic measure" and should not be done prematurely. *In re Waterworks, Inc.*, 538 B.R. 445, 460 (Bankr. N.D. Ill. 2015) (*quoting In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989)).  "Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under section 1112(b)."  *In re Fuschi-Aibel*, 2020 WL 714324, * 3 (Bankr. D. Conn. Jan. 24, 2020) (*quoting In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)).

KBM/M1738/1001/1830269v1
05/11/22-HRT/BD

23.    In the Second Circuit, grounds to dismiss a bankruptcy exist only if it was clear on the filing date that "there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *In re C-TC 9ᵗʰ Avenue Partnership*, 113 F.3d 1304, 1309-10 (2d Cir. 1997). "Dismissal is generally ordered only where there is both objective futility in pursuing a bankruptcy filing and subjective bad-faith in actually following through with a filing." *General Growth Properties, Inc.*, 409 B.R. 43, at 57, 65 (S.D.N.Y. 2009)(*citing In re Kingston Square Assoc.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997)).

## I.    CAUSE DOES NOT EXIST TO DISMISS THE CHAPTER 11 CASE

24.    The Creditors do not dispute PAX's assertion that the Debtor has engaged in wrongful conduct including "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members" (February 9 Contempt Order, at 1), "secret[ing] his assets in a maze of corporate entities and with family members" (*Id.*), and orchestrating a "shell game... with respect to the Lady May" (*Id.*, at 7) as found by Judge Ostrager in the February 9 Contempt Order. The Creditors also do not dispute that Judge Ostrager already found that "Kwok has much more than a beneficial interest in the Lady May. Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht," (*Id.*, at 8) and that these issues should not be relitigated before the Court in this Case. In addition, it is undisputed that one of the reasons the Debtor commenced the Case was because he was facing an imminent risk of incarceration for violating Judge Ostrager's orders. Despite these egregious acts by the Debtor, they do not establish "cause" to dismiss this Case at this time. Rather, additional facts

are relevant to evaluating the totality of the circumstances, as discussed herein, which dictate denying the Dismissal Motion.

## A. *PAX FAILS TO DEMONSTRATE THE REQUISITE "MISUSE" OF THE BANKRUPTCY SYSTEM BY DEBTOR TO ESTABLISH "CAUSE".*

### i. *A legitimate purpose exists for this Case.*

25.     A legitimate purpose exists for this Case.  At the time of the Petition Date, the Debtor was a defendant in more than 24 lawsuits. *See Debtor's Statement of Financial Affairs*, Question #9, [ECF No. 77 at pp. 22-25].  The Debtor's list of top creditors identifies non-insider claims in excess of $80 million [ECF No. 20], with the three Creditors alone asserting in excess of $30 million in claims against the Debtor (which is not much less than PAX's actual damages award (without interest) of approximately $46 million).  The Debtor's schedules reflect dozens of other non-insider claims asserted against the Debtor with total claim amounts in excess of $373 million. (Debtor's Schedules, ECF No. 77 at p.10).  A bar date has not yet been set in the Case.

26.     The Debtor represents that among the purposes for filing this Case "was to provide a forum to determine, once and for all, the extent of allowed claims against my estate (*see* Kwok Dec., ECF No. 107, ¶42) and "to ... (b) afford stakeholders an efficient opportunity to investigate [his] assets, liabilities, and financial affairs, given what [he] perceive[d] to be misunderstandings in that regard; [and] (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims." [ECF No. 107, ¶3].  These are legitimate purposes of bankruptcy.  These facts also refute PAX's self-centered argument that the Case *solely* involves a two-party dispute -- it does not.  The Creditors have valid claims and intend to fully pursue their claims against the Debtor.

*ii.*    ***The Case Preserves Value for Creditors.***

27.    To the extent the Debtor adequately funds this Case to enable creditors to fully investigate the Debtor's assets and financial affairs (as well as funding allowed claims) – as the Debtor and his counsel have represented to the Court (*see Omnibus Reply of Debtor in Support of Entry of Order Approving DIP Facility*, ECF No. 198, ¶¶ 2, 8 and 10), then the Case would preserve value for creditors; contrary to PAX's argument.  Properly administered, this Case will indeed benefit legitimate unsecured creditors.  The Debtor has taken initial steps to preserve value for creditors.  The DIP loan proposed by the DIP Motion, as modified, would provide an unsecured and subordinated loan to the Debtor that will enable the Committee to investigate the Debtor's assets.

28.    At minimum, PAX would not jump ahead of other creditors, and funds through gifts and subordinated loans would enable the Committee to investigate the Debtor's assets and financial affairs, which would benefit all creditors.  Subject to Court approval, the Committee has engaged Mr. Coleman, the former FBI agent who was instrumental in unwinding the transactions and fraud perpetrated by the "wolf of wall street".  (*See* ECF No. 325).  The Committee should be afforded the opportunity to work with Mr. Coleman to investigate the Debtor's historical transactions in order to identify and clawback, as appropriate, assets of the estate.

29.    Moreover, PAX's argument that this Case does not involve an issue of a "race to the courthouse" is disingenuous.  PAX is well aware that it would jump ahead of other creditors and would seize assets of the Debtor for its own benefit, to the detriment of the remaining creditors whose claims have not yet been liquidated.  The Court should not countenance PAX's

efforts to leapfrog ahead of other general unsecured creditors. While PAX's claim may be unique from other unsecured creditors in that its claim is liquidated and non-contingent,[7] it does not justify allowing PAX to obtain more favorable treatment from other non-insider unsecured creditors. Moreover, at this time, the Boat Delivery Order and the $37 million being held in escrow amply protect PAX's interest in enforcing the Debtor's compliance with the February 9 Contempt Order while this Case proceeds.

30.    Therefore, the only obvious goal of PAX to dismiss the Case is to seize assets of the Debtor for itself in contravention of the priority scheme provided by the Bankruptcy Code. This is a classic race to the courthouse situation where substantially all parties benefit from the automatic stay – indeed, because PAX's actual claim for damages has more than doubled by state court penalties that were intended to (but failed) to compel the Debtor's compliance, dismissing the Case would only reward PAX with an unearned windfall in collecting such penalties potentially at the expense of other legitimate creditors in this Case.

### iii.    *The Case is Not a Two-Party Dispute.*

31.    The Court should also reject PAX's attempt to characterize this case and its facts as a two-party dispute. (Dismissal Motion, ¶¶ 46-51). None of the cases cited by PAX support that characterization. Despite PAX's self-absorbed description, this case does not simply involve a binary dispute between the Debtor and one creditor (PAX). This is <u>not</u> a case involving a sole mortgage lender and a debtor whose only genuine legal issue is an imminent foreclosure. Here, the Debtor had dozens of litigations pending against him as of the Petition Date with potential claims exceeding $100 million -- which are now stayed due to the filing of this Case. *See, supra,*

---

[7]    PAX asserts it is the *only* "current, non-contingent creditor." Dismissal Motion, ¶46. Also, a significant portion of PAX's claim is comprised of interest and contempt fines.

at ¶ 25.   While PAX has the largest claim in this case, it is readily apparent that there are numerous legitimate non-insider creditors with material claims against the Debtor, including creditors with claims in advanced stages of state court litigation.  *See, supra*, at ¶¶ 25, 27-29; *see also* Creditor, Rui Ma's motion for relief from the automatic stay, [ECF No. 206, ¶¶ 6-9].

32.   Accordingly, PAX has not demonstrated the requisite "misuse" of the bankruptcy system to warrant dismissal of the Case at this time.

### B. PAX FAILS TO DEMONSTRATE THE REQUISITE "BAD FAITH" TO WARRANT DISMISSAL.

33.   PAX also contends that cause for dismissal exists because the Case was filed in bad faith.  In the Second Circuit, a bad faith filing requires a showing of both "objective" and "subjective" bad faith. *In re Gen. Growth Props.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (*citing In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997)).

34.   "In determining whether good faith is absent (and bad faith is present), the court must consider the totality of the circumstances – not one single factor." *In re Encore Management of Western New York, LLC*, 585 B.R. 22, 30 (W.D.N.Y. 2018).  Here, the totality of the circumstances demonstrates a valid bankruptcy purpose exists (presuming the Debtor causes adequate funding to be provided to allow for a fulsome investigation into his assets and financial affairs).  Essentially PAX argues the Debtor's filing was in bad faith because the bankruptcy filing avoided (at least temporarily) the Debtor being incarcerated and precluded PAX from obtaining first to-the-courthouse, preferential relief to the detriment of Debtor's other creditors.  But preventing such an outcome, in favor of affording all stakeholders a collective remedy, in a

central forum capable of distributing estate assets ratably and in accordance with law, is precisely one of the purposes the Bankruptcy Code was designed to serve.[8]

35.    PAX's analysis of the eight (8) factors identified in *C-TC* as evidence of a bad faith filing twists the facts of the Case to try to fit them within the *C-TC* factors – but application of those factors overwhelmingly weighs in favor of denying dismissal. *See* Dismissal Motion, 31-33; *In re C-TC 9th Avenue Partnership*, 113 F.3d at 1312. Simply, (i) this Case is not a single asset case (there are multiple potential assets at issue in this Case, which are already part of the record of this Case), (ii) this case involves more than a few de minimis creditors -- there are dozens of non-insider creditors listed on the Debtor's schedules with claims totaling in excess of $100 million (excluding PAX), (iii) the Debtor's assets involve more than a sole asset subject to foreclosure, (iv) this Case is not simply a two-party dispute (see *supra*, ¶ 32); and (v) at minimum, through gifts and subordinated loans the Debtor can meet his expense obligations (see, *e.g.*, proposed Interim DIP Order, ECF No. 315). Because this chapter 11 case involves an individual debtor (not a corporation) there are no employees at issue, so that factor is neutral. While there is purportedly little or no earned cash flow, the Debtor is able to obtain gifts and loans[9] providing cash to him, as needed, so this factor also is neutral or favors not dismissing the Case. The only genuine factor weighing in PAX's favor is the timing of the filing to avoid the impending imprisonment ramifications of the Debtor's failure to comply with the February

---

[8]  In the event the Debtor's bankruptcy filing is found to be a ruse or abuse of process, then the Debtor should be held accountable for the additional harm he caused to the Creditors and other parties involved with this Case. While reserving all rights to assert fraud by the Debtor, the Creditors point in this Objection is that the Court should reserve ruling (or the effect thereof) to allow time to see whether the Debtor does the right thing through this Case, such as arranging for proper funding, or shows his true colors and continues with his prior egregious conduct of fraud, deception and abuse of process.

[9]  The characterization of the source of funds is subject to dispute but are described as gifts and loans for purposes of this Objection since that is how the Debtor (and PAX in the Dismissal Motion) describe them. The Creditors reserve their rights to have such funds declared property of, or properly belonging to, the Debtor.

9 Contempt Order.  That factor is not enough to justify a dismissal of the Case when evaluated in the context of the totality of the circumstances of the Case.

36.     Similarly, contrary to PAX's application of the *Syndicom* factors (Dismissal Motion, 33-34), as of the Petition Date, the Debtor was involved with more than thirty lawsuits and has creditors asserting claims in excess of $373 million.[10] (Debtor's Schedules, ECF No. 77 at p.10).  Therefore, the Debtor had and continues to have other financial pressures.  Further, other than PAX, unsecured creditors would be prejudiced by the dismissal of the Case because PAX would be able to pursue seizure of the Debtor's assets to the detriment of other unsecured creditors.

37.     Moreover, other than precluding the enforcement of the February 9 Contempt Order, which has preliminarily been addressed by the Boat Delivery Order (*i.e.*, directing the return of the Lady May by July 15th and holding $37 million in escrow pending compliance), at this juncture there is no improper "litigation advantage" associated with the Debtors' Case.  The Debtor's assets will be marshalled and brought into the estate for distribution in accordance with the Bankruptcy Code's priority scheme.

38.     PAX also asserts that any plan would be futile and therefore bad faith exists. (Dismissal Motion, ¶¶ 60-61).  The Court should reject PAX's claim that its opposition to any potential plan makes this case objectively futile.  PAX fails to establish that such purported leverage is absolute (it is not) and that confirmation of any plan is impossible.

39.     Moreover, in staking its position that a plan cannot be confirmed in the Case because PAX would not vote to accept any plan (Dismissal Motion, ¶ 61), PAX itself may be

---

[10] PAX's claim comprises $254,000 of such total.

acting in bad faith, and at minimum prematurely.  *See General Growth Properties, Inc.*, 409 B.R. 43, at 57, 65 (S.D.N.Y. 2009)(finding lender acting prematurely, and arguably in bad faith, in seeking dismissal of newly filed case based on position that lender's consent to plan was needed for confirmation and lender would never agree to a plan).  Parties often find it in their interest to reach an agreement on a plan.  *Id.* at 65.

40.    Further, the Debtor's exclusive period to file a plan could be terminated within weeks, and a proposed plan could properly provide for separate classification and treatment of contractual claims and non-consensual personal injury claims, or liquidated, non-contingent claims from unliquidated and contingent claims.[11]  Under the proposed Interim DIP Order filed with the Court on May 3, 2022, the Committee may seek to terminate the Debtor's exclusive period on or after June 17, 2022, *i.e.*, after the initial 120 days from the Petition Date [ECF No. 315, ¶6(c)].  Regardless, after a proper investigation into the Debtor's potential assets and financial affairs, a confirmable plan is reasonably obtainable in this Case.  Whether through gifts or unsecured subordinated loans obtained by the Debtor, or through the Committee's investigation and asset recovery process, there is a reasonable likelihood assets will be available to legitimate creditors under a confirmable plan in this Case.  It is, therefore, premature for the Court to determine that a plan could not be confirmed.

41.    Accordingly, PAX has failed to demonstrate the requisite bad faith to warrant dismissal of the Case.

---

[11] Of course, the specifics of any such plan will be material to the plan analysis at such time.  The Creditors expressly reserve their rights to evaluate the appropriateness of any such classification scheme in the context of a proper plan process.

### C. PAX FAILS TO ESTABLISH THAT THE ESTATE CONTINUES TO DIMINISH IN VALUE AND THERE IS NO REASONABLE LIKELIHOOD OF REHABILITATION UNDER SECTION 1112(b)(4)(A), OR THAT THE DEBTOR IS GROSSLY MISMANAGING THE ESTATE UNDER SECTION 1112(b)(4)(B); ACCORDINGLY, NO CAUSE FOR DISMISSAL EXISTS.

42.     As explained above (*supra*, ¶¶ 27-30, 38-40), the estate is not diminishing in value and there is a reasonable likelihood that a confirmable plan can be achieved in this Case.[12] Further, while the Creditors agree with PAX that the Debtor is not being transparent with his assets and is not fulfilling all the duties of a fiduciary in the Case by failing to pursue recovery of assets from insiders, there are no operations or cash on hand that require day to day management and thus the estate is not being grossly mismanaged.  The Debtor has arranged for an initial DIP financing to allow an investigation into his assets and financial affairs.  The Committee is poised to promptly investigate the Debtor's assets and financial affairs and has the ability to seek authority to clawback, or compel turnover, of assets for the benefit of the estate.[13]

43.     Therefore, under the circumstances of this Case, PAX has failed to demonstrate the Debtor is grossly mismanaging the estate.

44.     Accordingly, PAX has not established that cause exists under Sections 1112(b)(4)(A) or (b)(4)(B) to dismiss the Case.

### II.    THE UNUSUAL CIRCUMSTANCES IN THIS CASE ESTABLISH THAT DISMISSING THE CASE IS NOT IN THE BEST INTERESTS OF CREDITORS, AND THE DISMISSAL MOTION SHOULD BE DENIED.

45.     Even if "cause" was established, which PAX has not established, unusual

---

[12] This presumes oversight to ensure the Debtor complies with his, and his counsel's representations to the Court of providing transparency and adequate funding to allow for a fulsome investigation into the Debtor's assets and financial affairs.

[13] Subject to Court approval, the Committee would have derivative standing to pursue claims and causes of action on behalf of the estate.

circumstances exist here establishing that dismissing the Case is not in the best interests of creditors and the estate.

46.     Section 1112(b) provides that even if the Court finds that cause is established "the court may not convert ... or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," and a party in interest establishes that (a) there is a reasonable likelihood that a plan will be confirmed within the requisite time frame and (b) there exists a reasonable justification for the act or omission that constitute the grounds for converting or dismissing the case or such act or omission will be cured within a reasonable period of time fixed by the court. *See* 11 U.S.C. § 1112(b)(1), (2); *In re Ashley Oaks Dev. Corp.*, 458 B.R. 280, 284 (Bankr. D.S.C. 2011) (holding that "unusual circumstances" exception applies to all "cause" shown).

47.     The statute does not define "unusual circumstances," but courts generally look for "unusual facts or circumstances [that] demonstrate that the purpose of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149–50 (Bankr. D.N.M. 2008) (despite finding "cause", a proposed plan that proposed to pay creditors in full constituted unusual circumstances justifying denying dismissal or conversion).   Bankruptcy courts have wide discretion in making the determination as to whether there are unusual circumstances that should prevent dismissal. *See In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)).   This Case is full of unusual facts and circumstances that demonstrate that maintaining this Case in chapter 11 is the best way to advance

the purpose of a chapter 11 case and protect the interests of all constituents in accordance with the policies and requirements of the Bankruptcy Code.

48.  Some unusual facts here include:

- This chapter 11 Case involves an individual debtor (not a corporation).[14]

- For years, on social media and in other communications, the Debtor held himself out as a billionaire, but now claims to have little assets (other than a couple of speculative claims or causes of action).

- This individual Debtor is party to dozens of litigations, including one in the British Virgin Islands.

- Courts already have found that the Debtor is highly practiced at obfuscating his assets and interests in shells or behind family or nominees.

- The Debtor faces potential imminent incarceration based on contempt of state court orders (certainly outside of the bankruptcy context).

- There is no clear path for recovery outside of this bankruptcy context for the numerous creditors injured by the Debtor.  After obtaining a judgment, each creditor would have to spend time and money trying to trace the Debtor's assets and enforce any judgments ultimately obtained (likely through veil piercing and other litigation procedures).  (PAX understands very well how difficult and expensive that task will be for creditors.)

- There is no business or readily accessible assets of the Debtor for a fiduciary such as a trustee to manage at this time.

- The Debtor has arranged for unsecured, subordinated DIP financing, in part, to fund an investigation into his assets and financial affairs in the context of this Case.

- The Debtor has arranged for a $37 million bond to be posted to resolve the PAX Lift Stay Motion and preserve values until the Lady May returns to the U.S. jurisdiction.

- The Debtor has access to a substantial, yet unknown amount, of gifts and/or subordinated unsecured loans that could be used to pay allowed claims in the context of this Case, which will likely be unavailable to most creditors outside of this chapter 11 case.[15]

- The Committee has already sought to engage a prominent former FBI agent to investigate the Debtor's financial activities and assets.

---

[14]  While some of these facts alone may not seem unique, they clearly are unique when evaluated in the context of the entirety of this Case.

[15]  *See supra*, fn. 8.

KBM/M1738/1001/1830269v1
05/11/22-HRT/BD

- A properly conducted investigation in this Case could identify sufficient assets to provide a full, or very substantial, recovery to all legitimate non-insider creditors – which would be lost outside the context of this Case. A sole *unsecured* creditor asserts a claim that totals more than five times the principal damage amount. (PAX's original damages claim was approximately $46 million. Once interest and contempt fines were added, PAX's asserted claim now totals approximately $250 million.) And, if this Case is dismissed that same unsecured creditor will leapfrog ahead of all other unsecured creditors seizing assets of the Debtor to the substantial detriment of other unsecured creditors.

- The proposed Interim DIP Order allows the Committee to seek to terminate exclusivity in approximately three weeks after the hearing on the Dismissal Motion, without violating the terms of the proposed DIP Loan.

- Vexed creditors, such as the Creditors, do not oppose the Debtor maintaining this Case provided sufficient funding is provided to investigate his assets, transactions and financial affairs, the Debtor does not hinder such investigation and this Case proceeds at an appropriate pace with appropriate processes and protections for creditors.

- Creditors have indicated an intention to seek an involuntary filing in the event the Case is dismissed at this time.

49.    The Court should reject PAX's underlying proposition that the Debtor's creditors will be paid in full whether inside or outside of this bankruptcy case. While the Debtor has made representations of causing payment in full of allowed claims within the context of this Case, no such representations or assurance exists if the Case is dismissed. (Debtor's Motion to Extend Time to File Schedules, ECF No. 27 at ¶ 12) ("Mr. Kwok filed this Chapter 11 Case with the clear intention of satisfying his creditors' allowed claims in full. Clearly, he will need the support of his family members to fund an exit from chapter 11."). Indeed, none of the Debtor's creditors (including PAX) have a clear path for recovery outside of this bankruptcy. As Judge Ostrager has found, the Debtor has made significant "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members" (February 9 Contempt Order, at 1), and is undeterred by the prospect of perjury or

22

bankruptcy fraud.  Even so, the unusual circumstances here dictate that dismissal is contrary to the interests of creditors.  In fact, the Debtor's success to date in frustrating PAX suggests that all creditors may fare better with the Debtor under the oversight of this Court, the United States Trustee and the Committee, and subject to the powers of the Bankruptcy Code and this Court.

50.    As discussed above, this Case has legitimate purposes -- to centralize dozens of disputes and allow for the marshalling of the Debtor's assets for equitable distribution to creditors holding allowed claims in accordance with the priority scheme of the Bankruptcy Code.  This Case also has benefits to creditors -- instead of continuing to rely on the same state court remedies that have proven inadequate for years, creditors are better served with the Debtor remaining subject to the powers of the Bankruptcy Code and this Court.  This includes not only all remedies available to state courts – including without limitation the ability to imprison the Debtor for contumacious behavior and the ability to pursue alter ego theories – but also numerous benefits only available within bankruptcy, such as the power to issue Rule 2004 discovery to third parties (as has already been commenced by the Committee), oversight for and restrictions on the Debtor's ability to act, increased power to avoid and recover preferential or fraudulent transfers, power to recharacterize purported loans as equity, power to equitably subordinate claims or otherwise to provide for different treatment of insider and non-insider creditors, and power to substantively consolidate the Debtor if appropriate with non-debtor entities.  An appropriate investigation will shed light on the scope of the Debtor's true assets and whether bankruptcy fraud (or other fraud) has been committed by the Debtor.  These benefits may prove crucial in maximizing recoveries for general unsecured creditors in this Case.

KBM/M1738/1001/1830269v1
05/11/22-HRT/BD

51.     In fact, due to the risk of PAX's seizure of the Debtor's assets outside the bankruptcy context and the significant benefits chapter 11 provides creditors generally in this Case, the Creditors intend to seek to have an involuntary petition commenced in the event this Case is dismissed.

52.     Accordingly, dismissal of the Case is not in the best interest of creditors or the estate.

53.     In contrast, PAX fails to explain why any creditor is unjustly harmed or prejudiced by this Case (presuming the Case proceeds in accordance with applicable laws and rules).  As discussed above, there is no substantial or continuing loss to or diminution of the estate in this Case, (*see, supra*, ¶¶ 27-30) and a reasonable likelihood of rehabilitation exists. (*see, supra*, ¶¶ 38-40).  As noted above, whether through gifts or unsecured subordinated loans obtained by the Debtor, or through the Committee's investigation and asset recovery process, there is a reasonable likelihood that assets will be available for distribution to legitimate creditors under a confirmable plan in this Case.

54.     Moreover, PAX's assertion that by this Case the Debtor is attempting to improperly relitigate issues and avoid returning the Lady May to the US jurisdiction are grounds that have been, will or can be cured within a reasonable period.  This Court has been clear that it will not relitigate the issues ruled on by Judge Ostrager.  That concern has been or can be properly addressed before the Court and resolved rather expeditiously.

55.     And, although the Lady May has not yet been returned to this jurisdiction, $37 million has been put into escrow on terms acceptable to PAX.  Therefore, such grounds for dismissal have been or will be cured in a reasonable period of time.  In the event, the Debtor

24

does not cause this Case to be properly funded or the Lady May is not returned by July 15, 2022, those facts may weigh in favor of dismissal at such time; but dismissal now would be premature.

56.    In addition, any dismissal grounds based on gross mismanagement (despite the lack of any operating business) can be cured by allowing the Committee to undertake investigatory and asset recovery obligations, and enforcing the Debtor's obligation of accuracy and transparency in his reporting requirements.  Hence, currently, it appears any grounds for dismissal have been, will or can be cured within a reasonable period of time.

57.    Accordingly, PAX has failed to establish cause for dismissal.  Regardless, the unusual circumstances exception under Section 111(b)(2) applies in this Case preventing dismissal.  Therefore, the Dismissal Motion should be denied.

### III.    IN THE ALTERNATIVE, AN EXAMINER SHOULD BE APPOINTED WITH A VERY TAILORED SCOPE OF AUTHORITY AND BUDGET

58.    Even with cause, this Case should not be dismissed because appointment of an examiner would be in the best interests of creditors rather than dismissal.   11 U.S.C. § 1112(b)(1).  The Creditors submit that under the circumstances here, with an active Committee that is already investigating the Debtor and his affairs, appointment of a new fiduciary with no prior involvement in this Case is not in the best interests of creditors.  Rather, allowing the Committee to continue its work is in the best interests of creditors, and, if required, this work can be furthered by an examiner appointed with a targeted scope and budget that works in concert with the Committee's efforts – not duplicates it.  The Dismissal Motion seeks to support the appointment of a trustee as requested in the UST's Examiner/Trustee Motion.  The Creditors incorporate herein the points and arguments articulated in their objection to the Examiner/Trustee Motion for why a trustee is not an appropriate remedy in this Case, [ECF No. 170], and expect

to address this issue in the context of the UST's Examiner/Trustee Motion at the appropriate time.

## CONCLUSION[16]

WHEREFORE, for the foregoing reasons, the Creditors request that the Court deny the Dismissal Motion in its entirety, and grant such other and further relief as is just and proper.

Dated: May 11, 2022

/s/ Kristin B. Mayhew

Kristin B. Mayhew-ct20896
**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
30 Jelliff Lane
Southport, CT 06890
(203) 319-4000
kmayhew@mdmc-law.com

- and -

Carollynn H.G. Callari (*pro hac vice*)
David S. Forsh (*pro hac vice*)
**CALLARI PARTNERS LLC**
One Rockefeller Plaza, 10th Floor
New York, NY 10020
(212) 202-3050
ccallari@callaripartners.com
dforsh@callaripartners.com

*Attorneys for Rui Ma,* Zheng Wu and *Weican Meng*

---

[16] Around the time of filing this Objection, the Debtor filed a "Consent to Dismissal of Case" and response to the Dismissal Motion. [ECF No. 344]  Despite the Debtor's consent to dismissal, the Creditors' objection to the dismissal as set forth herein remains (except that conversion of the Case may now be warranted).  As set forth herein, this Case is not just a two-party dispute.  Other parties' rights must be considered by the Court, which the Creditors look forward to addressing at the hearing on the Dismissal Motion.

## CERTIFICATE OF SERVICE

I, Kristin B. Mayhew, hereby certify that a true and accurate copy of the foregoing Objection of Creditors Rui Ma, Zheng Wu and Weican Meng to the Motion of Pacific Alliance Asia opportunity Fund L.P. for Dismissal of this Case or, in the Alternative, for Appointment of a Trustee was filed with the Court on May 11, 2022.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.


/s/ Kristin B. Mayhew
Kristin B. Mayhew

KBM/M1738/1001/1830269v1
05/11/22-HRT/BD