# UNITED STATES BANKRUPTCY
## COURT DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |

## NOTICE OF CONTESTED MATTER RESPONSE DATE

Golden Spring (New York) Limited ("GSNY") has filed a motion to Modify or Quash

Subpoenas Issued by Pacific Alliance Asia Opportunity Fund L.P. (the "Motion") with the

United States Bankruptcy Court for the District of Connecticut.  Notice is hereby given that any

response to the Contested Matter must be filed with the Court not later than May 27, 2022, in

accordance with Federal Rules of Bankruptcy Procedure 2002(a) and 9014[1].  In the absence of a

timely filed response the proposed order in the Contested Matter *may* enter without further notice

and hearing, see 11 U.S.C. § 102(1).

Dated May 12, 2022

GOLDEN SPRING (NEW YORK) LIMITED

By   /s/ Timothy D. Miltenberger
Timothy D. Miltenberger (ct08874)
Scott D. Rosen
Cohn Birnbuam & Shea P.C.
100 Pearl Street, 12th Floor
Hartford, CT  06103
(860) 493-2262
Tmiltenberger@cbshealaw.com

---

[1] Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

UNITED STATES BANKRUPTCY
COURT DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |

MOTION OF GOLDEN SPRING (NEW YORK) LTD.
TO MODIFY OR QUASH SUBPOENAS ISSUED BY
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.

Golden Spring (New York) Limited ("GSNY"), by and through its undersigned attorneys

Cohn Birnbuam & Shea P.C. ("CBS"), pursuant to Fed. R. Bankr P. 9016, incorporating Fed. R.

Bankr. P. 45(d), hereby moves for protection from numerous subpoenas (detailed below) issued

by Pacific Alliance Opportunity Fund LP ("PAX") between April 22, 2022 and May 5, 2022, and

states as follows:

PRELIMINARY STATEMENT

In the period between March 29, 2022, and May 5, 2022, ("PAX") has issued nineteen

subpoenas on Golden Spring (New York) Ltd. ("GSNY"), its officers, directors, and employees,

supposedly related to PAX's motion to dismiss this bankruptcy case.   The debtor subsequently

consented to PAX's motion to dismiss, thus mooting the need for further discovery from GSNY.

While other creditors filed objections to PAX's motion to dismiss, those objections raise no

issues of fact related to GSNY.   GSNY therefore files this motion to quash out of an abundance

of caution to protect its rights in the event that PAX continues to contend that additional

discovery is warranted from GSNY.

PAX sent most of its subpoenas to GSNY (and others) on GSNY's counsel as a first

choice.  The subpoenas all require responses within 14 business days (nine of them require

responses in seven business days or fewer, and one requires a response within two business

days), are frequently repetitive, and seek documents or testimony about the same topics over and

over. Moreover, the document requests repeat pre-petition document requests with which GSNY

has already complied. Nevertheless, PAX continues to request documents that it has already

received from GSNY and its employees.

The subpoenas issued to GSNY were not properly served, fail to take reasonable steps to

protect GSNY from undue burden and expense, and fail to provide a reasonable time to comply.

For these reasons, the subpoenas should be quashed.

## I.    BACKGROUND

Since late March, PAX has issued the following nineteen subpoenas on GSNY and its

directors, officers and employees:

| Date | Issued on[1] | Sent by | Type |
|------|-----------|---------|------|
| 3/29/2022 | Qiang Guo | Email to CBS; Process Server to GSNY | 30(b)(6) Deposition on Tuesday, April 12 |
| 3/29/2022 | GSNY | Email to CBS; Process Server to GSNY | Documents due by Thursday, Mar. 31 |
| 3/29/2022 | GSNY | Email to CBS; Process Server to GSNY | 30(b)(6) Deposition on Tuesday, April 12 |
| 4/11/2022 | GSNY | Email to CBS | 30(b)(6) Deposition on |

---

[1]    Frequently, the party named in the subpoena is different than the party named on the attached notice. For example, the May 3 subpoena is addressed to Mr. Max Krasner without any reference to GSNY, but the attached Rule 30(b)(1) notice is addressed to Mr. Krasner "in his capacity as employee of [GSNY]." Similarly, the May 3 subpoena to Mr. Qiang Guo is addressed to Mr. Qiang Guo without any reference to GSNY. The deposition notice references Mr. Qiang Guo as owner and managing agent of GSNY (he is neither).

| | | | Tuesday, April 12 |
|---|---|---|---|
| 4/22/2022 | Qiang Guo c/o CBS | Email to CBS | 30(b)(1) Deposition on Thursday, May 12 |
| 4/22/2022 | GSNY | Email to CBS | Documents due by Monday, May 2 |
| 4/22/2022 | Qiang Guo c/o CBS | Email to CBS | Documents due by Monday, May 2 |
| 4/22/2022 | Yanping Wang c/o CBS | Email to CBS | Documents due by Monday, May 2 |
| 4/28/2022 | Max Krasner | Email to CBS | 30(b)(1) Deposition on Thursday, May 12 |
| 5/3/2022 | Max Krasner, in his capacity as employee of GSNY | Email to CBS | 30(b)(1) Deposition on Thursday, May 12 |
| 5/3/2022 | Qiang Guo, in his capacity as owner and managing agent of GSNY | Email to CBS | 30(b)(1) Deposition on Thursday, May 12 |
| 5/3/2022 | Qiang Guo, in his capacity as owner and managing agent of GSNY | Email to CBS | Documents due by Monday, May 9 |
| 5/3/2022 | Yanping Wang, in her capacity as President, Secretary, and Treasurer of GSNY | Email to CBS | Documents due by Monday, May 9 |
| 5/4/2022 | GSNY via its owner, Qiang Guo | Email to CBS | 30(b)(6) Deposition on Saturday, May 14 |
| 5/5/2022 | Max Krasner | Process Server to GSNY | 30(b)(1) Deposition on Thursday, May 12 |

| 5/5/2022 | Qiang Guo | Process Server to GSNY | 30(b)(1) Deposition on Thursday, May 12 |
|----------|-----------|------------------------|----------------------------------------|
| 5/5/2022 | Qiang Guo | Process Server to GSNY | Documents due by Thursday, May 12 |
| 5/5/2022 | Yanping Wang | Process Server to GSNY | Documents due by Thursday, May 12 |
| 5/5/2022 | Yanping Wang, to be responded to by GSNY through Wang as its officer | Process Server to GSNY | Documents due by Monday, May 9 |

As shown above, except for the subpoenas served on May 5, 2022, PAX sent all the above-referenced subpoenas to GSNY's counsel, CBS. With two exceptions discussed below, CBS advised PAX that it was not authorized to accept subpoenas directed to others aside from GSNY. In response, PAX claimed—and wrongly so—that all of its pre-May 5 subpoenas were intended for GSNY, and were not served on GSNY's directors, officers, and employees in their individual capacities. PAX's claim, however, did not jive with the plain language of the subpoenas themselves. PAX asserted this position despite the fact that its subpoenas expressly identified the party to be deposed or to produce documents as "Max Krasner" or "Qiang Guo" or "Yanping Wang" without any reference whatsoever to GSNY.

In addition to the April 11 subpoena to GSNY directly, on May 3, 2022, GSNY advised PAX that its counsel would accept service of a subpoena on its President, Yanping (Yvette) Wang, so long as the subpoena was modified to properly reflect that it was being issued to GSNY, not to Ms. Wang in her individual capacity. PAX sent a revised subpoena to counsel for GSNY which did not comply with GSNY's request. Nevertheless, counsel for GSNY accepted

that subpoena on behalf of GSNY and responded in a timely manner. *Miltenberger Affidavit,* at ¶ 6.

Many of the subpoenas request the same or similar documents and many of those documents have already been produced to PAX. For example, the April 22 subpoena to GSNY, the April 22 subpoena to Mr. Guo, the May 3 subpoena to Mr. Guo, and the May 5 subpoena to Mr. Guo all request documents related to the Sherry-Netherland co-op unit for the period from 2015 to the present.[2] When GSNY notified PAX that it had previously produced documents related to the Sherry Netherland spanning a large portion of this time period, PAX responded that it had received no such documents. GSNY then inquired whether PAX was in receipt of documents in response to its March 21, 2021 subpoena. PAX responded that it had received documents in response to that subpoena and confirmed that the documents in its possession included documents related to the Sherry Netherland. PAX's counsel claimed, however, that there was a 2,000-page gap in the GSNY's bates numbering in the production. GSNY then promptly provided PAX with information confirming that there was no gap in the bates numbering and that the "missing" documents contained GSNY's bank records, which were turned over pursuant to a confidentiality agreement. *See generally* Miltenberger Affidavit, at ¶¶ 10 -12. Apparently, PAX has misplaced, or is not even aware of, the highly sensitive documents that GSNY had previously produced.

Similarly, multiple subpoenas for documents and depositions request information about the ownership structure and corporate management of GSNY (*see, e.g.*, the March 29 subpoena to GSNY; the April 11 subpoena to GSNY; and the May 5 subpoena to Mr. Guo). GSNY

---

[2]     Seeking documents covering an eight-year period and commanding their production in 14 days or far fewer cannot be construed as taking reasonable steps to prevent an undue burden. Fed. R. Civ. P. 45(d)(1).

produced this material to PAX prior to this bankruptcy filing, and then re-produced information

sufficient to establish its ownership, officers, and directors after the bankruptcy filing.

Nevertheless, PAX continues to request this same information.

As yet another example, PAX requests information regarding Yanping Wang's

employment and compensation as an officer of GSNY. Prior to the bankruptcy filing, however,

Ms. Wang produced her personal bank statements to PAX pursuant to an order of Justice

Ostrager. Justice Ostrager expressly ordered that PAX destroy any information produced by Ms.

Wang *that is not relevant to Mr. Kwok's assets or income.*" After GSNY reminded PAX of Ms.

Wang's prior production, PAX responded that it had destroyed the production, which confirms

that none of the documents in Ms. Wang's production were relevant to Mr. Kwok's assets or

income. Nevertheless, PAX again demanded the documents to produced again.

Finally, PAX has provided no colorable basis for many of its document requests. How

the compensation paid by GSNY to Ms. Wang impacts the motion to dismiss Ho Wan Kwok's

bankruptcy case is unknown to GSNY.[3] Certainly, such requests infringe upon Ms. Wang's

privacy rights. During GSNY's meet and confer with PAX, PAX contended that it wanted to

know the scope of Ms. Wang's employment and her job responsibilities. Ms. Wang was deposed

for nearly seven hours in April and answered questions on those very topics.

---

[3]       On May 11, 2022, the debtor consented to PAX's motion to dismiss the Bankruptcy case. Further, none of
the objections that were filed to PAX's motion to dismiss raise any issue relating to Ms. Wang.

## II.    ARGUMENT AND AUTHORITY.

Rule 45 permits an officer of the court to issue a subpoena commanding "each person to whom it is directed to attend and testify at a deposition." Fed. R. Civ. P. 45(a)(1)(A)(iii). Like Rule 26, Rule 45 sets certain substantive and procedural standards which must be met in order to avail oneself to the benefits accorded by the rule. Service must be properly made with an appropriate witness fee. Fed. R. Civ. P. 45(b). On timely motion, the court for the district where compliance is required must quash or modify a subpoena that fails to allow a reasonable time to comply. Fed. R. Civ. P. 45(d)(3)(A)(i)-(ii); *Graduation Sols., LLC v. Acadima, LLC*, 2018 WL 10398566, at *2 (D. Conn. 2018). An attorney issuing a subpoena must take reasonable steps to prevent undue burden on the recipient. Fed. R. Civ. P. 45(d)(1). The party resisting production bears the responsibility of establishing undue burden. *Cris v. Fareri*, 2011 WL 4433961, at *1 (D. Conn. 2011).

### A.    *PAX Has Not Validly Served a Subpoena on GSNY for the Testimony of Mr. Guo or Mr. Krasner.*

Rule 45 of the Federal Rules of Civil Procedure states that serving a subpoena requires delivering a copy to the named person. "The courts do not agree on the meaning of delivering a copy.' Some courts have held that delivery requires personal service." *Prall v. Hartford Prosecutors*, 2011 WL 1336385, at *1 (D. Conn. Apr. 7, 2011); *see also SEC v. Prince*, 322 F.R.D. 450, 453 (S.D.N.Y. 2017) (collecting cases and authority). Nevertheless, "[t]here is no Second Circuit case law interpreting the Rule 45 requirement of delivery as requiring personal service." *Kenyon v. Simon & Schuster, Inc.*, 2016 WL 5930265, at *3 (S.D.N.Y. Oct. 11, 2016).

Courts in this Circuit have noted that Rule 45 "neither requires in-hand service nor prohibits alternative means of service." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116 (PGG), 2009 WL 1313259, at *2 (S.D.N.Y. May 11, 2009) (internal quotation marks

omitted) (*quoting Cordius Trust v. Kummerfeld*, 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000)).

Alternative service methods – such as service by certified mail – will be permitted where such

service "reasonably insures [sic] actual receipt of the subpoena by the witness" and "comports

with due process" insofar as it is "reasonably calculated under the circumstances to provide [the

witness] with both notice and an opportunity to present objections." *JPMorgan Chase Bank,*

*N.A.*, 2009 WL 1313259, at *3 (*quoting Cordius Trust*, 2000 WL 10268, at *2).

      Courts typically require a party (here, PAX) to seek leave to serve by alternative means

"to demonstrate a prior diligent attempt to personally serve" before permitting substituted service

under Rule 45. *Kenyon*, 2016 WL 5930265, at *3. Thus, the court in *Esteban v. Santa Rosa*

*Rest., LLC*, 2016 WL 2350101, at *2 (D. Conn. 2016), only after finding that the proposed

deponent had evaded service, directed an alternative manner of service of the subpoena and

witness fee.

      In this case, PAX can and should serve GSNY at its principal place of business or

through its statutory agent for service. PAX served its March 29 subpoena(s) on GSNY in this

manner and GSNY complied. However, since March 29, PAX has refused and failed to serve

GSNY directly, and has instead emailed GSNY's counsel, even though counsel advised PAX

that it was not authorized to accept service on behalf of others. To the best of GSNY's

information and belief, PAX never attempted to serve GSNY at its principal place of business (or

through its statutory agent) with the April 22, April 28, or May 3 subpoenas. PAX knows the

location of GSNY's principal place of business – indeed, it served the May 5 subpoenas on the

three individuals (Mr. Guo, Mr. Krasner, and Ms. Wang) at that address by process server.

Moreover, as noted above, PAX has never sought leave to make substitute service.

Further, none of the deposition subpoenas served upon CBS for GSNY include the requisite witness fee.[4] *See* Fed. R. Civ. P. 45(b)(1); *Esteban*, 2016 WL 2350101, at *2, *citing Song v. Dreamtouch, Inc.*, 2001 WL 487413, at *7 (S.D.N.Y. 2001) ("Where no fee is tendered with the service of a subpoena requiring a witness' attendance, the service is invalid.").

### B. The Subpoenas Are Not Reasonably Calculated to Prevent an Undue Burden on GSNY and Constitute Harassment.

A party contending that a subpoena should be quashed pursuant to Rule 45(c)(3)(A)(iv) must demonstrate that compliance with the subpoena would be unduly burdensome. *See Akande v. Graser*, 2010 WL 3613912, at *1 (D. Conn. Sept. 3, 2010); *Jones v. Hirschfeld*, 219 F.R.D. 71, 74–75 (S.D.N.Y.2003). An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an undue burden depends upon such factors as relevance and the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed. *Travelers Indemnity Co. v. Metropolitan Life Insurance Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (internal quotation marks and citation omitted).

With respect to non-parties[5] in particular, although "[t]he permissible scope of discovery from a non-party is generally the same as that applicable to discovery sought from parties[,] ... [t]he burden on the party from which discovery is sought must, of course, be balanced against the need for the information sought." *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) *Wells Fargo Bank, N.A. v. Konover*, 2009 WL 585434, at *5 (D. Conn. 2009) (applying

---

[4]     Upon information and belief, PAX issued subpoenas on three individuals associated with GSNY (but not on GSNY) and provided a witness fee.

[5]     GSNY is not a party to the proceedings on PAX's motion to dismiss. The deadline for objections was May 11 and GSNY filed none. PAX's motion to dismiss seeks no relief against GSNY.

balancing test of Rule 26(b)(2)(C) to deny in part plaintiff's Rule 45 motion to compel

production of documents from non-party).  In performing such a balance, courts have considered

the fact that discovery is being sought from a non-party, which weighs against permitting

discovery.  *See, e.g., Medical Components, Inc. v. Classic Medical, Inc.*, 210 F.R.D. 175, 180 n.

9 (M.D.N.C. 2002) ("The current generally prevailing view is that the Court may first consider

whether information should be obtained by direct discovery from a party, as opposed to from a

non-party, and that the court should give special weight to the unwanted burden thrust upon non-

parties when evaluating the balance of competing needs."); *see also Katz v. Batavia Marine &*

*Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed.Cir. 1993) ( "Discovery of persons not party to

the litigation is contemplated by the Rules.  Although Rule 26(b) applies equally to discovery of

nonparties, the fact of nonparty status may be considered by the court in weighing the burdens

imposed in the circumstances.") (collecting cases).  Within this Circuit, courts have held

nonparty status to be a "significant" factor in determining whether discovery is unduly

burdensome.  *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 179 (E.D.N.Y.1988), aff'd, 870

F.2d 642 (Fed.Cir.1989)

   In this case, compliance is unduly burdensome.  PAX has repeatedly subpoenaed the

same documents, even though GSNY produced several thousands of pages of documents last

year responsive to the requests.  By way of example, documents concerning payments regarding

the Sherry Netherland, Ms. Wang's compensation, the officers and directors of GSNY, and its

corporate structure, have already been produced to PAX.  PAX simply did not review GSNY's

prior production.  It appears to GSNY that PAX is still unaware of what that production

contained.  Similarly, PAX is seeking the testimony of three witnesses from GSNY to answer

questions on the same topics.  The result of this activity is PAX serving more than 15 subpoenas

in less than 3 weeks (since April 22, 2022) seeking information from GSNY. PAX has by no means taken reasonable steps to protect GSNY from undue burden and its actions to date constitute harassment.

### C. The Subpoenas Do Not Provide a Reasonable Time to Comply.

Under Fed. R. Civ. P. 45(d)(3)(A)(i), a court is required to quash a subpoena when it "fails to allow a reasonable time to comply." Courts within this circuit have ruled that the service of a subpoena five to nine days in advance of a hearing is not "reasonable time to comply." *See Arch Ins. Co. v. Centerplan Constr. Co., LLC,* 2017 WL 4998645, at *1 (D. Conn. 2017) (seven days to respond is unreasonable); *Bouchard Transp. Co., Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.,* No. 2015 WL 6741852, at *2 (S.D.N.Y. Nov. 4, 2015) (finding five days between receipt of the subpoena and the deposition date to be an unreasonable amount of time); *Brown v. Hendler*, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) (ruling nine days between service of the subpoena and the deposition date to violate Rule 45).[6]

Despite the hearing on PAX's motion to dismiss being scheduled more than 20 days from the date of its most recent subpoenas, PAX consistently provides an unreasonable time to comply. The subpoenas all require responses within 14 business days. Nine of the subpoenas require responses in seven business days or fewer, and one requires a response within just two business days. This is not a reasonable time to comply. For this additional reason, the subpoenas must be quashed.

---

[6]    Under the U.S. Bankruptcy Code, motions to dismiss must be decided on an expedited basis. *See* 11 U.S.C. § 1112(b)(3). However, the movant may consent to additional time for a determination of its motion to dismiss. Thus, PAX has the capacity to extend the timeline if it so desires. PAX cannot be allowed to demand an expedited timeline and unduly burden non-parties.

### D. *The Noticing Party Cannot Designate the Witness Pursuant to Rule 30(b)(6).*

Under Federal Rule of Civil Procedure 30(b)(6), a party may issue a notice of intent to take a deposition to an organization, and then *the organization* shall designate "one or more officers, directors or managing agents, or other persons who consent to testify on its behalf." The corporate entity itself designates the representative. *Id.* To the extent a party wants to subpoena an individual of its choice for a deposition, it must do so under Rule 30(a)(1), which states that a party "may take the testimony of any person, including a party, by deposition upon oral examination without leave of court." Rule 30(a) allows a party to take the deposition of nonparty witnesses, including employees. "Except where the employee has been designated by the corporation under Rule 30(b)(6), an employee is treated in the same way as any other witness. His or her presence must be obtained by subpoena rather than by notice." *Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 953 (10th Cir. 2004), *as modified on denial of reh'g* (June 2, 2004), *and abrogated on other grounds by Unitherm Food Sys., Inc. v. Swift-Eckrich*, Inc., 546 U.S. 394 (2006), *citing* 8A Wright, Miller & Marcus, Federal Practice and Procedure Civ.2d § 2103.

In this case, PAX has conflated Fed. R. Civ. P. 30(a) and (b)(6) by detailing areas of inquiry and then self-designating the individual that will testify about those topics. This procedure is not recognized under the Federal Rules of Civil Procedure. If PAX seeks a witness to testify on topics designated under Rule 30(b)(6), then GSNY determines the appropriate witness, not PAX.

### III.    CONCLUSION

For the foregoing reasons, Golden Spring (New York) Ltd. respectfully requests that this Court quash all the subpoenas served upon it.

GOLDEN SPRING (NEW YORK) LIMITED

By   /s/ Timothy D. Miltenberger
Timothy D. Miltenberger (ct08874)
Scott D. Rosen
Cohn Birnbuam & Shea P.C.
100 Pearl Street, 12th Floor
Hartford, CT  06103
(860) 493-2262
Tmiltenberger@cbshealaw.com

UNITED STATES BANKRUPTCY
COURT DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |

**AFFIDAVIT OF TIMOTHY MILTENBERGER REGARDING
MOTION TO MODIFY OR QUASH SUBPOENAS ISSUED BY
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.**

Pursuant to D.Conn. L. Civ. R. 37(a), the undersigned certifies as follows:

1.    I am over eighteen years old and believe in the obligations of an oath.

2.    I make this affidavit on my own personal knowledge.

3.    To date, I have had numerous telephone conversations and email exchanges with

Attorney Laura Aronsson at O'Melveny & Myers LLP ("OM") about the approximately twenty

subpoenas that have been issued by OM since March 29, 2022 on behalf of Pacific Asia Alliance

Opportunity Fund, L.P. ("PAX") directed to my client Golden Spring (New York) Ltd.

("GSNY") and others.   Fifteen of those subpoenas have been issued since April 22, 2022,

supposedly in connection with PAX's motion to dismiss the above-referenced bankruptcy case

(the "Bankrtupcy Case").

4.    My conversations with Attorney Aronsson have included discussions over (i)

proper service of the subpoenas, (ii) the production of documents prior to the filing of the

Bankrtupcy Case, and (iii) the relevance of documents and testimony sought.

5.    On May 11, 2022, the debtor consented to PAX's motion to dismiss the

Bankruptcy Case, thus obviating the need for additional discovery from GSNY.

6. As I have advised Attorney Aronsson, my firm represents GSNY and is not authorized to accept service of subpoenas on behalf of any person or entity other than its client. When my firm accepted service of a subpoena, GSNY responded to the subpoena.

7. My conversations with Attorney Aronsson regarding whether PAX had taken reasonable steps to protect GSNY from an undue burden have reached an impasse.

8. While responding to PAX's subpoenas, my client advised me that it had been served with subpoenas by PAX prior to the Bankruptcy Case. My client further advised me that it has already produced thousands of pages of documents to PAX in response to one such subpoena dated March 18, 2021, and that its prior productions included materials responsive to PAX's post-petition document requests. The previously produced documents responsive to PAX's post-petition subpoenas include, without limitation, GSNY's corporate documents, bank statements spanning three years, and other documents related to the "Sherry-Netherland."

9. I advised Attorney Aronsson of the prior productions and the substantial overlap with PAX's current document requests and asked her to determine what GSNY records were already in OM's possession. That due diligence clearly should have been conducted by OM before it bombarded GSNY with many more subpoenas requesting information that had already been provided.

10. After receiving the April 22 subpoena from PAX, I inquired with counsel to PAX about its March 2021 subpoena to GSNY. OM located some documents produced pursuant to the March 2021 subpoena and identified documents that were responsive to its current document request regarding the "Sherry-Netherland." However, Attorney Aronsson noted that GSNY's production in compliance with PAX's March 18, 2021 subpoena had an approximately 2,000-

page gap in the bates numbering and asked me to confirm that GSNY did not have any other documents relating to the "Sherry-Netherland."

11.    In response, I advised Attorney Aronsson that there was no gap in the bates numbering of GSNY's production. Subsequently, I provided her with the emails transmitting the "missing" (according to OM) 2,000-page production and asked OM to locate it.

12.    On May 11, 2022, approximately one month after subpoenaing information from GSNY, OM noted that it had found the "missing" GSNY production and reviewed it. This occurred only after I had advised OM that there was no gap in the bates numbering and provided OM with the emails transmitting the documents. After locating the "missing" documents, OM wrote: "this production contains over 900 checks made out to various entities between April 2018 and July 2020. We note that for a significant number of these checks, the payee information is redacted, rendering them useless from a discovery standpoint." OM then demanded that GSNY reproduce its 2021 documents without redaction.

13.    Included in the "missing" 2,000-page production is a least one check dated July 30, 2018 in the amount of $20,000 and payable to the Sherry-Netherland. Apparently, as of the date hereof, PAX has still not reviewed the materials that GSNY produced back in 2021.

14.    Prior to the Bankruptcy Case, PAX also subpoenaed the President of GSNY, Yanping (Yvette) Wang in her personal capacity.

15.    Ms. Wang produced her own personal bank records to PAX pursuant to an order of the Supreme Court of New York.

16.    On May 11, 2022, after I advised OM that Ms. Wang had previously produced the requested documents, OM acknowledged receiving her production and that it had destroyed it pursuant to Justice Ostrager's order. That order had required OM to "promptly destroy any

information that is not relevant to Mr. Kwok's assets or income." Even though OM had destroyed Ms. Wang's production only after it had confirmed its lack of relevance to the debtor's assets or income, PAX is still demanding that GSNY (or Ms. Wang) reproduce the same documents. What's more, PAX has offered no confidentiality protections whatsoever for any such production.

17.    PAX has issued numerous subpoenas to GSNY without ever reviewing the documents that GSNY produced in 2021 to determine whether it was requesting documents that it already possessed. When GSNY notified PAX of its prior production, PAX seemed unaware of it, then wrongly claimed the production was incomplete, and then demanded that it be made again.

18.    On May 11, 2022, I discussed with Attorney Aronsson the relevance of Ms. Wang's compensation to the issues raised in PAX's motion to dismiss. Attorney Aronsson advised me that the scope of Ms. Wang's employment, what she does, and her compensation were relevant to the motion to dismiss.

19.    GSNY has produced, both pre-petition and post-petition, documents establishing Ms. Wang's role (both historical and current) on behalf of GSNY (as well as identifying the owners, officers, and directors of GSNY since the company's inception).

20.    On April 12, 2022, in response to a 30(b)(6) deposition subpoena served on GSNY, Ms. Wang served as the deponent and testified for approximately seven hours. During that deposition, Ms. Wang described, *inter alia*, the scope of her employment and job responsibilities.

21.    During the deposition, GSNY's counsel did not object to questions regarding Ms. Wang's job functions or role at GSNY and Ms. Wang testified fully on these, and many other, topics.

___/s/ Timothy Miltenberger_____
Timothy D. Miltenberger

Subscribed to and sworn before me, this 12th day of May, 2022.

___/s/ Scott Rosen_____
Scott Rosen
Commissioner of the Superior Court

5

**UNITED STATES BANKRUPTCY
COURT DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

In re:                                          :          Chapter 11
                                                :
HO WAN KWOK,                                     :          Case No. 22-50073 (JAM)
                                                :
        Debtor.                                 :

**AFFIDAVIT OF YANPING WANG REGARDING
MOTION TO MODIFY OR QUASH SUBPOENAS ISSUED BY
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.**

The undersigned, being duly sworn, deposes and says as follows:

1.      I am over eighteen years of age and believe in the obligations of an oath.

2.      Unless expressly stated otherwise herein, I make this affidavit on my own
personal knowledge.

3.      I am the President of Golden Spring (New York) Ltd. ("GSNY").

4.      Prior to the filing of the above captioned bankruptcy case in February 2021 (the
"Bankruptcy Case"), GSNY was served with a subpoena for documents by Pacific Alliance Asia
Opportunity Fund ("PAX").

5.      In response to that subpoena, GSNY produced to PAX more than 2,800 pages of
documents, including highly sensitive and confidential documents. The documents that GSNY
produced included its sensitive bank records spanning three years. The documents produced also
included GSNY's historical "corporate book," identifying the company's owners, officers, and
directors since its outset.

6.      Prior to the Bankruptcy Case, I was also personally served by PAX with a
subpoena for documents.

7.    In response to that subpoena, I produced approximately 100 pages of my own personal bank records.

8.    Since the filing of the Bankrtupcy Case, PAX has issued approximately twenty additional subpoenas to GSNY, its officers, directors, and employees.

9.    PAX's document requests in these post-bankruptcy petition subpoenas substantially overlap with the documents that PAX requested and produced last year. For example, documents concerning payments regarding the Sherry Netherland, my compensation, the officers and directors of GSNY, and its corporate structure, have already been produced to PAX.

10.    That said, PAX has again requested GSNY's corporate formation documents, documents regarding its owners, officers and directors, documents related to my compensation, documents related to the Sherry-Netherland, and documents related to certain transactions, which have already been provided to PAX.

11.    On March 29, 2022, PAX served subpoenas for documents and a 30(b)(6) deposition on GSNY via its statutory agent for service.

12.    GSNY responded to that subpoena by producing approximately 930 pages of documents, including the documents identifying its current owners, officers, and directors, which had already been produced to PAX.

13.    On April 12, 2022, I testified for approximately 7 hours as a 30(b)(6) witness for GSNY in connection with the Bankruptcy Case. During that deposition, I testified, among many other topics, extensively about the scope of my employment and my job responsibilities.

14.    GSNY's attorneys have also responded to the subpoena directed to me as President of GSNY that was served on them. GSNY's counsel advised PAX that they would

2

accept service of this subpoena, so long as the subpoena was modified to properly reflect that it was being issued to GSNY, not to me in an individual capacity. PAX sent a revised subpoena (which did not comply with counsel for GSNY's request). Nevertheless, GSNY's counsel accepted that subpoena on behalf of GSNY and responded in a timely manner.

Yanping Wang

Subscribed to and sworn before me, this 12th day of May, 2022.

Notary Public
My Commission Expires:  3/4/26

YAMILE FORERO
Notary Public, State of New York
No. 01FO6070665
Qualified In Nassau County
Commission Expires March 04, 2026

3

**UNITED STATES BANKRUPTCY
COURT DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |

*PROPOSED*
**ORDER GRANTING
MOTION OF GOLDEN SPRING (NEW YORK) LTD.
TO MODIFY OR QUASH SUBPOENAS ISSUED BY
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.**

Upon the motion by Golden Spring (New York) Limited to quash from numerous

subpoenas (the "Subpoenas") issued by Pacific Alliance Opportunity Fund LP ("PAX") between

April 22, 2022 and May 5, 2022, it is hereby

**ORDERED,** that the motion is granted and the Subpoenas are hereby quashed.

## UNITED STATES BANKRUPTCY
## COURT DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |

### CERTIFICATE OF SERVICE

In accordance with the applicable provisions of the Federal Rules of Bankruptcy Procedure 2002 and 7004, the undersigned certifies that on the 12th day of May 2022, the following documents were served on the Office of the United States Trustee and all appearing parties via the Court's electronic filing system and, on or before May 13, 2022, by First Class Mil on the parties listed below.

1. **Documents Served:**

   a. Motion of Golden Spring (New York) LTD. Modify or Quash Subpoenas Issued by Pacific Alliance Asia Opportunity Fund L.P.

   b. Affidavit of Timothy D. Miltenberger

   c. Affidavit of Yanping Wang

   d. Proposed Order

   e. Notice of Contested Matter Response Date

2. **Parties Served Via First Class Mail**:

   **Ho Wan Kwok**
   373 Taconic Road
   Greenwich, CT 06831

   **Cheng Jian Wu Jian She**
   c/o Kevin Kerveng Tung, P.C.
   136-20 38th Avenue, Suite 3D & 3F
   Flushing, NY 11354 USA
   Attn: Kevin Tung, Esq.

**Guo Baosheng**
c/o Law Office of Ning Ye, Esq.
135-11 38th Avenue, Suite 1A
Flushing, NY 11354 USA
Attn: Ning Ye, Esq.

**Yang Lan and Wu Zheng**
900 Third Avenue, 18th Floor
c/o Arkin Solbakken, LLP
New York, NY 10022
Attn: Robert C. Angelillo

**Hong Qi Qu**
c/o Kevin Tung, P.C.
136-20 38th Avenue, Suite 3D & 3F
Flushing, NY 11354 USA
Attn: Kevin Tung, Esq.

**Jian Gong**
C/O Kevin Kerveng Tung, P.C.
136-20 38th Avenue, Suite 3D
Flushing, NY 11354 USA
Attn: Kevin Tung, Esq.

**Yan Zhao**
C/O Law Office of Ning Ye, Esq.
135-11 38th Avenue, Suite 1A
Flushing, NY 11354 USA
Attn: Ning Ye, Esq.

**Yua Hua Zhuang Shi**
C/O Kevin Kerveng Tung, P.C.
136-20 38th Avenue, Suite 3D & 3F
Flushing, NY 11354 USA
Attn: Kevin Tung, Esq.

**Liehong Zhuang/Xiao Yan Zhu**
C/O Trexler & Zhang, LLP
224 West 35th Street, 12th Floor
New York, NY 10001 USA
Attn: Jonathan T. Trexler, Esq.

**Samuel Nunberg**
C/O Nesenoff & Miltenberg, LLP
363 Seventh Ave, 5th Floor

3

New York, NY 10001 USA
Attn: Andrew T. Miltenberg, Esq.

**Lamp Capital, LLC**
Attn: Bernardo Enriquez
667 Madison Avenue
New York, NY 10065

**Jun Chen aka Jonathan Ho**
C/O Wayne Wei Zhu, Esq.
4125 Kissena Blvd, Suite 112
Flushing, NY 11355 USA
Attn: Wayne Wei Zhu

**Yue Hua Zhu Shi**
136-20 38th Avenue, Suite 3D
c/o Kevin Kerveng Tung, P.C.
Flushing, NY 11354
Attn: Kevin Tung, Esq.

**Jia Li Wang**
C/O Thompson Hine
335 Madison Avenue, 12th Floor
New York, NY 10017 USA
Attn: Brian P. Lanciault, Esq.

**WA&HF, LLC/Ruizeng An**
C/O AFN Law
41 Madison Avenue, 31st Floor
New York, NY 10010 USA
Attn: Angus Ni, Esq.

By  /s/ Timothy D. Miltenberger
Timothy D. Miltenberger (ct08874)
Scott D. Rosen
Cohn Birnbuam & Shea P.C.
100 Pearl Street, 12th Floor
Hartford, CT  06103
(860) 493-2262
Tmiltenberger@cbshealaw.com

4