**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| HO WAN KWOK[1] | 22-50073 (JAM) |
| Debtor. | May 18, 2022 |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS CHAPTER 11 CASE OR, IN THE ALTERNATIVE, PARTIAL JOINDER TO UNITED STATES TRUSTEE'S MOTION FOR ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Pacific Alliance Asia Opportunity Fund L.P. ("PAX") respectfully submits this reply ("Reply") in support of its *Motion to Dismiss Chapter 11 Case or, in the Alternative, Partial Joinder to United States Trustee's Motion for Order Directing the Appointment of a Chapter 11 Trustee,* ECF No. 183 (the "Dismissal Motion")[2] and in response to the objections to the Dismissal Motion (collectively, the "Objections") submitted by certain parties (the "Objectors"), including the *Opposition of the Official Committee of Unsecured Creditors to Pacific Alliance Asia Opportunity Fund L.P.'S Motion to Dismiss Chapter 11 Case or, in the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee*, ECF No. 346 (the "UCC Objection"), the *Objection of Creditors Rui Ma, Zheng Wu and Weican Meng to the Motion of Pacific Alliance Asia Opportunity Fund L.P. for Dismissal of this Case or, in the Alternative, for Appointment of a Trustee*, ECF No. 347 (the "Rui Ma Group Objection")

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

[2] Concurrently with the Dismissal Motion, PAX filed a limited objection to the *United States Trustee's Motion for an Order Directing the Appointment of an Examiner or, in the Alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee*, ECF No. 102 (the "Examiner/Trustee Motion"). Capitalized terms used but not defined herein shall have the meaning set forth in the Dismissal Motion. Citations to Exhibits 1 through 43 are attached to the Friedman Decl. All other exhibit citations are to the exhibits attached to the *Declaration of Peter Friedman in Further Support of PAX's Motion to Dismiss* ("Friedman Reply Decl."), filed concurrently herewith.

and the *Creditor Logan Cheng's Opposition to Pacific Alliance Asia Opportunity Fund L.P.'s Motion to Dismiss Chapter 11 Case*, ECF No. 348 (the "Cheng Objection").

## PRELIMINARY STATEMENT

1.      Despite the Debtor's misuse of the bankruptcy process and contrived chapter 11 filing, the Objectors insist that this sham case must continue for their alleged benefit.  With no business to reorganize, very few if any liquidated claims other than PAX's claim, and no direct means (or possible cost-effective method) to fund a case, there is no defensible reason to prolong the case on behalf of Kwok, who is anything but the proverbial "honest but unfortunate debtor." Continuing the case because the Objectors hope that they can leverage PAX's collection efforts into their own payday is a wasteful alternative when the parties can easily be returned to their full prepetition rights and remedies without the estate incurring mounting administrative expenses and unfairly disadvantaging PAX.  It bears special emphasis that PAX has more than $260 million in judgments.  Other than a tiny sprinkling of other liquidated claims, the rest of the Debtor's purported constituents are either insiders or litigation claimants who do not have judgments and may never be creditors for *years*, if ever.  And, this is not a mass tort or product case where past is prologue for litigation claimants, or where virtually all unliquidated claims have a common nucleus of facts.  The unliquidated claims are from disparate plaintiffs who claim disparate injuries.

2.      Moreover, the arguments for forcing this case to continue are wrong on the law and the facts.  First, Objectors complain that if Kwok's chapter 11 is dismissed—as it should be—they would be returned to the *status quo ante* in which their speculative claims would be unsatisfied and they and other creditors would need to wait to collect on any of their claims until after PAX is satisfied.  This is not fully accurate—if other claimants against Kwok have rights outside of

2

bankruptcy, those rights are not necessarily subordinate to PAX's rights. They are what they are. And, in any event, a return to the prepetition *status quo* is not a windfall to PAX, nor is it a detriment to the Objectors' rights, whatever they may be. PAX has been waiting for nearly 7 years to collect against Kwok for his failure to honor his personal guarantee. The Objectors want to take advantage of the bankruptcy process so that they can share in PAX's years-long collection efforts and delay PAX's satisfaction. Thus, if the Objectors succeed, it is *they* who will be jumping the line in this case, not PAX, who will be forced to wait even longer for other claimants to prove up their claims before fully realizing any recovery. Second, the number of claims that would "compete" with PAX for Kwok's assets is greatly exaggerated in the UCC Objection. In reality, the vast majority of asserted claims other than PAX's are either insider claims (such as the $22 million in claims scheduled for Golden Spring and Lamp Capital, each of which refused to provide any documentation for their purported claims), *de minimis* claims, as-yet unproven litigation claims, or claims arising from litigation that has either been dismissed or is dormant. Third, Kwok did not file this case because he was suffering from an inability to satisfy his debts as they come due or any other form of financial distress. Kwok did not file this case when PAX won summary judgment in its claim for over $116 million in February of 2021. He continued to spend millions of dollars litigating against PAX (and others). He did it to prevent the consequences of a contempt sanction (including potential imprisonment) for failing to bring the Lady May back to New York per Justice Ostrager's orders in the New York Action. Justice Ostrager's order required either Kwok or the "registered owner" of the Lady May to transfer the yacht to New York or else face consequences. We know from this case that they always could do that—because they did. And, Kwok states in his that he intends to satisfy the claims of his legitimate creditors in the future.

3.      Although no one disputes any more that cause exists for dismissal of this case under

section 1112 of the Bankruptcy Code, the Debtor's bad faith in filing this chapter 11 case confirms that dismissal is the right remedy. Kwok was clear he filed this case to evade a contempt order. And equally clear he wanted to re-litigate the merits of PAX's massive judgments against him. Kwok made extensive misrepresentations to the court in his schedules and other filings and the bogus DIP loan and proposals, which, as PAX noted from the outset was either a poisoned gift or a sham. And finally, when it became clear the Debtor could not gain tactical advantages from the bankruptcy court, the Debtor abruptly pulled the plug on his own case, blaming PAX (unsurprisingly), but also confirming that this chapter 11 case was never about an orderly liquidation or ensuring equal treatment for creditors. This case was always about PAX and Kwok's continued efforts to hinder, delay, and defraud PAX in collecting on its judgment.

4. Moreover, an examiner and trustee are not good alternatives in light of the current circumstances and lack of funding. Counsel for the Official Committee of Unsecured Creditors (the "Committee") tacitly acknowledges that the withdrawal of the Debtor's putative DIP loan makes it impossible for the case to continue in its current posture.[3] That is true, but notwithstanding Committee counsel's suggestion to the contrary, this is not a new or surprising development. The DIP loan (and plan) were always charades. The loan withdrawal simply confirms what PAX has stated from the beginning: the supposed offer to fund the case was never a real offer and there is no economically rational way for the case to remain in the Bankruptcy Court, whether through a trustee or through conversion. Indeed, the absence of any reasonable, committed form of financing dooms any effort to keep the bankruptcy process going in any form.[4]

---

[3] UCC Objection at 33, n. 16.

[4] A trustee, whether in chapter 7 or chapter 11, could ultimately result in expensive contingency fees for recovery of debtor assets, effectively mortgaging creditor recoveries for the sole purpose of keeping this case in bankruptcy court. PAX's share of the costs of such a non-consensual arrangement would be orders of magnitude greater than the share of any other creditor.

Conversion or appointment of a trustee just passes these fatal problems to a new party.  It does nothing to solve them.

5.      Failure to dismiss will leave the Debtor with access to another forum and the tools of the Bankruptcy Code to continue to frustrate his creditors while imposing tremendous costs that will overwhelmingly harm PAX.  Other courts have already indicated that they are done with his antics.  This Court should respond likewise.

**ARGUMENT**

## I.      DISMISSAL

### A.  Objectors' Concerns That Pax Is Attempting to "Jump the Line" Are Unavailing.

6.      The Objectors' principal justification for opposing dismissal is the assertion that PAX will take all of the available assets in a "race to the courthouse" outside of bankruptcy.  But none of the Objectors provides a shred evidence to support this view other than an inflated estimate of the number and amount of outstanding non-PAX claims.  PAX will show at trial  with specificity that it has by far the largest non-contingent claim via its judgments, and that the remaining purported claims are either from insiders or are speculative and should not be relied upon to prejudice PAX.[5]  The cases cited by the Objectors on this point, in particular those involving involuntary bankruptcies, are universally distinguishable because they each involved multiple creditors waiting to be paid.  Here, Kwok's creditors—other than PAX and perhaps one other much

---

[5] The non-PAX "claims" touted by the Committee appear dramatically overstated.  Few, if any, are liquidated. There is no indication any judgments were imminent.  To the contrary, many litigation claims are associated with cases that have already been dismissed or are inactive. *See, e.g.*, *Beijing Zhong Xian Wei Ye Stainless Decoration Center et al. v. Wengui Guo et al.*, Case No. 653176/2017 (N.Y. Sup. 2017), Dkt. No. 1, Summons and Complaint (seeking over $30,000,000) and Dkt. No. 69 (dismissing all causes of action*); Zheng Wu & Yang Lan v. Guo Wengui*, Index No. 152123/2018 (N.Y. Sup. 2018), Dkt. No. 1 (seeking $10,000,000) and Dkt. No. 46 (order for settlement mediation).  As PAX will show, other claims have been long dormant.  And, $22,000,000 in purported claims are scheduled as owed to the Debtor's insiders (including Golden Spring)—none of whom opposed dismissal.

smaller creditor—either have no current right to be paid or were not actively engaged in trying to collect.[6]

7.   PAX has been willing to litigate against Kwok to pursue full payment of amounts owed, but he simply has refused to pay.  If Kwok's petition is to believed—listing $3,850 in assets—he has been equally as insolvent since February 2021, when the New York State Court issued a $116 million judgement in PAX's favor, as he was on the eve of his chapter 11 filing. The only possible explanation for the timing of the filing was to avoid incarceration if he failed to pay the more-than $130 million in contempt fines that were coming due, demonstrating that Kwok sought refuge in this Court from imprisonment, not because he truly lacked the ability to pay creditors or needed an orderly liquidation of contested assets.[7]   The Debtor, who notably experienced no material change in financial circumstances whatsoever during the pendency of the case, all but admits this upon consenting to dismissal with the following parting words: "Post-dismissal, the Debtor intends to satisfy his legitimate debts."[8]

8.   Prior to the Petition Date, none of the Objectors attempted to file an involuntary bankruptcy.[9]   Yet now the Objectors essentially want to commence a pseudo-involuntary

---

[6] *See Schedule F: Creditors Who Have Unsecured Claims*, ECF 78, at 19–21.

[7] *See* Final Contempt Order.  Indeed, at least since January 2019, Kwok has denied having *any* assets to his name. *See* Friedman Reply Decl. Ex. 45, Kwok Deposition Transcript Excerpts, at 100–01, *Guo v. Guo*, Case No. 18-cv-01064-TSE-IDD (E.D. Va. January 23, 2019) (Kwok testifying that his "net worth" is "[n]egative" and that "[i]n reality, under the law" he has "no" assets).  Yet he continued to pay virtually all other obligations and waited until 2022 to file the instant case.

[8] *Debtor's Consent to Dismissal of Case*, ECF No. 344, at 4.

[9] Relief in connection with an involuntary filing is only available where the "debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount[.]"  11 U.S.C. § 303(h)(1).  Nowhere in the Kwok Declaration or in any other document is there any credible evidence of Kwok's failure to pay amounts due, other than in connection with his disputes with PAX and perhaps one other comparatively miniscule judgment creditor.  Given his frequent use of professionals and other services, Kwok likely incurred and paid a substantial amount in obligations on a regular basis.  *See, e.g.*, *Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs*, ECF 77, at 15, 21; *Supplement to the February 2022 Monthly Operating Report*, ECF 120-1.

6

bankruptcy by contesting dismissal against the consent of the Debtor and upon the motion of PAX, which has more than $260 million in judgments against the Debtor.

9.      Courts have generally deferred to debtors that wish to dismiss the case even where creditors express concern that there is insufficient value to go around, with one court noting that "it is beyond a bankruptcy court's powers to guarantee that the results that all creditors achieve outside of the bankruptcy court will be on a par with one another . . . If the bankruptcy court were required to give such guarantees, it could never dismiss a case under § 1112(b)." *In re OptInRealBig.com, LLC*, 345 B.R. 277, 287 (Bankr. D. Colo. 2006). *See also In re Mazzocone*, 183 B.R. 402, 412–13 (Bankr. E.D.Pa. 1995), *aff'd*, 200 B.R. 568 (E.D.Pa. 1996) (holding that "a creditor should not be permitted to prolong or sustain a case merely to take advantage of benefits bankruptcy offers to creditors."); *In re Hosp. Assocs. of Tappan Zee, Ltd.*, 102 B.R. 369, 370 (Bankr. S.D.N.Y. 1989) (giving weight to judgment of debtor in determining dismissal in best interest of the estate, notwithstanding creditor objection on grounds that debtor was unable to pay all creditors in full).[10]

10.      The Objectors paint PAX as attempting to "jump the line" and leave innocent creditors "holding the bag."  But *the Objectors* are trying to jump to the front of the line—the Objectors have no absolute right to recover alongside other creditors prior to obtaining a judgment on their claims.  They want to improperly accelerate their claims to share in the fruits of PAX's labors, which involved the investment of millions of dollars in legal fees in enforcing its judgment.

---

[10] The decision to dismiss a bankruptcy case under section 1112(b) of the Bankruptcy Code is a discretionary ruling, reviewed by appellate courts for abuse of discretion. *See Sterling v. 1279 St. John's Place, LLC (In re Sterling)*, 737 F. App'x 52, 53 (2d Cir. 2018) (summary order) ("Discretionary rulings of a bankruptcy court are reviewed for abuse of discretion."); *In re Taylor*, 97-CV-5967, 1997 WL 642559, at *1 (S.D.N.Y. Oct. 16, 1997) (reviewing bankruptcy court's dismissal under abuse of discretion standard).

11.     Given Kwok's improper motives for filing this case and his abusive behavior during it, PAX should be entitled to exercise its rights under the priority scheme provided for under applicable nonbankruptcy law, which would typically involve a form of the "first in time, first in right" rule.[11]  Though the Bankruptcy Code does allow unmatured debts to share with matured debts, this priority scheme is not anathema to the purposes of the Bankruptcy Code.  For example, in a hypothetical world where PAX had obtained proceeds of Kwok's assets prior to the Petition Date, it would have had every right to keep them under applicable bankruptcy law.[12]

12.     Parties with only speculative or otherwise contingent claims should not be permitted to accelerate the maturity of their claims through a *sub silentio* involuntary bankruptcy, which would provide an inequitable enhancement of their underlying rights.  By attempting to hijack the bankruptcy case, the Objectors conveniently avoid the safeguards and requirements of the Bankruptcy Code for involuntary filings and also contravene the temporal priority system set forth by Congress, state legislatures, and the common law.  They become the parties decried in the case from which the UCC Objection so heavily quotes, using this case as "a debt collection remedy that is more potent in bankruptcy than the equivalent right under nonbankruptcy law."[13]  If the Objectors succeed, they would delay PAX's ability to execute on its statutorily prescribed right to collect its judgment, potentially for years, even though PAX provided the roadmap to Kwok's assets to all other creditors.[14]  The Objectors should not benefit from Kwok's misconduct to the detriment of PAX.

---

[11] *See, e.g.*, The Law of Debtors and Creditors § 6:46, Collection of Unsecured Debts.  PAX is not obligated to prove that Kwok's empire offers future judgment creditors no risk of default.  Any contingent creditor without a liquidated right to payment in the real world must take the risk until a judgment is obtained (assuming it ever is).
[12] Even if obtained within the 90-day preference window, PAX would have a viable defense that receipt of value was not preferential where the Kwok can pay 100% of all claims—a preference action must show the transfer provides a better total distribution to the creditor in a hypothetical chapter 7 liquidation.  *See* 11 U.S.C. § 547(b)(5).
[13] *In re Murray*, 543 B.R. 484, 498 (Bankr. S.D.N.Y. 2016).
[14] This further ignores the millions of dollars in postpetition, postjudgment interest that PAX would be entitled to during this time.

8

13.     In trying to defend their right to commandeer the Debtor's chapter 11 case notwithstanding other unsecured creditors' general lack of any *bona fide* right to payment, the UCC Objection likens Kwok's case to a mass tort case like *Purdue Pharma* or *LTL Management*.[15] It is an understatement to say these are far-fetched comparisons.  A quick read through the "first day declaration" of any one of these cases, followed by comparison to the Kwok Declaration filed in this case, vividly highlights stark disparities: the mass tort bankruptcies reflect voluminous cases across myriad jurisdictions in which the same issues are tried repeatedly, leading to disparate, inefficient outcomes among creditors with similar claims harmed by the same debtor conduct.  The Kwok Declaration, on the other hand, only briefly mentions the number of cases outstanding against him, none of which have any apparent common nucleus of fact that would lend itself to centralization, and contains no facts indicative of an inability to handle the litigation against him.  Nor does the Kwok Declaration contain any account of judgment liens, attachment proceedings or other collection efforts.[16]  With no evidence currently in the record (and with Kwok having consented to dismissal, no prospect of such evidence being introduced by the Debtor), it falls on the Objectors to come up with a factual basis for the Debtor be in bankruptcy notwithstanding his consent to dismissal.  Yet they have provided nothing other than unfounded, conclusory statements about PAX "jumping ahead" of other creditors.

**B.  Misuse of the Bankruptcy Code Is a Valid Independent Basis for Dismissal.**

14.     Contrary to the UCC Objection's assertions, misuse of the Bankruptcy Code is indeed an independent "unenumerated cause" for dismissal that goes back to the early years of the Bankruptcy Code.  Though dismissal for an "unenumerated cause" in most cases means "bad

---

[15] UCC Objection at 15 (referring to "Purdue Pharma [and] LTL Management [as among] the host of other chapter 11 cases that have been used to address unliquidated tort claims without successful challenge"); 23 (citing  *In re Purdue Pharma, L.P.*, 633 B.R. 53, 70 (Bankr. S.D.N.Y. 2021)).

[16] *See* Kwok Declaration at 14–19.

faith," it can by definition be any just cause, and courts have recognized "misuse of the Bankruptcy Code" as one such cause.[17]  At least one prominent bankruptcy jurist, retired Judge Robert E. Gerber of the Southern District of New York, reserved "bad faith" for the most egregious cases (which would include this case), but still allowed for dismissal where the debtor's filing is improper but does not reach the standard for bad faith.[18]  Here, the best description of the Debtor's efforts to circumvent the rule of law is his "misuse of the bankruptcy code," and the Debtor's case should be dismissed on that basis even if his filing does not reach the level of "bad faith" (though, as set forth below and in the Dismissal Motion, it does).

15.     It is irrelevant that some of the cases cited in the Dismissal Motion on this point involved involuntary bankruptcies.[19]  These cases interpreted section 1112, which is the same standard for dismissal for any chapter 11 case.  Moreover, the UCC Objection is incorrect that the Dismissal Objection cites no other cases for this point, conveniently ignoring the citation to *In re Head*, which is the specific internal citation referred to in the Dismissal Motion's citation to the *Murray* case.  *In re Head*, which was not an involuntary bankruptcy or a case was dismissed on "bad faith" grounds, was cited for the proposition that "unenumerated cause" included "use of the Code for purposes other than those for which it was intended," which had been "a repeating theme since the earliest days of the Code."[20]  A cursory search of "misuse" of bankruptcy in any case law

---

[17] *See, e.g.*, *In re Murray*, 900 F.3d 53, 60–61 (2d Cir. 2018) ("We need not, however, classify misuse of the Bankruptcy Code as bad faith in order to accept it as cause to dismiss . . . ."). *See also In re 347 Linden LLC*, Case No. 11-civ.-1990, 2011  Dist. LEXIS 78843, at *4 (E.D.N.Y. July 20, 2011) ("The bankruptcy court may dismiss a Chapter 11 [petition] for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process.") (internal citations omitted).

[18] *See, e.g.*, *In re Century/ML Cable Venture*, 294 B.R. 9, 34–35, n. 41 (Bankr. S.D.N.Y. 2003) (J. Gerber); *In re Pleasant E. Assocs.*, 286 B.R. 509, 517 n.34 (Bankr. S.D.N.Y. 2002).

[19] The UCC Objection responds to this "unenumerated cause" by veering off into the rationale for involuntary bankruptcy filings, which is entirely irrelevant.  An involuntary filing ensures equal treatment among creditors *where the debtor cannot pay debts as they come due*.  *See* 11 U.S.C. § 303(h).  As noted above, there is no credible evidence this was ever the case.

[20] *In re Murray*, 543 B.R. 484, 489 n.24 (Bankr. S.D.N.Y. 2016) (citing *In re Head*, 223 B.R. 648, 653–54 (Bankr. W.D.N.Y. 1998)).

database would have found plenty of examples of cause for dismissal under section 1112 being described in exactly this way.[21]

16.    The Debtors' actions in the case have continued to exhibit the true purpose of the filing, which is self-evidently an improper use of the Bankruptcy Code.  For example:

- the Debtor's family office offered to provide a subordinated DIP loan designed at first to exercise control over the case, later to provide funding for professional fees vastly disproportionate to the costs of the case, and designed to let the Debtor's family control the case;

- the Debtor filed schedules that were replete with incomplete, false, and contradictory information;[22]

- the Debtor filed a plan that on its face was infeasible that perpetuated the charade that the Lady May was not owned by the Debtor, despite an order from the New York Court to the contrary, and that conditioned creditors' access to the Lady May on the granting of extensive non-debtor releases for insiders, which would violate of the best interests of creditors test of section 1129(a)(7) of the Bankruptcy Code by stripping creditors of the value of avoidance or turnover actions—the main assets of the Debtor's estate;

- the Debtor and his daughter cooked up an adversary proceeding in this Court to attack the New York Court's rulings regarding the Lady May (naming PAX as a defendant and forcing PAX to expend even more resources);

- the Debtor served improper and irrelevant discovery requests on PAX, which attempted to relitigate various matters that were already established in the New

---

[21] *See, e.g.*, *In re Kestel*, 99 F. 3d 146 (4th Cir. 1996) ("Congress has made it clear within the Bankruptcy Code itself that *misuse of the bankruptcy process* should not be countenanced. [. . .] general phrases such as 'for cause' provide broad coverage for *unenumerated instances of misuse*.") (emphasis added).  *See also In re Brookdale Gardens Ass'n*, No. 09-41305 (NLW), 2010 Bankr. LEXIS 1643, at *1 (Bankr. D.N.J. May 20, 2010) (noting debtor's "misuse" of chapter 11 and prior ruling that dismissal for cause under section 1112(b) would have been equally appropriate as dismissal of involuntary bankruptcy under section 305).

[22] For example, Kwok omitted key assets from his financial disclosures and filed Monthly Operating Reports devoid of any meaningful detail.  *See* Dismissal Motion ¶ 30; *see generally Pacific Alliance Asia Opportunity Fund L.P.'s Response in Opposition to Debtor's Motion to Extend Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs*, ECF 50; *Examiner/Trustee Motion* at 1–19; *Monthly Operating Report (Period Ending February 28, 2022)*, ECF 120; *Monthly Operating Report (Period Ending March 31, 2022)*, ECF 242. Additionally, Kwok stated under penalty of perjury on March 9, 2022, that he had not paid or agreed to pay anyone "who is NOT an attorney to help [him] fill out bankruptcy forms."  *Official Form 106Dec*, ECF 79.  But the Debtor's own application to retain Verdolino & Lowey, P.C. ("V&L") sought an order "authorizing him to retain and employ V&L, *as of March 3, 2022*" to conduct work on, among other things, "the Statement of Financial Affairs and the Schedules"—which were filed on March 9, 2022.  *Debtor's Application for Authorization to Retain and Employ Verdolino & Lowey, P.C. as Financial Advisors*, ECF 90, at 2–3 (emphasis added). Kwok continually states whatever he thinks suits him best, even in statements to the Court under penalty of perjury.

York Action and removed the New York Action to attack the validity of Justice Ostrager's rulings and undermine them; and

- the Debtor abruptly consented to dismissal of this chapter 11 case,[23] having achieved nothing other than hindering and delaying PAX's recoveries and causing creditors to incur substantial professional fees.

17. Thus, Kwok has only ever been interested in getting one more bite at the proverbial apple in its quest to delay PAX in collecting its judgment and to undermine the New York Court's orders. This is clear misuse of the bankruptcy system.

18. The Objectors suggest that the Debtor's behavior can be ignored because the Final Contempt Order issued by the New York Court is now moot. Not so; the Final Contempt Order is for the payment of the $134 million fine that must be paid to PAX, not merely the return of the boat.[24] It is not for the Objectors to say whether the Debtor has somehow fulfilled his obligation to the rule of law—the boat has not yet been delivered and the Debtor has still not paid the fine imposed.

19. As a proper use of bankruptcy, the Objectors point to the Debtor's stated goal of providing a centralized forum for resolving disputes over the Debtor's property.[25] Kwok filed his petition to centralize exactly one dispute: his dispute with PAX. That is the only case on which he sought a removal petition—none of his other cases were brought to the Bankruptcy Court, even though the PAX case made the least sense to remove because it was already post-judgment.[26] Additionally, Kwok promised to make creditors whole (betraying the fact that he controlled the assets to do so)[27] and did not oppose creditor Rui Ma's motion to lift the automatic stay to go back

---

[23] *See Debtor's Consent to Dismissal of Case*, ECF No. 344.

[24] *See* Ex. 39. The fine continues to accrue if the Lady May has still not been returned by a date certain. *See id.* at 2.

[25] *See* UCC Objection at 3; Rui Ma Group Objection at 23.

[26] *See* Ex. 1; Friedman Reply Decl., Ex. 44, Notice of Removal, *PAX v. Kwok*, Index No. 652077/2017, (N.Y. Sup. Ct.), Dkt. No. 1195 (March 15, 2022).

[27] *See, e.g.*, Dismissal Motion at 26, n. 107.

to state court to prosecute that case—a telling choice.[28]  Kwok brought this case to avoid the New York Court and for no other reason.

20.    In arguing that the Debtor is not misusing the bankruptcy system, the UCC Objection contests the claim that the bankruptcy allows Kwok "to perpetuate his ongoing shell game before this Court," saying it is "mystifying and, more to the point, simply not accurate."[29] Although a chapter 11 case can allow for an investigation, that ground has already been covered in the New York Court (i.e., Justice Ostrager's court).  Continuing this chapter 11 case will make PAX go through the same thing again.  There are surely various additional ways for Kwok to continue to hide his assets.  With the benefit of the automatic stay, and Kwok's right to participate in a bankruptcy proceeding as a party in interest (even if displaced as a debtor in possession), Kwok can create all kinds of mischief.

### C. The Debtor's Bad Faith Requires Dismissal.

21.    The Objectors argue that the "desire to invoke the stay itself [to evade contempt] is not sufficient" for dismissal "for bad faith."[30]  But the very case quotation cited for this proposition indicates that the debtor "must intend to obtain the benefit of the automatic stay for an improper purpose . . . ."[31]  Here, as explained above, Kwok's purpose was to evade a court order designed to ensure the dignity of law and order and the court system, which is improper and has nothing to do with equality of treatment of creditors.

22.    In arguing that the Debtor did not have subjective bad faith in filing this case, the UCC Objection claims that the contempt claim payable to PAX can be equitably subordinated.

---

[28] *See Motion of Rui Ma for Relief from the Automatic Stay to Allow Pending State Court Litigation to Proceed*, ECF 206; *Notice of Contested Matter Response Date*, ECF 206-3 (setting an April 26, 2022 response date).
[29] UCC Objection at 15.
[30] *Id.* at 17.
[31] UCC Objection at 17 (quoting *In re Soundview Elite, Ltd.*, 503 B.R. 571, 580 n. 18 (Bankr. S.D.N.Y. 2014)).

But this argument is irrelevant—the availability of equitable subordination does not somehow cure the bankruptcy filing as the court considers "cause" under Bankruptcy Code section 1112. Moreover, it is simply incorrect. Courts within the Second Circuit require inequitable conduct by the creditor to subordinate the claim,[32] none of which has even been alleged of PAX here. The rationale for no-fault equitable subordination of penalty claims is inapplicable here— subordination would be perverse where the claim involves an affront to the dignity of the judicial system rather than an ordinary punitive claim.[33] And finally, any discussion of subordination is premature where no creditor even has an allowed claim yet.

23.    The UCC Objection cites to *In re Meier* to suggest that the Court should ignore the Debtor's purpose for filing and behavior in the chapter 11 case, stating that the key test for whether a case should be dismissed for bad faith is "whether the debtor has proposed or can propose a legally and economically feasible plan of reorganization or whether the case and possible plan can otherwise serve a valid reorganization purpose."[34]

24.    *Meier*'s facts are distinguishable, and Kwok's case easily meets its standard for dismissal. *Meier* involved a true reorganization where a clear purpose was served by keeping the case going: the court found that the debtor would provide more to creditors through a chapter 11

---

[32] *See Kelleran v. Andrijevic*, 825 F.2d 692, 697 (2d Cir. 1987) ("Under the doctrine of equitable subordination, for instance, a bankruptcy court may subordinate a particular claim if it finds that the creditor's claim, while not lacking a lawful basis nonetheless results from inequitable behavior on the part of that creditor."); *see also Harris v. I.R.S.*, 82 A.F.T.R.2d 98-5931 (Bankr. N.D.N.Y.) ("The court holds that before it can equitably subordinate a claim there must be some proof of the creditor's inequitable behavior since the Second Circuit's determination on that point has not been overturned.*"); In re Rockville Orthopedic Assocs.*, P.C., 377 B.R. 438, 445 (Bankr. D. Conn. 2007) ("The court concludes that the conduct complained of does not constitute the "inequitable conduct" necessary to support a claim for equitable subordination"); *In re Mr. R's Prepared Foods, Inc.*, 251 B.R. 24, 29 (Bankr. D. Conn. 2000) (requiring inequitable conduct).

[33] The Objectors cite to no case in which no-fault equitable subordination has ever been applied to such a claim.

[34] UCC Objection at 17–18.

14

plan, which was not a liquidation like the case here.[35]  Unlike *Meier*, there is no "reorganizational purpose" here, as there is nothing to reorganize and there is no apparent financial distress.

25.     Additionally, confirmation of a plan here is practically impossible, unlike *Meier*. There is no committed plan funding in light of the Debtor's withdrawal of the proposed DIP financing while the estate is burdened with large professional fee expenses as well as an impending claim by PAX for substantial contribution for its efforts to obtain return of the Lady May.  PAX holds a large non-dischargeable claim,[36] making any plan likely infeasible on its face if the Objector's view of the Debtor's ability to satisfy debts is to be believed.[37]  And contrary to the Objectors' arguments, confirmation would be impossible without the consent of PAX.  The separate classification of PAX proposed in the UCC Objection for cram-down purposes would be a blatant instance of gerrymandering that is universally prohibited in the case law.[38]  Indeed, a case on all fours with the case here held exactly that.[39]  To the extent materially disparate treatment is afforded to PAX, it would also be a clear instance of unfair discrimination.[40]  The only instances of permissible separate classification and/or disparate treatment of this sort are cases of trade

[35] *In re Meier*, Bankr. No. 14-bk-10105, 2014 WL 5426763 at *5 (Bankr. N.D. Ill. Oct. 21, 2014) (no bad faith where bankruptcy filing "appear[ed] to have a proper reorganizational purpose").

[36] As noted on the record and in various pleadings submitted to the Court, PAX intends to submit a non-dischargeability complaint on account of its contempt claim, the nature of which courts have held is non-dischargeable as a matter of law on multiple grounds.  *See, e.g.*, *Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229, 237-40 (Bankr. W.D.N.Y. 1999); *In re Marini*, 28 B.R. 262, 265 (Bankr. E.D.N.Y. 1983).

[37] *In re Hamilton*, 803 F. App'x 123, 125 (9th Cir. 2020) (denying confirmation where large non-dischargeable judgment and interest thereon made proposed plan infeasible under section 1129(a)(11)).

[38] *See, e.g.*, *In re Bos. Post Rd. Ltd. P'ship*, 154 B.R. 617, 622 (D. Conn. 1993) (collecting cases); *In re One Times Square Assoc. Ltd. P'ship*, 165 B.R. 773, 776 (Bankr. S.D.N.Y. 1994) ("[S]ubstantially similar claims [must] be classified together unless there exists some reason, other than gerrymandering, for separating them.").

[39] *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202, 233 (Bankr. W.D. Tex. 2008), *aff'd*, 2009 U.S. Dist. LEXIS 121177 (W.D. Tex. Sept. 29, 2009), *aff'd sub nom. Save Our Springs Alliance, Inc. v. WSI (II)-COS, L.L.C.*, 632 F.3d 168 (5th Cir. 2011) (holding that judgment creditor's claim could not be separately classified from other general unsecured claims where creditor would have controlled the voting outcome given the size of its claim and there was no business justification for the separation).

[40] *See In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. In re Johns-Manville Corp.*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) (holding that "a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes" under section 1129(b) of the Bankruptcy Code governing cram-down).

creditors or other types of general unsecured creditors that have some business value to the reorganized debtor.[41]  Here no such rationale is possible given Kwok has no business and is not reorganizing.  The idea that the major non-insider creditor (by a large margin, even taking into account the hyperbolic accounting of unsecured creditors in the UCC Objection) could be disenfranchised for no reasonable purpose is absurd on its face.  The Debtor's lack of prospects to confirm any chapter 11 plan not only establishes objective futility, but it also provides a factor indicative of subjective bad faith.  *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 557 (D. Conn. 2016) (stating that "the objectively assessed chances of the debtor's emerging from bankruptcy may provide one indication of the debtor's subjective intent in filing for bankruptcy protection").

26.     In discussing the *C-TC* and *Syndicom* factors for subjective bad faith, the Objections focus on one or two factors—whether there is a single asset or whether the bankruptcy filing is an outgrowth of a two-party dispute, ignoring the fact that nearly all of the factors militate in favor of a bad faith finding, as set forth in the Dismissal Motion.  PAX can stipulate it believes the Debtor has more than one asset[42] and more than one creditor (in fact PAX has stated as much many times)—these facts are relatively meaningless in the scheme of the factors.  Of course, courts are in no way limited to dismissing single-asset real estate cases for bad faith.  Although true that there are other contingent litigation claimants, virtually none of those cases have been reduced to judgment, there is no evidence any are imminently to be reduced to judgment and, most importantly, none of them have caused Kwok any financial distress, which is the reason behind the "two-party dispute" factor, i.e., that the *financial condition* of the debtor is the result of a two-

---

[41] *See, e.g.*, *In re Aegerion Pharm.*, 605 B.R. 22, 31–32 (Bankr. S.D.N.Y. 2019).

[42] Contrary to the UCC Objection's bizarre attempt to ascribe to PAX the notion that the Debtor has a single asset, *see* UCC Objection at 27, PAX's Dismissal Motion indicated the opposite, but noted that dismissal was also warranted based on the facts put forth *by the Debtor* in the Kwok Declaration to justify his chapter 11 filing *i.e.*, that he had little to no assets. *See, e.g.*, Dismissal Motion 31 (stating that "*Kwok* asserts" that he only has limited assets) (emphasis added).

party dispute.[43] No other creditor other than PAX has had any remotely material impact on the Debtor's financial condition—as noted in the Dismissal Motion and elsewhere herein, the Court can readily conclude that the Debtor's bankruptcy filing was a result of PAX and PAX alone.

27.     Contrary to the UCC Objection's selective quotations from the case law, a debtor's purpose in filing need not have been *solely* to relitigate prior judgment for such to be a reason to dismiss for bad faith.[44] First, any debtor can feign one purpose when its true primary purpose is obviously another—as noted herein and in the Dismissal Motion, relitigating PAX's judgments, trying to stay out of jail and trying to obtain leverage over PAX really *were* the primary purposes of the Debtor's filing. Second, the UCC Objection incorrectly frames the intent to re-litigate as a matter of the "bad faith" inquiry, but it is equally relevant to other "unenumerated causes" as bases for dismissal, such as misuse of the bankruptcy system, which is a far more open ended standard in the discretion of the Court.[45]

28.     The UCC Objection also cavalierly suggests that the re-litigation can be "easily" avoided by relying on preclusion principles, which ignores the great burden already imposed on PAX in this case, not least by improper discovery requests and various other proceedings.[46] Of

---

[43] *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P-Ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997) (considering whether "the debtor's *financial condition*" is a result of a "two-party dispute") (emphasis added). *See also In re Syndicom Corp.*, 268 B.R. 26, 52–53 (Bankr. S.D.N.Y. 2001) (considering whether other creditors not party to the two-party dispute were causing financial distress). Notably, these factors presume that a case can be dismissed where there are other creditors that could have to wait for judgment outside of bankruptcy.

[44] In the seminal *C-TC* case, the Second Circuit affirmed the decision of the lower courts' dismissal of a case where the "*main* purpose" was to relitigate. *In re C-TC 9th Ave. P-Ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) (emphasis added). The UCC Objection cites to *In re Slettleland*, 260 B.R. 657, 661-62 (Bankr. S.D.N.Y. 2001) and *In re Cohoes Industrial Terminal, Inc.*, 931 F.2d 222 (2d Cir. 1991) for the proposition that any intent to reorganize, however minimal, is sufficient to save a filing otherwise filed in bad faith. But these cases stand for no such thing. They clearly say that each debtor must have at least "*some* intent" as a *minimum* condition for a case to have been properly filed. *In re Cohoes Indus. Terminal*, 931 F.2d 222, 228 (2d Cir. 1991) (emphasis added). Each of the cases cited by the Objectors require an intent to reorganize, something Kwok does not (and cannot) have here, given there is no business to do so. Even if the mere possibility of an orderly liquidation could somehow qualify as "intent," that cannot cure the filing.

[45] *See supra* note 17.

[46] UCC Objection at 25.

course, no Objector cites any case in which a court has declined to dismiss a case filed in bad faith simply because a creditor had other legal protections against re-litigation.

29.     In discussing the *Rent-A-Wreck* decision, the UCC Objection severely misstates the argument of the Dismissal Motion.[47]  PAX does not dismiss the idea that there are theoretical cases in which a "centralization" could provide value to a debtor's estate—indeed, in the very next sentence after citing the *Rent-A-Wreck* case, the Dismissal Motion states exactly that.  But PAX has demonstrated that no such value is created by remaining in bankruptcy here, as required by the principle expressed in *Rent-A-Wreck*.  PAX vehemently disagrees with the UCC Objection's statement that the *Rent-A-Wreck* principle "has nothing to do with this case" because remaining in bankruptcy should never be value destructive as it would be here.[48]

30.     Finally, as a general matter, the Objectors completely disregard the mountain of cases (many cited in the Dismissal Motion or in other pleadings filed in this case) in which similar cases were dismissed under Bankruptcy Code section 1112 for the debtor's bad faith.  *See, e.g.*, *In re D&G Constr.  Dean Gonzalez, LLC*, 635 B.R. 232, 240 (Bankr. E.D.N.Y. 2021) (dismissing case where bankruptcy process is used "merely as a platform to delay the lawful exercise of state law rights and attack final orders of other courts. . . ."); *In re Mutty*, No. 04-10634, 2004 WL 2647705, at *7 (Bankr. D. Vt. Nov. 19, 2004) (dismissing case for failure to file accurate schedules with good faith and candor); *In re Wally Findlay Galleries (New York) Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. Feb. 10, 1984) (dismissing case where case was filed immediately after an adverse ruling in the underlying litigation in attempt to avoid the consequences of that ruling).[49]

---

[47] *See* UCC Objection at 18–19; Dismissal Motion at 25–26 (citing *In re Rent-A-Wreck of America, Inc.*, 580 B.R. 364, 373 (Bankr. D. Del. 2018)).

[48] UCC Objection at 19.

[49] The UCC Objection fails to distinguish the *Wally Findlay Galleries* case in arguing that "there was no suggestion that there were any creditors other than" the two creditors in the case.  UCC Objection at 20, n. 9.  The lack of any indication of other creditors resulted from that fact's *complete irrelevance*.  It is to absurd to suggest that an operating business in chapter 11 would have *only* those two creditors, or that a bad faith filing only results when if

*See also In re Reg 'l Evangelical All. of Churches, Inc.*, 592 B.R. 375, 389 (Bankr. D. Kan. 2018) (holding that where bankruptcy was essentially an attempt to thwart a creditor's recovery in state-court litigation dismissal is in the best interests of creditors and the estate because it allowed creditor to "seek the remedy to which it was entitled" under applicable nonbankruptcy law "without having to litigate the bankruptcy roadblocks which Debtor would erect if this case were not dismissed.").

31.     For their part, the Objections offer no case remotely similar to Kwok's in which a court chose not to dismiss a case.

### D. The Debtor's Estate Continues to Suffer Substantial/Continuing Loss, Requiring Dismissal Under Section 1112(b)(4)(A) of the Bankruptcy Code.

32.     The Objectors appear to only superficially dispute that that Kwok operates at a substantial and continual loss—no Objector provides any evidence that Kwok's estate is in stasis or increasing.  PAX's hope is to prove that Kwok owns at least the Lady May (a depreciating, floating asset) and an apartment at the Sherry Netherland, which was purchased for $67.5 million but has been publicly listed for sale at $38.5 million.[50]

33.     Principally, this cause for dismissal was made more salient due to Kwok's false and misleading disclosures that he had no income or assets, but even without crediting the Debtor's misrepresentations, Kwok necessarily incurs expenses and any income at present is funneled outside of the estate within his empire of shell companies and sham family transactions.[51]  While

---

the debtor intends to stymie *all* creditors with a judgment.  Dismissal occurs when the motive is to avoid a state court judgment, which each of the mentioned creditors had obtained.

[50] The StreetEasy listing for the Sherry-Netherland residence is attached to the Friedman Reply Decl. as Ex. 46.

[51] The Objectors are incorrect in arguing that accrual of administrative expenses such as professional fees does not constitute continuing loss.  *See Loop Corp. v. United States Trustee*, 379 F.3d 511, 516 (3d Cir. 2004) ("In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow—including that resulting only from administrative expenses—[. . .] is enough to satisfy the first element of § [1112(b)(4)(A)]." (citations omitted)); *In re Sakon*, 617 B.R. 7, 15 (Bankr. D. Conn. 2020) (where the estate has no hope of rehabilitation, no value to preserve in an operating business, and minimal income, "[t]he losses need not

creditors may be entitled to the fruits of those assets, the income is not clearly accruing to the estate at present, and Kwok cannot be allowed to hide those assets and income and yet still claim that his estate is benefitting from the chapter 11 case. In Kwok's world, he incurs all the expenses whereas any benefit to the estate's assets accrues to non-debtor family and affiliates.

### E. The Debtor's Gross Mismanagement of the Estate Requires Dismissal Under Section 1112(b)(4)(B) of the Bankruptcy Code.

34. The Objectors argue that PAX is focused on only prepetition instances of mismanagement, but PAX does not focus on prepetition conduct at all in the Dismissal Motion—everything PAX discussed, including Kwok's *continued* refusal to move the Lady May—occurred postpetition.[52] Aside from the Lady May, the Dismissal Motion noted misrepresentations to the court and continued failure to marshal other assets for the benefit of creditors during the pendency of the case, each of which were occurring after the Petition Date. But gross mismanagement is not at all limited to "ineptitude" as the UCC Objection suggests by citing to a non-binding South Florida case. Gross mismanagement, as set forth in the Dismissal Motion, is about acting as a fiduciary, where Kwok has demonstrably failed.[53] Indeed, it is clear that Kwok's use of resources is entirely for his own benefit and that of his family and shell entities, not for the benefit of creditors, as required of a fiduciary of the estate.

### F. Section 1112(b)(2)'s Unusual Circumstances Exception Does Not Justify Non-Dismissal.

35. The Objectors argue that "unusual circumstances" preclude dismissal.[54] This case is "unusual", but the fact that it is not run-of-the-mill does not shield it from dismissal. First,

---

be large—'[a]ll that need be found is that the estate is suffering some diminution in value.'" (quoting *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010)).

[52] The Dismissal Motion also covered cause for appointment of the trustee, in which case mismanagement is a factor that considers both prepetition and postpetition conduct.

[53] *See* Dismissal Motion at 36–38.

[54] UCC Objection at 9.

section 1112(b)(2) this provision is expressly not applicable to cause for dismissal where there is substantial and continuing loss under section 1112(b)(4)(A). Second, the provision requires a reasonable likelihood that a plan could be confirmed in a reasonable time, which, as set forth above, is a practical impossibility given the lack of funding and the requirement of PAX's consent. Third, section 1112(b)(2) requires that there be "reasonable justification" for Kwok's *behavior* that serves as the basis for dismissal, which would include his bad faith. The UCC Objection completely misreads the statute to mean that the filing itself must have a justification, pointing to preventing PAX from collecting on its judgment as the justification. But the filing itself is not what must be justified—it is the bad acts themselves that give rise to the bad faith.[55] The Objectors concede the behavior has been contemptible and provide no justification for it. Finally, as noted above, the Final Contempt Order has not been mooted, contrary to the claims of the Objectors.

## II.   EXAMINER

36.   Although an examiner never made sense for the reasons PAX previously articulated in the its objection to the Examiner/Trustee Motion, without funding to pay an examiner, invoking section 1104 for an examiner should be off the table. Based on the current motions before the Court, dismissal, conversion, or appointment of a trustee are the only options, and dismissal is far and away the best option for all stakeholders.

## III.   TRUSTEE

37.   If the Court does not dismiss the case, then a trustee must be appointed. Justice Ostrager's opinions in the New York Action demonstrate Kwok's wrongful behavior, and the intense acrimony among the parties is evident from the record. Conflicts among Kwok and his

---

[55] *See* 11 U.S.C. § 1112(b)(2)(B) (providing unusual circumstances exception where, inter alia, the grounds for converting or dismissing the case include an act or omission of the debtor . . . for which there exists a reasonable justification *for the act or omission*") (emphasis added).

affiliates' counsel are rife,[56] and Kwok has disclaimed any interest in playing a role as a chapter 11 fiduciary. The UCC Objection's argument against a trustee is based on the existence of DIP financing and in reliance on Kwok's representation that his family would come to the rescue to build consensus. Neither of these is on the table. Of course, appointing a trustee will not resolve the lack of funding that has doomed this case as originally envisioned by the Debtor and the Committee. Indeed, if contingency counsel is required by a trustee for funding purposes, its fees alone may outweigh the entirety of allowed claims other than PAX. Hence, as PAX will more fully address in its forthcoming pleading, dismissal is the correct remedy.

Dated: May 18, 2022
New York, New York

**Pacific Alliance Asia Opportunity Fund L.P.**

*By: /s/ Patrick M. Birney*
Patrick M. Birney (CT No. 19875)
Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
            asmith@rc.com

 -and-

 Peter Friedman
 Stuart M. Sarnoff
 **O'MELVENY & MYERS LLP**
 Seven Times Square
 New York, NY 10036
 Telephone: (212) 326-2000
 Facsimile: (212) 326-2061
 Email: pfriedman@omm.com
            ssarnoff@omm.com

---

[56] *See Complaint for Declaratory Relief*, ECF No. 204, *HK Int'l Funds Invs. (USA) Ltd., LLC v. Kwok* (April 11, 2022).

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2022, a copy of the foregoing was filed electronically through the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties receiving notice by operation of the court's electronic filing system. Parties in interest may access this filing through the Court's CM/ECF System.

/s/ *Patrick M. Birney*
Patrick M. Birney