**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>　　Ho Wan Kwok,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 22-50073 (JAM) |

**GOLDEN SPRING (NEW YORK) LTD.'S**
**STATEMENT IN SUPPORT OF ORDER SEALING EXHIBIT 1**
**FROM THE HEARING OF APRIL 27, 2022, AND**
**REQUEST FOR AN OPPORTUNITY TO BE HEARD**
**PRIOR TO ANY FURTHER ORDER OF THE COURT**

Golden Spring (New York) Limited ("GSNY"), by and through its undersigned attorneys, Cohn Birnbaum & Shea P.C., hereby files this statement in further support of this Court's order sealing Exhibit 1 from the evidentiary hearing conducted on April 27, 2022. GSNY's statement is as follows:

**INTRODUCTORY STATEMENT**

At an evidentiary hearing on April 27, 2022, this Court ordered Exhibit 1 ("Exhibit 1") sealed until further order of the Court. The Court sealed the exhibit at the request of GSNY, which expressed concern for the privacy rights of its employees. For the reasons set forth below, GSNY has substantial concerns about its employees' privacy and security. As a result, despite the withdrawal by creditor Pacific Alliance Asia Opportunity Fund L.P. ("PAX") of its Motion to Unseal Exhibit 1 on May 17, 2022 (ECF No. 388), and out of an abundance of caution in the event the Court is considering whether to act *sua sponte* on the issue, GSNY files this statement in further support of this Court's initial sealing of Exhibit 1. In the event that any party seeks to unseal

1

Exhibit 1 in the future, or the Court *sua sponte* considers unsealing Exhibit 1, GSNY requests the opportunity to appear and be heard before the entry of any such unsealing order.

## PROCEDURAL BACKGROUND

1.  On February 15, 2022, Ho Wan Kwok (the "Debtor") filed for relief under chapter 11 of the United States Bankruptcy Code. ECF No. 1.

2.  On March 16, 2022, the Debtor filed a motion to retain Verdolino & Lowey, P.C. as his financial adviser (the "Verdolino Retention Motion"). ECF No. 90.

3.  On March 22, 2022, the Debtor filed to obtain an interim order obtaining post-petition financing from GSNY (the "DIP Financing Motion"). ECF No. 117.

4.  On April 27, 2022, this Court conducted evidentiary hearings on the Verdolino Retention Motion and the DIP Financing Motion.

5.  During the hearings on April 27, PAX asked Craig Jalbert of Verdolino & Lowey to reveal the name of an employee of GSNY. GSNY objected to Mr. Jalbert responding on the record. After hearing argument from counsel, this Court directed Mr. Jalbert to write the name of the GSNY employee on a piece of paper. This Court then marked the page containing the name of the GSNY employee as Exhibit 1.

6.  In marking Exhibit 1, this Court ruled as follows:

    > Would you approach, please -- and thank you -- and hand that to the courtroom deputy and she will mark that. So we just need a minute to give the courtroom deputy time to make that exhibit. And I am indicating on the record it's 11:03 a.m. I'm marking Court's Exhibit 1 under seal until further order of the Court and that is so ordered on the record.

*Transcript of Proceedings, April 27, 2022,* at pp. 61-62.

7. The name of the GSNY employee that had been written by Mr. Jalbert was then disclosed to counsel for PAX, counsel for the United States Trustee, counsel for the Debtor, and counsel for GSNY. No other party was privy to the GSNY employee's name.

8. This Court concluded the evidentiary hearings on April 27 with no further discussion of the name of any GSNY employee and no party made any argument that related, directly or indirectly, to the named GSNY employee.

9. On May 4, 2022, PAX moved pursuant to 11 U.S.C. §§ 105 and 107 to unseal Exhibit 1. ECF No. 328. On May 18, 2022, PAX withdrew its motion (ECF No. 388) and advised GSNY that it would agree to take no position on a motion to keep Exhibit 1 under seal.

10. Currently pending before this Court is PAX's Motion to Dismiss the above-captioned bankruptcy case (the "Motion to Dismiss"). ECF No. 183. On May 11, 2022, after GSNY withdrew as his proposed DIP lender, the Debtor consented to the Motion to Dismiss. ECF Nos. 344-45. At a status conference on May 17, 2022, the parties indicated that no discovery was necessary regarding the Motion to Dismiss.

## THE SECURITY CONCERNS OF GSNY

11. The Debtor is a highly outspoken critic of the Chinese Communist Party (the "CCP"). *See Declaration of Mr. Ho Wan Kwok* ("Kwok Declaration"), ECF No. 107, at ¶13.

12. The Debtor has averred that he "lives[s] in continuous fear of retribution by the [CCP] for [his] outspoken criticism of its corruption and human rights abuses." *Id.*, at ¶4. The CCP has jailed and tortured the Debtor. *Id.* The CCP killed his brother. *Id.* It also detained, tortured and imprisoned many of his family members and former colleagues. *Id.*, at ¶16.

13. The Debtor has averred that his family has been subject to retribution by the CCP. He has stated:

> On January 10, 2015, Wu Zheng (a/k/a "Bruno Wu") advised me that my brothers, my wife, and my daughter had all been arrested in China. Bruno Wu is closely associated with top CCP officials and is a registered foreign agent of the CCP . . . and he is personally bankrolling (on behalf of the CCP) the litigation efforts of numerous plaintiffs against me. In early 2015, Bruno Wu, speaking on behalf of senior members of the CCP, called me to relay that my family would be released if I stopped publicly exposing CCP corruption and threatened that, if I did not comply, INTERPOL "Red Notices" would be issued for both me and my son and that I would be killed.

*Id.,* at ¶13.

14. GSNY is owned by another entity, which is owned by Qiang Guo, the Debtor's son.

15. Like the Debtor and his family, GSNY has been subjected to harassment and intimidation by the CCP.

16. The Director of Security for GSNY, an individual with more than 26 years of law enforcement and security experience, confirms that "GSNY personnel face serious threats daily, primarily from fanatical members of the [CCP.]" *See Security Report*, attached hereto as Exhibit A.

17. The Security Report states that GSNY's security department has obtained verbal and physical evidence confirming that "the perpetrators" are loyal supporters of the CCP and that their threats against GSNY employees have been verified by a former FBI consultant. *Id.* The report also confirms that unauthorized individuals regularly attempt to enter GSNY's offices and that individuals have had to be physically removed from the premises by the NYPD. *Id.*

*18.* GSNY's Security Report further confirms that there have been "numerous incidents of GSNY employees being followed, harassed, and physically threatened, and security escorts to and from the office have been necessary to ensure their safety." *Id.* The Security Report describes the stalking of employees, the need for employees to obtain restraining orders, and threats of gun violence against employees. *Id.*

19. Fanatical supporters of the CCP have resorted to espionage, harassment, and violence in the United States in support of their political ideology. In March 2022, the Department of Justice indicted five individuals related to efforts by the secret police of China to spy on Chinese Nationals in New York City. *See Department of Justice Press Release,* March 16, 2022, "Five Individuals Charged Variously with Stalking, Harassing and Spying on U.S. Residents on Behalf of the PRC Secret Police," attached hereto as Exhibit B.

20. Just four days ago, on May 15, 2022, a China-born U.S. citizen killed one man and wounded five others in California while acting on political grievances he held against the Taiwanese community. *See Wall Street Journal,* May 16, 2022, "California Church Shooting Suspect Was Upset About China-Taiwan Relations," attached hereto as Exhibit C.

21. The surreptitious activities of the CCP in the United States have directly concerned Debtor, its most outspoken opponent. Just two days ago, the Justice Department sued Steve Wynn for his failure to register as a lobbyist for the CCP. According to the complaint, attached hereto as Exhibit D, in an effort to protect his business interests in Macau, China, Wynn directly lobbied then President Trump and members of his administration on behalf of the former Vice Minister for Public Security of the CCP (Sun Lijun) and China itself (at the behest of President Xi) to persuade the U.S. Government to extradite the Debtor to China. *See generally* Ex. D. The importance of this suit against Wynn was underscored by the head of the Justice Department's national security division, who confirmed that the suit marks "the first affirmative civil lawsuit under FARA in more than three decades." *Wall Street Journal,* May 18, 2022, "Steve Wynn Sued by Justice Department," attached hereto as Exhibit E.

## ARGUMENT AND AUTHORITY

A. *Exhibit 1 Was Never Filed and Is Not Part of the Docket.*

22. There is a presumption of access to documents in judicial proceedings. In bankruptcy, this presumption is codified in 11 U.S.C. § 107. 11 U.S.C. § 107(a) provides:

> Except as provided in subsections (b) and (c) and subject to section 112, a paper *filed in a case* under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107 (emphasis added).

23. Exhibit 1 was never filed in the case and is not on the docket of this case.

24. 11 U.S.C. § 107(a) does not require that Exhibit 1 be open to examination because it is not on the docket and is not incorporated into any document that has been filed with the Court. *See In re Motions for Access of Garlock Sealing Techs. LLC,* 488 B.R. 281, 297 (D. Del. 2013), as corrected (Mar. 15, 2013) (ruling that statements were subject to § 107 because court orders required them to be "filed" with the Bankruptcy Court).

25. The docket is accurate, transparent, and complete without Exhibit 1. The accuracy of the docket does not require the unsealing of Exhibit 1.

B. *11 U.S.C. § 107(c) Confirms the Propriety of This Court's on the Record Sealing Order.*

26. 11 U.S.C. § 107(c) provides:

> (1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

27. Section 107(c) protects "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 750 (D. Del. 2018), aff'd sub nom. *In re A C & S Inc.*, 775 F. App'x 78 (3d Cir. 2019), *citing* 18 U.S.C. § 1028(d).

28. Unlawful injury can include injury resulting from the wrongful disclosure of private identifying information. *See In re Motions Seeking Access to 2019 Statements,* 585 B.R. at 750 (affirming the sealing of documents and citing transcript, stating: "[t]hey don't want to be harassed by third parties. They don't want to be harassed by insurance companies who aren't paying. They don't want to be harassed by so-called investment advisers. They signed up, not to have their social security numbers and their disease spread around the country or to their neighbors or anyone else").

29. Courts have discretion to strike an appropriate balance between access to information and privacy concerns. *See Stein v. Needle,* No. 2022 WL 1212822, at *1 (D. Conn. 2022) (final step is to balance the weight of the presumption against competing considerations against it). When striking this balance, the Court must consider the document at issue. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue . . . . Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure [sic] their irrelevance." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

30. In this case, the balancing of the competing interests of access to information versus privacy rights strongly favors the continued sealing of Exhibit 1. The document at issue was submitted to this Court on a motion to retain a professional. The document contains only a name. The name of GSNY's employee has no relevance to the retention application. Further, given the

current procedural posture of this case, it is possible that Court need not rule on the financial advisor's retention. The other matter at issue during the April 27 hearing, the DIP Financing Motion, was withdrawn prior to a ruling by this Court. ECF No. 345. In short, Exhibit 1 has played and will play no role in any decision in this case; nor will it be relevant to any issues of material fact in this case.

31. Given the current procedural posture of this case, there is no reason to unseal Exhibit 1, or even to consider unsealing it. The Debtor has consented to PAX's Motion to Dismiss. ECF No. 344. At a status conference on May 17, 2022, all parties agreed that there was no need for discovery on the Motion to Dismiss and there would be no contest over whether cause exists to grant the Motion to Dismiss. At this juncture, there is no reason to compromise the security and safety of GSNY employees by disseminating their names. That information is—and if the Motion to Dismiss is granted, will remain—irrelevant to this bankruptcy case.

32. On the other hand, the countervailing privacy interests of the individual involved are substantial. The privacy rights of this individual are *specifically* recognized by § 107(c) of the United States Bankruptcy Code. Exhibit 1 is unquestionably a "means of identification" as that term is used in § 107(c). Under the circumstances of this case, as shown by the Security Report and the Kwok Declaration, the unsealing of Exhibit 1 will create an undue risk of identity theft or other unlawful injury to the individual. In this case, the privacy rights of the individual involved far outweigh the presumption of access to an exhibit containing a single name that was never part of any public court record.

33. In sum, there is no legitimate reason to unseal Exhibit 1 and disseminate the individual's name. As confirmed by GSNY's Director of Security and substantiated by the Kwok Declaration: "[g]iven that the disclosure of GSNY employee names poses a serious danger to them

and their families, their names must be kept confidential." The consequences of revealing the information in Exhibit 1 could therefore be dire.

WHEREFORE, Golden Spring (New York) Ltd. provides this statement in support of this Court's order on the record sealing Exhibit 1 from the proceeding conducted on April 27, 2022, and requests an opportunity to be heard by the Court prior to the entry of any order unsealing Exhibit 1.

GOLDEN SPRING (NEW YORK) LIMITED

By   /s/ Timothy D. Miltenberger
Timothy D. Miltenberger (ct08874)
Scott D. Rosen
Cohn Birnbuam & Shea P.C.
100 Pearl Street, 12th Floor
Hartford, CT  06103
(860) 493-2262
Tmiltenberger@cbshealaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 19, 2022 a copy of the foregoing was filed electronically and will be sent by email to all parties by operation of the Court's electronic filing system to all appearing parties. Parties may access this filing through the Court's CM/ECF System.

                                                    /s/ Timothy D. Miltenberger
                                                    Timothy D. Miltenberger