# Exhibit UCC-11

# PAX's Amended Statement of Claim dated October 16, 2020 in Pacific Alliance Asia Opportunity Fund LP v. Genever Holdings Corp. et al, Claim No. BVIHCM 0137 of 2020 (Eastern Caribbean Supreme Court, Virgin Islands, Commercial Division)



**THE EASTERN CARIBBEAN SUPREME COURT**

**VIRGIN ISLANDS**

**IN THE HIGH COURT OF JUSTICE**

**COMMERCIAL DIVISION**

**Submitted Date:16/10/2020 10:47**

**Filed Date:16/10/2020 10:47**

**Fees Paid:112.91**

Claim No BVIHCM 0137 of 2020

BETWEEN

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND LP

Claimant

And

GENEVER HOLDINGS CORP
BRAVO LUCK LIMITED
KWOK HO WAN (also known as MILES KWOK, HO
WAN KWOK and GUO WEN GUI)
QIANG GUO (also known as QUO QIANG and
MILESON KWOK)

Defendants

---

**AMENDED STATEMENT OF CLAIM**

---

**THE PARTIES**

1   The Claimant (**PAX**) is an investment fund organised as an exempted limited partnership under the laws of the Cayman Islands.

2   The First Defendant (**Genever BVI**) is a company incorporated in the British Virgin Islands on 13 February 2015, having its Registered Office address at Intertrust Corporate Services (BVI) Limited, Ritter House, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands.

3   The Second Defendant (**Bravo Luck**) is also a company incorporated in the British Virgin Islands on 2 April 2013, having its Registered Office at Vistra (BVI) Limited (**Vistra**), Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands.

4   The Third Defendant (**Mr Kwok**) is a fugitive from Chinese justice, currently resident in the State of New York, United States of America, avoiding fraud, bribery and corruption, and money laundering charges in the People's Republic of China.

5   The Fourth Defendant is the Third Defendant's 33-year-old son, having been born on 22 February 1987 (**Mr Guo**).

6   As is pleaded more fully below, at all relevant times:

   (i)   The Third Defendant was the sole Director and Sole Shareholder of Genever BVI, as well as the holder of 50% of the shares issued by the Fourth Defendant after 26 January 2015;

   (ii)  The Fourth Defendant is and was the sole (registered) Director of Bravo Luck, but he acted at all relevant times as a mere cypher and nominee for his father, the Third Defendant who at all relevant times directed the activities of his son and Bravo Luck; and

   (iii) The Third Defendant therefore also acted as a de facto or shadow director of Bravo Luck, and the actions and knowledge of the Third Defendant are to be attributed both to Genever BVI and to Bravo Luck, whilst the actions and knowledge of the Fourth Defendant are to be attributed to Bravo Luck.

**KWOK'S LIABILITY TO PAX**

7   On or around 4 February 2008, Spirit Charter Investment Limited (**Spirit Charter**) entered into a loan facility agreement with PAX (the **2008 Loan Facility**). The principle amount of the loan advanced by PAX to Spirit Charter under the 2008 Loan Facility was US$30 million. Furthermore, Mr Kwok, as required by the 2008 Loan Facility, executed a personal guarantee of Spirit Charter's repayment obligations to PAX (the **2008 Guarantee**). The terms of the 2008 Loan Facility were amended on 12 March 2008 (the **Amended 2008 Loan Facility**).

8   Pursuant to a Deed of Settlement dated 17 September 2009 (the **2009 Deed of Settlement**), Shiny Times Limited (**Shiny Times**), a company controlled by Mr Kwok, assumed Spirit Charter's debt to PAX under the Amended 2008 Loan Facility. As at the date of the 2009 Deed of Settlement, the outstanding amount inclusive of unpaid interest pursuant to the Amended 2008 Loan Facility was agreed by the parties as US$45,357,534.25.

9   On 18 November 2009, as required by the 2009 Deed of Settlement, Mr Kwok entered into the terms of a new Guarantee (the **2009 Guarantee**) by which he reaffirmed his guarantee of the repayment obligations (assumed by Shiny Times) to PAX under the terms of the Amended 2008 Loan Facility.

10  On or about 12 March 2010, Shiny Times, PAX and Mr Kwok entered into a revised loan facility in which they agreed to extend the date for repayment of the debt from 12 March 2010 to 31 December 2010 (the **2010 Loan Facility**), which debt Mr Kwok continued to guarantee pursuant to the 2009

Guarantee. As at the date of the 2010 Loan Facility, the debt was agreed by the parties as US$47,625,410.96.

11    Having failed to repay the 2010 Loan Facility and with Mr Kwok's failure to perform his personal guarantee, the parties entered into a new loan facility on 16 March 2011, (the **2011 Loan Facility**), which superseded and replaced the parties' prior agreements pertaining to the outstanding debt to PAX. As at 16 March 2011, the outstanding amount, inclusive of unpaid interest due to PAX pursuant to the Amended 2008 Loan Facility, was agreed by the parties as US$46,426,489. The debt was to be repaid by 30 June 2012, but again Mr Kwok failed to so.

12    Also, on 16 March 2011, Mr Kwok entered into the terms of a third Guarantee (the **2011 Guarantee**) by which he personally guaranteed the liability of Shiny Times to PAX under the terms as revised by the 2011 Loan Facility. As at the date of this Statement of Claim, Mr Kwok's liability under the 2011 Guarantee stands at over US$112.3 million (exclusive of contractual enforcement costs).

13    Insofar as is material, by clause 2.1 of the 2011 Guarantee, Mr Kwok irrevocably and unconditionally:

    (i)    Guaranteed the due and punctual payment of the Obligations (as defined therein), and agreed that promptly upon demand he would pay to PAX all obligations that were due but unpaid.

    (ii)    Agreed To pay interest of the rate of 15% per annum accrued from 31 December 2010 to the date on which all such liabilities are paid in full.

14    By clause 5.3 of the 2011 Guarantee Mr Kwok additionally agreed to indemnify and hold PAX fully harmless from and against all and any costs, losses, expenses (including legal fees) and Obligations which PAX may incur as a result of the exercise or enforcement by PAX of any of the rights or powers conferred upon it under the Guarantee or by law.

15    Demand was made to the Mr Kwok for payment of the obligations thereunder on 16 October 2015, but that demand went unsatisfied.

16    In breach of his obligations under the 2011 Guarantee, neither Kwok as guarantor, nor Shiny Times as principal obligor (nor anybody on their behalf), has discharged the debt guaranteed by the 2011 Guarantee, or any part of it.

**THE DEEDS OF SETTLEMENT**

17    On 25 April 2012, following Shiny Times' failure to satisfy the 2011 Loan Facility, Shiny Times and PAX entered into a settlement agreement to which

Beijing Pangu Investment Company Limited (**Beijing Pangu**) (another entity controlled by Mr Kwok) was also a party (the **2012 Deed of Settlement**). It was agreed between the parties to the 2012 Deed of Settlement, and stated therein, that the total amount due to PAX inclusive of interest as at 25 April 2012 was US$52 million. The 2012 Deed of Settlement specified that the amount due to PAX would no longer be due or owing upon the satisfaction of the following:

(a) That Shiny Times make three instalment payments to PAX, each instalment in the sum of US$17,333,333; thereafter

(b) That PAX complete the purchase of three apartments in Pangu Plaza, Beijing, Peoples Republic of China (**PRC**) owned by Beijing Pangu (the **Pangu Apartments**); and

(c) That PAX pay Beijing Pangu the purchase price of the Pangu Apartments in RMB.

18  Shiny Times failed to make any of the three instalment payments as required by the 2012 Deed of Settlement and on 19 April 2013, Shiny Times, Beijing Pangu and PAX entered into a revised settlement agreement (the **2013 Deed of Settlement**). The parties to the 2013 Deed of Settlement agreed that the total amount due to PAX inclusive of interest as at 19 April 2013 was US$52 million. The 2013 Deed of Settlement also specified the amount due to PAX would no longer be due or owing upon the satisfaction of the following revised requirements:

(a) That PAX first complete the purchase of the Pangu apartments. The purchases were to take place in three separate transactions with a purchase price of approximately US$5 million each; thereafter

(b) That Shiny Times make three instalment payments to PAX of approximately US$5 million after the completed purchase of each of the Pangu Apartments.

19  Before the transactions specified at paragraphs 18(a) and 18(b) were to take place, however, Shiny Times and Beijing Pangu were required to satisfy a number of other conditions precedent relating to, *inter alia,* mortgage, tax and ultimately, title conveyance that were standard requirements in property transactions in the PRC (the **Conditions Precedent**). The 2013 Deed of Settlement specified that the Conditions Precedent were to be completed by 31 July 2013, failing which the 2013 Deed of Settlement would be terminated and the terms of the 2011 Loan Facility and the 2011 Guarantee would come back into full effect.

20  Shiny Times and Beijing Pangu failed to satisfy the Conditions Precedent by 31 July 2013 and were granted a series of extensions of time by way of supplemental deeds on 3 December 2013, 15 May 2014 and 11 July 2014.

        Except for the deadline for performance by Beijing Pangu and Mr Kwok, each of the supplemental deeds had the same terms as the 2013 Deed of Settlement (the **Supplemental Deeds of Settlement**).

21      On 10 February 2015, Shiny Times, Beijing Pangu and PAX entered into the final of the Supplemental Deeds of Settlement (the **Final Deed of Settlement**) to grant Mr Kwok and Beijing Pangu a further extension until 30 June 2015 to perform the Conditions Precedent. In breach of the Final Deed of Settlement, Mr Kwok and Beijing Pangu failed to perform the Conditions Precedent by the end of June 2015.

        (The 2012 Deed of Settlement, the 2013 Deed of Settlement, the Supplemental Deeds of Settlement and the Final Deed of Settlement collectively being the **Deeds of Settlement**).

22      All of the agreements set out in paragraphs 7 to 21 were governed by the laws of the Special Administrative Region of Hong Kong.

**THE NEW YORK PROCEEDINGS**

23      By a Complaint issued before the Supreme Court of the State of New York (the **NY Court**) on 18 April 2017 the Claimant commenced proceedings against Mr Kwok. Insofar as material, in those proceedings (the **NY Proceedings**):

    (a)    The Claimant:

        (i)    Has claimed against Mr Kwok the sums due under the Second Kwok Guarantee in the total sum of US$88 million at the time of filing (now, US$112.3 million with contractual interest that continues to accrue at 15% per annum, exclusive of contractual enforcement costs).

        (ii)    Has filed an interlocutory motion against Mr Kwok for a Pre-Judgement Order of Attachment of a valuable asset (the leasehold for a residential property in Manhattan, New York) held by Genever NY, which is in turn owned by Genever BVI and ultimately beneficially owned by Mr Kwok. The motion was brought on the basis that the corporate veils of those entities should be pierced and that they should be treated as assets of Mr Kwok to be fixed for the enforcement of a judgment in the substantive claim stated at paragraph 23(a)(i);

    (b)    Mr Kwok:

        (i)    Initially defended those proceedings on forum and jurisdictional grounds. His jurisdictional defence was ultimately resolved in the

    Claimant's favour by the First Department of the Supreme Court, Appellate Division by a ruling dated 5 April 2018.

  (ii) Thereafter, defended those proceedings on the basis that he had settled the debt that was due under the 2011 Facility and 2011 Guarantee by falsely asserting that he had substantially performed the 2013 Deed of Settlement.

  (iii) Notwithstanding paragraph 23(b)(ii), has very recently entirely reversed course and proceeded to dishonestly advance the false and disingenuous allegations that the various contracts relied upon in that action, including the 2011 Facility, 2011 Guarantee and the Deeds of Settlement, were documents that were not in fact executed by him, and even that they were forged by his Hong Kong-based solicitors in a conspiracy with the PRC Government.

24 On 15 September 2020 the NY Court entered Judgment for the Claimant on those proceedings for a sum to be assessed. When that sum is fixed by the NY Court, the Clamant will have the benefit of a final judgment for a definite sum of money which is enforceable in the British Virgin Islands at common law (the **NY Judgment**).

25 Accordingly, the Claimant expects to become a judgment creditor of Mr Kwok, Genever BVI and Genever NY in the NY Proceedings in a substantial sum, currently in excess of $112.3m together with interest accruing at 15% per annum, in addition to contractual enforcement costs. The Claimant will consent to these proceedings, or at least the quantification of its claims for damages, being stayed until the NY Court has fixed the amount payable under the NY Judgment.

26 Despite the representations which are pleaded below which Mr Kwok made to the Sherry Netherland as to his financial wherewithal, Mr Kwok has asserted in the NY Proceedings that he does not "in reality, under the law, own any assets in the United States" and that he has "not a penny left." It is therefore anticipated that he will not comply with the NY Judgment or any judgment given by this Court.

**THE CONSPIRACY**

27 Mr Kwok's liability to the Claimant under the 2011 Guarantee (and its anticipated liability under the NY Judgment) currently stands at over USD$112,300,000, exclusive of contractual enforcement costs.

28 Instead of discharging his obligations under the 2011 Guarantee, Mr Kwok diverted approximately US$68m to Bravo Luck (which was also approximately the total amount owed by Mr Kwok to PAX at that time) pursuant to a scheme hatched among the Defendants to conceal that money in an opaque structure involving Genever BVI so as to enable Mr

    Kwok to act in continued breach of his contractual obligations to PAX, while using the same amount of money due and owing to PAX at the time to purchase a luxury apartment in New York City, and, ultimately, to avoid enforcement of a judgment in the NY Proceedings.

29    On a date unknown to the Claimant until after disclosure, Mr Kwok arranged for approximately US$70m to be paid from assets of his into an account maintained by Bravo Luck with UBS AG (the **UBS Account**). He did so pursuant to the unlawful conspiracy pleaded below with the intention of defrauding his creditors and thereby causing loss to the Claimant by unlawful means.

30    Furthermore, on dates unknown to the Claimant until after disclosure herein, but after February 2015:

    (i)    The First, Second and Fourth Defendants induced, encouraged and facilitated Mr Kwok's various breaches of his contractual obligations to PAX; and

    (ii)    The Defendants all wrongfully conspired together with the sole or the predominant intention of injuring the Claimant and/or causing loss to the Claimant, to assist Mr Kwok in evading his liabilities under the 2011 Guarantee, and/or to attempt to render himself judgment proof and/or to cause loss to the Claimant by unlawful means.

31    The Claimant reserves the right to plead further to the Defendants' conspiracy after disclosure. Until then, the best particulars that the Claimant is able to give of this conspiracy are that:

**PARTICULARS OF CONSPIRACY**

    (i)    Genever BVI was incorporated at the behest of Mr Kwok on 13 February 2015 as a vehicle to hold shares in a company incorporated in New York, Genever Holdings, LLC (**Genever NY**). On the same day, Genever BVI allotted 1,000 shares to Mr Kwok, its sole shareholder.

    (ii)    There were no obvious advantages to the incorporation of Genever BVI to hold shares in Genever NY of which PAX is aware; the sole or predominant purpose of incorporating Genever BVI was to enable the beneficial ownership of Genever NY, and therefore of the Residence (defined below), to be concealed and shielded.

    (iii)    On 17 February 2015, Genever NY was incorporated at the behest of Mr Kwok in the State of New York. On or about the same date, Genever NY allotted all of its shares to Genever BVI pursuant to a Limited Company Agreement dated 13 February 2015.

(iv) Purportedly on that same day, 17 February 2015, Genever BVI (acting through Mr Kwok) and Genever NY purportedly executed a Declaration of Trust (the **Purported DOT**). By the terms of the Purported DOT:

   (i) Genever NY was said to be a special purpose vehicle holding the 18th floor property (Units 1801, 1804, 1807, 1809, 1811) at the Sherry-Netherland (the **Sherry Netherland**) Apartments, 781 Fifth Avenue, New York (the **Residence**).

   (ii) Genever BVI was said to be a special purpose vehicle holding Genever NY.

   (iii) Mr Kwok is said to have made it known to Bravo Luck that "*certain* [unidentified and undisclosed] *third parties may co-own*" the shares issued by Genever NY and/or the Residence.

(iv) Mr Kwok is said to have declared that he holds the shares issued by Genever BVI on trust for Bravo Luck.

(v) On 26 January 2015, Mr Guo caused Bravo Luck to allot 1 share to Mr Kwok, with the result that the registered shareholders of Bravo Luck were then Mr Kwok and Mr Guo in equal shares.

(vi) On a date currently unknown to the Claimant, Mr Kwok caused or arranged monies to be transferred into a bank account maintained by Bravo Luck with UBS AG Hong Kong (the **UBS Account**).

(vii) On 4 March 2015, Mr Kwok, having induced Bravo Luck and Mr Guo to allow him to unilaterally authorise payments from Bravo Luck's UBS Account arranged for Bravo Luck to transfer the sum of US$62,990,781.85 to Ivey Barnum and O'Mara LLC, the Sherry-Netherland's attorneys, in order to acquire the Residence in the name of Genever NY.

(viii) On 5 March 2015 the further sum of US$6.3m was transferred from the UBS account to Mr Guo, supposedly for his "*own expenses.*" Absent explanation, part of this sum is likely to have been a payment to Mr Guo to compensate him for his part in this scheme.

(ix) On 5 March 2015 Mr Guo delivered a bankers draft to the Sherry Netherland in the sum of US$3,369,000, paid out of the sums transferred to him from the UBS Account. That payment was routed through Mr Guo in an effort to enable Mr Kwok to conceal his beneficial ownership of Genever BVI, Bravo Luck and/or the Residence.

32 The Defendants took these steps notwithstanding the fact that:

(i) Mr Kwok came under an obligation to pay the Claimant the sum of US$46.2 Million under the terms of the 2011 Loan Facility and 2011 Guarantee on 16 March 2011, which debt had grown to over US$67m in February 2015 and continues to accrue interest at 15 percent per annum.

(ii) On 19 April 2013, Pangu came under an obligation to perform the Conditions Precedent and transfer title to the Pangu Apartments to PAX by 31 July 2013 in settlement of the 2011 Loan Facility and Second Guarantee under the terms of the 2013 Deed of Settlement. Three months previously, on 17 January 2013, Mr Guo had become a shareholder in Bravo Luck.

(iii) On 10 February 2015, Mr Kwok executed the Final Deed of Settlement in an effort to buy time to further and complete the conspiracy pleaded above, knowing full well that ultimately he would be unable to perform the same after the PRC authorities seized his assets (including Beijing Pangu) on or about 2 February 2015. Genever NY and Genever BVI were incorporated within just a few days after execution of the Final Deed of Settlement, on 13 February 2015 and 17 February 2015.

(iv) By the terms of the Final Deed of Settlement, Mr Kwok secured an extension to 30 June 2015 to perform the Conditions Precedent and transfer title to the Pangu Apartments to PAX, which enabled Mr Kwok to use (approximately) the same sum of money he owed PAX at the time to complete the purchase of the Residence on 6 March 2015.

**THE PURPORTED DECLARATION OF TRUST**

33 The Purported DOT is a fraud that was not executed on the date that it bears. Without prejudice to the other matters pleaded within this Statement of Claim:

(i) Genever NY acquired the Residence on 6 March 2015, yet gave its business address in the Purported DOT as being care of the Residence, notwithstanding the fact that the Purported DOT is said to have been executed almost three weeks earlier, on 17 February 2015.

*(ii)* The Purported DOT was also expressed in terms that suggested that Genever NY already owned the Residence at the time of its purported execution. That statement was demonstrably untrue: the Residence was not in fact purchased until 6 March 2015, some three weeks later. *Indeed, Mr Kwok had not even applied to purchase the*

> *Residence as of 17 February 2015; he first did so on 26 February 2015.*

  (iii) Despite the fact that it, if it was genuine, it would have been responsive to PAX's written document requests, the Purported DOT was not produced in the NY Proceedings until 22 April 2019 (months after the close of relevant attachment-related document discovery). Until that time, the consistent position of Mr Kwok, Genever BVI and Genever NY in the NY Proceedings was that Mr Kwok was the beneficial owner of the Residence; and that remained their position even after the Purported DOT was disclosed.

34 Furthermore, the Purported DOT is a sham that was not intended to have legal effect as between Bravo Luck and any of the parties thereto, but was devised for the sole purpose of concealing an asset of Mr Kwok from his creditors. In addition to the matters set out above, pending disclosure, the Claimants will rely upon the following additional matters:

**PARTICULARS**

(i) Over a year after the Purported DOT was supposedly executed, on and after 29 June 2016, Mr Kwok enquired of the Sherry Netherland whether he might be permitted to transfer beneficial ownership of the Residence to his son through a trust, conduct inconsistent and irreconcilable with any contention that such a trust in fact already existed as of 17 February 2015.

(ii) The consistent position of Mr Kwok, his witnesses in the NY Proceedings and his counsel was that he was the beneficial owner of the Residence. That position is consistent only with either the Purported DOT being a sham, or Mr Kwok being the sole beneficial owner of Bravo Luck.

(iii) The Purported DOT is inconsistent and irreconcilable with the representations made by Mr Kwok to the Sherry Netherland that he was the owner of the Residence, as well as the terms of the Proprietary Lease that Genever NY entered into with the Sherry Netherland.

(iv) Mr Kwok is and was the sole legal and beneficial owner of Bravo Luck. The Purported DOT therefore served no purpose other than to obscure and shield his beneficial ownership of Genever BVI and (indirectly) the Residence.

(v) In evidence in other proceedings, Mr Kwok has admitted that he holds an interest in other companies through his children. He has reason to do so:

      (i)    He has significant debts;

      (ii)   He is a fugitive from justice in the PRC, against whom forfeiture orders have been made in relation to his Hong Kong assets and in respect of whom there are active criminal investigations for conspiracy and money laundering.

35    Alternatively, and for the reasons already set out herein, the Purported DOT was a document intended to defraud the creditors of Mr Kwok, and it is therefore liable to be set aside pursuant to Section 81 of the Conveyancing & Law of Property Ordinance.

36    In the premises, each of the Defendants conspired together (and with Genever NY) with the sole or the predominant intention of injuring the Claimant and/or they conspired together to cause loss to the Claimant by unlawful means by creating a fraudulent, backdated document, intended to defraud the Claimant as a substantial creditor of Mr Kwok by giving the appearance of having divested himself of his interest in Genever BVI and having transferred that interest to Bravo Luck in circumstances in which:

      (i)    The legal and beneficial ownership of Bravo Luck was unknown to the Claimant, and was thought by the Defendants to be incapable of discovery by the Claimant; and

      (ii)   Even if the Claimant could discover that Mr Kwok was a shareholder of Bravo Luck, as it ultimately did, the Register of Members was intended to suggest that Mr Kwok was the legal and beneficial owner of only 50% of the shares issued by Bravo Luck.

**THE BENEFICIAL OWNERSHIP OF BRAVO LUCK**

37    The true position is that Mr Guo is and has always been a mere nominee for Mr Kwok and that Mr Kwok owns the whole of the shares issued by Bravo Luck beneficially. In consequence, the shares issued by Bravo Luck are an asset of Mr Kwok available to satisfy the NY Judgment and/or any judgment given in these proceedings. Alternatively, at least 50% of those shares are available to satisfy the NY Judgment and/or any judgment given in these proceedings.

38    Until disclosure, the best additional particulars that the Claimant is presently able to provide are that:

      (i)    Both in the NY Proceedings and to the Sherry Netherland itself, Mr Kwok has repeatedly asserted that he is the sole beneficial owner of the Residence. Unless that position was dishonest and untrue, it must follow that he is also the sole beneficial owner of Bravo Luck. Mr Kwok's assistant, Ms Wang also provided a sworn affidavit in

                those proceedings confirming that Mr Kwok was the beneficial owner of the residence.

       (ii)     Upon incorporation, Vistra's client of record was the law firm Stephenson Wong & Co. That is the same law firm that had acted on behalf of Mr Kwok, both is his dealings with PAG and elsewise since at least 2008.

       (iii)    With effect from 19 June 2017, Vistra's client of record changed from Stephenson Wong & Co to William Je of ACA Capital. William Je is a longstanding associate of Mr Kwok, as well as a shareholder in Beijing Pangu. Mr Kwok is the subject of an Interpol Red Notice in respect of multiple frauds committed by, inter alia, executives of Beijing Pangu who pled guilty to obtaining loans with fraudulent documents.

       (iv)    The source of the monies paid to acquire the Residence was Mr Kwok (monies which he diverted through Bravo Luck). The Residence is (or was) also the personal home and residence of Mr Kwok.

       (v)     On 4 March 2015 he arranged for Bravo Luck to transfer the sum of US$6,300,000 to the Fourth Defendant, who then paid US$3,369,000 of that money to the Sherry Netherland. There was no reason for that payment to be made through the Fourth Defendant if (as Mr Kwok now asserts) the Fourth Defendant was in fact the legal and beneficial owner of all of the shares issued by Bravo Luck.

       (vi)    Mr Guo is 33 years of age, and in 2015 he was 28 years of age, with no apparent significant work history or source of independent wealth.

39     In BVIHCM 137/2020 (the **Black Swan Proceedings**) Mr Kwok has produced a document purporting to be an Instrument of Transfer (the **Purported IOT**) which bears the date 12 May 2015 which, if genuine, would effectuate the transfer of Mr Kwok's 50% shareholding in Bravo Luck to the Fourth Defendant. That document:

       (i)      Is not genuine and was not signed on the date that it bears;

       (ii)     Was not delivered to the Registered Agent of Bravo Luck;

       (iii)    Was produced for the first time on 4 September 2020, and was never disclosed in the NY Proceedings despite being (if genuine) responsive to PAX's written document request, among others, demanding disclosure from Mr Kwok of all documents relating to

        any transfer of monies or assets with a fair market value in excess of US$1m from Kwok to any other person or entity;

    (iv)    Was not intended to have legal effect;

    (v)    Alternatively, it was designed to complete the arrangement pleaded herein by which the Fourth Defendant was to hold the shares issued by Bravo Luck on trust for Mr Kwok as his nominee;

    (vi)    If that is not correct, it is a document intended to defraud Mr Kwok's creditors which should be set aside.

40    The Defendants are each jointly and severally liable to the Claimant in damages for inducing the several and continuing breaches of contract of Mr Kwok as aforesaid under the 2011 Guarantee and under the various Deeds of Settlement and for conspiring to injure the Claimant as aforesaid.

### PARTICULARS OF LOSS AND DAMAGE

    (i)    A sum equivalent to the sums due under the 2011 Loan Facility and 2011 Guarantee, exceeding US$112.3 million as of the date of this Statement of Claim.

    (ii)    The interest that shall continue to accrue at 15% per annum upon the amount set forth in the above paragraph, under the terms of the 2011 Loan Facility and 2011 Guarantee.

    (iii)    The costs that the Claimant has incurred (and will incur) in its pursuit of proceedings against Mr Kwok in New York, and in relation to the steps that the Claimant has taken in this Court to protect the fruits of the judgment that it expects to obtain in New York.

41    Furthermore, the Claimant is entitled to a declaration that:

    (i)    The Purported DOT (and/or the Purported IOT) is a sham, invalid and of no legal effect; or

    (ii)    Alternatively, that both should be set aside as transactions intended to defraud Mr Kwok's creditors pursuant to Section 81 of the Conveyancing & Law of Property Act.

42    Further or alternatively, the Claimant is entitled to damages against each of the Defendants for conspiracy to injure and conspiring to cause loss to the Claimant by unlawful means in the sums already pleaded above.

**AND THE CLAIMANT CLAIMS**

1. As against Mr Kwok:

    (i) A declaration that any judgment given in the NY Proceedings which is final and for a definite sum of money will be enforceable against Mr Kwok in the BVI at common law; alternatively, the sum claimed under the 2011 Guarantee in the NY Proceedings as a debt; and

    (ii) Following the entry of the NY Judgment, a money judgment in respect of the sums due under the NY Judgment, together with interest accruing thereon and costs;

    (iii) The costs of these proceedings on a full indemnity basis pursuant to clause 5.3 of the 2011 Guarantee;

2. A declaration that the shares issued by Bravo Luck are held by the Fourth Defendant beneficially for the Third Defendant;

3. A declaration that the shares issued by Genever BVI and by Bravo Luck are assets of Mr Kwok that will be available to satisfy any judgment which the Claimant obtains against him in the proceedings in New York;

4. A declaration that the Purported DOT (and if necessary the Purported IOT) is invalid, void and of no legal effect;

5. Alternatively, an order setting aside the Purported DOT (and if necessary the Purported IOT);

6. Damages for conspiracy;

7. Interest thereon;

8. Such further or other relief as the Court might think fit;

9. Costs.

**ANDREW WILLINS**  
**TERENCE WONG**

**CERTIFICATE OF TRUTH**

The Claimant believes the facts stated in this Statement of Claim to be true. I am a director of the Claimant authorized to sign this statement on the Claimant's behalf.

Dated this 25th day of August, 2020
Re-Dated this 16th day of October, 2020

_____
JON LEWIS

FILED BY Andrew Willins of APPLEBY (BVI) Limited, Jayla Place, PO Box 3190, Road Town, Tortola, British Virgin Islands, VG1110. Legal Practitioner for the Claimant. Ref: AW.432766.0003.

Email: BVI-Litigation@applebyglobal.com

**THE EASTERN CARIBBEAN SUPREME COURT**
**VIRGIN ISLANDS**
**IN THE HIGH COURT OF JUSTICE**
**COMMERCIAL DIVISION**

**Claim No BVI HCM 0137 of 2020**

**BETWEEN**

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND LP**

Claimant

**and**

**GENEVER HOLDINGS CORP**

**BRAVO LUCK LIMITED**

**KWOK HO WAN (also known as MILES KWOK, HO WAN KWOK and GUO WEN GUI)**

**QIANG GUO (also known as QUO QIANG and MILESON KWOK)**

Defendant

---

**AMENDED STATEMENT OF CLAIM**

---

**APPLEBY**

Andrew Willins
Appleby (BVI) Limited
**Legal Practitioner for the Claimant**

Tel: +1 284 393 5323
Email: awillins@applebyglobal.com

Ref: AW.432766.0003

33769868v1