UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                          *   Case No. 22-50073(JAM)
                               *
     HO WAN KWOK,              *   Bridgeport, Connecticut
                               *   May 13, 2022
               Debtor.         *
                               *
* * * * * * * * * * * * * * *  *


TRANSCRIPT OF MOTION FOR PROTECTIVE ORDER
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                BENNETT S. SILVERBERG, ESQ.
                               JEFFREY L. JONAS, ESQ.
                               Brown Rudnick, LLP
                               Seven Times Square
                               New York, NY  10036

For the Creditor, Pacific      PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity     STUART SARNOFF, ESQ.
  Fund L.P.:                   LAURA ARONSSON, ESQ.
                               DAVID HARBACH, ESQ.
                               O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               PATRICK M. BIRNEY, ESQ.
                               Robinson & Cole LLP
                               280 Trumbull Street
                               Hartford, CT  06103




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES Cont'd:


For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the United States
                                  Trustee
                               The Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510


Proposed counsel for the       IRVE GOLDMAN, ESQ.
 Creditors Committee:          JOHN KAPLAN, ESQ.
                               Pullman & Comley
                               850 Main Street
                               Bridgeport, CT  06601


For Rui Ma, Zheng Wu and       CAROLLYN H.G. CALLARI, ESQ.
 Weican Meng, Creditors:       Law Firm of Callari Partners
                               One Rockefeller Plaza
                               New York, NY  10020


For HK International Funds      STEPHEN M. KINDSETH, ESQ.
 Investments (USA) Limited,     AARON ROMNEY, ESQ.
 LLC, Interested Party:        Zeisler & Zeisler
                               10 Middle Street
                               Bridgeport, CT  06604
```

1    (Proceedings commenced at 12:05 p.m.)

2         THE CLERK:  Case no. 22-50073, Ho Wan Kwok

3         THE COURT:  All right.  Before we take appearances

4    it's been noted to the court that there are people on Zoom

5    that might not have been authorized to be on Zoom.

6         I don't know -- we're going to deal with that but

7    motions specifically ask for specific people to be on Zoom.

8    And my understanding is that there are people that are on

9    Zoom that are not -- did not file a motion or did not --

10   weren't listed in a -- listed as a party who was going to

11   appear via Zoom.

12        Attorney Birney?

13        MR. BIRNEY:  Good afternoon, Your Honor.  Patrick

14   Birney, Robinson and Cole, on behalf of Pacific Alliance.

15        Your Honor, I will take permission for any

16   problems with that.  There are -- only the people that we

17   moved to appear via Zoom will have appearances in the case

18   and will be speaking.  But there were other PAX counsel who

19   were listening in and I shared this with them.

20        If that's inappropriate, we certainly could have

21   them drop off and call in the dial number.

22        THE COURT:  No, I mean, I'm not going to worry

23   about it today.  But I think, you know, in the future, so

24   that the record is clear -- I mean, these people, whether

25   they're appearing or not -- I mean, whether they're speaking

1    or not, they need to be noted for the record, right?

2           And so, again, as I'm sure you're all tired of me

3    saying, we only have audio for our record.  The bankruptcy

4    court is only allowed to keep its record via audio.

5           So when we allow people to appear remotely, it was

6    very helpful to have the names of the people that are being

7    requested to appear remotely.

8           But then if there are other people, then the

9    courtroom deputy and the staff don't know who they are

10   because they're not listed in motion.  And they have to try

11   to create a record, right.

12          So in any event it's fine.  But I'm going to make

13   everyone who's on Zoom -- whether they're going to speak or

14   not, they're going to have to note their appearance for the

15   record, okay?

16          MR. BIRNEY:  Understood, Your Honor.  Thank you.

17          THE COURT:  All right.  Thank you.

18          All right.  So let's take appearances for the

19   record, please, starting with the debtor's counsel.

20          MR. JONAS:  Good morning, Your Honor.  Jeff Jonas,

21   from Brown Rudnick.  With me is Ben Silverberg on behalf of

22   the debtor.

23          THE COURT:  Good afternoon to both of you.

24          MR. ROMNEY:  Good morning, Your Honor.  Aaron

25   Romney, Zeisler and Zeisler.  With me is my partner, Stephen

1    Kindseth on behalf of HKI International Funds Investments

2    Delaware LLC and Ms. Mei Guo.

3              THE COURT:  Good afternoon to both of you.

4              MR. KAPLAN:  Good afternoon, Your Honor.  Jonathan

5    Kaplan, of Pullman and Comley, along with Irve Goldman on

6    behalf of the Committee of Unsecured Creditors.

7              THE COURT:  Good afternoon to both of you.

8              MS. CLAIBORN:  Good afternoon.  Holley Claiborn

9    for the U.S. Trustee.

10             THE COURT:  Good afternoon.

11             MR. BIRNEY:  Good afternoon, Your Honor.  Patrick

12   Birney, Robinson and Cole, on behalf of PAX. With us joining

13   via the Zoom platform, pursuant to your motion, is Attorney

14   Peter Friedman, Stuart Sarnoff and Laura Aronsson of the

15   O'Melveny Myers firm -- O'Melveny and Myers, sorry.

16             THE COURT:  Thank you.  Good afternoon to you as

17   well.

18             I see other people and then there are other people

19   that were there before but I don't know if they're there

20   anymore.  But in any event Attorney Callari, I see you and I

21   know there was a motion filed to allow your appearance via

22   Zoom.

23             So if you would note your appearance for the

24   record, please.

25             MS. CALLARI:  Certainly, Your Honor.  Good

1  afternoon. Carollynn Callari on behalf of Rui Ma and yes,

2  Your Honor, Your Honor granted my appearance (indiscernible)

3  today.  Thank you very much.

4         THE COURT:  Thank you.  All right. I don't see

5  anybody else at this point.  I don't know -- oh, is Mr.

6  Harbach on the phone?

7         MR. HARBACH:  Yes, Your Honor.

8         THE COURT:  Mr. Harbach, I need you to note your

9  appearance for the record, please.  Or did you do that, Mr.

10  Birney, and I missed it. I'm sorry.

11         MR. HARBACH:  I did not, Your Honor.

12         THE COURT:  Okay.  Mr. Harbach.

13         MR. HARBACH:  Yes, Your Honor.  It's David Harbach

14  for PAX, also with O'Melveny and Myers.  And I dialed in by

15  phone.

16         THE COURT:  Okay.  Thank you.

17         All right.  Is there anyone I missed as far as

18  appearances are concerned?

19         Okay.  Thank you.

20         All right.  On the calendar today then is the --

21  what we scheduled for a hearing because there was a request

22  that it be scheduled on an expedited basis.

23         THE CLERK:  Your Honor, I'm sorry to interrupt

24  you, but there's two people in the waiting room that just

25  called in but they're only -- they haven't put their names

1  so I don't know who they are.

2         THE COURT:  Okay.

3         THE CLERK:  Do you want to --

4         THE COURT:  Why don't you ask them who they are

5  and then we'll see who they are.

6         THE CLERK:  Okay.  Thank you.

7         THE COURT:  Thank you.

8         THE CLERK:  You're welcome.  Now I don't see them.

9  Oh, wait here they go. I see them now.

10        Good morning.  This is the courtroom deputy. I'm

11 speaking to the person's whose phone number is 143-671-5954.

12 I just need your name to identify for the court.

13      (No response.)

14        THE CLERK: I think they dropped off.

15        THE COURT:  All right. And I think the other party

16 dropped off apparently, too.

17        So then they'll either have to wait in the waiting

18 room or call on the public access line.

19        Okay. Let's proceed with the motion for a

20 protective order.  Counsel?

21        MR. ROMNEY:  Thank you, Your Honor.  Aaron Romney,

22 Zeisler and Zeisler, on behalf of HK International.

23        Before I address the --

24        THE COURT:  Well, you say HK International.

25 Aren't you representing --

8

1          MR. ROMNEY:  And Ms. Guo, its principal.

2          THE COURT:  And could you state her name and spell

3     it for the record please.

4          MR. ROMNEY:  M-E-I G-U-O.

5          THE COURT:  Okay.  And just so I'm clear, it's a

6     notice of deposition -- excuse me, of Ms. Guo individually,

7     not HK International isn't it?

8          MR. ROMNEY:  Individually and as a 30(b)(6)

9     witness of HK International.

10          THE COURT:  Okay.  Go ahead then, please.  Thank

11     you.

12          MR. ROMNEY:  Thank you, Your Honor.

13          Before I address the substance procedurally a

14     number of things have changed in this case since the time we

15     filed our motion, notwithstanding that it was just on May

16     10th, this past Tuesday.

17          In light of those developments we suggest that the

18     interest of efficiency weigh heavily in favor of continuing

19     this motion until the tail end of the status conference that

20     the committee requested as early as this morning, which was

21     docket number 359.

22          THE COURT:  I think it was less than an hour ago

23     that it was requested.

24          MR. ROMNEY:  Correct, Your Honor.

25          And, Your Honor, in sum and substance, since the

1    time we filed our motion for a protective order, when we had

2    every intention of going forward with the deposition subject

3    to the restrictions that the court entered in response to

4    this motion, the debtor has taken the position that it no

5    longer opposes dismissal.

6         The DIP lender has withdrawn its motion to fund

7    this case and creditors have opposed the motion to dismiss

8    for a variety of reasons, but they ultimately boil down to a

9    completely different issue that was before the court as of

10   Tuesday morning, when the debtor wanted to proceed and the

11   DIP lender wanted to fund.

12        The issue now on the dismissal motion, as Mr.

13   Goldman articulated this morning in his request for a status

14   conference, is really whether notwithstanding the debtor's

15   consent to dismissal, the interests of creditors weigh in

16   favor of continuing to keep this court in bankruptcy in one

17   form or another.

18        And we would respectfully submit that with the

19   issue being what it is, Ms. Guo's testimony will likely be

20   completely irrelevant to the dismissal motion which is the

21   motion that the deposition notices were issued in connection

22   with.

23        So rather than sitting here today taking up all

24   these people's and the court's time trying to figure out the

25   logistics in a very unique situation regarding a deposition

1    that may never happen, we would submit that if we continue

2    this motion for several days, we schedule it for the same

3    time as the status conference, we give everyone a little

4    time for the dust to settle and absorb the implications of

5    the developments that happened over the last 72 hours, we

6    would all be in a better position to address these issues or

7    know that they simply no longer need to be addressed.

8              THE COURT:  Okay.  Anything further?

9              MR. ROMNEY:  If the court is inclined to continue

10   the status conference for the reasons I just stated, we

11   would then --

12             THE COURT:  What status conference?  This is a

13   hearing on a protective order.

14             MR. ROMNEY:  If the court is inclined to grant the

15   relief I just requested, which is a continuance for a motion

16   for a protective order -- I apologize, Your Honor. I

17   misspoke.

18             THE COURT:  That's okay.  The record's got to be

19   clear.

20             If the court were inclined to grant a brief

21   continuance of this matter, I would then reserve my rights

22   on argument to the extent we actually have to have a motion

23   on a -- to have the substance of the motion for a protective

24   order heard, Your Honor.

25             THE COURT:  Okay.  Thank you.

1       MR. ROMNEY:  Thank you, Your Honor.

2       MR. FRIEDMAN:  Your Honor, it's Peter Friedman for

3  PAX from O'Melveny and Meyers.  May I be heard?

4       THE COURT:  Yes, please.

5       MR. FRIEDMAN:  So, Your Honor, we don't fully

6  agree with what counsel just argued. And I think the reasons

7  are we do believe that people have challenged some of the

8  *prima facie* evidence that we put forward with respect to

9  whether dismissal is appropriate.

10      And I think people have also said -- argued in

11  their papers that we don't meet the test for appointment to

12  the trustee, which I think in my view dismissal or a trustee

13  is inevitable now and we do believe that the evidence that

14  will go forward at the hearing a week from Wednesday would

15  be pertinent to both issues.

16      And so I think given that there's not a huge

17  amount of time between now and the 25th, it's important for

18  us to be able to take depositions in an efficient matter on

19  the limited days that remain.

20      And I will say that counsel for Mei Guo and HK

21  International has been more cooperative than any other party

22  on the debtor's side in terms of scheduling and making

23  witnesses available and being responsive to discovery. So

24  I'd be remiss not to point that out.

25      Other parties have not been nearly as cooperative

1    or in our views complied with their discovery obligation.

2         We don't know when a status conference will be

3    heard. I will say, Your Honor, as I'd assume you'd expect,

4    Mr. Goldman and I have conferred this morning and we would

5    propose that the status conference be heard Tuesday.

6         It is possible by that time we might be able to

7    reach agreements that we would propose to Mr. Goldman and

8    other parties that moot the need for discovery.  We might

9    not be able to.

10        But I think pushing off the motion to quash/motion

11   for protective order really with respect to the conditions

12   under which this deposition take place I think will further

13   jam everybody.

14        So I think -- and we're prepared to go ahead with

15   it today.  You know, we are willing, as an accommodation to

16   the fact that it may ultimately become necessary, to push

17   off the actual taking of the deposition until Wednesday if

18   committee counsel is okay with that. I notice they also

19   filed an objection to our -- I'm sorry. A joinder/proposed

20   their own conditions on the taking of the deposition.

21        But we do think it's important to have that teed

22   up.  And to the extent the court does wish to hear argument

23   on that, I would defer to Ms. Aronsson to make the argument.

24        You know, counsel for the committee and I had a

25   discussion on a range of issues.  We do think that if the

13

1    court's available on Tuesday, we think it would be useful to

2    hold the status conference then. I would attend that

3    conference in person at any time that the court wishes to

4    hold the hearing, if Tuesday's possible.

5         We would prefer not to have it -- and I apologize

6    to the court for mixing two issues at once, but I do think

7    there have been substantial developments that have occurred

8    over the last 72 hours.

9         And we do think that holding that hearing as soon

10   as possible is really important in light of the current date

11   of the 25th, which certainly at this point we don't intend

12   to extend our time frame and believe it's important to keep

13   moving on that.

14        THE COURT:  Okay.  Thank you.

15        Is there anyone else that wishes to be heard?

16        MR. GOLDMAN:  Yes, Your Honor.  Irve Goldman on

17   behalf of the committee.

18        I do agree with Mr. Friedman's proposal to not

19   continue this hearing.  And I can confirm that what he

20   articulated as far as our discussion is morning is accurate.

21        I believe it was productive and I think that if we

22   were able to have a status conference on Tuesday, that would

23   give us a couple of days to further develop what we were

24   talking about in terms of a resolution.

25        I do not agree that the only options on the table

14

1    now are dismissal or the appointment of a trustee,

2    especially in light of what occurred.  Conversation should

3    be given very serious consideration in this case for the

4    reasons I -- for many of the reasons I mentioned in our

5    opposition to the motion to dismiss.

6          But we're certainly willing to discuss a

7    resolution and that's what we would do, given the time until

8    Tuesday if Your Honor could accommodate that.

9          If Your Honor decides that we should argue this

10   motion, I would defer to Mr. Kaplan to do that.

11         THE COURT:  Okay.  Anyone else wish to be heard?

12         MS. CALLARI:  Your Honor --

13         THE COURT:  I'm sorry, Ms. Callari.  Could you

14   just hold your thought for a moment. Mr. Jonas is standing,

15   so I'm going to hear from him first.  Okay?

16         Go ahead, Mr. Jonas.

17         MR. JONAS:  Thank you, Your Honor.  Good

18   afternoon, Your Honor.

19         THE COURT:  Good afternoon.

20         MR. JONAS:  Jeff Jonas, Brown Rudnick, for the

21   debtor.

22         I don't have a lot to add except simply to say for

23   the record, Your Honor, as I think you know at docket no.

24   344 the debtor did file a consent to dismissal of the case

25   responding to PAX's motion.

15

1            And at docket 345 the debtor filed it's withdrawal

2     of the DIP motion. I just want to note those for the record

3     and for the court.

4            I'm happy to come back on -- there is quite a few

5     things in flux in terms of discovery and I'm happy to come

6     back on Tuesday if it's convenient for the court to discuss

7     wherever we are at that point.

8            So thank Your Honor, Your Honor.

9            THE COURT:  Okay.  Thank you.

10           Ms. Callari?  Oh, I'm sorry.  Hold on one second.

11           (Pause.)

12           THE COURT:  All right. I'm sorry. I guess there

13    was a technical difficulty there but in any event, Ms.

14    Callari?

15           MS. CALLARI:  Thank you, Your Honor.  Carol

16    Callari again for Rui Ma.

17           Your Honor, I would echo Attorney Goldman's

18    comment.  We do think that the issues have changed and a

19    status conference would be warranted.

20           And that a serious consideration of conversion is

21    warranted and the type of discovery that now would be needed

22    in connection with a PAX motion and the new issues before

23    the court are different.

24           But it likely will be necessary so I would agree

25    with Mr. Friedman that this motion today should go forward

16

1   so people understand the parameters and we can get some

2   preliminary matters out of the way so we can move forward

3   once petitions are made, Your Honor.  Thank you.

4            THE COURT:  Thank you.

5            So let me just ask Mr. Friedman a question before

6   we go any further. I just want to make sure I understood

7   what you said, Attorney Friedman.

8            You'd like the court to rule on this motion today

9   but if the court rules, you're not going to conduct the

10  deposition as scheduled on Monday the 16th?.  You would

11  conduct it on Wednesday, the 18th or some day after that?

12           MR. FRIEDMAN:  We would try to conduct it first

13  thing on Wednesday, the 18th, Your Honor.  We don't want to

14  do unnecessary discovery but we feel it's important to know

15  the parameters if we wind up -- you know, I don't know

16  whether there are technical issues that would need to be

17  addressed in advance or there are vendor issues.

18           So we would want the additional time to be able to

19  prepare for a deposition in advance.  If the court's

20  conclusion is otherwise -- as the court knows there are some

21  things that I feel like on a scale of one to ten, ten very

22  strongly about, I will -- obviously, if the court concludes

23  in your view as a matter of judicial efficiency you'd rather

24  have it argued Wednesday, I'd defer to the court's judgment

25  and how the court believes its time is best used.

1          THE COURT:  Well, thank you.  Does anyone else

2     wish to be heard?  I have some questions but is there any

3     other argument that anyone would like to make?

4          MR. ROMNEY:  Your Honor, if I may. Aaron Romney

5     for HKI and Ms. Guo.

6          The only additional thing I would add here I

7     believe we can make Ms. Guo available for a deposition on

8     Wednesday, thereby putting the deposition on the other side

9     of a status conference if the court is able to schedule one

10    in the first part of this week.

11         We are not -- our motion for a protective order is

12    not saying -- or at least wasn't as of Tuesday saying that

13    she shouldn't be deposed.  So if the court orders it go to

14    forward, we will absolutely prevent her.

15         What we are saying is that the dynamic has shifted

16    and I believe it would be more favorable certainly --

17    frankly, for all parties to be able to process what is the

18    playing field so we can properly present the issue of the

19    protective order to the court based upon the dynamic that

20    wasn't when we filed this motion.

21         We're only asking for a few days and as we are

22    going to make the witness available, if that's what needs to

23    happen and Wednesday will work for us and given the dynamic

24    it just -- fundamental issues of fairness I would say weigh

25    in favor of allowing us a few days to process the

1    information and how they weigh on the issue of whether or

2    not this deposition should go forward.

3          THE COURT:  Okay. But doesn't a party conducting

4    the deposition have to be prepared for what the -- how the

5    deposition is going to be conducted?

6          You filed the motion for a protective order, which

7    is absolutely allowed under the Federal Rules of Civil

8    Procedure and asked for an expedited hearing.

9          If you're saying we're going to continue this

10   until I think you're saying until whenever the status

11   conference may be and you're all looking to Tuesday, then

12   how is the party who is taking the deposition going to know

13   how the deposition's going to be conducted?

14         I mean, they're not going to know until 12 hours

15   before it starts.

16         MR. ROMNEY:  That's correct, Your Honor.  Though

17   the issues presented at least in the protective order -- the

18   motion as of Tuesday when we did not think the possibility

19   of the deposition not going forward was on the table, the

20   issues presented in the motion before the court now are

21   logistical in nature, primarily whether or not this

22   deposition is going to be conducted via video or just audio

23   and if video -- whether that video can be recorded.

24         THE COURT:  I don't know how a deposition can be

25   conducted by just audio.  I don't under -- I've looked at --

19

1    it seems to me the real issue on this protective order, the

2    real dispute is the image of the -- what your concern is the

3    image of the deponent, right?  You don't want it to be on

4    video.

5            MR. ROMNEY:  Correct, Your Honor.

6            THE COURT:  Well, then -- and the court reporter

7    isn't going to be in the same room, at least that's what my

8    reading is.  Is that correct?  The court reporter isn't

9    going to be in the same room?

10           MR. ROMNEY:  That was my understanding though it

11   hasn't been worked out one way or another.

12           THE COURT:  That doesn't make any sense to me,

13   right?  Either the person appears via video that everybody

14   can see so that everybody knows it's that person, or

15   somebody's got to be in the room with her, including maybe

16   the person taking the deposition.

17           So to me it doesn't make any sense to -- if the

18   only dispute, and I think reading the papers quickly,

19   counsel, okay -- as you know everything has been filed in

20   the last -- less than 48 hours, right?

21           I think the dispute is that -- and I agree with

22   you that most of it is logistic, but some of it substantive,

23   right?  How are -- if you're going to conduct a deposition,

24   you have to make sure that the person being deposed is that

25   person.

1          MR. ROMNEY:  Of course.

2          THE COURT:  And so if there's no one in the room

3     with the person being deposed, and the person's only going

4     to speak over audio, then how could that be confirmed that

5     it's that person?

6          The logistics about the court reporter logging in

7     ten minutes before doesn't work because you could have

8     somebody sit there who is the right person with the court

9     reporter and then ten minutes later it could be somebody

10    else.

11         So I'm not going to allow that regardless of how

12    we proceed. It's either going to be that some -- that she

13    appears via video or somebody's there with her in the room.

14    And that's how it's going to proceed.

15         Otherwise, the credibility and the weight given to

16    that evidence is not really going to be helpful to the

17    court.  And that's a waste of judicial resources, okay?

18         So you may all want to talk about that.  Your

19    issue -- you question is whether I was going to rule on it

20    today.  You know, I could rule on it today. I think I've

21    basically told you what my ruling's going to be, which is if

22    this person is being deposed, there was a subpoena issued,

23    the protective order and the only dispute left that I see,

24    but I'm -- everybody else should correct me if I'm wrong,

25    while it appears technical, and certainly part of it is, in

1    my view it's not just technical. It goes to the weight and

2    credibility of the evidence.

3         I don't know -- I've never seen a deposition where

4    somebody isn't physically looking at the person and they

5    only ask questions over audio and there's no -- it just

6    doesn't make any sense to me.  It doesn't.

7         I understand the concerns you've raised and I

8    think they can be addressed in different ways.  The person

9    can be asking questions in the same room with the deponent

10   and the deponent doesn't have to be on camera, and then

11   you've got a stenographer taking down what's being said but

12   I'm not going to have the person be in -- wherever the

13   person may be without anyone being able to witness that

14   that's the person who's saying the words that are being --

15   and answering the questions that are being asked.

16        So that is not going to happen. If you want time

17   to talk about these issues with PAX and the committee,

18   that's fine.  I have no problem with that.

19        But to me anyway those were the last issues that I

20   saw. And I appreciate the parties working together to try to

21   resolve the issues.

22        But am I correct that that's the only issue that

23   you need to have addressed as far as a protective order is

24   concerned?

25        MR. ROMNEY:  Not entirely, Your Honor.

1          THE COURT:  All right.  So what else?

2          MR. ROMNEY:  Well, a related issue. If the

3    deposition were to go forward on a video, whether or not

4    that video would be recorded as opposed to just audio

5    recorded I believe that is --

6          THE COURT:  Well, didn't I just describe a way to

7    solve that problem?

8          MR. ROMNEY:  Correct, which would involve having

9    the witness in the same room as --

10          THE COURT:  And what's the problem with that?

11          MR. ROMNEY:  I believe the primary concern with

12    that is COVID considerations.  The witness --

13          THE COURT:  Put a mask on like we're doing right

14    now, right?

15          MR. ROMNEY:  I understand that, Your Honor, and

16    different people have different levels of sensitivity with -

17    -

18          THE COURT:  Well, that's not going to be enough

19    for a protective order, counsel.  You know, you're going to

20    have to have doctor's note and all those kinds of things. I

21    mean, we're not -- you know, the --

22          MR. ROMNEY:  I understand, Your Honor.

23          THE COURT:  -- Federal Rules of Civil Procedure

24    govern.

25          MR. ROMNEY:  The other issue that was not an issue

23

1    as between Ms. Guo and PAX, but I believe was raised by the

2    committee this morning or yesterday evening is to whether

3    the witness could be required to testify about her location,

4    where she resides, as well as those of other family members.

5              As we have made clear and I think illustrated and

6    substantiated with substantial evidence, this is not a

7    typical circumstance.  This is not a typical deposition.

8              THE COURT:  What evidence?

9              MR. ROMNEY:  We have a witness --

10             THE COURT:  What evidence are you talking --

11             MR. ROMNEY:  -- who's been imprisoned and tortured

12    and who is clearly being watched by people who have

13    threatened her physical safety with heinous acts.

14             THE COURT:  I don't have any evidence of that in

15    this record, counsel.  I have Mr. Kwok talking about what

16    happened to him. But I don't have any evidence about your

17    client.

18             MR. ROMNEY:  We have attached the social media

19    posts.  Granted they're not in English, but we have --

20             THE COURT:  Also that's not evidence at this

21    point.  That's not evidence.

22             MR. ROMNEY:  I understand, Your Honor.  And this

23    is not an evidentiary hearing but it's a discovery motion.

24             THE COURT:  I understand but you just said there's

25    evidence that -- and there isn't any evidence.  Not at this

24

1    point.  There might be but there isn't at this point.  And

2    that's not what your protective order said.

3          All your protective order -- what you wanted in

4    these paragraphs were this issue about it not being

5    videotaped.  Okay. I can understand that.

6          So then I suggested a solution.  You could come up

7    with another one.  But your client's not going to be

8    somewhere where nobody else is.  That's not going to happen.

9    It doesn't make sense.

10         It's not valid testimony if no one can witness

11   that the person who answered the question was the person

12   sitting there answering the questions.  That's, as I said, a

13   waste of judicial resources, and all of your time, by the

14   way.

15         MR. ROMNEY:  Well, Your Honor, respectfully, we

16   did propose presenting her to the court reporter to verify

17   her identification.

18         THE COURT:  I just told you why that didn't work,

19   counsel.

20         MR. ROMNEY:  But I understand what the court has

21   said.  The separate issue that I raised, which I believe is

22   in the motion, as well as our proposed order, did include

23   language and I believe PAX's proposed order also included

24   language about the witness not having to testify about where

25   she lives or her family members are for safety issues.

25

1          THE COURT:  That's fine. I didn't say anything

2     about where she lives.  That wasn't what I said, right?  I

3     don't have a problem with that.  If you all agree she

4     doesn't have to testify where she lives, that's fine.

5     That's your agreement.

6          But the issue of her being somewhere where no one

7     else is is not going to work.

8          MR. ROMNEY:  Understood, Your Honor.

9          THE COURT:  Okay?

10          MR. ROMNEY:  Thank you, Your Honor.

11          THE COURT:  All right.  So how are we proceeding

12     then?  Are we ruling on this motion today, as I just

13     basically stated what would be my ruling, or are we

14     continuing it to a conference, which I haven't even read --

15     I mean, I understand why the committee's asking for a

16     conference. I don't know what it said, Attorney Goldman, yet

17     because I haven't seen it -- I mean, I haven't read it. I

18     know it's been filed in the last hour.

19          And I understand that things have changed in the

20     last few days.  But there's still an evidentiary hearing

21     scheduled for whatever -- May 24th, 5th, 6th, whatever the

22     days are. I'm sorry. I don't have them right in front of me.

23     And you asked for and obtained an expedited hearing on your

24     protective order.

25          So how should we proceed?

1          MR. ROMNEY:  Any, Your Honor, thank you for

2     providing us the hearing on the expedited basis.

3          We hear Your Honor loud and clear.  What I would

4     ask and propose is renew my request to continue a ruling on

5     this hearing until the status conference.  During that time

6     I will confer with counsel.

7          I agree with Mr. Friedman's characterization that

8     we have had productive dialogues.  We're all professionals

9     who understand our obligations.  And I hear you loud and

10    clear and I believe that given the guidance from the bench

11    today that we will be able to work something out and on

12    terms that everyone will be satisfied with.

13          THE COURT:  Okay. Thank you.

14          Attorney Friedman?

15          MS. ARONSSON:  Your Honor, if I may be heard.

16    Laura Aronsson from O'Melveny.

17          THE COURT:  Yes.  Go ahead.

18          MS. ARONSSON: I just want to reiterate we did not

19    intend to seek further security concerns for Ms. Guo.  And I

20    just wanted to be heard briefly on the video recording.

21          We just wanted to state that although we believe

22    that Ms. Guo is likely in the subpoena power of this court,

23    we think that a video recording of the deposition is

24    necessary.

25          If we need to use a video deposition before Your

27

1    Honor at any point in the future and if credibility is at

2    issue at any point, that video is a really important piece

3    of the puzzle.

4            Moreover, our previous experience with the debtor

5    raises some concerns in our mind that he might later

6    challenge the authenticity of this deposition.  So we need

7    this video for that reason as well.

8            THE COURT:  So you're asserting to the court that

9    regardless of whether people are in the room with her or

10   not, it has to be on video.  That the stenographer's

11   recordation of what is said is not enough.

12           MS. ARONSSON:  Thank you, Your Honor.

13           That's what we (indiscernible).  We did propose to

14   Mr. Romney that if he did agree to (indiscernible)  May 25th

15   hearing that we could compromise on that. But we didn't hear

16   back.  So in our view the video is necessary.

17           THE COURT:  Okay. Mr. Romney?

18           MR. ROMNEY:  Your Honor, on that point, the -- a

19   deposition transcript can be authenticated when a court

20   reporter has sworn in the witness, counsel are all present.

21   I don't believe the issue of authenticity weighs one way or

22   another in favor of video or not.

23           The issue with the video is once there is a video

24   it can be -- it's there.  It's there forever.  And we have

25   raised substantial concerns about the witness' physical

1    safety and privacy. We don't believe it's necessary for her

2    to be recorded.

3         In terms of her deposition testimony being

4    presented to this court, counsel is correct that we have not

5    yet gotten back with a position as to whether the witness

6    would be available to testify at a dismissal hearing.

7         However, to the extent that there's going to be an

8    evidentiary hearing on the issue of the dismissal, it's

9    going to be a bench trial.  It's going to be before the

10   court.  This court --

11        THE COURT:  That's not necessarily -- it is a

12   bench trial but I may need evidence.

13        MR. ROMNEY:  Understood.  But meaning it's not

14   going to be presented to a lay jury. It's going to be

15   presented to Your Honor and Your Honor is more than capable

16   of reading a deposition transcript and evaluating the

17   veracity of the testimony. It happens all the time.

18        I don't think in my entire career I have ever

19   presented a video deposition to a court yet probably

20   presented north of 50 deposition transcripts.

21        It would be a waste of time to watch a video of a

22   deposition during an evidentiary hearing presented to a

23   judge and I respectfully submit it's unnecessary and in this

24   case would cause substantial anxiety to a witness who has

25   been through unimaginable things.

29

1      THE COURT:  Okay.  Anyone else wish to be heard?

2      MS. ARONSSON:  Thank you, Your Honor.

3      I'll just add that the credibility issue at the

4  deposition itself, and potentially later in court when we

5  show the video, it's even more important here, given just

6  (Indiscernible)  regarding her credibility this past

7  February.

8      And I'll just also add that there's no basis for

9  counsel's concern that the parties to the deposition would

10  somehow break confidentiality and broadcast the deposition

11  or leak it.  There's no basis other than his say so.

12      THE COURT:  Okay.  Thank you.  Attorney Kaplan,

13  did you want to be heard?

14      MR. KAPLAN:  Good afternoon, Your Honor.

15      The committee joins with PAX and their opposition

16  to the motion for a protective order.  And I won't reiterate

17  the points that Attorney Aronsson has already made.

18      The one issue I wanted to address was the

19  addresses of some of the family members.  This is a

20  bankruptcy that was filed by an individual who is claimed to

21  have a large net worth, yet his schedules indicate he's

22  worth $3,500 and has a dog.

23      And there's a lot of discussions in the filings

24  and his declaration regarding wanting to be transparent and

25  open up everything so that the world can take a look and

1    find out if that's true or not.

2           During some of the discovery procedures that other

3    parties have undertaken, they have been met with resistence

4    in terms of obtaining depositions from his family members,

5    including the family members like his son, who provides $2

6    million plus per year through Golden Springs for his living

7    expenses, help pay for the boat.  Help pay for all sorts of

8    things.

9           There has been a harsh rebuke and lack of

10   cooperation in terms of obtaining depositions of individuals

11   like Mr. Kwok's son.

12          So in terms of our request in our opposition,

13   we're really seeking to be able to locate their address,

14   because we're going to need that for subpoenas and

15   additional things in future proceedings because there's been

16   no cooperation.

17          I think Golden Springs just filed another motion

18   to quash this morning during prior discussions in regards to

19   our 2004 Examination motion.  They've indicated they will

20   put forward a designee but they will not put forward and

21   they're not authorized to accept service.

22          So that's the reason behind it and so that's why I

23   think it's over broad to just simply say that they should

24   never have to disclose this information and especially I

25   don't think they've presented the record to support that in

1    light of the fact that there is no affidavit attached to it.

2    There's no disclosure of those things.

3         But most importantly this is information that the

4    committee needs in order to proceed with obtaining

5    discoverable information going forward.

6         THE COURT:  Okay.  Thank you.

7         MR. ROMNEY:  Your Honor, it I may briefly.

8         This is a deposition that has been noticed in

9    connection with a dismissal hearing.

10         I'm not going to weigh in one way or another on

11    whether what Mr. Kaplan has just said has merit down the

12    future.

13         But this is not a deposition about the future.

14    This is not a Rule 2004 Exam.  This is a deposition noticed

15    by the movant, PAX, in connection with its motion to dismiss

16    and I have not heard anything and can't fathom how addresses

17    of Ms. Guo's family and the debtor's family is relevant one

18    way or another to a dismissal motion that is scheduled to be

19    heard before this court on May 25th.

20         Thank you, Your Honor.

21         THE COURT:  Okay.  Thank you.

22         Anyone else wish to be heard?

23         All right. So what we're --

24         MR. GOLDMAN:  Your Honor --

25         THE COURT:    I'm sorry.  Attorney --

1          MR. GOLDMAN:  -- I just want to make the point

2     that addresses of potential witnesses certainly could lead

3     to the discovery of further admissible evidence in

4     connection with the motion to dismiss.

5          THE COURT:  Thank you.

6          MR. GOLDMAN: That's the standard of discovery.

7          THE COURT:  What I'm going to do is as follows.

8          By 5:00 on Monday morning you're all going to tell

9     me what you agree to and don't agree to with regard to the

10     protective order.  And then I'm going to rule on that.

11          As far as a status conference is concerned I would

12     not be able to hear you at any time before 3:00 p.m. on

13     Tuesday.  Does 3:00 p.m. on Tuesday work for the parties?

14          And by the way, a status conference to discuss

15     whatever has happened is not -- is not necessarily changing

16     that we're having an evidentiary hearing on May 25th on a

17     motion to dismiss or in the alternative an appointment for a

18     trustee, right?

19          It's not just on a motion to dismiss.  That's

20     what's been pending for some time now.

21          We've talked about it. I've talked about the fact

22     that the code and the rules state that the court has to have

23     that hearing within a certain amount of time unless the

24     movant consents to a specific date, which they have, of May

25     25th.

33

1          So I'm absolutely happy to have a status

2     conference and hear what you've all talked about -- hear

3     about what you've all talked about and where you think

4     things are going with regard to this case.

5          But I just want to be clear that that doesn't mean

6     that there isn't going to be an evidentiary hearing on May

7     25th.

8          And I think, Attorney Romney, you just corrected

9     me.  It's May 25th and 6th.  And I said the 24th, and 5th,

10    whatever the dates are.  But they're already scheduled.

11    They're part of an order and that's going to happen unless

12    something else happens.

13         So I don't want anyone proceeding with a -- under

14    the belief that because certain things have happened in the

15    last three days there isn't going to be an evidentiary

16    hearing.  There or may not be. We'll see.

17         Mr. Jonas?

18         MR. JONAS:  Your Honor, Jeff Jonas, Brown Rudnick,

19    for the debtor.

20         I just wanted to inform the court Tuesday at 3:00

21    p.m. would be fine with us.

22         THE COURT:  Great.  Thank you.

23         Does Tuesday at 3:00 p.m. work for everyone else?

24         MR. GOLDMAN:  It works for the committee, Your

25    Honor.

1          MR. BIRNEY:  Yes, it works for PAX.

2          MS. CALLARI: Your Honor, it works except for the

3    fact that I have something that would not allow me to get to

4    Connecticut and back to New Jersey for something else I need

5    to attend. So I need to try to work that out.

6          THE COURT:  That's okay.  Just have -- just file a

7    motion to request to appear via Zoom, okay?

8          MS. CALLARI:  Okay.  I appreciate that, Your

9    Honor.

10          THE COURT:  But I really would like the parties,

11   as much as they can, if possible, to be here in person

12   because I think you all need to talk. I think you all need

13   to talk.

14          And I find, and I'm sure you've all found that

15   talking in person often has more promising developments than

16   over Zoom.  That's my personal experience.  And maybe I'm

17   wrong, but that's how I see it.

18          But we won't be able -- I mean, maybe we can start

19   it at 2:30.  We have something else scheduled at 2:00.  I

20   don't know how long that's going to take. I don't want you

21   all to come here at 2:30 if we're not ready to hear you.

22          If you want to be here at 2:30, we have conference

23   rooms available. We have all -- there is space available for

24   people to talk.

25          And then you may not want to talk, and that's

1    fine, too.  Whatever you decide. I will hear whatever you

2    have to say.

3            But I will -- Attorney Goldman, as I said, I

4    haven't looked at your motion.  Does it just ask for a

5    status conference?  Is that -- I mean, it doesn't ask for

6    any kind of relief, does it?

7            MR. GOLDMAN:  Correct. It just asks for status

8    conference.

9            THE COURT:  All right.

10           MR. GOLDMAN:  We're not looking to bump off the

11   hearing, although it could be on the table.  But no, we just

12   ask for a status conference.

13           THE COURT:  That's fine.  Then the likelihood is

14   that that order will enter this afternoon, scheduling a

15   status conference.

16           And the only reason I say it may not is because we

17   have other things that are already scheduled this afternoon.

18   Not in court, but it will either enter this afternoon or

19   first thing Monday morning but you all know, you're all here

20   either in person or remotely that the status conference will

21   be held at 3:00 p.m. on Tuesday -- whatever date that is.

22   And I'm sorry to say I have no idea sitting here right now

23   but I will look.  Tuesday, the 17th.  Okay?  May 17th at

24   3:00 p.m.

25           As I said, it's possible the 2 o'clock matter

36

1     could be done before 3:00.  And if it is, the courtroom

2     deputy or someone from the clerk's office will let you all

3     know. And if you want to start it earlier than 3:00, we can

4     do that too.  But we'll see.

5           Otherwise, I will not allow the 2 o'clock matter

6     to go beyond 3:00 so that we will start at 3:00 at the very

7     latest, okay.

8           But I want all -- Attorney Romney, Attorney

9     Goldman, Attorney Friedman, the only parties I believe that

10    have filed the motion for a protective order and then

11    responded to the protective order -- I'm correct on that I

12    believe, right?  That's the only pleadings that have been

13    filed with regard to the protective order.

14          MR. FRIEDMAN: I believe that's correct, Your

15    Honor.

16          THE COURT:  Okay.  So then by 5:00 p.m. on Monday

17    you either jointly or on your own, whatever you all decided

18    to do. This is discovery. You all have obligations to

19    continue to work in good faith and see if you can resolve

20    things under the federal rules, right?

21          You either jointly or on your own file a list of

22    what you believe are the remaining issues in the protective

23    order, and whether there's an agreement or not and then I'm

24    going to rule on those issues.

25          MR. FRIEDMAN:  Thank you, Your Honor. We will.

37

1          THE COURT:  Okay.  Does anyone have any other

2    questions or concerns this afternoon, which I'm happy to

3    listen to? I don't know if I will do anything about them,

4    but I'm happy to hear them.

5          Okay.  Then hearing none the hearing on the

6    protective order is continued to allow -- well to insist

7    that the parties file their position papers at or before

8    5:00 p.m. on the remaining issues and let the court know

9    whether they're resolved or not and then the court will

10   rule. And possibly will rule before the 3 o'clock status

11   conference on Tuesday.

12         The only reason I may not is because we have

13   hearings on Tuesday morning throughout the morning.  But you

14   know, you never know. We'll just see how it goes, okay?

15         MR. ROMNEY:  Thank you, Your Honor.

16         THE COURT:  Anything further then?  We're all set

17   for today?

18         MR. GOLDMAN:  Yes, Your Honor.

19         THE COURT:  Okay.  All right. Well, thank you,

20   all.  That is the last matter on today's calendar so court

21   is adjourned.

22         (Proceedings concluded at 12:52 p.m.)

23

24

25

38

1          I, CHRISTINE FIORE, court-approved

2     transcriber and certified electronic reporter and

3     transcriber, certify that the foregoing is a correct

4     transcript from the official electronic sound recording of

5     the proceedings in the above-entitled matter.

6

7     *Christine Fiore*

8     _____          May 19, 2022

9        Christine Fiore, CERT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24