**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | : CHAPTER 11 |
| | : |
| HO WAN KWOK,[1] | : Case No. 22-50073 (JAM) |
| Debtor. | : |
| | : Hearing Date: May 25, 2022 |

**SUPPLEMENTAL STATEMENT OF CREDITORS RUI MA, ZHENG WU AND WEICAN MENG IN SUPPORT OF CONVERSION OF CASE**

Creditors Rui Ma, Zheng Wu and Weican Meng ("**Creditors**"), by and through their undersigned counsel, hereby submit this Supplemental Statement in Support of Conversion of Case ("**Supplemental Statement**"),[2] and respectfully state as follows:

**PRELIMARY STATEMENT**[3]

1. The Creditors join in and adopt by reference the supplemental memorandum of law of the Official Committee of Unsecured Creditors (the "**Committee**") addressing the alternatives of dismissal, conversion or the appointment of a chapter 11 trustee [ECF No. 408], filed contemporaneously with this Supplemental Statement to the extent not inconsistent herewith.

2. The Creditors' Initial Objection to PAX Dismissal Motion was premised on the then-existing proposed DIP financing by a Debtor's insider entity Golden Springs (New York)

---

[1] The above-named Debtor and Debtor in Possession, Ho Wan Kwok (the "**Debtor**" or "**Kwok**") is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

[2] This briefing supplements the Creditors' (i) Objection ("**Creditors' Initial Objection to PAX Dismissal Motion**") [ECF NO. 347] to the motion of Pacific Alliance Asia Opportunity Fund L.P. ("**PAX**") for dismissal of this case or, in the alternative, for appointment of a trustee (the "**PAX Dismissal Motion**") [ECF No. 183], and (ii) Limited Objection [ECF No. 170] to United States Trustee's ("**UST**") Motion For An Order Directing The Appointment Of An Examiner Or, In The Alternative, Motion For Order Directing The Appointment Of A Chapter 11 Trustee filed March 19, 2022 ("**Examiner/Trustee Motion**") [ECF No. 102]. On May 18, 2022, PAX filed an omnibus reply in support of PAX Dismissal Motion ("**PAX Reply**"). [ECF No. 392].

[3] Capitalized terms used but not defined in this preliminary statement have the meaning ascribed to such terms below or in the Creditors' Initial Objection to PAX Dismissal Motion.

1

Ltd. ("**GSNY**"), the Debtor's (and his counsel's) representations that funding would be provided for creditors to be able to investigate the Debtor's assets and financial affairs, and an agreement for the Lady May to be returned to the U.S. jurisdiction by July 15, 2022 (with $37 million being held in escrow subject to the return of the yacht). The Creditors' position in the Initial Objection to PAX Dismissal Motion was simply that even though the Debtor filed chapter 11 to protect himself from incarceration, there were legitimate bankruptcy purposes of the Case and, in light of the totality of the circumstances, the Court should allow additional time to see whether the Debtor does the right thing through this Case (as he and his counsel assured the Court he would), such as providing proper funding, or shows his true colors and continues with his prior egregious conduct of fraud, deception and abuse of process.[4] Well, it did not take long for the Debtor to confirm his true colors. The Debtor filed his "Consent to Dismissal of Case" and response to the Dismissal Motion [ECF No. 344] and caused the funding of the proposed DIP to be withdrawn.[5] The Debtor then based his consent to dismissal on lack of funds due to GSNY's withdrawal of its funding commitment.[6] His Consent to Dismissal of Case also noted:

> The Lady May is returning to the United States largely due to the engagement by the Court to help resolve PAX's lift-stay motion and remedy the circumstances that led to the New York Court's findings of contempt. The Court also provided Mr. Kwok the opportunity to testify in support of his chapter 11 case and tell his side of the story in open court for the first time since PAX initiated suit against him nearly five years ago.

---

[4] *See* Creditors' Initial Objection to PAX Motion to Dismiss, ¶ 34 and fn. 8.

[5] Prior to the Consent to Dismissal, the Debtor agreed to the Court's directing the UST to appoint an examiner in this case. [ECF No. 116]. Based on the facts and circumstances already presented to the Court, an inference can be made that if the Debtor wanted the DIP funding then GSNY would provide such funding. In addition to the $9 million in potential DIP financing, the Debtor was able to obtain funding for $1 million retainer for his counsel, and $37 million to be put in escrow regarding the Lady May. In addition, the New York State Court observed that it was "quite undisputed that [GSNY] has funded seven-figure payments to facilitate Mr. Kwok's lifestyle [despite] purport[ing] to have zero assets whatsoever." PAX Dismissal Motion at p.16.

[6] *See* Consent to Dismissal of Case, ¶ 6. The Debtor included as a reason for his consent that PAX has been overly litigious and "the Court has indicated that it does not intend to approve the committed financing." *See* Consent to Dismissal, ¶¶ 5, 6. However, while the Court may have previewed its thoughts, it did not rule yet. Neither of these facts are surprising for this type of case. This excuse by the Debtor simply demonstrates the Debtor's dissatisfaction with not being able to bulldoze its way through this Case and unwillingness to abide by the requirements of the Bankruptcy Code.

2

Consent to Dismissal of Case, ¶ 7.

3. Clearly, now that the Debtor obtained certain benefits of bankruptcy that he desired (*i.e.*, a breathing spell to deal with the Lady May issue while avoiding (or delaying) incarceration), the Debtor seeks to support dismissal to avoid the burdens on a debtor in chapter 11, to the detriment of his creditors. The Court should not reward the Debtor's gamesmanship by allowing dismissal of the Case.

4. Based on the change of circumstances caused by the Debtor's recent actions, the Creditors now agree that the requisite "cause" exists to convert or dismiss the Case, or to appoint a Chapter 11 Trustee. There is no doubt, a fiduciary needs to be appointed. The Debtor's potential funding has now been withdrawn and he is unable or unwilling to respect and perform the fiduciary duties necessary to administer his estate. And there is ample basis to expect that if the PAX Dismissal Motion is granted, the Debtor will continue with his efforts to avoid and deceive his creditors by secreting his assets and "parking his substantial personal assets with a series of corporations, trusted confidants, and family members", as found by Judge Ostrager in the February 9 Contempt Order.

5. Further, while PAX continues to try to minimize the relevance of other unsecured creditors impacted by the Debtor's actions and this case, PAX is not the only creditor that has spent years in litigation with the Debtor (and aggrieved by his shenanigans) at great expense.[7] Also, the New York Court already determined the Debtor has an interest in certain valuable assets. Dismissal of the Case, therefore, would allow PAX to "race to the courthouse" and seize the Debtor's assets to the detriment of other legitimate creditors. The Bankruptcy Court provides a

---

[7] Creditors, Ms. Ma and Mr. Meng each commenced their actions against the Debtor in 2017, and filed Notes of Issue, placing their litigations on the trial calendar. Their litigations have been stayed by the filing of this Case. Mr. Wu commenced his action against the Debtor in 2018, and that proceeding has been subject to ongoing mandatory mediation, which has been stayed by the filing of this Case. The Debtor has replaced counsel several times delaying the proceedings. *See* filed Claim Nos. 1-3 and attachments thereto.

3

unique central forum to marshal the Debtor's assets and pursue equality of distribution among creditors in accordance with the Bankruptcy Code's priority scheme. The Creditors are in the process of seeking to obtain interim funding to provide a chapter 7 trustee (until longer term contingency-based funding can be obtained). The interests of creditors and the estate are best served by an independent trustee who can devote attention to the bankruptcy case and who have the legal tools and authority to conduct a proper investigation into the financial affairs of the Debtor, and ensure the proper administration of the Debtor's bankruptcy estate, preserving its assets for the benefit of all creditors. Accordingly, this Case should be converted, not dismissed.

## ARGUMENT

### I. CONVERSION IS IN THE BEST INTERESTS OF CREDITORS AND THE ESTATE.

6. As set forth on the record of the Status Conference held May 17, 2022, the parties have agreed that "cause" exists to convert or dismiss the Case, or to appoint a chapter 11 trustee. Therefore, in considering the PAX Dismissal Motion[8] and UST's Examiner/Trustee Motion, the issue before the Court is which alternative relief is in the best interest of the creditors and the estate -- conversion, dismissal, or appointment of a chapter 11 trustee. Here, the interests of creditors and the estate are best served by conversion.

7. First, in light of the fact that currently there is (a) no funding for a chapter 11 trustee and (b) PAX has stated a clear intention of obstructing any plan confirmation process (Dismissal Motion, ¶ 61), appointment of a chapter 11 trustee is not a genuine viable option at this juncture. Regardless, without the cooperation of the parties, administration of the estate in a chapter 11 through a chapter 11 trustee will be unnecessarily more expensive than a liquidation in chapter 7.

---

[8] A motion that seeks only dismissal is not a bar to conversion if the Court determines that conversion is in the best interest of the creditors and the estate. *See In re Sullivan*, 522 B.R. 604, 613 (B.A.P. 9th Cir. 2014) (bankruptcy court erred in not considering conversion in connection with motion to dismiss).

4

Accordingly, absent a further agreement among the parties, the Court is really deciding between dismissal or conversion.

8. Second, dismissal of the Case at this juncture would solely benefit the Debtor and one creditor, PAX, and is not in the best interest of creditors or the estate. Courts consider several factors when determining whether dismissal or conversion is in the best interest of the creditors and the estate:

1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.
2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.
3. Whether the debtor would simply file a further case upon dismissal.
4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.
5. In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.
6. Whether any remaining issues would be better resolved outside the bankruptcy forum.
7. Whether the estate consists of a "single asset."
8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.
9. Whether a plan has been confirmed and whether any property remains in the estate to be administered.
10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*See In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (applying factors in determining conversion, not dismissal was warranted) (*citing* 7 COLLIER ON BANKRUPTCY ¶ 1112.04[7]. (16th ed.)); *In re Just Plumbing & Heating Supply, Inc*., 2011 WL 4962993 (Bankr. S.D.N.Y. 2011) (denying debtor's motion to dismiss because there were substantial assets that could be liquidated for benefit of all creditors); *In re FRGR Managing Member LLC*, 419 B.R. 576, 580-81 (Bankr. S.D.N.Y. 2009) (same); *In re Fleetstar LLC*, 614 B.R. 767 (Bankr. E.D. PA 2020 (determining conversion, not dismissal, was warranted to allow the debtor's finances to be reviewed by a disinterested professional, among other reasons).

### *A. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.*

9. This factor clearly favors conversion. PAX (and other creditors) may have obtained certain interests in the Debtor's assets during the preference period. In such event, there is no evidence that Kwok can pay 100% of all claims.[9] To the contrary, the various known assets identified so far would not even satisfy PAX's more than $250 million claim.[10] Therefore, any such transfer of property to PAX (or others) may be a preferential payment and an estate fiduciary should evaluate it.

10. Clearly, equality of distribution would be better served by conversion rather than dismissal. PAX is the sole unsecured creditor that was on the cusp of seizing the Debtor's assets before the Petition Date, which would be to the detriment of other creditors. *See* PAX Dismissal Motion, at 32. Moreover, the Debtor's success to date in frustrating PAX (and other creditors) suggests that all creditors may fare better with the Debtor subject to the powers of the Bankruptcy Code and this Court.

11. While PAX continues to challenge the legitimacy or importance of other non-insider unsecured creditors, (PAX Reply at pp. 2-3; p.5, fn. 5), a bankruptcy court has noted that:

> [T]he plain text of § 1112(b) simply instructs this Court to consider the "best interests of creditors and the estate." "Creditors" is defined in the Bankruptcy Code, in pertinent part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). And "claim" is defined broadly in the Code to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). *The non-insider unsecured creditors' claims may be unliquidated and disputed, but they are*

---

[9] While repeatedly calling the Debtor's credibility into question (*e.g.*, PAX Dismissal Motion ¶ 68), PAX concurrently (and disingenuously) keeps relying on the fact that Kwok states that he intends to satisfy the claims of his legitimate creditors in the future to support dismissal. [PAX Reply at ¶ 2.] Creditors would be shocked if PAX actually believed the Debtor would willingly pay all legitimate creditors in full. It's a reason PAX wants the Case dismissed – to race to the courthouse ahead of other creditors. [PAX Reply at ¶ 11]. The Debtor has not demonstrated a true willingness to satisfy claims of his legitimate creditors—but rather will continue to delay, hinder, and avoid paying other creditors.

[10] The Lady May, Sherry Netherlands Apartment and the Debtor's home in Greenwich, CT (held in his wife's name) collectively would not be expected to cover even half of PAX's asserted claim.

> *"claims" nonetheless and must be considered by this Court in evaluating whether dismissal or conversion is in the best interests of creditors and the estate.*

*In re Fleetstar LLC*, 614 B.R. 767, fn. 9 (Bankr. E.D. LA. 2020) (emphasis added).

12. Here, unsecured creditors will not receive equality in distributions if the Case is dismissed and PAX seizes key assets of the Debtor to satisfy its more than $250 million claim (more than half of which is comprised of punitive contempt sanctions, and only approximately $46 million of which reflects PAX's principal actual damage claim).

**B. *Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.***

13. The Boat Delivery Order provides that $37 million will remain in escrow pending the return of the Lady May -- and the Lady May is scheduled to be returned to the U.S. jurisdiction by July 15, 2022. However, if this case is dismissed, pursuant to the Boat Delivery Order the escrowed funds would be transferred to the New York Court in connection with PAX's litigation – to which no other creditor is a party. This factor weighs in favor of conversion.

**C. *Whether the debtor would simply file a further case upon dismissal.***

14. It is not likely that the Debtor refiles for bankruptcy immediately upon dismissal. This factor is neutral.

**D. *The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.***

15. This factor weighs heavily in favor of conversion. The Debtor has been found to persistently hide his assets from creditors. Therefore, centralization of disputes concerning the Debtor in this Court would be beneficial to creditors and the estate. A chapter 7 trustee would have the expanded investigatory, avoidance and equitable powers that are available in bankruptcy court (such as Rule 2004 examinations, avoidance of insider and other preferential transactions, debt recharacterization, equitable subordination, and substantive consolidation), which would not exist in any non-bankruptcy alternative. Rather than each individual creditor having to expend its own time and money to investigate and chase assets of the Debtor, a chapter 7 trustee could

7

undertake such efforts on behalf of all creditors (including PAX). The Creditors are in the process of seeking to obtain initial funding for a chapter 7, which funding can then be replaced with longer term and/or contingency fee arrangements.

### E. *In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.*

16. This case involves an individual, not an enterprise. However, as noted above, the Debtor claims to have minimal assets (other than speculative litigation) and has disavowed assets rather than taking any efforts to marshal additional assets. Based on the finding already made by Judge Ostrager, a fiduciary that undertakes investigative, clawback or turnover efforts would maximize the estate's value for the benefit of all creditors (rather than dismissal). Indeed, this case potentially is the best chance for creditors to obtain recoveries from the Debtor – as evident by the fact that since the Petition Date, these proceedings resulted in $37 million being deposited into an escrow account within the United States pending the return of the Lady May.

17. The chapter 7 trustee would not only have all remedies available to state courts – including without limitation the ability to imprison the Debtor for contumacious behavior and the ability to pursue alter ego theories – but also numerous benefits only available within bankruptcy, such as the power to issue Rule 2004 discovery to third parties (as has already been commenced by the Committee), oversight for, and restrictions on, the Debtor's ability to act, increased power to avoid and recover preferential or fraudulent transfers, power to recharacterize purported loans as equity, power to equitably subordinate claims or otherwise to provide for different treatment of insider and non-insider creditors, and power to substantively consolidate the Debtor if appropriate with non-debtor entities. An appropriate investigation will shed light on the scope of the Debtor's true assets as well as evaluate whether bankruptcy fraud (or other fraud) has been committed by the Debtor and co-conspirators. These benefits may prove crucial in maximizing recoveries for general unsecured creditors in this Case. This factor therefore supports conversion.

### F. *Whether any remaining issues would be better resolved outside the bankruptcy forum.*

18. Other than certain creditor claims that should be liquidated by another court, there are no key issues that would be better resolved outside the bankruptcy forum – to the contrary, a central forum before this Court is the best forum. *See, supra*, ¶¶ 9-17.

### G. *Whether the estate consists of a "single asset."*

19. While the Debtor claims to have minimal assets, all parties concede this is not a "single asset" case. *See* PAX Reply, ¶26 ("PAX can stipulate it believes the Debtor has more than one asset"). The New York State Court already has found that the Debtor has a beneficial interest in the Lady May and Sherry Netherlands Apartment, each of which has values estimated at more than $30 million. Therefore, this factor weighs in favor of conversion.

### H. *Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.*

20. This factor weighs heavily in favor of conversion. The record of this Case, including pleadings and evidence submitted by PAX, is replete with examples of the Debtor's misconduct. Also, see, *supra*, ¶¶ 9-17, respecting the need for a chapter 7 trustee to protect creditors' interests.

### I. *Whether a plan has been confirmed and whether any property remains in the estate to be administered.*

21. No plan has yet been confirmed. Assets remain in the estate to be administered. *See, supra* ¶ 19. This factor supports conversion.

### J. *Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.*

22. There are no known environmental or safety concerns, so this factor is neutral.

23. Accordingly, the Case should be converted and a chapter 7 trustee appointed to investigate the Debtors' assets and liabilities and marshal the Debtor's assets, as appropriate, for distribution in accordance with the Bankruptcy Code's priority scheme. If the trustee later

9

concludes that dismissal is in the best interests of the estate and its creditors, the trustee can make that motion. Notably, once dismissal occurs it cannot be easily undone.

## II. IN THE ALTERNATIVE, ANY DISMISSAL SHOULD HAVE CONDITIONS.

24. In the event the Court is inclined to grant dismissal, any such dismissal should be conditioned on:

   i. Payment of administrative expenses, in particular fees and expenses of counsel for the Committee and UST fees;

   ii. Putting creditors back to their prepetition status quo position by paying Creditors' expenses, including attorneys' fees and costs, who have expended substantial time and money in this Case; and

   iii. Supplemental disclosure by Debtor's counsel respecting any payments (or promise of payment) received by such counsel in connection with this matter since it received the initial $1 million retainer.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Creditors request that the Court (a) grant conversion, (b) deny the PAX Dismissal Motion and UST's Examiner/Trustee Motion to the extent inconsistent with conversion, and (c) grant such other and further relief as is just and proper.

Dated: May 20, 2022

/s/ Kristin B. Mayhew
Kristin B. Mayhew-ct20896
**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
30 Jelliff Lane
Southport, CT 06890
(203) 319-4000
kmayhew@mdmc-law.com

- and -

Carollynn H.G. Callari (*pro hac vice*)
David S. Forsh (*pro hac vice*)
**CALLARI PARTNERS LLC**
One Rockefeller Plaza, 10th Floor
New York, NY 10020
(212) 202-3050
ccallari@callaripartners.com
dforsh@callaripartners.com

*Attorneys for Rui Ma,* Zheng Wu and *Weican Meng*

10

**CERTIFICATE OF SERVICE**

    I, Kristin B. Mayhew, hereby certify that a true and accurate copy of the foregoing Supplemental Statement of Creditors Rui Ma, Zheng Wu and Weican Meng in Support of Conversion of Case, was filed with the Court on May 20, 2022.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.

                                        /s/ Kristin B. Mayhew
                                          Kristin B. Mayhew

KBM/M1738/1001/1832073v1
05/20/22-HRT/KBM