**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---------------------------------------------------------------------X
:
In re:                                                              :    Chapter 11
                                                                    :
   Ho Wan Kwok,                                                 :    Case No. 22-50073 (JAM)
                                                                    :
                                                                    :    Date:
                  Debtor.[1]                                         :    Time:
                                                                    :
---------------------------------------------------------------------X

**DEBTOR'S STATEMENT WITH REGARD TO
THE ISSUES RAISED BY PAX AND THE OBJECTING CREDITORS**

Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii), as made applicable to this proceeding by Fed. R. Bankr. P. (the "Bankruptcy Rules") 9014 and 9016, Mr. Ho Wan Kwok, the debtor and debtor-in-possession ("Mr. Kwok" or the "Debtor") in the above-captioned chapter 11 case, by and through his undersigned counsel, hereby files this statement, regarding the proper remedy with regard to the *Motion to Dismiss Chapter 11 Case or, In the Alternative, Partial Joinder to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee* (the "Motion to Dismiss").

**RELEVANT BACKGROUND**

1.      On February 15, 2022, the Debtor commenced this Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtor is a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in this Chapter 11 case.

2.      On April 6, 2022, Pacific Asia Alliance Opportunity Fund, L.P. ("PAX") filed the Motion to Dismiss, seeking to dismiss this Chapter 11 case. On May 11, 2022, the Debtor

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.

consented to the entry of an order dismissing this case because there was no longer any source of funds for the payment of the administrative expenses of the estate. Docket No. 344 (the "Consent to Motion to Dismiss").

3. Two parties filed objections notwithstanding the Consent to Motion to Dismiss – the Official Committee of Unsecured Creditors (the "Committee") and Rui Ma, Zheng Wu, and Weican Meng (together, the "Objecting Individual Creditors," and collectively with the Committee the "Objecting Creditors"). The Objecting Creditors have since indicated a preference for conversion or the appointment of a Chapter 11 trustee, as opposed to dismissal.

## STATEMENT REGARDING APPROPRIATE RELIEF FOR THE MOTION TO DISMISS

4. The Debtor concedes that "cause" exists here under section 1112(b)(4)(A) (and only under that section). The expenses of this case create a substantial and continuing loss to, and diminution of, the estate and given the unrelenting opposition of PAX and the lack of DIP funding in this case, there is no longer a realistic prospect of confirming a Chapter 11 plan. PAX's claims of "bad faith" have been proven hollow: the Debtor made every effort to utilize the Bankruptcy Code for the appropriate purposes set forth in the Code. The Debtor met every obligation under the Code: he sat for every scheduled 341 meeting, he has timely complied with all filing and disclosure requirements, and he has scrupulously followed every order of this Court. PAX's allegations of "bad faith" made by PAX lack any evidence and boil down to an utterly uncontested issue: that Mr. Kwok filed for bankruptcy when faced with a directive that he immediately pay a more than $130 million fine that he could not pay. *See* Docket No. 392 (the "PAX Reply in Support of Motion to Dismiss") ¶ 7. Of course, Mr. Kwok filed for bankruptcy when faced with a debt he could not pay, instead of when an adverse judgment was entered that

he appealed and had not yet been required to pay. PAX offers no caselaw whatsoever to suggest this is bad faith.[2]

5.  Although creditors (including PAX) have challenged Mr. Kwok's honesty, recent events confirm the veracity of the Debtor's account. As set forth in his first day declaration, the Debtor is a fierce critic of the People's Republic of China (the "PRC") and the Chinese Communist Party (the "CCP"). *See* Docket No. 107 (the "Kwok Declaration"). The creditors in this case have claimed that Mr. Kwok's account is a fantasy and that has not been persecuted by the CCP. *See*, *e.g.*, Motion to Dismiss ¶ 34 (denying Mr. Kwok is a dissident of the CCP).

6.  Yet just this week, the Department of Justice (the "DOJ") filed a lawsuit demonstrating the veracity of Mr. Kwok's account, alleging that Steven Wynn ("Wynn"), a billionaire fundraiser and former finance chair for the Republican National Committee with substantial business interests in Macau, acted as an unregistered agent of the PRC in seeking Mr. Kwok's extradition, and that Wynn should thus be compelled to register as a foreign agent of China. *See U.S. v. Wynn*, Case No. 22-cv-01372, Docket No. 1 (D.D.C. May 17, 2022) (the "DOJ Complaint").[3] The importance of the DOJ's suit against Wynn is underscored by the fact

---

[2] PAX makes a wide variety of unsupported allegations of bad faith, improper conduct in the bankruptcy proceeding, and otherwise in the PAX Reply to Motion to Dismiss. PAX has failed to prove any of those claims, waived any right to support those claims by improperly refusing to provide discovery to test them, and Mr. Kwok denies them. Importantly, however, PAX repeatedly has claimed that Mr. Kwok filed in bad faith because he lacks an ongoing business. *See* Motion to Dismiss at ¶¶ 41-42; 57. PAX ignores directly applicable, controlling Supreme Court precedent (as interpreted by this Court) that imposes no "business purpose" requirement on an individual Chapter 11 filer. *See In re Lucarelli*, 517 B.R. 42, 46 (Bankr. D. Conn. 2014) (Manning, J.) (recognizing that "[t]he plain language of the Bankruptcy Code permits individual debtors not engaged in business to file for relief under Chapter 11") (quoting *Toibb v. Radloff*, 501 U.S. 157, 166 (1991)); *Toibb v. Radloff*, 501 U.S. at 166 (1991) ("Although the structure and legislative history of Chapter 11 indicate that this Chapter was intended primarily for the use of business debtors, the Code contains no "ongoing business" requirement for Chapter 11 reorganization, and we find no basis for imposing one.").

[3] The DOJ Complaint is available at Docket No. 400, Exhibit D, and also available at: https://www.courtlistener.com/docket/63317117/1/attorney-general-of-the-united-states-of-america-v-wynn/. Although the DOJ Complaint refers to Mr. Kwok only as a "PRC national" it is without question referring to Mr. Kwok. This is clear from a comparison of the information in the DOJ Complaint to the Kwok Declaration (e.g. the dates of the individual's exit from China, the timeframe in which the individual has filed for asylum, and the charges and interpol red notice China has asserted against the individual). The Associated Press also has

that, as the head of the Justice Department's national security division recognized, this is the first lawsuit of its kind in nearly three decades.[4]

7.      In its pleading, the Department of Justice alleged that the parties involved in this corrupt lobbying effort were aware that President Xi Jinping (China's supreme leader) had raised the issue directly with then-President Trump (DOJ Complaint ¶ 21c, "President Xi Jinping mentioned to President Trump at Mar-A-Lago that he would like [the PRC national] returned."). This lobbying effort involved Sun Lijun, the former PRC Vice Minister for Public Security, who sought to have Wynn directly pressure President Trump to have Mr. Kwok placed on the no-fly list and ensure his visa expired. (*Id.* ¶ 21a). The PRC Vice Minister promised to, in exchange for Mr. Kwok's return to China, to "return certain US citizens held hostage by China" plus other, more normal, political incentives such as aiding the United States with regard to North Korea. (*Id.* ¶ 21c).

8.      To pass on these PRC requests to the Trump Administration, Wynn sought to organize meetings with senior officials on the National Security Council at the White House (*Id.* ¶ 25); had contact with multiple Trump Administration officials (*Id.* ¶ 25a); had contacts with the White House Chief of Staff on multiple occasions (*Id.* ¶ 25b); had unscheduled meetings with President Trump (*Id.* ¶ 25d); and had calls with President Trump (*Id.* ¶ 25e). Wynn's efforts were compelled by the CCP, which was holding Wynn's business interests hostage in Macau.

---

identified Mr. Kwok as the PRC national referenced in the Complaint. *See* https://apnews.com/article/government-and-politics-china-lawsuits-donald-trump-lobbying-39f30c1b3dd32e6b2ef122301817c156 ("The dissident was not referred to by name by prosecutors, but it matches the description of Guo Wengui."). Further, the Wall Street Journal notes that in 2020, "two of Mr. Wynn's associates admitted in plea agreements with the Justice Department that in June and July 2017, they had discussed Mr. Guo's removal with Mr. Wynn and helped facilitate calls between Mr. Wynn and a Chinese government official about Beijing's desire for Mr. Guo's removal from the U.S." and also identifies the PRC national in the DOJ Complaint as Mr. Guo (Mr. Kwok's Chinese name). *See* https://www.wsj.com/articles/steve-wynn-sued-by-justice-department-11652826374 (attached to Docket No. 400 as Exhibit E).

4  *See* https://www.wsj.com/articles/steve-wynn-sued-by-justice-department-11652826374

(*Id.* ¶¶ 26-27). Wynn was told that President Xi Jinping himself had expressed appreciation for Wynn's corrupt efforts on the PRC's behalf. (*Id.* ¶ 22a).

9. Fortunately for Mr. Kwok, Wynn's efforts on behalf of China were unsuccessful and the Trump Administration took no action against Mr. Kwok. Wynn admitted defeat in a text message to a PRC official, but stated that if there were other ways in which the PRC believed he could be of assistance, "[he] would of course be anxious to help" and "remain[ed] grateful for the privilege of being part of the Macau and PRC business community." (*Id.* ¶¶ 27-28).

10. The DOJ Complaint makes plain what Mr. Kwok has consistently said: that because of his efforts to speak out against the CCP's corruption and human rights abuses, he has been targeted by the highest levels of the Chinese government.

11. However, those are now issues for another day, in another courtroom. Here, all that is left is the question of how this bankruptcy proceeding shall be resolved. For the reasons set forth below, the Debtor submits that dismissal is the only proper result.

12. *First*, there is no value to be accrued through a trustee – whether Chapter 7 or Chapter 11. PAX, the estate's largest creditor – and the only one holding a judgment (though that judgment is on appeal) – feels fully capable of enforcing its rights outside of a bankruptcy proceeding. No party (whether PAX or an Objecting Creditor) has asserted claims that can be brought only in this bankruptcy proceeding. *See In re Mazzocone*, 183 B.R. 402, 412 (Bankr. E.D. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (lack of bankruptcy claims, such as preference claims, that would be lost weighed in favor of dismissal).

13. *Second*, continuing in this bankruptcy case would come at a substantial cost, without any source of funding for those costs. This is true regardless of whether a trustee appointed is appointed under Chapter 7 or Chapter 11. *See In re McKenna*, 580 B.R. 1, 17

(Bankr. D.R.I. 2017) (dismissing individual chapter 11 case as administrative costs of chapter 7 would outweigh any benefit given the debtor's resources). Further, as PAX recognized in its reply, the non-PAX claims are largely speculative litigation claims, far from judgment. *See* PAX Reply to Motion to Dismiss ¶ 6 fn.5. As a result, a trustee would be required to defend those litigation claims (not just marshal assets) at a substantial cost to the estate.

14.  *Third*, the Objecting Creditors seek, by conversion, to accomplish an involuntary bankruptcy filing to help them vis-à-vis another creditor – PAX. *See* Docket No. 347 (the "Individual Creditor Objection") ¶ 7. In support of this effort, they complain that PAX may seek to enforce a judgment before they are able to obtain favorable verdicts and judgments of their own, and they seek to hold the Debtor in bankruptcy proceedings to allow them time to litigate their claims outside of this Court. However, Congress has made clear the standard for an involuntary filing: three creditors with **non-contingent, liquidated claims not subject to bona-fide dispute**. *See* 11 U.S.C. § 303. Critically, the Objecting Individual Creditors include **no** such claimants: they hold only litigation claims that have not proceeded to verdict, let alone judgment and are thus the subject of bona fide dispute (and the Debtor believes that he will prevail in defending against these claims).[5] Congress has determined that these kinds of claimants are not entitled to interfere with a debtor and a creditor with a liquidated claim through the filing of an

---

5  The lawsuit with regard to Zheng ("Bruno") Wu was early in discovery when it was ordered to mediation on December 2, 2022. It has since remained in mediation, and another mediation session was set to take place in May 2022, prior to the application of the automatic stay. Weican Meng's litigation had numerous motions were pending with the court when the bankruptcy stay took effect, including defendant/counterclaimant's motion to compel discovery, defendant/counterclaimant's motion to amend the counterclaims, defendant/counterclaimant's motion to vacate the note of issue, and plaintiffs' motion for summary judgment as to the counterclaims only (acknowledging that the plaintiffs' claims would need to proceed to trial). As to the Rui Ma case, several motions were pending with the Court when the bankruptcy stay occurred, including defendants' motions to vacate and extend the note of issue and plaintiff's motions to quash and for a protective order with respect to numerous subpoenas served by defendants on non-parties. Additionally, there were other non-party discovery issues for which defendants anticipated having to file motions with the Court. Legal fees in all three of these cases against Mr. Kwok, among others, are being funded by Bruno Wu, and thus the Defendant expects they will remain hotly contested (which, inter alia, would raise the costs to the estate to defend if a trustee were appointed).

involuntary bankruptcy based solely on a speculative litigation claim where liability has not even been established. *See, e.g., In re TPG Troy, LLC,* 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013), *subsequently aff'd*, 793 F.3d 228 (2d Cir. 2015) (collecting cases reflecting that pending state court litigation shows bona fide dispute that bars a creditor from being entitled to file an involuntary petition). This Court should not permit the Objecting Creditors to obtain an involuntary bankruptcy through conversion of this case to Chapter 7. If the Objecting Creditors believe they are entitled to secure an involuntary bankruptcy, this Court should require them to do so (as they assert they will). In any event, the Debtor's consent to dismissal should be given great weight unless the Objecting Creditors can show a plain legal prejudice from dismissal. *See In re Kimble*, 96 B.R. 305, 308 (Bankr. D. Mont. 1988) (where a debtor consents to dismissal, the case ordinarily ought to be dismissed unless an objecting creditor is able to show a "plain legal prejudice" that will result from dismissal); *In re Hull*, 339 B.R. 304, 309 (Bankr. E.D.N.Y. 2006) (same, and holding that a short length of time between filing and dismissal is one of the most significant indicators of lack of prejudice from voluntary dismissal).

15. The Debtor filed this bankruptcy case in good faith, seeking to use the bankruptcy process to subject himself to the scrutiny of both this Court and to an examiner, believing that, in doing so, he could create circumstances that would allow for the resolution of the claims asserted against him. Mr. Kwok's son, through Golden Spring, was willing to support that effort. However, as has been previously stated, Mr. Kwok's hope of a reaching consensual resolution through this bankruptcy case has proven impossible. Mr. Kwok will continue his efforts to resolve the claims against him outside this bankruptcy proceeding and he has every intention of satisfying his legitimate debts.

## **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests the entry of an order dismissing this bankruptcy case.

Dated: May 20, 2022

**BROWN RUDNICK LLP**

By: /s/ *William R. Baldiga*
BROWN RUDNICK LLP
185 Asylum Street
Hartford, CT 06103
Attn: Dylan Kletter, Esq.
Telephone: (860) 509-6500
Facsimile: (860) 509-6653
Email: dkletter@brownrudnick.com

Seven Times Square
New York, NY 10036
Attn: William R. Baldiga, Esq. (*pro hac vice*)
Attn: Jeffrey L. Jonas, Esq. (*pro hac vice*)
Attn: Bennett S. Silverberg, Esq. (*pro hac vice*)
Attn: Kenneth J. Aulet, Esq. (*pro hac vice*)
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email:  wbaldiga@brownrudnick.com
             jjonas@brownrudnick.com
             bsilverberg@brownrudnick.com
             kaulet@brownrudnick.com

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Ho Wan Kwok, | Case No. 22-50073 |
| Debtor.[1] | |

## CERTIFICATE OF SERVICE

I, Kenneth J. Aulet, hereby certify that on the 20th day of May, 2022, the Debtor's Motion for Protective Order was sent by e-mail to all appearing parties by operation of the Court's electronic filing system

Dated: May 20, 2022

**BROWN RUDNICK LLP**

By: /s/ *Kenneth J. Aulet*
BROWN RUDNICK LLP
185 Asylum Street
Hartford, CT 06103
Attn: Dylan Kletter, Esq.
Telephone: (860) 509-6500
Facsimile: (860) 509-6653
Email: dkletter@brownrudnick.com

Seven Times Square
New York, NY 10036
Attn: William R. Baldiga, Esq. (*pro hac vice*)
Attn: Jeffrey L. Jonas, Esq. (*pro hac vice*)
Attn: Bennett S. Silverberg, Esq. (*pro hac vice*)
Attn: Kenneth J. Aulet, Esq. (*pro hac vice*)

---

[1] The Debtor is known by the following names: Guo Wengui; Miles Guo; Miles Kwok; and Ho Wan Kwok.