**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK[1]<br><br>Debtor. | Chapter 11 Case No.<br><br>22-50073 (JAM)<br><br>May 20, 2022 |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S SUPPLEMENTAL
STATEMENT IN SUPPORT OF MOTION TO DISMISS CHAPTER 11 CASE**

PAX[2] respectfully submits this supplemental statement in support of its Dismissal Motion.

**SUPPLEMENTAL STATEMENT**

1.      This case has been a sham from the outset, designed to prejudice PAX and PAX alone.  PAX has consistently demonstrated the Debtor's abuse of the bankruptcy process, and that abuse should stop now.  Accordingly, this Court should exercise its discretion and grant dismissal, rather than convert it to a chapter 7 case, for four reasons.  *First*, dismissal is the only feasible option.  *Second*, neither conversion nor appointment of a trustee will result in better recoveries for creditors.  *Third*, dismissal is the preferred remedy of creditors given the size of PAX's judgment compared to other liquidated claims against the Debtor.  *Fourth*, where the cause to dismiss is the Debtor's bad faith or misconduct, dismissal is the proper remedy.

**I.      DISMISSAL IS THE ONLY FEASIBLE OPTION**

2.      The Committee supported keeping Kwok as the debtor-in-possession while Kwok dangled DIP funding before it.  Now, in the absence of funding to pursue the chapter 11 case, it seeks conversion to chapter 7.  But there is no money available to fund a chapter 7.  Continuing

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.
[2] Capitalized terms used but not defined herein have the meaning set forth in PAX's prior related pleadings.

1

the case without liquid assets to pay the U.S. Trustee and professional fees (and substantial contribution fees) already incurred and to be incurred loads up the estate with administrative claims and delays all creditors from independently pursuing satisfaction of their debts. In bankruptcy, Kwok maintains the benefit of the automatic stay and may obtain a discharge. The Court will potentially need to oversee innumerable non-discharge claims, with each individual creditor bearing the burden for each complaint and the trustee for defending them, in each case at great expense. Some claims may be discharged, while others may not. A dismissal avoids all of the foregoing costs and results in all claims being treated equally, with every creditor free to pursue Kwok.

3.     Also, claims litigation against Kwok has no common nucleus of fact lending itself to centralization. And, to the extent the many unliquidated claims are personal injury tort claims (such as the defamation claims), there could be extensive and expensive additional litigation over whether a District Court would need to oversee the ultimate liquidation of disputed claims, resulting in no centralized forum for claim resolution.[3] Moreover, in bankruptcy, PAX will have no choice but to carefully review all of the other claims and assert any objections to them (creating yet additional layers of costly litigation and potential discovery disputes) because there would not be a funded mechanism to effectively screen the claims. All of this promises an unending morass leaving creditors no closer to getting paid while fees mushroom.

## II.     DISMISSAL WOULD MAXIMIZE RECOVERIES FOR CREDITORS

4.     A chapter 7 trustee will face immediate funding issues that would require hiring

---

[3] Multiple courts have construed "personal injury tort" claims under 28 U.S.C. § 157(b)(5) to include claims for defamation. *See, e.g.*, *In re Von Volkmar*, 217 B.R. 561, 566–67 (Bankr. N.D. Ill. 1998) (defamation claims fall within "personal injury" tort definition, which "encompasses 'any injury which is an invasion of personal rights'"); *see also In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160 (Bankr. D. Conn. 2002) (adopting the "broader" view of "personal injury tort claim" that includes "*any injury which is an invasion of personal rights*," except where the claim "has earmarks of a financial, business, or property tort claim"). *But see In re Gawker Media,* 571 B.R. 612, 620–21 (Bankr. S.D.N.Y 2017) (adopting narrower view).

contingency counsel and/or borrowing money from litigation funders (for which there is no current prospect). Such fees would likely amount to tens of millions of dollars,[4] which may outweigh the entirety of allowed claims held by creditors other than PAX.

5. The cost of such contingency or financing fees would fall largely on PAX, a patently unfair result. And considering creditors as a whole, more will be recovered without a trustee because PAX and other creditors retain their right to pursue the Debtor (and any third parties who hold Debtor assets) on their own terms without financing or contingency costs. Also, as the Debtor now states, "After dismissal, the Debtor intends to satisfy his legitimate debts."[5]

6. Although PAX believes (and the Committee disputes) that other unsecured creditors can obtain full payment from the Debtor or related third parties (any of whom could be pursued by creditors outside of bankruptcy), there is no guarantee of an equity cushion in Kwok's estate sufficient to cover large contingency fees, litigation funding fees, and administrative claims before paying any allowed unsecured claims. The Committee cannot have it both ways. If there is not enough to pay creditors, then the Committee seeks to impose tens of millions of dollars in unwarranted expenses on PAX. If there are sufficient assets, there is no risk that non-PAX creditors will be left "holding the bag." But it cannot be true (as the Committee suggests) that there is **both** enough excess value to cover the substantial additional fees in bankruptcy **and** not enough value to pay creditors outside of bankruptcy without expending the fees.

### III.    PAX'S DESIRE FOR DISMISSAL MUST CARRY SUBSTANTIAL WEIGHT

7. The touchstone of what is best for the estate in considering dismissal as opposed to conversion is the preference of creditors. The best interest of creditors here must reflect PAX's

---

[4] A 20-30% contingency applied to the proceeds necessary to pay PAX's claims would result in fees of roughly $50 to $75 million dollars.
[5] *Debtor's Consent to Dismissal of Case* at 4, ECF No. 344.

view. Multiple courts have held that the interest of even a single creditor favoring dismissal should prevail where, like here, that creditor has the financially dominant claim. *See, e.g.*, *In re Acme Cake Co., Inc.*, 495 B.R. 212, 222 (Bankr. E.D.N.Y. 2010) ("[i]t is not necessary that the interest of every creditor actually favor conversion. There is no specific numerosity requirement inherent in section 1112(b)'s best interest test. ***The interest of a single creditor with a large enough claim will suffice***.") (emphasis added) (quoting *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1992)); *Goodrich v. Lines*, 284 F.2d 874, 877 (9th Cir. 1960) (preference of single largest creditor was basis for dismissal, even where all other creditors disagreed, given largest claim was far in excess of that owed to any other). Here, **PAX has more than $260 million in judgments** against Kwok. No other non-insider has a liquidated claim that is remotely comparable to PAX's claim—PAX's claim is over 1,300 times larger than the next largest judgment claim.[6] And the Court should disregard the "claims" of insiders (*e.g.*, Golden Spring). Other claims in this case are almost exclusively unliquidated, contingent, already dismissed, or otherwise speculative.[7] In the UCC Objection, the Committee speculates that ultimately PAX may be in the minority after more creditors file proofs of claim, but there is no evidence to support this, and the Committee surely knows it; in fact, where there is no operating business and no bar date, the notion that many other creditors are waiting in the wings to participate in the case seems far-fetched.

8. Although the Committee may contend conversion is needed to protect against PAX recovering first from Kwok, given the size of PAX's already adjudicated judgments, PAX is entitled to recover first. *See Acme Cake.*, 495 B.R. at 222 (holding "that dismissal is in the best interests of creditors and the estate is not affected by the ***probable result that [largest creditor]***

---

[6] This is calculated by taking PAX's claim of approximately $261 million and dividing by the next largest applicable claim of approximately $200,000.
[7] *See* Reply at 5, n. 5.

*will execute its judgment and reach the Debtor's assets before other unsecured creditors*"); *In re OptInRealBig.com, LLC*, 345 B.R. 277, 290 (Bankr. D. Colo. 2006) (holding that "a creditor should not be permitted to prolong or sustain a case merely to take advantage of benefits bankruptcy offers to creditors" and that a case could never be dismissed under section 1112 if guaranteeing the bankruptcy code's priority scheme was a precondition of dismissal).

9. Additionally, dismissal should not be denied (keeping PAX from pursuing its claims, which Kwok has frustrated for years), for the benefit of entities that are not actual creditors today. This case is not a mass tort bankruptcy where current plaintiffs know they will become actual creditors based on the debtor's pre-bankruptcy litigation history. Who knows when and if the contingent claims here will result in allowed claims against the Debtor. Further, permitting some creditors to increase their chances of payment is not enough to sustain a chapter 11 case filed in bad faith. *See In re Briarpatch Film Corp.*, 281 B.R. 820, 826 (Bankr. S.D.N.Y. 2002) (dismissing case for bad faith where debtor corporation—with no business or employees—and its principals were subject to extensive litigation and contempt proceedings and filed to avoid an adverse ruling, rejecting argument that bankruptcy could help creditors get paid).

### IV. THE CAUSE SUGGESTS THE REMEDY: DEBTOR BAD FAITH AND MISCONDUCT STRONGLY FAVOR DISMISSAL

10. Courts routinely dismiss cases where the debtor has filed in bad faith. Every one of the roughly 20 cases cited by PAX in the Dismissal Motion or Reply where the court found cause in the form of bad faith resulted in dismissal,[8] and countless additional cases follow the same pattern.[9] This demonstrates that where a debtor's filing was rotten from the get-go, dismissal is

---

[8] *See* Dismissal Motion ¶¶ 52, 54, 56–57, 59–60; Reply ¶¶ 9, 15 n.17 & 21, 30.
[9] *Collier's* has collected dozens of bankruptcy cases finding cause for bad faith, none of which resulted in conversion to chapter 7 except for four. *See* 7 Collier on Bankruptcy P 1112.07 (16th 2022). In each of these four cases, the creditors were, unlike here where PAX opposes it, **uniformly in favor of conversion**. *Finney v. Smith*, 141 B.R. 94, 103 (E.D. Va. 1992), *aff'd and modified*, 992 F.2d 43 (4th Cir. 1993); *See In re Winslow,* 123 B.R. 641,

the right remedy. *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 575 (D. Conn. 2016) (affirming decision to dismiss rather than convert case where conversion would continue bad faith filing to moving party's detriment).

11.    This is consistent with the fundamental precept that bankruptcy is for the "honest but unfortunate debtor" and not those engaged in malfeasance, especially when targeted at specific creditors. While remaining in bankruptcy, the Debtor will persist as a party in interest able to hinder, delay, and defraud PAX's efforts to collect on its judgments, and otherwise protect the Debtor's family and shell companies that hold his assets, through continued obfuscation and "shell games".[10]

12.    In contrast, where courts have converted a case for cause, it frequently has involved repetitive bankruptcy petitions, the debtor's non-compliance with court filing requirements, failure to file a plan, or the diminishing of the estate in a way that a chapter 7 trustee can remedy, such as by pursuing avoidance actions set to expire.[11] Here, the issues with Kwok's filings result from his bad faith, not failure to meet deadlines. If and to the extent that Kwok's estate is diminishing, that is a primarily result of the ballooning administrative expenses, which cannot be remedied by a trustee. The Committee may point to *SWJ Mgmt., LLC v. Coan*, 551 B.R. 93, 94 (D. Conn. 2015) (cause found for failure to take steps as chapter 11 debtor and file operating reports and proper

---

643–47 (D. Colo. 1991); *In re Bowman*, 181 B.R. 836, 846 (Bankr. D. Md. 1995); *In re Wright Air Lines, Inc.*, 51 B.R. 96, 99 (Bankr. N.D. Ohio 1985).

[10] *See Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 575 (D. Conn. 2016) (affirming decision to dismiss rather than convert case where conversion would continue bad faith filing to moving party's detriment).

[11] *See, e.g.*, *In re Sakon*, 617 B.R. 7, 16–18 (Bankr. D. Conn. 2020) (converting where cause was continuing losses); *In re Fuschi-Aibel*, No. 18-50052 (JAM), 2020 Bankr. LEXIS 180, at *9 (Bankr. D. Conn. Jan. 24, 2020) (failure to comply with court orders to file a plan and DS); *Hamilton Rd. Realty, LLC v. United States*, No. 20-CV-1746 (LDH), 2021 U.S. Dist. LEXIS 44486, at *11–13 (E.D.N.Y. Mar. 9, 2021) (definition monthly operating reports, administrative insolvency, and failure to file a plan); *Lynch v. Barnard*, 590 B.R. 30, 37 (E.D.N.Y. 2018) (cause for diminution of estate and failure to comply with court requirements, where trustee could jump start case); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346–47 (Bankr. S.D.N.Y. 2010) (cause for failure to file disclosure statement timely and where certain avoidance actions were set to expire).

6

disclosures and failure to retain unconflicted counsel), as a case from this District supporting conversion of a chapter 11 case. In *SWJ*, though the bankruptcy court did not find cause for bad faith dismissal, the debtor had displayed some misconduct. But *SWJ* is distinguishable from Kwok's case because the debtor sought dismissal and creditors overwhelmingly sought conversion, and the court was concerned the debtor would shortly refile a new bankruptcy case. Importantly, the *SWJ* case involved serial abusive filings and the court feared more filings in other jurisdictions would follow dismissal. Here, PAX—by far the largest creditor—favors dismissal and submits that dismissal ***will not*** harm collection efforts (and PAX has shown that Kwok can successfully be pursued in state court), while conversion ***will***. The only aspect of the *SWJ* decision that is relevant to this case is that it upholds this Court's broad discretion in deciding whether to dismiss or covert the case.

13.     Some courts, including a few lower courts within the Second Circuit, have taken special notice of factors for deciding between dismissal and conversion set forth in *Collier's*.[12] These factors favor dismissal. For example, PAX has explained at length why equality of distribution is not harmed by dismissal[13] (Factor 1), there are no apparent avoidance actions that would be lost upon dismissal (Factors 1 and 2), the debtor is unlikely to file another case (Factor 3), creditors are perfectly capable of reaching assets outside of bankruptcy, as shown by PAX's New York Action (Factor 4), conversion would only dissipate potential recoveries compared to dismissal as noted above (Factor 5), other issues such as the outstanding cases against Kwok and the contempt matters are all best pursued in state court (Factor 6), and the debtor has engaged in

---

[12] *In re BH S & B Holdings, LLC*, 439 at 346–47 (quoting 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6]); *see also In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011) (reciting same factors and observing that there is no "bright-line test to determine whether conversion or dismissal is in the best interests of creditors and the estate").
[13] *See* Reply at 5–9.

significant misconduct, including using bankruptcy as a delay and litigation tactic, which would not be remedied by a chapter 7 trustee(Factor 8).[14]

## CONCLUSION

For the reasons set forth above, PAX respectfully requests dismissal of the chapter 11 case.

Dated: May 20, 2022  
New York, New York

**Pacific Alliance Asia Opportunity Fund L.P.**

By: */s/ Patrick M. Birney*  
Patrick M. Birney (CT No. 19875)  
Annecca H. Smith (CT No. 31148)  
**ROBINSON & COLE LLP**  
280 Trumbull Street  
Hartford, CT 06103  
Telephone: (860) 275-8275  
Facsimile: (860) 275-8299  
E-mail: pbirney@rc.com  
          asmith@rc.com

-and-

Peter Friedman (admitted *pro hac vice*)  
Stuart M. Sarnoff (admitted *pro hac vice*)  
**O'MELVENY & MYERS LLP**  
Seven Times Square  
New York, NY 10036  
Telephone: (212) 326-2000  
Facsimile: (212) 326-2061  
Email: pfriedman@omm.com  
          ssarnoff@omm.com

---

[14] Factors 7 (single asset), 9 (whether plan already confirmed), 10 (environmental concerns) are generally inapplicable to the Debtor's case; they provide no basis for conversion.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2022, a copy of the foregoing was filed electronically through the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties receiving notice by operation of the court's electronic filing system. Parties in interest may access this filing through the Court's CM/ECF System.

/s/ *Patrick M. Birney*
Patrick M. Birney