## **EXHIBIT B**

Remand Motion

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN DIVISION

| | |
|---|---|
| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,<br><br>       Plaintiff,<br><br>       v.<br><br>KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a* MILES KWOK, *a/k/a* HAOYUN GUO, GENEVER HOLDINGS CORPORATION, and GENEVER HOLDINGS LLC,<br><br>       Defendants. | Chapter 11<br><br>Case No. 22-01073-dsj |

### PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S MOTION TO REMAND OR, IN THE ALTERNATIVE, FOR ABSTENTION PURSUANT TO 28 U.S.C. § 1334(C)(1)

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Pacific Alliance Asia Opportunity Fund L.P. ("PAX") respectfully moves this Court for

an order remanding this action to the Supreme Court of the State of New York – County of New

York: Commercial Division (Justice Ostrager presiding) (the "New York Court") or, in the

alternative, for an order abstaining from determining this action pursuant to 28 U.S.C.

§ 1334(c)(1).

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ..................................................................................... 3

ARGUMENT .......................................................................................... 14

I.    THIS ACTION MUST BE REMANDED BECAUSE THE COURT
LACKS JURISDICTION UNDER THE ROOKER-FELDMAN
DOCTRINE. ................................................................................... 14

II.   ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM
EXERCISING JURISDICTION......................................................... 20

      A    The Mandatory Abstention Doctrine Precludes the Court From
Exercising Its Authority Over the New York Action. ............................ 20

      B    Even if Mandatory Abstention Does Not Apply, The Court Should
Decline to Hear the Action Under the Permissive Abstention
Doctrine.................................................................................... 27

CONCLUSION........................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*47 E. 34th St. (NY), L.P. v. BridgeStreet Worldwide, Inc.*,
  No. 20-CV-9978 (LJL), 2021 WL 2012296 (S.D.N.Y. May 20, 2021) ............................. 29, 30

*Acolyte Elec. Corp. v. City of New York*,
  69 B.R. 155 (Bankr. E.D.N.Y. 1986).................................................................................. 21

*Baker v. Simpson*,
  613 F.3d 346 (2d Cir. 2010) ......................................................................... 20, 22, 23, 24

*Balcor/Morristown Ltd. Partnership v. Vector Whippany Associates*,
  181 B.R. 781 (D. N.J. 1995) ............................................................................................. 31

*Beard v. Braunstein*,
  914 F.2d 434 (3d Cir. 1990) ............................................................................................. 23

*Butner v. United States*,
  440 U.S. 48 (1979).............................................................................................................. 25

*Campbell v. Greisberger*,
  80 F.3d 703 (2d Cir. 1996) .............................................................................................. 14

*Catalano v. Comm'r of Internal Revenue*,
  279 F.3d 682 (9th Cir. 2002) ............................................................................................ 19

*Cornell v. Burke*,
  559 F. App'x 577 (7th Cir. 2014) ..................................................................................... 18

*D.C. Court of Appeals v. Feldman*,
  460 U.S. 462 (1983)............................................................................................................ 14

*Del. Tr. Co. v. Wilmington Tr., N.A.*,
  534 B.R. 500 (S.D.N.Y. 2015).......................................................... 21, 23, 26, 28

*Deloitte (Cayman) Corp. Recovery Servs., Ltd. v. Sandalwood Debt Fund A, LP*,
  31 929 N.Y.S.2d 199 (Sup. Ct. 2011) .............................................................................. 22

*Holblock v. Albany Cty. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005) ...................................................................... 15, 16, 17

*In re AHT Corp.*,
  265 B.R. 379 (Bankr. S.D.N.Y. 2001) ............................................................................. 22

ii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Ameribuild Const. Mgmt., Inc.*,
   399 B.R. 129 (Bankr. S.D.N.Y. 2009) .................................................................... 33

*In re Briarpatch Film Corp.*,
   281 B.R. 820 (S.D.N.Y. 2002) ........................................................... 29, 30, 31, 32

*In re CitX Corp.*,
   302 B.R. 144 (Bankr. E.D. Pa. 2003) ................................................................ 19

*In re Coudert Bros.*,
   No. 11-cv-4949 (PAE), 2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) ...................... 20, 23, 25

*In re Drauschak*,
   481 B.R. 330 (Bankr. E.D. Pa. 2012) ................................................................ 32

*In re Eight-115 Associates, LLC*,
   626 B.R. 383 (Bankr. S.D.N.Y. 2021) ............................................................ 21, 22

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   899 F.3d 13 (1st Cir. 2018) .............................................................................. 19

*In re Freehand H.J., Inc.*,
   No. 07 0157, 2007 WL 2071877 (Bankr. E.D. Pa. July 17, 2007) ......................... 14

*In re Ivani*,
   308 B.R. 132 (Bankr. E.D.N.Y. 2004) ................................................................ 18

*In re Knapper*,
   407 F.3d 573 (3d Cir. 2005) ............................................................................ 17

*In re Kurimsky*,
   No. 21-50021, 2021 WL 4269817 (Bankr. D. Conn. Sept. 20, 2021) .................. 14, 17

*In re Lyondell Chem. Co.*,
   402 B.R. 596 (Bankr. S.D.N.Y. 2009) ............................................................ 20, 30

*In re Millenium Seacarriers, Inc.*,
   419 F.3d 83 (2d Cir. 2005) .............................................................................. 23

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993) .............................................................................. 23

*In re Pacheco*,
   616 B.R. 126 (Bankr. D.N.M. 2020) ................................................................ 14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Rodriguez,*
 No. 18-14694-MKN, 2019 WL 137009 (D. Nev. Jan. 3, 2019) ........................................ 28, 32

*In re S.G. Phillips Constructors, Inc.,*
 45 F.3d 702 (2d Cir. 1995) ...................................................................................................... 21

*In re Salander-O'Reilly Galleries, LLC,*
 475 B.R. 9 (S.D.N.Y. 2012) ................................................................................................ 22, 23

*In re Stahl,*
 526 F. App'x 179 (3d Cir. 2013) ............................................................................................. 18

*In re WorldCom, Inc. Sec. Litig.,*
 293 B.R. 308 (S.D.N.Y. 2003) ................................................................................................ 28

*In re: Genever Holdings, LLC,*
 Case No. 20-12411-jlg (Bankr. S.D.N.Y.) .............................................................................. 8

*In re: Ho Wan Kwok,*
 Case No. 22-50073 (JAM), Bankr. D. Conn. .......................................................................... 2

*Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.,*
 62 B.R. 723 (S.D.N.Y. 1986) ................................................................................................... 18

*Juidice v. Vail,*
 430 U.S. 327 (1977) .................................................................................................................. 18

*Kelleran v. Andrijevic,*
 825 F.2d 692 (2d Cir. 1987) .................................................................................................... 30

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.,*
 600 B.R. 214 (S.D.N.Y. 2019) ......................................................................................... passim

*Lothian Cassidy, LLC v. Lothian Exploration & Development II, L.P.,*
 487 B.R. 158 (S.D.N.Y. 2013) ................................................................................................ 22

*Loudin v. J.P. Morgan Tr. Co.,*
 481 B.R. 388 (S.D.W. Va. 2012) ............................................................................................ 19

*M.B. v. Roosevelt Inn LLC,*
 2021 WL 5046216 (E.D. Pa. Oct. 27, 2021) ......................................................................... 33

*Marciano v. White,*
 431 F. App'x 611 (9th Cir. 2011) ...................................................................................... 18, 28

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McKithen v. Brown*,
  626 F.3d 143 (2d Cir. 2010) ...................................................................... 2, 14, 16

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
  639 F.3d 572 (2d Cir. 2011) ................................................................... 23, 26, 27

*PAX v. Kwok*,
  Case No. 1:22-cv-02258-MKV (S.D.N.Y.) ...................................................... passim

*PAX v. Kwok*,
  Case No. 2021-00740 (N.Y. App. Div.) .................................................................... 7

*PAX v. Kwok*,
  Case No. 2021-01010 (N.Y. App. Div.) .................................................................. 10

*PAX v. Kwok*,
  Case No. 2022-00609 (N.Y. App. Div.) .................................................................. 12

*PAX v. Kwok*,
  Case No. 22-01073-dsj (Bankr. S.D.N.Y.) ................................................... 1, 3, 13

*PAX. v. Genever Holdings Corp., et al.*,
  Case No. BVICOM2020/0137 (BVI) ........................................................................ 6

*PAX. v. Kwok*,
  Index No. 652077/2017 (N.Y. Sup. Ct.) ......................................................... passim

*Perkins v. Beltway Cap., LLC*,
  773 F. Supp. 2d 553 (E.D. Pa. 2011) ...................................................................... 15

*Phifer v. City of New York*,
  289 F.3d 49 (2d Cir. 2002) ...................................................................................... 14

*Rahl v. Bande*,
  316 B.R. 127 (S.D.N.Y. 2004) ................................................................................. 28

*Robinson v. HSBC Mortg. Servs., Inc.*,
  No. 15-CV-5480 (VEC), 2017 WL 570935 (S.D.N.Y. Feb. 10, 2017) .............. 15, 16

*Robinson v. Mich. Consol. Gas Co.*,
  918 F.2d 579 (6th Cir. 1990) ................................................................................... 22

*Rooker v. Fidelity Trust Co.*,
  263 U.S. 413 (1923) ................................................................................................. 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rose v. Cty. of York*,
    No. CIV.A. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007) ..................................... 17, 32

*Sindone v. Kelly*,
    439 F.Supp.2d 268 (S.D.N.Y. 2006) ................................................................................... 16

*Sinochem International Co. v. Malaysia International Shipping Corp.*,
    549 U.S. 422 (2007) ............................................................................................................... 1

*Stahl v. Twp. of Montclair*,
    No. CV 12-1644 (SRC), 2012 WL 12910637 (D.N.J. July 30, 2012) ................................. 3, 14

*Stern v. Marshall*,
    564 U.S. 462 (2011) ............................................................................................................. 22

*Vossbrinck v. Accredited Home Lenders, Inc.*,
    773 F.3d 423 (2d Cir. 2014) ............................................................................................... 14

*Worldview Entertainment Holdings Inc. v. Woodrow*,
    611 B.R. 10 (S.D.N.Y. 2019) ......................................................................................... 26, 27

**Statutes**

28 U.S.C. § 1334(c)(2) ................................................................................................... 20, 21

28 U.S.C. § 1404(a) ............................................................................................................. 1

28 U.S.C. § 1452(b) ........................................................................................................... 20

# PRELIMINARY STATEMENT[1]

Kwok's Notice of Removal[2] is the latest in a long series of improper delay tactics designed to avoid paying state court judgments totaling over $250 million and to re-litigate issues already decided by the New York Court.

The underlying dispute is straightforward. In March 2011, Kwok personally guaranteed a debt of more than $46 million owed to PAX.[3] For years, Kwok evaded PAX's collection efforts, and no portion of the guaranteed debt has been repaid. PAX filed this breach-of-contract action against Kwok in New York in 2017 (the "New York Action"). In February 2021, PAX secured a judgment in the New York Action for over $116 million.[4] Currently, two appeals are pending in the New York action: (i) on the merits of the breach of contract judgment and (ii) a final civil contempt order against Kwok for $134 million for failing to return the Lady May yacht—which

---

[1] All exhibit citations are to the exhibits attached to the Declaration of Peter Friedman in Support of PAX's Motion to Remand ("Friedman Decl."). Unless otherwise noted, all emphasis is added and all internal quotations are omitted.

[2] Kwok filed a notice of removal of the New York Action to the United States District Court for the Southern District of New York. Friedman Decl., Ex. 1, Notice of Removal, *PAX v. Kwok*, No. 1:22-cv-02258-MKV (S.D.N.Y.), Dkt. No. 1. Kwok later moved for entry of an order transferring this action pursuant to 28 U.S.C. §§ 1404 and 1412 and Rule 7087 of the Federal Rules of Bankruptcy Procedure. Friedman Decl., Ex. 2, Stipulation Resolving Motion to Transfer Venue, *PAX v. Kwok*, No. 22-01073-dsj (Bankr. S.D.N.Y.), Dkt. No. 7-1. The parties stipulated that a transfer would serve the interests of justice, and would foster the economic and efficient administration of the estate. *See* 28 U.S.C. §§ 1404(a). Friedman Decl., Ex. 2, Stipulation Resolving Motion to Transfer Venue, *PAX v. Kwok*, No. 22-01073-dsj (Bankr. S.D.N.Y.), Dkt. No. 7-1. In so doing, PAX expressly preserved its right to seek timely remand of the New York Action on any proper ground. *Id.* (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-32 (2007) (A district court may properly transfer an action pursuant to 28 U.S.C. § 1404(a), "bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.")).
[3] Friedman Decl., Ex. 3, Decision & Order on Motion, *PAX. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 549 at 5–7.
[4] Friedman Decl., Ex. 4, Judgment, *PAX v. Kwok et al.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. 716 at 2.

the New York Court found Kwok "beneficially owns and controls"[5]—to New York in connection with PAX's post-judgment collection efforts.[6]

Kwok's Notice of Removal—attaching PAX's April 2019 amended complaint in the New York Action (the "Amended Complaint")[7]—alleges that this Court has original jurisdiction over the Amended Complaint pursuant to 28 U.S.C. § 1334(b) and 1334(e). This is a transparently inappropriate attempt to have this Court act as an appellate court over the New York Court and to allow Kwok to re-litigate issues already fully heard and decided against him in New York.

The Court should remand the action to the New York Court for lack of subject-matter jurisdiction or, alternatively, abstain from exercising jurisdiction, for two principal reasons.

*First*, this Court lacks subject-matter jurisdiction over the New York Action under the *Rooker-Feldman* doctrine. The New York Court already considered and rejected Kwok's arguments on the same two claims he seeks to remove, which resulted in judgments holding that Kwok (i) is liable under the 2011 guarantee and (ii) is in contempt of court for 268 days in a manner that undermined the rule of law. Those judgments are now before the New York appellate court. Kwok is the textbook "state-court loser[]" seeking improper federal court appellate review of a state court judgment. *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010); *see also Stahl v. Twp. of Montclair*, No. 12-1644 (SRC), 2012 WL 12910637, at *5

---

[5] Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt.. No. 1181 ("Final Contempt Order") at 4.
[6] PAX has a pending request for relief to permit it to seek limited enforcement of the contempt order. *See In re: Ho Wan Kwok*, No. 22-50073 (JAM), Bankr. D. Conn., Mot. of PAX For Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief From the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code, Mar. 1, 2022, Dkt. No. 57.
[7] Friedman Decl., Ex. 6, First Amended Complaint, *PAX v. Kwok*, No. 1:22-cv-02258 (S.D.N.Y.), Dkt. No. 3.

(D.N.J. July 30, 2012) ("the bankruptcy court had no jurisdiction to review the lawfulness of the

state court's entry of summary judgment").

*Second*, even if this Court had jurisdiction under 28 U.S.C. § 1334, abstention is

appropriate here. The New York Action—a breach-of-contract dispute involving a pre-petition

contract and a pre-petition contempt order issued against Kwok for his contumacious behavior—

is a "non-core" proceeding under well-established caselaw, and thus mandatory abstention

applies. But even if the New York Action were a "core" bankruptcy proceeding, equitable

factors nevertheless warrant permissible abstention. For example, the New York Court has fully

ruled on the merits—leaving little to nothing for the Court to adjudicate, and Kwok's removal

petition is naked forum shopping for the purpose of escaping sanctions for his defiance of the

New York Court. It would be an improper disruption of federal-state comity for this Court to

assert control over and review contempt proceedings issued by the New York Court.

For these and the other reasons explained below, the New York Action should be

remanded.

## BACKGROUND

PAX sued Kwok in April 2017 in New York, asserting a breach-of-contract claim under

Hong Kong law against Kwok. In April 2019, PAX added a veil-piercing claim against Genever

Holdings LLC ("Genever NY") and Genever Holdings Corporation ("Genever BVI," and

together with Genever NY, (the "Genever defendants").[8] PAX prevailed on the merits of its

breach-of-contract claim in September 2020 and judgment was entered in February 2021.[9] Since

then, PAX has been attempting to collect against Kwok by focusing primarily on two high-value

---

[8] *Id.*

[9] Friedman Decl., Ex. 3, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017
(N.Y. Sup. Ct.), Dkt. No. 549; Friedman Decl., Ex. 4, Judgment, *PAX v. Kwok*, Index No.
652077/2017 (N.Y. Sup. Ct.), Dkt. No. 716.

assets: a luxury apartment in the Sherry-Netherland Hotel in New York City that Kwok owns

through nested shell companies (the "Residence"), and the Lady May yacht.

### Kwok's Breach of Contract

In 2008, PAX entered into an agreement with a Kwok-controlled entity, Spirit Charter

Investment Limited ("Spirit Charter"), under which PAX provided Spirit Charter with a loan

facility of $30 million.[10] Kwok simultaneously executed a personal guarantee of Spirit Charter's

loan.[11] In 2009, Spirit Charter executed a deed ("2009 Deed of Settlement") under which

another Kwok-controlled entity, Shiny Times Holdings Limited ("Shiny Times"), assumed the

debt that Spirit Charter owed PAX.[12] Kwok again executed a personal guarantee to secure Shiny

Times' repayment obligation.[13]

PAX and Shiny Times entered into a new loan facility in 2011 that superseded the 2009

Deed of Settlement.[14] Kwok also entered into a new personal guarantee ("2011 Personal

Guarantee"), which superseded the 2009 guarantee.[15] The 2011 Personal Guarantee provided,

among other things, that Kwok "irrevocably and unconditionally … guarantee[s] to PAX the due

and punctual payment of [Shiny Times'] [o]bligations [under the 2011 Loan Facility] and

agree[s] that promptly on PAX's demand he will pay to PAX all [o]obligations that are due but

unpaid."[16]

---

[10] Friedman Decl., Ex. 3, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017
(N.Y. Sup. Ct.), Dkt. No. 549 at 1.
[11] *Id.*
[12] *Id.* at 1–2.
[13] *Id.* at 2.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 7.

4

In April 2013, the parties entered into another deed of settlement ("2013 Deed of Settlement"), under which the outstanding loan amount due to PAX would be settled if PAX received possession of and legal title to three apartments from a different Kwok business entity called Beijing Pangu Investment Inc. ("Beijing Pangu").[17] Under the 2013 Deed of Settlement, Beijing Pangu was required to satisfy ten conditions precedent in connection with the transfer to PAX of the three apartments, and if any were not satisfied by June 2013, the 2013 Deed of Settlement would terminate, and the 2011 Loan Facility and Personal Guarantee would revert to full force and effect.[18] PAX and Kwok subsequently executed four extensions to the 2013 Deed of Settlement, the last of which required that all ten conditions precedent be satisfied by June 2015.[19] Kwok failed to satisfy timely all of the conditions,[20] triggering the revival the 2011 Personal Guarantee.[21]

By the time Kwok executed the final Deed of Settlement extension, and unbeknownst to PAX, Kwok had fled China. Kwok then purchased the Residence in March 2015 for $67.5 million through an entity called Genever NY (a New York LLC), which is wholly owned by Genever BVI (a British Virgin Islands company).[22] Kwok is the sole shareholder and director of

---

[17] *Id.* at 4.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 5. Namely, Kwok failed (i) to deliver clean title, (ii) to provide PAX with an invoice for the purchase of the apartments, (iii) to provide PAX with evidence regarding the payment of relevant taxes and charges in connection with the sale and purchase of the apartments, and (iv) to deliver the house ownership certificates of any of the three apartments to PAX. *Id.* at 5–6.

[21] *Id.* at 5.

[22] Friedman Decl., Ex. 10, Residence Purchase Application, *PAX. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 256 at SN 0046–47; *see also* Friedman Decl., Ex. 11, Genever NY LLC Agreement, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 252 at SN 0198–206.

Genever BVI.[23]  Also around this time, the Lady May was purchased for €28 million through

Hong Kong Investments Limited ("HK International"), a Hong Kong company that Kwok set up

and funded in 2006 and solely owned and controlled for 8 years before transferring it to a family

business associate for no consideration in October 2014, right before he fled China.[24]  In 2017,

the Lady May was transferred, again for no consideration, to Hong Kong International Funds

Investments (USA) Limited, LLC ("Hong Kong International USA"), a Delaware LLC

technically owned by his daughter, Mei Guo.[25]

In April 2017, after two demand letters by PAX went unanswered by Kwok or his

companies, PAX filed the New York Action.[26]  After approximately three years of proceedings,

the New York Court granted partial summary judgment in PAX's favor on September 15, 2020

on the breach-of-contract claim (the "Summary Judgment Order").[27]  The New York Court

---

[23] Friedman Decl., Ex. 11, Genever BVI Corporate Documents, *PAX v. Kwok*, Index No.
652077/2017 (N.Y. Sup. Ct.), Dkt. No. 252 at SN 0158–163.  In addition to the New York
Action, PAX also initiated ancillary proceedings in the in the British Virgin Island High Court
Commercial Court Division ("BVI Court") in order to prevent a transfer of the a Residence at the
parent level.  Friedman Decl., Ex. 12, Order, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup.
Ct.), Dkt. No. 1089.
[24] Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017
(N.Y. Sup. Ct.), Dkt. No. 1181 at 4.
[25] As an interim measure, Kwok's family business associate transferred the parked title to HK
International to Kwok's daughter for no consideration in June 2017.  *Id.*
[26] Friedman Decl., Ex. 6, First Amended Complaint, *PAX v. Kwok*, No. 1:22-cv-02258
(S.D.N.Y.), Dkt. No. 3.
[27] Friedman Decl., Ex. 3, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017
(N.Y. Sup. Ct.), Dkt. No. 549 at 7.  It should be noted that the only defense to summary
judgment on the breach-of-contract claim that Kwok even tried to muster was the bogus claim
that the 2011 Personal Guarantee—which Kwok himself proffered in evidence, produced from
his own files, admitted was authentic and relied on for several years in the litigation—somehow
was a forgery.  The New York Court properly determined that Kwok was estopped from raising
that defense at summary judgment or trial, and it is distressing to hear Kwok's bankruptcy
counsel perpetuate that obviously false narrative in presentations before this Court.  Indeed, all
one need look at to understand that Kwok's representation that he did not sign the 2011
Guarantee is perjurious is the contemporaneous email from his then lawyers at Stevenson, Wong
& Co. in Hong Kong to PAX the same morning Kwok executed that guarantee, which provides

6

ordered PAX to move to establish damages as to the amount due and owing under the 2011

Personal Guarantee, including applicable interest.[28]  On December 18, 2020, the New York

Court awarded PAX "damages of $46,426,489.00 plus contractual interest pursuant to the 2011

Personal Guarantee at a rate of 15% per annum from effective date of December 31, 2010 and at

the statutory rate of 9% per annum from the date of entry of this decision and order."[29]  This

judgment was entered on February 3, 2021 in the amount of $116,402,019.57.[30]

On March 4, 2021, Kwok appealed the Summary Judgment Order.[31]  The appeal was

fully briefed on October 15, 2021 and argued on December 6, 2021.[32]  The appeal is pending in

the New York Appellate Division, First Department, but is stayed due to Kwok's chapter 11

filing.

The New York Court was scheduled to adjudicate PAX's veil-piercing claim against the

Genever defendants in January 2021.[33]  Due to the COVID-19 pandemic, that proceeding was

postponed.  On October 12, 2020, Genever NY filed for chapter 11 bankruptcy in the Bankruptcy

Court for the Southern District of New York, staying PAX's judgment efforts against the

---

"Attached [] find herewith documents signed by Mr. Kwok Ho Wan for your further handling."
*See* Friedman Decl., Ex. 13, at PAX-KWOK-017468.

[28] Friedman Decl., Ex. 3, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017
(N.Y. Sup. Ct.), Dkt. No. 549 at 8.

[29] Friedman Decl., Ex. 14, Decision & Order on Damages, *Pacific Alliance Asia Opportunity
Fund L.P. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 685 at 5.

[30] Friedman Decl., Ex. 4, Judgment, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt.
No. 716 at 2.

[31] Friedman Decl., Ex. 15, Notice of Appeal, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup.
Ct.), Dkt. No. 725.

[32] *See* Friedman Decl., Ex. 16, Reply Brief for Defendant-Appellant, *PAX v. Kwok*, No. 2021-
00740 (N.Y. App. Div.), Dkt. No. 16.

[33] Friedman Decl., Ex. 4, Judgment, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt.
No. 716 at 5.

Genever defendants.[34]  The New York Bankruptcy Court later granted stay relief to allow PAX

to prosecute, and Genever NY to defend, the state court action.[35]  As explained below, PAX later

successfully moved for turnover of Kwok's shares of Genever BVI under New York

CPLR§ 5225, although—as he did with regard to the New York Court's order regarding the

yacht—Kwok to date has also entirely flouted that turnover order by failing to take any of the

steps necessary to effect the transfer of his Genever BVI shares to PAX.[36]

### Post-Judgment Asset Discovery

Shortly after the New York Court issued the Summary Judgment Order, PAX moved for

a post-judgment restraining order under CPLR § 5229.[37]  On September 30, 2020, the New York

Court restrained Kwok from, among other things, "interfer[ing] with any property in which he

has an interest."[38]  On October 15, 2020 the New York Court clarified its prior restraining order,

expressly holding Kwok "restrained from making or causing any sale, assignment, transfer, or

interference with any property in which he has an interest, whether directly or indirectly, and

from paying over or otherwise disposing of any debt now due or thereafter coming due to him

---

[34] Friedman Decl., Ex. 17, Voluntary Petition for Non-Individuals Filing for Bankruptcy, *In re: Genever Holdings, LLC*, No. 20-12411-jlg (Bankr. S.D.N.Y.), Dkt. No. 1.

[35] Friedman Decl., Ex. 18, Order Granting Debtor's Second Renewed Motion to Approve the Revised Settlement Agreement, *In re: Genever Holdings, LLC*, No. 20-12411-jlg (Bankr. S.D.N.Y.), Dkt. No. 141.

[36] Friedman Decl., Ex. 19, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2-17 (N.Y. Sup. Ct.), Dkt. No. 904.  PAX subsequently moved for an order of civil contempt. Friedman Decl., Ex. 20, Notice of Motion for Order of Civil Contempt for Failure to Comply with Court's Turnover Order, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1078.  The motion was fully briefed when Kwok filed his chapter 11 petition.  Friedman Decl., Ex. 21, PAX's Reply Mem. of Law in Further Supp. of Mot. for Order of Civil Contempt, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1116.

[37] Friedman Decl., Ex. 22, PAX's CPLR 5229 Mot. and Request for TRO, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 576.

[38] Friedman Decl., Ex. 23, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 591.

…."[39] The New York Court's October 15, 2020 order (the "Restraining Order") identified the Residence and the Lady May, stating that "[s]pecifically, Mr. Kwok and/or the registered owners of (1) the Residence at the Sherry-Netherland Hotel and (2) the yacht, 'the Lady May' are restrained from making or causing any sale, assignment, transfer, or interference with those assets."[40] The New York Court also held that PAX was entitled to post-judgment discovery regarding the Residence, the Lady May, and any other assets that Kwok directly or indirectly owns.[41]

PAX then undertook a year-long effort to enforce its judgment. As the New York Court recognized, "PAX encountered difficulty identifying assets over which Kwok exercised control because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members. This scheme has enabled Kwok to assert that he has no assets despite his lavish lifestyle …."[42] PAX's efforts were further thwarted by Kwok's broad invocation of his Fifth Amendment right in connection with PAX's post-judgment discovery requests.[43]

### Lady May Contempt Proceedings

Despite the New York Court's restraining orders,[44] Kwok allowed the Lady May to flee New York on or around October 9, 2021.[45] PAX filed and the New York Court granted its

---

[39] Friedman Decl., Ex. 24, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 630 at 1.

[40] *Id.*

[41] *Id.* at 2.

[42] Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok.*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1181 at 1.

[43] *Id.* at 2, 9–10.

[44] *See* Friedman Decl., Ex. 23, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 591; Friedman Decl., Ex. 24, Decision & Order on Motion, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 630.

[45] Friedman Decl., Ex. 25, VESSELFINDER, Voyage Analyzer

motion for a conditional order of civil contempt on March 16, 2021, explaining that "it is clear

that there has been an intolerable amount of gamesmanship, dissembling, and deceit in

proceedings before this New York Court relating to the whereabouts and ownership of the yacht

'Lady May' …. Rather than catalogue the many 'shell games' defendant Kwok has engaged in

with the assistance of counsel who should know better" "[f]or every day the yacht is outside the

jurisdiction of this Court after May 15, 2021, defendant Kwok will be fined $500,000."[46]

Kwok appealed the New York Court's order to the First Department, but remained in

contempt for 268 days.[47] The First Department affirmed the New York Court's March 16, 2021

order on November 4, 2021,[48] finding that "[t]he motion court acted within its discretion in

holding defendant in civil contempt, as plaintiff established by clear and convincing evidence

that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that

such violation resulted in prejudice to plaintiff's rights."[49] The First Department held that "the

daily fine of $500,000.00 was intended to strongly encourage [Kwok] to purge himself of the

contempt, which, despite being permitted to accomplish, he has shown no interest in doing."[50]

The First Department also "instructed" the New York Court "to proceed with an evidentiary

hearing to resolve a dispute as to ownership and control of the yacht."[51]

---

https://voyage.vesselfinder.com/dcad1f224b32615145e66055d9856504) (last visited Feb. 28, 2022).

[46] Friedman Decl., Ex. 26, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 728 at 2.

[47] Friedman Decl., Ex. 27, Notice of Appeal, *PAX v. Kwok*, No. 2021-01010 (N.Y. App. Div.), Dkt. No. 1.

[48] Friedman Decl., Ex. 28, Order, *PAX v. Kwok*, No. 2021-01010 (N.Y. App. Div.), Dkt. No. 17.

[49] *Id.* at 1.

[50] *Id* at 2.

[51] *Id.* Kwok filed a Motion for Leave to Appeal to the Court of Appeals on December 3, 2021, which was denied by the First Department on January 20, 2022. Friedman Decl., Ex. 29, Order, *PAX v. Kwok*, No. 2021-01010 (N.Y. App. Div.), Dkt. No. 22.

That evidentiary hearing was held on February 2, 2022, and the New York Court heard testimony from seven witnesses, including Kwok's daughter, who is the sole member of Hong Kong International USA, the purported owner of the Lady May.[52]  On February 9, 2022, the New York Court issued a final Order of Civil Contempt (the "Final Contempt Order"), noting that the New York Action's "1,180 docket entries" "almost all [] involve defendant Kwok['s] efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members."[53]  The New York Court found that "Kwok exercised dominion and control over [] the Lady May"[54] and that "[t]he testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[55]

The New York Court concluded that "[a]s of February 7, 2022, the Lady May has remained outside the jurisdiction of the Court for 268 days" and imposed a $134 million fine. Kwok was ordered to remit $134 million to PAX within five business days or the Court would be "prepared to exercise its full authority Judiciary Law § 753," New York's civil contempt provision.[56]

---

[52] Friedman Decl., Ex. 30, Third Interim Decision & Order on Motion, *PAX v. Kwok*, Index. No. 652077/2017 (N. Y. Sup. Ct.), Dkt. No. 1098.

[53]  Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1181 at 1.

[54] *Id.* at 2.

[55] *Id.* at 4.

[56] *Id.* at 10; *see also* Friedman Decl., Ex. 31, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1182.

On February 14, 2022, Kwok filed a notice of appeal of the Final Contempt Order and

requested an emergency interim stay pending appeal.[57]  The Appellate Division, First

Department denied Kwok's interim stay request the next day.[58]  On February 15, Kwok filed for

bankruptcy.  Notably, Kwok had not filed for bankruptcy when judgment was rendered against

him on the underlying breach of contract claim.  Equally notable, Kwok's bankruptcy petition

lists $50,001–$100,000 in assets[59]—omitting the valuable Lady May, which remains outside of

the United States,[60] unsupervised by any trustworthy fiduciary.

**Genever BVI Turnover Proceedings**

As mentioned above, because they were the sole assets Kwok admitted owning, PAX

moved for turnover of Kwok's shares in Genever BVI, the ultimate owner of the Residence,

under CPLR § 5225.  On September 22, 2021, the New York Court granted PAX's motion (the

"Genever Turnover Order") and, subject to the BVI Court amending an existing restraining order

(which it did in early December 2021), required Kwok to "take whatever steps are necessary in

the British Virgin Islands to turnover all share certificates with respect to his 100% ownership

interest in Genever Holdings Corporation."[61]  Kwok did not appeal the Genever Turnover Order,

yet—true to form—flouted that order by failing and refusing to take any steps at all to effect the

transfer of his Genever BVI shares to PAX.

---

[57] Ex. 32, Notice of Appeal, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1187.

[58] Friedman Decl., Ex. 33, Summary Statement on Application for Expedited Service and/or Interim Relief, *PAX v. Kwok*, No. 2022-00609 (N.Y. App. Div.), Dkt. No. 5.

[59] Voluntary Chapter 11 Petition, Dkt. No. 1 at 7.

[60] Friedman Decl., Ex. 8, VESSELFINDER, Voyage Analyzer, https://www.vesselfinder.com/?imo=1012359 (last accessed on April 12, 2022).

[61] Friedman Decl., Ex. 19, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 904 at 1.

As a result, on January 7, 2022, PAX moved for another order of civil contempt.[62]  The

motion was fully briefed on January 25, 2022.[63]  When Kwok filed his chapter 11 petition,[64] the

New York Court "propose[d] that [PAX] either withdraw the pending contempt motion []

without prejudice to an appropriate application in the Bankruptcy Court and/or without prejudice

to renewal before this Court, if appropriate, upon the conclusion of the bankruptcy

proceedings."[65]  The New York Court explained that "[t]he Court prefers not to keep fully

submitted motions pending for an indefinite time."[66]  PAX subsequently withdrew its motion

without prejudice.[67]

### **Chapter 11 Bankruptcy Filing and Notice of Removal**

Kwok filed for chapter 11 bankruptcy in the District of Connecticut February 15, 2022.[68]

As noted above, on March 18, 2022, Kwok removed the New York Action to the District Court

for the Southern District of New York before Kwok moved to transfer venue with PAX's

consent.[69]

---

[62] Friedman Decl., Ex. 20, Notice of Motion for Order of Civil Contempt for Failure to Comply
with Court's Turnover Order,  *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No.
1078.

[63] Friedman Decl., Ex. 21, PAX's Reply Mem. of Law in Further Supp. of Mot. for Order of
Civil Contempt, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1116.

[64] Friedman Decl., Ex. 34, Suggestion of Bankruptcy, *PAX v. Kwok*, Index No. 652077/2017
(N.Y. Sup. Ct.), Dkt. No. 1190.

[65] Friedman Decl., Ex. 7, Court Notice, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.),
Dkt. No. 1191.

[66] *Id.*

[67] Friedman Decl., Ex. 9, Decision & Order on Voluntary Withdrawal of Contempt Motion, *PAX
v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1193.

[68] Voluntary Chapter 11 Petition, Dkt. No. 1.

[69] Friedman Decl., Ex. 1, Notice of Removal, *PAX v. Kwok*, No. 1:22-cv-02258-MKV
(S.D.N.Y.), Dkt. No. 1;  Friedman Decl., Ex. 2, Stipulation Resolving Motion to Transfer Venue,
*PAX v. Kwok*, No. 22-01073-dsj (Bankr. S.D.N.Y.), Dkt. No. 7-1.

## **ARGUMENT**

I.    **THIS ACTION MUST BE REMANDED BECAUSE THE COURT LACKS
      JURISDICTION UNDER THE *ROOKER-FELDMAN* DOCTRINE.**

Under the *Rooker-Feldman* doctrine, federal courts lack subject-matter jurisdiction over

claims that challenge state-court judgments. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923);

*D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 (1983); *Phifer v. City of N.Y.*, 289 F.3d 49, 55–56

(2d Cir. 2002). In the Second Circuit, the preclusive nature of *Rooker-Feldman* extends to lower

state court judgments, interlocutory decisions, and matters on appeal. *Campbell v. Greisberger*,

80 F.3d 703, 707 (2d Cir. 1996); *McKithen*, 626 F.3d at 154–55 (holding "[t]he proper vehicle

for [the Plaintiff] to challenge the state court's interpretation of section 440.30(1–a)(a) was an

appeal to the New York Appellate Division"). Bankruptcy courts have acknowledged *Rooker-

Feldman*'s "strong public policy grounded in the interest of comity between federal and state

courts and the notion of federalism, that federal courts should not unnecessarily interfere with

state court proceedings." *In re Pacheco*, 616 B.R. 126, 132–33 (Bankr. D.N.M. 2020). In this

context, the doctrine "does not permit [the Bankruptcy Court] to disturb or disregard [a previous

j]udgment," and courts have held that "attempts to have it do so are an improper use of the

Bankruptcy Court." *In re Kurimsky*, No. 21-50021, 2021 WL 4269817, at *5 (Bankr. D. Conn.

Sept. 20, 2021) (Manning, C.J.). *See also Stahl v. Twp. of Montclair*, No. CV 12-1644 (SRC),

2012 WL 12910637, at *5 (D.N.J. July 30, 2012) (holding that "the bankruptcy court had no

jurisdiction to review the lawfulness of the state court's entry of summary judgment"). When the

federal court lacks subject-matter jurisdiction over removed claims, the case must be remanded.

*Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014); *In re Freehand

H.J., Inc.*, No. 07-12172, 2007 WL 2071877, at *1 (Bankr. E.D. Pa. July 17, 2007) ("Because

this Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, the

adversary proceeding will be remanded to the state court.").

In the Second Circuit, *Rooker-Feldman* applies if four requirements are met: "(i) the

federal court plaintiff must have lost in state court, (ii) the plaintiff must complain of injuries

caused by a state court judgment, (iii) the plaintiff must invite district court review and rejection

of that judgment, and (iv) the state court judgment must have been rendered before the district

court proceedings commenced."[70] *Holblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85

(2d Cir. 2005). The first and fourth requirements are procedural, while the second and third are

substantive. *Robinson v. HSBC Mortg. Servs., Inc.*, No. 15-CV-5480 (VEC), 2017 WL 570935,

at *3 (S.D.N.Y. Feb. 10, 2017).

Here, the removed New York Action consists of PAX's two-count Amended Complaint,

attached to PAX's Notice of Removal. Kwok's notice also refers to the New York Court's

finding that Kwok beneficially owns and controls the Lady May, although it ignores the critical

fact that those findings were issued in a contempt proceeding to vindicate the integrity of the

New York Court.[71] Kwok brings no other independent claim. Kwok accordingly appears to be

---

[70] PAX invokes *Rooker-Feldman* against the losing state court *defendant*, but the same four - factor test applies. *E.g.*, *Perkins v. Beltway Cap., LLC*, 773 F. Supp. 2d 553, 558 (E.D. Pa. 2011).

[71] Although Kwok's removal notice is required to contain a statement of the facts that purportedly justify his notice to remove, Fed. R. Bankr. P. 9027, in his Objection to PAX's motion to confirm the inapplicability of the stay to the Final Contempt Order, Kwok previewed his intent to attempt to re-litigate the issue of ownership of the Lady May. He asserted that the Final Contempt Order was "wrongfully issued against him" and that Kwok's interest in the Lady May is "ultimately [to] *be determined*." Objection to Lift Stay, Dkt. No. 83 (Mar. 15, 2022), at ¶¶ 4, 14. As noted in footnote 24 above, Kwok also continues to assert, disingenuously and against the weight of overwhelming evidence—including Kwok proffering of the very document to the NY Court and admitting and stipulating to its authenticity—that his 2011 Personal Guarantee somehow was a "forgery," Objection to Lift Stay, Dkt. No. 83 at ¶ 12, an argument squarely rejected by the New York Court. *See* Friedman Decl., Ex. 3, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 549 at 3 ("Kwok was

challenging in federal court: (1) the Summary Judgment Order issued on September 15, 2020 (which resulted in a judgment entered against Kwok on February 3, 2021); and (2) the Final Contempt Order issued on February 9, 2022,[72] requiring Kwok to remit $134 million to PAX and holding that Kwok "beneficially owns and controls" the Lady May. Both judgments easily satisfy the four *Rooker-Feldman* requirements.

*First*, Kwok is a "state-court loser" with respect to the two judgments because both were issued in PAX's favor. *McKithen*, 626 F.3d at 154.

*Second*, Kwok is complaining of "injuries" imposed by the New York Court. *Rooker-Feldman* is applicable where, as here, "*the state court itself is the decision-maker* whose action produces the injury." *Sindone v. Kelly*, 439 F. Supp. 2d 268, 272 (S.D.N.Y. 2006); *see, e.g.*, *Robinson*, 2017 WL 570935, at *3 (holding that "the causal requirement—the second prong—is satisfied because it is the state court foreclosure judgment that has caused Plaintiff's injury"). In *Hoblock*, for example, after first noting that the "voters' claims in this case seem at first to complain only of the [Board of Elections'] refusal to tally their votes rather than of any injury caused by the state court's judgment," the court clarified that "in refusing to tally the votes, the Board [was] acting under compulsion of a state-court order." 422 F.3d at 88. Thus, "the state-court judgment produced the Board's refusal to count the ballots, the very injury of which the

---

judicially estopped from challenging the authenticity of the agreements that Kwok had previously sponsored as authentic before the Court in this proceeding."). Kwok is bound by these findings.

[72] On March 1, 2022, PAX moved the bankruptcy court for an order confirming its right to institute further proceedings to enforce the Final Contempt Order or, in the alternative, relief from the automatic stay under 11 U.S.C. § 362(d)(1) and Rule 4001of the Federal Rules of Bankruptcy Procedure to permit enforcement of the Final Contempt Order, except to the extent it requires Kwok to immediately pay money to PAX. *See In re: Ho Wan Kwok*, No. 22-50073 (JAM), Bankr. D. Conn., PAX's Motion for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay, Dkt. No. 57.

voters complain." *Id.* at 89. Similarly here, Kwok seeks to avoid the New York Court's "power of compulsion" that entered judgments against him in excess of $250 million and its holding that, under New York law, Kwok beneficially owns and controls the Lady May.[73]

**Third**, Kwok plainly seeks direct federal court review and reversal of the two state court judgments. Kwok buries the lead in a footnote, acknowledging that removal is a collateral attack on the Final Contempt Order. Kwok's footnote provides: "The New York State Court has issued orders that contain factual findings with respect to these issues, including determining that the most relevant purported asset (the Lady May yacht) is within Mr. Kwok's beneficial ownership"[74]—and then invites this Court to "[re-]determine what is (or is not) property of the estate."[75] Kwok's removal attempt is a thinly-veiled gambit at improper federal court review, an impermissible "end-run around the state court appeals process" and "an impermissible collateral attack on the contempt charge." *See Rose v. Cnty. of York,* No. 05-5820, 2007 WL 136682, at *3 (E.D. Pa. Jan. 12, 2007); *In re Kurimsky*, 2021 WL 4269817, at *5 (applying *Rooker-Feldman* where the prior court held that "Avail-1, LLC *owns the secured debt*," and the bankruptcy court complaint alleged that it did not) (emphasis added).

*Rooker-Feldman* does not allow Kwok to seek relief that, if granted, would prevent the New York Court from enforcing its orders. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005). The doctrine accordingly applies especially to state court contempt proceedings, where federalism concerns are particularly strong. *Cornell v. Burke*, 559 F. App'x 577, 579 (7th Cir. 2014) ("Because a contempt order qualifies as a state-court judgment, *Rooker-Feldman* divests

---

[73] Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok.,* Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1181 at 4.

[74] Friedman Decl., Ex. 1, Notice of Removal, *PAX v. Kwok*, No. 1:22-cv-02258-MKV (S.D.N.Y.), Dkt. No. 1 at ¶ 7 n.1.

[75] *Id.* at ¶ 5.

the district court of jurisdiction to review it."). The ability of a court to issue contempt orders

and award sanctions "lies at the core of the administration of a State's judicial system."

*Marciano v. White*, 431 F. App'x 611, 614 (9th Cir. 2011) (citing *Judice v. Vail*, 430 U.S. 327,

335 (1977)). In *In re Ivani*, 308 B.R. 132, 137 (Bankr. E.D.N.Y. 2004), for example, the court

denied the debtor's motion to reverse the New York state court contempt finding under *Rooker-*

*Feldman* because "the [d]ebtor's argument will succeed only if this Court finds that the [state

court] made an incorrect determination and overrules that determination." *See also Int'l Distrib.*

*Ctrs., Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 729–30 (S.D.N.Y. 1986) (recognizing the

state court's "inherent power to punish the debtor for contumacious conduct against the dignity

of either the state or federal court, is not curtailed by the bankruptcy action"); *see In re Stahl*, 526

F. App'x 179, 180 (3d Cir. 2013) (recognizing that challenge to state court summary judgment

order disguised as a notice of removal pursuant to Fed. Bankr. P. 9027 would be barred by

*Rooker-Feldman*).

   ***Fourth***, both of the New York Court's judgments—entered on February 3, 2021 and

February 9, 2022 respectively—were issued before Kwok's February 15, 2022 chapter 11

filing.[76]

   Because the four *Rooker-Feldman* factors are met, this Court lacks subject-matter

jurisdiction over the New York Action.

   Kwok's red-herring assertion that the bankruptcy court has exclusive jurisdiction over the

Lady May, and thus the New York Action, under 28 U.S.C. § 1334(e), is wrong as a matter of

---

[76] Friedman Decl., Ex. 4, Judgment, *PAX v. Kwok*, Index No 652077/2017 (N.Y. Sup. Ct.), Dkt.
No 716; Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok*, Index No
652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1181; Friedman Decl., Ex. 31, Decision & Order on
Motion, *PAX v. Kwok*, Index No 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1182.

law.  While it is correct that the bankruptcy court has exclusive *in rem* jurisdiction "of all the

property, wherever located, of the debtor as of the commencement of such case, and of property

of the estate."[77]  28 U.S.C. § 1334(e), the exclusive jurisdiction granted by § 1334(e)(1) "is only

in *rem*."  *Loudin v. J.P. Morgan Tr. Co.*, 481 B.R. 388, 394 (S.D. W. Va. 2012) (citing *In re CitX*

*Corp.*, 302 B.R. 144, 161 (Bankr. E.D. Pa. 2003)).  Section 1334(e) does not extend to *in*

*personam* breach-of-contract actions, like this one, that "seek[] to establish personal liability of

the debtor on a claim, but [are not] specifically targeted to ownership of, or rights in and to,

property of the estate."  *Id.*  In fact, the Final Contempt Order applies to Kwok *personally*; Kwok

could have complied with the Order, but has refused to do so.

And of course, any effort to have this case heard in federal court on § 1334(e)(1) grounds

would be mooted if the bankruptcy court grants PAX's Motion For Entry of an Order

Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief From the

Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code.[78]  It is well within this

Court's powers to permit the New York Court to oversee actions related to the Lady May.  *See In*

*re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 899 F.3d 13, 22 (1st Cir. 2018) (recognizing that

Section 1334(e) does not "limit[] the bankruptcy court's power to allow others to act on the

debtor's property," including permitting a non-bankruptcy court to "grant leave to allow a

creditor to sell a debtor's property" (citing *Catalano v. Comm'r of Internal Revenue*, 279 F.3d

682, 687 (9th Cir. 2002)).

---

[77] PAX acknowledges that liquidation of the Lady May, which the New York Court found Kwok
"beneficially owns and controls," and distribution of resulting proceeds should occur in the
chapter 11 process (in the event this case is not dismissed).
[78] *See* PAX's Motion for Entry of an Order Confirming the Inapplicability of the Automatic Stay
or, in the Alternative, Relief from the Automatic Stay, Dkt. No. 57.

In sum, Kwok's appropriate avenue to seek relief from the contempt order is in the New York appellate courts. *In re Lyondell Chem. Co.*, 402 B.R. 596, 610 (Bankr. S.D.N.Y. 2009) ("[B]y reason of the *Rooker-Feldman* doctrine, and common sense, New Jersey's appellate courts are the only entities that can decide the legal issues as to whether the judgment against Lyondell was in accordance with New Jersey law."). Because the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction over all claims and issues decided in the New York Action, this action must be remanded.

## II.  ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION.

Even if the Court finds that it has jurisdiction over the New York Action (it should not), the Court should abstain from hearing it. *See* 28 U.S.C. § 1334(c)(2); 28 U.S.C. § 1452(b). Because, *inter alia*, the New York Action is a garden-variety breach-of-contract dispute based on a contract executed over a decade before the chapter 11 petition, it is considered a "non-core" proceeding, *see, e.g.*, *In re Coudert Bros.*, No. 11-cv-4949 (PAE), 2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011). Accordingly, the doctrine of mandatory abstention precludes the Court from hearing such non-core proceedings. But even if the breach-of-contract claim were a "core" proceeding, equitable factors—including that very few issues remain for the federal court to adjudicate, *see supra* at 14–20, and that Kwok's removal is blatant forum shopping—strongly support remand under the permissive abstention doctrine.

### A  The Mandatory Abstention Doctrine Precludes the Court From Exercising Its Authority Over the New York Action.

Upon determining that a bankruptcy court has jurisdiction over a matter, courts "look to the abstention doctrine to provide guidance as to the proper exercise of that jurisdiction." *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010). "The abstention provisions implicate the question whether the bankruptcy court *should* exercise jurisdiction, not whether the court *has* jurisdiction

in the first instance." *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995).

Under the mandatory abstention doctrine, "the district court shall abstain from hearing such

proceeding if an action … can be timely adjudicated, in a State forum of appropriate

jurisdiction." 28 U.S.C. § 1334(c)(2). Where, as here, a case has been removed, remand is

required if six criteria are met:

> (1) a "timely" motion for abstention must have been brought; (2) the action must
> be based upon a state-law claim; (3) the action must be "related to" a bankruptcy
> proceeding, as opposed to "arising under" title 11 or "arising in" a case under title
> 11; (4) the sole federal jurisdictional basis for the action must be Section 1334; (5)
> the action must have been "commenced" in state court; and (6) the action must be
> capable of being "timely adjudicated" in state court.

*Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 512 (S.D.N.Y. 2015). The party "arguing in

favor of the Court's retention of jurisdiction"—*i.e.*, Kwok—"bears the burden of showing that

mandatory abstention is not warranted." *In re Eight-115 Associates, LLC*, 626 B.R. 383, 391

(Bankr. S.D.N.Y. 2021). Here, each element is satisfied, and Kwok cannot demonstrate

otherwise.

> ***First***, the abstention motion is timely. Whether an abstention motion is timely "must be

determined on a case-by-case basis." *Id.* at 392. Courts consider:

> (1) whether the movant moves as soon as possible after he or she should have
> learned the grounds for such a motion, (2) whether the moving party has already
> invoked the substantive process of the federal court on a matter going to the
> merits of the complaint, and in particular, moved for abstention only after
> receiving an unfavorable outcome, and (3) whether the granting of the motion
> would prejudice or delay the rights of others.

*Id.* Here, little time has elapsed since Kwok's removal, which is well within the time courts have

found abstention motions timely. *See Acolyte Elec. Corp. v. City of N.Y.*, 69 B.R. 155, 177

(Bankr. E.D.N.Y. 1986) (motion timely when filed less than two months after filing of adversary

complaint); *see also Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 584 (6th Cir. 1990)

21

(finding the motion was timely more than eight months after removal).  Second, PAX has not

invoked the substantive process of this Court "going to the merits of the complaint," nor is it

moving "only after receiving an unfavorable outcome."  *In re Eight-115 Assocs.*, 626 B.R. at

391–92; *cf. In re AHT Corp.*, 265 B.R. 379, 384 (Bankr. S.D.N.Y. 2001) (motion untimely when

made after receiving an adverse ruling on a motion to dismiss).  Finally, abstention would not

prejudice or delay Kwok.  Accordingly, the motion is timely.

> **Second**, the New York Action is based on PAX's breach-of-contract claim against Kwok,

the type of claim routinely litigated in state court.  *E.g.*, *Deloitte (Cayman) Corp. Recovery

Servs., Ltd. v. Sandalwood Debt Fund A, LP*, 929 N.Y.S.2d 199 (Sup. Ct. 2011) (breach-of-

contract claim appropriate for abstention).

> **Third**, the New York Action does not "arise under" or "arise in" Title 11, but merely

"relate[s] to" Kwok's bankruptcy.  28 U.S.C. § 1334 vests district courts with jurisdiction over

"all proceedings arising under title 11, or arising in or related to cases under title 11."  *See

generally Stern v. Marshall*, 564 U.S. 462 (2011).  These "three types of jurisdiction" "are

colloquially referred to as 'arising under,' 'arising in,' and 'related to' jurisdiction."  *Lothian

Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 161 (S.D.N.Y. 2013).  "Arising

under" jurisdiction exists in "any matter under which a claim is made under a provision of title

11."  *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 27 (S.D.N.Y. 2012).  "Arising in"

jurisdiction exists in a matter where the claims "are not based on any right expressly created by

title 11, but nevertheless would have no existence outside of the bankruptcy."  *Baker*, 613 F.3d at

350–51.  Lastly, "related to" jurisdiction exists if the action's "outcome might have any

conceivable effect on the bankrupt estate." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639

F.3d 572, 579 (2d Cir. 2011).[79]

The Second Circuit has explained that "a proceeding that 'arises under' or 'arises in' Title

11 is a 'core' bankruptcy proceeding, but a proceeding that is merely 'related to' a Title 11 case

is not—and in a non-core proceeding, the doctrine of mandatory abstention applies."

*Wilmington Tr.*, 534 B.R. at 512 (quoting *Baker*, 613 F.3d at 350). The determination of whether

a contract action is a core proceeding or a non-core proceeding requires consideration of "(1)

whether [the] contract is *antecedent* to the reorganization petition; and (2) the degree to which

the proceeding is *independent* of the reorganization." *In re Millenium Seacarriers, Inc.*, 419

F.3d 83, 97 (2d Cir. 2005). Claims "for pre-petition contract damages"—such as PAX's breach-

of-contract action against Kwok—are generally "non-core." *See In re Orion Pictures Corp.*, 4

F.3d 1095, 1102 (2d Cir. 1993) (citing *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990));

*see also In re Coudert Bros.*, 2011 WL 7678683, at *5 ("Where a contract sued upon was formed

prior to the bankruptcy petition, it will generally be highly unlikely that a proceeding based on

that contract turns on the bankruptcy laws.").

Neither "arising under" nor "arising in" jurisdiction exists here. First, Kwok does not

suggest that "arising under" jurisdiction exists; he could not, because the proceeding involves a

breach-of-contract claim—not a claim "under a provision of title 11." *In re Salander*, 475 B.R.

at 27; *see also KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 226 (S.D.N.Y.

2019) (no "arising under" jurisdiction existed where "Plaintiffs assert[ed] state law breach of

contract and related claims, which do not arise under Title 11"). Nor does "arising in"

---

[79] PAX acknowledges "related to" jurisdiction exists here.

jurisdiction exist, because the claims existed "outside of the bankruptcy" for almost five years. *Baker*, 613 F.3d at 350–51.

And Kwok's perfunctory suggestion that the New York Action "arises in" chapter 11 because it involves a determination of Kwok's ownership in the Lady May does not withstand scrutiny.[80] Kwok appears to argue that because section 541 of the Bankruptcy Code governs what becomes property of the estate, and the New York Court determined as part of its Final Contempt Order that Kwok beneficially owns the Lady May, the New York Action must "arise in" his bankruptcy case. Not so. Whether Kwok could be held in contempt for refusing to return property he beneficially owned pre-petition was a legal matter that existed under New York law completely independent of this chapter 11 case, as does his continued contempt.

The New York Action was not, as Kwok claims, one "seeking to determine what is (or is not) the property of Mr. Kwok or his estate."[81] No "estate" existed when Justice Ostrager decided Kwok's interest in the Lady May. As a consequence of the New York Action, there has already been a finding that Kwok beneficially owns and controls the Lady May under New York law. *There is nothing further to litigate on that issue.* If this case is remanded and the automatic stay modified, Justice Ostrager will not revisit the property issue. Rather, the only issue the New York Court might address is the consequence of Kwok's continued contumacious behavior. Moreover, Justice Ostrager's decision does not invoke Section 541 or encroach on any action that might arise under Section 541 in the bankruptcy court. If there must be a separate proceeding that implicates Section 541, that can occur in Kwok's chapter 11 case, but any potential action regarding the Lady May will be significantly informed by (if not outright

---

[80] Friedman Decl., Ex. 1, Notice of Removal, *PAX v. Kwok*, No. 1:22-cv-02258-MKV (S.D.N.Y.), Dkt. No. 1 at ¶ 6.
[81] *Id.*

controlled by) the findings of fact and judgments in the New York Action, as issues regarding property rights in bankruptcy are generally determined by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Indeed, PAX will establish that the doctrines of *res judicata* and collateral estoppel bar Kwok and others who participated in the New York Action from re-litigating claims and issues already decided in that forum. In any event, Kwok already was held liable for contract damages; the court's determination that Kwok beneficially owns and controls the yacht was a prerequisite to the finding that Kwok had violated the court's orders and was in contempt. The underlying cause of action is what matters, and that is based on contract rights that exist "independent of the reorganization." *Cf. KeyBank Nat'l Ass'n*, 600 B.R. at 227 ("arising in" jurisdiction existed over a dispute concerning "a post-petition contract the resolution of which depend[ed] upon the interpretation of bankruptcy court orders"). "Put differently, where, as here, a non-core legal claim has essentially been 'dressed up as a bankruptcy claim,' that label does not justify treating the claim as core." *In re Coudert Bros.*, 2011 WL 7678683, at *4.

*Fourth*, 28 U.S.C. § 1334 is the sole purported federal jurisdictional basis for the New York Action identified in the removal petition. As explained, the New York Action involved contract construction and the application of New York's judgment collection provisions. Moreover, given there is a foreign-based plaintiff (PAX) and a foreign-based defendants, no diversity jurisdiction exists.

*Fifth*, the New York Action was "commenced" in state court.[82]

---

[82] *See.* Friedman Decl., Ex. 6, First Amended Complaint, *PAX v. Kwok*, No. 1:22-cv-02258 (S.D.N.Y.), Dkt. No. 3.

**Sixth**, the New York Action is "capable of being timely adjudicated in state court."
*Wilmington Tr.*, 534 B.R. at 512. Courts evaluate whether an action may be timely adjudicated
in state court by considering four factors: "(1) the backlog of the state court's calendar relative
to the federal court's calendar; (2) the complexity of the issues presented and the respective
expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state
law claims are related; and (4) whether the state court proceeding would prolong the
administration or liquidation of the estate." *Parmalat*, 639 F.3d at 580.

These factors demonstrate that the New York Action is *capable* of being timely
adjudicated in state court, primarily because it *already* has been adjudicated. First, no concern
about backlog of the state court's calendar exists, because the case has been litigated for five
years and Justice Ostrager *already* adjudicated PAX's breach-of-contract claim, and *already*
decided the contempt issue. *See Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 19
(S.D.N.Y. 2019) ("If anything, this factor cuts in favor of abstention because the state court
proceeding has been ongoing for five years."). Second, the "facts in [the] case [were] especially
complex," rendering the state court the more appropriate forum. *Parmalat*, 639 F.3d at 580–81.
Indeed, as Justice Ostrager aptly noted in the Final Contempt Order, the New York Action is a
"2017 case with ***1,180 docket entries*** – almost all of which involve defendant Kwok's efforts to
avoid and deceive his creditors by parking his substantial personal assets with a series of
corporations, trusted confidants, and family members."[83] This factor also favors abstention
because the state court action is a breach-of-contract dispute over which a federal court has no
specialized expertise. *Woodrow*, 611 B.R. at 19. Finally, there is no doubt that any additional

---

[83] Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok*, Index No. 652077/2017
(N.Y. Sup. Ct.), Dkt. No. 1181.

contempt proceedings instituted before Justice Ostrager can and will be adjudicated on a timely basis. Either Kwok will remain in contempt or not; that issue is not complicated.

The third and fourth factors also weigh in favor of state court adjudication. The third factor considers "the status" of the chapter 11 proceeding, asking "whether the litigants in a state proceeding need the state law claims to be quickly resolved as a result of the status of the ongoing title 11 bankruptcy proceeding." *Parmalat*, 639 F.3d at 581. This factor counsels in favor of abstention because "the bankruptcy proceedings began relatively recently in comparison to the state court proceedings." *Woodrow*, 611 B.R. at 19. Finally, state court adjudication would not "prolong the administration or liquidation of the estate," because "[i]t is undisputed that the proceedings in the state court will remain subject to the automatic stay unless and until it is lifted by the bankruptcy court." *Id.* at 19–20. Thus, either the automatic stay will be modified and the New York Action will aid resolution of Kwok's bankruptcy, or the New York Action will remain dormant and not impact proceedings in the bankruptcy court. Accordingly, "there is little chance that the bankruptcy proceedings will be affected or delayed by the state court proceeding." *Id.* at 19.

For each of these reasons, the doctrine of mandatory abstention precludes this Court from hearing the New York Action.

**B    Even if Mandatory Abstention Does Not Apply, The Court Should Decline to Hear the Action Under the Permissive Abstention Doctrine.**

Even if the Court were to find that jurisdiction exists (it does not) and that mandatory abstention does not apply (it should were jurisdiction to exist), the Court nevertheless should abstain under the doctrine of permissive abstention.[84] That doctrine is based on 28 U.S.C. §

---

[84] Alternatively, the Court should remand the case for equitable reasons under 28 U.S.C. § 1452(b), which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." "In assessing whether to

27

1334(c)(1), which states, "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." In deciding whether to abstain on this ground, courts weigh considerations of comity and federalism, judicial economy, and efficiency. *Wilmington Tr.*, 534 B.R. at 512.

It is difficult to think of a case where comity requires remand more than this one: Kwok filed this case to avoid being held accountable for contempt, first via invocation of the automatic stay and now by removal of the New York Action. Kwok earned every bit of his sanction by flagrantly disregarding court orders and affronting the dignity and sanctity of the New York court system. Out of respect for state courts alone, remand should be granted. *Marciano*, 431 F. App'x at 614 (challenge to state court's issuance of sanctions implicates power that "lies at the core of the administration of a State's judicial system"); *see, e.g.*, *In re Rodriguez*, No. 18-14694-MKN, 2019 WL 137009, at *4–5 (D. Nev. Jan. 3, 2019) (permissive abstention appropriate where debtor's removal of state court action "had the effect of depriving the State Court of authority" to enforce its prior order through contempt sanctions).

---

remand a case under 28 U.S.C. § 1452(b), courts consider a similar set of factors as when deciding whether to permissively abstain, including: '(1) whether issues of state law predominate; (2) whether judicial economy would be served by … equitable remand; (3) whether § 1334(b) is the sole basis for exercising federal jurisdiction; (4) whether the proceeding involves non-debtors; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; and (6) the likelihood that the proceeding was commenced in a particular forum because of forum shopping on the part of one of the parties.'" *KeyBank Nat'l Ass'n*, 600 B.R. at 226 (quoting *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004)). Because the factors overlap, this Motion addresses permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) jointly. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003) ("The equitable remand analysis ... is essentially the same as the Section 1334(c)(1) abstention analysis.").

Courts in the Second Circuit consider multiple factors when determining whether to

permissively abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*47 E. 34th St. (NY), L.P. v. BridgeStreet Worldwide, Inc.*, No. 20-CV-9978 (LJL), 2021 WL

2012296, at *9 (S.D.N.Y. May 20, 2021) (quoting *KeyBank Nat'l Ass'n*, 600 B.R. at 225).

Application of these factors—factors 1, 2, 3, 4, 5, 6, 8, 9, and 10—overwhelmingly

favors permissive abstention.  With respect to factors 2 and 4, not only did state law issues—

including in the context of judgment collection proceedings under Article 52 of the CPLR—

predominate, they were *already decided* by the New York Court.  As explained, Justice Ostrager

already issued (i) the Summary Judgment Order in PAX's favor on its breach of contract claim

and (ii) the Final Contempt Order, holding that Kwok was in contempt of court.[85]  *See supra* at

6–7, 11.  Under these circumstances—for essentially the same reasons that the *Rooker-Feldman*

doctrine applies—principles of comity "virtually require" remand.  *In re Briarpatch Film Corp.*,

281 B.R. 820, 829 (S.D.N.Y. 2002) (equitable remand appropriate because "[s]tate law issues not

only predominated," "they were determined by that Court"); *see also 47 E. 34th St. (NY), L.P.*,

---

[85] Friedman Decl., Ex. 5, Decision & Order on Motion, *PAX v. Kwok*, Index No 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1181 at 3.

2021 WL 2012296, at *10 (permissive abstention appropriate where "[t]he entirety of the case [was] ready for summary adjudication," and "that summary adjudication [could] be most efficiently handled by the state court judge who already ha[d] been presiding over the state law issues in this case").  This is especially true because "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987); *see also In re Lyondell Chem. Co.*, 402 B.R. at 609 (observing that "[u]ntil or unless New Jersey's courts say otherwise," the judgment creditor who won a judgment in New Jersey state court "now has a claim in this Court in the amount awarded by the trial court").  For the same reasons, factor 1—efficient administration of the estate— similarly favors remand:  "[I]t would be highly inefficient for this Court to reconsider matters which the State court tried and determined." *In re Briarpatch*, 281 B.R. at 831.  The same is true for factor 3, the difficulty or unsettled nature of the issues. *Briarpatch* is directly on point: "[T]he question is not whether the issues were difficult or not; the key factor here is that the State court determined them." *Id.* at 829.

For factor 5, no jurisdictional basis other than 28 U.S.C. § 1334 exists, further strengthening the case for permissive abstention.  Factors 6—the degree of relatedness—and 8— the feasibility of severing the New York Action—also favor remand.  The action exists—and has existed for almost five years—entirely independently of the bankruptcy.  It involves a breach-of-contract claim based on a pre-petition contract that in no way relates to the bankruptcy. *See 47 E. 34th St. (NY), L.P.*, 2021 WL 2012296, at *9 ("simple state law contract case" was not "directly related to the bankruptcy").  And, unlike cases where courts have found permissive abstention inappropriate, the New York Action requires no interpretation of orders from the Bankruptcy Court. *Cf. KeyBank Nat'l Ass'n*, 600 B.R. at 233 (severing the state law claims was

30

not straight-forward "because they involve issues that require interpreting the Bankruptcy

Court's orders."). With respect to factor 9, remand would place no burden on the state court's

docket, because the state court *already adjudicated* PAX's claim (and the First Department had

already received a fully-briefed appeal on the Summary Judgment Order).

Finally, Kwok's commencement of the bankruptcy proceeding and attempt to remove the

New York Action and transfer it to the bankruptcy court strongly suggest improper forum

shopping (factor 10).  Kwok filed his chapter 11 petition just before Justice Ostrager's contempt

sanctions were to take effect, and removed the case shortly thereafter.  *See Balcor/Morristown

Ltd. P'ship v. Vector Whippany Assocs.*, 181 B.R. 781, 793 (D.N.J. 1995) (forum shopping likely

where motion for contempt sanctions was "on the eve of decision" when debtor filed removal

petition).  *In re AMeribuild Const. Mgmt., Inc.,* 399 B.R. 129, 134–35 (Bankr. S.D.N.Y. 2009)

("There are strong reasons to remand or to abstain" where the timing of removal suggests an

attempt to avoid contempt sanctions); *M.B. v. Roosevelt Inn LLC,* 2021 WL 5046216, at *6 (E.D.

Pa. Oct. 27, 2021) (abstention and remand appropriate where timing of removal "at least

suggests that the defendants might be seeking a better result by shopping around").  Moreover,

Kwok's Notice of Removal offers no description of what the federal court would in fact

adjudicate—likely because the removal is merely a ploy to (i) delay PAX's motion in the

bankruptcy court to confirm the inapplicability of the automatic stay with respect to Justice

Ostrager's Final Contempt Order,[86] and (ii) try to get a second bite at the apple by attempting to

---

[86] Mot. of PAX For Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief From the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code, Dkt. No. 57.

re-litigate issues already decided against him by the New York Court.[87]  But, as Judge Gropper

aptly noted in *Briarpatch*, "[b]ankruptcy courts must respect the orders and judgments of State

courts and cannot act as a court of review or appeal as to matters that have been decided by State

courts with jurisdiction.  281 B.R. at 829.  There, the debtor "complain[ed] bitterly about the

State court proceedings," but failed to identify "what motions" "would be available to them

today," "or precisely what they would have th[e] Court accomplish, other than to act as a general

court of review."  *Id.* at 829–30.  In effect, the debtor sought "a judge who [would] take a 'new

look,' which is "an impermissible attempt at forum shopping"—precisely the case here.  *In re

Rodriguez*, 2019 WL 137009, at *4 (reasoning that "[t]he specter of forum shopping is

significant" where debtor removed shortly after an "evidentiary hearing was scheduled on a

motion to hold the Debtor … in civil contempt"); *In re Drauschak*, 481 B.R. 330, 347 (Bankr.

E.D. Pa. 2012) (same); *Rose*, 2007 WL 136682, at *3 (barring federal court challenge to state

contempt order as "an impermissible collateral attack on the contempt charge").

Many of the factors relevant to permissive abstention ultimately are tied to the decision in

Kwok's bankruptcy case on PAX's motion to confirm the inapplicability of the automatic stay

or, in the alternative, relief from the automatic stay concerning the Final Contempt Order.

Specifically, if the bankruptcy court determines that the stay does not apply or should be

modified, then—by definition—it will be deciding that remand is warranted and that proceeding

with enforcement of the Final Contempt Order will not interfere with the bankruptcy.

Conversely, if the Court determines that the stay applies to enforcement of the Final Contempt

---

[87] In his Objection to PAX's motion to confirm the inapplicability of the stay to the Final
Contempt Order, Kwok previewed his intent improperly to attempt to re-litigate the issue of
ownership of the Lady May.  *See supra* note 71.

Order, or that it should not be modified, then remand still will not interfere with the bankruptcy, because the automatic stay will remain in effect until the Court says otherwise.

**<u>CONCLUSION</u>**

For the reasons set forth above, PAX respectfully requests that the Court grant its motion to remand the New York Action to the New York State Supreme Court, Commercial Division. Given the facts and circumstances, PAX requests that the Court waive, to the extent applicable, the 14-day stay of the enforcement of a judgment under Bankruptcy Rule 7062.

<table>
<tr>
<td>Dated: April 13, 2022<br>New York, NY</td>
<td>**Pacific Alliance Asia Opportunity Fund L.P.**<br><br>*/s/ Peter Friedman*<br>Peter Friedman (admitted *pro hac vice*)<br>Stuart M. Sarnoff<br>**O'MELVENY & MYERS LLP**<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>E-mail: pfriedman@omm.com<br>        ssarnoff@omm.com</td>
</tr>
</table>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 13, 2022, a copy of the foregoing was filed electronically

through the Court's CM/ECF System.  Notice of this filing will be sent by e-mail to all parties

receiving notice by operation of the court's electronic filing system.  Parties in interest may

access this filing through the Court's CM/ECF System.


*/s/ Peter Friedman*
Peter Friedman