## **<u>EXHIBIT D</u>**

Referral Motion

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P., | |
| Plaintiff, | 3:22-cv-00553-VAB |
| vs. | |
| KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION, | |
| Defendants. | April 21, 2022 |

## PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S MOTION TO REFER CASE TO UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF CONNECTICUT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Pursuant to sections 151 and 157(a) of Title 28 of the United States Code, this Court's

Standing Order, dated September 21, 1984 (the "Standing Referral Order"),[1] and the *So Ordered*

*Stipulation Resolving Motion to Transfer Venue*, entered  by the United States Bankruptcy Court

for the Southern District of New York (Jones, U.S.B.J.) on April 15, 2022 (the "Conditional

Transfer Order"), Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), respectfully moves[2]

that this Court refer the above-captioned proceeding to the United States Bankruptcy Court for

District of Connecticut for assignment to the Honorable United States Bankruptcy Judge Julie A.

---

[1]   A copy of the Standing Order can be found at  https://www.ctd.uscourts.gov/sites/default/files/general-ordes/1984_Standing_Order.pdf.

[2]   The instant motion supersedes and is intended to replace the motion seeking the same relief filed on April 20, 2021 [ECF No. 5], which filing omitted the signature of counsel and did not indicate the Debtor's conditional consent. *See* ¶¶ 4, 19, *infra*.  The Debtor's consent was obtained *after* the initial filing on April 20, 2021.

Manning, who is currently presiding over the bankruptcy case captioned *In re Ho Wan Kwok*, Bankruptcy Case Number 22-50073 (JAM) (the "Bankruptcy Case").

## INTRODUCTION

1.      On February 15, 2022, Ho Wan Kwok (the "Debtor") commenced the Bankruptcy Case in the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court") after failing to satisfy a civil contempt order issued by the Supreme Court of the State of New York – County of New York: Commercial Division (Justice Ostrager presiding) (the "New York Court"), captioned *Pacific Alliance Asia Opportunity Fund, L.P. vs. Kwok Ho Wan, et al.* and bearing Index Number 652077/2017  (the "Removed Action").[3]

2.      On March 18, 2022, the Debtor removed the Removed Action from the New York Court to the United States District Court for Southern District of New York, which referred the Removed Action to the United States Bankruptcy Court for Southern District of New York (the "New York Bankruptcy Court") pursuant to the *Amended Standing Order of Reference*, dated January 31, 2012.  On April 15, 2022, the New York Bankruptcy Court entered the Conditional Transfer Order transferring the Removed Action to this Court.[4]

3.      Pursuant to sections 151 and 157(a) of Title 28 of the United States Code, the Standing Referral Order, the Conditional Transfer Order and for the reasons argued, *infra*, PAX seeks the referral of the Removed Action to the Connecticut Bankruptcy Court for assignment to Judge Manning, who is presiding over the Bankruptcy Case, to permit Judge Manning to adjudicate the Remand Motion (as hereinafter defined).  The Remand Motion challenges the Connecticut Bankruptcy Court's subject matter jurisdiction under section 1334(b) of Title 28 or,

---

[3] *See* Ex. 1, Compl., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Apr 18, 2017), ECF 2.

[4] *See* Ex. 2, So Ordered Stipulation Resolving Motion to Transfer Venue, *PAX v. Kwok*, Adv. Pro. No. 22-01073 (DSJ) (Bankr. S.D.N.Y. Apr. 15, 2022), ECF 16.

in the alternative, requests that the Connecticut Bankruptcy Court abstain from hearing the Removed Action.

4.     The Debtor consents to the referral of the Removed Action to the Connecticut Bankruptcy Court but does not join in the motion or adopt the statements made herein.

## PROCEDURAL HISTORY

5.     On April 18, 2017, PAX commenced the Removed Action by suing the Debtor for breach of a personal guarantee contract in the New York Court.[5]  Following nearly four years of litigation, on February 3, 2021, PAX secured a judgment against the Debtor for $116,402,019.57 in the Removed Action.[6]  PAX then "undertook a year's-long effort to enforce [the] judgment by first identifying and then attempting to levy upon [the Debtor's] assets in the United States."[7]  This was no small task because, as Justice Ostrager found, the Debtor, "who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[8]  The Debtor has yet to repay any of the $116,402,019.57 judgment, which accrued post-judgment interest at the rate of 9 percent per year.[9]

6.     The Debtor has (at a minimum)[10] beneficial ownership of the Lady May, a luxury yacht purchased in 2015 for €28 million. On September 30, 2020, Justice Ostrager issued a

---

[5] *Id.*

[6] *See* Ex. 3, Judgment at 2, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 3, 2021), ECF 716.

[7] *See* Ex. 4, Decision and Order on Motion at 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), ECF 1181.

[8] *Id*.

[9] N.Y. C.P.L.R. § 5004 (McKinney 2022).

[10] Notably, the Debtor claims to have no assets in certain Schedules of Assets and Liabilities he filed under penalty of perjury in the Bankruptcy Case. *But see United States Trustee's Objection to Debtor's Motion for Extension of Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs* at ¶ 12, Bankruptcy Case ECF No. 49 (during his Initial Debtor Interview with the United States Trustee, Kwok "disclosed he has no bank accounts, no credit cards, is not employed such that he earns income, and that all of his living expenses are paid for and through an entity known as Golden Spring (New York) Ltd. ('Golden Spring'). [He] also disclosed that he does not directly own any real estate, does not own any cars, and does not insure any assets.").

3

temporary restraining order in the Removed Action preventing the Debtor "from making or causing any sale, assignment, transfer or interference with any property in which he has an interest…."[11]  Two weeks later, on October 15, 2020, Justice Ostrager specified that this restraint on the Debtor included the Lady May.[12]  But unbeknownst to Justice Ostrager and PAX, the Lady May had already left New York for Florida on or about October 9.[13]  The yacht then went to the Bahamas, and finally to Europe, where it remains to this day.[14]

7.       In response, PAX filed a contempt motion[15] and on March 16, 2021, the New York Court issued a conditional order of civil contempt directing the Debtor or the boat's registered owner to return the Lady May to the court's jurisdiction by May 15, 2021, and imposing a $500,000 fine for every day thereafter that the yacht remained beyond its jurisdiction.[16]  The New York Appellate Division, First Department, unanimously affirmed the New York Court's order, finding that (i) PAX had "established by clear and convincing evidence that [the Debtor had] violated a lawful clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to [PAX's] rights…"[17]; and (ii) "the daily fine of $500,000 was intended to strongly

---

[11] See Ex. 5, Decision and Order on Motion, *PAX v. Kwok*, Index No. 62077-2017 (N.Y. Sup. Ct. Sep. 30, 2020), ECF 591.

[12] See Ex. 6, Decision and Order on Motion at 1, *PAX v. Kwok*, Index No. 652077/217 (N.Y. Sup. Ct. Oct. 15, 2020), ECF 630.

[13] See Ex. 7, VESSELFINDER, Voyage Analyzer https://voyage.vesselfinder.com/dcad1f224b32615145e66055d9856504 (last visited Feb. 28, 2022).

[14] As of February 28, 2022, the Lady May was located in Genoa, Italy.  *See id.*

[15] See Ex. 8, PAX Mem. of Law in Supp. of Mot. for Order of Contempt Against Def. Kwok, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct. Dec. 24, 2020), ECF No. 689; *see also* Ex. 9, PAX Mem. of Law in Further Supp. of Mot. For Order of Contempt Against Def. Kwok, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct. Jan. 27, 2021), ECF 709.

[16] See Ex. 10, Decision and Order on Motion at 2, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct. Mar. 16, 2021), ECF 728 ("Initial Contempt Order").  In other words, the court provided Mr. Kwok a full two-month grace period to return the yacht and thereby avoid any fine at all.

[17] *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, 199 A.D.3d 423, 423 (N.Y. App. Div. 2021).

encourage [the Debtor] to purge himself of the contempt."[18]  Accordingly, the First Department instructed Justice Ostrager to "proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties" before issuing a final contempt order.[19]

8.      The New York Court held that evidentiary hearing on February 2, 2022.  After hearing testimony from seven witnesses, Justice Ostrager concluded that "[t]he testimony adduced at the hearing out of the mouths of [the Debtor]'s witnesses clearly and convincingly demonstrated that [the Debtor] beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[20]  The court further found that "[n]ot only does [the Debtor] control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[21]  As a result, Justice Ostrager entered the Final Order of Civil Contempt, dated February 8, 2022 (the "February 9 Contempt Order").[22]

9.      The Debtor failed to pay the contempt fine, and as of this date has not returned the Lady May to the United States.[23]  On February 15, 2022, the Debtor filed the Bankruptcy Case in the Connecticut Bankruptcy Court.[24]

10.      On March 1, 2022, PAX filed its *Motion for Entry Of An Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay*

---

[18] *Id.* at 424.

[19] Ex. 3, *supra* note 7, at 4.

[20] *Id.* at 4.

[21] *Id.* at 8.

[22] *See* Ex. 11, Final Order of Civil Contempt, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), ECF 1182.

[23] *See* Ex. 12, Bankruptcy Case ECF 57.

[24] Ex. 13, Voluntary Petition at 7, Bankruptcy Case ECF 1.

*Pursuant to Section 362(d)(2) of the Bankruptcy Code* (the "Stay Motion") in the Bankruptcy Case.[25]  In the Stay Motion, PAX sought a Bankruptcy Court order finding that the automatic stay provisions of Bankruptcy Code were inapplicable to the judicial remedies contained in the February 9 Contempt Order issued in the Removed Action.  Alternatively, the Stay Motion sought relief from the automatic stay to permit PAX to seek enforcement of the February 9 Contempt Order.  The Debtor opposed the relief sought in the Stay Motion and the Connecticut Bankruptcy Court has presided over two hearings related to the Stay Motion in the Bankruptcy Case.

11.    On March 18, 2022, the Debtor removed the Removed Action from the New York Court to the United States District Court, Southern District of New York, which referred the Removed Action to the New York Bankruptcy Court. On March 23, 2022, the Debtor filed its *Motion to Transfer Case*, wherein it sought to transfer the Removed Action to this Court for referral to the Connecticut Bankruptcy Court.

12.    On April 5, 2022, PAX filed a proposed *Stipulation Resolving Motion to Transfer Venue* (the "Conditional Transfer Stipulation") with the New York Bankruptcy Court.  In the Conditional Transfer Stipulation, PAX consented to the transfer of the Removed Action to the Connecticut Bankruptcy Court; but expressly preserved and did not waive its right to have the Connecticut Bankruptcy Court consider the remand of the Removed Action or, in the alternative, abstain from hearing the Removed Action.   The Debtor did not waive, and expressly preserved, any objections to the right to oppose PAX's request for remand or abstention in the Conditional Transfer Stipulation.

---

[25] *See* Ex. 12, Stay Motion, *supra* note 23.

13.     On April 14, 2022, PAX filed its *Motion to Remand Or, In The Alternative, For Abstention pursuant to 28 U.S.C. § 1334(c)(1)* in the New York Bankruptcy Court (the "Remand Motion").

14.     On April 15, 2022, the New York Bankruptcy Court entered the Conditional Transfer Order.

15.     PAX now seeks the referral of the Removed Action to the Connecticut Bankruptcy Court so that it may adjudicate the Remand Motion.

**RELIEF REQUESTED**

16.     By this Motion, PAX requests the entry of an order referring the Removed Action to the Connecticut Bankruptcy Court for assignment to the Honorable Judge Julie A. Manning, who is currently presiding over the Bankruptcy Case.  Upon reference of the Removed Action to Judge Manning, PAX will request adjudication of the Remand Motion, which challenges the Court's subject matter jurisdiction or, in the alternative, requests that the Connecticut Bankruptcy Court abstain from hearing the Removed Action.

**BASIS FOR REQUESTED RELIEF**

17.     This Court has subject matter jurisdiction over bankruptcy "cases" and enumerated "civil proceedings" pursuant section 1334 of Title 28.  Although the Connecticut Bankruptcy Court does not have independent subject matter jurisdiction over bankruptcy "cases" and those "civil proceedings," section 151 of Title 28 grants the Connecticut Bankruptcy Court the power to exercise certain "authority conferred" upon this Court under Title 28. 28 U.S.C. § 151.  Under section 157 of Title 28 and the Standing Referral Order, this Court may refer bankruptcy "cases" and certain enumerated "proceedings" to the Connecticut Bankruptcy Court for either entry of a

final judgment (core proceedings) or proposed findings and conclusions (noncore, related-to proceedings).  *Id.*; *see also* Standing Referral Order.

18.     Here, because the Bankruptcy Case is pending in the Connecticut Bankruptcy Court before Judge Manning and the Removed Action involves the Debtor and PAX, the Debtor's largest unsecured creditor, PAX requests that the Removed Action be referred to the Bankruptcy Court in the first instance so that Judge Manning may adjudicate the Remand Motion.

19.     Counsel for PAX has conferred with counsel for the Debtor.  The Debtor consents to the referral of the Removed Action to the Connecticut Bankruptcy Court but does not join in the motion or adopt the statements made herein.

20.     Additionally, the Removed Action should be referred to the Connecticut Bankruptcy Court pursuant to the Conditional Transfer Order, the entry of which was sought consensually by PAX and the Debtor. *See* Conditional Transfer Order, ¶¶ 1-2.

## RESERVATION OF RIGHTS

21.     Notwithstanding anything in this Motion, PAX reserves all rights regarding the Removed Action, including but not limited to the right to prosecute the Remand Motion in the Connecticut Bankruptcy Court upon the referral of the Removed Action.

## CONCLUSION

PAX respectfully requests this Court enter an order referring the Removed Action to the Connecticut Bankruptcy Court for assignment to the Honorable Julie A. Manning, who is presiding over the Bankruptcy Case.

*[Signature on Following Page]*

Dated: April 21, 2022
Hartford, Connecticut

**Pacific Alliance Asia Opportunity Fund L.P.**

By: */s/ Patrick M. Birney*
Patrick M. Birney (CT No. 19875)
Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
            asmith@rc.com

            -and-

Peter Friedman (admitted *pro hac vice*)
Stuart M. Sarnoff (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email:  pfriedman@omm.com
            ssarnoff@omm.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2022, a copy of the foregoing Motion was filed electronically through the Court's CM/ECF System and served, with notice of this filing being sent by email to all Notice Parties by operation of the court's electronic filing system and by mail to the below described parties. Parties in interest may access this document through the court's CM/ECF system.

**Parties Served by Mail**:

Counsel to Kwok Ho Wan
William Baldiga
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Phone: (212) 209-4800
Email: wbaldiga@brownrudnick.com

Counsel to Genever Holdings LLC and Genever Holding Corp.
Aaron A. Mitchell
LAWALL & MITCHELL, LLC
162 E. 64th Street
New York, NY 10065
Phone: (973) 285-3280
Email: aaron@lmesq.com

Counsel to Genever Holdings LLC
J. Ted Donovan
GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
1501 Broadway, 22nd Floor
New York, NY 10036
Phone: (212) 221-5700

*/s/ Patrick M. Birney*_____
Patrick M. Birney

# EXHIBIT 1

Case 22-50073-JAM Doc 4054-7 Filed 03/04/24 Entered 03/04/24 22:36:48 Page 13 of
121

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                      Plaintiff,

                  v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,

                    Defendant.

Index No.

**COMPLAINT**

## NATURE OF THE ACTION

1.        This is a straightforward breach of contract case.  Kwok Ho Wan, a/k/a Kwok Ho, a/k/a

Gwo Wen Gui, a/k/a Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok,

a/k/a Haoyun Guo ("Kwok"), a reported billionaire, and his controlled entities borrowed millions of

dollars from Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX LP") but have failed to pay

any of the amount owed to PAX LP under binding written agreements.

2.        In 2008, PAX LP entered into a written agreement with Spirit Charter Investment

Limited ("Spirit Charter"), one of Kwok's business entities, under which PAX LP made available to

Spirit Charter a loan facility in the principal amount of $30 million.  This loan facility was conditioned

on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

3.        In 2009, another of Kwok's entities, Shiny Times Holdings Limited ("Shiny Times"),

assumed the debt that Spirit Charter owed to PAX LP, which the parties agreed at the time totaled

$45,357,534.25.  Kwok executed a personal guarantee of this debt.

4.        Then in 2011, PAX LP and Shiny Times entered into a written agreement (the "2011

Facility Letter") that expressly superseded prior agreements between the parties.  In the 2011 Facility

Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount

(plus 15% annual interest from December 31, 2010) by June 30, 2012.

5.        That same day, Kwok entered into a separate personal guarantee (that similarly

expressly superseded Kwok's prior personal guarantee) under which Kwok guaranteed payment of all

amounts owed to PAX LP by Shiny Times under the 2011 Facility Letter (the "Personal Guarantee").

6.        To date, neither Shiny Times nor Kwok have paid any amount owed to PAX LP under

either the 2011 Facility Letter or the Personal Guarantee.

7.        PAX LP has taken all necessary and appropriate steps in accordance with its contracts

with Shiny Times and Kwok to recover the monies it is owed—now totaling approximately

$88 million including contractual interest—but has recovered nothing because it has been ignored by Shiny Times and Kwok at each step.

8.      Given that Kwok regularly transacts business, is domiciled and resides, and owns real estate in New York, PAX LP brings this action in this Court to enforce its contractual rights against Kwok.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Kwok pursuant to New York's general personal jurisdiction statute, C.P.L.R § 301, because he is engaged in a continuous and systematic course of "doing business" in New York and is domiciled in the state.

10.     Venue is proper in this Court under C.P.L.R § 503(a) because Kwok's residence is in New York County.

## PARTIES

11.     Plaintiff PAX LP is an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands.

12.     Defendant Kwok is a Chinese national who is domiciled in New York and engages in a continuous and systematic course of "doing business" in New York.

13.     Kwok resides on the 18th Floor of The Sherry-Netherland Hotel in New York City—a residence he purchased in 2015 for $67.5 million through Genever Holdings, LLC ("Genever"), a domestic limited liability company that he solely owns and that maintains its principal place of business in New York State at 80 State Street in Albany.

14.     Kwok also maintains offices at 767 Fifth Avenue for Golden Spring (New York) Ltd. ("Golden Spring"), a Delaware company that he owns, which is registered to do business as a foreign corporation in New York and has a registered agent for service of process in New York.

2

15.     Kwok also has employees or agents in New York, including those who work for Golden Spring and the attorneys he hired to represent him in two cases in the United States District Court for the Southern District of New York over the last two years.[1]

## STATEMENT OF FACTS

### *The Shiny Times Loan and Kwok's Personal Guarantee to Repay PAX LP*

16.     PAX LP and Kwok have had business dealings since approximately February 4, 2008, when PAX LP entered into a written agreement (the "2008 Facility Agreement") with Spirit Charter, one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million.

17.     This loan facility was conditioned on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

18.     On March 12, 2008, PAX LP and Spirit Charter amended and restated the 2008 Facility Agreement ("Amended and Restated 2008 Facility Agreement").

19.     By a deed dated September 17, 2009 (the "September 2009 Deed"), Shiny Times (another of Kwok's entities), Spirit Charter, PAX LP, and various other parties agreed that Shiny Times would replace Spirit Charter as the borrower under the Amended and Restated 2008 Facility Agreement.  The parties to the September 2009 Deed also agreed that the outstanding amount under the Amended and Restated 2008 Facility Agreement, including accrued and unpaid interest, was then $45,357,534.25 as of September 12, 2009 (the "Amended 2008 Loan Facility").

---

[1] In 2015, Kwok and Golden Spring were sued for violations of the Fair Labor Standards Act, and in that lawsuit, Kwok (through counsel) acknowledged that he was properly served with a summons and complaint at The Sherry-Netherland Hotel.  *Ahn v. Golden Spring (New York) Ltd. et al.*, No. 1:15-cv-09697 (S.D.N.Y. Dec. 11, 2015).  In 2016, Kwok and Genever filed a lawsuit (through counsel) against The Sherry-Netherland Hotel and others relating to a leak in his apartment at the hotel.  *Genever Holdings, LLC and Miles Kwok v. The Sherry-Netherland, Inc., et al.*, No. 1:16-cv-06246-GBD (S.D.N.Y. Aug. 5, 2016).

3

20.    The September 2009 Deed required Kwok to execute a personal guarantee in favor of PAX LP to secure Shiny Times' due and punctual performance and repayment of the Amended 2008 Loan Facility.  Kwok executed his personal guarantee on November 18, 2009.

21.    PAX LP, Kwok, and Shiny Times thereafter agreed to supersede the foregoing agreements with two contracts executed on March 16, 2011—the 2011 Facility Letter (attached as Exhibit A) and the Personal Guarantee (attached as Exhibit B).

22.    In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount (plus 15% annual interest from December 31, 2010) by June 30, 2012.

23.    The parties further agreed in the 2011 Facility Letter that any failure by Shiny Times to pay any amount owed to PAX LP under the 2011 Facility Letter would constitute an Event of Default, and that in such event PAX LP could (i) declare the entire loan, accrued and unpaid interest, and any other money payable to be immediately due and payable without further demand or notice or other legal formality of any kind, and/or (ii) declare the 2011 Facility Letter terminated.

24.    Finally, like the prior agreements between the parties, the 2011 Facility Letter was expressly conditioned on Kwok's execution of the Personal Guarantee to fully backstop Shiny Times' payment obligations to PAX LP:

> The Lender [PAX LP] and the Borrower [Shiny Times] agree to enter into this Agreement . . . on the condition that a new personal guarantee of Mr. Kwok (the "Personal Guarantee"), in favour of the Lender is delivered to secure the due and punctual performance of the Borrower to fully repay the [2011 Facility Letter] plus all accrued and unpaid interest in accordance with this Agreement.

25.    Kwok signed the 2011 Facility Letter as a Director of Shiny Times and also, on the same day, signed the Personal Guarantee, under which Kwok agreed to "irrevocably and unconditionally" guarantee Shiny Times' payment of all amounts owed under the 2011 Facility Letter. In particular, Kwok:

4

      (a)      guaranteed to PAX LP the "due and punctual payment" of Shiny Times' obligations under the 2011 Facility Letter;

      (b)      agreed "that promptly on [PAX LP's] demand [Kwok] will pay to [PAX LP] all [such amounts] that are due but unpaid";

      (c)      agreed to "indemnify and hold harmless [PAX LP] on demand from and against all losses incurred by [PAX LP] as a result of any obligation of Shiny Times under the 2011 Facility Letter being or becoming void, voidable, unenforceable or ineffective as against Shiny Times for any reason whatsoever";

      (d)      agreed that PAX LP's demand for payment would constitute *prima facie* evidence that such payment was due and owing;

      (e)      agreed that PAX LP could seek repayment from either Shiny Times or Kwok; and

      (f)      agreed to indemnify PAX LP from "any and all costs, claims losses, [and] expenses (including legal fees)" incurred as a result of exercising or enforcing the Personal Guarantee.

26. Furthermore, Kwok agreed to waive several defenses, including those based on the winding up or dissolution of Shiny Times, or PAX LP's inability to recover against Shiny Times "for any reason." Kwok also agreed to a catchall waiver of any conceivable defenses based on "any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law."

27. In other words, Kwok signed an unambiguous and ironclad guarantee that he would satisfy Shiny Times' debt to PAX LP under any circumstances.

### *The Extensions and Shiny Times' Ultimate Failure to Repay PAX LP*

28. Shiny Times did not repay any portion of the loan principal or accrued interest before the June 30, 2012 repayment date set forth in the 2011 Facility Letter, and the parties subsequently entered into a series of extensions, each labeled a "Deed of Settlement."

5

29.     PAX LP, Shiny Times, and Kwok entered into the first Deed of Settlement (the

"Original Deed of Settlement") along with Beijing Pangu Investment Inc. ("Beijing Pangu"), another

company within the Kwok empire, on April 19, 2013.

30.     The Original Deed of Settlement provided that the total outstanding amount due under

the 2011 Facility Letter plus all accrued and unpaid interest was $52 million as of the date of the

Original Deed of Settlement, and that amount would be no longer due and owing upon the satisfaction

of the following conditions:

> (a)     If PAX LP completed the purchase of three apartments from Beijing
> Pangu in a series of three separate transactions for approximately $5
> million each, for a total of approximately $15 million; and

> (b)     If Shiny Times completed three installment payments to PAX LP of
> approximately $5 million each—one installment payment to be made after
> each separate apartment purchase—for a total of approximately $15
> million.

31.     Before PAX LP could purchase any of the three apartments from Beijing Pangu,

however, Beijing Pangu was required under the Original Deed of Settlement to satisfy certain

conditions precedent relating to title, taxes, and other common aspects of real estate transactions.  If

any of these conditions were not met for any of the three apartments by July 31, 2013, the Original

Deed of Settlement expressly provided that it would be terminated in its entirety, and the 2011 Facility

Letter would revert into full effect.

32.     Beijing Pangu failed to satisfy these conditions precedent by July 31, 2013,  PAX LP

therefore did not complete its purchase of any of the apartments, and Shiny Times did not make any of

the three installment payments it owed to PAX LP under the Original Deed of Settlement.

33.     Four supplemental deeds of settlement—on December 3, 2013, May 15, 2014, July 11,

2014, and February 10, 2015—extended the dates in the Original Deed of Settlement, including the

repayment date and the date for Beijing Pangu to satisfy the conditions precedent.

34.     Each of the supplemental deeds had the same terms as the Original Deed of Settlement.
And the result was the same each time: Beijing Pangu never met the conditions it was required to
satisfy, PAX LP therefore was not required to, and did not, complete its purchase of any of the
apartments, and Shiny Times never made any of the three installment payments it owed to PAX LP
under the 2011 Facility Letter.

35.     Finally, on March 31, 2015, Shiny Times and PAX LP, together with Worldwide
Opportunity Holdings Limited and Empire Growth Holdings Limited, entered into an Option
Agreement (the "Option Agreement") that provided, among other things, for the repayment via share
sale transaction of amounts owed by Shiny Times to PAX LP.

36.     Pursuant to its terms, the Option Agreement was to terminate if certain conditions
relating to the transfer of property (as stated in the Option Agreement) were not satisfied. None of
these conditions were satisfied, and the Option Agreement was terminated without negating Shiny
Times' obligation to pay PAX LP.

37.     Thus, the 2011 Facility Letter reverted to being in full force and effect, Kwok's
obligations under the Personal Guarantee are fully enforceable, and Kwok is independently liable
under the Personal Guarantee for the full amount of Shiny Times' debt owed to PAX LP under the
2011 Facility Letter.

### *PAX LP Seeks to Enforce Its Contractual Rights and Collect Amounts Owed*

38.     On October 16, 2015, after the Deeds of Settlement and Option Agreement were
terminated and the 2011 Facility Letter reverted to being in full force and effect, PAX LP sent a
written notice of demand (the "Notice of Demand") to Kwok's address in Hong Kong, as specified
under the terms of the Personal Guarantee.

7

Case 22-50073-JAM Doc 454-6 Entered 03/24/22 21:36:18 Page 21 of 121

39.     The Notice of Demand informed Kwok that "Shiny Times ha[d] failed to repay any part of the sum due" under the 2011 Facility Letter and demanded immediate payment of $71,818,633.44. The Notice of Demand also informed Kwok that legal proceedings might be commenced against him if he did not make immediate payment, and reserved PAX LP's contractual rights under both the 2011 Facility Letter and the Personal Guarantee.

40.     Kwok never responded to the Notice of Demand.

41.     On February 19, 2016, PAX LP sent a letter to Shiny Times demanding payment of $82,219,404.08 due and owing under the 2011 Facility Letter (the "Shiny Times Demand Letter"), which represented the principal plus contractual interest of 15% per annum calculated up to the date of the Shiny Times Demand Letter.

42.     Shiny Times never responded to the Shiny Times Demand Letter.

43.     When Shiny Times did not respond, PAX LP submitted an application to court in the British Virgin Islands ("BVI") on February 29, 2016 seeking the appointment of joint liquidators to put Shiny Times, which is a BVI corporation, into liquidation.  The application alleged that (i) Shiny Times had failed to pay the sum then-owing of $82,410,197.87, (ii) Shiny Times was unable to pay its debts, and (iii) Shiny Times was insolvent and should be liquidated.

44.     Although Shiny Times was in fact placed into liquidation as a result of the BVI proceeding, PAX LP was unable to collect any of the monies owed to it under the 2011 Facility Letter.

45.     To date, Kwok has not repaid any of the money due and owing to PAX LP under the Personal Guarantee.  The sum due and owing—which includes the outstanding principal plus accrued and unpaid interest—is currently approximately $88 million.

46.     As a result of Kwok's failure to repay any of the money due and owing to PAX LP, Plaintiff has incurred "costs, claims losses, [and] expenses (including legal fees)" in connection with

8

Case 22-50073 Doc 4563-6 Filed 05/24/22 Entered 05/24/22 21:36:18 Page 22 of
121

enforcing the Personal Guarantee.  Kwok is obligated to indemnify those amounts under the express

terms of the Personal Guarantee (*see* Paragraph 25(f)).

<u>COUNT I – BREACH OF CONTRACT</u>
**Against Defendant Kwok**

47.     Plaintiff realleges and incorporates by reference each and every allegation contained in

paragraphs 1 through 46 as though fully set forth herein.

48.     The Personal Guarantee obligates Kwok to repay PAX LP for the loan facility (as

amended) that PAX LP made available to Spirit Charter, along with unpaid interest.  The current

amount due and owing is approximately $88 million.

49.     Plaintiff performed its own obligations under the Personal Guarantee (and other related

agreements).

50.     Kwok has not repaid any of the money due and owing to PAX LP under the Personal

Guarantee.

51.     As a direct result of Kwok's breach of his payment obligations under the Personal

Guarantee, Plaintiff continues to suffer the loss of approximately $88 million dollars, an amount that

continues to incur interest.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

(a)     in the amount of $46,426,489 under the Personal Guarantee;

(b)     in the amount of $41,096,982.46 in interest;

(c)     the reasonable attorneys' fees, costs, and expenses PAX LP has incurred,
and will continue to incur, in connection with its enforcement of the Personal Guarantee
against Kwok under the Personal Guarantee's indemnification clause; and

(d)     such other and further relief to which PAX LP shows itself justly entitled.

DATED:     New York, New York
           April 18, 2017

                              Respectfully submitted,

                              THE SEIDEN GROUP

                              By: _____
                              Robert W. Seiden (rseiden@seidenlegal.com)
                              1120 Avenue of the Americas
                              New York, NY 10036
                              (212) 626-6708

                              -and-

                              O'MELVENY & MYERS LLP
                              Stuart Sarnoff (ssarnoff@omm.com)
                              Edward Moss (emoss@omm.com)
                              7 Times Square
                              New York, NY 10036
                              (212) 326-2000


                              *Attorneys for Plaintiff*

10

# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

PACIFIC ALLIANCE ASIA
OPPORTUNITY FUND L.P.,

Plaintiff,

v.                                           Adversary Proceeding No. 22-01073 (DSJ)

KWOK HO WAN, a/k/a KWOK HO, a/k/a
GWO WEN GUI, a/k/a GUO WENGUI, a/k/a
GUO WEN GUI, a/k/a WAN GUE
HAOYUN, a/k/a MILES KWOK, a/k/a
HAOYUN GUO, GENEVER HOLDINGS
CORPORATION, and GENEVER
HOLDINGS LLC,

Defendants.

**STIPULATION RESOLVING**
**MOTION TO TRANSFER VENUE**

WHEREAS, on April 18, 2017, Plaintiff Pacific Alliance Asia Opportunity Fund L.P.

("PAX") filed the underlying state court action in the Supreme Court of the State of New York –

County of New York: Commercial Division against Defendant Miles Kwok ("Kwok"), *see*

*Pacific Alliance Asia Opportunity Fund L.P. v. Kwok et al.*, Case No. 652077/2017 (Sup. Ct. Ny.

Cnty.), Dkt. No. 1 (the "New York Action"); and

WHEREAS, on February 3, 2021, the New York state court granted partial summary

judgment and entered a judgment in favor of PAX, *see Pacific Alliance Asia Opportunity Fund*

*L.P. v. Kwok et al.*, Case No. 652077/2017 (Sup. Ct. Ny. Cnty.), Dkt. No. 716; and

WHEREAS, on February 9, 2022, the New York state court issued a final order of civil

contempt against Kwok, *see Pacific Alliance Asia Opportunity Fund L.P. v. Kwok et al.*, Case

No. 652077/2017 (Sup. Ct. Ny. Cnty.), Dkt. No. 1181; and

1

WHEREAS, on February 15, 2022, Kwok filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the District of Connecticut, Bridgeport Division (the "CT Bankruptcy Court"), and was assigned Case No. 22-50073 (JAM); and

WHEREAS, on March 18, 2022, Kwok filed a notice of removal of the New York Action to the United States District Court for the Southern District of New York, *see Pacific Alliance Asia Opportunity Fund L.P. v. Kwok et al.*, Case No. 1:22-cv-02258-MKV (S.D.N.Y.), Dkt. No. 1; and

WHEREAS, on March 21, 2022, pursuant to the Amended Standing Order of Reference dated January 31, 2012, the District Court referred the Action to this Court; and

WHEREAS, on March 23, 2022, Kwok moved for entry of an order transferring this action to the CT Bankruptcy Court pursuant to 28 U.S.C. §§ 1404 and 1412 and Rule 7087 of the Federal Rules of Bankruptcy Procedure, *see Pacific Alliance Asia Opportunity Fund L.P. v. Kwok et al.*, Case No. 1:22-01073-dsj (Bankr. S.D.N.Y.), Dkt. No. 4; and

WHEREAS, on March 30, 2022, the Action was reassigned from Judge Martin Glenn to Judge David S. Jones, *see Pacific Alliance Asia Opportunity Fund L.P. v. Kwok et al.*, Case No. 1:22-01073-dsj (Bankr. S.D.N.Y.), Dkt. No. 5;

NOW THEREFORE

IT IS HEREBY STIPULATED AND AGREED, by and between the counsel of record for the respective parties herein, that:

1.       A transfer of the Action to the District Court for the District of Connecticut, Bridgeport Division, for referral to the CT Bankruptcy Court pursuant to 28 U.S.C. § 1404(a) would serve the interests of justice, and would foster the economic and efficient administration of the estate; and

2.     PAX does not waive, and expressly preserves, its right to seek, before the CT

Bankruptcy Court, timely remand of this adversary proceeding on any proper ground, *see, e.g.*,

*Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 430-32

(2007) (A district court may properly transfer an action pursuant to 28 U.S.C. § 1404(a),

"bypassing questions of subject-matter and personal jurisdiction, when considerations of

convenience, fairness, and judicial economy so warrant.").  Kwok likewise does not waive, and

expressly preserves,  the right to oppose such relief sought by PAX on any proper ground.  Kwok

agrees, however, that PAX's consent to Kwok's motion to transfer venue does not constitute

consent to subject-matter jurisdiction or a waiver of PAX's right to seek timely remand.  *E.g.*,

*Sinochem International Co.*, 549 U.S. at 430-32.

SO STIPULATED:

O'MELVENY & MYERS LLP                     BROWN RUDNICK LLP
*Attorneys for Plaintiff Pacific Alliance*       *Attorneys for Defendant Ho Wan Kwok*
*Asia Opportunity Fund*

By: *Stuart M. Sarnoff*                          By: *William R. Baldiga*
Stuart M. Sarnoff                                William R. Baldiga

**SO ORDERED:**

Dated: New York, New York                     _____*s/ David S. Jones*_____
       April 15, 2022                         HONORABLE DAVID S. JONES
                                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                Plaintiff,

     v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

                Defendants.

17 652077

Index No. 652077/2017

[~~PROPOSED~~] JUDGMENT

WHEREAS, on April 18, 2017, Plaintiff Pacific Alliance Asia Opportunity Fund L.P.,

filed a complaint against Defendant Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Gwo Wen Gui, a/k/a

Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok, a/k/a Haoyun Guo

("Kwok"), alleging a cause of action for breach of contract against Defendant Kwok.

WHEREAS, on April 18, 2019, Plaintiff filed a First Amended Complaint against Kwok,

and Genever Holdings LLC, and Genever Holdings Corporation (together with Genever

Holdings LLC, the "Genever Defendants"), alleging causes of action for (i) breach of contract

against Defendant Kwok and (ii) veil piercing against the Genever Defendants.

WHEREAS, on July 24, 2020, Plaintiff moved for partial summary judgment on its

breach of contract claim against Kwok, and the motion was fully briefed and heard before Justice

Barry R. Ostrager, who issued a Decision and Order dated September 15, 2020, which was

entered in the New York County Clerk's Office on September 16, 2020, granting Plaintiff's

motion on Count I of the Amended Complaint for breach of contract, and directed Plaintiff move

by Notice of Motion to establish damages on Count I no later than October 14, 2020.

Case 22-50073-JAM Doc 4065-3 Filed 05/24/22 Entered 05/24/22 21:36:13 Page 30 of 121

17 652077

WHEREAS, (i) on September 21, 2020, Plaintiff moved by Notice of Motion to establish damages, legal fees and expenses; (ii) Plaintiff agreed to temporarily withdraw, without prejudice and with the Court's permission and the other parties' understanding that it would be renewed at a later date, the portion of its application relating to legal fees and expenses (i.e., enforcement costs); and (iii) the motion was fully briefed and heard before Justice Barry R. Ostrager, who issued a Decision and Order dated December 18, 2020 (the "Damages Order"), and entered into the New York County Clerk's office on December 18, 2020, directing the Clerk of Court to enter judgment in favor of Plaintiff and against Defendant Kwok in the amount of $46,426,489.00 plus contractual interest at a rate of 15% per annum from effective date of December 31, 2010 and at the statutory rate of 9% per annum from the date of entry of this decision and order.

NOW, upon motion of O'Melveny & Myers LLP, attorneys for Plaintiff, it is:

ADJUDGED that Plaintiff Pacific Alliance Asia Opportunity Fund L.P., having a business address at 33/F, Three Pacific Place, 1 Queen's Road East, Hong Kong, have judgment against and do recover from Defendant Kwok Ho Wan, residing at 781 Fifth Avenue, 18th Floor, New York, NY 10022, the amount of _____ **$46,426,489.00** _____, plus contractual interest in the amount of _____ **$69,448,939.71** _____, plus post-judgment interest at the statutory rate of 9% in the amount of _____ **$526,590.86** _____, for a total of

**X** ___ **$116,402,019.57** _____, and Plaintiff shall have execution thereof.

~~Judgment signed and entered this ___th day of _____, 2021~~

**F I L E D**
**Feb 03 2021**
**NEW YORK**
**COUNTY CLERK'S OFFICE**

_Milton Adair Tingling._
Clerk

3 rd        Feb.        2021

2

Case 22-50073-jam    Doc 4068-3    Filed 05/24/22    Entered 05/24/22 21:36:34    Page 31 of
121

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

Plaintiff,

v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

Defendants.

Index No. 652077/2017

**AFFIRMATION OF EDWARD MOSS,
ESQ.**



F I L E D
Feb 03 2021
NEW YORK
COUNTY CLERK'S OFFICE

I, Edward Moss, an attorney duly admitted to practice before the Courts of the

State of New York, hereby affirm, under penalty of perjury, pursuant to the Civil Practice Law

and Rules of the State of New York § 2106, as follows:

1.      I am a member of the bar of this Court and a partner in the law firm of O'Melveny

& Myers LLP, counsel of record for Plaintiff Pacific Alliance Asia Opportunity Fund L.P.

("PAX") in this matter.

2.       I am fully familiar with the facts and circumstances in this action.  For purposes

of entry of this judgment, I submit this affirmation waiving costs and disbursements.

Dated:    January 25, 2021              By: */s/ Edward Moss*
          New York, New York               Edward Moss

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
Index No. 652077/2017

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND
L.P.,

Plaintiff,

-against-

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN
GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI,
a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK,
a/k/a HAOYUN GUO, GENEVER HOLDINGS
CORPORATION, and GENEVER HOLDINGS LLC,

Defendants.

**JUDGMENT**

[PROPOSED] JUDGMENT

**O'MELVENY & MYERS LLP**

TIMES SQUARE TOWER
7 TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 326-2000

Attorneys for Plaintiff Pacific Alliance Asia Opportunity
Fund, L.P.

F I L E D
Feb 03 2021
NEW YORK
COUNTY CLERK'S OFFICE

# EXHIBIT 4

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:   **HON. BARRY R. OSTRAGER**          PART   **IAS MOTION 61EFM**

*Justice*

-------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND
L.P.,

                                    Plaintiff,

                   - v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN
GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a
WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a
HAOYUN GUO, GENEVER: HOLDINGS LLC, and
GENEVER HOLDINGS CORPORATION,

                                    Defendants.

-------------------------------------------------------------------X

| INDEX NO. | 652077/2017 |
|-----------|-------------|
| MOTION DATE | |
| MOTION SEQ. NO. | 019 |

**DECISION + ORDER ON MOTION**

HON. BARRY R. OSTRAGER

        In this 2017 case with 1,180 docket entries – almost all of which involve defendant Kwok

Ho Wan's ("Kwok") efforts to avoid and deceive his creditors by parking his substantial personal

assets with a series of corporations, trusted confidants, and family members -- this Court is called

upon to determine whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"),

has met the burden of establishing that the Court should enter a final Order of Civil Contempt

against Kwok.  For the reasons that follow, this Court is simultaneously issuing a final Order of

Civil Contempt.

        PAX secured a judgment against Kwok in the sum of $116,402,019.57 on February 3,

2021 (NYSCEF Doc. No. 716).  Thereafter, PAX undertook a year's long effort to enforce its

judgment by first identifying and then attempting to levy upon Kwok's assets in the United

States.  PAX encountered difficulty identifying assets over which Kwok exercised control

because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of

corporate entities and with family members.  This scheme has enabled Kwok to assert that he has

no assets despite his lavish lifestyle, which plaintiff has catalogued with material from social

Case 22-50073 Doc 463-4 Filed 05/24/22 Entered 05/24/22 21:36:48 Page 35 of 121

media clippings, photographs and videotapes showing Kwok living large and boasting of his wealth, expensive homes, private plane, and yacht. As noted in the transcript of proceedings of February 2, 2022, this evidence is of little probative value, as the witnesses sponsoring this evidence have no first-hand knowledge of the authenticity of this "evidence" other than that it is accessible on various websites.

On February 2, 2022, this Court held an evidentiary hearing at which seven witnesses submitted direct testimony by affidavit and were made available for cross-examination. The hearing followed protracted proceedings by PAX to locate and levy upon assets owned by defendant Kwok. Those proceedings established, among other things, that Kwok exercised dominion and control over a yacht called the Lady May and resulted in a series of orders restraining Kwok and/or the registered owners of the yacht called Lady May from removing the Lady May from the Court's jurisdiction. The first such Order was issued on September 30, 2020, as described in detail *infra,* and was followed by an October 15, 2020 Order that restrained "Mr. Kwok and/or the registered owners of . . . the yacht, the 'Lady May'" from leaving the jurisdiction. (NYSCEF Doc. No. 630). As detailed *infra*, Kwok spent much of July, August and September of 2020 on the Lady May. Contemporaneously with the proceedings resulting in the September 30 and October 15, 2020 restraining Orders, Kwok and his cohorts made arrangement for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas. On March 16, 2021, the Court issued a conditional order of civil contempt which directed that if Kwok failed to return the Lady May to the jurisdiction of this Court by May 31, 2021, he would be subject to a $500,000.00 fine for each day that the Lady May remained outside the jurisdiction of this Court.

The Appellate Division, First Department, affirmed this Court's order holding Kwok in conditional civil contempt, finding that "the daily fine of $500,000.00 was intended to strongly

encourage defendant to purge himself of the contempt, which, despite being permitted to accomplish, he has shown no interest in doing. . ."  NYSCEF Doc. No. 953, 199 AD3d 423 (2021).  The Appellate Division further held:

> The motion court acted within its discretion in holding defendant in civil contempt, as plaintiff established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015]; Judiciary Law § 753). …  The motion court is instructed to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties.

Pursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht.  Kwok failed to testify at the February 2, 2022 hearing, having previously invoked his Fifth Amendment right to decline to testify or respond to discovery requests relating to the Lady May in response to PAX's asset discovery efforts.  PX 27, 28, 29, 30.[1]  This invocation of the Fifth Amendment notwithstanding, Kwok is an active litigant in multiple fora and he has given prior testimony in this and other proceedings.

Kwok also filed a complaint in this court captioned *Guo Wengui a/k/a Miles Kwok v Hong Zeng*, 157025/2020, which references a blog post from Freebeacon.com dated September 8, 2017 in which Kwok complains about "several incidents involving *his* 152-foot motor yacht, Lady May..."  (Complaint ¶ 8, NYSCEF Doc. No. 001) ("the Zeng Complaint").  The Zeng Complaint describes Kwok as an "outspoken critic of the CCP" who has gone to great "lengths to expose the rampant corruption within the CCP and the Chinese government."  The *Washington Post* reported that a former advisor to President Trump, Steve Bannon, was arrested in 2020 while on board the Lady May, and described Mr. Bannon as a friend and business

---

[1] "PX" refers to Plaintiff's Trial Exhibits.

3

associate of Kwok, "a vocal online critic of the Chinese government who was once close with that country's intelligence service but is now wanted by authorities in Beijing on charges of fraud, blackmail and bribery." Other news outlets have reported that Mr. Bannon utilized Kwok's private jet on more than one occasion to travel to political rallies.

The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process.

Kwok once was the sole shareholder of Hong Kong Investments Limited ("HK International"). The testimony adduced at the hearing established that in 2014 Kwok transferred a 100% interest in HK International to one Qu Guo Jiao for no consideration. Ms. Qu was a trusted business associate of the Kwok family. Thereafter, Kwok fled China and on February 23, 2015, HK International purchased the Lady May for £ 28 million GBP. No testimony adduced at the hearing established the source of funds to purchase the Lady May, but the uncontradicted testimony of Kwok's daughter Mei Guo established that Ms. Qu did not provide the funds to purchase the yacht. Tr. 44.[2] Consequently, a reasonable inference is that Kwok provided the funds to HK International which were used to purchase the yacht. It is undisputed that Ms. Qu transferred the ownership of the Lady May to Kwok's daughter, Mei Guo, on or around June 17, 2017, for $1 or no consideration. Tr. 47. According to Ms. Guo's affidavit (NYSCEF Doc. No. 1162), Ms. Guo ultimately transferred ownership of the Lady May to the current title holder HK International Funds Investments (USA) Limited, LLC ("HK USA"). Ms. Guo further avers that she is the sole owner of HK USA, although all of the multi-million dollar annual expenses for the

---

[2] "Tr." refers to the transcript of the evidentiary hearing, efiled at NYSCEF Doc. No. 1179.

4

Lady May, including fuel, maintenance, and the captain and crew are paid by Golden Spring

(New York) Ltd. ("Golden Spring."), which is allegedly the Kwok family office.

At the hearing Ms. Guo testified that her brother had bought the Lady May for her. Tr.

46. The Court cannot credit this testimony as there is no evidence that Ms. Guo's brother was

involved with the corporate transactions leading to Ms. Guo's acquisition of the title to the yacht.

And, indeed, in response to a question from the Court, Ms. Guo acknowledged that her brother

was not involved in any of the transfers that occurred before she acquired the yacht. Tr. 47.

Other testimony adduced at the hearing established that Kwok was repeatedly on the

yacht every summer and that Ms. Guo was infrequently on the yacht. Trial Tr. 88:8-20. The

Lady May's captain testified that Kwok was aboard the yacht for a significant portion of the

months of July, August and September in 2020 and that this was consistent with his usual

practice in the summer. Trial Tr. 87:24-88:7. Subsequent to this Court's September 30, 2020

restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for

repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of

Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30,

2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady

May be returned to the Court's jurisdiction Tr. 55; 57-60; 62.

Ms. Guo testified that on the one hand, she directed the Lady May's itinerary but, on the

other hand, testified that security for Kwok was such a concern that there would be no

memorialization of any itinerary. Tr. 52. She further testified that when her father was on the

yacht unaccompanied by her he had the freedom to choose wherever he wanted to go. Tr. 50.

The fundamental issue, however, is who directed the yacht to be removed from this Court's

jurisdiction in October 2020. Ms. Guo claims that in early October 2020 she no longer wished to

FILED: NEW YORK COUNTY CLERK 02/09/2022 04:33 PM
NYSCEF DOC. NO. 1181

INDEX NO. 652077/2017
RECEIVED NYSCEF: 02/09/2022

Case 22-590-72-Doc-45054-VA-Filed-05/24/22-Entered-05/24/22-Page-37-of-Page 39 of
121

use the yacht and relayed that instruction to Golden Spring which, in turn, relayed her directive to the then captain of the ship, Captain Heaslop. Tr. 53.

Upon further questioning, Ms. Guo admitted that it was Golden Spring that advised her that the yacht needed to be moved to a warmer place. Tr. 55. Ms. Guo then repeated her retracted testimony that her brother had given her the yacht, and she stated that her brother is the sole owner of Golden Spring. Tr. 56. This testimony is not credible given that on September 30, 2020 the Court entered a temporary restraining order restraining Kwok

> . . . from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, or from paying over or otherwise disposing of any debt now due or thereafter coming due to him, subject to the exceptions set forth in CPLR 5222 and in the ordinary course.

NYSCEF Doc. No. 591. Significantly, Captain Heaslop, the then Captain of the Lady May, testified that Mr. Kwok told Captain Heaslop that Kwok would no longer be a guest on the Lady May "a few days" before the Lady May departed for Florida in early October 2020 (and apparently after the issuance of this Court's September 30, 2020 Order). Tr. 89. Captain Heaslop also contradicted Ms. Guo's testimony that Ms. Guo gave Captain Heaslop instructions about the yacht's movement. Tr. 94.

Ms. Guo also acknowledged having subsequently read the Court's March 16, 2021 Order requiring the Lady May to be returned to the Court's jurisdiction by May 31, 2021 (NYSCEF Doc. No. 728). She further acknowledged that she had discussed the Order with her lawyer (whose services were paid for by Golden Spring) and that she had *ignored* the Order.

Russell Stockil, the Yacht Management Director for Yachtzoo SARL, testified that his company had a management contract with HK USA dated May 2021 and that he communicated with HK USA and Golden Spring, but never with Ms. Guo. Tr. 78. This was also the testimony of successor Captain Momchil Ivanov. Tr. 82. In short, Ms. Guo's testimony that she owns and

6

controls the Lady May cannot be credited in any respect. Ms. Guo appears to be a woman in her twenties, has introduced no evidence that she exercised dominion and control of the Lady May, and provided no confirmation that she came into possession of the Lady May, other than as a ruse to shield the Lady May from being levied upon by her father's creditors.

The machinations associated with the shell game Kwok has orchestrated with respect to the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken during the five years this litigation has been pending, which is why there are 1,180 docket entries in this case.

The Court has the authority to hold Kwok in civil contempt under Judiciary Law § 753—and "to punish [him], by fine and imprisonment"—where, as here, the Court "expressly find[s] that [Kwok's] actions were calculated to or actually did defeat, impair, impede, or prejudice the rights or remedies of a party to a civil proceeding." *Oppenheimer v. Oscar Shoes, Inc.*, 111 A.D.2d 28, 28 (1st Dep't 1985) (citing N.Y. Judiciary Law § 753). Section 753 sets forth four requirements:

> [T]o find that contempt has occurred in a given case, it must be determined that [1] a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. [2] It must appear, with reasonable certainty, that the order has been disobeyed . . . [3] Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party . . . [4] Finally, prejudice to the right of a party to the litigation must be demonstrated.

*Fleetwood Fin. v Walter J. Dowd, Inc.*, 2016 WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016) (citing *McCormick v Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)). The testimony adduced in this case satisfies each element of this standard. Indeed, the Appellate Division intimated as such. *See Pacific Alliance Asia Opportunity Fund L.P.*, 199 A.D.3d 423 (1st Dep't 2021) ("[PAX has] established by clear and convincing evidence that [Kwok] violated

7

a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights. . .").

The extent of PAX's ongoing "prejudice" turns on whether PAX has demonstrated that it could ultimately levy on the Lady May to satisfy its now centi-million dollar judgment against Kwok. Under CPLR § 5225, "money or other personal property" is leviable where the debtor holds the requisite "interest." To satisfy this requirement, "[i]t is not necessary that the judgment debtor have legal title to the property; a beneficial interest is sufficient." Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.09. "A beneficial interest is '[a] right or expectancy in something . . . as opposed to legal title to that thing.'" *Peterson v. Islamic Rep. of Iran*, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing Black's Law Dictionary, Interest (9th ed. 2009)). Kwok has much more than a beneficial interest in the Lady May. Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht.

The key factor is whether "the property benefitted [the beneficial owner] as if he had received the property directly." *Id.* (quoting *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010); *see also Gliklad v. Chernoi*, 129 A.D.3d 604 (1st Dep't 2015) (upholding rejection of the judgment debtor's contention that he no longer held an interest in property because he transferred his interest to his daughters); *Colfin Bulls Funding B, LLC v. Ampton Invs., Inc*., 112 N.Y.S.3d 868 (Table), at *2, 6 (N.Y. Sup. Ct. 2018) (granting judgment creditor's turnover motion notwithstanding judgment debtor's assertion that he transferred property to a corporation, because even if true, the evidence showed that he "retained control and/or an interest" in the property).

8

The evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May. In the latter connection, the Court takes notice of the filing of the Zeng case and draws an inference from all the record facts that Kwok has taken extraordinary steps to shield the yacht from his creditors. Moreover, Kwok's "family office" funds the yacht's day-to-day operations and maintenance.

The Court finds that Ms. Guo's testimony was not only internally inconsistent and dissembling, but also significantly undermined by the testimony of Captains Heaslop and Ivanov and Mr. Stockil, who stated that they have never taken yacht-related direction from Ms. Guo in the four and-a-half years that she directly or indirectly held title to the yacht.

In addition, it is established New York law that a party's invocation of the Fifth Amendment in a civil proceeding "may form the basis of an adverse factual inference." *DeBonis v. Corbisiero*, 155 AD2d 299, 300 (1st Dep't 1989). An adverse inference may be applied whenever a factual determination is necessary or permitted, including in the context of contempt motions. *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *10 (S.D.N.Y. Dec. 19, 2013), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *LiButti v. United States*, 107 F.3d 110, 120–25 (2d Cir. 1997).

Similarly, under the missing witness rule, "[a] trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify." *Crowder v. Wells & Wells Equip., Inc.*, 11 A.D.3d 360, 361 (1st Dep't 2004) (applying adverse inference where defendant who failed to appear "would be knowledgeable about a material issue raised by the evidence").

PAX is entitled to an adverse inference under both of these avenues. Kwok has invoked his Fifth Amendment right against self-incrimination in response to PAX's post-judgment discovery, including in response to requests specifically about the Lady May. While Kwok

9

argues that an adverse inference is not appropriate here because "[o]nly after a threshold showing that a piece of evidence is authentic is a party obligated to respond to it," this contention fails of its own weight. PAX has proffered substantial admissible evidence that Kwok has the requisite beneficial interest in and control of the Lady May. *See People v. Primo*, 96 N.Y.2d 351, 753 N.E.2d 164 (2001) (explaining that evidence is probative if it "tends to prove the existence or non-existence of a material fact, *i.e.*, a fact directly at issue in the case").

As of February 7, 2022, the Lady May has remained outside the jurisdiction of the Court for 268 days. Based on the daily fine of $500,000 imposed by this Court and affirmed by the Appellate Division, the resultant fine would amount to $134,000,000.00, which is more than PAX's outstanding judgment of nearly $120 million and a multiple of the GBP £ 28 million purchase price of the Lady May. Nevertheless, if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law. Kwok must remit $134,000,000.00 to PAX within five business days of the service of this Court's Order with Notice of Entry. The Court is prepared to exercise its full authority under Judiciary Law § 753 in the event the fine is not timely paid.

Dated: February 9, 2022

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

10

# EXHIBIT 5

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| PRESENT: | **HON. BARRY R. OSTRAGER** | PART | IAS MOTION 61EFM |
|---|---|---|---|
| | *Justice* | | |

--------------------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION,

Defendants.

--------------------------------------------------------------------------------X

| INDEX NO. | 652077/2017 |
|---|---|
| MOTION DATE | |
| MOTION SEQ. NO. | 011 |

**DECISION + ORDER ON MOTION**

HON. BARRY R. OSTRAGER

On September 30, 2020, the Court held oral argument via Skype, with counsel for all parties. On consent, the Court entered a temporary restraining order restraining Mr. Kwok from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, or from paying over or otherwise disposing of any debt now due or thereafter coming due to him subject to the exceptions set forth in CPLR 5222 and in the ordinary course.

The Court will hear further argument, and if necessary, conduct an evidentiary hearing, on October 15, 2020 at 10:00 am via Microsoft Teams. Defendants must file their opposition to Motion 011 by October 13, 2020 at 4:00 pm. Plaintiff must file their reply, if any, by October 14, 2020 at 4:00 pm. If either party intends to call witnesses, they must exchange witness lists with one another and e-file a witness list with the Court no later than October 13, 2020.

Additionally, the Court will hear oral argument on Plaintiff's Motion 008 for damages and attorney's fees on October 15, 2020 at 10:00 am via Microsoft Teams. Defendants must file

FILED: NEW YORK COUNTY CLERK 09/30/2020 04:44 PM          INDEX NO. 652077/2017

NYSCEF DOC. NO. 591          Case 22-50073 Doc 4065 Filed 05/24/22 Entered 05/24/22 21:36:13 Page 46 of          RECEIVED NYSCEF: 09/30/2020
121

their opposition to Motion 011 by October 13, 2020 at 4:00 pm and Plaintiff must file their reply,

if any, by October 14, 2020 at 4:00 pm.

Any violation of the temporary restraining order issued today shall be considered

criminal contempt.

Dated: September 30, 2020

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | ☐ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☒ OTHER |
| APPLICATION: | | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

2

# EXHIBIT 6

Case 22-50073-jam Doc 4053-1 Filed 05/24/22 Entered 05/24/22 21:36:02 Page 48 of 121

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| PRESENT: | HON. BARRY R. OSTRAGER | PART | IAS MOTION 61EFM |
|---|---|---|---|
| | *Justice* | | |

-----------------------------------------------------------------------------X

| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P., | | INDEX NO. | 652077/2017 |
|---|---|---|---|
| Plaintiff, | | MOTION DATE | |
| - v - | | MOTION SEQ. NO. | 011 |
| KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION, | | | |
| Defendants. | | **DECISION + ORDER ON MOTION** | |

-----------------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

On October 15, 2020, the Court held oral argument via Microsoft Teams, with counsel for all parties participating, on plaintiff's motion for a post-judgment restraining order pursuant to CPLR 5229 (motion 011). On September 15, 2020, the Court granted summary judgment in favor of plaintiff on liability, with damages and the issue of whether the corporate defendants are defendant Kwok's alter egos to be determined at a later date. NYSCEF Doc. 549.

Plaintiff's motion for a restraining order pursuant to CPLR 5229 is granted. Mr. Kwok is restrained from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, whether directly or indirectly, and from paying over or otherwise disposing of any debt now due or thereafter coming due to him subject to the exceptions set forth in CPLR 5222, in accordance with the proceedings on the record of October 15, 2020.

Specifically, Mr. Kwok and/or the registered owners of (1) the Residence at the Sherry-Netherland Hotel and (2) the yacht, "the Lady May" are restrained from making or causing any sale, assignment, transfer, or interference with those assets.

Plaintiff is entitled, under CPLR 5229, to take discovery into the above-identified assets as well as to seek discovery into any other assets that Mr. Kwok may own, whether directly or indirectly.

The next appearance will be a pre-trial conference on November 12, 2020 at 2:00 pm via Microsoft Teams.

October 15, 2020
**DATE**

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

2

# EXHIBIT 7









# EXHIBIT 8

Case 22-50073 Doc 4654-9 Filed 05/04/21 Entered 05/24/22 21:36:48 Page 54 of
121

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                    Plaintiff,

        v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO
WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO
WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a*
MILES KWOK, *a/k/a* HAOYUN GUO,
GENEVER HOLDINGS CORPORATION, and
GENEVER HOLDINGS LLC,

                    Defendants.

Index No. 652077/2017

Hon. Barry Ostrager

Part 61

Mot Seq. No. __

**MEMORANDUM OF LAW IN SUPPORT OF PACIFIC ALLIANCE ASIA
OPPORTUNITY FUND L.P.'S MOTION FOR ORDER OF CONTEMPT AGAINST
DEFENDANT KWOK**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ..................................................................................................... 4

CONCLUSION ................................................................................................... 6

i

Case 22-cv-03322-Document654-VAFiled 05/24/21 Entered 05/24/21 Page 48 of Page 56 of
121

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Financial v. Walter J. Dowd, Inc.*
   No. 113484/2011, 2016 WL 11546917 (Sup. Ct. N.Y. Cnty. Sept. 14, 2016).………………..4

*McCormick v. Axelrod,*
   59 N.Y.2d 574, *amended,* 60 N.Y.2d 652 (1983)……………………………………………..4

**Statutes**

Judiciary Law § 753 ...........…………….......................……………….........................1, 4

CPLR § 5104 ...........…………….......................……………….........................…1

FILED: NEW YORK COUNTY CLERK 12/24/2020 04:11 PM
NYSCEF DOC. NO. 689

INDEX NO. 652077/2017

RECEIVED NYSCEF: 12/24/2020

Case 22-50073-JAM Doc 4654-V Filed 05/24/21 Entered 05/24/21 20:48 Page 57 of
121

Pacific Alliance Asia Opportunity Fund L.P. ("PAX") respectfully submits this
memorandum of law in support of its motion, under CPLR § 5104 and Judiciary Law § 753, for
an order (i) finding Defendant Miles Kwok in contempt of Court for disobeying the Court's
October 15, 2020 Restraining Order (the "Order"); (ii) directing Kwok immediately to cause the
return of his yacht (the "Lady May") to the jurisdiction of the Court; and (iii) granting such other
and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

This Court previously has recognized that Kwok has "flaunted or exceedingly liberally
interpreted" its orders, and has made "intentional or unintentional misstatements that have misled
the Court."[1]  In the words of Yogi Berra, it is déjà vu all over again:  there is no doubt that Kwok
knowingly has violated this Court's Order restraining him from moving his yacht[2] outside the
Court's jurisdiction and—perhaps worse—he has once again put his counsel in the line of fire by
instructing him to *request the Court's permission to move the yacht even though Kwok knew it
already had been moved outside of U.S. territorial waters at the time that request was made*.
The Court should hold Kwok in contempt, require him immediately to return the yacht to the
jurisdiction, and grant whatever additional relief it deems necessary and appropriate to finally
stop Kwok from making a mockery of this proceeding.

---

[1] Dkt. 647 at 26:6–8.

[2] Any suggestion by Kwok in opposition that the yacht technically is not "his" would be
disingenuous nonsense.  If Kwok advances that false argument (which is directly contradicted
by, among other evidence and admissions, Kwok's counsel's request at a recent conference *for
Kwok* to be able to move the yacht outside this Court's jurisdiction), PAX will respond on reply.
PAX notes, however, that any such argument would be irrelevant to this motion because the
Order expressly covers the yacht even if it is held by another registered owner (whether it be a
Kwok shell company or family member).

1

## BACKGROUND

On September 30, 2020, this Court entered a Temporary Restraining Order (the "TRO")

preventing Kwok from, among other things, "interference with any property in which he has an

interest."[3]  In issuing the TRO, the Court noted that "[a]ny violation . . . shall be considered

criminal contempt."[4]  About two weeks later, on October 15, 2020, the Court issued the Order,

which granted PAX's motion under CPLR 5229 and expressly restrained the Lady May:

> Mr. Kwok is restrained from making or causing any sale, assignment,
> transfer, or interference with any property in which he has an interest,
> whether directly or indirectly, and from paying over or otherwise
> disposing of any debt now due or thereafter coming due to him subject to
> the exceptions set forth in CPLR 5222, in accordance with the proceedings
> on the record of October 15, 2020.  ***Specifically, Mr. Kwok and/or the
> registered owners of*** (1) the Residence at the Sherry-Netherland Hotel and
> (2) ***the yacht, "the Lady May" are restrained from making or causing
> any sale, assignment, transfer, or interference with those assets.***[5]

On November 12, 2020, the Court held a conference, during which Kwok's counsel

(presumably at his client's instruction) made a specific point to ask this Court if Kwok could

move the yacht offshore:[6]

> Apparently the boat is registered offshore I believe in the British Virgin
> Islands, and there is a requirement that it return to its home port at six-
> month intervals.  It is not an issue that is going to affect in any way
> ownership or title, but ***it needs to travel offshore at some point for a brief
> period and then come back into the United States***.  And we just wanted to
> disclose that so that there is no thought that this is being secreted or
> transferred.  This is just an ordinary thing it has to do for licensing
> purposes.[7]

---

[3] Dkt. 591 at 1.

[4] *Id.* at 2.

[5] Dkt. 630.

[6] Moss Aff. Ex. 1 (Nov. 12, 2020 Conf. Tr.) at 12:23–25.

[7] *Id.* at 13:9–18.

2

The Court unequivocally responded that Kwok was **not** permitted to remove the yacht from this jurisdiction and would be required to make a motion before doing so:

> You will have to make that application on papers. I don't know anything about the requirement that an asset that has been restrained in the United States should be allowed to go to the British Virgin Islands. I seriously doubt [PAX] wants that yacht to be outside the jurisdiction of the Court . . . You will make a motion with supporting documentation on notice to [PAX], and I will rule on it. What I am not going to have happen is Mr. Kwok move the yacht to the British Virgin Islands and then it becomes potentially unavailable for [PAX] to levy upon . . . that's an application that has to be made on formal motion papers with supporting documentation and appropriate opportunity for [PAX] to reply.[8]

Although Kwok's counsel responded that he "[u]nderstood" "the Court's directive" and would "provide that information in writing,"[9] Kwok made no such motion.

Given their experience with Kwok and his misbehavior, PAX and its counsel were concerned by Kwok's counsel's question and did some research. A few days later—based on publicly available information accessed at MarineTraffic.com—PAX learned that the yacht had in fact departed Fort Lauderdale, Florida, on **November 1, 2020**, and as of November 18, 2020, was located in the Bahamas at or near Old Fort Bay, Nassau.[10] In other words, Kwok had actually moved the yacht out of United States waters approximately **two weeks after the Order** and **two weeks before his counsel sought permission for Kwok to do precisely that at the November 12 conference.**

In light of this information, PAX's counsel wrote to Kwok's counsel on November 18, 2020, providing the information it had accessed as to the yacht's whereabouts, expressing its

---

[8] *Id.* at 13:19–15:4.

[9] *Id.* at 14:2–3, 15:5–6.

[10] Moss Aff. Ex. 2 (Nov. 18, 2020 Ltr.) at Ex. A.

3

FILED: NEW YORK COUNTY CLERK 12/24/2020 04:11 PM
NYSCEF DOC. NO. 689

INDEX NO. 652077/2017
RECEIVED NYSCEF: 12/24/2020

Case 22-50073 Doc 4054-V Filed 05/14/24 Entered 05/14/24 21:36:48 Page 60 of
121

concern "given Mr. Kwok's history of making misrepresentations throughout this litigation," and asking Kwok's counsel to "confirm the location of the Lady May" and "that the vessel will be back in New York within 48 hours."[11]

Kwok's counsel never responded.  Rather, later that night, Kwok's counsel filed a letter with the Court claiming to know nothing and committing to investigate and report back:

> [W]e have just become aware this evening that the yacht, the Lady May, referenced in this Court's restraining order (NYSCEF Doc. 630) and discussed during the Pre-Trial conference held before this Court on November 11, 2020, is currently in international waters.  Although Plaintiff's counsel has just sent us a letter regarding the purported whereabouts of the yacht, we have not confirmed any details . . . We are attempting to gain additional information and will promptly inform the Court and counsel when we learn anything further.[12]

But as of today's filing—*five weeks later*—Kwok's counsel has provided no further information to either the Court or to PAX's counsel.  Also as of today, according to MarineTraffic.com, the yacht is still moored in or around Nassau, Bahamas.[13]

## ARGUMENT

Under Judiciary Law section 753:

> In order to find that contempt has occurred in a given case, [(1)] it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect.  [(2)] It must appear, with reasonable certainty, that the order has been disobeyed.  [(3)] Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party.  [(4)] Finally, prejudice to the right of a party to the litigation must be demonstrated.

---

[11] *Id.*

[12] Dkt. No. Dkt. 649.

[13] *See* Moss Aff. ¶ 5.

4

FILED: NEW YORK COUNTY CLERK 12/24/2020 04:11 PM
NYSCEF DOC. NO. 689
INDEX NO. 652077/2017
RECEIVED NYSCEF: 12/24/2020

Case 22-50073-22-Doc4364-VAfiled05/04/21 6Entered05/24/22221-36:48 of Page 61 of
121

_McCormick v. Axelrod_, 59 N.Y.2d 574, 583, _amended_, 60 N.Y.2d 652 (1983); _see also Financial_

_v. Walter J. Dowd, Inc._ No. 113484/2011, 2016 WL 11546917, at *2 (Sup. Ct. N.Y. Cnty. Sept.

14, 2016) (Ostrager, J.) (citing _McCormick_ and applying the four-pronged test). PAX easily

satisfies each of the four elements for contempt here.

  **_First_**, the Order is a lawful order of the Court: an unequivocal mandate that Kwok is

"restrained from making or causing any sale, assignment, transfer, or interference with [the

yacht]."[14]

  **_Second_**, Kwok disobeyed the Order by causing the yacht to leave the jurisdiction about

two weeks after the Court issued the Order (and continues to disobey it).

  **_Third_**, Kwok is a sophisticated party, who is involved with this litigation and obviously

had knowledge of the Order. Moreover, his counsel specifically sought clarification of the Order

at the November 12 conference,[15] during which he stated that he "[u]nderstood" "the Court's

directive" that Kwok was required to make a motion before removing the yacht from the

jurisdiction.[16]

  **_Fourth_**, PAX has been prejudiced by Kwok's intentional flouting of the Order. Kwok

has been trying for years to frustrate the eventual judgment of this Court, and he has been trying

for far longer than that to avoid repaying his debt to PAX. Kwok shields his assets through

family members and shell companies, and it will be difficult enough for PAX to collect on assets

within the United States. If Kwok were permitted to expand his shell game by hiding his yacht

---

[14] _See supra_ n.5.

[15] _See supra_ n.6.

[16] _See supra_ n.9.

somewhere on the open seas outside this Court's jurisdiction, PAX's chances of enforcing against that asset would decrease significantly.

## CONCLUSION

For these reasons, PAX respectfully requests that the Court enter an order, under CPLR 5104 and Judiciary Law section 753, (i) finding Kwok in contempt of Court for disobeying the Order; (ii) directing Kwok immediately to cause the return of his yacht, the Lady May, to the jurisdiction of the Court; and (iii) granting such other and further relief as the Court deems just and proper.

DATED: December 24, 2020
      New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP
By: */s/ Edward Moss*
Stuart Sarnoff (ssarnoff@omm.com)
Edward Moss (emoss@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

-and-

Robert W. Seiden
(rseiden@seidenlegal.com)
1120 Avenue of the Americas
New York, NY 10036
(212) 626-6708

*Attorneys for Plaintiff Pacific Alliance Asia Opportunity Fund L.P.*

6

## CERTIFICATION OF WORD COUNT

Plaintiff hereby certifies that this document complies with the word count provisions of

Commercial Division Rule 17. This memorandum of law was prepared using Microsoft Word,

and the total number of words in this memorandum of law, exclusive of the caption, title, and

signature block, is less than 4,200 words.


DATED: December 24, 2020          Respectfully submitted,
          New York, New York
                                  O'MELVENY & MYERS LLP
                                  By: */s/ Edward Moss*
                                  Edward Moss (emoss@omm.com)
                                  7 Times Square
                                  New York, NY 10036
                                  (212) 326-2000

                                  *Attorneys for Plaintiff Pacific Alliance*
                                  *Asia Opportunity Fund L.P.*

# EXHIBIT 9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P., | |
| Plaintiff, | Index No. 652077/2017 |
| v. | Hon. Barry Ostrager |
| KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a* MILES KWOK, *a/k/a* HAOYUN GUO, GENEVER HOLDINGS CORPORATION, and GENEVER HOLDINGS LLC, | Part 61 |
| | Mot Seq. No. 12 |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S MOTION FOR ORDER OF CONTEMPT AGAINST DEFENDANT KWOK**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ...................................................................................................... 1

    I.    The October 15 Order Prohibited the Lady May from Being Moved
         Outside this Court's Jurisdiction................................................................. 1

    II.   The Court Should Hold Kwok in Contempt. ............................................. 4

CONCLUSION..................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*1319 Third Ave. Realty Corp. v. Chateaubriant Rest. Dev. Co., LLC,*
  2007 WL 2701271 (N.Y. Sup. Ct. Sept. 17, 2007) ................................................... 10

*2619 Realty, LLC v. Fid. & Guar. Ins. Co.,*
  303 A.D.2d 299 (1st Dep't 2003) ........................................................................... 2

*Bogoni v. Friedlander,*
  197 A.D.2d 281 (1st Dep't 1994) ........................................................................... 6

*Dep't of Hous. Pres. & Dev. of City of New York v. Deka Realty Corp.,*
  208 A.D.2d 37 (2d Dep't 1995) ............................................................................ 10

*L & R Expl. Venture v. Grynberg,*
  2011 WL 1564647 (N.Y. Sup. Ct. Apr. 19, 2011) ................................................. 10

*Wengui v. Zeng,*
  Index No. 157025 (N.Y. Sup. Ct. Sept. 2, 2020) .................................................... 5

**Other Authorities**

MERRIAM-WEBSTER.COM, *Interfere* ......................................................................... 2

**Rules**

N.Y. R. Professional Conduct 3.3 .............................................................................. 4

# PRELIMINARY STATEMENT[1]

Given this case's history, it is not clear whether Kwok's Opposition is the single most disingenuous submission he has made to this Court. But it certainly is up there. With a straight face, Kwok argues that (i) moving and keeping the Lady May outside this Court's jurisdiction did not violate the October 15 Order—even though the Court expressly and repeatedly has said that it did; and (ii) even if moving the yacht were a violation, Kwok should not be sanctioned because he does not own the Lady May—even though he repeatedly has stated, both in a court filing and on social media, that he does. Enough is enough. The Court should hold Kwok in contempt and impose a sanction sufficient to motivate him to comply with the Order and bring his yacht back to this jurisdiction—and keep it here.

## ARGUMENT

**I.    The October 15 Order Prohibited the Lady May from Being Moved Outside this Court's Jurisdiction.**

Kwok does not dispute that (i) the October 15 Order restrained, "in accordance with the proceedings on the record of October 15, 2020," both "Kwok and/or the registered owners of . . . 'the Lady May' . . . from making or causing any sale, assignment, transfer, or *interference* with th[at] asset[]";[2] or (ii) the Lady May has been moved out of U.S. waters. Instead, he argues that the move out of the Court's jurisdiction did not technically violate the October 15 Order because

---

[1] This brief refers to (i) Defendant Kwok Ho Wan's Memorandum of Law in Opposition to Plaintiff's Motion for an Order of Contempt (Dkt. No. 698) as the "Opposition" or "Opp;" (ii) the Affirmation of Edward Moss in Further Support of Pacific Alliance Asia Opportunity Fund L.P.'s Motion for Order of Contempt Against Defendant Kwok as the "Moss Reply Aff."; and (iii) the Affirmation of Nathaniel Francis in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Motion for Order of Contempt Against Defendant Kwok as the "Francis Aff." Unless otherwise specified, (i) defined terms have the meaning given to them in the Memorandum of Law in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Motion for Order of Contempt Against Defendant Kwok (Dkt. No. 689), (ii) all emphasis is added, and (iii) all internal citations and quotations are omitted.

[2] Opp. at 3 (citing (Dkt. No. 630)).

(i) the Lady May's "ownership" has not changed; (ii) "Plaintiff neither asked for nor received

any direction from the Court prohibiting the Lady May's relocation" at the October 15 hearing;

and (iii) the Court explained at the October 15 hearing that ordinary course expenditures—for

example, "if Mr. Kwok wants to take a vacation in the middle of the coronavirus pandemic"—

were permitted.[3]

These arguments are frivolous.  To begin, Kwok has no answer for why moving the yacht

does not count as "interference" with the October 15 Order (it does),[4] nor how spending money

in the ordinary course on a vacation somehow equates to moving a restrained, multi-million

dollar asset outside of the jurisdiction (it does not).  Indeed, the Court already has rejected

Kwok's "ordinary-course" argument.  In response to Kwok's counsel's question seeking

clarification as to whether the restraining order applied to the payment of legal fees, the Court

explained the contours of what it meant by "ordinary course."[5]  **Immediately after that**

**clarification,** Kwok's counsel asked whether the Lady May could be moved to the British Virgin

Islands because that was "just an **ordinary thing** that is has to do for licensing purposes."[6]  The

Court responded in no uncertain terms that Kwok **was not permitted to move the yacht before**

**making (and winning) a motion seeking leave to do so**.[7]

---

[3] Opp. at 6–9.

[4] "[I]t is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract."  *2619 Realty, LLC v. Fid. & Guar. Ins. Co.*, 303 A.D.2d 299, 301 (1st Dep't 2003).  The ordinary meaning of "to interfere" is "to interpose in a way that hinders or impedes."  MERRIAM-WEBSTER.COM, *Interfere* (*available at* https://www.merriam-webster.com/dictionary/interfere).

[5] *See* Dkt. 691 at 12:23–13:5 (permitting legal fees that are "customary and reasonable").

[6] *Id.* at 13:9–18.

[7] *Id.* at 13:19–24.

2

Worse, Kwok completely ignores this Court's *repeated, clear, and unequivocal statements* that moving the Lady May *would (and did) violate the Order*. First, at the October 15 hearing (which was expressly incorporated into the October 15 Order that issued later that day), the Court specifically discussed the Lady May and directed Kwok that the yacht and other assets not be moved so that they would be available for collection if PAX were to prevail (*i.e.*, so as not to *interfere* with PAX's potential judgment-enforcement efforts):

> *Wherever these assets are held, they are going to remain held where they presently reside* and if it's determined that the entities that are presently listed as the owners of the assets are the alter ego of Mr. Kwok or are wholly dominated and controlled by Mr. Kwok, *those assets will be made available to satisfy any judgment that the plaintiff recovers.*[8]

Then, at the November 20 hearing, Kwok's counsel asked "two questions . . . *clarifying the scope of the restraining order* that the Court has entered"—one of which was whether the Lady May could be moved outside the jurisdiction (even though, we now know, it already had been moved by that time).[9] As noted above, the Court unequivocally answered "no"—not without first making and winning a motion and a further Court order:

> You will have to make that application on papers. *I don't know anything about the requirement that an asset that has been restrained in the United States should be allowed to go to the British Virgin Islands*. I seriously doubt Mr. Moss wants that yacht to be outside the jurisdiction of the Court. . . . *What I am not going to have happen is Mr. Kwok move the yacht to the British Virgin Islands and then it becomes potentially unavailable for Mr. Moss's client to levy upon*. . . . Mr. Siegal asked me a question about *whether the restraining order can be modified to allow this yacht to move from a US port to the British Virgin Islands*, and I said that's an application that has to be made on formal motion papers with supporting documentation and appropriate opportunity for Mr. Moss to reply.[10]

---

[8] [Dkt. No. 647](#) at 22:8–14.

[9] [Dkt. No. 691](#) at 12:23–25.

[10] [Dkt. No. 691](#) at 13:19–15:4.

3

Finally, at the most recent hearing on December 18, the Court again reiterated what should have been quite obvious to Kwok by that point:

> Okay. So, let me ask you, we have an issue ***with respect to a boat that I enjoined Mr. Kwok from moving*** which he may or may not have ***moved in violation of the Court's order***. . . . It seems to me ***I ordered the boat not be moved***.[11]

Given the plain meaning of "interference" (*see supra* note 4) and the Court's repeated, unequivocal directives, there is no question that the October 15 Order has been violated. Kwok's suggestion otherwise is misleading.[12] And if Kwok argues that he should get a pass because the yacht already had been moved by the time of the October 15 hearing (*i.e.*, before his counsel asked and was denied permission to move it), then the answer is quite simple: it should have been brought back ***immediately*** after the Court issued the October 15 Order.[13]

## II.  The Court Should Hold Kwok in Contempt.

While Kwok advances several other meritless arguments for why he personally should

---

[11] Dkt. No. 695 at 25:15–18, 27:21–22.

[12] *See* N.Y. R. Professional Conduct 3.3(a)(1) (providing that a lawyer's duty of candor toward the tribunal prohibits him or her from knowingly "mak[ing] a false statement of fact or law to a tribunal"); *see also* Dkt. No. 647 at 21:11–16 ("The Court believes . . . that Mr. Kwok has attempted to mislead the Court. The Court believes that Mr. Kwok is, as the plaintiff contends, playing a shell game with his assets, and has violated if not the letter of court orders, the spirit of court orders."), 26:5–9 ("While orders of the Court are either flaunted or exceedingly liberally interpreted, and while intentional or unintentional misstatements that have misled the Court have been made to the Court, we are going to have closure in this case in January of 2021.").

[13] We take Kwok's counsel at his word that he did not know the Lady May already had been moved out of the jurisdiction when he asked the Court if the Lady May could be moved out of the jurisdiction. But later—after being informed by PAX that the yacht was actually out of the jurisdiction—Kwok's counsel wrote to the Court and explained that because his firm had just been informed by PAX about the yacht's location, "we have not confirmed any details," but were "attempting to gain additional information and will promptly inform the Court and counsel when we learn anything further." Dkt. No. 649. Contrary to that representation, however, Kwok did not, before responding to this Motion, provide any additional information to the Court about the yacht's location. *See* N.Y. R. Professional Conduct 3.3(b) ("A lawyer who represents a client before a tribunal and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.").

4

not be held in contempt, they all reduce to his core assertion that he does not own—and therefore cannot control the movements of—the Lady May. Who does Kwok think he's kidding?

As PAX already has demonstrated, Kwok alleged fewer than five months ago—in a September 1, 2020 complaint *he filed i*n New York Supreme Court—that "pawns of the Chinese Communist Party . . . have attempted to cause Guo [a/k/a Kwok] injury while on *his yacht*." *See Wengui v. Zeng*, Index No. 157025/2017 (N.Y. Sup. Ct. Sept. 2, 2020), Dkt. No. 1 (Complaint at ¶ 8). That sentence in Kwok's own complaint ends with a footnote that cites and links to (and thereby incorporates by reference) an article by *freebeacon.com* entitled "Beijing Suspected in Hacking Yacht *Owned by* Chinese Billionaire," which states that "Guo Wengui, who uses the English name *Miles Kwok, said* several incidents involving *his 152-foot motor yacht, Lady May*, appear to be part of a Chinese government effort to threaten and intimidate him."[14] It is not surprising, then, that in the context of restraining the Lady May, the Court described it as the "27 million-dollar yacht *which Mr. Kwok once claimed to have owned*."[15]

Notably, counsel for the Genever Defendants in this action, Aaron Mitchell, serves as counsel for Kwok personally in *Wengui v. Zeng*. Mr. Mitchell signed the complaint that repeatedly referred to the Lady May as "his [*i.e.*, Kwok's] yacht" and incorporated by reference the *freebeacon.com* article reporting that the yacht was "owned" by Kwok. Even though Mr. Mitchell supposedly does not represent Kwok in this case, he argued on Kwok's behalf at the December 18 hearing, contending that his September 2020 complaint "wasn't referring to ownership," but rather merely to "the fact that Mr. Kwok was on that boat," and chided PAX's

---

[14] *See id.* at 3 n.1 (citing https://rntfnd.org/2017/09/18/fbi-investigating-possible-china-cyberattack-on-yacht-in-new-york/). The complaint also refers to the Lady May as "his" (*i.e.*, Kwok's) yacht in Paragraph 7 and in Prayer for Relief (d).

[15] Dkt. No. 647 at 22:5–6.

FILED: NEW YORK COUNTY CLERK 01/27/2021 09:30 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 709
RECEIVED NYSCEF: 01/27/2021

Case 22-cv-07422-DLC-OTW Document 16-6 Entered 03/24/22 21:36:18 of Page 73 of
121

counsel for its "absurd reliance" on that pleading.[16]  Given Kwok's track record, perhaps Mr. Mitchell was onto something when he suggested it was "absurd" for PAX to actually rely on Kwok's own words.

Kwok's Opposition is even more disingenuous; it mischaracterizes PAX as arguing that Kwok owns the yacht in part because he was supposedly a "guest" on it (something PAX has never argued), and claims that PAX has no evidence of ownership.[17]  Even if Kwok's ***own pleading***—a judicial admission[18]—were insufficient to establish ownership (and it is more than sufficient), PAX has much, much more:

On May 10, 2017, Kwok "tweeted" (on his since-suspended Twitter account) the following photo of himself sitting on the Lady May, accompanied by Chinese characters that, translated, state "I am posting a few photos of the yacht *I gave to my daughter* and named after her. . . . Her name is Lady May. . . . *I bought it for 41 million euro*":[19]

---

[16] Dkt. No. 695 at 26:23–27:12.

[17] Opp. at 8–9.

[18] *See Bogoni v. Friedlander*, 197 A.D.2d 281, 291–292 (1st Dep't 1994) (An admission in an initial pleading is a "formal judicial admission" which is "evidence of the facts admitted.").

[19] Francis Aff. Ex. A.

Case 22-50073-JAM    Doc 4563-4    Filed 06/24/22    Entered 06/24/22 21:36:18    Page 74 of
121



20

Then, on August 27, 2017, Kwok (again, on his since-suspended account), referred to the

"Lady May" as "*my ship*" and recalled that "two years ago when I was in Miami . . . *I [] signed

the most important investment contract of my life*," and it "all seems so meaningful."[21]

But we have saved the best for last. As an October 14, 2017 YouTube video shows,[22]

Kwok was filmed *stating unequivocally that the boat was his*:[23]

> *I decided to sell it* because it has an aluminum body. With an aluminum
> body, it drifts a bit at sea. It's okay in shallow waters. I wanted to use the
> heavier one, the bigger one, which is also a Feadship, since it is made of
> steel. I wanted to go further out to sea. . . . *I advertised it twice*, but my
> offers were relatively high, about US$50 million, 31 million euros, which

---

[20] *Id.*

[21] *Id.*

[22] *See* Moss Reply Aff. ¶ 3 (directing the Court to minute 2:50 through minute 4:15 in a YouTube video
available at https://youtu.be/T_EkmRpIqh8).

[23] Moss Reply Aff. Ex. 4.

FILED: NEW YORK COUNTY CLERK 01/27/2021 09:30 PM
NYSCEF DOC. NO. 709

INDEX NO. 652077/2017
RECEIVED NYSCEF: 01/27/2021

Case 22-50073-JAM Doc 456 VABiled 06/24/22 2 P36 e182 of Page 75 of
121

was around US$50 million.  When *I listed* it at that higher price, *I had one offer* just below *my* asking price, but *I did not sell it.*



全方位展示郭文贵豪华游艇五月佳人号，Lady May, Miles Kwok 's super yacht



全方位展示郭文贵豪华游艇五月佳人号，Lady May, Miles Kwok 's super yacht  [24]

This is all straight from Kwok's mouth:  *He* bought the Lady May, *he* had it shipped, *he* decided to list it for sale, and *he* put it in his daughter's name to shield it from creditors.  Kwok's contention that he is merely some "guest" aboard the yacht is (yet another) flat-out lie.

---

[24] *Id.*  The screenshots were taken directly from YouTube and already included the captions, which a certified translation confirms are substantially accurate.  *See* Moss Aff. Ex. 4.

Of course, Kwok's contention that he does not own or control the Lady May and that it is really owned by an entity, HK International Funds Investments (USA) Limited LLC, which is wholly owned and controlled by his daughter Mei (pronounced "May") Guo, is right on-brand. Kwok is a self-proclaimed billionaire who, when it suits him, pretends to have no assets[25] precisely because his practice is to use shell companies and his children and employees to shield his assets. For example, Kwok is now claiming in the Genever bankruptcy case that the Genever Defendants are beneficially owned by another shell company that is owned by his son—despite never disclosing that to the Sherry-Netherland and never making that argument before this Court to try to avoid an attachment.[26] And not only has Kwok repeatedly stated that the Lady May is "his" (including in the above-described September 2020 complaint that he filed *after* he supposedly gave the yacht to his daughter), but HK International is a mere shell company (i) that did not have the yacht registered in its name until April 2020 (when PAX was in the red zone in this litigation);[27] and (ii) with a "principal office" address of 162 E. 64th Street—the same address as (surprise!) the offices of Mr. Mitchell—who regularly represents Kwok or his shell entities, depending on the case.[28]

*  *  *

During the October 15 hearing, even before the Court knew that Kwok had moved the yacht, it explained that in this "2017 case in which there's been a great deal of gamesmanship, a

---

[25] Dkt. No. 580 at 100:2–3 (testifying that his net worth is "negative"); 101:3–5 (testifying that "[i]n reality, under the law" he has "no" assets).

[26] *See* Moss Reply Aff. Ex. 5 at ¶ 4 (claiming that Bravo Luck is (i) "the beneficial owner" of the Sherry-Netherland apartment and (ii) "a company owned by Mr. Qiang Guo, the son of Mr. Kwok Ho Wan a/k/a Miles Kwok").

[27] *See* Opp. at 4, n.2.

[28] *See* Dkt. No. 705 at 1.

Case 22-50073-JAM Doc 4563-4 Filed 06/24/24 Entered 06/24/24 21:36:48 Page 77 of 121

great deal of dissembling, and some flagrant disregard of court orders . . . [t]he Court believes

that Mr. Kwok is, as the plaintiff contends, playing a shell game with his assets . . . ."[29] The

Court further stated that "we are not going to have any more shell games."[30] Unfortunately,

Kwok's shell games have continued, his dissembling and gamesmanship have only intensified,

and he has once again flagrantly violated an order of this Court.

This Court has the discretion to impose a sanction on Kwok sufficient to motivate him to

comply with the October 15 Order. Indeed, "the purpose of civil contempt is to coerce

obedience to a court order."[31] In a separate case against him in Nevada, for example, Kwok was

sanctioned $250,000 per day until he finally complied with a court order requiring him to meet

his most basic discovery obligations.[32] The violation here is far worse.

Given Kwok's repeated violation of this Court's orders, his obvious financial means as a

self-proclaimed multi-billionaire, and the gravity of and materiality to PAX of the current

violation, PAX respectfully requests a sanction—monetary or otherwise—that is sufficient to

compel Kwok to comply with the October 15 Order and bring the Lady May back to the

jurisdiction immediately.

---

[29] Dkt. No. 647 at 24:9–11; 21:13–15.

[30] *Id.* at 22:7.

[31] *1319 Third Ave. Realty Corp. v. Chateaubriant Rest. Dev. Co., LLC,* 2007 WL 2701271, at *2 (N.Y. Sup. Ct. Sept. 17, 2007); *see also Dep't of Hous. Pres. & Dev. of City of New York v. Deka Realty Corp.,* 208 A.D.2d 37, 42 (2d Dep't 1995) ("A civil contempt penalty is imposed not to punish but, rather, to compensate the injured private party or to coerce compliance with the court's mandate.")*; L & R Expl. Venture v. Grynberg,* 2011 WL 1564647, at *4 (N.Y. Sup. Ct. Apr. 19, 2011) ("The court has authority to punish a litigant that disobeys a lawful mandate. The purpose of civil contempt is to coerce compliance with a court order or to compensate a party who is injured as a result of disobedience of a court order.").

[32] *See* Dkt. No. 557 at 2 (ordering Kwok to provide the Court with a phone number where he could be reached and either (i) an address where he would accept service of discovery documents, or (ii) and email address where such documents may be sent).

FILED: NEW YORK COUNTY CLERK 01/27/2021 09:30 PM
NYSCEF DOC. NO. 709

INDEX NO. 652077/2017
RECEIVED NYSCEF: 01/27/2021

Case 22-50073 Doc 454 Filed 06/24/22 Entered 06/24/22 21:36:18 Page 78 of
121

# CONCLUSION

For these reasons, PAX respectfully submits that the Court should hold Kwok in contempt and order appropriate sanctions.

DATED: January 27, 2021
      New York, New York

Respectfully submitted,

O'MELVENY & MYERS LLP
By: */s/ Edward Moss*
Stuart Sarnoff (ssarnoff@omm.com)
Edward Moss (emoss@omm.com)
7 Times Square
New York, NY 10036
(212) 326-2000

-and-

Robert W. Seiden
(rseiden@seidenlegal.com)
1120 Avenue of the Americas
New York, NY 10036
(212) 626-6708

*Attorneys for Plaintiff Pacific Alliance*
*Asia Opportunity Fund L.P.*

11

Case 22-50073-JAM   Doc 454-6   Filed 05/24/22   Entered 05/24/22 21:36:18   Page 79 of
121

## CERTIFICATION OF WORD COUNT

PAX hereby certifies that this document complies with the word count provisions of

Commercial Division Rule 17. This memorandum of law was prepared using Microsoft Word,

and the total number of words in this memorandum of law, exclusive of the caption, title, and

signature block, is less than 4,200 words.


DATED: January 27, 2021              Respectfully submitted,
     New York, New York
                       O'MELVENY & MYERS LLP
                       By: */s/ Edward Moss*
                       Edward Moss (emoss@omm.com)
                       7 Times Square
                       New York, NY 10036
                       (212) 326-2000

                       *Attorneys for Plaintiff Pacific Alliance*
                       *Asia Opportunity Fund L.P.*

12

# EXHIBIT 10

Case 22-50073-22-Doc-03654-V-Filed 05/24/22 6 Entered 05/24/22 21:36:08 2 dPage 81 of 121

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:        **HON. BARRY R. OSTRAGER**              PART        **IAS MOTION 61EFM**

*Justice*

-----------------------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

|  |  |
|---|---|
| **INDEX NO.** | 652077/2017 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 012 |

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, et al.,

**DECISION + ORDER ON MOTION**

Defendants.

-----------------------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

Before the Court is Motion 012 by Plaintiff Pacific Alliance Asia Opportunity Fund L.P.

("PAX") to hold Defendant Kwok Ho Wan ("Kwok") in contempt. This Court previously issued

three orders restraining Kwok's interest in the yacht called the "Lady May." On September 30,

2020, this Court entered a Temporary Restraining Order (the "TRO") preventing Kwok from,

among other things, "interference with any property in which he has an interest." NYSCEF Doc.

No. 591. In issuing the TRO, the Court noted that "[a]ny violation . . . shall be considered

criminal contempt." *Id.* On October 15, 2020, the Court issued the Order, which granted PAX's

motion under CPLR 5229 and expressly restrained the Lady May:

> Mr. Kwok is restrained from making or causing any sale, assignment, transfer, or
> interference with any property in which he has an interest, whether directly or
> indirectly, and from paying over or otherwise disposing of any debt now due or
> thereafter coming due to him subject to the exceptions set forth in CPLR 5222, in
> accordance with the proceedings on the record of October 15, 2020. Specifically,
> Mr. Kwok and/or the registered owners of (1) the Residence at the Sherry-
> Netherland Hotel and (2) the yacht, "the Lady May" are restrained from making
> or causing any sale, assignment, transfer, or interference with those assets.

INDEX NO. 652077/2017
RECEIVED NYSCEF: 03/16/2021

NYSCEF Doc. No. 630. Counsel for Kwok specifically asked the Court whether Kwok could move the yacht from the jurisdiction for licensing purposes. The Court denied this request at the time and directed counsel to make a motion if necessary.

Plaintiff brings this motion because, despite these orders, the Lady May has been moved outside of the United States.

The Court has reviewed the extensive submissions of the parties in connection with PAX's motion to hold Kwok in contempt. Passing the issue of whether any of Mr. Kwok's attorneys have violated the Code of Professional Conduct, it is clear that there has been an intolerable amount of gamesmanship, dissembling. and deceit in proceedings before this Court relating to the whereabouts and ownership of the yacht "Lady May."

The defendant claims that the yacht was removed from the jurisdiction of this Court for "ordinary course" "winter maintenance" notwithstanding restraints imposed on the movement of the yacht by the Court. Rather than catalogue the many "shell games" defendant Kwok has engaged in with the assistance of counsel who should know better, the Court grants the motion for contempt to the following extent: For every day that the yacht is outside the jurisdiction of this Court after May 15, 2021, defendant Kwok will be fined $500,000. The other restraints relating to the ownership and control of the yacht remain in place.

2

A status conference remains scheduled for May 4, 2021 at 10:00 am.

Dated: March 16, 2021

*Barry Ostrager*

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

3

# EXHIBIT 11

FILED: NEW YORK COUNTY CLERK 02/09/2022 04:33 PM
NYSCEF DOC. NO. 1182

INDEX NO. 652077/2017
RECEIVED NYSCEF: 02/09/2022

Case 22-cv-07073 Document 54-1 Filed 05/24/22 Entered 05/24/22 21:36:02 Page 85 of
121

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY
FUND L.P.,

                                    Plaintiff,

            v.

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO
WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN
GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES
KWOK, a/k/a HAOYUN GUO, GENEVER
HOLDINGS CORPORATION, and GENEVER
HOLDINGS LLC,

                                    Defendants.

Index No: 652077/2017

Hon. Barry R. Ostrager

[PROPOSED] FINAL ORDER
OF CIVIL CONTEMPT

Motion Sequence No. 19

WHEREAS this Court's conditional order of civil contempt, dated March 16, 2021,

directed that if Defendant Kwok Ho Wan ("Kwok") failed to return the Lady May yacht (the

"Lady May") to the jurisdiction of this Court by May 15, 2021, he would be subject to a

$500,000 fine for each day that the Lady May remained outside the jurisdiction;

WHEREAS the Lady May was not returned to the jurisdiction by May 15, 2021;

WHEREAS on November 4, 2021, the Appellate Division's First Department affirmed

this Court's order holding Kwok in conditional civil contempt, finding that "the daily fine of

$500,000 was intended to strongly encourage defendant to purge himself of the contempt, which,

despite being permitted two months to accomplish, he has shown no interest in doing," and

instructing this Court to proceed with an evidentiary hearing to resolve a dispute as to ownership

and control of the yacht, and to assess appropriate penalties;

WHEREAS Kwok to date has failed to return the Lady May to the jurisdiction;

WHEREAS the evidentiary hearing specified by the First Department's November 4, 2021 Order was held on February 2, 2022;

WHEREAS both Kwok and the registered title holder of the Lady May, HK International Funds Investments (USA) Limited, LLC, ~~were present~~ *appeared* at the hearing, *by counsel* proffered evidence and were represented by counsel; and

WHEREAS, based on the evidence adduced at the hearing, the Court determines that PAX has clearly and convincingly established that Kwok has a beneficial interest in and control over the Lady May, *as set forth in the Court's February 9, 2022 Decision and Order;*

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Kwok has violated New York Judiciary Law § 753 and is civil contempt of this Court's orders.

2. Kwok is directed to tender immediate payment to PAX in the amount of $134,000,000, representing $500,000 for each day between May 15, 2021 and February 7, 2022.

3. The amount due to PAX shall continue to accrue at the rate of $500,000 per day until Kwok returns the Lady May to the jurisdiction, which additional accrual shall begin ten business days from ~~the date~~ *service* of this Order, *with Notice of Entry.*

4. Payment of the amount set forth in paragraph 2 above shall be made to PAX within five business days of the ~~date~~ *service* of this Order, *with Notice of Entry.*

5. The Court shall exercise its full authority under New York Judiciary Law § 753 in the event the fine is not timely paid to PAX.

It is SO ORDERED this ___9th___ day of __February__, 2022.

_____
BARRY R. OSTRAGER, J.S.C.
**BARRY R. OSTRAGER**
                                JSC

2

# EXHIBIT 12

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| Ho Wan Kwok[1] | 22-50073 (JAM) |
| Debtor. | |
| Pacific Alliance Asia Opportunity Fund L.P., | |
| Movant, | |
| vs. | |
| Ho Wan Kwok, | |
| Respondent | March 1, 2022 |

## MOTION OF PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. FOR ENTRY OF AN ORDER CONFIRMING THE INAPPLICABILITY OF THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(2) OF THE BANKRUPTCY CODE

TO THE HONORABLE JULIE A. MANNING,
UNITED STATES BANKRUPTCY JUDGE:

Pacific Alliance Asia Opportunity Fund L.P. ("PAX") moves (this "Motion") for an order, substantially in the form attached hereto as Exhibit A, confirming that the automatic stay is inapplicable to a discrete pre-petition proceeding pending in the Supreme Court of the State of New York (Justice Ostrager presiding), holding the debtor, Ho Wan Kwok ("Kwok"), in civil contempt for failure to return his yacht, the "Lady May," to New York in violation of that court's orders.[2] In issuing his February 9, 2022 final Order of Civil Contempt against Kwok, Justice

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.
[2] Liquidation of the Lady May, which Justice Ostrager found Kwok "beneficially owns and controls," and distribution of resulting proceeds should occur in the chapter 11 process (to the extent this case is not dismissed).

1

Ostrager warned, "if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law."[3] This applies with equal force to these chapter 11 proceedings. Kwok cannot exploit the protections of the Bankruptcy Code to evade Justice Ostrager's orders, and the automatic stay does not allow him to do so.

Kwok's contumacious behavior is long-standing and flagrant. First, Kwok moved the Lady May out of the jurisdiction of the New York Supreme Court in direct violation of that court's September 30 and October 15, 2020 Orders.[4] Then, in March 2021, Justice Ostrager issued a conditional order of civil contempt—which was unanimously affirmed by the New York Appellate Division, First Department[5]—requiring Kwok or the registered owner to return the Lady May by May 15, 2021 or face a daily $500,000 fine for each day that the yacht remained outside of that court's jurisdiction.[6] Nearly a year later, after an evidentiary hearing, Justice Ostrager entered the February 9 Contempt Order directing (i) Kwok to pay $134 million ($500,000 per day for the period between May 15, 2021 and February 7, 2022); and (ii) continued accrual of the $500,000 daily fine if the Lady May was not returned to the court's jurisdiction within ten business days from notice of entry.[7] One day before the deadline to pay the $134 million contempt fine to PAX, and after Kwok's efforts to obtain an emergency stay of that order pending appeal failed, Kwok filed this chapter 11 case. But bankruptcy protection is

---

[3] *See* Declaration of Peter Friedman in support of Motion of Pacific Alliance Asia Opportunity Fund L.P. for a Declaration of Inapplicability of the Automatic Stay or Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code, attached hereto as Exhibit B ("Friedman Decl."), Ex. 1. Decision + Order on Mot, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2022), ECF No. 1181 (the "February 9 Contempt Order") at 10.

[4] Friedman Decl., Ex. 2, Decision + Order on Mot., *PAX v. Kwok,* 652077/2017 (N.Y. Sup. 2020), ECF No. 591; Friedman Decl., Ex. 3, Decision + Order on Mot., *PAX v. Kwok,* 652077/2017 (N.Y. Sup. 2020), ECF No. 630.

[5] *Pac. All. Asia Opportunity Fund L.P. v. Wan*, 199 A.D.3d 423, 423 (1st Dep't 2021).

[6] Friedman Decl., Ex. 4, Decision + Order on Mot., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 728 ("Initial Contempt Order," and together with the February 9 Contempt Order, the "Contempt Orders").

[7] Friedman Decl., Ex. 5, Final Order of Civil Contempt, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2022), ECF No. 1182, at 2.

for honest, good-faith debtors. And the automatic stay does not shield debtors from the

consequences of defying court orders and assaulting the dignity of the judicial system.

Therefore, PAX asks this Court to enter an order confirming its right to institute further

proceedings to enforce Justice Ostrager's February 9 Contempt Order.

Alternatively, PAX moves for relief from the automatic stay under Section 362(d)(1) of

Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001of the Federal Rules

of Bankruptcy Procedure to permit enforcement of the February 9 Contempt Order, except to the

extent it requires Kwok to immediately pay money to PAX. Such relief includes enforcing the

February 9 Contempt Order to ensure the return of the Lady May to New York, allowing

continued accrual of fines (which constitute debts that Kwok cannot discharge in this chapter 11

case), and permitting Justice Ostrager to order any other appropriate sanctions (including

issuance of an arrest warrant),[8] if Kwok fails to promptly return the Lady May to New York.[9]

In support thereof, PAX respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334,

and, for purposes of this Motion, PAX accepts that venue may be proper in this district without

prejudice to any future motion to transfer venue. This Motion is a core proceeding under

28 U.S.C. §157(b), and the basis for PAX's requested relief is section 362(d) of the Bankruptcy

Code.

---

[8] *See, e.g.*, NY Judiciary Law § 753 ("A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced.").

[9] PAX intends to initiate an adversary proceeding to confirm the non-dischargeability of the civil contempt fines issued by Justice Ostrager. *See In re Singer*, No. 10–00045, 2010 WL 3732944 (D.N.J. Sept. 17, 2010) (contempt sanctions non-dischargeable in bankruptcy); *In re Marini,* 28 B.R. 262, 266 (E.D.N.Y. 1983) (same).

## BACKGROUND

2.    Nearly eleven years ago, PAX signed a loan agreement with a Kwok-owned entity called Shiny Times.[10]  Kwok personally guaranteed that loan.[11]  Despite multiple repayment extensions and PAX's numerous attempts to settle the debt, Kwok has never repaid the loan.[12]

3.    PAX sued Kwok for breach of the personal guarantee contract on April 18, 2017 in New York State Supreme Court.[13]  Following nearly four years of litigation, on February 3, 2021, PAX secured a judgment against Kwok for $116,402,019.57.[14]  PAX then "undertook a year's-long effort to enforce [the] judgment by first identifying and then attempting to levy upon Kwok's assets in the United States."[15]  This was no small task because, as Justice Ostrager found, "Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[16]  Kwok has yet to repay any of the $116,402,019.57 judgment, which accrued post-judgment interest at the rate of 9 percent per year.[17]

---

[10] Friedman Decl., Ex. 6, Decision + Order on Mot., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 549, at 2.

[11] *Id.*

[12] *Id.* at 7.

[13] Friedman Decl., Ex. 7, Compl., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2017), ECF No. 2.

[14] Friedman Decl., Ex. 8, Judgment, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 716 at 2.

[15] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 1.

[16] *Id*.

[17] N.Y. C.P.L.R. 5004 (McKinney's 2022); Friedman Decl., Ex. 8 at 2; *see also* Friedman Decl., Ex. 9, Statement of Material Facts in Support of Pl.'s Mot. for Partial Summ. J., Ex. 23 at KWOK000652, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 455 ("2011 Personal Guarantee").

4.      Although Kwok claims to have no assets,[18] he has (at a minimum) beneficial

ownership of the Lady May, purchased in 2015 for € 28 million.[19]  On September 30, 2020,

Justice Ostrager issued a temporary restraining order preventing Kwok "from making or causing

any sale, assignment, transfer or interference with any property in which he has an interest…."[20]

Two weeks later, on October 15, 2020, Justice Ostrager specified that this restraint on Kwok

included the Lady May.[21]  But unbeknownst to Justice Ostrager and PAX, the Lady May had

already left New York for Florida on or about October 9.[22]  The yacht then went to the Bahamas,

and finally to Europe, where it remains to this day.[23]

5.      In response, PAX filed a contempt motion[24] and on March 16, 2021, the court

issued a conditional order of civil contempt directing Kwok or the boat's registered owner to

return the Lady May to the court's jurisdiction by May 15, 2021, and imposing a $500,000 fine

for every day thereafter that the yacht remained beyond its jurisdiction.[25]  The New York

Appellate Division, First Department, unanimously affirmed the trial court's order, finding that

(i) PAX had "established by clear and convincing evidence that [Kwok had] violated a lawful

---

[18] *See United States Trustee's Objection to Debtor's Motion for Extension of Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs*, ECF No. 49, at ¶ 12 (during his Initial Debtor Interview with the United States Trustee, Kwok "disclosed he has no bank accounts, no credit cards, is not employed such that he earns income, and that all of his living expenses are paid for and through an entity known as Golden Spring (New York) Ltd. ('Golden Spring'). [He] also disclosed that he does not directly own any real estate, does not own any cars, and does not insure any assets.").

[19] Friedman Decl., Ex. 1 at 4. Although Kwok denies it, he also owns a full-floor luxury apartment at the Sherry Netherland hotel that is currently listed for sale at $45 million in connection with a related bankruptcy proceeding in the Southern District of New York.

[20] Friedman Decl., Ex. 2.

[21] Friedman Decl., Ex. 3 at 1.

[22] *See* Friedman Decl., Ex. 10 (VESSELFINDER, Voyage Analyzer
https://voyage.vesselfinder.com/dcad1f224b32615145e66055d9856504) (last visited Feb. 28, 2022).

[23] As of February 28, 2022, the Lady May is located in Genoa, Italy.  *See id.*

[24] *See* Friedman Decl., Ex. 11, PAX Mem. of Law in Supp. of Mot. for Order of Contempt Against Def. Kwok, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2020), ECF No. 689; *see also* Friedman Decl., Ex. 12, PAX Mem. of Law in Further Supp. of Mot. For Order of Contempt Against Def. Kwok, *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 709.

[25] Friedman Decl., Ex. 4 (Initial Contempt Order) at 2.  In other words, the court provided Mr. Kwok a full two-month grace period to return the yacht and thereby avoid any fine at all.

clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to [PAX's] rights…"[26]; and (ii) "the daily fine of $500,000 was intended to strongly encourage [Kwok] to purge himself of the contempt."[27]  Accordingly, the First Department instructed Justice Ostrager to "proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties" before issuing a final contempt order.[28]

6.    Justice Ostrager held that evidentiary hearing on February 2, 2022.  After hearing testimony from seven witnesses,[29] Justice Ostrager concluded that "[t]he testimony adduced at the hearing out of the mouths of [Kwok]'s witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[30]  The court further found that "[n]ot only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[31]  As a result, Justice Ostrager entered the February 9 Contempt Order.[32]

7.    Consistent with his past practice of flouting court orders, Kwok failed to pay the contempt fine, and has not returned the yacht to the United States.[33]  Instead, on February 15, 2022, Kwok filed for bankruptcy in this Court.[34]  Kwok's bankruptcy petition lists $50,001-

---

[26] *Pac. All. Asia Opportunity Fund L.P.*, 199 A.D.3d at 423.
[27] *Id.* at 424.
[28] *Id.*
[29] Kwok invoked his Fifth Amendment rights in response to PAX's post-judgment discovery efforts and Kwok did not testify at the February 2 hearing.  *See*  Friedman Decl., Ex. 1 (February 9 Contempt Order) at 3.
[30] *Id.* at 4.
[31] *Id.* at 8.
[32] Friedman Decl., Ex. 5.
[33] *See supra* note 23.
[34] Voluntary Petition, ECF No. 1 at 7.

$100,000 in assets[35]—omitting the valuable Lady May, which remains outside of the United States,[36] unsupervised by any trustworthy fiduciary.

8.    In light of Kwok's history of contumacious behavior and extensive "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members,"[37] PAX respectfully urges this Court to order that the automatic stay does not bar it from resuming the contempt proceedings before Justice Ostrager to seek to force Kwok to return the Lady May to New York, and to permit Justice Ostrager to impose any available penalties on Kwok other than ordering him to make an immediate monetary payment to PAX.  In the alternative, PAX respectfully requests this Court provide narrow relief from the automatic stay to allow PAX to proceed before Justice Ostrager to obtain the same result.

## RELIEF REQUESTED

9.    By this Motion, PAX requests a determination that the automatic stay is inapplicable to the enforcement of Justice Ostrager's February 9 Contempt Order.  In the alternative, PAX requests an order modifying the automatic stay to permit PAX to enforce the February 9 Contempt Order, except to the extent any relief requires Kwok to immediately pay any money to PAX.[38]

---

[35] *Id.* at 7.

[36] *See supra* note 23.  As noted above, Kwok also fails to list the considerable value of the Sherry-Netherland apartment that he purchased for $67.5 million in March 2015, which he owns through two shell companies, Genever Holdings Corporation ("Genever BVI") and Genever Holdings LLC ("Genever NY").  *See* Friedman Decl., Ex. 13, Executed Contract of Sale, *Kwok v. PAX*, Index No. 652077/2017, ECF No. 256 (Executed Contract of Sale listing "Genever Holdings LLC" as the purchaser); *see also id.* at SN 0047 (Purchase Application listing "'Miles' Kwok Ho Wan (Genever Holdings LLC)" as the applicant).  Consistent with Kwok's actions here, Genever NY also declared bankruptcy immediately after PAX won summary judgment in late 2020.  *In re Genever Holdings LLC*, Case No. 1:20-bk-12411 (Bankr. S.D.N.Y.).

[37] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 1.

[38] PAX filed—prepetition—another contempt motion in the New York court concerning Kwok's failure to turn over his shares in a British Virgin Islands-registered company, Genever BVI, in accordance with Justice Ostrager's September 22, 2021 order.  *See* Friedman Decl., Ex. 14, Decision + Order on Mot., *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2021), ECF No. 904.  That motion has been fully briefed since January 24, 2022 and is

7

**ARGUMENT**

## I.    THE AUTOMATIC STAY IS INAPPLICABLE TO THE CONTEMPT ORDER AS IT RELATES TO THE RETURN OF THE LADY MAY.

10.    Criminal contempt proceedings are statutorily exempt from the automatic stay. *See* § 11 U.S.C. 362(b)(1) ("commencement or continuation of a criminal action or proceeding against the debtor" not subject to the stay.)  Civil contempt remedies can be issued by courts to "secure future compliance with a court order" or "provide compensation or other remedial relief" to a party for another party's failure to comply with a court order.  *Universal City Studios v. New York Broadway Int'l Corp.*, 705 F.2d 94, 96 (2d Cir.1983); *Allstate Ins. Co. v. Nair*, 3:10cv88 (SRU), 2011 WL 1832774, at *2 (D. Conn. May 13, 2011).  Although there is no *per se* exception from the automatic stay for civil contempt proceedings, "certain civil contempt proceedings may continue even in the face of a bankruptcy petition."  *Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 727 (S.D.N.Y. 1986).  Courts distinguish between civil contempt "motion[s] made to punish, and [those] made to collect on a judgment," finding the former exempt from the stay.  *Id.* at 729; *see also Booth v. Wilson,* No. 96 CIV. 920 (RO), 1997 WL 241050, at *2 (S.D.N.Y. May 7, 1997) ("The threshold issue is whether the motion for contempt is made to satisfy a judgment or if it is directed at an asserted defiance of a court order.").

11.    Courts routinely hold that civil contempt orders that are designed to punish debtors for non-compliance with court orders are not subject to the automatic stay because bankruptcy does not provide a safe harbor for parties that have engaged in sanctionable conduct

---

pending.  On February 18, 2022, Justice Ostrager issued a notice requesting that PAX, by March 3, 2022, withdraw the motion without prejudice in light of Kwok's bankruptcy filing.  Friedman Decl., Ex. 15, Court Notice, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. 2022), ECF No. 1191.  PAX intends to do so, and is not now seeking this Court's confirmation that the automatic stay is inapplicable to that contempt proceeding, but may, and reserves the right to, do so in the future.

8

that is an affront to the dignity of a court. And the bankruptcy process may not be "used as a sword" to prevent courts from punishing contemptuous acts. *Int'l Distrib. Ctrs, Inc.,* 62 B.R. at 730. For example, in *Roberts v. Bennaceur*, No. 3:12-CV-01222, 2015 WL 1471889, (D. Conn. 2015), the defendant filed for bankruptcy after repeatedly failing to disclose information relating to its assets and financial condition. Judge Meyer held that the bankruptcy filing did not preclude the Court from issuing sanctions relating to the debtor's abuses of the disclosure and discovery process, stating:

> [t]he bankruptcy stay does not preclude plaintiff from seeking sanctions against the individual defendants' [violations of the Court's orders], even violations relevant to claims that are stayed. I am entitled to 'continue to ... consider whether the defendant[s]' 'may be sanctioned as a result of their failure 'to comply with a prior [] order' as long as the sanction does not have the effect of 'securing assets protected by the stay or harassing' the debtor.

*Id.* at *16 (internal citations omitted). Accordingly, the court sanctioned the debtor and its officers *after* the bankruptcy filing. Other courts agree, recognizing that contempt orders may be enforced against a debtor in bankruptcy to protect the dignity of the court and punish the debtor for disobeying court orders. *See Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC*, 16 Civ. 6805, 2017 WL 6413993, at *10 (S.D.N.Y. 2017) (motion for relief from the stay unnecessary where "the proceeding in reality is one to punish the debtor for contumacious conduct against the dignity of [the] court."); *In re Cohoes Indus. Terminal, Inc.*, 62 B.R. 369, 378 (Bankr. S.D.N.Y. 1986) *aff'd*, 70 B.R. 214 (S.D.N.Y.1986), 831 F.2d 283 (2d Cir.1987) ("a state court prepetition order which does not relate to the collection of prepetition claims or property of the estate may be enforced by contempt proceedings against the debtor and its officers in order to vindicate the dignity of the state court without violating the automatic stay."); *Int'l Distrib. Ctrs, Inc.*, 62 B.R. at 729–30 (concluding that its "inherent power to 'punish the debtor for contumacious conduct against the dignity of either the state or federal court,' is not

curtailed by the bankruptcy action" and finding stay inapplicable where contempt request was "designed to uphold an order of this Court, and [wa]s not one calculated to enforce a money judgment."); *Booth*, 1997 WL 241050, at \*2 ("this contempt order enforcing my pre-bankruptcy order to compel discovery is not stayed by § 362(a) as it is 'vindicat[ing] the integrity of the court.'").

12.     Consistent with these authorities, the automatic stay is inapplicable to past and future contempt orders designed to ensure Kwok's compliance with court orders.  Justice Ostrager did not hold Kwok in contempt for failing to satisfy PAX's judgment or to compensate PAX for any monetary loss.  Indeed, the fine imposed is separate from the judgment on PAX's breach of contract claim.  That court held Kwok in contempt because of his flagrant and continued disregard of court orders.  And PAX is not "moving at this time out of a 'collection motive,'" but rather for leave to seek enforcement of Justice Ostrager's February 9 Contempt Order requiring the return of the Lady May to New York,[39] which has remained outside of the New York Supreme Court's jurisdiction contrary to court orders for more than a year.  *See Int'l Distrib. Ctrs., Inc.*, 62 B.R. at 730 (stay inapplicable where movant was not moving out of a "collection motive").  Continuation of the contempt proceedings is necessary to protect the dignity of the New York Supreme Court (and has the added benefit of forcing Kwok to return property he beneficially owns to the United States).  Therefore, the New York Supreme Court should be permitted to take any actions it deems necessary in the contempt proceedings, short of enforcing the collection of fines, without stay relief.

13.     To the extent this Court may be concerned about any impact on Kwok's estate, the Court can clarify that the automatic stay  applies to the enforcement or collection of any fines

---

[39] *See* Friedman Decl., Ex. 4 (Initial Contempt Order) at 2 ("Counsel for Kwok specifically asked the court whether Kwok could move the yacht from the jurisdiction for licensing purposes.  The Court denied this request.").

or other relief against property of the estate during the pendency of the automatic stay. *See Int'l Distrib. Ctrs, Inc.*, 62 B.R. at 730 (the automatic stay is inapplicable where the order is not "calculated to *enforce a money judgment*, or to harass a defendant.") (emphasis added). Moreover, this Court can make clear that future disposition of the Lady May is within the exclusive purview of this Court (absent further Court order).

## II. IN THE ALTERNATIVE, THE AUTOMATIC STAY SHOULD BE MODIFIED TO ALLOW PARTIAL ENFORCEMENT OF JUSTICE OSTRAGER'S ORDERS.

14. Even if the automatic stay applies to the February 9 Contempt Order, good cause exists to modify the stay pursuant to Bankruptcy Code section 362(d)(1).

15. The decision to modify the automatic stay is "committed to the sound discretion of the court." *In re David X. Manners Co. Inc.*, No. 15–51490, 2018 WL 2325758, at *2 (Bankr. D. Conn. May 22, 2018); *In re Wysocki*, No. 3:16-CV-248, 2016 WL 4099031, at *4 (D. Conn. Aug. 2, 2016). Under Bankruptcy Code section 362(d), relief from the automatic stay shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." *See* 11 U.S.C. §362(d)(1). The Bankruptcy Code does not define "cause." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). In *Sonnax*, the Second Circuit enumerated twelve factors which serve as the touchpoint when courts determine whether relief from the automatic stay should be granted to permit litigation to continue in another forum.[40] *See, e.g., In re Case*, 384 F. App'x 43, 44 (2d Cir. 2010) (noting the Bankruptcy Court properly

---

[40] Those factors are: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *Sonnax*, 907 F.2d at 1286.

11

considered the *Sonnax* factors); *In re Friedberg*, No. 08–51245, 2009 WL 1292273, at *2 (Bankr. D. Conn., May 8, 2009) (applying the *Sonnax* factors).  The Court need not assign equal weight to each factor, nor are all factors relevant in each case.  *See In re David X. Manners Co. Inc.*, No. 15–51490, 2018 WL 1997674, at *5 (Bankr. D. Conn. Apr. 26, 2018), *appeal dismissed,* No. 28cv778, 2018 WL 3079470 (D. Conn, Jun. 21, 2018).  Rather, "[w]hen applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, and the estate."  *Id.* at *5 (citing *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)).

Here, the relevant *Sonnax* factors are:

- "(1) whether relief would result in a partial or complete resolution of the issues;"

- "(2) lack of any connection with or interference with the bankruptcy case;"

- "(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;"

- "(7) whether litigation in another forum would prejudice the interests of other creditors;"

- "(10) the interests of judicial economy and the expeditious and economical resolution of litigation;" and

- "(12) impact of the stay on the parties and the balance of harms." [41]

### A.  Stay Relief Will Resolve Issues Important to the Bankruptcy Case.

16.    The first *Sonnax* factor weighs in favor of lifting the stay.  The February 9 Contempt Order has the ultimate goal of seeing the return of the Lady May to New York.

---

[41] The other *Sonnax* factors are inapposite. In particular, there is no possible basis for equitably subordinating PAX's claim on a personal guarantee from Kwok (*Sonnax* factor 8), and none of the orders issued by Justice Ostrager will give rise to a voidable lien (*Sonnax* factor 9).

17.     As Justice Ostrager determined, the Lady May is an asset available for satisfaction of Kwok's debts.[42]   The court found that Kwok "has much more than a beneficial interest in the Lady May," he not only "control[s] the yacht" but "provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[43]   Accordingly, Kwok's interests in the Lady May must be made available to creditors in this chapter 11 case, despite Kwok's "extraordinary steps to shield the yacht from his creditors."[44]   Not only did Kwok fail to return the Lady May to New York in violation of Justice Ostrager's orders, but on filing his bankruptcy petition (and in his amended petition), notwithstanding Justice Ostrager's clear findings in his February 9, 2022 Order, Kwok failed to include the Lady May's value among his assets.[45]   A chapter 11 debtor has a duty to disclose all assets—of all types—in a chapter 11 petition.  *See* 11 U.S.C. § 541(a)(1) (a debtor's estate consists of "all legal or equitable interests of the debtor in property."); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 52 (S.D.N.Y. 1999) ("A basic tenet of bankruptcy law is that all assets of the debtor . . . are assets of the bankruptcy estate that must be scheduled for the benefit of creditors."); *In re Beckford*, 729 F. App'x 127, 128 (2d Cir. 2018) ("The filing of a bankruptcy petition creates a bankruptcy estate that is comprised of 'all legal or equitable interests of the debtor.'").  Kwok's willful failure to include the value of the Lady May as an asset in his petition—just six days after Justice Ostrager unambiguously ruled that Kwok beneficially owned and controlled it—is a continuation of his scheme to keep the Lady May out of the reach of his creditors.  This scheme must end.

---

[42] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 8–9.
[43] *Id.*
[44] *Id.* at 9; *see also id.* at 7 (discussing the "machinations associated with the shell game Kwok has orchestrated with respect to the Lady May.")
[45] Amended Voluntary Petition, ECF. No. 19 at 7 (listing assets as between $50,001 - $100,000); *cf.* Friedman Decl., Ex. 1 (February 9 Contempt Order) at 10 (noting the € 28 million [sic] purchase price of the Lady May).

13

18.     Allowing continued efforts before Justice Ostrager to have the Lady May returned

to New York will resolve a pertinent issue to this chapter 11 case.  *See In re Fleming*, No. 19-

51611, 2020 WL 3816282, at *3 (Bankr. D. Conn. Jul. 2, 2020) (the fact state court proceedings

could resolve issues in an adversary proceeding, weighed in favor of stay relief).  Return of the

Lady May to New York will facilitate the marshaling of that asset and the ultimate distribution of

the proceeds for the benefit of all creditors.  It will also resolve PAX's year-long effort to have

the yacht within the New York Supreme Court's jurisdiction, a further factor supporting relief

from the automatic stay.  *In re Ice Cream Liquidation Inc.*, 281 B.R. 154, 166 (Bankr. D. Conn.

2002) (complete resolution of an issue related to the Debtor favored stay relief); *David X.

Manners Co.*, 2018 WL 1997674 at *6 (even partial resolution of the issues weighs in favor of

lifting the stay).

### B.     Enforcement of the February 9 Contempt Order Will Not Interfere with the Bankruptcy Case.

19.     For similar reasons, enforcement of the February 9 Contempt Order will not

interfere with the bankruptcy case; rather, it will complement and facilitate these proceedings, *In

re Dunne*, No. 13–50484, 2015 WL 7625609, at *6 (Bankr. D. Conn., Nov. 25, 2015) (stay relief

granted where continuation of litigation "complement[ed] the [] bankruptcy case"), and protect

the interests of all creditors by ensuring a critical estate asset is brought to the United States.

Therefore, the second, seventh and tenth *Sonnax* factors weigh heavily in PAX's favor.

20.     Stay relief is favored where it would facilitate progress in a bankruptcy case.  *See

David X. Manners Co. Inc.*, 2018 WL 1997674, at *6 (this factor weighed in favor of stay relief

where "the progress of th[e] case "appear[ed] dependent upon and require[d] the resolution of the

issues . . . awaiting judgment in the state court."); *In re Mildred Deli Grocery, Inc.*, No. 18-

10077, 2018 WL 1136017, at *4 (Bankr. S.D.N.Y. Feb. 28, 2018) (permitting claims to proceed

14

in the district court which would "assist resolution of the bankruptcy action"). Here, returning the Lady May is a threshold issue: the Lady May has a value many multiples of the assets Kwok listed in his petition. Its prompt return benefits the estate as well as creditors.[46] Further, return facilitates an essential function of this bankruptcy case: to "maximiz[e] the value of the bankruptcy estate." *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 985–86 (2017) (the purpose of the Bankruptcy Code is to maximize the value of the estate). Thus, relief from the automatic stay would "assist resolution of the bankruptcy action." *Mildred Deli Grocery, Inc.*, 2018 WL 1136017, at *4.

21.    Returning the Lady May also will not interfere with this Court's jurisdiction over reorganization (or liquidation) of Kwok's debts or the orderly distribution of his assets to creditors. Nor will it result in any immediate distribution to PAX. Rather, return will assist in marshaling an estate asset to enable liquidation of that asset and distribution to creditors in order of priority under the supervision of this Court (unless the case is dismissed). *See Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 Civ. 15, 2006 WL 176983, at *2 (S.D.N.Y. Jan. 23, 2006) (the goals of a bankruptcy proceeding "require a marshaling of the debtor's assets and an orderly payment of claims in order of priority").

22.    Further, this Court should not allow Kwok to use the bankruptcy case to evade state court sanctions. The contempt proceedings sanction Kwok's flagrant and repeated past disregard of the New York Supreme Court's orders and, if the stay relief is granted, can be used to prevent further noncompliance. Kwok filed his Chapter 11 petition six days after the New York Supreme Court announced it was "prepared to exercise its full authority under Judiciary Law § 753"—which could include issuing an order for Kwok's arrest—if Kwok continued to

---

[46] *See* Amended Voluntary Petition, ECF. No. 19 at 7 (listing assets as between $50,001 - $100,000)); *cf.* Friedman Decl., Ex. 1 (February 9 Contempt Order) at 10 (noting the purchase price of the Lady May).

ignore its orders.[47]  Kwok should not be permitted to exploit the bankruptcy process to avoid

sanctions. *See In re Rudaw/Empirical Software Prod. Ltd*., 83 B.R. 241, 247 (Bankr. S.D.N.Y.

1988) ("The automatic stay imposed under 11 U.S.C. § 362(a) may not be used as a shield to

sanction contumacious conduct in violation of a prepetition order enjoining a debtor from

violating a party's property rights." (citing *In re Cinnabar 2000 Haircutters, Inc*., 20 B.R. 575

(Bankr. S.D.N.Y. 1982))).  Misuse of the bankruptcy process is itself an interference with this

bankruptcy case, as bankruptcy protections are reserved for "the honest but unfortunate debtor."

*In re Ciarcia*, 578 B.R. 495, 503 (Bankr. D. Conn, 2017).  To the extent the bankruptcy petition

prevented the New York court enforcing its orders, the stay should be modified to prevent that

outcome.

23.     This Court can also protect creditors by tailoring stay relief to avoid depletion of

estate assets by prohibiting collection of any fines for the duration of the stay and making clear

the ultimate liquidation of the Lady May and the distribution of proceeds is subject to the Court's

further orders.  *David X. Manners Co. Inc*., 2018 WL 1997674 at *6 (risk to creditors addressed

by limiting the scope of stay relief to "allow the state court to determine the issues up to the entry

of judgment, but not enforcement.")

**C.     The New York Court Has the Necessary Expertise to Enforce the February 9
Contempt Order and Lifting the Stay Facilitates Judicial Economy.**

24.     *Sonnax* factors four and ten favor relief from the automatic stay because the New

York court has "the necessary expertise" to enforce its orders and "the interests of judicial

economy and the expeditious and economical resolution of litigation" are served by modification

of the stay.  *See Sonnax*, 907 F.2d at 1286.  Justice Ostrager has been overseeing the dispute

between PAX and Kwok since April 2017, rendering it "considerably more advanced on the

---

[47] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 10.

'learning curve' with respect to the merits of this matter." *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 167–68 (as litigation was pending before the district court for almost five years it was presumed to be significantly more advanced on the merits of the matter). As Justice Ostrager noted in his February 9 Contempt Order, over 1,180 docket entries have accumulated in the almost five years that the litigation has been pending.[48] All discovery, motion practice, evidentiary hearings, and conferences precipitating the contempt orders have taken place before that court. Justice Ostrager developed a full factual record leading to the issuance of the February 9 Contempt Order and is uniquely well-versed in the procedural history of the case.

25.     Moreover, the proceedings relating of the Lady May are far-advanced; not only has the New York court issued the final February 9 Contempt Order, but it has also already considered imminent further action to ensure compliance with that order.[49] This too favors stay relief. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. at 167–68 (considering relevant that the case was close to completion). This vividly demonstrates Justice Ostrager's familiarity with and competence to enforce the February 9 Contempt Order, and it illustrates that his court is a more efficient venue for that undertaking, weighing heavily in favor of lifting the stay. *See In re Mildred Deli Grocery, Inc.*, 2018 WL 1136017, at *4 (the fact the District Court was "familiar with the particular issues involved in the FLSA Litigation" and "[a]ll discovery and the majority of pre-trial motions [were] completed and the matter [was] ready for trial" weighed heavily in favor of lifting the stay); *see also In re Fleming*, 2020 WL 3816282, *3 (granting relief from the stay where restarting the process of confirming an arbitration award where the State Court had already commenced that process would "not be an effective use of judicial resources.").

---

[48] Friedman Decl., Ex. 1 (February 9 Contempt Order) at 7.
[49] *See id.* at 10 (the Court stated it is "prepared to exercise its full authority under Judiciary Law § 753" if Kwok continues to ignore its orders.")

26.    In contrast, asking this Court to parse the voluminous record to determine appropriate enforcement mechanisms would not be efficient.  Therefore, stay relief is in the interest of judicial economy.

**D.    Modifying the Stay Will Not Prejudice Other Creditors and the Balance of Harms Favors Stay Relief.**

27.    *Sonnax* factors seven and twelve also favor stay relief.  Modifying the stay benefits all creditors because it will bring the valuable Lady May to the United States and prevent its dissipation.  The Lady May is debtor property, as the New York court has ruled, and Kwok must act as a fiduciary for his creditors with respect to it.  That starts by following court orders regarding the Lady May.

28.    PAX is not now seeking to levy on the Lady May or obtain any priority status for its debts compared to the debts of other legitimate creditors.  No creditor would be prejudiced or harmed by return of the Lady May to New York. *See In re Mildred Deli Grocery*, *Inc.*, 2018 WL 1136017, at *4 (creditors were not harmed as claimant did not seek to collect on its claim against the debtor); *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 167 (lifting the stay would cause no legally cognizable harm on the estate, except some minor expenses, weighing in favor of lifting the stay).  To the contrary, creditors as a whole will only benefit by the yacht's return to New York.

29.    Absent stay relief, Kwok will have no incentive to bring the Lady May back within reach of his creditors.  His gambit in filing bankruptcy will have borne fruit, as he will be effectively shielded from the February 9 Contempt Order—a clear misuse of the bankruptcy process.

30.    For these reasons, the balance of harms favors relief from the stay.

18

## RESERVATION OF RIGHTS

Notwithstanding anything in this Motion, PAX reserves all rights, claims and defenses with respect to these chapter 11 proceedings, including but not limited to the right to contest venue, seek dismissal or conversion of the case, and any other remedy.

## CONCLUSION

PAX respectfully requests this Court enter an order (i) that the automatic stay is inapplicable to contempt proceedings before the New York Supreme Court related to Kwok's failure to return the Lady May to New York, or (ii) in the alternative, granting relief from the automatic stay to permit PAX to seek enforcement of the New York Supreme Court's February 9 Contempt Order; and (iii) granting such other relief as may be just and proper.

Dated: Hartford, Connecticut
      March 1, 2022

**Pacific Alliance Asia Opportunity Fund L.P.**

By: */s/ Patrick M. Birney*
    Patrick M. Birney (CT No. 19875)
    Annecca H. Smith (CT No. 31148)
    **ROBINSON & COLE LLP**
    280 Trumbull Street
    Hartford, CT 06103
    Telephone: (860) 275-8275
    Facsimile: (860) 275-8299
    E-mail: pbirney@rc.com
        asmith@rc.com

    -and-

    Peter Friedman (admitted *pro hac vice*)
    Stuart M. Sarnoff (admitted *pro hac vice*)
    **O'MELVENY & MYERS LLP**
    Times Square Tower
    7 Times Square
    New York, NY 10036
    Telephone: (212) 326-2293
    E-mail: pfriedman@omm.com
        ssarnoff@omm.com

# EXHIBIT 13

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

District of Connecticut

Case number (*If known*): _____

Chapter you are filing under:
- ☐ Chapter 7
- ☑ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

☐ Check if this is an amended filing

## Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    04/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

|  | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Ho Wan<br>First name<br><br>Kwok<br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | Miles<br>First name<br><br>Kwok; Guo<br>Middle name<br><br>Last name<br><br>Wengui<br>First name<br><br>Middle name<br><br>Guo<br>Last name | First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – _9_ _5_ _9_ _5_<br>OR<br>**9** xx – xx – ____ ____ ____ ____ | xxx – xx – ____ ____ ____ ____<br>OR<br>**9** xx – xx – ____ ____ ____ ____ |

| Debtor 1 | Ho Wan | | Kwok | Case number (if known)_____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

|  | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| **4.** | **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**<br><br>Include trade names and *doing business as* names | ☑ I have not used any business names or EINs.<br><br>_____<br>Business name<br><br>_____<br>Business name<br><br>EIN __ __ – __ __ __ __ __ __ __<br><br>EIN __ __ – __ __ __ __ __ __ __ | ☐ I have not used any business names or EINs.<br><br>_____<br>Business name<br><br>_____<br>Business name<br><br>EIN __ __ – __ __ __ __ __ __ __<br><br>EIN __ __ – __ __ __ __ __ __ __ |
| **5.** | **Where you live** | c/o Golden Spring (New York) Ltd.<br>Number        Street<br><br>162 East 64th Street<br><br>New York                    NY        10065<br>City                              State      ZIP Code<br><br>New York<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br>_____<br>Number        Street<br><br>_____<br>P.O. Box<br><br>_____<br>City                              State      ZIP Code | **If Debtor 2 lives at a different address:**<br><br>_____<br>Number        Street<br><br>_____<br><br>_____<br>City                              State      ZIP Code<br><br>_____<br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br>_____<br>Number        Street<br><br>_____<br>P.O. Box<br><br>_____<br>City                              State      ZIP Code |
| **6.** | **Why you are choosing *this district* to file for bankruptcy** | *Check one:*<br><br>☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason. Explain.<br>(See 28 U.S.C. § 1408.)<br><br>_____<br>_____<br>_____<br>_____ | *Check one:*<br><br>☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason. Explain.<br>(See 28 U.S.C. § 1408.)<br><br>_____<br>_____<br>_____<br>_____ |

| Debtor 1 | Ho Wan | | Kwok | | Case number (if known) |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| **Part 2:** | **Tell the Court About Your Bankruptcy Case** |
|---|---|

---

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

❑ Chapter 7

☑ Chapter 11

❑ Chapter 12

❑ Chapter 13

---

**8.** **How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

❑ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

❑ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9.** **Have you filed for bankruptcy within the last 8 years?**

☑ No

❑ Yes. District _____ When _____/_____/_____ Case number _____
                                           MM / DD / YYYY

District _____ When _____/_____/_____ Case number _____
                                           MM / DD / YYYY

District _____ When _____/_____/_____ Case number _____
                                           MM / DD / YYYY

---

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No

❑ Yes. Debtor _____ Relationship to you _____

District _____ When _____/_____/_____ Case number, if known_____
                                           MM / DD / YYYY

Debtor _____ Relationship to you _____

District _____ When _____/_____/_____ Case number, if known_____
                                           MM / DD / YYYY

---

**11.** **Do you rent your residence?**

☑ No. Go to line 12.

❑ Yes. Has your landlord obtained an eviction judgment against you?

❑ No. Go to line 12.

❑ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

| Debtor 1 | Ho Wan | | Kwok | | Case number (if known) _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☑ No. Go to Part 4.

☐ Yes. Name and location of business

_____
Name of business, if any

_____
Number       Street

_____

_____
City                              State         ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor* or a debtor as defined by 11 U.S.C. § 1182(1)?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines. If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☐ No. I am not filing under Chapter 11.

☑ No. I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes. I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes. I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

| Debtor 1 | Ho Wan | | Kwok | Case number (if known) _____ |
|----------|--------|--|------|------------------|
| | First Name | Middle Name | Last Name | |

| **Part 4:** | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14.** **Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No

☐ Yes.   What is the hazard?   _____

_____

If immediate attention is needed, why is it needed?   _____

_____

Where is the property?   _____
Number        Street

_____

_____
City                                State        ZIP Code

| Debtor 1 | Ho Wan | | Kwok | Case number *(if known)*_____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| **Part 5:** | **Explain Your Efforts to Receive a Briefing About Credit Counseling** |
|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|
| *You must check one:* | *You must check one:* |
| ☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.** Attach a copy of the certificate and the payment plan, if any, that you developed with the agency. | ☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.** Attach a copy of the certificate and the payment plan, if any, that you developed with the agency. |
| ☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.** Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any. | ☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.** Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any. |
| ☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.** To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case. Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed. Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days. | ☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.** To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case. Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed. Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days. |
| ☐ **I am not required to receive a briefing about credit counseling because of:** | ☐ **I am not required to receive a briefing about credit counseling because of:** |
| ☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances. | ☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances. |
| ☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so. | ☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so. |
| ☐ **Active duty.** I am currently on active military duty in a military combat zone. | ☐ **Active duty.** I am currently on active duty in a military combat zone. |
| If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. | If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. |

| Debtor 1 | Ho Wan | | Kwok | | Case number *(if known)* _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| **Part 6:** | **Answer These Questions for Reporting Purposes** |
|---|---|

**16. What kind of debts do you have?**

16a. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☑ No. Go to line 16b.
☐ Yes. Go to line 17.

16b. **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☑ No. Go to line 16c.
☐ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts.

Litigation expenses, claims, and judgments

---

**17. Are you filing under Chapter 7?**

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☑ No. I am not filing under Chapter 7. Go to line 18.

☐ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No
☐ Yes

---

**18. How many creditors do you estimate that you owe?**

☐ 1-49
☑ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

---

**19. How much do you estimate your assets to be worth?**

☐ $0-$50,000
☑ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

---

**20. How much do you estimate your liabilities to be?**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☑ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

| **Part 7:** | **Sign Below** |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| ✖ /s/ Ho Wan Kwok | ✖ _____ |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| Executed on 02/15/2022 | Executed on _____ |
| MM / DD / YYYY | MM / DD / YYYY |

---

| Debtor 1 | Ho Wan | | Kwok | Case number (if known) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

**✖ /s/ William R. Baldiga**

Signature of Attorney for Debtor

Date  **02/15/2022**

MM  /  DD  / YYYY

**William R. Baldiga**
Printed name

**Brown Rudnick LLP**
Firm name

**7 Times Square**
Number    Street

_____

**New York**                          **NY**          **10036**
City                                      State        ZIP Code

Contact phone  **(212) 209-4800**          Email address **wbaldiga@brownrudnick.com**

**4813846**                              **NY**
Bar number                                State

| Debtor 1 | Ho Wan | | Kwok | | Case number *(if known)* _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | |
|---|---|
| **For you if you are filing this bankruptcy without an attorney**<br><br>**If you are represented by an attorney, you do not need to file this page.** | The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**<br><br>To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.<br><br>You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**<br><br>If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.<br><br>Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?<br><br>☐ No<br>☐ Yes<br><br>Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?<br><br>☐ No<br>☐ Yes<br><br>Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?<br><br>☐ No<br>☐ Yes. Name of Person_____.<br>    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).<br><br><br>By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.<br><br>✖ _____    ✖ _____<br>  Signature of Debtor 1                      Signature of Debtor 2<br><br>  Date _____                        Date _____<br>     MM / DD  / YYYY                           MM /  DD / YYYY<br><br>  Contact phone _____        Contact phone _____<br><br>  Cell phone _____        Cell phone _____<br><br>  Email address _____        Email address _____ |

Case 22-50073 Doc 1043-3 Filed 05/24/22 Entered 05/24/22 16:38:18 Page 116 of 121

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Ho Wan | | Kwok |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: District of Connecticut

Case number
(If known) _____

☐ Check if this is an
amended filing

## Official Form 104

# For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders

12/15

If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an *insider*. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.

**Part 1:** List the 20 Unsecured Claims in Order from Largest to Smallest. Do Not Include Claims by Insiders.

| | | Unsecured claim |
|---|---|---|

**1**

Pacific Alliance Asia Opportunity
Creditor's Name
C/O O'Melveney & Myers, LLP
Number         Street
7 Times Square

New York         NY    10065
City                 State   ZIP Code

Stuart Sarnoff, Esq
Contact

_____
Contact phone

What is the nature of the claim?  Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):        $_____
              Value of security:                       – $_____
              Unsecured claim                           $_____

$        (approx) 254,000,000.00

**2**

Golden Spring New York
Creditor's Name
162 E. 64th Street
Number         Street

New York         NY    10605
City                 State   ZIP Code

Max Krasner
Contact

_____
Contact phone

What is the nature of the claim?  Litigation Funding

As of the date you file, the claim is: Check all that apply.
☑ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):        $_____
              Value of security:                       – $_____
              Unsecured claim                           $_____

$ (approx) 21,000,000.00

| Debtor 1 | Ho Wan | | Kwok | Case number (if known) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| | | | Unsecured claim |
|---|---|---|---|

---

**3** | Rui Ma
Creditor's Name

750 Lexington Avenue - 25th Floor
Number        Street
C/O Arkin Solbakken, LLP

New York          NY    10022
City                State      ZIP Code

Robert C. Angelillo
Contact

_____
Contact phone

What is the nature of the claim? **Litigation**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):    $_____
         Value of security:    – $_____
         Unsecured claim         $_____

$              20,000,000

---

**4** | Cheng Jian Wu Jian She
Creditor's Name

136-20 38th Avenue, Suite 3D
Number        Street
C/O Law Office of Ning Ye, Esq.

Flushing          NY    11354
City                State      ZIP Code

Ning Ye, Esq.
Contact

_____
Contact phone

What is the nature of the claim? **Litigation**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):    $_____
         Value of security:    – $_____
         Unsecured claim         $_____

$            14,898483.90

---

**5** | Ning Ye
Creditor's Name

135-11 38th Avenue
Number        Street
C/O Arkin Solbakken, LLP

New York          NY    10022
City                State      ZIP Code

Robert C. Angelillo
Contact

_____
Contact phone

What is the nature of the claim? **Litigation**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):    $_____
         Value of security:    – $_____
         Unsecured claim         $_____

$              12,000,000

---

**6** | Guo Baosheng
Creditor's Name

135-11 38th Avenue
Number        Street
C/O Law Office of Ning Ye, Esq.

Flushing          NY    11354
City                State      ZIP Code

Ning Ye, Esq.
Contact

_____
Contact phone

What is the nature of the claim? **Litigation**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):    $_____
         Value of security:    – $_____
         Unsecured claim         $_____

$              12,000,000

---

**7** | Yang Lan and Wu Zheng
Creditor's Name

750 Lexington Avenue - 25th Floor
Number        Street
C/O Arkin Solbakken, LLP

New York          NY    10022
City                State      ZIP Code

Robert C. Angelillo
Contact

_____
Contact phone

What is the nature of the claim? **Litigation**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):    $_____
         Value of security:    – $_____
         Unsecured claim         $_____

$              10,000,000

---

| Debtor 1 | Ho Wan | | Kwok | Case number (if known) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| | | | Unsecured claim |
|---|---|---|---|

**8** Hong Qi Qu
Creditor's Name

136-20 38th Avenue, Suite 3D
Number          Street

C/O Kevin Tung, Esq.

Flushing                    NY    11354
City                        State  ZIP Code

Kevin Tung, Esq.
Contact

_____
Contact phone

What is the nature of the claim?  Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured)     $_____
              Value of security:              – $_____
              Unsecured claim                   $_____

$     9,809,422.71

---

**9** Nan Tong Si Jian
Creditor's Name

136-20 38th Avenue, Suite 3D
Number          Street

C/O Kevin Tung, Esq.

Flushing                    NY    11354
City                        State  ZIP Code

Kevin Tung, Esq.
Contact

_____
Contact phone

What is the nature of the claim?  Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured)     $_____
              Value of security:              – $_____
              Unsecured claim                   $_____

$     5,568,522.66

---

**10** Jian Gong
Creditor's Name

136-20 38th Avenue, Suite 3D
Number          Street

C/O Kevin Tung, Esq.

Flushing                    NY    11354
City                        State  ZIP Code

Kevin Tung, Esq.
Contact

_____
Contact phone

What is the nature of the claim?  Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured)     $_____
              Value of security:              – $_____
              Unsecured claim                   $_____

$     5,380,262.32

---

**11** Yan Zhao
Creditor's Name

135-11 8th Ave
Number          Street

C/O Law Office of Ning Ye, Esq.

Flushing                    NY    11354
City                        State  ZIP Code

Ning Ye, Esq.
Contact

_____
Contact phone

What is the nature of the claim?  Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured)     $_____
              Value of security:              – $_____
              Unsecured claim                   $_____

$     3,000,000

---

**12** Yua Hua Zhuang Shi
Creditor's Name

136-20 38th Avenue, Suite 3D
Number          Street

C/O Kevin Tung, Esq.

Flushing                    NY    11354
City                        State  ZIP Code

Kevin Tung, Esq.
Contact

_____
Contact phone

What is the nature of the claim?  Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured)     $_____
              Value of security:              – $_____
              Unsecured claim                   $_____

$     1,571,530.36

---

| Debtor 1 | Ho Wan | | Kwok | | Case number (if known) _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | | | **Unsecured claim** |
|---|---|---|---|

**13** | Liehong Zhuang/Xiao Yan Zhu
Creditor's Name

224 West 35th Street, 11th Floor
Number          Street

C/O Trexler & Zhang, LLP

New York                    NY      10001
City                              State      ZIP Code

Jonathan T. Trexler, Esq.
Contact

_____
Contact phone

What is the nature of the claim?   Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured)     $ _____
Value of security:          – $ _____
Unsecured claim              $ _____

$                    1,005,000

---

**14** | Weican Meng/Boxun, Inc.
Creditor's Name

750 Lexington Avenue, 25th Floor
Number          Street

C/O Arkin Solbakken, LLP

New York                    NY      10022
City                              State      ZIP Code

Robert C. Angelillo
Contact

_____
Contact phone

What is the nature of the claim?   Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):     $ _____
Value of security:          – $ _____
Unsecured claim              $ _____

$                    1,000,000

---

**15** | Samuel Nunberg
Creditor's Name

363 Seventh Ave, 5th Floor
Number          Street

C/O Nesenoff & Miltenberg, LLP

New York                    NY      10001
City                              State      ZIP Code

Andrew T. Miltenberg, Esq.
Contact

_____
Contact phone

What is the nature of the claim?   Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):     $ _____
Value of security:          – $ _____
Unsecured claim              $ _____

$                    1,000,000

---

**16** | Lamp Capital, LLC
Creditor's Name

One Commerce Plaza
Number          Street

99 Washington Avenue

Albany                      NY      12231
City                              State      ZIP Code

C/O NYS, Secretary of State
Contact

_____
Contact phone

What is the nature of the claim?   Litigation Loan

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):     $ _____
Value of security:          – $ _____
Unsecured claim              $ _____

$                    1,000,000

---

**17** | Jun Chen aka Jonathan Ho
Creditor's Name

41-25 Kissena Blvd, Suite 112
Number          Street

C/O Wayne Wei Zhu, Esq

Flushing                    NY      11355
City                              State      ZIP Code

Wayne Wei Zhu
Contact

_____
Contact phone

What is the nature of the claim?   Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):     $ _____
Value of security:          – $ _____
Unsecured claim              $ _____

$                    1,000,000

---

| Debtor 1 | Ho Wan | | Kwok | Case number (if known) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | | | | Unsecured claim |
|---|---|---|---|---|

**18** 

Yue Hua Zhu Shi
Creditor's Name

136-20 38th Avenue, Suite 3D
Number          Street

C/O Kevin Tung, Esq.

Flushing                    NY          11354
City                          State       ZIP Code

Kevin Tung, Esq.
Contact

_____
Contact phone

What is the nature of the claim? Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):   $_____
        Value of security:                  − $_____
        Unsecured claim                       $_____

$          981,501.72

**19** 

Jia Li Wang
Creditor's Name

335 Madison Avenue, 12th Floor
Number          Street

C/O Thompson Hine

New York                  NY          10017
City                          State       ZIP Code

Brian P. Lanciault, Esq
Contact

_____
Contact phone

What is the nature of the claim? Litigation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):   $_____
        Value of security:                  − $_____
        Unsecured claim                       $_____

$          430,000

**20** 

WA&HF, LLC/Ruizeng An
Creditor's Name

41 Madison Avenue, 31st Floor
Number          Street

C/O AFN Law

New York                  NY          10010
City                          State       ZIP Code

Angus Ni, Esq.
Contact

_____
Contact phone

What is the nature of the claim? Litgiation

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):   $_____
        Value of security:                  − $_____
        Unsecured claim                       $_____

$          319,130

| **Part 2:** | Sign Below |
|---|---|

Under penalty of perjury, I declare that the information provided in this form is true and correct.

✖ /s/ Ho Wan Kwok
_____
Signature of Debtor 1

Date  02/15/2022
      MM / DD / YYYY

✖ _____
Signature of Debtor 2

Date _____
     MM / DD / YYYY

| Print | Save As... | Reset |
|---|---|---|