**EXHIBIT A**

Complaint, *PAX v. Kwok*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

                Plaintiff,

                   v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a* MILES KWOK, *a/k/a* HAOYUN GUO,

                Defendant.

Index No.

**COMPLAINT**

## NATURE OF THE ACTION

1. This is a straightforward breach of contract case. Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Gwo Wen Gui, a/k/a Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok, a/k/a Haoyun Guo ("Kwok"), a reported billionaire, and his controlled entities borrowed millions of dollars from Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX LP") but have failed to pay any of the amount owed to PAX LP under binding written agreements.

2. In 2008, PAX LP entered into a written agreement with Spirit Charter Investment Limited ("Spirit Charter"), one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million. This loan facility was conditioned on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

3. In 2009, another of Kwok's entities, Shiny Times Holdings Limited ("Shiny Times"), assumed the debt that Spirit Charter owed to PAX LP, which the parties agreed at the time totaled $45,357,534.25. Kwok executed a personal guarantee of this debt.

4. Then in 2011, PAX LP and Shiny Times entered into a written agreement (the "2011 Facility Letter") that expressly superseded prior agreements between the parties. In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount (plus 15% annual interest from December 31, 2010) by June 30, 2012.

5. That same day, Kwok entered into a separate personal guarantee (that similarly expressly superseded Kwok's prior personal guarantee) under which Kwok guaranteed payment of all amounts owed to PAX LP by Shiny Times under the 2011 Facility Letter (the "Personal Guarantee").

6. To date, neither Shiny Times nor Kwok have paid any amount owed to PAX LP under either the 2011 Facility Letter or the Personal Guarantee.

7. PAX LP has taken all necessary and appropriate steps in accordance with its contracts with Shiny Times and Kwok to recover the monies it is owed—now totaling approximately

$88 million including contractual interest—but has recovered nothing because it has been ignored by Shiny Times and Kwok at each step.

8. Given that Kwok regularly transacts business, is domiciled and resides, and owns real estate in New York, PAX LP brings this action in this Court to enforce its contractual rights against Kwok.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Kwok pursuant to New York's general personal jurisdiction statute, C.P.L.R § 301, because he is engaged in a continuous and systematic course of "doing business" in New York and is domiciled in the state.

10. Venue is proper in this Court under C.P.L.R § 503(a) because Kwok's residence is in New York County.

## PARTIES

11. Plaintiff PAX LP is an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands.

12. Defendant Kwok is a Chinese national who is domiciled in New York and engages in a continuous and systematic course of "doing business" in New York.

13. Kwok resides on the 18th Floor of The Sherry-Netherland Hotel in New York City—a residence he purchased in 2015 for $67.5 million through Genever Holdings, LLC ("Genever"), a domestic limited liability company that he solely owns and that maintains its principal place of business in New York State at 80 State Street in Albany.

14. Kwok also maintains offices at 767 Fifth Avenue for Golden Spring (New York) Ltd. ("Golden Spring"), a Delaware company that he owns, which is registered to do business as a foreign corporation in New York and has a registered agent for service of process in New York.

2

15.    Kwok also has employees or agents in New York, including those who work for Golden Spring and the attorneys he hired to represent him in two cases in the United States District Court for the Southern District of New York over the last two years.[1]

## STATEMENT OF FACTS

### *The Shiny Times Loan and Kwok's Personal Guarantee to Repay PAX LP*

16.    PAX LP and Kwok have had business dealings since approximately February 4, 2008, when PAX LP entered into a written agreement (the "2008 Facility Agreement") with Spirit Charter, one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million.

17.    This loan facility was conditioned on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations.

18.    On March 12, 2008, PAX LP and Spirit Charter amended and restated the 2008 Facility Agreement ("Amended and Restated 2008 Facility Agreement").

19.    By a deed dated September 17, 2009 (the "September 2009 Deed"), Shiny Times (another of Kwok's entities), Spirit Charter, PAX LP, and various other parties agreed that Shiny Times would replace Spirit Charter as the borrower under the Amended and Restated 2008 Facility Agreement. The parties to the September 2009 Deed also agreed that the outstanding amount under the Amended and Restated 2008 Facility Agreement, including accrued and unpaid interest, was then $45,357,534.25 as of September 12, 2009 (the "Amended 2008 Loan Facility").

---

[1] In 2015, Kwok and Golden Spring were sued for violations of the Fair Labor Standards Act, and in that lawsuit, Kwok (through counsel) acknowledged that he was properly served with a summons and complaint at The Sherry-Netherland Hotel. *Ahn v. Golden Spring (New York) Ltd. et al.*, No. 1:15-cv-09697 (S.D.N.Y. Dec. 11, 2015). In 2016, Kwok and Genever filed a lawsuit (through counsel) against The Sherry-Netherland Hotel and others relating to a leak in his apartment at the hotel. *Genever Holdings, LLC and Miles Kwok v. The Sherry-Netherland, Inc., et al.*, No. 1:16-cv-06246-GBD (S.D.N.Y. Aug. 5, 2016).

20. The September 2009 Deed required Kwok to execute a personal guarantee in favor of PAX LP to secure Shiny Times' due and punctual performance and repayment of the Amended 2008 Loan Facility. Kwok executed his personal guarantee on November 18, 2009.

21. PAX LP, Kwok, and Shiny Times thereafter agreed to supersede the foregoing agreements with two contracts executed on March 16, 2011—the 2011 Facility Letter (attached as Exhibit A) and the Personal Guarantee (attached as Exhibit B).

22. In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount (plus 15% annual interest from December 31, 2010) by June 30, 2012.

23. The parties further agreed in the 2011 Facility Letter that any failure by Shiny Times to pay any amount owed to PAX LP under the 2011 Facility Letter would constitute an Event of Default, and that in such event PAX LP could (i) declare the entire loan, accrued and unpaid interest, and any other money payable to be immediately due and payable without further demand or notice or other legal formality of any kind, and/or (ii) declare the 2011 Facility Letter terminated.

24. Finally, like the prior agreements between the parties, the 2011 Facility Letter was expressly conditioned on Kwok's execution of the Personal Guarantee to fully backstop Shiny Times' payment obligations to PAX LP:

> The Lender [PAX LP] and the Borrower [Shiny Times] agree to enter into this Agreement . . . on the condition that a new personal guarantee of Mr. Kwok (the "Personal Guarantee"), in favour of the Lender is delivered to secure the due and punctual performance of the Borrower to fully repay the [2011 Facility Letter] plus all accrued and unpaid interest in accordance with this Agreement.

25. Kwok signed the 2011 Facility Letter as a Director of Shiny Times and also, on the same day, signed the Personal Guarantee, under which Kwok agreed to "irrevocably and unconditionally" guarantee Shiny Times' payment of all amounts owed under the 2011 Facility Letter. In particular, Kwok:

4

(a)     guaranteed to PAX LP the "due and punctual payment" of Shiny Times' obligations under the 2011 Facility Letter;

(b)     agreed "that promptly on [PAX LP's] demand [Kwok] will pay to [PAX LP] all [such amounts] that are due but unpaid";

(c)     agreed to "indemnify and hold harmless [PAX LP] on demand from and against all losses incurred by [PAX LP] as a result of any obligation of Shiny Times under the 2011 Facility Letter being or becoming void, voidable, unenforceable or ineffective as against Shiny Times for any reason whatsoever";

(d)     agreed that PAX LP's demand for payment would constitute *prima facie* evidence that such payment was due and owing;

(e)     agreed that PAX LP could seek repayment from either Shiny Times or Kwok; and

(f)     agreed to indemnify PAX LP from "any and all costs, claims losses, [and] expenses (including legal fees)" incurred as a result of exercising or enforcing the Personal Guarantee.

26.     Furthermore, Kwok agreed to waive several defenses, including those based on the winding up or dissolution of Shiny Times, or PAX LP's inability to recover against Shiny Times "for any reason." Kwok also agreed to a catchall waiver of any conceivable defenses based on "any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law."

27.     In other words, Kwok signed an unambiguous and ironclad guarantee that he would satisfy Shiny Times' debt to PAX LP under any circumstances.

### The Extensions and Shiny Times' Ultimate Failure to Repay PAX LP

28.     Shiny Times did not repay any portion of the loan principal or accrued interest before the June 30, 2012 repayment date set forth in the 2011 Facility Letter, and the parties subsequently entered into a series of extensions, each labeled a "Deed of Settlement."

5

29. PAX LP, Shiny Times, and Kwok entered into the first Deed of Settlement (the "Original Deed of Settlement") along with Beijing Pangu Investment Inc. ("Beijing Pangu"), another company within the Kwok empire, on April 19, 2013.

30. The Original Deed of Settlement provided that the total outstanding amount due under the 2011 Facility Letter plus all accrued and unpaid interest was $52 million as of the date of the Original Deed of Settlement, and that amount would be no longer due and owing upon the satisfaction of the following conditions:

    (a) If PAX LP completed the purchase of three apartments from Beijing Pangu in a series of three separate transactions for approximately $5 million each, for a total of approximately $15 million; and

    (b) If Shiny Times completed three installment payments to PAX LP of approximately $5 million each—one installment payment to be made after each separate apartment purchase—for a total of approximately $15 million.

31. Before PAX LP could purchase any of the three apartments from Beijing Pangu, however, Beijing Pangu was required under the Original Deed of Settlement to satisfy certain conditions precedent relating to title, taxes, and other common aspects of real estate transactions. If any of these conditions were not met for any of the three apartments by July 31, 2013, the Original Deed of Settlement expressly provided that it would be terminated in its entirety, and the 2011 Facility Letter would revert into full effect.

32. Beijing Pangu failed to satisfy these conditions precedent by July 31, 2013, PAX LP therefore did not complete its purchase of any of the apartments, and Shiny Times did not make any of the three installment payments it owed to PAX LP under the Original Deed of Settlement.

33. Four supplemental deeds of settlement—on December 3, 2013, May 15, 2014, July 11, 2014, and February 10, 2015—extended the dates in the Original Deed of Settlement, including the repayment date and the date for Beijing Pangu to satisfy the conditions precedent.

34. Each of the supplemental deeds had the same terms as the Original Deed of Settlement. And the result was the same each time: Beijing Pangu never met the conditions it was required to satisfy, PAX LP therefore was not required to, and did not, complete its purchase of any of the apartments, and Shiny Times never made any of the three installment payments it owed to PAX LP under the 2011 Facility Letter.

35. Finally, on March 31, 2015, Shiny Times and PAX LP, together with Worldwide Opportunity Holdings Limited and Empire Growth Holdings Limited, entered into an Option Agreement (the "Option Agreement") that provided, among other things, for the repayment via share sale transaction of amounts owed by Shiny Times to PAX LP.

36. Pursuant to its terms, the Option Agreement was to terminate if certain conditions relating to the transfer of property (as stated in the Option Agreement) were not satisfied. None of these conditions were satisfied, and the Option Agreement was terminated without negating Shiny Times' obligation to pay PAX LP.

37. Thus, the 2011 Facility Letter reverted to being in full force and effect, Kwok's obligations under the Personal Guarantee are fully enforceable, and Kwok is independently liable under the Personal Guarantee for the full amount of Shiny Times' debt owed to PAX LP under the 2011 Facility Letter.

### PAX LP Seeks to Enforce Its Contractual Rights and Collect Amounts Owed

38. On October 16, 2015, after the Deeds of Settlement and Option Agreement were terminated and the 2011 Facility Letter reverted to being in full force and effect, PAX LP sent a written notice of demand (the "Notice of Demand") to Kwok's address in Hong Kong, as specified under the terms of the Personal Guarantee.

7

39. The Notice of Demand informed Kwok that "Shiny Times ha[d] failed to repay any part of the sum due" under the 2011 Facility Letter and demanded immediate payment of $71,818,633.44. The Notice of Demand also informed Kwok that legal proceedings might be commenced against him if he did not make immediate payment, and reserved PAX LP's contractual rights under both the 2011 Facility Letter and the Personal Guarantee.

40. Kwok never responded to the Notice of Demand.

41. On February 19, 2016, PAX LP sent a letter to Shiny Times demanding payment of $82,219,404.08 due and owing under the 2011 Facility Letter (the "Shiny Times Demand Letter"), which represented the principal plus contractual interest of 15% per annum calculated up to the date of the Shiny Times Demand Letter.

42. Shiny Times never responded to the Shiny Times Demand Letter.

43. When Shiny Times did not respond, PAX LP submitted an application to court in the British Virgin Islands ("BVI") on February 29, 2016 seeking the appointment of joint liquidators to put Shiny Times, which is a BVI corporation, into liquidation. The application alleged that (i) Shiny Times had failed to pay the sum then-owing of $82,410,197.87, (ii) Shiny Times was unable to pay its debts, and (iii) Shiny Times was insolvent and should be liquidated.

44. Although Shiny Times was in fact placed into liquidation as a result of the BVI proceeding, PAX LP was unable to collect any of the monies owed to it under the 2011 Facility Letter.

45. To date, Kwok has not repaid any of the money due and owing to PAX LP under the Personal Guarantee. The sum due and owing—which includes the outstanding principal plus accrued and unpaid interest—is currently approximately $88 million.

46. As a result of Kwok's failure to repay any of the money due and owing to PAX LP, Plaintiff has incurred "costs, claims losses, [and] expenses (including legal fees)" in connection with

8

enforcing the Personal Guarantee. Kwok is obligated to indemnify those amounts under the express terms of the Personal Guarantee (*see* Paragraph 25(f)).

## COUNT I – BREACH OF CONTRACT
### Against Defendant Kwok

47. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46 as though fully set forth herein.

48. The Personal Guarantee obligates Kwok to repay PAX LP for the loan facility (as amended) that PAX LP made available to Spirit Charter, along with unpaid interest. The current amount due and owing is approximately $88 million.

49. Plaintiff performed its own obligations under the Personal Guarantee (and other related agreements).

50. Kwok has not repaid any of the money due and owing to PAX LP under the Personal Guarantee.

51. As a direct result of Kwok's breach of his payment obligations under the Personal Guarantee, Plaintiff continues to suffer the loss of approximately $88 million dollars, an amount that continues to incur interest.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

    (a)    in the amount of $46,426,489 under the Personal Guarantee;

    (b)    in the amount of $41,096,982.46 in interest;

    (c)    the reasonable attorneys' fees, costs, and expenses PAX LP has incurred, and will continue to incur, in connection with its enforcement of the Personal Guarantee against Kwok under the Personal Guarantee's indemnification clause; and

    (d)    such other and further relief to which PAX LP shows itself justly entitled.

DATED: New York, New York
April 18, 2017

           Respectfully submitted,

           THE SEIDEN GROUP

           By: _____
           Robert W. Seiden (rseiden@seidenlegal.com)
           1120 Avenue of the Americas
           New York, NY 10036
           (212) 626-6708

           -and-

           O'MELVENY & MYERS LLP
           Stuart Sarnoff (ssarnoff@omm.com)
           Edward Moss (emoss@omm.com)
           7 Times Square
           New York, NY 10036
           (212) 326-2000


           *Attorneys for Plaintiff*