# EXHIBIT PAX 17

April 26, 2019 Hearing Transcript, *PAX v. Kwok*,
Index. No. 652077/2017 (N.Y. Sup. Ct.), Dkt. 331

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok

VS. _____

       PAX    EXHIBIT _____ 17 _____

DATE _____ IDEN.

DATE _5/25/2022 Admitted in Full_ EVID.

       BY P.E._____

                **Deputy Clerk**

AO 386-A

1

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK - CIVIL TERM - PART: 61
 2    ---------------------------------------------------------X
      PACIFIC ALLIANCE ASIA,
 3
                                        Plaintiff,
 4
                        -against-
 5
      HO WAN KWOK,
 6
                                        Defendant.
 7    ---------------------------------------------------------X
      Index No. 652077-2017          60 Centre Street
 8                                    New York, New York
                                      April 26, 2019
 9

10
      B E F O R E :
11
          HONORABLE BARRY R. OSTRAGER, Justice
12

13    A P P E A R A N C E S :

14        O'MELVENY & MYERS LLP
          Attorneys for the Plaintiff
15        7 Times Square
          New York, New York 10036
16        BY:  EDWARD MOSS, ESQ.
               STUART SARNOFF, ESQ.
17             GARO HOPLAMAZIAN, ESQ.

18        HODGSON RUSS
          Attorneys for the Defendant
19        605 Third Avenue, Suite 2300
          New York, New York 10158
20        BY:  JILLIAN MARIE SEARLES, ESQ.
               MARK A. HARMON, ESQ.
21

22

23

24                                   Lisa A. Casey
                                     Official Court Reporter
25
```

PAX-17

**Proceedings**

2

1              THE CLERK:  This is index number 652077 of

2      2017 in the matter of Pacific Alliance Asia versus Ho

3      Wan Kwok.

4              Counsel, please note your appearances for the

5      record.

6              THE COURT:  Okay.  I was previously told that

7      you needed an hour to set up this morning, but happily

8      it only took you no time to set up, so let's proceed.

9              MR. MOSS:  Yes, your Honor.  Thank you.  Good

10     morning.

11             THE CLERK:  Please note your appearances,

12     counsel.

13             MR. MOSS:  Good morning, your Honor.  I'm

14     Edward Moss from O'Melveny, for the plaintiff.

15             MR. SARNOFF:  Stuart Sarnoff from O'Melveny

16     for the plaintiff.

17             MR. HOPLAMAZIAN:  Garo Hoplamazian from

18     O'Melveny for the plaintiff.

19             MS. SEARLES:  Jillian Searles, Hodgson Russ,

20     for the defendant.

21             MR. HARMON:  Good morning, your Honor.  Mark

22     Harmon, Hodgson Russ.

23             THE COURT:  Welcome.

24             MR. MOSS:  Thank you, your Honor.  Good

25     morning.  I know that the attachment issues have been

Lisa A. Casey - Official Court Reporter

3

**Proceedings**

1    fully briefed several times, and I know your Honor is

2    familiar, so I'm going to move through my remarks

3    quickly.

4              THE COURT:  Let's put, on the record,

5    everything that the parties have stipulated to, and

6    identify the issues to be tried this morning, on the

7    record.

8              MR. MOSS:  Sure.  And that's actually in my

9    opening remarks, your Honor.

10             THE COURT:  All right.

11             MR. MOSS:  But I will start with that.

12             (Whereupon, an exhibit was displayed to the

13   Court.)

14             MR. MOSS:  Your Honor, I was going to start by

15   reviewing what we are trying today, and also provide a

16   short overview of the four witnesses you will hear from.

17   The first issue is the attachment standard, 6201(2).

18   The parties have stipulated to the first three elements:

19   Cause of action; probability of success; and that the

20   amount demanded from the defendant exceeds all known

21   counterclaims, so we are here -- the first issue here we

22   are from, the attachment issue, is whether or not

23   there's a grounds for attachment under 6201(3), and

24   under 6201(3), that requires us to establish that

25   Mr. Kwok was acting with the intent to defraud creditors

Lisa A. Casey - Official Court Reporter

**Proceedings**

4

1      or frustrate a potential judgment in this case in his

2      various attempts to put the apartment out of our reach,

3      and there have been many of those.

4                  The following slide, this has the cases that

5      support our evidence for why we meet the legal standard

6      on intent.  I thought it would be useful for you to have

7      this handy, but I'm not going to waste time on it.

8                  This has our evidence, and the evidence that

9      we will prove today.  This is the evidence that we

10     featured in our briefing, and we'll prove it.  I won't

11     go through it now, but I thought it would be helpful to

12     have it issue by issue, in addition to witness by

13     witness.  I will go through it witness by witness.

14                 The second issue we are here to prove is veil

15     piercing.  Veil piercing has two elements.  Complete

16     domination and control, and abuse of the corporate form.

17     I don't think there's a serious dispute about the first

18     one; and the second one, the intent problem will be the

19     focus of our proof today.

20                 Here are the cases that support why our

21     evidence meets the standard.  Again, this is just for

22     your reference, your Honor, so that you have them.

23                 I just want to pause on one thing on the two

24     standards, the veil piercing standard and the attachment

25     standard.  Neither requires us to prove fraud.  For the

Lisa A. Casey - Official Court Reporter

5

## Proceedings

1      first, intent to frustrate a judgment is sufficient.

2      For the second, the cases say inequity, malfeasance or

3      wrongdoing as to our client is enough.

4              To be clear, your Honor, we are going to prove

5      fraud today.  My point is that it's not required for us

6      to do that.

7              This is the veil piercing evidence, same veil

8      piercing evidence we talked about in our brief.  It's

9      the veil piercing evidence that we are going to prove up

10     today, and now I'm going to tell you about the four

11     witnesses, briefly, and what they are going to testify

12     to today.

13             Ms. Wang will be the first.  Ms. Wang is

14     Mr. Kwok's translator and assistant.  Her testimony will

15     demonstrate that in an effort to avoid the attachment,

16     Mr. Kwok has gone so far as to suborn perjury.  Ms. Want

17     submitted an affidavit.  It is Mr. Kwok's principal

18     evidence opposing our prior attachment motion.  That's

19     what he relied on, and she swore to facts about which

20     she had absolutely no knowledge.  Zero knowledge.  We'll

21     prove that today.  Ms. Wang, will also confirm that

22     Mr. Kwok was not telling the truth about two key issues.

23     Number one, his pledges of the apartment, and remember,

24     encumbrance is part of the standard under the CPLR.

25     Number two, the efforts to sell.  I'm sure Mr. Harmon is

Lisa A. Casey - Official Court Reporter

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 7 of
126

6

**Proceedings**

1    going to say what could be more public in the whole

2    world; right?  You put this expensive apartment on the

3    market.  Well, if he did, then why is he denying the

4    fact that he received an offer in counter?

5           Next up is Mr. Ullman.  Mr. Ullman is the

6    Sherry-Netherland Executive Vice President and COO.  He

7    will testify that during the approval process, Mr. Kwok

8    showed the Sherry-Netherland no assets in the U.S. and

9    no assets in his own name.  That's never happened at the

10   hotel.  Mr. Ullman will also testify that using two

11   LLC's, a foreign LLC on top of a New York LLC, to buy an

12   apartment in that building, which is exactly what

13   Mr. Kwok said he did, has never happened before at the

14   hotel either, and because of this, Mr. Ullman will

15   explain that the Sherry-Netherland put in unprecedented

16   safeguards, like the biggest security deposit ever,

17   because they were very concerned, based on the

18   structure, that if Mr. Kwok defaulted on his monthly

19   obligations, they would have to chase him across the

20   globe, and he was showing no assets.

21          We respectfully submit that we are similarly

22   situated.  We are going to get a judgment here, and we

23   need similar safeguards attached for the same reasons.

24          Mr. Ullman will also testify that Mr. Kwok

25   tried to assign, transfer, the apartment to a trust in

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 8 of
126

7

**Proceedings**

1    his son's name.  Mr. Kwok denies having any memory of

2    that.  Secrecy and asset transfer is something that

3    helps us meet the standard.  Since Mr. Kwok denies it,

4    we have Mr. Ullman here to talk about it, and there's

5    documentary evidence.

6         Finally, Mr. Ullman will also testify about

7    misrepresentations that Mr. Kwok and his representatives

8    made to the Sherry-Netherland about the pledges.  They

9    represented to you that the apartment was pledged.  They

10    had a big problem, because that breached their lease

11    agreement with the Sherry-Netherland, so when the

12    Sherry-Netherland saw their papers and said, Hey, you

13    pledged the apartment they said, No, no.  We never told

14    Justice Ostrager that.  You must be misreading our

15    papers.  False.  We'll prove it.

16         Mr. Horvitz is next.  Mr. Horvitz will testify

17    briefly by video.  He's the Sherry-Netherland CEO and

18    board president.  He lives in Cleveland.  We deposed him

19    there two weeks ago.  He reviewed the financial

20    information that Mr. Kwok provided to the

21    Sherry-Netherland to induce the hotel to approve his

22    application, and Mr. Horvitz relied on that financial

23    information in recommending the board approval.  That

24    information included financials of two companies

25    Mr. Kwok said he owned.

Lisa A. Casey - Official Court Reporter

8

### Proceedings

1    As you will see, your Honor, we showed

2    Mr. Horvitz Mr. Kwok's deposition testimony, just the

3    publicly available excerpts, where Mr. Kwok denied

4    having any ownership interests in those entities that he

5    told the Sherry-Netherland he owned.  His testimony

6    directly contradicted what he told the

7    Sherry-Netherland, and as the person to whom the

8    misrepresentations were made, Mr. Horvitz will tell you

9    that Mr. Kwok must have been misrepresenting to someone.

10   He either lied at his deposition, or he defrauded the

11   Sherry-Netherland.  There is no third option.  And

12   Mr. Horvitz, your Honor, not I, actually used the word

13   defrauded.

14        Finally, we'll have Mr. Kwok.  We'll show that

15   Mr. Kwok dominates and controls the Genever entities.

16   We'll show that he made repeated and significant

17   misrepresentations to the Court in an effort to defeat

18   the attachment motion; we'll show that he made material

19   misrepresentations to the Sherry-Netherland to induce it

20   to allow him to purchase; and we'll show that the money

21   for the apartment may well have come from the shell

22   company that is responsible for paying the debt to our

23   client, that Mr. Kwok unconditionally guaranteed.  It

24   certainly didn't come from Genever, which was the

25   supposed purchaser.  Importantly, your Honor, we are

Lisa A. Casey - Official Court Reporter

9

**Proceedings**

1    going to demonstrate that Mr. Kwok will not and cannot

2    pay a judgment in this case without an attachment.

3            Now, we have teed up a few short clips for the

4    opening, about seven minutes in total, of testimony that

5    I would like to play from Mr. Kwok's deposition, which

6    we're entitled to do under CPLR 3117(a)(2):  "The

7    deposition testimony of a party may be used for any

8    purpose by any party who was adversely interested when

9    the testimony was given."  This is important testimony,

10   your Honor, with an important purpose:  Mr. Kwok will be

11   here later -- he is here now -- and he will be on his

12   best behavior in the public courtroom, but that's not

13   what happened at the deposition.  Your Honor, Mr. Kwok

14   was evasive, he made a mockery of the proceeding, and we

15   prepared the video, and we are entitled to show it so

16   that the Court can see what we are really dealing with

17   here.

18           New York caselaw makes clear that evasiveness

19   and misrepresentations throughout Court proceedings is a

20   factor the court can consider, and after seeing this, I

21   think the Court will agree that it's hard to imagine

22   stronger, more direct and significant evidence of

23   evasiveness.

24           Mr. Kwok has filed 17 or so lawsuits since

25   he's been in this country.  He knows exactly how the

Lisa A. Casey - Official Court Reporter

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 11 of
126

10

**Proceedings**

1        legal process works, and he cooperates when he is the

2        plaintiff, but you need to see what he does when we are

3        asking him questions and he is the defendant.  We'll

4        play the clips.

5                This is the first clip.  I asked Mr. Kwok --

6        he told me he didn't communicate by email, so I said,

7        did you search text messages to try to respond to our

8        request in this case?  And this is how he answered me.

9                (Video tape played.)

10               MR. MOSS:  I also tried to ask Mr. Kwok some

11       basic questions.  There were significant scoping

12       objections, and they wouldn't let me ask any questions

13       about the merits, and so I was trying to understand that

14       he understood we were here to talk about the attachment

15       issues, and here is what happened when I asked that

16       question.

17               (Video tape played.)

18               MR. MOSS:  One of the topics they did let me

19       ask about was the Genever entities, the two shell

20       entities that Kwok set up to buy the apartment.  He owns

21       and controls those two entities, and he was also the

22       corporate representative for both, so if for some reason

23       he didn't know anything about the entities that he

24       himself set up -- which of course he did, because they

25       are him, he is they -- he had a duty to educate himself

Lisa A. Casey - Official Court Reporter

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 12 of
126

11

**Proceedings**

1    about that, and here is what happened when I asked him

2    simple questions on those topics.

3              (Video tape played.)

4              MR. MOSS:  Your Honor, we talked briefly, in

5    our briefs -- excuse me, we talked extensively in our

6    briefs about counsel's instructions to Mr. Kwok to not

7    answer questions at the deposition that were plainly

8    relevant.  The standard is whether he intends to

9    frustrate the judgment.  I asked him, Will you pay if

10   Court orders a judgment, and they instructed him not to

11   answer that question.  There was no agreement to not

12   answer questions like that.  It was completely

13   inappropriate.  It's terrible for them.  They fought me

14   to not play it for you today, so I'm not going to play

15   it, to avoid the fight, but I think you do need to see

16   that there were many times during the deposition where

17   Mr. Kwok just refused to answer on his own without,

18   even, an instruction, inappropriate or not.

19             (Video tape played.)

20             MR. MOSS:  Finally, your Honor, the last one,

21   on the prior attachment motion we quoted a YouTube

22   audio.  It was just an audio clip on YouTube that had a

23   caption saying it was Mr. Kwok's voice, and Mr. Kwok

24   supposedly was instructing his associates to sell

25   certain assets quickly and quietly.  They killed us in

Lisa A. Casey - Official Court Reporter

12

## Proceedings

1    their opposition papers.  They took to us to task.  They

2    said PAX doesn't even know whether that's Mr. Kwok's

3    voice.  They don't know whether or not this is

4    authentic.  So I thought maybe in his deposition, I

5    would ask him.  I played the audio and asked him, Hey,

6    is that you?  Since they disputed authenticity, I

7    thought it was a pretty fair question.  And here is what

8    happened then.

9                    (Video tape played.)

10                    MR. MOSS:  Thank you, your Honor.  We look

11    forward to putting our case on today.

12                    MR. HARMON:  Good morning, your Honor.

13                    So the first question that you asked was what

14    we agreed to, what we stipulated to, and just to be

15    clear, we did stipulate that for the purposes of this

16    motion, that the defendants do not have to prove that

17    they're likely to succeed on the merits.  We have also

18    stipulated on a number of exhibits that have been

19    presented in a book to you.  There are some we have

20    objections, but there are a passel of exhibits that we

21    have stipulated are authentic and relevant and should be

22    admitted into evidence.  We have stipulated as to

23    various transcripts and portions of transcripts, and of

24    course we also have disagreement about the transcript

25    readings and the exhibits, which we can get to during

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 14 of
126

**Proceedings**

13

1    the hearing.

2              But your Honor, I don't have a multi-media

3    presentation.  I haven't diced the transcript or the

4    testimony of the depositions in order to provide you

5    clips that sound good.  We have presented to your Honor

6    the transcripts; their designated readings, our cross

7    designations, for completeness, and I would ask that

8    your Honor, after the hearing today, read those for the

9    full context.  I think one of the prime examples is the

10   last clip that you saw, where they say that Mr. Kwok put

11   his fingers in his ears and refused to talk about it, to

12   answer the question, but if you read the whole answer

13   what he is saying is, I challenge it to authenticity.

14   This is not real.  Tell me.  Show me that this is my

15   voice.  I don't believe it.  Don't play me somebody

16   else's voice.  So that's really all that I have to say

17   about that.

18              I have read with care, I believe, your Honor's

19   admonitions, expressions of what evidence you want to

20   hear at hearing.  This the third time that we are before

21   your Honor on the attachment motion, and I hope that

22   today's presentation by plaintiffs will not just be a

23   regurgitation of all of the evidence that they have

24   already submitted to you in their two motions; that at

25   some point, at some time today, we are going to hear the

Lisa A. Casey - Official Court Reporter

**Proceedings**

14

1   answers to the questions that you have raised about

2   Mr. Kwok's intent in purchasing the apartment, and

3   efforts to sell the apartment, why that's happening, and

4   why that's no longer happening.

5           The plaintiff's asked us if we would agree to

6   accept a subpoena from Mr. Kwok to be here today, and we

7   said that isn't necessary. We will have Mr. Kwok here,

8   and Mr. Kwok will appear voluntarily and answer any

9   questions you have from the witness stand that we don't

10  object to and which you don't sustain, and you can hear

11  from Mr. Kwok exactly why he bought the apartment and

12  what he has done with the apartment, and your Honor, if

13  the plaintiffs don't ask Mr. Kwok those questions, I

14  will.

15          Mr. Kwok is not an American Citizen. Mr. Kwok

16  did not grow up in the United States. Mr. Kwok grew up

17  in China, in Hong Kong. He is here seeking asylum from

18  the Chinese Government. He has been the subject, he and

19  his family, his extended family in China, have been the

20  subject of extensive efforts by the Chinese Communist

21  Government to jail them, abuse them, challenge them,

22  because the communist government does not like what

23  Mr. Kwok has to say about corruption and freedom in

24  China.

25          We have a language barrier here. Mr. Kwok

Lisa A. Casey - Official Court Reporter

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 16 of
126

15

**Proceedings**

1     does not read English, and one the exhibits that has

2     been submitted to you on consent is the contract of sale

3     to purchase the apartment in the Sherry-Netherland.

4     It's in English.  It's not signed by Mr. Kwok, because

5     he can't read English.  He doesn't understand, or didn't

6     understand, coming to this country, the concept of

7     cooperative ownership, and his understanding of

8     ownership is based upon his years and years of being a

9     business developer in China.  That's how he understands

10    the concept of family and ownership.

11          You can ask him a question of the

12    understanding of what U.S. -- what Americans think about

13    ownership, and you can translate that to him and you can

14    get his answer back, and it will be in English, and

15    you've got a great sound bite, but what I would ask your

16    Honor to do is to recognize, when Mr. Kwok testifies,

17    that there is not just a language issue, but there is

18    also a cultural issue here that needs to be understood

19    in the context of what Mr. Kwok has said, and what he

20    has done.

21          We didn't bring discovery issues to you before

22    the hearing, and I don't believe this is the proper time

23    to raise discovery issues.  If there were problems with

24    the way we handled objections, or we handled the

25    production of documents, we should have handled that in

Lisa A. Casey - Official Court Reporter

**Proceedings**

1    a meet and confer, resolving it with the Court on

2    discovery issues.  We didn't do that.  So I believe that

3    what you are going to hear today from the plaintiffs,

4    based on this presentation, is a reiteration and

5    re-introduction of everything that they have already

6    said twice, in two sets of motions.  I hope that that's

7    not going to be what we do today.  I hope we are going

8    to get to some real evidence that addresses the

9    questions that your Honor has, and I tell you, your

10   Honor, that if the plaintiffs don't do it as part of

11   their case, I will ask Mr. Kwok on my opportunity to

12   cross examine him.

13              Thank you.

14              MR. MOSS:  Your Honor, I just want to respond

15   to a couple, very, very briefly.  First, in terms of the

16   evidence, you asked us --

17              THE COURT:  We should just proceed with the

18   testimony.

19              MR. MOSS:  Let's go.  Perfect.  Thank you,

20   your Honor.

21              THE COURT:  We argued motions twice before.

22              MR. MOSS:  Fair enough, your Honor.  We call

23   our first witness, Yvette Wang.

24

25

Lisa A. Casey - Official Court Reporter

17

### Wang - for Plaintiff - Direct by Moss

```
 1   Y A N   P I N G   W A N G, having been duly sworn by the

 2   clerk, was examined and testified as follows:

 3              THE CLERK:  In a loud, clear voice, please

 4         state your full name and address.

 5              THE WITNESS:  My name is Wang, Yan Ping.  My

 6         address is 22D 150 East 57th Street, New York, New York.

 7              THE CLERK:  Thank you.  Be seated.

 8              THE WITNESS:  Thank you, sir.

 9              THE COURT OFFICER:  The witness is sworn, your

10         Honor.

11              MR. MOSS:  Your Honor, I have a copy of

12         Ms. Wang's deposition transit.  Is it okay if I approach

13         and provide it to her?

14              Thank you.

15              (Whereupon, a document was handed to the

16         witness.)

17   DIRECT EXAMINATION

18   BY MR. MOSS:

19        Q    Ms. Wang, you work for Mr. Kwok; right?

20        A    I work for whole family.

21        Q    Mr. Kwok's family?

22        A    No.  Guo Family.  G-U-O.

23        Q    What's Mr. Kwok's name?

24        A    Kwok Ho Wan.

25        Q    Guo; right?  The same Guo, the family name?
```

Lisa A. Casey - Official Court Reporter

18

**Wang - for Plaintiff - Direct by Moss**

1    A    He is family.  His name is Kwok, K-W-O-K.  His

2    family is, Guo, G-U-O.

3    Q    Do you dispute that you work for Mr. Kwok's family

4    businesses?

5    A    Let me explain.  Mr. Guo, Guo Family, his family

6    has more than hundred people, including his seven -- I

7    believe total, including himself -- seven brothers, and they

8    have their different, like, family, small family.  So

9    totally, together, there are more than one hundred people in

10   the family.  So this family, different family member, they

11   have their different parts in the family business.  So I work

12   for the whole family.

13   Q    One of the members of the family is Mr. Kwok?

14   A    Yeah.  He is one of the family member.

15   Q    You worked for Mr. Kwok's family companies in Hong

16   Kong; right?

17   A    Yes.

18   Q    Since February 2018, you work for one of his family

19   companies in New York; right?

20   A    Yes.

21   Q    So, since 2009, so for the last 10 years, you have

22   had no other employer other than the Guo Family; right?

23   A    Correct.

24   Q    I would like to talk about Mr. Kwok's efforts to

25   sell the apartment.  Up until recently, you know that

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 331    Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    RECEIVED NYSCEF: 05/08/2019    Page 20 of

126

19

### Wang - for Plaintiff - Direct by Moss

1  Mr. Kwok's broker was Kathy Sloane; right?

2      A    Correct.

3      Q    You, on behalf of Mr. Kwok, had discussions with

4  Ms. Sloane about selling the apartment; right?

5      A    Let me correct.  I am the contact person between

6  Mr. Kwok and Ms. Kathy Sloane, because Mr. Kwok, he does not

7  read and write English at all, so that's why Ms. Kathy

8  Sloane, a lot of time, reach out to me asking me to send her

9  message to Mr. Kwok, and then because Mr. Kwok, he does not

10 write and read English, so I have to translate for him and

11 put his message, like, translate into English, and send back

12 to Ms. Kathy Sloane.

13     Q    Understood.  Thank you for the clarification.

14     A    Thank you.

15     Q    And sometimes you have exchanged emails with

16 Ms. Wang on -- excuse me, with Ms. Sloane on behalf of

17 Mr. Kwok about efforts to sell the apartment; right?

18     A    Correct.

19         MR. MOSS:  If I may, your Honor?

20         (Whereupon, a document was handed to the

21     witness.)

22         (Whereupon, an exhibit was displayed to the

23     Court.)

24         MR. MOSS:  PX 17, which in evidence.

25     Q    Ms. Wang, this is an email from Ms. Sloane in

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 21 of
126

20

**Wang - for Plaintiff - Direct by Moss**

1    November of 2016; right?

2         A    Correct.

3         Q    There's an email address, Yvette Wong, or

4    Yvette.yue423 at GMail; right?

5         A    Correct.

6         Q    That's your email address?

7         A    It was my email address, but now I cannot get in

8    there because my -- a lot email address, they were hacked by

9    Chinese Communist Party, so I do not have access any more.

10   Sorry.

11        Q    Excuse me.  I'm sorry for almost cutting you off.

12   At the time, this was your email address?

13        A    Correct.

14        Q    And you sent and received these emails?

15        A    Correct.

16        Q    I would like to direct your attention to the "Dear

17   Miles" email on the bottom of the page.

18             It says, "I have been giving a lot of thought to

19   the offer that --" name redacted "-- that someone has put

20   forward for your apartment at the Sherry-Netherland."

21             Do you see that?

22        A    Yes.

23        Q    In or around this time, someone had put forth an

24   offer on the apartment; right?

25        A    From the email.  Yes.

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 22 of
126

21

### Wang - for Plaintiff - Direct by Moss

1    Q    Well, you knew that.  That email refreshed your
2    recollection that there was a $60 million offer on the table;
3    right?

4    A    Correct.

5    Q    It says, "I'm sensitive to the fact that you have
6    already made a very significant concession when you agreed to
7    counter at 67 million;" right?  I read that correctly?

8    A    This is from Ms. Kathy Sloane, her email.

9    Q    Right.  And what she was saying was that Mr. Kwok
10   countered the offer; right?  You know that?

11   A    I don't know about this.

12   Q    You don't know whether or not Mr. Kwok countered
13   the offer?

14   A    Correct.

15   Q    Okay.  And she said, at the top, "Dear Yvette,
16   please read to this Miles at your earliest convenience."  Do
17   you see that?

18        Do you see that portion, "Dear Yvette, please read
19   this to Miles at your earliest convenience"?

20   A    Which page?

21   Q    See that portion, "Please read this to Miles at
22   your earliest convenience"?

23   A    Yes.  I saw this.

24   Q    And Miles is Mr. Kwok; right?

25   A    Correct.

**Wang - for Plaintiff - Direct by Moss**

1    Q    You read it to him; right?

2    A    Yes, I did.

3    Q    And I want to be very, very clear about this for

4    the Court, this one.  Mr. Kwok knew about this $60 million

5    offer; right?

6    A    Yes.

7    Q    You have no doubt about that; right?

8    A    Mr. Kwok knew that from Ms. Kathy Sloane, and this

9    is why I say I do not know, because this is, I gathered some

10   information, or obtained information, which means either

11   Ms. Kathy Sloane told me, or emailed me.  Then I saw the

12   email.  I said, Oh, okay.  There is an offer, like this way.

13   Or Mr. Kwok told me.  So that's why, when both of them

14   discuss or mention, I was not there, so this is my gathered

15   of obtained information, not my personal information.  So

16   this is not my personal information.

17        When you ask me, do you know this offer, obviously

18   I'm just a messenger between these two people, so I do not

19   have that personal information.  I just gathered that

20   information from either Ms. Kathy Sloane or Mr. Kwok.  I'm

21   just a messenger.

22   Q    Right.  You passed the message to Mr. Kwok about

23   the $60 million offer that Kathy Sloane told you about.

24   A    I did.

25   Q    Right.  And Mr. Kwok knew about the offer.

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 24 of
126

23

**Wang - for Plaintiff - Direct by Moss**

1    A    Correct.

2    Q    You know you submitted an affidavit in this case?

3    A    Yes.

4    Q    You did that on behalf of Mr. Kwok; right?

5    A    I did that on behalf of Golden Spring New York and

6    the Guo Family, yes.

7    Q    Well, you did that in support of Mr. Kwok's

8    opposition to our motion to attach his apartment.

9    A    Yes.

10   Q    Right?

11   A    Yes.

12   Q    Let's take a look at the affidavit.

13            (Whereupon, a document was handed to the

14   witness.)

15            (Whereupon, an exhibit was displayed to the

16   Court.)

17            MR. MOSS:  This is PX 34.

18   Q    This is your affidavit; right, Ms. Wang?

19   A    Correct.

20   Q    In this case?

21   A    Yes.

22            MR. MOSS:  Your Honor, it's not in evidence.

23   They have an objection to it.  I offer it.  It's not for

24   the truth.

25            MS. SEARLES:  There are actually a few key

Lisa A. Casey - Official Court Reporter

### Wang - for Plaintiff - Direct by Moss

1    issues with this particular exhibit.  One of the

2    exhibits, exhibit C to it, is subject to a stipulation

3    on the merits, and we have had an ongoing discussion

4    with respect to the pledge issue.  Your Honor made clear

5    that the pledge had nothing to do with whether or not

6    attachment would be had; it just had to do with

7    priority.  I have no problem with them using this as

8    impeachment.  It's obviously in front of the Court, it's

9    a pleading, but I don't think it is a proper exhibit to

10   be admitted into evidence.  That's the issue that I

11   have.

12           MR. MOSS:  Your Honor, it sounds like a

13   relevance objection, which, I think your Honor can take

14   it for what it's worth.  It's obviously in front of the

15   Court.  We can pause on the pledge for one issue,

16   because I think that's going to come up a lot today.

17   The pledges, 6201(3) talks about encumbering an asset

18   with an intent to frustrate a judgment.  The cases say

19   that a pledge is an encumbrance.  They put this issue in

20   front of you.  They said, We pledged it, so you can't

21   attach it.  You denied that argument, because that's a

22   matter of priority, but they're trying to twist that

23   rule and say the pledges are off the table, and they are

24   not relevant for this.  It's in the CPLR, and the

25   misrepresentations about the pledges go straight to the

25

### Wang - for Plaintiff - Direct by Moss

1      fraudulent intent, so it couldn't be more relevant.

2      It's evidence they put in front of her.

3                  THE COURT:  You have a witness on the witness

4      stand.  You can ask the witness any questions you want

5      to ask the witness.  To the extent that the witness has

6      given prior to sworn testimony that is inconsistent with

7      the testimony that she lives gives today, you can use

8      the affidavit for impeachment purposes, so there's

9      really no need to introduce the affidavit as evidence,

10     because she is here.  You can ask her anything you want.

11                 THE WITNESS:  Thank you.

12     Q     Let's take look at the affidavit, Ms. Wang.

13     A     Yes.

14     Q     You submitted the affidavit in support of the

15     opposition to the attachment motion; right?

16     A     Correct.

17     Q     You understood this was a legal document?

18     A     Yes, I do.

19     Q     You understood it was being used in a legal

20     proceeding?

21     A     Yes, I do.

22     Q     And you knew it was going to be submitted here in

23     Supreme Court to Justice Ostrager; right?

24     A     Yes.  I learn that.  I'm still learning.

25     Q     You understood that this wasn't just a casual

Lisa A. Casey - Official Court Reporter

### Wang - for Plaintiff - Direct by Moss

1  conversation.  This was a serious legal document.

2      A    Of course.  Of course.

3      Q    And you weren't just saying the things in the

4  document, you were swearing to them; right?

5      A    Yes, I did.

6      Q    You can direct your attention to the last page,

7  please, of the document.

8          MS. SEARLES:  Objection.  Again, the witness

9      is here.  He can ask her whatever questions --

10         THE COURT:  That's what I just ruled.

11         MS. SEARLES:  I think he's going to read from

12     the testimony, but she hadn't given any -- or from the

13     document, but she hadn't given any contrary testimony

14     yet, so I think -- that's the issue that I'm having.

15         THE COURT:  This isn't complicated.  The

16     witness is here.  You can ask the witness anything you

17     want, and then if she says something that's inconsistent

18     with the prior sworn statement, you can ask her whether

19     she gave this prior sworn statement, and I will evaluate

20     her credibility.  But the affidavit is not an admissible

21     document, and you can't just read from it.  This is

22     evidence 101.

23     Q    Ms. Wang, you put in an affidavit, and you didn't

24  have any personal knowledge of the statements in the

25  affidavit; right?

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 28 of
126
RECEIVED NYSCEF: 05/08/2019

27

### Wang - for Plaintiff - Direct by Moss

1    A    This affidavit was drafted by attorney, so a lot of

2   information, what I can see, because I am here, the

3   administrator and President of Golden Spring New York, the

4   administrator, which I knew that I am the documents or

5   information gather people.  I try collect the documents, get

6   information.  So all of this information in here, they're not

7   my personal knowledge, because I was not involved in any of

8   the things in here, so I'm trying to help to gather

9   information and documents from different people.

10   Q    Ms. Wang, you sworn to the Court that Mr. Kwok

11  owned the apartment; right?  And he owned it through another

12  entity; right?

13          MS. SEARLES:  Objection.  Leading.

14          THE COURT:  That's overruled.

15          THE COURT OFFICER:  You can answer.

16          THE WITNESS:  I can answer.  Okay.

17   A    In this affidavit, yes.  I swear, yes.

18   Q    And you don't know if Mr. Kwok owns the apartment

19  or not; right?

20   A    When you say I don't know, I don't understand,

21  you're talking about my personal knowledge?  Which I don't

22  know, because personally, when this apartment was purchased,

23  or happened afterwards, especially when it was purchased, I

24  was not in the U.S. and I did not involve, handle,

25  communicate or negotiate, attend any meeting at all.  So I do

Lisa A. Casey - Official Court Reporter

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 29 of
126

28

**Wang - for Plaintiff - Direct by Moss**

1    not have any personal knowledge about that.  This is all,

2    when I was requested, I have to start to ask the people;

3    gather information; collect information from other people.

4              MR. MOSS:  Let's play the deposition.

5              (Video tape played.)

6       Q    You never saw a single paper about the ownership of

7    the apartment; right?

8       A    I did saw paper about this ownership since this

9    case started.  So the attorney asked my help to go to look

10   for documents.  I did see some documents.

11             (Whereupon, an exhibit was displayed to the

12        Court.)

13             THE COURT:  Look, without the slide, you're

14        going to ask her if she knows whether Mr. Kwok owns the

15        apartment.  She either does or she doesn't.  If she says

16        she doesn't know, and she previously swore that he did

17        own the apartment, then you can impeach her.  If she

18        says that he doesn't own the apartment, and she

19        previously sworn that he does own the apartment, then

20        you can impeach her, but all we are doing now is

21        eliciting her testimony.

22      Q    Ms. Wang, you just testified that you did not know

23   that Mr. Kwok owned the apartment, and I'm going to direct

24   your attention to paragraph two of your affidavit.

25             MS. SEARLES:  Objection.  That misstates her

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 30 of
126

**Wang - for Plaintiff - Direct by Moss**

1    testimony.

2              THE COURT:  Okay.

3              Look, do you know whether Mr. Kwok owns the

4    apartment?  Yes or no.

5              THE WITNESS:  Yes, sir.

6              THE COURT:  And does he own the apartment?

7              THE WITNESS:  I heard, still.  I heard, and

8    via a different entity, and different entity own the

9    apartment, and he owns, like, different entity.  This is

10   what I learned from the whole document.

11             THE COURT:  You have no personal knowledge --

12             THE WITNESS:  No.

13             THE COURT:  -- one way or the other?

14             THE WITNESS:  No, your Honor.  Yeah.

15             THE COURT:  Okay.  Go ahead.

16   Q    Ms. Wang, do I have it right that you just said you

17   did see papers about the ownership of the apartment?

18   A    Correct.

19   Q    Take a look at your deposition, page 78.

20             THE COURT:  That's not how we do this.  We

21   have lots of motion papers.  If you are going to use a

22   deposition for impeachment, you say, Do you recall being

23   deposed, Do you recall being asked the following

24   questions and giving the following answers, and that

25   comes into the record, and if it constitutes

30

**Wang - for Plaintiff - Direct by Moss**

1      impeachment, I'll take note of that.  If it's of no

2      moment, I'll ignore it.

3      Q     Ms. Wang, do you recall that I deposed you?

4      A     Yes.  That was you, sir.

5      Q     I'm going to read:

6           "Question:  Who do you think of as the owner

7      of the apartment?

8           "Answer:  I don't know, because I never see

9      any paper in front of me, so I don't know.  It's all I

10     heard from him, but I don't know."

11          Do you recall being asked that question and giving

12     that answer?

13     A     Yes, I did.

14     Q     Any statement you made about the apartment's

15     ownership would just be a guess; right?

16     A     Let me explain, sir.  So all the information about

17     this apartment, which is my gathered information, I do not

18     have personal information; okay?  So second, when I was

19     deposed by you, sir, I was super nervous.  I have to say,

20     even now, I'm still very nervous, because this is my first

21     time sit in front of your Honor and this Court.  So when I

22     was deposed by you, sir, I was very nervous, and my memory

23     somehow come into, like, a blank, totally blank.  Very

24     important is that English is not even my second language.  My

25     first language is Chinese Mandarin, so my second language,

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 331    Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 32 of
126    RECEIVED NYSCEF: 05/08/2019

31

### Wang - for Plaintiff - Direct by Moss

1    foreign language, is French, and I'm learning English, so a

2    lot of, like, language barrier happen.

3         So when I was deposed by you, sir, I was super

4    nervous, and you give me, I remember, some documents, like

5    something which I can show, like this kind of documents, I

6    have difficulty to read all of this technical legal financial

7    paper in front of you, sir.  So that's why I was super

8    nervous.

9         And then, by the way, I remember you did not show

10   me my affidavit when you deposed me; right?  You did not show

11   me this, and you just showed me this (indicating).  So then I

12   was given that, I was shaking my hands.  I tried to read all

13   of them, and plus these documents, I just collect from other

14   people.  So that's why I try to give you an answer, like, in

15   a very limited time.  I don't want to waste any other

16   people's time.  So when I could not recognize, and I'm not

17   sure, I just say I don't know.

18        But basically, I'm a very conservative people in

19   this case, and I am only able to be responsible for my

20   personal knowledge.  If you know, this is my gathered

21   information, my gathered knowledge, or just documents pass by

22   my hands.  I was super nervous, just like right now.  I

23   probably say, sir, I don't know, I don't remember.  Yeah.

24   That's my situation when you deposed me, sir.

25        Q    Page 78 of the deposition:

Lisa A. Casey - Official Court Reporter

32

**Wang - for Plaintiff - Direct by Moss**

1          "Question:  Do you think he owns it?

2          "Answer:  I don't know.  I cannot guess."

3          Do you recall being asked that question and giving

4    that answer?

5    A     Yes, sir.

6    Q     And you know that your counsel refused having a

7    translator at the deposition; right?  Even though we asked if

8    you needed one at the deposition?

9          MS. SEARLES:  No.  Objection.  Just for

10         clarification, we did not refuse.

11         THE COURT:  Okay.  Look --

12         MS. SEARLES:  The witness requested that she

13         didn't need one.

14         THE COURT:  All the arguments that you have,

15         each of you, have been memorialized in extensive

16         findings.  I don't want to hear any arguments about

17         anything.  I just want to hear testimony and I want it

18         to be elicited in an ordinary and expeditious fashion.

19         So all we have accomplished in the last 15 minutes is

20         that this witness has indicated that she has no personal

21         knowledge concerning the ownership of this apartment.

22         That's what she testified to at her deposition, and

23         that's what she is testifying to on the witness stand.

24         Next question.

25         MS. SEARLES:  Thank you, sir.

Lisa A. Casey - Official Court Reporter

33

### Wang - for Plaintiff - Direct by Moss

1    Q    Ms. Wang, you don't know, you have no idea where

2    the money came from to purchase the apartment; right?

3    A    I have no personal knowledge about that.

4    Q    Nobody ever told you; right?

5    A    Nobody told me, but I heard discussion, because I

6    was requested, try to gather information.  So I may hear some

7    information.

8    Q    You have no knowledge at all about the purchase of

9    the apartment, because you were on leave and living in

10    Beijing at the time; right?  The apartment was purchased?

11    A    I do not have personal knowledge about the purchase

12    of apartment, because I was in Beijing by then, yes.

13    Q    You don't know whether Mr. Kwok owns the apartment

14    through Genever; right?

15    A    I learned that after this case happened.  Yeah.

16    Q    Did you learn it after your deposition?

17    A    No.  I learned that when this case happened, like

18    including the deposition, because I was requested to gather

19    information for the attorney.

20    Q    "Question:  You understand that Mr. Kwok

21        ultimately owns the apartment because he owns Genever?

22        "Answer:  I'm not quite clear about that

23        answer.

24        "Question:  You are not sure who owns Genever?

25        "Answer:  Yes."

Lisa A. Casey - Official Court Reporter

34

### Wang - for Plaintiff - Direct by Moss

1          Do you recall being asked those questions and

2    giving those answers?

3              MR. HARMON:  Your Honor, if Mr. Moss is going

4        to read from the transcript, can he first tell us the

5        page and line from which he is reading, so we can follow

6        along?

7              THE COURT:  Go ahead.

8              MR. MOSS:  I was just reading from 77, 13 to

9        19.

10    Q    Do you recall being asked those questions and

11    giving those answers?

12    A    Yes, I did.

13    Q    You don't know who owns Genever; right?

14    A    I do not have personal knowledge about that.

15    Q    You don't know who owns Genever New York or Genever

16    B.V.I; right?

17    A    I gather that information.  It's kind of like B.V.I

18    owns New York LLC company, and New York LLC company own

19    apartment.

20    Q    Now I'm going read from your deposition, 102, 7 to

21    9.

22              "Question:  You don't know who owns Genever

23        New York or Genever B.V.I.

24              "Answer:  I don't know."

25          Do you recall being asked that question and giving

Lisa A. Casey - Official Court Reporter

**Wang - for Plaintiff - Direct by Moss**

1  that answer?

2      A    Yes, I did, sir.  When I say I don't know, I mean I

3  do not have personal information, and I'm not quite sure, so

4  that's why for conservative answer, I'd rather say, I don't

5  know.

6      Q    Even though you sworn to those things in an

7  affidavit to this Court?

8      A    Sir, we have understanding difference.  Like, my

9  understanding is personal information, which I say that, I am

10  conservative Chinese woman, so that's why, if I do not have

11  that personal information, or I did not involve, handle, by

12  my hands, I would rather say I don't know.  Yeah, I don't

13  want to guess.

14      Q    So you were being conservative at your deposition,

15  but not conservative when you made those same statements in

16  court?

17      A    I am conservative person, sir, and I will be 100,

18  and I am 100, percent responsible for my personal knowledge

19  and information.  When I just gather information, or hearing

20  it, or heard something, if I'm not sure, usually I just say I

21  don't know.  Yeah.

22      Q    So if you have no personal knowledge of anything in

23  the affidavit, who is responsible for that?

24      A    Correct.  Do I not have personal information.

25      Q    So who is responsible for the affidavit, since you

Lisa A. Casey - Official Court Reporter

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 37 of
126

36

**Wang - for Plaintiff - Direct by Moss**

1    don't have personal information?

2        A    Whose affidavit?

3        Q    Your affidavit?

4        A    Oh.  Me.  Myself.  Yes.

5        Q    But you just told me that you don't have personal

6    knowledge of facts in the affidavit, and you don't take

7    responsibility when you don't have personal knowledge; right?

8        A    Sir, I'm 100 percent responsible for my affidavit,

9    which I sweared.  I have understanding difference in here,

10    so -- which I am very grateful I'm given this opportunity to

11    explain, because there's understanding difference between

12    what I said what I was deposing -- what I'm deposing by you,

13    sir, and what I'm meaning, really, I have personal

14    information or not.  This is understanding difference, sir,

15    and plus, I'm sorry about my language.  Sometimes when you

16    stare at me, ask me that question, I'm super nervous.  Even

17    right now.

18        Q    I'm sorry.  I'm not trying to make you nervous.

19        A    Sorry about that.

20        Q    You don't even know that there are two separate

21    Genever entities; right?

22        A    You mean personal knowledge, or my gathered

23    information?

24        Q    I mean, I'm asking you the question, do you know

25    whether or not there are two separate Genever entities?

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 331    Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    RECEIVED NYSCEF: 05/08/2019    Page 38 of
126

37

### Wang - for Plaintiff - Direct by Moss

1      A      I gather the information saying there are two

2    separate entities.

3      Q      You have no knowledge of any pledges of the assets

4    of Genever Holdings LLC or Genever Holdings Corporation;

5    right?

6      A      Again, I do not have any personal knowledge about

7    this.  This is my gathered information.  I heard about this.

8      Q      So you made sworn statements to the Court about

9    facts that you had no personal knowledge about, that was

10   gathered information that you heard about?  That's your

11   testimony?

12     A      My testimony, there are two kinds of information,

13   which is personal information knowledge and gathered

14   information knowledge.

15     Q      And you have no personal knowledge about any

16   pledges of the apartment; right?

17     A      Correct, sir.

18     Q      You don't know whether or not the apartment has

19   been pledged at all; right?

20     A      I do not have that personal information.

21     Q      You never had any discussions with anyone about

22   pledging the apartment; right?

23     A      I personally did not discuss anything about this.

24     Q      You never had any discussions with Mr. Kwok about

25   any pledges; right?

38

**Wang - for Plaintiff - Direct by Moss**

1        A     May I ask, what do you mean, discuss?  You mean

2    ask, or mention, or discuss how do we pledge; what is

3    resolved; what is the strategy plan?  I'm confused about your

4    question.  What do you mean, discuss?

5        Q     Did you ever talk about the pledges with Mr. Kwok?

6        A     I mentioned, or he mentioned that to me, I don't

7    remember that clearly.  Just, Oh, there is a pledge.  But I

8    did not ever involve, like, Okay, sit down and tell me what

9    is happening, what is the details, and I never ever involve,

10   like, Okay, I was going there and doing that pledge.  I

11   didn't do that.

12       Q     I'm going to read from your deposition, page 81,

13   lines 9 through 11:

14              "You never had any discussion with Mr. Kwok

15         about pledges?

16              "Answer:  No."

17         Do you recall being asked that question and giving

18   that answer?

19              THE COURT:  That's not inconsistent with what

20         she just testified to.  It's completely consistent with

21         what she just said.

22              MR. MOSS:  Your Honor, she denied having any

23         conversations in the deposition, and she just said that

24         she did have a conversation.

25              THE COURT:  That's not what I heard her say.

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 331
Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 40 of
126
RECEIVED NYSCEF: 05/08/2019

**Wang - for Plaintiff - Direct by Moss**

1        Did you have a conversation with Mr. Kwok

2    about the ownership of the apartment?

3        THE WITNESS:  No, sir.  I just heard.  I ask

4    him, and he told me, and I know, okay, this is the

5    situation.  But I did not have, like, a discussion, like

6    of five, ten minutes, or sit down to go through the

7    details.  Because I'm just like an administrator,

8    collect information for the lawyer and get documents for

9    the lawyer, so I don't know the background, and I don't

10    know the logic.

11    Q    Did Mr. Kwok ever tell you that the apartment or

12 Genever had been pledged?

13    A    Sorry, sir.  What is the question?

14    Q    Did Mr. Kwok ever tell you that the apartment or

15 Genever had been pledged?

16    A    I believe is not him.  Yeah.

17    Q    You believe he did not tell you that?

18    A    He mentioned that to me.

19    Q    Mr. Kwok told you that the apartment or Genever was

20 pledged?

21    A    I don't remember it was first time he told me, or I

22 told him, because I gathered that information from other

23 people.  Then, kind of like, I told him, and he mention that

24 to me.

25    Q    At your deposition, page 81:

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 41 of
126
RECEIVED NYSCEF: 05/08/2019

40

### Wang - for Plaintiff - Direct by Moss

1          "Question:  You never told Mr. Kwok that

2     Genever was pledged?

3          "Answer:  No.

4          "Question:  He never told you that it was

5     pledged?

6          "Answer:  No."

7     Q    Do you recall being asked those questions and

8  giving those answers?

9     A    Correct, sir.

10    Q    If you can, please turn to Exhibit B of your

11 affidavit.

12          (Whereupon, an exhibit was displayed to the

13     Court.)

14    Q    I would like to direct your attention to the first

15 page.  This is a document that you attached to your

16 affidavit; right, Ms. Wang?

17    A    Correct.

18    Q    In support of your statement that the apartment was

19 pledged; right?

20    A    Looks like, yes.

21    Q    And I would like to direct your attention to the

22 first page.  Do you see there's a charge ID, FBAKOY?

23    A    Sorry.  Which page, sir?

24    Q    Right here.  It's the first page of Exhibit B.  You

25 see the charge ID?  It says FBAKOY?

Lisa A. Casey - Official Court Reporter

41

### Wang - for Plaintiff - Direct by Moss

1    A    Yes.  I saw that.

2    Q    And pledge was made to Roscalitar 2?

3    A    Yes.

4    Q    And the pledge date was May 21, 2015; right?

5    A    Correct.

6    Q    Did anyone ever tell you, or did you ever gather

7    the information --

8            MS. SEARLES:  Objection.  Your Honor, I

9    apologize for interrupting again, but he just keeps

10    reading from this document which is not actually in

11    evidence.

12            THE COURT:  Is this an exhibit that you have

13    in your exhibit book?

14            MR. MOSS:  Yes.  It's in the exhibit book, and

15    it's her affidavit -- it's attached to her affidavit.

16    It's their document.

17            MS. SEARLES:  But it has not been admitted.

18    It's one of the ones we have an issue over.

19            THE COURT:  All right.  Look, just proceed.

20    Q    Ms. Wang, when you submitted this document to the

21    Court and you swore that the apartment had been pledged since

22    May of 2015, did you know -- did you know that this pledge

23    had actually been terminated before you put your affidavit

24    in, in March of 2017?

25    A    Sir, let me make it clear, again.  When you depose

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 43 of
126

42

**Wang - for Plaintiff - Direct by Moss**

1   me, you give me this, and without giving me my affidavit.

2   And remember, my affidavit, which I signed, it's about one

3   year ago, and when you depose me, you just give me the

4   exhibits, you did not give me any of my affidavits, and all

5   the exhibits, which I am just a person collected them from

6   other people.  So I have to emphasize that as administrator

7   of Golden Spring, that I collect documents and information

8   every day, so there's lot of documents and information I'm

9   collecting for you, for my attorney, and for other project.

10  I cannot remember which one is for what, so when you depose

11  me, you show me that this is just one or two pages in my

12  thousands, millions of pages of other documents.

13          And I have to say that when I collect all of these

14  documents, why I'm the person collecting, because my

15  colleague, either they are kidnapped by Chinese Communist

16  Party, either because of a threaten, they quit their job;

17  either they just leaving nothing and just left.  So I'm in a

18  very hopeless position to help to collect all of these

19  documents.

20          And a lot of documents I just put it in my file and

21  I do not even have time to review that, so it's really

22  difficulty for me that you show me the documents in your

23  deposition and ask me if I can recall from my memory, right

24  away, to tell you, this documents, I know what was happening

25  and what was resolved and what was there.  So it's really

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019
Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 44 of
126

43

## Wang - for Plaintiff - Direct by Moss

1    just like two, three pieces of paper in my whole files.

2         Q    Okay.  So I'm not talking about your deposition.

3    What I'm asking you is -- it's just very simple.  Let me try

4    the question again.  When you submitted this document

5    swearing that the apartment had been pledged since May of

6    2015, did you know that this pledge was terminated in March

7    of 2017, and that the apartment that you were swearing was

8    pledged was not actually pledged anymore?  Did you know that?

9         A    I do not have personal information, knowledge.

10        Q    Did you hear that pledge had been terminated before

11   you swore to the Court that it was terminated?

12        A    I don't remember that, sir.

13             MR. MOSS:  May I, your Honor?

14             (Whereupon, a document was handed to the

15        witness.)

16             MR. HARMON:  Your Honor --

17             MS. SEARLES:  Can we know what he's showing

18        her?

19             MR. MOSS:  This is PX 43.  They have a

20        relevance objection, not an authenticity objection, to

21        this document, your Honor.  It's in the exhibit binders.

22             (Whereupon, an exhibit was displayed to the

23        Court.)

24             MS. SEARLES:  It's the same relevance

25        objection that I gave before with respect to the

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 45 of
126

44

### Wang - for Plaintiff - Direct by Moss

1    pledges.  This does not have to do with what your Honor

2    laid out in our last oral argument that you wanted to

3    hear today.  It was the timing and the purchase and sale

4    of the apartment.  I think that there is no dispute at

5    this point between any of the parties that at one point

6    there were pledges on the apartment, and at this point

7    there are no pledges on the apartment, so I don't know

8    why we are continuing to discuss this.  It's not an

9    actual encumbrance if the pledge doesn't exist.

10         MR. MOSS:  Your Honor, if they want to

11    stipulate that the pledge that she swore was on had been

12    terminated before she filed her affidavit, I'm happy to

13    do that, to avoid wasting time.

14         MS. SEARLES:  No.  I'm not going to stipulate

15    to that, but I will stipulate that since she completed

16    her affidavit, and since we have had oral argument, and

17    I don't know however many months of prejudgment

18    attachment discovery, that the pledge has been lifted,

19    and I don't think we are in any disagreement on that.

20         THE COURT:  This is a document that says that

21    the pledge has been released.  You don't dispute that.

22    So why are we wasting time?

23         MS. SEARLES:  That was my question as to why

24    we are continuing to discuss something --

25         THE COURT:  I'm taking your representation as

Lisa A. Casey - Official Court Reporter

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 46 of
126

45

**Wang - for Plaintiff - Direct by Moss**

1    a stipulation that the pledge was released, so there's

2    no need for there to be any questioning about this

3    document.

4                MS. SEARLES:  I just want to be 100 percent

5    clear, not that I'm making that representation, there is

6    no pledge in place.  It was released.

7                There is a discrepancy between documents that

8    they obtained from DC and documents we obtained from

9    B.V.I, that had a discrepancy at one point, where our

10   document was dated close in time to theirs, and it's

11   said that the pledge hadn't been released.  Theirs did.

12   We argued at the time that the B.V.I was the appropriate

13   one.  We have pulled that from, you know, outside help.

14   We didn't pull it ourselves.

15               At this point in time, though, there are no

16   pledges, and we are all in agreement on that, and so I

17   want to be clear that there is a discrepancy as to some

18   of the documents, and the timing of the pledge, but the

19   pledge has been lifted for months at this point, so

20   again, I'm just confused as to why we are continuing to

21   go into this, because if the argument is the

22   encumbrance, pursuant to the CPLR, there is no

23   encumbrance.

24               THE COURT:  This is a one-day hearing.  It's

25   now an hour and a half into the hearing, a third of

Lisa A. Casey - Official Court Reporter

46

### Wang - for Plaintiff - Direct by Moss

1    which has been attorney colloquy, and/or regurgitation

2    of what's in two sets of papers.  You are stipulating

3    there's no extant pledge on this apartment, so I don't

4    know what relevance this particular document has to

5    anything.

6              She stipulated that there's no extant pledge.

7              MR. MOSS:  Can I respond, your Honor, on

8    relevance, your Honor?

9              THE COURT:  Yes.

10             MR. MOSS:  Ms. Wang's affidavit swore to the

11   Court that the pledge was on, and a year before her

12   affidavit the pledge had been terminated, so it's a

13   false statement to the Court about the existence of a

14   pledge in the courts of this proceeding in order to try

15   to avoid an attachment, it goes directly to credibility.

16   It goes directly to fraud.

17             THE COURT:  All right.  Well --

18             MR. MOSS:  I can move on, your Honor.  If

19   that's preferable, I'm happy to move on.

20        Q    Ms. Wang, I take it you never saw that document

21   before you filed your affidavit; right?  The document you

22   have in front of you?

23        A    Which document?

24        Q    PX 43, you never saw?

25        A    Even now, let me tell you, I don't remember that.

Lisa A. Casey - Official Court Reporter

47

**Wang - for Plaintiff - Direct by Moss**

1    Yes.  And let me repeat again, if I may, I am administrator

2    to Golden Spring.  This is not my choice.  Because Chinese

3    Communist Party, they kidnap almost all my colleague, between

4    me and the company.  So my background, I do not have

5    financial professional knowledge.  I do not have American

6    real estate professional knowledge.  So I was the only

7    person, by then, speak at least a little bit English, and try

8    to help the family, so that's why.  A lot of my colleague,

9    they are either kidnapped, or disappeared, or just left

10   without saying anything, drop off their stuff on my table.

11            I spent a long time trying to learn and digest and

12   figure out what they are, and I'm not good about reading

13   documents.  Even now, sir, you show me this, and I'm super

14   nervous here, that if you do not point where the pledge, that

15   word, I still couldn't recognize this as one of the documents

16   passed by my hands.  Because really, my background is here,

17   I'm not a liar, and I never forge anything, and why I'm here,

18   I'm trying to help, to help the case.  Thank you, sir.

19        Q .  Thank you.

20            MR. MOSS:  Nothing further right now, your

21        Honor.

22   CROSS EXAMINATION

23   BY MS. SEARLES:

24        Q    Good morning, Ms. Wang.  I'm going to try to speak

25   up, so you can hear me.

Lisa A. Casey - Official Court Reporter

48

### Wang - for Plaintiff - Cross by Searles

1    MS. SEARLES:  I just wanted to take a step

2    back for just a quick second to give a better

3    understanding of something for your Honor.

4    Q    When did you first start working for the Guo

5    Family?

6    A    I started working for Guo Family from 2009 when I

7    was in Beijing.  I came back from Europe.  I finished my

8    university, and I came back to Beijing, start working for the

9    Guo Family.

10   Q    And when you say Guo Family, you mean more than

11   Mr. Kwok's immediate family; correct?

12   A    Correct.  Guo Family, what I learned, there are

13   more than 100 people, and Mr. Kwok, Miles Kwok, he is number

14   seven son of the whole family.  He has more elder brother,

15   and he has his parents.  He has his niece, nephews, and

16   sister-in-law, which right now he has number five and number

17   six brother, and they are still in jail.  They are arrested

18   and put in jail by Chinese Communist Party, and a lot of his

19   family member, including his son, his daughter, niece,

20   nephew, and his sister-in-law, brothers, they were all

21   threatened, kidnapped, and put in jail without any reason

22   until now, including all of his, like, long-term employee,

23   just like me.

24   Q    And this Guo Family that you work for, they are

25   located in multiple places around the world including China,

Lisa A. Casey - Official Court Reporter

49

## Wang - for Plaintiff - Cross by Searles

1    including the individuals you were just speaking about?

2         A    Correct.  They live in china, Mainland China, and

3    they do, and live in, like Hong Kong, like Europe, like

4    America.  Worldwide.

5         Q    And when did you move to New York to start working

6    for the Guo Family?

7         A    That was a date I never forget.  That was April

8    23rd, 2015.  I came to New York and U.S.  I never be able to

9    go back to China and see my family, and see my son.  When I

10   was left -- when I left China, then my son is 1.5, is one

11   years old, five months.  Now he is going to be, like, six

12   years old, and he is going to be, go to the school.  And my

13   family, my husband and my son, stopped talking with me since

14   2017, which is for now more than 16 months, I heard nothing

15   from them, I received nothing from them.

16        Chinese Communist Party, they forged a lot of my

17   things they forged my voice, my tape, my documents.  They

18   forged all my personal information.  They threaten my

19   husband.  They detain my husband, interrogating my husband.

20   They told my husband I betray my country, I betray my family,

21   I abandon my son and my family, which I never agree.  So my

22   husband stopped talking with me since the end of 2017, and my

23   son stopped talking and seeing me by WhatsApp, by WeChat, by

24   video, more than 16 months until now.

25        I came here because of two reasons.  First, I'm a

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 331    Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 51 of    RECEIVED NYSCEF: 05/08/2019
126

50

**Wang - for Plaintiff - Cross by Searles**

1  loyal person.  My husband is my first boyfriend.  I meet him

2  in college, and I went to school in France with him, and we

3  studied together.  We get married, and I never have a second

4  boyfriend.  I never have second husband at all.  I told him

5  many times, I'm not leaving you.  I'm just in the situation I

6  cannot control.  But Chinese Communist Party, they continue

7  to threaten him and his whole family, and they force my

8  husband divorce me.

9          This is the third time they are trying.  Last

10  month, my husband lawyer contacted me via my elder brother,

11  because my husband stop talking to me like more than like 16

12  months.  My younger brother told me, Sister, they want to

13  divorce you, and they need you appear in the court in China.

14  I say, It's not possible, because Chinese Communist Party is

15  looking for me.  I cannot go back to China.

16          Then they come back, say that, Sister they want to

17  you make a video with your passport and your, like,

18  statement, saying, Okay, I'm willing to divorce with my

19  husband.  I told my younger brother, it's not going to happen

20  like this way, because Chinese Communist Party, they already

21  forged a lot of my video and my voice.  If I ever made this

22  video, and saying in front of camera, I'm willing to divorce

23  my husband, and one day -- my son is six years old, now.  He

24  is going to be bigger, and he is going to be adult, and that

25  video will be forged and used by Chinese Communist Party

**Wang - for Plaintiff - Cross by Searles**

1   again, again, again, in the words.  I cannot, one day, my son

2   standing in front of me and ask me, Mom, it was you gave up

3   me, and abandon me.

4                    THE COURT:  Okay.  That's enough.

5                    THE WITNESS:  Sorry.

6                    THE COURT:  That's not responsive to the

7        question.

8                    THE WITNESS:  Sorry, sorry.  Sorry.  Sorry,

9        your Honor.

10   Q    Okay.  We'll change track just a little bit; okay?

11        So you have said you have been here since 2015 in

12   New York City, working for the Guo Family?

13   A    Correct.  No.  I work for Guo Family from 2009, and

14   since April 23rd, 2015 I came to America, continue work for

15   Guo Family, and Mr. Kwok himself.

16   Q    And currently you are president of Golden Spring

17   New York; correct?

18   A    Yes.

19   Q    And what does Golden Spring New York do for the Guo

20   Family?

21   A    Golden Spring New York came back to life since I

22   took over, and that was in the beginning of 2018.  Before

23   that, Golden Spring New York employee either left, like

24   quitted, like disappeared.  So there's lots of like leftover

25   issue I have to handle, and since I start to work for Golden

52

### Wang - for Plaintiff - Cross by Searles

1   Spring New York, I make, or I define, I define Golden Spring

2   New York as Guo Family family office, so I start to collect

3   everything and operate.

4       Q    So among your responsibilities, you collect

5   documents and operate the entity?

6       A    Correct.   Yeah.

7       Q    What are some of your other responsibilities for

8   the Guo Family?

9       A    Sorry.   What is your question?

10      Q    What are some of your other responsibilities for

11  Golden Spring, for the Guo Family, in your role as president?

12      A    Other responsibility, including like build a team;

13  and including, like, help all the litigation; help to collect

14  the documents and collect information; and help to do, like,

15  daily operation, every day.

16      Q    So when you say daily operation, do you mean making

17  sure the bills are paid on time, making sure that everybody

18  else knows what they are supposed to be doing?

19      A    Correct.   Because a lot of, like, because of my

20  previously colleague, as I said, they just disappeared, gone,

21  so a lot of, like, outstanding questions, bills, issues, that

22  when I came in, I start to work for Golden Spring, it's

23  almost everything back to the track, so I can see, and I'm

24  proud of that.

25      Q    You have testified here this morning quite a bit

53

### Wang - for Plaintiff - Cross by Searles

1   about this idea of personal knowledge, and I believe the term

2   you used was gathered knowledge.  Is there a difference in

3   your mind between those two?

4          THE COURT:  I understand the difference.

5          MS. SEARLES:  Okay.

6      Q    I think you might have it in front of you, if you

7   need to reference it.  It is Exhibit 34, the affidavit which

8   is not in evidence.

9          Prior to submitting this affidavit before the

10  Court, did you gather the underlying documents that were part

11  of the exhibits?

12     A    Correct.  All the exhibits, they are all part of my

13  gathered documents.

14     Q    Did you review the documents, look at them, read

15  them, before you submitted that affidavit?

16     A    I didn't review all of them, because first I gather

17  a lot of documents.  Second, as I said, my third language is

18  English, so if you listen to my speaking, maybe just, like, I

19  speak not bad English, but when you have me read all of this,

20  like, very legal or official documents, and I could not

21  understand them, like, very quickly, I have to look at my

22  dictionary and try to figure out what they are talking.

23     Q    Did you speak with others about those documents,

24  others within the Golden Spring or Guo Family organizations,

25  about those documents before you submitted your affidavit?

54

**Wang - for Plaintiff - Cross by Searles**

1    A    I collect these documents from them.

2    Q    And you spoke with others about those documents?

3         MR. MOSS:  Objection.  Leading.

4    A    Yes.

5         MS. SEARLES:  She's not my witness.

6         THE COURT:  It's an adverse witness.

7         Look, what I'm understanding is that this

8    witness has no personal knowledge of anything.  She has

9    collected a lot of information, some, most, or all of

10   which she understood, and the affidavit that she signed

11   is based on her understanding, as limited by her

12   language issues, of what lawyers put in front of her to

13   sign.  Is there anything else I need to know about her

14   testimony?

15   Q    I would just direct you to the first paragraph on

16   there, speaking about the personal knowledge issue.  Isn't it

17   correct that that paragraph does not actually say that it's

18   based on personal knowledge?

19   A    You mean --

20   Q    The first paragraph of your affidavit.

21   A    The first paragraph.

22   Q    Yes.  The term, Based on my personal knowledge,

23   does not exist in that document; correct?

24        THE COURT:  Okay.

25   A    Correct.  Sorry.

Lisa A. Casey - Official Court Reporter

**Wang - for Plaintiff - Cross by Searles**

```
 1              THE WITNESS:  Sorry.  Sorry, sir.

 2              MS. SEARLES:  I'm switching topics now, your

 3      Honor.  Just so that we are clear.

 4      Q    Has the apartment that's at issue here in this

 5  hearing, has that been sold?

 6      A    No.

 7      Q    To your knowledge, is it even on the market right

 8  now?

 9      A    Correct.  I have this personal knowledge.

10      Q    And this knowledge, meaning it is or isn't on the

11  market?

12      A    It's not on the market at all.

13              MS. SEARLES:  I think that's it, your Honor.

14              MR. MOSS:  One more question, your Honor?

15              THE COURT:  Yes.

16  RE-DIRECT EXAMINATION

17  BY MR. MOSS:

18      Q    When was the apartment taken off the market?

19      A    About one month.  Around, like, one month off the

20  market, from now.  About, like, one month ago.

21              MR. MOSS:  I have nothing else.

22              THE COURT:  Okay.  You may step down.

23              (Whereupon, the witness was excused from the

24      witness stand.)

25              THE COURT:  Next witness.
```

Lisa A. Casey - Official Court Reporter

56

**Wang - for Plaintiff - Re-Direct by Moss**

1              (Whereupon, there was a pause in the

2        proceedings.)

3              THE COURT:  When you get the witness, you will

4        let me know.

5              (Whereupon, a recess was taken.)

6              *     *     *     *     *     *

7    M I C H A E L   U L L M A N, having been duly sworn by the

8    clerk, was examined and testified as follows:

9              THE CLERK:  Please state your full name and

10       address, in a loud clear voice.

11             THE WITNESS:  Michael Ullman, 340 West 57th

12       Street, apartment 8G, New York, New York 10019.

13             THE CLERK:  Have a seat.

14   DIRECT EXAMINATION

15   BY MR. SARNOFF:

16       Q    Good morning, Mr. Ullman.  We are a little bit

17   behind, so I'm going try to move this along.

18             Are you employed, sir?

19       A    I am.

20       Q    By who?

21       A    The Sherry-Netherland.

22       Q    What is your position there?

23       A    My title is Executive Vice President, Chief

24   Operating Officer.

25       Q    Is that effectively akin to the general manager?

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 58 of
126

57

**Ullman - for Plaintiff - Direct by Sarnoff**

1   A   Yes, it is.

2   Q   How long have you held that position?

3   A   At the Sherry?

4   Q   Yes.

5   A   Nine years.

6   Q   So about since 2010?

7   A   That's correct.

8   Q   How long have you been in the hotel management

9   business?

10   A   A little over 40 years.

11   Q   As your general manager role, COO general manager

12   role, are you involved in the new purchase application

13   process?

14   A   I'm involved in putting together the documentation

15   to make sure that it's all there before I ship it off to the

16   board members.

17   Q   And roughly how many apartment transactions,

18   purchases and sales have you been involved with in your

19   tenure at the Sherry-Netherland?

20   A   60.

21   Q   Does the Sherry-Netherland have a Board of

22   Directors?

23   A   Yes, it does.

24   Q   And does have a president or a chairperson?

25   A   It has president.

Lisa A. Casey - Official Court Reporter

58

### Ullman - for Plaintiff - Direct by Sarnoff

1    Q    And who is the president?

2    A    Michael Horvitz.

3    Q    And has he been the president since Mr. Kwok's

4 purchase in 2015?

5    A    Yes.

6    Q    And what is Mr. Horvitz's background, generally?

7    A    He's a former partner for Jones Day, as an

8 attorney.  He is on the -- a trustee of the Frick.  He is, I

9 think, a trustee of the Cleveland Clinic, and a former

10 chairman of IMG International Management.

11    Q    Is the board of the Sherry-Netherland responsible

12 for reviewing and approving apartment purchase applications?

13    A    Yes.

14    Q    Could you generally describe the approval process?

15 Not in amazing detail, but just to give the Court an idea.

16    A    Yes.  So there's a selling and purchasing broker

17 that, they bring the client.  The property is listed.  They

18 bring the client.  They agree on a price and on terms.  They

19 review the minutes of the board meetings and the condition of

20 the building.  Then they put together -- they come to us to

21 ask for a package, what's required in the package.  They put

22 that board package together, and when it's all put together,

23 they submit it to us.

24    Q    And what type of information is included in --

25         THE COURT:  I know all about this.  I was the

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM

NYSCEF DOC. NO. 331

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 60 of
126

59

**Ullman - for Plaintiff - Direct by Sarnoff**

1      president of a New York City co-op for 12 years.

2              MR. SARNOFF:  Duly noted.

3              THE COURT:  We can skip it.

4      Q    Do you know who Kwok Ho Wan is, or Miles Kwok?

5      A    Yes.

6      Q    Did the there come a time when he applied to

7  purchase an apartment in the Sherry-Netherland?

8      A    Yes.

9      Q    You do you recall when, about, that was?

10     A    It was early 2015.  I believe it was February of

11 2015.

12     Q    Did Mr. Kwok go through the, sort of, typical

13 application process?

14     A    Yes.

15     Q    Did he provide financial information to the board?

16     A    Yes.

17     Q    Do you recall, basically, what type of financial

18 information he provided?

19     A    He provided, the first time -- the first time that

20 he provided information -- which I only saw afterwards.  It

21 was confidential.  It was kept in a folder and I gave it to

22 the board president, but it was documentation, I believe that

23 was in Renminbi and that was mainly in Chinese, and so that

24 was the first document that was sent.  The board met on it

25 and subsequently asked for more detailed financial

Lisa A. Casey - Official Court Reporter

60

**Ullman - for Plaintiff - Direct by Sarnoff**

1  information in U.S. dollars.

2        Q    When you submitted that application information,

3  did you understand that he was purporting to own or control

4  that information?

5              MR. HARMON:  Objection, your Honor.  His

6        understanding is not relevant.  The documents speak for

7        themselves.  They are all in evidence.

8              THE COURT:  That's sustained.

9        Q    Did Mr. Kwok show the Sherry-Netherland any

10  information about any assets he purported to hold in the

11  United States?

12        A    No.

13        Q    Did he provide the Sherry-Netherland with any

14  assets that he purported to hold in his own name?

15        A    No.

16        Q    Do you recall any other prospective

17  Sherry-Netherland purchaser, both not showing assets in their

18  own name, and not showing assets in the United States?

19        A    No.

20              MR. HARMON:  Objection, your Honor.

21        Q    So is it fair to say that --

22              THE COURT:  There's an objection.

23              What relevance is that to anything?

24              MR. SARNOFF:  Uniqueness of his application,

25        and whether or not the Sherry-Netherland found it

Lisa A. Casey - Official Court Reporter

61

**Ullman - for Plaintiff - Direct by Sarnoff**

1          necessary, in the light of all --

2                    THE COURT:  You can ask him what the

3     Sherry-Netherland, did but they approved the purchase.

4                    MR. SARNOFF:  Okay.

5          Q     Excluding Mr. Kwok, during your tenure at the

6     Sherry-Netherland, has any tenant used a double LLC structure

7     to buy an apartment?

8          A     No.

9          Q     And excusing Mr. Kwok, had any tenant ever used a

10    foreign LLC structure to buy an apartment?

11         A     No.

12         Q     You mentioned a minute ago that he didn't show any

13    U.S. assets.  Did the Sherry-Netherland impose any particular

14    conditions or safeguards on his purchase as a result?

15         A     Yes.

16         Q     Do you recall what those safeguards were?

17         A·    Yes.  There was a security deposit covering a

18    five-year period, for estimated maintenance charges.

19         Q     Do you remember what the amount of the security

20    deposit was?

21      ·  A     It was approximately ·$3.3 million.

22         Q     Do you recall whether Mr. Kwok was also asked to

23    sign an occupancy agreement?

24         A     Yes.

25         Q     Was he also asked to personally guarantee the

Lisa A. Casey - Official Court Reporter

62

### Ullman - for Plaintiff - Direct by Sarnoff

1    proprietary lease?

2        A    Yes.

3        Q    How was the size of the secure deposit derived?

4        A    It was derived by the board having a meeting, and I

5    believe it was actually --

6            MR. HARMON:  Objection, your Honor.  Unless he

7        has personal knowledge, he's just testifying about what

8        the board did.  And relevance.

9            THE COURT:  Look, let's not nitpick.  I'm not

10        even sure what the relevance of any of this testimony

11        is.

12            Go ahead.  Answer it.

13        A    It was -- I sat in the board meeting where, I

14    believe it was actually prior to that, the law firm that was

15    dealing with Mr. Kwok's purchase one of the firms, I think,

16    offered that, and I believe Mr. Kwok offered that, and the

17    board had discussed what the right amount would be, and then

18    five years, they thought, was adequate to cover, since there

19    were no assets in the U.S., that if Mr. Kwok didn't pay the

20    maintenance, we had adequate coverage to protect ourselves.

21        Q    Before changing gears, do you recall anything about

22    the timeline of Mr. Kwok's application and closing?

23        A    Yes.

24        Q    Did Mr. Kwok put any time constraints on that

25    process?

Lisa A. Casey - Official Court Reporter

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 64 of
126

63

**Ullman - for Plaintiff - Direct by Sarnoff**

1    A    Yes.

2    Q    Could you tell us about that?

3    A    I believe it began in February, and it had to close

4   by March 6th.  Having gone back in my notes, I think it was

5   March 6th that it had to close by, or he could cancel a

6   contract, and I think -- it was my understanding, from what I

7   remember hearing, it was for feng shui reasons, that it had

8   to close.

9    Q    Did that type of timing -- was that type of typing

10  typical of applications at the Sherry-Netherland?

11           MR. HARMON:  Objection, your Honor.  What is

12       this relevant to?

13           THE COURT:  It's not relevant to anything, but

14       go ahead.  It's not typical.  Okay.  Next.

15    Q    Had any prospective purchaser asked to close in

16  that short a time?

17    A    No.

18    Q    After Mr. Kwok closed and moved in, did there come

19  a time what he sought to draw down on his security deposit?

20    A    Yes.

21    Q    Do you recall when that was, approximately?

22    A    Within a year of closing,

23    Q    Do you recall, roughly, of the 3 million, I think

24  you said $3.3 million security deposit, how much he wanted to

25  draw down?

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37
126

64

## Ullman - for Plaintiff - Direct by Sarnoff

1      A      I believe it was approximately 2.3 million.

2      Q      And did the Sherry-Netherland accede to that

3    request, to your knowledge?

4      A      No.

5      Q      Has any other purchaser of a Sherry-Netherland

6    apartment, shortly after purchasing, sought to withdraw their

7    security deposit?

8      A      No.

9      Q      Did there come a time whether Mr. Kwok, or someone

10   acting on his behalf, inquired about transferring the title

11   of the apartment?

12     A      Yes.

13     Q      What do you recall about that?

14     A      I recall first that his broker, Kathy Sloane, had

15   approached me and said, can they transfer the apartment to

16   his son, Mileson Kwok's, name.

17     Q      Was it in his name, or was it in a trust for his

18   name?

19     A      At the time they didn't say to trust.  They just

20   said they wanted to transfer it to Mileson.

21     Q      And Mileson is Mr. Kwok's son; correct?

22     A      Correct.

23     Q      Did there come a time when you learned that the

24   request was to transfer to a trust for Mr. Kwok's son?

25     A      Yes, when I received a letter from an attorney in

Lisa A. Casey - Official Court Reporter

65

### Ullman - for Plaintiff - Direct by Sarnoff

1    England, I believe a Ms. Mannis, I believe, asking questions

2    on how they could do the transfer.

3        Q    And the request was how to set up a transfer from

4    Mr. Kwok to Mr. Kwok's son?

5        A    Correct.

6        Q    A trust for Mr. Kwok's son?

7        A    Yes.  That's correct.

8        Q    And did the Sherry-Netherland respond to that

9    request?

10        A    Yes.

11        Q    How did the Sherry-Netherland respond?

12        A    We told them how it could be done, that his son

13    would have to go through the application process and provide

14    all of the documentation that he had provided, that Mr. Kwok

15    had provided, when he purchased the apartment, and they could

16    go through that process.

17        Q    So that was a re-board approval process?

18        A    That's correct.

19        Q    And that was consistent with the board's standard

20    practice in situations such as that?

21        A    Yes.

22        Q    Did Mr. Kwok every end up submitting a transfer

23    application?

24        A    No.

25        Q    Did he or his representatives make any other

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 67 of
126

66

**Ullman - for Plaintiff - Direct by Sarnoff**

1    requests about the apartment in the period that followed?

2        A    Not that I recall.

3        Q    Well, did there come a time when Mr. Kwok inquired

4    about making his son the contact person?

5        A    Yes.

6            MR. HARMON:  Objection.  Leading.  He answered

7        the question that he made no other requests.

8            THE COURT:  I'm sorry?

9            MR. HARMON:  Leading.  The witness has already

10       answered that Mr. Kwok made no other requests.  Now he

11       is leading the witness into a different answer.

12           MR. SARNOFF:  I can show the witness his

13       deposition testimony to refresh his recollection, if he

14       would like.

15           MR. HARMON:  Deposition testimony isn't the

16       answer to what he is asking.

17           THE COURT:  I'll allow this.  Go ahead.

18       Q    So what do you recall the request was?

19       A    I believe I got a call from one of Mr. Kwok's

20   representatives asking whether they could change the contact

21   person, and could they make it his son, as the contact

22   person.

23       Q    And this was on the heels of asking to transfer

24   title to his son, in a trust for his son; correct?

25       A    Yes.

67

**Ullman - for Plaintiff - Direct by Sarnoff**

1           THE COURT:  What do you mean by contact

2     person?

3           .       THE WITNESS:  In the apartment, they had

4     contact people.  They had administrative people that, if

5     we needed to get in touch with them, that's who we

6     should go through.  There were a couple of different

7     people, and then they asked if they could change it to

8     his son.

9           THE COURT:  Okay.

10    Q    Did you have a view as to what Mr. Kwok may have

11    been trying to accomplish in doing that?

12          MR. HARMON:  Objection, your Honor.  What his

13    view is, again, is irrelevant.

14          THE COURT:  I agree.  That's sustained.

15    Q    When Mr. Kwok purchased the apartment, did he and

16    Genever execute any agreements with the building?

17    A    Other than the occupancy agreement and the security

18    deposit and the -- occupancy, security and personal

19    guarantee, those are the three documents, plus signing the

20    proprietary lease.

21    Q    And the Sherry-Netherland signed the proprietary

22    lease?

23    A    That's correct.

24    Q    And Mr. Kwok personally signed the occupancy

25    agreement; correct?

Lisa A. Casey - Official Court Reporter

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 69 of
126

### Ullman - for Plaintiff - Direct by Sarnoff

1    A    I believe that's correct; yes.

2    Q    And that was an agreement with the

3    Sherry-Netherland, and that document was in English, and

4    Mr. Kwok signed it; correct?

5    A    That's correct.

6    Q    Do you recall what if anything the proprietary

7    lease and the occupancy agreement stated about what you could

8    do, and if you could pledge your apartment?

9          MR. HARMON:  Objection, your Honor.  Whether

10         or not Mr. Kwok's actions violate the proprietary lease

11         is not the subject of this action.  I don't understand

12         the relevance.

13         THE COURT:  I'm sorry?  Mr. Kwok purchased the

14         apartment in his own name.

15         MR. HARMON:  Yes.

16         THE COURT:  He signed the proprietary lease.

17         MR. HARMON:  Yes.

18         THE COURT:  He signed the occupancy agreement.

19         He signed the personal guarantee.  The rules of the

20         Sherry-Netherland are that you can't pledge the

21         apartment.  Mr. Kwok pledged the apartment.  Did you

22         find out about that?

23         THE WITNESS:  Later, yes.

24         THE COURT:  Okay.

25    Q    How did you learn about that?

Lisa A. Casey - Official Court Reporter

69

### Ullman - for Plaintiff - Direct by Sarnoff

1      A      When we were served the papers from O'Melveny is

2  the first that we knew that, that we read that the apartment

3  had been pledged.

4      Q      And the papers that you saw were the papers that

5  Mr. Kwok had signed, that his lawyers had sent in, too;

6  right?

7      A      Yes.

8      Q      Can you direct your attention to PX 33?

9              (Whereupon, an exhibit was displayed to the

10  Court.)

11      A      Okay.

12              MR. HARMON:  I don't have a PX 33 in my book.

13  That was provided by your firm?

14              MR. SARNOFF:  It's your brief.

15              (Whereupon, a document was handed to the

16  witness.)

17      Q      I direct your attention to page four, please.

18              MR. HARMON:  Your Honor, the brief is not in

19      evidence.  He can't read from a document that's not in

20      evidence, and he can't authenticate this document.

21              THE COURT:  I don't have Exhibit 33.

22              MR. HOPLAMAZIAN:  Your Honor, we have a copy

23      for you, as well.

24              (Whereupon, a document was handed to the

25      Court.)

Lisa A. Casey - Official Court Reporter

70

**Ullman - for Plaintiff - Direct by Sarnoff**

1          THE COURT: We are not going to have questions

2     about a memorandum of law. Let's move on.

3          MR. SARNOFF: Okay.

4   Q   Was it your understanding that in this case

5 Mr. Kwok, through his brief, was representing to the Court

6 that the apartment was pledged?

7          MR. HARMON: Objection, your Honor. On

8     multiple grounds.

9          THE COURT: Sustained. Sustained, sustained.

10          MR. SARNOFF: May I address that?

11          THE COURT: Look, we have already established

12     that Mr. Kwok purchased the apartment and, in violation

13     of his proprietary lease, he pledged the apartment, and

14     we have established that this witness learned about that

15     at a subsequent period of time, and it has been

16     stipulated that, at least as of a month ago, the

17     apartment is no longer pledged.

18   Q   Did you notify Mr. Kwok that his apartment was

19 pledged in violation of the Sherry-Netherland agreement?

20   A   Yes.

21          THE COURT: When did you do that?

22          THE WITNESS: Shortly after we found out that

23     it had been pledged.

24          THE COURT: Okay. And when was that?

25          THE WITNESS: I'm guessing now, around --

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 72 of
126

71

### Ullman - for Plaintiff - Direct by Sarnoff

1    THE COURT:  Don't guess.  Don't guess.

2    THE WITNESS:  -- mid 2017.

3    THE COURT:  2017 is your answer?

4    THE WITNESS:  Yes.

5    THE COURT:  Okay.

6    Q    Did you get a response from Mr. Kwok or Mr. Kwok's

7    counsel --

8    A    Yes.

9    Q    -- with respect to the letter?

10    And how did they respond?

11    MR. HARMON:  Objection, your Honor.  If it's

12    in writing, then document has to be offered, and I would

13    argue that the whole --

14    THE COURT:  I'm sorry?

15    MR. HARMON:  If we responded in writing, then

16    we ought to have the exhibit, the document, and not his

17    testimony.  I would object to the document, because how

18    he responded to the Sherry-Netherland about this subject

19    is just not relevant to the subject that we are here on

20    today.

21    MR. SARNOFF:  I'll show you the exhibit, sir.

22    It's exhibit 35.

23    (Whereupon, a document was handed to the

24    witness.)

25    MR. HARMON:  Your Honor --

Lisa A. Casey - Official Court Reporter

72

### Ullman - for Plaintiff - Direct by Sarnoff

1              MR. SARNOFF:  I would like to mark Exhibit 35.

2       Q    Is that a copy of the written response that the

3  Sherry-Netherland, and that you, particularly, received in

4  response to your letter to the Sherry-Netherland, advising

5  them about the inappropriate pledge?

6       A    Yes.

7       Q    What does the letter say about whether or not --.

8              THE COURT:  The letter --

9              MR. HARMON:  Objection.

10             THE COURT:  Are you moving this into evidence?

11             MR. SARNOFF:  Yes.

12             THE COURT:  Okay.  This is received.  It

13  speaks for itself.

14             MR. SARNOFF:  Okay.

15      Q    And it was your understanding that the

16  Sherry-Netherland was being told by Mr. Kwok's counsel --

17             THE COURT:  I can read.

18             MR. HARMON:  Objection.

19             THE COURT:  I can read the letter.

20             MR. SARNOFF:  Okay.  Fair enough.

21             THE COURT:  It's in evidence.

22             MR. SARNOFF:  Okay.

23      Q    Are you able to reconcile the Sherry-Netherland's

24  response, of Mr. Kwok's counsel to the Sherry-Netherland,

25  with the position that Mr. Kwok's brief and the Wang

Lisa A. Casey - Official Court Reporter

73

**Ullman - for Plaintiff - Direct by Sarnoff**

1    affidavit took with respect --

2                    THE COURT:  That's sustained.  That's

3        sustained.

4                    MR. HARMON:   Thank you.

5        Q     Let me just wrap up quickly.  Do you have an ax to

6    grind with Mr. Kwok?

7        A     Absolutely not.

8        Q     Didn't he sue you?

9        A     He did.

10        Q     Is that of any impact on your testimony?

11        A     Absolutely not.

12        Q     Was your purpose coming here today to try to help

13    PAX LP to win its motion?

14        A     No.

15        Q     Did you volunteer to testify here, or were you

16    subpoenaed?

17        A     Subpoenaed.

18        Q     Is that the same with your deposition?

19        A     Yes.

20        Q     Did you and I communicate in advance about your

21    testimony?

22        A     No.

23        Q     Did you tell the truth today?

24        A     Yes.

25        Q     Let me just see if I can summarize your testimony

Lisa A. Casey - Official Court Reporter

74

**Ullman - for Plaintiff - Direct by Sarnoff**

1    briefly.  I have one ultimate question I would like to ask

2    you, and can you please tell me if I've got anything wrong.

3    You testified he didn't show any U.S. assets or assets in his

4    own name; correct?

5                    MR. HARMON:  Objection, your Honor.  This is

6           just summarizing the testimony that's already in the

7           record.  It's leading, it's --

8                    THE COURT:  That's sustained.  I've heard his

9           testimony.

10                   MR. SARNOFF:  Okay.

11                   THE COURT:  I don't need it summarized.  Do

12          you have any other questions.

13   Q    Did you believe Mr. Kwok's behavior --

14                   MR. HARMON:  Objection.

15   Q    -- with respect to his apartment was typical?

16                   MR. HARMON:  Objection.

17                   THE COURT:  That's sustained as well.

18   Q    Did you ever form a view about what Mr. Kwok may

19   have been trying to accomplish with the apartment?

20                   MR. HARMON:  Objection.

21                   THE COURT:  That's sustained as well.

22   Q    Thank you, Mr. Ullman.

23                   MR. SARNOFF:  I'll reserve any questions for

24          re-direct.

25

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 76 of
126

75

**Ullman - for Plaintiff - Cross by Harmon**

1    CROSS EXAMINATION

2    BY MR. HARMON:

3        Q    Good afternoon Mr. Ullman.

4        A    Good afternoon.

5        Q    I'm Mark Harmon.  We haven't met before.  I

6    represent Mr. Kwok.

7            Mr. Ullman, would you say that Mr. Kwok's English

8    is not very good?

9        A    I -- yes.

10       Q    And especially it wasn't good several years ago.

11   It may have gotten better, but it certainly --

12       A    It's gotten a lot better.

13           THE COURT OFFICER:  Allow the question to be

14       completed.

15           THE WITNESS:  Yes.

16       Q    It has gotten better?

17       A    Yes, it has.

18       Q    He was very difficult to understand in 2015?

19       A    Yes.

20       Q    And you don't speak Chinese; do you?

21       A    I do not, unfortunately.

22       Q    You are aware, Mr. Ullman, that there is an order

23   that the Court has entered that requires disclosure in the

24   event that a contract of sale is to be signed for the sale of

25   the apartment; is that correct?

Lisa A. Casey - Official Court Reporter

76

### Ullman - for Plaintiff - Cross by Harmon

1      A      That's correct.

2      Q      You were given a copy of that order by the

3   plaintiffs here; is that correct?

4      A      That's correct.

5      Q      So if you knew, as the Chief Operating Officer of

6   the Sherry-Netherland, that Mr. Kwok or Genever had entered

7   into a contract of sale, would you so advise the Court?

8      A      Yes.

9      Q      Because you would want to comply with that?

10     A      Absolutely.

11     Q      Okay.  Now you also said that you got served papers

12  that indicated to you that Mr. Kwok had placed a pledge on

13  the apartment; is that right?

14     A      That's correct.

15     Q      And isn't it true, Mr. Ullman, that those papers

16  were delivered to you before the order was entered that

17  required Mr. Kwok to give notice?

18     A      I don't know the answer to that question.

19            MR. HARMON:  Your Honor, this will be a

20      defendant's exhibit.  Would you like us to start with A,

21      or Defendant's 1?  I have them, but I just need to fill

22      in the exhibit number.

23            THE COURT:  Exhibit 1?

24            MR. HARMON:  Defendant's, Exhibit A or 1?

25      It's not pre-marked.

Lisa A. Casey - Official Court Reporter

**Ullman - for Plaintiff - Cross by Harmon**

1          I'm just asking your Honor for your preference

2     in how we --

3          THE COURT:  Did you hand up your exhibit book?

4          MR. HARMON:  No, your Honor.  We have one

5     exhibit book, and then these are just for cross.  This

6     is --

7          THE COURT:  I'm sorry?

8          MR. HARMON:  No, your Honor.

9          THE COURT:  Okay.  So then I need a copy of

10    the exhibit.

11         MR. HARMON:  I'm going to give it to you.

12         THE COURT:  Give it to the court officer.

13         MR. HARMON:  We'll make it Defendant's A.

14         (Whereupon, a document was handed to the

15    Court.)

16         MR. HARMON:  Your Honor, may I hand a copy to

17    the witness?

18         THE COURT:  Yes.

19         MR. HARMON:  Thank you.

20         (Whereupon, a document was handed to the

21    witness.)

22    Q     Mr. Ullman, you have been handed what's been marked

23    for identification as Defendant's Exhibit A.  Can you tell us

24    what it is?

25    A     It's an email from my assistant to Ira Gilbert,

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM INDEX NO. 652077/2017

NYSCEF DOC. NO. 331    Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 79 of    RECEIVED NYSCEF: 05/08/2019
126

### Ullman - for Plaintiff - Cross by Harmon

1    copying me, regarding --

2         Q    Well, don't tell me what it's regarding.  Is there

3    an attachment to the email?

4         A    Yes.

5         Q    Is that attachment a copy of a letter that you

6    signed?

7         A    That's my signature.  Yes.

8         Q    In your official capacity as Executive Vice

9    President and Chief Operating Officer of the

10   Sherry-Netherland; correct?

11        A    Yes.

12             MR. HARMON:  Your Honor, I offer it as

13        Defendant's Exhibit A in evidence.

14             THE COURT:  Okay.  It's received.

15             MR. SARNOFF:  No objection.

16        Q    Now, Mr. Ullman, would you like to take a look to

17   your first and second paragraph of the letter?  That's page

18   two of the exhibit.

19        A    Yes.

20        Q    Do you see that the corporation was provided with a

21   copy of the order on June 29, 2018?

22        A    Yes.

23        Q    And approximately two months before that is when

24   the plaintiffs supplied copies of the documents to you about

25   their lawsuit with Mr. Kwok; is that correct?

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM

NYSCEF DOC. NO. 331

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 80 of
126

### Ullman - for Plaintiff - Cross by Harmon

1      A     Yes.

2      Q     So the answer to my earlier question was whether

3  you received the information about the pledge before the

4  order was entered, and the answer is yes.

5      A     Yes.

6      Q     And you received it from the plaintiffs, is that

7  correct?  From the plaintiffs in this case?

8      A     Yes.

9      Q     I know you gave a fair amount of testimony about

10  the putting together of the documents, amassing the

11  documents.  I presume whatever financial information you

12  received from or on behalf of Mr. Kwok, you turned over to

13  the board.

14      A     That's correct.

15      Q     Is it fair to say that there was no information

16  that was given to you that you didn't give to the board?

17      A     That's correct.

18      Q     And then the board reviewed the information?

19      A     That's correct.

20      Q     And the board then voted on whether or not to

21  accept Mr. Kwok as a apartment owner at the

22  Sherry-Netherland?

23      A     That's correct.

24      Q     And the board voted the first time that the

25  information was inadequate; is that right?

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 81 of
126

### Ullman - for Plaintiff - Cross by Harmon

1    A    That's correct.

2    Q    And asked for additional information?

3    A    That's correct.

4    Q    And additional information was provided?

5    A    That's correct.

6    Q    The board received it?

7    A    Yes.

8    Q    The board voted?

9    A    Yes.

10   Q    The board approved?

11   A    Yes.

12   Q    The board knew there was a limited time period that

13   Mr. Kwok was giving in order to approve; correct?

14   A    Yes.

15   Q    And they voted to approve him as a tenant?

16   A    Yes.

17   Q    So they knew he had no U.S. assets; correct?

18   A    Yes.

19   Q    They knew he had no assets in his own name;

20   correct?

21   A    Yes.

22   Q    And they approved him as a cooperative owner?

23   A    Yes.

24   Q    They required a security deposit?

25   A    Yes.

81

**Ullman - for Plaintiff - Cross by Harmon**

1    Q    Mr. Kwok provided the security deposit?

2    A    Yes.

3    Q    As of this day, how much of a security deposit has

4    been used to pay his maintenance charges?

5    A    None.

6    Q    So the person from whom Mr. Kwok purchased the

7    apartment, do you know in what form that apartment was held?

8    Do you know who the owner was?

9    A    Yes.

10    Q    And who was the owner?

11    A    It was Gilbert Haroche, and I believe it was in an

12    LLC.

13    Q    So the apartment was purchased from somebody who

14    held the apartment in an LLC; correct?

15    A    Yes.

16    Q    And Mr. Horvitz, in what capacity does he own his

17    apartment?  Doesn't he own this apartment through a trust?

18    A    I don't know the answer to that, offhand.

19    Q    There are many people in the Sherry who own their

20    apartment through an entity; is that correct?

21    A    Yes.

22    Q    And the Sherry knew that Mr. Kwok was buying the

23    apartment through an entity; correct?

24    A    Yes.

25    Q    And they approved it?

Lisa A. Casey - Official Court Reporter

82

**Ullman - for Plaintiff - Cross by Harmon**

1      A      Yes.

2      Q      Now, you said that there came a time when Mr. Kwok,

3  or someone on his behalf, inquired about transferring the

4  apartment to his son?

5      A      Yes.

6      Q      Okay.  And so that was an inquiry, How do we go

7  about doing that; is that correct?

8      A      Yes.

9      Q      And the Sherry-Netherland responded.  You told

10  Mr. Kwok how he should go about doing that, if he wanted to

11  do it; correct?

12      A      That's correct.

13      Q      And he didn't.

14      A      That's correct.

15      Q      So nothing ever came of it?

16      A      That's correct.

17      Q      And you said that at some time Mileson, that's

18  Mr. Kwok's son, wanted to be the contact person?

19      A      That's correct.

20      Q      Who is the contact person now?

21      A      The contact person that I generally use is Brenda.

22  Brenda Tsang, I think is her last name.

23      Q      Not Mr. Kwok?

24      A      No.

25      Q      Because Brenda speaks English well; correct?

Lisa A. Casey - Official Court Reporter

### Ullman - for Plaintiff - Cross by Harmon

1    A    Brenda speaks English well, and I've been

2    instructed that that's who manages the apartment, and if I

3    need to get in touch with someone, that's who I get in touch

4    with.

5    Q    And have you ever spoken to Mr. Kwok's son,

6    Mileson?

7    A    Only pleasantries.

8    ·Q    Only pleasantries.  And when you speak to him, how

9    is his English?

10    A    .Like I say, I haven't spoken to him at length.  His

11    English seemed to be fine.

12    Q    He lives in London; doesn't he?

13    A    It's my understanding.

14    Q    And his English seems to be fine?

15    A    I would say he is fluent in English.

16    Q    He's fluent.  Okay.

17        MR. HARMON:  Can I have a moment, your Honor?

18    I think that may be it.

19        (Whereupon, there was a pause in the

20    proceedings.)

21        MR. HARMON:  One more thing.

22    Q    One more thing.  Were you at the board meeting, the

23    second board meeting, where Mr. Kwok's purchase application

24    was approved?

25    A    I believe it was a telephonic board meeting and I

84

### Ullman - for Plaintiff - Cross by Harmon

1    was, yes.  I was on the phone call.

2         Q    And in that board meeting, did Mr. Horvitz make a

3    presentation about someone who made a personal reference to

4    support Mr. Kwok's application?

5         A    Yes.

6         Q    And that was an architect in Taiwan?

7         A    Either Taiwan or Hong Kong.  I don't remember.

8         Q    Somebody who was known to Mr. Horvitz?

9         A    Yes.  I believe that's correct.

10        Q    And that person vouched for Mr. Kwok?

11        A    Very highly.

12        Q    Very highly.  And among the other documents that

13   were submitted in connection with the approval process, there

14   were reference letters; weren't there?

15        A    Yes, there were.

16        Q    And one of the reference letters was submitted by

17   the former Prime Minister of the United Kingdom, Tony Blair;

18   is that right?

19        A    That's correct.

20        Q    Thank you.

21             MR. HARMON:  I have nothing else.

22   RE-DIRECT EXAMINATION

23   BY MR. SARNOFF:

24        Q    Mr. Horvitz, I just have two follow up questions.

25        A    No.  I'm not Mr. Horvitz.

Lisa A. Casey - Official Court Reporter

85

**Ullman - for Plaintiff - Re-Direct by Sarnoff**

1    Q    No.  Mr. Ullman.  Sorry.

2         THE COURT:  I'm sorry?

3         MR. SARNOFF:  I said Mr. Horvitz.  My error.

4    Q    Mr. Harmon asked you questions about whether other

5    purchasers used an LLC to buy their apartment.  Just to be

6    clear, no one has used a double LLC, and no one has used a

7    foreign LLC.  Is that fair?

8    A    That's fair.

9    Q    And Mr. Harmon asked you whether you understood

10   that you would receive, that the Sherry-Netherland would

11   receive notice if Mr. Kwok were to enter into a contract to

12   sell his apartment; is that correct?

13   A    Correct.

14   Q    But if Mr. Kwok transferred the ownership of the

15   foreign LLC that the ultimate owner, would the

16   Sherry-Netherland necessarily get notice of that?

17   A    We should get notice of it.

18   Q    But as it's set up now, if Mr. Kwok didn't tell

19   you, and went out and did that, would you get notice?

20        That wouldn't be something that happens through the

21   building; would it?

22   A    Correct.

23        THE COURT:  I don't understand.  An apartment

24        in the Sherry-Netherland can't transfer without approval

25        of the Sherry-Netherland board; correct.

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 87 of
126
RECEIVED NYSCEF: 05/08/2019

86

### Ullman - for Plaintiff - Re-Direct by Sarnoff

1              THE WITNESS:  That's correct.

2              THE COURT:  So if the owner of this apartment

3       sought to transfer ownership of this apartment, that

4       couldn't be accomplished without the approval of the

5       Sherry-Netherland.

6              THE WITNESS:  That's correct.

7              THE COURT:  So what was the response to the

8       last question?

9              THE WITNESS:  I...

10    Q    May I?

11    A    Yeah.  Go.

12    Q    The ownership structure is that the New York LLC

13   that owns the apartment is owned by a B.V.I LLC that owns the

14   New York apartment, that owns -- and Mr. Kwok is the ultimate

15   beneficial owner.

16            What I was asking was whether or not, if Mr. Kwok

17   transferred, to some other party, ownership of the B.V.I LLC,

18   the board wouldn't necessarily know it.  It wouldn't involve

19   a new purchase or sale agreement, and he could transfer the

20   LLC ownership to a third party, away from himself, and it

21   wouldn't be his any more, even though the Sherry-Netherland

22   board did not enter into a new purchase or sale contract for

23   the apartment.  That was the --

24            THE COURT:  I don't think that's the witness's

25       testimony.

Lisa A. Casey - Official Court Reporter

87

**Ullman - for Plaintiff - Re-Direct by Sarnoff**

1          MR. HARMON:  It's not.

2     A    Go back and ask me the question again.

3     Q    You would be involved if the LLC in New York were

4  to sell the property; correct?

5     A    If the LLC, which Mr. Kwok controls, sells the

6  apartment, there would be a purchase-sale.  Yes.

7     Q .  But if the apartment is not involved in a purchase

8  or sale, but the foreign LLC is involved in a transfer, it

9  wouldn't necessarily come to your attention; would it?

10    A    No.

11         THE COURT:  But it wouldn't be binding.  There

12    can be no transfer of an apartment.

13         THE WITNESS:  Well, legally --

14         THE COURT:  As far as you understand, absent

15    approval of the board of directors, no unit of the

16    Sherry-Netherland can be transferred to anybody.

17         THE WITNESS:  That's correct.

18         MR. HARMON:  Can I ask a few questions on

19    that?

20         THE COURT:  I think I understand this, really.

21    It's not that complicated.  Go ahead.  Ask your

22    questions.

23         MR. HARMON:  Thank you.  I will be really

24    quick .

25    Q    Mr. Ullman, when somebody buys an apartment at the

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 89 of
126

### Ullman - for Plaintiff - Re-Direct by Sarnoff

1   Sherry-Netherland, they are issued a stock certificate;

2   correct?

3       A    Yes.

4       Q    And the Sherry-Netherland keeps the records of who

5   the owner of that shock certificate is?

6       A    That's correct.

7       Q    And in order for that stock certificate to be

8   transferred to another name, to be re-registered, the

9   Sherry-Netherland has to approve that.

10      A    That's correct.

11      Q    So if somebody came in and presented you with a

12  stock certificate registered in somebody -- transferred to

13  somebody else, the Sherry-Netherland would reject that;

14  wouldn't it?

15      A    That's correct.

16      Q    And the Sherry-Netherland would not issue a

17  proprietary lease to that person; correct?

18      A    That's correct.

19      Q    So that the Sherry-Netherland, as far as you are

20  concerned, the owner is Genever, and Genever has the

21  proprietary lease, and that's the Sherry's position; correct?

22      A    That's correct.

23              MR. HARMON:  Thank you.

24              THE COURT:  Okay.  Next witness.

25              (Whereupon, the witness was excused from the

Lisa A. Casey - Official Court Reporter

89

**Proceedings**

1    witness stand.)

2    MR. HARMON: Your Honor, I did not want to

3    speak out of turn, but I think the next witness is a

4    presentation of a video deposition of Mr. Horvitz, and

5    perhaps we can save some time if we could submit the

6    transcript that plaintiffs and we have marked with our

7    objections to various portions, and your Honor could

8    read the transcript, and we don't have to take up your

9    time any more than --

10    THE COURT: No, no, no, no, no. I want to

11    hear the whole case here and now.

12    MR. HARMON: Okay.

13    THE COURT: I don't want to go back and start

14    reading things, and objections.

15    MR. HARMON: That's fine.

16    MS. SEARLES: I just had a question, for

17    clarification, because we haven't spoken about this

18    before. We designated and cross designated, and there

19    were objections to certain select portions. My question

20    to you is, did you put the cross designations, our cross

21    designations in that you did not object to? Is this

22    part of this video presentation.

23    MR. MOSS: We put all of your cross

24    designations in.

25    MS. SEARLES: Okay. And you put all of yours

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM INDEX NO. 652077/2017

NYSCEF DOC. NO. 331    Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 91 of   RECEIVED NYSCEF: 05/08/2019
126

**Proceedings**

90

1    in, irrespective of objections on either side?

2              MR. MOSS:  Yes.

3              MS. SEARLES:  Okay.

4              MR. MOSS:  Yes.  Everything you cross

5    designated is in here, to the extent -- we are not

6    playing the whole thing.

7              Your Honor, this is Michael Horvitz.  Michael

8    Horvitz, you have heard, is the Chairman and President

9    Sherry-Netherland.

10             When Mr. Kwok applied to the board to purchase

11   the apartment he submitted financial information.

12   Mr. Horvitz reviewed that financial information and he

13   recommended to the board that they approve the purchase

14   based on that financial information.  First I just want

15   to walk through some of his testimony, because I think

16   it will be more efficient than the video, to just show

17   you the --

18             THE COURT:  I just want to hear the testimony.

19   I don't want any demonstratives.  I've got two feet of

20   paper from the parties about this.

21             MR. MOSS:  Fair enough.

22             THE COURT:  This is an evidentiary hearing, so

23   just present the evidence.

24             MR. MOSS:  All right.  Mr. Horvitz's

25   testimony.

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
Case 22-50073 Doc 440-15 Filed 05/25/22 Entered 05/26/22 15:30:37 Page 92 of
126
RECEIVED NYSCEF: 05/08/2019

91

**Proceedings**

1          (Video tape played.)

2          MS. SEARLES:  I'm sorry to interrupt.  I'm

3     having a hard time -- I thought you said that all of the

4     designations and cross designations were in there, but

5     this is not -- are you not playing it in order?

6          MR. MOSS:  No.  Everything you countered

7     designated, we have put in, to the extent we are not

8     playing all of our designations.  That would take 45

9     minutes.

10          MS. SEARLES:  Okay.

11          MR. MOSS:  This is a select clip, and to the

12     extent we are playing something that you counter

13     designated, we are playing your counters.

14          MS. SEARLES:  Okay.  The only issue I'm having

15     is that I designated quite a bit, and it's impossible

16     for me to figure out what page you are playing here.

17          MR. MOSS:  Okay.

18          MS. SEARLES:  I mean, that is clearly started

19     halfway through the day.

20          MR. MOSS:  Okay.  I'm happy to -- the page

21     numbers and lines are right there.  I'm happy to give

22     you --

23          MS. SEARLES:  I can't see the page number.  I

24     can see the line numbers.  That may be the issue I'm

25     having.

Lisa A. Casey - Official Court Reporter

92

**Proceedings**

1                MR. MOSS:  Okay.  It's page 64, 65, 66 and 67.

2                THE COURT:  Look, considering the quality of

3    the firms involved here, I'm a little bit perplexed.  If

4    you are going to exhibit a deposition, you are going to

5    exhibit everything that you have designated, and

6    everything that they have designated, in sequence.

7                MR. MOSS:  Yes.

8                THE COURT:  To the extent that there are

9    objections that are asserted at the deposition, I'll

10    rule on whether the portions that you are exhibiting can

11    or cannot come into evidence.

12                MR. MOSS:  It's not quite right, your Honor.

13    We both designated.  It would take probably an hour to

14    play everything that we have designated.  We are only

15    playing a 10-minute clip of a portion of what we have

16    designated, because it would take too long to play the

17    entire thing.

18                MR. SARNOFF:  And everything that she

19    designated.

20                MR. MOSS:  And everything --

21                MR. HARMON:  Why isn't the transcript being --

22                MS. SEARLES:  My understanding was that they

23    intended to offer everything that they originally

24    designated.

25                MR. MOSS:  Our understanding is that all of

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 331

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 94 of
126

93

**Proceedings**

1    the testimony that has been designated is in evidence.

2              THE COURT:  Look, Mr. Horvitz is up at the

3    Sherry-Netherland; right?

4              MR. MOSS:  Yes.

5              THE COURT:  You could have had him come here;

6    right.

7              MR. MOSS:  Oh, no.  He lives in Cleveland.

8              THE COURT:  I'm sorry?

9              MR. MOSS:  He lives in Cleveland.  He is the

10   president of the board, but he resides and lives full

11   time in Cleveland.

12             THE COURT:  Okay.

13             MR. MOSS:  He is unavailable.

14             THE COURT:  So he's an out-of-state witness.

15             MR. MOSS:  Yes.

16             THE COURT:  And therefore, are you playing his

17   deposition.

18             MR. MOSS:  Correct.

19             THE COURT:  Have you been able to come to an

20   agreement as to how you are going to exhibit the

21   portions of the deposition that you want me to see?

22             MR. MOSS:  Well, our understanding was that we

23   have designated it, and your Honor has the designations,

24   so that to the extent there weren't objections, that

25   would be in evidence.  We were only going to play a

Lisa A. Casey - Official Court Reporter

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 95 of
126

94

**Proceedings**

1      selection of that today, because playing the entire

2      thing would, again, take an hour.

3              THE COURT:  I'm only going to consider what I

4      see in this court.

5              MR. MOSS:  Okay.

6              THE COURT:  Those are my rules.  So go ahead.

7              MS. SEARLES:  Just so that I do not get up and

8      interrupt again, I want to make it clear, we have

9      multiple relevance objections to some of this testimony

10     that's coming in.  Do you want me to --

11             THE COURT:  Well, if they weren't asserted at

12     the deposition --

13             MS. SEARLES:  Relevance is not a deposition

14     objection, so --

15             THE COURT:  All right.  Just proceed.

16             (Video tape played.)

17             MR. HARMON:  Objection, your Honor.

18             THE COURT:  I'm sorry?

19             MR. HARMON:  I object.  He is summarizing more

20     testimony that's not before you.

21             THE COURT:  Overruled.

22             (Video tape played.)

23             MR. HARMON:  Objection, your Honor.

24     Relevance.

25             THE COURT:  That's overruled,

Lisa A. Casey - Official Court Reporter

**Proceedings**

1          (Video tape played.)

2          MR. HARMON:  Your Honor, excuse me.  Your

3     Honor, in doing this, they have X-ed out objections to

4     form that were made during the course of this testimony,

5     so that you don't see them and you don't hear them.

6          THE COURT:  Look, I may be missing something.

7     I just heard the last witness testify that the apartment

8     is owned by Genever and that it can't be transferred to

9     anybody other than Genever without the approval of the

10    board, so whether Mr. Kwok made up a fairy tale in some

11    other context, or whether Mr. Kwok is taking liberties

12    with the truth isn't really relevant to who owns this

13    apartment.

14          (Video tape played.)

15          MR. MOSS:  Our next witness is Mr. --

16          THE COURT:  Do you have cross designations for

17    this deposition?

18          MS. SEARLES:  Yes.  I just wanted to make two

19    quick points.  First of all, the objections that I made

20    during the deposition were excised from the video, so

21    there were, at least, a couple of objections.

22          THE COURT:  Okay.  I would have overruled them

23    all any way.

24          MS. SEARLES:  And that's fine.  I just wanted

25    to make that point for the record.

Lisa A. Casey - Official Court Reporter

96

**Proceedings**

1    The other part was, he indicated that it was

2    designations and cross designations.  As you noticed,

3    there were no cross designations in there because the

4    sections of the testimony that he used don't include the

5    ones where we have cross designations, so all of our

6    cross designations occurred at different parts of this,

7    but he is an unavailable witness, so I don't think they

8    are cross decisions in the normal sense for

9    completeness.  We just designated our own sections.

10    THE COURT:  He probably has the ability to

11    exhibit anything you want from the deposition, to

12    present as --

13    MS. SEARLES:  And I apologize --

14    MR. MOSS:  And we offered that.

15    THE COURT:  -- as cross examination.

16    MR. MOSS:  We offered that in advance.

17    MS. SEARLES:  No.  I apologize, because when

18    you indicated that it was going to be --

19    THE COURT:  Let's not squabble about who said

20    what to whom.  If you want to play any portion of this

21    deposition, you are entitled to do so, and he will

22    graciously accommodate you by playing whatever portions

23    of the deposition you want played, if any.

24    MS. SEARLES:  Okay.  Give me just one second,

25    your Honor, because some of this isn't going to make as

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 98 of
126

97

**Proceedings**

1        much sense without the actual portion that the

2        plaintiffs have designated.

3                    You have, in front of you, you have the --

4                    THE COURT:  I'm not reading anything that

5        isn't presented to me.

6                    MS. SEARLES:  And that's fine.  We'll just let

7        it be.  Thank you.

8                    THE COURT:  Okay.  Next witness.

9                    MR. MOSS:  We'll call Mr. Kwok.

10                   THE COURT:  Do we have an interpreter for

11       Mr. Kwok?

12                   THE CLERK:  Official Court Interpreter, please

13       note your appearance.

14                   THE INTERPRETER:  Mandarin Chinese

15       Interpreter, first name Tor, T-O-R, last name Huang,

16       H-U-A-N-G.

17                   (Whereupon, the Official Court Mandarin

18       Interpreter was duly sworn by the clerk.)

19   K W O K   H O   W A N, having been duly sworn by the clerk,

20   was examined and testified as follows, with the assistance of

21   the Official Court Mandarin Interpreter.

22                   THE CLERK:  Do you swear or affirm to tell the

23       truth in all the matters before the Court?

24                   THE WITNESS:  As well, I say, it's true.

25                   THE CLERK:  Please state your name and

**Proceedings**

98

1    address.

2            THE WITNESS:  Kwok Ho Wan, K-W-O-K, H-O,

3    W-A-N.  That's my name, and I live at 781 Fifth Avenue.

4            THE COURT OFFICER:  Have a seat.

5            THE COURT:  All right.  I don't want to waste

6    a lot of time.  The reason that we are having this

7    hearing is for you to satisfy your burden for an order

8    of attachment, one element of which is that the

9    defendant, with intent to defraud his creditors, to

10   frustrate the enforcement of a judgment that might be

11   rendered in plaintiff's favor, has assigned,

12   dispossessed, encumbered or secreted property, or

13   removed it from the state, or is about to do any of

14   these acts.  So if it's the case that this apartment at

15   the Sherry-Netherland can never be transferred without

16   the consent of the Sherry-Netherland, and the

17   Sherry-Netherland is on notice that if there's any

18   attempt to sell it, you have to be provided advance

19   notice, and they can't transfer without Court approval,

20   I don't think we need a lengthy examination of Mr. Kwok.

21           MR. MOSS:  Well, your Honor, given that --

22   that's new information that we heard for the first time.

23           THE COURT:  I'm sorry.

24           MR. MOSS:  It's new information we heard for

25   the first time today, about the apartment's current

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 100
of 126
RECEIVED NYSCEF: 05/08/2019

99

## Proceedings

1   status.  Maybe it makes sense to take our lunch break

2   earlier, for me try to move through, edit my outline,

3   and try to do a lot less with Mr. Kwok than I was

4   originally intending to do, given that that's your view.

5   I'm happy to start now, but I think I can condense it

6   significantly.

7           THE COURT:  All right.  You want to take a

8   lunch break now?  Is that what you're telling me?

9           MR. MOSS:  I think that would probably be less

10  of a waste of time for everybody.

11          THE COURT:  All right.  Because I'm not

12  interested in you wasting your time and your client's

13  money, and I'm not interested in you wasting my time.

14          MR. MOSS:  Of course.

15          THE COURT:  I'll see you back here at two

16  o'clock.  Is that acceptable?

17          MR. MOSS:  Sure.  That's fine, your Honor.

18          THE COURT:  Is that acceptable with you, Paul?

19          THE CLERK:  Yes.  Thank you.

20          THE COURT:  Okay.  Is that acceptable to the

21  court reporter?

22          THE COURT REPORTER:  That's fine.  Thank you.

23          THE COURT OFFICER:  We are adjourned to 2:00

24  p.m.

25          (Whereupon, a recess was taken.)

Lisa A. Casey - Official Court Reporter

                                                                    100

**Proceedings**

1                    *      *      *      *      *      *

2                    THE COURT:  All right.  In this action, do the

3          plaintiffs propose to proceed on the guarantee that's

4          the subject of this action?

5                    MR. MOSS:  Yes, your Honor.

6                    THE COURT:  And what is the position of the

7          plaintiffs with respect to the piercing of the corporate

8          veil issues?

9                    MR. MOSS:  Well, as your Honor has requested,

10         we have amended our complaint to add the Genever

11         entities.

12                   THE COURT:  I'm sorry?

13                   MR. MOSS:  We have amended our complaint to

14         add the two Genever entities, and our position is that

15         we pleaded facts in the amended complaint sufficient to

16         make the claim for veil piercing.

17                   THE COURT:  All right.  But you are not

18         proposing to establish veil piercing at this hearing.

19                   MR. MOSS:  Yes, we are, your Honor.  We are

20         proposing to do both.  We have amended the complaint as

21         you've suggested, and as I laid out in the opening, veil

22         piercing is one of the things that we intend to prove

23         today.

24                   MR. HARMON:  Your Honor --

25                   THE COURT:  With respect to the defendant, is

                 Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 102
of 126

**Proceedings**

1    it the defendant's position that Mr. Kwok purchased the

2    residence in the Sherry-Netherland on the basis of true

3    and accurate information?

4                    MR. HARMON:  Submitted to the

5    Sherry-Netherland?

6                    THE COURT:  I'm sorry.

7                    MR. HARMON:  Are you asking whether our

8    position is that the information submitted to the

9    Sherry-Netherland was true and accurate?

10                   THE COURT:  Yes.

11                   MR. HARMON:  Yes.

12                   THE COURT:  Therefore, you also claim that

13   Mr. Kwok's deposition testimony was true and accurate?

14                   MR. HARMON:  Yes, your Honor.

15                   THE COURT:  At the time that it was given.

16                   MR. HARMON:  Yes, your Honor.

17                   THE COURT:  And you also contend that Mr. Kwok

18   inadvertently pledged the residence to another entity

19   after this litigation was initiated, and when he

20   realized that he was not entitled to transfer, pledge,

21   the residence, he arranged for the pledge to be removed.

22                   MR. HARMON:  I don't think I can answer your

23   question the way you asked it.  The pledge has been

24   removed.  I don't think I'm in a position to answer the

25   rest of your question, but I do want to be clear, your

**Proceedings**

1      Honor, that plaintiffs have just recently amended their

2      complaint.  The issue has not been joined on the amended

3      complaint.  We have not yet begun to conduct discovery

4      on the merits of the claim.  Everything has been

5      directed to the question of the attachment, and so I'm

6      assuming, and I raised this at the last oral argument,

7      that once this issue was to be set aside as to whether

8      or not there will be an attachment, or whether the

9      current order of the Court provides more than adequate

10     protection to the plaintiff, whether or not they have

11     met the attachment standards, that we will get on and

12     start conducting discovery on the merits, and that what

13     we have been doing so far is litigating whether or not

14     plaintiffs have established entitlement to attachment,

15     but nothing more than that.  No ultimate findings of

16     fact or conclusions on the merits of the case, because

17     we are only dealing with the attachment issue at this

18     time.

19             THE COURT:  Well, if the plaintiff establishes

20     veil piercing, won't that have some impact on what

21     orders the Court should consider issuing?

22             MR. HARMON:  So the short answer is of course,

23     but the longer answer is that I don't think the Court

24     has to reach a final determination of whether or not the

25     plaintiffs have established veil piercing in order to

Lisa A. Casey - Official Court Reporter

103

**Proceedings**

1    decide whether or not the attachment is appropriate or

2    not.  The standards for determining proof at this stage

3    are not the same as the standards for ultimate

4    determination, and so I would say that whatever ruling

5    you make regarding the questions now before you would

6    not represent final rulings on the merits of the case,

7    which still is yet to come, following our completion of

8    discovery.

9            So to be clear, your Honor, because of the way

10   that your Honor phrased the reasons for conducting an

11   evidentiary hearing, it was not our intention to go into

12   detail in depth about the veil piercing issue.  I

13   understand that you could grant the attachment without

14   making a final determination, but we were not here today

15   prepared to put on all of the evidence regarding veil

16   piercing.

17           THE COURT:  All right.  Do we have any

18   estimated time of arrival of the interpreter?

19           THE CLERK:  No.  Just that one was ordered at

20   about 1:00 in the afternoon, and they are coming from

21   the Bronx.  They were ordered, I got the email, at 12:51

22   p.m.

23           THE COURT:  Okay.  So we shouldn't have to

24   wait too much longer.

25           Let me ask the plaintiff, as a practical

Lisa A. Casey - Official Court Reporter

104

**Proceedings**

1      matter --

2              MR. MOSS:  Yes, your Honor.

3              THE COURT:  -- how are you better off if an

4      attachment is issued, which is purely discretionary?

5              MR. MOSS:  Better off than with the notice

6      order in place?  Your Honor, better off between the

7      attachment or the notice order?  Is that the question?

8              THE COURT:  Yes.

9              MR. MOSS:  I think that the main problem, or

10     one of the main problems, with the notice order is that

11     under the notice order, Mr. Kwok -- I have it right

12     here -- has to provide us with immediate written notice

13     once he already has a contract for sale, or assignment

14     of the residence.  So at that point, he has already

15     agreed to sell it to somebody.  They may have a claim

16     against the apartment, even if the Sherry-Netherland

17     doesn't approve it.

18              Second, it doesn't apply to transfers of

19     Genever, and I know the Court -- and I understand, as a

20     practical matter, if Genever -- that there are two

21     Genever entities on top of the apartment.  If one of

22     those, or both of those, are transferred, then this

23     order doesn't apply to that.  The Sherry-Netherland

24     wouldn't know about that.  In fact, the apartment -- the

25     Genever entities, their assets, which include the

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
RECEIVED NYSCEF: 05/08/2019

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 106
of 126

105

**Proceedings**

1      apartment, have been pledged during this case, and

2      nobody knew about it.  So if the order were broadened to

3      include transfers of the Genever entities, pledges,

4      assignments, sales, and done so before the transfer,

5      that would take care of one of the problems.

6              The other problem is the Zhang Wei testimony.

7      The testimony is that Mr. Kwok has said he doesn't own

8      the apartment, somebody else does, Zhang Wei, Zhang Wei

9      is the one who pledged it, and Zhang Wei can apparently

10     do whatever he wants with the apartment.  So the concern

11     is that --

12             THE COURT:  No, no, no.  The legal owner of

13     the apartment is the Genever LLC, which, as I understand

14     it, is a sole member LLC owned by Mr. Kwok; correct?

15             MR. MOSS:  Well, it's a little --

16             THE COURT:  And then the Genever entity is, in

17     turn, owned by another Genever LLC.

18             MR. MOSS:  And Mr. Kwok owns that one.

19             THE COURT:  And Mr. Kwok is the sole member of

20     that one.

21             MR. MOSS:  Correct, your Honor.

22             THE COURT:  So the only entity that can

23     transfer ownership of the apartment is the Genever

24     entity that holds title; correct?

25             MR. MOSS:  That should be the case.  Yes, your

Lisa A. Casey - Official Court Reporter

**Proceedings**

1    Honor.

2              THE COURT: And the Genever entity that owns

3    title to the apartment can only transfer it with the

4    approval of the board of directors of the

5    Sherry-Netherland; correct.

6              MR. MOSS: Well, the Genever entity, the New

7    York entity that owns the apartment, is controlled by

8    the British Virgin Islands entity.

9              THE COURT: I get all of that. But the title

10   to the apartment is in the Genever entity.

11             MR. MOSS: Yes.

12             THE COURT: That is in New York, and is listed

13   on the records of the Sherry-Netherland as the owner of

14   the apartment.

15             MR. MOSS: Correct, your Honor.

16             THE COURT: And that entity can't sell the

17   apartment without giving notice; correct?

18             MR. MOSS: Well, the current order is that --

19   the defendant which, at the time that this was entered,

20   we hadn't amended, so it was Mr. Kwok must provide --

21             THE COURT: Okay. So at a minimum, I have to

22   amend the prior order precluding Mr. Kwok, Genever New

23   York, and Genever B.V.I. from transferring, assigning or

24   pledging the apartment without giving you notice, and

25   the Court will so order that, and we'll prepare an order

Lisa A. Casey - Official Court Reporter

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 331
RECEIVED NYSCEF: 05/08/2019

Case 22-50073    Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 108
of 126

**Proceedings**

1    to that effect.

2              Now, assuming that order is entered before the

3    sun goes down today, why do you need an attachment,

4    assuming all of the following:  Mr. Kwok denies the

5    existence of the debt owed to the plaintiff -- and this

6    is assuming, without deciding any of these things.

7              MR. MOSS:  Of course, your Honor.

8              THE COURT:  Assuming that Mr. Kwok purchased

9    the residence under false pretenses; assuming that some

10   mysterious Chinese political prisoner, Zhang Wei, W-E-I,

11   controls Genever; assuming, without deciding, that

12   Mr. Kwok lied about a potential pledge of the residence

13   to another entity after this litigation was initiated;

14   assuming, without deciding, that Mr. Kwok lied at his

15   deposition, that he never attempted to assign the

16   residence to his son; and assuming, without deciding,

17   that Mr. Kwok was improperly directed by counsel not to

18   answer questions regarding his intent to sell the

19   residence.

20             How are you prejudiced?

21             MR. MOSS:  Other than -- I don't think we are,

22   your Honor.  Obviously, we would prefer the attachment.

23   It's a property interest.  We think that we have met,

24   and can meet, the burden, but if that's how your Honor

25   wishes to proceed, you know, I don't have --

Lisa A. Casey - Official Court Reporter

108

**Proceedings**

1       THE COURT:  I haven't decided any of those

2    facts, but I am going to issue an order along the lines

3    I just indicated, and does that obviate the need for us

4    to proceed to --

5       MR. SARNOFF:  May I also just ask one related

6    question?  Would we therefore assume that the motion is

7    sort of suspended, and we can renew it at such time as

8    any of those --

9       THE COURT:  Well, of course this is without

10   prejudice to you seeking an attachment if and when you

11   get notice of any intent by any of the three persons or

12   entities that I've just identified to sell, pledge,

13   assign or otherwise transfer the residence.

14      MR. SARNOFF:  I think under those conditions,

15   your Honor, we would be amenable to such an order and to

16   the suspension or withdrawal, at this point, of our

17   attachment motion.

18      THE COURT:  Okay.  Now, do defendants have a

19   problem with any of this?

20      MR. HARMON:  If I thought that that would have

21   solved the problem, I will have suggested it a long time

22   ago, so the answer is no, I have no problem with it.  I

23   do want to be clear, however, that the without prejudice

24   to renew the attachment is not just whenever they feel

25   like it, or whenever they think they have more evidence,

Lisa A. Casey - Official Court Reporter

Case 22-50073   Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 110
of 126

**Proceedings**

109

1    but when they are given notice that a potential transfer

2    may be taking place, so that we don't --.

3                THE COURT:  I don't know what discovery is

4    going to reveal in this case, based on the amended

5    complaint --

6                MR. HARMON:  But your Honor --

7                THE COURT:  -- and I don't believe that the

8    plaintiffs pockets are deep enough to come running back

9    here seeking an attachment unless they have some greater

10   basis for doing so than they presently have.

11               MR. HARMON:  I think you would be surprised,

12   and I said this at the last oral argument, I didn't know

13   why they made the second application, given the relief

14   that your Honor had fashioned for them in the first

15   application, which was relief they hadn't even asked

16   for.  So I didn't understand the need for the second

17   application, and if somebody had said to us, Well, let's

18   include the entities, we would have said fine.  It's an

19   injunction.  We'll abide by the injunction.  So that's

20   why I'm saying, I just want to be clear that we are

21   going to move from here to merits discovery, so we can

22   get on with trying to deal with the issues that are the

23   heart of the case and not just whether or not they will

24   be able to collect against the Sherry apartment if and

25   when they ever get a judgment.

110

1          THE COURT:  But they don't have a judgment.

2          MR. HARMON:  Exactly.

3          THE COURT:  All right.  To make this even

4     simpler, and to avoid an application for any attachment,

5     the order that I'm going to enter is going to also

6     require the defendants to give notice if Genever New

7     York or Genever B.V.I. wishes to sell or transfer any of

8     its assets.  So B.V.I. can't sell -- I'm sorry, Genever

9     B.V.I. can't sell Genever New York to another LLC

10    without giving notice.

11         MR. HARMON:  That's fine.

12         MR. SARNOFF:  And cannot pledge it, either.

13    And also cannot pledge it.

14         THE COURT:  Yes.  Right?  So are we done?

15         MR. MOSS:  I think we are.

16         MR. SARNOFF:  Yes, your Honor.  Thank you.

17         MR. MOSS:  Thank you.

18         THE COURT:  Okay.  Have a nice afternoon and a

19    nice weekend.

20         MR. MOSS:  You too.  Thank you.

21         *     *     *     *     *     *

22         Certified to be a true and accurate

23    transcription of the above-entitled matter.

24

25    _____
      Lisa A. Casey

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. Pacific Alliance Asia ... Doc 440-15 Filed 05/25/22 Entered 05/26/22 15:30:37 Page 112
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019
of 126
Kwok Ho Wan
April 26, 2019

**$**

**$3.3 (2)**
61:21;63:24
**$60 (3)**
21:2;22:4,23

**A**

**abandon (2)**
49:21;51:3
**abide (1)**
109:19
**ability (1)**
96:10
**able (5)**
31:19;49:8;72:23;
93:19;109:24
**absent (1)**
87:14
**absolutely (4)**
5:20;73:7,11;76:10
**abuse (2)**
4:16;14:21
**accede (1)**
64:2
**accept (2)**
14:6;79:21
**acceptable (3)**
99:16,18,20
**access (1)**
20:9
**accommodate (1)**
96:22
**accomplish (2)**
67:11;74:19
**accomplished (2)**
32:19;86:4
**accurate (3)**
101:3,9,13
**across (1)**
6:19
**acting (2)**
3:25;64:10
**action (4)**
3:19;68:11;100:2,4
**actions (1)**
68:10
**acts (1)**
98:14
**actual (2)**
44:9;97:1
**actually (9)**
3:8;8:12;23:25;
41:10,23;43:8;54:17;
62:5,14
**add (2)**
100:10,14
**addition (1)**
4:12
**additional (2)**
80:2,4

**address (10)**
17:4,6;20:3,6,7,8,
12;56:10;70:10;98:1
**addresses (1)**
16:8
**adequate (3)**
62:18,20;102:9
**adjourned (1)**
99:23
**administrative (1)**
67:4
**administrator (5)**
27:3,4;39:7;42:6;
47:1
**admissible (1)**
26:20
**admitted (3)**
12:22;24:10;41:17
**admonitions (1)**
13:19
**adult (1)**
50:24
**advance (3)**
73:20;96:16;98:18
**adverse (1)**
54:6
**adversely (1)**
9:8
**advise (1)**
76:7
**advising (1)**
72:4
**affidavit (41)**
5:17;23:2,12,18;
25:8,9,12,14;26:20,
23,25;27:1,17;28:24;
31:10;35:7,23,25;
36:2,3,6,8;40:11,16;
41:15,15,23;42:1,2;
44:12,16;46:10,12,
21;53:7,9,15,25;
54:10,20;73:1
**affidavits (1)**
42:4
**affirm (1)**
97:22
**afternoon (3)**
75:3,4;103:20
**afterwards (2)**
27:23;59:20
**Again (15)**
4:21;26:8;37:6;
41:9,25;43:4;45:20;
47:1;51:1,1,1;67:13;
87:2;94:2,8
**against (2)**
104:16;109:24
**ago (7)**
7:19;42:3;55:20;
61:12;70:16;75:10;
108:22
**agree (5)**
9:21;14:5;49:21;

58:18;67:14
**agreed (3)**
12:14;21:6;104:15
**agreement (12)**
7:11;11:11;45:16;
61:23;67:17,25;68:2,
7,18;70:19;86:19;
93:20
**agreements (1)**
67:16
**ahead (7)**
29:15;34:7;62:12;
63:14;66:17;87:21;
94:6
**akin (1)**
56:25
**Alliance (1)**
2:2
**allow (3)**
8:20;66:17;75:13
**almost (3)**
20:11;47:3;52:23
**along (3)**
34:6;56:17;108:2
**amassing (1)**
79:10
**amazing (1)**
58:15
**amenable (1)**
108:15
**amend (1)**
106:22
**amended (8)**
100:10,13,15,20;
102:1,2;106:20;
109:4
**America (2)**
49:4;51:14
**American (2)**
14:15;47:5
**Americans (1)**
15:12
**among (2)**
52:4;84:12
**amount (4)**
3:20;61:19;62:17;
79:9
**and/or (1)**
46:1
**answered (3)**
10:8;66:6,10
**anymore (1)**
43:8
**apartment (129)**
4:2;5:23;6:2,12,25;
7:9,13;8:21;10:20;
14:2,3,11,12;15:3;
18:25;19:4,17;20:20,
24;23:8;27:11,18,22;
28:7,15,17,18,19,23;
29:4,6,9,17;30:7,17;
32:21;33:2,9,10,12,
13,21;34:19;37:16,

18,22;39:2,11,14,19;
40:18;41:21;43:5,7;
44:4,6,7;46:3;55:4,
18;56:12;57:17;
58:12;59:7;61:7,10;
64:6,11,15;65:15;
66:1;67:3,15;68:8,14,
21,21;69:2;70:6,12,
13,17,18;74:15,19;
75:25;76:13;79:21;
81:7,7,13,14,17,17,
20,23;82:4;83:2;
85:5,12,23;86:2,3,13,
14,23;87:6,7,12,25;
90:11;95:7,13;98:14;
104:16,21,24;105:1,
8,10,13,23;106:3,7,
10,14,17,24;109:24
**apartment's (2)**
30:14;98:25
**apologize (3)**
41:9;96:13,17
**apparently (1)**
105:9
**appear (2)**
14:8;50:13
**appearance (1)**
97:13
**appearances (2)**
2:4,11
**application (13)**
7:22;57:12;59:13;
60:2,24;62:22;65:13,
23;83:23;84:4;
109:13,15,17
**applications (1)**
58:12;63:10
**applied (2)**
59:6;90:10
**apply (2)**
104:18,23
**approach (1)**
17:12
**approached (1)**
64:15
**appropriate (2)**
45:12;103:1
**approval (11)**
6:7;7:23;58:14;
65:17;84:13;85:24;
86:4;87:15;95:9;
98:19;106:4
**approve (6)**
7:21;80:13,15;
88:9;90:13;104:17
**approved (5)**
61:3;80:10,22;
81:25;83:24
**approving (1)**
58:12
**approximately (4)**
61:21;63:21;64:1;
78:23

18,22;39:2,11,14,19;
40:18;41:21;43:5,7;
44:4,6,7;46:3;55:4,
18;56:12;57:17;
58:12;59:7;61:7,10;
64:6,11,15;65:15;
66:1;67:3,15;68:8,14,
21,21;69:2;70:6,12,
13,17,18;74:15,19;
75:25;76:13;79:21;
81:7,7,13,14,17,17,
20,23;82:4;83:2;
85:5,12,23;86:2,3,13,
14,23;87:6,7,12,25;
90:11;95:7,13;98:14;
104:16,21,24;105:1,
8,10,13,23;106:3,7,
10,14,17,24;109:24
**April (2)**
49:7;51:14
**architect (1)**
84:6
**argue (1)**
71:13
**argued (2)**
16:21;45:12
**argument (6)**
24:21;44:2,16;
45:21;102:6;109:12
**arguments (2)**
32:14,16
**around (4)**
20:23;48:25;55:19;
70:25
**arranged (1)**
101:21
**arrested (1)**
48:17
**arrival (1)**
103:18
**Asia (1)**
2:2
**aside (1)**
102:7
**asserted (2)**
92:9;94:11
**asset (2)**
7:2;24:17
**assets (16)**
6:8,9,20;11:25;
37:3;60:10,14,17,18;
61:13;62:19;74:3,3;
80:17,19;104:25
**assign (3)**
6:25;107:15;
108:13
**assigned (1)**
98:11
**assigning (1)**
106:23
**assignment (1)**
104:13
**assignments (1)**
105:4
**assistance (1)**
97:20
**assistant (2)**
5:14;77:25
**associates (1)**
11:24
**assume (1)**
108:6
**assuming (5)**
102:6;107:2,4,6,8,
9,11,14,16
**asylum (1)**
14:17
**attach (2)**
23:8;24:21
**attached (3)**
6:23;40:15;41:15

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 440-15
Case 22-50073...Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 113
of 126
INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Tarimsal Alliance Asia v.
Kwok Ho Wan
April 26, 2019

**attachment (34)**
2:25;3:17,22,23;
4:24;5:15,18;8:18;
9:2;10:14;11:21;
13:21;24:6;25:15;
44:18;46:15;78:3,5;
98:8;102:5,8,11,14,
17;103:1,13;104:4,7;
107:3,22;108:10,17,
24;109:9

**attempt (1)**
98:18

**attempted (1)**
107:15

**attempts (1)**
4:2

**attend (1)**
27:25

**attention (8)**
20:16;26:6;28:24;
40:14,21;69:8,17;
87:9

**attorney (7)**
27:1;28:9;33:19;
42:9;46:1;58:8;64:25

**audio (3)**
11:22,22;12:5

**authentic (1)**
12:4,21

**authenticate (1)**
69:20

**authenticity (3)**
12:6;13:13;43:20

**available (1)**
8:3

**Avenue (1)**
98:3

**avoid (4)**
5:15;11:15;44:13;
46:15

**aware (1)**
75:22

**away (2)**
42:24;86:20

**ax (1)**
73:5

**B**

**back (15)**
15:14;19:11;48:2,
7,8,49:9;50:15,16;
51:21;52:23;63:4;
87:2;89:13;99:15;
109:8

**background (4)**
39:9;47:4,16;58:6

**bad (1)**
53:19

**barrier (2)**
14:25;31:2

**based (8)**
6:17;15:8;16:4;

**54:11,18,22;90:14;**
109:4

**basic (1)**
10:11

**basically (2)**
31:18;59:17

**basis (2)**
101:2;109:10

**began (1)**
63:3

**beginning (1)**
51:22

**begun (1)**
102:3

**behalf (7)**
19:3,16;23:4,5;
64:10;79:12;82:3

**behavior (2)**
9:12;74:13

**behind (1)**
56:17

**Beijing (4)**
33:10,12;48:7,8

**beneficial (1)**
86:15

**best (1)**
9:12

**betray (2)**
49:20,20

**better (7)**
48:2;75:11,12,16;
104:3,5,6

**big (1)**
7:10

**bigger (1)**
50:24

**biggest (1)**
6:16

**bills (2)**
52:17,21

**binders (1)**
43:21

**binding (1)**
87:11

**bit (6)**
47:7;51:10;52:25;
56:16;91:15;92:3

**bite (1)**
15:15

**Blair (1)**
84:17

**blank (2)**
30:23,23

**board (36)**
7:18,23;57:16,21;
58:11,19,22;59:15,
22,24;62:4,8,13,17;
79:13,16,18,20,24;
80:6,8,10,12;83:22,
23,25;84:2;85:25;
86:18,22;87:15;
90:10,13;93:10;
95:10;106:4

**board's (1)**
65:19

**book (6)**
12:19;41:13,14;
69:12;77:3,5

**both (6)**
10:22;22:13;60:17;
92:13;100:20;104:22

**bottom (1)**
20:17

**bought (1)**
14:11

**boyfriend (2)**
50:1,4

**breached (1)**
7:10

**break (2)**
99:1,8

**Brenda (4)**
82:21,22,25;83:1

**brief (5)**
5:8;69:14,18;70:5;
72:25

**briefed (1)**
3:1

**briefing (1)**
4:10

**briefly (5)**
5:11;7:17;11:4;
16:15;74:1

**briefs (2)**
11:5,6

**bring (3)**
15:21;58:17,18

**British (1)**
106:8

**broadened (1)**
105:2

**broker (3)**
19:1;58:16;64:14

**Bronx (1)**
103:21

**brother (5)**
48:14,17;50:10,12,
19

**brothers (2)**
18:7;48:20

**build (1)**
52:12

**building (4)**
6:12;58:20;67:16;
85:21

**burden (2)**
98:7;107:24

**business (3)**
15:9;18:11;57:9

**businesses (1)**
18:4

**buy (5)**
6:11;10:20;61:7,
10;85:5

**buying (1)**
81:22

**buys (1)**
87:25

**BVI (8)**
34:16,17,23;45:9,
12;86:13,17;106:23

**C**

**call (4)**
16:22;66:19;84:1;
97:9

**came (11)**
33:2;48:7,8;49:8,
25;51:14,21;52:22;
82:2,15;88:11

**camera (1)**
50:22

**can (57)**
9:16,20;12:25;
14:10;15:11,13,13;
24:13,15;25:4,7,10;
26:6,9,16,18;27:2,15,
16;28:17,20;31:5;
34:4,5;40:10;42:23;
43:17;46:7,18;47:25;
52:23;59:3;61:2;
64:15;66:12;69:8;
72:17,19;73:25;74:2;
77:23;83:17;87:12,
16,18;89:5;91:24;
92:10;98:15;99:5;
101:22;105:9,22;
106:3;107:24;108:7;
109:21

**cancel (1)**
63:5

**capacity (2)**
78:8;81:16

**caption (1)**
11:23

**care (2)**
13:18;105:5

**case (22)**
4:1;9:2;10:8;
12:11;16:11;23:2,20;
28:9;31:19;33:15,17;
47:18;70:4;79:7;
89:11;98:14;102:16;
103:6;105:1,25;
109:4,23

**caselaw (1)**
9:18

**cases (4)**
4:4,20;5:2;24:18

**casual (1)**
25:25

**Cause (1)**
3:19

**CEO (1)**
7:17

**certain (2)**
11:25;89:19

**certainly (2)**

**8:24;75:11**

**certificate (4)**
88:1,5,7,12

**chairman (2)**
58:10;90:8

**chairperson (1)**
57:24

**challenge (2)**
13:13;14:21

**change (3)**
51:10;66:20;67:7

**changing (1)**
62:21

**charge (2)**
40:22,25

**charges (2)**
61:18;81:4

**chase (1)**
6:19

**Chief (3)**
56:23;76:5;78:9

**China (11)**
14:17,19,24;15:9;
48:25;49:2,2,9,10;
50:13,15

**Chinese (17)**
14:18,20;20:9;
30:25;35:10;42:15;
47:2;48:18;49:16;
50:6,14,20,25;59:23;
75:20;97:14;107:10

**choice (1)**
47:2

**Citizen (1)**
14:15

**City (2)**
51:12;59:1

**claim (4)**
100:16;101:12;
102:4;104:15

**clarification (3)**
19:13;32:10;89:17

**clear (18)**
5:4;9:18;12:15;
17:3;22:3;24:4;
33:22;41:25;45:5,17;
55:3;56:10;85:6;
94:8;101:25;103:9;
108:23;109:20

**clearly (2)**
38:7;91:18

**CLERK (15)**
2:1,11;17:2,3,7;
56:8,9,13;97:12,18,
19,22,25;99:19;
103:19

**Cleveland (5)**
7:18;58:9;93:7,9,
11

**client (4)**
5:3;8:23;58:17,18

**client's (1)**
99:12

Clinic (1)
58:9
clip (5)
10:5;11:22;13:10;
91:11;92:15
clips (3)
9:3;10:4;13:5
close (5)
45:10;63:3,5,8,15
closed (1)
63:18
closing (2)
62:22;63:22
colleague (4)
42:15;47:3,8;52:20
collect (13)
27:5;28:3;31:13;
39:8;42:7,13,18;52:2,
4,13,14;54:1;109:24
collected (2)
42:5;54:9
collecting (2)
42:9,14
college (1)
50:2
colloquy (1)
46:1
coming (4)
15:6;73:12;94:10;
103:20
Communist (11)
14:20,22;20:9;
42:15;47:3;48:18;
49:16;50:6,14,20,25
companies (3)
7:24;18:15,19
company (4)
8:22;34:18,18;47:4
complaint (7)
100:10,13,15,20;
102:2,3;109:5
Complete (1)
4:15
completed (2)
44:15;75:14
completely (2)
11:12;38:20
completeness (2)
13:7;96:9
completion (1)
103:7
complicated (2)
26:15;87:21
comply (1)
76:9
concept (2)
15:6,10
concern (1)
105:10
concerned (2)
6:17;88:20

concerning (1)
32:21
concession (1)
21:6
conclusions (1)
102:16
condense (1)
99:5
condition (1)
58:19
conditions (2)
61:14;108:14
conduct (1)
102:3
conducting (2)
102:12;103:10
confer (1)
16:1
confidential (1)
59:21
confirm (1)
5:21
confused (2)
38:3;45:20
connection (1)
84:13
consent (2)
15:2;98:16
conservative (6)
31:18;35:4,10,14,
15,17
consider (3)
9:20;94:3;102:21
considering (1)
92:2
consistent (2)
38:20;65:19
constitutes (1)
29:25
constraints (1)
62:24
contact (9)
19:5;66:4,20,21;
67:1,4;82:18,20,21
contacted (1)
50:10
contend (1)
101:17
context (3)
13:9;15:19;95:11
continue (2)
50:6;51:14
continuing (3)
44:8,24;45:20
contract (7)
15:2;63:6;75:24;
76:7;85:11;86:22;
104:13
contradicted (1)
8:6
contrary (1)
26:13
control (3)

4:16;50:6;60:3
controlled (1)
106:7
controls (4)
8:15;10:21;87:5;
107:11
convenience (3)
21:16,19,22
conversation (3)
26:1;38:24;39:1
conversations (1)
38:23
COO (2)
6:6;57:11
co-op (1)
59:1
cooperates (1)
10:1
cooperative (2)
15:7;80:22
copies (1)
78:24
copy (8)
17:11;69:22;72:2;
76:2;77:9,16;78:5,21
copying (1)
78:1
corporate (3)
4:16;10:22;100:7
Corporation (2)
37:4;78:20
correctly (1)
21:7
corruption (1)
14:23
Counsel (7)
2:4,12;32:6;71:7;
72:16,24;107:17
counsel's (1)
11:6
counter (3)
6:4;21:7;91:12
counterclaims (1)
3:21
countered (3)
21:10,12;91:6
counters (1)
91:13
country (3)
9:25;15:6;49:20
couple (3)
16:15;67:6;95:21
course (9)
10:24;12:24;26:2,
2;95:4;99:14;102:22;
107:7;108:9
COURT (211)
2:6,23;3:4,10,13;
8:17;9:16,19,20,21;
11:10;16:1,17,21;
17:9;19:23;22:4;
23:16;24:8,15;25:3,
23;26:10,15;27:10,

14,15;28:12,13;29:2,
6,11,13,15,20;30:21;
32:11,14;34:7;35:7,
16;37:8;38:19,25;
40:13;41:12,19,21;
43:11,23;44:20,25;
45:24;46:9,11,13,17;
50:13;51:4,6;53:4,
10;54:6,24;55:15,22,
25;56:3;58:15,25;
59:3;60:8,22;61:2;
62:9;63:13;66:8,17;
67:1,9,14;68:13,16,
18,24;69:10,21,25;
70:1,5,9,11,21,24;
71:1,3,5,14;72:8,10,
12,17,19,21;73:2;
74:8,11,17,21;75:13,
23;76:7,23;77:3,7,9,
12,12,15,18;78:14;
85:2,23;86:2,7,24;
87:11,14,20;88:24;
89:10,13;90:18,22;
92:2,8;93:2,5,8,12,
14,16,19;94:3,4,6,11,
15,18,21,25;95:6,16,
22;96:10,15,19;97:4,
8,10,12,17,21,23;
98:4,5,19,23;99:7,11,
15,18,20,21,22,23;
100:2,6,12,17,25;
101:6,10,12,15,17;
102:9,19,21,23;
103:17,23;104:3,8,
19;105:12,16,19,22;
106:2,9,12,16,21,25;
107:8;108:1,9,18;
109:3,7
courtroom (1)
9:12
courts (1)
46:14
cover (1)
62:18
coverage (1)
62:20
covering (1)
61:17
CPLR (4)
5:24;9:6;24:24;
45:22
credibility (2)
26:20;46:15
creditors (2)
3:25;98:9
cross (18)
13:6;16:12;47:22;
75:1;77:5;89:18,20,
20,23;90:4;91:4;
95:16;96:2,3,5,6,8,15
cultural (1)
15:18
current (3)

98:25;102:9;
106:18
currently (1)
51:16
cutting (1)
20:11

D

daily (2)
52:15,16
date (2)
41:4;49:7
dated (1)
45:10
daughter (1)
48:19
day (3)
42:8;50:23;51:1;
52:15;58:7;81:3;
91:19
DC (1)
45:8
deal (1)
109:22
dealing (3)
9:16;62:15;102:17
Dear (3)
20:16;21:15,18
debt (2)
8:22;107:5
decide (1)
103:1
decided (1)
108:1
deciding (4)
107:6,11,14,16
decisions (1)
96:8
deep (1)
109:8
defaulted (1)
6:18
defeat (1)
8:17
defendant (6)
2:20;3:20;10:3;
98:9;100:25;106:19
defendants (2)
12:16;108:18
defendant's (7)
76:20,21,24;77:13,
23;78:13;101:1
define (2)
52:1,1
defraud (2)
3:25;98:9
defrauded (2)
8:10,13
delivered (1)
76:16
demanded (1)
3:20

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. Case 22-80733, Doc 440-15   Filed 05/25/22  Entered 05/26/22 15:30:37  RECEIVED NYSCEF: 05/08/2019
Page 115 of 126
Tarim Alliance Asia v.
Kwok Ho Wan
April 26, 2019

**demonstrate (2)**
5:15;9:1

**demonstratives (1)**
90:19

**denied (3)**
8:3;24:21;38:22

**denies (3)**
7:1,3;107:4

**denying (1)**
6:3

**depose (3)**
41:25;42:3,10

**deposed (8)**
7:18;29:23;30:3,
19,22;31:3,10,24

**deposing (2)**
36:12,12

**deposit (11)**
6:16;61:17,20;
62:3;63:19,24;64:7;
67:18;80:24;81:1,3

**deposition (42)**
8:2,10;9:5,7,13;
11:7,16;12:4;17:12;
28:4;29:19,22;31:25;
32:7,8,22;33:16,18;
34:20;35:14;38:12,
23;39:25;42:23;43:2;
66:13,15;73:18;89:4;
92:4,9;93:17,21;
94:12,13;95:17,20;
96:11,21,23;101:13;
107:15

**depositions (1)**
13:4

**depth (1)**
103:12

**derived (2)**
62:3,4

**describe (1)**
58:14

**designated (18)**
13:6;89:18,18;
90:5;91:7,13,15;92:5,
6,13,14,16,19,24;
93:1,23;96:9;97:2

**designations (14)**
13:7;89:20,21,24;
91:4,4,8;93:23;
95:16;96:2,2,3,5,6

**detail (2)**
58:15;103:12

**detailed (1)**
59:25

**details (2)**
38:9;39:7

**detain (1)**
49:19

**determination (3)**
102:24;103:4,14

**determining (1)**
103:2

**developer (1)**

---

**15:9**

**diced (1)**
13:3

**dictionary (1)**
53:22

**difference (6)**
35:8;36:9,11,14;
53:2,4

**different (10)**
18:8,10,11;27:9;
29:8,8,9;66:11;67:6;
96:6

**difficult (1)**
75:18

**difficulty (2)**
31:6;42:22

**digest (1)**
47:11

**direct (11)**
9:22;17:17;20:16;
26:6;28:23;40:14,21;
54:15;56:14;69:8,17

**directed (2)**
102:5;107:17

**directly (1)**
8:6;46:15,16

**Directors (3)**
57:22;87:15;106:4

**disagreement (2)**
12:24;44:19

**disappeared (3)**
47:9;51:24;52:20

**disclosure (1)**
75:23

**discovery (9)**
15:21,23;16:2;
44:18;102:3,12;
103:8;109:3,21

**discrepancy (3)**
45:7,9,17

**discretionary (1)**
104:4

**discuss (7)**
22:14;37:23;38:1,
2,4;44:8,24

**discussed (1)**
62:17

**discussion (4)**
24:3;33:5;38:14;
39:5

**discussions (3)**
19:3;37:21,24

**displayed (7)**
3:12;19:22;23:15;
28:11;40:12;43:22;
69:9

**dispossessed (1)**
98:12

**dispute (4)**
4:17;18:3;44:4,21

**disputed (1)**
12:6

**divorce (4)**

---

**50:8,13,18,22**

**document (37)**
17:15;19:20;23:13;
25:17;26:1,4,7,13,21;
29:10;40:15;41:10,
16,20;43:4,14,21;
44:20;45:3,10;46:4,
20,21,23;54:23;
59:24;68:3;69:15,19,
20,24;71:12,16,17,
23;77:14,20

**documentary (1)**
7:5

**documentation (3)**
57:14;59:22;65:14

**documents (42)**
15:25;27:4,5,9;
28:10,10;31:4,5,13,
21;39:8;42:7,8,12,14,
19,20,22,24;45:7,8,
18;47:13,15;49:17;
52:5,14;53:10,13,14,
17,20,23,25;54:1,2;
60:6;67:19;78:24;
79:10,11;84:12

**dollars (1)**
60:1

**dominates (1)**
8:15

**domination (1)**
4:16

**done (4)**
14:12;15:20;65:12;
105:4

**double (2)**
61:6;85:6

**doubt (1)**
22:7

**down (6)**
38:8;39:6;55:22;
63:19,25;107:3

**drafted (1)**
27:1

**draw (2)**
63:19,25

**drop (1)**
47:10

**duly (5)**
17:1;56:7;59:2;
97:18,19

**during (7)**
6:7;11:16;12:25;
61:5;95:4,20;105:1

**duty (1)**
10:25

---

**E**

**earlier (2)**
79:2;99:2

**earliest (3)**
21:16,19,22

**early (1)**

---

**59:10**

**ears (1)**
13:11

**East (1)**
17:6

**edit (1)**
99:2

**educate (1)**
10:25

**Edward (1)**
2:14

**effect (1)**
107:1

**effectively (1)**
56:25

**efficient (1)**
90:16

**effort (2)**
5:15;8:17

**efforts (5)**
5:25;14:3,20;
18:24;19:17

**either (12)**
6:14;8:10;22:10,
20;28:15;42:15,16,
17;47:9;51:23;84:7;
90:1

**elder (2)**
48:14;50:10

**element (1)**
98:8

**elements (2)**
3:18;4:15

**elicited (1)**
32:18

**eliciting (1)**
28:21

**else (6)**
52:18;54:13;55:21;
84:21;88:13;105:8

**else's (1)**
13:16

**email (15)**
10:6;19:25;20:3,6,
7,8,12,17,25;21:1,8;
22:12;77:25;78:3;
103:21

**emailed (1)**
22:11

**emails (2)**
19:15;20:14

**emphasize (1)**
42:6

**employed (1)**
56:18

**employee (2)**
48:22;51:23

**employer (1)**
18:22

**encumbered (1)**
98:12

**encumbering (1)**
24:17

---

**encumbrance (5)**
5:24;24:19;44:9;
45:22,23

**end (2)**
49:22;65:22

**enforcement (1)**
98:10

**England (1)**
65:1

**English (8)**
15:1,4,5,14;19:7,
10,11;30:24;31:1;
47:7;53:18,19;68:3;
75:7;82:25;83:1,9,11,
14,15

**enough (6)**
5:3;16:22;51:4;
72:20;90:21;109:8

**enter (1)**
85:11;86:22

**entered (6)**
75:23;76:6,16;
79:4;106:19;107:2

**entire (1)**
92:17;94:1

**entities (16)**
8:4,15;10:19,20,21,
23;36:21,25;37:2;
100:11,14;104:21,25;
105:3;108:12;109:18

**entitled (1)**
9:6,15;96:21;
101:20

**entitlement (1)**
102:14

**entity (18)**
27:12;29:8,8,9;
52:5;81:20,23;
101:18;105:16,22,24;
106:2,6,7,8,10,16;
107:13

**error (1)**
85:3

**especially (2)**
27:23;75:10

**establish (2)**
3:24;100:18

**established (4)**
70:11,14;102:14,
25

**establishes (1)**
102:19

**estate (1)**
47:6

**estimated (2)**
61:18;103:18

**Europe (2)**
48:7;49:3

**evaluate (1)**
26:19

**evasive (1)**
9:14

**evasiveness (2)**

9:18,23
even (16)
11:18;12:2;30:20,
24;32:7;35:6;36:16,
20;42:21;46:25;
47:13;55:7;62:10;
86:21;104:16;109:15
event (1)
75:24
everybody (1)
52:17;99:10
evidence (36)
4:5,8,8,9,21;5:7,8,
9,18;7:5;9:22;12:22;
13:19,23;16:8,16;
19:24;23:22;24:10;
25:2,9;26:22;41:11;
53:8;60:7;69:19,20;
72:10,21;78:13;
90:23;92:11;93:1,25;
103:15;108:25
evidentiary (2)
90:22;103:11
exactly (3)
6:12;9:25;14:11
EXAMINATION (8)
17:17;47:22;55:16;
56:14;75:1;84:22;
96:15;98:20
examine (1)
16:12
examined (3)
17:2;56:8;97:20
examples (1)
13:9
exceeds (1)
3:20
excerpts (1)
8:3
exchanged (1)
19:15
excised (1)
95:20
Excluding (1)
61:5
excuse (4)
11:5;19:16;20:11;
95:2
excused (2)
55:23;88:25
excusing (1)
61:9
execute (1)
67:16
Executive (3)
6:6;56:23;78:8
exhibit (36)
3:12;19:22;23:15;
24:1,2,9;28:11;40:10,
12,24;41:12,13,14;
43:21,22;53:7;69:9,
21;71:16,21,22;72:1;
76:20,22,23,24;77:3,

5,10,23;78:13,18;
92:4,5;93:20;96:11
exhibiting (1)
92:10
exhibits (9)
12:18,20,25;15:1;
24:2;42:4,5;53:11,12
exist (2)
44:9;54:23
existence (2)
46:13;107:5
expeditious (1)
32:18
expensive (1)
6:2
explain (4)
6:15;18:5;30:16;
36:11
expressions (1)
13:19
extant (2)
46:3,6
extended (1)
14:19
extensive (2)
14:20;32:15
extensively (1)
11:5
extent (6)
25:5;90:5;91:7,12;
92:8;93:24

F

fact (4)
6:4;21:5;102:16;
104:24
factor (1)
9:20
facts (5)
5:19;36:6;37:9;
100:15;108:2
fair (9)
12:7;16:22;60:21;
72:20;79:9,15;85:7,
8;90:21
fairy (1)
95:10
False (3)
7:15;46:13;107:9
familiar (1)
3:2
family (50)
14:19,19;15:10;
17:20,21,22,25;18:1,
2,3,5,5,8,8,10,10,10,
11,12,13,14,15,18,22;
23:6;47:8;48:5,6,9,
10,11,12,14,19,24;
49:6,9,13,20,21;50:7;
51:12,13,15,20;52:2,
2,8,11;53:24
far (4)

5:16;87:14;88:19;
102:13
fashion (1)
32:18
fashioned (1)
109:14
favor (1)
98:11
FBAKOY (2)
40:22,25
featured (1)
4:10
February (3)
18:18;59:10;63:3
feel (1)
108:24
feet (1)
90:19
feng (1)
63:7
few (3)
9:3;23:25;87:18
Fifth (1)
98:3
fight (1)
11:15
figure (3)
47:12;53:22;91:16
file (1)
42:20
filed (3)
9:24;44:12;46:21
files (1)
43:1
fill (1)
76:21
final (3)
102:24;103:6,14
Finally (3)
7:6;8:14;11:20
financial (11)
7:19,22;31:6;47:5;
59:15,17,25;79:11;
90:11,12,14
financials (1)
7:24
find (1)
68:22
findings (2)
32:16;102:15
fine (8)
83:11,14;89:15;
95:24;97:6;99:17,22;
109:18
fingers (1)
13:11
finished (1)
48:7
firm (2)
62:14;69:13
firms (2)
62:15;92:3
first (37)

3:17,18,21;4:17;
5:1,13;10:5;12:13;
16:15,23;30:20,25;
34:4;39:21;40:14,22,
24;48:4;49:25;50:1;
53:16;54:15,20,21;
59:19,19,24;64:14;
69:2;78:17;79:24;
90:14;95:19;97:15;
98:22,25;109:14
five (4)
39:6;48:16;49:11;
62:18
five-year (1)
61:18
fluent (2)
83:15,16
focus (1)
4:19
folder (1)
59:21
follow (2)
34:5;84:24
followed (1)
66:1
following (5)
4:4;29:23,24;
103:7;107:4
follows (3)
17:2;56:8;97:20
force (1)
50:7
foreign (6)
6:11;31:1;61:10;
85:7,15;87:8
forge (1)
47:17
forged (5)
49:16,17,18;50:21,
25
forget (1)
49:7
form (4)
4:16;74:18;81:7;
95:4
former (3)
58:7,9;84:17
forth (1)
20:23
forward (2)
12:11;20:20
fought (1)
11:13
found (2)
60:25;70:22
four (3)
3:16;5:10;69:17
France (1)
50:2
fraud (3)
4:25;5:5;46:16
fraudulent (1)
25:1

freedom (1)
14:23
French (1)
31:1
Frick (1)
58:8
front (13)
24:8,14,20;25:2;
30:9,21;31:7;46:22;
50:22;51:2;53:6;
54:12;97:3
frustrate (5)
4:1;5:1;11:9;
24:18;98:10
full (4)
13:9;17:4;56:9;
93:10
fully (1)
3:1
further (1)
47:20

G

Garo (1)
2:17
gather (11)
27:5,8;28:3;33:6,
18;34:17;35:19;37:1;
41:6;53:10,16
gathered (13)
22:9,14,19;30:17;
31:20,21;36:22;37:7,
10,13;39:22;53:2,13
gave (5)
26:19;43:25;51:2;
59:21;79:9
gears (1)
62:21
general (3)
56:25;57:11,11
generally (3)
58:6,14;82:21
Genever (42)
8:15,24;10:19;
33:14,21,24;34:13,
15,15,22,23;36:21,
25;37:4,4;39:12,15,
19;40:2;67:16;76:6;
88:20,20;95:8,9;
100:10,14;104:19,20,
21,25;105:3,13,16,
17,23;106:2,6,10,22,
23;107:11
Gilbert (2)
77:25;81:11
given (13)
9:9;25:6;26:12,13;
31:12;36:10;76:2;
79:16;98:21;99:4;
101:15;109:1,13
gives (1)
25:7

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 117
RECEIVED NYSCEF: 05/08/2019
Case 22-50073   Doc 440-15   Filed 05/25/22   of 126
Pacific Alliance Asia v.
Kwok Ho Wan
April 26, 2019

**giving (13)**
20:18;29:24;30:11;
32:3;34:2,11,25;
38:17;40:8;42:1;
80:13;106:17,24
**globe (1)**
6:20
**GMail (1)**
20:4
**goes (3)**
46:15,16;107:3
**Golden (13)**
23:5;27:3;42:7;
47:2;51:16,19,21,23,
25;52:1,11,22;53:24
**Good (13)**
2:9,13,21,24;
12:12;13:5;47:12,24;
56:16;75:3,4,8,10
**Government (3)**
14:18,21,22
**graciously (1)**
96:22
**grant (1)**
103:13
**grateful (1)**
36:10
**great (1)**
15:15
**greater (1)**
109:9
**grew (1)**
14:16
**grind (1)**
73:6
**grounds (2)**
3:23;70:8
**grow (1)**
14:16
**guarantee (4)**
61:25;67:19;68:19;
100:3
**guaranteed (1)**
8:23
**guess (4)**
30:15;32:2;35:13;
71:1,1
**guessing (1)**
70:25
**Guo (23)**
17:22,25,25;18:2,5,
5,22;23:6;48:4,6,9,
10,12,24;49:6;51:12,
13,15,19;52:2,8,11;
53:24
**G-U-O (2)**
17:22;18:2

**H**

**hacked (1)**
20:8
**half (1)**

45:25
**halfway (1)**
91:19
**hand (2)**
77:3,16
**handed (10)**
17:15;19:20;23:13;
43:14;69:15,24;
71:23;77:14,20,22
**handle (3)**
27:24;35:11;51:25
**handled (3)**
15:24,24,25
**hands (4)**
31:12,22;35:12;
47:16
**handy (1)**
4:7
**happen (2)**
31:2;50:19
**happened (9)**
6:9,13;9:13;10:15;
11:1;12:8;27:23;
33:15,17
**happening (4)**
14:3,4;38:9;42:24
**happens (1)**
85:20
**happily (1)**
2:7
**happy (5)**
44:12;46:19;91:20,
21;99:5
**hard (2)**
9:21;91:3
**HARMON (69)**
2:21,22;5:25;
12:12;34:3;43:16;
60:5,20;62:6;63:11;
66:6,9,15;67:12;68:9,
15,17;69:12,18;70:7;
71:11,15,25;72:9,18;
73:4;74:5,14,16,20;
75:2,5;76:19,24;77:4,
8,11,13,16,19;78:12;
83:17,21;84:21;85:4,
9;87:1,18,23;88:23;
89:2,12,15;92:21;
94:17,19,23;95:2;
100:24;101:4,7,11,
14,16,22;102:22;
108:20;109:6,11
**Haroche (1)**
81:11
**hear (14)**
3:16;13:20,25;
14:10;16:3;32:16,17;
33:6;43:10;44:3;
47:25;89:11;90:18;
95:5
**heard (15)**
29:7,7;30:10;33:5;
35:20;37:7,10;38:25;

39:3;49:14;74:8;
90:8;95:7;98:22,24
**hearing (11)**
13:1,8,20;15:22;
35:19;45:24,25;55:5;
63:7;90:22;98:7;
100:18;103:11
**heart (1)**
109:23
**heels (1)**
66:23
**held (3)**
57:2;81:7,14
**help (11)**
27:8;28:9;42:18;
45:13;47:8,18,18;
52:13,13,14;73:12
**helpful (1)**
4:11
**helps (1)**
7:3
**Hey (2)**
7:12;12:5
**highly (2)**
84:11,12
**himself (5)**
10:24,25;18:7;
51:15;86:20
**Ho (4)**
2:2;17:24;59:4;
98:2
**H-O (1)**
98:2
**Hodgson (2)**
2:19,22
**hold (2)**
60:10,14
**Holdings (2)**
37:4,4
**holds (1)**
105:24
**Hong (4)**
14:17;18:15;49:3;
84:7
**Honor (106)**
2:9,13,21,24;3:1,9,
14;4:22;5:4;8:1,12,
25;9:10,13;11:4,20;
12:10,12;13:2,5,8,21;
14:12;15:16;16:9,10,
14,20,22;17:10,11;
19:19;23:22;24:4,12,
13;29:14;30:21;34:3;
38:22;41:8;43:13,16,
21;44:1,10;46:7,8,18;
47:21;48:3;51:9;
55:3,13,14;60:5,20;
62:6;63:11;67:12;
68:9;69:18,22;70:7;
71:11,25;74:5;76:19;
77:1,4,8,16;78:12;
83:17;89:2,7;90:7;
92:12;93:23;94:17,

23;95:2,3;96:25;
98:21;99:17;100:5,9,
19,24;101:14,16;
102:1;103:9,10;
104:2,6;105:21;
106:1,15;107:7,22,
24;108:15;109:6,14
**Honor's (1)**
13:18
**hope (1)**
13:21;16:6,7
**hopeless (1)**
42:18
**Hoplamazian (3)**
2:17,17;69:22
**Horvitz (18)**
7:16,16,22;8:2,8,
12;58:2;81:16;84:2,
8,24,25;85:3;89:4;
90:7,8,12;93:2
**Horvitz's (2)**
58:6;90:24
**hotel (4)**
6:10,14;7:21;57:8
**hour (4)**
2:7;45:25;92:13;
94:2
**Huang (1)**
97:15
**H-U-A-N-G (1)**
97:16
**hundred (2)**
18:6,9
**husband (13)**
49:13,19,19,19,20,
22;50:1,4,8,10,11,19,
23

**I**

**ID (2)**
40:22,25
**idea (3)**
33:1;53:1;58:15
**identification (1)**
77:23
**identified (1)**
108:12
**identify (1)**
3:6
**ignore (1)**
30:2
**imagine (1)**
9:21
**IMG (1)**
58:10
**immediate (2)**
48:11;104:12
**impact (2)**
73:10;102:20
**impeach (2)**
28:17,20
**impeachment (4)**

23;95:2,3;96:25;
98:21;99:17;100:5,9,
19,24;101:14,16;
102:1;103:9,10;
104:2,6;105:21;
106:1,15;107:7,22,
24;108:15;109:6,14
**Honor's (1)**
13:18
**hope (1)**
13:21;16:6,7
**hopeless (1)**
42:18
**Hoplamazian (3)**
2:17,17;69:22
**Horvitz (18)**
7:16,16,22;8:2,8,
12;58:2;81:16;84:2,
8,24,25;85:3;89:4;
90:7,8,12;93:2
**Horvitz's (2)**
58:6;90:24
**hotel (4)**
6:10,14;7:21;57:8
**hour (4)**
2:7;45:25;92:13;
94:2
**Huang (1)**
97:15
**H-U-A-N-G (1)**
97:16
**hundred (2)**
18:6,9
**husband (13)**
49:13,19,19,19,20,
22;50:1,4,8,10,11,19,
23

**24:8;25:8;29:22;**
30:1
**important (1)**
9:9,10;30:24
**Importantly (1)**
8:25
**impose (1)**
61:13
**impossible (1)**
91:15
**improperly (1)**
107:17
**inadequate (1)**
79:25
**inadvertently (1)**
101:18
**inappropriate (3)**
11:13,18;72:5
**include (4)**
96:4;104:25;105:3;
109:18
**included (2)**
7:24;58:24
**including (9)**
18:6;73:3;18;
48:19,22,25;49:1;
52:12,13
**inconsistent (3)**
25:6;26:17;38:19
**index (1)**
2:1
**indicated (5)**
32:20;76:12;96:1,
18;108:3
**indicating (1)**
31:11
**individuals (1)**
49:1
**induce (2)**
7:21;8:19
**inequity (1)**
5:2
**information (72)**
7:20,23,24;22:10,
10,15,15,16,19,20;
27:2,5,6,6,9;28:3,3;
30:16,17,18;31:21;
33:6,7,19;34:17;35:3,
9,11,19,19,24;36:1,
14,23;37:1,7,10,12,
13,14,20;39:8,22;
41:7;42:7,8;43:9;
49:18;52:14;54:9;
58:24;59:15,18,20;
60:1,2,4,10;79:3,11,
15,18,25;80:2,4;
90:11,12,14;98:22,
24;101:3,8
**initiated (2)**
101:19;107:13
**injunction (2)**
109:19,19
**inquired (3)**

Kumasamli Alliance Asia v.
Kwok Ho Wan
April 26, 2019

64:10;66:3;82:3
**inquiry (1)**
  82:6
**instructed (2)**
  11:10;83:2
**instructing (1)**
  11:24
**instruction (1)**
  11:18
**instructions (1)**
  11:6
**intend (1)**
  100:22
**intended (1)**
  92:23
**intending (1)**
  99:4
**intends (1)**
  11:8
**intent (10)**
  3:25;4:6,18;5:1;
  14:22;24:18;25:1;
  98:9;107:18;108:11
**intention (1)**
  103:11
**interest (1)**
  107:23
**interested (3)**
  9:8;99:12,13
**interests (1)**
  8:4
**International (1)**
  58:10
**interpreter (7)**
  97:10,12,14,15,18,
  21;103:18
**interrogating (1)**
  49:19
**interrupt (2)**
  91:2;94:8
**interrupting (1)**
  41:9
**into (14)**
  12:22;19:11;24:10;
  29:25;30:23;45:21,
  25;66:11;72:10;76:7;
  85:11;86:22;92:11;
  103:11
**introduce (1)**
  25:9
**involve (5)**
  27:24;35:11;38:8,
  9;86:18
**involved (8)**
  27:7;57:12,14,18;
  87:3,7,8;92:3
**Ira (1)**
  77:25
**irrelevant (1)**
  67:13
**irrespective (1)**
  90:1
**Islands (1)**

106:8
**issue (25)**
  3:17,21,22;4:12,12,
  14;15:17,18;24:4,10,
  15,19;26:14;41:18;
  51:25;54:16;55:4;
  88:16;91:14,24;
  102:2,7,17;103:12;
  108:2
**issued (2)**
  88:1;104:4
**issues (12)**
  2:25;3:6;5:22;
  10:15;15:21,23;16:2;
  24:1;52:21;54:12;
  100:8;109:22
**issuing (1)**
  102:21

**J**

**jail (4)**
  14:21;48:17,18,21
**Jillian (1)**
  2:19
**job (1)**
  42:16
**joined (1)**
  102:2
**Jones (1)**
  58:7
**judgment (9)**
  4:1;5:1;6:22;9:2;
  11:9,10;24:18;98:10;
  109:25
**June (1)**
  78:21
**Justice (2)**
  7:14;25:23

**K**

**Kathy (10)**
  19:1,6,7,12;21:8;
  22:8,11,20,23;64:14
**keeps (2)**
  41:9;88:4
**kept (1)**
  59:21
**key (2)**
  5:22;23:25
**kidnap (1)**
  47:3
**kidnapped (3)**
  42:15;47:9;48:21
**killed (1)**
  11:25
**kind (3)**
  31:5;34:17;39:23
**kinds (1)**
  37:12
**Kingdom (1)**
  84:17

knew (13)
  21:1;22:4,8,25;
  25:22;27:4;69:2;
  76:5;80:12,17,19;
  81:22;105:2
**knowledge (39)**
  5:20,20;26:24;
  27:7,21;28:1;29:11;
  31:20,21;32:21;33:3,
  8,11;34:14;35:18,22;
  36:6,7,22;37:3,6,9,
  13,14,15;43:9;47:5,6;
  53:1,2;54:8,16,18,22;
  55:7,9,10;62:7;64:3
**known (2)**
  3:20;84:8
**knows (3)**
  9:25;28:14;52:18
**Kong (4)**
  14:17;18:16;49:3;
  84:7
**Kwok (154)**
  2:3;3:25;5:16,22;
  6:7,13,18,24;7:1,3,7,
  20,25;8:3,9,14,15,23;
  9:1,10,13,24;10:5,10,
  20;11:6,17,23;13:10;
  14:6,7,8,11,13,15,15,
  16,23,25;15:4,16,19;
  16:11;17:19,24;18:1,
  13;19:3,6,6,9,9,17;
  21:9,12,24;22:4,8,13,
  20,22,25;23:4;27:10,
  18;28:14,23;29:3;
  33:13,20;37:24;38:5,
  14;39:1,11,14,19;
  40:1;48:13,13;51:15;
  59:4,4,12;60:9;61:5,
  9,22;62:16,19,24;
  63:18;64:9;65:4,14,
  22;66:3,10;67:10,15,
  24;68:4,13,21;69:5;
  70:5,12,18;71:6;
  73:6;74:18;75:6;
  76:6,12,17;78:25;
  79:12,21;80:13;81:1,
  6,22;82:2,10,23;
  84:10;85:11,14,18;
  86:14,16;87:5;90:10;
  95:10,11;97:9,11;
  98:2,20;99:3;101:1,
  17;104:11;105:7,14,
  18,19;106:20,22;
  107:4,8,12,14,17
**K-W-O-K (2)**
  18:1;98:2
**Kwok's (36)**
  5:14,17;8:2;9:5;
  11:23;12:2;14:2;
  17:21,23;18:3,15,24;
  19:1;23:7;48:11;
  58:3;62:15,22;64:16,
  21,24;65:4,6;66:19;

68:10;71:6;72:16,24,
  25;74:13;75:7;82:18;
  83:5,23;84:4;101:13

**L**

**laid (2)**
  44:2;100:21
**language (10)**
  14:25;15:17;30:24,
  25,25;31:1,2;36:15;
  53:17;54:12
**last (13)**
  11:20;13:10;18:21;
  26:6;32:19;44:2;
  50:9;82:22;86:8;
  95:7;97:15;102:6;
  109:12
**later (2)**
  9:11;68:23
**law (2)**
  62:14;70:2
**lawsuit (1)**
  78:25
**lawsuits (1)**
  9:24
**lawyer (3)**
  39:8,9;50:10
**lawyers (1)**
  54:12;69:5
**Leading (6)**
  27:13;54:3;66:6,9,
  11;74:7
**learn (4)**
  25:24;33:16;47:11;
  68:25
**learned (6)**
  29:10;33:15,17;
  48:12;64:23;70:14
**learning (2)**
  25:24;31:1
**lease (10)**
  7:10;62:1;67:20,
  22;68:7,10,16;70:13;
  88:17,21
**least (3)**
  47:7;70:16;95:21
**leave (1)**
  33:9
**leaving (2)**
  42:17;50:5
**left (5)**
  42:17;47:9;49:10,
  10;51:23
**leftover (1)**
  51:24
**legal (8)**
  4:5;10:1;25:17,19;
  26:1;31:6;53:20;
  105:12
**legally (1)**
  87:13
**length (1)**

83:10
**lengthy (1)**
  98:20
**less (1)**
  99:3,9
**letter (8)**
  64:25;71:9;72:4,7,
  8,19;78:5,17
**letters (1)**
  84:14,16
**liar (1)**
  47:17
**liberties (1)**
  95:11
**lied (3)**
  8:10;107:12,14
**life (1)**
  51:21
**lifted (2)**
  44:18;45:19
**light (1)**
  61:1
**likely (1)**
  12:17
**limited (3)**
  31:15;54:11;80:12
**line (2)**
  34:5;91:24
**lines (3)**
  38:13;91:21;108:2
**listed (2)**
  58:17;106:12
**listen (1)**
  53:18
**litigating (1)**
  102:13
**litigation (3)**
  52:13;101:19;
  107:13
**little (6)**
  47:7;51:10;56:16;
  57:10;92:3;105:15
**live (3)**
  49:2,3;98:3
**lives (6)**
  7:18;25:7;83:12;
  93:7,9,10
**living (1)**
  33:9
**LLC (23)**
  6:11,11;34:18,18;
  37:4;61:6,10;81:12,
  14;85:5,6,7,15;86:12,
  13,17,20;87:3,5,8;
  105:13,14,17
**LLC's (1)**
  6:11
**located (1)**
  48:25
**logic (1)**
  39:10
**London (1)**
  83:12

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO.
Case 22-10073...Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 119
of 126

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Tai... Finance Asia v.
Kwok Ho Wan

April 26, 2019

**long (5)**
47:11;57:2,8;
92:16;108:21
**longer (4)**
14:4;70:17;102:23;
103:24
**long-term (1)**
48:22
**look (18)**
12:10;23:12;25:12;
28:9;13;29:3,19;
32:11;41:19;53:14,
21;54:7;62:9;70:11;
78:16;92:2;93:2;95:6
**looking (1)**
50:15
**Looks (1)**
40:20
**lot (19)**
19:8;20:8,18;
24:16;27:1;31:2;
42:8,20;47:8;48:18;
49:16;50:21;52:19,
21;53:17;54:9;75:12;
98:6;99:3
**lots (2)**
29:21;51:24
**loud (2)**
17:3;56:10
**loyal (1)**
50:1
**LP (1)**
73:13
**lunch (2)**
99:1,8

**M**

**main (2)**
104:9,10
**Mainland (1)**
49:2
**mainly (1)**
59:23
**maintenance (3)**
61:18;62:20;81:4
**makes (2)**
9:18;99:1
**making (5)**
45:5;52:16,17;
66:4;103:14
**malfeasance (1)**
5:2
**management (2)**
57:8;58:10
**manager (3)**
56:25;57:11,11
**manages (1)**
83:2
**Mandarin (4)**
30:25;97:14,17,21
**Mannis (1)**
65:1

**many (6)**
4:3;11:16;44:17;
50:5;57:17;81:19
**March (4)**
41:24;43:6;63:4,5
**Mark (3)**
2:21;72:1;75:5
**marked (1)**
77:22;89:6
**market (6)**
6:3;55:7,11,12,18,
20
**married (1)**
50:3
**material (1)**
8:18
**matter (4)**
2:2;24:22;104:1,20
**matters (1)**
97:23
**may (23)**
8:21;9:7;19:19;
33:6;38:1;41:4,22;
43:5,13;47:1;55:22;
67:10;70:10;74:18;
75:11;77:16;83:18;
86:10;91:24;95:6;
104:15;108:5;109:2
**maybe (3)**
12:4;53:18;99:1
**mean (1)**
35:2;36:22,24;
38:1,1,4;48:10;
52:16;54:19;67:1;
91:18
**meaning (2)**
36:13;55:10
**means (1)**
22:10
**meet (5)**
4:5;7:3;16:1;50:1;
107:24
**meeting (7)**
27:25;62:4,13;
83:22,23,25;84:2
**meetings (1)**
58:19
**meets (1)**
4:21
**member (5)**
18:10,14;48:19;
105:14,19
**members (2)**
18:13;57:16
**memorandum (1)**
70:2
**memorialized (1)**
32:15
**memory (3)**
7:1;30:22;42:23
**mention (3)**
22:14;38:2;39:23
**mentioned (4)**

**38:6,6;39:18;61:12**
**merits (8)**
10:13;12:17;24:3;
102:4,12,16;103:6;
109:21
**message (3)**
19:9;11;22:22
**messages (1)**
10:7
**messenger (2)**
22:18,21
**met (4)**
59:24;75:5;102:11;
107:23
**Michael (4)**
56:11;58:2;90:7,7
**mid (1)**
71:2
**might (2)**
53:6;98:10
**Miles (7)**
20:17;21:16,19,21,
24;48:13;59:4
**Mileson (5)**
64:16,20,21;82:17;
83:6
**million (8)**
21:2,7;22:4,23;
61:21;63:23,24;64:1
**millions (1)**
42:12
**mind (1)**
53:3
**minimum (1)**
106:21
**Minister (1)**
84:17
**minute (1)**
61:12
**minutes (5)**
9:4;32:19;39:6;
58:19;91:9
**misreading (1)**
7:14
**misrepresentations (6)**
7:7;8:8,17,19;9:19;
24:25
**misrepresenting (1)**
8:9
**missing (1)**
95:6
**misstates (1)**
28:25
**mockery (1)**
9:14
**Mom (1)**
51:2
**moment (2)**
30:2;83:17
**money (3)**
8:20;33:2;99:13
**month (5)**
50:10;55:19,19,20;

**70:16**
**monthly (1)**
6:18
**months (7)**
44:17;45:19;49:11,
14,24;50:12;78:23
**more (23)**
6:1;9:22;18:6,9;
20:9;25:1;48:10,13,
14;49:14,24;50:11;
55:14;59:25;83:21,
22;86:21;89:9;90:16;
94:19;102:9,15;
108:25
**morning (10)**
2:7,10,13,21,25;
3:6;12:12;47:24;
52:25;56:16
**MOSS (86)**
2:9,13,14,24;3:8,
11,14;10:10,18;11:4,
20;12:10;16:14,19,
22;17:11,18;19:19,
24;23:17,22,24:12;
28:4;34:3,8;38:22;
41:14;43:13,19;
44:10;46:7,10,18;
47:20;54:3;55:14,17,
21;89:23;90:2,4,21,
24;91:6,11,17,20;
92:1,7,12,20,25;93:4,
7,9,13,15,18,22;94:5;
95:15;96:14,16;97:9;
98:21,24;99:9,14,17;
100:5,9,13,19;104:2,
5,9;105:15,18,21,25;
106:6,11,15,18;
107:7,21
**most (1)**
54:9
**motion (11)**
5:18;8:18;11:21;
12:16;13:21;23:8;
25:15;29:21;73:13;
108:6,17
**motions (5)**
13:24;16:6,21
**move (8)**
3:2;46:18,19;49:5;
56:17;70:2;99:2;
109:21
**moved (1)**
63:18
**moving (1)**
72:10
**much (4)**
63:24;81:3;97:1;
103:24
**multi-media (1)**
13:2
**multiple (3)**
48:25;70:8;94:9
**must (3)**

**7:14;8:9;106:20**
**Myself (1)**
36:4
**mysterious (1)**
107:10

**N**

**name (23)**
6:9;7:1;17:4,5,23,
25;18:1;20:19;56:9;
60:14,18;64:16,17,
18;68:14;74:4;80:19;
82:22;88:8;97:15,15,
25;98:3
**necessarily (3)**
85:16;86:18;87:9
**necessary (2)**
14:7;61:1
**need (17)**
6:23;10:2;11:15;
25:9;32:13;45:2;
50:13;53:7;54:13;
74:11;76:21;77:9;
83:3;98:20;107:3;
108:3;109:16
**needed (3)**
2:7;32:8;67:5
**needs (1)**
15:18
**negotiate (1)**
27:25
**Neither (1)**
4:25
**nephew (1)**
48:20
**nephews (1)**
48:15
**nervous (9)**
30:19,20,22;31:4,8,
22;36:16,18;47:14
**New (34)**
6:11;9:18;17:6,6;
18:19;23:5;27:3;
34:15,18,18,23;49:5,
8;51:12,17,19,21,23;
52:1,2;56:12,12;
57:12;59:1;86:12,14,
19,22;87:3;98:22,24;
106:6,12,22
**Next (9)**
6:5;7:16;32:24;
55:25;63:14;88:24;
89:3;95:15;97:8
**niece (2)**
48:15,19
**Nine (1)**
57:5
**nitpick (1)**
62:9
**Nobody (3)**
33:4,5;105:2
**None (1)**

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 335

INDEX NO. 652077/2017

RECEIVED NYSCEF: 05/08/2019

Case 22-50073, Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 120
of 126

Kwok Ho Wan

April 26, 2019

81:5
normal (1)
    96:8
note (4)
    2:4,11;30:1;97:13
noted (1)
    59:2
notes (1)
    63:4
notice (16)
    76:17;85:11,16,17,
    19;98:17,19;104:5,7,
    10,11,12;106:17,24;
    108:11;109:1
noticed (1)
    96:2
notify (1)
    70:18
November (1)
    20:1
number (9)
    2:1;5:23,25;12:18;
    48:13,16,16;76:22;
    91:23
numbers (1)
    91:21,24

**O**

object (4)
    14:10;71:17;89:21;
    94:19
objection (31)
    23:23;24:13;26:8;
    27:13;28:25;32:9;
    41:8;43:20,20,25;
    54:3;60:5,20,22;
    62:6;63:11;66:6;
    67:12;68:9;70:7;
    71:11;72:9,18;74:5,
    14,16,20;78:15;
    94:14,17,23
objections (13)
    10:12;12:20;15:24;
    89:7,14,19;90:1;
    92:9;93:24;94:9;
    95:3,19,21
obligations (1)
    6:19
obtained (4)
    22:10,15;45:8,8
obviate (1)
    108:3
obviously (4)
    22:17;24:8,14;·
    107:22
occupancy (6)
    61:23;67:17,18,24;
    68:7,18
occurred (1)
    96:6
o'clock (1)
    99:16

off (9)
    20:11;24:23;47:10;
    55:18,19;57:15;
    104:3,5,6
offer (14)
    6:4;20:19,24;21:2,
    10,13;22:5,12,17,23,
    25;23:23;78:12;
    92:23
offered (5)
    62:16,16;71:12;
    96:14,16
offhand (1)
    81:18
office (1)
    52:2
OFFICER (9)
    17:9;27:15;56:24;
    75:13;76:5;77:12;
    78:9;98:4;99:23
official (5)
    53:20;78:8;97:12,
    17,21
old (3)
    49:11,12;50:23
O'Melveny (4)
    2:14,15,18;69:1
once (2)
    102:7;104:13
one (53)
    4:18,18,23;5:23;
    10:18;11:20;13:9;
    15:1;18:9,13,14,18;
    22:4;24:1,15;29:13;
    32:8,13;41:18;42:2,
    10,11;44:5;45:9,13;
    47:15;49:10;50:23;
    51:1;55:14,19,19,20;
    62:15;66:19;74:1;
    77:4;83:21,22;84:16;
    85:6,6;96:24;98:8;
    100:22;103:19;
    104:10,21;105:5,9,
    18,20;108:5
one-day (1)
    45:24
ones (2)
    41:18;96:5
ongoing (1)
    24:3
only (13)
    2:8;31:19;47:6;
    59:20;83:7,8;91:14;
    92:14;93:25;94:3;
    102:17;105:22;106:3
opening (3)
    3:9;9:4;100:21
operate (1)
    52:3,5
Operating (3)
    56:24;76:5;78:9
operation (2)
    52:15,16

opportunity (2)
    16:11;36:10
opposing (1)
    5:18
opposition (3)
    12:1;23:8;25:15
option (1)
    8:11
oral (4)
    44:2,16;102:6;
    109:12
order (26)
    13:4;46:14;75:22;
    76:2,16;78:21;79:4;
    80:13;88:7;91:5;
    98:7;102:9,25;104:6,
    7,10,11,23;105:2;
    106:18,22,25,25;
    107:2;108:2,15
ordered (2)
    103:19,21
orders (2)
    11:10;102:21
ordinary (1)
    32:18
organizations (1)
    53:24
originally (2)
    92:23;99:4
Ostrager (2)
    7:14;25:23
others (3)
    53:23,24;54:2
otherwise (1)
    108:13
ought (1)
    71:16
ourselves (2)
    45:14;62:20
out (12)
    4:2;19:8;44:2;
    47:12;53:22;68:22;
    70:22;85:19;89:3;
    91:16;95:3;100:21
outline (1)
    99:2
out-of-state (1)
    93:14
outside (1)
    45:13
outstanding (1)
    52:21
over (4)
    41:18;51:22;57:10;
    79:12
overruled (4)
    27:14;94:21,25;
    95:22
overview (1)
    3:16
owed (1)
    107:5
own (19)

6:9;11:17;28:17,
    18,19;29:6,8;34:18;
    60:3,14,18;68:14;
    74:4;80:19;81:16,17,
    19;96:9;105:7
owned (9)
    7:25;8:5;27:11,11;
    28:23;86:13;95:8;
    105:14,17
owner (12)
    30:6;79:21;80:22;
    81:8,10;85:15;86:2,
    15;88:5,20;105:12;
    106:13
ownership (17)
    8:4;15:7,8,10,13;
    28:6,8;29:17;30:15;
    32:21;39:2;85:14;
    86:3,12,17,20;105:23
owns (21)
    10:20;27:18;28:14;
    29:3,9;32:1;33:13,21,
    21,24;34:13,15,18,
    22;86:13,13,14;
    95:12;105:18;106:2,
    7

**P**

Pacific (1)
    2:2
package (3)
    58:21,21,22
page (18)
    20:17;21:20;26:6;
    29:19;31:25;34:5;
    38:12;39:25;40:15,
    22,23,24;69:17;
    78:17;91:16,20,23;
    92:1
pages (2)
    42:11,12
paid (1)
    52:17
paper (6)
    28:6,8;30:9;31:7;
    43:1;90:20
papers (11)
    7:12,15;12:1;
    29:17,21;46:2;69:1,4,
    4;76:11,15
paragraph (6)
    28:24;54:15,17,20,
    21;78:17
parents (1)
    48:15
part (6)
    5:24;16:10;53:10,
    12;89:22;96:1
particular (3)
    24:1;46:4;61:13
particularly (1)
    72:3

parties (4)
    3:5,18;44:5;90:20
partner (1)
    58:7
parts (2)
    18:11;96:6
party (13)
    9:7,8,20:9;42:16;
    47:3;48:18;49:16;
    50:6,14,20,25;86:17,
    20
pass (1)
    31:21
passed (2)
    22:22;47:16
passel (1)
    12:20
passport (1)
    50:17
Paul (1)
    99:18
pause (4)
    4:23;24:15;56:1;
    83:19
PAX (2)
    12:2;73:13
pay (4)
    9:2;11:9;62:19;
    81:4
paying (1)
    8:22
people (16)
    18:6,9;22:18;27:5,
    9;28:2,3;31:14,18;
    39:23;42:6;48:13;
    67:4,4,7;81:19
people's (1)
    31:16
percent (3)
    35:18;36:8;45:4
Perfect (1)
    16:19
perhaps (1)
    89:5
period (4) ·
    61:18;66:1;70:15;
    80:12
perjury (1)
    5:16
perplexed (1)
    92:3
person (17)
    8:7;19:5;35:17;
    42:5,14;47:7;50:1;
    66:4,21,22;67:2;
    81:6;82:18,20,21;
    84:10;88:17
personal (42)
    22:15,16,19;26:24;
    27:7,21;28:1;29:11;
    30:18;31:20;32:20;
    33:3,11;34:14;35:3,9,
    11,18,22,24;36:1,5,7,

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM  INDEX NO. 652077/2017
NYSCEF DOC. Case 22-50073, Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   RECEIVED NYSCEF: 05/08/2019
Page 121
of 126

Kwok Ho Wan

April 26, 2019

13,22;37:6,9,13,15,
20;43:9;49:18;53:1;
54:8,16,18,22;55:9;
62:7;67:18;68:19;
84:3
**personally (4)**
27:22;37:23;61:25;
67:24
**persons (1)**
108:11
**phone (1)**
84:1
**phrased (1)**
103:10
**pieces (1)**
43:1
**piercing (14)**
4:15,15,24;5:7,8,9;
100:7,16,18,22;
102:20,25;103:12,16
**Ping (1)**
17:5
**place (3)**
45:6;104:6;109:2
**placed (1)**
76:12
**places (1)**
48:25
**plainly (1)**
11:7
**plaintiff (8)**
2:14,16,18;10:2;
102:10,19;103:25;
107:5
**plaintiffs (16)**
13:22;14:13;16:3,
10;76:3;78:24;79:6,
7;89:6;97:2;100:3,7;
102:1,14,25;109:8
**plaintiff's (2)**
14:5;98:11
**plan (1)**
38:3
**play (10)**
9:5;10:4;11:14,14;
13:15;28:4;92:14,16;
93:25;96:20
**played (13)**
10:9,17;11:3,19;
12:5,9;28:5;91:1;
94:16,22;95:1,14;
96:23
**playing (10)**
90:6;91:5,8,12,13,
16;92:15;93:16;94:1;
96:22
**pleaded (1)**
100:15
**pleading (1)**
24:9
**pleasantries (2)**
83:7,8
**please (13)**

2:4,11;17:3;21:16,
18,21;26:7;40:10;
56:9;69:17;74:2;
97:12,25
**pledge (37)**
24:4,5,15,19;38:2,
7,10;41:2,4,22;43:6,
10;44:9,11,18,21;
45:1,6,11,18,19;46:3,
6,11,12,14;47:14;
68:8,20;72:5;76:12;
79:3;101:20,21,23;
107:12;108:12
**pledged (24)**
7:9,13;24:20;
37:19;39:12,15,20;
40:2,5,19;41:21;43:5,
8,8;68:21;69:3;70:6,
13,17,19,23;101:18;
105:1,9
**pledges (15)**
5:23;7:8;24:17,23,
25;37:3,16,25;38:5,
15;44:1,6,7;45:16;
105:3
**pledging (2)**
37:22;106:24
**plus (1)**
31:13;36:15;67:19
**pm (2)**
99:24;103:22
**pockets (1)**
109:8
**point (12)**
5:5;13:25;44:5,5,6;
45:9,15,19;47:14;
95:25;104:14;108:16
**points (1)**
95:19
**political (1)**
107:10
**portion (5)**
21:18,21;92:15;
96:20;97:1
**portions (6)**
12:23;89:7,19;
92:10;93:21;96:22
**position (10)**
42:18;56:22;57:2;
72:25;88:21;100:6,
14;101:1,8,24
**possible (1)**
50:14
**potential (3)**
4:1;107:12;109:1
**practical (2)**
103:25;104:20
**practice (1)**
65:20
**precluding (1)**
106:22
**prefer (1)**
107:22

**preferable (1)**
46:19
**preference (1)**
77:1
**prejudgment (1)**
44:17
**prejudice (2)**
108:10,23
**prejudiced (1)**
107:20
**pre-marked (1)**
76:25
**prepare (1)**
106:25
**prepared (2)**
9:15;103:15
**present (2)**
90:23;96:12
**presentation (6)**
13:3,22;16:4;84:3;
89:4,22
**presented (4)**
12:19;13:5;88:11;
97:5
**presently (1)**
109:10
**President (15)**
6:6;7:18;27:3;
51:16;52:11;56:23;
57:24,25;58:1,3;59:1,
22;78:9;90:8;93:10
**presume (1)**
79:11
**pretenses (1)**
107:9
**pretty (1)**
12:7
**previously (4)**
2:6;28:16,19;52:20
**price (1)**
58:18
**prime (2)**
13:9;84:17
**principal (1)**
5:17
**prior (8)**
5:18;11:21;25:6;
26:18,19;53:9;62:14;
106:22
**priority (2)**
24:7,22
**prisoner (1)**
107:10
**probability (1)**
3:19
**probably (4)**
31:23;92:13;96:10;
99:9
**problem (8)**
4:18;7:10;24:7;
104:9;105:6;108:19,
21,22
**problems (3)**

15:23;104:10;
105:5
**proceed (7)**
2:8;16:17;41:19;
94:15;100:3;107:25;
108:4
**proceeding (3)**
9:14;25:20;46:14
**proceedings (3)**
9:19;56:2;83:20
**process (10)**
6:7;10:1;57:13;
58:14;59:13;62:25;
65:13,16,17;84:13
**production (1)**
15:25
**professional (2)**
47:5,6
**project (1)**
42:9
**proof (2)**
4:19;103:2
**proper (2)**
15:22;24:9
**property (4)**
58:17;87:4;98:12;
107:23
**propose (1)**
100:3
**proposing (2)**
100:18,20
**proprietary (9)**
62:1;67:20,21;
68:6,10,16;70:13;
88:17,21
**prospective (2)**
60:16;63:15
**protect (1)**
62:20
**protection (1)**
102:10
**proud (1)**
52:24
**prove (10)**
4:9,10,14,25;5:4,9,
21;7:15;12:16;
100:22
**provide (8)**
3:15;13:4;17:13;
59:15;60:13;65:13;
104:12;106:20
**provided (11)**
7:20;59:18,19,20;
65:14,15;69:13;
78:20;80:4;81:1;
98:18
**provides (1)**
102:9
**public (2)**
6:1;9:12
**publicly (1)**
8:3
**pull (1)**

45:14
**pulled (1)**
45:13
**purchase (19)**
8:20;15:3;33:2,8,
11;44:3;57:12;58:4,
12;59:7;61:3,14;
62:15;83:23;86:19,
22;87:7;90:10,13
**purchased (11)**
27:22,23;33:10;
65:15;67:15;68:13;
70:12;81:6,13;101:1;
107:8
**purchaser (4)**
8:25;60:17;63:15;
64:5
**purchasers (1)**
85:5
**purchases (1)**
57:18
**purchase-sale (1)**
87:6
**purchasing (3)**
14:2;58:16;64:6
**purely (1)**
104:4
**purported (2)**
60:10,14
**purporting (1)**
60:3
**purpose (3)**
9:8,10;73:12
**purposes (2)**
12:15;25:8
**pursuant (1)**
45:22
**put (25)**
3:4;4:2;6:2,15;
13:10;19:11;20:19,
23;24:19;25:2;26:23;
41:23;42:20;48:18,
21;54:12;58:20,21,
22;62:24;89:20,23,
25;91:7;103:15
**putting (3)**
12:11;57:14;79:10
**PX (6)**
19:24;23:17;43:19;
46:24;69:8,12

### Q

**quality (1)**
92:2
**quick (3)**
48:2;87:24;95:19
**quickly (4)**
3:3;11:25;53:21;
73:5
**quietly (1)**
11:25
**quit (1)**

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 440-15    Case 22-50073, Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 122
of 126

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Taliciaalliance Asia v.
Kwok Ho Wan

April 26, 2019

42:16
quite (5)
  33:22;35:3;52:25;
  91:15;92:12
quitted (1)
  51:24
quoted (1)
  11:21

**R**

raise (1)
  15:23
raised (2)
  14:1;102:6
rather (2)
  35:4,12
reach (3)
  4:2;19:8;102:24
read (27)
  13:8,12,18;15:1,5;
  19:7,10;21:7,16,18,
  21;22:1;26:11,21;
  30:5;31:6,12;34:4,
  20;38:12;53:14,19;
  69:2,19;72:17,19;
  89:8
reading (6)
  34:5,8;41:10;
  47:12;89:14;97:4
readings (2)
  12:25;13:6
real (3)
  13:14;16:8;47:6
realized (1)
  101:20
really (10)
  9:16;13:16;25:9;
  36:13;42:21,25;
  47:16;87:20,23;
  95:12
reason (3)
  10:22;48:21;98:6
reasons (4)
  6:23;49:25;63:7;
  103:10
re-board (1)
  65:17
recall (24)
  29:22,23;30:3,11;
  32:3;34:1,10,25;
  38:17;40:7;42:23;
  59:9,17;60:16;61:16,
  22;62:21;63:21,23;
  64:13,14;66:2,18;
  68:6
receive (2)
  85:10,11
received (11)
  6:4;20:14;49:15;
  64:25;72:3,12;78:14;
  79:3,6,12;80:6
recently (2)

18:25;102:1
recess (2)
  56:5;99:25
recognize (3)
  15:16;31:16;47:15
recollection (2)
  21:2;66:13
recommended (1)
  90:13
recommending (1)
  7:23
reconcile (1)
  72:23
record (6)
  2:5;3:4,7;29:25;
  74:7;95:25
records (2)
  88:4;106:13
redacted (1)
  20:19
**RE-DIRECT (3)**
  55:16;74:24;84:22
reference (5)
  4:22;53:7;84:3,14,
  16
refresh (1)
  66:13
refreshed (1)
  21:1
refuse (1)
  32:10
refused (3)
  11:17;13:11;32:6
regarding (5)
  78:1,2;103:5,15;
  107:18
registered (1)
  88:12
regurgitation (2)
  13:23;46:1
re-introduction (1)
  16:5
reiteration (1)
  16:4
reject (1)
  88:13
related (1)
  108:5
released (4)
  44:21;45:1,6,11
relevance (12)
  24:13;43:20,24;
  46:4,8;60:23;62:8,
  10;68:12;94:9,13,24
relevant (9)
  11:8;12:21;24:24;
  25:1;60:6;63:12,13;
  71:19;95:12
relied (2)
  5:19;7:22
relief (2)
  109:13,15
remarks (2)

3:2,9
remember (13)
  5:23;31:4,9,23;
  38:7;39:21;42:2,10;
  43:12;46:25;61:19;
  63:7;84:7
removed (3)
  98:13;101:21,24
rendered (1)
  98:11
renew (2)
  108:7,24
Renminbi (1)
  59:23
repeat (1)
  47:1
repeated (1)
  8:16
reporter (2)
  99:21,22
represent (2)
  75:6;103:6
representation (2)
  44:25;45:5
representative (1)
  10:22
representatives (3)
  7:7;65:25;66:20
represented (1)
  7:9
representing (1)
  70:5
request (6)
  10:8;64:3,24;65:3,
  9;66:18
requested (5)
  28:2;32:12;33:6,
  18;100:9
requests (3)
  66:1,7,10
required (4)
  5:5;58:21;76:17;
  80:24
requires (3)
  3:24;4:25;75:23
re-registered (1)
  88:8
reserve (1)
  74:23
residence (9)
  101:2,18,21;
  104:14;107:9,12,16,
  19;108:13
resides (1)
  93:10
resolved (2)
  38:3;42:25
resolving (1)
  16:1
respect (7)
  24:4;43:25;71:9;
  73:1;74:15;100:7,25
respectfully (1)

6:21
respond (6)
  10:7;16:14;46:7;
  65:8,11;71:10
responded (3)
  71:15,18;82:9
response (5)
  71:6;72:2,4,24;
  86:7
responsibilities (3)
  52:4,7,10
responsibility (2)
  36:7;52:12
responsible (7)
  8:22;31:19;35:18,
  23,25;36:8;58:11
responsive (1)
  51:6
rest (1)
  101:25
result (1)
  61:14
reveal (1)
  109:4
review (4)
  42:21;53:14,16;
  58:19
reviewed (3)
  7:19;79:18;90:12
reviewing (2)
  3:15;58:12
right (82)
  3:10;6:2;17:19,25;
  18:16,19,22;19:1,4,
  17;20:1,4,24;21:3,7,
  9,10,24;22:1,5,7,22,
  25;23:4,10,18;25:15,
  23;26:4,25;27:11,12,
  19;28:7;29:16;30:15;
  31:10,22;32:7;33:2,4,
  10,14;34:13,16;36:7,
  17,21;37:5,16,19,22,
  25;40:16,19,24;41:4,
  19;42:23;46:17,21;
  47:20;48:16;55:7;
  62:17;69:6;76:13;
  79:25;84:18;90:24;
  91:21;92:12;93:3,6;
  94:15;98:5;99:7,11;
  100:2,17;103:17;
  104:11
role (3)
  52:11;57:11,12
Roscalitar (1)
  41:2
roughly (2)
  57:17;63:23
rule (2)
  24:23;92:10
ruled (1)
  26:10
rules (2)
  68:19;94:6

ruling (1)
  103:4
rulings (1)
  103:6
running (1)
  109:8
Russ (2)
  2:19,22

**S**

safeguards (4)
  6:16,23;61:14,16
sale (9)
  15:2;44:3;75:24,
  24;76:7;86:19,22;
  87:8;104:13
sales (2)
  57:18;105:4
same (7)
  5:7;6:23;17:25;
  35:15;43:24;73:18;
  103:3
Sarnoff (24)
  2:15,15;56:15;
  59:2;60:24;61:4;
  66:12;69:14;70:3,10;
  71:21;72:1,11,14,20,
  22;74:10,23;78:15;
  84:23;85:3;92:18;
  108:5,14
sat (1)
  62:13
satisfy (1)
  98:7
save (1)
  89:5
saw (11)
  7:12;13:10;21:23;
  22:11;28:6,8;41:1;
  46:20,24;59:20;69:4
saying (9)
  11:23;13:13;21:9;
  26:3;37:1;47:10;
  50:18,22;109:20
school (2)
  49:12;50:2
scoping (1)
  10:11
search (1)
  10:7
Searles (40)
  2:19,19;23:25;
  26:8,11;27:13;28:25;
  32:9,12,25;41:8,17;
  43:17,24;44:14,23;
  45:4;47:23;48:1;
  53:5;54:5;55:2,13;
  89:16,25;90:3;91:2,
  10,14,18,23;92:22;
  94:7,13;95:18,24;
  96:13,17,24;97:6
seat (2)

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
NYSCEF DOC. NO. 440-15

INDEX NO. 652077/2017
RECEIVED NYSCEF: 05/08/2019

Case 22-50073, Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 123
of 126

Kwok Ho Wan
Pacific Alliance Asia v.

April 26, 2019

56:13;98:4
seated (1)
  17:7
second (16)
  4:14,18;5:2;30:18,
  24,25;48:2;50:3,4;
  53:17;78:17;83:23;
  96:24;104:18;
  109:13,16
Secrecy (1)
  7:2
secreted (1)
  98:12
sections (2)
  96:4,9
secure (1)
  62:3
security (11)
  6:16;61:17,19;
  63:19,24;64:7;67:17,
  18;80:24;81:1,3
seeing (2)
  9:20;49:23
seeking (3)
  14:17;108:10;
  109:9
seemed (1)
  83:11
seems (1)
  83:14
select (2)
  89:19;91:11
selection (1)
  94:1
sell (12)
  5:25;11:24;14:3;
  18:25;19:17;85:12;
  87:4;98:18;104:15;
  106:16;107:18;
  108:12
selling (2)
  19:4;58:16
sells (1)
  87:5
send (2)
  19:8,11
sense (3)
  96:8;97:1;99:1
sensitive (1)
  21:5
sent (3)
  20:14;59:24;69:5
separate (3)
  36:20,25;37:2
sequence (1)
  92:6
serious (2)
  4:17;26:1
served (2)
  69:1;76:11
set (7)
  2:7,8;10:20,24;
  65:3;85:18;102:7

sets (2)
  16:6;46:2
seven (4)
  9:4;18:6,7;48:14
several (2)
  3:1;75:10
shaking (1)
  31:12
shell (2)
  8:21;10:19
Sherry (4)
  57:3;81:19,22;
  109:24
Sherry-Netherland (69)
  6:6,8,15;7:8,11,12,
  17,21;8:5,7,11,19;
  15:3;20:20;56:21;
  57:19,21;58:11;59:7;
  60:9,13,17,25;61:3,6,
  13;63:10;64:2,5;
  65:8,11;67:21;68:3,
  20;70:19;71:18;72:3,
  4,16,24;76:6;78:10;
  79:22;82:9;85:10,16,
  24,25;86:5,21;87:16;
  88:1,4,9,13,16,19;
  90:9;93:3;98:15,16,
  17;101:2,5,9;104:16,
  23;106:5,13
Sherry-Netherland's (1)
  72:23
Sherry's (1)
  88:21
ship (1)
  57:15
shock (1)
  88:5
short (4)
  3:16;9:3;63:16;
  102:22
shortly (2)
  64:6;70:22
show (18)
  8:14,16,18,20;
  9:15;13:14;31:5,9,
  10;42:11,22;47:13;
  60:9;61:12;66:12;
  71:21;74:3;90:16
showed (3)
  6:8;8:1;31:11
showing (4)
  6:20;43:17;60:17,
  18
shui (1)
  63:7
side (1)
  90:1
sign (2)
  54:13;61:23
signature (1)
  78:7
signed (12)
  15:4;42:2;54:10;

67:21,24;68:4,16,18,
  19;69:5;75:24;78:6
significant (4)
  8:16;9:22;10:11;
  21:6
significantly (1)
  99:6
signing (1)
  67:19
similar (1)
  6:23
similarly (1)
  6:21
simple (2)
  11:2;43:3
single (1)
  28:6
Sister (2)
  50:12,16
sister-in-law (2)
  48:16,20
sit (3)
  30:21;38:8;39:6
situated (1)
  6:22
situation (3)
  31:24;39:5;50:5
situations (1)
  65:20
six (3)
  48:17;49:11;50:23
size (1)
  62:3
skip (1)
  59:3
slide (2)
  4:4;28:13
Sloane (13)
  19:1,4,6,8,12,16,
  25;21:8;22:8,11,20,
  23;64:14
small (1)
  18:8
sold (1)
  55:5
sole (2)
  105:14,19
solved (1)
  108:21
somebody (10)
  13:15;81:13;84:8;
  87:25;88:11,12,13;
  104:15;105:8;109:17
somehow (1)
  30:23
someone (7)
  8:9;20:19,23;64:9;
  82:3;83:3;84:3
sometimes (2)
  19:15;36:15
son (24)
  48:14,19;49:9,10,
  13,21,23;50:23;51:1;

64:16,21,24;65:4,6,
  12;66:4,21,24,24;
  67:8;82:4,18;83:5;
  107:16
son's (1)
  7:1
Sorry (28)
  20:10,11;36:15,18,
  19;39:13;40:23;51:5,
  8,8,8,8;52:9;54:25;
  55:1,1;66:8;68:13;
  71:14;77:7;85:1,2;
  91:2;93:8;94:18;
  98:23;100:12;101:6
sort (2)
  59:12;108:7
sought (3)
  63:19;64:6;86:3
sound (2)
  13:5;15:15
sounds (1)
  24:12
speak (8)
  47:7,24;53:19,23;
  60:6;75:20;83:8;89:3
speaking (3)
  49:1;53:18;54:16
speaks (3)
  72:13;82:25;83:1
spent (1)
  47:11
spoke (1)
  54:2
spoken (3)
  83:5,10;89:17
Spring (13)
  23:5;27:3;42:7;
  47:2;51:16,19,21,23;
  52:1,1,11,22;53:24
squabble (1)
  96:19
stage (1)
  103:2
stand (5)
  14:9;25:4;32:23;
  55:24;89:1
standard (9)
  3:17;4:5,21,24,25;
  5:24;7:3;11:8;65:19
standards (4)
  4:24;102:11;103:2,
  3
standing (1)
  51:2
stare (1)
  36:16
start (13)
  3:11,14;28:2;48:4,
  8;49:5;51:25;52:2,
  22;76:20;89:13;99:5;
  102:12
started (3)
  28:9;48:6;91:18

state (4)
  17:4;56:9;97:25;
  98:13
stated (1)
  68:7
statement (6)
  26:18,19;30:14;
  40:18;46:13;50:18
statements (3)
  26:24;35:15;37:8
States (3)
  14:16;60:11,18
status (1)
  99:1
step (2)
  48:1;55:22
still (6)
  25:24;29:7;30:20;
  47:15;48:17;103:7
stipulate (4)
  12:15;44:11,14,15
stipulated (8)
  3:5,18;12:14,18,21,
  22;46:6;70:16
stipulating (1)
  46:2
stipulation (2)
  24:2;45:1
stock (3)
  88:1,7,12
stop (1)
  50:11
stopped (3)
  49:13,22,23
straight (1)
  24:25
strategy (1)
  38:3
Street (2)
  17:6;56:12
stronger (1)
  9:22
structure (4)
  6:18;61:6,10;86:12
Stuart (1)
  2:15
studied (1)
  50:3
stuff (1)
  47:10
subject (7)
  14:18,20;24:2;
  68:11;71:18,19;
  100:4
submit (3)
  6:21;58:23;89:5
submitted (16)
  5:17;13:24;15:2;
  23:2;25:14,22;41:20;
  43:4;53:15,25;60:2;
  84:13,16;90:11;
  101:4,8
submitting (2)

INDEX NO. 652077/2017

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM

NYSCEF DOC. NO. 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 124
Case 22-50073, Doc 440-15    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 124
of 126

RECEIVED NYSCEF: 05/08/2019

Tarimcalliance Asia v.
Kwok Ho Wan

April 26, 2019

| | | | | |
|---|---|---|---|---|
| 53:9;65:22 | swearing (3) | 17:2;28:22;32:22; | 103:14;107:3 | 3:6;6:25;10:10; |
| **suborn (1)** | 26:4;43:5,7 | 38:20;52:25;56:8; | **today's (1)** | 31:12 |
| 5:16 | **switching (1)** | 74:3;97:20 | 13:22 | **true (5)** |
| **subpoena (1)** | 55:2 | **testifies (1)** | **together (7)** | 76:15;97:24;101:2, |
| 14:6 | **swore (6)** | 15:16 | 18:9;50:3;57:14; | 9,13 |
| **subpoenaed (2)** | 5:19;28:16;41:21; | **testify (8)** | 58:20,22,22;79:10 | **trust (7)** |
| 73:16,17 | 43:11;44:11;46:10 | 5:11;6:7,10,24;7:6, | **told (25)** | 6:25;64:17,19,24; |
| **subsequent (1)** | **sworn (12)** | 16;73:15;95:7 | 2:6;7:13;8:5,6; | 65:6;66:24;81:17 |
| 70:15 | 17:1,9;25:6;26:18, | **testifying (2)** | 10:6;22:11,13,23; | **trustee (2)** |
| **subsequently (1)** | 19;27:10;28:19;35:6; | 32:23;62:7 | 33:4,5;36:5;39:4,19, | 58:8,9 |
| 59:25 | 37:8;56:7;97:18,19 | **testimony (41)** | 21,22,23;40:1,4; | **truth (5)** |
| **succeed (1)** | | 5:14;8:2,5;9:4,7,9, | 49:20;50:4,12,19; | 5:22;23:24;73:23; |
| 12:17 | **T** | 9;13:4;16:18;25:6,7; | 65:12;72:16;82:9 | 95:12;97:23 |
| **success (1)** | | 26:12,13;28:21;29:1; | **Tony (1)** | **try (13)** |
| 3:19 | **table (3)** | 32:17;37:11,12; | 84:17 | 10:7;27:5;31:14; |
| **sue (1)** | 21:2;24:23;47:10 | 54:14;62:10;66:13, | **took (4)** | 33:6;43:3;46:14; |
| 73:8 | **Taiwan (2)** | 15;71:17;73:10,21, | 2:8;12:1;51:22; | 47:7,24;53:22;56:17; |
| **sufficient (2)** | 84:6,7 | 25;74:6,9;79:9; | 73:1 | 73:12;99:2,3 |
| 5:1;100:15 | **tale (1)** | 86:25;90:15,18,25; | **top (3)** | **trying (11)** |
| **suggested (2)** | 95:10 | 93:1;94:9,20;95:4; | 6:11;21:15;104:21 | 3:15;10:13;24:22; |
| 100:21;108:21 | **talk (5)** | 96:4;101:13;105:6,7 | **topics (3)** | 27:8;36:18;47:11,18; |
| **summarize (1)** | 7:4;10:14;13:11; | **theirs (2)** | 10:18;11:2;55:2 | 50:9;67:11;74:19; |
| 73:25 | 18:24;38:5 | 45:10,11 | **Tor (1)** | 109:22 |
| **summarized (1)** | **talked (3)** | **therefore (3)** | 97:15 | **Tsang (1)** |
| 74:11 | 5:8;11:4,5 | 93:16;101:12; | **T-O-R (1)** | 82:22 |
| **summarizing (2)** | **talking (7)** | 108:6 | 97:15 | **turn (3)** |
| 74:6;94:19 | 27:21;43:2;49:13, | **third (6)** | **total (2)** | 40:10;89:3;105:17 |
| **sun (1)** | 22,23;50:11;53:22 | 8:11;13:20;45:25; | 9:4;18:7 | **turned (1)** |
| 107:3 | **talks (1)** | 50:9;53:17;86:20 | **totally (2)** | 79:12 |
| **super (6)** | 24:17 | **though (4)** | 18:9;30:23 | **twice (2)** |
| 30:19;31:3,7,22; | **tape (12)** | 32:7;35:6;45:15; | **touch (3)** | 16:6,21 |
| 36:16;47:13 | 10:9,17;11:3,19; | 86:21 | 67:5;83:3,3 | **twist (1)** |
| **supplied (1)** | 12:9;28:5;49:17; | **thought (8)** | **track (2)** | 24:22 |
| 78:24 | 91:1;94:16,22;95:1, | 4:6,11;12:4,7; | 51:10;52:23 | **two (30)** |
| **support (6)** | 14 | 20:18;62:18;91:3; | **transactions (1)** | 4:15,23;5:22,25; |
| 4:5,20;23:7;25:14; | **task (1)** | 108:20 | 57:17 | 6:10;7:19,24;10:19, |
| 40:18;84:4 | 12:1 | **thousands (1)** | **transcript (6)** | 21;13:24;16:6;22:18; |
| **supposed (2)** | **team (1)** | 42:12 | 12:24;13:3;34:4; | 28:24;36:20,25;37:1, |
| 8:25;52:18 | 52:12 | **threaten (3)** | 89:6,8;92:21 | 12;42:11;43:1;46:2; |
| **supposedly (1)** | **technical (1)** | 42:16;49:18;50:7 | **transcripts (3)** | 49:25;53:3;78:18,23; |
| 11:24 | 31:6 | **threatened (1)** | 12:23,23;13:6 | 84:24;90:19;95:18; |
| **Supreme (1)** | **teed (1)** | 48:21 | **transfer (21)** | 99:15;100:14;104:20 |
| 25:23 | 9:3 | **three (4)** | 6:25;7:2;64:15,20, | **type (4)** |
| **Sure (11)** | **telephonic (1)** | 3:18;43:1;67:19; | 24;65:2,3,22;66:23; | 58:24;59:17;63:9,9 |
| 3:8;5:25;31:17; | 83:25 | 108:11 | 85:24;86:3,19;87:8, | **typical (4)** |
| 33:24;35:3,20;52:17, | **telling (2)** | **throughout (1)** | 12;98:19;101:20; | 59:12;63:10,14; |
| 17;57:15;62:10; | 5:22;99:8 | 9:19 | 105:4,23;106:3; | 74:15 |
| 99:17 | **ten (1)** | **timeline (1)** | 108:13;109:1 | **typing (1)** |
| **surprised (1)** | 39:6 | 62:22 | **transferred (8)** | 63:9 |
| 109:11 | **tenant (3)** | **times (3)** | 85:14;86:17;87:16; | |
| **suspended (1)** | 61:6,9;80:15 | 3:1;11:16;50:5 | 88:8,12;95:8;98:15; | **U** |
| 108:7 | **tenure (2)** | **timing (3)** | 104:22 | |
| **suspension (1)** | 57:19;61:5 | 44:3;45:18;63:9 | **transferring (3)** | **Ullman (18)** |
| 108:16 | **term (2)** | **title (6)** | 64:10;82:3;106:23 | 6:5,5,10,14,24;7:4, |
| **sustain (1)** | 53:1;54:22 | 56:23;64:10;66:24; | **transfers (2)** | 6;56:11,16;74:22; |
| 14:10 | **terminated (6)** | 105:24;106:3,9 | 104:18;105:3 | 75:3,7,22;76:15; |
| **sustained (10)** | 41:23;43:6,10,11; | **today (25)** | **transit (1)** | 77:22;78:16;85:1; |
| 60:8;67:14;70:9,9, | 44:12;46:12 | 3:15;4:9,19;5:5,10, | 17:12 | 87:25 |
| 9;73:2,3;74:8,17,21 | **terms (2)** | 12,21;11:14;12:11; | **translate (3)** | **ultimate (5)** |
| **swear (2)** | 16:15;58:18 | 13:8,25;14:6;16:3,7; | 15:13;19:10,11 | 74:1;85:15;86:14; |
| 27:17;97:22 | **terrible (1)** | 24:16;25:7;44:3; | **translator (2)** | 102:15;103:3 |
| **sweared (1)** | 11:13 | 71:20;73:12,23;94:1; | 5:14;32:7 | **ultimately (1)** |
| 36:9 | **testified (8)** | 98:25;100:23; | **tried (4)** | 33:21 |

unavailable (2)
93:13;96:7
unconditionally (1)
8:23
under (7)
3:23,24;5:24;9:6;
104:11;107:9;108:14
underlying (1)
53:10
understands (1)
15:9
understood (8)
10:14;15:18;19:13;
25:17,19,25;54:10;
85:9
unfortunately (1)
75:21
Uniqueness (1)
60:24
unit (1)
87:15
United (4)
14:16;60:11,18;
84:17
university (1)
48:8
Unless (2)
62:6;109:9
unprecedented (1)
6:15
up (23)
2:7,8;5:9;6:5;9:3;
10:20,24;14:16,16;
18:25;24:16;47:25;
51:2;65:3,22;73:5;
77:3;84:24;85:18;
89:3;93:2;94:7;95:10
upon (1)
15:8
use (3)
25:7;29:21;82:21
used (12)
8:12;9:7;25:19;
50:25;53:2;61:6,9;
81:4;85:5,6,6;96:4
useful (1)
4:6
using (2)
6:10;24:7
usually (1)
35:20

**V**

various (3)
4:2;12:23;89:7
veil (14)
4:14,15,24;5:7,7,9;
100:8,16,18,21;
102:20,25;103:12,15
versus (1)
2:2
via (2)

Vice (3)
6:6;56:23;78:8
video (22)
7:17;9:15;10:9,17;
11:3,19;12:9;28:5;
49:24;50:17,21,22,
25;89:4,22;90:16;
91:1;94:16,22;95:1,
14,20
view (4)
67:10,13;74:18;
99:4
violate (1)
68:10
violation (2)
70:12,19
Virgin (1)
106:8
voice (8)
11:23;12:3;13:15,
16;17:3;49:17;50:21;
56:10
voluntarily (1)
14:8
volunteer (1)
73:15
voted (6)
79:20,24;80:8,15
vouched (1)
84:10

**W**

wait (1)
103:24
walk (1)
90:15
Wan (4)
2:3;17:24;59:4;
98:2
W-A-N (1)
98:3
Wang (21)
5:13,13,21;16:23;
17:5,19;19:16,25;
23:18;25:12;26:23;
27:10;28:22;29:16;
30:3;33:1;40:16;
41:20;46:20;47:24;
72:25
Wang's (2)
17:12;46:10
wants (1)
105:10
waste (4)
4:7;31:15;98:5;
99:10
wasting (4)
44:13,22;99:12,13
way (8)
15:24;22:12;29:13;
31:9;50:20;95:23;

101:23;103:9
WeChat (1)
49:23
weeks (1)
7:19
Wei (5)
105:6,8,8,9;107:10
W-E-I (1)
107:10
Welcome (1)
2:23
weren't (4)
26:3;84:14;93:24;
94:11
West (1)
56:11
What's (4)
17:23;46:2;58:21;
77:22
WhatsApp (1)
49:23
whenever (2)
108:24,25
Whereupon (23)
3:12;17:15;19:20,
22;23:13,15;28:11;
40:12;43:14,22;
55:23;56:1,5;69:9,15,
24;71:23;77:14,20;
83:19;88:25;97:17;
99:25
whole (11)
6:1;13:12;17:20;
18:12;29:10;43:1;
48:14;50:7;71:13;
89:11;90:6
Whose (1)
36:2
willing (2)
50:18,22
win (1)
73:13
wishes (1)
107:25
withdraw (1)
64:6
withdrawal (1)
108:16
within (2)
53:24;63:22
without (21)
9:2;11:17;28:13;
42:1;47:10;48:21;
85:24;86:4;95:9;
97:1;98:15,19;
103:13;106:17,24;
107:6,11,14,16;
108:9,23
witness (73)
4:12,13,13,13;
14:9;16:23;17:5,8,9,
16;19:21;23:14;25:3,
3,4,5,5,11;26:8,16,

16;27:16;29:5,7,12,
14;32:12,20,23;39:3;
43:15;51:5,8;54:5,6,
8;55:1,23,24,25;56:3,
11;66:9,11,12;67:3;
68:23;69:16;70:14,
22,25;71:2,4,24;
75:15;77:17,21;86:1,
6,9;87:13,17;88:24,
25;89:1,3;93:14;
95:7,15;96:7;97:8,
24;98:2
witnesses (2)
3:16;5:11
witness's (1)
86:24
woman (1)
35:10
Wong (1)
20:3
word (2)
8:12;47:15
words (1)
51:1
work (10)
17:19,20;18:3,11,
18;48:24;51:13,14,
25;52:22
worked (1)
18:15
working (5)
48:4,6,8;49:5;
51:12
works (1)
10:1
world (2)
6:2;48:25
Worldwide (1)
49:4
worth (1)
24:14
wrap (1)
73:5
write (2)
19:7,10
writing (2)
71:12,15
written (2)
72:2;104:12
wrong (1)
74:2
wrongdoing (1)
5:3

**X**

X-ed (1)
95:3

**Y**

Yan (1)
17:5

year (3)
42:3;46:11;63:22
years (11)
15:8;8;18:21;
49:11,12;50:23;57:5,
10;59:1;62:18;75:10
York (29)
6:11;9:18;17:6,6;
18:19;23:5;27:3;
34:15,18,18,23;49:5,
8;51:12,17,19,21,23;
52:1,2;56:12,12;
59:1;86:12,14;87:3;
106:7,12,23
younger (2)
50:12,19
YouTube (2)
11:21,22
Yvette (4)
16:23;20:3;21:15,
18
Yvetteyeue423 (1)
20:4

**Z**

Zero (1)
5:20
Zhang (5)
105:6,8,8,9;107:10

**1**

1 (3)
76:21,23,24
1.5 (1)
49:10
1:00 (1)
103:20
10 (1)
18:21
100 (5)
35:17,18;36:8;
45:4;48:13
10019 (1)
56:12
101 (1)
26:22
102 (1)
34:20
10-minute (1)
92:15
11 (1)
38:13
12 (1)
59:1
12:51 (1)
103:21
13 (1)
34:8
15 (1)
32:19
150 (1)

FILED: NEW YORK COUNTY CLERK 05/08/2019 02:34 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 440-15   Case 22-50073 Doc 440-15   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 126   RECEIVED NYSCEF: 05/08/2019
of 126

Taihua Alliance Asia v.
Kwok Ho Wan

April 26, 2019

17:6
**16 (3)**
  49:14,24;50:11
**17 (2)**
  9:24;19:24
**19 (1)**
  34:9

---

**2**

**2 (1)**
  41:2
**2.3 (1)**
  64:1
**2:00 (1)**
  99:23
**2009 (3)**
  18:21;48:6;51:13
**2010 (1)**
  57:6
**2015 (10)**
  41:4,22;43:6;49:8;
  51:11,14;58:4;59:10,
  11;75:18
**2016 (1)**
  20:1
**2017 (7)**
  2:2;41:24;43:7;
  49:14,22;71:2,3
**2018 (3)**
  18:18;51:22;78:21
**21 (1)**
  41:4
**22D (1)**
  17:6
**23rd (2)**
  49:8;51:14
**29 (1)**
  78:21

---

**3**

**3 (1)**
  63:23
**3117a2 (1)**
  9:6
**33 (3)**
  69:8,12,21
**34 (2)**
  23:17;53:7
**340 (1)**
  56:11
**35 (2)**
  71:22;72:1

---

**4**

**40 (1)**
  57:10
**43 (2)**
  43:19;46:24
**45 (1)**
  91:8

---

**5**

**57th (2)**
  17:6;56:11

---

**6**

**60 (1)**
  57:20
**62012 (1)**
  3:17
**62013 (3)**
  3:23,24;24:17
**64 (1)**
  92:1
**65 (1)**
  92:1
**652077 (1)**
  2:1
**66 (1)**
  92:1
**67 (2)**
  21:7;92:1
**6th (2)**
  63:4,5

---

**7**

**7 (1)**
  34:20
**77 (1)**
  34:8
**78 (2)**
  29:19;31:25
**781 (1)**
  98:3

---

**8**

**81 (2)**
  38:12;39:25
**8G (1)**
  56:12

---

**9**

**9 (2)**
  34:21;38:13