# EXHIBIT PAX 18

October 15, 2020 Hearing Transcript, *PAX v. Kwok*,
Index. No. 652077/2017 (N.Y. Sup. Ct.), Dkt. 647

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

PAX   EXHIBIT _____ 18 _____

DATE _____ IDEN.

DATE _5/25/2022 Admitted in Full_ EVID.

BY _P.E._____

Deputy Clerk

AO 386-A

1

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF NEW YORK:  TRIAL TERM PART 61

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - X

4   PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

5                          Plaintiff,

6        - against -

7   KWOK HO WAN, a/k/a KWOK HO a/k/a GWO WEN GUI
    a/k/a GUO WENGUI a/k/a GUO WEN-GUI a/k/a
8   WAN GUE HAOYUN a/k/a MILES KWOK a/k/a HAOYUN GUO,
    GENEVER HOLDINGS CORPORATION and GENEVER HOLDINGS LLC,
9
                           Defendants.
10
    - - - - - - - - - - - - - - - - - - - - - - - - - - - X
11  Index No. 652077/2017

12                     October 15, 2020
                       Teams Proceeding
13
    B E F O R E:   THE HONORABLE BARRY R. OSTRAGER, Justice
14
    A P P E A R A N C E S:
15
    O'MELVENY & MYERS LLP
16  Attorneys at Law
    7 Times Square
17  New York, New York 10036
    BY:  STUART SARNOFF, ESQ.
18       EDWARD MOSS, ESQ.

19  BAKER & HOSTETLER LLP
    Attorneys at Law
20  45 Rockefeller Plaza, 14th Floor
    New York, New York 10111
21  BY:  JOHN SIEGAL, ESQ.
         MELISSA CARVALHO, ESQ.
22       ERICA BARROW, ESQ.

23

24

25              (Appearances continued on next page.)

```
 1   A P P E A R A N C E S:   (Continuing)

 2   LAWALL & MITCHELL LLC
     Attorneys at Law
 3   162 East 64th Street
     New York, New York 10065
 4   BY:   AARON A. MITCHELL, ESQ.

 5

 6

 7

 8                            Terry-Ann Volberg, CSR, CRR
                              Official Court Reporter
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                              Proceedings

1              THE COURT:  Good morning.

2              There are a few housekeeping matters that I want

3       to address before we discuss the application for a temporary

4       restraining order.

5              If you are not speaking, please mute your

6       microphone so we don't get static.  Thank you.

7              So, as I started to say, there are a few

8       housekeeping matters I want to resolve before we address the

9       application for a temporary restraining order.  We are

10      technically scheduled to discuss plaintiff's application for

11      attorney's fees, and there's in the motion part a motion by

12      the defendant to add an affirmative defense of failure to

13      mitigate damages.  With respect to the latter issue,

14      Mr. Moss, I would like you to stipulate that at trial we

15      will conform the pleadings to the proof adduced at the

16      trial, and because I addressed the mitigation of damage

17      issue in my September 15th decision and order, and because

18      that issue has always been at least peripherally in the

19      case, I would like you to stipulate that that will be one of

20      the issues that will be addressed at the plenary trial, and

21      avoid the necessity of motion practice, and so I would like

22      to mark that motion as withdrawn without prejudice on

23      consent.  Is that acceptable to you?

24              MR. MOSS:  Your Honor, I just -- I just would like

25      to understand, my understanding was that the Court was going

4

Proceedings

1    to make a determination on damages.  You had ordered us to

2    put our calculation in.  I thought the mitigation issue had

3    already been decided by the Court on summary judgment, and

4    that there was not going to be a trial on damages, that this

5    was going to be done so that you could get the calculation

6    so that the Clerk of Court could issue the judgment.  That's

7    what was in the order, and so I did not understand that

8    there was going to be a trial, and we do not believe that

9    there are any issues of fact for a trial.

10          THE COURT:  My understanding is that I granted you

11   summary judgment on liability which is why you're privileged

12   to make the 5229 application that you're making today, and

13   we deferred the calculation of damages because there are

14   issues of fact relating to the quantum of damages.  I found

15   that your proof was insufficient for me to grant summary

16   judgment on the issue of damages.  So that's something

17   that's going to be addressed at the hearing which I believe

18   we scheduled for January.

19          MR. MOSS:  So my understanding, your Honor, was

20   that the January trial was on the veil piercing issues --

21          THE COURT:  It is, it is.

22          MR. MOSS:  -- and that the only defense on damages

23   that Mr. Kwok has proffered, your Honor, is mitigation.

24   Mitigation was something that the Court has already rejected

25   as a matter of Hong Kong law on summary judgment.

tav

5

Proceedings

1          THE COURT:  I specifically referenced it in the

2     September 15th decision.  Now I referenced it in a manner

3     suggesting that I thought it was a dubious claim, and I

4     still think it's a dubious claim because I don't think it

5     was incumbent upon your client post facto to purchase an

6     apartment from the Communist Chinese Party at what would

7     appear to be an above-market price, and that's what I said

8     in my September 15, 2020, decision.

9          So there's a motion by the defendant to amend his

10    answer to assert a defense of failure to mitigate damages.

11    Whenever we get around to assessing damages, I'm going to

12    hear the defendant on the mitigation issue.  Now if you want

13    him to make a motion, and you want me to decide the motion,

14    there is nothing I can do other than allow him to make the

15    motion, have you respond to the motion, and then decide the

16    motion.  And since any hearing that we have is one at which

17    I'm going to conform the pleadings to the proof that's

18    adduced at trial, I thought as a housekeeping matter we'd

19    have the defendant withdraw that motion without prejudice

20    and for you to be content with that state of play.

21          MR. MOSS:  Okay, that's fine.  If your Honor is

22    going to grant the motion anyway on the motion for leave to

23    amend, we can stipulate to that.

24          We have a pending motion for damages, and they --

25          THE COURT:  Yes.

tav

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM   INDEX NO. 652077/2017

NYSCEF DOC. NO. 647   Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 7 of   RECEIVED NYSCEF: 11/10/2020

29

6

                          Proceedings

1          MR. MOSS:  So how would your Honor like to resolve

2     the damages issue?

3          THE COURT:  We are going to have a hearing on the

4     damages issue and that hearing is not today.

5          MR. MOSS:  Yes.

6          THE COURT:  So at that hearing whatever the

7     defendant wants to proffer in connection with this

8     mitigation of damage theory which I strongly indicated in my

9     September 15, 2020, decision and order is quite dubious,

10    they will be permitted to adduce whatever evidence they

11    have, if any, on that theory in connection with the damages

12    hearing.

13         Let me ask counsel for the defendant if we can

14    mark the motion to amend the answer as withdrawn without

15    prejudice in light of what is now on the transcript of

16    proceedings of today?

17         MR. SIEGAL:  Yes, John Siegal, Baker Hostetler,

18    for defendant Kwok.

19         We certainly consent to that result, and will

20    serve our Second Amended Answer following today and file it

21    so it's of record and that's the basis on which we will

22    proceed to the hearing.

23         THE COURT:  Fair enough.  It's really not

24    necessary for you to file a Second Amended Complaint, but I

25    think it's very clear on the transcript of the proceedings

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM          INDEX NO. 652077/2017
NYSCEF DOC. NO. 647    Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 8 of   RECEIVED NYSCEF: 11/10/2020
                                            29

7

Proceedings

1    of today that we are going to have a damages hearing, and at

2    the damages hearing you will be able to adduce whatever

3    testimony you wish or whatever documents you wish to

4    introduce on the mitigation portion claim, and it's really

5    just burdensome to the Court and burdensome to the plaintiff

6    for you to file a Second Amended Complaint and for the

7    plaintiff to have to respond to it.

8             So the record speaks for itself.  I would just

9    like a little cooperation from you and Mr. Moss here.

10            MR. SIEGAL:  Yes, your Honor.  We appreciate the

11   Court allowing us the opportunity to adduce evidence on that

12   issue, and we will be ready at the hearing, and we have had

13   good cooperation with Mr. Moss since we have appeared in the

14   case, and I'm sure we will continue to, and we look forward

15   to that opportunity to try to convince your Honor, who we

16   understand it's dubious, that on full examination there's a

17   mitigation defense here that has a very substantial impact

18   on the damages, so thank you.

19            THE COURT:  All right.

20            We will not have any Second Amended Complaint, and

21   we are not going to have any motions, correct?

22            MR. SIEGAL:  Yes, your Honor, understood.

23            THE COURT:  All right.

24            Now the second housekeeping matter that we have is

25   attorney's fees.  Since there are going to be further

tav

8

Proceedings

1    proceedings, it doesn't make any sense to address attorney's

2    fees today because there will be more attorney's fees in

3    connection with the two hearings that we are going to have,

4    one on damages and the other that's been previously

5    scheduled for January 15th.

6         So with your consent, Mr. Moss, I would like to

7    adjourn your application for attorney's fees to a more

8    appropriate time.

9         MR. MOSS:  That's fine.  That's fine, your Honor.

10        I guess, you know, the attorney's fees are

11   contract damages just like the principal and interest, and I

12   would propose that we submit our evidence at the hearing or

13   concurrently with the hearing.  I guess we really wouldn't

14   have any witnesses on the attorney's fees other than Mr.

15   Lewis.  I think we should do it at the hearing, your Honor,

16   that would make the most sense to me, at the damages

17   hearing, because they are really part of the damages.

18        THE COURT:  When all proceedings in this case are

19   concluded you will be awarded whatever contractually

20   entitled attorney's fees are due you.  It's just not a today

21   issue, it's an issue that awaits future resolution.  All

22   right.

23        MR. MOSS:  Yes, your Honor.

24        And do we have -- do you have a sense of when you

25   would like to conduct the hearing on damages?

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM   INDEX NO. 652077/2017
NYSCEF DOC. NO. 647   Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 10 of
29   RECEIVED NYSCEF: 11/10/2020

9

Proceedings

1           THE COURT:  As soon as I can.

2           Not for anything, you're all aware of the fact

3    that Justice Scarpulla has been elevated to the Appellate

4    Division, Justices Friedman and Sherwood are retiring in the

5    near term, so there are only five Commercial Division judges

6    who are currently in the wheel, and Justice Scarpulla's

7    cases have been reallocated to the five justices who remain

8    in the wheel.  So we are all a little busy now.

9           MR. MOSS:  Yes, your Honor.

10          THE COURT:  You have a January 15th date on your

11   other issue.  We will try and find a convenient time to

12   resolve damages and attorney's fees.

13          So now let's get to the only thing that I want to

14   deal with this morning which is your application under CPLR

15   5229 for a restraining order that extends to Mr. Kwok's

16   assets, and which you believe should be extended to entities

17   that he controls whether they be single purpose LLCs or

18   family members like his son.

19          So I will hear you, Mr. Moss.

20          MR. MOSS:  Thank you.

21          Your Honor, as far as the relief goes under 5229,

22   I don't think Mr. Kwok disputes that we are entitled to some

23   relief.  He does not contest that Pacific Alliance meets the

24   standard.  He does not dispute our contention that he

25   intends to dissipate his assets, a process that has already

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 647    Case 22-50073    Doc 440-16    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 11 of
29    RECEIVED NYSCEF: 11/10/2020

10

Proceedings

1     begun with this sham bankruptcy proceeding.

2          The Court has suggested that there's a showing

3     necessary beyond the fact of just prevailing on the

4     judgment.  We have submitted that all you need to do is

5     prevail on summary judgment.  The Court suggested that there

6     might be a an additional showing necessary so we did set

7     that forth in our papers.

8          There's a clear and significant risk here that if

9     left unchecked Mr. Kwok will continue to do everything in

10    his power to shield assets and render this judgment

11    uncollectible whether it's committing perjury, whether it's

12    disobeying Court orders or whether it's making this sham

13    bankruptcy petition.  We have been saying this judge for

14    years.  It's why we requested the attachment.  We also knew

15    what was going to happen.  We would win because Mr. Kwok had

16    no legitimate defense, and then Mr. Kwok would evade the

17    judgment, and that he would do whatever he can do to ensure

18    that my client is left holding the bag.

19         So the two issues specifically before the judge on

20    the 5229, there are two arguments that Mr. Kwok makes to

21    sort of limit the relief that we are requesting.  So I will

22    deal with it, what I think is the easier one first.

23         First, Mr. Kwok does not dispute that we are

24    entitled to depose him and to discovery into him, but he

25    argues that the discovery should only be into assets that we

11

Proceedings

1      have not sought discovery for, that we have not gotten

2      discovery for.  The only asset related to discovery in this

3      case was during the attachment phase, and Mr. Kwok and his

4      prior counsel vehemently and consistently refused to provide

5      any discovery into any assets other than the

6      Sherry-Netherland residence.  I think we are all in

7      agreement, actually, that all of the other assets are fair

8      game.

9              As for the apartment, the residence, there's no

10     reason to limit the discovery on that.  This is the only

11     asset we have identified that Mr. Kwok has in New York.  It

12     seems to be the largest asset that he has in this country,

13     and it's perhaps the largest asset he has anywhere that has

14     not been frozen by the Chinese government.

15             Now, Mr. Kwok's prior counsel denigrated us, they

16     said we were hysterical, we were afraid of the merits

17     because we kept seeking to attach the apartment.  We knew

18     who we were dealing with and we knew we would end up here,

19     that this asset was our best chance to collect.

20             We are entitled to discovery into that asset.

21     There's no appreciable burden associated with this

22     discovery, and we have not taken any discovery on the

23     apartment for two years.

24             There are new arguments, there are new things to

25     discover.  For example, Mr. Kwok is now claiming in his

Case 22-50073    Doc 440-16    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 13 of
29

12

Proceedings

1      bankruptcy petition that there's another company, not just

2      the New York company owned by the BVI company, the two

3      Genever entities, there's a new company, a new shell company

4      called Bravo Luck, and that's really the beneficial owner of

5      the apartment, and that has been paying the expenses, and

6      that is owned wholly by his son.  So his argument in the

7      bankruptcy is not that he has any legitimate creditors, it's

8      that the apartment is held in trust for his son, and his son

9      should take priority over Pacific Alliance.

10              It's all a shell game.  We are entitled to explore

11     that and whatever else had is happening in the last few

12     years.  They put the apartment on the market, and then they

13     took it off the day of the attachment proceeding so that

14     they could argue to you in court, hey, it's not on the

15     market any more, you shouldn't attach it.  We are entitled

16     to that discovery, and that's what CPLR 5229 is intended to

17     give us, giving the judgment creditor precisely the

18     information of who owns the assets, where they are located.

19              The second issue that they raise, your Honor, and

20     that's the one that you started this conversation with, is

21     what should be the scope here, should the restraining order

22     relate only to Mr. Kwok's assets, to Mr. Kwok's assets that

23     he indirectly and directly owns?  What they are trying to

24     say here is that it should only pertain to assets he "owns

25     directly."  That is an exception that would swallow the rule

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM    INDEX NO. 652077/2017

NYSCEF DOC. NO. 647    Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 14 of   RECEIVED NYSCEF: 11/10/2020

29

13

Proceedings

1     because Mr. Kwok does not hold any assets directly.  That is

2     his MO.  He holds assets through multiple layers of family

3     members, multiple layers of shell companies precisely for

4     this reason so creditors like us can't reach them.

5          Mr. Kwok admitted it in his deposition in another

6     case.  He said, he testified under oath, we quote this, "In

7     reality I don't have any assets under the law.  I'm

8     penniless."  He makes those claims because of the way he

9     structures his holdings like the apartment.  I told you, for

10    example, shell company, shell company that he now says his

11    son owns, and this is a company, Bravo Luck, that he says

12    his son owns even though he used to hold it, 50 percent of

13    it, and apparently says now he sold it to his son for a

14    dollar based on documents he didn't produce in this case,

15    backdated, forged documents.

16         This entire thing is a sham, that his 20-something

17    year old son at the time was really the one to pay

18    $70 million for the apartment, he's the rightful owner of

19    the apartment?  It's all a game to make sure we are unable

20    to collect.

21         There's also a 30 million-dollar yacht.  That one

22    is held by a Hong Kong company.

23              THE COURT:  I thought it was $27 million.

24              MR. MOSS:  I'm sorry, I was rounding up.  I was

25    rounding up.

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 647
Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 15 of
29
RECEIVED NYSCEF: 11/10/2020

14

Proceedings

1          There's a 27 million-dollar yacht held by a Hong

2     Kong company, and once we are allowed to take discovery we

3     will find more assets held by more shell companies of which

4     Mr. Kwok or one of his children is the sole owner.

5          Here's the issues:  If they ask you to only enjoin

6     him from dissipating his assets that he holds directly, that

7     would exclude everything, and it would exclude everything

8     even though Mr. Kwok has said that these are his assets.

9          He submitted an affidavit to this Court saying he

10    owned the apartment.  He submitted, he filed a complaint

11    last month in New York saying that the yacht was "his

12    yacht."  These are his assets, and it's permitted by the

13    statute, CPLR 5229, to have a restraining order that applies

14    to assets held directly and indirectly.

15         CPLR 5229 provides that a plaintiff can have

16    prejudgment restraint in the same way it can have

17    post-judgment restraint.  Post-judgment restraint is

18    governed by CPLR 5222, and that says that the restraints

19    apply to property in which he or she, meaning the judgment

20    debtor, "has an interest."  It doesn't say direct interest,

21    it says an interest.  Mr. Kwok has already testified, he's

22    already submitted evidence in this case that he owns the

23    apartment, and he has judicial admissions that he owns the

24    yacht.

25         So their cases that they cite for the proposition

tav

15

Proceedings

1    that CPLR 5229 and 5222 only apply to direct assets are

2    completely inapposite because none of them involve a

3    situation whereas here the defendant has actually claimed

4    that he owns these assets.

5         THE COURT:  Mr. Moss, I understand your argument.

6         Let me hear from Mr. Siegal.

7         MR. MOSS:  Thank you, your Honor.

8         MS. CARVALHO:  Good morning.  Melissa Carvalho

9    from Baker & Hostetler for Mr. Kwok.

10        I just want to begin by saying we have repeatedly

11   heard this morning Mr. Moss saying "Mr. Kwok's bankruptcy."

12   The bankruptcy petition that was filed was not Mr. Kwok's.

13   We have been made aware of it as the Court has been made

14   aware of it.  On its face it says that it's filed by an

15   entity, one of the entities who has counsel here present

16   today.  So if any questions or issues are arising relating

17   to the bankruptcy, I cannot speak to it, but Mr. Mitchell

18   certainly can.

19        So on CPLR 5229 the relief being sought by

20   plaintiff in the TRO and order to show cause is far broader

21   than that provided under CPLR 5229.  Plaintiff seeks to

22   enjoin and restrain defendant Kwok with respect to "any

23   property in which he has an interest," but CPLR 5229's

24   application is limited to Mr. Kwok, the adverse party.

25        CPLR 5229 specifically states that "the trial

tav

Case 22-50073    Doc 440-16    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 17 of
29

16

Proceedings

1    judge may order examination of the adverse party and order

2    him restrained with the same effect as if a restraining

3    notice had been served upon him after judgment." Courts

4    have strictly construed the language of CPLR 5229. The

5    adverse party is Mr. Kwok, and the Court's decision and

6    order on summary judgment is limited to him individually.

7         Plaintiffs have spent a lot of time in their reply

8    seeking to continue to poison the well against Mr. Kwok, but

9    that is simply because plaintiff cannot present authority to

10   support its unilateral expansion of CPLR 5229.

11        Plaintiff presented the Court with various

12   categories of cases where CPLR 5229 relief has been granted,

13   but that goes to the Court's discretion to grant this

14   relief. The statute says the Court "may order relief under

15   5229," and we are not disputing that. Yes, a Court can

16   award CPLR 5229 relief in many different fact patterns, but

17   the relief is still limited to what is provided in CPLR

18   5229, and plaintiff has not shown any basis supporting its

19   unilateral expansion of the statute besides it's just what

20   they want.

21        The cases cited by plaintiff, in fact, do not

22   expand the scope of CPLR 5229. The APF case, Gallegos case,

23   Safeco case, Unex case and Leser case all limit the relief

24   to the specific adverse party and not to any "interest" that

25   party may have. In the Eastern District of New York in the

tav

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 647    Case 22-50073    Doc 440-16    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 18 of
29    RECEIVED NYSCEF: 11/10/2020

17

Proceedings

1        Leser v. U.S. Bank case the Court specifically stated,

2        "Plaintiff is correct, however, that the scope of the order

3        should be limited to the restraint on the assets of

4        plaintiff Leser."  USB had originally sought restraints

5        against "plaintiff Leser and any person, company or other

6        entity controlled by him," but then USB conceded during

7        argument that it was only seeking restraint as to plaintiff

8        Leser, and the Court found that appropriate and proper.

9        Nothing plaintiff says can change that.  The statute only

10       provides the relief that it provides.  So let's look at the

11       statute.

12               The statute provides for examination and

13       restraints.  Examination:  Here Mr. Kwok's assets have

14       already been addressed in discovery.  Mr. Kwok has been

15       deposed three times in this matter, on October 3rd, 2018,

16       November 25, 2019, and December 11, 2019.  Mr. Kwok has

17       produced over 14 pages of documents.  Plaintiff has had

18       multiple opportunities to sufficiently examine Mr. Kwok,

19       and, in fact, if you look at plaintiff's second set of

20       document requests attached to my affirmation you see that

21       they were, in fact, targeting assets.

22               Now plaintiff argues that passed discovery is

23       insufficient, but the record shows that there was, in fact,

24       disclosure.  Objections were certainly made based on the

25       scope.  There were questions asked of Mr. Kwok such as,

18

Proceedings

1    "Were any of your assets received by the Chinese

2    government," but by not allowing fishing expeditions that

3    does not mean that discovery was not sufficient.

4         I also note there were disputes in the past, and

5    those discovery disputes have been resolved, but creating

6    confusion by making these broad-sweeping statements, and

7    attaching e-mails without original letters that they are

8    responding to does not change that.

9         Now turning to the second part that the statute

10   allows restraint, but restraint is limited to CPLR 5229 and

11   is distinguishable from the restraint provided under CPLR

12   5222.  The relief sought here pursuant to 5229 is applicable

13   before a judgment has been entered so unlike post-judgment

14   devices which are available against third-parties, the

15   restraining powers under CPLR 5229 can only be used against

16   "the adverse party."  However, at any posture restraint is

17   always limited to property in which Mr. Kwok has a direct

18   and actual interest.  Restraint will not apply to indirect

19   interests including interest held in a corporation, proceeds

20   of property, or even assets of an alter ego until alter ego

21   status has been adjudicated and liability has been

22   determined.

23        Plaintiff also cannot use CPLR 5229 as an end run

24   under the requirements for prejudgment attachment statutes.

25   Here plaintiff's application relies ad nauseam and we have

Proceedings

1    heard his counsel repeat this morning and admit that the

2    sole focus here is on the ownership of the residence at the

3    Sherry.  Plaintiff himself says Mr. Kwok is not the owner of

4    the Sherry.  The Court has acknowledged and stated Mr. Kwok

5    is not the owner of the Sherry.  And even though Mr. Kwok

6    does not have a direct interest in the residence at the

7    Sherry, he agreed on consent to a court order where he would

8    provide plaintiff with immediate written notice of any

9    contract to sell, assign, pledge or transfer any assets of

10   the respective defendant entity to any third-party.  So

11   plaintiff has received broader relief on subsequent than it

12   would have been entitled on this instant publication under

13   CPLR 5229 so, therefore, there's no concern with respect to

14   dissipation of the Sherry.

15          Now plaintiff argues that Mr. Kwok is trying to

16   weaken the relief that they are seeking, but in actuality we

17   are adhering to the statute and the powers that the Court

18   has given under the statute.  Plaintiff is relying on

19   statements allegedly made by Mr. Kwok regarding his

20   ownership of assets.  Mr. Kwok can say anything he wants to,

21   ownership is a factual legal issue.  If he does not own it,

22   he does not own it, period.  That is not enough to give you

23   broader relief under CPLR 5229.

24          Discovery has been conducted.  The plaintiff's

25   focus here is solely on the Sherry, as we have repeatedly

Proceedings

1    heard this morning.  Any further examination is a waste of

2    time and money.  The subject is already -- the Sherry is

3    already subject to an order and it's restrained.

4                  None of plaintiff's arguments change the

5    application of CPLR 5229 here.  That's it.

6                  Now importantly relief under 5229 rests within the

7    sound discretion of the Court, absolutely, but Mr. Kwok has

8    already been examined, and any further examination should be

9    limited to assets and topics not previously addressed in

10   discovery.  Redundant and duplicative discovery are not

11   authorized under CPLR 5229.

12                  And the transfer of the Sherry, as we have already

13   mentioned several times, it's already been restricted, and

14   any further restraints should be denied.  We have a consent

15   order in place that Mr. Kwok has agreed to, and Mr. Kwok

16   does not have a direct interest in the residence at the

17   Sherry.

18                  So Mr. Kwok requests that this Court vacate the

19   TRO, deny plaintiff's motion for CPLR 5229 relief as it far

20   exceeds the scope of CPLR 5229.  Mr. Kwok has already been

21   examined, and his assets have already been discovered and

22   restrained by this Court, but should this Court be inclined

23   to grant plaintiff's relief under CPLR 5229, Mr. Kwok would

24   request that this Court use its discretion to modify such

25   relief to Mr. Kwok's assets in his individual capacity as

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 647    Case 22-50073    Doc 440-16    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 22 of    RECEIVED NYSCEF: 11/10/2020
29

21

Proceedings

1    the "adverse party," and Mr. Kwok's assets not previously

2    the subject of prior discovery and court orders relating to

3    a transfer.

4             Thank you, your Honor.

5             THE COURT:  Okay.  Does anybody from Genever want

6    to say anything?

7             MR. MITCHELL:  No, your Honor.  I think that was

8    well said.  I join Ms. Carvalho in her argument.

9             THE COURT:  All right.

10             Look, this is a 2017 case.  We've had multiple

11    motions relating to Mr. Kwok's assets.  The Court believes,

12    as reflected in the September 15, 2020, order that Mr. Kwok

13    has attempted to mislead the Court.  The Court believes that

14    Mr. Kwok is, as the plaintiff contends, playing a shell game

15    with his assets, and has violated if not the letter of court

16    orders, the spirit of court orders.  This is going to come

17    to an end on or shortly after January 15, 2021, when we have

18    the trial on the alter ego issue, but between now and the

19    commencement of the January 15, 2021, trial Mr. Kwok and any

20    entities that he directly or indirectly controls are

21    restrained from alienating or transferring any property that

22    Mr. Kwok has a direct or indirect interest including most

23    specifically the apartment at the Sherry-Netherland Hotel

24    which was the subject of 2018 discovery and a consent order

25    to which counsel for Mr. Kwok referenced, and also the yacht

22

Proceedings

1    which Mr. Kwok has at various times claimed ownership of.

2    So the net result is that I exercise my discretion under

3    CPLR 5229 to restrain any further transfers of the

4    Sherry-Netherland apartment which Mr. Kwok once owned, and

5    the 27 million-dollar yacht which Mr. Kwok once claimed to

6    have owned.

7    So we are not going to have any more shell games.

8    Wherever these assets are held, they are going to remain

9    held where they presently reside, and if it's determined

10    that the entities that are presently listed as the owners of

11    the assets are the alter ego of Mr. Kwok or are wholly

12    dominated and controlled by Mr. Kwok, those assets will be

13    made available to satisfy any judgment that the plaintiff

14    recovers.

15    In the interim, between now and the January 15,

16    2021 trial on the alter ego issues, the plaintiff can

17    conduct discovery of any of the entities that claim to own

18    the Sherry-Netherland apartment or the yacht, and counsel

19    for Genever and counsel for Mr. Kwok are directed to

20    forthwith provide counsel for the plaintiff with information

21    identifying the record owners of those two assets.

22    That's the order of the Court.

23    MS. CARVALHO:  Your Honor, could I ask for some

24    clarification?

25    We understand the order of the Court today,

tav

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 647
Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 24 of
29
RECEIVED NYSCEF: 11/10/2020

23

Proceedings

1    however, I am confused where it comes to indirect ownership

2    because, I'm just thinking off the top of my head here,

3    there could be entities that will be restrained from

4    conducting regular and ordinary business, and to what extent

5    can someone decide that something would be an indirect

6    interest and prevent ordinary transfers?  I mean, I don't

7    know how far this goes with other independent autonomous

8    companies.

9              THE COURT:  It goes this far:  There is no

10   ordinary course transfer of a 70 million-dollar apartment at

11   the Sherry-Netherland.  There is no ordinary course transfer

12   of a 27 million-dollar yacht.  If Mr. Kwok wants to get a

13   haircut or if Mr. Kwok wants to buy a newspaper or if

14   Mr. Kwok wants to take a vacation in the middle of the

15   coronavirus pandemic, that would be ordinary course, but I

16   think everybody on this Microsoft Teams platform understands

17   that there's been a lot of moving around of these two assets

18   that have an aggregate value of at least $75 million, and

19   the plaintiff is entitled to ascertain the entity that

20   presently has title to these assets, how those entities came

21   to have title to those assets, and any intermediate

22   transfers that were made between the time Mr. Kwok was the

23   record owner of these assets and the time that the present

24   record owner came into possession of these assets.

25             MS. CARVALHO:  Understood.

tav

Proceedings

1          So the assets specifically are the Sherry and the

2      yacht, but the position, just to make sure I understand it,

3      is that with respect to other autonomous corporations, they

4      can continue in the ordinary course, there's no ceasing or

5      stopping of business for other legally autonomous entities.

6          THE COURT:  It's not clear to me what other

7      business and what other entities Mr. Kwok has formed.  The

8      intent here which is very clear and specific is that in this

9      2017 case in which there's been a great deal of

10     gamesmanship, a great deal of dissembling, and some flagrant

11     disregard of court orders, I want to know if any transaction

12     is going to take place in which Mr. Kwok is the guiding hand

13     that's something other than an ordinary course of business

14     transaction.

15         MS. CARVALHO:  Okay.  I think we understand.

16         Thank you, your Honor.

17         MR. MOSS:  Your Honor, if I may, just two points.

18         Number one, in terms of the assets, we know that

19     there are also shell companies in Connecticut that own

20     Greenwich real estate that he just bought for like

21     $7 million.  I think the most efficient -- and we don't know

22     what we don't know.  I think the most efficient way to

23     proceed would be for us to be able to serve some sort of

24     interrogatory at the outset, what are the assets and what

25     are the entities that hold them, and then we can proceed to

25

Proceedings

1    depose Mr. Kwok and those entities if they are entities or

2    Mr. Kwok as the 30(b)(6) for those entities. I want to do

3    this efficiently and with minimal burden, and rather than

4    just asking him questions that he is going to say he does

5    not know the answer to, I think the most efficient way would

6    be to try to use written discovery to get a list of what the

7    actual assets are.

8            THE COURT: Look, I'm not going to tell you how to

9    practice law. You have the transcript of today's

10   proceedings. I think I've made it very clear what you can

11   do.

12           You can conduct discovery of any assets -- you can

13   conduct discovery of any entity that you have a good faith

14   basis for believing Mr. Kwok directly or indirectly

15   controls. It can be written discovery, it can be oral

16   discovery. I'm not going to play schoolyard monitor while

17   you jockey back and forth with discovery disputes about the

18   scope of what you can do. I think Mr. Kwok's counsel and I

19   think Genever's counsel full understand what is reflected in

20   the transcript of proceedings. We are dealing with a

21   telescoped period of time here.

22           There's a restraining order that's been entered

23   with respect to two specific assets, and only two specific

24   assets, and there's an alter ego trial that's scheduled for

25   January 15, 2021, and there's a damages hearing that's going

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 647
Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 27 of
29
RECEIVED NYSCEF: 11/10/2020

26

Proceedings

1    to take place sometime before or in conjunction with the

2    alter ego trial.

3            Again, this is a 2017 case, and it's occupied a

4    considerable amount of the Court's time.  It's resulted in

5    several written decisions.  While orders of the Court are

6    either flaunted or exceedingly liberally interpreted, and

7    while intentional or unintentional misstatements that have

8    misled the Court have been made to the Court, we are going

9    to have closure in this case in January of 2021.

10           So the court reporter will give you her e-mail

11   address.  You will order a copy of the transcript.  I can't

12   be any clearer than I've been on this transcript.

13           If any party or any counsel disregards the orders

14   of the Court, there will be serious sanctions.

15           Are we all clear?

16           MR. MOSS:  Yes.

17           Your Honor, may I just -- one question on the

18   damages motion.

19           We filed our motion, they opposed.  I understand

20   the Court is going to have a hearing as soon as possible on

21   this issue.  May we reply because there are some things we

22   would like to put before the Court given that they have

23   opposed and we have not yet replied?

24           THE COURT:  If you wish.  I have explained to you

25   that I am backed up with trials and motions.  I have carved

27

Proceedings

1   out a January 15th date.  That's chiseled in stone.  We will

2   have the alter ego trial on January 15, 2021, if we can get

3   to the damages hearing before, then we will, but there's not

4   a lot of time between now and January 15th, and you,

5   Mr. Moss, are probably going to be quite busy.

6          MR. MOSS:  Yes, your Honor.

7          MR. MITCHELL:  Your Honor, one last question

8   regarding the order here today just because, as you're

9   aware, Genever New York has filed bankruptcy.  I doubt that

10  any assets within the bankruptcy estate would be sold or

11  anything between now and January 15th, but I want to make

12  sure that myself particularly or any party to the action

13  wouldn't draw the ire of a potential sanction for whatever

14  happens in the bankruptcy court.

15         THE COURT:  No, I cannot -- I have no jurisdiction

16  over any entity that's in bankruptcy.  That doesn't mean

17  applications can't be made by Mr. Moss to the bankruptcy

18  court.  It doesn't mean that Mr. Moss can't refer in any

19  proceedings before the bankruptcy court to the transcript of

20  the proceedings here today, but I well understand the

21  automatic stay of the bankruptcy court with respect to

22  entities that have filed for bankruptcy.

23         MR. MITCHELL:  Thank you, your Honor.

24         THE COURT:  All right.

25         Terry, can you give the parties your e-mail

tav

FILED: NEW YORK COUNTY CLERK 11/10/2020 02:41 PM
INDEX NO. 652077/2017

NYSCEF DOC. NO. 647
Case 22-50073   Doc 440-16   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 29 of
29
RECEIVED NYSCEF: 11/10/2020

28

Proceedings

1          address from which they can order a copy of the transcript

2          which will be so ordered and e-filed?

3                    Thank you very much.

4                    Have a nice day everyone.

5                    MR. MOSS:  Thank you, your Honor.

6                              * * *

7                    C E R T I F I C A T E

8    I, Terry-Ann Volberg, C.S.R., an official court reporter of

9    the State of New York, do hereby certify that the foregoing

10   is a true and accurate transcript of my stenographic notes.

11

12                                   _____
                                     Terry-Ann Volberg, CSR, CRR
13        SO-ORDERED 11-9-2020       Official Court Reporter

14

15

16        BARRY R. OSTRAGER, J.S.C.

17

18

19

20

21

22

23

24

25