# EXHIBIT PAX 20

May 27, 2021 Hearing Transcript, *PAX v. Kwok*,
Index. No. 652077/2017 (N.Y. Sup. Ct.), Dkt. 833

CASE NO. 22-50073
IN RE: Ho Wan Kwok
VS.
PAX   EXHIBIT   20
DATE _____ IDEN.
DATE 5/25/2022 Admitted in Full   EVID.
BY P.E.
Deputy Clerk
AO 386-A

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM         INDEX NO. 652077/2017
NYSCEF DOC. NO. 833    Case 22-50073   Doc 440-18   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 2 of 20                                                RECEIVED NYSCEF: 06/01/2021

1

```
 1  SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK : CIVIL TERM : PART 61
 2  --------------------------------------------X
    PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,
 3
                      Plaintiff,
 4                                                    INDEX NO:
              -against-                               652077/2017
 5
    KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI,
 6  a/k/a GUO WENGUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a
    HAOYUN GUO, GENEVER HOLDINGS CORPORATION, and GENEVER HOLDINGS
 7  LLC,

 8                    Defendants.
    --------------------------------------------X
 9                    MICROSOFT TEAMS
                      May 27, 2021
10
    B E F O R E:
11
                 THE HONORABLE BARRY OSTRAGER,
12                         J U S T I C E

13  A P P E A R A N C E S:

14     O'MELVENY & MYERS LLP
       Attorney for the Plaintiff
15     Times Square Tower
       New York, New York  10036
16     BY:  EDWARD MOSS, ESQ.
            STUART SARNOFF, ESQ.
17
       BAKER HOSTETLER, LLP
18     Attorney for the Defendant
       45 Rockefeller Plaza
19     New York, New York  10111
       BY:  MELISSA CARVALHO, ESQ.
20          JOHN SIEGAL, ESQ.

21     LAWALL & MITCHELL, LLC
       Attorney for the Defendant GENEVER
22     162 E. 64th Street
       New York, New York  10065
23     BY:  AARON A. MITCHELL, ESQ.

24

25
```

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM
NYSCEF DOC. NO. 833
Case 22-50073    Doc 440-18    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 3 of 20
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/01/2021

2

```
1        YANKWITT LLP
         Attorney for the Defendant
2        140 Grand Street, Suite 705
         New York, New York  NY
3        BY:  DANIEL ALTER ESQ.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21                                    Karen Mangano, CSR
                                      Senior Court Reporter
22

23

24

25
```

Proceedings

1    THE COURT: All right. Mr. Moss, this is your
2    motion.
3    MR. MOSS: Good afternoon, your Honor.
4    We have two requests in our motion. One is compel
5    discovery in response to a subpoena and the other is to
6    modify the Court's restraining order. So I thought I would
7    start with the subpoena.
8    Your Honor, this might be the most straightforward
9    issue that I've argued in front of this Court on this case.
10   CPLR 5223 permits a broad range of discovery on any
11   third party to request information that is relevant --
12   relevant to enforcement of a judgment.
13   As the Court knows, we've been forced -- my client
14   has been forced to serve subpoenas on several third parties
15   trying to find Mr. Kwok's assets because he doesn't hold
16   them in his own name.
17   Perhaps the most important subpoena Pacific
18   Alliance served was a subpoena on an entity called Golden
19   Springs.
20   Golden Springs is a so-called family office for
21   Mr. Kwok's family, but in reality, it is just Mr. Kwok's
22   principal front. It's an entity that he funded entirely
23   with his own money. It's an entity that pays all of the
24   expenses for his lavish lifestyle. Every single expense by
25   their own admission. It pays legal fees for a host of

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 833 RECEIVED NYSCEF: 06/01/2021
Case 22-50073    Doc 440-18    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 5 of 20

4
Proceedings

1 lawsuits for lawyers to represent Mr. Kwok in his individual
2 capacity in cases in which Golden Springs is not even a
3 party.
4     It pays the legal fees of a lawyer who represents
5 the entity that owns the yacht that's stonewalling me in
6 discovery like the others.
7     It pays the maintenance on the Sherry-Netherland
8 apartment. We know all of this because Mr. Kwok and his
9 lawyers admitted it in court filings and in discovery
10 responses.
11     I just want to put a fine point on it, your Honor.
12 Mr. Kwok has no money or assets according to him, but he
13 says he funded this entire entity and he uses it to pay
14 every single one of his expenses, his living expenses.
15     What are we talking about here, Judge? How is this
16 discovery possibly not permitted under the CPLR? How is it
17 not permitted relevant to enforce a judgment?
18     The opposition that they filed, your Honor, it's a
19 frivolous document, and I want to start with what's not in
20 here. What's not in it is a dispute about any one of the
21 facts that I just covered about Golden Springs. They ignore
22 all of them. They can't dispute them because Mr. Kwok and
23 his lawyers admitted them in discovery responses and in
24 Court filings. So Golden Springs -- one of their arguments
25 is well, we have corporate documents. We respect the

KM

1  corporate forum. We have employees. But it doesn't dispute
2  that it only has one business which is to serve Highness
3  Kwok. It doesn't even say what the business is besides a
4  family office for his business. They say we have employees
5  that include security. That's Mr. Kwok's bodyguard who
6  comes to -- who comes with him to my office when I depose
7  him and hands him bottled water because he's afraid that
8  we're agents of the communists and my water at my firm is
9  going to kill him. I mean, Judge, this is not a real
10 company. They pay for Mr. Kwok's people.
11         If Tim Cook got sued for something unrelating to
12 his capacity in Apple, Apple doesn't pay those fees. Apple
13 doesn't pay his maintenance. This is Mr. Kwok's piggy bank
14 that he set up with his own money.
15         The principal argument that is in Golden Spring's
16 papers is that Golden Springs is a third party and so we
17 should only be entitled to information about assets that it
18 holds for or transactions that it has conducted with Miles
19 Kwok.
20         That's basically like saying it's a bank; right.
21 You get that we subpoena the bank which we've done. We get
22 Mr. Kwok's information, but we don't get information about
23 the bank itself. We don't get information about the bank's
24 other customers. That's a nice argument for a bank, but it
25 completely ignores the context that Golden Springs is not a

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 833 RECEIVED NYSCEF: 06/01/2021
Case 22-50073    Doc 440-18    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 7 of 20

6
Proceedings

1  third party.  It is the entity that holds Mr. Kwok's money,

2  and it is the entity that pays his legal expenses.  So it's

3  assets are his assets.  It's transactions are his

4  transactions.  And it's financial information is his

5  financial information.

6  The suggestion in the papers that Mr. Kwok and Miss

7  Wang and all of his people should be able to pick and choose

8  and determine which information at Golden Springs relates to

9  Mr. Kwok and which doesn't is a recipe for disaster here,

10  Judge.

11  Mr. Kwok denies even being involved with Golden

12  Springs.  He denies being involved with the entity that owns

13  the boat that we all know he owns because he said he owns

14  the boat on YouTube, the boat which, by the way, is still

15  out of the jurisdiction 15 days incurring $500,000 a day.

16  Mr. Kwok is the same guy who denies owning his

17  apartment that Miss Wang says -- told the Court under oath

18  that he owns it.

19  So the limitation that they're trying to put in

20  here, only things relating to Mr. Kwok, that's nonsense in

21  this case, and it's just a recipe for us to get nothing.

22  Golden Springs also argues on the subpoena that we

23  have to prove alterego to get discovery into it's assets.

24  Well, that's just made up.  There is no case to support

25  that.

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM — INDEX NO. 652077/2017
NYSCEF DOC. NO. 833 — RECEIVED NYSCEF: 06/01/2021
Case 22-50073   Doc 440-18   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 8 of 20

7

Proceedings

1  5223 is a broad standard. It's a generous
2  standard. The Court ordered Miss Wang's information to be
3  produced by the banks. They're not alteregos. She's not an
4  alterego. Of course, we don't have to prove that it's an
5  alterego to get it's information.

6  The Court found that Miss Wang might be hiding Mr.
7  Kwok's assets and gave us access to her financial
8  information. This is much easier. He's already said it's
9  his money, and he's using it to pay all of his expenses. I
10 mean, there's no credible opposition to this motion.

11 Finally, there's some arguments about scope. You
12 know, I read it a few times. My subpoena is astounding.
13 It's blunderbuss. It's a fishing expedition. It's
14 flagrant. A lot of adjectives, but no substance. They
15 don't articulate any burden arguments at all.

16 Usually you say, Judge, well, we ran some search
17 terms, and there are too many hits or this is going to be
18 too burdensome to get because it's on a different server.
19 Nothing. This is basically just a relevance argument that
20 we're asking for too much.

21 If they want to have a discussion about search
22 terms and custodian and which laptops to collect, we welcome
23 that discussion. We welcome an actual discussion about
24 burden and scope. But not just saying, well, we think it's
25 too much without any showing -- any showing at all that

KM

8

Proceedings

1 there is an actual burden.

2 I want to just end on one particular argument on
3 the subpoena point because I expect Mr. Alter will focus on
4 it. We ask -- we do. He's right. We ask for information
5 about 60 people and entities, no one knowing to be
6 associated with Kwok.

7 Mr. Alter quips in the brief, well, known by whom?
8 Known by whom? Known by us, Judge. Known by us based on
9 spending a lot of money and lot of time to dig through
10 public records, court filings, social media accounts because
11 that's the game Mr. Kwok has forced us to play.

12 The reason we have to ask for this information is
13 because Golden Springs is the hub. We can't spend the rest
14 of our lives chasing 100 entities. I mean, my grandkids
15 would be doing this. Golden Springs is the entity that has
16 the information. It's produced documents relating to Shiny
17 Times, the entity that was involved in the underlying case.
18 It has the documents. It is the hub of the empire. If it
19 doesn't have information about a couple of these entities,
20 if we're wrong about one or two, okay, fine. Then they
21 should run the search and tell us they don't have it and not
22 produce it. But run the search terms, collect the ESI and
23 provide the documents.

24 THE COURT: All right, Mr. Moss. I understand your
25 argument. I also understand that Mr. Kwok is incurring

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 833
RECEIVED NYSCEF: 06/01/2021
Case 22-50073   Doc 440-18   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 10 of 20

9

Proceedings

1  $500,000 a day in contempt penalties. I understand that Mr.
2  Kwok believes that these court proceedings are a game of
3  evasion that he -- that he wants to play.
4  　　　　And let me hear from counsel for Golden Springs.
5  　　　　MR. ALTER: Good afternoon, your Honor. It's
6  Daniel Alter, and we've just heard a lot of talk but
7  relatively little truth, and I'd like to step back and
8  clarify some issues that were quite muddied.
9  　　　　First of all, to correct two specifically
10  inaccurate statements, it's my understanding that Mr. Kwok
11  has never said that he is entirely unrelated or has no
12  connection to Golden Springs. Quite the opposite. He said
13  that it is his family office. So let's be accurate about
14  that.
15  　　　　The second thing is that, you know, apparently --
16  they take the position that Mr. Kwok has entirely funded
17  Golden Springs. Well, I don't see the evidence of that.
18  What I see is a statement in the record that he initially
19  provided capital to Golden Springs, but I see no evidence
20  that he's continued to do so or that the capital there now
21  is his. Let me step back a moment and talk about this.
22  　　　　THE COURT: Before you do so, Mr. Alter, because
23  rightly or wrongly, Mr. Kwok has exhausted the Court's
24  patience with his antics.
25  　　　　It's quite undisputed that Golden Springs has

KM

Proceedings

1   funded seven-figure payments to facilitate Mr. Kwok's
2   lifestyle, and Mr. Kwok leads a rather extravagant
3   lifestyle, purports to have zero assets whatsoever.
4       So the plaintiff is a judgment creditor. The
5   plaintiff knows that Golden Springs is funding expenses for
6   Mr. Kwok. Not minor inconsequential expenses. Major
7   expenses. And the judgment creditor is entitled to have
8   discovery of the entity that is funding Mr. Kwok's expenses.
9       The judgment creditor is also entitled to an order
10  directing Golden Springs not to transfer, dispose or
11  otherwise dissipate whatever assets Golden Springs has
12  because the best evidence that has been made available to
13  the Court compellingly suggests that any assets that Golden
14  Springs has were provided to Golden Springs by Mr. Kwok.
15      Now if the discovery that the judgment creditor is
16  seeking from Golden Springs disproves that, well, then we
17  have a different situation than the situation we now have.
18      Under the CPLR, a judgment creditor is entitled to
19  discovery of third parties of which in this case may well be
20  alteregos of Mr. Kwok, but it's not necessary for the
21  judgment creditor to establish that Golden Springs is an
22  alterego of Mr. Kwok.
23      MR. ALTER: You know, your Honor, we haven't --
24  that's not our position. That's the straw man that has been
25  presented.

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM
NYSCEF DOC. NO. 833
Case 22-50073   Doc 440-18   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 12 of 20
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/01/2021

11

Proceedings

1   THE COURT: Well, be that as it may, unless you can
2   persuade me otherwise, I am granting the judgment creditor's
3   motions in their entirety.
4   As Mr. Moss outlined, he is perfectly prepared to
5   meet and confer and discuss limitations on specific requests
6   that he's made if you can then state to him good cause for
7   that. But we're past playing games here.
8   MR. ALTER: Well, your Honor, I'm not here to play
9   games, and if the Court has made it's decision, would it
10  allow me to make my record.
11  THE COURT: Yes. Make your record.
12  MR. ALTER: Okay. Thank you, your Honor.
13  First of all, our argument is not that you have to
14  pierce the corporate veil in order to get third-party
15  discovery under the CPLR for judgment creditors. It's a
16  relevance argument, and we've already said that there are
17  aspects such as discovery as between Golden Spring and the
18  actual judgment debtor is relevant and appropriate. So we
19  haven't taken a position that is all out of line with what
20  the law provides.
21  What we have said and what Mr. Moss has proven in
22  his argument is they take the position that Mr. Kwok is
23  Golden Spring and Golden Spring is Mr. Kwok; and therefore,
24  they are entitled to go through the entire file of Golden
25  Spring.

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 833 RECEIVED NYSCEF: 06/01/2021
Case 22-50073    Doc 440-18    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 13 of 20

12
Proceedings

1     Well, you know, your Honor, that's called piercing
2 the corporate veil, and it's our position that if they want
3 documents independent of the judgment debtor where they make
4 no connection or efforts to make a connection whatsoever,
5 then, yes, they do have to pierce the corporate veil, but
6 that isn't the sum total of our argument.
7     Our argument is that the requests are exceedingly
8 overbroad and that they are irrelevant. And in fact, let's
9 go for a moment to the facts that Mr. Moss says are
10 overwhelming in this case.
11     If you look at the submission that was actually
12 presented on this motion, there is absolutely no facts
13 presented with regard to the 64 nonparties for which they
14 seek discovery having nothing to do with the judgment
15 debtor. Just -- not even having anything to do with Golden
16 Spring. They just want discovery to 64 nonparties.
17     Now your Honor, we heard Mr. Moss say that he knows
18 there is a connection. Well, wouldn't it be enlightening
19 for the Court to know what that connection is before there
20 is a ruling that Golden Spring has to produce documents that
21 otherwise are clearly irrelevant. So that's why we assert
22 that those documents should not be discovered unless and
23 until Mr. Moss and PAX comes forward with actual proof that
24 there is a connection. We don't have that.
25     And with regard to the proof, the overwhelming

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM
NYSCEF DOC. NO. 833
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/01/2021

Case 22-50073    Doc 440-18    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 14 of 20

13

Proceedings

1  proof that Golden Spring is Mr. Kwok and Mr. Kwok is Golden
2  Spring, at least from the record I've seen, your Honor, and
3  I do not call your Honor's history -- historical
4  recollection into question, but what has been presented on
5  this record is Golden Spring initially helped to capitalize
6  a company. A lot of folks do that.

7  Secondly, Golden Spring pays for attorneys and has
8  contributed to paying for apartment expenses. Well, okay.

9  Three, employees of Golden Spring have attended
10 family interests that have to do with the Guo family. Well,
11 it's a family company. It's a family office.

12 And Golden Spring's parent has apparently produced
13 documents in response to discovery requests. So yes,
14 there's a connection as Mr. Kwok has said, but there isn't
15 an identity of entity between Mr. Kwok and Golden Spring,
16 and that's why we referred in our papers to the fact that if
17 that is the case, the law is very clear they do need to
18 pierce the corporate veil and they absolutely would need to
19 pierce the corporate veil to get injunction. Because as we
20 stated, as much as the Court has lost patience, and I
21 understand your Honor's position, the law is clear that an
22 entity as a matter of due process can not be enjoined
23 without actually being a party.

24 And even if an entity were brought into a
25 litigation as a party, the Courts are constrained. They can

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 833
Case 22-50073  Doc 440-18  Filed 05/25/22  Entered 05/26/22 15:30:37  Page 15 of 20
RECEIVED NYSCEF: 06/01/2021

14

Proceedings

1   not grant prejudgment asset freezes, and that is exactly
2   what PAX is trying to do now.  They are trying to enjoin
3   Golden Spring from expending any of it's own assets for any
4   purpose, and that is contrary to the law.
5           Now, they argue that your Honor has a power to
6   enforce restraining orders.  Of course you do.  And Golden
7   Spring was served with a restraining order, and Golden
8   Spring acts at it's peril if it transfers any property with
9   which Mr. Kwok -- in which Mr. Kwok has an interest, but a
10  Court's enforcement of a restraining notice is not the
11  tantamount to an injunction.  It's an after-the-fact
12  litigation based upon allegations that there had been a
13  violation of the notice.  They're two entirely separate
14  things.
15          So your Honor, respectfully, there isn't either a
16  jurisdictional basis for the injunction nor is there a
17  compelling factual basis for one because they have the
18  relief that the CPLR has provided for.
19          Now, if the Court is going to go ahead and enter
20  certain orders as your Honor has described, I request a few
21  things, a few clarification points.
22          First of all, we would request the Court post a
23  bond.  Order that PAX post a bond.  They are seeking an
24  injunction against Golden Spring from using any of it's
25  assets.  And pursuant to the CPLR 6312(b), a bond is

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM
Case 22-50073  Doc 440-18  Filed 05/25/22  Entered 05/26/22 15:30:37  Page 16 of 20
NYSCEF DOC. NO. 833
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/01/2021

15

Proceedings

1  necessary. It's a necessary element for preliminary relief.
2  So we would ask the Court direct that a bond be posted.
3        We would also ask whether under this jurisdiction,
4  Golden Spring is able to pay lawyers. Is it able to pay
5  it's employees?
6        Mr. Moss dismisses the fact that the company
7  actually employs 16 employees and seven independent
8  contractors. Are they not entitled to continue that? Do
9  they need -- is this injunction going to close Golden
10 Spring? We need that clarification because Golden Spring
11 does not want to be in violation of your Honor's order.
12       And finally, you know, your Honor, I would request
13 respectfully a stay of the Court's order for a week so that
14 we may seek appellate relief and seek a stay pending appeal.
15       But given that this is, you know, a holiday
16 weekend, we request that the Court stay because again, as I
17 said, Golden Spring does not want to be in violation of this
18 Court's order; but for all the reasons I've stated,
19 honestly, your Honor, the relief requested is a function of
20 facts that Mr. Moss has asserted as judge, jury and
21 executioner.
22       They haven't been presented. They haven't been
23 adjudicated. They haven't been formally determined, all of
24 which are necessary for the kind of relief for reaching into
25 Golden Spring and setting aside it's individual identity and

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM
Case 22-50073   Doc 440-18   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 17 of 20
NYSCEF DOC. NO. 833
INDEX NO. 652077/2017
RECEIVED NYSCEF: 06/01/2021

16

Proceedings

1   just securing whatever documents it wants and enjoining all
2   of it's assets.  That's necessary under the law.
3           Thank you, your Honor.
4           THE COURT:  All right.  I take your points.
5           Nothing that you've said suggests that Golden
6   Springs hasn't paid seven figures worth of Mr. Kwok's
7   expenses in the immediate recent past.  Nothing that you
8   said alters the fact that Mr. Kwok flaunts the Court's
9   orders at will.
10          You're correct that PAX needs to post a $500,000
11  bond.  You're correct that I should stay these orders until
12  June 1st at five p.m. to enable you to seek appellate
13  relief, and you're correct that Golden Spring may pay it's
14  employees in accordance with a schedule listing the identity
15  of the employees and the amount of their compensation which
16  you'll provide to Mr. Moss.  And I think that addresses your
17  concerns.
18          MR. ALTER:  With one exception, your Honor, and I
19  appreciate the Court's response to those concerns.  The
20  attorneys.  The attorneys that Golden Springs has been
21  permitted here today to pay.
22          THE COURT:  There's no issue.  Just need to
23  identify the attorneys and the fees that you're paying to
24  them.
25          MR. ALTER:  Okay.

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM  INDEX NO. 652077/2017
NYSCEF DOC. NO. 833  RECEIVED NYSCEF: 06/01/2021
Case 22-50073   Doc 440-18   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 18 of 20

17

Proceedings

1  THE COURT: And, you know, I note that Mr. Kwok has
2  apparently no concern for the $500,000 a day sanction for
3  flagrantly violating prior orders of the Court with respect
4  to the boat that Golden Spring's is paying to maintain and
5  transport. And if my calculation is correct, the total of
6  the contempt sanctions to date is $7.5 million.
7  Mr. Kwok is just not free to live in New York at an
8  ultra-luxurious condominium, the cost of which he's paid for
9  by Golden Springs and ignore the processes of the New York
10  courts.
11  Now does anybody else wish to be heard?
12  MR. MITCHELL: Your Honor, Aaron Mitchell. I
13  represent the Genever defendants. Just one point of
14  clarification.
15  As you're well aware, your Honor, the Genever
16  New York which owns the co-op is in bankruptcy so Golden
17  Spring is not paying the maintenance for that apartment.
18  I believe Mr. Moss is aware as well there was a
19  security deposit paid which the surety is drawing down on
20  which I just want to make that clear for the record.
21  THE COURT: That is a fair and appropriate
22  clarification.
23  It doesn't alter the fact that prior to the fact
24  that Genever which is another one of Mr. Kwok's many
25  companies was paying for Mr. Kwok's luxury apartment.

KM

FILED: NEW YORK COUNTY CLERK 06/01/2021 04:48 PM | INDEX NO. 652077/2017
NYSCEF DOC. NO. 833 | RECEIVED NYSCEF: 06/01/2021
Case 22-50073  Doc 440-18  Filed 05/25/22  Entered 05/26/22 15:30:37  Page 19 of 20

18

Proceedings

1    Mr. Moss has been pursuing enforcement of a
2    judgment for years now, and it's been my misfortune to have
3    to have presided over these many, many, many motions and
4    hearings, none of which are producing the results that the
5    Court has ordered because Mr. Kwok directly or indirectly
6    through his companies ignores Court orders.
7    But Golden Springs presumably will comply with the
8    Court's order, and Golden Springs, you know, may seek a stay
9    in the Appellate Division either tomorrow or today or on
10   June 1. And if the Appellate Division stays the Court's
11   order, then the Court's order will be stayed.
12   Otherwise, the Court expects Golden Springs to
13   comply with the Court's orders subject to PAX's posting of
14   $500,000 bond in the event it's determined that there's any
15   overreach here and subject to Golden Springs being able to
16   pay identified lawyers and identified employees in
17   accordance with the schedule.
18   MR. SARNOFF: Your Honor, this is Stuart Sarnoff.
19   May I just ask one clarification?
20   THE COURT: Yes.
21   MR. SARNOFF: The obligation of PAX to post a bond,
22   is that specifically in respect of the restraining order
23   part of the -- of your decision today?
24   THE COURT: Yes.
25   MR. SARNOFF: And separate -- so there is no --

Proceedings

1      THE COURT: With respect to the restraining order.

2      MR. SARNOFF: So there is no -- there is no stay

3  with respect to the obligation of Golden Spring to comply

4  with the subpoena. Is that correct?

5      THE COURT: That's correct.

6      MR. SARNOFF: Thank you, sir.

7      THE COURT: Anything else from anybody else?

8      All right. The Court will enter a memorandum order

9  consistent with the transcript of the proceedings of today.

10 I would strongly urge counsel to order an expedited copy of

11 the transcript of proceedings of today so that in the event

12 Golden Springs seeks a stay from the the Appellate Division,

13 there is a clear record reflecting what the Court has

14 ordered.

15     Have a nice day and a nice weekend. Everybody stay

16 safe and thank you.

17

18 CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF THE
   ORIGINAL MINUTES TAKEN OF THIS PROCEEDING.

19

20

21     _____

22          *Karen Mangano*
            KAREN MANGANO, CSR
            Senior Court Reporter

23 SO ORDERED: June 1, 2021

24

25 _____
   BARRY R. OSTRAGER, J.S.C.