# EXHIBIT PAX 22

January 14, 2022 Hearing Transcript, *PAX v. Kwok*,
Index. No. 652077/2017 (N.Y. Sup. Ct.), Dkt. 1120

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

PAX    **EXHIBIT** _____ 22 _____

**DATE** _____ **IDEN.**

**DATE** _5/25/2022 Admitted in Full___ **EVID.**

**BY** P.E._____

**Deputy Clerk**

AO 386-A

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120          Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 2 of   RECEIVED NYSCEF: 01/25/2022
85

1

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK - CIVIL TERM - PART 61
 2   ------------------------------------------------X
     PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.
 3

 4                         Plaintiff,

 5                    -against-

 6   KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO
     WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WENGUI,
 7   A/k/a WAN GUE HAOYUN, a/k/a MILES
     KWOK, a/k/a HAOYUN GUO, GENEVER
 8   HOLDINGS CORPORATION, and GENEVER
     HOLDINGS LLC
 9
                           Defendants.
10   ------------------------------------------------X
     Index # 652077/2017          REMOTE TEAMS PROCEEDINGS
11
                                  January 14, 2022
12

13   B E F O R E :

14                 HONORABLE BARRY R. OSTRAGER,
                            Supreme Court Justice.
15

16   A P P E A R A N C E S :

17      O'MELVENY & MYERS LLP
        7 Times Square
18      New York, New York 10036
                  BY:  STUART SARNOFF, ESQ.
19                     Attorneys for Plaintiff

20      CAHILL GORDON & REINDEL LLP
        32 Old Slip
21      New York, New York 10005
                  BY:  EDWARD MOSS, ESQ.
22                     DAVID JANUSZEWSKI, ESQ.
                       Attorneys for Plaintiff
23
     (Continued next page.)
24

25
```

-Proceedings-

1   A P P E A R A N C E S:   (Continued)

2        PHILLIPS NIZER, LLP
         485 Lexington Avenue
3        New York, New York 10017
              BY:   MATTHEW L. LEVINE, ESQ.
4                  JEREMY BACHRACH SIEGFRIED, ESQ.
                   Attorneys for Non-Party Lamb Capital
5
         BAKER & HOSTETLER LLP
6        45 Rockefeller Plaza
         New York, New York 10111
7              BY:   JOHN SIEGAL, ESQ.
                    ERICA BARROW, ESQ.
8                   NICHOLAS ROSE, ESQ.
                    Attorneys for Defendant Kwok Ho Wan
9

10       FRANKFURT KURNIT KLEIN & SELZ, PC
         28 Liberty Street
11       New York, New York 10005
              BY:   NICOLE HYLAND, ESQ.
12                  RONALD C. MINKOFF, ESQ.
                    JESSE KLINGER, ESQ.
13                  Attorneys for Intervenor-Movant GTV

14

15

16

17

18

19

20

21

22                      DEBORAH A. ROTHROCK, RPR
                        Official Court Reporter
23

24

25

                   DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 4 of 85

3

-Proceedings-

1            THE COURT:  With respect to the last hearing, I

2      directed the parties to order a copy of the transcript in my

3      written order.

4            All right.  I have four motions.  The first motion

5      I want to hear is the motion to confirm the contempt order

6      against Mr. Kwok.

7            MR. MOSS:  Thank you, your Honor, that is our

8      motion.  Edward Moss from Cahill for Pacific Alliance.

9            Your Honor, there's lot of briefing on this motion

10     and there's a lot of briefs here and it goes back a long

11     time.  I would like to start briefly with the background of

12     how we got here.

13           THE COURT:  I think I know how we got here.  I have

14     one question.

15           MR. MOSS:  Sure, your Honor.

16           THE COURT:  Why is O'Melveny involved in this case

17     any more?

18           MR. SARNOFF:  Yes, your Honor.  This is Stuart

19     Sarnoff on behalf of O'Melveny.  I represent Pacific

20     Alliance, as we always have, I'm here.

21           THE COURT:  All right.  There's a motion to

22     disqualify Cahill.  I was hoping and expecting that

23     O'Melveny would present the argument --

24           MR. SARNOFF:  I'm happy to do so, your Honor.

25           THE COURT:  All right.  Let's do that then.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 5 of
RECEIVED NYSCEF: 01/25/2022
85

4

-Proceedings-

1              MR. SARNOFF:  Yes, your Honor.  This is Stuart

2     Sarnoff on behalf of Pacific Alliance.

3              Mr. Kwok violated this Court's order by moving the

4     yacht out of the jurisdiction, we did not know that at that

5     time.  After he moved it out of the jurisdiction, Mr. Siegal

6     asked you if the yacht could be moved.  And Mr. Siegal said

7     it was routine, the yacht goes to warm weather every year as

8     it had over the last several and then comes back.  Your

9     Honor said, no, make a motion.  No motion was made.

10             Instead, we did some research and we found out the

11    yacht had already been moved and your Honor ordered the

12    yacht back.

13             Mr. Kwok had not done so and your Honor found him

14    in conditional contempt; noting that he disregarded your

15    orders and you noted that we had made more than a prima

16    facie showing that all of these entities that allegedly

17    control the yacht are controlled by Mr. Kwok, those are your

18    words.

19             In early November, the First Department affirmed

20    the bulk of your Honor's order, finding that PAX has

21    established by clear and convincing evidence that Mr. Kwok

22    had disregarded your lawful order and that PAX's rights that

23    thus been prejudiced.

24             The First Department remanded only to conduct a

25    hearing to dissolve a dispute as to ownership and control of

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 6 of
85
RECEIVED NYSCEF: 01/25/2022

5

-Proceedings-

1    the yacht and to assess appropriate penalties.  I note that

2    they didn't say whether to assess penalties.

3         After remained, your Honor asked for short

4    supplemental briefings.

5         In our January 4th brief, we established

6    conclusively that Mr. Kwok beneficially owns and controls

7    the Lady May.  Very briefly, your Honor, here is an overview

8    of our evidence:

9         In 2006, Mr. Kwok forms a company called Hong Kong

10   International Funds Investments Limited, which we have been

11   referring to as Hong Kong International, or HKI Hong Kong.

12        At the time he's the sole shareholder and sole

13   director at all times between 2006 and 2014, October, when

14   he transfers ownership to one of his employees for zero

15   consideration when the authorities are closing in on him and

16   he flees Asia;

17        In 2015, when Mr. Kwok is setting up shop in New

18   York City, he buys The Sherry-Netherland apartment through

19   Geneva and yacht through Hong Kong International.

20        And what we now know through discovery here, and

21   filings in the BVI proceedings, your Honor, is that Hong

22   Kong International is the source of the money for both the

23   apartment and the yacht and after that there are a number of

24   machinations.

25        Ownership of Hong Kong International Hong Kong is

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    transferred from Kwok's lackey to Mr. Kwok's 20-something

2    year old daughter for a single dollar.

3          And then Hong Kong International Delaware is formed

4    with its address as Mr. Kwok's office.

5          Mr. Kwok's daughter then gets 100 percent of that

6    equity and it acquires the yacht, gets the yacht transferred

7    from Hong Kong International Hong Kong for zero

8    consideration; all the while, well after all of these

9    purported transfers, Mr. Kwok is tweeting and making YouTube

10   videos about how it is his boat;

11         Even when his employee, supposedly, owns it, even

12   when his quarter, supposedly, owns it.  We have him on video

13   saying it.  Let's just take, for example, it is in evidence,

14   your Honor, it is Docket Number 710, two minutes two hours

15   50 seconds to 4:15.  We have him on October 17, 2017 saying

16   on YouTube, that he bought the boat back in 2014, and then

17   he decided to list it for sale, he got an offer close to his

18   asking price but he decided not to take it.

19         I mean, common sense tells you that if you buy

20   something, then you have the sole authority to decide when

21   and whether to sell it, you beneficially own and control the

22   asset, it is yours; but wait, there's more.  Mr. Kwok filed

23   a complaint in New York State Court repeatedly saying it is

24   his boat.  And he choose to attach an article to that

25   complaint that says -- that that refers to the yacht as his

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 8 of
85
RECEIVED NYSCEF: 01/25/2022

7

-Proceedings-

1    own yacht.  That was in late 2020, your Honor, well after

2    all of these transfers.

3            And your Honor, who is paying for the boat?  Our

4    old friends at Golden Spring.

5            Who pays Hong Kong International Delaware, the

6    entity that technically holds the boat, who is paying their

7    legal fees in this litigation?  Well, that is Kwok's new

8    shell company Lamp Capital that you'll hear about in a

9    little while.

10            And what is Hong Kong Delaware?  The technical

11    legal owner of the yacht?  What is it by the way?   It is

12    nothing.

13            We have a letter from their lawyer that we

14    submitted to the Court representing it has no employees, it

15    has no directors, it has no e-mail, it has no bank accounts,

16    it has no tax returns, it is a piece of paper.  And when you

17    combine this and other circumstantial evidence from this

18    very proceeding, your Honor, what do you have?

19            You have Mr. Kwok's counsel and the ship captain

20    who both say the boat goes away every year, since 2017, to

21    warm water for a few months and then it returns.  Not

22    anymore it doesn't.  Not since the orders that your Honor

23    issued restraining it.

24            Now it is in Genova Italy.  It was in the 40's

25    degrees in Genova Italy this morning.  That is not warm

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120     Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 9 of
85
RECEIVED NYSCEF: 01/25/2022

8

-Proceedings-

1    weather.  It is not hard to figure out who is controlling

2    the ship and why it is not back here.

3        In the face of this un rebutted evidence, Mr. Kwok

4    really only has two arguments.

5        First, he claims he can't control the boat because

6    he's not its technical owner, that is Hong Kong Delaware --

7    and that his daughter is the person who owns Hong Kong

8    Delaware.  Well, your Honor, the facts we just went through

9    make it clear, that he controls the yacht, a point I noted

10   at the outset that you had already found by clear and

11   convincing evidence.

12       As for ownership.  Well, technical legal title is

13   not required.  CPLR 5225, the turnover statute discusses the

14   judgment debtor's interest in the property.  Which is the

15   applicable standard for a judgment creditor to levy on a

16   asset.  New York Law is clear that the beneficial interest

17   meets the standard.  You don't need technical legal

18   ownership.

19       Weinstein Korn & Miller, as we cited in our brief

20   make it clear that quote "it is not necessary that a

21   judgment debtor have legal title to the property.  A

22   beneficial interest is sufficient."

23       The Glid Clade (phonetic) case, from the First

24   Dept., 2015, which we cite says the same thing.  There, the

25   judgment debtor said his daughter owned the asset.  And the

-Proceedings-

1    court said, no, it is really yours for turnover levying

2    purposes, a beneficial interest is sufficient.

3           Now, Mr. Kwok's second and really only argument,

4    you need to hold an evidentiary hearing, and some of our

5    evidence maybe inadmissible.  Well, we submit, if your Honor

6    wants to hold an evidentiary hearing, that is obviously

7    within your Honor's prerogative, but we submit it is wrong

8    for two reasons.

9           First, our evidence is admissible.  It is pages of

10   Hong Kong International's -- it is literally pages from Hong

11   Kong International Delaware from their stamped document

12   production.  It is based on official public records from

13   Hong Kong.

14          We have affidavits of those documents.  If your

15   Honor is interested, we can send them to you, the Court can

16   take judicial notice of those Hong Kong documents, which are

17   public records that we submitted to your Honor.

18          We also have the September, 2020, New York State

19   complaint that Mr. Kwok filed, referring to it as his yacht.

20   That is judicial admission.

21          Mr. Kwok's own tweets and video recordings are

22   party admissions.  In those videos we see Mr. Kwok speaking.

23   He know what he looks like, we know what he sounds like.

24          The response will be, your Honor, well, they are

25   not authenticate.  Well, how do we authenticate, your Honor?

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1          Mr. Kwok invoking the Fifth.  They have confirmed

2     that as recently as an e-mail from counsel for Mr. Kwok to

3     us on November 10th.  He will not show up, he will not

4     testify about his assets, and he will not bring any

5     documents.  We're entitled to an adverse inference there.

6          That brings me to the second problem with Mr.

7     Kwok's argument with respect to wanting an evidentiary

8     hearing.  Again, if your Honor wants one, again, we will

9     have one.

10         There's really nothing else to hear.  We're using

11    already whatever very little documents were provided to us

12    from the other side, as well as judicially noticeable public

13    filings.

14         Hong Kong International, the technical owner-- Hong

15    Kong International Delaware -- excuse me -- the technical

16    owner of the yacht, has represented to us.  And we submitted

17    that they have nothing else.  They have no other documents,

18    they have no employees and they have no officers.

19         Hong Kong International also represented to us--and

20    this is very important --that Mr. Kwok's daughter May Kwok,

21    the only shareholder, and only person in any way we can find

22    in anyway associated with Hong Kong International Delaware

23    check, and they have represented to us that she also has

24    nothing, absolutely nothing.  Never sent an e-mail or a text

25    message about the multi-million dollar yacht, apparently.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1          And Hong Kong International actually told us to go

2     to Golden Spring, believe it or not, to get yacht-related to

3     documents.  Well, guess what, we did.

4          We talked to Golden Spring and they represented to

5     us that they have nothing.  I mean, this is a yacht that,

6     literally, must moved around the globe by telepathy.  Not a

7     single person has a single written communication about who

8     uses it, who instructs the captain and where and when it

9     moves.  And as I mentioned a moment ago, your Honor, of

10    course Mr. Kwok is taking the Fifth.

11         He's refused to submit documents about his assets,

12    including the yacht, or to allow us to depose him.  His

13    lawyer confirmed this to us, as I mentioned, this is the

14    middle of November.

15         So, we're happy to have an evidentiary hearing if

16    the Court wants one.  But, respectfully, there's nothing to

17    hear, your Honor.

18         The only thing you might hear is Mr. Kwok's

19    daughter come in and testify it is her boat.  Well, they are

20    already saying that.

21         We can assume, for purposes of today and proffer

22    that is what she will say, it is her boat, without having

23    produced a single document, text, e-mail we can cross her

24    with.  If you assume that, your Honor, then we have met our

25    burden on the written submissions in evidence that we have

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120          Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 13 of          RECEIVED NYSCEF: 01/25/2022
85

12

-Proceedings-

1    provided.

2         And I just want to take one more moment, your

3    Honor.  I know there's some confusion about whether an

4    evidentiary hearing is needed.  I know there was language in

5    the Appellate Division's remand to you about an evidentiary

6    hearing.

7         Again, that is entirely up to your Honor, we

8    understand that;

9         But the First Department decision in Glid Clade,

10   from 2015, is really as close to being on all fours as you

11   could get.

12        In Glid Clade, the judgment debtor was a gentleman

13   named Mr. Chirnoid (phonetic), he had $500 million judgment

14   entered against him.  Ironically, he was represented in that

15   case by Ms. Hyland's firm Frankfurt Kurnit.

16        Plaintiff in Glid Clade brought a turnover

17   proceeding under Section 5225 of the CPLR, with respect to

18   Mr. Chirnoid's interest in a LLC.  Chirnoid had referred to

19   that interest throughout the litigation, that LLC as his.

20   He said he funded it with his money.  He was the investor.

21        When it came time for turnover, however, your

22   Honor, he said, no, actually, I gave it previously to my

23   daughters.  And he belatedly produced an agreement to that

24   effect and of course his daughter put in an affidavit saying

25   that the LLC was herself.  The trial court said, no, they

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 14 of
85                                              RECEIVED NYSCEF: 01/25/2022

13

-Proceedings-

1    found for the Plaintiff and it didn't have evidentiary

2    hearing because it had been dealing with the parties for

3    years and it knew of their practices and it deemed a hearing

4    unnecessary.

5            And, critically, your Honor, here is what the First

6    Department said in affirming the State Courts trial court's

7    decision, quote "the motion court, which was quite familiar

8    with this drawn out dispute, granted the petition.  Stating

9    --internal quotes, this is lower court now, "this turnover

10   proceeding is the latest proceeding in a litigation fraught

11   with questionable behavior by Mr. Chirnoid."  After

12   reviewing past depositions and affidavits, as well as

13   submissions in opposition to the turnover motion, the Court

14   concluded that the 2007 Agreement, and the surrounding tales

15   raises nothing but famed issues of fact.  We concur with the

16   Court's assessment that no hearing was necessary on the

17   issue.

18           This all sounds very similar, your Honor.  These

19   are famed issues of fact.  And here, there's even less of a

20   need of a hearing because Mr. Kwok is going to take the

21   Fifth and wouldn't and can't testify.

22           And, finally, if I might, your Honor, before I

23   close, I would like to make one last point.

24           Mr. Kwok's counsel, no doubt, is going to tell you,

25   as they have in the past, that Mr. Kwok would have followed

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1      the Court's order if it could, but it couldn't follow the

2      Court's order, your Honor, because, respectfully, it didn't

3      control the yacht.  You just can't do it in this case.  That

4      is flat out not so.

5           Before closing, I would like to make one last

6      point.  I anticipate, as they have in the past, Mr. Kwok's

7      counsel will say, of course Mr. Kwok will abide by the

8      Court's order if he could, but since he doesn't control the

9      yacht, he just can't in this case.  That is not going to be

10     true, your Honor.

11          All you have to do is look to Mr. Kwok's recent

12     failure to comply your Genova, BVI share turnover order.

13     That is an asset that he readily admits he fully controls.

14     In fact, it is the only asset he says he owns.

15          As your Honor knows, Mr. Kwok's outright refusal to

16     follow your turnover order, just forced PAX last Friday

17     night to file another civil contempt motion.

18          So it doesn't matter if he technically owns

19     something or not, he just chooses not to follow your orders,

20     your Honor.  This has to stop.

21          For these reasons, we submit it is finally time to

22     hold Mr. Kwok in contempt with respect to his yacht and for

23     your Honor to order whatever sanction the Court believes is

24     appropriate to actually get him to comply with the order.

25     Thank you, sir.  I'm available to answer any questions of

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1      course.

2              THE COURT:  I'll hear from whoever is opposing this

3      motion after we take a three-minute break.

4              (Pausing.)

5              (Whereupon, a short recess is taken.)

6              THE COURT:  On the record.  Could I hear from the

7      opposition on the motion for contempt.

8              MR. SIEGAL:  Yes, your Honor.  Good afternoon.

9              John Siegal with the Baker & Hostetler law firm.

10             THE COURT:  Mr. Siegel, what I would like you to

11     start with is making an offer of proof that you would make

12     at any evidentiary hearing.

13             MR. SIEGAL:  Certainly, your Honor, and I intend to

14     do that.  I do, however, want to address a legal standard

15     here.  Because the Appellate Division remanded for the

16     specific expressed purpose of an evidentiary hearing on

17     quote, "the dispute as to ownership and control of the

18     yacht, as well as any appropriate penalties."

19             THE COURT:  I understand that.  That is why I asked

20     for an offer of proof as to what you would adduce at a

21     hearing.

22             MR. SIEGAL:  To be frank, your Honor, it depends on

23     what the Plaintiff submits and we would be the Respondent at

24     such is hearing.  And for reasons --

25             THE COURT:  Respectfully, Mr. Siegel, you just

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1   heard Mr. Sarnoff explain for 20 plus minutes his offer of

2   proof at the hearing --

3           MR. SIEGAL:  Yes.

4           THE COURT:  --if we were to have a hearing.

5           MR. SIEGAL:  Right.

6           THE COURT:  Now I want to know how you would rebut

7   that and with what witnesses and what documents you would

8   introduce at the hearing.  I'm happy to have a hearing next

9   week and I'm happy to give Mr. Kwok all due process to which

10  he is due.  But I don't want to have a hearing where Mr.

11  Sarnoff presents everything that he's just outlined and

12  everything that contained in his moving papers and you can't

13  tell me what it is that you have that might rebut what he is

14  claiming.

15          MR. SIEGAL:  Surely, your Honor, I appreciate the

16  question and I intend to answer.  But surely the Court is

17  not prejudging either the admissibility, reliability, or

18  accuracy of anything that counsel just said.

19          And I submit, your Honor, that the legal issue that

20  counsel just addressed is the wrong legal issue under a

21  statute that doesn't apply, that is contrary to the remand

22  direction of the Appellate Division.

23          The factual argument that he just made, combined

24  with the documents submitted in the Sarnoff affidavit

25  actually support Mr. Kwok's position on the motion.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1           This is not a motion for turnover against the

2     judgment debtor;

3           The Appellate Division remanded a contempt motion

4     to determine ownership and control of the asset and,

5     therefore, whether the Defendant could have complied with

6     the Court's conditional order.

7           This motion is governed by Judicial Law 753(a)(3),

8     it is a contempt motion.  It requires a showing by clear and

9     convincing evidence that Mr. Kwok had ownership and control

10    of the asset.

11          Plaintiffs' briefed the issue and argued it under

12    CPLR 5225 which governs turnover and asset by a judgment

13    debtor.  That is not the remand issue here.

14          The beneficial interest issue under 5225 that they

15    have argued does not apply on this motion.  And they have

16    not cited to the Court a single legal authority on a

17    contempt motion, the issue that was remanded.  We have

18    searched and we have found no case law reported in New York

19    applying the issue of beneficial interests under the

20    turnover statute to a determination of ownership and control

21    of an asset and ability to comply with a Court Order on

22    contempt motion.  They are literally urging the wrong

23    statute and wrong legal issues on this Court.

24          Against that backdrop, let me address the proffered

25    factual arguments and the question the Court has asked of

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 19 of
85
RECEIVED NYSCEF: 01/25/2022

18

-Proceedings-

1    what a hearing would adduce.

2            The Sarnoff affirmation exhibits support Mr. Kwok's

3    position that Plaintiff has not offered any proof, let alone

4    the required clear and convincing evidence that Mr. Kwok

5    owned or controlled the yacht at the time of the conditional

6    order.

7            The Sarnoff exhibits established:  One, Mr. Kwok

8    has never owned the Lady May.  I want to repeat that -- I

9    want to repeat that.  The exhibits to the Sarnoff

10    affirmation if credited and admitted establish that Mr. Kwok

11    never owned the boat, period, full stop;

12            It was purchased by a Hong Kong entity, Hong Kong

13    International Funds Investments Limited in 2015, that is

14    their Exhibit 12.

15            At that time, in 2015, that entity was owned by a

16    person --and I don't know how to pronounce this Qu Guo Aiao,

17    QU GUO AIAO.  Exhibit 10 shows that that person assumed

18    ownership of that entity in the year before the yacht was

19    purchased, 2014.  Kwok never owned the boat, period full

20    stop.

21            Two, there is no admissible evidence in the record

22    of who Qu Guo Aiao is, none.  I'm advised that she is not a

23    relative of Mr. Kwok.  Plaintiff's contend in their brief,

24    at Page 2, that she was quote "reportedly his employer."

25    But that reportedly contention is sourced only to a Chinese

-Proceedings-

1    newspaper report, that is Exhibit 11, on an allegation, not

2    a finding or a ruling, reportedly filed in a Hong Kong court

3    proceeding.  That newspaper report of an allegation does not

4    specify whose employee the person reportedly is.  There's

5    nothing in the record establishing a basis to tie that owner

6    of the yacht, in any meaningful way, to ownership or control

7    of the vessel by Mr. Kwok.

8            THE COURT:  Just out of curiosity, Mr. Siegel, what

9    about Mr. Kwok's 2020 filing in the Supreme Court in which

10   he claimed ownership of the yacht?

11           MR. SIEGAL:  I think that that is obviously a

12   factor that the Court would have to consider.

13           There are numerous statements, most inadmissible

14   hearsay, in which he loosely refers to his ownership of the

15   boat.  And --

16           THE COURT:  That is not a hearsay statement.  That

17   is a judicial admission.

18           MR. SIEGAL:  Well, if to the extent it was a

19   statement regarding ownership, your Honor, it was wrong.  He

20   never owned the boat.

21           THE COURT:  In other words, you're telling me that

22   Mr. Kwok filed a document with the New York Supreme Court in

23   which he erroneously declared that he owned the boat?

24           MR. SIEGAL:  First of all, your Honor, that

25   statement is not in the record on this current motion.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 21 of
85
RECEIVED NYSCEF: 01/25/2022

20

-Proceedings-

1           And, secondly, it is their burden of proof.  That

2      statement that it is his boat, was not a statement of legal

3      ownership in any capacity.  And --

4           THE COURT:  What was it a statement of?

5           MR. SIEGAL:  I don't have it.

6           THE COURT:  What is it?  What is the definition of

7      "his?"

8           MR. SIEGAL:  It is not in the record on the current

9      application.  I don't have it in front of me.

10          They have referred to the purchaser of the boat --

11     Mr. Sarnoff just did, as Mr. Kwok's quote/unquote "lackey."

12          Your Honor, rhetoric is not a record.  That is not

13     evidence.  And it is not evidence of how this unrelated

14     person's purchase of the yacht constitutes ownership or

15     control of the asset.

16          Then Plaintiff offers documents supporting to show

17     that two years after that person purchased the vessel, this

18     unrelated person transferred ownership of the Lady May to

19     May Guo, Mr. Kwok's adult daughter; that transfer was made

20     three months after Plaintiffs filed the litigation.

21          It was hardly an effort to secrete the asset or

22     avoid any potential judgment.  If Mr. Kwok were pulling the

23     strings here, it is not logical or conceivable that, in the

24     midst of this litigation, he would have transferred it from

25     an unrelated third-party, a nonrelative third-party to his

-Proceedings-

1    daughter.

2            There's nothing in the record on this motion tying

3    any of these transactions, even having to do with the

4    Plaintiff in this case, Pacific Alliance.

5            Next, they offer a BVI Court finding that does not

6    even mention the Lady May, or any entity that has ever owned

7    it, that is Exhibit 13.  That filing, regarding an entity

8    called Ronald Luck Limited (phonetic) pleads in Paragraph 14

9    that quote "the funds generally raised by Ronald Luck were

10   from Mr. Zhang Wei, Z-H-A-N-G  W-E-I, the husband of Miles

11   Sun's cousin.  Miles Sun is the son of the Defendant.  And

12   from Mr. Zhang's wife, Ms. Guo Lijie, Miles' cousin and a

13   lawyer based in China.

14           Again, that has no apparent factual connection

15   whatsoever to the Lady May or the entities that have owned

16   it and it identifies a source of funds that is not Miles

17   Kwok.

18           The last document that it offered by Plaintiffs

19   does nothing except show the undisputed fact that May Guo,

20   the Defendant's daughter, put ownership of her yacht in the

21   U.S. entity called HK International Funds Investments USA

22   Limited, LLC in 2020.

23           HK's lawyer Lee Vartan (phonetic) informed the

24   Court of that completely unremarkable fact last year.

25           A person's use of a single purpose entity for

-Proceedings-

1   valuable asset is hardly proof of anything other than common

2   employees typical business planning.

3           The argument that there's no documents regarding

4   the whereabouts of this yacht may reflect the fact that

5   we're dealing with a Defendant who is an assignee from

6   People's Public of China facing very substantial security

7   concerns; and members of his family, including his daughter,

8   who owns the yacht, lived in a similar environment.  None of

9   us has ever lived in a totalitarian society or been the

10  target of one, and I hope we never will be; but let's not

11  conflate security concerns that people living in that

12  society environment face as proof of anything other than

13  their care and caution.

14          THE COURT:  Mr. Siegel --

15          MR. SIEGEL:  These documents, your Honor, don't

16  make out a prima facie case that Mr.  Kwok owned the vessel

17  at the time of the Court order.  They show that he has

18  never --

19          THE COURT:  Mr. Siegel, can you hear me?

20          MR. SIEGEL:  Yes.

21          THE COURT:  You want me to conduct a hearing and

22  Mr. Kwok's daughter is going to appear at the hearing.

23          MR. SIEGEL:  I do not know if Mr. Kwok's daughter

24  is going to appear at the hearing.  That is Mr. Sarnoff's

25  assertion.  He has asked you to assume:

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120   Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 24 of
RECEIVED NYSCEF: 01/25/2022
85

23

-Proceedings-

1          Number one, that we will be producing a certain

2     witness;

3          Number two, that he preferred what he believed she

4     would say;

5          And, three, extraordinarily, he asked you in

6     advance to discredit that testimony.

7          THE COURT:  I'm not prejudging anything.

8          MR. SIEGEL:  I know you're not.

9          THE COURT:  We're going to have a hearing.  And the

10     hearing will be in three weeks.  And this will be resolved

11     on a full evidentiary record --forgive me for being

12     skeptical about the presentation you're going to make;

13     because in response to three of my inquires about the offer

14     of proof that you would make --

15          MR. SIEGEL:  Your Honor -- I did not get to the

16     issue of control.  Your Honor, there is testimony in the

17     record with control.  As of now it is un rebutted.  That is

18     the affidavit of the boat's captain.  That in which he

19     attests that HK International, that is owned by May Guo owns

20     the vessel and that that is who he reported to and that he

21     did not take direction from Mr. Kwok.

22          There is no evidence at this point rebutting that

23     prima facie showing of lack of control.  And it is their

24     burden.  It is a hybrid.  Beneficial address is not the test

25     here.

-Proceedings-

1      But based on this record, whether these

2  transactions that they attempted to document by and between,

3  essentially, unidentified third-party nonfamily member, and

4  Mr. Kwok's adult daughter, do not establish that he had a

5  beneficial interest.  That is both an irrelevant question

6  and a triable issue.

7      Much of the rest of the showing is inadmissible

8  hearsay.  Establishing the undisputed facts that Mr. Kwok

9  has from time to time enjoyed from being on his daughter's

10  boat and reported to loosely have referred to it as his

11  boat.  But it is not clear and convincing evidence of

12  ownership and control.

13      Ownership or control by a family member, or perhaps

14  or by a third-party is not ownership and control by Mr.

15  Kwok; close enough doesn't apply in a legal proceeding.

16  That is why the Appellate Division remanded that the

17  Plaintiff be put to its proof.  And we're prepared to

18  respond to that, given to the extent that the Court holds at

19  the hearing that they have established their prima facie

20  case, we'll attempt to rebut it.

21      MR. SARNOFF:  If I may be briefly heard so that the

22  record is complete.  I totally appreciate it is within your

23  complete prerogative to hold evidentiary hearing and I'm not

24  quarreling with that.

25      THE COURT:  It is your benefit that I hold an

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 26 of 85
RECEIVED NYSCEF: 01/25/2022

25

-Proceedings-

1    evidentiary hearing because the Appellate Division remanded

2    and indicated that there should be an evidentiary hearing.

3              MR. SARNOFF:  I understand, your Honor.

4              THE COURT:  It is on the papers.  There will be

5    further appeals asserting that I failed to comply with the

6    direction of the Appellate Division.

7              MR. SARNOFF:  Yes, your Honor.  I appreciate that.

8    There are just two or three things that I would like to put

9    on the record, if I might, I will be very very brief.

10             THE COURT:  I have all afternoon.

11             MR. SARNOFF:  First, the reason that we have

12   discussed the standard under 5225, the standard under which

13   a judgment creditor gets to levy on an asset is very clear

14   and understandable, your Honor.  It is because that is the

15   standard that, if we can show the beneficial interest

16   sufficient to levy, then that is the standard under the

17   Judicial Law 753 that establishes prejudice.

18             If we can levy on the boat, then Mr. Kwok's moving

19   the boat has prejudiced our right and it is a component

20   piece of 753.  That is why we referred to the Beneficial

21   Interest Standard as the relevant standard under 5225,

22   first --

23             By the way, I just note, that if your Honor looks

24   at the Appellate order.  The Appellate order says that we

25   have shown -- that we have already shown --that you were

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 27 of
85
RECEIVED NYSCEF: 01/25/2022

26

-Proceedings-

1    correct in finding that we have shown that by clear and

2    convincing evidence Mr. Kwok violated a lawful order about

3    which he had knowledge, interestingly, and that Plaintiff's

4    rights were prejudiced.  They already found that.

5          On the issue of control, your Honor has already

6    found that we have made more than a prima facie showing of

7    control.

8          So I just did want to point out, that is why that

9    5225 Beneficial Interest Standard in the turnover context,

10   which is the levying context is directly the relevant

11   standard.

12          THE COURT:  Look, I understand.

13          Mr. Sarnoff, Mr. Kwok is being find $500,000 a day

14   every day this boat is not where it is to be.

15          MR. SARNOFF:  I understand.

16          THE COURT:  So Mr. Sarnoff wants to protract these

17   proceedings another three weeks, that is another million

18   dollars in contempt sanctions; if he fails to overcome all

19   of the issues that you've outlined in your papers.

20          MR. SARNOFF:  For completeness, I would be very

21   brief.

22          I believe Mr. Kwok testified that the woman that we

23   referred to as his employee, I believe he testified at his

24   deposition, way, way earlier, before he clammed up and

25   invoked the Fifth Amendment was his employee.  I believe

-Proceedings-

1      that is in the record.  We'll be ready to have that citation

2      at the appropriate time.

3           Two, if she was some unknown unrelated person to

4      Mr. Kwok, please explain as a logical matter that he gives

5      her his company for no consideration and then mordaciously,

6      three years later, she ends up giving it to Kwok's daughter.

7      That is a fantastic coincidence.

8           Let me make one more note.  Mr. Siegel said

9      something about the September 20th complaint -- 2020

10     complaint that with referenced not being in our papers.  We

11     cited at Page 4 of our brief and it was Featured Far and

12     Wide in our earlier contemporary.  That whole issue has

13     always been before the Court.

14          And one other point.  There was a mention made

15     about un rebutted testimony by Mr. Hasland.  Mr. Hasland

16     says, I take direction from Hong Kong International.  That

17     is what his affidavit says.  It doesn't mention a human

18     being.

19          We know from Hong Kong International's Delaware's

20     lawyer that Hong Kong International is a piece of paper.

21     Its got no -- he has made no showing of who he's taking --

22     he's taking direction from a piece of paper.  He has not

23     said me, he has not said it to anyone.

24          I will just ask, your Honor, if May Guo is going to

25     testify, I'm not sure she is.  We would have the opportunity

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    to take her deposition before any such hearing, as well as

2    perhaps Mr. Hasland's deposition if he's going to testify as

3    well.

4            THE COURT:  You preserved Mr. Hasland's testimony

5    for trial by deposition.  And if I need to sign a subpoena,

6    and you have to jump thru hoops to have him sit for a

7    deposition, I'll do that.  And since Mr. Hasland is clearly

8    in the control of the owner of the boat, if he fails to

9    submit to deposition or fails to show up at the hearing,

10   I'll take that into consideration.

11           MR. SARNOFF:  Thank you, your Honor.

12           THE COURT:  Anything else on the motion?

13           MR. SIEGAL:  Yes, your Honor, I have a couple of

14   questions.

15           First of all, on the issue of the legal standard,

16   Mr. Sarnoff did correctly report that the Appellate Division

17   held that the issue of prejudice has been affirmed.  So,

18   that is part of the reason why we argued the 5225 does not

19   apply here.

20           And so the question is, your Honor, do you want

21   additional briefing before the hearing on the legal standard

22   that does apply?

23           THE COURT:  The parties can submit in this case

24   whatever they want.  I've been dealing with Mr. Sarnoff for

25   a very long time and I've been dealing with Mr. Kwok and his

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 30 of
85                                                                    RECEIVED NYSCEF: 01/25/2022

29

-Proceedings-

1    residence of the share for a very long time and I'll be very

2    surprised if substantial evidence is produced that Mr. Kwok

3    has no involvement with this boat.

4         MR SIEGEL:  Understood, your Honor.  Couple other

5    questions.

6         We had indicated in our supplemental brief of five

7    page, if there's going to be a hearing, we would like to

8    opportunity to submit mini motions, would that be something

9    beneficial with the Court or just deal with the hearing.

10        THE COURT:  You can submit anything you want to

11   submit.  I'm going to give you a hearing date in three

12   weeks, plus or minus two or three days.

13        MR. SIEGEL:  That is the other issue I want to

14   address.  I'm scheduled for trial at the end of February, as

15   is Ms. Carvallo.

16        THE COURT:  Why don't you tell me the date that you

17   would like to have this hearing, which I would be very

18   surprised would last more than a day.

19        MR. SIEGEL:  Well, given my schedule, I would ask

20   for a date in March when that trial ends.  The pre-trial

21   conference is the 10th of February and scheduled to go to

22   the end of the first week of March.

23        THE COURT:  Pick a day in the next three weeks that

24   you can interrupt certain other scheduled issues you have to

25   deal with this long pressing matter with everything about

-Proceedings-

1    this issue.

2            MR. SIEGEL:  May I confer with my colleague and

3    with opposing counsel and get back to the Court quickly with

4    a date that works in the next three weeks.

5            THE COURT:  Let's just do it here and now on the

6    record.  I'll adjust my schedule to accommodate everyone's

7    schedule.

8            I'm told that I'm completely free on February 2nd

9    and February 7th.

10            MR. SARNOFF:  Your Honor, I'm actually defending

11    depositions in a class-action those two days --

12            THE COURT:  We're not going to have colloquy about

13    the date; depositions can be adjourned, firm trial dates

14    can't be adjourned, let's pick a date that you both can live

15    with and let's move on.  There's three other motions I have

16    to hear.

17            MR. SIEGEL:  I would propose, your Honor,

18    February 3rd, Thursday, February 3rd if that works.

19            THE COURT:  Mr. Sarnoff.

20            MR. SARNOFF:  Your Honor, I will make it work.  I

21    will have to get out of my deposition and I will make it

22    work.

23            THE COURT:  Well, if you could get out of your

24    deposition to make it work, would February 2nd be because

25    that wouldn't require my staff to --

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 32 of
85
RECEIVED NYSCEF: 01/25/2022

31

-Proceedings-

1      MR. SARNOFF:  Your Honor, if you would like to do

2   it on February 2nd.  There's a certain harmony in that, in

3   that we've been here a long-time and February 2nd is

4   Groundhog Day.  This might be a good day to hear a motion

5   hearing of this nature.

6      THE COURT:  Is that good for you Mr. Siegel?

7      MR. SIEGEL:  Yes, your Honor.

8      THE COURT:  February 2nd will be the date that we

9   will have this hearing and it will be on Microsoft Teams and

10   trial testimony from out of jurisdiction witnesses will be

11   admitted by deposition.  All direct testimony, other than

12   deposition testimony, will be by affidavit.  And I wouldn't

13   consider the affidavits of anyone who doesn't submit himself

14   or herself for cross-examination.  So we will have sworn

15   testimony from deponents who are prepared to be

16   cross-examined at the hearing and we'll have trial testimony

17   of deponent outside the jurisdiction with adverse inferences

18   drawn against individuals who might have relevant testimony

19   who refuse to be deposed.

20      MR. SARNOFF:  We get a deposition, your Honor, of

21   anyone who will testify --we'll get advanced notice?

22      THE COURT:  You'll get a deposition of anybody who

23   is out of the jurisdiction whose testimony is relevant to

24   the issue in the case.  And if witnesses outside the

25   jurisdiction, who are under the control of any party,

Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 33 of
85

-Proceedings-

1    decline to sit for a deposition, I'll draw whatever

2    inferences from that I choose.  I'm not going to go through

3    a circus-like exercise of people who have relevant testimony

4    refusing to provide it.

5        MR. SARNOFF:  By way of clarification.  We have

6    been told that Mr. Kwok is going to invoke his Fifth

7    Amendment Privilege and not testify.  Can we -- we will be

8    able, I assume, to get adverse inferences when he doesn't

9    show up.  If he does shows up, we would have asked already

10    for his deposition as to assets and we have been foreclosed

11    from getting any documents or any deposition from him in

12    that regard.  I'm assuming he's precluded from --

13        THE COURT:  Mr. Kwok wants to show up and testify

14    he doesn't own the boat, he's free to do so and you're free

15    to cross-examine him.  You don't get a deposition of him

16    he's within the jurisdiction.

17        MR. SARNOFF:  We did try to get deposition

18    testimony from him in the discovery when we served

19    postjudgment discovery and we were foreclosed because of his

20    Fifth Amendment and location.

21        THE COURT:  He previously took the Fifth Amendment.

22    I understand that.  I'm not depending on Mr. Kwok to show up

23    at the February 2nd hearing; but if he choses to, submit

24    direct testimony affidavit and be subject cross-examination,

25    so be it.

-Proceedings-

1          MR. SIEGAL:  Of course, for the sake of

2     completeness.  The deposition requirement applies the other

3     way too right, that we get to depose any out-of-state

4     witnesses they're going to proffer -- they're going to offer

5     in direct testimony by affidavit.

6          THE COURT:  Not if their witnesses are going to

7     submit direct testimony and appear for cross-examination.

8          Look, this is very simple.

9          MR. SIEGAL:  It is clear.  I understand.

10          THE COURT:  The witnesses will submit direct

11     testimony affidavits.  And those witnesses who submit direct

12     testimony affidavits must be made available for

13     cross-examination or testify to their affidavits.

14          People who are outside the jurisdiction, who want

15     to give testimony and are in the control of any party, can

16     do so by deposition in which each side gets to question the

17     witness.  And the deposition transcript will be part of the

18     evidentiary hearing.

19          MR. SARNOFF:  I was going to ask whether the

20     directs will be put in at the hearing or in advance?

21          THE COURT:  At advance.  I will issue a short form

22     order that will give you dates by which the direct testimony

23     affidavits have to be submitted and I'll give you the dates

24     in a short form order the dates by which any exhibits that

25     the parties want to be considered at the evidentiary hearing

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 35 of   RECEIVED NYSCEF: 01/25/2022
85

34

-Proceedings-

1    after being submitted in the joint exhibit book.  This will

2    be just like a bench trial, except it is an evidentiary

3    hearing instead of a bench trial.

4         So there will be an exhibit book, there will be

5    direct testimony affidavits that refer to the exhibits in

6    the exhibit book, and there'll be cross-examination of the

7    affiants who submit direct testimony affidavits.

8         With respect to individuals under the control of

9    the parties whose testimony is deemed relevant, those

10   individuals have to submit to depositions.  If they don't

11   submit to depositions and they're in control of the parties,

12   then their testimony is of no value to the hearing that

13   we're conducting.

14        Are we completely clear?

15        MR. SIEGEL:  Yes, I think so, your Honor.

16        MR. SARNOFF:  Thank you, your Honor.

17        THE COURT:  All right.

18        Let's do the two motions to quash subpoenas.

19        MR. SARNOFF:  Excuse me, it is Mr. Levine's

20   motions.

21        MR. LEVINE:  Thank you, your Honor.  This is

22   Matthew Levine, Phillips Nizer and we're counsel to nonparty

23   Lamp Capital.

24        Can you hear me.

25        THE COURT:  Yes, I can.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 36 of 85

-Proceedings-

1          MR. LEVINE:  Thank you, your Honor.

2          I understand you have another motion behind this so

3     I'll try to be as brief as possible.

4          THE COURT:  I have all afternoon.

5          MR. LEVINE:  Thank you, your Honor.

6          As we have sought to quash two subpoenas and also,

7     to the extent that there are other bank subpoenas out there

8     for our information to have those withdrawn.

9          Briefly, what we have established, your Honor, that

10    Lamp Capital a nonparty duly formed Delaware LLC licensed to

11    do business in New York.  It is wholly-owned by another

12    Delaware company called Infinity Treasury Management, which

13    is a single member;

14          In turn, Infinity Management is wholly-owned by

15    Qiang Guo.  As you have heard, Mr. Guo, the son of the

16    judgment debtor, Miles Kwok.

17          Lamp Capital is not owned, controlled, or managed

18    by the judgment debtor;

19          The judgment debtor is not an officer or director

20    of Lamp.

21          Infinity Management is not owned, controlled or

22    managed by the judgment debtor, nor is the judgment debtor

23    an officer or director of Infinity Management.  We have

24    established this through the affidavits of Mr. Enriquez, who

25    is an employee of Lamp Capital.

-Proceedings-

1          We have not sought to conceal any of this.

2          We proactively discussed Mr. Guo's indirect

3   ownership state in Lamp Capital in our pre-motion conference

4   letter submitted to the Court in early October, Document

5   number 908.

6          Lamp essentially provides funding of payment

7   services to several companies, pursuant to a written

8   management agreement with each one; one of those companies

9   is Golden Spring New York.

10          As indicated in our papers, and further shown in

11   the bank records provided to Plaintiff, in its opposition,

12   Lamp Capital has loaned funds to Golden Spring in the amount

13   of millions of dollars;

14          Based on this, the Plaintiff believes that it is

15   game over and that Lamp has to turnover every single

16   business and financial document that Lamp has to Plaintiff.

17   That is essentially what Plaintiff's counsel told us during

18   our first meet and confer that we held within in late

19   September.

20          They told us right from the beginning that Lamp is

21   quote "the new Golden Spring" close quote.

22          That Lamp Capital is effectively the alterego of

23   the judgment debtor Miles Kwok.  And thus, Lamb's assets are

24   really the assets of Miles Kwok.  And, therefore, that is

25   the basis for them to properly demand every single business

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    and financial document of Lamp.

2         And we had agreed in the meat and confer process to

3    produce documents that we're tailored to locating the assets

4    of, or the information about the judgment debtor Miles Kwok.

5         And we also proposed important modifications to

6    other Plaintiff requests, in a good faith effort, to reach

7    middle ground.

8         Plaintiff declined to respond to our proposals and,

9    essentially, taken the my way or highway approach to the

10   meet and confer process;

11        And because it was all or nothing with the

12   Plaintiff, because we couldn't reach accommodations, we were

13   compelled to file motions.

14        And so Plaintiff now, in response to our motion to

15   quash both these subpoenas.  And, again, one subpoena is

16   that Lamp Capital directly, your Honor and one subpoena is

17   to the accounting firm for Lamp Capital, a firm Janover.  We

18   sought to quash four at a minimum, have modified those

19   subpoenas.

20        And what the Plaintiff says is that you've already

21   ruled on the instant motion today.  And in their response

22   they say quote "the Court has already decided this issue in

23   Plaintiff's favor."

24        And what the Plaintiff is referring to when they

25   say that is your ruling last May, May 27th, on the motion to

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 39 of 85

-Proceedings-

1   compel Golden Spring to provide a large amount of their

2   documents.

3           In other words, your Honor, Plaintiff has argued

4   that at this point the Court need only rubber stamp

5   Plaintiff's effort to enforce these two subpoenas that seek

6   every conceivable financial and business document from Lamp.

7   And we, respectfully, disagree, your Honor.

8           And I would like to focus on an important

9   distinction between the situation with Golden Spring last

10  may and the situation instantly before your Honor, and,

11  particularly, a focus for me because I thought you found it

12  meaningful when you made your decision last May in

13  connection with the Golden Spring matter.

14          In arguing now that Lamp is the new Golden Spring

15  and that Lamp and Kwok's efforts are, effectively, one of

16  the same, by doing so they are arguing, essentially, Lamp is

17  the new Golden Spring but there's an important difference as

18  I mentioned.

19          Last May, the Plaintiffs argued to you that the

20  reason that you should find that their motion for discovery

21  was appropriate was because Miles Kwok had sworn in a 2016

22  Affidavit, that he was the one who quote "set up Golden

23  Spring by transferring funds from one of his accounts at UBS

24  to Golden Springs' JP Morgan Chase account in New York.

25  That is at Docket Number 750, Page 6 and also Docket 764,

-Proceedings-

1    Paragraph 36.

2           Similarly, Plaintiff's counsel argued to you,

3    during the oral argument on that motion, that Miles Kwok

4    quote "already said it is his money at Golden Spring and

5    he's using it to pay all of his expenses" close quote.  That

6    is at Page 7 on May 27th, your Honor.

7           Unlike those arguments to you in the Golden Spring

8    litigation, Plaintiff here has not shown that Miles Kwok,

9    the judgment debtor, has funded Lamp Capital, there's no

10   proof of that whatsoever.

11          THE COURT:  Plaintiff determined that without

12   getting these records.

13          MR. LEVINE:  Well, I think, your Honor, the

14   Plaintiff has a burden to have some kind of showing that it

15   is, in fact, the judgment debtor's funds.

16          THE COURT:  Those demonstrated beyond any

17   reasonable doubt that Mr. Kwok has six, eight, ten or twelve

18   different shell companies that he utilizes to evade his

19   creditors.

20          MR. LEVINE:  Your Honor, I think that the analysis

21   has to be applied to our particular case and the particular

22   facts here.  And if it is simply the case that the

23   Plaintiff's counsel can point to an entity or person,

24   declare that person somehow affiliated with the judgment

25   debtor and, therefore, succeed on a motion to compel on

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    court and that the CPLR requires nothing more than that, I

2    don't think that is a correct view of the law and what the

3    CPLR requires.

4         And I would just point to one more thing about your

5    comment Last May.  I understand you're concerned this.  I do

6    understand your Honor's frustration and how long this has

7    gone on;

8         But your Honor stated in the hearing last May, the

9    best evidence that has been made available to the Court

10   compellingly suggests that any asset that Golden Spring has

11   provided to Golden Spring by Mr. Kwok close quote.  That is

12   what your Honor said.  Your Honor used that in order to

13   grant the motion.

14        So, you thought that having seen that evidence,

15   that affidavit, which was already existing, which was

16   submitted to you by the Plaintiffs, that was the basis

17   there was actual evidence.

18        So I would say, your Honor, that is the answer to

19   your question.

20        There has to be some evidence that justifies the

21   invasive discovery of a nonparty.

22        THE COURT:  All right.  Let me hear from the

23   Plaintiff's counsel.

24        MR. SARNOFF:  I will try to keep this brief.

25        Mr. Levine suggests that we're arguing that it is

-Proceedings-

1    collateral estoppel here or res judicata.

2         I mean, given the interconnection between Lamp and

3    Golden Spring, that is not far off but that is not our

4    argument, your Honor.

5         You found in the context of the Golden Spring

6    hearing that quote "Plaintiff is a judgment creditor.

7    Plaintiff knows that Golden Spring is funding expenses of

8    Mr. Kwok, not minor in consequential expense.  And the

9    judgment creditor is entitled to have discovery of the

10   entity that is funding Mr. Kwok's expenses."  That is the

11   hearing transcript on the Golden Spring motion at Page 10.

12        That is the exact same analysis, your Honor, that

13   applies here.  Not because it is collateral estoppel or res

14   judicata.  We did not argue that.  But because it is

15   correct.

16        The Lamp motion is even less compelling than Golden

17   Springs, your Honor.  Because in this instance, we're not

18   seeking a restraining order as we did against Golden Spring.

19        We are only seeking relevant asset related

20   documents under the broad standard for postjudgment

21   discovery of CPLR 5223.

22        Now, Mr. Levine mentioned that we pointed out that

23   between October of 2020 and January of 2021, through nine

24   separate transfers, Lamp transfers over $6 million to Golden

25   Spring.  He points out that some of those documents, some of

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    the documents we've produced and submitted to the Court

2    indicate that they may have been loans.  I would note that

3    some of them have no indication that they're loans, some of

4    those transfers; they maybe loans, they may not be loans.

5    That is discovery is for.  We're piecing this together

6    without the opportunity to see what Lamp has.

7           Now, it was very interesting to me that Mr. Levine,

8    in listing what our evidence is, he left out a very very

9    fundamental fact:

10          Your Honor will remember in the Golden Spring

11   context, that we showed that Golden Spring was funding Mr.

12   Kwok's lifestyle and funding, specifically, his very

13   sizeable legal bills, as well as the Sherry-Netherland

14   maintenance and a lot of other expenses.

15          Well, your Honor, I think if you will recall from

16   our papers -- and Mr. Levine left this out -- we had

17   demonstrated for you and Mr. Kwok's myriad legal counsel

18   have confirmed, that it is now Lamp that is paying Mr.

19   Kwok's mounting legal fees.

20          THE COURT:  I've heard enough.  I've read the

21   papers.  The motion to quash is denied.

22          Let's go onto the next motion.

23          MR. LEVINE:  Thank you.  One point of

24   clarification.

25          We also asked separate relief that any subpoenas to

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1          bank be withdrawn.  Is that also denied?

2                    THE COURT:  Yes, that is also denied.

3                    MR. LEVINE:  Thank you, your Honor.  I did not

4          leave anything out, I just wanted to give Mr. Sarnoff his

5          opportunity.

6                    If there's any other questions you have, I would

7          appreciate you submitting them to me.  Thank you.

8                    THE COURT:  I don't have any questions on this

9          motion, it is denied.

10                   MR. LEVINE:  Thank you.

11                   THE COURT:  Let's go to the next motion.

12                   MR. SIEGEL:  Thank you.  Again, John Siegel for Mr.

13         Kwok from Baker & Hostetler.  And with me in this case is

14         Nicholas Rose, as well as ethics expert Roy Simon.  We

15         appreciate your Honor patience and diligence through this

16         series of motions this afternoon.

17                   I will be addressing Mr. Kwok's motion to

18         disqualify the Cahill firm.

19                   Nicole Hyland from Frankfurt Kurnit firm will

20         address GTV motion which raises different issues and is a

21         different motion.

22                   THE COURT:  All right.

23                   MR. SIEGEL:  I want to say at the outset to express

24         our and our firm's respect for the Cahill firm.  This is an

25         important legal issue of attorney duties and

-Proceedings-

1    responsibilities, it raises novel issues.

2            THE COURT:  Let me ask you one question.

3            MR. SIEGEL:  Yes.

4            THE COURT:  Was Mr. Kwok ever a client of the

5    Cahill Gordon firm; yes or no?

6            MR. SIEGEL:  He was an implied client with a

7    fiduciary duty.  He was not a directly engaged client.

8            THE COURT:  He never engaged Cahill?

9            MR. SIEGEL:  Correct.

10           THE COURT:  Go ahead.

11           MR. SIEGEL:  Just to say, you know, we wish Mr.

12   Moss well and Cahill, we respect the firm's desire to

13   support their new partner.  It is a rare thinking that

14   someone joins that firm laterally and we wish them the best.

15   We think they have taken an incorrect position on the facts

16   here.

17           So I want to start, your Honor, with the undisputed

18   facts.

19           And the undisputed facts established Cahill's

20   fiduciary duty.  It is indeed, as your Honor has asked,

21   undisputed that Kwok personally did not directly engage

22   Cahill Gordon;

23           But the fiduciary duty that firm owed Mr. Kwok, and

24   the substantial relationship between Cahill's confidential

25   relationship with Mr. Kwok, in the government

-Proceedings-

1      investigations, and the Plaintiffs asset tracing and

2      judgment enforcement efforts in this case, are established

3      by the following, all of which are undisputed in the record.

4            First, a common interest agreement existed between

5      Mr. Kwok and Cahill.

6            MR. MOSS:  I apologize, Mr. Siegel, I want to make

7      sure you're okay with me staying here.  I wanted to make

8      sure that my presence was known and that you're not going to

9      be covering any that is confidential and you don't think I

10     should be here as you start to get into the facts.

11           MR. SIEGEL:  I think we're in an open court

12     proceeding that we are going to be --that there are aspects

13     of the record here that everybody sealed.

14           My intention is not to directly address sealed

15     material in open court.  I can't say I can control what I

16     say and I think I know where that line is.

17           If I think it is being approached, I'll so indicate

18     and I'll give others to do so, I guess I will object.  I

19     think the safer thing is if you're not in court, but I can't

20     -- that is for you and your firm to decide.

21           MR. SARNOFF:  I would also like to say that I am

22     counsel for PAG and I'm on the video.  I have no intention

23     of either being prejudiced by anything discussed here.  So I

24     put myself at the mercy of the Court and ask for guidance.

25           THE COURT:  I don't have any problem with everyone

-Proceedings-

1    who is on this Teams call continue to be on the Teams call.

2              MR. SARNOFF:  Okay.

3              MR. SIEGEL:  The common interest agreement between

4    Kwok and Cahill, it is undisputed, including in Paragraph 5

5    of the affidavits submitted by the Cahill firm.

6              It is undisputed that there was no provision in

7    that Agreement, which was an oral agreement.  There was no

8    warning or caution or condition imposed by Cahill as firms

9    customarily do disclaiming a fiduciary relationship with Mr.

10   Kwok, as a result of that common interest agreement in

11   sharing the confidential information that was shared.  And

12   Cahill never reserved the right to be adversed to Mr. Kwok

13   in this or any other proceedings substantially related

14   subsequently.

15             So the existence of the common interest agreement

16   and the fiduciary confidential relationship is undisputed.

17             It is undisputed that in Cahill's communications

18   with Mr. Kwok and his counsel, and his team, that all but

19   one of those communications was very prominently labeled

20   attorney-client communication, privileged and confidential

21   attorney client, attorney work-product, common interest

22   communication.  Those are not mer words, your Honor.

23             That is not just some form rhetoric that lawyers

24   put on e-mails.  I'll tell you I, myself, virtually never

25   put that on, unless I know I'm dealing with a situation

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 48 of
85    RECEIVED NYSCEF: 01/25/2022

47

-Proceedings-

1    where it may become an issue.  My practice does not matter,

2    Cahill did that.

3         They promised Mr. Kwok, in all of their

4    communications the essence of an attorneys's promise of

5    confidentiality, that is pinnacle of the attorney's duty and

6    why in law of society we invest attorneys with privileges,

7    like attorney-client privilege, and that people bring

8    attorneys within the confidence of their circle that they

9    entrust them with confidential information, reasonably

10   understanding that those attorneys are not going to turn

11   around and use it against them.

12        It is undisputed that Cahill confirmed with Mr.

13   Kwok's counsel concerning his decision to invoke the

14   protection of the Fifth Amendment.

15        Cahill doesn't even address the fact that they had

16   a common interest arrangement on sensitive government

17   subpoenas and investigations with a person that consulted

18   with them and that they were intermittently involved in the

19   decision, his decision to invoke his Fifth Amendment

20   privilege.  This is not an ordinary situation;

21        This is at the height of the constitutional

22   protection of a party's confidence and protection of those

23   confidences and Cahill was on the confidential side of that

24   circle.

25        It is undisputed --and I will show that the SEC

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
RECEIVED NYSCEF: 01/25/2022
Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 49 of 85

48

-Proceedings-

1    subpoena to Mr. Kwok, not to GTV, the SEC subpoena to Mr.

2    Kwok that Cahill participated in the response to, that

3    Cahill vetted documents in response to, that Cahill advised

4    on.

5           The SEC subpoena and the subpoena served by the

6    Plaintiff in this case called for a nearly universal-- a

7    nearly coterminous identical universal of documents

8    concerning assets held by or on behalf of Mr. Kwok.

9           The SEC was seeking the exact same discovery that

10   PAX is seeking here.

11          Cahill advised confidentially on Mr. Kwok's

12   response to that subpoena.  And Cahill is still in

13   possession of those documents.  And they are the same

14   documents that PAX is seeking and still seeking in this

15   litigation.

16          Cahill knew that that issue was common to both the

17   SEC matter in this case.  Guy Petrillo, who represents Mr.

18   Kwok in the government investigations, and who is the former

19   Chief, U.S. Attorney's Office for the Southern District of

20   New York, tested in his affirmation that Brad Bondon

21   (phonetic) stated to the Kwok Team quote "our lawyers have

22   been keeping the government from doing anything aggressive,"

23   close quote with regard to any SEC effort to seize Mr. Guo's

24   purported assets.  That is Petrillo reply affidavit in

25   Paragraph 2.  Not me saying it, that is Guy Petrillo, a

-Proceedings-

1    reliable lawyer who was intermittently involved working with

2    Cahill on a day-to-day basis saying that Cahill told him

3    they were aware that the SEC issues were the same issues in

4    terms of asset tracing and asset enforcement that PAX is

5    undertaking here, and that Cahill lawyers have been working

6    on them.

7        And it is undisputed, your Honor, that Cahill had

8    and apparently still has unfettered access to Mr. Kwok's

9    confidential information.  The same information that the

10   Plaintiff is seeking in this case.  It is in a document

11   portal to which Cahill had complete access.

12       Cahill devoted substantial time to reviewing and

13   analyzing the encrypted confidential communications of Mr.

14   Kwok.  That is Mr. Petrillo's testimony at Paragraph 8.

15       Cahill analyzed Mr. Kwok's documents, not GTV's,

16   Mr. Kwok's confidential documents and materials relating to

17   other business entities that the Plaintiff in this case

18   would likely deem relevant to its litigation efforts.  And

19   that fall within the scope of Mr. Kwok's Fifth Amendment

20   invitation, that is Guy Petrillo's testimony, Paragraph 8.

21       We just argued a motion touching on a range of

22   entities and an allegation by the Plaintiff that Mr. Kwok

23   owns or controls, or has a beneficial interest in a variety

24   of entities.  Some, numerous of those, are entities about

25   which the SEC served a subpoena and Mr. Kwok provided

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    confidential information to Cahill regarding, and that he

2    ultimately, with Cahill's participation, decided to invoke

3    his Fifth Amendment privileges against any other disclosure

4    regarding those entities.

5         Your Honor, it is just not a situation in which the

6    firm can then turn around and be adverse to Mr. Kwok, on the

7    very same issues, involving the very same entities, in which

8    the Plaintiff here that they would now be representing,

9    seeking discovery on the very same documents and issues and

10   information.

11        THE COURT:  All right.  I have heard enough.  I'm

12   going to give the Court Reporter ten minutes.  You've been

13   going for an hour and-a-half and then we will resume.

14        MR. LEVINE:  Thank you.  When we resume, I would to

15   like to, within the parameters to sealing, among other

16   things, take the Court specifically through the overlap of

17   the subpoenas, if I may when we return.

18        THE COURT:  I think I take your point there is an

19   overlap.

20        (Pausing.)

21        (Recess taken.)

22        THE COURT:  Okay.

23        MR. SIEGAL:  I would like to clarify one thing I

24   said before the break.

25        If I argued that, when I suggested that there were

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 52 of
85
RECEIVED NYSCEF: 01/25/2022

51

-Proceedings-

1    entities discussed in the prior motion, that were entity

2    subpoenaed by the SEC and by the Plaintiff here, I did not

3    mean to state that all of the entities discussed in the

4    prior motion are within that.  I don't want to specify

5    because it is sealed, but I don't want to overstate the case

6    either.  There are entities that have to be raised in this

7    litigation that were subpoenaed by the SEC that PAX sought

8    discovery on.

9         What happened was that the SEC subpoena sought

10    documents sufficient to identify all assets held by or on

11    behalf of Mr. Kwok.  They sought documents sufficient to

12    identify all current accounts held by or on behalf of Mr.

13    Kwok and requested all documents concerning a list of

14    specific entities; that is sealed.  So I don't want to get

15    into the specifics, but the Pacific Alliance document

16    request pending in this case also seek documents relating to

17    any assets of Mr. Kwok, or for any debtor related person;

18    documents relating to any accounts of Mr. Kwok or any debtor

19    related person; and they seek the documents regarding nearly

20    all of the entities sought by the SEC.

21         THE COURT:  Mr. Siegel, I understand your position.

22         Let me hear from GTV's counsel.

23         MR. SIEGEL:  May I discuss the case law or you want

24    to defer that.

25         THE COURT:  I want to hear from GTV's counsel.

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 53 of
85
RECEIVED NYSCEF: 01/25/2022

52

-Proceedings-

1          MR. SIEGEL:  Certainly.  I don't want to take time.

2     Let me just say this:

3          Cahill makes a big deal about the fact there's no

4     New York case directly on point regarding disqualification

5     of a firm due to a fiduciary duty arising under a common

6     interest agreement.  It is a unique set of facts.

7          Let me suggest one reason there's no such case law

8     is because this is not something that firms do.

9          You don't sit, confidentially, with a common

10    interest party and all their documents advising them on

11    sensitive matters and turn around and six months later and

12    appear against them.

13          There's no New York rule.  But the majority rule

14    across the country favors disqualification.

15          THE COURT:  Mr. Siegel, I've practiced law for

16    45 years.  I want to hear from GTV's counsel.

17          MR. SIEGEL:  Okay.  I hear you.  It is your turn.

18          MS. HYLAND:  Can you hear me okay?

19          THE COURT:  Yes.

20          MS. HYLAND:  My name is Nicole Hyland and I am with

21    the firm Frankfurt Kurnit Klein & Selz and we represent GTV

22    Media in connection with its motion to intervene in this

23    action for the purpose of disqualifying its former lawyer

24    Cahill Gordon & Randall.

25          We are, obviously, in a slightly different position

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    from Mr. Kwok.  We are the former clients of the Cahill

2    firm.  GTV was represented by Cahill.  And, in fact, paid

3    them approximately a million dollars in legal fees for that

4    representation.  And, so, we very easily meet that first

5    element of establishing there's a attorney-client

6    relationship here.

7           So I'm going to move very quickly onto the second

8    and third element of disqualification.

9           The second element being that we would show and we

10   are able to show that either the two follow things exists:

11          Either Cahill possesses confidential information,

12   it could be used either to the advantage of PAX or the

13   disadvantage of GTV, or --not and --you don't have to have

14   both --or that the two matters substantially related.  Only

15   one of those prongs has to be fulfilled to warrant

16   disqualification.  Here, in fact, both prongs are satisfied.

17          And then the third element that I am going to get

18   to at the end is the adversity element, that the two

19   matters, the two representations are adverse.

20          So, first, moving to the confidentiality issue, the

21   substantial relationship issue.

22          In the course of representing GTV, Cahill came into

23   the possession of reams of confidential information relating

24   to GTV's financials, assets, corporate structure and more.

25   We layout in our motion papers descriptions --general

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 55 of 85

54

-Proceedings-

1    descriptions without going into detail and disclosing the

2    very confidential information GTV is trying to protect.  In

3    broad terms we layout categories of information that really

4    demonstrate the relevance of those documents to the judgment

5    enforcement efforts of PAX that they have been conducting

6    all along in this case.

7              I know that PAX has -- can you still hear me?

8              THE COURT:  Yes --

9              MS. HYLAND:  I know that PAX has indicated --I

10   understand two PAX's argument in response of this are that

11   A, there's a screen and B, there's stipulation.  I'm going

12   to get to those and address those.

13             So, no question though that this confidential

14   information is information that PAX has sought in discovery

15   in this matter.  It is identified GTV as debtor related

16   entity.  We have referenced two examples of just two

17   subpoenas.  They have served multiple subpoenas which attach

18   the schedule of so called debtor related entities, or I

19   would say 80 to 100 people entities on that list that they

20   have served subpoenas on various entities seeking

21   information and GTV is one of those debtor related entities,

22   according to PAX;

23             Not only is this confidential information at risk,

24   but, in addition, Cahill actually did represent GTV in

25   connection with the very issue that came up in connection

-Proceedings-

1    with this action.

2         The one that I first got involved in, which was

3    that disclosure, which we still don't know how it got out of

4    the very sensitive banking and financial information that

5    ended up that one of PAX's document subpoenas.

6         I have --if your Honor reviews my affirmation.  I

7    had a lengthy conversation with partners of Cahill, Mr.

8    Bondi and Mr. Bossin, about that incident while they were

9    still representing GTV and the commencement of my

10   representation, to handle that specific discrete issues;

11        We had a long conversation.  We talked about all

12   aspects of this case, about document requests, of how that

13   information got out.  They informed me that they believe

14   there were only one possible source for that information and

15   that was a schedule that they had in their possession that

16   was submitted to the SEC.

17        They gave us advice on what they thought we should

18   do.  I shared with them extensive information about our

19   strategy.

20        There's no question that we were jointing advising

21   GTV with respect to that issue at that time.

22        So, the substantial relationship test is also met

23   here.

24        Now, disqualification is warranted when either of

25   those prongs are met, either there's confidential

-Proceedings-

1      information that the lawyers have, could be used against

2      former client or to the advantage of the current client, or

3      there is a substantial relationship between the two matters,

4      as there is here.

5            Now Cahill implicitly concedes there's a conflict

6      here.  They establish this so called ethical wall.

7      Extensively to screen this extensive amount of confidential

8      information from Mr. Moss and his team.

9            Now, the problem with that is that New York rules

10     do not permit what we call nonconsensual screening.

11           What Cahill should have done is come to GTV, reach

12     out to us, or reach out directly to GTV and take on newly

13     represented GTV, and explain that there was conflict and ask

14     us, or GTV, if GTV would waive it, or if they would waive it

15     at least with some type of a screen.  They never did that.

16           They never notified GTV of this conflict, they

17     never notified GTV of any intent to put up any screen and

18     they just went ahead and did it without any input from GTV

19     and without even the courtesy of reaching out to their

20     former client.

21           That is not the rule permits.  The rule only

22     permits a screen to be used to cure this type of conflict

23     when the client consents to it.  And GTV has never consented

24     to it, does not consent to it, not was asked to consent to

25     it.  That is not an effective way to cure this conflict.

Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 58 of 85

-Proceedings-

1        Beyond the fact that it simply-- a screen simply

2   does not apply and appropriate here to cure the conflict, it

3   is also a deficient screen.  It wasn't erected until two

4   weeks after Mr. Moss joined Cahill.  It is a very late

5   screen.

6        Screens are, if they're appropriate at all, they

7   have to be established at the inception of the

8   representation.  When Cahill first started representing PAX

9   in this case, that is when you set up a screen.  Even

10  assuming a screen would have been appropriate.

11        THE COURT:  I understand your argument.

12        I'm granting your motion to intervene to a limited

13  purpose of seeking the disqualification of Cahill Gordon.

14  I'll hear counsel for Cahill Gordon.

15        MR. MOSS:  Thank you, your Honor.  Edward Moss.

16  I'll be handling this.

17        Your Honor, as you know Mr. Kwok and GTV have what

18  the First Department called heavy burden to overcome PAX's

19  right to be represented by Counsel of his choice.

20        It is a three prong test they have to meet to

21  establish a rebuttable pry assumes rebuttable for

22  disqualification.

23        First requirement we talked about is a prior

24  attorney-client relationship.  Mr. Kwok can't meet it.  We

25  all agree he was never Cahill's client.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    So Kwok argues that he had a de facto

2    attorney-client relationship with Cahill because there was

3    joint defense group.  Cahill represented GTV.  And Kwok

4    shared certain information with Cahill.

5    The problem which was alluded to before, is that

6    there's no basis in New York Law for disqualification under

7    this type of joint defense argument.

8    Professor Simon, who your Honor has recognized, is

9    perhaps the leading expert in this field.  His 2000 Ph

10    treatise doesn't have anything to support this in New York

11    Law under this type of a setting.

12    The best Professor Simon can say, that is in

13    Paragraph 45 of his opening report, is that Courts rule on

14    disqualification motions, in this context, on a case by case

15    basis.  That is the best he can do here.

16    But what Professor Simon doesn't say, is that no

17    New York case ever disqualified a lawyer in this context.

18    Mr. Kwok cites cases it can be done, but they don't

19    do it.  Their key case they focused on is the William versus

20    Abraham Construction Corporation case, cited at Page 11 of

21    Mr. Kwok's opening brief.  It is a Fifth Circuit case from

22    1977.  It is obviously not binding on your Honor.

23    Mr. Kwok and Professor Simon talk about the case

24    being seminal.  What they don't mention is the key fact that

25    makes it entirely different from the case here, your Honor.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1      They are the same lawyer switch sides.  It is would be like

2      Mr. Bondi the Cahill lawyer who represented GTV coming into

3      this case to represent PAX.  I don't know what Mr. Bondi

4      learned.  Whatever he learned, I agree, he could not unlearn

5      it.  There would be no possibility in the screen.

6           Here, as we discussed, there's a screen.  Everyone

7      has put in affidavits saying that I, and my only one team

8      member, this is not a far reaching out-- my one team member,

9      we don't have any confidential information and never

10     discussed this case.

11          So the lack of an attorney-client relationship with

12     Mr. Kwok is dispositive.  That is why they have GTV in here.

13     We do agree GTV was a Cahill client.

14          GTV, however, can't meet the other prongs.  Let's

15     go through those.

16          Substantial relationship.  It is that Cahill's

17     prior representation of GTV and its current representation

18     of PAX must be substantially related and the First

19     Department has said that means the issues might be identical

20     to or, essentially, the same as those in the prior case.

21          On their face these matters have nothing to do with

22     each other.  The government investigation was about GTV and

23     Mr. Kwok allegedly committing some sort of investor fraud.

24          This is a breach of contract case against only Mr.

25     Kwok.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1          GTV also makes the argument that that special

2     proceeding somehow is substantially related.  Well, that was

3     a proceeding about the information league.  You remember,

4     that didn't turn out to be information league.  It was

5     information that was available on the Internet.

6          And when GTV argued before you, your Honor, on that

7     very proceeding, because they were trying to keep the case

8     away from you.  They said the cases weren't related.  They

9     said the cases have nothing to do with each other because

10    they involved different facts, different claims, and

11    different parts.

12          In any event, your Honor, Cahill did not represent

13    GTV in the special proceeding.  You know, I was arguing

14    against Ms. Hyland in the special proceeding.

15          So, because they can't meet substantial

16    relationship, they move to sort of another way that we

17    agree, another way to meet this prong, is by arguing that

18    the material is --the information is material and necessary

19    to the collection efforts in this case.  And it is not, your

20    Honor.

21          In order for information about GTV --and that is

22    the only specific information that I've heard about in any

23    of these papers --it is GTV related information.  Mr. Siegel

24    said well, there may be information about some other

25    entities that may be relevant at some point.  We're talking

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 62 of    RECEIVED NYSCEF: 01/25/2022
85

61

-Proceedings-

1      about GTV.  That, to my understanding, is what they have

2      identified --

3                MR. SIEGEL:  --I need to make clear --

4                THE COURT:  Don't interrupt Mr. Siegel --

5                MR. SIEGEL:  --that I did not mention other items

6      because they're sealed.

7                THE COURT:  Don't interrupt.

8                MR. MOSS:  In order for the information to be

9      material and necessary PAX must be trying to enforce against

10     GTV.  Mr. Kwok and GTV double down on that argument.  They

11     say that is happening here, Judge, right.

12               Page 15 of his opening brief, Mr. Kwok says quite

13     incredibly the government investigations and the PAX action

14     both center on Kwok's purported relationship with GTV.

15               They say our case centers on the relationship with

16     GTV.

17               GTV says quote "PAX is laying the groundwork to

18     enforce the judgment or take other affirmative actions

19     against GTV and is targeting --targeting GTV's assets for

20     judgment collection under an alterego theory."

21               The problem with the argument, your Honor, is that

22     it doesn't have a basis in reality.  Because if PAX were

23     pursuing GTV, PAX would be pursuing GTV.  We know what that

24     looks like.  We're pursuing the yacht and we just spent an

25     hour on the yacht and scheduled an evidentiary hearing on

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 63 of
85
RECEIVED NYSCEF: 01/25/2022

62

-Proceedings-

1      the yacht.

2              We're pursuing the apartment and we have a vail

3      piercing trial coming up at some point on the apartment.

4      And your Honor said I've been talking about the yacht and

5      the apartment for years.  Mr. Siegel did not say Cahill has

6      information about those assets, about those assets.  That is

7      what this case is about and has been about for the last

8      year.

9              And, importantly, your Honor, PAX has not pursued

10     GTV.  Even though it had a really good opportunity to do so.

11     The special proceeding Ms. Hyland is talking about --

12     remember, we had information about bank accounts.  We

13     thought they were Mr. Kwok's.  We asked Mr. Kwok about them.

14     Then GTV came on and said actually, no they are my bank

15     accounts, they belong to GTV not Mr. Kwok.

16              We had one special proceeding, still had the

17     information, and never ever ever did anything with it, your

18     Honor, ever.

19              PAX has never pursued GTV.  And it is stipulating

20     in an agreed order that we put in front of the Court that it

21     will not pursue GTV.

22              We take orders of the Court seriously on our side,

23     your Honor.  And we are willing to put this into a Court

24     Order.

25              I'm going to add that GTV made statements that we

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 64 of
85
RECEIVED NYSCEF: 01/25/2022

63

-Proceedings-

1    are targeting it, and that we are pursuing its assets and

2    laying the ground work after we put in our stipulation that

3    said we're not doing that precise thing.  They read our

4    brief and said it anyway.

5         The third prong is material adversity.  There has

6    to be adversity between GTV and PAX.  For the reasons I just

7    covered, Judge, there isn't.

8         In terms of the rebuttable presumption, even if Mr.

9    Kwok could satisfied these elements or GTV could satisfy

10   these elements, we can rebut the presumption with a screen.

11        We have five affidavits from officers of the Court

12   saying that me, Ms. Rydell, the only two members of the team

13   never received GTV confidential information, we don't plan

14   to.

15        Everyone agrees Professor Simon does not rebut

16   this.  And he actually wrote an article on this.  Everyone

17   agrees a screen can suffice under certain circumstances.

18        He wrote an article in 2002 asking if screens can

19   cure ethical conflicts in New York.  He admitted that the

20   Court of Appeals implied the presumption can be rebutted.

21   We have a large firm and ethical wall.  They don't touch

22   that issue on reply after we cite the article.

23        You have the affidavits here.  And here you have

24   the added safeguard that in December of 2020 there was

25   actually an information wall put in place, where everyone at

-Proceedings-

1    Cahill who was working on GTV, they were the only people who

2    had access to the GTV information.  Nobody did.  That screen

3    was in place a year before I got there.  If I joined Cahill

4    a year earlier I wouldn't even have been able to access

5    GTV's information, if I wanted to.

6         Finally, your Honor, on the balance of the

7    equities.  PAX has a strong right to counsel of its choice.

8    It is a five year old case.  I've been doing this for a

9    long-time, I have a lot of institutional knowledge.  Things

10   come up like an evidentiary hearing in two weeks time --in

11   two weeks time that PAX needs to prepare for.

12        On the other side of the coin, your Honor, there's

13   no legitimate interest.  It is gamesmanship.  I've said it

14   before I'll say it again the Mayors (phonetic) case, First

15   Department, cited on Page 20 of our opposition says

16   gamesmanship is not legit interest.  We know it is

17   gamesmanship based on the history of the actors in this

18   case.  We know it is gamesmanship because we are still here

19   talking about this, even though we have sworn that we have

20   no confidential information and that even if anything had,

21   PAX will agree in a Court Order to not go after GTV.

22        Thank you, your Honor.

23        THE COURT:  All right.  I'll hear the movement five

24   minutes each to respond.

25        I want to address a few points raised by Mr. Moss.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1              First of all, this idea that PAX wasn't targeting

2      GTV for judgment enforcement is belied by PAX's own

3      documents.  All of the subpoena attached as debtor-related

4      entity lists and GTV is right on the list.

5              I would also add when I -- when we became involved

6      in that special proceeding, I had multiple conversations

7      with Mr. Moss about the leak of that confidential

8      information and how it got into PAX's hands and never once

9      did Mr. Moss ever assure me that PAX was not going after

10     GTV.  He said the opposite.  He said --

11             THE COURT:  Counsel, he's stipulating that PAX will

12     take no action against GTV.

13             MS. HYLAND:  Thank you.

14             THE COURT:  There's a stipulation on the Court

15     record that PAX will not pursue GTV in any way, shape, or

16     form either with respect to discovery or with respect to

17     enforcement.  That is correct, Mr. Moss?

18             MS. HYLAND:  I don't agree with characterization.

19             MR. MOSS:  Yes, your Honor, that's correct.

20             MS. HYLAND:  Can I address that?

21             THE COURT:  Yes.

22             MS. HYLAND:  What I disagree with in that

23     characterization in any way, shape, or form.  Because they

24     have --PAX has left itself a huge out from that stipulation

25     by saying, if they ever determine that indirectly or

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1    directly Kwok has, in their view, transferred assets

2    directly or indirect to GTV, they can then drag GTV into

3    court.

4              THE COURT:  Let's clarify something.  Okay.  I want

5    to be clear.

6              I have the highest regard for Mr. Moss, I have the

7    highest regard for his advocacy and his integrity.

8              I'm understanding Mr. Moss to be stipulating on

9    behalf of PAX that there are no circumstances under which

10   PAX will take any action whatsoever with respect to GTV

11   irrespective of whether PAX believes that Mr. Kwok is

12   misusing GTV, or has assets with GTV, or is acting in

13   concert with GTV.  I want to be clear about this, Mr. Moss.

14             MR. MOSS:  Yes, let me be clear.

15             The stipulation is that we will not take any action

16   against GTV.  There is a carveout that we put in.  The

17   carveout is after today, if Mr. Kwok, to take advantage of

18   our stipulation transfers assets to GTV to try to hide them,

19   and we have information based on that, we have to come to

20   the Court and ask for permission to go after him.  If the

21   Court doesn't want to decides that issue we'll go to an

22   arbitrator and we will live with that decision, it will not

23   be in our discretion.  I cannot agree to something where

24   tomorrow Mr. Kwok says, let me pledge every asset that I

25   have to GTV now that PAX has made this stipulation.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 68 of
85
RECEIVED NYSCEF: 01/25/2022

67

-Proceedings-

1          MR. SARNOFF:  One more clarification.

2          Cahill would not be involved in any aspect of that

3    proceeding.

4          If Mr. Kwok, to take advantage of this situation,

5    were to transfer, thereafter, and, you know, it would have

6    to be extraordinary circumstances and the Court would find

7    that, Cahill would be walled off entirely and O'Melveny

8    alone would pursue that.  I think that is the way the

9    stipulate is intended to be prepared.  If I am mistaken,

10   please correct me.

11         MR. MOSS:  That is correct.

12         THE COURT:  I want to be very clear Mr. Moss.

13         I'm mildly concerned that my high regard and

14   respect for you is -- my judgment about this -- you are

15   about as close to the line as you could possibly be with

16   respect to this issue.  So, insofar as this stipulation is

17   concerned, from my perspective, the disposition of the

18   motion depends on you having nothing whatsoever to do with

19   GTV in any way, shape, or form; including collaborating with

20   O'Melveny, including discussions with third parties,

21   including any court filings, including sharing any

22   information; zip, zero, nada.

23         MR. MOSS:  I understand that, your Honor.  I don't

24   even anticipate that O'Melveny will need to be involved with

25   GTV.  I personally will not be.  I'm saying that right here

-Proceedings-

1    absolutely 100 percent, your Honor, nothing to do with them.

2              THE COURT:  All right.  I interrupted counsel.

3              MS. HYLAND:  The concern that we have is not fully

4    resolved by the stipulation even with that Mr. Moss'

5    statement because there's two concerns here.

6              One is that there are 25, 26 lawyers at Cahill in

7    the New York office that have access to all of this

8    extensive information.  In this very proceeding where Cahill

9    was defending itself from a disqualification motion, it

10   filed publicly on the Court System incorrectly confidential

11   information without even checking the correct box for

12   sealing.  Information could be disclosed inadvertently by

13   mistakes.  And that is very possible and very likely to

14   happen in an office where 25 attorneys or 26 lawyers have

15   access to that information.  And that is exactly why the

16   rule doesn't permit screening to cure this conflict.

17             GTV is the client who is -- who needs to be

18   protected here and they shouldn't have to rely on, you know,

19   Cahill being perfectly able to execute this process because

20   they have not done so so far.

21             It is not fair to require GTV to rely on all of

22   these assurances.  They have no way of testing them or

23   making sure that these are being handled correctly.  And

24   everything that we have seen so far points to the opposite.

25   That is why the stipulation is inappropriate.  Because it is

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

Case 22-50073   Doc 440-20   Filed 05/25/22   Entered 05/26/22 15:30:37   Page 70 of 85

-Proceedings-

1    not a contract waiver from a client.  It is stipulation

2    between PAX's two lawyers that they're agreeing to

3    something.  It is not a conflict waiver that would be

4    necessary to waive this.

5        In our view, on behalf of GTV, we don't believe the

6    stipulation or screen cures this conflict and

7    disqualification is required.

8        MR. MOSS:  If I may in people can make mistakes.

9        There's a difference between making mistakes

10   internally, when you have screens set up in place and when

11   you're required to actually file information pubically on a

12   Docket System and have sealing.  We -- the mistake happened,

13   nobody saw the information and the mistake happened because

14   we were in the position of having to make this filing in

15   response to the motion.  Mistakes are not happening

16   internally.

17       THE COURT:  Look, Mr. Moss, I really do have utmost

18   respect for you as an advocate and the utmost respect for

19   you in terms of your integrity; and I recognize and accept

20   that it is prejudicial to PAX for PAX to be deprived of your

21   extensive experience and knowledge about the issues in this

22   case.  But I just think that, in the long run, it is in the

23   interest of judicial economy, certainty, and appearance of

24   propriety, for Cahill to be not involved in the further

25   prosecution of this case; I say that with regret.  But this

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1  may in fact be tactical, but there are just a couple of red

2  flags here.  And the worse thing that can happen in this

3  case would be for the case to be prosecuted for another year

4  and then for GTV and/or Mr. Kwok to successfully argue that

5  Cahill should have been disqualified.  And, so, I

6  reluctantly come to that conclusion and I'm going to grant

7  GTV TV's motion.

8        THE COURT:  Anything else before the Court today?

9        MS. HYLAND:  No, your Honor.

10        MR. SIEGEL:  No, your Honor I think that is more

11  than enough.

12        THE COURT:  All right.  We'll issue an order

13  MEMORALIZING everything that took place during the preceding

14  two hours.  There's a lot of gamesmanship in this case,

15  which I don't appreciate.  But one way or the another we're

16  going to search for the truth and resolve this case.

17        MR. MOSS:  I do have one thing.  I just wanted to

18  thank the Court for its kind words.  And to say that it has

19  been a privileged to be before the Court so many times.

20        Thank you.

21        THE COURT:  Thank you, Mr. Moss.  You're an

22  exceptional advocate, among the very best I've ever seen

23  both in private practice and on the bench.  And it is with

24  deep frustration that I'm issuing the order that I've just

25  described.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

-Proceedings-

1          Be well, stay safe.  I'll see some of you on

2      February 7th.

3          You could order the transcript.

4          THE COURT:

5          (Whereupon, the proceedings concluded.)

6          *          *          *

7

8          It is hereby certified that the foregoing is a true
       and accurate transcript of the proceedings.

12

13          **DEBORAH A. ROTHROCK, RPR**
          **Official Court Reporter**

14   **REMOTE**

15      SO ORDERED  January 25, 2022

16

17

18      BARRY R. OSTRAGER, J.S.C.

19

20

21

22

23

24

25

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 73 of
85
RECEIVED NYSCEF: 01/25/2022

1

## $

**$500** [1] - 12:13
**$500,000** [1] - 26:13

## 1

**10** [2] - 18:17, 41:11
**100** [3] - 6:5, 54:19, 68:1
**10005** [2] - 1:21, 2:11
**10017** [1] - 2:3
**10036** [1] - 1:18
**10111** [1] - 2:6
**10th** [2] - 10:3, 29:21
**11** [2] - 19:1, 58:20
**12** [1] - 18:14
**13** [1] - 21:7
**14** [1] - 1:11, 21:8
**15** [1] - 61:12
**17** [1] - 6:15
**1977** [1] - 58:22

## 2

**2** [2] - 18:24, 48:25
**20** [2] - 16:1, 64:15
**20-something** [1] - 6:1
**2000** [1] - 58:9
**2002** [1] - 63:18
**2006** [2] - 5:9, 5:13
**2007** [1] - 13:14
**2014** [3] - 5:13, 6:16, 18:19
**2015** [5] - 5:17, 8:24, 12:10, 18:13, 18:15
**2016** [1] - 38:21
**2017** [2] - 6:15, 7:20
**2020** [7] - 7:1, 9:18, 19:9, 21:22, 27:9, 41:23, 63:24
**2021** [1] - 41:23
**2022** [1] - 1:11
**20th** [1] - 27:9
**25** [2] - 68:6, 68:14
**26** [2] - 68:6, 68:14
**27th** [2] - 37:25, 39:6
**28** [1] - 2:10
**2nd** [6] - 30:8, 30:24, 31:2, 31:3, 31:8, 32:23

## 3

**32** [1] - 1:20
**36** [1] - 39:1
**3rd** [2] - 30:18

## 4

**4** [1] - 27:11
**40's** [1] - 7:24
**45** [3] - 2:6, 52:16, 58:13
**485** [1] - 2:2
**4:15** [1] - 6:15
**4th** [1] - 5:5

## 5

**5** [1] - 46:4
**50** [1] - 6:15
**5223** [1] - 41:21
**5225** [8] - 8:13, 12:17, 17:12, 17:14, 25:12, 25:21, 26:9, 28:18

## 6

**6** [2] - 38:25, 41:24
**61** [1] - 1:1
**652077/2017** [1] - 1:10

## 7

**7** [2] - 1:17, 39:6
**710** [1] - 6:14
**750** [1] - 38:25
**753** [2] - 25:17, 25:20
**753(a)(3** [1] - 17:7
**764** [1] - 38:25
**7th** [2] - 30:9, 71:2

## 8

**8** [2] - 49:14, 49:20
**80** [1] - 54:19

## 9

**908** [1] - 36:5

## A

**a/k/a** [7] - 1:6, 1:6, 1:7, 1:7
**abide** [1] - 14:7
**ability** [1] - 17:21
**able** [4] - 32:8, 53:10, 64:4, 68:19
**Abraham** [1] - 58:20
**absolutely** [2] - 10:24, 68:1
**accept** [1] - 69:19
**access** [6] - 49:8, 49:11, 64:2, 64:4, 68:7, 68:15
**accommodate** [1] - 30:6

**accommodations** [1] - 37:12
**according** [1] - 54:22
**account** [1] - 38:24
**accounting** [1] - 37:17
**accounts** [6] - 7:15, 38:23, 51:12, 51:18, 62:12, 62:15
**accuracy** [1] - 16:18
**accurate** [1] - 71:8
**acquires** [1] - 6:6
**acting** [1] - 66:12
**action** [7] - 30:11, 52:23, 55:1, 61:13, 65:12, 66:10, 66:15
**actions** [1] - 61:18
**actors** [1] - 64:17
**actual** [1] - 40:17
**add** [2] - 62:25, 65:5
**added** [1] - 63:24
**addition** [1] - 54:24
**additional** [1] - 28:21
**address** [11] - 6:4, 15:14, 17:24, 23:24, 29:14, 43:20, 45:14, 47:15, 54:12, 64:25, 65:20
**addressed** [1] - 16:20
**addressing** [1] - 43:17
**adduce** [2] - 15:20, 18:1
**adjourned** [2] - 30:13, 30:14
**adjust** [1] - 30:6
**admissibility** [1] - 16:17
**admissible** [2] - 9:9, 18:21
**admission** [2] - 9:20, 19:17
**admissions** [1] - 9:22
**admits** [1] - 14:13
**admitted** [3] - 18:10, 31:11, 63:19
**adult** [2] - 20:19, 24:4
**advance** [3] - 23:6, 33:20, 33:21
**advanced** [1] - 31:21
**advantage** [4] - 53:12, 56:2, 66:17, 67:4
**adverse** [5] - 10:5, 31:17, 32:8, 50:6, 53:19
**adversed** [1] - 46:12
**adversity** [3] - 53:18, 63:5, 63:6
**advice** [1] - 55:17
**advised** [3] - 18:22, 48:3, 48:11
**advising** [2] - 52:10,

55:20
**advocacy** [1] - 66:7
**advocate** [2] - 69:18, 70:22
**affiants** [1] - 34:7
**Affidavit** [1] - 38:22
**affidavit** [9] - 12:24, 16:24, 23:18, 27:17, 31:12, 32:24, 33:5, 40:15, 48:24
**affidavits** [14] - 9:14, 13:12, 13:13, 33:11, 33:12, 33:13, 33:23, 34:5, 34:7, 35:24, 46:5, 59:7, 63:11, 63:23
**affiliated** [1] - 39:24
**affirmation** [4] - 18:2, 18:10, 48:20, 55:6
**affirmed** [2] - 4:19, 28:17
**affirming** [1] - 13:6
**afternoon** [4] - 15:8, 25:10, 35:4, 43:16
**aggressive** [1] - 48:22
**ago** [1] - 11:9
**agree** [7] - 57:25, 59:4, 59:13, 60:17, 64:21, 65:18, 66:23
**agreed** [2] - 37:2, 62:20
**agreeing** [1] - 69:2
**agreement** [8] - 12:23, 36:8, 45:4, 46:3, 46:7, 46:10, 46:15, 52:6
**Agreement** [2] - 13:14, 46:7
**agrees** [2] - 63:15, 63:17
**ahead** [2] - 44:10, 56:18
**Aiao** [2] - 18:16, 18:22
**AIAO** [1] - 18:17
**allegation** [3] - 19:1, 19:3, 49:22
**allegedly** [2] - 4:16, 59:23
**ALLIANCE** [1] - 1:2
**Alliance** [5] - 3:8, 3:20, 4:2, 21:4, 51:15
**allow** [1] - 11:12
**alluded** [1] - 58:5
**alone** [2] - 18:3, 67:8
**alterego** [2] - 36:22, 61:20
**Amendment** [8] - 26:25, 32:7, 32:20, 32:21, 47:14, 47:19,

49:19, 50:3
**amount** [3] - 36:12, 38:1, 56:7
**analysis** [2] - 39:20, 41:12
**analyzed** [1] - 49:15
**analyzing** [1] - 49:13
**and-a-half** [1] - 50:13
**answer** [3] - 14:25, 16:16, 40:18
**anticipate** [2] - 14:6, 67:24
**anyway** [2] - 10:22, 63:4
**apartment** [5] - 5:18, 5:23, 62:2, 62:3, 62:5
**apologize** [1] - 45:6
**apparent** [1] - 21:14
**Appeals** [1] - 63:20
**appeals** [1] - 25:5
**appear** [4] - 22:22, 22:24, 33:7, 52:12
**appearance** [1] - 69:23
**Appellate** [10] - 12:5, 15:15, 16:22, 17:3, 24:16, 25:1, 25:6, 25:24, 28:16
**applicable** [1] - 8:15
**application** [1] - 20:9
**applied** [1] - 39:21
**applies** [2] - 33:2, 41:13
**apply** [6] - 16:21, 17:15, 24:15, 28:19, 28:22, 57:2
**applying** [1] - 17:19
**appreciate** [6] - 16:15, 24:22, 25:7, 43:7, 43:15, 70:15
**approach** [1] - 37:9
**approached** [1] - 45:17
**appropriate** [8] - 5:1, 14:24, 15:8, 27:2, 38:21, 57:2, 57:6, 57:10
**arbitrator** [1] - 66:22
**argue** [2] - 41:14, 70:4
**argued** [9] - 17:11, 17:15, 28:18, 38:3, 38:19, 39:2, 49:21, 50:25, 60:6
**argues** [1] - 58:1
**arguing** [5] - 38:14, 38:16, 40:25, 60:13, 60:17
**argument** [13] - 3:23, 9:3, 10:7, 16:23,

dar

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 74 of 85
RECEIVED NYSCEF: 01/25/2022

2

22:3, 39:3, 41:4,
54:10, 57:11, 58:7,
60:1, 61:10, 61:21
**arguments** [3] - 8:4,
17:25, 39:7
**arising** [1] - 52:5
**arrangement** [1] -
47:16
**article** [4] - 6:24,
63:16, 63:18, 63:22
**Asia** [1] - 5:16
**ASIA** [1] - 1:2
**aspect** [1] - 67:2
**aspects** [2] - 45:12,
55:12
**asserting** [1] - 25:5
**assertion** [1] - 22:25
**assess** [2] - 5:1, 5:2
**assessment** [1] -
13:16
**asset** [19] - 6:22, 8:16,
8:25, 14:13, 14:14,
17:4, 17:10, 17:12,
17:21, 20:15, 20:21,
22:1, 25:13, 40:10,
41:19, 45:1, 49:4,
66:24
**assets** [18] - 10:4,
11:11, 32:10, 36:23,
36:24, 37:3, 48:8,
48:24, 51:10, 51:17,
53:24, 61:19, 62:6,
63:1, 66:1, 66:12,
66:18
**assignee** [1] - 22:5
**associated** [1] - 10:22
**assume** [4] - 11:21,
11:24, 22:25, 32:8
**assumed** [1] - 18:17
**assumes** [1] - 57:21
**assuming** [2] - 32:12,
57:10
**assurances** [1] -
68:22
**assure** [1] - 65:9
**attach** [2] - 6:24,
54:17
**attached** [1] - 65:3
**attempt** [1] - 24:20
**attempted** [1] - 24:2
**attests** [1] - 23:19
**attorney** [9] - 43:25,
46:20, 46:21, 47:7,
53:5, 57:24, 58:2,
59:11
**attorney's** [1] - 47:5
**Attorney's** [1] - 48:19
**attorney-client** [6] -
46:20, 47:7, 53:5,
57:24, 58:2, 59:11

**Attorneys** [5] - 1:19,
1:22, 2:4, 2:8, 2:13
**attorneys** [4] - 47:6,
47:8, 47:10, 68:14
**attorneys's** [1] - 47:4
**authenticate** [2] - 9:25
**authorities** [1] - 5:15
**authority** [2] - 6:20,
17:16
**available** [4] - 14:25,
33:12, 40:9, 60:5
**Avenue** [1] - 2:2
**avoid** [1] - 20:22
**aware** [1] - 49:3

**B**

**BACHRACH** [1] - 2:4
**backdrop** [1] - 17:24
**background** [1] - 3:11
**Baker** [2] - 15:9, 43:13
**BAKER** [1] - 2:5
**balance** [1] - 64:6
**bank** [6] - 7:15, 35:7,
36:11, 43:1, 62:12,
62:14
**banking** [1] - 55:4
**BARROW** [1] - 2:7
**BARRY** [1] - 1:14
**based** [6] - 9:12,
21:13, 24:1, 36:14,
64:17, 66:19
**basis** [7] - 19:5, 36:25,
40:16, 49:2, 58:6,
58:15, 61:22
**became** [1] - 65:5
**become** [1] - 47:1
**beginning** [1] - 36:20
**behalf** [7] - 3:19, 4:2,
48:8, 51:11, 51:12,
66:9, 69:5
**behavior** [1] - 13:11
**behind** [1] - 35:2
**belatedly** [1] - 12:23
**belied** [1] - 65:2
**believes** [3] - 14:23,
36:14, 66:11
**belong** [1] - 62:15
**bench** [3] - 34:2, 34:3,
70:23
**beneficial** [10] - 8:16,
8:22, 9:2, 17:14,
17:19, 23:24, 24:5,
25:15, 29:9, 49:23
**Beneficial** [2] - 25:20,
26:9
**beneficially** [5] - 5:6,
6:21
**benefit** [1] - 24:25
**best** [5] - 40:9, 44:14,

58:12, 58:15, 70:22
**between** [12] - 5:13,
24:2, 38:9, 41:2,
41:23, 44:24, 45:4,
46:3, 56:3, 63:6,
69:2, 69:9
**beyond** [2] - 39:16,
57:1
**big** [1] - 52:3
**bills** [1] - 42:13
**binding** [1] - 58:22
**boat** [24] - 6:10, 6:16,
6:24, 7:3, 7:6, 7:20,
8:5, 11:19, 11:22,
18:11, 18:19, 19:15,
19:20, 19:23, 20:2,
20:10, 24:10, 24:11,
25:18, 25:19, 26:14,
28:8, 29:3, 32:14
**boat's** [1] - 23:18
**Bondi** [3] - 55:8, 59:2,
59:3
**Bondon** [1] - 48:20
**book** [3] - 34:1, 34:4,
34:6
**Bossin** [1] - 55:8
**bought** [1] - 6:16
**box** [1] - 68:11
**Brad** [1] - 48:20
**breach** [1] - 59:24
**break** [2] - 15:3, 50:24
**brief** [12] - 5:5, 8:19,
18:23, 25:9, 26:21,
27:11, 29:6, 35:3,
40:24, 58:21, 61:12,
63:4
**briefed** [1] - 17:11
**briefing** [2] - 3:9,
28:21
**briefings** [1] - 5:4
**briefly** [4] - 3:11, 5:7,
24:21, 35:9
**briefs** [1] - 3:10
**bring** [2] - 10:4, 47:7
**brings** [1] - 10:6
**broad** [2] - 41:20, 54:3
**brought** [1] - 12:16
**bulk** [1] - 4:20
**burden** [5] - 11:25,
20:1, 23:24, 39:14,
57:18
**business** [6] - 22:2,
35:11, 36:16, 36:25,
38:6, 49:17
**buy** [1] - 6:19
**buys** [1] - 5:18
**BVI** [3] - 5:21, 14:12,
21:5
**BY** [5] - 1:18, 1:21,
2:3, 2:7, 2:11

**C**

**Cahill** [61] - 3:8, 3:22,
43:18, 43:24, 44:5,
44:8, 44:12, 44:22,
45:5, 46:4, 46:5,
46:8, 46:12, 47:2,
47:12, 47:15, 47:23,
48:2, 48:3, 48:11,
48:12, 48:16, 49:2,
49:5, 49:7, 49:11,
49:12, 49:15, 50:1,
52:3, 52:24, 53:1,
53:2, 53:11, 53:22,
54:24, 55:7, 56:5,
56:11, 57:4, 57:8,
57:13, 57:14, 58:2,
58:3, 58:4, 59:2,
59:13, 60:12, 62:5,
64:1, 64:3, 67:2,
67:7, 68:6, 68:8,
68:19, 69:24, 70:5
**CAHILL** [1] - 1:20
**Cahill's** [6] - 44:19,
44:24, 46:17, 50:2,
57:25, 59:16
**cannot** [1] - 66:23
**capacity** [1] - 20:3
**Capital** [12] - 2:4, 7:8,
34:23, 35:10, 35:17,
35:25, 36:3, 36:12,
36:22, 37:16, 37:17,
39:9
**captain** [3] - 7:19,
11:8, 23:18
**care** [1] - 22:13
**Carvallo** [1] - 29:15
**carveout** [2] - 66:16,
66:17
**case** [52] - 3:16, 8:23,
12:15, 14:3, 14:9,
17:18, 21:4, 22:16,
24:20, 28:23, 31:24,
39:21, 39:22, 43:13,
45:2, 48:6, 48:17,
49:10, 49:17, 51:5,
51:16, 51:23, 52:4,
52:7, 54:6, 55:12,
57:9, 58:14, 58:17,
58:19, 58:20, 58:21,
58:23, 58:25, 59:3,
59:10, 59:20, 59:24,
60:7, 60:19, 61:15,
62:7, 64:8, 64:14,
64:18, 69:22, 69:25,
70:3, 70:14, 70:16
**cases** [3] - 58:18,
60:8, 60:9
**categories** [1] - 54:3
**caution** [2] - 22:13,

46:8
**center** [1] - 61:14
**centers** [1] - 61:15
**certain** [5] - 23:1,
29:24, 31:2, 58:4,
63:17
**certainly** [2] - 15:13,
52:1
**certainty** [1] - 69:23
**certified** [1] - 71:7
**characterization** [2] -
65:18, 65:23
**Chase** [1] - 38:24
**check** [1] - 10:23
**checking** [1] - 68:11
**Chief** [1] - 48:19
**China** [2] - 21:13, 22:6
**Chinese** [1] - 18:25
**Chirnoid** [3] - 12:13,
12:18, 13:11
**Chirnoid's** [1] - 12:18
**choice** [2] - 57:19,
64:7
**choose** [2] - 6:24,
32:2
**chooses** [1] - 14:19
**choses** [1] - 32:23
**circle** [2] - 47:8, 47:24
**Circuit** [1] - 58:21
**circumstances** [3] -
63:17, 66:9, 67:6
**circumstantial** [1] -
7:17
**circus** [1] - 32:3
**circus-like** [1] - 32:3
**citation** [1] - 27:1
**cite** [2] - 8:24, 63:22
**cited** [5] - 8:19, 17:16,
27:11, 58:20, 64:15
**cites** [1] - 58:18
**City** [1] - 5:18
**civil** [1] - 14:17
**CIVIL** [1] - 1:1
**Clade** [4] - 8:23, 12:9,
12:12, 12:16
**claimed** [1] - 19:10
**claiming** [1] - 16:14
**claims** [2] - 8:5, 60:10
**clammed** [1] - 26:24
**clarification** [3] - 32:5,
42:24, 67:1
**clarify** [2] - 50:23, 66:4
**class** [1] - 30:11
**class-action** [1] -
30:11
**clear** [17] - 4:21, 8:9,
8:10, 8:16, 8:20,
17:8, 18:4, 24:11,
25:13, 26:1, 33:9,

34:14, 61:3, 66:5, 66:13, 66:14, 67:12
**clearly** [1] - 28:7
**client** [18] - 44:4, 44:6, 44:7, 46:20, 46:21, 47:7, 53:5, 56:2, 56:20, 56:23, 57:24, 57:25, 58:2, 59:11, 59:13, 68:17, 69:1
**clients** [1] - 53:1
**close** [9] - 6:17, 12:10, 13:23, 24:15, 36:21, 39:5, 40:11, 48:23, 67:15
**closing** [2] - 5:15, 14:5
**coin** [1] - 64:12
**coincidence** [1] - 27:7
**collaborating** [1] - 67:19
**collateral** [2] - 41:1, 41:13
**colleague** [1] - 30:2
**collection** [2] - 60:19, 61:20
**colloquy** [1] - 30:12
**combine** [1] - 7:17
**combined** [1] - 16:23
**coming** [2] - 59:2, 62:3
**commencement** [1] - 55:9
**comment** [1] - 40:5
**committing** [1] - 59:23
**common** [11] - 6:19, 22:1, 45:4, 46:3, 46:10, 46:15, 46:21, 47:16, 48:16, 52:5, 52:9
**communication** [3] - 11:7, 46:20, 46:22
**communications** [4] - 46:17, 46:19, 47:4, 49:13
**companies** [3] - 36:7, 36:8, 39:18
**company** [4] - 5:9, 7:8, 27:5, 35:12
**compel** [2] - 38:1, 39:25
**compelled** [1] - 37:13
**compelling** [1] - 41:16
**compellingly** [1] - 40:10
**complaint** [5] - 6:23, 6:25, 9:19, 27:9, 27:10
**complete** [3] - 24:22, 24:23, 49:11
**completely** [3] -

21:24, 30:8, 34:14
**completeness** [2] - 26:20, 33:2
**complied** [1] - 17:5
**comply** [4] - 14:12, 14:24, 17:21, 25:5
**component** [1] - 25:19
**conceal** [1] - 36:1
**concedes** [1] - 56:5
**conceivable** [2] - 20:23, 38:6
**concern** [1] - 68:3
**concerned** [2] - 40:5, 67:13, 67:17
**concerning** [3] - 47:13, 48:8, 51:13
**concerns** [3] - 22:7, 22:11, 68:5
**concert** [1] - 66:13
**concluded** [2] - 13:14, 71:5
**conclusion** [1] - 70:6
**conclusively** [1] - 5:6
**concur** [1] - 13:15
**condition** [1] - 46:8
**conditional** [3] - 4:14, 17:6, 18:5
**conduct** [2] - 4:24, 22:21
**conducting** [2] - 34:13, 54:5
**confer** [4] - 30:2, 36:18, 37:2, 37:10
**conference** [2] - 29:21, 36:3
**confidence** [2] - 47:8, 47:22
**confidences** [1] - 47:23
**confidential** [23] - 44:24, 45:9, 46:11, 46:16, 46:20, 47:9, 47:23, 49:9, 49:13, 49:16, 50:1, 53:11, 53:23, 54:2, 54:13, 54:23, 55:25, 56:7, 59:9, 63:13, 64:20, 65:7, 68:10
**confidentiality** [2] - 47:5, 53:20
**confidentially** [2] - 48:11, 52:9
**confirm** [1] - 3:5
**confirmed** [4] - 10:1, 11:13, 42:18, 47:12
**conflate** [1] - 22:11
**conflict** [9] - 56:5, 56:13, 56:16, 56:22, 56:25, 57:2, 68:16, 69:3, 69:6

**conflicts** [1] - 63:19
**confusion** [1] - 12:3
**connection** [5] - 21:14, 38:13, 52:22, 54:25
**consent** [2] - 56:24
**consented** [1] - 56:23
**consents** [1] - 56:23
**consequential** [1] - 41:8
**consider** [2] - 19:12, 31:13
**consideration** [4] - 5:15, 6:8, 27:5, 28:10
**considered** [1] - 33:25
**constitutes** [1] - 20:14
**constitutional** [1] - 47:21
**Construction** [1] - 58:20
**consulted** [1] - 47:17
**contained** [1] - 16:12
**contemporary** [1] - 27:12
**contempt** [10] - 3:5, 4:14, 14:17, 14:22, 15:7, 17:3, 17:8, 17:17, 17:22, 26:18
**contend** [1] - 18:23
**contention** [1] - 18:25
**context** [6] - 26:9, 26:10, 41:5, 42:11, 58:14, 58:17
**continue** [1] - 46:1
**Continued** [2] - 1:23, 2:1
**contract** [2] - 59:24, 69:1
**contrary** [1] - 16:21
**control** [26] - 4:17, 4:25, 6:21, 8:5, 14:3, 14:8, 15:17, 17:4, 17:9, 17:20, 19:6, 20:15, 23:16, 23:17, 23:23, 24:12, 24:13, 24:14, 26:5, 26:7, 28:8, 31:25, 33:15, 34:8, 34:11, 45:15
**controlled** [4] - 4:17, 18:5, 35:17, 35:21
**controlling** [1] - 8:1
**controls** [4] - 5:6, 8:9, 14:13, 49:23
**conversation** [2] - 55:7, 55:11
**conversations** [1] - 65:6
**convincing** [6] - 4:21, 8:11, 17:9, 18:4,

24:11, 26:2
**copy** [1] - 3:2
**corporate** [1] - 53:24
**CORPORATION** [1] - 1:8
**Corporation** [1] - 58:20
**correct** [9] - 26:1, 40:2, 41:15, 44:9, 65:17, 65:19, 67:10, 67:11, 68:11
**correctly** [2] - 28:16, 68:23
**coterminous** [1] - 48:7
**counsel** [23] - 7:19, 10:2, 13:24, 14:7, 16:18, 16:20, 30:3, 34:22, 36:17, 39:2, 39:23, 40:23, 42:17, 45:22, 46:18, 47:13, 51:22, 51:25, 52:16, 57:14, 64:7, 65:11, 68:2
**Counsel** [1] - 57:19
**country** [1] - 52:14
**COUNTY** [1] - 1:1
**couple** [3] - 28:13, 29:4, 70:1
**course** [6] - 11:10, 12:24, 14:7, 15:1, 33:1, 53:22
**COURT** [85] - 1:1, 3:1, 3:13, 3:16, 3:21, 3:25, 15:2, 15:6, 15:10, 15:19, 15:25, 16:4, 16:6, 19:8, 19:16, 19:21, 20:4, 20:6, 22:14, 22:19, 22:21, 23:7, 23:9, 24:25, 25:4, 25:10, 26:12, 26:16, 28:4, 28:12, 28:23, 29:10, 29:16, 29:23, 30:5, 30:12, 30:19, 30:23, 31:6, 31:8, 31:22, 32:13, 32:21, 33:6, 33:10, 33:21, 34:17, 34:25, 35:4, 39:11, 39:16, 40:22, 42:20, 43:2, 43:8, 43:11, 43:22, 44:2, 44:4, 44:8, 44:10, 45:25, 50:11, 50:18, 50:22, 51:21, 51:25, 52:15, 52:19, 54:8, 57:11, 61:4, 61:7, 64:23, 65:11, 65:14, 65:21, 66:4, 67:12, 68:2, 69:17, 70:8, 70:12,

70:21, 71:4
**court** [11] - 9:1, 12:25, 13:7, 13:9, 19:2, 40:1, 45:11, 45:15, 45:19, 66:3, 67:21
**Court** [46] - 1:14, 2:22, 6:23, 7:14, 9:15, 11:16, 13:13, 14:23, 16:16, 17:16, 17:21, 17:23, 17:25, 19:9, 19:12, 19:22, 21:5, 21:24, 22:17, 24:18, 27:13, 29:9, 30:3, 36:4, 37:22, 38:4, 40:9, 42:1, 45:24, 50:12, 50:16, 62:20, 62:22, 62:23, 63:11, 63:20, 64:21, 65:14, 66:20, 66:21, 67:6, 68:10, 70:8, 70:18, 70:19, 71:13
**court's** [1] - 13:6
**Court's** [6] - 4:3, 13:16, 14:1, 14:2, 14:8, 17:6
**courtesy** [1] - 56:19
**Courts** [2] - 13:6, 58:13
**cousin** [2] - 21:11, 21:12
**covered** [1] - 63:7
**covering** [1] - 45:9
**CPLR** [6] - 8:13, 12:17, 17:12, 40:1, 40:3, 41:21
**credited** [1] - 18:10
**creditor** [4] - 8:15, 25:13, 41:6, 41:9
**creditors** [1] - 39:19
**critically** [1] - 13:5
**cross** [8] - 11:23, 31:14, 31:16, 32:15, 32:24, 33:7, 33:13, 34:6
**cross-examination** [5] - 31:14, 32:24, 33:7, 33:13, 34:6
**cross-examine** [1] - 32:15
**cross-examined** [1] - 31:16
**cure** [5] - 56:22, 56:25, 57:2, 63:19, 68:16
**cures** [1] - 69:6
**curiosity** [1] - 19:8
**current** [5] - 19:25, 20:8, 51:12, 56:2, 59:17
**customarily** [1] - 46:9

dar

**D**

**date** [7] - 29:11, 29:16, 29:20, 30:4, 30:13, 30:14, 31:8
**dates** [4] - 30:13, 33:22, 33:23, 33:24
**daughter** [15] - 6:2, 6:5, 8:7, 8:25, 10:20, 11:19, 12:24, 20:19, 21:1, 21:20, 22:7, 22:22, 22:23, 24:4, 27:6
**daughter's** [1] - 24:9
**daughters** [1] - 12:23
**DAVID** [1] - 1:22
**day-to-day** [1] - 49:2
**days** [2] - 29:12, 30:11
**de** [1] - 58:1
**deal** [3] - 29:9, 29:25, 52:3
**dealing** [5] - 13:2, 22:5, 28:24, 28:25, 46:25
**DEBORAH** [2] - 2:22, 71:13
**debtor** [20] - 8:21, 8:25, 12:12, 17:2, 17:13, 35:16, 35:18, 35:19, 35:22, 36:23, 37:4, 39:9, 39:25, 51:17, 51:18, 54:15, 54:18, 54:21, 65:3
**debtor's** [2] - 8:14, 39:15
**debtor-related** [1] - 65:3
**December** [1] - 63:24
**decide** [2] - 6:20, 45:20
**decided** [4] - 6:17, 6:18, 37:22, 50:2
**decides** [1] - 66:21
**decision** [7] - 12:9, 13:7, 38:12, 47:13, 47:19, 66:22
**declare** [1] - 39:24
**declared** [1] - 19:23
**decline** [1] - 32:1
**declined** [1] - 37:8
**deem** [1] - 49:18
**deemed** [2] - 13:3, 34:9
**deep** [1] - 70:24
**Defendant** [4] - 2:8, 17:5, 21:11, 22:5
**Defendant's** [1] - 21:20
**Defendants** [1] - 1:9
**defending** [2] - 30:10,

68:9
**defense** [2] - 58:3, 58:7
**defer** [1] - 51:24
**deficient** [1] - 57:3
**definition** [1] - 20:6
**degrees** [1] - 7:25
**Delaware** [10] - 6:3, 7:5, 7:10, 8:6, 8:8, 9:11, 10:15, 10:22, 35:10, 35:12
**Delaware's** [1] - 27:19
**demand** [1] - 36:25
**demonstrate** [1] - 54:4
**demonstrated** [2] - 39:16, 42:17
**denied** [4] - 42:21, 43:1, 43:2, 43:9
**Department** [7] - 4:19, 4:24, 12:9, 13:6, 57:18, 59:19, 64:15
**deponent** [1] - 31:17
**deponents** [1] - 31:15
**depose** [2] - 11:12, 33:3
**deposed** [1] - 31:19
**deposition** [20] - 26:24, 28:1, 28:2, 28:5, 28:7, 28:9, 30:21, 30:24, 31:11, 31:12, 31:20, 31:22, 32:1, 32:10, 32:11, 32:15, 32:17, 33:2, 33:16, 33:17
**depositions** [5] - 13:12, 30:11, 30:13, 34:10, 34:11
**deprived** [1] - 69:20
**Dept** [1] - 8:24
**described** [1] - 70:25
**descriptions** [2] - 53:25, 54:1
**desire** [1] - 44:12
**detail** [1] - 54:1
**determination** [1] - 17:20
**determine** [2] - 17:4, 65:25
**determined** [1] - 39:11
**devoted** [1] - 49:12
**difference** [2] - 38:17, 69:9
**different** [8] - 39:18, 43:20, 43:21, 52:25, 58:25, 60:10, 60:11
**diligence** [1] - 43:15
**direct** [9] - 31:11, 32:24, 33:5, 33:7, 33:10, 33:11, 33:22, 34:5, 34:7

**directed** [1] - 3:2
**direction** [5] - 16:22, 23:21, 25:6, 27:16, 27:22
**directly** [9] - 26:10, 37:16, 44:7, 44:21, 45:14, 52:4, 56:12, 66:1, 66:2
**director** [3] - 5:13, 35:19, 35:23
**directors** [1] - 7:15
**directs** [1] - 33:20
**disadvantage** [1] - 53:13
**disagree** [2] - 38:7, 65:22
**disclaiming** [1] - 46:9
**disclosed** [1] - 68:12
**disclosing** [1] - 54:1
**disclosure** [2] - 50:3, 55:3
**discovery** [13] - 5:20, 32:18, 32:19, 38:20, 40:21, 41:9, 41:21, 42:5, 48:9, 50:9, 51:8, 54:14, 65:16
**discredit** [1] - 23:6
**discrete** [1] - 55:10
**discretion** [1] - 66:23
**discuss** [1] - 51:23
**discussed** [7] - 25:12, 36:2, 45:23, 51:1, 51:3, 59:6, 59:10
**discusses** [1] - 8:13
**discussions** [1] - 67:20
**disposition** [1] - 67:17
**dispositive** [1] - 59:12
**dispute** [3] - 4:25, 13:8, 15:17
**disqualification** [11] - 52:4, 52:14, 53:8, 53:16, 55:24, 57:13, 57:22, 58:6, 58:14, 68:9, 69:7
**disqualified** [2] - 58:17, 70:5
**disqualify** [2] - 3:22, 43:18
**disqualifying** [1] - 52:23
**disregarded** [2] - 4:14, 4:22
**dissolve** [1] - 4:25
**distinction** [1] - 38:9
**District** [1] - 48:19
**Division** [7] - 15:15, 16:22, 17:3, 34:16, 25:1, 25:6, 28:16
**Division's** [1] - 12:5

**Docket** [4] - 6:14, 38:25, 69:12
**document** [12] - 9:11, 11:23, 19:22, 21:18, 24:2, 36:16, 37:1, 38:6, 49:10, 51:15, 55:5, 55:12
**Document** [1] - 36:4
**documents** [34] - 9:14, 9:16, 10:5, 10:11, 10:17, 11:3, 11:11, 16:7, 16:24, 20:16, 22:3, 22:15, 32:11, 37:3, 38:2, 41:20, 41:25, 42:1, 48:3, 48:7, 48:13, 48:14, 49:15, 49:16, 50:9, 51:10, 51:11, 51:13, 51:16, 51:18, 51:19, 52:10, 54:4, 65:3
**dollar** [2] - 6:2, 10:25
**dollars** [3] - 26:18, 36:13, 53:3
**done** [4] - 4:13, 56:11, 58:18, 68:20
**double** [1] - 61:10
**doubt** [2] - 13:24, 39:17
**down** [1] - 61:10
**drag** [1] - 66:2
**draw** [1] - 32:1
**drawn** [2] - 13:8, 31:18
**due** [3] - 16:9, 16:10, 52:5
**duly** [1] - 35:10
**during** [3] - 36:17, 39:3, 70:13
**duties** [1] - 43:25
**duty** [5] - 44:7, 44:20, 44:23, 47:5, 52:5

**E**

**e-mail** [4] - 7:15, 10:2, 10:24, 11:23
**e-mails** [1] - 46:24
**early** [2] - 4:19, 36:4
**easily** [1] - 53:4
**economy** [1] - 69:23
**EDWARD** [1] - 1:21
**Edward** [2] - 3:8, 57:15
**effect** [1] - 12:24
**effective** [1] - 56:25
**effectively** [2] - 36:22, 38:15
**effort** [4] - 20:21, 37:6, 38:5, 48:23

**efforts** [5] - 38:15, 45:2, 49:18, 54:5, 60:19
**eight** [1] - 39:17
**either** [9] - 16:17, 45:23, 51:6, 53:10, 53:11, 53:12, 55:24, 55:25, 65:16
**element** [5] - 53:5, 53:8, 53:9, 53:17, 53:18
**elements** [2] - 63:9, 63:10
**employee** [5] - 6:11, 19:4, 26:23, 26:25, 35:25
**employees** [4] - 5:14, 7:14, 10:18, 22:2
**employer** [1] - 18:24
**encrypted** [1] - 49:13
**end** [3] - 29:14, 29:22, 53:18
**ended** [1] - 55:5
**ends** [2] - 27:6, 29:20
**enforce** [2] - 38:5, 61:9, 61:18
**enforcement** [5] - 45:2, 49:4, 54:5, 65:2, 65:17
**engage** [1] - 44:21
**engaged** [2] - 44:7, 44:8
**enjoyed** [1] - 24:9
**Enriquez** [1] - 35:24
**entered** [1] - 12:14
**entirely** [2] - 12:7, 58:25, 67:7
**entities** [18] - 4:16, 21:15, 49:17, 49:22, 49:24, 50:4, 50:7, 51:1, 51:3, 51:6, 51:14, 51:20, 54:18, 54:19, 54:20, 54:21, 60:25
**entitled** [2] - 10:5, 41:9
**entity** [13] - 7:6, 18:12, 18:15, 18:18, 21:6, 21:7, 21:21, 21:25, 39:23, 41:10, 51:1, 54:16, 65:4
**entrust** [1] - 47:9
**environment** [2] - 22:8, 22:12
**equities** [1] - 64:7
**equity** [1] - 6:6
**erected** [1] - 57:3
**ERICA** [1] - 2:7
**erroneously** [1] - 19:23

**ESQ** [11] - 1:18, 1:21, 1:22, 2:3, 2:4, 2:7, 2:7, 2:8, 2:11, 2:12, 2:12

**essence** [1] - 47:4

**essentially** [6] - 24:3, 36:6, 36:17, 37:9, 38:16, 59:20

**establish** [4] - 18:10, 24:4, 56:6, 57:21

**established** [9] - 4:21, 5:5, 18:7, 24:19, 35:9, 35:24, 44:19, 45:2, 57:7

**establishes** [1] - 25:17

**establishing** [3] - 19:5, 24:8, 53:5

**estoppel** [2] - 41:1, 41:13

**ethical** [3] - 56:6, 63:19, 63:21

**ethics** [1] - 43:14

**evade** [1] - 39:18

**event** [1] - 60:12

**evidence** [23] - 4:21, 5:8, 6:13, 7:17, 8:3, 8:11, 9:5, 9:9, 11:25, 17:9, 18:4, 18:21, 20:13, 23:22, 24:11, 26:2, 29:2, 40:9, 40:14, 40:17, 40:20, 42:8

**evidentiary** [18] - 9:4, 9:6, 10:7, 11:15, 12:4, 12:5, 13:1, 15:12, 15:16, 23:11, 24:23, 25:1, 25:2, 33:18, 33:25, 34:2, 61:25, 64:10

**exact** [2] - 41:12, 48:9

**exactly** [1] - 68:15

**examination** [5] - 31:14, 32:24, 33:7, 33:13, 34:6

**examine** [1] - 32:15

**examined** [1] - 31:16

**example** [1] - 6:13

**examples** [1] - 54:16

**except** [2] - 21:19, 34:2

**exceptional** [1] - 70:22

**excuse** [2] - 10:15, 34:19

**execute** [1] - 68:19

**exercise** [1] - 32:3

**Exhibit** [5] - 18:14, 18:17, 19:1, 21:7

**exhibit** [3] - 34:1,

34:4, 34:6

**exhibits** [5] - 18:2, 18:7, 18:9, 33:24, 34:5

**existed** [1] - 45:4

**existence** [1] - 46:15

**existing** [1] - 40:15

**exists** [1] - 53:10

**expecting** [1] - 3:22

**expense** [1] - 41:8

**expenses** [4] - 39:5, 41:7, 41:10, 42:14

**experience** [1] - 69:21

**expert** [2] - 43:14, 58:9

**explain** [3] - 16:1, 27:4, 56:13

**express** [1] - 43:23

**expressed** [1] - 15:16

**extensive** [4] - 55:18, 56:7, 68:8, 69:21

**extensively** [1] - 56:7

**extent** [3] - 19:18, 24:18, 35:7

**extraordinarily** [1] - 23:5

**extraordinary** [1] - 67:6

### F

**face** [3] - 8:3, 22:12, 59:21

**facie** [5] - 4:16, 22:16, 23:23, 24:19, 26:6

**facing** [1] - 22:6

**fact** [15] - 13:15, 13:19, 14:14, 21:19, 21:24, 22:4, 39:15, 42:9, 47:15, 52:3, 53:2, 53:16, 57:1, 58:24, 70:1

**facto** [1] - 58:1

**factor** [1] - 19:12

**facts** [9] - 8:8, 24:8, 39:22, 44:15, 44:18, 44:19, 45:10, 52:6, 60:10

**factual** [3] - 16:23, 17:25, 21:14

**failed** [1] - 25:5

**fails** [3] - 26:18, 28:8, 28:9

**failure** [1] - 14:12

**fair** [1] - 68:21

**faith** [1] - 37:6

**fall** [1] - 49:19

**famed** [2] - 13:15, 13:19

**familiar** [1] - 13:7

**family** [2] - 22:7, 24:13

**fantastic** [1] - 27:7

**far** [4] - 41:3, 59:8, 68:20, 68:24

**Far** [1] - 27:11

**favor** [1] - 37:23

**favors** [1] - 52:14

**Featured** [1] - 27:11

**February** [12] - 29:14, 29:21, 30:8, 30:9, 30:18, 30:24, 31:2, 31:3, 31:8, 32:23, 71:2

**fees** [3] - 7:7, 42:19, 53:3

**few** [2] - 7:21, 64:25

**fiduciary** [6] - 44:7, 44:20, 44:23, 46:9, 46:16, 52:5

**field** [1] - 58:9

**Fifth** [12] - 10:1, 11:10, 13:21, 26:25, 32:6, 32:20, 32:21, 47:14, 47:19, 49:19, 50:3, 58:21

**figure** [1] - 8:1

**file** [3] - 14:17, 37:13, 69:11

**filed** [6] - 6:22, 9:19, 19:2, 19:22, 20:20, 68:10

**filing** [1] - 19:9, 21:7, 69:14

**filings** [1] - 5:21, 10:13, 67:21

**finally** [3] - 13:22, 14:21, 64:6

**financial** [4] - 36:16, 37:1, 38:6, 55:4

**financials** [1] - 53:24

**firm** [18] - 12:15, 15:9, 30:13, 37:17, 43:18, 43:19, 43:24, 44:5, 44:14, 44:23, 45:20, 46:5, 50:6, 52:5, 52:21, 53:2, 63:21

**firm's** [2] - 43:24, 44:12

**firms** [2] - 46:8, 52:8

**First** [8] - 4:19, 4:24, 8:23, 12:9, 13:5, 57:18, 59:18, 64:14

**first** [16] - 3:4, 8:5, 9:9, 19:24, 25:11, 25:22, 28:15, 29:22, 36:18, 45:4, 53:4, 53:20, 55:2, 57:8, 57:23, 65:1

**five** [4] - 29:6, 63:11, 64:8, 64:23

**flags** [1] - 70:2

**flat** [1] - 14:4

**flees** [1] - 5:16

**focus** [2] - 38:8, 38:11

**focused** [1] - 58:19

**follow** [4] - 14:1, 14:16, 14:19, 53:10

**followed** [1] - 13:25

**following** [1] - 45:3

**forced** [1] - 14:16

**foreclosed** [2] - 32:10, 32:19

**foregoing** [1] - 71:7

**forgive** [1] - 23:11

**form** [6] - 33:21, 33:24, 46:23, 65:16, 65:23, 67:19

**formed** [2] - 6:3, 35:10

**former** [5] - 48:18, 52:23, 53:1, 56:2, 56:20

**forms** [1] - 5:9

**four** [2] - 3:4, 37:18

**fours** [1] - 12:10

**frank** [1] - 15:22

**FRANKFURT** [1] - 2:10

**Frankfurt** [3] - 12:15, 43:19, 52:21

**fraud** [1] - 59:23

**fraught** [1] - 13:10

**free** [3] - 30:8, 32:14

**Friday** [1] - 14:16

**friends** [1] - 7:4

**front** [2] - 20:9, 62:20

**frustration** [4] - 40:6, 70:24

**fulfilled** [1] - 53:15

**full** [3] - 18:11, 18:19, 23:11

**fully** [2] - 14:13, 68:3

**FUND** [1] - 1:2

**fundamental** [1] - 42:9

**funded** [2] - 12:20, 39:9

**funding** [5] - 36:6, 41:7, 41:10, 42:11, 42:12

**funds** [5] - 21:9, 21:16, 36:12, 38:23, 39:15

**Funds** [3] - 5:10, 18:13, 21:21

### G

**game** [1] - 36:15

**gamesmanship** [5] - 64:13, 64:16, 64:17, 64:18, 70:14

**general** [1] - 53:25

**generally** [1] - 21:9

**Geneva** [1] - 5:19

**GENEVER** [2] - 1:7, 1:8

**Genova** [3] - 7:24, 7:25, 14:12

**gentleman** [1] - 12:12

**given** [3] - 24:18, 29:19, 41:2

**Glid** [4] - 8:23, 12:9, 12:12, 12:16

**globe** [1] - 11:6

**Golden** [26] - 7:4, 11:2, 11:4, 36:9, 36:12, 36:21, 38:1, 38:9, 38:13, 38:14, 38:17, 38:22, 38:24, 39:4, 39:7, 40:10, 40:11, 41:3, 41:5, 41:7, 41:11, 41:16, 41:18, 41:24, 42:10, 42:11

**Gordon** [5] - 44:5, 44:22, 52:24, 57:13, 57:14

**GORDON** [1] - 1:20

**governed** [1] - 17:7

**government** [6] - 44:25, 47:16, 48:18, 48:22, 59:22, 61:13

**governs** [1] - 17:12

**grant** [2] - 40:13, 70:6

**granted** [1] - 13:8

**granting** [1] - 57:12

**ground** [2] - 37:7, 63:2

**Groundhog** [1] - 31:4

**groundwork** [1] - 61:17

**group** [1] - 58:3

**GTV** [77] - 2:13, 43:20, 48:1, 52:21, 53:2, 53:13, 53:22, 54:2, 54:15, 54:21, 54:24, 55:9, 55:21, 56:11, 56:12, 56:13, 56:14, 56:16, 56:17, 56:18, 56:23, 57:17, 58:3, 59:2, 59:12, 59:13, 59:14, 59:17, 59:22, 60:1, 60:6, 60:13, 60:21, 60:23, 61:1, 61:10, 61:14, 61:16, 61:17, 61:19, 61:23, 62:10, 62:14, 62:15, 62:19, 62:21, 62:25, 63:6, 63:9, 63:13, 64:1, 64:2, 64:21, 65:2, 65:4, 65:10, 65:12, 65:15, 66:2,

66:10, 66:12, 66:13, 66:16, 66:18, 66:25, 67:19, 67:25, 68:17, 68:21, 69:5, 70:4, 70:7
**GTV's** [7] - 49:15, 51:22, 51:25, 52:16, 53:24, 61:19, 64:5
**GUE** [1] - 1:7
**guess** [2] - 11:3, 45:18
**GUI** [1] - 1:6
**guidance** [1] - 45:24
**Guo** [9] - 18:16, 18:22, 20:19, 21:12, 21:19, 23:19, 27:24, 35:15
**GUO** [4] - 1:6, 1:7, 18:17
**Guo's** [2] - 36:2, 48:23
**guy** [1] - 48:17
**Guy** [2] - 48:25, 49:20
**GWO** [1] - 1:6

# H

**half** [1] - 50:13
**handle** [1] - 55:10
**handled** [1] - 68:23
**handling** [1] - 57:16
**hands** [1] - 65:8
**HAOYUN** [2] - 1:7, 1:7
**happy** [4] - 3:24, 11:15, 16:8, 16:9
**hard** [1] - 8:1
**hardly** [2] - 20:21, 22:1
**harmony** [1] - 31:2
**Hasland** [3] - 27:15, 28:7
**Hasland's** [1] - 28:2, 28:4
**hear** [20] - 3:5, 7:8, 10:10, 11:17, 11:18, 15:2, 15:6, 22:19, 30:16, 31:4, 34:24, 40:22, 51:22, 51:25, 52:16, 52:17, 52:18, 54:7, 57:14, 64:23
**heard** [6] - 16:1, 24:21, 35:15, 42:20, 50:11, 60:22
**hearing** [52] - 3:1, 4:25, 9:4, 9:6, 10:8, 11:15, 12:4, 12:6, 13:2, 13:3, 13:16, 13:20, 15:12, 15:16, 15:21, 15:24, 16:2, 16:4, 16:8, 16:10, 18:1, 22:21, 22:22, 22:24, 23:9, 23:10, 24:19, 24:23, 25:1,

25:2, 28:1, 28:9, 28:21, 29:7, 29:9, 29:11, 29:17, 31:5, 31:9, 31:16, 32:23, 33:18, 33:20, 33:25, 34:3, 34:12, 40:8, 41:6, 41:11, 61:25, 64:10
**hearsay** [3] - 19:14, 19:16, 24:8
**heavy** [1] - 57:18
**height** [1] - 47:21
**held** [5] - 28:17, 36:18, 48:8, 51:10, 51:12
**hereby** [1] - 71:7
**herself** [2] - 12:25, 31:14
**hide** [1] - 66:18
**high** [1] - 67:13
**highest** [2] - 66:6, 66:7
**highway** [1] - 37:9
**himself** [1] - 31:13
**history** [1] - 64:17
**HK** [2] - 21:21, 23:19
**HK's** [1] - 21:23
**HKI** [1] - 5:11
**HO** [2] - 1:6
**Ho** [1] - 2:8
**hold** [5] - 9:4, 9:6, 14:22, 24:23, 24:25
**HOLDINGS** [2] - 1:8, 1:8
**holds** [2] - 7:6, 24:18
**Hong** [29] - 5:9, 5:11, 5:19, 5:21, 5:25, 6:3, 6:7, 7:5, 7:10, 8:6, 8:7, 9:10, 9:13, 9:16, 10:14, 10:19, 10:22, 11:1, 18:12, 19:2, 27:16, 27:19, 27:20
**Honor** [116] - 3:7, 3:9, 3:15, 3:18, 3:24, 4:1, 4:9, 4:11, 4:13, 5:3, 5:7, 5:21, 6:14, 7:1, 7:3, 7:18, 7:22, 8:8, 9:5, 9:15, 9:17, 9:24, 9:25, 10:8, 11:9, 11:17, 11:24, 12:3, 12:7, 12:22, 13:5, 13:18, 13:22, 14:2, 14:10, 14:15, 14:20, 14:23, 15:8, 15:13, 15:22, 16:15, 16:19, 19:19, 19:24, 20:12, 22:15, 23:15, 23:16, 25:3, 25:7, 25:14, 25:23, 26:5, 27:24, 28:11, 28:13, 28:20, 29:4, 30:10, 30:17,

30:20, 31:1, 31:7, 31:20, 34:15, 34:16, 34:21, 35:1, 35:5, 35:9, 37:16, 38:3, 38:7, 38:10, 39:6, 39:13, 39:20, 40:8, 40:12, 40:18, 41:4, 41:12, 41:17, 42:10, 42:15, 43:3, 43:15, 44:17, 44:20, 46:22, 49:7, 50:5, 55:6, 57:15, 57:17, 58:8, 58:22, 58:25, 60:6, 60:12, 60:20, 61:21, 62:4, 62:9, 62:18, 62:23, 64:6, 64:12, 64:22, 65:19, 67:23, 68:1, 70:9, 70:10
**Honor's** [3] - 4:20, 9:7, 40:6
**HONORABLE** [1] - 1:14
**hoops** [1] - 28:6
**hope** [1] - 22:10
**hoping** [1] - 3:22
**HOSTETLER** [1] - 2:5
**Hostetler** [2] - 15:9, 43:13
**hour** [2] - 50:13, 61:25
**hours** [2] - 6:14, 70:14
**huge** [1] - 65:24
**human** [1] - 27:17
**husband** [1] - 21:10
**hybrid** [1] - 23:24
**Hyland** [4] - 43:19, 52:20, 60:14, 62:11
**HYLAND** [10] - 2:11, 52:18, 52:20, 54:9, 65:13, 65:18, 65:20, 65:22, 68:3, 70:9
**Hyland's** [1] - 12:15

# I

**idea** [1] - 65:1
**identical** [2] - 48:7, 59:19
**identified** [2] - 54:15, 61:2
**identifies** [1] - 21:16
**identify** [2] - 51:10, 51:12
**implicitly** [1] - 56:5
**implied** [2] - 44:6, 63:20
**important** [5] - 10:20, 37:5, 38:8, 38:17, 43:25
**importantly** [1] - 62:9
**imposed** [1] - 46:8

**inadmissible** [3] - 9:5, 19:13, 24:7
**inadvertently** [1] - 68:12
**inappropriate** [1] - 68:25
**inception** [1] - 57:7
**incident** [1] - 55:8
**including** [1] - 11:12, 22:7, 46:4, 67:19, 67:20, 67:21
**incorrect** [1] - 44:15
**incorrectly** [1] - 68:10
**incredibly** [1] - 61:13
**indeed** [1] - 44:20
**Index** [1] - 1:10
**indicate** [2] - 42:2, 45:17
**indicated** [4] - 25:2, 29:6, 36:10, 54:9
**indication** [1] - 42:3
**indirect** [2] - 36:2, 66:2
**indirectly** [1] - 65:25
**individuals** [3] - 31:18, 34:8, 34:10
**inference** [1] - 10:5
**inferences** [3] - 31:17, 32:2, 32:8
**Infinity** [4] - 35:12, 35:14, 35:21, 35:23
**information** [50] - 35:8, 37:4, 46:11, 47:9, 49:9, 50:1, 50:10, 53:11, 53:23, 54:2, 54:3, 54:14, 54:21, 54:23, 55:4, 55:13, 55:14, 55:18, 56:1, 56:8, 58:4, 59:9, 60:3, 60:4, 60:5, 60:18, 60:21, 60:22, 60:23, 60:24, 61:8, 62:6, 62:12, 62:17, 63:13, 63:25, 64:2, 64:5, 64:20, 65:8, 66:19, 67:22, 68:8, 68:11, 68:12, 68:15, 69:11, 69:13
**informed** [2] - 21:23, 55:13
**input** [1] - 56:18
**inquires** [1] - 23:13
**insofar** [1] - 67:16
**instance** [1] - 41:17
**instant** [1] - 37:21
**instantly** [1] - 38:10
**instead** [2] - 4:10, 34:3
**institutional** [1] - 64:9
**instructs** [1] - 11:8

**integrity** [2] - 66:7, 69:19
**intend** [2] - 15:13, 16:16
**intended** [1] - 67:9
**intent** [1] - 56:17
**intention** [2] - 45:14, 45:22
**interconnection** [1] - 41:2
**interest** [21] - 8:14, 8:16, 8:22, 9:2, 12:18, 12:19, 17:14, 24:5, 25:15, 45:4, 46:3, 46:10, 46:15, 46:21, 47:16, 49:23, 52:6, 52:10, 64:13, 64:16, 69:23
**Interest** [2] - 25:21, 26:9
**interested** [1] - 9:15
**interesting** [1] - 42:7
**interestingly** [1] - 26:3
**interests** [1] - 17:19
**intermittently** [2] - 47:18, 49:1
**internal** [1] - 13:9
**internally** [2] - 69:10, 69:16
**International** [19] - 5:10, 5:11, 5:19, 5:22, 5:25, 6:3, 6:7, 7:5, 9:11, 10:14, 10:15, 10:19, 10:22, 11:1, 18:13, 21:21, 23:19, 27:16, 27:20
**International's** [2] - 9:10, 27:19
**Internet** [1] - 60:5
**interrupt** [3] - 29:24, 61:4, 61:7
**interrupted** [1] - 68:2
**intervene** [2] - 52:22, 57:12
**Intervenor** [1] - 2:13
**Intervenor-Movant** [1] - 2:13
**introduce** [1] - 16:8
**invasive** [1] - 40:21
**invest** [1] - 47:6
**investigation** [1] - 59:22
**investigations** [4] - 45:1, 47:17, 48:18, 61:13
**Investments** [3] - 5:10, 18:13, 21:21
**investor** [2] - 12:20, 59:23
**invitation** [1] - 49:20

dar

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 79 of 85
RECEIVED NYSCEF: 01/25/2022

7

**invoke** [4] - 32:6, 47:13, 47:19, 50:2
**invoked** [1] - 26:25
**invoking** [1] - 10:1
**involved** [9] - 3:16, 47:18, 49:1, 55:2, 60:10, 65:5, 67:2, 67:24, 69:24
**involvement** [1] - 29:3
**involving** [1] - 50:7
**ironically** [1] - 12:14
**irrelevant** [1] - 24:5
**irrespective** [1] - 66:11
**issue** [30] - 13:17, 16:19, 16:20, 17:11, 17:13, 17:14, 17:17, 17:19, 23:16, 24:6, 26:5, 27:12, 28:15, 28:17, 29:13, 30:1, 31:24, 33:21, 37:22, 43:25, 47:1, 48:16, 53:20, 53:21, 54:25, 55:21, 63:22, 66:21, 67:16, 70:12
**issued** [1] - 7:23
**issues** [14] - 13:15, 13:19, 17:23, 26:19, 29:24, 43:20, 44:1, 49:3, 50:7, 50:9, 55:10, 59:19, 69:21
**issuing** [1] - 70:24
**Italy** [2] - 7:24, 7:25
**items** [1] - 61:5
**itself** [2] - 65:24, 68:9

**J**

**Janover** [1] - 37:17
**January** [3] - 1:11, 5:5, 41:23
**JANUSZEWSKI** [1] - 1:22
**JEREMY** [1] - 2:4
**JESSE** [1] - 2:12
**John** [2] - 15:9, 43:12
**JOHN** [1] - 2:7
**joined** [2] - 57:4, 64:3
**joins** [1] - 44:14
**joint** [3] - 34:1, 58:3, 58:7
**jointing** [1] - 55:20
**JP** [1] - 38:24
**Judge** [2] - 61:11, 63:7
**judgment** [28] - 8:14, 8:15, 8:21, 8:25, 12:12, 12:13, 17:2, 17:12, 20:22, 25:13, 35:16, 35:18, 35:19,

35:22, 36:23, 37:4, 39:9, 39:15, 39:24, 41:6, 41:9, 45:2, 54:4, 61:18, 61:20, 65:2, 67:14
**judicata** [2] - 41:1, 41:14
**judicial** [4] - 9:16, 9:20, 19:17, 69:23
**Judicial** [2] - 17:7, 25:17
**judicially** [1] - 10:12
**jump** [1] - 28:6
**jurisdiction** [8] - 4:4, 4:5, 31:10, 31:17, 31:23, 31:25, 32:16, 33:14
**Justice** [1] - 1:14
**justifies** [1] - 40:20

**K**

**keep** [2] - 40:24, 60:7
**keeping** [1] - 48:22
**key** [2] - 58:19, 58:24
**kind** [2] - 39:14, 70:18
**KLEIN** [1] - 2:10
**Klein** [1] - 52:21
**KLINGER** [1] - 2:12
**knowledge** [3] - 26:3, 64:9, 69:21
**known** [1] - 45:8
**knows** [2] - 14:15, 41:7
**Kong** [2] - 5:9, 5:11, 5:19, 5:22, 5:25, 6:3, 6:7, 7:5, 7:10, 8:6, 8:7, 9:10, 9:11, 9:13, 9:16, 10:14, 10:15, 10:19, 10:22, 11:1, 18:12, 19:2, 27:16, 27:19, 27:20
**Korn** [1] - 8:19
**Kurnit** [3] - 12:15, 43:19, 52:21
**KURNIT** [1] - 2:10
**KWOK** [3] - 1:6, 1:7
**Kwok** [101] - 2:8, 3:6, 4:3, 4:13, 4:17, 4:21, 5:6, 5:9, 5:17, 6:9, 6:22, 8:3, 9:19, 9:22, 10:1, 10:2, 10:20, 11:10, 13:20, 13:25, 14:7, 14:22, 16:9, 17:9, 18:4, 18:7, 18:10, 18:19, 18:23, 19:7, 19:22, 20:22, 21:17, 22:16, 23:21, 24:8, 24:15, 26:2, 26:13, 26:22, 27:4,

28:25, 29:2, 32:6, 32:13, 32:22, 35:16, 36:23, 36:24, 37:4, 38:21, 39:3, 39:8, 39:17, 40:11, 41:8, 43:13, 44:4, 44:21, 44:23, 44:25, 45:5, 46:4, 46:10, 46:12, 46:18, 47:3, 48:1, 48:2, 48:8, 48:18, 48:21, 49:14, 49:22, 49:25, 50:6, 51:11, 51:13, 51:17, 51:18, 53:1, 57:17, 57:24, 58:1, 58:3, 58:18, 58:23, 59:12, 59:23, 59:25, 61:10, 61:12, 62:13, 62:15, 63:9, 66:1, 66:11, 66:17, 66:24, 67:4, 70:4
**Kwok's** [40] - 6:1, 6:4, 6:5, 7:7, 7:19, 9:3, 9:21, 10:7, 10:20, 11:18, 13:24, 14:6, 14:11, 14:15, 16:25, 18:2, 19:9, 20:11, 20:19, 22:22, 22:23, 24:4, 25:18, 27:6, 38:15, 41:10, 42:12, 42:17, 42:19, 43:17, 47:13, 48:11, 49:8, 49:15, 49:16, 49:19, 58:21, 61:14, 62:13

**L**

**L.P** [1] - 1:2
**labeled** [1] - 46:19
**lack** [2] - 23:23, 59:11
**lackey** [2] - 6:1, 20:11
**Lady** [5] - 5:7, 18:8, 20:18, 21:6, 21:15
**Lamb** [1] - 2:4
**Lamb's** [1] - 36:23
**Lamp** [26] - 7:8, 34:23, 35:10, 35:17, 35:20, 35:25, 36:3, 36:6, 36:12, 36:15, 36:16, 36:20, 36:22, 37:1, 37:16, 37:17, 38:6, 38:14, 38:15, 38:16, 39:9, 41:2, 41:16, 41:24, 42:6, 42:18
**language** [1] - 12:4
**large** [2] - 38:1, 63:21
**last** [13] - 3:1, 4:8, 13:23, 14:5, 14:16, 21:18, 21:24, 29:18, 37:25, 38:9, 38:12, 40:8, 62:7

**Last** [2] - 38:19, 40:5
**late** [3] - 7:1, 36:18, 57:4
**laterally** [1] - 44:14
**latest** [1] - 13:10
**law** [7] - 15:9, 17:18, 40:2, 47:6, 51:23, 52:7, 52:15
**Law** [5] - 8:16, 17:7, 25:17, 58:6, 58:11
**lawful** [2] - 4:22, 26:2
**lawyer** [10] - 7:13, 11:13, 21:13, 21:23, 27:20, 49:1, 52:23, 58:17, 59:1, 59:2
**lawyers** [7] - 46:23, 48:21, 49:5, 56:1, 68:6, 68:14, 69:2
**laying** [2] - 61:17, 63:2
**layout** [2] - 53:25, 54:3
**leading** [1] - 58:9
**league** [2] - 60:3, 60:4
**leak** [1] - 65:7
**learned** [2] - 59:4
**least** [1] - 56:15
**leave** [1] - 43:4
**Lee** [1] - 21:23
**left** [3] - 42:8, 42:16, 65:24
**legal** [19] - 7:7, 7:11, 8:12, 8:17, 8:21, 15:14, 16:19, 16:20, 17:16, 17:23, 20:2, 24:15, 28:15, 28:21, 42:13, 42:17, 42:19, 43:25, 53:3
**legit** [1] - 64:16
**legitimate** [1] - 64:13
**lengthy** [1] - 55:7
**less** [2] - 13:19, 41:16
**letter** [2] - 7:13, 36:4
**Levine** [5] - 34:22, 40:25, 41:22, 42:7, 42:16
**LEVINE** [10] - 2:3, 34:21, 35:1, 35:5, 39:13, 39:20, 42:23, 43:3, 43:10, 50:14
**Levine's** [1] - 34:19
**levy** [4] - 8:15, 25:13, 25:16, 25:18
**levying** [2] - 9:1, 26:10
**Lexington** [1] - 2:2
**Liberty** [1] - 2:10
**licensed** [1] - 35:10
**lifestyle** [1] - 42:12
**Lijie** [1] - 21:12
**likely** [2] - 49:18, 68:13
**Limited** [4] - 5:10,

18:13, 21:8, 21:22
**limited** [1] - 57:12
**line** [2] - 45:16, 67:15
**list** [4] - 6:17, 51:13, 54:19, 65:4
**listing** [1] - 42:8
**lists** [1] - 65:4
**literally** [3] - 9:10, 11:6, 17:22
**litigation** [9] - 7:7, 12:19, 13:10, 20:20, 20:24, 39:8, 48:15, 49:18, 51:7
**live** [2] - 30:14, 66:22
**lived** [2] - 22:8, 22:9
**living** [1] - 22:11
**LLC** [6] - 1:8, 12:18, 12:19, 12:25, 21:22, 35:10
**LLP** [4] - 1:17, 1:20, 2:2, 2:5
**loaned** [1] - 36:12
**loans** [4] - 42:2, 42:3, 42:4
**locating** [1] - 37:3
**location** [1] - 32:20
**logical** [2] - 20:23, 27:4
**long-time** [2] - 31:3, 64:9
**look** [4] - 14:11, 26:12, 33:8, 69:17
**looks** [3] - 9:23, 25:23, 61:24
**loosely** [2] - 19:14, 24:10
**lower** [1] - 13:9
**Luck** [2] - 21:8, 21:9

**M**

**machinations** [1] - 5:24
**mail** [4] - 7:15, 10:2, 10:24, 11:23
**mails** [1] - 46:24
**maintenance** [1] - 42:14
**majority** [1] - 52:13
**managed** [2] - 35:17, 35:22
**Management** [4] - 35:12, 35:14, 35:21, 35:23
**management** [1] - 36:8
**March** [2] - 29:20, 29:22
**material** [5] - 45:15, 60:18, 61:9, 63:5

dar

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 80 of 85
RECEIVED NYSCEF: 01/25/2022

8

**materials** [1] - 49:16
**matter** [7] - 14:18, 27:4, 29:25, 38:13, 47:1, 48:17, 54:15
**matters** [5] - 52:11, 53:14, 53:19, 56:3, 59:21
**Matthew** [1] - 34:22
**MATTHEW** [1] - 2:3
**Mayors** [1] - 64:14
**mean** [4] - 6:19, 11:5, 41:2, 51:3
**meaningful** [2] - 19:6, 38:12
**means** [1] - 59:19
**meat** [1] - 37:2
**Media** [1] - 52:22
**meet** [8] - 36:18, 37:10, 53:4, 57:20, 57:24, 59:14, 60:15, 60:17
**meets** [1] - 8:17
**member** [5] - 24:3, 24:13, 35:13, 59:8
**members** [2] - 22:7, 63:12
**MEMORALIZING** [1] - 70:13
**mention** [5] - 21:6, 27:14, 27:17, 58:24, 61:5
**mentioned** [4] - 11:9, 11:13, 38:18, 41:22
**mer** [1] - 46:22
**mercy** [1] - 45:24
**message** [1] - 10:25
**met** [3] - 11:24, 55:22, 55:25
**Microsoft** [1] - 31:9
**middle** [2] - 11:14, 37:7
**midst** [1] - 20:24
**might** [7] - 11:18, 13:22, 16:13, 25:9, 31:4, 31:18, 59:19
**mildly** [1] - 67:13
**Miles** [9] - 21:10, 21:16, 35:16, 36:23, 36:24, 37:4, 38:21, 39:3, 39:8
**MILES** [1] - 1:7
**miles** [1] - 21:11
**Miles'** [1] - 21:12
**Miller** [1] - 8:19
**million** [5] - 10:25, 12:13, 26:17, 41:24, 53:3
**millions** [1] - 36:13
**mini** [1] - 29:8
**minimum** [1] - 37:18

**MINKOFF** [1] - 2:12
**minor** [1] - 41:8
**minus** [1] - 29:12
**minute** [1] - 15:3
**minutes** [4] - 6:14, 16:1, 50:12, 64:24
**mistake** [2] - 69:12, 69:13
**mistaken** [1] - 67:9
**mistakes** [4] - 68:13, 69:8, 69:9, 69:15
**misusing** [1] - 66:12
**modifications** [1] - 37:5
**modified** [1] - 37:18
**moment** [2] - 11:9, 12:2
**money** [3] - 5:22, 12:20, 39:4
**months** [3] - 7:21, 20:20, 52:11
**mordaciously** [1] - 27:5
**Morgan** [1] - 38:24
**morning** [1] - 7:25
**MOSS** [12] - 1:21, 3:7, 3:15, 45:6, 57:15, 61:8, 65:19, 66:14, 67:11, 67:23, 69:8, 70:17
**Moss** [15] - 3:8, 44:12, 56:8, 57:4, 57:15, 64:25, 65:7, 65:9, 65:17, 66:6, 66:8, 66:13, 67:12, 69:17, 70:21
**moss'** [1] - 68:4
**most** [1] - 19:13
**motion** [52] - 3:4, 3:5, 3:8, 3:9, 3:21, 4:9, 13:7, 13:13, 14:17, 15:3, 15:7, 16:25, 17:1, 17:3, 17:7, 17:8, 17:15, 17:17, 17:22, 19:25, 21:2, 28:12, 31:4, 35:2, 36:3, 37:14, 37:21, 37:25, 38:20, 39:3, 39:25, 40:13, 41:11, 41:16, 42:21, 42:22, 43:9, 43:11, 43:17, 43:20, 43:21, 49:21, 51:1, 51:4, 52:22, 53:25, 57:12, 67:18, 68:9, 69:15, 70:7
**motions** [5] - 3:4, 29:8, 30:15, 34:18, 34:20, 37:13, 43:16, 58:14
**mounting** [1] - 42:19

**Movant** [1] - 2:13
**move** [3] - 30:15, 53:7, 60:16
**moved** [4] - 4:5, 4:6, 4:11, 11:6
**movement** [1] - 64:23
**moves** [1] - 11:9
**moving** [4] - 4:3, 16:12, 25:18, 53:20
**MR** [84] - 3:7, 3:15, 3:18, 3:24, 4:1, 15:8, 15:13, 15:22, 16:3, 16:5, 16:15, 19:11, 19:18, 19:24, 20:5, 20:8, 22:15, 22:20, 22:23, 23:8, 23:15, 24:21, 25:3, 25:7, 25:11, 26:15, 26:20, 28:11, 28:13, 29:4, 29:13, 29:19, 30:2, 30:10, 30:17, 30:20, 31:1, 31:7, 31:20, 32:5, 32:17, 33:1, 33:9, 33:19, 34:15, 34:16, 34:19, 34:21, 35:1, 35:5, 39:13, 39:20, 40:24, 42:23, 43:3, 43:10, 43:12, 43:23, 44:3, 44:6, 44:9, 44:11, 45:6, 45:11, 45:21, 46:2, 46:3, 50:14, 50:23, 51:23, 52:1, 52:17, 57:15, 61:3, 61:5, 61:8, 65:19, 66:14, 67:1, 67:11, 67:23, 69:8, 70:10, 70:17
**MS** [8] - 52:18, 52:20, 54:9, 65:13, 65:18, 65:20, 68:3, 70:9
**multi** [1] - 10:25
**multi-million** [1] - 10:25
**multiple** [2] - 54:17, 65:6
**must** [4] - 11:6, 33:12, 59:18, 61:9
**MYERS** [1] - 1:17
**myriad** [1] - 42:17

**N**

**nada** [1] - 67:22
**name** [1] - 52:20
**named** [1] - 12:13
**nature** [1] - 31:5
**nearly** [3] - 48:6, 48:7, 51:19
**necessary** [5] - 8:20, 13:16, 60:18, 61:9,

69:4
**need** [7] - 8:17, 9:4, 13:20, 28:5, 38:4, 61:3, 67:24
**needed** [1] - 12:4
**needs** [2] - 64:11, 68:17
**Netherland** [2] - 5:18, 42:13
**never** [20] - 10:24, 18:8, 18:11, 18:19, 19:20, 22:10, 22:18, 44:8, 46:12, 46:24, 56:15, 56:16, 56:17, 56:23, 57:25, 59:9, 62:17, 62:19, 63:13, 65:8
**NEW** [2] - 1:1, 1:1
**new** [5] - 7:7, 36:21, 38:14, 38:17, 44:13
**New** [28] - 1:18, 1:21, 2:3, 2:6, 2:11, 5:17, 6:23, 8:16, 9:18, 17:18, 19:22, 35:11, 36:9, 38:24, 48:20, 52:4, 52:13, 56:9, 58:6, 58:10, 58:17, 63:19, 68:7
**newly** [1] - 56:12
**newspaper** [2] - 19:1, 19:3
**next** [7] - 1:23, 16:8, 21:5, 29:23, 30:4, 42:22, 43:11
**Nicholas** [1] - 43:14
**NICHOLAS** [1] - 2:8
**Nicole** [2] - 43:19, 52:20
**NICOLE** [1] - 2:11
**night** [1] - 14:17
**nine** [1] - 41:23
**Nizer** [1] - 34:22
**NIZER** [1] - 2:2
**nobody** [2] - 64:2, 69:13
**Non** [1] - 2:4
**Non-Party** [1] - 2:4
**nonconsensual** [1] - 56:10
**none** [2] - 18:22, 22:8
**nonfamily** [1] - 24:3
**nonparty** [3] - 34:22, 35:10, 40:21
**nonrelative** [1] - 20:25
**note** [4] - 5:1, 25:23, 27:8, 42:2
**noted** [2] - 4:15, 8:9
**nothing** [17] - 7:12, 10:10, 10:17, 10:24, 11:5, 11:16, 13:15,

19:5, 21:2, 21:19, 37:11, 40:1, 59:21, 60:9, 67:18, 68:1
**notice** [2] - 9:16, 31:21
**noticeable** [1] - 10:12
**notified** [2] - 56:16, 56:17
**noting** [1] - 4:14
**novel** [1] - 44:1
**November** [3] - 4:19, 10:3, 11:14
**number** [5] - 5:23, 23:1, 36:5
**Number** [3] - 6:14, 23:3, 38:25
**numerous** [2] - 19:13, 49:24

**O**

**O'Melveny** [6] - 3:16, 3:19, 3:23, 67:7, 67:20, 67:24
**object** [1] - 45:18
**obviously** [4] - 9:6, 19:11, 52:25, 58:22
**October** [4] - 5:13, 6:15, 36:4, 41:23
**OF** [3] - 1:1, 1:1
**offer** [7] - 6:17, 15:11, 15:20, 16:1, 21:5, 23:13, 33:4
**offered** [2] - 18:3, 21:18
**offers** [1] - 20:16
**office** [3] - 6:4, 68:7, 68:14
**Office** [1] - 48:19
**officer** [2] - 35:19, 35:23
**officers** [2] - 10:18, 63:11
**Official** [2] - 2:22, 71:13
**official** [1] - 9:12
**Old** [1] - 1:20
**old** [3] - 6:2, 7:4, 64:8
**once** [1] - 65:8
**one** [38] - 3:14, 5:14, 10:8, 10:9, 11:16, 12:2, 13:23, 14:5, 18:7, 22:10, 23:1, 27:8, 27:14, 36:8, 37:15, 37:16, 38:15, 38:22, 38:23, 40:4, 42:23, 44:2, 46:19, 50:23, 52:7, 53:15, 54:21, 55:2, 55:5, 55:14, 59:7, 59:8,

62:16, 67:1, 68:6, 70:15, 70:17
**open** [2] - 45:11, 45:15
**opening** [3] - 58:13, 58:21, 61:12
**opportunity** [5] - 27:25, 29:8, 42:6, 43:5, 62:10
**OPPORTUNITY** [1] - 1:2
**opposing** [2] - 15:2, 30:3
**opposite** [2] - 65:10, 68:24
**opposition** [4] - 13:13, 15:7, 36:11, 64:15
**oral** [2] - 39:3, 46:7
**Order** [3] - 17:21, 62:24, 64:21
**order** [29] - 3:2, 3:3, 3:5, 4:3, 4:20, 4:22, 14:1, 14:2, 14:8, 14:12, 14:16, 14:23, 14:24, 17:6, 18:6, 22:17, 25:24, 26:2, 33:22, 33:24, 40:12, 41:18, 60:21, 61:8, 62:20, 70:12, 70:24, 71:3
**ordered** [1] - 4:11
**orders** [4] - 4:15, 7:22, 14:19, 62:22
**ordinary** [1] - 47:20
**OSTRAGER** [1] - 1:14
**out-of-state** [1] - 33:3
**outlined** [2] - 16:11, 26:19
**outright** [1] - 14:15
**outset** [2] - 8:10, 43:23
**outside** [3] - 31:17, 31:24, 33:14
**overcome** [2] - 26:18, 57:18
**overlap** [2] - 50:16, 50:19
**overstate** [1] - 51:5
**overview** [1] - 5:7
**owed** [1] - 44:23
**own** [5] - 6:21, 7:1, 9:21, 32:14, 65:2
**owned** [16] - 8:25, 18:5, 18:8, 18:11, 18:15, 18:19, 19:20, 19:23, 21:6, 21:15, 22:16, 23:19, 35:11, 35:14, 35:17, 35:24
**owner** [6] - 7:11, 8:6, 10:14, 10:16, 19:5,

28:8
**ownership** [22] - 4:25, 5:14, 5:25, 8:12, 8:18, 15:17, 17:4, 17:9, 17:20, 18:18, 19:6, 19:10, 19:14, 19:19, 20:3, 20:14, 20:18, 21:20, 24:12, 24:13, 24:14, 36:3
**owns** [9] - 5:6, 6:11, 6:12, 8:7, 14:14, 14:18, 22:8, 23:19, 49:23
**O'MELVENY** [1] - 1:17

## P

**Pacific** [5] - 3:8, 3:19, 4:2, 21:4, 51:15
**PACIFIC** [3] - 1:2
**PAG** [1] - 45:22
**page** [2] - 1:23, 29:7
**Page** [8] - 18:24, 27:11, 38:25, 39:6, 41:11, 58:20, 61:12, 64:15
**pages** [2] - 9:9, 9:10
**paid** [1] - 53:2
**paper** [3] - 7:16, 27:20, 27:22
**papers** [9] - 16:12, 25:4, 26:19, 27:10, 36:10, 42:16, 42:21, 53:25, 60:23
**Paragraph** [7] - 21:8, 39:1, 46:4, 48:25, 49:14, 49:20, 58:13
**parameters** [2] - 50:15
**PART** [1] - 1:1
**part** [2] - 28:18, 33:17
**participated** [1] - 48:2
**participation** [1] - 50:2
**particular** [1] - 39:21
**particularly** [1] - 38:11
**parties** [7] - 3:2, 13:2, 28:23, 33:25, 34:9, 34:11, 67:20
**partner** [1] - 44:13
**partners** [1] - 55:7
**parts** [1] - 60:11
**Party** [1] - 2:4
**party** [8] - 9:22, 20:25, 24:3, 24:14, 31:25, 33:15, 52:10
**party's** [1] - 47:22
**past** [3] - 13:12, 13:25, 14:6
**patience** [1] - 43:15
**Pausing** [2] - 15:4,

50:20
**PAX** [37] - 4:20, 14:16, 48:10, 48:14, 49:4, 51:7, 53:12, 54:5, 54:7, 54:9, 54:14, 54:22, 57:8, 59:3, 59:18, 61:9, 61:13, 61:17, 61:22, 61:23, 62:9, 62:19, 63:6, 64:7, 64:11, 64:21, 65:1, 65:9, 65:11, 65:15, 65:24, 66:9, 66:10, 66:11, 66:25, 69:20
**PAX's** [7] - 4:22, 54:10, 55:5, 57:18, 65:2, 65:8, 69:2
**pay** [1] - 39:5
**paying** [2] - 7:3, 7:6, 42:18
**payment** [1] - 36:6
**pays** [1] - 7:5
**PC** [1] - 2:10
**penalties** [3] - 5:1, 5:2, 15:18
**pending** [1] - 51:16
**people** [7] - 22:11, 32:3, 33:14, 47:7, 54:19, 64:1, 69:8
**People's** [1] - 22:6
**percent** [2] - 6:5, 68:1
**perfectly** [1] - 68:19
**perhaps** [3] - 24:13, 28:2, 58:9
**period** [2] - 18:11, 18:19
**permission** [1] - 66:20
**permit** [2] - 56:10, 68:16
**permits** [2] - 56:21, 56:22
**person** [14] - 8:7, 10:21, 11:7, 18:16, 18:17, 19:4, 20:17, 20:18, 27:3, 39:23, 39:24, 47:17, 51:17, 51:19
**person's** [2] - 20:14, 21:25
**personally** [2] - 44:21, 67:25
**perspective** [1] - 67:17
**petition** [1] - 13:8
**Petrillo** [3] - 48:17, 48:24, 48:25
**Petrillo's** [2] - 49:14, 49:20
**Ph** [1] - 58:9
**Phillips** [1] - 34:22

**PHILLIPS** [1] - 2:2
**phonetic** [6] - 8:23, 12:13, 21:8, 21:23, 48:21, 64:14
**pick** [2] - 29:23, 30:14
**piece** [4] - 7:16, 25:20, 27:20, 27:22
**piecing** [1] - 42:5
**piercing** [1] - 62:3
**pinnacle** [1] - 47:5
**place** [4] - 63:25, 64:3, 69:10, 70:13
**plaintiff** [4] - 12:16, 37:8, 39:11, 41:7
**Plaintiff** [27] - 1:4, 1:19, 1:22, 13:1, 15:23, 18:3, 20:16, 21:4, 24:17, 36:11, 36:14, 36:16, 37:6, 37:12, 37:14, 37:20, 37:24, 38:3, 39:8, 39:14, 41:6, 48:6, 49:10, 49:17, 49:22, 50:8, 51:2
**Plaintiff's** [7] - 26:3, 36:17, 37:23, 38:5, 39:2, 39:23, 40:23
**plaintiff's** [1] - 18:23
**Plaintiffs** [5] - 20:20, 21:18, 38:19, 40:16, 45:1
**plaintiffs'** [1] - 17:11
**plan** [1] - 63:13
**planning** [1] - 22:2
**Plaza** [1] - 2:6
**pleads** [1] - 21:8
**pledge** [1] - 66:24
**plus** [2] - 16:1, 29:12
**point** [14] - 8:9, 13:23, 14:6, 23:22, 26:8, 27:14, 38:4, 39:23, 40:4, 42:23, 50:18, 52:4, 60:25, 62:3
**pointed** [1] - 41:22
**points** [3] - 41:25, 64:25, 68:24
**portal** [1] - 49:11
**position** [6] - 16:25, 18:3, 44:15, 51:21, 52:25, 69:14
**possesses** [1] - 53:11
**possession** [3] - 48:13, 53:23, 55:15
**possibility** [1] - 59:5
**possible** [3] - 35:3, 55:14, 68:13
**possibly** [1] - 67:15
**postjudgment** [2] - 32:19, 41:20
**potential** [1] - 20:22

**practice** [2] - 47:1, 70:23
**practiced** [1] - 52:15
**practices** [1] - 13:3
**pre** [2] - 29:20, 36:3
**pre-motion** [1] - 36:3
**pre-trial** [1] - 29:20
**preceding** [1] - 70:13
**precise** [1] - 63:3
**precluded** [1] - 32:12
**preferred** [1] - 23:3
**prejudging** [2] - 16:17, 23:7
**prejudice** [2] - 25:17, 28:17
**prejudiced** [4] - 4:23, 25:19, 26:4, 45:23
**prejudicial** [1] - 69:20
**prepare** [1] - 64:11
**prepared** [3] - 24:17, 31:15, 67:9
**prerogative** [2] - 9:7, 24:23
**presence** [1] - 45:8
**present** [1] - 3:23
**presentation** [1] - 23:12
**presents** [1] - 16:11
**preserved** [1] - 28:4
**pressing** [1] - 29:25
**presumption** [3] - 63:8, 63:10, 63:20
**previously** [2] - 12:22, 32:21
**price** [1] - 6:18
**prima** [5] - 4:15, 22:16, 23:23, 24:19, 26:6
**private** [1] - 70:23
**privilege** [2] - 47:7, 47:20
**Privilege** [1] - 32:7
**privileged** [2] - 46:20, 70:19
**privileges** [2] - 47:6, 50:3
**proactively** [1] - 36:2
**problem** [5] - 10:6, 45:25, 56:9, 58:5, 61:21
**proceeding** [17] - 7:18, 12:17, 13:10, 19:3, 24:15, 45:12, 60:2, 60:3, 60:7, 60:13, 60:14, 62:11, 62:16, 65:6, 67:3, 68:8
**proceedings** [5] - 5:21, 26:17, 46:13, 71:5, 71:8

**PROCEEDINGS** [1] - 1:10

**process** [4] - 16:9, 37:2, 37:10, 68:19

**produce** [1] - 37:3

**produced** [4] - 11:23, 12:23, 29:2, 42:1

**producing** [1] - 23:1

**product** [1] - 46:21

**production** [1] - 9:12

**professor** [1] - 58:8

**Professor** [4] - 58:12, 58:16, 58:23, 63:15

**proffer** [2] - 11:21, 33:4

**proffered** [1] - 17:24

**prominently** [1] - 46:19

**promise** [1] - 47:4

**promised** [1] - 47:3

**prong** [3] - 57:20, 60:17, 63:5

**prongs** [4] - 53:15, 53:16, 55:25, 59:14

**pronounce** [1] - 18:16

**proof** [10] - 15:11, 15:20, 16:2, 18:3, 20:1, 22:1, 22:12, 23:14, 24:17, 39:10

**properly** [1] - 36:25

**property** [2] - 8:14, 8:21

**proposals** [1] - 37:8

**propose** [1] - 30:17

**proposed** [1] - 37:5

**propriety** [1] - 69:24

**prosecuted** [1] - 70:3

**prosecution** [1] - 69:25

**protect** [1] - 54:2

**protected** [1] - 68:18

**protection** [3] - 47:14, 47:22

**protract** [1] - 26:16

**provide** [2] - 32:4, 38:1

**provided** [5] - 10:11, 12:1, 36:11, 40:11, 49:25

**provides** [1] - 36:6

**provision** [1] - 46:6

**pry** [1] - 57:21

**pubically** [1] - 69:11

**Public** [1] - 22:6

**public** [3] - 9:12, 9:17, 10:12

**publicly** [1] - 68:10

**pulling** [1] - 20:22

**purchase** [1] - 20:14

**purchased** [3] - 18:12, 18:19, 20:17

**purchaser** [1] - 20:10

**purported** [3] - 6:9, 48:24, 61:14

**purpose** [4] - 15:16, 21:25, 52:23, 57:13

**purposes** [2] - 9:2, 11:21

**pursuant** [1] - 36:7

**pursue** [3] - 62:21, 65:15, 67:8

**pursued** [2] - 62:9, 62:19

**pursuing** [5] - 61:23, 61:24, 62:2, 63:1

**put** [15] - 12:24, 21:20, 24:17, 25:8, 33:20, 45:24, 46:24, 46:25, 56:17, 59:7, 62:20, 62:23, 63:2, 63:25, 66:16

## Q

**Qiang** [1] - 35:15

**Qu** [2] - 18:16, 18:22

**QU** [1] - 18:17

**quarreling** [1] - 24:24

**quarter** [1] - 6:12

**quash** [5] - 34:18, 35:6, 37:15, 37:18, 42:21

**questionable** [1] - 13:11

**questions** [5] - 14:25, 28:14, 29:5, 43:6, 43:8

**quickly** [2] - 30:3, 53:7

**quite** [2] - 13:7, 61:12

**quote** [16] - 8:20, 13:7, 15:17, 18:24, 21:9, 36:21, 37:22, 38:22, 39:4, 39:5, 40:11, 41:6, 48:21, 48:23, 61:17

**quote/unquote** [1] - 20:11

**quotes** [1] - 13:9

## R

**raised** [3] - 21:9, 51:6, 64:25

**raises** [3] - 13:15, 43:20, 44:1

**Randall** [1] - 52:24

**range** [1] - 49:21

**rare** [1] - 44:13

**reach** [4] - 37:6, 37:12, 56:11, 56:12

**reaching** [2] - 56:19, 59:8

**read** [2] - 42:20, 63:3

**readily** [1] - 14:13

**ready** [1] - 27:1

**reality** [1] - 61:22

**really** [9] - 8:4, 9:1, 9:3, 10:10, 12:10, 36:24, 54:3, 62:10, 69:17

**reams** [1] - 53:23

**reason** [4] - 25:11, 28:18, 38:20, 52:7

**reasonable** [1] - 39:17

**reasonably** [1] - 47:9

**reasons** [4] - 9:8, 14:21, 15:24, 63:6

**rebut** [5] - 16:6, 16:13, 14:20, 63:10, 63:15

**rebuttable** [3] - 57:21, 63:8

**rebutted** [4] - 8:3, 23:17, 27:15, 63:20

**rebutting** [1] - 23:22

**received** [1] - 63:13

**recent** [1] - 14:11

**recently** [1] - 10:2

**recess** [2] - 15:5, 50:21

**recognize** [1] - 69:19

**recognized** [1] - 58:8

**record** [17] - 15:6, 18:21, 19:5, 19:25, 20:8, 20:12, 21:2, 23:11, 23:17, 24:1, 24:22, 25:9, 27:1, 30:6, 45:3, 45:13, 65:15

**recordings** [1] - 9:21

**records** [4] - 9:12, 9:17, 36:11, 39:12

**red** [1] - 70:1

**refer** [1] - 34:5

**referenced** [2] - 27:10, 54:16

**referred** [5] - 12:18, 20:10, 24:10, 25:20, 26:23

**referring** [3] - 5:11, 9:19, 37:24

**refers** [2] - 6:25, 19:14

**reflect** [1] - 22:4

**refusal** [1] - 14:15

**refuse** [1] - 31:19

**refused** [1] - 11:11

**refusing** [1] - 32:4

**regard** [5] - 32:12, 48:23, 66:6, 66:7, 67:13

**regarding** [7] - 19:19, 21:7, 22:3, 50:1, 50:4, 51:19, 52:4

**regret** [1] - 69:25

**REINDEL** [1] - 1:20

**related** [4] - 11:2, 41:19, 46:13, 51:17, 51:19, 53:14, 54:15, 54:18, 54:21, 59:18, 60:2, 60:8, 60:23, 65:3

**relating** [4] - 49:16, 51:16, 51:18, 53:23

**relationship** [15] - 44:24, 44:25, 46:9, 46:16, 53:6, 53:21, 55:22, 56:3, 57:24, 58:2, 59:11, 59:16, 60:16, 61:14, 61:15

**relative** [1] - 18:23

**relevance** [1] - 54:4

**relevant** [9] - 25:21, 26:10, 31:18, 31:23, 32:3, 34:9, 41:19, 49:18, 60:25

**reliability** [1] - 16:17

**reliable** [1] - 49:1

**relief** [1] - 42:25

**reluctantly** [1] - 70:6

**rely** [2] - 68:18, 68:21

**remained** [1] - 5:3

**remand** [3] - 12:5, 16:21, 17:13

**remanded** [6] - 4:24, 15:15, 17:3, 17:17, 24:16, 25:1

**remember** [3] - 42:10, 60:3, 62:12

**REMOTE** [2] - 1:10, 71:14

**repeat** [2] - 18:8, 18:9

**repeatedly** [1] - 6:23

**reply** [2] - 48:24, 63:22

**report** [4] - 19:1, 19:3, 28:16, 58:13

**reported** [3] - 17:18, 23:20, 24:10

**reportedly** [4] - 18:24, 18:25, 19:2, 19:4

**Reporter** [3] - 2:22, 50:12, 71:13

**represent** [5] - 3:19, 52:21, 54:24, 59:3, 60:12

**representation** [5] - 53:4, 55:10, 57:8, 59:17

**representations** [1] - 53:19

**represented** [10] -

**representing** [5] - 7:14, 50:8, 53:22, 55:9, 57:8

**represents** [1] - 48:17

**request** [1] - 51:16

**requested** [1] - 51:13

**requests** [2] - 37:6, 55:12

**require** [2] - 30:25, 68:21

**required** [4] - 8:13, 18:4, 69:7, 69:11

**requirement** [2] - 33:2, 57:23

**requires** [3] - 17:8, 40:1, 40:3

**res** [2] - 41:1, 41:13

**research** [1] - 4:10

**reserved** [1] - 46:12

**residence** [1] - 29:1

**resolve** [1] - 70:16

**resolved** [2] - 23:10, 68:4

**respect** [15] - 3:1, 10:7, 12:17, 14:22, 34:8, 43:24, 44:12, 55:21, 65:16, 66:10, 67:14, 67:16, 69:18

**respectfully** [4] - 11:16, 14:2, 15:25, 38:7

**respond** [3] - 24:18, 37:8, 64:24

**Respondent** [1] - 15:23

**response** [9] - 9:24, 23:13, 37:14, 37:21, 48:2, 48:3, 48:12, 54:10, 69:15

**responsibilities** [1] - 44:1

**rest** [1] - 24:7

**restraining** [2] - 7:23, 41:18

**result** [1] - 46:10

**resume** [2] - 50:13, 50:14

**return** [1] - 50:17

**returns** [2] - 7:16, 7:21

**reviewing** [2] - 13:12, 49:12

**reviews** [1] - 55:6

**rhetoric** [2] - 20:12, 46:23

**rights** [2] - 4:22, 26:4

**risk** [1] - 54:23

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120
Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 83 of
85
RECEIVED NYSCEF: 01/25/2022

11

**Rockefeller** [1] - 2:6
**Ronald** [2] - 21:8, 21:9
**RONALD** [1] - 2:12
**Rose** [1] - 43:14
**ROSE** [1] - 2:8
**ROTHROCK** [2] - 2:22, 71:13
**routine** [1] - 4:7
**Roy** [1] - 43:14
**RPR** [2] - 2:22, 71:13
**rubber** [1] - 38:4
**rule** [6] - 52:13, 56:21, 58:13, 68:16
**ruled** [1] - 37:21
**rules** [1] - 56:9
**ruling** [2] - 19:2, 37:25
**run** [1] - 69:22
**Rydell** [1] - 63:12

**S**

**safe** [1] - 71:1
**safeguard** [1] - 63:24
**safer** [1] - 45:19
**sake** [1] - 33:1
**sale** [1] - 6:17
**sanction** [1] - 14:23
**sanctions** [1] - 26:18
**SARNOFF** [24] - 1:18, 3:18, 3:24, 4:1, 24:21, 25:3, 25:7, 25:11, 26:15, 26:20, 28:11, 30:10, 30:20, 31:1, 31:20, 32:5, 32:17, 33:19, 34:16, 34:19, 40:24, 45:21, 46:2, 67:1
**Sarnoff** [15] - 3:19, 4:2, 16:1, 16:11, 16:24, 18:2, 18:7, 18:9, 20:11, 26:13, 26:16, 28:16, 28:24, 30:19, 43:4
**Sarnoff's** [1] - 22:24
**satisfied** [2] - 53:16, 63:9
**satisfy** [1] - 63:9
**saw** [1] - 69:13
**schedule** [5] - 29:19, 30:6, 30:7, 54:18, 55:15
**scheduled** [4] - 29:14, 29:21, 29:24, 61:25
**scope** [1] - 49:19
**screen** [16] - 54:11, 56:7, 56:15, 56:17, 56:22, 57:1, 57:3, 57:5, 57:9, 57:10, 59:5, 59:6, 63:10, 63:17, 64:2, 69:6

**screening** [2] - 56:10, 68:16
**screens** [3] - 57:6, 63:18, 69:10
**sealed** [5] - 45:13, 45:14, 51:5, 51:14, 61:6
**sealing** [3] - 50:15, 68:12, 69:12
**search** [1] - 70:16
**searched** [1] - 17:18
**SEC** [13] - 47:25, 48:1, 48:5, 48:9, 48:17, 48:23, 49:3, 49:25, 51:2, 51:7, 51:9, 51:20, 55:16
**second** [4] - 9:3, 10:6, 53:7, 53:9
**secondly** [1] - 20:1
**seconds** [1] - 6:15
**secrete** [1] - 20:21
**Section** [1] - 12:17
**security** [2] - 22:6, 22:11
**see** [3] - 9:22, 42:6, 71:1
**seek** [3] - 38:5, 51:16, 51:19
**seeking** [10] - 41:18, 41:19, 48:9, 48:10, 48:14, 49:10, 50:9, 54:20, 57:13
**seize** [1] - 48:23
**sell** [1] - 6:21
**SELZ** [1] - 2:10
**Selz** [1] - 52:21
**seminal** [1] - 58:24
**send** [1] - 9:15
**sense** [1] - 6:19
**sensitive** [3] - 47:16, 52:11, 55:4
**sent** [1] - 10:24
**separate** [2] - 41:24, 42:25
**September** [3] - 9:18, 27:9, 36:19
**series** [1] - 43:16
**seriously** [1] - 62:22
**served** [5] - 32:18, 48:5, 49:25, 54:17, 54:20
**services** [1] - 36:7
**set** [4] - 38:22, 52:6, 57:9, 69:10
**setting** [2] - 5:17, 58:11
**several** [2] - 4:8, 36:7
**shape** [3] - 65:15, 65:23, 67:19
**share** [2] - 14:12, 29:1

**shared** [3] - 46:11, 55:18, 58:4
**shareholder** [2] - 5:12, 10:21
**sharing** [1] - 46:11, 67:21
**shell** [2] - 7:8, 39:18
**Sherry** [2] - 5:18, 42:13
**Sherry-Netherland** [2] - 5:18, 42:13
**ship** [2] - 7:19, 8:2
**shop** [1] - 5:17
**short** [4] - 5:3, 15:5, 33:21, 33:24
**show** [12] - 10:3, 20:16, 21:19, 22:17, 25:15, 28:9, 32:9, 32:13, 32:22, 47:25, 53:9, 53:10
**showed** [1] - 42:11
**showing** [7] - 4:16, 17:8, 23:23, 24:7, 26:6, 27:21, 39:14
**shown** [5] - 25:25, 26:1, 36:10, 39:8
**shows** [2] - 18:17, 32:9
**side** [5] - 10:12, 33:16, 47:23, 62:22, 64:12
**sides** [1] - 59:1
**Siegal** [3] - 4:5, 4:6, 15:9
**SIEGAL** [16] - 2:7, 15:8, 15:13, 15:22, 16:3, 16:5, 16:15, 19:11, 19:18, 19:24, 20:5, 20:8, 28:13, 33:1, 33:9, 50:23
**SIEGEL** [26] - 22:15, 22:20, 22:23, 23:8, 23:15, 29:4, 29:13, 29:19, 30:2, 30:17, 31:7, 34:15, 43:12, 43:23, 44:3, 44:6, 44:9, 44:11, 45:11, 46:3, 51:23, 52:1, 52:17, 61:3, 61:5, 70:10
**Siegel** [14] - 15:10, 15:25, 19:8, 22:14, 22:19, 27:8, 31:6, 43:12, 45:6, 51:21, 52:15, 60:23, 61:4, 62:5
**SIEGFRIED** [1] - 2:4
**sign** [1] - 28:5
**similar** [2] - 13:18, 22:8
**similarly** [1] - 39:2

**Simon** [6] - 43:14, 58:8, 58:12, 58:16, 58:23, 63:15
**simple** [1] - 33:8
**simply** [3] - 39:22, 57:1
**single** [9] - 6:2, 11:7, 11:23, 17:16, 21:25, 35:13, 36:15, 36:25
**sit** [3] - 28:6, 32:1, 52:9
**situation** [6] - 38:9, 38:10, 46:25, 47:20, 50:5, 67:4
**six** [2] - 39:17, 52:11
**sizeable** [1] - 42:13
**skeptical** [1] - 23:12
**slightly** [1] - 52:25
**Slip** [1] - 1:20
**society** [3] - 22:9, 22:12, 47:6
**sole** [3] - 5:12, 6:20
**someone** [1] - 44:14
**son** [2] - 21:11, 35:15
**sort** [2] - 59:23, 60:16
**sought** [8] - 35:6, 36:1, 37:18, 51:7, 51:9, 51:11, 51:20, 54:14
**sounds** [2] - 9:23, 13:18
**source** [3] - 5:22, 21:16, 55:14
**sourced** [1] - 18:25
**Southern** [1] - 48:19
**speaking** [1] - 9:22
**special** [6] - 60:1, 60:13, 60:14, 62:11, 62:16, 65:6
**specific** [4] - 15:16, 51:14, 55:10, 60:22
**specifically** [2] - 42:12, 50:16
**specifics** [1] - 51:15
**specify** [2] - 19:4, 51:4
**spent** [1] - 61:24
**Spring** [24] - 7:4, 11:2, 11:4, 36:9, 36:12, 36:21, 38:1, 38:9, 38:13, 38:14, 38:17, 38:23, 39:4, 39:7, 40:10, 40:11, 41:3, 41:5, 41:7, 41:11, 41:18, 41:25, 42:10, 42:11
**Springs** [1] - 41:17
**Springs'** [1] - 38:24
**Square** [1] - 1:17
**staff** [1] - 30:25
**stamp** [1] - 38:4

**stamped** [1] - 9:11
**standard** [12] - 8:15, 8:17, 15:14, 25:12, 25:15, 25:16, 25:21, 26:11, 28:15, 28:21, 41:20
**Standard** [2] - 25:21, 26:9
**start** [4] - 3:11, 15:11, 44:17, 45:10
**started** [1] - 57:8
**State** [3] - 6:23, 9:18, 13:6
**STATE** [1] - 1:1
**state** [3] - 33:3, 36:3, 51:3
**statement** [7] - 19:16, 19:19, 19:25, 20:2, 20:4, 68:5
**statements** [2] - 19:13, 62:25
**stating** [1] - 13:8
**statute** [4] - 8:13, 16:21, 17:20, 17:23
**stay** [1] - 71:1
**staying** [1] - 45:7
**still** [8] - 48:12, 48:14, 49:8, 54:7, 55:3, 55:9, 62:16, 64:18
**stipulate** [1] - 67:9
**stipulating** [3] - 62:19, 65:11, 66:8
**stipulation** [12] - 54:11, 63:2, 65:14, 65:24, 66:15, 66:18, 66:25, 67:16, 68:4, 68:25, 69:1, 69:6
**stop** [3] - 14:20, 18:11, 18:20
**strategy** [1] - 55:19
**Street** [1] - 2:10
**strings** [1] - 20:23
**strong** [1] - 64:7
**structure** [1] - 53:24
**Stuart** [2] - 3:18, 4:1
**STUART** [1] - 1:18
**subject** [1] - 32:24
**submissions** [2] - 11:25, 13:13
**submit** [18] - 9:5, 9:7, 11:11, 14:21, 16:19, 28:9, 28:23, 29:8, 29:10, 29:11, 31:13, 32:23, 33:7, 33:10, 33:11, 34:7, 34:10, 34:11
**submits** [1] - 15:23
**submitted** [11] - 7:14, 9:17, 10:16, 16:24, 33:23, 34:1, 36:4,

dar

INDEX NO. 652077/2017
NYSCEF DOC. NO. 1120    Case 22-50073    Doc 440-20    Filed 05/25/22    Entered 05/26/22 15:30:37    Page 84 of 85    RECEIVED NYSCEF: 01/25/2022

12

40:16, 42:1, 46:5, 55:16
**submitting** [1] - 43:7
**subpoena** [2] - 28:5, 37:15, 37:16, 48:1, 48:5, 48:12, 49:25, 51:9, 65:3
**subpoenaed** [2] - 51:2, 51:7
**subpoenas** [13] - 34:18, 35:6, 35:7, 37:15, 37:19, 38:5, 42:25, 47:17, 50:17, 54:17, 54:20, 55:5
**subsequently** [1] - 46:14
**substantial** [9] - 22:6, 29:2, 44:24, 49:12, 53:21, 55:22, 56:3, 59:16, 60:15
**substantially** [4] - 46:13, 53:14, 59:18, 60:2
**succeed** [1] - 39:25
**successfully** [1] - 70:4
**suffice** [1] - 63:17
**sufficient** [5] - 8:22, 9:2, 25:16, 51:10, 51:11
**suggest** [1] - 52:7
**suggested** [1] - 50:25
**suggests** [2] - 40:10, 40:25
**Sun** [1] - 21:11
**Sun's** [1] - 21:11
**supplemental** [2] - 5:4, 29:6
**support** [4] - 16:25, 18:2, 44:13, 58:10
**supporting** [1] - 20:16
**supposedly** [2] - 6:11, 6:12
**SUPREME** [1] - 1:1
**Supreme** [3] - 1:14, 19:9, 19:22
**surely** [2] - 16:15, 16:16
**surprised** [2] - 29:2, 29:18
**surrounding** [1] - 13:14
**switch** [1] - 59:1
**sworn** [3] - 31:14, 38:21, 64:19
**System** [2] - 68:10, 69:12

## T

**tactical** [1] - 70:1

**tailored** [1] - 37:3
**tales** [1] - 13:14
**target** [1] - 22:10
**targeting** [4] - 61:19, 63:1, 65:1
**tax** [1] - 7:16
**Team** [1] - 48:21
**team** [5] - 46:18, 56:8, 59:7, 59:8, 63:12
**TEAMS** [1] - 1:10
**Teams** [3] - 31:9, 46:1
**technical** [6] - 7:10, 8:6, 8:12, 8:17, 10:14, 10:15
**technically** [2] - 7:6, 14:18
**telepathy** [1] - 11:6
**ten** [2] - 39:17, 50:12
**TERM** [1] - 1:1
**terms** [4] - 49:4, 54:3, 63:8, 69:19
**test** [3] - 23:24, 55:22, 57:20
**tested** [1] - 48:20
**testified** [2] - 26:22, 26:23
**testify** [9] - 10:4, 11:19, 13:21, 27:25, 28:2, 31:21, 32:7, 32:13, 33:13
**testimony** [26] - 23:6, 23:16, 27:15, 28:4, 31:10, 31:11, 31:12, 31:15, 31:16, 31:18, 31:23, 32:3, 32:18, 32:24, 33:5, 33:7, 33:11, 33:12, 33:15, 33:22, 34:5, 34:7, 34:9, 34:12, 49:14, 49:20
**testing** [1] - 68:22
**text** [2] - 10:24, 11:23
**THE** [85] - 1:1, 3:1, 3:13, 3:16, 3:21, 3:25, 15:2, 15:6, 15:10, 15:19, 15:25, 16:4, 16:6, 19:8, 19:16, 19:21, 20:4, 20:6, 22:14, 22:19, 22:21, 23:7, 23:9, 24:25, 25:4, 25:10, 26:12, 26:16, 28:4, 28:12, 28:23, 29:10, 29:16, 29:23, 30:5, 30:12, 30:19, 30:23, 31:6, 31:8, 31:22, 32:13, 32:21, 33:6, 33:10, 33:21, 34:17, 34:25, 35:4, 39:11, 39:16, 40:22, 42:20,

43:2, 43:8, 43:11, 43:22, 44:2, 44:4, 44:8, 44:10, 45:25, 50:11, 50:18, 50:22, 51:21, 51:25, 52:15, 52:19, 54:8, 57:11, 61:4, 61:7, 64:23, 65:11, 65:14, 65:21, 66:4, 67:12, 68:2, 69:17, 70:8, 70:12, 70:21, 71:4
**theory** [1] - 61:20
**there'll** [1] - 34:6
**thereafter** [1] - 67:5
**therefore** [3] - 17:5, 36:24, 39:25
**thinking** [1] - 44:13
**third** [8] - 20:25, 24:3, 24:14, 53:8, 53:17, 63:5, 67:20
**third-party** [4] - 20:25, 24:3, 24:14
**three** [14] - 15:3, 20:20, 23:5, 23:10, 23:13, 25:8, 26:17, 27:6, 29:11, 29:12, 29:23, 30:4, 30:15, 57:20
**three-minute** [1] - 15:3
**throughout** [1] - 12:19
**Thursday** [1] - 30:18
**tie** [1] - 19:5
**title** [2] - 8:12, 8:21
**today** [4] - 11:21, 37:21, 66:17, 70:8
**together** [1] - 42:5
**tomorrow** [1] - 66:24
**took** [2] - 32:21, 70:13
**totalitarian** [1] - 22:9
**totally** [1] - 24:22
**touch** [1] - 63:21
**touching** [1] - 49:21
**tracing** [2] - 45:1, 49:4
**transactions** [2] - 21:3, 24:2
**transcript** [5] - 3:2, 33:17, 41:11, 71:3, 71:8
**transfer** [2] - 20:19, 67:5
**transferred** [5] - 6:1, 6:6, 20:18, 20:24, 66:1
**transferring** [1] - 38:23
**transfers** [7] - 5:14, 6:9, 7:2, 41:24, 42:4, 66:18
**Treasury** [1] - 35:12

**treatise** [1] - 58:10
**triable** [1] - 24:6
**trial** [12] - 12:25, 13:6, 28:5, 29:14, 29:20, 30:13, 31:10, 31:16, 34:2, 34:3, 62:3
**true** [2] - 14:10, 71:7
**truth** [1] - 70:16
**try** [4] - 32:17, 35:3, 40:24, 66:18
**trying** [3] - 54:2, 60:7, 61:9
**turn** [5] - 35:14, 47:10, 50:6, 52:11, 52:17, 60:4
**turnover** [13] - 8:13, 9:1, 12:16, 12:21, 13:9, 13:13, 14:12, 14:16, 17:1, 17:12, 17:20, 26:9, 36:15
**TV's** [1] - 70:7
**tweeting** [1] - 6:9
**tweets** [1] - 9:25
**twelve** [1] - 39:17
**two** [29] - 6:14, 8:4, 9:8, 18:21, 20:17, 23:3, 25:8, 27:3, 29:12, 30:11, 34:18, 35:6, 38:5, 53:10, 53:14, 54:16, 56:3, 57:3, 63:12, 64:10, 64:11, 68:5, 69:2, 70:14
**tying** [1] - 21:2
**type** [4] - 56:15, 56:22, 58:7, 58:11
**typical** [1] - 22:2

## U

**U.S** [2] - 21:21, 48:19
**UBS** [1] - 38:23
**ultimately** [1] - 50:2
**under** [18] - 12:17, 16:20, 17:11, 17:14, 17:19, 25:12, 25:16, 25:21, 31:25, 34:8, 41:20, 52:5, 58:6, 58:11, 61:20, 63:17, 66:9
**understandable** [1] - 25:14
**understood** [1] - 29:4
**undertaking** [1] - 49:5
**undisputed** [13] - 21:19, 24:8, 44:17, 44:19, 44:21, 45:3, 46:4, 46:6, 46:16, 46:17, 47:12, 47:25,

49:7
**unfettered** [1] - 49:8
**unidentified** [1] - 24:3
**unique** [1] - 52:6
**universal** [2] - 48:6, 48:7
**unknown** [1] - 27:3
**unlearn** [1] - 59:4
**unless** [1] - 46:25
**unlike** [1] - 39:7
**unnecessary** [1] - 13:4
**unrelated** [4] - 20:13, 20:18, 20:25, 27:3
**unremarkable** [1] - 21:24
**up** [18] - 5:17, 10:3, 12:7, 26:24, 27:6, 28:9, 32:9, 32:13, 32:22, 38:22, 54:25, 55:5, 56:17, 57:9, 62:3, 64:10, 69:10
**urging** [1] - 17:22
**USA** [1] - 21:21
**uses** [1] - 11:8
**utilizes** [1] - 39:18
**utmost** [2] - 69:17, 69:18

## V

**vail** [1] - 62:2
**valuable** [1] - 22:1
**value** [1] - 34:12
**variety** [1] - 49:23
**various** [1] - 54:20
**Vartan** [1] - 21:23
**versus** [1] - 58:19
**vessel** [4] - 19:7, 20:17, 22:16, 23:20
**vetted** [1] - 48:3
**video** [3] - 6:12, 9:21, 45:22
**videos** [2] - 6:10, 9:22
**view** [3] - 40:2, 66:1, 69:5
**violated** [2] - 4:3, 26:2
**virtually** [1] - 46:24

## W

**wait** [1] - 6:22
**waive** [3] - 56:14, 69:4
**waiver** [2] - 69:1, 69:3
**wall** [3] - 56:6, 63:21, 63:25
**walled** [1] - 67:7
**Wan** [1] - 2:8
**WAN** [2] - 1:6, 1:7
**wants** [5] - 9:6, 10:8,

dar

11:16, 26:16, 32:13
**warm** [3] - 4:7, 7:21, 7:25
**warning** [1] - 46:8
**warrant** [1] - 53:15
**warranted** [1] - 55:24
**water** [1] - 7:21
**weather** [2] - 4:7, 8:1
**week** [2] - 16:9, 29:22
**weeks** [8] - 23:10, 26:17, 29:12, 29:23, 30:4, 57:4, 64:10, 64:11
**WEI** [1] - 21:10
**Wei** [1] - 21:10
**Weinstein** [1] - 8:19
**WEN** [1] - 1:6
**WENGUI** [2] - 1:6
**whatsoever** [4] - 21:15, 39:10, 66:10, 67:18
**whereabouts** [1] - 22:4
**whole** [1] - 27:12
**wholly** [2] - 35:11, 35:14
**wholly-owned** [2] - 35:11, 35:14
**Wide** [1] - 27:12
**wife** [1] - 21:12
**William** [1] - 58:19
**willing** [1] - 62:23
**wish** [2] - 44:11, 44:14
**withdrawn** [2] - 35:8, 43:1
**witness** [2] - 23:2, 33:17
**witnesses** [7] - 16:7, 31:10, 31:24, 33:4, 33:6, 33:10, 33:11
**woman** [1] - 26:22
**words** [5] - 4:18, 19:21, 38:3, 46:22, 70:18
**work-product** [1] - 46:21
**works** [2] - 30:4, 30:18
**worse** [1] - 70:2
**written** [4] - 3:3, 11:7, 11:25, 36:7
**wrote** [2] - 63:16, 63:18

## Y

**yacht** [37] - 4:4, 4:6, 4:7, 4:11, 4:12, 4:17, 5:1, 5:19, 5:23, 6:6, 6:25, 7:1, 7:11, 8:9, 9:19, 10:16, 10:25,

11:2, 11:5, 11:12, 14:3, 14:9, 14:22, 15:18, 18:5, 18:18, 19:6, 19:10, 20:14, 21:20, 22:4, 22:8, 61:24, 61:25, 62:1, 62:4
**yacht-related** [1] - 11:2
**year** [10] - 4:7, 6:2, 7:20, 18:18, 21:24, 62:8, 64:3, 64:4, 64:8, 70:3
**years** [5] - 13:3, 20:17, 27:6, 52:16, 62:5
**YORK** [2] - 1:1, 1:1
**York** [28] - 1:18, 1:21, 2:3, 2:6, 2:11, 5:18, 6:23, 8:16, 9:18, 17:18, 19:22, 35:11, 36:9, 38:24, 48:20, 52:4, 52:13, 56:9, 58:6, 58:10, 58:17, 63:19, 68:7
**YouTube** [2] - 6:9, 6:16

## Z

**zero** [3] - 5:14, 6:7, 67:22
**Zhang** [1] - 21:10
**ZHANG** [1] - 21:10
**Zhang's** [1] - 21:12
**zip** [1] - 67:22

dar