# EXHIBIT PAX 29

Proposed Chapter 11 Plan of Ho Wan Kwok

CASE NO. _____ 22-50073 _____

IN RE: Ho Wan Kwok _____

VS. _____

PAX    EXHIBIT _____ 29 _____

DATE _____ IDEN.

DATE  5/25/2022 Admitted in Full _____ EVID.

BY  P.E. _____

Deputy Clerk

AO 386-A

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

### NOTICE OF FILING OF PROPOSED
### CHAPTER 11 PLAN OF HO WAN KWOK

**PLEASE TAKE NOTICE** that, Mr. Ho Wan Kwok, the debtor and debtor-in-possession ("Mr. Kwok" or the "Debtor") in the above-captioned chapter 11 case, by and through his undersigned counsel, respectfully files this *Proposed Chapter 11 Plan of Ho Wan Kwok*, attached hereto as **Exhibit A**.

Dated: April 10, 2022

**BROWN RUDNICK LLP**

By: /s/ *William R. Baldiga*
BROWN RUDNICK LLP
185 Asylum Street
Hartford, CT 06103
Attn: Dylan Kletter, Esq.
Telephone: (860) 509-6500
Facsimile: (860) 509-6653
Email: dkletter@brownrudnick.com

Seven Times Square
New York, NY 10036
Attn: William R. Baldiga, Esq. (*pro hac*)
Attn: Bennett S. Silverberg, Esq. (*pro hac*)
Attn: Uriel Pinelo, Esq. (*pro hac*)
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: wbaldiga@brownrudnick.com
        bsilverberg@brownrudnick.com
        upinelo@brownrudnick.com

## **EXHIBIT A**

Proposed Chapter 11 Plan

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------X
                                                              :
In re:                                                        :
                                                              :
        HO WAN KWOK,                                          :   Chapter 11
                                                              :
                                                              :   Case No. 22-50073 (JAM)
                            Debtor.                           :
                                                              :
                                                              :
---------------------------------------------------------------X

---

**PROPOSED CHAPTER 11 PLAN**
**OF HO WAN KWOK**

---

Dated:   April 10, 2022
         Greenwich, Connecticut

**BROWN RUDNICK LLP**
William R. Baldiga, Esq.
Bennett S. Silverberg, Esq.
Uriel Pinelo, Esq.
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email:    wbaldiga@brownrudnick.com
          bsilverberg@brownrudnick.com
          upinelo@brownrudnick.com

**BROWN RUDNICK LLP**
Dylan Kletter, Esq.
185 Asylum Street
Hartford, CT 06103
Telephone:  (860) 509-6500
Facsimile:  (860) 509-6653
Email:   dkletter@brownrudnick.com

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION .................................................................. 1
    A.    Defined Terms .................................................................................................. 1
    B.    Rules of Interpretation ........................................................................................ 8
    C.    Exhibits ........................................................................................................... 9

ARTICLE II UNCLASSIFIED CLAIMS ............................................................................................................ 9
    A.    Administrative Claims ....................................................................................... 9
    B.    Professional Compensation Claims ..................................................................... 9
    C.    Priority Tax Claims ........................................................................................... 10
    D.    United States Trustee Statutory Fees .................................................................. 10

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS .................................................................. 10
    A.    Summary ......................................................................................................... 10
    B.    Classification and Treatment of Claims ............................................................... 11
    C.    Elimination of Vacant Classes ........................................................................... 12
    D.    Allocation of Distributions Between Principal and Interest ..................................... 12
    E.    Special Provision Governing Unimpaired Claims .................................................. 12
    F.    Non-Consensual Confirmation ........................................................................... 13

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................................... 13
    A.    General Settlement of Claims ............................................................................. 13
    B.    Restructuring Transactions ................................................................................ 13
    C.    The Reorganized Debtor .................................................................................... 13
    D.    Creditor Trust ................................................................................................... 14
    E.    Reorganization Transactions and Funding of the Reorganized Debtor and Creditor Trust ............ 18
    F.    Debtor Remains Debtor-in-Possesion Following the Confirmation Date .................... 19
    G.    Establishment of the Administrative Bar Date ....................................................... 19
    H.    Term of Injunctions or Stays .............................................................................. 19
    I.    Effectuating Documents and Transactions ........................................................... 19
    J.    Preservation of Rights of Action ......................................................................... 20
    K.    Final Certification and Case Closing .................................................................... 20

ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS .......................................................................... 21
    A.    Initial Distribution Date ..................................................................................... 21
    B.    Treatment of Disputed Claims ............................................................................ 21
    C.    Subsequent Distributions .................................................................................. 21
    D.    Record Date for Distributions ............................................................................ 22
    E.    Delivery of Distributions ................................................................................... 22
    F.    Manner of Cash Payments Under the Plan ........................................................... 23
    G.    Time Bar to Cash Payments by Check ................................................................. 23
    H.    Compliance with Tax Requirements .................................................................... 23
    I.    Postpetition Interest on Claims .......................................................................... 23
    J.    No Distribution in Excess of Allowed Amount of Claim ........................................ 23
    K.    Setoff and Recoupment ..................................................................................... 23

ARTICLE VI DISPUTED CLAIMS ................................................................................................................. 24
    A.    No Distribution Pending Allowance .................................................................... 24
    B.    Claims Objection Deadline ................................................................................ 24
    C.    Resolution of Disputed Claims ........................................................................... 24
    D.    Estimation of Claims ........................................................................................ 24
    E.    Disallowance of Claims ..................................................................................... 24
    F.    Adjustment to Claims Without Objection ............................................................ 25

G.      Amendments to Claims ............................................................................................25

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............25
        A.      Rejection of Executory Contracts and Unexpired Leases ...........................................25
        B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases....................26
        C.      Debtor's Insurance Policies ....................................................................................26

ARTICLE VIII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ....................................27
        A.      Conditions Precedent to the Effective Date ...............................................................27
        B.      Effect of Non-Occurrence of Conditions to the Effective Date ...................................27
        C.      Establishing the Effective Date ...............................................................................27

ARTICLE IX RELEASE, INJUNCTIVE AND RELATED PROVISIONS .......................................27
        A.      Compromise and Settlement ...................................................................................27
        B.      Releases and Related Matters...................................................................................28
        C.      Waiver of Limitations on Releases of Unknown Claims ............................................28
        D.      Exculpation ..........................................................................................................28
        E.      Injunction .............................................................................................................29
        F.      Releases of Liens ....................................................................................................29
        G.      Preservation of Rights of Action ............................................................................29

ARTICLE X RETENTION OF JURISDICTION ........................................................................30

ARTICLE XI MISCELLANEOUS PROVISIONS .......................................................................31
        A.      Modification of Plan ..............................................................................................31
        B.      Revocation of Plan .................................................................................................31
        C.      Payment of Statutory Fees ......................................................................................31
        D.      Successors and Assigns...........................................................................................31
        E.      Governing Law ......................................................................................................31
        F.      Reservation of Rights ..............................................................................................31
        G.      Section 1146 Exemption .........................................................................................32
        H.      Entire Agreement ..................................................................................................32
        I.      Exhibits ................................................................................................................32
        J.      Non-Severability ....................................................................................................32
        K.      Dissolution of Committee .......................................................................................32
        L.      Section 1125(e) Good Faith Compliance ..................................................................32
        M.      Discharge ..............................................................................................................33
                Pursuant to section 1141(d) of the Bankruptcy Code, upon the occurrence of the Effective Date,
                the Confirmation Order shall be deemed to have discharged the Debtor from any debt that
                arose before the date of entry of the Confirmation Order. ..........................................33
        N.      Further Assurances.................................................................................................33
        O.      Service of Documents ............................................................................................33
        P.      Filing of Additional Documents...............................................................................33
        Q.      No Stay of Confirmation Order................................................................................33
        R.      Aid and Recognition ..............................................................................................33

**TABLE OF EXHIBITS**

TBD

## DEBTOR'S PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, the Debtor, as plan proponent, hereby respectfully proposes the following plan under chapter 11 of the Bankruptcy Code.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A.     *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     *"Administrative and Priority Claims Reserve"* means the reserve to be established and maintained by the Creditor Trust and funded by the Plan Funder for the payment of accrued but unpaid U.S. Trustee Fees and Administrative, Priority, and Professional Compensation Claims that are Allowed after the Effective Date to the extent that such Claims have not been paid in full on or before the Effective Date.

2.     *"Administrative Bar Date"* means the date determined pursuant to Article IV.H of the Plan; provided, however, the Administrative Bar Date applicable to claims arising under section 503(b)(9) is the General Bar Date.

3.     *"Administrative Claims"* means Claims that have been timely filed before the Administrative Bar Date, pursuant to the deadline and procedure set forth herein (except as otherwise provided herein or by a separate order of the Bankruptcy Court), for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date and prior to the Effective Date of preserving the Estates and operating the businesses of the Debtor and Reorganized Debtor (such as wages, salaries or commissions for services and payments for goods and other services); and (b) all fees and charges assessed against the Estates under 28 U.S.C. §1930; *provided*, *however*, that the U.S. Trustee shall not be required to file a request for payment of fees and charges assessed against the Estates under 28 U.S.C. § 1930 before the Administrative Bar Date; *provided*, *further*, that all requests of Governmental Units for payment of Administrative Tax Claims shall not be subject to the Administrative Bar Date. As used herein, the term "Administrative Claims" shall exclude Professional Compensation Claims.

4.     *"Administrative Tax Claims"* means Administrative Claims by a Governmental Unit for taxes under Section 503(b)(1)(B), (C) or (D) (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

5.     "*Affiliate*" has the meaning set forth in Section 101(2) of the Bankruptcy Code.

6.     "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in his Schedules as other than disputed, contingent or unliquidated that has not been superseded by a filed proof of Claim and as to which the Debtor, Committee, Creditor Trust or another party-in-interest has not Filed an objection by the Claims Objection Deadline; (b) a proof of Claim that has been filed and as to which the Debtor, Committee, Creditor Trust, or another party-in-interest has not Filed an objection by the Claims Objection Deadline; (c) a Claim that either is not Disputed by the Claim Objection Deadline or has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation with the Debtor or the Creditor Trust, as applicable, of amount and nature executed prior to or following the entry of the Confirmation Order and, if necessary, approved by the Bankruptcy Court; or (ii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (e) a Claim that is allowed pursuant to the terms hereof; (f) a Claim that is estimated pursuant to Section 502(c) of the Bankruptcy Code, unless otherwise and explicitly provided by order of the Bankruptcy Court; or (g) a Disputed Claim as to which a proof of Claim has been timely filed and as to which no objection has been Filed by the Claims Objection Deadline.

7. *"Assigned Causes of Action"* means any and all Causes of Action belonging to the Debtor or Reorganized Debtor and not abandoned or waived by the Creditor Trust; *provided, however*, that the Assigned Causes of Action shall exclude any (a) Released Claims against Released Parties pursuant to Article IX of this Plan; (b) exculpated rights or Causes of Action against the Exculpated Parties pursuant to Article IX of this Plan; (c) Boat Ownership Claims; and (d) rights or Causes of Action against any Entity or individual that is neither a Plan Funder nor a Plan Funder Related Party except as identified in the Plan Supplement.

8. *"Assigned Claims Objections"* means objections to Proof of Claim which relate to Assigned Causes of Action.

9. *"Avoidance Actions"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Reorganized Debtor or the Estate or the Committee or the Creditor Trust, as applicable, under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code.

10. *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

11. *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Connecticut.

12. *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Connecticut, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

13. *"Boat"* means that certain pleasure yacht, the "Lady May," Signal Letters ZGDQ9, registered in the Cayman Islands to HK USA.

14. *"Boat Contribution"* means the contribution of the Boat by HK USA to the Creditor Trust.

15. *"Boat Ownership Claims"* means any claim or Cause of Action belonging to any party, other than HK USA prior to the Effective Date of the Plan and the Creditor Trust thereafter, to ownership of the Boat.

16. *"Boat Election"* means the Election of a holder of a Claim entitled to treatment pursuant to Art. III.B.3(b)(ii) hereof, to (i) become a Releasing Party as defined herein and (ii) receive from the Creditor Trust a Pro Rata Share of the Boat or its value.

17. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Fed. R. Bankr. P. 9006(a)).

18. *"Cash"* means legal tender of the United States of America or the equivalent thereof.

19. *"Causes of Action"* means all claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims that are or may be pending on the Effective Date or instituted after the Effective Date against any Entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

20. *"Chapter 11 Case"* means the Chapter 11 Case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date. The Chapter 11 Case was assigned case number 22-50073 (JAM).

21. *"Claim"* means a "claim" (as that term is defined in Section 101(5) of the Bankruptcy Code) against the Debtor.

22. "*Claims Objection Deadline*" means the last day for filing objections to Claims, including any extensions thereof, as provided in Article VI of the Plan.

23. "*Claims Register*" means the official claims register in the Debtor's Chapter 11 Case maintained by the Noticing Agent on behalf of the Clerk of the Bankruptcy Court.

24. "*Class*" means a category of holders of Claims as set forth in Article III hereof pursuant to Section 1122(a) of the Bankruptcy Code.

25. "*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the United States Trustee in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

26. "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

27. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

28. "*Creditor Trust*" means the creditor recovery trust established on the Effective Date in accordance with Article IV.D.2 of the Plan and the Creditor Trust Agreement.

29. "*Creditor Trust Agreement*" means the agreement to be executed as of the Effective Date substantially in the form filed in the Plan Supplement establishing the Creditor Trust and delineating the terms and conditions of the Creditor Trust, including the powers, rights and duties of the Creditor Trustee.

30. "*Creditor Trust Estate Assets*" means, collectively, all property of the Debtor's Estate as of the Effective Date, including the Assigned Causes of Action and the DIP Facility Cash, but excluding (a) exempt property pursuant to section 522 of the Bankruptcy Code, (b) property included in the Estate by virtue of section 1115 of the Bankruptcy Code, (c) Retained Causes of Action, (d) Released Claims, (e) the UC Cash and the Remaining UC Cash, and (f) the Boat and any Boat Ownership Claims.

31. "*Creditor Trust Beneficiary*" means a Holder of an Allowed Claim entitled to treatment pursuant to Article III.B hereof.

32. "*Creditor Trustee*" means the disinterested individual selected by the Debtor and disclosed prior to the Confirmation Hearing to act as trustee of and administer the Creditor Trust.

33. "*CT Assets*" means all assets of any kind held by the Creditor Trust.

34. "*Cure Cost*" means all amounts required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

35. "*Debtor*" or "*Debtor in Possession*" means, collectively, the above-captioned Debtor and Debtor in possession specifically identified on the cover page to this Plan.

36. "*Debtor Privilege*" means any attorney-client privilege, work product protection, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) held by the Debtor.

37. "*DIP Facility*" means the subordinated term loan from the DIP Lender to the Debtor, subject to and as further described in the [*Interim DIP Order (I) Authorizing the Debtor to Obtain Unsecured, Subordinated Postpetition Financing and (II) Scheduling Interim and Final Hearings, and (III) Granting Related Relief*] [Docket No. [●]], and including all interest, fees and reimbursement obligations arising thereunder.

38. "*DIP Facility Claim*" means the claim of the DIP Lender under the DIP Facility.

39. "*DIP Facility Cash*" means the $1,000,000 Cash contribution to the Estate, defined in the DIP Facility documents as the Estate Contribution Loan, to the extent remaining as of the Effective Date.

40. "*DIP Lender*" means Golden Spring, solely in its capacity as the lender under the DIP Facility.

41. "*Disclosure Statement Order*" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on [DATE] [ECF NO.  ].

42. "*Disclosure Statement*" means the *Disclosure Statement for Proposed Chapter 11 Plan of Ho Wan Kwok*, dated as of [  ], prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

43. "*Disputed*" means, with respect to any Claim, that portion (or the entirety) of the Claim that is not an Allowed Claim and: (a) as to which a Proof of Claim has been filed or deemed filed under the Bankruptcy Code or an order of the Bankruptcy Court; (b) as to which the Debtor, Committee, or Creditor Trust has Filed or may File a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, Plan, or Creditor Trust Agreement, as applicable; or (c) is otherwise disputed by the Debtor, Committee, or Creditor Trust in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.  Before the time that an objection has been or may be filed, a Claim shall also be considered Disputed (x) if the amount or classification of the Claim specified in any proof of Claim exceeds or varies from the amount or classification of any corresponding Claim scheduled by the Debtor in his Schedules; (y) in its entirety, if any corresponding Claim scheduled by the Debtor was scheduled as unliquidated, disputed, or contingent in the Debtor's Schedules; or (z) in its entirety, if no corresponding Claim was scheduled by the Debtor in his Schedules.

44. "*Disputed Claim Reserve*" means one or more reserves of such Cash as the Creditor Trust estimates to be reasonably necessary to satisfy the Distributions that could be required to be made by the Creditor Trust under the Plan and the Creditor Trust Agreement on account of Allowed Administrative Claims, Priority Claims, Professional Compensation Claims, or otherwise.

45. "*Distributions*" means the distributions of Cash to be made to Holders of Allowed Claims, Priority Liquidating Trust Assets, and Subordinated Liquidating Trust Assets in accordance with the Plan.

46. "*Distribution Date*" means the Initial Distribution Date and any Subsequent Distribution Date.

47. "*Effective Date*" means the date established pursuant to Article VIII of the Plan.

48. "*Entity*" has the meaning set forth in Section 101(15) of the Bankruptcy Code.

49. "*Estate*" means the estate of the Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

50. "*Exculpated Parties*" means, collectively, (a) the Debtor, (c) the Committee and each of its members solely in such capacity, (d) any chapter 11 trustee and/or examiner appointed in the Chapter 11 Case, and (e) each of the respective professionals of the foregoing that served in such capacities at any time between the Petition Date and the Effective Date.

51. "*Executory Contract*" means a contract or lease to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

52. "*File*" or "*Filed*" means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules.

53. "*Final Certification*" means a Filing by the Creditor Trust with the Bankruptcy Court (a) certifying that all distributions on Allowed Claims have been made, and (b) certifying that the Creditor Trust's duties have all been completed.

54. "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

55. "*General Bar Date Order*" means the *Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Docket No. ] and any other and further order(s) entered by the Court establishing the bar dates for filing proofs of claim and granting related relief and implementing related procedures.

56. "*General Bar Date*" means the date established in the General Bar Date Order as the deadline for the filing of proofs of claim other than claims of Government Units or claims otherwise subject to specific timing restrictions and claims arising under section 503(b)(9) of the Bankruptcy Code.

57. "*General Unsecured Claims*" means Unsecured Litigation Claims and Unsecured Trade Claims.

58. "*Golden Spring*" means Golden Spring (New York) Ltd.

59. "*Governmental Unit Bar Date*" means the date established in the General Bar Date Order as the deadline for the filing of proofs of claim by and for each and every Governmental Unit.

60. "*Governmental Unit*" has the meaning set forth in Section 101(27) of the Bankruptcy Code. Av

61. "*HK USA*" means HK International Funds Investments (USA) Limited, LLC, an entity with a registered address of 203 NE Front Street, Suite 101, Milford, DE 19963.

62. "*Holders*" means holders of Allowed Claims entitled to receive Distributions from the Reorganized Debtor under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

63. "*Impaired*" means, with respect to a Claim, or Class of Claims, "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

64. "*Initial Distribution Date*" means the date on which the Creditor Trust shall make its initial Distribution, which shall be a date selected by the Creditor Trustee.

65. "*Insider*" has the meaning ascribed to such term under section 101(31) of the Bankruptcy Code.

66. "*Lamp*" means Lamp, LLC.

67. "*Litigation Funding Claims*" means the Claims held by Golden Spring and Lamp, including but not limited to any DIP Facility Claims.

68. "*Net Proceeds*" means any amounts collected by the Reorganized Debtor from any disposition of any property, after payment of all reasonable and customary costs and expenses associated therewith which may be required to be paid under applicable law or agreement to effectuate the receipt of such proceeds, including, without limitation, any reasonable attorney fees not otherwise paid under the Plan as an Administrative Claim.

69. "*Noticing Agent*" means Stretto, Inc.

70. "*Other Secured Claim*" means any Secured Claim that is not a Litigation Funding Claim.

71. "*Person*" has the meaning ascribed to such term in Bankruptcy Code Section 101(41).

72. "*Petition Date*" means February 15, 2022, the date on which the Debtor Filed the Chapter 11 Case.

73. "*Plan*" means this plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

74. "*Plan Funders*" means Golden Spring and HK USA.

75. "*Plan Funder Related Parties*" means all individuals and entities affiliated with the Plan Funders and shall include, for the avoidance of doubt, the parties identified in Exhibit [●] to this Plan (as may be further amended or supplemented by the Plan Supplement).

76. "*Plan Funder Released Claims*" means any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever against the Plan Funder in connection with or in any way relating to the DIP Facility, the Disclosure Statement or the Plan (other than the rights of the Debtor, the Reorganized Debtor or the Creditor Trust to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, whether for tort, contract, violation of federal or state securities or other law, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date.

77. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to the Plan, as the same may be altered, amended, modified, or supplemented.

78. "*Plan Supplement Filing Date*" means the date that is (A) at least six calendar days prior to (1) the Voting Deadline and (2) the date on which objections to Confirmation are due, or (B) such other date as may be determined by order of the Bankruptcy Court.

79. "*Priority Claims*" means Priority Non-Tax Claims and Priority Tax Claims.

80. "*Priority Non-Tax Claims*" means Claims or portions thereof entitled to priority in payment pursuant to Sections 507(a)(4), 507(a)(5), 507(a)(7) or 507(a)(9) of the Bankruptcy Code, in any case to the greatest extent permitted.

81. "*Priority Tax Claims*" means Claims of Governmental Units of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

82. "*Pro Rata Share*" means, as to a particular holder of a particular Claim, the ratio that the amount of such Claim held by such claimholder bears to the aggregate amount of all Claims in the particular Class or category. Such ratio shall be calculated as if all Claims in the particular Class or category asserted against all Debtor are Allowed Claims as of the Effective Date, unless specifically provided otherwise in the Plan.

83. "*Professional*" means (a) any Entity employed pursuant to a Final Order in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered and expenses incurred pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; and (b) ordinary course Professionals that were retained with permission of the Court.

84. "*Professional Compensation Claim*" means a Claim of a Professional for professional services rendered or costs incurred on or after the Petition Date. For the avoidance of doubt, Professional Compensation Claims may include Claims of Professionals for services estimated to be provided through and including the Effective Date.

85. "*Professional Claims Bar Date*" means 5:00 p.m. (Prevailing Eastern Time) on the date that is the first Business Day after the date that is forty-five (45) days after the Effective Date.

86. "*Record Date*" means the record date for determining the entitlement of Holders to receive Distributions under the Plan on account of Allowed Claims which shall be five (5) Business Days prior to the Confirmation Date.

87. "*Related Parties*" means, with respect to any party, its Affiliates, its and its Affiliates' predecessors, successors and assigns, subsidiaries, managed accounts or funds, current and former directors, principals, managers,

officers, and equity interest holders (whether such interests are held directly or indirectly), equity interest holders' Affiliates, spouses, trusts, assigns, heirs, beneficiaries, members, partners, current and former employees, advisors, accountants, representatives, attorneys, and other professionals, each in their capacity as such.

88. *"Related Parties Released Claims"* means any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever against the Plan Funders and Plan Funder Related Parties in connection with or in any way relating to the Debtor and his Chapter 11 Case (other than the rights of the Debtor, the Reorganized Debtor or the Creditor Trust to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, whether for tort, contract, violation of federal or state securities or other law, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date.

89. *"Released Claims"* means any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever in connection with or in any way relating to the Debtor, the conduct of the Debtor, the Chapter 11 Case, the Disclosure Statement or the Plan (other than the rights of the Debtor, the Committee, the Creditor Trust or a creditor holding an Allowed Claim to enforce the obligations under the Confirmation Order and this Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, whether for tort, contract, violation of federal or state securities or other law, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, including but not limited to the Plan Funder Released Claims and Related Parties Released Claims.

90. *"Released Parties"* means, collectively, the Debtor, the Plan Funders, the Plan Funder Related Parties, the Committee and each of its members solely in such capacity, any chapter 11 trustee or examiner appointed in the Chapter 11 Case, and the current and former Representatives of each of the foregoing (each in their capacities as such).

91. *"Releasing Parties"* means (A) the Debtor, on behalf of himself and his Estate, (B) the Committee, (C) each holder of an Allowed Unsecured Trade Claim, (D) each Holder of a Claim entitled to treatment pursuant to Art. III.B.3 that makes the Boat Election, and (E) any other holder of a Claim who is entitled to vote to accept or reject the Plan, if (1) such holder votes to accept the Plan, or (2) such holder votes to reject the Plan and is not a Third Party Release Opt Out Creditor.

92. "*Remaining UC Cash*" means any UC Cash remaining following satisfaction by the Creditor Trust of all Claims entitled to treatment pursuant to Arts. III.B.3(b)(i) and III.B.4.

93. *"Retained Causes of Action"* means any and all Causes of Action belonging to the Debtor or Reorganized Debtor that are not Assigned Causes of Action; *provided, however*, that the Retained Causes of Action shall exclude any (a) Released Claims against Released Parties pursuant to Article IX of this Plan; (b) exculpated rights or Causes of Action against the Exculpated Parties pursuant to Article IX of this Plan; and (c) Boat Ownership Claims.

94. *"Reorganized Debtor"* means the Debtor, on and after the Effective Date.

95. *"Representatives"* means, with regard to any Entity, its officers, managers, directors, current and former employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants and agents, each in their capacities as such. For purposes of this definition, the term "manager" shall mean the manager of a board of managers of a limited liability company.

96. *"Residual Interest"* means the interest of the Debtor in the Creditor Trust Estate Assets after satisfaction of all Claims in accordance with the terms of this Plan.

97. "*Schedules*" means the *Schedules of Assets and Liabilities and Statement of Financial Affairs*, filed on March 9, 2022, as may be amended or supplemented.

98.  "*Secured Claim*" means a Claim that is secured (i) by a lien that is valid, perfected and enforceable under the Bankruptcy Code or applicable non-bankruptcy law or by reason of a Final Order; or (ii) as a result of rights of setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

99.  "*Subsequent Distribution Date*" means the date(s) following the Initial Distribution Date on which the Creditor Trust shall make one or more Distribution(s), which date(s) shall be selected by the Creditor Trustee in his or her business judgment.

100.  "*Taxing Authority"* means any Governmental Unit responsible for the assessment, accounting and/or collection of tax revenues, including but not limited to the Texas Comptroller of Public Accounts, Revenue Accounting Division.

101. "*Third Party Release Opt Out Creditor*" means a creditor which has voted to reject this Plan and affirmatively opted out of providing the releases of the Plan Funder or the Plan Funder Related Parties set forth in Article IX of this Plan on the ballot used to solicit votes to accept or reject the Plan.

102. "*U.S. Trustee*" means the United States Trustee for Region 2.

103. "*Unexpired Lease*" means a lease to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code, if any.

104. "*Unimpaired*" means, with respect to a Claim, or Class of Claims, not "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

105. "*Unsecured Litigation Claim*" means a claim which arose prior to the Petition Date which (a) is not entitled to priority under section 507 of the Bankruptcy Code, (b) is not a Secured Claim, (c) is not a Litigation Funding Claim, (d) is not an Unsecured Trade Claim, and (e) arises under, or is related to, any pending or threatened litigation against the Debtor as of the Petition Date.

106. "*Unsecured Trade Claim*" means an claim which (a) is not entitled to priority under section 507 of the Bankruptcy Code (b) is not a Secured Claim, (c) is not a Litigation Funding Claim, and (d) is not an Unsecured Litigation Claim; *provided, however*, an Unsecured Trade Claim shall include the pre-Petition Date Claims held by a provider of goods or services engaged by the Debtor in connection with any litigation asserted by or against the Debtor; *provided further, however,* that to receive the treatment afforded an Unsecured Trade Claim, the Holder of any such Claim must agree to (x) become a Releasing Party as defined herein and (y) provide the Debtor with trade credit terms at least as favorable as those provided to the Debtor within the 90 days prior to the Petition Date.  Any Holder of a potential Unsecured Trade Claim that declines to provide such releases and trade credit terms shall, instead, have its Claim treated as a Class 3 Unsecured Litigation Claim.

107. "*UC Cash*" means Cash contributed by the Plan Funder to the Creditor Trust in an amount sufficient to satisfy the all Claims entitled to treatment pursuant to Art. III.B.3(b)(ii) or III.B.4.

B.     *Rules of Interpretation*

1.     For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings of Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is

not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Fed. R. Bankr. P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

4.    To the extent of any inconsistency between this Plan and the Disclosure Statement filed in connection herewith, the Plan Supplement or any component thereof, or the Debtor Organizational Documents, the Plan shall control.

C.    *Exhibits*

All exhibits to this Plan will be included with the Plan Supplement, which will be Filed in substantially final form with the Bankruptcy Court no later than ten (10) calendar days prior to the deadline to vote to accept or reject the Plan.  The Plan Supplement shall be available for inspection (i) at the Office of the Clerk of the Bankruptcy Court, or (ii) at http://www.pacer.gov, or (iii) from the Noticing Agent website at https://cases.stretto.com/HoWanKwok, or (iv) additionally, interested parties may also obtain a copy of the Plan Supplement (including all exhibits contained therein), once filed, from the Debtor by a written request sent to:  Brown Rudnick LLP, 7 Times Square, 47th Fl., New York, NY 10036, Attn: Alexandra Deering, Paralegal.

## ARTICLE II

## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

A.    *Administrative Claims*

Subject to the provisions of Sections 328, 330(a), and 331 of the Bankruptcy Code, the Debtor or the Creditor Trust after the Effective Date, as applicable, shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash:  (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtor or the Reorganized Debtor, as applicable; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided*, *however*, that the U.S. Trustee shall not be required to file a request for payment of fees and charges assessed against the Estates under 28 U.S.C. §1930 before the applicable Administrative Bar Date.

B.    *Professional Compensation Claims*

1.    The Bankruptcy Court shall fix in the Confirmation Order a deadline for filing all Professional Compensation Claims with respect to services provided prior to the Effective Date, which deadline may be extended for one or more Professionals by agreement of the Reorganized Debtor.  Any Professional Compensation Claim not Filed by the Professional Claims Bar Date shall be deemed disallowed under this Plan and shall be forever barred against the Estates, the Reorganized Debtor, the Creditor Trust or any other property held or maintained by the Reorganized Debtor or the Creditor Trust, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.  Subject to the provisions of Sections 328, 330(a), and 331 of the Bankruptcy Code, the Debtor or the Creditor Trust after the Effective Date, as applicable, shall pay each holder of an Allowed Professional Compensation Claim the full unpaid amount of such Allowed Professional Compensation Claim in Cash no later than five (5) Business Days after the date that such Claim is Allowed by order entered by the Bankruptcy Court, notwithstanding any pending appeal or request for stay or reconsideration of such order.

2.      From and after the Effective Date, (a) the Reorganized Debtor shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to the implementation of the Plan incurred on or after the Effective Date by the Reorganized Debtor, *provided that*, such fees and expenses shall not be paid or payable from the Administrative and Priority Claims Reserve; and (b) the Creditor Trust shall, without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to the implementation of the Plan incurred on or after the Effective Date by the Creditor Trust.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code and Local Bankruptcy Rules, or any order of the Bankruptcy Court in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor and Creditor Trust may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the terms of this Article II.B.2.

C.      *Priority Tax Claims*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the applicable Debtor or Creditor Trust, as applicable, and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor or Creditor Trust, as applicable, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid by the Reorganized Debtor in full in Cash in accordance with the terms of any agreement between the Debtor and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.  To the extent the Debtor or Reorganized Debtor receive any refund from a Taxing Authority relating to a period preceding the Effective Date, such refund shall be applied against the outstanding Priority Tax Claims, if any, filed by the Taxing Authority from which such refund is due, and any remaining refund from a Taxing Authority shall be transferred to the Reorganized Debtor.

D.      *United States Trustee Statutory Fees*

The Debtor and the Reorganized Debtor, as applicable, shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's or Reorganized Debtor's business, for each quarter (including any fraction thereof) until the Chapter 11 Case are converted, dismissed, or closed, whichever occurs first.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS

A.      *Summary*

1.      In accordance with Section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims, Professional Compensation Claims, United States Trustee fees and Priority Tax Claims, as described in Article II.  Accordingly, except for such Claims, all Claims are placed in Classes as set forth below.

2.      The following table classifies Claims against the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| 2 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote; Deemed to Accept |
| 3 | Unsecured Litigation Claims | Impaired | Entitled to Vote |
| 4 | Unsecured Trade Claims | Impaired | Entitled to Vote |
| 5 | Litigation Funding Claims | Impaired | Entitled to Vote |

B.    *Classification and Treatment of Claims*

1.    Other Secured Claims (Class 1)

(a)  *Classification*:  Class 1 consists of Other Secured Claims.

(b)  *Treatment*:  Unless otherwise mutually agreed upon by the holder of an Allowed Other Secured Claim and the Debtor or Creditor Trust, as applicable, on the later of the Effective Date and the date such Other Secured Claim becomes Allowed, or as soon thereafter as is practicable, the Creditor Trust shall, at the Creditor Trust's sole and exclusive election and to the extent applicable, in full and final satisfaction of such Other Secured Claim, do one of the following:

(i)    Deliver to the holder of such Claim the collateral securing such Allowed Other Secured Claim;

(ii)    Pay to the holder of such Claim Cash in an amount equal to the value of such collateral; or

(iii)    Provide such other treatment that renders such Allowed Other Secured Claim Unimpaired.

(c)  *Voting*: Class 1 is Unimpaired, and each holder of an Other Secured Claim is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote on the Plan.

2.    Priority Non-Tax Claims (Class 2)

(a)  *Classification*:  Class 2 consists of Priority Non-Tax Claims.

(b)  *Treatment:*  Unless otherwise mutually agreed upon by the holder of an Allowed Class 2 Priority Non-Tax Claim and the Debtor or Creditor Trust, as applicable, on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes Allowed, or as soon thereafter as is practicable, the  Creditor Trust shall pay to each holder of an Allowed Class 2 Priority Non-Tax Claim the full amount of such Allowed Class 2 Priority Non-Tax Claim in Cash in full and final satisfaction of such Allowed Priority Non-Tax Claim.

(c)  *Voting*:  Class 2 is Unimpaired, and each holder of a Class 2 Priority Non-Tax Claim is conclusively deemed to have accepted the Plan and, therefore, is not entitled to vote on the Plan.

3.    Unsecured Litigation Claims (Class 3)

(a)  *Classification*:  Class 3 consists of Unsecured Litigation Claims.

(b)  *Treatment*:  Holders of Allowed Unsecured Litigation Claims may elect between the following mutually exclusive treatment options:

(i)    On or as soon as practicable after the Initial Distribution Date and/or any Subsequent Distribution Date, the Creditor Trust shall pay to the Holder, in full and final satisfaction of such Allowed Unsecured Litigation Claim, an amount of Cash equal to ten percent (10%) of the allowed amount of such claim;

(ii)     On or as soon as practicable after the Initial Distribution Date and/or any Subsequent Distribution Date, the Creditor Trust shall pay to the Holder, in full and final satisfaction of such Allowed Unsecured Litigation Claim, its Pro Rata share of the Remaining Creditor Trust Estate Assets; *provided that* prior to the voting record date on the Plan, such Holder shall indicate its preference to make, or not make, the Boat Election.

(c)  *Voting*:  Class 3 is Impaired, and holders of Unsecured Litigation Claims are entitled to vote to accept or reject the Plan.

4.   Unsecured Trade Claims (Class 4)

(a)  *Classification*:  Class 4 consists of Unsecured Trade Claims.

(b)  *Treatment*:  On or as soon as practicable after the Initial Distribution Date and/or any Subsequent Distribution Date, the Creditor Trust shall pay each Holder of an Allowed Unsecured Trade Claim, in full and final satisfaction of such Allowed Unsecured Trade Claim, an amount of Cash equal to ten percent (10%) of the allowed amount of such Claim.

(c)  *Voting*:  Class 4 is Impaired, and holders of Unsecured Trade Claims are entitled to vote to accept or reject the Plan.

5.   Litigation Funding Claims (Class 5)

(a)  *Classification*:  Class 5 consists of the Litigation Funding Claims.

(b)  *Treatment*:  The Holders of the Class 5 Litigation Funding Claims shall receive the Subordinated Liquidating Trust Interests in satisfaction of such Class 5 Family Office Claims; *provided, however*, no distribution shall be made on account of a Class 5 Litigation Funding Claim in excess of the Allowed Amount of such Claim.

(c)  *Voting*:  Class 5 is Impaired, and the holders of the Litigation Funding Claims are entitled to vote to accept or reject the Plan.  To the extent the Holder of a Litigation Funding Claim is an Insider of the Debtor, the vote by such Holder shall not be considered for purposes of satisfaction of section 1129(a)(10) of the Bankruptcy Code.

C.     *Elimination of Vacant Classes*

Any Class of Claims that does not contain, as of the Confirmation Date, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

D.     *Allocation of Distributions Between Principal and Interest*

For Distributions in respect of Allowed Claims, to the extent that any such Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

E.     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Creditor Trust and/or Reorganized Debtor in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

F.     *Non-Consensual Confirmation*

The Debtor reserve the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. To the extent that any Class votes to reject the Plan, the Debtor further reserve the right to modify the Plan in accordance with Article XI.A.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.     *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor, Plan Funders and Creditor Trust may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including the execution, filing, and/or performance upon all documents filed with the Plan Supplement, and further including but not limited to: (1) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, including but not limited to any documentation related to the Creditor Trust Agreement; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (3) all other actions that the Reorganized Debtor and Creditor Trust, as applicable, determine are necessary or appropriate.

C.     *The Reorganized Debtor*

1.     Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, (a) all Creditor Trust Estate Assets shall vest in the Creditor Trust and (b) all property of the Estate which is not a Creditor Trust Estate Asset, including Retained Causes of Action, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

2.     At such times and on such terms as reasonably convenient to the Creditor Trust and the Reorganized Debtor, at the expense of the Creditor Trust, the Reorganized Debtor shall provide to the Creditor Trust timely access to the Debtor's books and records (subject to the Reorganized Debtor's power to preserve any Debtor Privilege), if any, and shall otherwise cooperate with the Creditor Trust in fulfillment of the Creditor Trust's duties as described further herein.

3.     All Debtor Privileges shall automatically vest in the Reorganized Debtor and his Representatives.

4.     The Creditor Trustee shall (i) be the beneficiary of Debtor Privileges and (ii) be entitled to assert all Debtor Privileges, in either case solely to the extent such Debtor Privileges relate to the Assigned Causes of Action or Assigned Claims Objections.  To the extent necessary for the Creditor Trustee to act in accordance with the terms of the Plan and Creditor Trust Agreement, Debtor Privileges shall be extended to the Creditor Trustee, without waiver or release.  No Debtor Privilege shall be waived by disclosure to the Creditor Trustee of the Debtor's documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure held by the Debtor.  For the avoidance of doubt, the Creditor Trustee shall not have any

rights or ability to waive any privilege of the Reorganized Debtor, either intentionally or inadvertently.  The foregoing shall not operate as a waiver or other impairment of other privileges possessed or retained by the Debtor.

5.  Upon the satisfaction of all Claims against the Debtor, the Creditor Trust shall transfer all remaining Creditor Trust Estate Assets to the Reorganized Debtor on account of the Debtor's Residual Interest in such assets. Upon such transfer, all Assigned Causes of Action shall be deemed Retained Causes of Action and shall vest with the Reorganized Debtor in accordance with paragraph Art. IV.C.1, above and Art. IV.J, below.

D.  *Creditor Trust*

1.  Appointments.

(a)  On and after the Effective Date, the initial Creditor Trustee shall become and serve as Creditor Trustee. The Creditor Trustee will receive compensation and reimbursement of reasonable expenses, as shall be specifically set forth in the Creditor Trust Agreement.  The Creditor Trustee shall not be required to file a fee application to receive compensation.

(b)  The Creditor Trustee will be a disinterested Person designated by the Debtor in the Plan Supplement.

(c)  The Creditor Trustee shall carry out the duties as set forth in this Article IV.D. and in the Creditor Trust Agreement.  Pursuant to Bankruptcy Code § 1123(b)(3), the Creditor Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle the Assigned Causes of Action and Assigned Claims Objections in accordance with the best interests of and for the benefit of the Creditor Trust's Beneficiaries.

(d)  The Creditor Trustee shall have the power and authority to perform the acts described in the Creditor Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Creditor Trustee to act as specifically authorized by any other provision of this Plan, the Creditor Trust Agreement, and/or any applicable law, and to act in such manner as the Creditor Trustee may deem necessary or appropriate to take any act deemed appropriate by the Creditor Trustee, including, without limitation, to discharge all obligations assumed by the Creditor Trustee or provided herein and to conserve and protect the Creditor Trust or to confer on the creditors the benefits intended to be conferred upon them by this Plan.  The Creditor Trustee shall have the power and authority without further approval by the Court to liquidate the CT Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Estate Claims, and otherwise take any action as shall be necessary to administer the cases and effect the closing of the cases, including, without limitation, as follows: (a) the power to invest funds, in accordance with section 345 of the Bankruptcy Code, and withdraw, make Distributions and pay taxes and other obligations owed by the Creditor Trust from funds held by the Creditor Trustee in accordance with this Plan and Creditor Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Creditor Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve and compromise and settle any Assigned Causes of Action on behalf of the Creditor Trust without prior Bankruptcy Court approval but in accordance with the Creditor Trust Agreement; (d) the power to commence the Assigned Claims Objections, including, without limitation, the power to subordinate and recharacterize Claims related to Assigned Causes of Action by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Creditor Trustee pursuant to this Plan, the Creditor Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan.

(e)  Except as expressly set forth in this Plan and in the Creditor Trust Agreement, the Creditor Trustee, on behalf of the Creditor Trust, shall have absolute discretion to pursue or not to pursue any Assigned Cause of Action as it determines is in the best interests of the Creditor Trust's Beneficiaries and consistent with the purposes of the Creditor Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct.  The Creditor Trustee may

incur any reasonable and necessary expenses in liquidating and converting the CT Assets to Cash. Subject to the other terms and provisions of this Plan, the Creditor Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Assigned Causes of Action based upon its powers as a Bankruptcy Court-appointed representative of the Debtor's Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.

(f)   In the event that the Creditor Trustee resigns, is removed, terminated or otherwise unable to serve as the Creditor Trustee, then a successor shall be appointed as set forth in the Creditor Trust Agreement. Any successor Creditor Trustee appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Creditor Trust Agreement

2.   Creation and Governance of the Creditor Trust.

(a)   On the Effective Date, the Creditor Trustee shall execute the Creditor Trust Agreement and shall take any other steps necessary to establish the Creditor Trust in accordance with the Plan and the beneficial interests therein. The Creditor Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, any and all provisions necessary to ensure the continued treatment of the Creditor Trust as a grantor trust and the Creditor Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. The Creditor Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Creditor Trust as a "liquidating trust" for United States federal income tax purposes.

(b)   Upon establishment of the Creditor Trust, all Creditor Trust Estate Assets shall be deemed transferred to the Creditor Trust on the Effective Date without any further action of any of the Debtor or any employees, agents, advisors, or representatives of the Debtor. The Creditor Trustee shall agree to accept and hold the CT Assets for the benefit of the Creditor Trust Beneficiaries, subject to the terms of the Plan and the Creditor Trust Agreement. The Debtor, the Plan Funders, the Creditor Trustee, the Creditor Trust Beneficiaries, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to cause title to the Creditor Trust Estate Assets, the Boat and the UC Cash to be transferred to the Creditor Trust.

(c)   For federal income tax purposes, the transfer of the assets to the Creditor Trust will be treated as a taxable sale or other disposition of assets to the Creditor Trust Beneficiaries in exchange for their Claims in the Chapter 11 Case. A Holder of a Claim should in most circumstances recognize gain or loss equal to the difference between the "amount realized" received by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received in such exchange.  The tax basis of a Holder in a Claim will generally be equal to the holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (that is, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the claim in the Holder's hands, the purposes and circumstances of the claim's acquisition, the Holder's holding period of the claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the claim.

(d)   For United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Creditor Trustee, and the Creditor Trust Beneficiaries) shall treat the transfer of the Creditor Trust Estate Assets, Boat and UC Cash to the Creditor Trust as (1) a transfer of the Creditor Trust Estate Assets to the Creditor Trust Beneficiaries, followed by (2) the contribution of such assets to the Creditor Trust in exchange for interests therein. As soon as possible after the Effective Date, the Creditor Trustee shall make (or cause to be made) a good faith valuation of the assets of the Creditor Trust, and such valuation shall be used consistently by all parties for United States federal income tax purposes. Accordingly, Creditor Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective

15

shares of CT Assets (other than such Creditor Trust Estate Assets as are allocable to Disputed Claims). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(e)    The Creditor Trustee shall file returns for the Creditor Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with the Plan. The Creditor Trust's taxable income, gain, loss, deduction, or credit will be allocated to each of the Creditor Trust Beneficiaries in accordance with their relative beneficial interests in the Creditor Trust.

(f)    Allocations of Creditor Trust taxable income among Creditor Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Creditor Trust had distributed all its assets (valued at their tax book value, other than assets allocable Disputed Claims) to the holders of Creditor Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Creditor Trust. Similarly, taxable loss of the Creditor Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Creditor Trust Estate Assets. The tax book value of CT Assets for purpose of this paragraph shall equal their fair market value on the date CT Assets are transferred to the Creditor Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(g)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Creditor Trustee (i) may timely elect to treat any CT Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Creditor Trustee and Creditor Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(h)    The Creditor Trust shall be responsible for payment, out of Creditor Trust Estate Assets, of any taxes imposed on the Creditor Trust (including any Disputed Claim Reserve) or the Creditor Trust Estate Assets. More particularly, any taxes imposed on any Disputed Claim Reserve or its assets will be paid out of the assets of the Disputed Claim Reserve (including any Creditor Trust Estate Assets allocable to Disputed Claims), and netted against any subsequent distributions in respect of the allowance or disallowance of such Claims.

(i)    The Creditor Trust shall be governed by the Creditor Trust Agreement and administered by the Creditor Trustee. The powers, rights, and responsibilities of the Creditor Trustee shall be specified in the Creditor Trust Agreement.

3.    <u>Vesting of Creditor Trust Estate Assets.</u>  On the Effective Date, the Creditor Trust will automatically be vested with all of the Debtor's and the Estates' respective rights, title, and interest in and to all Creditor Trust Estate Assets, free and clear of all Claims, Liens, encumbrances, charges, and other interests. Upon completion of the transfer of the Creditor Trust Estate Assets to the Creditor Trust, except as otherwise set forth in the Plan or Confirmation Order, the Debtor and Reorganized Debtor will have no further interest in, or with respect to, the Creditor Trust Estate Assets, or the Creditor Trust, other than the Reorganized Debtor's Residual Interest. Likewise, upon completion of such transfer and subject to such exceptions as may be set forth in the Plan or Confirmation Order, the Creditor Trust shall have no rights, title, or interest in or to any property of the Debtor or the Estates other than the Creditor Trust Estate Assets. The Creditor Trust shall hold and distribute the Creditor Trust Estate Assets in accordance with the provisions of the Plan and the Creditor Trust Agreement.

4.    <u>Paying Agent</u>. On the Effective Date, the Creditor Trust will receive the UC Cash free and clear of all Claims, Liens, encumbrances, charges, and other interests. The Creditor Trustee shall act as paying agent with respect to Holders of Unsecured Trade Claims and Claims entitled to treatment pursuant to Art. III.B.3(b)(i).

5.   Purpose of the Creditor Trust.  The Creditor Trust shall be established for the purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business.

6.   Authority.  The Creditor Trustee shall have the authority and right on behalf of the Debtor and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan or the Creditor Trust Agreement) to carry out and implement all applicable provisions of the Plan, including to:

(a)   Evaluate, file, litigate, settle, or otherwise pursue any of the Assigned Causes of Action;

(b)   review, reconcile, compromise, settle, seek to subordinate, or object to Claims related to Assigned Causes of Action, whether filed or scheduled (and regardless of whether they were scheduled as undisputed, noncontingent or liquidated), and resolve such Assigned Claim Objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(c)   calculate and make interim and final Distributions under the Plan;

(d)   calculate and establish a Disputed Claims Reserve under and in accordance with the Plan and Creditor Trust Agreement;

(e)   retain, compensate, and employ professionals and other Persons to represent the Creditor Trustee with respect to and in connection with its rights and responsibilities;

(f)   establish, maintain, and administer documents and accounts as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(g)   maintain, conserve, collect, settle, manage, invest, enforce and protect the CT Assets, including all rights and remedies thereunder, arising therefrom or associated therewith;

(h)   sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the CT Assets or any part thereof or interest therein upon such terms as the Creditor Trustee determines to be necessary, desirable, appropriate, or desirable;

(i)   negotiate, incur, and pay the expenses of the Creditor Trust;

(j)   prepare and file any and all tax and informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtor that are required under the Plan, by any governmental unit, or by applicable law;

(k)   compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

(l)   remit to Golden Spring any Remaining UC Cash following satisfaction of Claims entitled to treatment pursuant to Arts. III.B.3(b)(i) and III.B.4;

(m)   request and obtain access to the books and records of the Debtor (excluding any items which may implicate any Debtor Privileges that are unrelated to the Assigned Causes of Action);

(n)   invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities

(o)   destroy records of the Creditor Trust;

(p)   wind up the affairs of the Creditor Trust and dissolve the Creditor Trust under applicable law;

(q)   subject to Art. IV.F.2 and IV.N hereof, close these Chapter 11 Case;

(r)   comply with the Plan, exercise the Creditor Trustee's rights, and perform the Creditor Trustee's obligations; and

(s)   exercise such other powers as deemed by the Creditor Trustee to be necessary and proper to implement the Plan.

7.   <u>Trust Expenses</u>.  The Creditor Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid actual and necessary fees, costs, expenses and obligations incurred by or owed to the Creditor Trustee and his or her agents, employees, attorneys, advisors and other professionals in administering this Plan and the Creditor Trust, including, without limitation, reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Creditor Trustee and his or her agents, employees and professionals after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Case.  All such fees, costs, expenses and obligations shall be charged against and paid from the Creditor Trust Estate Assets.

8.   <u>Non-Transferability of Creditor Trust Interests</u>.  The Creditor Trust Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

9.   <u>Noncertificated Creditor Trust Interests</u>.  The beneficial interests in the Creditor Trust shall not be certificated, except as otherwise provided in the Creditor Trust Agreement. To the extent practicable under and not in violation of applicable securities and tax laws, the beneficial interests in the Creditor Trust may be transferable on terms to be detailed in the Creditor Trust Agreement.

10.   <u>Dissolution of the Creditor Trust</u>.  The Creditor Trustee and the Creditor Trust shall be discharged or dissolved, as the case may be, at such time as (i) all assets of the Creditor Trust have been liquidated and (ii) all distributions required to be made by the Creditor Trustee under the Plan have been made, but in no event shall the Creditor Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Creditor Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the Creditor Trust.

11.   <u>Securities Exempt</u>. The beneficial interests to be issued to the Creditor Trust Beneficiaries under the Plan are not intended to be "securities" under applicable laws, but the Debtor does not represent or warrant that such interests shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such interests constitute securities, the Debtor intends for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan.

12.   <u>Control Provision.</u> To the extent there is any inconsistency between the Plan, as it relates to the Creditor Trust, and the Creditor Trust Agreement, the Plan shall control.

E.   *Reorganization Transactions and Funding of the Reorganized Debtor and Creditor Trust*

1.   <u>Effective Date Transactions</u>

On the Effective Date, the following actions and transfers shall occur:

(a)   All Class 5 Litigation Funding Claims shall be deemed Allowed in the amounts set forth in the Plan Supplement.

(b)   The Reorganized Debtor shall enter into the Creditor Trust Agreement.

(c)   Golden Spring shall transfer to the Creditor Trust an amount of Cash sufficient to satisfy the Creditor Trust's obligations with respect to all Claims entitled to treatment pursuant to Arts. III.B.3(b)(i) and

III.B.4, *provided that* the Creditor Trust shall return to Golden Spring any Remaining UC Cash following satisfaction of all Allowed Claims entitled to such treatment.

(d)    The Creditor Trust shall establish and fund the Administrative and Priority Claims Reserve from the Creditor Trust Estate Assets, and the Creditor Trust shall have sole authority to maintain and make Distributions from the Administrative and Priority Claims Reserve.

(e)    HK USA shall transfer the Boat to the Creditor Trust.

(f)    Following completion of the foregoing, the Reorganized Debtor shall have the right, but not the obligation, to request closure of the Chapter 11 Case.

2.    Funding of the Creditor Trust

On the Effective Date, the Plan Funder shall fund, and the Creditor Trust shall establish and thereafter maintain, the Administrative and Priority Claims Reserve. The Plan Funder shall also fund, as applicable and in the appropriate amounts, the UC Cash.

3.    Administrative and Priority Claims Reserve

On the Effective Date, the Creditor Trust shall establish the Administrative and Priority Claims Reserve. Funds in the Administrative and Priority Claims Reserve shall be used by the Creditor Trust for the payment of U.S. Trustee Fees and Allowed Administrative Claims, Allowed Priority Claims, and Allowed Professional Compensation Claims, to the extent that such Allowed Claims have not been paid in full on or prior to the Effective Date. Any amounts remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Claims, Allowed Priority Claims, and Allowed Professional Compensation Claims and U.S. Trustee Fees shall revert to the Creditor Trust.

F.    *Debtor Remains Debtor-in-Possession Following the Confirmation Date*

The Debtor shall continue to function as a Debtor in Possession during the period from the Confirmation Date through and until the Effective Date.

G.    *Establishment of the Administrative Bar Date*

1.    The Administrative Bar Date shall be thirty (30) days after the Effective Date.

2.    Except as otherwise provided in the Plan or the Confirmation Order, on or before 5:00 p.m. (Prevailing Eastern Time) on the Administrative Bar Date, as applicable, each holder of an Administrative Claim (to the extent such holder has not previously been paid) must File with the Bankruptcy Court a request for payment of such Administrative Claim.

3.    Any holder of an Administrative Claim that is required to File a request for payment of such Administrative Claim that does not File such request with the Bankruptcy Court by the Administrative Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, and such Administrative Claim shall be deemed released and discharged as of the Effective Date.

H.    *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect to the extent and for the duration provided in Section 362(c) of the Bankruptcy Code.

I.    *Effectuating Documents and Transactions*

1.    Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims, the Debtor, or any other Entity or Person.

2.    The Reorganized Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.  The Reorganized Debtor shall be authorized to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as he may deem necessary or appropriate in his reasonable discretion to implement the provisions of this Article IV.I.

3.    The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

J.    *Preservation of Rights of Action*

1.    In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in Article IX below, all Retained Causes of Action that the Debtor may hold against any Person or Entity shall vest in the Reorganized Debtor on the Effective Date.  Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.  **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any specific Retained Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Retained Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Retained Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan**, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Retained Cause of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

2.    In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in Article IX below, all Assigned Causes of Action that the Debtor may hold against any Person or Entity shall vest in the Creditor Trust on the Effective Date.  Thereafter, the Creditor Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Assigned Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.  **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any specific Assigned Causes of Action as any indication that the Debtor or Creditor Trust, as applicable, will not pursue any and all available Assigned Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserve all rights for the benefit of the Creditor Trust and irrevocably assign such rights to the Creditor Trust to prosecute any and all Assigned Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan**, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Assigned Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

3.    Notwithstanding anything contained in Art. IV.J.1, until the earlier of (a) Class 3 Unsecured Litigation Claims are satisfied in full in accordance with the terms of this Plan and (b) the exercise of the Retention Election by the Plan Funder, the Debtor (1) shall use his commercially reasonable efforts to prosecute the Assigned Causes of Actions in good faith until resolved, and shall provide the Holders of Class 3 Unsecured Litigation Claims with not less than five (5) calendar days' notice of any proposed settlement of an Assigned Cause of Action and (2) if the Creditor Trust disagrees with the Debtor's proposed settlement of any Retained Cause of Action within such five (5) calendar days' notice, then the settlement of such Retained Cause of Action shall be subject to approval of the Bankruptcy Court under Bankruptcy Rule 9019.

K.    *Final Certification and Case Closing*

1.    After the Effective Date, to the extent the Chapter 11 Case remains open, the Creditor Trust shall be liable for statutory fees due for the post-Effective Date period pursuant to 28 U.S.C. § 1930(a)(6) and shall pay or

cause to be paid all fees due until entry of a final decree or an order converting or dismissing the Bankruptcy Case. Pursuant to Article IV.E.1 hereof, at any time following completion of the Effective Date Transactions as defined therein, the Reorganized Debtor or Creditor Trust shall have the right, with the consent of the other, to request that the Court close the Chapter 11 Case.

2. Subject to the above paragraph, in the event that the Creditor Trust does not consent to closure of the Chapter 11 Case by the Reorganized Debtor, the Creditor Trust with the consent of the Reorganized Debtor, which consent shall not be unreasonably withheld, upon the full administration of the Chapter 11 Case, shall file the Final Certification and seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

3. The Creditor Trust and Reorganized Debtor shall each, in consultation with the other, have standing to request reopening of the Chapter 11 Case.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Creditor Trustee shall make, or shall make adequate reserves for, the Distributions required to be made under the Plan.

B.    *Treatment of Disputed Claims*

1. Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the first Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim; provided, however, that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed by the Reorganized Debtor in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims on the first Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

2. Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Creditor Trustee shall establish appropriate reserves for potential payment of such Claims.

3. <u>Disputed Claim Reserve</u>. On and after the Effective Date, the Creditor Trust may establish and maintain the Disputed Claim Reserve.

C.    *Subsequent Distributions*

1. No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Subsequent Distribution Date in accordance with this Article V.C.

2. To the extent any holder of an Allowed Claim that received a Distribution on account of such Claim on the Initial Distribution Date or any Subsequent Distribution Date is entitled to receive an additional Distribution on account of such Claim for any reason, including due to an increase in the Pro Rata Share of such Claim or additional assets becoming part of the Creditor Trust Estate Assets, the Creditor Trustee shall, in his or her discretion, make such additional Distribution to such holder on any Subsequent Distribution Date.

D.      *Record Date for Distributions*

Except as otherwise provided in a Final Order of the Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Creditor Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the Creditor Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are actually known to the Creditor Trustee as of the Record Date.

E.      *Delivery of Distributions*

1.    General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Creditor Trustee or his or her designee, assuming the availability of funds and the economic feasibility of such Distributions, at (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such Holder or (b) the last known address of such Holder if no proof of Claim is Filed or if the Debtor or Creditor Trustee have been notified in writing of a change of address.  The Creditor Trustee shall make distributions under the Plan on behalf of the Reorganized Debtor.  If any Distribution is returned as undeliverable, the Creditor Trustee may, in his or her discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Creditor Trustee deems appropriate, provided that (i) no Distribution to any such Holder shall be made unless and until the Creditor Trustee has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made to the holder without interest, and (ii) if the Creditor Trustee is unable to determine the then-current address of such Holder, such Distribution shall be deemed unclaimed as of the first date of return as undeliverable and treated as set forth below in Article V.E.3.  The Creditor Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided*, *however*, that his or her discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

2.    Minimum Distributions

If any interim Distribution under the Plan would be less than $500.00, the Reorganized Debtor or Creditor Trustee, as applicable, may withhold such Distribution until a final Distribution is made to such Holder. If any final Distribution under the Plan would be $100.00 or less, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Creditor Trust.

3.    Unclaimed Property

Except with respect to property not Distributed because it is being held in reserve for Disputed Claims, Distributions that are not claimed by the expiration of ninety (90) days from the date of the relevant Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Creditor Trust.  The Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that three-month period, the claim of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Creditor Trust to attempt to locate any Holder of an Allowed Claim.  All funds or other property that vest or revest in the Creditor Trust pursuant to this paragraph shall be (a) used to pay the fees and expenses of the Creditor Trust as and to the extent set forth in the Plan, and (b) thereafter distributed to Holders of Allowed Claims as otherwise provided herein.  In the event any Creditor Trust Estate Assets remain after all economically feasible Distributions are made, such remaining property may be abandoned; liquidated to Cash and distributed to a registered 501(c)(3) organization of the Creditor Trust's choice, assuming such distribution is economically feasible, or otherwise disposed. Neither unclaimed property nor any remaining portion of the Creditor Trust Estate Assets shall escheat to any federal, state or local government or other entity.

F.    *Manner of Cash Payments Under the Plan*

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Creditor Trust or by wire transfer from a domestic bank, at the option of the Creditor Trust.

G.    *Time Bar to Cash Payments by Check*

Checks issued by the Creditor Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article V.H. shall be made directly to the Creditor Trust by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Creditor Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article V.E.3.

H.    *Compliance with Tax Requirements*

1.    In connection with making Distributions under this Plan, to the extent applicable, the Creditor Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.

2.    The Creditor Trust may require any Holder to provide the necessary information to comply with any withholding requirements of any Governmental Unit, including but not limited to a Form W-8BEN, Form W-8BEN-E, or Form W-9, or such Holder's tax identification number, provided that such requirement must be in writing and may be issued solely to the extent such information and documents are not contained in the Debtor's books and records or otherwise available absent such requirement.

3.    The Creditor Trust may condition any distribution to any Holder upon the receipt of information and documents properly requested pursuant to paragraph (2) above. If such Holder does not furnish the required information and documents within sixty (60) days of such request, then such Holder's Distribution shall be treated as unclaimed property in accordance with Article V.E.3.

I.    *Postpetition Interest on Claims*

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

J.    *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

K.    *Setoff and Recoupment*

The Creditor Trust may, but shall not be required to, setoff against, or recoup from, any Claim and Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that are Creditor Trust Estate Assets. Neither the failure by the Debtor, Reorganized Debtor, or Creditor Trust to exercise any right of setoff or recoupment against any Claim nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estates or the Reorganized Debtor of any right of setoff or recoupment that any of them may have against the holder of any Claim. Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code Section 553.

# ARTICLE VI

# DISPUTED CLAIMS

A.    *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Creditor Trust shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

B.    *Claims Objection Deadline*

The Claims Objection Deadline shall be 180 days after the Effective Date as to all Claims; *provided, however,* that the last date for filing Avoidance Actions against a holder of a Claim shall be the date established by Bankruptcy Code Section 546(a) and the last day for asserting any other Retained Cause of Action or Assigned Cause of Action shall be the last day of the applicable statute of limitations therefor provided under applicable non-bankruptcy law, as such period may have been extended by Bankruptcy Code Section 108 or any other section of the Bankruptcy Code or other applicable law; *provided further, however,* that no Entity or Person (including the Debtor, Reorganized Debtor, Creditor Trust, or any holder of Claims) may file an objection to any Claim deemed Allowed by the Plan, and any such objection shall be deemed null and void.  Notwithstanding any of the foregoing, the Reorganized Debtor or the Creditor Trust (as to Assigned Claims Objections) may request from the Bankruptcy Court one or more extensions of the Claims Objection, which relief shall be freely given for cause stated and the extended date shall become the new Claims Objection Deadline applicable to the Reorganized Debtor or the Creditor Trust.

C.    *Resolution of Disputed Claims*

1.    The Reorganized Debtor or the Creditor Trust (as to Assigned Claims Objections) shall have the exclusive right to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims, including Priority Claims, Administrative Claims and Professional Compensation Claims.  In the event that any objection filed by the Debtor or Committee remains pending as of the Effective Date, the Reorganized Debtor or the Creditor Trust (as to Assigned Claims Objections) shall be deemed substituted for the Debtor or Committee, as applicable, as the objecting party.

2.    All objections shall be litigated to a Final Order; *provided, however,* that the Reorganized Debtor or Creditor Trust (as to Assigned Claims Objections) may compromise and settle any objections to Claims, subject to entry of an order of the Bankruptcy Court.

3.    Distributions may be made to a Holder of a Claim prior to the expiration of the Claims Objection Deadline if the Reorganized Debtor or the Creditor Trust (as to Assigned Claims Objections) reasonably believes that no basis exists for objection to such holder's Claim and, as to non-Assigned Claims Objections, the Creditor Trust concurs with the Reorganized Debtor's assessment.  Notwithstanding the foregoing, nothing in this Plan shall be interpreted to operate as a waiver or release of (i) any right that any party-in-interest may have to object to (a) any Claim through the Effective Date or (b) any Professional Compensation Claim after the Effective Date; or (ii) any objection to Claims pending as of the Effective Date, regardless of whether such objection was brought by the Debtor or any other party-in-interest.

D.    *Estimation of Claims*

At any time, the Reorganized Debtor (except as to Claims related to Assigned Causes of Action) or the Creditor Trust (as to Claims related to Assigned Causes of Action) may request that the Bankruptcy Court estimate any Claim upon which Distributions are to be made by the Creditor Trust, to the extent permitted by Section 502(c) of the Bankruptcy Code.

E.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, provided that such Cause of Action is a Retained Cause of Action or Assigned

Cause of Action, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor.

F.      *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied, amended, or superseded may be marked as satisfied, adjusted or expunged on the Claims Register by the Noticing Agent at the direction of the Reorganized Debtor (except as to Claims related to Assigned Causes of Action) or Creditor Trust (as to Claims related to Assigned Causes of Action) without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

G.      *Amendments to Claims*

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority of the same.

**EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL HOLDERS OF PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL NOT BE TREATED AS CREDITORS FOR PURPOSES OF VOTING AND DISTRIBUTION PURSUANT TO BANKRUPTCY RULE 3003(c)(2) AND PURSUANT TO THE GENERAL BAR DATE ORDER, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

## ARTICLE VII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts and Unexpired Leases*

1.      On the Effective Date, except as otherwise provided herein, each executory contract or unexpired lease not previously rejected, assumed, or assumed and assigned, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease: (a) is specifically described in the Plan or Plan Supplement as to be assumed in connection with Confirmation of the Plan; (b) is subject as of the Confirmation Date to a pending motion to assume or assume and assign; (c) has been assumed or assumed and assigned to a third party; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

2.      Notwithstanding anything contained in the Plan to the contrary, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the rights of the Debtor or the Reorganized Debtor, as applicable, to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

3.      Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost in Cash on the Effective Date, subject to the limitation described in the following paragraph, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree. Together with the Plan Supplement, to the extent not previously filed with the Court and served on affected counterparties, the Debtor shall provide for notices of proposed assumption and proposed Cure Cost (and, to the extent the Debtor seek to assume and assign an Unexpired Lease pursuant to the Plan, the Debtor will identify the assignee, if any, and provide adequate assurance of future performance by such assignee within the meaning of section 365 of the Bankruptcy Code) to be filed and served upon applicable contract and lease counterparties (and upon such Entities' counsel, if known), together with procedures for objecting thereto and resolution of disputes by the Court. Any objection by a contract or

lease counterparty to a proposed Cure Cost must be filed, served, and actually received by the Debtor before the objection deadline provided in the notice of proposed assumption and Cure Cost, which deadline shall be no less than fourteen (14) days after the date on which the applicable notice of proposed assumption and proposed Cure Cost is filed and served. Any objection by a contract or lease counterparty to a proposed assumption, assumption and assignment, or adequate assurance (other than with respect to a proposed Cure Cost) must be filed, served, and actually received by the Debtor before the Plan Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Cost will be deemed to have assented to such assumption or Cure Cost. Any objection to a proposed assumption, assumption and assignment, or Cure Cost will be scheduled to be heard by the Court at the Reorganized Debtor's first scheduled omnibus hearing after which such objection is timely filed. In the event of a dispute regarding (1) the amount of any Cure Cost, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (3) any other matter pertaining to assumption and/or assignment, then such Cure Costs shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon by the Debtor or the Reorganized Debtor and the counterparty to such Executory Contract or Unexpired Lease; provided that the Debtor may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Court; provided, further, that notwithstanding anything to the contrary herein, the Debtor reserve the right to reject, or nullify the assumption of, any Executory Contract or Unexpired Lease within twenty-five (25) days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease in an amount higher than sought by the Debtor.

4.      Subject to the terms of the preceding paragraphs, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Cost, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the Cure Cost paid, shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court. Notwithstanding the foregoing, the Debtor and the Reorganized Debtor will continue to honor all postpetition and post-Effective Date obligations under any assumed Executory Contracts and Unexpired Leases in accordance with their terms, regardless of whether such obligations are listed as a Cure Cost, and whether such obligations accrued prior to or after the Effective Date, and neither the payment of cure nor entry of the Confirmation Order shall be deemed to release the Debtor or the Reorganized Debtor from such obligations. Notwithstanding the foregoing, assumption of any Executory Contract or Unexpired Lease and/or payment of any Cure Cost shall not constitute a release of any Claims held by the Debtor or Reorganized Debtor against any party, other than for breach or default of such assumed Executory Contract or Unexpired Lease.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Claims created by the rejection of executory contracts and unexpired leases must be filed pursuant to the terms of the General Bar Date Order and the Rejection Bar Date as defined therein. Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of Claim are not timely filed pursuant to the General Bar Date Order within that time period will be forever barred from assertion against the Debtor, the Estate, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.D. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

C.      *Debtor's Insurance Policies*

Nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtor (and his Estate) and the Debtor's insurers (and third-party claims administrators), if any, under the Debtor's insurance policies, if any,

or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of the Debtor's insurance policies. No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.     *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.     The Confirmation Order shall be in full force and effect.

2.     All documents necessary to implement the Plan, including, without limitation, the Creditor Trust Agreement, shall have (a) been executed or deemed executed, as applicable, and (b) tendered for delivery. All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof.

3.     Notwithstanding the foregoing, the Debtor, reserves the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent. Any such waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

B.     *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Debtor may determine, upon notice to the Bankruptcy Court, that the Plan is null and void in all respects, and nothing contained in the Plan, the Confirmation Order or the Disclosure Statement shall: (1) constitute a waiver or release of any Cause of Action or Claim; (2) constitute an admission, acknowledgment, offer or undertaking in any respect by any party, including the Debtor; or (3) otherwise prejudice in any manner the rights of any party, including the Debtor.

C.     *Establishing the Effective Date*

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Debtor. On or within two (2) Business Days of the Effective Date, the Debtor shall file and serve a notice of occurrence of the Effective Date. Such notice shall contain, among other things, the Administrative Bar Date and the Professional Claims Bar Date.

## ARTICLE IX

## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.     *Compromise and Settlement*

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of

the compromise or settlement of all Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtor, the Estates and holders of Claims.

B.      *Releases and Related Matters*

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE EFFECTIVE DATE AND AS OF THE EFFECTIVE DATE UNLESS OTHERWISE PROVIDED HEREIN, THE RELEASING PARTIES SHALL BE DEEMED TO FOREVER RELEASE, WAIVE, AND DISCHARGE EACH OF THE RELEASED PARTIES FROM THE RELEASED CLAIMS.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES SET FORTH IN THIS ARTICLE IX.B PURSUANT TO BANKRUPTCY RULE 9019 AND ITS FINDING THAT THEY ARE: (A) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS; (B) FAIR, EQUITABLE AND REASONABLE; AND (C) APPROVED AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.**

C.      *Waiver of Limitations on Releases of Unknown Claims*

**THE RELEASES CONTAINED IN ARTICLE IX.B SHALL EXTEND TO RELEASED CLAIMS THAT THE PARTIES DO NOT KNOW OR EXPECT TO EXIST AT THE TIME OF THE RELEASE, WHICH, IF KNOWN, MIGHT HAVE AFFECTED THE DECISION TO ENTER INTO THE RELEASE AND WHICH THE DEBTOR SHALL BE DEEMED TO WAIVE, AND SHALL WAIVE AND RELINQUISH TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY ANY LAW OF THE UNITED STATES OR ANY STATE OR TERRITORY THEREOF, OR PRINCIPLE OF COMMON LAW, WHICH GOVERNS OR LIMITS A PERSON'S RELEASE OF UNKNOWN CLAIMS.**

**THE DEBTOR ALSO ACKNOWLEDGES THAT HE MAY DISCOVER FACTS IN ADDITION TO OR DIFFERENT FROM THOSE THAT THEY NOW KNOW OR BELIEVE TO BE TRUE WITH RESPECT TO THE SUBJECT MATTER OF THIS RELEASE, BUT THAT IT IS THE INTENTION OF THE PARTIES TO FULLY, FINALLY, AND FOREVER SETTLE AND RELEASE WITH PREJUDICE ANY AND ALL RELEASED CLAIMS, INCLUDING ANY AND ALL UNKNOWN CLAIMS, WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF ADDITIONAL OR DIFFERENT FACTS. THE DEBTOR EXPRESSLY AGREES THAT ANY FRAUDULENT INDUCEMENT OR SIMILAR CLAIMS THAT COULD BE PREMISED ON UNKNOWN FACTS OR FACTS THAT ARE SUBSEQUENTLY DISCOVERED ARE INCLUDED WITHIN THE DEFINITION OF UNKNOWN CLAIMS.**

D.      *Exculpation*

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE THE RESULT OF WILLFUL MISCONDUCT, GROSS NEGLIGENCE, FRAUD OR CRIMINAL ACTS OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.**

E.    *Injunction*

**THE SATISFACTION, RELEASE AND DISCHARGE PURSUANT TO THIS ARTICLE IX OF THE PLAN SHALL ALSO ACT AS AN INJUNCTION AGAINST ANY PERSON BOUND BY SUCH PROVISION AGAINST COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM OR CAUSE OF ACTION SATISFIED, RELEASED, OR DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER TO THE FULLEST EXTENT AUTHORIZED OR  PROVIDED BY THE BANKRUPTCY CODE, INCLUDING, WITHOUT LIMITATION, TO THE EXTENT PROVIDEDFOR OR AUTHORIZED BY SECTIONS 524 AND 1141 THEREOF.**

F.    *Releases of Liens*

Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, to the extent such exist, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estate shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor and the Reorganized Debtor.

G.    *Preservation of Rights of Action*

1.    **Vesting of Causes of Action**

(a)   Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Entity shall vest upon the Effective Date in the Reorganized Debtor and the Reorganized Debtor shall have the exclusive right to institute and prosecute any Retained Causes of Action, without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Case.

(b)   Retained Causes of Action thereafter shall remain the sole property of the Reorganized Debtor, and any proceeds therefrom shall be the property of the Reorganized Debtor.

(c)   Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Assigned Causes of Action that the Debtor may hold against any Entity shall vest upon the Effective Date in the Creditor Trust and the Creditor Trust shall have the exclusive right to institute and/or prosecute any Assigned Causes of Action, without further order of the Bankruptcy Court.

2.    **Preservation of All Retained Causes of Action Not Expressly Settled or Released**

(a)   With respect to any Retained Cause of Action, the Reorganized Debtor expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)   Subject to the immediately preceding paragraph, (i) any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), (ii) any Entity who has received services from the Debtor or a transfer of money or property of the Debtor, (iii) any Entity who has transacted business with the Debtor, or leased property from the Debtor, or (iv) any professional that provided advice to the Debtor should, in each case, assume that any such act, omission, obligation, transfer or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (A) such Entity has filed a proof of Claim against the Debtor in the Chapter 11 Case; (B) the Debtor or Reorganized Debtor has objected to any such Entity's proof of Claim; (C) any such Entity's Claim was included in the Schedules; (D) the Debtor or Reorganized Debtor has objected to any such Entity's scheduled Claim; or (E) any such Entity's scheduled Claim has been identified by the Debtor or Reorganized Debtor as disputed, contingent or unliquidated.

## ARTICLE X

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Reorganized Debtor, the Creditor Trust and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

2.   grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.   resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.B;

4.   ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.   enforce the terms of the Creditor Trust Agreement and any rights and remedies thereunder;

6.   decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, including but not limited to any Retained Causes of Action, *provided*, *however*, that the Reorganized Debtor and Creditor Trust shall reserve the right to commence actions in all appropriate jurisdictions;

7.   enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

8.   resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.   issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

10.  enforce Article IX.B hereof;

11.  enforce the Injunction set forth in Article IX.D hereof;

12.  resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13.  enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.  resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

15.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

16.  enter an order and/or the decree contemplated in Fed. R. Bankr. P. 3022 concluding the Chapter 11 Case.

**ARTICLE XI**

**MISCELLANEOUS PROVISIONS**

A.  *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, in consultation with and/or at the request of the Creditor Trust, may modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.  *Revocation of Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

C.  *Payment of Statutory Fees*

All fees due and payable pursuant to 28 U.S.C. § 1930 prior to the Effective Date shall be paid by the Debtor on the Effective Date.  After the Effective Date, the Creditor Trust shall pay any and all such fees when due and payable, and the Creditor Trust shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  The Creditor Trust shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

D.  *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.  *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Connecticut, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

F.  *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

G.    *Section 1146 Exemption*

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

H.    *Entire Agreement*

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date or the Solicitation Date, as applicable. After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's private website at https://cases.stretto.com/HoWanKwok/ or the Bankruptcy Court's website at https://www.ctb.uscourts.gov/.

J.    *Non-Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) nonseverable and mutually dependent.

K.    *Dissolution of Committee*

On the Effective Date, the Committee shall be deemed to be dissolved and the members of the Committee shall be released and discharged from all further authority, duties, responsibilities, and obligations arising from or related to the Bankruptcy Cases and Professionals retained by the Committee shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to the Debtor and the Bankruptcy Cases.

L.    *Section 1125(e) Good Faith Compliance*

The Debtor and each of his respective Representatives shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

M.    *Discharge*

Pursuant to section 1141(d) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Confirmation Order shall be deemed to have discharged the Debtor from any debt that arose before the date of entry of the Confirmation Order.

N.    *Further Assurances*

The Debtor, the Reorganized Debtor, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

O.    *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by first class U.S. mail, postage prepaid as follows:

> Brown Rudnick LLP
> Seven Times Square
> New York, NY 10036
> Attn:  Uriel Pinelo, Esq.

P.    *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Q.    *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Fed. R. Bankr. P. 3020(e) and 7062.

R.    *Aid and Recognition*

The Debtor or Reorganized Debtor, as the case may be, shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any other nation or state.

* * * * *

Dated: [    ], 2022                                        HO WAN KWOK
       Bridgeport, CT

                    By:      */s/ DRAFT*
                            Ho Wan Kwok

**BROWN RUDNICK LLP**
William R. Baldiga, Esq.
Bennett S. Silverberg, Esq.
Uriel Pinelo, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email:   wbaldiga@brownrudnick.com
         bsilverberg@brownrudnick.com
         upinelo@brownrudnick.com

BROWN RUDNICK LLP
Dylan Kletter, Esq.
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 509-6500
Facsimile: (860) 509-6653
Email:   dkletter@brownrudnick.com

Counsel for the Debtor

64664824 v5-000002/4475