# Exhibit UCC-1

# February 9, 2022 Decision and Order on Motion for Contempt in PAX v. Kwok, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 1181.

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok _____

VS. _____

UCC    EXHIBIT _____1_____

DATE _____ IDEN.

DATE _5/25/2022 Admitted in Full_ EVID.

BY _P.E._____

**Deputy Clerk**

AO 386-A

Case 22-50073   Doc 441-1   Filed 05/25/22   Entered 05/26/22 15:59:53   Page 2 of 11

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:   **HON. BARRY R. OSTRAGER**          PART          **IAS MOTION 61EFM**

*Justice*

---------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND
L.P.,

|  |  |
|---|---|
| **INDEX NO.** | 652077/2017 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 019 |

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN
GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a
WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a
HAOYUN GUO, GENEVER: HOLDINGS LLC, and
GENEVER HOLDINGS CORPORATION,

**DECISION + ORDER ON MOTION**

Defendants.

---------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

In this 2017 case with 1,180 docket entries – almost all of which involve defendant Kwok

Ho Wan's ("Kwok") efforts to avoid and deceive his creditors by parking his substantial personal

assets with a series of corporations, trusted confidants, and family members -- this Court is called

upon to determine whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"),

has met the burden of establishing that the Court should enter a final Order of Civil Contempt

against Kwok.  For the reasons that follow, this Court is simultaneously issuing a final Order of

Civil Contempt.

PAX secured a judgment against Kwok in the sum of $116,402,019.57 on February 3,

2021 (NYSCEF Doc. No. 716).  Thereafter, PAX undertook a year's long effort to enforce its

judgment by first identifying and then attempting to levy upon Kwok's assets in the United

States.  PAX encountered difficulty identifying assets over which Kwok exercised control

because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of

corporate entities and with family members.  This scheme has enabled Kwok to assert that he has

no assets despite his lavish lifestyle, which plaintiff has catalogued with material from social

INDEX NO. 652077/2017
RECEIVED NYSCEF: 02/09/2022

media clippings, photographs and videotapes showing Kwok living large and boasting of his wealth, expensive homes, private plane, and yacht.  As noted in the transcript of proceedings of February 2, 2022, this evidence is of little probative value, as the witnesses sponsoring this evidence have no first-hand knowledge of the authenticity of this "evidence" other than that it is accessible on various websites.

On February 2, 2022, this Court held an evidentiary hearing at which seven witnesses submitted direct testimony by affidavit and were made available for cross-examination.  The hearing followed protracted proceedings by PAX to locate and levy upon assets owned by defendant Kwok.  Those proceedings established, among other things, that Kwok exercised dominion and control over a yacht called the Lady May and resulted in a series of orders restraining Kwok and/or the registered owners of the yacht called Lady May from removing the Lady May from the Court's jurisdiction.  The first such Order was issued on September 30, 2020, as described in detail *infra,* and was followed by an October 15, 2020 Order that restrained "Mr. Kwok and/or the registered owners of . . . the yacht, the 'Lady May'" from leaving the jurisdiction.  (NYSCEF Doc. No. 630).  As detailed *infra*, Kwok spent much of July, August and September of 2020 on the Lady May.  Contemporaneously with the proceedings resulting in the September 30 and October 15, 2020 restraining Orders, Kwok and his cohorts made arrangement for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas.  On March 16, 2021, the Court issued a conditional order of civil contempt which directed that if Kwok failed to return the Lady May to the jurisdiction of this Court by May 31, 2021, he would be subject to a $500,000.00 fine for each day that the Lady May remained outside the jurisdiction of this Court.

The Appellate Division, First Department, affirmed this Court's order holding Kwok in conditional civil contempt, finding that "the daily fine of $500,000.00 was intended to strongly

Case 22-50073    Doc 441-1    Filed 05/25/22    Entered 05/26/22 15:59:53    Page 4 of 11

encourage defendant to purge himself of the contempt, which, despite being permitted to accomplish, he has shown no interest in doing. . .." NYSCEF Doc. No. 953, 199 AD3d 423 (2021). The Appellate Division further held:

> The motion court acted within its discretion in holding defendant in civil contempt, as plaintiff established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015]; Judiciary Law § 753). … The motion court is instructed to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties.

Pursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht. Kwok failed to testify at the February 2, 2022 hearing, having previously invoked his Fifth Amendment right to decline to testify or respond to discovery requests relating to the Lady May in response to PAX's asset discovery efforts. PX 27, 28, 29, 30.[1] This invocation of the Fifth Amendment notwithstanding, Kwok is an active litigant in multiple fora and he has given prior testimony in this and other proceedings.

Kwok also filed a complaint in this court captioned *Guo Wengui a/k/a Miles Kwok v Hong Zeng*, 157025/2020, which references a blog post from Freebeacon.com dated September 8, 2017 in which Kwok complains about "several incidents involving *his* 152-foot motor yacht, Lady May..." (Complaint ¶ 8, NYSCEF Doc. No. 001) ("the Zeng Complaint"). The Zeng Complaint describes Kwok as an "outspoken critic of the CCP" who has gone to great "lengths to expose the rampant corruption within the CCP and the Chinese government." The *Washington Post* reported that a former advisor to President Trump, Steve Bannon, was arrested in 2020 while on board the Lady May, and described Mr. Bannon as a friend and business

---

[1] "PX" refers to Plaintiff's Trial Exhibits.

3

associate of Kwok, "a vocal online critic of the Chinese government who was once close with that country's intelligence service but is now wanted by authorities in Beijing on charges of fraud, blackmail and bribery." Other news outlets have reported that Mr. Bannon utilized Kwok's private jet on more than one occasion to travel to political rallies.

The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process.

Kwok once was the sole shareholder of Hong Kong Investments Limited ("HK International"). The testimony adduced at the hearing established that in 2014 Kwok transferred a 100% interest in HK International to one Qu Guo Jiao for no consideration. Ms. Qu was a trusted business associate of the Kwok family. Thereafter, Kwok fled China and on February 23, 2015, HK International purchased the Lady May for £ 28 million GBP. No testimony adduced at the hearing established the source of funds to purchase the Lady May, but the uncontradicted testimony of Kwok's daughter Mei Guo established that Ms. Qu did not provide the funds to purchase the yacht. Tr. 44.[2] Consequently, a reasonable inference is that Kwok provided the funds to HK International which were used to purchase the yacht. It is undisputed that Ms. Qu transferred the ownership of the Lady May to Kwok's daughter, Mei Guo, on or around June 17, 2017, for $1 or no consideration. Tr. 47. According to Ms. Guo's affidavit (NYSCEF Doc. No. 1162), Ms. Guo ultimately transferred ownership of the Lady May to the current title holder HK International Funds Investments (USA) Limited, LLC ("HK USA"). Ms. Guo further avers that she is the sole owner of HK USA, although all of the multi-million dollar annual expenses for the

---

[2] "Tr." refers to the transcript of the evidentiary hearing, efiled at NYSCEF Doc. No. 1179.

Lady May, including fuel, maintenance, and the captain and crew are paid by Golden Spring

(New York) Ltd. ("Golden Spring."), which is allegedly the Kwok family office.

At the hearing Ms. Guo testified that her brother had bought the Lady May for her. Tr.

46. The Court cannot credit this testimony as there is no evidence that Ms. Guo's brother was

involved with the corporate transactions leading to Ms. Guo's acquisition of the title to the yacht.

And, indeed, in response to a question from the Court, Ms. Guo acknowledged that her brother

was not involved in any of the transfers that occurred before she acquired the yacht. Tr. 47.

Other testimony adduced at the hearing established that Kwok was repeatedly on the

yacht every summer and that Ms. Guo was infrequently on the yacht. Trial Tr. 88:8-20. The

Lady May's captain testified that Kwok was aboard the yacht for a significant portion of the

months of July, August and September in 2020 and that this was consistent with his usual

practice in the summer. Trial Tr. 87:24-88:7. Subsequent to this Court's September 30, 2020

restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for

repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of

Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30,

2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady

May be returned to the Court's jurisdiction Tr. 55; 57-60; 62.

Ms. Guo testified that on the one hand, she directed the Lady May's itinerary but, on the

other hand, testified that security for Kwok was such a concern that there would be no

memorialization of any itinerary. Tr. 52. She further testified that when her father was on the

yacht unaccompanied by her he had the freedom to choose wherever he wanted to go. Tr. 50.

The fundamental issue, however, is who directed the yacht to be removed from this Court's

jurisdiction in October 2020. Ms. Guo claims that in early October 2020 she no longer wished to

use the yacht and relayed that instruction to Golden Spring which, in turn, relayed her directive to the then captain of the ship, Captain Heaslop. Tr. 53.

Upon further questioning, Ms. Guo admitted that it was Golden Spring that advised her that the yacht needed to be moved to a warmer place. Tr. 55. Ms. Guo then repeated her retracted testimony that her brother had given her the yacht, and she stated that her brother is the sole owner of Golden Spring. Tr. 56. This testimony is not credible given that on September 30, 2020 the Court entered a temporary restraining order restraining Kwok

> . . . from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, or from paying over or otherwise disposing of any debt now due or thereafter coming due to him, subject to the exceptions set forth in CPLR 5222 and in the ordinary course.

NYSCEF Doc. No. 591. Significantly, Captain Heaslop, the then Captain of the Lady May, testified that Mr. Kwok told Captain Heaslop that Kwok would no longer be a guest on the Lady May "a few days" before the Lady May departed for Florida in early October 2020 (and apparently after the issuance of this Court's September 30, 2020 Order). Tr. 89. Captain Heaslop also contradicted Ms. Guo's testimony that Ms. Guo gave Captain Heaslop instructions about the yacht's movement. Tr. 94.

Ms. Guo also acknowledged having subsequently read the Court's March 16, 2021 Order requiring the Lady May to be returned to the Court's jurisdiction by May 31, 2021 (NYSCEF Doc. No. 728). She further acknowledged that she had discussed the Order with her lawyer (whose services were paid for by Golden Spring) and that she had *ignored* the Order.

Russell Stockil, the Yacht Management Director for Yachtzoo SARL, testified that his company had a management contract with HK USA dated May 2021 and that he communicated with HK USA and Golden Spring, but never with Ms. Guo. Tr. 78. This was also the testimony of successor Captain Momchil Ivanov. Tr. 82. In short, Ms. Guo's testimony that she owns and

6

Case 22-50073    Doc 441-1    Filed 05/25/22    Entered 05/26/22 15:59:53    Page 8 of 11

controls the Lady May cannot be credited in any respect.  Ms. Guo appears to be a woman in her

twenties, has introduced no evidence that she exercised dominion and control of the Lady May,

and provided no confirmation that she came into possession of the Lady May, other than as a

ruse to shield the Lady May from being levied upon by her father's creditors.

The machinations associated with the shell game Kwok has orchestrated with respect to

the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken

during the five years this litigation has been pending, which is why there are 1,180 docket entries

in this case.

The Court has the authority to hold Kwok in civil contempt under Judiciary Law

§ 753—and "to punish [him], by fine and imprisonment"—where, as here, the Court "expressly

find[s] that [Kwok's] actions were calculated to or actually did defeat, impair, impede, or

prejudice the rights or remedies of a party to a civil proceeding." *Oppenheimer v. Oscar Shoes,*

*Inc.*, 111 A.D.2d 28, 28 (1st Dep't 1985) (citing N.Y. Judiciary Law § 753).   Section 753 sets

forth four requirements:

> [T]o find that contempt has occurred in a given case, it must be determined that
> [1] a lawful order of the court, clearly expressing an unequivocal mandate, was in
> effect. [2] It must appear, with reasonable certainty, that the order has been
> disobeyed . . . [3] Moreover, the party to be held in contempt must have had
> knowledge of the court's order, although it is not necessary that the order actually
> have been served upon the party . . . [4] Finally, prejudice to the right of a party to
> the litigation must be demonstrated.

*Fleetwood Fin. v Walter J. Dowd, Inc.*, 2016 WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016)

(citing *McCormick v Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)).   The

testimony adduced in this case satisfies each element of this standard.   Indeed, the Appellate

Division intimated as such.  *See Pacific Alliance Asia Opportunity Fund L.P.*, 199 A.D.3d 423

(1st Dep't 2021) ("[PAX has] established by clear and convincing evidence that [Kwok] violated

7

a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted

in prejudice to plaintiff's rights. . .").

The extent of PAX's ongoing "prejudice" turns on whether PAX has demonstrated that it

could ultimately levy on the Lady May to satisfy its now centi-million dollar judgment against

Kwok. Under CPLR § 5225, "money or other personal property" is leviable where the debtor

holds the requisite "interest." To satisfy this requirement, "[i]t is not necessary that the judgment

debtor have legal title to the property; a beneficial interest is sufficient." Weinstein, Korn &

Miller, New York Civil Practice: CPLR ¶ 5225.09. "A beneficial interest is '[a] right or

expectancy in something . . . as opposed to legal title to that thing.'" *Peterson v. Islamic Rep. of

Iran*, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing Black's Law Dictionary,

Interest (9th ed. 2009)). Kwok has much more than a beneficial interest in the Lady May. Not

only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the

person who principally enjoys the use of the yacht.

The key factor is whether "the property benefitted [the beneficial owner] as if he

had received the property directly." *Id.* (quoting *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper

Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010); *see also Gliklad v. Chernoi*, 129 A.D.3d 604 (1st

Dep't 2015) (upholding rejection of the judgment debtor's contention that he no longer held an

interest in property because he transferred his interest to his daughters); *Colfin Bulls Funding B,

LLC v. Ampton Invs., Inc*., 112 N.Y.S.3d 868 (Table), at *2, 6 (N.Y. Sup. Ct. 2018) (granting

judgment creditor's turnover motion notwithstanding judgment debtor's assertion that he

transferred property to a corporation, because even if true, the evidence showed that he "retained

control and/or an interest" in the property).

8

The evidence clearly and convincingly demonstrates that Kwok holds a beneficial

interest in and controls the Lady May. In the latter connection, the Court takes notice of the

filing of the Zeng case and draws an inference from all the record facts that Kwok has taken

extraordinary steps to shield the yacht from his creditors. Moreover, Kwok's "family office"

funds the yacht's day-to-day operations and maintenance.

The Court finds that Ms. Guo's testimony was not only internally inconsistent and

dissembling, but also significantly undermined by the testimony of Captains Heaslop and Ivanov

and Mr. Stockil, who stated that they have never taken yacht-related direction from Ms. Guo in

the four and-a-half years that she directly or indirectly held title to the yacht.

In addition, it is established New York law that a party's invocation of the Fifth

Amendment in a civil proceeding "may form the basis of an adverse factual inference." *DeBonis*

*v. Corbisiero*, 155 AD2d 299, 300 (1st Dep't 1989). An adverse inference may be applied

whenever a factual determination is necessary or permitted, including in the context of contempt

motions. *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *10

(S.D.N.Y. Dec. 19, 2013), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *LiButti v. United States*, 107

F.3d 110, 120–25 (2d Cir. 1997).

Similarly, under the missing witness rule, "[a] trier of fact may draw the strongest

inference that the opposing evidence permits against a witness who fails to testify." *Crowder v.*

*Wells & Wells Equip., Inc.*, 11 A.D.3d 360, 361 (1st Dep't 2004) (applying adverse inference

where defendant who failed to appear "would be knowledgeable about a material issue raised by

the evidence").

PAX is entitled to an adverse inference under both of these avenues. Kwok has invoked

his Fifth Amendment right against self-incrimination in response to PAX's post-judgment

discovery, including in response to requests specifically about the Lady May. While Kwok

9

argues that an adverse inference is not appropriate here because "[o]nly after a threshold showing that a piece of evidence is authentic is a party obligated to respond to it," this contention fails of its own weight. PAX has proffered substantial admissible evidence that Kwok has the requisite beneficial interest in and control of the Lady May. *See People v. Primo*, 96 N.Y.2d 351, 753 N.E.2d 164 (2001) (explaining that evidence is probative if it "tends to prove the existence or non-existence of a material fact, *i.e.*, a fact directly at issue in the case").

As of February 7, 2022, the Lady May has remained outside the jurisdiction of the Court for 268 days. Based on the daily fine of $500,000 imposed by this Court and affirmed by the Appellate Division, the resultant fine would amount to $134,000,000.00, which is more than PAX's outstanding judgment of nearly $120 million and a multiple of the GBP £ 28 million purchase price of the Lady May.  Nevertheless, if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law.  Kwok must remit $134,000,000.00 to PAX within five business days of the service of this Court's Order with Notice of Entry. The Court is prepared to exercise its full authority under Judiciary Law § 753 in the event the fine is not timely paid.

Dated:  February 9, 2022

*Barry Ostrager*

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| --- | --- | --- | --- |
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

10