# Exhibit UCC-4

Order Granting Debtor's Second Renewed Motion to Approve the Revised Settlement Agreement in In re Genever Holdings, LLC, Case No 20-12411 (JLG), United States Bankruptcy Court for the Southern District of New York, ECF No. 141

CASE NO. _____22-50073_____

IN RE: Ho Wan Kwok _____

VS. _____

UCC   EXHIBIT ____4____

DATE _____ IDEN.

DATE _5/25/2022 Admitted in Full_ EVID.

BY P.E. _____

Deputy Clerk

AO 386-A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re:                                              Chapter 11

Genever Holdings LLC,                               Case No. 20-12411 (JLG)

                              Debtor.

----------------------------------------------------------x

### DEBTOR'S OMNIBUS SECOND RENEWED MOTION (i) TO APPROVE SECOND AMENDED AND RESTATED SETTLEMENT WITH BRAVO LUCK AND PAX; AND (ii) TO HIRE MELANIE L. CYGANOWSKI AS AN EMPLOYEE ONLY TO ACT AS THE SALES OFFICER FOR THE DEBTOR'S BANKRUPTCY ESTATE

Genever Holdings LLC (the "Debtor"), as and for its omnibus and second renewed motion (the "Renewed Motion") (i) seeking approval pursuant to Bankruptcy Rule 9019(a) of the Second Amended and Restated Settlement with Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and Bravo Luck Limited ("Bravo Luck"), a copy of which is annexed hereto as Exhibit "A" (the "Revised Settlement"); and (ii) to hire Melanie L. Cyganowski ("Ms. Cyganowski")  as an employee only to act as the Sales Officer for the Debtor's Bankruptcy Estate pursuant to 11 U.S.C. §§ 105 and 363 in accordance with the attached revised Employment Letter annexed hereto as Exhibit "B" and pursuant to the respective pre-fixed revised Orders approving the Revised Settlement and the corresponding hiring of Ms. Cyganowski, which are being separately noticed for presentment, represents and shows this Court as follows:

#### Background

1.       The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 12, 2020 and thereafter has continued in possession and management of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.       The Debtor's chief asset consists of the 18th floor apartment and auxiliary units in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, New York 10022 (collectively, the "Residence").

3.       The Debtor reached a proposed settlement with Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and Bravo Luck Ltd. ("Bravo Luck") establishing, *inter alia*, a negotiated framework for the sale of the Residence under the stewardship of a Sales Officer to be employed by the Debtor.  The parties agreed upon the selection of Melanie Cyganowski to serve in this capacity, and the Debtor previously moved for Bankruptcy Court approval of the proposed settlement and the retention of Melanie Cyganowski as the Sales Officer (*See*, ECF Nos. 62 and 72).

4.       The Office of the U.S. Trustee objected to both motions (ECF Nos. 94 and 103). Thereafter, the parties briefed a number of issues in connection therewith (*See*, ECF Nos. 76, 81, 83, 95, 96, 97, 99, 104, 105 and 106).

5.       On September 1, 2021, the Bankruptcy Court issued a comprehensive decision (the "September 1, 2021 Decision") relating to the Debtor's motions, finding (i) that the settlement comfortably fell within the range of reasonableness and was in the best interests of the Debtor's estate; (ii) that the Debtor had the right under state law to amend its operating agreement to appoint the Sales Officer; and (iii) that the Debtor had the right to employ Ms. Cyganowski as Sales Officer.

6.       The Bankruptcy Court, however, found certain issues with Ms. Cyganowski providing any legal advice to the Debtor or utilizing personnel at her firm (Otterbourg P.C.) to assist her without retention of the firm under 11 U.S.C. §327.  Accordingly, the Bankruptcy Court initially did not approve either of the motions on this basis.  In the main, however, the proposed settlement appeared acceptable to the Court for purposes of Bankruptcy Rule 9019.

7.     Following receipt of the September 1, 2021 Decision, the Settling Parties have modified the proposed retention of Ms. Cyganowski to address the foregoing, essentially as follows:

- Ms. Cyganowski shall be hired strictly as an employee of the Debtor and shall not provide any legal advice or counsel to the Debtor.

- The Debtor shall not retain the Otterbourg P.C. law firm to assist Ms. Cyganowski or otherwise.

8.     Based upon these modifications, the Settling Parties hereby seek to renew the Debtor's motion for approval of the Revised Settlement with the same corresponding modifications relating to the hiring of Ms. Cyganowski. The Revised Settlement continues to provide an agreed framework for the sale of the Residence under the stewardship of the Sales Officer, who shall direct the sale and marketing process based upon her status as an employee of the Debtor. The Revised Settlement is substantially identical to the prior version of the settlement agreement, but has been modified to remove the provisions outlined in Paragraph 7 above regarding Ms. Cyganowski's status as an employee; (i) that the Otterbourg firm shall not be retained; and (ii) Ms. Cyganowski shall not provide legal advice to the Debtor. Also there were clarifications made regarding the structure of Ms. Cyganowski's indemnity and compensation, plus other non-substantive clean-up. Accordingly, the Debtor has obtained the agreement of the Settling Parties and the Office of the U.S. Trustee to the revised terms, and submits that the Revised Settlement should now be approved by the Court.

## Renewed Retention of Ms. Cyganowski

9.     Ms. Cyganowski is a highly respected and experienced person who can bring a sense of stability and confidence to the position of Sales Officer. Indeed, there is unanimous agreement among the parties that Ms. Cyganowski is an ideal candidate, as her experience and judgment are beyond reproach.

3

### Scope of Services

10.     In keeping with the Court's September 1, 2021 Decision, Ms. Cyganowski will perform the following services as more particular detailed in the renewed settlement agreement solely as an employee of the Debtor[1]:

    a.  Ms. Cyganowski shall oversee the sale of the Residence through a conventional bankruptcy-type sale process for the Debtor in consultation with Bravo Luck and PAX.  Ms. Cyganowski is not a chapter 11 trustee or examiner and is being hired strictly as an employee of the Debtor and Ms. Cyganowski will not render any legal advice or counsel.

    b.  Ms. Cyganowski shall select the real estate broker ("Broker") on behalf of the Debtor, subject to the right of Bravo and PAX to object.  The broker shall have expertise selling luxury residential Manhattan real estate and employed by the Debtor's Bankruptcy Estate. Bravo Luck and PAX shall be allowed to recommend and interview parties to fill the role of Broker in conjunction with Ms. Cyganowski.

    c.  Ms. Cyganowski shall also oversee the establishment of a marketing program and sales procedures for the Debtor that are designed to maximize value of the Residence.  Procedures and the ultimate approval of any sale shall be subject to further application to the Court to be filed by the Debtor's counsel.

11.     In sum, Ms. Cyganowski is being hired as an employee and designated sale officer to lead the Debtor's efforts to sell the Residence with delineated functions as set forth in the Renewed Settlement Agreement.

### Ms. Cyganowski's Disinterestedness

12.     Although the hiring of Ms. Cyganowski is being done under 11 U.S.C. § 363, she has no disqualifying relationships involving any creditors or parties in interest, and otherwise qualifies as a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code to the extent applicable.

13.     To the best of the Debtor's knowledge, information, and belief, Ms. Cyganowski: (a) has no prior or current connection with the Debtor, its creditors, any member of the Kwok

family, or other parties in interest; and (b) does not hold any interest adverse to the Debtor, the

Debtor's estate, PAX or Bravo Luck.

### Terms of Compensation

14.     As set forth in the renewed Employment Letter, Ms. Cyganowski has requested

and will be paid on an hourly basis predicated on a current billing rate of $1,400 per hour.  Ms.

Cyganowski has agreed that her compensation shall be paid from the sale proceeds generated

from the sale of the Residence, and the Debtor shall seek authorization to pay her fees and

expense in connection with a future application to sell the Residence.  Pending a sale of the

Residence, Ms. Cyganowski shall accrue her fees and expenses as an administrative expense

claim.

### Basis for Granting Application to Hire Ms. Cyganowski

15.     The legal predicates for Ms. Cyganowski's hiring have already been extensively

briefed and analyzed in this Court's September 1, 2021 Decision.  Essentially, the Debtor's

authority to hire Ms. Cyganowski flows from the Debtor's ability to sell the Residence pursuant

to Section 363 of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in

relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease,

other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

Under Section 363(b), courts require only that the debtor "show that a sound business purpose

justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del.

1999) (internal citations omitted); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012

WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor

may use its assets outside the ordinary course where such use "represents the sound exercise of

---

[1] The Court is respectfully referred to the renewed settlement agreement for a complete recitation of the terms.

business judgmentö); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335636 (Bankr. D. Del. 1987) (stating that judicial approval under Section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith, and supported by a good business reason). Moreover, ö[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtorøs conduct.ö *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that ö[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean taskö).

16.     The decision to hire Ms. Cyganowski, having been made with the approval of the Debtorøs major creditors, should be approved and authorized because it is based on a sound exercise of the Debtorøs business judgment, and her employment is in the best interest of the Debtorøs estate and creditors consistent with the Revised Settlement.

### The Revised Settlement and Revised Order Approving the Debtor's Hiring of Ms. Cyganowski Should Each Be Approved

17.     This Court previously found in its September 1, 2021 decision that the initial settlement was reasonable and met the *Iridium* factors for approval of settlements.  As the Court stated:

> The sixth Iridium Factor is not relevant to this matter. The Settlement Agreement falls comfortably within the scope of the remaining factors . . . The Court finds that the Settlement Agreement is fair and equitable and is in the best interests of the Debtorøs estate and creditors.

18.     However, as noted, the Court declined to approve the settlement because of its concerns relating to Ms. Cyganowskiøs retention.  Since the Revised Settlement fully addresses these concerns, as detailed above, the Debtor respectfully submits that the Revised Settlement should now be approved, together with Ms. Cyganowskiøs employment.

6

19. The final terms of the Revised Settlement (including the revised terms relating to hiring of Ms. Cyganowski) have been reviewed with the Office of the U.S. Trustee and all objections have been resolved. Accordingly, the Debtor is seeking Bankruptcy Court approval of these motions based upon a Notice of Presentment as authorized during the hearing on September 22, 2021. Any other creditor or party in interest having an objection may file the same prior to the presentment date, which then will be heard on October 20, 2021

WHEREFORE, the Debtor respectfully prays for the entry of the pre-fixed Orders.

Dated: New York, New York
September 24, 2021

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
Attorney for the Debtor
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700


By:  /s/ Kevin J. Nash, Esq.

## SECOND AMENDED AND RESTATED SETTLEMENT AGREEMENT

This Second Amended and Restated Settlement Agreement (the "**Settlement Agreement**") is entered into as of September 24, 2021, by and among Genever Holdings, LLC, ("**Debtor**"), Pacific Alliance Asia Opportunity Fund L.P. ("**PAX**") and Bravo Luck Limited ("**Bravo Luck**") (each a "**Party**" and collectively, the "**Parties**").[1]

### W I T N E S E T H :

WHEREAS, on October 12, 2020, Debtor filed its Chapter 11 Case.

WHEREAS, on December 16, 2020, PAX filed its motion to *Modify the Automatic Stay to Proceed with State Court Action and Related Relief* (the "**Lift Stay Motion**") [Dkts 12-14], which included, *inter alia*, a request to try PAX's veil piercing claims against the Debtor in the State Court Action.

WHEREAS, on January 5, 2021, the Debtor filed a response to the Lift Stay Motion and Bravo Luck also filed its objection thereto [Dkts 21 and 22].

WHEREAS, on January 12, 2021, PAX filed its motion for an *Order Under 11 U.S.C. 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. 1104(a) Appointing a Trustee to Administer the Debtor's Estate* ("**Conversion Motion**") [Dkts 35-37].

WHEREAS, on May 10, 2021, the Debtor filed its opposition to the Conversion Motion [Dkt 84] and on January 27, 2021, Bravo Luck filed its opposition to the Conversion Motion [Dkt 44].

WHEREAS, the Debtor, PAX and Bravo Luck entered in a settlement agreement on February 26, 2021 (the "**Initial Agreement**") to resolve the Lift Stay Motion and Conversion Motion, and to establish procedures for the sale of the Residence through the Chapter 11 Case while preserving the rights of all Parties.

WHEREAS, the Debtor moved (the "**Motion**") for approval of the Initial Agreement entered into on February 26, 2021 pursuant to Bankruptcy Rule 9019(a) [Dkt 62].

WHEREAS, with approval from PAX and Bravo Luck, the Debtor also moved to retain Melanie L. Cyganowski (Ret.) (hereinafter, "**Ms. Cyganowski**") as the Sales Officer for purposes of settlement pursuant to 11 U.S.C. §§105 and 363(b) [Dkt 72] (the "**Motion to Appoint Ms. Cyganowski**").

---

1 Capitalized terms shall have the meaning provided below, or if not otherwise defined, in the Motions.

WHEREAS, in support of the Motion to Appoint Ms. Cyganowski, the Debtor filed the Declaration of Disinterestedness by Melanie L. Cyganowski dated April 12, 2021 [Dkt. 73] (the "**Cyganowski Declaration**").

WHEREAS, the Office of the U.S. Trustee ("**UST**") previously objected to the Initial Agreement, and the Parties thereafter agreed to amend and modify the Initial Agreement to attempt to address the concerns and objections raised by the UST (the "**Amended Settlement**").

WHEREAS, the Bankruptcy Court issued a decision dated September 1, 2021 finding, in the main, that the Amended Settlement met the standards of Bankruptcy Rule 9019(a), but denying the Debtor's motions due to certain issues relating to Ms. Cyganowski also providing legal advice directly to the Debtor or with the assistance of the Otterbourg P.C. law firm without retention under 11 U.S.C. § 327.

WHEREAS, the Parties have again further modified the Amended Settlement as provided herein to address the Court's concerns as set forth in its decision dated September 1, 2021 and to address the objections of the UST in a continuing effort to resolve their differences as described herein without resorting to further litigation, and, as a result of negotiations among the Parties, the Parties have agreed to resolve the Lift Stay Motion and the Conversion Motion, as well as establish procedures for the sale of the Residence through the Chapter 11 Case while preserving the rights of all Parties, as set forth below.

NOW, THEREFORE, for the consideration of the promises and the mutual covenants contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby CONSENT, AGREE, and STIPULATE as follows:

1.    *Definitions*.  Capitalized terms used herein but not otherwise defined shall have the following meanings:

      a.    **"Approval Order"** shall mean the order entered by the Bankruptcy Court granting the Motion and approving this Settlement Agreement.

      b.    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Southern District of New York.

      c.    "**BVI**" shall mean the British Virgin Islands.

      d.    "**BVI Litigation**" shall mean those certain actions filed by PAX in the BVI in 2020 under case No. BVIHCM 2020/0137 against: (i) Genever BVI, (ii) Bravo Luck, (iii) Kwok, and (iv) Guo, seeking, among other things, to enforce (a) the Judgment arising in the State Court Action; and (b) the Defense and Counterclaim filed on January, 14, 2021, by Bravo Luck and Guo against PAX.

      e.    **"Chapter 11 Case"** shall mean the underlying chapter 11 bankruptcy case captioned *GENEVER HOLDINGS LLC.,* filed by the Debtor in the Bankruptcy Court, case number 20-12411.

f.      "**Effective Date**" shall mean the date on which the Approval Order has been entered by the Bankruptcy Court and is a final order.

g.      "**Genever BVI**" shall mean Genever Holdings Corporation, a British Virgin Islands corporation and 100% owner of the Debtor.

h.      "**Guo**" shall mean Qiang Guo.

i.      "**Kwok**" shall mean Kwok Ho Wan aka Miles Kwok.

j.      "**Operating Agreement**" shall mean the Limited Lability Company Agreement of the Debtor dated February 13, 2015, as amended by the Resolution, pursuant to section 23 therein.

k.      "**Residence**" shall mean the entire 18th floor apartment and auxiliary units in the Sherry Netherland Hotel located at 781 Fifth Avenue, New York, New York 10022.

l.      "**Resolution**" shall mean the corporate resolution previously passed by the Debtor as referenced in the Court's September 1, 2021 decision regarding the hiring of Ms. Cyganowski as an employee to serve as the Debtor's Sales Officer as provided hereunder.

m.      "**Sale Motion**" shall mean a motion to be filed by the Debtor seeking approval by the Bankruptcy Court to sell the assets of the Debtor, including but not limited to, the Residence, and for approval of sale procedures in connection with same.

n.      "**Sales Officer Hiring Order**" shall mean the separate order entered by the Bankruptcy Court approving the renewed Motion to hire Ms. Cyganowski pursuant to this Settlement Agreement.

o.      "**Sherry-Netherland Co-Op Board**" shall mean the cooperative board of the Sherry-Netherland.

2.      *Appointment of the Designated Sales Officer.*  Debtor hereby (i) exercises it business judgment to hire and appoint Ms. Cyganowski solely as an employee to serve as the Debtor's Sales Officer (the "SO") pursuant to Sections 9.3 and 23 of the Operating Agreement and the Resolution and (ii) designates authority to Ms. Cyganowski as SO solely to control and oversee the sale of the Residence as provided hereunder and without subjecting Ms. Cyganowski to any other duties or responsibilities.  Ms. Cyganowski's employment, as set forth in this Settlement Agreement, shall be approved by the Bankruptcy Court pursuant to the Sales Officer Hiring Order.  Pursuant to the Operating Agreement, Bankruptcy Code Section 363, and this Settlement Agreement, the Debtor may only revoke or terminate Ms. Cyganowski's hiring upon further Order of the Bankruptcy Court.  The Parties believe that Ms. Cyganowski has the requisite expertise selling luxury residential Manhattan real estate and co-ops through a bankruptcy process. Ms. Cyganowski is acceptable to the Debtor, Bravo Luck, and PAX.  Ms. Cyganowski as SO will oversee and interface with the retained real estate broker as provided below, and shall have the final authority as delegated by the Debtor hereunder and in the

Resolution, subject to Bankruptcy Court approval with right of objection by Bravo Luck and PAX, over the Debtor's decision making, sale process and the selection of (i) Qualified Buyer (defined below) and Qualified Offer (defined below) and (ii) successful and backup offers for the sale of the Residence.  In the exercise of such powers, the SO shall consult with the Debtor, Bravo Luck and PAX.  The SO is not acting as a lawyer for the Debtor and is not a chapter 11 trustee or examiner but shall have the same type of powers utilized by a trustee in bankruptcy, limited strictly to the terms of employment hereunder and without displacing the Debtor from its role as a debtor in possession.

3.      *Broker*.  The SO shall select the real estate broker(s) (the "**Broker**") to be retained and employed by the Debtor's estate in the SO's business judgment as delegated by the Resolution, in consultation with the Parties, and subject to the right of Bravo Luck and PAX to object.  Bravo Luck and PAX shall be allowed to propose/recommend parties to the SO for the role of Broker.  Bravo Luck and PAX shall have the right to interview the prospective Brokers.  Bravo Luck and PAX shall consult with the Broker and the SO for purposes of establishing the timing and realization of maximum value for the Residence.  The Broker will be compensated consistent with market terms, subject to Bankruptcy Court approval with right of objection by Bravo Luck and PAX.  The SO will consult Bravo Luck and PAX regarding Broker's compensation.  Broker shall be disinterested and free of conflicts, as described below.  A draft Broker Agreement and Affidavit of Disinterest shall be provided to Bravo Luck and PAX for review and comment prior to filing by the Debtor, which shall include disclosure of all past and present conflicts, connections, and financial relationships between the Broker, and its representatives, with Miles Kwok, members of Kwok's family and their respective counsel, associates, affiliates and interests, as well as any past connection with Bravo Luck and PAX as well as their respective counsel, associates, affiliates and interests.  Broker shall have expertise selling luxury residential Manhattan real estate.

4.      *Marketing Terms*.  The Parties agree to the following terms for the marketing of the Residence, with the specific terms to be established by the SO in consultation with the Debtor and as provided below:

a.      Floor price to be set by the SO for minimum offers for any sale in consultation with Bravo Luck and PAX.

b.      The SO may consider imposing limitations on an insider offer or by PAX or an affiliate thereof, in consultation with Bravo Luck and PAX.

c.      The Broker shall fully disclose all fees, costs and any other direct or indirect compensation to be received by the Broker and its representatives.

d.      The SO shall coordinate with the Broker in consultation with the Debtor, Bravo Luck and PAX on protocols for sale of the Residence, including staging, marketing strategy and process, identifying prospective buyers, international outreach, setting floor and target sale price, counteroffers, negotiated concessions, etc. and coordination with the Sherry-Netherland, as necessary.

e.      Other protocols and procedures for sale of the Residence shall be developed by the SO and the Broker in consultation with the Debtor, Bravo Luck and PAX, including duration, minimum sale price, target sale price, and time, place, and

manner of any sale of the Residence.  Notwithstanding anything contained herein to the contrary, the duration of the sale process shall be limited to 180 days from the retention of the Broker, subject to extension upon written agreement of the Debtor, Bravo Luck and PAX, or by further order of the Court for cause shown.

      f.    Parties residing at the Residence shall make the Residence available for showing upon 24 hours advance notice.

5.    *Sales Procedures*.  The Parties agree to the following regarding the sale of the Residence:

      a.    The sale shall be in cash payable at closing and shall be subject to higher and better offers.  If more than one Qualified Offer is received, the SO, in consultation with the Debtor, Bravo Luck and PAX, shall schedule an auction at which all Qualified Buyers can participate.

      b.    Selection of the winning Qualified Buyer shall be made by the SO in consultation with the Debtor, the Broker, Bravo Luck and PAX.

      c.    Sale shall be subject to Bankruptcy Court approval of a Sale Motion to be prepared and filed by the Debtor; draft of such motion to be provided to Bravo Luck and PAX for review and approval prior to filing.

      d.    Notwithstanding any other provision of this Settlement Agreement, and subject to applicable law, the sale of the Residence shall be subject to assignment of that certain Proprietary Lease by and between the Sherry-Netherland and the Debtor (the "Proprietary Lease"); all rights and obligations of the parties, whether under the Proprietary Lease or under applicable law, are expressly reserved.

      e.    Bravo Luck and PAX shall have access to the SO and the Broker and shall be kept fully informed regarding the status of the sale process, all offers received, and all material issues relating to the negotiation and eventual sale of the Residence.

      f.    The sale process shall include consultation rights for the Debtor, Bravo Luck and PAX, with the SO to have final authority in the event of any dispute pursuant to the authority granted to Ms. Cyganowski as an officer under Section 9.3 of the Operating Agreement.

      g.    Gross proceeds of sale less customary closing costs and expenses (including fees and expenses of the SO without further order of the Bankruptcy Court and the reasonable fees and expenses of the Broker subject to approval by the Bankruptcy Court upon notice to all Parties), without other deduction, shall be placed in escrow as provided below, subject to release solely with Bankruptcy Court approval on prior notice, including prior notice to Bravo Luck and PAX.  Notwithstanding the foregoing, Ms. Cyganowski shall have no control over, or obligations with regard to, the gross proceeds of the sale or the escrow account, which shall be held by an escrow agent in accordance with this paragraph, and only released upon further order of the Bankruptcy Court upon notice to the Parties.

      h.     Gross proceeds of sale, as described above, shall be deposited in a nationally recognized collateralized bank reasonably acceptable to the Debtor, Bravo Luck and PAX and subject to Bankruptcy Court approval.

      i.     Sherry-Netherland Co-op Board shall be consulted to confirm process and timing for Board approvals necessary to conduct and complete the sale of the Residence.

6.    *Approval Powers*. The SO shall oversee the sale process, and the Residence shall be initially marketed through the Broker in a commercially reasonable manner consistent with the stature of the Residence in an effort to identity one or more acceptable competing offers (each, a ǒ**Qualified Offer**ö) from one or more acceptable competing buyers (each, a ǒ**Qualified Buyer**ö).  An auction may be conducted if the SO determines it would result in a higher and better offer or upon further order of the Bankruptcy Court. The SO shall have the final approval power after prior consultation with the Debtor, Bravo Luck and PAX, and subject to Bankruptcy Court approval with right to object by Bravo Luck and PAX, regarding the marketing and sale of the Residence, including the following:

      a.     To decide the sale process, whether through traditional means, private sale, auction, a combination thereof, or other process;

      b.     To determine which potential buyers are Qualified Buyers;

      c.     To determine which offers are Qualified Offers;

      d.     To schedule an auction and determine the auction process, if necessary, including break-up fees, required overbids and other procedures;

      e.     To determine which Qualified Offer is the highest and otherwise best offer and which is the next highest and otherwise best offer;

      f.     To reject any offer that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Sales Procedures (as set forth in section 5 above) or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate;

      g.     To waive any term and condition set forth herein with respect to any potential buyer;

      h.     To impose additional terms and conditions with respect to any potential buyer and the successful purchaser;

      i.     To extend the deadlines set forth herein;

      j.     To, except, as set forth herein, adjourn or cancel any auction and/or sale hearing without further notice;

      k.     To modify the Sales Procedures; and/or

      l.     To withdraw the Sale Motion at any time with or without prejudice.

7.   *Stay Relief, Maintenance, Fees and Other Terms.*

a.   Stay relief is granted to allow PAX to prosecute, and the Debtor to defend, the state court action currently pending in the New York Supreme Court under Docket No. 652077/2017 (the "**State Court Action**"), with the stay to otherwise remain in place for all other purposes, including relating to enforcement or collection of any judgment entered against the Debtor in the State Court Action, pending further order of the Bankruptcy Court upon further notice to all Parties.  Nothing herein shall be construed as an acknowledgment of the appropriate forum outside the bankruptcy court to address any such issues, with all Parties' rights expressly reserved.

b.   Nothing herein shall prejudice the rights of any party, including Bravo Luck and PAX to proceed with the BVI Litigation, provided that PAX, Bravo Luck, Kwok, Guo or any of his or its affiliates reserve the right to assert claims in the Bankruptcy Court relating to its status as a creditor of the Debtor, and PAX reserves all rights to oppose such claims on any grounds. In addition, notwithstanding anything contained herein to the contrary, nothing in this Agreement shall prejudice the rights of any Party, including Bravo Luck and PAX, from proceeding with any and all claims, if any, against anyone, including Bravo Luck, Kwok, Guo, or any of his or its affiliates, and PAX or any of its affiliates, in BVI, State Court, or otherwise, and Bravo Luck and PAX reserve all rights to oppose such claims in the applicable forum.

c.   PAX shall withdraw its Conversion Motion expressly as provided below. PAX will not support or encourage a motion for the appointment of a trustee or conversion by any other party herein.  However, notwithstanding anything contained herein to the contrary, to the extent any substantive term of this Settlement Agreement is breached by the Debtor, Bravo Luck, Kwok, Guo, or any of their related entities, there shall be no limitation on PAX's right to renew or file its Conversion Motion, including appointment of a trustee, nor will there be any limitation upon the Debtor's or Bravo Luck's right to oppose such action on any ground, including inter alia, that such breach did not occur.  To the extent PAX breaches any substantive term under this Agreement, then PAX shall have no further right to renew or file its Conversion Motion, including appointment of a trustee, provided however, that there shall be no limitations upon PAX's right to seek a Bankruptcy Court declaration that such breach did not occur. Other than as expressly provided for under this Agreement, all Parties' rights and remedies are expressly reserved.

d.   Recommendation and Appointment of the SO:  In connection with execution of this Settlement Agreement, the Debtor, Bravo Luck and PAX have previously agreed upon Ms. Cyganowski as the designed SO.  In the event that paragraph 27(D)(f) is triggered, then Bravo Luck and PAX shall designate a total of four candidates for consideration as the designed SO, two by Bravo Luck and two by PAX (total of four by all Parties) (the "**List**"). The Parties shall confer to select an agreed SO from such List. If an agreement on selection of an SO cannot be reached by the Parties, then the Bankruptcy Court shall appoint the SO from such List, unless the Court finds an irreconcilable conflict to exist, after which the Office of the United States Trustee, after

consultation with Bravo Luck and PAX, may submit recommendations to the Court for other independent and disinterested persons to serve as SO.

       e.     Stay relief is confirmed to allow the Sherry-Netherland to apply all accrued and owing post-petition maintenance fees and assessments as of the date hereof, and thereafter on a monthly basis, from the current security deposit, with the stay to otherwise remain in place for all other purposes.

     8.     *Bankruptcy Court Approval.* This Settlement Agreement is subject to approval by the Bankruptcy Court and shall only be effective and binding on and from the Effective Date. The Parties hereby agree to waive the 14-day appeal period with respect to the effect of the Approval Order. The Debtor shall request that the Bankruptcy Court make the Approval Order a final, non-appealable order immediately upon entry. Bravo Luck and PAX have and shall continue to take all reasonable steps to seek approval of the Settlement Agreement and entry of the Approval Order and defend against any objections to this Settlement Agreement or appeals from the Approval Order.

     9.     *Conditions Precedent.* The obligations of the Parties set forth in this Settlement Agreement are subject to the occurrence of the Effective Date. If the Bankruptcy Court declines to enter the Approval Order, or if the Approval Order is vacated or reversed on appeal, this Settlement Agreement shall be of no further force or effect, and each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Settlement Agreement had never been formed and concluded/entered.

     10.    *Representations and Warranties.* Each Party represents and warrants to the other Parties that: (a) it is authorized to execute and deliver this Settlement Agreement and perform its obligations hereunder; (b) each believes its own best interests are served by settling the matters encompassed by this Settlement Agreement, as provided in this Settlement Agreement; (c) no promise, agreement, inducement, representation, or warranty has been offered to any Party except as expressly provided in this Settlement Agreement; (d) this Settlement Agreement is not in violation of or in conflict with any other agreement of any Party; (e) this Settlement Agreement is executed voluntarily with full knowledge of the consequences and implications of the terms and obligations contained herein; (f) each Party has been represented by counsel of that Party's choice throughout the negotiations that preceded the execution of this Settlement Agreement, and in connection with the preparation and execution of this Settlement Agreement; (g) each Party has carefully and thoroughly reviewed this Settlement Agreement in its entirety and has resolved all questions concerning the meaning, legal nature, and binding effect of this Settlement Agreement with counsel of each Party's choosing; and (h) this Settlement Agreement is contractual and not merely recital, and that each Party has read, understands, and fully agrees to the terms of this Settlement Agreement.

     11.    *No Admission of Liability.* Nothing in this Settlement Agreement shall be construed as an admission of liability or fault by any Party, and such liability and fault are expressly denied.

12.     *Further Assurances*.  Each Party shall execute and deliver any document or instrument reasonably requested by another Party after the date of this Settlement Agreement to effectuate the intent of this Settlement Agreement.

13.     *Assignment*.  No Party may assign any of its respective benefits, obligations or liabilities under or in respect of this Settlement Agreement without (a) the prior written consent of each other Party, which may be withheld in its absolute discretion, or (b) by order of the Bankruptcy Court.

14.     *Successors*.  This Agreement shall be binding upon and inure to the benefit of each Party and its respective successors, heirs, estates and personal representatives.

15.     *Amendments*.  This Agreement may be modified or amended only by a writing signed by a duly authorized representative of each Party hereto.

16.     *Integration*.  The provisions of this Settlement Agreement are integrated, essential and non-severable terms of this Settlement Agreement.

17.     *Counterparts; Facsimile Signatures*.  This Settlement Agreement may be executed in counterparts, each such counterpart will constitute an original document and such counterparts, taken together, will constitute one and the same document.  Electronically transmitted or facsimile copies shall be deemed to be originals.

18.     *Headings*.  The headings of this Settlement Agreement are inserted solely as a matter of convenience and for reference and do not define, limit or describe the scope of this Settlement Agreement or the scope or content of any of its provisions.

19.     *Governing Law*.  This Settlement Agreement shall be governed by and construed in accordance with the Bankruptcy Code.

20.     *Continuing Jurisdiction*.  The Bankruptcy Court shall retain jurisdiction to resolve any dispute relating to the interpretation or enforcement of this Settlement Agreement.

21.     *Entire Agreement*.  This Settlement Agreement constitutes the entire agreement and understanding of the Parties regarding this Settlement Agreement and the subject matter thereof.

22.     *Dual Construction*.  If any provision of this Settlement Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning that renders it valid and enforceable.

23.     *All Parties Drafted the Settlement Agreement*.  The rule of construction that provides that ambiguities in a contract shall be construed against the drafter shall not apply to this Settlement Agreement because each Party drafted its terms, and all Parties waive applicability of such rule of construction in interpreting this Settlement Agreement.

24.     *Conferring Benefits.*  Nothing in this Settlement Agreement shall be construed to confer any benefit upon any person or entity, other than the Parties.

25.     *Recitals.*  The recitals are true and correct and are incorporated herein as if set forth at length.

26.     *Time Is of the Essence.*  Time is of the essence in relation to this Settlement Agreement.

27.     *Additional Provisions to address the Concerns and Objections of the UST*

A.     The Debtor is authorized to hire Ms. Cyganowski as an employee to serve as the designated SO under its Operating Agreement as amended and bylaws to carry out the specific duties and obligations set forth in this Settlement Agreement, and has hired Ms. Cyganowski pursuant to the Resolution.

B.     Ms. Cyganowski will be paid on an hourly basis predicated on a current billing rate of $1,400 per hour with all of her compensation to be treated as an administrative expense claim in accordance with Section 503 of the Bankruptcy Code.  The Debtor shall seek authorization to pay Ms. Cyganowski her fees and expenses in connection with an application to sell the Residence.

C.     The rights, duties and obligations of the SO shall be carried out without the necessity for further approvals from the Debtor's member(s) and manager(s) as such approvals have already been given by the Debtor in the exercise of its business judgment; provided, that, the SO shall report periodically to the Debtor's member(s) and manager(s); and approval of the highest and best offer for the sale of the Residence shall be subject to further order of the Bankruptcy Court upon notice.

D.     The Debtor's hiring of Ms. Cyganowski as the SO in accordance with this Settlement Agreement, as approved by the Bankruptcy Court, shall be subject to the following general limitations.

a.     Ms. Cyganowski (and any agent and/or related entity) shall not act in any other capacity (for example, and without limitation, as a lawyer, counsel, financial advisor, examiner, trustee or investor/acquirer) in connection with the Chapter 11 Case.

b.     Solely upon written consent of the Debtor, Bravo Luck and PAX and by written motion to the Bankruptcy Court upon notice, the Debtor may seek to (i) have Ms. Cyganowski assume duties that are different than the functions envisioned in the Settlement Agreement, (ii) materially change the terms of the engagement, (iii) modify the functions provided thereunder, (iv) add new executive officers, or (v) altering or expanding the scope of the engagement (except neither Ms. Cyganowski nor Otterbourg P.C. shall provide legal services to the Debtor).

c.     No principal or employee associated with Ms. Cyganowski shall serve as a director of the Debtor during the pendency of the above-captioned case.

d. From time to time periodically, and at least twenty (20) days in advance of any payment hereunder, the Debtor shall file or cause to be filed with the Bankruptcy Court and provide notice to parties having filed notices of appearance (the UST, Bravo Luck, and PAX) in this Chapter 11 Case, reports of Ms. Cyganowski's earned compensation and expenses.

e. Ms. Cyganowski, and her agents, shall be entitled to advancement and indemnification by the Debtor's estate in like manner as any of the Debtor's officers for all judgments, costs, and expenses, including reasonable legal fees (which shall be paid under the indemnity after court approval as they arise), arising from or related to any and all claims of whatsoever type brought against any of them in their capacity as SO or her agent, except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty determined by a final order no longer subject to appeal. Nothing herein shall limit any defenses of Ms. Cyganowski allowed by law or deprive her of indemnity for any act or omission for which she has a defense.  Ms. Cyganowski shall be added to the Debtor's existing liability policy with AIG Property and Consulting Company as an additional insured.

f. In the event of death, incapacity, resignation, or removal, a replacement SO shall be selected through the same process as the initial selection of the SO in accordance with this Settlement Agreement and further order of the Bankruptcy Court.

E. Ms. Cyganowski, in consultation with the Debtor, PAX and Bravo Luck, shall make decisions in accordance with the terms of this Settlement Agreement regarding the sale and marketing of the Residence, utilizing her business judgment and subject to Bankruptcy Court approval of the sale of the Residence pursuant to 11 U.S.C. §363(b) and (f), and 1123.  The Debtor has amended the Operating Agreement to and hereby reconfirm (i) the hiring of Ms. Cyganowski as SO to carry out all of the duties and responsibilities as provided herein; (ii) that the Debtor cannot revoke Ms. Cyganowski's hiring and/or authority as SO without Bankruptcy Court approval; and (iii) that in the event of death, incapacity, resignation, or removal, a replacement SO shall be selected in accordance with this Settlement Agreement. Notwithstanding the foregoing, nothing contained herein shall divest the Debtor from its duties as a debtor-in-possession.

F. To the extent there is inconsistency between the terms of this Settlement Agreement, the Motion, the Engagement Letter and the Order approving this Settlement Agreement, the terms of this Settlement Agreement shall govern.

[Signatures on the following page]

Dated:   September 24, 2021

Genever Holdings LLC

By: */s/Kevin J. Nash*
Kevin J. Nash
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10022-5520
212-301-6944
KNash@qwfglaw.com
Attorneys for Debtor, Genever Holdings, LLC

Pacific Alliance Asia Opportunity Fund L.P.

By: */s/ Douglas E. Spelfogel*
Douglas E. Spelfogel
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016-1314
212-682-7474
dspelfogel@foley.com
Attorneys for Pacific Alliance Asia Opportunity
Fund L.P.

Bravo Luck Limited

By: */s/ Fran J. Lawall*
Francis J. Lawall
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000
Francis.lawall@troutman.com
Attorneys for Bravo Luck Limited



230 Park Avenue
New York, NY 10169
otterbourg.com
212 661 9100

Melanie L. Cyganowski
Member of the Firm
mcyganowski@otterbourg.com
212 905 3677

September 24, 2021

Yanping Wang
Duly Authorized Representative of Genever Holdings LLC
The Sherry-Netherland
781 Fifth Avenue
Unit 1801
New York, New York 10022

     Re:     Genever Holdings LLC; Case No. 20-12411 (JLG)

Dear Mr. Wang:

     On October 12, 2020, Genever Holdings LLC (the "Company") filed for bankruptcy relief with the United States Bankruptcy Court for the Southern District of New York (the "Court"), Case No. 20-12411 (JLG) (the "Bankruptcy Case"). The Company is currently operating as a debtor in possession under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). It is my understanding that on March 5, 2021, the Company filed a motion with the Court to approve a proposed settlement agreement by and among the Company, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and Bravo Luck Limited ("Bravo Luck") [Dkt. No. 62] (the "First Settlement Motion") and also filed a motion to retain me as a designated Sales Officer on behalf of the Company's bankruptcy estate [Dkt. Nos. 72, 73] (the "First Retention Motion"). On September 1, 2021, the Court denied the First Settlement Motion and the First Retention Motion. [Dkt. No. 123].

     In accordance with my discussions with Kevin J. Nash, Esq., bankruptcy counsel for the Company, I have been informed that the Company will be filing a second revised motion seeking approval of a second amended and revised settlement agreement (the "Proposed Settlement") by and among the Company, PAX, and Bravo Luck Limited, and that the Company seeks to hire me as the Sales Officer in connection with the Bankruptcy Case pursuant to a revised employment letter. This letter serves to confirm the revised understanding and agreement (the "Agreement") between the Company and me concerning my employment as the Sales Officer and also serves to set forth the terms and conditions of the employment, including the scope of services to be performed and the structure of compensation for those services.

Description of Services

- In connection with this employment, I will serve as the Sales Officer on behalf of the Company with respect to the proposed sale (the "Proposed Sale") of the Company's ownership interest in the entire 18th floor apartment and auxiliary

6680187.1



September 24, 2021
Yanping Wang
Page 2

units located at The Sherry-Netherland, 781 Fifth Avenue, New York, New York 10022 (the "Residence"), which interest according to the *Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2*, dated October 6, 2020 [Dkt. No. 1], is "memorialized by approximately 3,000 shares of Sherry Netherland cooperative stock and corresponding proprietary leases"

- As Sales Officer, I will have the powers and duties set forth in the Proposed Settlement (as approved by the Court), solely to control and oversee the sale of the Residence as provided under the Proposed Settlement without subjecting me to any other duties or responsibilities.

- Solely upon written consent of the Company, Bravo Luck and PAX, and on notice to the Office of the U.S. Trustee with an opportunity to object, the Company may seek to have me assume duties that are different than the functions provided herein, or to expand into other areas or altering or expanding the scope of the employment, which relief shall be sought by motion to modify the retention filed with the Court;

- The Company expressly authorizes the Sales Officer to carry out all such duties and obligations as provided under the Settlement Agreement without further action by the Company.

Cooperation

- The Company shall furnish to me and my agents all information in its possession or control relating to the Residence that the Company believes is relevant to the Proposed Sale of the Residence and shall furnish all information that I shall request in connection with my duties as Sales Officer.

Limitation of Duties

- I do not make any representation or guarantee of the amount of sale proceeds, if any, that could be or will be generated from the sale of the Residence.

- I shall not be responsible, obligated or liable for the payment of any taxes, fees, costs, expenses, maintenance or charges related to the Residence or the Company, and such taxes, fees, costs, expenses, maintenance or charges shall be solely the responsibility, obligation and liability of the Company's bankruptcy estate.



September 24, 2021
Yanping Wang
Page 3

- I (and any agent and/or related entity) shall not act in any other capacity (for example, and without limitation, as a lawyer, counsel, financial advisor, examiner, trustee or investor/acquirer) in connection with the Chapter 11 Case. I shall not provide any legal advice to the Debtor

- The firm of Otterbourg P.C. is not being retained. Otterbourg P.C. makes no representations hereunder and will not incur any obligations hereunder.

Compensation

- My services will be paid on an hourly basis predicated on my current billing rate of $1,400 per hour. The Company shall seek authorization to pay my fees and expenses in connection with an application for the sale of the Residence. In connection with any increases in my rates, I shall file a supplemental declaration with the Court and provide ten business days' notice to the U.S. Trustee prior to any increase in rates. The supplemental declaration shall set forth the requested rate increases, explain the basis for the requested rate increase, and certify that the Company has consented to the requested rate increases.

- Disbursements to be billed to the Company include, but are not limited to, non-local telephone calls, facsimile and other telecommunication charges, transportation, copying, delivery and messenger services, computerized research (billed at the actual cost of such research) if required, and other disbursements.

- All fees and expenses incurred by me will be based upon my actual time charges and disbursements recorded or incurred. For purposes of this employment, such fees and expenses shall accrue pending a sale of the Residence and will be promptly paid from the sale proceeds generated from the sale of the Residence following the filing of an application.

- All fees and expenses incurred and accrued by me will be treated and allowed in this Bankruptcy Case as administrative expenses in accordance with the Bankruptcy Code. A summary of all such charges as accrued, shall be filed with the Court, and provided to any parties having filed notices of appearance and the U.S. Trustee on a periodic basis.

- I (and my agents) shall be entitled to advancement and indemnification by the Company's bankruptcy estate in like manner as any of the Debtor's other officers for all judgments, costs, reasonable expenses, including legal fees (which shall be paid under the indemnity after court approval as they arise), arising from or



September 24, 2021
Yanping Wang
Page 4

related to any and all claims of whatsoever type brought against me in my capacity as Sales Officer, or my agents, except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty determined by a final order no longer subject to appeal. Nothing herein shall limit any defenses allowed by law or deprive me of indemnity for any act or omission for which I have a defense. I shall be added to the Debtor's existing liability policy with AIG Property and Consulting Company as an additional insured.

Term

- The employment will commence effective as of the date on which the Court enters an order approving my employment as Sales Officer on behalf of the Company and shall terminate upon the earlier of (i) the entry of a Court order dismissing the Bankruptcy Case, (ii) the entry of a Court order converting the Company's chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code, and (iii) the entry of a Court order terminating my services as Sales Officer.

Court Approval

- The Company shall use commercially reasonable efforts to obtain prompt approval from the Court of my employment as Sales Officer on behalf of the Company. Such Court approval shall provide for the employment to be effective as of the date on which the Court enters an order approving my employment as Sales Officer and shall incorporate all of the terms herein.

Miscellaneous

- This Agreement, including, without limitation, the construction and interpretation thereof, and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The parties hereto agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the employment or the performance or non-performance of the Sales Officer hereunder. The parties hereto agree that the Bankruptcy Court shall retain exclusive jurisdiction to hear any dispute arising under this agreement and waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue in the Bankruptcy



September 24, 2021
Yanping Wang
Page 5

Court SDNY for any disputes and/or litigation arising in connection with this Agreement.

- This Agreement shall be binding upon the parties hereto, their respective heirs, successors, and assignees, including, without limitation, any Chapter 11 or Chapter 7 Trustee appointed.

On behalf of the Company, please confirm your agreement to this employment letter, by signing a copy of this letter on behalf of the Company and returning it to me. Of course if you have any questions or comments please call me to discuss them.

Very truly yours,

/s/ Melanie L. Cyganowski

AGREED AND ACCEPTED:

/s/ YANPING WANG
Duly Authorized Representative of Genever Holdings LLC

CC:     Kevin J. Nash, Esq. (KNash@GWFGLaw.com)