# Exhibit UCC-10

# PAX's First Amended Complaint dated April 18, 2019 in PAX v. Kwok, Index No. 652077/2017 (N.Y. Sup. Ct.), Dkt. No. 309

CASE NO. 22-50073
IN RE: Ho Wan Kwok
VS.
UCC  EXHIBIT  10
DATE _____ IDEN.
DATE 5/25/2022 Admitted in Full  EVID.
BY P.E.
Deputy Clerk
AO 386-A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

    Plaintiff,

    v.

KWOK HO WAN, *a/k/a* KWOK HO, *a/k/a* GWO WEN GUI, *a/k/a* GUO WENGUI, *a/k/a* GUO WEN-GUI, *a/k/a* WAN GUE HAOYUN, *a/k/a* MILES KWOK, *a/k/a* HAOYUN GUO, GENEVER HOLDINGS LLC, *and* GENEVER HOLDINGS CORPORATION,

    Defendants.

Index No. 652077/2017

Hon. Barry R. Ostrager

Part 61

**FIRST AMENDED COMPLAINT**

## NATURE OF THE ACTION

1.  This is a straightforward breach of contract case. Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Gwo Wen Gui, a/k/a Guo Wengui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Miles Kwok, a/k/a Haoyun Guo ("Kwok"), a reported billionaire, and his controlled entities borrowed millions of dollars from Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("PAX LP") but have failed to pay the amount owed to PAX LP under binding written agreements.

2.  In 2008, PAX LP entered into a written agreement with Spirit Charter Investment Limited ("Spirit Charter"), one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million. This loan facility was conditioned on Kwok's execution of a personal guarantee of Spirit Charter's repayment obligations. Kwok executed that guarantee, and PAX LP lent $30 million to Spirit Charter on February 4, 2008.

3.  In 2009, another of Kwok's entities, Shiny Times Holdings Limited ("Shiny Times"), assumed the debt that Spirit Charter owed to PAX LP, which the parties agreed at the time totaled $45,357,534.25. Kwok again executed a personal guarantee with respect to that debt.

4.  Then in 2011, PAX LP and Shiny Times entered into a written agreement (the "2011 Facility Letter") that expressly superseded the prior agreements between the parties. In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 and would repay that amount (plus 15% annual interest from December 31, 2010) by June 30, 2012.

5.  That same day, Kwok executed another personal guarantee (that similarly expressly superseded Kwok's prior personal guarantee) pursuant to which Kwok guaranteed payment of the amount owed to PAX LP by Shiny Times under the 2011 Facility Letter (the "2011 Personal Guarantee").

6.  After both Shiny Times and Kwok failed to repay PAX LP, Kwok, Shiny Times, and Beijing Pangu (another Kwok-controlled entity) negotiated a potential settlement with PAX LP, under

which PAX LP, to settle the debt, was to take ownership of three apartments located in Beijing that were owned by Beijing Pangu. But Kwok and Beijing Pangu failed to meet the specific conditions precedent for the settlement (including, among other ways, failing to transfer title for the apartments to PAX LP), even after PAX LP, through four separate extensions, provided Kwok and Beijing Pangu an additional 23 months to satisfy these conditions.

7. As the conditions precedent were not satisfied when the last deadline expired at the end of June 2015, the 2011 Facility Letter and the 2011 Personal Guarantee by their express terms reverted to being in full force and effect, and PAX LP then began its pursuit of repayment of the mounting, contractual debt from both Shiny Times and Kwok. Shiny Times, however, had no assets when PAX LP had it liquidated in the British Virgin Islands. And Kwok to this date has refused to repay a penny of his debt. In fact, Kwok has recently denied the very existence of the debt and has stated repeatedly that he should not have to repay it, including on his Twitter account and in a deposition in this very lawsuit.

8. Two of Kwok's shell companies—Genever Holdings LLC ("Genever NY") and Genever Holdings Corporation ("Genever BVI" and together with Genever NY, the "Genever Defendants")—are liable for his debt to PAX LP because each is Kwok's alter ego. Kwok is the sole shareholder and director of Genever BVI, which in turn is the sole shareholder of Genever NY, through which Kwok purchased a luxury apartment at The Sherry-Netherland Hotel, Inc. (the "Sherry-Netherland" and the apartment the "Residence") in New York in early March 2015 for $67.5 million in cash. Kwok dominates and controls both Genever NY and Genever BVI, neither of which has offices, employees, or any separate existence apart from being the shells through which Kwok purchased the Residence.

9. Kwok purchased the Residence for almost the precise amount of money he owed at the time to PAX LP under the Personal Guarantee. He formed the Genever Defendants at a time when he knew his debt would be due and owing to PAX LP, and almost immediately thereafter, he purchased the Residence through the Genever Defendants in an attempt to shield that asset from PAX LP. Kwok has made false statements to both the Sherry-Netherland and this Court about the Genever Defendants in an attempt to further that debt-avoidance effort. This and other Kwok conduct with respect to the Genever Defendants, detailed below, demonstrates that Kwok has abused the privilege of the corporate form in order to perpetrate a fraud, wrong, or injustice against PAX LP.

10. PAX LP has taken all necessary and appropriate steps in accordance with its agreements with Shiny Times and Kwok to recover the monies it is owed—now totaling more than $100 million including contractual interest. To date, however, Shiny Times and Kwok have failed to satisfy even one dollar of their contractual repayment obligations on the outstanding debt. And as a result of this failure to repay the debt, PAX LP has also incurred "costs, claims losses, [and] expenses (including legal fees)" in connection with enforcing the 2011 Personal Guarantee, which Kwok is obligated to indemnify under the express terms of the 2011 Personal Guarantee. (*See* Exhibit A § 5.3.)

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Kwok pursuant to New York's general personal jurisdiction statute, C.P.L.R § 301, because he is engaged in a continuous and systematic course of "doing business" in New York, is domiciled in the state, and owns the Residence, located in New York County.

12. This Court has personal jurisdiction over Genever NY pursuant to C.P.L.R § 301, because it is incorporated in New York and its sole business purpose is to own shares in Kwok's Residence, located in New York County.

3

13. This Court has personal jurisdiction over Genever BVI because, as alleged herein, by virtue of Kwok's domination and control over it to perpetrate a fraud against PAX LP, Genever BVI is Kwok's alter ego. Moreover, Genever BVI has engaged in relevant conduct in, and availed itself of the laws of, New York by becoming the sole shareholder of a New York LLC (Genever NY) and being the indirect owner of the Residence. Indeed, Genever BVI's sole business purpose is to own (through its 100% ownership of Genever NY) the Residence. Genever BVI is represented by Kwok's counsel in this litigation (in which that counsel accepted service of and responded to a third-party subpoena to Genever BVI). Kwok's counsel also made representations to this Court in this case regarding certain pledges of Genever BVI's assets.

14. Venue is proper in this Court under C.P.L.R § 503(a) because Kwok's residence is in New York County and Genever NY's place of incorporation is New York County.

## PARTIES

15. Plaintiff PAX LP is an investment fund organized as an exempted limited partnership under the laws of the Cayman Islands.

16. Defendant Kwok is a Chinese national who is domiciled in New York and engages in a continuous and systematic course of "doing business" in New York. Kwok is the sole shareholder and director of Genever BVI. Kwok resides in the Residence.

17. Defendant Genever NY is a limited liability company established under the laws of New York. Genever NY's sole business purpose is to own shares in the Residence, which is apartment number 1801 in the Sherry-Netherland. Genever NY purchased the Residence in 2015 for $67.5 million.

18. Defendant Genever BVI is a BVI business company established under the laws of the British Virgin Islands. Genever BVI's sole business purpose is to own (through its 100% ownership of Genever NY) the Residence.

4

## STATEMENT OF FACTS

### *The Loan Facility and Kwok's Personal Guarantees to Repay PAX LP*

19. PAX LP and Kwok have had business dealings since approximately February 4, 2008, when PAX LP entered into a written agreement (the "2008 Facility Agreement") with Spirit Charter (attached as Exhibit B), one of Kwok's business entities, under which PAX LP made available to Spirit Charter a loan facility in the principal amount of $30 million (*see* Exhibit B § 3). Kwok executed the 2008 Facility Agreement on behalf of Spirit Charter. The 2008 Facility Agreement specified that "[PAX LP] shall not be obliged to make the Advance to the Borrower unless it shall first have received . . . a duly executed Kwok[] Guarantee." (Exhibit B § 4(d).) Having received Kwok's guarantee, PAX LP lent the full $30 million available under the loan facility to Spirit Charter on February 4, 2008.

20. On March 12, 2008, PAX LP and Spirit Charter amended and restated the 2008 Facility Agreement ("Amended and Restated 2008 Facility Agreement"). (*See* Exhibit C.) Kwok executed the Amended and Restated 2008 Facility Agreement on behalf of Spirit Charter, which acknowledges and confirms that Spirit Charter "received the US$30,000,000 principal amount of the Original Facility on 4 February 2008." (Exhibit C § 2.)

21. By a deed dated September 17, 2009 (the "September 2009 Deed"), Shiny Times, Spirit Charter, PAX LP, and various other parties agreed that Shiny Times would replace Spirit Charter as the borrower under the Amended and Restated 2008 Facility Agreement. (*See* Exhibit D.) Kwok executed the September 2009 Deed on behalf of Shiny Times, Spirit Charter, and himself. The parties to the September 2009 Deed also agreed that the outstanding amount under the Amended and Restated 2008 Facility Agreement, including accrued and unpaid interest, was $45,357,534.25 as of September 12, 2009. (*See* Exhibit D at 4.)

5

22. The September 2009 Deed required Kwok to execute a new personal guarantee in favor of PAX LP to secure Shiny Times's repayment of the approximately $45 million then owed under the Amended and Restated 2008 Facility Agreement. (*See* Exhibit D § 5.10.) Kwok executed his personal guarantee on November 18, 2009. (*See* Exhibit E.)

23. In 2011, PAX LP, Kwok, and Shiny Times agreed to supersede the foregoing agreements with two contracts executed on March 16, 2011—the 2011 Facility Letter (attached as Exhibit F) and the 2011 Personal Guarantee (attached as Exhibit A).

24. In the 2011 Facility Letter, the parties agreed that Shiny Times owed PAX LP $46,426,489 as of that date and would repay that amount, with 15% annual interest running from December 31, 2010, by June 30, 2012. (*See* Exhibit F §§ 3, 5.)

25. The parties further agreed in the 2011 Facility Letter that any failure by Shiny Times to pay any amount owed to PAX LP under the 2011 Facility Letter would constitute an Event of Default, and that in such event PAX LP could (i) declare the entire loan, accrued and unpaid interest, and any other money payable to be immediately due and payable without further demand or notice or other legal formality of any kind, and/or (ii) declare the 2011 Facility Letter terminated. (*See* Exhibit F § 13.)

26. Like the prior agreements between the parties, the 2011 Facility Letter was also expressly conditioned on Kwok's execution of the 2011 Personal Guarantee to fully backstop Shiny Times's payment obligations to PAX LP:

> The Lender [PAX LP] and the Borrower [Shiny Times] agree to enter into this Agreement . . . on the condition that a new personal guarantee of Mr. Kwok (the "Personal Guarantee"), in favour of the Lender is delivered to secure the due and punctual performance of the Borrower to fully repay the [2011 Facility Letter] plus all accrued and unpaid interest in accordance with this Agreement.

(Exhibit F at 1.)

6

27. Kwok executed the 2011 Facility Letter on behalf of Shiny Times and on the same day signed the 2011 Personal Guarantee, under which he agreed to "irrevocably and unconditionally" guarantee Shiny Times's payment of all amounts owed under the 2011 Facility Letter. In particular, Kwok:

    (a)    guaranteed to PAX LP the "due and punctual payment" of Shiny Times's obligations under the 2011 Facility Letter;

    (b)    agreed "that promptly on [PAX LP's] demand [Kwok] will pay to [PAX LP] all [such amounts] that are due but unpaid";

    (c)    agreed to "indemnify and hold harmless [PAX LP] on demand from and against all losses incurred by [PAX LP] as a result of any obligation of Shiny Times under the 2011 Facility Letter being or becoming void, voidable, unenforceable or ineffective as against Shiny Times for any reason whatsoever";

    (d)    agreed that PAX LP's demand for payment would constitute *prima facie* evidence that such payment was due and owing;

    (e)    agreed that PAX LP could seek repayment from either Shiny Times or Kwok; and

    (f)    agreed to indemnify PAX LP from "any and all costs, claims losses, [and] expenses (including legal fees)" incurred as a result of exercising or enforcing the Personal Guarantee.

(Exhibit A §§ 2.1–2.2, 3.3, and 5.3.)

28. Kwok also agreed in the 2011 Personal Guarantee to waive defenses, including those based on the winding up or dissolution of Shiny Times or PAX LP's inability to recover against Shiny Times "for any reason." (Exhibit A § 3.4.) Kwok further agreed to a catchall waiver of defenses based on "any other act, event or omission which might operate to discharge, impair or otherwise affect the Guarantor or any of the Obligations or any of the rights, powers, and remedies conferred upon [PAX LP] by this Guarantee or by law." (Exhibit A § 3.4(g).)

29. In short, Kwok personally executed an unambiguous and ironclad guarantee that he would satisfy Shiny Times's debt to PAX LP.

7

### *The Settlement Attempts, Extensions, and Shiny Times's*
### *Ultimate Failure to Repay PAX LP*

30. Shiny Times did not repay any portion of the loan principal or accrued interest before the June 30, 2012 repayment date set forth in the 2011 Facility Letter, and the parties subsequently structured an attempt to resolve that debt through a settlement agreement—and then several extensions thereof—each of which was styled a "Deed of Settlement."

31. PAX LP, Shiny Times, and Kwok entered into the Original Deed of Settlement (attached as Exhibit G) along with Beijing Pangu, another Kwok-owned company, on April 19, 2013. Kwok executed the Original Deed of Settlement on behalf of Shiny Times and himself.

32. The Original Deed of Settlement provided that (i) the total outstanding amount due under the 2011 Facility Letter plus all accrued and unpaid interest was $52 million as of the date of the Original Deed of Settlement, and (ii) that amount would no longer be due and owing upon the occurrence of the following events:

(a) If PAX LP completed the purchase of three apartments from Beijing Pangu in a series of three separate transactions for approximately $5 million each, for a total of approximately $15 million; and

(b) If Shiny Times completed three installment payments to PAX LP of approximately $5 million each—one installment payment to be made after each separate apartment purchase—for a total of approximately $15 million.

(*See* Exhibit G §§ 2–3.1.)

33. Before PAX LP could complete the purchase the three apartments from Beijing Pangu, however, Beijing Pangu was required under the Original Deed of Settlement to satisfy certain express conditions precedent relating to title, taxes, satisfaction of mortgages, and other common aspects of Chinese real estate transactions. (*See* Exhibit G § 3.2.) If any of these conditions were not met for any of the three apartments by July 31, 2013, the Original Deed of Settlement provided that "the Facility Letter shall revert and be in full force and effect immediately after such failure and Shiny Times shall

8

be obliged to settle any outstanding Total Outstanding Amount and any interest accrued thereon in accordance with the terms of the [2011] Facility Letter." (Exhibit G § 4.2.)

34. If the 2011 Facility Letter were to revert into full force and effect, Kwok's obligations would also be in full force and effect under the terms of the 2011 Personal Guarantee: "The obligations of [Kwok] . . . shall continue in full force and effect until the unconditional and irrevocable payment and discharge in full of" Shiny Times's payment and performance obligations under the 2011 Facility Letter. (Exhibit A § 3.1.)

35. Kwok and Beijing Pangu failed to satisfy the conditions precedent by July 31, 2013.

36. Four supplemental deeds of settlement—on December 3, 2013; May 15, 2014; July 11, 2014; and February 10, 2015 (attached as Exhibits H–K)—extended the dates in the Original Deed of Settlement, including the repayment date and the date for Kwok and Beijing Pangu to satisfy the conditions precedent.

37. Each of the supplemental deeds had the same terms as the Original Deed of Settlement. And the result was the same each time: Kwok and Beijing Pangu never satisfied several of the required, express conditions. Thus, PAX LP was not required to (and in fact could not) complete its purchase of any of the apartments, and Shiny Times never made any of the three installment payments it owed to PAX LP under the Original Settlement Deed.

38. Finally, on March 31, 2015, Shiny Times and PAX LP, together with Worldwide Opportunity Holdings Limited and Empire Growth Holdings Limited, entered into an Option Agreement (the "Option Agreement") that provided, among other things, for the potential sale to Kwok of shares in entities that owned the three Beijing Pangu apartments subject to the Original Deed of Settlement (*see* Exhibit L § 2), giving Kwok the option to buy back the apartments from PAX LP.

39. Pursuant to its terms, the Option Agreement was to terminate if certain conditions were not satisfied: "For the avoidance of doubt, if any of the following conditions to the Option is not satisfied, this Agreement shall terminate with immediate effect (without prejudice to any rights or remedies available to PAX LP under the Deed of Settlement)." (Exhibit L § 2.) As none of the Option Agreement conditions were satisfied, the Option Agreement similarly was terminated without relieving Shiny Times of its obligation to pay PAX LP under the 2011 Facility Letter.

40. Thus, when both the last Deed of Settlement and the Option Agreement expired unsatisfied on June 30, 2015, the 2011 Facility Letter reverted to being in full force and effect, Kwok's obligations under the 2011 Personal Guarantee became fully enforceable, and Kwok was (and remains) independently liable under the 2011 Personal Guarantee for the full amount of Shiny Times's debt owed to PAX LP under the 2011 Facility Letter.

### *Kwok Incorporates the Genever Defendants as Shell Companies that he Completely Dominates and Controls to Fraudulently Purchase the Residence in Order to Shield His Assets from PAX LP*

41. In late January or early February 2015, Kwok's Chinese assets—including the three Beijing Pangu apartments that were to be transferred to PAX LP in the proposed settlement—were seized by the Chinese government, and Kwok fled to the United States.

42. Nevertheless, on February 10, 2015, Kwok signed the fourth and final extension of the Original Deed of Settlement. (*See* Exhibit K.) Unlike PAX LP, Kwok knew at the time that his Chinese assets, including the three apartments, already had been seized, and thus was aware that he could *never* satisfy the conditions precedent for transferring ownership of the apartments to PAX LP. Kwok did not inform PAX LP that the apartments had been seized, and instead induced PAX LP to enter into the fourth and final extension while concealing this important fact.

43. The new deadline to satisfy the conditions precedent in the fourth and final extension was June 30, 2015. Thus, Kwok knew at the time that he executed the February 10, 2015 extension

10

that he would never satisfy the conditions precedent (indeed, he did not) and, therefore, that he had only four months to shield his assets before his more than $70 million debt to PAX LP became due and payable.

44. Kwok immediately went to work. On February 13, 2015—a mere 72 hours after signing the final settlement extension that Kwok knew he could never satisfy—Kwok formed Genever BVI in the British Virgin Islands and incorporated Genever NY in New York. Kwok did not capitalize either entity. Neither entity opened offices or hired any employees. Kwok is the sole owner of Genever BVI, which is the sole owner of Genever NY. Kwok is the sole director of Genever BVI based on official filings in the BVI.

45. Between February 13 and March 24, 2015—again, knowing that he would be unable to meet the terms of the settlement agreement and that his debt to PAX LP would come due in June 2015—Kwok entered into negotiations with the Sherry-Netherland to purchase the Residence.

46. In order to induce the Sherry-Netherland to accept his application, Kwok, through his lawyers, presented financial statements to the Board of the Sherry-Netherland. These financial statements represented that Kwok owned and controlled Beijing Zenith, a Chinese company whose balance sheet showed almost $4 billion in assets. This balance sheet was a critical piece of Kwok's application because it was only one of two assets Kwok ever disclosed.

47. Significantly, Kwok testified in this case that he not only knew at the time he had his lawyers submit his Sherry-Netherland application that these Beijing Zenith assets already had been frozen by the Chinese government, but also that, at the time of the application, he did not "have any ownership interest in Beijing Zenith" and that he had "no control at all over Beijing Zenith."

48. A few days later, Kwok, again through counsel, presented to the Sherry-Netherland the financial statements of a second foreign company: Bravo Luck Limited ("Bravo Luck"), which held

11

over $490 million in a UBS Hong Kong bank account. While this submission expressly represented that Kwok and his son owned and controlled Bravo Luck, Kwok again testified in this case that he had "no ownership interest in Bravo Luck."

49. As proposed to the Sherry-Netherland, Kwok intended to and did purchase the Residence through Genever NY, which was wholly-owned by Genever BVI. The Sherry-Netherland's Executive Vice President testified he had never seen a resident make a purchase through two separate shell companies in his four decades in the industry. Because the Sherry-Netherland recognized that this structure, coupled with Kwok's failure to disclose any U.S. assets on his application, would make it difficult to collect the monthly fees it would charge to Kwok, the Sherry-Netherland required Kwok to put down the largest security deposit in the Sherry-Netherland's history—five years' worth of his roughly $56,000 in monthly fees.

50. On the basis of what, according to Kwok's testimony, was false and misleading financial information presented to the Sherry-Netherland and Kwok's agreement to post the approximately $3 million security deposit—and at a time when Kwok's debt to PAX LP was more than $70 million—Kwok and Genever NY obtained the Sherry-Netherland Board's approval to purchase the Residence for approximately $67.5 million in cash on March 24, 2015.

51. The Contract of Sale and Proprietary Lease Agreement with the Sherry-Netherland are signed by Genever NY. The Purchase Agreement for the apartment lists "'Miles' Kwok Ho Wan (Genever [NY])" and "Kwok Ho Wan" as the applicant.

52. Even though Genever NY is listed on the Contract of Sale, Purchase Agreement, and the Proprietary Lease with the Sherry-Netherland, Genever NY was not capitalized and had no assets with which to purchase the Residence. Instead, Kwok purchased the Residence with funds wired from Bravo Luck.

12

53. Kwok all but admitted at his deposition that the funds used to purchase the Residence came from Shiny Times. When asked whether there was a connection between the Genever Defendants and Shiny Times, he testified that Genever BVI and Shiny Times had a "representative relationship . . . like when you purchase house, there will be some agent on behalf."

### PAX LP Seeks to Enforce Its Contractual Rights and Collect Amounts Owed, and Kwok and the Genever Defendants Attempt to Further Shield the Residence in Response

54. On October 16, 2015, after the Deeds of Settlement and Option Agreement were terminated and the 2011 Facility Letter reverted to being in full force and effect, PAX LP sent a written notice of demand (the "Notice of Demand") to Kwok's address in Hong Kong, as specified under the terms of the 2011 Personal Guarantee.

55. The Notice of Demand informed Kwok that "Shiny Times ha[d] failed to repay any part of the sum due" under the 2011 Facility Letter and demanded immediate payment of $71,818,633.44. The Notice of Demand also informed Kwok that legal proceedings might be commenced against him if he did not make immediate payment, and reserved PAX LP's contractual rights under both the 2011 Facility Letter and the 2011 Personal Guarantee.

56. Kwok never responded to the Notice of Demand.

57. At around the same time PAX LP sent the Notice of Demand, Kwok and the Genever Defendants listed the Residence for sale.

58. On February 19, 2016, PAX LP sent a letter to Shiny Times demanding payment of $82,219,404.08 due and owing under the 2011 Facility Letter (the "Shiny Times Demand Letter"), which represented the principal plus contractual interest of 15% per annum calculated up to the date of the Shiny Times Demand Letter.

59. Shiny Times never responded to the Shiny Times Demand Letter.

13

60. When Shiny Times did not respond, PAX LP submitted an application to court in the British Virgin Islands on February 29, 2016, seeking the appointment of joint liquidators to put Shiny Times, which is a BVI corporation, into liquidation. The application alleged that (i) Shiny Times had failed to pay the sum-then-owing of $82,410,197.87, (ii) Shiny Times was unable to pay its debts, and (iii) Shiny Times was insolvent and should be liquidated.

61. Shiny Times was in fact placed into liquidation as a result of the BVI proceeding, but it had no assets. Thus, PAX LP was unable to collect any of the monies owed to it under the 2011 Facility Letter through the BVI liquidation proceeding (or at all).

62. In June 2016, a few months after PAX LP had initiated the BVI liquidation proceeding, Kwok and the Genever Defendants dropped the asking price for the Residence. That same month, Kwok attempted to further shield the Residence by trying to restructure the ownership of Genever BVI and transfer it into a trust in his son's name.

### *PAX LP Files this Lawsuit, and Kwok and the Genever Defendants Make Clear that They Intend to Frustrate any Judgment Entered in Favor of PAX LP*

63. PAX LP filed this lawsuit on April 18, 2017.

64. About a week later, Kwok tweeted that "I neither have to nor should I repay this amount of boring money irrelevant to me."

65. Only after PAX LP filed suit and took discovery related to its motion for a pre-judgment order of attachment did it learn of all of Kwok's evasive maneuvers discussed above, including: (i) his formation of the Genever Defendants to shield the Residence from PAX LP; (ii) his failure to capitalize the Genever Defendants or observe proper corporate formalities; (iii) his submission of what he himself admitted under oath was false information to the Sherry-Netherland to induce it to approve the purchase of the Residence while Kwok knew that his similarly sized debt to PAX LP was immediately due and owing; (iv) his use of an unprecedented nested shell company

14

structure to protect the Residence from PAX LP; and (v) his apparent use of Shiny Times funds to purchase the Residence.

66. Kwok's history of lying in an attempt to evade his debt to PAX LP has continued throughout this litigation, including making repeated misrepresentations to the Court and under oath at his deposition. As detailed above and below, those misrepresentations include false statements about the Genever Defendants and their assets. As Kwok made these false statements regarding the Genever Defendants in an attempt to avoid having his Residence attached by the Court at PAX LP's request, the Genever Defendants are integrally involved in Kwok's abuse of the corporate form to perpetrate a fraud, wrong, or injustice against PAX LP.

67. In May 2015, just two months after purchasing the Residence—and while Kwok knew he would have to repay his debt to PAX LP—Kwok pledged Genever BVI's assets (*i.e.*, the Residence) to an entity named Roscalitar 2, in direct violation of the terms of his and Genever NY's agreements with the Sherry Netherland. Although that pledge was terminated in March 2017, Kwok argued in 2018—in papers submitted to this Court in opposition to PAX LP's attachment request—that the pledge was still effective and should provide a basis for denying the attachment.

68. Kwok again improperly pledged the Residence in February 2018, after PAX LP had filed this lawsuit, this time to an entity named Blue Capital. And while that pledge was terminated on June 12, 2018, Kwok's counsel inaccurately represented to the Court—at the June 27, 2018 oral argument on PAX LP's attachment motion—that the "lien is still in effect today."

69. Kwok also suborned a bogus affidavit in support of his opposition to PAX LP's attachment request. Specifically, in May 2018, Kwok had his employee Yan Ping Wang file an affidavit with this Court swearing to supposed facts that Kwok argued should defeat PAX LP's attachment request, including about the ownership of the Residence, the pledges of the Residence, and

15

the source of the funds Kwok used to purchase the Residence. At her deposition, however, Wang testified that *she knew nothing* about any of these issues. And when the Sherry-Netherland asked Kwok in a letter why he had represented in the Wang affidavit that he had pledged the Residence (which violated his agreements with the Sherry-Netherland), Kwok's counsel denied that the Wang affidavit stated that Kwok had pledged the Residence—even though that is precisely what the Wang affidavit said in no uncertain terms.

70. Kwok also lied repeatedly about the most basic information regarding the Residence and the Genever Defendants, including their ownership. Wang's affidavit swears that Kwok is the owner of the Residence, but, as noted above, Kwok testified that he did not own it. Kwok also testified that he at no time had any ownership or control over the Genever Defendants, even though the corporate documents for the Genever Defendants make clear that Kwok owns 100% of Genever BVI (which in turn owns 100% of Genever NY) and is its sole director. Moreover, in a complaint filed by Genever NY and Kwok in the Southern District of New York in August 2016, Genever NY and Kwok alleged that "Genever [NY] is owned and operated by Mr. Kwok."[1]

## COUNT I – BREACH OF CONTRACT
### Against Defendant Kwok

71. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 70 as though fully set forth herein.

72. The 2011 Personal Guarantee obligates Kwok to repay PAX LP for the loan facility (as amended) that PAX LP made available to Spirit Charter, along with unpaid interest. The current amount due and owing is more than $100 million.

73. Plaintiff performed under the 2011 Personal Guarantee (and other related agreements).

---

[1] Verified Complaint, *Genever Holdings, LLC and Miles Kwok v. The Sherry-Netherland, Inc., et al.*, Case No. 1:16-cv-06246 (S.D.N.Y. Aug. 5, 2016) (Dkt. No. 1).

74. Kwok has not repaid any of the money due and owing to PAX LP under the 2011 Personal Guarantee.

75. As a direct result of Kwok's breach of his payment obligations under the 2011 Personal Guarantee, Plaintiff continues to suffer the loss of more than $100 million.

## COUNT II – VEIL PIERCING
### Against the Genever Defendants

76. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 75 as though fully set forth herein.

77. Kwok created the Genever Defendants for the purpose of shielding the Residence from PAX LP.

78. In creating the Genever Defendants, Kwok failed to follow proper corporate formalities. Kwok failed to capitalize either of the Genever Defendants and used funds from a different entity to purchase the Residence, the only asset held by the Genever Defendants.

79. At no time has either of the Genever Defendants had any employees, offices, or business purpose other than owning the Residence and shielding it from Kwok's creditors, including PAX LP.

80. Kwok completely dominates the Genever Defendants, which he wholly owns and controls. The Genever Defendants are the alter egos of Kwok.

81. Kwok, through his domination and control of the Genever Defendants, abused the privilege of doing business in the corporate form to perpetrate a fraud, wrong, or injustice against PAX LP.

82. Accordingly, the corporate veil of the Genever Defendants should be pierced, and the Genever Defendants should be held jointly and severally liable for Kwok's breach of contract.

17

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

(a) in the amount greater than $100,000,000 owed as of this date under the 2011 Personal Guarantee ($46,426,489 plus accrued interest) against Kwok and the Genever Defendants as jointly and severally liable as alter egos of Kwok;

(b) the reasonable attorneys' fees, costs, and expenses PAX LP has incurred, and will continue to incur, in connection with its enforcement of the 2011 Personal Guarantee against Kwok, and the Genever Defendants as jointly and severally liable as alter egos of Kwok, under the 2011 Personal Guarantee's indemnification clause; and

(c) such other and further relief to which PAX LP shows itself justly entitled.

DATED:   New York, New York
         April 18, 2019

                                    Respectfully submitted,

                                    By: _____

                                    O'MELVENY & MYERS LLP
                                    Stuart Sarnoff (ssarnoff@omm.com)
                                    Edward Moss (emoss@omm.com)
                                    7 Times Square
                                    New York, NY 10036
                                    (212) 326-2000

                                    -and-

                                    THE SEIDEN GROUP

                                    Robert W. Seiden (rseiden@seidenlegal.com)
                                    1120 Avenue of the Americas
                                    New York, NY 10036
                                    (212) 626-6708

                                    *Attorneys for Plaintiff*

18