## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: | ) |
| | )    CASE No.    22-50073 (JAM) |
| HO WAN KWOK, | ) |
| | )    CHAPTER    11 |
| DEBTOR. | ) |
| | )    RE: ECF No.    183 |

### APPEARANCES[1]

Jeffrey L. Jonas
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
*Attorney for the Debtor*

Holley L. Claiborn
Office of the United States Trustee
150 Court Street, Room 302
New Haven, CT 06510
*Attorney for the United States Trustee*

Peter Friedman
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006
*Attorney for Pacific Alliance Asia
Opportunity Fund, L.P.*

Irve J. Goldman
Pullman & Comley
850 Main Street, 8th Floor
Bridgeport, CT 06604
*Attorney for the Official Committee of
Unsecured Creditors*

Carollynn Callari
Callari Partners, LLC
One Rockefeller Plaza, 10th Floor
New York, New York 10020
*Attorney for Creditors Rui Ma, Weican Meng,
and Zheng Wu*

### MEMORANDUM OF DECISION AND ORDER DENYING
### MOTION TO DISMISS WITHOUT PREJUDICE AND GRANTING
### JOINDER TO MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE

### I.  Introduction

On February 15, 2022, Ho Wan Kwok (the "Debtor"), filed a voluntary Chapter 11

petition commencing this case. Although the Debtor's case has been pending for only four

---

[1] William R. Baldiga and Bennett S. Silverberg for the Debtor, Laura Aronsson and Patrick M. Birney for PAX, and Kristin Mayhew for Creditors Ma, Meng, and Wu also appeared at the hearing on the Motion to Dismiss.

months, numerous motions and applications have been filed by the Debtor, the Office of the

United States Trustee, creditors, and entities or individuals related to the Debtor. Several

extensive hearings have been held, including the most recent evidentiary hearing on a motion to

dismiss the Debtor's case or appoint a Chapter 11 trustee.

The issues raised by the parties in the voluminous pleadings, and the information and

evidence presented during hearings held in this case, confirm that the Debtor's case is unusual,

complicated, and often contentious. Based on the specific facts and circumstances of this case,

including the review of the record, the evidence presented by the parties, and the complex factual

and legal issues that have been brought before the Court, pursuant to 11 U.S.C. § 1112(b), the

Court finds that it is in the best interests of creditors and the estate not to dismiss or convert the

Debtor's case at this time and to instead appoint a Chapter 11 trustee.[2]

## II.    Jurisdiction

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This

is a core proceeding pursuant to 28 U.S.C. § 157(b). This Court has the authority to hear this

matter pursuant to the General Order of Reference entered on September 21, 1984 by the United

States District Court for the District of Connecticut.

## III.    History of Proceedings

It is essential to examine the events that have occurred in the Debtor's case to determine

whether dismissal, conversion, or the appointment of a Chapter 11 trustee is in the best interests

---

[2] Section 1112(b)(3) requires the Court to rule on a Motion to Dismiss within 15 days after commencement of the hearing. During a June 9, 2022, status conference to address corrections to the official transcript of the hearing on the Motion to Dismiss, the Court informed the parties that a ruling on the Motion to Dismiss would likely be issued more than 15 days after the hearing for several reasons, including the complexity of the Debtor's case and numerous hearings scheduled to be held in other cases during the 15-day period.

of creditors and the estate.  At the core of the Debtor's case is a luxury yacht known as the "Lady May," allegedly purchased for €41,000,000.00, and other assets that may belong to the Debtor including an apartment in the Sherry-Netherlands Hotel in Manhattan allegedly purchased for approximately $70,000,000.00 in 2015.  When viewed as a whole, the circumstances surrounding the Debtor's case demonstrate why the appointment of a Chapter 11 trustee, as opposed to dismissal or conversion of the Debtor's case, is in the best interests of creditors and the estate.

### The Debtor's Motion to Extend Time to File Schedules and Statements

As noted above, the Debtor commenced this case on February 15, 2022, by filing a voluntary Chapter 11 petition.  The Debtor filed the list of the twenty largest unsecured creditors with the petition and identified Pacific Alliance Asia Opportunity Fund L.P. ("PAX") as the Debtor's largest creditor with a debt of approximately $254,000,000.00.  ECF No. 4 at p. 1.

The Debtor did not file the Schedules or the Statement of Financial Affairs with his petition, but did timely file a Motion to Extend Deadline to File Schedules or Provide Required Information to May 2, 2022 (the "Motion to Extend Time to File Schedules and Statements," ECF No. 27).  In support of the requested extension of time, the Debtor states that his 'background is admittedly extraordinary" and additional time would allow him to retain professionals necessary to assist with the preparation and filing of the Schedules and Statements and to secure the financing to administer his Chapter 11 case.  ECF No. 27 at p. 2.

On February 28, 2022, the Office of the United States Trustee (the "UST") and PAX filed strenuous objections to the Motion to Extend Time to File Schedules and Statements.  In the objections, both the UST and PAX assert the Debtor's case was filed in direct response to a $134,000,000.00 contempt order entered against the Debtor arising out of his involvement in

secreting the Lady May out of New York to protect it from being seized.  PAX's objection also asserts that the Debtor has flouted the New York state court orders and abused the judicial process in an attempt to evade enforcement of the $116,000,000.00 judgment PAX won against him.  PAX notes that the New York state court found "Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members," and as a result of his elaborate schemes to avoid his creditors, the New York Supreme Court docket contains over 1,180 entries, "almost all of which involve . . . [Kwok's] efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members."  PAX Objection, ECF No. 50 at p. 2.  Furthermore, PAX asserts that there are at least three materially false and/or misleading statements in the Debtor's petition, including his sworn (mis)representation that he has less than $100,000.00 in assets which is completely incompatible with the New York state court's finding just days before that Kwok "holds a beneficial interest in and controls the Lady May."  *Id*.

## **PAX's Automatic Stay Motion**

On March 1, 2022, just two weeks after the Debtor's case was filed, PAX filed a Motion for Entry of Order Confirming Inapplicability of the Automatic Stay or, in the alternative, Relief from the Automatic Stay (the "Automatic Stay Motion," ECF No. 57).  The Automatic Stay Motion sets forth extensive, detailed, and serious allegations against the Debtor.  PAX argues that the automatic stay did not apply in this case due to the imposition of sanctions entered against the Debtor in the pre-petition New York state court action.  PAX states that the court's sanctions held the Debtor in civil contempt for failure to return the Lady May to New York in violation of its orders.  The Debtor filed an Objection to the Automatic Stay Motion, in which the Debtor does not dispute the imposition of the sanctions, but instead argues that he does not

4

own or control the Lady May.  Debtor's Objection to Automatic Stay Motion, ECF No. 83 at p. 7.

## The Debtor's Schedules and Statement of Financial Affairs

On March 9, 2022, the Debtor filed his Statement of Financial Affairs, ECF No. 77, and Schedules, ECF No. 78.  The Debtor asserts in the Schedules and Statement of Financial Affairs that he owns assets valued at $3,850.00 and lists liabilities in the amount of $373,803,498.09.  In global notes that limit and disclaim the Debtor's declarations made under penalty of perjury in the Statement of Financial Affairs, the Debtor further asserts he: (i) has the use and occupancy of, but not title to, real property in Greenwich, Connecticut owned by a limited liability company wholly owned by his wife; (ii) wholly owns the membership interests in another limited liability company that holds all of the cooperative shares in an apartment in the Sherry-Netherlands Hotel in Manhattan in trust for a separate limited liability company owned by his son, Qiang Guo; and (iii) had access to the use of the Lady May owned by HK International Funds Investments (USA) Limited ("HK"), a limited liability company owned by his daughter, Mei Guo.  ECF No. 77 at p. 4-5.

## The UST Motion for Examiner or Chapter 11 Trustee

On March 18, 2022, less than two weeks after the Debtor filed his Schedules and Statement of Financial Affairs, the UST filed a Motion for Order Directing the Appointment of an Examiner, or in the alternative, Motion for Order Directing the Appointment of a Chapter 11 Trustee (the "UST Motion for Examiner or Chapter 11 Trustee," ECF No. 102).  The UST argues that it is in the best interests of creditors and the estate to appoint an examiner or a trustee because the Debtor, a public figure and a self-proclaimed billionaire living in exile from his native China, claims that he has no regular income and virtually no assets yet seemingly has

access to significant funds, including the ability to procure a $1,000,000.00 retainer for his

counsel in this case.  The UST notes its concerns about the "odd combination of what appears to

be artificial self-created 'poverty' by the Debtor to insulate himself from creditors" and the

Debtor's filing of this case to "obtain protection from creditors owed millions."  ECF No. 102 at

p. 2.  Furthermore, the UST states that its concerns are validated by: (i) "the Debtor's

marginalization of his schedules and statement of financial affairs to the point of being

meaningless;" (ii) the Debtor "brazenly disclaims any responsibility or liability for any of the

information in the bankruptcy documents pursuant to self-serving, anti-fiduciary language in the

'Global Notes;'" and (iii) "the Debtor's inability and/or unwillingness to recognize and accept

his obligations to provide full, complete and accurate information, to fulfill fiduciary obligations

to his estate and his creditors, and to meet his obligations as a debtor in possession."  *Id*.

### The Notice of Appointment of the Committee of Unsecured Creditors

On March 21, 2022, three days after the UST filed the Motion for Examiner or Chapter

11 Trustee, the UST filed a Notice of Appointment of Creditor Committee in this case (ECF No.

108).  The members of the Official Committee of Unsecured Creditors (the "Committee"), who

are among the largest unsecured creditors of the Debtor and have indicated a willingness to serve

on the Committee, are the following creditors: (i) Rui Ma, (ii) Ning Ye, and (iii) Samuel Dan

Nunberg.

### The DIP Financing Motion

On March 22, 2022, one day after the appointment of the Committee, the Debtor filed a

Motion for Entry of Interim and Final Debtor in Possession Financing Orders (the "DIP Motion,"

ECF No. 117).  In the DIP Motion, the Debtor seeks approval of a loan in the amount of

$8,000,000.00 to be made to the estate on an unsecured basis, subordinated to the claims of the

Debtor's pre-petition creditors, without any administrative or priority repayment rights.  The loan would be available to pay the estate's professionals and would be repaid if, and only if, all allowed claims of the Debtor's creditors are paid in full or otherwise satisfied pursuant to the terms of a plan. The proposed lender, Golden Spring (New York) Ltd. (the "DIP Lender"), is an entity owned and controlled by the Debtor's son, Qiang Guo.

The DIP Motion asserts that the Debtor filed his Chapter 11 case to: (a) create a single forum to orderly address the various competing claims asserted against him; (b) afford stakeholders an efficient opportunity to investigate his assets, liabilities, and financial affairs; (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims; and (d) reach consensus with his creditors on a fair and equitable resolution of claims and distribution of assets pursuant to a Chapter 11 plan.  DIP Motion, ECF No. 117 at p. 5.

### PAX's Motion to Dismiss and Joinder

On April 6, 2022, approximately three weeks after the UST's Motion for Appointment of Examiner or Chapter 11 Trustee and DIP Motion were filed, PAX filed a Motion to Dismiss or, in the alternative, Partial Joinder to the USTs Motion for the Appointment of a Chapter 11 Trustee (the "Motion to Dismiss or Joinder," ECF No. 183).   In support of the Motion to Dismiss or Joinder, PAX argues that the filing of the Debtor's case "is the latest, most strident gambit" of the Debtor to "delay, deceive, and defraud his creditors, and to continue to evade legitimate court orders" and that the Debtor's "*modus operandi* is to park, shield and secrete his assets through family members and shell companies to protect his fortune and to avoid repaying his debt to PAX."  ECF No. 183 at p. 7.  The Debtor, PAX argues, has "secreted his assets in a maze of corporate entities and with family members."  *Id*. at p. 7-8.

Along with the Motion to Dismiss or Joinder, PAX filed a Motion to schedule status on the Motion to Dismiss or Joinder. The Court granted PAX's motion in part and scheduled a Status Conference on the Motion to Dismiss or Joinder to be held on April 13, 2022, the same date of a hearing on several other matters in the case, including the continued hearing on the Automatic Stay Motion and the initial hearing on the Motion for Appointment of Examiner or Chapter 11 Trustee and the DIP Motion.

### The Debtor's Chapter 11 Plan

On April 10, 2022, the Debtor filed a proposed Chapter 11 Plan of Reorganization (the "Plan," ECF No. 197). Among other things, the Plan provides for the creation of a "Creditor Trust" for the benefit of all creditors with allowed claims. ECF No. 197 at p. 20-24. The Plan further provides that title to the Lady May will be transferred to the Creditor Trust for the benefit of all creditors with allowed claims. ECF No. 197 at p. 21.

### HK's Statement regarding the Automatic Stay Motion

On April 11, 2022, the day after the Debtor filed the Plan, HK (which as noted above is a limited liability company owned by the Debtor's daughter) filed a Statement regarding the Automatic Stay Motion (the "Statement," ECF No. 203). In the Statement, HK asserts that it is the registered agent of the Lady May and that it consents to the entry of a proposed order compelling it to transport and deliver the Lady May to the navigable waters of Connecticut under certain conditions. HK further asserts that it provided a copy of the Proposed Order to counsel for PAX, the Debtor, the UST, and the Committee for their respective comments and that entry of the proposed order compelling HK to return the Lady May to Connecticut would "moot" the Automatic Stay Motion. Statement at p. 2.

**The April 13, 2022 hearing**

Several matters were scheduled to be heard on April 13, 2022, including the continued hearing on the Automatic Stay Motion and the initial hearing on the DIP Motion and the UST Motion for Examiner or Chapter 11 Trustee.   At the conclusion of the lengthy hearing, the Court again continued the hearing on PAX's Automatic Stay Motion, continued the hearing on the UST Motion for Examiner or Chapter 11 Trustee, and scheduled an evidentiary hearing on the DIP Motion and the Debtor's Application to Employ Financial Advisor to be held on April 27, 2022.

**April 27, 2022 evidentiary hearing, the resolution of the Automatic Stay Motion, and the scheduling of an evidentiary hearing on the Motion to Dismiss or Joinder**

The Debtor, PAX, the UST, the Committee, the creditors Rui Ma and Zheng Wu, Golden Spring, and HK appeared at the April 27th evidentiary hearing.  At the start of the hearing, counsel for the Debtor reported to the Court that the parties had resolved the Automatic Stay Motion.  The predominant terms of the resolution were that $37,000,000.00 would be posted by HK and held in escrow pending the return of the Lady May to the navigable waters of Connecticut.  The parties agreed that a resolution of the Automatic Stay Motion had been reached subject to the review of and revisions to a stipulated order that would be submitted to the Court.  Counsel for HK was then excused from the hearing to continue revisions to the draft of a stipulated order.  The Court noted on the record, and ultimately on the docket, that the Automatic Stay Motion was resolved by agreement of the parties subject to an agreed upon order to be submitted to the Court on or before May 2, 2022.

Testimony, evidence, and arguments were also presented regarding the Debtor's Motion to Retain a Financial Advisor and the DIP Motion.  At the conclusion of the evidentiary hearing, the Court took the Debtor's Motion to Retain a Financial Advisor under advisement and

9

continued the hearing on the DIP Motion to May 4, 2022. In addition, the provisions of a scheduling order regarding an evidentiary hearing on the Motion to Dismiss or Joinder were agreed to by the parties on the record. On April 28, 2022, the Court entered a Scheduling Order Regarding the Motion to Dismiss scheduling the evidentiary hearing for May 24, 2022.

### The Stipulated Order regarding the Lady May

On April 29, 2022, the Court entered the Stipulated Order Compelling HK International Funds Investments (USA) Limited, LLC to Transport and Deliver that Certain Yacht, the "Lady May," which was executed by and among HK, PAX, the Debtor, the Committee, and the creditors Rui Ma and Zheng Wu (the "Stipulated Order," ECF No. 299). Among other things, the Stipulated Order provides: (i) HK has deposited $37,000,000.00 into escrow; (ii) HK will deliver the Lady May to the navigable waters of Connecticut on or before July 15, 2022; and (iii) the captain of the Lady May and the purported yacht management company will submit a declaration that each shall be subject to the jurisdiction of this Court and are bound by the provisions of the Stipulated Order, including that they are restrained from removing the Lady May from the navigable waters of Connecticut until further order of this Court.

### The continued DIP Motion hearing,
### the Consent to Dismissal, and the Withdrawal of the DIP Motion

On May 3, 2022, the Debtor filed an amended proposed order regarding the DIP Motion. The amended proposed order contained a chart indicating when and in what amount the DIP funds would be spent. The amended proposed order provided that professional fees would be paid on a weekly basis, including the fees of the Debtor's counsel and counsel for the Committee.

On May 4, 2022, the continued hearing on the DIP Motion was held. The Debtor and the Committee argued that the DIP Motion should be granted and the amended proposed order should enter. PAX and the UST reiterated their respective objections to the DIP Motion. The Court then asked several questions about the asserted need to pay several million dollars of professional fees through the end of May, 2022. At the conclusion of the hearing, the Court stated that a ruling on the DIP Motion would issue which would determine the appropriate amounts to be spent through the end of May, 2022.

On May 11, 2022, one week after the conclusion of the DIP Motion hearing, the Debtor filed a Notice of Consent to Dismissal of Case (the "Consent to Dismissal"). In the Consent to Dismissal, the Debtor asserts that he consents to dismissal of his case due to the tremendous costs imposed on him from unrelenting litigation by PAX and others, and his inability to access funds to meet those costs. Also on May 11, 2022, while the DIP Motion was under advisement and the Court was preparing to rule on the motion, the Debtor filed a Withdrawal of the DIP Motion.

### The Evidentiary Hearing on the Motion to Dismiss or Joinder

On May 24, 2022, the evidentiary hearing on PAX's Motion to Dismiss or Joinder was held. At the start of the hearing, all of the parties acknowledged that the Consent to Dismissal changed the posture of the Debtor's case. In addition, all of the parties agreed that cause exists under section 1112(b) to dismiss or convert the Debtor's case or to appoint a Chapter 11 trustee. PAX and the Debtor argued that the Debtor's case should be dismissed. The Committee and certain creditors argued that conversion is most appropriate, but absent conversion, a Chapter 11 trustee should be appointed. The UST did not argue in favor of any one of the three alternatives, but urged the Court to decide the matter as quickly as possible.

IV.    **Analysis**

Section 1112(b) of the Bankruptcy Code provides:

[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1); *see also In re Sillerman*, 605 B.R. 631, 657 (Bankr. S.D.N.Y. 2019); *In re TP, Inc.*, 455 B.R. 455, 457 (Bankr. E.D.N.C. 2011); *In re Products Intern. Co.*, 395 B.R. 101, 107 (Bankr. D. Ariz. 2008).

During the evidentiary hearing on the Motion to Dismiss or Joinder, all of the parties stipulated that cause exists to dismiss the case, convert the case to Chapter 7, or to appoint a Chapter 11 trustee. The Debtor asserts that cause exists to dismiss his case under section 1112(b)(4)(A) because there was a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. PAX argues that cause exists to dismiss the case under section 1112(b) for many reasons, including the Debtor's alleged bad faith in filing the case and the Debtor's gross mismanagement of the estate. Because the parties stipulated that cause exists under section 1112(b), the Court does not need to determine the specific "cause." The only issue the Court needs to decide is whether dismissal, conversion, or appointment of a Chapter 11 trustee is in the best interests of creditors and the estate.

Through a balancing test, a court must determine which of three alternatives—dismissal, conversion, or the appointment of a Chapter 11 Trustee—is in the best interests of creditors and the estate based on the record of the case. *In re Products Intern. Co.*, 395 B.R. at 108. In determining which option is in the best interests of creditors and the estate, a court should evaluate, among other things, the prospects for collection and payment of the claims of creditors.

*In re Corona Care Convalescent Corp.*, 527 B.R. 379, 384 (Bankr. C.D. Cal. 2015). "When considering appointing a trustee or converting the case to one under chapter 7, 'the distinguishing factor . . . is the expanded possibility in Chapter 11 for a trustee using independent judgment and good management to direct the affairs of the estate[] including on-going operations (if any) in order to optimize recovery for the creditors and the estate.'" *In re NOA, LLC*, 578 B.R. 534, 541 (Bankr. E.D. Va. 2017).

The appointment of a Chapter 11 trustee in this case is warranted because the record suggests a prospect for collection and payment of creditors' claims. During this case, the Debtor has demonstrated he can obtain millions of dollars in funds, including the $8,000,000.00 that was the subject of the DIP Motion. The Debtor also proposed a Chapter 11 plan in the early stages of this case which provided, among other things, the transfer of title to the Lady May to a creditor trust for the benefit of all creditors. In addition, during the four months that the case has been pending, divergent parties heavily negotiated a stipulation resolving the Automatic Stay Motion. The Stipulated Order resulted in $37,000,000.00 being placed in escrow in exchange for the delivery of the Lady May to the navigable waters of Connecticut, something the Debtor opposed to the point of having contempt sanctions entered against him in the New York state court action. Performance of the most significant obligation in the Stipulated Order—the delivery of the Lady May to the navigable waters of Connecticut—is not yet due. However, there has been timely compliance with other provisions of the Stipulated Order. HK has filed progress reports indicating that repairs to the Lady May have been made and that the Lady May may arrive in the navigable waters of Connecticut ahead of the July 15, 2022 Stipulated Order delivery date. Dismissal of the Debtor's case, or conversion of the Debtor's case to Chapter 7, would erase the substantial progress made with respect to the Lady May. A Chapter 11 trustee can serve as an

independent party to ensure continued compliance with the Stipulated Order and can assist with the development of a Chapter 11 plan with a reasonable likelihood of confirmation. The appointment of a Chapter 11 trustee will also uphold the policy of enforcement of settlements, avoid a race to the courthouse, and provide the opportunity for a pro rata distribution to creditors consistent with the priority scheme in the Bankruptcy Code. *See Corona Care*, 527 B.R. at 387 (appointing a trustee to uphold the policy of enforcement of settlements and avoid a race to the courthouse).

In several pleadings, the Debtor has stated that he filed this case to create a single forum to orderly address competing claims asserted against him and to afford stakeholders an efficient opportunity to investigate his assets, liabilities, and financial affairs. Dismissal of the Debtor's case would defeat the Debtor's stated reasons for filing this case. Similarly, conversion of this case to Chapter 7 will not allow for the orderly liquidation of competing claims asserted against the Debtor. The appointment of a Chapter 11 trustee is the most efficient and effective method to address competing creditor claims asserted against the Debtor, including contingent and unliquidated personal injury tort claims. The appointment of a Chapter 11 trustee will also allow for the effective investigation of the Debtor's assets, liabilities, and financial affairs. Accordingly, when balancing whether to dismiss, convert, or appoint a Chapter 11 trustee, the record supports the conclusion that the appointment of a Chapter 11 trustee in this case is in the best interests of creditors and the estate.

When faced with a similar choice under section 1112(b), bankruptcy courts have appointed a Chapter 11 trustee as opposed to dismissing or converting the case. For example, the *Sillerman* case concerned an individual debtor who was a serial entrepreneur. The debtor listed his interests in forty-seven limited liability companies in his schedules, had sold multiple

businesses for billions of dollars, and proposed a Chapter 11 plan that would be funded once the debtor was able to secure financing to invest in certain affiliated entities. *Sillerman*, 605 B.R. at 636. The *Sillerman* creditors first filed a motion for appointment of an examiner because they asserted that the "lack of independent managerial oversight" allowed the debtor to avoid disclosing the true nature and value of his assets and that the debtor's "use of multilayered transactions involving complicated corporate structures" made his assets difficult to find. *Id.* at 636-37. The Official Committee of Unsecured Creditors appointed later in the case instead moved for the appointment of a Chapter 11 trustee or, in the alternative, an order converting the case to a Chapter 7 case. Given the totality of the circumstances in the debtor's case, the *Sillerman* court held that the appointment of a Chapter 11 trustee, instead of conversion of the case, was in the best interests of creditors and the estate. *Id.* at 657.

Like the creditors in *Sillerman,* PAX, the Committee, and other creditors have argued that the Debtor and his family have interests in numerous limited liability companies that may obfuscate the true nature and value of the Debtor's assets. They also argue that the Debtor has engaged in multilayer transactions involving complicated corporate structures like Golden Spring, Genever Holdings, Lamp Funding, and HK that make it difficult to identify and locate the Debtor's assets. PAX cites to the findings of the New York Supreme Court that the Debtor had "secreted his assets in a maze of corporate entities and with family members" and that the thousands of docket entries "involve defendant Kwok's efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members." ECF No. 183 at p. 7-8. When balanced against dismissal or conversion, the complexity of the Debtor's financial affairs and lack of independent managerial oversight in this

15

case warrants the appointment of a Chapter 11 trustee who can investigate, identify, and locate the Debtor's assets for the benefit of creditors and the estate.

Bankruptcy courts have also appointed a Chapter 11 trustee rather than dismiss or convert a case in situations where a debtor has violated a stipulated order. In *NOA*, the debtor willfully violated a stipulated order between the debtor and creditors specifically restraining the debtor from shipping bulk clothing out of the United States until full payment for the goods was received. 578 B.R. at 537-40. The court appointed a Chapter 11 trustee because of the "expanded possibility in Chapter 11 for a trustee using independent judgment and good management to direct the affairs of the estate[] including on-going operations (if any) in order to optimize recovery for the creditors and the estate." *Id.* at 541. As was true in *NOA*, the parties in this case negotiated the Stipulated Order. As noted above, performance of the delivery of the Lady May to the navigable waters of Connecticut is not yet due. The appointment of a Chapter 11 trustee will enable that trustee to use independent judgment to ensure compliance with the Stipulated Order and to optimize recovery of assets for the creditors and the estate.

*Corona Care* is another case in which a bankruptcy court exercised its discretion to appoint a Chapter 11 trustee instead of dismissing or converting a case where a debtor defaulted under the terms of a stipulation. *Corona Care*, 527 B.R. at 387. In *Corona Care*, the debtors entered into a stipulation with the Official Committee of Unsecured Creditors and other parties-in-interest dismissing some of the jointly administered cases of the more profitable nursing facilities to allow the remaining debtors more time to confirm a plan of reorganization. 527 B.R. at 380. The debtors then defaulted under the terms of the stipulated agreement. *Id.* at 385. In evaluating the prospects for collection and payment of the claims to creditors, the *Corona Care* court found that a sale of the debtors' businesses offered some prospect of payment of creditors

16

because the assets would be monetized for the payment of their claims, which reflected the bargain reached in the stipulation. *Id.* at 384-85. Likewise, delivery of the Lady May to the navigable waters of Connecticut will result in the prospect of collection and payment of creditor claims which may include the pledge of the Lady May to a Chapter 11 plan and/or a finding that the Lady May is property of the Debtor's estate.

*TP, Inc.* is another bankruptcy case in which a Chapter 11 trustee was appointed as opposed to dismissing or converting the debtor's case. 455 B.R. at 459. In *TP, Inc.*, Bank of America had commenced a foreclosure proceeding in state court against TP, Inc., its principal, and its principal's wife, and had obtained a judgment against the principal and principal's wife, who were guarantors of the promissory note. *Id.* at 456. The debtor's principal leased Bank of America's collateral during the pendency of the case without court approval and collected rents attributable to that collateral. *Id*. The *TP, Inc.* court held that the debtor's misuse of numerous parcels of real property that served as Bank of America's collateral, and the misuse of the cash collateral rents derived from that collateral, warranted the appointment of a Chapter 11 trustee. *Id.* at 459. The court pointed to its concerns about future instances of fraud, incompetence, dishonesty, or gross mismanagement in deciding that the appointment of a Chapter 11 trustee was in the best interests of creditors and the estate, as opposed to dismissal or conversion, because a trustee could use independent judgment and good management to direct the affairs of the estate. *Id*. In this case, a state court similarly entered a judgment against the Debtor based on a default on a promissory note and a contempt order for contravention of a state court order restraining the Debtor, among others, from removing the Lady May from the navigable waters of New York. Like the decision in *TP, Inc.*, the appointment of a Chapter 11 trustee in this case will address concerns about any future misconduct by the Debtor while bringing independent

judgment and good management to direct the affairs of the estate and optimize recovery for all creditors.

## V.    <u>CONCLUSION</u>

Because the parties stipulate that cause exists under section 1112(b) to dismiss this case, convert this case to a case under Chapter 7, or appoint a Chapter 11 trustee, the Court has evaluated, among other things, the prospects for collection and payment of the claims of all creditors.  The Court finds that the appointment of a Chapter 11 trustee is in the best interests of creditors and the estate because a Chapter 11 trustee can: (i) use independent judgment and good management to direct the affairs of the estate to attempt to satisfy the claims of creditors; (ii) determine whether a reasonable likelihood of rehabilitation exists for this Debtor, including whether a Plan of Reorganization can be proposed and confirmed; and (iii) optimize recovery for the creditors and the estate by, among other things, allowing the Chapter 11 trustee to investigate the Debtor's assets, liabilities, and financial affairs and to ensure compliance with the provisions of the Stipulated Order.

Accordingly, it is hereby:

**ORDERED:**  Pursuant to 11 U.S.C. §§ 1112(b), the Motion to Dismiss or Joinder is DENIED WITHOUT PREJUDICE to the extent it seeks to dismiss the Debtor's case at this time and is GRANTED to the extent that a Chapter 11 trustee shall be appointed in the Debtor's case; and it is further

**ORDERED:**  The Chapter 11 trustee shall perform all of the duties set forth in 11 U.S.C. § 1106; and it is further

**ORDERED:**  Within fourteen (14) days of the appointment of a Chapter 11 trustee, a Status Conference will be scheduled to discuss, among other things, the progress of the Chapter

11 trustee regarding the statements to be filed in accordance with 11 U.S.C. §§ 1106(a)(4) and (a)(5), compliance with the Stipulated Order, the Chapter 11 trustee's proposed management of the estate, and the continued administration of the Debtor's case.

Dated at Bridgeport, Connecticut this 15th day of June, 2022.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut