UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK, | * | Bridgeport, Connecticut |
| | * | June 9, 2022 |
| Debtor. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF SCHEDULING ORDER TO DISCUSS
OFFICIAL TRANSCRIPT OF EVIDENTIARY HEARING
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

| | |
|---|---|
| For the Debtor: | JEFFREY L. JONAS, ESQ. |
| | Brown Rudnick, LLP |
| | Seven Times Square |
| | New York, NY  10036 |
| | |
| For the Creditor, Pacific | PETER FRIEDMAN, ESQ. |
| Alliance Asia Opportunity | STUART M. SARNOFF, ESQ. |
| Fund L.P.: | LAURA ARONSSON, ESQ. |
| | O'Melveny & Myers LLP |
| | Times Square Tower |
| | 7 Times Square |
| | New York, NY  10036 |
| | |
| | ANNECCA SMITH, ESQ. |
| | Robinson & Cole |
| | 28 Trumbull Street |
| | Hartford, CT  06103 |


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES Cont'd:

For the Creditors Committee:     IRVE GOLDMAN, ESQ.
                                 Pullman & Comley
                                 850 Main Street
                                 Bridgeport, CT  06601


For the Creditor, Rui Ma:        CAROLLYNN CALLARI, ESQ.
                                 Callari Partners LLC
                                 1 Rockafeller Plz Floor 10
                                 New York, NY  10020-2073

                                 KRISTEN MAYHEW, ESQ.
                                 McElroy Deutsch
                                 225 Liberty Street
                                 36th Floor
                                 New York, NY  10281

For the U.S. Trustee:            HOLLEY L. CLAIBORN, ESQ.
                                 Office of the United States
                                   Trustee
                                 The Giaimo Federal Building
                                 150 Court Street, Room 302
                                 New Haven, CT  06510

For the Creditor,                JAY MARSHALL WOLMAN, ESQ.
 Logan Cheng:                    Randazza Legal Group, PLLC
                                 100 Pearl Street, 14th Floor
                                 Hartford, CT  06103

For the Creditor, Hong Kong      AARON ROMNEY, ESQ.
 International:                   Zeisler & Zeisler, P.C.
                                 10 Middle Street, 15th Floor
                                 Bridgeport, CT  06604

1     (Proceedings commenced at 2:04 p.m.)

2         THE CLERK:  Case Number 2022-50073, Ho Wan Kwok.

3         THE COURT:  Okay.  Good afternoon.  If we could

4     have appearances for the record, please, starting with the

5     debtor's counsel?

6         MR. JONAS:  This is Jeff Jonas, from Brown

7     Rudnick, for the debtor.

8         THE COURT:  Good afternoon.  And counsel for PAX?

9         MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

10    Peter Friedman from O'Melveny & Myers.  I believe Ms. Smith

11    is here from the Robinson & Cole firm and Ms. Aronsson and

12    Mr. Sarnoff are also here from O'Melveny & Myers.

13        THE COURT:  Good afternoon.  Thank you.

14        MR. FRIEDMAN:  Thank you, Your Honor.

15        THE COURT:  Counsel for the creditors committee?

16        MR. GOLDMAN:  Yes.  Good afternoon, Your Honor.

17    Irve Goldman, Pullman and Comley, representing the creditors

18    committee.

19        THE COURT:  Good afternoon.  The Office of the

20    United States Trustee, please?

21        MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

22    Claiborn for the U.S. Trustee.

23        THE COURT:  Good afternoon.  And counsel for the

24    creditor, Rui Ma, and I may not say everyone's name, but I

25    can see both of the attorneys present.  If you would just

1    note your appearance for the record?

2            MS. CALLARI:  Good afternoon, Your Honor.  Go

3    ahead, Kris.

4            MS. MAYHEW:  Go ahead.

5            MS. CALLARI:  Good afternoon, Your Honor.

6    Carollynn Callari, with Callari Partners, here with my

7    colleague, Kristen Mayhew.  Thank you.

8            THE COURT:  Good afternoon.  And the creditors,

9    Attorney Wolman, I apologize, I don't have your client's

10   name in front of me at the moment, but if you would note

11   your appearance for the record and your client's name,

12   please?

13           MR. WOLMAN:  Yes.  Good afternoon, Your Honor.

14   This is Jay Wolman, of Randazza Legal Group, for creditor

15   Logan Cheng.

16           THE COURT:  Thank you.  All right.  Is there any

17   appearance that I have not -- that has not been noted for

18   the record?

19           MR. ROMNEY:  Yes, Your Honor.  Aaron Romney,

20   Zeisler and Zeisler, on behalf of Hong Kong International.

21           THE COURT:  Thank you.  I didn't see you there for

22   a second, Mr. Romney, but I see you now, so thank you very

23   much.

24           MR. ROMNEY:  You're welcome, Your Honor.

25           THE COURT:  Okay.  Again, I appreciate everyone

1    making themselves available for this status conference this

2    afternoon.

3              As you all know, the court's in the process of

4    working on the decision on the motion to dismiss, or in the

5    alternative, the joinder on the Chapter 11 Trustee motion

6    that we had an evidentiary hearing on on May 25th.

7              Two of the parties in the case, the debtor and

8    PAX, ordered official transcripts of that hearing, That

9    evidentiary hearing on May 25th and the court is able to

10   look at that transcript, not everyone else, to assist in the

11   production of any decision that the court is making.

12             And obviously the decision that is in process is

13   on the motion to dismiss, or in the alternative for the

14   appointment of a Chapter 11 Trustee.

15             So we had the hearing and I started to review the

16   transcript and I noticed that there were several things in

17   the -- I don't want to say mistakes, because it's the way

18   that the court reporter heard the audio, then it's not

19   necessarily a mistake, but there are things that, in my

20   opinion, need to be corrected in this transcript.  I mean,

21   this is the official transcript.

22             We have talked about it and I have to ensure --

23   and we've talked about it since the beginning of this case

24   actually, that since the bankruptcy court's record is audio

25   only, that when something is transcribed and there is an

1    official transcript, as there is now in this case, we need

2    to make sure it's accurate because if it's not accurate then

3    it doesn't really help us all if it's not accurate.

4         So I talked to the clerk of the court about this

5    issue because I was somewhat concerned that there doesn't

6    seem to be a process for either the court or any other

7    party, other than a party that -- well, I don't even know if

8    the parties that ordered the transcript know -- would do

9    this, but to make sure that if there was a mistake or

10   something that needed to be corrected in the record, that

11   there was a process by which those corrections could be

12   brought to the attention of the reporter and then a new

13   official transcript could be produced.

14        And I'll explain to you all what my concerns are,

15   starting with the very first page, on page 3 of the

16   transcript, the official transcript it says, proceedings

17   commenced at 10:05 p.m.  Well, I don't think any of us were

18   here at 10:05 p.m. on May 25th, so that's a problem right

19   there.

20        And you know, as is true in every single decision

21   that the bankruptcy court enters, every -- and the record of

22   any proceedings regarding a decision or an order that the

23   bankruptcy court enters they're subject to appeal.

24        And I would certainly hate for this to be appealed

25   and have the court, whoever is looking at it say, they

1    started the proceedings at 10:05 p.m.?  I mean, it just

2    doesn't make sense.  It's not accurate.  This is not an

3    accurate reflection of what occurred on May 25th.  So that's

4    -- number one, I thought that was interesting on the very

5    fist page.

6         Then there are a number places in the transcript

7    in which the reporter writes the word indiscernible.  Well,

8    I'm not sure it's indiscernible completely.  I mean, it

9    might be, but if all of us listened to it, we might

10   understand what the word is that the reporter couldn't

11   understand.  I think that's a relevant concern.

12        Then there are several places in the transcript

13   where parties speak about the status quo, and the reporter

14   spells the word quo as a capital -- I'll tell you in a

15   second.  I'll give you an example.  Capital K-U-O, and it

16   happens about 15 times throughout the course of this

17   transcript.  That concerned me.

18        I didn't think -- I mean, I am not going to make a

19   presumption that some appellate court looking at this on

20   appeal is going to understand that that should be status

21   quo, Q-U-O.  I don't think that's fair.

22        Then there's a couple of times where PAX's counsel

23   says the words, there's a through line, and the reporter

24   spells it T-H-R-U.  I don't know if that's what -- I think

25   it was you, Attorney Friedman, were talking at that time, is

1    -- that's what you said, but I don't even know what T-H-R-U

2    means.  I don't think it's a word.  If it's a word, it's a

3    new word to me.

4            There is another point in the transcript where

5    there's a discussion about a quality of distribution in

6    bankruptcy cases, and the reporter transcribes it as, a

7    quality in distribution.  Again, not accurate.

8            The reporter seems to have gotten a lot of the

9    case names that the parties cited in their arguments

10   correct, but not every one and not every spelling of the

11   case name.

12           And again, if we are -- and I will be insisting

13   that the transcript be accurate.  I want to make sure that

14   all those references are accurate so that when whomever it

15   is that's looking at this, if there is an appeal, can

16   understand what actually happened with accuracy in this

17   court.

18           There's one -- there is one situation where the

19   reporter -- someone spoke about Jevic, and they spell -- and

20   it was spelled G-E-V-I-C, as opposed to J-E-V-I-C.  Again,

21   that's a -- could be material to a court on appeal looking

22   for that case.  You know, I can't presume to know what an

23   appellate court would do with this.

24           There is another situation where the transcript

25   refers to the statute that people were talking about,

1    including the court, 157(b)(2)(B), and it's cited as

2    156(b)(2)(B), and then it's also sited as 128 instead of 28.

3    I think that's an issue that needs to be fixed.

4         In one place, there's just a specific typo.  It

5    says in front, F-O, instead of in front of.  There is a --

6    there -- you know, you all may think -- and I'm not saying

7    you do, but you may think that, oh, well, somebody could

8    figure that out, but I'm not make -- I'm not in the job of

9    presuming that someone can figure that out.  I'm in the job

10   of making sure the record is accurate.

11        So I asked the clerk of the court about it and

12   while there's a notice that goes out to all the parties who

13   appear at a hearing, and I think it goes out to more than

14   that quite frankly, but it at least goes out to the parties

15   that appear at a hearing, of -- a notice of filing of

16   transcripts and deadlines to restrictions and redaction,

17   that notice is supposed to only -- although I don't think it

18   says it clearly enough, but it's supposed to only apply to

19   personally identifiable information and other information

20   that someone could claim should not be part of the public

21   record.

22        I've already talked about -- to the clerk's

23   office, about revising that notice in the procedure because

24   I don't think it's clear at all what that means and I don't

25   know if any of you even read that.  Maybe you did, but I

10

1    read it and I didn't really understand what it meant.  And

2    it's part -- it's included with the transcript, but

3    apparently is still served on everybody even though the

4    transcript is not.

5         The issue of the transcript is that it's locked

6    for 90 days by policy of the Judicial Conference of the

7    United States, and there appear to be several reasons why

8    the Judicial Conference of the United States made a

9    determination some time ago that transcripts should be

10   locked for a period of 90 days unless ordered -- you know,

11   unless someone places an order for that transcript, like the

12   debtor did and PAX did, because it's protective of the

13   transcriber and the transcriber's business, because as I

14   said to you all a million times in this case, we don't have

15   -- Congress has not authorized or approved or appropriated

16   funds to the bankruptcy court to have a transcriber keep the

17   record in this case.

18        So I have been told by the clerk of the court that

19   the only way people on this call who have not reviewed the

20   -- who have not ordered the transcript, made an official

21   order for an official transcript, can review the transcript

22   within 90 days of the transcript being created, which was

23   May 31st, is my understanding, is to go to a clerk's office

24   of the bankruptcy court in Hartford, New Haven or Bridgeport

25   and read it there.  The only other thing you can do is order

1    the transcript.  So that -- I don't know what the answer to

2    that is.  I'm just explaining to you what the status is.

3           There also doesn't appear to be any process for

4    the court when the court finds a problem in a transcript, to

5    correct that, other than possibly Federal Rule of Bankruptcy

6    Procedure 9024, which incorporates Federal Rule of Civil

7    Procedure 60, which says if a court finds a mistake, it can

8    correct it.

9           But I'm not going to correct that mistake without

10   all you knowing that I think there's a mistake, right?

11   Otherwise, that doesn't make a lot of sense because you may

12   disagree that there's a mistake and you should have an

13   opportunity to review the transcript to see if you think

14   there's a mistake.  And we don't seem to have any process in

15   place for that.  And I don't know that any court does, quite

16   frankly.  I really don't know.  If you all know of any

17   process in place, let me know, because we don't have one

18   apparently.

19          So I'm going to make -- I'm going to tell you that

20   there is several problems I see with this transcript, and

21   our clerk's office has tried to put together what would be

22   -- and has put together, and it's not an official local form

23   yet, but it would be an errata sheet regarding a -- an

24   official transcript that could be used by any party to

25   indicate if they believe that there's a problem with the

1    official transcript.

2           Now if there's an appeal filed, the appellate rule

3    -- the 8000 rule has attempted to address this issue, but

4    they don't really address it fully because they -- it says

5    in 8000 -- now I've got to open it up.  Sorry.  I don't

6    remember if it's 8 or 9.  I think it's 9. 8009.  Yes.

7    Correcting or modifying the record, 8009(e), and it talks

8    about if there's a difference that arises about whether the

9    record accurately discloses what occurred in the bankruptcy

10   court, the difference must be submitted to and settled by

11   the bankruptcy court.  That, of course, presumes people read

12   everything and that they bring it to the bankruptcy court.

13   And it doesn't say what the bankruptcy court can do if they

14   find a problem with the record.

15          But that's if there's an appeal.  There isn't an

16   appeal, at least not yet, because there isn't anything to

17   appeal because I haven't ruled yet.

18          So I think the only basis upon which I can do this

19   at this point is under corrections based on a clerical

20   mistake under Rule 60.  The court may correct a clerical

21   mistake or a mistake arising from oversight or omission when

22   everyone has found in a judgment order or other part of the

23   record.

24          The court may do so on its own -- on motion or on

25   its own with or without notice.  But after an appeal has

13

1    been docketed, and while the appeal is pending, such a

2    mistake may only be corrected with the appellate court's

3    leave. Okay?

4          So I don't know what everybody thinks about this

5    but I -- there are things in this transcript that I want to

6    have corrected and I'm going to share all that with you.  I

7    already shared some of it with you.  I didn't share the

8    exact page and line number where they exist.

9          And there is another -- there's another place in

10   the transcript where I was talking about that 157(b)(2)(B),

11   and I said it's not a core proceeding, C-O-R-E, and it was

12   transcribed as a court proceeding.  I think that's a major

13   difference, actually, especially when an appellate court

14   looks at that.  They would have no idea that that should say

15   core as opposed to court.

16         And there's a couple of other -- there's a  --

17   there's a point when somebody said made, said the words made

18   first, and it was transcribed as May, like the month, first,

19   with a number 1 with an S-T.

20         So I don't know how you all want to proceed, but

21   I'm going to -- and I'm happy to hear what your thoughts

22   are, but I think we all need to review this transcript and

23   come up with a process by which we submit to everybody what

24   we think our changes are and then go from there.

25         I'm going to make those changes, whether -- and

1    you all can disagree, obviously, but I'm going to do that,

2    because the record is inaccurate from my perspective.

3         So I'm going to pick on you, Attorney Jonas,

4    first, since you represent the debtor, and see if you have

5    any thoughts about what I've just said.

6         MR. JONAS:  Thank you, Your Honor, and thank you,

7    obviously, for being so conscientious about all of these

8    things.  Frankly, more conscientious than me, because I did

9    read it and I noted some of the things you've mentioned, but

10   didn't really -- didn't really think about, you know, the

11   next step.

12        I'll just speak frankly, you know, from the

13   debtor's perspective. We've been looking forward to like --

14   I think tomorrow is the -- I think is the 15th day, and so

15   we've been obviously looking forward to a decision.  Our

16   hope obviously being that the case would be dismissed and

17   things could move on.

18        So I'm just concerned about, again selfishly, how

19   any of what you've suggested, which I can't disagree with,

20   you're 100 percent correct, and as I said, we noted many of

21   the same things but I just kind of -- I guess glossed over

22   them.

23        And so I'm just wondering if I should be

24   concerned that what you're suggesting might impact the

25   timing on a decision.  That's frankly my question so --

1        THE COURT:  Well, that's a fair question.  That's

2   a fair question.  And I can tell you, if it impacts it, it

3   will impact it minimally.  The --

4        MR. JONAS:  Okay.

5        THE COURT:  I am working actively on the decision.

6   Okay?

7        MR. JONAS:  Okay.

8        THE COURT:  It's not -- I'm not suggesting we set

9   up some process that's going to stop the decision from being

10  issued.  Whether the decision is going to be issued tomorrow

11  or not, that might be a little bit -- it might not happen,

12  just depend -- we were in court all day this morning until

13  this hearing, and that's why I didn't have this hearing

14  until 2:00, so I've lost a little of time that I was hoping

15  I had, so I don't -- I cannot say that the -- here's the

16  interesting thing about the 15 days.  I agree with you,

17  Attorney Jonas, it's tomorrow, number one.

18       Number two, apparently there's no real consequence

19  if the Court doesn't issue that by tomorrow, but I still am

20  trying to do that.  I don't want to delay this either.

21       Attorney Claiborn was correct in her statement --

22  or she made many statements, but she made a statement that

23  there needs to be a swift decision in this case.

24       So I have -- I'm not raising this to stop the

25  clock from running or anything like that.  I don't know that

1    I will decide by tomorrow though, but I am very confident

2    that it will be a few days after that if it's not by

3    tomorrow.

4            So this is not being raised to derail any timing.

5    Okay?  It's being raised because I want the record to be

6    accurate and I -- and when we had our hearing, our

7    evidentiary hearing on the 25th, you know, we talked --

8    everybody talked in general about -- not everybody.  I mean,

9    it was mentioned in general about an appeal.

10           Well, you know, this has made me think about every

11   case I deal with, right?  It's not just this case.  It's

12   every case, how accurate the record really is in a

13   bankruptcy case and if anybody is really looking at it for

14   that purpose.  Okay?

15           So to -- it's a fair question.  Am I trying to

16   rule by tomorrow?  Yes, I certainly am.  I have been working

17   on this decision.  Will I rule by tomorrow?  I don't know.

18   But if I don't rule by tomorrow, it's not going to be very

19   much longer.  It will be a few -- a day or two, you know,

20   longer.  Make sure I don't make typographical errors.  Make

21   sure my case cites are accurate.  Make sure I don't put May

22   1st for made first.  So --

23           MR. JONAS:  And the only --

24           THE COURT:  Go ahead.

25           MR. JONAS:  Thank you.  Yeah.  Thank you, Your

1   Honor.  I mean, just from a -- just to explain myself a

2   little more from a very, very practical standpoint.  There

3   is a continued 341 meeting from Monday.

4            THE COURT:  Oh.  I didn't know that.  Okay.

5            MR. JONAS:  And -- yeah.  And that's why I wanted

6   to advise you of that.  Obviously, if the UST was willing to

7   continue that for -- that that -- that would alleviate at

8   least this particular concern.

9            To be honest, you know, we didn't want to -- both

10  from a Brown Rudnick standpoint and  -- we didn't want to

11  expend resources unnecessarily, so we  -- but there would --

12  we would need to get the debtor ready, obviously, and be at

13  the 341, et cetera.

14           So, you know, there's a fair amount of time and

15  effort that -- that was my main concern with -- you said

16  there may be no consequence and you may very well be right.

17  And frankly, I -- other than just wanting to move on, my

18  main concern was in fact the 341 meeting, just so you know -

19  -

20           THE COURT:  Well --

21           MR. JONAS:  -- where I'm coming from.

22           THE COURT:  -- I'm glad you raised it, because as

23  you know, the Court isn't involved in the 341 meeting

24  scheduling or conducting the meeting or anything, so no, I

25  didn't know that, and if it's on the docket, then I missed

1    it.  So that's -- whatever.

2               Attorney Claiborn, is the U.S. Trustee's office

3    willing to continue the 341 meeting pending the ruling on

4    this decision?

5               MS. CLAIBORN:  Your Honor, I believe so, but I

6    would need to confirm and get actual authority to make that

7    statement.

8               THE COURT:  Okay.  All right.  I would appreciate

9    it if you would do that.  I think it's a fair point that

10    Attorney Jonas raises, and I don't think that if the

11    decision isn't rendered tomorrow, which it might not be,

12    that the debtor should have to go forward with a 341 meeting

13    at this point.

14               I mean, waiting another week shouldn't matter, at

15    least from the Court's perspective.  Maybe everybody else

16    disagrees with that but -- and so tell me if you do, but as

17    I said to you, if this order -- if this decision doesn't

18    issue tomorrow, it's going to issue early next week.

19               It's not -- we're not -- I'm not raising this

20    issue about the record to stop that issue -- that decision

21    from being issued.

22               So, Attorney Claiborn --

23               MR. JONAS:  Your Honor, just to --

24               THE COURT:  -- how much time do you think you --

25               MR. JONAS:  I'm sorry.

1          THE COURT:  -- would need to find out and get back

2     to Attorney Jonas as to whether or not the 341 meeting could

3     be continued, at least for a week?

4          MS. CLAIBORN:  Your Honor, I'm trying to

5     communicate as we are in the midst of this hearing to see if

6     I can get an answer.

7          THE COURT:  Okay.  Thank you.  All right.

8          So what does everybody else think about this issue

9     that I've raised on this record?  Attorney Friedman?

10          MR. FRIEDMAN:  Yes, Your Honor.  PAX is amendable

11     to a -- to the 341 being postponed for a week in order to

12     permit the Court to reach its determination.

13          I guess our view, Your Honor, is that obviously

14     it's important to have a good transcript and a clean

15     transcript in light of the court's -- the issues the court's

16     raised.

17          I will say I've not been before a judge who is

18     just as diligent on this as you are, and so I've never seen

19     anybody do it and so I'm not familiar with the mechanism,

20     but it certainly is important.

21          I don't know, Your Honor.  We did order the

22     transcripts.  I don't know if it's verboten for us to give

23     it to other creditors or parties in interest so that they

24     may see a copy of it so they don't have to schlep to

25     Hartford.  I certainly would be willing to.

1           THE COURT:  And I appreciate that.

2           MR. FRIEDMAN:  And --

3           THE COURT:  I don't know.  It might be,

4    unfortunately.  That's the problem with this Judicial

5    Conference policy is that -- I'll let you all decide what

6    you want to do, but I'll tell you that the point is --

7           MR. FRIEDMAN:  Okay.

8           THE COURT:  -- on the docket, it says that the

9    transcript is locked for 90 days unless you purchase an

10   official transcript, or as I've been informed by the clerk

11   of the court, go to a clerk's office and actually review it.

12          And I understand, Attorney Friedman, why you're

13   saying what you're saying, because I would have probably

14   said the same thing in a case with other lawyers when I was

15   practicing, right?  But it's an --

16          MR. FRIEDMAN:  I mean, Your Honor, we --

17          THE COURT:  -- odd, odd situation.

18          MR. FRIEDMAN:  We also might need to file it,

19   honestly, as an exhibit, which obviously other counsel would

20   be entitled to see if we're going to put an errata on.  So I

21   think there may be some ways to skin the cat --

22          THE COURT:  Right.

23          MR. FRIEDMAN:  -- which -- with your blessing.

24          THE COURT:  Right.

25          MR. FRIEDMAN:  But --

1          THE COURT:  I don't think I can give my blessing.

2     I think I can -- you can all figure out what you think --

3          MR. FRIEDMAN:  Okay.

4          THE COURT:  -- is appropriate.

5          MR. FRIEDMAN:  We understand, Your Honor, and we

6     will confer.

7          I think we share Mr. Jonas's just general concern

8     about time.  I guess what I would say is, the court can

9     issue its decision, and obviously there's a time in which

10    people can appeal, and maybe that time can be used for

11    people to file any errata or to review the --

12         MR. GOLDMAN:  You froze.

13         THE COURT:  Yeah, Attorney Friedman, you -- we

14    lost you after you said there's -- we can use the time

15    during the appeal to deal with the errata and then you

16    froze.

17         MR. FRIEDMAN:  I guess it -- so can you hear me

18    now?  Am I unfrozen?

19         THE COURT:  Yes.  Yes.

20         MR. FRIEDMAN:  Okay.  So I would submit that the

21    court, if it's -- with whatever opinion it renders, issues

22    an errata, and the other parties can then use the

23    intervening time in which they have to file an appeal to

24    meet and confer about any additional errata that the parties

25    may propose are necessary to see if we can come to a

1    consensual understanding as to anything.  And obviously see

2    if we can have an agreed to transcript.

3            And if not, I guess submit to the Court any -- any

4    areas where there are differentiations, and we're happy to

5    undertake to put together, you know, a document which

6    includes where the parties agree and where they may

7    disagree, if anywhere, about what the errata ought to

8    reflect.

9            THE COURT:  Anyone else wish to be heard on the

10   issue?  I'd like ideas, honestly.  I mean, it is a very

11   interesting situation, I think.  That should be between --

12           MR. GOLDMAN:  Your Honor, Irve Goldman.

13           THE COURT:  -- all cases by the way.

14           MR. GOLDMAN:  I apologize for interrupting, Your

15   Honor.  Irve Goldman for the committee.  We have no

16   objection to marking over the 341 meeting that's scheduled

17   for Monday.

18           In terms of a process, I was thinking maybe that

19   if Your Honor had already done an errata sheet for the

20   court, which I would expect would be thorough and

21   comprehensive, but perhaps it could be circulated among the

22   parties and that, you know, if anyone had any objection or

23   any additions to it, they would be given a certain amount of

24   time to do that, absent which that would become the, you

25   know, official errata sheet so to speak.

23

1      THE COURT:  Well, I plan -- the way I'm going to

2    circulate it is I'm going to put it on the docket.  You

3    know, I'm going to -- I'm going to file it on the docket and

4    say this is what the court believes are the corrections or

5    changes that must be made to the transcript, and then I

6    agree, Attorney Goldman, that there would also be associated

7    with that a time frame for people to object or submit their

8    own errata sheets.  But you know, whether or not you want to

9    do your own review is up to you.

10      So I'm not going to do that.  I'm not going to be

11    able -- in a position to complete and file the errata sheet

12    until after the decision is entered, or I'm going to spend

13    time on an errata sheet, which I don't want to do, right?

14    I've got to get the decision entered first.

15      But that's why I wanted to have this conference

16    today, to tell you all in the preparation of this decision,

17    I found a lot of issues with the -- with the transcript.

18      Attorney Claiborn has her hand up, that I can see,

19    so she may have something to report to us.

20      MS. CLAIBORN:  Yes, Your Honor.  I can report that

21    the U.S. Trustee is willing to continue the 341 meeting.  I

22    don't have a date to offer the court or the parties today,

23    but I will be in communication with the parties.

24      THE COURT:  Okay.  Good.  Thank you very much and

25    thank you for your quick attention to that issue.

1          MS. CLAIBORN:  You're welcome.

2          THE COURT:  All right.  So, Attorney Jonas, you

3    don't have to prepare your client for a continued 341

4    meeting on Monday.

5          MR. JONAS:  Thank you, Your Honor, and thank you

6    to the United States Trustee's office.

7          THE COURT:  All right.  Does any -- I'm going to

8    -- unless you all have some other ideas, concerns, thoughts,

9    I'm not going to prepare this errata sheet until after I

10   issue the decision, but then I am going to finalize this

11   errata sheet, put it on the docket, have some kind of time

12   frame -- and the errata sheet's got to go to the reporter by

13   the way.

14         So it doesn't make sense to get it to the reporter

15   until everybody has a chance to review it and see if they

16   have any opposition or additional changes that should be

17   made, because you can't make the reporter do it three times,

18   right?  We're either -- this is going to be the whole change

19   or not.  So does anyone else have any thoughts or concerns

20   or desires to file something on their own?

21         MR. SARNOFF:  Your Honor, this is Stewart Sarnoff

22   also of -- also on behalf of PAX, and I would just say,

23   maybe I am an optimist, but I think although our parties

24   might have divergent views as to how they would like to see

25   Your Honor's decision come out, my guess is that we will all

25

1   be able to agree that status quo is not spelled Q [sic] U-O,

2   that a meeting that took place in the morning did not take

3   place in the evening, and that by and large we're not going

4   to be advocating the modification of the errata sheet, but

5   just sort of confirming like, of course that's the right

6   spelling and it shouldn't be -- you know, it shouldn't be

7   court, it should be core.

8          And my guess is that we'll all be able to come up

9   harmoniously with an errata sheet that will accurately

10  reflect what occurred on that date, and this will be less of

11  a problem hopefully  than perhaps we're envisioning it to

12  be.

13         THE COURT:  I don't see it as a problem.  I see it

14  as accuracy, and I don't -- and I understand that you all

15  might agree and that's great.

16         But you're not going to be deciding the appeal and

17  -- or -- and none of the people here on this call are going

18  to be part of the deliberations on the appeal when the,

19  whatever court it is, has to review the transcript of that

20  evidentiary hearing.

21         So my point is I'd think there are some -- I

22  understand your point about status quo, but that's not the

23  only problem with the transcript.  And that -- and that

24  shouldn't exist regardless.  That's what you pay a

25  transcriber for, right?

1          And if it was a deposition, you would have gone

2     through it with your -- with the witness and you would have

3     filled out an errata sheet.  So it's really not -- I think

4     the accuracy of the record is paramount and I don't want a

5     court reviewing this -- a record of our court making a

6     decision based upon an inaccurate record, because as you all

7     know, the intricacies of what we deal with with the

8     bankruptcy code and rules, you know, have to come across

9     clear and accurate or there might be an incorrect ruling.

10         So is there any -- anyone else wish to be heard?

11    And if not, I'll leave you all alone, but I just wanted you

12    to understand where I was coming from.

13         MS. CALLARI:  Your Honor, this is Attorney

14    Callari.  Just wanted to clarify my understanding, because I

15    do agree that what counsel have said.  I think what I heard

16    is Your Honor will file the errata sheet after the decision,

17    whenever that is and then we can comment.

18         I agree with everybody that I think the counsel

19    can work together to respond one time or not at all, but we

20    all agree.

21         But I also want to note, I am not aware of any

22    limitation on counsel who ordered the transcript from

23    sharing it in that as Mr. Friedman says, if for some reason

24    he had to file the transcript in connection with something,

25    there's nothing prohibiting him from doing that.

27

1          So we will work with them (indiscernible)

2     information than you want.  I'm just saying that I don't

3     think this will be an issue, so I'm just echoing everybody

4     and we'll look for your errata sheet.

5          THE COURT:  Okay.  Thank you.  Anyone else wish to

6     be heard?

7          (No audible response)

8          THE COURT:  Okay.  Well, then you will get the

9     decision on the pending motion, which we had the evidentiary

10    hearing, as soon as possible.  Possibly tomorrow.  And if

11    not, it will be early next week.  And then after that, I'll

12    deal with the errata sheet.

13          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

14          THE COURT:  Okay?

15          MR. JONAS:  Thank you, Your Honor.

16          THE COURT:  All right.  Thank you --

17          MS. CALLARI:  Thank you, Your Honor.

18          MS. CLAIBORN:  Thank you.

19          THE COURT:  -- all for making yourselves available

20    on short notice.

21          UNIDENTIFIED SPEAKER:  Thank you.

22          THE COURT:  Thanks to the United States Trustee's

23    office for continuing the 341 meeting during this process.

24    Okay?

25          MR. JONAS:  Thank you.

28

1    THE COURT:  All right.  That concludes the hearing

2  today.  Court is adjourned.

3    THE CLERK:  Court is adjourned.

4    UNIDENTIFIED SPEAKER:  Thank you.

5  (Proceedings concluded at 2:42 p.m.)

6    I, CHRISTINE FIORE, court-approved transcriber and

7  certified electronic reporter and transcriber, certify that

8  the foregoing is a correct transcript from the official

9  electronic sound recording of the proceedings in the above-

10  entitled matter.

11

12  *Christine Fiore*

13  _____        June 17, 2022

14    Christine Fiore, CERT

15      Transcriber

16

17

18

19

20

21

22

23

24

25