

55 Madison Avenue, Suite 400
Morristown, NJ 07960

T: (973) 285-3280
aaron@lmesq.com

July 11, 2022

Ms. Holley L. Claiborn
Office of the Unites States Trustee
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

E-Mail: holley.l.claiborn@usdoj.gov

**Ref: In Re: Kwok Ho Wan – 22-50073**
**<u>Request for Information</u>**

Dear Ms. Claiborn:

On behalf of Mr. Ho Wan Kwok (the "Debtor"), we write requesting additional information from the U.S. Trustee's Office regarding the conflict process applied to the originally nominated trustee, Mr. Joseph Whitley, and details on how the decision was reached by the UST ("UST") to withdraw his nomination. We would also like to understand how this process is the same or differs with the process being applied to the subsequently recommended and approved trustee, Mr. Luc A. Despins of Paul Hastings, in light of his omission on his sworn Declaration of Disinterestedness that his firm represented the parent company of Pacific Alliance Asia Opportunity Fund ("PAX"), the largest creditor in this matter, within the last five years. Finally, we would truly appreciate understanding how the U.S. Trustee, in light of the information previously presented by the debtor as well as information available to the U.S. Department of Justice demonstrating that the Debtor is a high-level political target of the authoritarian ruling Chinese Communist Party, believes that the trustee of a firm with a significant presence in China and Hong Kong and which has done significant business representing Chinese-controlled state entities, can remain a neutral and disinterested party with the ability to avoid undue influence and interference from the Government of China.

This information is being requested in light of the recent unusual sequence of events that raise concerns over the UST's handling of the trustee appointing process in this matter:

**<u>The U.S. Trustee's Unexplained Delay in Nominating a Trustee to this Matter</u>**

Shortly after the Debtor filed his bankruptcy petition, the UST filed a motion which included seeking the appointment of a trustee. On June 15, 2022, the Bankruptcy Court entered an order directing the UST to appoint a Chapter 11 trustee. This order came after months of hearings in this matter and was not sudden or unexpected. The Debtor provided the UST with its feedback on the appointment with no delay. Inexplicably, the UST did not submit a Trustee



55 Madison Avenue, Suite 400
Morristown, NJ 07960

T: (973) 285-3280
aaron@lmesq.com

for approval until June 30, 2022. During this period, the UST did not request any further feedback from the Debtor. No explanation for the delay in appointing a Trustee has been provided. Unfortunately, it appears the UST in its haste to overcome its own deliberation delays subsequently changed its policies in vetting trustees, including with the one eventually appointed, to the detriment of the Debtor.

Among the information we are seeking related to this event is information on who was involved in this process; which, if any, offices outside of the UST were involved in, apprised of, or consulted in the appointment process; what potential trustees were considered; who if anyone recommended the two trustees presented to the Court; and the reasons for not appointing a trustee shortly after the Judge entered her order.

**The U.S. Trustee's Unusual Action to Withdraw its Appointment of Mr. Whitley**

On June 30, 2022, just before the 4th of July weekend, the UST in light of its excessive delays in appointing a trustee for this matter, filed a motion for an expedited hearing for the Court to approve Mr. Whitley as the trustee. This motion was granted on the same day it was filed with an expedited hearing scheduled on July 5, 2022. Just hours before the expedited hearing was to begin and with no advance notice to the Debtor (and possibly all parties), the UST took the unusual action of unilaterally withdrawing its Notice of Appointment of a trustee and its request for Court approval of the proposed appointment. At the hearing, the Bankruptcy Judge pointed out the unusual nature of this action by the UST and questioned the UST legal authority to do so. The UST did not provide a detailed explanation for this rash action at the hearing nor was Mr. Whitley called to explain the conflict to all parties and the Court. The UST simply swept Mr. Whitley away from the Debtor, the parties, and the public.

Among the information the Debtor is requesting related to this event is: information regarding the deciding official and the decision process for filing the withdrawal of the appointment of Mr. Whitley; who and what departments were apprised or consulted in this decision; the parties involved in making the decision to withdraw the appointment; the timing and manner in which the UST became aware of the potential conflict, including the party that initially raised the conflict with the UST, if any, over the July 4th holiday weekend; what specifically was the conflict that caused the UST to withdraw Mr. Whitley's appointment; and information on whether Mr. Whitley personally represented the party creating the conflict.

**Inappropriate and Prejudicial Questions Re. Debtor Presented to Trustee Candidates**

We have reason to believe that the UST posed unfounded and highly prejudicial questions to prospective trustee nominees regarding the prospect of the Debtor "fleeing" the United States despite it being public knowledge and part of the record in this matter that Debtor is in the United States pending political asylum protection. Cleary, if this is true, this would be



55 Madison Avenue, Suite 400
Morristown, NJ 07960

T: (973) 285-3280
aaron@lmesq.com

completely prejudicial and undermine the process to date of selecting a trustee for this matter. Further, it would demonstrate an inherent and inappropriate bias within the UST against the Debtor. The Debtor would like a clear reply from the UST whether such a question, scenario, and/or inference of the Debtor fleeing the U.S. was presented, discussed, or raised in any manner with trustee candidates, including the trustee who was ultimately appointed. Further, we would like to know what other questions regarding the debtor were presented to trustee candidates and ask that all records pertaining to the vetting of trustee candidates be preserved.

**The U.S. Trustee's Process for Vetting Conflicts and Disinterestedness**

On July 7, two days following the UST's unilateral withdrawal of Mr. Whitley's appointment due to a conflict, the UST appointed Mr. Luc A. Despins of the law firm Paul Hastings as trustee. As with Mr. Whitley, Mr. Despins presented a sworn Declaration of Disinterestedness under penalty of perjury in which he declared that he requested his firm, Paul Hastings, to conduct a conflict check of all interested parties in addition to "researching information about affiliates of listed entities". The Debtor further assumes that after the embarrassing withdrawal of Mr. Whitley's appointment that the UST would apply a sufficient vetting process to determine if Mr. Despins was a disinterested party and not subject to conflict.

Unfortunately, it came as no surprise to the Debtor when the UST and the appointed trustee attempted to address a significant omission on his sworn "Declaration of Disinterestedness" during the hearing the UST was seeking the Court's approval of his appointment. At that hearing, both the UST and Mr. Despins indicated that they had just learned that morning that the appointed trustee's firm performed work for the parent company of this matter's largest creditor - Pacific Alliance Asia Opportunity Fund. Specifically, it is publicly reported that the trustee's firm performed legal work surrounding a $671M take-over bid by parent company Pacific Alliance Group ("PAG") Real Estate. Details of this relation are publicly available on a *Law 360* on-line article titled *"Paul Hastings-Led PAG Makes $671M Bid For Spring REIT,"*.

The debtor is seeking information on the process and standards applied by the UST to verify the sworn declarations of both trustees appointed in this matter and assess whether they were in fact disinterested parties. If a shortened and expedited vetting process of Mr. Despins was applied in comparison to Mr. Whitley, please advise us of the basis for this decision and identify who made this decision. Further, in light of the admission made by Mr. Despins regarding the omission on his sworn declaration, we are seeking information on how the UST is viewing and applying this information in relation to the conflict of Mr. Whitley's firm that served as the basis for the U.S. Trustee. Finally, we would like an explanation as to why the UST did not take a similar action of unilaterally withdrawing Mr. Despins' appointment upon learning of the additional information regarding his firm's representation of the main creditor's parent company and instead allowed the appointment to be approved. Based on the arguments




55 Madison Avenue, Suite 400
Morristown, NJ 07960

T: (973) 285-3280
aaron@lmesq.com

presented by the UST in a July 5th hearing, the UST was emphatic that it has full discretion to unilaterally withdraw an appointment prior to approval by the Court and takes its obligation to vet potential candidates seriously. It appears to the Debtor that a different legal and operational approach was applied by the UST with the second appointed trustee and he seeks an understanding as to why.

**The U.S. Trustee's Dismissal of the Debtor's Verified Concerns Regarding His and His Family's Persecution by China Through Its Selection of a Trustee from a Firm with Strong Professional Ties to China/Hong Kong and State Controlled Agencies**

The UST's summary dismissal of the Debtor's established concerns regarding his and his family's persecution by China is shown in its appointment of a trustee from a firm with strong professional ties to not only China and China-controlled Hong Kong, but which also has extensively represented state-controlled entities. This appointment raises significant concerns with the Debtor regarding potential conflicts, interference by China, and whether the appointed trustee and his law firm can operate impartially without undue interference from China and its ruling authoritarian Communist Party. This would not be the first time the UST has dismissed these concerns. Earlier in the proceedings, the Debtor was surprised by the UST's insistence that he present proof that China in fact had issued a Red Notice against him, particularly since she could not find it on INTERPOL's public website. This request from a U.S. Department of Justice employee is both an indicator of lack of any neutrality towards the Debtor but also humorous since the U.S. Department of Justice, of which the UST is part of, maintains the INTERPOL records (including the majority that are not publicly posted) which it is seeking. Further, information from a 2017 public Congressional record supporting the existence of a Red Notice as well as the Chinese government's persecution and attacks against the Debtor was presented. During hearings in this matter and Debtor interviews, the Debtor's concerns regarding China were repeatedly expressed and additional information regarding China's efforts to have the Debtor unlawfully extradited or deported back to China were presented. For example, information was presented that a U.S. Department of Justice Headquarters Official was indicted and pled guilty for acting as an agent of China and among other things secretly meeting with China's Ambassador to the U.S. to discuss the Debtor's extradition. Further, information was presented regarding several high-ranking Republican Party officials being indicted or sued by the Justice Department for among other things, meeting with President Trump and communicating with the U.S. Attorney General, the National Security Agency, and the U.S. Secretary of Homeland Secretary to discuss the Debtor's illegal rendition to China. Just last month, another individual was indicted by the U.S. Department of Justice for participating in this China-financed scheme against the Debtor while the FBI Director Wray last week publicly stated that China was the "biggest long-term threat" to the U.S. The Debtors concerns



55 Madison Avenue, Suite 400
Morristown, NJ 07960

T: (973) 285-3280
aaron@lmesq.com

regarding China are legitimate and well-founded and not based on fantasy as the UST may seem to believe or imply.

Shockingly, and despite all of this information, the UST - a component of the U.S Department of Justice - appointed out of all the hundreds of firms in the United States a trustee from a firm with a strong office presence in China, strong professional ties to Chinese-controlled agencies and companies, and definitively subject to undue pressure and influence from China. The Debtor has highlighted and it is public record that one of his prior law firms was hacked by the Chinese Government on account of its representation of Debtor and forced to withdraw from his representation. Further, the UST as part of the Department of Justice should be well aware that the Department recently sued Mr. Steven Wynn, the billionaire owner of lucrative casinos in China-controlled Macau, for participating in the illegal China-funded scheme targeting the Debtor. The Department of Justice noted in this suit that the Chinese Government gained Mr. Wynn's participation in the scheme, which included meeting with President to discuss the Debtor's unlawful rendition, out of Mr. Wynn's desire to protect his Macau casino licenses worth millions in annual revenue. Frankly, the U.S. Trustees decision flies in the face of significant corroborated information supporting the Debtor's fears and will naturally lead to a lack of confidence in the process as well as unwarranted stress to the Debtor and his family, several who have been jailed and tortured by China.

The Debtor would like to understand why the UST, a component of the U.S. Department of Justice, does not believe these concerns and selected a trustee whose firm has significant ties to China/Hong Kong and is vulnerable to influence by China's government– a decision that flies in the face of actions and statements made by its colleagues in the FBI, Criminal Division, and National Security division. The Debtor requests information as to the UST's analysis and weight applied to Debtor's persecution by China and fears of China's retribution as well as what, if any, consideration was given to the trustee's firm's ties to China and Chinese-controlled entities. The Debtor would also appreciate any representations by the trustee and his firm.

**Conclusion**

Understandably, the combination of unusual, arguably shocking, and ambiguous circumstances surrounding the UST's appointment of a trustee in Debtor's matter raises valid concerns by the Debtor of impartiality and confidence in the process. The Debtor wishes to understand these issues with your input and information in order to make a sound determination with respect to the current trustee's assertion under oath of disinterestedness; the impartiality of the U.S. Trustee's actions; and the ability of relevant parties to remain neutral in this process.

We recognize the Court's concerns regarding the delays caused by the UST in selecting a trustee and would appreciate a quick response to our request along with any relevant documents or




55 Madison Avenue, Suite 400
Morristown, NJ 07960

T: (973) 285-3280
aaron@lmesq.com

communications regarding the above matters that your office may possess. In the absence of information surrounding these recent delays and events overseen by your office, the Debtor will have no alternative but to formally seek information regarding the appointed trustee and the entire trustee selection process which may in turn further delay the administration of the estate. The Debtor is in support of a quick administration of the estate and has acted accordingly to date. However, he will not sacrifice his rights to an impartial process to speed up a process delayed by the UST's mishandling of the trustee process. We will also be preliminarily notifying the Court of our concerns and this written request for information. Thank you for your cooperation and attention to this request.

Very truly yours,

/s/ Aaron A. Mitchell
Aaron A. Mitchell