**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------x
:
In re:                                                                    :    Chapter 11
:
HO WAN KWOK,                                                :    Case No. 22-50073 (JAM)
:
         Debtor.                                              :
:
---------------------------------------------------------x

**DECLARATION OF PATRICK R. LINSEY**
**IN SUPPORT OF APPLICATION OF CHAPTER 11 TRUSTEE**
**FOR ENTRY OF ORDER, PURSUANT TO BANKRUPTCY CODE**
**SECTIONS 327, 328, AND 330, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL**
**BANKRUPTCY RULES 2014-1 AND 2016-1, AUTHORIZING AND APPROVING**
**RETENTION AND EMPLOYMENT OF NEUBERT, PEPE, & MONTEITH, P.C., AS**
**LOCAL AND CONFLICTS COUNSEL TO THE CHAPTER 11 TRUSTEE**

I, Patrick R. Linsey, being duly sworn, do depose and say:

1. I am an attorney at the law firm of Neubert, Pepe & Monteith, P.C. ("NPM"), which maintains its principal office at 195 Church Street, 13th Floor, New Haven, CT 06510, and I make this declaration in support of the *Application of Chapter 11 Trustee for Entry of Order, Pursuant to Sections 327, 328, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, Authorizing and Approving Retention and Employment of Neubert, Pepe & Monteith, P.C. as Local and Conflicts Counsel to the Chapter 11 Trustee* in the above-captioned chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor").

2. NPM maintains offices in New Haven, Hartford, and Fairfield, Connecticut, and White Plains, New York. NPM was founded in 1993 and has a widely diversified general and corporate practice. The firm currently employs 36 lawyers, who are assisted by six paralegals.

3. NPM has expertise in practice areas including financial reorganizations, bankruptcy, investigations, corporate, and commercial litigation matters. NPM is well suited for the type of representation required by the Chapter 11 Trustee. Its insolvency practice includes ten attorneys. NPM has substantial resources and expertise in the areas of the law that may arise in this case.

4. NPM has specific and relevant experience in the representation of chapter 11 trustees, post-confirmation liquidating trustees, and creditor committees, including within and in connection with cases in this Court. NPM is also experienced in serving as local counsel, and, in so doing, working cooperatively with lead counsel by assisting in compliance with local rules and procedures, attending to routine and administrative matters as they arise, and otherwise providing services as may be required by lead counsel and in the best interests of its clients, all in a manner that promotes efficiency and avoids any unnecessary duplication of efforts by counsel. Considering the foregoing, NPM is also equipped to provide services as conflicts counsel to the extent that the need arises.

5. NPM intends to apply to the Court for compensation for professional services rendered and for reimbursement of expenses incurred in connection with this Chapter 11 Case pursuant to sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the District of Connecticut (the "Local Bankruptcy Rules"), and any other applicable rules and orders with respect to this Chapter 11 Case. NPM will charge the Chapter 11 Trustee for its legal services on an hourly basis at its regularly applicable hourly rates in connection with the services required in this Chapter 11 Case.

6. At present, the 2022 hourly rates of NPM are $140.00 - $165.00 for paralegal work; $165.00 - $350.00 for associates and counsel; and up to $450.00 for principals of the firm. NPM's hourly rates are subject to periodic adjustments to reflect economic and other conditions.[1] It is anticipated that NPM's services will primarily be provided by Douglas S. Skalka, whose hourly rate is $450.00, Lucas B. Rocklin, whose hourly rate is $400.00, and Patrick R. Linsey, whose hourly rate is $350.00.

7. NPM will also bill for out-of-pocket expenses made on behalf of the Chapter 11 Trustee, including photocopying, postage and package deliveries, court fees, transcripts, witness fees, service fees, travel expenses, and computer-aided research, in accordance with practices in this District.

8. To the best of my knowledge and belief after due inquiry, neither I, nor NPM, nor any member or associate thereof, represents professionally, or has any connection with, the Debtor, his creditors, any other party-in-interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, other than as disclosed herein.

9. NPM maintains a computer database (the "Database") containing, *inter alia*, the names of all NPM's current and former clients and, with respect to any engagement, adverse and related persons. I caused to be submitted to, and checked against, the Database all of the following

---

[1] NPM's hourly rates are typically revised at the end of each calendar year to reflect experience, seniority, and standing. These step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*) (the "U.S. Trustee Guidelines"). As set forth in the Proposed Order, NPM will provide ten business days' notice to the Debtor, the Assistant United States Trustee for the District of Connecticut (the "U.S. Trustee"), and counsel to the Committee and any other official committee, before implementing periodic increases, and shall file any such notice with the Court.

3

names: (a) the Debtor; (b) the members of the Official Committee of Unsecured Creditors (the "Committee"); (c) creditors as set forth on the List of Creditors in this Chapter 11 Case, (d) Chapter 11 Trustee Luc A. Despins (the "Chapter 11 Trustee"), (e) all parties appearing in this Chapter 11 Case, and (f) the following potentially interested or adverse parties: (i) Golden Spring (New York) Ltd; (ii) Hing Ch Ngok; (iii) Qiang Guo; (iv) Mei Gui; (v) HK International Funds Investments (USA) Limited, LLC (purported owner of the *Lady May* yacht); (vi) Bravo Luck Limited (purported ultimate owner of Sherry-Netherland apartment); (vii) Lamp Capital LLC (provider of $1 million loan for Debtor's counsel retainer); and (viii) Genever Holdings LLC ((a) through (f), the "Potentially Interested Parties").

10. NPM has no relationship or connection with the Potentially Interested Parties, or, to the best of my knowledge, with any other creditor of the Debtor, except that one of NPM's attorneys, Mark I. Fishman ("Mr. Fishman"), was contacted in or around March and April 2022 by counsel for Rui Ma and Weican Meng and by counsel for Rong Zhang, Xiodan Wang, and Chong Shen Rap, and another of NPM's attorneys, Douglas S. Skalka, was contacted in or around June 2022 by potential counsel for the prior proposed chapter 11 trustee (whose appointment was withdrawn and was not approved by the Court) (the foregoing, collectively, the "Consulted Persons") to discuss potential engagements to represent the Consulted Persons with respect to the Chapter 11 Case, *provided however*, that the Consulted Persons never retained or engaged NPM, NPM did not represent the Consulted Persons or charge them fees, the Consulted Persons never paid NPM fees, and I am not aware of NPM having received any information that would interfere with its representation of the Chapter 11 Trustee (including, were such to occur, in a capacity adverse to the Consulted Persons). See Conn. R.P.C. 1.18. To date and currently, Mr. Fishman is not one of NPM's attorneys providing services to the Chapter 11 Trustee. I was previously an

attorney at Zeisler & Zeisler, P.C. ("Z&Z"), which firm is counsel to certain parties-in-interest in this Chapter 11 Case, including, as of July 14, 2022, the Debtor. I have not worked at Z&Z since March 2020. I am not aware that the Debtor or any parties-in-interest were clients of Z&Z when I was an attorney at the firm, and I never worked on any matters for or, to my knowledge, relating to, the Debtor or any parties-in-interest in this Chapter 11 Case, while I was at Z&Z.

11. While NPM has made a diligent effort to ascertain the identity of any connections or potential conflicts with interested parties, to the extent that any additional information comes to light, NPM will review, disclose, and resolve any conflict or adverse interests that may appear.

12. Based on the foregoing, insofar as I have been able to ascertain based on the information currently available to me: (a) NPM has no connection with the Debtor, his creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party with an actual or potential interest in the Chapter 11 Case or their respective attorneys or accountants; and (b) neither NPM nor any of its attorneys (i) is a creditor, equity security holder, or insider of the Debtor or his affiliates, (ii) has been, within two years before the Petition Date, a director, officer, or employee of the Debtor or his affiliates, or (iii) has any interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason. Therefore, I believe that NPM is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b).

13. NPM will apply to the Court for compensation under Bankruptcy Code §§ 330 and 331, Rules 2014 and 2016 of the Bankruptcy Rules, and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules.

14. NPM does not believe that Appendix B of the U.S. Trustee Guidelines (the "Larger Case Guidelines") applies in this Chapter 11 Case, because the Debtor's petition does not list $50 million or more in assets and $50 million or more in liabilities. In particular, the Debtor estimated the value of his assets between $50,001 and $100,000. Nevertheless, NPM intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures set forth in the Larger Case Guidelines in connection with the interim and final fee applications to be filed by NPM in the Chapter 11 Case, but reserves all rights as to their relevance and substantive legal effect in connection with the Application or any application for compensation in the Chapter 11 Case.

15. In the interest of providing maximum disclosure, and notwithstanding NPM's position concerning the inapplicability of the Larger Case Guidelines, NPM provides the following response to the request for information set forth in Paragraph D.1. of the Larger Case Guidelines:

> Question: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?
> Answer: No.
>
> Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?
> Answer: No.
>
> Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.
> Answer: N/A. NPM has not previously represented the Chapter 11 Trustee.
>
> Question: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?
> Answer: The Chapter 11 Trustee and NPM, in consultation with the Chapter 11 Trustee's lead counsel, Paul Hastings LLP, are discussing staffing and a budget for this Chapter 11 Case for the period from July 8, 2022 through September 30, 2022.

16.     NPM has neither shared nor agreed to share with any other person compensation received in these cases, except as is permitted by §504(b)(1) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above statements are true and correct.

Dated: July 15, 2022, at New Haven, Connecticut

*/s/ Patrick R. Linsey*
Patrick R. Linsey