**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
HO WAN KWOK,                                                 :    Case No. 22-50073 (JAM)
                                                             :
                     Debtor.                                 :
                                                             :
-------------------------------------------------------------x

**OBJECTION OF CHAPTER 11 TRUSTEE TO DEBTOR'S MOTION FOR RELIEF**
**FROM ORDER APPOINTING LUC A. DESPINS AS CHAPTER 11 TRUSTEE**

To the Honorable United States Bankruptcy Judge Julie A. Manning:

Luc A. Despins, in his capacity as trustee in the above-captioned case filed under chapter 11 of Title 11 of the United States Code (the "Trustee"), respectfully submits this objection (the "Objection") to the *Debtor's Motion for Relief from Order Appointing Luc A. Despins as Chapter 11 Trustee* [Docket No. 561] (the "Motion"). In support of the Objection, the Trustee states as follows:

**PRELIMINARY STATEMENT**

1.       Like any other chapter 11 trustee, the Trustee has only one goal in this chapter 11 case: to retrieve the Debtor's assets and distribute as much thereof as possible and as promptly as possible to holders of allowed claims. The various unrelated allegations raised in the Motion are just a distraction in which neither this Court nor the Trustee should have to get involved. The Motion is a transparent effort by the Debtor to obstruct and delay the Trustee's key task in this chapter 11 case—the collection of estate assets for the benefit of the Debtor's creditors—through the propogation of baseless conspiracy theories. Ordinarily, a debtor and his chapter 11 trustee should be aligned in the objective of locating property of the estate and making such property

available to creditors, but this Debtor's demonstrated objective through years of litigation with his creditors has been to keep his purported billions of dollars in assets outside of their reach through shell companies and transfers to his family members, while he simultaneously retains all the benefits of those assets and uses them to enable his lavish lifestyle.  The Debtor is therefore highly motivated to object to the Trustee's appointment on any and all grounds, regardless of how meritless they may be, to maximize his prospects of maintaining this hidden wealth, both during and after this case.

2.     As explained by Justice Ostrager in his opinion issued after years of litigation and holding the Debtor in contempt for violating orders of the New York Supreme Court, the Debtor "is a self-declared multi-billionaire" who "secreted his assets in a maze of corporate entities and with family members" in a scheme that "has enabled [the Debtor] to assert that he has no assets despite his lavish lifestyle."[1]  Thus, the same Debtor who represents himself to this Court as a pauper has, among other things: (a) "exercised dominion and control"[2] over the *Lady May*, the 150-foot yacht that he now alleges is owned by a company owned by his daughter; (b) continues to enjoy, upon information and belief, the use of the penthouse apartment in the Sherry-Netherland on Fifth Avenue in New York, purchased for more than $70 million, that he now alleges is held in trust for the benefit of a company owned by his son; and (c) maintains a residence in a multi-million dollar estate in Greenwich, Connecticut, that he alleges is owned by a company owned by his wife.[3]  In connection with this case, the Debtor's family members

---

[1]     Decision + Order on Motion, *Pacific Alliance Asia Opportunity Fund L.P. V. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Feb. 9, 2022) (the "Ostrager Decision"), at 1.  The Ostrager Decion is attached hereto as Exhibit A.

[2]     *Id.* at 2.

[3]     According to Zillow, the Debtor's residence at 373 Taconic Road, Greenwich, CT 06831 was purchased in February 2020 for approximatley $4.6 million, has a "Zestimate" of approximately $6.4 million, and features, among other amenities, 7 bedrooms, 10 bathrooms, over 12,000 square feet of liveable space, a pool, and a tennis court.  *See* https://www.zillow.com/homedetails/373-Taconic-Rd-Greenwich-CT-06831/58788820_zpid/

ostensibly offered to fund a $9 million DIP loan and funded a $37 million escrow account to guarantee the return of the *Lady May* yacht to the United States. Incredibly, the Debtor has apparently been chauffeured to this Court in a luxurious Maybach automobile, likely funded as part of the extravagant sums being spent to support the Debtor's lifestyle, as disclosed in the Debtor's filed Monthly Operating Reports, which show, for example, purported third party disbursements made for the benefit of the Debtor of **$161,323.00** for February 2022, a disclosure period of only thirteen days between when the case was filed on February 15, 2022, and February 28, 2022.[4]

3.      In fact, the Debtor has publicy boasted, as recently as November 2017, about what he once described as "his" assets—assets that he only now claims not to own. These assets include, among others: the apartment at the Sherry Netherland overlooking Central Park ("I buy the apartment"[5]); the *Lady May* ("my yacht"[6]); another luxurious apartment in London ("I have the most luxurious apartment in London"[7]); two private jets ("I have two private jets"[8]); and hundreds of race cars ("I have hundreds of race cars"[9]). Indeed, the Debtor's wealth is such that he has stated, "I have the wealthy life that everyone in the world dreams about,"[10] and "I don't have any material needs anymore."[11]

---

(last visited on July 20, 2022).

[4]      Monthly Operating Report for February 2022, at 2 [Docket No. 120].

[5]      *See*, VICE News, *Exiled Chinese Billionaire Uses YouTube to Wage a War on Corruption,* YouTube (original air date on HBO, Nov. 15, 2017), https://www.youtube.com/watch?v=LkOsgh5kcgQ (last visited on July 19, 2022), at 1:20.

[6]      *Id.* at 4:26.

[7]      *Id.* at 6:51.

[8]      *Id.* at 6:57.

[9]      *Id.* at 7:01.

[10]      *Id.* at 6:46.

[11]      *Id.* at 7:06.

4.      The Debtor's strategy for protecting his wealth apparently revolves around the perpetuation of outlandish conspiracy theories and fanciful allegations that have no basis in reality.  One need only look at his social media account for a sampling of the numerous unhinged conspiracy theories and attacks he has launched against the Trustee, Paul Hastings, the United States Trustee Program, the United States Department of Justice, and others.  For example, on July 13, 2022, he wrote: "Ms. Holley L. Claiborn of the DOJ replaced the trustee with Luc A. Despins, who is a scumbag in the legal community, and this was done in a criminal-like manner. This is an insult to the American judicial system and to all Americans!"[12]  He also wrote that "Paul Hastings law firm is a dark door that opens the political, legal and economic [communication] between China and the US,"[13] and the "DOJ collude[d] with the CCP [the Chinese Communist Party] regarding the appointment of the trustee." [14]

5.      These baseless allegations are mere drops from the vast ocean of outlandish conspiracy theories propogated by the Debtor in recent years.[15]  Among many other examples, the Debtor has theorized that the Chinese Communist Party "completely corrupted the American justice system," that "the promotion of vaccines is nonsense," and that "[t]he American economy is in Jewish hands."[16]  Multiple media outlets have reported on the Debtor's *modus operandi* of

---

[12]   Miles Guo, GETTR, July 13, 2022, https://gettr.com/post/p1i4g3t909d (last visited July 19, 2022).

[13]   Miles Guo, GETTR, July 11, 2022, https://gettr.com/post/p1hw7va2f42 (last visited July 19, 2022) (this quote has been informally translated from Chinese).

[14]   Miles Guo, GETTR, July 16, 2022, https://gettr.com/post/p1ik80qfc31(last visited July 19, 2022).

[15]   Notably, the Debtor's accusations have reportedly provoked past incidents of physical violence.  *See e.g.,* Dan Friedman, *A Fugitive Chinese Tycoon Met Steve Bannon. Misinformation Mayhem Ensued.,* Mother Jones (March – April 2022) https://www.motherjones.com/politics/2022/02/guo-wengui-miles-guo-gettr-steve-bannon/ ("On September 21, 2020, after Guo [i.e., the Debtor] lashed out at 'fake pro-democracy activists' who 'should be beaten up as soon as we see them,' a Los Angeles–based anti-CCP activist who goes by Mang Liuzi was assaulted by a Guo acolyte protesting outside his home. A couple months later, two men protesting outside the Vancouver home of Gao Bingchen, a journalist Guo had denounced, attacked a friend of Gao's, kicking him repeatedly in the head and neck as he lay crumpled on the pavement.").

[16]   Each of these quotes is attributed to the Debtor on one of his own websites, GNews.  *See Highlights of Mr. Miles Guo's Live Broadcast on October 10th, 2021*, GNews (Oct. 11, 2021) https://gnews.org/post/p1588300.

spreading misinformation using a network of affiliated websites, social media platforms, companies, and (alleged) non-profit organizations in order to support, among other things, highly questionable business ventures involving the purported sale of securities or cryptocurrency, as well as vitriolic attacks on perceived enemies.[17]  Unsurprisingly, the Debtor is facing a large number of securities fraud and defamation lawsuits,[18] and a proof of claim was recently filed against the Debtor by the Securities and Exchange Commission.[19]

6.    The Debtor's assertions in the Motion are more of the same.  The Debtor devotes most of his attention to a lengthy discussion of numerous incidents and legal proceedings that have nothing to do with this chapter 11 case.[20]  The only allegations he raises that purportedly have some connection to this chapter 11 case relate to Paul Hastings' (i) past representation of entities related to the ultimate parent company of PAX (the "PAG Entities") in unrelated matters

---

*See also*, *e.g.*, Brian Schwartz, *Chinese exile Guo Wengui uses misinformation network to push unproven drugs to treat Covid*, CNBC (Sept. 7, 2021) https://www.cnbc.com/2021/09/07/guo-wengui-pushes-ivermectin-misinformation-network.html; https://foreignpolicy.com/2020/11/02/guo-wengui-steve-bannon-hunter-biden-conspiracies-disinformation/.

[17]   *See e.g.*, Dan Friedman, *A Fugitive Chinese Tycoon Met Steve Bannon. Misinformation Mayhem Ensued*, Mother Jones (March – April 2022) https://www.motherjones.com/politics/2022/02/guo-wengui-miles-guo-gettr-steve-bannon/; Jeanne Whalen, Craig Timberg and Eva Dou, *Chinese businessman with links to Steve Bannon is driving force for a sprawling disinformation network, researchers say*, Washington Post (May 17, 2021, 8:00 a.m. EDT) https://www.washingtonpost.com/technology/2021/05/17/guo-wengui-disinformation-steve-bannon/; Echo Hui and Hagar Cohen, *They once peddled misinformation for Guo Wengui and Steve Bannon. Now they're speaking out*, ABC News (Oct. 31, 2020, 3:12 p.m.) https://www.abc.net.au/news/2020-11-01/behind-the-scenes-of-the-guo-and-bannon-led-propaganda-machine/12830824/.

[18]   *See* Statement of Financial Affairs, at 3 [Docket No. 77].

[19]   *See* Proof of Claim No. 11, Attachment A (describing claim as one for "penalties, disgorgement, and prejudgment interest arising from possible violations of the federal securities laws" and stating that "[t]he Securities and Exchange Commission . . . has been conducting an investigation into certain prebankruptcy conduct involving the debtor").  *See also GTV Media Group, Inc*., Securities Act Release No. 10979, 2021 WL 4149064 ¶ 1, 5 (Sept. 13, 2021) (finding that companies that have been associated with the Debtor (i.e., GTV Media Group, Inc. ("GTV"), Saraca Media Group, Inc., and Voice of Guo Media, Inc.) violated the Securities Act in connection with "solicit[ing] thousands of individuals to invest in an offering of GTV common stock" and "solicit[ing] individuals to invest in their offering of a digital asset security that was referred to as either G-Coins or G-Dollars," thus allowing these companies to "collectively raise[] approximately $487 million from more than 5,000 investors, including individuals in the United States, through approximately July 2020").

[20]   *See* Motion ¶¶ 18-27.

and (ii) offices and business in China.  Neither of these things creates a legitimate issue, however.  The first was addressed in the supplemental declaration filed by the Trustee on July 12, 2022 [Docket No. 538] (the "Supplemental Declaration"), and the second, assuming *arguendo* that the Debtor's outlandish fantasies were true, is irrelevant to the Trustee's appointment, because neither the Chinese government nor the Chinese Communist Party (collectively, the "Chinese Government") is a creditor, or party in interest, in the case.

7.      The Debtor's only actual legal argument—that he is somehow entitled to relief under Rule 60(b)(2) and Rule 60(b)(6) of the Federal Rules of Civil Procedure (the "Rules," and each, a "Rule")[21]—is equally erroneous.  The Debtor falls well short of meeting his burden in connection with the seeking such relief, which case law establishes is only available in exceptional or extraordinary situations.

8.      The Motion should be denied, so that the Trustee may continue the serious business of investigating the Debtor's assets and financial affairs and collecting estate assets in order to maximize recoveries for creditors.

## **OBJECTION**

## I.      **Debtor Fails to Meet Burden for Relief Under Rule 60(b)(2)**

9.      Rule 60(b)(2) allows a court, at its discretion, to grant relief from a final judgment in the event of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  *See Reese v. McGraw-Hill Companies, Inc.,* 293 F.R.D. 617, 621–22 (S.D.N.Y. 2013), *aff'd sub nom. Reese v. Bahash,* 574 F. App'x 21 (2d Cir. 2014) ("The decision whether to grant such a motion rests within the district

---

[21]    With the exception of certain circumstances not relevant here, Rule 60 is applicable to bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9024.

court's sound discretion." (quoting *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391 (2d Cir. 2001)).

10.    A motion pursuant to Rule 60(b)(2) is "generally not favored" and is "properly granted only upon a showing of exceptional circumstances."  *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391 (2d Cir. 2001); *see also Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986) ("Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances.").

11.    Moreover, as explained by the Court in *Reese v. McGraw-Hill Companies, Inc.,* citing *United States v. Int'l Bhd. of Teamsters*:

> A party seeking relief pursuant to Rule 60(b)(2) must meet an "**onerous**" standard, and it has the burden of demonstrating each of the following four elements:
>> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, **and** (4) the evidence must not be merely cumulative or impeaching.

*Id.* (emphasis added) (internal citations omitted).  *See also Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.,* No. 11 CIV. 9718 (ER), 2017 WL 456466, at *7 (S.D.N.Y. Feb. 1, 2017 (same); *Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.,* 228 F.R.D. 125, 129 (N.D.N.Y. 2005), *aff'd sub nom. Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs., Inc.,* 172 F. App'x 382 (2d Cir. 2006) (same).

12.    Here, the Debtor has failed to meet the onerous burden imposed by Rule 60(b)(2). The Motion raises no newly discovered evidence of which the Debtor was justifiably ignorant despite due diligence or that would have been of such importance that it would have changed the outcome of the hearing on the Trustee's appointment (the "July 8 Hearing").

13.    The fact that Paul Hastings (like numerous other U.S. law firms) has offices in China and does business in China was public knowledge that the Debtor or his counsel could have discovered in a few minutes of internet research upon the United States Trustee's appointment of the Trustee becoming public on July 7, 2022, the day before the hearing.[22]  This is not newly discovered evidence of which the Debtor was justifiably ignorant.

14.    Nor would information regarding Paul Hastings' business in China have changed the outcome of the July 8 Hearing.  Among many other reasons, this is because the Chinese Government is not a creditor or party in interest in this chapter 11 case:  the Debtor did not list the Chinese Government on his schedules, and the Chinese Government has not filed a proof claim, notice of appearance, or other pleading. *See In re MF Glob. Holdings Ltd.,* 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012) ("an entity that does not hold a financial stake in the case is generally excluded from the definition of 'party in interest.'" (citing 7 COLLIER ON BANKRUPTCY ¶ 1109.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011))); *In re City of Bridgeport*, 128 B.R. 30, 31-32 (Bankr. D. Conn. 1991) (concept of party in interest "has come to mean an entity that has a direct legal interest at issue in the case").  Therefore, the disclosure that the Debtor apparently thinks was required—regarding all of Paul Hastings' business and clients in China—would be irrelevant for purposes of the issue of the Trustee's disinterestedness and appointment.

15.    Fundamentally, the entire premise underlying the Motion—that a U.S.-based law firm doing business in China must be beholden to or controlled by the Chinese government—is the stuff of unhinged internet conspiracy theories.  By the Debtor's logic, every U.S. company

---

[22]    *See* Notice of Appointment of Chapter 11 Trustee [Docket No. 514]; Application for Appointment of Chapter 11 Trustee [Docket No. 515].

doing business in China would be tainted by, and doing the bidding of, the Chinese Government. The Court cannot permit the Debtor to delay the progress of this chapter 11 case using these kinds of baseless allegations. As Justice Ostrager warned after the Debtor's "evasive and contemptuous act[s]"[23] had dragged out litigation with PAX in the New York Supreme Court for five years, "if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law."[24] The Debtor should not be allowed to play the same games before this Court.

16.    Similarly, no newly discovered evidence regarding Paul Hastings' relationship with the PAG Entities could justify Rule 60(b)(2) relief. The Debtor's counsel was aware of the existence of the connection with the PAG Entities disclosed at the July 8 Hearing and, when pressed by the Court, refused to object to the appointment of the Trustee.[25] The issue was then addressed and disposed of in the Supplemental Declaration.

17.    Given the above, the Court should deny the Debtor's request for relief under Rule 60(b)(2).

## II.    Debtor Fails to Meet Burden Under Rule 60(b)(6)

18.    Rule 60(b)(6), under which a court may, at its discretion, grant relief from a final judgment based on "any other reason that justifies relief," imposes an even more difficult burden upon the movant than Rule 60(b)(2). Such relief is rarely appropriate and only available in

---

[23] Ostrager Decision, at 7. ("The machinations associated with the shell game Kwok has orchestrated with respect to the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken during the five years this litigation has been pending, which is why there are 1,180 docket entries in this case.").

[24] *Id.* at 10.

[25] *See* Transcript, July 8, 2022 Hearing, attached hereto as Exhibit B, at 13:14-24 (in response to Court's statement that "unless someone has some other concern or argument that they want to advance about Mr. Despins being the Chapter 11 trustee, then I'm going to grant the United States Trustee's application and enter an order approving the appointment of Mr. Despins as the Chapter 11 trustee in this case . . . I'm giving everyone one last opportunity to tell me why I should not do that," Debtor's counsel replied, "[w]e have nothing further to add other than what I already said").

"extraordinary circumstances." *See Gainey v. Murray*, No. 05-CV-00532F, 2013 WL 5488452, at *2 (W.D.N.Y. Sept. 30, 2013) ("Relief under Rule 60(b)(6) is . . . rare, and viable only in extraordinary circumstances [and] [s]uch relief is to be used sparingly.") (internal citations and quotation marks omitted); s*ee also Gonzalez v. Crosby*, 545 U.S. 524, 535, 125 S. Ct. 2641, 2649, 162 L. Ed. 2d 480 (2005) ("[C]ases have required a movant seeking relief under Rule 60(b)(6) to show extraordinary circumstances justifying the reopening of a final judgment.") (internal citations and quotation marks removed); *178 E. 80th St. Owners, Inc. v. Jenkins*, No. 00 CIV 5959RCCFM JM, 2001 WL 619063, at *9 (S.D.N.Y. June 5, 2001) (Rule 60(b)(6) is "properly invoked only when the movant establishes the existence of extraordinary circumstances or that the judgment would work an extreme and undue hardship." (citing *In re Emergency Beacon Corp., 666 F.2d 754, 758–59 (2d Cir.1981))).* Moreover, the movant under Rule 60(b)(6) must provide "highly convincing" evidence justifying relief. *See In re Taub*, 421 B.R. 37, 42 (Bankr. E.D.N.Y. 2009) (quoting *Boehner v. Heise,* No. 03 Civ. 05453 (THK)*, 2009* WL 1360975, at *5 (S.D.N.Y. May 14, 2009)).

19.    Here, the Debtor bases his argument in favor of Rule 60(b)(6) relief on the same "newly discovered evidence" theory that, as discussed above, could never support relief under Rule 60(b)(2), let alone Rule 60(b)(6).[26]  The Debtor has failed to demonstrate the extraordinary circumstances supported by highly convincing evidence that could justify relief under Rule 60(b)(6), and his request for such relief should be denied.

## CONCLUSION

20.    For the foregoing reasons, the Court should deny the Debtor's Motion.

---

[26]    *See* Motion ¶ 47 ("Because the Court relied upon incomplete evidence in entering the Despins Appointment Order as a result of the failure of the Trustee and the UST to make full disclosures to the Court, justice is best served by vacating the Despins Appointment Order.").

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion.

Dated:    July 20, 2022                    LUC A. DESPINS,
          New Haven, Connecticut        CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
     Patrick R. Linsey (ct29437)
     NEUBERT, PEPE & MONTEITH, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     (203) 781-2847
     plinsey@npmlaw.com

        *and*

     Nicholas A. Bassett (*pro hac vice* pending)
     PAUL HASTINGS LLP
     2050 M Street NW
     Washington, D.C., 20036
     (202) 551-1902
     nicholasbassett@paulhastings.com