**<u>Exhibit B</u>**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK, | * | Bridgeport, Connecticut |
| | * | July 8, 2022 |
| Debtor. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF APPLICATION FOR ORDER APPROVING
APPOINTMENT OF CHAPTER 11 TRUSTEE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | WILLIAM R. BALDIGA, ESQ.<br>Brown Rudnick, LLP<br>Seven Times Square<br>New York, NY  10036 |
| For the Creditor, Pacific<br> Alliance Asia Opportunity<br> Fund L.P.: | PETER FRIEDMAN, ESQ.<br>STUART M. SARNOFF, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| | PATRICK BIRNEY, ESQ.<br>Robinson & Cole<br>28 Trumbull Street<br>Hartford, CT  06103 |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES Cont'd:

```
For the Creditors Committee:   IRVE GOLDMAN, ESQ.
                               Pullman & Comley
                               850 Main Street
                               Bridgeport, CT  06601


For the Creditor, Rui Ma:      KRISTEN MAYHEW, ESQ.
                               McElroy Deutsch Mulvaney &
                                Carpenter
                               225 Liberty Street
                               36th Floor
                               New York, NY  10281


For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the United States
                                  Trustee
                               The Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510


For HK International Funds      STEPHEN R. KINDSETH, ESQ.
 Investments (USA) Limited,     Zeisler & Zeisler
 LLC:                           10 Middle Street, 15th FL.
                               Bridgeport, CT  06604


For the Creditor,              JAY MARSHALL WOLMAN, ESQ.
 Logan Cheng:                  Randazza Legal Group, PLLC
                               100 Pearl Street, 14th Floor
                               Hartford, CT  06103
```

1 (Proceedings commenced at 10:02 a.m.)

2 THE CLERK:  Case No. 22-50073, Ho Wan Kwok.

3 THE COURT:  Okay.  Good morning.  If we could have

4 appearances for the record, please, starting with the

5 debtor's counsel.

6 MR. BALDIGA:  Good morning, Your Honor.  William

7 Baldiga, Brown Rudnick, for the debtor.

8 THE COURT:  Good morning.

9 Counsel for PAX, please.

10 MR. FRIEDMAN:  Good morning, Your Honor.  Peter

11 Friedman, from O'Melveny & Meyers, on behalf of Pacific

12 Alliance Group.  I see Mr. Sarnoff and Mr. Birney, of the

13 Robinson & Cole firm as well this morning, on behalf of PAX.

14 THE COURT:  Good morning.

15 Counsel for the creditors committee?

16 MR. GOLDMAN:  Good morning, Your Honor.  Irve

17 Goldman, Pullman & Comley, representing the creditors

18 committee.

19 THE COURT:  Good morning.

20 Counsel for Rui Ma?

21 MS. MAYHEW:  Good morning, Your Honor.  Kristen

22 Mayhew, McElroy Deutsch Mulvaney & Carpenter, on behalf of

23 creditors Rui Ma, Zheng Wu and Weican Meng.

24 THE COURT:  Good morning.

25 The Office of the United States Trustee?

4

1          MS. CLAIBORN:  Good morning, Your Honor.  Holley

2     Claiborn for the U.S. Trustee.  And also with me this

3     morning is the Chapter 11 trustee candidate, Attorney Luc

4     Despins.

5          THE COURT:  Good morning.  Good morning to both of

6     you.

7          MR. DESPINS:  Good morning, Your Honor.

8          THE COURT:  Okay.  I also see counsel for HK

9     International.

10          MR. KINDSETH:  Yes, Your Honor.  Good morning.

11     Stephen Kindseth, Zeisler & Zeisler, for HK International

12     Funds Investments.

13          THE COURT:  Good morning.

14          And Attorney Wolman?  I see you today --

15          MR. WOLMAN:  Good morning, Your Honor.

16          THE COURT:  -- so I didn't forget to say hello.

17     But I often -- for some times the screen cuts you off for

18     some reason, but I see you this morning.  So go right ahead.

19          MR. WOLMAN:  Thank you, Your Honor.  Good morning.

20     This is Jay Wolman, of Randazza Legal Group, for creditor

21     Logan Cheng.

22          THE COURT:  Good morning.

23          So I think that's everyone that has -- everyone

24     that I see, anyway, has noted their appearance.  Is that

25     correct?

1    (No audible response.)

2         THE COURT:  Okay.  So we'll proceed with this

3    hearing this morning on the United States Trustee's motion

4    -- application for the order approving the United States

5    Trustee's appointment of a Chapter 11 trustee.

6         Attorney Claiborn, you -- please proceed.

7         MS. CLAIBORN:  Thank you, Your Honor.  Good

8    morning.

9         Before the Court this morning is the United States

10   Trustee's application for an order approving the appointment

11   of Mr. Despins as the Chapter 11 trustee.  Mr. Despins has a

12   significant Chapter 11 history practice in his firm and in

13   his past.  He's been a member of the bar for over 30 years.

14        And the U.S. Trustee has attached to the

15   application a declaration of disinterestedness, which sets

16   forth his connections and his contacts with various parties

17   in this case, and with creditors and with the debtor.

18        And based upon that the U.S. Trustee's requested

19   the Court approve the application this morning.

20        I do, however, want to bring to the Court's

21   attention that this morning we learned there are some

22   additional disclosures that need to be made and will be made

23   by Attorney Despins as to connections with entities that are

24   connected to, we believe, PAX.

25        And Mr. Despins can put a finer point on that and

6

1     address the Court and explain.  And, again, that will be

2     followed by a supplemental disclosure that will be filed

3     with the Court as soon as possible in the hope that that is

4     within a matter of just a day or two.

5          So, with that, Your Honor, if I could ask Mr.

6     Despins to address the Court about the supplemental

7     disclosures that are not yet before the Court in writing?

8          THE COURT:  Yes, please.  Go right ahead.

9          MR. DESPINS:  Good morning, Your Honor.

10         As I stated in paragraph 11 of my declaration, I

11    said that to the extent we learned of new connections that

12    were not known to us at the time I submitted the

13    declaration, we would update our disclosure statement and I

14    will do that in writing.

15         But I wanted to make sure today that I mentioned

16    to the Court that we discovered last night that we have in

17    the past represented entities that have -- that are -- have

18    the acronym PAG in them, P-A-G.  Unbeknownst to our conflict

19    system, PAG means Pacific Asia Group.

20         And those entities -- and, again, as I said, these

21    are representations that were completed, but these entities

22    are unrelated to the Kwok matter in any way.

23         However, PAX is probably managed by a similar or a

24    PAG entity of some kind.  We're trying to figure out exactly

25    which one.

1          But it doesn't change anything from our point of

2     view in a sense that we still believe we're disinterested,

3     we can be adverse to PAX, not that we are seeking that, but

4     we're -- we can be adverse to PAX.  And, therefore, it

5     doesn't change the declaration.

6          But given that these P-A-G entities are somehow

7     related to PAX, I wanted to bring that to the attention of

8     the Court early on this morning.

9          And I did, by the way, not only with the U.S.

10    Trustee, but I mentioned this to Mr. Friedman, you know,

11    around 8:45 this morning.

12          THE COURT:  Okay.  Thank you.  And when you say

13    we, you're speaking of the firm of Paul Hastings?

14          MR. DESPINS:  Yes.  Yes.  Yes.  Yes.  But

15    personally, I've never had any representation of PAG.  I

16    didn't even know it existed frankly until last night.

17          THE COURT:  Understood.  Understood, obviously,

18    with the firm having offices in different areas of the

19    world.  That's why I was asking when you said we, you mean

20    Paul Hastings, not you individually?

21          MR. DESPINS:  That's correct, Your Honor.

22          THE COURT:  Okay.  Thank you.

23          I see a gentleman.  Mr. Bassett, are you a counsel

24    in this case?  I don't recognize you and I'm sorry if I

25    should, but I don't.

1          MR. BASSETT:  Your Honor, I'm with Paul Hastings.

2          THE COURT:  Okay.

3          MR. BASSETT:  I would be serving as counsel to Mr.

4    Despins in his capacity as trustee.

5          THE COURT:  Okay.  Well, Mr. Despins, I don't

6    think you need to file an appearance because you're the

7    Chapter 11 trustee.

8          If Mr. Bassett and/or your firm is going to be

9    proposed to be counsel to you, acting as the Chapter 11

10   trustee, as you know, you'll have to file an application.

11   And Mr. Bassett and any other members of Paul Hastings will

12   have to file notices of appearance and/or pro hac motions,

13   depending upon whether they're admitted to the District

14   Court of Connecticut.  And you'll take care of that.

15         MR. DESPINS:  Yes.

16         THE COURT:  So that's why I didn't recognize Mr.

17   Bassett.

18         You haven't been involved in any of the other

19   hearings.  So that's -- I'm glad at least that it was --

20   that I was correct that I hadn't seen you before.

21         But in any event, with regard to the United States

22   Trustee's application to -- for an order approving the

23   appointment of a Chapter 11 trustee, does any party wish to

24   be heard?

25         MR. FRIEDMAN:  Your Honor, it's Peter Friedman

1    from O'Melveny.

2           We don't have an issue directly with Mr. Despins.

3    We just -- Mr. Despins just mentioned he disclosed at 8:45

4    this morning that his firm had had some involvement with the

5    parent of our client, which I think is actually -- the

6    correct terminology for that is Pacific Alliance Group,

7    which is slightly different than our fund, Pacific Asia

8    Opportunity Fund, but we do obviously need to consult with

9    our client as to the nature of the relationship.  I don't --

10   I'm not saying that there is an issue.

11          It is midnight or 10 p.m. in Hong Kong already,

12   which is where our client is located.

13          And to the extent that our client needs to look at

14   any files -- I don't know if that's doable over the weekend

15   -- but I think that might be a Paul Hastings issue as

16   opposed to a trustee issue.  But this is a, you know, a

17   late-breaking development.

18          And I guess that I can't say it's a concern, but I

19   do think it's important to mention to the Court in this

20   context that, you know, it's just something that we'll have

21   to look at in the context of a retention of Paul Hastings.

22          And, you know, Your Honor, I think, just as I said

23   at every hearing we will be constructive.  We will work

24   closely with Mr. Despins, who I have encountered over the

25   years in other Chapter 11 cases.

1        I have high respect for Mr. Despins.  He was

2  counsel to the creditors committee in Puerto Rico where I

3  represented the debtor.  So I've been adverse to him and on

4  the same side of the (indiscernible) over the last five

5  years.

6        You know, we are concerned about expense.  We will

7  do everything we can.  And we hope everything can be done by

8  Mr. Despins and Paul Hastings to -- you know, especially in

9  light of the circumstances of this debtor having a very

10  limited available -- readily available fund.  We really hope

11  that there will be, you know, as much cost efficiency as

12  possible given the size of the estate at current.

13        And, you know, with those comments, we look

14  forward to hopefully a successful trustee appointment.

15        And if there are issues relating to past retention

16  or employment of Paul Hastings by our client, we will

17  obviously have to address those in the future.

18        THE COURT:  Okay.  Thank you, Attorney Friedman.

19        Does anyone else wish to be heard?

20        MR. GOLDMAN:  Your Honor, Irve Goldman for the

21  committee.

22        This is the first time I'm hearing about this

23  additional disclosure.  I would have the same caveat as Mr.

24  Friedman and would hope that he would share his diligence

25  with the committee so we can take a closer look and evaluate

11

1      this additional connection.

2              We're not looking to upset this appointment, but

3      just with the same ideas Mr. Friedman articulated, we'd just

4      want to consider it further.

5              THE COURT:  Well, do you agree that it's an issue

6      with regard -- as Attorney Friedman said -- that it would be

7      an issue with regard to the retention of Paul Hastings as

8      counsel versus Mr. Despins as Chapter 11 trustee?

9              MR. GOLDMAN:  Yes, I do.  He's made it clear that

10     he had no connection, wasn't even aware of the existence of

11     this entity.  So with that, I agree it's an retention

12     issue.

13             THE COURT:  Okay.  Thank you.

14             Does anyone else wish to be heard?

15             MR. BALDIGA:  Yes, Your Honor.  William Baldiga,

16     Brown Rudnick, for the debtor.

17             THE COURT:  Go right ahead.

18             MR. BALDIGA:  We have the same qualification

19     concern.  We share Brown Rudnick's great respect for Paul

20     Hastings, and Mr. Despins more specifically, but we will

21     need to understand the new disclosures exactly given that

22     PAG is the business behind the fund which is PAX.  And PAX

23     is obviously the largest creditor by far of the estate. So I

24     think we all need to understand that.

25             THE COURT:  Do you, Mr. Baldiga, agree with what

12

1    -- the question I just asked Attorney Goldman?

2           Then is your concern more with regard to Paul

3    Hastings being retained as counsel and not with Mr. Despins

4    serving as the Chapter 11 trustee?  Or do you have a concern

5    even with Mr. Despins serving as the Chapter 11 trustee?

6           MR. BALDIGA:  I don't know yet.  I think -- I'm

7    not sure we're going to have -- going to have any concerns.

8    But to the extent we do, I think it's premature to assess

9    what those would be exactly until we see the disclosure and

10   have an opportunity to talk to the client about that.

11          THE COURT:  And that's fine, because the

12   bankruptcy code has provisions with regard to if someone

13   thought that the trustee as appointed should no longer serve

14   as the trustee.  So I don't -- I do not see an impediment to

15   the appointment of Mr. Despins as the Chapter 11 trustee

16   today unless someone wants to persuade me otherwise.

17          MR. BALDIGA:  We just haven't seen anything, so we

18   -- it's hard to do a persuasive argument, Your Honor, with

19   just finding out about this during the course of the

20   hearing.

21          THE COURT:  I understand.  I do understand what

22   you're saying.

23          But I'm talking about right now, today, the only

24   thing before the Court is the appointment of Mr. Despins as

25   the Chapter 11 trustee.

13

1      And no one has put forth any reason at this point

2  as to why that should not occur.  And if it occurs and then

3  you find some reason, then you have remedies under the

4  bankruptcy code to address those reasons.

5      We're not going to wait any longer for the

6  appointment of a Chapter 11 trustee.  I mean, the decision

7  was issued on June 15th.  It's July 8th.

8      My understanding -- and maybe that's why Attorney

9  Kindseth is here today -- is that the yacht is in Bridgeport

10  Steelpointe Harbor.  So the Lady May is here.  It arrived on

11  the 6th at night is my understanding.  So there's plenty for

12  Mr. Despins to do as soon as an order enters.  And I don't

13  see any reason for delay.

14      So unless someone has some other concern or

15  argument that they want to advance about Mr. Despins being

16  the Chapter 11 trustee, then I'm going to grant the United

17  States Trustee's application and enter an order approving

18  the appointment of Mr. Despins as the Chapter 11 trustee in

19  this case.

20      So I'm giving everyone one last opportunity to

21  tell me why I should not do that.

22      MR. BALDIGA:  Your Honor, William Baldiga again.

23      We have nothing further to add other than what I

24  already said.

25      THE COURT:  Okay.  Thank you.

14

1          MR. BALDIGA:  And that's just we don't have the

2     disclosure to make a final decision on that.

3          THE COURT:  Okay.  Thank you.

4          Anyone else wish to be heard?

5     (No audible response.)

6          THE COURT:  All right.  Then, Mr. Despins, I know

7     you will continue to review the issues that you've already

8     discussed on the record and that you've already set forth in

9     your affidavit.  Whenever you have an opportunity in the

10    next -- you know, soon to make further disclosures, please

11    do.

12         But as of now, as of 10:19 a.m., on July 8th, the

13    Court is ordering that the application of the U.S. Trustee

14    is granted and that you're appointed as the -- you will be

15    serving as the Chapter 11 trustee in this case.  And I

16    appreciate your willingness to do so.

17         As I noted for the record, and, Attorney Kindseth,

18    you should correct me if I'm wrong, but one of the -- I

19    don't know what you've looked at, if anything, Mr. Despins,

20    yet, but one of the issues in this case that's now almost

21    five months old, but not quite, was the debtor's pledge of a

22    -- of this yacht, the Lady May, to a plan, which of course

23    is not on track at the moment.  But there was also an

24    agreement that the Lady May would be brought back into the

25    navigable waters of Connecticut.

15

1          And my understanding is that occurred on July -- I

2     suppose I could go outside and go look quite frankly. It's

3     not that far away -- on July 6th.  And that is -- that was

4     an issue of contention among the parties, both before this

5     Chapter 11 case was filed and after the Chapter 11 case was

6     filed.

7          So there seems to me, in addition to the yacht,

8     the Lady May, other issues that there are plenty of things

9     that you could become -- that you could become involved in

10    fairly quickly, if not immediately, in this matter.

11         MR. DESPINS:  Yes, Your Honor.  We are aware of

12    the situation.

13         In fact, we have already contacted counsel that

14    were parties to the stipulation, docket number 299, that

15    Your Honor entered a while ago, and I've asked them to

16    consent to the trustee having the same rights as PAX and the

17    official committee under that stipulation.

18         We received some response that request but notfrom

19    everyone, so we expect to obviously -- to us it's a no

20    brainer that that needs to happen.  But we expect to be back

21    in front of the Court to modify the stipulation to ensure

22    that the trustee has exactly the same rights as PAX or the

23    official committee.  Thank you, Your Honor.

24         THE COURT:  Thank you.

25         MR. FRIEDMAN:  Your Honor, on the record -- it's

16

1    Peter Friedman on behalf of PAX --

2              THE COURT:  Yes.

3              MR. FRIEDMAN:  -- we consent to that.  We consent

4    to that request.

5              THE COURT:  Okay.  Thank you.

6              And I would note that there are, Mr. Despins,

7    other provisions of that stipulation that I believe anyway,

8    but I don't have it in front of me, and you're all the

9    lawyers so you will figure it out, but that still need to be

10   -- there still needs to be compliance with other provisions

11   in that stipulation once the boat was returned to the

12   navigable waters.

13             So there are other issues that still need to be

14   addressed in that stipulation now that the yacht is back in

15   the navigable waters of Connecticut.

16             So in any event, to let you all know, Monday,

17   Tuesday and Wednesday of next week, I have to attend

18   required meetings.  But if there is a need for a hearing, I

19   could -- I could have one at some point during any of those

20   three days at some time, but I will be remote, as will you.

21             But once we get over this hurdle of the next few

22   days, then, you know, our hearings are going to be in person

23   for the most part.  This is a case where we need to make

24   sure that we're all on the same page.

25             And while I truly agree that remote hearings serve

17

1    a very valuable purpose and can be very helpful, given what

2    has occurred in this case, we're going to be coming together

3    in person.  Okay?

4          So, I mean, there may be a situation if we're

5    having a five-minute discussion that we could turn to

6    remote, but I would like everyone to understand that we are

7    going to be here in person.  Okay?

8          MR. DESPINS:  Yes, Your Honor.

9          THE COURT:  All right.  Is there anything further

10   we should address today?

11         Attorney Claiborn, your order approving

12   appointment of Chapter 11 trustee that was attached to the

13   application, I actually -- I would like to change it to an

14   order granting the appointment and that's what I'm going to

15   do.  Otherwise, the proposed order is fine with me.

16         Are there any other changes that anyone else

17   wanted to make to the order, Attorney Claiborn, that you're

18   aware of?

19         MS. CLAIBORN:  No, Your Honor.

20         THE COURT:  Anyone else wish to be heard on the

21   proposed order that Attorney --

22         Oh, the only thing, Attorney Claiborn, that -- the

23   amount of the bond, that may have to change during the

24   course of this case I would assume.

25         MS. CLAIBORN:  It is a fluid issue, Your Honor.

18

1          THE COURT:  Okay.

2          MS. CLAIBORN:  And that is just a starting point

3    for the cash that we know that will be coming to Mr. Despins

4    hopefully in short order from the debtor.

5          But it will have to be adjusted upward in the

6    event that there is money that comes to the estate that Mr.

7    Despins is responsible for.

8          THE COURT:  Great.  I just -- I mean, your order

9    does say that, but I wanted to be clear on that, that I

10   would anticipate that there would have to be a change in the

11   amount of the bond during the case.  Okay?

12         MS. CLAIBORN:  Yes, Your Honor.

13         MR. KINDSETH:  Your Honor, would you like an

14   update on the Lady May?

15         THE COURT:  Sure.

16         MR. KINDSETH:  Thank you very much.

17         So as Your Honor noted, the Lady May returned to

18   Connecticut, specifically to Bridgeport, on July 6th.  In

19   the week prior -- a week or two prior -- I reached out to

20   counsel for the creditors committee and counsel for PAX,

21   concerning the inspection that they are entitled to conduct.

22         Just to remind Your Honor, the other elements of

23   the stipulation are that the captain and the yacht

24   management company are served with this court's order, they

25   signed a declaration attesting to certain items that are set

19

1    forth in the stipulation, and that this court provides for

2    repair reserves to fund the remaining repairs to the Lady

3    May.

4          All the repairs were done except for the -- to my

5    knowledge -- the replacement of the sea inlet valves.  We're

6    in the process of obtaining two estimates for the cost of

7    that, which would guide us with respect to proposing a

8    repair reserve.

9          We are also in touch, as I said, with counsel for

10   PAX and the creditors committee to coordinate their

11   inspection.  So hopefully their inspection will take place

12   next week.  We're hoping that we can have a joint proposed

13   motion approving the repair reserve.

14         Once the repair reserve is put in place, I can

15   then file the certification that each of the elements of the

16   stipulation that my client is obligated to perform has been

17   performed.  The various other parties would then have 15

18   days from the filing of that certification to object.

19         I spoke to the then proposed trustee, the now

20   trustee, Mr. Despins, this morning and expressed tentatively

21   my client's understanding and agreement that he would be

22   having the same rights and obligations and really a party to

23   the stipulation.

24         Our hope is that we would be drafting a proposed

25   stipulated modification to the existing order simply having

1    Mr. Despins as an additional party to the existing

2    stipulation.

3              And so that's the status of the Lady May.

4              THE COURT:  Thank you.

5              The other provision that I believe you didn't --

6    you did not mention with regard to the stipulation was that

7    the captain and the -- I don't remember what the other name

8    -- whether it was a harbor master, whomever, would also be

9    restrained, agreed to be restrained, from removing the boat

10   from the navigable waters of Connecticut once it arrived.

11             MR. KINDSETH:  That's one of the elements of the

12   declaration, yes.

13             THE COURT:  Okay.

14             MR. KINDSETH:  The declaration has multiple

15   elements, one of which is that they understand they're

16   restrained from removing the yacht from the navigable waters

17   of Connecticut.

18             THE COURT:  I just -- I think that's an important

19   provision to note for especially Mr. Despins who's just

20   become involved so that he's aware of that.

21             MR. KINDSETH:  Agreed.

22             THE COURT:  Okay?  All right.  Anything further

23   that we need to address today in the Kwok matter?

24             MS. CLAIBORN:  No, Your Honor.

25             THE COURT:  All right.  Then the United States

21

1    Trustee's application for an order approving the appointment

2    of a Chapter 11 trustee is granted and the proposed order

3    will enter.

4            MS. CLAIBORN:  Thank you, Your Honor.

5            THE COURT:  All right.  Thank you, all.

6            MR. DESPINS:  Thank you, Your Honor.

7            THE COURT:  And that is the last matter on the

8    calendar this morning, so court is adjourned.

9        (Proceedings concluded at 10:28 a.m.)

10       I, CHRISTINE FIORE, court-approved transcriber and

11   certified electronic reporter and transcriber, certify that

12   the foregoing is a correct transcript from the official

13   electronic sound recording of the proceedings in the above-

14   entitled matter.

15

16   *Christine Fiore*

17   _____        July 13, 2022

18    Christine Fiore, CERT

19        Transcriber

20

21

22

23

24

25