**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
Benjamin Y. Kaufman (admitted *pro hac vice*)
kaufman@whafh.com
Malcolm T. Brown (admitted *pro hac vice*)
brown@whafh.com
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600


**LYNCH DASKAL EMERY LLP**
Bernard Daskal (admitted *pro hac vice*)
daskal@lde.law
Xun Chen (admitted *pro hac vice*)
chen@lde.law
137 W. 25th St.
New York, NY 10001
Tel.: (212) 302-2400

*Attorneys for Plaintiffs Rong Zhang, Xiaodan Wang, and*
*Chong Shen Raphanella and Proposed Lead Counsel for the Class*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rong Zhang, Xiaodan Wang, and Chong Shen Raphanella | No. CV-21-01079-PHX-SMB |
| Plaintiffs, | **FIRST AMENDED** |
| v. | **CLASS ACTION COMPLAINT** |
| Voice of Guo Media, Inc., GTV Media Group, Inc., Saraca Media Group Inc., Rule of Law Foundation III, Inc., Rule of Law Society IV Inc., Sara Wei a/k/a/ Lihong Wei Lafrenz, and Wengui Guo a/k/a Miles Guo a/k/a/ Ho Wan Kwok a/k/a Miles Kwok a/k/a Nan Wu a/k/a Haoyun Guo, | |
| Defendants. | |

Plaintiffs Rong Zhang, Xiaodan Wang, and Chong Shen Raphanella ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by the undersigned attorneys, allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the defendants' public documents, announcements made by defendants, wire and press releases, public filings on judicial dockets, the administrative proceeding before the United States Securities and Exchange Commission ("SEC") entitled *In the Matter of GTV Media Group, Inc., et al*., Admin. Proc. File No. 3-20537 (the "Administrative Proceeding"), and information readily available on the Internet. Plaintiffs additionally believe that substantial evidentiary support will exist for these allegations after a reasonable opportunity for discovery.

## I.   NATURE OF THE ACTION

1.   This class action involves a scheme to defraud investors in the Chinese diaspora (among others) of their hard-earned money by defendant Miles Guo ("Guo"), a wealthy Chinese businessman with a multi-media empire, defendant Sara Wei ("Wei"), one of the most visible leaders within Guo's empire of affiliated companies and related entities, and the defendant entities operated and controlled by Guo and/or Wei.

2.   From approximately April 2020 through June 2020, defendants Guo, Wei, GTV Media Group, Inc. ("GTV"), Saraca Media Group Inc. ("Saraca"), Voice of Guo Media, Inc. ("VOG") publicly solicited thousands of individuals to invest in a purported private stock offering of GTV common stock.  Guo promoted the GTV offering as an opportunity for investors to be on the ground floor of a new media platform designed to allow its members to exchange in the free flow of information about the People's Republic of China, outside of the Chinese government's control and influence and thereby provide an alternative means of communication for those within Chinese communities around the world.  According to Guo, the platform would have a significant user-base because it

would be outside the People's Republic of China's considerable oversight of its domestic media channels.

3.      Guo and Wei marketed the unregistered shares of GTV common stock to potential investors via multiple media channels – such as *www.gtv.org*, and *www.gnews.org* (Guo-controlled websites), and social media platforms Guo Media, YouTube, Twitter, and Discord, as being risk-free and highly lucrative.  Investment materials on Guo's website *www.gnews.org* included broad statements such as, "From a business perspective, there is no risk whatsoever, so long as you have trust."[1]

4.      Guo solicited investment in GTV through two channels. *First*, Guo offered direct investment in GTV through a purportedly private stock offering to accredited investors at a minimum investment of $100,000.  *Second*, Guo offered indirect investment in GTV to accredited and unaccredited investors unable to meet the $100,000 minimum threshold of the stock offering.  Guo represented to the second group of investors that: (a) they could purchase shares of GTV common stock through Wei and VOG; (b) there was no minimum investment to purchase GTV securities through Wei and VOG; and (c) Wei would pool the investors' funds and purchase shares of GTV through VOG on their behalves.

5.      Guo, Saraca, and GTV furnished Wei and VOG with documents to provide potential investors seeking to purchase GTV securities through the second alternative.  ***As a condition precedent to investment***, however, Guo mandated that these potential investors make a demonstration of loyalty to him and his proclaimed cause of combatting the Chinese government by donating to Guo's not-for-profits Rule of Law Foundation III

---

[1] https://gnews.org/zh-hans/202004/.  *See* Brian Spegele & Sha Hua, *Fundraising Feud Spurs Anger Among a Chinese Exile, His Followers and His Detractors*, Wall St. J. (Oct. 4, 2020), *available at* https://www.wsj.com/articles/fundraising-feud-spurs-anger-among-a-chinese-exile-his-followers-and-his-detractors-11601828700 (same).

Inc. ("Rule of Law Foundation") and Rule of Law Society IV Inc. ("Rule of Law Society"),[2] or Guo himself.

6. Guo used the mandate as a means to further entice potential investors by "virtue signaling" GTV's purported commitment to combating the Chinese government. As the founder and owner of the ROL Entities, Guo required the donations as a precondition to investment in order to enrich himself and the ROL Entities.

7. Plaintiffs and the Class (defined below) made donations to one of the ROL Entities or Guo and purchased GTV securities through Wei and VOG but were ***never issued GTV common stock***. Investors who demanded their money back received nothing, which further indicated that the heavily marketed investment opportunity to get on the ground floor of GTV's new media platform was neither risk-free, lucrative, nor real. Guo and Wei never intended to use the money obtained by VOG to purchase GTV securities actually be used for that purpose. Unbeknownst to investors, Wei transferred more than half of the proceeds obtained from investors to bank accounts under the control of Guo, Saraca and GTV, and kept the rest in bank accounts under the control of herself and VOG.

8. Through a relentless campaign, Guo and Wei convinced Plaintiffs and the Class to invest their hard-earned money in a worthless venture. GTV securities were never registered (or subject to any exemption from registration) per state or federal regulations. GTV never prepared or disseminated annual or quarterly reports or financial statements regarding the company's performance, or the use of the proceeds from their investments. Nor were investors issued shares of GTV common stock. Frustrated by continually being strung along by Guo and Wei, many investors demanded refunds.

9. On September 13, 2021, several months after the commencement of this class action, the SEC simultaneously instituted and settled the Administrative Proceeding

---

[2] Rule of Law Foundation and Rule of Law Society are collectively referred to herein as the "ROL Entities".

against GTV, Saraca, and VOG.  According to the "Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and Desist Order" entered on the same date (the "Order"), the SEC concluded that GTV, Saraca, and VOG violated the registration provisions of the federal securities laws (Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act")) by soliciting thousands of individuals to invest in an offering of GTV common stock (the "Stock Offering").

10.     The Order (attached hereto and incorporated herein as **Exhibit A**) makes the following findings relevant to the allegations herein:

      a.     Saraca created GTV as a wholly-owned subsidiary in April 2020 to own and operate a social media platform;

      b.     In connection with the Stock Offering, Saraca agreed to sell up to 10% of its ownership interest in GTV and would continue to exert significant control over GTV after the Stock Offering;

      c.     From April 2020 through June 2020, Saraca and GTV, through their management team and agents, marketed the Stock Offering to investors through publicly available videos on GTV's websites and other social media platforms that described the investment terms (including the $100,000 minimum investment) and provided contact information for investors interested in participating in the Stock Offering;

      d.     Simultaneously, Saraca and GTV, through their management team and agents, directed VOG to purchase GTV common stock on behalf of investors who wanted to participate in the Stock Offering at amounts less than $100,000;

      e.     To facilitate VOG's role in the sale of GTV stock, Saraca and GTV provided VOG with a Limited Purpose Agency Agreement (attached hereto and incorporated herein as **Exhibit B**) ("LPAA") whereby prospective investors could designate a representative of VOG (specifically Wei) to serve as their agent to purchase shares of GTV on their respective behalves;

f.     Saraca and GTV sold approximately $339 million worth of GTV common stock to more than 1,000 investors, some of whom were unaccredited;

g.     VOG sold approximately $114 million worth of GTV common stock to more than 4,500 investors, many of whom were unaccredited, and none of whom were issued GTV shares;

h.     In May 2020, VOG, at the direction of Saraca and GTV, transferred in excess of $61 million to the bank accounts of Saraca and GTV;

i.     VOG continued to receive funds from investors for the purchase of GTV shares through at least June 2020;

j.     During the Stock Offering, VOG provided Saraca and GTV with updates on its fundraising efforts and amounts collected from investors;

k.     VOG engaged in steps necessary to the distribution of GTV shares and therefore offered and sold GTV shares;

l.     In June 2020, Saraca transferred $100 million of the proceeds from the Stock Offering to a hedge fund (not identified) for investment;

m.     By late July 2020, the hedge fund had invested $30 million of the funds transferred and the investment lost approximately $29.2 million in value; and

n.     No registration statements were filed or in effect for the offers and sales of GTV common stock by Saraca, GTV, and VOG, and the offers and sales did not qualify for an exemption from registration under the Securities Act.[3]

11.     The Order directed, among other things, the following:

a.     Saraca, GTV, and VOG shall cease and desist from committing or causing any violations or future violations of Sections 5(a) and 5(c) of the Securities Act;

---

[3] The SEC also found that during the same April 2020 through June 2020 period Saraca and GTV solicited individuals to invest in their offering of a digital asset security and collected approximately $34 million from investors.

b. Saraca and GTV shall pay disgorgement of $434,134,141 and prejudgment interest of $15,776,488 to the SEC; and Saraca and GTV shall each pay a civil penalty of $15 million to the SEC;

c. VOG shall pay disgorgement of $52,610,922 and prejudgment interest of $1,911,877 to the SEC, and pay a civil penalty of $5 million to the SEC; and

d. The amount to be paid as civil penalties shall be treated as penalties paid to the government for all purposes, and to preserve the deterrent effect of the civil penalty, Saraca, GTV, and VOG agree that in any Related Investor Action,[4] they shall not argue entitlement to, or benefit by, offset or reduction of any award of compensatory damages by the amount of part of their payment of a civil penalty herein.

12. This class action is on behalf of all persons that made payments to VOG to purchase GTV securities and never received such securities or a refund of the money paid (the "Class"). Plaintiffs seek to recover damages on behalf of themselves and the Class for the harm caused by Defendants' violations of securities laws under Title 44, chapter 12 (Sale of Securities) of the Arizona Revised Statutes ("ARS"), as well as for common law fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, negligent misrepresentation, and unjust enrichment.

## II.    JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as well as 28 U.S.C. § 1332(d)(2). The Court has jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over defendants because each purposefully availed itself, herself, and himself by: (a) residing within this State; (b) conducting business activity; and/or (c) committing tortious acts within the State.

---

[4] The Order defines a "Related Investor Action" as a private damages action (such as this action) brought against Saraca, GTV, or VOG by or on behalf of one or more investors based on substantially the same facts as set forth in the Order.

Moreover, each defendant has sufficient minimum contacts with this District to render this Court's exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, among other things: (a) many of the false and misleading statements were made in or issued from this District; (b) VOG is an Arizona corporation and its offices are located within this District; and (c) Wei is a resident of and domiciled in Arizona.

## III. PARTIES

### A. Plaintiffs

16. Plaintiff Rong Zhang is a resident of the State of California who was solicited by, donated $500 to, and invested $100,000 with defendants as described herein.

17. Plaintiff Xiaodan Wang is a resident of Canada who was solicited by, donated $100 to, and invested $50,000 with defendants as described herein.

18. Plaintiff Chong Shen Raphanella is a resident of the State of Maryland who was solicited by, donated $30 to, and invested $10,000 with defendants as described herein.

### B. Defendants

19. Defendant Saraca Media Group Inc. is a Delaware corporation with offices at 162 E. 64th Street, New York, New York 10065. Upon information and belief, defendant Guo founded Saraca. Saraca also owns trademarks that feature Guo's names and aliases, including "Guo Wengui" and "Miles Guo."

20. In April 2020, Saraca established defendant GTV as a wholly-owned subsidiary to operate a social media platform and contributed all of the assets of the platform to GTV. Upon information and belief, Saraca owns at least 90% of the equity of GTV.

21. Saraca is not broker or dealer, or licensed to solicit customers or effect transactions for the offer or sale of securities in the State of Arizona.

22. Defendant GTV Media Group, Inc. is a Delaware corporation with at 162 E. 64th Street, New York, New York 10065. GTV owns and operates a social media platform containing numerous publicly-available videos. As all times since its incorporation, Saraca has controlled GTV.

23. GTV is not broker or dealer, or licensed to solicit customers or effect transactions for the offer or sale of securities in the State of Arizona. GTV did not register its securities with the State of Arizona.

24. Defendant Voice of Guo Media Inc. is an Arizona corporation that is located at 14747 N. Northsight Boulevard, Suite 111 # 405, Scottsdale, Arizona 85260. At all relevant times, Guo has controlled and/or exercised significant authority over VOG.

25. VOG is not broker or dealer, or licensed to solicit customers or effect transactions for the offer or sale of securities in the State of Arizona.

26. Defendant Rule of Law Foundation III Inc. is a Delaware not-for-profit corporation and 501(c)(3) organization located at 800 5th Avenue, Suite 21F, New York, New York 10065. Rule of Law Foundation was founded by and is wholly owned and controlled by Guo.

27. Defendant Rule of Law Society IV Inc. is a Delaware not-for-profit corporation and 501(c)(4) organization located at 800 5th Avenue, Suite 21F, New York, New York 10065. Rule of Law Society was founded by and is wholly owned and controlled by Guo.

28. Defendant Sara Wei a/k/a Lihong Wei Lafrenz is VOG's President, Director, and Manager. Wei is a resident of Arizona and a registered agent for VOG. Wei also served as a director of Rule of Law Society between January 2019 and December 2020.

29. Wei is not licensed to solicit customers or effect transactions for the offer or sale of securities in the State of Arizona.

30. Defendant Wengui Guo a/k/a Miles Guo a/k/a Ho Wan Kwok a/k/a Miles Kwok a/k/a Nan Wu a/k/a Haoyun Guo, is a foreign national residing in the State of New York. Guo owns, directs, and/or otherwise controls Saraca, GTV, VOG, and the ROL

1    Entities, exercises exclusive authority over any major decision made at Saraca, GTV, and

2    the ROL Entities, and possesses the power to designate and terminate the officers and

3    directors of Saraca, GTV, VOG, and the ROL Entities and expand or restrict the authority

4    delegated to them.[5]

5           31.    Guo is not licensed to solicit customers or effect transactions for the offer or

6    sale of securities in the State of Arizona.

7           32.    GTV, Saraca, VOG, the ROL Entities, Wei, and Guo are collectively

8    referred to herein as "Defendants."

9           33.    At all relevant times, each of the Defendants was the agent, servant,

10   employee, partner, or alter ego of the other Defendants, and the acts of each Defendant

11   were in the scope of such relationship.  By engaging in the acts as alleged herein, each of

12   the Defendants were acting with the knowledge, permission, consent, and at the behest of

13   the other Defendants.  Each of the Defendants aided and abetted the acts of the other

14   Defendants in the acts alleged herein.

15          34.    At all relevant times, Guo exercised control and dominion over the other

16   Defendants, the Stock Offering, and the use and distribution of the Stock Offering

17   proceeds.  Guo was the primary spokesperson for the other Defendants to investors and

18   the public in connection with the Stock Offering, and the other Defendants deferred to his

19   authority.  Guo funded the Stock Offering, controlled how GTV securities were offered,

20   who was entitled to invest, how the proceeds of the Stock Offering would be distributed

21   and invested, and who would (and who would not) be issued GTV securities in connection

22   with their investment.

23   _____

24

25   [5] In December 2020, Guo removed Wei from her position as director at Rule of Law Foundation.

26   *See* https://gtv.org/video/id=5fdfd67fc0544c3d972f4f24 ("[We will] get back all of the
     documents related to the Rule of Law Foundation and Rule of Law Society that are currently with

27   VOG and the Phoenix Base.  Sara, a director of the Rule of Law Foundation, tomorrow's board
     meeting will have her removed.  All of the data you have on G-News and G- related things must

28   be returned.") (unofficial translation).

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background to the Stock Offering

35.    Guo is a self-described Chinese political dissident.  After arriving in the United States in 2014, Guo built a large following online, particularly among the worldwide Chinese diaspora, by alleging high-level corruption within China's Communist Party (sometimes referred to herein as "CCP").  He has also reportedly applied for asylum in the United States "because his public charges against Chinese officials … made him 'a political opponent of the Chinese regime.'"[6]

36.    Guo is well known for his extravagant lifestyle.  He owns a $65 million apartment in New York and a mega yacht,[7] and often streams videos online from both.  Guo's following is such that his die-hard supporters rally against any dissenting voices, often harassing and picketing outside their homes and businesses.

37.    Guo sought to monetize his online popularity through the establishment of a video-streaming social media platform for user generated political content.  Over the course of 2019 and early 2020, Guo worked to develop the platform and, by March 2020, Guo and Saraca had an initial release version.

38.    GTV is the creation of Guo.  On April 17, 2020, Guo caused Saraca to incorporate GTV as a wholly-owned subsidiary to own and operate the platform.  Guo also caused Saraca to contribute all assets of the platform, including the *www.gtv.org* website, to GTV.

---

[6] Michael Forsythe, *Billionaire Who Accused Top Chinese Officials of Corruption Asks U.S. for Asylum*, N.Y. Times (Sept. 7, 2017), *available at* https://www.nytimes.com/2017/09/07/world/asia/china-guo-wengui-corruption-asylum.html.

[7] Ken Dilanian, Andrew Blankstein, Tom Winter & Katy Tur, *Who is Guo Wengui, the Chinese billionaire who owns the boat Steve Bannon was arrested on?*, NBC New (Aug. 20, 2020), *available at* https://www.nbcnews.com/politics/justice-department/who-chinese-mogul-who-owns-boat-steve-bannon-was-busted-n1237511.

39.     On April 20, 2020, Guo caused Saraca and GTV to launch the Stock Offering.  Pursuant to the Stock Offering, Saraca and GTV proposed to sell between 20 million and 200 million unregistered shares of GTV common stock at a price of $1 per share.  As stated in the Order:

> According to the Stock Offering's information memorandum ("Memorandum"), [Saraca and GTV] recently launched a news-focused social media platform, including the website *www.gtv.org* [(the "GTV Platform")].  The Memorandum claimed it would be "the first ever platform which will combine the power of citizen journalism and social news with state-of-the-art technology, big data, artificial intelligence, block-chain technology and real-time interactive communication" and planned to be "the only uncensored and independent bridge between China and the Western world." Order at 2.

40.     From April 2020 through June 2020, Guo, Saraca, and GTV solicited investors through a number of channels, including *www.gtv.org*, *www.gnews.org* (another website under Guo's control), and social media platforms Guo Media, YouTube, Twitter, and Discord.

41.     The solicitations represented to potential investors that GTV would be a platform for news, social media and e-commerce, with competitors including Amazon.com Inc., Tencent Holdings Ltd.'s WeChat and ByteDance Ltd.'s TikTok. According to the *Wall Street Journal*, the Memorandum stated a pre-investment valuation of $1.8 billion for GTV.[8]

42.     On April 21, 2020, Guo recorded and posted a video on YouTube entitled (in English) *GTV Private Placement Subscription Instructions* (the "Launch Video"), that described the terms of the Stock Offering and provided contact information for potential

---

[8] Brian Spegele, Sha Hua & Aruna Viswanatha, *Fundraising at Company Tied to Steve Bannon and Guo Wengui Faces Probe*, Wall St. J. (Aug. 19, 2020), *available at* https://www.wsj.com/articles/fundraising-at-company-tied-to-steve-bannon-and-guo-wengui-faces-probe-11597857467.

investors interested in participating.[9]  Although Guo disclosed in the Launch Video that "[it] is not for the public," access to view and share the Launch Video and related investment documents for the Stock Offering was not restricted.  Thus, the Launch Video and investment documents were generally available to the public everywhere YouTube is available, including the State of Arizona.

43.    Guo disclosed in the Launch Video that the Stock Offering sought to sell between 20 and 200 million shares of GTV common stock at a price of $1 per share.  He further disclosed that, while the Stock Offering required a minimum investment of $100,000 by investors, an alternative avenue is available for those that want to invest less than $100,000.

44.    Along with the Launch Video, Guo posted a link to download documents in connection with the Stock Offering, including the Memorandum, a subscription agreement, a non-disclosure agreement, a document titled "Investment Procedure Guidelines," investment instructions, and other related documents.

45.    As described above, Guo, Saraca, and GTV did not restrict access to the Launch Video, the link to documents in connection with the Stock Offering, or the ability of the Launch Video and the related documents to be shared.  In fact, Guo, Saraca, and GTV did nothing to prevent general public access to marketing videos already available online.

46.    Guo, Saraca, and GTV sent the Launch Video via text message to hundreds of potential investors, without respect to accreditation, that included a link to download documents relevant to the Stock Offering.  Guo, Saraca, and GTV did not restrict the ability of recipients of the text messages to forward the linked Stock Offering documents to other potential investors.

---

[9] *See* Launch Video, *available at* https://youtu.be/MStWXetSVmA.

47.     At Guo's direction, Wei and VOG also solicited investors in connection with the Stock Offering.  As set forth in the findings in the Order, to "facilitate VOG's role in offering and selling" GTV securities, Saraca and GTV furnished Wei and VOG with the Stock Offering documents, including the LPAA "to provide to prospective investors in the Stock Offering."  Order at 4.  Saraca and GTV also "directed VOG to purchase GTV stock … on behalf of prospective investors who wanted to invest less than $100,000.  VOG then solicited investors and collected funds for the purpose of purchasing shares of GTV stock on their behalf."  *Id*.

48.     At all relevant times, VOG operated as an agent of Guo, Saraca, and GTV through which potential investors – with less than $100,000 to purchase GTV securities directly from Saraca and GTV – could still participate in the Stock Offering.  By creating this "backdoor," Guo significantly increased demand for GTV securities.  In order to gain access to this backdoor and purchase GTV securities, however, Guo required that they first make a donation to one of the ROL Entities, or to Guo himself via Livestream (another Guo video-streaming platform).

49.     In a video streamed on Guo's website *www.gtv.org*, Guo stated (in Chinese) that only his true supporters could invest in GTV and the donations was a way to prove support.  *See* https://gtv.org/video/id=5fd7fa9e09267020eb51302e ("All we wanted to do was to share the GTV whistleblowing platform, its profits, its expected value, and its appreciation in value, with our friends-in-arms. This is why, we only gave it to donors of the Rule of Law Foundation and the Rule of Law Society, and the people who have contributed, who have shed blood, sweat, and tears, and who have taken risks in the Movement."                    (unofficial                    translation)); https://gtv.org//?videoid=5f595089245d3c0579a0a339 ("We don't sell to anyone else, we only sell to these friends-in-arms who have supported the Whistleblower Movement, the Rule of Law Foundation and the Rule of Law Society, the friends-in-arms who fought side by side with us, and the people who have invested in GTV, no one else." (unofficial translation)).

50.    While the donations enabled investors to participate in the Stock Offering and pay for GTV securities, investors did not obtain the shares of GTV common stock for which they paid.

51.    Guo specifically directed investors with less than $100,000 to spend on the purchase of GTV securities to contact Wei and VOG.  In another video streamed on Guo's *www.gtv.org* website, Guo confirmed that he "said more than ten times in [his] livestream, that if you have less than $100,000, you go to Sara."[10]

52.    When Wei pooled approximately $70 million from investors, Guo praised Wei in a May 21, 2020 video for helping "so many friends-in-arms who would not have had an opportunity to get involved":

> Sara just by herself, just by Sara herself, can you imagine, [pooled] $70 million, almost $100 million, my god.
>
> ***This time I am deeply moved by VOG***. Sara, unintentionally, she has been supporting the Whistleblower Movement since years ago, she registered this company, and started receiving ad revenue, and doing business. ***Not only is there ongoing business, but it is also a completely legitimate company. Audited, completely legal.*** And she ended up helping so many friends-in-arms, many of the friends-in-arms would not have had an opportunity to get involved. Helped so many people![11]

53.    In a May 22, 2020 video, Guo again praised Wei for helping the "friends-in-arms with less means" to get on board with the GTV private placement:

> Sara is such a Boddhisatva.  I cared most about our friends-in-arms with less means; that we do not leave the friends-in-arms with little money behind.   Sara helped us to achieve that.   I am really appreciative of her efforts.[12]

---

[10]  https://gtv.org/video/id=6012cc1fb819717e79b4f085 (unofficial translation).

[11]   https://gtv.org//?videoid=5ec6829b82e098349faafa13  (emphasis   added)   (unofficial translation).

[12] https://gtv.org/video/id=5ec7d25ae37fdd30a5e93e56 (unofficial translation).

54.    Like GTV, Wei and VOG operate multiple social media channels such as YouTube and Discord.   Through these channels, Wei directly communicated with potential investors interested in purchasing GTV securities through VOG.

55.    In a May 12, 2020 video posted on *www.gtv.org*, Wei told investors (in Chinese):

> The first thing I need from you is your proof of donation to Rule of Law Foundation.  Don't ask me if you are still eligible if you donated after April 1, as long as you have a proof of donation it's fine.  Your experience supporting Mr. Guo, I like to read that too, we can share that later.  Then you need to tell me if you have more or less than $100,000.  You must let me know.  *If it's more than $100,000 I will contact the headquarters*; if it's less than $100,000, VOG will … do it for you."[13]

56.    Upon information and belief, Wei's solicitation of donations to the ROL Entities in connection with the Stock Offering were made from the State of Arizona.  In soliciting the donations, Wei was acting at the behest of Guo, GTV, Saraca, and the ROL Entities that Guo founded, owned, and controlled.  Both the donations and investments in GTV through VOG served to line Guo's pockets.

57.    After confirmation of the donation, Wei, or one of her agents, would contact the investor via email or private chat, request completion of various forms, and provide identification.   Wei used the following email addresses as part of the process: sarawei@protonmail.com; vog202064@protonmail.com; and vog202064@gmail.com.

58.    Among the documentation sent for completion was the LPAA (Limited Purpose Agency Agreement) whereby investors agreed to the designation of Wei as their agent to purchase GTV securities on their respective behalves.  The LPAA provides, in relevant part, as follows:

> KNOW ALL MEN BY THESE PRESENTS THAT, _____, (hereinafter referred to as the "*Investor*"), hereby *intending to be legally bound*, and in consideration of One Dollar ($1.00), and other

---

[13] https://gtv.org/video/id=5fe8de4687fabe2daf2b6d59 (emphasis added) (unofficial translation).

good, valuable and sufficient considerations, the receipt and adequacy whereof being hereby acknowledged by the Agent and for the benefit of the Investor and his/her successors and assigns, *does hereby assign, direct, and designate Lihong Wei Lafrenz* (hereinafter referred to as the "*Agent*"), *her successors, assigns, and affiliates, to purchase on my behalf, with funds to be provided by me in the sum of $_____, certain shares in GTV Media Group, Inc.* (hereinafter referred to as the "*Investment*") together with all rights of action accrued or which may accrue thereunder; and the Investor does hereby constitute and appoint said Agent as the Investor's true and lawful agent and attorney-in-fact, for the limited purpose of completing the Investment on my behalf and to do and perform all acts, matters, and things touching upon the premises, in like manner, and to all intents and purposes as the Investor could do if personally present. (emphasis added)

59. After completion of the LPAA, Wei directed prospective investors to wire the purchase amount to bank accounts controlled by Wei and/or VOG.

60. Guo announced in a June 2, 2020 video that the Stock Offering ended with hundreds of millions of dollars raised and a purported $2 billion valuation for GTV. Although the Stock Offering purportedly closed on June 2, 2020, Saraca, GTV, and VOG continued to solicit investments through July 2020.

61. According to the findings in the Order, Saraca and GTV sold approximately $339 million worth of GTV common stock to more than 1,000 investors, some of whom were unaccredited. VOG sold approximately $114 million worth of GTV common stock to more than 4,500 investors, many of whom were unaccredited. No investor who purchased GTV common stock through VOG ever received GTV shares.

**B. Defendants' Materially False and Misleading Statements and Omissions in Connection with the Stock Offering**

62. In connection with the promotion of the Stock Offering to investors, Guo, Wei, and their affiliates made materially false and misleading statements to investors and/or omitted facts to make their statements not misleading. Guo and Wei made false statements and omissions with the intention and for the purpose of inducing potential investors to purchase GTV securities and increase demand – by offering to sell

unregistered shares to unaccredited investors – in an attempt to raise as much money as possible in the Stock Offering.

63.    For example, in a video uploaded to YouTube on April 6, 2020, Guo boasted that "[in a year,] the market value [of the GTV Platform] is absolutely going to be multi-hundred billion, absolutely multi-hundred billion." (unofficial translation).[14]

64.    In an April 7, 2020 broadcast, Guo stated that there were so many people who wanted to invest in GTV that "one or two or three billion dollars could be raised in one minute" and that GTV stock would rise by as much as "10 times."

65.    On May 9, 2020, Guo asserted in another video uploaded to *www.gtv.org* that the opportunity to purchase GTV securities through the Stock Offering was "risk-free", and "will generate 100 times or 1000 times the return."[15]

66.    In a June 2, 2020 post on *www.gnews.org*, Guo claimed that money raised in the Stock Offering "has elevated [GTV's] estimated market value from 2 billion dollars to 10 billion dollars.[16]

67.    After the purported close of the Stock Offering, Guo stated in an August 2, 2020 post on *www.gnews.org* entitled, "*Miles Guo: The potential of GNews and GTV is infinite,*" as follows:

> Our Gnews viewer and registration numbers grow by multiples every week. Up to last week, its business valuation is already $2 billion U.S. dollars. How much then will our GTV product be worth? Soon all the CCP apps will be banned and removed in the U.S. By that time, our Gnews and GTV will be the only platform and app to use for tens of millions of overseas Chinese and those within the CCP Internet firewall, to find out the truth about the CCP and the world. The chance for our products to grow rapidly and make an enormous profit is boundless! We haven[']t even made our secret next big move yet. Don't forget that we will have mergers and acquisitions down

---

[14] https://youtu.be/qZEuskVmo9s.

[15] https://gtv.org/video/id=5eb6adce79cccb4c587eab8d (unofficial translation).

[16] https://gnews.org/221062/.

- 17 -

the road. We will dramatically change the business world, that used to be manipulated by CCP.[17]

68.    Guo knowingly made the foregoing wildly misleading claims to promote GTV and drive demand for GTV securities, both before and during the Stock Offering. In the attempt to "make good" on these claims, Guo knowingly or recklessly violated Arizona law by causing Saraca, GTV, and VOG to offer unregistered shares of GTV common stock for sale to unaccredited investors and with no minimum purchase amount.

69.    As detailed above, on April 21, 2020, Guo recorded and posted the Launch Video on YouTube wherein he told prospective investors "[it] is not for the public," but knowingly or recklessly failed to restrict potential investors' ability to view the video or share the same with others. Guo posted a link with the Launch Video for potential investors to download Stock Offering documents. Guo knowingly or recklessly failed to restrict potential investors' ability to inspect and share the documents.

70.    Wei played a key role in Guo's scheme to defraud by collecting and pooling investor funds for a purported investment in GTV, and soliciting donations for the ROL Entities and Guo personally. Wei also knowingly or recklessly violated Arizona law by causing VOG to offer unregistered shares of GTV common stock for sale to unaccredited investors and with no minimum purchase amount. Indeed, as long as investors could prove their donations to the ROL Entities or Guo, they qualified to participate in the Stock Offering and purchase GTV securities through VOG.

71.    The ROL Entities also participated in the scheme to defraud by lending their name and reputation for challenging the Chinese government to provide further creditability to investment in GTV, and had their promoters, Guo and Wei, solicit donations for the ROL Entities or Guo personally as a prerequisite for investing with GTV directly or through VOG.

---

[17] https://gnews.org/282957/.

- 18 -

72.     As described below, once Wei confirmed investors' donations, she emailed them a public link that contained the Stock Offering documents (or directed investors where to locate the documents online), including the LPAA, and instructions where to send the completed documentation and wire transfer confirmations in connection with their purchases.

73.     At all relevant times, Guo and Wei knew that GTV securities were not registered in Arizona. At all relevant times, Guo and Wei knew that they were not licensed to solicit customers or effect transactions for the offer or sale of securities in the State of Arizona. At all relevant times, Guo and Wei knew that Saraca, GTV, and VOG were not brokers or dealers, and not licensed to solicit customers or effect transactions for the offer or sale of securities in the State of Arizona. The knowledge of Guo and Wei is imputable to Saraca, GTV, VOG, and ROL Entities.

74.     Nonetheless, Guo, Wei, and the affiliated companies acting under their control, knowingly or recklessly misrepresented the Stock Offering to potential investors as "completely legitimate" and "completely legal," and omitted to disclose their failure to comply with Arizona law, in order to induce potential investors to purchase GTV securities.

75.     At all relevant times, Guo and Wei knew that the Stock Offering was anything but legitimate or legal. Guo had no intention to use the proceeds from the Stock Offering to develop the GTV Platform or GTV's business. As set forth in the Order, Saraca exercised control over GTV both before and after the Stock Offering. Guo exercised dominion and control over Saraca. Guo (through Saraca) transferred $100 million of the Stock Offering proceeds to a hedge fund for investment in the fund. According to *Bloomberg*, the hedge fund is managed by non-party Hayman Capital

Management L.P.[18]  Non-party Kyle Bass is the founder and Chief Investment Officer of Hayman Capital Management, L.P.  Notably, Bass was identified by Guo in the Memorandum as one of the directors of GTV.[19]

76.  Further, Guo, Wei, and the companies under their control, knowingly deceived Plaintiffs and Class member about their purchases of GTV securities.  Pursuant to the LPAAs, Wei served as investors' agent for the purchase shares of GTV common stock through VOG.  When Wei delivered $61,274,318 in Stock Offering proceeds to Saraca and GTV on May 15, 2020, as investors' fiduciary she should have contemporaneously received $61,274,318 worth of GTV securities on their behalves.

77.  At all relevant times, Guo and Wei knew and intended that no GTV securities would be issued to investors who purchased through VOG.  After Wei delivered $61,274,318 to Saraca and GTV on May 15, she sent no further Stock Offering proceeds to Saraca and GTV despite continuing to receive funds from investors through at least June 2020.  Nor was there any demand made by Guo, Saraca, or GTV that Wei or VOG remit the balance of any Stock Offering proceedings – despite raising more than $114 million.  No shares of common stock were ever issued to investors that purchased through VOG, and no purchase confirmations were ever provided.  Investors' concerns about the legitimacy of their participation in the Stock Offering were heightened when, on June 2, 2020, when Guo stated that those who purchased GTV securities through VOG "will be joined as institutional investors later."

---

[18]Tom Schoenberg, Matt Robinson, & Joshua Green, *Kyle Bass's Disastrous Hong Kong Short Got Bannon-Linked Cash* (Oct. 13, 2021) Bloomberg, *available at* https://www.bloomberg.com/news/articles/2021-10-13/kyle-bass-s-disastrous-hong-kong-short-got-bannon-linked-cash.

[19] Bass stated on July 14, 2020 in his Twitter feed that, as of July 9, he was no longer a director of GTV.

**C.** **Defendants' Materially False and Misleading Statements and Omissions in Connection with the Status of Investor Funds**

78.     After the close of the Stock Offering, Guo and Wei made materially false and misleading statements to investors and omitted facts to make their statements not materially misleading. Guo and Wei made materially false statements and omissions with the intention of concealing from investors the illegitimacy and illegality of the Stock Offering.

79.     On June 2, 2020, Guo announced the purported successful close of the Stock Offering. Guo stated, in relevant part, as follows:

> *We've accomplished the privately offered project of GTV, bearing the hopes of our friends-in-arms and likeminded people*. We've made a history that during this pandemic, this shut-down of economy and downturn of finance, we managed to raise 3500 [sic] million dollars from individuals, *in addition to 1170 [sic] million dollars raised from VOG, which will be joined as institutional investors later*. Every investor is the donor to the Rule of Law Foundation or the Rule of Law Society, and each of the fund marks their faith in freedom, democracy and their anti-CCP struggles. *The total funds raised has elevated our estimated market value from 2 billion dollars to 10 billion dollars*. (emphasis added)

80.     Guo's statement was false and misleading when made because, as explained above, the Stock Offering was not private.

81.     Soon after the close of the Stock Offering, questions began to arise among investors, in chatrooms and other media, regarding their investments in GTV. Investors who purchased GTV securities through VOG were particularly alarmed. Guo's June 2 statement that the $117 [sic] million raised from VOG "would be joined as institutional investors later" provided no comfort.

82.     In a June 17, 2020 address uploaded to *www.gwins.org* and YouTube, Guo told investors that, "about [money that] went to VOG, VOG's money can't be moved, it's frozen in the bank, and, that money you need to wait for VOG to have a result."[20]

83.     In June and July 2020, Wei knowingly misrepresented to investors that Wells Fargo and Chase were to blame for the delay in the delivery of shares of GTV common stock.[21]  Wei also falsely stated that as soon as the banks released the funds, she and her associates would countersign the LPAAs.  Guo and Wei also attempted to deceive investors by encouraging them to join a lawsuit that VOG was allegedly about to commence against Wells Fargo in order release investor funds.

84.     As set forth in the Order, VOG transferred $61,274,318 of investor money from the Stock Offering to Saraca and GTV *on May 15, 2020*.  Thus, the banks had nothing to do with the purported delay in the delivery of GTV securities and countersigned LPAAs.  Wei's misdirection was intended solely to delay disclosure that no shares would ever be issued to investors who made purchases through VOG.

85.     In August 2020, the *Wall Street Journal* reported that the FBI, the SEC, and the New York Attorney General's Office were all investigating the purported investments in GTV.  The article sets forth, in relevant part, as follows:

> The federal probe is being conducted by the Federal Bureau of Investigation and the Securities and Exchange Commission, people familiar with the investigation said. ***The investigators have been examining whether GTV Media or associates of Mr. Guo violated securities laws through the private share placement***. The New York state attorney general's office has also been examining the matter, these people said.
>
> Soon after the fundraising, some investors began pushing for refunds after they said they never received official documentation verifying

---

[20]     https://gwins.org/cn/milesguo/22206.html;     https://youtu.be/U6C0UO-r5rU     (unofficial translation).

[21] *See e.g.*, transcript of Sara Wei's June 25, 2020 livestream published on the GNews platform, https://gnews.org/zh-hans/245249/.

their investments in GTV Media, among other issues that led them to distrust Mr. Guo.

…

The fundraising documents reviewed by the Journal say GTV Media aimed to sell a 10% stake in the company for as much as $200 million, with the rest held by another company affiliated with Mr. Guo.

Mr. Guo said in an online video in June that GTV Media had raised more than $300 million, with demand for shares exceeding expectations.

GTV Media didn't register the deal with the SEC. To avoid registration, companies generally must sell shares only to wealthy "accredited investors" who meet requirements such as having more than $1 million in assets, excluding the value of a primary residence, or earning more than $200,000 a year. ***GTV Media said it sought to sell shares to such accredited investors***. (emphasis added)[22]

86.     In December 2020, VOG and Wei began issuing serial numbers to certain VOG investors so that they could purportedly track the status of their refund requests through a website established by VOG.

87.     On information and belief, around the end of 2020, Guo and Wei reportedly had a fallout, which led to a halt in the supposed refund process.  With Guo and Wei each holding a portion of the more than $114 million in Stock Offering proceeds invested through VOG, they began blaming each other for defrauding investors.  In 2021, Guo and Wei began telling investors that they could no longer refund investments because of the ongoing SEC investigation.

88.     The truth about Defendants' misconduct was partially revealed on September 13, 2021, when the SEC and settled the Administrative Proceeding against Saraca, GTV, and VOG and issued the Order.  As set forth in the Order, Saraca, GTV, and VOG submitted offers of settlement in anticipation of the commencement of the Administrative Proceeding which the SEC determined to accept.

---

[22] B. Spegele, S. Hua & A. Viswanatha, *Fundraising at Company Tied to Steve Bannon and Guo Wengui Faces Probe*, Wall St. J., *supra*.

**D. Individual Plaintiffs' Experiences**

    **1. Plaintiff Rong Zhang**

89.     Plaintiff Zhang made payment to VOG for the purpose of purchasing GTV securities.

90.     Plaintiff Zhang and her family have followed Guo on YouTube since approximately 2017 or 2018.

91.     In April 2020, Plaintiff Zhang and her family viewed Guo's livestream videos on YouTube in which Guo promoted the launching of GTV Media. Guo stated that GTV had seen exceptional viewer and visitor numbers[23] and that the company would see even greater success in the future. Guo informed his viewers that GTV would start raising money through a private placement (the Stock Offering) and that it would generate remarkable returns for early investors. Based on these representations, Plaintiff Zhang and her family wanted to invest in GTV.

92.     Plaintiff Zhang and her family learned through Guo's videos that donation to the Rule of Law Foundation was a prerequisite to participating in the private placement.

93.     Accordingly, on April 12, 2020, Plaintiff Zhang sent $500 to the Rule of Law Foundation III Inc. via PayPal.

94.     On April 16, 2020, a member of Plaintiff Zhang's family emailed proof of the donation to Guo (gtvstock@gmail.com).

---

[23] *See e.g.*, https://gnews.org/zh-hans/173170/ (Guo claiming in an April 10, 2020 livestream that more than 10 million people are watching); https://gtv.org/video/id=5e972916c9e0f16aefbe267c (Guo claiming in an April 14, 2020 livestream on the GTV platform that approximately 10 to 20 million people are watching); https://youtu.be/3PpxmHZ_5fU (Guo claiming that the actual number of visits of the GTV platform is around 500 million, despite the Chinese Communist Party's efforts to skew the numbers). Zhang later discovered that the these numbers given by Guo had been grossly exaggerated.

95.    On April 17, 2020, Guo responded by stating, "[c]urrently the minimum amount is $100,000.  For amount less than $100,000, VOG will aggregate and invest. Will register you if you want to join.  Thanks." (unofficial translation).

96.    On May 3, 2020, a member of Plaintiff Zhang's family emailed Wei (sarawei@protonmail.com) inquiring whether they were approved to invest.  Wei requested proof of their donation to the Rule of Law Foundation.

97.    After confirming the donation to the Rule of Law Foundation, Wei emailed Plaintiff Zhang's family member stating "the minimum investment is 100 thousand dollars. For investment under 100 thousand: based on trust, you can join our VOG partnership team.  Please reply if confirmed to invest, I will register you[.] Please attach a proof of donation of your donation in the Rule of Law Foundation[.] must be with date[.] thank you very much!" (unofficial translation).

98.    Plaintiff Zhang's family member replied to Wei that they would like to be registered to make an investment of $100,000.

99.    On May 5, 2020, Wei emailed Plaintiff Zhang's family member a series of steps, directing them to (1) follow a link to a Google Drive which contained wire transfer instructions and the blank LPAA; (2) fill out the LPAA, attach a photocopy of their ID, attach a copy of their wire transfer confirmation, (3) email the documentation to vog202064@protonmail.com; and (4) wait for VOG to countersign the agreement.

100.    On May 11, 2020, despite meeting the supposed $100,000 minimum threshold for direct investment in GTV, following Wei's instruction, Plaintiff Zhang invested in GTV through VOG in order to obtain GTV shares, and sent $100,000 to VOG via wire transfer to VOG's Wells Fargo Bank, NA. account (Account No. ending in 536). On that same day, she emailed the executed LPAA, the wire transfer confirmation, a photocopy of her passport, and a proof of donation to the Rule of Law Foundation to vog202064@protonmail.com.

101.    Following the investment, Plaintiff Zhang made multiple inquiries regarding the purchase of GTV securities through VOG.  After failing to receive a satisfactory

- 25 -

response to her inquiries, Plaintiff Zhang has requested a refund. No refund was provided. In addition, Plaintiff Zhang was not issued shares of GTV common stock.

### 2.     Plaintiff Chong Shen Raphanella

102.    Plaintiff Raphanella made payment to VOG for the purpose of purchasing GTV securities.

103.    In April and May 2020, Plaintiff Raphanella viewed Guo's livestream videos announcing and promoting the private placement for GTV in which he touted that original issue shares would generate 100-fold return. Plaintiff Raphanella also viewed various livestream videos of Mr. Guo in which he stated that investors with more than $100,000 should contact him directly, while investors with less than $100,000 should contact Wei for a collective investment through VOG. Plaintiff Raphanella learned through Guo's livestream videos that making a donation was a prerequisite for investing in GTV.

104.    On May 12, 2020, Plaintiff Raphanella saw Wei's livestream video, wherein she stated that VOG would pool investors' money to invest in shares of GTV, and that even a small investment as low as $100 is acceptable. In addition, Wei stated that investors were required to provide her with a proof of donation to the Rule of Law Foundation, as well as informing her of the amount investors intended to spend to purchase GTV securities.

105.    On April 28, 2020, Plaintiff Raphanella sent $30 to Guo via Livestream in order to qualify to purchase GTV securities through VOG.

106.    On or about May 22, 2020, Plaintiff Raphanella spoke with Wei in a Discord chatroom, who confirmed the donation to Guo and directed her to a Google Drive that contained wire transfer instructions and a blank LPAA.

107.    On May 27 and 28, 2020, Plaintiff Raphanella effected two wire transfers of $5,000 each to VOG's bank account at Bank of America (Account No. ending in 226).

108.    On May 28, 2020, she emailed Wei (sarawei@protonmail.com) the two wire transfer confirmations, the executed LPAA, and a photocopy of her driver's license.

109. Plaintiff Raphanella has made multiple inquiries regarding her investment and has requested a refund.  No refund was provided.  Plaintiff Raphanella was not issued shares of GTV common stock.

### 3.     Plaintiff Xiaodan Wang

110. Plaintiff Wang made payment to VOG for the purpose of purchasing GTV securities.

111. In or about April and May 2020, Plaintiff Wang viewed Guo's livestream videos on YouTube regarding the launch of GTV and promoting the private placement for GTV in which he touted that original issue shares would generate 100-fold return.  Guo also stated that people interested in making an investment of more than $100,000 should contact him directly, while people interested in making an investment of less than $100,000 should contact Wei.

112. In May 2020, Plaintiff Wang joined Wei's Discord channel, where she learned that donating to the Rule of Law Foundation or the Rule of Law Society was a prerequisite for investing in GTV.

113. On May 13, 2020, she sent $100 via PayPal to Rule of Law Society to qualify to purchase GTV securities through VOG.

114. During a May 16, 2020 communication with Wei in a Discord chatroom, Wei confirmed receipt of the donation and directed Plaintiff Wang to the Google Drive that contained wire transfer instructions and the blank LPAA.

115. On May 19, 2020, she made a wire transfer for $50,000 through the Bank of Montreal to VOG's account at Wells Fargo.

116. On May 21, 2020, she made a second wire transfer in the amount of $20,000 through Bank of Montreal to VOG's account at JP Morgan Chase Bank.  This transfer was later rejected, and the $20,000 was returned.

117. On May 25, 2020, Plaintiff Wang emailed Ms. Wei (vog202064@protonmail.com) the following: (1) three executed LPAAs, one for an investment amount of $50,000, one for an investment amount of $20,000, and one for an

aggregated investment amount of $70,000[24]; (2) two wire transfer confirmations, in the amount of $50,000 and $20,000 respectively; (3) a photocopy of Plaintiff Wang's passport; (4) proof of a donation of $100 made by a credit card to the Rule of Law Society via PayPal; and (5) a photo of a credit card with Plaintiff Wang's name, in order to prove that the donation was made by her.

118.   Plaintiff Wang has made multiple inquiries as to the investment and has requested a refund.  No refund was provided.  Plaintiff Wang was not issued shares of GTV common stock.

## V.   CLASS ACTION ALLEGATIONS

119.   Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Rule 23(a) and b(3) of the Federal Rules of Civil Procedure, on behalf of all persons who made payments to VOG to purchase GTV securities and never received such securities or a refund of the money paid, and were damaged thereby.

120.   Excluded from the Class are Guo, Wei, and their families, heirs, and assigns, Saraca, GTV, VOG, and their directors, officers, legal representatives, employees, agents, successors, subsidiaries, assigns and affiliates.  Plaintiffs reserve the right to revise the Class definition based on information obtained through discovery.

121.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

---

[24] Plaintiff Wang explained in her email that because she made two separate wire transfers, she was unsure whether the amount indicated in the limited purpose agency agreement should be aggregated.  For Wei's convenience, Plaintiff Wang executed three agreements and asked Wei to countersign the agreement(s) as appropriate.   However, Plaintiff Wang never received a countersigned agreement from Wei.

122.   This action is brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

123.   The members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, Plaintiff believes that there are more than 4500 members of the Class, many of whom reside in the United States.  Class member may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods which may include U.S. mail, electronic mail, internet postings, and/or published notice.

124.   There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class, which predominate over questions that may affect individual Class members, include, *inter alia*:

a.   Whether Defendants offered and sold unregistered securities in violation of the Arizona Revised Statutes;

b.   Whether Defendants, by their involvement and participation in a scheme to offer and sell unregistered securities, employed a device, scheme or artifice to defraud Plaintiffs and Class members, or engaged in transactions, practice, or course of business which operated as fraud;

c.   Whether Defendants breached their fiduciary duties and/or aided and abetting breaches of fiduciary duties to Plaintiff and the Class as alleged herein;

d.   Whether Defendants, by their involvement and participation in a scheme to offer and sell unregistered securities, conspired to defraud, breach fiduciary duties, and/or aid and abet breaches of fiduciary duties to Plaintiffs and the Class;

e.   Whether Defendants were unjustly enriched by their conduct;

f.   Whether Defendants failed to exercise reason care or competence in connection with the offer and sale of unregistered securities and negligently misrepresented facts regarding the Stock Offering to Plaintiffs and members of the Class; and

g.      Whether the members of the Class have sustained damages as a result of the actions of Defendants.

125.    Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

126.    Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action litigation.  Plaintiffs have no interests that conflict with those of the other members of the Class.

127.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VI.    CLAIMS FOR RELIEF

### COUNT I

### Violation of ARS § 44-1991 - Fraud in the Purchase or Sale of Securities
### (Against Defendants Guo, Wei, Saraca, GTV, and VOG)

128.    Plaintiffs incorporate by reference and reallege each and every allegation in paragraphs 1-127 above as though fully set forth herein.

129.    ARS § 44-1801 defines the term "security" as including any "stock" or "evidence of indebtedness" or "investment contract."

130.    The interests in GTV marketed by Guo, Wei, Saraca, GTV, and VOG in connection with the Stock Offering are securities within the meaning of ARS § 44-1801.

131.    The GTV securities offered and sold to Plaintiffs and the Class through VOG do not consist of covered securities as defined in 15 U.S.C. § 78bb(f), and therefore are not preempted by the Securities Litigation Uniform Standards Act ("SLUSA").

132.    The GTV securities offered and sold to Plaintiffs and the Class were not registered with the Arizona Corporate Commission prior to their offer and sale.  Moreover, the GTV securities offered and sold were not subject to any exemption from registration under Arizona's law, statutes, or regulations.

133.    ARS § 44-1841 provides:

1
2
3

> It is unlawful to sell or offer for sale within or from this state any securities unless the securities have been registered pursuant to article 6 or 7 of this chapter or are federal covered securities if the securities comply with section 44-1843.02 or chapter 13, article 12 of this title.

4
5
6
7
8

134.    Guo, Wei, Saraca, GTV, and VOG were issuers, controlling person, dealers, and/or other persons by or on behalf whom the offer and sale of unregistered securities was made to Plaintiffs and the Class, or were brokers or salespersons who participated in making the offer and sale, or were the controlling persons of Saraca, GTV, and VOG who participated in the offer and sale of unregistered GTV securities.

9
10

135.    Guo, Wei, Saraca, GTV, and VOG each promoted, offered, and sold GTV securities through the Stock Offering.

11
12
13
14
15

136.    By their acts, transactions, and courses of conduct as alleged in paragraphs 2-10, 39-52, 54-70, 72-80, 82-84, 91-92, 99, 103-04, 106, 111-12, and 114 above, Guo, Wei, Saraca, GTV, and VOG engaged in a scheme to defraud Plaintiff and the Class, and made materially false and misleading statements omissions to Plaintiffs and the Class in connection with the offer and sale of unregistered securities.

16
17
18

137.    The acts, transactions, and courses of conduct by Guo, Wei, Saraca, GTV, and VOG were intended and did operated as a fraud and deceit upon Plaintiffs and the Class.  The acts, transactions, and courses of conduct include:

19
20

a.    Defendants' solicitation of payments (enumerated as donations) as a condition precedent to the purchase of unregistered GTV securities through VOG;

21
22

b.     Defendants' failure/refusal to issue shares, countersign LPAAs, or otherwise confirm the purchase of GTV securities; and

23
24

c.    Defendants' failure/refusal to refund Stock offering proceeds upon demand by Plaintiffs and Class members.

25
26
27
28

138.    Guo and Wei violated ARS § 44-1842 insofar as they are not registered dealers or salesmen according to the SEC's Investment Advisor Public Disclosure search or FINRA's BrokerCheck, yet engaged in the offer and sale of unregistered GTV securities through VOG.

1      139.   By reasons of the conduct herein alleged, Guo, Wei, Saraca, GTV, and VOG

2    each offered and sold and/or controlled a person who offered and sold unregistered

3    securities in violation of ARS § 44-1991 and Plaintiffs and the Class members were

4    damaged thereby.

5      140.   Plaintiffs seek all remedies available pursuant to ARS §§ 44-1998, 44-1999,

6    44-2001, and 44-2002, including punitive damages.

7    **COUNT II**

8    **Violation of ARS § 44-1998 – Offers and sales; Liability**

9    **(Against Defendants Guo, Wei, Saraca, GTV, and VOG)**

10      141.   Plaintiffs incorporate by reference and reallege each and every allegation in

11    paragraphs 1-127 above as though fully set forth herein.

12      142.   ARS § 44-1801 defines the term "security" as including any "stock" or

13    "evidence of indebtedness" or "investment contract."

14      143.   The interests in GTV marketed by Guo, Wei, Saraca, GTV, and VOG in

15    connection with the Stock Offering are securities within the meaning of ARS § 44-1801.

16      144.   The GTV securities offered and sold to Plaintiffs and the Class through VOG

17    do not consist of covered securities as defined in 15 U.S.C. § 78bb(f), and therefore are

18    not preempted by SLUSA.

19      145.   The GTV securities offered and sold to Plaintiffs and the Class were not

20    registered with the Arizona Corporate Commission prior to their offer and sale.  Moreover,

21    the GTV securities offered and sold were not subject to any exemption from registration

22    under Arizona's law, statutes, or regulations.

23      146.   ARS § 44-1841 provides:

24          It is unlawful to sell or offer for sale within or from this state any

25          securities unless the securities have been registered pursuant to article 6 or 7 of this chapter or are federal covered securities if the

26          securities comply with section 44-1843.02 or chapter 13, article 12 of this title.

27      147.   ARS § 44-1998 provides:

28

> In any case relating to securities offered or sold within or from this state, any person who offers or sells a security by means of a prospectus or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading is liable to the purchaser of the security from that person, as long as the purchaser did not know of the untruth or omission, as provided by this section. The purchaser may bring an action in any court or administrative forum of competent jurisdiction to recover the consideration paid for the security with interest, minus the amount of any income received from the security, on the tender of the security, or for damages if the purchaser no longer owns the security.

148. Guo, Wei, Saraca, GTV, and VOG were issuers, controlling person, dealers, and/or other persons by or on behalf whom the offer and sale of unregistered securities was made to Plaintiffs and the Class, or were brokers or salespersons who participated in making the offer and sale, or were the controlling persons of Saraca, GTV, and VOG who participated in the offer and sale of unregistered GTV securities.

149. Guo, Wei, Saraca, GTV, and VOG each promoted, offered, and sold GTV securities through the Stock Offering.

150. By their acts, transactions, and courses of conduct as alleged in paragraphs 2-10, 39-52, 54-70, 72-80, 82-84, 91-92, 99, 103-04, 106, 111-12, and 114 above, Guo, Wei, Saraca, GTV, and VOG engaged in a scheme to defraud Plaintiff and the Class, and made materially false and misleading statements omissions to Plaintiffs and the Class in connection with the offer and sale of unregistered securities.

151. Guo, Wei, Saraca, GTV, and VOG knowingly engaged in conduct that sought to circumvent regulation of unregistered securities by pooling the investments of unaccredited investors through VOG. The failure to disclose the illegality of the offer and sale of unregistered securities to unaccredited investors, as well as the failure to issue shares of GTV common stock or deliver any proof of ownership following purchase by Plaintiffs and Class members of the Class rendered Defendants' representations in connection with the Stock Offering materially misleading.

152.    By reasons of the conduct herein alleged, Guo, Wei, Saraca, GTV, and VOG each offered and sold and/or controlled a person who offered and sold unregistered securities in violation of ARS § 44-1998 and Plaintiffs and Class members were damaged thereby.

153.    Guo, Wei, Saraca, GTV, and VOG are liable to Plaintiffs and the Class in an amount to be proven at trial.

### COUNT III

### Common Law Fraud

### (Against Defendants Guo, Wei, Saraca, GTV, and VOG)

154.    Plaintiffs incorporate by reference and reallege each and every allegation in paragraphs 1-127 above as though fully set forth herein.

155.    Guo, Wei, Saraca, GTV, and VOG each and together made materially false and misleading statements and omissions to Plaintiffs and Class members through the solicitation their investment in GTV securities.

156.    As alleged in paragraphs 3-5, 8, 10, 52, 63-67, 69, 74-77, 79-80, 82-84, 91, 95, 97, 103-04, and 111 above, Guo, Wei, Saraca, GTV, and VOG each knowingly or recklessly made materially false and misleading statements and omitted material facts regarding the Stock Offering and opportunity to purchase GTV securities through VOG with the intent to induce the reliance of Plaintiffs and Class members on them and secure the proceeds from the purchases by Plaintiff and the Class.

157.    The false and misleading statements and omissions by Guo, Wei, Saraca, GTV, and VOG were made with knowledge of their falsity or misleading character and with an intent to deceive, manipulate, and defraud.

158.    Plaintiffs and Class members could not and did not know that the representations of Guo, Wei, Saraca, GTV, and VOG were false at the time they agreed to purchase GTV securities and provided funds in exchange for such securities.

159.   Plaintiffs and Class members did in fact rely on the false and misleading statements and omission by Guo, Wei, Saraca, GTV, and VOG in deciding to purchase shares of GTV common stock through VOG.

160.   The reliance by Plaintiffs and Class members on the false and misleading statements and omissions by Guo, Wei, Saraca, GTV, and VOG was reasonable.  In light of their sense of kinship with Guo and Wei, Plaintiffs and Class members had no reason to disbelieve the statements from Guo, Wei, Saraca, GTV, and VOG when they were made.

161.   Plaintiffs and Class members lost all of their investment and were never issued GTV securities.

162.   Had Plaintiffs and Class members known the truth, they would have not purchased GTV securities.  As a direct and proximate cause of the malfeasance and deceptive scheme by Guo, Wei, Saraca, GTV, and VOG, Plaintiffs and Class members suffered significant damages.

163.   Guo, Wei, Saraca, GTV, and VOG are liable to Plaintiffs and the Class in an amount to be proven at trial.

## COUNT IV

### Breach of Fiduciary Duty

### (Against Defendants Guo, Wei, Saraca, GTV, and VOG)

164.   Plaintiffs incorporate by reference and reallege each and every allegation in paragraphs 1-127 above as though fully set forth herein.

165.   Guo, Wei, Saraca, GTV, and VOG each solicited Plaintiffs and Class members in connection with the Stock Offering to purchase unregistered shares of GTV.

166.   As directors, officers, issuers, controlling persons of issuers, controlling shareholders of issuers, promoters of GTV, and agents of Plaintiffs and Class members, Guo, Wei, Saraca, GTV, and VOG each owed Plaintiffs and the Class fiduciary obligations of loyalty, good faith, due care, and disclosure.

167. At all relevant times, Guo, Wei, Saraca, GTV, and VOG exercised complete control of the Stock Offering proceeds that Plaintiffs and Class members paid to purchase GTV securities.

168. By their acts, transactions, and courses of as alleged in paragraphs 2-10, 39-52, 54-70, 72-80, 82-84, 91-92, 99, 103-04, 106, 111-12, and 114 above, Guo, Wei, Saraca, GTV, and VOG, individually and acting as part of a common plan, advanced their interests at the expense and detriment of Plaintiffs and the Class.

169. Guo, Wei, Saraca, GTV, and VOG each violated their fiduciary obligations to Plaintiffs and the Class by, among other things:

    a. Engaging in a scheme to defraud Plaintiff and the Class through the Stock Offering by unlawfully soliciting the offer or sale of unregistered securities;

    b. Misleading Plaintiffs and the Class about the opportunity for investors to purchase GTV securities through VOG;

    c. Accepting investor funds for GTV securities with the knowledge that no securities would ever be issued to Plaintiffs and Class members;

    d. Failing to preserve investor assets in connection with the agency relationship established under the LPAA; and

    e. Misleading Plaintiffs and Class members about the status of refunds for the failure to deliver securities in exchange for their investments in GTV.

170. By reason of the foregoing acts, practices, and courses of conduct, Guo, Wei, Saraca, GTV, and VOG failed to exercise ordinary care and diligence in discharging their fiduciary obligations to Plaintiffs and the Class.

171. Guo, Wei, Saraca, GTV, and VOG engaged in fraud and violations of law, did not act in good faith towards Plaintiffs and the Class, and failed to disclose material facts about the Stock Offering and the opportunity to purchase GTV securities through VOG, in breach of their fiduciary obligations to Plaintiffs and Class members.

172. As a direct and proximate result of the breaches of fiduciary duty by Guo, Wei, Saraca, GTV, and VOG, Plaintiffs and Class members suffered significant damages.

173.   Guo, Wei, Saraca, GTV, and VOG are liable to Plaintiffs and the Class in an amount to be proven at trial.

**COUNT V**

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against Defendants the ROL Entities)**

174.   Plaintiffs incorporate by reference and reallege each and every allegation in paragraphs 1-127 above as though fully set forth herein.

175.   The Rule of Law Entities aided and abetted and rendered substantial assistance in the wrongful conduct complained of in paragraphs 5-7, 48-50, 55-57, 61, 68-75, 92-93, 104-06, 112-14 above.  In taking actions to provide substantial assistance in the commission of wrongdoing complained of, the ROL Entities acted with knowledge of the primary wrongdoing, and were aware of their overall contribution to and furtherance of the wrongdoing.

176.   The ROL Entities provided material support to Guo, Wei, Saraca, GTV, and VOG in connection with the Stock Offering.

177.   The ROL Entities knew that Guo, Wei, Saraca, GTV, and VOG actions in connection with the Stock Offering were in breach of their fiduciary duties to investors seeking to purchase GTV securities through VOG.

178.   The ROL Entities knew that the Stock Offering was unlawful to the extent it involved the offer and sale of unregistered GTV securities.

179.   The ROL Entities provided substantial assistance to Guo, Wei, Saraca, GTV, and VOG by nonetheless accepting donations from investors in order to qualify them to participate in the Stock Offering and purchase GTV securities through VOG.

180.   As a direct and proximate result of the ROL Entities aiding and abetting breaches of fiduciary duty by Guo, Wei, Saraca, GTV, and VOG, Plaintiffs and Class member suffered significant damages.

181.   The ROL Entities are liable to Plaintiffs and the Class in an amount to be proven at trial.

## COUNT VI

### Civil Conspiracy

### (Against All Defendants)

182.   Plaintiffs incorporate by reference and reallege each and every allegation in paragraphs 1-127 above as though fully set forth herein.

183.   As alleged in paragraphs 2-10, 33-34, 38-40, 45-48, 51-52, 55-61, 68-77, and 79-84 above, Defendants, and each of them, conspired with one another and covertly agreed to, among other things:

    a.   Defraud Plaintiffs and the Class through the Stock Offering that involved the unlawful offer and sale of unregistered GTV securities;

    b.   Defraud Plaintiffs and the Class by making materially false statements and omissions in connection with solicitation of investments in GTV and donations to the ROL Entities and Guo;

    c.   Violate their fiduciary obligations to Plaintiffs and Class members by (i) failing to disclose material facts Stock Offering and the offer and sale of GTV securities through VOG, (ii) accepting investor funds with the knowledge that no shares of GTV common stock would be issued to Plaintiffs and Class members, (iii) failing to preserve investors asset in the scope of the agency accepted pursuant to the LPAA, and (iv) failing to disclose material facts regarding the status of refunds of investor money for securities not delivered.

184.   In furtherance of the conspiracy, the following actions were undertaken by Defendants:

    a.   Guo caused Saraca to incorporate GTV and contribute all relevant assets;

    b.   Guo, Saraca, and GTV prepared and disseminated the Stock Offering documents for the offer and sale of unregistered shares of GTV common stock;

1               c.      Guo, Wei, Saraca, GTV, and VOG used the Stock Offering

2 documents for the purpose of solicited investment in GTV and donations to the ROL

3 Entities and Guo;

4               d.      Guo, Wei, Saraca, GTV, and VOG promoted and marketed the offer

5 and sale of unregistered GTV securities by making public statements via social media and

6 in the press;

7               e.      Guo, Wei, Saraca, GTV, and VOG represented that donations to the

8 ROL Entities or Guo were a prerequisite for investing with GTV, and did so with the intent

9 of enriching further Guo in connection with the Stock Offering;

10               f.      The ROL Entities lent their name and reputation for challenging the

11 Chinese government to provide further creditability to investment in GTV, and had their

12 promoters, Guo and Wei, solicit donations for the ROL Entities as a prerequisite for

13 investing with GTV directly or through VOG;

14               g.      Guo and the ROL Entities accepted donations made by investors as a

15 condition precedent to being allowed to purchase GTV securities through VOG;

16               h.      Wei agreed to act as the agent of investors seeking to purchase GTV

17 securities through VOG and, in that capacity, accepted investor funds;

18               i.      Wei collected more than $114 million of investor funds to purchase

19 GTV securities through VOG and delivered $61,274,318 of such investor funds to Guo,

20 Saraca, and GTV;

21               j.      Guo, Wei, Saraca, GTV, and VOG retained the $114 million in

22 investor funds without issuing securities to Plaintiffs and Class member.

23      185.   Each Defendant acted with a common purpose and intent to harm Plaintiffs

24 and Class members.  Each Defendant understood that all other Defendants shared the same

25 common intent and purpose.

26      186.   As a direct and proximate cause of the tortious conduct described above,

27 Plaintiffs and the Class suffered damages.

28

187. Defendants are liable to Plaintiffs and the Class in an amount to be proven at trial.

**COUNT VII**

**Negligent Misrepresentation**

**(Against Defendants Guo, Wei, Saraca, GTV, and VOG)**

188. Plaintiffs incorporate by reference and reallege each and every allegation in paragraphs 1-127 above as though fully set forth herein.

189. Guo, Wei, Saraca, GTV, and VOG hold themselves out as the issuer or agents and representatives of the issuer. As such, each owes a duty to Plaintiffs and Class members in the offering and sale of GTV securities.

190. Guo, Wei, Saraca, GTV, and VOG made repeated material misrepresentations and omissions to Plaintiffs, which they knew, or were negligent in not knowing, were false. Specifically, Guo, Wei, Saraca, GTV, and VOG made statements or omissions to Plaintiffs and the Class that misrepresented: (a) the true value of GTV; (b) the true nature of the GTV investment; (c) the relative risk of the GTV securities; (d) how the securities would be obtained through VOG; (e) how investor funds would be used; and (f) the relationship between or among each Defendant.

191. These statements and omissions were false and/or misleading at the time they were made, and were material to the decision of Plaintiffs and Class member to invest in GTV securities. Plaintiffs and Class members would not have sought to participate in the Stock Offering had they known, among other things, that: (a) the GTV Platform was not worth nearly as much as Defendants claimed; (b) the Stock Offering and the solicitation to invest in unregistered GTV securities were in violation of relevant securities laws; (d) GTV securities were anything but "risk-free."

192. Guo, Wei, Saraca, GTV, and VOG failed to exercise reasonable care or competence in communicating this false and/or misleading information to Plaintiffs.

193.   Plaintiffs and Class members justifiably relied on the statements by Guo, Wei, Saraca, GTV, and VOG in making their decision to participate in the Stock Offering and invest in GTV securities through VOG.

194.   Guo, Wei, Saraca, GTV, and VOG understood, or should have reasonably understood, that Plaintiffs and Class members relied upon their public statements and' representations in making the decision to participate in the Stock Offering and invest in GTV securities through VOG.

195.   As a direct and proximate cause of the misfeasance by Guo, Wei, Saraca, GTV, and VOG, Plaintiffs and Class members suffered significant damages.

196.   Guo, Wei, Saraca, GTV, and VOG are liable to Plaintiffs and the Class in an amount to be proven at trial.

## **COUNT VIII**

### **Unjust Enrichment**

### **(Against All Defendants)**

197.   Plaintiffs incorporate by reference and reallege each and every allegation in paragraphs 1-127 above as though fully set forth herein.

198.   Plaintiffs and Class members each conferred a benefit on Guo, Wei, Saraca, GTV, and VOG when they paid over $114 million in Stock Offering proceeds to VOG and designated Wei as their agents to use those funds and purchase GTV securities. According the findings in the Order, $61,274,318 of those funds were transferred to Saraca and GTV.

199.   Plaintiffs and Class members each conferred a benefit on Guo and the ROL Entities when, as a condition precedent to being allowed to purchase GTV securities through VOG, they were required to make a "donation" to either the ROL Entities or Guo.

200.   Despite making donations to Guo and the ROL Entities, making payments to VOG to purchase GTV securities, and Defendants' acceptance of such monies, Plaintiffs and Class members were never issued shares of GTV securities.

201.   Defendants' retention of such funds is inequitable.

202. It is against equity and good conscience to permit Defendants to retain such funds at the expenses and detriment of Plaintiffs and Class members.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment as follows:

(A) Declaring that the claims herein are properly maintainable as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and designating Plaintiffs as class representatives and Plaintiffs' counsel as Class Counsel;

(B) Awarding compensatory damages in favor of Plaintiffs and the other members of the Class against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C) Awarding punitive damages and all applicable statutory penalties in favor of Plaintiffs and the other members of the Class against all of the Defendants, jointly and severally, for damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon; and

(D) Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and expert fees; and

(E) Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: November 5, 2021                    Respectfully Submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

*/s/ Benjamin Y. Kaufman*
Benjamin Y. Kaufman (admitted *pro hac vice*)
kaufman@whafh.com

- 42 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Malcolm T. Brown (admitted *pro hac vice*)
brown@whafh.com
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114


**LYNCH DASKAL EMERY LLP**
Bernard Daskal (admitted *pro hac vice*)
daskal@lde.law
Xun Chen (admitted *pro hac vice*)
chen@lde.law
137 W. 25th St.
New York, NY 10001
Tel.: (212) 302-2400

*Attorneys for Plaintiffs Rong Zhang,*
*Xiaodan Wang, and Chong Shen Raphanella*
*and Proposed Lead Counsel for the Class*

/811836

- 43 -

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2021, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system for filing and thereby causing electronic notice of the same to be provided to all CM/ECF registrants who have appeared in this case.

Further, on November 5, 2021, as authorized by Order dated August 5, 2021 (ECF No. 24), I caused to be served true and correct pdf copies of the aforementioned documents upon Defendant Sara Wei a/k/a Lihong Wei Lafrenz by emailing the documents to the following email addresses: "duizhang@vog.media," "sarawei808@gmail.com", "help@vog.media", "sarawei@protonmail.com", "vog202064@protonmail.com", "vog202064@gmail.com."

*/s/ Benjamin Y. Kaufman*
Benjamin Y. Kaufman (admitted *pro hac vice*)

/811891

# EXHIBIT A

# UNITED STATES OF AMERICA
### Before the
## SECURITIES AND EXCHANGE COMMISSION

**SECURITIES ACT OF 1933**
**Release No. 10979 / September 13, 2021**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-20537**

| | |
|---|---|
| In the Matter of<br><br>**GTV MEDIA GROUP, INC., SARACA MEDIA GROUP, INC., and VOICE OF GUO MEDIA, INC.,**<br><br>Respondents. | **ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER** |

## I.

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") against GTV Media Group, Inc. ("GTV"), Saraca Media Group, Inc. ("Saraca," and together with GTV, the "G Entities"), and Voice of Guo Media, Inc. ("VOG") (collectively, "Respondents").

## II.

In anticipation of the institution of these proceedings, Respondents have submitted Offers of Settlement ("Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, Respondents consent to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant To Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-And-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondents' Offers, the Commission finds[1] that:

### Summary

1.      This proceeding involves violations of the Securities Act registration provisions by Respondents.  From approximately April 2020 through June 2020, Respondents generally solicited thousands of individuals to invest in an offering of GTV common stock (the "Stock Offering").  During the same period, the G Entities solicited individuals to invest in their offering of a digital asset security that was referred to as either G-Coins or G-Dollars (the "Coin Offering").  As a result of these two unregistered securities offerings, whose proceeds were commingled, Respondents collectively raised approximately $487 million from more than 5,000 investors, including individuals in the United States, through approximately July 2020.

2.      According to the Stock Offering's information memorandum ("Memorandum"), the G Entities recently launched a news-focused social media platform, including the website *www.gtv.org*.  The Memorandum claimed it would be "the first ever platform which will combine the power of citizen journalism and social news with state-of-the-art technology, big data, artificial intelligence, block-chain technology and real-time interactive communication" and planned to be "the only uncensored and independent bridge between China and the Western world."

3.      Respondents disseminated information about the two offerings to the general public through publicly-available videos on the G Entities' websites, *www.gtv.org* and *www.gnews.org* as well as on social media platforms such as YouTube and Twitter.  With respect to the Stock Offering, Respondents provided prospective investors with access to Google Drives that contained investment agreements and wire instructions for investors to send funds to purchase securities, while the G Entities solicited investments in the Coin Offering on the G Entities' public websites, social media platforms, and mobile applications.

4.      The G Entities touted the Coin Offering as an investment opportunity with a likelihood of significant returns based on the G Entities' ability to develop an online platform through which investors would be able to transact using either G-Coins or G-Dollars.  To date, the G Entities have not developed their social media platform's ability to accept payment using digital assets or otherwise exchange any digital assets, including those offered in the Coin Offering.

5.      Through both the Stock Offering and the Coin Offering, the G Entities violated Sections 5(a) and 5(c) of the Securities Act by offering and selling securities without having a registration statement filed or in effect with the Commission or qualifying for an exemption from registration.

---

[1]      The findings herein are made pursuant to Respondents' Offers of Settlement and are not binding on any other person or entity in this or any other proceeding.

**Respondents**

6.      GTV, a Delaware corporation based in New York, New York, owns and operates a social media platform, containing numerous publicly-available videos. Saraca wholly owned GTV prior to the Stock Offering and has controlled GTV at all times since its incorporation in April 2020. Neither GTV nor its securities have ever been registered with the Commission in any capacity.

7.      Saraca, a Delaware corporation based in New York, New York, is the parent company of GTV. Saraca sold a minority stake of its ownership interest in GTV through the Stock Offering. Neither Saraca nor its securities have ever been registered with the Commission in any capacity.

8.      VOG, an Arizona corporation based in Phoenix, Arizona, provided various support services, including translation services, to the G Entities. VOG is not registered with the Commission in any capacity.

**Facts**

9.      On April 17, 2020, Saraca established GTV as a wholly-owned subsidiary to own and operate a news-focused social media platform that was still in development. Saraca contributed all assets of the platform to GTV. Saraca's president and sole director at the time was named as one of GTV's executive directors and the two companies shared the same headquarters in New York, New York. Almost immediately after the creation of GTV, the G Entities initiated two unregistered securities offerings: the Stock Offering and the Coin Offering.

**The Stock Offering**

10.     On April 20, 2020, the G Entities launched the Stock Offering to sell between 20 million and 200 million shares of GTV common stock at a price of $1 per share. The Stock Offering offered to sell up to 10% of Saraca's 100% ownership interest in GTV. The Memorandum informed prospective investors that Saraca would continue to exert significant control over GTV after the Stock Offering.

*The G Entities Solicited the General Public to Invest in the Stock Offering*

11.     From approximately April 20, 2020 through June 2, 2020, the G Entities, through their management team and agents, marketed the Stock Offering to the general public through a series of publicly-available videos on GTV's websites, *www.gtv.org* and *www.gnews.org*, as well as YouTube, Twitter, and other social media platforms that constitute general solicitation. The first video, posted on YouTube on April 21, 2020, was entitled, as translated into English, "GTV Private Placement Subscription Instructions" (the "Launch Video"). The Launch Video described the investment terms for the Stock Offering and provided a mobile phone number for potential investors to use for inquiries about the offering. The Launch Video has had over 4,000 views. None of the G Entities' offering videos, including the Launch Video, were password protected or

placed any restriction on who could view them or any limitations on their ability to be shared. As a result, the general public, including prospective U.S. investors, accessed the online marketing videos about the Stock Offering through, for example, independent online research, social media, or referrals from other investors. While the Launch Video stated that the Stock Offering had a minimum investment of $100,000, many investors invested less than $100,000, as discussed below.

12.     Further, the G Entities sent the Launch Video via text messages to hundreds of prospective individual investors with a link to a Google Drive folder that contained additional offering materials for the Stock Offering, such as the information memorandum, subscription agreement, and investment instructions. The G Entities, which owned and controlled the Google Drive folder, did not put any restrictions on the recipients' ability to forward the Google Drive folder or its contents, which were not password-protected, to other prospective investors.

13.     In total, the G Entities sold approximately $339 million worth of GTV common stock to more than 1,000 investors, including U.S. investors. Some of these investors were unaccredited. Pursuant to the Stock Offering's investment instructions, the vast majority, if not all, of the offering proceeds were deposited directly to U.S. bank accounts in the name of Saraca.

14.     On or around June 5, 2020, Saraca transferred $100 million of the Stock Offering proceeds to Hedge Fund A for purposes of investing in the fund. Hedge Fund A's investment strategy involves taking positions in various Asian currencies, particularly the Hong Kong dollar, versus certain developed market currencies through foreign currency forward and option contracts. By late July 2020, Hedge Fund A had invested $30 million of Saraca's $100 million transfer and, to date, that $30 million investment in Hedge Fund A has lost approximately $29.2 million in value.

*VOG Offered and Sold GTV Stock*

15.     VOG engaged in steps necessary to the distribution of the Stock Offering. Specifically, the G Entities, through their management team and agents, directed VOG to purchase GTV stock from the G Entities on behalf of prospective investors who wanted to invest less than $100,000. VOG then solicited investors and collected investor funds for the purpose of purchasing shares of GTV stock on their behalf. There was no minimum investment amount to invest in the Stock Offering through VOG and investment amounts were generally in the amount of $100 or more.

16.     To help facilitate VOG's role in offering and selling of GTV stock, the G Entities gave VOG a one-page Limited Purpose Agency Agreement ("LPAA") to provide to prospective investors in the Stock Offering. The LPAA specified that, in return for minimal consideration, a representative of VOG would serve as a so-called "agent" for an investor and purchase GTV shares on behalf of the investor in exchange for funds provided by the investor.

17.     In response to inquiries received from prospective investors about the Stock Offering, VOG sent prospective investors a text message with a link to a folder on its Google Drive that contained the LPAA as well as wire instructions to a VOG bank account, but not any other

offering documents or financial information about the G Entities. VOG did not put any restrictions on prospective investors' ability to forward the Google Drive folder or its contents, which were not password-protected, to other prospective investors.

18.     As part of the Stock Offering, VOG sold approximately $114 million in GTV stock to more than 4,500 investors, including U.S. investors. None of these investors ultimately were issued GTV shares. Many of these investors were unaccredited.

19.     At the direction of the G Entities, VOG transferred a total of $61,274,318 in funds received from investors through the Stock Offering to bank accounts of the G Entities. Specifically, on May 15, 2020, VOG provided separate $15 million checks each to GTV and Saraca. VOG also provided Saraca with a check for $31,274,318 that Saraca deposited on or about July 22, 2020. VOG continued to receive funds from investors for the purchase of GTV stock through at least June 2020.

20.     During the Stock Offering, VOG provided the G Entities with updates on its fundraising efforts and amounts collected from investors.

21.     Based on the above, VOG engaged in steps necessary for the distribution of GTV stock and therefore offered and sold GTV stock.

*Respondents' Conduct Violated the Offering Registration Provisions of the Securities Act*

22.     No registration statements were filed or in effect for the Respondents' offers and sales of GTV common stock, and the offers and sales did not qualify for an exemption from registration under the Securities Act.

23.     As a result of the conduct described above, Respondents violated Section 5(a) of the Securities Act, which states that "[u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such a security through the use or medium of any prospectus or otherwise, or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

24.     As a result of the conduct described above, Respondents violated Section 5(c) of the Securities Act, which states that "[i]t shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security."

**The Coin Offering**

*The G Entities Solicited the General Public to Invest in the Coin Offering*

25.     From approximately April 1, 2020 through June 30, 2020, the G Entities, through their management team and agents, marketed the sale of G-Coins and G-Dollars to the general public through online videos on YouTube, Twitter, and other video-sharing and social media platforms.  The G Entities have yet to develop or distribute the digital assets sold in the Coin Offering or a platform that would allow users to transact with or sell digital assets.

26.     The G Entities' online promotions set forth that G-Coins, which the G Entities' indicated would eventually be merged into G-Dollars forming a single digital asset, and G-Dollars would be usable to purchase goods or services or exchange for gold or fiat currency on the G Entities' online platform.  As part of its solicitation of G-Coin and G-Dollar investors, the G Entities did not provide investors with financial information about the plan to develop any digital asset or platform, or any written offering materials, including, for example, a white paper or private placement memorandum.

27.     The G Entities collected approximately $34 million from the G-Coin and G-Dollar investors, pooling the proceeds in the G Entities' bank accounts and commingling them with proceeds from the Stock Offering.  As part of the Coin Offering, many investors received a 20% discount on the $.01 purchase price for G-Coins and G-Dollars.  Investors participated in the Coin Offering by transferring funds directly to the G Entities' U.S. bank accounts, by making payments to the G Entities' accounts on online payment platforms, by making purchases via the Apple App Store, or by writing checks.  The vast majority of G-Coin and G-Dollar investors invested no more than $10,000 per investor, and the G Entities never inquired as to the financial or investment background of these investors.

*Investors in the Coin Offering had a Reasonable Expectation of Obtaining a Future Profit from the Efforts of the G Entities*

28.     The G Entities promoted the sale of G-Coins and G-Dollars as an opportunity to obtain future profits from the efforts of the G Entities' management team and agents in the development of a digital asset and platform, and purchasers would have reasonably expected that they would profit from the G Entities' efforts.  In the G Entities' online solicitations, the G Entities referred to G-Coin and G-Dollar purchases as "investments" and highlighted the likelihood of significant return on capital on the investment.  In their online videos, the G Entities also discussed their view of the anticipated liquidity of G-Coins and G-Dollars on the GTV online platform, and their plan to allow users to exchange G-Coins and G-Dollars for fiat currency and goods and services available through the platform.  At the time of the Coin Offering, the G Entities also discussed plans to develop the GTV online platform's capability to process transactions using G-Coins and G-Dollars and touted the "management, financial, investment, and merger and acquisition" experience of the G Entities' management team and agents.  In fact, the Coin Offering's online materials stated that the GTV team would be "making an all-out effort to completely upgrade the G-Dollar system."  The Memorandum also stated that the G Entities and their management team planned to build a platform that "will utilize state-of-the-art technology

including big data, artificial intelligence, 5G, and the blockchain payment system (G coin)."

*The G Entities Offered and Sold G-Coins and G-Dollars in Violation of the Securities Act*

29.     Based on the above, the G Entities offered and sold G-Coins and G-Dollars as investment contracts and therefore securities pursuant to *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946), and its progeny, including the cases discussed by the Commission in its *Report of Investigation Pursuant To Section 21(a) of the Securities Exchange Act of 1934: The DAO* (Exchange Act Rel. No. 81207) (July 25, 2017) (the "DAO Report").

30.     No registration statements were filed or in effect for the G Entities' offers and sales of securities as part of the Coin Offering, and the offers and sales did not qualify for an exemption from registration under the Securities Act.

31.     As a result of the conduct described above, the G Entities violated Section 5(a) of the Securities Act, which states that "[u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such a security through the use or medium of any prospectus or otherwise, or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

32.     As a result of the conduct described above, the G Entities violated Section 5(c) of the Securities Act, which states that "[i]t shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security."

## Disgorgement and Civil Penalties

33.     The disgorgement and prejudgment interest ordered in paragraph IV is consistent with equitable principles and does not exceed each Respondent's net profits from its violations, and will be distributed to harmed investors to the extent feasible. The Commission will hold funds paid pursuant to paragraph IV in an account at the United States Treasury pending distribution. Upon approval of the distribution final accounting by the Commission, any amounts remaining that are infeasible to return to investors, and any amounts returned to the Commission in the future that are infeasible to return to investors, may be transferred to the general fund of the U.S. Treasury, subject to Section 21F(g)(3) of the Exchange Act.

## Undertakings

34.     Respondents have undertaken to:

A.     Not participate, directly or indirectly, in any offering of a digital asset security.

B.     Assist the Commission staff in the administration of a distribution plan,

including any and all efforts to distribute to affected investors the monetary relief described in paragraph IV below. In connection with such assistance, Respondents will produce, without service or notice of subpoena, any and all documents and other information reasonably requested by the Commission staff.

      C.     Publish notice of this Order on the G Entities' websites, including, but not limited to, *www.gtv.org* and *www.gnews.org*, and social media channels, in a form not unacceptable to Commission staff, within 10 days of the date of this Order.

      D.     Certify, in writing, compliance with the undertaking set forth above in paragraph 34.C. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Respondents agree to provide such evidence. The certification and supporting material shall be submitted to Sandeep Satwalekar, Assistant Regional Director, Division of Enforcement, with a copy to the Office of Chief Counsel of the Enforcement Division, no later than thirty (30) days from the date of the completion of the undertakings.

      E.     In determining whether to accept the Offers, the Commission has considered these undertakings.

## IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondents' Offers.

Accordingly, it is hereby ORDERED that pursuant to Section 8A of the Securities Act:

      A.     Respondents cease and desist from committing or causing any violations and any future violations of Sections 5(a) and 5(c) of the Securities Act.

      B.     Respondents shall comply with the undertakings enumerated in paragraph 34 above.

      C.     Respondents GTV and Saraca shall, within 14 days of the entry of this Order, pay, jointly and severally, disgorgement of $434,134,141, and prejudgment interest of $15,776,488 to the Securities and Exchange Commission. If timely payment of disgorgement and prejudgment interest is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.

      D.     Respondent GTV shall, within 14 days of the entry of this Order, pay a civil penalty of $15,000,000 to the Securities and Exchange Commission. If timely payment of penalty is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

      E.     Respondent Saraca shall, within 14 days of the entry of this Order, pay a

civil penalty of $15,000,000 to the Securities and Exchange Commission.  If timely payment of penalty is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

       F.      Respondent VOG shall, within 14 days of the entry of this Order, pay disgorgement of $52,610,922, prejudgment interest of $1,911,877, and a civil penalty of $5,000,000 to the Securities and Exchange Commission.  If timely payment of disgorgement and prejudgment interest is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.  If timely payment of civil penalty is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

Payment by each Respondent must be made in one of the following ways:

    (1)    Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

    (2)    Respondent may make direct payment from a bank account via Pay.gov through the SEC website at *http://www.sec.gov/about/offices/ofm.htm*; or

    (3)    Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

        Enterprise Services Center
        Accounts Receivable Branch
        HQ Bldg., Room 181, AMZ-341
        6500 South MacArthur Boulevard
        Oklahoma City, OK 73169

       Payments by check or money order must be accompanied by a cover letter identifying Respondent GTV, Saraca, or VOG, respectively, as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Sanjay Wadhwa, Senior Associate Regional Director, Securities and Exchange Commission, 200 Vesey Street, Suite 400, New York, New York 10281, or such other person or address as the Commission staff may provide.

       G.      Pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, a Fair Fund is created for the disgorgement, prejudgment interest, and penalties referenced in paragraph IV above.  Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, each of the Respondents GTV, Saraca, and VOG agrees that in any Related Investor Action, it shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset").  If the court in any Related Investor Action grants such a Penalty Offset, each of the Respondents GTV, Saraca, and VOG agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the

Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondents GTV, Saraca, or VOG by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

By the Commission.

Vanessa A. Countryman
Secretary

# EXHIBIT B

# Limited Purpose Agency Agreement

KNOW ALL MEN BY THESE PRESENTS THAT, _____ (hereinafter referred to as the "Investor"), hereby intending to be legally bound, and in consideration of One Dollar ($1.00), and other good, valuable and sufficient considerations, the receipt and adequacy whereof being hereby acknowledged by the Agent and for the benefit of the Investor and his/her successors and assigns, does hereby assign, direct, and designate Lihong Wei Lafrenz (hereinafter referred to as the "Agent"), her successors, assigns, and affiliates, to purchase on my behalf, with funds to be provided by me in the sum of $_____, certain shares in GTV Media Group, Inc. (hereinafter referred to as the "Investment") together with all rights of action accrued or which may accrue thereunder; and the Investor does hereby constitute and appoint said Agent as the Investor's true and lawful agent and attorney-in-fact, for the limited purpose of completing the Investment on my behalf and to do and perform all acts, matters, and things touching upon the premises, in like manner, and to all intents and purposes as the Investor could do if personally present.

IN WITNESS WHEREOF, the Investor has caused these presents to be executed this _____ day of _____, 2020. This agreement may be executed in counterparts and delivered by electronic means and signatures on this stipulation delivered electronically shall be deemed originals.

**Agent contact information:**                          **Agent**

Tel: +15202739848                                      By: _____

Email: vog202064@gmail.com                             Signature_____

Address: 1850 W Orange Grove Rd, Tucson,               Date: _____

AZ 85704

                                                        **Investor**

**Investor contact information:**                       By: _____

Tel:                                                    Signature_____

Email:                                                  Date: _____

Address: