**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                    :
In re:                              :    Chapter 11
                                    :
HO WAN KWOK,                        :    Case No. 22-50073 (JAM)
                                    :
           Debtor.¹                 :
                                    :
-------------------------------------------------------x
```

**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER, PURSUANT TO
BANKRUPTCY CODE SECTIONS 363, 541, 1108, AND 1505, (A) CONFIRMING THAT
CHAPTER 11 TRUSTEE HOLDS ALL OF DEBTOR'S ECONOMIC AND
CORPORATE GOVERNANCE RIGHTS IN DEBTOR-CONTROLLED ENTITIES,
(B) AUTHORIZING CHAPTER 11 TRUSTEE TO ACT IN ANY FOREIGN COUNTRY
ON BEHALF OF ESTATE, AND (C) GRANTING RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Debtor"), respectfully states as follows in support of this

motion (the "Motion"):

**RELIEF REQUESTED**

1.      By this Motion, the Trustee seeks entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "Proposed Order"), confirming that, as of his appointment on

July 8, 2022, the Trustee holds all of the Debtor's economic and governance rights, for the

benefit of the Debtor's estate (the "Estate"), with respect to all corporate entities owned and/or

controlled by the Debtor (the "Debtor-Controlled Entities"). The Debtor-Controlled Entities

include, without limitation, Genever Holdings Corporation ("Genever (BVI)"), a British Virgin

Islands ("BVI") corporation that, through its wholly owned subsidiary, Genever Holdings LLC

---

¹    Although the Debtor's legal name is Ho Wan Kwok, he is also known as Guo Wengui, Miles Guo, and Miles
     Kwok, as well as numerous other aliases. The last four digits of the Debtor's taxpayer identification number are
     9595.

("Genever (US)"),[2] a New York limited liability company, is the registered owner of, among other things, an apartment at the Sherry-Netherland building in New York, New York (the "Sherry-Netherland Apartment").[3]  This relief is necessary because the Debtor has shown a willingness to defy court orders, suggesting that the Debtor and related persons (whether acting individually or through the Debtor-Controlled Entities) may try to take advantage of any ambiguity or misunderstanding concerning the Trustee's rights in order to frustrate the Trustee's efforts to identify and recover property of the Estate.

2.      In addition, to facilitate the Trustee's exercise of corporate control over the Debtor-Controlled Entities and to support the Trustee's investigation, collection, and recovery of other Estate assets that may be located in foreign jurisdictions, the Trustee requests, pursuant to section 1505 of the Bankruptcy Code, the authority to act, as the Debtor's foreign representative, in any foreign country on behalf of the Estate in any way permitted by applicable foreign law for the purpose of (a) investigating, collecting and recovering assets of the Debtor located in foreign countries, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign corporate registries (or similar entities)

---

[2]    On October 12, 2020, Genever (US) commenced a chapter 11 case, which is currently pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 20-12411 (JLG).  For the avoidance of doubt, at this time, the Trustee is not requesting any relief with respect to the chapter 11 case of Genever (US), including any modification of the *Second Amended and Restated Settlement Agreement*, dated as of September 24, 2021 [ECF No. 131-1 in Case No. 20-12411 (JLG)].  Nor should the requested relief, if granted, be deemed to authorize the Trustee to take any particular action with respect to Genever (US) in its chapter 11 case, with respect to which the Trustee will seek relief from the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court"), as may be appropriate.  The Trustee reserves all its rights in that regard.

[3]    As the Court is aware, the identity of the true owner of the Sherry-Netherland Apartment is presently subject to dispute.

holding such documents with respect to the Debtor-Controlled Entities, including the corporate documents related to Genever (BVI) from the appropriate BVI entity.

3.      To enable the Trustee to exercise the foregoing authority without interference from the Debtor, the Trustee requests confirmation from the Court that the Debtor may not interfere with, hinder, or delay the Trustee's exercise of the Debtor's economic and governance rights with respect to the Debtor-Controlled Entities or the Trustee's authority as the Debtor's foreign representative under section 1505 of the Bankruptcy Code.

4.      Finally, the Trustee requests that the Court request the assistance of the foreign courts in furtherance of the Trustee's exercise of the foregoing authority, including the assistance of the BVI courts regarding any request of the Trustee for relief (including on an emergency basis) with respect to the Trustee's exercise of corporate control over Genever (BVI).

## JURISDICTION, VENUE, AND STATUTORY BASES

5.      The United States Bankruptcy Court for the District of Connecticut (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended). This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

6.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 363, 541, 1108, and 1505 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

8.      On February 15, 2022 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.     On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in the Debtor's chapter 11 case (the "Chapter 11 Case"). No examiner has been appointed in the Chapter 11 Case.

10.     On June 15, 2022, the Court entered a memorandum of decision and order [ECF No. 465] (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee.

11.     On July 8, 2022, the Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523] (the "Appointment Order").

## BASIS FOR RELIEF

### A.     The Court Should Confirm that the Trustee Holds All of Debtor's Economic and Governance Rights with Respect to All Debtor-Controlled Entities

12.     Section 541 of the Bankruptcy Code provides that property of the estate includes "all property, wherever located and by whomever held, to which the debtor has legal or equitable interest."  11 U.S.C. § 541.  In addition, section 1108 of the Bankruptcy Code provides that "[u]nless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business."  *Id*. § 1108.  The related case law confirms that a chapter 11 trustee "possesses both the economic and governance rights to participate in the management of [the debtor-owned entity] that the Debtor himself enjoyed prior to his bankruptcy filing."  *In re Modanlo*, 412 B.R. 715, 728 (Bankr. D. Md. 2006) (confirming chapter 11 trustee's authority to, among other things, amend formation papers of debtor's wholly-owned Delaware LLC, designate himself as the LLC manager, and place LLC into voluntary chapter 11).  *See also In re Albright*, 291 B.R. 538 (Bankr. D. Col. 2003) ("Because the Trustee became the sole member of [debtor-owned entity] upon the Debtor's bankruptcy

4

filing, the Trustee now controls, directly or indirectly, all governance of that entity, including decisions regarding liquidation of the entity's assets.").

13.    It is paramount that the Trustee exercise, as soon as possible, economic and corporate control over the Debtor-Controlled Entities, including Genever (BVI), in order to preserve and recover assets for the benefit of the Estate.  For the avoidance of doubt, this includes the Trustee's authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities.

14.    It is undisputed that the Debtor owns all of the equity in Genever (BVI).[4]  It is also undisputed that Genever (BVI), in turn, wholly owns Genever (US),[5] which owns, among other things, the Sherry-Netherland Apartment.  According to the Genever (US)'s schedules of assets and liabilities in its chapter 11 case, the Sherry-Netherland Apartment had an initial purchase price of $70 million, and the Trustee believes it continues to have substantial value.  Genever (US) is seeking in its chapter 11 case to sell the Sherry-Netherland Apartment, with the proceeds to be distributed pursuant to a proposed chapter 11 plan.[6]  Chapter 11 counsel to Genever (US) has advised the Trustee that, to date, the Debtor has been directing such counsel in the conduct of Genever (US)'s chapter 11 case.  In light of the Trustee having stepped into the shoes of the Debtor, including as it relates to the Debtor's economic and governance rights with respect to Genever (BVI), ***the Trustee, not the Debtor***, should have the authority to provide direction to Genever (US).  Accordingly, the Trustee needs to exercise, as soon as possible, the

---

[4]    *See, e.g.*, *Global Notes and Statements of Limitations, Methodology, and Disclaims Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs* at 4 [ECF No. 77] (the "Global Notes").  The Debtor has asserted that he holds the equity in Genever (BVI) in trust for Bravo Luck Limited, the equity of which is owned by the Debtor's son.  The Trustee is investigating to what extent this assertion is accurate.

[5]    *See* List of Equity Holders attached to Chapter 11 Petition of Genever (US) [ECF No. 1] (Case No. 20-12411 (JLG) (Bankr. S.D.N.Y.) (identifying Genever (BVI) as sole equity holder).

[6]    To be clear, the Trustee is not seeking to stop the sale process with respect to the Sherry Netherland Apartment.  The Debtor reserves all rights, however, with respect to the proceeds of such sale.

Estate's rights in Genever (US)'s chapter 11 case, which will include seeking relief in the New York Bankruptcy Court, as necessary.

15.     In addition, the Trustee is investigating the extent to which the Debtor owns and/or controls additional corporate entities.[7]  As part of this investigation, on July 12, 2022, the Trustee sent letters to Debtor's counsel requesting, among other things, documentation and information regarding the Debtor's economic and governance rights in the Debtor-Controlled Entities, including Genever (BVI).  Among other things, the Trustee requested, with respect to each such entity, the organizational documents, capitalization tables, structure charts, schedules identifying the composition of board of directors, board of directors, or similar governing bodies, schedules of all officers, and other related documents.[8]  To date, the Debtor has not provided any such documents to the Trustee.  The Trustee needs these documents to understand the full universe of corporate entities with respect to which the Trustee has governance rights.

16.     Unless the Court confirms the Trustee's governance rights with respect to all Debtor-Controlled Entities, the Trustee is deeply concerned that the Debtor will continue his efforts to impede the Trustee's exercise of control over assets of the Estate.  Indeed, as the Court is aware, Justice Barry Ostrager of the New York Supreme Court already found that the Debtor has a history of "secret[ing] his assets in a maze of corporate entities and with family members."[9] He further observed:

---

[7]     For example, in addition to Genever (BVI), the Debtor's *Statements of Financial Affairs* identifies two corporate entities that the Debtor claims he owned in the past, but for various reasons, no longer controls, namely Shiny Times Holdings, LTD, and Well Origin Limited.  *See* Global Notes at 6-7.

[8]     The Trustee's letter also requested that Debtor's counsel preserve all documents, data, information, and communications related in any what to the Debtor, his affiliates, the Estate, property of the Estate, and/or the Chapter 11 Case.

[9]     *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Case No. 22-50073 (February 9, 2022) (the "New York State Court Ruling") at 1.  A copy of New York State Court Ruling is attached hereto to **Exhibit B**.

> [t]he machinations associated with the shell game Kwok has
> orchestrated with respect to the Lady May are of a piece with every
> other evasive and contemptuous act Kwok has taken during the five
> years this litigation has been pending . . . [10]

Accordingly, the relief the Trustee seeks with respect to corporate governance rights is both critically important and very time sensitive.

17.     To be clear, through this Motion, the Trustee is merely seeking confirmation from this Court that he now holds the same economic and corporate governance rights in the Debtors-Controlled Entities as the Debtor had prior to entry of the Appointment Order.  The Trustee is not seeking permission to *exercise* such governance rights, as doing so is well within the ordinary course of the Debtor's business.  However, to the extent the Court finds it necessary to authorize such actions under section 363(b) of the Bankruptcy Code, the Trustee requests such authorization and submits that sound business justification exists for this request for all the reasons set forth above.  *See Modanlo*, 412 B.R. at 732 (granting chapter 11 trustee's request, under section 363(b) of Bankruptcy Code, to take corporate action related to subsidiary of entity owned by debtor, but without deciding whether such action was inside or outside the ordinary course of business).  To be clear, by this Motion, the Trustee is <u>not</u> seeking authority to sell or otherwise dispose of any equity in any Debtor-Controlled Entities or other assets of the Debtor. To the extent the Trustee seeks to sell or otherwise dispose of assets that are identified and recovered for the benefit of the Estate, the Trustee will seek approval of any such sales or dispositions by separate motion.

18.     Finally, to the extent the Court finds it necessary to rely on section 363(b) for the relief requested in this Motion, the Trustee requests a waiver of the fourteen-day stay requirements under Bankruptcy Rule 6004(h), such that the Proposed Order be effective

---

[10]    New York State Court Ruling at 7.

7

immediately upon entry thereof.  For all the reasons set forth above, delays in the Trustee's exercise of economic and corporate governance rights could adversely affect the Trustee's ability to identify and recover property of the Estate.

**B.**      **The Court Should Appoint the Trustee as Foreign Representative of Debtor's Estate**

19.      Section 1505 of the Bankruptcy Code provides that, to the extent consistent with applicable foreign law, a "trustee or another entity (including an examiner) may be authorized by the court to act in a foreign country on behalf of an estate created under section 541." 11 U.S.C. § 1505.  Here, the Trustee requests authority under section 1505 to act as the Debtor's foreign representative in any foreign country for the purpose of (a) investigating, collecting, and recovering assets of the Debtor located in foreign countries, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign corporate registries (or similar entities) holding corporate documents with respect to the Debtor-Controlled Entities, including the corporate documents related to Genever (BVI) from the appropriate BVI entity.   The Trustee will, of course, comply with all applicable foreign law requirements when acting in any foreign country.

20.      In addition, and in furtherance of the this relief, the Trustee requests that the Court request the assistance of the foreign courts, including the assistance of the BVI courts regarding any request of the Trustee for relief with respect to the Trustee's exercise of corporate control over Genever (BVI).  In this regard, the Trustee is informed by BVI counsel that the BVI courts will be in summer recess until September 2022, which practically means that no hearing could be held in the BVI until September 2022, except on an emergency basis.  The Trustee respectfully

requests this Court's assistance in obtaining emergency relief from the BVI courts as necessary.[11]

Such relief is plainly warranted in light of the Debtor's propensity, as discussed above, to hide

his assets from creditors and to disregard court orders (even when threatened with contempt

sanctions). Given this history, the Debtor should not be left to exercise any corporate

governance rights with respect to the Debtor-Controlled Entities for one more day.

21.    To enable the Trustee to exercise the foregoing authority without interference

from the Debtor, the Court should confirm that the Debtor may not to interfere with, hinder, or

delay the Trustee's exercise of the Debtor's economic and governance rights with respect to the

Debtor-Controlled Entities or the Trustee's authority as the Debtor's foreign representative under

section 1505 of the Bankruptcy Code, including any action taken by the Trustee in a foreign

court on behalf of the Estate in furtherance thereof. To the extent the Debtor opposes any action

taken or to be taken by the Trustee in accordance with the foregoing authority, the Debtor should

be limited to seeking relief from this Court (and not the relevant foreign court or other foreign

entity, as the case may be) on notice of parties in interest in this case, to the extent the Debtor can

show that he has standing to do so.

## NO PRIOR REQUEST

22.    The Trustee has not previously sought the relief requested herein from this or any

other court.

*[Remainder of page intentionally left blank.]*

---

[11]    The Trustee is hopeful that he will not have to seek the intervention of the BVI courts on an emergency basis
but needs to be authorized to do so to the extent necessary.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the Proposed Order granting the relief requested in this Motion and such other relief as is just and proper.

Dated:    July 23, 2022          LUC A. DESPINS,
          New Haven, Connecticut     CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

      *and*

    Nicholas A. Bassett (*pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

      *and*

    Avram E. Luft (*pro hac vice* pending)
    Douglass Barron (*pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com

    *Proposed counsel for the Chapter 11 Trustee*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK,                                            :    Case No. 22-50073 (JAM)
                                                       :
                  Debtor.                              :
                                                       :
-------------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363, 541, 1108, AND 1505, (A) CONFIRMING THAT CHAPTER 11 TRUSTEE HOLDS ALL OF DEBTOR'S ECONOMIC AND CORPORATE GOVERNANCE RIGHTS IN DEBTOR-CONTROLLED ENTITIES, (B) AUTHORIZING CHAPTER 11 TRUSTEE TO ACT IN ANY FOREIGN COUNTRY ON BEHALF OF ESTATE, AND (C) GRANTING <u>RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>") of Mr. Luc A. Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") appointed in the chapter 11 case of Ho Wan Kwok (the "<u>Debtor</u>"), for the entry of an order (this "<u>Order</u>"), pursuant to sections 363, 541, 1108, and 1505 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (a) confirming that the Trustee holds all of the Debtor's economic and corporate governance rights in all corporate entities owned and/or controlled by the Debtor (the "<u>Debtor-Controlled Entities</u>"), including, without limitation, Genever Holdings Corporation ("<u>Genever (BVI)</u>") and granting related relief, (b) authorizing the Trustee to act in any foreign country on behalf of the Debtor's estate (the "<u>Estate</u>"), and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Motion is in the best interest of the Estate, its creditors, and all parties in interest; and due

and sufficient notice of the Motion having been given under the particular circumstances; and it

appearing that no other or further notice need be given; and upon all of the proceedings had

before this Court; and any objections to the relief requested herein having been withdrawn or

overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is

hereby ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    Effective as of entry of the order, dated July 8, 2022, granting the appointment of

Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523], the Trustee holds all of the

Debtor's economic and governance rights, for the benefit of the Estate, with respect to all

Debtor-Controlled Entities, including, without limitation, Genever (BVI).  For the avoidance of

doubt, the foregoing rights include the Trustee's authority to replace any existing officer,

director, manager, or similar person of the Debtor-Controlled Entities.  As part of the foregoing,

to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee

in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been

removed.

3.    To the extent the Trustee's exercise of economic and governance rights with

respect to the Debtor-Controlled Entities is deemed to be outside the ordinary course of business,

such exercise is hereby approved, as there is sound business justification for the exercise of such

rights, including because the Trustee holds all of the Debtor's economic and governance rights

with respect to such entities for the benefit of the Estate.  Notwithstanding the applicability of

any of Bankruptcy Rule 6004(h) or any other provisions of the Bankruptcy Rules or the Local

2

Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Connecticut to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.  For the avoidance of doubt, nothing in this Order authorizes the Trustee to sell or otherwise dispose of any equity in Debtor-Controlled Entities or other assets of the Debtors.

4.     Pursuant to section 1505 of the Bankruptcy Code, the Trustee is hereby authorized to act, as the Debtor's foreign representative, in any foreign country on behalf of the Estate in any way permitted by applicable foreign law for the purpose of (a) investigating, collecting, and recovering assets of the Debtor located in foreign countries, including relief in foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign corporate registries (or similar entities) holding such documents with respect to the Debtor-Controlled Entities.  Without limiting the foregoing, the Trustee is authorized, pursuant to section 1505 of the Bankruptcy Court, to request and obtain the corporate documents related to Genever (BVI) from the appropriate British Virgin Island ("BVI") entity holding such corporate documents.

5.     The Debtor shall not interfere with, hinder, or delay the Trustee's exercise of the authority under this Order, including any action taken or to be taken by the Trustee in a foreign court on behalf of the Estate in furtherance of such authority.  To the extent the Debtor opposes the Trustee's exercise of such authority, the Debtor shall be limited to seeking relief from this

Court (and not the relevant foreign court or other foreign entity, as the case may be) on notice to parties in interest, to the extent the Debtor can show that he has standing to do so.

6.      In furtherance of the Trustee's exercise of the authority under this Order, the Court respectfully requests the assistance of the foreign courts, including the assistance of the BVI courts regarding any request of the Trustee for relief (including on an emergency basis) with respect to the Trustee's exercise of corporate control over Genever (BVI).

7.      Nothing in this Order shall be deemed to authorize any particular action with respect to Genever Holdings LLC ("Genever (US)") in its chapter 11 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Genever Court"). The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its chapter 11 case.

8.      The Trustee is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# **EXHIBIT B**

**February 9, 2022 Decision of Supreme Court of the Statue of New York**

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| PRESENT: | **HON. BARRY R. OSTRAGER** | PART | **IAS MOTION 61EFM** |
|---|---|---|---|
| | *Justice* | | |

--------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

                      Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER: HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION,

                      Defendants.

| INDEX NO. | 652077/2017 |
|---|---|
| MOTION DATE | |
| MOTION SEQ. NO. | 019 |

**DECISION + ORDER ON MOTION**

--------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

     In this 2017 case with 1,180 docket entries – almost all of which involve defendant Kwok Ho Wan's ("Kwok") efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members -- this Court is called upon to determine whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has met the burden of establishing that the Court should enter a final Order of Civil Contempt against Kwok. For the reasons that follow, this Court is simultaneously issuing a final Order of Civil Contempt.

     PAX secured a judgment against Kwok in the sum of $116,402,019.57 on February 3, 2021 (NYSCEF Doc. No. 716). Thereafter, PAX undertook a year's long effort to enforce its judgment by first identifying and then attempting to levy upon Kwok's assets in the United States. PAX encountered difficulty identifying assets over which Kwok exercised control because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members. This scheme has enabled Kwok to assert that he has no assets despite his lavish lifestyle, which plaintiff has catalogued with material from social

media clippings, photographs and videotapes showing Kwok living large and boasting of his

wealth, expensive homes, private plane, and yacht. As noted in the transcript of proceedings of

February 2, 2022, this evidence is of little probative value, as the witnesses sponsoring this

evidence have no first-hand knowledge of the authenticity of this "evidence" other than that it is

accessible on various websites.

On February 2, 2022, this Court held an evidentiary hearing at which seven witnesses

submitted direct testimony by affidavit and were made available for cross-examination. The

hearing followed protracted proceedings by PAX to locate and levy upon assets owned by

defendant Kwok. Those proceedings established, among other things, that Kwok exercised

dominion and control over a yacht called the Lady May and resulted in a series of orders

restraining Kwok and/or the registered owners of the yacht called Lady May from removing the

Lady May from the Court's jurisdiction. The first such Order was issued on September 30,

2020, as described in detail *infra,* and was followed by an October 15, 2020 Order that restrained

"Mr. Kwok and/or the registered owners of . . . the yacht, the 'Lady May'" from leaving the

jurisdiction. (NYSCEF Doc. No. 630). As detailed *infra*, Kwok spent much of July, August and

September of 2020 on the Lady May. Contemporaneously with the proceedings resulting in the

September 30 and October 15, 2020 restraining Orders, Kwok and his cohorts made arrangement

for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas. On

March 16, 2021, the Court issued a conditional order of civil contempt which directed that if

Kwok failed to return the Lady May to the jurisdiction of this Court by May 31, 2021, he would

be subject to a $500,000.00 fine for each day that the Lady May remained outside the jurisdiction

of this Court.

The Appellate Division, First Department, affirmed this Court's order holding Kwok in

conditional civil contempt, finding that "the daily fine of $500,000.00 was intended to strongly

encourage defendant to purge himself of the contempt, which, despite being permitted to

accomplish, he has shown no interest in doing. . ." NYSCEF Doc. No. 953, 199 AD3d 423

(2021). The Appellate Division further held:

> The motion court acted within its discretion in holding defendant in civil contempt, as
> plaintiff established by clear and convincing evidence that defendant violated a lawful,
> clear mandate of the court, of which he had knowledge, and that such violation resulted
> in prejudice to plaintiff's rights (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015];
> Judiciary Law § 753). … The motion court is instructed to proceed with an evidentiary
> hearing to resolve a dispute as to ownership and control of the yacht, and to assess
> appropriate penalties.

Pursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022

evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the

yacht. Kwok failed to testify at the February 2, 2022 hearing, having previously invoked his

Fifth Amendment right to decline to testify or respond to discovery requests relating to the Lady

May in response to PAX's asset discovery efforts. PX 27, 28, 29, 30.[1] This invocation of the

Fifth Amendment notwithstanding, Kwok is an active litigant in multiple fora and he has given

prior testimony in this and other proceedings.

Kwok also filed a complaint in this court captioned *Guo Wengui a/k/a Miles Kwok v

Hong Zeng*, 157025/2020, which references a blog post from Freebeacon.com dated September

8, 2017 in which Kwok complains about "several incidents involving *his* 152-foot motor yacht,

Lady May..." (Complaint ¶ 8, NYSCEF Doc. No. 001) ("the Zeng Complaint"). The Zeng

Complaint describes Kwok as an "outspoken critic of the CCP" who has gone to great "lengths

to expose the rampant corruption within the CCP and the Chinese government." The

*Washington Post* reported that a former advisor to President Trump, Steve Bannon, was arrested

in 2020 while on board the Lady May, and described Mr. Bannon as a friend and business

---

[1] "PX" refers to Plaintiff's Trial Exhibits.

associate of Kwok, "a vocal online critic of the Chinese government who was once close with that country's intelligence service but is now wanted by authorities in Beijing on charges of fraud, blackmail and bribery." Other news outlets have reported that Mr. Bannon utilized Kwok's private jet on more than one occasion to travel to political rallies.

The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process.

Kwok once was the sole shareholder of Hong Kong Investments Limited ("HK International"). The testimony adduced at the hearing established that in 2014 Kwok transferred a 100% interest in HK International to one Qu Guo Jiao for no consideration. Ms. Qu was a trusted business associate of the Kwok family. Thereafter, Kwok fled China and on February 23, 2015, HK International purchased the Lady May for £ 28 million GBP. No testimony adduced at the hearing established the source of funds to purchase the Lady May, but the uncontradicted testimony of Kwok's daughter Mei Guo established that Ms. Qu did not provide the funds to purchase the yacht. Tr. 44.[2] Consequently, a reasonable inference is that Kwok provided the funds to HK International which were used to purchase the yacht. It is undisputed that Ms. Qu transferred the ownership of the Lady May to Kwok's daughter, Mei Guo, on or around June 17, 2017, for $1 or no consideration. Tr. 47. According to Ms. Guo's affidavit (NYSCEF Doc. No. 1162), Ms. Guo ultimately transferred ownership of the Lady May to the current title holder HK International Funds Investments (USA) Limited, LLC ("HK USA"). Ms. Guo further avers that she is the sole owner of HK USA, although all of the multi-million dollar annual expenses for the

---

[2] "Tr." refers to the transcript of the evidentiary hearing, efiled at NYSCEF Doc. No. 1179.

Lady May, including fuel, maintenance, and the captain and crew are paid by Golden Spring

(New York) Ltd. ("Golden Spring."), which is allegedly the Kwok family office.

At the hearing Ms. Guo testified that her brother had bought the Lady May for her. Tr.

46. The Court cannot credit this testimony as there is no evidence that Ms. Guo's brother was

involved with the corporate transactions leading to Ms. Guo's acquisition of the title to the yacht.

And, indeed, in response to a question from the Court, Ms. Guo acknowledged that her brother

was not involved in any of the transfers that occurred before she acquired the yacht. Tr. 47.

Other testimony adduced at the hearing established that Kwok was repeatedly on the

yacht every summer and that Ms. Guo was infrequently on the yacht. Trial Tr. 88:8-20. The

Lady May's captain testified that Kwok was aboard the yacht for a significant portion of the

months of July, August and September in 2020 and that this was consistent with his usual

practice in the summer. Trial Tr. 87:24-88:7. Subsequent to this Court's September 30, 2020

restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for

repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of

Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30,

2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady

May be returned to the Court's jurisdiction Tr. 55; 57-60; 62.

Ms. Guo testified that on the one hand, she directed the Lady May's itinerary but, on the

other hand, testified that security for Kwok was such a concern that there would be no

memorialization of any itinerary. Tr. 52. She further testified that when her father was on the

yacht unaccompanied by her he had the freedom to choose wherever he wanted to go. Tr. 50.

The fundamental issue, however, is who directed the yacht to be removed from this Court's

jurisdiction in October 2020. Ms. Guo claims that in early October 2020 she no longer wished to

5

use the yacht and relayed that instruction to Golden Spring which, in turn, relayed her directive to the then captain of the ship, Captain Heaslop. Tr. 53.

Upon further questioning, Ms. Guo admitted that it was Golden Spring that advised her that the yacht needed to be moved to a warmer place. Tr. 55. Ms. Guo then repeated her retracted testimony that her brother had given her the yacht, and she stated that her brother is the sole owner of Golden Spring. Tr. 56. This testimony is not credible given that on September 30, 2020 the Court entered a temporary restraining order restraining Kwok

> . . . from making or causing any sale, assignment, transfer, or interference with any property in which he has an interest, or from paying over or otherwise disposing of any debt now due or thereafter coming due to him, subject to the exceptions set forth in CPLR 5222 and in the ordinary course.

NYSCEF Doc. No. 591. Significantly, Captain Heaslop, the then Captain of the Lady May, testified that Mr. Kwok told Captain Heaslop that Kwok would no longer be a guest on the Lady May "a few days" before the Lady May departed for Florida in early October 2020 (and apparently after the issuance of this Court's September 30, 2020 Order). Tr. 89. Captain Heaslop also contradicted Ms. Guo's testimony that Ms. Guo gave Captain Heaslop instructions about the yacht's movement. Tr. 94.

Ms. Guo also acknowledged having subsequently read the Court's March 16, 2021 Order requiring the Lady May to be returned to the Court's jurisdiction by May 31, 2021 (NYSCEF Doc. No. 728). She further acknowledged that she had discussed the Order with her lawyer (whose services were paid for by Golden Spring) and that she had *ignored* the Order.

Russell Stockil, the Yacht Management Director for Yachtzoo SARL, testified that his company had a management contract with HK USA dated May 2021 and that he communicated with HK USA and Golden Spring, but never with Ms. Guo. Tr. 78. This was also the testimony of successor Captain Momchil Ivanov. Tr. 82. In short, Ms. Guo's testimony that she owns and

6

controls the Lady May cannot be credited in any respect. Ms. Guo appears to be a woman in her

twenties, has introduced no evidence that she exercised dominion and control of the Lady May,

and provided no confirmation that she came into possession of the Lady May, other than as a

ruse to shield the Lady May from being levied upon by her father's creditors.

The machinations associated with the shell game Kwok has orchestrated with respect to

the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken

during the five years this litigation has been pending, which is why there are 1,180 docket entries

in this case.

The Court has the authority to hold Kwok in civil contempt under Judiciary Law

§ 753—and "to punish [him], by fine and imprisonment"—where, as here, the Court "expressly

find[s] that [Kwok's] actions were calculated to or actually did defeat, impair, impede, or

prejudice the rights or remedies of a party to a civil proceeding." *Oppenheimer v. Oscar Shoes,*

*Inc.*, 111 A.D.2d 28, 28 (1st Dep't 1985) (citing N.Y. Judiciary Law § 753). Section 753 sets

forth four requirements:

> [T]o find that contempt has occurred in a given case, it must be determined that
> [1] a lawful order of the court, clearly expressing an unequivocal mandate, was in
> effect. [2] It must appear, with reasonable certainty, that the order has been
> disobeyed . . . [3] Moreover, the party to be held in contempt must have had
> knowledge of the court's order, although it is not necessary that the order actually
> have been served upon the party . . . [4] Finally, prejudice to the right of a party to
> the litigation must be demonstrated.

*Fleetwood Fin. v Walter J. Dowd, Inc.*, 2016 WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016)

(citing *McCormick v Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)). The

testimony adduced in this case satisfies each element of this standard. Indeed, the Appellate

Division intimated as such. *See Pacific Alliance Asia Opportunity Fund L.P.*, 199 A.D.3d 423

(1st Dep't 2021) ("[PAX has] established by clear and convincing evidence that [Kwok] violated

7

a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiff's rights. . .").

The extent of PAX's ongoing "prejudice" turns on whether PAX has demonstrated that it could ultimately levy on the Lady May to satisfy its now centi-million dollar judgment against Kwok.  Under CPLR § 5225, "money or other personal property" is leviable where the debtor holds the requisite "interest." To satisfy this requirement, "[i]t is not necessary that the judgment debtor have legal title to the property; a beneficial interest is sufficient."  Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.09. "A beneficial interest is '[a] right or expectancy in something . . . as opposed to legal title to that thing.'"  *Peterson v. Islamic Rep. of Iran*, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing Black's Law Dictionary, Interest (9th ed. 2009)).  Kwok has much more than a beneficial interest in the Lady May.  Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht.

The key factor is whether "the property benefitted [the beneficial owner] as if he had received the property directly." *Id*. (quoting *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010); *see also Gliklad v. Chernoi*, 129 A.D.3d 604 (1st Dep't 2015) (upholding rejection of the judgment debtor's contention that he no longer held an interest in property because he transferred his interest to his daughters); *Colfin Bulls Funding B, LLC v. Ampton Invs., Inc*., 112 N.Y.S.3d 868 (Table), at *2, 6 (N.Y. Sup. Ct. 2018) (granting judgment creditor's turnover motion notwithstanding judgment debtor's assertion that he transferred property to a corporation, because even if true, the evidence showed that he "retained control and/or an interest" in the property).

8

The evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May. In the latter connection, the Court takes notice of the filing of the Zeng case and draws an inference from all the record facts that Kwok has taken extraordinary steps to shield the yacht from his creditors. Moreover, Kwok's "family office" funds the yacht's day-to-day operations and maintenance.

The Court finds that Ms. Guo's testimony was not only internally inconsistent and dissembling, but also significantly undermined by the testimony of Captains Heaslop and Ivanov and Mr. Stockil, who stated that they have never taken yacht-related direction from Ms. Guo in the four and-a-half years that she directly or indirectly held title to the yacht.

In addition, it is established New York law that a party's invocation of the Fifth Amendment in a civil proceeding "may form the basis of an adverse factual inference." *DeBonis v. Corbisiero*, 155 AD2d 299, 300 (1st Dep't 1989). An adverse inference may be applied whenever a factual determination is necessary or permitted, including in the context of contempt motions. *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *10 (S.D.N.Y. Dec. 19, 2013), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *LiButti v. United States*, 107 F.3d 110, 120–25 (2d Cir. 1997).

Similarly, under the missing witness rule, "[a] trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify." *Crowder v. Wells & Wells Equip., Inc.*, 11 A.D.3d 360, 361 (1st Dep't 2004) (applying adverse inference where defendant who failed to appear "would be knowledgeable about a material issue raised by the evidence").

PAX is entitled to an adverse inference under both of these avenues. Kwok has invoked his Fifth Amendment right against self-incrimination in response to PAX's post-judgment discovery, including in response to requests specifically about the Lady May. While Kwok

9

Case 22-50073   Doc 591   Filed 07/28/22   Entered 07/28/22 21:19:23   Page 26 of 26

argues that an adverse inference is not appropriate here because "[o]nly after a threshold showing

that a piece of evidence is authentic is a party obligated to respond to it," this contention fails of

its own weight. PAX has proffered substantial admissible evidence that Kwok has the requisite

beneficial interest in and control of the Lady May. *See People v. Primo*, 96 N.Y.2d 351, 753

N.E.2d 164 (2001) (explaining that evidence is probative if it "tends to prove the existence or

non-existence of a material fact, *i.e.*, a fact directly at issue in the case").

　　　　As of February 7, 2022, the Lady May has remained outside the jurisdiction of the Court

for 268 days. Based on the daily fine of $500,000 imposed by this Court and affirmed by the

Appellate Division, the resultant fine would amount to $134,000,000.00, which is more than

PAX's outstanding judgment of nearly $120 million and a multiple of the GBP £ 28 million

purchase price of the Lady May.  Nevertheless, if billionaire litigants can simultaneously seek to

use Court process in New York and elsewhere in the United States while knowingly and

intentionally violating Court orders, there is no rule of law.  Kwok must remit $134,000,000.00

to PAX within five business days of the service of this Court's Order with Notice of Entry. The

Court is prepared to exercise its full authority under Judiciary Law § 753 in the event the fine is

not timely paid.

Dated:  February 9, 2022

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

10