## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| HO WAN KWOK[1] | 22-50073 (JAM) |
| Debtor. | July 27, 2022 |

**DECLARATION OF PETER FRIEDMAN IN SUPPORT OF  PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S POSITION STATEMENT IN JOINT RESPONSE TO (I) DEBTOR'S MOTION FOR RELIEF FROM ORDER APPOINTING LUC A. DESPINS AS CHAPTER 11 TRUSTEE, AND (II) APPLICATION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 327, 328, AND 330 AND BANKRUPTCY RULES 2014 AND 2016, AUTHORIZING AND APPROVING RETENTION AND EMPLOYMENT OF PAUL HASTINGS LLP AS COUNSEL TO CHAPTER 11 TRUSTEE**

I, Peter Friedman, declare:

1.      I am an attorney admitted to practice law in the State of New York and Washington, D.C. and am a partner at the law firm of O'Melveny & Myers, 7 Times Square, New York, NY 10036, counsel for Pacific Alliance Asia Opportunity Fund L.P. ("PAX"). I respectfully submit this Declaration in support of *Pacific Alliance Asia Opportunity Fund L.P.'s Position Statement in Joint Response to (I) Debtor's Motion for Relief from Order Appointing Luc A. Despins as Chapter 11 Trustee, and (II) Application of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 327, 328, and 330 and Bankruptcy Rules 2014 and 2016, Authorizing and Approving Retention and Employment of Paul Hastings LLP as Counsel to Chapter 11 Trustee.*

2.      Attached as Exhibit 1 is a true and correct copy of the transcript of the July 8,

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.

2022 hearing before the Honorable Julie A. Manning.

3.      Attached as Exhibit 2 is a true and correct copy of the transcript of the July 21,

2022 status conference before the Honorable Julie A. Manning.

4.      Attached as Exhibit 3 is a true and correct copy of the July 22, 2022

Interrogatories from Debtor to PAX in this action.

5.      Attached as Exhibit 4 is a true and correct copy of the Application of the Official

Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a)

and 1103 Authorizing and Approving the Employment and Retention of Womble Bond

Dickinson (US) LLP as Counsel Effective as of April 22, 2021, filed in *In re TECT Aerospace

Group Holdings, Inc.*, Case No. 21-10670-KBO (Bankr. D. Del. May 4, 2021), ECF No. 120.

6.      Attached as Exhibit 5 is a true and correct copy of the Application of the Official

Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a)

And 1103 Authorizing and Approving the Employment and Retention of Womble Bond

Dickinson (US) LLP as Counsel Effective as of July 20, 2019, filed in *In re Tintri, Inc.*, Case No.

18-116250-LSS (Bankr. D. Del. Aug. 7, 2018), ECF No. 132.

7.      Attached as Exhibit 6 is a true and correct copy of the Application of the Official

Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a)

and 1103 Authorizing and Approving the Employment and Retention of Womble Bond

Dickinson (US) LLP as Counsel Effective as of June 4, 2019, filed *In re JRV Group USA L.P.*,

Case No. 19-11095-KBO (Bankr. D. Del. Jun. 20, 2019), ECF No. 84.

8.      Attached as Exhibit 7 is a true and correct copy of the Application of the Official

Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a)

and 1103 Authorizing and Approving the Employment and Retention of Womble Bond

Dickinson (US) LLP as Counsel Effective as of September 18, 2019, filed in *In re Fred's Inc*., Case No. 19-11984-CTG (Bankr. D. Del. Oct. 18, 2019), ECF No. 352.

9.      Attached as Exhibit 8 is a true and correct copy of the Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a) and 1103 Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Effective as of February 5, 2020, filed in *In re BL Restaurants Holding, LLC*, Case No. 20-10156-CTG (Bankr. D. Del. Mar. 4, 2020), ECF No. 241.

10.      Attached as Exhibit 9 is a true and correct copy of the Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a) and 1103 Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Effective as of February 4, 2020, filed in *In re Lucky's Market Parent Company*, *LLC*, Case No. 20-10166-JTD (Bankr. D. Del. Feb. 21, 2020), ECF No. 237.

11.      Attached as Exhibit 10 is a true and correct copy of the Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a) and 1103 Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Effective as of October 29, 2021, filed in *In re Red River Waste Solutions, LP*, Case No. 21-42423 (Bankr. N.D. Tex. Nov. 18, 2021), ECF No. 157.

12.      Attached as Exhibit 11 is a true and correct copy of the United States Trustee's Statement Concerning Suri Realty, LLC's and Carla's Pasta, Inc.'s Applications to Retain Locke Lord LLP as Their Bankruptcy Counsel filed in *In re Carla's Pasta, Inc. and Suri Realty, LLC,* Case Nos. 21-20111, 20-21270 (Bankr. D. Conn. March 10, 2021), ECF No. 252.

13.      Attached as Exhibit 12 is a true and correct copy of the February 9, 2022 Decision and Order in *PAX v. Kwok,* Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 1181.

Dated: July 27, 2022
New York, New York

Respectfully submitted,

*/s/ Peter Friedman*
Peter Friedman
pfriedman@omm.com
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorney for Pacific Alliance Asia*
*Opportunity Fund L.P.*

# EXHIBIT 01

Transcript of July 8, 2022 Hearing

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                          *    Case No. 22-50073 (JAM)
                               *
     HO WAN KWOK,              *    Bridgeport, Connecticut
                               *    July 8, 2022
               Debtor.         *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


TRANSCRIPT OF APPLICATION FOR ORDER APPROVING
APPOINTMENT OF CHAPTER 11 TRUSTEE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                WILLIAM R. BALDIGA, ESQ.
                               Brown Rudnick, LLP
                               Seven Times Square
                               New York, NY  10036


For the Creditor, Pacific      PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity     STUART M. SARNOFF, ESQ.
 Fund L.P.:                    O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               PATRICK BIRNEY, ESQ.
                               Robinson & Cole
                               28 Trumbull Street
                               Hartford, CT  06103




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

```
APPEARANCES Cont'd:

For the Creditors Committee:   IRVE GOLDMAN, ESQ.
                               Pullman & Comley
                               850 Main Street
                               Bridgeport, CT  06601


For the Creditor, Rui Ma:      KRISTEN MAYHEW, ESQ.
                               McElroy Deutsch Mulvaney &
                                Carpenter
                               225 Liberty Street
                               36th Floor
                               New York, NY  10281


For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the United States
                                 Trustee
                               The Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510


For HK International Funds      STEPHEN R. KINDSETH, ESQ.
 Investments (USA) Limited,    Zeisler & Zeisler
 LLC:                          10 Middle Street, 15th FL.
                               Bridgeport, CT  06604


For the Creditor,              JAY MARSHALL WOLMAN, ESQ.
 Logan Cheng:                  Randazza Legal Group, PLLC
                               100 Pearl Street, 14th Floor
                               Hartford, CT  06103
```

3

1      (Proceedings commenced at 10:02 a.m.)

2           THE CLERK:  Case No. 22-50073, Ho Wan Kwok.

3           THE COURT:  Okay.  Good morning.  If we could have

4      appearances for the record, please, starting with the

5      debtor's counsel.

6           MR. BALDIGA:  Good morning, Your Honor.  William

7      Baldiga, Brown Rudnick, for the debtor.

8           THE COURT:  Good morning.

9           Counsel for PAX, please.

10          MR. FRIEDMAN:  Good morning, Your Honor.  Peter

11     Friedman, from O'Melveny & Meyers, on behalf of Pacific

12     Alliance Group.  I see Mr. Sarnoff and Mr. Birney, of the

13     Robinson & Cole firm as well this morning, on behalf of PAX.

14          THE COURT:  Good morning.

15          Counsel for the creditors committee?

16          MR. GOLDMAN:  Good morning, Your Honor.  Irve

17     Goldman, Pullman & Comley, representing the creditors

18     committee.

19          THE COURT:  Good morning.

20          Counsel for Rui Ma?

21          MS. MAYHEW:  Good morning, Your Honor.  Kristen

22     Mayhew, McElroy Deutsch Mulvaney & Carpenter, on behalf of

23     creditors Rui Ma, Zheng Wu and Weican Meng.

24          THE COURT:  Good morning.

25          The Office of the United States Trustee?

4

1          MS. CLAIBORN:  Good morning, Your Honor.  Holley

2     Claiborn for the U.S. Trustee.  And also with me this

3     morning is the Chapter 11 trustee candidate, Attorney Luc

4     Despins.

5          THE COURT:  Good morning.  Good morning to both of

6     you.

7          MR. DESPINS:  Good morning, Your Honor.

8          THE COURT:  Okay.  I also see counsel for HK

9     International.

10          MR. KINDSETH:  Yes, Your Honor.  Good morning.

11     Stephen Kindseth, Zeisler & Zeisler, for HK International

12     Funds Investments.

13          THE COURT:  Good morning.

14          And Attorney Wolman?  I see you today --

15          MR. WOLMAN:  Good morning, Your Honor.

16          THE COURT:  -- so I didn't forget to say hello.

17     But I often -- for some times the screen cuts you off for

18     some reason, but I see you this morning.  So go right ahead.

19          MR. WOLMAN:  Thank you, Your Honor.  Good morning.

20     This is Jay Wolman, of Randazza Legal Group, for creditor

21     Logan Cheng.

22          THE COURT:  Good morning.

23          So I think that's everyone that has -- everyone

24     that I see, anyway, has noted their appearance.  Is that

25     correct?

5

1      (No audible response.)

2           THE COURT:  Okay.  So we'll proceed with this

3      hearing this morning on the United States Trustee's motion

4      -- application for the order approving the United States

5      Trustee's appointment of a Chapter 11 trustee.

6           Attorney Claiborn, you -- please proceed.

7           MS. CLAIBORN:  Thank you, Your Honor.  Good

8      morning.

9           Before the Court this morning is the United States

10     Trustee's application for an order approving the appointment

11     of Mr. Despins as the Chapter 11 trustee.  Mr. Despins has a

12     significant Chapter 11 history practice in his firm and in

13     his past.  He's been a member of the bar for over 30 years.

14          And the U.S. Trustee has attached to the

15     application a declaration of disinterestedness, which sets

16     forth his connections and his contacts with various parties

17     in this case, and with creditors and with the debtor.

18          And based upon that the U.S. Trustee's requested

19     the Court approve the application this morning.

20          I do, however, want to bring to the Court's

21     attention that this morning we learned there are some

22     additional disclosures that need to be made and will be made

23     by Attorney Despins as to connections with entities that are

24     connected to, we believe, PAX.

25          And Mr. Despins can put a finer point on that and

6

1    address the Court and explain.  And, again, that will be

2    followed by a supplemental disclosure that will be filed

3    with the Court as soon as possible in the hope that that is

4    within a matter of just a day or two.

5          So, with that, Your Honor, if I could ask Mr.

6    Despins to address the Court about the supplemental

7    disclosures that are not yet before the Court in writing?

8          THE COURT:  Yes, please.  Go right ahead.

9          MR. DESPINS:  Good morning, Your Honor.

10         As I stated in paragraph 11 of my declaration, I

11   said that to the extent we learned of new connections that

12   were not known to us at the time I submitted the

13   declaration, we would update our disclosure statement and I

14   will do that in writing.

15         But I wanted to make sure today that I mentioned

16   to the Court that we discovered last night that we have in

17   the past represented entities that have -- that are -- have

18   the acronym PAG in them, P-A-G.  Unbeknownst to our conflict

19   system, PAG means Pacific Asia Group.

20         And those entities -- and, again, as I said, these

21   are representations that were completed, but these entities

22   are unrelated to the Kwok matter in any way.

23         However, PAX is probably managed by a similar or a

24   PAG entity of some kind.  We're trying to figure out exactly

25   which one.

1          But it doesn't change anything from our point of

2     view in a sense that we still believe we're disinterested,

3     we can be adverse to PAX, not that we are seeking that, but

4     we're -- we can be adverse to PAX.  And, therefore, it

5     doesn't change the declaration.

6          But given that these P-A-G entities are somehow

7     related to PAX, I wanted to bring that to the attention of

8     the Court early on this morning.

9          And I did, by the way, not only with the U.S.

10    Trustee, but I mentioned this to Mr. Friedman, you know,

11    around 8:45 this morning.

12          THE COURT:  Okay.  Thank you.  And when you say

13    we, you're speaking of the firm of Paul Hastings?

14          MR. DESPINS:  Yes.  Yes.  Yes.  Yes.  But

15    personally, I've never had any representation of PAG.  I

16    didn't even know it existed frankly until last night.

17          THE COURT:  Understood.  Understood, obviously,

18    with the firm having offices in different areas of the

19    world.  That's why I was asking when you said we, you mean

20    Paul Hastings, not you individually?

21          MR. DESPINS:  That's correct, Your Honor.

22          THE COURT:  Okay.  Thank you.

23          I see a gentleman.  Mr. Bassett, are you a counsel

24    in this case?  I don't recognize you and I'm sorry if I

25    should, but I don't.

8

1          MR. BASSETT:  Your Honor, I'm with Paul Hastings.

2          THE COURT:  Okay.

3          MR. BASSETT:  I would be serving as counsel to Mr.

4     Despins in his capacity as trustee.

5          THE COURT:  Okay.  Well, Mr. Despins, I don't

6     think you need to file an appearance because you're the

7     Chapter 11 trustee.

8          If Mr. Bassett and/or your firm is going to be

9     proposed to be counsel to you, acting as the Chapter 11

10    trustee, as you know, you'll have to file an application.

11    And Mr. Bassett and any other members of Paul Hastings will

12    have to file notices of appearance and/or pro hac motions,

13    depending upon whether they're admitted to the District

14    Court of Connecticut.  And you'll take care of that.

15         MR. DESPINS:  Yes.

16         THE COURT:  So that's why I didn't recognize Mr.

17    Bassett.

18         You haven't been involved in any of the other

19    hearings.  So that's -- I'm glad at least that it was --

20    that I was correct that I hadn't seen you before.

21         But in any event, with regard to the United States

22    Trustee's application to -- for an order approving the

23    appointment of a Chapter 11 trustee, does any party wish to

24    be heard?

25         MR. FRIEDMAN:  Your Honor, it's Peter Friedman

9

1    from O'Melveny.

2              We don't have an issue directly with Mr. Despins.

3    We just -- Mr. Despins just mentioned he disclosed at 8:45

4    this morning that his firm had had some involvement with the

5    parent of our client, which I think is actually -- the

6    correct terminology for that is Pacific Alliance Group,

7    which is slightly different than our fund, Pacific Asia

8    Opportunity Fund, but we do obviously need to consult with

9    our client as to the nature of the relationship.  I don't --

10   I'm not saying that there is an issue.

11             It is midnight or 10 p.m. in Hong Kong already,

12   which is where our client is located.

13             And to the extent that our client needs to look at

14   any files -- I don't know if that's doable over the weekend

15   -- but I think that might be a Paul Hastings issue as

16   opposed to a trustee issue.  But this is a, you know, a

17   late-breaking development.

18             And I guess that I can't say it's a concern, but I

19   do think it's important to mention to the Court in this

20   context that, you know, it's just something that we'll have

21   to look at in the context of a retention of Paul Hastings.

22             And, you know, Your Honor, I think, just as I said

23   at every hearing we will be constructive.  We will work

24   closely with Mr. Despins, who I have encountered over the

25   years in other Chapter 11 cases.

10

1          I have high respect for Mr. Despins.  He was

2     counsel to the creditors committee in Puerto Rico where I

3     represented the debtor.  So I've been adverse to him and on

4     the same side of the (indiscernible) over the last five

5     years.

6          You know, we are concerned about expense.  We will

7     do everything we can.  And we hope everything can be done by

8     Mr. Despins and Paul Hastings to -- you know, especially in

9     light of the circumstances of this debtor having a very

10    limited available -- readily available fund.  We really hope

11    that there will be, you know, as much cost efficiency as

12    possible given the size of the estate at current.

13         And, you know, with those comments, we look

14    forward to hopefully a successful trustee appointment.

15         And if there are issues relating to past retention

16    or employment of Paul Hastings by our client, we will

17    obviously have to address those in the future.

18         THE COURT:  Okay.  Thank you, Attorney Friedman.

19         Does anyone else wish to be heard?

20         MR. GOLDMAN:  Your Honor, Irve Goldman for the

21    committee.

22         This is the first time I'm hearing about this

23    additional disclosure.  I would have the same caveat as Mr.

24    Friedman and would hope that he would share his diligence

25    with the committee so we can take a closer look and evaluate

1   this additional connection.

2          We're not looking to upset this appointment, but

3   just with the same ideas Mr. Friedman articulated, we'd just

4   want to consider it further.

5          THE COURT:  Well, do you agree that it's an issue

6   with regard -- as Attorney Friedman said -- that it would be

7   an issue with regard to the retention of Paul Hastings as

8   counsel versus Mr. Despins as Chapter 11 trustee?

9          MR. GOLDMAN:  Yes, I do.  He's made it clear that

10  he had no connection, wasn't even aware of the existence of

11  this entity.  So with that, I agree it's an retention

12  issue.

13         THE COURT:  Okay.  Thank you.

14         Does anyone else wish to be heard?

15         MR. BALDIGA:  Yes, Your Honor.  William Baldiga,

16  Brown Rudnick, for the debtor.

17         THE COURT:  Go right ahead.

18         MR. BALDIGA:  We have the same qualification

19  concern.  We share Brown Rudnick's great respect for Paul

20  Hastings, and Mr. Despins more specifically, but we will

21  need to understand the new disclosures exactly given that

22  PAG is the business behind the fund which is PAX.  And PAX

23  is obviously the largest creditor by far of the estate. So I

24  think we all need to understand that.

25         THE COURT:  Do you, Mr. Baldiga, agree with what

12

1    -- the question I just asked Attorney Goldman?

2           Then is your concern more with regard to Paul

3    Hastings being retained as counsel and not with Mr. Despins

4    serving as the Chapter 11 trustee?  Or do you have a concern

5    even with Mr. Despins serving as the Chapter 11 trustee?

6           MR. BALDIGA:  I don't know yet.  I think -- I'm

7    not sure we're going to have -- going to have any concerns.

8    But to the extent we do, I think it's premature to assess

9    what those would be exactly until we see the disclosure and

10   have an opportunity to talk to the client about that.

11          THE COURT:  And that's fine, because the

12   bankruptcy code has provisions with regard to if someone

13   thought that the trustee as appointed should no longer serve

14   as the trustee.  So I don't -- I do not see an impediment to

15   the appointment of Mr. Despins as the Chapter 11 trustee

16   today unless someone wants to persuade me otherwise.

17          MR. BALDIGA:  We just haven't seen anything, so we

18   -- it's hard to do a persuasive argument, Your Honor, with

19   just finding out about this during the course of the

20   hearing.

21          THE COURT:  I understand.  I do understand what

22   you're saying.

23          But I'm talking about right now, today, the only

24   thing before the Court is the appointment of Mr. Despins as

25   the Chapter 11 trustee.

13

1        And no one has put forth any reason at this point

2    as to why that should not occur.  And if it occurs and then

3    you find some reason, then you have remedies under the

4    bankruptcy code to address those reasons.

5        We're not going to wait any longer for the

6    appointment of a Chapter 11 trustee.  I mean, the decision

7    was issued on June 15th.  It's July 8th.

8        My understanding -- and maybe that's why Attorney

9    Kindseth is here today -- is that the yacht is in Bridgeport

10   Steelpointe Harbor.  So the Lady May is here.  It arrived on

11   the 6th at night is my understanding.  So there's plenty for

12   Mr. Despins to do as soon as an order enters.  And I don't

13   see any reason for delay.

14       So unless someone has some other concern or

15   argument that they want to advance about Mr. Despins being

16   the Chapter 11 trustee, then I'm going to grant the United

17   States Trustee's application and enter an order approving

18   the appointment of Mr. Despins as the Chapter 11 trustee in

19   this case.

20       So I'm giving everyone one last opportunity to

21   tell me why I should not do that.

22       MR. BALDIGA:  Your Honor, William Baldiga again.

23       We have nothing further to add other than what I

24   already said.

25       THE COURT:  Okay.  Thank you.

14

1          MR. BALDIGA:  And that's just we don't have the

2     disclosure to make a final decision on that.

3          THE COURT:  Okay.  Thank you.

4          Anyone else wish to be heard?

5     (No audible response.)

6          THE COURT:  All right.  Then, Mr. Despins, I know

7     you will continue to review the issues that you've already

8     discussed on the record and that you've already set forth in

9     your affidavit.  Whenever you have an opportunity in the

10    next -- you know, soon to make further disclosures, please

11    do.

12         But as of now, as of 10:19 a.m., on July 8th, the

13    Court is ordering that the application of the U.S. Trustee

14    is granted and that you're appointed as the -- you will be

15    serving as the Chapter 11 trustee in this case.  And I

16    appreciate your willingness to do so.

17         As I noted for the record, and, Attorney Kindseth,

18    you should correct me if I'm wrong, but one of the -- I

19    don't know what you've looked at, if anything, Mr. Despins,

20    yet, but one of the issues in this case that's now almost

21    five months old, but not quite, was the debtor's pledge of a

22    -- of this yacht, the Lady May, to a plan, which of course

23    is not on track at the moment.  But there was also an

24    agreement that the Lady May would be brought back into the

25    navigable waters of Connecticut.

15

1          And my understanding is that occurred on July -- I

2     suppose I could go outside and go look quite frankly. It's

3     not that far away -- on July 6th.  And that is -- that was

4     an issue of contention among the parties, both before this

5     Chapter 11 case was filed and after the Chapter 11 case was

6     filed.

7          So there seems to me, in addition to the yacht,

8     the Lady May, other issues that there are plenty of things

9     that you could become -- that you could become involved in

10    fairly quickly, if not immediately, in this matter.

11          MR. DESPINS:  Yes, Your Honor.  We are aware of

12    the situation.

13          In fact, we have already contacted counsel that

14    were parties to the stipulation, docket number 299, that

15    Your Honor entered a while ago, and I've asked them to

16    consent to the trustee having the same rights as PAX and the

17    official committee under that stipulation.

18          We received some response that request but notfrom

19    everyone, so we expect to obviously -- to us it's a no

20    brainer that that needs to happen.  But we expect to be back

21    in front of the Court to modify the stipulation to ensure

22    that the trustee has exactly the same rights as PAX or the

23    official committee.  Thank you, Your Honor.

24          THE COURT:  Thank you.

25          MR. FRIEDMAN:  Your Honor, on the record -- it's

16

1    Peter Friedman on behalf of PAX --

2            THE COURT:  Yes.

3            MR. FRIEDMAN:  -- we consent to that.  We consent

4    to that request.

5            THE COURT:  Okay.  Thank you.

6            And I would note that there are, Mr. Despins,

7    other provisions of that stipulation that I believe anyway,

8    but I don't have it in front of me, and you're all the

9    lawyers so you will figure it out, but that still need to be

10   -- there still needs to be compliance with other provisions

11   in that stipulation once the boat was returned to the

12   navigable waters.

13           So there are other issues that still need to be

14   addressed in that stipulation now that the yacht is back in

15   the navigable waters of Connecticut.

16           So in any event, to let you all know, Monday,

17   Tuesday and Wednesday of next week, I have to attend

18   required meetings.  But if there is a need for a hearing, I

19   could -- I could have one at some point during any of those

20   three days at some time, but I will be remote, as will you.

21           But once we get over this hurdle of the next few

22   days, then, you know, our hearings are going to be in person

23   for the most part.  This is a case where we need to make

24   sure that we're all on the same page.

25           And while I truly agree that remote hearings serve

17

1    a very valuable purpose and can be very helpful, given what

2    has occurred in this case, we're going to be coming together

3    in person.  Okay?

4           So, I mean, there may be a situation if we're

5    having a five-minute discussion that we could turn to

6    remote, but I would like everyone to understand that we are

7    going to be here in person.  Okay?

8           MR. DESPINS:  Yes, Your Honor.

9           THE COURT:  All right.  Is there anything further

10   we should address today?

11          Attorney Claiborn, your order approving

12   appointment of Chapter 11 trustee that was attached to the

13   application, I actually -- I would like to change it to an

14   order granting the appointment and that's what I'm going to

15   do.  Otherwise, the proposed order is fine with me.

16          Are there any other changes that anyone else

17   wanted to make to the order, Attorney Claiborn, that you're

18   aware of?

19          MS. CLAIBORN:  No, Your Honor.

20          THE COURT:  Anyone else wish to be heard on the

21   proposed order that Attorney --

22          Oh, the only thing, Attorney Claiborn, that -- the

23   amount of the bond, that may have to change during the

24   course of this case I would assume.

25          MS. CLAIBORN:  It is a fluid issue, Your Honor.

18

1          THE COURT:  Okay.

2          MS. CLAIBORN:  And that is just a starting point

3    for the cash that we know that will be coming to Mr. Despins

4    hopefully in short order from the debtor.

5          But it will have to be adjusted upward in the

6    event that there is money that comes to the estate that Mr.

7    Despins is responsible for.

8          THE COURT:  Great.  I just -- I mean, your order

9    does say that, but I wanted to be clear on that, that I

10   would anticipate that there would have to be a change in the

11   amount of the bond during the case.  Okay?

12         MS. CLAIBORN:  Yes, Your Honor.

13         MR. KINDSETH:  Your Honor, would you like an

14   update on the Lady May?

15         THE COURT:  Sure.

16         MR. KINDSETH:  Thank you very much.

17         So as Your Honor noted, the Lady May returned to

18   Connecticut, specifically to Bridgeport, on July 6th.  In

19   the week prior -- a week or two prior -- I reached out to

20   counsel for the creditors committee and counsel for PAX,

21   concerning the inspection that they are entitled to conduct.

22         Just to remind Your Honor, the other elements of

23   the stipulation are that the captain and the yacht

24   management company are served with this court's order, they

25   signed a declaration attesting to certain items that are set

19

1   forth in the stipulation, and that this court provides for

2   repair reserves to fund the remaining repairs to the Lady

3   May.

4        All the repairs were done except for the -- to my

5   knowledge -- the replacement of the sea inlet valves.  We're

6   in the process of obtaining two estimates for the cost of

7   that, which would guide us with respect to proposing a

8   repair reserve.

9        We are also in touch, as I said, with counsel for

10  PAX and the creditors committee to coordinate their

11  inspection.  So hopefully their inspection will take place

12  next week.  We're hoping that we can have a joint proposed

13  motion approving the repair reserve.

14       Once the repair reserve is put in place, I can

15  then file the certification that each of the elements of the

16  stipulation that my client is obligated to perform has been

17  performed.  The various other parties would then have 15

18  days from the filing of that certification to object.

19       I spoke to the then proposed trustee, the now

20  trustee, Mr. Despins, this morning and expressed tentatively

21  my client's understanding and agreement that he would be

22  having the same rights and obligations and really a party to

23  the stipulation.

24       Our hope is that we would be drafting a proposed

25  stipulated modification to the existing order simply having

20

1    Mr. Despins as an additional party to the existing

2    stipulation.

3              And so that's the status of the Lady May.

4              THE COURT:  Thank you.

5              The other provision that I believe you didn't --

6    you did not mention with regard to the stipulation was that

7    the captain and the -- I don't remember what the other name

8    -- whether it was a harbor master, whomever, would also be

9    restrained, agreed to be restrained, from removing the boat

10   from the navigable waters of Connecticut once it arrived.

11             MR. KINDSETH:  That's one of the elements of the

12   declaration, yes.

13             THE COURT:  Okay.

14             MR. KINDSETH:  The declaration has multiple

15   elements, one of which is that they understand they're

16   restrained from removing the yacht from the navigable waters

17   of Connecticut.

18             THE COURT:  I just -- I think that's an important

19   provision to note for especially Mr. Despins who's just

20   become involved so that he's aware of that.

21             MR. KINDSETH:  Agreed.

22             THE COURT:  Okay?  All right.  Anything further

23   that we need to address today in the Kwok matter?

24             MS. CLAIBORN:  No, Your Honor.

25             THE COURT:  All right.  Then the United States

Fiore Reporting and Transcription Service, Inc.

21

1    Trustee's application for an order approving the appointment

2    of a Chapter 11 trustee is granted and the proposed order

3    will enter.

4            MS. CLAIBORN:  Thank you, Your Honor.

5            THE COURT:  All right.  Thank you, all.

6            MR. DESPINS:  Thank you, Your Honor.

7            THE COURT:  And that is the last matter on the

8    calendar this morning, so court is adjourned.

9        (Proceedings concluded at 10:28 a.m.)

10       I, CHRISTINE FIORE, court-approved transcriber and

11   certified electronic reporter and transcriber, certify that

12   the foregoing is a correct transcript from the official

13   electronic sound recording of the proceedings in the above-

14   entitled matter.

15

16   *Christine Fiore*

17   _____      July 13, 2022

18     Christine Fiore, CERT

19        Transcriber

20

21

22

23

24

25

# <u>EXHIBIT 02</u>

Transcript of July 21, 2022 Status Conference

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                          *   Case No. 22-50073 (JAM)
                               *
      HO WAN KWOK,             *   Bridgeport, Connecticut
                               *   July 21, 2022
                 Debtor.       *
                               *
* * * * * * * * * * * * * * *  *


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                DYLAN P. KLETTER, ESQ.
                               Brown Rudnick, LLP
                               185 Asylum Street
                               Hartford, CT  06103

                               ERIC HENZY, ESQ.
                               AARON ROMNEY, ESQ.
                               Zeisler & Zeisler
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604

For HK International Funds      STEPHEN M. KINDSETH, ESQ.
 Investments (USA) Limited,     Zeisler & Zeisler
 LLC:                           10 Middle Street, 15th Floor
                                Bridgeport, CT  06604

For the Creditor, Pacific       PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity      STUART M. SARNOFF, ESQ.
 Fund, L.P.:                    O'Melveny & Myers LLP
                                Times Square Tower
                                7 Times Square
                                New York, NY  10036


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES Cont'd:

For the Creditor, Pacific          PATRICK M. BIRNEY, ESQ.
 Asia Alliance Opportunity         Robinson & Cole LLP
 Fund, L.P.:                       280 Trumbull Street
                                   Hartford, CT  06103

For the Creditors Committee:       IRVE GOLDMAN, ESQ.
                                   Pullman & Comley
                                   850 Main Street, 8th Floor
                                   Bridgeport, CT  06604

For the Creditor, Rui Ma,          KRISTEN MAYHEW, ESQ.
 Zheng Wu and Weican Meng:         McElroy Deutsch Mulvaney &
                                    Carpenter
                                   30 Jeliff Lane
                                   Southport, CT  06890

                                   CAROLLYNN H.G. CALLARI, ESQ.
                                   Law firm of Callari Partners
                                   One Rockefeller Plaza, 10th Fl.
                                   New York, NY  10020

Chapter 11 Trustee:                LUC A. DESPINS, ESQ.
                                   Paul Hastings, LLP
                                   200 Park Avenue
                                   New York, NY  10166

For the Chapter 11 Trustee:        DOUGLAS S. SKALKA, ESQ.
                                   PATRICK R. LINSEY, ESQ.
                                   Neubert, Pepe & Monteith, P.C.
                                   195 Church Street, 13th Floor
                                   New Haven, CT  06510

For the U.S. Trustee:              HOLLEY L. CLAIBORN, ESQ.
                                   Office of the United States
                                     Trustee
                                   The Giaimo Federal Building
                                   150 Court Street, Room 302
                                   New Haven, CT  06510

1      (Proceedings commenced at 10:06 a.m.)

2              THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3      Kwok.

4              THE COURT:  Good morning.  If we could have

5      appearances for the record starting with the debtor's

6      counsel, please.

7              MR. HENZY:  Your Honor, for Ho Wan Kwok, Eric

8      Henzy, of Zeisler & Zeisler.

9              THE COURT:  Hold on just one second.  Where's Mr.

10     Baldiga or someone from --

11             MR. KLETTER:  Hi.  Good morning.  Dylan Kletter,

12     from Brown Rudnick, here to deal with the motion to withdraw

13     as counsel.

14             THE COURT:  Okay.  Okay.  And who else?  I'm

15     sorry, sir.  Go ahead.

16             MR. ROMNEY:  Aaron Romney, Zeisler & Zeisler, also

17     for the debtor, Your Honor.

18             THE COURT:  Okay.  Thank you.

19             MR. KINDSETH:  And Stephen Kindseth for the

20     debtor, Ho Wan Kwok.

21             THE COURT:  Okay.  Thank you.

22             Go right ahead, Counsel.

23             MR. DESPINS:  Good morning, Your Honor.  Nice to

24     meet you in person.  Luc Despins, Chapter 11 Trustee.

25             THE COURT:  Good morning, Mr. Despins.  I'm sorry.

1    We only did see each other on Zoom, so I didn't meet you in

2    person before today, so welcome.

3                MR. SKALKA:  Good morning, Your Honor.  Douglas

4    Skalka, of Newbury, Pepi and Monteith, as proposed local

5    counsel for the Chapter 11 trustee.

6                THE COURTROOM DEPUTY:  Attorney Skalka, I cannot

7    hear you.

8                MR. SKALKA:  I am sorry.

9                THE COURT:  That's okay.  If you could say that

10   again, please.

11               MR. SKALKA:  Yes, Your Honor.  Douglas Skalka,

12   Neubert, Pepe & Monteith, as proposed local counsel for the

13   Chapter 11 trustee.

14               MR. LINSEY:  And Patrick Linsey, also Neubert,

15   Pepe & Monteith, local counsel for the trustee, Your Honor.

16   Good morning.

17               THE COURT:  Good morning.

18               MR. SKALKA:  Good morning.

19               MS. CLAIBORN:  Good morning.  Holley Claiborn for

20   the U.S. Trustee.

21               THE COURT:  Good morning.

22               MR. FRIEDMAN:  Good morning, Your Honor.  Peter

23   Friedman, from O'Melveny & Meyers, on behalf of Pacific

24   Alliance Group.

25               THE CLERK:  I'm sorry, Attorney Friedman, I can't

1    hear you.

2              MR. FRIEDMAN:  I'm sorry.

3              THE COURT:  It's kind of hard because we only have

4    a few microphones and we have a lot of people.  So, I'm

5    sorry.

6              MR. FRIEDMAN:  Good morning, Your Honor.  It's

7    Peter Friedman, from O'Melveny & Meyers, on behalf of

8    Pacific Asia Alliance.  I'm joined by Mr. Sarnoff.

9              THE COURT:  Good morning.

10             MR. FRIEDMAN:  And Mr. Birney from the Robinson &

11   Cole firm, our Connecticut counsel, is also here.

12             THE COURT:  Good morning.

13             MR. GOLDMAN:  Good morning, Your Honor.  Irve

14   Goldman, Pullman & Comley, representing the creditors

15   committee.

16             THE COURT:  Good morning.

17             MS. MAYHEW:  Good morning, Your Honor.  Kristen

18   Mayhew, McElroy Deutsch Mulvaney & Carpenter, on behalf of

19   creditors Rui Ma, Zheng Wu and Weican Meng.  And with me is

20   co-counsel Carollyn Callari.

21             THE COURT:  Good morning to both of you.

22             Okay.  The Court scheduled a status conference

23   today in accordance with the memorandum of decision denying

24   the motion to dismiss without prejudice and appointing a

25   Chapter 11 trustee.

1       That memorandum of decision indicated that within

2    14 days of the appointment of a Chapter 11 trustee that a

3    status conference would be held so that the Chapter 11

4    trustee could report to the Court on where things stand from

5    the Chapter 11 trustee's perspective and to also talk about

6    specific issues that the Chapter 11 trustee may be

7    addressing, reviewing, analyzing and to give the Court some

8    idea of where you think, Mr. Despins, we're heading with

9    regard to this case.

10      I also set the status conference because there was

11   a flurry of papers filed after the appointment that -- the

12   order appointing you, Mr. Despins, about your firm's

13   application -- your application to employ your firm, Paul

14   Hastings, and then also the motion to withdraw attorney

15   filed by Brown Rudnick, which was filed after the order

16   entered appointing Mr. Despins.

17      So I would like to hear from you, Mr. Despins,

18   first about the status of what you've been able to do, what

19   you would -- what you're intending to do, what the next

20   steps might in this case.

21      We will address the application insofar as to

22   discuss at least the application to employ your firm.

23      And then we will discuss the motion to withdraw as

24   counsel -- the debtor's counsel who's been involved in the

25   case since the beginning, Brown Rudnick.  Okay?

1            So, Mr. Despins, if you would proceed, please.

2            MR. DESPINS:  Thank you, Your Honor.

3            THE COURT:  And if you'd like to come forward.

4            And the other thing, Mr. Despins, if you -- if you

5    want at any time, if it would be helpful to you at any time,

6    for the Court to pull up any pleadings that you need to look

7    at, you can just let us know and the courtroom deputy can do

8    that for you.

9            MR. DESPINS:  Thank you, Your Honor.

10           So we have a presentation for the Court.

11           THE COURT:  Please.

12           MR. DESPINS:  I expect that it would take no more

13   than 15 minutes, but we have a visual aid, meaning that --

14   in written form --

15           THE COURT:  Okay.

16           MR. DESPINS:  -- that would help the Court in

17   following the presentation.  So if we could, distribute --

18   we have copies for everyone in the courtroom and for --

19           THE COURT:  Sure.  That would be great if you

20   would do that.  And then we can -- we can mark the

21   presentation as Trustee Exhibit 1.

22       (Trustee written presentation copy marked Trustee

23   Exhibit 1.)

24           MR. DESPINS:  Yeah.  I want to be clear, this is

25   not evidence.  It's just a work plan --

1            THE COURT:  Understood.

2            MR. DESPINS:  Okay.

3            THE COURT:  It's just demonstrative, but it's

4    something that will help the Court, and we can put it in the

5    record.  Okay?

6            MR. DESPINS:  Absolutely, Your Honor.

7            And if -- Your Honor, would you like us to file it

8    as well?

9            THE COURT:  No.  It's all right.

10            MR. DESPINS:  Okay.

11            THE COURT:  We can take care of that.  Thank you.

12            MR. DESPINS:  Thank you.  Thank you, Your Honor.

13    Okay.  So I -- first of all, thank you, Your Honor, for

14    hearing from us on this matter.

15            So I will start with -- on page 2 with

16    administrative matters.  And some of this stuff, Your Honor,

17    is fairly routine and boring so I will not spend a lot of

18    time on it.  You know it already.

19            But just to confirm, we posted the bond for

20    $25,000.  We opened the bank account, that's item number

21    two.  Number three is just a reminder that there were three

22    Section 341 meetings on March 21st, on April 6th, but they

23    were not completed, so another one needs to be scheduled by

24    the U.S. Trustee.  So I wanted you to be aware of that.

25            THE COURT:  Thank you.

1      MR. DESPINS:  And then still in this list of

2   matters, the monthly operating reports, there are two

3   reports that are still due by the debtor prior to our

4   appointment and, therefore, these need -- I don't know if it

5   goes to the Brown Rudnick motion to be recused or somebody

6   else is going to pick that up, but this needs to be done.

7   And that's listed on page 2.

8          I just want to point out though at the bottom of

9   page 2 is the monthly operating reports, this is in bold

10  there, reflect that a third party has made disbursements for

11  the benefit of the debtor in amounts that averages

12  approximately 115,000 per month.  I think that's an

13  important data point.

14          Next page, Your Honor, bar date.  There was a lot

15  of back and forth on a bar date.  And I know you were

16  considering at that time the dismissal of the case so it

17  made no sense to enter an order for a bar date when the case

18  might be dismissed, but at this point the case is not being

19  dismissed and I think the bar date order should be entered.

20          I think you have the revised -- I'm told that you

21  have a revised version and we would encourage the Court to

22  enter the order because we need to know who's out there,

23  especially in terms of governmental entity, we need to

24  understand that.  So that's the bar date order.

25          Under item number six, that's the update on the

1    Lady May inspection.  So there was an inspection, Your

2    Honor, on July 13th with PAX's expert and an expert I hired

3    to basically oversee PAX's expert.  So let me explain this.

4           Obviously, we have no money and the estate has

5    zero dollars.  And PAX was doing its own review with a very

6    reputable expert and they're paying for that and we

7    appreciate that.

8           However, given the dynamic of this case, I could

9    not go to the inspection and say I'm relying on PAX's expert

10   alone, even though directionally we're aligned in the same

11   direction in the sense that both we and PAX want to know if

12   this yacht has problems or not.

13          So what I did is I hired Mr. Paul Derecktor, who

14   is a -- I don't know if Your Honor is aware of this --

15          THE COURT:  Yes.

16          MR. DESPINS:  -- that company was in --

17          THE COURT:  I am aware.

18          MR. DESPINS:  Were you --

19          THE COURT:  I mean, once you said the name.  I

20   didn't know you hired that person, but I -- I'm aware of the

21   company.

22          MR. DESPINS:  I don't know.  Were you the judge on

23   that case?

24          THE COURT:  No.

25          MR. DESPINS:  Okay.

1          THE COURT:  No, I was not.

2          MR. DESPINS:  Okay.  So he's a -- he has a

3    shipyard in the area.  He really knows boats.  But he agreed

4    to look over the shoulder of PAX's expert for the sum of

5    $2,500.  I figured that that was a modest sum to invest just

6    to make sure nobody would criticize us relying entirely on

7    PAX's expert.  So we've done that.

8          There are still discussions that need to happen,

9    and let me tell you the nature of these discussions.

10          Basically, what Mr. Derecktor has told me is, he,

11   said, look, anybody buying a ship of this size would

12   actually take it off -- out of the water to inspect the

13   hull.  And I said, well, how much does that cost?  Oh,

14   $400,000.  Forget about that.  We can't do that.  Is there a

15   plan B?

16          He said, well, you could send divers to go

17   underneath and inspect the hull because the ship came back

18   from Europe and often in the ocean you hit, you know, all

19   sorts of things, potentially.  And that would cost $2,500,

20   the divers.  So we were having discussions with PAX as to

21   does that make sense to do that.

22          And the second thing he mentioned is that we

23   should really do a sea trial.  And at first I thought we're

24   not going to take the ship out at sea.  He said, no, just

25   basically it's like -- it's like for a car.  Take it out for

1    a spin for half an hour just to make sure --

2              THE COURT:  I'm familiar with a sea trial.

3              MR. DESPINS:  Okay.  I was not.  And so that's

4    still being considered, Your Honor.

5              So at this stage we need to get together with

6    PAX's expert to combine our common views and go back to the

7    entity that's the registered ship owner.  So that's the

8    status of the inspection at this time, Your Honor.

9              But it was obvious, you know I'm not a ship

10   expert, that there's damage to the boat because you could

11   see when you just walked by it there's a, you know, a

12   portion of the front of the boat that was hit by something.

13   But, anyway, we'll -- that's proceeding.

14             Still, on the list of matters, you know, page 4,

15   automatic stay letters.  I directed my firm to send more

16   than 20 letters to various parties that are at the periphery

17   of this case.

18             So, for example, an entity called Golden Spring

19   New York, which Your Honor may recall has been providing

20   some of the funding in some situations.  I'm not

21   -- I don't want to go into the details, but they're clearly

22   within the universe of debtor related companies.

23             And then Bravo Luck, that's the entity that

24   allegedly has a trust agreement that provides that they own

25   the Sherry Netherland apartment.

1          So they're all listed there.  Well, some of them

2     are listed there.

3          But we also sent the same thing to Brown Rudnick,

4     which was acknowledged by them, and a firm in Greenwich,

5     Connecticut, Whitman Breed.

6          That was actually very interesting because I

7     received permission from the person who sold the house to

8     the debtor to get access to the closing statements, the wire

9     transfers, et cetera.

10          But when I called Whitman Breed, there's all we

11     can't give that to you because we're representing the debtor

12     on other matters.  I said, well, what does that have to do

13     with anything?  You didn't represent them in the sale, did

14     you?  No.  But we're not going to give you any documents.

15          So that means they are representing the debtor on

16     other matters.  And obviously we want them to preserve those

17     documents and us to get access to that.

18          So there were a number of these letters that were

19     sent, this is since our appointment, probably 20 of those.

20          Page 5, still (indiscernible) matters.  Just so

21     Your Honor knows, reaching out to key parties, obviously, we

22     started with the debtor.

23          So on the first day after the appointment, I

24     called Brown Rudnick and I said -- and by the way, I'm not

25     going to reveal any settlement discussion other than to say

1    that my first approach was to reach out to them and say why

2    don't we have a meeting to see if there's a global

3    settlement that could be done before we get into this very

4    expensive and very extensive process, and the next thing I

5    heard after that is that they were no longer counsel to Mr.

6    -- to the debtor.

7          But I want to make sure the approach -- our

8    approach is we don't have to spend money on this if we don't

9    -- if we don't have to.  I know it's going to be really

10   expensive if we have to go to all these jurisdictions

11   because there are a bunch of jurisdictions involved.

12         But we wanted to see if there was a number at

13   which there could be a global settlement and that didn't --

14   at least, to date, has not panned out.

15         So we reached out to counsel for the debtor.  We

16   reached out obviously to Mr. Goldman, counsel to the

17   committee, who has given us very good advice on the case and

18   all that.  Same with Pacific Alliance, Mr. Friedman.

19         We reached out to counsel to Genever Holdings,

20   that's the Chapter 11 entity, Your Honor.  Another

21   interesting conversation because I asked him who do you take

22   direction from in that case?.  He said, oh, Miles.  I didn't

23   know that was the way he used names -- he's known.  So I

24   said, who's Miles?  He said, oh, that's the Chapter 11

25   debtor.

1       So he's taking direction in that case from this

2    debtor.  So I said, well, I'm the Chapter 11 trustee now.

3    So he said, well, I guess I'm taking directions from you.  I

4    said, well, we'll -- you know, to be continued.

5       But, you know, I'll come back to that later, but

6    there's a lot of things to be discussed about that issue.

7    But I'll come back to it in a second.  So we reached out to

8    him.

9       We also reached out to former Judge Cyganowski who

10   was the court-appointed sales agent in that case.  And I

11   want it to be clear -- and I'll cover that later -- the

12   trustee is not taking the position that the sale should be

13   halted.  So that's not part of our game plan.  But I wanted

14   to reach out to her to introduce myself and also to get

15   feedback on what's happening with the property.  And she did

16   tell me, by the way, that the debtor is occupying that

17   property, the Sherry-Netherland in New York.

18      Then counsel to creditors. Rui Ma and Zheng Wu

19   and, Carollyn Callari, obviously, we reached out to her as

20   one of the important constituency.

21      Since the failed attempt with Brown Rudnick, we've

22   asked new debtor's counsel to have a meeting with the

23   debtor, not necessarily to discuss settlement, but because

24   we need to have a serious discussion with the debtor to make

25   sure the debtor understands the regime he's operating under

Ho Wan Kwok - July 21, 2022                                    16

1    now.  And we've asked for that last Friday.  We haven't

2    heard back a response to date.  Maybe we will soon.

3         Next, Your Honor, still on page -- now at page 6,

4    still administrative matters, management of pending

5    adversary proceedings.

6         So there are a number of adversary proceedings,

7    Your Honor.  Most of them relate to non-dischargeability.

8    And I want to be clear, because we approached the debtor to

9    say, hey, we would like to -- I'm not sure -- it's not

10   informal intervention, we would like a stay of these

11   proceedings.  And the initial reaction, well, it's not your

12   business.  This is a fight between the creditors and the

13   debtor.

14        And generally that's probably right, so maybe

15   they'll like that concession, except that from a court

16   efficiency and a point of view I think it would be a really

17   poor investment of the Court's time, and we would need to be

18   involved, and our time to go through now a non-

19   dischargeability complaint.  Because in order to do that,

20   you need to go through the claim.  And essentially you need

21   to say I have a claim, a good claim and it's non-

22   dischargeable.  Well, that would be duplicative of the

23   process that could take place later on on claims allowance.

24        And my point is why go through that brain damage

25   when there's no assets in the estate today, meaning when

1    there are assets to fight over, then by all means all these

2    proceedings should happen.  But to do that today would be,

3    you know -- obviously, you are the judge, you will decide

4    your calendar, but to us it seems like a really bad use of

5    the Court's time and of our time as well because we might be

6    in a position where we now need to go through the claims

7    allowance process while there are no assets in the estate,

8    which, you know, I believe firmly that there will be assets

9    in the estate one day, but today there are none.  And I

10   think it would be, you know -- anyways.  So that's our view,

11   Your Honor.  So I wanted to make sure you understood why we

12   filed this motion for a stay.

13          But we're not going to go and get involved against

14   a particular creditor on the issue of non-dischargeability

15   or for or against the debtor on that.  That's not our goal.

16   Our goal is from the case management point of view to make

17   sure that there's a good use of everyone's time including

18   Your Honor's time on these matters.

19          Page 7, number nine, there's another adversary

20   proceeding, and that's the one by the registered ship owner,

21   HK International.  They filed -- and that was the Zeisler

22   firm that represented the plaintiff and now they represent

23   the plaintiff and the defendant -- that's a little joke --

24   until now I'm going to be substituted as the defendant in

25   that action.  And I'll come back to that towards the end,

1    but they gave us a 30-day extension to answer or to

2    otherwise move in that case.

3          Page 8, Your Honor, number ten, intervention

4    appearance and other litigation.  The debtor has 25 active

5    lawsuits.  I'm not -- and I don't want to be cavalier about

6    this -- I'm not that concerned today about the ones where

7    he's a defendant because the stay, you know, applies.

8          It's the litigation where he's a plaintiff.  We

9    need to get our arms around value if any of those claims and

10   we've started reaching out to those people.  But I don't

11   mislead, Your Honor.

12         We have not made a lot of progress on that.  That

13   is something that we need to do over the next, you know,

14   month or so.  So the concept there is to go and talk to

15   counsel for the debtor in -- where the debtor's a plaintiff

16   to see what is the nature of litigation.  Is there value

17   there for example?  If there is, I want to know sure Your

18   Honor knows this.

19         There's a, I think, a $1 billion -- that's the

20   asserted number -- where he's suing UBS in the U.K., and so

21   obviously I reached out to counsel and hopefully we'll have

22   a discussion with them to say what is the litigation about,

23   understanding that, et cetera.  So that's one example of

24   those.

25         Next, number eleven, is contact with the

1  Securities and Exchange Commission.

2          So I don't know if Your Honor saw this -- you

3  probably don't spend your time looking at the claims docket

4  -- but there was a claim filed by the SEC and basically --

5  and it's described there -- they are saying they've

6  conducted an investigation for, you know, where they may --

7  for violation of securities laws.  And that's not good news,

8  not only for --

9          THE COURT:  They didn't assert any dollar amount?

10  They said that they're investigating, is that what it says?

11          MR. DESPINS:  Yeah.  Well, it's -- we have the

12  quote there I think, but, you know, they're investigating,

13  and they may actually file a civil action against the debtor

14  to seek disgorgement and all that.

15          So I've dealt with the SEC before, and I'm saying

16  this with all due respect to them, my concern is the diluted

17  effect that could have on claims of, you know, Mr. Goldman

18  represents for example.

19          And so I've reached out to the SEC and we're at a

20  very preliminary stage.  There have been no substantive

21  discussions, but I want to understand exactly what is their

22  issue, what is it related to, and also whether they're aware

23  of any assets that we're not aware of.  So that is -- and,

24  again, I don't want to mislead you -- that just started this

25  week so not a lot of progress on that front.  That's the

1    SEC.

2          THE COURT:  Didn't they just -- and this claim

3    that they filed, it was recent, wasn't it?

4          MR. DESPINS:  Yes.  It was I'm going to say five

5    days ago, six days ago.

6          THE COURT:  Right.  Okay.

7          MR. DESPINS:  Something like that.  Yeah.

8          THE COURT:  Okay.  Thank you.

9          MR. DESPINS:  Okay.  Moving on to page 9, number

10   twelve, dealing with inbound inquiries.

11         We've received inquiries, Your Honor, from people

12   saying -- basically tips saying this guy is hiding assets

13   here or there.  And I want to be clear with Your Honor.

14   I've done a lot of these cases and I would say these often

15   fall into three categories.

16         The first category, what I'll call the crazies.

17   Meaning these types of cases attract all sorts of people,

18   some of them are completely irrational.  So that could be

19   door number one.

20         Door number two -- I'm not saying this applies in

21   this case but in that case, the target itself sends these

22   things anonymously just to send us to Africa, for example,

23   to spend money there when there's nothing to be -- to be

24   looked at.

25         Door number three, you can get a real tip, and

1    that's what we're investigating.  Some of them are very

2    specific as to persons holding funds.  And as I said, I

3    cannot validate those now.  I don't want to mislead the

4    Court and say, oh, well, we have -- we found $5 billion

5    here.  No, I can't say that.

6         But it shows that the Chapter 11 trustee process

7    is working because people are coming out of the woodwork to

8    say you should check the following things, things that we

9    would have never found ourselves initially at this stage

10   anyway.  As I said, these could be made up so we have to be

11   very careful about that, so I don't want to exaggerate the

12   importance of these.

13        Next, Your Honor, retention of professionals.

14   Well, you know we filed for the retention of Paul Hastings.

15   And obviously we retained Mr. Skalka and Linsey.  And the

16   point there is we're going to try -- and you'll see there's

17   no Paul Hastings lawyer other than myself here -- we're

18   going to rely heavily on them to handle a lot of the -- of

19   the matters before Your Honor.  And, you know, obviously you

20   know that firm very well.

21        Page 10, this is where we get into really more

22   meaty matters, Your Honor.  They titled theirs Exercising

23   Corporate Governance Rights.  The debtor lists various

24   entities as 100 percent owned by the debtor.  And one of

25   these entities is the Genever BVI entity, the British Virgin

1    Island entity.  And we've asked the debtor's counsel, all

2    three of them, meaning Brown Rudnick, the one in between,

3    and now, the Zeisler firm, to produce to us the corporate

4    governance documents relating to that entity.  To date,

5    nothing.

6             But that entity, you'll recall, BVI, owns the

7    Genever in the U.S., the Chapter 11 debtor.  And as I told

8    you, debtor's counsel believes he's taking instructions from

9    the debtor, at least until now.

10            And our point is we have -- the trustee jumps into

11   the corporate governance rights of the debtor.  That's horn

12   book law.  But nevertheless we probably will have to file

13   something with the Court to seek a confirmation of that, but

14   there are many cases that hold that.  And that means that we

15   can participate eventually in the Genever USA Chapter 11

16   case.  Obviously, we would never ask you to grant us relief

17   with respect to that.  We would go to Judge Garrity.

18            And one of the things we mention here is that we

19   will ask for a status conference in front of Judge Garrity

20   to say we're here, it's not the same landscape anymore.  We

21   need to complete our analysis of the Sherry-Netherland and

22   this issue of the trust that was -- for the son's company,

23   and we need to finalize that.  But the likelihood is that we

24   will appear there and say, Judge, this is a different

25   landscape.

1          But as I said at the beginning, we're not trying

2     to change the sale.  That's been preordained.  There's a

3     sale process.  We're not going to try to touch that.  But he

4     might say so what could you be doing?

5          Well, as I told you, Judge -- former Judge

6     Cyganowski told me that the debtor is still in that

7     apartment.

8          Well, if I control that entity that owns the

9     apartment, I want rental income from whoever I can get

10    rental income for.  So if the debtor doesn't want to pay

11    rental income -- by the way that would be thousands of

12    dollars.  It's not like $5,000 a month.  It would be -- you

13    know, I don't want to exaggerate, but it would be a very

14    large amount.

15         If the debtor wants to occupy the property, he

16    needs to pay the piper.  The piper is Genever and that's the

17    company we now control.  If the -- and if he doesn't want to

18    pay, then somebody else will rent this property for --

19    subject to approval by the board of the Sherry-Netherland,

20    et cetera, but this is a property that would pay top dollars

21    to rent, because this -- this apartment is not going to be

22    sold tomorrow.

23         These are very expensive apartments.  You need to

24    -- you know, I don't how to say that, but the market for

25    that is a very different market and it could take several

1    months before it's sold.  And by several months I mean

2    really several months.  So I'm not making a prediction as to

3    when it's going to sell, but it would be incredible for this

4    estate not to enjoy the benefit of rental income of a --

5    through a subsidiary that we control.

6           So I'm not asking you to comment or to rule on

7    that.  I'm sure my friends at Zeisler will have different

8    views of that, but I want to tell you that that's coming.

9           And by the way, Genever is an example, but there

10   are other companies as well.  And the issue there is we need

11   to get all the documents to understand exactly what's going

12   on.

13          We need to get bank accounts for these entities.

14   We need to understand all the transfers that were made.  And

15   that's, you know, that's something that we certainly started

16   with the corporate governance documents.  And we have not

17   received anything at this point, but we intend to pursue

18   that.

19          Page 11, number two, is what I just said.  We will

20   seek relief from this court to -- for the Court to confirm

21   that.

22          And on top of that, Your Honor, we would like to

23   be appointed under Section 1505.  And this is a bizarre

24   section in the sense that Chapter 15 -- what does this have

25   to do with this?  We're not in Chapter 15.  But that's a

1    section -- and I'm embarrassed to say I learned that -- I

2    relearned that recently -- that doesn't apply only in

3    Chapter 15.

4            That basically says, and it's quoted on page 11

5    there, "That a trustee may be authorized by the Court to act

6    in a foreign country on behalf of an estate created under

7    Section 541.  And an entity authorized to act under this

8    section may act in any way permitted by the applicable

9    foreign law."  So that would mean us going to the BVI to do

10   whatever we have to do there to get control of that entity.

11           And obviously we're trying to avoid going to court

12   if we have to because, you know, there's no money, but it's

13   not limited to the BVI.

14           There are other -- and that depends on the

15   targets, the tips we've gotten -- there are other potential

16   countries where we would seek discovery from parties and,

17   therefore, we will seek a broad ruling from the Court

18   appointing us under 1505 as the foreign representative, but

19   for the sole purpose of either getting documents or

20   recovering assets.  Again, that's to come.  I just want to

21   give you a heads-up on our plans on that.

22           At the bottom of 11, Your Honor, we would also

23   mention that it is typical in these cases for the Court,

24   meaning Your Honor, to enter a paragraph seeking the

25   assistance of foreign courts in getting the relief that a

1    trustee would seek.  And you might say, well, why would --

2    why do I need to do that?

3            First of all, it's kind of a gratuitous, you know,

4    request because it doesn't bind the Court in anyway.  But

5    it's -- in foreign courts, it's hugely important to be able

6    to point to a paragraph to say, look, the Court is asking

7    you or asking for your assistance in proceeding as quicky as

8    possible.  So you might say why is that necessary?

9            I'll give you an example.  BVI, god bless them,

10   they have a summer recess.  August, nothing happens.  I'd

11   love to have that system here too, but we don't.

12           So the only exception to that is if we can move on

13   an emergency basis.  So I'm not asking -- I'm just telling

14   you that if you ever see that, you'll know why we're asking

15   for that -- because that's the only way to get their

16   attention on an emergency basis during the month of August.

17   And, by the way, you know, August is just around the corner.

18   We may not need that for BVI, but in other countries we

19   might need it.  So we'll obviously come back to court on

20   that.

21           Page 12, the request for corporate governance.

22   I've already covered that.  We've asked for that.  This has

23   not been produced.

24           Page 13, item C, identify and if appropriate seek

25   turn over estate assets.  This is important.  You know, a

1    Rule 2004 motion, obviously we'll do that.  But Mr. Goldman

2    has already obtained that relief so we are -- we're going to

3    try to piggyback off of that to avoid duplication of effort

4    because he's already done a lot of that work.  So that's

5    certainly directionally what we want to do.

6          But the next point is the more important point,

7    Your Honor, which is that as part of this, we will seek

8    attorney/client privilege and work product of firms like

9    Brown Rudnick because the courts are pretty clear on that

10   that the trustee controls the privilege, especially for the

11   period where the debtor was a debtor in possession.

12         So you might say why do you want that?

13   Well, for example, the prepared schedules of assets and

14   liabilities, there may have been some exchanges there that

15   would be interesting to us.  And it's not limited to Brown

16   Rudnick.

17         By the way, I'm not -- I don't want to point

18   fingers at Brown Rudnick.  It's not a -- it's just an

19   example.  But certainly the firm in Greenwich, we -- you

20   know, they represent the debtor.

21         By the way, they didn't say we represent the wife

22   of the debtor or that company called Greenwich Land Trust.

23   They said they represented the debtor.  We want to

24   understand what they're working on and what's the work

25   product there because we believe that the trustee controls

1    that.

2           I'm sure that my colleagues will have different

3    views on that, but I want to make sure you know that's

4    coming, because I believe that as part of the investigation

5    that could produce results.

6           Now, page 14, still on identifying assets and

7    seeking turnover of assets for the estate.  The Lady May.

8           So I'm not going to read everything that's there,

9    but basically, Your Honor, we're quoting from Judge

10   Ostrager's decision in the New York Supreme Court.

11          And they're pretty -- and I don't want to be --

12   I'm not here to argument this thing because we're still

13   reviewing this and we will review it one more time, but it

14   appears that there are pretty strong findings there as to

15   the daughter, who of course is the sole shareholder of the

16   registered owner of the ship, and the debtor in terms of

17   control and beneficial ownership of the ship.

18          And what we're saying on page 15 is that subject

19   to finalizing our review, we believe that these findings

20   should be found to be binding by this court on the ship, the

21   registered shipowner company, even though that company

22   itself was not a party to that action.  But the daughter was

23   the witness.  Her lawyer cross-examined witnesses, et

24   cetera, et cetera, was a full participant in that trial.

25          And the New York Appellate Division had sent back

1    the case to Judge Ostrager asking that he make finding on

2    ownership of the ship.  So they had clear, clear, you know,

3    notice that the judge was going to do that.  And, in fact,

4    he did.

5           And at that point, again, subject to further

6    review, we believe that there's collateral estoppel even

7    though the company that's the registered owner was not a

8    party to the action because there privity.  It's the same

9    parties.

10          And the fact that -- sorry for my friends at

11   Zeisler & Zeisler, but they -- now they represent the

12   registered owner and Mr. Kwok that, you know, it's almost

13   like -- I'm joking -- almost summary judgment on that point

14   -- meaning that, yes, they are the same, they're all

15   together in this.

16          So in terms of collateral estoppel we believe that

17   should be binding.  Again, this is for later, but I wanted

18   to give you a heads-up because we don't believe they get to

19   do a do-over and like a ten-day trial here to put the same

20   people on, et cetera, et cetera, for the same issue.

21          Page 16, Your Honor, the Sherry-Netherland, I've

22   mentioned.  I told you what the game plan is there.  The

23   Greenwich homes.  You know, these are recent, you know, 2020

24   purchases by a company owned 100 percent by the wife of the

25   debtor.  Two houses.  And of course we want to know the

1    details of where the money came from.

2              And then point five, other assets.  I want to be

3    clear that we're not limiting ourselves to these three

4    buckets.  I will come back to the Court and update our work

5    product on that later, but I want to be clear the message is

6    not left that it's only the Sherry-Netherland and the yacht.

7    There are -- there are other assets that need to -- and the

8    Greenwich properties -- there are other assets that need to

9    be -- to be investigated.

10             Page 17, Your Honor, the claims review and

11   allowance process.  This is the same thing as I said before.

12   Everyone would like to have their claims allowed tomorrow in

13   the dream world, but it would be so counter productive to go

14   through that at this stage in terms of, you know, no money

15   to do that and to what end if we -- unless -- until we bring

16   money to fight over, let's not fight over that, but that's

17   just our view of the world.

18             So the timing of that, Your Honor, I would say

19   that's months away.  I don't want to mislead you and say,

20   oh, we'll get that done next month.  No.  We're going to try

21   not to focus on that in the coming months because the sole

22   focus is on bringing assets into the estate.  The sole,

23   short-term focus.

24             And then the last page is really a Chapter 11

25   plan.  The same thing, Your Honor, we're -- I don't want to

1  -- you know, I've always been told by my boss when I was a

2  young lawyer, you know, under promise and over deliver.  I

3  don't want to mislead you.

4       This will take -- unless there's a global

5  settlement, which we would welcome, this is going to take

6  months.  I don't want to mislead the Court on that.  I wish

7  that were not the case, but I have a sense of how things are

8  going to go and I think that's the way it's going to go

9  unfortunately.

10       So that completes our presentation, Your Honor.

11  I'm happy to answer any questions you may have.

12       THE COURT:  Okay.  Well, at the moment, I do have

13  a question or two, but I do appreciate very much the

14  presentation.

15       One of the reasons that in the memorandum of

16  decision that there was a status conference to be scheduled

17  was to have the trustee do exactly what you've done, which

18  is to come in and tell the Court where the trustee believes

19  things stand, what issues need to be addressed and what will

20  be coming, and what the ultimate goal may be.

21       And even if it's not reachable, I understand that,

22  you know, we're in Chapter 11, so obviously the ultimate

23  goal is some form of a plan if we get to that point.  So I

24  appreciate it.

25       Given what you've said it seems to me from your

1    perspective one of the most important things you'd like the

2    Court to address is to get an order issued setting a bar

3    date for claims.

4            And that was on hold somewhat during the -- before

5    your appointment because of issues regarding the possible

6    dismissal of the case, as you indicated in your

7    presentation, and because there was also a possibility of

8    conversion of the case.

9            There were other issues that the Court had to

10   consider, and so the bar date issue -- there were two issues

11   with regard to it.

12           There was -- there was an issue that the Court was

13   concerned that it was too short at that point in time

14   because the case was developing.  But now the case is five

15   months old.  There's a Chapter 11 trustee appointed because

16   of the information and pleadings submitted by various

17   parties in the case and the evidence presented during the

18   case.  And the record supported that.

19           So I agree with you that the Court will turn in

20   short order to that setting of a bar date.  And my thought

21   on that is the service of that order, who gets served?

22           You know, we can do publication and we might do

23   publication.  That might be something that you're interested

24   in.

25           But one of the things that I am concerned about is

1    the schedules and statements of affairs that were filed had

2    many qualifications associated with them.  I don't know if

3    the -- and I'm not sure you know either, so I'm not

4    suggesting that you would -- if the list of people who would

5    actually get served with the notice of bar date would be

6    sufficient in this matter?

7         So I think what we may do, and I'd like to think

8    about it, is consider how that order would be served,  and

9    whether or not publication is appropriate in addition to

10   service and how publication would be accomplished, where

11   publication would actually be made?

12        And I'd ask you to think about that.  I don't know

13   the answer to those questions.  As I sit here right now, I'm

14   raising those issues in order for all of us to think about

15   the fulsomeness of the notice that would be provided on a

16   bar date for filing claims.

17        MR. DESPINS:  Your Honor, you raise a very good

18   point.  I would like to be able to revert back to the Court

19   on that, especially the publication aspect and where, how.

20   So I said that it would be important to (indiscernible)

21   order, but it's not a matter of days.  You know, but we will

22   revert back to the Court on that point.

23        THE COURT:  I appreciate that.  And I will think

24   about it as well.  You know, there have been cases over the

25   years and cases recently issued in different circuits about

1    actual notice versus constructive notice and -- on a bar

2    date and things of that nature, so I want to make sure that

3    we are all thinking -- we're doing the best we can under the

4    circumstances as presented so that people have appropriate

5    notice with regard to the filing of a proof of claim.

6            So with regard to the rest of the information that

7    you've submitted, again, I appreciate it very much.  This is

8    what the Court was looking for with regard to the -- I

9    haven't looked yet, but I see in your report or your

10   presentation the adversary proceeding issues.

11           So have you filed a motion to stay in every

12   adversary proceeding?  There was just an adversary

13   proceeding filed yesterday.

14           MR. DESPINS:  Yesterday.

15           THE COURT:  And the day before.

16           MR. DESPINS:  So we filed in three, but we will

17   file a supplemental --

18           THE COURT:  Okay.

19           MR. DESPINS:  -- motion to stay in the others.

20           THE COURT:  And I'll have to look at those

21   obviously.  And the way that our motion practice works in

22   adversary proceedings under our local rules is that parties

23   have 21 days to -- there's a responsive -- there's a

24   responsive date of 21 days to object or not object, you

25   know, to do whatever they feel is appropriate with regard to

1    a motion and then the Court would determine whether or not

2    there would need to be a hearing.

3          Now, I believe in some of the earlier adversary

4    proceedings that 21-day period might run into a time frame

5    that might present a problem.

6          So I will take a look at those adversary

7    proceedings.  And if there's some issue as to waiting for

8    that response period to pass, I could I believe issue some

9    kind of order either extending the response period or

10   extending the periods of time that are already in existence

11   subject to a ruling on the motion to stay the proceeding.

12         Or, of course, if you have the consent of the

13   parties on the staying of the adversary proceeding, then I

14   would not understand -- or I would be surprised as to why I

15   would not grant a stay of those adversary proceedings.

16         MR. DESPINS:  Thank you.  And to be -- to be fair,

17   we just started with the stay process.  But for the life of

18   me, I don't know why the debtor would want to forward with

19   that or why the people seeking the non-dischargeability want

20   a ruling on that today or spend a lot of money on that

21   today.  But it's their prerogative, so we will seek the

22   consent.

23         THE COURT:  Right.  But if you are able -- if the

24   parties in each of the adversary proceedings consent to the

25   stay, then the stay will be granted --

1          MR. DESPINS:  Yeah.

2          THE COURT:  -- subject to, you know, further order

3    of the Court and the progress of the case.

4          I agree with you that it is not the goal of the

5    Court to have the party -- all parties, no matter what their

6    issues may be, to spend money needlessly.  No one wants

7    that.

8          But we need -- but we need to just make sure that

9    the process is properly followed and that the Federal Rules

10   of Civil Procedure are properly followed.  But if you obtain

11   the agreement of the parties in those adversary proceedings

12   to stay the adversary proceedings, then they will be stayed.

13   Okay?

14         MR. DESPINS:  Thank you, Your Honor.

15         THE COURT:  All right.  I'm not sure that there's

16   anything else I have a question about.  I understand that

17   there are a lot of things that you're reviewing and

18   different steps that you may be taking in short order and

19   the Court will attempt to address those as quickly as they

20   come before the Court.  I'm just looking to make sure that

21   there's nothing else that I have any questions about.  I'm

22   just looking at your presentation again.

23         (Pause)

24         THE COURT:  I think those were the two issues that

25   stuck out to me, were the bar date order and the stay -- the

1    stay motions in the adversary proceedings.  Because I do

2    agree with you that many of the other things that you've

3    discussed are developing and that you're addressing them in

4    due course, and that you will be seeking relief from the

5    Court when it -- you believe it's necessary to do so and

6    appropriate to do so.

7              So I don't have any other questions at the moment,

8    sir.  Thank you very much.

9              MR. DESPINS:  Thank you.  Thank you, Your Honor.

10             MR. HENZY:  Your Honor, may I be heard?

11             THE COURT:  Mr. Henzy, you may be heard, but we

12   still have some issues that I -- we need to resolve from the

13   Court's perspective and the United States Trustee's Office's

14   perspective on the issue of who represents the debtor.

15             And right now, Brown Rudnick represents the

16   debtor.  Brown Rudnick didn't state any reason in its motion

17   to withdraw as to why it's withdrawing its appearance.

18             And Brown Rudnick had to go through the process

19   that every debtor's counsel has to go through which is to

20   file an application to be employed, to submit a

21   disinterested affidavit, to comply with Bankruptcy Section

22   327(a) and Rule 2014, and our local Rule 2014.  And there's

23   nothing in the order appointing them that says that they can

24   file a motion to withdraw as debtor's counsel.

25             So while I understand you want to be heard, you

1    are not at this point debtor's counsel.  And --

2              MR. HENZY:  No.  I am.  I absolutely am, Your

3    Honor.

4              THE COURT:  Well, you're not in the -- how are you

5    debtor's counsel under the bankruptcy code --

6              MR. HENZY:  The debtor -- the debtor --

7              THE COURT:  -- Mr. Henzy?

8              MR. HENZY:  The debtor's now out of possession and

9    does not need to file an application under 327 to --

10             THE COURT:  Where's the case law that says that,

11   Mr. Henzy?

12             THE COURT:  It's, Your Honor, 327 itself provides

13   -- 327(a) provides --

14             THE COURT:  So you can be counsel even if you're

15   disinterested and you have a conflict just because the

16   debtor's no longer in possession?

17             MR. HENZY:  Absolutely.

18             THE COURT:  I'd like to see a case law that says

19   that.

20             MR. HENZY:  I'm not going to be able to have case

21   law for you, Your Honor, because 327 -- I think 327(a) makes

22   us the trustee, and in parens, debtor in possession, because

23   debtor in possession has powers of a trustee -- has to --

24   has to retain counsel pursuant to court order.  But there is

25   no requirement -- and, Your Honor, in Chapter 7 cases,

1    debtors are not retained --

2              THE COURT:  We're not in a Chapter 7 case, Mr.

3    Henzy.

4              MR. HENZY:  I understand.  But this is -- this is

5    now a debtor out of possession.  I don't think -- I mean, I

6    don't -- I hate to -- I want to be careful, Your Honor, and

7    with all due respect, you're asking me to give you cases

8    that say 327(a) says what it says, but I'm not aware of any

9    cases --

10             THE COURT:  No.  I'm asking you to give me a case

11   where there's a Chapter 11 trustee appointed and debtor's

12   counsel, who was debtor's counsel, can just withdraw and

13   someone else can step in without having to meet any of the

14   requirements of the bankruptcy code --

15             MR. HENZY:  The --

16             THE COURT:  -- let me just finish, please -- of

17   the bankruptcy code and the rules and have a conflict of

18   interest where they represent an entity that's owned by the

19   debtor's daughter who's clearly an insider under the

20   bankruptcy code.

21             MR. HENZY:  Your Honor, there are cases -- I don't

22   believe that there are cases that I'm aware of which -- let

23   me put it this way. I'm not aware of any cases that say that

24   a debtor out of possession does not need to file a retention

25   application with respect to its counsel.  Because, again, I

1    think the plain language of 327(a), and I don't know if any

2    counsel here would say the contrary, only provides a debtor

3    in possession has to do that.

4         I do know that there are cases, and we can get

5    those to you, dealing with whether a counsel for a debtor

6    post appointment of a Chapter 11 trustee may be paid by the

7    bankruptcy estate.  And generally the answer to that

8    question is no.  And the basis for that is that debtor's --

9    counsel for debtor out of possession is not retained

10   pursuant to 327(a) and is not covered by 330 and 331.

11        There are cases where courts haves said that

12   counsel for a debtor out of possession may be paid, but

13   really on a substantial contribution type of basis as

14   opposed to their counsel retained under 327(a) and subject

15   to the requirements of 330 and 331.

16        And I can get you those cases, Your Honor.  But I

17   -- that's a little bit different.  Those cases are saying

18   that counsel for a debtor out of possession is not 327

19   counsel and not subject to 333, 330 and 331 in the context

20   of saying usually you can't get paid by the bankruptcy

21   estate.  So I will get you those cases.

22        THE COURT:  Okay.  Is that the Office of the

23   United States Trustee's position?  There's no conflict here?

24   Zeisler & Zeisler can represent the debtor because the

25   debtor's no longer a debtor in possession?

1          MS. CLAIBORN:  Your Honor, the U.S. Trustee is

2     still evaluating that issue.

3          I do think there's one issue that I want to raise

4     with the Court that I don't think Attorney Henzy would

5     dispute which is that as counsel to a debtor they have an

6     obligation to disclose the compensation agreements or

7     otherwise that they have with the debtor.

8          THE COURT:  That's absolutely going to happen, so

9     you don't have to make that argument.

10         MR. HENZY:  Yeah.  I don't -- I don't --

11         THE COURT:  Mr. Henzy, if you're -- if you're

12    accurate, if you're correct, then whomever pays you could

13    take whatever money that might be available to creditors of

14    the estate and just continue to pay you.

15         MR. HENZY:  That's not true.  I think that's not

16    correct.

17         THE COURT:  How is that not true?

18         MR. HENZY:  So I can't -- I a hundred percent

19    agree we need to file our 329 2016(b) statement.  My

20    understanding is I have 14 days from the time I filed my

21    appearance to do that and we will do that.

22         I can't -- again, back to the cases that I'm

23    mentioning, I can't get paid from estate assets.

24         THE COURT:  Where in 329 does it say you file an

25    application to be employed?

1          MR. HENZY:  Oh, it doesn't, Your Honor.

2          THE COURT:  Right.

3          MR. HENZY:  No.  I'm not -- I'm sorry.

4          THE COURT:  So how is 329 applicable?

5          MR. HENZY:  Oh, I -- under 329, I believe what

6    Attorney Claiborn was referring to, I still have to file the

7    statement required by 329 and Rule 2016(b).

8          THE COURT:  So if you're a debtor -- let's carry

9    your thought process out.  If you're no longer a debtor-in-

10   possession and you don't have to be subject to any of the

11   Court, any of the oversight of the Court that's in the

12   bankruptcy code or the rules, then why do you have standing

13   to say anything?

14         MR. HENZY:  Because I represent the debtor out of

15   possession.  The debtor out of possession --

16         THE COURT:  Okay.  You represent the debtor out of

17   possession.  In your Chapter 7 cases that you're talking

18   about, the Chapter 7 debtor has no standing unless and until

19   it's proven that there be some surplus for the Chapter 7

20   debtor.

21         And at this point, we all know -- everybody knows

22   -- Mr. Despins knows, he took on this assignment knowing

23   that there's no money in this estate, so how do you have

24   standing to argue anything.  If you take your argument to

25   its fullest extent, you're not subject to disinterestedness,

1    you're not subject to conflicts, all you have to do is

2    disclose where your money -- the money you pay -- get came

3    from, then why do you get to say anything?

4           MR. HENZY:  I think on certain issues, Your Honor,

5    I don't disagree with you.  The debtor may have no standing.

6    And you may tell me to the extent I want to be heard on such

7    issues that you're not going to listen to me.  And I would

8    understand that.  I think that a debtor out of possession

9    does have standing with respect to certain issues.

10          THE COURT:  Which ones?

11          MR. HENZY:  Mr. Despins addressed the 523 actions

12   that are pending and his motion for stay with respect to

13   those actions and made certain representations to the Court

14   about the debtor's position on those.

15          Certainly Mr. Kwok has standing in the --

16          THE COURT:  I don't think he made any

17   representations --

18          MR. HENZY:  Oh, he --

19          THE COURT:  -- about the debtor's positions.  He

20   said that --

21          MR. HENZY:  I think he did.  He did.

22          THE COURT:  This is a -- this was a -- this is a

23   -- I didn't say this was evidence, number one.  I said it

24   was a demonstrative pleading that I would allow to be

25   admitted on -- in the record as Exhibit 1.  That's all.  I

1    didn't say I'm going to make any findings or rulings or

2    anything based upon what Mr. Despins provided to us today.

3         MR. HENZY:  Understood, Your Honor.  I was

4    answering your question.  I don't think that you would say

5    that the debtor doesn't have standing in the 523 actions.

6         THE COURT:  Okay.  But if the actions are stayed,

7    let's -- let me just -- presume the actions are stayed, then

8    there's nothing for the debtor to worry about until they're

9    not stayed, correct?

10        MR. HENZY:  I don't agree with that necessarily.

11   But I --

12        THE COURT:  Well, there's no pleadings requirement

13   or anything that the debtor would need to undertake while

14   the actions are stayed, correct?

15        MR. HENZY:  If the actions get stayed, that may be

16   correct.  I was trying to answer your question, Your Honor,

17   on standing.

18        THE COURT:  Okay.

19        MR. HENZY:  There may be matters that the debtor

20   does not have standing to be heard on.  I don't disagree

21   with you.

22        And there -- I think there will be matters that

23   the debtor does have standing to be heard on.  And the

24   example -- because it was in Mr. Despins' presentation --

25   was talking about the 523 actions.  If we're talking about

1    the 523 actions, I don't think that Your Honor would say

2    that the debtor does not have standing.

3            THE COURT:  Well, we're not talking about the 523

4    actions right now, right?  You didn't rise to talk to me

5    about the 523 actions.

6            MR. HENZY:  Actually, I did.

7            THE COURT:  Oh, you did.  Okay.

8            MR. HENZY:  I did.

9            THE COURT:  Then go right ahead.

10           MR. HENZY:  Okay.  I rose to make a very few

11   points.

12           THE COURT:  Okay.  Go right ahead.

13           MR. HENZY:  Okay.  One point, I want to be clear

14   because I have not been involved in this case.  I have

15   reviewed some of the record, but my sense is that people are

16   or parties want to make certain characterizations about Mr.

17   Kwok and about his approach to things.

18           On the 523 actions, what the trustee's asked us,

19   the trustee's position to us initially was that upon his

20   appointment he was substituted into the 523 actions.  That's

21   just -- I believe that's just incorrect, Your Honor.  I

22   don't think that the trustee becomes a defendant -- the

23   defendant in the 523 action.

24           THE COURT:  Okay.

25           MR. HENZY:  So our response to counsel for the

1    trustee was we think you're -- because we were being asked

2    what's -- we want the -- we want a stay, what's your

3    position?  And our response -- because we're now the

4    defendant in these actions -- and our response was no,

5    you're not.  In some sense, we don't -- we don't know what

6    you're talking about.  Okay.

7            So it's not that -- Mr. Kwok is not refusing to

8    answer sort of a basic question like that or trying to be

9    difficult just for difficulties' sake.  I think that point

10   is important to make.  Again, I think the parties are --

11   have or are going to characterize Mr. Kwok's approach in

12   certain ways that I think are not fair.

13           Again, with respect to the 523 actions, we were

14   asked will you agree to a stay are actions that creditors

15   have filed against Mr. Kwok.

16           And to your point, Your Honor, if those actions

17   are stayed, you said Mr. Kwok would have nothing to worry

18   about.  Okay.  I don't know that I necessarily want to agree

19   with the trustee that these actions are going to be stayed

20   and be criticized by the people who filed them.

21           Again, my point here is not to litigate or argue

22   whether a stay should enter, or the basis for those 523

23   actions, or what rights the trustee may or may not have in

24   those actions.  I just wanted to respond to Mr. Despins'

25   presentation on the 523 actions because to the extent

Ho Wan Kwok - July 21, 2022                                    47

1    possible I want to avoid an unfair characterization of how

2    Mr. Kwok is approaching things.

3            We do -- we are counsel for HK International,

4    okay, which is the title owner of the Lady May.  And

5    notwithstanding that Mr. Despins said he was not going to

6    argue, he argued.  I just want to be clear.

7            And Your Honor made the point, there's been no

8    evidence taken today that the document, that was handed up

9    is not in evidence, Mr. Despins' presentation is not

10   evidence.  So that's all fine.

11           I do want to make the point that we absolutely, HK

12   International, absolutely disputes that anything that

13   happened in New York is binding in this court.

14           You know, the document handed up takes snippets

15   out of lengthy proceedings and lengthy rulings by the judge

16   there.  The ownership of the Lady May is going to be

17   litigated.  So I just want that to be --

18           MR. HENZY:  How are you going to represent both HK

19   International and Mr. Kwok in that adversary proceeding that

20   HK International filed against Mr. Kwok and the bankruptcy

21   estate as to the title to the Lady May?  Isn't that an

22   absolute and obvious conflict of interest?

23           MR. HENZY:  Here it is not, Your Honor.

24           THE COURT:  How is that?

25           MR. HENZY:  And one thing I absolutely agree with

1     Mr. Despins on is that upon his appointment he automatically

2     became the defendant in that action and Mr. Kwok is no

3     longer a defendant in that action.

4               THE COURT:  But you still represented -- it

5     doesn't matter.  You represent HK International and now you

6     represent Mr. Kwok.  How is -- whether you're no longer

7     involved in that adversary proceeding doesn't matter.

8               MR. HENZY:  No.  He's no longer involved.

9               THE COURT:  It doesn't matter.

10              MR. HENZY:  It does matter.

11              THE COURT:  No.  It actually doesn't.

12              MR. HENZY:  Under the rules of --

13              THE COURT:  It's an actual conflict of interest.

14    You are -- you cannot represent -- you took on the

15    representation of Mr. Kwok when there was an adversary

16    proceeding pending against Mr. Kwok that your firm filed on

17    behalf of HK International.

18              MR. HENZY:  We took on the representation of Mr.

19    Kwok after Mr. Despins --

20              THE COURT:  But, see, you want to have it both

21    ways.  You want to say, oh, in that adversary proceeding,

22    Mr. Despins is automatically the defendant, but in the

23    523's, he's not.

24              MR. HENZY:  Well, I --

25              THE COURT:  That's what you're arguing, right?

1        MR. HENZY:  That is what I'm arguing.  And I think

2   that that is black letter law, Your Honor.

3        THE COURT:  Where?  Really?

4        MR. HENZY:  I don't --

5        THE COURT:  I'd like you to show me that black

6   letter law.

7        MR. HENZY:  I don't think Mr. Despins is going to

8   tell you that he is a defendant --

9        THE COURT:  I'm not asking Mr. Despins.  I'm

10  asking you.

11       MR. HENZY:  Your Honor, he is not the defendant in

12  the 523 actions.  I think that that is black letter law.

13       THE COURT:  Okay.  I'd love to see that black

14  letter law, please.

15       MR. HENZY:  I don't know if I'm going to find

16  cases that say that because I don't know that -- I don't

17  know that anybody would take the position that a trustee

18  becomes -- is the defendant in a 523 action, Your Honor.  I

19  don't -- that doesn't even make any sense to me.  Again,

20  with all due respect, Your Honor, that -- I don't know how a

21  trustee could ever be a defendant in a 523 action.

22       THE COURT:  Okay.  I understand what you said.

23       MR. HENZY:  Okay.

24       THE COURT:  Go ahead.

25       MR. HENZY:  Okay.  So I -- Mr. Kwok is no longer

1    the defendant in the Lady May adversary proceeding.  I think

2    Mr. Despins' position is that he now is the party that --

3            THE COURT:  All right.  Well, let's move on from

4    the 523.

5            There's a stipulation regarding the Lady May in

6    which the debtor and HK are parties to.

7            MR. HENZY:  Mm-hmm.

8            THE COURT:  Okay.  Are you -- so Mr. -- you're

9    saying you're not representing the debtor anymore in

10   connection with that stipulation, that it's Mr. Despins?

11           MR. HENZY:  I think the answer is yes and I think

12   that's Mr. Despins' position is that.

13           THE COURT:  Okay.  So you're saying your conflict

14   of interest is non-existent because Mr. Despins was

15   appointed as a Chapter 11 trustee?

16           MR. HENZY:  Yes.

17           THE COURT:  And you can, therefore -- okay, that's

18   your argument?

19           MR. HENZY:  That's my argument.

20           THE COURT:  Okay.

21           MR. HENZY:  Under Rule 1.7 in the Rules of

22   Professional Responsibility that -- that is my argument.

23   And I --

24           THE COURT:  I'm not looking at 1.7 in the Rules of

25   Professional Responsibility.  I'm looking at the bankruptcy

1    code and the bankruptcy rules.

2              MR. HENZY:  I'm not aware of anything in the

3    bankruptcy code and the bankruptcy rules, Your Honor, that

4    would -- that would govern this at this point.  I think it

5    is --

6              THE COURT:  So the only place you have standing

7    right now is in a 523 cause of action, isn't that correct?

8              MR. HENZY:  I don't -- I'm not prepared, Your

9    Honor, to think about every issue that might come up in this

10   case and tell you the debtor does or doesn't have standing.

11             THE COURT:  Well, you've argued that Mr. Despins

12   shouldn't be the Chapter 11 trustee.

13             MR. HENZY:  And I think -- I think the debtor does

14   have standing --

15             THE COURT:  Where do you have standing to argue

16   that?

17             MR. HENZY:  I don't know how a debtor would not

18   have standing to take a position that a trustee should not

19   be the trustee or that a trustee should be removed.

20             THE COURT:  I'd like to see some case law on that

21   because I don't think you're -- I understand your argument,

22   but I don't see support for your argument.  You're not

23   persuading me that you have a right -- that the debtor has a

24   right.

25             You had a right to object to the appointment of a

1    Chapter 11 trustee, which Brown Rudnick did.  They objected

2    to it.  They actually asked that the case be dismissed.  I

3    considered all of their arguments.

4            I considered all of the arguments of all the

5    creditors on conversion, appointment of a Chapter 11

6    trustee, whatever the issue may be.

7            The Court decided, rightfully or wrongfully, to

8    appoint a Chapter 11 trustee.  No one appealed that order.

9    Brown Rudnick even made a point of that that they didn't

10   appeal that order.

11           You're now attacking that order after the appeal

12   period has run.  And you're saying that you can do that

13   because you don't have to be subject to -- and when I say

14   you, I mean the law firm now supposedly representing the

15   debtor.

16           Which, by the way, Brown Rudnick's motion hasn't

17   been granted, so just understand that, that you don't have

18   to be -- you don't have to submit yourself to the same

19   standards that Brown Rudnick did because the Chapter 11

20   trustee's been appointed.

21           And the Chapter 11 trustee steps into your shoes

22   in all these other situations, including in the HK adversary

23   versus Mr. Kwok and PAX, but that you have standing to say

24   he can't be the trustee.  That's your argument?

25           MR. HENZY:  I think, Your Honor -- I think you're

1    conflating two issues.

2              THE COURT:  Okay.  Well, tell me how I'm

3    conflating them, please.

4              MR. HENZY:  So I don't think the standing issue is

5    about do I have standing or --

6              THE COURT:  No.  No.  On behalf of Mr. Kwok.

7              MR. HENZY:  Okay.

8              THE COURT:  I'm not --

9              MR. HENZY:  So does --

10             THE COURT:  But I --

11             MR. HENZY:  -- the --

12             THE COURT:  I'm not sure you're Mr. Kwok's lawyer

13   yet.  I'm not sure yet.

14             MR. HENZY:  I'm sure I'm Mr. Kwok's lawyer.

15             THE COURT:  I know you are.

16             MR. HENZY:  I understand you're -- I understand

17   you're not.

18             THE COURT:  I know you are, but I'm not sure you

19   are for purposes of this case.  You might be for other

20   purposes.

21             MR. HENZY:  I believe, Your Honor, that a debtor

22   has standing to challenge the appointment of a trustee.

23             And let me say I understand that the appeal period

24   on the order -- I guess I'll call it granting the trustee

25   motion, okay -- that's passed and no one appealed and Mr.

1    Kwok is not challenging that order in any way, shape or

2    form.

3              There's a separate order that Your Honor entered

4    --

5              THE COURT:  I agree with you.

6              MR. HENZY:  Okay.

7              THE COURT:  I agree.

8              MR. HENZY:  -- approving Mr. Despins' appointment

9    by the U.S. Trustee.  And the 60(b) motion was filed.  I

10   believe it was within seven days after.

11             THE COURT:  No.  I agree.

12             MR. HENZY:  Okay.

13             THE COURT:  I mean, if I -- if I accept your

14   argument, I'm not suggesting your 60(b) motion was untimely.

15             MR. HENZY:  Okay.

16             THE COURT:  Okay?

17             MR. HENZY:  I believe that a debtor has standing

18   to challenge the appointment of a trustee or to seek to

19   remove a trustee.

20             I mean, among other things, there is case law that

21   says that a trustee may not have any bias or prejudice

22   towards any party including a debtor.  And if that is

23   correct -- and, again, I think the case law is clear on that

24   -- then I don't know how a debtor couldn't have standing to

25   tell a court I think this trustee has a bias or prejudice

1    against me.  And that's a basis to remove a trustee.

2            The U.S. Trustee's handbook on panel trustees --

3    and I understand Mr. Despins is not a panel trustee --

4    states that trustees may have no bias or prejudice towards

5    anybody involved in the case.

6            So if there's a -- as debtor, debtor has a right

7    to have a trustee who is not biased or prejudiced against

8    debtor.

9            Where there is a right, there is a remedy.  I

10   don't know how a debtor could not have standing to raise

11   that issue with the Court.  So I --

12           THE COURT:  Did you -- did you -- why didn't you

13   file a removal of the trustee under section 324 of the code

14   then?

15           MR. HENZY:  Your Honor, our judgment was that this

16   was an easier way, a quicker way.  I don't think there's

17   anything wrong with --

18           THE COURT:  Well, what happens if I deny it?  If I

19   deny your motion, then all you can do is file a notice of

20   appeal at that point.

21           MR. HENZY:  Yes.  That's right.  I think the basis

22   -- the basis for the 60(b) motion, Your Honor, is the same

23   basis that there would be for a 324 motion.  If you -- if

24   you said I'm going to deny this --

25           THE COURT:  I'm not sure that's true actually.  I

56

1    think the standards under those sections are different.

2              MR. HENZY:  Actually, I agree with you.  So I

3    misspoke.

4              And, look -- look, the reason we filed the 60(b)

5    motion is because we think that there is information that

6    should have been put in front of the Court that was not put

7    in front of the Court.  And --

8              THE COURT:  Okay.  I understand that.  And we're

9    not having a hearing on ultimately that today.  Okay?

10             MR. HENZY:  We're not.

11             THE COURT:  So you rose to tell me that you

12   believe that the debtor -- you are debtor's counsel

13   regardless of the actual conflict of interest that exists --

14             MR. HENZY:  I didn't -- I didn't rise to tell you

15   that because I wasn't questioning that.

16             THE COURT:  Okay.  I'm sorry.

17             MR. HENZY:  But you told me that I might not be.

18             THE COURT:  I apologize.

19             MR. HENZY:  Yeah.

20             THE COURT:  You rose to tell me what then?  That

21   you believe that Mr. Despins made arguments that

22   characterize Mr. Kwok that you think are unfair?

23             MR. HENZY:  That's right.

24             THE COURT:  Okay.  And then -- and that your

25   client has standing in the -- because I had asked Mr.

1    Despins questions about the adversary proceedings and the

2    stay issue, that your client has standing in the 523

3    actions, and doesn't -- and you -- and your assertion is

4    that Mr. Despins does not automatically become the defendant

5    in the 523 actions, but does in the action brought by HK

6    International?

7              MR. HENZY:  Absolutely.

8              THE COURT:  Okay.

9              MR. HENZY:  Yeah.

10             THE COURT:  And then what else did you want to

11   tell me?

12             MR. HENZY:  And on behalf of HK International, I

13   wanted to tell you, because I think Mr. Despins did make

14   argument that, just for the record, that HK International

15   agrees with -- sorry -- disagrees with his argument.  That's

16   all.

17             THE COURT:  Okay.

18             MR. HENZY:  Yeah.

19             THE COURT:  All right.  Is there anything further

20   that you wanted to tell me?

21             MR. HENZY:  Not right now, Your Honor.

22             THE COURT:  Okay.  Thank you.

23             MR. HENZY:  Thank you, Your Honor.

24             THE COURT:  Mr. Kindseth?

25             MR. KINDSETH:  Your Honor, on behalf of HK

1    International, I would just like to just clarify some --

2    with respect to the inspection of the Lady May, I just would

3    like to make sure there's no misunderstanding.

4         The trustee used the term that the yacht was

5    damaged and I think that left a lot open.  And I think it's

6    appropriate for Your Honor to hear with respect to the

7    particular issues that the yacht was not damaged in the

8    crossing.  And we permitted the inspection on a very short

9    order.

10        Pacific Alliance had three inspectors there.  The

11   trustee had one inspector there.  They were allowed

12   unfettered access to the entire ship.  Our chief engineer

13   and the captain were available.  The chief engineer was with

14   all the inspectors continuously answering their questions.

15        Additionally, they were permitted unfettered

16   access to the books and records of the yacht.  And they went

17   through the records and obtained all the information they

18   sought.

19        And to my knowledge, being present and witnessing

20   what transpired, the only known issues with respect to the

21   Lady May are first the sea valves, which we've been

22   apprising the Court of for quite some time.  We had an

23   estimate to do the work in France, but time did not permit

24   it.  So we know there's some rusted bolts on some sea valves

25   that need to be replaced and we fully intend to reserve for

1    that.

2           Unfortunately, one of the fuel pumps broke outside

3    New York.  We disclosed that before the inspection.  And

4    we're getting quotes for that and we intend to reserve for

5    that.

6           And, additionally, the boat being damaged was that

7    some paint came off the hull during the crossing.  And we're

8    fully intending to have that inspected and an estimate

9    received for the cost of that.

10          So those are the three items.  And, again, I was

11   personally there.  The inspectors discussed, the chief

12   engineer discussed, there were no other issues.  That is the

13   extent of the, quote, "damage" that was referred to by the

14   trustee.

15          And in accordance with the stipulation, we're

16   going to come to -- with an estimate.  We'll present the

17   estimates to Your Honor and we'll ask Your Honor to order

18   that the -- those amounts be reserved.

19          Thank you, Your Honor.

20          THE COURT:  Okay.  Thank you.

21          With regard to HK's -- the books and records of HK

22   as a whole, I -- apparently -- I shouldn't say apparently --

23   none of what's happened today is evidence before the Court

24   obviously.  We're hearing different reports, which is what

25   the Court wanted to hear.  But HK International is going to

Ho Wan Kwok - July 21, 2022                                    60

1       be subject to some requirement to turn over those records to

2       the trustee.

3               MR. SKALKA:  Yes.  My apologies, Your Honor.  And

4       I'm sure, you know, Attorney Henzy meant to address this.

5               With respect to the corporate books and records

6       and so forth, we received the request from the trustee.  We

7       fully understand our obligations and the debtor understands

8       the debtor's obligations post trustee appointment while the

9       debtor is out of possession under the code and the

10      bankruptcy rules to cooperate with the trustee.  And we're

11      in the process of assembling information and records.

12              And HK International, although not a debtor

13      entity, it's owed -- it's owned by the daughter.

14              As counsel, I understand that the records will

15      need to be produced and we fully intend to cooperate with

16      the trustee in that process.

17              THE COURT:  Okay.  Thank you.

18              Now, with regard to the status conference, the

19      other matter -- two other matters -- we turn first to Brown

20      Rudnick on the motion to withdraw as attorney.

21              So, counsel, I'm not sure which of the two of you

22      would like to be heard, but there is no -- unless I missed

23      something, which is very possible --- I don't see any reason

24      set forth in the motion to be -- to withdraw as debtor's

25      counsel in the case.

1          So I'd ask you why -- why is it that you believe

2     that you are entitled -- your firm is entitled -- and all

3     the individuals who filed appearances in the case entitled

4     to withdraw as debtor's counsel at this point?

5          MR. KLETTER:  Sure.  And just to clarify, Mr.

6     Romney is with the Zeisler firm.

7          Again, this is Dylan Kletter.

8          THE COURT:  Oh, yes.  I'm sorry, Mr. Romney.

9          MR. KLETTER:  That's okay.  This is Dylan Kletter

10    from Brown Rudnick.

11         You're right.  It does not go into detail for why,

12    but I believe the Zeisler firm has accurately described now

13    that he's out of possession it's his prerogative to

14    terminate his counsel and that is what he did.  And he has

15    replaced it with substitute counsel of the Zeisler firm, a

16    Mr. Mitchell.

17         And then it is our position that the Zeisler firm,

18    as you can tell, is obviously working the file and we have

19    an unobjected to motion to withdraw as counsel.

20         THE COURT:  Well, I don't know that you have an

21    unobjected to motion to withdraw as counsel because it

22    hasn't been set for a hearing and no one's been required to

23    file any response to your motion.

24         And even if you have an unobjected to motion to

25    withdraw as counsel, that doesn't mean that the Court

1    doesn't have an independent duty to determine whether or not

2    that motion should be granted or denied or granted with

3    conditions.

4           Your firm subjected itself to the Court and to the

5    processes of the bankruptcy case.  Your firm received a

6    million dollar retainer from some source that I'm not -- I

7    don't recall -- maybe there is evidence in the record about

8    the source, I don't recall -- and I'm sorry at the moment

9    that I don't -- but you also, you know, would need to file a

10   fee application and you'd have to have those fees approved

11   and you'd have to establish that the retainer has not been

12   drawn down on and all of those kinds of things.

13          So while maybe it ultimately will be a motion --

14   and unopposed motion to withdraw as attorney, it is not at

15   that -- this point in time because it was not brought before

16   the Court properly as far as getting it either through our

17   contested matter procedure or on the calendar for a hearing.

18   That's how our local rules work in Connecticut.

19          So we can -- I'm going to hear from other parties,

20   sir, but there will be a process.  And maybe it will be

21   granted.

22          But at the very least, if it is granted, you will

23   -- your firm will be obligated to comply with the

24   requirements of the bankruptcy code and the rules and that

25   would be at the very least filing a fee application which

1    would be subject to objections and further hearing and

2    determination by the Court the fees and expenses incurred by

3    the firm. Okay?

4              MR. SKALKA:  Understood.

5              THE COURT:  Mr. Friedman, I see you have risen.

6    Go right ahead, please.

7              MR. FRIEDMAN:  Thank you, Your Honor.

8              Madam Court Reporter Deputy, can you hear me from

9    here or do you want me to go --

10             THE COURT:  Maybe it would make sense if you don't

11   mind, Mr. Friedman.

12             MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

13   Peter Friedman from O'Melveny & Myers.

14             THE COURT:  Good afternoon.

15             MR. FRIEDMAN:  I want to make three quick points

16   on things you've heard from -- on so far and then I would

17   like to come back to address any issues related to the

18   scheduling with respect to the retention motion and the

19   60(b) motion.

20             THE COURT:  Go right ahead.

21             MR. FRIEDMAN:  First is to answer your question.

22   Lamp Capital made a loan --

23             THE COURT:  Thank you.

24             MR. FRIEDMAN:  -- which is where the funding came

25   from.

1          The second is with respect to 523 and those

2     complaints.  My view -- obviously everybody's offered what

3     they think is the right answer -- is we don't even know if

4     this debtor is going to propose, I'm sorry, the trustee is

5     going to propose a plan that has a discharge so it seems to

6     me like a stay is particularly warranted in light of that.

7          Why waste time litigating over an action that may

8     be constitutionally not ripe.  I think it's actually to me

9     like a pretty serious question as to ripeness for any of

10    those claims if we don't know if the debtor -- if a

11    discharge is going to be proposed.

12         I have a hard time seeing one being proposed by

13    the trustee unless there's something pretty close to full

14    satisfaction of claims.  I don't know what the trustee is

15    going to do on that.  But that seems to me an independent

16    reason to consider the parties potentially agreeing to stay

17    those matters.

18         With respect to the HK lawsuit over the boat, you

19    know, PAX is a defendant.  I'm hoping that we can stipulate

20    that PAX doesn't need to be a defendant.  We never claimed

21    to own the boat.  We can't assert the debtor's rights.  We

22    can't levy because of the automatic stay which remains in

23    place.

24         So, you know, PAX has had to spend a lot of

25    resources already in this case.  It would be great if we

Ho Wan Kwok - July 21, 2022                                    65

1    cannot have to spend resources on a suit where we're not

2    really appropriately a defendant given sort of the current

3    context of this case.

4              So those are the three points I wanted to make.

5              I do want to be heard on the retention issues and

6    the 60(b) motion because we do have some things to say.

7              THE COURT:  Go right ahead.

8              MR. FRIEDMAN:  When it's time.  You know.  I don't

9    know if you want me to --

10             THE COURT:  Well, you can -- you can tell me what

11   you'd like to tell me now.  I mean, we are going to -- you

12   go right ahead.

13             MR. FRIEDMAN:  Okay.  So, Your Honor, a couple of

14   -- a couple of things.

15             On the -- on both of them, whether it's with

16   respect to Paul Hastings or with respect to Mr. Despins, I

17   think our big concern is -- with respect to the issues Mr.

18   Kwok has raised in his letters and on his social media

19   account, which I don't know if you've had -- maybe it's not

20   appropriate for the Court to look at it -- but on those

21   things like PAG has committed fraud by colluding with DOJ is

22   littered all over his Gettr account.

23             I think his most recent Gettr post is, you know,

24   Mr. Miles Guo will initiate a series of motions and appeals

25   to expose the CCP's infiltration of the U.S. Judiciary and

1    the black hands of the U.S. Judiciary.  There's an

2    accusation that I've colluded with the CCP.

3              I certainly want to say with respect to PAG and

4    with respect to me --

5              THE COURT:  With respect to PAG, P-A-G?

6              MR. FRIEDMAN:  Yeah.

7              THE COURT:  Okay.

8              MR. FRIEDMAN:  -- and all of its affiliates, and

9    me, if there is any repetition of those in a pleading signed

10   by counsel, we will seek Rule 11 sanctions.  I just want to

11   put people on notice of that.  Okay?

12             As an officer of the Court I will tell you that

13   I'm the only person who spoke -- maybe Mr. Sarnoff did, but

14   our client never spoke to the Department of Justice about

15   the appointment.  We actually recommended people other than

16   Mr. Despins.

17             We, for reasons having to do with costs, didn't

18   actually want somebody from a big law firm to be involved in

19   this case as a trustee because of expense.  We were very

20   clear that there were people we supported to be trustee.

21   They were not selected.  Either of the people who were

22   selected, neither one was selected.  We would have been okay

23   with Mr. Whitley.

24             We're not thrilled with Mr. Despins for the cost

25   reasons, for the fact they put in now our client is a former

1    client of ours that I think is, you know, wasn't something

2    that our client thought was so great to be deemed a former

3    client, but it is what it is.

4            But I just want to be really clear that if anybody

5    makes those allegations in a signed pleading it will be Rule

6    11 sanctionable because it's just not true.

7            More broadly speaking on both though, Your Honor,

8    the Court obviously has control over how it deals with those

9    motions and what it permits to be raised.

10           If it involves subjecting us to discovery,

11   obviously, you know, we think that's extremely unfair and

12   unwise.

13           We think that if it involves frankly forcing

14   people to go down rabbit holes to deal with, you know, Paul

15   Hastings' connection with companies that operate in China on

16   the sort of rabbit hole, crazy theories that are being

17   raised about collusion with the CCP, that the Court should

18   just consider going in a different direction, if it's going

19   to indulge that kind of discovery because it's a -- you

20   know, Paul Hastings, they're going to bill for that -- that

21   eats into creditor recoveries.  It distracts us from the

22   intention -- attention to what ought to be done in this

23   case.

24           And I don't think it's right to give Mr. Kwok the

25   ability to do that.  That will be -- discovery, et cetera,

1    will all be argued later.  But if the Court's going to -- we

2    would rather see the Court go in a different direction with

3    the trustee because it's not in the best interest of the

4    estate rather than go down those rabbit holes because of the

5    expense issue and because of the delay issues.

6            Again, I think the allegations are not -- are

7    frivolous allegations that could subject counsel and clients

8    and anybody who's sort of sponsoring them to real problems.

9            But we just, you know -- as you know, PAX has been

10   waiting since 2009 to get paid.  Spending more time on a war

11   over these issues which really aren't germane to what are

12   Mr. Kwok's assets and how can they get into the hands of

13   creditors seems just -- you know, can't possibly be in the

14   interest of the estate.

15           As to cost more broadly -- and, you know, I've

16   expressed this to Mr. Despins, you know, we are concerned

17   about the rate structure and the expense.  He's obviously

18   done a lot of work, which is great, and I think his

19   presentation was important, but, you know, we are concerned.

20           I think to the extent that we can and we will, you

21   know, if we need to, we will file an objection with respect

22   to -- if we have to -- with respect to the costs and perhaps

23   propose something.  I'm not sure.  But I don't want anybody

24   to be surprised about that.  I try not to surprise people,

25   you know, particularly other, you know, members of the bar

Ho Wan Kwok - July 21, 2022                                                    69

1    on sensitive -- I understand fees are sensitive issues,

2    rates are sensitive issues, but it is important to PAX as a

3    party with, you know, $260 million plus in judgments and the

4    largest creditor.

5              I think that's really all I wanted to say, Your

6    Honor.  I appreciate you giving me the opportunity to speak.

7              THE COURT:  Okay.  Before you step back, I -- as

8    you know, this is a status conference so we are going to be

9    setting some hearings on different matters, specifically on

10   Brown Rudnick's motion to withdraw.

11             And I have to look at -- there's a lot of thing

12   that have been filed since Mr. Despins was appointed as the

13   Chapter 11 trustee that we will look at.

14             Are you asking the Court to do anything different

15   than what the Court is planning on doing or you're just

16   asking that you reserve your rights to be heard on whatever

17   happens?

18             MR. FRIEDMAN:  The latter.  And the other thing I

19   would just ask is if the Court can -- I would be unavailable

20   I think on August 5th.  I think the --

21             THE COURT:  The 5th?

22             MR. FRIEDMAN:  -- the Friday, that Friday of that

23   week is -- I'm unavailable.  Other than that, I'm available

24   at the Court's disposal.

25             THE COURT:  Okay.  Thank you.

1          MR. FRIEDMAN:  Thank you, Your Honor.

2          THE COURT:  Mr. Goldman?

3          MR. GOLDMAN:  Thank you, Your Honor.  I'll be --

4          THE COURT:  Would you come up here too, please.

5          MR. GOLDMAN:  Yes.  Certainly.

6          THE COURT:  Just because I think it's easier for

7     the courtroom deputy to pick up your voice.  Please.  Thank

8     you.

9          MR. GOLDMAN:  Just a few brief points, Your Honor.

10          The committee is aligned with PAX in terms of the

11     cross concerns that Mr. Friedman articulated with respect to

12     the trustee and his firm.  We want to reserve our rights on

13     that application.

14          We're also aligned in terms of how we view the

15     9024 motion that the debtor filed, which we view as a

16     complete distraction and without merit.

17          We need to get on to the business of administering

18     this five month old case and we've had enough litigation

19     thus far.

20          These issues that are raised in our view are just

21     not meritorious and we shouldn't be spending a lot of -- a

22     lot of time on that.

23          Just in terms of giving Your Honor an idea of the

24     magnitude of the claims thus far in the case, even though a

25     proof of claim deadline hasn't been set, the claims register

1    shows 80 -- approximately $83 million in proofs of claim

2    that have already been filed.  That doesn't include PAX's

3    claim of approximately 254 million.

4            The class action 523 complaint that was just filed

5    yesterday states that their claim is in the collective

6    amount of $114 million.  That relates to I believe the

7    securities, the alleged securities violations, with respect

8    to GTV.  That may also be the same claim that the SEC filed

9    a proof for although I'm not completely sure.

10           And so if you include those two claims, which

11   haven't been filed yet, we're up to around $450 million in

12   gross amount of claims.  And so we really do need to get on

13   with the business of trying to get a recovery for those

14   claims.

15           And I don't want to minimize we have a great deal

16   of confidence in Mr. Despins and what he's done thus far,

17   but there is a correlative concern about the magnitude of

18   the rates and the fees, which of course he will be getting

19   as trustee under section 326 based on what he recovers.  And

20   if his firm is hired they'll be getting compensated that way

21   as well.

22           So with --

23           THE COURT:  A question about -- and I meant to ask

24   Mr. Kindseth this as well -- and probably should have asked

25   Mr. Despins this as well -- the stipulation with regard to

1    the Lady May, there are still other obligations that have to

2    be met.  There's still $37 million being held in escrow.

3              There are -- the other stipulation provisions have

4    not been met yet that I see.  Only the stipulation provision

5    that has been met is the reporting that HK has done, and

6    they have done that timely, and the return of the boat, the

7    yacht, prior to the date in the stipulation.

8              But there are other provisions in that stipulation

9    that have not been resolved yet.

10             And so when you talk about getting on with the

11   administration of the estate, which is what the Court found

12   when determining that a Chapter 11 trustee should be

13   appointed -- there needs to be some attention to what is

14   going to happen here with regard to the yacht and/or the $37

15   million.  That money is still subject to the jurisdiction of

16   this court.

17             And there are -- there are still issues with

18   regard to certifications and things that I think need to be

19   filed in which there are time frames to object.

20             And so it would seem to me that the parties need

21   to focus on those issues.  Because the longer those issues

22   lay dormant, the longer it's going to take to administer the

23   estate.

24             MR. GOLDMAN:  Yeah.  We are certainly aligned with

25   Your Honor on that.

1    THE COURT:  Okay.  All right.  All right.  I

2  appreciate what you've said.  And is there anything further

3  you'd like to state for the record this afternoon?

4    MR. GOLDMAN:  No, Your Honor.  Thank you.

5    THE COURT:  Okay.  Thank you.

6    Does the Office of the United States Trustee wish

7  to be heard?

8    MS. CLAIBORN:  Not at this time, Your Honor.

9    THE COURT:  Okay.  Well, I am going to ask the

10  Office of the United States Trustee to file a brief on why

11  -- and I'm going to -- actually, I'm going to have Attorney

12  Henzy's firm do the same thing simultaneously -- and anyone

13  else that wants to, you may, but you don't have to -- as to

14  why the debtor is entitled to retain Attorney Henzy's firm

15  without that firm having to comply with the provisions of

16  the bankruptcy code 327(a) and 2014.

17    And at some point, after this status conference,

18  I'm going to schedule a hearing on the motion to withdraw

19  filed by Brown Rudnick which will have an objection deadline

20  for parties to file an objection, if any, to Brown Rudnick's

21  motion.

22    And then, Mr. Despins, with regard to the bar date

23  issue and the publication issue, you indicated when we

24  talked on the record that you'd like to think about those

25  issues.  I think it may make sense to schedule a hearing, a

1    further hearing, on that motion so we can finalize it and

2    get that order entered.  And I can do that.  I would assume

3    I can do that in short order in the next week or two.

4          Would that give you enough time to analyze the

5    issue, Mr. Despins?

6          MR. DESPINS:  Yes, Your Honor.

7          THE COURT:  Okay.  Thank you.

8          With regard to Mr. Despins' application to employ

9    Paul Hastings and to employ Neubert, Pepe & Monteith, I

10   think those have to be set for a hearing as well with an

11   objection deadline.

12         The likelihood is -- but I don't know this until I

13   go back and review everything, that we will have a day set

14   in the future to address all of these matters, which

15   obviously will be a day because there's a lot of matters to

16   address.

17         I agree that we need to move ahead with the

18   administration of this case which is why the Court made a

19   determination about the appointment of a Chapter 11 trustee.

20         I want to look at the calendar for a moment if

21   everyone would bear with me, please, for a moment.

22         MR. DESPINS:  And, Your Honor, if I could be heard

23   on timing?

24         THE COURT:  Sure.  Please.

25         MR. DESPINS:  So we had filed -- thank you, Your

1    Honor.

2         We had filed a motion to expedite which obviously

3    has not been granted.  Understand that the reason being is

4    that we're going full out right now.

5         And the 30day rule doesn't help us if the Court,

6    you know, in the future says, well -- by the way, I'm making

7    this up as a slight joke -- but if the Court says, well, we

8    think you're a member of the communist party so we're not

9    going to approve the retention -- it's a joke, Your Honor --

10   so then I'm not protected by the 30 day rule.

11        So there's a real prejudice to the firm in being

12   -- and that's, by the way, that's exactly why the debtor has

13   not scheduled -- has not moved for a hearing on their motion

14   to recuse me or to remove me because they love the

15   uncertainty and to continue that.

16        So for us, you know, we filed our motion on the

17   12th.  Even under regular, non-accelerated days, that would

18   bring us to August 1st or something like that, on the 20-day

19   -- so personally from the 3rd to the 22nd, I'm -- I could

20   not be in court.  I mean, I could participate by Zoom.  But

21   if there -- if there's a real contested hearing, I could not

22   be there.

23        So we would urge the Court -- you know, PAX had

24   said they were okay with a hearing next Monday.  Of course,

25   that's probably too short at this point.  But anytime next

1    week or August 1st, we would urge the Court, if it's at all

2    possible, to schedule it then because that will have been

3    plenty of time for these issues to have been figured out.

4              Thank you, Your Honor.

5              THE COURT:  Thank you.

6              MR. HENZY:  Your Honor, may I be heard?

7              THE COURT:  Yes.

8              MR. HENZY:  Thank you, Your Honor.

9              Just to be clear, I will file a motion to expedite

10   right away on our 9024 motion.  We're not trying to have

11   that float out there.  We think it should be taken up at the

12   same time as the Paul Hastings application will be taken up

13   because there will be a lot of overlap.

14             We do need to take discovery in connection with

15   our motion and the Paul Hastings application.  We're

16   prepared to serve discovery immediately.

17             THE COURT:  I'm not sure you're entitled to

18   discovery, Attorney Henzy.

19             It's a motion for relief for a judgment order.

20   Based upon, again, an issue of whether or not your client

21   actually has standing to oppose this person being appointed

22   as a Chapter 11 trustee in a case where your client has

23   stated under penalty of perjury that they have $3,400 and

24   some odd dollars as assets.

25             So I understand your assertion, but I'm not sure I

1    agree with it at this point.

2              I also -- as I started to say, I'm not sure that

3    you don't have to meet the requirements of debtor -- a

4    debtor's counsel under 327(a).  I understand your argument,

5    but no one has put forth anything in front of me to show me

6    why you don't have to meet that requirement.  Number one.

7              Number two, even if you didn't have to meet the

8    requirement, there's -- I don't know why it isn't a conflict

9    of interest that you represent both HK International and Mr.

10   Kwok.  I don't -- I don't understand that.  I'm having

11   difficulty understanding that.

12             And I'm having difficulty understanding that

13   because of many reasons, including the fact that there is an

14   adversary proceeding pending filed by your firm on behalf of

15   HK International claiming that Mr. Kwok has no -- well,

16   asking for a declaratory judgment that it owns the boat.

17             So there's a lot of issues here and we're not

18   going to get derailed on discovery on the presumption that

19   you're entitled to do all these things to begin with.  Those

20   issues have to be addressed first.

21             And I'm not going to allow discovery to drag out

22   what was clearly before the debtor and Brown Rudnick as

23   debtor's counsel since the U.S. Trustee filed a motion for

24   the appointment of an examiner or in the alternative a

25   trustee I believe back in February or early March.  I can

1    look at the docket.  It won't take me very long to find it.

2    So that's not going to happen in this case.

3            This case -- your client voluntarily submitted

4    himself to the jurisdiction of this court with all the

5    benefits and burdens associated with that and that doesn't

6    mean that your client, who as you have stated now on the

7    record a few times, who's no longer in possession -- can now

8    stall the process by insisting that you need discovery in

9    connection with your allegations that Mr. Despins -- Mr.

10   Despins -- now, we're talking about --

11           I made this point at the last hearing but you

12   weren't here because you weren't counsel -- even though the

13   trustee had -- the motion to appoint the trustee had been

14   granted, that the difference between a conflict of Mr.

15   Despins acting as the Chapter 11 trustee and Paul Hastings

16   acting as Mr. Despins' counsel are two different things.

17           And no one has put forth any information in this

18   record to show that Mr. Despins has a conflict of interest.

19   No one.

20           And Mr. Despins has stated and sworn under penalty

21   of perjury that he has no conflict, that the issues with

22   regard to Paul Hastings that have been raised by you in your

23   brief in your -- not your brief, but in your motion -- are

24   things he did not know of and was not aware of personally.

25           But, yes, his firm has offices in China.  And,

1    yes, they represent parties that somehow are related --

2    could be related to Mr. Kwok, but not in connection with

3    this case in any way.

4              I'm not going to allow discovery to derail the

5    process of the Chapter 11 trustee appointment and his duties

6    and responsibilities to carry out his affairs in this case.

7              And I'm certainly not going to do that unless and

8    until I determine whether you're correct or not that you can

9    represent the debtor without having to address the

10   disinterestedness issues.

11             Even if you can, I still have no understanding of

12   -- I'm having very -- it's very difficult for me to

13   understand how your firm does not have an actual conflict of

14   interest in the simultaneous representation of HK

15   International and Mr. Kwok.

16             MR. HENZY:  Thee's a lot --

17             THE COURT:  There is a lot there.

18             MR. HENZY:  -- to unpack there, Your Honor.

19             THE COURT:  I agree with you.

20             MR. HENZY:  If I could -- if I could --

21             THE COURT:   There is -- this case has a lot.  It

22   always has a lot.

23             MR. HENZY:  To show that I can joke too, I like it

24   that you refer to Mr. Kwok as, you said, your client.

25   You're not bound by it.  But --

1           THE COURT:  Well, that's what you assert.  That's

2     what you assert, Mr. Henzy.

3           MR. HENZY:  That's what I assert.  But, again, to

4     show I can -- I can joke too.

5           There's a lot to unpack there, Your Honor.  I

6     mean, in the sense that -- and I understand you're not

7     agreeing with this but, you know, I believe Mr. Kwok does

8     have standing to challenge the appointment of Mr. Despins.

9           And just to be clear --

10          THE COURT:  I didn't -- I didn't even say -- I

11    didn't even argue with you on that --

12          MR. HENZY:  Okay.

13          THE COURT:  -- at this point.

14          MR. HENZY:  If he --

15          THE COURT:  At this point.  All I said is you're

16    not getting discovery.

17          MR. HENZY:  Well, but if --

18          THE COURT:  It's not being derailed with

19    discovery.  It's not happening.

20          MR. HENZY:  But if he -- if he has standing -- the

21    rule 60 motion is a contested matter -- if he has standing

22    to press that motion, and he has standing to object --

23          THE COURT:  It's not a new trial.  It's not a new

24    trial.  Right?  Rule 60 isn't a new trial.

25          MR. HENZY:  This is not a new trial.

1       THE COURT:  Rule 60 is you want relief --

2       MR. HENZY:  That's right.

3       THE COURT:  -- from a judgment or order.

4       MR. HENZY:  That is correct.

5       THE COURT:  That's right.

6       MR. HENZY:  That's correct.

7       THE COURT:  So it's not a new trial.  You're not

8  saying there's newly discovered evidence that --

9       MR. HENZY:  But it --

10      THE COURT:  -- the Court didn't consider when

11  taking this all into effect -- into account.

12          And Mr. Despins has, as you know, as any party

13  does, a continuing obligation to disclose issues, which he

14  did.  Which he did.  He filed a supplemental affidavit.  He

15  filed that.

16          And so there is no new -- this isn't -- the

17  standard under Rule 60 and the standard under Rule 59 are

18  completely different.

19      MR. HENZY:  It's a Rule 60(b)(2), Your Honor.

20  It's --

21      THE COURT:  I understand what it is.

22      MR. HENZY:  It's newly discovered evidence.  And

23  this is --

24      THE COURT:  It's not newly discovered evidence.

25      MR. HENZY:  How could the debtor -- how could the

1    debtor --

2              THE COURT:  What's the evidence?

3              MR. HENZY:  Given --

4              THE COURT:  Tell me what the evidence is.

5              MR. HENZY:  Sure.  And counsel can say that this

6    is all frivolous, but --

7              THE COURT:  I'm don't want to -- I don't -- I'm

8    not worried about him right now.

9              MR. HENZY:  Okay.

10             THE COURT:  I'm worried about you.

11             MR. HENZY:  Okay.

12             THE COURT:  Tell me what the evidence is.

13             MR. HENZY:  There is a public record that the

14   government of China, the Communist Party of China, Mr. Kwok

15   is on the wrong side of the government of China.  I don't

16   think -- I don't know that anybody would dispute that.

17   Okay?

18             I think that it is now known -- and I don't know

19   that Mr. Kwok knew or could have known this given the time

20   line on Mr. Despins' appointment -- I think there was one

21   day between the U.S. Trustee filing that motion and the

22   hearing taking place that Paul Hastings --

23             THE COURT:  I agree with you.

24             MR. HENZY:  -- Paul Hastings has offices as I

25   understand it in China.  Paul Hastings represents companies

1    that are affiliated with the Chinese government.  That is --

2    I believe that is true.

3              THE COURT:  Okay.

4              MR. HENZY:  I also, from reading the newspaper,

5    okay, have an understanding that being a citizen of the

6    world, that China exercises a different degree of influence

7    over entities doing business in China than let's say the

8    United States government exercises over entities doing

9    business in the United States.  I think that is a fair

10   statement for me to make.

11             So I don't think it's frivolous or crazy or

12   baseless --

13             THE COURT:  But where's the evidence?  What's your

14   evidence?

15             MR. HENZY:  I --

16             THE COURT:  That the newspaper says that China

17   exerts control over -- and I'm not trying to be flip, Mr.

18   Henzy, but --

19             MR. HENZY:  Well, do you -- do you disagree with

20   that, Your Honor, that the --

21             THE COURT:  I don't -- I don't have to agree or

22   disagree with anything.

23             MR. HENZY:  -- that the government of China -- I

24   mean --

25             THE COURT:  All I have to do is make findings of

84

1    fact, right?  And I made those findings of fact when I

2    appoint -- when I granted the motion for the appointment of

3    a Chapter 11 trustee.  I made those findings.  Okay?

4              Now, Mr. Despins has stated in the -- on the

5    record, subject to penalty of perjury, that he personally

6    has no conflict, doesn't represent the government of China.

7              Yes, works for an international firm that has

8    offices in China.  Yes, the firm has business -- has as a

9    past client, I believe is the exact language -- PAG, P-A-G,

10   which is related to and/or -- Mr. Friedman can correct me --

11   but I think is the -- may be described as the parent company

12   of PAX.  What's the evidence there?  How is that -- how is

13   that enough evidence for this court to say he should be --

14   Mr. Despins should be removed?

15             MR. HENZY:  I can't give you the evidence --

16             THE COURT:  Right.

17             MR. HENZY:  -- unless I can do discovery.

18             THE COURT:  But I'm not going to derail the

19   process --

20             MR. HENZY:  Unless --

21             THE COURT:  -- so you can go make -- do discovery.

22   What discovery?  What possible -- what are you going to do?

23   Are you going to depose people from the government of China?

24             MR. HENZY:  If Mr. Despins wants to stipulate as

25   to all of Paul Hastings' connections in China, who they --

1    how many parties they represent --

2            THE COURT:  Why would he have to do that?

3            MR. HENZY:  Your Honor, you can, today, tell me

4    that I'm just wrong, that Paul Hastings -- and Mr. Despins

5    is a partner at Paul Hastings.

6            I don't -- I don't think you just separate him and

7    say if Paul Hastings is not -- is not disinterested, that

8    Mr. -- I don't see how Paul Hastings could be not

9    disinterested and have Mr. Despins not be disinterested.

10   That doesn't make sense to me.  Okay?

11           But if you're going to say that notwithstanding

12   these apparent connections that Paul Hastings hasn't -- with

13   the Chinese government, with --

14           THE COURT:  That have nothing to do with Mr. Kwok.

15   Where's the connection?

16           MR. HENZY:  The connection is that the Chinese

17   government -- the allegation is that the Chinese government

18   is -- has persecuted Mr. Kwok and has persecuted his family.

19           The allegation is that the Chinese government

20   exercises a great deal of influence over entities that do

21   business in China and that that puts Paul Hastings in a

22   compromised position.

23           And Mr. Despins, as a partner of Paul Hastings, in

24   a compromised position.

25           Your Honor, you can say I don't -- I don't agree

1   with you that the Chinese government exercises influence

2   over entities in China that are doing business in China.

3   You could say that.  Okay.  And I -- I'm not going to go do

4   discovery on that.  But this raises a significant issue.

5           I don't -- I don't know if someone's going to

6   stand up and say -- and defend -- in this court and defend

7   the way the Chinese government deals with entities that do

8   business in China and say, no, that's not true.  The Chinese

9   government doesn't exercise any influence over people --

10          THE COURT:  If your client didn't -- if your

11  client -- if you're allowed to represent this client in this

12  court didn't want to subject himself to the jurisdiction of

13  this court then he shouldn't have filed a Chapter 11 case.

14          MR. HENZY:  I don't think, Your Honor, that has

15  anything to do --

16          THE COURT:  Well, how does it not have anything to

17  do with it?  Because you're saying that he -- the Chinese

18  government influences everything that happens with regard to

19  Mr. Kwok.  That's what you're saying.

20          MR. HENZY:  No, I'm not saying that.

21          THE COURT:  Then what are you saying?

22          MR. HENZY:  What I'm saying is that the Chinese

23  government exercises a great deal of influence over anybody

24  who does business in China.  I think that's a fair statement

25  for me to make.

1          THE COURT:  Okay.

2          MR. HENZY:  Okay.  And Paul --

3          THE COURT:  And how does that result in a conflict

4     of interest that allows that Mr. Despins can't -- can't be

5     the Chapter 11 trustee?

6          MR. HENZY:  And Paul Hastings does business in

7     China.

8          THE COURT:  Okay.

9          MR. HENZY:  Okay.

10         THE COURT:  Okay.

11         MR. HENZY:  And the Chinese government --

12         THE COURT:  And so what -- what control -- you

13    have no evidence of what control they have.  You just make a

14    blanket -- and I'm not saying you just -- but the statement

15    that you just made is the Chinese government has control

16    over people who do business with them.  Well, the control

17    might be that they want the company to produce 12 cars as

18    opposed to 20.  How does that affect Mr. Kwok and Paul

19    Hastings?

20         MR. HENZY:  Your Honor, the argument is that Paul

21    Hastings does business in China.  It represents entities

22    connected with the Chinese government, therefore, the

23    Chinese government is going to have influence or control --

24         THE COURT:  So you're saying Mr. Despins is a --

25    is a puppet of the Chinese government?

1          MR. HENZY:  No.  That's completely unfair, Your

2     Honor.  I didn't say --

3          THE COURT:  Well, then what are you saying?

4          MR. HENZY:  I did not say that.

5          THE COURT:  Well, then -- but then what are you

6     saying?

7          MR. HENZY:  What I'm saying is that there's a

8     disinterestedness issue here and we have a right to explore

9     that issue.

10          THE COURT:  Okay.

11          MR. HENZY:  Okay.

12          THE COURT:  I'm not sure I agree with you.

13          MR. HENZY:  Okay.

14          THE COURT:  But I understand your point.

15          MR. DESPINS:  Your Honor, if I could, could I be

16     heard for two seconds?

17          THE COURT:  Certainly.  Certainly.

18          MR. DESPINS:  This argument is insane.  Why?

19     Let's assume he's right.  Let's assume he's right on all --

20     so what's the discussion?  So the Chinese communist party

21     comes to our office in China and says what?  Go easy on him

22     or go hard on him?

23          I'm going to go -- let me be very clear, I'm going

24     to go and try to get all his assets.  That's my job as the

25     trustee.

1          So what's the conflict?  Meaning, first of all,

2     I'm not agreeing for a second that they would do that or

3     that we would be susceptible to that.  But let's assume

4     that's the case, let's follow that to its logic.

5          Unless I -- unless his point is that we would

6     somehow work with them to arrest him or to bring him --

7     that's insane.

8          This is a civil case.  My job is not retribution.

9     It's collection.  I want to collect -- I want to be clear --

10    as much as I can for the holders of valid claims.  That's

11    the (indiscernible).  And Paul Hastings will do the same.

12         So this argument that we're subject to the

13    influence, which way does that cut?  Meaning that they would

14    -- one way or another, they would say go harder?  I'm going

15    to -- I don't need the CCP to tell me that.  I'm going to go

16    hard to get all his assets.  That's my job.  So I don't

17    understand the influence.  I'm sorry.

18              MR. HENZY:  Can I -- can I just -- can I respond

19    to that quickly, Your Honor?

20              THE COURT:  Yes, you can.

21              MR. HENZY:  Okay.  And, again, this is public

22    record.

23              THE COURT:  Public record where?

24              MR. HENZY:  I can give you -- I'll give you

25    citations, Your Honor.

1          THE COURT:  But tell me what it is.  Are we

2      talking about a social media website?

3          MR. HENZY:  Absolutely not, Your Honor.  We're

4      talking about statements from the United States Department

5      of Justice.

6          THE COURT:  Okay.

7          MR. HENZY:  Okay.

8          THE COURT:  What part of the United States

9      Department of Justice?

10          MR. HENZY:  Different parts.

11          THE COURT:  Okay.

12          MR. HENZY:  And I can --

13          THE COURT:  Go ahead.

14          MR. HENZY:  And I can tell -- okay.

15          Mr. Steven Wynn, who is I think a well-known

16      casino/hotel person, has -- the DOJ has filed a civil

17      enforcement action against him to compel him to register

18      under the Foreign Registration Act as an agent of the

19      Peoples Republic of China and a senior official of the PRC's

20      Ministry of Public Security, and the citation is -- it's a

21      Justice Department -- it's in our motion -- it's a web, ww

22      -- I can try to give it to you, but I --

23          THE COURT:  No, it's all right.

24          MR. HENZY:  Okay.

25          THE COURT:  You don't have to give it to me.

1          MR. HENZY:  And --

2          THE COURT:  And how does that impact Mr. Wynn, I

3    mean -- Mr. Wynn, I know how it impacts Mr. Wynn --

4          MR. HENZY:  Okay.  I'm --

5          THE COURT:  -- how does it impact Mr. Despins and

6    Paul Hastings?

7          MR. HENZY:  I'm responding to Mr. Despins'

8    statement that it's insane to say that the Chinese

9    government would exercise influence over someone doing

10   business in China.

11         THE COURT:  That's not what he said.

12         MR. HENZY:  Okay.  I think it is what he said.

13         THE COURT:  No.

14         MR. DESPINS:  No.

15         THE COURT:  That's actually not what he said.

16         MR. HENZY:  Okay.  But if I could finish?

17         THE COURT:  He said your argument is insane.

18   Because here's what he said.  This is at least the way I

19   interpret it.  And you can disagree with me.

20         He said your argument is insane because what --

21   the only two things that could happen is the Chinese

22   government either tells him to go hard and get all of Mr.

23   Kwok's assets or to do nothing and leave him alone.  And Mr.

24   Despins said, but I -- my job is to go hard and get all of

25   his assets.  So what's the problem?

1          MR. HENZY:  So then the argument is that Mr.

2     Despins -- Mr. Despins' interest and the Chinese

3     government's interest are aligned and, therefore, to the

4     extent --

5          THE COURT:  That doesn't mean there's a conflict.

6          MR. HENZY:  -- to the extent -- wait -- to the

7     extent that there otherwise would be a disinterestedness

8     issue, there's no issue, because if anything the Chinese

9     government would tell him go hard, go hard, go hard.

10         That's not the analysis though, Your Honor.

11    That's not --

12         THE COURT:  How is he -- how is he not

13    disinterested even if his -- even if his goals are aligned

14    with the Chinese government, how is he not disinterested?

15         MR. HENZY:  If there is -- if there is a party

16    that exercises any kind of undue influence over a trustee,

17    then that trustee is not disinterested.

18         THE COURT:  How are -- where is the proof that

19    they're exercising undue influence over Mr. Despins?

20         MR. HENZY:  I don't have proof today --

21         THE COURT:  Okay.

22         MR. HENZY:  -- and I don't know how I could have

23    proof today because --

24         THE COURT:  Well, the bankruptcy code --

25         MR. HENZY:  -- because I have --

1            THE COURT:  Here's what happens.  The bankruptcy

2    code allows you to bring that issue forth if you believe it

3    to be true and then it will be addressed appropriate.

4            A Rule 60(b) motion is not the appropriate way for

5    that to happen.  There is no newly discovered evidence.

6            The only thing that came out is the continuing

7    obligation -- and first of all, we're talking about Mr.

8    Despins.  I raised this at the first hearing.

9            Maybe you could argue, but we're not arguing that

10   today, there's a problem with Paul Hastings.  Maybe you can

11   argue that.  But we're not arguing that.

12           We're talking about Mr. Despins individually

13   acting as a trustee.

14           So your argument is that no matter who was the

15   Chapter 11 trustee, whatever individual, if that individual

16   works for a firm that somehow has business relationships

17   with China, so had a purchase and sale agreement to buy toys

18   from China, that they would be not -- they would

19   disinterested because -- because every single person that

20   does business with the Chinese government is unduly

21   influenced by the Chinese government.  That's your argument.

22           MR. HENZY:  Depends on facts and circumstances,

23   but potentially, yes.

24           THE COURT:  Well, what's the facts and -- well,

25   how are the facts and circumstances of the scenario I just

1    presented to you any different from what Mr. Despins has

2    said in his -- in his disclosures?

3             MR. HENZY:  I might say that that party is unduly

4    influenced by the Chinese government.

5             THE COURT:  Buying toys?

6             MR. HENZY:  Yes.  I might -- yes.

7             THE COURT:  Okay.

8             MR. HENZY:  I might say that.  Yeah.

9             THE COURT:  Okay.  You can say that, but I might

10   disagree with you.

11            MR. HENZY:  And you might disagree with me.

12            THE COURT:  Okay.

13            MR. HENZY:  Yeah.

14            THE COURT:  All right.

15            MR. HENZY:  Look, I think we're not arguing the

16   60(b) motion today.  I think.  I think anyway we're arguing

17   is does Mr. Kwok have a right to take discovery and I think

18   he does.

19            THE COURT:  Yes.  And I'm finding he does not have

20   the right to take discovery.  And you can appeal that if

21   you'd like --

22            MR. HENZY:  Yeah.

23            THE COURT:  -- when I rule on the motion, but

24   we're not going to do this.

25            See, here's the problem.  There's $37 million in

1    an escrow account.  And there's a boat, a yacht, somewhere

2    over there, right, that your client stipulated to would come

3    to this jurisdiction.

4           And before the Court didn't acquiesce to the plan

5    of how the professionals were going to be paid $8 million in

6    a very short amount of time without establishing the need to

7    pay them and to pay them on a weekly basis outside of the

8    provisions of the bankruptcy code.  The boat was going to be

9    pledged as -- to the plan to creditors.

10          Now we're in a situation where your alleged client

11   -- and it may be it may be he may be your client doesn't

12   want anything else to happen.

13          Doesn't want the boat to become part of the

14   estate, but doesn't want the $37 million to become part of

15   the estate either.  And the way that that's going to be

16   accomplished is to challenge Mr. Despins through a Rule

17   30(c) -- Rule 60 motion.  That's not going to happen.

18          MR. HENZY:  I disagree with that, Your Honor.

19          THE COURT:  You may disagree.

20          MR. HENZY:  I just disagree.

21          THE COURT:  But that's not what's going to happen.

22          MR. HENZY:  Mr. --

23          THE COURT:  You take your client, your client that

24   you claim is your client, as you find him, correct?  And you

25   found him, as did Brown Rudnick, subject to orders of a

1    state court of New York that found after evidentiary

2    hearings -- and I'm not saying they have collateral estoppel

3    effect, I'm not saying any of that, I'm talking about how

4    you found your client -- that found that not only was he --

5    did he take the Fifth -- and the inferences could be drawn

6    in favor of the creditors with regard to him taking the

7    Fifth -- but that he established and created a network of

8    corporations to keep his assets out of the reach of

9    creditors, including PAX, who's been fighting with him since

10   2009.

11            Then your client decides to file a Chapter 11 case

12   at the time that the sanction imposition by Justice Ostrager

13   is continuing to accrue.  And the point -- and the argument

14   is, well, the accrual, that's stayed.  I filed a Chapter 11,

15   the accrual of that is stayed.

16            So the argument then becomes that your client in

17   some way, shape or form, depending upon the relief sought by

18   the creditors, should either have an examiner appointed, a

19   Chapter 11 trustee appointed, or there be a conversion of

20   the case.

21            Then your client says, no, no, we'll agree to

22   dismissal.  After coming to this court, negotiating -- being

23   part of a negotiation, which allegedly a separate and

24   distinct corporate entity owned by his daughter also

25   participated in, to bring the boat here, and then says, no,

1    you know what, why don't you just dismiss the case, judge.

2    We'll agree to dismissal.

3            Well, that -- you know, your client made a

4    decision, an informed decision, when he decided to file

5    Chapter 11.  That's what he did.

6            He could have addressed all of this through the

7    state court process and could have appealed everything, and

8    did appeal things and lost, got -- it was referred back to

9    Justice Ostrager for Justice Ostrager to make a

10   determination about the ownership of the boat.

11           And then Chapter 11 case gets filed, and HK

12   International, the alleged separate and distinct legal

13   entity that is alleged to be the registered owner of the

14   boat, files an adversary proceeding against your client, Mr.

15   Kwok, saying that it wants a declaratory judgment that HK

16   International owns the boat and it's not property of this

17   debtor's estate.

18           I already addressed all those issues by finding

19   that a Chapter 11 trustee should be appointed.

20           Your argument is that Mr. Despins is disinterested

21   -- is not a disinterested person because his firm, not him,

22   but his firm has offices in China and the Chinese government

23   is out to get -- and by the way, maybe the Chinese

24   government is out to get Mr. Kwok. I don't need to make

25   findings about that, okay. Maybe they are, but that doesn't

1    impact Mr. Despins' role and his responsibilities under the

2    bankruptcy code.  And to argue otherwise is to attempt to

3    derail Mr. Despins from carrying out his responsibilities.

4            So I guess what you need from me at some point --

5    and maybe, you know, as I said, I've got to look at all

6    these thing that were filed since July 8th. I'm going to set

7    hearings on different matters -- the motion to withdraw as

8    attorney -- I want you and the United States Trustee's

9    Office to submit a brief on -- as to why you don't need to

10   comply with 327(a).  Maybe you're right, but I -- I don't

11   see anything in front of me that convinces me of that at the

12   moment.

13           And then, we're -- and we'll probably have a

14   hearing on your Rule 60(b) motion.  And I think we should

15   have it quickly, because if I'm going to deny it, you need

16   to appeal.  You need to appeal.  And then you need to figure

17   out how you're going to proceed from there.

18           But this case cannot be stalled any longer.  This

19   court has a responsibility, as does Mr. Despins now at this

20   point, to try to protect the interests of creditors in

21   connection the parameters of the bankruptcy code, the

22   bankruptcy rules, the Federal Rules of Civil Procedure, and

23   applicable non-bankruptcy law.

24           And to argue that Mr. Despins is disinterested

25   because the Chinese government influences every party with

1    whom it does business is not persuasive to me at this point.

2              MR. HENZY:  I understood.  And just a couple

3    points, Your Honor.

4              I wasn't involved in Mr. Kwok's decision to file

5    Chapter 11.

6              THE COURT:  I didn't say you were.

7              MR. HENZY:  Okay.

8              THE COURT:  I said you took your client as you

9    found him.

10             MR. HENZY:  I took --

11             THE COURT:  That's what I said.  Didn't I start

12   the whole thing off by saying that?

13             MR. HENZY:  Yeah.  And we are where we are today.

14   But I don't think that Mr. Kwok decided to file Chapter 11.

15             And just to be clear, he didn't appeal your

16   decision on -- that a trustee would be appointed.

17             And I'll state on the record if Mr. Whitley had

18   been the appointed person, he would not have -- we would not

19   be having this discussion, okay, because his understanding

20   is some of the issues that we think exist with Paul Hastings

21   and Mr. Despins do not exist with Mr. Whitley.

22             So this is not -- this is not that Mr. Kwok was

23   going to oppose anybody who got appointed and wants to

24   obstruct a Chapter 11 trustee from doing his or her job.  He

25   understands completely that there is going to be a Chapter

Ho Wan Kwok - July 21, 2022

1    11 trustee.  So I think it's not correct to say that he's

2    just trying to obstruct --

3            THE COURT:  I didn't say -- I said --

4            MR. HENZY:  -- for those purposes.

5            THE COURT:  I didn't say he was trying to

6    obstruct.  I said I'm not going to let this be derailed.

7    That's what I said.  Those were the words I used.

8            MR. HENZY:  I think -- I think if a different

9    person had been appointed we wouldn't be having this

10   discussion.  And I -- and there are --

11           THE COURT:  Well --

12           MR. HENZY:  Look, you can disagree, Your Honor.

13   We think there are bona fide significant issues here.

14           I understand you may disagree, but I don't -- it's

15   not correct.  I don't think that because Mr. Kwok decided to

16   file Chapter 11 that he doesn't have a right to say, wait a

17   second, there's been a trustee appointed, understood, but he

18   should just have to accept whoever gets appointed even when

19   he believes that there are significant conflicts that that

20   person has.

21           I mean, just because you file Chapter 11 doesn't

22   mean -- and subject yourself to the jurisdiction of the

23   Court -- doesn't mean that you have to just sort of accept

24   any and everything that comes along, even if you believe

25   that it is not fair and is prejudicial to you.

1              THE COURT:  Okay.  Thank you.

2              MR. HENZY:  So I guess, Your Honor, are you ruling

3    today --

4              THE COURT:  No, I'm not ruling.

5              MR. HENZY:  -- that we cannot take discovery in

6    connection with --

7              THE COURT:  If you take any discovery before I

8    rule on the 60(b) motion, then I will -- I'm not allowing

9    you to take any discovery before I rule on the 60(b) motion.

10             MR. HENZY:  And on the Paul Hastings retention

11   application?

12             THE COURT:  And on the Paul Hastings retention

13   application.

14             MR. HENZY:  Okay.  So you're ruling that today.

15             THE COURT:  That's correct.

16             MR. HENZY:  Okay.

17             THE COURT:  There is going to be no discovery.

18   This is not -- these are not matters that are -- we're going

19   to allow to have happen.  That's not going to happen.  We'll

20   have a hearing.  We'll hear your matter.  And if we rule

21   against you, then -- if I rule against you, then you'll

22   appeal.

23             MR. HENZY:  Your Honor, I would ask that there be

24   at least a docket entry on that so ordering that we do not

25   --

1          THE COURT:  Well, this is a status conference, so

2     I'm not going to enter a docket entry on that right now.

3     I'm telling you --

4          MR. HENZY:  But if I don't have --

5          THE COURT:  I'm telling you if you seek discovery

6     before I rule on these matters, then I'm not going to make

7     the other side comply.

8          MR. HENZY:  Okay.  But, Your Honor, I don't want

9     to go through the exercise of -- I don't know -- anybody --

10         THE COURT:  This motion isn't even on the calendar

11    --

12         MR. HENZY:  I understand.

13         THE COURT:  -- so it's inappropriate to start

14    discovery with regard to something that's not even --

15         This is a status conference.  This was -- this was

16    specifically scheduled as a status conference in connection

17    with the motion, excuse me, the memorandum of decision and

18    order appointing the Chapter 11 trustee.

19         You filed documents after that -- this status

20    conference was scheduled.  None of your documents have been

21    set for a hearing.  Okay?  So you can do whatever you think

22    is appropriate once those matters are set for a hearing.

23         MR. HENZY:  Understood, Your Honor.  What I don't

24    want to do is have us serve discovery and put other parties

25    in a position of having to file motions with this court and

1    the Court then ruling on those motions and saying you don't

2    get to take the discovery.

3           I want to, I guess, just end --

4           THE COURT:  You can do whatever you think is

5    appropriate, Mr. Henzy.  I am not -- this was not a hearing

6    on which rulings were going to come out of it other than

7    what I told you.

8           I'm going to back and I'm going to issue -- I'm

9    going to schedule hearings indifferent matters.  And I'm

10    going to require you in one of those orders to file briefs

11    as to why you can represent this debtor without complying

12    with 327 and when you have -- when you have what appears to

13    be an actual conflict of interest.

14           MR. HENZY:  Understood, Your Honor.

15           THE COURT:  And when I say you, I mean Zeisler &

16    Zeisler.  Okay?

17           MR. HENZY:  Understood, Your Honor.

18           On the discovery issue, okay, what I don't -- what

19    I don't want to do --

20           THE COURT:  I understand.

21           MR. HENZY:  -- I don't want to serve discovery

22    after you've told me I'm not going to get discovery --

23           THE COURT:  You can serve discovery at your own --

24    your decision.  You do whatever you think, Counsel, but --

25           MR. HENZY:  I thought you were about to say you

1    can serve discovery at your own peril, but --

2              THE COURT:  I almost did actually.

3              MR. HENZY:  -- which I don't --

4              THE COURT:  Yeah.

5              MR. HENZY:  -- which, again, I don't want to do

6    that.  But I don't think it's fair to tell me I -- I'm not

7    going to let you serve discovery, but go do whatever you're

8    going to do --

9              THE COURT:  Where does it say under Rule 60 that

10   you're entitled to discovery by the way?

11             MR. HENZY:  I think the motion is governed by Rule

12   9014, Your Honor.

13             THE COURT:  Right.  9014 means people have an

14   opportunity to respond.  And that until that response is

15   filed, why would you be entitled to discovery?

16             MR. HENZY:  Your Honor, I'm trying to not delay a

17   hearing on these matters.  I'm trying to have this go as

18   fast as it can.

19             Mr. Kwok's goal is not to delay the final

20   appointment of a trustee.  It's not to delay final retention

21   of counsel for a trustee.

22             We want to get to the issues as much as everybody

23   else wants to get to the issues.  Okay.  So I understand

24   that until someone files an objection to my Rule 60 motion,

25   arguably, why am I taking discovery?  I've a pretty good

1    idea that there are going to be objections to my Rule 60

2    motion and I'm trying to move this along as quickly as I

3    possibly can.

4            I don't want to serve discovery and put people in

5    a position of having to file motions with the Court and have

6    the Court potentially have a hearing or not have a hearing

7    and rule on the motion to give me then whatever rights I

8    have with respect to the Court's ruling.

9            Which is why I -- for me, it would be much

10   preferable -- it may be preferable for other parties -- if

11   the Court's going to rule that is to rule that today and get

12   it out of the way.

13           THE COURT:  Well, I'll consider that.

14           MR. HENZY:  Thank you, Your Honor.

15           THE COURT:  Okay.

16           MR. GOLDMAN:  Your Honor?

17           THE COURT:  Yes.

18           MR. GOLDMAN:  May I be heard briefly?

19           THE COURT:  Can you -- make sure you can speak

20   into the microphone.

21           MR. GOLDMAN:  Yeah.  Can you hear me?

22           THE COURT:  Yes.  Thank you.

23           MR. GOLDMAN:  Yeah.  One idea I'd like to offer

24   for the Court's consideration as a potential way to resolve

25   this motion --

1  THE COURT:  What concern?

2  MR. GOLDMAN:  -- and concern --

3  THE COURT:  The 60(b) motion?

4  MR. GOLDMAN:  Yes.  Yes.  And the concern about

5  the Chinese government, not that that's an issue that I

6  think -- I don't want to give it credence by proposing a

7  solution, but the Court could simply provide that if Mr.

8  Despins or Paul Hastings is contacted by the Chinese

9  government with a threat of adverse action for purposes of

10  influencing in any way the administration of this case that

11  they would file a supplemental affidavit with the Court so

12  indicating and we could take it from there because we are

13  simply dealing with speculation.

14  THE COURT:  Mr. Despins already has that

15  obligation, Mr. Goldman.  He already has that obligation

16  under his disclosure requirements under the code and the

17  rules.

18  I mean, I understand what you're saying, but I

19  think it does give it credence where I haven't ruled on

20  anything yet.

21  And I'll consider what you said and I appreciate

22  the -- raising the issue, but every lawyer, every trustee,

23  has a continuing obligation.

24  Mr. Despins has already stated under penalty of

25  perjury that he doesn't have these connections.

1        So I appreciate it.  I'm not sure how far that

2    will go.  If you all want to talk about it, that would be

3    something that would work out for you, that's fine.  I'm

4    happy to entertain it if that's something that everybody

5    wants to have entertained.

6        But I'm not -- we're going to move this case

7    forward and it's not going to be held up by matters that

8    can't be addressed in other ways under the bankruptcy code

9    and rules.

10        Mr. Despins and any other person that would serve

11    in that role understands the responsibilities of the role,

12    understands the disclosures made under penalty of perjury,

13        And if someone comes forth with some evidence that

14    Mr. Despins is being influenced by the Chinese government,

15    then they can bring that evidence forward.

16        But to argue that without any evidence in the

17    record and then say -- and I want discovery to stop the

18    process I find that very unlikely that that will happen.

19        MR. GOLDMAN:  Well, I certainly am in agreement

20    with Your Honor's position on that.  I was just trying to

21    address the Zeisler speculation.

22        THE COURT:  No.  I appreciate the offer.

23        As I said, you know, it doesn't look like anybody

24    wants to go to talk together, right?  I mean, I can take a

25    recess if you want to have a discussion.

1          But this is -- we've been here now for almost two

2     and a half hours.  We need to let Mr. Despins go do his job.

3     Okay?  That's what this is all about.  That's why a Chapter

4     11 trustee was appointed so that this could happen.

5          What is in the record, whether or not it impacts

6     any decision that is made by this court, Mr. Henzy, is what

7     I started off my discussion with you a few minutes ago,

8     which is you took your client as you found him.

9          I'm sure you've read everything that has occurred

10    in the New York State Court.  Those are allegations that

11    continue to be made here by the parties that were in that

12    proceeding and by other parties.  Your client has to make

13    some decisions.

14         And, you know, this court is here to support

15    parties as much as the Court can, but the Court also has to

16    move things forward if parties aren't moving together down

17    the same path.  And I'm not saying you should.  I'm not

18    saying that should happen.  I'm saying otherwise why am I

19    here?  You can all go fight it out outside.  Right?  I mean,

20    the point is we have to move the case along one way or

21    another.

22         Either your client makes decisions about trying to

23    come up with a way to make this case work or not.  And if he

24    doesn't want to, that's fine.  That is his prerogative.  And

25    I agree with you on that that that is his right.  But he

1    takes those steps with the understanding that the Court may

2    not agree with him.

3            MR. HENZY:  Understood, Your Honor.

4            THE COURT:  Okay.  And that's -- that's where we

5    are.

6            I don't want to spend any more time today -- I

7    mean, I will if you want to talking about it, but I think

8    it's important to understand we have to move forward.

9            MR. HENZY:  Your Honor, Mr. Kwok does not disagree

10   with that, but we have -- I think -- I think the Court would

11   agree we have to move forward the right way.

12           THE COURT:  I have to give everybody an

13   opportunity to respond to these different motions, right?

14           So what I'm looking at -- and I think I heard Mr.

15   Friedman and Mr. Despins tell me, and everybody else is

16   going to have to make themselves available, that we're going

17   to have a hearing on August 1st.  That's a Monday.  Okay?

18   That's a week and a day from today, business days.  We're

19   going to have a hearing on August 1st and I'm going to rule

20   on these issues if there isn't agreement.

21           With regard to the motion to withdraw as attorney,

22   with regard to Brown Rudnick's, again, whether or not that's

23   going to be allowed, I don't know.  But if it is, it's

24   definitely with conditions.

25           And I think the U.S. Trustee should be opining on

1    that.  I don't know how the U.S. Trustee -- the U.S. Trustee

2    has to opine on that.  There's a -- there's a -- that's what

3    the role of the U.S. Trustee is with regard to professionals

4    in a Chapter 11 case.  In every case, but certainly in a

5    Chapter 11 case.

6             With regard to the Rule 60(b) motion, I'm going to

7    give everybody an -- but you all have to understand, you all

8    don't -- I'm not getting pleadings filed on Friday the 29th

9    and you're expecting me to read them and be ready to rule on

10   Monday the 1st.  That's not going to happen.  So you're

11   going to have to address these issues in short order whether

12   you agree with that or not.  That's what's going to happen.

13   Okay?

14            With regard to the application to employ Paul

15   Hastings and Neubert, Pepe, that's going to be set for a

16   hearing as well.  All that's going to be set for hearing.

17            I understand -- I have to look at the stay

18   motions.  I don't remember whether I think those should be

19   set for hearing.  I might be setting 20 things for hearing

20   on August 1st.  Okay?  But we need to move this case along.

21   It's just that simple.  And that's what's going to happen.

22            So if I look at the docket -- and I did try to

23   look at it before we came out today, but we had another

24   hearing -- I mean, we do have other hearings as I know you

25   all know.  And the problem with why I want you to get -- why

1    I'm going to make you all respond earlier than the 29th, and

2    probably by the 27th, which is next Wednesday, which isn't a

3    lot of time, we have Chapter 13 day on the 28th.

4              I mean, there are other issues that the Court has

5    to address.  Even though this case is extremely important to

6    all of you -- and I completely appreciate that -- we do have

7    other matters that we have to address.  Okay?

8              So I see that there are, you know, motions to

9    appear pro hac vice in connection with these pending

10   motions.  Motions to appear pro hac vice are routinely

11   granted.  But if there's really going to be an objection to

12   -- I'm going to let whoever wants to talk talk.

13             Whether I think you're the lawyer or not, Mr.

14   Henzy, I obviously let you talk today, right?  I'm going to

15   let you speak.

16             But we have to make rulings on who represents what

17   and in what context and who's going to appear in this case

18   on a going forward basis.

19             MR. HENZY:  Your Honor, just to be clear, there

20   will be no objection to the pro hac motions.  I've never

21   objected to a pro hac motion in my career and I don't expect

22   I ever will.

23             THE COURT:  Okay.  Thank you.

24             MR. HENZY:  So those I think probably --

25             THE COURT:  Well, then, maybe we can at least move

1    those along.  Okay?

2             MR. HENZY:  So, Your Honor, evidence that I want

3    to move this case along, there it is.

4             MR. LINSEY:  Those are, Your Honor, 530 -- rather

5    533 --

6             THE COURT:  I have them.

7             MR. LINSEY:  Yes.

8             THE COURT:  I have them, Attorney Linsey.  Thank

9    you.

10            All right.  Is there anything else that anyone

11   would like to state for the record this afternoon?

12        (No audible response.)

13            THE COURT:  All right.  I don't see anyone.  Oh,

14   Mr. Henzy?

15            MR. HENZY:  So I just want to be clear --

16            THE COURT:  I didn't -- I didn't leave as fast as

17   I should have I suppose.

18            MR. HENZY:  I just want to be clear on what's on

19   the schedule for August 1st.  Is it everything?  Everything?

20            THE COURT:  I don't know yet.

21            MR. HENZY:  Okay.

22            THE COURT:  That's what I said.  Well, I can tell

23   you what's going to be on.

24            MR. HENZY:  Okay.

25            THE COURT:  What I think is going to be on.  The

1    motion to withdraw as attorney, Brown Rudnick.  Mr. Despins'

2    application to employ Paul Hastings and Neubert, Pepe.  Your

3    Rule 60(b) motion.  Anything else, I'm not sure about yet.

4    The stay motions, things like that, I've got to go back.

5            Unless somebody is telling me -- I'm giving you

6    all the opportunity right now to tell me what else should be

7    heard on August 1st.  I don't know if I'll agree with you,

8    but I'm giving --

9            And you, Attorney Henzy, and the U.S. Trustee's

10   Office are going to have to file briefs by -- I think the

11   response date on everything is going to the 27th, on why you

12   can -- you have to convince me of your argument that you

13   don't need to comply with 327 because you're -- because the

14   debtor's no longer a debtor in possession.  And why you

15   don't -- and regardless of that, why you don't have an

16   actual conflict of interest in representing HK International

17   and Mr. Kwok simultaneously.

18           MR. HENZY:  I just want to be -- when you said

19   you'll let me speak on August 1t, I mean, I wouldn't want to

20   get here --

21           THE COURT:  Yeah.  You're going -- I'm going to

22   let you make your argument.

23           MR. HENZY:  I wouldn't want to get here on August

24   1st and have you say I've decided you can't represent Mr.

25   Kwok and then Mr. Kwok is not ready -- he's not --

Ho Wan Kwok - July 21, 2022                                    114

1              THE COURT:  We're not going to do that.

2              MR. HENZY:  He's not represented.

3              THE COURT:  It's a hearing on whether or not you

4       can do that.  Okay?

5              MR. HENZY:  Okay.

6              THE COURT:  I'm not going to -- I would never say

7       that you were not going to be allowed to speak.

8              MR. HENZY:  I didn't think you would, Your Honor.

9              THE COURT:  Okay.

10             MR. HENZY:  But I just don't want him to be not

11      represented at that hearing.

12             THE COURT:  I understand.  Well, Brown Rudnick's

13      going to be here anyway.

14             MR. HENZY:  I don't think Brown Rudnick is

15      intending to prepare for that -- a hearing on August 1st.

16             THE COURT:  They may not be intending to prepare

17      for that hearing, but they're going to have to be here on

18      their motion to withdraw as attorney.

19             MR. HENZY:  Understood.

20             THE COURT:  Okay.

21             MR. HENZY:  Understood.

22             THE COURT:  And so if I don't grant their motion

23      to withdraw as attorney, then they're still his attorney.

24             MR. HENZY:  Okay.

25             THE COURT:  Okay?

1          MR. HENZY:  Okay.

2          THE COURT:  All right.  Anything further from

3    anyone?

4        (No audible response.)

5          THE COURT:  All right.  That concludes the Kwok

6    matter for today.  That is the last matter on today's

7    calendar.  Court is adjourned.

8        (Proceedings concluded at 1:28 p.m.)

9            I, CHRISTINE FIORE, court-approved

10   transcriber and certified electronic reporter and

11   transcriber, certify that the foregoing is a correct

12   transcript from the official electronic sound recording of

13   the proceedings in the above-entitled matter.

14

15   *Christine Fiore*

16   _____        July 25, 2022

17     Christine Fiore, CERT

18        Transcriber

19

20

21

22

23

24

25

1

2                          I N D E X

3                                                    PAGE

4    EXHIBITS FOR THE TRUSTEE:

5    1   Trustee written presentation copy            7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 03

July 22, 2022 Interrogatories from Debtor to PAX

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, | Case No: 22-50073 (JAM) |
| Debtor. | |
| | |
| HO WAN KWOK, | |
| Movant, | |
| v. | |
| WILLIAM K. HARRINGTON, UNTIED STATES TRUSTEE FOR REGION 2 | |
| and | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE | |
| Respondents. | |

**<u>INTERROATORIES</u>**

Pursuant to Fed. R. Civ. P. 33, made applicable to this Contested Matter by Fed. R. Bankr. P. 9014 and 7033, and D. Conn. L. Civ. R. 26, made applicable to this Contested Matter by D. Conn. Local Bankr. R. 1001-1 and 7026-1, Ho Wan Kwok ("Mr. Kwok" or the "Debtor"), the debtor in the above-captioned chapter 11 case and Movant on the July 15, 2022, Motion for Relief From Order Appointing Luc A. Despins as Chapter 11 Trustee (the "Motion for Relief"), by and through his undersigned counsel, demands that Pacific Alliance Asia Opportunity Fund ("PAX") answer the following interrogatories, completely and under oath, and serve said answers on the

law offices of Zeisler & Zeisler, P.C., 10 Middle Street, 15th Floor, Bridgeport, Connecticut 06604,

Attention**:** Eric A. Henzy and Aaron A. Romney, on or before July 26, 2022.

## INSTRUCTIONS AND DEFINITIONS

1.      The term "all/each" shall both be construed as all and each.

2.      The term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all responses that might otherwise be construed to be outside their scope.

3.      The singular form of any word includes the plural and vice versa.

4.      Unless otherwise defined herein, all terms used herein shall have the meanings set forth in D. Conn. L. Civ. R. 26(c), made applicable to this proceeding by Local Bankruptcy Rule 1001-1(b).

5.      Unless otherwise specified herein, the rules of construction set forth in D. Conn. L. Civ. R. 26(d), made applicable to this proceeding by Local Bankruptcy Rule 1001-1(b), shall apply to the terms used herein.

6.      "Paul Hastings" means Paul Hasting, LLP, and includes its partners, members, managers, managing partners, managing members, officers, employees, and agents.

7.      "PAG Entities" means and includes PAG Holdings Limited, PAG Real Estate Asia, PAG Real Estate, PAG Assets (Real Estate) Limited, PAG Real Estate Investments, Ltd., BT Cayman Ltd., Super Alliance, Real Estate L.P, Sunstone KB (HKSAR) Ltd., PAG Private Equity, PAG Real Assets, PAG Credits and Markets, PAG Asia Capital, PAG Growth Capital, Secured Capital Real Estate Partners ("SCREP") V, SCREP VI, SCREP VI Management LLC, SCREP VII, PAG Real Estate Partners I, PAG Real Estate Partners II, Polymer Capital, Pacific Alliance Asia Opportunity Fund ("PAX"), Capital Structure Opportunities Fund, Pegasus Fund, RE Strategic Investments Pte. Ltd., Strategic Investment LP, RES Investments GP, Spirit Cayman, BT

Cayman, and any other entity, regardless of form, managed by PAG or controlled by PAG Holdings Limited.

## II.    <u>INTERROGATORIES</u>

1.    Identify each matter for which Paul Hastings has provided services to any PAG Entity since January 1, 2017, by listing the date of the representation, general description of the representation, e.g., financing, securities transaction, litigation, etc., and whether, for each matter identified, the services have concluded, are on-going, or have yet to commence, *i.e.,* Paul Hastings has been retained to provide services to a PAG Entity for a particular matter but the work has not yet begun.

2.    State, by individual matter, the total fees paid to Paul Hastings for services it rendered in each matter identified in response to Interrogatory numbered 1 .

Dated at Bridgeport, Connecticut this 22nd day of July, 2022.

<div style="margin-left: 40%;">

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ James M. Moriarty*
Eric Henzy (ct12849)
Stephen M. Kindseth (ct14640)
Aaron A. Romney (ct28144)
James M. Moriarty (ct21876)
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
skindseth@zeislaw.com
aromney@zeislaw.com
jmoriarty@zeislaw.com
jcesaroni@zeislaw.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of July, 2022, a copy of foregoing was served on counsel of record who have appeared in the Debtor's Bankruptcy Case via email to the email address generated via the delivery of ECF notices.

/s/ *<u>James M. Moriarty</u>*
James M. Moriarty (ct21876)

# **EXHIBIT 04**

Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a) and 1103 Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Effective as of April 22, 2021, filed in *In re TECT Aerospace Group Holdings, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TECT AEROSPACE GROUP HOLDINGS, INC., *et al.*, | Case No. 21-10670 (KBO) |
| Debtors.[1] | Jointly Administered |
|  | **Hearing Date: May 25, 2021 at 10:00 a.m. (ET)**<br>**Objection Deadline: May 18, 2021 at 4:00 p.m. (ET)** |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE BOND DICKINSON (US) LLP AS CO-COUNSEL EFFECTIVE AS OF APRIL 22, 2021

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended and applicable to the above-captioned case, the "Bankruptcy Code") and Rule 2014(a) of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), and the United States Trustee's *Appendix B - Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "Appendix B Guidelines"), authorizing and approving the employment and retention of Womble Bond Dickinson (US) LLP ("WBD"), as co-counsel for the Committee, effective as of April 22, 2021. In support of this Application, the Committee submits the *Declaration of Matthew P. Ward*, a partner of WBD,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: TECT Aerospace Group Holdings, Inc. (9338); TECT Aerospace Kansas Holdings, LLC (4241); TECT Aerospace Holdings, LLC (9112); TECT Aerospace Wellington Inc. (4768); TECT Aerospace, LLC (8650); TECT Hypervelocity, Inc. (8103); and Sun Country Holdings, LLC (6079). The Debtors' mailing address is 300 W. Douglas, Suite 100, Wichita, KS 67202.

attached hereto as <u>Exhibit B</u> (the "<u>Ward Declaration</u>"), and the *Declaration of Committee Co-Chairperson John Mullen in Support of Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Co-Counsel Effective as of April 22, 2021*, attached hereto as <u>Exhibit C</u> (the "<u>Committee Chairperson Declaration</u>"), and respectfully states as follows:

## BACKGROUND

1.      On April 5, 2021 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"), commencing these Chapter 11 Cases.  Since the Petition Date, the Debtors have remained in possession of their assets and have continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

2.      On April 20, 2021, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code.  *See* Docket No. 76.  The Committee is comprised of the following five (5) members: (i) Niigata Machine Techno USA, Inc.; (ii) All Metal Services Limited; (iii) Quality Stamping & Machining, Inc.; (iv) Wm. F. Hurst Co., LLC; and (v) Mecadaq Tarnos.  On April 22, 2021, the Committee selected Kilpatrick Townsend & Stockton LLP to serve as its lead counsel and WBD to serve as its Delaware co-counsel.  The Committee also selected Province, LLC to serve as its financial advisor.

3.      Information regarding the Debtors' history, business operations, capital structure, primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases can be found in the *Declaration of Shaun Martin in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 13].

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   The statutory

predicates for the relief sought herein are Bankruptcy Code sections 328 and 1103.   The requested

relief is also appropriate pursuant to Bankruptcy Rule 2014.

## RELIEF REQUESTED

5.      By this Application, the Committee respectfully requests that the Court

enter an order, substantially in the form attached hereto as Exhibit A, authorizing and approving

the employment of WBD as its co-counsel to perform services relating to these Chapter 11 Cases,

effective as of April 22, 2021.

6.      Bankruptcy Code section 328(a) empowers a committee appointed under

Bankruptcy Code section 1102, with the Court's approval, to employ attorneys under Bankruptcy

Code section 1103 on any reasonable terms and conditions of employment, including on a retainer,

on an hourly basis, or on a contingent fee basis, to perform services for such committee.

7.      Pursuant to Bankruptcy Code section 1103(b), an attorney employed to

represent a committee may not, while employed by such committee, represent any other entity

having an adverse interest in connection with the case, (though the Bankruptcy Code clarifies that

representation of one or more creditors of the same class as represented by the committee shall not

per se constitute the representation of an adverse interest).   WBD has advised the Committee that

WBD does not represent any other entity having an adverse interest in connection with these

Chapter 11 Cases and does not have any disabling connections with the United States Trustee, any

person employed by the Office of the United States Trustee, or the Bankruptcy Judge to whom

these cases are assigned.   Submitted herewith is the Ward Declaration, which sets forth WBD's

connections with the Debtors, their creditors, and other parties-in-interest.

8.      The Committee has selected WBD as its Delaware co-counsel because of its
attorneys' experience and knowledge before this Court.  The Committee believes that WBD is
well-qualified to represent the Committee in these Chapter 11 Cases.

9.      The professional services that WBD will provide to the Committee include,
but are not limited to, the following:

- providing legal advice as necessary with respect to the Committee's
  powers and duties as an official committee appointed under Bankruptcy
  Code section 1102;

- assisting the Committee in investigating the acts, conduct, assets,
  liabilities, and financial condition of the Debtor, the operation of the
  Debtor's businesses, potential claims, and any other matters relevant to
  the case, to the sale of assets, or to the formulation of a plan of
  reorganization or liquidation (a "Plan");

- participating in the formulation of a Plan;

- providing legal advice as necessary with respect to any disclosure
  statement and Plan filed in these Chapter 11 Cases and with respect to
  the process for approving or disapproving disclosure statements and
  confirming or denying confirmation of a Plan;

- preparing on behalf of the Committee, as necessary, applications,
  motions, objections, complaints, answers, orders, agreements, and other
  legal papers;

- appearing in Court to present necessary motions, applications,
  objections, and pleadings, and otherwise protecting the interests of those
  represented by the Committee;

- assisting the Committee in requesting the appointment of a trustee or
  examiner, should such action be necessary; and

- performing such other legal services as may be required and as are in
  the best interests of the Committee and creditors.

10.     Subject to the Court's approval and pursuant to Bankruptcy Code sections
330 and 331, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the
United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other

rules and procedures that this Court may fix, the Committee requests that WBD be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs. WBD requests that it receives such compensation in accordance with the ordinary and customary rates which are in effect on the date the services are rendered.

11.    WBD's current hourly rates are as follows:

| | |
|---|---|
| Partners | $325 - $950 |
| Of Counsel | $330 - $925 |
| Associates | $280 - $685 |
| Senior Counsel | $125 - $765 |
| Counsel | $100 - $675 |
| Paralegals | $50 - $495 |

12.    Subject to Court approval, WBD expects that the following attorneys will be primarily responsible for representing the Committee in this matter: Matthew P. Ward, Morgan L. Patterson, and Lisa B. Tancredi. The attorneys' hourly rates are $665, $525, and $515, respectively.

13.    The charges set forth herein are based upon actual time charges on an hourly basis and based upon the experience and expertise of the attorney or legal assistant involved. The Committee understands that the hourly rates set forth are subject to periodic, typically annual, adjustments to reflect economic, and other conditions.

14.    The Committee understands that any compensation and expenses paid to WBD must be approved by this Court upon application consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of this Court respecting compensation of professionals.

15.    To the best of the Committee's knowledge and subject to the Ward Declaration and Committee Chairperson Declaration submitted herewith, WBD has informed the

Committee that it represents no other entity having an adverse interest in connection with these Chapter 11 Cases.

### CONSENT TO JURISDICTION

16.     Pursuant to Local Rule 9013-1(f), the Committee consents to the entry of a final judgment or order with respect to this Application if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### NOTICE

17.     Notice of this Application will be provided to: (i) proposed counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Paul N. Heath, and Amanda R. Steele); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Linda J. Casey); (iii) counsel for The Boeing Company: (a) Perkins Coie LLP, 1201 Third Avenue, Suite 4900, Seattle, Washington 98101-3099 (Attn: Alan D. Smith) and 1888 Century Park East, Suite 1700, Los Angeles, California 90067-1721 (Attn: Amir Gamliel), and (b) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton and Kenneth J. Enos); and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Because of the nature of the relief requested, the Committee respectfully submits that no further notice of the Application is necessary or required under the circumstances.

18.     No previous application for relief sought herein has been made to this or any other Court.

WHEREFORE, the Committee respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, authorizing the Committee to retain and employ Womble Bond Dickinson (US) LLP, as Delaware co-counsel to the Committee, effective as of to April 22, 2021, and grant such further relief as the Court deems just or proper.

Dated: May 4, 2021
      Wilmington, Delaware

**Wm. F. Hurst Co., LLC**

Solely in its capacity as a Committee Co-Chairperson and not in its individual capacity

/s/ John Mullen
By:  John Mullen, as representative of
     Wm. F. Hurst Co., LLC

# __EXHIBIT 05__

Application of the Official Committee of Unsecured Creditors for an
Order Pursuant to Bankruptcy Code Sections 328(a) And 1103
Authorizing and Approving the Employment and Retention of Womble
Bond Dickinson (US) LLP as Counsel Effective as of July 20, 2019,
filed in *In re Tintri, Inc*.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TINTRI, INC.,[1] | ) Case No. 18-11625 (KJC) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) **Hearing Date: August 28, 2018 at 1:30 p.m. ET** |
| | ) **Objections Due: August 21, 2018 at 4:00 p.m. ET** |

### APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE BOND DICKINSON (US) LLP AS COUNSEL NUNC PRO TUNC TO JULY 20, 2018

The Official Committee of Unsecured Creditors (the "Committee") of Tintri, Inc. (the "Debtor"), submits this application (the "Application") for an order pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended and applicable to the above-captioned case, the "Bankruptcy Code") and Rule 2014(a) of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the employment and retention of Womble Bond Dickinson (US) LLP ("WBD"), as counsel for the Committee, nunc pro tunc to July 20, 2018.  In support of the Application, the Committee respectfully represents as follows:

### BACKGROUND

1.    On July 10, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court in the District of Delaware (the "Court").

---

[1]    The Debtor and the last four digits of its taxpayer identification numbers are (6978).  The headquarters and service address for the Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

2.      The Debtor has continued in possession of its properties and has continued

to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.

3.      On July 20, 2018, the Office of the United States Trustee appointed the

Committee pursuant to Bankruptcy Code section 1102(a)(1) [Docket No. 78].  The members of

the Committee are as follows: (i) Flextronics International USA, Inc.; (ii) Clari, Inc.; and

(iii) NCR Corporation.  After its appointment, the Committee selected and authorized the

employment of WBD as its counsel.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief sought herein are Bankruptcy Code sections 328 and 1103.  The

requested relief is also appropriate pursuant to Bankruptcy Rule 2014.

## RELIEF REQUESTED

5.      By this Application, the Committee respectfully requests the entry of an

order, substantially in the form attached hereto, authorizing and approving the employment of

WBD as its counsel to perform services relating to the Debtor's bankruptcy case (the "Chapter

11 Case"), effective as of July 20, 2018.

6.      Bankruptcy Code section 328(a) empowers a committee appointed under

Bankruptcy Code section 1102, with the Court's approval, to employ attorneys under Bankruptcy

Code section 1103 on any reasonable terms and conditions of employment, including on a

retainer, on an hourly basis, or on a contingent fee basis, to perform services for such committee.

7.      Pursuant to Bankruptcy Code section 1103(b), an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.  WBD has advised the Committee that WBD does not represent any other entity having an adverse interest in connection with the Chapter 11 Case and does not have any disabling connections with the United States Trustee, any person employed by the Office of the United States Trustee, or the Bankruptcy Judge to whom this case is assigned.  Submitted herewith is the Declaration of Matthew P. Ward, Esq., a partner of WBD, which sets forth WBD's connections with the Debtor, its creditors, and other parties-in-interest (the "Declaration").

8.      The Committee has selected WBD because of its attorneys' experience and knowledge.  The Committee believes that WBD is well-qualified to represent the Committee in the Chapter 11 Case.

9.      The professional services that WBD will provide to the Committee include, but are not limited to, the following:

- providing legal advice as necessary with respect to the Committee's powers and duties as an official committee appointed under Bankruptcy Code section 1102;
- assisting the Committee in investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's businesses, potential claims, and any other matters relevant to the case, to the sale of assets, or to the formulation of a plan of reorganization or liquidation (a "Plan");
- participating in the formulation of a Plan;
- providing legal advice as necessary with respect to any disclosure statement and Plan filed in this case and with respect to the process for approving or disapproving disclosure statements and confirming or denying confirmation of a Plan;
- preparing on behalf of the Committee, as necessary, applications, motions, objections, complaints, answers, orders, agreements, and other legal papers;
- appearing in Court to present necessary motions, applications, objections, and pleadings, and otherwise protecting the interests of those represented by the Committee;
- assisting the Committee in requesting the appointment of a trustee or examiner, should such action be necessary; and

3

- performing such other legal services as may be required and as are in the best interests of the Committee and creditors.

10.   Subject to the Court's approval and pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other rules and procedures that this Court may fix, the Committee requests that WBD be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs. WBD requests that it receives such compensation in accordance with the ordinary and customary rates which are in effect on the date the services are rendered.

11.   WBD's hourly rates are as follows:

| | |
|---|---|
| Partners | $320 - $825 |
| Of Counsel | $225 - $810 |
| Senior Counsel | $125 - $665 |
| Counsel | $100 - $585 |
| Associates | $230 - $580 |
| Paralegals | $41 - $415 |

12.   The charges set forth herein are based upon actual time charges on an hourly basis and based upon the experience and expertise of the attorney or legal assistant involved.  The hourly rates set forth are subject to periodic adjustments to reflect economic and other conditions.

13.   The Committee understands that any compensation and expenses paid to WBD must be approved by this Court upon application consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of this Court respecting compensation of professionals.

14.   To the best of the Committee's knowledge and subject to the Declaration submitted herewith, WBD has informed the Committee that it represents no other entity in

connection with this case and does not hold or represent any interest adverse to the Debtor with respect to the matters upon which it is to be employed.

## NOTICE

15.    The Committee has provided notice of this Application to (i) the Debtor; (ii) proposed counsel for the Debtor, (a) Pachulski Stang Ziehl & Jones, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: James E. O'Neill, Esq. (b) Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: John D. Fiero, Esq.; (iii) the office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq.; (iv) counsel to Silicon Valley Bank, (a) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox, Esq. and (b) Ashby & Geddes, 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19801, Attn: Gegory A. Taylor, Esq.; (v) counsel to TriplePoint Capital LLC, (a) McDermott Will & Emery, 340 Madison Avenue, New York, NY 10173, Attn: Riley T. Orloff, Esq., (b) McDermott Will & Emery, 2049 Century Park East, Suite 3800, Los Angeles, CA 90067, Attn: Gary B. Rosenbaum, Esq., and (c) Posinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801, Attn: Christopher A. Ward, Esq., and (vi) all parties who have filed requests for notice pursuant to Bankruptcy Rule 2002 in this Chapter 11 Case.  The Committee submits that no other or further notice is necessary or required.

16.    No previous application for relief sought herein has been made to this or any other Court.

WHEREFORE, the Committee respectfully requests that this Court enter an

Order, substantially in the form filed herewith, authorizing the Committee to retain and employ

Womble Bond Dickinson (US) LLP, as counsel to the Committee, nunc pro tunc to July 20,

2018, and grant such further relief as the Court deems just or proper.

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TINTRI, INC.

Date: August 7, 2018

**Flextronics International USA, Inc.**
Solely in its capacity as Committee Chairperson and
not in its individual capacity

_____/s/ Todd Atkinson_____
By:  Todd Atkinson
     Counsel to Flextronics International USA, Inc.
     and Proxy

6

# **EXHIBIT 06**

Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a) and 1103 Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Effective as of June 4, 2019, filed *In re JRV Group USA L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JRV GROUP USA L.P., a Delaware limited partnership,[1] | ) ) ) | Case No. 19-11095 (CSS) |
| Debtor. | ) ) ) ) | **Hearing Date: July 11, 2019 at 2:00 p.m. ET**<br>**Objections Due: July 5, 2019 at 4:00 p.m. ET** |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE BOND DICKINSON (US) LLP AS COUNSEL NUNC PRO TUNC TO JUNE 4, 2019

The Official Committee of Unsecured Creditors (the "Committee") of JRV Group USA L.P. (the "Debtor"), submits this application (the "Application") for an order pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended and applicable to the above-captioned case, the "Bankruptcy Code") and Rule 2014(a) of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the employment and retention of Womble Bond Dickinson (US) LLP ("WBD"), as counsel for the Committee, nunc pro tunc to June 4, 2019. In support of the Application, the Committee respectfully represents as follows:

### BACKGROUND

1. On May 13, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court in the District of Delaware (the "Court").

---

[1] The last four digits of the Debtor's taxpayer identification numbers are (5218). The headquarters and service address for the above-captioned Debtor is 1945 Burgundy Place, Ontario, CA 91761.

2.     The Debtor has continued in possession of its properties and has continued

to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.

3.     On June 4, 2019, the Office of the United States Trustee appointed the

Committee pursuant to Bankruptcy Code section 1102(a)(1) [Docket No. 59].  The members of

the Committee are as follows: (i) Beaver Motors; (ii) Foothill Autobody; and (iii) Laser Tech.

After its appointment, the Committee selected and authorized the employment of WBD as its

counsel.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief sought herein are Bankruptcy Code sections 328 and 1103.  The

requested relief is also appropriate pursuant to Bankruptcy Rule 2014.

## RELIEF REQUESTED

5.     By this Application, the Committee respectfully requests the entry of an

order, substantially in the form attached hereto, authorizing and approving the employment of

WBD as its counsel to perform services relating to the Debtor's bankruptcy case (the "Chapter

11 Case"), effective as of June 4, 2019.

6.     Bankruptcy Code section 328(a) empowers a committee appointed under

Bankruptcy Code section 1102, with the Court's approval, to employ attorneys under Bankruptcy

Code section 1103 on any reasonable terms and conditions of employment, including on a

retainer, on an hourly basis, or on a contingent fee basis, to perform services for such committee.

2

7.      Pursuant to Bankruptcy Code section 1103(b), an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.  WBD has advised the Committee that WBD does not represent any other entity having an adverse interest in connection with the Chapter 11 Case and does not have any disabling connections with the United States Trustee, any person employed by the Office of the United States Trustee, or the Bankruptcy Judge to whom this case is assigned.  Submitted herewith is the Declaration of Matthew P. Ward, Esq., a partner of WBD, which sets forth WBD's connections with the Debtor, its creditors, and other parties-in-interest (the "Declaration").

8.      The Committee has selected WBD because of its attorneys' experience and knowledge.  The Committee believes that WBD is well-qualified to represent the Committee in the Chapter 11 Case.

9.      The professional services that WBD will provide to the Committee include, but are not limited to, the following:

- providing legal advice as necessary with respect to the Committee's powers and duties as an official committee appointed under Bankruptcy Code section 1102;

- assisting the Committee in investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's businesses, potential claims, and any other matters relevant to the case, to the sale of assets, or to the formulation of a plan of reorganization or liquidation (a "Plan");

- participating in the formulation of a Plan;

- providing legal advice as necessary with respect to any disclosure statement and Plan filed in this case and with respect to the process for approving or disapproving disclosure statements and confirming or denying confirmation of a Plan;

- preparing on behalf of the Committee, as necessary, applications, motions, objections, complaints, answers, orders, agreements, and other legal papers;

- appearing in Court to present necessary motions, applications, objections, and pleadings, and otherwise protecting the interests of those represented by the Committee;

3

- assisting the Committee in requesting the appointment of a trustee or examiner, should such action be necessary; and

- performing such other legal services as may be required and as are in the best interests of the Committee and creditors.

10.     Subject to the Court's approval and pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other rules and procedures that this Court may fix, the Committee requests that WBD be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs. WBD requests that it receives such compensation in accordance with the ordinary and customary rates which are in effect on the date the services are rendered.

11.     WBD's hourly rates are as follows:

| | |
|---|---|
| Partners | $325 - $900 |
| Of Counsel | $325 - $855 |
| Associates | $245 - $600 |
| Senior Counsel | $125 - $625 |
| Counsel | $100 - $625 |
| Paralegals | $50 - $440 |

12.     The charges set forth herein are based upon actual time charges on an hourly basis and based upon the experience and expertise of the attorney or legal assistant involved.  The hourly rates set forth are subject to periodic adjustments to reflect economic and other conditions.

13.     The Committee understands that any compensation and expenses paid to WBD must be approved by this Court upon application consistent with the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, and any orders of this Court respecting compensation of professionals.

14.     To the best of the Committee's knowledge and subject to the Declaration submitted herewith, WBD has informed the Committee that it represents no other entity in connection with this Chapter 11 Case and does not hold or represent any interest adverse to the Debtor with respect to the matters upon which it is to be employed.

## NOTICE

15.     The Committee has provided notice of this Application to (i) the Debtor; (ii) counsel for the Debtor, (a) Pachulski Stang Ziehl & Jones, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Colin Robinson, Esq. (b) Pachulski Stang Ziehl & Jones, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067, Attn: Jeffrey Dulberg, Esq. and Robert Saunders, Esq.; (iii) the office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda Casey, Esq.; (iv) counsel to Corner Flag LLC, (a) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019, Attn: George Zobitz, Esq. and Paul Sandler, Esq. and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Paul Heath, Esq. and Zachary Shapiro; and (v) all parties who have filed requests for notice pursuant to Bankruptcy Rule 2002 in this Chapter 11 Case.  The Committee submits that no other or further notice is necessary or required.

16.     No previous application for relief sought herein has been made to this or any other Court.

5

WHEREFORE, the Committee respectfully requests that this Court enter an

Order, substantially in the form filed herewith, authorizing the Committee to retain and employ

Womble Bond Dickinson (US) LLP, as counsel to the Committee, <u>nunc</u> <u>pro</u> <u>tunc</u> to June 4, 2019,

and grant such further relief as the Court deems just or proper.

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF JRV GROUP USA L.P.

Date: June 20, 2019

**Beaver Motors**
Solely in its capacity as Committee Chairperson and
not in its individual capacity

_____ */s/ Michael Andretta* _____

By:  Michael Andretta
       Beaver Motors

6

# **EXHIBIT 07**

Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328(a) and 1103 Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Effective as of September 18, 2019, filed in *In re Fred's Inc*.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRED'S, INC., *et al.* | Case No. 19-11984 (CSS) |
| Debtors.[1] | Jointly Administered |
| | **Hearing Date: November 19, 2019 at 2:00 p.m. (ET)**<br>**Objections Due: November 1, 2019 at 4:00 p.m. (ET)** |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 328(a) AND 1103
AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION
OF WOMBLE BOND DICKINSON (US) LLP AS COUNSEL
NUNC PRO TUNC TO SEPTEMBER 18, 2019**

The Official Committee of Unsecured Creditors (the "Committee") appointed in

the bankruptcy cases of the above-captioned debtors and debtors-in-possession (the "Debtors"),

hereby submits this application (the "Application") for an order pursuant to sections 328(a) and

1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended and applicable

to the above-captioned case, the "Bankruptcy Code") and Rule 2014(a) of the Federal Rule of

Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the employment and

retention of Womble Bond Dickinson (US) LLP ("WBD"), as counsel for the Committee, nunc

pro tunc to September 18, 2019.  In support of this Application, the Committee submits the

*Declaration of Matthew P. Ward, Esq.* (the "Ward Declaration"), a partner of WBD, attached

hereto as Exhibit A, and the *Declaration of Committee Chairperson in Support of Application of

the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the*

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are: Fred's, Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment
Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc.
(4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main
Opp, LLC (5850).  The Debtors' address is 2001 Bryan Street, Suite 1550, Dallas, Texas 75201.

*Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Nunc Pro Tunc to
September 18, 2019*, attached hereto as <u>Exhibit B</u>, and respectfully states as follows:

## BACKGROUND

1.      On September 9, 2019 (the "<u>Petition Date</u>"), the Debtors each filed
voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States
Bankruptcy Court for the District of Delaware (the "<u>Court</u>") commencing these cases (the
"<u>Chapter 11 Cases</u>").  No trustee or examiner has been appointed in the Chapter 11 Cases.

2.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the
Debtors continue to manage their properties and operate their businesses as debtors in
possession.

3.      On September 18, 2019, the Office of the United States Trustee appointed
the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code.  <u>See</u> Docket No. 127.
The Committee is comprised of three members: (a) Bradley Wooldridge, (b) BWI Companies,
Inc., and (c) WIN Properties, Inc.  On the same day, the Committee selected Lowenstein Sandler
LLP to serve as its lead counsel and WBD to serve as its Delaware counsel.  The Committee
subsequently selected Alvarez & Marsal North America, LLC to serve as its financial advisor in
the Chapter 11 Cases.

4.      Information regarding the Debtors' history, business operations, capital
structure, primary secured indebtedness, and the events leading up to the commencement of
these Chapter 11 Cases can be found in the *Declaration of Mark A. Renzi, Chief Restructuring
Officer of Fred's, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No.
17].

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code sections 328 and 1103.  The requested relief is also appropriate pursuant to Bankruptcy Rule 2014.

## RELIEF REQUESTED

6.      By this Application, the Committee respectfully requests the entry of an order, substantially in the form attached hereto, authorizing and approving the employment of WBD as its counsel to perform services relating to these Chapter 11 Cases, effective as of September 18, 2019.

7.      Bankruptcy Code section 328(a) empowers a committee appointed under Bankruptcy Code section 1102, with the Court's approval, to employ attorneys under Bankruptcy Code section 1103 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis, to perform services for such committee.

8.      Pursuant to Bankruptcy Code section 1103(b), an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.  WBD has advised the Committee that WBD does not represent any other entity having an adverse interest in connection with these Chapter 11 Cases and does not have any disabling connections with the United States Trustee, any person employed by the Office of the United States Trustee, or the Bankruptcy Judge to whom these cases are assigned.  Submitted herewith is the Ward Declaration, which sets forth WBD's connections with the Debtors, their creditors, and other parties-in-interest.

9.      The Committee has selected WBD as its Delaware counsel because of its
attorneys' experience and knowledge before this Court.  The Committee believes that WBD is
well-qualified to represent the Committee in these Chapter 11 Cases.

10.     The professional services that WBD will provide to the Committee
include, but are not limited to, the following:

- providing legal advice as necessary with respect to the Committee's powers and duties as an official committee appointed under Bankruptcy Code section 1102;

- assisting the Committee in investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's businesses, potential claims, and any other matters relevant to the case, to the sale of assets, or to the formulation of a plan of reorganization or liquidation (a "Plan");

- participating in the formulation of a Plan;

- providing legal advice as necessary with respect to any disclosure statement and Plan filed in these Chapter 11 Cases and with respect to the process for approving or disapproving disclosure statements and confirming or denying confirmation of a Plan;

- preparing on behalf of the Committee, as necessary, applications, motions, objections, complaints, answers, orders, agreements, and other legal papers;

- appearing in Court to present necessary motions, applications, objections, and pleadings, and otherwise protecting the interests of those represented by the Committee;

- assisting the Committee in requesting the appointment of a trustee or examiner, should such action be necessary; and

- performing such other legal services as may be required and as are in the best interests of the Committee and creditors.

11.     Subject to the Court's approval and pursuant to Bankruptcy Code sections
330 and 331, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the
United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other

rules and procedures that this Court may fix, the Committee requests that WBD be compensated

on an hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs.

WBD requests that it receives such compensation in accordance with the ordinary and customary

rates which are in effect on the date the services are rendered.

12.     WBD's hourly rates are as follows:[2]

| | |
|---|---|
| Partners | $325 - $925 |
| Of Counsel | $330 - $890 |
| Senior Counsel | $125 - $625 |
| Counsel | $100 - $650 |
| Associates | $255 - $710 |
| Paralegals | $50 - $475 |

13.     The charges set forth herein are based upon actual time charges on an

hourly basis and based upon the experience and expertise of the attorney or legal assistant

involved.  The hourly rates set forth are subject to periodic adjustments to reflect economic and

other conditions.

14.     The Committee understands that any compensation and expenses paid to

WBD must be approved by this Court upon application consistent with the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, and any orders of this Court respecting compensation of

professionals.

15.     To the best of the Committee's knowledge and subject to the Declaration

submitted herewith, WBD has informed the Committee that it represents no other entity in

connection with these Chapter 11 Cases and does not hold or represent any interest adverse to the

Debtors with respect to the matters upon which it is to be employed.

---

[2]     On October 1, 2019, WBD adjusted hourly rates.  The rates reflected herein are the rates in effect as of October 1, 2019.

## NOTICE

16.     The Committee has provided notice of this Application to (a) counsel for

the Debtors, Kasowitz Benson Torres, LLP, 1633 Broadway, New York, NY 10019, Attn: Adam

L. Shiff, Esq., AShiff@kasowitz.com, Robert M. Novick, Esq., RNovick@kasowitz.com, and

Matthew B. Stein, Esq., MStein@kasowitz.com, and Morris Nichols, Arsht & Tunnell LLP,

1201 North Market Street, 16th Floor, Wilmington, DE 19899-1347, Attn: Derek C. Abbott, Esq.,

dabbott@mnat.com, Andrew R. Remming, Esq., aremming@mnat.com, Matthew B. Harvey,

Esq., mharvey@mnat.com, and Joseph C. Barsalona II, Esq., jbarsalona@mnat.com; (b) Office

of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801;

(c) counsel to the DIP Agent; and (d) all other parties that have requested notice pursuant to

Bankruptcy Rule 2002.  The Committee submits that no other or further notice is necessary or

required.

17.     No previous application for relief sought herein has been made to this or

any other Court.

WHEREFORE, the Committee respectfully requests that this Court enter an

Order, substantially in the form filed herewith, authorizing the Committee to retain and employ

Womble Bond Dickinson (US) LLP, as counsel to the Committee, nunc pro tunc to September

18, 2019, and grant such further relief as the Court deems just or proper.

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF FRED'S INC.

Date: October 18, 2019

By: /s/ Bradley Wooldridge
    Bradley Wooldridge, solely in his capacity as the
    Chairperson of the Official Committee of
    Unsecured Creditors and not in his personal
    capacity

6

# <u>EXHIBIT 08</u>

Application of the Official Committee of Unsecured Creditors for an
Order Pursuant to Bankruptcy Code Sections 328(a) and 1103
Authorizing and Approving the Employment and Retention of Womble
Bond Dickinson (US) LLP as Counsel Effective as of February 5, 2020,
filed in *In re BL Restaurants Holding, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BL RESTAURANTS HOLDING, LLC, *et al.*,[1] | Case No. 20-10156 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 7, 2020 at 11:30 a.m. (ET)**<br>**Objection Deadline: March 18, 2020 at 4:00 p.m. (ET)** |

## APPLICATION OF THE OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS FOR AN ORDER PURSUANT
## TO BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING
## AND APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE
## BOND DICKINSON (US) LLP AS COUNSEL NUNC PRO TUNC TO FEBRUARY 5, 2020

The Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy cases of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and applicable to the above-captioned case, the "Bankruptcy Code") and Rule 2014(a) of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), and the United State Trustee's *Appendix B - Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "Appendix B Guidelines"), authorizing and approving the employment and retention of Womble Bond Dickinson (US) LLP ("WBD"), as counsel for the Committee, nunc pro tunc to February 5, 2020. In support of this Application, the Committee submits the *Declaration of Matthew P. Ward*, a partner of WBD, attached hereto as Exhibit B (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: BL Restaurants Holding, LLC (6665); BL Restaurant Operations, LLC (7062); BL Restaurant Franchises, LLC (6923); and BL Hunt Valley, LLC (9513). The Debtors' headquarters and mailing address is: 4550 Beltway Drive, Addison, TX 75001.

"Ward Declaration"), and the *Declaration of Anthony Marougi in Support of Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Nunc Pro Tunc to February 5, 2020*, attached hereto as Exhibit C (the "Committee Chairperson Declaration"), and respectfully states as follows:

## BACKGROUND

1.      On January 27, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these cases (the "Chapter 11 Cases"). No trustee or examiner has been appointed in the Chapter 11 Cases.

2.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their properties and operate their businesses as debtors in possession.

3.      On February 5, 2020, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. See Docket No. 98. The Committee is comprised of the following five (5) members: (a) A&Z Novi LLC, (b) Edward Don & Company, (c) NCR Corporation, (d) Brookfield Property REIT, Inc., and (e) Bradley Alverson. On the same day, the Committee selected Kelley Drye & Warren LLP to serve as its lead counsel and WBD to serve as its Delaware counsel. The Committee subsequently selected Province Inc. to serve as its financial advisor in the Chapter 11 Cases.

4.      Information regarding the Debtors' history, business operations, capital structure, primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases can be found in the *Declaration of Howard Meitiner in Support of Debtors' First Day Motions and Applications* [Docket No. 4].

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code sections 328 and 1103.  The requested relief is also appropriate pursuant to Bankruptcy Rule 2014.

## RELIEF REQUESTED

6.      By this Application, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, authorizing and approving the employment of WBD as its counsel to perform services relating to these Chapter 11 Cases, effective as of February 5, 2020.

7.      Bankruptcy Code section 328(a) empowers a committee appointed under Bankruptcy Code section 1102, with the Court's approval, to employ attorneys under Bankruptcy Code section 1103 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis, to perform services for such committee.

8.      Pursuant to Bankruptcy Code section 1103(b), an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.  WBD has advised the Committee that WBD does not represent any other entity having an adverse interest in connection with these Chapter 11 Cases and does not have any disabling connections with the United States Trustee, any person employed by the Office of the United States Trustee, or the Bankruptcy Judge to whom these cases are assigned.  Submitted herewith is the Ward Declaration, which sets forth WBD's connections with the Debtors, their creditors, and other parties-in-interest.

9.     The Committee has selected WBD as its Delaware counsel because of its attorneys' experience and knowledge before this Court.  The Committee believes that WBD is well-qualified to represent the Committee in these Chapter 11 Cases.

10.     The professional services that WBD will provide to the Committee include, but are not limited to, the following:

- providing legal advice as necessary with respect to the Committee's powers and duties as an official committee appointed under Bankruptcy Code section 1102;

- assisting the Committee in investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's businesses, potential claims, and any other matters relevant to the case, to the sale of assets, or to the formulation of a plan of reorganization or liquidation (a "Plan");

- participating in the formulation of a Plan;

- providing legal advice as necessary with respect to any disclosure statement and Plan filed in these Chapter 11 Cases and with respect to the process for approving or disapproving disclosure statements and confirming or denying confirmation of a Plan;

- preparing on behalf of the Committee, as necessary, applications, motions, objections, complaints, answers, orders, agreements, and other legal papers;

- appearing in Court to present necessary motions, applications, objections, and pleadings, and otherwise protecting the interests of those represented by the Committee;

- assisting the Committee in requesting the appointment of a trustee or examiner, should such action be necessary; and

- performing such other legal services as may be required and as are in the best interests of the Committee and creditors.

11.     Subject to the Court's approval and pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other

rules and procedures that this Court may fix, the Committee requests that WBD be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs. WBD requests that it receives such compensation in accordance with the ordinary and customary rates which are in effect on the date the services are rendered.

12. WBD's current hourly rates are as follows:

| | |
|---|---|
| Partners | $325 - $925 |
| Of Counsel | $330 - $890 |
| Senior Counsel | $125 - $750 |
| Counsel | $100 - $650 |
| Associates | $255 - $710 |
| Paralegals | $50 - $475 |

13. The charges set forth herein are based upon actual time charges on an hourly basis and based upon the experience and expertise of the attorney or legal assistant involved. The Committee understands that the hourly rates set forth are subject to periodic, typically annual, adjustments to reflect economic and other conditions.

14. The Committee understands that any compensation and expenses paid to WBD must be approved by this Court upon application consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of this Court respecting compensation of professionals.

15. To the best of the Committee's knowledge and subject to the Ward Declaration and Committee Chairperson Declaration submitted herewith, WBD has informed the Committee that it represents no other entity in connection with these Chapter 11 Cases and does not hold or represent any interest adverse to the Debtors with respect to the matters upon which it is to be employed.

## CONSENT TO JURISDICTION

16.    Pursuant to Local Rule 9013-1(f), the Committee consents to the entry of a final judgment or order with respect to this Application if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

17.    The Committee has provided notice of this Application to (a) proposed counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801 (Attn: Domenic E. Pacitti  and Michael W. Yurkewicz); (b) counsel for the DIP Agent and the Prepetition First Lien Secured Agent, Latham & Watkins LLP, 330 N. Wabash Avenue, Suite 2800, Chicago, Illinois 60611 (Attn: James Ktsanes and Jeramy D. Webb) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor and Andrew L. Magaziner); (c) counsel to the Prepetition Second Lien Secured Agent, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103 (Attn: Barbara J. Shander); (d) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder), and (e) all other parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Committee submits that no other or further notice is necessary or required.

18.    No previous application for relief sought herein has been made to this or any other Court.

WHEREFORE, the Committee respectfully requests that this Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Committee to retain and employ Womble Bond Dickinson (US) LLP, as Delaware counsel to the Committee, <u>nunc</u> <u>pro</u> <u>tunc</u> to February 5, 2020, and grant such further relief as the Court deems just or proper.

Dated:  March 4, 2020
        Wilmington, Delaware

**A&Z Novi LLC**

Solely in its capacity as Committee Chairperson
and not in its individual capacity

/s/ _Anthony Marougi_

By:  Anthony Marougi,
As representative of A&Z Novi LLC

# __EXHIBIT 09__

Application of the Official Committee of Unsecured Creditors for an
Order Pursuant to Bankruptcy Code Sections 328(a) and 1103
Authorizing and Approving the Employment and Retention of Womble
Bond Dickinson (US) LLP as Counsel Effective as of February 4, 2020,
filed in *In re Lucky's Market Parent Company, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1] | Case No. 20-10166 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 13, 2020 at 10:00 a.m. (ET)** |
| | **Objection Deadline: March 6, 2020 at 4:00 p.m. (ET)** |

**NOTICE OF APPLICATION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR AN ORDER PURSUANT
TO BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING
AND APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE
BOND DICKINSON (US) LLP AS COUNSEL NUNC PRO TUNC TO FEBRUARY 4, 2020**

PLEASE TAKE NOTICE that, on February 21, 2020, the Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy cases of the above-captioned debtors and debtors-in-possession (the "Debtors") filed the attached *Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Nunc Pro Tunc to February 4, 2020* (the "Application").

PLEASE TAKE FURTHER NOTICE that objections or responses, if any, to the Application must be (i) filed with the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, and (ii) served upon the undersigned counsel to the Committee, on or before **March 6, 2020 at 4:00 p.m. (prevailing Eastern Time)**.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

PLEASE TAKE FURTHER NOTICE that a hearing with respect to the Application will be held on **March 13, 2020 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable John T. Dorsey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #5, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE APPLICATION WITHOUT FURTHER NOTICE OR A HEARING.

Dated: February 21, 2020
      Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Matthew P. Ward*
Matthew P. Ward (Del. Bar No. 4471)
Morgan L. Patterson (Del. Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330
Email:     matthew.ward@wbd-us.com
           morgan.patterson@wbd-us.com

-AND-

**HAHN & HESSEN LLP**
Mark S. Indelicato (admitted *pro hac vice*)
Mark T. Power (admitted *pro hac vice*)
Jeffrey Zawadzki (admitted *pro hac vice*)
Emma Fleming (admitted *pro hac vice*)
488 Madison Avenue
New York, New York 10022
Telephone:  (212) 478-7200
Facsimile:  (212) 478-7400
Email:     mindelicato@hahnhessen.com
           mpower@hahnhessen.com
           jzawadzki@hahnhessen.com
           efleming@hahnhessen.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Lucky's Market Parent Company, LLC, et al.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LUCKY'S MARKET PARENT COMPANY,<br>LLC, *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10166 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date: March 13, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: March 6, 2020 at 4:00 p.m. (ET)** |

## APPLICATION OF THE OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS FOR AN ORDER PURSUANT
## TO BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING
## AND APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE
## BOND DICKINSON (US) LLP AS COUNSEL <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO FEBRUARY 4, 2020

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the bankruptcy cases of the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>"), hereby submits this application (the "<u>Application</u>") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> seq. (as amended and applicable to the above-captioned case, the "<u>Bankruptcy Code</u>") and Rule 2014(a) of the Federal Rule of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the United State Trustee's *Appendix B - Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "<u>Appendix B Guidelines</u>"), authorizing and approving the

---

[1]　　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

employment and retention of Womble Bond Dickinson (US) LLP ("WBD"), as counsel for the Committee, nunc pro tunc to February 4, 2020. In support of this Application, the Committee submits the *Declaration of Matthew P. Ward*, a partner of WBD, attached hereto as Exhibit B (the "Ward Declaration"), and the *Declaration of Nicholas Leitzes in Support of Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Nunc Pro Tunc to February 4, 2020*, attached hereto as Exhibit C (the "Committee Chairperson Declaration"), and respectfully states as follows:

## BACKGROUND

1. On January 27, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these cases (the "Chapter 11 Cases"). No trustee or examiner has been appointed in the Chapter 11 Cases.

2. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their properties and operate their businesses as debtors in possession.

3. On February 4, 2020, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. See Docket No. 94. The Committee is comprised of the following three (3) members: (a) United Natural Foods, Inc., (b) Harvest Meat Company, Inc., and (c) Benderson Development Company, LLC. On the same day, the Committee selected Hahn & Hessen LLP to serve as its lead counsel, WBD to serve as its Delaware counsel, and Norton Rose Fulbright US LLP to serve as its special litigation counsel. The Committee subsequently selected Province, Inc. to serve as its financial advisor in the Chapter 11 Cases.

2

4.      Information regarding the Debtors' history, business operations, capital

structure, primary secured indebtedness, and the events leading up to the commencement of these

Chapter 11 Cases can be found in the *Declaration of Andrew T. Pillari, Chief Financial Officer of*

*Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15].

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief sought herein are Bankruptcy Code sections 328 and 1103.  The requested

relief is also appropriate pursuant to Bankruptcy Rule 2014.

## RELIEF REQUESTED

6.      By this Application, the Committee respectfully requests that the Court

enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing and approving

the employment of WBD as its counsel to perform services relating to these Chapter 11 Cases,

effective as of February 4, 2020.

7.      Bankruptcy Code section 328(a) empowers a committee appointed under

Bankruptcy Code section 1102, with the Court's approval, to employ attorneys under Bankruptcy

Code section 1103 on any reasonable terms and conditions of employment, including on a retainer,

on an hourly basis, or on a contingent fee basis, to perform services for such committee.

8.      Pursuant to Bankruptcy Code section 1103(b), an attorney employed to

represent a committee may not, while employed by such committee, represent any other entity

having an adverse interest in connection with the case.  WBD has advised the Committee that

WBD does not represent any other entity having an adverse interest in connection with these

Chapter 11 Cases and does not have any disabling connections with the United States Trustee, any

person employed by the Office of the United States Trustee, or the Bankruptcy Judge to whom

these cases are assigned.  Submitted herewith is the Ward Declaration, which sets forth WBD's connections with the Debtors, their creditors, and other parties-in-interest.

9.     The Committee has selected WBD as its Delaware counsel because of its attorneys' experience and knowledge before this Court.  The Committee believes that WBD is well-qualified to represent the Committee in these Chapter 11 Cases.

10.     The professional services that WBD will provide to the Committee include, but are not limited to, the following:

- providing legal advice as necessary with respect to the Committee's powers and duties as an official committee appointed under Bankruptcy Code section 1102;

- assisting the Committee in investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's businesses, potential claims, and any other matters relevant to the case, to the sale of assets, or to the formulation of a plan of reorganization or liquidation (a "Plan");

- participating in the formulation of a Plan;

- providing legal advice as necessary with respect to any disclosure statement and Plan filed in these Chapter 11 Cases and with respect to the process for approving or disapproving disclosure statements and confirming or denying confirmation of a Plan;

- preparing on behalf of the Committee, as necessary, applications, motions, objections, complaints, answers, orders, agreements, and other legal papers;

- appearing in Court to present necessary motions, applications, objections, and pleadings, and otherwise protecting the interests of those represented by the Committee;

- assisting the Committee in requesting the appointment of a trustee or examiner, should such action be necessary; and

- performing such other legal services as may be required and as are in the best interests of the Committee and creditors.

11.     Subject to the Court's approval and pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other rules and procedures that this Court may fix, the Committee requests that WBD be compensated on an hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs.  WBD requests that it receives such compensation in accordance with the ordinary and customary rates which are in effect on the date the services are rendered.

12.     WBD's current hourly rates are as follows:

| | |
|---|---|
| Partners | $325 - $925 |
| Of Counsel | $330 - $890 |
| Senior Counsel | $125 - $750 |
| Counsel | $100 - $650 |
| Associates | $255 - $710 |
| Paralegals | $50 - $475 |

13.     The charges set forth herein are based upon actual time charges on an hourly basis and based upon the experience and expertise of the attorney or legal assistant involved.  The Committee understands that the hourly rates set forth are subject to periodic, typically annual, adjustments to reflect economic, and other conditions.

14.     The Committee understands that any compensation and expenses paid to WBD must be approved by this Court upon application consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of this Court respecting compensation of professionals.

15.     To the best of the Committee's knowledge and subject to the Ward Declaration and Committee Chairperson Declaration submitted herewith, WBD has informed the Committee that it represents no other entity in connection with these Chapter 11 Cases and does

not hold or represent any interest adverse to the Debtors with respect to the matters upon which it is to be employed.

## CONSENT TO JURISDICTION

16.    Pursuant to Local Rule 9013-1(f), the Committee consents to the entry of a final judgment or order with respect to this Application if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

17.    Notice of this Application has been provided to the Debtors and their counsel, the Office of the United States Trustee for the District of Delaware, Kroger, and all parties entitled to notice pursuant to Local Rule 9013-1(m).  The Committee submits that no other or further notice is required.

18.    No previous application for relief sought herein has been made to this or any other Court.

WHEREFORE, the Committee respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, authorizing the Committee to retain and employ Womble Bond Dickinson (US) LLP, as Delaware counsel to the Committee, nunc pro tunc to February 4, 2020, and grant such further relief as the Court deems just or proper.

*[Signature on following page]*

Dated:  February 21, 2020
            Wilmington, Delaware

**United Natural Foods, Inc.**

Solely in its capacity as Committee Chairperson
and not in its individual capacity


/s/ *Nicholas Leitzes*

By:  Nicholas Leitzes,
As representative of United Natural Foods,
Inc.

# **EXHIBIT A**

Proposed Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 20-10166 (JTD)<br><br>(Jointly Administered)<br><br>**Related Docket No.: ____** |

## ORDER AUTHORIZING AND APPROVING
## THE EMPLOYMENT AND RETENTION OF WOMBLE BOND
## DICKINSON (US) LLP AS COUNSEL FOR THE OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS NUNC PRO TUNC TO FEBRUARY 4, 2020

Upon the application (the "Application")[2] of the Committee for entry of an order authorizing the Committee to employ and retain WBD as counsel in the above-captioned cases nunc pro tunc to February 4, 2020; and upon the *Declaration of Matthew P. Ward* filed in support of the Application and the *Declaration of the Nicholas Leitzes* filed in support of the Application; and it appearing that proper notice of the Application has been given and that no further notice or hearing is required; and the Court being satisfied based on the representations made in the Application and the declarations that (i) WBD represents no interest adverse to the Debtors' estates or the Debtors' creditors, other than its representation of the Committee in these Chapter 11 Cases, and (ii) the employment of WBD is necessary and would be in the best interests of the Committee

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

and the estates, and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby:

**ORDERED, ADJUDGED, AND DECREED that:**

1.       The Application is hereby APPROVED.

2.       In accordance with Bankruptcy Code section 1103(a), the Committee is hereby authorized to employ and empowered to retain WBD as its counsel, <u>nunc</u> <u>pro</u> <u>tunc</u> to February 4, 2020, to represent the Committee in the Debtors' Chapter 11 Cases.

3.       WBD's compensation for services (including, but not limited to hourly rates) and reimbursement of expenses shall be subject to review pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and such other procedures as may be fixed by order of this Court.

4.       The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

# **EXHIBIT B**

Ward Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1] | Case No. 20-10166 (JTD) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF MATTHEW P. WARD IN
### SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO
### BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING AND
### APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE BOND
### DICKINSON (US) LLP AS COUNSEL <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO FEBRUARY 4, 2020

Matthew P. Ward, pursuant to 28 U.S.C. § 1746, certifies as follows:

1.      I am a partner of the law firm of Womble Bond Dickinson (US) LLP

("<u>WBD</u>")[2] which maintains an office for the practice of law at 1313 Market Street, Suite 1200,

Wilmington, Delaware 19801, as well as offices in California, the District of Columbia, Georgia,

Maryland, Massachusetts, North Carolina, South Carolina, Texas, and Virginia.  I am admitted to

practice before this Court, and will assume primary responsibility within WBD for its engagement

in these Chapter 11 Cases.

2.      I am familiar with the facts hereinafter stated, and submit this declaration

(the "<u>Declaration</u>") in support of the application (the "<u>Application</u>") of the Official Committee of

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

[2]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Application.

Unsecured Creditors (the "Committee") of the above-captioned debtors (the "Debtors") for entry of an Order authorizing and approving the employment and retention of WBD, as counsel to the Committee, nunc pro tunc to February 4, 2020.

   3. I am fully familiar with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and I am sufficiently competent to handle whatever might foreseeably be expected of the Committee's counsel in this matter.

   4. The professional services that WBD will provide to the Committee include those set forth in the Application. Subject to the Court's approval and pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules and Local Rules, and any other rules and procedures that this Court may fix, WBD will seek compensation on an hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs. WBD requests that it receive such compensation in accordance with the ordinary and customary rates that are in effect on the date the services are rendered.

   5. Set forth below is a schedule of hourly rates of certain professionals at WBD:

| | |
|---|---|
| Partners | $325 - $925 |
| Of Counsel | $330 - $890 |
| Senior Counsel | $125 - $750 |
| Counsel | $100 - $650 |
| Associates | $255 - $710 |
| Paralegals | $50 - $475 |

   6. The charges for the attorneys and legal assistants who will render services to the Committee are based upon actual time charges on an hourly basis. The hourly rates for such professionals are based upon the experience and expertise of the attorney or legal assistant involved and are subject to periodic adjustments to reflect economic and other conditions.

7.    Insofar as I have been able to ascertain, except as described herein, the other attorneys of WBD and I have no interest adverse to and no connections to the Committee, the Debtors' estates, their creditors, the United States Trustee, any person employed by the Office of the United States Trustee, the Bankruptcy Judge to whom these Chapter 11 Cases are assigned, or any other party in interest herein or their respective attorneys and accountants.[3]  Although WBD from time to time has represented and in the future may represent various entities that are creditors of the Debtors or otherwise have had or have an interest in the Debtors in matters wholly unrelated to these bankruptcy cases, WBD will not, while employed by the Committee, represent any other entity having an adverse interest in connection with these Chapter 11 Cases, absent further disclosure and to the extent that such representation would be permissible under Bankruptcy Code section 1103.

A.    **WBD's Conflict Check System**

8.    In connection with preparing this Declaration, WBD submitted the names of the individuals and entities that are currently known to be material parties and parties-in-interest in these cases (the "Parties-in-Interest") for review in the computerized conflict database system maintained by WBD.  WBD maintains and systematically updates its conflict check system in the regular course of business of the firm, and it is the regular practice of the firm to make and maintain these records.  The conflict check system maintained by WBD is designed to include every matter on which the firm is now or has been engaged, the entity for which the firm is now or has been engaged, and in each instance, the identity of related parties and adverse parties and the attorney in the firm that is knowledgeable about the matter.  It is the policy of WBD that no new

---

[3]    WBD appears in numerous cases involving a substantial number of creditors and parties-in-interest.  WBD is reviewing the parties-in-interest in this proceeding and will make every effort to disclose all connections to these parties as they become known to WBD.  Although it is not possible to guarantee that each and every connection is disclosed, WBD will file additional and supplemental disclosure statements in the event that WBD becomes aware of any additional connections.  In addition, it is possible that some creditors or parties-in-interest herein are creditors or parties-in-interest with de minimis interest in other cases in which WBD plays a role.

matter may be accepted or opened within the firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, as well as related and adverse parties.  Accordingly, the database is regularly updated for every new matter undertaken by WBD.

9.      A list of the names of the Parties-in-Interest described above, which was submitted to the conflict check system, is attached hereto as <u>Schedule 1</u>.

**B.      <u>WBD's Relationship with Parties-in-Interest in Unrelated Matters</u>**

10.      A list of the Parties-in-Interest or their affiliates with respect to which WBD serves or has served as counsel is set forth on <u>Schedule 2</u> attached hereto.  A significant part of WBD's practice includes representations of creditors' committees.  Accordingly, this exhibit includes persons that may have been members of any creditors' committee represented by WBD, in addition to WBD current and/or past clients.

11.      As disclosed in this exhibit, WBD and its partners, counsel, and associates have in the past represented, currently represent, and may in the future represent entities that are creditors of the Debtors, or other parties-in-interest in the Debtors' Chapter 11 Cases in matters unrelated to these bankruptcy cases.  Further, WBD appears in cases, proceedings, and transactions involving a substantial number of different attorneys, accountants, financial consultants, and investment bankers, some of which now or may in the future represent creditors or parties-in-interest in these cases.

12.      WBD has not agreed to share (a) any compensation it may receive with another party or person, other than with the partners, counsel, associates and other employees of WBD, or (b) any compensation another person or party has received or may receive.

13.      WBD did not receive a retainer with respect to its representation of the Committee.

14. Consistent with the Appendix B Guidelines, which became effective on
November 1, 2013, I state as follows:

(a) WBD did not agree to a variation of its standard and customary billing
arrangements for the engagement;

(b) WBD's professionals included in the engagement have not varied their rates
based on the geographic location of these Chapter 11 Cases;

(c) WBD did not represent the Committee prior to the Petition Date; and

(d) WBD is developing a staffing plan and is currently developing a
prospective budget for the Chapter 11 Cases (the "Budget and Staffing
Plan") to comply with any requests for information and additional
disclosures by the U.S. Trustee and any other orders of the Court,
recognizing that, during the course of the Chapter 11 Cases, there may be
unforeseeable fees and expenses that will need to be addressed by the
Committee and WBD. WBD and the Committee will review the Budget
and Staffing Plan throughout these Chapter 11 Cases to determine any
adjustments required to the Budget and Staffing Plan.

15. Based upon the information available to me, and except as otherwise
described herein, WBD holds no interest adverse to the Committee, the Debtors, their estates, or
creditors as to the matters in which it is to be employed.

16. If WBD discovers any connection with any interested party or enters into
any new relationship with any interested party, the firm will promptly supplement its disclosure to
the Court.

I hereby declare under the penalty of perjury that the foregoing statements made by
me are true and correct to the best of my knowledge, information, and belief.

Dated: February 21, 2020

/s/ Matthew P. Ward
Matthew P. Ward (DE Bar No. 4471)

**Schedule  1**

**Parties in Interest Searched**

**AGENT**
Asia America Direct
Bui Tran Tu
Chang Chia Yu
Chen Liqin
Dae Yang Immigration Corporation
Dexiu Hu
Gao Lin
Goldmax Immigration Consulting Co., Ltd.
Ho-Ping Lin
KZC Global Connect Limited
Le Long Hoang
Liu Jianxin
Mason's Immigration Services
Mei-Ling Chang
Min Zhang
Mu Yajia
Nana Mei
Ngar Kwan Wee
Ngo Thi Tuyet Hong
Nguyen Thi Thu Hong
Orient & Pacific Vietnam
Pacific York
Paul Bernadou & Co
Ray Immigration
Ren Guorong
Shanghai Can-Achieve Consultants Ltd
Shi Hui Chiang
Sun Chenggang
Sycamore International Consulting Co.
Truong Nguyen Thuy Tram
Tsai Hsinlun
US-Connect
Van Chau
Vu Lam
Wai Man Ho
Wei Wang
Xu Kai
Yang Wei
Younghoon Park
Yuen Hing Lam
Yuwei Gu

**Bank**
JP Morgan Chase
Meta Bank
Signature
Stockman Bank
Sun Trust

**Director/Officers**
Darling, Christopher
Gilliland, Patrick
Phillips, Michael
Pillari, Andrew
Schlotman, J. Michael
Schulte, Christopher
Seitz, Andrew
Sharon, Jason B
Woods, Maria

**Government Regulatory**
Colorado Unclaimed Property Division
Florida Unclaimed Property Division
Georgia Unclaimed Property Division
Indiana Unclaimed Property Division
Kentucky Unclaimed Property Division
Michigan Unclaimed Property Division
Missouri Unclaimed Property Division
Montana Unclaimed Property Division
Ohio Unclaimed Property Division
Wyoming Unclaimed Property Division

**Insurance**
American Zurich Insurance Company
Argonaut Great Central Insurance Company
Argonaut Insurance Company
Beazley
Great American Insurance Company
Lloyd's of London
Marsh USA, Inc.
Ohio Bureau of Work Comp
Pinnacol Assurance
Queen City Assurance
SterlingRisk
Vine Court Assurance
Wyoming Bureau of Work Comp

**Known Affiliates - JV**
LFM Jackson, LLC (Colorado)
LFM Stores LLC
Lucky's Farmers Market Holding Company, LLC
Lucky's Farmers Market of Ann Arbor, LLC (CO)
Lucky's Farmers Market of Billings, LLC (Montana)
Lucky's Farmers Market of Columbus, LLC (Ohio)
Lucky's Farmers Market of Rock Hill, LLC (Colo)
Lucky's Farmers Market Resource Center, LLC
Lucky's Farmers Market, LP
Lucky's Market 2, LP
Lucky's Market GP 2, LLC
Lucky's Market Holding Company 2, LLC
Lucky's Market of Bloomington, LLC(CO)
Lucky's Market of Gainesville, LLC(CO)
Lucky's Market of Longmont, LLC (Colorado)
Lucky's Market of Naples, FL, LLC(CO)
Lucky's Market of Plantation, LLC (Colorado)
Lucky's Market of Savannah, GA, LLC(CO)
Lucky's Market of Traverse City, LLC(CO)
Lucky's Market Operating Company, LLC
Lucky's Market Parent Company, LLC
Sinoc, Inc

**LANDLORD**
1916 LLC
425SC, LLC
7978 Associates VII, LLC (Benderson)
ARC Clorlf1001, LLC
ATA Forum Louisville KY LLC
Benderson Properties, Inc
Blackfox Parkway Associates LLC
Bre Mariner Hunters Creek, LLC
BRNK Bradenton LLC
Buffalo Ridge Center South LLC
Conis Development Co
Conis Inc
CORE Sycamore Town Center LLC

Dale Company LLC
Dania Live 1748, LLC
DDR KM Shopping Center LLC
DDRTC Cypress Trace LLC
Dixit Properties LLC
EBP 2800 North High LLC
Glades 95th LLC
Glenstone Marketplace LLC
GLL Selection II Florida LP
Griffin Farm at Midtown II, LLC
Gunbarrel Properties LLC
Halifax Associates LLC
West Park Shopping Center LLC
Woolbright Wekiva LLC
WR-I Associates LTD

**LENDER**
BBIF Subsidiary CDE 3, LLC
Gilliland, Michael
The Kroger Co.

**Lien Holder**
U.S Bank Equipment Finance
Litigation
Bryan Cave Leighton Paisner LLP Casias, Charlotte
Fisher & Phillips LLP
Hypower, Inc.
Linkhorst & Hockin, P.A. Napoleon, Marie
Sturgis, Kathleen
Welch, Tyler
Zukoski, Margaret

**PROFESSIONALS**
Alvarez and Marsal
Great American Group
Omni Agent Solutions
PJ Solomon
Polsinelli P.C.
Weil, Gotshal, and Manges LLP

**SIGNIFICANT SHAREHOLDER**
Lucky's Founders Holdings, LLC The Kroger Co.
UTILITIES
AEP Ohio

Ameren Missouri
American Waste
Beaches Energy
Blue Stream
Bright House Networks
CenturyLink
Charlotte County Utilities
Charter Communications (Spectrum Business)
Cima Energy Solutions LLC (Supreme Energy Inc)
City of Ann Arbor Water Utilities
City of Billings
City of Bloomington
City of Boca Raton
City of Boulder
City of Clermont Florida Utilities
City of Cleveland Division of Water
City of Columbia
City of Columbus
City of Fort Collins Utilities
City of Iowa City
City of Longmont Utilities
City of Missoula
City of Neptune Beach
City of Oakland Park
City of Ormond Beach
City of Panama City Utilities Dept
City of Plantation
City of Sarasota
City of Savannah
City of St Petersburg
City of Tallahassee
City of West Melbourne
City of Winter Park
City Utilities of Springfield
Collier County Public Utilities Department
Columbia Gas of Kentucky
Columbia Gas of Ohio
Comcast
Constellation Energy Services
Cox Communications Inc
DirecTV
Dish Network
Dominion Energy Ohio

DTE Energy
Duke Energy
Federal International Recycling And Waste Solutions, LLC
Fireside Natural Gas LLC
Florida Natural Gas
Florida Power & Light
Florida Public Utilities
FPL Energy Services
Gainesville Regional Utilities
Georgia Power
Grand Traverse County DPW
Gulf Power
Illuminating Company
JEA
Kentucky American Water
Kentucky Utilities Company
Lake Apopka Natural Gas District
Lee County Utilities
Lexington-Fayette Urban County Government LG&E
Louisville Water Company
Lower Valley Energy
Market at McKnight 1 LLC
MCI Communications
Mediacom
MidAmerican Energy Company
Missoula Compost Collection LLC
Missoula Water
Montana-Dakota Utilities Company
National Exemption Service
Northeast Ohio Regional Sewer District
Northwestern Energy
Orange County Utilities
Organix Recycling LLC
Orlando Utilities Commission
Republic Services
Royal Waterworks, Inc.
Rumpke Inc
Silver Star Communications
Smithville Communications
Spectrum
Spire, Inc.
TECO Energy
TECO Peoples Gas
Think Utility Services

Time Warner Cable
Traverse City Light & Power
Vectren
Waste Management
Waste Pro
WCA Waste Systems Inc
West Bank Sanitation
Western Disposal Services
Wheat Ridge Sanitation District
Wheat Ridge Water District
Xcel Energy
XO Communications

**Vendor**
5 Star Refrigeration & Air Conditioning
A-1 Daylighting LLC
ABS Facility Maintenance
Advanced Refrigeration & Air
Advertising With Wit Inc
Alberts Organics Inc
Amazon
American Outdoor Products Inc
Americana Companies Inc
Ampro
Aramark & Career Apparel Group
Barbers Inc.
Benderson Properties, Inc.
Blackhawk Network, Inc
Bluebird Botanicals
Bluesoho
Boiron USA Inc
Borden Dairy Company
Brad Fisher
Breadworks
Briggs Distributing Co Inc
Bunzl Holdings, Inc.
Burkhardt Distributing Co Inc
Burts Bees
Caito Foods LLC
Caito Foods Service
Captiveaire Systems Inc
Carbamericas Inc.
Cardlytics Inc
Carroll Distributing Company
Case Contracting Company
Cavalier Distributing

CBDRX Inc
Central Bag & Burlap
Century Fire Protection
Ceridian HCM,Inc.
Champion Brands Inc
Charlies Produce
Chelan Fresh Marketing
City Beverages
Coastal Beverage Ltd
Coker Construction
Cone Distributing Inc
Conis Development Co
Continental Flowers
Cornerstone On Demand Inc
Country Life LLC
Cozzini Bros Inc
Crosset Company LLC
CV Sciences Inc
CWB Holdings Inc
Dade Paper & Bag Co
Design Design Inc
Digital Evolution Group, LLC
Divisions Maintenance Group
Double Eagle Distribution
EAN Services LLC
Ecolab Pest Elimination Division
Farm Boy Produce LLC
Farmer Mikes Produce Inc
FBC of Denver LLC
Flexprint LLC
Flora Fine Foods
Florida Distribution Company
Florida Power & Light
Flowers Baking Co of Bradenton
Frangiosa Farms LLC
Freshpoint of Central Florida
Freshpoint of Denver
Full Spectrum Distribution
Gaia Herbs Inc
Garda CL Inc
Garden of Life
Georges Distributing
Gexpro
Global Axiom, Inc.
Gold Coast Beverage
Gourmet Foods International

Gourmet International Ltd
Granite Telecommunications
Great Bay Distributors Inc
Great Lakes Wine & Spirits - General Wine
Great Plains Beef LLC
GSP Marketing Technologies Inc
Halperns Steak & Garys Seafood
Harvest Meat Company Inc
Heidelberg Dist
High Country Beverage Corporation
Horizon Food Equipment Inc
Hussmann Corporation
Hydro Flask USA
1G Consulting, LLC
Imperial Beverage Co - Elite B
Insignia Systems Inc
Intermountain Dist Co
International Wine and Spirits
Irwin Naturals
Iverify Inc
J Raymond Construction Corp
Jackson Hole/Teton Distributing
Jarrow Formulas Inc
JDA Software Inc
JJ Taylor Distributing Florida
John Boos & Co
Johnson Brothers
Kikkerland Design Inc
KPS Global LLC
Kronos Incorporated
Lewan & Associates Inc
Loco Food Distribution
Lohmiller & Company
Lohr Distributing Company Inc
Magnolia River Manufacturing C
Major Brands
Mcclains Old Florida Gourmet
MCG Architecture
Mcgregor's Greens LLC
Megafood
Mettler-Toledo LLC
Middleby Advantage
Mineral Fusion Natural Brands
Mission Foods
Murphy Company
Natural Products Group

Neelands USA Ltd
Nikko Enterprise Corporation
Nordic Naturals Inc
North Bay Produce, Inc.
North Florida Sales
Now Foods
Nutraceutical Corporation
Nutranext Business LLC
0 & W Inc
Onesource Magazine Dist LLC
Online Freight Services Inc
Opici Family Distributing
Organicgirl, LLC
Orvino Imports & Distributing
Osprey Beverages LLC
Pacifica Beauty
Paycom Payroll LLC
PCM Sales Inc
PDF Foods LLC
Pepsi Beverages
Prairie Farms Dairy
Prairie Farms Dairy Missouri
Premier Beverage Company LLC
Produce Exchange, Co., Inc.
Progressive Distribution LLC
Proguard Service and Solutions
PTM Consulting LLC
PTR Baler and Compactor Compan
Pure Hothouse Foods Inc.
Pure Water Technologies #1 LLC
Purevision Technology Inc
Quality Casing Company Inc
Rave Associates Inc
Reed Transport Services, Inc.
Reliance Vitamin Co Inc
Renew Life Formulas, Inc.
Republic National Distributing Company
Republic Services
Restorative Botanicals LLC
Rocky Mountain Eggs Inc
Rocky Mountain Reserve
Royal Crest Dairy Inc
Schmid Construction
Schwabe North America Inc
Seasons-4 Inc
Seattle Fish Company

Seattle Fish Company Int
Shamrock Foods Company
Sherwood Food Distributors
Siemens Industry Inc
Snyder Construction Inc
Softchoice Corporation
Source Refrigeration & HVAC Inc
Southern Glazers Wine and Spir
Southern Style Spices
Southgate Mall Montana II LLC
Staples Business Advantage
Summit Beverage
Suncity Produce Co
Superior Beverage Group
Sysco Central Florida Inc
Sysco Denver Inc
Sysco Detroit LLC
Sysco Food Services Cleveland
Sysco Grand Rapids
Sysco Gulf Coast Inc
Sysco Indianapolis LLC
Sysco Intermountain
Sysco Jacksonville Inc
Sysco Kansas City Inc
Sysco Louisville Inc
Sysco Montana Inc
Sysco Southeast Florida
Sysco St Louis LLC
Sysco West Coast Florida Inc
Tarrant Lighting
Teague Freyaldenhoven Freyalde Architects
& Planners LLP
Tennant Sales and Service Company
The Kroger Co.
Thomas Sign and Awning Company
Thomas Sign And Awning Company Inc
Toshiba Global Commerce Solutions Inc
Trade Fixtures LLC
Tri-Eagle Sales
Trillium Service Companies LLC
Troyers of South Florida
Truno Retail "technology Solutions
Tundra Restaurant Supply Inc
UNFI
Van Solkema Produce of Georgia
Vintage Wine

Vital Proteins LLC
Vitality Works Inc
Wasserstrom
Waste Management
WD Partners Inc
Western Paper Distributors Inc
Winebow
Wyoming Liquor Division

| Party In Interest | Role in Case | Connection |
|---|---|---|
| AEP Ohio | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Alvarez & Marsal | Professional | Womble has in the past represented this professional in matters unrelated to these chapter 11 cases. |
| Amazon | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| American Zurich Insurance Company | Insurance | Womble Bond Dickinson (UK) LLP and Womble currently does and in the past has represented this entity in matters unrelated to these chapter 11 cases. |
| Aramark | Vendor | Womble Bond Dickinson (UK) LLP and Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Argonaut Great Central Insurance Company | Insurance | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Beazley | Insurance | Womble Bond Dickinson (UK) LLP and Womble currently does and in the past has represented this entity in matters unrelated to these chapter 11 cases. |
| Blackhawk Network, Inc. | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Bryan Cave Leighton Paisner LLP | Lien Holder | Womble currently does and has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Caito Foods LLC | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Cardlytics | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| CenturyLink | Utility | Womble currently does and has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Champion Brands Inc. | Vendor | Womble currently does and has in the past represented this entity and certain of its affiliates in matters unrelated to these chapter 11 cases. |
| Charter Communications | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Cima Energy Solutions LLC (Supreme Energy Inc.) | Utility | Womble has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Comcast | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Cornerstone On Demand Inc. | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Cox Communications, Inc. | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| DDRTC Cypress Trace LLC | Landlord | Womble has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| DirecTV | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Dish Network | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |

1

Schedule 2

| Party In Interest | Role in Case | Connection |
|---|---|---|
| Domninion Energy | Utility | Womble currently does and has in the past represented this affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Duke Energy | Utility | Womble currently does and has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Fisher & Phillips LLP | Lien Holder | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Florida Power & Light | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Freshpoint | Vendor | Womble has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Georgia Power Company | Utility | Womble currently does and has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Granite Telecommunications | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Great American | Professional | Womble has in the past represented this professional in matters unrelated to these chapter 11 cases. |
| Great American Insurance Company | Insurance | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Halperns Steak & Garys Seafood | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Hypower, Inc. | Lien Holder | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Irwin Naturals | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| JP Morgan Chase | Bank | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Kroger | Lender | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Kronos Incorporated | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Lloyd's of London | Insurance | Womble currently does and has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Marsh USA, Inc. | Insurance | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| MCI Communications | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Mediacom | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Meta Bank | Bank | Womble has in the past represented this entity and certain of its affiliates in matters unrelated to these chapter 11 cases. |

| Party In Interest | Role in Case | Connection |
|---|---|---|
| Mettler-Toledo LLC | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Michael Philips | Directors/Officers | Womble has in the past represented individuals by this name. |
| Nutraceutical Corporation | Vendor | Womble Bond Dickinson (UK) LLP has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Pepsi | Vender | Womble currently does and has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Polsinelli | Professional | Womble has in the past represented this professional in matters unrelated to these chapter 11 cases. |
| Republic Services | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Siemens Industry Inc. | Vendor | Womble currently does and has in the past represented this entity and certain of its affiliates in matters unrelated to these chapter 11 cases. |
| Signature Bank | Bank | Womble has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Silver Star Communications | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Spectrum | Utility | Womble has in the past represented this entity and its affiliates in matters unrelated to these chapter 11 cases. |
| Staples Inc. | Vendor | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| SterlingRisk | Insurance | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Sysco | Vendor | Womble has in the past represented this entity and certain of its affiliates in matters unrelated to these chapter 11 cases. |
| Time Warner Cable | Utility | Womble has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Toshiba Global Commerce Solutions Inc. | Vendor | Womble has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| U.S. Bank Equipment Finance Litigation | Lien Holder | Womble currently does and has in the past represented this entity and affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Vectren | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Waste Management | Utility | Womble has in the past represented affiliates of this entity in matters unrelated to these chapter 11 cases. |
| Waste Pro USA, Inc. | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |
| Weil Gotshal & Manges | Professional | Womble has in the past represented this professional in matters unrelated to these chapter 11 cases. |
| XO Communications | Utility | Womble has in the past represented this entity in matters unrelated to these chapter 11 cases. |

# **EXHIBIT C**

Leitzes Declaration

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUCKY'S MARKET PARENT COMPANY, LLC, *et al.*,[1] | Case No. 20-10166 (JTD) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF NICHOLAS LEITZES
### IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING AND
### APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE BOND
### DICKINSON (US) LLP AS COUNSEL <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO FEBRUARY 4, 2020

I, Nicholas Leitzes, representative of United Natural Foods, Inc., solely in my capacity as the Chairperson of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the above-captioned cases (the "<u>Chapter 11 Cases</u>"), hereby submits this declaration pursuant to 28 U.S.C. 1746 and respectfully states as follows:

1.    I am over the age of 21 years old and a representative of Chairperson of the Committee.  The Committee was appointed by the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") on February 4, 2020.

2.    I have read and am familiar with the contents of the *Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Lucky's Market Parent Company, LLC (2055), Lucky's Farmers Market Holding Company, LLC (5480), Lucky's Market Operating Company, LLC (7064), LFM Stores LLC (3114), Lucky's Farmers Market, LP (0828), Lucky's Farmers Market Resource Center, LLC (7711), Lucky's Market Holding Company 2, LLC (0607), Lucky's Market GP 2, LLC (9335), Lucky's Market 2, LP (8384), Lucky's Market of Longmont, LLC (9789), Lucky's Farmers Market of Billings, LLC (8088), Lucky's Farmers Markets of Columbus, LLC (3379), Lucky's Farmers Market of Rock Hill, LLC (3386), LFM Jackson, LLC (8300), Lucky's Farmers Market of Ann Arbor, LLC (4067), Lucky's Market of Gainesville, LLC (7877), Lucky's Market of Bloomington, LLC (3944), Lucky's Market of Plantation, LLC (4356), Lucky's Market of Savannah, GA, LLC (1097), Lucky's Market of Traverse, City, LLC (2033), Lucky's Market of Naples, FL, LLC (8700), and Sinoc, Inc. (0723).

*Employment and Retention of Womble Bond Dickinson (US) LLP as Counsel Nunc Pro Tunc to February 4, 2020* (the "Application")[2] filed contemporaneously herewith.

3.    This Declaration is provided pursuant to ¶ D.2 of the Appendix B Guidelines.  I am informed by Committee counsel that the Appendix B Guidelines request that any application for employment of an attorney under 11 U.S.C. §§ 327 or 1103 be accompanied by a verified statement from the client that addresses the following:

(a)    The identity and position of the person making the verification.

(b)    The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

(c)    The number of firms the client interviewed.

(d)    If the billing rates are not comparable to the applicant's billing rates for other non-bankruptcy engagements and to the billing rates of other comparably skilled professionals, then the circumstances warranting the retention of that firm.

(e)    The procedures the client has established to supervise the applicant's fees and expenses and to manage costs.  If the procedure for the budgeting, review and approval of fees and expenses differ from those the client regularly employs in non-bankruptcy cases to supervise outside general counsel, explain how and why.  In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

## A.    Identity of the Declarant

4.    On February 4, 2020, I was appointed to the Committee and was subsequently elected Chair of the Committee.  Under the Bylaws of the Official Committee of Unsecured Creditors of Lucky's Market Parent Company, LLC, *et al*. (the "Bylaws"), the Chair of the Committee, by and through its representatives, has the authority to sign documents on behalf

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

of, and to bind the Committee as appropriate to implement decisions of the Committee made in accordance with the Bylaws. I am authorized to make this Declaration on behalf of the Chair of the Committee.

5. The Committee interviewed several firms for the position of its counsel in these Chapter 11 Cases on February 4, 2020. At the conclusion of the interviews, the Committee selected Hahn & Hessen LLP to serve as its lead counsel, Womble Bond Dickinson (US) LLP ("WBD") to serve as its Delaware counsel, and Norton Rose Fulbright US LLP to serve as its special litigation counsel in these Chapter 11 Cases. Each retention is subject to Court approval. In connection with the interviews, the Committee evaluated the breadth of the firms' experience and particular areas of expertise, the firms' prior history of representing committees in chapter 11 cases, and the anticipated attorneys' fees to be billed in connection with these cases.

6. The Committee selected WBD as its Delaware counsel because of the firm's extensive experience and knowledge in representing various constituents this Court.

**B.  Steps Taken to Ensure Comparability of Engagement Terms**

7. WBD has informed the Committee that its currently hourly rates are its standard hourly rates for work of this nature. WBD further informed the Committee that its hourly rates are subject to periodic, typically annual, adjustments to reflect economic and other conditions. WBD confirmed that, while its billing rates vary from attorney to attorney based on such facts as the attorney's seniority and position with the firm (*e.g.*, partner, counsel, or associate), years of experience, and the demand for services in the attorney's particular area of expertise, the billing rates quoted to the Committee are WBD's customary billing rates.

8. The Committee has discussed a prospective budget and staffing plan for the Committee's professionals these cases, recognizing that in the course of large cases like these

Chapter 11 Cases, it is possible and in fact may be likely that there may be a number of unforeseen fees and expenses that will need to be addressed by the Committee and its counsel and that the budget and staffing plans may need to be amended and modified.

**C.      Procedures Established to Supervise Fees and Expenses and Manage Costs**

9.      The Committee recognizes that it is its responsibility to review the billing practices of its counsel to ensure that the fees and expenses paid by the Debtors' estates remain consistent with the Committee's expectations and the exigencies of these Chapter 11 Cases.

10.      The Committee will review the invoices that WBD submits and, together with the Committee's advisors, as necessary, will periodically amend the budget and staffing plans as these Chapter 11 Cases develop.

11.      The Committee understands that WBD's fees and expenses: (a) will be subject to review, comment and objection (if warranted), and Court approval; and (b) will be subject to the periodic review on an interim and final basis during the course of these Chapter 11 Cases by the U.S. Trustee and the Debtors, as well as by the Committee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  February 21, 2020
        Wilmington, Delaware

**United Natural Foods, Inc.**

Solely in its capacity as Committee Chairperson and not in its individual capacity


*Nicholas Leitzes*
_____

By:  Nicholas Leitzes,
As representative of United Natural Foods, Inc.

# **EXHIBIT 10**

Application of the Official Committee of Unsecured Creditors for an
Order Pursuant to Bankruptcy Code Sections 328(a) and 1103
Authorizing and Approving the Employment and Retention of Womble
Bond Dickinson (US) LLP as Counsel Effective as of October 29, 2021,
filed in *In re Red River Waste Solutions*, *LP*

WOMBLE BOND DICKINSON (US) LLP
Todd A. Atkinson (Texas Bar No. 24121426)
811 Main Street, Suite 3130
Houston, Texas 77002
Telephone: (346) 998-7801
Facsimile: (346) 998-5901
Email: todd.atkinson@wbd-us.com

Matthew P. Ward (admitted *pro hac vice*)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com

*PROPOSED COUNSEL TO THE OFFICIAL*
*COMMITTEE OF UNSECURED CREDITORS*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RED RIVER WASTE SOLUTIONS, LP,[1] | Case No. 21-42423 (ELM) |
| Debtor. | |

## APPLICATION OF THE OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO
## BANKRUPTCY CODE SECTIONS 328(a) AND 1103 AUTHORIZING AND
## APPROVING THE EMPLOYMENT AND RETENTION OF WOMBLE BOND
## DICKINSON (US) LLP AS COUNSEL EFFECTIVE AS OF OCTOBER 29, 2021

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 16, 2021 AT 1:30 P.M. (CENTRAL TIME) BEFORE THE HONORABLE EDWARD L. MORRIS, IN THE ELDON B. MAHON U.S. COURTHOUSE, AND MAY BE ATTENDED REMOTELY (BY VIDEO AND TELEPHONE VIA THE COURT'S WEBEX PLATFORM) AS SET FORTH IN GENERAL ORDER 2021-06. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS**

---

[1] The last four digits of the Debtor's taxpayer identification number are 8719. The Debtor's principal office is located at 4004 East Hwy, 290 West, Dripping Springs, Texas 78620.

PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE (23) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

WEBEX CONNECTION INFORMATION AND INSTRUCTIONS MAY BE FOUND IN GENERAL ORDER 2021-06 AND CLERK'S NOTICE 21-05. WEBEX HEARING INSTRUCTIONS FOR THE HONORABLE EDWARD L. MORRIS MAY BE FOUND AT THE FOLLOWING WEB ADDRESS:

> https://www.txnb.uscourts.gov/content/judge-edward-l-morris-0

**For WebEx Video Participation/Attendance:**

> Link: https://us-courts.webex.com/meet/morris

**For WebEx Telephonic Only Participation/Attendance:**

> Dial-In:  1.650.479.3207

> Meeting ID:  473 581 124

**ALL PARTIES MAY ACCESS COPIES OF THE DEBTOR'S FILINGS ON THE WEBSITE OF THE DEBTOR'S PROPOSED CLAIMS AND NOTICING AGENT AT: https://cases.stretto.com/RedRiverWasteSolutions OR CALL (855) 287-3382.**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy case of the above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and applicable to the above-captioned case, the "Bankruptcy Code"), Rule 2014(a) of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2014-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Bankruptcy Rules"), and the United States Trustee's *Appendix B - Guidelines for Reviewing Applications for Compensation*

*and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "Appendix B Guidelines"), authorizing and approving the employment and retention of Womble Bond Dickinson (US) LLP ("WBD"), as counsel for the Committee, effective as of October 29, 2021. In support of this Application, the Committee submits the *Declaration of Matthew P. Ward in Support of the Application*, attached hereto as Exhibit B (the "Ward Declaration"), and the *Declaration of Richard Sedory in Support of the Application*, attached hereto as Exhibit C (the "Committee Chairperson Declaration"), and respectfully states as follows:

## BACKGROUND

1. The Debtor, on October 14, 2021 (the "Petition Date"), commenced its chapter 11 case by filing a voluntary petition in this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case.

2. On October 28, 2021, the United States Trustee appointed the Committee in this Chapter 11 Case pursuant to section 1102(a)(1) of the Bankruptcy Code. *See* Docket Nos. 86, 89. The Committee is comprised of the following five (5) members: (i) Isolina Ball; (ii) Best One Kentuckiana; (iii) Interstate Billing Service, Inc.; (iv) Pico Propane Operating, LLC; and (v) Toter, LLC. On October 29, 2021, the Committee selected WBD to serve as its counsel. The Committee has selected Rock Creek Advisors LLC to serve as its financial advisor.

3. Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this Chapter 11 Case is set forth in the

*Declaration of James Calandra in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2].

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code sections 328 and 1103.  The requested relief is also appropriate pursuant to Bankruptcy Rule 2014.

## RELIEF REQUESTED

5.      By this Application, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, authorizing and approving the employment of WBD as counsel to the Committee to perform services relating to this Chapter 11 Case, effective as of October 29, 2021.

6.      Bankruptcy Code section 328(a) empowers a committee appointed under Bankruptcy Code section 1102, with the Court's approval, to employ attorneys under Bankruptcy Code section 1103 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis, to perform services for such committee.

7.      Pursuant to Bankruptcy Code section 1103(b), an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.  WBD has advised the Committee that WBD does not represent any other entity having an adverse interest in connection with this Chapter 11 Case and does not have any disabling connections with the United States Trustee, any person employed by the Office of the United States Trustee, or the Bankruptcy Judge to whom these cases are assigned.  Submitted herewith is the Ward Declaration, which sets forth WBD's connections with the Debtor, its creditors, and other parties-in-interest.

8. The Committee has selected WBD as its counsel because of its attorneys' experience and knowledge before this Court and U.S. Bankruptcy Courts nationwide. The Committee believes that WBD is well-qualified to represent the Committee in this Chapter 11 Case.

9. The professional services that WBD will provide to the Committee include, but are not limited to, the following:

- providing legal advice as necessary with respect to the Committee's powers and duties as an official committee appointed under Bankruptcy Code section 1102;

- assisting the Committee in investigating the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's businesses, potential claims, and any other matters relevant to the case, to the sale of assets, or to the formulation of a plan of reorganization or liquidation (a "Plan");

- participating in the formulation of a Plan;

- providing legal advice as necessary with respect to any disclosure statement and Plan filed in this Chapter 11 Case and with respect to the process for approving or disapproving disclosure statements and confirming or denying confirmation of a Plan;

- preparing on behalf of the Committee, as necessary, applications, motions, objections, complaints, answers, orders, agreements, and other legal papers;

- appearing in Court to present necessary motions, applications, objections, and pleadings, and otherwise protecting the interests of those represented by the Committee;

- assisting the Committee in requesting the appointment of a trustee or examiner, should such action be necessary; and

- performing such other legal services as may be required and as are in the best interests of the Committee and creditors.

10. Subject to the Court's approval and pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other rules and

procedures that this Court may fix, the Committee requests that WBD be compensated on an

hourly basis, plus reimbursement of the actual and necessary expenses that WBD incurs. WBD

requests that it receive such compensation in accordance with the ordinary and customary rates

which are in effect on the date the services are rendered.

11.     WBD's current hourly rates are as follows:

| Timekeeper Position | Hourly Rate |
|---|---|
| Partners | $325 - $995 |
| Of Counsel | $370 - $985 |
| Senior Counsel | $125 - $710 |
| Counsel | $100 - $740 |
| Associates | $285 - $755 |
| Paralegals | $50 - $500 |

12.     The charges set forth herein are based upon actual time charges on an

hourly basis and based upon the experience and expertise of the attorney or paraprofessional

involved. The Committee understands that the hourly rates set forth are subject to periodic,

typically annual, adjustments to reflect economic and other conditions.

13.     The Committee understands that any compensation and expenses paid to

WBD must be approved by this Court upon application consistent with the Bankruptcy Code, the

Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of this Court respecting

compensation of professionals.

14.     To the best of the Committee's knowledge and subject to the Ward

Declaration and Committee Chairperson Declaration submitted herewith, WBD has informed the

Committee that it represents no other entity having an adverse interest in connection with this

Chapter 11 Case.

**NOTICE**

15.     Notice of this Application will be served on (a) counsel to the Debtor, (b) the Office of the United States Trustee, and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.

16.     No previous application for relief sought herein has been made to this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

WHEREFORE, the Committee respectfully requests that this Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Committee to retain and employ Womble Bond Dickinson (US) LLP as counsel to the Committee, effective as of October 29, 2021, and grant such further relief as the Court deems just or proper.

Dated: November 18, 2021         **TOTER, LLC**

Solely in its capacity as Committee Chairperson and
not in its individual capacity

DocuSigned by:

*Richard Sedory*

4689544D817F4D0...

_____

By: Richard Sedory
As representative of Toter, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 18, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

<div align="right">

*/s/ Todd A. Atkinson*

Todd A. Atkinson (Texas Bar No. 24121426)

</div>

# EXHIBIT 11

United States Trustee's Statement Concerning Suri Realty, LLC's and Carla's Pasta, Inc.'s Applications to Retain Locke Lord LLP as Their Bankruptcy Counsel filed in *In re Carla's Pasta, Inc. and Suri Realty, LLC*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

_____

| | |
|---|---|
| In re: | Chapter 11 |
| **CARLA'S PASTA, INC., and** | **Case No. 21-20111 (JJT)** |
| **SURI REALTY, LLC,** | **Case No. 20-21270 (JJT)** |
| **Debtors.** | **(Jointly Administered)** |

_____

### UNITED STATES TRUSTEE'S STATEMENT CONCERNING SURI REALTY, LLC'S AND CARLA'S PASTA, INC.'S APPLICATIONS TO RETAIN LOCKE LORD LLP AS THEIR BANKRUPTCY COUNSEL

William K. Harrington, United States Trustee for Region 2 ("United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5), respectfully files this Statement, through his undersigned counsel, concerning Carla's Pasta, Inc.'s ("Carla's") and Suri Realty, LLC's ("Suri") (collectively "Debtors") Applications to Retain Locke Lord, LLP as its bankruptcy counsel. In support of his Statement, the United States Trustee, through his undersigned counsel, states the following:

### I.      GENERAL BACKGROUND

1.      On October 29, 2020, a Chapter 7 involuntary petition for relief was failed against Suri. Case No. 20-21270, ECF 1. On November 24, 2020, Suri filed a "Response to the Involuntary Petition and Request to Convert . . . to a Voluntary Chapter 11 Case." Case No. 20-21270, ECF 9. On December 17, 2020, the Bankruptcy Court entered an Order converting Suri's alleged involuntary Chapter 7 case to a voluntary case under Chapter 11. Case No. 20-21270, ECF 30. On January 22, 2021, Suri filed its Application to Retain Locke Lord, LLP as its bankruptcy counsel. Case No. 20-21270, ECF 48.

1

2.     On February 8, 2021, Carla's filed a "bare-bones" voluntary petition for relief under Chapter 11 of the Bankruptcy Code. ECF 1. On February 24, 2021, Carla's filed its bankruptcy schedules and Statement of Financial Affairs. ECF 161 and 162, respectively. Carla's Meeting of Creditors was held on March 5, 2021 and was continued to March 26, 2021 at 2:00 p.m. to allow for the filing of amendments and for further testimony. ECF 234.

3.     On February 12, 2021, the Court entered an Order granting the Debtors respective bankruptcy cases joint administration under Case No. 21-20111. ECF 91. On February 18, 2021, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in the Carla's case. ECF 131. The Committee has proposed the law firm of Green & Sklarz, LLC as its bankruptcy counsel. ECF 214 and 215.

4.     The United States Trustee's instant statement addresses the two Applications filed by the Debtors: (a) Suri's Application to Retain Locke Lord, LLP ("Locke Lord") Case No. 20-21270, ECF 48, and (b) Carla's Application to Retain Locke Lord. ECF 122.

5.     Suri is a wholly owned subsidiary of Carla's. Suri is the fee simple owner of the two real estate parcels upon which Carla's conducts its manufacturing and sales operation. Until approximately 2017, the real property now owned by Suri was owned in fee simple by the majority shareholder of Carla's – Carla Squatrito. Suri was created in or around 2017 to hold the real property which Carla Squatrito transferred to it in or around 2017 and which it now owns in fee simple.

6.     Up until approximately the time Carla Squatrito transferred her ownership interest in the two real property parcels where Carla's presently conducts business to Suri, one or more leases existed between Carla Squatrito, as landlord and Carla's as tenant existed. Carla's

2

employees have testified, and Carla's proposed counsel has represented that those leases are no longer in effect and have not been in effect for "years,"

7.     Also, according to the testimony of Carla's employees and the representation of Carla's proposed counsel, Suri has not "paid" traditional rent at least since the time of the expiration of the former leases.

## II.     SPECIFIC FACTS AND ISSUES

**Intercompany Claims:**

8.     Carla's employees have testified, and it has been represented by Carla's proposed counsel that Suri did not pay its obligations when such became due but depended upon Carla's to pay Suri's obligations.  It has been suggested, but not  established  that payments made by Carla's on behalf of Suri were or should be treated as "in lieu of rent" payments.  Debtors' employees testified and Debtors' proposed counsel suggest that there is a "use and occupancy" agreement between Suri and Carla's; however, the United States Trustee has not been given a copy of such an agreement. ECF 122, ¶ 19.  The United States Trustee has no evidence of how long such a "use and occupancy" agreement, whether oral or written, has been in place.

9.     There has been no determination, or the United States Trustee is unaware of such, as to what an appropriate "market rate" of rent which should have or should be paid to Suri by Carla's since the last payment made under the former leases between Suri and Carla's.

10.     Suri's and Carla's creditor bodies, except for secured creditors BMO Harris Bank ("BMO Harris") and Peoples United Bank "PUB") (collectively "Banks"), are not the same with, for example, Dennis Engineering ("Dennis") has a claim of more than $13 million against Suri but not Carla's and Carla's listed over $14 million in trade, service and professional claims on its Schedule E/F which are not shared by Suri.

11.    The Banks, jointly, assert a pre-petition claim of more than $37 million against both Suri and Carla's which is secured by all the Debtors' assets with the possible statutory exception of purchase-money security interests on individual assets.  As debtor-in-possession lenders, the Banks may claim that they have a super-priority administrative claim and secured claim superior even to any such purchase-money security interests. As part of the Bank's "super-priority" claims for providing debtor-in-possession financing, the Banks claim a lien on Chapter 5 claims to the extent of their $800 Thousand post-petition lending. ECF 189.

12.    At the present time, it does not seem likely that the total value of Debtors' assets including Suri's real property and Carla's business assets and good-will reach beyond the Bank's pre-petition claims.

13.    The Debtors, with the Bank's consent, are presently seeking to market and sell substantially all the Debtors' assets on or before April 30, 2021 which sale process, if approved by the Court, will test the combined value of Debtors' bankruptcy estates' assets. ECF 28.

**Possible Claims Against Debtors' Insiders**

14.    It has not yet been established when the Debtors' became "insolvent."  The Debtors' employees have testified that at least three members of the Squatrito family, all significant shareholders of Carla's, received salaries of $500 Thousand per annum for serving as managers of Carla's prior to taking reductions in salary as the bankruptcy filings approached.  There has been no analysis, or the United States Trustee is unaware of one, of whether the any portion of the $1.5 Million annual salaries of the owner/managers may be subject to avoidance by the Debtors' or more likely by the Committee should the Committee request and the Court approve such authority.

4

**Possible Conflicts of Interest**

15.     Locke Lord admits to past and present representation of secured creditor PUB.
ECF 122, ¶ 15.  Locke Lord states that it has conflict waivers from both PUB and the Debtors;
however, Locke Lord has neither filed those conflict waivers for inspection nor otherwise
made them available to the Court, Committee, United States Trustee, creditors, or other parties
in interest. ECF 122, ¶ 16.

16.     Locke Lord states that it has "built" a "wall" between those employees
representing the Debtors and those representing other clients with interests adverse to the
Debtors which Locke Lord calls "screened employees." ECF 122, ¶ 17.  Locke Lord, however,
has neither supplied a list of which of its employees have either recently worked for a client
with an interest adverse to the Debtors, including but not limited to PUB, nor which of its
employees have recently worked, are presently working, or are expected to work for the
Debtors in their bankruptcy cases which will allow the Court, Committee, United States
Trustee, creditors and other parties in interest to determine, independent of Locke Lord's
assurances to the contrary, that such a "wall" has not, is not and will not be breached.

17.     Although, Locke Lord states that it has implemented "procedures" to block its
screened employees from accessing Debtors-related materials stored in its electronic document
management system, there is no description as to how that is being accomplished. ECF 122, ¶
18.

18.     The Debtors' state that to the best of their knowledge, there were no crossclaims
between the Debtors as of the petition date. ECF 122, ¶ 19.  As stated in paragraphs 8 and 9
above, there is reason to believe that a possible crossclaim for rent due Suri from Carla's may
exist, at least during the period of Debtors' pre-petition insolvency, which has yet to be vetted

either by the Debtors or the Committee. The Debtors have not filed an amendment to their respective schedules to acknowledge this possible claim. *See* Case Dockets, respectively.

19.    Contrary to the Debtors' statement in paragraph 18 above that they know of no crossclaims between them, the Debtors then admit that "intercorporate obligations" between an affiliated landlord and affiliated business operating tenant "are common." ECF 122, ¶ 19(c). The Debtors go further and acknowledge that "use and occupancy obligations" are an issue in Debtors' cases but do not consider such issues to be material. *Id*.

20.    The United States Trustee, and hopefully the Committee, does see the possible "use and occupancy obligation" of Carla's to Suri, at least during the time of the Debtors' pre-petition insolvency, to be an issue especially in a case where any dividend to general unsecured creditors in either of the Debtors' Chapter 11 cases will largely, if not wholly, depend upon potential Chapter 5 or other recoveries against "insiders."

### Locke Lord's Pre-petition Receipt of Fees from the Debtors

21.    Locke Lord has filed a Rule 2016(b) form which states that it has received and has expended the sum of $209,149.50 from the two Debtors "as of the petition date." ECF 122-2, page 22. The Rule 2016(b) form also states that Locke Lord is not holding any retainer given by the Debtors. *Id*.

22.    In Locke Lord's Rule 2016(b) statement in Carla's case, it states that it did not accept (or receive) a retainer. ECF 122-2, page 22. In Locke Lord's Rule 2016(b) statement in Suri's case, it states that it did not accept (or receive) a retainer. Case No. 20-21270, ECF 48-1, page 12. Locke Lord's statements that it has not received a retainer from either of the Debtors must be questioned as upon the "transfer" of one or both Debtor's representation from Mintz

6

Levin Cohn Ferris Glovsky and Popeo, P.C. to Locke Lord, a "retainer balance" of approximately $68 Thousand was transferred to Locke Lord. ECF 122, page 9, fn 3.

23.    Locke Lord has filed its retention agreement with the Debtors dated January 27, 2021 which confirms its attorney/clients relationship. ECF 122-2, pages 25 – 33.  It appears that Carla's principal shareholder and manager Carla Squatrito signed the "acceptance" of the Locke Lord retention on January 19, 2021. *Id*. at page 33.

24.    The United States Trustee has not yet requested or otherwise received the pre-petition hourly billing and support thereof from Locke Lord but expects to do so to examine whether Locke Lord's pre-petition billings and receipt of $209,149.50 was appropriate and not subject to recapture by the Debtors or the Committee for the benefit of the Debtors' respective bankruptcy estates.

**Locke Lord's Range of Hourly Fees:**

25.    Locke Lord discloses that its "current hourly rates for professionals anticipated to dedicate material time to this engagement range from $570 - $620 for associates and $690 - $765 for partners." ECF 122, ¶ 22.  The Locke Lord Application does not identify which partners and associates are either presently assigned or are anticipated to be assigned to work on the Debtors' bankruptcy cases or states the hourly rates of those attorneys.  In a footnote, Locke Lord states that as a courtesy to the Debtors, it is giving Debtors a "discount" of 10 percent.  It is not at all clear whether the hourly rates noted above include the Locke Lord "discount" or not.

26.    The United States Trustee suggests that the hourly fees for professionals by Locke Lord far exceed those charged for a similarly experienced firm for the work that is required by the Debtors which is simply the sale of substantially all their assets in approximately 90 days at

7

the "request" of the Banks utilizing the additional services of an investment banker, a financial

analyst, and an outside Chief Restructuring Officer.

27.    It appears that the hourly fee range requested for Locke Lord's associates

exceeds that normally charged in the District of Connecticut by law firm partners with decades

of experience in complex Chapter 11 bankruptcy practice[1].  Thus far in the Debtors' cases, the

United States Trustee has not observed the necessity of a skill level above that regularly

practiced in this Court by firms representing other middle-market Chapter 11 bankruptcy

debtors especially given that the "plan" here is just to effectuate a liquidation of substantially

all the Debtors' assets through an asset sale.

28.    Although the reasonableness of a law firm's range of hourly fees is often left until

the time of the interim or final applications for compensation, the United States Trustee

believes that it is only fair to raise the issue at the time of retention so that all parties, especially

---

[1] The *In re Armaos Property Holding LLC/Olympic Hotel Corp.* cases, Case Nos.19-20134 and 35, closely
resembles the facts and situations in the present cases whereby one debtor holds the real property while the other
affiliated debtor operates an active business thereupon and where substantially all both Debtors property is to be sold
with the assistance of a national-known professional and where it is expected that there will be no proceeds for
general unsecured creditors.  In the Armaos/Olympic cases, the law firm of Zeisler & Zeisler P.C.'s partner fees top
out at $500 per hour and the associate hourly fee top out at $395.

The *In re Donna Barnes* case, 19-20400, involves the sale of Debtor's Rhode Island resort property with several
contests with admitted secured creditors and with those claiming a security interest. With the assistance of a
nationally known auctioneer and an extensive marketing campaign, that property sold for $10,403,000.00.  In the
Barnes case,  the law firm of Reid and Riege, PC partner and of counsel hourly fees top out at $495 and $465,
respectively.

The *Mystic Transportation, Ltd*. case, 20-50531 involved the development, filing and confirmation of a plan of
reorganization involving millions of dollars of wrongful death claims, trade debt, personal injury claims, and
insufficient liability insurance coverage for a debtor which had woefully insufficient asset value to satisfy even a
small portion of the claims against it.  Through the efforts of debtor's counsel and the SubChapter V trustee after
intensive negotiations utilizing local mediators, the debtor was able to reach a consensual plan of reorganization
which treated all constituencies fairly, extended dividends to creditors far beyond the bankruptcy estate's asset value
and allowed the debtor to continue its business to make plan payments and keep its employees working.  The law
firm of Coan, Lewendon, Gulliver & Miltenberger's hourly fees for partners topped out at $430.

the  professionals involved, are made aware of the issue and can address it with the Bankruptcy

Court early in the case.

29.   "There is an inherent public interest that must be considered in awarding fees in a

bankruptcy case.  Accordingly, the Code imposes upon [the] Court a supervisory obligation not

only to approve the employment of professionals, but also to ensure that the fees sought by

those professionals in a bankruptcy case are reasonable."  *In re Fibermark, Inc.*, 349 B.R. 385,

393 (Bankr. D.Vt. 2006) (internal citations omitted).

30.   "The reasonableness of the hour rate is determined by considering that fee which

is customarily charged in the local community by someone who possesses similar skill,

experience, expertise, stature and reputation who is faced with similarly novel and complex

issues and who procures comparable results." *In re Korea Chosun Daily Times, Inc.*, 337 B.R.

758, 767 (Bankr. E.D.N.Y. 2005) (citations omitted).  *See also In re Relativity Fashion, LLC*,

565 B.R. 50, 67 (Bankr. S.D.N.Y. 2017) ("The reasonableness of an hourly rate . . .is

established through comparison with prevailing rates in the legal community for similar

services by lawyers of reasonably comparable skill, experience, and reputation.")

31.   The reasonableness of a law firm's hourly rates can be affected by the

"complexity and importance of the matter being handled.  A complicated, fast-paced, 'bet the

company' litigation requires counsel of higher caliber (and expense) than a routine case that

has little at stake." *In re Relatively Fashion, LLC*, 565 B.R. at 68.  The United States Trustee

sees the Debtors' cases as ones in which success will be determined by simply liquidating

substantially all the Debtors' assets in a short three-month time frame and paying back as much

of the Banks' claims as possible before the sale proceeds run out by utilizing either a "Stalking

Horse" and a possible auction or by holding an auction without the participation of a Stalking

Horse and by closing the sale no later than April 30, 2021.  Such should not be considered
"rocket science" to an experienced Chapter 11 bankruptcy firm in the District of Connecticut.

### Conclusion on Locke Lord's Retention Applications

32.   Locke Lord has several potential conflicts of interest in that it currently actively
represents several of Debtors' unsecured creditors and a "participant" in its largest secured
claim where that secured claimant (PUB) is insisting on actions which are likely to harm the
chances of its unsecured creditors to receive a dividend in Debtors' cases by pushing the
Debtors into a very quick sale of substantially all their assets.

33.   To the public, there will appear to be a conflict of interest when Locke Lord
represents both the Debtors and their primary "antagonist" PUB.  Such appearances, even if
managed and minimized to the extent possible, undermines the public's faith in the fairness
and objectivity of their Courts.

34.   The "wall" which Locke Lord has "built" to keep its employees working for PUB
away from its employees working for the Debtors does not seem to extend to those Locke Lord
employees doing work for Debtors' unsecured creditors which hold claims against the Debtors.

35.   While it does appear that the Debtors and PUB have allegedly executed waivers
of any conflict of interest in favor of Locke Lord.  It does not appear that waivers of conflicts
of interest have been solicited or received from the other Locke Lord active clients who hold
claims against the Debtors.

36.    Conflicts of interest may not be mature at the time the retention of Debtors'
counsel is being considered; however, if such potential conflicts ripen into active conflicts,
Locke Lord risks losing all or a portion of its compensation depending on the circumstances
arising from any active conflicts.

37.   It appears that Debtors' bankruptcy cases will be short-lived but could generate a million dollars or more in professional fees to attorneys, financial analysts, the CFO, and the investment banker.  All those parties should have equal access to payment for services both during the pendency of the case from the Debtors' budgeted funds and from the Banks' $500 Thousand "carve out" for professionals as contained in the DIP Financing and Cash Collateral Order.  By favoring Locke Lord with an enhanced range of hourly fees over those charged by other counsel, those other professionals will suffer reduced availability of both budgeted funds and carve-out funds to fund their respective compensation requests.

38.   The United States Trustee suggests that the Bankruptcy Court place a cap on the range of hourly fees charged by Locke Lord which more accurately reflects the hourly rates charged by law firms providing similar services at a similar level of expertise for the range of services required by the Debtors and suggests that the allowed "range" top out at $600 per hour for partners and $500 for associates which still provides a premium over the hourly fees charged by equally competent counsel regularly in the Courts of the District of Connecticut.

Dated: February 10, 2021                              Respectfully submitted,


                                                              WILLIAM K. HARRINGTON
                                                              UNITED STATES TRUSTEE FOR REGION 2

                                              By:      /s/ Steven E. Mackey
                                                          Steven E. Mackey/ct09932
                                                          USDOJ Trial Attorney
                                                          Office of the United States Trustee
                                                          Giaimo Federal Building, Room 302
                                                          150 Court Street
                                                          New Haven, CT 06510
                                                          (202) 934-4049

# **<u>EXHIBIT 12</u>**

February 9, 2022 Decision and Order in *PAX v. Kwok* (N.Y. Sup. Ct.)

FILED: NEW YORK COUNTY CLERK 02/09/2022 04:33 PM
INDEX NO. 652077/2017
NYSCEF DOC. NO. 1181
RECEIVED NYSCEF: 02/09/2022

Case 22-50073    Doc 618-1    Filed 07/27/22    Entered 07/27/22 11:47:37    Page 244 of
253

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:    **HON. BARRY R. OSTRAGER**                  PART        **IAS MOTION 61EFM**

*Justice*

------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

| | |
|---|---|
| **INDEX NO.** | 652077/2017 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 019 |

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION,

**DECISION + ORDER ON MOTION**

Defendants.

------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

In this 2017 case with 1,180 docket entries – almost all of which involve defendant Kwok Ho Wan's ("Kwok") efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members -- this Court is called upon to determine whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has met the burden of establishing that the Court should enter a final Order of Civil Contempt against Kwok. For the reasons that follow, this Court is simultaneously issuing a final Order of Civil Contempt.

PAX secured a judgment against Kwok in the sum of $116,402,019.57 on February 3, 2021 (NYSCEF Doc. No. 716). Thereafter, PAX undertook a year's long effort to enforce its judgment by first identifying and then attempting to levy upon Kwok's assets in the United States. PAX encountered difficulty identifying assets over which Kwok exercised control because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members. This scheme has enabled Kwok to assert that he has no assets despite his lavish lifestyle, which plaintiff has catalogued with material from social

FILED: NEW YORK COUNTY CLERK 02/09/2022 04:33 PM INDEX NO. 652077/2017

NYSCEF DOC. NO. 1181    Case 22-50073    Doc 618-1    Filed 07/27/22    Entered 07/27/22 11:47:37    Page 245 of
253    RECEIVED NYSCEF: 02/09/2022

media clippings, photographs and videotapes showing Kwok living large and boasting of his

wealth, expensive homes, private plane, and yacht. As noted in the transcript of proceedings of

February 2, 2022, this evidence is of little probative value, as the witnesses sponsoring this

evidence have no first-hand knowledge of the authenticity of this "evidence" other than that it is

accessible on various websites.

On February 2, 2022, this Court held an evidentiary hearing at which seven witnesses

submitted direct testimony by affidavit and were made available for cross-examination. The

hearing followed protracted proceedings by PAX to locate and levy upon assets owned by

defendant Kwok. Those proceedings established, among other things, that Kwok exercised

dominion and control over a yacht called the Lady May and resulted in a series of orders

restraining Kwok and/or the registered owners of the yacht called Lady May from removing the

Lady May from the Court's jurisdiction. The first such Order was issued on September 30,

2020, as described in detail *infra,* and was followed by an October 15, 2020 Order that restrained

"Mr. Kwok and/or the registered owners of . . . the yacht, the 'Lady May'" from leaving the

jurisdiction. (NYSCEF Doc. No. 630). As detailed *infra*, Kwok spent much of July, August and

September of 2020 on the Lady May. Contemporaneously with the proceedings resulting in the

September 30 and October 15, 2020 restraining Orders, Kwok and his cohorts made arrangement

for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas. On

March 16, 2021, the Court issued a conditional order of civil contempt which directed that if

Kwok failed to return the Lady May to the jurisdiction of this Court by May 31, 2021, he would

be subject to a $500,000.00 fine for each day that the Lady May remained outside the jurisdiction

of this Court.

The Appellate Division, First Department, affirmed this Court's order holding Kwok in

conditional civil contempt, finding that "the daily fine of $500,000.00 was intended to strongly

encourage defendant to purge himself of the contempt, which, despite being permitted to

accomplish, he has shown no interest in doing. . .”  NYSCEF Doc. No. 953, 199 AD3d 423

(2021).  The Appellate Division further held:

> The motion court acted within its discretion in holding defendant in civil contempt, as
> plaintiff established by clear and convincing evidence that defendant violated a lawful,
> clear mandate of the court, of which he had knowledge, and that such violation resulted
> in prejudice to plaintiff's rights (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015];
> Judiciary Law § 753). …  The motion court is instructed to proceed with an evidentiary
> hearing to resolve a dispute as to ownership and control of the yacht, and to assess
> appropriate penalties.

Pursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022

evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the

yacht.  Kwok failed to testify at the February 2, 2022 hearing, having previously invoked his

Fifth Amendment right to decline to testify or respond to discovery requests relating to the Lady

May in response to PAX's asset discovery efforts.  PX 27, 28, 29, 30.[1]  This invocation of the

Fifth Amendment notwithstanding, Kwok is an active litigant in multiple fora and he has given

prior testimony in this and other proceedings.

Kwok also filed a complaint in this court captioned *Guo Wengui a/k/a Miles Kwok v

Hong Zeng*, 157025/2020, which references a blog post from Freebeacon.com dated September

8, 2017 in which Kwok complains about “several incidents involving *his* 152-foot motor yacht,

Lady May...”  (Complaint ¶ 8, NYSCEF Doc. No. 001) (“the Zeng Complaint”).  The Zeng

Complaint describes Kwok as an “outspoken critic of the CCP” who has gone to great “lengths

to expose the rampant corruption within the CCP and the Chinese government.”  The

*Washington Post* reported that a former advisor to President Trump, Steve Bannon, was arrested

in 2020 while on board the Lady May, and described Mr. Bannon as a friend and business

---

[1] “PX” refers to Plaintiff's Trial Exhibits.

associate of Kwok, "a vocal online critic of the Chinese government who was once close with that country's intelligence service but is now wanted by authorities in Beijing on charges of fraud, blackmail and bribery." Other news outlets have reported that Mr. Bannon utilized Kwok's private jet on more than one occasion to travel to political rallies.

The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process.

Kwok once was the sole shareholder of Hong Kong Investments Limited ("HK International"). The testimony adduced at the hearing established that in 2014 Kwok transferred a 100% interest in HK International to one Qu Guo Jiao for no consideration. Ms. Qu was a trusted business associate of the Kwok family. Thereafter, Kwok fled China and on February 23, 2015, HK International purchased the Lady May for £ 28 million GBP. No testimony adduced at the hearing established the source of funds to purchase the Lady May, but the uncontradicted testimony of Kwok's daughter Mei Guo established that Ms. Qu did not provide the funds to purchase the yacht. Tr. 44.[2] Consequently, a reasonable inference is that Kwok provided the funds to HK International which were used to purchase the yacht. It is undisputed that Ms. Qu transferred the ownership of the Lady May to Kwok's daughter, Mei Guo, on or around June 17, 2017, for $1 or no consideration. Tr. 47. According to Ms. Guo's affidavit (NYSCEF Doc. No. 1162), Ms. Guo ultimately transferred ownership of the Lady May to the current title holder HK International Funds Investments (USA) Limited, LLC ("HK USA"). Ms. Guo further avers that she is the sole owner of HK USA, although all of the multi-million dollar annual expenses for the

---

[2] "Tr." refers to the transcript of the evidentiary hearing, efiled at NYSCEF Doc. No. 1179.

Lady May, including fuel, maintenance, and the captain and crew are paid by Golden Spring

(New York) Ltd. ("Golden Spring."), which is allegedly the Kwok family office.

At the hearing Ms. Guo testified that her brother had bought the Lady May for her.  Tr.

46.  The Court cannot credit this testimony as there is no evidence that Ms. Guo's brother was

involved with the corporate transactions leading to Ms. Guo's acquisition of the title to the yacht.

And, indeed, in response to a question from the Court, Ms. Guo acknowledged that her brother

was not involved in any of the transfers that occurred before she acquired the yacht.  Tr. 47.

Other testimony adduced at the hearing established that Kwok was repeatedly on the

yacht every summer and that Ms. Guo was infrequently on the yacht.  Trial Tr. 88:8-20.  The

Lady May's captain testified that Kwok was aboard the yacht for a significant portion of the

months of July, August and September in 2020 and that this was consistent with his usual

practice in the summer.  Trial Tr. 87:24-88:7.  Subsequent to this Court's September 30, 2020

restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for

repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of

Golden Spring.  Ms. Guo acknowledged that she was aware of both this Court's September 30,

2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady

May be returned to the Court's jurisdiction  Tr. 55; 57-60; 62.

Ms. Guo testified that on the one hand, she directed the Lady May's itinerary but, on the

other hand, testified that security for Kwok was such a concern that there would be no

memorialization of any itinerary.  Tr. 52.  She further testified that when her father was on the

yacht unaccompanied by her he had the freedom to choose wherever he wanted to go.  Tr. 50.

The fundamental issue, however, is who directed the yacht to be removed from this Court's

jurisdiction in October 2020.  Ms. Guo claims that in early October 2020 she no longer wished to

5

FILED: NEW YORK COUNTY CLERK 02/09/2022 04:33 PM
NYSCEF DOC. NO. 1181
Case 22-50073    Doc 618-1    Filed 07/27/22    Entered 07/27/22 11:47:37    Page 249 of
253
INDEX NO. 652077/2017
RECEIVED NYSCEF: 02/09/2022

use the yacht and relayed that instruction to Golden Spring which, in turn, relayed her directive
to the then captain of the ship, Captain Heaslop.  Tr. 53.

Upon further questioning, Ms. Guo admitted that it was Golden Spring that advised her
that the yacht needed to be moved to a warmer place.  Tr. 55.  Ms. Guo then repeated her
retracted testimony that her brother had given her the yacht, and she stated that her brother is the
sole owner of Golden Spring.  Tr. 56.  This testimony is not credible given that on September 30,
2020 the Court entered a temporary restraining order restraining Kwok

> . . . from making or causing any sale, assignment, transfer, or interference with any
> property in which he has an interest, or from paying over or otherwise disposing of any
> debt now due or thereafter coming due to him, subject to the exceptions set forth in
> CPLR 5222 and in the ordinary course.

NYSCEF Doc. No. 591.  Significantly, Captain Heaslop, the then Captain of the Lady May,
testified that Mr. Kwok told Captain Heaslop that Kwok would no longer be a guest on the Lady
May "a few days" before the Lady May departed for Florida in early October 2020 (and
apparently after the issuance of this Court's September 30, 2020 Order).  Tr. 89.  Captain
Heaslop also contradicted Ms. Guo's testimony that Ms. Guo gave Captain Heaslop instructions
about the yacht's movement.  Tr. 94.

Ms. Guo also acknowledged having subsequently read the Court's March 16, 2021 Order
requiring the Lady May to be returned to the Court's jurisdiction by May 31, 2021 (NYSCEF
Doc. No. 728).  She further acknowledged that she had discussed the Order with her lawyer
(whose services were paid for by Golden Spring) and that she had *ignored* the Order.

Russell Stockil, the Yacht Management Director for Yachtzoo SARL, testified that his
company had a management contract with HK USA dated May 2021 and that he communicated
with HK USA and Golden Spring, but never with Ms. Guo.  Tr. 78.  This was also the testimony
of successor Captain Momchil Ivanov.  Tr. 82.  In short, Ms. Guo's testimony that she owns and

controls the Lady May cannot be credited in any respect. Ms. Guo appears to be a woman in her twenties, has introduced no evidence that she exercised dominion and control of the Lady May, and provided no confirmation that she came into possession of the Lady May, other than as a ruse to shield the Lady May from being levied upon by her father's creditors.

The machinations associated with the shell game Kwok has orchestrated with respect to the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken during the five years this litigation has been pending, which is why there are 1,180 docket entries in this case.

The Court has the authority to hold Kwok in civil contempt under Judiciary Law § 753—and "to punish [him], by fine and imprisonment"—where, as here, the Court "expressly find[s] that [Kwok's] actions were calculated to or actually did defeat, impair, impede, or prejudice the rights or remedies of a party to a civil proceeding." *Oppenheimer v. Oscar Shoes, Inc.*, 111 A.D.2d 28, 28 (1st Dep't 1985) (citing N.Y. Judiciary Law § 753). Section 753 sets forth four requirements:

> [T]o find that contempt has occurred in a given case, it must be determined that [1] a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. [2] It must appear, with reasonable certainty, that the order has been disobeyed . . . [3] Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party . . . [4] Finally, prejudice to the right of a party to the litigation must be demonstrated.

*Fleetwood Fin. v Walter J. Dowd, Inc.*, 2016 WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016) (citing *McCormick v Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)). The testimony adduced in this case satisfies each element of this standard. Indeed, the Appellate Division intimated as such. *See Pacific Alliance Asia Opportunity Fund L.P.*, 199 A.D.3d 423 (1st Dep't 2021) ("[PAX has] established by clear and convincing evidence that [Kwok] violated

a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted

in prejudice to plaintiff's rights. . .").

 The extent of PAX's ongoing "prejudice" turns on whether PAX has demonstrated that it

could ultimately levy on the Lady May to satisfy its now centi-million dollar judgment against

Kwok.  Under CPLR § 5225, "money or other personal property" is leviable where the debtor

holds the requisite "interest." To satisfy this requirement, "[i]t is not necessary that the judgment

debtor have legal title to the property; a beneficial interest is sufficient."  Weinstein, Korn &

Miller, New York Civil Practice: CPLR ¶ 5225.09. "A beneficial interest is '[a] right or

expectancy in something . . . as opposed to legal title to that thing.'"  *Peterson v. Islamic Rep. of

Iran*, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing Black's Law Dictionary,

Interest (9th ed. 2009)).  Kwok has much more than a beneficial interest in the Lady May.  Not

only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the

person who principally enjoys the use of the yacht.

 The key factor is whether "the property benefitted [the beneficial owner] as if he

had received the property directly." *Id.* (quoting *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper

Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010); *see also Gliklad v. Chernoi*, 129 A.D.3d 604 (1st

Dep't 2015) (upholding rejection of the judgment debtor's contention that he no longer held an

interest in property because he transferred his interest to his daughters); *Colfin Bulls Funding B,

LLC v. Ampton Invs., Inc.*, 112 N.Y.S.3d 868 (Table), at *2, 6 (N.Y. Sup. Ct. 2018) (granting

judgment creditor's turnover motion notwithstanding judgment debtor's assertion that he

transferred property to a corporation, because even if true, the evidence showed that he "retained

control and/or an interest" in the property).

The evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May. In the latter connection, the Court takes notice of the filing of the Zeng case and draws an inference from all the record facts that Kwok has taken extraordinary steps to shield the yacht from his creditors. Moreover, Kwok's "family office" funds the yacht's day-to-day operations and maintenance.

The Court finds that Ms. Guo's testimony was not only internally inconsistent and dissembling, but also significantly undermined by the testimony of Captains Heaslop and Ivanov and Mr. Stockil, who stated that they have never taken yacht-related direction from Ms. Guo in the four and-a-half years that she directly or indirectly held title to the yacht.

In addition, it is established New York law that a party's invocation of the Fifth Amendment in a civil proceeding "may form the basis of an adverse factual inference." *DeBonis v. Corbisiero*, 155 AD2d 299, 300 (1st Dep't 1989). An adverse inference may be applied whenever a factual determination is necessary or permitted, including in the context of contempt motions. *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *10 (S.D.N.Y. Dec. 19, 2013), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *LiButti v. United States*, 107 F.3d 110, 120–25 (2d Cir. 1997).

Similarly, under the missing witness rule, "[a] trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify." *Crowder v. Wells & Wells Equip., Inc.*, 11 A.D.3d 360, 361 (1st Dep't 2004) (applying adverse inference where defendant who failed to appear "would be knowledgeable about a material issue raised by the evidence").

PAX is entitled to an adverse inference under both of these avenues. Kwok has invoked his Fifth Amendment right against self-incrimination in response to PAX's post-judgment discovery, including in response to requests specifically about the Lady May. While Kwok

9

argues that an adverse inference is not appropriate here because "[o]nly after a threshold showing that a piece of evidence is authentic is a party obligated to respond to it," this contention fails of its own weight. PAX has proffered substantial admissible evidence that Kwok has the requisite beneficial interest in and control of the Lady May. *See People v. Primo*, 96 N.Y.2d 351, 753 N.E.2d 164 (2001) (explaining that evidence is probative if it "tends to prove the existence or non-existence of a material fact, *i.e.*, a fact directly at issue in the case").

As of February 7, 2022, the Lady May has remained outside the jurisdiction of the Court for 268 days. Based on the daily fine of $500,000 imposed by this Court and affirmed by the Appellate Division, the resultant fine would amount to $134,000,000.00, which is more than PAX's outstanding judgment of nearly $120 million and a multiple of the GBP £ 28 million purchase price of the Lady May. Nevertheless, if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law. Kwok must remit $134,000,000.00 to PAX within five business days of the service of this Court's Order with Notice of Entry. The Court is prepared to exercise its full authority under Judiciary Law § 753 in the event the fine is not timely paid.

Dated: February 9, 2022

<br>

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

10