**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
|  | : |  |
| Debtor. | : |  |

---

**DEBTOR'S OBJECTION TO APPLICATION OF CHAPTER 11 TRUSTEE FOR
ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS
327, 328, AND 330 AND BANKRUPTCY RULES 2014 AND 2016, AUTHORIZING AND
APPROVING RETENTION AND EMPLOYMENT
OF PAUL HASTINGS LLP AS COUNSEL TO CHAPTER 11 TRUSTEE**

The debtor, Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, Zeisler

& Zeisler, P.C., pursuant to 11 U.S.C. § 327(a), hereby objects (the "Objection") to the July 12,

2022 Application of Chapter 11 Trustee for Entry of Order Pursuant to Bankruptcy Code Sections

327, 328, and 330 and Bankruptcy Rules 2014 and 2016, Authorizing and Approving Retention

and Employment of Paul Hastings LLP as Counsel to Chapter 11 Trustee (Doc. No. 539) (the

"Application"). In support of his Objection, the Debtor represents as follows:

## I.      **INTRODUCTION**

1.      It is fundamental to the integrity of the bankruptcy process that attorneys for a

trustee are "disinterested" and "do not hold or represent an interest adverse to the estate." All

parties, including a debtor, have a right to ensure that the professionals a trustee seeks to retain do

not have any bias or prejudice towards them.

2.      Paul Hastings, LLP ("Paul Hastings"), is not disinterested within the meaning of

the Code. The firm has multiple representations and connections that clearly establish both the

substance and the appearance of conflicts, bias and prejudice. In addition, the Application fails to

adequately disclose Paul Hastings' potential conflicts and many connections to the Debtor, the Debtor's Estate and other parties in interest.

3.      As described in more detail below, the People's Republic of China ("PRC") and the Chinese Communist Party ("CCP") are fiercely adverse to the Debtor. The Debtor is seeking asylum in this country because he and his family have been persecuted by the Chinese government. Paul Hastings has represented dozens of Chinese state-owned and controlled entities ("State-owned Entities") and other businesses doing business in China. Because the Chinese government exercises complete control over State-owned Entities and substantial control over other businesses represented by Paul Hastings that operate in China, the Chinese government has the ability to exercise undue influence over Paul Hastings. Indeed, the Chinese Government dictates whether Paul Hastings may conduct business out of its offices in China.

4.      While the Chapter 11 Trustee (the "Trustee") and other parties in interest may describe the Debtor's concerns as "insane," the Chinese government has not persecuted and is not actively persecuting, the Trustee or any of those parties in interest. By contrast, the Chinese government is persecuting the Debtor, his family, and their business interests.

5.      As set forth in greater detail below, the United States Department of Justice ("DOJ") has criminally prosecuted several people, including members of the DOJ, for targeting the Debtor at the behest of the Chinese Government.  Moreover, on May 17, 2022, several months after the Debtor filed his Bankruptcy Petition and only two months ago, the Attorney General of the United States filed a complaint for Declaratory and Injunctive Relief against Stephen A. Wynn ("Wynn"), a well-known Casino magnate and billionaire, for illegally acting as an undisclosed agent of the PRC tasked with orchestrating the Debtor's deportation to China. Among other things, the DOJ alleges that Wynn acted at the request of Sun Lijan—the former Vice Minister for Public

Security—and the PRC itself—by conveying "to then-President Trump [at dinner on June 27, 2017] the PRC's desire to have [the Debtor] removed from the United States." (*Attorney General of the United States of America v. Wynn*, No. 1:22-cv-1372 (D.D.C.), Complaint for Declaratory and Injunctive Relief, ¶ 22).

6.      Perhaps most outrageously, ***Paul Hastings is presently defending Wynn against the DOJ in that action.***  And yet, Paul Hastings and the Trustee have failed to disclose Paul Hastings' representation of Wynn, its representation of State-owned Entities, or its own business ties to China.

7.      In addition, Paul Hastings, and specifically its Financial Restructuring Group (of which the Trustee is Co-Chair), has represented, and will most assuredly continue to represent, UBS entities in various matters. Indeed, Paul Hastings' Restructuring Group's website, which, incidentally, bears the Trustee's picture, identifies "UBS" as a representative client ("We have represented clients such as Morgan Stanley, RBC, UBS and Wells Fargo as agents and first lien lenders on exit and debtor-in-possession lending transactions.") (https://www.paulhastings.com/practice-areas/restructuring).

8.      Prior to commencement of this case, the Debtor filed a $500 million claim against one of the UBS entities that Paul Hastings has represented, UBS AG, in the United Kingdom and a related action against UBS AG in Switzerland. The Trustee was automatically substituted as plaintiff in the UK and Switzerland under Federal Rule of Bankruptcy Procedure 2012(a). As counsel for the Trustee, Paul Hastings would be adverse to UBS AG. Paul Hastings has not adequately disclosed the nature and quantity of the work that it has performed and may still be performing for UBS AG and its affiliates.

9.      Paul Hastings has also represented multiple entities related to the Debtor's largest creditor and zealous adversary, Pacific Alliance Asia Opportunity Fund ("PAX"), a fact that the Trustee first disclosed to the Court verbally at the hearing on the application to appoint him as Trustee. The most recent of these representations terminated no later than May of 2022.  (First Supplemental Declaration of Disinterestedness of Luc A. Despins (Doc. No. 538) (the "Supplemental Despins Declaration"), ¶ 2)

10.     In sum, Paul Hastings (i) has until at least very recently represented affiliates of the largest creditor in this case; (ii) represented UBS AG, which is currently the defendant in two pending actions commenced by the Debtor that may be a significant asset in this bankruptcy case; (iii) has significant ties to a foreign government that has persecuted and is actively persecuting the Debtor; and (iv) currently represents a billionaire who the DOJ alleges served as an unregistered agent of China in connection with China's efforts to get the Debtor extradited. Paul Hastings has not disclosed much of the foregoing, and it has not adequately disclosed any of the foregoing. For these reasons, the Debtor submits that the Application must be denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Appointment of the Chapter 11 Trustee and Filing of the Application

11.     On February 15, 2022, the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

12.     On June 15, 2022, this Court issued a Memorandum of Decision, *inter alia*, granting PAX's Motion to Dismiss or, in the alternative, Partial Joinder to the UST's Motion for the Appointment of a Chapter 11 Trustee (Doc. No. 183) to the extent that it sought the appointment of a Chapter 11 trustee. (Doc. No. 465.)

13.     On July 7, 2022, the UST filed a notice (the "Appointment Notice") appointing the Trustee as Chapter 11 trustee (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515) (the "Appointment Application"), seeking the Court's approval of the appointment of the Trustee. Annexed to the Appointment Application was a Declaration of Disinterestedness of Luc A. Despins (the "Despins Declaration"). The Despins Declaration states that "[w]hile Paul Hastings previously represented UBS AG (London Branch) ('UBS AG') (an entity currently involved in litigation with the Debtor in the United Kingdom) in an unrelated matter that ended in November of 2021, Paul Hastings does not currently represent UBS AG." Despins Declaration ¶ 7(c). The Despins Declaration also discloses that Paul Hastings currently represents certain UBS entities, and in conclusory form states "I, in my capacity as Trustee, am able to be adverse to UBS AG and to be named plaintiff, as chapter 11 Trustee, in any lawsuit against UBS AG." *Id*.

14.     On July 8, 2022, only one day after the UST filed the Appointment Notice and the Appointment Application, this Court conducted a hearing on the Appointment Application (the "July 8 Hearing"). During the July 8 Hearing, the Trustee disclosed for the first time Paul Hastings' relationship with Pacific Alliance Group ("PAG"),[1] the parent company of PAX. (*See* Transcript of July 8 Hearing, at 6:15-25).

15.     On July 12, 2022, the Trustee filed the Supplemental Despins Declaration, in which the Trustee stated that Paul Hastings represented "certain entities," which it defined as the "PAG Entities," that share a common parent with PAX. (Supplemental Despins Declaration, ¶ 2.) The Supplemental Despins Declaration does not disclose any details regarding Paul Hastings' representations of the PAG Entities, instead merely stating in conclusory fashion that they were in

---

[1] PAG was also subsequently identified as "PAG Holdings Limited."

connection with "unrelated matters." (*Id.*) The Application does not provide any additional information concerning Paul Hastings' representation of the PAG Entities, or the relationship between them and PAX. In the Supplemental Despins' Declaration, the Trustee discloses that "certain Paul Hastings attorneys resident in Paul Hastings' Hong Kong office formerly represented certain PAG Entities which share a common ultimate parent (PAG Holdings Limited) with [PAX]." (Supplemental Despins' Declaration, at ¶2). According to the Supplemental Despins Declaration, Paul Hastings' representation of the PAG Entities was terminated in May 2022—just two months prior to the Trustee's declaration and instant motion. (Id.).

16.     On July 12, 2022, the Trustee filed the Application. Annexed thereto was the Declaration Of Nicholas A. Bassett In Support Of Chapter 11 Trustee's Application For Entry Of An Order, Pursuant To Bankruptcy Rules 2014 and 2016, Authorizing And Approving Retention And Employment Of Paul Hastings LLP As Counsel To Chapter 11 Trustee (the "Bassett Declaration"). Notwithstanding the requirements of Bankruptcy Rule 2014(a) that a retention application be accompanied by "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee," the Bassett Declaration just refers to the Despins Declaration, noting that "for a description of Paul Hastings' connections to potential parties in interest in the Chapter 11 case, I refer to the Despins Declaration." Bassett Declaration ¶ 19.

**B.   The Debtor's Pending Claims Against UBS AG**

17.     The Debtor is a plaintiff in an action pending in the High Court of Justice of England and Wales Queen's Bench Division Commercial Court captioned *Kwok Ho Wan, Ace Decade Holdings Limited, and Dawn State Limited v. UBS AG (London Branch)*, Case No: CL-

2020-000345 (the "UBS Action").[2] The plaintiffs in the UBS Action seek $500 million in damages from UBS.  (Exhibit 1, at ¶ 33(1). To be clear, the defendants in the UBS Action is UBS AG, not merely the bank's London branch.

18.     UBS moved to dismiss the UBS Action against two of the three plaintiffs for lack of personal jurisdiction, claiming that the UBS Action should be heard against two of the plaintiffs in Switzerland, UBS AG's place of domicile (UBS has previously taken the position that the plaintiffs should have sued it in Hong Kong). Therefore, out of an abundance of caution, the Debtor and another plaintiff commenced a separate action against UBS AG in Switzerland (the "UBS Switzerland Action") to ensure that they could seek relief in the event UBS' motion to dismiss the UBS Action was granted. UBS' motion to dismiss the UBS Action was denied by the trial court on February 9, 2022, and that ruling is currently on appeal. The UBS Switzerland Action is presently stayed pending a decision on that appeal. *See* Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions, sworn to March 11, 2022 (the "Kwok Declaration"), at ¶32(a)). Thus, regardless of the outcome of UBS' motion to dismiss against two of the three plaintiffs, litigation seeking $500 million in damages from UBS will be pending by the bankruptcy estate against UBS AG in either the United Kingdom or Switzerland. Paul Hastings has represented UBS AG and Paul Hastings continues to represent its affiliates. Despins Declaration ¶ 7(c)

**C.  <u>The Interest of the Chinese Government in This Case and Paul Hastings' Failure to Disclose Chinese Interests</u>**

19.     Paul Hastings has two offices in mainland China—in Beijing and Shanghai—and

---

[2]  The reference to UBS AG (London Branch) is to UBS AG's branch office in London which "by agreement of the parties [was] designated as the counterparty for all of the contracts relevant to the claim in [the UBS Action]." (UBS Action, Particulars of Claim, at ¶5, attached hereto as <u>Exhibit 1</u>).

one office in Hong Kong, a "Special Administrative Region" of China. The firm does significant business in mainland China and Hong Kong. Based on its own public announcements, Paul Hastings has represented dozens (at least) of State-owned Entities and other entities in China in dozens (at least) of transactions in China. *E.g.*, Paul Hastings Represents Chinese Local Government Enterprises in Seven Bond Issuances, PaulHastings.com, https://www.paulhastings.com/news/paul-hastings-represents-chinese-local-government-enterprises-in-seven-bond Issuances. In fact, Paul Hastings has boasted that it "was one of the first major international law firms to establish an Asia practice, and today [it] continue[s] to be a leader in the region." Beijing, PaulHastings.com, https://www.paulhastings.com/offices/beijing; *see also id.* ("Our lawyers in Beijing represent Fortune Global 500 companies and financial institutions in cross-border transactions in the Greater China region. We also advise Chinese companies and financial institutions on their strategic outbound investments into the U.S., Europe, Latin America, and other global markets."). Neither the Trustee nor Paul Hastings has explained, let alone mentioned, the extent of Paul Hastings' connections to State-owned Entities and other businesses in China.

20.    Because the Chinese government and the CCP as a matter of Chinese law have exclusive and unchecked control over which businesses operate in China, including Paul Hastings and its Chinese clients, the PRC and CCP have significant influence over Paul Hastings and its Chinese clients.

21.    The PRC and CCP have tried in the past to unduly influence proceedings involving the Debtor and have committed, through its ministers and agents (*e.g.*, Wynn, Higginbotham, Broidy, Lum Davis, and others noted below), criminal acts toward the Debtor within the United States.

22.     In retaliation for the Debtor's whistleblowing, the Debtor and his family members have been persecuted by the CCP. *Pacific Alliance Asia Opportunity Fund v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.), Aff. of Mei Guo, Doc. No. 1162, ¶¶ 4-6.  In 2017, the Debtor filed an application seeking asylum in the United States. The Debtor's asylum application remains pending. *See* Kwok Declaration, at ¶ 14.

23.     In 2017, as retribution for the Debtor's public exposure of high-level CCP corruption and at the request of the PRC's Ministry of Foreign Affairs, Interpol issued a "Red Notice" for the Debtor based on fabricated charges, which provided an international alert that he was wanted for arrest in China. China has been accused of abusing Interpol's Red Notice System. "China has selectively used this service to repatriate Chinese nationals wanted by the authorities for engaging in political/religious activism or expressing views contrary to that professed by the Chinese Communist Party." View: How China Misuses Interpol to Settle Domestic Scores and Stifle Dissidence, The Economic Times, https://economictimes.indiatimes.com/news/defence/view-how-china-misuses-interpol-to-settle-domestic-scores-and-stifle-dissidence/articleshow/86160172.cms?utm_source=contentofinterest&utm_medium=text&utm_campaign=cppst.

24.     Also in 2017, U.S. federal agents engaged in two altercations with Chinese operatives within a seventy-two (72) hour period—one at Penn Station and another at JFK airport—because federal agents had determined that the Chinese government (through several government officials from China's Ministry of State Security) was conducting a covert and unauthorized operation in New York to coerce the Debtor to return to China. China's Pursuit of Fugitive Businessman Guo Wengui Kicks Off Manhattan Caper Worthy of Spy Thriller, *The Wall Street Journal*, https://www.wsj.com/articles/chinas-hunt-for-guo-wengui-a-fugitive-

businessman-kicks-off-manhattan-caper-worthy-of-spy-thriller-1508717977.

25.     Additionally, in 2018, George Higginbotham, a former DOJ Headquarters Official, pleaded guilty to facilitating the transfer of millions of dollars from foreign bank accounts to the United States to fund a lobbying campaign to persuade high-ranking U.S. officials to unlawfully remove the Debtor from the United States to China. *See* Former Justice Department Employee Pleads Guilty to Conspiracy to Deceive U.S. Banks about Millions of Dollars in Foreign Lobbying Funds,     https://www.justice.gov/opa/pr/former-justice-department-employee-pleads-guilty-conspiracy-deceive-us-banks-about-millions; Kwok Declaration, ¶ 16.

26.     Further, the former Chairman of the Republican National Committee, Elliot Broidy, and lobbyist Nicki Lum Davis were similarly indicted and also pleaded guilty for their roles in that scheme targeting the Debtor. Kwok Declaration, ¶ 16 (citing DOJ press releases).

27.     In June 2021, the DOJ also indicted Low Taek Jho and Prakazrel "Pras" Michel for conspiring "to engage in undisclosed lobbying campaigns at the direction of Low and the Vice Minister of Public Security for the PRC, respectively . . . to have a Chinese dissident sent back to China." U.S. Entertainer/Businessman and Malaysian National Charged with Back-Channel Lobbying Campaign to Drop 1MDB Investigation and Remove Chinese Dissident from U.S., https://www.justice.gov/opa/pr/us-entertainerbusinessman-and-malaysian-national-charged-back-channel-lobbying-campaign-drop. That "dissident" is the Debtor.

28.     Just two months ago, in May 2022, the DOJ filed a civil enforcement action in U.S. District Court for the District of Columbia (the "Wynn District Court Action") against Wynn (the casino mogul and hotelier) to compel him "to register under the Foreign Agents Registration Act ('FARA') as the agent of the PRC, and for a declaratory judgment stating that Wynn is obligated to register as a foreign agent because of his conduct undertaken on behalf of the PRC and a senior

official of the PRC's Ministry of Public Security (MPS)." *Justice Department Sues to Compel a U.S. Businessperson to Register Under the Foreign Agents Registration Act*, https://www.justice.gov/opa/pr/justice-department-sues-compel-us-businessperson-register-under-foreign-agents-registration. According to the DOJ's own complaint:

> [F]rom at least June 2017 through at least August 2017, Wynn contacted the then-President and members of his administration to convey the PRC's request to cancel the visa or otherwise remove from the United States a Chinese businessperson who left China in 2014, was later charged with corruption by the PRC and sought political asylum in the United States. Wynn engaged in these efforts at the request of Sun Lijun, then-Vice Minister of the MPS. Wynn conveyed the request directly to the then-President over dinner and by phone, and he had multiple discussions with the then-President and senior officials at the White House and National Security Council about organizing a meeting with Sun and other PRC government officials.

*Id.* Again, the Chinese business person is the Debtor. *Steve Wynn May Face Justice Department Action for Role in China's Push to Expel Businessman*, *The Wall Street Journal*, https://www.wsj.com/articles/justice-department-wants-casino-mogul-steve-wynn-to-register-as-foreign-lobbyist-11622054103; Kwok Declaration, ¶ 16.

29.     The DOJ has recognized that Wynn's "conduct was motivated by his desire to protect his business interests in the PRC." *Attorney General of the United States of America v. Wynn*, No. 1:22-cv-1372 (D.D.C.), Complaint for Declaratory and Injunctive Relief, ¶ 28. The DOJ also alleged specific pressure that China exerted on Wynn:

> According to public reporting, in 2016, shortly before the conduct described above occurred, the Macau government restricted the number of gaming tables and machines that the Defendant's casino could operate. Also according to public reporting, Defendant was scheduled to renegotiate his licenses to operate casinos in Macau in 2019, subsequent to the conduct described above.

*Id.*, ¶ 29 (footnotes omitted).

30.     These are not "crazy", "insane" allegations that are "a complete distraction and without merit"—despite the Trustee's and other parties in interests' characterization of similar

allegations as such to the Court on July 21, 2022.  (*See* Transcript of July 21, 2022 Hearing, at p. 67 (13-17) (describing Debtor's position as "Crazy"); p. 70 (14-16) (describing Debtor's Rule 9024 Motion as "a complete distraction and without merit"); p. 88(18)-89(7) (describing Debtor's position as "insane").  To the contrary, ***these are the words of the DOJ in a complaint alleging that the Chinese government induced a billionaire who resides in the United States to act as an unauthorized agent of a foreign state—in order to facilitate the Debtor's deportation—by leveraging a combination of the Chinese government's control over the billionaire's over-seas businesses and the billionaire's influence over the then sitting President of the United States***.

31.    As stated above, Paul Hastings attorneys, specifically Robert Luskin and Leo Tsao, currently represent Wynn in the Wynn District Court Action. *See* Case No. 1:22-cv-01372-JEB, United States District Court for the District of Columbia, Doc. Nos. 10 and 12. Thus, Paul Hastings represents a person who the Department of Justice considers an agent of the Chinese government and is presently defending allegations that its client has actively and illicitly worked on China's behalf (at the behest of President Xi himself) to have the Debtor removed from the United States.

32.    In addition, the Chinese government has seized or frozen billions of dollars of assets on account of claims against the Debtor.  Chinese Tycoon's Daughter Challenges Hong Kong Over Asset Freeze, *Bloomberg*, [https://www.bloomberg.com/news/articles/2018-08-16/chinese-tycoon-s-daughter-challenges-hong-kong-over-asset-freeze#xj4y7vzkg](https://www.bloomberg.com/news/articles/2018-08-16/chinese-tycoon-s-daughter-challenges-hong-kong-over-asset-freeze#xj4y7vzkg).

33.    This includes the land and development in Beijing known as the Pangu Plaza, which was given as security for a loan made by PAX to an entity called Spirit Carter. Kwok Declaration, ¶ 21. Seized Beijing skyscraper sells online for a 'bargain' $734M, CNN, [https://www.cnn.com/style/article/pangu-plaza-guo-wengui/index.html](https://www.cnn.com/style/article/pangu-plaza-guo-wengui/index.html).

34.    It has been well documented that the Chinese government exercises unchecked

control and influence over businesses operating in China. *E.g.*, How the State Runs Business in China, *The Guardian*, https://www.theguardian.com/world/2019/jul/25/china-business-xi-jinping-communist-party-state-private-enterprise-huawei. ("From the Mao era onwards, Chinese state firms have always had a predominant role in the economy, and the Communist party has always maintained direct control over state firms. For more than a decade, the party has also tried to ensure it played a role inside private businesses. But in his first term in office, [Chinese President] Xi [Jinping] has overseen a sea change in how the party approaches the economy, dramatically strengthening the party's role in both government and private businesses.").

35.    This, according to FBI Director Christopher Wray, includes foreign multinational companies with a Chinese presence. *Id.*; Christopher Wray, Director, Federal Bureau of Investigation, Remarks at Hudson Institute, Video Event: China's Attempt to Influence U.S. Institutions (July 7, 2020) (transcript available at: https://www.fbi.gov/news/speeches/the-threat-posed-by-the-chinese-government-and-the-chinese-communist-party-to-the-economic-and-national-security-of-the-united-states) ("So what does China do? Well, China has leverage over the American official's constituents—American companies, academics, and members of the media all have legitimate and understandable reasons to want access to Chinese partners and markets. And because of the authoritarian nature of the Chinese Communist Party, China has immense power over those same partners and markets. So, China will sometimes start by trying to influence the American official overtly and directly. China might openly warn that if the American official goes ahead and takes that trip to Taiwan, China will take it out on a company from that official's home state by withholding the company's license to manufacture in China. That could be economically ruinous for the company, would directly pressure the American official to alter his travel plans, and the official would know that China was trying to influence him.").

36.     China has gone so far as to enact laws expressly requiring businesses in China to affirmatively cooperate with the Chinese government. Such laws include Chapter I, Article 7 of the National Intelligence Law of the People's Republic of China (the "NIL"), which requires all organizations in China to cooperate with state intelligence efforts; Chapter II, Article 14 of the NIL, which provides that Chinese national intelligence agencies may request organizations in China to provide support, assistance and cooperation to such agencies; and Chapter I, Article 11 of the National Security Law of the People's Republic of China, which provides that all enterprises have the responsibility and obligation to preserve Chinese national security. This influence necessarily extends to Paul Hastings, which has offices in China, and to clients in China who are State-owned Entities or operate in China.

## II.     JURISDICTION AND VENUE

37.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court for this case and this Motion pursuant to 28 U.S.C. §§ 1408 and 1409, respectively.

38.     Bankruptcy Code section 1109(b) provides in relevant part that "the debtor … may raise and may appear and be heard on any issue in a case under this chapter."

## III.     LEGAL BASIS FOR RELIEF

### A.  The 11 USC Section 327(a) Standard

39.     11 USC § 327(a) sets forth the standard that Paul Hastings must satisfy in order to obtain this Court's approval of its proposed employment by the Trustee:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate,

and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

40.     "[Section 327(a)] imposes two express requirements. First, the professional must be a 'disinterested person'. Section 101(14)(E) of the Bankruptcy Code, the so called 'catchall' provision, states in pertinent part that a "disinterested person' is one who does 'does not have an interest materially adverse to the interest of the estate . . . for any . . . reason.' Second, the professional must not 'hold or represent an interest adverse to the estate.' . . . The two requirements apply at the time of retention and throughout the case." *In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998).[3]

41.     An adverse interest for purposes of section 327(a) "has come to mean either (1) the possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of bias against the estate." *Id.*, at 33 (citations omitted). Thus, a section 327(a) adverse interest "includes any interest or relationship, however slight, 'that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *Id.* (citations omitted). *See also Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 621 (2d Cir. 1999) ("By regulating the trustee's ability to hire professionals, section 327 'serves the important policy of ensuring that all professionals appointed [to represent the trustee] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'") (brackets in original; citations omitted). Thus, "[d]isqualification is appropriate 'if it is plausible that the representation of another interest may cause the debtor's attorneys to act

---

[3] The quoted Bankruptcy Code definition of "disinterested person" now appears at 11 USC § 101(14)(C): "The Term "disinterested person" means a person that . . . (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

any differently than they would without that other representation.'" *In re Granite Partners, L.P.*, 219 B.R. 22, at 33.

42.     Bankruptcy Rule 2014(a) requires that a retention application disclose known connections between the professional to be employed and parties in interest in the case. "Disclosure will not be adequate if it is not sufficiently specific. Thus, a blanket statement that counsel … may represent some creditors on unrelated matters will be sufficient only to excuse disclosure of small claimants in a large case." 9 <u>Collier on Bankruptcy</u> ¶ 2014.04, at 2014-5 (16th ed.).

**B.   Paul Hastings Representations of, and Relationships with, UBS, the PAG Entities, and Wynn Render The Firm Not Disinterested**

43.     The UBS Action may constitute a significant asset of the Debtor's Estate and will require disinterested counsel to zealously prosecute the claims, whether those claims are heard in London, in UBS AG's home country of Switzerland, or in both jurisdictions.

44.     The Application acknowledges that Paul Hastings represented UBS (AG) and describes it as "an entity currently involved in litigation with the Debtor in the United Kingdom." The Application also states that Paul Hastings' represents certain UBS entities, but the Application does not adequately disclose the nature and extent of Paul Hastings' relationship with UBS.

45.     However, as noted above, Paul Hastings' own web site makes clear that Paul Hastings, including the Financial Restructuring Group, do work for UBS entities. See https://www.paulhastings.com/news/ubs-and-rbc-serve-as-joint-book-running-managers-for-ipo-of-global-partner; https://www.paulhastings.com/news/credit-suisse-and-ubs-serve-as-joint-book-running-managers-for-artisan. Paul Hastings' disclosure related to its representation of UBS AG and various related UBS entities is limited to the disclosure made in the Despins Declaration. That disclosure is incredibly thin, and provides no information regarding the scope of Paul

Hastings' UBS-related representations, including the subject matter of those representations, the status of those representations, and the fees paid for those representations.

46.     Paul Hastings' disclosure regarding its representation of UBS AG and various related UBS entities along with the actual or potential conflicts created by those representations is woefully incomplete. "The scope of disclosure [required by Federal Rule of Bankruptcy Procedure 2014(a)] is much broader than the question of disqualification. . . The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts." *See In re Granite Partners, L.P.*, 219 B.R. at 35 (citations omitted).

47.     Because Paul Hastings' representations of UBS AG and other UBS entities makes it, at the very least, plausible that Paul Hastings will "act [ ] differently than it would without [its multiple UBS representation[s]]," the Application should be denied.

48.     The Application should likewise be denied based on Paul Hastings' representation of the PAG Entities, their relationship to PAX, and the very real possibility that those relationships "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re Granite Partners, L.P.*, 219 B.R. 22, at 33.

49.     No information has been disclosed as to the relationship between PAX and the PAG Entities that Paul Hastings represented, even those that Paul Hastings represented as recently as May of 2022—*e.g.*, no disclosures are made regarding common officers, directors, or employees— the scope of such representation, the Paul Hastings attorneys who have worked on matters for the PAG Entities or the nature of and reason for the purported termination of the PAG Entities' relationships with Paul Hastings. To the contrary, one of the only things that the Trustee and Paul Hastings actually has disclosed about their relationship with the PAG Entities is that at least one of them continued to exist ***after PAX moved to appoint a Chapter 11 Trustee in this case***. *See*

*PAX Motion to Dismiss Case or, in the Alternative, Partial Joinder to UST's Motion to Appoint Trustee*, Doc. No. 183, dated April 6, 2022).

50.     Indeed, it appears that PAX or the PAG Entities may not even have known that they were "former clients" of Paul Hastings (rather than clients) until the Trustee filed the Despins Declaration. Statement by Peter Friedman, Transcript of July 21, 2022 Hearing, at 66-67 ("We're not thrilled with … the fact they put in now our client is a former client of ours that I think is, you know, wasn't something that our client thought was so great to be deemed a former client, but it is what it is.").

51.     PAX has been pursuing recovery of a purported obligation owed to it by the Debtor for years. It obtained a substantial judgment against the Debtor (which is on appeal) and it has every interest in resolving and incentive to resolve the Debtor's case in a manner that favors it and the satisfaction of its claim to the detriment of other creditors. Of course, the Trustee owes, and Paul Hastings as its counsel would owe, duties to all creditors, and cannot and could not favor PAX, an entity that shares a common parent entity with other clients or former clients of Paul Hastings. The mere possibility of such favoritism should preclude Paul Hastings' retention in this politically charged case. *In re Granite Partners, L.P.*, 219 B.R. at 38 ("But, like Caesar's wife, trustee's counsel must be above suspicion. Bankruptcy is concerned as much with appearances as with reality." (citations omitted)).

### C. Paul Hastings' Relationships with China Make it Not Disinterested

52.     Lastly, neither the Trustee nor Paul Hastings has disclosed its connections to the PRC, the CCP, or State-owned Entities, despite knowing that the Chinese government has been relentless in trying to extradite and otherwise harm the Debtor for publicly exposing high-level corruption.

53.     However, it is clear that the PRC, CCP, and entities they own and control (directly or indirectly) are parties in interest here because they have demonstrated an interest in persecuting the Debtor using any means necessary. Therefore, Paul Hastings must disclose its connections with the PRC, CCP and State-owned Entities. *In re Granite Partners, L.P.*, 219 B.R. at 35 ("The professional must disclose all facts that bear on its disinterestedness, *In re Leslie Fay Cos.*, 75 B.R. at 533, and cannot usurp the court's function by choosing, *ipse dixit*, which connections impact disinterestedness and which do not.").

54.     Even without any of the necessary and required disclosures regarding the PRC, CCP, and State-owned Entities, the facts that are already known establish that Paul Hastings is not disinterested based on the obvious position of the PRC and CCP vis-à-vis the Debtor, Paul Hasting's business dealings with the Chinese government and the CCP, including the ongoing need for the approval of the Chinese government in order for Paul Hastings to operate its three offices in mainland China and Hong Kong, and, most recently, Paul Hastings' decision to represent Wynn—contemporaneously with the administration of the Debtor's estate—against the DOJ's allegations that Wynn acted as an unregistered and unlawful agent of a foreign state to cause the Debtor's deportation.

55.     Simply stated, evidence of the influence of the PRC and CCP on Paul Hastings demonstrates that it is not disinterested and therefore should not be permitted to serve as counsel to the Chapter 11 Trustee, particularly given the great lengths China has gone through to persecute the Debtor.

**WHEREFORE,** the Debtor respectfully requests that the Court sustain its Objection to the Application, and grant him such other and further relief as justice requires.

Dated at Bridgeport, Connecticut on this 27th day of July, 2022.

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ Eric Henzy*
Eric Henzy (ct12849)
Stephen M. Kindseth (ct14640)
Aaron A. Romney (ct28144)
James M. Moriarty (ct21876)
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
        skindseth@zeislaw.com
        aromney@zeislaw.com
        Jmoriarty@zeislaw.com
        jcesaroni@zeislaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of July, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Eric Henzy*
Eric Henzy (ct12849)