**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re | :     Chapter 11 |
| HO WAN KWOK, | :     Case No. 22-50073 (JAM) |
| Debtor. | : |

**DEBTOR'S OBJECTION TO REVISED PROPOSED ORDER, PURSUANT TO**
**BANKRUPTCY CODE SECTIONS 363, 521, 541, 1108, AND 105,**
**(A) CONFIRMING THAT CHAPTER 11 TRUSTEE HOLDS**
**ALL OF DEBTOR'S ECONOMIC AND CORPORATE GOVERNANCE RIGHTS IN**
**DEBTOR-CONTROLLED ENTITIES, (B) AUTHORIZING CHAPTER 11 TRUSTEE**
**TO ACT IN ANY FOREIGN COUNTRY ON BEHALF OF ESTATE, AND (C)**
**<u>GRANTING RELATED RELIEF</u>**

The debtor, Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., for his objection to the revised proposed Order, Pursuant To Bankruptcy Code Sections 363, 521 541, 1108, And 105, (A) Confirming That Chapter 11 Trustee Holds All Of Debtor's Economic Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of The Estate, And (C) Granting Related Relief (Doc. No. 645, the "Revised Proposed Order"), states as follows:

1.      On February 15, 2022, the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case.

2.      On June 15, 2022, this Court issued a Memorandum of Decision, *inter alia*, granting PAX's Motion to Dismiss or, in the alternative, Partial Joinder to the UST's Motion for the Appointment of a Chapter 11 Trustee (Doc. No. 183), to the extent that it sought the appointment of a Chapter 11 trustee (Doc. No. 465.)

3.      On July 7, 2022, the UST filed a notice appointing Luc A. Despins (the "Trustee")

as Chapter 11 trustee (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515) seeking the Court's approval of the appointment of the Trustee. On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

<u>Background On The Sherry-Netherland Residence</u>

4.    On March 9, 2022, the Debtor filed his Debtor's Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs (Doc. No. 77, annexed hereto as Exhibit 1, the "Global Notes"). Paragraph 1b(ii) of the "Specific Notes," at pages 4-5 provides:

> The Debtor also has access to an apartment located at the Sherry-Netherlands Hotel, 781 Fifth Avenue, New York, NY 10022 (the "Apartment"). The cooperative shares in the Apartment are held by Genever Holdings LLC (the "US SPV"). The membership interests in the US SPV are held by Genever Holdings Corporation (the "BVI Company"). ***The Debtor holds all of the equity of the BVI Company; however, pursuant to a Declaration of Trust and Agreement, dated as of February 17, 2015 (the "Trust Date"), the Debtor holds such equity in trust for Bravo Luck Limited (the "Apartment Owner").*** The Debtor's son owns the equity of the Apartment Owner. On or about the Trust Date, the Apartment Owner funded the US SPV with the purchase price for the Apartment. These funds came from entities owned or controlled by the Debtor's son and not from the Debtor.

> The US SPV commenced its own chapter 11 case before the United States Bankruptcy Court for the Southern District of New York on October 12, 2020 (Case No. 20-12411 (JLG)). The US SPV's disclosure statement with respect to its reorganization plan states that the US SPV "sought Chapter 11 relief . . . in the face of multiple court disputes relating primarily to the beneficial ownership of the Residence as between Bravo Luck Limited . . . and [Pacific Alliance Asia Opportunity Fund LP ("PAX")]." [Docket No. 165]. In litigation seeking to determine the ownership of the Apartment, the Apartment Owner contends that it is the beneficial owner of the Apartment. The ultimate ownership of the Apartment will be resolved outside of the US SPV's chapter 11 case. Before the BVI courts, PAX has sought the turnover of the US SPV's membership interests based upon its judgment (which remains under appeal) against the Debtor.

> The Apartment is currently marketed for sale by Sotheby's International Realty under the authority of Melanie L. Cyganowski, Esq., the US SPV's sales officer. For these reasons, the Debtor does not report the value of the Apartment as an asset.

(Emphasis added).

5.      On March 20, 2022, the Debtor filed his Declaration Of Mr. Ho Wan Kwok In

Support Of The Chapter 11 Case And Certain Motions (Doc. No. 107, annexed hereto as Exhibit

2, the "Declaration"). Paragraph 33b of the Declaration provides as follows:

> **Sherry-Netherland Apartment.** Cooperative shares in the Sherry-Netherland
> apartment are held by Genever Holdings LLC ( "Genever US"). The membership
> interests in Genever US are, in turn, held by Genever Holdings Corporation
> ("Genever BVI"). *I hold all of the equity of Genever BVI. However, pursuant to*
> *a Declaration of Trust and Agreement, dated February 17, 2015 (the "Trust*
> *Date"), I hold such equity in trust for Bravo Luck Limited (the "Apartment*
> *Owner"). My son owns the equity of the Apartment Owner.* On or about the Trust
> Date, the Apartment Owner funded Genever US with the purchase price for the
> Apartment. These funds came from entities owned or controlled by my son and not
> from me. It also bears noting that any interest I have in Genever BVI has been
> ordered, by Justice Ostrager, to be turned over to PAX, provided that such a
> turnover does not interfere with pending litigation in the British Virgin Islands or
> the Genever US bankruptcy.

(Emphasis added). Thus, the Debtor has stated twice in this case that he owns the equity in Geneva

BVI as trustee of a trust for the benefit of Bravo Luck, *i.e.*, he has stated that he is not the equitable

owner of Genever BVI.

6.      With respect to the Genever Holdings LLC ("Genever LLC") Chapter 11 referred

to in the Global Notes, on October 12, 2020, Genever LLC filed its voluntary petition under

Chapter 11 of the Bankruptcy Code (Bankr. S.D.N.Y. Case No. 20-12411, the "Genever Chapter

11") with the United States Bankruptcy Court for the Southern District of New York (the "New

York Bankruptcy Court"). In a disclosure statement (which has not been approved by the

Bankruptcy Court in the Genever Chapter 11) filed in its bankruptcy case on January 7, 2022,

Genever stated that it is a New York limited liability company and the owner of the Apartment.

The beneficial ownership of the Apartment, Genever LLC and/or Genever BVI, has been the

subject of litigation between Genever LLC, Bravo Luck Limited and PAX pending in the Supreme

Court, New York County (Index No. 652077/2017) (the "New York Court") and in the Eastern

Caribbean Supreme Court in the British Virgin Islands (Index. No. BVIHCOM2020/0137) (the

"BVI Court"). According to Genever LLC's disclosure statement, such litigation has been

generally referred to as the "Ownership Dispute" throughout the Chapter 11 case. Bankr. S.D.N.Y.

Case No. 20-12411, Doc. No. 165, at 1-2.

7.      On September 24, 2021, Genever LLC filed in the Genever Chapter 11 its Debtor's

Omnibus Second Renewed Motion (i) To Approve Second Amended And Restated Settlement

Agreement With Bravo Luck And Pax; And (ii) To Hire Melanie Cyganowksi As An Employee

Only To Act As The Sale Officer For The Debtor's Bankruptcy Estate (Bankr. S.D.N.Y. Case No.

20-12411, Doc. No. 131, annexed hereto as Exhibit 3, the "Settlement Motion"). Annexed as

Exhibit A to the Settlement Motion is the Second Amended And Restated Settlement Agreement

(the "Settlement Agreement") by and among Genever LLC, PAX and Bravo Luck. Paragraphs 2

through 6 of the Settlement Agreement provide for a sale of the Apartment in a process overseen

by Melanie Cyganowksi. Paragraph 7 of the Settlement Agreement provides:

>        a.      Stay relief is granted to allow PAX to prosecute, and the Debtor to
> defend, the state court action currently pending in the New York Supreme Court
> under Docket No. 652077/2017 (the "State Court Action"), with the stay to
> otherwise remain in place for all other purposes, including relating to
> enforcement or collection of any judgment entered against the Debtor in the
> State Court Action, pending further order of the Bankruptcy Court upon further
> notice to all Parties. Nothing herein shall be construed as an acknowledgment
> of the appropriate forum outside the bankruptcy court to address any such
> issues, with all Parties' rights expressly reserved.
>        b.      Nothing herein shall prejudice the rights of any party, including
> Bravo Luck and PAX to proceed with the BVI Litigation, provided that PAX,
> Bravo Luck, Kwok, Guo or any of his or its affiliates reserve the right to assert
> claims in the Bankruptcy Court relating to its status as a creditor of the Debtor,
> and PAX reserves all rights to oppose such claims on any grounds. In addition,
> notwithstanding anything contained herein to the contrary, nothing in this
> Agreement shall prejudice the rights of any Party, including Bravo Luck and
> PAX, from proceeding with any and all claims, if any, against anyone, including
> Bravo Luck, Kwok, Guo, or any of his or its affiliates, and PAX or any of its

4

affiliates, in BVI, State Court, or otherwise, and Bravo Luck and PAX reserve all rights to oppose such claims in the applicable forum.

Paragraph 1d of the Settlement Agreement defines "BVI Litigation" as "those certain actions filed by PAX in the BVI in 2020 under case No. BVIHCM 2020/0137 against: (i) Genever BVI, (ii) Bravo Luck, (iii) Kwok, and (iv) Guo, seeking, among other things, to enforce (a) the Judgment arising in the State Court Action; and (b) the Defense and Counterclaim filed on January, 14, 2021, by Bravo Luck and Guo against PAX." The disclosure statement filed by Genever LLC in the Genever Chapter 11 states:

> It is contemplated that the Ownership Dispute will be determined outside of the Bankruptcy Court, unless Bravo Luck's alternate contention that it retains an unsecured monetary claim against the Debtor is not determined in the BVI Action on the merits. In such event, the validity of Bravo Luck's monetary claim may be adjudicated in the Bankruptcy Court, or such other court of competent jurisdiction to hear the matter.

Bankr. S.D.N.Y. Case No. 20-12411, Doc. No. 165, at 3.

8.    On October 8, 2021, the New York Bankruptcy Court in the Genever Chapter 11 case entered an order (Bankr. S.D.N.Y. Case No. 20-12411, Doc. No. 141, annexed hereto as Exhibit 4) granting the Settlement Motion approving the Settlement Agreement.

9.    On July 26, 2022, the Trustee filed a letter with the New York Bankruptcy Court stating, among other things, "[a]s made clear in Corporate Governance Rights Motion [filed in the Debtor's case], the motion is not an attempt to request any relief with respect to the chapter 11 case of Genever (US), including any modification to the *Second Amended and Restated Settlement Agreement*." Bankr. S.D.N.Y. Case No. 20-12411, Doc. No. 194 (annexed hereto as Exhibit 5). Notwithstanding that the Settlement Agreement approved by the New York Bankruptcy Court contemplates that the Ownership Dispute will be resolved in the State Court Action or the BVI Litigation, and possibly with respect to a Bravo Luck monetary claim by the New York Bankruptcy

5

Court or another court of competent jurisdiction, and despite the Trustee's statement to the New York Bankruptcy Court that the Motion (as defined below—the Trustee sent the Motion to the New York Bankruptcy Court, he has not sent the Revised Proposed Order to the New York Bankruptcy Court) is not an attempt to request any relief with respect to the Settlement Agreement, via the Proposed Revised Order the Trustee seeks to resolve the ownership of Genever BVI.

Background On The UK Action Against UBS

10.    As the Court has been informed, prior to the Petition Date (in September, 2020), the Debtor and two other plaintiffs commenced an action in the United Kingdom against UBS AG asserting damages of some $500 million. The firm of Harcus Parker in London continues to represent the two other plaintiffs in that action and represented the Debtor until the appointment of the Trustee. The Debtor understands that as a matter of U.S. Bankruptcy law the Trustee was automatically substituted as plaintiff in the UK action, so that the Debtor believes that Harcus Parker is his former counsel, but the Debtor does not know the requirements of UK law other than as described below by Harcus Parker.

11.    After the Trustee's appointment, Jenny Morrissey, a partner at Harcus Parker reached out to the undersigned and Stephen Kindseth to get a status report on the Debtor's US bankruptcy case and, in particular, the appointment of the Trustee. The undersigned did not speak to Attorney Morrissey, but, rather, in an effort to cooperate with the Trustee and after communicating to the Trustee in advance, the undersigned sent the following e-mail to Attorney Morrisey on July 22, 2022:

> I know that you have been trying to contact Steve and me regarding the status of Mr. Kwok's Chapter 11 bankruptcy case pending in the US. This is to inform/confirm to you that Luc Despins, copied here, has been appointed as the Chapter 11 trustee in Mr. Kwok's bankruptcy case. Any interest of Mr. Kwok in the litigation vs UBS pending in London (the "UBS Litigation") is property of Mr. Kwok's bankruptcy estate. Upon Mr. Despins appointment as Chapter 11 trustee, he exercises control over all property of the bankruptcy

6

estate, including the UBS Litigation, so that he now has authority and standing to prosecute the UBS Litigation. Mr. Kwok has no authority or standing at this time to prosecute the UBS Litigation. Accordingly, please communicate directly with Mr. Despins regarding the status of the UBS Litigation. Thank you.

The undersigned had no further contact with Attorney Morrissey until August 2, and the undersigned did not hear anything from the Trustee regarding Attorney Morrissey or the UK action until the Trustee filed the Revised Proposed Order (as defined below) on the evening of July 31, 2022.

12.    On August 2, following the hearing in the Court on August 1, the undersigned had a phone conversation with Attorney Morrissey. During that conversation, Attorney Morrissey stated to the undersigned the following:

- A U.S. trustee in bankruptcy is not automatically recognized in UK Courts under UK law.

- The Trustee currently has no authority under UK law in the courts in the UK action.

- The Trustee is not correct to the extent that he takes the position that his appointment as trustee in the Debtor's case has extraterritorial effect under UK law.

- The Trustee will not be recognized under UK law until he is recognized under cross-border rules.

- Based on the foregoing, Harcus Parker does not have to turn over any files to the Trustee.

- A letter from the Debtor consenting to the release of his materials may be sufficient for the turn-over of certain documents, but the Debtor needs to know and understand what he is consenting to and his consent must be freely given.

- Any such consent will only be sufficient to cover what the Debtor owns.

- Harcus Parker represents two other clients. The privilege is jointly held and cannot be waived by the Debtor on behalf of those other clients. Harcus Parker will have to notify its other clients, and they will have to consent to any release of information.

- Harcus Parker would need confirmation from the Trustee that Paul Hastings would have proper "barriers" in place because of Paul Hastings' representation of UBS.

- Harcus Parker has professional obligations and it is not improperly refusing to hand over files, rather it is concerned with complying with its professional obligations and ensuring that privilege is protected.

- Attorney Morrissey did not tell the Trustee that Harcus Parker is taking this position because it is concerned about being sued by the Debtor.

Attorney Morrissey told the Trustee the foregoing in a phone conversation on July 25 and in e-mails.

As noted above, the undersigned had no contact with Harcus Parker between the undersigned's July 22 e-mail to Harcus Parker quoted above and the August 2 conversation related herein. The Trustee never spoke to the undersigned about the Trustee's communications with Harcus Parker and never made any request of the Debtor regarding Harcus Parker before filing the Revised Proposed Order. The idea for the July 22 e-mail came from the undersigned, not the Trustee. The Trustee did not inform the Court of his communications with Harcus Parker at the August 1 hearing, notwithstanding the fact that those communications, as discussed above, took place before that hearing.

13.    Following the undersigned contacting Harcus Parker on August 2, there is now some discussion among the undersigned, the Trustee and Harcus Parker as to what communication from Harcus Parker's perspective *might* be sufficient for Harcus Parker to release *some*

8

information to the Trustee. As of the filing of this objection, satisfactory language has not been worked out between the Trustee and Harcus Parker.

14.     On July 23, 2022, the Trustee filed his Motion Of Chapter 11 Trustee For Entry Of Order, Pursuant To Bankruptcy Code Sections 363, 541, 1108, And 105, (A) Confirming That Chapter 11 Trustee Holds All Of Debtor's Economic Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of The Estate, And (C) Granting Related Relief (Doc. No. 598, the "Motion"),  pursuant to Bankruptcy Code sections 363, 541, 1108 and 1505. In the Motion, the Trustee seeks an order from the Court providing, among other things, that:

- The Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all Debtor-Controlled Entities, including, without limitation, Genever (BVI). For the avoidance of doubt, the foregoing rights include the Trustee's authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.
- To the extent the Trustee's exercise of economic and governance rights with respect to the Debtor-Controlled Entities is deemed to be outside the ordinary course of business, such exercise is hereby approved, as there is sound business justification for the exercise of such rights, including because the Trustee holds all of the Debtor's economic and governance rights with respect to such entities for the benefit of the Estate.
- Trustee is authorized to act, as the Debtor's foreign representative, in any foreign country on behalf of the Estate in any way permitted by applicable foreign law for the purpose of (a) investigating, collecting, and recovering assets of the Debtor located in foreign countries, including relief in foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign corporate registries (or similar entities) holding such documents with respect to the Debtor-Controlled Entities. Without limiting the foregoing, the Trustee is authorized, pursuant to section 1505 of the Bankruptcy Court, to request and obtain the corporate documents related to Genever (BVI) from the appropriate British Virgin Island ("BVI") entity holding such corporate documents.

- The Court requests the assistance of the foreign courts, including the assistance of the BVI courts regarding any request of the Trustee for relief (including on an emergency basis) with respect to the Trustee's exercise of corporate control over Genever (BVI).
- Nothing in the Order shall be deemed to authorize any particular action with respect to Genever Holdings LLC ("Genever (US)") in its chapter 11 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Genever Court"). The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its chapter 11 case.

Motion, Proposed Order (the "Original Proposed Order"), at ¶¶ 2-4, 6-7. At paragraph 17 of the Motion, the Trustee states: "To be clear, through this Motion, the Trustee is merely seeking confirmation from this Court that he now holds the same economic and corporate governance rights in the Debtor-Controlled Entities as the Debtor had prior to entry of the Appointment Order. The Trustee is not seeking permission to exercise such governance rights, as doing so is well within the ordinary course of the Debtor's business." In the Motion, the Trustee did not seek relief pursuant to Bankruptcy Code section 521 and did not seek any relief with respect to Harcus Parker, and did not seek to require any affirmative action by the Debtor. In the Motion, the Trustee stated that he was "merely seeking confirmation" of his rights.

15.     On July 29, 2022, the Debtor filed its Response to the Motion (Doc. No. 643, the "Response"), raising objections to the relief sought in the Motion and the Original Proposed Order. The Debtor maintains his objections made in the Response and reserves all rights with respect thereto.

The Revised Proposed Order

16.     On July 31, 2022, at 10:09 p.m., the night before the expedited hearing on the Motion, the Trustee filed his Chapter 11 Trustee's Notice Of Filing Revised Proposed Order Pursuant To Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming That

Chapter 11 Trustee Holds All Of Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 645, the "Notice"). The Notice states that the "proposed order has been revised to address the concerns raised in the Debtor's objection to the Corporate Governance Rights Motion as well as to resolve certain informal comments received by the Trustee." ***The Revised Proposed Order does not address any concerns raised by the Debtor in the Response.***

17.     Attached to the Notice is the Trustee's revised Order Pursuant To Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming That Chapter 11 Trustee Holds All Of Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (the "Revised Proposed Order"). ***The Revised Proposed Order expressly adds as a basis for relief Bankruptcy Code section 521, which was not a basis for relief in either the Motion or the Original Proposed Order***. The Revised Proposed Order adds the following paragraph, now proposed paragraph 3 to the Revised Proposed Order:

> In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to, respectively, (a) cooperate with the Trustee as necessary to enable the Trustee to perform his duties, including, without limitation, the Trustee's investigation into the assets of the debtor, and (b) surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate (including, without limitation, his shares in Genever (BVI) and all related corporate governance documents). In furtherance of the Debtor's duties under sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to:
> (a) execute the share transfer form and the director's resolution with respect to the Debtor's shares in Genever (BVI) in the forms attached hereto as Exhibit A (leaving such documents in undated form) and deliver, within two business days after entry of this Order, such executed documents to the Trustee (who will then submit such documents to the registered agent for Genever (BVI) in the British Virgin Islands ("BVI")); and

(b) request, no later than two business days after entry of this Order, his counsel, including, without limitation, the law firm of Harcus Parker Limited and any former counsel (collectively, "UK Counsel"), in the litigation styled Kwok Ho Wan, Ace Decade Holdings Limited, and Dawn State Limited v. UBS AG (London Branch), Case No. CL-2020-000345, pending in the High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court (the "UBS Litigation"), to (i) immediately deliver to and share with the Trustee all memoranda, advice, and other communications by UK Counsel to the Debtor regarding the UBS Litigation, any other information (whether in written form or not) regarding the merits of the UBS Litigation, and any settlement offers received or made by the Debtor or UK Counsel in connection with such litigation, and (ii) immediately provide the Trustee will full access to UK Counsel's case file in the UBS Litigation as well as all pleadings and other court documents filed in the UBS Litigation (in the case of both (i) and (ii), regardless of whether such documents, communications, or information are subject to any attorney-client privilege, work product, or other privilege and regardless of when such documents, communications, or information were made or created). In furtherance of the foregoing, the Debtor shall deliver, no later than two business days after entry of this Order, a copy of the letter in the form attached hereto as Exhibit B to the law firm of Harcus Parker Limited (with a copy thereof to be delivered to the Trustee). For the avoidance of doubt, the Trustee shall be deemed, for all purposes, to be the owner of the Debtor's claims asserted in the UBS Litigation.

Annexed as Exhibit A to the Revised Proposed Order is a Share Transfer Instrument that would transfer the shares of Genever BVI to the Trustee solely in his capacity as Trustee and Resolutions approving such transfer. Annexed as Exhibit B to the Revised Proposed Order is a draft letter from the Debtor to the Harcus Parker firm in the UK. The first two paragraphs of the draft letter are essentially verbatim what the undersigned put in his e-mail to Attorney Morrissey on July 22. The third and fourth paragraphs of the letter provide as follows:

I hereby expressly authorize you to have full and complete discussions with Mr. Despins regarding the UBS Litigation, the merits thereof, any related settlement discussions, and any other topics related to the prosecution of the UBS Litigation, regardless of any attorney-client privilege, work product, or other privilege, which I hereby fully waive for such purposes.

Among other things, and as detailed in the order of the U.S. Bankruptcy Court (a copy of which is enclosed as Exhibit 1), I instruct you to (i) immediately deliver to and share with the Trustee all memoranda, advice, and other communications by you to me regarding the UBS Litigation, any other information (whether in written form or not) regarding the merits of the UBS Litigation, and any settlement offers

received or made by me or you in connection with such litigation, and (ii) immediately provide the Trustee will full access to your case file in the UBS Litigation as well as all pleadings and other court documents filed in the UBS Litigation.

The Trustee did not discuss the content of this proposed letter with the undersigned before filing the Revised Proposed Order.

<u>The Relief Provided For In The Revised Proposed Order Must Be Sought by Separate Written Motion</u>

18.    Federal Rule of Bankruptcy Procedure 9013 provides in relevant part: "A request for an order, except when an application is authorized by the rules, shall be by written motion, unless made during a hearing. The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought." While Rule 9013 (and Federal Rule of Civil Procedure 7(b), from which Rule 9013 was derived) allows for oral motions during hearings, courts have held that the type of motions that may be made orally during a hearing is limited. Typically, such motions relate and are incidental to the written motion being heard, such as motions to exclude evidence, for a directed verdict, or for a mistrial. Allowing oral motions during hearings that raise new issues and/or seek new relief would defeat the purposes of requiring written motions, including statement of a claim with particularity and notice. *See, e.g., In re Bistrian*, 184 B.R. 678, 682 (E.D. Pa. 1995) ("Both Rule 7(b)(1) and Rule 9013 create an exception for oral motions made during a hearing or trial. If read broadly to allow any oral motion during any hearing, regardless of the nexus between them, the exception would hobble the writing requirement and the policies underlying it. Not surprisingly, then, courts and commentators have preserved the record-making and notice functions of the rules by developing principles that limit the scope of oral motions made during a hearing. … [A] contrary holding could create institutional chaos for the bankruptcy court. Written motions that 'state with particularity the grounds therefor' allow parties to decide whether

to oppose them or not, and to file thorough, researched responses. Written motions also allow the court to engage in its own research and analysis in advance of the hearing. In contrast, unrelated oral motions, by definition, raise new issues that neither the court nor the parties could have foreseen, or for which they could have prepared."); *Hammond-Knowlton v. Hartford-Connecticut Trust Co.*, 26 F.Supp. 292, 293 (D. Conn. 1939) ("Federal Rules of Civil Procedure No. 7(b)(1) provides that an application for an order shall be by motion made in writing, unless made during a hearing or trial. An oral argument on a motion previously made is not, in my opinion, the 'hearing' at which the necessity for reducing motions to writing may be obviated. Motions made at a hearing are obviously such as are incidental to the hearing itself, such as motions to exclude evidence, or for a directed verdict, or for a mistrial, etc. In other words, they are such motions as are recorded in the minutes of the trial or hearing, and it is for that reason that the motion need not be reduced to writing and notice thereof given."); *Richardson v. Checker Acquisition Corp. (In re Checker Motors Corp.)*, 463 B.R. 858, (Bankr. W.D. Mich 2012) ("The requirement for a written motion in Rule 7(b)(1) and Bankruptcy Rule 9013 serves two functions, a record-making function and a notice function. The record-making function permits the court and the parties to determine what occurred. The notice function permits the opposing party and the court to prepare adequately. … Some illustrations of types of requests which need not be in writing include motions to exclude or strike evidence, motions for judgment as a matter of law, and motions for mistrial. … Motions commonly permitted to be made orally, such as those to exclude or strike evidence, are motions which typically require no advance notice to the opposing party and, therefore, obviate the need for a formal, written motion. In other circumstances, however, such as the motions to amend first made during the argument on the Defendant's motion to dismiss, the far better practice is to require motions to be filed in writing."); 5 Charles A. Wright and Arthur R. Miller, Federal Practice and

Procedure § 1193, at 64 (3rd ed. 2004) ("The provision in Rule 7(b) for oral motions does not mean

that on a hearing of a written motion a party may interpose a different motion for unrelated relief

orally and without notice, and thereby circumvent the writing and particularity requirements of

Rule 7(b)(1)." *See also Piccolo v. CFTC*, 388 F.3d 387, 391 (2nd Cir. 2004) ("Fundamental fairness

requires a fair trial in a fair tribunal, with fair notice of the matters at issue and an opportunity to

cross-examine witnesses." (internal citation omitted)).

19.     The relief sought in the Revised Proposed Order is entirely new and not sufficiently

related or connected to the relief sought in the Motion. The relief sought with respect to Harcus

Parker is not a subject of the Motion in any way shape or form. There is nothing in the Motion

regarding the Debtor being ordered to execute a share transfer document or resolutions. The

Trustee did not seek in the Motion to require the Debtor to take any affirmative act. Bankruptcy

Code section 521 is not even mentioned as a basis for relief in the Motion.

20.     Here, the Trustee did not make a motion with respect to the relief sought in Revised

Proposed Order. He did nothing more than file the Revised Proposed Order in connection with the

Motion. By seeking relief in this way, the Trustee, among other things, has failed to state with

particularity the grounds for relief, and has failed to give the Debtor and other parties sufficient

notice. If the Trustee wants to seek the new relief proposed in the Revised Proposed Order, he

must be required to file a new motion.

<u>The Relief Sought In The Revised Proposed Order With Respect To The Shares Of Genever Holdings Corporation Can Only Be Obtained Via An Adversary Proceeding</u>

21.     Bankruptcy Code section 541(d) provides: "Property in which the debtor holds, as

of the commencement of the case, only legal title and not an equitable interest, … becomes

property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's

legal title to such property, but not to the extent of any equitable interest in such property that the

debtor does not hold." Thus, "when the debtor holds or is in possession of property subject to an express, constructive, resulting or statutory trust whose validity is recognized under the terms of the Code, the estate will generally hold such property subject to the outstanding interest of the beneficiaries." 5 *Collier on Bankruptcy* ¶ 541.28[6], at 541-126 (16th ed. 2015). Further, Bankruptcy Code section 541(b)(1) provides: "Property of the estate does not include—(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor … ." Section 541(b)(1) "has been held to exclude from the estate property with respect to which the debtor was executrix of a decedent's estate, as well as a debtor's legal interest in a testamentary trust as trustee for a life tenant and as a custodian of his minor children's remainder interest." 5 Collier on Bankruptcy ¶ 541.17, at 541-87 (16th ed. 2020).

22.      As described above, the Debtor has stated twice in this case that he is not the equitable owner of the equity in Genever BVI, he is a trustee for the benefit of Bravo Luck. Thus, the Debtor's position is that he holds the Genever BVI shares subject to the outstanding interest of Bravo Luck, and the power he may exercise as trustee of the trust for the benefit of Bravo Luck is not property of the bankruptcy estate. It is clear that the Trustee disagrees, in that by the Revised Proposed Order the Trustee seeks an order requiring the Debtor to transfer the shares in Genever BVI to the Trustee "solely in his capacity" as Trustee. As is made clear from the above, there is has been a long-running dispute between Genever LLC, PAX and Bravo Luck over the ownership of Genever BVI, Genever LLC and/or the Apartment. Whether there is and what is property of the bankruptcy estate is in dispute.

23.      Federal Rule of Bankruptcy Procedure 7001(a) provides, in relevant part: "[t]he following are adversary proceedings: … (2) a proceeding to determine the validity, priority or extent of a lien or other interest in property …." Cases have consistently held that where there is a

dispute regarding whether property is property of the bankruptcy estate, that dispute may only be resolved via an adversary proceeding. *Jahr v. Frank*, 2012 Bankr. LEXIS 3627, [*13-14] (9th Cir. BAP Aug. 1, 2012) ("[I]t is error for a bankruptcy court to employ contested matter procedure when adversary proceeding procedure is required. … [I]t is settled law in this circuit that it is error for a bankruptcy court to determine property interests outside of an adversary proceeding."); *In re Hearthside Baking Co., Inc.*, 397 B.R. 899, 902 (Bankr. N.D. Ill. 2008); *In re Whitehall Jewelers Holdings, Inc.*, 2008 Bankr. LEXIS 2120, [*15-16] (Bankr. D. Del. July 28, 2008) ("[T]he Court cannot determine whether the Consigned Goods are property of the estate through a contested matter, such as a sale motion under Section 363. Federal Rules of Bankruptcy Procedure 7001(2) requires that an adversary proceeding be commenced to 'determine the validity, priority, or extent of [an] interest in property."). *See also In re Hampton Ventures*, LLC, 2019 Bankr. LEXIS 548, [*1-2] (Bankr. D. Conn. Feb. 22, 2019) ("[T]he Court determines that whether the Property is 'property of the estate' must be determined in the pending adversary proceeding before the Trustee may sell it.").

<u>The Relief Sought In The Revised Proposed Order With Respect To The Harcus Parker Letter Is Unreasonable And May Improperly Order The Debtor To Waive Attorney Client Privilege</u>

24.     Bankruptcy Code section 521(a) provides, in relevant part: "The debtor shall … (3) if a trustee is serving in the case … cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title …." There are limits to what a debtor can be required to do under this provision—among other things, a trustee's request for cooperation must be reasonable and consistent with applicable law. *E.g., Sullivan v. Miller*, 637 B.R. 723, (E.D. Mich. 2022) (521(a)(3) "requires a debtor to comply with *reasonable* requests to assist the trustee in the performance of the trustee's duties." (emphasis added)); *In re Broughton*, 2018 U.S. Dist. LEXIS 171118, [*7] (Bankr. E.D.N.C. Oct. 2, 2018) ("A debtor must comply with any *reasonable* request

that will assist the trustee in performing the trustee's duties." (emphasis added, internal quotation marks omitted)); *In re Moran*, 2013 Bankr. LEXIS 3463, [*9] (Bankr. S.D. Tex. Aug. 26, 2013) ("The debtor is required to cooperate with any *reasonable* request that will assist the trustee in performing the trustee's duties." (emphasis added)); 5 *Collier on Bankruptcy* ¶ 521.15[5], at 521-59 (16th ed. 2017) ("'Cooperate' is a broad term, indeed, and must be construed that whenever the trustee calls upon the debtor for assistance in the performance of his duties, the debtor is required to respond, at least if the request is not unreasonable. [T]he debtor is not required to comply with every request made by the trustee.").

25.    The relief sought with respect to Harcus Parker is unreasonable. The Trustee seeks a Court order ordering the Debtor to send a letter in English, a language that he cannot read, to Harcus Parker instructing Harcus Parker to take actions that Harcus Parker believes would violate its professional obligations, including its obligations to other clients. The Trustee seeks this Court order notwithstanding that he has been informed by Harcus Parker that they believe that what the Revised Proposed Order calls for would be a violation of Harcus Parker's professional obligations and that he must take certain steps in order to be recognized as a proper party in the UK action.

26.    The relief sought with respect to Harcus Parker would violate applicable law with respect to privilege. The Trustee asks the Court to order the Debtor to waive by the letter to Harcus Parker any attorney-client privilege that the Debtor may still hold under UK law. The Trustee has provided no authority that the Court has the power to do this, under either U.S. or UK law—one of the problems created by the Trustee's failure to seek relief by a motion, where he would be obligated to state with particularity the grounds for the relief sought--and it does not, at least under U.S. law. *E.g., In re Dow Corning Corp.*, 261 F.3d 280, 284 (2nd Cir. 2001) ("[C]ompelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception,

is contrary to well established precedent."). Further, it is not clear that such a compelled waiver would be effective under UK law, as it would not be under U.S. law. Attorney Morrissey's statement that any waiver must be freely given suggests that it would not be. The Trustee owns whatever privilege he owns under UK law, but that is for the Trustee to work out with his own UK counsel, whether Harcus Parker or another law firm (the Trustee has already stated that Paul Hastings will not represent him in the UK action). What the Trustee may not do via an order of this Court is force the Debtor to waive any privilege that he may still possess under UK law.

27.     Rather than take the requisite steps that UK counsel advised were necessary under UK law to be recognized as a plaintiff in the UK action, burdensome though they may be, the Trustee decided to try to take an impermissible short-cut to obtain information in that action by coming to this Court.

28.     To be clear—the Debtor has no desire or intention at this point to be involved in any way in managing or controlling the UK action against UBS. This is evidenced by the fact that the undersigned initiated the July 22 e-mail to Harcus Parker quoted above. By that e-mail, the Debtor was seeking to get out of the way and let the Trustee do his job in connection with the UK action. But the Debtor cannot reasonably be expected to purport to instruct UK counsel to take action that UK counsel believes that it is ethically prohibited from taking. And the Trustee should not be empowered by an order of this Court to circumvent foreign law regarding privilege.

**WHEREFORE,** the Debtor respectfully requests that the Court not enter the Revised Proposed Order and grant him such other and further relief as justice requires.

Dated at Bridgeport, Connecticut on this 4th day of August, 2022.

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ Eric Henzy*

19

Eric Henzy (ct12849)
Stephen M. Kindseth (ct14640)
Aaron A. Romney (ct28144)
James M. Moriarty (ct21876)
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
          skindseth@zeislaw.com
          aromney@zeislaw.com
          Jmoriarty@zeislaw.com
          jcesaroni@zeislaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 4th day of August, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Eric Henzy*
Eric Henzy (ct12849)