```
                UNITED STATES BANKRUPTCY COURT
                   DISTRICT OF CONNECTICUT
                     BRIDGEPORT DIVISION


In Re                          *   Case No. 22-50073(JAM)
                               *
     HO WAN KWOK,              *   Bridgeport, Connecticut
                               *   August 1, 2022
               Debtor.        *
                               *
* * * * * * * * * * * * * * *  *
```

                 TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE JULIE A. MANNING
               UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                AARON ROMNEY, ESQ.
                               ERIC A. HENZY, ESQ.
                               STEPHEN M. KINDSETH, ESQ.
                               Zeisler & Zeisler, P.C.
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604

                               WILLIAM BALDIGA, ESQ.
                               Brown Rudnick, LLP
                               Seven Times Square
                               New York, NY  10036


For the Creditor, Pacific      PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity     STUART M. SARNOFF, ESQ.
 Fund L.P.:                    O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               PATRICK BIRNEY, ESQ.
                               Robinson & Cole
                               28 Trumbull Street
                               Hartford, CT  06103


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES Cont'd:

For the Creditors Committee:   IRVE GOLDMAN, ESQ.
                               Pullman & Comley
                               850 Main Street
                               Bridgeport, CT  06601

For the Creditors, Rui Ma,     KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:     McElroy Deutsch
                               225 Liberty Street
                               36th Floor
                               New York, NY  10281

For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the United States
                                  Trustee
                               The Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510

For HK International and        STEPHEN M. KINDSETH. ESQ.
 Mei Guo:                      Zeisler & Zeisler, P.C.
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604

Chapter 11 Trustee:            LUC A. DESPINS, ESQ.
                               Paul Hastings LLP
                               200 Park Avenue
                               New York, NY  10166

Proposed Counsel for the       DOUGLAS SKALKA, ESQ.
 Chapter 11 Trustee:           Neubert, Pepe & Monteith
                               195 Church Street
                               New Haven, CT  06510
```

3

1          ((Proceedings commenced at 12:15 p.m.)

2               THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok.

4               THE COURT:  Okay.  Good afternoon.  If we could

5     have appearances for the record, starting with the Chapter

6     11 Trustee, please.

7               MR. DESPINS:  Good afternoon, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9               THE COURT:  Good afternoon.

10              MR. SKALKA:  Good afternoon, Your Honor.  Douglas

11    Skalka as proposed local counsel for the Chapter 11 Trustee.

12              THE COURT:  Good afternoon.

13              MS. CLAIBORN:  Good afternoon.  Holley Claiborn

14    for the U.S. Trustee.

15              THE COURT:  Good afternoon.

16              MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

17    Goldman, Pullman & Comley, representing the creditors

18    committee.

19              THE COURT:  Good afternoon.

20              MR. GOLDMAN:  If I can ask where I might get a

21    mask from the Court?

22              THE COURT:  There's some right on the table here,

23    Attorney Goldman, right in front of Attorney Henzy.

24              MR. GOLDMAN:  Oh, okay.  Thank you.

25              THE COURT:  Sure.

4

1          MR. FRIEDMAN:  Good afternoon, Your Honor.  Peter

2     Friedman from O'Melveny & Myers, on behalf of Pacific

3     Alliance Asia Opportunity Fund, L.P.

4          THE COURT:  Good afternoon.

5          MR. FRIEDMAN:  Thank you.

6          THE COURT:  And with your is your co-counsel and

7     local counsel?

8          MR. SARNOFF:  Stuart Sarnoff also of O'Melveny &

9     Myers.

10          MR. BIRNEY:  And Patrick Birney, Robinson & Cole.

11     Good afternoon.

12          THE COURT:  Good afternoon.

13          Attorney Henzy?

14          MR. HENZY:  Eric Henzy for Ho Wan Kwok.

15          THE COURT:  Good afternoon.

16          MR. ROMNEY:  Aaron Romney also on behalf of

17     debtor, Ho Wan Kwok.

18          THE COURT:  Good afternoon.

19          MR. KINDSETH:  Stephen Kindseth on behalf of Ho

20     Wan Kwok.

21          THE COURT:  And what about your other clients, Mr.

22     Kindseth?

23          MR. KINDSETH:  I don't know if it would be

24     necessary for us to appear on behalf of HK International,

25     but also on behalf of HK International, Stephen Kindseth,

5

1    Zeisler & Zeisler.

2              THE COURT:  And Mei Guo?

3              MR. KINDSETH:  And Mei Guo.

4              THE COURT:  Okay.  Thank you.

5              MS. MAYHEW:  Good afternoon, Your Honor.  Kristen

6    Mayhew, McElroy Deutsch Mulvaney & Carpenter, on behalf of

7    Creditors Rui Ma, Zheng Wu and Weican Meng.

8              THE COURT:  Good afternoon.

9              Mr. Baldiga, I saw you back there, but please go

10   ahead and announce --

11             MR. BALDIGA:  Yes, Your Honor.  William Baldiga,

12   Brown Rudnick.  Thank you.

13             THE COURT:  Good afternoon.

14             Does anyone else wish to make an appearance on the

15   record today?

16        (No audible response.)

17             THE COURT:  Okay.  Mr. Baldiga, we're going to

18   take up your application, your motion to withdraw as

19   attorney, first, if you'd like to come forward, please.  You

20   can come up to the lectern if that's easier, whatever is

21   easier for you.

22             MR. BALDIGA:  I'll do that.  Thank you.

23             THE COURT:  Good afternoon.

24             MR. BALDIGA:  Good afternoon.  Well, Your Honor,

25   our motion was filed on July 13.  We supplemented it with a

6

1    further submission at docket 623 last week.

2              THE COURT:  I did see that.  Thank you.

3              MR. BALDIGA:  Okay.  And I think there were

4    possibly at least two concerns with the court or among other

5    parties.

6              One is a matter of law, whether we are entitled to

7    withdraw, especially now that there has been the appearance

8    of two other firms for Mr. Kwok as debtor out of possession.

9              And then second, we anticipated, I think

10   appropriately and had conversations with Ms. Claiborn and

11   Mr. Despins, as to our continuing responsibilities as to our

12   retainer and as former counsel to the debtor.

13             We just wanted there to be no mystery or no

14   question about the fact that we understand the rules.  We've

15   complied with the rules throughout and would continue to.

16   And if -- if there were any concerns, I wanted to be

17   proactive in addressing those, including with the court

18   today.

19             We have no benefit from holding the retainer.  And

20   so we -- other than security for our fee obviously -- and so

21   we're happy to have whatever arrangements -- I think the

22   current arrangements are fine with Ms. Claiborn and her

23   office and with the trustee and his office --

24             THE COURT:  For your firm to retain the -- or to

25   keep the retainer subject to an order granting your fees, is

1      that the current -- is that --

2              MR. BALDIGA:  Yes, Your Honor.

3              THE COURT:  Yeah.  Sure.  Okay.  Go ahead.  That's

4      fine.

5              MR. BALDIGA:  And, I mean, it's with a very

6      wellregarded bank.  It's not the firm's funds.

7              THE COURT:  Right.

8              MR. BALDIGA:  It's we keep retainers in a

9      segregated account.  We're a firm in -- fortunately in good

10     standing financially and otherwise so I don't think they're

11     at risk in any way.

12              As to replacement counsel, I unfortunately was on

13     vacation at the last hearing, but I've read the --

14              THE COURT:  Well, hopefully it was a good

15     vacation.

16              MR. BALDIGA:  -- transcript and I understand the

17     dialog.

18              THE COURT:  Hopefully, it wasn't unfortunate that

19     you were on vacation.  Hopefully --

20              MR. BALDIGA:  I wasn't going to say that, but I

21     appreciate that comment.  I think that's right.  I'm not

22     going to take a position as to the Zeisler retention.

23              THE COURT:  Understood.

24              MR. BALDIGA:  That's a matter for other parties to

25     address.  But Mr. Mitchell has appeared.  The Zeisler firm

1    has appeared.

2              I think our motion to withdraw should be allowed

3    as a matter of law whether or not actually there is

4    replacement counsel.  But with the replacement counsel, I

5    think it should be, hopefully, routinely addressed.

6              I'm happy to answer any questions from any party

7    or the court, but otherwise I would just rest on those

8    papers.

9              THE COURT:  Thank you.  I want to hear from

10   everyone else as -- I haven't seen anyone object to your

11   motion and I don't know of any objection.

12             So if anyone has an objection I'd like them to

13   raise it now.

14             MR. DESPINS:  Your Honor, it's not an objection,

15   but we had subject to, so if we could be heard at the

16   appropriate time?

17             THE COURT:  Well, subject to -- I'm going to make

18   Brown Rudnick -- they're going to have to file a fee

19   application.  They know that.  That's already -- that's not

20   a problem.

21             Is the issue -- when you say -- are you concerned

22   about Brown Rudnick holding onto the funds?  I thought there

23   was no problem with that.

24             MR. DESPINS:  No, Your Honor.  The issue is that

25   we want them to confirm that they will make themselves

1    available.

2              And may I approach, Your Honor?

3              THE COURT:  Yes.  Yes.  Yes, please.

4              MR. DESPINS:  Okay.

5              THE COURT:  I'm sorry.  I understand what your

6    point is now that I forgot to mention.  You had said in your

7    papers that you would like them to be available and to

8    assist you if necessary.

9              MR. DESPINS:  Subject to whatever protective order

10   Your Honor would enter.

11             THE COURT:  Right.

12             MR. DESPINS:  We filed a 2004 --

13             THE COURT:  Yes.

14             MR. DESPINS:  -- last week.  They're one of the

15   targets.

16             THE COURT:  Right.

17             MR. DESPINS:  So we don't need to debate the

18   merits of that.  Just that --

19             THE COURT:  Right.

20             MR. DESPINS:  -- I want to make sure that they're

21   not sailing into the sunset.  That's all.

22             THE COURT:  Okay.  And have you and Mr. Baldiga

23   had any -- I don't know that you've had an opportunity, but

24   have you had any conversations about what you've just said

25   on the record?

10

1          MR. DESPINS:  Not about that point.

2          MR. BALDIGA:  I'd be happy to address it, Your

3    Honor.

4          Well, we have obligations, obviously, to the Court

5    under the rules and under law.  Former counsel is in an

6    awkward position when it comes to matters as to privilege.

7    We don't want to be whipsawed in that I don't want to make a

8    commitment to do something that could violate a privilege

9    here.

10         And so, for example, of course, I've already had

11   conversations with Mr. Despins.  Will continue to be

12   available.  I'm not hard to find.

13         I certainly don't want to make a commitment that

14   would put our firm at risk for a claim by a former client

15   that we've somehow invaded a privilege or put them in a

16   position where they couldn't defend a privilege.

17         This is really I don't think an issue for Brown

18   Rudnick as much as it is for the trustee and counsel,

19   replacement counsel, to the debtor to navigate.  These, in

20   my experience, have been challenging issues to navigate in

21   the few other cases I've been in where there's a debtor out

22   of -- out of possession.

23         So I'm pleased to continue to be available to Paul

24   Hastings as they -- as they wish, but I will not commit to

25   do something that will put our firm at risk.

1           THE COURT:  Understood.  I have a question for you

2     though too.

3           MR. BALDIGA:  Certainly.

4           THE COURT:  And I'll hear from Mr. Despins if he

5     wants to respond to what you've said.

6           What I would ask is -- and I -- I would assume

7     this would not be a problem from your perspective, that the

8     firm will, you know, accept service.  There won't be any

9     issue of service if -- Mr. Despins going to serve probably a

10    subpoena, right, on your records.  He's going to want to see

11    your records.

12          And you're going to -- you're going to either --

13    you or other counsel object on privilege grounds and then

14    we'll have to see how it all works out at the end of the

15    day, whether there can be some form of protective order

16    that's agreed to or that the Court has to enter.

17          I just don't want to have an issue that you

18    wouldn't accept service or something along -- because, to

19    me, that's rudimentary.  You have every right, your firm has

20    every right to file whatever documents they think are

21    appropriate with regard to any discovery requests that are

22    made upon you and anything like that.  That's not what I'm

23    talking about.

24          I'm just talking about I don't want us all to

25    spend time on issues of service or something that I would

12

1    consider, you know, fundamental.

2            There is every -- you have every right to raise

3    any issue you feel is appropriate under applicable law and

4    rules with regard to your attorney/client privilege and any

5    other privilege that you may assert, but I just want -- that

6    would be the commitment that the Court would -- I don't want

7    to spend any time on that and I don't think you do either.

8            MR. BALDIGA:  So two commitments, Your Honor.

9            One, as is customary and appropriate, the trustee

10   as one of his first orders of business -- I think as he said

11   in his papers, sent a simple letter, a document hold letter

12   --

13           THE COURT:  Right.

14           MR. BALDIGA:  -- which is customary in

15   investigations more generally.  And we have -- and I told

16   the trustee this, we have implemented our hold internally,

17   so we've been responsible in that regards.  So nothing will

18   be lost.  That's step number one and frankly basics.

19           Step number two, there will not need to be service

20   or constables or any type of thing.  If there's a 2004 order

21   entered, we'll comply with it.  We don't need a subpoena or

22   other formal process as long as the debtor is not

23   challenging whether this trustee has gone through the

24   appropriate steps.

25           That's really up for the debtor to say --

1          THE COURT:  I understand.

2          MR. BALDIGA:  -- that something is lacking, but it

3     won't be Brown Rudnick standing in the way.

4          THE COURT:  That's my question and my request and

5     I appreciate that.  Thank you.

6          MR. BALDIGA:  Okay.

7          THE COURT:  Now, Mr. Despins, do you have anything

8     else you want to add to what Mr. Baldiga just stated?

9          MR. DESPINS:  No, Your Honor.  You covered my

10    point.  Thank you.

11         THE COURT:  Okay.  Thank you.  All right.

12         So, Mr. Baldiga, as you said in your remarks, we

13    haven't had that many cases where -- in recent past, where

14    the debtor has been removed from possession and so the

15    issues about whether -- you know, I don't even understand

16    the two counsel yet. I'm going to talk to Mr. Henzy about

17    that.

18         But I agree with you that your motion should be

19    granted.  And it is going to be granted on the grounds that

20    other parties, other lawyers, have filed an appearance on

21    behalf of the debtor, and the debtor is out of possession.

22    So that's fine.

23         What I need to know from you, and I don't know if

24    you've had any conversations with Attorney Claiborn about

25    this, or anybody else, and I'm not saying you should have --

1    how much time do you need to file a fee application?

2              MR. BALDIGA:  On that point, Your Honor, I have

3    not had discussions, but I've had quite a bit of thought

4    about it.

5              At the -- at the last couple of hearings, one of

6    the Court's comments, which I thought was very well taken by

7    everyone, is that what you would hate to do is put people

8    through a lot of work needlessly.  I think the same goes --

9    there will be a time and a place for a fee application.

10             Given the criteria for the allowance of fees,

11   especially as counsel for the estate, is so what did your

12   work come to?

13             I think it would be very difficult for the Court

14   or any party to assess today.  For example, in your

15   memorandum of decision appointing a trustee, you cited to

16   two of the things that we brought about.

17             One was we filed a plan.  Whether that is

18   stillborn or ends up being the basis for a plan that's

19   confirmed in this case, time will tell.  I don't think it's

20   possible to assess that today and maybe not for some time.

21             Second, the boat.  We don't know where the boat --

22   the whole issue with the boat is going.  Not just

23   procedurally, but does that become part of the estate or

24   not?  Is it voluntary or by court decision?  Is it part of

25   the deal or not?

1          We take some pride in what we've done, substantial

2     pride in what we've done.  The case, for us, is not ending

3     in the way that we had intended, but I think the Court, and

4     especially the trustee, the Office of the United States

5     Trustee, the replacement counsel, the committee, will all be

6     able to assess the value of what we've done with the benefit

7     of some hindsight once the dust has settled here.

8          So I -- and it's a lot of work to put together a

9     fee application.

10          The other problem with doing a fee application

11     today is it's very hard to go further than what I just did

12     without concerns of privilege and confidentiality.  Those

13     will be lessened over time as discovery plays out.

14          So I would ask that given the recognition, that I

15     confirm again, that the money doesn't go anywhere without a

16     fee application that we just table that for this -- at this

17     point.  And at some point any party can say to the Court or

18     to me, hey, I think we need to get this going.  But I just

19     don't think it's today.  And I think as the case proceeds it

20     will become more obvious when that will be.

21          THE COURT:  Okay.  I would like to hear from

22     others about that point.  Okay?

23          MR. BALDIGA:  Of course.

24          THE COURT:  But I understand your point.  Thank

25     you.

1           All right.  Does anybody --

2           MR. BALDIGA:  Anything else from me right now,

3    Your Honor?

4           THE COURT:  Say that again?

5           MR. BALDIGA:  Anything else right now from --

6           THE COURT:  I don't have any questions right now.

7    I understand what your position is.  And I'm curious to hear

8    what other parties think about that.

9           MR. BALDIGA:  I'll stand back for a moment.

10          THE COURT:  Okay.  Thank you.

11          I'd like to know what the other parties think

12   about Mr. Baldiga's suggestion that while the motion to

13   withdraw the appearance would be granted at this time that

14   there wouldn't be a need to file a fee application at this

15   time?

16          MS. CLAIBORN:  Your Honor, Holley Claiborn for the

17   U.S. Trustee.

18          I think Attorney Baldiga makes some fair and valid

19   points about the process and about where we are in this

20   case.  And perhaps the easiest way to do it is to put it on

21   a tickler say four to six months out and we can revisit the

22   issue, where we are in the case and whether or not it's an

23   appropriate time to file a fee application.

24          Because as Attorney Baldiga noted there would be a

25   difficulty at this point in assessing the value to the

17

1    estate of the services that were provided because we don't

2    know all the facts and we aren't anywhere near the finish

3    line.

4              THE COURT:  Okay.  Thank you.

5              Anyone else wish to be heard?

6              MR. DESPINS:  Your Honor, the trustee agrees with

7    Mr. Baldiga's proposal.

8              THE COURT:  Okay.  Thank you.

9              Mr. Friedman?

10             MR. FRIEDMAN:  It's Peter Friedman from O'Melveny

11   & Myers.  PAX agrees that this is a sensible way to proceed.

12             THE COURT:  Okay.  Thank you.

13             MR. GOLDMAN:  Your Honor, for the committee, Irve

14   Goldman.  We have no problem with the proposal suggested by

15   the U.S. Trustee.

16             THE COURT:  And Mr. Baldiga?

17             MR. GOLDMAN:  Correct.

18             THE COURT:  Yes.  Thank you.

19             Anyone else wish to be heard?

20        (No audible response)

21             THE COURT:  Okay.  So, Mr. Baldiga, the motion to

22   withdraw as attorney filed on behalf of Brown Rudnick, and

23   obviously all the individuals from Brown Rudnick who filed

24   notices of appearance, in the case is granted.

25             And there will not be a need to file a fee

1    application at this time.

2              So the order, probably just do some firm of a

3    virtual order that says the motion to withdraw is granted

4    for the reasons stated on the record, and that further order

5    of the Court will enter with regard to the filing of a fee

6    application by Brown Rudnick.

7              Does that make sense to you?

8              MR. BALDIGA:  It does, Your Honor.  Thank you.

9              THE COURT:  Okay.  All right.  Well, I'm sorry to

10   see you go.  But it is an unusual case.  And I understand

11   the position that you and your firm have taken on the

12   parties, all of the parties who have been intimately

13   involved in the case, and newly involved in the case, agree

14   with your position and so I have no reason to think it

15   should move in any other direction at this point.

16             MR. BALDIGA:  Thank you, Your Honor.

17             THE COURT:  Okay.  Thank you.

18             MR. BALDIGA:  May I take my leave?

19             THE COURT:  Yes, you may.

20             MR. BALDIGA:  Okay.

21             THE COURT:  Okay.

22             MR. BALDIGA:  Very good.  Thank you, Your Honor.

23             THE COURT:  All right.  Thank you very much.

24             All right.  So the motion to withdraw as attorney

25   is granted and an order will enter, but it will most likely

1    be just a virtual order.  Okay?  So that's ECF 543.

2              All right.  Just if everyone could give me one

3    moment and then we'll turn to the rest of the matters.

4         (Pause)

5              THE COURT:  Now, with regard the rest of the

6    matters on the calendar, I'm sure people have an idea of how

7    they think they should proceed, as far as the order, in

8    which they should go.  I have an idea of how I think they

9    should proceed.

10              Mr. Despins, what is your position as to what we

11    should address next today?

12              MR. DESPINS:  Thank you, Your Honor.

13              Very briefly, as an initial matter I want to say

14    that at the end of the hearing we have a lot of -- not a lot

15    -- but we have a number of housekeeping matters that we will

16    want to cover.

17              THE COURT:  Well, do you want to cover them now?

18    Are we talking about motions that have been pending by the

19    debtor since the beginning of the case, or are you --

20              MR. DESPINS:  No.  But, for example, the bar date

21    order.  There's a -- I don't want to cover it now because

22    it's actually more involved than initially thought.

23              THE COURT:  Okay.

24              MR. DESPINS:  So the bar date order is one of

25    them.  Also we would want the Court to -- so I'm not going

20

1     to cover all of them -- but to schedule status conferences

2     on a regular basis in the case.

3                    THE COURT:  That's fine.

4                    MR. DESPINS:  So things like that.

5                    THE COURT:  I will say one thing that's not

6     relevant to you actually -- or it might be -- Mr. Baldiga,

7     as counsel, and his firm, filed several motions some time

8     ago that never were resolved because of the change of the

9     circumstance of the case when the debtor decided to withdraw

10    the motion for funding.

11                   There are still outstanding motions out there that

12    we're -- we can talk about later -- but the committee also

13    has outstanding applications to employ professionals.

14    There's a lot of things that maybe we do just address at a

15    status conference or later today, but we're going to resolve

16    those one way or another.

17                   I would want to know whether or not you, as the

18    trustee, are going to, you know, step into the shoes of any

19    of those pending motions that were -- for example, they were

20    -- the debtor was -- we had an evidentiary hearing about a

21    financial advisor.

22                   You know, I was about to rule when all of that

23    changed, everything changed, the motion to withdraw the

24    funding came.  You know, it was withdrawn.  And then I think

25    that the reality is that that is a motion at least if Brown

1    Rudnick stayed in the case they were no longer going to

2    pursue.  I have no idea if you're going to do that.  But in

3    any event we can talk about it later.

4              With regard to where we are today --

5              MR. DESPINS:  Yes.

6              THE COURT:  -- I mean, the most important things

7    -- everything's important, but -- including the bar date

8    order -- and I did look at -- I have to say I haven't

9    scoured, but I looked at the proposed order that you

10   submitted with redlining and things like that and I have a

11   couple of thoughts on that but nothing substantial.  Okay?

12             With regard to whether or not -- so the things

13   that have to be decided today are -- everything has to --

14   has to be handled -- but as we had our last hearing, I know

15   there's a lot of discovery that's been served on you because

16   you filed motions to quash.  So I understand that.

17             Mr. Henzy's pursuing this -- his motion for relief

18   from judgment order.  That's been objected to by several

19   parties.  I have some concerns about the motion and the

20   process that we'll all need to talk about.

21             And then you -- and then it's the Paul Hastings'

22   retention and the -- and the local counsel retention.

23             MR. DESPINS:  Correct.  And then there was also --

24   but I'm not sure you're going to take that up -- you had

25   asked the Zeisler firm and the U.S. Trustee to brief some

22

1    issue.

2              THE COURT:  Yes.

3              MR. DESPINS:  We didn't get involved in that --

4              THE COURT:  No.

5              MR. DESPINS:  -- so I don't know where that

6    stands.

7              THE COURT:  That has -- that's where we're going

8    to turn next I believe.

9              MR. DESPINS:  Okay.

10             THE COURT:  Okay.  But let's do the housekeeping,

11   for what we call housekeeping, although it has substantive

12   impact at the end then.

13             MR. DESPINS:  Yes.

14             THE COURT:  Let's hope.

15             MR. DESPINS:  There's a lot -- there's a lot to

16   cover in a sense that --

17             THE COURT:  Yes.

18             MR. DESPINS:  -- for example, the bar date, we did

19   mark it up because you asked us to do that.

20             THE COURT:  Right.

21             MR. DESPINS:  And that's going to sound bizarre,

22   but I don't think we should proceed with that for reasons

23   related to the *Genever* case.  There's a whole thing --

24             THE COURT:  Oh, okay.

25             MR. DESPINS:  -- that I want to explain to Your

23

1    Honor.

2                    THE COURT:  Okay.

3                    MR. DESPINS:  -- so we'll do that at the end of

4    the hearing --

5                    THE COURT:  Okay.  That's fine.

6                    MR. DESPINS:  Thank you, Your Honor.

7                    THE COURT:  All right.  Thank you.

8                    All right.  So, Attorney Claiborn and Attorney

9    Henzy, the last hearing I did ask you both -- and I know you

10   did brief the issue on whether or not 327(a) applies to

11   Zeisler & Zeisler and whether or not there's an actual

12   conflict of interest because of the representation of three

13   parties in this case at the same time.

14                   Before we get to that though, I don't understand

15   the other lawyer, Attorney Henzy, who has filed an

16   appearance and what his role is going to be and why there's

17   a need for another attorney?

18                   MR. HENZY:  I'm going to take my mask off just

19   when I speak, Your Honor.

20                   THE COURT:  Go right ahead.

21                   MR. HENZY:  I apologize for that.  I just --

22                   So Attorney Mitchell appeared -- as I understand

23   it, Your Honor, there was this window, I'll call it, between

24   Brown Rudnick exiting and one -- I don't think it makes any

25   difference to Mr. Baldiga's presentation, but the debtor had

24

1    -- I'm told -- I was not part of it, but made an

2    affirmative decision to terminate --

3         THE COURT:  That's what we were told by someone

4    from Brown Rudnick last week.  And I don't remember who it

5    was, so I apologize.

6         MR. HENZY:  And, of course, subject to any

7    bankruptcy code, bankruptcy rules issue, under the Rules of

8    Professional Conduct, if a client terminates a lawyer, the

9    lawyer is ethically prohibited from representing a client

10   any further.

11        So there was this window where Brown Rudnick was

12   no longer representing -- again, putting the bankruptcy

13   code, bankruptcy rules and the need to withdraw aside -- but

14   I could understand them taking the position they were no

15   longer representing the debtor and my firm was not -- was

16   not at that point retained by the debtor and Mr. Mitchell

17   appeared really solely for the purpose -- I think at the

18   time of that -- the July 8 hearing that Your Honor held on

19   the U.S. Trustee's motion to appoint Mr. Despins as trustee,

20   to put something on the record that the debtor in fact was

21   objecting to Mr. Despins' appointment as trustee.

22        And my recollection is that it was done by filing

23   a kind of a letter as opposed to a formal pleading that you

24   typically would see.

25        But I believe that the debtor does not have any

25

1    intention of having Attorney Mitchell be in court

2    representing him.  That's why he's retained -- he's retained

3    us.

4              THE COURT:  Well, then, will Mr. Mitchell be

5    withdrawing his appearance?

6              MR. HENZY:  I'd certainly discuss that with the

7    debtor and with Mr. Mitchell, yes.

8              THE COURT:  Because Mr. Mitchell said in the

9    letter that he understood all the rules in the bankruptcy

10   court, but yet he filed this letter.

11             So I -- I don't think that there should be two

12   lawyers for the debtor in this court.  I don't see the need

13   for it.

14             And I don't -- and Mr. Mitchell, who says he

15   understood, does not understand how it works here

16   apparently.  So I would think that it would be wise for Mr.

17   Mitchell to withdraw his appearance.

18             MR. HENZY:  Understood, Your Honor.

19             THE COURT:  Okay.

20             MR. HENZY:  And we'll get that cleaned up.

21             THE COURT:  Okay.  All right.  Now, turning to the

22   327(a) issue, and Attorney Claiborn as well, and, you know,

23   Attorney Henzy, I went back when you said, you know, it was

24   black letter law.

25             And of course it's not really black letter law.

26

1    It says it in a line in *Collier's* that -- and it doesn't

2    cite to any cases.  And then the cases that cite to the

3    proposition that says that a debtor out of possession,

4    327(a), doesn't apply, cite to the *Collier's* cite.

5             So it's very interesting actually because you

6    would think there would have been more out there than there

7    really is.

8             And the cases that cite for the proposition that

9    say you are out of possession and, therefore, the chapter --

10   I'm sorry -- therefore, the 327(a) does not apply all rely

11   on a sentence in *Collier's* which is fairly interesting to

12   me.

13            But in any event there's other things in *Collier's*

14   that are interesting as well with regard to the status of

15   this case.

16            Attorney Claiborn, your motion talks about whether

17   the debtor's acting on behalf of the estate or on his

18   individual -- in an individual way as to why -- whether

19   327(a) should apply.

20            So where do things stand from the U.S. Trustee's

21   standpoint at this point?

22            MS. CLAIBORN:  Your Honor, I don't think we're any

23   further than we were when we filed our brief except to say

24   that the debtor's brief filed by the Zeisler firm did

25   acknowledge the fact that there have been conflict waivers

1  executed amongst the parties.

2         THE COURTROOM DEPUTY:  Attorney Claiborn, you're a

3  little low.

4         THE COURT:  She can't -- yeah.  You have to speak

5  up a little bit.  She can't you.  I'm sorry.

6         MS. CLAIBORN:  I am actually speaking loudly, but

7  I'll try again.

8         I wanted to point the court to the fact that in

9  the Zeisler brief at ECF 620 there is a representation that

10  conflict waivers have been executed by and between the

11  debtor, HK International and Ms. Guo.

12         We have not seen those conflict waivers and we're

13  not privy to any discussions that may have happened by and

14  among the debtor, HK, and Ms. Guo and Zeisler's office.

15         So as we are at the moment not any further along

16  in the analysis than we were when we filed our brief back on

17  July 27th, so in our viewpoint it very much depends on what

18  the debtor is aiming towards and what the debtor is doing as

19  to whether or not the Zeisler firm must comply with Section

20  327(a).  And as part of that it has a lot to do with their

21  role with respect to the three different parties, the

22  debtor, HK and Ms. Guo.

23         THE COURT:  Okay.  So you're -- you don't know

24  whether 327(a) applies?  Or you're saying it's not -- it's

25  not discernible because you don't know what role they're

28

1    playing?

2              MS. CLAIBORN:  Correct.

3              THE COURT:  Okay.  Does anyone else wish to be

4    heard on the conflict issue?

5              The 327(a) issue, I have to say, again, *Collier*

6    says in one line that it doesn't apply to a debtor not in

7    possession.  That's all it says.  But that issue, you know,

8    could be continually raised depending upon what happens in

9    the case just because -- if I find 327(a) doesn't apply at

10   this time, it doesn't mean I couldn't find 327(a) doesn't

11   apply at some other time.

12             But that's aside from the fact that the Zeisler

13   firm represents now Mr. Kwok, HK International and Ms. Guo,

14   and says that because the trustee now is automatically

15   substituted as a party in the adversary proceeding that HK

16   brought against Mr. Kwok that there's no conflict.

17             Do you agree with that?

18             MS. CLAIBORN:  I don't think it's as pure as that,

19   Your Honor.

20             THE COURT:  Well, that's their argument though.

21             MS. CLAIBORN:  Correct.

22             THE COURT:  Okay.  And so what do you think?

23             MS. CLAIBORN:  Your Honor, the U.S. Trustee -- the

24   brief that we filed sets out the opinions that have been

25   issued in various different jurisdictions, and obviously not

1    this one, as to the applicability of 327 and I think there

2    is support for the idea that depending on what counsel is

3    doing and what their role really is in the case, that they

4    are subject to 327.

5          To the extent that the debtor is pursuing the

6    debtor's Rule 60(b) motion here today with the mind set and

7    the goal that that trustee appointment is invalid because

8    Trustee Despins does not satisfy the disinterested status

9    that is required, that position is being taken and advocated

10   for the apparent benefit of the estate.

11         And so to the extent that that is the debtor's

12   objective and that is the debtor's goal, there is an

13   interpretation that can be made that 327(a) does in fact

14   imply to Zeisler.

15         THE COURT:  Okay.  Attorney Henzy?

16         MR. HENZY:  On the two points, Your Honor, I -- I

17   did not recollect that all of the cases that I cited on the

18   327(a) issue that I -- I know for sure several of them did

19   cite the *Collier's*, but I'm not sure all of them did.

20         I could not find any case that said to the

21   contrary, that a debtor out of possession is required to

22   retain --

23         THE COURT:  I think you're right.  I couldn't

24   either.  I looked.  I agree with you.  I don't -- and I

25   think the references in those cases to *Collier* is it.

1          There's other cases -- there's other issues about

2     whether you can be compensated under 330.  That's a

3     different issue.

4          MR. HENZY:  Yeah.  Yeah.  Which I think the

5     Supreme Court --

6          THE COURT:  But I agree.  The 327(a), there's

7     nothing that says that a debtor in -- a debtor out of

8     possession's counsel must abide by 327(a).  I wasn't able to

9     find anything.

10          And then the only thing is whether or not you had

11     to disclose your compensation.  And you disclosed your

12     compensation.

13          But I don't understand what an evergreen retainer

14     means from your perspective.  I think I know what it means,

15     but I assume that means when you're done with your hundred

16     thousand you get another -- it's evergreen, it's always

17     blooming, it never loses it's --

18          MR. HENZY:  It always -- it's always blooming.

19          THE COURT:  It's always blooming.

20          MR. HENZY:  It's always blooming, yes.

21          THE COURT:  So you -- so you go -- you use the

22     hundred thousand -- I'm just saying -- and then you get

23     another hundred thousand.

24          MR. HENZY:  Or whatever has been used that

25     particular billing period.  Yeah.

31

1          THE COURT:  Okay.  And so --

2          MR. HENZY:  So let's say in a month we billed

3    $10,000, we would bill the client -- we would send the

4    client an invoice for $10,000.  We would take the $10,000

5    from the retainer and the client would be obligated to

6    replenish the retainer.

7          THE COURT:  Okay.

8          MR. HENZY:  That's the idea.

9          THE COURT:  And the -- and how would -- how would

10   the Court know when your retainer is -- has -- is about to

11   lose its bloom and needs to be replenished?

12         MR. HENZY:  I don't know that the Court would know

13   that.  I don't know that the Court under the rules needs to

14   know that.  I suppose they're not -- I'm just saying in

15   theory, say take a hypothetical, if the -- if a -- in a

16   situation like that, the retainer stopped blooming, the way

17   the Court might find out about it is that counsel might be

18   filing a motion to withdraw on the basis that the client --

19         THE COURT:  Okay.

20         MR. HENZY:  -- is not satisfying its obligations.

21         THE COURT:  That's possible.  But, again, the

22   debtor's son has provided you with the hundred thousand

23   dollars, correct?

24         MR. HENZY:  Yeah.  That's correct.

25         THE COURT:  Okay.  And so the debtor's son -- you

1    represent the debtor, the debtor's daughter, the entity that

2    asserts --

3          MR. HENZY:  Says that it owns the boat.

4          THE COURT:  -- that they're the registered owner

5    of the boat, and now -- now you're getting money from the

6    debtor's son?

7          MR. HENZY:  Yes.

8          THE COURT:  Okay.  And you don't think any of

9    that's a conflict?

10          MR. HENZY:  I do not believe that any of it is a

11    non-waivable conflict other --

12          THE COURT:  Well, there's other things you have to

13    meet under Rule 1.7.  It's not just that you got an informed

14    consent waiver in writing.  It's four things.

15          That you reasonably believe that you'll be able to

16    provide competent and diligent representation.  I'm not

17    suggesting you don't.  You may believe that.  Somebody might

18    not agree with you, but you may reasonably believe that.

19          The representation is not prohibited by law.

20    Well, I'm not sure about that if the bankruptcy code

21    sections apply, as Attorney Claiborn asserts they might.

22          MR. HENZY:  Which I would like to come back to

23    that.

24          THE COURT:  Yeah.  We'll come back to that.

25          The representation does not involve the assertion

33

1   of a claim by one client against another client represented

2   by the lawyer in the same litigation or other proceeding

3   before a tribunal.

4          So we're not just talking about the adversary

5   proceeding here, right?  We're talking about the case as a

6   whole, the Chapter 11 case, where the entity -- Mr. Friedman

7   reminded me last hearing, because I couldn't remember the

8   entity who was loaning the money to the estate, was also an

9   entity I believe controlled by the son, and now who's paying

10  you, I guess not through an entity but by himself.

11          That's what your disclosure says, correct?

12          MR. HENZY:  Yes.

13          THE COURT:  That the money came directly from the

14  son, not from any other entity?

15          MR. HENZY:  Yes.

16          THE COURT:  Okay.  Okay.  And so you have four

17  things you have to meet under Rule 1.7, not just -- not just

18  the waiver of the conflict.

19          And there's plenty of cases out there -- and I

20  don't -- I'm not saying we're going to go through them

21  today, okay -- but there's plenty of cases out there,

22  bankruptcy judges saying you can assert all those things,

23  but that doesn't mean that the conflict is truly waivable.

24  Just because you got them to sign a letter that says they

25  waive the conflict doesn't mean it's actually waivable.

1    That's the issue that you have -- or one of the issues that

2    I think you have.

3         And given what has occurred outside of this court

4    before the filing of this case, there's a lot of information

5    that could become fact in this case to the contrary, that

6    there's -- they're all one in the same.  And some people

7    could argue that your representation of all of them just

8    supports that they're all one in the same, because Mr.

9    Despins said last time we were here that -- and he may be

10   filling more of this in later -- that with regard to the New

11   York bankruptcy case that the direction came from Mr. Kwok,

12   not from the corporate entity.

13        And, you know, I mean, Mr. Friedman's papers, as

14   you know, Mr. Henzy, I'm sure you've read them, go through

15   extensively all the findings that have been made outside of

16   this court.

17        So Mr. Friedman says, you know, you may need to

18   think about that, Judge, because maybe this is all just a

19   continuation of what was going on back in New York, that

20   through this weave and this web of issues that we just

21   continue to do the same thing, just in another court.

22        And what I'm having difficulty with is I don't see

23   how you can represent all three of those entities and now

24   get paid by the son and say that you don't have a concurrent

25   conflict of interest under Rule 1.7, which is different from

1  the 327(a) issue.  Okay?

2          I'm not -- I'm saying even if I agree with you

3  that 327a doesn't apply, and I think you might be right --

4  although I hear Attorney Claiborn's argument. I think the

5  argument with that though is that it has to be raised when

6  the issue has obviously come up.  I don't -- I don't think

7  she's -- her office is able to at this point show that this

8  issue that you're really -- that it's -- you're really

9  representing the estate, because I'm not sure I agree with

10  that at this point either.

11          It's complex, obviously, as you know, and this has

12  been going on for a long time.  So I just don't see how it's

13  not a conflict of interest.

14          There is -- there are claims in the estate that

15  are going to -- how are you going to provide advice to Mr.

16  Kwok individually, and HK and Ms. Guo, individually without

17  being -- without having their interests overlap and/or

18  conflict, which they can and very well may do?

19          MR. HENZY:  So I guess a couple of preliminary

20  points, Your Honor.

21          THE COURT:  Yeah.

22          MR. HENZY:  Absolutely court has the authority to

23  enforce the rules of professional conduct when it involves

24  proceedings in their court.  Absolutely, no -- I don't

25  question that in any way, shape or form.

36

1       However, the principal -- in the first instance,

2   it's up to the lawyer to be aware of and to -- their own

3   conflicts and to make sure that they're in compliance with

4   the rules of professional conduct.  And, again, if something

5   is in front fo the Court and the Court says that that's a

6   conflict, the Court certainly has the authority and maybe

7   the obligation to do something.

8       Courts are, the Second Circuit says, to be

9   somewhat deferential to a client's choice of counsel because

10  there's a generally recognized right of people to retain

11  counsel and to retain counsel of their choosing.  And I

12  think the 1.7(a) rules don't recognize that or address that

13  or deal with that.

14      On 1.7(a)(1), right now, there is no adversity.

15  We represent HK International and I think -- and Mei Guo.

16  And there may be other issues that we end up representing

17  them on in the case, but principally, and I don't want to

18  say almost exclusively, it's been on the Lady May.

19      Now, I understand we filed appearances in the case

20  -- and in theory could an issue come up other than with

21  respect to the Lady May where they're adverse to each other

22  -- but all we've done so far for those two -- those two --

23  the person and the entity is with respect to the Lady May.

24      I think it is generally recognized, Your Honor,

25  that where there is no existing concurrent conflict -- and

1    that's what Rule 1.7 says, is a concurrent conflict of

2    interest exists that the fact that there may be a conflict

3    sometime in the future does not disqualify counsel and you

4    potentially have to deal with that.

5         And it certainly is our practice, and I think most

6    firms' practice, to -- in any joint representation -- to

7    advise clients if there -- if you end up with adverse -- end

8    up adverse to each other, we're going to have to deal with

9    that and that may have consequences to you.  We may have to

10   resign for one, both, all three, it's -- but you don't know

11   that until you get to that concurrent conflict and you have

12   to deal with it.

13        Really, same theme on 1.7(a)(2), there is no --

14        THE COURT:  I'm not talking about (a) though.  I'm

15   talking about (b).

16        MR. HENZY:  I'm going to -- I'm going to get to

17   (b) because (b) follows (a).  It's --

18        THE COURT:  Yeah.  But it says notwithstanding.

19        MR. HENZY:  But you don't get to (b) -- if there's

20   no concurrent conflict of interest, you don't get to (b).

21        THE COURT:  Okay.  Go ahead.

22        MR. HENZY:  (b) is notwithstanding the existence

23   of a concurrent conflict of interest under subsection (a).

24   A lawyer may represent a client, yes, but you don't get to

25   (b) unless you fail (a).

1      THE COURT:  How can you fail -- how do you get by

2  (a)(1) then?  You represent HK and Mr. Kwok.  The boat --

3  the trustee wants the boat to be property of the estate.

4      MR. HENZY:  Yeah.

5      THE COURT:  HK's got a different interest in that

6  boat than Mr. Kwok does according to you.  So how is it

7  right now that there is -- they're not directly adverse to

8  each other?

9      MR. HENZY:  Well, Mr. Kwok is no longer a party to

10  that adversary proceeding --

11      THE COURT:  That's not what I'm saying.

12      MR. HENZY:  -- and has no --

13      THE COURT:  I don't care if he's not a party to

14  the adversary proceeding.  He still has an adverse interest

15  with regard to the boat because he -- because they're still

16  going to have to be -- if Mr. Despins is successful, right,

17  in saying that the boat is property of the estate, then that

18  is an -- then it's an adverse interest to your client and to

19  HK because then HK doesn't have the boat and the debtor

20  does.

21      How are they not -- how are they not -- how is it

22  not adverse?

23      MR. HENZY:  Certainly it would be adverse to HK if

24  the Court said --

25      THE COURT:  Right.  And you represent HK and the

1     debtor.

2              MR. HENZY:  Yeah.  But I'm not sure I agree with

3     you.  Mr. Kwok's position is that HK owns the boat so

4     they're not adverse.  He does not believe that he owns the

5     boat.  He does not believe that it's property of the

6     bankruptcy estate.  I'll say that unequivocally on the

7     record.  So I don't see how they can be adverse if they take

8     the same position.

9              I think he's -- he would -- I know he would

10    contemplate not being involved in that fight.  That's a

11    fight between presumably the trustee and HK International.

12             But I don't -- Mr. Kwok -- again, I'll say this on

13    the record, he will not be -- I suppose he might be involved

14    if someone wants to call him as a witness or something like

15    that, but he will not be taking positions.  That will be a

16    fight between the trustee and HK International, so there's

17    no adversity, Your Honor.

18             THE COURT:  I don't agree with you, but go ahead.

19             MR. HENZY:  Okay.  When you get to (b), as you

20    said, we do believe that we can provide competent, diligent

21    representation to each client.  I'm not concerned that we're

22    going to be pulling punches on behalf of HK International or

23    having what's going on with the boat impact our

24    representation of Mr. Kwok at all.

25             On (b)(2), the 327 issue, again, we can talk more

40

1    about.

2           I've made the point in the papers -- I don't want

3    to belabor it, Mr. Kwok is no longer a party to the

4    adversary proceeding.  I believe Mr. Despins said that at

5    the last hearing.

6           He was automatically substituted as the party in

7    that -- in that adversary proceeding.  And I cited the rule

8    and cases that say that, that upon appointment of a trustee,

9    he is automatically substituted for the debtor in that

10   action.

11          And all three clients have given consent.  We did

12   advise them, if they wanted to, to consult with other

13   counsel and they've confirmed their consent in writing.

14          So even assuming that there is a concurrent

15   conflict under 1.7(a) -- and, Your Honor, to your point, it

16   may be that at some point in this case a concurrent conflict

17   does arise.  I don't think one exists today -- there may be

18   at some point a concurrent conflict arises.  And if it does,

19   then in compliance with the rules of professional

20   responsibility, we will have a professional responsibility

21   to address that.

22          And, again, typically when you have a joint

23   representation you advise clients if a concurrent conflict

24   arises we may need to withdraw or otherwise address it.

25          But if and when a conflict -- concurrent conflict

1  arises, we'll -- we will have to address it.  And the

2  clients have been informed of that.  And, again, they have

3  -- they have given their consent.

4          THE COURT:  Well, we -- I don't know how they gave

5  their consent.  So, I mean, you could have just said I

6  consent.  I don't know what they said.  I know what you're

7  saying they said, but just by saying I consent doesn't mean

8  that's a -- that is a waiveable conflict --

9          MR. HENZY:  Well, the only --

10         THE COURT:  -- because you have to know what

11  they're consenting to.

12         MR. HENZY:  The only non-waiveable conflict under

13  this rule is if we represent two parties in the same

14  litigation.  And because Mr. Kwok is no longer a party to

15  the adversary proceeding, I believe that we do not represent

16  two parties to the same litigation.  So they can consent --

17         THE COURT:  But it's not just to the litigation

18  that -- you keep focusing on the issue of the adversary --

19  it's the case.  It's the case.  It's still Mr. Kwok is in

20  the case.  It's his case whether he's not -- out of

21  possession or not.  It doesn't just go away because he's out

22  of possession.  It's still an issue in the case.

23         You know, it's too convenient to say Mr. Despins

24  steps into the shoes of Mr. Kwok in that adversary but not

25  in any of the 523 adversaries.  And I understand the

42

1    argument.  I'm not -- I understand the argument.  But it

2    doesn't -- you just don't have a conflict and then it

3    doesn't -- it just doesn't -- it goes away.  It doesn't

4    exist anymore.  That's not how it works.

5         The conflict as I think we talked about it the

6    last time, you know, you take the client as you find him.

7    You know, you may argue you don't have a conflict at the

8    moment, but the parties have a conflict with each other.

9    There's some issues here.

10        MR. HENZY:  I don't -- I don't see where the

11   parties right now are directly adverse to each other.

12        THE COURT:  Well, you may not see it, but that

13   doesn't mean it doesn't exist.

14        MR. HENZY:  But if --

15        THE COURT:  The problem is in this case, and in

16   the case before this case, that there were -- there were

17   many, many findings made with regard to this -- these number

18   of family -- closely -- and they're all insiders by the way

19   so let's just -- we didn't raise that either.  They're all

20   insiders.

21        MR. HENZY:  None of it before you, Your Honor.

22        THE COURT:  No.  No.  No.  I'm talking --

23        MR. HENZY:  None of it before you.

24        THE COURT:  No.  No.  No.  I'm talking about in

25   this case right now.  Ms. Guo is an insider of Mr. Kwok.

1          MR. HENZY:  Yes.

2          THE COURT:  The son who paid you a hundred

3    thousand dollars is an insider of Mr. Kwok.  HK

4    International may or may not be an insider of Mr. Kwok, but

5    it's close.

6          MR. HENZY:  Okay.

7          THE COURT:  Okay?  So how is that not a conflict?

8          MR. HENZY:  Because they are not adverse -- they

9    are not directly adverse to each other.  Your Honor, if a --

10         THE COURT:  If Mr. Despins sues Ms. Guo right now

11    --

12         MR. HENZY:  Yeah.

13         THE COURT:  -- and says she got paid whatever she

14    got -- I'm making -- I'm giving a hypothetical. She got paid

15    by Mr. Kwok a hundred thousand dollars 90 days before the

16    filing, then how are they not adverse?

17         MR. HENZY:  I think that Mr. Despins and Ms. Guo

18    would be adverse.

19         THE COURT:  No.  Because the money's got to come

20    back from Mr. Kwok and Mr. -- you've got -- you keep --

21         MR. HENZY:  If Ms. -- if Ms. Guo is sued for --

22         THE COURT:  What's the -- you're not going to --

23    are you going to raise a defense on her part?  What's her

24    defense?

25         MR. HENZY:  Hold on.  Assume -- I apologize, Your

44

```
1    Honor.
2              THE COURT:  No.  That's okay.  It's okay.
3              MR. HENZY:  No.  No, that was not okay.  I
4    apologize.
5              THE COURT:  That's okay.
6              MR. HENZY:  If Mr. Despins sues Ms. Guo for a
7    preference, which I think is what you were positing, or for
8    whatever, for whatever --
9              THE COURT:  For whatever.
10             MR. HENZY:  -- then the money would come back I
11   think from Ms. Guo, not from Mr. --
12             THE COURT:  But what's her defense?  She's going
13   to have a defense.  She's not going to just turn it over.
14   If she can, she can turn it over today then.
15             MR. HENZY:  I don't know --
16             THE COURT:  How are you going to represent her?
17             MR. HENZY:  I don't know what claim Mr. Despins is
18   bringing against her, so I don't --
19             THE COURT:  I understand that.
20             MR. HENZY:  -- I don't know what her defense would
21   be.  It's possible.  I suppose he would bring a claim, I
22   don't know what it would be, that would create some direct
23   adversity, in which case we would have to deal with that.
24   But that doesn't exist today.
25             THE COURT:  Okay.
```

45

1          MR. HENZY:  It may exist, Your Honor, sometime in

2      the future, but it doesn't exist today.  And for the 1.7(a)

3      analysis, it's a concurrent conflict of interest exists.

4          Today, is there a conflict?  If a conflict -- and

5      the rules specifically contemplate -- I think it's in the

6      comments to 1.7 where it addresses joint representation --

7      that a conflict -- a conflict may arise in the future.  And

8      if it does, counsel has an ethical responsibility to address

9      it.

10         But today, Ms. Guo hasn't been sued by Mr. Despins

11     for anything.  She may get sued by him for something and

12     that, whatever that suit is, may or may not raise -- put Ms.

13     Guo and Mr. Kwok in a directly adverse position.  But I --

14     but I don't know.  I can't know that today.

15         THE COURT:  Well, (a) doesn't talk about the fact

16     that there has to be a lawsuit by the way.

17         MR. HENZY:  Oh, no.  It's any -- it's any adverse

18     --

19         THE COURT:  So it doesn't talk about it.

20         MR. HENZY:  No.  It's any -- I was just -- I was

21     addressing your --

22         THE COURT:  (b) talks about it, not (a).

23         MR. HENZY:  I was addressing Your Honor's comment

24     about what if --

25         THE COURT:  I understand.  So I'm saying there

46

1    doesn't have to be a lawsuit in (a).  It's if you have the

2    representation of one client will be directly adverse to

3    another.

4                MR. HENZY:  And I --

5                THE COURT:  There doesn't have to be a lawsuit to

6    have that issue.

7                MR. HENZY:  And today I don't see how Ms. Guo and

8    Mr. Kwok are directly adverse --

9                THE COURT:  Okay.

10               MR. HENZY:  -- on anything.  I don't see how HK

11   International and Mr. Kwok are directly adverse on anything.

12               Again, Mr. Despins is going to bring whatever

13   claims he brings and we're going to go -- we're going to go

14   from there ormake whatever claims he makes.

15               THE COURT:  Okay.

16               MR. DESPINS:  Your Honor, if I could be heard for

17   two minutes on this?

18               THE COURT:  Yes.  Yes, please.

19               MR. DESPINS:  Not on 327.  I don't have a view on

20   that.

21               But on the issue of waivable conflict or not, 521,

22   debtor's duties, 521(a)(3), if there's a trustee appointed,

23   the debtor's duty is to cooperate with the trustee as

24   necessary to enable the trustee to perform the trustee's

25   duties.  (a)(4), if there's a trustee serving, they must

1  surrender all properties, et cetera.

2          Of course their view is, oh, you know, he's a

3  billionaire, but he has no assets so, therefore, we're on

4  the same side of the V.  But that duty that a -- statutory

5  duty that the debtor has exists today.  And you know that

6  there are criminal provisions in 18 U.S.C. that tie into

7  these obligations to do these things.

8          So I'm -- so I'm not so sure this is a waivable

9  conflict despite the fact that there's consent because the

10  debtor has a statutory duty to do certain things that are in

11  direct conflict with the other party that they're

12  representing.

13          Thank you, Your Honor.

14          THE COURT:  Thank you.

15          MR. DESPINS:  And also, by the way, I want to

16  mention that chart that they said the son paid, they also

17  checked the box that the debtor would -- might pay in the

18  future.  I want to be very clear under 549 we reserve all

19  rights.  If the debtor is paying Zeisler, I don't want them

20  to think that because they checked that box that somehow

21  we're looking the other way.  I don't see how the debtor is

22  paying -- would be paying them during the case.

23          Thank you, Your Honor.

24          THE COURT:  Thank you.

25          MR. HENZY:  I'm pretty sure that Mr. Despins is

48

1    not looking the other way on anything, Your Honor.

2              THE COURT:  But it's a good point about the debtor

3    making future payments for fees.  I think that would be

4    tremendously problematic.

5              MR. HENZY:  Your Honor, the debtor is not going to

6    make any payments at the very least out of any -- Mr.

7    Despins references to 549 and any property that's property

8    of the bankruptcy estate.  And we wouldn't -- we wouldn't

9    take any such payments, certainly not knowingly anyway.

10             So I'll say again, Your Honor, the debtor -- so

11   the debtor has duties under 521, but I'm not seeing how that

12   -- and Mr. Despins already has made in the corporate

13   governance motion some proposals, but I'm still not seeing

14   that today that there's any directly adverse -- that

15   anyone's directly adverse.  Again, it may be that something

16   happens in the future where there is adversity.

17             The only conflict -- expressly under the rules,

18   the only conflict that is not waivable is the (b)(3).  So we

19   may think that a client should not --

20             THE COURT:  I'm not sure that's true by the way.

21   I mean, that's not -- case law doesn't really support that

22   completely.  I understand that's your argument.  But when do

23   -- where -- what authority are you relying on that says the

24   only thing that's not waivable is (b)(3)?

25             MR. HENZY:  I think that that's the plain language

1   of the rule.  That is the -- unless it's prohibited by law,

2   which is back to the 327(a) issue.

3           THE COURT:  Which is (2).  Yeah.

4           MR. HENZY:  Okay.  But I'm not aware of any

5   prohibition in any law --

6           THE COURT:  Well, actually there's a lot --

7   believe it or not, I've seen some case law that the -- even

8   when the informed consent is in writing, the bankruptcy

9   court has found that it's not a waivable conflict no matter

10  what, you know, was written in that consent.  Okay?

11          There's cases, and there's recent cases about it,

12  throughout the country that talk about, you know, the --

13  that it's -- you know, you can waive -- you can say whatever

14  you want and waive it, but just because you said it doesn't

15  mean it's enforceable and it's waivable.

16          MR. HENZY:  Yeah.  I --

17          THE COURT:  And at this point, you know, I'm not

18  sure that it is.  But go ahead.

19          MR. HENZY:  I don't understand I guess that point.

20          THE COURT:  Well --

21          MR. HENZY:  If there's no prohibition by law and

22  it's not claims made against each other --

23          THE COURT:  Because it impacts the estate as a

24  whole.  This isn't just about the one adversary proceeding

25  in which HK International sued Mr. Kwok.  It's what Mr.

50

1    Despins is saying and more.  The debtor still has -- he may

2    be a debtor out of possession, but he still has obligations

3    under the bankruptcy code.

4          He voluntarily came to this court and subjected

5    himself to the jurisdiction of this court.  And with that,

6    you know, he gets all the benefits, but he also has the

7    burdens.  And he has to cooperate and turn over to the

8    trustee all of his -- all property of the estate, whatever

9    equitable or legal interest he has in a -- in a -- any piece

10   of -- any property, whatever it is, whether it's real,

11   personal, whatever.  And when there are --

12         We still haven't gotten to the issue of what HK is

13   doing with regard to the certification on the boat.  That

14   seems to have gone by the wayside for a while.  But there's

15   $37 million in an escrow account that Mr. Despins is going

16   to argue one way or another either that money or the boat's

17   the estate.  And that money --

18         Now Mr. Friedman's going to have to remind me

19   again, was that Golden Spring who funded that 37 million or

20   was it somebody else?

21         MR. HENZY:  But, Your Honor, a couple of points.

22         THE COURT:  No.  But wait a minute.  Let me just

23   finish my thought process first and I'll get back to you.

24         But the point is Mr. Kwok is going to argue that

25   something different -- how could Mr. Kwok -- is he -- he's

1     going to say, oh, yeah, go ahead HK, give the boat over to

2     the estate or don't?  Go ahead, Mr. -- escrow agent.  Give

3     the 37  -- who's going to fight that fight?

4               MR. HENZY:  Not Mr. Kwok.

5               THE COURT:  Well, who's going to fight the fight?

6     HK International.  And you represent HK International and

7     Mr. Kwok.

8               MR. HENZY:  And Mr. Kwok's not fighting that fight

9     at all.

10              THE COURT:  He's not going to fight the fight.

11              MR. HENZY:  No.

12              THE COURT:  So then I could find today -- I could

13    make a ruling that the boat is property of the estate and

14    Mr. Kwok's not going to fight that fight?

15              MR. HENZY:  Mr. Kwok is out of that fight.

16              THE COURT:  He's not going to fight it?

17              MR. HENZY:  He is --

18              THE COURT:  So you're going to represent HK

19    International in that fight?

20              MR. HENZY:  He is out of that fight.  That fight

21    is now Mr. Despins' fight with HK International.  It's not

22    Mr. Kwok's fight.

23              THE COURT:  All right.  What about the $37 million

24    in escrow?

25              MR. HENZY:  Same answer, that's not Mr. Kwok's

1    fight.  That is HK International's fight.  And Mr. -- I'm

2    not sure that's even a fight.

3              THE COURT:  So how can you represent HK

4    International in a fight against the estate in which the

5    estate is your client's estate?

6              MR. HENZY:  But the estate is not my client.  The

7    Supreme Court says that in the *Baker Botts* decision and the

8    --

9              THE COURT:  Yes.  But the estate is the

10   responsibility of your client.

11             MR. HENZY:  No.

12             THE COURT:  Yeah.  Yes, it is under 521.

13             MR. HENZY:  No.  I think that's wrong.

14             THE COURT:  Yes.  He's got to turn it over.  He's

15   got to cooperate and turn it over.

16             MR. HENZY:  He has responsibilities --

17             THE COURT:  So is he going to cooperate right now

18   and say that, yeah, you know what, HK International really

19   doesn't own the boat.  I do according to the New York State

20   Court.  So why don't you just move it over here now?

21             Is that how he's going to cooperate?

22             And then how does that make sense for him to say

23   that and then have HK say, no, I'm the -- I'm the record

24   owner of the boat?

25             MR. HENZY:  So he -- he has his obligations under

53

1   521, but that doesn't mean -- 521 doesn't mean that he has

2   to say -- get on the witness stand and say something is true

3   that he doesn't believe is true.

4        So if Mr. Despins is pursuing that action or that

5   action is being pursued and Mr. Kwok is put on the witness

6   stand and Mr. Despins says, isn't it true that you own the

7   boat?  And Mr. Kwok says, no.  That's not -- he's not

8   violating his obligations under 521 of the bankruptcy code.

9   He's giving truthful testimony.  So I'm not --

10        THE COURT:  Well, whether it's true or not isn't

11   for Mr. Kwok to decide.  That's the point.  Otherwise why

12   are we here?

13        MR. HENZY:  Oh.  I agree with you.  But he's

14   obligated to give truthful testimony.

15        THE COURT:  He's obligated to give testimony.

16        MR. HENZY:  To give truthful --

17        THE COURT:  He makes the determination of whether

18   or not it's truthful.

19        MR. HENZY:  Well, but -- but no one would say,

20   well, Mr. Kwok you believe that you don't own the boat?

21   That's right, I believe I don't own the boat.  Well, you

22   can't give that answer.  You have to testify that you do own

23   the boat because 521 says you have to testify --

24        THE COURT:  Nobody would suggest -- nobody's

25   suggesting that.

54

1          MR. HENZY:  Then I'm missing -- I'm missing the

2     point.

3          THE COURT:  Okay.  Maybe I'm not articulating it

4     well.  I don't understand how this can continue, but we'll

5     talk about it.

6          Does anyone else wish to be heard on whether or

7     not the Zeisler firm can represent these three entities at

8     the same time and not have it be deemed to be a conflict of

9     interest?

10         MR. HENZY:  One point, Your Honor.  If you're

11    going to rule that we have a conflict of interest, or you're

12    not going to rule, then I don't believe anything else should

13    go forward today.  You can't -- because the debtor is then

14    --

15         THE COURT:  I agree with you and that's why I

16    asked to hear what everybody else --

17         MR. HENZY:  Okay.  Because then the debtor is not

18    --

19         THE COURT:  That's why we're talking about this

20    right now.

21         MR. HENZY:  The debtor is not represented.  And to

22    the extent you haven't ruled --

23         THE COURT:  Well, he is represented.  He's got

24    another lawyer.  He's got Mr. -- whatever --

25         MR. HENZY:  No one's here in court today

1  representing the debtor.

2           THE COURT:  I understand that.  But that -- you

3  know, this is not news that the issue was raised about the

4  conflict of interest.  So just hold on.

5           MR. HENZY:  Okay.

6           THE COURT:  I hear you.  I hear you.

7           MR. HENZY:  Okay.

8           THE COURT:  Does anyone else wish to be heard on

9  this conflict of interest issue?

10           MR. DESPINS:  I would just say, Your Honor, that

11  I'm not sure.  We need a genie to decide that issue today.

12  I think the issue is still live, will continue to be live,

13  you know, later.

14           THE COURT:  Okay.  Thank you.

15           Attorney Claiborn?

16           MS. CLAIBORN:  Your Honor, I agree the issue does

17  not die today if the Court decides not to rule on it today.

18           The only other issue that I would throw into the

19  mix is that looking into the future and cognizant of the

20  past, the debtor's position on things has changed over time.

21  And to the extent that the debtor uses this particular

22  conflict, albeit resolved at the moment as a future sword,

23  then we have a problem in this case.

24           THE COURT:  What do you mean?

25           MS. CLAIBORN:  To the extent that he takes the

1    position in the future that his guidance and his advice from

2    his now current counsel, Zeisler, was conflicted and that he

3    should not be bound by any of the outcomes of that, that's

4    going to cause a problem in this case in the future.

5    The debtor does have a history of parting ways with counsel.

6              THE COURT:  Okay.  I think I understand your

7    point.  I might -- I might not be understanding it fully at

8    the moment, but that's fine.

9              Anyone else wish to be heard?

10    (No audible response)

11             THE COURT:  Okay.  So, Mr. Henzy, with regard to

12    the concurrent representation of these three parties, Mr.

13    Kwok, who has continuing and remaining and continuous

14    obligations under the bankruptcy code, even if he is a

15    debtor out of possession, and HK International, and Mei Guo,

16    the debtor's daughter, I agree with you that at the moment

17    there is -- you appear to be complying with all of the

18    provisions of Rule 1.7.

19             But I do agree that things can change very quickly

20    and parties, including you, and/or the Court, and/or others,

21    need to bring this to the Court's attention if there are

22    issues that are happening in this case.

23             I think your client, as I said to you the other

24    day, you take your client as you found them.

25             And as your client has some issues with regard to

57

1    litigation that has occurred outside of this court, that at

2    some point's going to come back to this court somehow.

3            Mr. Despins is going to have to do what Mr.

4    Despins has to do and so do all the other creditors.  I have

5    no idea what any of the other creditors are going to do.

6    They have their rights too.  And they -- they can seek

7    whatever relief they think is appropriate with regard to

8    your clients, all three of them.

9            So I -- given the positions that have been taken,

10   and that the U.S. Trustee believes that 327(a) may apply and

11   that you may have a conflict, I think the issue is

12   continuing before this court and there won't -- you know,

13   could be a problem as early as tomorrow.  Who knows?  And

14   we'll have to deal with that.

15           With regard to your motion for relief from

16   judgment order under --

17           MR. HENZY:  Your Honor, can I -- can I just ask a

18   question?

19           THE COURT:  Yes.

20           MR. HENZY:  I'd like to think anyway that I take

21   my obligations under the rules of professional

22   responsibility pretty seriously.

23           THE COURT:  No one's questioning that.

24           MR. HENZY:  Okay.  I'll accept that.  But --

25           THE COURT:  But you have to understand that the

58

1    issues that have been raised in this case are every day --

2    every week it changes, right?  We're going down one path,

3    then we go down another path, now we're down an other path.

4        Now you're filing a motion to try to remove the

5    trustee after, you know, you said -- after your client came

6    in and wanted the boat to be part of the $8 million, have

7    the boat be part of the estate, move forward, try to -- who

8    Mr. Baldiga said on many occasions wants to have -- and it

9    says it in the papers, so it's an admission of your party,

10   of your client, whether or not you represent your client or

11   Mr. Baldiga represented your client, that they wanted this

12   case to be a place where everyone could come together and

13   resolve all the issues and have a fair and equal

14   distribution to creditors.  And that's not what's happening.

15   Okay?  That's not what's happening.  There wouldn't have

16   been an appointment of a Chapter 11 trustee if that was what

17   was happening.

18       So I'm not trying to challenge your personal

19   seriousness about the Rule 1.7.

20       As I keep saying to you, you don't represent

21   yourself.  You represent your clients.  And your clients

22   already have some negative rulings against them that the

23   Court has heard about time and time again.

24       And your client has come in and said he wanted to

25   do all these things and then immediately changes course and

1    pulls the plug on everything and leaves everybody in a

2    completely different -- on a completely different path than

3    he came in here and said that he was going to pursue.

4    That's what I'm talking about.  Okay?

5            MR. HENZY:  The point I was going to make, Your

6    Honor, is I think I take my obligations pretty seriously.

7    And if I ever believe that I have a concurrent conflict, I'm

8    going to address it, with the clients if necessary, with the

9    Court.  So I would -- I would always do that.

10           A second point is, Mr. -- Ms. Claiborn's point

11   that she doesn't want to see the debtor using a purported

12   conflict of my firm as a sword, I make the same point back

13   at people.

14           To have this sort of weird maybe three -- so if

15   327 applies, if the debtor is asserting his rights, and if

16   I'm arguing too vigorously about some issue, then 327(a)

17   applies.  But if the debtor just sits and doesn't -- quietly

18   and doesn't push back on anything, then 327 doesn't apply.

19           I would hope that parties aren't going to use that

20   in the future when the debtor potentially is objecting to

21   something to stand up and say now he's under 327, he's got

22   to go.

23           A third point, Your Honor, the -- what happened

24   outside of this court in pre-bankruptcy litigation I'm not

25   sure what that has to do with whether or not my firm has a

1    conflict under Rule 1.7 or 327(a) is implicated.  I don't --

2    I don't think that it does.

3         This is a tough case.  I don't think anybody would

4    disagree with that.  This is a -- this is a tough, tough

5    case.  But the toughness of the issues isn't the driver on I

6    have a conflict or I don't have a conflict.  I either have a

7    conflict or I don't have a conflict.

8         And what I -- what I don't want to do, Your Honor,

9    is go away from today with you having -- because I -- when

10   you -- I think anyway, okay -- I never would intend to put

11   words in Your Honor's mouth, that's why I'm going to say

12   what I thought I heard -- what I thought I heard was you

13   agree with me that today you believe I don't have an issue

14   under Rule 1.7.  But then you said -- I think anyway --

15   again, I want to be very careful -- but maybe you do.

16        And if the Court is going to determine that today

17   I have a concurrent conflict of interest and I should not be

18   representing the debtor, I need to know that, because then

19   if that's the case, from the time the Court says that every

20   word that comes out of my mouth I am violating my

21   obligations under the rules of professional responsibility.

22        So either the Court finds I have a concurrent

23   conflict of interest today or it doesn't.

24        And recognizing that if something comes up in the

25   future that creates that conflict, we're going to have to

61

1    deal with it.  But I -- I kind of need to know that today.

2            THE COURT:  I think I said you didn't have a

3    concurrent conflict of interest today, but you might in the

4    future.

5            MR. HENZY:  Agreed.

6            THE COURT:  And that parties needed to bring that

7    to the Court's attention.

8            MR. HENZY:  Understood, Your Honor.

9            THE COURT:  Okay?

10           MR. HENZY:  Thank you.

11           THE COURT:  All right.  With regard to Rule 9024

12   motion, as I mentioned to you last time, I didn't understand

13   why you weren't moving under section 324, the removal of the

14   trustee.

15           And the case law that I've looked at says that a

16   rule -- and *Collier*, again, says that Rule 60 is not the

17   appropriate way to challenge the appointment of a trustee

18   under -- that the United States -- because the Court's not

19   involved in the appointment.  Remember.  Right?  The Court's

20   not involved in the appointment.  The U.S. Trustee's

21   involved in the appointment.

22           And the U.S. Trustee is only simply asking that

23   the appointment be approved and the Court approved it.  No

24   one was able to put forth any evidence as to why it

25   shouldn't be approved.

62

1              And so -- then it's -- then that appointment

2      stands.

3              And the way that you have to proceed is a motion

4      of 324.  And if that motion is denied, it's not a final

5      appealable order.

6              Which obviously you want the Rule 60 to be an

7      appealable order.  So we're not -- we're not proceeding down

8      the Rule 60 road, because according to sources that I've

9      looked at, it's not appropriate.

10             Mr. Despins was appointed as the Chapter 11

11     Trustee.  And the only way he can be removed is under 324.

12     So if you want to file a motion under 324 and meet those

13     requirements, you're entitled to do so.

14             MR. HENZY:  I think or under 1105, Your Honor.

15     But the --

16             THE COURT:  Under what?

17             MR. HENZY:  I think also 1105 provides for the

18     termination of trustee's appointment.

19             THE COURT:  But it refers back to 324.

20             MR. HENZY:  1105 doesn't, but that's neither here

21     nor there.

22             THE COURT:  The rules do.

23             MR. HENZY:  I understand.

24             Just to be clear, is Your Honor denying our --

25             THE COURT:  Yes.

1          MR. HENZY:  -- 60(b) motion?

2          THE COURT:  I'm denying your 60(b) motion.

3          MR. HENZY:  Thank you, Your Honor.

4          THE COURT:  And all discovery that was related to

5     the 60(b) motion is denied because the motion -- because

6     it's moot.

7          MR. HENZY:  Can I have one moment, Your Honor?

8          THE COURT:  Yes.

9        (Pause)

10         MR. HENZY:  So, Your Honor, the motion -- the

11    motion to quash is granted?

12         THE COURT:  It doesn't need to be granted.  It's

13    moot.  The Rule 60(b) motion is denied.

14         MR. HENZY:  Very well.  Understood.

15         THE COURT:  Any discovery with it, associated with

16    it, is moot.

17         MR. HENZY:  Understood, Your Honor.  Understood.

18         MR. DESPINS:  Your Honor --

19         THE COURT:  Yes.

20         MR. DESPINS:  -- may I be heard on this?

21         THE COURT:  Yes.

22         MR. DESPINS:  I know your reaction might be, you

23    just won, why don't you sit down.  But, Your Honor, I know

24    in this case what's going to happen.  Everything is going to

25    get appealed.  And I wonder whether the Court would

64

1    entertain alternative findings on this, which is that you've

2    already ruled it's not procedurally proper.  But in any

3    event, the concept of disinterestedness under 101.54 or 59,

4    I forget which subsection --

5            MR. HENZY:  14.

6            MR. DESPINS:  14.  Sorry.  101.14 deals with the

7    estate, not the debtor.  And there's nothing that's been

8    alleged in anything they've produced that would somehow

9    affect the disinterestedness of the trustee vis-a-vis the

10   estate as an alternative finding.

11           Just because what I -- you know what I'm -- I

12   don't want to go back and forth, back and forth --

13           THE COURT:  Well, I haven't -- I haven't written

14   an order --

15           MR. DESPINS:  Okay.

16           THE COURT:  -- denying the Rule 60 motion yet,

17   which would have to happen before there could even be an

18   appeal.  Number one.

19           MR. DESPINS:  Thank you, Your Honor.  Thank you.

20           THE COURT:  And number two, if there was an

21   appeal, they'd have to be a bond posted.

22           MR. HENZY:  And I don't know whether there will be

23   an appeal or not.  But, Your Honor, I think those

24   alternative findings should not be made.

25           And I actually disagree with Mr. Despins that a

65

1    trustee does not have to be disinterested vis-a-vis a

2    debtor.  And there is case law that says a trustee has to be

3    disinterested vis-a-vis a debtor.

4         But, again, I don't think you need to make

5    alternative findings.  You've denied the motion.  I

6    understand the basis for the denial.  And I think that

7    should be it.

8         THE COURT:  Well, there's still going to be a

9    written order.  There has to be a written order.

10        MR. HENZY:  I mean, if you're going to go beyond

11   denying on the I'll call it the 324 ground, which I

12   understand, then I am aware Collier says a 324 or 1105

13   motion is preferable to a 60(b).

14        But there -- I would -- if you're going to make

15   alternative findings, I would at least like an opportunity

16   to argue because --

17        THE COURT:  You put that argument in your papers.

18   Your argument is in the papers.  You stated why you think

19   the trustee should be removed and why the relief from the

20   order should enter.  And your papers say all that.  You say

21   -- you talk about all that in your papers.

22        MR. HENZY:  I think you can -- I would argue you

23   can -- you can deny -- again, that sounds funny because you

24   can do what you obviously decide to do.

25        But denial based on that you need to bring a

1    motion under 324, I think you --

2            THE COURT:  I didn't say -- I didn't say just

3    that.  That's not appropriate.

4            I said you have to bring a -- and I said to you at

5    the last hearing that the standards under Rule 60 and the

6    standards under 324 are completely different.

7            And so I didn't just say it's denied because you

8    didn't bring it under 324.  That's not what I said.

9            MR. HENZY:  Okay.

10           THE COURT:  Okay?  I said that the motion is

11   denied because you didn't bring it under 324 because that's

12   the appropriate section to bring it under.  Number one.

13           And number two, I don't-- I don't have any --

14   there's no -- you didn't bring forth anything to me under a

15   Rule 60 motion that met the standard under a Rule 60 motion,

16   which is that under your 60(b) motion, you would have to

17   find -- I would have had to have found that there was

18   inadvertent mistakes, surprise or excusable neglect.  That's

19   doesn't apply.

20           Newly discovered evidence that with reasonable

21   diligence could not have been discovered in time to move for

22   a new trial.  That doesn't apply.  Fraud, which doesn't

23   apply.  You brought forth no evidence of that.  That the

24   judgment is void.  That doesn't apply.  The judgment has

25   been satisfied, released or discharged.  That doesn't apply.

1          Or any other reason that justifies relief.  There

2     is no other reason that you've set forth that justifies

3     relief under Rule 60.

4          So if you want to file a motion and try to meet

5     the requirements of 324, you're welcome to do so.

6          But you already argued all of those issues in your

7     Rule 60(b) motion and I'm denying it.  There are no grounds

8     for relief that you have presented to the Court under Rule

9     60 and bankruptcy Rule 9024, to grant relief under those

10    rules.

11          MR. HENZY:  Understood, Your Honor.

12          THE COURT:  Okay.  Thank you.

13          All right.  So now we can move on to the

14    application to employ Paul Hastings.

15          MR. DESPINS:  Thank you, Your Honor.

16          There were two -- one statement and one objection.

17          And the first, the objection, is filed by the

18    debtor.  And we cited a Fifth Circuit decision -- although

19    we don't need a Fifth Circuit decision, but the technical

20    decision that says a debtor out of possession cannot -- does

21    not have standing to object to the retention of counsel.  So

22    I believe that's hornbook law.

23          Actually, you had hinted at that at the last

24    hearing without talking about the retention of counsel

25    specifically.

1              But that case applies to the retention of counsel

2       because it's a case administration matter and the debtor out

3       of possession does not have standing unless there's a

4       surplus.  And in this case, they're saying there's no

5       surplus because they have no assets.

6              Now, I think it's still important again, for

7       appellate purposes, to just assume standing for two minutes

8       and address the debtor's objection.  And I go back to the

9       definition of disinterestedness.  It's keyed off to the word

10      estate.  And it's true that it talks about creditors, equity

11      holders, and the debtor, but the test is vis-a-vis the

12      estate.  And none of what's been alleged here has anything

13      to do with the estate.

14             The issue of Mr. Wynn, you know, has nothing to do

15      with the estate.  And I want to be clear about this.  My

16      firm was retained after Mr. Wynn was sued by the DOJ, did

17      not advise Mr. Wynn in any way regarding what to do or not

18      to do vis-a-vis Mr. Kwok.  There's none of that.  Mr. Wynn

19      is not a creditor.  The Wynn litigation will not affect the

20      estate up or down in any way and that's very important.

21             And it's the same thing with the Chinese offices.

22      I mean, that the fact that we have offices in China first of

23      all was well known from the beginning.

24             But it all falls on the basic point I made before

25      -- and I want to explain this concept where I used insanity

1    -- in their papers.  They say that's outrageous that he says

2    it was insane.

3         I've always been very precise that what is insane

4    is the lack of a link that they're establishing between

5    what's happening between the debtor, his immigration status

6    and the Chinese Communist Party, and this estate.

7         Your Honor is not dealing with an immigration

8    matter.  Your Honor is not -- we are not dealing with that.

9    We have no position on that.  It's not our issue and we're

10   not going to be involved in these issues.

11        And that's where everything falls apart because

12   there's no link between all of this and the -- and the

13   estate and the job we have to do, which is to get the

14   maximum assets possible and to the holders of allowed claims

15   in this case.

16        The other point is the UBS matter.  That's another

17   distraction.  First, they've known about UBS from the

18   beginning.  That was in the first declaration we said that

19   we represent UBS affiliates.  I think I said predominantly

20   or primarily regarding financing matters.  We didn't say

21   exclusively.  But what does it matter whether we represent

22   them regarding traffic tickets or financing matters or

23   bankruptcy matters?

24        I've said clearly that I've never represented

25   them.  I'm not representing them.  I am able to be

1    litigation adverse, meaning as trustee against them.  And,

2    in fact, the litigation against them is pending in England.

3              And as Your Honor knows, you know, in England to

4    be appearing in court and to argue a case you have to be a

5    barrister.  Paul Hastings are not barristers in the U.K.

6              So practially the people will use -- if you look

7    for example -- at their objection, attached to the complaint

8    that filed against UBS, if you go to the end, there are

9    three signatures there.  These are three barristers.  We

10   don't have barristers.  And those are the people I would

11   think that would continue to handle this matter given

12   they've been handling it for two years, with some success by

13   the way.  Well, procedural success I should say.

14             So the issue of UBS is a non-issue because in any

15   event I'm the one as trustee who will handle this.  I will

16   supervise the work of U.K. barristers -- who are not Paul

17   Hastings people because we don't have barristers -- and

18   that, again, resolves that issue. And I believe the rest is

19   all the same as the 60(b).

20             PAX also filed a response.  I think it would

21   probably make sense to deal with the debtor's issues first,

22   and then we'll come back to PAX after that.  Thank you.

23             THE COURT:  That's fine.  Thank you.

24             Mr. Henzy?

25             MR. HENZY:  Thank you, Your Honor.

71

1    So if I could address the standing issue first.   With

2    standing, first point, 1109(b) says the debtor has a right

3    to raise, appear and be heard on any issue in a Chapter 11

4    case.   That's very, very clear.

5            I recognize that 1109, courts hold that a debtor

6    still has to have -- you may be able to raise, appear and be

7    heard, but that doesn't necessarily mean listening to me

8    talk is the equivalent of an objection that the Court needs

9    to rule on.

10           So you can maybe painfully have to listen to me,

11   but then say, thank you, Mr. Henzy, but I don't -- you don't

12   have standing to object.   And you've raised, appeared and

13   been heard, but I don't have to rule on anything.

14           So I understand that there's -- there's really

15   just two levels to the analysis.   There's 1109(b) and then

16   there's do you have standing.

17           The traditional standing analysis is you have to

18   -- you either have to be classically aggrieved -- and I

19   don't think that's what's at issue here, because we're

20   dealing with a statute -- or you have to have statutory

21   standing.

22           So you have to have a statute that Congress has

23   passed where the argument is that Congress intended to give

24   a party a right to be heard in connection with that.   And

25   that is all very well laid out in many Supreme Court

1  decisions, Your Honor.

2        The standard that the Supreme Court has laid out

3  in those decisions -- so the principal decisions being

4  *Association of Data Processing Service vs. Camp,* that's at

5  397 U.S. 150, and then *Clarke vs. Security Industry*

6  *Association, t*hat's at 479 U.S. 388, where they lay out that

7  it is a party within the zone of interest to be protected by

8  the statute in question.

9        The standard that the Supreme Court has laid out

10  is a -- it's a pretty low bar.  It's a quote from the *Clarke*

11  decision.

12        The Court to say there's no standing would have to

13  find that the zone of interest denies a right to participate

14  of the parties because the parties' interests are so

15  marginally related to or inconsistent with the purpose

16  implicit in the statute that it cannot reasonably be assumed

17  that Congress intended to permit participation.

18        The *Clarke* court further says the test is not

19  meant to be especially demanding.  In particular, there be

20  no indication of congressional purpose to benefit the would-

21  be plaintiff.

22        And back to *Collier's*, the -- discussing those

23  cases, *Collier's* at Volume 7, 1109.04, subparagraph (4)(b),

24  says given the nature of Section 1109(b) because courts have

25  said that in thinking about that zone of interest analysis

1    under the Supreme Court case law you plug that in together

2    with 1109(b).  And so *Collier's* says given the nature of

3    section 1109(b) and the purposes that it was designed to

4    serve the zone of interest has to be liberally construed in

5    favor of participation in Chapter 11 cases.

6            There are cases, Your Honor, that say that a

7    debtor has a right to object to the retention of counsel.

8    Among other cases, Judge Krechevsky, *in In re Pappas*, at 216

9    B.R. 87, it's a 1997 decision, ruled that -- he actually

10   ruled that Rule 2002 refers to a debtor as a party in

11   interest and the debtor had standing to object under 327.

12           And then Judge Brozman in a case, the *Vebeliunas*

13   -- *it's V-E-B-E-L-I-U-N-A-S* -- it's 231 B.R. -- give me one

14   second, Your Honor -- 181.

15           And actually, Your Honor, there Judge Brozman

16   disqualified trustee's counsel on the basis that trustee's

17   counsel, before the 341 had occurred, before ever examining

18   the debtor, had made public statements that indicated an

19   extreme bias against the debtor.  He called the debtor a

20   liar and other inappropriate things.  And Judge Brozman

21   found that the debtor there both had standing to and, in

22   fact, disqualified counsel on that basis.

23           Also I point, Your Honor, to a Second Circuit

24   decision, *Savage & Associates, P.C. vs. K&L Gates*, 640 F.3d

25   53, where the Second Circuit made clear that a debtor has

74

1    standing to -- I'm sorry -- that a party may have standing

2    not just based -- not based on a financial interest alone,

3    but also based on having a legal interest.

4           And, again, both Judge Krechevsky and Judge

5    Brozman found that a debtor did have a legal interest in

6    objecting to a 327(a) application where counsel was not

7    disinterested.

8           On the financial interest, look, I have no idea

9    where this case is going to come out, Your Honor.  And I

10   understand that at filing the debtor had some very small

11   amount of money in his possession.

12          But speaking of the U.K. litigation, the amount

13   demanded there is $500 million.  And I don't know anything

14   really about the status other than I think I may have heard

15   a comment that maybe sounds like something similar to what

16   Mr. Despins has heard that that litigation apparently has

17   gone reasonably well.

18          So it may well be that this estate is not solvent.

19   And it may be that there's a $500 million recovery against

20   UBS in the U.K.  And that would be terrific for everyone,

21   including the debtor.

22          So I believe that the debtor does have standing

23   here to -- to object to Paul Hastings' retention.

24          In terms of the conflicts and -- I did, you know,

25   file a witness and exhibit list with exhibits.  I'm prepared

75

1    to put on evidence.  Although with respect to much of the

2    evidence I would put on, I'm not sure that there's any

3    disputed issue.  And I don't want to belabor or take up a

4    lot of time that we don't need to take up.

5         I don't think it's disputed that Paul Hastings

6    does work for various UBS entities.  The initial declaration

7    that Mr. Despins filed states that and names the entities.

8    Actually the Paul Hastings financial restructuring web page

9    says that they have done -- I don't know if they do today --

10   but that they have done work for UBS entities.

11        I don't think it's disputed that the defendant in

12   the U.K. action is UBS AG.  That the -- in the debtor's

13   schedules, and I don't know why -- in the statement of

14   financial affairs I don't know why this was done, but it was

15   disclosed there was an action against UBS AG, and then, in

16   parens, it says London branch.

17        And in the initial declaration filed by Mr.

18   Despins the UBS AG that he is talking about in the

19   declaration is defined to be that UBS AG, in parens, London

20   Branch.

21        But if you look at the complaint, which I actually

22   attached to our objection -- again, I could -- I'm happy to

23   put it into evidence, Your Honor, but it's attached to our

24   objection and I don't think there's any dispute that it is

25   -- it is the complaint -- it's clear that the defendant

1    there is UBS AG -- I'm going to say the big UBS AG -- the

2    one that's headquartered in Switzerland and presumably is

3    the parent of a whole bunch of other UBS entities.

4         Again, the damages there asserted is $500 million.

5    So this is not an insignificant claim.  And that's in,

6    again, in the complaint that I attached to the -- to the

7    objection that we filed.

8         Mr. Despins says he's never represented any UBS

9    entity -- this is in his -- in his initial declaration --

10   and that he in his capacity as trustee is able to be adverse

11   to UBS AG and to be named plaintiff.

12        A couple of points. In the declaration, because of

13   the way he's defined UBS AG, again, to be just UBS AG, in

14   parens, London Branch, close parens, I don't think his

15   declaration as filed actually covers the actual defendant in

16   that lawsuit because his declaration -- he does say in the

17   declaration that he can be adverse to any -- he's never

18   represented any UBS -- what the declaration says is he's

19   never represented any UBS entity.  That's easy to

20   understand.

21        In my capacity as trustee, I'm able to be adverse

22   to UBS AG and to be named plaintiff as Chapter 11 Trustee in

23   any lawsuit against UBS AG.  But, again, his definition of

24   UBS AG is UBS AG, London Branch, and that's not -- the

25   principal defendant in that action is UBS -- big UBS AG I'll

77

1    call it.

2         And so his declaration just -- it just does not --

3    other than that he's never represented any UBS entity, it

4    does not address the actual defendant in that lawsuit.

5         The actual --

6         THE COURT:  Why does it need to address the actual

7    defendant if he said he didn't represent any UBS entity

8    ever?

9         MR. HENZY:  Well, Your Honor, because it's not

10   clear from all of that whether Paul Hastings has represented

11   --  if we were talking about my denied 60(b) motion, that

12   would be important.  But we're not.

13        We're talking about Paul Hastings.  And so the

14   issue is whether -- not whether Mr. Despins has ever

15   represented any UBS entity.  It's whether any UBS entity is

16   a former or current client of Paul Hastings.  And I don't

17   think that his declaration addresses that.

18        THE COURT:  Okay.

19        MR. HENZY:  Mr. Bassett -- in the actual

20   application to retain Paul Hastings, it's Mr. Despins'

21   application, but there's a declaration by his partner, Mr.

22   Bassett, that's attached.

23        And Mr. Bassett's declaration does not address

24   that representation at all.  What it does is it points to

25   Mr. Despins' declaration, his first declaration and just

78

1    says when it comes to connections, I'm just relying on his

2    declaration.

3         Which I actually under Rule -- under the rule, I'm

4    not really sure that you can do that.  I'm not sure counsel

5    -- in a retention application, I'm not sure that the firm

6    affidavit or declaration that's attached to the application

7    can point to something else and say I'm not -- I'm not

8    disclosing any conflicts.  I'm pointing you to somebody -- a

9    different declaration that somebody else has filed and go

10   look at that.

11        But I guess in some sense I'm not -- I'm not

12   swearing to anything here other than what Mr. Despins said

13   over there is true.  So Mr. Bassett doesn't himself in his

14   declaration address the UBS issue at all.

15        So I think the bottom line of all of that is that

16   I'm sure the UBS issue has been addressed by the existing

17   declarations.

18        And I'm also not sure how you get around -- or

19   maybe you can get around Paul Hastings representing the

20   trustee here, but I don't think that what is on file now

21   does that.

22        It doesn't carve out Paul Hastings from

23   representing UBS.  It just -- it just doesn't.  They're

24   being retained as general bankruptcy counsel to the trustee

25   and I think that that's a significant conflict for them.

```
1            That UBS is a client of Paul Hastings I think is

2    admitted.  And UBS is a defendant in a major asset of this

3    bankruptcy estate.

4            And I'm a -- I'm a little -- I could keep -- I

5    don't know if we're going to address the PAX/PAG issue

6    separately.  Or I can keep going on the issues that I've

7    raised.

8            Because I guess I think the issues that Attorney

9    Friedman has raised are actually different than the ones I

10   would raise with respect to PAX and PAG.

11           So should I keep going, Your Honor?

12           THE COURT:  Well, I don't know.  Maybe we should

13   hear from Mr. Despins first on this issue and then keep

14   going.  I mean, otherwise we're going to be here all day.

15   Right?

16           I mean, what -- you know, the issue is, Mr.

17   Despins, Mr. Henzy's saying your firm has a conflict because

18   they represent UBS.  It's not clear that they represent UBS.

19   And they're -- UBS is a defendant in the adversary -- in the

20   case in London.  So, you know, he's saying that Mr. Barnett

21   I believe --

22           MR. DESPINS:  Bassett.

23           THE COURT:  Bassett, I'm sorry, his affidavit

24   isn't -- doesn't answer that question.

25           MR. DESPINS:  May I, Your Honor?
```

1          THE COURT:  Yes, please.

2          MR. DESPINS:  So the application to retain Paul

3    Hastings, which I signed, incorporates by reference my

4    declaration, and the declaration addresses both the trustee

5    appointment and Paul Hastings.  It says that expressly, that

6    the disclosures in that declaration cover both the trustee

7    and Paul Hastings.

8          That declaration says that we don't represent

9    London, sorry, UBS AG currently.  We've represented them in

10   the past, but we represent other UBS entities.

11         And I don't think -- I'll check this -- but I

12   don't think that the fact that it said, open paren, London

13   Branch verses non-London Branch changes the analysis.  I

14   think that from my point of view it's the same thing.

15         Luc Despines as Trustee can be trustee and handle

16   as trustee litigation against any UBS entity, London Branch

17   of not, and practically -- that's why Mr. Henzy has not --

18   he makes all of these great points, but doesn't die into

19   reality.

20         The reality here is that there is counsel involved

21   in the case.  They're barristers.  These are the people that

22   have been handling this case for two years.  And I'm -- I

23   think they will continue to do that.  It would be not a good

24   idea to replace them with new counsel.  In any event, even

25   if I wanted to do that, Paul Hastings are not barristers in

81

1    London, therefore, cannot handle that litigation.

2         So Paul Hastings, it's a false issue.  Paul

3    Hastings cannot handle that litigation.  So that's really

4    the crux of the issue, Your Honor, is that it's a non-issue

5    for that reason.

6         And, you know -- you know, I'm sure Your Honor

7    knows the difference between solicitors and barristers.  But

8    we are solicitors in London, we're not barristers, cannot

9    file a complaint or handle a trial.  I'd love to be able to

10   do that, but we're not equipped to do that.  So that, to me,

11   deals with that issue completely.

12        THE COURT:  Okay.

13        MR. DESPINS:  Thank you.

14        THE COURT:  Thank you.

15        Go ahead, Mr. Henzy.

16        MR. HENZY:  So just -- so just to be clear, Your

17   Honor, the only place where the UBS issue is addressed is in

18   the U.S. Trustee's application for order approving

19   appointment of Chapter 11 Trustee, which attached to that

20   was Mr. Despins' declaration of disinterestedness.

21        And paragraph 7(c) of that declaration provides

22   while Paul Hastings previously represented UBS AG, in

23   parens, London Branch, defined -- it's in quotes -- "UBS

24   AG."  So in -- in his declaration, UBS AG means UBS AG,

25   London Branch.  That's not my definition.  I'm not -- I

1    don't think I'm parsing things, words, or anything like

2    that.  That's how he has defined UBS AG.

3           And what the declaration says is then I have never

4    represented any UBS entity, including UBS AG.  I, in my

5    capacity as trustee, am able to be adverse to UBS AG --

6    again, substitute for that UBS AG, London Branch -- and to

7    be named the plaintiff as Chapter 11 Trustee in a lawsuit

8    against UBS AG -- again, substitute UBS AG, London Branch.

9           What the declaration says about Paul Hastings is

10   Paul Hastings does not currently represent UBS AG.  But,

11   again, that-- the way he's defined it UBS AG means UBS AG,

12   London Branch.  It doesn't mean big UBS AG.  That may -- I

13   don't know.  It may or may not be true that Paul Hastings

14   doesn't represent big UBS AG, but that's not what this says.

15          Paul Hastings does currently represent certain UBS

16   entities, namely UBS Securities, LLC, UBS Securities,

17   Limited, Seoul Branch, UBS Investment Bank, that are

18   affiliates of UBS AG, which again I think means UBS AG,

19   London Branch, in unrelated matters.

20          And so I don't think Mr. Despins' declaration

21   addresses Paul Hastings' representation of big -- what I'm

22   calling big UBS AG, which is the defendant in the U.K.

23   action, at all.  It just doesn't.

24          And Mr. Bassett's declaration does no more than

25   refer to Mr. Despins's declaration.

1          Mr. Despins' declaration may be adequate with

2     respect to his being disinterested with respect to this

3     issue.  And he says that he is able to be adverse to UBS AG,

4     and meaning London Branch, and to be the named plaintiff

5     against UBS AG, London Branch, but it doesn't say anything

6     about Paul Hastings.

7          So right now I don't think there's been any

8     disclosure, Your Honor.

9          And, again, I don't know if it's -- I've never

10    seen in an application to retain a professional that the

11    declaration with the affidavit attached to the affidavit

12    simply makes reference to somebody else's declaration.  But

13    that -- maybe there's something out there that says that's

14    okay.

15         So the application is for Paul Hastings to be

16    general bankruptcy counsel.  There's no -- there's no carve

17    out.

18         MR. DESPINS:  Your Honor, I'm happy to put a carve

19    out.  Paul Hastings will not handle the U.K. litigation.

20    That's the end -- that's the end of it.  I mean, we can --

21    because we can't.  We're not barristers, Your Honor.

22         THE COURT:  Anything further on that point, Mr.

23    Henzy?

24         MR. HENZY:  I don't have anything further on that

25    point, Your Honor.

1          THE COURT:  Okay.  So what's your next point?

2          MR. HENZY:  With respect to PAX/PAG that was the

3     subject of -- I understand there was disclosure right at the

4     time of the July 8 hearing, and then there was a

5     supplemental disclosure.

6          There has been no disclosure with respect to the

7     common officers, common directors, common control between

8     the PAG, the so-called PAG entities, that Paul Hastings

9     until very recently represented and apparently terminated

10    that relationship.  There's no disclosure of the

11    circumstances of the termination of the relationship.

12         And I -- Mr. Friedman can certainly correct this,

13    but based on the statement that he made at the July 21

14    hearing, my sense was that PAG may not have understood that

15    it was a former client of Paul Hastings.

16         And, again, Mr. Bassett's declaration does not

17    address PAX or PAG at all.  It just refers to Mr. Despins'

18    -- actually his initial declaration.

19         So I don't think that the disclosure here has been

20    adequate.  And as the Court is obviously very, very aware,

21    the -- PAX is a major creditor in this -- in this bankruptcy

22    case.

23         THE COURT:  Mr. Despins?

24         MR. DESPINS:  Your Honor, the first supplemental

25    declaration, again, says it's filed in support of the

85

1    trustee appointment and the Paul Hastings retention.  That's

2    paragraph one.  So that issue is addressed.

3         My declaration covers both.  So I don't understand

4    why going back to Bassett -- Bassett is irrelevant for the

5    purpose of conflict.  There's only one conflict disclosure.

6    They're my declarations.  Number one, number two, number

7    three.

8         So Bassett, the fact that he's incorporated by

9    reference is of no meaning because the application to employ

10   Paul Hastings says we -- Paul Hastings is relying on the

11   declarations of Luc Despins.  Plural.

12        Now, on the issue of PAX, he's saying we don't

13   know if they're the same officers and all that, paragraph 4

14   of the declaration says, and in any event assuming without

15   conceding the point that PAG entities and PAX would be

16   treated as one for conflict purposes, meaning assuming that

17   they have the same directors and officers, which we didn't

18   get into, I'm still able to be adverse to them because

19   they're a former client.

20        So that's the end of the inquiry, meaning I'm

21   assuming the worst here, that they are all the same, which

22   I'm not sure is the case.

23        But assuming it is the case, we are able to be

24   adverse because they're former clients on a -- on a related

25   matter.

1          There was -- the last transaction is a transaction

2     that closed in May -- I forget the exact date -- May 15th,

3     17th, something like that.  And it's a corporate

4     transaction, and there was a closing, and that was the

5     closing transaction.  That was in May of 2022.  So I'm not

6     sure I see the point there.

7          THE COURT:  Mr. Henzy?

8          MR. HENZY:  I mean, again, Your Honor, the only

9     declaration that was actually attached to the application to

10    retain Paul Hastings was Mr. Bassett's.

11         But, I mean, it's always the case, Your Honor,

12    where you have a transactional client there's going to be

13    periods of time where there's no transaction that's pending,

14    and it sounds like PAG, these PAG entities, were

15    transactional clients of Paul Hastings.

16         And I don't -- I don't doubt that in I guess it

17    was May that whatever transaction they were working on

18    closed, but, I mean, at least it appears that there was a

19    relationship.

20         And Paul Hastings certainly can take the position

21    that, well, right now we're not representing any of the PAG

22    entities on any matter and, therefore, they're a former

23    client.

24         Now, that -- and that's always a sort of

25    discussion thing.  If you have a client and you're doing

1    work for that client on a regular basis, but at a point in

2    time you don't have any matter you're actively working on,

3    is the client a former client or is the client a current

4    client?

5              I think I understand the technical argument is a

6    former client, but I think often times clients don't

7    understand the technical argument and might not always agree

8    with that.

9              I still think that there is a disclosure issue

10   though.  What were the -- what were the circumstances of

11   PAG, the PAG entities, becoming former clients?

12             I mean, did Paul Hastings inform them we are not

13   going to represent you anymore?  I think that is -- I think

14   that's relevant.

15             How many -- how long did the relationship exist?

16   How many transactional matters did Paul Hastings represent

17   the PAG entities on?  I think that is all relevant

18   disclosure, Your Honor.

19             THE COURT:  Anything further?

20             MR. HENZY:  No, Your Honor.

21             THE COURT:  Anything further on the application to

22   employ Paul Hastings as a whole?

23             MR. HENZY:  Yes, Your Honor.

24             THE COURT:  What?  What's next?

25             MR. HENZY:  Okay.  Next is I'll call it the

88

1    broadly Paul Hastings' connections with China.

2         I don't think, Your Honor, that it's disputed that

3    Paul Hastings has a presence in China.  It has offices in

4    Beijing, in Shanghai, and it also has an office in Hong

5    Kong.  I don't know if it's -- would be disputed today that

6    Paul Hastings does do work for Chinese state owned entities

7    and it also does work for businesses.  They're doing

8    business in China.

9         I don't expect anyone to agree with me today that

10   China exercises significant review, control, over businesses

11   in China.  I will admit that I'm not going to be able to

12   prove that today.  I'm not sure how I would have prove it.

13        I did cite a statement by the Director of the FBI,

14   Christopher Wray, in the objection.  I did not subpoena Mr.

15   Wray to court here today to say in court today what he has

16   said publicly in terms of China's -- the degree of control

17   China exercises over -- over businesses in China, including

18   their license to do business in China.

19        I also believe, Your Honor -- I don't know if this

20   would be disputed or not -- there's a pretty good public

21   record of this, that to put it mildly, Mr. Kwok got on the

22   wrong side of the government of China.  He had to leave the

23   country.  He is seeking asylum here.

24        The Peoples -- the Chinese government and/or the

25   Hong Kong government seized billions of dollars of assets of

89

1     family members, and others and potentially very significant

2     dollars that I don't think he would dispute were in entities

3     that he did control, like the Pangu Plaza, which my

4     understanding is that that was actually PAX's -- connected

5     with PAX's loan and kind of was the part anyway of the

6     reason that a lot that unraveled.

7          Mr. Kwok may have claims against the government of

8     Hong Kong or the Peoples Republic of China based on the

9     seizure of those assets.  I am not obviously an expert in

10    that world, but my understanding is that there at least in

11    form is a procedure that a person can go through if their

12    assets have been seized.

13         I don't know of Mr. Despins has done any analysis

14    of that at all in terms of is there a claim to be made by

15    the estate based on the seizure of assets. So there's --

16    that's a specific concern.

17         The general concern is that the Chinese government

18    I think it has demonstrated that it is -- it is going after

19    Mr. Kwok.

20         Again, we cite Department of Justice documents in

21    the objection, Your Honor, that make it clear that the

22    government of China has attempted in various ways to remove

23    Mr. Kwok from this country.  And so there's a couple of

24    concerns with that.

25         One is that the Chinese government will seek to

1  exercise influence over Paul Hastings.  Paul Hastings cannot

2  do business in China if -- unless China allows it to do

3  business there.  And, again, according to the FBI director,

4  the government of China does exercise control over

5  businesses that are doing business there.

6          Very recent and up front is -- and Mr. Despins

7  made reference to this, the United States Department of

8  Justice has sued Mr. Stephen Wynn for failing to register

9  under the Foreign Agent Registration Act.  And the

10  allegation is that Mr. Wynn acted as an agent for the

11  Chinese government in seeking to have Mr. Kwok removed from

12  -- from this country.

13          On July 15, Paul Hastings appeared on behalf of

14  Mr. Wynn in that District of Columbia action and they are

15  seeking to dismiss that action.

16          Mr. Despins -- after we put this in the objection,

17  he filed a second supplemental disclosure, and among other

18  things, in paragraph 3 of that disclosure, he said I did not

19  disclose Paul Hastings' representation of Mr. Wynn in the

20  prior declaration because he first learned about it by --

21  via the objection.

22          Well, obviously the firm knew about its

23  representation of Mr. Wynn and I think it's the firm has an

24  obligation to make their adequate disclosure.

25          In the paragraph 4 of the declaration, Mr. Despins

1     also says that he believes the Wynn representation has no

2     bearing on the retention of Paul Hastings as counsel, and

3     essentially it's just -- it's completely unconnected,

4     irrelevant.  I think it's connected in a number of ways.  Or

5     the Chinese government's actions are certainly connected in

6     a number of ways.

7              One, if Mr. Kwok is removed from this country that

8     obviously has significant impact on this bankruptcy case if

9     he's not here.

10             Mr. Despins states in the -- in his declaration

11    that the debtor will not be a witness in the action that's

12    pending in -- in the District of Columbia.

13             I don't know how Mr. Despins could know that to be

14    true.  I don't know how anyone, unless they talk to someone

15    at the DOJ, could know whether or not the DOJ is going to

16    decide, or maybe Mr. Wynn is going to decide, that Mr. Kwok

17    should be called as a witness.

18             Mr. Despins also states the debtor's estate will

19    not be increased or decreased based on the action that's

20    pending in the District of Columbia.

21             I don't know if Mr. Despins has concluded that the

22    debtor has no claim against Mr. Wynn.  And if you -- if you

23    read the complaint filed in the District of Columbia action,

24    it essentially alleges a pretty broad, you know, pattern of

25    behavior put it.

1           Someone might -- you know, someone might say it

2     looks like a conspiracy amongst a group of people to have

3     Mr. Kwok removed from the country.  So he may well have a

4     claim or there may well be a claim against Mr. Wynn on

5     account of Mr. Wynn's conduct related to Mr. Kwok.

6           So that is it, Your Honor.

7           THE COURT:  Okay.  Thank you.

8           Mr. Despins, did you want to respond to that last

9     point?

10           MR. DESPINS:  Yes, Your Honor.

11           First, you know, the -- Mr. Henzy talks about

12    claims the debtors may have.  The schedules don't mention

13    any of this.  Claims against the Chinese government is not

14    in the schedules.

15           And here, again, the point about exercising

16    pressure is, you know, there's always a failure to connect

17    to the conduct by the trustee of this case.  How is that

18    going to be influenced by any pressure that the -- that

19    could be put on.  It's really not there.

20           He's not going to be a witness because it has --

21    as my partner told me -- it could have been lobbying to sell

22    Chinese technology or Chinese tea or something or anything

23    like that.

24           It's you need to register if you are acting as a

25    foreign agent.  The subject matter of the discussion is not

93

1    part of the case.  The fact is you did make representation

2    or not -- don't know -- regarding -- on behalf of a foreign

3    entity.  And if that's the case, you need to register.

4    That's the end of it.  So that's why he's not going to be a

5    witness.

6            As to the Kwok claims against Mr. Wynn, you know,

7    I hesitate to say this because -- but have at it.  I mean,

8    meaning Paul Hastings is not going to represent Mr. Wynn in

9    defending him against claims asserted by Mr. Kwok because

10   clearly they're trying to create a scenario of some kind

11   where somehow Mr. Kwok, you know, has a legitimate concern.

12           I'm telling you right now if Mr. Kwok decides to

13   sue Mr. Wynn for whatever, Paul Hastings will not defend Mr.

14   Wynn in that litigation.  So there's no animosity or issue

15   there.  So I think that answers those questions.  Thank you.

16           MR. HENZY:  I'll be brief.  I probably was not

17   clear.  I think the concern is does the trustee and Paul

18   Hastings representing the trustee have an obligation to

19   investigate what claims might exist against Mr. Wynn or

20   other people who were involved in this behavior where they

21   were seeking to assist the Chinese government in having Mr.

22   Kwok deported.

23           I mean, in terms of a claim against either the

24   government of Hong Kong or the government of China, the

25   debtor did not schedule that.  But presumably Mr. Despins

1    and Paul Hastings representing Mr. Despins would want to

2    investigate that.

3              Again, this Pangu Plaza was worth hundreds of

4    millions of dollars, and it was -- and it was seized.  And I

5    think whatever assets that either indirectly or directly may

6    have been owned by a debtor go away that that's something

7    that needs to be looked at an investigated.

8              THE COURT:  Anything further?

9              MR. DESPINS:  Just one last point on this, Your

10   Honor.

11             If the debtor gets into a car accident tomorrow

12   and has a claim against the other driver, am I supposed to

13   pursue that or is that -- that's another, you know -- so the

14   claims against Mr. Wynn have nothing to do with -- it's not

15   a -- it's a post-petition claim by the debtor.  I'm not sure

16   that's for the trustee to prosecute.

17             MR. HENZY:  This is -- all the conduct here

18   occurred pre-petition, Your Honor.  All of the conduct.  The

19   lawsuit was filed by the DOJ post-petition, but all the

20   conduct that occurred occurred pre-petition.  And the same

21   thing with the seizure of assets.  So it's -- to the extent

22   that there are assets, they're pre-petition. I think those

23   would be property of the bankruptcy estate I believe.

24             THE COURT:  Anything further, Mr. Henzy, on your

25   objection to Paul Hastings being retained as counsel to the

95

1    Chapter 11 trustee?  Mr. Henzy?

2              MR. HENZY:  I'm sorry, Your Honor.

3              THE COURT:  I said is there anything further that

4    you want to state with regard to your objection of -- for

5    Paul Hastings being retained as counsel to the trustee?

6              MR. HENZY:  No, Your Honor.  No, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              Anyone else?

9              Mr. Friedman, didn't you file an objection or a

10   limited objection with regard to the retention of Paul

11   Hastings?

12             MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

13   Peter Friedman from O'Melveny & Myers.

14             THE COURT:  Good afternoon.

15             MR. FRIEDMAN:  So we noted our concern that if

16   there's going to be a circus around this that that is a

17   problem.  Obviously, there are other routes that could have

18   been gone in terms of a trustee.

19             But I don't -- we don't think, having looked at

20   the issues, there's a statutory reason other than it not

21   being potentially in the best interest of the estate to have

22   Paul Hastings retained. Our objections were mostly fee-

23   oriented and cost-structurally oriented.

24             The colloquy back and forth though did sort of

25   remind me of an issue you talked about, which is, you know,

96

1    you take the debtor as you find them.  And it is a little

2    weird to hear the debtor now talking about all these

3    potentially valuable assets he has that weren't in the

4    schedules and when it was convenient for him to say I have

5    $3,850 or, no, the assets were never mine.  They were always

6    my families'.  But now he claims he maybe does have lawsuits

7    against the Chinese government.  There is sort of this very

8    weird miasma around -- it's almost like an -- the case is

9    almost like an etch a sketch from the debtor's perspective.

10         What he said in the past literally doesn't matter

11   to what he feels today.  I think that's sort of a troubling

12   portion of this case, that it simply just doesn't matter

13   what he said in the past in other context.  Something else

14   that comes up new that sort he thinks he can ride on the

15   back -- like a blank slate, if it advantages him today and

16   that is sort of a troubling pattern that we've seen over the

17   years.

18         Look, on fees, Your Honor, we were in a situation

19   where the U.S. Trustee picked somebody who had a lower fee

20   structure, much lower fee structure, which we do think is

21   appropriate for the case overall, particularly if you wind

22   up with either a non-consensual plan or low recoveries.

23         We are concerned about eating into creditor

24   recoveries, you know, if substantial costs are run up by the

25   trustee and his counsel.

1    The trustee sort of, you know, has a response. One of the

2    points of the response is, well, on the other hand, we're

3    not acting like a true contingency counsel fee firm because

4    the upside isn't so great.

5         And to be fair, Your Honor, if the upside turns

6    out to be even better, right, maybe our proposals on the

7    upside aren't as generous as they could be.  If the trustee

8    recovers $150 million, I think we, you know, we might be

9    open to substantial fee enhancements.

10        We just -- our real concern is, you know, if there

11   is a low end or if some money gets exhausted after running

12   after Mr. Kwok for many years.  And Mr. Despins may well

13   not.

14        But, you know, and you end up with 60 or 70

15   million dollars of recovery, but you also wind up with 10 or

16   15 million dollars in legal fees, that would be a real loss

17   from the PAX perspective and I think the perspective of

18   other creditors, particularly where there was an option at

19   the outset of the case for lower costs.  So that's our

20   concern.

21        And so, you know, I think the Court has it in her

22   power either to evaluate costs now, evaluate costs in the

23   context of what value is given to the estate as things come

24   up.  Obviously, you know, people may prefer for it to be

25   dealt with now.  We would.  But, you know, that's where we

98

1    stand.

2         This is -- you know, I think you've heard from me

3    over the course of years.  This isn't like a -- over the

4    last six months.  This isn't like I'm going to pound the

5    table because there are immediate factual issues that have

6    to be addressed.

7         But there are real concerns from PAX about how

8    much money is PAX going to wind up with at the end of the

9    day versus how much is going to be paid to professionals.

10   So I think, and said, we've -- we've put forward.

11        Beyond that, you know, our specific concerns and

12   specific proposal, I think we're amenable to making the

13   upside better from our perspective if that's enticing and

14   appealing to the trustee and his law firm.

15        But whether it's dealt with now or whether it has

16   to be dealt with in the future when asset -- when cash comes

17   in, we think it's really important to address.

18        Thanks, Your Honor.

19        THE COURT:  Thank you.

20        Anyone else wish to be heard?

21        Oh, I'm sorry, Mr. Despins.  Would you like to

22   respond first?

23        MR. DESPINS:  No.  Maybe others want to be heard.

24        MR. GOLDMAN:  Just briefly, Your Honor.  Irve

25   Goldman for the creditors committee, Your Honor.

1              On the -- this newly raised potential claim that

2     the debtor says he may have against Steve Wynn, as Mr.

3     Friedman pointed out, that's a claim that should have been

4     but was not listed on the schedules.

5              As Mr. Henzy said it's based on pre-petition

6     conduct so it would have had to have been listed on the

7     schedules as an asset of the estate.

8              There is well settled case law that when a debtor

9     doesn't list a claim on its schedules and then tries to

10    bring an action post confirmation, for example, it's going

11    to be judicially estopped from pursuing that claim.  And

12    that's the situation here.  It should be judicially estopped

13    from making the argument that he has a claim that the

14    trustee needs to investigate against Mr. Wynn.

15             As to the Paul Hastings application, we did file a

16    statement indicating that we had certain understandings

17    concerning how the Paul Hastings firm would represent the

18    trustee in this case, which were formed based on discussions

19    with Mr. Despins.

20             And that is that they would, whenever possible,

21    economize by using local counsel, whose rates are much lower

22    than the Paul Hastings firm, and that also they would not be

23    seeking litigation funding for the causes of action that we

24    believe exist and which results in a savings in the sense of

25    it would have been an expensive proposition to obtain

1    litigation funding.

2         So I think it's important that these

3    understandings at least be confirmed on the record here

4    today.

5         Another one of those understandings was that the

6    trustee himself, in the capacity as trustee, would not be

7    seeking percentage compensation under Section 326 for assets

8    that may be recovered and distributed in this case, but that

9    he would be just looking for his hourly rate as counsel for

10   Paul Hastings for -- in lieu of any percentage compensation

11   that he might claim under section 326 at the end of the day.

12        So I would just appreciate if he can confirm those

13   understandings on the record. As we said in our papers, we

14   have no objection to the retention.

15        THE COURT:  Okay.  And just why do you think that

16   he should not be receiving a statutory percentage of any

17   recovery?

18        MR. GOLDMAN:  Well, because if he's going to be

19   compensated as a lawyer for Paul Hastings at these rates --

20        THE COURT:  Oh, if he's going to be as -- working

21   as a lawyer?

22        MR. GOLDMAN:  Yeah.

23        THE COURT:  Okay.  All right.

24        MR. GOLDMAN:  Yeah.

25        THE COURT:  I didn't understand.  I got it now.

1    Okay.

2            MR. GOLDMAN:  Yeah.

3            THE COURT:  Sorry.

4            MR. GOLDMAN:  And that he --

5            THE COURT:  I got you.

6            MR. GOLDMAN:  Okay.

7            THE COURT:  I didn't understand it.  I just didn't

8    hear you properly I guess.

9            MR. GOLDMAN:  Okay.  Thank you.

10           THE COURT:  I'm sorry.

11           MR. GOLDMAN:  Thank you.

12           THE COURT:  Okay.  Thank you.

13           Attorney Claiborn?

14           MS. CLAIBORN:  Your Honor, the U.S. Trustee has no

15   objection to the employment of Paul Hastings based upon the

16   documentation filed thus far in the case.

17           I just would note, as we observed this previously

18   in this case, that the continuing obligation to disclose

19   exists today, tomorrow, into the future.

20           And then with respect to the issue of the

21   compensation, the U.S. Trustee's position is that attorneys

22   carry their firm's fees and their own hourly rates with them

23   from their home market.

24           And that this is a complex case.  It's got a lot

25   of moving parts and it requires experienced counsel and that

1   necessarily sometimes translates into higher fees.

2          The work that's got to get done in this case does

3   need to get done in a cost effective manner.  I think

4   everyone has made that clear to Trustee Despins and he's

5   aware of it and I'm sure that he's going to do his best to

6   make sure that the skills match the services and that we are

7   doing them in a cost effective manner.

8          And that when we get to a place of fee application

9   that is the appropriate place and the time to debate the

10  cost effectiveness of the services rendered and the benefit

11  to the estate.

12          THE COURT:  Thank you.

13          Trustee Despins, is there -- would you like to

14  respond?

15          MR. DESPINS:  Thank you, Your Honor.

16          I'll pick up where counsel for the committee, you

17  know, left off, which is I've made that commitment to try to

18  be as nimble as possible.

19          First of all, it's our job to do that, but -- and

20  that means practically relying on local counsel, on Mr.

21  Skalka and Mr. Linsey, as much as we can.

22          And also leverage what PAX has done in the state

23  court, because there's three years, maybe four years, of

24  learning there and there's no point in us reinventing that

25  wheel.  Us as lawyers.  We can just borrow from that and we

1    intend to do that.  And that combined together should lower

2    the cost.

3           But I don't want to mislead you.  This is going to

4    be an expensive process.  And I want to touch on the point

5    that I've agreed there will be no litigation funding.  That

6    is correct.

7           But I did get a quote just to give Your Honor a

8    sense.  A litigation funder -- let's assume we wanted $5

9    million to pursue claims -- they -- the fee they will charge

10   will be two to four times the amount.  So you have to repay

11   the 5 million.  Then it would be a 10 to 20 million dollar

12   fee.  Just to put that in perspective.

13          We're not asking for any of this.  We're not

14   asking for 30 percent, 40 percent.  We're asking for our

15   rates.

16          I understand that our rates are high compared to

17   local rates.  I understand that, Your Honor.  But here I

18   could end up with a zero recovery.

19          I know we all know and we believe what should

20   happen.  And I believe that too.  But from that to reality

21   is going to take a lot of time and a lot of effort.

22          And we are bearing the risk of that because the

23   debtor has unlimited resources and they will fight us on

24   everything.  It will be appealed to the Second Circuit.  And

25   if they can, to the Supreme Court.  I've no doubt about

1    that.

2           And that's what we're facing in terms of getting

3    paid.  And, therefore, we believe in light of that it would

4    be really inappropriate to say, oh, we're going to discount

5    your rates if you don't collect more than X dollars.

6           Because, for example, let's assume tomorrow I wave

7    a magic wand in my dreams and I get the Sherry-Netherland

8    and the yacht here, how much do they sell for?  I don't

9    know.

10          What if they sell -- and this is not my goal -- I

11   want them to sell for 70 million for the apartment and 40

12   million for the yacht.  But let's assume they sell for 20

13   each.

14          Well, under Mr. Friedman's proposal I'm taking a

15   hit because even though I've obtained a good result in

16   bringing these two assets in, I didn't get the value that

17   people thought would be obtained from the assets.  I've

18   become an insurer of the value of the assets.  That's really

19   wrong.

20          So I understand PAX's frustration.  They've spent

21   millions of dollars chasing this debtor in a kind of a catch

22   me if you can caper.  And they almost, almost got it.

23   Almost got it, but they didn't.

24          And now they have -- they have this fear -- and I

25   share the fear -- which is is this the beginning of another

1    catch me if you can?  And my job is to make sure that the

2    movie is shorter this time or more successful.

3            But I -- but the point is that that should not

4    translate into we're going to -- we're frustrated and we're

5    going to hurt you on your fees.

6            I just -- I don't want to sound arrogant about

7    this, Judge, but if I came back to the office and said it's

8    a contingent case and I took a discount on my hours, they

9    would say what did you do?  They would just say they would

10   have to have my head examined.

11           So I don't want to be arrogant about this, Judge,

12   but -- and I wish -- I feel Mr. Friedman and his client's

13   pain on this, but there's nothing I can do on the hourly

14   rates.  And I would urge Your Honor to look at this as a

15   contingency fee transaction.  And in that context, it's a

16   very reasonable rate.

17           Thank you, Your Honor.

18           THE COURT:  Thank you. Mr. Henzy?

19           MR. HENZY:   So the -- on the Wynn claim, this

20   action was just filed by the Department of Justice on May

21   17.  So approximately three months after the petition was

22   filed and after the schedules were filed.  So a lot of --

23           THE COURT:  But you said it was all pre-petition

24   conduct.

25           MR. HENZY:  I'm basing that on -- I'm reading the

1    complaint, Your Honor. I'm saying the complaint was filed --

2         THE COURT:  Well, your client would know or not

3    know whether it was pre-petition conduct.  That's --

4         MR. HENZY:  No, Your Honor.

5         THE COURT:  Yes, he would.

6         MR. HENZY:  That's not -- the facts of what

7    happened here became public on May 17.  They all occurred

8    years ago.  They became public on May 17, 2022 when the

9    government filed it's complaint against Mr. Wynn. So I'm

10   just -- I'm pointing out that many of the facts which

11   occurred years ago became public for the first time when

12   this complaint was filed.  That's all.

13        So three months after the case was filed and after

14   the schedules were filed.

15        A second point --

16        THE COURT:  Well, the trustee didn't get appointed

17   until July 8th.  So your client could have amended his

18   schedules before that.

19        MR. HENZY:  I suppose he could have, Your Honor.

20   I'm not sure --

21        THE COURT:  Well, he has a duty to do that.

22        MR. HENZY:  I'm not sure in this case --

23        THE COURT:  It's not just a supposition.

24        MR. HENZY:  Yeah, given all that was going on I

25   don't know --

1          THE COURT:  What was going on?  Your client wasn't

2     doing anything.  They weren't fighting anything.  They

3     decided that the case should be dismissed.

4          MR. HENZY:  Yeah.

5          THE COURT:  Right.  So he then just decided what

6     he thought should happen and he doesn't have any other

7     obligations under the code?

8          MR. HENZY:  No, I don't think that's fair, Your

9     Honor.

10          THE COURT:  Well, I don't think it's fair to say

11     that he could have maybe amended his schedules.

12          MR. HENZY:  Maybe.

13          THE COURT:  He had an obligation to amend his

14     schedules.

15          MR. HENZY:  Your Honor, I'm pointing out the facts

16     here became public well after the case was filed and also --

17          THE COURT:  It wasn't well after the case was

18     filed, by the way.  The schedules weren't filed until March.

19          MR. HENZY:  Mr. Despins I don't think is

20     judicially estopped by what's in the debtor's schedules.  So

21     whether there's a claim against Mr. Wynn or not I don't

22     know, but I do know that Mr. Despins is not estopped.

23          MR. DESPINS:  Your Honor, two seconds on that.

24          THE COURT:  Yes.

25          MR. DESPINS:  Just to show you -- you know, Mr.

1     Henzy's very creative.  We'll give him that.  So we could

2     have a claim.  Let's look at his motion to remove me as

3     trustee.

4              THE COURT:  Why don't we do that.

5              MR. DESPINS:  It says --

6              THE COURT:  Hold on a second. Let's look at it all

7     together because it's a lot easier for me when we're all

8     looking at it together.

9              So his motion to remove you --

10             MR. DESPINS:  Is 561.

11             THE COURT:  561.  Let's look at that.

12             MR. DESPINS:  Paragraph 21.

13             THE COURT:  Just give the courtroom deputy a

14    second and we'll pull it up.

15        (Pause.)

16             THE COURT:  What page?

17             MR. DESPINS:  Paragraph 21, page 7, Your Honor.

18             THE COURT:  Thank you.  Can we make that bigger,

19    please?  Thank you.

20             Okay.

21             MR. DESPINS:  So the point there, Your Honor, as

22    you'll see, it talks about a former DOJ official pleaded

23    guilty to facilitating the transfer of millions of dollars

24    from foreign bank accounts to the United States to fund a

25    lobbying campaign to pressure a high ranking U.S. official

1    to unlawfully remove the debtor from the United States.

2    Whoa, that's pretty bad.

3            And is that claim in the schedules anywhere?

4    That's 2018.  Is that in the schedule?  It's not in the

5    schedules.  Why?  Because, again, I give credit to Mr. Henzy

6    to come up with these theories, but the debtor had a

7    beautiful claim apparently here against this person but is

8    not pursuing that claim.

9            So the claims against Wynn are all of the same

10   ilk, meaning obviously, if the debtor thought they had a

11   claim against Wynn, they would have asserted this one for

12   sure against the DOJ -- ex DOJ official.  So it's just to

13   show you that this all pretends to try to bounce Paul

14   Hastings from the case, Your Honor.

15           THE COURT:  Thank you.

16           All right.  Anyone else wish to be heard?

17           All right.  The application -- go ahead, Mr.

18   Friedman. I'm sorry.

19           MR. FRIEDMAN:  Your Honor, the only thing I would

20   say is just in response to Attorney Claiborn's position is

21   obviously they also thought that the first counsel they

22   hired was sophisticated and capable and just came in with a

23   different set of rates.  That's all I have to say, Your

24   Honor.

25           THE COURT:  Okay.  Thank you.

1    Now Mr. Despins, I just have to look back at --

2    with your application did you file a proposed order?   I

3    think you did. I'm not sure it was filed with it or

4    subsequent.

5         MR. DESPINS:  It should have been.  Let me --

6         THE COURT:  I've looked at -- I may even have it

7    right here.  As you can imagine --

8         MR. DESPINS:  Let me find it.

9      (Pause.)

10        THE COURT:  I'll look.  Don't worry. I can take a

11   look.  It will just take me a second.

12        (Pause.)

13        MR. DESPINS:  It's document 539.

14        THE COURT:  Yeah, it's there.  It is there.  It's

15   Exhibit -- it's -- proposed order is five pages.

16        MR. DESPINS:  Yes.  531 -- 539-1.

17        THE COURT:  Yes, I'm looking at it right now.

18   Thank you.

19        (Pause.)

20    When do -- Mr. Despins, do hourly rate increases

21   go into effect in your firm?  Does it happen at the

22   beginning of the year or -- is it normally when that

23   happens?

24        MR. DESPINS:  Typically, yes, Your Honor, but we

25   have a fiscal year that starts in February, February 1st. So

1    typically it would be at that time.

2              THE COURT:  Okay.  Because I think -- and one of

3    the things that I tend to do in cases where people are

4    concerned about hourly rates is to make sure that I'm aware

5    of whatever rate increases there are before they would be

6    binding on anyone in this case.

7              So, for example, in your proposed order you say

8    that you would give no less than ten business day's notice

9    about any increases in rates.  And you'll file such notice

10   with the court. I think that's fine, because it may be that

11   depending upon where we are, that maybe the rate will not be

12   increased in the case, okay?  It's possible.

13             MR. DESPINS:  Understood.

14             THE COURT:  Okay.  And then I just want to look at

15   one other thing and then I'll --

16             (Pause.)

17             I know that -- as everybody has acknowledged

18   today, that this is a difficult case.  There are many issues

19   and I understand everyone's concerns. I think people have a

20   right to -- raise the concerns that they've raised and I

21   have listened to them. I have looked at the documents that

22   have been filed in the connection with the application to

23   employ Paul Hastings.

24             I know that Paul Hastings and Trustee Despins have

25   a continuing duty, as does everyone in the case, to address

1    issues that may impact conflicts or disinterestedness.

2         I at this point find that Paul Hastings is

3    disinterested.  That the arguments that have been set forth

4    by the debtor through counsel are not persuasive and that

5    the application to employ Paul Hastings will be granted.

6         The proposed order, Mr. Despins, if there's any

7    minor change to it, it will be minor, but I note, as I note

8    for all counsel, or at least try to remember to. I don't

9    know if I do it as well as I think I do or should, but

10   Section 330 of the bankruptcy code allows the court after a

11   hearing on reimbursement of compensation and expenses to

12   award and amount less than that sought and, therefore, while

13   these rates and issues are before the court are -- you've

14   set forth what you're going to charge, that those are your

15   rates, that the court could make a different finding in the

16   future.

17        But I'm not suggesting that that's what's going to

18   happen. I'm just suggesting the code -- I like to make sure

19   that counsel knows that the code says that.  The code says,

20   and I think it's 330(b), that compensation can be awarded in

21   an amount of less than that sought.

22        And I do understand your point with regard to this

23   case and how to view it, but at this point the application

24   is granted.  The proposed order with some minor change may -

25   - I think the only change it will be -- a reference to rule

113

1    -- I mean, excuse me, Section 330 and that, you know, the

2    court may not enforce an increase in rates if one is filed

3    with the court. It may not be enforced against the estate or

4    it may, depending upon the circumstances of what happens.

5         Again, I think this case has a lot of issues and,

6    you know, I think we just have to see what happens. I think

7    the flexibility is there in the code to give the court as

8    the oversight body the ability to make a determination on

9    the fees and expenses.

10        MR. DESPINS:  Understood, Your Honor. Our only

11   point is that we didn't want that discretion, which is

12   normal, meaning if it costs us $500,000 to obtain a bond,

13   you should disallow that.  Okay?

14        THE COURT:  Right?

15        MR. DESPINS:  But I want to be clear is that

16   that's not going to be a back door way to bring local rates,

17   or anything like that --

18        THE COURT:  No, I'm not doing that. I agree with

19   that.

20        MR. DESPINS:  Thank you, Your Honor.

21        THE COURT:  That is not happening.  The only thing

22   that would happen is if an application is filed and the

23   court finds that there's some reason why the services

24   rendered should not be reimbursed.

25        MR. DESPINS:  Absolutely.  Understood, Your Honor.

1          THE COURT:  And not an increase in rates. I'm not

2    sure that an increase in rates will be -- we'll have to see

3    where we stand at that point.

4          MR. DESPINS:  Understood.

5          THE COURT:  Mr. Friedman.

6          MR. FRIEDMAN:  I just want to make clear, and I

7    don't think we need to add this to the order because I think

8    it's always part of the procedure that, for example, if we

9    want to object to compensability for sideshows about whether

10   a disclosure was appropriate, or if there's an appeal to the

11   Supreme Court that somebody brings, we always have the right

12   in connection with each application, whether interim or

13   final, to assert that a specific time entry was not for

14   value to the estate.

15         THE COURT:  Absolutely.  Everybody has that right.

16   That is correct.

17         MR. FRIEDMAN:  Thank you, Your Honor.  Thank you

18   very much.

19         THE COURT:  Okay.  And the court could make that

20   determination as well, upon review of the fee application.

21         So the application to employ Paul Hastings is

22   granted and the order will enter with minor changes, Trustee

23   Despins, okay?

24         MR. DESPINS:  Thank you, Your Honor.

25         THE COURT:  Now we can move onto the application

1    to employ Neubert, Pepe and Monteith.

2            MR. SKALKA:  Good afternoon, Your Honor.

3            THE COURT:  Good afternoon.

4            MR. SKALKA:  Douglas Skalka on behalf of Neubert,

5    Pepe and Monteith's application.

6            Your Honor, as you I think are aware, the trustee

7    filed an application to retain my firm as his local counsel.

8    The application was dated July 19th. It's docket no. 569.

9    We received no objections or responses to the application.

10           We did get a request from the U.S. Trustee's

11   Office to submit a supplemental declaration, which we did on

12   July 26th.

13           As part of that supplemental application we

14   indicated that we no objection to amending our order to add

15   a paragraph indicating that we would need seek compensation

16   for trustee related services.  So that's not in the order

17   that's on file, Your Honor.

18           THE COURT:  Okay.

19           MR. SKALKA:  I can submit a revised order to that

20   effect and certainly would be willing to do that later today

21   or tomorrow.

22           THE COURT:  And does anyone else wish to be heard

23   in connection with the trustee's application to employ

24   Neubert, Pepe and Monteith?

25           MS. CLAIBORN:  Your Honor, just briefly.  Holley

1   Claiborn for the U.S. Trustee.

2              The paragraph to which Attorney Skalka's referring

3   is also found in the application to employ Paul Hastings in

4   that proposed order for Paul Hastings at paragraph 5.

5              And it limits the compensation that might be

6   awarded to the firm and excludes compensation for trustee

7   services.

8              THE COURT:  Thank you.

9              So you're saying Attorney Skalka just needs to

10  have that language in the proposed order.

11             MS. CLAIBORN:  Correct.

12             THE COURT:  Okay.  That's fine.

13             MS. CLAIBORN: And with that the U.S. Trustee has

14  no objection.

15             THE COURT:  Okay.  Thank you.

16             MR. SKALKA:  And it's completely acceptable to

17  Your Honor -- to my firm, Your Honor.

18             THE COURT:  Does anyone else wish to be heard on

19  the application to employ Neubert, Pepe, Monteith?

20             Okay.  Hearing nothing from anyone else and having

21  reviewed the application and the desire of all parties to

22  attempt to make this case as efficient as possible,

23  including fees and expenses, I understand the trustee's

24  reason for seeking to employ Neubert, Pepe and Monteith.

25             I think that Neubert, Pepe and Monteith has

1    demonstrated that they are disinterested and that no one

2    else has any objection to the application.  Neubert, Pepe

3    and Monteith has stated that they will submit a new proposed

4    order with the qualifications set forth on the record by the

5    United States Trustee's Office and that were in the order

6    approving the application to employ Paul Hastings.

7              So for all those reasons the application to employ

8    Neubert, Pepe and Monteith is granted and the proposed order

9    -- Attorney Skalka, how much time do you need to submit that

10   proposed order?

11             MR. SKALKA:  I think I'll have it by tomorrow,

12   Your Honor.

13             THE COURT:  Okay.  Well, I'll give you -- so it's

14   easier for the clerk's office I'll say till August 3rd.

15   How's that?  That's Wednesday.

16             MR. SKALKA:  That's fine.

17             THE COURT:  Okay.  Thank you.

18             MR. SKALKA:  Thank you, Your Honor.

19             THE COURT:  If everyone could just give me one

20   moment, please.

21        (Pause.)

22             Okay.  So that application is granted.

23             Then just so we're clear on what's on the calendar

24   today, then -- I already said that the motion to quash is

25   moot due to the denial of the Rule 60 motion.

1          So then we just have left on the calendar the

2     motion for order confirming that the Chapter 11 trustee

3     holds all the debtor's economic and corporate governance

4     rights and debtor controlled entities and authorizing the

5     trustee to act in a foreign country.

6          So Mr. Despins, would you like to be heard on

7     that?

8          MR. DESPINS:  Yes, Your Honor.

9          THE COURT:  Please.  Go right ahead.

10         MR. DESPINS:  And also remember that we have

11    housekeeping matters.

12         THE COURT:  Yes.

13         MR. DESPINS:  Okay.  So the corporate governance

14    motion is basically to confirm that we step into the shoes

15    of the debtor.  And I'm glad we filed the motion because the

16    debtor's response made clear that it's unclear to the extent

17    they will cooperate with us.

18         So basically they raised issues regarding BVI --

19    sorry.  Genever BVI.  Remember, that's the parent holding

20    company in BVI that holds the interest in the Chapter 11

21    debtor that's in front of Judge Garrity.

22         And to address their concern about what would

23    happen there we actually provided yesterday, last night

24    fairly late, we filed an amended proposed order that says

25    okay, this is what we need from the debtor.

1      We look at this, to be kind of colloquial about

2    it, the debtor has a car.  We want the keys to the car. Or

3    the debtor has stock.  We want the debtor to endorse the

4    stock essentially to give it to us.

5          So the way to do that under BVI law is that he

6    needs to sign certain documents, which we have attached

7    drafts thereof, which our BVI counsel has drafted, and

8    basically the order says Mr. Kwok will within I guess two

9    business days sign these documents, assigning his rights to

10   those share to the trustee.

11         And there's a lot of text, but that's really what

12   it is.

13         In addition to that, because of an issue that was

14   unresolved with the UK lawyers that I mentioned that

15   represent Mr. Kwok in the litigation against UBS, basically,

16   I reached out to them a long time ago, I think two days or

17   three days after being appointed, and they called Mr. Henzy

18   -- actually it would have been later because Mr. Henzy was

19   not appointed til Friday the 14th or something like that.

20         In any event, they reached out to Mr. Henzy saying

21   this guy, meaning the trustee, is calling us.  Should we

22   talk to him.

23         Mr. Henzy, to his credit, wrote a very nice email

24   to them saying the trustee owns all the rights in the

25   litigation.  Mr. Kwok doesn't control any of this.  Talk to

1    him.

2         So we got on the phone with them and they said

3    well, that may be the U.S. view of the law, but that's not

4    the U.K. view.  You may have to file a motion to be

5    recognized as a foreign -- and I said, no. I need to do that

6    if I want to start a foreign insolvency proceeding against

7    someone. But if I just want to be substituted as a plaintiff

8    I don't need to do that.

9         Not to make the story too long, Your Honor, they

10   said well, actually, what we need is a letter from Mr. Kwok,

11   because they're afraid of getting sued for -- they haven't

12   used those terms getting sued but it's clear from the body

13   language that they don't want to do anything with a letter

14   from Mr. Kwok.

15        So that's the same analogy here. I need the keys

16   to the car and the keys to the car, Mr. Kwok has it.  He

17   just needs to send a letter to them. It's basically --

18   parrots what Mr. Henzy has written to them already but it

19   would be under the debtor's signature that says this

20   litigation is owned by the Chapter 11 Trustee now.  He has

21   all the rights.  You should tell him everything, privileged

22   or not.  You should communicate everything with him.

23        So that's really what we're doing with this

24   motion. The criticism we've received is by the debtors that

25   -- first of all there's a standing issue and the debtor be

1    heard on these issues.  They raised the rights of others

2    like Bravo Luck, although we gave notice to Bravo Luck.  We

3    served Bravo Luck's counsel.  So that's not an issue.

4            But the debtor's standing on this is questionable.

5    But putting aside the standing yes, we're seeking broad

6    relief, Your Honor.  Why, because cost.  We don't want to

7    come back to the court saying hey, could you authorize this

8    for Australia, please?  Could you authorize this for Canada?

9    I'm making those up. And come back to court all the time.

10           So, yes, we're asking for something that's broad.

11   The idea is that the trustee will use his discretion to do

12   this in a way that makes sense and if not, you're going to

13   get me basically.  You're going to tell me that I shouldn't

14   have done these things.

15           But I think that it is standard, and we cited

16   cases to that effect, to have the trustee's authority to act

17   from a corporate governance point of view recognized.

18           For example, we need to see Judge Garrity in the

19   Genever case. I don't want to be in a situation where Bravo

20   Luck, which is the son's alleged company, shows up to say

21   he's not authorized to speak.  He didn't get the shares from

22   BVI, et cetera.  We can't deal with that.

23           And that's what this accomplishes.  Basically, it

24   makes it very clear that we hold all these rights and that's

25   why we would ask Your Honor to enter the order.

1        But I'm happy to answer any questions, Your Honor,

2    or respond to any remaining criticism by the debtor.

3        THE COURT:  I just have a question about this --

4    again, the order was filed yesterday. So I looked at it I

5    would say not as intently as I might otherwise.  But that's

6    fine. I've looked at it.

7        I would assume, but I shouldn't assume, but I

8    won't assume.  What -- if this order enters and Mr. Kwok

9    doesn't sign these documents, then what's the next step?

10        MR. DESPINS:  You're getting to a point that we'll

11    get to in this case eventually, which is contempt.

12        THE COURT:  So we need to have another hearing.

13        MR. DESPINS:  Well, there'll be a motion to hold

14    them in contempt.

15        THE COURT:  Right.

16        MR. DESPINS:  Yes.

17        THE COURT:  Okay.  So that's -- I mean, that's my

18    read of it but, again, as I'm saying to you, I read it not

19    as thoroughly as I might have otherwise because I just had a

20    little bit of time this morning to look at it, but that's

21    fine.

22        I understand the terms and conditions of it in

23    general and I understand that you are asking the court to

24    enter an order under specific sections of the bankruptcy

25    code, including the sections that --

123

1          MR. DESPINS:  521.

2          THE COURT:  The debtor's duties under the code,

3     whether the debtor's in possession or not.  And that you

4     need this for different -- not only in the United States but

5     for different matters that are pending and were pending at

6     the time that Mr. Kwok filed his Chapter 11 case here in

7     Connecticut.

8          So I have no further questions. I just was asking

9     about that issue.

10         MR. DESPINS:  Thank you, Your Honor.

11         THE COURT:  Thank you.  Mr. Henzy?

12         MR. HENZY:  So, Your Honor --

13         THE COURT:  So you wish to be heard on this?

14         MR. HENZY:  I do, Your Honor.

15         THE COURT:  Okay.  Go ahead.

16         MR. HENZY:  On the two what I'm going to call new

17    pieces of relief that are now being sought, they were not in

18    the motion.

19         THE COURT:  You mean the letters?

20         MR. HENZY:  So the letter that he's asking you to

21    order Mr. Kwok to sign that would be sent to the Harcus

22    Parker law firm in the U.K., that was not addressed in the

23    motion in any way, shape or form.

24         So I don't know how Mr. Despins gets that relief

25    today.  That's new.

124

1       With respect to the substance there, Mr. Despins

2   is right. I tried to get out front on that because the

3   Harcus Parker people were trying to contact me and my

4   position was I don't want to talk to you because Mr. Kwok is

5   no longer party in that action.  You need to talk to Mr.

6   Despins.

7       And I copied him on the email that I sent him and

8   I have not been part of any communication between them and

9   him since I sent that email.

10      I don't know what the law is in the U.K.  I don't

11  know what requirements there are for a court over there. I

12  don't know what privilege issues they live under.

13      I do know -- I mean, I don't represent these

14  people but Mr. Kwok is being asked to sign a letter that may

15  impact other people's rights. I don't know -- the Harcus

16  Parker firm I believe represents other people in that action

17  as well.

18      So I'm in a position where Mr. Despins is adding

19  relief to what was in the motion and I don't know what --

20  and the relief -- with respect to this anyway would direct

21  Mr. Kwok to do something and I have no idea whether -- what

22  Mr. Kwok is being directed to do is appropriate in the facts

23  and circumstances.

24      THE COURT:  Well, let me ask you a question.

25      MR. HENZY:  Sure.

1              THE COURT:  You are objecting to Mr. Kwok even

2     signing the share transfer instrument of the Genever

3     Holdings Corporation?

4              MR. HENZY:  Well, let me get to that.

5              THE COURT:  That's my question.  Are you objecting

6     to that.

7              MR. HENZY:  So that was not part of the relief

8     sought either.

9              THE COURT:  Let me just ask the question.

10             You now have come in and you articulated very

11    clearly that Mr. Kwok is no longer a debtor in possession.

12             MR. HENZY:  That's right.

13             THE COURT:  Okay.  So he still has obligations

14    under the bankruptcy code and Mr. Despins has asked him to

15    provide information to him, including turning over the

16    shares of Genever Holdings Corporation, correct?

17             Didn't you say you got a letter -- Mr. Despins

18    sent you a letter or sent Mr. Kwok a letter saying he wanted

19    all the information?

20             MR. HENZY:  I don't --

21             MR. DESPINS:  Your Honor, we sent a letter to Mr.

22    Baldiga before he was terminated.  We sent a letter to Mr.

23    Mitchell?  And then we copied -- when they were appointed we

24    copied saying we need all this.  And it asked for all the

25    corporate governance documents regarding BVI.

126

1          THE COURT:  Right.  So wait a minute. So my

2     question to you is why would Mr. Kwok not sign over the

3     shares of a company that he owns to this trustee?

4          MR. HENZY:  I didn't know if you were done, Your

5     Honor.

6          THE COURT:  I am, actually.  So go right ahead.

7          MR. HENZY:  Okay.  So the background is that

8     there's this apartment in New York at the Sherry Netherland

9     Hotel.  That's owned by an entity that is in a Chapter 11

10    before Judge Garrity.

11         THE COURT:  I understand.

12         MR. HENZY:  Okay.  And my understanding, okay,

13    because I haven't spent a bunch of time looking at

14    everything that's gone in that case is that the ownership of

15    then the BVI parent is -- has been disputed.

16         And actually, Judge Garrity -- there was a

17    settlement -- an order, a settlement type of order I guess

18    I'll call it, by Judge Garrity where he -- it basically

19    provides for the sale of the apartment and it's to be

20    overseen by Melanie Cyganowski.

21         And as I understand it the debtor in the Chapter

22    11 case really signed away almost most of its -- or maybe

23    all of its ability to control that sale.

24         So everybody agreed the apartment's going to get

25    sold and we're going to put it in Melanie Cyganowski's hands

1      to do that.

2             So that -- the apartment's not going anywhere.

3      It's going to get sold.  And I assume the money is going to

4      be in a DIP account in that case and nothing bad is going to

5      happen.

6             But again, the ownership of the parent is in

7      dispute.  The allegation is that a trust owns the parent and

8      Mr. Kwok holds the shares as trustee.

9             Your Honor, I want to be clear, that's the

10     allegation that has been made, again, in the Chapter 11 case

11     in front of Judge Garrity. I haven't spent any time on it.

12            My concern is that Mr. Kwok with -- this is -- I

13     saw these documents for the first time -- actually I think I

14     saw them this morning when I woke up because they were filed

15     at 10:09 last night and, frankly, I turned my phone off

16     probably not long before that.

17            So Mr. Kwok -- Mr. Despins has asked you to enter

18     an order directing Mr. Kwok to sign these documents. I have

19     no idea, Your Honor, whether these documents are the

20     appropriate documents. I have no idea how this impacts

21     what's going on in Judge Garrity's case.  How it impacts

22     anything.  I have no idea.

23            I'm not a BVI lawyer. I don't know if these are

24     the correct documents. I don't know what BVI law says. I've

25     never seen the trust agreement that allegedly exists that

128

1    would control anybody's rights here.

2          So if Mr. Despins wants to get an order from the

3    court directing Mr. Kwok to sign specific documents and here

4    -- these specific documents, my argument is that he should

5    have to file a motion and that -- I should have some time to

6    review the motion and to review these documents and try to

7    get an understanding about whether or not these documents

8    are appropriate documents.

9          Again, these documents were not attached to the

10   motion that was filed with the court, Your Honor.  This is

11   new relief that is being sought.

12         All that was sought -- what was sought with

13   respect to the corporate governance was just this

14   confirmation that the trustee has all of the economic and

15   governance rights of the debtor.  It wasn't -- there was

16   nothing in the motion that said please give me an order that

17   directs the order to sign specific documents.

18         THE COURT:  Okay.  Mr. Despins?

19         MR. DESPINS:  Yes, Your Honor.

20         The history there, as you relate is, is that we've

21   been asking for documents since July 14th.  They have not

22   produced one single document, and the document on corporate

23   governance of this entity.

24         So when we filed this motion they said oh, we're

25   not sure this works under BVI law, I said fine.  We'll make

1    it work.  That's why the order actually provides what it

2    provides.

3              And it's true that it's on short notice, but 1021

4    says that -- I'm sorry.  Which section says after notice and

5    a hearing --

6              THE COURT:  1021

7              MR. DESPINS:  1021.  It is whatever notice is

8    appropriate under the particular circumstances.

9              So if Your Honor wanted to -- and I think you have

10   -- Tuesday are bad days for you, right?  You have a full

11   calendar or -- I don't know -- or Wednesday morning, so he

12   can respond but I want before we close on this to provide an

13   exhibit to, Your Honor, if I may approach.

14             THE COURT:  Is it something in the record already?

15             MR. DESPINS:  No.  It's something in the record of

16   the New York court where Mr. Kwok --

17             THE COURT:  Judge Garrity's case?

18             MR. DESPINS:  No.  It's in the New York *Ostrager*

19   case.  Where Mr. Kwok swore that he's the only owner of the

20   shares.  So may --

21             THE COURT:  Yes, you could approach the courtroom

22   deputy, please.  Thank you.

23             MR. HENZY:  Your Honor, I'm not -- I'm going to

24   object to the admission here.  This is an affidavit by --

25             MR. DESPINS:  It's more than that.  It's a

1    compilation of documents, but in the first affidavit you'll

2    see it's highlighted.  And it says Mr. -- this is an

3    affidavit by and entity that is related to Mr. Kwok.  And it

4    says Mr. Kwok is a sole shareholder of BVI.

5            But let's assume that doesn't exist.  Let's

6    continue flipping the pages.  Then we get to Defendant

7    Kwok's responses and objections to plaintiff Pacific

8    Alliance set of interrogatories.

9            Then you go to a page, page 6, responses to

10   interrogatories.  Subject to general, dah, dah, dah, I

11   respond that I am the legal owner of the issued shares of

12   Genever Holdings Corporation.

13           And then if you go to the end of that document

14   it's signed by Kwok Ho Wan, December 4th, 2020.

15           THE COURT:  And actually, he says it again on page

16   9 in response to interrogatory number 5.

17           MR. DESPINS:  So yes, there's this issue of --

18   okay, I'm not trying to be cute here.  There is an issue of

19   a trust agreement that would render the son the beneficial

20   owner of the apartment.

21           But that does not -- that does not affect the fact

22   that Kwok is the sole shareholder of the BVI holding entity.

23   And, in fact, the fact that he has -- him, not his son, has

24   continued to exercise control over the debtor entity.  For

25   example, when the debtor in front of Judge Garrity enters

1   into an agreement, it's signed by Mr. Kwok on behalf of the

2   debtor entity.

3          So the only thing we're asking is to have the same

4   rights at BVI and at the debtor entity level so that we can

5   be recognized by Judge Garrity in that case.

6          So -- and I've said this before. We're not trying

7   to stop the sale.  But there are things I will address

8   during the housekeeping issues that are fundamental issues

9   that we need to address in that case that makes this a time

10  sensitive issue.

11         MR. HENZY:  I'm not clear.  Are we having a trial,

12  Your Honor, on the issues -- the ownership issues on this

13  that have been in front of Judge Garrity and that I think

14  the order he entered contemplates that are going to get

15  resolved in litigation someplace else, that's not -- none of

16  this is before the court.  None of this was in the motion

17  that was filed by Mr. Despins.  He asked for a broad

18  confirmation of whatever governance and economic rights he

19  has.  And this is -- none of this is in that motion.

20         MR. FRIEDMAN:  Your Honor?

21         THE COURT:  Yes.

22         MR. FRIEDMAN:  It's Peter Friedman. I just want to

23  be heard for two seconds on this.

24         THE COURT:  Yes.

25         MR. FRIEDMAN: I just think, again, there's a lot

1    of etch-a-sketch and just to go back to one of the issues we

2    talked about a moment ago, if you look at -- I think it's

3    docket no. 107, I think it's paragraph 16, just to be clear

4    and I think you should take into this account the etch-a-

5    sketch nature of everything that happens from that side.

6         Mr. Kwok actually says under oath in that

7    declaration that he knew in May, 2021 about Steve Wynn,

8    right?  And now you hear he didn't know until May, 2022.

9         I just think you need to be really careful with

10   everything you hear connected to Mr. Kwok.  And that goes to

11   who owns the Genever shares.

12        The one thing I wanted to add is that one of the

13   thing we won in addition to the contempt order, in addition

14   to the judgment, was a turnover the shares from Justice

15   Ostrager who said that Mr. Kwok was actually required to

16   turn over the shares of Genever BVI to PAX.

17        So this is just another -- as we see it as this is

18   another attempt to frustrate legitimate creditor access to

19   the shares of valuable entities.  And we think it should

20   stop and we think that the shares should be ordered to be

21   turned -- that the shares have already been ordered to be

22   turned over and that should be effectuated by the relief

23   sought today.

24        And it's just -- it's just a continued pattern of

25   really trying to thwart every effort of creditors to recover

133

1    assets.  And that's just so important from PAX's perspective

2    that that not be delayed any further.  Thank you, Your

3    Honor.

4          THE COURT:  Thank you.  Mr. Henzy?

5          MR. HENZY:  I never said that Mr. Kwok didn't know

6    about Mr. Wynn prior to the case being filed.  What I said

7    was that a lot of the facts came out after the case was

8    filed, when the DOJ filed it's complaint.

9          And so I think that to keep going back to that,

10   it's twisting I think what I said.  I said when I stood up,

11   Your Honor, that it may be that signing these documents,

12   that there's no objection.

13         What there's an objection to is that the --

14   there's nothing in the motion that asks for this relief.

15   The first --

16         THE COURT:  Well, it asks for it generally. I

17   understand your point.  There were --

18         MR. HENZY:  The --

19         THE COURT:  I understand your point.  There

20   weren't two letters attached to the motion for Mr. Kwok to

21   sign. I understand that.

22         MR. HENZY:  That would be egregious, Your Honor.

23   To say that the relief sought in that motion translates to -

24   - and you have to sign these specific documents --

25         THE COURT:  Well, I don't know if it's egregious

134

1   though.  I don't know if I agree with you completely, okay,

2   insofar as there's been a trustee in place since July 8th.

3   It's August 1st.  The debtor has obligations.  The debtor

4   stated in prior documents in different cases that he owns

5   certain things.

6           There's a share certificate that has been

7   produced.  There's -- this isn't anything new. It may be new

8   to you, but it's not new.  And looking at what Mr. Friedman

9   just pointed out to me again the declaration of Mr. Kwok

10  that was entered on March 20, 2022, where he references the

11  article -- and article about Steve Wynn facing Justice

12  Department action.

13          You know, there comes a point where the arguments

14  start to not be credible.  And the problem is Mr. Kwok

15  thought his case was going to get dismissed.  I don't know

16  why he thought that, but he thought that.

17          After -- you know, when there was a potential --

18  two other things happening.  Appointment of Chapter 11

19  trustee or conversion to Chapter 7.

20          He has obligations.  He doesn't -- he hasn't met

21  those obligations.  With regard to your argument --

22          MR. HENZY:  In what way?  In what way?

23          THE COURT:  Hold on a second.

24          MR. HENZY:  In what way, Your Honor, has he not

25  met -- since the --

1      THE COURT: He hasn't turned over to Mr. Despins

2  what Mr. Despins' asked him to turn over.

3      MR. HENZY: Mr. Despins sent a letter --

4      THE COURT: Hold on.  Wait a minute.  Wait a

5  minute. Now you're not answering my question.

6      MR. HENZY: Well, what's your --  I don't --

7      THE COURT: He hasn't turned over to Mr. Despins

8  what Mr. Despins rightfully under the Bankruptcy Code told

9  him to turn over.

10      MR. HENZY: Okay. I don't have the letter in front

11  of me and I -- and what I don't want --

12      THE COURT: Well, your client should have provided

13  it to you.

14      MR. HENZY: What I don't -- no, I've seen the

15  letter, Your Honor.  And what I don't want is for Mr.

16  Friedman to jump up and say -- and twist my words and say I

17  said something I didn't say, okay?

18      But I don't have the letter in front of me.  I

19  don't --

20      THE COURT: Well, no, but --

21      MR. HENZY: I don't have the letter in front of

22  me, Your Honor.

23      THE COURT: Yeah.

24      MR. HENZY: I think what Mr. Despins asked for in

25  the letter, and Mr. Despins has the letter out and he's

1    going to tell you if I'm wrong, is it was a very broad -- we

2    want to see a whole bunch of information about specific

3    entities, okay?

4         So I don't remember right now, was there a

5    demanding that letter that these documents, okay, but --

6    which I don't know if these documents even exist.

7         I don't remember there being a demand in that

8    letter that said anything other than we want you to turn

9    over a whole bunch of stuff to us, which I will tell you,

10   Your Honor, the debtor -- we are working on that.  We are

11   trying to collect those documents to send them to Mr.

12   Despins.  We are doing that, okay?

13        I have no doubt that Mr. Despins and maybe Your

14   Honor thinks that that should go faster and fine.  But we

15   are working on that.

16        But I don't remember in that letter a document

17   that said -- okay. Mr. Kindseth is telling me, and I think

18   he has a better knowledge of that letter than I do, that

19   there was no such request, okay?

20        So I'm not --

21        THE COURT:  No specific letter or with regard to

22   Genever? I mean, that's a different -- you're parsing things

23   differently.

24        MR. HENZY:  I'm not parsing things.  There was a

25   letter that Mr. Despins sent that appropriately -- okay,

1    there's no push back -- said you've got to send me this

2    stuff, okay?  That hasn't happened yet. I admit that.

3              The debtor -- we're working on that.

4              THE COURT:  Okay.

5              MR. HENZY:  Should it go more quickly?  Maybe it

6    should.

7              THE COURT:  But let me just say why your argument

8    is failing, okay?

9              Mr. Kwok submitted an affidavit in this court on

10   May -- March 20, ECF 107, paragraph -- I'll tell you what

11   page.  Page 16 or 108.  Cooperative shares in the Sherry

12   Netherland apartment are held by Genever Holdings, LLC. The

13   membership interests in Genever U.S. are in turn held by

14   Genever Holdings Corporation, Genever BVI. I hold all of the

15   equity of Genever BVI.  That's Mr. Kwok.

16             MR. HENZY:  But you have to keep going. I think --

17   I would suggest --

18             THE COURT:  No, I don't.

19             MR. HENZY:  However --

20             THE COURT:  No, I really don't.  Not when it

21   matters with regard to Genever BVI and that's what the

22   trustee's asking about.

23             MR. HENZY:  However, pursuant to a declaration of

24   trustee agreement dated February 17, 2015 I hold such equity

25   in trust for Bravo Luck Limited.  My son owns the equity of

1    the apartment owner.

2              THE COURT:  Well, guess what?  You don't get to

3    Bravo Luck, Limited till you get to Genever BVI.  You can't

4    -- all you have to do is look at the chain.  You don't get

5    to Bravo Luck Limited until you get to Genever BVI because

6    he holds all the equity but then he holds it in a trust.  I

7    mean, it's going to be very difficult.

8              We can do a chart.  We can make a nice little

9    chart.  We can draw the lines from entity to entity.  But

10   this --

11             MR. HENZY:  What this -- I apologize, Your Honor.

12             THE COURT:  This is what he said.  And he said it

13   also bears noting that any interest I have in Genever BVI

14   has been ordered by Justice Ostrager to be turned over to

15   PAX, provided that such a turnover does not interfere with

16   pending litigation in the British Virgin Islands or Genever

17   U.S. bankruptcy.  Okay?

18             So Mr. Kwok said this on March 20.  It's August

19   1st.  For him to be -- I'm not saying I'm not going to give

20   you an opportunity to respond, because I am going to give

21   you one, okay?  It's not going to be long.

22             And the point is this -- to make an argument that

23   you don't -- not that you, not about you.  That counsel for

24   Mr. Kwok doesn't know whether this will have an impact and

25   other parties, worried about other third parties, that's all

1  irrelevant because Mr. Kwok already swore to this court that

2  he holds all the equity of Genever BVI.

3          MR. HENZY:  I think that you and I are reading

4  this differently, Your Honor.  I'm sorry.

5          THE COURT:  Okay.  Then we're reading it

6  differently.  But then guess what?  Then you'll have -- I'm

7  going to rule that he has to do this ultimately.  This is

8  what he said.  This is what he said.  My son owns -- the

9  apartment owner.

10          However, pursuant to a declaration of trust, I

11  hold such equity in trust for Bravo Limited.

12          MR. DESPINS:  He still holds it.

13          MR. HENZY:  He holds it in --

14          THE COURT:  He's still --

15          MR. HENZY:  He holds it in trust for Bravo

16  Limited.

17          THE COURT:  Okay.

18          MR. HENZY:  Look, I --

19          THE COURT:  And how did Bravo Limited pay for that

20  apartment?  Are we just going to go through all the -- this

21  is what -- we're going to follow the money, right?  Is that

22  what we're going to do?  Isn't that what we're doing?

23          MR. HENZY:  I have no idea.

24          THE COURT:  That's what we're doing.  That's why

25  there was a Chapter 11 trustee appointed.  That's what we're

1    doing.

2            What's happened here is --

3            MR. HENZY:  There's a bunch of things here that

4    seem to me like they're not connected, Your Honor.

5            THE COURT:  Well, how can they not be connected?

6    He said they're connected.  He wrote it in his own

7    declaration.  This is what he -- he is saying.  So --

8            MR. HENZY:  He says he holds it in trust for

9    someone else.  And look, again, I haven't had -- I have not

10   had time to analyze this because this was --

11           THE COURT:  Okay.  Let's look at the certificate.

12   Let's look at the certificate that was in the New York State

13   action, which is dated some time in -- February 13, 2015.

14   He holds the -- it says "I certify that I am the registered

15   holder of 1,000 share of U.S. dollar, one penny par value,

16   each being fully paid in the above company subject to the

17   memorandum and article association of the company."

18           So that's February 13, 2015.  This trust was dated

19   four days later.  So then he took his equity.  So then maybe

20   it's a fraudulent transfer.

21           MR. HENZY:  It might be. It might, Judge.

22           THE COURT:  It might be.

23           MR. HENZY:  Okay.  But we're not -- I don't think

24   we can resolve that on essentially 14 hours notice.

25           THE COURT:  I just told you I'm going to give you

1   time to respond.

2           MR. HENZY:  Okay.

3           THE COURT:  I'm going to give you time to respond.

4           MR. HENZY:  To circle all the way back here, I

5   said, Your Honor, it may be completely appropriate, the

6   debtor may have no objection to signing these documents, but

7   I don't know because this was filed at 10:09 last night.

8   And it wasn't in the motion that had previously been filed.

9           THE COURT:  Okay.  Well, I'm going to give you an

10  opportunity to ask your client if he's going to sign the

11  documents, okay?

12          MR. HENZY:  Thank you, Your Honor.

13          THE COURT:  Okay.

14          MR. HENZY:  Can I have enough time to do the

15  diligence?  Because I have -- I would like to find out --

16  for me to advise my client I think I need to do some

17  diligence and understand this, okay?  So I'm hoping I'm

18  going to get more than 24 or 36 hours. I heard Mr. Despins

19  say Wednesday morning.  Nothing is happening here, Your

20  Honor.  The apartment --

21          THE COURT:  That's the point. Nothing is happening

22  here.

23          MR. HENZY:  No, no, no, no.  On the apartment --

24  and everybody --

25          THE COURT:  And we've got to get some stuff to

1    move forward.

2              MR. HENZY:  I don't know what I said that was

3    funny. I'm generally not viewed as being a funny guy, but

4    the apartment is going to get sold under a process that's

5    being supervised by Melanie Cyganowski.  The apartment, the

6    money, it's all going to be property of that bankruptcy

7    estate in the Southern District under Judge Garrity's

8    supervision.  It's not going anywhere.

9              I don't know -- is the idea that Mr. Kwok is going

10   to somehow abscond with the apartment, he's going to take

11   the Sherry Netherland apartment and go away with it or he's

12   going to take the money from the apartment and go away with

13   it.  That's not going to happen.

14             So I think it's fair given the complexity here.

15   And you and I do read this paragraph differently. I think

16   that -- I don't know, Your Honor, what the structure is

17   here. I do know that property that's held in trust for

18   another is not property of a bankruptcy estate, depending on

19   --

20             THE COURT:  I'm not so sure about that.

21             MR. HENZY:  Depending on facts and circumstances.

22             THE COURT:  I'm not so sure about that.

23             MR. HENZY:  So maybe sometimes it is.  I think

24   often times it is not.  So I don't know what all of the

25   facts are here because as I said, this was not part of a

1    motion that had been filed.  This was in an order that was

2    filed at 10:09 last night.

3              THE COURT:  I understand.

4              MR. DESPINS:  And, Your Honor, I'll provide Mr.

5    Henzy more documents.  Actually, there's one which is --

6              MR. HENZY:  Don't hand -- I don't want you to hand

7    me documents. We're in court.

8              MR. DESPINS:  Okay.

9              MR. HENZY:  You can get me documents.

10             MR. DESPINS:  Okay.  But the point, Your Honor, is

11   that Mr. Kwok is exercising control over that entity.  So

12   ti's not his son.

13             So, for example, when the Genever U.S. wanted to

14   file for bankruptcy the authorization is signed by Mr. Kwok.

15   It's not signed by the son or Bravo Luck. It's signed by Mr.

16   Kwok.

17             So I guess, Your Honor, we're talking about

18   scheduling since --

19             THE COURT:  Yes, we are.  We're talking about

20   scheduling. I'm going to give Mr. Henzy some time to look at

21   this and file a response.

22             I'm looking at -- hold on one second, okay?  I

23   just need to look at the calendar.

24        (Pause.)

25             All right.  With regard to the motion filed by the

1  trustee, the motion for order confirming that the Chapter 11

2  trustee holds all the debtor's economic and corporate

3  governance rights, ECF 598, and the order -- revised

4  proposed order with regard to that motion that appears at

5  ECF 645, for the reasons stated on the record that matter

6  will -- this matter will be continued to Thursday, August

7  4th at 1:00 p.m.

8           Now with regard to the -- so that I think takes

9  care of all of our matters, other than the housekeeping

10  matters, Trustee Despins, which includes the proof of claim

11  bar date order.

12           MR. HENZY:  Can I have one point or question, Your

13  Honor?

14           THE COURT:  Yes.

15           MR. HENZY:  Okay.  On the letter to the Harcus

16  Parker firm, I'm not talking to Harcus Parker without Mr.

17  Despins being on the phone because I think I'm going to get

18  -- probably I'm going to get accused of saying something I

19  shouldn't have said or my words are going to get twisted.

20           THE COURT:  Well, you and Mr. Despins work that

21  out. I'm not ordering that you be on the phone.

22           MR. HENZY:  I don't know what their availability

23  is. I don't know -- you know, so I don't know if that can

24  happen by August 4 at 1 o'clock.  That's all.

25           I certainly will make myself available and use

145

1    best efforts, but we're talking about talking to lawyers in

2    London and I don't know what -- how much time that's going

3    to take.

4              THE COURT:  I don't think anybody's talking about

5    talking to lawyers in London other than you.

6              MR. HENZY:  We have to.

7              THE COURT:  Then that's your issue. You can figure

8    it out. We're having a hearing on Thursday at 1:00 p.m.

9              MR. HENZY:  Okay.  So I don't know how I figure it

10   out if I --

11             THE COURT:  Well, you'll try.  You can figure it

12   out.  You'll try to.

13             MR. DESPINS:  Your Honor, Thursday at 1:00 is that

14   in person or a Zoom?

15             THE COURT:  Well, what do you -- do you have a

16   conflict with Thursday?  Is that what you're telling me?

17             MR. DESPINS:  Yes, I'm out of the country.

18             THE COURT:  Oh, you're out of the country.  Well,

19   that's --

20             MR. DESPINS:  But I can do Zoom.

21             THE COURT:  Okay.  Well, then we can -- I guess --

22   when are you going to be back?  Are you out for a long time?

23             MR. DESPINS:  Yes.

24             THE COURT:  Okay.  All right.  So then we'll do it

25   by Zoom then.

146

1          MR. DESPINS:  Thank you, Your Honor.

2          THE COURT:  We'll do it by Zoom.

3          MR. DESPINS:  So now I would go into the

4  housekeeping matters, but --

5          THE COURT:  Last point and I'll be quiet, Your

6  Honor.  I promise. I just want to be clear.

7          There's other relief sought in that motion that

8  the debtor objected to.  So I don't want the court to think

9  that -- and I'm fine if that goes to --

10         THE COURT:  I don't know -- we're going to talk

11  all about that on Thursday.

12         MR. HENZY:  So everything is getting carried to --

13         THE COURT:  I will tell you, I -- my initial

14  review, subject to further argument on Thursday, is I don't

15  know what the basis for the objection of the debtor would be

16  to any other relief set forth in that motion.

17         MR. HENZY:  Okay.  Understood, Your Honor.

18         THE COURT:  Okay.

19         MR. DESPINS:  So, Your Honor, we've been at it for

20  three hours and 45 minutes.  I don't know if you want to

21  take a break before we go into the -- because there's a good

22  20 --

23         THE COURT:  Well, I'll ask the courtroom staff.

24  Would you like to take a break?  I'm sure they would,

25  actually.  Would you like to take a few minute break?  Okay.

1    Thank you.

2              So it's 3:40.  What, do you want to come back at

3    3:50 or you want longer than that?

4              MR. DESPINS:  No, that's fine, Your Honor.

5              THE COURT:  Does that work for you -- all of us?

6    I mean, it works for me.

7              So court will be in recess until 3:50.

8         (Recess from 3:37 p.m. until 3:50 p.m.)

9              THE COURTROOM DEPUTY:  We're still on case no. 22-

10   50073, Ho Wan Kwok.

11             THE COURT:  Okay.  Mr. Despins.  Before the recess

12   we were going to talk about a few --

13             MR. DESPINS:  Housekeeping.

14             THE COURT:  -- housekeeping matters, so go right

15   ahead.

16             MR. DESPINS:  The first one, Your Honor, was the

17   request to have the status conference every ten days or so.

18   And the trustee would have an obligation to file an agenda

19   24 hours before.

20             I may be that sometimes we'll say no need for the

21   status conference, but I think it's really important,

22   especially in the first few months of the case, to stay in

23   touch with the court and so, therefore, we would ask that we

24   could just --

25             THE COURT:  That's fine.  That's absolutely fine.

1   Do you have proposed dates in mind or --

2          MR. DESPINS:  Not yet.  I'll discuss this with Mr.

3   Skalka and we'll come back to Your Honor but I just want to

4   --

5          THE COURT:  Certainly.

6          MR. DESPINS:  Okay.

7          The next item -- this is more complicated.  And I

8   know last time we talked about the bar date and I said we

9   would mark it up and we did.

10         But I started looking deeper into this and

11  realized that there's a fundamental problem here and it is

12  as follows.

13         You've go the Genever U.S. case that was filed

14  before this case --

15         THE COURT:  Yes.

16         MR. DESPINS:  -- and what's at state there is who

17  owns the Sherry Netherland.  And there was a bar date set in

18  that case, but notice was not given -- first of all, there

19  was no publication notice and there was no notice given to

20  potential creditors of Mr. Kwok.  It was given to a few

21  people and Mr. Friedman and his colleagues, of course, were

22  around the hoop because they were already involved.

23         And God bless them from their point of view.  They

24  did file a claim of PAX against Genever there but my

25  position vis-a-vis that entity is I'm an equity holder

1    because I'm -- I own the shares.

2         Well, I own the shares not personally, but this

3    estate owns the share.  And that doesn't work because the

4    bar date has passed in that case.  My Goldman's clients were

5    never on notice of this because he didn't exist then because

6    there was no case here.

7         So there is a need -- a pretty important need to

8    coordinate these two cases, not only because of that issue,

9    because there are many ways of fixing that issue. One would

10   be expand the bar date in that case, reopen it to allow Mr.

11   Goldman's clients to file claims. I'm not saying that's a

12   preferred course, but that's one.

13        Another one would be for us to file a piercing the

14   veil or alter ego claim in that case, et cetera, et cetera.

15        But the point is there's a need for coordination

16   because right now that case is going on its merry way.  The

17   sale is not an issue.  That's not a problem.

18        It's going on its merry way where at the end of

19   the day assuming the best thing, which is the Sherry

20   Netherland is owned by Mr. Kwok, that money would be shared

21   with those creditors around the hoop there only and that's

22   PAX and the Sherry Netherland, the hotel itself and very few

23   other people.  Well, that's -- a fiduciary to the creditors

24   in this case to me that can't work.

25        So -- and there's a second thing that's

1    fundamental.  We should not have two courts, two separate

2    courts, deciding the issue of the Sherry Netherland -- the

3    ownership of the Sherry Netherland and the issue of who owns

4    the yacht.  And you might say well, the yacht is different

5    than the hotel, yes.

6            But at the end of the day, one is the daughter,

7    one is the son. It's all the same issues.  Yes, there'll be

8    different timing issues, but at the end of the day the

9    arguments will all be the same.

10           To have two separate courts decide that issue

11   would be a huge waste of judicial resources and professional

12   fees.  So you might say well, that's a lot to process and to

13   digest and I've been struggling with this.  And I've talked

14   to the committee and to PAX about this and they're

15   proceeding it too.

16           But I think what needs to happen is there should be -

17   - because I would appear in front of Judge Garrity and tell him

18   the same things.  But I think you and him need to either -- I

19   don't know how you feel about that, have a conversation about

20   this or have a joint status conference, which is very unusual,

21   but it's been done.

22           But that issue needs to be tackled in one way or

23   another in the next month or so because it is unfair to the

24   people who have claims against Mr. Kwok to have missed out on

25   the bar date in that case because they have no greater or worse

1    right than PAX had.  PAX claim against Genever is a piercing

2    the veil, an alter ego claim.

3         And, again, I'm not criticizing them.  They're doing

4    their job.  They're not a fiduciary for anyone and for some

5    reason the debtor -- well, the debtor was controlled by Mr.

6    Kwok so obviously not interested in publicizing -- having

7    publication notice et cetera, et cetera, and that's why I told

8    you the bar date, even though we marked it up an all that.

9         I think until that issue is resolved we should park

10   it because what I don't want to do is do two publication notice

11   and we need to resolve this issue one way or another and my job

12   is to propose a path forward which I'm not ready to do without

13   talking again to the committee and to PAX and to debtor's

14   counsel in the Genever case.

15        And I want to be clear, this does not affect the

16   sale. I'm not trying to say oh, we're not going to sell the --

17   that's not the case.

18        But there's a nee for coordination and I wanted to

19   put that in front of Your Honor. I don't expect you to have a

20   response on the spot because there's a lot of moving pieces to

21   this but I think that -- and I know you have a full docket, so

22   I'm not trying to put another case on your plate.  I understand

23   that.

24        Judge Garrity is also very busy so that's why I think

25   there needs to be either a call between the two of you or a

1    joint status conference but I think that makes sense to happen

2    once we have a path forward to recommend.

3         THE COURT:  Well, so what I think you're saying is

4    you think that both of the cases should be in front of the same

5    judge.  So isn't there a way to do that by filing a motion?

6         MR. DESPINS:  Yeah, there is.  But I --

7         THE COURT:  Because I don't know that a judge should

8    have a conversation with another judge about -- I mean, I --

9         THE COURT:  Well, especially do you want to -- one of

10   the reasons I would be not inclined to do that is I don't want

11   to open up any allegations that there was something improper or

12   --

13        MR. DESPINS:  Yeah.

14        THE COURT:  I mean, what -- you know, but if you

15   think that's appropriate, then you can file -- anyone can file

16   a motion.

17        MR. DESPINS:  Well, but to be clear, that motion

18   would have to be filed in front of Judge Garrity, because he's

19   the first to file.

20        THE COURT:  I understand.  And so this case may go

21   there is what you're saying.

22        MR. DESPINS:  What I'm saying is that, first of all,

23   I would never file that motion without talking to you first

24   because you might say what did you just do?  And so I'm

25   socializing the issue with you.  You should think about it and

1    we will come back to the court probably at our next status

2    conference on this.

3            But I want to make sure that is something that you're

4    thinking about because it needs to be resolved in one way or

5    another.  So that's really the issue regarding the bar date in

6    Genever.

7            The next thing I wanted to mention very briefly the

8    Lady May inspection.  Mr. Kindseth last time described the fact

9    that they were very -- well, I won't say very minor, but fairly

10   discreet issues that need to be resolved.

11           It turns out that that's not the case.  As Your Honor

12   will remember even though I'm not a party to the stipulation,

13   they allowed me visiting rights or inspection right and it

14   turns out that there are more issues.

15           But the parties are talking and we're hopeful that

16   that will be resolved.  But I wanted to make sure that you knew

17   that that dialogue was ongoing.  We had a call I think last

18   week about this with the Zeisler firm and with PAX's counsel.

19           Your Honor, you will recall that we hired Paul

20   Derektor as an expert to assist us with that, $2,500.  And it's

21   a request for Your Honor, and I know the rules and the U.S.

22   Trustee will probably scream about this, but would it be okay

23   if we just expensed it.

24           What I mean by that is not file a motion to retain

25   him as an expert?  We can do that but it's going to cost more

154

1    than the $2,500 and my point is -- expensive meaning right now

2    there are no assets.  So I mean we're paying for it.

3    Eventually we hope that there'll be money to be paid but we

4    would put that as a line item expense rather than filing a

5    motion to retain Mr. Derektor in the case as an expert.  But I

6    don't feel strongly. It's just from a cost savings point of

7    view I think it would make sense.

8              THE COURT:  Well, I think you should talk to the

9    parties about that too.  I mean, if people don't have an

10   objection, then it's likely to be fine.

11             MR. DESPINS:  Okay.  We'll table that. You're

12   absolutely right, Your Honor.

13             Lady May we talked about.  Just housekeeping, the

14   debtors are still -- their monthly operating reports from May

15   and June still haven't been filed.  The debtor still is under

16   obligation to file that so I want to remind everyone of that

17   and that's all I have from a housekeeping point of view, Your

18   Honor.

19             THE COURT:  Okay.

20             MR. DESPINS:  Thank you.

21             THE COURT:  Let me just take one look for a second

22   and see if there's anything else that I think I had any

23   questions about.

24        (Pause.)

25             So with regard to the bar date motion and the

155

1    proposed order then, we're just going to continue those to a

2    future status conference?  Is that what you're thinking?

3              MR. DESPINS:  That's correct, Your Honor.

4              THE COURT:  Okay.  So to a date to be determined

5    essentially.

6              MR. DESPINS:  Yes, Your Honor.

7         (Pause.)

8              THE COURT:  Mr. Kindseth?

9              MR. KINDSETH:  Yes, Your Honor.  In the interest of

10   just basically updating Your Honor and the other parties with

11   respect to the Lady May, Your Honor, for HK International, no

12   one is more interested in expediting the satisfaction of the

13   requirements set forth in the stipulation with respect to the

14   Lady May more than my client.  We've been working very

15   diligently to satisfy those obligations.

16             Your Honor made reference to the certification.  My

17   client is unable to file the certification until the other

18   elements are satisfied, one of which is this court's

19   establishment of the repair reserve. The repair reserve

20   requires my client to provide proposals with respect to the

21   repairs that need to be done for the Lady May to be returned in

22   good working order.

23             There's been some delay with respect to finding and

24   getting proposals from entities just because they're very busy

25   right now.

1          As we've received proposals we've circulated them

2     with the trustee, creditors committee counsel and PAX counsel.

3          With respect to the actual repairs that need to be

4     performed, unbeknownst to me at the time before Your Honor last

5     there was an additional repair that needs to be performed.

6          Apparently when the fuel pump failed, which I did

7     disclose to the court, it caused the gears, some gears to

8     basically get stripped.  And so there are tiny shards of metal

9     that you can see from the gears -- and, again, this was

10    produced to everybody -- that were circulated in the oil system

11    within the engine.

12         So the oil needs to be cleaned out.  The shards need

13    to be reduced.  We's just talking about little pieces but

14    obviously it needs to be repaired and we received a quote for

15    that.

16         And so we're in communications with the trustee and

17    counsel for the creditors committee and counsel for PAX to try

18    to come up with an agreed up number for the repair reserve

19    which would then enable us, once this court orders the repair

20    reserve, to file the certification.  Thank you, Your Honor.

21         THE COURT:  Thank you.

22         Does anyone else wish to be heard?

23         MR. HENZY:  Not on the Lady Mae, Your Honor, but am I

24    to file a replay before Thursday at 1 o'clock on the --

25         THE COURT:  Yes. Yes.

1          MR. HENZY:  And I didn't write it down --

2          THE COURT:  I didn't give you a time frame, but I can

3   give you till Thursday morning at 9 o'clock, if you'd like.

4   But I can't give you any longer than that. I've got to be able

5   to read it before the hearing or there's no point in the

6   hearing.

7          MR. HENZY:  I'll get it -- thank you, Your Honor.  I

8   expect I'll get it filed before then but thank you.

9          THE COURT:  Okay.  Anyone else wish to be heard?

10         (No audible response.)

11         THE COURT:  Okay. I think that takes care of all the

12   matters today then in this case and we will reconvene on

13   Thursday, via Zoom at 1:00 p.m.  And the debtor has until 9:00

14   a.m. on Thursday morning to file the response to the corporate

15   governance motion, okay?

16         That takes care of all the matters on the calendar so

17   court is adjourned.

18         (Proceedings adjourned at 4:05 p.m.)

19

20

21

22

23

24

1

2          I, CHRISTINE FIORE, court-approved transcriber and

3    certified electronic reporter and transcriber, certify that the

4    foregoing is a correct transcript from the official electronic

5    sound recording of the proceedings in the above-entitled

6    matter.

7

8    *Christine Fiore*

9    _____          August 9, 2022

10     Christine Fiore, CERT

11        Transcriber

12

13

14

15

16

17

18

19

20

21

22

23

24