**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,<br><br>            Debtor. | Chapter 11<br><br>Case No: 22-50073 (JAM) |

**HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC'S MOTION FOR ORDER ESTABLISHING REPAIR RESERVE FOR THE LADY MAY**

HK International Funds Investments (USA) Limited, LLC ("HK USA"), by and through its undersigned counsel, hereby moves (the "Motion") pursuant to Paragraph 11 of this Court's Stipulated Order Compelling HK International Funds Investments (USA) Limited, LLC to Transport and Deliver That Certain Yacht, the "Lady May" [Doc. No. 299] (the "Stipulated Order"), to issue an order establishing the "Repair Reserve" in an amount sufficient to pay the estimated costs of the service and maintenance necessary to restore the Lady May to good working order (the "Repair Reserve"). In support thereof, HK USA respectfully represents as follows.

**I.    Introduction**

1.    Following extensive inspections including those performed by the experts retained by Pacific Alliance Asia Opportunity Fund, L.P. ("PAX") and the trustee, Luc A. Despins (the "Trustee"), as well as the professionals employed by HK USA, the following constitute the repairs required to be performed on the Lady May:

    (i)    servicing valves in the hull;

    (ii)    painting a portion of the hull;

    (iii)    replacing the bilge boards; and

    (iv)    repairing the starboard main engine.

2. HK USA obtained estimates from multiple service providers to perform these repairs. HK USA provided a copy of all proposals to counsel for PAX, the Official Committee of Unsecured Creditors (the "Committee") and the Trustee.

3. HK USA here seeks an order from this Court establishing the Repair Reserve in the amount of $759,836.41 in accordance with the Stipulated Order. This amount (i) incorporates the highest of the estimates provided, (ii) includes the amount estimated for the engine repair ***even though all of that loss (less the deductible) is fully covered by insurance***, and (ii) adds the deductible due on account of such insurance. The estate's interest in the Lady May, if the estate holds any interest, is fully protected in a manner perfectly consistent with the Stipulated Order.

4. PAX, the Committee and the Trustee have rejected HK USA's proposal and now want to re-trade their agreement – as ordered by this Court in the Stipulated Order – by demanding that HK USA cause the engine repairs to be performed ***before*** the Repair Reserve is established and then have a "sea trial" conducted. This demand is directly contrary to the agreement reached by the parties which required the establishment of the Repair Reserve ***before*** the performance of the repairs.

5. In the hopes of avoiding another contested matter before this Court, HK USA, through its counsel, has repeatedly asked counsel for PAX, the Committee and the Trustee to provide a Repair Reserve amount – justified by reasonable estimates to address unknown but conceivably possible issues – that they would be satisfied with, and they have refused. Their ulterior motive is obvious: hold up the release of the $37 million posted to secure the return of the Lady May.

6. There is no legitimate basis to block the release of $37 million and such restriction is grossly disproportionate to the theoretical risk posed. PAX, the Committee and the Trustee are

acting in bad faith and in direct contradiction to the terms of the Stipulated Order entered by this Court.

7. HK USA asks this Court to enforce its Stipulated Order and establish the Repair Reserve based upon the estimates provided to repair the Lady May. HK USA also proposes below terms to govern the Repair Reserve which further protect the various interests involved.

### II.  Jurisdiction, Venue, and Basis for Relief Sought

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the the Order of referral entered by the United States District Court for the District of Connecticut on September 21, 1984.

9. Venue is proper in this Court for this case and this motion pursuant to 28 U.S.C. §§ 1408 and 1409, respectively. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

10. The basis for the relief sought in this Motion are the procedures set forth in this Court's Stipulated Order detailed herein.

### III.  Background

11. As this Court is well-aware, the Lady May had been a focal point the litigation between the Debtor and PAX pending in New York state court which resulted in an extensive contempt proceeding and ultimately precipitated the commencement of this bankruptcy case.

12. To resolve the stay relief motion filed by PAX, HK USA offered to stipulate for this Court to order it to bring the Lady May to Connecticut. This led to extensive negotiations between HK USA, PAX, the Committee and certain other creditors on the terms of that stipulated order.

13. HK USA offered to post $37 million to secure its performance to be released upon the Lady May's return. PAX and the other parties expressed their concern that the Lady May would

require repairs, service or maintenance – some had been known but others would not be known until the Lady May returned. Considering the interest accruing on the borrowed funds (3% per month) and other risks involved, HK USA did not want to hold up the release of $37 million pending the completion of such work. The deal struck to resolve these precise issues was that HK USA would fund a separate "Repair Reserve" as ordered by this Court to secure payment for the repairs.  Once the Repair Reserve was established the $37 million could be released (assuming other conditions has been satisfied) – even ***before*** the repairs had been performed. The parties incorporated their agreement into the Stipulated Order.

14. On April 29, 2022, this Court issued the Stipulated Order.

15. As agreed by the parties and as ordered by this Court in the Stipulated Order, to secure its obligation to deliver the Lady May to the navigable waters of Connecticut, HK USA deposited $37 million (the "Escrow Funds") with U.S. Bank National Association (the "Escrow Agent"). (Stipulated Order, at 2). The Stipulated Order provided that certain conditions must be satisfied before the Escrow Agent can release the Escrow Funds to HK USA. (*See Id.*, at 5).

16. One such condition is the establishment of a Repair Reserve – as the parties had agreed – in accordance with Paragraph 11 of the Stipulated Order. (*Id.*, at 4). Paragraph 11 provides:

> HK USA shall cause, at its sole expense, the service and maintenance identified in the Declaration and otherwise, if necessary, to restore the Lady May to good working order to be performed either prior to the satisfaction of the Delivery Obligation or thereafter upon order entered by this Court after notice and a hearing specifically delineating the time, place and manner by which such service and maintenance shall be performed, including, but not limited to a separate cash reserve (sourced, if available, from the proceeds of the Escrow Funds) in an amount sufficient to pay the estimated costs of the uncompleted service and maintenance tasks identified in the [Declaration of Russell Stockil [Doc. No. 203-3] (the "Declaration")] and otherwise to restore, if necessary, the Lady

>May to good working order (the "Repair Reserve") and such funds in the Repair Reserve shall not be released until the service and maintenance tasks have been completed. HK USA shall permit representatives of PAX and/or the Committee to inspect the Lady May upon reasonable request.

17. HK USA fulfilled the most critical aspect of the agreement: it caused the Lady May to arrive in Bridgeport, Connecticut on July 8, 2022 before the July 15, 2022 deadline.

18. On July 13, 2022, a thorough inspection (the "July Inspection") of the vessel took place, attended by the Trustee and counsel for PAX, the Committee, and HK USA, as well as the experts retained by PAX and the Trustee. The Lady May's crew, including the Captain and Chief Engineer, provided the attendees of the July Inspection with unrestricted access to the Lady May (including its books and records) and answered any and all questions that they had.

19. Now, as provided for in the Stipulated Order, HK USA seeks an order from this Court establishing the Repair Reserve to accomplish the requirements set forth in the Stipulated Order to enable the release of the Escrow Funds. The Escrow Funds securing HK USA's performance under the Stipulated Order represent the proceeds from a $37 million loan (the "Himalaya Loan") that HK USA obtained from Himalaya International Financial Group Ltd ("Himalaya") in April 2022. The loan agreement between HK USA and Himalaya (the "HK USA/Himalaya Agreement") provides, *inter alia*, that the Himalaya Loan shall accrue interest at the rate of 3% per month (equaling $1,110,000 per month). HK USA seeks to reduce and ultimately eliminate the continued accrual of such interest through the repayment of the Himalaya Loan.

**IV.   Necessary Service and Repair Tasks**

20. As detailed below, there are four tasks that need to be performed to return the Lady May to good working order.

    **a.   The Valve Service**

21.     As previously disclosed to this Court, the valves in the hull of the Lady May must be serviced (the "Valve Service"). (Declaration, at 3-4). HK USA had previously obtained an estimate to perform this service in France prior to the Lady May's crossing of the Atlantic, but time did not permit the service to be completed in France. (*See* 7/21/22 Transcript, at 58:21-59:1). In total, there are 26 valves in the hull of the vessel, including seawater valves, freshwater valves, waste valves, and other discharge vales. HK USA anticipates that the Valve Service will include, *inter alia*, addressing rusted bolts on the valves (some of which may need to be cut), cleaning certain valves, replacing other valves, and other remedial efforts.

22.     HK USA has obtained proposals from three third-party service providers who are equipped to perform the Valve Service, as summarized in the following table and reflected in the exhibits attached hereto.[1]

| Exhibits | Provider | Estimated Cost[2] |
|---|---|---|
| **Exhibits A, B, C**[3] | Bridgeport Boatworks | $207,612.92 |
| **Exhibits D, E, F** | Safe Harbor Newport Shipyard | $140,819.84 |
| **Exhibits G, H** | Thunderbolt Marine | $149,972.30[4] |

---

[1] To perform the Valve Service, certain ancillary services must also be performed, including hauling the vessel out of the water, servicing the vessel while it is on land, and launching the vessel back into the water. These costs for these ancillary services are included in figures presented below and are documented in the exhibits attached hereto.

[2] Some estimates from the third-party service providers did not include items like sales tax, ship repairer liability fees, and environmental surcharges. Where appropriate, the sums reported in this Motion have been supplemented to include these additional expenses.

[3] Note that Exhibit C contains an out-of-date estimate from Bridgeport Boatworks for haul out and launching services. The revised estimate for such services is attached as Exhibit B.

[4] The proposal from Thunderbolt Marine, attached as Exhibit G, assumes 10 hours of labor for each of the vessel's 26 valves. However, in an abundance of caution, HK USA proposes to reserve sufficient funds to pay for 40 hours of labor for each valve. Accordingly, HK USA's proposed reserve for such expense exceeds the sum reflected for valve service labor in Exhibit G.

As the Valve Service must be performed while the Lady May is in drydock, the foregoing cost estimates reflect HK USA's projection for various shipyard services (such as vessel storage, shore power, and cooling tower rental) that will be necessary. HK USA's projections are based upon the rate sheets and other cost estimates provided by Bridgeport Boatworks, Safe Harbor Newport Shipyard, and Thunderbolt Marine that are attached hereto. (*See* **Exhibits C**, **F**, **H**). Again, in an abundance of caution, HK USA's projections assume that the vessel will be out of the water for 40 days to perform the Valve Service.

### b. The Bow Painting

23. During the Lady May's recent crossing of the Atlantic to return to the navigable waters of Connecticut, paint on the starboard side of the vessel's bow came off. (*See* 7/21/22 Transcript, at 59:6-9). Bridgeport Boatworks provided an estimate of $9,215.50 to perform the repainting this portion of the bow.[5] (*See* **Exhibit I**).

### c. The Bilge Board Replacement

24. The bilge is the lowest space of a vessel. This space is sometimes used for storage. To improve storage arrangements in the Lady May's central bilge area, certain bilge boards should be replaced (the "Bilge Board Replacement"). This is a relatively minor and non-critical task. However, as the Lady May is undergoing other service and repairs, HK USA respectfully submits that it is prudent to use this opportunity to replace the bilge boards. Bridgeport Boatworks has provided an estimate of $2,425.59 to perform the Bilge Board Replacement. (*See* **Exhibit J**).

### d. The Starboard Engine Repair

---

[5] This figure does not include man lift rentals and assumes that the vessel is out of the water. As reflected in Exhibit B, Bridgeport Boatworks has provided an estimate of $13,950.48 to haul out and launch the Lady May.

25.     The Lady May is powered by two Caterpillar-made engines. On July 5, 2022, at the end of Lady May's recent crossing, a fuel transfer pump failed. In the course of removing the fuel transfer pump, a repair technician discovered damaged teeth on the old fuel transfer pump after removal. The shaft on the pump was also seized. The seized pump had also damaged the drive gear in the lubrication system enclosure. As a result, gear material (metal) has been introduced into the engine oil system.

26.     To return the Lady May to good working order, the starboard engine must be repaired (the "Starboard Engine Repair"). There are two services required to accomplish the Starboard Engine Repair. The first element is repair work performed by specialized Caterpillar engine repair technicians. The second element is the ancillary support services, to be provided by a shipyard, necessary to enable the specialized Caterpillar technicians to complete their work.

27.     As to the first element of the Starboard Engine Repair, HK USA obtained proposals from Zeppelin Power Systems ("Zeppelin") and Ring Power ("Ring"), both of which specialize in Caterpillar engine repairs. Zeppelin's estimates total approximately $70,725.33.[6] (*See* **Exhibits K**, **L**, **M**). Additionally, because Zeppelin's repair technicians would need to travel to the Lady May, HK USA estimates that an additional $10,000 would be needed to pay for the technicians' travel, accommodation, and related costs, bringing the total estimated expense for Zeppelin's parts and services to $80,725.33. Meanwhile, Ring's estimates total $99,777.10, including taxes. (*See* **Exhibit N**). Ring is based in Florida and, as with Zeppelin, Ring's technicians would need to travel to and from the vessel. The $99,777.10 estimate from Ring includes estimated travel and accommodation costs for Ring's technicians.

---

[6] Zeppelin is based in Europe. Therefore, Zeppelin's proposals are denominated in euros. The $70,725,33 figure is the US dollar equivalent based on present exchange rates.

28.     HK USA also obtained an estimate from Bridgeport Boatworks for the ancillary support services – the second element of the services required to accomplish the Starboard Engine Repair – necessary to enable Zeppelin or Ring technicians to repair the starboard engine. In total, Bridgeport Boatworks estimates that these ancillary services will cost $272,729.40.[7] (*See* **Exhibit O**).

29.     Therefore, based on the proposals obtained from Zeppelin, Ring, and Bridgeport Boatworks,[8] HK USA presently estimates that the total cost for the Starboard Engine Repair will be between $406,080.15[9] and $425,131.92[10] if conducted at Bridgeport Boatworks.

30.     However, the Lady May is insured under a "hull and machinery" insurance policy. Representatives of Yachtzoo SARL, the yacht management company for the Lady May, have provided notice of the damage to the Lady May's starboard engine to the insurance carrier and have confirmed that there is a €100,000.00 deductible (the "Insurance Deductible") (approximately $101,500.00 at the present exchange rate) for claims made under the subject insurance policy. Norwegian Hull Club, the primary underwriter of the "hull and machinery" insurance policy, sent

---

[7] This figure excludes the costs necessary to haul the Lady May out of the water, provide various services and hookups like vessel storage and power while on land, and launch the vessel back into the water. Based on proposals from Bridgeport Boatworks attached hereto as Exhibits C and D, and assuming the Engine Service Repair takes 40 days to complete, HK USA estimates that these additional costs will total $52,625.42.

[8] HK USA also obtained a proposal from Connecticut Diesel & Marine but it was subsequently determined that such contractor could not perform the services requested.

[9] This figure is the sum of: (i) Zeppelin's estimate and projected travel costs for Zeppelin's technicians ($80,725.33), (ii) Bridgeport Boatworks' engine service support estimate ($272,729.40), and (iii) the cost to haul out, service, and launch the Lady May assuming the Starboard Engine Repair and associated tasks takes 40 days to complete ($52,625.42).

[10] This figure is the sum of: (i) Ring's estimate and projected travel costs for Ring's technicians ($99,777.10), (ii) Bridgeport Boatworks' engine service support estimate ($272,729.40), and (iii) the cost to haul out, service, and launch the Lady May assuming the Starboard Engine Repair and associated tasks takes 40 days to complete ($52,625.42).

a surveyor to the vessel to inspect the starboard engine. The surveyor completed his inspection on July 25, 2022, and confirmed the damage to the starboard engine.

**V.      Calculation and Operation of the Repair Reserve**

31.     Based on the estimates obtained by HK USA to date and making reasonable projections concerning the amount of time required to complete the tasks, HK USA estimates that the aggregate cost of the repairs necessary to return the Lady May to good working order plus the insurance deductible equals $759,836.41 (the "Repair Reserve Amount"). This sum breaks down as follows:

| Task | Estimated Total Cost |
|---|---|
| Valve Service | $207,612.92 |
| Bow Painting | $23,165.98 |
| Bilge Board Replacement | $2,425.59 |
| Starboard Engine Service | $425,131.92 |
| Insurance Deductible | $101,500.00 |
| **TOTAL:** | **$759,836.41** |

In calculating the Repair Reserve Amount, HK USA utilized the highest estimates received from the third-party service providers summarized in Section IV, *supra*. Likewise, though some savings may be realized by scheduling the service and repair activities in an overlapping manner,[11] HK USA's estimated total repair cost reflects the estimated costs to perform the service and repair tasks separately.[12]

---

[11] For example, taking the Lady May out of the water to perform both the Valve Service and Bow Painting at Bridgeport Boatworks would allow HK USA to only pay for the haul out and launching costs (estimated to total $13,950.48) one time.

[12] For example, the Bow Painting estimated cost reflects both the cost to paint the bow *as well as* the cost to haul out and launch the vessel. Similarly, the Valve Service estimated cost reflects both the cost to perform the valve service *as well as* the cost to haul out and launch the vessel.

32. Demonstrating its good faith and commitment to perform pursuant to the Stipulated Order, HK USA proposes to fund the Repair Reserve for the Starboard Engine Repair as well in the amount of $425,131.92 even though this loss is covered under its insurance policy as explained above. If the insurer pays these expenses, the funds will be returned to HK USA following the procedures proposed below.

33. Therefore, HK USA respectfully submits that the Repair Reserve amount should total $759,836.41.

34. In order for the Repair Reserve to function in a manner consist with the terms and purposes of the Stipulated Order, specifically, paragraph 11, HK USA further proposes the following provisions to be incorporated into this Court's order to control the operation of the Repair Reserve:

(i) The Trustee, as escrow agent, shall hold the Repair Reserve Amount in his firm's fiduciary account solely for the purpose of securing the completion of the service, maintenance and repairs required to be performed in accordance with the Stipulated Order, specifically, paragraph 11 ("Required Repairs") and this Order;

(ii) HK USA shall immediately and fully fund the Repair Reserve Amount by delivering such amount to the Trustee in good funds;

(iii) Once funded in accordance with this Order, the Trustee shall pay from the Repair Reserve Amount the reasonable and necessary expenses (including any required deposits) incurred to perform the Required Repairs or to pay the Insurance Deductible (as defined in the Motion) upon either:

    **a.** The written consent of the Trustee, PAX, the Committee, HK USA, Rui Ma, and Zheng Wu; or

        **b.**      The order of this Court following a motion seeking such relief and after due notice and a hearing.

(iv)    In the event and to the extent the Repair Reserve Amount is insufficient to fund fully and pay for the Required Repairs ("Repair Reserve Shortfall"), HK USA shall immediately deliver to the Trustee the Repair Reserve Shortfall; any dispute with respect to the Repair Reserve Shortfall shall be heard by this Court upon motion of any party and after due notice and a hearing and, once determined by this Court, HK USA shall immediately deliver the Repair Reserve Shortfall as determined by this Court, if any, to the Trustee to be held by Trustee in accordance with this Order.

(v)    Upon the completion of the Required Repairs, HK USA may file a motion with this Court seeking the release of any unused portion of the Repair Reserve Amount and upon establishing that the Require Repairs have been fully performed, this Court shall order the Trustee to release the balance of the Repair Reserve Amount to the HK USA.

35.    HK USA respectfully submits that the foregoing are reasonable and necessary terms and conditions to govern the Repair Reserve in a manner consistent with the provisions and objectives of the Stipulated Order.

**WHEREFORE**, for the reasons set forth herein, HK USA respectfully requests that this Court issue an order substantially in the form of the proposed order submitted herewith establishing, *inter alia*, the Repair Reserve in the amount of $759,836.41, and entering such other and further relief as this Court deems just and proper.

Dated this 11th day of August, 2022.

        HK INTERNATIONAL FUNDS
        INVESTMENTS (USA) LIMITED, LLC


        By: */s/ Stephen M. Kindseth*
        Stephen M. Kindseth (ct14640)
        Zeisler & Zeisler, P.C.
        10 Middle Street, 15th Floor
        Bridgeport, CT  06604
        (203) 368-4234
        (203) 549-0872 (fax)
        Email: skindseth@zeislaw.com
        Its Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth