**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |
| | : | |

---

**DEBTOR'S MOTION FOR STAY PENDING APPEAL OF ORDER, PURSUANT TO**
**BANKRUPTCY CODE SECTIONS 363, 521, 541, 1108, AND 105,**
**(A) CONFIRMING THAT CHAPTER 11 TRUSTEE HOLDS**
**ALL OF DEBTOR'S ECONOMIC AND CORPORATE GOVERNANCE RIGHTS IN**
**DEBTOR-CONTROLLED ENTITIES, (B) AUTHORIZING CHAPTER 11 TRUSTEE**
**TO ACT IN ANY FOREIGN COUNTRY ON BEHALF OF ESTATE, AND (C)**
**GRANTING RELATED RELIEF**

The debtor, Ho Wan Kwok (the "Debtor"), hereby moves pursuant to Federal Rule of
Bankruptcy Procedure 8007(a) for a stay pending appeal of this Court's Order, Pursuant To
Bankruptcy Code Sections 363, 521 541, 1108, And 105, (A) Confirming That Chapter 11 Trustee
Holds All Of Debtor's Economic Rights In Debtor-Controlled Entities, (B) Authorizing Chapter
11 Trustee To Act In Any Foreign Country On Behalf Of The Estate, And (C) Granting Related
Relief (Doc. No. 717, the "Order"), entered by the Court on August 10, 2022. The Debtor filed a
notice of appeal of the Order on August 10, 2022.[1] While the Debtor appeals from a number of the

---

[1]  The Order is a final order for purposes of appeal because it "definitively disposes of [a] discrete
dispute[] within the overarching bankruptcy case." *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140
S.Ct. 582, 586(2020) ("In civil litigation generally, a court's decision ordinarily becomes 'final,' for
purposes of appeal, only upon completion of the entire case, *i.e.*, when the decision 'terminate[s the]
action' or 'ends the litigation on the merits and leaves nothing for the court to do but execute judgment.'
The regime in bankruptcy cases is different. A bankruptcy case embraces 'an aggregation of individual
controversies.'" (internal citations omitted)); *see also Bullard v. Blue Hills*, 575 U.S. 496, 501 (2015)
(Bankruptcy Court orders are considered final and immediately appealable if they "dispose of discrete
disputes within the larger case."); *Quigley Company, Inc. v. Law Offices of Peter G. Angelos (In re
Quigley Company, Inc.)*, 676 F.3d 45, 51 (2nd Cir. 2012) ("This difference is due to the 'fact that a
bankruptcy proceeding is umbrella litigation often covering numerous actions that are related only by the
debtor's status as a litigant and that often involve decisions unreviewable if appellate jurisdiction exists

provisions of the Order, the Debtor seeks a stay pending appeal only with respect to paragraph 3(b) thereof. By paragraph 3(b), the Court directs the Debtor to deliver a letter drafted by the Trustee (as defined below) to the law firm of Harcus Parker Limited, the Debtor's former counsel in the UBS Action (as defined below), which provides, among other things, that the Debtor authorizes Harcus Parker to communicate with and turn documents over to the Trustee "regardless of any attorney-client privilege, work product, or other privilege, which I hereby fully waive for such purposes."

For the reasons set forth below Harus, the Debtor has a substantial possibility of success on his appeal. The relief granted in paragraph 3(b) of the Order is extraordinary—without any review of the relevant documents or communications (assuming this Court is the appropriate court to conduct such a review, which it is not), Court is compelling the disclosure of documents and communications that are privileged **under the law of the United Kingdom in connection with an action pending in the United Kingdom**. Paragraph 3(b) of the Order was not the subject of any motion filed by the Trustee, and the Trustee has cited no authority in support of the extraordinary relief granted therein. The Court did not issue a decision in connection with the Order, so that there is no written explanation for the relief granted in paragraph 3(b) of the Order.

At the August 4 hearing on the Order, the Court appeared to give two bases for granting the relief in paragraph 3(b) of the Order. First, the Court stated that the Trustee had stepped into

---

only at the conclusion of the bankruptcy proceeding.'" (citation omitted)). By the Trustee's (as defined below) choice, because the Order granted broad substantive relief to the Trustee under Bankruptcy Code sections 363, 521, 541, 1108 and 105, while the Order implicates privilege issues, it is not a discovery order which may not have been a final order. *See Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009); *Chase Manhattan Bank, N.A. v. Turner & Newell*, PLC, 964 F.2d 159 (2nd Cir. 1992). Even assuming that the District Court determines that the Order is not a final order, the Debtor will request that the District Court treat the appeal as a petition for writ of mandamus. *Chase Manhattan Bank, N.A.*, 964 F.2d at 163 ("We have in the past treated appeals dismissed for lack of jurisdiction as petitions for writ of mandamus.") .

the shoes of the Debtor, *see* Transcript of August 4, 2022 Hearing at p. 21, lines 2-4, annexed hereto as Exhibit A ("Mr. Despins stepped into the shoes of the debtor when he became the Chapter 11 trustee. There's well settled case law on that, Mr. Henzy."), at least implying that the Court was determining that the Trustee owns the right to waive the Debtor's privilege. The Court made this statement with no reference to the applicable law of the UK. But, more to the point, the Order inconsistently assumes that the Debtor still owns privilege, if he does not because the Trustee has stepped into his shoes, the relief granted in paragraph 3(b) of the Order is unnecessary. Second, the Court appeared to hold that a court can compel a debtor out of possession to waive a privilege with regard to an asset of the estate. *See* Transcript of August 4, 2022 Hearing at p. 17, lines 17-20 ("Where does it say that a court cannot compel a debtor out of possession to waive a privilege with regard to an asset that the debtor has stated under penalty of perjury is an asset of his estate?").

The Court does not have this authority. The general rule is that "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent." *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2nd Cir. 2001). There has been no claim that the Debtor has waived any privilege that he still owns in connection with the UBS Action, whether under U.S. or UK law. Nor has the Trustee provided any authority that an applicable exception exists. In addition, the Trustee has provided no authority whatsoever for the type of blanket waiver ordered here, and such a blanket waiver, without review of whether specific documents are privileged, is inconsistent with controlling law. *Chase Manhattan Bank, N.A. v. Turner & Newell*, PLC, 964 F.2d at 166 ("We believe that requiring a litigant to turn over documents subject to a claim of attorney-client privilege to opposing counsel, without a judicial ruling on the merits of the claim, will undermine the attorney-client privilege."). Finally, if there is to be a review of whether the Debtor continues to own any privilege in connection with the UBS

Action, whether the Trustee has succeeded to any such privilege, and whether any such privilege has been waived or the Debtor may be compelled to make a waiver of any such privilege, such review must be done under UK law and should be done by the UK court in the UBS Action.

In addition to a substantial possibility of success on the appeal, the issuance of a stay is warranted by the other factors the Second Circuit requires a court to weigh in considering a stay motion. As shown below, (a) absent a stay the Debtor will be irreparably harmed if compelled to waive any attorney client privilege that he owns in connection with the UBS Action, or at least the balance of hardships will tip in his favor, (b) the Trustee will not suffer substantial injury if a stay is issued, and (c) the public interest supports a stay.

## BACKGROUND

1.      On February 15, 2022, the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case.

2.      On June 15, 2022, this Court issued a Memorandum of Decision, *inter alia*, granting PAX's Motion to Dismiss or, in the alternative, Partial Joinder to the UST's Motion for the Appointment of a Chapter 11 Trustee (Doc. No. 183), to the extent that it sought the appointment of a Chapter 11 trustee (Doc. No. 465.)

3.      On July 7, 2022, the UST filed a notice appointing Luc A. Despins (the "Trustee") as Chapter 11 trustee (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515), seeking the Court's approval of the appointment of the Trustee. On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

4.      As the Court has been informed and as the Debtor disclosed in his Statement of Financial Affairs (Doc. No. 77, p. 22), prior to the Petition Date (in September 2020), the Debtor

and two other plaintiffs commenced an action (the "UBS Action") in the United Kingdom against UBS AG asserting damages of some $500 million. The Harcus Parker firm in London continues to represent the two other plaintiffs in that action and it represented the Debtor up until the appointment of the Trustee.

5.      The Debtor understands that as a matter of U.S. Bankruptcy law the Trustee was automatically substituted as plaintiff in the UK action. However, while the Debtor takes no position on this, both the Trustee and the Debtor's counsel have been advised by Harcus Parker that a U.S. trustee in bankruptcy is not automatically recognized in UK Courts under UK law, that the Trustee currently has no authority under UK law in the UK courts in the UBS Action, that the Trustee is not correct to the extent that he takes the position that his appointment as trustee in the Debtor's case has extraterritorial effect under UK law, and that the Trustee needs to take certain steps if he seeks to be made a party to the UBS Action.

6.      On July 23, 2022, the Trustee filed his Motion Of Chapter 11 Trustee For Entry Of Order, Pursuant To Bankruptcy Code Sections 363, 541, 1108, And 105, (A) Confirming That Chapter 11 Trustee Holds All Of Debtor's Economic Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of The Estate, And (C) Granting Related Relief (Doc. No. 598, the "Motion"). In the Motion, the Trustee sought an order from the Court providing, among other things, that:

- The Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all Debtor-Controlled Entities, including, without limitation, Genever (BVI). For the avoidance of doubt, the foregoing rights include the Trustee's authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.
- To the extent the Trustee's exercise of economic and governance rights with

5

respect to the Debtor-Controlled Entities is deemed to be outside the ordinary course of business, such exercise is hereby approved, as there is sound business justification for the exercise of such rights, including because the Trustee holds all of the Debtor's economic and governance rights with respect to such entities for the benefit of the Estate.

- The Trustee is authorized to act, as the Debtor's foreign representative, in any foreign country on behalf of the Estate in any way permitted by applicable foreign law for the purpose of (a) investigating, collecting, and recovering assets of the Debtor located in foreign countries, including relief in foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign corporate registries (or similar entities) holding such documents with respect to the Debtor-Controlled Entities. Without limiting the foregoing, the Trustee is authorized, pursuant to section 1505 of the Bankruptcy Code, to request and obtain the corporate documents related to Genever (BVI) from the appropriate British Virgin Island ("BVI") entity holding such corporate documents.

- The Court requests the assistance of the foreign courts, including the assistance of the BVI courts regarding any request of the Trustee for relief (including on an emergency basis) with respect to the Trustee's exercise of corporate control over Genever (BVI).

- Nothing in the Order shall be deemed to authorize any particular action with respect to Genever Holdings LLC ("Genever (US)") in its chapter 11 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Genever Court"). The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its chapter 11 case.

Motion, Proposed Order (the "Original Proposed Order"), at ¶¶ 2-4, 6-7. At paragraph 17 of the

Motion, the Trustee stated: "To be clear, through this Motion, the Trustee is merely seeking

confirmation from this Court that he now holds the same economic and corporate governance

rights in the Debtor-Controlled Entities as the Debtor had prior to entry of the Appointment Order.

The Trustee is not seeking permission to exercise such governance rights, as doing so is well within

the ordinary course of the Debtor's business." In the Motion, the Trustee did not seek any relief

pursuant to Bankruptcy Code section 521, did not seek any relief with respect to Harcus Parker,

and did not seek to require any affirmative action by the Debtor. Indeed, the Trustee represented

in the Motion that he was "merely seeking confirmation" of his rights.

7.      On July 29, 2022, the Debtor filed his Response to the Motion (Doc. No. 643), raising objections to the relief sought in the Motion and the Original Proposed Order.

8.      Late in the evening on July 31, 2022, the night before the expedited hearing on the Motion, the Trustee filed his Chapter 11 Trustee's Notice Of Filing Revised Proposed Order Pursuant To Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming That Chapter 11 Trustee Holds All Of Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 645, the "Notice").

9.      Attached to the Notice was the Trustee's revised Order Pursuant To Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming That Chapter 11 Trustee Holds All Of Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (the "Revised Proposed Order"). The Revised Proposed Order expressly added as a basis for relief Bankruptcy Code section 521, which, as noted above, was not a basis for relief in either the Motion or the Original Proposed Order. The Revised Proposed Order added the following paragraph 3 to the Original Proposed Order:

> In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to, respectively, (a) cooperate with the Trustee as necessary to enable the Trustee to perform his duties, including, without limitation, the Trustee's investigation into the assets of the debtor, and (b) surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate (including, without limitation, his shares in Genever (BVI) and all related corporate governance documents). In furtherance of the Debtor's duties under sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to:
> …
> (b) request, no later than two business days after entry of this Order, his counsel,

including, without limitation, the law firm of Harcus Parker Limited and any former counsel (collectively, "UK Counsel"), in the litigation styled Kwok Ho Wan, Ace Decade Holdings Limited, and Dawn State Limited v. UBS AG (London Branch), Case No. CL-2020-000345, pending in the High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court (the "UBS Litigation"), to (i) immediately deliver to and share with the Trustee all memoranda, advice, and other communications by UK Counsel to the Debtor regarding the UBS Litigation, any other information (whether in written form or not) regarding the merits of the UBS Litigation, and any settlement offers received or made by the Debtor or UK Counsel in connection with such litigation, and (ii) immediately provide the Trustee will full access to UK Counsel's case file in the UBS Litigation as well as all pleadings and other court documents filed in the UBS Litigation (in the case of both (i) and (ii), regardless of whether such documents, communications, or information are subject to any attorney-client privilege, work product, or other privilege and regardless of when such documents, communications, or information were made or created). In furtherance of the foregoing, the Debtor shall deliver, no later than two business days after entry of this Order, a copy of the letter in the form attached hereto as Exhibit B to the law firm of Harcus Parker Limited (with a copy thereof to be delivered to the Trustee). For the avoidance of doubt, the Trustee shall be deemed, for all purposes, to be the owner of the Debtor's claims asserted in the UBS Litigation.

Annexed as Exhibit B to the Revised Proposed Order was a draft proposed letter from the Debtor to the Harcus Parker firm in the UK. The third and fourth paragraphs of that letter provide as follows:

I hereby expressly authorize you to have full and complete discussions with Mr. Despins regarding the UBS Litigation, the merits thereof, any related settlement discussions, and any other topics related to the prosecution of the UBS Litigation, *regardless of any attorney-client privilege, work product, or other privilege, which I hereby fully waive for such purposes*.

Among other things, and as detailed in the order of the U.S. Bankruptcy Court (a copy of which is enclosed as Exhibit 1), I instruct you to (i) immediately deliver to and share with the Trustee all memoranda, advice, and other communications by you to me regarding the UBS Litigation, any other information (whether in written form or not) regarding the merits of the UBS Litigation, and any settlement offers received or made by me or you in connection with such litigation, and (ii) immediately provide the Trustee will full access to your case file in the UBS Litigation as well as all pleadings and other court documents filed in the UBS Litigation.

(Emphasis added).

10.    The hearing on the Motion was continued from August 1, 2022, to August 4, 2022. On August 4, 2022, the Debtor filed his Debtor's Objection To Revised Proposed Order, Pursuant To Bankruptcy Code Sections 363, 521 541, 1108, And 105, (A) Confirming That Chapter 11 Trustee Holds All Of Debtor's Economic Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of The Estate, And (C) Granting Related Relief (the "Objection"). In the Objection, the Debtor argued, among other things, that the relief provided for in the Revised Proposed Order should have been sought by separate written motion and that the Court could not compel him to waive any attorney client privilege that he still owns in connection with the UBS Action following the appointment of the Trustee. The Court overruled the Debtor's objection, and entered the Order on August 10, 2022.

## ARGUMENT

11.    Federal Rule of Bankruptcy Procedure 8007(a)(1)(A) provides that "a party must move first in the bankruptcy court for … a stay of a judgment, order, or decree of the bankruptcy court pending appeal …." The Second Circuit has articulated the following four-prong test in determining whether to issue a stay of an order pending appeal: (1) whether there is a probability or possibility of success, or substantial probability or possibility of success, or serious legal questions going to the merits; (2) irreparable injury, balance of hardships tipping in favor of, or some injury to the movant if a stay is denied; (3) substantial injury to the party opposing a stay if one is issued; and (4) the public interest. *Mohammed v. Reno*, 309 F.3d 95, 100-01 (2nd Cir. 2002); *see also United States v. Grote,* 961 F.3d 105, 122-23 (2nd Cir. 2020) (standard is (1) whether a movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected); *Hirschfeld*

*v. Bd. Of Elections of N.Y.*, 984 F.2d 35, 39 (2nd Cir. 1993) (same). The "degree to which a factor must be present varies with the strength of the other factors, meaning more of one excuses less of the other." *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2nd Cir. 2007) (citation and internal quotation marks omitted); *see also Mohammed*, 309 F.3d at 100-01 ("[W]e see considerable merit in the approach expressed by the District of Columbia Circuit: 'The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.' Applying that test, that Circuit has granted a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant, and has stated that a stay may be granted where the probability of success is 'high' and 'some injury' has been shown. As the Sixth Circuit has explained, 'The probability of success that must be demonstrated is inversely proportional to the amount of injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other.'" (citations omitted)); *In re Taub*, 470 B.R. 273, 278 (Bankr. E.D.N.Y. 2012) ("The requisite showing of substantial possibility of success is inversely proportional to the amount of injury [the movant] will suffer absent the stay.").

<u>The Debtor has a Substantial Possibility of Success of Success on Appeal or, at the Very Least, There are Serious Legal Questions Going to the Merits</u>

12.     The Debtor has a substantial possibility of success on his appeal. By paragraph 3(b) of the Order, the Court would compel a disclosure of communications as to which the Order assumes the Debtor holds a privilege in an action pending in the UK, with no review by this Court or any court as to whether any such communications are privileged and whether the Trustee has succeeded to any privilege of the Debtor with respect to specific documents or communications. The Court's entry of paragraph 3(b) of the Order constitutes a clear error of law.

13.     As the U.S. Supreme Court stated more than forty years ago:

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage frank communications between attorneys and their clients and thereby promote the broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal citation omitted). By definition, the attorney-client privilege protects the privilege owner from compelled disclosure of privileged information. Indeed, where the attorney-client privilege is applicable, "communications must be protected against compelled disclosure." *Upjohn Co.*, 449 U.S. at 395; *see also United States v. Under Seal (In re Search Warrant Issued June 13, 2019)*, 942 F.3d 159, 173 (4th Cir. 2019) ("The attorney-client privilege empowers a client—as the privilege holder—'to refuse to disclose and to prevent any other person from disclosing confidential communications between him and his attorney.'" (quoting *Black's Law Dictionary* 129 (6th ed. 1990))); *Teleglobe Communications Corp. v. BCE, Inc. (In re Teleglobe Communications Corp.)*, 493 F.3d 345, 359 (3rd Cir. 2007) ("The attorney-client privilege protects communications between attorneys and clients from compelled disclosure."). Thus, when communications are within the scope of attorney-client privilege, courts have zealously protected them. *International Business Machines Corp. v. United States*, 471 F.2d 507, 509 (2nd Cir. 1972) ("[W]e … assume that the contents of the … documents in question fall within the attorney-client privilege—a privilege the courts throughout the centuries have zealously protected."); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960 (3rd Cir. 1984) ("Documents within the scope of the attorney-client privilege are zealously protected." (internal quotation marks omitted)).

14.     The attorney-client privilege, as derived from common law, see Fed. R. Evid. 501, is afforded these same protections in the UK, the very place from where our common law

originates. *Avonwick Holdings Limited v. Shlosberg*, [2016] EWCA Civ 1138, ¶¶ 43-44 (Court of Appeal, Civil Division, 2016) (annexed hereto as Exhibit B) ("[Privilege is] a right to resist the compulsory disclosure of information, and in particular documents which contain legal advice or were created for the dominant purpose of obtaining information or advice in connection with actual or contemplated litigation. … [P]rivilege [is] a fundamental condition on which the administration of justice as a whole rests, and … it is a fundamental human right protected by the European Convention on Human Rights.").

15.     While the appropriate court may make determinations on whether a particular document or communication is privileged, whether a privilege has been waived and whether a third-party has succeeded to the privilege, the rule, as enunciated by the Second Circuit Court of Appeals, is that federal courts in this country may not compel disclosure of attorney-client privileged communications absent a knowing and informed waiver or an exception under applicable law. *E.g., In re Dow Corning Corp.*, 261 F.3d 280, 284 (2nd Cir. 2001) ("[C]ompelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent."); *In re Shargel*, 742 F.2d 61, 63 (2nd Cir. 1984) ("The goal of enabling attorneys to offer informed professional advice and advocacy cannot be accomplished if courts may compel disclosure of communications between the client and attorney necessary to the provision of such services."); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, [*35] (S.D.N.Y. Jan. 16, 2002) ("Even with such protections … the disclosure of privileged documents cannot be compelled.").

16.     There is nothing in the Bankruptcy Code or in case law providing that an individual debtor automatically waives or must waive any applicable privilege that they continue to own after

filing bankruptcy or the appointment of a trustee.[2] Although Bankruptcy Code section 521(a)(3) provides that a debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title," a "[d]ebtor's duty to cooperate with the Trustee does not specifically require a debtor to waive privilege." *Coyle v. Coyle (In re Coyle)*, 538 B.R. 753, 763-64 (Bankr. C.D. Ill. 2015); *see also Upjohn Co.*, 449 U.S. at 393 ("[I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."); *McClarty v. Gudenau*, 166 B.R. 101, 102 (E.D. Mich. 1994) ("If a client knows that, should she fall on hard financial times, her privilege may be unilaterally waived by a stranger who is appointed to serve as her Trustee in bankruptcy and whose interest in the matter and concerns for privacy may differ from her own, then the fundamental purpose of the privilege could be eroded. … [I]t is for the debtor in the first instance, and not the Trustee or this Court, to determine whether to waive her privilege with her former attorneys."). Indeed, a contrary rule would make nonsense of the Supreme Court's decision in *Commodity Futures Trading Com. v. Weintraub*, 471 U.S. 343 (1985), and many other cases, analyzing whether a trustee has succeeded to a debtor's privilege. If a debtor can be compelled to waive their privilege under Bankruptcy Code section 521 or any other provision of the Bankruptcy Code, then it would make no difference whether a trustee succeeded to any privilege of the debtor.

---

[2]   Again, this dispute has nothing to do with whether the Trustee steps into the shoes of the Debtor and assumes any privilege that the Debtor holds. Indeed, the issue of whether and to what extent the Trustee assumes the individual Debtor's privilege in connection with the UBS Action has never been placed before the Court. Thus, this dispute is solely focused on this Court's authority to compel the Debtor to waive his attorney-client privilege and in particular to waive his privilege with respect to a litigation that is pending in the UK and is governed by UK law.

17.     Because there is no "bankruptcy exception" to the attorney-client or any other privilege, before ordering disclosure a U.S. court would be required to review whether specific documents are or are not privileged under applicable law. An order requiring blanket disclosure without review of documents is inconsistent with controlling precedent. *Highland Capital Mgmt., L.P. v. United States*, 626 Fed. Appx. 324, 328 (2nd Cir. 2015) ("The District Court's failure to consider and rule expressly on the question of privilege constitutes error, and we vacate the District Court's determination on this issue and remand for reconsideration, including whatever in camera review of the documents at issue may be appropriate in the circumstances presented." (internal citations omitted)); *In re GMC*, 153 F.3d 714, 716 (8th Cir. 1998) ("Until it is established that the crime/fraud exception applies, the district court may not compel disclosure of allegedly privileged communications to the party opposing the privilege."); *Chase Manhattan Bank, N.A.*, 964 F.2d at 166 (order requiring party to turn over documents withheld from production on the basis of privilege without a judicial ruling on the merits of privilege claim overturned); *International Business Machines Corp. v. United States*, 471 F.2d at 509 ("Since no specific document is before us, we must assume that the contents of the some 1200 documents in question fall within the attorney-client privilege …."); *Winfield v. City of New York*, 2018 U.S. Dist. LEXIS 79281, [*12-24] (S.D.N.Y. May 10, 2018) ("Controlling precedent … make[s] clear that the court may not run roughshod over a party's assertion of privilege merely to expedite discovery or relieve itself from determining a party's substantive or common law rights. What would be expedient here is simply not right in terms of the resolution of the parties' dispute.").

18.     This Court is not the appropriate court to make any review of whether the Debtor has any privilege with respect to documents or communications connected with the UBS Action. The applicable law governing privilege here is the law of the UK. "In determining which country's

law applies to a privilege dispute involving foreign attorney-client communications, courts in this Circuit consider the country with which the communications 'touch base.'" *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 117, 119 (S.D.N.Y. 2013). Courts apply "the law of the country that has the 'predominant' or "most direct and compelling interest' in whether [the] communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Astra Aktiebolag v. Andrix Pharmaceuticals, Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 522 (S.D.N.Y. 1992)). "The jurisdiction with the 'predominant interest' is either 'the place where the allegedly privileged relationship was entered into' or 'the place in which the relationship was centered at the time the communication was sent.'" *Id.*. "Thus, American law typically applies to communications concerning legal proceedings in the United States or advice regarding American law, while communications relating to foreign legal proceeding[s] or foreign law are generally governed by foreign privilege law." *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. at 119 (internal quotation marks and citation omitted).

19.    It appears that there are differences between the U.S. and the UK in the law governing privilege. Under UK law, privilege is not property of a bankruptcy which automatically vests in the trustee in bankruptcy and a trustee in bankruptcy does not automatically step into the shoes of a debtor in relation to privileged documents even if they affect assets of the debtor. *Avonwick Holdings Limited*, [2016] EWCA Civ 1138; *Leeds v. Lemos*, [2017] EWHC 1825 (Chancery Division, 2017) (annexed hereto as Exhibit C). Further, it is not clear that a compelled waiver would be effective under UK law. Harcus Parker has stated that under UK law any waiver must be freely given.

20.     The UBS Action is a legal proceeding in the UK, pending before a UK judge, governed by UK law. UK law governs privilege questions in that action. Privilege issues connected to that action should be determined by the UK court. The Trustee owns whatever privilege he owns under UK law, but that is for the Trustee to work out with his own UK counsel, whether such counsel is Harcus Parker or another law firm (the Trustee has already stated that Paul Hastings will not represent him in the UK action given that the defendant in that case is a client of the firm) in the UK court. What the Trustee should not be allowed to do is an end run around the process he should be going through in the UK court via an order of this Court forcing the Debtor to waive any privilege that he may still possess under UK law.

21.     The Trustee's action is exacerbated by the fact that he did not seek relief by any motion. The relief sought in paragraph 3(b) of the Order was entirely new and not at all related or connected to the relief sought in the Motion. While Bankruptcy Rule 9013 (and Federal Rule of Civil Procedure 7(b), from which Rule 9013 was derived) allows for oral motions during hearings, courts have held that the type of motion that may be made orally during a hearing is limited. Typically, such motions relate and are incidental to the written motion being heard, such as motions to exclude evidence, for a directed verdict, or for a mistrial. Allowing oral motions during hearings that raise new issues and/or seek new relief would defeat the purposes of requiring written motions, including stating a claim with particularity and providing notice:

> Both Rule 7(b)(1) and Rule 9013 create an exception for oral motions made during a hearing or trial. If read broadly to allow any oral motion during any hearing, regardless of the nexus between them, the exception would hobble the writing requirement and the policies underlying it. Not surprisingly, then, courts and commentators have preserved the record-making and notice functions of the rules by developing principles that limit the scope of oral motions made during a hearing. … [A] contrary holding could create institutional chaos for the bankruptcy court. Written motions that 'state with particularity the grounds therefor' allow parties to decide whether to oppose them or not, and to file thorough, researched responses. Written motions also allow the court to engage in its own research and analysis in

16

advance of the hearing. In contrast, unrelated oral motions, by definition, raise new issues that neither the court nor the parties could have foreseen, or for which they could have prepared.

*In re Bistrian*, 184 B.R. 678, 682 (E.D. Pa. 1995); *see also Hammond-Knowlton v. Hartford-Connecticut Trust Co.*, 26 F.Supp. 292, 293 (D. Conn. 1939) ("Federal Rules of Civil Procedure No. 7(b)(1) provides that an application for an order shall be by motion made in writing, unless made during a hearing or trial. An oral argument on a motion previously made is not, in my opinion, the 'hearing' at which the necessity for reducing motions to writing may be obviated. Motions made at a hearing are obviously such as are incidental to the hearing itself, such as motions to exclude evidence, or for a directed verdict, or for a mistrial, etc. In other words, they are such motions as are recorded in the minutes of the trial or hearing, and it is for that reason that the motion need not be reduced to writing and notice thereof given."); 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1193, at 64 (3ʳᵈ ed. 2004) ("The provision in Rule 7(b) for oral motions does not mean that on a hearing of a written motion a party may interpose a different motion for unrelated relief orally and without notice, and thereby circumvent the writing and particularity requirements of Rule 7(b)(1)." Because the Trustee did not seek the relief granted in paragraph 3(b) of the Order by written motion, he did not state with particularity his asserted grounds or authority for such relief and he did not give the Debtor fair notice of such grounds or authority, even assuming such grounds or authority exist.

22.     The Order provides for extreme relief. In fact, the Order constitutes an extraordinary change in the law, and essentially holds that a debtor has "no privilege at all." *Upjohn Co.*, 449 U.S. at 393. The Trustee did not file a motion seeking this relief, the Trustee has provided no support in writing for this relief, and the Trustee provided no support at the August 4 hearing other than argument that the Debtor's duty to cooperate means that the Debtor may be compelled

to waive privilege. Additionally, the Court provided no authority for its holding, and made no reference whatsoever to the applicable U.S. or UK law on privilege. The relief granted in paragraph 3(b) of the Order is clear error of law, and the Debtor has a substantial possibility of succeeding on his appeal on that issue.

The Debtor Will Suffer Irreparable Injury Absent a Stay or the Balancer of Hardships Tip in Favor of the Debtor

23.    Absent a stay, the Debtor will suffer irreparable injury, or at the very least, the balance of hardships tips in his favor.

24.    Courts have held that forced disclosure of privileged material may bring about irreparable harm. *E.g.*, *In re Search Warrant Issued June 13, 2019)*, 942 F.3d at 175 ("In ruling that the law firm had not established a likelihood of irreparable harm, the district court erred as a matter of law by affording insignificant weight to the … principles protecting attorney-client relationships. Crucially, the court failed to recognize that an adverse party's review of privileged materials seriously harms the privilege holder." (internal citation omitted)); *United States v. Philip Morris, Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) ("Although [the party] 'has not asserted any specific irreparable injury that would occur' if it produced the [document], the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of the privileged documents to an adverse party is clear enough.") *In re Perrigo Co*., 128 F.3d 430, 437 (6th Cir. 1997) ("We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm."); *Kelly v. Ford Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954, 963 (9th Cir. 1997) ("[O]nce putatively protected material is disclosed, the very 'right sought to be protected' has been destroyed." (quoting *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3rd Cir. 1984))); *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1491 (9th Cir. 1989)

18

("In view of the irreparable harm a party will suffer if erroneously required to disclose privileged materials or communications, courts have recognized the propriety of using mandamus for the review of orders compelling discovery in the face of assertions of absolute privilege."); *International Business Machines Corp.*, 471 F.2d at 509 ("[I]f the order in the New York action merely directed [the party] in substance to produce all letters between [the party] and its attorneys with the explanation that the Court did not believe in the attorney-client privilege and, therefore, chose not to honor it, we might well have before us a situation in which this Court should intervene at this stage to prevent irreparable harm. … The practical effect of [the order] … is just as surely to deprive [the party] of the right to assert the attorney-client and work-product privileges in the New Yok action, or to assert non-waiver thereof.").

25.     Here, the Court is compelling the Debtor to make a blanket waiver of any privilege that he continues to own in connection with the UBS Action. The Debtor is therefore being completely deprived of his right to assert privileges, and once any privileged material has been disclosed (even if erroneously so from the Debtor's perspective), any such rights will be destroyed. In addition, both the Court and the Trustee have suggested that the Debtor may be subject to contempt if he does not sign the letter. A stay is necessary to prevent such harm, particularly in light of the clearly erroneous nature of the relief granted.

The Trustee Will Not Suffer Substantial Injury if a Stay is Issued

26.     That the Trustee's investigation of the UBS Action may take longer absent a compelled waiver of any privilege of the Debtor does not constitute the type of injury, or at least enough injury, to militate against a stay. *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 181-82 (delay in investigation did not outweigh potential disclosure of privilege materials); *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) ("A mere assertion of delay does

not constitute substantial harm."); *Admiral Ins. Co.*, 881 F.2d at 1495 ("[W]e decline to establish an unavailability exception to the attorney-client privilege. The premium paid to preserve the attorney-client privilege, as with all evidentiary privileges, can be high. Nonetheless, an unavailability exception to the privilege is an unacceptable solution. Such an exception either would destroy the privilege or render it so tenuous and uncertain that it would be 'little better than no privilege at all.'"). Rather than take the requisite steps that UK counsel has advised are necessary under UK law in order to be recognized as a plaintiff in the UBS Action, the Trustee decided to try to take an impermissible short-cut to obtain information in that action by coming to this Court and this Court permitted that shortcut. This Court should now stay the Order to permit review of the Trustee's privilege busting shortcut.

<u>The Public Interest Supports a Stay</u>

27.     The public interest militates in favor of a stay. As the Supreme Court stated in *Upjohn Co.*, the attorney-client privilege exists because "sound legal advice or advocacy serves public ends and … such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co.*, 449 U.S. at 389; *see also Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and the administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."); *Kelly*, 110 F.3d at 961-62 ("It is often stated that the attorney-client privilege is at the heart of the adversary system; its purpose is to support that system by promoting loyalty and trust between an attorney and a client. The privilege is thereby intended to advance the broad public interests in the observance of law and administration of justice, by encouraging the full and frank communication

20

between attorney and client necessary for vigorous and effective advocacy. … In short, the attorney-client privilege is one of the pillars that supports the edifice that is our adversary system. As such, it is deeply rooted in public policy."); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, (7th Cir. 1970) ("[M]aintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice …."). The public interest is best served by upholding and "zealously protect[ing]" the attorney-client and other relevant privileges at issue here. *International Business Machines Corp. v. United States*, 471 F.2d at 509.

**WHEREFORE,** the Debtor respectfully requests that the Court issue a stay of paragraph 3(b) of the Order pending the Debtor's appeal of the Order and grant him such other and further relief as justice requires.

Dated at Bridgeport, Connecticut on this 17th day of August, 2022.

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ Eric Henzy*
Eric Henzy (ct12849)
Stephen M. Kindseth (ct14640)
Aaron A. Romney (ct28144)
James M. Moriarty
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
        skindseth@zeislaw.com
        aromney@zeislaw.com
        Jmoriarty@zeislaw.com
        jcesaroni@zeislaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Eric Henzy*
Eric Henzy (ct12849)