# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re       &ast; Case No. 22-50073 (JAM)
         &ast;
  HO WAN KWOK,   &ast; Bridgeport, Connecticut
         &ast; August 4, 2022
    Debtor.   &ast;
         &ast;
&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:     ERIC A. HENZY, ESQ.
          Zeisler & Zeisler, P.C.
          10 Middle Street, 15th Floor
          Bridgeport, CT  06604


For the Creditor, Pacific  PETER FRIEDMAN, ESQ.
Alliance Asia Opportunity  STUART M. SARNOFF, ESQ.
Fund L.P.:      O'Melveny & Myers LLP
          Times Square Tower
          7 Times Square
          New York, NY  10036

          PATRICK BIRNEY, ESQ.
          Robinson & Cole
          28 Trumbull Street
          Hartford, CT  06103

For the Creditors Committee: IRVE GOLDMAN, ESQ.
          Pullman & Comley
          850 Main Street
          Bridgeport, CT  06601


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:   (Cont'd)

```
For the Creditors, Rui Ma,        KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:        McElroy Deutsch
                                  225 Liberty Street
                                  36th Floor
                                  New York, NY   10281


For the U.S. Trustee:             HOLLEY L. CLAIBORN, ESQ.
                                  Office of the United States
                                      Trustee
                                  The Giaimo Federal Building
                                  150 Court Street, Room 302
                                  New Haven, CT   06510


Chapter 11 Trustee:               LUC A. DESPINS, ESQ.
                                  Paul Hastings LLP
                                  200 Park Avenue
                                  New York, NY   10166


Counsel for the                   G. ALEXANDER BONGARTZ, ESQ.
 Chapter 11 Trustee:              Paul Hastings LLP
                                  200 Park Avenue
                                  New York, NY   10166

                                  PATRICK R. LINSEY, ESQ.
                                  Neubert, Pepe & Monteith, P.C.
                                  195 Church Street, 13th Floor
                                  New Haven, CT   06510


For Creditor Logan Cheng:         JAY M. WOLMAN, ESQ.
                                  Randazza Legal Group, PLLC
                                  100 Pearl Street, 14th Floor
                                  Hartford, CT   06103
```

Ho Wan Kwok - August 4, 2022

3

1    (Proceedings commenced at 1:05 p.m.)

2        THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok.

4        THE COURT:  Thank you.

5        If we could have appearances for the record,

6    starting with the Chapter 11 trustee, please.

7        MR. DESPINS:  Good afternoon, Your Honor.  Luc

8    Despins, Chapter 11 Trustee.  And I'm here with my counsel

9    from Paul Hastings, Alex Bongartz, and Mr. Linsey, local

10   counsel to the trustee.

11       THE COURT:  Good afternoon.

12       And then if we could have counsel for the

13   committee, please.

14       MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

15   Goldman, Pullman & Comley, representing the creditors

16   committee.

17       THE COURT:  Good afternoon.

18       And counsel for the creditor PAX.

19       MR. BIRNEY:  Good afternoon, Your Honor.  Patrick

20   Birney, Robinson & Cole, on behalf of PAX.  With me this

21   afternoon is Stuart Sarnoff from O'Melveny & Myers.

22       THE COURT:  Good afternoon.

23       Who am I missing?

24       Counsel --

25       MR. BIRNEY:  Your Honor, Mr. Friedman has just

Ho Wan Kwok - August 4, 2022

4

1   joined as well.

2           THE COURT:  Okay.  Thank you.

3           Counsel for the creditors Rui Ma and related

4   creditors.

5           MS. MAYHEW:  Yes.  Good afternoon, Your Honor.

6   Kristen Mayhew, McElroy Deutsch Mulvaney & Carpenter, on

7   behalf of Rui Ma, Zheng Wu and Weican Meng.

8           THE COURT:  Good afternoon.

9           Counsel for the debtor.

10          MR. HENZY:  Good afternoon, Your Honor.  Eric

11   Henzy, of Zeisler & Zeisler, for the debtor.

12          THE COURT:  Good afternoon.

13          Counsel for the U.S. Trustee, please.

14          MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

15   Claiborn for the U.S. Trustee.

16          THE COURT:  And I think Mr. Wolman.  And that's

17   the only person I'm missing at this point, is that right?

18          THE COURTROOM DEPUTY:  I believe so, Your Honor.

19          MR. WOLMAN:  Good afternoon, Your Honor.  Jay

20   Wolman, of Randazza Legal Group, for creditor Logan Chang.

21          THE COURT:  Good afternoon.

22          Okay.  I think everyone's appearances have been

23   noted for the record.

24          As I stated before, that there are two matters on

25   the calendar.

Ho Wan Kwok - August 4, 2022

5

1    I did not see any objection or response to the

2    Chapter 11 trustee's motion for extension of time with

3    regard to the removal of civil actions.  The motion looks

4    fine to me, as does the proposed order.

5        Does anyone wish to be heard on the trustee's

6    motion to extend the deadline for removal of civil actions?

7        (No audible response)

8        THE COURT:  Okay.  Hearing no response --

9        MR. LINSEY:  Your Honor.

10        THE COURT:  Yes.

11        MR. LINSEY:  Yeah.  I won't say much if the motion

12    looks fine to you.

13        THE COURTROOM DEPUTY:  Attorney Linsey --

14        MR. LINSEY:  This is Patrick Linsey for the

15    trustee.  Just note --

16        THE COURTROOM DEPUTY:  Excuse me.  Attorney

17    Linsey, if you could just state your name.

18        MR. LINSEY:  This is Patrick Linsey for the

19    trustee.

20        THE COURTROOM DEPUTY:  Thank you.

21        THE COURT:  Go right ahead.

22        MR. LINSEY:  I won't -- I won't say much

23    considering Your Honor said the motion looks acceptable.

24        I will just note there was a prior motion that had

25    been filed by the debtor that I do not believe there were

Ho Wan Kwok - August 4, 2022

6

1   any objections to that's not been acted upon.  And presuming

2   the Court enters the order that we filed with our motion

3   will then be causing the debtor's motion to be withdrawn.

4            THE COURT:  Yes.  That was noted in your motion.

5   So thank you.

6            And when this order enters, that -- the proposed

7   order that was submitted with the motion, as appears at

8   pages 10 and 11 of ECF 672, and when that order enters, then

9   the prior motion of the debtor will be withdrawn is on the

10  record now withdrawn by the trustee.

11           MR. LINSEY:  Thank you, Your Honor.

12           THE COURT:  Okay.  Thank you.

13           So that motion is granted and the proposed order

14  can enter.  So that takes care of the first matter on

15  today's calendar.

16           The second matter obviously is the -- was

17  continued from Monday, the 1st, to today, and it is the

18  trustee's motion for an order confirming that the trustee

19  holds all the debtor's economic and corporate governance

20  rights.

21           And this was continued to today to give the debtor

22  an opportunity to file a response, which the debtor did this

23  morning.  And I also -- the debtor objected and then the

24  Chapter 11 Trustee filed a reply to the objection.

25           So I understand in the papers, or at least I've

1    seen some mention in the papers, and I'll turn to you, Mr.

2    Despins, first, that there's been some discussions.

3          And I see that there's been a redline version of

4    an order that appears to show there's been some I guess I

5    would call progress with counsel in London about the issues

6    that we discussed on Monday, but I'd like to hear from you

7    on where things stand, please.

8          MR. DESPINS:  Yes, Your Honor.

9          So there are two aspects to the motions.  Well,

10   there are many aspects, but there are two that are contested

11   I think.  The focus is on UBS, which is you just raised.

12   And then the other one is what's happening with the BVI

13   shares, et cetera.

14         So since you started with UBS, let me launch into

15   that.

16         There were a lot of back and forth between me and

17   counsel for -- or counsel for the debtor in that UBS action.

18   And basically, you know, they raised several issues.

19         And at the end of the day, I said, look, why don't

20   you just draft a letter that you would be comfortable

21   receiving from Mr. Kwok that would allow you to, you know,

22   give me an update on the merits of the claims, any

23   settlement proposals, basically what a client would receive.

24   And eventually she did that.  And the -- and we said that in

25   the reply.  There are parts of this that I have swallow hard

Ho Wan Kwok - August 4, 2022                                    8

1    to accept in the sense that, you know, you know, to say

2    that, you know, that the Court's jurisdiction is a U.S.

3    issue only.  I mean, as you know in the U.S. we view you,

4    Your Honor, as having worldwide jurisdiction over all assets

5    of the debtor.

6              But putting that aside I figure let's not have a,

7    you know, US/UK debate over jurisdiction.

8              And so we took her letter with some minor changes

9    and basically that's the letter that we're now asking the

10   Court to direct the debtor to send to her that basically

11   says give him full access.

12             But the debtor, per her -- U.K. counsel's request

13   is saying that his consent, and this is in the letter, does

14   not extend to me waiving a privilege.

15             And that's not an issue meaning, I didn't intend

16   to do that anyways.  But I thought it's always my privilege

17   to waive.  But my point is let's not get into those issues.

18             The important thing is to get access to the files

19   and understand the case, to get a full briefing.  And based

20   on the letter I think, although they were very careful about

21   saying we cannot guarantee that this letter will bind us,

22   and we said fine, but I think that based on that letter we

23   should have full access to the files.  And that's the goal.

24             And, therefore, you know, we're going to look the

25   other way on the issues of limiting the Court's jurisdiction

1    and all that.  So that's where we are on that.

2            So from my point of view, vis-a-vis U.K. counsel,

3    I think we're done.  But I don't know where the debtor is at

4    on that issue.

5            THE COURT:  Attorney Henzy?

6            MR. HENZY:  We're not done on that issue.  A

7    couple of points, Your Honor.

8            First, Mr. Despins referred to U.K. counsel, which

9    the person that he and I both have been communicating with

10   is Jenny Morrissey of the Harcus Parker firm.

11           As debtor's counsel, I just want to be clear.  I'm

12   not sure that that is correct.  I'll be honest with you,

13   Your Honor.  The convergence of U.S. and U.K. law is a

14   little bit unclear to me.

15           I know that under the bankruptcy code that upon

16   his appointment Mr. Despins was automatically substituted as

17   the plaintiff in that U.K. action.

18           What I've heard from Attorney Morrissey is that

19   what the bankruptcy code says, that's not her view anyway.

20   And I'm not -- I don't -- I know zero about U.K. law, so

21   she's right, she's wrong, but that -- that is her view.

22           I believe it's also her view that Mr. Despins is

23   not yet a party in that action.  There are some steps that

24   have to be taken under U.K. law.  Again, I don't opine as to

25   that.  I'm reporting to you what Attorney Morrissey

1    indicated to me.

2           So I don't think she's the debtor's lawyer.  I

3    don't think she's Mr. Despins' lawyer.  I frankly am not

4    sure where that leaves the status of whoever is the

5    plaintiff in that action in the U.K.

6           I'm not sure where the letter stands.  The last

7    iteration of the letter that I saw was from Paul Hastings to

8    Harcus Parker.  I think Mr. Despins said this on the last

9    day Harcus Parker is being very, very careful here, so I

10   don't know if the last iteration that Paul Hastings sent to

11   Harcus Parker would be acceptable to Harcus Parker or not.

12          Even assuming that it is, I believe that it is

13   simply beyond question that the Court, with all due respect

14   to the Court, may not compel Mr. Kwok to waive his attorney-

15   client privilege.

16          Now, I --

17          THE COURT:  The letter doesn't say that he is

18   waiving his privilege.  In fact, it says that any waiver of

19   the privilege is limited to the provision of this

20   information to the trustee.  That's what it says.

21          MR. HENZY:  That the waiver is -- that the waiver

22   is privileged, Your Honor.

23          So there's -- I want to make a distinction here.

24   There are two -- and, Your Honor, we're dealing with cross-

25   border issues here.  So the privilege here I think anyway is

1    not under U.S. law.  It's under U.K. law.

2           And as I understand my communications from

3    Attorney Morrissey, there may be items that -- I think this

4    is true under U.S. law too, a trustee is appointed and

5    there's different standards between a corporate debtor and

6    an actual person.  An actual person may maintain certain

7    privilege even after the appointment of a trustee.  And as I

8    understand it, it is similar in the U.K.

9           So there may be items that are in the possession

10   of Harcus Parker that Mr. Kwok personally still has a

11   privilege with respect to, as opposed to items that under

12   U.K. law he doesn't.

13          And I -- again, I don't know U.K. law.  I don't

14   think Mr. Despins knows U.K. law.  What's what I do not

15   know.

16          There's a right way to do this, Your Honor, I

17   think.  Mr. Despins needs to take steps to have himself

18   recognized as a party in the U.K. action and that privilege

19   issue then I think needs to be worked through.

20          I don't know how the debtor -- I don't know how

21   Mr. Kwok can say I'm going to grant a waiver of any

22   privilege rights I have.  Again, it's any privilege rights

23   that he has.

24          Your Honor, I don't know.  Attorney Morrissey may

25   make a judgment that he doesn't have any privilege rights.

1   She may make a judgment that he has a lot of privilege

2   rights with respect to what's in her possession.

3          I don't know how he can fairly be asked to waive

4   any privilege that he still has when he doesn't know what

5   he's waiving it with respect to.

6          So I don't know what documents Attorney Morrissey

7   would say would come under an umbrella of things that Mr.

8   Kwok under U.K. law still has a privilege in.

9          Again, I think there is a way to work through

10  this.  It may be that Attorney Morrissey would identify some

11  discrete number of documents that she would say these are

12  documents that Mr. Kwok has privilege in and possibly

13  subject to me reviewing and they're completely innocuous --

14  and that's great -- but there has to be a process gone

15  through.

16         Mr. Kwok cannot make a knowing and voluntary

17  waiver when he doesn't know what he's waiving.  He can't do

18  that.  And he's not going to do that.

19         And, again, with all due respect, I don't believe

20  you can compel him to do that.  I do not believe that you

21  can compel him by signing this letter to waive his --

22  whatever his attorney/client privilege is under U.K. law.

23         MR. DESPINS:  Your Honor, if I may?

24         THE COURT:  Yes.

25         MR. DESPINS:  You know, there's an attempt to

1   muddy the waters here.  If the letter doesn't work for

2   counsel in the U.K., I'll deal with that.  So let's put that

3   aside for now.

4        I think it will work because she marked up our

5   letter and she sent us this letter.  We made some very minor

6   nonsense kind of changes, so that's number one.

7        And that letter basically, that she marked up,

8   says that if she gets that letter she will share the

9   privilege as to -- or she will give me privileged

10  information.  As to what?  As to the merits of the

11  litigation.

12       That's an asset of the debtor.  Mr. Henzy made a

13  big deal about his 475 million or whatever sum.  That's an

14  asset of the debtor.

15       The only way -- this is like a car.  In order to

16  access the car, I need the key.  The key is the letter.

17  Because otherwise they won't talk to me because, you know,

18  either U.K. rules or their concern about being sued.

19  They've never actually articulated that, but that's the

20  subtext here.  It's pretty clear.  So the letter I think

21  works.

22       There's not an unknown or unlimited waiver of the

23  privilege.  It's regarding the merits of that litigation.

24  That's what she's going to share with me.  Because Mr. Henzy

25  has -- you must remember -- had very nicely sent an email to

1    them a long time ago that said I own the claims basically

2    dealing with Mr. Despins.  Mr. Kwok is completely out of

3    this -- out of that claim.  He did say that.

4            So what would be the point of me being, you know,

5    having the claim if I cannot be briefed by the lawyers about

6    the merits of the claim?  Again, it's the key that gets me

7    the car.  And I absolutely need that.

8            And case law is clear, Your Honor, that the

9    trustee can have access to privileged information of the

10    debtor with respect to assets of the debtor.

11            Here there's not even a dispute.  This is not like

12    the yacht or the Sherry-Netherland apartment where he says,

13    oh, I don't own it.  He says -- he filed a claim.  He said I

14    own this.  It's clear that the trustee owns the claim now.

15    And clearly I have the right to have access to that.

16        There's not an unknown or unlimited waiver.  And so,

17    therefore, we believe the Court can compel.  This is

18    521(a)(3),(a)(4).  The Court can absolutely do that because

19    this is equal to the debtor saying, yeah, here's the car,

20    but I'm not giving you the key.

21            Without the briefing on the merits of the claim or

22    knowing whether there has been any settlement, I cannot

23    drive the car.  I cannot sell the car.  You know, that's the

24    analogy.  And we need access to that.

25            Thank you, Your Honor.

1      MR. HENZY:  Your Honor, if I may?

2      THE COURT:  Yes.

3      MR. HENZY:  One point I want to be clear on, that

4  Attorney Morrissey's clear with me on, is that there's two

5  other plaintiffs here and the privilege is joint.

6      And Attorney Morrissey's been clear that Mr. Kwok

7  cannot raise the privilege with respect to information that

8  is the joint information of -- along with those other

9  parties.  So she's been very, very clear that the only thing

10  that in theory Mr. Kwok could raise with respect to -- with

11  the property that as I understand it he is the sole owner

12  of.

13      So, again, what the -- the universe of information

14  here is that Harcus Parker would ever say that they're going

15  to release is that, you know, I don't know.

16      But I want to give you two cites that were not in

17  my objection.  I did have a relatively short time to get the

18  objection done, Your Honor.  I did cite one case where the

19  Second Circuit says that you cannot compel a person to waive

20  their attorney/client privilege.

21      And, again, I want to be clear here, Your Honor,

22  to the extent that Mr. Kwok no longer owns the privilege,

23  under -- I think it's under U.K. law -- not under U.S. law

24  -- whether -- what the attorney-client privilege is in the

25  U.K. and what -- to what extent the privilege belongs to him

1    versus belongs Mr. Despins, that's what's -- that's a matter

2    of U.K. law.  It's not U.S. law.

3           But two other Second Circuit Court of Appeals

4    cases.  One is *Highland Capital Management vs. United*

5    *States.*  It's at 626 F. App'x -- I never know how to

6    pronounce that thing, 324.  It's a 2015 decision.

7           If I could quote, Your Honor.  "Compelled

8    disclosure of privileged attorney/client communications

9    absent waiver or acceptable exception is contrary to well-

10   established precedent.  When parties disagree whether a

11   privilege applies, courts often review the contested

12   material in camera.  In contrast, requiring a litigant to

13   turn over documents subject to claims of attorney/client

14   privilege to opposing counsel without a judicial ruling on

15   the merits of the claim will undermine the attorney/client

16   privilege and it's, therefore, impermissible."

17          So, again, what privilege Mr. Kwok has here and

18   what privilege he doesn't have may well be subject to

19   dispute.  Plus you can't order him to waive privilege

20   without working through that dispute.

21          And I'll say again, Your Honor, there's a right

22   way to do this.  If Mr. Despins, rather than trying to

23   bulldoze through an order here, would work with U.K. counsel

24   and me to try to identify what potentially is the universe

25   of documents that even are at issue here she may go through

1    her documents, Your Honor, and say I can't give you anything

2    because these other people have privilege and I'm not going

3    to -- I'm not going to give you anything.

4          She may say there's five pieces of paper that Mr.

5    Kwok is the sole owner of that I could ever release to you.

6    And the five pieces of paper are pictures of his kids.  And

7    no one -- and no one's going to care about that -- to tell

8    us any number of things.  But there's a -- there's a process

9    that has to be worked through.

10          The Second Circuit says that you cannot order this

11    kind of blanket waiver without making findings with respect

12    to specific documents.

13          THE COURT:  Where does it say that in the *Highland*

14    case?  I'm looking at it.

15          And the *Highland* case is not a bankruptcy case.

16    It's a third-party subpoena with regard to an IRS issue.

17          So where does it say that?  Where does it say that

18    a court cannot compel a debtor out of possession to waive a

19    privilege with regard to an asset that the debtor has stated

20    under penalty of perjury is an asset of his estate?

21          MR. HENZY:  Your Honor, this is -- you're right.

22    This is not a debtor case.

23          But I don't think -- I don't -- I'm not aware of

24    any case.  And I will say this, Your Honor.  I'm not aware

25    of any case that says that.

Ho Wan Kwok - August 4, 2022                    18

1          Because what the Second Circuit says is that after

2     an applicable exception.  And I think the typical exception

3     that comes up in cases is where a party -- in criminal cases

4     where a party says it had ineffective assistance of counsel.

5          And the rule is that you can't say you haven't had

6     effective assistance counsel unless you're going to be

7     willing to waive relevant communications with counsel.

8          I'm not aware of any case that says that a -- that

9     there's an applicable exception for a debtor.

10         But I'm going to push back to one of the other

11    points I've made here.  I don't think it's up to the debtor

12    that's here to prove the negative.  Not by motion.  But by

13    submitting a proposed order Mr. Despins is seeking relief

14    from it.  He is seeking to have you compel the debtor --

15         THE COURT:  Not yet.

16         MR. HENZY:  -- to waive his privilege.

17         THE COURT:  Not yet.  If the debtor doesn't sign

18    the document, then -- I asked that question of Mr. Despins

19    the other day, and then he will file a motion.

20         The problem is your case law says compel

21    disclosure of privileged attorney/client communications

22    absent waiver or applicable exceptions contrary to well-

23    established precedent.

24         Well, this is -- this is -- Mr. Kwok has stated

25    under penalty of perjury in his schedules -- and you've

1    reached out to the lawyer in the U.K. saying that Mr.

2    Despins is the party, and you've acknowledged that Mr.

3    Despins steps into the shoes of Mr. Kwok in the action in

4    the U.K.  And so you can't then argue that Mr. Kwok -- the

5    lawyers who represented Mr. Kwok can't turn over that

6    information to Mr. Despins for his review.  I mean, you can

7    make that argument, but it's not persuasive.

8              You're having --

9              MR. HENZY:  Okay.  There's nothing --

10             THE COURT:  Excuse me.  Let me -- let me just

11   finish.

12             You are coming to this court.  Your client

13   voluntarily came to this court and put his assets in

14   question for creditors of this estate and has stated that

15   this cause of action is his cause of action and an asset of

16   the estate.

17             The minute the Chapter 11 trustee was appointed,

18   the Chapter 11 trustee steps into the shoes of Mr. Kwok.  So

19   the Chapter 11 trustee has the privilege of Mr. Kwok in that

20   lawsuit.

21             And so your arguments are not persuasive.  So

22   let's move onto the next issue about whether -- because that

23   order --

24             MR. HENZY:  Your Honor, can I -- can I -- may I --

25             THE COURT:  Excuse me.  I'm not finished.

1          MR. HENZY:  Okay.

2          THE COURT:  That letter -- Mr. Despins has just

3     stated he's a -- he is subject to Rule 11 sanctions if he's

4     incorrect, Mr. Henzy.  That he got this letter from the

5     lawyers in -- from the barristers or solicitors in London.

6     They're willing to sign it.  They marked it up.  That's

7     what's going to happen.  That's what's going to happen.

8          So let's go to the next issue which has to do with

9     the Genever issue and the fact that you've argued that Mr.

10    Kwok, you know, doesn't have any control over Genever.

11         But when you look at the trustee's reply to your

12    objection this morning, there are exhibits attached to it

13    where Mr. Kwok admits -- it's an admission of a party, that

14    he owns the shares of the cooperative that owns the

15    apartment.

16         So what's your response to that?

17         MR. HENZY:  Your Honor, just if I could go back

18    for a second.  For the record, you're not going to hear any

19    further arguments from me on the privilege issue.

20         THE COURT:  That is correct.

21         MR. HENZY:  I just want to make --

22         THE COURT:  I've decided the issue.

23         MR. HENZY:  I want to make a record.

24         THE COURT:  I've decided the issue.  That is

25    correct.  Your arguments about the privilege are not

Ho Wan Kwok - August 4, 2022                    21

1    persuasive.

2              Mr. Despins stepped into the shoes of the debtor

3    when he became the Chapter 11 trustee.  There's well settled

4    case law on that, Attorney Henzy.

5              The cases that you've cited are not applicable.

6    They're not involving a Chapter 11 trustee who steps into

7    the shoes of a debtor who has been taken out of possession.

8    And so, therefore, your case law does not support your

9    argument.

10             And I will -- and we can move on to the next issue

11   now about the Genever Holdings matter and the Sherry-

12   Netherlands apartment.

13             MR. HENZY:  Thank you, Your Honor.

14             On the Genever BVI issue, my first -- because I

15   got this not that long ago, but the documents that are

16   attached to the reply are not in evidence, Your Honor.  I

17   think we can all agree on that.  And I -- I'm not -- I do

18   not --

19             THE COURT:  Well, I'm not sure that's true.  First

20   of all, some of them are from the bankruptcy court in New

21   York.  And this court can take judicial notice of those

22   documents and their reliability based upon the fact that

23   they were filed in a -- in the Chapter 11 case of Genever

24   Holdings in New York.

25             So when you say they're not in evidence, well,

Ho Wan Kwok - August 4, 2022                                      22

1    then I can make them in evidence.  I can say that they are

2    now evidence in connection with the trustee's motion because

3    they were all filed, many of them -- and we can go through

4    each one -- in the -- in the bankruptcy case of Genever

5    Holdings.  And the Court can take judicial notice under the

6    federal rules of evidence of that because the reliability of

7    that is obvious.

8              So to say that they're not in evidence, well,

9    okay, I'm going to now rule that they are in evidence. That

10   the exhibits attached to the trustee's reply that was filed

11   today in response to your objection, Exhibits A through G,

12   are in evidence and they will be marked as exhibits.  So

13   that if you want to appeal you can -- these exhibits will be

14   in evidence.

15             (Exhibits A through G attached to Trustee's motion

16   for an order received into evidence as Trustee Exhibits A

17   through G.)

18             MR. HENZY:  Thank you, Your Honor.

19             Just for the record, so I make my record, I do

20   object to their admission.

21             THE COURT:  Understood.

22             MR. HENZY:  And in addition to -- I'm in a

23   difficult position to give you specific objections as I'm

24   required to do under the rules of evidence as I've -- as

25   that I've had almost no time to go through these documents

1    individually.  So that is an issue for me.  And that kind

2    puts, you know, pushes me to a different issue which --

3            THE COURT:  Well, let's go through them right now.

4    We'll pull up Exhibit A.

5            MR. HENZY:  That's unfair, Your Honor.  Because if

6    I --

7            THE COURT:  No, it's not unfair, counsel.

8            MR. HENZY:  It is.

9            THE COURT:  Because these are all exhibits that

10   your client signed or you should have as his counsel.  You

11   don't get to come in and stall things.  And I'm not saying

12   -- you don't get to come in and say the trustee, who's been

13   appointed since July 8th, can't do his job because I'm new

14   counsel and I haven't had a chance to look at all this.  You

15   don't get that opportunity.

16           MR. HENZY:  No.

17           THE COURT:  It doesn't happen that way.

18           MR. DESPINS:  Your Honor.

19           MR. HENZY:  The point -- the point I was going to

20   make, Your Honor, is that you're admitting exhibits in

21   connection with relief sought by the trustee that is not in

22   the motion that he filed and on a hearing that as far as I

23   know was not scheduled as a trial, but an evidentiary

24   hearing.  I have no ability to try to rebut what is in these

25   documents.  That this is just -- it is fundamentally unfair.

1          THE COURT:  Okay.

2          MR. HENZY:  I have no notice --

3          THE COURT:  How would you rebut the -- your

4   client's answers to interrogatories that were filed in the

5   New York State Court, which is Exhibit A and which he

6   signed?  How would you rebut that?  What could you possibly

7   put forth that could rebut that -- those interrogatory

8   answers that your client signed in an action in New York

9   that has been pending for years?

10         MR. HENZY:  I'm going to try to answer that

11  specifically, Your Honor, but I think -- and actually I'm

12  going to try to answer your question.  Okay.

13         The first -- I don't know.  I'm not -- I don't --

14  I do not practice trial law in New York State so I don't

15  know if interrogatories are filed.  They're not filed, for

16  example, in federal court or state court in Connecticut.  So

17  maybe they are and maybe they aren't.  I don't know that.

18  So that if they're not, I don't think you could take

19  judicial notice.  That's one issue.

20         THE COURT:  Well, there's a file stamp on the top

21  of it from New York filed New York County Clerk 4/28/2021,

22  10:54 p.m.  That states that on the top of the document.

23         MR. HENZY:  Sorry.  I don't -- again, Your Honor,

24  I'm not -- I don't practice trial law in New York so I don't

25  know what the procedure is.

Ho Wan Kwok - August 4, 2022                                        25

1          I will point out, Your Honor, if you go to page 3,

2     the definition of interest.

3          THE COURT:  Page 3 of Exhibit A?  Is that what

4     you're saying?

5          MR. HENZY:  Of what I -- what I'm understanding is

6     now you've admitted this as Exhibit A.

7          THE COURT:  That is correct.

8          MR. HENZY:  Okay.  And just to be clear, I do

9     object to that, Your Honor.  I understand you're overruling

10    my objection, but the -- on page 3, definition 2 -- I might

11    -- I might be getting this wrong, Your Honor -- again, I

12    have not -- I understand Your Honor.

13         I'm not telling you that I don't have a

14    responsibility to have gone through things, but there is a

15    lot that was put on in connection with this this morning.

16         But the definition of interest is very, very

17    broadly defined there.  The term interest means any direct,

18    indirect interest, whether partial, whole or potential, et

19    cetera.  So it's a very, very broad definition of interest.

20         Again, if I go to response interrogatory number

21    one, where, among other things, there's a little box that

22    says admission of ownership -- and I don't, Your Honor,

23    where that came from.  I don't -- I don't know if that was

24    part of what was filed with the New York State Court. I'm

25    going to doubt it, as opposed to this is somehow

1    constructive for your purposes or someone else's purposes.

2    I don't know.  I just wasn't -- I did -- I don't know the

3    answer to that.  That -- I think that should not be before

4    Your Honor.

5            But his answer is I am the legal owner of the

6    issued shares of Genever Holdings Corporation.  And if you

7    go back to definition of interest -- again, it's a very,

8    very broad definition, it makes the distinction between

9    legal and equitable.

10           And if I jump to response interrogatory number 5,

11   on page 9, again, I am the legal owner of the issued shares

12   of Genever Holdings Corporation.  That statement is

13   consistent with the statements that Mr. Kwok made in the

14   declaration he filed in this case and also consistent with

15   the global notes to the statement of financial affairs that

16   he filed in this case.  That is, that he is the legal owner

17   of the issued shares of Genever Holdings Corporation, which

18   will be referred to as Genever VBI.

19           And what he's said there -- in the declaration

20   filed in this case and in the global notes filed in this

21   case -- is that he holds those shares, he holds legal title

22   to those shares as trustee under a trust.  And the

23   beneficiary of that trust is Bravo Luck.

24           So I -- we can debate -- and I know Mr. Sarnoff

25   really wants to debate -- about what this says.  But my

Ho Wan Kwok - August 4, 2022                                    27

1     point is I'm -- I am not able to put on evidence, Your

2     Honor, to explain this and to explain what's in the

3     declaration and to explain what's in the global notes.  And

4     that's not -- that's fundamentally unfair.

5              This was not scheduled to have an evidentiary

6     trial.  I have -- this is not even -- what the relief sought

7     here -- as I pointed out in my objection, Your Honor, it is

8     not even relief that's sought in the motion that was

9     actually filed.

10             This is -- this is new relief.  And we're now

11    having, as I understand it, a trial on almost no notice on

12    new relief where I have absolutely no ability to meet the

13    claim that is now being made.  And that is -- again, I think

14    that's fundamentally unfair and I absolutely object to it.

15             MR. SARNOFF:  Judge Manning, this is Stuart

16    Sarnoff.  May I be very, very briefly heard, because I might

17    be able to help the Court on an issue relating to this?

18             THE COURT:  Go right ahead.

19             MR. SARNOFF:  So I -- Judge Manning, I've been the

20    lead counsel for PAX in the state court litigation.  I filed

21    the complaint on its behalf.

22             All I want to do, Your Honor, is to point out that

23    PAX filed and won a turnover motion with respect to Genever

24    BVI shares as a post judgment enforcement action.

25             And I would just raise that never proffered before

Ho Wan Kwok - August 4, 2022                                    28

1    the Court was the alleged deed of trust.  But in any event,

2    the judge -- on September 22nd, 2021, Judge Ostrager,

3    Justice Ostrager, in his ruling on the record, and then

4    confirmed in an order dated that day, ordered the turnover

5    to PAX of Mr. Kwok's Genever BVI share ownership because he

6    said, quote, on page 16 of the September 22nd, 2021

7    transcript, "Mr. Kwok identified his ownership interest in

8    Genever Holdings BVI as his only asset worth more than

9    $10,000 in response to PAX's post-judgment interrogatories,"

10   which is the document at number 756 in this case at page 9.

11   The ownership shares -- and then he goes on to say the

12   ownership -- so he's admitted that this is his one asset.

13           And because PAX ha a judgment of 130-something

14   million dollars at that time, $126,000 million, they're

15   entitled to get turnover.

16           We had to bring a subsequent contempt motion which

17   was pending when Mr. Kwok filed for bankruptcy because of

18   course Mr. Kwok didn't do what he was supposed to do, vis-a-

19   vis, the turning over.

20           But there is -- you know, there's a judicial

21   ruling that the shares belong to Mr. Kwok for purposes of

22   being able to turn them over or for, in this case, for Mr.

23   Despins to step into those shoes to have that same bundle of

24   rights.

25           And I would also note, Your Honor, that Mr. Kwok

1    did not appeal that ruling.

2           You know, it should be collaterally estopped.  You

3    know, whatever it is. This has been litigated whether or not

4    the shares are sufficiently his for purposes of turnover or

5    for Mr. Despins to step into his shoes.

6           And in a ruling on September 22nd, 2021 --

7           MR. HENZY:  Your Honor.

8           MR. SARNOFF:  -- Justice Ostrager ruled on that.

9           MR. HENZY:  I want to be clear.  Is Mr. -- are you

10   taking this as Mr. Sarnoff's testimony?  Because if you are,

11   I would like him to be sworn.

12          THE COURT:  I'm not taking it as Mr. Sarnoff's

13   testimony, Attorney Henzy.

14          MR. HENZY:  Thank you, Your Honor.

15          Mr. Despins?

16          MR. DESPINS:  Your Honor, if I may very briefly?

17          You are not -- we're not asking you today to find

18   that the trust agreement isn't valid or doesn't exist.  We

19   added -- in what we filed today at 681, docket 681, we added

20   a safety valve.  So I thought that Mr. Henzy would jump at

21   that.

22          But basically it says the Court is not finding --

23   making any findings regarding the validity or invalidity of

24   the trust agreement.  Any challenges to the trust agreement

25   are preserved.

1          However, what cannot be controverted is that he's

2      the legal owner of these shares and now we are entitled to

3      get those shares.

4          And the issue of the validity of that trust -- by

5      the way, we have craved out over it -- you know, that trust,

6      the allegation that there's a trust was never raised in

7      state court for four years, so that gives you a sense of how

8      -- you know, that's let not editorialize over that.

9          But the point is that there's a safety valve in

10     the order and, therefore, the order should enter. And then

11     Mr. Henzy also complained about the lack of notice in these

12     documents.

13         Your Honor, on August 1st, you may remember -- I

14     don't know if you saw this, but I offered Mr. Henzy more

15     documents.  These were these documents and he threw them to

16     the floor.  A little temper tantrum there.  I don't know if

17     you saw that.

18         But the point is that if he hadn't done that he

19     would have all these exhibits, that these were the exhibits

20     I was giving him at the time, which are, as you said, are

21     exhibits, for example, in the Genever Chapter 11 case, which

22     nobody can dispute.

23         And those are to the effect that Mr. Kwok is

24     exercising, and I've exercised, all corporate governance

25     rights with respect to Genever Holdings, Genever USA, and --

1    And so regardless of the trust agreement, there's

2    never a -- in all these signature pages, you never see a

3    countersign or approved by Bravo Luck or anything like that.

4    It's Mr. Kwok signing.

5    And so, therefore, that tells you that these are

6    the rights we should have. And those include the rights to

7    direct the Chapter 11 case of Genever Holdings subject to

8    the jurisdiction of Judge Garrity.

9    And there's also a safety valve in the order that

10    says you're not ordering me or allowing me to do anything in

11    that case without his approval. So that's all covered.

12    But I think it's important to stick to the facts

13    here. And it's a limited relief. And it's basically

14    getting the shares in my name so I can exercise all the

15    corporate governance rights of that entity.

16    Thank you, Your Honor.

17    MR. HENZY: Your Honor, just so I could be clear,

18    I assume that that was -- you're not taking Mr. Despins'

19    statements as testimony either?

20    THE COURT: I'm not taking anyone's statements,

21    including yours, as testimony either.

22    MR. HENZY: Oh, I know you're not taking or I

23    think I know you're not taking mine.

24    Your Honor, I probably did have a little, very

25    brief temper tantrum on Monday.

Ho Wan Kwok - August 4, 2022                                    32

1          But this is a trial by ambush, Your Honor, and I

2     think the rules do need -- there does need to rules.  There

3     needs to be order in proceedings.  And I don't -- I don't

4     think that that is happening here.

5          I've tried -- I don't know if Your Honor has more

6     questions of me.  I would like to make further points,

7     again, just to make my record, you know.

8          I believe there is a dispute.  I understand that

9     Mr. Despins doubts it.  I understand that Mr. Despins and

10    Mr. Sarnoff have formed a version of facts to, you know, to

11    the Court that, again, I'm not in a position to rebut.  I

12    don't have a witness here.  I don't -- I didn't know this

13    was going to be a trial.

14         I will point out, Your Honor, that this dispute is

15    the subject of a settlement agreement in the Genever U.S.

16    case that was approved by Judge Garrity, that as I

17    understand it contemplates that this ownership issue is to

18    be litigated in the BVI.  Again, that is my --

19         THE COURT:  So do you -- so you're asking for your

20    exhibits then to become part of the record as well in

21    evidence because now you're relying on exhibits that you

22    attached to your objection to make the statement that you

23    just made?

24         MR. HENZY:  You know, Your Honor, I am relying on

25    that --

Fiore Reporting and Transcription Service, Inc.

1        THE COURT:  Okay.  Then they'll be admitted into

2    evidence as well.

3        MR. HENZY:  -- to try to make an argument, to try

4    to respond.

5        THE COURT:  Okay.  Well, then your exhibits are

6    admitted into evidence as well.

7            (Exhibits attached to Debtor's objection to

8    Trustee's motion for an order received into evidence.)

9        I mean, what else do you -- why else would you

10   have filed an exhibit -- and the same reason that Mr.

11   Despins did -- so the Court could review them in connection

12   with your positions?

13       MR. HENZY:  In connection with --

14       THE COURT:  And so to argue that this is now an

15   evidentiary hearing and that you're being -- you're not

16   given fair opportunity -- but you want to make your argument

17   based upon the exhibits that you attached to your motion,

18   your reply.

19       So I think you need to be a little bit more -- we

20   need to be -- treat this the same on both sides of these --

21   of the equation.

22       You can't argue that Mr. Despins is now making

23   this an evidentiary hearing because he's submitted exhibits

24   and attached to his reply, but you can persuade the Court

25   with regard to the exhibits you've attached to your -- to

1    your objection and that's -- that's not part of an

2    evidentiary hearing.

3            Well, of course it is.  It's either -- it's all in

4    evidence or it's not, Mr. Henzy.  It's part of the record of

5    this case.  You made it part of the record when you

6    submitted your objection with those exhibits.  That's the

7    record of this case, ss are the exhibits that Mr. Despins

8    submitted.  Then you made the argument, well, they're not in

9    evidence.

10           Well, I don't agree with you because they're part

11   of the record of the case.  But we'll just put them all in

12   evidence.  So there's no --

13           MR. HENZY:  Well, Your --

14           THE COURT:  -- there's nothing unfair about that,

15   Mr. Henzy.  That's how it works.

16           MR. HENZY:  Oh, I think there is something unfair

17   about it, Your Honor, but I understand your ruling.

18           THE COURT:  I know you do.

19           MR. HENZY:  I understand --

20           THE COURT:  But you haven't been able to

21   articulate or point to any case law or statute that supports

22   your argument.

23           MR. HENZY:  Your Honor, you're taking evidence.

24   And I understand I attached a document to my memo.  Okay.

25   And that's for the purposes of argument.  I was not

1    contemplating anything was going to be admitted into

2    evidence.  You're taking evidence.  You're holding a trial

3    right now as I understand it.

4            THE COURT:  No, I'm not holding a trial, Mr.

5    Henzy.

6            You're the one that said that Mr. Despins couldn't

7    argue about the exhibits attached to his reply because they

8    weren't in evidence.  And I said to you, okay, well, then

9    let's put them in evidence because they are part --

10           MR. HENZY:  And I --

11           THE COURT:  -- of the record of this case.

12           And then you just said -- you just said -- you

13   weren't relying on those exhibits to make findings but, yes,

14   you are.  You exactly just said the settlement agreement

15   that's been approved by Judge Garrity is what controls

16   Genever Holdings.

17           And so it's either part of the record or it's not.

18   If you're -- then nothing you've said -- you don't have any

19   -- anything to support your argument because you don't want

20   it to be part of the record.  So fine.  If you don't want it

21   to be part of the record, that's fine.  And if you don't --

22   but you already made it part of the record because you

23   submitted it with your pleading.

24           MR. HENZY:  I'm not going to dispute, Your Honor,

25   that you can take judicial notice for what it's worth of a

1    document that's been filed in the Genever bankruptcy case.

2    I'm not going to -- I'm not going to dispute that.

3            THE COURT:  Yeah.  But you have to do that under

4    the federal rules of evidence, Attorney Henzy.  I don't just

5    say I take judicial notice.  I have to do that under the --

6    the applicable rule of evidence regarding judicial notice.

7    So it's evidence, as is the documents you've submitted with

8    regard to the settlement agreement.

9            MR. HENZY:  Yeah.  I understand, Your Honor.  I

10   understand your ruling.

11           But there is a dispute, Your Honor, as to the

12   ownership.  Now, Mr. Despins did file -- and that dispute I

13   believe under applicable law has to be resolved by an

14   adversary proceeding.  And I've cited lots and lots of cases

15   that say that.

16           THE COURT:  Mr. Henzy, let me stop you right there

17   on the adversary proceeding issue.

18           I think you have a problem with the language in

19   7004 -- 7001(a) that you didn't -- you stopped the sentence.

20   I mean, I looked back at it three times this morning because

21   I thought that you were -- that was not an accurate

22   statement.  And it says -- (a)(1) says a proceeding to

23   recover money or property other than a proceeding to compel

24   the debtor to deliver property to the trustee.

25           How do you -- do you not see that language?  How

1    do you interpret that language in any other way that that

2    still requires Trustee Despins to file an adversary

3    proceeding?  How do -- I don't understand that.

4            MR. HENZY:  So, Your Honor, just as with the cases

5    that -- Judge Trancredi case that I cited that dealt with a

6    363 motion, I don't -- I understand he can file a motion for

7    turnover but, Your Honor, he hasn't filed a motion for

8    turnover.

9            THE COURT:  He doesn't have to.  Your client is

10   obligated to cooperate with him under the debtor's duties

11   when he voluntarily came to this court and sought this

12   court's protection.

13           And then -- and to say that your client's being

14   ambushed, this issue of the trustee has been pending since

15   the middle of February.  The trustee was appointed on July

16   8th.  It's August 4th.  And your client hasn't cooperated

17   with the trustee.

18           I mean, you can continue to make the argument, but

19   your argument is not persuasive.

20           MR. HENZY:  May I speak, Your Honor?

21           THE COURT:  Yes.

22           MR. HENZY:  I don't agree that Mr. Kwok has not

23   cooperated with the trustee.  So that's one.

24           I understand this case was filed in February.  The

25   trustee was not appointed until July 8th, Your Honor.  I

1    understand a trustee was appointed.

2         I have tried to familiarize myself with as much of

3    the record in this case as I could.  I don't understand that

4    Your Honor has ever made findings regarding the debtor's

5    lack of cooperation, regarding the debtor being a bad

6    person.

7         My understanding of your ruling granting the

8    motion was really -- that it was focused on best interest of

9    creditors.  You said that there may be assets -- just a

10   centralized form. So really the best interest of creditors

11   type of matters.

12        I've read your decision and I don't see anything

13   regarding misconduct.  I believe that Mr. Kwok's consent

14   that there was cause was based on best interest of

15   creditors.  There was no admission by him as to malfeasance

16   or any kind of bad conduct.

17        So in the -- I guess it's three or four weeks

18   since Mr. Despins -- and I'll say, Your Honor, I don't -- I

19   don't believe that because a person files Chapter 11 that

20   they then waive any and all of their rights if and when a

21   trustee is appointed.

22        THE COURT:  Okay.  But you didn't answer my

23   question, Mr. Henzy, about 7001(a) and how you could

24   interpret it in any way other than the language in the rule?

25        MR. HENZY:  So, Your Honor, 542 -- 7001(a)(1) --

Ho Wan Kwok - August 4, 2022                                    39

1    I'm sorry -- 7001(1) applies -- I recognize it applies to a

2    proceeding to compel the debtor to deliver property to the

3    trustee.  But where -- I think that is with respect to

4    property where there's no dispute that the property is

5    property of the estate.  And here there is a dispute.

6              It's the same as with the 363 motion, Your Honor.

7    The courts have held, including Judge Tancredi, that you

8    can't grant a 363 motion until you've decided whether the

9    property that's sought to be sold is property of the

10   bankruptcy estate.  And that requires an adversary

11   proceeding.

12             THE COURT:  We're not selling property at this

13   time.  Number one.

14             And number two, it is being sold subject to the

15   New York Bankruptcy Court's order selling the property.  So

16   that's already been done, number one.

17             And then your client admits that it is his asset

18   in some way, shape or form, Mr. Henzy.  I don't have to find

19   whether he -- it's a legal interest, an equitable interest,

20   a beneficial interest.  I don't have to find any of that.

21   Your client has already admitted it, that it's his asset.

22             So I don't -- so I don't --  you still haven't

23   answered the question of how 7001(a) requires Mr. Despins to

24   bring an adversary proceeding.

25             MR. HENZY:  Well, Your Honor, I think there is no

Ho Wan Kwok - August 4, 2022                                          40

1    7001(a).  It's 7001(1), which does provide --

2              THE COURT:  Okay.  Sorry, 7001(1).

3              MR. HENZY:  -- a carve -- it carves out --

4              THE COURT:  Sorry.

5              MR. HENZY:  -- it carves out turnover.  But,

6    again, that's for property of the estate.  There has to be a

7    determination that that, in fact, is property of the estate.

8    And that --

9              THE COURT:  Your client has already said it is

10   property of the estate in the declaration.  Even if he says

11   he's holding it in trust, he still owns the shares.  He says

12   that in the declaration 107 that we talked about the other

13   day.  So he's already said that.

14             MR. HENZY:  What he said is that he has -- he has

15   legal title as --

16             THE COURT:  Okay.  And guess what, as you know,

17   the definition of property of the estate includes all

18   interests, legal, beneficial, equitable, that you have in

19   any property that you have.  And so he has.

20             MR. HENZY:  But, Your --

21             THE COURT:  It's property of the estate.

22             MR. HENZY:  Your Honor, Mr. Despins filed the --

23   the third revised proposed order, I think, nine -- or nine

24   and a half minutes before the hearing.  I did not have a

25   chance to look at it.  If there are appropriate protections

1    in there, then it may well be that the debtor won't object

2    to the entry of that order, but I would like an opportunity,

3    and not in the middle of this hearing, to review that order.

4          THE COURT:  Okay.  Would you like to take a recess

5    for an hour and you can go read the order?  I mean, that's

6    fine if that's what you'd like to do.

7          But Mr. Despins just explained how he did put in

8    safeguards in that order.

9          MR. HENZY:  I don't know what safeguards he put in

10   and I don't know if they're sufficient.

11         The issue, Your Honor, the problem, is that what

12   Mr. Despins put in front of you would appear to be a --

13   require a transfer of the shares in full.  Okay.  That's the

14   way I understood it.  Okay.  Where he said these shares get

15   transferred to him solely in his capacity as Chapter 11

16   trustee.

17         Well, if Mr. Kwok is the mere legal owner, as

18   trustee, and these are now being transferred to Mr. Despins,

19   I think Mr. Despins is becoming the trustee of that trust.

20   If there's a valid -- if there's a valid trust, there has to

21   be a trustee.  And if Mr. Despins is now the legal owner of

22   the shares, I think he's owning them as trustee of that

23   trust.  So, again, if we're all clear that that is the case,

24   then maybe we don't have a problem.

25         I'm not sure Mr. Despins really wants to be a

1    trustee of that trust with all that that might bring in

2    terms of duties to the beneficiary of the trust, but you

3    can't have it both ways.

4            As Your Honor has said multiple times, you take

5    the debtor as -- in this case -- he comes.  And the argument

6    is that with respect to this asset the way he came was as

7    the legal owner, as trustee of a trust, for the benefit of a

8    third party.

9            So if -- if the -- all that he has is that legal

10   ownership interest as trustee is what's being transferred,

11   and it's being transferred to Mr. Despins as trustee of that

12   trust, then maybe that's okay.

13           MR. DESPINS:  Your Honor.

14           THE COURT:  Yes.  Go ahead.

15           MR. DESPINS:  That argument is preserved.  We're

16   not asking you to go all the way and find that the trust is

17   not valid.  We're preserving that issue for another date.

18   But he cannot have an advisory opinion saying that a trust

19   is valid.

20           As you pointed out in the interrogatories, it's

21   not question whether they've been filed or not in New York

22   State.  They're signed under penalty of perjury by Mr. Kwok.

23   And he never mentioned the trust, the trust that existed

24   five years or four years before.

25           So that's the state of the law.  That's how we

1   take our debtor.  The debtor said nothing about that trust.

2   And I'm -- I think we're being kind.

3        We're preserving their argument that there's a

4   trust for a later date, meaning it would be unfair to ask

5   you to rule that the trust is not valid.  We have serious

6   issues about it, but that's for another day.  That's what

7   the order provides.  It leaves that issue open for another

8   day.

9        THE COURT:  All right.  So, Mr. Henzy, did you --

10       MR. SARNOFF:  Your Honor, it's Stuart Sarnoff.

11       THE COURT:  Okay.  Hold on one second.

12       MR. SARNOFF:  Your Honor, I was just going --

13       THE COURT:  Go ahead, Mr. Sarnoff.  Go ahead.

14       MR. SARNOFF:  Your Honor, I was merely going to

15   point out that the Court's decision and -- decision and

16   order on motion with respect to PAX's motion for turnover,

17   not the transcript, but the written decision and order, was

18   filed.

19       We filed it in this court's docket on March 1st,

20   2022 as I believe docket number 57-2.  If I have my --

21   forgive me if my information is incorrect.  We were

22   scrambling.  But I think that's the correct information.

23       It's a Supreme Court in the State of New York

24   decision and order, and that would be the court's -- Justice

25   Ostrager's ruling on our motion for a turnover.  The

1    predicate of which was it was his asset that he needed to

2    turn over to PAX.

3              THE COURT:  You think it's at ECF what?  What

4    page?  57 at what page?

5              MR. SARNOFF:  Dash 2, Your Honor.

6              THE COURT:  It's just taking a minute to open.

7    I'm trying to see.

8              MR. DESPINS:  And, Your Honor, with your

9    permission, could we show on the Zoom -- I don't know --

10             THE COURT:  Yes.

11             MR. DESPINS:  -- my colleague -- put up the --

12             THE COURT:  Yes, we can.  What would you like to

13   show?

14             MR. DESPINS:  Show the paragraph that we've added

15   to the order so Mr. -- so they can see that.  It's a very

16   short paragraph.

17             THE COURT:  So we need to pull up ECF 681.  And

18   you want to go to the black lined version or the plain

19   version?

20             MR. DESPINS:  My colleague -- my colleague, Mr.

21   Bongartz, can tell us exactly where we have to go.

22             MR. BONGARTZ:  It's page 35 at 40.

23             THE COURT:  Okay.  We'll just need a minute, and

24   the clerk will pull it up so we can all read it.

25             MR. DESPINS:  Thank you, Your Honor.

Ho Wan Kwok - August 4, 2022                                45

1       (Pause)

2               MR. BONGARTZ:  And, Your Honor, while he's doing

3       that, I do have a page reference.  I guess -- I guess 57-2

4       is an exhibit.  I believe it's page 131 of the exhibit, 1-3-

5       1 of the exhibit.  Sorry.

6               THE COURT:  Thank you.

7       (Pause)

8               THE COURT:  We're just waiting on 681, right, to

9       be pulled up?  And go to page 35 of 40 on that, please.  I'm

10      looking at a hard copy of it, but I can -- I'm sure we can

11      pull it up in a second.

12              THE COURTROOM DEPUTY:  Yes.

13      (Pause)

14              THE COURT:  If you're having difficulty, I can

15      share my screen and show it.  Right?

16              THE COURTROOM DEPUTY:  Yes.

17              THE COURT:  Is there a --

18              THE COURTROOM DEPUTY:  (Indiscernible) problem

19      there.  Yes, she's having a problem.

20              THE COURT:  All right.  So then you need me to --

21      you need to let me share then.

22              THE COURTROOM DEPUTY:  Okay.  You can share.

23              THE COURT:  Okay.

24              THE COURTROOM DEPUTY:  You have ability.

25          (Pause)

1          THE COURT:  Is it showing?

2          THE COURTROOM DEPUTY:  Yes.

3          THE COURT:  I can't see because I can't know that

4     I'm sharing.

5          All right.  So this is the paragraph, Mr. Despins,

6     paragraph 9?

7          MR. DESPINS:  Yes.  Correct, Your Honor.

8          THE COURT:  Yeah.  Can everyone see that?

9        (No audible response)

10         THE COURT:  Okay.  Everyone can at least view

11    that?

12         Attorney Henzy, do you see that?  I'm not

13    suggesting that you can't have a recess to look at the whole

14    order.  I'm just asking do you see paragraph 9?

15         MR. HENZY:  I see it, Your Honor.

16         THE COURT:  Okay.  Thank you.  All right.  So,

17    Attorney Henzy, are you -- are you asking the Court for a

18    recess so that you can review this matter, or what are you

19    asking the Court to do at this point?

20         MR. HENZY:  I don't think I was asking the Court

21    to do anything, Your Honor.  If the Court would like, I'm

22    happy to take a recess and review this carefully.  I don't

23    know if it will take an hour.  I don't know if it will

24    require discussions with Mr. Despins or anyone else.

25         I will though -- I want to be clear, Your Honor,

1    that I am pressing my objection that this was not in the

2    motion that was filed.  And under Rule 9013 and relevant

3    case law, I think it's not properly before the Court.

4         So principally my argument is that you should not

5    rule on this and that you should tell Mr. Despins to file a

6    motion so that this can be done in an orderly way, as

7    opposed to this was first filed and raised at 10:09 on

8    Sunday night, Your Honor.  Okay.

9         So, again, this is -- this is not fair.  There's

10   not sufficient notice.  His support for the relief he's

11   seeking is not stated with particularity anywhere.

12   Certainly it's not in the motion.  And I don't think it's --

13   the revised proposed order that he has, it does not speak

14   for itself.

15        MR. DESPINS:  Your Honor, we filed a very broad

16   motion seeking all corporate governance rights and we

17   mention BVI specifically.

18        Mr. Henzy responded saying BVI, it's too late.

19   There's no -- you can't just -- you can't give an open-ended

20   order like that with respect to BVI.

21        We responded by saying, okay, we'll be very

22   precise.  That's exactly what we need from BVI.  That's

23   subsumed in the relief sought.  So I don't understand the --

24   but he got it Sunday.

25        The relief, again, this is very simple.  There's a

1  car, we need the key.  If we're to get the keys to Genever,

2  we need the debtor to sign all these documents so that the

3  transfer is processed.  That's very consistent with the

4  motion.  It didn't have to be more specific than that, but

5  now it's very, very specific and it's been very specific

6  since Sunday.

7            MR. HENZY:  I disagree, Your Honor.  I think it's

8  not -- it was not -- the relief that's sought now was not

9  part of the motion that was -- that was produced and filed.

10  So I'm going to -- I'm going to press that objection.

11            Again, if the Court or the parties think it makes

12  sense for us to take an hour recess so I can look at the

13  order and potentially talk to my client at least, I'm happy

14  to do that.

15            But I don't -- I don't want there to be a surprise

16  if I come back and I say something like irrespective of

17  what's in this order I'm objecting to the relief being

18  entered.

19            THE COURT:  Does anyone else wish to be heard?

20            MR. HENZY:  Your Honor, this doesn't need to

21  happen this way.  But the status in the Genever U.S. case is

22  the property is being sold under the supervision of Melanie

23  Cyganowski.  As I understand it the debtor there has

24  essentially handed control of that process over to Melanie

25  Cyganowski.

1    As I understand it, I don't think the debtor can

2    do anything to impede that process.  So nothing here is

3    going anywhere.

4         There's going to be a sale process.  The sale

5    proceeds I believe will be property of that bankruptcy

6    estate and I believe won't be distributed except pursuant to

7    court order, a court order entered by Judge Garrity.  So

8    there's no -- I don't think there's any rush here.

9         And, again, as with the discovery, the U.K.

10   discovery issue, Your Honor, if it's done the right way,

11   this might be a lot easier.

12        I don't think -- I don't think I'm creating the

13   agita here.  I think the trustee is creating the agita by

14   the way that he's choosing to do this, which is really just

15   to try to push them through on essentially no notice.

16        MR. DESPINS:  Your Honor, the reason for the

17   emergency is that we need to appear in the Genever case for

18   reasons I explained about of last year.  There are time-

19   sensitive issues.  We need to resolve them as soon as

20   possible.

21        And I don't want to go to that court and have

22   someone like Bravo Luck say, well, he doesn't have the right

23   to be here because he doesn't hold the shares.  I don't want

24   to be in that position, Your Honor.  That's why we're doing

25   this now.

Ho Wan Kwok - August 4, 2022                                50

1          Thank you.

2          MR. FRIEDMAN:  Your Honor, it's Peter Friedman.

3    If I may be heard for just a moment?

4          We strongly agree with that.  There's a plan on

5    file in that case which PAX has objected to.  But, you know,

6    it has all sorts of provisions that we think unfairly favor

7    certain parties that are aligned with Mr. Kwok.

8          And obviously the debtor as a -- we don't think

9    he's actually acted as a fiduciary in the context of that

10   plan proposal and we believe that it would be much more

11   appropriate to have Mr. Despins in whatever capacity dealing

12   with the debtor in an even handed manner that benefits Mr.

13   Kwok's legitimate creditors and so there actually is time

14   sensitivity.

15         I think there's a disclosure statement here -- and

16   at least currently scheduled for August 16th.  And the shape

17   of the river of that case could be substantially changed if

18   Mr. Despins' ability to participate in that case is made

19   clear.

20         THE COURT:  Right.

21         MR. GOLDMAN:  Your Honor, Irve Goldman for the

22   committee.  May I be heard briefly?

23         THE COURT:  Yes.

24         MR. GOLDMAN:  Your Honor, I think a distinction

25   has to be drawn between the equitable ownership of share

1   interests and the legal ownership of share interests which

2   carry with it corporate governance rights.

3        And I think it's unquestionable that the debtor

4   has acknowledged he's the legal owner of the shares and he

5   has exercised that legal ownership to control the

6   administration of the Genever USA Chapter 11 case. So that

7   is the subject of the motion.

8        And the trustee has acknowledged by paragraph 9 of

9   the order that the equitable interest by virtue of the trust

10  agreement cannot be determined at this point. So I'm not

11  sure what the argument is about.

12       Secondly, even under the case law that Attorney

13  Henzy cited regarding Rule 9013 and the need to be

14  particular about the relief granted, this is simply

15  incidental to the principal form of the relief that was

16  sought in the first instance. It just got more -- the

17  relief got more particular at the request of the debtor.

18       So we support completely what the trustee has

19  presented in the form of the proposed order.

20       I just want to go back for a minute to the

21  proposed letter to Attorney Morrissey before we break. And

22  these are -- these comments are really pro estate comments.

23       I think that the way the letter is drafted, the

24  revised letter, could suggest that the attorney/client

25  privilege belongs to the debtor. It does not.

1        I agree fully with the trustee that the trustee

2   holds the debtor's attorney/client privilege particularly

3   when it relates to a matter that seeks to augment the

4   estate.

5        Now, this letter states that -- in part the black

6   lined version states -- and to take instructions from him,

7   meaning the trustee, in relation to my claim in the UBS

8   litigation regardless of any attorney/client privilege, work

9   product, or other privilege which belongs to me.

10       I would suggest that the word may be inserted,

11   which may belong to me, and then the following sentence.

12   Any waiver of privilege is limited to the provision of this

13   information to the trustee.  My consent is limited to giving

14   full access to the trustee and is not a consent by me to

15   allow the trustee to waive the privilege.

16       I don't want that sentence to be taken to mean

17   that we need Mr. Kwok's allowance to the trustee to waive

18   the privilege.  The privilege belongs to the trustee in the

19   first instance.

20       So I would suggest if it wouldn't upset the

21   agreement that the trustee reached, or apparent agreement

22   the trustee reached with the U.K. firm that these provisions

23   be massaged somewhat to -- not be taken to concede that it's

24   the trustee that has the privilege.

25       MR. HENZY:  Your Honor, may I be heard?

1          THE COURT:  Yes.

2          MR. HENZY:  Thank you.

3          Mr. Goldman can hope, we can all,  but I will tell

4     you that that letter I'm aware has gone through several

5     iterations between U.K. counsel and Mr. Despins' firm.  And

6     I think the U.K. counsel is taking a pretty careful approach

7     and they're -- they are very concerned about their own

8     professional obligations.

9          In response to something that Mr. Goldman said,

10    the trustee holds the privilege.  We're talking about

11    privilege under U.K. law, Your Honor.  We're not talking

12    about attorney/client privilege under U.S. law.

13          There's new litigation pending in the U.K.  Mr.

14    Goldman may have some expertise on privilege under U.K. law.

15    I'll admit I have none.  I'm relying on what U.K. counsel

16    has stated to me.

17          So I don't think it's as simple as this is what

18    the bankruptcy code says when a trustee is appointed vis-a-

19    vis privilege.

20          There's a -- how the privilege works in the U.K.

21    is how it works in the U.K.  So I don't think -- I don't

22    know that anybody on this hearing can with any authority

23    speak on that, on how the privilege works in the U.K.

24          So I think -- I think it's dangerous to -- to be

25    -- I'm trying to wordsmith -- when we frankly don't know

1    that we really know we're talking about.

2         MR. DESPINS:  Your Honor, if I may?

3         I totally feel Mr. Goldman's pain.  I feel the

4    same pain.  He is correct.  Except that here, you know, this

5    is -- I think this could turn out to be a fool's errand,

6    meaning that they could play a game where the letter is sent

7    and they say, oh, we're not going to share anything with you

8    because he hasn't waived the privilege or anything like

9    that.  Of course, we'll be back to Your Honor.

10        The important thing is Your Honor or the trustee

11   are not taking the position.  The letter is being sent by or

12   is supposed to be sent by Mr. Kwok to counsel and that's his

13   letter.

14        We're not -- the trustee is not taking the

15   position that that's the correct view under U.S. law.  It is

16   my price of admission apparently to see what's behind the

17   curtain.  And if it's there's nothing behind the curtain,

18   I'll be back to Your Honor.  I hope that I will see what's

19   behind the curtain.

20        And I think the same thing as Your Honor.  But

21   because you're directed to send the letter doesn't mean that

22   you agree that I don't have access to the privilege.  It's a

23   -- it's a practical solution.  And I am -- this will be rare

24   event.

25        I would be aligned with Mr. Henzy on this.  I

1    would not try to wordsmith the letter today on this if we

2    can.  And I am not naive.  I know this -- this could be a

3    setup where, in fact, there's nothing behind the curtain and

4    I'll be back before Your Honor.

5              Your Honor is not ruling that the privilege does

6    not belong to me.  It's just directing the debtor to send

7    that letter.  So I want to be --

8              So, Mr. Goldman, I understand his point

9    completely, but I would urge the Court not at this stage to

10   play with the language.

11             Thank you.

12             THE COURT:  Thank you.

13             MR. GOLDMAN:  Your Honor, I think with that, with

14   that caveat, you know, I think I would be fine as long as we

15   recognize that no ruling here -- there's no ruling on

16   whether the trustee holds a privilege and -- or whether it's

17   Mr. Kwok.

18             I think there is an issue, given that this is an

19   asset of a bankruptcy estate in the U.S., whether, you know,

20   it's U.S. or U.K. law that governs a privilege -- but we --

21   I agree with Mr. Despins that it's not necessary to make

22   that determination today.

23             THE COURT:  And the motion doesn't ask --

24             MR. HENZY:  I think it's really not necessary

25   because --

1          THE COURT:  The motion doesn't ask for --

2          MR. HENZY:  -- as I said --

3          THE COURT:  Hold on a second, Attorney Henzy.

4          And the motion doesn't ask for that determination

5     to be made.  So I'm not making that determination.

6          Sorry, Attorney Henzy.  Go ahead.

7          MR. HENZY:  Well, Your Honor, actually the motion

8     doesn't address the Harcus Parker issue at all in any way,

9     shape or form.

10         We can argue about whether the action on BVI is

11    incidental to the motion that was filed, and I think it

12    wasn't, but I don't think there really is an argument that

13    the Harcus Parker issue is part of that motion.  It's just

14    not there, Your Honor.

15         And I'll say again I think that the right way to

16    do this where, you know, it may be that we can get to

17    (indiscernible) place, and this -- this is not it.

18         In terms of talking about the contents of the

19    letter, Mr. Kwok is not going to waive, voluntarily waive,

20    attorney-client privilege.  He's not going to do it.  And as

21    I said I'm not going to compel him to do it.  So it may be

22    that if you're going to enter an order we're going to get to

23    -- we're going to get to a contempt, but he's not going to

24    do it.

25         So I don't know how much time we need to spend on

Ho Wan Kwok - August 4, 2022                    57

1     the language of that, of that letter.

2              THE COURT:  Well, I'm going to take a recess until

3     3:30.  And then we'll come back and see if you've had any

4     discussions.  And if not, we'll go from there.

5              MR. HENZY:  Right.  Thank you, Your Honor.

6              THE COURT:  All right.  Court is in recess until

7     3:30.

8         (Recess from 2:25 p.m. until 3:31 p.m.)

9              THE COURTROOM DEPUTY:  The United States

10    Bankruptcy Court in the District of Connecticut is now in

11    session after recess.  We remain on case number 2022-50073,

12    Ho Wan Kwok.

13             THE COURT:  Okay.  Good afternoon.  We're back

14    after recess.

15             When we took a recess, the parties were going to

16    attempt to talk and look at a proposed order that was filed

17    on the docket today by the Chapter 11 trustee.

18             So, Mr. Despins, where do things stand after a

19    recess?

20             MR. DESPINS:  I'll let Mr. Henzy provide more

21    detail because it's really the ball is in his camp.  But we

22    -- we did talk about one aspect -- well, we talked about all

23    aspects, but one might be resolved, so maybe Mr. Henzy can

24    address the Court on this.

25             THE COURT:  Okay.  Thank you.

Ho Wan Kwok - August 4, 2022                                    58

1          Mr. Henzy?

2          MR. HENZY:  Sure.  So, Your Honor, with that

3     additional paragraph 9, you know, the Court -- the Court

4     enters an order directing Mr. Kwok to sign these -- the BVI

5     share transfer document and the resolution and the -- the

6     so-called transfer impact of (indiscernible) fiduciary, that

7     Mr. Kwok is going to do that.

8          Just for the record, I believe that, you know, the

9     trust agreement itself does prohibit Mr. Kwok from

10    transferring the shares, but he is not doing so voluntarily.

11    He's being forced to by a court.  Whatever flows from that

12    flows from that I believe.

13         And whatever other rights any party has as a

14    result of Mr. Despins becoming the -- whatever he's

15    becoming, the legal owner, trustee under a trust, et cetera,

16    whatever he is, flow from that, I just -- the debtor is not,

17    you know, certainly not opining on what may flow from it.

18    And I don't think I want the debtor to be accused of having

19    failed to fully inform people or anything like that.

20         But all that being said, with that paragraph 9,

21    the debtor is not going to object to the entry of that

22    portion of the order.

23         THE COURT:  Okay.  Thank you.

24         MR. DESPINS:  Your Honor, just two seconds on

25    this.

1          The transfer occurred on July 8th when I was

2     appointed.  The bankruptcy code made that transfer happen.

3     What we're doing here is we're documenting the transfer.

4     Again, you own the car.  The car became the trustee's car,

5     not personally, but in a trustee capacity, and now we're

6     dealing with the registration to make sure it's endorsed and

7     all that.

8          The transfer occurred on July 8th by operation of

9     law.  I think that's very important to -- to understand

10    that.  But, you know, it is what it is.  So we're -- I think

11    we're happy that this aspect of it was resolved.

12          MR. HENZY:  And just for the record, I hear Mr.

13    Despins' position.  I don't agree with it.  But, again, this

14    aspect of it is resolved because Mr. Kwok, upon being

15    ordered to do so, is going to sign these documents.

16          THE COURT:  Okay.  Then what is left is the issue

17    of the letter to counsel in -- to the firm in London.  Is

18    that the remaining issue?

19          MR. HENZY:  So, Your Honor, just to be clear, I

20    had filed -- after the motion itself was filed, but before

21    the revised proposed order was filed, I filed an objection

22    raising other objections and I have not waived those

23    objections.

24          I know at the last hearing you told me that -- and

25    I can't remember your exact words, you were inclined or you

1    had -- to overrule those objections.  But I want to be clear

2    that I am not waiving those objections.  That I'm pressing

3    those objections.  And I'm happy to be --

4              THE COURT:  Well, let's make the record clear then

5    because --

6              MR. HENZY:  I would like to be --

7              THE COURT:  -- I need to know what you're

8    objecting to.

9              MR. HENZY:  Thank you, Your Honor.

10             THE COURT:  You're objecting to the fact that Mr.

11   -- that Mr. Despins didn't file an adversary proceeding to

12   have the property turned over to him?

13             MR. HENZY:  Your Honor, I think that issue is

14   resolved.

15             THE COURT:  Well, I need to know that.  When you

16   say you think that issue is resolved, if it's not, I'm going

17   to rule on it, so you need to tell me whether it's resolved.

18             MR. HENZY:  Now, Judge, I'm sorry.  I think I was

19   being unclear.

20             The argument that this needs to be done by

21   adversary proceeding, that argument has gone away because

22   that related to this share transfer that we just told you is

23   resolved and going to happen.

24             So when I'm referring to my other objections, if

25   dial back to the motion as originally filed -- give me one

Ho Wan Kwok - August 4, 2022                                    61

1    second, Your Honor --

2              THE COURT:  Sure.

3              MR. HENZY:  -- the motion as originally filed,

4    which is document 598 --

5              THE COURT:  ECF 598.  Right.  And you're saying

6    you still want to preserve your objection that the trustee

7    didn't specifically reference section 521 of the code?

8              MR. HENZY:  No.  So, Your Honor, on July 29, I

9    filed an objection.  It's document number 643.

10             THE COURT:  Yes.  I understand.

11             MR. HENZY:  Okay.  Okay.  And I raised objections

12   to the relief that was originally sought in the motion that

13   has nothing to do with Harcus Parkus -- I keep saying Harcus

14   Parkus, which sounds terrible -- but Harcus Parker and then

15   the share issue that we resolved.  I raised other objections

16   that we haven't talked about at all today.

17             THE COURT:  Okay.  Well, go ahead then.

18             MR. HENZY:  And, again --

19             THE COURT:  I want to know what it is specifically

20   you are still objecting to.

21             MR. HENZY:  Okay.  And maybe, Your Honor, the --

22   to try to be -- to try and like to be clear, I am objecting

23   to -- give me one -- I'm sorry, Your Honor.  Give me one

24   second.

25             THE COURT:  That's fine.

1      (Pause)

2          MR. HENZY:  I'm sorry. I'm getting all these

3    orders straight.

4          So in the objection that I filed on July 29, if I

5    -- if I look at the -- the easiest way to organize it might

6    be the order that was filed this afternoon just before the

7    hearing, which is document no. 681.

8          THE COURT:  Yes.  Go ahead.  I'm listening.  I'm

9    not sure where you're going.  I thought we were going to --

10          MR. HENZY:  Okay.  I just want --

11          THE COURT:  -- talk about what you're --

12          MR. HENZY:  I want -- Judge, I'm sorry.  I just

13    wanted to try to tie back to the objection I filed on July

14    29.

15          THE COURT:  Okay.

16          MR. HENZY:  Okay.  It's paragraph 2 -- and this is

17    -- this is -- putting aside --

18          THE COURT:  Paragraph 2 of what, the order or your

19    objection?

20          MR. HENZY:  Of the order.

21          THE COURT:  Paragraph 2 of ECF 681.

22          MR. HENZY:  Correct.

23          THE COURT:  You're objecting to what?

24          MR. HENZY:  Okay.  I'm objecting to paragraph 2,

25    although, again, we've dealt with the BVI issue.

1          But this, the relief sought here asks for very

2     broad relief with respect to entities that are not

3     specified, the authority to replace any existing officer,

4     director, manager or similar person.

5          So Mr. Despins is seeking this court to give him

6     authority over entities that are not specified without

7     regard to those particular entities, what applicable law,

8     non-bankruptcy law governs those entities and what the

9     organization documents of those entities might provide.

10          I don't think, Your Honor, that this works.  I

11    think that this type of authority -- with Mr. Despins, I

12    think he has the authority that he has, and this goes -- and

13    I'm not disputing any particular authority he has with

14    respect to any entities because I don't know what entities

15    we're talking about.  But what this provision would do is

16    give him authority that may not be provided for under

17    applicable non-bankruptcy law and the governing documents of

18    particular entities.

19          THE COURT:  Can't that just be --

20          MR. HENZY:  And the cases that Mr. --

21          THE COURT:  Can't that just -- can't we just fix

22    that problem by saying that -- you're talking about for the

23    avoidance of doubt language, that sentence?

24          For the avoidance of doubt, that foregoing rights

25    include the trustee's asserted authority.  He's asserting he

1    has the authority.  If he doesn't and he does something

2    wrong, then you can sue him.

3            MR. HENZY:  Actually, Your Honor, I mean, I think

4    I put this in my response, which is, if this paragraph had

5    just been made -- made subject to applicable non-bankruptcy

6    law and the governing documents of these entities, then I --

7    then I would have no objection to this provision.

8            Again, I'm not trying -- I'm not trying to create

9    an issue here.  I really am not.  But I think that that is

10   the correct statement of law.  He has whatever authority he

11   has as trustee, but with respect to any particular entity,

12   it is subject to applicable non-bankruptcy law and the

13   governing documents of that entity.  That's all.

14           MR. DESPINS:  Your Honor, if we do, we do.  If we

15   don't, we don't.  But I don't want to open satellite

16   litigation over these issues with the debtor because that's

17   how the fees are going to be -- you know, going to get out

18   of control in this case.

19           The reason we asked for blanket authority is

20   because we will not exercise that right unless we believe

21   through due diligence we have the power to do it.  And if

22   we're doubtful, we'll come back to the Court.

23           But we cannot be in a position where there's a

24   satellite litigation open whether -- what state law

25   provides, what foreign law provides, because that's a --

1    that's going to be another case basically.

2         MR. HENZY:  Judge, the last thing that Mr. Kwok

3    wants to do is engage in litigation over how these entities

4    are going to be governed.

5         But if Mr. Despins is saying to you he -- after

6    doing his diligence, that he would only do what he has the

7    power to do, then I don't know -- all I want is to say that

8    in this order, but I think that's not what this order says.

9         THE COURT:  Well, I think that a --

10        MR. HENZY:  It goes -- it goes beyond that.

11        THE COURT:  -- I think my suggestion works.  For

12   the avoidance of doubt, the foregoing rights include the

13   trustee's asserted authority to replace any existing

14   officer, director, manager or similar person of the debtor-

15   control entities.  And then the next sentence says as part

16   of the foregoing.

17        So the point is he's asserting he has this

18   authority.  He's acting as a trustee.  So that's what he's

19   asserting.  And that's what I'm going to -- I'm going to add

20   the word assert.  And that's all I'm going to change in

21   paragraph 2.

22        MR. HENZY:  Thank you, Your Honor.

23        Just to be clear, I'm not -- I am not -- I am

24   pressing my objection to that, that language.

25        THE COURT:  Understood.  That objection's

1    overruled.

2            So what's your next objection?

3            MR. HENZY:  Okay.  Again, I'm trying to simplify

4    here, Your Honor.  Is I have no objection on -- to the first

5    decreedal paragraph of paragraph 3.

6            And then now with this resolution on BVI that we

7    had just told you about, to that -- then that -- as you go

8    over to page 3, that little (a), I have no objection to that

9    paragraph.  Then that's been resolved.

10           The next paragraph down on that page, paragraph

11   (b), we've discussed that at length, the -- on the U.K.

12   issue, the UK/UBS litigation issue and I maintain my

13   objection on that issue.

14           On paragraph --

15           THE COURT:  Hold on.  Just wait a minute.  I'm

16   just writing this down.

17           So what else are we going to discuss about (b)?  I

18   think the arguments have been made, correct?

19           MR. HENZY:  I think the arguments have been made,

20   Your Honor.  I don't want to belabor anything.

21           THE COURT:  Okay.

22           MR. DESPINS:  But, Your Honor, I just want to add

23   briefly to that the only privilege information we're seeking

24   is with respect to the merits of the affirmative claims of

25   Mr. Kwok against UBS.  No other issues.

1    So, for example, crazy example, Mr. Kwok, in the

2    context of that representation, said, oh, by the way, I've

3    transferred an interest in a private jet to my daughter.

4    I'm not -- I'm not seeking that.  That's not part of the

5    affirmative claim of Mr. Kwok against UBS.

6    So that privilege that the -- that Your Honor is

7    directing him to send a letter about is the privilege

8    regarding that litigation, that affirmative litigation,

9    only.  I want to make sure the record is clear about that.

10    MR. HENZY:  And, Your Honor, I'd like to be clear.

11    I understand Mr. Despins' position.  I'd like to be clear

12    that I believe Mr. Despins owns whatever -- I assume, again,

13    I don't know U.K. law -- he owns whatever privilege he owns

14    and Mr. Kwok has whatever privilege he has, if any.

15    And Mr. Kwok is -- to the extent he has any

16    privilege, he is not going to waive it.  But, again, I think

17    we've made -- I've made the argument that I have to make on

18    that.  I think.

19    THE COURT:  Okay.  The objection to the language

20    in paragraph (b) on page 3 of the proposed order is

21    overruled.

22    MR. HENZY:  Thank you, Your Honor.

23    THE COURT:  So what's your next objection?

24    MR. HENZY:  On paragraph 4, on page 4, Your Honor,

25    that essentially is a blanket authorization to the trustee

1    to act outside of the ordinary course of business with

2    respect to so-called debtor controlled entities.  And I

3    object to that.  Frankly, I've never heard of or seen that.

4         My understanding of bankruptcy code Section 353 is

5    that when a debtor trustee -- debtor out of possession

6    trustees wants to act out of the ordinary course of

7    business, they need to notice a hearing, come and ask for

8    the Court's authority to do that.  And this would make it so

9    that there doesn't have to be notice and a hearing.

10        And, again, this is a blanket authority.  And I

11   think that is not provided for in the code.  I think that is

12   just extraordinary relief and I don't think it's

13   appropriate.

14        MR. DESPINS:  Your Honor, on that point, it's the

15   same argument as to applicable law.  We don't want to be in

16   a position where later it is argued that we acted outside of

17   the ordinary course of business.

18        And the safe valve -- the safety valve, is at the

19   end of paragraph 4 where it says for the avoidance of doubt

20   nothing in this order authorizes the trustee to sell,

21   otherwise dispose of, lease or encumber any equities that

22   are controlled entities or other assets of the debtor.

23        So, yes, the language is broad, but then it's

24   completely narrowed at the end to avoid the type of concern

25   that have been raised.

1          The reason we need the opening language is we

2     don't to be in a position where we're litigating over, well,

3     you know, you terminated or you removed a director, an

4     officer.  You shouldn't have done that.  That's not --

5     that's not in the ordinary course of business, and we have

6     all these satellite litigation over whether we acted within

7     -- with (indiscernible).

8          We believe that we should get both reliefs as long

9     as the safety valve is in there which protects the estate,

10    no sale, no lease of property without a court order.

11         Thank you.

12         THE COURT:  Does anyone else --

13         MR. HENZY:  I see -- I see the limitation, Your

14    Honor, but I still think -- I don't think there's any such

15    thing as blanket authorization to act out of the ordinary

16    course under 353.

17         MR. DESPINS:  That solely to exercise corporate

18    governance rights, Your Honor.  Nothing else.

19         MR. FRIEDMAN:  Your Honor, may I be heard -- it's

20    Peter Friedman -- for just a moment?

21         The order that was originally proposed did not

22    include that language that Mr. Despins put in and we thought

23    it was extremely important.

24         And, you know, I think had that language not been

25    in there, as creditors, we would have objected.  But we

1  found that that addition to be -- to represent I think an

2  extremely good faith move by the trustee in balancing the

3  economic interests of creditors, which I think has to be

4  paramount, with efficiency.

5            So we strongly support the inclusion of that

6  particular paragraph with the protective language that was

7  added at our request.

8            THE COURT:  Thank you.

9            Does anyone else wish to be heard on paragraph 4?

10      (No audible response)

11           THE COURT:  Okay.  I'm just reading the language

12  again.

13      (Pause)

14           THE COURT:  Okay.  Anything further from anyone on

15  paragraph 4?

16      (No audible response)

17           THE COURT:  While I understand the objection,

18  Attorney Henzy, I'm overruling it because I think that the

19  language -- it is specific to the economic and governance

20  rights with respect to the debtor-controlled entities.  And,

21  you know, if litigation ensues about that, then it can

22  ensue.  But we're not going to -- it is -- it is qualified

23  by the last sentence and I think it's protective enough of

24  the debtor.

25           MR. HENZY:  Thank you, Your Honor.

Ho Wan Kwok - August 4, 2022                              71

1      THE COURT:  So what is your next objection?

2      MR. HENZY:  And, Your Honor, great news, I have no

3  objection to paragraph 5.

4      THE COURT:  Okay.  Thank you.

5      MR. HENZY:  On paragraph 6, the -- so paragraph 6

6  provides debtor shall not interfere with, hinder or delay

7  trustee's exercise of authority on this order.

8      I have no objection to the first sentence of

9  paragraph 6.  However, the second sentence would restrict

10  the debtor's ability to seek relief and it would restrict it

11  to seek relief from this court.

12      And I don't -- I don't know that the debtor ever

13  would seek relief.  But because particularly for the fact

14  this paragraph 4 and the broad authority that Mr. Despins is

15  being granted there, I don't know what might occur here.

16      I don't know what rights, if any, the debtor would

17  have to do anything.  But I don't think the debtor -- to the

18  extent that the debtor otherwise would have a right to seek

19  relief, I don't think it should be restricted by this order.

20      So I would ask that the second sentence of

21  paragraph 6 be struck from the order.

22      MR. DESPINS:  Your Honor, same issue.  The debtor

23  is before this court.  He has worldwide assets.  From your

24  perspective you have exclusive jurisdiction over that.  We

25  cannot have the debtor running in foreign courts to assert

1    claims.

2           It may be that he comes, Your Honor, but, you know

3    what, there's a real important twist on the U.K. law

4    regarding issue XYZ there.  And you might decide, yeah,

5    you're right, go for it or something like that.  But

6    everything needs to be centralized in this court by this

7    debtor.  He cannot have satellite litigation elsewhere.  And

8    they have the ability to come to this court for relief.  So

9    that's a very important position, Your Honor.

10          MR. HENZY:  Your Honor, the way this order is set

11   up, Mr. Despins can run to other courts including courts in

12   foreign countries.

13          MR. DESPINS:  That's correct.

14          MR. HENZY:  So the way that this would now be set

15   up is Mr. Despins decides he's going to go to a court in

16   this country or a foreign country and the debtor, even

17   assuming under the law of that foreign country, the debtor

18   has a right to appear and do whatever a debtor is going to

19   do. This order says the debtor can't do that.

20          And it says the debtor I guess would have to come

21   back to you and say to you Mr. Despins is doing this thing

22   in a foreign court and I'm in front of you telling you he

23   shouldn't be doing it because I've been told I can't go to a

24   foreign court to make the argument that under the foreign

25   court law I'm entitled to make.  And that doesn't -- that

1    does not make any sense to me.

2                MR. DESPINS:  Your Honor --

3                MR. HENZY:  If Mr. Despins is going to have the

4    ability without seeking court authority to go to other

5    courts, then -- again, Your Honor, you said it, you take the

6    debtor as he comes.  The debtor should be able to go do

7    whatever the debtor has a right to do under the foreign law.

8                THE COURT:  Well, the problem is --

9                MR. DESPINS:  Your Honor --

10               THE COURT:  -- Mr. Despins is the debtor and so he

11   already has the rights.  He doesn't need authority from this

12   court to do what he's doing in the actions that are already

13   pending in which the debtor is a party.

14               So your argument, while I understand it to an

15   extent, the problem is what right would Mr. Kwok have to do

16   anything in any of those foreign courts if Mr. Despins has

17   now become Mr. Kwok?

18               MR. HENZY:  Well, Mr. Despins is not --

19               THE COURT:  Which you've admitted in your papers

20   that as soon as the filing of -- as soon as the order

21   appointing the trustee was approved, that Mr. Despins became

22   Mr. Kwok.  So what possible rights would Mr. Kwok have?

23               MR. HENZY:  Well, Your Honor --

24               THE COURT:  Mr. Despins has stepped into all of

25   those rights.

1          MR. HENZY:  I think I agree.  I didn't -- I don't

2     think I said Mr. Despins became Mr. Kwok.  And I'm going to

3     guess Mr. Despins doesn't want to be Mr. Kwok, but he

4     absolutely is substituted for Mr. Kwok in any pending

5     litigation.

6          But I don't think that the way this order is set

7     up it's not just pending litigation, Mr. Despins can

8     commence new litigation that the debtor might or might not

9     even be a party to.

10          Now, what rights in particular in a foreign

11     jurisdiction Mr. Kwok might have as a debtor out of

12     possession?  Your Honor, I don't know.  He may or may not

13     have any.  He may not have any rights.  So I don't know

14     because I don't know what jurisdiction we're talking about.

15     I don't know what entity we're talking about.  I don't know

16     what action it is that Mr. Despins would be taking.

17          So I'm perfectly -- look, the way, again, this is

18     set up is Mr. Despins can go do whatever he's going to do,

19     only to the extent that under some applicable foreign law

20     Mr. Kwok would have a right to show up and do something --

21     and he might not, he might not, Your Honor, he should be

22     able to do that.  I don't -- I don't think he should have to

23     come back to this court to find out whether or not he has a

24     right to show up in another court under non-bankruptcy --

25     applicable non-bankruptcy law.

1          MR. FRIEDMAN:  Your Honor, may I be heard for a

2     moment on this issue?  It's Peter Friedman.

3          I think it is really important because I think the

4     issue is, you know, in any premise, Mr. Kwok's going to have

5     to determine if he has standing given the insolvency of his

6     estate.

7          So I think it's actually critical, given that he

8     said he has $3,850, that before he goes to another court and

9     be permitted to litigate, that he actually would show that

10    he would have permission to interfere with the trustee's use

11    of debtor property given his economic -- where the economics

12    of this exist.  I think that's an issue that really has to

13    be made to determine with reference to U.S. bankruptcy law

14    and his rights.

15         So I actually think what Mr. Despins as proposed

16    is extremely appropriate.  It certainly is a prudent measure

17    and when the (indiscernible) bankruptcy determination as to

18    whether he even has standing to have standing to be heard.

19         MR. HENZY:  Your Honor, just to pose a

20    hypothetical.

21         Let's say Mr. Despins goes to a foreign court and

22    in the foreign court seeks to compel Mr. Kwok to do the kind

23    of things that he sought to do with this order.  He seeks to

24    compel him to execute a document, let's say a corporate

25    document.  Then I don't -- I mean, would anyone say that Mr.

Ho Wan Kwok - August 4, 2022                                    76

1    Kwok wouldn't have standing in that foreign court to tell

2    the judge in the foreign court, well, I shouldn't have to

3    execute this document for whatever reason.

4            And the judge may say, you're wrong, you have to

5    execute the document.  The judge is going to say whatever

6    the judge is going to say.  But how could Mr. Kwok not have

7    the right to show up in that foreign court -- and it's

8    before a judge -- before a judge can say to Mr. Kwok I don't

9    believe you have standing for whatever reason.  And Mr.

10   Despins can tell the judge, the foreign judge, Mr. Kwok

11   doesn't have standing.

12           So how can Mr. -- in my hypothetical, how can Mr.

13   Kwok not have the ability to show up in court and

14   potentially defend his rights to the extent that he has any?

15           MR. FRIEDMAN:  Your Honor, I won't speak for Mr.

16   Despins, but I don't understand the order as depriving Mr.

17   Kwok of the ability to defend himself if there's a matter in

18   a different court.

19           But if he's seeking to initiate litigation, I

20   think he would certainly have to come to this court.

21           MR. HENZY:  Well, that's not what the order says.

22           MR. DESPINS:  In any event, Your Honor, the point

23   is that the Court has exclusive jurisdiction over Mr. Kwok.

24   He needs to come back to this court.  And, in fact, if there

25   are compelling circumstances, you will authorize him to go

1    to Australia, for example, to defend some action to see that

2    (indiscernible).

3              The point is that he should not be roaming around

4    and having the ability to disrupt what we're doing around

5    the world without coming to Your Honor to say this is what

6    I'm doing.  I have (indiscernible) particularized injury

7    that somehow I'm able to assert even though I'm out of

8    possession.  Well, that argument should only be made to Your

9    Honor.

10             And then if you find it compelling, you'll send --

11   you'll authorize him to do whatever he wants abroad.  But

12   you cannot have him running around in this.  It's just

13   fundamental, Your Honor.

14             MR. HENZY:  But, Your Honor, arguably what this

15   order is doing though you are giving up a certain degree of

16   jurisdiction to Mr. Despins, meaning you're telling him that

17   he can act out of the ordinary course of business without

18   coming and asking permission from you.

19             But then what Mr. Despins and Mr. Friedman are

20   essentially arguing is but you -- but you hang on with

21   respect -- let's say to the same matter, you hang on to

22   jurisdiction with respect to the debtor.

23             So Mr. Despins can do whatever he wants to do, but

24   Mr. Kwok can't respond to that.  And that seems it should be

25   one way or the other.

1    If Mr. Despins wants to come back and make a

2    motion to act out of the ordinary course of business and the

3    debtor has to respond to that in bankruptcy court, that's

4    okay.  But if he's going to not have to do that, then I

5    think the debtor should be able to show up wherever he's

6    doing things and respond to the extent that he has a right

7    to do so.

8        MR. DESPINS:  Your Honor, the debtor and the

9    trustee are not on equal footing.  This concept that somehow

10   because we have the right to do it they should.  That's not

11   the way it works.

12       THE COURT:  Well, I was going to make that point.

13   The point is Mr. Despins is an independent third party who's

14   been appointed to run the -- administer the estate of Mr.

15   Kwok.

16       It's the language says in the second sentence to

17   the extent the debtor opposes the trustee's exercise of

18   authority, okay, the debtor shall be limited to seeking

19   relief from this court on notice to parties in interest to

20   the extent the debtor can show he has standing to do so.

21       And, unfortunately, given wherefor the debtor --

22   given what he's stated in all of his filings, and as we've

23   talked before, there is no evidence before this court, and

24   nothing in the record -- in fact, the only things in the

25   record support that the debtor will have no interest in this

Ho Wan Kwok - August 4, 2022                                79

1    estate because there won't be any -- a full payment to

2    creditors in this case.  And so there will not be any

3    surplus to which the debtor would have standing to raise

4    such arguments.

5              And if Mr. Despins does something outside of his

6    authority, then the debtor still has the right to make that

7    argument.  But he has to make it here in this court subject

8    to this court's authority over this estate.  And that's one

9    of the, you know, results of the appointment of a Chapter 11

10   trustee.

11             So, again, while I understand your argument, it

12   doesn't foreclose the debtor from opposing the trustee's

13   exercise of authority, but he has to do it in this court.

14             And so I'm going to overrule your objection to

15   paragraph 6.

16             MR. HENZY:  Thank you, Your Honor.

17             Just as an aside, just saying, the damage claim in

18   the UBS litigation in the U.K. is $500 million.  I have no

19   knowledge of the strength --

20             THE COURT:  That claim wasn't listed as an asset

21   of this estate, Mr. Henzy.

22             MR. HENZY:  Oh, no, it was.

23             THE COURT:  No.  It actually wasn't originally.

24             MR. HENZY:  I believe it was.

25             THE COURT:  No.  I think it was not.

Ho Wan Kwok - August 4, 2022                                      80

1        MR. HENZY:  Okay.  I'll go -- I'll go back and

2   check, but I thought that it was.

3        But in any event, I don't -- I don't think the

4   debtor would dispute at all that to the extent that it

5   wasn't in the schedules, Your Honor, it should have been.

6   And I think the debtor absolutely --

7        THE COURT:  Well, maybe it was.  So let me just --

8   let me go back in the global notes which aren't really notes

9   -- which, again, there's no authority for any debtor, that

10  I'm aware of under the bankruptcy code, under case law,

11  under statute, under local rules, under the federal rules,

12  to file global notes to your -- to your schedules to disavow

13  what you say in your schedules under penalty of perjury.

14  I've never seen or heard of such a thing, but I understand

15  that's now becoming something that people do.

16       But that doesn't -- that doesn't mean that the

17  global notes have any bearing on whether or not Mr. Kwok

18  accurately completed his schedules.

19       All that being said, even if he did list it, it's

20  a $500 million claim with two other plaintiffs, correct?

21       MR. HENZY:  Yes, but --

22       THE COURT:   So it would be split three ways,

23  correct?

24       MR. HENZY:  Under --

25       THE COURT:  And the claim of -- the claim of PAX

Ho Wan Kwok - August 4, 2022                                         81

1    that your client did put in his schedules, actually on a

2    schedule, is -- he listed it as not less than $254 million,

3    I believe, maybe it's 53.  I haven't looked at it recently.

4          But in any event, the solvency of your debtor, of

5    your client, is still very much at issue in this case.

6          MR. HENZY:  I don't -- I don't disagree with that

7    at all, Your Honor.

8          THE COURT:  Okay.

9          MR. HENZY:  I'm just pointing out that you're not

10   -- I have no idea of what the strength or weakness of the

11   claim in the U.K. is and what percentage --

12         THE COURT:  I understand.

13         MR. HENZY:  -- if that's so.

14         THE COURT:  But he'll have -- he'll have to come

15   back here and explain why he opposes the trustee's exercise

16   of authority.  And he'll be heard.

17         MR. HENZY:  Okay.  Understood.  My objection on --

18   I understood.

19         THE COURT:  Maybe.

20         MR. HENZY:  That objection's overruled.

21         THE COURT:  Depending upon if he has standing,

22   okay, at that point in time.

23         MR. HENZY:  Understood, Your Honor.

24         THE COURT:  So that -- so that, I overruled your

25   objection to paragraph 6, the language in paragraph 6 we

1    just discussed on the record.

2              MR. HENZY:  Thank you, Your Honor.

3              THE COURT:  So what is your next objection?

4              MR. HENZY:  The last objection is on paragraph 7.

5              THE COURT:  Okay.

6              MR. HENZY:  So this asks for an order where --

7    that provides that you request the assistance of foreign

8    courts, including the assistance of the BVI court regarding

9    any request of the trustee for relief with respect to the

10   trustee exercising corporate control over Genever BVI.

11             I would -- I'm absolutely not going to tell the

12   Court what it ought to be telling other judges, but I just

13   -- I think that is very, very broad.

14             And the way I read this is it would sort of give

15   Mr. Despins this court's impromatur to go in front of

16   another judge and say please give this to me -- and Judge

17   Manning tells you that you ought to give it to me, even if

18   you, Your Honor, don't know that -- what it is that he's

19   telling another judge that it is that he wants.

20             THE COURT:  Okay.

21             MR. DESPINS:  So, Your Honor, this type of

22   language is often used in the foreign, you know, foreign

23   representative context.

24             I'm happy -- obviously, you don't know me and you

25   may not be comfortable giving me a blank check and I don't

1   think this is a blank check -- but it's really an indication

2   to foreign courts that it may not be (indiscernible) as U.S.

3   courts that this court is requesting their assistance not to

4   do something illegal or inappropriate, but in requesting

5   their assistance.

6           That's kind of run of the mill language, but I was

7   always told never raise section 105 in front of Judge

8   Manning, so I'm not going to raise it.

9           But it's something along those lines.  So if you

10  -- I'm happy with it or without it.  I'd rather have it in,

11  but I'm not going to -- I don't want to put you in a

12  position where you don't feel 100 percent comfortable with

13  that.

14          THE COURT:  Well, I mean, I think that the section

15  in Chapter 15 -- you know, the whole purpose of Congress

16  making Chapter 15 part of the code in 2005 was to

17  acknowledge, you know, cross border cases and try to have

18  cooperation between the foreign courts and foreign

19  representatives.  Okay?

20          So I think we could -- we could say in furtherance

21  of the trustee's exercise of authority of this order, the

22  Court respectfully requests the assistance of foreign courts

23  with respect to the trustee's exercise of corporate control

24  over debtor entities, including Genever BVI.  I don't think

25  there's --

1        MR. DESPINS:  Absolutely.  Good point.

2        THE COURT:  -- any problem with that.  I mean.

3   And I think that it -- I mean, I think in the -- there have

4   been cases in this district where an order like that has

5   entered with regard to proceedings in other -- outside of

6   the United States.

7        So I don't -- I think I could change -- Mr.

8   Despins, do you have any problem -- I didn't write down

9   exactly what I just said --

10       MR. DESPINS:  No.

11       THE COURT:  -- but would the -- with the change

12   that I described?

13       MR. DESPINS:  We'll make that change, Your Honor,

14   if you want.

15       THE COURT:  Okay.

16       MR. DESPINS:  Or it's up to you.

17       MR. HENZY:  And, Your Honor, just for the record,

18   I am -- if the Court's comfortable with the language, I'm

19   not going to press an objection on that issue.

20       THE COURT:  All it's --

21       MR. HENZY:  Again, that --

22       THE COURT:  All it's asking for, and I believe is

23   appropriate, is that because Congress decided to make

24   Chapter 15 a separate and distinct chapter in the code that

25   they're trying to recognize the cooperation between courts

1    that might be necessary for a case in one jurisdiction to be

2    carried out with respect to related proceedings in another

3    jurisdiction outside of this country.

4              So I don't have a problem with it, with the

5    changes as I've just described them.

6              MR. HENZY:  Understood, Your Honor.

7              THE COURT:  Okay.

8              MR. DESPINS:  We'll make the change, Your Honor.

9              THE COURT:  Thank you.

10             MR. HENZY:  Last issue, Your Honor -- and I'm not

11   trying to go back and argue the --

12             MR. DESPINS:  I thought it was the -- that was the

13   last issue.

14             MR. HENZY:  There's one more.  I'm not -- I'm not

15   trying to go back.  On paragraph 3, so back on page 3, this

16   is the Harcus Parker letter, what this says is that the

17   debtor is directed to deliver no later than two business

18   days after the entry of this order.  Well, there's a couple

19   of issues with that, Your Honor.

20             The copy of the letter and the form attached as to

21   Exhibit B to what's in front of you has -- as I understand

22   it, that has not been agreed to by Harcus Parker.  So you're

23   kind of in some sense --

24             THE COURT:  I just have a question about that

25   though because Trustee Despins said that this is the letter

1    he got back from them, so how would they not agree to it?

2              MR. DESPINS:  It's a letter.  What I said is the

3    letter we got back from them with some minor changes that we

4    made.  But in the event, I'll deal with that, meaning if

5    they -- if they say -- I think the changes we made are --

6    and by the way, we did send them earlier today a -- the

7    changes we made, so they've seen them.  We haven't heard

8    back from them.

9              But if it's an issue, we'll fix it, meaning,

10   that's not Mr. Kwok's issue, meaning, we have the letter as

11   we submitted it to Your Honor and we'll see what they say.

12   And if it needs to be modified, we'll just file a

13   supplement.  It would be very, very -- a very minor change

14   really.

15             MR. HENZY:  I guess -- so I'm not clear if -- so

16   he's going to be -- Mr. Kwok's going to be ordered to sign a

17   letter that U.K. counsel may tell us is not acceptable.

18             I don't want to be in a situation where Mr.

19   Despins is negotiating for three days with the U.K. counsel

20   on what a letter might say and this says he has to sign --

21             THE COURT:  So I think what you're saying,

22   Attorney Henzy, is you just don't want the Court to enter

23   the order until you see the final version of the letter.  Is

24   that what you're saying?

25             MR. HENZY:  Or at least until there -- yes, until

1    there is a final version.  Yes, until there is -- right now,

2    as I understand it, there is no final version.

3            But then the second point is -- as I said earlier,

4    Mr. Kwok is not going to sign this letter.  This provides

5    that he must do so within two business days of whenever the

6    letter is actually finalized and complete.

7            And I just -- you know, I -- we will be filing an

8    appeal.  We will seek a state pending appeal.

9            I just -- I don't want Mr. Kwok to be in contempt

10   because he has not -- he has not signed this order.  I just

11   want -- so I just wanted to alert the Court.

12           I would -- I guess I don't know why there's a rush

13   of two business days.  I don't know what's going to happen

14   in two business days, you know, and why there couldn't be a

15   little longer period of time so that Mr. Kwok can get his

16   appeal filed and file whatever motion for stay pending

17   appeal he's going to file.

18           I just don't want to have an unnecessary fire

19   drill, Your Honor.  If the order ends up not being stayed

20   and he -- and he's not signing it, then whatever

21   consequences from that will flow from that.

22           But I don't -- I don't know how realistic it is

23   going to be that we're going to be able to get in front of

24   Your Honor within two business days on a motion for a stay

25   pending appeal.  That's all.

1          And, again, I don't -- I would ask that this be a

2     longer period than two days.

3          MR. DESPINS:  So, Your Honor, we -- I understand

4     your concern and I share your concern to be sure that the

5     changes we made were stylistic only.

6          But, you know, given where this is heading, we

7     should have precision.  So what we should do is -- I'm just

8     kind of thinking out loud here what's the best way to handle

9     this -- I mean, there will be a letter.  There should be a

10    final letter.

11          And maybe the order can provide that we will

12    provide the letter in the final form within X days and the

13    debtor will have Y days to -- to do it.  Y number of days to

14    do it.  And the letter will be substantially in the form

15    attached.  So we can submit an order that will address that

16    issue, that exact issue, Your Honor.

17          And understand that precision -- we shouldn't --

18    we should be careful about this and have more precision

19    rather than that.  I understand your point, Your Honor.

20          THE COURT:  Do you have any objection to extending

21    the two days to a longer period of time for the debtor?

22    He's not going to sign it, but I guess what he's saying is

23    he wants the -- he's going to be filing an appeal so -- I

24    don't --

25          MR. DESPINS:  Sure.

1          THE COURT:  I don't have an opinion either way.  I

2     was just asking you the question.

3          MR. DESPINS:  Your Honor -- and the answer is of

4     course.  I mean, whatever you, Your Honor, feels is a better

5     period of time we'll obviously go with that.

6          Generally we want to get the show on the road

7     regarding that claim, but two versus four days is not going

8     to, you know, break the bank.

9          THE COURT:  Mr. Henzy?

10          MR. HENZY:  I'd ask for five business days.  That

11     I don't -- I don't know when exactly this is all going to

12     happen.  I don't know what will be going on in my life.  I

13     don't know what will be going on with the Court.  I don't --

14     I don't think a day or two one way or another --

15          MR. DESPINS:  You know, five business days is

16     fine, Your Honor.  Thank you.

17          MR. HENZY:  I just --

18          THE COURT:  Five days did you say, Mr. Despins?

19     That's fine?

20          MR. DESPINS:  Yes, Your Honor.

21          THE COURT:  Okay.  Then there you go.  You've got

22     five days, Attorney Henzy.

23          MR. HENZY:  And, Your Honor, again, I -- because I

24     don't want to have parties, you know, pointing at me or

25     pointing at Mr. Kwok, I think this is going to be a mess,

1   okay, in terms of getting this letter done.

2           The Harcus Parker lawyer told me that a

3   prerequisite to her ever agreeing to do anything is that any

4   waiver by Mr. Kwok would have to be voluntary.  And this is

5   not going to be voluntary.

6           I'm not telling her what position she should take

7   based on that.  Mr. Kwok is not communicating with her.  So

8   I don't -- what her response to Mr. Kwok being ordered over

9   the objection to sending this letter, I, you know, that's

10  not my -- that's not my thing.  That's not Mr. Kwok's thing.

11  The U.K. lawyer is going to react however -- they going to

12  react however they react.  Okay?

13          MR. DESPINS:  I understand that, Your Honor.  And

14  the point is that there's a certain limit to what we're

15  going to allow these folks to dictate.

16          If they get a letter from someone regardless of

17  whether a court orders them to do it or not -- and by the

18  way, this is moot because he's saying he's not going to sign

19  the letter.  So, you know, we're arguing -- we're --

20          THE COURT:  Right.  He's not going to sign it

21  anyway.  Right.

22          MR. HENZY:  Well, but the -- there just may never

23  be a letter.  That's all.  I mean, at some point, I

24  understand --

25          THE COURT:  Oh, no.  I think there'll be a letter.

1   The point is your client's already stating he's not going to

2   sign it.  He's not.  He's already stating through you that

3   he's not going to comply with this court order.

4              MR. HENZY:  And, Your Honor --

5              THE COURT:  And it hasn't even entered yet, but

6   he's not going to comply with it.

7              MR. HENZY:  He's not going to voluntarily waive

8   his privilege, Your Honor, to the extent he has any.

9              But I think -- the point I'm trying to make is a

10  letter, I understand Mr. Despins at some point is going to

11  put a letter in front of you and that letter may not be

12  agreed to by the Harcus Parker firm.  That's all.  Because

13  the Harcus Parker --

14             THE COURT:  He's not going to put a letter in

15  front of me that's not agreed to by that firm.  They're the

16  ones that have prepared it.

17             MR. HENZY:  No, they haven't.

18             THE COURT:  They're the ones who have made the

19  final comments to it.

20             MR. HENZY:  Your Honor, I don't know what they're

21  going to do.  If they understand that the debtor is not

22  voluntarily waiving, they make take the position we're not

23  -- we're just not doing it.  Okay.  I don't know that, Your

24  Honor.

25             THE COURT:  Well, then, Mr. Despins will have to

Ho Wan Kwok - August 4, 2022                                    92

1    deal with that.

2              MR. HENZY:  Okay.

3              THE COURT:  If he doesn't have a letter, then

4    there isn't any five days to worry about.  If he doesn't get

5    a letter from them, then you -- there's nothing -- then your

6    client won't be in violation of a court order because there

7    wouldn't be a letter --

8              MR. HENZY:  Okay.

9              THE COURT:  -- for him to have to sign to deliver

10   to them.

11             MR. DESPINS:  No.  Actually, Your Honor, I think

12   -- at one point we will need a letter from the debtor,

13   because otherwise these lawyers would just keep us in limbo.

14             What's going to happen is that if the debtor

15   refuses to sign the letter, we'll have a court order.  We'll

16   go to U.K. court.  It will cost a lot of money and all that,

17   but we'll go to the U.K. courts and seek relief from the

18   U.K. courts against these lawyers who are refusing to give

19   us access even if there's a letter from the debtor that says

20   you need to give them access.

21             But, again, I -- you know, we're arguing over a

22   letter that the debtor says we'll never -- they will never

23   sign anyway, so, you know, I think that's -- let's get to

24   that point first.

25             MR. HENZY:  I'm comfortable with the Court saying

Ho Wan Kwok - August 4, 2022                    93

1    if there's no -- if there's no letter the firm is agreeing

2    to there's nothing for the debtor to do.

3              MR. DESPINS:  No.  Your Honor, because that's

4    (indiscernible) --

5              THE COURT:  Well, that's not what I said.  I said

6    then the five days doesn't matter.

7              MR. HENZY:  Okay.

8              THE COURT:  If there's no letter, than the five

9    days doesn't matter.  That's what I said.  You asked for

10   more time.

11             MR. HENZY:  Yeah.  Yeah.

12             THE COURT:  He's agreed to more time.  Then you've

13   now said, what you've also said on many times during the --

14   during this day that your client's not going to sign the

15   letter.

16             MR. HENZY:  Yes.

17             THE COURT:  So I said if he's not going to sign

18   the letter, then he's going to be in violation of the court

19   order.

20             MR. HENZY:  I'm positing a situation where there

21   is not a letter that the firm in the U.K. has agreed to.

22   That's all.

23             MR. DESPINS:  And the firm in the U.K. cannot be

24   the ultimate arbiter of what happens in this case.  We've

25   given them a lot of leeway.

Ho Wan Kwok - August 4, 2022                    94

1      And Your Honor is not going to give a U.K. lawyer

2   control over privilege in this case.

3      So we're willing to work with them.  And we're

4   doing that.  But, you know, Mr. Henzy cannot use their

5   ability to derail the process as a defense for him, his

6   client, not signing the letter.

7      MR. HENZY:  I'm not using anything to derail the

8   process here, Your Honor.

9      Your Honor, if you -- I understand that if there

10   is a letter and you order -- whether the U.K. firm has

11   agreed to the letter or not, and you order Mr. Kwok to sign

12   that letter that his five days will start to run.  I

13   understand that.

14      MR. DESPINS:  That's all I'm asking.

15      And, Your Honor, we would propose to revise the

16   order to deal with the letter and all that.  So we will do

17   that if Your Honor will authorize us because we need to fix

18   the order.  You suggested better language elsewhere so we

19   need to do that and we will do that with your permission.

20      THE COURT:  Yes.  You have my permission to do

21   that.  And do you think you will get that order to the Court

22   tomorrow?

23      MR. DESPINS:  Yes, Your Honor.

24      THE COURT:  Okay.  Or Monday?

25      MR. DESPINS:  From our point of view, yes.  We

1    will do our best to do that, yes.

2              THE COURT:  Or Monday.

3              MR. HENZY:  Can I have some time -- I would like

4    some time just to review the order, Your Honor.

5              MR. DESPINS:  Yes.

6              MR. HENZY:  Okay.

7              THE COURT:  Well, we've just gone through what the

8    order is going to say.  We've gone through every paragraph

9    including every one of your objections, which were

10   overruled.  I've stated all the rulings on the record.

11             MR. HENZY:  I would like to just put eyes on the

12   order, Your Honor, just -- I'm not -- I completely trust Mr.

13   Despins, that he's going to accurately make the changes that

14   we talked about, but I just am in the practice of wanting to

15   see the final order.  That's all.  I'm not saying I'm going

16   to object to it or anything like that.

17             THE COURT:  But then if you disagree, we're going

18   to have another hearing.  That's what -- that's what you're

19   trying -- that's what you're saying.  You're saying you --

20   if something -- if something doesn't comport with what you

21   think it is, then we're going to have another hearing.

22   That's what you're saying.

23             MR. HENZY:  Yes.  But that's all because --

24             THE COURT:  Well, I'm not going to have another

25   hearing.  I've ruled.  I've ruled what the order's -- what

1    the order needs to say.  We've gone through it.

2         You just spent the time.  You said to me -- this

3    is what you said -- I asked you what your objections were to

4    the relief.  And I went back and I started with so you're

5    objecting about the fact that Mr. Despins didn't cite to

6    521.  And you said, no, no.  Let's go -- let's go through

7    the order.  Let's go through my original objections and

8    let's go through the order.  So that's what we just did.

9         We're not coming back to court on this.  This is

10   what we just did.

11        MR. HENZY:  So, Your Honor, what if -- what if --

12   what if the order that's submitted -- again, I am not

13   telling -- saying I think Mr. Despins is going to do this --

14   what if the order that's submitted is not consistent with

15   what's been on the record today?

16        THE COURT:  Then I'm not going to enter it.  I'm

17   going to read the order.

18        MR. HENZY:  I'm sorry, Your Honor.  I think it's

19   customary for all counsel to have an opportunity to review

20   an order before it's entered.  But I understand.

21        THE COURT:  But that's what we just did.  We just

22   spent the time that you would spend going over an order.

23        MR. HENZY:  I understand what the Court's saying.

24        THE COURT:  We just spent a substantial amount of

25   time, as a matter of fact, going through every paragraph in

1    the order.

2              MR. HENZY:  Your Honor, if you're ruling I'm not

3    going to have an opportunity to review the final order --

4              THE COURT:  Mr. Despins --

5              MR. HENZY:  -- then I understand the Court's --

6              THE COURT:  You know, I'm --

7              Mr. Despins, is your firm going to have --

8              This is what I would want everyone to do.  This is

9    how it's going to work out because we are not doing this on

10   a regular basis.

11             Mr. Despins, would you please send an email to the

12   courtroom deputy box, your firm will know and Mr. Linsey can

13   help you if necessary, with the order CC'ing all the

14   parties.

15             I'm not going to enter that order for some period

16   of time -- I don't know what -- but several hours probably.

17   Okay?  And then I'm going to enter the order.

18             I'm not going to have another hearing going

19   through the language of the order.  We just did that.

20             The only reason that that order will not enter is

21   if Mr. Despins wrote something like the Court has allowed me

22   to live in the courtroom.  Then I wouldn't enter that order.

23   Okay?  For many reasons.  It wouldn't be comfortable for him

24   anyway.

25             But that's the point.  We're not going to do this.

1    We've had -- this is the second hearing on this issue.  This

2    motion was filed on July 23rd.  It's August 4th.

3              Your client is no longer a debtor in possession.

4    Someone has to come to that realization.  Okay?  The trustee

5    has that authority to do what he's doing as I have just

6    ruled.

7              And that's -- we've gone through every paragraph

8    of the order and I have made rulings on those paragraphs.

9    And there are changes that will be made.  And so that's what

10   we're going to do.

11             Mr. Despins, your office or through Mr. Linsey

12   will send --

13             MR. DESPINS:  Yes.

14             THE COURT:  -- an email to the courtroom deputy

15   box in Bridgeport and indicate that the order -- this is the

16   order that has been prepared after the hearing on August 4th

17   with all the changes discussed on the record.  And you will

18   CC all the parties, including Mr. Henzy.

19             And then I will enter that order in due course

20   after some period of time.  But I am not having a further

21   hearing.  This hearing is concluded.

22             MR. DESPINS:  Understood, Your Honor.

23             THE COURT:  I have ruled.  Okay?

24             MR. DESPINS:  Your Honor, two housekeeping

25   matters.

1        THE COURT:  Yes.  Go right ahead.

2        MR. DESPINS:  Five minutes.  Okay.

3        First, we have suggested dates, but of course

4    subject to Your Honor's schedule for status conferences.

5        THE COURT:  Did you submit them to someone yet?

6        MR. DESPINS:  Actually, we have not.

7        THE COURT:  Okay.

8        MR. DESPINS:  So you're absolutely right.  That's

9    tabled.  Let's table.  We were going to post them.  I don't

10   know if my colleague has the ability to put that up on Zoom,

11   the potential suggested dates.

12        Or you know what, Your Honor, let's circulate.

13   We'll table that.  Let's circulate those dates.  We'll come

14   back to Your Honor about that.

15        THE COURT:  Okay.

16        MR. DESPINS:  Apologies.  You're absolutely right.

17   We should --

18        THE COURT:  And you can communicate to the

19   courtroom deputy about those suggested dates through the

20   email box and CC everybody so everybody knows this is what

21   you're suggesting.

22        MR. DESPINS:  Will do.

23        THE COURT:  Okay?

24        MR. DESPINS:  Will do, Your Honor.

25        Next item I want to raise is we've had a meet and

Ho Wan Kwok - August 4, 2022

100

1   confer with the debtor's counsel regarding the Rule 2004

2   discovery on the issue of discovery of professionals, like

3   lawyers. And that issue is going to be a problem in the

4   sense that they -- their view is that we don't have access

5   to the -- at least the way it was articulated to me, that we

6   don't have access to the privilege documents when the debtor

7   -- with respect to assets of the debtor or assets we think

8   should be the debtor's such as the Lady May or Sherry-

9   Netherland because the debtor believes they're not assets

10   and, therefore, they would be invading his privilege to go

11   after these documents.

12          So the reason I'm telling you this -- I'm not --

13   because I'm not asking you to rule on this, but we need to

14   tee that up sooner rather than later because they want to

15   tee it up 30 days after they receive the subpoena which

16   would get us into September/October.

17          There's a clear issue here which is an issue of

18   what privilege the trustee succeeds to.  And I think the

19   case law is clear that when dealing with assets of the

20   estate, either assets that are already in the estate or

21   assets that there is a claim they belong to the estate, such

22   as the Lady May and the Sherry-Netherland, that the trustee

23   have access to privileged communications regarding these

24   assets, or with respect to administration of the case, for

25   example, preparation of schedules by Brown Rudnick.

1        I'm not asking you to rule, but we need to tee

2    that up.  And we're not going to do that now, but we want to

3    tell you we're going to ask for a date earlier than 30 days

4    after the service of subpoena because that could bring us to

5    September or October.

6            So that's an issue that's out there.

7            The last issue, Your Honor, is, you know, you've

8    asked us, you raised this issue of conflict before and we

9    left it the other day.  And you said, hey, people need to be

10   attuned to this.

11           But this meet and confer just made us or my

12   partners realize that the issue is not a Zeisler issue.  The

13   issue is that a target of the trustee's investigation, which

14   is his son, the debtor's son, is paying for the fees of

15   counsel.

16           It's impossible for counsel to be adverse or to

17   think in any way adverse to somebody paying their fees.

18   It's theoretically possible, but I wouldn't hold anyone to

19   that standard.

20           So we're not asking -- there's no punch line here

21   where we're saying we're asking you to disqualify Zeisler.

22   I don't think it's Zeisler issue.

23           I think that it is very difficult for any firm

24   that represents the debtor, that has duties to the estate,

25   to be paid by the targets of the trustee's claims.  And the

1    harm here, that's the Sherry-Netherland, Bravo Luck, et

2    cetera.

3           And so, you know, again, I don't have a punch

4    line.  We're still thinking about it, but I wanted to -- we

5    have a duty to relay the issue to the Court.

6           I don't want somebody weeks from now to say you

7    sat on this.  Really, that's the issue, is the payment of

8    fees by a target of the investigation to debtor's counsel.

9    That is all, Your Honor.

10          THE COURT:  Okay.  Thank you.

11          MR. DESPINS:  That's all we have.

12          MR. HENZY:  May I be heard, Your Honor?

13          THE COURT:  Yes.

14          MR. HENZY:  Thank you.

15          On the 2004, I don't know why that's coming up

16   now.  We're talking about 2004 versus having been entered.

17          As to the objection date to the 2004 motions that

18   were filed hasn't even come up.  It's tomorrow.  So we're

19   talking about 2004 orders that haven't entered and subpoenas

20   that haven't issued.  I don't know how that's going to play

21   out, but right now it's interesting to preview it I suppose,

22   but I have no idea how that's going to play out.

23          On my firm's conflict issue, if Mr. Despins wants

24   to file a motion disqualifying my firm, he should do that.

25   Any party wants to file a motion to disqualify my firm, they

1   should do that.

2          If the Court believes my firm should be

3   disqualified, then the Court should take whatever action the

4   Court deems necessary.

5          But other than that, I'm not going to -- I'm not

6   going to think about it and I'm not going to talk about it.

7   I'm going to represent my client.

8          All the facts are out there.  If somebody thinks

9   there's a problem, they should -- they should do that.

10          I said this at the hearing the other day.  This

11   should not being used as  (indiscernible) sword against my

12   firm or against Mr. Kwok.  So either file your motion or

13   just leave it alone.

14          THE COURT:  All right.  Anything further from

15   anyone this afternoon?

16          MR. DESPINS:  No, Your Honor.  Thank you.

17          THE COURT:  Okay.  Thank you.

18          Then the -- so that the record is clear, the

19   trustee's motion for order extending deadline to file

20   notices of removal is granted and the proposed order will

21   enter.

22          The motion for order confirming that the Chapter

23   11 Trustee holds all of the debtor's economic and corporate

24   governance rights in debtor controlled entities authorizing

25   Chapter 11 trustee to act in any foreign country on behalf

Ho Wan Kwok - August 4, 2022                                    104

1   of the estate and granting related relief is granted for the

2   reasons stated on the record with an order to be submitted

3   by trustee's counsel on notice to all other parties who will

4   be -- receive a copy of that when it's submitted to the

5   Court.  And then the Court will review it and enter it after

6   the fact.

7            Okay?  All right.  Thank you, all.  This is the

8   last matter on the calendar, so court is adjourned.

9            ALL COUNSEL:  Thank you, Your Honor.

10           (Proceedings concluded at 4:35 p.m.)

11

12

13           I, CHRISTINE FIORE, court-approved transcriber and

14   certified electronic reporter and transcriber, certify that

15   the foregoing is a correct transcript from the official

16   electronic sound recording of the proceedings in the above-

17   entitled matter.

18

19           *Christine Fiore*

20   _____            August 12, 2022

21     Christine Fiore, CERT

22        Transcriber

23

24

25

Fiore Reporting and Transcription Service, Inc.

1                              INDEX

2

3     TRUSTEE EXHIBITS:                              PAGE

4     A-G          Attachments to Trustee's motion      33

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25