UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                          *   Case No. 22-50073 (JAM)
                               *
        HO WAN KWOK,           *   Bridgeport, Connecticut
                               *   August 12, 2022
                Debtor.        *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *


TRANSCRIPT OF MOTION FOR 2004 EXAMINATION
OF THE DEBTOR; MOTION FOR 2004 EXAMINATION OF
OMNIBUS RE: DEBTOR'S PROFESSIONALS;
MOTION FOR 2004 EXAMINATION OF
OMNIBUS RE: RELATED PERSONS;
ORDER SETTING STATUS CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor,            STEPHEN M. KINDSETH. ESQ.
 HK International and       AARON ROMNEY, ESQ.
 Mei Guo:                   ERIC HENZY, ESQ.
                           Zeisler & Zeisler, P.C.
                           10 Middle Street, 15th Floor
                           Bridgeport, CT  06604


For the Creditor, Pacific   PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity  STUART M. SARNOFF, ESQ.
 Fund L.P.:                 O'Melveny & Myers LLP
                           Times Square Tower
                           7 Times Square
                           New York, NY  10036

                           ANNECCA SMITH, ESQ.
                           Robinson & Cole
                           28 Trumbull Street
                           Hartford, CT  06103


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES:  (Cont'd)

For the Creditors Committee:  JONATHAN KAPLAN, ESQ.
                              Pullman & Comley
                              850 Main Street
                              Bridgeport, CT  06601


For the Creditors, Rui Ma,    KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:    McElroy Deutsch
                              225 Liberty Street
                              36th Floor
                              New York, NY  10281


For the U.S. Trustee:         KIM McCABE, ESQ.
                              Office of the United States
                                 Trustee
                              The Giaimo Federal Building
                              150 Court Street, Room 302
                              New Haven, CT  06510


Chapter 11 Trustee:           LUC A. DESPINS, ESQ.
                              Paul Hastings LLP
                              200 Park Avenue
                              New York, NY  10166


Counsel for the              NICHOLAS BASSETT, ESQ.
 Chapter 11 Trustee:          Paul Hastings LLP
                              200 Park Avenue
                              New York, NY  10166

                              PATRICK R. LINSEY, ESQ.
                              Neubert, Pepe & Monteith, P.C.
                              195 Church Street, 13th Floor
                              New Haven, CT  06510


For Creditor Logan Cheng:     JAY M. WOLMAN, ESQ.
                              Randazza Legal Group, PLLC
                              100 Pearl Street, 14th Floor
                              Hartford, CT  06103


For the Creditors, Rui Ma,    KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:    McElroy Deutsch
                              225 Liberty Street
                              36th Floor
                              New York, NY  10281


For Verdolino and Lowey:      TRISTAN AXELROD, ESQ.
                              Brown Rudnick
                              Seven Times Square
                              New York, NY  10036

1      (Proceedings commenced at 10:00 a.m.)

2           THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3      Kwok.

4           THE COURT:  Good morning.

5           If we could have appearances for the record,

6      starting with the Chapter 11 trustee, please.

7           MR. DESPINS:  Good afternoon, Your Honor.  Luc

8      Despins, Chapter 11 Trustee.

9           THE COURT:  Good morning.

10          And then if we could have the appearances for the

11     Office of the United States Trustee.

12          MR. BASSETT:  Your Honor, for the trustee, this is

13     Nick Bassett, from Paul Hastings, counsel for the Chapter 11

14     trustee.

15          THE COURT:  Good morning.

16          MR. LINSEY:  Good morning, Your Honor.  For the

17     trustee, local counsel Patrick Linsey.

18          THE COURT:  Good morning.  And then if we could

19     have -- go ahead.  Whoever wants to jump in next.  Go right

20     ahead.

21          MS. McCABE:  Kim McCabe on behalf of the United

22     States Trustee.

23          THE COURT:  Good morning.

24          MS. McCABE:  Good morning.

25          MR. FRIEDMAN:  It's Peter Friedman on behalf of

1    PAX.  I see Mr. Sarnoff and I see Annecca Smith from the

2    Robinson Cole firm.

3              THE COURT:  Good morning.

4              MR. AXELROD:  Your Honor, Tristan Axelrod for

5    Brown Rudnick, LLP, and Verdolino and Lowey, PC.  I filed a

6    pro hac vice motion yesterday that has yet to be granted and

7    I'd ask to be heard to the extent appropriate today,

8    notwithstanding the pending motion.

9              THE COURT:  You are welcome to be heard and I

10   believe the order -- the motion is going to be granted. It's

11   probably just that there hasn't been ample time to enter the

12   order yet since it was filed yesterday afternoon.

13             MR. AXELROD:  Thank you, Your Honor.

14             MR. KINDSETH:  Good morning, Your Honor.  Stephen

15   Kindseth, Zeisler and Zeisler, for the debtor Ho Wan Kwok,

16   as well as HK International Funds Investments USA Limited

17   and Mei Guo.

18             MR. ROMNEY:  Good morning, Your Honor.  Aaron

19   Romney, Zeisler and Zeisler, also for the debtor, HK

20   International and May Guo.

21             MR. HENZY:  And Eric Henzy, Your Honor, Zeisler

22   and Zeisler, for the same parties.

23             MS. MAYHEW:  Good morning, Your Honor.  Kristen

24   Mayhew on behalf of creditors Rui Ma, Zheng Wu and Weican

25   Meng and also with me is Carolynn Callari.

1          THE COURT:  Good morning.

2          MR. KAPLAN:  Good morning, Your Honor.  Jonathan

3    Kaplan, of Pullman and Comley, on behalf of the creditors

4    committee.

5          THE COURT:  Good morning.

6          MR. WOLMAN:  Good morning, Your Honor. Jay Wolman,

7    of Randazza Legal Group, for creditor Logan Cheng.

8          THE COURT:  Good morning.

9          Has everyone noted their appearance for the

10   record?

11         Okay.  Thank you.

12         Mr. Despins, this is a status conference that you

13   requested, and there are also issues with regard to three

14   motions for 2004 Examinations.  So please proceed.

15         MR. DESPINS:  Thank you, Your Honor.  For the

16   record, Luc Despins, the Chapter 11 Trustee.

17         Your Honor, we filed with the Court, our

18   PowerPoint presentation regarding the status report, so I

19   don't want to burden the Court for very long by reading

20   every page.  We're not going to do that.  I assume Your

21   Honor has had a chance to at least peek at it.

22         But most of the PowerPoint presentation deals with

23   what we raised with Your Honor at the last hearing, which is

24   the need to coordinate the two cases, the *Kwok* case before

25   Your Honor, and the *Genever U.S.* case that's before Judge

1    Garrity.

2              So just very briefly, on Page 2 we talked about

3    the fact that the same issues are present in the same case.

4    Yes, they're two different types of assets, but -- and they

5    involve, you know, two different individuals.  One is the

6    daughter, one is the son of the debtor.

7              But the issues are all the same, meaning we

8    believe the same or likely the same witnesses would appear

9    at the hearing on the issue of ownership of these assets,

10   the same documents or similar documents would be introduced

11   into evidence and for these reasons, we believe it is

12   critical to have one court handle both of these cases.

13             We explain how these cases -- on Page 4, how these

14   cases got to be two courts.  That's all -- and I'm not

15   faulting PAX, but as a result of PAX's litigation, both

16   cases were started to foreclose or to stop litigation by PAX

17   against Mr. Kwok, or with respect to some of his assets, the

18   Sherry Netherland apartment.

19             And one point that we make, Your Honor, is that

20   we've recently learned, although as I said in the past, we

21   have to verify information because we never know how

22   accurate it is, but that, in fact, Bravo Luck -- and you'll

23   remember Bravo Luck is the entity that was allegedly owned

24   by the son of Mr. Kwok.  But that entity was also involved

25   in the various Lady May transactions.  So that's even

1    additional evidence and additional reason why these two

2    cases should be handled together.

3              And I know, Your Honor, it's not your decision, so

4    I'm not arguing the motion.  I just want to make sure you

5    have the background on why we're doing this.

6              Very quickly on page 8, the bar date issue in the

7    *Genever* case, is a real mess in the sense that probably just

8    five or six creditors that filed claims and that got notice.

9    The folks that are in our case and that have similar or

10   perhaps identical claims to PAX in terms of alter ego

11   against the Sherry Netherland apartment were not notified,

12   and you know, all of that needs to be coordinated and et

13   cetera, et cetera.

14             On page 9, we explain what we described to the

15   court last time, which is that right now, without the

16   ability of these creditors to file claims directly in the

17   *Genever U.S.* case, they would be structurally subordinated

18   to the five or six debtors that filed claims in that case,

19   and the trustee -- this is on page 10 -- opposes that.

20             And you know, so for all these reasons, we think

21   the transfer of venue is appropriate.  We say there are no -

22   - this is on page 11 -- there are no assurances that the

23   transfer, if any, would be granted.  On the other hand, and

24   we said this at the prior hearing, (indiscernible) the

25   trustee appointed in your court.

1      I do not want to go down that road if Your Honor

2  sees a lot of red flags, and I -- so I'm not asking for any

3  opinion like that.  But -- and I want to tell you that this

4  is our next step to go in front of Judge Garrity.  So to the

5  extent Your Honor would see red flags, you know, we would

6  love to hear them at this stage, because the next stage is

7  to go in front of Judge Garrity and seek that transfer of

8  venue.

9      And on page 13, we address the fact that the venue

10  transfer is not incompatible with the settlement agreement

11  regarding the sale of the Sherry Netherland apartment.  As

12  you know, there's a process to sell that apartment.

13      We're not trying to stop that or -- at this time,

14  and this is not a ploy to stop that.  In the event, it's

15  really -- and by the way, that settlement agreement did not

16  say at the end of the day that there was an agreement

17  between the parties to litigate in one forum or another.

18      But it's very clear at this point, given that

19  we're making progress every week, we're pretty sure that

20  there will be a fraudulent transfer challenge to some of

21  these transfers, or some of the documentation that's been

22  provided to sustain an argument that Mr. Kwok is not the

23  owner of either of these main assets and, therefore, it

24  makes no sense to have that -- to have that heard in the

25  BVI.

1          It just makes sense for that to be heard in the

2     bankruptcy court, and we believe given that we have a -- you

3     know, we've already begun the process with the 2004, et

4     cetera, that it makes sense for this Court to be the court

5     where venue of both cases would be residing.

6          So at this point, Your Honor, I flew through this

7     very quickly, but I'm happy to entertain questions or

8     comments the Court may have before we turn to the last two

9     pages, 15, 16, that are in the nature of housekeeping

10    matters before we get to the 2004 matters.

11         THE COURT:  I do not have any questions at this

12    time.  Thank you.

13         MR. HENZY:  Your Honor, may I be heard briefly?

14         THE COURT:  Yes.

15         MR. HENZY:  Thank you.  Your Honor, I just want to

16    be clear and confirm this is a status conference.  The

17    PowerPoint that Mr. Despins filed is not in evidence.  I

18    don't take a position right now on transfer of venue in --

19    of either case, to either court.

20         As Mr. Despins recognizes, that whether the case

21    in New York is transferred to Bridgeport is going to be up

22    to Judge Garrity, so that all of this is just -- is not

23    before you right now.  I have no problem with him telling

24    you what he's going to do in the Southern District of New

25    York, but I think it is not before you.

1        There are characterizations in the PowerPoint that

2   I don't agree with.  I'm not asking you to let me plow

3   through this and tell you each and every place where I don't

4   agree, because again, my understanding is this is a status

5   conference and this is not in evidence.

6        So what -- but again, I just want to have that on

7   the record so that somewhere down the road, this isn't

8   pointed to as, oh, we didn't -- we didn't walk through this

9   point by point and tell you where we disagree and somehow

10  there's been a waiver or something binding, or Mr. Kwok

11  should have said something.

12       THE COURT:  Does anyone else wish to be heard?

13       MR. DESPINS:  Your Honor -- Your Honor, just to

14  briefly to respond.  We agree with Mr. Henzy's position.

15  This is not evidence.  This is a status report.

16  (Indiscernible) general denial is sufficient to deny every

17  statement contained in (indiscernible), understand

18  (indiscernible).

19       THE COURT:  Okay.  Thank you.  All right.  Let's

20  move on to the Rule 2004 Examination issues before we do

21  this housekeeping, Mr. Despins, because I think there are

22  some other matters that you -- I would just like to know

23  what the Court -- what you are going to do with applications

24  and motions that were pending before your appointment too.

25  So why don't we address the 2004 Examination issues, and

1    then we'll go back to the housekeeping matters, please.

2              MR. BASSETT:  Your Honor.  Nick Bassett from Paul

3    Hastings on behalf of the trustee.  I'll be addressing the

4    2004 motion today.

5              First of all, Your Honor, I'd just like to say,

6    it's nice to be before you for the first time.  In this

7    case, I've been kind of in the background on some of the

8    hearings in the past, but it's nice to be actually before

9    the Court, albeit virtually today.

10             As I believe the Court is aware, we filed three

11   2004 motions on July 28th seeking to conduct examinations of

12   approximately 34 different examinees.

13             There's one motion that's directed to the debtor

14   that seeks an examination of the debtor.  There's another

15   motion that seeks an examination of approximately 14

16   professional firms by either law firms or other advisory

17   firms who kind of provided advice to the debtor in the past.

18             And then there's a third motion that's directed to

19   approximately 19 relatives, related persons and related

20   entities who we think may have information that's important

21   to these cases and to the trustee's investigation.

22             So each of these three motions, Your Honor, is

23   geared very specifically toward identifying information and

24   getting documents related to potential assets of the estate.

25   As we've articulated in the motions, we think there is an

1    abundance of evidence based on news reports, based on

2    findings of other courts that the debtor does, in fact, have

3    interest in valuable property and at various LLC's that are

4    holding companies that he is trying to keep beyond the reach

5    of his creditors, and we think the targets of these motions

6    are the types of people who are likely to have that

7    information, whether it's advisors that were used in forming

8    legal entities and protecting assets, whether it's relatives

9    who hold those assets, or related companies, those are

10   really the targets of our motion.

11          Your Honor, I won't summarize what we're seeking

12   any further today because I think the issue before the Court

13   in light of the responses received is very narrow.

14          I mean, there's really -- there really is not much

15   opposition at all.  I think, you know, of the 34 proposed

16   examinees, there were only three responses filed.  Two of

17   those were by Brown Rudnick on its own behalf, and for the

18   other debtors, former local counsel in this case, and those

19   two responses are really in the way of reservation of

20   rights, but I don't think actually raise that objection to

21   that motion, so I won't address those up front although to

22   the extent Mr. Axelrod has comments ready to respond to it,

23   I may do that later.

24          What I'll instead do is just respond briefly to

25   the limited objections that the debtor has filed to the 2004

1    motion.

2         The debtor's objection really, as far as I

3    understand it, makes two points.  The first is that it

4    addresses a privilege issue that it concedes is not actually

5    before the Court today.

6         The debtor articulates in its objection that it

7    believes there is a split of authority and a question of

8    whether or not the trustee controls the debtor's privileges,

9    attorney/client privilege and otherwise.  Your Honor, I'm

10   not going to spend a whole lot of time responding to those

11   issues, but I do want to make a few points.

12        First, suffice it to say the trustee disagrees

13   wholeheartedly with the debtor's position as to the state of

14   the law on this issue.

15        We think it is very clear, based on the weight of

16   the authority of cross-jurisdictions, that the trustee does

17   in fact succeed to the debtor's privilege, in particular on

18   issues related to assets of the estate, to the

19   administration of the estate and to the debtor's financial

20   condition.

21        And as I said before, all of the discovery

22   requests that we have included in our 2004 motions really go

23   to those issues, so we don't think there is really any room

24   for the assertion of a privilege by the debtor on those

25   issues.  We think it passes to the trustee and the trustee

1    is entitled to those documents.

2            The other thing I would like to do is just briefly

3    correct the record with respect to an affidavit that the

4    debtor's counsel filed yesterday.

5            That affidavit talks about the meet and confer

6    that we held with the debtor's counsel on August 2nd.  And

7    one thing that I noticed the debtor says in there is that,

8    during that meet and confer, we the trustee -- trustee's

9    counsel had refused to be willing to address this issue of

10   the privilege, other than on a document by document basis.

11   Your Honor, I think that is not correct.  That's not what we

12   said.

13           What we had said on that call is that we need to

14   understand the debtor's position on the issue of what

15   privileges it continues to retain that it can assert vis-a-

16   vis the trustee.

17           And what we heard in response to that was

18   basically that the debtor's counsel was still new to the

19   case, they really had no idea what types of documents the

20   debtor has.  They didn't know what kind of communicates the

21   debtor had with his former counsel.  They really had done

22   none of that initial legwork.

23           In fact, I think the comment that was made at one

24   point was that we, the trustee and his counsel, probably had

25   a better idea of the debtor's documents than they do.

1          And it's needless to say, that was a very

2     concerning comment, because it really seems to be setting

3     the stage for more delays in this case, and another way to

4     prevent the trustee from making meaningful progress with

5     this investigation, and that's something that just can't

6     happen.

7          I mean, this debtor, as Your Honor knows, filed

8     his case back in February.  It's been embroiled in

9     litigation with PAX and other parties for years, so issues

10    concerning what documents he has, what documents might be

11    privileged, all of that should be well known to the debtor.

12         So the bottom line on this issue, Your Honor, is

13    contrary to what was described in the affidavit, we do think

14    this issue of privilege needs to be teed up as soon as

15    possible with the Court.

16         So what we plan to do, and I believe the trustee

17    previewed this during last week's status conference, is we

18    intend to file a motion, likely on short notice, to have the

19    Court issue a ruling as to the scope of all the privileges

20    that pass to the trustee so we have clarity on that and it's

21    not something that is used to delay our investigation going

22    forward.

23         The second thing that the debtor raises in its

24    objection, Your Honor, is -- and this is really actually the

25    only -- the only argument or issue that can be characterized

1    as an actual objection to the relief that we're asking the

2    Court to grant in the proposed orders that we provided.  But

3    they take issue with the fact that we have included in the

4    proposed order a 30-day deadline for responding to the

5    subpoenas.

6           Your Honor, we think that is appropriate and is

7    something that should remain part of the proposed orders.

8    For the reasons I just discussed, and as the Court well

9    knows, given the history of this case, we think it is

10   imperative to do whatever we can at the outset to prevent

11   any arguments or avenues for delay.

12          We think it is critically important that the

13   debtor be compelled and other parties to be required to

14   provide documents to us, and to get back to us on our

15   subpoenas within 30 days.

16          And we don't think this is at all inconsistent

17   with either Rule 2004 itself, or the local rule.  Local Rule

18   2004-1 actually requires the moving party to attach to its

19   motion and proposed order form subpoenas.

20          And obviously a form subpoena, we as the party

21   serving that subpoena, are entitled to indicate at date and

22   a place for compliance.  So rather than put it in our

23   subpoenas, we have simply asked the Court to include that

24   30-day deadline in the proposed order.

25          I would also note that I think this is perfectly

1   consistent with Rule 2004(c), which is specific to

2   investigations of the debtor, and it specifically says that

3   the Court may, for cause shown and on terms as it may

4   impose, order the debtor to be examined under this rule at

5   any time or place it designates.

6         So the Court specifically has the power under Rule

7   2004 -- I think I said 2004(c), but I believe it's 2004(d).

8   The Court specifically has the ability to order compliance

9   by the debtor at a particular time.

10         You know, we're not -- I think one of the issues

11   that the debtor raised is that they think we're trying to

12   prevent it from raising objections that it might have to

13   individual document requests.  Your Honor, we're not doing

14   that.

15         To the extent that the debtor or any other party

16   believes they have meritorious arguments with respect to

17   individual requests that they want to raise in response to -

18   - or as part of the motion to quash or otherwise, they can

19   do that.  We're just seeking to ensure that this all happens

20   expeditiously, and that's the reason we've included that 30-

21   day deadline in our order.

22         That's all I had at the outset, Your Honor, but

23   obviously I'll be happy to answer any questions and reserve

24   the right to respond to any comments made by other parties.

25         THE COURT:  Okay.  Thank you.  Does anyone else

1   wish to be heard?

2           MR. AXELROD:  Yes, Your Honor.  Tristan Axelrod,

3   Brown and Rudnick.  May I be heard very briefly?

4           THE COURT:  Yes, go right ahead.

5           MR. AXELROD:  Just two very quick points.  One,

6   Mr. Bassett mentioned Verdolino and Lowey as local counsel

7   to the debtor.  Not entirely true.  They're the proposed

8   financial advisor.  There is actually an application pending

9   to date.

10          Second point, just would agree with Mr. Bassett

11  that issues of privilege and work product protection are

12  probably going to be central to the discovery that is

13  proposed to be served, and once that is served, I think we

14  would appreciate the Court's guidance on that issue.  Thank

15  you, Your Honor.

16          THE COURT:  Would you just -- what guidance are

17  you looking for?  I'm sorry.  I don't think I heard what you

18  said at the end.

19          MR. AXELROD:  Well, not looking for any today, but

20  once discovery is served, I think all the parties are

21  signaling that there may be a disagreement on the boundaries

22  of privilege that have been transferred to the trustee, and

23  the extent of work product protection that remains in the

24  hands of professionals or the debtor.

25          And I think the professionals who are being served

1   at this point will need some guidance or appreciate some

2   guidance once those issues come up.  I think Mr. Bassett was

3   saying the same thing.  He'll correct me if I'm wrong about

4   that, but I think we anticipate that being an issue and will

5   appreciate the Court's guidance down the road.

6          THE COURT:  Well, I think what will happen under

7   both Federal Rule of Bankruptcy Procedure 2004, and our

8   local rule 2004-1, is that it -- when a subpoena is served,

9   the party who receives the subpoena can take whatever

10  actions it deems appropriate under the Federal Rules of

11  Civil Procedure, meaning --

12         UNIDENTIFIED SPEAKER:  Your Honor, I'm having

13  trouble hearing you.  I don't know if anybody else is.

14         UNIDENTIFIED SPEAKER:  I (indiscernible) but I

15  cannot hear either, Your Honor.

16         THE COURT:  Well, and that's one of the reasons

17  why we're going to have all of our future hearings in

18  person.  This is -- it's very difficult when there is so

19  many of us, and we're going to have the hearings in person.

20  Today you ask -- this was asked ons short order, but we need

21  to be in the courtroom so I can see and hear you, and you

22  can see and hear me.

23         So what I said, counsel, was when you asked for

24  guidance -- I don't think the Court will give guidance.  I

25  think the Court will rule on whatever the issue may be.

1          And when a subpoena is served under -- in

2    connection with a Rule 2004 examination and under our local

3    rules, the party who is served with the subpoena has

4    whatever rights it has under the Federal Rules of Civil

5    Procedure with regard to that subpoena.

6          And Mr. Despins said he's going to file a motion

7    on the privilege issue, so that would be the time when the

8    Court would make a ruling, and/or the Court would rule on

9    connect -- in connection with any motions to quash or any

10   protective orders.

11         So I don't really view it as guidance.  I view it

12   -- you all have obligations as lawyers under the Federal

13   Rules of Civil Procedure --

14         MR. AXELROD:  Yes.

15         THE COURT:  -- to attempt to resolve these issues.

16   If you don't resolve these issues, then you file the

17   appropriate documents under the appropriate rules and the

18   Court will rule.  Okay?

19         MR. AXELROD:  Thank you, Your Honor.  I was

20   perhaps inartful in my speech, but a ruling will be helpful.

21   Thank you.

22         THE COURT:  It wasn't -- I don't mean to say you

23   were inartful.  I just -- I don't think it's an area of the

24   law where the Court -- I don't think the Court can provide

25   guidance.  I think it's -- would have to rule, right?  This

1    is discovery.  The lawyers have -- you all have obligations

2    to attempt to resolve these issues, and if you don't, then

3    the way that they're resolved is a ruling from the Court.

4    Okay?    All right.  So no one else wishes to be heard on

5    the Rule 2004 Examination motions?

6              MR. ROMNEY:  Your Honor, Aaron Romney, Zeisler and

7    Zeisler in support of the debtor.  Limited objections.  I

8    apologize, I attempted to speak after Mr. Bassett and I was

9    on mute.

10             But very briefly, I think that the -- you used the

11   term limited objection and it is limited, and as I listened

12   to Mr. Bassett speak, I'm not sure what the dispute is.  We

13   are not objecting to the 30-day time parameters.

14             The objection is solely that the proposed order

15   granting the Rule 2004 motion directs the parties to produce

16   the documents.  The purpose of Rule 2004 in the scope of the

17   Rule 2004 motion is to permit the service of subpoenas which

18   is what the second soordered paragraph in the proposed order

19   said.

20             The third so ordered paragraph in the proposed

21   order --

22             THE COURT:  Let -- Attorney Romney, let's stop for

23   a minute and pull up the order so we can all look at it the

24   same time, because I want to make sure I'm following your

25   argument.  Okay?

1     So which -- which one -- you're talking -- does it

2     matter which one we pull up is -- that's on the calendar

3     today?

4          MR. ROMNEY:  Correct.  I'm specifically looking at

5     637.

6          THE COURT:  Okay.  Let's look at --

7          MR. ROMNEY:  But -- yeah.

8          THE COURT:  Let's look at 637, then.  Let's pull

9     that up, and we'll go to the proposed order and then you can

10    show me where in the proposed order -- you know, we'll go

11    through the paragraphs that you were starting to talk about,

12    okay?

13         MR. ROMNEY:  Thank you very much, Your Honor.

14       (Pause)

15         THE CLERK:  It will just be one moment, Your

16    Honor.

17       (Pause)

18         THE COURT:  Okay.  It looks like we are looking at

19    the proposed order on ECF 637.  So, Attorney Romney, you

20    want me to go to the next page, I assume, where we start to

21    have numbered paragraphs.  Or is that -- or should I stay on

22    this page?

23         MR. ROMNEY:  That is the page we're looking at,

24    Your Honor, what's on the screen.

25         THE COURT:  All right.  So stay on this page?

1           MR. ROMNEY:  Correct.

2           THE COURT:  All right.  So tell me what you want

3      me to look at, please.

4           MR. ROMNEY:  The third ordered paragraph, and in

5      particular the first sentence of that paragraph, that says,

6      "The professionals are hereby directed to produce all

7      documents within 30 days of the service of the subpoena."

8           And again, the issue is not so much the 30 days,

9      it's the court order directing the production of documents

10     as distinguished from the preceding paragraph which permits

11     the trustee to serve the subpoenas and then pursuant to

12     Local Rule 2014, the parties who receive them would have the

13     right to raise substantive objective -- objections then.

14          Our issue is that quite literally -- and it

15     doesn't seem ambiguous.  This is a court order directing the

16     production of documents which exceeds the scope of the

17     relief that can be granted on a motion for Rule 2004 Exam.

18          THE COURT:  Well, why -- what if we just qualify

19     the paragraph by saying, subject to the applicable Federal

20     Rules of Civil Procedure and Federal Rules of Bankruptcy

21     Procedure, because I think what you're saying, Attorney

22     Romney, although I could be wrong, is that you're thinking

23     this is overriding your right to file a motion to quash or a

24     motion for a protective order?

25          MR. ROMNEY:  Correct, Your Honor.

1          THE COURT:  So what if we just did what I --

2          MR. ROMNEY:  And, Your Honor --

3          THE COURT:  -- did what I just said?  What if we

4    just qualify it with that language?  I'm not saying that's

5    going to be the final result.  I'm just asking you the

6    question.

7          MR. ROMNEY:  That is what I'm here asking for

8    today, Your Honor.

9          THE COURT:  Okay.

10         MR. ROMNEY:  Is either removing that language,

11   that paragraph, or qualifying it.  Either one would work, as

12   long as it's clear to the people receiving this order and

13   the subpoenas, that their rights to object under the local

14   rules and Rules of Civil Procedure are being preserved and

15   not circumvented by this order.

16         THE COURT:  Attorney Bassett, were you about to

17   respond to that argument?

18         MR. BASSETT:  I was, Your Honor.  Thank you.

19         I don't think we really have a disagreement on

20   this issue.  As I said in my remarks at the outset, we're

21   not -- we understand that as per the local rule and a

22   practice, parties do have the opportunity to move to quash

23   or otherwise raise issues in response to a subpoena issued

24   pursuant to the Court's Rule 2004 order.

25         All we want to make sure happens is that unless

1    the Court orders otherwise, based on, for example, a

2    successful motion to quash, parties responding to the

3    discovery requests do have to do so within 30 days.

4         Otherwise, we're just very worried about this process

5    dragging out for much longer than necessary under

6    circumstances where we really do need to move things forward

7    and make progress.

8              THE COURT:  Okay.  So you have no issue then

9    if -- Attorney Bassett, if the beginning of the third

10   ordered paragraph says subject to the applicable provisions

11   of the Federal Rules of Civil Procedure, the Federal Rules

12   of Bankruptcy Procedure and the Local Rules of Bankruptcy

13   Procedure?  Something along those lines?

14             MR. BASSETT:  In concept, I think that is fine,

15   Your Honor, because that's specifically with the intention

16   of (indiscernible).

17             THE COURT:  Well, I think what -- the point that's

18   being made, and I think it's fine, and so I think we should

19   just add the additional language so that there's no

20   controversy.  Okay?  And then we can move on.  And then

21   parties will have to take whatever steps they feel are

22   necessary and appropriate.

23             So I would ask you with regard to these three 2004

24   Examination motions that are on the calendar today to submit

25   a revised proposed order changing -- adding that language to

1    the beginning of paragraph -- the third ordered paragraph.

2    Okay?

3              And then those motions are granted.  Then the

4    subpoenas can be served and then we'll see what response you

5    get.  Okay?

6              MR. BASSETT:  Thank you.

7              MR. ROMNEY:  Thank you, Your Honor.

8              The only other thing is I do take some issues with

9    the characterization of our meet and confer.  I'm not

10   suggesting any disingenuousness or dishonesty, but I

11   certainly perceived that conversation differently.

12             I don't think there's any issues before the Court

13   right now and I don't want to take up the Court's time

14   getting into these issues, but I did want to put on the

15   record that we do dispute those characterizations.

16             THE COURT:  There is nothing before the Court and

17   there won't probably be anything before the Court on the

18   meet and confer issues.  Okay?  All right.

19             MR. ROMNEY:  Thank you, Your Honor.

20             THE COURT:  So now that we've resolved the three

21   Rule 2004 Examination motions, which are now granted subject

22   to the submission of revised proposed orders -- and,

23   Attorney Bassett, how much time do you need to get the

24   revised proposed order to the Court?  Orders, I should say,

25   to the Court?

1              MR. BASSETT:  We'll do that today, Your  Honor.

2              THE COURT:  Okay.  Well, they may not enter today.

3    But if they don't enter today, they'll on Monday assuming

4    that they're received today.

5              Then we can go back, Mr. Despins, to the

6    housekeeping matters that you had in your -- at the end of

7    your report that you filed on the docket this morning.

8    Okay?

9              MR. DESPINS:  Yes, Your Honor.  Thank you.

10             And by the way, you had raised questions before we

11   actually did that.  You had raised questions regarding

12   motions that had been filed by the debtors but then were

13   sort of dormant since the appointment of a trustee, so I --

14   I can address those.

15             To the best of my knowledge, I think the first --

16   one of them that you had raised was the application to

17   retain Verdolino.  I recall that you had raised that.  And I

18   understand that Mr. Kindseth -- sorry, yeah, Mr. Linsey,

19   pardon me, just filed a notice of withdrawal of that -- of

20   that application.

21             I also understand that there was a motion to

22   schedule or to set up an interim compensation process.  I

23   think we should just table that because unfortunately

24   there's no money and, therefore, no interim comps to be had

25   in the current regime.  So I think we have to wait --

1          THE COURT:  Well, I'd like to have that motion

2    withdrawn.  You know.  You could refile it again if there's

3    some ability to discuss that --

4          MR. DESPINS:  Okay.

5          THE COURT:  -- but I'd like that motion withdrawn

6    because from the clerk's office standpoint it's still an

7    outstanding motion.

8          MR. DESPINS:  Okay.  We will, Your Honor.

9          The other one that was kind of floating out there

10   was there was a motion to retain Stretto as claims agent.

11   So I'm not sure if that was withdrawn or just them --

12         THE COURT:  I think that already was withdrawn

13   actually.

14         MR. DESPINS:  Okay.

15         THE COURT:  I think the Stretto motion was

16   withdrawn by the debtor-in-possession actually.

17         MR. DESPINS:  Okay.  And the last --

18         THE COURT:  By the debtor-in-possession some time

19   ago.

20         MR. DESPINS:  Thank you, Your Honor.

21         And the last one I have on my list that I think

22   has been resolved is the motion to extend time to the remove

23   actions,  but I believe that was withdrawn by the debtor,

24   and was supplanted by the order that you ordered on our

25   request last week.

1            So that I think that covers what we have on our

2     list of matters that were sort of in limbo, but you may have

3     others, other motions --

4            THE COURT:  Well, if we have others, we can --

5     I'll point them out at the next conference.

6            I know that there was -- in connection with the

7     DIP financing motion, which has been withdrawn by the

8     debtor, which was withdrawn by the debtor-in-possession

9     prior to the appointment of a Chapter 11 trustee, there were

10    two motions for Rule 2004 Examination of HK International

11    and Golden Spring that were filed by the committee.

12           And I don't -- I think that those basically are

13    moot due to the withdrawal of the motion, the DIP motion.

14    But I don't know if the committee has a different view on

15    that.

16           MR. KAPLAN:  I'm sorry, Your Honor.  Can you

17    repeat the motion that you were asking about?

18           THE COURT:  There are two motions for Rule 2004

19    Examination that were filed by the committee some time ago,

20    ECF 295 and 297.  And I believe they were filed in

21    connection with the motion filed by the debtor-in-possession

22    for debtor-in-possession financing.

23           So I think those motions are moot since the

24    financing motion was withdrawn, but I need the committee to

25    withdraw those or report that they're moot at the next

1    status conference.

2            And then the committee was seeking to employ two

3    professionals as well.  Those applications were filed on May

4    4th, 321 and 325.  And I think those should either be

5    withdrawn or moot or if you're proceeding with them, then we

6    need to do something to proceed with them.  Okay?

7            MR. KAPLAN:  Understood.  And we'll -- if we

8    intend to withdraw, we'll do so before the next status

9    conference.

10           THE COURT:  Okay.  All right.  I think if there's

11   anything else, we can talk about that at the next status

12   conference.

13           I'm just looking at a list of issues here.  Just

14   give me a second, please.  I just want to make sure that --

15   before we talk about what Mr. Despins wants to talk about,

16   that I want to just see one other thing here.

17       (Pause)

18           THE COURT:  Okay.  Let me just -- I am not sure,

19   but I could be wrong, so that's why you'll all need to

20   correct me if I'm wrong, which is very possible, did we

21   address fully at the last hearing the Chapter 11 trustee's

22   motion to quash subpoenas served by the debtor on the

23   Chapter 11 trustee, which was 608?  I'm not sure if we have.

24   I don't recall.

25           MR. DESPINS:  Your Honor, I think you did.  You

1    denied them as moot, if I -- if I remember correctly.

2            MR. HENZY:  I agree with that, Your Honor.

3            THE COURT:  Okay.

4            MR. HENZY:  You denied that as moot.

5            THE COURT:  All right.  Thank you.  I'm just not

6    sure I see that on our docket, but it may be there.  And,

7    you know, there are 700 and some odd docket entries, so I

8    could be missing it.

9            MR. LINSEY:  Your Honor, I believe that's at 670.

10           THE COURT:  Thank you.  Okay.  Thank you.  Yes, I

11   see that.  I appreciate your help on that.  Thank you.

12           All right.  So then, Mr. Despins, let's turn to

13   your last housekeeping issues that you wanted to discuss,

14   please.

15           MR. DESPINS:  Yes.  And I'm not going to cover all

16   of them because some of them are self-explanatory.  But the

17   one that I think we need to cover is the motion to establish

18   a reserve -- a repair reserve with respect to the Lady May,

19   and (indiscernible) merits of that, but rather the request

20   to expedite that matter.  The trustee opposes that

21   expedition.  There are a lot of issues relevant to this in

22   the sense that I'll explain.

23           I'm not an expert on engines or yachts, but what I

24   understand from my expert is that you cannot rely only on

25   estimates given, because once you start opening up that

1    engine box, there could be extensive damage beyond what is

2    apparent to the eye initially.

3           And, therefore, our view, and I believe the view

4    of the other parties and the committee and PAX, is that what

5    needs to happen is that repairs have to be made, and then

6    there should be a sea trial, because if the repairs are made

7    and there's a sea trial then that's -- it's subject to

8    sending the scuba divers to check the hull of the yacht.

9    That's the end of the process from the engine's point of

10   view because -- but to say let's establish a reserve, to

11   have the lawyers and the judge say, okay, well, this engine

12   repair should cost XY and Z based on invoices is really

13   imprudent and that's why we believe this shouldn't be

14   expedited.

15          Because what should happen here is that this

16   should be -- the repairs should be done, whatever they are,

17   then we can inspect them and do a sea trial and then come

18   back to Your Honor with any remaining disputes.

19          So I wanted to state for the record that the

20   trustee opposes expedition of that motion.

21          And that's all I'm going to cover regarding the

22   housekeeping matters, Your Honor.

23          THE COURT:  I'm looking at the docket now and I

24   see that this motion was filed -- the motion for an order

25   establishing a reserve for the Lady May was filed yesterday

1    with a motion to expedite.  So I haven't reviewed either one

2    of those two documents at this point in time, but I

3    understand your point.

4              Mr. Kindseth, did you want to be heard?

5              MR. KINDSETH:  Yes.  Thank you very much, Your

6    Honor.

7              The request being made by the trustee is directly

8    contrary to the stipulated order that we reached which

9    contemplated a repair reserve in advance of the repairs so

10   that the repairs would not hold up the release of the $37

11   million.  I understand that estimates are estimates.

12             My client is willing to significantly enhance the

13   amount of the reserve to cover the anticipated repairs and

14   any reasonably projected, worst case scenario.  I mean,

15   significantly enhance.

16             But what's unfair and what's completely contrary

17   to the agreement reached and inappropriate is simply holding

18   up the release of the $37 million pending the completion of

19   the repairs which is directly contrary to the agreement we

20   reached.

21             Your Honor, as I know you appreciate, this

22   stipulated order resolved a very significant and heavily

23   contested issue that transpired over the course of more than

24   a year, if not years.

25             There's a process that's been laid out, including

1    my client depositing $37 million in an escrow agent to

2    secure the return of the Lady May.  The Lady May has been

3    returned.

4            We have permitted, as required by the stipulated

5    order, the trustee, as well as PAX and the committee, and

6    their experts, on July 13th to inspect the Lady May, which

7    is about a month ago.

8            We've provided all of the estimates that we have

9    been provided.  We've used the highest of the estimates in

10   coming up with the repair reserve.

11           Additionally, Your Honor, with respect to the

12   engine, that -- this damage is covered by insurance and so

13   the risk of this engine issue costing more is not a repair

14   reserve issue because there's insurance to cover it.

15           And we would at the repair reserve hearing put on

16   evidence of that, Your Honor.  Notwithstanding our proposal

17   is to fund the full cost of the engine repair as well as the

18   $100,000 deductible.

19           So we basically have done everything plus to

20   protect the estate, protect the trustee's interests.

21           And I really -- Your Honor, I really want to

22   emphasize, because I think this is the point where the

23   trustee, PAX and the committee are acting in bad faith. We

24   have said to them for weeks what amount do you want?

25           $37 million is the original purchase price of the

1       yacht.  The yacht is worth far less now.  The engine damage

2       is covered by insurance.  We're posting that cost anyways.

3       What amount do you want and they've refused to provide it.

4                So what I'd ask that Your Honor do is schedule a

5       hearing, and I'm suggesting the last week of August, on the

6       repair reserve, hear from the experts and decide at that

7       time.  We believe we will be able to establish a reasonable

8       estimate.  And you can even take a reasonable estimate and

9       double it and fund that.  That would satisfy this

10      requirement.

11               And then all of our requirements will have been

12      satisfied, and the $37 million could be released to my

13      client and the estate will be fully protected.

14               And so all I'm asking at this time, Your Honor, is

15      that the Court, consistent with the stipulated order, enter

16      a hearing on the repair reserve so Your Honor can hear from

17      the surveyors, and perhaps the captain and the chief

18      engineer, as to the reasonable costs and the reasonable

19      risks with respect to making these repairs.  Thank you, Your

20      Honor.

21               THE COURT:  Thank you.

22               MR. DESPINS:  Your Honor, very, very briefly.

23               The issue -- we have no problems with that motion

24      being heard.  But I'm sorry if it sounded like that.  But

25      rather it's the expedition that we're concerned about.

1          I mean, this can wait until I guess the first week

2     of September, something like that.  I'm not sure it needs to

3     be resolved by the end of August.  So that's all.  That's

4     the only point we're making for today, because -- simply

5     because you don't have hearings regarding expedition.  And I

6     want to make sure you have the trustee's view.

7          The trustee was not around when this stipulation

8     was entered into.  There was really, you know -- we're not a

9     party to that stipulation.  We don't have visiting rights.

10    But I would say to Mr. Kindseth very kindly gave us those

11    visitation rights, (indiscernible).  Thank you.  We

12    appreciate that.  But the trustee is not a party to that

13    agreement.

14          But in any event, the only issue that's before the

15    Court today is the expedition, actually coming before the

16    Court today, but we would -- you know, we would consider too

17    we want you to know that we oppose the expedition

18    (indiscernible).  Thank you.

19          THE COURT:  Okay.  Thank you.

20          Is there anything else we need to address today?

21          MR. FRIEDMAN:  Your Honor, it's Peter Friedman.  I

22    do want to make two points.

23          Obviously with respect to expedition, you know, we

24    do have rights to submit, and I think an obligation if we're

25    going to object to it, a specified amount of time that

1    shouldn't be truncated.

2           Our own proposal on the repair reserve, if we

3    believe that's appropriate, that it shouldn't be truncated

4    now that the debtor has gone before, I'm sorry, HK

5    International has gone before the Court.

6           To the extent that somebody's going to put on

7    opposing evidence, we need to be able to review all opposing

8    evidence.  Mr. Kindseth said that they intend to put on

9    opposing evidence, perhaps potentially declarations to

10   various people.  Obviously our rights shouldn't be truncated

11   with respect to that.

12          Our view is that, you know, the condition of the

13   ship has multiple facets.  There may be something that

14   parties can agree on a reserve rate with respect to.

15          On the other hand, when the ship is, as we

16   understand it, not able to be sea tested, that poses a

17   different kind of challenge to how we assess ultimately

18   whether the boat can be made operable, which is a condition

19   of the stipulation.

20          So I think, you know, we don't necessarily view

21   every component of this as falling into the same bucket.

22   There may be issues or repairs that we can agree on

23   estimates for.

24          But because we can't do a sea test because of the

25   condition of the engine, that poses a different and

1   meaningful kind of challenge to setting a reserve.

2            THE COURT:  Okay.  Thank you.

3            Anyone else wish to be heard?

4            MR. KINDSETH:  Just one point, Your Honor.

5            Under the stipulated order, it clearly permits

6   them to inspect the Lady May.  They can inspect it again.

7   It was already inspected a month ago.  We'll continue to

8   permit it to be inspected.

9            It was never required, and it was specifically

10  negotiated, the repairs would not be done before the repair

11  reserve was established.  And, therefore, the whole sea test

12  is an after the repairs requirement, not part of the

13  inspection requirement.

14           And I urge Your Honor to enforce the terms of the

15  stipulated order and schedule a repair reserve hearing so

16  Your Honor can hear from everybody.

17           And I would also like to say, Your Honor, I have

18  repeatedly for weeks tried to get the trustee and PAX's

19  counsel to communicate with me as to their issues and

20  they've refused to work with me.  They've refused to provide

21  information.  They've refused to negotiate a reasonable

22  number.

23           And my client is willing to significantly enhance

24  the number, but they're playing games.  They don't -- they

25  don't want a repair reserve.  They want to hold up this

1    whole process.

2                MR. FRIEDMAN:  Your Honor, I just -- I cannot

3    disagree with that more vociferously.

4                We just got the final estimate late last week from

5    counsel, so I don't think it can be said that we're playing

6    games or acting in bad faith.

7                We were waiting for a comprehensive set of all

8    estimate reserve repairs or estimate -- estimating work

9    orders that include time and labor and all material

10   conditions.  And we have made requests.  They were out.  I'm

11   not -- Mr. Kindseth has supplied the information as it's

12   come in, but it's not like we received a full set of

13   information a month ago and haven't responded.

14               So I just -- I don't agree that there's been

15   anything other than good faith in discussion.

16               By the way, including on Mr. Kindseth's side in

17   supplying this information.  I'm not impuging his motives

18   and I don't think ours should be impugned either.

19               THE COURT:  Okay.  Thank you.

20               Anyone else wish to be heard?

21         (No response)

22               THE COURT:  I note that this morning there was a

23   motion to withdraw as attorney filed by counsel for Golden

24   Spring which will be set for a hearing.

25               Mr. Despins, I just have a question for you about

1    is there a need, given that today's August 12th, to have

2    another conference on August 24th as opposed to August

3    7th[sic]?  And if there is, that's fine.  I'm just asking

4    the question.

5           MR. DESPINS:  The problem, Your Honor, is that

6    this case has an issue, what I call issue du jour.  Every

7    day there's a new issue.  But it's very hard for me to tell

8    you today whether we need one on the 24th.

9           But we will be on -- I think as we said to the

10   Court before is that 24 hours before I need to provide an

11   agenda, and if -- and if we have nothing, we will ask the

12   Court to cancel the status conference.

13          THE COURT:  Okay.  That's fair.  That's fine.

14          MR. DESPINS:  But, I mean, we would try our best

15   not to have -- let's put it this way -- from a directional

16   point of view, we will try our best not to have one on the

17   24th.  But the problem is that in this case we move very

18   fast and I would feel really bad if there was some kind of

19   emergency and then we only had September 7th.

20          THE COURT:  I'm not suggesting we shouldn't have

21   one on the 24th.  I was just asking if you felt there was a

22   need.

23          And I understand your point that you'd like to

24   keep those dates that you've proposed, August 24th,

25   September 7th, September 21st and October 3rd as dates for

1    status conferences.  And that's fine.  We'll do that.

2          But we're going to need to have these conferences

3    in person or at least the local counsel in Connecticut have

4    to appear.  It's very difficult -- well, I just think it's

5    more appropriate in this case to be in person.

6          If people want to make requests to appear

7    remotely, there's a process we have in our court to make

8    that request.  And that's what I -- that's the opinion of

9    the Court at this moment.

10          If people tell me there's a reason why they can't

11    appear in person, we have allowed that to happen, but I --

12    this case has, as you've all pointed out, many issues going

13    on at all times, and I don't find -- I find it is not as

14    effective for me to understand the issues when I'm looking

15    at a screen versus when the people are in the courtroom.

16          Obviously, if there's a change in COVID situations

17    and we're required to do something different in this

18    courthouse, then that would -- obviously we wouldn't be in

19    person.  But we're not under that directive from the

20    district court at this point.

21          So in any event, the status conferences that

22    you're looking for I believe, Mr. Despins, since they're

23    going to be in person, at least, unless people obtain an

24    order allowing them to appear remotely, that we can start

25    them later in the day.

1              We can start them -- we can have it at 11 or 12 or

2       something like that if that's more helpful for people, or in

3       the afternoon if that's -- but the 24th actually would have

4       to start at noon or 1:00.  I have to attend to something in

5       the afternoon of the 24th, so it would have to be noon or 1

6       o'clock.  Do people have a preference?

7              Mr. Despins, do you have a preference?

8              MR. DESPINS:  Your Honor, I'm just five stops down

9       the Metro North.  I can be there at noon, 1:00, whatever you

10      want.

11             THE COURT:  Thank you.

12             Does anyone else have a preference on timing?

13             MR. HENZY:  Not for the debtor, Your Honor.

14             THE COURT:  Okay.  All right.  Hearing nothing,

15      then we'll set the Wednesday, 24th, August 24th, status

16      conference at 1:00 p.m.  And then we'll address the times of

17      the other conferences.

18             I'm going to have to review the matters that were

19      discussed, the motion to expedite and the repair reserve.  I

20      haven't even looked at those motions, so I'd have to review

21      that.

22             We've already discussed the three 2004 Examination

23      motions, which are granted subject to the submission of a

24      revised proposed order for each one of those motions.

25             And I believe that's all we can address today.

43

1       Okay.  Thank you, all.

2               MR. DESPINS:  Thank you, Your Honor.  Thank you.

3          (Proceedings concluded at 10:58 a.m.)

4               I, CHRISTINE FIORE, court-approved transcriber and

5       certified electronic reporter and transcriber, certify that

6       the foregoing is a correct transcript from the official

7       electronic sound recording of the proceedings in the above-

8       entitled matter.

9

10      *Christine Fiore*

11      _____          August 16, 2022

12         Christine Fiore, CERT

13            Transcriber

14

15

16

17

18

19

20

21

22

23

24