**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                      :
In re:                                :      Chapter 11
                                      :
HO WAN KWOK,                          :      Case No. 22-50073 (JAM)
                                      :
            Debtor.¹                  :
                                      :
-------------------------------------------------------x
```

**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER
(A) PROVIDING THAT CONTROL OF ANY ATTORNEY-CLIENT PRIVILEGE,
WORK PRODUCT PROTECTION, AND OTHER PRIVILEGES RELATED TO RULE
2004 SUBPOENAED DOCUMENTS PASSED TO TRUSTEE UPON APPOINTMENT,
(B) DIRECTING THAT DEBTOR AND OTHER EXAMINEES NOT WITHHOLD
DOCUMENTS ON ACCOUNT OF SUCH PRIVILEGES, AND
(C) GRANTING RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Debtor"), hereby moves (the "Motion"), pursuant to

sections 323, 521, 541, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"),

rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Rules"), and the Court's orders

granting the Trustee's motions for examination pursuant to Rule 2004, for an order confirming

that the Trustee controls certain privileges formerly held by the Debtor and directing that the

Debtor and other examinees not withhold documents or information from production to the

Trustee on the basis of any such privileges or attempt to assert any such privileges that are

properly owned by the Trustee.  In support of this Motion, the Trustee respectfully states as

follows:

---

¹ Although the Debtor's legal name is Ho Wan Kwok, he is also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases.  The last four digits of the Debtor's taxpayer identification number are
9595.

## PRELIMINARY STATEMENT

1.      Pursuant to the Court's orders granting the Trustee's motions for Rule 2004 discovery, the Trustee has served subpoenas on the Debtor and numerous law firms and other professional advisors who represented him either in connection with the administration of this case or in relation to other non-bankruptcy matters (collectively, the "Discovery Recipients").[2] The information the Trustee seeks from the Discovery Recipients is critical to his investigation, because there is myriad evidence suggesting the Debtor may have sought to place his most valuable assets beyond the reach of his creditors—including through the use of shell companies and purported trusts and with the aid or collusion of his family members and other trusted accomplices.  The Debtor could not have designed and implemented these schemes and related transactions without advice and guidance from counsel and other professionals.  Accordingly, only through access to this information will the Trustee be able to fully investigate and understand the true extent and nature of the Debtor's assets and financial affairs.

2.      The Debtor, however, has taken the position that he may attempt to prevent the Trustee from obtaining some or all of this information by seeking to invoke attorney-client privilege, the work product doctrine, or other privileges or protections.  The Debtor's position is unsupported by the law.  Rather, the law is clear that, immediately upon the Trustee's appointment, control of any privileges attaching to documents and communications regarding the Debtor's assets, liabilities, financial condition, and the administration of his estate passed to the Trustee, and such privileges may no longer be asserted by the Debtor.

---

[2] For purposes of this Motion, the Discovery Recipients consist of the Debtor and the 14 professional firms who were the subject of the Debtor's Rule 2004 motion directed to such parties.  *See Omnibus Motion of Chapter 11 Trustee for Entry of Order under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Legal and Financial Advisors to the Debtor* (ECF No. 637).

3.      Bankruptcy courts have frequently entered orders confirming a trustee's rights and authority in this regard.  Specifically, in determining when control of privileges passes to a trustee (and does not remain with an individual debtor-out-of-possession), the vast majority of courts have applied a balancing test which considers whether the subject of the privilege relates more to rights and responsibilities of the trustee—such as those relating to the debtor's assets, finances, or estate administration—or instead concern other interests personal to the debtor— such as issues relating to his liberty, potential criminal liability, or control of his person.

4.      In nearly every instance where a court has applied this balancing test in the context of requests for documents such as those requested by the 2004 subpoenas at issue—i.e., documents squarely related to a trustee's efforts to identify and recover potential assets of the estate, his efforts to understand the debtor's financial affairs, or the administration of the debtor's estate—the court has found the trustee controls the privileges as to such documents.  This Court should come to the same conclusion:  the Trustee has succeeded to the Debtor's rights to control applicable privileges with regard to the documents and information the Trustee has requested,[3] and the Debtor has no basis to invoke any privileges to withhold such documents and information from production or to instruct other Discovery Recipients (e.g., his current or former counsel) to do so.

5.      Accordingly, by this Motion, the Trustee seeks an order in the form attached hereto as **Exhibit A** confirming that (i) the Trustee owns and controls the attorney-client privilege, work product protection, and other applicable privileges or protections on issues related to the Debtor's assets and financial affairs and the administration of his estate and (ii) the

---

[3] To the extent the Debtor has privileged documents that do not relate to these topics and are not responsive to the Rule 2004 subpoenas, the determination of who controls that privilege need not be decided at this time.

Discovery Recipients cannot withhold documents or information from the Trustee on the basis of any such privileges.

### JURISDICTION, VENUE, AND STATUTORY BASES

6.      The United States Bankruptcy Court for the District of Connecticut (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended). This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

7.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 323, 521, 541, and 1108 of the Bankruptcy Code and Rule 2004.

### PROCEDURAL POSTURE

9.      On February 15, 2022 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

10.     On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in the Debtor's chapter 11 case (the "Chapter 11 Case"). No examiner has been appointed in the Chapter 11 Case.

11.     On June 15, 2022, the Court entered a memorandum of decision and order (ECF No. 465) (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee.

12.     The Trustee Order held, in relevant part that, "[w]hen balanced against dismissal or conversion, the complexity of the Debtor's financial affairs and lack of independent managerial oversight in this case warrants the appointment of a Chapter 11 trustee who can

4

investigate, identify, and locate the Debtor's assets for the benefit of creditors and the estate" and

that "[t]he Chapter 11 trustee shall perform all of the duties set forth in 11 U.S.C. § 1106." (*See*

Trustee Order at 15-16, 18).

13.     The Trustee Order further held that "[t]he appointment of a Chapter 11 trustee

will also allow for the effective investigation of the Debtor's assets, liabilities, and financial

affairs" and "allow[] the Chapter 11 trustee to investigate the Debtor's assets, liabilities, and

financial affairs and to ensure compliance with the provisions of the Stipulated Order." (See *id.*

at 14, 18).

14.     On July 8, 2022, the Court entered an order granting the appointment of Luc A.

Despins as the Trustee in the Chapter 11 Case (ECF No. 523) (the "Appointment Order").

15.     On July 28, 2022, the Trustee filed three related motions: (i) Motion of Chapter

11 Trustee for Entry of Order under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing

Examination of Ho Wan Kwok and Production of Documents (ECF No. 636) (the "Debtor 2004

Motion"); (ii) the Omnibus Motion of Chapter 11 Trustee for Entry of Order under Bankruptcy

Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Legal and

Financial Advisors to the Debtor (ECF No. 637) (the "Professionals 2004 Motion"); and (iii) the

Omnibus Motion of Chapter 11 Trustee for Entry of Order under Bankruptcy Rule 2004 and

Local Rule 2004-1 Authorizing Discovery with Respect to Various Entities and Individuals

Affiliated with the Debtor (ECF No. 638) (the "Third-Party Motion" and together with the

Debtor 2004 Motion and the Professionals 2004 Motion, the "Rule 2004 Motions," attaching the

"Rule 2004 Subpoenas").

16.     On August 2, 2022, counsel for the Trustee and counsel for the Debtor met and

conferred via teleconference regarding the limited issues concerning the Rule 2004 Motions (the

"August 2 Meet and Confer").  During the meet and confer, counsel for the Debtor suggested

that, despite the Rule 2004 Subpoenas being limited to topics core to the Trustee's rights and

obligations, including identification and investigation of the estate's assets, financial condition

and administration, absent a ruling from the Court, counsel believed it was likely the Debtor

would seek to withhold potentially responsive documents on the grounds that the Debtor, and not

the Trustee, controlled the relevant privilege.  Counsel for the Trustee made clear that it could

not see a basis for the Debtor to claim that control of the attorney-client privilege as to the

requested information had not passed to the Trustee, and asked that to the extent the Debtor was

aware of any such documents, or any basis for the Debtor to assert such a privilege, it identify

those issues to the Trustee immediately, so as to avoid any delay. For the Debtor's part, his

counsel suggested that the Court should provide guidance on privilege issues in advance of

future disagreements over privilege.

17.    On August 5, 2022, Brown Rudnick filed a Response and Reservation of Rights

to the Professionals 2004 Motion (ECF No. 698) (the "Brown Rudnick Response"). The Brown

Rudnick Response "recognize[d] that the Trustee has generally succeeded to the privileges of the

Debtor, including the attorney-client privilege." (*See* ECF No. 698 at 2). Nonetheless, the Brown

Rudnick Response "reserve[d] all rights to object to any particular discovery request" including

"nondisclosure owed to third parties." (*See* ECF No. 698 at 2–3).

18.    On August 5, 2022, Verdolino & Lowey, P.C. filed a Response and Reservation

of Rights to the Debtor's Professionals 2004 Motion (ECF No. 699) (the "Verdolino & Lowey

Response"). The Verdolino & Lowey Response, like the Brown Rudnick Response,

"recognize[d] that the Trustee has generally succeeded to the privileges of the Debtor, including

the attorney-client privilege." (*See* ECF No. 699 at 2). However, the Verdolino & Lowey

Response, also like the Brown Rudnick Response, "reserve[d] all rights to object to any particular discovery request" and noted that the "production of documents and examination may be properly subject to certain legal or ethical limitations . . . [which] may be subject to further orders of this Court. (*Id.*).

19.    On August 5, 2022, the Debtor filed a Limited Objection to the Rule 2004 Motions (ECF No. 703) ("Debtor's Limited Objection"), noting the Debtor's position that control over the attorney-client privilege in connection with the Rule 2004 motion was legally ambiguous and a "a question for another day." *See* Debtor's Limited Objection at 2 (citing Debtor 2004 Motion at 15-16; Professionals 2004 Motion at 19-20). The Debtor's counsel, Aaron Romney of Zeisler & Zeisler, P.C., submitted a Declaration in Support of the Debtor's Limited Objection (ECF No. 732) (the "Romney Declaration"), reflecting the Debtor's position that the issue of control of the attorney-client privilege be submitted "to the Court in an omnibus fashion on a reasonable timetable." (Romney Declaration at 4).

20.    On August 10, 2022, the Trustee filed a Reply in Support of the Rule 2004 Motions (ECF. No. 724) ("Trustee's Reply"), reiterating that the Trustee's ownership of the Debtor's privileges is a critical issue that the Court should resolve as soon as possible. (*See* ECF No. 724 at 4 n.2). The Trustee's Reply indicated an intent to bring this issue before the Court in the near future. (*Id.*).

21.    On August 12, 2022, the Court held a hearing with respect to the Rule 2004 Motions and directed the Trustee to file revised proposed orders with respect to the Rule 2004 Motions. (*See* ECF No. 742). At the hearing, counsel for the Trustee made clear that, because it appeared that the Debtor would assert a privilege over responsive documents called for under the proposed Rule 2004 subpoenas on the grounds that control of the privilege was ambiguous, the

Trustee intended to seek a ruling from the Court on these issues.  (Hr'g Tr. at 15:12-15).  Brown

Rudnick, as prior counsel to the Debtor, agreed that such a ruling would be extremely helpful.

(Hr'g Tr. at 20:19-21).

22.     On August 16, 2022, the Court granted the Rule 2004 Motions, authorizing the

respective examinations and service of the document requests. (Order Granting Chapter 11

Trustee's Application for Rule 2004 Discovery with Respect to Various Legal and Financial

Advisors to the Debtor (ECF No. 756), Order Granting Chapter 11 Trustee's Application for

Rule 2004 Examination of Ho Wan Kwok (ECF No. 757), and Order Granting Chapter 11

Trustee's Application for Rule 2004 Discovery with Respect to Various Entities and Individuals

Affiliated with Debtor (ECF No. 756) (the three orders collectively, the "Rule 2004 Orders")).

23.     The Trustee has now served, or is in the process of serving, the subpoenas

attached to the Rule 2004 Motions on parties to the Rule 2004 Motions.

24.     Given the Court's granting of the Rule 2004 Motions, and the parties'

disagreement concerning passage of control of the privileges to the Trustee with respect to

documents concerning the Debtor's assets, liabilities, and financial condition and the

administration of the bankruptcy estate, this Motion is ripe for consideration by the Court, so as

to prevent delay caused by unwarranted withholding of responsive documents.

## FACTUAL BACKGROUND

25.     The Debtor's schedules list aggregate unsecured claims against him in the total

amount of approximately $374 million (*See* ECF No. 78, at 1, hereinafter referred to as the

"Debtor's Schedules"). The asserted $261 million claim of Pacific Alliance Asia Opportunity

Fund L.P. ("PAX") is the largest single claim identified among the Debtor's scheduled

unsecured claims at this time. (*See id.*, Attached Schedule F).  The Debtor's Schedules also list a

8

secured claim in an unknown amount purportedly belonging to Golden Spring (New York) Ltd.

("Golden Spring"), an entity purportedly owned by the Debtor's son, Qiang Guo (the "Son" or

"Qiang").  (*See id.*, Attached Schedule D).  This claim is allegedly secured by "[c]ertain claims

and recoveries thereto," and is asserted to have arisen in connection with a "Litigation Funding

Agreement."

26.     The Debtor's schedules list assets of only $3,850.[4] (*See id.* at 3-7).  The Debtor,

contrary to widespread reports of his numerous business interests and self-described assertions of

extraordinary wealth,[5] asserts that he earns no income, and that his expenses are paid for by

Golden Spring (*See id.* at 1; *see also* ECF No. 107 at ¶17, hereinafter referred to as the "Debtor's

Declaration").

27.     The New York Supreme Court has found that the Debtor has engaged "in efforts

to avoid and deceive his creditors by parking his substantial personal assets with a series of

corporations, trusted confidants, and family members" and has "secreted his assets in a maze of

corporate entities and with family members." *See* Decision and Order on Motion, *Pacific*

*Alliance Asia Opportunity Fund L.P. V. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Feb.

9, 2022), at 1.

28.     The Debtor's Rule 2004 Motion (ECF No. 636) more fully sets forth the known

web of entities associated with the Debtor and potential assets he may be secreting in those

entities.  Many of the entities appear to be part of complex legal constructs designed to obfuscate

---

[4] The Debtor has scheduled certain assets with unknown values, including disputed unregistered copyrights and litigation claims. (*See* Debtor's Schedules at 6).

[5] "I have absolutely no regrets for what I have done over the past nine months. I have the *wealthy life that everyone in the world dreams about*. I have the *biggest house in Hong Kong*, thousands of square meters. I have the *most luxurious apartment in London*. I have the *biggest place in Beijing*. I *have more than 10 properties in Pangu*. I have *two private jets*. I have the *most advanced yachts*. I have *hundreds of race cars*. I have *an apartment like this in New York*. I don't have any material needs anymore.").  (*See, e.g.,* Vice News, Exiled Chinese Billionaire Uses YouTube to Wage A War On Corruption, YOUTUBE, at  6:38-7:07 (Nov. 15 2017) (emphasis added), hereinafter referred to as the "Vice News Interview").

the Debtor's control of assets, and whose existence and use are necessarily predicated on legal advice. Upon information and belief, the Debtor also has financial interests in myriad associated entities and purported not-for profits run by his family members and close allies. These entities and relationships are summarized in more detail in the Rule 2004 Motions.

29.     Numerous third parties, including the Debtor's law firms, accountants and financial firms, have advised the Debtor or related entities and individuals on a number of business deals and other matters concerning assets, liabilities or financial interests potentially relevant to the administration of the Debtor's estate. These professionals likely have information, based on their communications with the Debtor and work they performed at his or others' requests that could be of vital importance to the Trustee's investigation.

30.     The Trustee has thus far identified thirteen professional and advisory firms (and the principal of one such firm) that may be in possession or control of information or documents concerning potential assets of the estate, the Debtor's financial condition, and administration of the estate. These firms, each of which is a Discovery Recipient, are listed below:

- **BAKER HOSTETLER LLP** has represented the Debtor in the New York state court litigation involving the Debtor's largest scheduled unsecured creditor, PAX, and is party to an executory engagement letter with the Debtor. *See Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.).

- **BOIES SCHILLER FLEXNER LLP** was counsel of record for the Debtor "in connection with several lawsuits." *Guo Wengui v. Schiller*, No. 150001/2019, (Cohen, J.) (N.Y. Sup. Ct. May 23, 2019). The Debtor and Boies Schiller Flexner LLP eventually litigated a fee dispute before an arbitrator.

- **BROWN RUDNICK LLP** is the Debtor's former chapter 11 counsel and would have assisted the Debtor in drafting his petition, schedules of assets and liabilities, and statement of financial affairs.

- **CLARK HILL PLC** allegedly represented the Debtor in connection with certain immigration matters. The Debtor has initiated litigation against Clark Hill PLC for breach of contract, among other claims, and seeks approximately $50 million in

compensatory damages.  This cause of action is estate property that may provide value to creditors and must be investigated thoroughly by the Trustee.

- **THE FRANCIS FIRM PLLC** is a law firm included in the schedules to the Debtor's *Motion for Entry of an Order Authorizing (I) Employment and Payment of Professionals Utilized in the Ordinary Course, (II) Payment of Prepetition Claims, and (III) Granting Related Relief*, (ECF No. 119).  In addition to the Francis Firm PLLC's apparent role as outside counsel to the Debtor or others, **MELISSA B. FRANCIS** is General Counsel to Golden Spring, the "family office" of the Debtor,[6] which the Debtor claims pays all of his living expenses.

- **HODGSON RUSS LLP**, like Baker Hostetler LLP, has represented the Debtor in *Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.).

- **JANOVER LLC** is an accounting and advisory firm included in the schedules to the Debtor's *Motion for Entry of an Order Authorizing (I) Employment and Payment of Professionals Utilized in the Ordinary Course, (II) Payment of Prepetition Claims, and (III) Granting Related Relief*, (ECF No. 119).

- **LAWALL & MITCHELL, LLC** is a formal and informal legal advisor to the Debtor and Debtor-related entities across numerous lawsuits, including acting counsel to Genever (US) in certain New York state court matters and representing the Debtor—at least temporarily—before this Court, among other appearances on behalf of the Debtor and Debtor-related entities in other prepetition litigation.  Upon information and belief, Lawall & Mitchell, LLC coordinates legal actions across multiple jurisdictions on behalf of multiple entities likely controlled by the Debtor, all for the benefit of the Debtor.

- **MATTHEW LEVINE** of Elliott Kwok Levine & Jaroslaw, and formerly of Phillips Nizer LLP, represented Lamp Capital LLC in its capacity as a non-party involved in *Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.).

- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON** advised the Debtor regarding the formation of Genever NY, a wholly owned subsidiary of Genever BVI, whose equity is held by the Debtor in his individual capacity. Paul, Weiss, Rifkind, Wharton & Garrison LLP (c/o Brad Karp), is the registered agent according to Genever NY's Limited Liability Company Agreement.

- **PHILLIPS NIZER LLP** represented Lamp Capital LLC in its capacity as a non-party involved in *Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.).

---

[6] *Eastern Profit Corp. v. Strategic Vision US LLC*, 2021 U.S. Dist. LEXIS 116334, at *4 (S.D.N.Y. June 22, 2021).

- **VERDOLINO & LOWEY P.C.** is an accounting firm and was the proposed financial advisor to the debtor-in-possession. *See Debtor's Application for Authorization to Retain and Employ Verdolino & Lowey, P.C. as Financial Advisor*, (ECF No. 90).

- **WHITMAN BREED ABBOTT & MORGAN LLC** has served as counsel to the Debtor and/or Greenwich Land LLC in connection with the acquisition by the Debtor, or entities controlled by the Debtor, of real property in Connecticut that may be estate assets. A representative of Whitman Breed Abbott & Morgan LLC has represented to the Trustee that the firm has represented the Debtor.[7]

## RELIEF REQUESTED

31.     By this Motion, the Trustee respectfully requests that the Court enter an order confirming that, upon the Trustee's appointment, control over any attorney-client privilege, work product protection, and other privileges relating to the assets, liabilities, financial status or administration of the estate passed to the Trustee, and that neither the Debtor nor any other Discovery Recipient shall withhold any documents responsive to the Rule 2004 Subpoenas on the basis of any such privilege or attempt to assert any such privilege. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "Proposed Order").

## BASIS FOR RELIEF

I.     **CONTROL OF ATTORNEY-CLIENT PRIVILEGE PASSES TO CHAPTER 11 TRUSTEE ON ISSUES RELATED TO ESTATE ASSETS, DEBTOR'S FINANCIAL CONDITION, AND ADMINISTRATION OF ESTATE**

32.     The Supreme Court in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) ("*Weintraub*") addressed the issue of whether, upon appointment of a trustee, control of a corporation's attorney-client privilege passes to the trustee, or remains with the debtor's management. The Court stated that "[t]he dispute in this case centers on the control of the attorney-client privilege of a corporation in bankruptcy. The Government maintains that the

---

[7] The professionals associated with the Debtor are more fully explored in the Professionals 2004 Motion (ECF No. 637). The Trustee reserves all rights to supplement the list of professionals included therein.

power to exercise that privilege with respect to prebankruptcy communications passes to the

bankruptcy trustee." *See Weintraub*, 471 U.S. at 349.[8]

33.     The Supreme Court highlighted that:

[t]he powers and duties of a bankruptcy trustee are extensive. Upon the
commencement of a case in bankruptcy, all corporate property passes to an estate
represented by the trustee. 11 U.S.C. §§ 323, 541. The trustee is 'accountable for
all property received,' §§ 704(2), 1106(a)(1), and has the duty to maximize the
value of the estate, *see* § 704(1). He is directed to investigate the debtor's financial
affairs, §§ 704(4), 1106(a)(3), and is empowered to sue officers, directors and
other insiders to recover, on behalf of the estate, fraudulent or preferential
transfers of the debtor's property, §§ 547(b)(4)(B), 548. Subject to court approval,
he may use, sell, or lease property of the estate. § 363(b). . . . As even this brief
and incomplete list should indicate, the Bankruptcy Code gives the trustee wide-
ranging management authority over the debtor…. In contrast, the powers of the
debtor's directors are severely limited. Their role is to turn over the corporation's
property to the trustee and to provide certain information to the trustee and to the
creditors. §§ 521, 343. Congress contemplated that when a trustee is appointed, he
assumes control of the business, and the debtor's directors are 'completely
ousted.'

*Weintraub*, 471 U.S. at 352-53 (citations omitted).

34.     Based on this "allocation of responsibilities" under the Bankruptcy Code, the

Court found that, in bankruptcy, the trustee steps into the shoes of the corporate debtor for the

purposes of controlling privilege, just as the trustee does for management of the corporate debtor

more generally. *See id.* at 353-54 ("[I]t is clear that the trustee plays the role most closely

analogous to that of a solvent corporation's management" and "vesting in the trustee control of

the corporation's attorney-client privilege most closely comports with the allocation of the

waiver power to management outside of bankruptcy without in any way obstructing the careful

design of the Bankruptcy Code.").

---

[8] The Supreme Court's language here, and throughout the decision, makes clear that it was deciding whether control
of the attorney-client privilege passed to the trustee in bankruptcy, not whether there was an exception to the
attorney-client privilege in bankruptcy, nor whether filing a bankruptcy case effectuated a waiver of any previously
existing privilege, thus allowing the trustee access to previously privileged documents.

35.    The Supreme Court noted that it was not opining on the passage of the privilege to a trustee in the case of an individual debtor.  Specifically, the Court recognized that, insofar as "there is no 'management' that controls a solvent individual's attorney-client privilege," passage of control of the attorney-client privilege to a trustee for an individual debtor must be premised on another theory. *Id.* at 356.

36.    The Supreme Court did not however, suggest that control of the attorney-client privilege should not pass to a trustee for an individual debtor or that the needs of a trustee appointed in the case of an individual debtor would in any way differ from the needs of a trustee for a corporate debtor.  To the contrary, all of the Supreme Court's detailed citations concerning the role and responsibilities of a trustee under the Bankruptcy Code apply equally to a trustee for an individual as they do to a trustee for a corporate debtor.

37.    In the wake *Weintraub*, numerous lower courts have set out to determine when the Bankruptcy Code's allocation of responsibilities as between a trustee and an individual debtor out-of-possession require the individual debtor's control of the attorney-client privilege to pass to a trustee, and when a debtor's interests as an individual (an issue not relevant for a corporation) remain paramount, and therefore favor the debtor's retention of the privilege.

38.    With respect to prepetition communications, a significant majority of courts addressing this issue have employed a "balancing test," pursuant to which the court attempts to determine whether the privilege at issue relates most closely to a trustee's rights, obligations and allocation of responsibility under the Bankruptcy Code, or whether the privilege primarily concerns the debtor's interests as an individual.  *See, e.g., In re Bame*, 251 B.R. 367, 375 (Bankr. D. Minn. 2000).[9]  For the avoidance of doubt, what the courts seek to balance is whether control

---

[9] As noted by the court in *Bame*, in addition to the more common balancing analysis, a minority of courts have fallen on either extreme, with some holding that "*per se* an individual's attorney-client privilege as to prepetition

of a privilege should pass to a trustee or remain with the debtor, not whether or not the information is privileged in the first instance.[10]

39.    As the court explained in *In re Bazemore*, 216 B.R. 1020, 1024 (Bankr. S.D. Ga. 1998), "[t]he filing of bankruptcy by an individual debtor requires a determination as to whether anyone else controls the privilege.  The inquiry requires balancing the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure with the trustee's duty to maximize the value of the debtor's estate and represent the interests of the estate." (citing *Weintraub*).  *See also In re Foster*, 188 F.3d 1259, 1267 (10th Cir. 1999) (citing *Bazemore* and remanding decision to bankruptcy court to apply balancing test).

40.    Similarly, the court in *Bame* characterized the analysis as whether an "individual debtor's attorney-client privilege as to prepetition communications does transfer to the trustee under certain circumstances, i.e., when on balance the trustee's duties to maximize the value of the estate outweigh the policies underlying the attorney-client privilege and the harm to the debtor of disclosure."  251 B.R. at 377.  *See also In re Courtney*, 372 B.R. 519, 521 (Bankr. M.D. Fla. 2007) ("[T]he Court finds that the majority view of striking a balance between the harm to the debtor and the benefit to the estate is a more practical, if also more unpredictable, approach."); *In re Tarkington*, No. 10-00012-8-JRL, 2010 WL 1416813, at *2 (Bankr. E.D.N.C. Apr. 2, 2010) ("In the wake of *Weintraub,* courts have generally taken one of three approaches when determining if a trustee's waiver is effective. . . . [the balancing test] appears to the most common." (citations omitted)).

---

communications never passes to the trustee" and some holding that "*per se* an individuals' attorney-client privileged communications always transfer to the trustee." *Bame*, 251 B.R. at 376-77. The trend towards favoring the balancing test and away from either absolute principle has only become more widely accepted in the years since *In re Bame* was decided.

[10] Accordingly, any argument by the Debtor that it will not willingly waive its privileges to grant the Trustee access to these documents is inapposite. No privilege is waived when control of the privilege passes to the Trustee.

41.     Courts applying this balancing test routinely find the trustee to control the privilege with regard to documents that may identify and aid in the recovery of assets for the benefit of the estate and creditors or that relate to the administration of the estate.  *See, e.g.*, *Bazemore*, 216 B.R. at 1024 (finding that trustee held right to waive attorney client privilege where it sought documents to determine if estate held cause of action); *Bame*, 251 B.R. at 377 (finding in favor of trustee's request to control privilege of individual debtor when seeking discovery of documents in order to recover assets); *In re Horvath*, No. 13-34137, 2015 WL 2195060, at *6 (Bankr. N.D. Ohio May 7, 2015) (discovery related to claims on schedule of assets permissible from individual debtor because trustee sought to potentially increase value of debtor's estate, and finding that "the Trustee is entitled to waive Debtor's attorney-client privilege" and holding that "the sole purpose of the Trustee's inquiry is to augment her ability to administer the estate with respect to those assets and to potentially increase the value of Debtor's estate to his creditors"); *Tarkington*, 2010 WL 1416813, at *3 (Bankr. E.D. N.C. 2010) ("[U]nder the balancing approach . . . the court will allow the 2004 examination . . . to proceed. The trustee's waiver of attorney-client privilege is valid to the extent that questions asked during the examination pertain to the administration of estate property. No harm will befall the debtor through questions posed to determine if there are assets which would be considered estate property"); *In re Wittmer*, No. 08-61618, 2011 WL 6000799, at *3 (Bankr. N.D. Ohio Nov. 30, 2011) (finding "that the Trustee may waive the attorney-client privilege of the debtors as to the Defendants.")[11]

---

[11] For clarity, where the courts speak of the ability to "waive the attorney-client privilege," that is a reference to the ability to control the privilege (the holder has the fundamental right to determine if information remain privileged or not), and not that a trustee's ability to review documents that were privileged is predicated on that privilege having been waived.

42.     On the other hand, the balance may tip to an individual debtor retaining control of the privilege when transfer of the privilege might result in great harm "to or control over [a debtor's] person," such as exposure to criminal liability, or where there may be an overriding concern for the chilling effect on attorney-client communications.  *See Bazemore*, 216 B.R. at 1025; *Bame,* 251 B.R. at 377 (finding that, in regard to "most questions the Trustee could ask of counsel," trustee controls privilege, but noting that in regard to communications having to do with activities that could lead to criminal charges against debtor "the balance would probably tip in favor of sustaining assertion of the privilege . . . ."); *In re Miller*, 247 B.R. 704, 710 (Bankr. N.D. Ohio 2000) (concluding under balancing test that "Trustee's assumption of the Debtor's attorney-client privilege could potentially cause the Debtors a great deal of harm, as the Trustee's sole purpose for seeking to waive the Debtors' attorney-client privilege is to use that information directly against them. (i.e., to revoke the Debtors' bankruptcy discharge.").

## II.     TRUSTEE CONTROLS ATTORNEY-CLIENT PRIVILEGE FOR ALL SUBPOENAED DOCUMENTS

### A. Balancing Test Supports Passage of Privilege to Trustee for Prepetition Documents

43.     For any prepetition documents responsive to the Rule 2004 Subpoenas, the balance weighs heavily in favor of control of the attorney-client, work product, and any other applicable privileges passing to the Trustee, as the requested documents relate to the Trustee's core responsibilities to investigate potential estate assets and the Debtor's financial affairs.

44.     Specifically, the discovery requests attached to the Rule 2004 Subpoenas seek discovery of documents and communications relating to (i) specific assets and property interests discussed in the Motion (e.g. the *Lady May*, the Condominium, the Greenwich properties, and the various other homes, private jets and other assets associated with the Debtor); (ii) the Debtor's interests in and relationships with other individuals, corporate entities and nonprofits,

which may be a source of the Debtor's wealth; and (iii) the Debtor's communications with his counsel and other advisors regarding corporate governance issues and the Debtor's finances and property interests. *See, e.g.*, Debtor 2004 Motion at 12-18.

45.     The Trustee needs these documents to explore the clear incongruity between the Debtor's lavish lifestyle (as well as his incessant public boasting about the extent of his wealth and assets) and his identification of a mere $3,850 in assets on his schedules in this case.[12]  *See* ECF No. 78, at 3–7.  Moreover, the public record is replete with evidence that the Debtor has utilized complex legal structures to engage "in efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members" and to "secret[] his assets in a maze of corporate entities and with family members" in "efforts to deceive his creditors."  *See* Decision and Order on Motion, *Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Feb. 9, 2022), at 1.  The Debtor no doubt received advice from counsel as to these issues and, therefore, the documents the Trustee seeks from the Discovery Recipients are likely to be highly relevant to the Trustee's investigation into potential estate assets and the Debtor's finances—*i.e.*, exactly the types of issues on which courts hold the privilege passes to the Trustee.  Furthermore, given that existing causes of action initiated by the Debtor are assets of the estate, it is only by granting the Trustee control over the attorney-client privilege and attorney-work product related to those matters that the Trustee can oversee and administer those litigations.

46.     On the other side of the scale, the subpoenaed documents are not sought to establish the Debtor's criminality, to restrict his liberty, or to abrogate any right he retains as a debtor-out-of-possession.  No request under the Rule 2004 Subpoenas focuses on the Debtor's

---

[12] *See* ¶ 31, *supra*.

unique rights as an individual or his personal liberty.  Each request, rather, is tailored to identify

information related to Debtor's assets and financial condition, his relevant business practices,

and how he administered his estate.  The Trustee's role is not to seek criminal liability for the

Debtor, nor to impose onerous restrictions on his freedom or person.[13]

47.    That the Debtor may have a different view regarding who owns or controls certain

assets is inapposite, and certainly not a basis to give the Debtor control of the attorney-client

privilege for responsive documents.  Indeed, the fact that serious questions surround the Debtor's

self-reporting of his purported assets and the administration of his estate is the primary reason for

the appointment of the Trustee.  The Debtor cannot claim that because he believes another party

owns valuable assets (e.g., his purported belief that his daughter or a company controlled by her

owns the *Lady May*) that he is "adverse" to the Trustee on the issue and, therefore, can retain

control of the attorney-client privilege as to documents related to such assets.  The Trustee is

aware of no case applying the balancing test that would support such an argument.[14]

48.    Finally, passing control of the attorney-client privilege to the Trustee, as it relates

to the core issues for which the Trustee was appointed, will not in any way chill attorney-client

communications.  There is nothing unique about the Debtor's communications with his counsel

---

[13] To the extent that some of the documents the Trustee seeks may reveal evidence of activity in furtherance of a crime or fraud, such documents would likely fall within the crime-fraud exception to the attorney-client privilege and, therefore, would still be discoverable, but this issue is not before the court at this time.  *See Bame,* 251 B.R. at 377 (noting that in regard to communications having to do with activities that could lead to criminal charges that "the trustee would have the opportunity to raise the crime-fraud exception to the privilege.").  *See generally In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038 (2d Cir. 1984) ("It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.").

[14] To the extent that the Debtor opposes the investigation and discovery of potential assets of the estate, such opposition is contrary to the Debtor's duty to cooperate with the Trustee and assist the Trustee in administering the estate and locating estate assets.  *See In re McCourt,* 12 B.R. 587, 589 (Bankr. S.D.N.Y. 1981) ("The trustee in bankruptcy draws upon Code § 521(2), which directs a debtor to 'cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under . . . (Title 11 of the Act).'") (alterations in original).  The Trustee reserves all rights in this regard.

that differentiate it from the numerous cases cited herein where bankruptcy courts, in applying the balancing test, have not found passage of the privilege to a trustee to be outweighed by a chilling effect on attorney-client communications.  *See, e.g.*, *Bazemore*, 216 B.R. at 1024 (applying balancing test and holding trustee's interest in investigating assets outweighed any potential chilling effect or harm to individual debtor).

## B.  Privilege Passes to Trustee for Post-Petition Documents Related to Administration of Debtor's Estate

49.     For privileged documents created ***post-petition***, but prior to the appointment of the Trustee, when the Debtor served as a debtor-in-possession, courts do not apply a balancing test.  Rather, the privilege over such documents passes to the Trustee automatically when the Trustee takes over administration of the estate.  *See Bame*, 251 B.R. at 375 ("I find that the attorney-client privilege has passed to the Trustee with respect to communications between Kennedy & Graven and the Debtor during the period that the Debtor served as the DIP as to all matters having to do with administration of the estate, including, in particular, disclosure and recovery of assets."); *In re Eddy*, 304 B.R. 591, 599 (Bankr. D. Mass. 2004) ("[T]he debtor in possession has a duty to preserve any claims against third parties that might benefit the bankruptcy estate. While the debtor in possession retains control over the attorney-client privilege during his/her stewardship, that control must be exercised consistent with the debtor's fiduciary duties.  If a Chapter 11 case is converted to Chapter 7 case, the appointed Chapter 7 trustee['s] . . . powers include the power to waive the attorney-client privilege with respect to communications incident to the performance of the duties of the debtor in possession.").  As applied here, the Trustee automatically succeeds to any attorney-client or work product privileges that may have attached to his communications with Brown Rudnick LLP (or any other counsel who may have advised him in relation to this case), and to any documents in such

20

counsel's possession.  The same is true for any potentially privileged documents in the files of the Debtor's proposed financial advisor, Verdolino & Lowey, P.C.

## III.    ANY ARGUMENT BY DEBTOR IN FAVOR OF BLANKET RULE ALLOWING DEBTOR TO RETAIN ALL PRIVILEGES SHOULD BE REJECTED

50.    Any argument that the Debtor "retains control of *all* of his or her attorney-client and attorney-work product privileges that existed before the Trustee's appointment" is not availing. *See* Debtor's Limited Objection at 3 (emphasis added).  While not explicitly advocating such a position, the Debtor implies that the Court should consider such a finding, citing a non-controlling outlier case, *Gottlieb v. Fayerman (In re Ginzburg)*, 517 B.R. 175 (Bankr. C.D. Cal. 2014).  Neither *Ginzburg*, nor any other authority, supports this outcome.

51.    In *Ginzburg*, a Chapter 7 trustee brought an adversary proceeding to set aside a debtor's alleged fraudulent conveyance of interest in real property to his estranged wife and sought discovery of communications between the debtor and his divorce attorney.  *Id.* at 177-78. The court, balancing the policy underlying the privilege versus the estate's needs, initially rejected the debtor's claim to attorney-client privilege.  *Id.* 178.  Upon reconsideration, however, the court reversed course and, citing to *Swidler & Berlin v. United States*, 524 U.S. 399, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) ("*Swidler*"), held that the balancing test was inappropriate for purposes of determining control of the attorney-client privilege. *See id.* at 181.[15]

52.    *Swidler*, however, dictates no such result, and therefore the *Ginzburg* court's decision was fundamentally flawed.  The Supreme Court in *Swidler* addressed whether there should be a posthumous exception to the attorney-client privilege for a third party (a grand jury)

---

[15] The vast majority of cases dealing with a trustee for an individual debtor's control of the attorney-client privilege decided following *Swidler* not only do not follow *Ginzburg*'s analysis, but in fact, do not find *Swidler* applicable at all, and rather are guided by a case-by-case balancing test weighing the potential for harm to the individual debtor against the trustee's duty to maximize the estate. *See, e.g., Bame*, 251 B.R. 367; *Tarkington*, 2010 WL 1416813; *Wittmer*, 2011 WL 6000799; *Horvath*, 2015 WL 2195060, all cited *supra*.

where "the client has died and the information is relevant to a criminal proceeding." *Swidler*, 524 U.S. 399 at 403. The Supreme Court did not consider when the attorney-client privilege passes to a trustee, or to any other successor in interest. Rather, its focus was on an independent counsel's request that a new exception to the attorney-client privilege be created to allow a third-party access to previously privileged information.

53.     While the Supreme Court in *Swidler* noted that it has "rejected use of a balancing test in defining the contours of the privilege," here, unlike in *Swidler*, the Trustee is not attempting to define the scope of the attorney-client privilege. Rather, the relevant inquiry is ***whether control of that privilege has passed to a trustee***. That a balancing test should not be used to determine the ***scope*** of the attorney-client privilege does not mean that a court may not compare the interests of a debtor-out-of-possession and a trustee to determine who ***controls*** that privilege following the trustee's appointment in bankruptcy.[16]

## IV.   ANY ARGUMENT BY DEBTOR THAT DOCUMENTS ARE PROTECTED FROM DISCLOSURE BY JOINT DEFENSE OR COMMON INTEREST PRIVILEGES FAILS

54.     The Debtor has also stated that joint defense or common interest privileges apply to certain litigations and other matters concerning property that the Trustee believes is owned by the estate, and accordingly, the Debtor has intimated that he may withhold or direct counsel to withhold, the production of documents on such purported bases. This is not the law.

55.     To the extent the Debtor claims to be asserting the attorney-client privilege to protect a confidential communication made to, or by, a codefendant's lawyer related to the defense of both defendants, compliance with the subpoena would not waive any such common

---

[16] To the extent the Debtor argues that the court in *Ginzburg* understood *Swidler* to hold that due to the importance of the attorney-client privilege, control of the privilege cannot pass to a trustee, such a ruling would inherently mean that *Weintraub* is no longer good law, a position that no court, including *Ginzburg*, which cites to *Weintraub*, has suggested.

interest or joint-defense privilege.  As any such interest in the privilege has passed to the Trustee, the common-interest or joint-defense relationship remains intact, and, thus, passage of control of the privilege will not effectuate a waiver of the privilege.  Accordingly, there is no basis to withhold documents, either based on the Debtor's improper assertion of a privilege it no longer holds, or on behalf of the other party to the relationship.

56.     Furthermore, bankruptcy courts have typically refused to enforce joint defense agreements if doing so would limit the ability of an appointed trustee to investigate parties' dealings. For example, in *In re Ginn-LA St. Lucie Ltd., LLLP*, the court held that

> While the [joint defense agreement] might indeed further the presumed intent of the parties, its enforcement in this matter risks frustrating the Trustee's statutory duty to investigate the financial affairs of the Debtors while providing special protection to those who allegedly controlled the Debtors prior to the Petition Date. The ability of such provisions to shield wrongdoers at the expense of a debtor's creditors renders their enforcement in bankruptcy proceedings against public policy.

439 B.R. 801, 805-806 (Bankr. S.D. Fla. 2010) (Chapter 7 trustee moved to compel compliance with demands for turnover of documents related to legal representation provided by law firms to debtors).  *See also In re Mirant Corp.*, 326 B.R. 646, 654 (Bankr. N.D. Tex. 2005) ("In a bankruptcy case, the need for investigation is far more acute than is any concern for attorney-client communications.").

57.     Similarly, in *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, a trustee was appointed to oversee the liquidation of a corporation in a Securities Investor Protection Act (SIPA) proceeding. 213 B.R. 433, 440 (Bankr. S.D.N.Y. 1997).  In deciding whether the trustee could waive a purported joint defense agreement prior to filing suit, the court said, "I believe that where, as here, a trustee is conducting an investigation as to the factual underpinning and scope of identifiable claims, he or she is adverse to the putative defendants. The trustee should not be stymied in uncovering the facts by the existence of a joint defense privilege which would

23

evaporate were he or she only to file a complaint." *Id.* (internal citation omitted). The court further stated that "a joint defense privilege is waived where two parties, previously members to a valid joint defense agreement, subsequently find themselves facing each other as adversaries in litigation." *Id.* at 439.

*****

58.     The Trustee's Rule 2004 requests for documents related to his investigation of the estate's assets, liabilities, financial status and administration are critical to his ability to understand the true state of the Debtor's estate. Control over any attorney-client privilege tied to such documents and communications has passed to the Trustee, along with his rights and responsibilities for these areas under the Bankruptcy Code. Accordingly, neither the Debtor, nor his counsel, should be permitted to withhold any documents based on an assertion of privilege that the Debtor no longer controls.

**<u>NO PRIOR REQUEST</u>**

59.     The Trustee has not previously sought the relief requested herein from this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the Proposed Order granting the relief requested in this Motion and such other relief as is just and proper.

Dated:       August 22, 2022           LUC A. DESPINS,
              New Haven, Connecticut     CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
     Patrick R. Linsey (ct29437)
     NEUBERT, PEPE & MONTEITH, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     (203) 781-2847
     plinsey@npmlaw.com

       *and*

     Nicholas A. Bassett (*pro hac vice* pending)
     PAUL HASTINGS LLP
     2050 M Street NW
     Washington, D.C., 20036
     (202) 551-1902
     nicholasbassett@paulhastings.com

       *and*

     Avram E. Luft (*pro hac vice* pending)
     Douglass Barron (*pro hac vice* pending)
     PAUL HASTINGS LLP
     200 Park Avenue
     New York, New York 10166
     (212) 318-6079
     aviluft@paulhastings.com

     *Counsel for the Chapter 11 Trustee*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                     :

In re:                      :    Chapter 11
                               :

HO WAN KWOK,        :    Case No. 22-50073 (JAM)
                               :

          Debtor.       :
                               :
-------------------------------------------------------x

**ORDER (A) PROVIDING THAT CONTROL OF ANY ATTORNEY-CLIENT PRIVILEGE, WORK PRODUCT PROTECTION, AND OTHER PRIVILEGES RELATED TO RULE 2004 SUBPOENAED DOCUMENTS PASSED TO TRUSTEE UPON APPOINTMENT, (B) DIRECTING THAT DEBTOR AND OTHER EXAMINEES NOT WITHHOLD DOCUMENTS ON ACCOUNT OF SUCH PRIVILEGES, AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Mr. Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), for the entry of an order (this "Order"), pursuant to sections 323, 521, 541, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Court's orders granting the Trustee's motions for examination pursuant to Rule 2004, (a) confirming that the Trustee owns and controls the attorney-client privilege, work product protection and other privileges on issues related to the Debtor's assets and financial affairs and the administration of his estate, (b) directing that the Discovery Recipients not withhold documents from the Trustee on account of any such privileges in responding to the Rule 2004 Subpoenas,[1] or attempt to assert any such privileges that are properly owned by the Trustee and (c) granting related relief, all as more fully set forth

---

[1] Capitalized terms not defined herein have the meanings given to them in the Motion.

in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interest of the Estate, its creditors, and all parties in interest; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be given; and upon all of the proceedings had before this Court; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Control of any attorney-client privilege, work product protection, or any related privilege or protection, arising under any applicable law, concerning the documents and information requested in the attachments to the Rule 2004 Subpoenas (the "Requested Materials") passed to the Trustee.

3.      Neither the Debtor nor his counsel (based on instructions from the Debtor or otherwise), nor any other examinee, is entitled to withhold any of the Requested Materials on the basis of the attorney-client privilege, work product doctrine, or any related privilege or protection.

4.      Neither the Debtor nor his counsel (based on instructions from the Debtor or otherwise), nor any other examinee, shall interfere with, hinder, or delay the Trustee's exercise of the authority under this Order.

2

5.      The Trustee is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

6.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

—————————————————————x
                     :

In re:                      :          CHAPTER 11
                      :

HO WAN KWOK,         :          CASE NO. 22-50073 (JAM)
                      :

         Debtor.        :
—————————————————————x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 22, 2022 the foregoing Motion and proposed Order was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing pursuant to the Notice of Electronic Filing.  Parties may access this filing through the Court's system.

Dated: August 22, 2022          LUC A. DESPINS,
      New Haven, Connecticut     CHAPTER 11 TRUSTEE

                    By:     */s/ James C. Graham*
                         Douglas S. Skalka (ct00616)
                         James C. Graham (ct06064)
                         Patrick R. Linsey (ct29437)
                         NEUBERT, PEPE & MONTEITH, P.C.
                         195 Church Street, 13th Floor
                         New Haven, Connecticut 06510
                         (203) 821-2000
                         dskalka@npmlaw.com
                         jgraham@npmlaw.com
                         plinsey@npmlaw.com