**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :        Chapter 11
                                                       :
HO WAN KWOK,                                           :        Case No. 22-50073 (JAM)
                                                       :
            Debtor.[1]                                 :
                                                       :
-------------------------------------------------------x

**TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR STAY PENDING APPEAL
OF ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363, 521, 541, 1108,
AND 105, (A) CONFIRMING THAT CHAPTER 11 TRUSTEE HOLDS ALL OF
DEBTOR'S ECONOMIC AND CORPORATE GOVERNANCE RIGHTS IN DEBTOR-
CONTROLLED ENTITIES, (B) AUTHORIZING CHAPTER 11 TRUSTEE TO ACT IN
ANY FOREIGN COUNTRY ON BEHALF OF ESTATE, AND
(C) GRANTING RELATED RELIEF**

        Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Debtor"), files this objection (the "Objection") to the

*Debtor's Motion for Stay Pending Appeal of Order, Pursuant to Bankruptcy Code Sections 363,*

*521, 541, 1108, and 105, (A) Confirming that Chapter 11 Trustee Holds All of Debtor's*

*Economic and Corporate Governance Rights in Debtor-Controlled Entities, (B) Authorizing*

*Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (C) Granting Related*

*Relief* (ECF No. 761) (the "Motion to Stay"). The Trustee states the following in support of this

Objection:

---

[1] Although the Debtor's legal name is Ho Wan Kwok, he is also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases.  The last four digits of the Debtor's taxpayer identification number are
9595.

## PRELIMINARY STATEMENT

1.      Although the Debtor professes to appeal the entirety of the Court's order (ECF 717) (the "Order") granting the Trustee's Corporate Governance Rights Motion (defined below), he seeks to stay only one provision—specifically, paragraph 3(b)—of that Order.  Moreover, while the Motion to Stay purports to apply to all of paragraph 3(b), the Debtor in reality takes issue with only one aspect of that paragraph.  Specifically, the Debtor contends it is improper for the Court to require him to "deliver, no later than five business days after entry of this Order, a copy of the letter in the form attached hereto as **Exhibit B** to [UK Counsel (defined below)]." (Order ¶ 3(b)).  The Debtor does ***not*** take issue with the remainder of paragraph 3(b), which states that, "[f]or the avoidance of doubt, the Trustee shall be deemed, for all purposes, to be the owner of the Debtor's claims asserted in" the UBS Litigation (defined below) (*Id.*).  Accordingly, it is not disputed that the Trustee owns the claims against UBS.

2.      As to the Debtor's professed concern regarding the portion of paragraph 3(b) requiring him to execute the Counsel Letter (defined below), the Debtor has not come close to satisfying the standard for a stay pending appeal.  To obtain a stay, the Debtor must establish (i) a substantial likelihood of success on the merits, (ii) that he will suffer irreparable injury if a stay is denied, (iii) that there will be no substantial injury to the party opposing a stay if one is issued, and (iv) that a stay would be in the public interest.  The Debtor cannot satisfy any one of these factors, much less show that they on balance entitle him to a stay pending appeal.

3.      For starters, the Debtor's appeal has virtually no likelihood of success because the Debtor both fundamentally misunderstands (or misrepresents, or both) the nature of the Order and misstates the relevant law.  The Debtor contends his appeal is likely to succeed because the Counsel Letter referenced in paragraph 3(b) of the Order will require him to execute a sweeping "blanket waiver" of privileges arising under U.K. law that the Debtor allegedly still "owns"

2

despite being a debtor-out-of-possession.[2]  In making this assertion, the Debtor appears to rely on a prior version of the Counsel Letter that was not included in the Order, as the final version of the letter requires no such thing.  All the final Counsel Letter says is that the Trustee, as owner of the estate's claim in the UBS Litigation, should be provided access to Harcus Parker Limited's ("UK Counsel") documents and information regarding the litigation, including any assessment by counsel of its merits and the litigation's settlement posture.

4.      As such, the entire premise of the Debtor's appeal of paragraph 3(b)—that he is being compelled to execute a blanket waiver of privileges he still "owns" in the UBS Litigation, thus permitting the Trustee to waive such privileges—is a red herring.  The Debtor knows (or, at least, should know) that this is the case, because the Court explicitly told his counsel at the August 4 Hearing (defined below) that "[t]he letter doesn't say that he is waiving his privilege. In fact, it says that any waiver of the privilege is limited to provision of this information to the trustee. That's what it says." Aug. 4 Hearing Tr. at 10:17-20 (ECF No. 746).

5.      The relief that paragraph 3(b) does seek to effectuate—*i.e.*, to require the Debtor to instruct UK Counsel to provide documents and information to the Trustee—is fully consistent with applicable law.  As set forth below, and more generally in the Trustee's Privileges Motion (as defined below), the Debtor does not own (or control) any privileges relating to the UBS Litigation (or to any other litigation)—rather, all of those privileges passed automatically to the Trustee upon his appointment as a matter of federal bankruptcy law.  In fact, the Debtor, by his own admission, does not even attempt to establish that he "owns" or controls any such privilege. (Motion to Stay at 13, n. 2).  Accordingly, there should be no dispute that the Trustee, as the

---

[2] The Motion to Stay makes repeated reference to "ownership" of the privileges.  The case law uses the term "control" synonymously with how the term "ownership" is used in Debtor's motion.  Accordingly, unless specifically referencing the Debtor's assertions, the Trustee will reference control of the privileges in his Objection.

controller of the Debtor's privileges, is entitled to access information from UK Counsel.  To the extent the Debtor believes the Order implicates U.K. privilege law because of his alleged ownership of any privileges in the UBS Litigation, he is incorrect.  But even if he were correct, the Order also fully complies with U.K. law, which in no way restricts the Trustee from obtaining access to privileged documents.  This should be no surprise given that the Counsel Letter was written in consultation with UK Counsel.

6.     Nor can the Debtor establish either that he will suffer irreparable injury absent a stay, or that the Trustee will not be harmed if a stay is granted.  The Debtor's claims of looming irreparable harm if he is forced to waive the privileges he "owns" ring hollow, as the law is clear that control of privileges in the UBS Litigation have passed to the Trustee, and the Debtor has failed to identify a single privileged document, or even a category of privileged documents, that will harm him if disclosed.  The Debtor cannot manufacture a harm by simply assuming his conclusion that he owns a privilege and then complaining (incorrectly) that he is being forced to waive such privilege.  Moreover, even if the Debtor controls any privileges in the UBS Litigation, the Debtor still will suffer no harm, as the actions called for in the Counsel Letter are wholly consistent with U.K. law.

7.     On the other hand, that a stay will occasion substantial harm on the Trustee is indisputable.  The Trustee owns the Debtor's claims in the UBS Litigation, the largest identified asset on the Debtor's schedules. UK Counsel has made clear that, absent resolution of these issues, UK Counsel will continue to deny the Trustee essential information about the case, effectively preventing him from fulfilling his obligations and starving the estate from necessary revenue that can potentially be realized from the litigation.  In fact, UK Counsel has just

indicated that a hearing in the UBS Litigation will need to be adjourned as a result of the Debtor's actions before this Court.

8.     Finally, the public interest weighs heavily towards halting the Debtor's dilatory tactics, and allowing the Trustee to proceed with the important work he has been charged with performing by this Court.  This Court is not writing on a blank slate; it has the benefit of the experience of Judge Ostrager who has presided over five years of "evasive and contemptuous acts" by the Debtor, and has concluded that the Debtor has "knowingly and intentionally violat[ed] Court orders." Decision + Order on Motion, *PAX v. Kwok*, 652077/2017 (N.Y. Sup. 2020), ECF No. 1181 ("Final Contempt Order") at 7, 10.  There could not be a better description of why the public interest factor weighs heavily in favor of the Trustee here.  The requested stay pending appeal should be denied.

## BACKGROUND

9.     On June 15, 2022, the Court entered a memorandum of decision and order (ECF No. 465) (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee.  On July 8, 2022, in accordance with the Trustee Order, the Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case (ECF No. 523) (the "Appointment Order").

10.     In the Trustee Order, the Court highlighted the Trustee's ability to "use independent judgment and good management to direct the affairs of the estate to attempt to satisfy the claims of creditors" and to "optimize recovery for the creditors and the estate" by, among other things, investigating "the Debtor's assets, liabilities, and financial affairs."  (*See*

Trustee Order at 18). The Trustee Order instructed the Trustee to perform "all of the duties set forth in 11 U.S.C. § 1106." (See Trustee Order at 15-16, 18)

### A. Corporate Governance Rights Motion

11. Following his appointment, the Trustee became concerned that he may be unable to effectively fulfill his duties with respect to the management and control of the Debtor's assets and affairs due to the Debtor's demonstrated history of defying court orders and engaging in efforts to evade his creditors. Accordingly, on July 23, 2022, the Trustee filed his *Motion of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 363, 541, 1108, and 105, (A) Confirming That Chapter 11 Trustee Holds All of Debtor's Economic Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of the Estate, and Granting Related Relief* (ECF No. 598). In the motion, the Trustee sought, among other things, confirmation that Debtor may not interfere with, hinder, or delay the Trustee's exercise of the Debtor's economic and governance rights with respect to the entities under his control or the Trustee's authority as the Debtor's foreign representative. The Debtor filed his response in opposition to the Trustee's motion on July 29, 2022 (ECF No. 643).[3]

### B. UBS Litigation

12. One of the Debtor's significant known assets is the litigation claim he holds against UBS AG in a litigation pending in the United Kingdom.[4] Specifically, prior to the

---

[3] The *Motion of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 363, 541, 1108, and 105, (A) Confirming That Chapter 11 Trustee Holds All of Debtor's Economic Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of the Estate, and Granting Related Relief*, along with, as applicable, the Initial Revised Proposed Order (defined below) and, as applicable, the Further Revised Proposed Order (defined below) shall be referred to as the "Corporate Governance Rights Motion."

[4] *See* Particulars of Claim, *Kwok Ho Wan & Ors v UBS*, Cl-2020-000345, High Court of Justice of England and Wales Queen's Bench Division Commercial Court (attached hereto as **Exhibit A**). Interestingly, and contrary to Debtor's contention in this Case, the Particulars of Claim noted that Debtor "is a high net worth individual." *Id.*, ¶ 1.

Petition Date, in September 2020, the Debtor and two other plaintiffs the Debtor controls commenced an action against UBS AG seeking a recovery of approximately $495 million (the "UBS Litigation").

13.    Given his responsibilities to identify, manage, and safeguard assets of the estate, the Trustee has a vested interest in ensuring he has the exclusive authority and ability to manage the UBS Litigation and direct counsel in that litigation.  The Trustee therefore contacted UK Counsel in London, which had represented the Debtor in the UBS Litigation, to seek to gain access to case files and information on an informal basis.  The Trustee's efforts in this regard were not successful.

14.    On July 31, 2022, the Trustee submitted a revised proposed order ("Initial Revised Proposed Order") on the Corporate Governance Rights Motion, which, among other things, asked the Court to direct the Debtor to (i) provide the Trustee with all books, documents, and records relating to all property of the estate and, (ii) specific to the UBS Litigation, send a letter to UK Counsel, in the form attached as Exhibit B to the Initial Revised Proposed Order, directing that all materials relating to the UBS Litigation, including UK Counsel's case file, be turned over to the Trustee.

15.    At the hearing on August 1, 2022 regarding the Corporate Governance Rights Motion, the Debtor objected that he needed additional time to review and object to the Initial Revised Proposed Order.  The Court granted the Debtor's request, adjourning the matter to August 4, 2022.

16.    On August 2, 2022, the Trustee filed a further revised proposed order (the "Further Revised Proposed Order") (ECF No. 671) on the Corporate Governance Rights Motion, with some additional minor changes which had been discussed at the August 1, 2022 hearing.

17.     On August 4, 2022, the Debtor objected to the Initial Revised Proposed Order (ECF No. 678) and the Trustee filed his reply (ECF No. 679) discussing, among other things, the basis for the Court to enter the Further Revised Proposed Order.

### C.  Hearing on Corporate Governance Rights Motion

18.     The Court held a hearing on the Corporate Governance Rights Motion that same day (the "August 4 Hearing").  Much of the Debtor's focus, both in his objection and in the comments of his counsel at the hearing, related to the language in the Initial Revised Proposed Order requiring him to send the attached letter to UK Counsel.  In particular, the Debtor took the position that it was improper—and a potential violation of United Kingdom privilege law—to compel the Debtor to send a communication that would result in the "waiver" of the Debtor's privileges.  Aug. 4 Hearing Tr. at 10:12-15, 12:16-22.

19.     In response, the Court made clear that, with respect to the Corporate Governance Rights Motion, the Trustee was merely stepping into the shoes of the Debtor's privilege.  *See id.* at 19:17-20 ("The minute the Chapter 11 trustee was appointed, the Chapter 11 trustee steps into the shoes of Mr. Kwok. So the chapter 11 trustee has the privilege of Mr. Kwok in [the UBS Litigation]"; *id.* at 21:2-4 ("Mr. Despins stepped into the shoes of the debtor when he became the Chapter 11 Trustee. There's well settled case law on that, Attorney Henzy."); *id.* at 73:20-22, 24-25 ("[A]s soon as the order appointing the trustee was approved, . . . Mr. Despins became Mr. Kwok. . . . Mr. Despins has stepped into all of those rights.").  Therefore, as the Court observed, ***waiver*** of privilege was not at issue.  *Id.* at 10:17-22 ("***[T]he letter doesn't say that [the Debtor] is waiving his privilege. In fact, it says that any waiver of the privilege is limited to the provision of this information to the trustee***. That's what it says.") (emphasis added). Furthermore, the Trustee made clear that he was only interested in privileged information with

respect to the merits and settlement prospects of the UBS Litigation. *Id.* at 7:17-22 (Trustee noting that he requested UK Counsel draft a letter allowing counsel to "give [the Trustee] an update on the merits of the claims, [and] any settlement proposals").

20.     The record from the hearing also reflects the fact that Counsel Letter was not prepared by the Trustee in isolation but, rather, was the result of a collaboration with UK Counsel. *See id.* at 7:16-24 (The Trustee said, "There were a lot of back and forth between me and the counsel . . . for the [D]ebtor in that UBS action. . . . And at the end of the day, I said, look, why don't you just draft a letter that you would be comfortable receiving from Mr. Kwok that would allow you to . . . give me an update on the merits of the claims. . . . And eventually [UK Counsel] did that."); *id.* at 8:8-11 ("And so we took her letter with some minor changes and basically that's the letter that we're now asking the Court to direct the [D]ebtor to send to her that basically says give [the Trustee] full access [to the UBS Litigation case file]."); *id.* at 13:4-11 ("And that letter basically, that she marked up, says that if she gets the letter she will . . . give me the privileged information. As to what? As to the merits of the litigation.").

### D.  Order Granting Corporate Governance Rights Motion

21.     On August 10, the Court overruled the Debtor's Objection and granted the Corporate Governance Rights Motion (ECF 717) (the "<u>Order</u>").  The Order provides broad confirmation of the Trustee's ownership of and authority over the Debtor's economic and corporate governance rights and directs the Debtor to "surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate."  (Order at ¶ 3.)

22.     In addition, the Order gives the Trustee broad authority to act as the estate's foreign representative in foreign countries, including for the purpose of investigating estate

assets and requesting and obtaining relevant documents. (*Id*. at ¶ 5). The Order further provides that the Debtor "shall not interfere with, hinder, or delay the Trustee's exercise of the authority under this Order, including any action taken or to be taken by the Trustee in a foreign court on behalf of the Estate in furtherance of such authority." (*Id*. ¶ 6).

23.    Finally, paragraph 3(b) of the Order instructs the Debtor to deliver a copy of a further revised letter, attached as Exhibit B to the Order (the "Counsel Letter"), to UK Counsel. Importantly, the wording in the Counsel Letter was ***different than*** the wording of the letter attached to the Initial Revised Proposed Order in that the updated letter reflected additional changes based on the Trustee's ongoing conversations with UK Counsel. *See supra*, ¶ 19. Specifically, the third and fourth paragraphs of the Counsel Letter ultimately approved by the Court provide the following:

> In furtherance of the foregoing, and for the avoidance of doubt, I hereby expressly authorize you to have full and complete discussions on my behalf with Mr. Despins regarding the UBS Litigation, the merits thereof, any related settlement discussions, and any other topics related to the prosecution of the UBS Litigation and to take instructions from him in relation to my claim in the UBS Litigation regardless of any attorney-client privilege, work product, or other privilege which belongs to me. Any waiver of privilege is limited to the provision of this information to the Trustee. ***My consent is limited to giving access to the Trustee to the extent that I am entitled and contains no wider waiver of privilege and is not consent by me to the Trustee to waive my privilege.***
>
> Among other things, and as detailed in the order of the U.S. Bankruptcy Court (a copy of which is enclosed as Exhibit 1), I instruct you to (i) as soon as is practicable deliver to and share with the Trustee all memoranda, advice, and other communications by you to me regarding the UBS Litigation, any other information (whether in written form or not) regarding the merits of the UBS Litigation, and any settlement offers received or made by me or you in connection with such litigation, and (ii) as soon as is practicable provide the Trustee will full access to the parts of your case file in the UBS Litigation to which I am entitled as well as all pleadings and other court documents filed in the UBS Litigation.

(*See* Order, Exhibit B (emphasis added)).

24.     In his Motion to Stay, the Debtor quotes *the prior version* of the proposed letter

attached as Exhibit B to the Initial Revised Proposed Order in arguing he is likely to succeed on

appeal.  (*See* Motion to Stay at 8 ("I hereby expressly authorize you to have full and complete

discussions with Mr. Despins regarding the UBS Litigation . . . regardless of any attorney-client

privilege, work product, or other privilege, *which I hereby fully waive for such purposes*")

(quoting the Revised Proposed Order) (emphasis added)).  This language is materially different

from the language in the final Counsel Letter attached as Exhibit B to the Order.  Specifically, as

indicated above, the language approved by the Court recognizes that the Trustee is merely

stepping into the Debtor's shoes with respect to the UBS Litigation and that no waiver of

privilege is occurring.  (*See* Order, Exhibit B ("Any waiver of privilege is limited to the

provision of this information to the Trustee.  *My consent is limited to giving access to the*

*Trustee to the extent that I am entitled and contains no wider waiver of privilege and is not*

*consent by me to the Trustee to waive my privilege*.") (emphasis added)).

### E.   Rule 2004 Motion, Orders, and Privileges Motion

25.     On July 28, 2022, the Trustee filed three related motions to conduct Bankruptcy

Rule 2004 investigations of the Debtor (ECF No. 636), various legal and financial advisors to the

Debtor (ECF No. 637), and various entities and individuals affiliated with the Debtor (ECF No.

638) (collectively, the "Rule 2004 Motions").  Each of the Rule 2004 Motions attached proposed

subpoenas for documents and testimony (the "Rule 2004 Subpoenas").  On August 16, 2022, the

Court granted the Rule 2004 Motions, authorizing the respective examinations and service of the

document requests (ECF Nos. 756, 757, and 758) (collectively, the "Rule 2004 Orders").

26.     On August 22, 2022, to confirm the Trustee's rights and in aid of his enforcement

of the Rule 2004 Orders, the Trustee filed a *Motion for Entry of Order (A) Providing that*

*Control of any Attorney-Client Privilege, Work Product Protection, and Other Privileges*

*Related to Rule 2004 Subpoenaed Documents Passed to Trustee Upon Appointment, (B)*

*Directing that the Debtor and Other Examinees Not Withhold Documents on Account of Such*

*Privileges, and (C) Granting Related Relief* (ECF 777) (the "Privileges Motion").  The Privileges

Motion requests that the Court enter an order confirming that, upon the Trustee's appointment,

control over any attorney-client privilege, work product protection, and other privileges relating

to the assets, liabilities, financial status or administration of the estate passed to the Trustee, and

that neither the Debtor nor any subpoena recipient shall withhold any documents responsive to

the Rule 2004 Subpoenas on the basis of any such privilege or attempt to assert any such

privilege controlled by the Trustee.

27.    The Privileges Motion is set to be heard on August 30, 2022.

**F. Appeal and Motion for Stay Pending Appeal**

28.    On August 10, 2022, the Debtor filed a notice of appeal of the Order (ECF No.

723).  The Debtor thereafter filed the Motion to Stay.  Importantly, the Motion to Stay seeks to

stay ***only*** paragraph 3(b) of the Order relating to the Counsel Letter in the UBS Litigation.  It

does not seek a stay of—or any other relief with respect to—any other provision of the Order.

29.    As explained below, the requested stay would be extremely prejudicial to the

Trustee because it could delay not only his access to important information in the UBS

Litigation, but it also may prevent that litigation from continuing and, potentially, resulting in a

significant settlement or judgment for the benefit of the estate's creditors.  Indeed, on August 23,

2022, the Trustee received an email from UK Counsel indicating a desire to seek postponement

of an upcoming hearing in October in the UBS Litigation due to confusion over who controls the

privilege in that matter and will provide direction to counsel.  It is critical for the Trustee to

obtain the Court's assistance to help minimize the possibility of any such postponement or other delays in the UBS Litigation.

## ARGUMENT

30.     For the Order to be stayed, the Debtor must show he has satisfied the four-prong test set out by the Second Circuit in *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002): "[1] the likelihood of success on the merits, [2] irreparable injury if a stay is denied, [3] substantial injury to the party opposing a stay if one is issued, and [4] the public interest."[5]   The Debtor fails establish any of these factors, much less show that they collectively weigh in his favor.

### I.     Debtor Cannot Demonstrate a Likelihood Of Success On Merits

31.     To satisfy the likelihood of success prong of the standard for a stay pending appeal, the movant must make "a strong showing that he is likely to succeed on the merits." *In re Cacioli*, 302 B.R. 429, 431 (Bankr. D. Conn. 2003) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987) (noting the factors governing stays pending appeal as "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies)).[6]   The Debtor falls far short of meeting this bar, as the entirety of the Order—including specifically the portion of paragraph 3(b) requiring delivery of the Counsel

---

[5] The "degree to which a factor must be present varies with the strength of the other factors, meaning more of one [factor] excuses less of the other." *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007) (citation and internal quotation marks omitted) (alterations in original).

[6] Some other courts in the Second Circuit have articulated slightly modified standards in analyzing motions for stay pending appeal. *See, e.g.*, *In re Country Squire Assoc. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. BAP 1996) ("(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected.").  Here, Debtor fails under both standards.

Letter—is almost certain to be affirmed.  This is so because (i) there is no legitimate dispute that control of the Debtor's privileges relating to the UBS Litigation passed to the Trustee upon his appointment, and (ii) even if the Debtor still owns or controls a privilege (he does not), the Order does not require its "waiver" and, thus, the Debtor's argument that the Order violates U.K. privilege law is without merit.

### A.  <u>Control of Attorney-Client Privilege in UBS Litigation Passed to Trustee</u>

32.     As described in detail in the Privileges Motion, control of the attorney-client privilege passes to a Chapter 11 trustee upon his appointment to the extent it relates to assets and liabilities of the estate, the Debtor's financial conditions, and administration of the estate.[7]

33.     The Supreme Court in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) ("*Weintraub*") addressed the issue of whether, upon appointment of a trustee, control of a corporation's attorney-client privilege passes to the trustee, or remains with the debtor's management.  The Supreme Court held that the trustee steps into the shoes of the corporate debtor for the purposes of controlling attorney-client privilege just as the trustee does for management of the corporate debtor more generally.  *See id.* at 353-54.[8]  In reaching this decision, the Supreme Court made clear that the issue was whether control of the privilege passes to a trustee in bankruptcy, not whether there was an exception to the attorney-client privilege,

---

[7] As noted above, the Trustee's Privileges Motion, which is also scheduled to be heard on August 30, 2022, sets out the relevant law and arguments in greater detail.  In the interests of judicial economy, the Trustee will not repeat here the entirety of its arguments in the Privileges Motion, but rather, will highlight the key relevant points for this Objection, and ask that the law and arguments articulated in the Privileges Motion be incorporated by reference into this Objection.

[8] Although *Weintraub* noted that it was not opining on the passage of the privilege to a trustee in the case of an individual debtor, *see id.* at 356, the Court did not suggest that control of the attorney-client privilege should not pass to a trustee for an individual debtor or that the needs of a trustee appointed in the case of an individual debtor would in any way differ from the needs of a trustee for a corporate debtor.  To the contrary, all of the Supreme Court's detailed citations concerning the role and responsibilities of a trustee under the Bankruptcy Code apply equally to a trustee for an individual as they do to a trustee for a corporate debtor.

nor whether filing of a bankruptcy case effectuates a waiver of any previously existing privilege, thus allowing a trustee access to previously privileged documents.

34.     Although *Weintraub* dealt only with corporate debtors, a number of lower courts have since addressed whether the privilege also passes to the trustee in an individual debtor case. A significant majority of the courts addressing this question have employed a "balancing test," which looks at whether the privilege at issue relates most closely to a trustee's rights, obligations and allocation of responsibility under the Bankruptcy Code, or whether the privilege primarily concerns the debtor's interests as an individual. *See, e.g.*, *In re Bame*, 251 B.R. 367, 375 (Bankr. D. Minn. 2000); *In re Foster*, 188 F.3d 1259, 1267 (10th Cir. 1999) (remanding decision back to bankruptcy court to apply balancing test).  Just as in *Weintraub*, this balancing test seeks to determine whether control of the privileges passes to a trustee, not whether the information remains privileged upon provision to a trustee.  Therefore, ***any concern by the Debtor that any privilege is being waived is inapposite because, no privilege is waived when control of the privilege passes to the Trustee.***  *See, e.g.*, *In re Bazemore*, 216 B.R. 1020, 1024 (Bankr. S.D. Ga. 1998) ("[t]he filing of bankruptcy by an individual debtor requires a determination as to whether anyone else controls the privilege." (citing *Weintraub*)); *Bame*, 251 B.R. at 377 (characterizing the balancing analysis as whether an "individual debtor's attorney-client privilege as to prepetition communications does transfer to the trustee under certain circumstances . . . .").

35.     Courts applying the balancing test routinely find the trustee controls the privilege with regard to documents that relate to assets of the estate, its financial status or to the administration of the estate.  *See, e.g.*, *Bazemore*, 216 B.R. at 1024 (finding that trustee held right to waive attorney client privilege where it sought documents to determine if estate held cause of action); *Bame*, 251 B.R. at 377 (finding in favor of trustee's request to control privilege of

individual debtor when seeking discovery of documents in order to recover assets); *In re Horvath*, No. 13-34137 MAW, 2015 WL 2195060, at *6 (Bankr. N.D. Ohio May 7, 2015) (discovery related to claims on schedule of assets permissible from individual debtor because trustee sought to potentially increase value of debtor's estate, and finding that "the Trustee is entitled to waive Debtor's attorney-client privilege" and holding that "the sole purpose of the Trustee's inquiry is to augment her ability to administer the estate with respect to those assets and to potentially increase the value of Debtor's estate to his creditors").  On the other hand, the balance may tip to an individual debtor retaining control of the privilege when transfer of the privilege might result in great harm "to or control over [a debtor's] person," such as exposure to criminal liability, or where there may be an overriding concern for the chilling effect on attorney-client communications. *See Bame,* 251 B.R. at 377 (finding that, in regard to "most questions the Trustee could ask of counsel," trustee controls privilege, but noting that in regard to communications having to do with activities that could lead to criminal charges against debtor "the balance would probably tip in favor of sustaining assertion of the privilege . . . .").

36.     Here, for all privileged information related to the UBS Litigation, the balancing test heavily weighs in favor of control of the privileges passing to the Trustee. The UBS Litigation could, if meritorious, represent a substantial potential asset of the Debtor's estate, claiming damages of approximately $495 million dollars.  It is undisputed that the Trustee is now the owner of the Debtor's claims in that litigation.  To effectively fulfill his obligations under the Bankruptcy Code to maximize this asset for the benefit of the estate and its creditors, the Trustee must be provided access to relevant information relating to the litigation held by UK Counsel. Indeed, it would mean nothing for the Trustee to "own" the claims in the litigation if all the information he needs to manage and direct counsel in that litigation is withheld from him.

37.     At the same time, there is no reason to believe that any privileged information in the possession of UK Counsel relates to the Debtor as an individual, such that his individual interests, such as exposure to potential criminal liability, would outweigh the Trustee's need for the information.  First, the UBS Litigation concerns a claim **brought by the Debtor** claiming that UBS provided him with faulty investment advice.  This not a subject matter implicating the types of concerns that courts have considered as a basis for not transferring control of privileges to a trustee.  If the Debtor had concerns that his claims in the UBS Litigation create criminal exposure for him (he has professed no such concerns), it is implausible that he would have volunteered to make such issues public by filing a lawsuit.  Second, and most tellingly, nowhere in the Debtor's Motion to Stay does he explain, even in the broadest of terms, what allegedly privileged materials in the UBS Litigation could result in personal harm if disclosed.  While the Trustee has been denied access to these materials, the Debtor, until the appointment of the Trustee, has had continuous access to this information (and likely still retains copies of his prior communications with UK Counsel, as he has not turned them over to the Trustee).  If the Debtor knew of any categories of privileged documents that would be harmful if disclosed, he would be able to establish their existence, but he has not even attempted to so.[9]

38.     For these reasons, it is clear under applicable law that control of any privileges relating to the UBS Litigation has passed to the Trustee, and the Debtor does not attempt to argue otherwise.  The Debtor instead simply **assumes** his conclusion that he continues to "own" these

---

[9] The Debtor is well aware of his need to identify allegedly privileged documents relating specifically to the Debtor's individual interests.  As his counsel told the Court at the August 4 hearing, "as I understand my communications from Attorney Morrissey, there may be items that – I think this is true under U.S. law too, a trustee is appointed and there's different standards between a corporate debtor and an actual person. An actual person may maintain certain privilege even after the appointment of a trustee.  And as I understand it, it is similar in the U.K.  So there may be items that are in the possession of Harcus Parker that Mr. Kwok personally still has a privilege with respect to, as opposed to items that under U.K. law he doesn't." (Hr'g Tr. at 1:2-12).

privileges and then argues he cannot be made to "waive" privileges he owns.[10]  The Debtor then builds upon this specious foundation to argue that *Weintraub* and its progeny would not make sense if a debtor can be forced to waive a privilege he still owns, all while ignoring the threshold point that the Debtor does not, in fact, continue to own these privileges. *See* Motion to Stay at 13.

### B. Even if Debtor Still Owns a Privilege, Which he Does Not, Paragraph 3(b) of Order Does Not Compel its Waiver

39.     The Counsel Letter that paragraph 3(b) of the Order directs to be sent to UK Counsel states, in relevant part, "I hereby expressly authorize you to have full and complete discussions on my behalf with Mr. Despins regarding the UBS Litigation, the merits thereof, any related settlement discussions, and any other topics related to the prosecution of the UBS Litigation and to take instructions from him in relation to my claim in the UBS Litigation regardless of any attorney-client privilege, work-product, or other privilege which belongs to me. *Any waiver of the privilege is limited to the provision of this information to the Trustee.* My consent is limited to giving access to the Trustee *to the extent that I am entitled* and contains no wider waiver of privilege and *is not consent by me to the Trustee to waive my privilege*."[11] Counsel Letter at 1 (emphasis added).

40.     Nowhere does the letter state that the Debtor "fully waives" his privileges for the purpose of providing information to the Trustee, as the Debtor asserts on pages 2 and 8 of the

---

[10] *See, e.g.*, "There is nothing in the Bankruptcy Code or in case law providing that an individual debtor automatically waives or must waive any applicable privileges *that they continue to own* after filing bankruptcy or the appointment of a trustee." Motion to Stay at 12-13 (emphasis added); "[T]he Court could not compel him to waive any attorney client privilege he *still owns* in connection with the UBS Action following the appointment of the Trustee." Motion to Stay at 9 (emphasis added); "There has been no claim that the Debtor has waived any privilege that he *still owns* in connection with the UBS Action, whether under U.S. or U.K. law." Motion to Stay at 3 (emphasis added).

[11] Notably, the letter does not assume that the Debtor owns any privileges, nor that he has any commensurate right to waive them.

Motion to Stay, nor is there any discussion of a "blanket waiver" consistent with the Debtor's uncorroborated claim that "the Court is compelling the Debtor to make a blanket waiver of any privilege that he continues to own in connection with the UBS Action." Motion to Stay, ¶ 25. This makes complete sense because—as discussed in detail above—the Debtor does not own or control any privileges relating to the UBS Litigation, and, therefore, there is nothing to waive.

41.     The Debtor nevertheless leverages his dubious assertions that a "waiver" is occurring to claim that U.K. law prohibits the Court from compelling the Debtor to send the Counsel Letter.   Even assuming for the sake of argument that the Debtor continues to own a privilege (he does not), he is wrong about the law.   The Counsel Letter—which as noted above was prepared in coordination with UK Counsel—is fully consistent with U.K. law.

42.     Under U.K. law, the Trustee is allowed to see privileged documents and communications associated with the UBS Litigation in order to prosecute the litigation, even if the Debtor still claims to own a privilege, so long as the Trustee does not have the ability to waive the privilege. *See Avonwick Holdings Limited v. Shlosberg*, [2016] EWCA (Civ) 1138, ¶¶ 69-71 (Court of Appeal, Civil Division, 2016) (holding that it was necessarily implicit in section 311 (I) of the Insolvency Act 1986 that a trustee can take possession of privileged records relating to the bankrupt's estate or affairs for the overriding function of investigation the bankrupt's affairs and distributing potential assets to the bankrupt's estate, as long as the trustee's use of the privileged documents do not amount to a waiver of privilege as to any third parties) (attached to Debtor's Motion to Stay); *see also Leeds v. Lemos*, [2017] EWHC 1825 (Ch), ¶ 260 (Chancery Division, 2017) ("There can be no dispute that the trustees are entitled to see the privileged information and use it for the purpose of carrying out their statutory functions,

provided, as the Court of Appeal has held in Avonwick, that they do not waive legal professional privilege without the bankrupt's consent.") (attached to Debtor's Motion to Stay).[12] [13]

43.     Given that the Counsel Letter explicitly states that the Debtor is *not* consenting to the Trustee's waiver of his privilege—and the Trustee is not claiming the Counsel Letter provides for his ability to do so—any argument that U.K. law prohibits a bankruptcy trustee from waiving a debtor's privilege is of no moment. (*See* Order, Exhibit B.)

44.     Finally, there is no merit to the Debtor's contention that these issues need to be decided by a U.K. court.  US courts frequently decide issues of foreign law, and, if necessary, this Court can do so here.  *See, e.g.*, *In re Hellas Telecommunications (Luxembourg) II SCA*, 555 B.R. 323, 350 (Bankr. S.D.N.Y. 2016) ("The ability of U.S. courts to apply foreign law is especially relevant to U.K. law, which is generally amenable to interpretation by a U.S. court." (citation omitted)); *Shipping Corp. of India v. Am. Bureau of Shipping*, 603 F. Supp. 801, 806 (S.D.N.Y. 1985) ("The courts of this country are capable of applying foreign law whenever necessary.").  The Debtor's demand that a U.K. court decide these issues seems most likely calculated to cause delay and to interfere with the Trustee's work – actions that are directly in conflict with paragraph 6 of the Order, which provides that the Debtor may not "interfere with, hinder, or delay the Trustee's exercise of the authority under this Order, including any action

---

[12] Moreover, in *Avonwick*, the bankruptcy trustees sought to waive the debtor's privilege for the benefit of Avonwick, a third party, and largest creditor of the debtor's estate, in a conspiracy proceeding that Avonwick brought against multiple defendants including the debtor. *See Avonwick* at ¶¶ 3, 21.  Similarly, in *Leed*, the trustees sought to waive the debtor's privilege in a third party action brought to set aside certain transactions that the debtor entered into prior to bankruptcy. *See Leed* at ¶¶ 10, 16, 27, 36.  Here, the Trustee would not be waiving any privilege for the benefit of any third party.  The Trustee has made this representation before and reaffirms it here.  Instead, the Trustee would be reviewing the relevant information solely to control and direct the UBS Litigation.

[13] Notably, these cases do not require consent of the Debtor for the Trustee to be permitted to review any privileged information.

taken or to be taken by the Trustee in a foreign court on behalf of the Estate in furtherance of such authority."[14]

## II.    **Trustee Will Suffer Substantial Injury If Stay is Granted**

45.      Every day that the Trustee is prevented from receiving the relevant information regarding the UBS Litigation, which ***everyone*** agrees the Trustee now owns and controls, the litigation remains paralyzed.  Absent the ability to assess counsel's views of the merits of the litigation and prospects for recovery, the Trustee can neither craft a strategy for a successful resolution, nor instruct UK Counsel how best to proceed.  The UBS Litigation will remain rudderless until the Trustee can receive information from UK Counsel.[15]

46.      The Debtor's position appears to be that, while the Trustee controls the UBS Litigation, the Trustee should not be able to access any of the existing information regarding the case or work product produced by UK Counsel.  This is an absurd position, as it would essentially require the Trustee to find new counsel and attempt to litigate the UBS Litigation anew, despite the matter being in mid-litigation.  This would deeply prejudice the Trustee's ability to effectively administer the litigation, and would cost the estate substantial resources it does not have, to redo UK Counsel's work.

---

[14] The Debtor's final gambit is to argue that despite Bankruptcy Rule 9013, the oral motion here was allegedly not related to the written motion being heard.  This argument is specious.  The Corporate Governance Right Motion not only sought confirmation of the Trustee's control of the Debtor's domestic and foreign assets but also authorization for the Trustee to act in any foreign countries on behalf of the Debtor's estate, which plainly implicated the UBS Litigation.  At the August 1 hearing, at the Debtor's request, the Court adjourned the hearing for the sole purpose of allowing the Debtor to review and file an objection to the Corporate Governance Right Motion, which he did.  At the August 4 hearing, counsel for the Debtor not only argued this point extensively, but in doing so pointed the Court to both case law he had already included for this purpose in his objection and to two new cases he prepared for the hearing and wished to raise to the Court's attention.  Aug. 4 Hearing Tr. at 15-16.

[15] At the August 4 Hearing, Debtor's counsel acknowledged this reality, telling the Court: "So I don't think she's the debtor's lawyer. I don't think she's Mr. Despins lawyer. I frankly am not sure where that leaves the status of whoever is the plaintiff in that action in the U.K." Aug. 4 Hearing Tr. at 10.

47.     This harm is far from theoretical.  Just this week, UK Counsel informed the Trustee and the Debtor that it intended to adjourn an October hearing because they lacked clarity over whom they should be taking instruction from.  *See supra*, ¶ 27.  A granting of the Motion to Stay will only further sow confusion and exacerbate the lack of control of the litigation.

48.     Despite these transparent harms to the Trustee and the estate, the Debtor blithely claims that the only harm the Trustee will suffer is that the "UBS Action may take longer absent a compelled waiver of any privilege of the privilege of the Debtor." Motion to Stay, ¶ 26.  Not only is the alleged "compelled waiver" a strawman, but any such delay in the resolution of the UBS Litigation is not a trivial concern, as the Debtor implies.

49.     Any delay occasioned by the stay the Debtor seeks will not only effectively leave the litigation without a steward able to guide UK Counsel, but in this case, the harm from such a delay is particularly pronounced.  Despite his seeming immense wealth, the Debtor's schedules list assets of only $3,850,[16] leaving the Trustee with a paucity of assets on hand to use for the expenses necessary to generate recoveries for the estate's creditors.  By tactically delaying the UBS Litigation, which is likely, if meritorious, the largest asset that the Debtor has admitted belongs to the estate, the Debtor is forestalling not only a recovery on that asset, but also interfering with the Trustee's work to find the Debtor's other hidden assets.

## III.   <u>Debtor Will Not Suffer Irreparable Injury Absent a Stay and Balance of Hardship Tips in Favor of Trustee</u>

50.     The Debtor fails to articulate any *actual* irreparable injury he will allegedly suffer absent a stay.  Instead, the entirety of the Debtor's claim of alleged irreparable harm revolves around the false premise that "the Court is compelling the Debtor to make a blanket waiver of

---

[16] The Debtor has scheduled certain assets with unknown values, including disputed unregistered copyrights and litigation claims. (*See* Debtor's Schedules at 6) (ECF No. 78).

any privilege that he continues to own in connection with the UBS Action." Motion to Stay, ¶ 25. As discussed above, the Debtor fails to make any showing that he "owns" any privilege in the UBS Litigation, much less that by allowing the Trustee to communicate with UK Counsel for the claims the Trustee now owns, any blanket waiver of such privilege will be occasioned.

51.    To the extent the Debtor is aware of any privileged information in the UBS Litigation that he believes relates most closely to his interests as an individual, such that control of the privilege should not pass to the Trustee, it was incumbent upon the Debtor to identify what, if any, privileges he believed he still "owned." [17] Instead, the Debtor neither identifies a single privileged communication, nor even a category of privileged documents, that he asserts would fall on the individual side of the balancing test; opting instead to imply that because he cannot identify a single such issue, the purported waiver must be extremely broad. In fact, it is quite the opposite; all the Debtor has demonstrated is that there is no known potential harm at issue here.

52.    Control of any privileges in the UBS Litigation no longer belongs to Debtor, but rather passed to the Trustee at the time of his appointment. *See supra* ¶¶ 32-34. As such, the Debtor no longer controls the right to assert such privileges, and thus cannot be harmed when control of such privileges resides with the Trustee.

53.    Moreover, despite the Debtor's stated refusal to comply with the Order, the Court has not *sua sponte* held him in contempt, nor has the Trustee moved to hold the Debtor in contempt. The Debtor currently faces no irreparable harm absent a stay.

---

[17] Given that this was the Debtor's litigation which he had been pursuing with his choice of counsel, Debtor cannot now claim that he is unaware of what types of privileged communications exist between himself and his counsel.

54.     Finally, any balancing of hardship clearly tips in favor of the Trustee.  As the Debtor himself concedes, the UBS Litigation is now the Trustee's to administer.  The only question is whether it will be done efficiently with the benefit of communications and past attorney work product, or whether the Trustee will be forced to administer the UBS Litigation as if from a blank slate, with no benefit from past attorney work product, at great hardship to the Trustee, the estate, and the its creditors.

## IV.     Public Interest Weighs Against a Stay

55.     The only public interest that the Debtor raises in support of his requested stay is a bland assertion that the attorney-client privilege is important and should be protected.  Motion to Stay ¶ 27.  While no one here is disputing that truism, it ignores the point: control of that important privilege has passed to the Trustee, who through the Counsel Letter only seeks to understand the claims he now owns, not to effectuate a broad waiver of any privileges.  As *Weintraub* and its progeny make clear, passage of control does not impinge on the privilege, nor does it constitute a waiver of the privilege.  See *In re Foster*, 188 F.3d 1259, 1267 (10th Cir. 1999) ("subject to the . . . balancing, a trustee may control an individual debtor's privilege.").

56.     The actual public interest in this matter is in allowing the Trustee to be able to move ahead with administering his responsibilities and recovering assets for the benefit of the estate and its creditors; a goal the Debtor seems intent on obstructing at every turn.  The Debtor voluntarily filed for Chapter 11 to avoid pending actions to collect debts of the Debtor.  There is no public interest in allowing the Debtor to use this Court as a shield from his creditors, while working tirelessly to obfuscate his assets, so that he can continue to live the life of a billionaire. As Judge Ostrager noted "[i]f billionaire litigants can simultaneously seek to use Court process[es] in New York and elsewhere in the United States while knowingly and intentionally

violating Court orders, there is no rule of law." Final Contempt Order at 10. The public interest dictates allowing the Trustee to expediently do his work, in the UBS Litigation and elsewhere, so that estate creditors can be paid as soon as possible.

[*Remainder of page intentionally left blank.*]

Dated:   August 26, 2022       LUC A. DESPINS,
          New Haven, Connecticut    CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

      *and*

    Nicholas A. Bassett *(pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

      *and*

    Avram E. Luft *(pro hac vice* pending)
    Douglass Barron *(pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com

    *Counsel for the Chapter 11 Trustee*