**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| HO WON KWOK, | : | Case No. 22-50073 (JAM) |
| Debtor. | : | |

**DEBTOR'S OBJECTION TO MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER (A) PROVIDING THAT CONTROL OF ANY ATTORNEY-CLIENT PRIVILEGE, WORK PRODUCT PROTECTION, AND OTHER PRIVILEGES RELATED TO RULE 2004 SUBPOENAED DOCUMENTS PASSED TO TRUSTEE UPON APPOINTMENT, (B) DIRECTING THAT DEBTOR AND OTHER EXAMINEES NOT WITHOLD DOCUMENTS ON ACCOUNT OF SUCH PRIVILEGES, AND (C) GRANTING RELATED RELIEF**

The debtor, Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., hereby objects (the "Objection") to the August 22, 2022 Motion of Chapter 11 Trustee for Entry of Order (A) Providing That Control of Any Attorney-Client Privilege, Work Product Production, and Other Privileges Related to Rule 2004 Subpoenaed Documents Passed to Trustee Upon Appointment, (B) Directing that Debtor and other Examinees Not Withhold Documents on Account of Such Privileges, and (C) Granting Related Relief (the "Blanket Waiver Motion"). (Doc. No. 777). In support of this Objection, the Debtor represents as follows:

**I.    INTRODUCTION**

1.     The Blanket Waiver Motion is as bizarre as it is bold. The Trustee acknowledges, correctly, that an individual debtor's attorney-client privilege and related privileges do not simply *per se* transfer to a bankruptcy trustee, as distinguished from a corporate debtor's privileges, which do. The Trustee also concedes, as he must, that most courts undertake a case-by-case balancing test to determine whether a bankruptcy trustee acquires an individual debtor's right to control

privilege with respect to particular documents, and that a minority has held that a bankruptcy trustee *never* acquires an individual debtor's right to control privilege. Nonetheless, through a nonsensical hodgepodge devoid of any reasoning, analysis, or effort to apply facts to law, the Trustee asks the Court to enter a blanket order determining that the Trustee—rather than the Debtor—is entitled to all of the Debtor's attorney-client privileged communications and documents that existed prior to the Trustee's appointment.

2. The Second Circuit and numerous other courts have held, unequivocally, that trial courts may not order blanket waivers of the attorney-client privilege. Rather, before compelling a party to disclose potentially privileged information, trial courts must determine the application and ownership of privilege on a fact specific, document by document, basis.

3. The Subpoenas[1] seek a limitless scope of information from fourteen different professional firms who have represented the Debtor and other entities that the Trustee claims, baselessly, the Debtor *or any member of the Debtor's family*, controls.

4. The Trustee made no effort to narrowly tailor the Subpoenas' scope to issues on which he could conceivably control the Debtor's privilege, or even to entities for which the Debtor ever controlled the privilege. Instead, the Trustee seeks to railroad the Debtor, his family, an extensive and conceptually limitless list of "Associated Individuals" and "Associated Entities" (both terms the Trustee unilaterally and subjectively defined, absent any evidence or judicial determinations) by seeking an order *on an expedited basis* that would deprive the Debtor, the Debtor's Family (another term the Trustee unilaterally defined), Associated Individuals and Associated Entities of the most sacred litigation privilege that has been deeply rooted in our

---

[1] Capitalized terms not defined herein have the meanings ascribed in the Blanket Waiver Motion.

judicial system for centuries.[2]  The Blanket Waiver Motion seeks to deprive the Debtor, his family and various other persons and entities subjectively selected by the Trustee of due process, and blatantly violates fundamental principles of fairness.

5. The task of determining the scope of an individual debtor's attorney-client and related privileges that transfers to a bankruptcy trustee is admittedly not black and white, and courts differ on the manner in which they approach the issue. However, it is clear that a bankruptcy trustee can never simply acquire carte blanche to control an individual debtor's privileged information—or that of his family, business associates and businesses owned or controlled by his family or business associates. The law expressly precludes that result.

6. For these reasons, as more fully set forth below, the Debtor respectfully requests that the Court enter an order (i) denying the Blanket Waiver Motion; and either (ii) confirming that the Debtor retains his attorney-client privilege notwithstanding the Trustee's appointment; or (iii) identifying the factors that will govern the Court's balancing analysis.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

7. The Debtor presumes the Court's familiarity with the basic procedural history of the Debtor's bankruptcy case.

8. On July 28, 2022, the Trustee filed the Rule 2004 Motions, which include the Debtor 2004 Motion, the Professionals 2004 Motion and the Third-Party Motion.

---

[2] The Subpoenas define the term "Associated Individuals" to include, among other things, "all individuals that (1) hold, control, have custody over, or discretion over assets . . . enjoyed by the Debtor or the Debtor's family; or (2) have been employees, directors, or otherwise are affiliated with one or more Associated Entities, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing." The term "Associated Entities" includes, but is not limited to, "all organizations or Entities of any type that (1) have been owned, controlled or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets . . . enjoyed by the Debtor or the Debtor's Family" together with their agents. All other things aside, there is no colorable argument that the Debtor's "enjoyment" of property, or the "Association" of the Debtor's family with a person or entity, has any bearing on the scope of the attorney-client privilege, any related privilege or the scope of the Subpoenas.

3

9. On August 2, 2022, the Trustee's counsel and the Debtor's counsel met and conferred regarding the Rule 2004 Motions. During the meet and confer, the parties were unable to agree on language of a proposed order granting the Rule 2004 Motions.[3]

10. On August 5, 2022, the Debtor timely filed a limited objection to the Rule 2004 Motions (the "Limited Objection"). The Limited Objection did not contest the Trustee's right to serve the Subpoenas. The Limited Objection only objected to the portion of the Trustee's proposed order that would have compelled the recipients of the Subpoenas to comply with the Subpoenas and deprived them of their right to object or seek to quash the Subpoenas under the Local Bankruptcy Rules and the Federal Rules of Civil Procedure.

11. At the hearing on the Limited Objection, the Court agreed with the Debtor and directed the Trustee to submit revised proposed orders that expressly preserved the recipients of the Subpoenas' right to object to the scope of the Subpoenas after the Trustee served them, as required by the Local Bankruptcy Rules and Federal Rules of Civil Procedure. The Court expressly stated:

> Well, I think what will happen under both Federal Rules of Bankruptcy Procedure 2004, and our local rule 2004-1, is that is— when a subpoena is served, the party who receives the subpoena can take whatever actions it deems appropriate under the Federal Rules of Civil Procedure.

(Tr. 8/12/22, at 19 (6-11).

12. Eleven (11) days later (minutes before 12:00 am on August 23, 2022), the Trustee filed the Blanket Waiver Motion. The Trustee also filed a "Motion Pursuant to Bankruptcy Rule 9006(c)(1), To Expedite Hearing on [the Blanket Waiver Motion]." (Doc. No. 778). The Trustee

---

[3] The undersigned declines the Trustee's invitation to rehash the discussions that took place during a meet and confer concerning the Limited Objection on August 2, 2022. Suffice it to say, the undersigned disagrees with the Trustee's perception of that discussion.

has sought and been granted expedited hearings on every substantive motion he has made since his appointment.

13.     Despite the significance and magnitude of the relief that the Blanket Waiver Motion seeks—*i.e.*, a blanket transfer to the Trustee of the Debtor's attorney-client privilege—and that of the Debtor's Family, "Associated Entities" and "Associated Individuals"—the Trustee's Motion to Expedite sought, successfully, to compel the Debtor to reply to the Blanket Waiver Motion within just four business days—on or before 1pm on Sunday, August 28, 2022.[4]

## II.     ARGUMENT

### A.     **The Trustee Did Not *Per Se* Acquire the Debtor's Attorney-Client Privilege and Related Privileges**

14.     In *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985), the United States Supreme Court held that a corporate debtor's attorney-client and related privileges passed to the bankruptcy trustee appointed to administer the corporate debtor's estate. Thus, a corporate debtor's attorney-client privilege transfers to the bankruptcy trustee by operation of law. *Id.* at 350.

15.     The Supreme Court expressly based its decision on the fact that corporate management necessarily passes control of the corporation's privilege to its successor management at the end of its tenure, and a bankruptcy trustee of a corporation most closely resembles the corporate debtor's successor management. *Id.* at 354.

16.     The Supreme Court also expressly limited its holding to corporate debtors and held that it did not apply to individual debtors. Unlike corporate management, which knows that a

---

[4] The Trustee failed to articulate why it required eleven days from the hearing on the Limited Objection to prepare the Blanket Waiver Motion and yet the Debtor should only be allowed four business days (five-and one-half calendar days) to respond, despite the magnitude of the relief sought by the Trustee.

successor will inevitably one day control the corporation, including its attorney-client privilege, individuals have no such expectation. The Court stated:

> [O]ur holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case. As we have stated, a corporation, as an inanimate entity, must act through agents. *See supra*, at 348. When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one that we embrace in this case.

*Id.* at 356-57.

17. The Trustee, talking from one cheek, acknowledges what *Weintraub* says—that its holding is inapplicable to individual debtors. (Blanket Waiver Motion, at ¶ 35). However, talking from the other cheek, he argues that "all of the Supreme Court's detailed citations concerning the role and responsibilities of a trustee under the Bankruptcy Code apply equally to a trustee for an individual as they do to a trustee for a corporate debtor." (Id, at ¶ 36). **Weintraub expressly states the opposite**.

### B. The Trustee Cannot Acquire Any of the Debtor's Privileged Information Unless the Court at a Minimum Conducts an Analysis Balancing the Debtor's Interests and the Trustee's Interest in Maximizing the Debtor's Estate

18. As the Trustee acknowledges, one line of authority, which relies on the Supreme Court's decision in *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), holds that an individual debtor's bankruptcy trustee *never* acquires the right to control the individual debtor's attorney-client privilege. *See e.g., Gottlieb v. Fayerman (In re Ginzburg)*, 517 B.R. 175, 181 (2014) ("A careful reading of *Swidler* dictates that the balancing of interests urged by the Trustee is not to be recognized as an exception to 'one of the oldest, recognized privileges in the law.'"). "[T]he loss

of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place." *Id.* (quoting *Swidler*, 524 U.S. at 408).

19. In *Swidler*, the Supreme Court rejected the argument that "'existing exceptions to the attorney-client privilege, such as the crime-fraud exception and the testamentary exception, make the impact of one more exception marginal.'" *Id* .(quoting *Swidler*, 524 U.S. at 408).[5] "[W]hile the need for a bankruptcy trustee to marshal assets and properly investigate the affairs of a debtor provide a strong basis for the balancing test here, the Supreme Court has clearly prohibited such a 'one more exception' approach." *Id.*; *see also In re Silvio de Lindegg Ocean Developments of America, Inc.*, 27 B.R. 28 (Bankr. S.D. Fla. 1982); *McClarty v. Gudenau*, 166 B.R. 101, 101-102 (E.D.Mich.1994) (both holding that an individual's attorney-client privilege cannot be waived by the trustee on behalf of a debtor).

20. Other decisions, which either pre-dated *Swidler* or determined that it did not apply to bankruptcy cases, employ a balancing test that weighs the potential harm to the debtor from disclosing his or her privileged communications and impeding attorney-client communications, on the one hand, against the trustee's interest in maximizing the estate, on the other hand. *See e.g., Moore v. Eason (In re Bazemore,* 216 B.R. 1020, 1024 (Bankr. S. D. Ga. 1998); *see also* Blanket Waiver Motion, at 14-17.

21. On one end of the spectrum, attorney-client communications that concern a debtor's pre-petition claim against *a third party* will likely assist the trustee to pursue the claim on the estate's behalf and disclosing these types of communications to the trustee is unlikely to cause

---

[5] *Swidler* was not a bankruptcy case and did not concern a bankruptcy trustee's right, or lack thereof, to a debtor's privileged information.

harm to the Debtor. *See id.* (collecting cases). Courts "finding that the trustee may waive the privilege of an individual debtor focus on the lack of an adverse effect on the debtor based upon the specific facts of the case." *Bazemore*, 216 B.R. at 1024.

22. Conversely, "[i]t is persuasive that an individual debtor should alone hold the attorney-client privilege waiver when potential harm to or control over his person possibly exists from a disclosure, or communication with an attorney may be chilled." *Id.* at 1025; *see also In re Silvio*, 27 B.R. at 28 (where an individual owner of all the stock of a bankrupt corporation also filed for bankruptcy the trustee could waive the privilege of the corporation because only fiscal loss of assets could arise but could not waive for the individual because the disclosure could involve criminal conduct and, thus, a possible loss of personal freedom *i.e.,* prison); *In re Hunt*, 153 B.R. 445 (Bankr. N.D. Tex. 1992) (an independent trustee's attempt to avoid fraudulent transfers and pre-petition preferences of the individual debtors, by examining the debtors' attorneys would chill a full and frank attorney-client communication if sensitive information might be revealed during bankruptcy).

23. The clearest indicator weighing in favor of an individual debtor retaining the attorney-client privilege is when communications implicate non-dischargeability or criminal liability. *Compare Miller v Miller*, 247 B.R. 704, 709-710 (N.D. Bankr. Oh. 2000) ("merely because the trustee becomes the transferee of all (or most) of the debtor's assets does not thereby denote that the trustee is also the recipient of the debtor's attorney-client privilege. Stated in another way, the mere transfer of assets does not also entail the transfer of the individual's attorney-client privilege as well. . . . the Court is not persuaded that the Trustee should be entitled to succeed to the Debtors' attorney-client privilege, and thereby unilaterally waive the privilege. Of significance in this decision is the fact that the Trustee and the Debtors are in an adversarial relationship . . . As

a consequence, the Trustee's assumption of the Debtor's attorney-client privilege could potentially cause the Debtors a great deal of harm, as the Trustee's sole purpose for seeking to waive the Debtors' attorney-client privilege is to use that information directly against them. (i.e., to revoke the Debtors' bankruptcy discharge)."), *with Ramette v. Bame (In re Bame)*, 251 B.R. 367, 377 (Bankr. D. Minn 2000) ("In this case the Debtor has already been denied his discharge, and the Trustee is only seeking to uncover assets and avoidable transfers that may benefit the estate.")

24. While the Trustee purports to embrace the balancing test, the Trustee has completely misstated how that test may be applied. The Trustee contends that "[c]ourts applying th[e] balancing test routinely find the trustee to control the privilege with regard to documents that may identify and aid in the recovery of assets for the benefit of the estate and creditors or that relate to the administration of the estate." (Blanket Waiver Motion, at 16). While purporting to apply this standard, the Trustee urges the Court to apply a blanket transfer of the Debtor's privilege to the Trustee, contending that "the discovery requests attached to the Rule 2004 Subpoenas seek documents relating to (i) specific assets and property interests discussed in the [Rule 2004] Motion… (ii) the Debtor's interest in and relationships with other individuals, corporate entities and non-profits . . . and (iii) the Debtor's communications with his counsel and other advisors regarding corporate governance issues and the Debtor's finances and property interests. (Id. at 17-19). The Trustee further misrepresents that "[e]ach request is tailored to identify information related to Debtor's assets and financial condition, his relevant business practices, and how he administered his estate." (Id. at 19).

25. As an initial matter, the standard that the Trustee seeks to impress upon the Court is not a "balancing" test because it only weighs one side of the scale. A trustee is not entitled to information simply because it concerns the Debtor's finances and financial condition. The Court

must *weigh* the Trustee's interest in obtaining that information *against* the potential harm to the Debtor from disclosing his confidential communications with his counsel. *See e.g., Miller*, 247 B.R. at 709-710.

26. Moreover, the Trustee's characterization of the Subpoenas is objectively false. The Trustee made no effort, whatsoever, to limit the scope of the information requested to topics that are likely to augment the estate. The Subpoenas served on fourteen (14) professional firms that represent, or represented, either the Debtor, the "Debtor's Family," "Associated Individuals," or "Associated Entities"—all of which terms (other than the Debtor) the Trustee unilaterally defined without a scintilla of evidence or a legal basis to do so—and seeks to compel those professional firms to produce, by way of example and not limitation:

> 17. All Documents relating to any obligation, claim, liability, or debt associated with ***any legal dispute involving the Debtor***, including but not limited to those relating to any litigation before any local, state, federal, or international body, whether an administrative body, court, panel, or alternative dispute resolution entity.[6]

27. It is difficult to conceive of a more broadly worded request for a waiver of privilege than a request for all documents concerning "any legal dispute involving the Debtor"—particularly in a case such as this, where creditors have already initiated non-dischargeability actions, the Trustee has publicly questioned the Debtor's right to a discharge, and numerous parties, including creditors of the Debtor's estate, registered agents of the Chinese Government (including Bruno Wu, who is financing numerous litigations against the Debtor) and the Chinese Government itself, have accused the Debtor of numerous serious crimes (albeit baselessly). Indeed, Rui Ma, one of

---

[6] The Subpoenas also appear to presume that the Trustee is entitled to control the attorney-client privilege and related privileges that belong to the "Debtor's Family," "Associated Entities" and "Associated Persons", presumably based on pure speculation that the Debtor controls them. All other things aside, the Trustee is not entitled to any rights to control entities or persons other than the the Debtor until he obtains a judicial determination that the Debtor controls those persons or entities, which will never happen because the Trustee lives in a world of fiction that is substantiated by no evidence whatsoever.

10

the more vocal creditors, has accused the Debtor of rape and false imprisonment. In this context, the Trustee's request for a blanket transfer of the Debtor's privilege is frivolous. For these reasons alone, the Court cannot grant the Blanket Waiver Motion.

**C. The Court Cannot Compel the Debtor or His Professionals to Disclose Any Privileged Communications Without Conducting a Fact Specific, Document by Document, Analysis and Application of the Balancing Test**

28. Even where cause exists to order a party to disclose certain privileged information, a trial court must undertake a fact specific analysis to determine which documents must, and must not, be disclosed. *See Highland Capital Mgmt., L.P. v. United States*, 626 Fed. Appx. 324, 328 (2nd Cir. 2015) ("The District Court's failure to consider and rule expressly on the question of privilege constitutes error, and we vacate the District Court's determination on this issue and remand for reconsideration, including whatever in camera review of the documents at issue may be appropriate in the circumstances presented.") (internal citations omitted); *Chase Manhattan Bank, N.A. v. Turner & Newall,* PLC, 964 F.2d 159, 166 (2d. Cir. 1992) (order requiring party to turn over documents withheld from production on the basis of privilege without a judicial ruling on the merits of privilege claim overturned); *International Business Machines Corp. v. United States*, 471 F.2d 507, 509 (2d. Cir. 1972) ("Since no specific document is before us, we must assume that the contents of the some 1200 documents in question fall within the attorney-client privilege …."); *Winfield v. City of New York*, 2018 U.S. Dist. LEXIS 79281, [*12-24] (S.D.N.Y. May 10, 2018) ("Controlling precedent … make[s] clear that the court may not run roughshod over a party's assertion of privilege merely to expedite discovery or relieve itself from determining a party's substantive or common law rights. What would be expedient here is simply not right in terms of the resolution of the parties' dispute.").

11

29. This rule applies full force in individual bankruptcy cases. *See e.g.*, *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1262 (10th Cir. 1999) ("No general rule allows the trustee for an individual placed in involuntary bankruptcy to invariably control the individual's attorney-client privilege as to the debtor's pre-petition claims."). *Foster* squarely precludes the relief sought by the Trustee through the Blanket Waiver Motion. In *Foster*, the bankruptcy court ordered disclosure of the debtor's attorney-client privileged communications to the trustee, based solely on its review of a privilege log, holding that "the right to assert, or to waive, the attorney-client privilege, passes from a debtor to a bankruptcy trustee where . . . it involves the recovery of assets of the estate in the nature of pre-petition civil actions." *Id.* at 1263-64. The Tenth Circuit reversed the bankruptcy court, holding that it erred by "essentially declin[ing] to review or investigate the specifics of [the debtor's] privilege claims after he asserted them and proffered a privilege log of withheld documents." *Id.* at 1264.

30. The Tenth Circuit further explained that although the bankruptcy court

> suggested it had undertaken a case-specific analysis, describing its conclusion as 'supported by . . . the nature of the claims in this case and the particular documents sought by the trustee.' . . . Its case-specific analysis, though, was limited to noting that the pre-petition suits were the estate's main assets; that they entailed good faith 'affirmative claims for breach of contract, fraud, and claims on promissory notes against third-persons with whom the Debtor conducted business pre-petition' and that the documents sought were 'strictly limited to those in [counsel's] files for pending civil actions . . . [and not] from [the debtor's] criminal files.' . . . ***While those observations may have been a good start, the court failed to relate them to the actual documents withheld by reviewing those documents in camera. . . . If a court resolves a privilege dispute by a balancing analysis, it must instead focus on specific facts and documents***.

*Id.* at 1266-1267 (emphasis added).

31. Here, the Trustee impermissibly seeks a blanket waiver or transfer of the Debtor's privilege. Accordingly, the Court must deny the Blanket Waiver Motion. *See id.; see also Highland Capital Mgmt., L.P.*, at 328.

### D. The Court Can and Should Enter an Order Determining the Standard Governing the Debtor's Right to Retain His Attorney-Client and Related Privileges

32. Although the Trustee is not entitled to a blanket order transferring the Debtor's attorney-client privilege to him, the parties would all benefit from an order of the Court confirming the line of authority that it intends to follow. Based on the circumstances of this case, *i.e.*, the outstanding criminal allegations against the Debtor and pending actions to deprive him of a discharge, the Court could rule that the Debtor is entitled to retain his entire pre-petition/pre-trustee appointment attorney-client privilege—at least until those allegations are fully and finally resolved. *See e.g.*, *Gottlieb*, 517 B.R. at 181; *In re Silvio de Lindegg Ocean Developments of America, Inc.*, 27 B.R. at 28; *McClarty*, 166 B.R. at 101-102.

33. Alternatively, the Court could enter an order confirming that it intends to conduct a balancing analysis. *See e.g., Bazemore*, 216 B.R. at 1024; *Miller*, 247 B.R. at 709-710. If it does so, the Court could direct the parties how to apply their analysis to the Debtor's information. For example, the Court could direct the recipients of the Subpoenas to withhold documents on the basis of privilege (without prejudice to any other objections that individual recipients of Subpoenas may have) only documents that they believe potentially implicate harm to the Debtor, such as criminal allegations, facts relating to non-dischargeability, or facts that have nothing to do with the Debtor's estate, such as his pending asylum application. *See e.g. In re Silvio de Lindegg Ocean Developments of America, Inc.*, 27 B.R. at 28; *Miller*, 247 B.R. at 709-710. An order of this nature would not, and could not, circumvent the need for a subsequent judicial review of the documents that the recipients of the Subpoenas withheld—since the Court—not the Subpoena recipients—

13

will have the final say as to which privileged documents remain within the Debtor's control. However, an order of this nature would almost certainly streamline the process and substantially increase the probability that the Court will agree with the parties' privilege claims because the parties will be able to tailor their privilege claims to the standard ordered by the Court.

**WHEREFORE,** the Debtor respectfully requests that the Court an order (i) denying the Blanket Waiver Motion; and either (ii) confirming that the Debtor retained his attorney-client privilege notwithstanding the Trustee's appointment; or (iii) identifying the factors that will govern the Court's balancing analysis.  The Debtor also requests that the Court grant such further relief as the Court deems just and proper.

Dated at Bridgeport, Connecticut on this 27th day of August, 2022.

                **THE DEBTOR,**
                **HO WAN KWOK**

                */s/ Aaron A. Romney, Esq.*
                Eric Henzy (ct12849)
                Stephen M. Kindseth (ct14640)
                Aaron A. Romney (ct28144)
                10 Middle Street, 15th Floor
                Bridgeport, Connecticut 06604
                Telephone: (203) 368-4234
                Facsimile: (203) 368-5487
                Email: ehenzy@zeislaw.com
                           skindseth@zeislaw.com
                           aromney@zeislaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 27th day of August, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                        */s/ Aaron A. Romney*
                                        Aaron A. Romney, Esq.