UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                          *   Case No. 22-50073 (JAM)
                               *
      HO WAN KWOK,             *   Bridgeport, Connecticut
                               *   August 30, 2022
                  Debtor.      *
                               *
* * * * * * * * * * * * * * *   *

TRANSCRIPT OF ORDER SCHEDULING STATUS CONFERENCE;
MOTION FOR ORDER ESTABLISHING REPAIR RESERVE
FOR LADY MAY; MOTION TO EXPEDITE HEARING;
MOTION TO STAY PENDING APPEAL ESTABLISHING
REPAIR RESERVE FOR THE LADY MAY; MOTION TO STAY
SECS.523/727 ADVERSARY PROCEEDINGS; MOTION
FOR ORDER PROVIDING THAT CONTROL OF PRIVILEGES
PASSED TO TRUSTEE UPON APPOINT AND FOR RELATED RELIEF
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor,                STEPHEN M. KINDSETH. ESQ.
 HK International and          AARON ROMNEY, ESQ.
 Mei Guo:                      ERIC HENZY, ESQ.
                               Zeisler & Zeisler, P.C.
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604


For the Creditor, Pacific      LAURA ARONSSON, ESQ.
 Alliance Asia Opportunity     STUART M. SARNOFF, ESQ.
 Fund L.P.:                    O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               PATRICK BIRNEY, ESQ.
                               Robinson & Cole
                               28 Trumbull Street
                               Hartford, CT  06103


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:  (Cont'd)

For the Creditors Committee:    IRVE GOLDMAN, ESQ.
                                           Pullman & Comley
                                           850 Main Street
                                         Bridgeport, CT  06601

For the U.S. Trustee:     HOLLEY CLAIBORN, ESQ.
Office of the United States
   Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT  06510

Chapter 11 Trustee:     LUC A. DESPINS, ESQ.
Paul Hastings LLP
200 Park Avenue
New York, NY  10166

Counsel for the     NICHOLAS BASSETT, ESQ.
 Chapter 11 Trustee:     Paul Hastings LLP
200 Park Avenue
New York, NY  10166

PATRICK R. LINSEY, ESQ.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT  06510

For Verdolino & Lowey:     WILLIAM BALDIGA, ESQ.
Brown Rudnick
Seven Times Square
New York, NY  10036

1          (Proceedings commenced at 1:06 p.m.)

2                THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3      Kwok.

4                THE COURT:  Okay.  Good afternoon.  If we could

5      have appearances for the record starting with the Chapter 11

6      Trustee, please.

7                MR. DESPINS:  Good afternoon, Your Honor.  Luc

8      Despins with the -- for the Chapter 11 Trustee.

9                THE COURT:  Good afternoon.

10               MR. BASSETT:  Good afternoon, Your Honor.  Nick

11     Bassett from Paul Hastings on behalf of the Chapter 11

12     Trustee.

13               THE COURT:  Good afternoon.

14               MR. LINSEY:  Good afternoon, Your Honor.  Patrick

15     Linsey, local counsel for the trustee.

16               THE COURT:  Good afternoon.

17               MR. BIRNEY:  Good afternoon, Your Honor.  Patrick

18     Birney, Robinson & Cole, on behalf of PAX.  With me in

19     person is Attorney Laura Aronsson, from O'Melveny, and via

20     Zoom Attorney Stuart Sarnoff.

21               THE COURT:  Yes.  Good afternoon.

22               MS. CLAIBORN:  Good afternoon.

23               MR. GOLDMAN:  Good afternoon, Your Honor.

24               MS. CLAIBORN:  Sorry.  Good afternoon.  Holley

25     Claiborn for the U.S. Trustee.

1              THE COURT:  Good afternoon.

2              MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

3     Goldman, Pullman & Comley, representing the Creditors

4     Committee.

5              THE COURT:  Good afternoon.

6              MR. ROMNEY:  Good afternoon, Your Honor.  Aaron

7     Romney, Zeisler & Zeisler, on behalf of the debtor, as well

8     as HK International and Ms. Guo individually.

9              THE COURT:  Good afternoon.

10             MR. HENZY:  Eric Henzy of Zeisler & Zeisler for

11    the same parties.

12             THE COURT:  Good afternoon.

13             MR. KINDSETH:  And Stephen Kindseth, Zeisler &

14    Zeisler, again for those three parties.

15             THE COURT:  Good afternoon.

16             MR. BALDIGA:  Good afternoon, Your Honor.  William

17    Baldiga, Brown Rudnick.

18             THE COURT:  Good afternoon.  Okay.

19             THE COURTROOM DEPUTY:  I'm sorry, I did not --

20             THE COURT:  Mr. Baldiga, you didn't hear -- is

21    that who you --

22             THE COURTROOM DEPUTY:  I don't think -- I don't

23    think it picked up.

24             THE COURT:  Oh, it didn't pick up?

25             Can you just say your name again?

1          MR. BALDIGA:  William Baldiga, Brown Rudnick.

2          THE COURTROOM DEPUTY:  Thank you.

3          THE COURT:  Thank you.

4          MR. BALDIGA:  Thank you.

5          THE COURT:  Okay.  With regard to this afternoon,

6    there are several matters on the calendar.  I did take a

7    look at the calendar in the -- from a standpoint of seeing

8    if there was -- if there were possibly one or more matters

9    that we might want to take in a different order than they

10   appear on the calendar, and I was looking first at the

11   motion to stay the adversary proceedings that were filed on

12   -- that was filed on behalf of the Chapter 11 Trustee to

13   which I did not see any objections filed.

14          Attorney Linsey?

15          MR. LINSEY:  That's correct, Your Honor.

16          In fact, in the motion, we had stated that all but

17   one of the parties to the adversary proceedings had either

18   consented or stated that they had no objection after we

19   filed the motion.  It's now all of the parties --

20          THE COURT:  Okay.

21          MR. LINSEY:  -- who either have affirmatively

22   consented or affirmatively stated they have no objection to

23   the relief sought.

24          THE COURT:  Great.  Thank you.

25          So now I just -- I have reviewed the motion.  I

1   just need to look at the proposed order for a moment if I

2   can find it.

3        (Pause)

4             MR. LINSEY:  It should be page -- ECF 763, page 9.

5             THE COURT:  Thank you.  I'm just having difficulty

6   getting there for a second, but I'll get there in a minute.

7        (Pause)

8             THE COURT:  Okay.  I'm looking at the proposed

9   order granting the motion for stay of adversary proceedings

10  seeking determination of nondischargeability of debts and/or

11  denial of discharge.

12             And the extension would run through October 22nd,

13  2022, Attorney Linsey, correct?

14             MR. LINSEY:  I believe it was through October

15  21st, 2022.  That was the day that's referred to.  You know,

16  I apologize for noticing this now.  There's a discrepancy

17  between the order and the -- and the motion, so --

18             THE COURT:  What day -- well, we'll look at a

19  calendar.  How's that?  Hold on just a second.

20             MR. LINSEY:  That's fine.

21             THE COURT:  October 21st is a Friday, so October

22  22nd is a Saturday.  So October 21st then is the date.

23             MR. LINSEY:  My guess is that was a typo.  I

24  apologize, Your Honor.

25             THE COURT:  Okay.  So looking at the order, then

1    in the first -- I'm turning to the courtroom deputy -- in

2    the first paragraph of the proposed order, that's on page 9

3    --

4              THE COURTROOM DEPUTY:  Okay.

5              THE COURT:  -- it just says -- at the end of that

6    first paragraph it says through October 22nd, but it should

7    say 21st.

8              THE COURTROOM DEPUTY:  Okay.

9              THE COURT:  Okay.  Can we also add to the end of

10   the first paragraph where it says and good cause having been

11   shown, do you see that language?

12             THE COURTROOM DEPUTY:  Yes.

13             THE COURT:  And then just enter and after a

14   hearing held on August 30, 2022 so it's clear there was a

15   hearing.

16             And then the proposed order can enter, Attorney

17   Linsey.  Is that fine, those changes that I've stated on the

18   record?

19             MR. LINSEY:  That is, Your Honor.  The order

20   itself provides for the order to enter in the main case and

21   in the individual adversary proceedings that are at issue.

22             For clarity of the record, this does not implicate

23   the HK International adversary proceeding.

24             This only implicates the 523 and 727 adversary

25   proceedings.

1            THE COURT:  Yes.  Thank you.

2            MR. LINSEY:  Thank you, Your Honor.

3            THE COURT:  I appreciate you noting that for the

4     record.

5            So we will just enter the order -- the order will

6     entered in the main case and in the 523 and 727 adversary

7     proceedings.

8            THE COURTROOM DEPUTY:  Okay.

9            THE COURT:  Okay?

10            THE COURTROOM DEPUTY:  Yeah.

11            MR. LINSEY:  And those are -- those are in bullet

12     points on the first two pages of the motion.

13            THE COURT:  Yes.  Thank you.

14            MR. LINSEY:  For ease of reference.  Thank you.

15            THE COURT:  Thank you.

16            All right.  So that addresses the motion to -- the

17     Chapter 11 Trustee's motion for a stay of those specific

18     adversary proceedings that we just talked about.

19            So that's ECF 763 is granted.

20            Now, there obviously are some other matters on

21     today's calendar.

22            I think it might make sense to talk about the

23     reserve motion first because we're just -- it's a status

24     conference.

25            And I scheduled it because I think, Attorney

1    Kindseth, I read your papers properly that you're seeking an

2    evidentiary hearing.  Is that correct?

3           MR. KINDSETH:  That's correct.

4           THE COURT:  Okay.  So tell me about what your

5    thoughts are with regard to an evidentiary hearing.  What

6    kind of time frame do you need?  What witnesses and/or

7    exhibits are you going to be submitting?  And then obviously

8    I'm going to hear from other parties about their position as

9    well.

10          MR. KINDSETH:  Thank you, Your Honor.

11          First, Your Honor, I would like to say that I

12   think just scheduling the hearing will facilitate

13   conversations between the parties in more earnest and so we

14   may be able to narrow the issues.

15          But to answer your question directly, I anticipate

16   a day.  It should not take more than a day.  I do believe

17   we'll be able to narrow the issues considerably.

18          There are basically two buckets of repairs.

19   There's the repairs that the creditors committee, PAX, and

20   the other creditors are not insisting on being done before

21   the release of the $37 million.  And there's the engine

22   repair which they are insisting on being performed before

23   the release of the $37 million.

24          And I -- so I think that once the hearing is

25   scheduled and we engage in these conversations and we narrow

1    the numbers down, we'll just be talking about the -- and, of

2    course, counsel for PAX can speak to this point -- what are

3    the issues with respect to the engine repair and what are

4    the risks, and whether or not the stipulation expressly

5    contemplated such repairs and, therefore, the repair reserve

6    should be established in an estimated amount and then that

7    component can be satisfied and presumably the other issues

8    will be resolved and the $37 million can be released.

9           So with that said, I think it's going to be a day.

10   I would have the captain and the chief engineer testify as

11   to the proposals received and the work that needs to be

12   performed.  And I believe PAX has an expert -- I know they

13   have an expert who would, again, address this particular

14   issue.  So I don't anticipate it being more, more than a

15   day.

16           THE COURT:  And what kind of documentation

17   exhibits are you going to have?

18           MR. LINSEY:  It would simply be the proposals --

19           THE COURT:  Okay.

20           MR. LINSEY:  -- with respect to the work that

21   needs to be performed and the cost.  But I don't think the

22   cost is at issue.  We've provided multiple quotes for the

23   cost of the repairs.

24           The only issue, as I see it, Your Honor, is

25   whether or not the circumstances necessitate withholding an

1    order on the repair reserve pending the completion of the

2    engine repairs which unfortunately are going to take

3    probably 45 to 60 days.

4            We're trying to schedule the Lady May being hauled

5    from the water and dry docked on September 7th or 8th.  And

6    because of the other time frames and the stipulation, if the

7    engine repairs have to be completed first, we're talking

8    about a three to four month delay in the release of the

9    repair reserve, I'm sorry, the release of the $37 million

10   escrow funds.

11           THE COURT:  The escrow.  Yeah.

12           MR. LINSEY:  And so that's the crux of the issue.

13           I have conferred with the captain and the chief

14   engineer.  They're available anytime in September.  I have a

15   conflict on September 14th and 15th as well as the 22nd and

16   23rd.  But other than that, I'm available anytime, Your

17   Honor.

18           THE COURT:  Okay.  Thank you.

19           MR. LINSEY:  Thank you.

20           THE COURT:  Counsel?

21           MS. ARONSSON:  Good morning, Your Honor.  Laura

22   Aronsson from O'Melveny for PAX.

23           In our view, the stipulation gives Your Honor some

24   discretion for the way in which these repairs will be

25   conducted.  And the issue with the engine was not

1    contemplated at the time we entered into the stipulation.

2            As it stands, the extent of the repairs to the

3    starboard engine are unknown at this time.  So in our view

4    the repair to the engine should be completed.

5            At that point, PAX's expert can go in and do a sea

6    trial and determine whether there are any other repairs that

7    need to be conducted to restore the Lady May to good working

8    order.

9            So at this time the Lady May is not in good

10   working order.  It's not seaworthy.  The starboard engine as

11   I think it failed.  The fuel pump failed when it entered the

12   New York Harbor.

13           And there are concerns that -- from PAX's point of

14   view and our expert's point of view that these repairs --

15   this issue is indicative of a broader issue with the engine.

16           So that said, we will agree to a hearing at Your

17   Honor's convenience.  We need a couple of weeks I think to

18   put together our full position on this.

19           But in sum we oppose the setting of a reserve at

20   this time in principle.  We think that the repairs should be

21   conducted first.

22           THE COURT:  Okay.  Thank you.

23           With regard to Mr. Kindseth's idea for time of a

24   hearing, he's saying one day.  And he's got two witnesses

25   and some documents.  What, if anything, is PAX's proposal

1    with regard to an evidentiary hearing?

2            MS. ARONSSON:  So in the first instance we would

3    appreciate the opportunity to respond in writing to the

4    motion, but we would -- I anticipate our experts -- possibly

5    some exhibits.

6            To be honest, we're still reviewing the evidence.

7    Last week we conducted a dive hull inspection of the Lady

8    May to gather additional evidence about the current

9    condition, so we're still putting together what our evidence

10   would look like at that hearing.

11           THE COURT:  Okay.  I understand.

12           So you -- so in answer to my question, you would

13   like the Court to set a deadline for anyone to file a

14   written objection or a response to the reserve motion and

15   then conduct the evidentiary hearing after that time frame?

16           MS. ARONSSON:  That's right.

17           THE COURT:  Okay.  And do you anticipate that one

18   day will be enough time for you to present the case on

19   behalf of PAX after the debtor, excuse me, after HK

20   International presents its case with regard to the reserve

21   motion?

22           MS. ARONSSON:  Yes.  I think one day should

23   suffice.

24           THE COURT:  Okay.

25           MS. ARONSSON:  Just for our schedule we are not

1    available September 10th through the 22nd and the 25th

2    though the 27th.

3              THE COURT:  Okay.  Thank you.

4              MS. ARONSSON:  Thank you, Your Honor.

5              THE COURT:  Thank you.

6              Mr. Despins?

7              MR. DESPINS:  Good afternoon, Your Honor.

8              I'm just seeking clarification because Mr.

9    Kindseth said something about the fact that the creditors

10   were willing to allow for some repairs to take place after

11   the return of the $37 million?

12             I never understood that to be the case.  I thought

13   the point was that there's a cosmetic or what looks like a

14   cosmetic issue that needs to be fixed.  The sea trial does

15   not need to wait for that to be repaired.  But I never

16   understood that people were actually talking about sending

17   back the 37 million even though that repair is not done.

18   So that's a clarification I'm seeking.

19             And the other point is I want to be clear about

20   the hearing.  At the hearing, I want to make sure Mr.

21   Kindseth understands this is that there will be a position

22   taken that repairs must be done regardless of the estimates

23   given before there's a test as to the seaworthiness of the

24   ship.  And, therefore, you know, as long as that issue is up

25   for determination at that hearing, I have no issues going

1    forward.

2              But I wouldn't want to be in a position where it's

3    a fait accompli that a -- that the sole purpose of the

4    hearing is to determine a reserve.  I understand Mr.

5    Kindseth will take the position that that's what should

6    happen.  I get that.  Absolutely.  But the issue of whether

7    the repairs should be done first should still be a live

8    issue.  That's just a clarification I'm seeking from the

9    Court, Your Honor.

10             THE COURT:  Attorney Goldman?

11             MR. GOLDMAN:  Your Honor, for the committee, the

12   committee subscribes to the view of PAX and the trustee.

13   This was a lately discovered problem in terms of the repair

14   of the engine, which was a rather foundational part of the

15   operation of the boat.

16             And I think the order is broad enough to encompass

17   what has been proposed by PAX, in particular that the engine

18   repair be done and that the yacht be tested for

19   seaworthiness to make sure that there isn't an additional

20   problem as a result of what happened to the engine.  That

21   was not before any party when the stipulated order was

22   entered into.

23             THE COURT:  Thank you.

24             Mr. Kindseth?

25             MR. KINDSETH:  Yes, Your Honor.

1          With respect to the distinction I drew, there were

2    known repairs that had to be performed, such as the sea

3    valve work that needed to be done.  It was always

4    contemplated that the repair reserve would be established to

5    fund that and then that would trigger the release of the $37

6    million.

7          The only issue that is being argued from the other

8    side is that the engine issue, which arose on the way when

9    the yacht was being returned to Connecticut, creates some

10   sort of extenuating circumstance through which the

11   stipulation can be interpreted to permit or require those

12   repairs to be done before the release of the $37 million,

13   which we adamantly dispute because we believe the

14   stipulation expressly contemplated unknown repairs.

15         But regardless, that is for the hearing.

16   And I agree with the trustee.  This is a status conference.

17   I understand the arguments.  The arguments are not going to

18   be precluded, even my distinction between the two types of

19   repairs.

20         If they want to argue that the parties

21   contemplated always having all the repairs done before the

22   $37 million was released, they can argue that. It's all

23   going to be set down for a hearing.

24         I would also note, Your Honor, that PAX's request

25   to block out most of the month of September is not

1    reasonable, Your Honor.  My client is incurring 3 percent

2    per month interest on the $37 million it borrowed.  We have

3    returned the boat more than a month ago.  This was supposed

4    to be an expedited process.  And we're asking the Court to

5    schedule a hearing.

6           And counsel, the firm, has plenty of lawyers that

7    should be available that could present this very discrete

8    issue of these repairs and most of September should not be

9    blocked off.  Thank you.

10          THE COURT:  Go ahead, counsel?

11          MS. ARONSSON:  Thank you, Your Honor.

12          I think we can stand down on the 10th to the 22nd,

13   so I think we can be more flexible, but we cannot do the

14   25th to the 27th of September.

15          Apologies.  I'm coordinating with counsel

16   remotely.

17          THE COURT:  Understood.

18          MS. ARONSSON:  Thank you.

19          THE COURT:  Thank you.

20          So the purpose of setting the status conference

21   was to talk about the fact that HK International wanted an

22   evidentiary hearing on its motion.

23          There is nothing in any of the orders that I've

24   entered that said that that means all they have to do is

25   come forth and establish that a reserve should be X.

1          Anybody can argue that it shouldn't have to happen

2     right now.  I think that's pretty clear.  And, you know,

3     whatever is going to happen I have no idea.  We'll see what

4     you all have to say.

5          But the purpose of the -- well, you all entered --

6     obviously the trustee -- the trustee was not a party to any

7     of this.  He was not in the case when the parties agreed to

8     forego a hearing on relief from stay and a ruling on relief

9     from stay.

10          And, Mr. Kindseth, I don't have it in front of me,

11    but my recollection is you filed I don't know if you called

12    it a reply or an objection to relief from stay saying we're

13    going to bring the boat back so that moots the I think

14    that's what you said, right, that it moots the request for

15    relief that PAX had made in its motion for relief from stay.

16    And we had, you know, some discussions about that at

17    hearings.

18          And then there was this stipulated order.  And

19    what -- and Mr. Baldiga's here.  And I recall having a

20    conversation with him when he was representing the debtor

21    about posting a bond.  And then the issue was, no, we won't

22    post a bond, we'll just post cash and we'll put it in an

23    escrow, right?

24          So it's in escrow, and it has been in escrow, and

25    it will remain in escrow unless and until there's an order

1    that says it can be released from escrow.  Everyone's agreed

2    to that.

3              Whether or not there was -- my recollection of the

4    stipulation isn't that there was a need for an expedited

5    process to release the funds.  And I haven't -- I mean, I

6    can pull it up.  We can go through it.  We can do whatever

7    you'd like.

8              My recollection is that the $37 million was

9    essentially security for getting the boat back to

10   Connecticut, the navigable waters of Connecticut -- not

11   back, it never was here, or at least it wasn't during this

12   case -- subject to further order of the Court.

13             And that the reason that that was -- and you will

14   recall, Attorney Kindseth, at that time, there was a plan

15   where this boat was going to be part of a plan for

16   creditors.  Well, there is no plan anymore.

17             So what happens?  I'm not sure, and that's why I'm

18   asking you the question.

19             If you're correct, if you can establish that

20   there's a reserve, you know, you're going to put it -- I

21   don't know if you're going to deduct it from the 37 million

22   or put it in another account or how that would work, but --

23   and then the 37 million is released, then what happens to

24   the boat?

25             It's just it's still a boat that's not part of a

1    plan or anything at this point.  It was at the time that the

2    stipulation was entered into in April of this year.  There

3    was a plan that was filed and it said that the boat would be

4    pledged to the estate.  Now, it had different conditions.

5    And I understand all the terms.

6             I don't understand, but I recall all the terms of

7    the plan, and there were issues about releases and whether

8    or not the creditors would really ever agree to that plan,

9    but at least there was a format of how the case was going to

10   proceed.  Whether or not it ever would get to confirmation

11   is a different issue, right?

12            But at this point, if the $37 million is released,

13   so what happens to the boat?

14            MR. KINDSETH:  Yes, Your Honor.  The boat stays

15   here.

16            And just to clarify some things, this was heavily

17   negotiated and took an extended period of time and we went

18   over all of the provisions exhaustively.  Okay?

19            And that's what's probably so infuriating about

20   the situation that we're in and the positions that are being

21   taken against my client, because this, it's all in the

22   stipulation.

23            So the first clarification I'd like to point out,

24   Your Honor, is that if the boat is returned, if the captain

25   is served with a copy of the order, and YACHTZOO is served

1  with a copy of the order -- and the captain's been served

2  already -- and if they sign a declaration acknowledging

3  certain things --

4          THE COURT:  Yeah.  Aren't they supposed to sign a

5  declaration that says they're --

6          MR. KINDSETH:  Yeah.

7          THE COURT:  -- they acknowledge they're restrained

8  from removing the boat?

9          MR. KINDSETH:  Correct.  Correct.

10         THE COURT:  But I haven't seen that, have I?

11         MR. KINDSETH:  Correct.  The process which is laid

12  out in here --

13         THE COURT:  I'm just asking.

14         MR. KINDSETH:  Yeah.  It hasn't been filed yet.

15         THE COURT:  Because I remember that was part of

16  the stipulation and I don't think I've seen anything --

17         MR. KINDSETH:  Correct.

18         THE COURT:  -- that shows me.  The boat's been

19  here since --

20         MR. KINDSETH:  Yeah.

21         THE COURT:  -- I don't know, June, July?

22         MR. KINDSETH:  July.

23         THE COURT:  That's right.  July.  And I don't -- I

24  haven't seen anything on the docket of the case anyway --

25         MR. KINDSETH:  Yeah.

1          THE COURT:  -- where the harbor master and the

2     captain have, and I believe those were the entities, that

3     agreed that they would be restrained from removing the boat

4     from the navigable waters of Connecticut.

5          MR. KINDSETH:  The captain signed the declaration.

6     The captain's been served.

7          But the process that's laid out here, Your Honor

8     -- and this is why it's a certainty that the repair reserve

9     was established and then the $37 million would be released

10    -- because the order is return the boat, serve the captain

11    and YACHTZOO, have them sign declarations, have this court,

12    after noticing a hearing establishing a repair reserve, then

13    I -- once that's done, I serve a certification.  No further

14    order of this court is required, Your Honor.

15          I serve a certification on the applicable parties.

16    They have 15 days to run to court if they have a problem

17    with my certification.  And they have to attest to the fact

18    that my certification is inaccurate.

19          If they don't do that within 15 days, I then

20    provide the certification to the escrow agent,

21    simultaneously copying everybody on the other side and then

22    the escrow agent, upon receipt of that certification,

23    releases the $37 million back to my client.  And this is

24    precisely what the stipulated order provides.

25          There was -- and the repair reserve contemplated

1   reserving with respect to repairs, known and unknown.  It is

2   -- and so -- because we would never want to hold up the

3   release of $37 million, which is almost twice the value of

4   the boat, while repairs were being performed.

5         We could -- if they were acting in good faith, we

6   could agree to a number.  Okay?  There's a number that's

7   enough to cover the anticipated costs to the repairs.

8         Additionally, Your Honor, the engine is covered by

9   insurance and so we have insurance to cover the cost.  And

10  yet, we're still proposing to reserve sufficient funds for

11  that cost and then enhancing that.  But that's not

12  sufficient.

13        And so, Your Honor, the process is laid out here.

14  And then at the end of this process -- because they don't

15  get the boat and $37 million -- so when the $37 million is

16  released, the repairs are done, and the boat stays here,

17  subject to further order of this court.

18        And so YACHTZOO, the yacht management company, is

19  restrained, the captain is restrained, by service of this

20  court's order.  They sign a declaration acknowledging that

21  they're subject to this court's order.  I've spoken to the

22  captain.  I've explained this all to the captain.  The

23  captain understands, you know, literally the boat is not

24  going anywhere subject to further order of this court, but

25  the $37 million can be released.

1          THE COURT:  Okay.  I'm not sure I completely --

2     that's completely accurate, but you may be correct.  I mean,

3     we can pull up the -- we can pull up the stipulation and go

4     through it.

5          MR. KINDSETH:  But, Your Honor, the process that

6     I'm proposing, Your Honor, is that we're going to hash all

7     this out at the hearing.

8          But in fairness to my client, in fairness to the

9     process that we agreed upon, we're asking for a hearing

10     where Your Honor hears the experts, understands the issues,

11     we call up the stipulation, I explain my position, they

12     explain their position,\ and Your Honor decides.

13          THE COURT:  I understand what you're saying.  I'm

14     just -- I am -- I mean, I think that is what's going to

15     happen essentially.  I didn't really think anything

16     different from that was going to happen.

17          But I do think that there are provisions in the

18     stipulation that have not, at least on the record of the

19     case, been clearly complied with, including the harbor

20     master and the captain's acknowledgment.

21          Because that's what the stipulation says, that

22     they're restrained.  And if there isn't something on the

23     docket that says they're restrained, acknowledged by them,

24     then they're not restrained.

25          So that has to happen.  I don't understand how

1    that can't happen.  That was one of the conditions that we

2    did talk about extensively when the stipulation was

3    presented to the Court.

4           The motion for relief from stay that was filed by

5    PAX was actually, you know, was a motion saying there was no

6    stay, or in the alternative for relief from stay.

7           And then you filed, on behalf of HK International,

8    somebody who's not a debtor in this case, the reply that

9    said we'll give you the -- we'll get the boat back here and

10   we'll pledge it.  It's going to be part of the plan.  But,

11   again, we don't have a plan.  We don't have that now.

12          So when you say the boat's going to stay here,

13   well, it might, it might not.  I don't even have an

14   acknowledgment from the captain or the harbor master, you

15   know, as to that they acknowledge they're restrained.  And

16   without that, I'm not going to do anything.

17          I mean, that's the very least that needs to

18   happen, because otherwise what's the point?  We have gone

19   through all this and for what?

20          MR. KINDSETH:  Just so you --

21          THE COURT:  Right?

22          MR. KINDSETH:  Yes.

23          But just to be very, very clear, and I can file it

24   as a preliminary matter, the process that was contemplated

25   was after I completed all four things I then serve that

1    certification.

2           The repair reserve is the fourth of those four

3    things.  The only reason why I've waited to file it is

4    because all four things need to be complete before I file it

5    under the terms of the stipulation.

6           So once the repair reserve is established, I will

7    file it.  If Your Honor wants me to file it or serve it

8    sooner, I can do that.

9           THE COURT:  All right.  Let me just look at the

10   stipulation.  Why don't we pull up ECF 299.

11          Again, the trustee was not in the case at this

12   time, so -- and the trustee is now in control of the -- of

13   this estate, so let's look at it, where you think that is.

14          MR. KINDSETH:  Paragraph 3, Your Honor.

15          THE COURT:  Okay.  Paragraph 3 on page 3 of 29 of

16   ECF 299.

17          MR. KINDSETH:  That's correct, Your Honor.

18          THE COURT:  Can we pull that up?

19          THE COURTROOM DEPUTY:  Sure, Your Honor.  One

20   moment.

21       (Pause)

22          THE COURT:  All right.  So, one, HK USA timely

23   satisfying the delivery obligation.

24          I think that did happen.  In fact, it happened

25   early is my recollection, because the delivery obligation I

1    think was July 15 and the boat was here before then.

2              Due and proper service of a true and genuine copy

3    of this order being effectuated upon the then master captain

4    of the Lady May and the yacht management company.

5              I don't know that -- I mean, you've told that's

6    happened, but I don't have that in the record, right?

7              MR. KINDSETH:  I can file something, Your Honor.

8              THE COURT:  Okay.  A certificate of service

9    attesting to such service as required hereby being filed

10   with the Court.

11             Haven't seen that.

12             A declaration made pursuant to 28 U.S.C. 1746 by

13   the captain and the yacht management company consenting that

14   each shall be subject to the jurisdiction of this court with

15   respect to this order acknowledging that they are bound by

16   the provisions of this order, which are applicable to them,

17   including specifically that they are restrained from

18   removing the Lady May from the navigable waters of

19   Connecticut until further order of this court or until

20   dismissal of the bankruptcy case is provided in Section 9,

21   which didn't happen, because the dismissal was in accordance

22   with PAX's motion to dismiss, which wasn't granted.

23             MR. KINDSETH:  Correct.

24             THE COURT:  And attesting to the contemporaneous

25   presence of the Lady May in the navigable waters of

1    Connecticut and that the Lady May is in good working order.

2                It's not in good -- I mean, I'm hearing that it's

3    not in good working order.

4                MR. KINDSETH:  But that's the parenthetical, Your

5    Honor.  Subject --

6                THE COURT:  Well, it says subject to the

7    outstanding service and maintenance.  Nobody thought you'd

8    have to get a whole engine. I mean, look --

9                MR. KINDSETH:  It's otherwise --

10               THE COURT:  -- the boat's very big.  I understand

11   that.  And I'm sure it has more than one engine.  I don't

12   know.

13               MR. KINDSETH:  Correct.

14               THE COURT:  Right?

15               MR. KINDSETH:  It's --

16               THE COURT:  So how many engines does it have?

17               MR. KINDSETH:  Two.

18               THE COURT:  And both of them are not working or

19   just one?

20               MR. KINDSETH:  No.  So just to be very clear on

21   what transpired, the gears in the fuel pump, small little

22   shards of metal were stripped off a few gears and that --

23   those gears, then entered the lubrication system.  And so

24   the entire lubrication system of the engine needs to be

25   flushed.  That's what happened.  And so theoretically it may

1  need another repair or component as part of that, but it's

2  just a theory and we can reserve for that.

3           But so what we're talking about in terms of the

4  engine failure is shards of metal came off these little

5  gears and went into the lubrication system of the engine.

6           THE COURT:  Okay.  So you're saying the entire

7  engine doesn't need to be replaced.

8           MR. KINDSETH:  No.

9           THE COURT:  It only needs to be flushed?

10          MR. KINDSETH:  No.  It's just -- but -- yes,

11  that's the problem.

12          THE COURT:  But if you wanted to get on the yacht

13  right now and take it out into the water you can't do that

14  because the engine isn't properly -- the engine or engines

15  are not properly working?

16          MR. KINDSETH:  It's not good practice at this

17  point.  I mean, you could fire it up and go, but it's not

18  prudent.

19          THE COURT:  Okay.  All right.  So let's look at

20  section 11 of this order, the repair reserve, which is on

21  page what, let's see, page 8 of 29, paragraph 11.  Page 8 of

22  29 actually.  And if we could make it a little bigger, like,

23  you know, there you go.  Thank you.  Okay.

24          HK USA shall at its sole expense -- shall cause at

25  its sole expense the service and maintenance identified in

1    the declaration and otherwise if necessary to restore the

2    Lady May to good working order to be performed either prior

3    to the satisfaction or the delivery obligation or thereafter

4    upon order entered by this court.  Okay?

5            So don't I have to enter an order?

6            MR. KINDSETH:  That's the motion.

7            THE COURT:  Right.  But, I mean, don't -- but I

8    think what you were saying before was -- I thought what you

9    were saying is there is no need for a further court order.

10   If you comply with all of the four steps in the prior

11   paragraph, you just give them a certification and they've

12   got 15 days to object and come to the Court?

13           MR. KINDSETH:  The fourth item is an order from

14   this court establishing the repair reserve.  Once those four

15   items, including an order from this court establishing the

16   repair reserve are satisfied, I can serve the certification.

17           I was saying the $37 million does not necessarily

18   need an order to be released.

19           THE COURT:  Okay.

20           MR. KINDSETH:  As long as I get the order from

21   this court establishing a repair reserve.

22           MR. DESPINS:  Your Honor, that's not what this

23   paragraph says.

24           THE COURT:  I'm not sure it does either, but I

25   don't know if we want to fight about that this afternoon.  I

1    mean, I haven't looked back at it for a while.  I haven't.

2    I'd have to read it again.

3           But, again, what I see, and maybe your call can

4    work it out, but this was in a different context.  The

5    context of this stipulation, the entry of this stipulation,

6    was to stop -- and fine, absolutely fine by the way, I'm not

7    saying stop in any negative way, but to stop the relief from

8    stay motion from going forward and being ruled on.  Right?

9           The way -- it was a resolution of the relief from

10   stay motion.  Because what you did was, you said, your

11   client said, in connection with the plan that the debtor had

12   on file and was prosecuting and saying to this court, we're

13   here, we want to -- we want to pay all of our creditors, you

14   know, we want to treat everybody fairly, and here's the

15   asset that we're going to use.

16          At least this one asset, maybe more, but we're

17   going to use this yacht to do that.  Then that's what the

18   stipulation contemplated.  Because that's what the facts

19   were at the time.

20          MR. KINDSETH:  I would say --

21          THE COURT:  The facts have -- the facts have

22   changed.

23          MR. KINDSETH:  Your Honor, I look at this

24   stipulation much more in isolation.  This stipulation

25   resolved getting the boat back to the United States, to

1   Connecticut, so that the parties can then dispute and have

2   their dispute adjudicated with respect to whether the yacht

3   is property of the estate.

4           THE COURT:  But it had already been pledged to be

5   to the plan.  It didn't -- we didn't need to have an

6   argument about whether it was property of the estate at that

7   time because your client --

8           MR. KINDSETH:  Correct.

9           THE COURT:  -- already pledged it in a plan that

10  was signed by Mr. Kwok.

11          MR. KINDSETH:  I know.  And it's subject to court

12  order.

13          And, Your Honor, to respond to the trustee's

14  comment with respect to what paragraph 11 provides, I was

15  actually referring to paragraph 4, which provides that PAX,

16  the committee, and the debtor and the United States Trustee

17  shall have 15 days from the filing of HK USA certification

18  to object, and this is the paragraph that provides that if

19  they don't object, I can provide the certification to the

20  escrow.

21          So the stipulation in its entirety provides, as I

22  represented.  Paragraph 11 just addresses the repair reserve

23  which is the fourth component of the elements that my client

24  has to satisfy to enable it to then, pursuant to paragraph

25  4, to file the certification and receive the $37 million.

1          THE COURT:  Well, paragraph 11 also says that

2     there has to be -- after delivery, there has to be an order

3     entered by this court specifically delineating the time,

4     place and manner by which such service and maintenance shall

5     be performed, including, but not limited to, a separate cash

6     reserve in an amount sufficient to pay the estimated costs

7     of uncompleted service and maintenance tasks identified in

8     the declaration and otherwise to restore, if necessary, the

9     Lady May to good working order.  And that such funds in the

10    repair reserve should not be released until the service and

11    maintenance tasks have been completed.  Okay.  Completed.

12         So you were saying, I think, or I believe I'm

13    accurate in that I heard you, if I didn't hear you properly,

14    you'll correct me, that you believe that the $37 million can

15    be released even if the repairs aren't done?

16         MR. KINDSETH:  Correct.

17         And so let's say for example we establish that the

18    repairs are going to cost $783,000.

19         Again, it's all about insuring that the parties

20    are not prejudiced.  And we negotiated that as long as we

21    reserved enough money for the repairs then the $37 million

22    can be released.  Because the $37 million was really a

23    performance bond to ensure that the Lady May comes back to

24    Connecticut.

25         And so the concept was, well, what if it comes

1   back to Connecticut and needs repairs, both known repairs

2   and unknown repairs?

3          And that's why it says service and maintenance

4   identified in the declaration and otherwise if necessary.

5   And otherwise if necessary in paragraph 11 expressly

6   contemplated something may happen on the trip back.  And

7   that was something insisted upon by the other parties.

8          THE COURT:  Yeah.  I understand that.

9          MR. KINDSETH:  Right.

10          THE COURT:  But I don't -- I'm not sure what that

11   means ultimately.

12          MR. KINDSETH:  So once the $783,000 is put in a

13   reserve for the repairs, and we've proposed that the trustee

14   can hold the $783,000 or such other amount that this court

15   determines, there's no prejudice to the estate in releasing

16   the $37 million because we've performed.  We've got the Lady

17   May here.

18          THE COURT:  I understand that argument.  I do.  I

19   understand your argument.  I get that.

20          What I'm more concerned about is the issue that

21   I've identified today which is you say that this was done,

22   the 37 million was posted just to get the boat back.

23          I don't think that's true that it was just to get

24   the boat back, because the boat was pledged to be an asset

25   of the estate available to creditors.  And there wasn't

1    going to be a dispute over the ownership of the boat.

2                    MR. KINDSETH:  But that was if we went forward

3    with the -- or the debtor went forward with the plan --

4                    THE COURT:  And that's what the state of the

5    affairs were at the time.

6                    MR. KINDSETH:  I know.  But that didn't happen.

7    And there was no -- a proposed plan, Your Honor, is

8    obviously until confirmed, not a commitment, it's proposed.

9    And the -- as I understand --

10                   THE COURT:  I don't agree with that.  But I hear

11   you.  But I don't agree with that.

12                   MR. KINDSETH:  Right.  So --

13                   THE COURT:  And I'll tell you why I don't agree

14   with that.  Just for -- just for this case, I just want to

15   explain it.  Okay?

16                   Because this debtor came in and said, on numerous

17   occasions, and we can go back and go through all the

18   transcripts, that they came here to consolidate their -- the

19   issues of claims against this debtor, this person,

20   consolidate the claims against this person and provide a

21   fair and meaningful distribution to unsecured creditors.

22                   Now he says he doesn't own the boat, yet HK

23   International pledged it to the plan and he signed that.

24                   And you as their counsel came in and said, yeah,

25   and we'll be subject to this court's jurisdiction.  You said

1    that the very first day.  You'll be subject to this court's

2    jurisdiction and that you will act in accordance with what

3    the debtor's plan provides.

4         Well, as we know, the case progressed and the

5    debtor decided to change course, no pun intended, with the

6    boat.

7         So here's the problem with that.  You can't then

8    take this stipulation and say, well, it doesn't matter that

9    things have changed.  We're going to -- all we can do is get

10   our money back.

11        Well, what -- and that was what my question was

12   and you -- I said to you so what happens to the boat?  And

13   you said, well, it stays here.  And I said, well, it may or

14   may not stay here.

15        I've got two people who haven't shown me on the

16   record that they've agreed to be restrained or subject to

17   the jurisdiction of this court.  And you want to get the

18   money.  I understand why you want to get the money out of

19   escrow.  You get the money out of escrow and these people

20   decide, oh, I think we'll just take the boat.

21             MR. KINDSETH:  But, Your Honor, I can't --

22             THE COURT:  And then what do we do?

23             MR. KINDSETH:  I can't get the $37 million out of

24   escrow until I file the certificate of service and the

25   declaration.  And I can -- I'm representing to the Court the

1    captain has signed the declaration.  It has been served.

2    Okay?  And so I can file that certification of service.

3              THE COURT:  I think you should file the

4    certification.

5              MR. KINDSETH:  Okay.  And so it is not possible

6    under the heavily negotiated stipulation for my client to

7    get the $37 million back without having the captain and

8    YACHTZOO served and signing the required declaration.

9              THE COURT:  Okay.  That's fine.  Then just file

10   it.

11             MR. KINDSETH:  We will file it.

12             THE COURT:  I would like to see it.

13             MR. KINDSETH:  But getting back to the plan of

14   reorganization that was proposed, Your Honor, I think it's

15   very important that was an offer.  That was a sincere, good-

16   faith offer that we -- that my client had agreed to

17   contribute the Lady May on behalf of her father's bankruptcy

18   case in the hopes of bringing peace to this entire

19   situation.  Okay?

20             It was an offer.  It was -- it was not confirmed.

21   It was not -- the disclosure statement wasn't approved.  It

22   was an offer.  And it didn't work.

23             And so that's just -- there's no binding

24   consequence on my client.  Right?  My client doesn't lose a

25   $20 million yacht because my client was willing to propose

1   to offer it up as part of a plan --

2         THE COURT:  I didn't --

3         MR. KINDSETH:  -- that was rejected.

4         THE COURT:  I didn't say -- first of all, the plan

5   wasn't rejected.  We never got to that point.

6         MR. KINDSETH:  No.  The negotiations didn't go

7   well.

8         THE COURT:  But that's not the point.  I didn't

9   say that it was binding on your client.  I asked the

10  question so what happens to the boat?  That was my question,

11  wasn't it?

12        MR. KINDSETH:  So very clearly --

13        THE COURT:  And the answer is I don't know, Judge.

14  It may stay.  It may not stay.

15        MR. KINDSETH:  No, it's not that.  It is a hundred

16  percent staying here.  The captain and the yacht management

17  company are holding it.

18        What was contemplated was that this court would

19  move forward with the litigation over whether the yacht is

20  property of the estate.  If the Court determines by final

21  order that the yacht's property of the estate, it will be

22  here.

23        If Your Honor rules that it's not property of the

24  estate, and Your Honor releases it accordingly from this

25  court's jurisdiction, then the yacht will go on its way.

1          But that is exactly what the parties contemplated.

2     It wasn't to get the $37 million and the yacht.

3          THE COURT:  I agree with you on that.

4          MR. KINDSETH:  Right.

5          THE COURT:  I'm not having a disagreement on that

6     issue.

7          MR. KINDSETH:  Right.  So the only question is --

8          THE COURT:  I'm having -- all I'm asking you is --

9     I should stop.  I don't -- I agree with you.  I don't -- I

10    believe and I agree that the stipulation was not that $37

11    million and the yacht --

12         MR. KINDSETH:  So we will lock up the yacht.

13         THE COURT:  -- are being contributed by HK

14    International.  I agree with that.

15         MR. KINDSETH:  Right.

16         THE COURT:  Okay?

17         MR. KINDSETH:  Yeah.  Thank you.

18         THE COURT:  So I agree.

19         MR. KINDSETH:  So I'd like to have a hearing on

20    the repairs or where these issues, rather than at a status

21    conference, can be fully vetted and Your Honor can decide

22    them.

23         THE COURT:  I understand.  And that's why we had a

24    status conference because I want to understand what the

25    parameters of your evidentiary hearing proposal is and

1    you've told me now.

2              MR. KINDSETH:  Thank you.

3              THE COURT:  So I appreciate that.  Okay?

4              So now -- and I've heard from -- I have to see if

5    anyone else wishes to be heard.  And then we'll talk about

6    what we're going to do to schedule the evidentiary hearing

7    on the reserve motion.  Okay?

8              MR. KINDSETH:  Thank you.

9              THE COURT:  Does anyone else wish to be heard

10   before we start scheduling the hearing?

11       (No response)

12             THE COURT:  Okay.  So I need to take a look at the

13   calendar obviously, so you can, Attorney Kindseth, you can

14   have a seat.

15             It may take me minute or two to figure out some

16   dates.  And I heard people talk about dates that don't work

17   for them, so let me see what works for the Court given that

18   -- those parameters.

19       (Pause)

20             THE COURT:  I'm looking at your dates again.

21       (Pause)

22             THE COURT:  So you think you need an entire day?

23   You couldn't start at noon?  I'm just asking.  Because I'm

24   trying to fit in dates here.  But with -- with the dates

25   that you've described and others have described there's --

1      we're going to the beginning of October.

2                MR. KINDSETH:  Because there's going to be three

3      witnesses and argument, I really do believe it's probably

4      going to be a full day.

5                THE COURT:  Okay.  That's fine.

6                MR. KINDSETH:  I mean, we could divide it up

7      between two half days, Your Honor, if that works for your

8      calendar.

9                THE COURT:  Hold on.  Let me just continue to take

10     a look here.

11          (Pause)

12               MR. KINDSETH:  Just to be clear, Your Honor, I

13     believe that PAX's counsel said that they can do the 10th to

14     the 22nd.

15               THE COURT:  I understood.

16               MR. KINDSETH:  Okay.

17               THE COURT:  I understood that.

18               MR. KINDSETH:  Just clarifying.

19               THE COURT:  But there's problems from -- there's

20     already other things scheduled too that we can't do those,

21     some of those dates.  And there aren't full days.  There are

22     different things scheduled.

23          (Pause)

24               MR. BIRNEY:  Your Honor?

25               THE COURT:  Yes.

1          MR. BIRNEY:  I apologize.  Patrick Birney on

2    behalf of PAX.

3          Just so the record is clear, Your Honor, PAX also

4    wished to respond to  --

5          THE COURT:  Oh, yes.  You're going to have a

6    response date.

7          MR. BIRNEY:  Okay.  Thank you.

8          THE COURT:  There's going to be a response date.

9    I'm just going to work backwards just from the hearing date.

10   It's not just PAX.  It's anybody that wants to file a

11   response.

12        (Pause)

13         THE COURT:  The first full day that really works

14   for everyone's schedule is Friday, October 7th.  We can

15   start at 10:00 a.m.  And then parties will have until

16   Friday, September 23rd to file a response.  Also though any

17   party that wishes to call witnesses and exhibits must file

18   the witness and exhibit list on or before September -- 5:00

19   p.m. on September 28th.

20         Attorney Claiborn?

21         MS. CLAIBORN:  Your Honor, if I just may make a

22   comment about the scheduling?

23         The U.S. Trustee may not be available on that

24   October 7th date.  I know that I will be out of the country.

25         At this point in time, the U.S. Trustee did not

1    intend to take an active role in the dispute, but I just

2    want to make you aware that to the extent that that remains

3    the situation, we don't take an active role, there's a

4    possibility that someone may not be here.

5            THE COURT:  Okay.  Thank you.  I appreciate that.

6            All right.  So with regard to the motion for an

7    order to establish the reserve, repair reserve, the

8    evidentiary hearing will be held on October 7 at 10:00 a.m.

9    Objections or responses to the motion must be filed on or

10   before September 23rd.  And any party who intends to call

11   witnesses and exhibits, and introduce exhibits, must file

12   the list of witnesses and exhibits at or before 5:00 p.m. on

13   September 28th.

14           And those exhibits need to be in PDF format.  And,

15   for example, Mr. Kindseth, your exhibits would be -- you

16   could just say HK or HK International, whatever you want to

17   do, with numbers, one.  And then PAX, again, I don't use

18   letters.  I use numbers.  So it would be PAX-1 through

19   whatever.  Chapter 11 Trustee, whatever, you know, numbers.

20   Okay?

21           But they need to be in PDF format and filed on the

22   docket as well.  If there's some reason that any party who

23   is proposing to introduce an exhibit thinks that that

24   exhibit should be filed under seal, then you file your

25   motion for under seal with that exhibit and the Court will

1       review that prior to the hearing.  Okay?

2               So that takes care of the reserve motion hearing

3       for this afternoon.

4               Then we have the motion for stay pending appeal

5       and the motion for an order providing that the privileges

6       pass to the trustee upon appointment, which I think are

7       related quite frankly.

8               Although I know, Attorney Henzy, you may disagree

9       with me on that insofar as you need to know whether you can

10      get a stay pending appeal.  And I understand that.

11              I think that the ultimate issue that you're asking

12      the Court to stay is the issue about the letter and what you

13      have argued is a waiver of whatever privileges Mr. Kwok may

14      have with regard to that letter and the privileges that

15      attach to the action in London against UBS.  Is that

16      correct?

17              MR. HENZY:  Yes.  Yes.  The two are connected

18      because of some of the arguments that are made.  I would

19      argue that they really don't connect and I can tell you why.

20      But --

21              THE COURT:  Go right ahead.

22              MR. HENZY:  They don't connect because the order

23      that you entered that we've appealed assumes that Mr. Kwok

24      continues to own some privilege.

25              The motion that the trustee has filed is a motion

1    for an order, I'll call it delineating what privilege passed

2    to the trustee, and didn't pass to the trustee, but in -- I

3    would argue that that is irrelevant to our appeal because if

4    Your Honor were to hold, which I think you'd -- I would

5    argue anyway you didn't hold in connection with the

6    corporate governance motion, that any and all privilege,

7    whether under U.S. law or under U.K. law, lock, stock and

8    barrel, that Mr. Kwok owned passed to the trustee upon his

9    appointment, then the relief that you granted in the

10   corporate governance order was unnecessary.

11          Because what the corporate governance order -- and

12   I -- in the motion, Your Honor, I think I misstated or badly

13   stated maybe the -- what the concern is.

14          THE COURT:  The motion for stay pending appeal you

15   mean?

16          MR. HENZY:  Yeah.  Yeah.

17          THE COURT:  Okay.  Go ahead.

18          MR. HENZY:  Whether you call it a waiver, I think

19   the better way to put it here is there's a compelled

20   disclosure so this order directs Mr. Kwok to sign a letter

21   that tells his, I believe anyway, former lawyers in the

22   U.K., although I guess that's a little bit unclear, if he

23   doesn't own the claim anymore, which he doesn't, then I

24   don't know how -- I don't know how those lawyers could

25   represent him in that action.

1              And I guess analogous, Your Honor, is when a

2     debtor files and has a personal injury action pending, that

3     action is then owned by the Chapter 7 Trustee.

4              And I know there are some state court decisions

5     that say that it becomes the subject matter jurisdiction

6     problem in the state court because that debtor/plaintiff in

7     that PI action is now no longer the true party interest.

8              So I don't know, but -- because I don't know U.K.

9     law, it's possible that there's a similar principle under

10    U.K. law.

11             But I -- so either the U.K. lawyers are his former

12    lawyers or they're still his lawyers depending on what U.K.

13    law says.  But this directs him to send his lawyers a letter

14    that says you are to communicate with the trustee

15    irrespective of any attorney/client privilege, work product

16    privilege, or other privilege.  So there is a compelled

17    disclosure of privileged information.

18             Again, if the trustee owns all the privilege, this

19    order is -- wasn't necessary.  It's -- the order is just

20    irrelevant because the trustee owns the privilege so Mr.

21    Kwok doesn't need to tell the lawyers anything about talking

22    to the trustee or -- irrespective of any privilege because

23    he owns the privilege.

24             So I think that they connect.  But, again, I think

25    that they connect because the trustee has made the argument

1    that the order you entered is okay because he owns all the

2    privilege.  And, again, I think that's wrong because if

3    that's true then he didn't -- he didn't need this, he didn't

4    need this part of the order.

5          So, again, I think they connect because the

6    trustee makes this argument, but actually I don't -- I

7    really don't think that they do connect.

8          THE COURT:  Okay.  I'm not sure -- I think I

9    follow what you're saying.  I think what you're saying is

10   with regard to your stay pending appeal, meaning that you

11   want this court to stay the appeal of an order already

12   entered which has a provision that requires -- I think

13   you're only appealing the provision that requires the --

14   isn't that -- is that true?

15         MR. HENZY:  We're appealing two provisions, Your

16   Honor.

17         THE COURT:  Okay.

18         MR. HENZY:  But we've asked for a stay pending

19   appeal on only one.

20         THE COURT:  Okay.  On only -- on only the letter

21   issue?

22         MR. HENZY:  That's correct.

23         THE COURT:  I mean, that's what I'm calling it for

24   lack of a better term.

25         MR. HENZY:  That's correct.

1      THE COURT:  The letter/privilege issue.  Okay.

2      MR. HENZY:  So for full -- we did file our

3  designation and statement of issues. And in addition to this

4  issue, this issue being what's in the motion for a stay

5  pending appeal we're --

6      THE COURT:  Yeah.

7      MR. HENZY:  -- we are appealing the I guess I'll

8  call it the grant of corporate governance rights to the

9  trustee.  But, again, we have not sought a stay pending

10  appeal --

11      THE COURT:  Okay.

12      MR. HENZY:  -- on that issue.

13      THE COURT:  All right.  Have you been able to find

14  any -- I didn't see it, but maybe I missed it, have you been

15  able to find any cases that talk -- that stay pending appeal

16  and issues similar to this such as an individual privilege

17  issue as opposed to a corporate privilege issue?

18      MR. HENZY:  Your Honor, I've -- I mean, I've made

19  the argument in the motion.  And courts, you know --

20  certainly a lot of the cases I've cited, you know, show

21  where courts have reversed --

22      THE COURT:  And even in the bankruptcy context?  I

23  guess I should have asked that question.  I don't remember

24  seeing them any -- and I'm not saying they have to be, I'm

25  just asking the question.

1          MR. HENZY:  Well, I don't -- and I guess my answer

2     is I don't think they have to be.

3          THE COURT:  I understand.

4          MR. HENZY:  Yeah.

5          THE COURT:  But I still would like you to answer

6     my question to make sure I didn't miss any.

7          MR. HENZY:  I have not -- I have not cited a

8     specific case where the issue was, you know, a court

9     compelled a party to disclose.  No, Your Honor.

10         THE COURT:  Okay.  I just want to make sure I

11    didn't miss something in your papers, that's why I'm --

12         MR. HENZY:  You didn't.  You didn't.  You did not

13    miss that.

14         THE COURT:  Okay.

15         MR. HENZY:  No, Your Honor.  No.

16         THE COURT:  All right.  So you're asking under the

17    factors that I have to weigh that whether a stay pending

18    appeal should be granted.  And you're saying that it should

19    be granted because you meet all of the factors or just some

20    of the factors?

21         MR. HENZY:  I believe we meet all of the factors,

22    Your Honor.

23         And, again, to be clear, the -- and to the extent

24    that I misstated or was less than clear in the motion, the

25    focus of the motion, focus of the appeal, is on the third

1   and fourth paragraphs of the letter.

2          And generally what they do is they direct Mr. Kwok

3   to sign a letter that would authorize the U.K. lawyers to

4   have full and complete discussions with the trustee

5   regardless of any attorney/client privilege, work product,

6   or other privilege that belongs to him and would authorize

7   the firm to turn over all memoranda, advice and other

8   communications regarding the UBS litigation and any other

9   information regarding the UBS litigation and give full

10   access to the U.K. firm's files, to the parts of the file

11   that he's entitled to anyway.

12          The trustee's position, as I understand it, is

13   that there really is no waiver.  There was -- initially the

14   word waiver was in the letter but that was -- that was

15   changed, but it doesn't -- it doesn't fix the problem,

16   because the debtor is being compelled to authorize

17   disclosure of communications or documents regardless of any

18   attorney/client privilege, work product, or other privilege

19   which belongs to him.

20          Again, the order and the letter assume that there

21   is a privilege that belongs to the debtor.  So I think to

22   say that there's not a compelled disclosure or waiver or

23   whatever phrase you want to use issue, I think is incorrect.

24   There's a compelled disclosure issue whatever the words that

25   are being used.

1           But I don't have a case that involves a stay

2    pending appeal on a waiver issue like this.  But, Your

3    Honor, the general rule is that compelled disclosure of

4    privileged attorney-client communications absent waiver of

5    applicable exception is not permitted.  I mean, it just

6    isn't.

7           By definition, the attorney-client privilege

8    protects the privilege owner from compelled disclosure of

9    privileged information.  And there are -- I cite in my

10   motion there are Supreme Court cases that say that.  There

11   are Second Circuit Court of Appeals cases that say that.

12          The trustee also argues, and I think this was

13   argued at the hearing, that it's because it's just the

14   trustee that sees it it's not a problem.  The idea is that

15   if there's not a wider waiver that there's no issue.  If

16   it's just trustee's eyes on the documents, that's okay.

17          But the -- again, cases I cited in the motion, the

18   *Dow Corning* case, it's a Second Circuit case, the *Chase

19   Manhattan Bank vs. Turner Newall* case, make clear that if an

20   adverse party is provided access to privileged material,

21   then a pertinent aspect of confidentiality is lost.

22          So it's if anybody other than the debtor gets to

23   see the privileged communications that is a compelled

24   disclosure, that is a waiver of the privilege.

25          There is no authority -- and, again, this came up

1    at the hearing and the way that the order is phrased is that

2    this relief is granted under 521(a)(3) and/or 521(a)(4), the

3    idea being that a court can compel a debtor to authorize a

4    disclosure like this because the debtor is a debtor.

5           There's nothing in the bankruptcy code or in case

6    law that provides that an individual debtor automatically

7    waives or must waive or must agree to a compelled disclosure

8    just because they're a debtor.

9           The only case I could find, Your Honor, it's cited

10   in the motion, says to the contrary.  It's *Coyle v. Coyle*.

11   It's a bankruptcy subject of District of Illinois case from

12   2015 that flat out says that a debtor's duty to cooperate

13   with a trustee does not specifically require a debtor to

14   waive a privilege.

15          Your Honor, that point that a debtor is not --

16   can't be compelled under 521(a)(3) to have privileged

17   information disclosed, that has to be the rule I think.

18          If it weren't the rule, then the Supreme Court's

19   decision in *Commodity Futures* Trading Commission vs.

20   Weintraub and all of the cases that Mr. Despins is going to

21   argue on the privilege passing or not passing to a trustee

22   become nonsensical, because you wouldn't -- you wouldn't

23   need to think about whether a privilege is passed because

24   under 521(a)(3) a debtor can just be made to give a waiver

25   or to agree to a compelled disclosure.  That just doesn't --

1        that just does not make any sense.

2                Again, Your Honor, at the hearing on August 4th,

3        it was argued, and Mr. Despins argues again in his objection

4        to the motion for stay, that the trustee has stepped into

5        the shoes of the debtor.

6                And you're going to hear more about that on the

7        motion, the privilege motion, but the order assumes the

8        debtor still owns the privilege.  I'll say it again.  If he

9        does not, then the relief granted by paragraph 3(b) of the

10       order is unnecessary.

11               At the very least, Your Honor, because there is

12       not any broad based exception like a testamentary exception,

13       like a crime fraud exception, merely because the debtor is a

14       debtor, the cases are clear that if the Court is going to

15       order a disclosure, it can only do so after a review of

16       relevant documents.

17               And, again, I cite the Second Circuit cases that

18       find that it is error for a court to order disclosure of

19       information without doing a, if necessary, a document-by-

20       document review.

21               And, Your Honor, I point to the things that you

22       said in the hearing on 2004 motion, that is, that the

23       process is that a subpoena is served or another document

24       request is served and people then have an obligation to

25       produce documents or to seek protection from a court.

1          But it's not appropriate for a court to say I'm

2     going to order production here without people having the

3     ability or the right to challenge with respect to specific

4     documents.

5          And I will -- I said this at the August 4 hearing

6     on this, Your Honor, and I've said it multiple other times

7     to the trustee, what should be happening here is that this

8     should be getting done the right way.

9          We should be working with U.K. counsel to figure

10    out what documents U.K. counsel has, what documents there is

11    no issue with respect to, and my guess is that there are

12    documents that there's no issue with respect to.  Certainly

13    case file documents, documents that have been filed with the

14    Court over there.  And the trustee has just -- has chosen

15    not to do that.

16         There is a -- according to U.K. counsel, the

17    trustee, notwithstanding what the bankruptcy rules and the

18    Bankruptcy Code say, is not yet a party to that action.  The

19    trustee has to take steps to make himself a party.  Right

20    now the trustee is not a party in that action.  The party --

21    the trustee is not represented in that action.

22         I think what has to happen is he needs to take

23    whatever steps that he needs to take to make himself a party

24    to the action and he needs to work with Mr. Kwok's I believe

25    it's former counsel and Mr. Kwok's counsel here to narrow

1    the issues, do the things that you typically do when you're

2    talking about production of privileged information.

3         So, again, Your Honor, the cases are I think clear

4    that you cannot order a blanket waiver, which essentially is

5    what this does, including bankruptcy cases.  And this is a

6    case that we cite in our objection to the privilege motion.

7    It's *In re: Foster*, 188 F.3d. at 1259.

8         It's a Tenth Circuit case from 1999 that just says

9    a court can only resolve privilege disputes with a specific

10   -- are based on a review of specific facts and documents if

11   necessary.

12        THE COURT:  So are you saying that Mr. Kwok should

13   produce all the documents in London from his lawyers to me

14   and I should review them and determine whether or not

15   there's a privilege?

16        MR. HENZY:  No.  Actually, I'm not sure.  Again,

17   it is a little unclear, Your Honor, what --

18        THE COURT:  Well, I understand it's unclear, but

19   you're making an argument there has to be some other way to

20   do it.  Well, then, what other way is there to do it?

21        MR. HENZY:  My argument is that Mr. Despins has to

22   go to the U.K. and he's got to sort it out.

23        THE COURT:  And do what?  Where do you have

24   authority that says that?

25        MR. HENZY:  My authority that says that, Your

1    Honor, is that there are cases, and I cite them in the

2    motion, that make clear that --

3              THE COURT:  In the motion for stay pending appeal?

4              MR. HENZY:  Yes.

5              THE COURT:  Or the objection?

6              MR. HENZY:  In the motion for stay pending appeal.

7              THE COURT:  Okay.  Go ahead.  Okay.

8              MR. HENZY:  And they make clear that it's the law

9    of the predominant or compelling interest that governs

10   privilege issues.

11             And I suppose, Your Honor, that you could -- we

12   could try to put before you what we think the privilege law

13   -- so I think it's the U.K. law that governs privilege

14   issues here.

15             It governs what attorney/client privilege, if any,

16   Mr. Kwok continues to own, what work product privilege is

17   there.  I understand there is a work product privilege

18   there.  It absolutely is U.K. law that governs that.  And

19   the -- again, I think the cases I cite in the motion are

20   very clear on that.

21             I suppose in theory we could try to put before you

22   what the U.K. law on privilege is and ask you to resolve any

23   disputes over specific documents.  I think that that is --

24   not that you couldn't do that, Your Honor, I know that you

25   could, I think that would be very impractical.

1          I think what has to happen here is that Mr.

2     Despins needs to make himself a party to that action in the

3     U.K. and he needs to sort through getting whatever

4     information he needs in the action in the U.K.

5          This order, Your Honor, has set off a I think a

6     unique I'll call it dynamic.  There's a lawsuit pending in

7     the U.K. that's governed by U.K. law.  It's in front of a

8     U.K. court.

9          And someone who today is a stranger, according to

10    U.K. counsel, to that action -- Mr. Despins has not made

11    himself a party -- is going to show up and tell a lawyer

12    involved in that action you have to give me documents that

13    are subject to potentially various privileges.

14          And I'm trying to imagine, Your Honor, you know, a

15    trustee from a U.K. bankruptcy shows up here where a party

16    to an action is involved and says I'm now going to demand

17    that I get to see documents even though that may be

18    inconsistent with U.S. law on privilege and I may not even

19    be a party to the action here.  I don't -- that would be I

20    think unique.  That's a unique and extraordinary dynamic I

21    think.

22          So there are cases, Your Honor, they're cited in

23    the motion, that say it's the U.K. law that would govern the

24    privilege here.  Again, I think you could decide that.  I

25    think it would be better to have it decided by the court

1    where the action is pending.

2            I don't think it's a good idea for you to be

3    deciding privilege issues that might prejudice rights of

4    parties or change rights of parties in a litigation that's

5    pending in the U.K.  Again, not to say you couldn't, but I

6    don't think that that would be an optimal result.

7            Again, there's a UBS action.  It's a legal

8    proceeding in the U.K. pending before a U.K. judge governed

9    by U.K. law and U.K. law governs the privilege issues.

10           Your Honor, so I -- my argument is that on the

11   likelihood of success I think I have a high likelihood of

12   success because this is a compelled disclosure of privileged

13   information.

14           Again, the assumption is that there is privileged

15   information.  If there is no privileged information, then

16   the order is unnecessary.

17           And I think the law is clear that you cannot

18   compel disclosure absent an applicable exception or a waiver

19   and there's been no claim here at all that there's any

20   waiver by Mr. Kwok.

21           On irreparable harm, Your Honor, there are cases,

22   I cite them in the motion, that courts have held -- where

23   courts have held that the forced disclosure of privileged

24   material may bring about irreparable harm.  It may -- it may

25   not, but courts have held that it may bring about

1    irreparable harm.

2            As Your Honor knows, the four factors, it's kind

3    of a sliding scale, if one factor is particularly strong,

4    other factors can be less strong, I think our likelihood of

5    success is very strong based on the clear language of the

6    U.S. Supreme Court and Second Circuit decisions.  But courts

7    have held that a compelled disclosure of privileged

8    information may cause irreparable harm.

9            Here, the Court is compelling the debtor to make,

10   again, a blanket waiver in the sense that there's a

11   compelled disclosure without any consideration of specific

12   documents of any privilege that he continues to own in

13   connection with the UBS action.  And he's, therefore, being

14   deprived of rights to assert privileges.

15           On substantial injury, Your Honor, and, again, I

16   cite in the motion cases that say that where a party is

17   saying I need to investigate and this is going to slow me

18   down if I don't get this privileged information that that

19   constitutes -- that that does not constitute substantial

20   injury.

21           In fact, Your Honor, I think, and I didn't cite

22   this in the motion, but the *Swidler & Berlin vs. United*

23   *States* case, is at 524 U.S. 399, states balancing ex-post

24   the importance of the information against interests

25   introduces substantial uncertainty into the privileges

1   application.  For just that reason, we have rejected use of

2   a balancing test in defining contours of the privilege.

3           And what the Supreme Court did there was reject

4   the Government's argument that it really, really needed the

5   information in question and that, therefore, the Supreme

6   Court should extend the reach of an exception, of the

7   testamentary exception, to the privilege.  That case -- and

8   you'll hear more about these cases I think on the privilege

9   motion.

10          There's a -- there is a bankruptcy case, the *In re*

11  *Ginsburg* case, at 517 B.R. 175, which is cited in our

12  objection to the privilege motion.  I did not cite it in the

13  motion for stay.

14          But it states following the *Swidler & Berlin* case,

15  so the Supreme Court case, while the need for a bankruptcy

16  trustee to marshal assets and properly investigate the

17  affairs of a debtor provide a strong basis for the balancing

18  test, here the Supreme Court has clearly prohibited such a

19  one more exception approach.

20          So I think the cases say that the trustees need to

21  do an investigation, and I cite other cases in the motion,

22  does not militate against a stay where the privilege is at

23  issue.

24          Your Honor, there are I think many cases, and I

25  cite cases in the motion, that say on the fourth factor, the

1    public interest factor, that where the privilege is at issue

2    that protecting the attorney-client privilege does militate

3    in favor of a stay.

4            And, again, there, I cite the cases, but including

5    the *Upjohn* Supreme Court case that emphasizes how critical

6    to our system it is that the stay is protected.

7            And then again, the *Swidler & Berlin* case, which I

8    talked about earlier, it's same thing.  There's a strong

9    public policy in favor of protecting the privilege.

10           One point, and I think I'm reiterating a little

11   bit, Your Honor, but in response to something the trustee

12   put in his objection, there's the argument that by asserting

13   his rights the debtor is creating problems in the U.K.

14   action.

15           And I think we can agree to this is that U.K.

16   counsel has reached out to me and to the trustee asking for

17   our consent or authority, although I don't think the debtor

18   has any authority at this point, to ask for an adjournment

19   on an appeal that is -- has been made in connection with

20   that litigation.

21           And the reason is that things still haven't been

22   sorted out as to exactly who has what status over there.

23   And in particular what -- what the status is going to be

24   with privilege.  So that is -- there's no dispute that that

25   is happening.

1          And now, the U.K. counsel doesn't -- is not making

2     it sound like it's a crisis that an adjournment would get

3     asked for.

4          I think that from her perspective there might be a

5     crisis if she can't get an answer from I would argue in

6     particular the trustee on is an adjournment okay, but I

7     don't think the fact that she's -- an adjournment is being

8     asked for itself is a -- is a crisis.  To argue that that is

9     the debtor's fault, the trustee essentially is manufacturing

10    that argument.

11         What has to happen here, according to U.K.

12    counsel, is the trustee has to go over there and make

13    himself a party to the action.

14         He needs to retain counsel, whether it's the

15    existing law firm, assuming that they want to be retained by

16    him, or is a different law firm and he needs to sort out

17    what is happening in that action over there.

18         He is entitled to be, as I understand it, a party

19    in that action under U.K. law, but there are steps he needs

20    to take and to try to get at information or get at at what's

21    going on there.

22         By the way he's done it through this court is --

23    it really is trying -- I think a big problem here is it's

24    trying to fit a square peg into a round hole.

25         So, Your Honor, with that, unless you have any

1    questions, that's all I have.

2                THE COURT:  The only thing -- you mentioned when

3    you were talking you were appealing the third and fourth

4    paragraphs of the letter, but your motion says that you want

5    to stay only with regard to paragraph 3(b).

6                MR. HENZY:  So, Your Honor, so paragraph 3(b) is

7    of the -- I'm sorry, thank you, Your Honor, for asking that

8    because I want to be clear.

9                So paragraph 3(b) of the order is what we're

10   appealing, but that implicates I guess I'll call it that

11   because it pulls in the third and fourth paragraphs of the

12   letter that's attached to the order.

13               THE COURT:  Okay.  I understand.

14               MR. HENZY:  Okay.

15               THE COURT:  I just wanted to make -- I wasn't sure

16   if that was correct and -- okay.

17               MR. HENZY:  Thank you.  Because I think I probably

18   was not clear.

19               THE COURT:  Okay.

20               MR. HENZY:  Thank you, Your Honor.

21               THE COURT:  Thank you.

22               Mr. Despins?

23               MR. DESPINS:  Thank you, Your Honor.  For the

24   record, Luc Despins, trustee in the case.

25               What was clear from this discussion is that the

1    two issues are closely intertwined and I would urge the

2    Court not to rule on this motion until you also hear and

3    decide the other motion, which my colleague, my partner, Mr.

4    Bassett, will argue on the issue of who has the privilege,

5    who controls the privilege.

6         But just to address this aspect of the issue

7    because it's all related, because it goes to the issue of

8    under U.S. law did the trustee get control of the privilege,

9    that's the argument, that's the issue that Mr. Bassett will

10   argue.

11        But what happened -- and the genesis of the

12   letter, is because counsel in the U.K. said, well, we have

13   our own recent, semi-recent, case in the U.K. called

14   *Avonwick* or *Avonwick* and that's attached to their motion to

15   stay pending appeal.

16        And I understand that generally we try to shy away

17   from interpreting foreign law, although U.S. courts do it

18   all the time, but in this case, it's a pretty

19   straightforward decision written in English.

20        And basically what that says is that -- what

21   happened there is this, the trustee got access to the

22   privilege.  Because under -- before that decision, there was

23   a full waiver in favor of the trustee.  That decision dials

24   that back.  So the trustee had full access.

25        And what he did, it would be the equivalent of

1    myself passing on to Mr. Sarnoff the privileged information

2    so he can sue Mr. Kwok personally.  That's what happened in

3    that case.  And the Court said, no, you can't do that.

4           But there's nothing in that decision that says

5    that the trustee cannot have access -- they refer to sight

6    of -- basically access to all the privileged information and

7    to use it in doing what he has to do, which is to evaluate

8    the claims or other things.

9           There's nothing in the decision about that.  It's

10   all about this waiver that the trustee did to give to the

11   equivalent of PAX in this case.  And of course, there's no

12   discussion of us, not even a suggestion, that we would do

13   this here.

14          I've repeated this before and I'll repeat it

15   again, the sole purpose here is to review the merits of

16   those claims so that I can make a determination as to

17   whether I want to participate in this.

18          And what's happening with U.K. counsel and that

19   kind of -- I hesitate to call it a Kabuki dance with Mr.

20   Henzy, U.K. counsel and all that, it's very clear that

21   they're trying to push me in a certain direction, which is

22   you need to be a party to that action tomorrow.

23          And of course, if I do that, I become liable or

24   the estate becomes liable for fees because it loser pays.

25   And we're talking about hundreds of thousands of pounds.

1    So, you know, $200,000 easily involved here.

2            Well, I'm not going to become a party to the

3    action before I see what's behind the curtain.  And what's

4    behind the curtain is what's the advice?  Is this a slam-

5    dunk claim?  Is this a roll the dice kind of claim?  I need

6    to know that before I do that.

7            And that's why this whole thing is really a

8    problem because the debtor controls the other plaintiff

9    called Ace Decade.  That's controlled by the debtor.

10   Actually in the complaint in the U.K. they say that Mr. Kwok

11   acquired that company.

12           So he would like this litigation to go forward and

13   for the benefit of Ace Decade as well on my watch.  And my

14   point is I may be interested in that, but I need to see

15   what's behind the curtain first.  It would be irresponsible

16   of us to do otherwise.

17           So what's happening here also is that there's no

18   harm to the debtor.  Why?  Because we only want to see

19   documents relating to the merits of the litigation.  That's

20   a claim that he brought against UBS saying they gave me bad

21   advice or they misrepresented things.  I don't know if

22   that's true or not, but the point is I need to be able to

23   see what their counsel said about that.

24           And from their point of view, what's the harm?

25   There's no criminal  --  there's no -- this is not a claim

1   involving him hiding assets.  He says I was badly advised or

2   there were misrepresentations made to me, Mr. Kwok, by UBS.

3   So there's no harm.

4          So when you look at balancing, what Mr. Bassett

5   will talk to you about, the balancing exercise here, you

6   know, this is not like the issue of a rape or forcible

7   confinement that the debtor is accused of.  It has nothing

8   to do with that.  This is a garden variety,

9   misrepresentation claim.

10          And the downside to the debtor, as long as I do

11   not waive the privilege -- and that's why the letter was

12   very specific, I do not authorize you, trustee, to waive the

13   privilege.  It says that in here.  That's why U.K. counsel

14   drafted that language.

15          And that is why -- and also we intend to abide by

16   that.  We do not want to waive the privilege without a

17   further court order.  And there may never be another court

18   order.  So that's very important to understand that.

19          I would urge the Court to look at the *Avonwick*

20   decision.  Again, the consent of the debtor was nowhere

21   required in there to have access to privileged information.

22   The evil in that case was the use by the trustee to help

23   another party, a creditor, sue the debtor for -- based on

24   the privileged information received.  And that's what the

25   Court said you cannot do.

1          There's no blanket waiver.  First of all, there's

2     no waiver and there's no blanket.  What I mean by no

3     blanket.

4          The issue is limited, again, to the merits of that

5     claim.  That's the only issue that I want access to.  And

6     also whether they -- and that goes without saying -- whether

7     they receive any settlements, whether they made any

8     settlements.  That is something I should have right now

9     because that's not privileged information.

10          And if UBS made an offer to settle this, I do not

11     understand under what theory that is being withheld from us

12     because that's not privileged.  I mean, in a sense it's

13     privileged in a sense that that offer, if it was ever made,

14     cannot be used in court.

15          Of course, we all know that, 408, but that's not

16     what we're talking about.  How is that personal to the

17     debtor in any way?  That's an offer made by a third party or

18     vice versa.  If they made an offer of settlement to UBS, I

19     should have full access to that.  And that's what this

20     letter does.  That's very important as well.

21          And so, Your Honor, again, I would urge you from a

22     process point of view to air out the other issues relating

23     to the privilege that Mr. Bassett will address because it's

24     all related at the end of the day.

25          And for these reasons, Your Honor, we think that

1    the stay pending appeal should be denied.

2           The other point on the stay pending appeal is we

3    have not sought to hold the debtor in contempt at this

4    point.

5           So in terms of the harm to the debtor, what is the

6    harm today?  You know, they have a decision they don't like.

7    There's a letter they're not writing.  They're not signing

8    that letter, right?  That's what they said.  That's what Mr.

9    Henzy said several times at the August 4th hearing.

10          So the stay pending appeal is kind of a sideshow

11   until we decide to seek contempt.  At that point, then

12   there's an issue that he doesn't have today.  But today,

13   there's no contempt proceedings pending against the debtor

14   with respect to the failure to sign this letter and send

15   this letter.

16          Thank you, Your Honor.

17          THE COURT:  Thank you.

18          Attorney Goldman?

19          MR. GOLDMAN:   Your Honor, just a few brief

20   points.  We joined in the trustee's objection to the stay

21   pending appeal.

22          On behalf of the committee, Irve Goldman.

23          On the element of irreparable harm, the debtor has

24   identified no communication which the trustee would be

25   receiving by virtue of Your Honor's order that would result

1      in any harm to the debtor, let alone irreparable harm.

2            And for irreparable harm, as we know, the alleged

3      harm can't be remote or speculative.  And that really is

4      what they are trying to satisfy the settlement with, that

5      the general notion that compelled disclosure on attorney-

6      client privilege constitutes irreparable harm.

7            I think they need to be more specific as to what

8      harm actually would befall the debtor if that letter were

9      signed.

10            And on the element of public interest, I don't

11      believe any case Attorney Henzy cited on the importance in

12      terms of the public interest of the attorney/client

13      privilege was in the context of a bankruptcy case where the

14      trustee was looking to get information to determine what to

15      do with a significant asset of the estate, which is what we

16      have here, the cause of action in that context.

17            There is an equally compelling public interest of

18      not interfering with the trustee's expeditious handling and

19      administration of property of the estate.  And that's --

20      that interference would occur if the stay pending appeal

21      were granted.

22            THE COURT:  Thank you.

23            MR. GOLDMAN:  That's all I have.

24            THE COURT:  Thank you.

25            Attorney Henzy?

1        MR. HENZY:  Thank you, Your Honor.

2        On Mr. Despins' first point, again, Your Honor

3    certainly can read the *Avonwick* decision.  I actually

4    attached it to the motion.

5        That decision was provided to Mr. Despins and me

6    by U.K. counsel to point out, to support her statement to

7    Mr. Despins that without a knowing and voluntary waiver or

8    agreement from Mr. Kwok, that under U.K. law, and that's --

9    that is the case that she gave us, she was not going to give

10   him any privileged information.

11       So I can read the *Avonwick* decision.  Mr. Despins

12   can read it.  And you can read it, Your Honor.

13       And back to my point is I'm not sure that the

14   people in this courtroom are the right people to sort out

15   what the law of privilege is in the U.K.

16       My understanding of that decision is, again, there

17   it was a couple of issues.  One, did the trustee step into

18   the shoes of the debtor there for privilege purposes?

19       But, again, U.K. counsel has made clear that

20   without a knowing and voluntary waiver, supported by that

21   decision, she's not -- she's not producing anything.

22       You know, in terms of Mr. Despins' point about the

23   Kabuki dance with U.K. counsel, just so that the Court's

24   clear, the debtor is in a difficult position here because

25   under the Bankruptcy Code and bankruptcy rules he doesn't

1    own that claim anymore.

2            And he's been criticized for lots and lots of

3    things, so he doesn't want to be criticized for purporting

4    to give instruction or advice or anything to the U.K.

5    counsel when he's no longer a party in that -- in that

6    action.

7            So to the extent that anything that I'm

8    communicating that Mr. Despins is seeing that sounds like a

9    Kabuki dance, I'm not trying to be tricky or anything like

10   that.

11           I've said to Mr. Despins we want to cooperate with

12   him as long as it's not involving a waiver of a right of the

13   debtor to -- in any way that he needs so that he can do what

14   he needs to do there.

15           As Your Honor has said, I took the debtor as he

16   came.  The Court took the debtor as he came.  Mr. Despins

17   takes the debtor as he came.

18           He's a plaintiff in an action in the U.K.  And

19   there may be difficulties with that.  There may be

20   inconveniences with that.  There may be risks with that.

21   But that's what it is.  It's an asset of the estate and the

22   trustee has to administer it the best way that he can.

23           We may not -- we may not like it or think it's a

24   good idea, but the U.K. law provides, for example, that

25   loser pays.  But that's what it is.  He's got to -- he's got

1    to deal with that.

2              Again, the answer is the trustee should be working

3    with U.K. counsel and debtor's counsel to see what are the

4    documents that are going to be a problem here, what can be

5    worked through to make this work and the trustee has chosen

6    not to do that.  The trustee has chosen to get this order

7    that really just bulldozes the situation I think

8    unnecessarily.

9              On Mr. Despins' no harm to the debtor point, the

10   Supreme Court just rejected that as a basis for extending or

11   for waiving or creating an exception to the privilege in the

12   *Swidler & Berlin* case.  That is -- that's exactly what was

13   at issue.

14             The Government was saying you should extend the

15   testamentary privilege.  Again, Your Honor, that's *Swidler &*

16   *Berlin vs. United States*, 524 U.S. 399.  I did not cite it

17   in the motion.  It is cited in -- it's cited in our

18   objection to the privilege motion.  Again, that argument was

19   made by the Government.  There's no harm.

20             Your Honor, this is -- I don't want to sound

21   crude, but essentially the argument there was that the

22   person who had the privilege was dead.

23             It was -- it was the Vince Foster situation.  And

24   the Supreme Court -- so how could there be any harm to him

25   by having the privilege waived?  And the Supreme Court

1    rejected that.

2              THE COURT:  But waived how, Attorney Henzy?  As to

3    whom?  A party that could bring an action against him?

4              MR. HENZY:  In that case, Your Honor?

5              THE COURT:  Yes.

6              MR. HENZY:  It was actually --

7              THE COURT:  I haven't read it obviously.

8              MR. HENZY:  Actually, Your Honor, it was a

9    criminal investigation and the government was taking the

10   position -- what had happened was that prior to his passing,

11   Mr. Foster had gone and met with a lawyer and the lawyer had

12   taken three pages of notes.  And Mr. Foster died.  And the

13   Government, in connection with the criminal investigation,

14   wanted the notes from the lawyer to see what it was that --

15             THE COURT:  But who was the criminal investigation

16   going to be brought against?

17             MR. HENZY:  Not against Mr. Foster.

18             THE COURT:  Right.  Right.

19             MR. HENZY:  Right.

20             THE COURT:  So it's not -- it's not the same

21   thing.  I mean, see, I think the issue that I'm having is I

22   understand all -- I at least have an understanding.  I

23   haven't read the case.

24             But I have an understanding of your --

25   understanding of your argument, but your argument is

1    presupposing or relying on cases where the privilege, if

2    waived, would be used against the party to -- for some other

3    party to bring a cause of action against them or somehow

4    incriminate them in a process that would be detrimental to

5    them.

6              What Mr. Despins is seeking to do, at least so

7    far, and I'm going to listen to everyone, is that he -- your

8    client, as you said, we all take your client as we find him,

9    filed this case and said that this action is an asset of his

10   estate.  And you just confirmed that.  You confirmed that

11   it's an asset of this case.

12             MR. HENZY:  Yes.

13             THE COURT:  Mr. Despins was appointed as the

14   Chapter 11 Trustee.

15             You now just said that your client isn't the

16   plaintiff anymore, but maybe is.  And if he's not the

17   plaintiff, then what happens to the cause of action?

18             The only party that can step into your client's

19   shoes is Mr. Despins by order of this court and by your

20   client voluntarily consenting to the jurisdiction of this

21   court.

22             If Mr. Despins -- if what I take Mr. Despins to

23   say is correct, that all he's asking for is to see what the

24   merits or the claim are to determine whether or not the

25   estate is going to continue to prosecute that claim, then I

1    don't know that the cases that you cited are on point with

2    regard to the privilege.

3           Because what you're -- what the cases you're

4    talking about talk about, the one other bankruptcy case that

5    you cited, was about turning over the billing records of a

6    law firm to other parties to see -- to other parties that

7    would be adverse to the debtor and the law firm to see what

8    the law firm and the debtor talked about to -- in

9    determining causes of action.  That's when parties are

10   adverse.  Correct?

11          Mr. Despins, as the Chapter 11 Trustee, isn't

12   adverse to your client in connection with this lawsuit in

13   the United Kingdom.  He is -- he is your client.  He has

14   become your client.

15          So how is it -- how is it that -- that the

16   privilege -- on the one hand you say, yeah, we can't do

17   anything because we're not -- we're not the plaintiff

18   anymore.

19          But Mr. Despins can't do anything either because

20   we're not going to let him do that.  We're going to say we

21   have a privilege and you can't exercise that privilege.

22   That's what you're saying.  And I understand.

23          I don't see that there's any case law that is

24   clear on this issue, unfortunately, from what I've seen so

25   far.  Okay?  From what I've seen so far.  I think it is

1    clear on the corporate side.  It's maybe not clear on the --

2    apparently not clear on the individual side.

3          But the problem that it seems to be at least from

4    my perspective at this point is the cases that you're

5    relying on, which absolutely say what you say they say, are

6    in the context of using that privileged information against

7    the person who has the privilege.

8          Mr. Despins is seeking the information to

9    determine whether, which ultimately should help your client,

10   if this is an asset of the estate that could bring money

11   into the estate to pay creditors.  Because that's what your

12   client said that he wanted to do when he came to this court.

13         So that's where I'm having an issue and I'm

14   struggling with your argument is because ultimately the

15   determination -- you've just said you can't -- your client

16   can't prosecute the case, right?  Okay.

17         So if your client can't prosecute the case, and

18   your client says it's an asset of the estate, and you've

19   told me, you told me last hearing, understandably we were

20   having a conversation about the solvency and the standing of

21   the debtor to raise all these issues, you said, oh, but it's

22   a $500 million claim, Judge.  And I said, well, that's

23   interesting.

24         MR. HENZY:  Well, I don't know it's a -- I don't

25   know anything about it.

1           THE COURT:  Well, you did.  You said it's a $500

2     million claim.

3           MR. HENZY:  There's been -- that's what's been

4     asserted.  Yes.

5           THE COURT:  Right.  That's what you said.

6           MR. HENZY:  Yes.

7           THE COURT:  I mean, that's fine.

8           MR. HENZY:  Yeah.  I don't --

9           THE COURT:  It's a $500 million claim.  And your

10    point was that this might make this debtor solvent.  And I

11    said, well, I'm not sure about that because PAX's claim is

12    240 million.  And if there's two other defendants that you

13    have to split the claim with, I'm not sure your client's

14    solvent.

15          But beyond all that, Mr. Despins has to make --

16    you can't prosecute -- your client can't prosecute the case.

17    But your client says it's an asset of the case.  So we're in

18    a catch 22.  That doesn't work.  It's going to -- that's got

19    to be broken somehow.

20          And how it has to be broken is Mr. Despins has to

21    be able to figure out whether or not the estate for the

22    benefit of the creditors that your client said that he came

23    to this court to address and deal with, whether they should

24    prosecute that action to determine whether there's money

25    that can be brought in this estate.

1       And how can they do that if you are saying -- if

2    your client is saying I'm never going to allow Mr. Despins

3    to look at the documents that the attorneys I hired have.

4            MR. HENZY:  I'm not saying that.

5            THE COURT:  Okay.  Then what are you saying?

6            MR. HENZY:  I'm saying that he -- in fact,

7    probably, I don't know, a month ago or more, I sent an email

8    to the lawyer in the U.K. saying Mr. Kwok doesn't own this

9    anymore.  You should -- you need to talk to Mr. Despins.

10           And I'm not saying, Mr. Kwok is not saying --

11           THE COURT:  So then -- but you're saying -- you're

12   appealing an order that would -- that would require your

13   client to sign a letter that says I'm not waiving my

14   privilege, but let Mr. Despins talk to you about the case.

15   That's what you're appealing.

16           MR. HENZY:  Sure.  But what it -- but that -- but

17   that's not what the letter says.

18           THE COURT:  That's a disagreement as to what your

19   interpretation of the letter is.  That's not a legal issue.

20           MR. HENZY:  Well --

21           THE COURT:  You're making a legal argument on a

22   factual issue.  You're saying -- and that's fine.  I won't

23   --

24           MR. HENZY:  Can I read the -- can I read it, Your

25   Honor?

1              THE COURT:  Sure.

2              MR. HENZY:  Okay.

3              THE COURT:  We can pull it up and everybody can

4      read it.  And remember there's some issue about what version

5      is actually sent, so I've got to know which version are you

6      looking at?

7              MR. HENZY:  I'm looking at the --

8              THE COURT:  Are you looking at the one that's

9      attached to the order?

10             MR. HENZY:  I'm looking at the version that's

11     attached to the order.

12             THE COURT:  Okay.

13             MR. HENZY:  Okay.

14             THE COURT:  What's the order's ECF number?

15             MR. HENZY:  It's 717.

16             THE COURT:  717.  Can we pull up 717 please so we

17     can all look at it at the same time.  It will take a minute.

18     But I think it's helpful.  I want to make sure I'm

19     understanding everything everyone is saying in regard to

20     these arguments.

21         (Pause)

22             THE COURT:  Is it a -- what page number is it,

23     Attorney Henzy?

24             MR. HENZY:  So it's 717, and it's the exhibit, so

25     it's page 23 of 24.

1      THE COURT:  23 of 24.  Okay.  So this is the --

2      all right.  So can we scroll down a little bit.

3           So it's starting with in furtherance, right,

4      Attorney Henzy?  Is that the --

5           MR. HENZY:  Yes.

6           THE COURT:  Okay.

7           MR. HENZY:  Yes, Your Honor.

8           THE COURT:  So that paragraph, we're going to look

9      at that.

10          MR. HENZY:  Yes.

11          THE COURT:  So tell me what -- where it says that

12     he's waiving the privilege in that paragraph.

13          MR. HENZY:  Okay.  So it says I expressly

14     authorize you to have full and complete discussions on my

15     behalf with Mr. Despins regarding the UBS litigation -- may

16     use a couple of tweaks, I'd actually be okay with that --

17     the merits thereof, any related settlement discussions on

18     any other topics related to the prosecution of the UBS

19     litigation and to take instructions from him.

20          Actually, I'm not sure that that is -- I don't

21     think that is okay because I'm not sure that at this point

22     Mr. Kwok can tell the lawyer what to do.  And I'm also not

23     sure that that lawyer has to take instruction from Mr.

24     Despins.  The lawyer could say I don't want to represent Mr.

25     Despins.  And then he doesn't have to take -- doesn't have

1   to take any instruction at all -- in relation to my claim in

2   the UBS litigation.

3           Because, again, to be clear, Your Honor, that --

4   Mr. Despins hasn't hired that lawyer so I don't know how Mr.

5   Despins can give that lawyer instruction.

6           But in the UBS litigation --

7           THE COURT:  He isn't giving him instruction.

8           MR. HENZY:  Well, but this lawyer --

9           THE COURT:  No.  No.  The letter says I hereby

10  authorize you, meaning the U.K. lawyers, to have full and

11  complete discussions and to take instructions from him.

12  It's directed to the U.K. lawyers.  It's not --

13          MR. HENZY:  Yeah.

14          THE COURT:  Yeah.

15          MR. HENZY:  Yeah.

16          THE COURT:  But that's not --

17          MR. HENZY:  So, don't -- but again, look it, this

18  isn't -- I'm not appealing this okay, because if I'm --

19          THE COURT:  Okay.  Well, I'm asking you where does

20  it say he's waiving --

21          MR. HENZY:  Yeah.  Okay.  Okay.

22          THE COURT:  You just said it's a complete waiver.

23          MR. HENZY:  And then it's -- it's regardless of

24  any attorney/client privilege, work product or other

25  privilege which belongs to me.

1            THE COURT:  Right.

2            MR. HENZY:  So I'm instructing you to tell him

3    everything regardless of any --

4            THE COURT:  No.  I'm not instructing you.  You're

5    authorized to do this.

6            MR. HENZY:  So I'm --

7            THE COURT:  You're authorizing.

8            MR. HENZY:  Okay.  So I'm authorizing --

9            THE COURT:  You're authorizing.  Your client's the

10   only one with the contractual relationship with the lawyers

11   right now, correct?

12           MR. HENZY:  Well, I'm not sure.  Again, I'm not

13   sure there is a contractual relationship anymore, but.

14           THE COURT:  Well, why wouldn't there be?  He had

15   to hire them, right?  So where's the retention letter?

16           MR. HENZY:  He's not a party to the action

17   anymore.  But, again, that --

18           THE COURT:  But that's not my question.

19           MR. HENZY:  Okay.

20           THE COURT:  Where's the retention letter?  You're

21   telling me he didn't have an agreement with these lawyers --

22           MR. HENZY:  I'm sure he --

23           THE COURT:  -- to represent him?

24           THE COURT:  I'm sure he did, Your Honor.

25           THE COURT:  Okay.  So where's the retention

1     letter?

2               MR. HENZY:  I don't know, Your Honor, where the

3     retention letter is.

4               THE COURT:  Well, but, you may have to find that.

5               MR. HENZY:  I don't think I do.  I don't think --

6     I don't think --

7               THE COURT:  Why?

8               MR. HENZY:  I don't think that that is the point,

9     Your Honor.  This -- and you -- I understand you disagree

10    with this, I think, okay, that that last clause, regardless

11    of any attorney-client privilege, work product or other

12    privilege which belongs to me, okay, that is the problem.

13              Okay.  This is -- this is -- you know, you're

14    practicing law and a third party -- and you get a letter

15    from your client that says I authorize you to speak to a

16    third party --

17              THE COURT:  He's not a third party.

18              MR. HENZY:  He is -- well --

19              THE COURT:  He's not a third party.

20              MR. HENZY:  Well, to the lawyer in the U.K. he's a

21    third party.

22              THE COURT:  Well, the lawyer in the U.K. will

23    understand that he's not.  He's not a third party.

24              MR. HENZY:  I don't know --

25              THE COURT:  He's your client now.

1          MR. HENZY:  No.

2          THE COURT:  He is your client.

3          MR. HENZY:  No.

4          THE COURT:  Yeah, he is.

5          MR. HENZY:  No.  He's --

6          THE COURT:  He is.

7          MR. HENZY:  He's not a party to that action and

8    he's not represented by the U.K. lawyer.  Those two things

9    -- I don't think Mr. Despins would say that those two things

10   are.  I don't think anyway.  I don't think he would say --

11   he just told you he's not a party to the action and he

12   doesn't want to be a party to the action until --  because

13   he's concerned about loser pays.  So he -- I think he agrees

14   he's not a party to that action.

15         THE COURT:  I didn't say he was a party to his

16   action.  I said he's your client.  You just said your

17   client's not a party to the action anymore.

18         MR. HENZY:  No.  Mr. Kwok is my client.

19         THE COURT:  Yeah.

20         MR. HENZY:  Yeah.

21         THE COURT:  And he's not a party to the action

22   anymore.  That's what you just said.

23         MR. HENZY:  I think --

24         THE COURT:  So Mr. Despins isn't a party either.

25   He's just your client.

1              MR. HENZY:  Mr. Despins --

2              THE COURT:  He's not a party to the action

3      anymore.

4              MR. HENZY:  Mr. Despins is not my client.

5              THE COURT:  No.  You said in our argument that

6      your client isn't a party to the action anymore.  You sent

7      an email to the U.K. lawyers saying I don't own this

8      anymore.

9              MR. HENZY:  Yeah.

10             THE COURT:  I'm not a party to the action anymore.

11             MR. HENZY:  Right.

12             THE COURT:  Right?

13             MR. HENZY:  Right.

14             THE COURT:  And I said, okay, that's fine.  But

15     Mr. Despins is your client.  He doesn't have to be a party

16     to the action right now.  He has -- but he has the right to

17     find out this information.  Because otherwise you say you're

18     not trying to insert roadblocks, but that's exactly what

19     you're doing.

20             MR. HENZY:  No.  He --

21             THE COURT:  You're stopping the trustee from

22     finding out about the merits of a claim of a cause of action

23     that your client listed as an asset of this estate.

24             MR. HENZY:  Well, he -- we're really not.

25             THE COURT:  Okay.

1          MR. HENZY:  I think there's a lot he can find out

2     probably about the action without --

3          THE COURT:  From whom?

4          MR. HENZY:  -- without -- from this U.K. lawyer,

5     but without violating Mr. Kwok's privilege rights under U.K.

6     law.  There's pleadings that have been filed in the case.

7          I've never said, Mr. Kwok has never said you can't

8     talk to this U.K. lawyer.  I don't know if the U.K. lawyer,

9     you know, what's she's going to be willing to say and not

10    say.  I assume to the extent that something's not

11    privileged, it's public, it's not confidential, that she

12    would have no problem at all talking about it.  I mean,

13    people do that all the time.  Lawyers do that all the time.

14         And the only issue here is that to the extent that

15    Mr. Kwok continues to have a privilege, okay, this order

16    constitutes a compelled disclosure.

17         And I understand you may disagree with the way I'm

18    reading that phrase regardless of any attorney/client

19    privilege, work product or other privilege which belongs to

20    me, but that's -- if that's not -- if that doesn't mean

21    compelled disclosure, then we should just be able to strike

22    it from the letter.

23         THE COURT:  Well, how can it be compelled

24    disclosure when your client has determined under penalty of

25    perjury that he signed on his schedules and statements that

1    this claim is a cause of action of -- is an asset of his

2    estate, but yet he won't provide the trustee, who's now

3    become him for purposes of the estate, with the information

4    for the trustee to determine whether or not this is a viable

5    claim that the trustee should -- can prosecute on behalf of

6    the estate?

7         MR. HENZY:  Your Honor, that's why we're

8    appealing.

9         I understand your view that a debtor -- again, not

10   does the privilege pass to the trustee, it's a privilege

11   owned by the debtor.  Does the -- can the debtor be

12   compelled to make disclosure because the debtor is a debtor?

13        THE COURT:  Well, so, if you're right then, if

14   you're right, then in every single case when there's a

15   debtor and there's a trustee and a debtor lists an asset of

16   the estate and that asset involves the representation of

17   counsel or an accountant or something to which a privilege

18   could attach, then the trustee could never have that

19   information?

20        MR. HENZY:  To the extent it's privileged?  That's

21   right.  That is -- that is my position.

22        THE COURT:  Where does the case law say that?

23        MR. HENZY:  Your Honor, I've cited --

24        THE COURT:  You've got one bankruptcy case and

25   it's about billing records that would show the work product

1    and the strategies, for lack of a better term, of that law

2    firm in representing that debtor that was going to be used

3    by a third party against that debtor.

4           MR. HENZY:  Sure.

5           THE COURT:  Where's this fact pattern?

6           MR. HENZY:  So, Your Honor, the case law is clear

7    that a disclosure may not be compelled outside of a very

8    short list of recognized exceptions.  Okay.  So the crime

9    fraud testamentary exception.  Okay.  You're creating, this

10   court would be creating an exception to that rule.

11          THE COURT:  I think the Bankruptcy Code --

12          MR. HENZY:  So you're --

13          THE COURT:  Your client -- your client has said

14   that this is an asset of the estate.  So you're saying

15   you're never -- your client's never going to have to give to

16   Attorney -- to Trustee Despins the discussions that your

17   client had with the lawyers in London, and essentially what

18   Mr. Despins would have to do is start a whole new cause of

19   action and figure out whether or not it's viable?

20          MR. HENZY:  That is not what I'm saying at all.

21          THE COURT:  Then what are you saying?

22          MR. HENZY:  What I'm saying --

23          THE COURT:  You're not going to give him the

24   information.

25          MR. HENZY:  What I'm saying is there's -- this

1     order assumes there's privileged information.

2            You say to me show me the case that says that I'm

3     right, okay, that there is no -- I'm going to say bankruptcy

4     exception to the general rule that courts cannot compel

5     disclosure.

6            Okay.  I guess I think under Supreme Court

7     precedent, under the *Swindler & Berlin*, case, I think it's

8     the other way around, Your Honor.  Unless there's a

9     recognized exception, the general rule applies.

10           And there is not a case that says that a debtor

11    loses privilege because they are a debtor, I'm sorry, an

12    individual debtor.

13           Now, again, there are -- there's cases that talk

14    about, and this is going to be the subject of the privilege

15    motion, whether a debtor, I'm sorry, a trustee steps into

16    the shoes of a debtor.  Again, that's not what this order

17    assumes.  This order assumes that the debtor continues to

18    own a privilege.  Because otherwise, like I said, the order

19    is -- it's not necessary.

20           I understand that Your Honor disagrees with that,

21    but --

22           THE COURT:  I don't know if I disagree.  I just

23    don't -- I mean, what's the solution?

24           You're saying that a debtor can come in to a

25    bankruptcy case, have an individual debtor, have a cause of

1   action that he asserts is an asset of the estate, then a

2   trustee gets appointed, and he doesn't have to let the

3   trustee know what's going on with that action because he has

4   a privilege with that lawyer?  That's what you're -- that's

5   what you're -- ultimately if you distill it to its essence,

6   that's what your argument is.

7            MR. HENZY:  It is -- that is not --

8            THE COURT:  And do you really think that's --

9            MR. HENZY:  That is not my argument.

10           THE COURT:  Then what is your argument?

11           MR. HENZY:  So in any -- in any situation, in any

12   lawsuit, any situation a debtor files --

13           THE COURT:  It doesn't have to be a lawsuit.

14           MR. HENZY:  Well, but --

15           THE COURT:  It can be -- it can be a consultation.

16           MR. HENZY:  Okay.  You're going to -- there's

17   always going to be --

18           THE COURT:  A privilege.  Right?

19           MR. HENZY:  -- different -- well, there's going to

20   be different categories of documents.  There may be things

21   that aren't privileged that -- so that's fine.  And this is

22   going to be an argument.  It may be that that the trustee

23   succeeds to the privilege in certain circumstances.  Okay.

24   And there's -- again, that's going to be the subject of the

25   privilege motion.

1        But if there's a slice of documents that, in fact,

2    the debtor has retained the privilege, there's no case that

3    says that merely by being a debtor you lose that privilege.

4        And, again, Your Honor, do I have cases that say

5    that?  I don't.

6        THE COURT:  I'm not saying merely by being a

7    debtor.  I'm saying by being a debtor who now has a trustee

8    standing in his shoes.

9        MR. HENZY:  Well, but, that, again, you're -- I

10   think you're conflating the two issues.

11       THE COURT:  I don't think I am conflating the two

12   issues.

13       MR. HENZY:  Is does the trustee step into the

14   debtor's shoes?

15       THE COURT:  Because otherwise the debtor can

16   obstruct the whole administration of the estate.

17       MR. HENZY:  I don't think that -- I don't think

18   that's what I'm saying and I don't think that's true.

19       Are you -- well --

20       THE COURT:  Then what's the problem with him

21   turning over the information?  What's the problem with Mr.

22   Kwok giving the trustee the information that he has from the

23   United -- from the United Kingdom lawyers that he must have

24   written, have some kind of written agreement, retainer

25   agreement with?  Which, you know, by the way is a contract

1    which can be assumed.

2              I mean, there's all kinds of things we can talk

3    about, right?  Then what's the problem?  What is the

4    problem?  Why is Mr. Kwok not cooperating and providing that

5    information to the trustee?

6              MR. HENZY:  So you know what a big part of the

7    problem is, Your Honor, it's the way the trustee decided to

8    do this.  Okay?  He --

9              THE COURT:  But that doesn't answer the question.

10             MR. HENZY:  It does answer the question.  Because

11   how can -- how can any -- does anyone -- does anyone waive

12   privilege when they don't even know what it is that they're

13   -- that is being waived?  Or can anyone?

14             Again, I'm going to agree these documents are

15   going to get disclosed or produced when I don't even know --

16   I don't know what the documents that are going to get

17   produced are?  I don't know.

18             I haven't had time to consult with a lawyer in the

19   U.K. about privilege.  I haven't had time to do anything

20   because this wasn't even the subject of a motion, Your

21   Honor.  It wasn't.  This was a --

22             THE COURT:  It was --

23             MR. HENZY:  This was --

24             THE COURT:  We're not going to -- you didn't

25   appeal that part of it.  Move on from that.

1          MR. HENZY:  Well, but you're --

2          THE COURT:  Listen, we need to figure out what

3     we're going to do.  I don't think we're going to spend the

4     next three months going in circles.  Okay?  And if you're --

5     and if -- and if I get overturned on appeal because I said

6     that, okay, fine, then we'll just move on.

7          But there -- your client has an issue.  You're

8     raising all these issues.  And whether or not it's

9     intentional, it's obstructing the administration of this

10    estate.

11         The Chapter 11 Trustee motion was pending since

12    the first I think three weeks of the case, whether it was

13    from the United States Trustee or PAX, whatever it was.  It

14    was -- it's been pending for a -- this isn't anything new.

15         And then we go through the hearing and we --

16    everybody presents their arguments and the Court rules and

17    makes a ruling that a Chapter 11 Trustee should be

18    appointed.

19         And since that time, all the arguments that you

20    have made has been to stop the trustee from trying to do

21    what the trustee is going to do.

22         If you don't like what the trustee does, then you

23    can sue him.  You can do that.  There's a remedy.  You have

24    a remedy.  You can sue him.

25         But you are now obstructing the administration of

1      this estate that all the other creditors have been waiting

2      to have administered.

3              And that your client said, when you weren't here,

4      but when your client said, he came to this court to have a

5      fair distribution to unsecured creditors, to the creditors

6      that he needs to deal with.

7              Yet he won't even allow the Chapter 11 Trustee to

8      have communications with a lawyer in the United Kingdom on

9      an action he brought and that he asserts is an asset of the

10     estate.

11             MR. HENZY:  That --

12             THE COURT:  There's something wrong with that.

13             MR. HENZY:  That's not a correct statement,

14     factual statement, Your Honor.

15             THE COURT:  Okay.  Then why isn't he just --

16             MR. HENZY:  Okay.

17             THE COURT:  Why are we having this argument?

18             MR. HENZY:  But --

19             THE COURT:  Just give him the information.

20             MR. HENZY:  Okay.  But you have said several times

21     that he's somehow obstructing Mr. Despins from talking to

22     the lawyer in the U.K. and that simply is not true.  Mr.

23     Despins is talking to the lawyer in the U.K.

24             THE COURT:  No, I didn't say that.  I said provide

25     the information with regard to the claims.  And you're

1    saying he's not going to do that because it's privileged.

2    That's what you're saying.

3              MR. HENZY:  That's right.  There's nothing that

4    says that because I filed bankruptcy I give up privileges

5    that I have.

6              THE COURT:  How would it harm him to waive the

7    privilege with, if there is one, with regard to these

8    documents?  What would be the harm, Mr. Henzy?

9              MR. HENZY:  You know what, Your Honor?  *Swindler &*

10   *Berlin vs. United States* says that that is not the test.

11             THE COURT:  I don't care if it's the test.  I'm

12   asking you a practical question.  What's the harm here?

13             MR. HENZY:  So --

14             THE COURT:  It would help him.  It would bring

15   money into this estate, right?  And it would pay creditors.

16   How could there be harm?

17             MR. HENZY:  I understand, Your Honor, that you and

18   the other parties might like Mr. Kwok to agree to a

19   compelled disclosure and to waive his privilege --

20             THE COURT:  I'm not -- I don't -- I don't like or

21   dislike anything.

22             MR. HENZY:  -- but he's --

23             THE COURT:  I'm trying to not waste more time that

24   takes away from the administration of this Chapter 11 case.

25             MR. HENZY:  He's not going to do it.

1           THE COURT:  I know he's not.

2           MR. HENZY:  Okay.  And he doesn't have to.

3           THE COURT:  But you haven't given me any reason

4      why other than he's not going to do it.

5           MR. HENZY:  So --

6           THE COURT:  So there must -- there must be

7      something he's concerned about --

8           MR. HENZY:  He doesn't --

9           THE COURT:  -- being disclosed then.

10          MR. HENZY:  No.  That's unfair.

11          THE COURT:  Then why is he doing -- then what's

12     the problem?

13          MR. HENZY:  That's an unfair I think, Your Honor,

14     way to approach privilege ever because -- so that's anybody

15     who doesn't waive their privilege, they're the problem.  So

16     I have a right to not have my attorney tell you something.

17     And if I don't waive that right --

18          THE COURT:  I'm not --

19          MR. HENZY:  -- I'm the problem?

20          THE COURT:  But the problem with your fact pattern

21     is I'm not you, but Mr. Despins is.

22          MR. HENZY:  No, he's -- no, he's not.  I don't

23     think that's right.

24          THE COURT:  Okay.  All right.

25          MR. HENZY:  Okay.

1           THE COURT:  Well, we'll agree to disagree then.

2           MR. HENZY:  Okay.  I understand.  And thank you,

3     Your Honor.  I think Pat was -- thank you.

4           THE COURT:  Okay.  Thank you.

5           MR. HENZY:  On the -- Mr. Despins' point that they

6     have not sought to hold the debtor in contempt, if -- that's

7     right, they haven't sought to hold the debtor in contempt.

8     They certainly could do that at any time.

9           But they could also take this letter and go to the

10    U.K. and try to do things there.  And I don't think they

11    should be able to do that.

12          So the -- if the trustee is going to stipulate

13    that while the appeal is pending he's not going to take

14    action based on paragraph 3(b) of the order, then that's

15    fine.

16          I would agree then that the debtor is not

17    experiencing any harm.  If the trustee is not going to do

18    anything with this paragraph 3(b), then I don't know how I

19    could argue that there would be irreparable harm.

20          In response to Mr. Goldman's point that we've

21    identified no threat, again, I cited -- I cite cases in the

22    motion that say that that -- a compelled disclosure in and

23    of itself constitutes harm.  So I -- we do -- I do cite

24    cases that say that.

25          That's all I have, Your Honor.

1          THE COURT:  Okay.  Thank you.

2          MR. DESPINS:  Just very briefly, Your Honor.

3          Mr. Henzy stopped in the middle of the paragraph.

4     Next sentence.  Any waiver of privilege is limited to the

5     provision of this information to the trustee.

6          Okay.  My consent is limited to giving access to

7     the trustee to the extent I'm entitled and contains no wider

8     waiver of privilege and is not consent by me to the trustee

9     to waive any privilege.

10          Your Honor, I don't know how clearer it could be

11     that there's no waiver of the privilege here.  There's just

12     it's a U.K. rule.  There's access.  The trustee has access

13     to the information, but the trustee cannot waive it.

14          And, in fact, another case they cited, the *Lord*

15     case that's attached to their pleading, I would direct you

16     to paragraph 260 of that opinion, a U.K. opinion --

17          THE COURT:  Okay.  Hold on a second.  Let me -- of

18     which case are you talking about?

19          MR. DESPINS:  The *Lord* case.  David Lord.  No.

20     That's, sorry, that's the -- I can't pronounce that -- ECF

21     761-3.

22          THE COURT:  Okay.  Hold on a second.  I'll catch

23     up with you.

24          MR. DESPINS:  Yeah, 761-3.

25          (Pause)

1          THE COURT:  The Michael Thomas Leeds and Kevin

2     John Hilliard, is that what you're talking about?  Is that

3     three?  I can't -- yes, I think it is.

4          Attorney Henzy, do you know, is that right?

5          MR. DESPINS:  So if you go to page 35 of -- yeah,

6     I'm sorry, it is *Leeds*, yes, correct, Your Honor.

7          THE COURT:  Okay.

8          MR. DESPINS:  If you go to page 35 of 41,

9     subparagraph 260 --

10          THE COURT:  260, okay.

11          MR. DESPINS:  -- the second sentence.  "There can

12     be no dispute that the trustees are entitled to see the

13     privileged information and to use it for the purpose of

14     carrying out their statutory functions, provided, as the

15     Court of Appeals has held in *Avonwick*, that they do not

16     waive legal professional privilege without the bankrupt's

17     consent."

18          That's exactly what this letter does.  It does not

19     -- it doesn't allow to waive it.  It just gives us access to

20     it.

21          But I believe, Your Honor, again, that you should

22     not rule on this motion until the motion regarding privilege

23     is heard because it's all intertwined.  Thank you.

24          THE COURT:  Okay.  Thank you.

25          Anything further, Mr. Henzy, on the motion for

1    stay pending appeal?

2              MR. HENZY:  No, Your Honor.

3              THE COURT:  Okay.  Thank you.

4              Anyone else wish to be heard any further on the

5    motion for stay pending appeal?

6        (No response)

7              THE COURT:  Okay.  All right.  So let's turn to

8    the privileges motion, please.  Go right ahead, Counsel.

9              MR. BASSETT:  Thank you, Your Honor.  Good

10   afternoon.  Nick Bassett, from Paul Hastings, on behalf of

11   the Chapter 11 Trustee.

12             Your Honor, the motion that we filed at docket

13   number 777 concerning the issue of the privileges that we've

14   been discussing is both very important to the trustee and

15   also I want to point out is a motion that seeks relief that

16   is limited in nature.

17             The motion is very important to the trustee both

18   in its substance and its timing because we are at the

19   beginning stages of an investigation of a debtor who as the

20   Court knows has professed to have $3,000 to his name, but

21   there is an extensive record from the New York State Court

22   litigation, from public statements, from the debtor's own

23   statements, about assets that he has, about entities he has

24   interests in, about things he has done to set up LLC's and

25   other mechanisms to as we believe keep his assets away from

1    the reach of his creditors.

2              And, of course, to the extent the debtor has done

3    those things, he could not have done that alone.  He would

4    have had to have had conversations with legal counsel and

5    advisors.  He would have had to have used that type of

6    advice in order to do these types of things and construct

7    this web of entities that has been referred to.

8              So it is critically important when we conduct a

9    2004 investigation that we are able to seek discovery from

10   these parties and to do so in a way that allows the trustee

11   to have control over the debtor's privileges in accordance

12   with the existing case law which I will get into.

13             The other point that I wanted to make at the

14   outset, as I said, is that the relief we are seeking is

15   limited.

16             Specifically based on all the case law we are

17   relying upon, we're asking this court to issue an order that

18   the trustee now controls all privileges previously belonging

19   to the debtor that relate to three topics.

20             One, to potential assets of the estate.  Two,

21   otherwise related to the debtor's financial condition.  Or,

22   three, that relate to the administration of his estate

23   during the post-petition period.

24             That's all the relief we're seeking.  And I

25   believe, as we'll discuss, it's perfectly consistent with

1    the overwhelming weight of the case law on this issue.

2           Unfortunately, as has been a common practice of

3    this debtor, whether it's in the other motion we were just

4    discussing, relying upon a different version of an order and

5    making arguments, there's another effort to, I don't know if

6    it's purposeful or not, but to mischaracterize and

7    misconstrue the relief that we're seeking and to make

8    arguments on that basis.

9           So the debtor begins in his objection by

10   contending that what the trustee is seeking is a, quote,

11   "blanket waiver" of all privileges ever held by the debtor

12   regardless of subject matter.

13          He also contends, as I read the objection, that

14   the trustee is seeking control over all privileges held by

15   third parties who are the subject of our discovery requests,

16   including his relatives and other parties with whom he has

17   relationships.  Neither of these things is true, Your Honor.

18          The motion, as I said, is limited.  It's not

19   seeking a waiver of anything at all.  So this idea of waiver

20   that we keep hearing about is simply a made up construct

21   that is not relevant to and not being sought in this motion.

22          This motion is about the passage of control of

23   privileges to the trustee.  And as I said, we are not

24   seeking an order saying that control of all privileges on

25   every subject matter passes to the trustee.  We specifically

1    are limiting that.

2            If you look at the request for release section of

3    our motion, which we cited again in our reply, we're looking

4    specifically for assets of the estate, his financial

5    condition and matters relating to administration.

6            The debtor identifies his concerns about

7    potentially privileged documents related to criminal issues

8    such as allegations of rape and false imprisonment and other

9    things that have been made against him as well as his asylum

10   application.  We are not, in our investigation at this time,

11   seeking any documents related to those issues.

12           Again, we're focused on assets and an

13   investigation that hopefully be used to augment this estate.

14           Second, Your Honor, we're not asking for a waiver

15   or any control over privileges that belong to other parties.

16   And, in fact, I don't know how one could even read our

17   motion to be requesting that relief.

18           We are, to be clear, seeking a determination that

19   the trustee has succeeded to any privileges that the debtor

20   holds with other parties in terms of a common interest or a

21   joint defense privilege.  And we cite case law for that in

22   our motion.  And I don't think that's contested, frankly.

23           But what we're not seeking, what the debtor seems

24   to suggest we are seeking, but we're not, is an order from

25   the Court that the trustee now controls any privilege that

1    may legitimately be owned exclusively by some third party

2    who's the target of our discovery.

3          For example, we served discovery on Mr. Kwok's

4    immediately family.  You know, to the extent that his wife

5    has a privilege that she legitimately owns and controls in

6    her own right, that's not subject to our motion and all

7    rights are reserved as to any privileges she may assert.

8          We may take issue with those privileges down the

9    line, but that's not something we're trying to address

10   today.

11         The final sort of procedural argument that the

12   debtor makes, Your Honor, and you heard frankly quite a bit

13   about this during the discussion of the last motion, is that

14   it is inappropriate for the Court to issue the ruling that

15   we've requested under the circumstances and in the manner

16   that we've requested it.

17         Specifically, what I hear the debtor to be saying

18   is that the only way the Court can rule on these privilege

19   issues is to actually review on a document by document basis

20   every document that any discovery recipient is purporting to

21   hold on the basis of privilege.  That's not what the law

22   requires.

23         But before getting into what the law requires, I

24   think it's important to point out that the debtor, through

25   an affidavit submitted by his counsel on August 11th, in

1    connection with our Rule 2004 motion took the exact opposite

2    position.

3           He said in paragraph 18 of his affidavit that it

4    would be impossible to conduct a privilege analysis on a

5    document by document basis and that the only way to do it

6    would be on omnibus fashion consistent with exactly what

7    we're asking the Court to do.

8           But even if the issue hadn't been waived, the

9    articulation of the law that the debtor has provided is not

10   correct.

11          The debtor cites to and referenced in earlier

12   argument the Tenth Circuit's decision in 1999 in the *In re*

13   *Foster* case, which he contends stands for the proposition

14   that the only way to issue any decision on privilege is by

15   conducting a document by document review, but that's not

16   what that case says.

17          That case criticized the bankruptcy court, which

18   if you read the bankruptcy court's opinion, conducted

19   virtually no analysis to determine why privilege of a broad

20   category should have passed -- the control of that privilege

21   should have passed to the trustee using the balancing test.

22          That was not a case where there was an actual

23   analysis or a fact specific balancing test conducted

24   involving individual document requests like we have here.

25          We have attached subpoenas with document requests

1    that very specifically seek documents related to assets of

2    the estate, other transactional matters involving the debtor

3    prior to the bankruptcy, and other things that simply do not

4    implicate the types of concerns regarding criminal

5    liability, et cetera, that this debtor is worried about.

6         So there's nothing in the approach that the *Foster*

7    case was concerned about that we're trying to ask the Court

8    to do here.

9         And frankly, if you look at other cases, there are

10   plenty of other cases that have issued the type of order

11   that we're asking this court to issue, including one of the

12   cases we cite is the *In re Tarkington* case from the Eastern

13   District of North Carolina in 2010.

14        There, there was an investigation into potential

15   estate assets.  The trustee wanted to depose an attorney who

16   represented the debtor prior to the bankruptcy, and what the

17   Court ended up doing was, all right, I'm going to let the

18   deposition go forward, here is what I consider to be within

19   the scope of the privilege.

20        All of the privilege related to assets of the

21   estate, et cetera, has passed to the trustee.  Anything that

22   could go under criminal liability or those things could

23   still be covered by a privilege.

24        So you can go take the deposition, and counsel to

25   the debtor can interpose objections consistent with that,

1    you know, those parameters surrounding the privilege.

2           You know, that's no different from the type of

3    order that we're asking the Court to issue here.

4           As to -- as to the substance, and I started

5    talking about this a little bit already I guess, of the

6    motion, you know, I'm not -- I'm not sure how much

7    disagreement there really is in terms of the governing law

8    that applies to the question of passage of an individual

9    debtor's privilege to a trustee.

10          I'll address the *Swidler* Supreme Court decision

11   and the *Ginsburg* case briefly, because the debtor does

12   briefly in his opposition cite to those cases purportedly

13   for the idea that this court could adopt a blanket rule that

14   a privilege never passes to the trustee.  I don't think that

15   the *Ginsburg* case or the *Swidler* case from the Supreme Court

16   comes close to dictating that resolve.

17          The *Swidler* case involved a situation where, as

18   counsel had mentioned, the debtor ended up passing away.  Or

19   it wasn't a, sorry, it was not a -- it was not a bankruptcy

20   case at all, Your Honor.  The *Swidler* case involved a

21   situation where the individual whose privilege was at issue

22   ended up passing away.

23          And after that, the question was whether a grand

24   jury could have access to documents formally covered by the

25   attorney-client privilege for purposes of investigating

1    criminal charges.

2         And the Supreme Court said in that situation it

3    wasn't appropriate to apply a sort of balancing test.  It

4    had nothing to do with bankruptcy.

5         It certainly had nothing to do with the situation

6    where the question is whether a trustee succeeds to control

7    of a debtor's privileges.  And I think it's noteworthy that

8    that was a 1999 or '98 case I believe.

9         And the only case we've ever seen in the

10   debtor/trustee context that is even cited to is this one

11   outlier *Ginsburg* case.  All the other cases post-dating that

12   have rightfully not looked at it at all because it simply is

13   not relevant to the situation.

14        So as I said, and as we said in our paper, Your

15   Honor, I think if you look at the weight of the case law,

16   it's pretty clear that the vast majority of cases out there

17   -- and there's three approaches -- there are some who have

18   like *Ginsburg* and some other older cases that have said

19   privilege doesn't pass, there are others that said it always

20   passes, but the vast majority of the case law is in the

21   middle and applies this balancing test.

22        And we cited a number of those cases in our

23   papers.  I direct the Court to the *Bazemore* decision, to the

24   *Bain* decision, to the *Horvath* decision, and to the

25   *Tarkington* decision, that I've already mentioned.

1          These are cases where the issue was the trustee

2     was trying to investigate assets of the estate that would

3     potentially relate in, you know, augmenting the estate, of

4     the value of those assets.

5          And what the courts held in those cases is that

6     this is a situation where the debtor would benefit from

7     that.

8          These are -- when the debtor's estate is augmented

9     by additional -- the location of causes of action or the

10     identification of other assets he benefits.  He's not harmed

11     by that.

12          So, you know, the debtor contends, well, as I said

13     before, there's a concern that, you know, it's possible

14     documents that the trustee is seeking to have access to

15     could involve potential criminal liability, whether it's the

16     rape allegations that he mentioned, false imprisonment, or

17     completely unrelated issues like his asylum application,

18     but, again, as I said before, we're not seeking to get those

19     documents through our discovery requests.

20          The debtor has identified one request in our

21     subpoena directed to the debtor's former law firms and

22     professionals, Request 17, that asks for information about

23     legal disputes which could be read to include criminal

24     actions against him, to the extent there are any, or his

25     asylum application, we're willing to make clear on the

1    record that we're not seeking to get that type of

2    information and we'll limit that request accordingly.

3         I mean, the only plausible scenario where the

4    debtor could say that he has a document that is responsive

5    to our subpoena, but also could result in harm to him, is

6    that there's some document that relates to his assets,

7    relates to the topics that we're seeking to explore, and

8    also somehow implicates his criminal liability.

9         But the debtor has not even offered one hint of

10   what that could be.  He's come forward with nothing to

11   suggest other than, as he said in his opposition,

12   allegations of false imprisonment and the like.

13        There is no reason to believe that he's given of

14   that we have that I could even imagine as to why the

15   documents we're seeking related to, for example, his

16   interest in the New York condominium, the Lady May, to all

17   the other private jets and things like that that he's talked

18   about, there's no conceivable scenario where those documents

19   would relate to these types of issues.

20        So this idea that the balancing test would weigh

21   in favor of not passing control over of these privileges to

22   the estate is just -- I think there's no weight to that.

23        The debtor also raises, Your Honor, the non-

24   dischargeability actions that have been filed against him.

25   And he says that while there's a concern there I could be

1   harmed if the debtor -- or that the trustee gets documents

2   that could relate to those actions, a couple of responses to

3   that.

4           First, again, the trustee is not a party to those

5   actions.  In fact, the debtor has taken the position that

6   the trustee does not have standing to be a party in those

7   actions.

8           The trustee has told us that under Section 1106(a)

9   of the Bankruptcy Code that, you know, the trustee is able

10  to perform certain duties that are laid out in Section 704

11  of the Bankruptcy Code, but not including the duty in

12  Section 704 that relates to potentially challenging the

13  debtor's discharge.

14          So the debtor has taken the position that we don't

15  even have standing to participate in those actions, number

16  one.

17          Number two, all the non-dischargeability actions

18  that have been filed seek an exception to discharge under

19  523(a)(6) which relates to willful and malicious injury by

20  the debtor to another entity or to the property of another

21  entity.  There's also a couple of -- I think one non-

22  dischargeability action also flags some of the 523(a)

23  subsections that relate to securities fraud.

24          If you look at our document requests, we're not

25  seeking any information related to any of those topics at

1   all.  So there's just no legitimate concern at all that

2   somehow we're going to get information related to these

3   actions.

4          And by the way, we're not going to share the

5   documents we get with the plaintiffs to those actions, so

6   this idea of a concern on the 523 actions, again, I think is

7   just -- it's really nonexistent.

8          A couple -- a couple more points, Your Honor,

9   before I wrap up.  At least on my opening remarks.

10          The debtor in his objection, although he initially

11  says the Court shouldn't issue any ruling here, he says,

12  well, if the Court does, it could issue certain guidance.

13          And the way I think the debtor frames that

14  guidance is to say that the Court could direct the

15  recipients -- and this is in paragraph 33 of the objection -

16  - the Court could direct the recipients of the subpoenas to

17  withhold documents on the basis of privilege, quote, "Only

18  documents that they believe potentially implicate harm to

19  the debtor such as criminal allegations, facts relating to

20  non-dischargeability, or facts that have nothing to do with

21  the debtor's estate, such as his pending asylum application.

22          Now, some of that actually sounds consistent with

23  the remarks I've given today, but I think it also highlights

24  sort of what we're also worried about and the mischief that

25  could result if an order specific to that language is

1    granted, because the debtor cannot have free rein to

2    determine what documents to withhold on the basis that in

3    his view they could, quote/unquote, "Harm him."

4           You know, in particular, the debtor cannot be and

5    should not be allowed to take the position that documents

6    related to assets that he would prefer not be property of

7    the estate, such as the Lady May, his apartment, the many

8    homes he has boasted about owning, the two private jets he's

9    claimed to have, he cannot take the position that he would

10   be harmed if we get discovery related to those assets

11   because he would prefer that they stay with his relatives or

12   whoever else.

13          As I said before, the cases make absolutely clear

14   the opposite is true.  That type of discovery benefits the

15   estate.  It benefits the debtor because if there are assets

16   that are properly part of the estate they should be brought

17   into the estate.

18          The very -- the very last point I'll make, Your

19   Honor, which I think is an important one, is that there's a

20   separate discussion in the case law that we cited in our

21   brief on the issue of whether the control of privilege

22   passes to the trustee as it relates to the post-petition

23   administration of the estate.

24          I think if you look at the *Bain* case, there's a

25   good discussion of this at page 375, and basically what the

1    courts hold is that you don't even need to conduct a

2    balancing test in that situation.

3          If there was counsel who was representing the

4    debtor in his capacity as a Chapter 11 debtor or Chapter 7

5    debtor, then those documents, the control or the privilege

6    over those documents, properly passes to the Chapter 11

7    Trustee.

8          So as applied here, because there's no -- they're

9    not representing him as an individual, there's no, you know,

10   criminal charges or anything else like that that could be of

11   a concern.

12         But as applied here, what that means is the

13   documents that we've sought from the debtor's initial

14   counsel in this case, part of the trustee's employment of

15   Brown Rudnick, those documents are documents over which

16   control of the privilege has passed to the trustee.

17         And it's also critical that we get those documents

18   because those documents would, for example, relate to the

19   preparation of his schedules.  You know, what assets were

20   decided to be included on the schedules or not decided to be

21   included on the schedules.

22         Those are documents that we're entitled to under

23   the case law and that we would ask to be subject to this

24   court's order.

25         So that's -- those are the opening comments that I

1    had, Your Honor.  I'll obviously reserve time to respond to

2    anything that the debtor has to say, but also happy to

3    answer any questions you might have.

4          THE COURT:  Okay.  I don't have any questions at

5    the moment.  Thank you.

6          Attorney Romney, you're going to respond?

7          MR. ROMNEY:  Yes.

8          THE COURT:  Okay.  Go right ahead.

9          MR. ROMNEY:  Your Honor, I'm here to argue on

10   behalf of the debtor in response to the trustee's motion.

11   It's docket number 777.  It's the motion that the trustee

12   filed and it concerns the proposed order that the trustee

13   filed granting that order.

14         The trustee has made numerous efforts to

15   characterize that relief to say that the concerns the debtor

16   has about that relief will never come to fruition and the

17   trustee has no desire to cause them to come to fruition, but

18   the reality is the debtor's counsel, I am here to argue the

19   motion that the trustee filed and against the relief that

20   the trustee is seeking.

21         The trustee has served at least 14 subpoenas on

22   the debtor's prior professionals.  Those subpoenas seek a

23   tremendously broad scope of information, including all

24   document concerning any claim, legal dispute, concerning the

25   debtor.  There is no limited information.

1        Now the trustee filed docket 777, the attorney,

2    concerning the scope of privilege and submitted a proposed

3    order.  That's at page 27 at docket 777.

4            And if we could pull that up and --

5            THE COURT:  Sure.  So we want to go to page 27 of

6    ECF 777, correct?

7            MR. ROMNEY:  Correct.

8            THE COURT:  So we'll pull that up.

9        (Pause)

10           THE COURT:  How we doing?

11           THE COURTROOM DEPUTY:  One minute.

12           THE COURT:  You're getting it?  Okay.

13           Here we go.  All right.  Where do you want us to

14   go, Attorney Romney?  Just start with the first page?

15           MR. ROMNEY:  If we go onto the second, the so-

16   ordered language.

17           THE COURT:  Okay.

18           MR. ROMNEY:  Paragraph 2 would say control of any

19   attorney/client privilege, work product protection or any

20   related privilege or protection, arising under any law

21   concerning the documents and information requested in the

22   attachments to the Rule 2004 subpoenas passes to the

23   trustee.

24           We go on to paragraph 3, neither the debtor nor

25   his counsel, based on instructions from the debtor or

1    otherwise, nor any of the examinees, which is the recipients

2    of the subpoenas, is entitled to withhold any of the

3    requested materials on the basis of the attorney/client

4    privilege, work product doctrine or any related privilege or

5    protection.

6           The order goes on to paragraph 4, neither the

7    debtor nor his counsel, based on instructions from the

8    debtor or otherwise, nor any examinee, shall interfere with,

9    hinder or delay the trustee's exercise of the authority

10   under this order.

11          And paragraph 5, the trustee is authorized,

12   empowered to take all actions necessary to effectuate the

13   relief granted in this order.

14          Now, the proposed subpoenas, Your Honor, are not

15   attached to the motion notwithstanding that the motion

16   grants or compels compliance with the subpoenas.

17          And when we were here on August 12th, we discussed

18   the fact in the context of the motion 2004 exams that at

19   that time the Court was authorizing service of subpoenas.

20          We were not addressing the scope of those

21   subpoenas.  And that the recipients of those subpoenas would

22   do what happens in the ordinary course under the Federal

23   Rules of Civil Procedure, Federal Rules of Bankruptcy

24   Procedure, and our local rules, which is if they have an

25   objection with the contents of the subpoenas, they would

1    object.  They would move to quash.  They would move to do

2    what recipients of subpoenas do when they don't agree with

3    them.

4              Yet, here we are again standing before you with

5    the trustee seeking to circumvent that process that is

6    mandated by the Federal Rules of Civil Procedure, Bankruptcy

7    Procedure, and the local rules, trying to get an order

8    compelling compliance with subpoenas this time specifically

9    saying nobody can assert the attorney/client privilege on

10   behalf of the debtor or anybody else.

11             And I also understand that Mr. Bassett is here

12   before you with the, I'm sure with the best of intentions,

13   arguing that nobody has any intention of infringing on any

14   other privilege, but that is not what the subpoenas and it's

15   not what the proposed order that they would like Your Honor

16   to enter granting them say.

17             It compels -- the subpoenas would compel the

18   production of documents of -- I honestly haven't counted

19   them.  It's north of 50 individuals and entities.

20             And Your Honor's proposed order granting docket

21   number 777 would require the recipients of those subpoenas

22   to produce documents concerning those entities without

23   regard to any privilege or law.

24             It is there is no authority anywhere cited by the

25   trustee or anyone else that would permit such an order under

1    these circumstances that would be directing no less than 14

2    professional firms to produce documents without regard to

3    any privilege.

4           The debtor's position on the most efficient way to

5    resolve what is admittedly a complex, case specific issue

6    has been consistent and consistently stated since the meet

7    and confer on August 2nd, in the hearing on August 12th,

8    despite me saying on the record, or consistent with me

9    stating on the record that I was not going to get into that

10   position at that time because I didn't think it was before

11   the Court.

12          The debtor, through me as the counsel constantly

13   referred to and the signatory of the affidavit that's been

14   cited, how many times I don't know, stated that I did not

15   believe and the debtor did not believe that it was possible

16   to get into a document by document review concerning

17   privilege in connection with the motion for Rule 2004 exams.

18          And nobody need take my word for it or even go

19   past the docket beyond the reply that was filed yesterday

20   because that's exactly what it says.  It says the debtor is

21   not prepared to undertake a document by document review

22   process in connection with the Rule 2004 motions.

23          I stand by that statement today and I will stand

24   by that statement forever in connection with any motion for

25   Rule 2004 exams.

1          I also stated on behalf of the debtor that given

2     the number of professionals, given the number of documents

3     out there, given the number of issues, different litigations

4     and entities, that notwithstanding that there will come --

5     there will come times where people are going to assert

6     privilege, there may be disagreements on that, and the Court

7     will have to figure out a mechanism for resolving it, but

8     that as the parties all agree, different courts have

9     approached this very complicated issue differently.

10          There is authority for the proposition in an

11     individual case that the debtor would simply hold the

12     privilege.  No one's disputing that.  Retain the privilege.

13          There is a majority of case law holding a

14     balancing test.  Nobody disputes that.

15          But there is no authority, none that I'm aware of

16     or that I have seen cited by the trustee in this case,

17     simply stating that an individual retains no privilege that

18     existed before their bankruptcy petition or before a

19     trustee's appointment in a Chapter 11.  None.

20          So if we go to the balancing test, which has been

21     applied differently in other cases, yes, I have said on my

22     -- on behalf of the debtor my view that in the interest of

23     making this as efficient as possible, not slowing the

24     trustee down, in fact, doing the opposite, in fact, of

25     getting to where we need to go as efficiently as possible,

1    it would help if this court entered an order at least

2    establishing a standard that would govern how the -- how

3    these issues should be handled.

4         Now, I could understand if the Court would not

5    entertain such an order.  It's arguably an advisory opinion,

6    though I don't think so given that we have this very real

7    situation that we're really talking about right now.  And

8    that there's 14 subpoenas served on professionals alone.

9         If people knew what standard to apply, they could

10   then do their best, in their professional judgment, to apply

11   it in accordance with the Court's order.

12        And having the benefit of the Court's order might

13   substantially limit the number of items on any given

14   professional's log.  Maybe it wouldn't.  Nobody here knows

15   until we get there.

16        But there's nothing inconsistent about saying that

17   a process could benefit by such a ruling if the Court would

18   entertain it and forfeiting the right of a professional or

19   party to assert privilege with respect to a particular

20   document and have a particular judicial ruling.

21        So where we are right now is the trustee is asking

22   this court to enter an order directing no less than 14

23   professional firms to comply with 14 subpoenas without

24   respect to any legal applicable privilege which would

25   thereby deprive their right to assert it or presumably be in

1    contempt of Your Honor's order.

2            I don't think it would be Your Honor's intent to

3    enter such an order, though I don't want to be presumptuous,

4    and there are a whole laundry list of issues that have been

5    thrown at the Court in the parties' papers today.

6            And at this point, the baseline position is it

7    would be unfair and inappropriate to enter an order

8    directing anybody to produce documents without a right to

9    assert an attorney/client privilege.

10            I want to clarify one last point before I sit

11    down, unless the Court has any questions, naturally too.

12            One, is one thing that I agree with Mr. Bassett is

13    I did use the incorrect word.  The motion is not for a

14    blanket waiver of privilege.  They are asking for a blanket

15    transfer of the privilege, which there is a difference, and

16    I apologize for that in our wording on Saturday afternoon

17    when our objection was filed.

18            Second, the trustee characterizes what the debtor

19    is asking as free rein for the debtor to determine what is

20    privileged and what is not.  And to the extent that is not

21    clear from everything I have said and everything I've

22    written on the debtor's behalf, that is just not what we

23    were asking.

24            Every litigant or party that is served with a

25    subpoena or discovery request, the initial burden is on them

1    to make an initial determination do I assert a privilege and

2    log it, disclose it to the Court so that the Court can agree

3    or disagree after the parties have been heard, or do I

4    simply produce it because I make the determination that the

5    privilege doesn't apply.

6              That's not called free rein, Your Honor, that is

7    discovery in accordance with the federal rules.  And all we

8    are asking is that the debtor and the debtor's 14

9    professionals receive the same right to make an initial

10   determination and not be faced with an order that they're

11   required to produce documents without regard to privilege

12   notwithstanding that the requests, much less the documents

13   themselves, have never been anywhere near this court.

14             And as I said, it's unfair.  And all that we're

15   asking you today is to deny the order that would allow that

16   to happen.  Thank you, Your Honor.

17             THE COURT:  Thank you.

18             MR. BASSETT:  Your Honor, I think I can be

19   hopefully relatively brief in response.

20             The first thing is I would like to address the

21   proposed order that Mr. Romney had gone over with the Court.

22             I actually had, in anticipation of hearing Mr.

23   Romney raise some of those points, I'd started even before

24   he started speaking marking up some potential

25   clarifications.

1          As I said in my opening remarks and as I think is

2     perfectly clear when you read our motion and when you read

3     the way we describe the relief requested, what we're seeking

4     is just how I described it.

5          It's an order from this court determining that

6     control over the privileges passed to the trustee with

7     respect to privileges owned by the debtor related to his

8     assets, to his financial condition and to the administration

9     of his estate during the post-petition period prior to Mr.

10    Despins' appointment.

11         And we're also not seeking to waive any privileges

12    or -- waive -- we're not seeking control over any privileges

13    related to privileges that other individuals may hold in

14    their own individual right.

15         So I think if it would be helpful to resolve some,

16    if not all, of the debtor's objections, I think there are

17    changes we could propose to paragraphs 2 and 3 of the

18    proposed order.

19         In particular in paragraph 2 --

20         THE COURT:  Let's scroll up for a minute --

21         MR. BASSETT:  Sure.

22         THE COURT:  -- so we're all looking at the same

23    thing.

24         Can we scroll up to paragraph 2?

25         Okay.  Go ahead.

1          MR. BASSETT:  So control of any attorney/client

2    privilege, work product protection, or any related privilege

3    or protection, asserted by the debtor -- and I'm doing this

4    on -- I'm doing this somewhat on the fly so I may need to

5    confer as to final language with my colleagues and others --

6    but the concept would be to include some language that

7    clarifies that this relates to privileges allegedly held by

8    the debtor arising under any applicable law on matters

9    concerning potential estate assets, the debtor's financial

10   condition, or matters related to the post-petition

11   administration of the estate concerning documents requested

12   in the subpoenas.  And we would -- we would be happy to

13   attach the subpoenas.

14          And just to be clear, the reason we had framed the

15   order originally or drafted it the way we did is because our

16   view is that the document requests themselves and the

17   subpoenas are, in fact, targeted to seeking information

18   that's in the three categories that I've described.

19          The debtor has taken issue with some of the

20   requests, including Request 17, saying it goes beyond that.

21   I think this language will clear up that concern by making

22   clear that the passage of control over privilege relates to

23   the matters that is consistent with the case law we've

24   relied upon in our -- in our motion.

25          And then paragraph 3, Your Honor, I think we would

1    just need similar clarifying language that neither the

2    debtor nor his counsel, based on instructions from the

3    debtor or otherwise, nor any other examinee is entitled to

4    withhold any of the requested materials on the basis of any

5    attorney/client privilege, work product doctrine, or any

6    related privilege or protection, allegedly held by the

7    debtor that relates to estate assets, the debtor's financial

8    condition, or post-petition administration of the estate.

9         So, again, that's the concept, the proposed fix.

10   I would have to, you know, maybe discuss that with

11   colleagues and make sure that that particular language

12   works.

13        But I did want to make clear that that is the

14   intent of the trustee and the motion that we filed is to

15   seek an order that provides that relief, not to seek the

16   types of blanket waivers that the debtor has expressed so

17   much concern about.

18        Just to address a couple of other points raised by

19   Mr. Romney.  He, again, took the position that despite what

20   he had said in his affidavit, you know, what we are trying

21   to do with this motion is to circumvent the normal process

22   that would apply under applicable rules when you're dealing

23   with discovery disputes in a typical litigation.

24        Again, I think he said -- I think he suggested

25   that we do just the opposite.  He didn't only say that it

1 was impossible to do a document-by-document review in his

2 affidavit.  He also expressly said that it was the debtor's

3 preference in an omnibus fashion.  I don't know what that

4 means other than what we're attempting to do here.

5   In any event, we've joined issue on this.  There's

6 a clear dispute.  It's something the Court can issue and

7 decide now.

8   And I'd also point out that in paragraph 33 of

9 their objection, the debtor, as I mentioned before, does, in

10 fact, suggest that the Court issue an order prior to

11 documents being produced and logged and all of that as to

12 the extent that privilege is passed to the trustee.

13   Last point.  You know, similar -- on a similar

14 note, I think Mr. Romney took issue with, you know, the

15 statement that I made that it would be problematic to give

16 the debtor sort of free rein to determine what's privileged

17 or not.

18   And then he again cited, well, the way this should

19 normally work is they would eventually produce or not

20 produce documents, put documents on a log, and then we could

21 have a back and forth about that.

22   I think, Your Honor, we have a deep concern that

23 that is an invitation for further delay and obstruction in

24 this case, especially if there is not advanced -- an

25 advanced order from the Court as to the scope of the

1  privilege that continues to exist.

2          In a normal litigation, the question is is a

3  document privileged?  And typically what would happen is

4  parties would log documents on a privilege log, fight about

5  individual documents and whether or not they're privileged.

6          That's not the question here.  Again, the question

7  is what -- whether control of certain privileges has passed

8  to the trustee?

9          And that is an issue that all the courts we have -

10  - in many of the decisions we have cited, including the

11  *Tarkington* decision that I mentioned earlier, they have not

12  hesitated to issue that kind of order defining the scope of

13  the privilege that is passed to the trustee so that games

14  can't be played and there's not a dispute about a debtor

15  trying to assert privileges that he no longer owns in a

16  deposition.  And that's the kind of thing that we're trying

17  to get out ahead of, Your Honor.

18          The Court, I think, has rightfully mentioned this

19  time and time again, this case has been pending for way too

20  long.

21          The trustee was appointed at the beginning of

22  July.  Immediately, upon our appointment, we immediately

23  tried to begin coordinating with counsel to the debtor to

24  get documents and information on an informal basis.

25          We finally got one PDF full of some documents this

1    morning and from the debtor in response to a request that we

2    made on July 11th for basic corporate governance documents.

3    We have otherwise gotten absolutely nothing from them.

4         And we are deeply concerned about the debtor

5    taking any opportunity it can to delay our investigation and

6    to delay progress.

7         And that's why, you know, that's the motivating

8    factor behind us filing this order which we think is

9    entirely appropriate.

10        That's all I have, Your Honor.

11        THE COURT:  I just have a question --

12        MR. BASSETT:  Sure.

13        THE COURT:  -- that I didn't -- if you addressed

14   it, then I missed it in your comments just now.

15        But the debtor's counsel objected to the language

16   in paragraphs 4 and 5, as well as 2 and 3 and I don't know

17   if you're suggesting there's some changes or clarifications

18   that have to be made to those paragraphs as well?

19        MR. BASSETT:  I don't -- I think that those -- the

20   debtor's counsel can correct me if I'm wrong, but my

21   understanding was that his concern with those paragraphs

22   flowed from, his concerns with paragraphs 2 and 3, so I

23   think if the issues are in 2 and 3 that I had mentioned are

24   corrected, that those concerns would no longer exist, but

25   I'll let him speak to that.

1          THE COURT:  Okay.  That was my final question.

2    Thank you.

3          MR. BASSETT:  Okay.  Thanks.  Thank you, Your

4    Honor.

5          THE COURT:  Mr. Romney, can we start with the

6    answer to that question?

7          I know you have -- I'm sure you have other things

8    that you want to address, but I just want to be clear on the

9    -- your arguments on paragraphs 4 and 5 of the proposed

10   order.

11         I just asked counsel is -- I'm not saying you

12   agree.  I'm just -- I'm just trying to make sure I

13   understand your position.  Okay?

14         MR. ROMNEY:  And I appreciate Your Honor's

15   interest and clarification.

16         Looking at this, I think it's probably accurate to

17   say that if we agreed on everything else that paragraphs 4

18   and 5 would probably not be problematic because they do,

19   they flow from everything else.

20         If the order is otherwise -- yes.  We would agree

21   that the debtor and the trustee's -- I'm sorry, the debtor's

22   counsel should not be interfering with the Court's order.

23   So, yes, that's really what those say.

24         I do take issue with immediate effectiveness,

25   which I didn't raise before, just because we didn't get

1    there, to the extent that there is a non-consensual order

2    entered.

3         I would -- the debtor would want to reserve its

4    rights to oppose that, to, you know, appeal or seek a stay

5    of that order.

6         But, again, it's -- the major issues, Your Honor,

7    are the issues in the substantive paragraphs 2, 3 and 4.

8    And I guess I have not yet directed my focus too much in the

9    last five minutes to the rest of the issues that could be

10   arising because for the reasons I would like the opportunity

11   to be heard on I don't think we're there or anywhere

12   particularly close.

13        We're certainly -- there are certainly some major

14   improvements.  And I will certainly acknowledge that some of

15   the concerns I raised when I was heard earlier would be

16   addressed by that, by those modifications or substantively

17   similar ones.

18        The primary issue that I have remaining with the

19   proposed revisions are they don't provide for a balancing

20   test.  And I don't think they provide for any meaningful

21   guidance.  I think they actually, if anything, would create

22   confusion.

23        The trustee's position, as I understand it, is

24   that the order should be permitting or compelling the

25   production of information that would otherwise be subject to

1    the debtor's privileges if they concern the assets or

2    administration of the estate.  That's not a balancing test.

3           What needs to be considered is balancing the

4    trustee's legitimate interest in administering assets of the

5    estate, administering the estate and maximizing the value of

6    the estate to its creditors.  I agree that the trustee has a

7    legitimate interest in doing all of those things.

8           What the balancing test, Your Honor, is, depending

9    on the circumstance whether a privilege should be

10   transferred to the trustee and controlled by the trustee, is

11   after considering that legitimate interest, which exists

12   without regard to whether a particular document is

13   privileged, that is the trustee's job and that's the

14   trustee's duty -- there's no dispute about that -- but

15   balancing the harm to the debtor of producing a particular

16   document and that's what the trustee's proposed order and

17   the trustee's motion does not even attempt to do.

18          And I am not speaking to knowledge of any

19   particular documents, but I think we can all agree that

20   there could be a document that identifies something that

21   could affect the administration of the estate, even an asset

22   of the estate, but also contain information that could be

23   incredibly harmful, yet privileged, you know, against the

24   debtor -- harmful to the debtor and privileged.

25          And what I am saying, Your Honor, is that how

1    courts deal with this issue -- and I understand it can --

2    it's not black and white in any given issue, but there can

3    be documents that both concern the administration of assets

4    of the estate but are both subject to a legitimate privilege

5    that the debtor owns.

6          Because on balance the harm to the debtor of

7    losing control of that attorney/client privileged

8    information is outweighed by the trustee's legitimate

9    interest in maximizing the estate.

10         And for that reason, the proposed language by the

11   trustee, while an improvement, is objectionable and in the

12   debtor's view impermissible.  It goes too far.

13         It deprives the parties of the opportunity to

14   present specific facts in specific circumstances when those

15   specific facts and specific circumstances justify it.

16         And it doesn't mean that an order from this court

17   today or following this hearing or any other time wouldn't

18   substantially reduce the number of incidents that we have to

19   go to the Court.

20         But the proposed language by the trustee only

21   considers the trustee's interest, Your Honor.  It does not

22   consider the debtor's.  And for that it is not the balancing

23   test that the majority of courts to address this issue have

24   followed.

25         THE COURT:  So what language would you propose

1    then?  You're not agreeing with the language that was just

2    proposed?

3              MR. ROMNEY:  I am not, Your Honor.

4              THE COURT:  Okay.

5              MR. ROMNEY:  The debtor is not.

6              THE COURT:  So what language would you propose

7    that would then address the debtor's interests?

8              MR. ROMNEY:  Well, as stated in the debtor's

9    objection, I don't think it's as simple as modifying the

10   proposed order I think because it's not black and white.

11             And for there to benefit from a standard, I do

12   think it needs to have more than simply, you know, directing

13   parties to conduct their own balancing tests because then

14   we're in such a subjective universe that we're going to be

15   back here with everything else.

16             I do think that it's -- to the extent that -- that

17   there are -- the examples that we provided on our objection

18   that I think are the most significant is to the extent that

19   the privilege documents contain information that concern the

20   possibility of criminal, asylum issues, or dischargeability

21   the scales should tip in balance of the debtor and those

22   things should not under any circumstances be produced.

23             Now, that's not giving the debtor --

24             THE COURT:  Who's going to make that

25   determination?

1          MR. ROMNEY:  I was just getting to that, Your

2     Honor.

3          THE COURT:  Okay.  There you go.

4          MR. ROMNEY:  And this is exactly to the free reign

5     point.

6          It doesn't mean that if -- so that if a particular

7     professional has a document that they determine in their

8     professional judgment concerns an issue that implicates a

9     harm of the debtor, that they get to stick it in the garbage

10    or stick it wherever.  They stick it on a privilege log.

11    And the trustee and his competent counsel will raise the

12    issue.

13         And whether that will require in camera review by

14    the Court or in camera review by somebody who the Court

15    designates to review, I think that is a question for another

16    day.

17         But for an order --

18         THE COURT:  Why is it a question for another day?

19    Why isn't it a question for today?

20         MR. ROMNEY:  Because the document isn't before the

21    Court.  That's what I was saying by that.

22         THE COURT:  Okay.

23         MR. ROMNEY:  And with that unless the Court has

24    any further questions, I have nothing further.

25         THE COURT:  Okay.  I don't have any further

1    questions.  Thank you.

2            MR. ROMNEY:  Thank you, Your Honor.

3            MR. BASSETT:  Your Honor, just briefly in

4    response.  I think I might stay here this time if that's

5    okay.

6            THE COURT:  That's fine.

7            MR. BASSETT:  So Mr. Romney, in addressing our

8    proposed changes to the language, I think his position was

9    that, well, we're still not providing for the application of

10   a balancing test because if what we're saying is that

11   privileges related to the debtor's assets, financial

12   condition, or the administration of his estate, pass to the

13   trustee, it doesn't account for the possibility that there's

14   some other personal, individual interest, criminality or

15   otherwise that the debtor might have.

16           And I think the fallacy in that logic is that

17   there is no basis that's been provided as to why documents

18   would relate to assets, financial condition, or the

19   administration of the estate, would have anything to do with

20   the debtor's asylum application, with criminal allegations

21   that are made against -- that have been made against him for

22   rape or false imprisonment.

23           I mean, if the debtor's concern is that there

24   could be hypothetically a document where the debtor was

25   having a conversation with his counsel about both false

1    imprisonment allegations that have been made against him and

2    his property, that he shouldn't have to turn over the

3    portion of that document that talks about false imprisonment

4    allegations, then I think that's fine because we're not

5    seeking that.

6          But if what the debtor is trying to say is that he

7    wants to have the ability to determine for himself when and

8    under what circumstances the debtor might be, quote/unquote,

9    "Harmed by the disclosure of documents to the trustee," I

10   think that is a huge problem.

11         Because we already know this debtor is going to

12   take a position that he does not want these assets that he's

13   referred to, all over the place in the past, to become

14   property of the estate.

15         And if he's going to take the position that, well,

16   a communication that I had with counsel about those assets

17   is privileged and I'll be harmed by its disclosure because

18   that's a result I don't want, that is completely

19   inconsistent with the case law.

20         That is not something that would be considered in

21   the balancing test as weighing in the favor or non-

22   disclosure.  And it's not something that should be in any

23   way incorporated into this proposed order.

24         But, again, if there is language we could work out

25   to make clear if there's a document that talks about

1    unrelated criminal liability or, you know, the particular

2    things, again, that he's mentioned, his asylum application,

3    things like that, in his objection, I think we could work

4    out language to put in the proposed order to again make

5    clear that we're not seeking that.

6         I think there are other tweaks we would need,

7    including to reserve our right to the extent of any withheld

8    documents that we think might be relevant to the trustee's

9    investigation on a crime-fraud exception to the attorney-

10   client privilege, for example, but I do think there is a way

11   to work out some language that could address some of the

12   debtor's concerns.

13        But, again, it cannot be a situation where the

14   debtor gets to decide when he's harmed by the disclosure of

15   a document because that is an open invitation for him to

16   just withhold documents that he doesn't want us to see.

17        Thank you, Your Honor.

18        THE COURT:  Thank you.

19        MR. ROMNEY:  Your Honor, if I may?

20        THE COURT:  Yes.

21        MR. ROMNEY:  Very, very briefly.

22        I've already said creating a privilege log is not

23   deciding.

24        But I do want to make one perhaps significant

25   clarification, which is, these order -- the proposed order

1    and this motion is directed towards the recipients of

2    subpoenas.

3         This order would deprive them of in their

4    professional judgments the ability to exercise a privilege

5    on behalf of their client which is their professional duty

6    unless the privilege is waived or their client directs them

7    to do so.

8         So no one has proposed here, I have not proposed,

9    the debtor has not proposed, anything other than responding

10   to the motion that the trustee filed, which is don't direct

11   the debtor's professionals that they can't exercise their

12   judgment that a document remains privileged, and that's what

13   their proposed order would do.

14        And if the result of this motion ultimately allows

15   the debtor's professionals who have been served with their

16   subpoenas to continue to exercise their professional

17   judgment in accordance with their legal and ethical duties,

18   that's really what we're asking for, Your Honor.

19        And I understand articulating, putting that into

20   words in an order may be more difficult than articulating it

21   from my standpoint at 4:20 on a Tuesday afternoon after

22   we've been here for hours, you know, so it may take some

23   wordsmithing, but I do just want to make clear no one's

24   asking for the debtor to have free rein.  It's this is a

25   motion about 14 subpoenas on 14 professionals.

1          Thank you.

2          THE COURT:  Thank you.

3          MR. DESPINS:  Your Honor, just one point on this.

4          THE COURT:  Yes.

5          MR. DESPINS:  There are at least five, probably

6     six, law firms that are defendants in malpractice actions

7     commenced by the debtor.  What this order does, it frees

8     these people from the threat of that.

9          I guarantee you what's going to happen is that

10    they will go to the debtor and say do you consent?  No,

11    we're not, you know.  And then we'll drag on Brown Rudnick

12    and all the other firms into court because they're afraid of

13    a malpractice claim.  And that's why this order has to be

14    crystal clear on that.

15         Thank you, Your Honor.

16         THE COURT:  Thank you.

17         All right.  Anything further on the motion from

18    anyone?

19      (No response)

20         THE COURT:  Okay.  So with regard to this motion

21    that we're speaking about right now, as opposed to the

22    motion for stay pending appeal, we're talking about right

23    now the motion for the order providing that control of the

24    privileges pass to the trustee upon appointment, what I --

25    I've reviewed your papers and I've listened to you this

1    afternoon and I've heard some suggestions that may or may

2    not be acceptable to all parties, but I'm going to order you

3    to have further discussions about it and see where we stand

4    on the order.

5            And I'm going to continue the hearing on the

6    motion for the order providing that the privileges passed to

7    the trustee upon appointment to next Tuesday, the 6th, at

8    1:00 p.m.

9            There were scheduled at 2:00 p.m. a series of

10   pretrial conferences in the adversary proceedings but

11   they're all stayed as of today.  All those adversary -- the

12   HK International adversary proceeding was not scheduled for

13   a pretrial conference next week.

14           And what we're going to talk about at next week's

15   hearing at 1 o'clock is whether or not there is agreement on

16   the order.  And if there aren't I want you both to have

17   proposed orders.  Yours could be denied, whatever it is.  I

18   want you to have proposed orders that I will take a look at

19   and I'll decide what to do.

20           I may agree with you.  I may not agree with either

21   one of you.  But I am ordering you, as you have the duties

22   under the Federal Rules of Civil Procedure, and the Federal

23   Rules of Bankruptcy Procedure, and our local rules, to

24   discuss these issues with regard to discovery disputes.  And

25   you have that ongoing obligation.

1        And the Court suggests that you take the time and

2   review these matters and see if there is any agreement that

3   can be reached.  If there isn't, then the Court will rule.

4        But I've heard -- I heard there -- from the

5   Court's perspective, there should be able to be issues that

6   can be agreed upon with regard to this motion and I'm hoping

7   that I'm going to see some progress on that next Tuesday at

8   1:00.

9        With regard to the motion for stay pending appeal,

10   I'm going to take that matter under advisement.  But I'm not

11   going to take it under advisement for a substantial period

12   of time.

13        I know, Attorney Henzy, you're asking first day

14   pending appeal, one way or another, either grant or deny,

15   but I need to look at some of the things that you talked

16   about today during your argument and some of the cases that,

17   you know, you cited.

18        You did tell me that one of the cases that you

19   wanted me to look at was not in your motion to for stay

20   pending appeal.  As you know, I didn't look at it and so I

21   need to look at that.

22        I need to understand and make sure I fully

23   appreciate all of your arguments as is true with the parties

24   who oppose the stay pending appeal.

25        So I'm going to take the stay pending appeal under

1   advisement and then continue the hearing on the privileges

2   motion to next Tuesday at 1:00.

3          The one other thing I would note, and we -- and we

4   don't have to do it today, we're not going to do it today,

5   but I did look, just because I do think it's important and

6   it's important for all of us in the bankruptcy court,

7   because our record is audio and because the transcriber can

8   only do as well as the transcriber can do, they're not in

9   the courtroom, they hear an audio, I did look at the hearing

10   on April -- August 4th, because I know that's what you're

11   appealing, and there's a couple of changes in that

12   transcript that I don't think are substantial, but they're

13   still some -- a couple of changes where there are things I

14   think were improperly, not purposefully, but that the court

15   reporter didn't get.

16          So I'm going to probably, you know, give you all

17   an errata sheet again where you can add whatever you want,

18   but there have been some occasions that we've had where the

19   district court on appeal has not -- has relied on something

20   in the transcript that was not accurate.

21          And I just don't think that's good for anybody,

22   including the parties that are appealing, because if it's

23   not an accurate transcription of what occurred and what the

24   Court -- what the -- what the bankruptcy court is at that

25   point, the trial court, analyzing to rule on, then I think

1    that it does everyone a disservice.

2            It's the way -- we have no choice.  We have no

3    choice.  We cannot do anything other than have audio

4    recordings, but there's a downside to audio recordings.  So

5    you -- so you may see something about that.

6            Attorney Goldman, there's still two pending

7    motions that the committee had prior to the appointment of

8    the Chapter 11 Trustee that I don't know where those stand,

9    but they're still pending.  Are you going to be prosecuting

10   those motions?

11           MR. GOLDMAN:  There are two retention applications

12   of --

13           THE COURT:  Right.

14           MR. GOLDMAN:  -- our financial advisor and the

15   foreign investigator.  And what I would like to do with

16   those is, if the Court could put them on the calendar, we

17   would like to have those professionals retained for two

18   reasons.

19           Number one, they did perform some amount of work

20   before it became clear that there would be no funding and

21   that the debtor was consenting to dismissal, at which point

22   they stopped.

23           THE COURT:  Okay.

24           MR. GOLDMAN:  So I --

25           THE COURT:  So you want them retained so they can

1   ultimately have a claim?

2           MR. GOLDMAN:  Correct.

3           And also I think it is beneficial from the

4   committee's point of view to have those professionals

5   retained in the event, during the administration of the

6   case, we need to call upon them for their assistance.

7           And we would only do so, and I ran this by the

8   trustee, in cooperation with the trustee.

9           We are not looking to have our professionals

10  duplicate any work that would be undertaken by the trustee

11  or his professionals.

12          But it could be the case that they might be needed

13  for the administration of the case and we'd be happy to have

14  them perform work if the trustee was in agreement.  So

15  that's kind of the protocol that I would propose for their

16  retention.

17          THE COURT:  Okay.  Does anyone -- I mean, of all

18  the parties that are here, no one has had an ability -- I

19  don't remember, was there an objection period for those

20  applications before?  No?

21          So does any -- I mean, I know we've talked about a

22  lot of things today, but does anybody know right now or does

23  anybody ask, is asking the Court to set an objection date so

24  they can determine whether they want to object to the

25  committee's retention of these professionals?

1          MS. CLAIBORN:  Your Honor, the U.S. Trustee would

2     prefer to have an objection deadline.

3          THE COURT:  Would prefer?

4          MS. CLAIBORN:  Yes.

5          THE COURT:  Okay.  Okay.  Well, then I guess we'll

6     have an objection deadline.  All right.

7          So then I'll have to go back and look at it,

8     Attorney Goldman.  We'll set it for another probably not for

9     two weeks or so since there's going to be an objection

10    deadline.

11         And I guess it really isn't that much harm at this

12    point because they haven't been doing any --

13         MR. GOLDMAN:  No.

14         THE COURT:  -- rendering any services?

15         MR. GOLDMAN:  They haven't.  And I don't -- I

16    don't perceive --

17         THE COURT:  Okay.

18         MR. GOLDMAN:  -- that to be --

19         THE COURT:  Okay.

20         MR. GOLDMAN:  -- an undue period of time.

21         THE COURT:  All right.  Then we'll take a look and

22    the clerk's office will schedule that and issue a notice of

23    hearing with an objection deadline.

24         MR. GOLDMAN:  Great.

25         THE COURT:  All right?

1          MR. GOLDMAN:  Thank you, Your Honor.

2          THE COURT:  All right.  Mr. Despins, did you want

3     other dates for status conferences?

4          MR. DESPINS:  We had asked for September 7th.  But

5     since we're going to be here on the 6th, we might as well

6     use that time.

7          THE COURT:  I think that's correct.  Okay?

8          MR. DESPINS:  Thank you.

9          THE COURT:  And then we can talk on the 6th about

10    I think you had some further dates as well.  We can see

11    where things stand at that point.  Okay?

12         MR. DESPINS:  Yes, Your Honor.

13         MR. BASSETT:  Your Honor?

14         THE COURT:  Yes.

15         MR. BASSETT:  One other question, suggestion about

16    the continued hearing on the 6th.

17             For any proposed orders that the parties file,

18    either competing proposed orders or a joint proposed order,

19    would it be helpful to have a deadline for that so the Court

20    has --

21         THE COURT:  Well, I mean, I would like -- if you

22    have an agreed-upon order, it makes it kind of easy, so --

23    but I have a feeling that might not happen.

24             But the -- the deadline, I think the problem is I

25    don't even know if I'm going to have time to look at them

1    between now and then, so -- but then, of course, isn't this

2    weekend a long weekend?  Yeah.

3            So I think -- you know, if you have competing, if

4    you don't have an agreement, if you could file something on

5    the docket by noon that day, I'll try to take a look at it.

6    I mean, we have other hearings that morning, whether or not

7    I'll have an ability to look at it.

8            I don't think it's unfair to ask both of you to

9    have something by noon because you're going to have to have

10   it by 1:00 anyway because I'm going to have to look at it.

11   Right?  So hopefully that gives me the ability to look at

12   it.

13           MR. BASSETT:  That's fine with us.

14           THE COURT:  I don't know that it will though.  I

15   can't promise you that I -- that I will have the ability to

16   look at it.

17           But I do -- I do know that you will comply with

18   the requirement to discuss it with each other, and act and

19   see if you can try to come up with some resolution.

20           And I do think that there could be, and I'm not

21   suggesting -- I understand all the issues that you both are

22   thinking of and have thought through to the extent that you

23   have thought them through, but otherwise -- I just -- I

24   think -- I appreciate the parties' time and I'm hopeful that

25   there can be some form of an agreement.  Okay?

150

1          MR. BASSETT:  Thank you, Your Honor.

2          THE COURT:  Is there anything else that we can

3     address today in the case?

4          (No response)

5          THE COURT:  Okay.  This was the last matter on

6     today's calendar, so we will see you next Tuesday at 1:00

7     p.m., and court is adjourned.

8          (Proceedings concluded at 4:29 p.m.)

9          I, CHRISTINE FIORE, court-approved transcriber and

10    certified electronic reporter and transcriber, certify that

11    the foregoing is a correct transcript from the official

12    electronic sound recording of the proceedings in the above-

13    entitled matter.

14

15    *Christine Fiore*

16    _____          September 10, 2022

17      Christine Fiore, CERT

18      Transcriber

19

20

21

22

23

24

25