**Exhibit D**

**GENEVER HOLDINGS CORP**
(as the *Company*)

and

**HARNEYS CORPORATE SERVICES LIMITED**
(as *Harneys Fiduciary*)

**DIRECTOR SERVICES AGREEMENT**

**HARNEYS**

**THIS SERVICE AGREEMENT** is made 13th September 2022

**BETWEEN**

1 **Genever Holdings Corporation**, whose particulars are set out in Schedule 1 (the *Company* and in the Terms, *You*);

2 **HARNEYS CORPORATE SERVICES LIMITED**, whose particulars are set out in Schedule 1 (*Harneys Fiduciary*); and

3 Solely for purposes of Section 6 hereof, the **Chapter 11 Estate of Ho Wan Kwok**, whose particulars are set out in Schedule 1 (the **Kwok Estate**).

**BACKGROUND**

A The Company wishes to appoint Harneys Fiduciary to provide the services of director(s) for the Company.

B Harneys Fiduciary is willing to provide the Company with such services on the terms and conditions set out in this Service Agreement.

C The shares in the Company are held by the Chapter 11 Estate of Ho Wan Kwok.

**IT IS AGREED** as follows:

**1   INTERPRETATION**

1.1 In this Service Agreement clause 2.1 of the Terms apply and:

a *director* has the meaning given to such term in the Act.

*Act* means the BVI Business Companies Act 2004.

*Harneys Fiduciary Directors* has the meaning given to such term in Clause 3.1.

*Power of Attorney* means any power of attorney granted by the Company in favour of another Person.

*Terms* has the meaning given to such term in Clause 2.1.

1.2 Capitalised terms that are not defined in this Service Agreement have the meanings given to them in the Terms.

**2   INCORPORATION OF THE TERMS**

2.1 The general terms and conditions of Harneys Fiduciary posted on its website and accessible at https://www.harneysfid.com/terms-of-business/ (*Terms*) are incorporated into and form part of this Service Agreement. The Terms comprise further important terms, including terms relating to

1

the extent of the duty, liability, indemnification of Harneys Fiduciary, data protection and variation of the Terms, including variation by Harneys Fiduciary alone.

2.2 By executing this Service Agreement, the Company warrants that it has read the Terms, and acknowledges and agrees that the Terms are incorporated into, and form part of this Service Agreement. The Company also acknowledge and agree that the Terms as unilaterally varied by Harneys Fiduciary from time to time, and any such variations will be incorporated into and form part of this Service Agreement.

2.3 The express terms of this Service Agreement including the Terms contain the entire agreement between the Parties relating to the matters contemplated herein and such agreement supersedes all previous understandings and agreements between the Parties relating to the subject matter of this Service Agreement and any term which would otherwise be implied is excluded.

2.4 In the event of conflict between any provisions of the Terms and this Service Agreement, the provisions of this Service Agreement shall prevail. Where the Terms confer further or greater rights on Harneys Fiduciary or greater obligations on the Company, such terms shall not be deemed to conflict with the terms of this Service Agreement and shall confer such greater rights or obligations.

2.5 Each Party acknowledges that in entering into this Service Agreement it does not rely on any statement, representation, assurance or warranty of any Person (whether a Party or not) other than as expressly set out in this Service Agreement.

**3** **APPOINTMENT OF DIRECTORS**

3.1 The Persons specified in Schedule 1 or such other Persons as may be appointed by Harneys Fiduciary in their place and notified accordingly to the Company (the *Harneys Fiduciary Directors*) shall be made available by Harneys Fiduciary for appointment as director(s) of the Company.

3.2 The appointment of the Harneys Fiduciary Directors shall be made effective as soon as practicable after the receipt by Harneys Fiduciary of the annual fee set out in the Schedule 2.

3.3 Any nomination or appointment of an alternate director by the Harneys Fiduciary Directors shall be at the sole discretion of the Harneys Fiduciary Directors, and any such alternate may be an affiliate of Harneys Fiduciary.

3.4 The services of Harneys Fiduciary and the Harneys Fiduciary Directors to the Company hereunder are not exclusive and Harneys Fiduciary and the Harneys Fiduciary Directors shall be free to render similar services to others. Harneys Fiduciary and the Harneys Fiduciary Directors shall not be deemed to be affected with notice of, or to be under any duty to disclose to the Company, any fact or thing which may come to the notice of Harneys Fiduciary, the Harneys Fiduciary Directors, or any employee or agent of Harneys Fiduciary or the Harneys Fiduciary Directors, in the course of rendering similar services to others or in the course of its business in any other capacity or in any manner whatsoever otherwise than in the course of carrying out the services contained in this Service Agreement.

**4        DIRECTOR SERVICES & INSTRUCTIONS**

4.1    The Harneys Fiduciary Directors shall be appointed on the basis that they will undertake their duties in accordance with what they consider to be the best interests of the Company.

4.2    The Parties agree that the Harneys Fiduciary Directors shall not, however, be obliged to act in any manner which may:

(a)    conflict with any laws of the British Virgin Islands or otherwise be illegal or immoral; or

(b)    be unethical, unduly onerous or be of such nature that it might damage the reputation of, or be detrimental to, the Harneys Fiduciary Directors or Harneys Fiduciary; or

(c)    conflict with the memorandum and articles of association of the Company; or

(d)    not be in the best interest of the Company in their absolute discretion.

4.3    The Harneys Fiduciary Directors may require instructions or recommendations of the Company to be in writing before taking action. The Company agrees that the Harneys Fiduciary Directors may act on instructions conveyed verbally, by e-mail or by facsimile and accepts the risk that such instructions may be given by an unauthorised Person. In the case of e-mail the Company must provide Harneys Fiduciary with their e-mail address, and any e-mail received from that address will be assumed to be authentic.

**5        COMPANY UNDERTAKINGS**

5.1    The Company represents and confirms that it has supplied all relevant information, records and financial information which may affect the decision of Harneys Fiduciary to provide directors. The Company undertakes that it will immediately make available to Harneys Fiduciary any further relevant information as requested by Harneys Fiduciary.

5.2    The Company undertakes to procure that financial statements or other appropriate confirmations of assets and liabilities of the Company shall be made available to the Harneys Fiduciary Directors twice a year when such information is not routinely available to the Harneys Fiduciary Directors or whenever required by the Harneys Fiduciary Directors for the review and authorisation of a transaction.

5.3    The Company shall ensure that the Harneys Fiduciary Directors are provided with complete and accurate information relating to the business and affairs of the Company which, in the opinion of the Harneys Fiduciary Directors are necessary to enable the Harneys Fiduciary Directors to perform their duties as a director to the standard imposed by this Service Agreement, the Act, and the law.

5.4    The Company shall provide all necessary assistance to ensure and procure that the Company shall at all times and in a timely manner obtain the necessary legal and tax advice to ensure its activities and affairs are carried out so to comply with all applicable laws, including but not limited to taxation laws and anti-money laundering laws.

5.5    The Company agrees not to take any action or procure the taking of any action relating to the Company, nor to enter into or procure the entering into of any contractual or other arrangement

on its behalf, without the consent of the Harneys Fiduciary Directors, except in accordance with any Power of Attorney as approved by the Harneys Fiduciary Director. The Company undertakes to inform the Harneys Fiduciary Directors of all legal and financial transactions that would under any circumstance require approval by any director undertaken under the authority of such Power of Attorney.

5.6 If the Harneys Fiduciary Directors are not the only director(s] of the Company, the Company agrees and undertakes to ensure that Harneys Fiduciary shall be kept fully and promptly informed of all matters that would require approval by any director notwithstanding the relevant matters are approved by other directors.

5.7 The Company represents and warrants that there are no criminal, civil, regulatory or disciplinary actions currently against the Company or expected to take place, and that it has supplied all relevant information, documentation and records in relation to any such prior proceedings against the Company.

## 6    FEES AND EXPENSES

6.1 The Company shall pay the fees in the manner set out in Schedule 2, subject to Clause 6.2.

6.2 Notwithstanding anything herein (including Schedule 2) to the contrary, the Kwok Estate agrees to pay to Harneys Fiduciary:

(a) immediately after the execution of this Agreement, the pro rata share of the annual fee for the remainder of 2022 in the amount of $6,667.00; and

(b) any future annual fees that may come due, but only after the Kwok Estate has recovered additional funds sufficient to pay such future annual fees,

and provided that, for the avoidance of doubt, if this Agreement is terminated, Harneys Fiduciary shall only be entitled to recover the annual fees, or a pro-rata proportion thereof, in respect of the period in which the Harneys Fiduciary Directors served in office.

6.3 Notwithstanding anything herein to the contrary, in the event the Chapter 11 Trustee for the Kwok Estate requests that Harneys Fiduciary provide director services for up to four additional entities affiliated with the Company and/or Ho Wan Kwok (such additional entities, the "Affiliated Companies"), the annual fee payable for each such additional entity shall be $7,500, rather than $20,000.  For the avoidance of doubt, in accordance with Section 6.2(a) hereof, the Kwok Estate agrees to pay such additional annual fees, but only after the Kwok Estate has recovered additional funds sufficient to pay such additional annual fees.

6.4 In the event that any fees to Harneys Fiduciary have accrued in accordance with this Agreement prior to 1 January 2024 (the *Interest Date*) and have not been paid by the Interest Date (by virtue of the operation of Clause 6.3 or otherwise), such fees shall carry interest at an annualised rate of 7.5%, compounded annually and calculated from the the Interest Date.

6.5 The provisions of this Section 6 are subject to approval of the United States Bankruptcy Court for the District of Connecticut presiding over the chapter 11 case of Ho Wan Kwok.

**7  BOARD MEETINGS**

7.1  The Company agrees to hold at least one physical board meetings per year, either in person, electronically or by telephone conference.

**8  PROFESSIONAL ADVICE**

8.1  In connection with the provision of the services of the Harneys Fiduciary Directors, the Harneys Fiduciary Directors shall be entitled to request that Harneys Fiduciary procure professional advice (including legal advice) or services at any time when such advice or services may reasonably be required at the discretion of the Harneys Fiduciary Directors. The costs and expenses of Harneys Fiduciary shall be reimbursed to Harneys Fiduciary by the Company or as otherwise agreed in writing between Harneys Fiduciary and the Company.

8.2  The Harneys Fiduciary Director has the discretion to request legal advice and/or a legal opinion to be settled as the expense of the Company for transactions that may involve re-structuring, dissolution and complex events that may merit advice.

**9  EXECUTION OF DOCUMENTS**

9.1  The Company agrees that in the event Harneys Fiduciary Directors are required to execute written resolutions (regarding board decisions, service agreements or any other documents) on behalf of the Company:

(a)  the Harneys Fiduciary Directors shall be given a reasonable opportunity to review such document and request, amend if deemed necessary, and approve such additional information in relation thereto as he may require; and

(b)  the Harneys Fiduciary Directors may request that all other directors of the Company sign such document prior to the Harneys Fiduciary Director executing such document.

**10  LIQUIDATION**

10.1  The Company acknowledges that when a director has been provided for a company by Harneys Fiduciary and that company's purpose has been fulfilled, it is Harneys Fiduciary policy that such company should be formally liquidated and not merely be allowed to be struck off the Register of Companies. The costs of any such liquidation shall be paid by the Company.

**11  LIABILITY AND INDEMNITY**

11.1  Harneys Fiduciary will procure that the Harneys Fiduciary Directors use proper skill and care in carrying out Harneys Fiduciary Directors duties and obligations under this Service Agreement PROVIDED HOWEVER that Harneys Fiduciary shall not be liable for any loss suffered by the Company in connection therewith unless such loss arises from negligence, bad faith, wilful default or fraud in performance of their duties and obligations under this Service Agreement by Harneys Fiduciary or the Harneys Fiduciary Directors.

11.2  Harneys Fiduciary shall incur no liability for or in respect of any action taken or omitted in reliance upon any notice, instruction, request, direction or other communication from the Company or any

notice, instruction, request, direction or other communication reasonably believed by Harneys Fiduciary to be genuine, even if it is subsequently found not to be genuine or to be incorrect.

11.3 The Company shall indemnify Harneys Fiduciary, its officers, employees, shareholders, directors and agents, the Harneys Fiduciary Directors and any employees of Harneys Fiduciary authorised to act as bank signatories on demand against any losses, liabilities, costs, claims, actions, demands or expenses which it may incur or which may be made against any of them as a result of or in connection with the appointment or in the exercise of duties hereunder, except such as may result from Harneys Fiduciary's own wilful default, negligence, bad faith or failure to comply with its obligations hereunder, or that of its officers, employees or agents.

11.4 In relation to the Company's obligation to indemnify under Clause 3:

(a) the Company shall only be bound to indemnify the Harneys Fiduciary Directors under Clause 11.3 above if the Harneys Fiduciary Directors acted honestly and in good faith and, in the case of any criminal proceedings, the Harneys Fiduciary Directors had no reasonable cause to believe that Harneys Fiduciary Directors conduct was Unlawful;

(b) the termination of any proceedings by any judgment, order, settlement, conviction or the entering of a *nolle prosequi* does not, by itself, create a presumption that an Harneys Fiduciary Directors did not act honestly and in good faith or that the Harneys Fiduciary Directors had reasonable cause to believe that Harneys Fiduciary Directors conduct was Unlawful; and

(c) if the Harneys Fiduciary Directors have been successful in defence of any proceedings referred to in Clause 11.3, the Harneys Fiduciary Directors are entitled to be indemnified against all reasonable expenses, including legal fees, and against all judgments, fines and amounts paid in settlement and reasonably incurred by the Harneys Fiduciary Directors in connection with the proceedings irrespective of the provisions of Clause 11.4(a).

11.5 Harneys Fiduciary holds the benefit of Clause 11.3 on trust for the Harneys Fiduciary Directors. The perpetuity period of the trust shall be 80 years.

**12 RECORDS**

12.1 For so long as the Company is in existence and the Harneys Fiduciary Directors are serving pursuant to the terms of this Service Agreement, the Harneys Fiduciary Directors will:

(a) retain copies (electronically or otherwise) of correspondence of the Company;

(b) retain original documents sent to it to retain for the Company; and

(c) to the extent the Harneys Fiduciary Directors receives copies of financial statements, bank account statements or other information or documents relating to the Company, retain such information and records.

12.2 Such documents and records shall be destroyed 6 years after the termination of this Service Agreement unless the Harneys Fiduciary Directors believe that there are good commercial reasons

for not doing so, or if applicable law requires the documents and records to be retained for a longer period.

**13    ASSIGNMENT**

13.1    The Company may not assign or transfer of its rights and/or obligations arising under, out of or in connection with this Service Agreement to any other Person without the prior written consent of Harneys Fiduciary. No Party may create any security interest over its rights arising under or in connection with this Service Agreement.

13.2    Notwithstanding Clause 13.1 above, the obligations of the Party shall bind their legal representatives, assigns and successors.

13.3    Where a Party constitutes more than one person, their obligations under this Service Agreement are joint and several.

13.4    The benefits of the Company's agreements and obligations herein contained shall not be affected by any change in the composition of Harneys Fiduciary or its shareholders or in the identity of the Persons appointed by Harneys Fiduciary as Harneys Fiduciary Directors and shall be for the benefit of any successors or assigns of Harneys Fiduciary or the Harneys Fiduciary Directors.

**14    CONFIDENTIALITY**

14.1    Harneys Fiduciary may disclose any information relating to the business, finances and ownership of the Company or its directors and officers which it obtains in the course of acting under this Service Agreement with the consent of a director, officer or intermediary of the Company.

14.2    The Company accepts and acknowledges:

(a)    the obligations of Harneys Fiduciary and the Harneys Fiduciary Directors to make filings with and disclosure to the Registry of Corporate Affairs and other governmental and regulatory authorities of the British Virgin Islands pursuant to the provisions of British Virgin Islands law, including the Act.

(b)    that Harneys Fiduciary and the Harneys Fiduciary Directors may make disclosure to any request received from any overseas governmental or regulatory authorities which appears to be genuine and lawful.

(c)    the obligations of the Harneys Fiduciary and the Harneys Fiduciary Directors to comply with applicable anti money laundering legislation in the British Virgin Islands.

**15    EFFECTIVE DATE**

15.1    This Service Agreement shall come into force once it is signed by all Parties.

15.2    If the Harneys Fiduciary Directors are appointed or before the date this Service Agreement comes into force:

(a)    that shall be good and satisfactory discharge of Harneys Fiduciary's obligations to provide the Harneys Fiduciary Directors under this Service Agreement, and no Party shall argue

7

that any obligation under this Service Agreement has not been satisfactorily performed only on that basis, or that any such performance should be treated as past consideration; and

(b) the Parties agree that the relationship between them for the period between the appointment of the Harneys Fiduciary Directors and date this Service Agreement comes into force shall be regulated as if this Service Agreement had been in force from the date of appointment of the Harneys Fiduciary Directors, and their legal rights and duties to each other for that period shall be amended and restated on that basis.

**16  TERMINATION**

16.1  In addition to the termination rights set out in the Terms, the Parties shall be entitled to terminate this Service Agreement by giving not less than thirty (30) days' notice in writing to the other Parties to expire at any time.

16.2  If Harneys Fiduciary or the Harneys Fiduciary Directors becomes aware or suspects that the Company is involved in Unlawful activities, they:

(i) reserve the right to resign the directorship and/or immediately terminate this Service Agreement without prior notice to the Company;

(ii) will co-operate fully with law enforcement agencies in any part of the world; and

(iii) will not consider themselves bound by any duty of confidentiality to the Company.

**17  ENTIRE AGREEMENT**

17.1  Each Party acknowledges that, in entering into this Service Agreement, it does not rely on any statement, representation, assurance or warranty of any Person (whether a Party or not) other than as expressly set out in this Service Agreement.

**18  GOVERNING LAW & JURISDICTION**

18.1  This Service Agreement is governed by British Virgin Islands law.

18.2  The courts of the British Virgin Islands shall have jurisdiction to hear and determine any action, suit or proceeding, and settle any disputes, relating to this Service Agreement and each Party accordingly submits to the jurisdiction of the British Virgin Islands courts.

This Service Agreement is entered into the date first above written.

## SCHEDULE 1

**Contact details**

| | |
|---|---|
| **Company** | Craigmuir Chambers, Road Town, Tortola, VG 1110, British Virgin Islands<br>Telephone:+1 284 494 2233<br>Email: fiduciary@harneys.com |
| **Harneys Fiduciary** | Craigmuir Chambers<br>Road Town, Tortola, VG 1110<br>British Virgin Islands<br>Attn: Fiduciary Services<br>Telephone: +1 284 494 223<br>Email: fiduciary@harneys.com |
| **Luc A. Despins, solely as chapter 11 trustee for the chapter 11 estate of Ho Wan Kwok** | Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: 212 318 6001<br>Email: lucdespins@paulhastings.com |

**Harneys Fiduciary Directors**

| Name of director | Address/Details |
|---|---|
| Claire Louise Abrehart | Craigmuir Chambers<br>PO Box 71<br>Road Town, Tortola<br>British Virgin Islands] |

## SCHEDULE 2

**1 FEES**

1.1 The annual fee and hourly fee are:

| Annual Fee | US$ |
|---|---|
| per Harneys Fiduciary Director | US$20,000 |
| **Ancillary Fees (per request/transaction)** | **US$** |
| hourly rate | US$400 |

1.2 The annual fee and the hourly rate may be changed for any calendar year by written notice from Harneys Fiduciary to the Company before the beginning of that calendar year

**2 ANNUAL FEE**

2.1 The annual fee set out above shall be payable in respect of each calendar year or part thereof during which services are provided under this Service Agreement.

2.2 The first annual fee shall be payable pro rata in respect of the calendar year in which this Service Agreement is entered into and the annual fee for each subsequent year is payable in advance on or before 1 January in that calendar year.

2.3 The annual fee for the provision of a director will include:
 a) attendance at two (2) board meetings per year;
 b) review of financial accounts or financial statements of the Company and execution of supporting director resolution(s);
 c) up to twelve hours of chargeable time spent on Company matters.

The services provided by Harneys Fiduciary as registered agent and office will be charged separately and according to their current Schedule of Fees and general terms and conditions.

**3 TIME CHARGES**

3.1 The Company shall pay Harneys Fiduciary the hourly rate set out above for time spent which is not included in 2.3 of this Schedule 2.

3.2 The Company shall pay to Harneys Fiduciary all fees, costs and expenses (including legal fees) reasonably and properly incurred in connection with any work undertaken outside the scope of this Service Agreement.

**4 EARLY TERMINATION**

4.1 Harneys Fiduciary shall refund 50% of the annual fee, if the effective date of termination of this Service Agreement is prior to 30 June in each subsequent year.

## EXECUTION PAGE

The Parties have executed this Service Agreement on the day and year first above written

**Company**

Executed for and on behalf of ) *[signature]*
**Genever Holdings Corporation** )
by its sole shareholder ) (Luc A. Despins, solely as Chapter 11 Trustee for the Chapter 11 Estate of Ho Wan Kwok)

Date: Sept. 13, 2022

**HSCL**

Executed for and on behalf of )
**Harneys Corporate Services Limited** )
by its duly authorised representative )

Date: _____

Agreed and Acknowledged (for purposes of Section 6) by

**Chapter 11 Estate of Ho Wan Kwok**

Executed for and on behalf of ) *[signature]*
**Chapter 11 Estate of Ho Wan Kwok** )
by its chapter 11 trustee ) (Luc A. Despins, solely as Chapter 11 Trustee for the Chapter 11 Estate of Ho Wan Kwok)

Date: Sept. 13, 2022

**EXECUTION PAGE**

The Parties have executed this Service Agreement on the day and year first above written

**Company**

| | | |
|---|---|---|
| Executed for and on behalf of | ) | |
| **Genever Holdings Corporation** | ) | _____ |
| by its sole shareholder | ) | (Luc A. Despins, solely as Chapter 11 Trustee for the Chapter 11 Estate of Ho Wan Kwok) |

Date:  13 September 2022

**HSCL**

| | | |
|---|---|---|
| Executed for and on behalf of | ) | |
| **Harneys Corporate Services Limited** | ) | *[signature]* |
| by its duly authorised representative | ) | |

Date:  13 September 2022

Agreed and Acknowledged (for purposes of Section 6) by

**Chapter 11 Estate of Ho Wan Kwok**

| | | |
|---|---|---|
| Executed for and on behalf of | ) | |
| **Chapter 11 Estate of Ho Wan Kwok** | ) | |
| by its chapter 11 trustee | ) | (Luc A. Despins, solely as Chapter 11 Trustee for the Chapter 11 Estate of Ho Wan Kwok) |

Date:  13 September 2022