UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                          *   Case No. 22-50073 (JAM)
                               *
     HO WAN KWOK,              *   Bridgeport, Connecticut
                               *   September 6, 2022
                     Debtor.   *
                               *
* * * * * * * * * * * * * * *  *

            TRANSCRIPT OF MOTION FOR ORDER PROVIDING
            THAT CONTROL OF PRIVILEGES PASSED TO
              TRUSTEE UPON APPOINTMENT AND FOR
                       RELATED RELIEF
           BEFORE THE HONORABLE JULIE A. MANNING
               UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor,                ERIC HENZY, ESQ.
 HK International and          AARON ROMNEY, ESQ.
 Mei Guo:                      Zeisler & Zeisler, P.C.
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604


For the Creditor, Pacific      PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity     O'Melveny & Myers LLP
 Fund L.P.:                    Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               ANNECCA SMITH, ESQ.
                               Robinson & Cole
                               28 Trumbull Street
                               Hartford, CT  06103


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES:  (Cont'd)

For the Creditors Committee:  IRVE GOLDMAN, ESQ.
                              Pullman & Comley
                              850 Main Street
                              Bridgeport, CT  06601

For the U.S. Trustee:         HOLLEY CLAIBORN, ESQ.
                              Office of the United States
                                 Trustee
                              The Giaimo Federal Building
                              150 Court Street, Room 302
                              New Haven, CT  06510

For the Chapter 11            NICHOLAS BASSETT, ESQ.
 Trustee:                     Paul Hastings LLP
                              200 Park Avenue
                              New York, NY  10166

                              PATRICK R. LINSEY, ESQ.
                              Neubert, Pepe & Monteith, P.C.
                              195 Church Street, 13th Floor
                              New Haven, CT  06510

Chapter 11 Trustee:           LUC A. DESPINS, ESQ.
                              Paul Hastings LLP
                              200 Park Avenue
                              New York, NY  10166
```

1          (Proceedings commenced at 1:04 p.m.)

2                THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok.

4                THE COURT:  Good afternoon.

5                If we could have appearances for the record,

6     starting with the Chapter 11 Trustee, please.

7                MR. DESPINS:  Luc Despins, Trustee.

8                THE COURT:  Good afternoon.

9                MR. LINSEY:  Good afternoon, Your Honor.  Patrick

10    Linsey, local counsel for the trustee.

11               THE COURT:  Good afternoon.

12               MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

13    Goldman.

14               MR. BASSETT:  Good afternoon, Your Honor.

15               MR. GOLDMAN:  Oh.

16               MR. BASSETT:  Sorry.  Sorry, Your Honor.

17               THE COURT:  That's okay.

18               MR. BASSETT:  It's Nick Bassett, from Paul

19    Hastings, appearing remotely and thank you for allowing me

20    to do that today.

21               THE COURT:  You're welcome.  And good afternoon.

22               MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

23    Goldman, Pullman and Comley, representing the Creditors

24    Committee.

25               THE COURT:  Good afternoon.

1          MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

2     Claiborn for the U.S. Trustee.

3          THE COURT:  Good afternoon.

4          MS. SMITH:  Good --

5          MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

6     Peter Friedman, from O'Melveny & Myers, on behalf of PAX.

7          THE COURT:  Good afternoon.

8          MS. SMITH:  And Annecca Smith, of Robinson & Cole,

9     also on behalf of PAX.

10          THE COURT:  Good afternoon.

11          THE COURTROOM DEPUTY:  I'm sorry.  Could you

12     repeat your name?  I couldn't hear you.

13          MS. SMITH:  Annecca Smith.

14          THE COURTROOM DEPUTY:  Thank you.

15          MS. SMITH:  Thank you.

16          MR. ROMNEY:  Aaron Romney, Zeisler and Zeisler, on

17     behalf of the debtor, HK International, and Mei Guo.

18          THE COURT:  Good afternoon.

19          MR. HENZY:  Eric Henzy, Zeisler and Zeisler, for

20     the same three parties.

21          THE COURT:  Good afternoon.

22          MR. HENZY:  Good afternoon, Your Honor.

23          THE COURT:  Okay.  Today we're here on a few

24     matters, but the status -- I did get the agenda submitted by

25     the Chapter 11 Trustee, which I appreciate.

1     And if no one has any different view, I'd like to

2     proceed with the agenda.  And then there's a couple of minor

3     housekeeping matters from the Court's perspective before we

4     talk about -- more about the privileges issue.

5     And I know you both submitted an order that I

6     asked you to around noon or a little before and I, you know,

7     have looked at it for about 15 seconds so you'll have to

8     bear with me.  We did have hearings this morning.  But in

9     any event, we'll get there.

10    So, Mr. Despins, if you want to start with your

11    status conference report and then I can talk.  I just --

12    when you're done, there's two or three minor things that

13    came to my attention that I just need some confirmation from

14    the parties on after you're done with your presentation.

15    Okay?

16    MR. DESPINS:  Thank you, Your Honor.  May I

17    approach to give you --

18    THE COURT:  Please.

19    MR. DESPINS:  -- a hard copy of the --

20    THE COURT:  Yes.  Please.  Thank you.  You may

21    approach.  Thank you.

22    MR. DESPINS:  Good afternoon, Your Honor.  For the

23    record, Luc Despins, Chapter 11 Trustee.

24    We just wanted first to give the Court and the

25    parties in interest an update on Genever BVI.  Remember,

1    that's the holding company that owns the LLC that in turn

2    owns the apartment.

3            So the shares have been transferred.  I now hold

4    them as trustee. But there's one matter that we are taking

5    care of now which is we need to appoint a director for that

6    entity.

7            And the way it's done in the BVI is that there are

8    professional directors.  And we have that in the U.S. as

9    well where we pay them and that's their job.  And that

10   company that provides these services is an affiliate of our

11   proposed BVI counsel called Harneys.  So it's called Harneys

12   Fiduciaries.

13           And so we -- and we filed an application to retain

14   Harneys.  And I believe last week we filed a supplemental

15   declaration saying, oh, by the way, we're going to retain

16   these folks as, you know, professional directors.

17           And the issue I want to mention first is a

18   compensation issue.  We have to pay them 6,000 and change.

19   And they've agreed to defer all their other costs until --

20   their fees until we receive funding in this estate.  So

21   that's a very good thing, but we need to pay them 6,667.

22           There's a technical issue here, which we've

23   discussed with the U.S. Trustee.  Those folks, the director,

24   not those folks, there's one person who would be the

25   director is not providing legal services, is not being

1    retained by this estate.  It's being retained by the non-

2    debtor called Genever BVI.

3            The U.S. Trustee feels that nevertheless we should

4    file some kind of retention application that would cover

5    both Harneys as the lawyers and their affiliate as

6    directors.

7            I always hesitate to say that I disagree with the

8    U.S. Trustee, but I disagree with the U.S. Trustee on this.

9    But, nevertheless, there should be full disclosure of all

10   the connections that both have.

11           We've already done that for Harneys, the law firm.

12   That has not been done for Harneys Fiduciaries.  They're the

13   entity providing the trust, sorry, the director services.

14   We will do that just in an abundance of caution.

15           But we don't want -- and I've had the discussions

16   with the U.S. Trustee on this, we don't want our efforts of

17   full disclosure to be interpreted as us agreeing that, in

18   fact, they're subject to a disinterestedness standard.

19   Again, they're just acting as a director for a non-debtor

20   entity.

21           But I can't disagree with the concept that more

22   disclosure is always better, so we will supplement the

23   disclosure and refile this, you know, hopefully, you know,

24   tomorrow or something like that.

25           But I wanted to mention this to the Court because

1  that's something we need to go forward with to have that

2  director in place.  And so that's, you know, an update.

3          I don't know if the U.S. Trustee will want to be

4  heard about this, but that's really the issue at this point.

5          We've committed to them to provide full disclosure

6  on the director role in terms of their connection with the

7  case, although we think that that's not the controlling

8  standard, but we've agreed to do that.  So that's the update

9  on the director issue.

10          On page 2, there's another issue that's coming up.

11  I always say there's an issue every day in this case.  And

12  so we had the Labor Day Weekend so there was no issue every

13  day.

14          But Bravo Luck, you'll remember that entity that

15  is controlled or allegedly controlled by Mr. Kwok's son, has

16  sent a notice to reactivate the litigation pending in the

17  BVI that predates this case.  It's a litigation that

18  involves Mr. Kwok, Bravo Luck, PAX.

19          Because remember they were in state court trying

20  to get control of these shares, and so there was litigation

21  pending in the BVI over who owns the shares, with Bravo Luck

22  taking the position that they can rely on this trust

23  agreement and PAX arguing the opposite.

24          That litigation never really practically got off

25  the ground, but now they send a notice, you know, three or

1    four days ago, saying we want to reactivate this.

2              But the point we're making here is that we believe

3    that's a clear violation of the automatic stay.  To be

4    clear, this is Bravo Luck doing this.  And Bravo Luck is a

5    BVI entity, but they filed the claim in the New York case as

6    a creditor and they've appeared in that case and we believe

7    it's a violation of the stay.

8              And I would say on this stay tuned.  I think we

9    will need to deal with this sooner rather than later because

10   we can't just let this litigation, which is an issue that

11   Your Honor should decide, but -- go forward.

12             Moving on to page 3, update on other debtor

13   related entities.  You may remember, well, I know you

14   remember the UBS litigation.  And you always mention, well,

15   there are two other plaintiffs in that litigation.  And

16   those are not like third parties, they're entities

17   controlled by Mr. Kwok.  They're called Ace Decade and Dawn

18   State.

19             And if you read that 2020 complaint, which is

20   signed by Mr. Kwok, verified as to the facts by Mr. Kwok,

21   and verified as to the facts by a representative of Dawn

22   State and Ace Decade, it basically says that he owns first

23   Ace Decade.  He owns it.  And that the entity below it, Dawn

24   State, is controlled a hundred percent by Ace Decade.

25             So we sent a letter to Mr. Henzy last week saying

1    this is like Genever.  I want all the books and records.  I

2    want the stock transferred to us.  And we had asked for a

3    response by this morning.  We didn't get one.  And, you

4    know, I understand, you know, a holiday weekend, et cetera,

5    et cetera, but we need to take control of these -- of these

6    two entities.

7         There's no doubt that they are owned by Mr. Kwok,

8    because he said so and so did the representatives for these

9    two entities in the U.K. litigation that was sworn to in

10   2020, not in 2015, very recently in 2020.  So, you know,

11   we'll hear from the debtor on this.

12        But clearly that's an issue that needs to be

13   resolved because then I should have control of this.  And I

14   control all the plaintiffs in that litigation which would

15   really minimize a lot of issues going on with U.K. counsel

16   in that litigation.

17        Page 4, just to mention debtor's whereabouts,

18   we've been informed that Mr. Kwok has moved out of the

19   Sherry-Netherland.  This is where he had his GETTR feed

20   taping every day, sometimes twice a day.

21        And he's moved his personal effects out of there

22   and the furniture that he put in when he moved in 2015.  And

23   what they did is they moved in the furniture of the previous

24   owner that he had acquired as part of a -- of the

25   acquisition of the Sherry-Netherland.

1        I'm a little bit concerned about that, Your Honor,

2   because that could be an indication that he's leaving the

3   jurisdiction.  Mr. Henzy, you know, told me that no.  In

4   fact, that he's residing in Greenwich, Connecticut, so we'll

5   take that representation.

6        But the fact that he's moving out of the apartment

7   with his personal effects and the furniture could be another

8   sign.

9        And, you know, unfortunately, the Chapter 11

10  Trustee does not have an ankle bracelet program.  I'd love

11  to have that, but we don't have that, and we don't have a

12  LoJack, so we can't keep track of the debtor, but, you know,

13  we know we have the power and the Court has the power to

14  force the debtor to appear for examination.

15       So we may, in fact, use that to -- not only to

16  verify that he is still in the country, but also to verify

17  other issues such as Ace Decade and Dawn State.

18       Now moving onto page 5, the housekeeping matters,

19  I just want to remind Your Honor that right now this is --

20  we're now on the Lady May, you know, the action filed by the

21  Hong Kong entity or the subsidiary of the Hong Kong entity

22  to -- for a declaration that they own -- that that entity

23  owns the yacht.

24       The answer deadline was I believe the 29th of

25  August.  We moved to extend.  They opposed that.  Also there

1    was in theory a pretrial conference that was supposed to

2    take place.  We moved to adjourn that.  So that's pending.

3         I wanted to make sure Your Honor was aware of

4    that, that these requests and objections are pending and

5    there's no scheduled hearing.

6         THE COURT:  Let me take a look at that at the

7    moment because that might be one of the things that I was

8    thinking I needed to talk with you about.

9         MR. DESPINS:  Okay.

10        THE COURT:  There was -- I know one of the issues

11   was that -- I don't -- let me look before I say something

12   that's inaccurate.

13        (Pause.)

14        THE COURT:  So in the HK International adversary,

15   which is 5003, this is the adversary I wanted to talk about.

16   But I actually was not focusing on what you're saying, which

17   is that there's a motion for extension of time --

18        MR. DESPINS:  Correct.

19        THE COURT:  -- to respond.  Oh, no, no.  That was

20   PAX's.

21        But it appears to me that the debtor has

22   withdrawn, not the debtor, excuse me.  HK International, the

23   plaintiff, has withdrawn the adversary proceeding or

24   dismissed it, excuse me, as to PAX.  That I've seen.  Okay?

25        MR. DESPINS:  That's correct.

```
1              THE COURT:  And I think that's self-effectuating
2    under Rule 41, so I don't think there's anything that the
3    Court needs to do on that.
4              MR. DESPINS:  That's correct.
5              THE COURT:  Okay.  So with regard to --
6              MR. DESPINS:  Our motion to enlarge the time would
7    be docket 28, Your Honor.
8              THE COURT:  28.  And then the motion to continue
9    the pretrial conference.
10             MR. DESPINS:  Would be -- well -- and the
11   objection by the debtor was 31.  Then the motion to continue
12   the pretrial would be 32.
13             THE COURT:  Right.  Right.
14        (Pause)
15             THE COURT:  All right.  I have not -- I did not
16   see that objection yet, but I can -- I will definitely look
17   at that after we are concluded today in the matters today.
18             All that being said, let me just go back to one
19   other thing in this adversary proceeding that you're
20   speaking about.  I just want to make sure that I am
21   reviewing the right --
22             MR. DESPINS:  By the way, I misspoke.  The
23   pretrial was scheduled for September 13th, not for today.
24   My mistake.  But same concept.
25             THE COURT:  Yes.
```

1        MR. ROMNEY:  If I may?  The confusion on the date

2    may have been the pretrial order in that action.  The

3    parties' joint pretrial order would be due today unless the

4    Court grants the trustee's extension on that deadline, which

5    HK -- given the circumstances that there's an outstanding

6    motion for an extension of time, HK would not object to, in

7    any event, pushing out the date for the pretrial conference,

8    if that helps, Your Honor.

9        THE COURT:  Okay.  Thank you.  Thank you.

10        All right.  So then what I'm going to do is after

11    we're done with the more substantive matters that I think

12    we're going to address this afternoon, then I will look back

13    at this adversary proceeding and enter appropriate orders

14    with regard to the pending matters that are -- the pending

15    motions that are -- and the objection that you've just

16    pointed out to me, both of you, Trustee Despins and Attorney

17    Romney.  I'll take a look at that.  I have not --

18        MR. DESPINS:  Thank you.

19        THE COURT:  I have not had an opportunity to look

20    at that yet, but that won't take me long after we -- we're

21    completed today.  Okay?

22        MR. DESPINS:  Thank you, Your Honor.

23        Moving on to page 5, monthly operating reports,

24    the debtors are still -- are still in default of filing

25    their May, June and the first few days of July reports.  So

1    that needs to happen.

2              Then page 6, continuing failure to produce

3    documents. The debtor and HK counsel had made a

4    representation at the July 21st hearing that they would

5    provide books and records, for example, for HK

6    International.  There's a quote here in the report that's a

7    quote from the transcript.  Still haven't produced anything

8    regarding HK International and still haven't produced, you

9    know, hardly anything regarding the debtor's books and

10   records.

11             Next item is trustee's application to retain BVI

12   counsel. I've already addressed that.  That's scheduled for

13   September 27th.  But we will file a supplement to that

14   hopefully in the next 48 hours.

15             Page 7, just to mention that we have a status

16   conference in the Genever USA case before Judge Garrity,

17   currently scheduled for September 27th, but we're trying to

18   move that up because of the inability of some counsel to

19   attend.

20             Next, number 6, remember Paul Derecktor, the

21   expert. I had raised the issue and you had told me rightly

22   so did you talk to anyone about this and I said no.  So now

23   we did.

24             And the U.S. Trustee has agreed, and we appreciate

25   their flexibility on this, that we can expense that $2,500

1    and not file a separate application for the retention of Mr.

2    Derekctor as an expert.  This was a one shot deal.  He just

3    was there to come for the inspection with PAX's expert, so

4    he's not going to serve as an expert going forward.  If he

5    did, we would have to file a retention application.  So it's

6    just $2,500.

7           Ultimately, that's Your Honor's call.  But I

8    wanted to let you know that the U.S. Trustee had no

9    objection to that approach because -- and of course from the

10   cost point of view for us to file and prepare an application

11   would cost much more than the 2,500, so we would really love

12   to be able to dispense with that requirement.

13          Of course, there's no money in the estate now.

14   Well, there is -- I shouldn't say that --- there's $14,000

15   in the estate.  So we -- Paul Hastings, is fronting the bill

16   for that and will not be reimbursed from the estate until

17   there's a fee and expense reimbursement application, which

18   is not going to happen for a while until there is

19   substantial money in the estate.

20          THE COURT:  Okay.  I understand.

21          MR. DESPINS:  And the last point was scheduling

22   the next status conference.  We had mentioned -- we had

23   proposed September 21st and October 3rd, so I don't remember

24   -- we have never --

25          THE COURT:  September 21st is absolutely fine.

1          MR. DESPINS:  Okay.

2          THE COURT:  We can start at whatever time the

3     parties would like to start.  I mean, if you want to start

4     in the morning, you want to start at lunchtime, you want to

5     start in the afternoon, whatever anyone --

6          MR. DESPINS:  I think it's always good to start in

7     the afternoon in the event that we -- that other matters are

8     tagged on so people can -- from Washington, or Mr. Friedman,

9     for example.

10          THE COURT:  Is 1:00 p.m. a good time for everyone

11     for a status conference on the 21st?

12          Now, October 3rd is possible, but it's also

13     there's something scheduled that might need to change.  I

14     don't know yet, but --

15          MR. DESPINS:  Well, we can play that by ear then.

16     We can --

17          THE COURT:  Or if it's October -- yeah, we might

18     -- it might be more helpful honestly to do it on that week.

19     And I'm just looking, if you don't mind bearing with me for

20     a moment, the afternoon of October 4th.  If we started it at

21     1:00 p.m. on October 4, which is a Tuesday, not a Monday,

22     does that present problems to anyone?

23          MR. DESPINS:  Not for me.  But there are people on

24     the phone.  I don't know.

25          MR. FRIEDMAN:  Your Honor, if I'd be permitted to

1    attend remotely, that would be fine.  It's Yom Kippur.

2              THE COURT:  Oh.

3              MR. FRIEDMAN:  It is Yom Kippur that -- on the

4    4th.

5              THE COURT:  I'm sorry.  Okay.

6              MR. FRIEDMAN:  So as long as I can attend

7    remotely, that would be fine.

8              MR. DESPINS:  And, Your Honor, remember that our

9    goal is not to have those if we can dispense with them.

10             THE COURT:   Right.

11             MR. DESPINS:  So we will try our best not to have

12   them.  And then we need to cancel them if we're going to do

13   that or at least advise the Court that we won't require them

14   at least 24 hours before so Your Honor can cancel them if

15   you deem it appropriate.

16             THE COURT:  Attorney Friedman, what time are you

17   available until on October 4th?

18             MR. FRIEDMAN:  5:00.

19             THE COURT:  I would let you appear remotely, I'm

20   just asking what time.

21             MR. FRIEDMAN:  5:00 p.m., Your Honor.

22             THE COURT:  Okay.  So then why don't we set it for

23   noon on October 4th.  That way, in case there's some reason

24   that we have to spend time, it won't -- it will not take --

25   I mean, we won't run into your holiday, which obviously I

1    didn't realize it was -- I thought it was the next day, the

2    5th, so it's my mistake.  But we do have court hearings on

3    the 4th, but we have them in the morning.  So if we schedule

4    it --

5              MR. FRIEDMAN:  Thank you, Your Honor.

6              THE COURT:  -- at noon on October 4th -- and you

7    can, you don't have to file a request to appear remotely.

8    I'm granting that right now on the record.  Okay?

9              MR. FRIEDMAN:  Thank you.

10             THE COURT:  Okay.  You're welcome.

11             MR. FRIEDMAN:  Thank you, Your Honor.

12             THE COURT:  You're welcome.

13             And then we'll see what happens.  You know, if for

14   some reason everyone agrees there isn't a need for a

15   conference on the 4th, that's fine too, but let's schedule

16   it so it's a date that we have set aside.

17             May I -- may I ask a question before we get to the

18   substantive issues?

19             MR. DESPINS:  Of course.

20             THE COURT:  Okay.  So I guess I would ask Attorney

21   Henzy and Attorney Romney and Attorney Claiborn, so there

22   aren't any monthly operating reports for a few months. Is

23   that right?

24             Are we missing monthly operating reports did you

25   say?

1          MR. DESPINS:  For May and June and the first part

2     of July until the trustee was appointed.

3          THE COURT:  Okay.  So, Attorney Henzy or Attorney

4     Romney, have you -- what's your position with regard to

5     these monthly operating reports, because they need to be

6     filed?

7          MR. HENZY:  My position is they will be filed.

8     They have not been filed yet.

9          THE COURT:  Okay.  Well, I'm going to give you a

10    date by which you need to file them.  Do you have a

11    suggested date?

12         MR. HENZY:  I would like three weeks, Your Honor.

13         THE COURT:  Well, I don't know that I can give you

14    three weeks because they're overdue, at least the May and

15    June are well overdue.  And let me look -- let me look at

16    the calendar.

17         How about if you get, well, I will order you, the

18    debtor, to submit May and June by September 23rd.  And then

19    July -- when's -- August will be due on September 20, right?

20         MR. HENZY:  That's not the debtor that will be

21    filing that.

22         THE COURT:  Oh, you're right.  Only until the

23    date.  I'm sorry.  I'm thinking of the time frame the U.S.

24    Trustee uses.  But, you're right.

25         So May and June by September 23rd.  And then what

1    else do we need?  Do we need part of July, to July 8th,

2    right?

3              MR. DESPINS:  9th.  Yeah.

4              THE COURT:  9th?

5              MR. DESPINS:  Yeah.

6              THE COURT:  I'll give you that until the following

7    week, September 30.

8              MR. HENZY:  I would ask for September 30 for all

9    three, Your Honor.  Frankly, the issue we face is that the

10   Verdolino and Lowey firm was doing those operating reports.

11             THE COURT:  They were never retained officially

12   though.  Just so you know.

13             MR. HENZY:  I understand that.

14             THE COURT:  You weren't involved in that -- in

15   that.

16             MR. HENZY:  I understand that, Your Honor.

17             THE COURT:  Yeah.

18             MR. HENZY:  But they were doing the operating

19   reports.

20             THE COURT:  Okay.  I'm just -- I'm just --

21             MR. HENZY:  Yeah.

22             THE COURT:  I was only telling you that because

23   you weren't involved in the case and so I didn't know if you

24   were aware of that.

25             MR. HENZY:  I was aware of that, Your Honor.

1          THE COURT:  Okay.

2          MR. HENZY:  And as sometimes is the case, you

3     know, I or my office is going to have to take a very active

4     part in getting these operating reports done.  And, you

5     know, frankly, I have an extremely busy next couple of weeks

6     with other matters.  I have other clients.  And it would --

7     I'm concerned just about am I going to have time to get to

8     these in the next two weeks.

9          So I don't know that a week would make a

10    difference in the grand scheme of things.  It would make a

11    significant difference for me and for my workload this

12    month.

13         THE COURT:  Trustee Despins, do you have any

14    opposition to September 30?

15         MR. DESPINS:  That's fine, Your Honor.

16         THE COURT:  Okay.  We'll give you to September 30,

17    Attorney Henzy.

18         MR. HENZY:  Thank you, Your Honor.

19         THE COURT:  Okay.  But if he doesn't comply with

20    that, then we're going to have to address that issue.

21         MR. HENZY:  Understood, Your Honor.

22         THE COURT:  Okay.

23         MR. DESPINS:  Your Honor, then the last point is,

24    is the point I made before, you've already entered the

25    corporate governance order.  It's on appeal, but there's no

1    stay pending appeal under that order.

2            They're supposed to give us all the shares and the

3    documents regarding the entities they control. And these two

4    entities, Ace Decade and Dawn State, they've stated

5    unequivocally under oath that Mr. Kwok owns the first one

6    who then controls the second one.

7            You know, we would like a date by which they need

8    to comply.  There's already an order in place.  It's just a

9    question of making it clear that -- it's very clear it

10   applies to all such controlled entities and these are the

11   two.  And so we would like the Court to impose a deadline by

12   which they need to do that.  Thank you.

13           THE COURT:  Attorney Henzy?

14           MR. HENZY:  Thank you, Your Honor.

15           So just to give you the timeline, so the trustee

16   sent by email, me, a letter end of day this past Wednesday.

17   I was tied up on other client -- and by other client, I

18   don't mean other client matters, not other matters for Mr.

19   Kwok, but for other clients that I have all day Thursday.

20           I had long planned to take a long weekend,

21   including Friday, which I did, so I didn't change my family

22   plans to comply with the trustee's demand that by 10:00 a.m.

23   this morning that what they're asking be done.  I did not do

24   that.

25           I don't know right now that this issue is as clear

1    cut as the trustee is telling you that it is.  I can lay

2    eyes on what's in the UBS complaint and understand what's in

3    the complaint, but I don't know that the issue is as simple

4    as what the trustee is telling you.

5          I think I'm going to have to interface with U.K.

6    counsel to understand why what's in the complaint is in the

7    complaint and what -- how that came to be.  I don't know how

8    long that is going to take.  And you certainly -- of course,

9    Your Honor, you can impose a deadline, but I'm not going to

10   agree to a deadline because I just -- I do not know the

11   facts here and I don't know how long it's going to take me

12   to drill down on the facts.

13         You know, I'm going to move with all due speed,

14   but I just -- I don't know how long it's going to take me to

15   understand all of the facts.

16         And I'm not going to advise Mr. Kwok to sign

17   documents when I don't know that the documents being

18   proposed are appropriate or they're the correct documents,

19   how they might impact the U.K. litigation.  I don't know any

20   of those things right now.

21         So I'm -- again, I'm going to look into it.  I'm

22   going to work on it.  I'm going to move with all due speed,

23   but I don't know how long it's going to take me.

24         MR. DESPINS:  Your Honor, Mr. Kwok knows if he

25   owns this company or not.  Actually, he swore to it and so

1    did the representatives from these two entities.  The U.K.

2    counsel has no involvement in this.  And the impact on the

3    UBS litigation is irrelevant.

4            The question is today who is the owner of that

5    entity?  We have a sworn statement, 2020.  Unless he's going

6    to come in and say I transferred it and then obviously we'd

7    want to know to who he transferred it, that's a sworn

8    statement by all of these entities.  It doesn't take more

9    than four or five days to figure that out.  Thank you.

10           THE COURT:  May I just ask --  I don't -- I am not

11   certain if the UBS complaint is on -- in the record of this

12   case.  Is it in the record of this case somewhere?

13           MR. HENZY:  I think that either I or the trustee

14   attached it to --

15           THE COURT:  To the issue of the governance motion

16   or to the privileges motion?

17           MR. HENZY:  I don't think it would have been the

18   privileges motion, Your Honor.  I think it may have been the

19   governance motion.  I'm highly confidant that one of us --

20           THE COURT:  Okay.

21           MR. HENZY:  And I don't think either of us --

22           UNIDENTIFIED:  It might have been the motion to

23   stay somewhere --

24           MR. DESPINS:  No, it was before that.

25           MR. HENZY:  Yeah.  I know we --

1          THE COURT:  Okay.  All right.  That's what --

2          MR. HENZY:  I believe we have absolutely, yeah,

3     put it --

4          THE COURT:  I just wanted -- I need to take a look

5     at it obviously.

6          MR. HENZY:  Yeah.  Yeah.  Yeah.

7          THE COURT:  And I'm not going to do anything

8     today, Mr. Despins, with regard to Ace Decade and Dawn

9     State, but I'm going to look after we're done with our

10    hearing today to see what's in the record of this case and

11    then determine what steps will be taken and if a deadline

12    will be set to -- and it's likely that it will be, but I

13    don't know that until I review everything, after I review

14    what's in the record of this case.  Okay?

15         MR. DESPINS:  Yes.  And just to save Your Honor

16    time, in the -- there's a -- something called Particulars of

17    Claims, well, that's a complaint by U.K. standard.  Page 1,

18    paragraph 2, it says Ace Decade was incorporated in June

19    2014 and acquired by Mr. Kwok on or about November 10, 2014.

20         And then paragraph 3 talks about -- and 4 talks

21    about the fact that Dawn State was acquired by Ace Decade in

22    September of 2015.

23         And if you go to the last page, on page 38, this

24    is where the second claimant and the third claimant, meaning

25    Ace Decade and Dawn State, swear that all the facts in the

1   particular claims are true and that proceedings for contempt

2   of court may be brought against anyone who makes or causes

3   to make a false statement in a document verified by a

4   statement of a truth.

5           And on page 37, there's a signature by Mr. Kwok,

6   and 38, the other two entities have signed.  So just to save

7   Your Honor some time.

8           MR. HENZY:  Just to save -- by -- it's another

9   status conference where we're putting evidence into the

10  record.  But, Your Honor --

11          THE COURT:  Well, I don't agree with that though.

12  The only thing I'll say, Attorney Henzy, is I don't agree

13  that's evidence putting in the record.  If the complaint is

14  in the record, then all Mr. Despins is doing is pointing to

15  me where it is.

16          MR. HENZY:  Understood.

17          THE COURT:  So I'll get there.  We'll get there.

18          MR. HENZY:  And, Your Honor, so we're talking

19  about -- the complaint refers to something that happened

20  seven years ago.

21          I've been told -- I don't -- I haven't done any

22  diligence on this, Your Honor, so I want to be very careful,

23  okay, that at some point that got changed at the insistence

24  of UBS in connection with this transaction.  I don't -- I

25  don't know if that's true.  I don't know anything.

1                THE COURT:  I understand.

2                MR. HENZY:  But I need to do some diligence.

3        Okay?  Again, I know what's in the complaint.  I put eyes on

4        it and I can read so I know what's there, but I don't know

5        today that Mr. Kwok is the -- is the owner of this entity.

6        And I'm not going to have him, you know, sign a document

7        that's not -- that's not an appropriate document.  That's

8        all.

9                THE COURT:  And I'm not making any ruling that you

10       have to do anything today.

11               MR. HENZY:  Understood.

12               THE COURT:  I have to look at what's in the record

13       of this case.  And I will do that.  And then I will

14       determine what next steps need to happen --

15               MR. HENZY:  Thank you, Your Honor.

16               THE COURT:  -- with regard to that issue.  Okay?

17               MR. HENZY:  Thank you, Your Honor.

18               THE COURT:  All right.  Now, let me just make sure

19       that there is nothing else that I thought I needed to

20       address as far as a housekeeping side of the equation.

21               But I think the only thing that is not -- has not

22       been addressed, other than the motion that we're here for on

23       today, which is a different issue, is the status of the

24       extensions motions and the objection in that -- in the HK

25       adversary proceeding.  So that's -- is there something else

1    on the house --

2            MR. HENZY:  I would like to be heard on a couple

3    of points in the status report, Your Honor.

4            THE COURT:  Sure.  Go right ahead.

5            MR. HENZY:  Thank you.

6            Your Honor, on the page 2 on the update on Genever

7    BVI, the debtor has done everything he was asked or required

8    to do.  What happens with that now is not the debtor's

9    problem or my problem.

10           I will point out -- and Bravo Luck is very well

11   represented and they'll take whatever position they take if

12   and when the trustee decides to take action on some asserted

13   violation of the automatic stay.

14           I will point out that in connection with the

15   corporate governance motion, I think both in pleading and in

16   open -- statement in open court, the trustee represented

17   that he had no intention to and he would not interfere or

18   seek to change the settlement order that Judge Garrity

19   entered in the Genever BVI Chapter 11 case in the Southern

20   District of New York.

21           That order expressly contemplates that this

22   equitable ownership issue would be resolved either in the

23   pending New York State Court action or in litigation in the

24   BVI.

25           Now, that -- I suppose both things could be true,

1    that there's an order from Judge Garrity that contemplates

2    that this is going to get resolved in litigation in the BVI

3    or in New York State Court, and the trustee can make a claim

4    that -- to do that, to do what's contemplated under Judge

5    Garrity's order, constitutes a violation of the automatic

6    stay.

7          But I do think it's important to point out that

8    that -- Judge Garrity did enter that order and the trustee

9    here expressly said that he was not planning or intending to

10   interfere with the operation of that order, or at least

11   that's what I understood that he said.

12         Your Honor, on the debtor's whereabouts, it's hard

13   to respond when what the trustee says to you is he has been

14   informed.  I have no idea what the source of his information

15   is.  I don't know if he's having someone spy on the debtor

16   or he's just sort of asking around.  I don't -- I don't know

17   where that information comes from.

18         To be clear, you know, I haven't -- I'm not going

19   to, I can't represent or vouch for where the debtor is

20   living.  I'm not -- I'm not tracking the debtor around.

21         What I told the trustee, and I'll state in court,

22   is that Mr. Kwok's residence right now is, his legal

23   residence, is at his wife's home in Greenwich.  That is the

24   basis for the case being here.  That's what he said in a

25   sworn statement.

1    He does spend some number of days or nights, I've

2    been told it's four or five, at the Sherry-Netherland in New

3    York.

4    I have no information, okay, and I have inquired

5    and I have been told, that he hasn't -- he may have moved

6    some personal possessions from the Sherry-Netherland to the

7    house in Greenwich.  I don't know.  But I guess my reaction

8    to that is so what?

9    I don't think that there's anything in the

10   bankruptcy code or bankruptcy rules or anything else I'm

11   aware of that says because you're a debtor in a bankruptcy

12   case that you can't move personal possessions or you can't

13   sleep in a different bed some number of nights in a month.

14   I have no information.  I have no reason to

15   believe Mr. Kwok is somehow fleeing the jurisdiction or

16   fleeing the country.

17   I think that if Mr. Despins is going to continue

18   with the attempts to sort of smear or make Mr. Kwok look

19   like a bad guy or he's doing something sinister or he's

20   doing something wrong, that he -- on something like this

21   where he's got to come in and say to you he's concerned Mr.

22   Kwok is fleeing the jurisdiction or he's leaving the

23   jurisdiction and he's going to be outside of the

24   jurisdiction of this court, that he really needs to do

25   better than that.  He has been informed.

1          I think he should come in and tell the Court

2     here's my source of information.  There's some concrete,

3     hard information, so that I maybe -- can actually go back

4     and talk to my client or I can actually have something to

5     respond to.

6          But right now his official residence, his legal

7     residence, is his wife's home in Greenwich.  And he does

8     spend some number of nights per month at the apartment at

9     the Sherry-Netherland.

10         On the production of documents, Your Honor, this

11    is -- this is -- the statement was by Mr. Kindseth, not by

12    me, the statement that's quoted, so I, you know, I don't

13    remember this.  Mr. Kindseth --

14         THE COURT:  What page are you looking at?

15         MR. HENZY:  I'm on page 6 where he has a two-

16    paragraph quote about -- I believe -- I hope I didn't say

17    this, Your Honor, because I don't remember saying it.  And I

18    am getting older, but I think I would remember this, I hope.

19    But Mr. Despins just said to me it was Mr. Kindseth.

20         But I would expect that what he was referring to

21    on the HK International piece of it was -- the assumption is

22    that HK International is going to get a subpoena.  And, in

23    fact, I think it has gotten a subpoena, right?  Yeah.  I

24    mean, it's been served with a subpoena.  It's going to

25    produce documents pursuant to a subpoena.  I don't know that

1    there was ever an intention that we're just going to just

2    produce documents outside of a process.

3            On Mr. Kwok, again, I haven't been in the middle

4    of that, but I know that we have gotten documents and we

5    have forwarded those documents.  At issue may be, not that

6    documents were being withheld, I think the issue is that

7    that's the documents that are in Mr. Kwok's possession.

8            Whether there should be more documents in his

9    possession maybe is a question.  But I think -- I'm going to

10   go back and check and make sure the documents that are in

11   his possession or that he has control of have been produced,

12   but I think anyway that that is what is happening.

13           There's not been an intention to just withhold

14   documents that he has access to or possession of or control

15   over.  So thank you, Your Honor.

16           THE COURT:  Thank you.

17           MR. DESPINS:  Your Honor, very briefly.

18           First, on the Sherry-Netherland, I never said that

19   -- the only thing I said is that I wouldn't stop the sale of

20   the apartment.  And the sale is done pursuant to that

21   stipulation.  And that's perfectly all right.

22           That stipulation does not contain an agreement by

23   anyone to that stipulation that matters will be tried in the

24   BVI.  There's a reservation of rights in paragraph 7(b) of

25   that stipulation that says that nothing herein shall

1  preclude people from doing that.

2          By the way, that's an order that was entered pre

3  this bankruptcy, so it has no binding affect on this court.

4  But I want to be very clear there's no agreement in that

5  order that matters will be litigated in the BVI.  There's a

6  reservation of rights.

7          Mr. Friedman was a party, well, not himself

8  personally, but PAX was a party to that stipulation and

9  order so he can speak to it, but it does -- there's no

10  agreement to litigate in BVI.

11          And, in fact, it says that it can be litigated in

12  the bankruptcy court.  At that time, the bankruptcy court,

13  there's only one, that was the one in New York.  But, again,

14  that's a pre-petition order.

15          And the only thing I've said is that I am not

16  going to try to stop the sale of the Sherry-Netherland.  So

17  that's -- I want to be clear about that.  Thank you, Your

18  Honor.

19          THE COURT:  Thank you.

20          MR. FRIEDMAN:  Your Honor, may I be heard for a

21  moment?

22          THE COURT:  Yes.  Go right ahead.

23          MR. FRIEDMAN:  It's Peter Friedman on behalf of

24  PAX.

25          I think this highlights that there needs to be a

1    resolution of this issue regarding the BVI.  Obviously,

2    trustee's position that Bravo Luck is in violation of the

3    automatic stay which kind of puts PAX in an extremely

4    difficult position.  It does not wish to violate the

5    automatic stay, but it can be prejudiced if someone is

6    pursuing claims against it in the BVI.

7         I'll note that obviously we're in a very different

8    situation now.  The claims that PAX is asserting, you know,

9    are claims that Mr. Kwok owns an asset, which makes the BVI

10   also a difficult place to litigate this claim because

11   they're really claims for which the cost ought to be borne

12   by the estate as a whole, not PAX.  And PAX really, you

13   know, does not want to be in a position where somebody

14   accuses it of pursuing claims that are really estate claims.

15        And, you know, that puts -- for both of those

16   reasons, we would just urge the trustee to come to a

17   resolution very quickly of how it is going to bring those

18   claims into an appropriate forum so that, again, PAX isn't

19   required to incur costs.

20        PAX isn't in a position where somebody is going to

21   assert (indiscernible) violating the automatic stay either

22   under, you know, trying to pursue claims that belong to the

23   estate or interfering with assets of the estate.  So we

24   really think it's imperative this gets addressed quickly.

25        We agree on both counts with Mr. Despins that we

1    don't think that there is a specific place agreed to as to

2    jurisdiction over claims resolving ownership of the Sherry-

3    Netherland.

4         And, again, we also agree that it was a

5    stipulation agreed to where at least, in our view, in the

6    Genever New York case you really had a faceless debtor that

7    had no interest in serving as a neutral fiduciary, which

8    forced PAX into asserting claims that we now I think are

9    hopeful and believe that we have a fiduciary trustee in

10   charge of the Genever estate that's able to pursue claims or

11   defenses to claims in a true debtor capacity.  So we

12   shouldn't have to be in the middle of that.

13        THE COURT:  Understood.  Thank you.

14        MR. FRIEDMAN:  Thank you, Your Honor.

15        THE COURT:  Does anyone else wish to be heard on

16   the issue of the cause of action that we've just been

17   speaking about?

18        (No response)

19        THE COURT:  Okay.  I note Attorney Friedman's

20   concerns and I know parties will take all appropriate

21   actions they deem necessary and we'll -- Court will address

22   them in due course.

23        Right now there's nothing in front of me that is

24   -- that I would need to act upon.  But I understand that one

25   of the reasons we have these status conferences is to not

1    only update where things stand in the case as a whole, but

2    also to highlight issues that may be coming forth to the

3    Court.  And so I think that's appropriate.

4           Parties will file whatever they think is

5    appropriate and there will be an opportunity to object and

6    be heard on all of those issues.  So we'll continue to

7    proceed in that manner.

8           With regard to existing orders, again, we'll see

9    where things stand.  But I did say and I would -- I did say

10   that I would go back and look at -- I think it's in the

11   record, and both counsel for the debtor and the trustee

12   believe it is, the UBS litigation complaint or bill of

13   particulars.  I forget what you said it was called, Trustee

14   Despins.

15          Obviously, I haven't looked at it, but I'll look

16   at that and we'll see where things stand.

17          We're going to have another status conference on

18   September 21st, which is not that far away.  And we will,

19   you know, people may file things before that conference, and

20   there may be things that get added to that conference that

21   actually get heard or not.  We'll have to -- we'll have to

22   see.  But I understand the positions of the parties.

23          Before we turn to the substantive motion that we

24   continued to -- that was continued until today, in which you

25   both filed orders on, there's one matter that I -- it is

1    housekeeping from the Court's perspective, but it's an

2    important housekeeping.

3            Again, I know I've said this to all the parties

4    that have been involved in the case from the start, and

5    you're probably tired of hearing it, but because the Court's

6    record, official record, is audio and because there are

7    appeals pending, I think it's important to make sure that

8    the transcript is accurate.

9            In the August 4th transcript of the hearing of the

10   governance motion, which Attorney Henzy has filed a notice

11   of appeal, I've found some things in that transcript that I

12   -- you know, may seem insignificant to all of us, but when

13   you have a district court reviewing the case and know

14   nothing about it, I think the transcript needs to be

15   accurate.

16           So long story short, in the next day or two, I'll

17   submit on the record, you know, the errata sheet that we

18   think has issues.  You all have a time to respond.  And then

19   we'll get that worked out.

20           Because, as you know, in this case, there's

21   already been, you know, a situation where the transcript was

22   inaccurate and it had a substantive effect of being

23   inaccurate.  And I just -- I don't -- I'm not going to

24   proceed to allow a transcript to go forward.

25           And it's not anyone's fault by the way.  The court

1    reporter who transcribes can only do what she can do -- it

2    happens to be a she in this case -- when she hears what she

3    hears.  It's an audio, you know, so she does the best she

4    can.  But I want the transcript to be accurate.

5          So, in any event, that will be coming for all of

6    you to take a look at.  Okay?

7          For example, there's places where somebody cites

8    to Section 353.  There is no Section 353.  I mean, it was

9    obviously a cite to Section 363.  None of us may think

10   that's relevant, but it could be relevant to a district

11   court judge.  And so I want that to be corrected.

12         So I don't know if anybody has any questions about

13   that, but that's what I'm going to do.

14         MR. DESPINS:  Yes, Your Honor.  And I'll state

15   outright that I'm the first violator of that rule.  So, Luc

16   Despins, Trustee, for the record.

17         The transcript often misstates who is talking.

18   Like they would say Mr. Skalka was talking, but it was Mr.

19   Kindseth or vice -- well, no --

20         THE COURT:  Well, you can make all those

21   corrections.  See I don't always pick up on that issue, but

22   I appreciate that you're saying that.  I think that should

23   be clear.

24         MR. DESPINS:  But my point is that I think we need

25   going forward to always either --

1          THE COURT:  Say your name when you speak.  Yeah.

2          MR. DESPINS:  Every time, because otherwise we're

3     going to create this --

4          THE COURT:  I mean, that's the problem.  It is the

5     problem from the bankruptcy court's perspective.  We're not

6     allowed -- the budget of the Congress does not allow us have

7     a transcriber in the courtroom and so it's the audio

8     recording.

9          So I understand what you're saying.  And I do

10    think that in this case, you know, from the beginning of

11    this case, we asked the debtor's prior counsel to submit a

12    list of names just to get the names right in the transcript.

13    That happened.

14         People may think this is overkill.  And if you do,

15    I'm sorry, but I respectfully disagree with you because the

16    district court has no idea when they get this case.  And

17    they're going to read the words the way that the words are

18    transcribed, even if that is inaccurate.  And it's not

19    inaccurate on purpose.  At least I don't find that it is.  I

20    just think we need to be clear.

21         So, in any event, you'll see something in the next

22    day or two which will give you all time to review and make

23    whatever changes you feel should be made to the transcript

24    as well.

25         Okay?  Does anybody have any questions about that?

1          (No response)

2                 THE COURT:  Okay.  All right.

3                 So before -- I was in a hearing at noon.  And I

4     know that the parties submitted -- when I say the parties,

5     the Chapter 11 Trustee and counsel for the debtor,

6     submitted, as I asked you to do, orders regarding the motion

7     that I would call the, you know, privilege control motion

8     for lack of a better moniker.  We can just call it that.

9                 And we had an argument on it last week.  Each

10    party made their arguments.  Attorney Romney did for the

11    debtor and Mr. Despins and Mr. Bassett for the Chapter 11

12    Trustee.

13                I haven't had a real chance to study all this.

14    Okay?  I did -- I have it in my hands.  I have what was

15    filed by the Chapter 11 Trustee at 11:41, and then what was

16    filed by the debtor at 11:51.  I haven't looked at them to

17    see how they overlap or anything.  Although I think the

18    Chapter 11 Trustee tried to show me that.

19                But I don't know, Mr. Romney, did you happen to

20    look at what the Chapter 11 Trustee submitted in?  Is that

21    accurate?  I think it would be Exhibit C to the Chapter 11

22    Trustee's order.  Is that the order that you've submitted?

23          MR. ROMNEY:  Yes.  Aaron Romney, Zeisler &

24    Zeisler, on behalf of the debtor.

25                I looked at it very quickly and I believe there is

1    only one discrepancy between the redline submitted by

2    counsel for the trustee and that which we ended up filing.

3           To be clear, through absolutely no fault of

4    counsel for the trustee, there was just one addition made

5    due to time constraints.

6           It was sent over to counsel for the trustee

7    shortly before their document was filed or potentially

8    moments after it was filed, shortly before ours was filed.

9           But the one discrepancy between the redline

10   submitted by the trustee and what the debtor actually

11   submitted at docket number 824 is that docket number 24

12   [sic] has a new paragraph which is now paragraph 11, so the

13   final paragraph before the retention of jurisdiction.

14           THE COURT:  Okay.

15           MR. ROMNEY:  Which that paragraph states, just for

16   the record, and, again, this is the debtor's proposed

17   language, nothing herein shall purport to impact the rights

18   of any holder of a joint or common interest privilege along

19   with the debtor or the counsel of any such holder to assert

20   its rights with respect to such joint or common interest

21   privilege.

22           THE COURT:  Okay.  And now with regard to that

23   language, which I don't know what the trustee's position is

24   yet, but I'll ask them in a minute, Mr. Romney, are you

25   saying to the Court -- I just want to make sure because, you

43

1    know, we haven't talked about this yet today -- that the

2    debtor is prepared to agree that the order submitted at 824,

3    ECF 824, can enter with regard to the privilege motion?

4           MR. ROMNEY:  That is correct, Your Honor.

5           THE COURT:  Okay.  All right.  I just want to -- I

6    just want to be sure.  Okay.

7           So, Trustee Despins, did you happen to see, or Mr.

8    Bassett, did you happen to see the paragraph 11 that Mr.

9    Romney just talked about on the record that was added to the

10   order he submitted, or I don't know if he submitted, but was

11   submitted on behalf of the debtor at ECF 824?

12          MR. BASSETT:  Your Honor, it's Nick Bassett from

13   Paul Hastings on behalf of the trustee for the record.

14          I just pulled that up so I do see it.  I do see it

15   now.

16          THE COURT:  Do you all need time to talk about

17   that?  Or do -- you mean, you haven't seen it.  I don't

18   think that you've had time to think about it.

19          I have another question regardless of all this,

20   but I do appreciate the parties have made some progress

21   given what we talked about last week.

22          Attorney Romney, you feel that this order

23   addresses some of the concerns that you raised during the

24   hearing last week, correct?

25          MR. ROMNEY:  Yes, Your Honor.  Aaron Romney.

1          I agree with your perception, Your Honor, that

2     both sides put forward a genuine effort.  I don't think that

3     either side -- either proposed order submitted by either

4     party, well, certainly speaking for myself, is not the

5     debtor's wish list.  It's not our ideal order on this issue,

6     but we did make genuine efforts to get to narrow the issues.

7          There are still some differences, potentially

8     relatively substantial ones, but the parties -- the parties

9     are closer together.  And I think they've gone -- they've

10    gone as far as I think each was prepared to go in the spirit

11    of compromise.

12         I will represent to the Court that as late as

13    approximately 7:30 last night Attorney Bassett, Attorney

14    Linsey and myself were on the phone putting our heads

15    together in what I perceived to be genuine efforts to get

16    closer.

17         But as Your Honor will see from the redline and

18    from reading the orders, there are some -- there are some

19    substantive differences between the parties' orders.

20         THE COURT:  And the reason I asked the question is

21    are there -- and from -- and the trustee may disagree with

22    you, Mr. Romney, but I want to understand from the debtor's

23    perspective, are there substantive issues in the motion then

24    you believe are still unresolved even if ECF 824 were to

25    enter?

1          MR. ROMNEY:  I want to make sure I'm speaking and

2     articulating myself correctly.

3          THE COURT:  Go ahead.

4          MR. ROMNEY:  The debtor consents to the entry of

5     824 if that answers your question.

6          THE COURT:  No, it doesn't.

7          MR. ROMNEY:  Then I --

8          THE COURT:  My question is when you -- and, again,

9     I'm not saying this is easy, right, but you raised a lot of

10    issues last week in opposition to the trustee's motion to

11    have an order enter saying he owns all the privileges,

12    right, that's what the -- that's what the motion is.  You

13    raised a lot of issues with regard to that.

14          I asked the parties, and you obviously did, and

15    the Court appreciates it, to spend time reviewing those

16    issues, as you're obligated to do.

17          And so what I need to understand is if this order

18    enters, 824, are you still going to be arguing about

19    privileges?  That's what I need to understand.  And what --

20    and on what basis?  Right?  Because then there has to be

21    some kind of a ruling.  That's what I'm trying to figure

22    out.

23          MR. ROMNEY:  Correct.

24          And so with respect -- if docket number 824

25    entered, the only remaining outstanding issues -- and I --

1    speaking from my own perceptions, I believe this would be

2    true if docket number 823 entered too.

3           There could still be disputes as to whether a

4    particular document fell within a -- within a scope of what

5    was ordered as retained by the debtor versus transferred to

6    the trustee.  It wouldn't eliminate all of the issues.

7           And I don't think it's possible for this court,

8    given the applicable standard of a balancing test, to enter

9    an order that would preclude disagreements as to which

10   bucket something dropped into.  And I think the Court would

11   need to resolve those issues as they arose.

12          What I can say from my perception, and it's under

13   the assumption that all of the professionals who received

14   the subpoenas will do their best to both fulfill their duty

15   to their clients and comply with the order and in good faith

16   attempt to apply it, I think it will substantially reduce

17   the amount of discovery disputes that would -- that would

18   occur going forward because everyone would have a standard

19   to apply, as opposed to a body of law that has different

20   standards.

21          So does that sense, Your Honor?

22          THE COURT:  Yes, it does to an extent.  It makes

23   sense to a large extent.

24          But there's still the issue of from the debtor's

25   perspective are there issues raised in the trustee's

1    privileges motion that you believe that the Court has to

2    rule on at this time?  Assuming one of these orders enters.

3           MR. ROMNEY:  I believe that if docket number 824

4    entered that the debtor's proposed trustee -- that it would

5    address the issues raised in the trustee's motion as well as

6    the debtor's objection.

7           Again, not in a manner that either party would

8    prefer it to be, or certainly not the debtor's ideal, but in

9    the interest of, you know, understanding that there are

10   varying authorities.

11          And, yes, there would be no more issues that I can

12   identify raised by the trustee's motion and the debtor's

13   objection insofar as the debtor certainly is not going to

14   argue that this order would not be applicable.  And I

15   believe it covers the issues raised in the trustee's motion

16   and the debtor's objection.

17          THE COURT:  Okay.  I understand what you're

18   saying.

19          Mr. Despins, do you have anything you want to say

20   with regard to Mr. Romney, what -- the questions I asked Mr.

21   Romney?  Do you have any different opinion?

22          MR. DESPINS:  Mr. Bassett will handle that.

23          THE COURT:  Mr. Bassett.  I'm sorry.  Go ahead.

24          MR. BASSETT:  Your Honor, again, it's Nick Bassett

25   from Paul Hastings for the Chapter 11 Trustee.

1          I guess from the debtor's perspective the order

2     that we believe the Court should enter is the order that we

3     filed, docket number 823, Exhibit A.

4          I think -- I think I agree with Mr. Romney that to

5     the extent an order -- to the extent that order is entered,

6     that grants the trustee the relief that he is seeking on

7     this motion.

8          However, I also agree that, you know, there could

9     be privilege issues down the line that the Court still needs

10    to consider.  I think those could fall into one of two

11    buckets.

12         You know, the purpose of this order and the motion

13    that we filed is to obtain a ruling from the Court as to the

14    scope of the privileges over which the trustee now has

15    control and, therefore, the debtor is not entitled to assert

16    in responding to discovery.

17         That includes any privileged communications

18    related to assets of the estate, to the debtor's financial

19    condition and to matters involving the post-petition

20    administration of the estate.

21         So it's possible if the -- if the debtor were to

22    respond to our subpoena by listing on a privilege log

23    documents that fall into one of those buckets, then we would

24    have to come back to the Court and I think that would be a

25    violation of this order and we would have to seek to enforce

1    this order because this order is designed to prevent the

2    debtor from doing that.

3           Another bucket I think that could exist that could

4    generate future disputes as to privileged communications is

5    that, as we've made clear in our order, you know, there are

6    carve outs designed to address specifically the concerns

7    that the debtor has raised concerning privileged

8    communications that relate to criminal allegations that have

9    been made against him or that relate to his asylum

10   application.  And I'm happy to and I'm prepared to walk

11   through our changes in more detail.

12          But, again, if the debtor were to assert a

13   privilege over those documents on a privilege log, then we

14   could be back before the Court disputing those privileges

15   because the point of the order is to reserve all rights with

16   respect to those privileges.

17          It could be that the debtor asserts a privilege

18   over criminal allegations. Then, you know, we would argue

19   that there's a crime fraud exception and we would otherwise

20   argue that the document is just not privileged.  So that

21   could be back before the Court.

22          But to answer the Court's question, if this order

23   is entered, it does resolve what we are asking the Court to

24   do today.

25          And, again, Your Honor, what we filed was a copy

1    of our revised proposed order, a redline to the initial

2    order that we had filed with the motion, a redline to Mr.

3    Romney's proposal subject to the new paragraph 11 that he

4    mentioned.

5            And then at the end to the extent it would be

6    helpful as we walk through issues that we have with the

7    debtor's changes, we have an annotated version of their

8    proposed order that I could walk through.

9            So I'm happy to -- I'm happy to walk through our

10   changes as they appear in the redline against the order as

11   filed.  I'm also happy to just address the differences

12   between our order and the debtor's order.  I'm also happy to

13   answer any questions.  I'll proceed however Your Honor would

14   like.

15           THE COURT:  Well, when I looked -- as I said to

16   you, to both you and Mr. Romney and everyone else, I've

17   looked at this very quickly.  Okay?  Understandably.

18           I mean, I asked you to file it by noon and you did

19   that.  Unfortunately a hearing at noon went until about five

20   minutes before this hearing so I didn't have enough time to

21   review it as thoroughly as I would normally.

22           But I do have a question that I don't -- I just

23   want to make sure I'm understanding.

24           You say -- I think it says, when I say it, let me

25   -- let me tell you exactly where I am so the record is

1    clear, paragraph 2 on -- let me tell you where we are -- on

2    page 15 of 24 on 823 says "The trustee has exclusive control

3    of any attorney-client privilege and work product protection

4    that could otherwise be asserted by the debtor's counsel."

5    And that's defined as the trustee privileges.  Okay?

6         And that's also in Mr. Romney's version in

7    paragraph 2, on page 2 of 4, of ECF 824.  Okay?

8         MR. ROMNEY:  I'm sorry, what was the page number,

9    Your Honor?

10         THE COURT:  Which one do you need me to talk to

11    you about, Mr. Romney?  Theirs first?  Or yours?

12         MR. ROMNEY:  Either one.

13         MR. BASSETT:  But, Your Honor -- and, Your Honor,

14    Nick Bassett again.

15         Just to be clear, I think the document you were

16    referring to at page 15 of 24 on ECF 823 --

17         THE COURT:  Yeah.

18         MR. BASSETT:  -- that is the redline of the

19    debtor's proposal compared to the trustee's proposal showing

20    the changes that the debtor wants to make to our proposal.

21         THE COURT:  Understood.

22         MR. BASSETT:  Okay.

23         THE COURT:  That's why I'm saying your document at

24    15 of 24 says the same thing. That's why I'm comparing them,

25    this is what the debtor wants, but the debtor is agreeing

1    that the trustee has exclusive control over any

2    attorney/client privilege or work product doctrine that

3    could otherwise be asserted by the debtor or his counsel,

4    okay, with respect to documents.

5            Now, documents is a capitalized term but there's

6    no definition for it. And what about the communications with

7    the lawyers that aren't documented, what happens there?

8            MR. ROMNEY:  Your Honor, the debtor's intention

9    with regard to this was to limit it to documents and that is

10    largely because when we looked at the title, including the

11    original proposed order submitted by the trustee, was that

12    this was an order that was always captioned as applying to

13    documents and that, therefore, our proposed changes --

14            THE COURT:  Mr. Bassett, is that your position,

15    that this order only applies to documents in connection with

16    Rule 2004 subpoenas?

17            MR. BASSETT:  That is not our -- Your Honor,

18    again, Nick Bassett.

19            That is not our position.  I think it's pretty

20    clear, if you look at the relief that we're seeking in our

21    motion and you look at the subpoenas that are attached to

22    the Rule 2004 motion and order, we are, of course, seeking

23    both document discovery and depositions from the parties

24    subject to the 2004 orders.

25            And we think it's critically important that this

1    order resolve privilege issues that apply both to documents

2    subject to production, as well as to information that may be

3    obtained via deposition testimony.

4            I think otherwise we're just, you know, not making

5    enough progress as we can.  We're only going to end up back

6    before the court on issues related to deposition testimony

7    that could otherwise be resolved by this order.

8            THE COURT:  Mr. Romney?

9            MR. BASSETT:  And to --

10           THE COURT:  Oh, sorry, go ahead.

11           MR. BASSETT:  And to be clear, Your Honor, you

12   know, the scope -- the scope of the privilege is the same,

13   right?  I mean, there's no -- there's no reason it would be

14   different and we're not asking for it to be different.  The

15   scope of the privilege that passes to the trustee is that

16   which is set forth in our proposed order.  It's just applied

17   equally to depo testimony and to documents.

18           THE COURT:  Well, the reason I'm asking the

19   question is I only see the word "documents".  And it's not -

20   - and it's capitalized and it's not a defined term.  And I

21   didn't think --

22           MR. BASSETT:  So I --

23           THE COURT:  -- or I should put in, I thought that

24   the trustee was asking for an order to have the Court

25   determine that the privileges, whatever the debtor's

1    privileges are, are now the trustee's and that they weren't

2    limited to documents produced in accordance with a subpoena.

3              MR. DESPINS:  Your Honor, if I may?

4              I think there's confusion here.  That document

5    you're looking at is our order with their changes --

6              THE COURT:  I understand.

7              MR. DESPINS:  -- so the document thing is not what

8    we want.

9              THE COURT:  Right.

10             MR. DESPINS:  We want -- we don't want documents.

11   That's their change.

12             THE COURT:  Right.  No.  I understand that.

13             MR. DESPINS:  Okay.

14             THE COURT:  I understand that.  That's why I'm

15   asking the question.  That's why I asked Mr. Romney the

16   question that I asked him, which is do you believe that this

17   order, if I were to enter the order that he submitted

18   resolves all the issues?  I understand, Mr. Despins.  That's

19   why I'm saying.

20             So we still have a disagreement on whether or not

21   the -- or do we have a disagreement that the debtor's

22   privileges pass to the trustee, whatever privileges that the

23   debtor may have outside from these documents and the Rule

24   2004 subpoenas.

25             MR. ROMNEY:  I want to make sure I --

1          THE COURT:  Here's what -- maybe I should ask a

2     better question.  Maybe it's my problem and I'm not framing

3     it properly.

4          What I want to know, and why I asked you what you

5     thought was resolved or unresolved, is am I going to

6     continue to have hearings after hearings about whether the

7     privilege applies, whether the trustee can exercise the

8     debtor's privilege?

9          And I think what you're saying is yes.  And that's

10    okay if that's what you're saying.  I want to understand it.

11    I may not agree with you, but that's what I'm -- I'm trying

12    to understand.

13         Right now it seems as though we're limiting this

14    privilege issue to these subpoenas that were issued in

15    connection with 2004 Examinations.  I don't think the

16    trustee thinks that, but I think you think that.  I just

17    want to make sure I understand your position.  Because

18    otherwise in my -- it seems to me that if you're saying that

19    you'll -- and I don't mean you, Mr. Romney --

20         MR. ROMNEY:  Understood, Your Honor.

21         THE COURT:  -- I'm saying on behalf of the debtor,

22    that you'll agree to this order being entered, but it's only

23    with regard to documents that only relate to these Rule 2004

24    subpoenas, then I think you are saying what I am saying,

25    which is you're only agreeing to it in the limited scope.

1          And I'm not sure if that makes -- I'm not sure if

2     that makes the most sense that we do this on a piecemeal

3     basis.  And I'm not saying you agree with me.  And I'm not

4     saying you should have to.  You don't have to agree with me.

5          I am speaking out loud given what I've looked at

6     for five minutes before this hearing, right, and my review

7     of your order, the order submitted on behalf of the debtor,

8     that the debtor would agree can enter, at least initially,

9     and you can convince me that I'm wrong, looks like it's

10    limited to these subpoenas and the -- and the production of

11    documents.  And if it is, then I just want to understand

12    that.  I want to make sure I understand your client's

13    perspective.

14         MR. ROMNEY:  Your Honor, I think that that is an

15    accurate read of the proposed order that the debtor

16    submitted.

17         I believe that change was made in response to our

18    read of the caption of the document which we understood to

19    state that it was with regard to Rule 2004 subpoenaed

20    documents and the directing that the debtor and other

21    examinees not withhold documents on account of such

22    privileges.  We were tracking the order to relate to that

23    caption of the proposed order.

24         Now, there's other -- the prong granting related

25    relief, which on its face, I don't know what that means.

1           I will, in all candor, say that this particular

2    issue, meaning the -- that we're discussing right now, the

3    documents on the one hand versus documents information as

4    it's characterized in the trustee's proposed order, that was

5    not one of the issues that we discussed during our telephone

6    meet and confer last night.

7           I wish we had only because I'm saying, and I don't

8    want to say anything out of turn here without communicating

9    with anybody else on our side of the fence, as I stand here

10   right now.

11          I imagine the parties would be able to work out

12   that issue because I do agree that with respect to a

13   privilege on a particular issue, I can't articulate a basis

14   as I stand here why the privilege would transfer with

15   respect to a document and not a communication on the

16   identical subject if that makes sense.

17          THE COURT:  Okay.  Yes, it does.  Because that's

18   part of my question, right?  It's the privilege transfers,

19   whatever it is, it transfers.  It doesn't matter whether

20   you're talking about a communication or a document or at

21   least from the perspective of the Court at this point,

22   that's the perspective.  That's why I'm asking the question.

23          Because me, when I looked at your order, your

24   proposed order, Attorney Romney, it seemed much more pointed

25   than what I just said.  It seemed to only apply to documents

1   that were subject of subpoenas and that's why I raised the

2   concern because I don't want us -- I don't think it makes

3   sense for any of us to spend time having hearing after

4   hearing about whether the privilege applies to a document or

5   a communication.

6          Now, you still have rights to assert whatever

7   you're going to assert, right, with regard to subpoenas?

8   People still -- nobody's filed motions to quash yet that I'm

9   aware of.  Maybe that's coming.  You know, I don't know.

10  We'll see.

11         But it's one of the reasons why I said the other

12  day rightfully or wrong -- I might be right or wrong why I

13  think this motion that the trustee filed is related to the

14  issue on appeal from the governance motion, which is who has

15  the privilege?

16         And I understand, and Attorney Henzy can be heard

17  on it if he wants to be heard.  I understand the point that

18  Attorney Henzy has raised on the appeal that he believes

19  that the governance order compels disclosure of information

20  and that you can't do that.  No court can do that.

21         But you could also argue that if that's the issue,

22  if the issue that Attorney Henzy is raising on appeal, and

23  he has raised on appeal, is the compel disclosure, it's

24  almost as if you've already jumped over the issue of whether

25  Mr. Kwok actually has a privilege to assert anymore even in

1    the U.K. litigation.  Okay?

2            And I understand the arguments about the U.K. law

3    may be different or whatever, but I don't know that because

4    nobody's put anything in front of me to say it is different.

5            I've seen cases that you both have attached to

6    your, you know, submissions, but the issue about the

7    privilege and who has the right to exercise the privilege

8    has not been ruled on yet by this court and that's what I'm

9    asking you.

10           Is that what you want or do you want -- or do you

11   want to proceed -- and I'm not -- piecemeal is not a -- I'm

12   not using that term as if it's a -- you're doing something

13   wrong, so just let me -- maybe that's not the best word. You

14   want to proceed incrementally.  I don't know that it makes

15   sense to proceed incrementally.

16           And I think their motion -- I think the trustee --

17   I think the trustee's motion is seeking broader relief than

18   what this -- and I'm not saying you think it doesn't, but

19   your order narrows the relief.  Again, there's nothing wrong

20   with that.  That's the position you take.  You have

21   absolutely every right to take that position.

22           MR. ROMNEY:  That is correct, Your Honor.  The

23   proposed order, docket number 824, would narrow the proposed

24   relief that the trustee sought through the --

25           THE COURT:  And so it's my fault that maybe I

1    didn't ask the question very artfully at the beginning of

2    this, but that was my point.

3            So do you think that there's still unresolved

4    issues in the trustee's motion?  And your answer is yes,

5    because they're seeking broader relief than you're agreeing

6    to that they're entitled to have.

7            MR. ROMNEY:  Correct.  And there are substantive

8    differences between 823 and 824.

9            THE COURT:  Yeah.

10            MR. ROMNEY:  I guess I interpreted the question of

11   if, you know, 824 were to enter, it would be an order of

12   this court.  And the debtor and the debtor's professionals

13   would do their -- would do their best to follow it because

14   it would be an order of a court.

15            THE COURT:  Understood.  I understand.  But, no,

16   that's why I asked you did you believe all the issues were

17   resolved?  And maybe I just didn't ask the question as well

18   as I could have.

19            MR. ROMNEY:  Well, I believe it would resolve them

20   in the sense of the Court would be ordering some things that

21   the trustee's motion sought and it would be denying some

22   things that the trustee --

23            THE COURT:  Well, but, it doesn't say anywhere

24   that it denies it.  See, that's the point.  It just says

25   it's granted in part.  It doesn't say that the rest of the

1    relief that the trustee sought is denied.

2            And that's where -- again, I'm telling you, I

3    spent five minutes on this, okay?  So just, you know, I

4    could be completely wrong about everything I'm saying, but

5    I'm telling you your language is -- what you changed it -- I

6    think the trustee had -- the motion is granted to the extent

7    of or the -- you know, in the way that whatever follows.

8    And yours was it was granted in part as set forth herein.

9    It doesn't say that the rest of the relief that the trustee

10   was seeking is denied.

11           MR. ROMNEY:  Well, I suppose that was inartful

12   drafting on my part.

13           THE COURT:  No, it doesn't -- I'm not sure it's

14   inartful drafting.  I'm just saying I need to figure out

15   what it is you want me to do.  Right?

16           You need -- you want me to say it's granted to the

17   extent that you agree to and denied, and there's nothing

18   wrong with that -- and denied, all the other relief should

19   be denied.

20           MR. ROMNEY:  I suppose that's correct.

21           The way this was drafted was it had -- it had new

22   provisions that entitled expressly the debtor to retain the

23   right to control the privilege with respect to certain

24   issues, and so I suppose implicitly --

25           THE COURT:  I don't think anybody disputes that,

1    right?  I think there's one thing we can agree on, at least

2    I think, is I don't think anyone is disputing, at least I

3    haven't heard, even from the trustee -- and Mr. Bassett,

4    you'll have to correct me -- I don't think anyone is

5    disputing that the privilege, the trustee's agreeing that

6    he's not going to exercise the privilege with regard to the

7    asylum issue and with regard to the tort issues that someone

8    has raised in different -- with regard to -- and I forget

9    the language here, but I have to find it -- with regard to

10   these allegations of serious personal torts occurring

11   without, you know, having to state them all, right?

12          And that -- and that nothing's going to impact the

13   debtor's right against his Fifth Amendment right.  I think

14   everybody agrees to that, I believe.  I think that's the

15   trustee's position.

16          But with regard to everything else, other than

17   those carve outs, the trustee's position is that he has the

18   privilege.  He can exercise the privilege.  I think you

19   don't agree with that.

20          And I think Mr. Henzy, I don't know if I'm right

21   on this, but I know Mr. Henzy definitely felt that that

22   letter compelled disclosure.

23          And my point about that issue was if Mr. Kwok

24   doesn't hold the privilege, there's nothing -- he's not

25   being compelled to do anything.

1          All he was doing was sending a letter saying can

2     you cooperate with -- cooperate with the trustee because the

3     trustee's now appointed.

4          Now, I know Attorney Henzy doesn't agree with

5     that.  I'm not suggesting he does.  But that's why I'm

6     saying I think they are related, these two matters are

7     related, and we have to decide what -- and you -- and I

8     could be wrong in whatever decision I make.

9          If I disagree with you, then you have a right to

10    appeal it. If I disagree with the trustee, then they have a

11    right to appeal it.

12         And when you talk about it -- and you're right,

13    Attorney Romney, that the law, at least as far as I've seen,

14    is not conclusive on these issues, on the individual

15    bankruptcy debtor regardless of chapter by the way, right?

16         It's not as etched in stone as it could be with

17    regard to the trustee's right to exercise the privilege in

18    an individual bankruptcy case.  And, you know, we can go

19    through that.

20         I've looked very carefully at what both of you

21    have cited on those issues.  And my point is, I think, you

22    know, if you -- you want me to say without -- I don't think

23    this order clearly says that you want me to deny that the

24    trustee has the right to those other -- that other scope of

25    the privilege, that the scope is only going to be what

1    you've agreed to in this order.  And then anything else

2    we're going to have to fight about in the future.

3           Which is -- I'm not saying that's wrong either.

4    I'm just trying to understand your position so that I'm

5    clear if I rule, and I rule one way or another, that I'm

6    ruling appropriately.

7           MR. ROMNEY:  So the language in proposed paragraph

8    2 in the debtor's order, docket number --

9           THE COURT:  In 824?

10          MR. ROMNEY:  In 824.

11          Is while the first portion of the phrase, similar

12   if not identical in the debtor's and the trustee's, the

13   Romanettes as to what we are agreeing, the language in the

14   Romanettes I, II, III, are materially different in the

15   debtor's proposed -- materially narrower in the debtor's

16   proposed order.

17          And I will say that the reason why they're

18   narrower is taking in mind that despite the somewhat murky

19   case law on this issue, the majority of the case law, while

20   applying this standard differently, does try to balance the

21   trustee's legitimate interest in administering the estate

22   and identifying the assets with the individual debtor's, you

23   know, privilege and the, you know, interest in free

24   communications between attorneys and clients, as well as the

25   fact that there are some issues that the individual debtor

1    could be discussing with counsel that simply don't relate to

2    the discharge of the trustee's duties in administering the

3    estate.  For example, the asylum application, which it's not

4    an asset.  It's different.

5              So to highlight the differences in the language

6    with the Court, understanding that it's only had these

7    orders for less than I think 15 seconds was the Court's

8    language on the record, was rather than saying the trustee

9    has the right to control the privilege on anything

10   concerning assets without regard to anything else, because

11   documents could concern assets and they could concern

12   something else. Documents concerning assets could have

13   issues in other proceedings such as dischargeability.

14             And what this language said was documents that are

15   sufficient to identify the debtor's bankruptcy estate's

16   assets, you know, are necessary to identify the debtor's

17   estate's liabilities and relate solely to the administration

18   of the estate.

19             Now, I could -- one could disagree what exactly

20   that -- whether a particular document applies to that

21   standard or doesn't, but the point is is that once -- once

22   sufficient information, privileged or not, has been provided

23   to the trustee to administer its duties, to identify assets,

24   to identify liabilities, and to effectively prosecute causes

25   of action that are assets of the estate, then that is

1    satisfying the trustee's legitimate interest in doing the

2    job that this court appointed him to do and that, therefore,

3    further documentation, privileged documentation, would not

4    need to be produced by the debtor or the debtor's

5    professionals.

6              THE COURT:  Okay.  That's helpful.  But what about

7    when they look at a document, say Trustee Despins gets a

8    document and it says Verdolino and Lowey, because we talked

9    about them today, we'll just bring them up, had a discussion

10   with the debtor about how to characterize an asset, they --

11   I think what you're saying is that the trustee doesn't get a

12   right to go talk to Verdolino and Lowey and talk about the

13   discussions that Mr. Kwok had with Verdolino and Lowey.  Is

14   that what you're saying?

15             MR. ROMNEY:  I think that's what document 824

16   says.  And, again, that was -- meaning insofar as it

17   contains the word document, not documents or information.

18   Is that --

19             THE COURT:  Yeah.  Or communications.  It doesn't

20   have to be a document.

21             MR. ROMNEY:  Court documents or --

22             THE COURT:  Verdolino and Lowey could be deposed,

23   right?

24             MR. ROMNEY:  Correct.

25             And as I intended to articulate, that language,

1    the reference to documents, was tying in the order to the --

2    to what we perceived to be the caption of the order insofar

3    as it referred to subpoenaed documents and not withholding

4    documents and, therefore, our proposed order tracked that

5    language.

6            THE COURT:  I understand.  But I want to get to

7    the heart of the matter, which is I don't want to do this

8    every time there's a controversy, right?

9            Or if we do, if that's what's going to happen, I

10   want to know that's what's going to happen in advance,

11   right?  I don't want to enter an order that I think does one

12   thing and you think does something other than that.

13           So the issue is, as you said already, and I think

14   you're correct, that how could it be that the trustee would

15   succeed to the privileges with regard to documents and not

16   with regard to communications?

17           MR. ROMNEY:  I don't think I asked the question,

18   but I did acknowledge that I couldn't answer the question,

19   if that distinction is one without a difference.

20           THE COURT:  Well, I'm trying to figure out how we

21   should proceed.  And right now this was a continued hearing

22   on the trustee's motion to have this court determine that he

23   holds all the privileges of the debtor.

24           My understanding of that motion was that even

25   though the trustee wants that order, he would agree to carve

1    out anything with regard to the asylum issue, anything with

2    regard to these alleged tort issues and, obviously, with

3    regard to the Fifth Amendment.

4         I mean, he was -- he's not asserting and never has

5    asserted that he's going to exercise that right.

6         MR. ROMNEY:  Yeah.  Well, there is a discrepancy,

7    as I read the orders on the -- what I would describe as tort

8    issue.

9         THE COURT:  Well, I -- I mean --

10        MR. ROMNEY:  Yeah.

11        THE COURT:  -- I'm talking about the allegations

12   of rape and things like that.  I don't know what those are

13   about, but that's what's been put forth, right, in this --

14   in the record of this case.

15        Before the trustee was even appointed there were

16   people that said that they -- these causes of action were

17   out there.  Those creditors filed motions in this case.

18   They said a lot of things, obviously, none of which have

19   been substantiated in this court at this point and maybe

20   never will be.  Okay?

21        So that's what I'm talking about when I'm talking

22   -- I'm talking about some of the alleged very difficult to

23   discuss torts, not, you know, if there was some other --

24   like maybe you claimed the -- I don't even know.

25        As you know, I didn't read the UBS complaint.  Is

1    there a tort cause of action in that including a breach of

2    contract?  I don't know.  There might be.  I have no idea.

3    Right?

4            But my point is is that I -- while there's no

5    question that you all have worked hard to try to narrow the

6    scope of this disagreement, I need to understand if there's

7    still a disagreement, and I think there is.

8            I think there's still a disagreement from the

9    debtor's point -- standpoint, that the trustee controls all

10   of the privileges regardless of the 2004 motions and

11   subpoenas.

12           MR. ROMNEY:  There is -- the trustee and the

13   debtor don't agree -- have an agreed stipulated order on

14   this.  And what I mean by that is the material difference

15   between 823 and 824.

16           THE COURT:  Right.

17           MR. ROMNEY:  So there still is a -- there still is

18   -- the Court would have to still pick a side in terms of

19   somebody's -- somebody's getting what they're, you know,

20   what they're willing to live with and somebody else is

21   getting what they're willing to live with.

22           And I chose those words rather than somebody's

23   getting what they want and the other person's getting what

24   they want --

25           THE COURT:  I understand.

1          MR. ROMNEY:  -- because both of these reflect a

2     compromise.

3          THE COURT:  I understand.

4          MR. ROMNEY:  But the answer is yes.  I think that

5     there could be unresolved issues following the application

6     of either order.

7          I suppose -- and I think the intention from both

8     sides was to narrow the scope of those potential future

9     issues to the extent -- and perhaps maybe it is, maybe it

10    was wishful thinking and maybe the better approach is to

11    deal with this on a subpoena by subpoena basis, because I

12    can't stand here today and say that with any degree of

13    certainty that either of these proposed orders will resolve

14    privilege related discovery down the road.

15         THE COURT:  Okay.  That's fair.  I appreciate the

16    response.  Okay.

17         MR. ROMNEY:  Thank you, Your Honor.

18         MR. DESPINS:  Your Honor, if I -- if I may be

19    heard on this briefly?

20         THE COURT:  Yes.

21         MR. DESPINS:  I'll take the blame for this, but

22    it's not fair to put you in this position where with five

23    minutes' notice you have to go through these orders.

24         Yes, I would like the order to be entered three

25    days ago, but that's not going to happen.  And it's not

1    going to be entered today because it shouldn't be entered

2    today because I want Your Honor to have a clear picture of

3    what's happening.

4            I believe, Mr. Bassett may correct me if I'm

5    wrong, there's no more than ten issues that I could put on a

6    list of differences.

7            And this is like the game we used to play when we

8    were kids called Battleship where, you know, I'm shooting, I

9    don't know where the submarine is, but they know.

10           And so everything that, all those changes, if you

11   see them -- just, for example, they deleted or any related

12   privilege or protection.  They're telling you they're going

13   to hang their hat on that.  I don't know why or how.  Or,

14   for example, when they say that they deleted actual or

15   potential causes of action, so it's only a cause of action.

16   So, therefore, it's potential, no discovery.

17           Also they've added the word necessary, necessary

18   to identify.  So they will argue, I guarantee you, that it's

19   not necessary for us to get this to identify causes of

20   action.  This is a Battleship game, Your Honor.

21           And I think I would like to put on a piece of

22   paper ten open issues and for Your Honor to have time to

23   digest this, because at the end of the day, you know, let's

24   remember who we're dealing with here and go back to

25   Ostrager, you know, basically first steps.

1        You know, we know they're good at this.  They did

2   it for four years in front of Ostrager.  And this is all

3   about this, meaning live another day so I can object to the

4   production of documents another day and we'll be back in

5   front of Your Honor every week.  And that's what the purpose

6   of that is.  Of course, we're trying to avoid that.

7        But my point is that there's probably ten points

8   maximum on this.  You should have them in a bullet point

9   before hearing, not five minutes before the hearing.  And as

10   I said, I'll take the hit for that.

11        THE COURT:  Well, I set that time frame so it's

12   not -- I set that time frame.

13        MR. DESPINS:  No.  But I --

14        THE COURT:  I did it because I thought we would

15   have more time this morning before the hearing at 1 o'clock.

16   And I continued this, so I don't think it's -- I think it's

17   -- I understand what you're saying, but I said why don't you

18   both submit an order within an hour of the hearing.  And it

19   just didn't happen that I had time to look at it.

20        So, you know, I don't think the blame lies -- I

21   don't think there's an issue of blame.  It was an issue of

22   trying to advance the ball with enough time and there wasn't

23   enough time.

24        But what I'm hearing is that the debtor -- and I

25   do appreciate the parties talking and trying to resolve the

1    issue, but I don't think there is a resolution.

2              MR. DESPINS:  There won't be.

3              THE COURT:  I think there is not a resolution.  I

4    think that the resolution that I was wondering if could be

5    reached can't -- I guess can't be reached.  And that's fine.

6    If that doesn't happen, it doesn't happen.  Then we'll have

7    to rule accordingly.

8              But I think that at least the way, Attorney

9    Romney, I read the order that you submitted at ECF 824 is

10   that it's limited to the documents and it's limited to these

11   2004 examination and subpoenas.  And I don't know that I

12   think that makes -- I don't know yet, but I don't know that

13   I think that makes sense.

14             I mean, the debtor -- the case law is not clear.

15   And, you know, it may be that I have to rule so you guys can

16   appeal.  Maybe that's what has to happen.  Maybe you go

17   direct appeal to the Second Circuit and you say, look,

18   there's no controlling case law here.  We need to have it.

19   The trustee needs -- the trustee may be the person who wants

20   to appeal.  Who knows?

21             But how else am I going to be able to rule on

22   these pivotal issues in this estate to allow the trustee to

23   do his investigation to determine whether or not there's

24   anything here for creditors if there's a disagreement on the

25   privilege.

1          I'm not suggesting you don't have the right to

2     disagree.  You absolutely do.  And you have the right to do

3     whatever you think is appropriate under the law.

4          But I just don't know how.  What are we going to

5     do?  I don't think incremental steps makes sense.  I think

6     there has to be a definitive way that this is going to be

7     dealt with.  And unfortunately for all of us, in my opinion,

8     there is no clear law.  I couldn't find any.  You all didn't

9     bring any.

10         You haven't brought anything before me that says

11    it doesn't pass to the trustee.

12         You haven't brought anything to me, before me,

13    because there isn't, that says automatically it passes to

14    the trustee in the individual case.

15         The only case that talks about it in the

16    bankruptcy context, aside from all the other cases that

17    you've cited, is the *Weintraub* case that talks about a

18    corporate transfer of the -- of the privilege to the trustee

19    in 1986.  And then they didn't address what would happen in

20    an individual case.  They purposefully didn't address it,

21    okay, the Supreme Court. And where's -- there's no circuit

22    case.  Where's the circuit case?  There's nothing here

23    that's controlling.

24         So every single time we do this, we could have

25    another appeal, we could have another appeal, we could have

1    another appeal.  It doesn't make sense, to me anyway.  And

2    maybe I'm wrong, but it doesn't make sense.

3              MR. BASSETT:  I suppose --

4              MR. ROMNEY  Your Honor -- I apologize.

5              MR. BASSETT:  Your Honor, it's Nick Bassett from

6    Paul Hastings on behalf of the trustee.

7              I think we certainly agree with that sentiment

8    insofar as the objective of this motion and our proposed

9    order, the revised proposed order, is to give as much

10   guidance to the parties and set parameters that will

11   eliminate the need as much as possible for future disputes

12   as to privilege.

13             And I think the language, and we don't need to

14   belabor it, Mr. Despins addressed it, Mr. Romney addressed

15   it, but the language that the debtor has added to paragraph

16   2 of it's proposed order I think would kind of do the

17   opposite in that it, you know, including the word necessary,

18   which would give all kinds of grounds for disputes and, you

19   know, would allow the debtor to make judgments as to what

20   documents he thinks are necessary for the trustee to

21   identify potential assets of the estate.  You know, that

22   kind of language I think is just a recipe for all kinds of

23   sorts of disputes.

24             What we tried to do with our proposed order -- and

25   I don't disagree with the Court that there is no binding

1    Second Circuit authority on this question -- but I do think,

2    as we tried to marshal in our papers and talk about at last

3    week's hearing, there are many bankruptcy cases out there

4    that have tried to address the issue of the individual

5    privileges passing to a trustee in the wake of *Weintraub*.

6              And I think the overwhelming majority of those

7    cases and the clear trend of the case law is to say that the

8    trustee passes when the privilege relates to efforts by the

9    trustee to identify estate assets, to investigate the

10   debtor's financial condition, and certainly with respect to

11   any post-petition matters affecting the administration of

12   his estate prior to the appointment of a trustee.

13             And that is exactly how we tried to craft our

14   revised proposed order is to track those categories in that

15   weight of the case law and then to also make clear to

16   address the debtor's concerns that he is still able to

17   assert privileges over documents related to criminal

18   allegations or to his asylum application but are not related

19   to those four -- to those three categories that I just

20   mentioned.

21             So to address the particular comment that Attorney

22   Romney made, I think he said, you know, there may be a

23   document that talks about estate assets, but it also, you

24   know, is a privileged communication related to criminal

25   allegations against the debtor, you know, that have been

1   brought to the Court's attention in this case, and that type

2   of document.

3          The debtor would still be able to assert the

4   privilege related to any discussion about the criminal

5   allegations, so I don't think that's a concern.

6          But, again, I just wanted to respond to some of

7   the points that have come up during the discussion Attorney

8   Romney and to clarify, you know, sort of our perspective on

9   what makes the most sense here and what we were trying to

10  accomplish with our order.

11         THE COURT:  Understood.  Thank you.

12         And I do -- I do appreciate the efforts of the

13  parties in seeing what you can -- what you could do.  And

14  you obviously spent time, and that's important, but I don't

15  -- I do not see that there's an agreement.

16         And so I don't know that it makes sense to enter

17  either one of these orders at the moment.  I have to think

18  about it.  I have to figure out whether or not I have to

19  just issue a ruling and then let you both decide what you

20  want to do.

21         I mean, the problem is, if I enter -- if I enter

22  the Chapter 11 Trustee's order, you're going to appeal it.

23  I know that.  We all know that. And if I enter your order, I

24  think the Chapter 11 Trustee is going to appeal it.

25         So I -- you know, I'm searching for you to tell me

1    some other way to proceed, but it's a pivotal issue in the

2    case right now.

3           I mean, without a determination as to where this

4    goes, I don't know how -- I don't know how we won't be here

5    every week arguing about the same thing.  Not the same

6    thing.  I mean, in general the issue, not what might be with

7    regard to a different document request or testimony in a

8    2004 Examination or whatever, but that was my -- that's my

9    concern.

10          MR. ROMNEY:  And, Your Honor, the difficult thing

11   obviously with privilege issues is, once the -- you know,

12   once the privileged document is out and about, you know,

13   it's kind of hard to put the toothpaste back in the tube,

14   particularly in a situation such as this where it seems that

15   the debtor's position and the trustee's position are very

16   different from each other on many things.

17          We keep discussing Judge Ostrager's decision,

18   which obviously had some choice words about the debtor,

19   though in many respects wasn't really relevant to the issue

20   before the Court.

21          But my point here is that we have a situation

22   where we have a trustee, and I'm not casting judgment or

23   placing -- I'm trying to state an objective view of the

24   situation. We have a trustee who is, if not already

25   technically, likely to be in an adversarial position with

1    the debtor.

2          And that's different for many cases where it's

3    easier to apply what is necessary -- what is balanced

4    between the trustee, you know, administering the estate and

5    protecting the debtor's interest against, you know,

6    protecting his or her privileged information.

7          And maybe the answer is unfortunately that this

8    does need to be dealt with, you know, as issues arise

9    regarding particular documents because the standard is

10   murky.

11         I think both sides did their best to try and come

12   up with something that balances the competing interests

13   here, but the reality is in a case like this they're

14   competing interests and sometimes it's hard to balance

15   competing interests.

16         So, as I said, the debtor is -- has submitted 824.

17   It's something it would consent to.  The debtor certainly is

18   not waiving its right to appeal anything else though it's

19   not something I'm prepared to, you know, state one way or

20   another.

21         And, you know, the only other point I would like

22   to add, obviously, as the Court has pointed out, the parties

23   are not in agreement.  They've each -- they've each

24   presented narrowed, but still competing orders.

25         The Court is the Court.  The Court's job is to

80

1    decide the dispute.  And there is still a dispute before the

2    Court.

3              To the extent that the Court were otherwise

4    inclined to enter 824, but the issue is that it refers to

5    documents and not documents and communications and

6    information, that would certainly be within the Court's

7    right if that were the Court's major concern with document

8    824.

9              MR. BASSETT:  Your Honor --

10             THE COURT:  Anything --

11             MR. BASSETT:  -- Nick Bassett again for the

12   trustee.

13             THE COURT:  Go ahead.

14             MR. BASSETT:  I guess I would just say to go back

15   to the comments that Your Honor was making earlier, I do

16   think it is -- it is clear that we are -- we have not

17   reached an agreement on a proposed order and there are

18   issues that I think have created a gap that cannot be

19   bridged.  So the Court has our proposed order and the

20   debtor's proposed order.

21             And, you know, as Mr. Despins said I think you can

22   distill down the remaining points of disagreement into, you

23   know, a dozen or so.  If you look at Exhibit B to what we

24   filed, we tried to flag those and provide sort of the key

25   issues that we have with the remaining areas of

1   disagreement.  So, you know, from my perspective, I think

2   that is where we are.  The Court has two orders.

3        We think that the order we proposed is both

4   consistent with the case law and will most appropriately

5   give the parties the instruction that they need to proceed

6   with discovery in the case.

7        THE COURT:  Okay.  Thank you.

8        Does anyone else wish to be heard?

9        MR. GOLDMAN:  Your Honor, Irve Goldman for the

10  committee.

11       I just didn't want our silence to be taken as

12  being a neutral bystander, which we're not.  We're in favor

13  of the trustee's proposed order for a couple of reasons,

14  which he's mentioned some of them.

15       I do think that their proposed order that was

16  advanced by the debtor provides too much of a window of

17  opportunity to resist further discovery.

18       And I think that if past history is any

19  indication, meaning the litigation that took place before

20  Judge Ostrager, that is likely to happen with the type of

21  malleable language that they've used in their order.

22       The trustee mentioned the word "necessary," that

23  whatever might be necessary to discovery of assets.  I can

24  envision an argument that it's not necessary for the trustee

25  to obtain certain information because it might be easier to

1    get it elsewhere.  That shouldn't be the result here.  And

2    so I think that word -- that word should at a minimum be

3    removed.

4            The other problem that we have is this word

5    "solely" that they introduced, that the information can only

6    relate to documents that are solely related to the

7    administration of the case.

8            Well, a document could certainly have dual

9    purposes and yet that invites an argument that it's not

10   solely, doesn't solely relate to the administration of the

11   case.  That's an absurd result.

12           And on the issue of -- in that regard, a document

13   could relate to criminal activity.  For example, under 18

14   U.S.C., Section 157, it's a bankruptcy crime to conceal and

15   misrepresent assets in a bankruptcy case.

16           So I can envision a document that might provide

17   evidence of that.  It clearly also relates to the

18   administration of the estate.  Yet it could invite an

19   objection that they're trying to reserve with their proposed

20   order, which I think is improper.

21           So for those reasons we support the trustee's

22   proposed order.

23           THE COURT:  Okay.  Thank you.

24           Does anyone else wish to be heard?

25           MR. DESPINS:  As a final word, Your Honor, Luc

1    Despins, Trustee.

2            Would it make sense -- obviously for Your Honor to

3    review this, which you will, but to have an adjourned

4    hearing so we can address any open questions you may have,

5    Because as Mr. Bassett said there's probably 10, 12 issues.

6    I think they're cut and dry from our perspective.  And you

7    may rule against us on some of them.  But the point is I

8    think it might be beneficial too.

9            And I know your docket is very full, but if we

10   could adjourn it to a date not too far in the future, I

11   think that would be great.

12           THE COURT:  What kind of time frame are you

13   thinking?  Later this week or early next week?

14           MR. DESPINS:  You mean how long the hearing would

15   be or --

16           THE COURT:  No.  When would you like to adjourn it

17   to?  Are you talking, you know, later this week or early

18   next week?

19           MR. DESPINS:  If Your Honor has time, let's say on

20   Thursday or Friday of this week.  Whatever will allow the

21   Court enough time to really review and have a -- I'm sure,

22   knowing you, that you'll have a series of questions.  And I

23   think that whatever gives you enough time to do that we're

24   prepared to roll with that.

25           THE COURT:  I'm just looking at the calendar.

1          (Pause)

2                THE COURT:  So, Mr. Despins, if you're going to

3     file this document that shows, you know, a bullet point of

4     the differences, when can you do that?  How quickly could

5     you do that?

6                MR. DESPINS:  Yes.  I'm looking for Mr. Bassett

7     for an answer.

8                THE COURT:  Mr. Bassett, how quickly could you do

9     that?

10               MR. BASSETT:  Your Honor, it's Nick Bassett.

11               We could do that today.  If not today, you know,

12    tomorrow certainly.

13               THE COURT:  I don't -- I don't think it needs to

14    be done today.  We have another hearing at 3 o'clock.  So, I

15    mean, I think --

16               MR. DESPINS:  By 10 o'clock tomorrow I'm sure.

17               THE COURT:  You could do it by noon tomorrow.  I

18    don't have to have it by 10:00 a.m.

19               But what I'm going to do is, I will continue this

20    hearing one last time to Monday, the 12th of September.  And

21    I can -- I will -- actually, because we've talked about this

22    three times now or twice anyway, I will let it be remote so

23    people don't have to get dragged into this because I'm going

24    to just tell you what I'm going to do at that point.

25               So instead of dragging you into court, what I'll

1    do is -- what time do you -- you want to start at 1:30 or

2    2:00 on Monday the 12th?  Anyone have a preference?

3         (No response)

4              THE COURT:  All right.  Let's say 2:00 p.m. on the

5    12th we'll continue this hearing.  Mr. Despins is going to

6    file something on the docket, or his counsel is, tomorrow by

7    noon with regard to the differences between the two orders.

8              And then on the 12th --

9              I'm sorry, Mr. Romney, did you want to file

10   something?

11             MR. ROMNEY:  Well, I was just a little unclear on

12   whether -- if we're talking about differences, is this to be

13   a joint pleading or should we submit differing views of our

14   --

15             THE COURT:  I'm going to let you work that out.

16   I'm going to let you both talk about that.  How's that?  And

17   you can do what you think is appropriate.

18             MR. ROMNEY:  Thank you, Your Honor.

19             And what was the time by which --

20             THE COURT:  By noon tomorrow.  I can give you

21   until 1:00 p.m. if that's easier.  Another extra hour might

22   be helpful to people, right?

23             MR. ROMNEY:  Thank you, Your Honor.

24             THE COURT:  All right.  1:00 p.m. tomorrow.  That

25   will give me some time to look at it.

1          And then I will tell you on Monday what I'm going

2     to do.  And that's what -- and I will have that hearing

3     remotely.  No one has to come to court for that because this

4     is now the -- that will be the third hearing on the motion.

5          And I'm either going to -- I'm going to tell you

6     what I'm going to do.  I don't know what I'm going to do

7     right now, but I'll know by then.  So I think that's the

8     best way to proceed.

9          I think that I do -- I don't want to discourage

10    the parties from talking, because I do appreciate that you

11    did do that.  If that doesn't result in a resolution, it

12    doesn't result in a resolution.  That's fine.  There's

13    nothing wrong with that.  But I do appreciate the efforts

14    that were made.

15         I just think at this point there still is not an

16    agreement and there probably will not be.  If there is,

17    you'll let me know.  But if there isn't, I'm going to

18    proceed as, you know, that there is not an agreement.  And

19    that I will be reviewing the matters in that light.  And

20    I'll be ready to tell you at 2:00 p.m. on September 12th

21    where things stand.

22         Now, maybe I have some questions of both of you,

23    both the debtor and the Chapter 11 Trustee, and anybody else

24    that wishes to be heard, but I may not.  I may not have any

25    questions at that point.  I really don't know.  So I will

1    let you know.  Okay?

2           Is there anything that anyone else would like to

3    address this afternoon?

4           MR. ROMNEY:  Your Honor, if I may, just in less

5    than two minutes respond to a few of the points that

6    Attorney Goldman made?

7           THE COURT:  Sure.

8           MR. ROMNEY:  I just want to say with regard to the

9    concept of bankruptcy fraud or anything like that under 157,

10   I'm aware of no evidence in this record to suggest the

11   debtor has engaged in any type of bankruptcy fraud.

12          To the extent that anybody has probable cause for

13   that allegation and that attorney communications were used

14   in furtherance of it, that's what the crime fraud exception

15   is for.

16          It's a separate issue as to whether the trustee

17   has a privilege or not, because that is one of the few items

18   or exceptions to privilege even if -- where the debtor

19   retains it.

20          Second, with regard to the verbiage used by the

21   debtor, and certainly Your Honor is going to rule and Your

22   Honor could accept some of the debtor's points and revise

23   some of the language to the extent it has concerns or vice

24   versa with respect to the trustee's issues.

25          However, the concept -- the changing of the

1    language to necessary to identify is -- was done for the

2    purpose of allowing the trustee sufficient information to

3    identify assets and liabilities without a complete waiver of

4    any communication.

5           And I think the courts all the time in the context

6    of discovery recognize -- and this is beyond the scope of

7    privilege, but recognize that asking for all documents

8    concerning, insert any subject, is overly broad.  And many

9    times courts on discovery orders change language to

10   something like sufficient -- sufficient to identify items of

11   this topic.

12          And I just wanted to clarify for the Court that is

13   the purpose of that revised language.  It's not to be cure

14   or create avenues to dispute issues.  It is a -- in the

15   future.

16          It is a genuine attempt to try and balance the

17   trustee's right to information with the debtor's, you know,

18   right to free communication with his counsel.  Thank you.

19          THE COURT:  Thank you.

20          MR. BASSETT:  Your Honor, just if I could briefly

21   respond. Nick Bassett for Paul Hastings again -- to a couple

22   of those comments?

23          THE COURT:  Go right ahead.

24          MR. BASSETT:  So the discovery that the trustee is

25   seeking is pursuant to an order issued under Rule 2004,

1   which, of course, entitles the trustee to conduct a broad

2   investigation, akin to a fishing expedition, and the breadth

3   of the investigation that the trustee is able to conduct

4   under 2004, and is entitled to conduct, is particularly

5   critical in this case because as the Court knows, and as

6   everyone knows, from the record that's been established in

7   the New York Court and elsewhere there are serious concerns

8   that we all have regarding whether or not the schedules that

9   the debtor has filed in this court are accurate in setting

10  forth the assets that he has.  We think they absolutely are

11  not.

12          And in order to explore thoroughly where assets of

13  the debtor might be and to explore thoroughly other matters

14  relating to the administration of this estate, we absolutely

15  need the ability to obtain discovery that is broadly related

16  to not only assets of the estate, of the debtor, that the

17  debtor has had previously, but assets of others that the

18  trustee is investigating for the purpose of determining

19  whether they are, in fact, assets of the estate.

20          And this language that the debtor would have the

21  Court add to the proposed order that says we only have

22  control of the privilege to the extent that the

23  communication at issue is, you know, quote/unquote,

24  "Necessary," for the trustee to identify assets of the

25  estate provides way too much ambiguity and opportunity for

1    the debtor to decide what he does and does not want to

2    provide in discovery.

3             To just respond to one other point that Mr. Romney

4    had raised earlier, he raised this concept of there being an

5    adversarial relationship between the trustee and the debtor.

6             I don't know if he is suggesting that to the

7    extent the debtor does not want assets of his relatives, for

8    example, to become property of the estate, that there is

9    suddenly an adversarial relationship when we seek discovery

10   related to an issue like that, but if that is what he is

11   suggesting, then I think we absolutely disagree as to

12   whether or not the trustee controls the privilege in that

13   situation.

14            I think we absolutely control the privilege as it

15   relates to the trustee's efforts to identify potential

16   assets of the estate, even if the debtor is taking the

17   position that he'd prefer for these assets to remain with

18   relatives or in LLC's or other shell companies that he's

19   created.  That is not a basis for the debtor to retain a

20   privilege in that situation.

21            I think -- I think those are the comments that I

22   wanted to make, Your Honor, but happy, of course, to answer

23   any questions.

24            THE COURT:  I don't have any questions at this

25   time.  Thank you.

1          MR. DESPINS:  And, Your Honor, you recall we

2     talked about the U.K. complaint.  We found the docket

3     number.

4          THE COURT:  Okay.  Thank you.

5          MR. DESPINS:  It's 622-1.  It's called Particulars

6     of Claims.

7          THE COURT:  Thank you.

8          MR. GOLDMAN:  Your Honor, for the committee, just

9     a few brief comments if I may?

10         THE COURT:  Sure.

11         MR. GOLDMAN:  The fact that something might relate

12    or be covered by the crime-fraud exception to the

13    attorney/client privilege would not also mean necessarily

14    that it could not relate to the administration of the case.

15         And that's where I think the word "solely" is just

16    improper.  You can't just say that, hey, if it's subject to

17    crime fraud exception, you'll get it that way, even though

18    it also can relate to the administration of the estate.

19         And on the word "concerning," I would just note

20    it's a specifically defined term in the local district court

21    rules in fashioning discovery requests.  So there's nothing

22    improper about using the term here.

23         THE COURT:  Thank you.

24         MR. HENZY:  Last point for the debtor, Your Honor.

25         This is why courts don't like entering advisory

1    opinions and that is what this is.  There is a normal

2    process --

3              THE COURT:  But that is what -- wait a minute.

4    Let me just -- let me step back.  That is what what is?

5              MR. HENZY:  What the trustee --

6              THE COURT:  If I rule on this motion, I'll be

7    issuing an advisory opinion?

8              MR. HENZY:  You will.

9              THE COURT:  Why?

10             MR. HENZY:  You are giving an advisory opinion as

11   to -- you're being asked to issue a decision.  And I think -

12   - I think this is where you're, in some sense where you're

13   going, Your Honor.  You're being asked to give a decision or

14   to rule -- how you would rule on this muddle of case law.

15   So where you'd come out --

16             THE COURT:  Well, but there's a motion pending in

17   front of me.  It's been brought to me.  It's a controversy.

18             MR. HENZY:  I don't --

19             THE COURT:   I'm not doing it as an advisory

20   opinion.

21             MR. HENZY:  I don't think it is a controversy.

22   Right now there's no discovery dispute before you.  There's

23   not.  There's not.

24             THE COURT:  No.  No.  What is before me is the

25   trustee's motion to enter an order saying he controls the

1    privilege.  And you've responded to that.

2              MR. HENZY:  But that's a very -- and that's the

3    muddle of the case law.  That's a very fact sensitive

4    analysis.  It just is.  Because -- I mean, as Mr. Romney has

5    pointed out --

6              THE COURT:  But what facts do I need that I don't

7    have?

8              MR. HENZY:  You don't --

9              THE COURT:  Of whether or not -- no, let me just

10   hear you out.

11             What facts do I need that I don't have to

12   determine whether or not the trustee should control the

13   privilege?

14             MR. HENZY:  I think though the question is does

15   the trustee control the privilege with respect to particular

16   documents.

17             THE COURT:  I don't think that's what his motion

18   says.

19             MR. HENZY:  Well, I think he's -- like I said,

20   Your Honor, I didn't want to -- I didn't want to -- I think

21   what he's -- what you're being asked to do is give an

22   advisory opinion in a vacuum.  Because right now there is no

23   one in front of you saying I'm claiming a privilege on this

24   document and you now need to rule on whether with respect to

25   this document the privilege passed to the trustee --

1          THE COURT:  No.  I don't think that's accurate

2     though.  But I understand your point.  But I --

3          MR. HENZY:  Okay.

4          THE COURT:  Here's the problem.  Then why did you

5     respond by saying that he couldn't get all the information

6     from Brown Rudnick and, you know, all these other people

7     that you don't represent?

8          Your response, your objection to his motion,

9     starts talking about things that have nothing to do with

10    your client.  I mean, insofar as --

11         MR. HENZY:  Well --

12         THE COURT:  -- they're parties that your client

13    dealt with.  But they have the right to assert their --

14         MR. HENZY:  Oh, they do.

15         THE COURT:  -- their issues, don't they?

16         MR. HENZY:  Yeah.  But that doesn't mean the

17    debtor doesn't.

18         THE COURT:  Well, that doesn't mean that the

19    trustee can't seek an order from this court.  You may

20    disagree --

21         MR. HENZY:  The --

22         THE COURT:  -- you may disagree, but listen, at

23    this point, here's the problem, right? The trustee is trying

24    to conduct an investigation.  He's not able to do that.

25         He's been told that -- by at least with regard to

1    the London situation that -- when I say situation, the case

2    pending in London -- that your client is not going to try to

3    cooperate with him and tell the lawyers in London that he

4    can talk to them.  And --

5              MR. HENZY:  That's not true.  That's not true.

6    But, okay.

7              THE COURT:  Well, you wouldn't -- you said you

8    wouldn't send the letter saying that because you believe

9    that one part of it says it's compelled disclosure.  That's

10   what you're saying.  Isn't that what you're appealing?

11   You're appealing the 3(b) section of the --

12             MR. HENZY:  I didn't mean to get -- I didn't mean

13   to get off on a -- I'm going to answer your question.

14             THE COURT:  But that's what you're -- but that's

15   what you're doing.  I mean, and that's fine.

16             MR. HENZY:  No.

17             THE COURT:  I don't have a problem with it.

18             MR. HENZY:  No.

19             THE COURT:  But here's the point.  How's the

20   trustee going to continue -- how's the trustee going to

21   carry out his duties in this case right now when every --

22   when your client has argued to this point that the

23   attorney/client privilege issue does not pass automatically

24   to the trustee?  That's what you've argued.

25             MR. HENZY:  No.  No, it is not.

1    THE COURT:  Okay.  What have you argued then?

2    MR. HENZY:  I --

3    THE COURT:  Then why did you cite to *Weintraub*?

4    MR. HENZY:  I think that what we --

5    THE COURT:  That's what *Weintraub*'s all about, the

6    automatic passing of the privilege to the trustee in a

7    corporate bankruptcy case.

8    MR. HENZY:  What we've argued is that there -- the

9    cases say that there is this balancing test.  I don't -- I

10   don't think any of us disagree about that.  And what we --

11   but what we've argued is that that analysis -- and we've

12   cited case law that says that that balance has to be done on

13   a case by case basis.

14   THE COURT:  Right.  Right.

15   MR. HENZY:  That's --

16   THE COURT:  So what facts don't I have in this

17   case to make a case by case analysis if you're right?

18   MR. HENZY:  You don't have the facts that courts

19   always have when resolving discovery disputes, which is

20   specific privilege that has been claimed with respect to a

21   specific document or communication.

22   I don't know -- Your Honor, I've -- maybe it's

23   just me, I've never seen an order like this in any case that

24   I've been involved in.  I'm not -- it's --

25   THE COURT:  Well, here's the problem.  You

1    wouldn't need one in a corporate case because it

2    automatically happens.

3           And the problem with the law is there aren't very

4    many, if any, Chapter 11 individual cases where this has

5    become an issue, where the individual has said that the

6    trustee doesn't have the right to assert the privilege.  So

7    --

8           MR. HENZY:  We haven't said that.

9           THE COURT:  Well, yeah, I think you have.  You

10   have.

11          MR. HENZY:  No.  I think what we said is that

12   there's a balancing test and that that balancing test has to

13   be analyzed on a case by case basis.

14          THE COURT:  So you're saying the trustee's motion

15   is not ripe because there isn't anything in front of this

16   court as far as somebody asserting a privilege?

17          MR. HENZY:  I guess that is what I'm saying, Your

18   Honor.  Yeah.

19          I don't know how -- look, I probably shouldn't

20   have said anything.  It was more commentary because you're

21   wrestling with this.  I think the reason you're wrestling

22   with it is because the motion asks for you to rule in a

23   vacuum.

24          I've never been involved in a case, not even

25   bankruptcy cases, where -- I do litigation in state court

1    and federal court that has nothing to do with bankruptcy

2    cases where a discovery dispute has been resolved outside of

3    the normal process where people ask for things and either

4    they get them, or they get a privilege log, and people

5    assert whatever privileges they're going to assert, and then

6    there's an obligation to meet and confer, and maybe you'd

7    get it down to some small subset of documents.

8            And if you have to you then go in front of the

9    judge.  And everybody knows you better try really, really

10   hard to work through whatever you've got to work through

11   because judges really don't want to spend all their time

12   resolving discovery disputes.  Right?

13           And I think, to Mr. Romney's point, where does the

14   -- where does let's the necessary analysis come in?  You may

15   get down to where there's three documents and the trustee is

16   convinced, you know, what, I really don't need those

17   documents.

18           The privilege is being claimed, but I have all

19   these other documents so I really don't need those

20   documents.  So now we don't have to go in front of the judge

21   and argue about those documents.  That's the only way that

22   I've ever resolved a discovery dispute.

23           So I probably shouldn't have done it, was telling

24   myself don't do it, to stand up and say I think the problem

25   here and the reason you're wrestling with this is because

1    you don't have that.  You're being asked to issue an order

2    in a vacuum, outside of that case by case analysis.  And you

3    can --

4            THE COURT:  I'm not sure that -- I'm not sure

5    you're correct about that.  Because if that's your position,

6    then why did you present an order?

7            MR. HENZY:  Because we're trying -- because, Your

8    Honor, we're trying hard to be cooperative.  We are.  We

9    are.  In the right situation, we are trying.

10            You asked that we go and see if we could work to a

11    consensual order.  And we did that.  And that's what ECF 824

12    -- as Mr. Romney has told you, if you enter that order,

13    we're agreeing to that.  The debtor is consenting to that

14    order.

15            But that doesn't mean that it's not still

16    problematic, and that's the reason I think we're having

17    this, as I'll say, we're wrestling with this.

18            Because I -- because we're trying to fashion an

19    order that's going to cover a controversy that right now is

20    not in front of you.  But we have tried to work through

21    this.

22            THE COURT:  Well, I think -- I think it is in

23    front of me in some respects though.  And I'd have to think

24    about what you're saying, Attorney Henzy.

25            But, as I said before, before you got involved,

1   the trustee was appointed.  The motion was granted.  And

2   your client didn't appeal it.

3          MR. HENZY:  Oh --

4          THE COURT:  It didn't appeal the appointment of a

5   trustee.

6          But now, when the trustee's trying to carry out

7   the duties, you're trying to limit the trustee's ability to

8   do that and by asserting that you have a privilege that the

9   trustee is not able to exercise.

10          And now you're saying, okay, well, we'll let you

11   exercise it with regard to documents and these 2004

12   subpoenas that have been served.  Okay?

13          And the trustee is saying I think I need an order

14   telling me that I have this -- I have the privilege.

15          And whether or not that -- I mean, I'm not sure

16   you're correct about everything you've said, but I'll go

17   back and look at it.

18          But the point is is that I'm not going to --

19   whatever we do, we're not going to do it on a piecemeal

20   basis.  We're not going to do it on an incremental basis.

21   Because that is -- you know, the reason that the trustee was

22   appointed was for the best interest of the creditors.

23          And your client, before you, consented on the

24   record, in writing, that cause existed to either appoint a

25   Chapter 11 Trustee, dismiss the case or convert.

1    Cause, as you know, is not defined.  But to find

2    that cause existed to appoint a Chapter 11 Trustee, there

3    has -- there has to be a reason why that happened, right?

4    And the reason why that happened is because there's a

5    controversy over all these assets, whether they really

6    belong to the debtor or not.

7         And at one point, as I said I think last week, to

8    maybe Mr. Kindseth and maybe to you, the entity had pledged

9    the boat to the creditors, but now it's not, because there's

10   no plan.  So everything's changed in this case.  Every

11   single time we get to some point, the road curves.

12        And what I think Mr. Despins is trying to do is

13   say, okay, well, maybe the road can curve, but I need to

14   know what it is I can do.

15        The code says I can do all this stuff, but I'm

16   getting met with resistance and I don't need resistance.  I

17   need to figure out for the benefit of the creditors whether

18   or not these assets, or maybe even assets we don't know

19   about yet, are property of the estate to pay these

20   creditors.

21        MR. HENZY:  And, Your Honor, again, I apologize to

22   the extent that I've gotten us off topic.

23        But I may be wrong on this.  My understanding was

24   the debtor -- and it doesn't matter at this point, I don't

25   think it matters -- the debtor agreed that there was cause

1    for dismissal.  But --

2              THE COURT:  That's not accurate.  I'll tell you

3    why.

4              MR. HENZY:  Okay.  Okay.  That's fine.

5              THE COURT:  Because I asked that question --

6              MR. HENZY:  But we did -- but he didn't appeal.

7              THE COURT:  -- four times.

8              MR. HENZY:  He didn't appeal.  He didn't appeal --

9              THE COURT:  He didn't appeal it.

10             MR. HENZY:  -- the order.

11             THE COURT:  Didn't appeal it.

12             MR. HENZY:  No controversy whatsoever.  But I

13   don't think, Your Honor, that because a debtor files

14   bankruptcy and a debtor then has a trustee appointed that

15   whatever rights that that debtor has under the Federal Rules

16   of Evidence, the Federal Rules of Civil Procedure, the

17   Federal Rules of Bankruptcy Procedure and Bankruptcy Code

18   just go away.  The debtor still has rights.

19             The debtor, for example --

20             THE COURT:  That may be.  That may be.

21             MR. HENZY:  And that's -- so it's not -- I'm not

22   saying that Mr. Despins doesn't get to conduct his

23   investigation.  The debtor's not saying that.  That's

24   absolutely not saying that.

25             The debtor is not saying -- to the extent that

1     with respect to a document either Mr. Despins has inherited

2     the privilege or to the extent there's no privilege, to the

3     extent there's an exception, or whatever it is, he gets the

4     document.  There's no controversy there.

5              But to the extent that --

6              THE COURT:  So you're only agreeing -- your only

7     concern is about communications, not documents?

8              MR. HENZY:  No.  No.

9              THE COURT:  Then what is it?

10             MR. HENZY:  With respect to anything to the extent

11    that the debtor still does own the privilege, and hasn't

12    been waived, and there's no exception, then the debtor has a

13    right to say this is -- this is my privileged document and I

14    don't have to give it to anybody.  That doesn't go away

15    because he consented to a trustee being appointed.  And

16    because he didn't appeal the Court's order, that doesn't --

17    it doesn't go away.

18             THE COURT:  Well, I'm not sure that you're -- that

19    case law would support that blanket of a statement, Mr.

20    Henzy.

21             MR. HENZY:  I'm saying if you get past the test,

22    assume there's a document where the privilege does apply --

23    I'm not -- to go back to your point about the U.K. order,

24    Your Honor, to the extent that under some law, whether it's

25    U.K. law, whatever the law is, Mr. Despins has inherited the

1    privilege, then he should just -- he just can go to the U.K.

2    and say give me the documents.  What that order does do is,

3    it says, it does compel a waiver of documents which is

4    privilege.  So that's the issue.

5          So I'm just saying to the extent that there's a

6    slice of the world, that under the applicable case law, the

7    debtor and anybody else still has rights.  They don't --

8    they don't -- they get to assert those rights.  That's all.

9          THE COURT:  Well, then given what you just said,

10   then why doesn't your client tell Mr. Despins what's

11   privileged in the London litigation?

12         MR. KINDSETH:  Well, that -- Your Honor, that

13   circles back on the problem about the way that motion and

14   that order came down.

15         THE COURT:  No.  No.  But that's --

16         MR. HENZY:  Okay.  Remember --

17         THE COURT:  No.  No.

18         MR. HENZY:  Remember, that was a -- not in the

19   motion.  It got stuck onto a revised order.

20         THE COURT:  We had five hearings on it.  You can

21   argue that it wasn't in the motion.  We had hearings and you

22   had an opportunity to be heard.  You asked for an extension.

23   I gave you that extension.  We went through all that time.

24   You had an opportunity to be heard.

25         MR. HENZY:  Okay.

1          THE COURT:  And remember, we're still in a

2     situation where the standing of the debtor is in question

3     here.  If this is an insolvent debtor, which the debtor was

4     insolvent at the time that he filed, and he's still

5     insolvent, and now there's a trustee.  So have -- you have

6     circular issues here.

7          And the problem is why don't you just give him a

8     list of what you say is privileged?  Why don't you just --

9     why can't you just produce that?  Why can't you say, you

10    know what, Trustee Despins, I'm not giving you anything in

11    London and here's the documents why I'm not giving them to

12    you.  These are all privileged.  Why can't you do that?

13         MR. HENZY:  So I've said this before, Your Honor,

14    I think, and I think the U.K. counsel has said this, there's

15    a process that's supposed to be gone through and Mr. Despins

16    is trying to short circuit that.

17         THE COURT:  What's the process?  Nobody's put it

18    in front of me to tell -- show me what the process is.  I

19    keep hearing about process, but I don't have anything in the

20    record to support that there's a process.

21         MR. HENZY:  I'm not a U.K. lawyer, Your Honor.

22    I'm not -- I'm not in that litigation over there.

23         THE COURT:  I understand that, but your client has

24    an asset --

25         MR. HENZY:  Okay.

1    THE COURT:  -- in the United Kingdom that this

2    trustee is trying to find out about.

3    MR. HENZY:  Okay.  Someone who -- the lawyer over

4    there does not represent, and right now is not a party in

5    that action, is going to that lawyer and demanding that

6    documents be handed over.  Okay?

7    And I don't -- maybe I'm -- again, maybe I'm the

8    only one in the room -- if a lawyer from the U.K. comes, if

9    it's flipped around, and says to me give me these documents,

10    my answer is absolutely not.  Absolutely not, no way, not

11    doing it.  Okay?  And that is the dynamic here. There's a

12    litigation, not here, in the U.K. and --

13    THE COURT:  But the U.K. lawyer would do that if

14    Mr. Kwok said here's the list and tell them it's all

15    privileged.  Wouldn't they?  Wouldn't they?

16    MR. HENZY:   I'm not -- there's no way that I'm in

17    a position to do that given the way that this came down the

18    pike.

19    THE COURT:  Okay.  All right.

20    MR. HENZY:  And I've said -- hold on -- I've said

21    to Mr. Despins multiple times that I would work with him and

22    U.K. counsel to do exactly what Your Honor is talking about

23    and that offer has been rejected.  Okay?

24    So if there's responsibility here, I'll accept

25    responsibility when it's my responsibility.  But the

1    responsibility here that is not being worked through what I

2    think is the right way is not on me or on the debtor.

3              THE COURT:  Anything further, Mr. Despins?

4              MR. DESPINS:  Yes.  Very briefly, Your Honor.

5              This argument that you cannot review -- you cannot

6    decide this issue because it's not ripe because you don't

7    have individual documents before you, one, their declaration

8    regarding the meet and confer process said that it couldn't

9    be done that way, that guidance from the Court was required.

10   These are their words.

11             Second, courts have said that the balancing test

12   can be done on a category of documents.  If we went to Your

13   Honor and we said the privilege has passed on everything,

14   that's a different story.

15             But we are limiting it to administration of the

16   estate, assets, and claims.  And the point there is that

17   these are categories that are narrow, well defined.

18             And, for example, let's take the administration of

19   the estate.  Mr. Kwok was debtor-in-possession.  And Your

20   Honor knows that that means.  He was a fiduciary.  He has no

21   privilege over that once a trustee gets appointed.

22             The issue of whether he has a privilege over pre-

23   bankruptcy discussions, okay, I can see the debate there.  I

24   think the case law supports us.

25             But on the issue of Brown Rudnick advice or

1   communications with Brown Rudnick when he was a debtor-in-

2   possession, there's no debate in the case law that we have

3   access to that.  It's narrow.  It's a demonstration of the

4   case.  And he was acting as a fiduciary, not in his own

5   capacity.  And he was getting -- you know, shame on Brown

6   Rudnick if they were giving him advice on his personal

7   situation.  They were giving advice to him as a debtor-in-

8   possession.  And that's fundamental, Your Honor.

9           So the balancing -- you're doing the balancing.

10  You're doing it on a category-by-category document with some

11  very specific carve outs regarding the -- what do we call

12  the crime, I want to be precise about this, although it's

13  unfortunate,  but the rape and confinement allegations

14  carved out, the asylum issue carved out, you're doing the

15  balancing.

16          And courts, that's the way they've done it, by

17  categories of documents.  Where courts have been reversed,

18  the only circuit court that reversed, and in that case, it's

19  the same as here, where both sides agreed there should be a

20  balancing test, is that the Court did not look at any

21  documents or any category of documents.

22          And here the Court has right in front of it the

23  very narrow categories that we're raising.  And on that

24  basis you have the power to do this.

25          THE COURT:  Okay.  Anything further from anyone

1    else?

2         (No response)

3              THE COURT:  All right.  Thank you all for your

4    thoughts and I will continue to look at this.

5              We'll continue this hearing to Monday, September

6    12th at 2:00 p.m.

7              Mr. Romney, did you say you were going to submit

8    something, you might submit something by 1 o'clock tomorrow?

9

10              I know Trustee Despins and Attorney Bassett are

11    going to submit something with regard to the difference of

12    the two orders.

13              MR. ROMNEY:  I will confer with them and either

14    submit something on behalf of the debtor or we can agree on

15    an accurate or objective description of the issues, you

16    know, that are disputed.  I think it would be more efficient

17    to do it together, but time will tell if that will be

18    possible.

19              THE COURT:  Okay.  That's fair.

20              MR. ROMNEY:  Thank you.

21              THE COURT:  That's fair.

22              Is there anything else we need to address this

23    afternoon?

24         (No response)

25              THE COURT:  Okay.  Thank you.  That concludes the

110

1    hearing today on the Kwok matter.

2              MR. BASSETT:  Thank you, Your Honor.

3              THE COURT:  Thank you.

4         (Proceedings concluded at 3:31 p.m.)

5              I, CHRISTINE FIORE, Certified Electronic Court

6    Reporter and Transcriber, certify that the foregoing is a

7    correct transcript from the official electronic sound

8    recording of the proceedings in the above-entitled matter.

9

10

11    _____         September 14, 2022

12         Christine Fiore, CERT

13

14

15

16

17

18

19

20

21

22

23

24