**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK[1]<br><br>Debtor. | Chapter 11 Case No. 22-50073 (JAM)<br><br>September 23, 2022<br><br>Re: ECF No. 728 |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S LIMITED OBJECTION TO HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC'S MOTION TO ESTABLISH REPAIR RESERVE FOR THE LADY MAY**

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by and through its undersigned counsel, hereby submits this limited objection to HK International Funds Investments (USA) Limited, LLC's ("HK USA") *Motion for Order Establishing a Repair Reserve for the Lady May* [ECF No. 728] (the "Reserve Motion").

**I.    INTRODUCTION[2]**

1.    The Reserve Motion—based on high-level reports from vendors who have not conducted a thorough inspection of the Lady May—seeks to establish a $759,836.41 repair reserve (the "Proposed Repair Reserve") to return the Lady May to good working order. The Proposed Repair Reserve underestimates significant costs associated with the repairs, including (i) the marine-industry-accepted risk factors associated with project delay, supply-chain issues, and securing technicians; (ii) certain repairs that reasonably could arise based on the known issues; and (iii) ancillary costs related to the repair project. As such, the Proposed Repair Reserve poses a significant threat to an asset that Justice Ostrager of the New York Supreme

---

[1] The last four digits of the Debtor's taxpayer identification number are 9595.
[2] Unless otherwise stated all citations and quotations are omitted, all emphasis is added, and all defined terms have the same meaning as in the Reserve Motion [ECF No. 728].

1

Court has already found to be "beneficially own[ed] and control[ed]" by the Debtor,[3] that was improperly kept away from New York by the Debtor's daughter and an affiliated shell company for over a year and a half, and that was only grudgingly returned to the jurisdiction.

2. Additionally, the Reserve Motion does not adequately identify how the Repair Reserve will be funded. The Stipulated Order provides that any repair reserve should be "sourced . . . from the proceeds of the Escrow Funds." This approach ensures that the repair reserve is established either simultaneously with or *before* the Escrow Funds are returned to HK USA, as contemplated by the Stipulated Order. The simple solution to this is that, for a repair reserve to be established in accordance with the Stipulated Order, HK USA should be instructed to direct the Escrow Agent to transfer to a fiduciary account at the law firm of the Trustee (if he is willing to accept such funds, and, if not, in an alternative suitable account under control of the Trustee for purposes of disbursement) an amount sufficient to pay for *all* required repairs. PAX has proposed a mechanism for doing so in its proposed order which is attached to this Limited Objection as **Exhibit A** (the "PAX Proposed Order").[4]

3. For these reasons, and as discussed in detail below, PAX respectfully requests that the Court establish a $3,761,080.00 repair reserve (the "Repair Reserve Amount"), sourced from the Escrow Funds, as set forth in the PAX Proposed Order.

II. BACKGROUND

4. On February 3, 2021, the New York County Clerk of Court entered a judgment against the Debtor in the amount of $116,402,019.57 (the "Judgment").[5] To ensure satisfaction

---

[3] Decision and Order on Motion at 4, *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), NYSCEF Doc. No. 1181 [ECF No. 183-1 (Friedman Decl., Ex. 2)].
[4] PAX will continue to endeavor to reach consensus with HK USA and other parties regarding the terms of an order.
[5] Judgment, *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 3, 2021) (the "New York Action"), NYSCEF Doc. No. 716 [ECF No. 183-1 (Friedman Decl., Ex. 1)].

of the Judgment, Justice Ostrager issued multiple orders restraining the Debtor's interest in the Lady May. The Court first issued a temporary restraining order on September 30, 2020, preventing, among other things, the Debtor's "interference with any property in which he has an interest."[6] Shortly thereafter, the Court entered an order on October 15, 2020, restraining the Debtor from transferring ownership of his assets, or transferring those assets themselves, outside the New York courts' jurisdiction.[7] That order specified that "Mr. Kwok and/or the registered owners of . . . the yacht, 'the Lady May' are restrained from making or causing any sale, assignment, transfer, or interference with those assets."[8] Nevertheless, just over two weeks later, in violation of the Court's unambiguous October 15 restraining order, the Debtor moved the yacht out of the United States, to the Bahamas. On March 16, 2021, the Court, on PAX's motion, entered a conditional order of civil contempt requiring Kwok to return the Lady May to the Court's jurisdiction by May 15, 2021, or else pay a fine of $500,000 for every day the ship is not returned after that date.[9]

5.   The First Department affirmed Justice Ostrager's order holding the Debtor in conditional civil contempt, and directed the trial court to hold an evidentiary hearing "to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties."[10] That hearing was held on February 2, 2022. One week later, Justice Ostrager issued an order, finding that "the testimony . . . out of the mouths of [the Debtor's own] witnesses clearly and convincingly demonstrated that [the Debtor] beneficially owns and controls the Lady May and

---

[6] Decision and Order on Motion, *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Sept. 30, 2020), NYSCEF Doc. No. 591 [ECF No. 183-3 (Friedman Decl., Ex. 22)].
[7] Decision and Order on Motion, *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Oct. 15, 2020), NYSCEF Doc. No. 630 [ECF No. 183-3 (Friedman Decl., Ex. 23)].
[8] *Id.* at 1.
[9] Decision and Order on Motion, *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Mar. 16, 2021), NYSCEF Doc. No. 728 [ECF No. 183-4 (Friedman Decl., Ex. 36)].
[10] *Pac. All. Asia Opportunity Fund L.P. v. Wan*, 199 A.D.3d 423 (1st Dep't 2021).

has utter contempt for this Court and the judicial process," and ordering the Debtor to remit $134,000,000 to PAX by February 16, 2022.[11] On February 15, 2022, the Debtor filed for bankruptcy.[12]

6.  On March 1, 2022, PAX moved for relief from the automatic stay, to institute further proceedings to enforce Justice Ostrager's February 9 order and compel the return of the Lady May from foreign waters.[13] On April 11, 2022, HK USA consented to the entry of an order compelling the return of the Lady May to the jurisdiction of this Court,[14] and on April 29, 2022, the Court entered the Stipulated Order.

7.  In accordance with the Stipulated Order and to secure its obligation to deliver the Lady May to the navigable waters of Connecticut, HK USA deposited $37 million (the "Escrow Funds") with U.S. Bank National Association.[15] The Stipulated Order also requires HK USA "at its sole expense . . . to restore the Lady May to good working order."[16]

8.  To that end, Section 11 of the Stipulated Agreement contemplates a Repair Reserve. Section 11 provides:

> HK USA shall cause, at its sole expense, the service and maintenance identified in the Declaration and otherwise, if necessary, to restore the Lady May to good working order to be performed either prior to the satisfaction of the Delivery Obligation or thereafter upon order entered by this Court after notice and a hearing specifically delineating the time, place and manner by which such service and maintenance shall be performed, including, but not limited to ***a separate cash reserve (sourced, if available, from the proceeds of the Escrow Funds) in an amount sufficient to pay the estimated costs of the uncompleted service and***

---

[11] Decision and Order on Motion at 4, 10, *Pac. All. Asia Opportunity Fund L.P. v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), NYSCEF Doc. No. 1181 [ECF No. 183-1 (Friedman Decl., Ex. 2)].
[12] *Voluntary Petition for Individuals Filing for Bankruptcy*, ECF No. 1.
[13] *Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code*, ECF No. 57.
[14] *Statement of HK International Funds Investments (USA) Limited, LLC Regarding Motion of Pacific Alliance Asia Opportunity Fund L.P. for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code*, ECF No. 203.
[15] Stipulated Order at ¶¶ 1, 3, 11.
[16] *Id.* at ¶ 11.

4

> *maintenance tasks identified in the Declaration and otherwise to restore, if necessary, the Lady May to good working order (the "Repair Reserve") and such funds in the Repair Reserve shall not be released until the service and maintenance tasks have been completed.* HK USA shall permit representatives of PAX and/or the Committee to inspect the Lady May upon reasonable request.[17]

9. On July 13, 2022, PAX's expert, Dexter White of Engineering Operations & Certification Services, LLC, conducted his initial inspection of the Lady May afloat in its slip at Steelpointe Harbor Marina in Bridgeport, CT.[18] Specifically, Mr. White conducted a visual inspection of the Lady May's engine room, midship hold, anchor locker, tender stowage, galley and crew quarters, owner and guest accommodations, salon, dining room, bar, bridge, decks, and freeboard above the waterline.[19] This initial inspection revealed deficiencies requiring repair, for example:

- The starboard diesel engine fuel pump must be replaced.[20] Because of this issue, the Lady May is not seaworthy.[21] Once the new part is installed, a post-installation test must confirm the operational status of the engine.[22] Based on this deficiency, it is possible that there are issues with the port diesel engine that will likely require an inspection of the port diesel fuel pump to rule out.[23]

- The starboard stabilizer exhibits a hydraulic noise during operation due to a faulty check valve.[24] Once replaced with a new check valve, further testing is required to verify the issue has been resolved.[25]

- The bow thruster brakes are in "bypass" mode.[26] The condition requires troubleshooting to determine the root cause and repairs if necessary.[27]

---

[17] *Id.*
[18] *See* September 23, 2022 Declaration of Dexter White in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Limited Objection to HK International Funds Investments (USA) Limited, LLC's Motion to Establish Repair Reserve for the Lady May ("White Decl.") at ¶ 3.
[19] *See id.*
[20] *See id.* at ¶ 4.
[21] *See id.*
[22] *See id.*
[23] *See id.*
[24] *See id.*
[25] *See id.*
[26] *See id.*
[27] *See id.*

- There is paint damage on an area of approximately three feet by three feet on the starboard bow near the anchor.[28] To create an even appearance, a larger paint repair area should be used.[29] Moreover, a structural inspection is necessary to verify the damage is to the paint only.[30]

10. In addition, 26 valves require testing (i.e., the "Valve Service" described in the Reserve Motion).[31] The Valve Service will require technicians to remove, test, and, reinstall each valve.[32] This testing may reveal the need for additional work (such as removal of interferences or installation of replacement parts) and subsequent retesting.[33]

11. On August 25, 2022, Harrington Diving & Marine Services conducted a dive inspection at Mr. White's direction (the "Dive Inspection").[34] The Dive Inspection involved a close visual and physical examination of the entire submerged components of the vessel. The Dive Inspection found (i) a loose anode bolt at the bow thruster, which caused the anode to rattle, and (ii) that the hull of the vessel was covered in sea growth.[35] According to Mr. White, (i) if the loose bolt is left unaddressed, extended bow-thruster operation could cause the anode to break free, which could in turn damage the bow thruster; and (ii) to fully understand the Lady May's condition, a more detailed inspection is necessary after the vessel is hauled out and the bottom is power washed to clear away the sea growth.[36]

12. At the July 21, 2022 status conference (the transcript of which is attached as **Exhibit B**), HK USA's counsel stated that it would "present [an] estimate" for the cost of

---

[28] *See id.*
[29] *See id.*
[30] *See id.*
[31] *See id.* at ¶ 5.
[32] *See id.*
[33] *See id.*
[34] *See id.* at ¶ 6.
[35] *See id.* at ¶¶ 7–8.
[36] *See id.*

6

repairs, and would ask the Court "to order that . . . those amounts be reserved."[37] At that same hearing, HK USA's counsel described what it believed to be the extent of the "damage" needing repair—specifically, (1) issues with the sea valves, (2) a broken fuel pump, and (3) paint damage.[38] In the Reserve Motion, HK USA reiterated its view that the only repairs the reserve needed to cover are: (i) servicing valves in the hull; (ii) painting a portion of the hull; (iii) replacing the bilge boards; and (iv) repairing the starboard main engine (the "Proposed Repairs").[39]

### III. OBJECTION

#### A. The Proposed Repair Reserve is Inadequate

13. The Reserve Motion underestimates significantly the costs that may be required to restore the Lady May to "good working order," as contemplated by the Stipulated Order. In particular, the Reserve Motion omits costs relating to (i) the risks associated with not having a fully defined scope of repairs, or prolonged time out of water awaiting repairs; (ii) other costly repair items and/or tasks; and (iii) other ancillary costs.

14. **Risk.** The Proposed Reserve Amount does not factor in the industry-standard risk. In the marine industry, there is an accepted risk classification system that provides for risk-factor multipliers to cost estimates.[40] For example, for a repair project with the lowest level of risk—Class 1—project-cost estimates should be increased by up to 15%.[41] Class 1 repair projects are characterized by (i) a full and detailed understanding of the necessary repairs and deliverables, and (ii) a low likelihood that new repairs or issues will arise as the repair project

---

[37] Ex. B at 59:15-18.
[38] *See id.* at 58:19-59:14.
[39] Reserve Motion at 1.
[40] *See* White Decl. at ¶ 10.
[41] *See id.*

progresses.[42] At the other end of the spectrum are Class 5 repair projects, for which project-cost estimates should be increased by up to 100%.[43] Class 5 repair projects are characterized by (i) an incomplete and generalized understanding of the necessary repair projects, and (ii) a high likelihood that new repairs or issues will arise as the repair project progresses.[44] Projects move through the intervening risk classifications based on the level of project detail and the likelihood of discovering new issues.[45] According to Mr. White, the Lady May repair project represents a Class 5 risk (for which a 100% risk adjustment is appropriate), because (i) the vendor estimates are based on brief, high-level descriptions of the currently identified repairs —not a thorough inspection —and (ii) potential high-risk and cost issues (e.g., total engine replacement) that have not yet been ruled out.[46]

15. Nor does the Reserve Motion factor in the risk associated with current supply-chain issues or with securing technicians to service the yacht.[47] According to Mr. White, a reserve should take into account the foreseeable delay in obtaining necessary parts or securing technicians.[48] In the current environment, delays could extend repair times by 45 to 150 days.[49] Such a delay would also increase risks and costs.[50]

16. **Additional Repairs.** The Proposed Repairs are necessary, but may not be sufficient to bring the Lady May to good working order. For example, the Reserve Motion omits

---

[42] *See id.*
[43] *See id.*
[44] *See id.*
[45] *See id.*
[46] *See id.*
[47] *See id.* at ¶ 11.
[48] *See id.*
[49] *See id.*
[50] *See id.*

the following repair items/tasks that could prove necessary as time passes and as more is understood about the Lady May's condition:

    a. *Starboard engine replacement parts.* Until technicians are able to inspect the engine in detail and determine the extent of the damage, it is impossible to rule out repairs and/or replacements of other parts of the starboard engine.[51]

    b. *Engine-to-shaft alignment.* To lift out the engine for repair, the shaft must be disconnected. When the engine is lowered into place on mounts, the shaft is reconnected and checked for proper alignment, including the clearance outboard at the steady bearings near the propeller.[52] If the shaft is not aligned correctly, it creates vibrations that will wear the engine and bearings and may damage the propeller if it contacts the hull.[53]

    c. *Unforeseen hull-valve replacement parts.* Some valves removed from the ship may not pass testing. When the valve is opened to inspect the cause of failure, some internal parts will likely need replacement (e.g., ball, stem, seats, o-rings, or gaskets).[54] Which parts will need replacement cannot be known until the valve is opened up and inspected.[55]

    d. *A fuel pump inspection for the port engine.* An inspection of the port fuel pump has not been conducted yet, and could reveal similar wear as the starboard fuel pump.[56] If there is wear, but it is not as severe as the starboard pump, it may only require a new pump, alignment, and changing the lube oil.[57] But if the wear is more severe, then work similar to the starboard engine repairs will be required.[58]

    e. *Repairs to the port engine if damage to the fuel pump is found.* Given the extent of known damages to the starboard engine, it is possible that the port engine will also require repairs.[59] The extent to which the port engine will need repairs is thus far unknown and will only be assessable if/when the engine is examined by technicians.[60]

    f. *The need for an entirely new engine or set of engines.* It is possible that, over the course of conducting repairs, the technicians will determine that, due to extensive manhours and/or repair time and lack of available parts, a new set of engines is

---

[51] *See id.* at ¶ 12.
[52] *See id.*
[53] *See id.*
[54] *See id.*
[55] *See id.*
[56] *See id.*
[57] *See id.*
[58] *See id.*
[59] *See id.*
[60] *See id.*

9

needed.[61] This option may be a "last resort," but could become the best choice.[62] At this stage, the need for a new set of engines cannot be ruled out.[63]

17.     **Ancillary Costs.** The Repair Reserve Amount does not account for costs associated with (i) retaining a crew for the duration of repairs; or (ii) certifying the hull and shaft (by Lloyd's Register of Shipping or the American Bureau of Shipping).[64] Although not specifically related to repairs, these ancillary costs are necessary to bring the yacht to good working order and should be paid for out of the Repair Reserve, if the Court establishes one.

18.     In sum, taking into account (i) industry-accepted risk factors related to delay in sourcing parts, securing technicians, and/or making repairs (i.e., up to 150 days), (ii) unaccounted-for potential repair items/tasks, and (iii) the associated ancillary costs, an appropriate amount to put in the repair reserve, so as to ensure that the Lady May will be brought to good working order, is $3,761,080.[65]

**B. The Repair Reserve Should be Sourced from the Escrow Funds.**

19.     The Stipulated Order exhibits a clear preference that the funds be "sourced, if available, from the proceeds of the Escrow Funds."[66] The Escrow Funds are available and in the possession of the Escrow Agent. To ensure that the Repair Reserve is established before the Escrow Funds are returned to HK USA, PAX requests that any order issued in connection with the Reserve Motion include an instruction that the Escrow Agent transfer the Repair Reserve Amount in good funds from the Escrow Funds to a fiduciary account at the law firm of the Trustee (if he is willing to accept such funds, and, if not, in an alternative suitable account under

---

[61] *See id.*
[62] *See id.*
[63] *See id.*
[64] *See id.* at ¶ 13.
[65] *See id.* at ¶ 14.
[66] Stipulated Order at ¶ 11.

10

control of the Trustee for purposes of disbursement), which transfer shall establish the Repair Reserve in accordance with Section 11 of the Stipulated Order.

## IV.  CONCLUSION

20. For the foregoing reasons, PAX respectfully requests that the Court establish a Repair Reserve in the amount of $3,761,080.00, sourced from the Escrow Funds, in accordance with the Stipulated Order.[67]

Dated: September 23, 2022  
Hartford, Connecticut

**Pacific Alliance Asia Opportunity Fund L.P.**

By: */s/ Patrick M. Birney*  
Patrick M. Birney (CT No. 19875)  
Annecca H. Smith (CT No. 31148)  
**ROBINSON & COLE LLP**  
280 Trumbull Street  
Hartford, CT 06103  
Telephone: (860) 275-8275  
Facsimile: (860) 275-8299  
E-mail: pbirney@rc.com  
        asmith@rc.com

-and-

Peter Friedman (admitted *pro hac vice*)  
Stuart M. Sarnoff (admitted *pro hac vice*)  
Laura S. Aronsson (admitted *pro hac vice*)  
**O'MELVENY & MYERS LLP**  
Seven Times Square  
New York, NY 10036  
Telephone: (212) 326-2000  
Facsimile: (212) 326-2061  
Email: pfriedman@omm.com  
       ssarnoff@omm.com  
       laronsson@omm.com

---

[67] PAX reserves the right to address other arguments Debtor may raise in his pleading.

## **CERTIFICATE OF SERVICE**

       I hereby certify that on September 23, 2022, a copy of the foregoing was filed electronically and shall be served as required by Local Bankruptcy Rule 9013-2(b), with notice of this filing being sent by email to all Notice Parties by operation of the court's electronic filing system or by First Class U.S. mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties in interest may access this document through the court's CM/ECF System.

                                          */s/ Patrick M. Birney*
                                          Patrick M. Birney