# **EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                          *   Case No. 22-50073 (JAM)
                               *
      HO WAN KWOK,             *   Bridgeport, Connecticut
                               *   July 21, 2022
                Debtor.        *
                               *
* * * * * * * * * * * * * * *  *


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:              DYLAN P. KLETTER, ESQ.
                             Brown Rudnick, LLP
                             185 Asylum Street
                             Hartford, CT  06103

                             ERIC HENZY, ESQ.
                             AARON ROMNEY, ESQ.
                             Zeisler & Zeisler
                             10 Middle Street, 15th Floor
                             Bridgeport, CT  06604

For HK International Funds    STEPHEN M. KINDSETH, ESQ.
 Investments (USA) Limited,   Zeisler & Zeisler
 LLC:                         10 Middle Street, 15th Floor
                             Bridgeport, CT  06604

For the Creditor, Pacific    PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity   STUART M. SARNOFF, ESQ.
 Fund, L.P.:                 O'Melveny & Myers LLP
                             Times Square Tower
                             7 Times Square
                             New York, NY  10036


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES Cont'd:

| | |
|---|---|
| For the Creditor, Pacific Asia Alliance Opportunity Fund, L.P.: | PATRICK M. BIRNEY, ESQ.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT  06103 |
| For the Creditors Committee: | IRVE GOLDMAN, ESQ.<br>Pullman & Comley<br>850 Main Street, 8th Floor<br>Bridgeport, CT  06604 |
| For the Creditor, Rui Ma, Zheng Wu and Weican Meng: | KRISTEN MAYHEW, ESQ.<br>McElroy Deutsch Mulvaney & Carpenter<br>30 Jeliff Lane<br>Southport, CT  06890 |
| | CAROLLYNN H.G. CALLARI, ESQ.<br>Law firm of Callari Partners<br>One Rockefeller Plaza, 10th Fl.<br>New York, NY  10020 |
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings, LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the Chapter 11 Trustee: | DOUGLAS S. SKALKA, ESQ.<br>PATRICK R. LINSEY, ESQ.<br>Neubert, Pepe & Monteith, P.C.<br>195 Church Street, 13th Floor<br>New Haven, CT  06510 |
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |

1          (Proceedings commenced at 10:06 a.m.)

2               THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok.

4               THE COURT:  Good morning.  If we could have

5     appearances for the record starting with the debtor's

6     counsel, please.

7               MR. HENZY:  Your Honor, for Ho Wan Kwok, Eric

8     Henzy, of Zeisler & Zeisler.

9               THE COURT:  Hold on just one second.  Where's Mr.

10    Baldiga or someone from --

11              MR. KLETTER:  Hi.  Good morning.  Dylan Kletter,

12    from Brown Rudnick, here to deal with the motion to withdraw

13    as counsel.

14              THE COURT:  Okay.  Okay.  And who else?  I'm

15    sorry, sir.  Go ahead.

16              MR. ROMNEY:  Aaron Romney, Zeisler & Zeisler, also

17    for the debtor, Your Honor.

18              THE COURT:  Okay.  Thank you.

19              MR. KINDSETH:  And Stephen Kindseth for the

20    debtor, Ho Wan Kwok.

21              THE COURT:  Okay.  Thank you.

22              Go right ahead, Counsel.

23              MR. DESPINS:  Good morning, Your Honor.  Nice to

24    meet you in person.  Luc Despins, Chapter 11 Trustee.

25              THE COURT:  Good morning, Mr. Despins.  I'm sorry.

1    We only did see each other on Zoom, so I didn't meet you in

2    person before today, so welcome.

3            MR. SKALKA:  Good morning, Your Honor.  Douglas

4    Skalka, of Newbury, Pepi and Monteith, as proposed local

5    counsel for the Chapter 11 trustee.

6            THE COURTROOM DEPUTY:  Attorney Skalka, I cannot

7    hear you.

8            MR. SKALKA:  I am sorry.

9            THE COURT:  That's okay.  If you could say that

10   again, please.

11           MR. SKALKA:  Yes, Your Honor.  Douglas Skalka,

12   Neubert, Pepe & Monteith, as proposed local counsel for the

13   Chapter 11 trustee.

14           MR. LINSEY:  And Patrick Linsey, also Neubert,

15   Pepe & Monteith, local counsel for the trustee, Your Honor.

16   Good morning.

17           THE COURT:  Good morning.

18           MR. SKALKA:  Good morning.

19           MS. CLAIBORN:  Good morning.  Holley Claiborn for

20   the U.S. Trustee.

21           THE COURT:  Good morning.

22           MR. FRIEDMAN:  Good morning, Your Honor.  Peter

23   Friedman, from O'Melveny & Meyers, on behalf of Pacific

24   Alliance Group.

25           THE CLERK:  I'm sorry, Attorney Friedman, I can't

1    hear you.

2              MR. FRIEDMAN:  I'm sorry.

3              THE COURT:  It's kind of hard because we only have

4    a few microphones and we have a lot of people.  So, I'm

5    sorry.

6              MR. FRIEDMAN:  Good morning, Your Honor.  It's

7    Peter Friedman, from O'Melveny & Meyers, on behalf of

8    Pacific Asia Alliance.  I'm joined by Mr. Sarnoff.

9              THE COURT:  Good morning.

10             MR. FRIEDMAN:  And Mr. Birney from the Robinson &

11   Cole firm, our Connecticut counsel, is also here.

12             THE COURT:  Good morning.

13             MR. GOLDMAN:  Good morning, Your Honor.  Irve

14   Goldman, Pullman & Comley, representing the creditors

15   committee.

16             THE COURT:  Good morning.

17             MS. MAYHEW:  Good morning, Your Honor.  Kristen

18   Mayhew, McElroy Deutsch Mulvaney & Carpenter, on behalf of

19   creditors Rui Ma, Zheng Wu and Weican Meng.  And with me is

20   co-counsel Carollyn Callari.

21             THE COURT:  Good morning to both of you.

22             Okay.  The Court scheduled a status conference

23   today in accordance with the memorandum of decision denying

24   the motion to dismiss without prejudice and appointing a

25   Chapter 11 trustee.

1          That memorandum of decision indicated that within

2    14 days of the appointment of a Chapter 11 trustee that a

3    status conference would be held so that the Chapter 11

4    trustee could report to the Court on where things stand from

5    the Chapter 11 trustee's perspective and to also talk about

6    specific issues that the Chapter 11 trustee may be

7    addressing, reviewing, analyzing and to give the Court some

8    idea of where you think, Mr. Despins, we're heading with

9    regard to this case.

10          I also set the status conference because there was

11    a flurry of papers filed after the appointment that -- the

12    order appointing you, Mr. Despins, about your firm's

13    application -- your application to employ your firm, Paul

14    Hastings, and then also the motion to withdraw attorney

15    filed by Brown Rudnick, which was filed after the order

16    entered appointing Mr. Despins.

17          So I would like to hear from you, Mr. Despins,

18    first about the status of what you've been able to do, what

19    you would -- what you're intending to do, what the next

20    steps might in this case.

21          We will address the application insofar as to

22    discuss at least the application to employ your firm.

23          And then we will discuss the motion to withdraw as

24    counsel -- the debtor's counsel who's been involved in the

25    case since the beginning, Brown Rudnick.  Okay?

1    So, Mr. Despins, if you would proceed, please.

2    MR. DESPINS:  Thank you, Your Honor.

3    THE COURT:  And if you'd like to come forward.

4    And the other thing, Mr. Despins, if you -- if you

5    want at any time, if it would be helpful to you at any time,

6    for the Court to pull up any pleadings that you need to look

7    at, you can just let us know and the courtroom deputy can do

8    that for you.

9    MR. DESPINS:  Thank you, Your Honor.

10    So we have a presentation for the Court.

11    THE COURT:  Please.

12    MR. DESPINS:  I expect that it would take no more

13    than 15 minutes, but we have a visual aid, meaning that --

14    in written form --

15    THE COURT:  Okay.

16    MR. DESPINS:  -- that would help the Court in

17    following the presentation.  So if we could, distribute --

18    we have copies for everyone in the courtroom and for --

19    THE COURT:  Sure.  That would be great if you

20    would do that.  And then we can -- we can mark the

21    presentation as Trustee Exhibit 1.

22    (Trustee written presentation copy marked Trustee

23    Exhibit 1.)

24    MR. DESPINS:  Yeah.  I want to be clear, this is

25    not evidence.  It's just a work plan --

Ho Wan Kwok - July 21, 2022                                    8

1          THE COURT:  Understood.

2          MR. DESPINS:  Okay.

3          THE COURT:  It's just demonstrative, but it's

4    something that will help the Court, and we can put it in the

5    record.  Okay?

6          MR. DESPINS:  Absolutely, Your Honor.

7          And if -- Your Honor, would you like us to file it

8    as well?

9          THE COURT:  No.  It's all right.

10          MR. DESPINS:  Okay.

11          THE COURT:  We can take care of that.  Thank you.

12          MR. DESPINS:  Thank you.  Thank you, Your Honor.

13    Okay.  So I -- first of all, thank you, Your Honor, for

14    hearing from us on this matter.

15          So I will start with -- on page 2 with

16    administrative matters.  And some of this stuff, Your Honor,

17    is fairly routine and boring so I will not spend a lot of

18    time on it.  You know it already.

19          But just to confirm, we posted the bond for

20    $25,000.  We opened the bank account, that's item number

21    two.  Number three is just a reminder that there were three

22    Section 341 meetings on March 21st, on April 6th, but they

23    were not completed, so another one needs to be scheduled by

24    the U.S. Trustee.  So I wanted you to be aware of that.

25          THE COURT:  Thank you.

1          MR. DESPINS:  And then still in this list of

2     matters, the monthly operating reports, there are two

3     reports that are still due by the debtor prior to our

4     appointment and, therefore, these need -- I don't know if it

5     goes to the Brown Rudnick motion to be recused or somebody

6     else is going to pick that up, but this needs to be done.

7     And that's listed on page 2.

8          I just want to point out though at the bottom of

9     page 2 is the monthly operating reports, this is in bold

10    there, reflect that a third party has made disbursements for

11    the benefit of the debtor in amounts that averages

12    approximately 115,000 per month.  I think that's an

13    important data point.

14          Next page, Your Honor, bar date.  There was a lot

15    of back and forth on a bar date.  And I know you were

16    considering at that time the dismissal of the case so it

17    made no sense to enter an order for a bar date when the case

18    might be dismissed, but at this point the case is not being

19    dismissed and I think the bar date order should be entered.

20          I think you have the revised -- I'm told that you

21    have a revised version and we would encourage the Court to

22    enter the order because we need to know who's out there,

23    especially in terms of governmental entity, we need to

24    understand that.  So that's the bar date order.

25          Under item number six, that's the update on the

1    Lady May inspection.  So there was an inspection, Your

2    Honor, on July 13th with PAX's expert and an expert I hired

3    to basically oversee PAX's expert.  So let me explain this.

4              Obviously, we have no money and the estate has

5    zero dollars.  And PAX was doing its own review with a very

6    reputable expert and they're paying for that and we

7    appreciate that.

8              However, given the dynamic of this case, I could

9    not go to the inspection and say I'm relying on PAX's expert

10   alone, even though directionally we're aligned in the same

11   direction in the sense that both we and PAX want to know if

12   this yacht has problems or not.

13             So what I did is I hired Mr. Paul Derecktor, who

14   is a -- I don't know if Your Honor is aware of this --

15             THE COURT:  Yes.

16             MR. DESPINS:  -- that company was in --

17             THE COURT:  I am aware.

18             MR. DESPINS:  Were you --

19             THE COURT:  I mean, once you said the name.  I

20   didn't know you hired that person, but I -- I'm aware of the

21   company.

22             MR. DESPINS:  I don't know.  Were you the judge on

23   that case?

24             THE COURT:  No.

25             MR. DESPINS:  Okay.

1          THE COURT:  No, I was not.

2          MR. DESPINS:  Okay.  So he's a -- he has a

3    shipyard in the area.  He really knows boats.  But he agreed

4    to look over the shoulder of PAX's expert for the sum of

5    $2,500.  I figured that that was a modest sum to invest just

6    to make sure nobody would criticize us relying entirely on

7    PAX's expert.  So we've done that.

8          There are still discussions that need to happen,

9    and let me tell you the nature of these discussions.

10         Basically, what Mr. Derecktor has told me is, he,

11   said, look, anybody buying a ship of this size would

12   actually take it off -- out of the water to inspect the

13   hull.  And I said, well, how much does that cost?  Oh,

14   $400,000.  Forget about that.  We can't do that.  Is there a

15   plan B?

16         He said, well, you could send divers to go

17   underneath and inspect the hull because the ship came back

18   from Europe and often in the ocean you hit, you know, all

19   sorts of things, potentially.  And that would cost $2,500,

20   the divers.  So we were having discussions with PAX as to

21   does that make sense to do that.

22         And the second thing he mentioned is that we

23   should really do a sea trial.  And at first I thought we're

24   not going to take the ship out at sea.  He said, no, just

25   basically it's like -- it's like for a car.  Take it out for

1   a spin for half an hour just to make sure --

2           THE COURT:  I'm familiar with a sea trial.

3           MR. DESPINS:  Okay.  I was not.  And so that's

4   still being considered, Your Honor.

5           So at this stage we need to get together with

6   PAX's expert to combine our common views and go back to the

7   entity that's the registered ship owner.  So that's the

8   status of the inspection at this time, Your Honor.

9           But it was obvious, you know I'm not a ship

10  expert, that there's damage to the boat because you could

11  see when you just walked by it there's a, you know, a

12  portion of the front of the boat that was hit by something.

13  But, anyway, we'll -- that's proceeding.

14          Still, on the list of matters, you know, page 4,

15  automatic stay letters.  I directed my firm to send more

16  than 20 letters to various parties that are at the periphery

17  of this case.

18          So, for example, an entity called Golden Spring

19  New York, which Your Honor may recall has been providing

20  some of the funding in some situations.  I'm not

21  -- I don't want to go into the details, but they're clearly

22  within the universe of debtor related companies.

23          And then Bravo Luck, that's the entity that

24  allegedly has a trust agreement that provides that they own

25  the Sherry Netherland apartment.

1          So they're all listed there.  Well, some of them

2    are listed there.

3          But we also sent the same thing to Brown Rudnick,

4    which was acknowledged by them, and a firm in Greenwich,

5    Connecticut, Whitman Breed.

6          That was actually very interesting because I

7    received permission from the person who sold the house to

8    the debtor to get access to the closing statements, the wire

9    transfers, et cetera.

10          But when I called Whitman Breed, there's all we

11    can't give that to you because we're representing the debtor

12    on other matters.  I said, well, what does that have to do

13    with anything?  You didn't represent them in the sale, did

14    you?  No.  But we're not going to give you any documents.

15          So that means they are representing the debtor on

16    other matters.  And obviously we want them to preserve those

17    documents and us to get access to that.

18          So there were a number of these letters that were

19    sent, this is since our appointment, probably 20 of those.

20          Page 5, still (indiscernible) matters.  Just so

21    Your Honor knows, reaching out to key parties, obviously, we

22    started with the debtor.

23          So on the first day after the appointment, I

24    called Brown Rudnick and I said -- and by the way, I'm not

25    going to reveal any settlement discussion other than to say

1    that my first approach was to reach out to them and say why

2    don't we have a meeting to see if there's a global

3    settlement that could be done before we get into this very

4    expensive and very extensive process, and the next thing I

5    heard after that is that they were no longer counsel to Mr.

6    -- to the debtor.

7         But I want to make sure the approach -- our

8    approach is we don't have to spend money on this if we don't

9    -- if we don't have to.  I know it's going to be really

10   expensive if we have to go to all these jurisdictions

11   because there are a bunch of jurisdictions involved.

12        But we wanted to see if there was a number at

13   which there could be a global settlement and that didn't --

14   at least, to date, has not panned out.

15        So we reached out to counsel for the debtor.  We

16   reached out obviously to Mr. Goldman, counsel to the

17   committee, who has given us very good advice on the case and

18   all that.  Same with Pacific Alliance, Mr. Friedman.

19        We reached out to counsel to Genever Holdings,

20   that's the Chapter 11 entity, Your Honor.  Another

21   interesting conversation because I asked him who do you take

22   direction from in that case?.  He said, oh, Miles.  I didn't

23   know that was the way he used names -- he's known.  So I

24   said, who's Miles?  He said, oh, that's the Chapter 11

25   debtor.

1      So he's taking direction in that case from this

2  debtor.  So I said, well, I'm the Chapter 11 trustee now.

3  So he said, well, I guess I'm taking directions from you.  I

4  said, well, we'll -- you know, to be continued.

5      But, you know, I'll come back to that later, but

6  there's a lot of things to be discussed about that issue.

7  But I'll come back to it in a second.  So we reached out to

8  him.

9      We also reached out to former Judge Cyganowski who

10  was the court-appointed sales agent in that case.  And I

11  want it to be clear -- and I'll cover that later -- the

12  trustee is not taking the position that the sale should be

13  halted.  So that's not part of our game plan.  But I wanted

14  to reach out to her to introduce myself and also to get

15  feedback on what's happening with the property.  And she did

16  tell me, by the way, that the debtor is occupying that

17  property, the Sherry-Netherland in New York.

18      Then counsel to creditors. Rui Ma and Zheng Wu

19  and, Carollyn Callari, obviously, we reached out to her as

20  one of the important constituency.

21      Since the failed attempt with Brown Rudnick, we've

22  asked new debtor's counsel to have a meeting with the

23  debtor, not necessarily to discuss settlement, but because

24  we need to have a serious discussion with the debtor to make

25  sure the debtor understands the regime he's operating under

1    now.  And we've asked for that last Friday.  We haven't

2    heard back a response to date.  Maybe we will soon.

3            Next, Your Honor, still on page -- now at page 6,

4    still administrative matters, management of pending

5    adversary proceedings.

6            So there are a number of adversary proceedings,

7    Your Honor.  Most of them relate to non-dischargeability.

8    And I want to be clear, because we approached the debtor to

9    say, hey, we would like to -- I'm not sure -- it's not

10   informal intervention, we would like a stay of these

11   proceedings.  And the initial reaction, well, it's not your

12   business.  This is a fight between the creditors and the

13   debtor.

14           And generally that's probably right, so maybe

15   they'll like that concession, except that from a court

16   efficiency and a point of view I think it would be a really

17   poor investment of the Court's time, and we would need to be

18   involved, and our time to go through now a non-

19   dischargeability complaint.  Because in order to do that,

20   you need to go through the claim.  And essentially you need

21   to say I have a claim, a good claim and it's non-

22   dischargeable.  Well, that would be duplicative of the

23   process that could take place later on on claims allowance.

24           And my point is why go through that brain damage

25   when there's no assets in the estate today, meaning when

1    there are assets to fight over, then by all means all these

2    proceedings should happen.  But to do that today would be,

3    you know -- obviously, you are the judge, you will decide

4    your calendar, but to us it seems like a really bad use of

5    the Court's time and of our time as well because we might be

6    in a position where we now need to go through the claims

7    allowance process while there are no assets in the estate,

8    which, you know, I believe firmly that there will be assets

9    in the estate one day, but today there are none.  And I

10   think it would be, you know -- anyways.  So that's our view,

11   Your Honor.  So I wanted to make sure you understood why we

12   filed this motion for a stay.

13       But we're not going to go and get involved against

14   a particular creditor on the issue of non-dischargeability

15   or for or against the debtor on that.  That's not our goal.

16   Our goal is from the case management point of view to make

17   sure that there's a good use of everyone's time including

18   Your Honor's time on these matters.

19       Page 7, number nine, there's another adversary

20   proceeding, and that's the one by the registered ship owner,

21   HK International.  They filed -- and that was the Zeisler

22   firm that represented the plaintiff and now they represent

23   the plaintiff and the defendant -- that's a little joke --

24   until now I'm going to be substituted as the defendant in

25   that action.  And I'll come back to that towards the end,

1    but they gave us a 30-day extension to answer or to

2    otherwise move in that case.

3            Page 8, Your Honor, number ten, intervention

4    appearance and other litigation.  The debtor has 25 active

5    lawsuits.  I'm not -- and I don't want to be cavalier about

6    this -- I'm not that concerned today about the ones where

7    he's a defendant because the stay, you know, applies.

8            It's the litigation where he's a plaintiff.  We

9    need to get our arms around value if any of those claims and

10   we've started reaching out to those people.  But I don't

11   mislead, Your Honor.

12           We have not made a lot of progress on that.  That

13   is something that we need to do over the next, you know,

14   month or so.  So the concept there is to go and talk to

15   counsel for the debtor in -- where the debtor's a plaintiff

16   to see what is the nature of litigation.  Is there value

17   there for example?  If there is, I want to know sure Your

18   Honor knows this.

19           There's a, I think, a $1 billion -- that's the

20   asserted number -- where he's suing UBS in the U.K., and so

21   obviously I reached out to counsel and hopefully we'll have

22   a discussion with them to say what is the litigation about,

23   understanding that, et cetera.  So that's one example of

24   those.

25           Next, number eleven, is contact with the

1   Securities and Exchange Commission.

2           So I don't know if Your Honor saw this -- you

3   probably don't spend your time looking at the claims docket

4   -- but there was a claim filed by the SEC and basically --

5   and it's described there -- they are saying they've

6   conducted an investigation for, you know, where they may --

7   for violation of securities laws.  And that's not good news,

8   not only for --

9           THE COURT:  They didn't assert any dollar amount?

10  They said that they're investigating, is that what it says?

11          MR. DESPINS:  Yeah.  Well, it's -- we have the

12  quote there I think, but, you know, they're investigating,

13  and they may actually file a civil action against the debtor

14  to seek disgorgement and all that.

15          So I've dealt with the SEC before, and I'm saying

16  this with all due respect to them, my concern is the diluted

17  effect that could have on claims of, you know, Mr. Goldman

18  represents for example.

19          And so I've reached out to the SEC and we're at a

20  very preliminary stage.  There have been no substantive

21  discussions, but I want to understand exactly what is their

22  issue, what is it related to, and also whether they're aware

23  of any assets that we're not aware of.  So that is -- and,

24  again, I don't want to mislead you -- that just started this

25  week so not a lot of progress on that front.  That's the

Ho Wan Kwok - July 21, 2022                                            20

1    SEC.

2              THE COURT:  Didn't they just -- and this claim

3    that they filed, it was recent, wasn't it?

4              MR. DESPINS:  Yes.  It was I'm going to say five

5    days ago, six days ago.

6              THE COURT:  Right.  Okay.

7              MR. DESPINS:  Something like that.  Yeah.

8              THE COURT:  Okay.  Thank you.

9              MR. DESPINS:  Okay.  Moving on to page 9, number

10   twelve, dealing with inbound inquiries.

11             We've received inquiries, Your Honor, from people

12   saying -- basically tips saying this guy is hiding assets

13   here or there.  And I want to be clear with Your Honor.

14   I've done a lot of these cases and I would say these often

15   fall into three categories.

16             The first category, what I'll call the crazies.

17   Meaning these types of cases attract all sorts of people,

18   some of them are completely irrational.  So that could be

19   door number one.

20             Door number two -- I'm not saying this applies in

21   this case but in that case, the target itself sends these

22   things anonymously just to send us to Africa, for example,

23   to spend money there when there's nothing to be -- to be

24   looked at.

25             Door number three, you can get a real tip, and

1    that's what we're investigating.  Some of them are very

2    specific as to persons holding funds.  And as I said, I

3    cannot validate those now.  I don't want to mislead the

4    Court and say, oh, well, we have -- we found $5 billion

5    here.  No, I can't say that.

6           But it shows that the Chapter 11 trustee process

7    is working because people are coming out of the woodwork to

8    say you should check the following things, things that we

9    would have never found ourselves initially at this stage

10   anyway.  As I said, these could be made up so we have to be

11   very careful about that, so I don't want to exaggerate the

12   importance of these.

13          Next, Your Honor, retention of professionals.

14   Well, you know we filed for the retention of Paul Hastings.

15   And obviously we retained Mr. Skalka and Linsey.  And the

16   point there is we're going to try -- and you'll see there's

17   no Paul Hastings lawyer other than myself here -- we're

18   going to rely heavily on them to handle a lot of the -- of

19   the matters before Your Honor.  And, you know, obviously you

20   know that firm very well.

21          Page 10, this is where we get into really more

22   meaty matters, Your Honor.  They titled theirs Exercising

23   Corporate Governance Rights.  The debtor lists various

24   entities as 100 percent owned by the debtor.  And one of

25   these entities is the Genever BVI entity, the British Virgin

1    Island entity.  And we've asked the debtor's counsel, all

2    three of them, meaning Brown Rudnick, the one in between,

3    and now, the Zeisler firm, to produce to us the corporate

4    governance documents relating to that entity.  To date,

5    nothing.

6             But that entity, you'll recall, BVI, owns the

7    Genever in the U.S., the Chapter 11 debtor.  And as I told

8    you, debtor's counsel believes he's taking instructions from

9    the debtor, at least until now.

10            And our point is we have -- the trustee jumps into

11   the corporate governance rights of the debtor.  That's horn

12   book law.  But nevertheless we probably will have to file

13   something with the Court to seek a confirmation of that, but

14   there are many cases that hold that.  And that means that we

15   can participate eventually in the Genever USA Chapter 11

16   case.  Obviously, we would never ask you to grant us relief

17   with respect to that.  We would go to Judge Garrity.

18            And one of the things we mention here is that we

19   will ask for a status conference in front of Judge Garrity

20   to say we're here, it's not the same landscape anymore.  We

21   need to complete our analysis of the Sherry-Netherland and

22   this issue of the trust that was -- for the son's company,

23   and we need to finalize that.  But the likelihood is that we

24   will appear there and say, Judge, this is a different

25   landscape.

1           But as I said at the beginning, we're not trying

2     to change the sale.  That's been preordained.  There's a

3     sale process.  We're not going to try to touch that.  But he

4     might say so what could you be doing?

5           Well, as I told you, Judge -- former Judge

6     Cyganowski told me that the debtor is still in that

7     apartment.

8           Well, if I control that entity that owns the

9     apartment, I want rental income from whoever I can get

10    rental income for.  So if the debtor doesn't want to pay

11    rental income -- by the way that would be thousands of

12    dollars.  It's not like $5,000 a month.  It would be -- you

13    know, I don't want to exaggerate, but it would be a very

14    large amount.

15          If the debtor wants to occupy the property, he

16    needs to pay the piper.  The piper is Genever and that's the

17    company we now control.  If the -- and if he doesn't want to

18    pay, then somebody else will rent this property for --

19    subject to approval by the board of the Sherry-Netherland,

20    et cetera, but this is a property that would pay top dollars

21    to rent, because this -- this apartment is not going to be

22    sold tomorrow.

23          These are very expensive apartments.  You need to

24    -- you know, I don't how to say that, but the market for

25    that is a very different market and it could take several

1    months before it's sold.  And by several months I mean

2    really several months.  So I'm not making a prediction as to

3    when it's going to sell, but it would be incredible for this

4    estate not to enjoy the benefit of rental income of a --

5    through a subsidiary that we control.

6              So I'm not asking you to comment or to rule on

7    that.  I'm sure my friends at Zeisler will have different

8    views of that, but I want to tell you that that's coming.

9              And by the way, Genever is an example, but there

10   are other companies as well.  And the issue there is we need

11   to get all the documents to understand exactly what's going

12   on.

13             We need to get bank accounts for these entities.

14   We need to understand all the transfers that were made.  And

15   that's, you know, that's something that we certainly started

16   with the corporate governance documents.  And we have not

17   received anything at this point, but we intend to pursue

18   that.

19             Page 11, number two, is what I just said.  We will

20   seek relief from this court to -- for the Court to confirm

21   that.

22             And on top of that, Your Honor, we would like to

23   be appointed under Section 1505.  And this is a bizarre

24   section in the sense that Chapter 15 -- what does this have

25   to do with this?  We're not in Chapter 15.  But that's a

1    section -- and I'm embarrassed to say I learned that -- I

2    relearned that recently -- that doesn't apply only in

3    Chapter 15.

4            That basically says, and it's quoted on page 11

5    there, "That a trustee may be authorized by the Court to act

6    in a foreign country on behalf of an estate created under

7    Section 541.  And an entity authorized to act under this

8    section may act in any way permitted by the applicable

9    foreign law."  So that would mean us going to the BVI to do

10   whatever we have to do there to get control of that entity.

11           And obviously we're trying to avoid going to court

12   if we have to because, you know, there's no money, but it's

13   not limited to the BVI.

14           There are other -- and that depends on the

15   targets, the tips we've gotten -- there are other potential

16   countries where we would seek discovery from parties and,

17   therefore, we will seek a broad ruling from the Court

18   appointing us under 1505 as the foreign representative, but

19   for the sole purpose of either getting documents or

20   recovering assets.  Again, that's to come.  I just want to

21   give you a heads-up on our plans on that.

22           At the bottom of 11, Your Honor, we would also

23   mention that it is typical in these cases for the Court,

24   meaning Your Honor, to enter a paragraph seeking the

25   assistance of foreign courts in getting the relief that a

1   trustee would seek.  And you might say, well, why would --

2   why do I need to do that?

3           First of all, it's kind of a gratuitous, you know,

4   request because it doesn't bind the Court in anyway.  But

5   it's -- in foreign courts, it's hugely important to be able

6   to point to a paragraph to say, look, the Court is asking

7   you or asking for your assistance in proceeding as quicky as

8   possible.  So you might say why is that necessary?

9           I'll give you an example.  BVI, god bless them,

10  they have a summer recess.  August, nothing happens.  I'd

11  love to have that system here too, but we don't.

12          So the only exception to that is if we can move on

13  an emergency basis.  So I'm not asking -- I'm just telling

14  you that if you ever see that, you'll know why we're asking

15  for that -- because that's the only way to get their

16  attention on an emergency basis during the month of August.

17  And, by the way, you know, August is just around the corner.

18  We may not need that for BVI, but in other countries we

19  might need it.  So we'll obviously come back to court on

20  that.

21          Page 12, the request for corporate governance.

22  I've already covered that.  We've asked for that.  This has

23  not been produced.

24          Page 13, item C, identify and if appropriate seek

25  turn over estate assets.  This is important.  You know, a

Ho Wan Kwok - July 21, 2022                           27

1     Rule 2004 motion, obviously we'll do that.  But Mr. Goldman

2     has already obtained that relief so we are -- we're going to

3     try to piggyback off of that to avoid duplication of effort

4     because he's already done a lot of that work.  So that's

5     certainly directionally what we want to do.

6           But the next point is the more important point,

7     Your Honor, which is that as part of this, we will seek

8     attorney/client privilege and work product of firms like

9     Brown Rudnick because the courts are pretty clear on that

10    that the trustee controls the privilege, especially for the

11    period where the debtor was a debtor in possession.

12          So you might say why do you want that?

13    Well, for example, the prepared schedules of assets and

14    liabilities, there may have been some exchanges there that

15    would be interesting to us.  And it's not limited to Brown

16    Rudnick.

17          By the way, I'm not -- I don't want to point

18    fingers at Brown Rudnick.  It's not a -- it's just an

19    example.  But certainly the firm in Greenwich, we -- you

20    know, they represent the debtor.

21          By the way, they didn't say we represent the wife

22    of the debtor or that company called Greenwich Land Trust.

23    They said they represented the debtor.  We want to

24    understand what they're working on and what's the work

25    product there because we believe that the trustee controls

1    that.

2              I'm sure that my colleagues will have different

3    views on that, but I want to make sure you know that's

4    coming, because I believe that as part of the investigation

5    that could produce results.

6              Now, page 14, still on identifying assets and

7    seeking turnover of assets for the estate.  The Lady May.

8              So I'm not going to read everything that's there,

9    but basically, Your Honor, we're quoting from Judge

10   Ostrager's decision in the New York Supreme Court.

11             And they're pretty -- and I don't want to be --

12   I'm not here to argument this thing because we're still

13   reviewing this and we will review it one more time, but it

14   appears that there are pretty strong findings there as to

15   the daughter, who of course is the sole shareholder of the

16   registered owner of the ship, and the debtor in terms of

17   control and beneficial ownership of the ship.

18             And what we're saying on page 15 is that subject

19   to finalizing our review, we believe that these findings

20   should be found to be binding by this court on the ship, the

21   registered shipowner company, even though that company

22   itself was not a party to that action.  But the daughter was

23   the witness.  Her lawyer cross-examined witnesses, et

24   cetera, et cetera, was a full participant in that trial.

25             And the New York Appellate Division had sent back

1    the case to Judge Ostrager asking that he make finding on

2    ownership of the ship.  So they had clear, clear, you know,

3    notice that the judge was going to do that.  And, in fact,

4    he did.

5           And at that point, again, subject to further

6    review, we believe that there's collateral estoppel even

7    though the company that's the registered owner was not a

8    party to the action because there privity.  It's the same

9    parties.

10          And the fact that -- sorry for my friends at

11   Zeisler & Zeisler, but they -- now they represent the

12   registered owner and Mr. Kwok that, you know, it's almost

13   like -- I'm joking -- almost summary judgment on that point

14   -- meaning that, yes, they are the same, they're all

15   together in this.

16          So in terms of collateral estoppel we believe that

17   should be binding.  Again, this is for later, but I wanted

18   to give you a heads-up because we don't believe they get to

19   do a do-over and like a ten-day trial here to put the same

20   people on, et cetera, et cetera, for the same issue.

21          Page 16, Your Honor, the Sherry-Netherland, I've

22   mentioned.  I told you what the game plan is there.  The

23   Greenwich homes.  You know, these are recent, you know, 2020

24   purchases by a company owned 100 percent by the wife of the

25   debtor.  Two houses.  And of course we want to know the

1    details of where the money came from.

2           And then point five, other assets.  I want to be

3    clear that we're not limiting ourselves to these three

4    buckets.  I will come back to the Court and update our work

5    product on that later, but I want to be clear the message is

6    not left that it's only the Sherry-Netherland and the yacht.

7    There are -- there are other assets that need to -- and the

8    Greenwich properties -- there are other assets that need to

9    be -- to be investigated.

10          Page 17, Your Honor, the claims review and

11   allowance process.  This is the same thing as I said before.

12   Everyone would like to have their claims allowed tomorrow in

13   the dream world, but it would be so counter productive to go

14   through that at this stage in terms of, you know, no money

15   to do that and to what end if we -- unless -- until we bring

16   money to fight over, let's not fight over that, but that's

17   just our view of the world.

18          So the timing of that, Your Honor, I would say

19   that's months away.  I don't want to mislead you and say,

20   oh, we'll get that done next month.  No.  We're going to try

21   not to focus on that in the coming months because the sole

22   focus is on bringing assets into the estate.  The sole,

23   short-term focus.

24          And then the last page is really a Chapter 11

25   plan.  The same thing, Your Honor, we're -- I don't want to

1    -- you know, I've always been told by my boss when I was a

2    young lawyer, you know, under promise and over deliver.  I

3    don't want to mislead you.

4          This will take -- unless there's a global

5    settlement, which we would welcome, this is going to take

6    months.  I don't want to mislead the Court on that.  I wish

7    that were not the case, but I have a sense of how things are

8    going to go and I think that's the way it's going to go

9    unfortunately.

10         So that completes our presentation, Your Honor.

11   I'm happy to answer any questions you may have.

12         THE COURT:  Okay.  Well, at the moment, I do have

13   a question or two, but I do appreciate very much the

14   presentation.

15         One of the reasons that in the memorandum of

16   decision that there was a status conference to be scheduled

17   was to have the trustee do exactly what you've done, which

18   is to come in and tell the Court where the trustee believes

19   things stand, what issues need to be addressed and what will

20   be coming, and what the ultimate goal may be.

21         And even if it's not reachable, I understand that,

22   you know, we're in Chapter 11, so obviously the ultimate

23   goal is some form of a plan if we get to that point.  So I

24   appreciate it.

25         Given what you've said it seems to me from your

1    perspective one of the most important things you'd like the

2    Court to address is to get an order issued setting a bar

3    date for claims.

4              And that was on hold somewhat during the -- before

5    your appointment because of issues regarding the possible

6    dismissal of the case, as you indicated in your

7    presentation, and because there was also a possibility of

8    conversion of the case.

9              There were other issues that the Court had to

10   consider, and so the bar date issue -- there were two issues

11   with regard to it.

12             There was -- there was an issue that the Court was

13   concerned that it was too short at that point in time

14   because the case was developing.  But now the case is five

15   months old.  There's a Chapter 11 trustee appointed because

16   of the information and pleadings submitted by various

17   parties in the case and the evidence presented during the

18   case.  And the record supported that.

19             So I agree with you that the Court will turn in

20   short order to that setting of a bar date.  And my thought

21   on that is the service of that order, who gets served?

22             You know, we can do publication and we might do

23   publication.  That might be something that you're interested

24   in.

25             But one of the things that I am concerned about is

1    the schedules and statements of affairs that were filed had

2    many qualifications associated with them.  I don't know if

3    the -- and I'm not sure you know either, so I'm not

4    suggesting that you would -- if the list of people who would

5    actually get served with the notice of bar date would be

6    sufficient in this matter?

7           So I think what we may do, and I'd like to think

8    about it, is consider how that order would be served,  and

9    whether or not publication is appropriate in addition to

10   service and how publication would be accomplished, where

11   publication would actually be made?

12          And I'd ask you to think about that.  I don't know

13   the answer to those questions.  As I sit here right now, I'm

14   raising those issues in order for all of us to think about

15   the fulsomeness of the notice that would be provided on a

16   bar date for filing claims.

17          MR. DESPINS:  Your Honor, you raise a very good

18   point.  I would like to be able to revert back to the Court

19   on that, especially the publication aspect and where, how.

20   So I said that it would be important to (indiscernible)

21   order, but it's not a matter of days.  You know, but we will

22   revert back to the Court on that point.

23          THE COURT:  I appreciate that.  And I will think

24   about it as well.  You know, there have been cases over the

25   years and cases recently issued in different circuits about

1    actual notice versus constructive notice and -- on a bar

2    date and things of that nature, so I want to make sure that

3    we are all thinking -- we're doing the best we can under the

4    circumstances as presented so that people have appropriate

5    notice with regard to the filing of a proof of claim.

6          So with regard to the rest of the information that

7    you've submitted, again, I appreciate it very much.  This is

8    what the Court was looking for with regard to the -- I

9    haven't looked yet, but I see in your report or your

10   presentation the adversary proceeding issues.

11         So have you filed a motion to stay in every

12   adversary proceeding?  There was just an adversary

13   proceeding filed yesterday.

14         MR. DESPINS:  Yesterday.

15         THE COURT:  And the day before.

16         MR. DESPINS:  So we filed in three, but we will

17   file a supplemental --

18         THE COURT:  Okay.

19         MR. DESPINS:  -- motion to stay in the others.

20         THE COURT:  And I'll have to look at those

21   obviously.  And the way that our motion practice works in

22   adversary proceedings under our local rules is that parties

23   have 21 days to -- there's a responsive -- there's a

24   responsive date of 21 days to object or not object, you

25   know, to do whatever they feel is appropriate with regard to

1    a motion and then the Court would determine whether or not

2    there would need to be a hearing.

3          Now, I believe in some of the earlier adversary

4    proceedings that 21-day period might run into a time frame

5    that might present a problem.

6          So I will take a look at those adversary

7    proceedings.  And if there's some issue as to waiting for

8    that response period to pass, I could I believe issue some

9    kind of order either extending the response period or

10   extending the periods of time that are already in existence

11   subject to a ruling on the motion to stay the proceeding.

12         Or, of course, if you have the consent of the

13   parties on the staying of the adversary proceeding, then I

14   would not understand -- or I would be surprised as to why I

15   would not grant a stay of those adversary proceedings.

16         MR. DESPINS:  Thank you.  And to be -- to be fair,

17   we just started with the stay process.  But for the life of

18   me, I don't know why the debtor would want to forward with

19   that or why the people seeking the non-dischargeability want

20   a ruling on that today or spend a lot of money on that

21   today.  But it's their prerogative, so we will seek the

22   consent.

23         THE COURT:  Right.  But if you are able -- if the

24   parties in each of the adversary proceedings consent to the

25   stay, then the stay will be granted --

1          MR. DESPINS:  Yeah.

2          THE COURT:  -- subject to, you know, further order

3     of the Court and the progress of the case.

4          I agree with you that it is not the goal of the

5     Court to have the party -- all parties, no matter what their

6     issues may be, to spend money needlessly.  No one wants

7     that.

8          But we need -- but we need to just make sure that

9     the process is properly followed and that the Federal Rules

10    of Civil Procedure are properly followed.  But if you obtain

11    the agreement of the parties in those adversary proceedings

12    to stay the adversary proceedings, then they will be stayed.

13    Okay?

14         MR. DESPINS:  Thank you, Your Honor.

15         THE COURT:  All right.  I'm not sure that there's

16    anything else I have a question about.  I understand that

17    there are a lot of things that you're reviewing and

18    different steps that you may be taking in short order and

19    the Court will attempt to address those as quickly as they

20    come before the Court.  I'm just looking to make sure that

21    there's nothing else that I have any questions about.  I'm

22    just looking at your presentation again.

23         (Pause)

24         THE COURT:  I think those were the two issues that

25    stuck out to me, were the bar date order and the stay -- the

1    stay motions in the adversary proceedings.  Because I do

2    agree with you that many of the other things that you've

3    discussed are developing and that you're addressing them in

4    due course, and that you will be seeking relief from the

5    Court when it -- you believe it's necessary to do so and

6    appropriate to do so.

7            So I don't have any other questions at the moment,

8    sir.  Thank you very much.

9            MR. DESPINS:  Thank you.  Thank you, Your Honor.

10           MR. HENZY:  Your Honor, may I be heard?

11           THE COURT:  Mr. Henzy, you may be heard, but we

12   still have some issues that I -- we need to resolve from the

13   Court's perspective and the United States Trustee's Office's

14   perspective on the issue of who represents the debtor.

15           And right now, Brown Rudnick represents the

16   debtor.  Brown Rudnick didn't state any reason in its motion

17   to withdraw as to why it's withdrawing its appearance.

18           And Brown Rudnick had to go through the process

19   that every debtor's counsel has to go through which is to

20   file an application to be employed, to submit a

21   disinterested affidavit, to comply with Bankruptcy Section

22   327(a) and Rule 2014, and our local Rule 2014.  And there's

23   nothing in the order appointing them that says that they can

24   file a motion to withdraw as debtor's counsel.

25           So while I understand you want to be heard, you

1    are not at this point debtor's counsel.  And --

2              MR. HENZY:  No.  I am.  I absolutely am, Your

3    Honor.

4              THE COURT:  Well, you're not in the -- how are you

5    debtor's counsel under the bankruptcy code --

6              MR. HENZY:  The debtor -- the debtor --

7              THE COURT:  -- Mr. Henzy?

8              MR. HENZY:  The debtor's now out of possession and

9    does not need to file an application under 327 to --

10             THE COURT:  Where's the case law that says that,

11   Mr. Henzy?

12             THE COURT:  It's, Your Honor, 327 itself provides

13   -- 327(a) provides --

14             THE COURT:  So you can be counsel even if you're

15   disinterested and you have a conflict just because the

16   debtor's no longer in possession?

17             MR. HENZY:  Absolutely.

18             THE COURT:  I'd like to see a case law that says

19   that.

20             MR. HENZY:  I'm not going to be able to have case

21   law for you, Your Honor, because 327 -- I think 327(a) makes

22   us the trustee, and in parens, debtor in possession, because

23   debtor in possession has powers of a trustee -- has to --

24   has to retain counsel pursuant to court order.  But there is

25   no requirement -- and, Your Honor, in Chapter 7 cases,

1    debtors are not retained --

2            THE COURT:  We're not in a Chapter 7 case, Mr.

3    Henzy.

4            MR. HENZY:  I understand.  But this is -- this is

5    now a debtor out of possession.  I don't think -- I mean, I

6    don't -- I hate to -- I want to be careful, Your Honor, and

7    with all due respect, you're asking me to give you cases

8    that say 327(a) says what it says, but I'm not aware of any

9    cases --

10           THE COURT:  No.  I'm asking you to give me a case

11   where there's a Chapter 11 trustee appointed and debtor's

12   counsel, who was debtor's counsel, can just withdraw and

13   someone else can step in without having to meet any of the

14   requirements of the bankruptcy code --

15           MR. HENZY:  The --

16           THE COURT:  -- let me just finish, please -- of

17   the bankruptcy code and the rules and have a conflict of

18   interest where they represent an entity that's owned by the

19   debtor's daughter who's clearly an insider under the

20   bankruptcy code.

21           MR. HENZY:  Your Honor, there are cases -- I don't

22   believe that there are cases that I'm aware of which -- let

23   me put it this way. I'm not aware of any cases that say that

24   a debtor out of possession does not need to file a retention

25   application with respect to its counsel.  Because, again, I

Ho Wan Kwok - July 21, 2022                                    40

1    think the plain language of 327(a), and I don't know if any

2    counsel here would say the contrary, only provides a debtor

3    in possession has to do that.

4         I do know that there are cases, and we can get

5    those to you, dealing with whether a counsel for a debtor

6    post appointment of a Chapter 11 trustee may be paid by the

7    bankruptcy estate.  And generally the answer to that

8    question is no.  And the basis for that is that debtor's --

9    counsel for debtor out of possession is not retained

10   pursuant to 327(a) and is not covered by 330 and 331.

11        There are cases where courts haves said that

12   counsel for a debtor out of possession may be paid, but

13   really on a substantial contribution type of basis as

14   opposed to their counsel retained under 327(a) and subject

15   to the requirements of 330 and 331.

16        And I can get you those cases, Your Honor.  But I

17   -- that's a little bit different.  Those cases are saying

18   that counsel for a debtor out of possession is not 327

19   counsel and not subject to 333, 330 and 331 in the context

20   of saying usually you can't get paid by the bankruptcy

21   estate.  So I will get you those cases.

22        THE COURT:  Okay.  Is that the Office of the

23   United States Trustee's position?  There's no conflict here?

24   Zeisler & Zeisler can represent the debtor because the

25   debtor's no longer a debtor in possession?

1          MS. CLAIBORN:  Your Honor, the U.S. Trustee is

2     still evaluating that issue.

3          I do think there's one issue that I want to raise

4     with the Court that I don't think Attorney Henzy would

5     dispute which is that as counsel to a debtor they have an

6     obligation to disclose the compensation agreements or

7     otherwise that they have with the debtor.

8          THE COURT:  That's absolutely going to happen, so

9     you don't have to make that argument.

10          MR. HENZY:  Yeah.  I don't -- I don't --

11          THE COURT:  Mr. Henzy, if you're -- if you're

12     accurate, if you're correct, then whomever pays you could

13     take whatever money that might be available to creditors of

14     the estate and just continue to pay you.

15          MR. HENZY:  That's not true.  I think that's not

16     correct.

17          THE COURT:  How is that not true?

18          MR. HENZY:  So I can't -- I a hundred percent

19     agree we need to file our 329 2016(b) statement.  My

20     understanding is I have 14 days from the time I filed my

21     appearance to do that and we will do that.

22          I can't -- again, back to the cases that I'm

23     mentioning, I can't get paid from estate assets.

24          THE COURT:  Where in 329 does it say you file an

25     application to be employed?

1        MR. HENZY:  Oh, it doesn't, Your Honor.

2        THE COURT:  Right.

3        MR. HENZY:  No.  I'm not -- I'm sorry.

4        THE COURT:  So how is 329 applicable?

5        MR. HENZY:  Oh, I -- under 329, I believe what

6   Attorney Claiborn was referring to, I still have to file the

7   statement required by 329 and Rule 2016(b).

8        THE COURT:  So if you're a debtor -- let's carry

9   your thought process out.  If you're no longer a debtor-in-

10  possession and you don't have to be subject to any of the

11  Court, any of the oversight of the Court that's in the

12  bankruptcy code or the rules, then why do you have standing

13  to say anything?

14       MR. HENZY:  Because I represent the debtor out of

15  possession.  The debtor out of possession --

16       THE COURT:  Okay.  You represent the debtor out of

17  possession.  In your Chapter 7 cases that you're talking

18  about, the Chapter 7 debtor has no standing unless and until

19  it's proven that there be some surplus for the Chapter 7

20  debtor.

21       And at this point, we all know -- everybody knows

22  -- Mr. Despins knows, he took on this assignment knowing

23  that there's no money in this estate, so how do you have

24  standing to argue anything.  If you take your argument to

25  its fullest extent, you're not subject to disinterestedness,

1    you're not subject to conflicts, all you have to do is

2    disclose where your money -- the money you pay -- get came

3    from, then why do you get to say anything?

4              MR. HENZY:  I think on certain issues, Your Honor,

5    I don't disagree with you.  The debtor may have no standing.

6    And you may tell me to the extent I want to be heard on such

7    issues that you're not going to listen to me.  And I would

8    understand that.  I think that a debtor out of possession

9    does have standing with respect to certain issues.

10             THE COURT:  Which ones?

11             MR. HENZY:  Mr. Despins addressed the 523 actions

12   that are pending and his motion for stay with respect to

13   those actions and made certain representations to the Court

14   about the debtor's position on those.

15             Certainly Mr. Kwok has standing in the --

16             THE COURT:  I don't think he made any

17   representations --

18             MR. HENZY:  Oh, he --

19             THE COURT:  -- about the debtor's positions.  He

20   said that --

21             MR. HENZY:  I think he did.  He did.

22             THE COURT:  This is a -- this was a -- this is a

23   -- I didn't say this was evidence, number one.  I said it

24   was a demonstrative pleading that I would allow to be

25   admitted on -- in the record as Exhibit 1.  That's all.  I

1    didn't say I'm going to make any findings or rulings or

2    anything based upon what Mr. Despins provided to us today.

3            MR. HENZY:  Understood, Your Honor.  I was

4    answering your question.  I don't think that you would say

5    that the debtor doesn't have standing in the 523 actions.

6            THE COURT:  Okay.  But if the actions are stayed,

7    let's -- let me just -- presume the actions are stayed, then

8    there's nothing for the debtor to worry about until they're

9    not stayed, correct?

10           MR. HENZY:  I don't agree with that necessarily.

11   But I --

12           THE COURT:  Well, there's no pleadings requirement

13   or anything that the debtor would need to undertake while

14   the actions are stayed, correct?

15           MR. HENZY:  If the actions get stayed, that may be

16   correct.  I was trying to answer your question, Your Honor,

17   on standing.

18           THE COURT:  Okay.

19           MR. HENZY:  There may be matters that the debtor

20   does not have standing to be heard on.  I don't disagree

21   with you.

22           And there -- I think there will be matters that

23   the debtor does have standing to be heard on.  And the

24   example -- because it was in Mr. Despins' presentation --

25   was talking about the 523 actions.  If we're talking about

1    the 523 actions, I don't think that Your Honor would say

2    that the debtor does not have standing.

3            THE COURT:  Well, we're not talking about the 523

4    actions right now, right?  You didn't rise to talk to me

5    about the 523 actions.

6            MR. HENZY:  Actually, I did.

7            THE COURT:  Oh, you did.  Okay.

8            MR. HENZY:  I did.

9            THE COURT:  Then go right ahead.

10           MR. HENZY:  Okay.  I rose to make a very few

11   points.

12           THE COURT:  Okay.  Go right ahead.

13           MR. HENZY:  Okay.  One point, I want to be clear

14   because I have not been involved in this case.  I have

15   reviewed some of the record, but my sense is that people are

16   or parties want to make certain characterizations about Mr.

17   Kwok and about his approach to things.

18           On the 523 actions, what the trustee's asked us,

19   the trustee's position to us initially was that upon his

20   appointment he was substituted into the 523 actions.  That's

21   just -- I believe that's just incorrect, Your Honor.  I

22   don't think that the trustee becomes a defendant -- the

23   defendant in the 523 action.

24           THE COURT:  Okay.

25           MR. HENZY:  So our response to counsel for the

1   trustee was we think you're -- because we were being asked

2   what's -- we want the -- we want a stay, what's your

3   position?  And our response -- because we're now the

4   defendant in these actions -- and our response was no,

5   you're not.  In some sense, we don't -- we don't know what

6   you're talking about.  Okay.

7        So it's not that -- Mr. Kwok is not refusing to

8   answer sort of a basic question like that or trying to be

9   difficult just for difficulties' sake.  I think that point

10  is important to make.  Again, I think the parties are --

11  have or are going to characterize Mr. Kwok's approach in

12  certain ways that I think are not fair.

13       Again, with respect to the 523 actions, we were

14  asked will you agree to a stay are actions that creditors

15  have filed against Mr. Kwok.

16       And to your point, Your Honor, if those actions

17  are stayed, you said Mr. Kwok would have nothing to worry

18  about.  Okay.  I don't know that I necessarily want to agree

19  with the trustee that these actions are going to be stayed

20  and be criticized by the people who filed them.

21       Again, my point here is not to litigate or argue

22  whether a stay should enter, or the basis for those 523

23  actions, or what rights the trustee may or may not have in

24  those actions.  I just wanted to respond to Mr. Despins'

25  presentation on the 523 actions because to the extent

1    possible I want to avoid an unfair characterization of how

2    Mr. Kwok is approaching things.

3         We do -- we are counsel for HK International,

4    okay, which is the title owner of the Lady May.  And

5    notwithstanding that Mr. Despins said he was not going to

6    argue, he argued.  I just want to be clear.

7         And Your Honor made the point, there's been no

8    evidence taken today that the document, that was handed up

9    is not in evidence, Mr. Despins' presentation is not

10   evidence.  So that's all fine.

11        I do want to make the point that we absolutely, HK

12   International, absolutely disputes that anything that

13   happened in New York is binding in this court.

14        You know, the document handed up takes snippets

15   out of lengthy proceedings and lengthy rulings by the judge

16   there.  The ownership of the Lady May is going to be

17   litigated.  So I just want that to be --

18        MR. HENZY:  How are you going to represent both HK

19   International and Mr. Kwok in that adversary proceeding that

20   HK International filed against Mr. Kwok and the bankruptcy

21   estate as to the title to the Lady May?  Isn't that an

22   absolute and obvious conflict of interest?

23        MR. HENZY:  Here it is not, Your Honor.

24        THE COURT:  How is that?

25        MR. HENZY:  And one thing I absolutely agree with

1    Mr. Despins on is that upon his appointment he automatically

2    became the defendant in that action and Mr. Kwok is no

3    longer a defendant in that action.

4              THE COURT:  But you still represented -- it

5    doesn't matter.  You represent HK International and now you

6    represent Mr. Kwok.  How is -- whether you're no longer

7    involved in that adversary proceeding doesn't matter.

8              MR. HENZY:  No.  He's no longer involved.

9              THE COURT:  It doesn't matter.

10             MR. HENZY:  It does matter.

11             THE COURT:  No.  It actually doesn't.

12             MR. HENZY:  Under the rules of --

13             THE COURT:  It's an actual conflict of interest.

14   You are -- you cannot represent -- you took on the

15   representation of Mr. Kwok when there was an adversary

16   proceeding pending against Mr. Kwok that your firm filed on

17   behalf of HK International.

18             MR. HENZY:  We took on the representation of Mr.

19   Kwok after Mr. Despins --

20             THE COURT:  But, see, you want to have it both

21   ways.  You want to say, oh, in that adversary proceeding,

22   Mr. Despins is automatically the defendant, but in the

23   523's, he's not.

24             MR. HENZY:  Well, I --

25             THE COURT:  That's what you're arguing, right?

1              MR. HENZY:  That is what I'm arguing.  And I think

2       that that is black letter law, Your Honor.

3              THE COURT:  Where?  Really?

4              MR. HENZY:  I don't --

5              THE COURT:  I'd like you to show me that black

6       letter law.

7              MR. HENZY:  I don't think Mr. Despins is going to

8       tell you that he is a defendant --

9              THE COURT:  I'm not asking Mr. Despins.  I'm

10      asking you.

11             MR. HENZY:  Your Honor, he is not the defendant in

12      the 523 actions.  I think that that is black letter law.

13             THE COURT:  Okay.  I'd love to see that black

14      letter law, please.

15             MR. HENZY:  I don't know if I'm going to find

16      cases that say that because I don't know that -- I don't

17      know that anybody would take the position that a trustee

18      becomes -- is the defendant in a 523 action, Your Honor.  I

19      don't -- that doesn't even make any sense to me.  Again,

20      with all due respect, Your Honor, that -- I don't know how a

21      trustee could ever be a defendant in a 523 action.

22             THE COURT:  Okay.  I understand what you said.

23             MR. HENZY:  Okay.

24             THE COURT:  Go ahead.

25             MR. HENZY:  Okay.  So I -- Mr. Kwok is no longer

1    the defendant in the Lady May adversary proceeding.  I think

2    Mr. Despins' position is that he now is the party that --

3              THE COURT:  All right.  Well, let's move on from

4    the 523.

5              There's a stipulation regarding the Lady May in

6    which the debtor and HK are parties to.

7              MR. HENZY:  Mm-hmm.

8              THE COURT:  Okay.  Are you -- so Mr. -- you're

9    saying you're not representing the debtor anymore in

10   connection with that stipulation, that it's Mr. Despins?

11             MR. HENZY:  I think the answer is yes and I think

12   that's Mr. Despins' position is that.

13             THE COURT:  Okay.  So you're saying your conflict

14   of interest is non-existent because Mr. Despins was

15   appointed as a Chapter 11 trustee?

16             MR. HENZY:  Yes.

17             THE COURT:  And you can, therefore -- okay, that's

18   your argument?

19             MR. HENZY:  That's my argument.

20             THE COURT:  Okay.

21             MR. HENZY:  Under Rule 1.7 in the Rules of

22   Professional Responsibility that -- that is my argument.

23   And I --

24             THE COURT:  I'm not looking at 1.7 in the Rules of

25   Professional Responsibility.  I'm looking at the bankruptcy

1  code and the bankruptcy rules.

2          MR. HENZY:  I'm not aware of anything in the

3  bankruptcy code and the bankruptcy rules, Your Honor, that

4  would -- that would govern this at this point.  I think it

5  is --

6          THE COURT:  So the only place you have standing

7  right now is in a 523 cause of action, isn't that correct?

8          MR. HENZY:  I don't -- I'm not prepared, Your

9  Honor, to think about every issue that might come up in this

10  case and tell you the debtor does or doesn't have standing.

11          THE COURT:  Well, you've argued that Mr. Despins

12  shouldn't be the Chapter 11 trustee.

13          MR. HENZY:  And I think -- I think the debtor does

14  have standing --

15          THE COURT:  Where do you have standing to argue

16  that?

17          MR. HENZY:  I don't know how a debtor would not

18  have standing to take a position that a trustee should not

19  be the trustee or that a trustee should be removed.

20          THE COURT:  I'd like to see some case law on that

21  because I don't think you're -- I understand your argument,

22  but I don't see support for your argument.  You're not

23  persuading me that you have a right -- that the debtor has a

24  right.

25          You had a right to object to the appointment of a

1     Chapter 11 trustee, which Brown Rudnick did.  They objected

2     to it.  They actually asked that the case be dismissed.  I

3     considered all of their arguments.

4            I considered all of the arguments of all the

5     creditors on conversion, appointment of a Chapter 11

6     trustee, whatever the issue may be.

7            The Court decided, rightfully or wrongfully, to

8     appoint a Chapter 11 trustee.  No one appealed that order.

9     Brown Rudnick even made a point of that that they didn't

10    appeal that order.

11           You're now attacking that order after the appeal

12    period has run.  And you're saying that you can do that

13    because you don't have to be subject to -- and when I say

14    you, I mean the law firm now supposedly representing the

15    debtor.

16           Which, by the way, Brown Rudnick's motion hasn't

17    been granted, so just understand that, that you don't have

18    to be -- you don't have to submit yourself to the same

19    standards that Brown Rudnick did because the Chapter 11

20    trustee's been appointed.

21           And the Chapter 11 trustee steps into your shoes

22    in all these other situations, including in the HK adversary

23    versus Mr. Kwok and PAX, but that you have standing to say

24    he can't be the trustee.  That's your argument?

25           MR. HENZY:  I think, Your Honor -- I think you're

1    conflating two issues.

2             THE COURT:  Okay.  Well, tell me how I'm

3    conflating them, please.

4             MR. HENZY:  So I don't think the standing issue is

5    about do I have standing or --

6             THE COURT:  No.  No.  On behalf of Mr. Kwok.

7             MR. HENZY:  Okay.

8             THE COURT:  I'm not --

9             MR. HENZY:  So does --

10            THE COURT:  But I --

11            MR. HENZY:  -- the --

12            THE COURT:  I'm not sure you're Mr. Kwok's lawyer

13   yet.  I'm not sure yet.

14            MR. HENZY:  I'm sure I'm Mr. Kwok's lawyer.

15            THE COURT:  I know you are.

16            MR. HENZY:  I understand you're -- I understand

17   you're not.

18            THE COURT:  I know you are, but I'm not sure you

19   are for purposes of this case.  You might be for other

20   purposes.

21            MR. HENZY:  I believe, Your Honor, that a debtor

22   has standing to challenge the appointment of a trustee.

23            And let me say I understand that the appeal period

24   on the order -- I guess I'll call it granting the trustee

25   motion, okay -- that's passed and no one appealed and Mr.

1   Kwok is not challenging that order in any way, shape or

2   form.

3             There's a separate order that Your Honor entered

4   --

5             THE COURT:  I agree with you.

6             MR. HENZY:  Okay.

7             THE COURT:  I agree.

8             MR. HENZY:  -- approving Mr. Despins' appointment

9   by the U.S. Trustee.  And the 60(b) motion was filed.  I

10  believe it was within seven days after.

11            THE COURT:  No.  I agree.

12            MR. HENZY:  Okay.

13            THE COURT:  I mean, if I -- if I accept your

14  argument, I'm not suggesting your 60(b) motion was untimely.

15            MR. HENZY:  Okay.

16            THE COURT:  Okay?

17            MR. HENZY:  I believe that a debtor has standing

18  to challenge the appointment of a trustee or to seek to

19  remove a trustee.

20            I mean, among other things, there is case law that

21  says that a trustee may not have any bias or prejudice

22  towards any party including a debtor.  And if that is

23  correct -- and, again, I think the case law is clear on that

24  -- then I don't know how a debtor couldn't have standing to

25  tell a court I think this trustee has a bias or prejudice

1    against me.  And that's a basis to remove a trustee.

2         The U.S. Trustee's handbook on panel trustees --

3    and I understand Mr. Despins is not a panel trustee --

4    states that trustees may have no bias or prejudice towards

5    anybody involved in the case.

6         So if there's a -- as debtor, debtor has a right

7    to have a trustee who is not biased or prejudiced against

8    debtor.

9         Where there is a right, there is a remedy.  I

10   don't know how a debtor could not have standing to raise

11   that issue with the Court.  So I --

12        THE COURT:  Did you -- did you -- why didn't you

13   file a removal of the trustee under section 324 of the code

14   then?

15        MR. HENZY:  Your Honor, our judgment was that this

16   was an easier way, a quicker way.  I don't think there's

17   anything wrong with --

18        THE COURT:  Well, what happens if I deny it?  If I

19   deny your motion, then all you can do is file a notice of

20   appeal at that point.

21        MR. HENZY:  Yes.  That's right.  I think the basis

22   -- the basis for the 60(b) motion, Your Honor, is the same

23   basis that there would be for a 324 motion.  If you -- if

24   you said I'm going to deny this --

25        THE COURT:  I'm not sure that's true actually.  I

1     think the standards under those sections are different.

2              MR. HENZY:  Actually, I agree with you.  So I

3     misspoke.

4              And, look -- look, the reason we filed the 60(b)

5     motion is because we think that there is information that

6     should have been put in front of the Court that was not put

7     in front of the Court.  And --

8              THE COURT:  Okay.  I understand that.  And we're

9     not having a hearing on ultimately that today.  Okay?

10             MR. HENZY:  We're not.

11             THE COURT:  So you rose to tell me that you

12    believe that the debtor -- you are debtor's counsel

13    regardless of the actual conflict of interest that exists --

14             MR. HENZY:  I didn't -- I didn't rise to tell you

15    that because I wasn't questioning that.

16             THE COURT:  Okay.  I'm sorry.

17             MR. HENZY:  But you told me that I might not be.

18             THE COURT:  I apologize.

19             MR. HENZY:  Yeah.

20             THE COURT:  You rose to tell me what then?  That

21    you believe that Mr. Despins made arguments that

22    characterize Mr. Kwok that you think are unfair?

23             MR. HENZY:  That's right.

24             THE COURT:  Okay.  And then -- and that your

25    client has standing in the -- because I had asked Mr.

1    Despins questions about the adversary proceedings and the

2    stay issue, that your client has standing in the 523

3    actions, and doesn't -- and you -- and your assertion is

4    that Mr. Despins does not automatically become the defendant

5    in the 523 actions, but does in the action brought by HK

6    International?

7              MR. HENZY:  Absolutely.

8              THE COURT:  Okay.

9              MR. HENZY:  Yeah.

10             THE COURT:  And then what else did you want to

11   tell me?

12             MR. HENZY:  And on behalf of HK International, I

13   wanted to tell you, because I think Mr. Despins did make

14   argument that, just for the record, that HK International

15   agrees with -- sorry -- disagrees with his argument.  That's

16   all.

17             THE COURT:  Okay.

18             MR. HENZY:  Yeah.

19             THE COURT:  All right.  Is there anything further

20   that you wanted to tell me?

21             MR. HENZY:  Not right now, Your Honor.

22             THE COURT:  Okay.  Thank you.

23             MR. HENZY:  Thank you, Your Honor.

24             THE COURT:  Mr. Kindseth?

25             MR. KINDSETH:  Your Honor, on behalf of HK

1    International, I would just like to just clarify some --

2    with respect to the inspection of the Lady May, I just would

3    like to make sure there's no misunderstanding.

4           The trustee used the term that the yacht was

5    damaged and I think that left a lot open.  And I think it's

6    appropriate for Your Honor to hear with respect to the

7    particular issues that the yacht was not damaged in the

8    crossing.  And we permitted the inspection on a very short

9    order.

10          Pacific Alliance had three inspectors there.  The

11   trustee had one inspector there.  They were allowed

12   unfettered access to the entire ship.  Our chief engineer

13   and the captain were available.  The chief engineer was with

14   all the inspectors continuously answering their questions.

15          Additionally, they were permitted unfettered

16   access to the books and records of the yacht.  And they went

17   through the records and obtained all the information they

18   sought.

19          And to my knowledge, being present and witnessing

20   what transpired, the only known issues with respect to the

21   Lady May are first the sea valves, which we've been

22   apprising the Court of for quite some time.  We had an

23   estimate to do the work in France, but time did not permit

24   it.  So we know there's some rusted bolts on some sea valves

25   that need to be replaced and we fully intend to reserve for

1    that.

2            Unfortunately, one of the fuel pumps broke outside

3    New York.  We disclosed that before the inspection.  And

4    we're getting quotes for that and we intend to reserve for

5    that.

6            And, additionally, the boat being damaged was that

7    some paint came off the hull during the crossing.  And we're

8    fully intending to have that inspected and an estimate

9    received for the cost of that.

10           So those are the three items.  And, again, I was

11   personally there.  The inspectors discussed, the chief

12   engineer discussed, there were no other issues.  That is the

13   extent of the, quote, "damage" that was referred to by the

14   trustee.

15           And in accordance with the stipulation, we're

16   going to come to -- with an estimate.  We'll present the

17   estimates to Your Honor and we'll ask Your Honor to order

18   that the -- those amounts be reserved.

19           Thank you, Your Honor.

20           THE COURT:  Okay.  Thank you.

21           With regard to HK's -- the books and records of HK

22   as a whole, I -- apparently -- I shouldn't say apparently --

23   none of what's happened today is evidence before the Court

24   obviously.  We're hearing different reports, which is what

25   the Court wanted to hear.  But HK International is going to

1    be subject to some requirement to turn over those records to

2    the trustee.

3              MR. SKALKA:  Yes.  My apologies, Your Honor.  And

4    I'm sure, you know, Attorney Henzy meant to address this.

5              With respect to the corporate books and records

6    and so forth, we received the request from the trustee.  We

7    fully understand our obligations and the debtor understands

8    the debtor's obligations post trustee appointment while the

9    debtor is out of possession under the code and the

10   bankruptcy rules to cooperate with the trustee.  And we're

11   in the process of assembling information and records.

12             And HK International, although not a debtor

13   entity, it's owed -- it's owned by the daughter.

14             As counsel, I understand that the records will

15   need to be produced and we fully intend to cooperate with

16   the trustee in that process.

17             THE COURT:  Okay.  Thank you.

18             Now, with regard to the status conference, the

19   other matter -- two other matters -- we turn first to Brown

20   Rudnick on the motion to withdraw as attorney.

21             So, counsel, I'm not sure which of the two of you

22   would like to be heard, but there is no -- unless I missed

23   something, which is very possible --- I don't see any reason

24   set forth in the motion to be -- to withdraw as debtor's

25   counsel in the case.

1          So I'd ask you why -- why is it that you believe

2     that you are entitled -- your firm is entitled -- and all

3     the individuals who filed appearances in the case entitled

4     to withdraw as debtor's counsel at this point?

5          MR. KLETTER:  Sure.  And just to clarify, Mr.

6     Romney is with the Zeisler firm.

7          Again, this is Dylan Kletter.

8          THE COURT:  Oh, yes.  I'm sorry, Mr. Romney.

9          MR. KLETTER:  That's okay.  This is Dylan Kletter

10    from Brown Rudnick.

11         You're right.  It does not go into detail for why,

12    but I believe the Zeisler firm has accurately described now

13    that he's out of possession it's his prerogative to

14    terminate his counsel and that is what he did.  And he has

15    replaced it with substitute counsel of the Zeisler firm, a

16    Mr. Mitchell.

17         And then it is our position that the Zeisler firm,

18    as you can tell, is obviously working the file and we have

19    an unobjected to motion to withdraw as counsel.

20         THE COURT:  Well, I don't know that you have an

21    unobjected to motion to withdraw as counsel because it

22    hasn't been set for a hearing and no one's been required to

23    file any response to your motion.

24         And even if you have an unobjected to motion to

25    withdraw as counsel, that doesn't mean that the Court

1    doesn't have an independent duty to determine whether or not

2    that motion should be granted or denied or granted with

3    conditions.

4          Your firm subjected itself to the Court and to the

5    processes of the bankruptcy case.  Your firm received a

6    million dollar retainer from some source that I'm not -- I

7    don't recall -- maybe there is evidence in the record about

8    the source, I don't recall -- and I'm sorry at the moment

9    that I don't -- but you also, you know, would need to file a

10   fee application and you'd have to have those fees approved

11   and you'd have to establish that the retainer has not been

12   drawn down on and all of those kinds of things.

13         So while maybe it ultimately will be a motion --

14   and unopposed motion to withdraw as attorney, it is not at

15   that -- this point in time because it was not brought before

16   the Court properly as far as getting it either through our

17   contested matter procedure or on the calendar for a hearing.

18   That's how our local rules work in Connecticut.

19         So we can -- I'm going to hear from other parties,

20   sir, but there will be a process.  And maybe it will be

21   granted.

22         But at the very least, if it is granted, you will

23   -- your firm will be obligated to comply with the

24   requirements of the bankruptcy code and the rules and that

25   would be at the very least filing a fee application which

1   would be subject to objections and further hearing and

2   determination by the Court the fees and expenses incurred by

3   the firm. Okay?

4          MR. SKALKA:  Understood.

5          THE COURT:  Mr. Friedman, I see you have risen.

6   Go right ahead, please.

7          MR. FRIEDMAN:  Thank you, Your Honor.

8          Madam Court Reporter Deputy, can you hear me from

9   here or do you want me to go --

10         THE COURT:  Maybe it would make sense if you don't

11   mind, Mr. Friedman.

12         MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

13   Peter Friedman from O'Melveny & Myers.

14         THE COURT:  Good afternoon.

15         MR. FRIEDMAN:  I want to make three quick points

16   on things you've heard from -- on so far and then I would

17   like to come back to address any issues related to the

18   scheduling with respect to the retention motion and the

19   60(b) motion.

20         THE COURT:  Go right ahead.

21         MR. FRIEDMAN:  First is to answer your question.

22   Lamp Capital made a loan --

23         THE COURT:  Thank you.

24         MR. FRIEDMAN:  -- which is where the funding came

25   from.

1          The second is with respect to 523 and those

2     complaints.  My view -- obviously everybody's offered what

3     they think is the right answer -- is we don't even know if

4     this debtor is going to propose, I'm sorry, the trustee is

5     going to propose a plan that has a discharge so it seems to

6     me like a stay is particularly warranted in light of that.

7          Why waste time litigating over an action that may

8     be constitutionally not ripe.  I think it's actually to me

9     like a pretty serious question as to ripeness for any of

10    those claims if we don't know if the debtor -- if a

11    discharge is going to be proposed.

12         I have a hard time seeing one being proposed by

13    the trustee unless there's something pretty close to full

14    satisfaction of claims.  I don't know what the trustee is

15    going to do on that.  But that seems to me an independent

16    reason to consider the parties potentially agreeing to stay

17    those matters.

18         With respect to the HK lawsuit over the boat, you

19    know, PAX is a defendant.  I'm hoping that we can stipulate

20    that PAX doesn't need to be a defendant.  We never claimed

21    to own the boat.  We can't assert the debtor's rights.  We

22    can't levy because of the automatic stay which remains in

23    place.

24         So, you know, PAX has had to spend a lot of

25    resources already in this case.  It would be great if we

1    cannot have to spend resources on a suit where we're not

2    really appropriately a defendant given sort of the current

3    context of this case.

4              So those are the three points I wanted to make.

5              I do want to be heard on the retention issues and

6    the 60(b) motion because we do have some things to say.

7              THE COURT:  Go right ahead.

8              MR. FRIEDMAN:  When it's time.  You know.  I don't

9    know if you want me to --

10             THE COURT:  Well, you can -- you can tell me what

11   you'd like to tell me now.  I mean, we are going to -- you

12   go right ahead.

13             MR. FRIEDMAN:  Okay.  So, Your Honor, a couple of

14   -- a couple of things.

15             On the -- on both of them, whether it's with

16   respect to Paul Hastings or with respect to Mr. Despins, I

17   think our big concern is -- with respect to the issues Mr.

18   Kwok has raised in his letters and on his social media

19   account, which I don't know if you've had -- maybe it's not

20   appropriate for the Court to look at it -- but on those

21   things like PAG has committed fraud by colluding with DOJ is

22   littered all over his Gettr account.

23             I think his most recent Gettr post is, you know,

24   Mr. Miles Guo will initiate a series of motions and appeals

25   to expose the CCP's infiltration of the U.S. Judiciary and

1    the black hands of the U.S. Judiciary.  There's an

2    accusation that I've colluded with the CCP.

3           I certainly want to say with respect to PAG and

4    with respect to me --

5           THE COURT:  With respect to PAG, P-A-G?

6           MR. FRIEDMAN:  Yeah.

7           THE COURT:  Okay.

8           MR. FRIEDMAN:  -- and all of its affiliates, and

9    me, if there is any repetition of those in a pleading signed

10   by counsel, we will seek Rule 11 sanctions.  I just want to

11   put people on notice of that.  Okay?

12          As an officer of the Court I will tell you that

13   I'm the only person who spoke -- maybe Mr. Sarnoff did, but

14   our client never spoke to the Department of Justice about

15   the appointment.  We actually recommended people other than

16   Mr. Despins.

17          We, for reasons having to do with costs, didn't

18   actually want somebody from a big law firm to be involved in

19   this case as a trustee because of expense.  We were very

20   clear that there were people we supported to be trustee.

21   They were not selected.  Either of the people who were

22   selected, neither one was selected.  We would have been okay

23   with Mr. Whitley.

24          We're not thrilled with Mr. Despins for the cost

25   reasons, for the fact they put in now our client is a former

Ho Wan Kwok - July 21, 2022                                    67

1    client of ours that I think is, you know, wasn't something

2    that our client thought was so great to be deemed a former

3    client, but it is what it is.

4              But I just want to be really clear that if anybody

5    makes those allegations in a signed pleading it will be Rule

6    11 sanctionable because it's just not true.

7              More broadly speaking on both though, Your Honor,

8    the Court obviously has control over how it deals with those

9    motions and what it permits to be raised.

10             If it involves subjecting us to discovery,

11   obviously, you know, we think that's extremely unfair and

12   unwise.

13             We think that if it involves frankly forcing

14   people to go down rabbit holes to deal with, you know, Paul

15   Hastings' connection with companies that operate in China on

16   the sort of rabbit hole, crazy theories that are being

17   raised about collusion with the CCP, that the Court should

18   just consider going in a different direction, if it's going

19   to indulge that kind of discovery because it's a -- you

20   know, Paul Hastings, they're going to bill for that -- that

21   eats into creditor recoveries.  It distracts us from the

22   intention -- attention to what ought to be done in this

23   case.

24             And I don't think it's right to give Mr. Kwok the

25   ability to do that.  That will be -- discovery, et cetera,

1    will all be argued later.  But if the Court's going to -- we

2    would rather see the Court go in a different direction with

3    the trustee because it's not in the best interest of the

4    estate rather than go down those rabbit holes because of the

5    expense issue and because of the delay issues.

6            Again, I think the allegations are not -- are

7    frivolous allegations that could subject counsel and clients

8    and anybody who's sort of sponsoring them to real problems.

9            But we just, you know -- as you know, PAX has been

10   waiting since 2009 to get paid.  Spending more time on a war

11   over these issues which really aren't germane to what are

12   Mr. Kwok's assets and how can they get into the hands of

13   creditors seems just -- you know, can't possibly be in the

14   interest of the estate.

15           As to cost more broadly -- and, you know, I've

16   expressed this to Mr. Despins, you know, we are concerned

17   about the rate structure and the expense.  He's obviously

18   done a lot of work, which is great, and I think his

19   presentation was important, but, you know, we are concerned.

20           I think to the extent that we can and we will, you

21   know, if we need to, we will file an objection with respect

22   to -- if we have to -- with respect to the costs and perhaps

23   propose something.  I'm not sure.  But I don't want anybody

24   to be surprised about that.  I try not to surprise people,

25   you know, particularly other, you know, members of the bar

1    on sensitive -- I understand fees are sensitive issues,

2    rates are sensitive issues, but it is important to PAX as a

3    party with, you know, $260 million plus in judgments and the

4    largest creditor.

5         I think that's really all I wanted to say, Your

6    Honor.  I appreciate you giving me the opportunity to speak.

7         THE COURT:  Okay.  Before you step back, I -- as

8    you know, this is a status conference so we are going to be

9    setting some hearings on different matters, specifically on

10   Brown Rudnick's motion to withdraw.

11        And I have to look at -- there's a lot of thing

12   that have been filed since Mr. Despins was appointed as the

13   Chapter 11 trustee that we will look at.

14        Are you asking the Court to do anything different

15   than what the Court is planning on doing or you're just

16   asking that you reserve your rights to be heard on whatever

17   happens?

18        MR. FRIEDMAN:  The latter.  And the other thing I

19   would just ask is if the Court can -- I would be unavailable

20   I think on August 5th.  I think the --

21        THE COURT:  The 5th?

22        MR. FRIEDMAN:  -- the Friday, that Friday of that

23   week is -- I'm unavailable.  Other than that, I'm available

24   at the Court's disposal.

25        THE COURT:  Okay.  Thank you.

1          MR. FRIEDMAN:  Thank you, Your Honor.

2          THE COURT:  Mr. Goldman?

3          MR. GOLDMAN:  Thank you, Your Honor.  I'll be --

4          THE COURT:  Would you come up here too, please.

5          MR. GOLDMAN:  Yes.  Certainly.

6          THE COURT:  Just because I think it's easier for

7    the courtroom deputy to pick up your voice.  Please.  Thank

8    you.

9          MR. GOLDMAN:  Just a few brief points, Your Honor.

10         The committee is aligned with PAX in terms of the

11   cross concerns that Mr. Friedman articulated with respect to

12   the trustee and his firm.  We want to reserve our rights on

13   that application.

14         We're also aligned in terms of how we view the

15   9024 motion that the debtor filed, which we view as a

16   complete distraction and without merit.

17         We need to get on to the business of administering

18   this five month old case and we've had enough litigation

19   thus far.

20         These issues that are raised in our view are just

21   not meritorious and we shouldn't be spending a lot of -- a

22   lot of time on that.

23         Just in terms of giving Your Honor an idea of the

24   magnitude of the claims thus far in the case, even though a

25   proof of claim deadline hasn't been set, the claims register

1   shows 80 -- approximately $83 million in proofs of claim

2   that have already been filed.  That doesn't include PAX's

3   claim of approximately 254 million.

4           The class action 523 complaint that was just filed

5   yesterday states that their claim is in the collective

6   amount of $114 million.  That relates to I believe the

7   securities, the alleged securities violations, with respect

8   to GTV.  That may also be the same claim that the SEC filed

9   a proof for although I'm not completely sure.

10          And so if you include those two claims, which

11  haven't been filed yet, we're up to around $450 million in

12  gross amount of claims.  And so we really do need to get on

13  with the business of trying to get a recovery for those

14  claims.

15          And I don't want to minimize we have a great deal

16  of confidence in Mr. Despins and what he's done thus far,

17  but there is a correlative concern about the magnitude of

18  the rates and the fees, which of course he will be getting

19  as trustee under section 326 based on what he recovers.  And

20  if his firm is hired they'll be getting compensated that way

21  as well.

22          So with --

23          THE COURT:  A question about -- and I meant to ask

24  Mr. Kindseth this as well -- and probably should have asked

25  Mr. Despins this as well -- the stipulation with regard to

1    the Lady May, there are still other obligations that have to

2    be met.  There's still $37 million being held in escrow.

3            There are -- the other stipulation provisions have

4    not been met yet that I see.  Only the stipulation provision

5    that has been met is the reporting that HK has done, and

6    they have done that timely, and the return of the boat, the

7    yacht, prior to the date in the stipulation.

8            But there are other provisions in that stipulation

9    that have not been resolved yet.

10           And so when you talk about getting on with the

11   administration of the estate, which is what the Court found

12   when determining that a Chapter 11 trustee should be

13   appointed -- there needs to be some attention to what is

14   going to happen here with regard to the yacht and/or the $37

15   million.  That money is still subject to the jurisdiction of

16   this court.

17           And there are -- there are still issues with

18   regard to certifications and things that I think need to be

19   filed in which there are time frames to object.

20           And so it would seem to me that the parties need

21   to focus on those issues.  Because the longer those issues

22   lay dormant, the longer it's going to take to administer the

23   estate.

24           MR. GOLDMAN:  Yeah.  We are certainly aligned with

25   Your Honor on that.

1          THE COURT:  Okay.  All right.  All right.  I

2    appreciate what you've said.  And is there anything further

3    you'd like to state for the record this afternoon?

4          MR. GOLDMAN:  No, Your Honor.  Thank you.

5          THE COURT:  Okay.  Thank you.

6          Does the Office of the United States Trustee wish

7    to be heard?

8          MS. CLAIBORN:  Not at this time, Your Honor.

9          THE COURT:  Okay.  Well, I am going to ask the

10   Office of the United States Trustee to file a brief on why

11   -- and I'm going to -- actually, I'm going to have Attorney

12   Henzy's firm do the same thing simultaneously -- and anyone

13   else that wants to, you may, but you don't have to -- as to

14   why the debtor is entitled to retain Attorney Henzy's firm

15   without that firm having to comply with the provisions of

16   the bankruptcy code 327(a) and 2014.

17          And at some point, after this status conference,

18   I'm going to schedule a hearing on the motion to withdraw

19   filed by Brown Rudnick which will have an objection deadline

20   for parties to file an objection, if any, to Brown Rudnick's

21   motion.

22          And then, Mr. Despins, with regard to the bar date

23   issue and the publication issue, you indicated when we

24   talked on the record that you'd like to think about those

25   issues.  I think it may make sense to schedule a hearing, a

1    further hearing, on that motion so we can finalize it and

2    get that order entered.  And I can do that.  I would assume

3    I can do that in short order in the next week or two.

4              Would that give you enough time to analyze the

5    issue, Mr. Despins?

6              MR. DESPINS:  Yes, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              With regard to Mr. Despins' application to employ

9    Paul Hastings and to employ Neubert, Pepe & Monteith, I

10   think those have to be set for a hearing as well with an

11   objection deadline.

12             The likelihood is -- but I don't know this until I

13   go back and review everything, that we will have a day set

14   in the future to address all of these matters, which

15   obviously will be a day because there's a lot of matters to

16   address.

17             I agree that we need to move ahead with the

18   administration of this case which is why the Court made a

19   determination about the appointment of a Chapter 11 trustee.

20             I want to look at the calendar for a moment if

21   everyone would bear with me, please, for a moment.

22             MR. DESPINS:  And, Your Honor, if I could be heard

23   on timing?

24             THE COURT:  Sure.  Please.

25             MR. DESPINS:  So we had filed -- thank you, Your

1    Honor.

2         We had filed a motion to expedite which obviously

3    has not been granted.  Understand that the reason being is

4    that we're going full out right now.

5         And the 30day rule doesn't help us if the Court,

6    you know, in the future says, well -- by the way, I'm making

7    this up as a slight joke -- but if the Court says, well, we

8    think you're a member of the communist party so we're not

9    going to approve the retention -- it's a joke, Your Honor --

10   so then I'm not protected by the 30 day rule.

11        So there's a real prejudice to the firm in being

12   -- and that's, by the way, that's exactly why the debtor has

13   not scheduled -- has not moved for a hearing on their motion

14   to recuse me or to remove me because they love the

15   uncertainty and to continue that.

16        So for us, you know, we filed our motion on the

17   12th.  Even under regular, non-accelerated days, that would

18   bring us to August 1st or something like that, on the 20-day

19   -- so personally from the 3rd to the 22nd, I'm -- I could

20   not be in court.  I mean, I could participate by Zoom.  But

21   if there -- if there's a real contested hearing, I could not

22   be there.

23        So we would urge the Court -- you know, PAX had

24   said they were okay with a hearing next Monday.  Of course,

25   that's probably too short at this point.  But anytime next

1    week or August 1st, we would urge the Court, if it's at all

2    possible, to schedule it then because that will have been

3    plenty of time for these issues to have been figured out.

4              Thank you, Your Honor.

5              THE COURT:  Thank you.

6              MR. HENZY:  Your Honor, may I be heard?

7              THE COURT:  Yes.

8              MR. HENZY:  Thank you, Your Honor.

9              Just to be clear, I will file a motion to expedite

10   right away on our 9024 motion.  We're not trying to have

11   that float out there.  We think it should be taken up at the

12   same time as the Paul Hastings application will be taken up

13   because there will be a lot of overlap.

14             We do need to take discovery in connection with

15   our motion and the Paul Hastings application.  We're

16   prepared to serve discovery immediately.

17             THE COURT:  I'm not sure you're entitled to

18   discovery, Attorney Henzy.

19             It's a motion for relief for a judgment order.

20   Based upon, again, an issue of whether or not your client

21   actually has standing to oppose this person being appointed

22   as a Chapter 11 trustee in a case where your client has

23   stated under penalty of perjury that they have $3,400 and

24   some odd dollars as assets.

25             So I understand your assertion, but I'm not sure I

1    agree with it at this point.

2         I also -- as I started to say, I'm not sure that

3    you don't have to meet the requirements of debtor -- a

4    debtor's counsel under 327(a).  I understand your argument,

5    but no one has put forth anything in front of me to show me

6    why you don't have to meet that requirement.  Number one.

7         Number two, even if you didn't have to meet the

8    requirement, there's -- I don't know why it isn't a conflict

9    of interest that you represent both HK International and Mr.

10   Kwok.  I don't -- I don't understand that.  I'm having

11   difficulty understanding that.

12        And I'm having difficulty understanding that

13   because of many reasons, including the fact that there is an

14   adversary proceeding pending filed by your firm on behalf of

15   HK International claiming that Mr. Kwok has no -- well,

16   asking for a declaratory judgment that it owns the boat.

17        So there's a lot of issues here and we're not

18   going to get derailed on discovery on the presumption that

19   you're entitled to do all these things to begin with.  Those

20   issues have to be addressed first.

21        And I'm not going to allow discovery to drag out

22   what was clearly before the debtor and Brown Rudnick as

23   debtor's counsel since the U.S. Trustee filed a motion for

24   the appointment of an examiner or in the alternative a

25   trustee I believe back in February or early March.  I can

1    look at the docket.  It won't take me very long to find it.

2    So that's not going to happen in this case.

3          This case -- your client voluntarily submitted

4    himself to the jurisdiction of this court with all the

5    benefits and burdens associated with that and that doesn't

6    mean that your client, who as you have stated now on the

7    record a few times, who's no longer in possession -- can now

8    stall the process by insisting that you need discovery in

9    connection with your allegations that Mr. Despins -- Mr.

10   Despins -- now, we're talking about --

11         I made this point at the last hearing but you

12   weren't here because you weren't counsel -- even though the

13   trustee had -- the motion to appoint the trustee had been

14   granted, that the difference between a conflict of Mr.

15   Despins acting as the Chapter 11 trustee and Paul Hastings

16   acting as Mr. Despins' counsel are two different things.

17         And no one has put forth any information in this

18   record to show that Mr. Despins has a conflict of interest.

19   No one.

20         And Mr. Despins has stated and sworn under penalty

21   of perjury that he has no conflict, that the issues with

22   regard to Paul Hastings that have been raised by you in your

23   brief in your -- not your brief, but in your motion -- are

24   things he did not know of and was not aware of personally.

25         But, yes, his firm has offices in China.  And,

1    yes, they represent parties that somehow are related --

2    could be related to Mr. Kwok, but not in connection with

3    this case in any way.

4          I'm not going to allow discovery to derail the

5    process of the Chapter 11 trustee appointment and his duties

6    and responsibilities to carry out his affairs in this case.

7          And I'm certainly not going to do that unless and

8    until I determine whether you're correct or not that you can

9    represent the debtor without having to address the

10   disinterestedness issues.

11         Even if you can, I still have no understanding of

12   -- I'm having very -- it's very difficult for me to

13   understand how your firm does not have an actual conflict of

14   interest in the simultaneous representation of HK

15   International and Mr. Kwok.

16         MR. HENZY:  Thee's a lot --

17         THE COURT:  There is a lot there.

18         MR. HENZY:  -- to unpack there, Your Honor.

19         THE COURT:  I agree with you.

20         MR. HENZY:  If I could -- if I could --

21         THE COURT:   There is -- this case has a lot.  It

22   always has a lot.

23         MR. HENZY:  To show that I can joke too, I like it

24   that you refer to Mr. Kwok as, you said, your client.

25   You're not bound by it.  But --

1          THE COURT:  Well, that's what you assert.  That's

2     what you assert, Mr. Henzy.

3          MR. HENZY:  That's what I assert.  But, again, to

4     show I can -- I can joke too.

5          There's a lot to unpack there, Your Honor.  I

6     mean, in the sense that -- and I understand you're not

7     agreeing with this but, you know, I believe Mr. Kwok does

8     have standing to challenge the appointment of Mr. Despins.

9          And just to be clear --

10         THE COURT:  I didn't -- I didn't even say -- I

11    didn't even argue with you on that --

12         MR. HENZY:  Okay.

13         THE COURT:  -- at this point.

14         MR. HENZY:  If he --

15         THE COURT:  At this point.  All I said is you're

16    not getting discovery.

17         MR. HENZY:  Well, but if --

18         THE COURT:  It's not being derailed with

19    discovery.  It's not happening.

20         MR. HENZY:  But if he -- if he has standing -- the

21    rule 60 motion is a contested matter -- if he has standing

22    to press that motion, and he has standing to object --

23         THE COURT:  It's not a new trial.  It's not a new

24    trial.  Right?  Rule 60 isn't a new trial.

25         MR. HENZY:  This is not a new trial.

1          THE COURT:  Rule 60 is you want relief --

2          MR. HENZY:  That's right.

3          THE COURT:  -- from a judgment or order.

4          MR. HENZY:  That is correct.

5          THE COURT:  That's right.

6          MR. HENZY:  That's correct.

7          THE COURT:  So it's not a new trial.  You're not

8   saying there's newly discovered evidence that --

9          MR. HENZY:  But it --

10         THE COURT:  -- the Court didn't consider when

11  taking this all into effect -- into account.

12         And Mr. Despins has, as you know, as any party

13  does, a continuing obligation to disclose issues, which he

14  did.  Which he did.  He filed a supplemental affidavit.  He

15  filed that.

16         And so there is no new -- this isn't -- the

17  standard under Rule 60 and the standard under Rule 59 are

18  completely different.

19         MR. HENZY:  It's a Rule 60(b)(2), Your Honor.

20  It's --

21         THE COURT:  I understand what it is.

22         MR. HENZY:  It's newly discovered evidence.  And

23  this is --

24         THE COURT:  It's not newly discovered evidence.

25         MR. HENZY:  How could the debtor -- how could the

1    debtor --

2                THE COURT:  What's the evidence?

3                MR. HENZY:  Given --

4                THE COURT:  Tell me what the evidence is.

5                MR. HENZY:  Sure.  And counsel can say that this

6    is all frivolous, but --

7                THE COURT:  I'm don't want to -- I don't -- I'm

8    not worried about him right now.

9                MR. HENZY:  Okay.

10                THE COURT:  I'm worried about you.

11                MR. HENZY:  Okay.

12                THE COURT:  Tell me what the evidence is.

13                MR. HENZY:  There is a public record that the

14    government of China, the Communist Party of China, Mr. Kwok

15    is on the wrong side of the government of China.  I don't

16    think -- I don't know that anybody would dispute that.

17    Okay?

18                I think that it is now known -- and I don't know

19    that Mr. Kwok knew or could have known this given the time

20    line on Mr. Despins' appointment -- I think there was one

21    day between the U.S. Trustee filing that motion and the

22    hearing taking place that Paul Hastings --

23                THE COURT:  I agree with you.

24                MR. HENZY:  -- Paul Hastings has offices as I

25    understand it in China.  Paul Hastings represents companies

1    that are affiliated with the Chinese government.  That is --

2    I believe that is true.

3              THE COURT:  Okay.

4              MR. HENZY:  I also, from reading the newspaper,

5    okay, have an understanding that being a citizen of the

6    world, that China exercises a different degree of influence

7    over entities doing business in China than let's say the

8    United States government exercises over entities doing

9    business in the United States.  I think that is a fair

10   statement for me to make.

11             So I don't think it's frivolous or crazy or

12   baseless --

13             THE COURT:  But where's the evidence?  What's your

14   evidence?

15             MR. HENZY:  I --

16             THE COURT:  That the newspaper says that China

17   exerts control over -- and I'm not trying to be flip, Mr.

18   Henzy, but --

19             MR. HENZY:  Well, do you -- do you disagree with

20   that, Your Honor, that the --

21             THE COURT:  I don't -- I don't have to agree or

22   disagree with anything.

23             MR. HENZY:  -- that the government of China -- I

24   mean --

25             THE COURT:  All I have to do is make findings of

1    fact, right?  And I made those findings of fact when I

2    appoint -- when I granted the motion for the appointment of

3    a Chapter 11 trustee.  I made those findings.  Okay?

4           Now, Mr. Despins has stated in the -- on the

5    record, subject to penalty of perjury, that he personally

6    has no conflict, doesn't represent the government of China.

7           Yes, works for an international firm that has

8    offices in China.  Yes, the firm has business -- has as a

9    past client, I believe is the exact language -- PAG, P-A-G,

10   which is related to and/or -- Mr. Friedman can correct me --

11   but I think is the -- may be described as the parent company

12   of PAX.  What's the evidence there?  How is that -- how is

13   that enough evidence for this court to say he should be --

14   Mr. Despins should be removed?

15          MR. HENZY:  I can't give you the evidence --

16          THE COURT:  Right.

17          MR. HENZY:  -- unless I can do discovery.

18          THE COURT:  But I'm not going to derail the

19   process --

20          MR. HENZY:  Unless --

21          THE COURT:  -- so you can go make -- do discovery.

22   What discovery?  What possible -- what are you going to do?

23   Are you going to depose people from the government of China?

24          MR. HENZY:  If Mr. Despins wants to stipulate as

25   to all of Paul Hastings' connections in China, who they --

1    how many parties they represent --

2            THE COURT:  Why would he have to do that?

3            MR. HENZY:  Your Honor, you can, today, tell me

4    that I'm just wrong, that Paul Hastings -- and Mr. Despins

5    is a partner at Paul Hastings.

6            I don't -- I don't think you just separate him and

7    say if Paul Hastings is not -- is not disinterested, that

8    Mr. -- I don't see how Paul Hastings could be not

9    disinterested and have Mr. Despins not be disinterested.

10   That doesn't make sense to me.  Okay?

11           But if you're going to say that notwithstanding

12   these apparent connections that Paul Hastings hasn't -- with

13   the Chinese government, with --

14           THE COURT:  That have nothing to do with Mr. Kwok.

15   Where's the connection?

16           MR. HENZY:  The connection is that the Chinese

17   government -- the allegation is that the Chinese government

18   is -- has persecuted Mr. Kwok and has persecuted his family.

19           The allegation is that the Chinese government

20   exercises a great deal of influence over entities that do

21   business in China and that that puts Paul Hastings in a

22   compromised position.

23           And Mr. Despins, as a partner of Paul Hastings, in

24   a compromised position.

25           Your Honor, you can say I don't -- I don't agree

1   with you that the Chinese government exercises influence

2   over entities in China that are doing business in China.

3   You could say that.  Okay.  And I -- I'm not going to go do

4   discovery on that.  But this raises a significant issue.

5          I don't -- I don't know if someone's going to

6   stand up and say -- and defend -- in this court and defend

7   the way the Chinese government deals with entities that do

8   business in China and say, no, that's not true.  The Chinese

9   government doesn't exercise any influence over people --

10          THE COURT:  If your client didn't -- if your

11   client -- if you're allowed to represent this client in this

12   court didn't want to subject himself to the jurisdiction of

13   this court then he shouldn't have filed a Chapter 11 case.

14          MR. HENZY:  I don't think, Your Honor, that has

15   anything to do --

16          THE COURT:  Well, how does it not have anything to

17   do with it?  Because you're saying that he -- the Chinese

18   government influences everything that happens with regard to

19   Mr. Kwok.  That's what you're saying.

20          MR. HENZY:  No, I'm not saying that.

21          THE COURT:  Then what are you saying?

22          MR. HENZY:  What I'm saying is that the Chinese

23   government exercises a great deal of influence over anybody

24   who does business in China.  I think that's a fair statement

25   for me to make.

1          THE COURT:  Okay.

2          MR. HENZY:  Okay.  And Paul --

3          THE COURT:  And how does that result in a conflict

4     of interest that allows that Mr. Despins can't -- can't be

5     the Chapter 11 trustee?

6          MR. HENZY:  And Paul Hastings does business in

7     China.

8          THE COURT:  Okay.

9          MR. HENZY:  Okay.

10         THE COURT:  Okay.

11         MR. HENZY:  And the Chinese government --

12         THE COURT:  And so what -- what control -- you

13    have no evidence of what control they have.  You just make a

14    blanket -- and I'm not saying you just -- but the statement

15    that you just made is the Chinese government has control

16    over people who do business with them.  Well, the control

17    might be that they want the company to produce 12 cars as

18    opposed to 20.  How does that affect Mr. Kwok and Paul

19    Hastings?

20         MR. HENZY:  Your Honor, the argument is that Paul

21    Hastings does business in China.  It represents entities

22    connected with the Chinese government, therefore, the

23    Chinese government is going to have influence or control --

24         THE COURT:  So you're saying Mr. Despins is a --

25    is a puppet of the Chinese government?

1          MR. HENZY:  No.  That's completely unfair, Your

2     Honor.  I didn't say --

3          THE COURT:  Well, then what are you saying?

4          MR. HENZY:  I did not say that.

5          THE COURT:  Well, then -- but then what are you

6     saying?

7          MR. HENZY:  What I'm saying is that there's a

8     disinterestedness issue here and we have a right to explore

9     that issue.

10         THE COURT:  Okay.

11         MR. HENZY:  Okay.

12         THE COURT:  I'm not sure I agree with you.

13         MR. HENZY:  Okay.

14         THE COURT:  But I understand your point.

15         MR. DESPINS:  Your Honor, if I could, could I be

16    heard for two seconds?

17         THE COURT:  Certainly.  Certainly.

18         MR. DESPINS:  This argument is insane.  Why?

19    Let's assume he's right.  Let's assume he's right on all --

20    so what's the discussion?  So the Chinese communist party

21    comes to our office in China and says what?  Go easy on him

22    or go hard on him?

23         I'm going to go -- let me be very clear, I'm going

24    to go and try to get all his assets.  That's my job as the

25    trustee.

1          So what's the conflict?  Meaning, first of all,

2     I'm not agreeing for a second that they would do that or

3     that we would be susceptible to that.  But let's assume

4     that's the case, let's follow that to its logic.

5          Unless I -- unless his point is that we would

6     somehow work with them to arrest him or to bring him --

7     that's insane.

8          This is a civil case.  My job is not retribution.

9     It's collection.  I want to collect -- I want to be clear --

10    as much as I can for the holders of valid claims.  That's

11    the (indiscernible).  And Paul Hastings will do the same.

12         So this argument that we're subject to the

13    influence, which way does that cut?  Meaning that they would

14    -- one way or another, they would say go harder?  I'm going

15    to -- I don't need the CCP to tell me that.  I'm going to go

16    hard to get all his assets.  That's my job.  So I don't

17    understand the influence.  I'm sorry.

18         MR. HENZY:  Can I -- can I just -- can I respond

19    to that quickly, Your Honor?

20         THE COURT:  Yes, you can.

21         MR. HENZY:  Okay.  And, again, this is public

22    record.

23         THE COURT:  Public record where?

24         MR. HENZY:  I can give you -- I'll give you

25    citations, Your Honor.

1        THE COURT:  But tell me what it is.  Are we

2    talking about a social media website?

3        MR. HENZY:  Absolutely not, Your Honor.  We're

4    talking about statements from the United States Department

5    of Justice.

6        THE COURT:  Okay.

7        MR. HENZY:  Okay.

8        THE COURT:  What part of the United States

9    Department of Justice?

10       MR. HENZY:  Different parts.

11       THE COURT:  Okay.

12       MR. HENZY:  And I can --

13       THE COURT:  Go ahead.

14       MR. HENZY:  And I can tell -- okay.

15       Mr. Steven Wynn, who is I think a well-known

16   casino/hotel person, has -- the DOJ has filed a civil

17   enforcement action against him to compel him to register

18   under the Foreign Registration Act as an agent of the

19   Peoples Republic of China and a senior official of the PRC's

20   Ministry of Public Security, and the citation is -- it's a

21   Justice Department -- it's in our motion -- it's a web, ww

22   -- I can try to give it to you, but I --

23       THE COURT:  No, it's all right.

24       MR. HENZY:  Okay.

25       THE COURT:  You don't have to give it to me.

1          MR. HENZY:  And --

2          THE COURT:  And how does that impact Mr. Wynn, I

3     mean -- Mr. Wynn, I know how it impacts Mr. Wynn --

4          MR. HENZY:  Okay.  I'm --

5          THE COURT:  -- how does it impact Mr. Despins and

6     Paul Hastings?

7          MR. HENZY:  I'm responding to Mr. Despins'

8     statement that it's insane to say that the Chinese

9     government would exercise influence over someone doing

10    business in China.

11         THE COURT:  That's not what he said.

12         MR. HENZY:  Okay.  I think it is what he said.

13         THE COURT:  No.

14         MR. DESPINS:  No.

15         THE COURT:  That's actually not what he said.

16         MR. HENZY:  Okay.  But if I could finish?

17         THE COURT:  He said your argument is insane.

18    Because here's what he said.  This is at least the way I

19    interpret it.  And you can disagree with me.

20         He said your argument is insane because what --

21    the only two things that could happen is the Chinese

22    government either tells him to go hard and get all of Mr.

23    Kwok's assets or to do nothing and leave him alone.  And Mr.

24    Despins said, but I -- my job is to go hard and get all of

25    his assets.  So what's the problem?

1          MR. HENZY:  So then the argument is that Mr.

2    Despins -- Mr. Despins' interest and the Chinese

3    government's interest are aligned and, therefore, to the

4    extent --

5          THE COURT:  That doesn't mean there's a conflict.

6          MR. HENZY:  -- to the extent -- wait -- to the

7    extent that there otherwise would be a disinterestedness

8    issue, there's no issue, because if anything the Chinese

9    government would tell him go hard, go hard, go hard.

10          That's not the analysis though, Your Honor.

11    That's not --

12          THE COURT:  How is he -- how is he not

13    disinterested even if his -- even if his goals are aligned

14    with the Chinese government, how is he not disinterested?

15          MR. HENZY:  If there is -- if there is a party

16    that exercises any kind of undue influence over a trustee,

17    then that trustee is not disinterested.

18          THE COURT:  How are -- where is the proof that

19    they're exercising undue influence over Mr. Despins?

20          MR. HENZY:  I don't have proof today --

21          THE COURT:  Okay.

22          MR. HENZY:  -- and I don't know how I could have

23    proof today because --

24          THE COURT:  Well, the bankruptcy code --

25          MR. HENZY:  -- because I have --

1           THE COURT:  Here's what happens.  The bankruptcy

2   code allows you to bring that issue forth if you believe it

3   to be true and then it will be addressed appropriate.

4           A Rule 60(b) motion is not the appropriate way for

5   that to happen.  There is no newly discovered evidence.

6           The only thing that came out is the continuing

7   obligation -- and first of all, we're talking about Mr.

8   Despins.  I raised this at the first hearing.

9           Maybe you could argue, but we're not arguing that

10  today, there's a problem with Paul Hastings.  Maybe you can

11  argue that.  But we're not arguing that.

12          We're talking about Mr. Despins individually

13  acting as a trustee.

14          So your argument is that no matter who was the

15  Chapter 11 trustee, whatever individual, if that individual

16  works for a firm that somehow has business relationships

17  with China, so had a purchase and sale agreement to buy toys

18  from China, that they would be not -- they would

19  disinterested because -- because every single person that

20  does business with the Chinese government is unduly

21  influenced by the Chinese government.  That's your argument.

22          MR. HENZY:  Depends on facts and circumstances,

23  but potentially, yes.

24          THE COURT:  Well, what's the facts and -- well,

25  how are the facts and circumstances of the scenario I just

1   presented to you any different from what Mr. Despins has

2   said in his -- in his disclosures?

3            MR. HENZY:  I might say that that party is unduly

4   influenced by the Chinese government.

5            THE COURT:  Buying toys?

6            MR. HENZY:  Yes.  I might -- yes.

7            THE COURT:  Okay.

8            MR. HENZY:  I might say that.  Yeah.

9            THE COURT:  Okay.  You can say that, but I might

10  disagree with you.

11           MR. HENZY:  And you might disagree with me.

12           THE COURT:  Okay.

13           MR. HENZY:  Yeah.

14           THE COURT:  All right.

15           MR. HENZY:  Look, I think we're not arguing the

16  60(b) motion today.  I think.  I think anyway we're arguing

17  is does Mr. Kwok have a right to take discovery and I think

18  he does.

19           THE COURT:  Yes.  And I'm finding he does not have

20  the right to take discovery.  And you can appeal that if

21  you'd like --

22           MR. HENZY:  Yeah.

23           THE COURT:  -- when I rule on the motion, but

24  we're not going to do this.

25           See, here's the problem.  There's $37 million in

1     an escrow account.  And there's a boat, a yacht, somewhere

2     over there, right, that your client stipulated to would come

3     to this jurisdiction.

4            And before the Court didn't acquiesce to the plan

5     of how the professionals were going to be paid $8 million in

6     a very short amount of time without establishing the need to

7     pay them and to pay them on a weekly basis outside of the

8     provisions of the bankruptcy code.  The boat was going to be

9     pledged as -- to the plan to creditors.

10           Now we're in a situation where your alleged client

11    -- and it may be it may be he may be your client doesn't

12    want anything else to happen.

13           Doesn't want the boat to become part of the

14    estate, but doesn't want the $37 million to become part of

15    the estate either.  And the way that that's going to be

16    accomplished is to challenge Mr. Despins through a Rule

17    30(c) -- Rule 60 motion.  That's not going to happen.

18           MR. HENZY:  I disagree with that, Your Honor.

19           THE COURT:  You may disagree.

20           MR. HENZY:  I just disagree.

21           THE COURT:  But that's not what's going to happen.

22           MR. HENZY:  Mr. --

23           THE COURT:  You take your client, your client that

24    you claim is your client, as you find him, correct?  And you

25    found him, as did Brown Rudnick, subject to orders of a

1    state court of New York that found after evidentiary

2    hearings -- and I'm not saying they have collateral estoppel

3    effect, I'm not saying any of that, I'm talking about how

4    you found your client -- that found that not only was he --

5    did he take the Fifth -- and the inferences could be drawn

6    in favor of the creditors with regard to him taking the

7    Fifth -- but that he established and created a network of

8    corporations to keep his assets out of the reach of

9    creditors, including PAX, who's been fighting with him since

10   2009.

11            Then your client decides to file a Chapter 11 case

12   at the time that the sanction imposition by Justice Ostrager

13   is continuing to accrue.  And the point -- and the argument

14   is, well, the accrual, that's stayed.  I filed a Chapter 11,

15   the accrual of that is stayed.

16            So the argument then becomes that your client in

17   some way, shape or form, depending upon the relief sought by

18   the creditors, should either have an examiner appointed, a

19   Chapter 11 trustee appointed, or there be a conversion of

20   the case.

21            Then your client says, no, no, we'll agree to

22   dismissal.  After coming to this court, negotiating -- being

23   part of a negotiation, which allegedly a separate and

24   distinct corporate entity owned by his daughter also

25   participated in, to bring the boat here, and then says, no,

1   you know what, why don't you just dismiss the case, judge.

2   We'll agree to dismissal.

3          Well, that -- you know, your client made a

4   decision, an informed decision, when he decided to file

5   Chapter 11.  That's what he did.

6          He could have addressed all of this through the

7   state court process and could have appealed everything, and

8   did appeal things and lost, got -- it was referred back to

9   Justice Ostrager for Justice Ostrager to make a

10  determination about the ownership of the boat.

11         And then Chapter 11 case gets filed, and HK

12  International, the alleged separate and distinct legal

13  entity that is alleged to be the registered owner of the

14  boat, files an adversary proceeding against your client, Mr.

15  Kwok, saying that it wants a declaratory judgment that HK

16  International owns the boat and it's not property of this

17  debtor's estate.

18         I already addressed all those issues by finding

19  that a Chapter 11 trustee should be appointed.

20         Your argument is that Mr. Despins is disinterested

21  -- is not a disinterested person because his firm, not him,

22  but his firm has offices in China and the Chinese government

23  is out to get -- and by the way, maybe the Chinese

24  government is out to get Mr. Kwok. I don't need to make

25  findings about that, okay. Maybe they are, but that doesn't

1    impact Mr. Despins' role and his responsibilities under the

2    bankruptcy code.  And to argue otherwise is to attempt to

3    derail Mr. Despins from carrying out his responsibilities.

4           So I guess what you need from me at some point --

5    and maybe, you know, as I said, I've got to look at all

6    these thing that were filed since July 8th. I'm going to set

7    hearings on different matters -- the motion to withdraw as

8    attorney -- I want you and the United States Trustee's

9    Office to submit a brief on -- as to why you don't need to

10   comply with 327(a).  Maybe you're right, but I -- I don't

11   see anything in front of me that convinces me of that at the

12   moment.

13          And then, we're -- and we'll probably have a

14   hearing on your Rule 60(b) motion.  And I think we should

15   have it quickly, because if I'm going to deny it, you need

16   to appeal.  You need to appeal.  And then you need to figure

17   out how you're going to proceed from there.

18          But this case cannot be stalled any longer.  This

19   court has a responsibility, as does Mr. Despins now at this

20   point, to try to protect the interests of creditors in

21   connection the parameters of the bankruptcy code, the

22   bankruptcy rules, the Federal Rules of Civil Procedure, and

23   applicable non-bankruptcy law.

24          And to argue that Mr. Despins is disinterested

25   because the Chinese government influences every party with

1   whom it does business is not persuasive to me at this point.

2                MR. HENZY:  I understood.  And just a couple

3   points, Your Honor.

4                I wasn't involved in Mr. Kwok's decision to file

5   Chapter 11.

6                THE COURT:  I didn't say you were.

7                MR. HENZY:  Okay.

8                THE COURT:  I said you took your client as you

9   found him.

10               MR. HENZY:  I took --

11               THE COURT:  That's what I said.  Didn't I start

12   the whole thing off by saying that?

13               MR. HENZY:  Yeah.  And we are where we are today.

14   But I don't think that Mr. Kwok decided to file Chapter 11.

15               And just to be clear, he didn't appeal your

16   decision on -- that a trustee would be appointed.

17               And I'll state on the record if Mr. Whitley had

18   been the appointed person, he would not have -- we would not

19   be having this discussion, okay, because his understanding

20   is some of the issues that we think exist with Paul Hastings

21   and Mr. Despins do not exist with Mr. Whitley.

22               So this is not -- this is not that Mr. Kwok was

23   going to oppose anybody who got appointed and wants to

24   obstruct a Chapter 11 trustee from doing his or her job.  He

25   understands completely that there is going to be a Chapter

1   11 trustee.  So I think it's not correct to say that he's

2   just trying to obstruct --

3           THE COURT:  I didn't say -- I said --

4           MR. HENZY:  -- for those purposes.

5           THE COURT:  I didn't say he was trying to

6   obstruct.  I said I'm not going to let this be derailed.

7   That's what I said.  Those were the words I used.

8           MR. HENZY:  I think -- I think if a different

9   person had been appointed we wouldn't be having this

10  discussion.  And I -- and there are --

11          THE COURT:  Well --

12          MR. HENZY:  Look, you can disagree, Your Honor.

13  We think there are bona fide significant issues here.

14          I understand you may disagree, but I don't -- it's

15  not correct.  I don't think that because Mr. Kwok decided to

16  file Chapter 11 that he doesn't have a right to say, wait a

17  second, there's been a trustee appointed, understood, but he

18  should just have to accept whoever gets appointed even when

19  he believes that there are significant conflicts that that

20  person has.

21          I mean, just because you file Chapter 11 doesn't

22  mean -- and subject yourself to the jurisdiction of the

23  Court -- doesn't mean that you have to just sort of accept

24  any and everything that comes along, even if you believe

25  that it is not fair and is prejudicial to you.

1        THE COURT:  Okay.  Thank you.

2        MR. HENZY:  So I guess, Your Honor, are you ruling

3    today --

4        THE COURT:  No, I'm not ruling.

5        MR. HENZY:  -- that we cannot take discovery in

6    connection with --

7        THE COURT:  If you take any discovery before I

8    rule on the 60(b) motion, then I will -- I'm not allowing

9    you to take any discovery before I rule on the 60(b) motion.

10       MR. HENZY:  And on the Paul Hastings retention

11   application?

12       THE COURT:  And on the Paul Hastings retention

13   application.

14       MR. HENZY:  Okay.  So you're ruling that today.

15       THE COURT:  That's correct.

16       MR. HENZY:  Okay.

17       THE COURT:  There is going to be no discovery.

18   This is not -- these are not matters that are -- we're going

19   to allow to have happen.  That's not going to happen.  We'll

20   have a hearing.  We'll hear your matter.  And if we rule

21   against you, then -- if I rule against you, then you'll

22   appeal.

23       MR. HENZY:  Your Honor, I would ask that there be

24   at least a docket entry on that so ordering that we do not

25   --

1          THE COURT:  Well, this is a status conference, so

2     I'm not going to enter a docket entry on that right now.

3     I'm telling you --

4          MR. HENZY:  But if I don't have --

5          THE COURT:  I'm telling you if you seek discovery

6     before I rule on these matters, then I'm not going to make

7     the other side comply.

8          MR. HENZY:  Okay.  But, Your Honor, I don't want

9     to go through the exercise of -- I don't know -- anybody --

10          THE COURT:  This motion isn't even on the calendar

11     --

12          MR. HENZY:  I understand.

13          THE COURT:  -- so it's inappropriate to start

14     discovery with regard to something that's not even --

15          This is a status conference.  This was -- this was

16     specifically scheduled as a status conference in connection

17     with the motion, excuse me, the memorandum of decision and

18     order appointing the Chapter 11 trustee.

19          You filed documents after that -- this status

20     conference was scheduled.  None of your documents have been

21     set for a hearing.  Okay?  So you can do whatever you think

22     is appropriate once those matters are set for a hearing.

23          MR. HENZY:  Understood, Your Honor.  What I don't

24     want to do is have us serve discovery and put other parties

25     in a position of having to file motions with this court and

1     the Court then ruling on those motions and saying you don't

2     get to take the discovery.

3             I want to, I guess, just end --

4             THE COURT:  You can do whatever you think is

5     appropriate, Mr. Henzy.  I am not -- this was not a hearing

6     on which rulings were going to come out of it other than

7     what I told you.

8             I'm going to back and I'm going to issue -- I'm

9     going to schedule hearings indifferent matters.  And I'm

10    going to require you in one of those orders to file briefs

11    as to why you can represent this debtor without complying

12    with 327 and when you have -- when you have what appears to

13    be an actual conflict of interest.

14            MR. HENZY:  Understood, Your Honor.

15            THE COURT:  And when I say you, I mean Zeisler &

16    Zeisler.  Okay?

17            MR. HENZY:  Understood, Your Honor.

18            On the discovery issue, okay, what I don't -- what

19    I don't want to do --

20            THE COURT:  I understand.

21            MR. HENZY:  -- I don't want to serve discovery

22    after you've told me I'm not going to get discovery --

23            THE COURT:  You can serve discovery at your own --

24    your decision.  You do whatever you think, Counsel, but --

25            MR. HENZY:  I thought you were about to say you

1   can serve discovery at your own peril, but --

2          THE COURT:  I almost did actually.

3          MR. HENZY:  -- which I don't --

4          THE COURT:  Yeah.

5          MR. HENZY:  -- which, again, I don't want to do

6   that.  But I don't think it's fair to tell me I -- I'm not

7   going to let you serve discovery, but go do whatever you're

8   going to do --

9          THE COURT:  Where does it say under Rule 60 that

10  you're entitled to discovery by the way?

11         MR. HENZY:  I think the motion is governed by Rule

12  9014, Your Honor.

13         THE COURT:  Right.  9014 means people have an

14  opportunity to respond.  And that until that response is

15  filed, why would you be entitled to discovery?

16         MR. HENZY:  Your Honor, I'm trying to not delay a

17  hearing on these matters.  I'm trying to have this go as

18  fast as it can.

19         Mr. Kwok's goal is not to delay the final

20  appointment of a trustee.  It's not to delay final retention

21  of counsel for a trustee.

22         We want to get to the issues as much as everybody

23  else wants to get to the issues.  Okay.  So I understand

24  that until someone files an objection to my Rule 60 motion,

25  arguably, why am I taking discovery?  I've a pretty good

1    idea that there are going to be objections to my Rule 60

2    motion and I'm trying to move this along as quickly as I

3    possibly can.

4              I don't want to serve discovery and put people in

5    a position of having to file motions with the Court and have

6    the Court potentially have a hearing or not have a hearing

7    and rule on the motion to give me then whatever rights I

8    have with respect to the Court's ruling.

9              Which is why I -- for me, it would be much

10   preferable -- it may be preferable for other parties -- if

11   the Court's going to rule that is to rule that today and get

12   it out of the way.

13             THE COURT:  Well, I'll consider that.

14             MR. HENZY:  Thank you, Your Honor.

15             THE COURT:  Okay.

16             MR. GOLDMAN:  Your Honor?

17             THE COURT:  Yes.

18             MR. GOLDMAN:  May I be heard briefly?

19             THE COURT:  Can you -- make sure you can speak

20   into the microphone.

21             MR. GOLDMAN:  Yeah.  Can you hear me?

22             THE COURT:  Yes.  Thank you.

23             MR. GOLDMAN:  Yeah.  One idea I'd like to offer

24   for the Court's consideration as a potential way to resolve

25   this motion --

1          THE COURT:  What concern?

2          MR. GOLDMAN:  -- and concern --

3          THE COURT:  The 60(b) motion?

4          MR. GOLDMAN:  Yes.  Yes.  And the concern about

5   the Chinese government, not that that's an issue that I

6   think -- I don't want to give it credence by proposing a

7   solution, but the Court could simply provide that if Mr.

8   Despins or Paul Hastings is contacted by the Chinese

9   government with a threat of adverse action for purposes of

10  influencing in any way the administration of this case that

11  they would file a supplemental affidavit with the Court so

12  indicating and we could take it from there because we are

13  simply dealing with speculation.

14          THE COURT:  Mr. Despins already has that

15  obligation, Mr. Goldman.  He already has that obligation

16  under his disclosure requirements under the code and the

17  rules.

18          I mean, I understand what you're saying, but I

19  think it does give it credence where I haven't ruled on

20  anything yet.

21          And I'll consider what you said and I appreciate

22  the -- raising the issue, but every lawyer, every trustee,

23  has a continuing obligation.

24          Mr. Despins has already stated under penalty of

25  perjury that he doesn't have these connections.

1    So I appreciate it.  I'm not sure how far that

2    will go.  If you all want to talk about it, that would be

3    something that would work out for you, that's fine.  I'm

4    happy to entertain it if that's something that everybody

5    wants to have entertained.

6         But I'm not -- we're going to move this case

7    forward and it's not going to be held up by matters that

8    can't be addressed in other ways under the bankruptcy code

9    and rules.

10        Mr. Despins and any other person that would serve

11   in that role understands the responsibilities of the role,

12   understands the disclosures made under penalty of perjury,

13        And if someone comes forth with some evidence that

14   Mr. Despins is being influenced by the Chinese government,

15   then they can bring that evidence forward.

16        But to argue that without any evidence in the

17   record and then say -- and I want discovery to stop the

18   process I find that very unlikely that that will happen.

19        MR. GOLDMAN:  Well, I certainly am in agreement

20   with Your Honor's position on that.  I was just trying to

21   address the Zeisler speculation.

22        THE COURT:  No.  I appreciate the offer.

23        As I said, you know, it doesn't look like anybody

24   wants to go to talk together, right?  I mean, I can take a

25   recess if you want to have a discussion.

1          But this is -- we've been here now for almost two

2     and a half hours.  We need to let Mr. Despins go do his job.

3     Okay?  That's what this is all about.  That's why a Chapter

4     11 trustee was appointed so that this could happen.

5          What is in the record, whether or not it impacts

6     any decision that is made by this court, Mr. Henzy, is what

7     I started off my discussion with you a few minutes ago,

8     which is you took your client as you found him.

9          I'm sure you've read everything that has occurred

10    in the New York State Court.  Those are allegations that

11    continue to be made here by the parties that were in that

12    proceeding and by other parties.  Your client has to make

13    some decisions.

14          And, you know, this court is here to support

15    parties as much as the Court can, but the Court also has to

16    move things forward if parties aren't moving together down

17    the same path.  And I'm not saying you should.  I'm not

18    saying that should happen.  I'm saying otherwise why am I

19    here?  You can all go fight it out outside.  Right?  I mean,

20    the point is we have to move the case along one way or

21    another.

22          Either your client makes decisions about trying to

23    come up with a way to make this case work or not.  And if he

24    doesn't want to, that's fine.  That is his prerogative.  And

25    I agree with you on that that that is his right.  But he

1   takes those steps with the understanding that the Court may

2   not agree with him.

3        MR. HENZY:  Understood, Your Honor.

4        THE COURT:  Okay.  And that's -- that's where we

5   are.

6        I don't want to spend any more time today -- I

7   mean, I will if you want to talking about it, but I think

8   it's important to understand we have to move forward.

9        MR. HENZY:  Your Honor, Mr. Kwok does not disagree

10  with that, but we have -- I think -- I think the Court would

11  agree we have to move forward the right way.

12       THE COURT:  I have to give everybody an

13  opportunity to respond to these different motions, right?

14       So what I'm looking at -- and I think I heard Mr.

15  Friedman and Mr. Despins tell me, and everybody else is

16  going to have to make themselves available, that we're going

17  to have a hearing on August 1st.  That's a Monday.  Okay?

18  That's a week and a day from today, business days.  We're

19  going to have a hearing on August 1st and I'm going to rule

20  on these issues if there isn't agreement.

21       With regard to the motion to withdraw as attorney,

22  with regard to Brown Rudnick's, again, whether or not that's

23  going to be allowed, I don't know.  But if it is, it's

24  definitely with conditions.

25       And I think the U.S. Trustee should be opining on

1    that.  I don't know how the U.S. Trustee -- the U.S. Trustee

2    has to opine on that.  There's a -- there's a -- that's what

3    the role of the U.S. Trustee is with regard to professionals

4    in a Chapter 11 case.  In every case, but certainly in a

5    Chapter 11 case.

6           With regard to the Rule 60(b) motion, I'm going to

7    give everybody an -- but you all have to understand, you all

8    don't -- I'm not getting pleadings filed on Friday the 29th

9    and you're expecting me to read them and be ready to rule on

10   Monday the 1st.  That's not going to happen.  So you're

11   going to have to address these issues in short order whether

12   you agree with that or not.  That's what's going to happen.

13   Okay?

14          With regard to the application to employ Paul

15   Hastings and Neubert, Pepe, that's going to be set for a

16   hearing as well.  All that's going to be set for hearing.

17          I understand -- I have to look at the stay

18   motions.  I don't remember whether I think those should be

19   set for hearing.  I might be setting 20 things for hearing

20   on August 1st.  Okay?  But we need to move this case along.

21   It's just that simple.  And that's what's going to happen.

22          So if I look at the docket -- and I did try to

23   look at it before we came out today, but we had another

24   hearing -- I mean, we do have other hearings as I know you

25   all know.  And the problem with why I want you to get -- why

1    I'm going to make you all respond earlier than the 29th, and

2    probably by the 27th, which is next Wednesday, which isn't a

3    lot of time, we have Chapter 13 day on the 28th.

4            I mean, there are other issues that the Court has

5    to address.  Even though this case is extremely important to

6    all of you -- and I completely appreciate that -- we do have

7    other matters that we have to address.  Okay?

8            So I see that there are, you know, motions to

9    appear pro hac vice in connection with these pending

10   motions.  Motions to appear pro hac vice are routinely

11   granted.  But if there's really going to be an objection to

12   -- I'm going to let whoever wants to talk talk.

13           Whether I think you're the lawyer or not, Mr.

14   Henzy, I obviously let you talk today, right?  I'm going to

15   let you speak.

16           But we have to make rulings on who represents what

17   and in what context and who's going to appear in this case

18   on a going forward basis.

19           MR. HENZY:  Your Honor, just to be clear, there

20   will be no objection to the pro hac motions.  I've never

21   objected to a pro hac motion in my career and I don't expect

22   I ever will.

23           THE COURT:  Okay.  Thank you.

24           MR. HENZY:  So those I think probably --

25           THE COURT:  Well, then, maybe we can at least move

1    those along.  Okay?

2              MR. HENZY:  So, Your Honor, evidence that I want

3    to move this case along, there it is.

4              MR. LINSEY:  Those are, Your Honor, 530 -- rather

5    533 --

6              THE COURT:  I have them.

7              MR. LINSEY:  Yes.

8              THE COURT:  I have them, Attorney Linsey.  Thank

9    you.

10             All right.  Is there anything else that anyone

11   would like to state for the record this afternoon?

12        (No audible response.)

13             THE COURT:  All right.  I don't see anyone.  Oh,

14   Mr. Henzy?

15             MR. HENZY:  So I just want to be clear --

16             THE COURT:  I didn't -- I didn't leave as fast as

17   I should have I suppose.

18             MR. HENZY:  I just want to be clear on what's on

19   the schedule for August 1st.  Is it everything?  Everything?

20             THE COURT:  I don't know yet.

21             MR. HENZY:  Okay.

22             THE COURT:  That's what I said.  Well, I can tell

23   you what's going to be on.

24             MR. HENZY:  Okay.

25             THE COURT:  What I think is going to be on.  The

1    motion to withdraw as attorney, Brown Rudnick.  Mr. Despins'

2    application to employ Paul Hastings and Neubert, Pepe.  Your

3    Rule 60(b) motion.  Anything else, I'm not sure about yet.

4    The stay motions, things like that, I've got to go back.

5           Unless somebody is telling me -- I'm giving you

6    all the opportunity right now to tell me what else should be

7    heard on August 1st.  I don't know if I'll agree with you,

8    but I'm giving --

9           And you, Attorney Henzy, and the U.S. Trustee's

10   Office are going to have to file briefs by -- I think the

11   response date on everything is going to the 27th, on why you

12   can -- you have to convince me of your argument that you

13   don't need to comply with 327 because you're -- because the

14   debtor's no longer a debtor in possession.  And why you

15   don't -- and regardless of that, why you don't have an

16   actual conflict of interest in representing HK International

17   and Mr. Kwok simultaneously.

18          MR. HENZY:  I just want to be -- when you said

19   you'll let me speak on August 1t, I mean, I wouldn't want to

20   get here --

21          THE COURT:  Yeah.  You're going -- I'm going to

22   let you make your argument.

23          MR. HENZY:  I wouldn't want to get here on August

24   1st and have you say I've decided you can't represent Mr.

25   Kwok and then Mr. Kwok is not ready -- he's not --

1          THE COURT:  We're not going to do that.

2          MR. HENZY:  He's not represented.

3          THE COURT:  It's a hearing on whether or not you

4    can do that.  Okay?

5          MR. HENZY:  Okay.

6          THE COURT:  I'm not going to -- I would never say

7    that you were not going to be allowed to speak.

8          MR. HENZY:  I didn't think you would, Your Honor.

9          THE COURT:  Okay.

10         MR. HENZY:  But I just don't want him to be not

11   represented at that hearing.

12         THE COURT:  I understand.  Well, Brown Rudnick's

13   going to be here anyway.

14         MR. HENZY:  I don't think Brown Rudnick is

15   intending to prepare for that -- a hearing on August 1st.

16         THE COURT:  They may not be intending to prepare

17   for that hearing, but they're going to have to be here on

18   their motion to withdraw as attorney.

19         MR. HENZY:  Understood.

20         THE COURT:  Okay.

21         MR. HENZY:  Understood.

22         THE COURT:  And so if I don't grant their motion

23   to withdraw as attorney, then they're still his attorney.

24         MR. HENZY:  Okay.

25         THE COURT:  Okay?

1              MR. HENZY:  Okay.

2              THE COURT:  All right.  Anything further from

3     anyone?

4         (No audible response.)

5              THE COURT:  All right.  That concludes the Kwok

6     matter for today.  That is the last matter on today's

7     calendar.  Court is adjourned.

8         (Proceedings concluded at 1:28 p.m.)

9              I, CHRISTINE FIORE, court-approved

10    transcriber and certified electronic reporter and

11    transcriber, certify that the foregoing is a correct

12    transcript from the official electronic sound recording of

13    the proceedings in the above-entitled matter.

14

15         *Christine Fiore*

16    _____        July 25, 2022

17       Christine Fiore, CERT

18          Transcriber

19

20

21

22

23

24

25

Ho Wan Kwok - July 21, 2022                                    116

1

2                          I N D E X

3                                                    PAGE

4    EXHIBITS FOR THE TRUSTEE:

5    1  Trustee written presentation copy            7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24