## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

-------------------------------------------------------x
                                                        :
In re:                                                  :          Chapter 11
                                                        :
HO WAN KWOK,                                            :          Case No. 22-50073 (JAM)
                                                        :
            Debtor.                                     :
-------------------------------------------------------x
HK International Funds Investments                      :
(USA) Limited, LLC                                      :
                              Plaintiff                 :          Adv. Proceeding No. 22-05003
v.                                                      :
Ho Wan Kwok                                             :
                              Defendant                 :          September 23, 2022
                                                        :
-------------------------------------------------------x
                                                        :
Chapter 11 Trustee Luc A. Despins                       :
                              Counter-Plaintiff         :
                                                        :
v.                                                      :
HK International Funds Investments                      :
(USA) Limited, LLC, and Mei Guo                         :
                              Counter-Defendants.       :
-------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S MEMORANDUM IN SUPPORT OF APPLICATION
FOR PREJUDGMENT REMEDY PURSUANT TO BANKRUPTCY RULE 7064 AND
<u>CONNECTICUT GENERAL STATUTES SECTION 52-278D</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 5

JURISDICTION AND VENUE .............................................................................................. 5

RELIEF REQUESTED............................................................................................................ 5

ARGUMENT ........................................................................................................................... 6

I.      Applicable Legal Standard............................................................................................ 6

II.     Probable Cause Exists That Trustee Will Prevail on Counterclaims................................. 8

III.    If Court Does Not Grant Prejudgment Attachment, Trustee May Never Be Able to Enforce Judgment Against Debtor.................................................................................. 29

NO PRIOR REQUEST ......................................................................................................... 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*In re Affinity Health Care, Mgmt., Inc.*,
    499 B.R. 246 (Bankr. D. Conn. 2013) ...................................................................24

*In re AMC Invs., LLC*,
    524 B.R. 62 (Bankr. D. Del. 2015) .....................................................................10

*In re Andersen*,
    166 B.R. 516 (Bankr. D. Conn. 1994) ................................................................20

*Anderson v. Nedovich*,
    561 A.2d 948 (1989) ............................................................................................7

*In re Antex, Inc.*,
    397 B.R. 168 (B.A.P. 1st Cir. 2008) ...................................................................26

*Antique Ford Found. v. I.R.S., Dep't of Treasury, U.S.*,
    791 F. Supp. 1450 (D. Mont. 1992) ....................................................................18

*Aozora Bank, Ltd. v. Credit Suisse Group*,
    144 A.D.3d 437 (N.Y. App. Div. 2016) ..............................................................27

*ASARCO LLC v. Americas Mining Corp.*,
    396 B.R. 278 (S.D. Tex. 2008) ..........................................................................15

*Ashley v. Ashley*,
    393 A.2d 637 (Pa. 1978) ....................................................................................15

*ASPIC, LLC v. Poitier*,
    179 Conn. App. 631, 181 A.3d 593 (Conn. 2018) ................................................7

*In re B.L. Jennings, Inc.*,
    373 B.R. 742 (Bankr. M.D. Fla. 2007) ...............................................................15

*In re Bernard L. Madoff Inv. Sec. LLC*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) ..................................................................27

*In re Bernard L. Madoff Investment Securities, LLC*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..................................................................27

*Blair v. Infineon Tech., AG*,
    720 F. Supp.2d 462 (D. Del. 2010) .....................................................................15

**TABLE OF AUTHORITIES**

**(continued)**

*Carol v. Madison Plaza Apartment Corp.*,
    No. 156730/13, 2014 WL 6471482 (N.Y. Sup. Ct. Nov. 18, 2014) ........................................11

*CIT Bank N.A. v. Donovan*,
    856 F. App'x 335, 337 (2d Cir. 2021) .......................................................................................9

*Cody v. United States*,
    348 F.Supp.2d 682 (E.D. Va. 2004) .........................................................................................18

*Coleman v. J.P. Morgan Chase Bank N.A.*,
    136 N.Y.S.3d 911 (App. Div. 2nd Dept. 2021), *appeal dismissed,* 175 N.E.3d
    923 (2021) .............................................................................................................................9, 12

*In re Combes*,
    382 B.R. 186 (Bankr. E.D.N.Y. 2008) .....................................................................................20

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380(D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir.
    2019) ........................................................................................................................................15

*Daer Holdings, LLC v. Menchise (In re Steffen)*,
    No. 8:13-CV-1700-T-27, 2014 WL 11428827 (M.D. Fla. Mar. 13, 2014) ..............................18

*Deutsche Bank Nat'l Tr. Co. v. Juchniewich*,
    No. FSTCV166028759S, 2017 WL 1194769 (Conn. Super. Ct. Feb. 27, 2017) ......................8

*In re Dordevic*,
    633 B.R. 553 (Bankr. N.D. Ill. 2021) .................................................................................18, 19

*Ehrlich for Hoffmans Trade Grp. LLC v. Com. Factors of Atlanta*,
    567 B.R. 684 (N.D.N.Y. 2017) ................................................................................................20

*In re First Connecticut Consulting Grp., Inc.*,
    No. 04-101, 2004 WL 1676211 (Bankr. D. Vt. July 27, 2004), *aff'd*, 340 B.R.
    210 (D. Vt. 2006), *aff'd*, 254 F. App'x 64 (2d Cir. 2007) ...............................................19, 22

*G&F Assocs. No. 3 v. Montville Realty P'ship, LLC*,
    No. CV136017417, 2013 WL 7020528 (Conn. Super. Ct. Dec. 19, 2013) ..............................7

*Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*,
    742 F. Supp. 2d 446 (S.D.N.Y. 2010).......................................................................................9

*Guido v. 1114 6th Ave. Co.*,
    2015 WL 1055074 (N.Y. Sup. Ct. Mar. 10, 2015) ..................................................................29

# TABLE OF AUTHORITIES

## (continued)

*Harlem Bus. Ctr. v. Rothenberg*,
  205 N.Y.S. 353 (App. Term 1924) ........................................................................13

*In re Integrity Graphics, Inc.*,
  623 B.R. 21 (Bankr. D. Conn. 2020) ................................................................20, 21

*J.E. Robert Co. v. Signature Properties, LLC*,
  71 A.3d 492 (Conn. 2013) ....................................................................................7

*In re Jevic Holding Corp.*,
  No. 08-11006 BLS, 2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011)..............................25

*In re Jie Xiao*,
  608 B.R. 126 (Bankr. D. Conn. 2019) ......................................................20, 21, 23

*Katcher v. 3V Cap. Partners LP*,
  No. X05CV085008383S, 2011 WL 1105724 (Conn. Super. Ct. Feb. 1, 2011) ........................7

*In re Kellel*,
  No. 8-18-76679-LAS, 2022 WL 24057 (Bankr. E.D.N.Y. Jan. 3, 2022) ..............................26

*Kenwell Trading Ltd. v. Porcelen Ltd. CT LLC*,
  No. 3:22-CV-00248 (KAD), 2022 WL 3359159 (D. Conn. Aug. 15, 2022)............................6

*Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*,
  967 A.2d 1 (Conn. 2009) .....................................................................................13

*LiButti v. United States*,
  968 F. Supp. 71 (N.D.N.Y. 1997), *aff'd in part, rev'd in part*, 178 F.3d 114
  (2d Cir. 1999)....................................................................................................18

*Lombard v. Booz–Allen & Hamilton, Inc.*,
  280 F.3d 209 (2d Cir. 2002)................................................................................29

*In re LXEng LLC*,
  607 B.R. 67 (Bankr. D. Conn. 2019) .....................................................................20

*In re M. Fabrikant & Sons, Inc.*,
  541 F. Appx. 55 (2d Cir. 2013).............................................................................25

*In re Maxus Energy Corp.*,
  641 B.R. 467 (Bankr. D. Del. 2022) ..................................................24, 25, 26, 28

**TABLE OF AUTHORITIES**

**(continued)**

**Page**

*PAX v. Kwok*,
   Index No. 652077/2017 (N.Y. Sup. Ct.) ........................................................4, 29, 31

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*,
   988 F.3d 634 (2d Cir. 2021)........................................................................10

*Pope v. Enzo Biochem, Inc.*,
   432 F. App'x 7 (2d Cir. 2011) .......................................................................11

*Revital Realty Grp., LLC v. Kalmon Dolgin Affiliates, Inc.*,
   981 N.Y.S.2d 638 (N.Y. Sup. Ct. 2013) ..........................................................11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   631 B.R. 1, 12 (Bankr. S.D.N.Y. 2021) ...........................................................20

*In re Servicom, LLC*,
   No. 18-31722 (AMN), 2021 WL 825155 (Bankr. D. Conn. Feb. 24, 2021) ....................24, 25

*In re Smith*,
   No. 19-40964, 2022 WL 1814415 (Bankr. D. Kan. June 2, 2022).............................28

*Stockton v. Lansiquot*,
   838 F.2d 1545 (11th Cir. 1988) ....................................................................13

*Tahirou v. New Horizon Enterprises, LLC*,
   No. 3:20-CV-00281 (SVN), 2022 WL 510044 (D. Conn. Feb. 21, 2022) ........................6, 7

*In re Tronox Inc.*,
   503 B.R. 239 (Bankr. S.D.N.Y 2013).............................................................28

*Universal Furniture Int'l, Inc. v. Frankel*,
   538 F. App'x 267 (4th Cir. 2013) ..................................................................12

*Universitas Educ., LLC v. Benistar*,
   No. 3:20-CV-00738 (JAM), 2021 WL 965794 (D. Conn. Mar. 15, 2021)..........................14

*In re Wolf*,
   595 B.R. 735 (Bankr. N.D. Ill. 2018) ..............................................................24

*In re Wyly*,
   607 B.R. 862 (Bankr. N.D. Tex. 2018)............................................................19

## TABLE OF AUTHORITIES

### (continued)

**Page**

**Statutes**

11 U.S.C.
§ 544 ...................................................................................................4, 20
§ 544(b) ..........................................................................................26, 27, 28
§ 546(a) .................................................................................................26
§ 548 ...............................................................................................4, 20, 25
§ 548(a)(1) ............................................................................................28
§ 548(a)(1)(A) .......................................................................................20
§ 550 ...............................................................................................4, 20, 24
§ 550(a) .................................................................................................23
§ 550(a)(2) ............................................................................................24
§ 550(b) .................................................................................................24

26 U.S.C.
§ 6502(a)(2) ..........................................................................................28
§ 6901 ...................................................................................................28

28 U.S.C.
§ 157 ........................................................................................................5
§ 157(b) ...................................................................................................5
§ 1334 ......................................................................................................5
§ 1408 ......................................................................................................5
§ 1409 ......................................................................................................5
§ 1746 .....................................................................................................30

Conn. Gen. Stat. Ann. § 52-278d (West) ...................................................6

Connecticut Prejudgment Remedy Statute
§ 52-278d(a)(4) .......................................................................................6
§ 52-278d(d) .......................................................................................1, 6
§ 52-278d(e) ...........................................................................................6
§ 52-278d *et seq.* ...................................................................................1
§ 52-278d(f) ............................................................................................6

N.Y. Civ. Prac. Law
§ 203(g) .................................................................................................27
§ 213(8) ............................................................................................26, 27

N.Y. Debt. & Cred. Law § 276 ...............................................................20

New York Uniform Fraudulent Conveyance Act ....................................25

Mr. Luc A. Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") appointed in the chapter 11 case (the "<u>Chapter 11 Case</u>") of Ho Wan Kwok (the "<u>Debtor</u>"), hereby submits this memorandum in support of his application (the "<u>Application</u>"), pursuant to Rule 64 of the Federal Rules of Civil Procedure, Rule 7064 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and section 52-278d *et seq.* of the Connecticut General Statutes (the "<u>Connecticut Prejudgment Remedy Statute</u>"), for a prejudgment remedy against (i) HK International Funds Investments (USA) Limited, LLC ("<u>HK USA</u>"), plaintiff and counter-claim defendant in the above captioned adversary proceeding (the "<u>Adversary Proceeding</u>") and (ii) Mei Guo (the "<u>Debtor's Daughter</u>"), counterclaim-defendant in the Adversary Proceeding.[1]  In support of this memorandum,[2] the Trustee states as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      The Debtor and his family have vigorously defended, at immense expense, the Debtor's status as a judgment-proof billionaire who is able to enjoy all the trappings of immense wealth without any responsibility to repay his creditors.  That strategy continues in this Adversary Proceeding, in which HK USA, a company purportedly owned by the Debtor's Daughter, asserts that the Lady May—a luxury yacht which at the time of its purchase had a value of nearly $32 million[3]—belongs to HK USA and not to the Debtor's chapter 11 estate.  HK

---

[1]     The Trustee has also moved for an order, pursuant to § 52-278d(d), requiring HK USA and the Debtor's Daughter to disclose property in which they have an interest.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Chapter 11 Trustee's Answer and Counterclaims* (the "<u>Answer and Counterclaims</u>"), filed contemporaneously herewith.

[3]     The *Lady May*'s Bill of Sale, dated February 23, 2015, lists a purchase of price of €28,000,000.00, which, multiplied by the applicable exchange rate on February 23, 2015 (of 1.1333 dollars per euro), equals $31,732,400.00. *See* Answer and Counterclaims, Ex. 36, Sale documents in connection with the sale of the Lady May, at 1 (Bill of Sale).

USA's position is at odds with reality. As Justice Ostrager of the New York Supreme Court (the "State Court") has already ruled, the record is clear that the Debtor, and not HK USA, beneficially owns and controls the Lady May. HK USA's claim in this adversary proceeding is therefore wholly without merit.

2. The Trustee, by contrast, holds several meritorious counterclaims (the "Counterclaims") against HK USA. The Counterclaims assert, among other things, that HK USA is the Debtor's alter ego or is equitably owned by the Debtor, that HK USA received the Lady May via an actual fraudulent transfer, and that HK USA committed the tort of negligence against the Debtor, thus harming his estate. These Counterclaims entitle the Trustee to relief equal to or greater than the value of HK USA itself and/or its known assets, including the *Lady May* as well as the funds—originally $37 million—that HK USA placed into an escrow account (the "Escrowed Funds") under the April 29, 2022 stipulation regarding the *Lady May*'s return to the United States [Docket No. 299] (the "Lady May Stipulation").[4]

3. Pursuant to this application, the Trustee seeks a prejudgment attachment order under the Connecticut Prejudgment Remedy Statute against (i) the Debtor's Daughter attaching the ownership interest in HK USA purportedly held by her and (ii) HK USA attaching (a) the Lady May and (b) HK USA's interest in the Escrowed Funds. This prejudgment relief is critical to ensure that assets will be available to the Trustee to satisfy his eventual judgment. Indeed, the record makes clear that the Debtor will stop at nothing to protect his wealth from the reach of his creditors, with the State Court having found that the Debtor is "a self-declared multi-billionaire

---

[4] The Trustee is ***not*** a party to the Lady May Stipulation, as this Court has recognized. *See, e.g.*, Answer and Counterclaims, Ex. 89, Aug. 30, 2022 Tr. at 18:6-9 ("[O]bviously the trustee -- the trustee was not a party to any of this. He was not in the case when the parties agreed to forego a hearing on relief from stay and a ruling on relief from stay.").

[who has] secreted his assets in a maze of corporate entities and with family members" to evade his creditors. Accordingly, there is a real risk that if the Trustee does not attach HK USA's purported assets now, they will be long gone by the time this litigation concludes.

4.      The Trustee readily meets the requirement of the Connecticut Prejudgment Remedy Statute that he show "probable cause" for his Counterclaims. The Counterclaims are supported by detailed factual allegations, together with citations to record evidence in this and other proceedings, which paint a clear picture of HK USA's liability. Drawing reasonable inferences in the Trustee's favor, as the Court should in ruling on this Application, there can be no doubt that the Trustee has demonstrated an entitlement to the requested attachment.

5.      Specifically, as to Count I of the Counterclaims, the Trustee has established probable cause that he is entitled to a declaration that the Lady May is property of the estate based on collateral estoppel arising from HK USA's extensive participation alongside the Debtor in the State Court litigation with Pacific Alliance Asia Opportunity Fund L.P (the "State Court Action"). As Justice Ostrager found in the State Court Action, based on "clear[] and convincing[]" evidence—including the testimony of the Debtor's Daughter who supposedly owns HK USA—the Debtor "beneficially owns and controls" the Lady May. HK USA cannot now relitigate that same issue before this Court.

6.      The Trustee has also shown in Count II of his Counterclaims that he is entitled to a declaration that HK USA is the Debtor's alter ego and, therefore, ***all*** of HK USA's property— not just the Lady May—belongs to the estate. All of the key factors that courts consider in determining whether an entity is an alter ego are satisfied here. HK USA is a holding company with no independent existence that the Debtor has consistently manipulated as part of his "shell game" to place valuable assets in the ostensible possession of his daughter while he continues to

use and enjoy those assets.  These and the other facts alleged in the Counterclaims are more than sufficient to establish HK USA's alter ego status.

7.      In the alternative, if HK USA is not the Debtor's alter ego, the Trustee has established probable cause that HK USA was the recipient of actual fraudulent transfers that the Trustee may now avoid and recover under sections 544, 548, and 550 of the Bankruptcy Code, as alleged in Count III of the Counterclaims.  Specifically, the evidence shows that, in 2017, the Debtor caused the transfer of his ownership in HK International (which then owned the Lady May) to his daughter for a payment *of only $1.00.*  This transfer for essentially no consideration is surrounded by numerous other badges of fraud, leaving no doubt the Debtor undertook this transfer as part of his "shell game" to evade creditors.

8.      Finally, as set forth in Count IV, the Trustee also holds a negligence claim against HK USA as a result of its brazen violation of the order (the "October 2020 Restraining Order") issued by Justice Ostrager (i) prohibiting the Debtor "*and/or the registered owners*" of the Lady May from sailing the Lady May away from the United States[5] and (ii) fining the Debtor $500,000 per day if the Lady May were to leave United States.  HK USA knew this, but it and its representatives nevertheless caused the Lady May to leave the United States for a period of 268 days as of February 7, 2022.  As a consequence, Justice Ostrager issued his February 9, 2022 decision and order (the "Final Contempt Decision"), imposing approximately *$134 million in contempt fines* on the Debtor, for which the estate is now allegedly liable.  Having caused these fines, HK USA is liable to the estate in an amount equal to the fines based on its negligence.

---

[5]     *See* Answer and Counterclaims, Ex. 50, Decision and Order at 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 630 (emphasis added).

9.      Evidence supporting each of these claims has been filed contemporaneously herewith.  To be clear, although the Trustee has readily satisfied probable cause for each of his Counterclaims, the Court need only find that probable cause exists for one of the Counterclaims to support this Application.  The Trustee more than meets that burden, and, therefore, this Application should be granted.

## BACKGROUND

10.      The Trustee incorporates by reference the facts set forth in the Trustee's Answer and Counterclaims, filed contemporaneously herewith.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the District of Connecticut (as amended).  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.      The statutory bases for the relief requested herein are Rule 64 of the Federal Rules of Civil Procedure, Bankruptcy Rule 7064, and the Connecticut Prejudgment Remedy Statute.

## RELIEF REQUESTED

13.      In the Application and in this supporting memorandum, the Trustee, pursuant to Rule 64 of the Federal Rules of Civil Procedure, Bankruptcy Rule 7064, and the Connecticut Prejudgment Remedy Statute, seeks prejudgment attachment against HK USA.  Specifically, the Trustee requests an order attaching certain assets allegedly owned by HK USA that are, in reality, property of the estate and that should be available to the Debtor's creditors and/or turned over to the Trustee.  Those assets are the Lady May yacht and HK USA's interest in the Escrowed Funds of approximately $37 million.  Because HK USA, allegedly owned by the

Debtor's Daughter, is also, in reality, property of the estate, the Trustee also requests attachment of the ownership interests in HK USA.

## ARGUMENT

### I.    Applicable Legal Standard

14.    Under Connecticut law,[6] a court considering a request for a prejudgment remedy should limit its consideration to the following three factors: "(1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff, (2) whether payment of any judgment that may be rendered against the defendant is adequately secured by insurance, (3) whether the property sought to be subjected to the prejudgment remedy is exempt from execution."[7]  Conn. Gen. Stat. Ann. § 52-278d (West).[8]

15.    "Probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Tahirou v. New Horizon Enterprises,*

---

[6]    Bankruptcy Rule 7064 incorporates Fed.R.Civ.P. 64, which itself incorporates certain state law collection remedies, including attachment, that are available "under the law of the state where the court is located"—here, Connecticut.

[7]    None of the property the Trustee seeks to attach is exempt, and the Trustee is not aware of any insurance policy held by HK USA that would defeat the need for attachment, nor would insurance exempt HK USA from turning over property of the estate.  Accordingly, this memorandum will focus on the first, and primary, statutory requirement: probable cause.

[8]    The Connecticut Prejudgment Remedy Statute also includes a fourth consideration: if the court has determined to grant a prejudgment remedy, whether a bond should be required.  *See* § 52-278d(a)(4).  HK USA bears the burden, in the first instance, of requesting and demonstrating the need for a bond, which it cannot do.  *See* §§ 52-278d(d) and (e); *Kenwell Trading Ltd. v. Porcelen Ltd. CT LLC*, No. 3:22-CV-00248 (KAD), 2022 WL 3359159, at *5 (D. Conn. Aug. 15, 2022) (denying defendant's request that plaintiff post bond).  Even if HK USA could make such a showing, the Trustee should be excused from any bond requirement pursuant to § 52-278d(f), and reserves all rights accordingly.

*LLC*, No. 3:20-CV-00281 (SVN), 2022 WL 510044, at *4 (D. Conn. Feb. 21, 2022) (internal

quotation marks and references omitted).  "It is a flexible common sense standard that does not

demand that a belief be correct or more likely true than false."  *Id.* (internal quotation marks and

references omitted).  "The probable cause standard is ***less demanding than standards which***

***require findings to be made based on a preponderance of the evidence or even a likelihood of***

***success***."  *Id.* (emphasis added) (internal quotation marks and references omitted).

16.    The Connecticut Supreme Court has compared the probable cause standard to the

standard for defeating a motion to dismiss, explaining that its review of an order of prejudgment

remedy "view[s] the evidence in the light most favorable to the plaintiff."  *J.E. Robert Co. v.*

*Signature Properties, LLC*, 71 A.3d 492, 510 (Conn. 2013); *see also ASPIC, LLC v. Poitier*, 179

Conn. App. 631, 640, 181 A.3d 593, 598 (Conn. 2018) ("We will not upset a prejudgment

remedy order in the absence of clear error ... viewing the evidence in the light most favorable to

the plaintiff.") (quoting *J.E. Robert Co.*, 71 A.3d 492).

17.    For the same reason, a prejudgment remedy applicant is entitled to reasonable

inferences supported by the identified facts and evidence.  *See G&F Assocs. No. 3 v. Montville*

*Realty P'ship, LLC*, No. CV136017417, 2013 WL 7020528, at *2 (Conn. Super. Ct. Dec. 19,

2013) (granting prejudgment remedy based on "evidence at the hearing, including the reasonable

inferences from the same"); *Katcher v. 3V Cap. Partners LP*, No. X05CV085008383S, 2011 WL

1105724, at *21 (Conn. Super. Ct. Feb. 1, 2011) (same); *Anderson v. Nedovich*, 561 A.2d 948,

949 (1989) ("In addition, the trier is entitled to draw reasonable inferences based on the facts

proven.").

18.    In contrast to the flexible and easily satisfied probable cause standard that applies

to the applicant, a "heightened standard is applied for those defending a prejudgment remedy

application." *Deutsche Bank Nat'l Tr. Co. v. Juchniewich*, No. FSTCV166028759S, 2017 WL 1194769, at *6 (Conn. Super. Ct. Feb. 27, 2017). Because the statute provides a specific (and lower) standard of probable cause for the applicant but "is silent as to the standard of proof for a defense of a PJR application," courts have held that the standard for proving defenses, counterclaims or set-offs, as permitted by the statute, "is the preponderance of the evidence standard." *Id.* at *7 (internal citations omitted).

19.    In sum, while the Trustee is confident that he will ultimately prevail on each of his Counterclaims under the more exacting preponderance standard that will be applied at trial, at this stage the Trustee need only demonstrate "probable cause" that he will prevail—a standard that does not require even a 51% percent chance of prevailing on the Counterclaims. In meeting that standard, the Trustee is entitled to the reasonable inferences of his evidence, and to have the evidence viewed in the light most favorable to him. On the other hand, HK USA cannot rely on the probable cause standard in proving defenses, counterclaims, or set-offs but must, instead, satisfy the preponderance of the evidence standard.

20.    For the reasons explained below, the Trustee has easily met the applicable standard, and is entitled to prejudgment remedy against HK USA.

## II.    Probable Cause Exists That Trustee Will Prevail on Counterclaims

21.    The Trustee asserts counterclaims against HK USA based on four principal, and distinct, theories: (a) the Debtor is the owner of the Lady May based on collateral estoppel (Count I); (b) the Debtor is the true owner of HK USA, including all of its assets (*i.e.*, the Lady May and the $37 million of Escrowed Funds), under an alter ego theory or other equitable principles (Counts II and III); (c) HK USA obtained the Lady May by means of an actual fraudulent transfer (Count IV); and (d) HK USA committed the tort of negligence against the Debtor, which caused the Debtor to incur $134 million of liability in connection with the Final

Contempt Decision and other applicable damages, thus giving rise to a claim by the estate for at least $134 million against HK USA (Count V). Probable cause exists that the Trustee will prevail on each of these theories.

a.  Probable Cause Exists that Lady May is Property of Debtor

22.     In his Final Contempt Decision, Justice Ostrager found that the Debtor "beneficially owns and controls the Lady May."[9] This finding both (i) precludes HK USA from asserting ownership of the Lady May under principles of collateral estoppel and (ii) establishes definitively that the Trustee will prevail on his claim that the Debtor owns the Lady May.

23.     Because the Final Contempt Decision was issued by a New York state court, this Court should apply New York state law regarding collateral estoppel. *See Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 452 (S.D.N.Y. 2010) ("To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state.") (internal citations omitted); *see also CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 337 (2d Cir. 2021) ("Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York issue preclusion (collateral estoppel) law to New York state-court judgments.").

24.     Under New York law, the doctrine of collateral estoppel (or issue preclusion) precludes a party from relitigating in a subsequent action an issue that was raised in a prior action and decided against that party or those in privity. *Coleman v. J.P. Morgan Chase Bank N.A.*, 136 N.Y.S.3d 911, 932 (App. Div. 2nd Dept. 2021), *appeal dismissed,* 175 N.E.3d 923 (2021). Specifically, collateral estoppel bars relitigation of an issue when: (1) the identical issue necessarily was decided in the prior action and is decisive of the present action and (2) the party

---

[9]     Answer and Counterclaims, Ex. 1, Final Contempt Decision at 7.

to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *See Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (applying New York law).

### 1. *Identical Issues Decided in State Court Litigation*

25.     The first prong of the collateral estoppel analysis—whether identical issues were necessarily decided in the State Court litigation—addresses the question of which factual findings made by a prior court will be given preclusive effect.  On this point, it has been ruled that issues are "necessarily determined" if they are an "essential element of a finding" and that "even factual issues that are only implicitly relied upon in reaching a decision can be given preclusive effect.  Similarly, factual issues are 'decisive' if they tend to establish a claim." *In re AMC Invs., LLC*, 524 B.R. 62, 78 (Bankr. D. Del. 2015) (applying New York law).

26.     Here, collateral estoppel would apply to numerous factual issues decided by Justice Ostrager.  Most obviously, collateral estoppel would apply to Justice Ostrager's ultimate finding that the Lady May was beneficially owned and controlled by the Debtor.  As discussed in the Counterclaims, this was the central question Justice Ostrager was asked to resolve by the Appellate Division, and had to be decided in order for Justice Ostrager to issue the Final Contempt Decision.  This finding alone demonstrates probable cause that the Trustee will prevail on his claim that the Debtor, and not HK USA, owns the Lady May.

27.     In addition, collateral estoppel should also apply to Justice Ostrager's numerous other subsidiary findings in the Final Contempt Decision, which include, as discussed in more detail in the Counterclaims, findings that the Debtor parked assets with shell companies and family members as part of the Debtor's scheme to "assert that he has no assets despite his lavish

lifestyle."[10]  These findings were among a number of other findings that Justice Ostrager relied upon to reach his ruling, and they strongly support the Trustee's position here that the Debtor, and not his daughter or HK USA, truly owns the Lady May.

### 2.  *HK USA Had Full and Fair Opportunity to Litigate in State Court*

28.    Under New York Law, a nonparty to a prior action is considered to have had a full and fair opportunity to litigate and thus subject to collateral estoppel when the nonparty is in privity with a party to the prior action.  *See Revital Realty Grp., LLC v. Kalmon Dolgin Affiliates, Inc.*, 981 N.Y.S.2d 638, 638 (N.Y. Sup. Ct. 2013) ("The principle of collateral estoppel 'precludes a party from relitigating in a subsequent action an issue clearly raised in a prior action and decided against that party or ***those in privity***.'") (internal references omitted) (emphasis added).  Here, HK USA was in privity with the Debtor in the State Court litigation and, thus, is subject to collateral estoppel on the issue of ownership of the Lady May.

29.    "In the context of collateral estoppel, a party in privity is one that had 'a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.'"  *Id.* (quoting *Juan C. v. Cortines*, 89 N.Y.2d 659, 667 (1997)).  The concept of privity for collateral estoppel purposes "requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation," *Carol v. Madison Plaza Apartment Corp.*, No. 156730/13, 2014 WL 6471482, at *3 (N.Y. Sup. Ct. Nov. 18, 2014), and which revolves around the question of if a "nonparty's interests were adequately represented."  *Pope v. Enzo Biochem, Inc.*, 432 F. App'x 7, 10 (2d Cir. 2011) (applying New York law).

---

[10]    Answer and Counterclaims, Ex. 1, Final Contempt Decision at 1.

30.     Courts have found parties to be in privity for the purposes of collateral estoppel in a variety of contexts where it is clear that the parties' interests were aligned, whether by dint of their common goals and/or their close legal, financial, or familial relationships. *See, e.g.*, *Coleman*, 136 N.Y.S.3d at 932 (affirming lower court's finding that a party was collaterally estopped from seeking quiet title to real property when "his interests [were] represented by his wife, who was a defendant in the prior foreclosure action.") (internal quotation marks omitted); *Universal Furniture Int'l, Inc. v. Frankel*, 538 F. App'x 267, 270-71 (4th Cir. 2013) (individual collaterally estopped from relitigating an issue that was resolved during the first trial by the company he co-owned with his brother and business partner, because he was a co-owner and co-controller the company and had a substantial role in the prior suit).

31.     Here, it is clear from the record set forth in the Counterclaims that the Debtor and HK USA were in privity due to their close relationship and their common legal and financial goals.  HK USA was allegedly owned and controlled by the Debtor's Daughter, and thus the Debtor and HK USA had a close, familial relationship.  In addition, HK USA and the Debtor had the same interests.  They both alleged and argued in the State Court Action that the Lady May was owned and controlled by HK USA, not the Debtor.  The same is true now, as the Debtor's counsel has stated the Debtor is fully aligned with HK USA in connection with this Adversary Proceeding.  *See* Answer and Counterclaims, Ex. 91, Aug. 1, 2022 Tr. 39:3-8 ("[The Debtor's] position is that HK [USA] owns the boat so [the Debtor and HK USA] are not adverse."  He does not believe that he owns the boat. He does not believe that it's property of the bankruptcy estate. I'll say that unequivocally on the record. So I don't see how they can be adverse if they take the same position.").  For these reasons, the Debtor and HK USA were in privity during the State Court Action for collateral estoppel purposes.

32. Even if HK USA was not formally in privity with the Debtor in connection with the State Court Action, courts in numerous states have permitted the use of collateral estoppel against parties who, while not in privity with a party to prior litigation, were nonetheless bound by the previous decision by dint of their appearance, and open and active participation, in the prior litigation. *See Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 967 A.2d 1, 18 (Conn. 2009) ("Both Connecticut and sister state case law in the area of collateral estoppel and res judicata make clear that . . . . It is not essential in the application of the doctrine of res [judicata] that a party to be bound by the former adjudication should have been a formal party thereto or privy to a formal party.  It is sufficient if he, having an interest in the subject matter, participated openly and actively in so much of the former litigation as led to the judgment adjudicating the cause of action in question.") (internal quotation marks omitted); *Stockton v. Lansiquot*, 838 F.2d 1545, 1546 (11th Cir. 1988) ("It is well settled Florida law that even though a party in a subsequent suit was not a named party in a prior suit, such party is bound by the prior judgment if he participated in the first proceeding.") (internal quotation marks omitted); *Harlem Bus. Ctr. v. Rothenberg*, 205 N.Y.S. 353, 353 (App. Term 1924) ("The application of the doctrine of res adjudicata, beyond the immediate parties to the previous adjudication, prescribes that the third party must be either privy to, or have the right to control the conduct of, the litigation, or have been vouched in, or perhaps have taken some open and notoriously active part in the actual conduct of the litigation.").

33. Here, it is clear from the record set forth in the Counterclaims that HK USA was openly and actively involved in the State Court Action.  HK USA made an appearance in the State Court Action to oppose PAX's motion seeking the Final Contempt Decision on the grounds

-13-

that HK USA's property interests were being affected by the motion.[11]  HK USA then helped

defend the Debtor at the evidentiary hearing regarding the ownership of the Lady May,

presenting four of the five witnesses offered on behalf of the defense, including the Debtor's

Daughter, the alleged owner of HK USA.  Moreover, HK USA's counsel and the Debtor's

counsel in the State Court Action were paid by the same Debtor-linked shell company, Golden

Spring (and now, HK USA and the Debtor are represented by the same law firm in this chapter

11 case).  For all of these reasons, HK USA is bound by the State Court's findings by virtue of

having participated in that litigation.

> b.  Probable Cause HK USA is Alter Ego of the Debtor

34.    The Trustee alleges that HK USA is, in truth, an alter ego of the Debtor and that,

therefore all of HK USA's assets should be deemed property of the estate and surrendered to the

Trustee.  The Trustee has established probable cause in support of this claim based on numerous

facts demonstrating that HK USA has no independent existence but, rather, is a shell company

the Debtor has used as part of his scheme to hide assets from creditors.

35.    Under Delaware law, in determining whether one entity is the alter ego of

another,[12] a court must focus on (1) whether the entities in question operated as a single

economic unit and (2) whether there was an overall element of injustice or unfairness.  With

regard to the former, Delaware courts consider a number of factors, including: (i) whether the

company was adequately capitalized; (ii) whether the company was solvent; (iii) whether

corporate formalities were observed; (iv) whether the dominant shareholder siphoned company

---

[11]    Answer and Counterclaims, Ex. 90, Vartan Affirmation at ¶ 4.

[12]    Because HK USA is a Delaware entity, Delaware law applies to the alter ego/veil piercing claim.  *See, e.g.*, *Universitas Educ., LLC v. Benistar*, No. 3:20-CV-00738 (JAM), 2021 WL 965794, at *7 (D. Conn. Mar. 15, 2021) ("[B]ecause [defendant] is incorporated in Delaware, I must apply Delaware law to decide if it may be subject to an alter ego claim for reverse veil piercing liability.").

-14-

funds; and (v) whether, in general, the company functioned as a facade for the dominant

shareholder.  *See Blair v. Infineon Tech., AG*, 720 F. Supp.2d 462, 470-71 (D. Del. 2010).  This

"list of factors is not exhaustive and no single factor is dispositive."  *Id*. at 471.

36.     A number of courts have explained that control over, and/or ownership of, the

property or assets of the allegedly separate entity is evidence that the entity is really the alter ego

of the controlling party.  For example, in *ASARCO*, the court, applying Delaware law, found that

the debtor and its subsidiary operated as a single economic unit in part because the "dividends

from [subsidiary's] **only asset** went directly to [debtor], its dominant shareholder, which had

**total control** of the funds."  *ASARCO LLC v. Americas Mining Corp*., 396 B.R. 278, 320 (S.D.

Tex. 2008) (emphasis added).  And in *Crystallex*, the court explained that the allegedly separate

instrumentality will be considered an alter ego if the controlling entity has extensive control of

the instrumentality, including if it "uses the instrumentality's property as its own."  *Crystallex*

*Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 401(D. Del. 2018), *aff'd*

*and remanded*, 932 F.3d 126 (3d Cir. 2019).[13]  Other courts have ruled similarly.  *See, e.g.*,

*Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978) ("We have said that whenever one in control of a

corporation uses that control, ***or uses the corporate assets***, to further his or her own personal

interests, the fiction of the separate corporate identity may properly be disregarded.") (emphasis

added); *In re B.L. Jennings, Inc.*, 373 B.R. 742, 759 n. 10 (Bankr. M.D. Fla. 2007) ("partnerships

---

[13]   The *Crystallex* court was applying the so-called "*Bancec* standard," which is the alter ego test developed
specifically in the context of determining whether a governmental instrumentality is the alter ego of the
sovereign that established it, and which test was "developed pursuant to federal common law."  *Crystallex*, 333
F.Supp. 3d at 396.  However, the "*Bancec* standard is in fact most similar to the 'alter ego' or piercing the
corporate veil' standards applied in many states."  *Id.*

and other business entities *may also be found to be the 'alter egos' of those in control or dominion over their assets*") (emphasis added).[14]

37.     Here, the record provides overwhelming support for the Trustee's alter ego allegations.  As an initial matter, the record is not disputed that the Lady May was at all relevant times HK USA's only asset, and Justice Ostrager has already found that the Lady May is beneficially owned and controlled by the Debtor.  This finding—that the Debtor exercised dominion and control over HK USA's only asset, and therefore HK USA itself—is binding on HK USA based on collateral estoppel and cannot be relitigated.

38.     Justice Ostrager also issued other preclusive findings that HK USA was part of a "shell game" the Debtor used to hide his assets from creditors, thus establishing that the Debtor used HK USA to perpetuate a fraud or injustice upon his creditors.  For example, Justice Ostrager found that:

a)      The Debtor had made "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members."[15]

b)      The Debtor, "who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[16]

c)      The Debtor's use of corporate entities to shield assets from creditors was a "scheme" that had "enabled Kwok to assert that he has no assets despite his lavish lifestyle."[17]

---

[14]    *See* 114 Am. Jur. Proof of Facts 3d 403 (2010) ("Under Florida, Delaware, Pennsylvania, or New York law, the elements necessary to pierce the corporate veil or establish alter-ego liability are essentially the same.").

[15]    Answer and Counterclaims, Ex. 1, Final Contempt Decision at 1.

[16]    *Id.*

[17]    *Id.*

      d)      The Debtor's Daughter "introduced no evidence that she exercised dominion and control of the *Lady May*, and provided no confirmation that she came into possession of the Lady May, other than as a ruse to shield the Lady May from being levied upon by her father's creditors."[18]

39.      Finally, the Counterclaims are replete with other evidence that HK USA was the Debtor's alter ego.  Among other things:

      a)      At all relevant times, HK USA's sole member was the Debtor's Daughter, and it had no directors, officers, or employees, did not file tax returns, had no bank account and was not otherwise capitalized, and kept no documents.

      b)      HK USA and the Debtor are represented by the same law firm.

      c)      HK USA, the Debtor, and a number of other Debtor-linked entities use the same address at 162 East 64th Street, New York, New York 10065.

      d)      HK USA received the Lady May from Hong Kong International Funds Investments Limited ("HK International"), another entity ostensibly owned and controlled by the Debtor's Daughter, for no consideration.

      e)      HK USA has no source of income, and, as HK USA has conceded, HK USA's expenses have been paid for by Golden Spring and Lamp Capital. These are entities that, by the Defendant's own admissions, are purportedly owned by the Debtor's Son[19] and part of a network of family controlled entities used by the Debtor to perpetuate his "shell game" and defraud creditors.  Golden Spring and/or Lamp Capital have for years paid the Debtor's expenses, including his legal counsel and counsel to HK USA.

      f)      The Debtor filed a chapter 11 plan under which HK USA would, in exchange for no apparent consideration, contribute the Lady May to fund distributions to ***the Debtor's*** creditors.

---

[18]    Answer and Counterclaims, Ex. 1, Final Contempt Decision at 7.

[19]    *See, e.g.*, Complaint ¶ 24 ("The Lady May's expenses were previously funded through [Golden Spring].  Now they are funded by Lamp Capital."); Answer and Counterclaims, Ex. 69, Letter from L. Vartan, dated May 4, 2021 ("In connection with its representation [of HK USA], the firm has received payments from Golden Spring (New York) Ltd. and Lamp Capital LLC."); Answer and Counterclaims, Ex. 42, Letter from L. Vartan, dated June 7, 2021 ("I can confirm that all expenses for the Lady May yacht, including staff, crew, and maintenance, are paid by Golden Spring New York.").

g)    Himalaya Financial Group Limited ("Himalaya Financial"), lender of the $37 million paid into escrow by HK USA in connection with the Lady May Stipulation, is itself likely an alter ego of the Debtor, given, among other issues, the highly unusual circumstances of the loan and the close relationship between Himalaya Financial and other Debtor-linked entities.

40.    In sum, the evidence that HK USA is an alter ego of the Debtor easily clears the low hurdle of the probable cause standard, justifying the prejudgment attachment of all of HK USA's assets and the equity interest in HK USA purportedly held by the Debtor's Daughter.

c.    Probable Cause Trustee Will Prevail on Equitable Ownership Claim

41.    In addition to his claim that HK USA is an alter ego of the Debtor, the Trustee has asserted that the Debtor is the equitable owner of HK USA, notwithstanding that the Debtor's Daughter holds legal or nominal title to it, and that therefore ownership of HK USA should be turned over to the Trustee.  "Because there is no established test for [the question of equitable ownership] under [Delaware] law, it is appropriate for the Court to apply the common-law factors generally applied by federal courts to determine the existence of a nominee relationship." *In re Dordevic*, 633 B.R. 553, 557 (Bankr. N.D. Ill. 2021).[20]

42.    "In general terms, a nominee is one who holds bare legal title to property for the benefit of another."  *Dordevic*, 633 B.R. at 557 (internal quotations marks omitted).  "As one

---

[20]    Federal courts in multiple jurisdictions agree with this approach.  *See, e.g.*, *Daer Holdings, LLC v. Menchise (In re Steffen)*, No. 8:13-CV-1700-T-27, 2014 WL 11428827, at *4 n.6 (M.D. Fla. Mar. 13, 2014) ("While the federal courts generally apply the law of the forum state (in this case, Florida) to resolve nominee, alter-ego and similar questions, Florida, like many states, does not have a bright-line test for determining nominee ownership. Therefore, federal common law applies.") (internal quotation omitted); *Cody v. United States*, 348 F.Supp.2d 682, 694 (E.D. Va. 2004) ("[F]ederal courts sitting in states whose law of nominee ownership is similarly undeveloped have typically looked to nominee ownership criteria employed in other federal tax collection cases."); *LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997), *aff'd in part, rev'd in part*, 178 F.3d 114 (2d Cir. 1999) ("The Court has found no reported New Jersey cases addressing the factors relevant to nominee theory.  Thus, the Court applies factors used by other courts that have considered the nominee theory." (footnote omitted); *Antique Ford Found. v. I.R.S., Dep't of Treasury, U.S.*, 791 F. Supp. 1450, 1454 (D. Mont. 1992) (subsequent history omitted) (noting there "appear to be no reported Montana decisions which address the issue of what factors are relevant in determining whether a business entity is the nominee of an individual" and applying factors identified by other courts).

court has described it, a nominee is like a dummy, holding mere title to the property without any beneficial interest; it is an arrangement of convenience." *In re First Connecticut Consulting Grp., Inc.*, No. 04-101, 2004 WL 1676211, at *4 (Bankr. D. Vt. July 27, 2004), *aff'd*, 340 B.R. 210 (D. Vt. 2006), *aff'd*, 254 F. App'x 64 (2d Cir. 2007). The nominee theory, therefore, allows courts to look past legal title and recognize the true, or beneficial, owner. *See In re Wyly*, 607 B.R. 862, 870 (Bankr. N.D. Tex. 2018) ("The nominee theory is a basis for attaching the property of a third party to satisfy a delinquent taxpayer's liability that is similar to but distinct from the alter ego theory.").

43.    "Courts consider several factors in determining whether a titleholder is actually serving as a nominee for the benefit of another, including whether: (1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and (5) the transferor continues to exercise dominion and control over the property." *Dordevic*, 633 B.R. at 557.

44.    The allegations in the Counterclaims easily provide probable cause to meet this standard. No consideration was paid for the nominal transfer of HK International to the Debtor's Daughter, or the subsequent transfer of the Lady May to HK USA, also nominally held by the Debtor's Daughter. There is obviously a close personal relationship between Kwok and his daughter—an unemployed 28 year old. Further, Justice Ostrager has preclusively determined that, as part of his shell game, the Debtor moved assets, including the Lady May, to avoid liability and continued to enjoy the benefits of the transferred property. From these

circumstances, it is clear that the Debtor's Daughter serves merely as nominee holding bare legal title to the Lady May, while the Debtor exhibits all the characteristics of true ownership.

       d.    <u>Probable Cause Trustee Will Prevail on Fraudulent Transfer Claims</u>

45.    As an alternative to his Counterclaims seeking ownership of HK USA and its assets, the Trustee asserts actual fraudulent transfer claims against HK USA pursuant to (1) sections 548 and 550 of the Bankruptcy Code and (2) section 544 of the Bankruptcy Code and section 276 of New York's Debtor and Creditor Law.

46.    A claim of actual fraud under section 548(a)(1)(A) of the Bankruptcy Code requires allegations that the defendant made a transfer or incurred an obligation with "actual intent" to "hinder, delay or defraud" a past or future creditor. *In re Integrity Graphics, Inc.*, 623 B.R. 21, 29-30 (Bankr. D. Conn. 2020). The debtor-transferor's intent is at issue in such claims, not the transferee's. *In re LXEng LLC*, 607 B.R. 67, 91 (Bankr. D. Conn. 2019).[21]

47.    "Because of the difficulty in proving actual intent to hinder, delay, or defraud in making its case, a party can rely on the 'badges of fraud,' which are 'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'" *In re Jie Xiao*, 608 B.R. 126, 157 (Bankr. D. Conn. 2019); *see also In re Andersen*, 166 B.R. 516, 529 (Bankr. D. Conn. 1994) ("In recognition of that reality, courts have held that fraudulent intent may be inferred from the circumstances surrounding the transfer. ***Indirect evidence of fraud may consist of the circumstances of the transfer and the conduct and action***

---

[21]   The Trustee has also asserted actual fraudulent transfer under New York law. There is no need to analyze the two separately, because "[t]he analysis of the debtor's intent to hinder, delay, or defraud under § 548 of the Bankruptcy Code and under New York law is identical." *In re Combes*, 382 B.R. 186, 193-94 (Bankr. E.D.N.Y. 2008); *Ehrlich for Hoffmans Trade Grp. LLC v. Com. Factors of Atlanta*, 567 B.R. 684, 692–93 (N.D.N.Y. 2017) (Noting that 11 U.S.C. § 548(a)(1)(A), and New York Debtor and Creditor Law section 276 "are substantially similar such that if a transfer is fraudulent under the DCL, it is also fraudulent under Section 548 of the Bankruptcy Code"); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 631 B.R. 1, 12 (Bankr. S.D.N.Y. 2021) ("New York fraudulent transfer law and § 548 are substantially the same.").

*of the parties to the alleged fraudulent transfer with respect to the possession, management and control of the premises*.") (emphasis added).[22]

48.    Furthermore, "where the actual fraudulent intent claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs court to adopt a 'more liberal view [of any strict pleading requirements] since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'" *Integrity Graphics*, 623 B.R. at 31 (internal references omitted).

49.    The Counterclaims demonstrate probable cause that there is, at the very least, circumstantial evidence to establish actual fraudulent intent.  The key sequence of events described in the Counterclaims is as follows:

a)    Between October 2014 and June 27, 2017, ownership of HK International was held by one of the Debtor's associates, Qu Guo Jiao ("Ms. Qu") through an undisclosed trust agreement for the benefit of the Debtor, who remained beneficial owner of HK International.

b)    On February 23, 2015, HK International became owner of the *Lady May*.

c)    The funds used to purchase the Lady May were transferred to by the Debtor to Bravo Luck Limited, an entity registered in the British Virgin Islands and in which the Debtor, at the time, held a 50% ownership interest, with the remaining 50% held by the Debtor's son, and then by Bravo Luck Limited to the seller (the "2015 Transfer").

d)    On June 27, 2017, ownership of HK International was transferred to the Debtor's daughter *for no consideration* (the "2017 Transfer").

e)    In 2019, HK USA was formed.

a)    In April 2020, the *Lady May* was transferred from HK International to HK USA *for no consideration* (the "2020 Transfer").

---

[22]    "Examples of 'badges of fraud' include, *inter alia*: (1) concealing facts and false pretenses; (2) an unconscionable discrepancy in consideration received in exchange for the value of the property transferred; (3) creating a closely-held corporation for property receipt; (4) closeness in relationship between the parties; (5) retaining the property in question for benefit or use; (6) the financial condition of the transferor and transferee both before and after the transfer(s); (7) repeated patterns or cumulative effect of courses of conduct post-insolvency or financial troubles; and (8) the timeline of events. . . The transfer of property to a spouse is a 'classic' badge of fraud. . . . Asset shifting to different corporate entities wholly owned or 'so closely assimilated' by the debtor is an additional badge of fraud." *In re Jie Xiao*, 608 B.R. at 157.

50.     This sequence of events, established both by the voluminous record set forth in the Counterclaims and by the preclusive findings made by Justice Ostrager in his Final Contempt Decision, shows that, from the moment he first sought to purchase the Lady May, the Debtor engaged in a series of intentional transactions as part of his comprehensive efforts to judgment-proof himself by placing his valuable assets with shell companies or family members.

51.     First, in 2015, the Debtor used Bravo Luck Limited, an entity he controlled and shared with his son, as a pass-through to fund the purchase of the Lady May on behalf of HK International, an entity that one of the Debtor's associates (Ms. Qu) held in trust, through an undisclosed trust agreement, for the Debtor's benefit.  That the funds used to purchase the Lady May came from the Debtor is supported by Justice Ostrager's finding that "there is no evidence that [the Debtor's son] was involved with the corporate transactions leading to" HK International's acquisition of the Lady May,"[23] and that the facts presented supported the "reasonable inference [] that Kwok provided the funds to HK International which were used to purchase the yacht."[24]  Second, in 2017 the Debtor, for no consideration, transferred HK International itself to his daughter.  Third, and finally, in 2020, the Debtor—again for no consideration—caused his alter ego HK International to transfer the Lady May to HK USA.  All three of these transactions were clearly part of the Debtor's comprehensive effort to judgment-proof himself by placing his valuable assets with shell companies or family members.

52.     On these facts, there are two separate fraudulent transfers by the Debtor.  The most obvious is the 2017 Transfer, pursuant to which the Debtor caused HK International—which at the time he beneficially owned pursuant to an undisclosed trust agreement—to be

---

[23]    Answer and Counterclaims, Ex. 1, Final Contempt Decision at 5.

[24]    *Id.* at 4.

transferred to his daughter for no consideration. Given the lack of any consideration, as well as the extensive evidence and findings by Justice Ostrager that the Debtor has repeatedly engaged in efforts to hide his assets from creditors, the 2017 Transfer is avoidable as an actual fraudulent transfer. *See In re Jie Xiao*, 608 B.R. at 157-58 (finding actual fraud where "[t]he Debtor had one paramount goal: to leave himself and LXEng judgment-proof while channeling their assets to his wife, children, and extended family. His willingness to channel, transfer, and distribute those monies reveals his conscious intention and design.").

53.     In the alternative, in the event the Court were to determine (despite the clear evidence to the contrary) that the Debtor did not hold a beneficial interest in HK International at the time of the 2017 Transfer, then the 2015 Transfer is avoidable as an actual fraudulent transfer. As noted above, the funds that allowed HK International to purchase the Lady May in 2015 came from the Debtor, using Bravo Luck as a pass-through. Assuming for the sake of argument that the Debtor did not own HK International at that time, then he effectively gifted the funds necessary to purchase the Lady May to HK International for no consideration. Such a transfer fits squarely into the Debtor's fraudulent "shell game" and is avoidable for that reason.

> i. *Lady May or its Value at the time of the Transfer is Recoverable from HK USA*

54.     Because at least one of these transfers is avoidable, the Trustee may recover from HK USA the Lady May or its value at the time of the transfer, either because HK USA is a subsequent transferee liable under section 550(a) of the Bankruptcy Code, or because the transactions in 2015, 2017, and 2020 can be collapsed into one transaction under the collapsing doctrine.

55.     Under section 550(a) of the Bankruptcy Code, the Trustee may recover fraudulently transferred property from the initial transferee or from any immediate or mediate

subsequent transferee.  The only restriction on the Trustee's ability to recover from a subsequent

transferee is that such transferee must not have acquired the property for value, in good faith, and

without knowledge of the voidability of the transfer.  11 U.S.C. §550(b).  Here, HK USA did not

take the Lady May for value, nor did it do so in good faith and without knowledge of the

voidability of the initial transfer.  Accordingly, the Trustee may recover the Lady May, or its

value at the time of the transfer,[25] from HK USA under section 550(a)(2) of the Bankruptcy

Code.  *See In re Wolf*, 595 B.R. 735, 790 (Bankr. N.D. Ill. 2018) (where there was a fraudulently

transferred business, "[t]o the extent the proceeds, products, or profits of the fraudulently

transferred [] business have been plausibly alleged to have been transferred (whether formally . .

. or otherwise) to other mediate or immediate transferees, those transferees are liable under

section 550(a)(2)").

56.     In the alternative, the Trustee may recover the Lady May directly from HK USA

under the collapsing doctrine.  The collapsing doctrine "is an equitable doctrine which allows

court to dispense with the structure [or] structures of a transaction or series of transactions."  *In*

*re Maxus Energy Corp.*, 641 B.R. 467, 532 (Bankr. D. Del. 2022) (internal quotation marks and

citations omitted).  "Courts have applied the collapsing transactions doctrine in cases involving

fraudulent transfers to "allow the bankruptcy court to 'collapse' various 'legs' of a transaction

and deem the entire chain of transfers avoidable."  *In re Servicom, LLC*, No. 18-31722 (AMN),

---

[25]  It is likely that a luxury yacht like the Lady May has depreciated significantly since it was purchased in 2015.
"When property declines in value after the transfer, a trustee may recover the value of the property at the time
of the transfer rather than the property."  5 Collier on Bankruptcy P 550.02 (16th 2022); *see also In re Affinity*
*Health Care, Mgmt., Inc.*, 499 B.R. 246, 261 (Bankr. D. Conn. 2013) (section 550 "protects the trustee against
attempts to impede recovery by an initial transferee and give the trustee a degree of flexibility when the actual
transferee or its assets have disappeared *or when recovery of the property would not suffice, e.g., when the*
*property has depreciated*") (emphasis added).  Accordingly, to the extent the Lady May has depreciated, the
Trustee is entitled to recover an amount equal to the depreciation from HK USA's other assets, *i.e.*, its interest
in the Escrowed Funds.

-24-

2021 WL 825155, at *15 (Bankr. D. Conn. Feb. 24, 2021) (as modified) (internal citations omitted).[26]

57.    "In deciding whether to collapse the transaction and impose liability on particular defendants, courts have looked frequently to the knowledge of the defendants of the structure of the entire transaction and to whether its components were part of a single scheme." *Id.* (internal quotation marks and citations omitted).  This analysis considers three factors:  (i) whether all of the parties involved had knowledge of the multiple transactions; (ii) whether each transaction would have occurred on its own; and (iii) whether each transaction was dependent or conditioned on other transactions.  *Id.*  Because "the collapsing doctrine is rooted in equity," these factors should not be interpreted "narrowly."  *Maxus Energy*, 641 B.R. at 536.  Ultimately, "[t]o determine whether a series of transactions should be 'collapsed' and viewed as a single integrated transaction, courts focus on the substance rather than on the form of the transactions and consider the overall intent and impact of the transactions."  *In re Jevic Holding Corp.*, No. 08-11006 BLS, 2011 WL 4345204, at *5 (Bankr. D. Del. Sept. 15, 2011).

58.    While the collapsing doctrine treats nominally separate transactions as one, there is no requirement that every detail be planned from the very beginning of the overall scheme.  *See Maxus Energy*, 641 B.R. at 536 ("Simply because every detail of the alleged [collapsing scheme] was not determined by both [parties to the collapsing scheme] from the outset does not automatically result in this factor being unsatisfied.").  Otherwise, parties would have "free reign to hinder and delay creditors so long as they could strategically plan their scheme over the course

---

[26]    The collapsing doctrine "derives from federal bankruptcy law and provisions of the New York Uniform Fraudulent Conveyance Act," and is, therefore, applicable to the Trustee's claims under the New York DCL and the Bankruptcy Code's own fraudulent transfer provisions in section 548 of the Bankruptcy Code. *In re M. Fabrikant & Sons, Inc.*, 541 F. Appx. 55, 57 (2d Cir. 2013).

of multiple steps." *Id.* (internal quotation marks and citations omitted). Relatedly, the "passage of some time between the various transactions sought to be collapsed is not fatal if they are sufficiently related." *Id.* at 532 (internal quotation marks and citations omitted).

59.     Here, as discussed above and at length in the Counterclaims, there is voluminous evidence that the Lady May was initially acquired and then transferred with actual fraudulent intent as part of a wider "shell game" strategy to move the Debtor's assets to Family Shell Companies, thus allowing the Debtor to live in luxury while claiming to be judgment proof. In these circumstances, there is probable cause to apply the collapsing doctrine.

*ii.   Actual Fraudulent Transfer Claims Are Within Statute of Limitations*

60.     Avoidance actions brought pursuant to section 544(b) of the Bankruptcy Code are subject to the applicable non-bankruptcy law limitations period. New York law applicable to the 2017 Transfer provides for a six-year statute of limitations to bring an actual fraud claim. *See* N.Y. Civ. Prac. Law § 213(8) ("time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it"). Accordingly, the Trustee's claim to avoid the 2017 Transfer is within the limitations period provided by New York law.[27]

---

[27]     Courts have held that section 546(a) of the Bankruptcy Code tolls the expiration of a statute of limitations when a debtor files for bankruptcy. *See In re Kellel*, No. 8-18-76679-LAS, 2022 WL 24057, at *3 (Bankr. E.D.N.Y. Jan. 3, 2022) ("As long as the statute of limitations has not expired as of the petition date, a trustee is permitted to bring New York fraudulent conveyance actions looking back six years from the petition date in accordance with section 544(b) at *any* point during the two-year period set out in section 546(a).") (emphasis in original) (*as modified*) (internal references omitted); *see also In re Antex, Inc.*, 397 B.R. 168, 174 (B.A.P. 1st Cir. 2008) (noting that "majority of courts" agree that as long as the applicable state's limitations period has not expired prior to the petition date, the trustee can bring a fraudulent conveyance action under § 544(b) within the time limitations set forth in § 546(a)").

61.    Additionally, even the 2015 Transfer is within New York's statute of limitations pursuant to the 'discovery rule' applicable to intentional fraud, which "permits a plaintiff to commence a cause of action predicated on actual fraud within two years of the date the fraud was or should have been discovered with reasonable diligence." *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 109 (Bankr. S.D.N.Y. 2011) (citing NYCPLR §§ 213(8), 203(g)).  To invoke the discovery rule, a bankruptcy trustee need only identify a single creditor, or even a category or type of creditor, with "potentially viable claims." *Id.*

62.    Here, the Debtor's own statements of financial affairs identify such creditors: the numerous creditors who have filed lawsuits against the Debtor alleging that he defrauded them.[28] Those creditors would have had no reason to suspect, that the vast personal wealth the Debtor routinely boasted of was (at least on paper) a lie, and that the Debtor had fraudulently transferred (as relevant to this Application) the Lady May.  *See generally*, *In re Bernard L. Madoff Investment Securities, LLC*, 557 B.R. 89, 119 (Bankr. S.D.N.Y. 2016) ("The question of whether a creditor exists who could not have discovered Madoff's fraud with reasonable diligence until it was revealed to the public is inherently factual but gives little pause.").[29]  The existence of these creditors, whose claims arose less than two years prior to the Petition Date, allows the Trustee to assert their intentional fraudulent transfer claims pursuant to section 544(b) of the Bankruptcy Code.

---

[28]    *See* Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, (March 9, 2022) Docket No. 77 ("SOFA") at 22-25 (response to question 9 "[w]ithin 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?").

[29]    It is the ***defendant's*** burden to show, at least initially, that the plaintiff should have known of or discovered the fraudulent transfer.  *See Aozora Bank, Ltd. v. Credit Suisse Group*, 144 A.D.3d 437, 438 (N.Y. App. Div. 2016) ("Defendants must make a *prima facie* showing that [plaintiff] was on such inquiry notice of its fraud claims more than two years before the action was commenced.") (internal quotations and citations omitted).

63.     The 2015 Transfer is also within the statute of limitations applicable to the Trustee's rights under section 544(b) of the Bankruptcy Code for another reason.  That section gives the trustee the rights of unsecured creditors to avoid prepetition transfers.  One such creditor into whose shoes the trustee may step is the IRS, and federal law grants the IRS ten years to avoid transfers under state law ***without*** being bound by state statutes of limitation.  *See* 26 U.S.C. §§ 6502(a)(2), 6901.  The Trustee, therefore, may avoid transfers as far back as ten years if the IRS holds an unsecured claim (which it does).  *See In re Smith*, No. 19-40964, 2022 WL 1814415, at *6 (Bankr. D. Kan. June 2, 2022).

64.     Finally, the two year limitations period in section 548(a)(1) is no bar to the Trustee's claim under that section, because, as discussed above, there is probable cause to collapse the various transfers of the Lady May into one transfer from the Debtor to HK USA that occurred in April 2020, less than two years prior to the Petition Date.  *See Maxus Energy*, 641 B.R. at 533 (describing *In re Tronox Inc.*, 503 B.R. 239 (Bankr. S.D.N.Y 2013), as holding "it was appropriate to collapse the fraudulent transactions and to apply the statute of limitations from the last act that finalized the defendants' scheme").

  e. <u>Probable Cause for Trustee's Negligence Claim Against HK USA</u>

65.     If the Court disagrees with the Trustee that the Debtor is the true owner of the Lady May, HK USA is still liable to the estate for removing the Lady May from the United States, thus causing the Debtor to incur $134 million in fines under Justice Ostrager's contempt order.  The Trustee asserts a negligence claim against HK USA as a result of this conduct, and such claim is supported by probable cause.

66.     The elements of a negligence claim under New York law are: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that

breach." *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (citing

*Merino v. New York City Transit Auth.*, 639 N.Y.S.2d 784, 787 (N.Y. App. Div. 1996)).

67.    These elements are satisfied here.  Regardless of whether HK USA is the alter ego

of the Debtor, HK USA owed a duty to the Debtor to exercise ordinary care and skill to refrain

from injuring him.  *Guido v. 1114 6th Ave. Co.*, 2015 WL 1055074, at *15 (N.Y. Sup. Ct. Mar.

10, 2015) ("all persons have a common-law duty to exercise ordinary care and skill to refrain

from injuring others.").  HK USA violated this duty because it was aware of Justice Ostrager's

order, which clearly applied to HK USA as the yacht's registered owner, but it nevertheless

moved the Lady May overseas and kept it there until July 2022.  These facts are not in dispute;

they have been admitted by the Debtor's Daughter, who testified in the State Court that "I was

aware . . . of the [March 2021 Contempt Order] requiring the Lady May to return to New York in

May 2021.  However, . . . I did not want the boat to travel to New York, and, after consulting

with counsel, directed instead that it proceed to Europe . . . that decision was mine alone, not my

father's."[30]  HK USA thus caused the Debtor to incur a contempt fine of $134 million, and is

liable to the estate for damages in that amount.

## III.    If Court Does Not Grant Prejudgment Attachment, Trustee May Never Be Able to Enforce Judgment Against Debtor

68.    The amount of the Counterclaims asserted against HK USA far exceeds the

combined value of the assets the Trustee seeks to attach.  The Lady May is worth no more than

approximately $32 million, and the Escrowed Funds total approximately $37 million.  Meanwhile,

the Contempt Order, which forms the basis for only the Trustee's negligence claim, alone imposes

---

[30]    Answer and Counterclaims, Ex. 41, Mei Guo Affidavit, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 1162, at ¶ 20.

$134 million of liability on the Debtor.[31]  As a result, there is no question that the Trustee, having established probable cause, is entitled to attachment of the Lady May and HK USA's interest in the Escrowed Funds (as well as the Debtor's Daughter's interest in HK USA) to secure an eventual judgment on the Counterclaims.

69.     If the attachment order is not granted, a substantial risk exists that the Trustee will never be able to obtain the relief to which he is entitled.  Indeed, HK USA has made it clear to this Court that as soon as it obtains the release of the Escrowed Funds pursuant to the Lady May Stipulation, it will pay those funds to Himalaya Financial, the British Virgin Islands entity, closely associated with the Debtor's cryptocurrency schemes, that purportedly lent the $37 million to HK USA in highly unusual circumstances (as noted above and discussed in greater detail in the Counterclaims).[32]  A hearing on the establishment of a repair reserve under the Lady May Stipulation is now scheduled for October 7, 2022.  If HK USA is successful in obtaining a court order establishing the reserve and complying with other conditions of the Lady May Stipulation, HK USA may be able to obtain the release of the Escrowed Funds soon thereafter.[33]  There can be little doubt that, as soon as the Escrowed Funds are released, they will be wired overseas.

70.     Further, while the Lady May Stipulation requires that the Lady May remain in Connecticut waters,[34] the Debtor and HK USA have a history of violating court orders by taking

---

[31]   The Trustee reserves all rights with regards to the allowability and plan treatment of this, and any other, claim.

[32]   *See HK International Funds Investments (USA) Limited, LLC'S Motion for Order Establishing Repair Reserve for The Lady May*, Docket No. 728 at ¶ 19.

[33]   Lady May Stipulation, ¶ 7 ("Upon satisfaction of the Delivery Obligation, the Debtor and HK USA and its officers, agents, servants, employees, and attorneys, as well as any and all other persons who are in active concert or participation with HK USA and the Debtor, including, but not limited to, the Captain and Yachtzoo SARL (collectively, the "HK USA Parties"), shall keep and maintain at all times the Lady May physically present in the navigable waters of Connecticut, subject to the provisions of this Order and any further order of this Court upon motion of any party-in-interest, and entered after notice and a hearing.").

[34]   *Id.* ¶ 3 (requiring "declaration made pursuant to 28 U.S.C. § 1746 by the Captain and Yachtzoo SARL consenting that each shall be subject to the jurisdiction of this Court with respect to this Order, acknowledging

and keeping the Lady May overseas.  The Debtor's disrespect and "contempt for . . . the judicial process"[35] is well known, evidenced by, among other things, the Debtor's penchant for violating court orders[36] and misleading courts.[37]  There is thus a material risk that the Debtor may violate yet another court order and again take the *Lady May* overseas.

71.     Accordingly, to protect the creditors of this estate, it is imperative that the Court enter the requested prejudgment relief.

## NO PRIOR REQUEST

72.     The Trustee has not previously sought the relief requested herein from this or any other court.

*[Remainder of page intentionally left blank.]*

---

that they are bound by the provisions of this Order which are applicable to them including specifically that they are restrained from removing the Lady May from the navigable waters of Connecticut").

[35]   Answer and Counterclaims, Ex. 1, Final Contempt Decision at 7.

[36]   *See, e.g.*, Answer and Counterclaims, Ex. 62, May 27, 2021 Tr. at 16:8-9, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 833 ("Mr. Kwok flaunts the Court's orders at will.").

[37]   *See* Answer and Counterclaims, Ex. 49, Tr. at 21:13-16, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 647 ("The Court believes . . . that Mr. Kwok has attempted to mislead the Court. The Court believes that Mr. Kwok is, as the plaintiff contends, playing a shell game with his assets, and has violated if not the letter of court orders, the spirit of court orders."); *Id.* 26:3-8 ("[O]rders of the Court are either flaunted or exceedingly liberally interpreted, and . . . intentional or unintentional misstatements that have misled the Court have been made to the Court.").

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the

Proposed Order granting the relief requested in this Motion and such other relief as is just and

proper.

Dated: September 23, 2022   LUC A. DESPINS,
    New Haven, Connecticut  CHAPTER 11 TRUSTEE


           By: */s/ Patrick R. Linsey*
            Patrick R. Linsey (ct29437)
            NEUBERT, PEPE & MONTEITH, P.C.
            195 Church Street, 13th Floor
            New Haven, Connecticut 06510
            (203) 781-2847
            plinsey@npmlaw.com

            *and*

            Nicholas A. Bassett (*pro hac vice* pending)
            PAUL HASTINGS LLP
            2050 M Street NW
            Washington, D.C., 20036
            (202) 551-1902
            nicholasbassett@paulhastings.com

            *and*

            Avram E. Luft (*pro hac vice* pending)
            Douglass Barron (*pro hac vice* pending)
            PAUL HASTINGS LLP
            200 Park Avenue
            New York, New York 10166
            (212) 318-6079
            aviluft@paulhastings.com

            *Counsel for the Chapter 11 Trustee*