**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------x
:
In re:                                                                           :       Chapter 11
                                                                                     :
HO WAN KWOK,                                                        :       Case No. 22-50073 (JAM)
                                                                                     :
         Debtor.[1]                                                        :
                                                                                     :
---------------------------------------------------------x

**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER
HOLDING DEBTOR IN CIVIL CONTEMPT FOR FAILURE TO COMPLY
WITH CORPORATE GOVERNANCE RIGHTS ORDER**

Luc Despins, as the appointed Chapter 11 Trustee to the Debtor's estate (the "Trustee"), by and through his undersigned counsel, submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), holding Ho Wan Kwok (the "Debtor") in civil contempt for failure to comply with the Court's *Order, Pursuant to Bankruptcy Code Sections 363, 521, 541, 1108, and 105, (A) Confirming that Chapter 11 Trustee Holds All of Debtor's Economic and Corporate Governance Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (C) Granting Related Relief* [Docket No. 761] (the "Corporate Governance Rights Order") and imposing appropriate sanctions until the Debtor complies with his obligations under

---

[1]   Although the Debtor's legal name is Ho Wan Kwok, he is also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases.  The last four digits of the Debtor's taxpayer identification number are 9595.

1

the Corporate Governance Rights Order. In support of this Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.    In order to assist the Trustee in fulfilling his duties with respect to the Debtor's assets and affairs, the Trustee previously requested, and the Court granted, an order that, among other things, (a) confirms the Trustee holds all of the Debtor's economic and governance rights with respect to all corporate entities owned and/or controlled by the Debtor (the "Debtor-Controlled Entities") and (b) directs the Debtor to "cooperate with the Trustee to enable the Trustee to perform his duties" and "surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate."[2] Despite the Court's clear directive in the Corporate Governance Rights Order, the Debtor refuses to transfer the shares in Ace Decade Holdings Limited ("Ace Decade") to the Trustee or provide the Trustee with any corporate documents regarding Ace Decade or its wholly owned subsidiary Dawn State Limited ("Dawn State"), even though the Debtor has attested on multiple occasions—at the creditors' meeting in this chapter 11 case as well as in various in court filings—that he owns Ace Decade and that Ace Decade wholly owns Dawn State.[3]

2.    Unfortunately, the Debtor's refusal to comply with the Corporate Governance Rights Order is not an isolated incident but is part of a larger pattern of disregard for the judicial

---

[2] Corporate Governance Rights Order ¶¶ 2, 3.

[3] At the September 27, 2022 status conference before this Court, Debtor' counsel argued, for the first time (and almost a month after the Trustee's August 31, 2022 letter requesting the Debtor to transfer the shares in Ace Decade to the Trustee as required by the Corporate Governance Rights Order), that the Debtor's statements at the creditors' meeting were purportedly not translated correctly. As discussed below, this argument is not credible and is belied by the Debtor's other statements, including verified statements in U.K. court filings, that he owns Ace Decade.

2

process. As New York Supreme Court Justice Ostrager observed, the Debtor "has utter contempt for [the New York state court] and the judicial process."[4] Indeed, this latest episode echoes the Debtor's tactics during the PAX[5] litigation, when he sought to disavow, during his deposition, his signature on a personal guarantee, even though he had previously sponsored the authenticity of that very document before the same court. In response, Justice Ostrager judicially estopped the Debtor from challenging the authenticity of such documents.[6]

3. The Court should not tolerate the Debtor's latest maneuver to keep his assets beyond the reach of his creditors. Accordingly, the Trustee requests that the Debtor be held in civil contempt and the Court impose appropriate sanctions until such time as the Debtor demonstrates that he is in compliance with his obligations under the Corporate Governance Rights Order regarding the transfer of Ace Decade to the Trustee.[7]

## BACKGROUND

### I. Debtor's Chapter 11 Case

4. On February 15, 2022 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in the Debtor's chapter 11 case (the "Chapter 11 Case"). No examiner has been appointed in the Chapter 11 Case.

---

[4] Decision and Order on Motion, dated February 9, 2022 (the "Final Contempt Decision"), *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Doc. No. 1181, at 4. A copy of the Final Contempt Decision is attached hereto as **Exhibit B**.

[5] PAX refers to Pacific Alliance Asia Opportunity Fund L.P.

[6] Decision and Order on Motion, dated July 7, 2020 (the "Judicial Estoppel Decision"), *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Doc. No. 404. A copy of the Judicial Estoppel Decision is attached hereto as **Exhibit C**.

[7] The Trustee reserves all its rights with respect to the Debtor's failure to comply with any other aspect of the Corporate Governance Rights Order.

3

6. On June 15, 2022, the Court entered a memorandum of decision and order [Docket No. 465] (the "Trustee Decision") directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case. Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee.

7. The Trustee Decision concluded, among other things, that "[w]hen balanced against dismissal or conversion, the complexity of the Debtor's financial affairs and lack of independent managerial oversight in this case warrants the appointment of a Chapter 11 trustee who can investigate, identify, and locate the Debtor's assets for the benefit of creditors and the estate."[8] The Trustee Decision further provides that "[t]he appointment of a Chapter 11 trustee will also allow for the effective investigation of the Debtor's assets, liabilities, and financial affairs" and "[t]he Chapter 11 trustee shall perform all of the duties set forth in 11 U.S.C. § 1106."[9]

8. On July 7, 2022, the United States Trustee filed the Notice of Appointment of Chapter 11 Trustee [Docket No. 514] appointing Luc Despins as the Trustee in the Chapter 11 Case. On July 8, 2022, the Court entered an order [Docket No. 523] granting the appointment of Luc A. Despins as the Trustee.

**II.   Corporate Governance Rights Motion and Order**

9. On July 23, 2022, the Trustee filed the *Motion of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 363, 541, 1108, and 105, (A) Confirming That Chapter 11 Trustee Holds All of Debtor's Economic Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of the Estate, and*

---

[8]   Trustee Decision at 15-16.
[9]   *Id.* at 14, 18.

4

*Granting Related Relief* [Docket No. 598] (the "Corporate Governance Rights Motion"). Among other things, the Corporate Governance Rights Motion sought entry of an order confirming that the Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Debtor's estate (the "Estate"), with respect to all Debtor-Controlled Entities. As detailed in the Corporate Governance Rights Motion, the Trustee sought such relief because

> the Debtor has shown a willingness to defy court orders, suggesting that the Debtor and related persons (whether acting individually or through the Debtor-Controlled Entities) may try to take advantage of any ambiguity or misunderstanding concerning the Trustee's rights in order to frustrate the Trustee's efforts to identify and recover property of the Estate.[10]

10. On August 10, 2022, the Court granted the Corporate Governance Rights Motion and entered the Corporate Governance Rights Order. The Corporate Governance Rights Order confirms that the Trustee holds all of the Debtor's economic and corporate governance rights with respect to all Debtor-Controlled Entities and, moreover, directs the Debtor to "cooperate with the Trustee to enable the Trustee to perform his duties" and "surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate."[11] The foregoing provisions are in full force and effect.[12]

11. While the Corporate Governance Rights Order also contains detailed provision regarding the transfer of the Debtor's shares in Genever Holdings Corporation ("Genever

---

[10] Corporate Governance Rights Motion ¶ 1.

[11] Corporate Governance Rights Order ¶¶ 2, 3.

[12] While the Debtor has sought a stay pending appeal of certain portions of the Corporate Governance Rights Order (namely, as it relates to the letter to be provided to UK counsel), the Debtor has **not** sought a stay pending appeal as it relates to the Bankruptcy Court's other rulings in the Corporate Governance Rights Order, including that (a) the Trustee holds all of the Debtor's economic and governance rights with respect to Debtor-Controlled Entities and (b) the Debtor is required to cooperate with the Trustee and surrender to the Trustee all estate property and any recorded information related thereto. *See* Debtor's Motion for Stay Pending Appeal of the Corporate Governance Rights Order [Docket No. 761].

(BVI)"), including a form of share transfer instrument and a form of director's resolution, the Debtor's obligations under the Corporate Governance Rights Order are **not** limited to Genever (BVI) but extend to all Debtor-Controlled Entities.[13] Indeed, Genever (BVI) and the form of transfer documents attached to the Corporate Governance Rights Order merely serve as the blueprint for transferring the Debtor's shares in other Debtor-Controlled Entities.

### III. Debtor's Ownership of Ace Decade and Dawn State

12. The Debtor has repeatedly admitted, in court filings and under oath, that he owns Ace Decade and, indirectly, Dawn State Limited, a wholly-owned subsidiary of Ace Decade.

13. For example, in 2015, the Debtor entered into a securities transaction with UBS regarding an investment by the Debtor in a Chinese securities firm. Following that transaction, the Debtor commenced litigation in a U.K. court against UBS asserting claims for breach of contract based on alleged misrepresentations made by UBS in connection with the transaction and seeking damages of at least $495,300,000.[14] In that litigation, the Debtor and his co-plaintiffs—*i.e.*, Ace Decade and Dawn State—attested that the Debtor owns Ace Decade. For example, the "Particulars of Claims"[15] (the "U.K. Complaint"), filed in September 2020, states that "Ace Decade was *acquired on 10 November 2014 by Mr. Kwok* for the purpose of acting as

---

[13] *See, e.g.*, Corporate Governance Rights Order ¶ 2 ("the Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all Debtor-Controlled Entities, including, without limitation, Genever (BVI)."); ¶ 3 (directing Debtor to "surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate (including, without limitation, his shares in Genever (BVI) and all related corporate governance documents)").

[14] Particular of Claims, *Kwok Ho Wan & Ors. v. UBS*, Cl-2020-000345, High Court of Justice of England and Wales Queen's Bench Division Commercial Court, dated September 23, 2020. A copy of the Particular of Claims is attached hereto as **Exhibit D**.

[15] The Particulars of Claims is the U.K. equivalent of a complaint.

[an] investment vehicle."[16] The U.K. Complaint also asserted that "[s]ince 18 September 2015, *Dawn State has been owned and controlled by Ace Decade*."[17]

14. In addition, throughout the Complaint, plaintiffs allege that the Debtor caused and/or permitted Ace Decade and Dawn State to take various actions, including with respect to a co-investment agreement, financing letter, and lending documents.[18] The U.K. Complaint was signed and attested to not only by the Debtor but also a representative of Ace Decade and Dawn State.[19]

15. Moreover, at the April 6, 2022 meeting of creditors under section 341 of the Bankruptcy Code (the "Section 341 Meeting"), the Debtor again confirmed, under oath, that he is the sole owner of Ace Decade. In particular, during the Section 341 Meeting, counsel to the United States Trustee questioned the Debtor as follows:

> Q   Are you [Mr. Kwok] the only legal owner of Ace Decades?
> A   I am a legal representing owner.
> Q   Are there any other owners of Ace Decade?
> A   No.
> Q   When did you become an owner of Ace Decade Holdings Limited?
> A   At the end of 2014.[20]

16. This pointed exchange was not the only time during the Section 341 Meeting that the Debtor acknowledged, explicitly or implicitly, that he owns Ace Decade. Indeed, there are numerous other examples:

---

[16] U.K. Complaint ¶ 24 (emphasis added). *See also id.* ¶ 2 ("Ace Decade was incorporated on 18 June 2014 and *acquired by Mr Kwok* on or around 10 November 2014.") (emphasis added).

[17] *Id.* ¶ 4 (emphasis added).

[18] *See, e.g., id.* ¶ 86.

[19] *See id.* at 37-38.

[20] Tr. of Section 341 Meeting at 61:3-10, dated April 6, 2022 [Docket No. 848]. The transcript of the Section 341 Meeting is attached hereto as **Exhibit E**.

7

    Q    This is a long question. In your litigation in London against UBS, you are an individual plaintiff. What is the basis for your claim as an individual plaintiff?

    A    Because I'm the 100 percent representative for Ace Decade.[21]

. . .

    Q    Mr. Kwok, do you own an interest in any company aside from Ace Decade?

    A    No, but the -- I own the Bravo Luck, the apartment, only for a few months, some of the interest. And because the apartment is a co-op, so they used my name to buy the apartment after I -- after we bought apartment, and then we returned the stock interest back.[22]

. . .

    Q    Other than Ace Decade, do you own an interest in any other company right now?

    A    No. I only owned the Orange and Shiny Time before, but not right now.[23]

### IV. Debtor's Violation of Corporate Governance Rights Order

17. On August 31, 2022, the Trustee sent a letter to Debtor's counsel (the "August 31, 2022 Letter") requesting that the Debtor cause his shares in Ace Decade to be transferred to the Trustee no later than September 6, 2022.[24] The August 31 Letter also requested that the share transfer instrument and the related director's resolution be in the same form as the corresponding documents related to the transfer of shares of Genever (BVI) (which documents had been attached as Exhibit A to the Corporate Governance Rights Order).

---

[21] *Id.* at 61:11-16.

[22] *Id.* at 63:25-64:7.

[23] *Id.* at 65:8-11.

[24] A copy of the August 31, 2022 Letter is attached hereto as **Exhibit F**.

18. To date the Debtor has not transferred the shares in Ace Decade to the Trustee, nor has the Debtor provided any corporate documents or any evidence that the Debtor is not the owner of Ace Decade.

19. On September 12, 2022, the Trustee filed a notice (a) advising the Court and parties in interest of the Debtor's admission, at the Section 341 Meeting, that he owns Ace Decade and (b) attaching the relevant except of the transcript of that meeting.

20. The Trustee also raised the August 31, 2022 Letter and the Debtor's non-compliance at the status conference on September 6, 2022,[25] the hearing on September 13, 2022,[26] and the status conference on September 27, 2022.  Counsel to the Debtor was present on each occasion; however, it was not until the September 27, 2022 status conference that counsel for the Debtor asserted, for the first time, that the Debtor purportedly does not own Ace Decade and that his admission at the Section 341 Meeting to the contrary was purportedly the result of a series of mistranslations.  As detailed below, the Trustee submits that the Debtor's latest assertion strains credulity.

## JURISDICTION, VENUE, STATUTORY BASES

21. The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

22. Venue is proper in accordance with 28 U.S.C. §§ 1408 and 1409.

23. The statutory and legal bases for the relief requested in the Motion are section 105(a) of Bankruptcy Code and Bankruptcy Rules 9014 and 9020.

---

[25] *See* Sept. 6, 2022 Tr. at 9:12-10:16. The transcript of the September 6, 2022 status conference is attached hereto as **Exhibit G**.  In response to a request for assurance that he would respond to the August 31 Letter, Debtor's counsel stated: "I'm going to work on it.  I'm going to move with all due speed, but I don't know how long it's going to take me." *Id.* at 24:21-23.

[26] At the September 13, 2022 hearing, Debtor's counsel stated that he could not speak to these issues because another attorney was handling this matter and that attorney was not present at the hearing.

**RELIEF REQUESTED**

24.     By this Motion, the Trustee requests entry of the Proposed Order (a) holding the Debtor in civil contempt for failure to comply with the Corporate Governance Rights Order as it relates to the transfer of Ace Decade and (b) issuing appropriate sanctions until such time as the Debtor complies with his obligation to transfer Ace Decade to the Trustee and provide the Trustee with all corporate documents with respect to Ace Decade and Dawn State.

**BASIS FOR RELIEF**

**I.     Debtor Is in Violation of Corporate Governance Rights Order**

25.     This Court has the express authority to compel compliance with its orders. *See U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McLean Indus.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order."); *Milner v. Duncklee*, 460 F. Supp. 2d 360, 375 (D. Conn. 2006) ("[A] court has the power, under appropriate circumstances, to enforce its own orders . . . .").

26.     The Corporate Governance Rights Order makes clear that the Trustee holds all the economic and governance rights with respect to all Debtor-Controlled Entities. The Corporate Governance Rights Order also explicitly directs the Debtor to cooperate with the Trustee and to surrender to the Trustee all property of the estate and any recorded information relating to property of the estate.

27.     The Debtor has stated on multiple occasions, including in the U.K. Complaint and at the Section 341 Meeting, that he is the sole owner of Ace Decade. As noted, in the U.K. Complaint (filed in September 2020), the Debtor stated that he has owned Ace Decade since 2014, and, moreover, a representative of Ace Decade and Dawn State Limited also attested to the

accuracy of the statements made in the U.K. Complaint.[27] Moreover, in April 2022, at the Section 341 Meeting, the Debtor confirmed, upon questioning by counsel to the United States Trustee, that he is the sole owner of Ace Decade since "the end of 2014."[28] The Debtor cannot now be heard, at the eleventh hour, to make self-serving statements—without any evidence—contradicting years of prior representations made in court filings and/or under oath.

28. The Debtor's continued lack of response to the Trustee's August 31, 2022 Letter, his failure to produce any corporate documents related to Ace Decade, and his failure to transfer the shares of Ace Decade to the Trustee all constitute a clear violation of the Corporate Governance Rights Order.

## II.    Finding of Contempt and Issuing of Sanctions Are Appropriate

29. A bankruptcy court has the ability under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Pursuant to section 105(a), the Court has the authority to hold a party in contempt, which "inherently include[s] the ability to sanction a party." *In re Dickerson*, No. 08-33071, 2009 WL 4666457, at *9 (Bankr. N.D.N.Y. Dec. 8 2009) (internal quotations omitted) (quoting *Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43-44 (1st Cir. 2008)); *see also In re Chauteaugay Corp.*, 920 F.2d 183, 187 (2d. Cir. 1990); *In re Ditech Holding Corp.*, No. 19-10412 (JLG); 2021 WL 3716398, at *7 (Bankr. S.D.N.Y. Aug. 20, 2021); *In re Bambi*, 492 B.R. 183, 191 (Bankr. S.D.N.Y. 2013). In addition,

---

[27] U.K. Complaint at 38 (signature by Yanping (Yvette) Wang on behalf of Ace Decade and Dawn State affirming U.K. Complaint).

[28] Tr. of Section 341 Meeting at 61:3-10.

Bankruptcy Rule 9020 expressly contemplates that a bankruptcy court may issue an order of contempt under the appropriate circumstances.[29]

30. A party "may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. It need not be established that the violation was willful." *Paramedics Electromedicina Comercial, Ltda v. GE Medical Sys. Info. Technologies, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks and citation omitted). Sanctions for civil contempt "may be imposed both to coerce future compliance with a court order issued for another party's benefit and to 'compensate for any harm that previously resulted' from the noncompliance." *In re 1990's Caterers Ltd. d/b/a Vina de Villa Caterers*, 531 B.R. 309, 319 (Bankr. E.D.N.Y. 2015) (quoting *In re Chief Executive Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007)). The sanctions a bankruptcy court may impose in response to civil contempt are "many and varied," encompassing "an indeterminate period of confinement," fines, reimbursement, or any combination of these. *In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 423 (Bankr. D. Del. 2014) (citation omitted). In this regard, the court may also "award[] attorneys' fees and costs to a contempt victim." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d. 203, 208 (S.D.N.Y. 2020).

31. Here, the terms of the Corporate Governance Rights Order are clear and unambiguous. In fact, the principal purpose of seeking entry of the Corporate Governance Rights Order was to clarify—in light of the Debtor's prior willingness to defy court orders—

---

[29] *See* Bankruptcy Rule 9020 ("Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest.")

(a) the Trustee's economic and corporate governance rights with respect to Debtor-Controlled Entities and (b) the Debtor's obligations to corporate with the Trustee and surrender property of the Estate to the Trustee.

32. Nor can there be any serious dispute that the Debtor previously admitted, in court filings and/or under oath, that he owns Ace Decade. The efforts by Debtor's counsel at the September 27, 2022 status conference to blame the Debtor's statements at the Section 341 Meeting on inaccurate translations are not credible.

33. For one, the Debtor's statements at the Section 341 Meeting were made in response to three short questions from counsel to the U.S. Trustee. The Debtor's equally short responses clearly and unambiguously confirm that the Debtor owns Ace Decade. It strains credulity that the Debtor somehow misunderstood these simple questions or that these short questions and responses were not properly translated—especially since **two** translators (one selected by the U.S. Trustee and one selected by the Debtor) participated in the Section 341 Meeting. Moreover, it is clear from videos in which the Debtor appears that he understands basic English language concepts, such as whether he owns something.[30]

34. It is also compelling that at no point, whether at the Section 341 Meeting or in the six months since then, has the Debtor attempted to "correct" his statements that he owns Ace Decade. Certainly, there were multiple opportunities to do so, including at the Section 341 Meeting itself, when counsel to the U.S. Trustee continued her questioning related to Ace Decade and other entities owned by the Debtor. In any event, the Debtor's statements at the Section 341 Meeting are not the only times he admitted that he owns Ace Decade, and Debtor's

---

[30] *See* VICE News, Exiled Chinese Billionaire Uses YouTube to Wage a War on Corruption, YouTube (original air date on HBO, Nov. 15, 2017), https://www.youtube.com/watch?v=LkOsgh5kcgQ (last visited on Oct. 3, 2022), at 1:20.

counsel has not even attempted to explain why other statements to the same effect, including those in the U.K. Complaint (which were also attested to by a representative of Ace Decade and Dawn State Limited), are now purportedly inaccurate.

35. Finally, the Debtor's recent disavowal of his prior admissions that he owns Ace Decade is not an isolated incident. This maneuver is just another tool in the Debtor's tool kit to keep creditors at bay. For example, during the PAX litigation, the Debtor similarly attempted to disavow his signature on certain transaction documents, including a personal guarantee, after having previously sponsored the authenticity of these documents in the PAX litigation, including in an affidavit by his representative attaching true and correct copies of these documents.[31] Indeed, the Debtor had initially sought (unsuccessfully) to dismiss the PAX litigation on *forum non conveniens* grounds because he claimed that he had executed the personal guarantee in Asia.[32] Against this record, Justice Ostrager judicially estopped the Debtor from challenging the authenticity of these documents, including the personal guarantee.[33]

36. For all these reasons, the Court should enter the Proposed Order holding the Debtor in contempt and imposing appropriate sanctions until the Debtor complies with the Corporate Governance Rights Order, including by (a) executing and/or causing any nominee shareholder of Ace Decade to execute a share transfer instrument to transfer all of the Debtor's shares in Ace Decade (including all shares beneficially owned by the Debtor through any

---

[31] *See* Affirmation of Fiona Yu in Support of Defendant's Motion to Dismiss, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Doc. No. 11, ¶ 3 ("Attached to this Affirmation are true and correct copies of: . . . Personal Guarantee between Mr. Kwok and PAX LP, dated March 16, 2011.").

[32] Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, dated June 29, 2017, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), Doc. No. 8, at 6 ("In 2009, Shiny Times assumed Spirit Charter's repayment obligations and Kwok executed a personal guarantee of this debt, again in China. In 2011, PAX LP and Shiny Times entered into another written agreement and Kwok executed another personal guarantee, in China.").

[33] Judicial Estoppel Decision at 2.

nominee shareholder) to the Trustee, (b) executing and/or causing the director(s) of Ace Decade to execute a director's resolution approving such transfer of the shares in Ace Decade to the Trustee, and (c) providing the Trustee with all corporate documents with respect to Ace Decade and Dawn State.[34] In addition, and regardless of the Debtor's compliance with the foregoing, the Debtor should be judicially estopped from asserting in this chapter 11 case that he does not own Ace Decade.

## **NO PRIOR REQUEST**

37. The Trustee has not previously sought the relief requested herein from this or any other court.

## **CERTIFICATION OF COUNSEL**

38. As set forth above, counsel for the Trustee has attempted to resolve this dispute at numerous prior occasions, but without success.

[*Remainder of Page Intentionally Left Blank*]

---

[34] For the avoidance of doubt, the share transfer instrument and the related director's resolution shall be in the same form as the corresponding documents related to the shares of Genever (BVI), as attached as Exhibit A to the Corporate Governance Rights Order.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the Proposed Order granting the relief requested in this Motion to Compel and such other relief as is just and proper.

Dated:　　October 4, 2022　　　　　　　　　　LUC A. DESPINS,
　　　　　　New Haven, Connecticut　　　　　　CHAPTER 11 TRUSTEE

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Douglas S. Skalka*
　　　　　　　　　　　　　　　　　　　　　　　　Douglas S. Skalka (ct00616)
　　　　　　　　　　　　　　　　　　　　　　　　Patrick R. Linsey (ct29437)
　　　　　　　　　　　　　　　　　　　　　　　　NEUBERT, PEPE & MONTEITH, P.C.
　　　　　　　　　　　　　　　　　　　　　　　　195 Church Street, 13th Floor
　　　　　　　　　　　　　　　　　　　　　　　　New Haven, Connecticut 06510
　　　　　　　　　　　　　　　　　　　　　　　　(203) 781-2847
　　　　　　　　　　　　　　　　　　　　　　　　dskalka@npmlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　plinsey@npmlaw.com

　　　　　　　　　　　　　　　　　　　　　　　　　*and*

　　　　　　　　　　　　　　　　　　　　　　Nicholas A. Bassett (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　PAUL HASTINGS LLP
　　　　　　　　　　　　　　　　　　　　　　2050 M Street NW
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C., 20036
　　　　　　　　　　　　　　　　　　　　　　(202) 551-1902
　　　　　　　　　　　　　　　　　　　　　　nicholasbassett@paulhastings.com

　　　　　　　　　　　　　　　　　　　　　　　　　*and*

　　　　　　　　　　　　　　　　　　　　　　Avram E. Luft (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Douglass Barron (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　PAUL HASTINGS LLP
　　　　　　　　　　　　　　　　　　　　　　200 Park Avenue
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10166
　　　　　　　　　　　　　　　　　　　　　　(212) 318-6079
　　　　　　　　　　　　　　　　　　　　　　aviluft@paulhastings.com
　　　　　　　　　　　　　　　　　　　　　　douglassbarron@paulhastings.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for the Chapter 11 Trustee*