**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,<br><br>Debtor. | Chapter 11<br><br>Case No: 22-50073 (JAM) |

**THE DEBTOR'S OBJECTION TO MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING COMPLIANCE WITH RULE 2004 SUBPOENAS AND ENFORCING CONSENT ORDER REGARDING CONTROL OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION RELATED TO RULE 2004 SUBPOENAED DOCUMENTS AND INFORMATION**

Ho Wan Kwok, the debtor (the "Debtor") in the above-captioned bankruptcy case (the "Bankruptcy Case"), hereby objects to the Chapter 11 Trustee's (the "Trustee") Motion for Entry of Order Authorizing Compliance With Rule 2004 Subpoenas and Enforcing Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents And Information (the "Motion") (Doc. No. 898). In support of his objection, the Debtor respectfully represents as follows:

**Background**

1. The Motion for Order seeks the entry of an order "authorizing" the Debtor's former law firm, Brown Rudnick LLP ("BR"), and former financial advisory firm, Verdolino & Lowey ("V&L"), to produce all Debtor related documents in their possession without first satisfying their obligations to make a determination as to whether the debtor is entitled to withhold them on privilege grounds under the terms of the Court's Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents and Information (the "Privilege Order"). (Doc. No. 856).

2. The Motion, consistent with the Trustee's *modus operandi*, accuses the Debtor of intentionally seeking to delay this proceeding by delaying the production of documents by BR. The Trustee's contentions are misleading at best. In fact, the Debtor has consistently responded to the Trustee's motions on an expedited basis in accordance with the Court's orders, and the Debtor had attempted to proactively address the subject of the Trustee's emergency *de jure* raised by the current Motion before the Trustee even filed it.

3. The Motion is the product of a collaborative effort between the Trustee and the Debtor's former bankruptcy law firm, BR, calculated to serve (i) the Trustee's interest in accessing the Debtor's privileged information to which he is not entitled; and (ii) BR's interest in avoiding its obligation to perform the work and analysis required under the Rules of Professional Conduct to intelligently assert all colorable bases for withholding from production its former client's attorney-client privileged communications and work product. The Trustee's and BR's collaboration is evidenced most clearly by the fact that BR filed a five (5) page "Consent to Further Relief Sought by Trustee" (Doc. No. 901) at 10:18 p.m. on Friday, September 30, 2022—a mere twenty-four (24) minutes after the Trustee filed the Motion at 9:54 p.m. on Friday.

4. ABA Formal Opinion 473 ("FO 473"), dated February 17, 2016, governs a law firm's obligations when served with process that purports to compel production of a client or former client's privileged information. Rule of Professional Conduct 1.6 defines the types of information that an attorney may, and may not, disclose related to the representation of a client. Rule 1.6(b)(6) makes clear that a lawyer cannot argue that Rule 1.6 bars or excuses compliance with a court order. FO 473 at p. 3.

> But a lawyer facing a court order requiring the disclosure of client confidential information still is faced with complex, critical and fact intensive questions on how to respond—e.g., what challenges should be considered, what specific information should be disclosed, and what protective measures should be sought.

> In making these judgments the lawyer must balance obligations inherent in the lawyer's dual role as advocate for the client and an officer of the court. In doing so, the lawyer should disclose confidential information only to the extent 'the lawyer reasonably believes necessary' to comply with the order. ***Provision (b)(6) enables—indeed calls upon—the lawyer to make these delicate judgments.***

Id. (emphasis added.). A copy of FO 473 Is attached hereto as <u>Exhibit A</u>.

5.  FO 473 further states:

> Once a lawyer determines disclosure is appropriate—in response to an initial demand or to an order and whether or not the client is available—the lawyer may produce documents and information '***only to the extent the lawyer reasonably believes . . . is necessary . . . .***' The lawyer should seek appropriate protective orders and similar arrangements 'to the fullest extent practicable.' 'Disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it.'

Id. at p. 8 (emphasis added). An attorney's obligations to a client under FO 473 apply equally to clients and former clients. See id at p. 4 n.12; *see also* ABA Model Rule of Professional Conduct 1.9(c)(1) and (2).

6.  In the present case, the Trustee states that it served BR and V&L with subpoenas on August 17, 2022 (the "Subpoenas"). The scope of the Subpoenas is incredibly broad, seeking, without limitation, "All documents related to any obligation, claim, liability or debt associated with ***any legal dispute involving the Debtor***, including but not limited to those relating to any litigation before any local, state, federal or international body, whether an administrative body, court, panel or alternate dispute resolution entity." The scope of the Subpoenas is not, and could not have been, tailored or limited to the type of information to which the Trustee is entitled under the Privilege Order because the Privilege Order did not exist when the Trustee served the Subpoenas.

7.  The Debtor has consistently made clear that he has not and will not waive any attorney-client privilege that he retained notwithstanding the Trustee's appointment in July of

2022. However, the Debtor has made equally clear that, under no circumstances, will he obstruct the Trustee's access to information to which the Trustee is entitled.

8. Due to the existence of conflicting authorities regarding the scope of the privilege that an individual debtor retains notwithstanding the appointment of a bankruptcy trustee to administer his or her bankruptcy estate, on the one hand, and the scope of privileges that transfer to the trustee, on the other hand—absent a court order proscribing the particular standard to be applied in this case—it would have been impossible for any professional to determine which privileges the Debtor retained after the Trustee was appointed in the Debtor's bankruptcy case. *Compare Gottlieb re Fayerman (In re Ginzburg)*, 517 B.R. 175 (Bankr. C.D. Cal. 2014) (individual debtor retains control of attorney-client privilege) *with In re Wilkerson*, 393 B.R. 734, 745 (Bankr. D. Colo. 2008) (adopting a balancing test approach and holding an individual debtor retained privilege when debtor was in an adversarial posture with the trustee)*; Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1023-24 (Bankr. S.D. Ga. 1998) (adopting a balancing approach and holding trustee controlled privilege with respect to debtor's pre-petition cause of action against a third-party).

9. As a result, absent the Privilege Order, the attorneys who received subpoenas from the trustee, including BR, likely would have been required pursuant to FO 473 to withhold from the Trustee and log every one of their privileged documents concerning the Debtor. That is because some authority holds that an individual debtor's attorney client privilege never transfers to a debtor's bankruptcy trustee, and attorneys are required to assert all non-frivolous arguments to protect their client's privileged information. *See e.g. In re Ginzburg*, 517 B.R. 175; *see also* FO 473, at p. 6 n.22 (collecting authorities).

10. Contrary to the Trustee's unsubstantiated and baseless running narrative that the Debtor is somehow seeking to delay the administration of his bankruptcy estate, the Debtor stipulated to the Privilege Order because he believed that the sooner all parties in interest had a clearer understanding of the scope of privileged documents that the Trustee is, and is not, entitled to receive, the more efficiently the parties (including the Debtor's professionals and former professionals) would be able to provide the Trustee with the information to which he is entitled—which would lead to a more expeditious and efficient administration of the Debtor's estate.

11. The Debtor's counsel and the Trustee's counsel—with substantial assistance and guidance from the Court—worked tirelessly to agree upon the terms of a stipulated Privilege Order that proscribes a standard that will help the Debtor and other recipients of subpoenas from the Trustee to determine whether the information under their control should be produced to the Trustee, on the one hand, or logged and withheld from the Trustee on the basis of privilege, on the other hand. See Doc. No. 856 (Privilege Order).

12. The Privilege Order does not and could not, in any way, absolve BR and other professionals of their professional and ethical obligations to the Debtor under FO 473—nor was it ever intended by the Debtor to do so. Rather, the Privilege Order was intended to provide guidance on how BR and other professionals should apply their professional and ethical obligations to the particular facts of this case, with the objective of avoiding a scenario where professionals over withheld documents due to lack of clarity regarding the scope of privilege that the Debtor retained, and did not retain, upon the Trustee's appointment.

13. The Debtor and his counsel certainly did not agree to the Privilege Order to *excuse* the Debtor's professionals and former professionals from their obligation to apply the

Privilege Order to the information in their files and assert all non-frivolous claims of privilege on the Debtor's behalf. To the contrary, the Debtor and his counsel stipulated to the Privilege Order to *enable* the Debtor's professionals and former professionals to assert privilege claims on his behalf on a more informed basis.

14. The Privilege Order entered on September 14, 2022. See Doc. No. 856. Responses to the Subpoenas that the Trustee served on BR and V&L were due, pursuant to their terms, only two days later, on September 16, 2022. It would have been impossible for BR, the Debtor or anyone else to apply the Privilege Order to the documents in BR's files on or before September 16. For that reason, in this context, it would be absurd for anyone to contend or conclude that BR, V&L or any other recipient of a subpoena from the Trustee could have made (or should have been required to make) privilege determinations pursuant to the Privilege Order by September 16, 2022—or any time remotely close to that date given the volume of documents involved and the number of issues being raised by the Trustee in the Debtor's bankruptcy case at any given time.

15. In addition, neither the Debtor nor the Debtor's counsel has ever demanded that BR, V&L or any other professional withhold any particular documents in their possession from the Trustee based on the assertion of privilege. Likewise, neither the Debtor nor the Debtor's counsel ever purported to direct BR or V&L that they were required to undertake a document-by-document review of their entire files. The Debtor's counsel at Zeisler & Zeisler, P.C. ("Z&Z") has expressly, consistently, and repeatedly asked BR to the comply with the Trustee's subpoena to the best of its ability based on the Debtor's reservation of all privileges that he retained, BR's professional responsibilities to the Debtor and the Court, and BR's knowledge of the content of its own files—knowledge that, until very recently, was exclusively within BR's

6

possession and control.[1]

16.     The Debtor and his counsel never directed BR, one way or another, whether a document-by-document review of BR's files was necessary. The Debtor expressly deferred to BR to determine the manner in which it was required to comply with the Subpoena while fulfilling its obligations under FO 473.

17.     Shortly after the Privilege Order entered, it became clear that BR was not willing to undertake, or even attempt to undertake, an analysis of what documents in its file for the Debtor should, or should not, be withheld on the basis of privilege.

18.     For that reason, in an attempt to avoid a dispute and minimize the disturbance to the administration of the Debtor's estate over this issue, on September 21, 2022, the Debtor's undersigned counsel—while he and his entire family were confined to their home and experiencing moderate Covid 19 symptoms—engaged in a number of discussions with the Trustee's counsel and BR. The undersigned informed the Trustee's counsel that although Z&Z would prefer not to undertake the task of reviewing BR and V&L's files and logging privileged information— and that it was not Z&Z's obligation to do so—Z&Z *would agree to do so as an accommodation* because it would be more efficient for Z&Z to do so than for the parties to expend the time and incur the expense litigating the issue.

19.     The Trustee's counsel rejected this proposal. Instead, the Trustee's counsel demanded that BR and V&L produce their files to the Trustee immediately, subject only to the Debtor's right to claw back after the fact any privileged documents that were improperly produced. The Trustee ostensibly proposed this procedure as a "compromise." However, Fed R. Civ P. 26(b)(1)(B), along with the Privilege Order's express terms, already allow all parties the

---

[1] Z&Z has engaged in no direct communication with V&L concerning compliance with the Trustee's subpoena.

7

right to claw back inadvertently produced privileged documents. Thus, the Trustee's "compromise" was merely an offer to allow the Debtor rights that he already had, while depriving him of the right to a determination on the merits of any privilege claim that he, his counsel or former counsel might assert based on the contents of the Debtor's files.

20. Based on the undersigned's understanding that the Trustee's counsel would not agree to allow the Debtor's counsel a reasonable time to review BR's file for privilege issues, on September 22, 2022, the Debtor's counsel emailed BR and stated the following:

> As you know, Z&Z tried to accommodate everyone's concerns/interests (the Debtor's, the Trustee's and Brown Rudnick's) by agreeing to review documents in Brown Rudnick's possession for purposes of assessing privilege, but the Trustee appears unwilling to allow us a reasonable time to do so. At this point, I don't see any alternative other than that Brown Rudnick respond to the subpoena in the manner it deems is required based on the debtor's stated reservation of whatever privilege rights he has, the applicable rules of professional conduct, the applicable rules of professional responsibility and the order entered in this case governing privilege.
>
> I'm happy to discuss this one more time if you like but given the Trustee's position I'm not sure that there is anything else I can do.

(Exhibit B, at p. 3).

21. That evening, BR responded to the Debtor's counsel, stating that it was pulling together its entire client file, would produce to the Trustee any documents that could be categorically excluded from a privilege determination, such as BR's communications with third-parties, and it would produce to Z&Z the balance of its file so Z&Z could make the determination of whether to withhold documents based on privilege pursuant to the standard set forth in the Privilege Order. BR advised the undersigned that he believed the Trustee's counsel was agreeable to that approach. (Exhibit B, at p. 1-2).

22. The following day, September 23, 2022, the undersigned called Patrick Linsey, the Trustee's Connecticut counsel, to inquire whether the procedure proposed by BR the

previous day was acceptable to the Trustee. Attorney Linsey stated he would speak with his co-counsel and one of them would respond.

23.     To the best of the undersigned's recollection, no substantive communication occurred between the Trustee's counsel and the Debtor's counsel concerning the BR subpoena until the following Thursday, September 29, 2022, when the Trustee reiterated his demand that BR and V&L produce their files immediately, subject only to the Debtor's right to claw back any privileged documents that should not have been produced. The Trustee filed the Motion at 9:54 the following evening, September 30, 2022.[2]

24.     On October 6, 2022, V&L produced its file to the Debtor's counsel. That same day, BR produced the first tranche of its file, which the Debtor's counsel understands to be BR's file other than its internal communications. The Debtor's counsel worked with its E-Discovery vendor to have the information provided by V&L and BR loaded to a review platform which was completed late in the day on October 7. On Monday, October 10, 2022, the Debtor's counsel completed its review of the first tranche of BR's file, which contained 3,263 documents and V&L's files, which contained 14,258 documents. Of those documents, the Debtor's counsel identified 33 documents, some of which are likely duplicative, that it intends to log as privileged under the terms of the Privilege Order. The Debtor's counsel expects to receive a second tranche of documents from BR containing its internal communications and will endeavor to review them as expeditiously as the first.

---

[2] The Trustee's counsel and the Debtor's counsel discussed a subpoena to a different professional firm, Clark Hill, on the evening of September 28, 2022. However, to the best of the undersigned's recollection they deferred discussion of the BR and V&L subpoenas until their call with BR that had already been scheduled for the following day.

**Argument**

25. The Second Circuit has held that it is reversible error to require a party to produce potentially privileged documents—subject only to the right to claw back those documents later—before a judicial determination has been made on the merits of the privilege claim. *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d. Cir. 1992). The Second Circuit acknowledged that the magistrate in *Turner & Newall* who had erroneously ordered a party to produce privileged documents before resolving the merits of the privilege claim had "sought an economical means to accomplish the awesome task of testing claims of privilege concerning thousands of documents." *Id.* However:

> The economies seemingly offered by this procedure, if it becomes widely used, will be offset by the 'fruit of the poisonous tree' arguments that will inevitably arise when an adversary is allowed to see documents that are later held to be privileged and inadmissible at trial. Such documents may alert adversary counsel to evidentiary leads or give insights regarding various claims and defenses. Moreover, attorneys cannot unlearn what has been disclosed to them in discovery. Some of the economies gained by the practice of pre-adjudication disclosure may thus be offset by later proceedings seeking to unscramble the effects of the disclosure of materials subsequently held to be privileged. ***Our research suggests that the present practice of pre-disclosure adjudication avoids all but a small number of unscrambling problems***.

*Id.* (emphasis added).

26. Here, the Debtor cannot be held to have waived the right to assert privilege over any documents in BR or V&L's file based on the passage of time. As an initial matter, the Debtor has never asked BR to delay the production of non-privileged documents in BR's files and it expressly requested that BR make a determination of which documents could, and could not, be produced to the Trustee based on applicable law and the Debtor's reservation of rights on privilege issues. The Privilege Order only entered on September 14, 2022, and since that time the Debtor and his counsel have worked to resolve privilege issues related to the documents in

BR's files.

27. On September 22, 2022, BR informed the Debtor's counsel that it believed the Trustee would agree to allow BR to produce to Z&Z the portion of its files that could not be categorically determined to be non-privileged so that Z&Z could make a privilege determination on the Debtor's behalf. On September 23, 2022, the Debtor's counsel asked the Trustee's counsel to confirm that agreement, and it did not become clear to the Debtor's counsel that the arrangement was unacceptable to the Trustee until BR, the Trustee's counsel and the Debtor's counsel all spoke on September 29, 2022. The Trustee filed the Motion late at night on September 30, 2022.

28. V&L produced its files and BR produced the first tranche of its files to Z&Z on Thursday, October 6, 2022. Before that time, the Debtor did not possess or control any of the documents in BR's files, and Z&Z completed its review of the documents it received from BR and V&L in one business day. Under these circumstances, the equitable and appropriate solution is to deny the Motion and allow Z&Z to complete its review of BR's files within a reasonable time from when Z&Z receives it.[3]

**WHEREFORE**, the Debtor requests that the Court deny the Motion, allow Z&Z a reasonable time from when it receives the balance of the documents in BR's files to review those documents and identify privilege issues, if any, and grant the Debtor such other and further relief as the Court deems just and proper.

---

[3] Z&Z will not be able to review the files of all, or even many, of the professionals who have represented the Debtor and received a subpoena from the Trustee. However, the unique role of BR as the Debtor's BK counsel weighed in favor of Z&Z reviewing BR's files for privilege issues here based on BR's unwillingness to do so.

11

Dated at Bridgeport, Connecticut this 11th day of October, 2022.

        **THE DEBTOR,**
        **HO WAN KWOK**

        */s/ Aaron A. Romney*
        Aaron A. Romney (ct28144)
        10 Middle Street, 15th Floor
        Bridgeport, Connecticut 06604
        Telephone: (203) 368-4234
        Facsimile: (203) 368-5487
        Email: aromney@zeislaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Aaron A. Romney*
　　　　　　　　　　　　　　　　　　　　　　　Aaron A. Romney