UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                        *   Case No. 22-50073 (JAM)
                             *
      HO WAN KWOK,           *   Bridgeport, Connecticut
                             *   October 4, 2022
            Debtor.          *
                             *
* * * * * * * * * * * * * * *

TRANSCRIPT OF MOTION FOR PROTECTIVE ORDER
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor,              JAMES M. MORIARTY, ESQ.
 HK International and        AARON ROMNEY, ESQ.
 Mei Guo:                    STEPHEN KINDSETH, ESQ.
                             Zeisler & Zeisler, P.C.
                             10 Middle Street, 15th Floor
                             Bridgeport, CT  06604


For the Creditor, Pacific    STUART SARNOFF, ESQ.
 Alliance Asia Opportunity   PETER FRIEDMAN, ESQ.
 Fund L.P.:                  O'Melveny & Myers LLP
                             Times Square Tower
                             7 Times Square
                             New York, NY  10036

                             ANNECCA SMITH, ESQ.
                             Robinson & Cole
                             28 Trumbull Street
                             Hartford, CT  06103


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:   (Cont'd)

For the Creditors Committee:   IRVE GOLDMAN, ESQ.
                                 Pullman & Comley
                                 850 Main Street
                                 Bridgeport, CT  06601


For the U.S. Trustee:            HOLLEY CLAIBORN, ESQ.
                                 Office of the United States
                                    Trustee
                                 The Giaimo Federal Building
                                 150 Court Street, Room 302
                                 New Haven, CT  06510


For the Chapter 11               NICHOLAS BASSETT, ESQ.
 Trustee:                        Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166

                                 PATRICK R. LINSEY, ESQ.
                                 Neubert Pepe & Monteith, PC
                                 195 Church Street
                                 New Haven, CT  06510


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166


For Verdolino & Lowey,           WILLIAM BALDIGA, ESQ.
 Creditor:                       Brown Rudnick
                                 Seven Times Square
                                 New York, NY  10036

1          (Proceedings commenced at 12:05 p.m.)

2                THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok.

4                THE COURT:  Good afternoon.

5                If we could have appearances for the record,

6     please, starting with the Chapter 11 Trustee please.

7                MR. DESPINS:  Good afternoon, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9                MR. LINSEY:  Good afternoon, Your Honor.  Patrick

10    Linsey, Connecticut counsel for the trustee, and with us on

11    Zoom is Nicholas Bassett, of Paul Hastings, counsel for the

12    trustee.

13               THE COURT:  Good afternoon.

14               MR. BASSETT:  Good afternoon.

15               MS. CLAIBORN:  Good afternoon.  Holley Claiborn

16    for the U.S. Trustee.

17               MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

18    Goldman, Pullman and Comley, representing the creditors

19    committee.

20               THE COURT:  Good afternoon.

21               MS. SMITH:  Good afternoon, Your Honor.  Annecca

22    Smith, of Robinson and Cole, for PAX, and on Zoom we have

23    Stuart Sarnoff and Peter Friedman of O'Melveny.

24               MR. SARNOFF:  Good afternoon, Your Honor.

25               THE COURT:  Good afternoon.  Mr. Romney?

1        MR. ROMNEY:  Good afternoon, Your Honor.  Aaron

2    Romney, Zeisler and Zeisler, on behalf of the debtor and HK

3    International and Ms. Mei Guo.

4        MR. MORIARTY:  Good afternoon, Your Honor.  James

5    Moriarty, Zeisler and Zeisler, for the same parties.

6        THE COURT:  Good afternoon.

7        MR. KINDSETH:  Stephen Kindseth, Zeisler and

8    Zeisler, for those parties as well, Your Honor.

9        THE COURT:  Good afternoon.

10        MR. BALDIGA:  Good afternoon, Your Honor.  William

11    Baldiga, Brown Rudnick, for both Brown Rudnick and Verdolino

12    & Lowey.

13        THE COURT:  Good afternoon.

14        MR. BALDIGA:  Thank you.

15        THE COURT:  All right. I think we have noted

16    everyone's appearance for the record.  Is that correct?  Did

17    we miss anyone?  I don't think so.  Okay.

18        THE COURTROOM DEPUTY:  Your Honor, there's a Peter

19    Friedman who's in Zoom but not at his desk.

20        THE COURT:  Okay.  That's fine.  Thank you.  Mr.

21    Sarnoff is there as well, and counsel is here in the

22    courtroom for PAX as well, so thank you.

23        MR. FRIEDMAN:  I'm here. I'm just having video

24    problems, Your Honor.

25        THE COURT:  That's okay.

1       MR. FRIEDMAN:  It's Peter Friedman. I apologize.

2       THE COURT:  No need to apologize.  Thank you.

3       All right.  On the calendar today is a hearing on

4   the motion for a protective order filed by the Chapter 11

5   Trustee.

6       So I did see that there was a response.  Mr.

7   Baldiga, I saw that you filed a response on behalf of Brown

8   Rudnick and Verdolino & Lowey.

9       And I also know that the debtor filed an objection

10  to the motion for the entry of a protective order.

11      I also believe, although I could be incorrect,

12  that the parties have been talking about some form of an

13  order, but I don't know if there has been any agreement

14  reached on the entry of a protective order.

15      So, Mr. Despins or Mr. Linsey, I don't know who

16  would like to address the protective order.

17      MR. DESPINS:  Your Honor, my partner will handle

18  it, Mr. Bassett.

19      THE COURT:  Mr. Bassett.  Okay.

20      Mr. Bassett?

21      MR. BASSETT:  Yes, Your Honor.

22      THE COURT:  Then I'm going to turn to you.

23      MR. BASSETT:  Good afternoon, Your Honor.  Can you

24  hear me okay?

25      THE COURT:  Yes, I can.  Thank you.

1      MR. BASSETT:  Great.  Thank you.

2           So, Your Honor, as for the motion for a protective

3      order, which was at ECF 874, we have continued over the last

4      few days to have discussions with counsel for the debtor as

5      to some comments they had regarding the protective order.

6      I'm pleased to report that I think we have resolved their

7      concerns with some slight revisions to the order that we had

8      submitted.  I believe one of Mr. Linsey's colleagues may be

9      in the process of filing that right now.  We did not reach

10     agreement unfortunately on the language until this morning,

11     so it was right before the hearing.

12          I believe Mr. Goldman, on behalf of the committee,

13     had one outstanding comment to the order that I'm happy to

14     allow him address, but otherwise the -- as far as the debtor

15     is concerned, I believe we do have agreement on an order

16     that we could submit for entry by the Court.

17          Your Honor had mentioned a response filed by Brown

18     Rudnick and an objection by the debtor.  I think, I could

19     mistaken, but I believe those filings related to the

20     separate motion that we filed last Friday that seeks an

21     order enforcing the Court's prior privileges order and

22     relates to the 2004 discovery that the trustee has served on

23     Brown Rudnick.  So that's separate.  I'm happy to address

24     that separately.

25          But as to the motion for a protective order at ECF

1    874, again, I think we do have agreement on that.

2              THE COURT:  Okay.  With regard to the documents

3    though that I saw that were filed, I thought the Brown

4    Rudnick and Verdolino & Lowey response was directed to the

5    motion for a protective order.

6              Mr. Baldiga, am I wrong on that.

7              MR. BALDIGA:  May I approach?

8              THE COURT:  Yes, please.

9              MR. BALDIGA:  Good afternoon.  Again, William

10   Baldiga, Brown Rudnick, for Brown Rudnick and Verdolino &

11   Lowey.

12             Your Honor, it is a response to the motion for a

13   protective order.  But largely because I was -- the

14   protective order motion, as well as some other recent papers

15   by other parties, characterize the discussions or positions

16   of Brown Rudnick and Verdolino & Lowey over the last several

17   weeks and I thought it was important for us to speak for

18   ourselves as to where we really are with all of this.

19             We feel a little bit caught in the middle.

20   There's an extensive, you know, series of discussions.

21             So I wanted to first -- and I was dismayed,

22   frankly, by some of the Court's conclusions drawn from what

23   other parties were saying that I thought were incorrect in

24   terms of where we really stood, so I wanted to put in our

25   own words what we've said to whom and what has happened.

1          I don't have any objection to the motion for a

2     protective -- I haven't seen the -- whatever drafts are

3     going around.  I --

4          THE COURT:  The order that is being spoken of, you

5     haven't seen that is what you're saying?

6          MR. BALDIGA:  No.  But I can't imagine we would

7     have any objection to it.

8          If the trustee and the debtor agree then, again,

9     the last thing we want to do is be in between that.

10          But we're really just trying to avoid, as I said

11     in our papers, being caught in between and having our

12     positions either mischaracterized or the Court to draw

13     conclusions that were not warranted by what we were really

14     saying.

15          THE COURT:  I think that's fair.

16          MR. BALDIGA:  So we're not going to have any

17     objection to the protective order.  I'm sure I would like to

18     see something, but I, again, I would not think that we are

19     going to have a problem with it.

20          THE COURT:  Okay.  And I understand your concerns

21     and I think it's fair what you've said.  When you say

22     conclusions that the Court may have made, I mean, I've made

23     statements, no question about that, with regard to arguments

24     made by various parties and Brown Rudnick's -- the subpoenas

25     and things like that, but I'm not sure if I would

1    characterize it as a conclusion, more of a concern, but I

2    appreciate you filing --

3              MR. BALDIGA:  That's fair.

4              THE COURT:  -- the document on the record so that

5    you can -- your position is known through you and not

6    through other parties.  Because that is part of the problem.

7    If someone is arguing a position of someone who's not in the

8    courtroom, then the person who's not in the courtroom

9    doesn't get to say whether that's accurate or not.

10             MR. BALDIGA:  Yes.

11             THE COURT:  So, in any event, I appreciate you

12   filing that and we'll go from there.  We'll see where things

13   stand.

14             It sounds as though the parties may have an

15   agreement.  I have to check with the Chapter -- I'm sorry,

16   the creditors committee with regard to what concern they may

17   have with regard to the order, but I understand your point.

18   And I was not trying to draw, at least from my perspective,

19   any conclusions.  It was more concerns.  But it does help me

20   to see what you have filed on the docket and I appreciate

21   that.

22             MR. BALDIGA:  And maybe I've put words in your

23   mouth unfairly in that regard, so --

24             THE COURT:  No.  No.  Not necessarily.

25             MR. BALDIGA:  -- I take your comments in the

1    spirit in which they're given that it's not a conclusion,

2    but I think we understand each other just fine here.

3             THE COURT:  Yes.  Okay.  Thank you.

4             MR. BALDIGA:  Thank you, Your Honor.

5             THE COURT:  Thank you very much.

6             MR. DESPINS:  And, Your Honor, I have a copy for

7    Mr. Baldiga.

8             MR. BALDIGA:  That would be great.

9             MR. DESPINS:  And for Your Honor if I may

10   approach.

11            THE COURT:  Yes, please.  Thank you.

12            So, Attorney Romney, I'm going to turn to you

13   first before I turn to Attorney Goldman.  So the trustee is

14   -- and Mr. Bassett, Attorney Bassett -- saying that there's

15   an agreed-upon order at this point.  Have you seen the final

16   version and you're fine with it?

17            MR. ROMNEY:  I'm going to defer to Mr. Moriarty on

18   this one.

19            THE COURT:  Okay.  I'm sorry.

20            MR. ROMNEY:  He's been handling it.

21            THE COURT:  Mr. Moriarty, go right ahead.

22            MR. ROMNEY:  Thank you, Your Honor.

23            MR. MORIARTY:  Thank you, Your Honor.

24            We have had comments back and forth with the

25   trustee's counsel.  We had a meet and confer with the

1    trustee's counsel yesterday.  And the debtor and the

2    trustee's counsel arrived at an agreed to protective order.

3    I have had some email correspondence with Attorney Goldman

4    this morning and I think I understand his issue, but I'd

5    like to hear it from him before I speak to it.

6              THE COURT:  All right.  I just to make sure that

7    you're -- so we can proceed, I am correct to proceed on the

8    -- on the presumption that we have an agreed upon order

9    subject to what Mr. Goldman may be asking to add to the

10   order?

11             MR. MORIARTY:  Correct.

12             THE COURT:  Okay.  Thank you.

13             All right.  Attorney Goldman, I haven't reviewed

14   the order so -- I mean, and that's fine, it was just handed

15   to me -- but what -- you have a concern or you have some

16   language that you'd like to have added to this order?

17             MR. GOLDMAN:  Yes, Your Honor.  Thank you.

18             It relates to paragraphs 9 and 10.  Paragraph 9

19   deals with the dissemination of confidential information and

20   10 deals with the dissemination of highly confidential

21   information.

22             And there are, you know, categories of persons or

23   entities that are listed as being qualified or actually

24   permissible recipients of that type of information, for

25   example, the trustee is expressly listed.

1          I was just ask that the committee to also be

2     separately listed as a party to receive or to be able to

3     receive confidential information and confidential materials,

4     described as, and high-confidential material, that's all, in

5     paragraphs 9 and 10.

6          THE COURT:  That's the only changes you'd like, is

7     that correct?

8          MR. GOLDMAN:  Yes, Your Honor.

9          THE COURT:  Okay.

10          MR. GOLDMAN:  Yes.

11          THE COURT:  Trustee Despins, do you have any

12     concerns about adding the committee as a party?  And I

13     haven't read 9 or 10, so I -- I think I know what they do,

14     but I haven't read it yet.

15          MR. DESPINS:  I need to defer to Mr. Bassett.

16          THE COURT:  Oh, I'm sorry.

17          Mr. Bassett, I apologize.  Mr. Bassett?

18          MR. BASSETT:  No problem, Your Honor.

19          We do not have a problem with those changes.

20     Paragraphs 9 and 10, as Your Honor I'm sure is familiar

21     with, the way protective orders are often drafted, this one

22     is no different in that there are two tiers of confidential

23     information.  There's documents and materials that are

24     labeled confidential and then there's a higher, heightened

25     sort of sensitivity designation for highly-confidential

1     documents and materials.

2            Paragraphs 9 and 10 just list out who is

3     authorized to see those materials.  And all Mr. Goldman I

4     think is saying is that in addition to the trustee being

5     exclusively listed as one of the parties who can see those

6     materials, he would like the committee to be listed as well.

7     It may be more of an issue for the debtor's counsel to

8     respond to.  But as for the trustee, we are fine with it.

9            I would note that adding Mr. Goldman's clients or

10    anybody else to those provisions does not necessarily mean

11    that they are automatically entitled to get all discovery

12    materials.

13           It just means that if they do get -- are in a

14    position to have access to those materials, they would not

15    need, for example, the debtor's consent if as Mr. Goldman is

16    requesting the trustee is specifically -- or sorry, the

17    committee is specifically added to those provisions.

18           So, again, it may be more of an issue for Attorney

19    Moriarty to address.

20           THE COURT:  Okay.  Thank you.

21           Attorney Moriarty?

22           MR. MORIARTY:  And it is more of an issue for

23    Attorney Moriarty to address.

24           So the way that this protective order was

25    negotiated, Your Honor, is the trustee has the discretion in

1       the first instance to permit parties to review confidential

2       and highly-confidential information and that party then has

3       to sign an undertaking, which is attached as Exhibit A to

4       the scheduling order.

5              THE COURT:  I just saw this declaration, right.  I

6       haven't read it, but I see it.

7              MR. MORIARTY:  Okay.  And then the next step would

8       be a party that produces material or the party, per

9       paragraph 9B that the materials pertain to, if they're

10      produced by a law firm or financial institution, can then

11      object, reasonably object, to somebody seeing that

12      information to the extent it's designated as confidential or

13      highly confidential.

14             There are individual creditors that the debtor and

15      maybe others would object to having access to confidential

16      and highly-confidential information.

17             What we don't object to is a provision that allows

18      counsel for the committee to have access to the material.

19      So if we can agree that we will include the committee's

20      counsel, that's okay.

21             We don't need to  have -- and it's not a veto

22      because it has to reasonable -- but we don't need to have

23      the ability to prevent counsel from seeing this.  It may be

24      that there are some creditors that this information should

25      not go to.  That's the concern.

1          THE COURT:  Okay.  Thank you.

2          Attorney Goldman, were you able to hear what

3    Attorney Moriarty stated with regard to the debtor's

4    concern?

5          MR. GOLDMAN:  Yeah.  I did, Your Honor.

6          But I have to be able to share this with my

7    committee members in order for us to properly represent our

8    constituents.  You know, we have responsibilities to the

9    body of unsecured creditors, so it can't just be attorneys

10   eyes only, which is what I think Mr. Moriarty is suggesting.

11         I need to be able to share this information with

12   the committee, of course, subject to the bounds of the

13   protective order.  So that would be my response.  I think it

14   has to be the committee, not committee counsel.

15         THE COURT:  Attorney Moriarty?

16         MR. MORIARTY:  Yes, Your Honor.

17         There is a specific category of documents that

18   already can't be shown to the committee members which is

19   highly-confidential material, that's counsel only.

20         And it may be that there are not objections to

21   some members of the committee and maybe there are objections

22   to other members of the committee, but we specifically

23   negotiated this protective order with the trustee's counsel

24   to give the debtor that protection.  And that protection is

25   built into the order and it's important to the debtor.  And

1    without that protection, I don't think we're going to have

2    an agreed to protective order.

3            MR. GOLDMAN:  Your Honor, I was suggesting that

4    the committee also be added to paragraph 10.  So I

5    understand there is a privilege in there that allows it to

6    be seen by retained professionals, but I'm also asking for

7    the committee to be inserted there.

8            And I don't think the committee's right to receive

9    information relating to the administration of the estate

10   should be subject by a debtor out of possession.

11           THE COURT:  I'm looking at the order as you speak,

12   Attorney Goldman.  So let me just -- I'm looking at it.

13           So in paragraphs 9 and 10, the confidential

14   material, which is paragraph 9, may be given, shown, made

15   available to or communicated only to the following:  the

16   trustee, any party who has signed Exhibit A and delivered a

17   copy thereof to the trustee, subject to the producing

18   party's consent, not to be unreasonably held -- withheld,

19   excuse me, and any other person specified in 10 below.

20           Paragraph 10 specifies counsel -- for the highly-

21   confidential material, counsel and staff working under the

22   express direction of such counsel for the trustee, any party

23   who has signed Exhibit A and delivered a copy to the trustee

24   and professionals retained under 328 and 1103.

25           I'm reading the other -- that was B.  Now I'm

1    looking at C.

2              Any person who's indicated to have been the

3    author, addressee or copy recipient thereof, any adverse

4    witness --

5              So it seems as though we have a problem then as

6    far as a consent order.

7              If, Attorney Goldman, you are asserting that your

8    clients, not just you, need to be able to see this highly-

9    confidential information, then I think we have a problem.

10   And I guess I'll have to rule as to whether or not your

11   request should be sustained or overruled.

12             We do have a trustee who is conducting the

13   investigation.  You are protected, as are your clients, by

14   the Chapter 11 Trustee's investigation.

15             Understood that the role that the committee played

16   when this was a voluntary Chapter 11 case with a debtor-in-

17   possession is completely different than it is now, I don't

18   know that it makes sense to hold up an agreed upon

19   protective order that was filed by the Chapter 11 Trustee

20   and negotiated between the Chapter 11 Trustee's counsel and

21   the debtor's counsel at this point.

22             You would still be entitled to see this

23   information.  Just your clients wouldn't at this point.

24             And I don't think that it will serve the estate or

25   the parties to have an argument about whether or not the

1   creditor committee members should see this highly

2   confidential and -- I mean, it's a protective order.  That's

3   the point, right?  So it's protecting information from

4   certain parties.

5          You're going to be able to see it.  There's no --

6          Mr. Moriarty, there's no question of that, that

7   Mr. Goldman would be able to see this, correct?

8          MR. MORIARTY:  Correct, Your Honor.

9          And we're willing to amend the order prior to

10  filing it to include that language that Attorney Goldman, as

11  counsel to the creditors committee, has access to.  Assuming

12  that would be acceptable to the trustee's counsel, which I

13  believe it would.

14         THE COURT:  Mr. Bassett seemed to indicate that it

15  was, but I do need to ask him that obviously.

16         Is there anyone else that wishes to be heard on

17  this issue about the committee members being entitled to see

18  this information that's confidential and highly confidential

19  in this proposed protective order that admittedly I have not

20  read thoroughly?  But I looked at paragraphs 9 and 10 and

21  understand in general what the purpose of those paragraphs

22  are.  Is there anyone else that wishes to be heard?

23         MR. GOLDMAN:  Your Honor, I just had a question to

24  clarify an issue in my mind on this.  I am added, I believe

25  it would have to be to paragraph 9 as a recipient,

1    authorized recipient.

2              If the members of the creditors committee executed

3    Exhibit A agreeing to be bound, would that open the door to

4    my sharing the information with them?  I'd like to have the

5    other parties' understanding of the answer to that question.

6              THE COURT:  Mr. Moriarty?

7              MR. MORIARTY:  Most likely, answering to that

8    hypothetical, the answer would be no.  But I think we would

9    have to view it on a creditor by creditor basis and we'd

10   obviously have to speak with our client.

11             But I know, for example, there is a registered

12   agent of the CCP.  And as Your Honor has heard, the debtor

13   has grave concerns about the CCP.  So, for example, that

14   individual would be an absolute no.  Might there be others

15   that wouldn't be, I can't tell you right now, but I know

16   that individual would be a no.

17             THE COURT:  But that -- is that individual that

18   you're speaking of a member of the creditors committee?

19             MR. MORIARTY:  I believe he is.  If he's not, it's

20   not an issue, but I believe he is.

21             MR. GOLDMAN:  There's no -- there's no member of

22   the committee that's associated with the CCP.

23             THE COURT:  Well, I obviously don't know that one

24   way or another.

25             Does -- the U.S. Trustee's Office can answer that

1   question?

2          MS. CLAIBORN:  I cannot, Your Honor.

3          THE COURT:  I don't know one way or the other

4   obviously.

5          MS. CLAIBORN:  I don't know the answer.

6          MR. MORIARTY:  Okay.  That's --

7          THE COURT:  That's not been brought before me.

8          MR. MORIARTY:  Okay.  I can only give you my

9   understanding, Your Honor.

10          THE COURT:  So, Attorney Goldman, the answer to

11   your question -- Attorney Moriarty, please correct me if I'm

12   wrongappears to be signing that declaration doesn't

13   guarantee that any member of the committee is going to be --

14   that's going to get over the hurdle of paragraphs 9 and 10.

15          Is that correct?

16          MR. MORIARTY:  That's correct, Your Honor.

17          And it's not -- the way that the protective order

18   is laid out, it's not just the committee members.  It's

19   anybody who wants access to this information.  But as it

20   relates to the committee members, your statement is correct.

21          THE COURT:  Okay.

22          MR. BASSETT:  Your Honor, the one thing -- the one

23   thing I would add, I would just add to that is, I think in

24   that scenario to say member of the committee or another

25   creditor sign Exhibit A, and paragraph 9B I believe it is

1     would come into play.  Yes.  Which in that case, it would be

2     subject to the producing party's consent not to be

3     unreasonably withheld.

4            So I think the issue would be if a member of the

5     committee or a creditor signed Exhibit A, they could then go

6     to the producing party, which in this sort of hypothetical

7     that we're dealing with would be the debtor, and they would

8     say, hey, we'd like to get access to this particular type of

9     information and then the debtor could either consent or not.

10    And I suppose there could be a dispute over whether that

11    consent is unreasonable, or the withholding of that consent

12    is unreasonable, but that is I think how it would play out

13    based on the way this is constructed.

14           MR. GOLDMAN:  Yeah.  I would also note that a

15    similar provision was contained in paragraph 10A(ii).  So I

16    think we would -- the highly-confidential material would

17    fall into the category described by Mr. Bassett for

18    paragraph 9.

19           So I think with that, you know, I would be

20    satisfied if they -- if I was just added as counsel to

21    paragraph 9, similar to paragraph 9, as authorized to

22    receive the confidential information.  And then, you know,

23    we can take up any issues that arise with the committee

24    members receiving it, you know, later on down the road if

25    there -- if there are any.

1          THE COURT:  Attorney Moriarty?

2          MR. MORIARTY:  As I said, Your Honor, just adding

3     a provision that allows the committee's counsel to receive

4     it is fine, but not the committee.  So --

5          THE COURT:  I think that then we have an

6     agreement?

7          MR. MORIARTY:  Yes.

8          THE COURT:  Which is you're going to add a

9     provision that the committee's counsel may receive the

10    information in paragraphs 9 and 10.

11          And then if some creditor, whomever it may be,

12    whether it's a member of the committee or not, signs the

13    declaration that's Exhibit A, they'll have to, according to

14    what I've read, produce that declaration to the Chapter 11

15    Trustee who then would have to produce it to whomever was

16    the producing party, who then would have, as Attorney

17    Bassett said, the opportunity, not unreasonably, but to

18    reasonably withhold that production.

19          And if there's still an argument, then we'll have

20    to have a hearing.  I presume that's how it will have to

21    work.

22          MR. MORIARTY:  I believe that's correct, Your

23    Honor.

24          THE COURT:  Okay.

25          MR. MORIARTY:  The producing party would be as

1    defined in paragraph 9B, which would include, for some

2    purposes, the debtor or others for whom the -- to whom the

3    information is about.

4          THE COURT:  Okay.  Thank you.  I think we then

5    have an agreement on a protective order.

6          Attorney Bassett, Attorney Moriarty said that he

7    will add the language into paragraphs 9 and 10 that the

8    committee -- counsel to the committee can receive that

9    information.

10          So just to be clear for the record, is that

11    agreeable to the Chapter 11 Trustee?

12          MR. BASSETT:  Yes, Your Honor.  That's fine.

13          If Mr. Moriarty wants to send us a revised

14    version, we can just take a quick look at it and get it

15    submitted to the Court.

16          THE COURT:  Is that fine, Mr. Moriarty?

17          MR. MORIARTY:  Yes, Your Honor.  I will do that.

18          THE COURT:  Okay.  Yeah.  That is fine.  Mr.

19    Moriarty will do that.

20          All right.  What else do we need to -- and by the

21    way, I didn't say that I do appreciate the fact that you

22    have been -- you met and conferred and you've been working

23    on this order.  And that even though there still could be

24    issues that arise from this order and the declarations, that

25    I do appreciate the efforts of the parties in reaching this

1    agreement.  I think it's important to not -- to move forward

2    to the extent possible.  And obviously you've all done that.

3    And we'll see how it works out.

4            I understand that there's -- there are many issues

5    still that will come before the Court for determination, but

6    the trustee does need to conduct his investigation and this

7    definitely helps.

8            I'm not of the belief that it means that there

9    will be no issues, but I understand that this is very

10   helpful.  So I appreciate the efforts of all the parties in

11   reaching this point.

12           So I know that that is the only matter on today's

13   calendar with regard to this case.  I know that there are

14   some other things that are pending.  And I know things have

15   been filed as recently as an hour ago.

16           One thing I will say, I appreciate everybody filed

17   their list of witnesses and exhibits for Friday's

18   evidentiary hearing on the repair reserve.  There are a lot

19   of the same documents by the way.  And that's fine.

20           I mean, it appears that both sides Attorney -- I

21   don't know if Attorney Friedman and Attorney Sarnoff are

22   there, but it seems that some of the exhibits, many of the

23   exhibits that the debtor HK has submitted are the same as

24   PAX.  There are some differences.  We can deal with that.

25   That's not a problem.

1          Are we going to have any need for any kind of

2     interpreter to be at this hearing on Friday?

3          MR. KINDSETH:  Your Honor, if I can circumvent

4     that, it appears very likely that we're going to have an

5     agreed upon repair reserve order.

6          THE COURT:  Okay.

7          MR. KINDSETH:  And so we're down to the finer

8     points.  I really don't believe there's going to be any

9     issue other than because the repair reserve order triggers

10    my client's ability to file a certification to cause the

11    release of the $37 million escrow fund that was posted to

12    secure the return of the Lady May, and because the trustee

13    is seeking separately in the adversary proceeding involving

14    HK International to get a prejudgment remedy against those

15    funds, there's a bit of a timing issue with respect to a

16    component of the repair reserve order that's going to

17    hopefully be stipulated to.  It depends upon the timing of

18    the PJR hearing.

19         And I believe, I know counsel sent the courtroom

20    deputy a proposal for new dates for the PJR hearing.  I

21    believe the trustee has a conflict with the current dates.

22    And so what I'd ask is that we discuss, and I believe the

23    trustee was going to request that we discuss, a PJR hearing

24    continued date.

25         And then once I have that date, my client,

1    assuming it's not too far out, my client will agree not to

2    file the certification until the day after the dates that we

3    decide the PJR hearing can take place.

4          So if you have any questions about what I said, I

5    know it's convoluted, but --

6          THE COURT:  No.  I understand what you said.

7          MR. KINDSETH:  Okay.  Perfect.  So if we could

8    move to working out new dates for the PJR hearing, I can

9    then -- I believe we'll have an agreement on the repair

10   reserve.

11         And what we're proposing is, Your Honor, assuming

12   that the PJR hearing and agreed-upon order, we'll just

13   submit a stipulated order.  If Your Honor finds it

14   acceptable, Your Honor would hopefully enter it, and then

15   Friday can go on.

16         THE COURT:  Okay.  So you're anticipating

17   submitting that stipulated order before Friday?

18         MR. KINDSETH:  Hopefully, later today or tomorrow,

19   yes.

20         THE COURT:  Okay.

21         MR. FRIEDMAN:  Your Honor, it's Peter Friedman.

22   From PAX's perspective, we confirm that.

23         THE COURT:  I couldn't hear you, Attorney

24   Friedman.  I'm sorry.

25         MR. FRIEDMAN:  Sorry, Your Honor.  We just confirm

1    from PAX's perspective --

2            THE COURT:  Okay.

3            MR. FRIEDMAN:  -- everything Mr. Kindseth said.

4            THE COURT:  Okay.  Great.  Just so the record is

5    clear, because you were a little muddled, and I'll just fill

6    it in, Attorney Friedman for PAX has stated that he confirms

7    what Attorney Kindseth said on the record with regard to the

8    repair reserve and the hearing, evidentiary hearing,

9    scheduled for this Friday, October 7th.  Okay.

10           Trustee Despins?

11           MR. DESPINS:  Good afternoon, Your Honor.  If I

12   may?

13           THE COURT:  Yes, please.

14           MR. DESPINS:  So Mr. Kindseth is right.  The two

15   are tied together.

16           And really what we're looking for is what -- you

17   had given us two dates, 13th and possibly the 14th.  Those

18   dates don't work.  And we're wondering what other dates you

19   could give us so we're -- again, it's your calendar, but

20   we're thinking 18th and 19th.  In my email to the courtroom

21   deputy, I mentioned the 20th not knowing that that's your --

22   that's your Chapter 13 day.

23           THE COURT:  Thirteen day.

24           MR. DESPINS:  So that's probably off.  So the

25   question is --

1    THE COURT:  I'm looking at the calendar while

2    you're talking.  I'm not not listening to you.  I'm trying

3    to look at dates.

4         So I just want to -- what about the 17th, what

5    about the Monday, the 17th?  The reason I say that is I

6    think I have an issue with the 19th.

7         MR. DESPINS:  Okay.

8         THE COURT:  So if we started on the 17th, which is

9    Monday.

10        MR. DESPINS:  It could be a little bit tight, Your

11   Honor.

12        THE COURT:  Otherwise, I have a -- I have a

13   commitment with the National Conference of Bankruptcy

14   Judges.  That's the --

15        MR. DESPINS:  That's the 19th?

16        THE COURT:  That's the rest of that week, yes.

17        MR. DESPINS:  Oh, the rest --

18        MR. MORIARTY:  So, Your Honor, this is Attorney

19   Moriarty for HK and Ms. Guo.

20        I would be defending the PJR application with

21   Attorney Romney.  I have a jury trial scheduled in state

22   court starting on the 13th of October.  There's a hearing

23   this afternoon at which it is likely, although I can't say

24   how likely, that that jury trial will be continued.

25        So what we had discussed earlier was waiting until

1      sometime later this afternoon when I will know for sure if

2      my jury trial is going forward and then propose some dates

3      to the Court.

4            And it sounds like we may be looking at maybe the

5      first week in November.  Attorney Romney and I are at a

6      conference the last week in October so that may be where we

7      wind up.

8            MR. DESPINS:  But we should -- before we -- I

9      think it would be very helpful to hear from Your Honor what

10     your calendar looks like, for example, the first of

11     November, if that's where we're heading, because I know that

12     Mr. Bassett is not available the second or third -- please

13     jump in if I've got this wrong.

14           THE COURT:  The first week of November, including

15     October 31st, other than regularly scheduled hearings on

16     November 1st, is fairly available.

17           MR. BASSETT:  And, Your Honor, I think what the

18     trustee was referring to is that on the 3rd I will be

19     participating in a hearing and I'll be out the 3rd and the

20     4th.  So it would be preferable if it works for the Court

21     and the other parties to do it --

22           THE COURT:  Monday the 31st is available.  And on

23     Tuesday, the 1st of November, there are hearings, but I

24     think we could have the afternoon of the 1st of November if

25     we had to go into the next day.  And we could go into the

1    2nd as well.  I don't know how long you all think this

2    hearing is going to take, but --

3             MR. DESPINS:  To be safe, we should -- we should

4    plan for two days.

5             THE COURT:  Right.  So if we started on October

6    31st and then we go -- we start the afternoon -- Attorney

7    Goldman is on the phone right now.

8             On the November 1st there's an initial pretrial

9    conference in a case in which you're a lawyer, Attorney

10   Goldman.  I don't know who else, if the other side's even

11   appeared, *Diamond Landscaping & Athletic Fields*.  I mean, we

12   could -- we could continue that for a week.  That doesn't

13   need to happen that day.  Correct?

14            MR. GOLDMAN:  That would be fine, Your Honor.  I

15   may not be -- I may not have attended that anyway because I

16   have co-counsel, but Your Honor's pleasure on that.

17            THE COURT:  Well, I would --

18            MR. GOLDMAN:  It was an outside chance.

19            THE COURT:  Yeah.  I would continue that though

20   because it's at 2:00 p.m.  And it would cut into if we were

21   starting the second day of the prejudgment remedy hearing in

22   this case.  So I would -- the other matters I probably would

23   keep on the calendar and then continue that matter.

24            So what I'm saying to you, all the parties, is

25   October 31st is available.  November 1st from possibly noon,

1    but at least 1:00 p.m., is available.  And November 2nd

2    appears to be fairly open.  And I think those are the dates

3    that you're talking about, correct?

4              MR. DESPINS:  I'm sorry to do this that way, but I

5    need to defer to Mr. Bassett.

6              THE COURT:  He has to be somewhere the 3rd and the

7    4th.

8              Do you have to travel on the 2nd to be there on

9    the 3rd and the 4th, Mr. Bassett?

10             MR. BASSETT:  Your Honor, what -- no, Your Honor.

11   What you're proposing, the 31st through the 2nd, would be

12   fine.

13             THE COURT:  Understanding that the 1st would only

14   be the afternoon, probably noon or 1:00 we would start,

15   because I do have to have the regular -- our regularly

16   scheduled hearings go forward.

17             MR. ROMNEY:  Your Honor, if we did the afternoon

18   of the 1st and the 2nd, I think we would -- that would be

19   allotting us the same time that we were originally allotted,

20   I think, an afternoon and a following day.

21             THE COURT:  Well, I didn't stop the allotment.  I

22   said continuing, if necessary, understanding that I didn't

23   know how long it was going to take, right?

24             MR. ROMNEY:  Understood.  But I -- and forgive me

25   if I'm recalling it incorrectly, we were starting on the

1    afternoon of the first day and then going into a second day

2    if necessary is --

3            THE COURT:  And then a third day if necessary and

4    a fourth day if necessary.

5            MR. ROMNEY:  Okay.

6            THE COURT:  Okay.  I don't know how long this is

7    going to take.  I have no idea.  You all have to figure that

8    out, right?

9            MR. ROMNEY:  Correct.

10           THE COURT:  So --

11           MR. ROMNEY:  My concern with the 31st, Your Honor,

12   is that we'll be flying back from Texas late on the 28th.

13   Mr. Moriarty did have plans then to go see his elderly

14   mother that weekend.  But as I understand, he could adjust

15   that.  But either way, we would then need to prepare our

16   witnesses over the weekend, which I would accommodate.  But

17   I don't -- I don't know if I can -- I don't know that I want

18   to speak for them, which is why if I left the 31st open --

19           THE COURT:  Well, let me just stop you right there

20   for a second.  That's fine.  If you don't want to start

21   until the afternoon of the 1st, that's fine.

22           But from what I understood Mr. Kindseth to say,

23   even if the repair reserve is stipulated to, his -- HK has

24   to be bound by not filing the certification until after this

25   hearing is held, the PJR hearing.

1          MR. KINDSETH:  That's not -- that's not the

2     agreement, Your Honor, and there's a lot of reasons for the

3     agreement.

4          THE COURT:  Well, then, what did you say?  I

5     thought that's what you said.

6          MR. KINDSETH:  No.  What I said was we would fix

7     the date.

8          And so let's say Your Honor scheduled the hearing

9     for the 1st and 2nd, okay, we would commit not to file the

10    certification until the 3rd.  That leaves another 15 days.

11    Because the cert is filed and there's 15 days to object, it

12    only (indiscernible) expiration that period.

13         And so even if let's say, you know, the 1st and

14    2nd the PJR hearing takes place, I file the certification on

15    the 3rd, the trustee has another two weeks to try to get the

16    PJR.  And that's the agreement that we've reached.

17         THE COURT:  Well, that's assuming that I have

18    ruled.

19         MR. DESPINS:  Yeah.  But --

20         THE COURT:  So let me just ask you another

21    question though about the boat, right?

22         The last time we were here anyway someone

23    mentioned that it wasn't in good working order and it

24    appears to no longer be in the water and on dry dock to be

25    repaired.

1          MR. KINDSETH:  Yeah.

2          THE COURT:  So doesn't the certification require

3     that the boat be in good working order?

4          MR. KINDSETH:  No.  The certification requires

5     that we've established a repair reserve.

6          And, Your Honor, notwithstanding the fact that we

7     adamantly disagree that the amount is necessary, my client

8     has agreed to post $4 million to secure all conceivable,

9     possible costs to repair.

10         And so the whole point of the repair reserve was

11    to not hold up the release of the 37 million pending the

12    repairs.  It was that a repair reserve would be established

13    to cover whatever conceivable, reasonably conceivable, costs

14    there would be.

15         And so our stipulation is that $4 million from the

16    $37 million will be reserved.  It will be deposited with the

17    trustee.  And it will be subject to this process for the

18    payment of repairs.

19         And so that was the agreement.  The repairs don't

20    need to concluded.

21         And just to add though, Your Honor, the boat is

22    dry docked.  The engine repairs are commencing this week.

23    The surveyor for the insurance company is going to be there

24    this week.  It's expected that insurance is going to cover

25    all the engine repairs.  And the other repairs, except for

1    the valve service, which needs to be performed elsewhere,

2    are all -- should be completed within the month of October.

3    The expectation is to get the boat back in the water in

4    November and do a sea trial.  And all of this is in the

5    repair reserve proposed order.

6            And so in terms of the certification, we're

7    entitled to file the certification upon the entry of the

8    repair reserve, but we're not agreeing to give the trustee a

9    brief period of time to have the PJR hearing.

10           MR. DESPINS:  So let me try to address that, Your

11   Honor.  There are nuances there that are important.

12           What Mr. Kindseth said about the way the existing

13   Lady May stipulation works, there's a debate.  From our

14   point of view, there's a debate about that.  He believes

15   that just by establishing a reserve he can release the

16   funds.  We disagree with that, but we've agreed, we would

17   agree as part of this deal, that he can -- the Court can set

18   a repair reserve and subject to our right to do the sea

19   trial, et cetera.

20           Now, the 15-day issue is critical, and that's why

21   -- and I want to make sure Your Honor knows the back and

22   forth on this, because under the first Lady May stipulation

23   it says that once that notice is given, the Court has very

24   limited ability to do certain things.  And of course we

25   don't want to be in that limited mode because we have a

1    prejudgment remedy motion pending.

2         And so what we've agreed to is that he would not

3    send the notice until the completion of the hearing provided

4    that -- you know, it would be too easy for us, for example,

5    to tell Your Honor, Your Honor, let's adjourn this hearing

6    on the PJR until June.  And of course in the meantime this

7    37 million is held in escrow and of course they're not happy

8    about that.

9         So we've agreed, but I want to make sure you know,

10   it boxes you in.  I'm sorry to use that term.  But it would

11   provide that you would hold this hearing on the PJR on two

12   days and he could send that notice the day after that.

13        Of course, you might say, well, Mr. -- you've just

14   said that.  I may not have ruled, you're right, but the

15   compromise was that this is what would happen.  Meaning that

16   there would be -- there's an assumption on my part, and you

17   might say wrong, that you would be able to rule on the PJR

18   at the completion of the second day hearing.

19        Because once he sends that notice, he will argue,

20   and I'm not faulting him for that, that your jurisdiction to

21   do things is very limited.

22        And that's why we want, it's important, that we

23   have this hearing before he can send the notice.  Not only

24   that the 15 days doesn't run, but rather that the -- that

25   the notification period does not start, does not commence,

1    until Your Honor, we hope, has ruled.

2              And if you rule against us, then I'm dead.  If you

3    rule for us, then there's not going to be a notice sent

4    because Your Honor will have ruled that there's an

5    attachment that must issue.

6              So I want -- it's not ideal.  Of course from your

7    point of view, you would like to say the notice cannot be

8    given until I rule.

9              But I understand from their point of view, I get

10   that, that that would allow us, the trustee, to say, well,

11   let's adjourn the hearing for several months.  And you might

12   say, no, I'm not going to allow that.

13             But I understand there are concerns.  So that's

14   why the deal that we have -- and Your Honor, you know, might

15   say I'm not going to do that is that the notice can issue

16   the day after the second day trial day on the -- on the --

17             THE COURT:  PJR?

18             MR. DESPINS:  -- on the pretrial remedy provided

19   that that hearing takes place on a date that's satisfactory

20   to them, for example, first week of November, or something

21   like that.  That's really the back and forth.

22             THE COURT:  I understand.

23             MR. DESPINS:  I want to make sure you have the

24   full picture there.

25             THE COURT:  Well, that's why I said before I think

1    I got the picture, right, which is that means you need me to

2    rule in the 15 days.  That's what the point is.

3                MR. DESPINS:  Well, before the 15 days.  Sorry.

4                THE COURT:  Yeah.  Before.  Yeah.  I can't rule on

5    the 15th day.  That won't really help, will it?

6                MR. DESPINS:  No.

7                THE COURT:  I know you want me to rule at the end

8    of the hearing.  I understand that.  I understand.

9                MR. KINDSETH:  Thank you, Your Honor.

10               THE COURT:  Okay.  Thank you.

11               MR. DESPINS:  So that's why it's critical.  I'm a

12   little bit nervous about picking half days because we want

13   to make sure we have two full days to make sure we don't run

14   out of time.  I hope and I think it will last less than two

15   full days.  But given that I have this sword hanging over

16   our head on the day after the second day, I would like to

17   have two full days.  So I don't know where that leaves us in

18   terms of days though.

19               MR. ROMNEY:  So what if -- if it is okay with the

20   Court and everyone, if we started the 31st, but in the

21   afternoon, then had the 1st, and if we needed a half day on

22   the 2nd?

23               THE COURT:  You all talk about that.  I mean,

24   that's fine.  When you say start in the afternoon of the

25   31st, what are you proposing, Mr. Romney?

1              MR. ROMNEY:  1 o'clock if that --

2              THE COURT:  That's fine.

3              MR. ROMNEY:  It would give us the morning to do

4     any work with our witnesses that we needed to do.

5              THE COURT:  Understood.

6              MR. DESPINS:  So just to repeat, it would be the 1

7     o'clock on the 31st, full day on the 1st?

8              THE COURT:  No.

9              MR. DESPINS:  No.

10             THE COURT:  Unfortunately, the 1st is our regular

11    calendar day, so we wouldn't be able to start again until

12    probably noon.

13             MR. ROMNEY:  So half day, half day, full day,

14    right?

15             MR. DESPINS:  And the second full day?

16             THE COURT:  If that works with everyone, that's

17    fine with the Court.

18             MR. DESPINS:  Okay.

19             MR. ROMNEY:  Right.  And notwithstanding you said

20    two --

21             MR. BASSETT:  Your Honor -- sorry, one point that

22    I --

23             MR. ROMNEY:  Go ahead, Attorney Bassett.

24             MR. BASSETT:  Sorry, Your Honor.  Nick Bassett

25    from Paul Hastings.

1          One point that I wanted to raise is that we've

2     been talking about obviously witnesses and the evidentiary

3     presentation that will need to take place at this hearing,

4     we've not yet exchanged witnesses, a witness list. So, you

5     know, if Mr. Romney can let us know how many witnesses --

6          THE COURT:  Well, I'm going to require you both to

7     file a list --

8          MR. DESPINS:  Yes.  We'll need to --

9          THE COURT:  -- of witnesses.  Didn't I put that in

10    the --

11         MR. DESPINS:  Yes.  But we'll need to push back

12    that date because --

13         THE COURT:  Oh, right.  Right.  Exactly.  Okay.

14         MR. BASSETT:  Yeah.  My only point, Your Honor, is

15    just that in terms of talking about how long it's going to

16    take, obviously, it's a bit difficult to know that until we

17    understand how many witnesses there are going to be.

18         THE COURT:  All right.  Let me just take a look

19    back at the docket for a moment.

20       (Pause)

21         THE COURT:  Oh, I know why I'm not finding it,

22    because I'm looking in the main case and it's in the

23    adversary proceeding, the order that set the hearing.

24         MR. DESPINS:  Yes.  Remember --

25         THE COURT:  Yes.  No.  I --

1          MR. DESPINS:  -- it set it one week before the --

2          THE COURT:  Yeah.

3          MR. DESPINS:  -- hearing dates.

4          THE COURT:  And I think it's going to be the same

5     thing.  I think it's going to be a list of witness -- we

6     usually require a list of witnesses and exhibits a week

7     before the hearing.  So that's why I wasn't finding it just

8     looking at the main case, because it's not in the main case.

9     It's in the adversary.

10         MR. DESPINS:  So we would just adjust those dates

11    to reflect the new hearing dates.

12         THE COURT:  Right.  And it would be a week before

13    the list of witnesses and exhibits would need to be filed.

14         MR. DESPINS:  Well, given that we have more time,

15    we may, let's see if we can agree on --

16         THE COURT:  So I am fine with what everyone's

17    proposed.

18         Attorney Sarnoff, did you want to say something?

19    I didn't know if you had -- if you had been cut off at one

20    point.

21         MR. SARNOFF:  (Inaudible)

22         THE COURT:  No?  Okay.

23         MR. SARNOFF:  (Indiscernible)

24         THE COURT:  Okay.  Thank you.

25         So what we're going to do then is we're going to

1    continue the evidentiary hearing on the prejudgment remedy

2    to October 31st at 1:00 p.m., continued to November 1st at,

3    I believe, 12:00 p.m., but it might be 1:00 p.m.  I have to

4    check on that.  But it won't be that -- it won't be any

5    later than that.  And then to 10:00 a.m. on November 2nd.

6    And the list of witnesses and exhibits must be filed before

7    5:00 p.m. on whatever that would be.  What's 31 minus 7, 24,

8    right?  So October 24th.

9             And, you know, we can get that order entered

10   today, later today or tomorrow, at the latest as long as

11   everyone's in agreement with that, correct?

12            I haven't heard anyone disagree with that?

13            MR. ROMNEY:  We're in agreement, Your Honor.

14            And would the deadline for HK to file its --

15            THE COURT:  Yes.  The objection deadline will --

16   the same thing, you're correct.  I'm sorry I didn't say

17   that, but you are correct.

18            MR. DESPINS:  We'll adjust.  Okay.

19            THE COURT:  You'll adjust it accordingly.  So if

20   we look back at that docket --

21            THE COURTROOM DEPUTY:  It's 22-5003, and ECF 41 is

22   Your Honor's scheduling order that applies.

23            THE COURT:  Right.  Right.  So the -- yeah.  The

24   objection deadline's the same time, Attorney Romney, and

25   Attorney Kindseth, and Attorney Moriarty.  Okay?  It's the

1    same time.  It's a week before the hearing at 5:00 p.m. on

2    the 24th.  Okay?

3            MR. ROMNEY:  Thank you, Your Honor.

4            THE COURT:  Attorney Kindseth?

5            MR. KINDSETH:  Thank you very much, Your Honor.

6            And just to close the loop, it's probably clear,

7    but I just want to be very clear, now that we have the

8    dates, I can put in the repair reserve order, the date by

9    which we will not file the certification.

10           And then our hope is that everybody who was a

11   party to the prior stipulation, plus the trustee, and I'm

12   not acknowledging that he's not part of the stipulation,

13   vis-a-vis the debtor, but out of respect for his position

14   I'm saying and the trustee.

15           So when I submit that to the Court I'll be

16   representing to the Court that all the parties to the prior

17   stipulation and the trustee have consented to the form of

18   the order for the repair reserve and would ask that the

19   Court consider that and decide it promptly so then we don't

20   need to continue to prepare for Friday's hearing --

21           THE COURT:  Right.

22           MR. KINDSETH:  -- and Friday's hearing can go on.

23           THE COURT:  Understood.

24           MR. KINDSETH:  Thank you, Your Honor.

25           THE COURT:  Okay.  Thank you.

1          All right.  So I'll be looking for the repair

2     reserve order, will be issuing an order in the adversary 22-

3     5003, continuing the evidentiary hearing on the prejudgment

4     remedy of attachment.

5          I know there's also a motion -- there's a few

6     motions now pending.

7          MR. DESPINS:  Yes.  So let me address those, Your

8     Honor.

9          The first one is what we call the Brown Rudnick

10    motion filed Friday.  And my partner, Mr. Bassett, will

11    address it, not the merits, but the scheduling of that.

12         Mr. Bassett.

13         MR. BASSETT:  Your Honor, again, Nick Bassett from

14    Paul Hastings on behalf of the trustee.

15         So, Your Honor, we had actually discussed this

16    topic and I think hinted that the motion would be

17    forthcoming at the last status conference.  And this relates

18    to, as the trustee said, to the trustee's Rule 2004

19    discovery, in particular the subpoena that was served on

20    Brown Rudnick on August 17th.

21         As we have explained in the papers that we filed,

22    issues have arisen getting documents pursuant to that

23    subpoena as a result of issues that the debtor has raised

24    concerning potential privileges in the documents in the

25    files at Brown Rudnick.

1          Our position, as we articulate in the papers, is

2     that all these issues are very clearly dealt with in the

3     privileges order that the Court entered on September 14th at

4     ECF 856.

5          The purpose of that was to narrowly articulate the

6     areas in which the debtor could attempt to assert a

7     privilege to the extent that he believes he would be subject

8     to personal harm if documents in the files of attorneys like

9     Brown Rudnick and others are disclosed to the trustee.

10          We filed a motion to expedite.  And basically the

11     relief that we're seeking, Your Honor, in this order, is an

12     order authorizing Brown Rudnick to produce the documents

13     that we subpoenaed to the trustee so there's no longer any

14     delay in getting those documents.

15          We, you know, have been at this for months now

16     already.  We don't think there's a basis for those documents

17     to be withheld.  We, therefore, sought to expedite that

18     originally asking for a hearing on the motion to be heard

19     today.

20          The debtor has objected to the motion to expedite

21     and I believe Your Honor has ruled on it.

22          The trustee's position is that there is an urgent

23     need for this issue concerning the files we're seeking from

24     Brown Rudnick to be resolved.

25          If the motion is not heard today, we would request

1  that it be heard at the Court's earliest convenience.

2  Friday, where we already have a hearing, I think would be

3  the logical time to do it.

4         Again, we've been at this for a very long time.

5  You know, the subpoena, as I said, was served on August

6  17th.  The deadline to produce documents in response to that

7  subpoena was the 16th.  You know, again, it's just taking us

8  way too long to make progress in the investigation.

9         And as we know from findings that have been made

10 elsewhere that we've discussed at length already in this

11 case, the debtor has taken steps in the past to conceal

12 assets and do things with shell companies that could be very

13 prejudicial to the trustee.

14        So it is very, very important that we start to get

15 access to these documents now, that these not be delayed,

16 and that's the reason for seeking to have this expedited,

17 Your Honor.

18        So, again, originally we were seeking to have this

19 motion heard today.  Because if it's not today, and I

20 appreciate the Court has not ruled on the motion to

21 expedite, then I think what we would request is that it be

22 heard on Friday.

23        THE COURT:  Okay.  Thank you.

24        Attorney Romney or Moriarty, I know that one of

25 you, and I don't recall, I'm sorry, filed an objection to

1    the motion to expedite.  And I didn't rule on the motion to

2    expedite.  I haven't done that yet.

3              MR. ROMNEY:  Thank you, Your Honor.  Aaron Romney,

4    Zeisler & Zeisler, on behalf of the debtor.

5              Your Honor, as I said at our last status

6    conference, the debtor has serous issues with the way this

7    issue has been presented to the Court, the characterization

8    of the debtor's positions.

9              The debtor has not asked Brown Rudnick or anybody

10   else to withhold documents.  The debtor has not insisted

11   that Brown Rudnick review documents on a document-by-

12   document basis.

13             The debtor has said, as I stated last time, at the

14   last status conference, that the debtor reserves its rights.

15             Brown Rudnick knows what it does and doesn't have.

16   And to the extent that it has information that is not the --

17   that cannot be withheld by the debtor under this order,

18   based upon its professional judgment, we're not asking Brown

19   Rudnick to withhold it or look at every document.  It's

20   familiar with its file.

21             What the debtor did when Brown Rudnick asserted

22   discomfort, for lack of a better word with that, was

23   offered, it did not ask for, it did not demand, and frankly

24   does not want to, but will, in order to resolve what appears

25   to be an impasse between the trustee and Brown Rudnick's

1    comfort complying with this is, we offered to review

2    documents and make that determination.

3         We would need a reasonable time to do that.  And

4    what reasonable time is is based upon the volume of

5    documents that are presented to the debtor to make that

6    determination, which we haven't seen.  I don't know if it's

7    500 pages of documents or even 2,000.  We could probably do

8    it two days if we shifted resources to do it.  But we don't

9    know.  We've had discussions.

10        And the debtor is willing, in the interest of

11   allowing Brown Rudnick to feel comfortable knowing that

12   certain categories of documents can be produced, is willing

13   to describe those documents.  We just can't identify the

14   documents without seeing them.

15        For example, anything that clearly pertains to a

16   dispute regarding dischargeability, that would be a document

17   that the production of which could cause personal harm to

18   the debtor.  I don't know if Brown Rudnick --

19        THE COURT:  I thought that was carved out of the

20   -- I don't remember, I'm trying to remember, Attorney

21   Romney, but I thought what was carved out of the subpoenas

22   was anything that had to do with the dischargeability of the

23   debt.  I thought we had addressed that issue.

24        MR. ROMNEY:  I believe --

25        THE COURT:  Am I wrong?

1          MR. ROMNEY:  I believe we addressed that issue by

2     allowing the debtor to assert privilege over those

3     documents.  And when I say the debtor, I believe that

4     necessarily implies counsel holding the documents.

5          THE COURT:  Okay.  I understand what you're

6     saying.  I think what I'm remembering is that there was --

7     with regard to the subpoenas, there was a category of --

8     categories of information that the trustee was seeking and

9     that it went to the assets of the estate, the administration

10    of the estate, and pre -- post-petition discussions.

11         So I may be confusing something, but my thought

12    was I don't think anybody's seeking things with regard to

13    dischargeability of debt.  Maybe I'm wrong.

14         MR. ROMNEY:  What they're looking for, Your Honor

15    --

16         MR. BASSETT:  Your Honor -- sorry, I didn't mean

17    to interrupt.

18         MR. ROMNEY:  What they're --

19         THE COURT:  I'll let Attorney Romney finish,

20    Attorney Bassett, and then I'll hear from you.

21         Go ahead.

22         MR. ROMNEY:  What we understand they are looking

23    for is Brown Rudnick's entire file.  And that's our point,

24    Your Honor, is that's too broad.  And we understand.  We're

25    not envious of anybody in this situation.  It will require

1    somebody to look at least some documents and make a

2    determination as to whether they fall within these

3    categories of documents that would result in personal harm.

4           Our understanding is that Brown Rudnick was

5    uncomfortable making that determination.  The debtor

6    certainly asked Brown Rudnick to do that.  It did not demand

7    that Brown Rudnick withhold anything, that in its

8    determination it did not fall within these categories that

9    could be held back.

10          And when it became clear to us that Brown Rudnick

11   was not comfortable making that determination, we offered as

12   an accommodation, and we being the debtor and my firm on

13   behalf of the debtor, offered to make the review for the

14   parties as expeditiously as we can.

15          And I will say, despite all the allegations of the

16   debtor looking to slow things down, we have responded to

17   expedited motion after expedited motion and in many cases,

18   particularly recently, worked this out.  We are acting in

19   good faith.  We are not trying to slow this down.

20          And if the parties and/or the Court determine that

21   the most expeditious and most equitable way to deal with

22   this issue is for the debtor and Zeisler & Zeisler, as its

23   counsel, to make this determination, we will, as we've done

24   with everything since we stepped into this case, and that's

25   not to suggest that debtor's counsel was not expeditious

1    before we stepped into this case, but we will review the

2    documents expeditiously.  We will get them to the trustee.

3              And my belief, again, it's somewhat speculative

4    because I haven't seen the documents, but my belief is the

5    trustee is going to get the vast majority of what Brown

6    Rudnick has.

7              I would think that Brown Rudnick could produce a

8    number of these documents comfortably without even sending

9    them to us.  And we're not asking them to send anything in

10   particular.

11             If it is looking at a document and it refers to

12   assets, schedules, things of that nature, I believe Your

13   Honor's order that we agreed to is clear.  And we are not

14   withholding -- we are not directing Brown Rudnick to

15   withhold any particular documents.

16             We are identifying the categories that we believe

17   we have the right -- that the debtor has the right to

18   withhold, and we are offering to assist in any way that we

19   can to eliminate disputes between the trustee, Brown

20   Rudnick, and anyone else, on this issue, and just get this

21   done as expeditiously and efficiently as possible with as

22   little waste of this court's time as is absolutely

23   necessary.

24             THE COURT:  Attorney --

25             MR. BASSETT:  Your Honor, could I be heard?

1          THE COURT:  Just one second.

2          Go ahead, Attorney Bassett.

3          And then Attorney Baldiga would like to be heard

4     too. So go ahead.

5          MR. BASSETT:  Sure.  Again, Nick Bassett from Paul

6     Hastings for the trustee, Your Honor.

7          You know, I'm not entirely sure.  It sounds like

8     Attorney Romney is obviously arguing the merits.  I don't

9     think we've determined that this is -- that the merits of

10    the motion is being heard today, but I did want to respond

11    to some of his comments.

12         First of all, Your Honor, we have been at this for

13    weeks.  We have been trying to do whatever we can to simply

14    get a production of documents from Brown Rudnick.

15         And I will say that Brown Rudnick has been

16    extraordinarily cooperative with the trustee and has done

17    everything I think in their power to get us the documents

18    that we subpoenaed.

19         The problem is that the debtor has not allowed

20    that to happen, at least not in any remotely expeditious

21    manner.  He initially was taking the position that Brown

22    Rudnick should review all these documents and assert

23    privilege, didn't want the debtor and his counsel to have to

24    review them themselves.  That position has now evolved.

25         I don't want to get into the details of a back and

1    forth of who said what during meet and confers.  Suffice it

2    to say we are at a point where we filed the motion, and we

3    filed in on expedited notice, because we need the Court's

4    intervention.  We're not getting these documents under any

5    reasonable time frame and we need the Court to help us do

6    that.

7          A couple of things I would say, just to, you know,

8    clarify why we're seeking this relief and why we are

9    entitled to it is, first of all, Your Honor, in the

10   (indiscernible) motion that was entered on September 14th,

11   again, that's at ECF 856, it contains a presumption that all

12   these documents in Brown Rudnick's files, this is paragraph

13   6, a presumption that the privilege associated with those

14   documents has transferred to the trustee.

15         The only very limited carve out for that is set

16   forth in paragraph 7 where if the debtor can demonstrate

17   that there is personal harm that would result to him if the

18   document is disclosed, he can follow procedure to have those

19   documents logged.

20         Notably, and this came up during the negotiation

21   of this order, I remember having an exchange with Your Honor

22   about it, there was specifically inserted into this order a

23   time period through which -- pursuant to which the debtor

24   would have to log any document that he was seeking to

25   withhold as privileged because they would cause personal

1    harm.

2              And what it says is, and this is in paragraph 7,

3    the debtor's counsel shall, within ten days of the

4    applicable production deadline, log the documents.

5              The production deadline, under the Brown Rudnick

6    subpoena, was on September 16th.  Ten days from then was

7    September 26th.  The debtor did not come to this court

8    asking for more time to produce a log.  He had the

9    opportunity to do it.  He didn't do it.  He no longer has

10   that opportunity under the Court's order.

11             Notwithstanding that, to be as reasonable as we

12   could possibly be to try to resolve this issue without court

13   intervention, with all parties acting reasonably and

14   cooperatively, we told the debtor, look, if you are

15   concerned about the possibility that a document might be

16   produced that could give rise to personal harm, that you

17   think might be privileged within the narrow scope of the

18   privileges order, we will make it abundantly clear that you

19   can exercise your claw back right under Rule 26.

20             We built that into the proposed order that we

21   filed.  And the concept is very simple, it's that in order

22   to make sure we get the documents (indiscernible), Brown

23   Rudnick can produce them, the debtor won't be prejudiced

24   because he could, if he sees documents produced that he

25   thinks give rise to personal harm, he can exercise his claw

1    back rights and he won't be prejudiced because the trustee

2    is not able to share documents that he receives that are

3    privileged with other parties.  That's clear under the

4    privileges order.

5          Unfortunately, the debtor rejected that proposal.

6    And we are where we are.  We are at an impasse and we need

7    the Court to intervene.  We need the Court to intervene and

8    help us as quickly as possible.

9          Again, that's why we originally wanted this motion

10   heard today, but we're happy to have it heard on Friday.

11         THE COURT:  Thank you, Mr. Bassett.

12         Mr. Baldiga?

13         MR. BALDIGA:  Thank you, again.  William Baldiga

14   for both Brown Rudnick and Verdolino & Lowey.  And I think

15   all of these arguments apply to both firms equally.

16         First, just on scheduling, Your Honor, I leave

17   tomorrow morning for a one-week vacation, so Friday -- I

18   think circumstances have shown that I'd really like to be

19   here when this is argued.  I think in reality we're in the

20   middle of the argument in any event, and so I'm prepared to

21   contribute to the argument, most importantly answer whatever

22   questions the Court may have.

23         But I wanted to give an example, without telling

24   any tales out of school, because it's -- the facts are in

25   evidence already from prior filings of the example or type

1    of thing that we're dealing with.

2           We very much respect the fact that there have been

3    issues from day one of our work that could implicate the

4    debtor's personal harm.  The case was filed, as set forth in

5    many pleadings, to avoid the debtor's incarceration.  The

6    debtor has testified that if incarcerated he believes he

7    would be killed.

8           So, for example, a great deal of our work dealt

9    with PAX's motions to dismiss, to appoint a trustee, for

10   relief from stay and so forth.

11          If relief from stay were granted, I think the

12   contemplation was by many parties that the debtor could be

13   incarcerated, in the debtor's view would be killed.  I read

14   being killed or significant risk of being killed as within

15   Section 7.

16          That being said of our many feet of documents,

17   what then would be within paragraph 7?

18          We have no idea whether any of that would be

19   considered and for good reason.  If paragraph 7 were drafted

20   to say Brown Rudnick or Verdolino & Lowey take a good guess

21   at that, we would have come in and protested immediately.

22          We have no ability to today guess what the debtor

23   believes and the debtor's good faith would be implicated by

24   that sentence, which is why we absolutely respect and agree

25   that the order was drafted by consent and entered by the

1    Court the way it is.  It is the debtor's belief.

2            I can't, and I'm as close to this as -- closer

3    than anybody else at Brown Rudnick.  I would not have the

4    ability to look at our files and substitute my belief for

5    the debtor's belief.  We've had no contact with the debtor

6    himself for more than three months.  I wouldn't know what

7    the debtor now believes about anything.

8            And so I don't have the ability to implement this

9    order in a manner that substitutes our belief, especially

10   about issues as critical as the debtor's personal safety, as

11   reflected here.  And it puts our firm not just at risk, but

12   -- and it's not just about risk, but it's doing what the

13   order provides.

14           So I couldn't -- if the Court sent me back to,

15   well, do your best, decide what puts the debtor at personal

16   harm or not or risk of personal harm, I wouldn't know where

17   to start.  And I think that's --

18           So we don't have a dispute with the trustee.  We

19   don't have a dispute with the debtor.  They clearly have a

20   dispute with each other.

21           I will say that our files are pretty much ready to

22   go.  We're still searching some search terms and refining

23   them with the trustee and so forth, but it is the entirety

24   of our file with very minor exceptions for internal

25   management documents.

1          Verdolino & Lowey's files are entirely ready to

2     go.  Their work was almost entirely in connection with the

3     preparation of the schedules and statement of affairs, which

4     are indeed very responsive to the trustee's scope of

5     requests.

6          So we're happy with -- happy is not the right

7     word.  We're prepared to do whatever the Court tells us to

8     do, but we're not prepared to substitute our own judgment

9     for what the order now provides because we don't think that

10    works and it gives rise to risk to the debtor perhaps if we

11    guess wrong, what would result in personal harm, risk to the

12    estate that we're over-guessing, and risk to the firm if

13    someone criticizes --

14         You know, we do owe obligations to our former

15    client to implement the orders of the Court and so we need

16    to be directed what to do.

17         And I think this has been argued to the Court,

18    from what I understand over and over already, and I know

19    you've spent a lot of time getting to this order.  I don't

20    have a problem coming back for another hearing, but I

21    wouldn't be able to do that until a week from tomorrow at

22    the earliest.  Thank you, Your Honor.

23              THE COURT:  Okay.  Thank you.

24              MR. BALDIGA:  Does the Court have any questions

25    about anything I've said?

1          THE COURT:  Well, I think -- yes, I do actually.

2          I want to make sure I understood what you just

3     said which is you would like an order entered directing what

4     should be turned over to the trustee because you're

5     concerned that if you turn over something without such an

6     order, that you might be substituting your judgment for the

7     debtor's judgment about whether he would suffer personal

8     harm?

9          MR. BALDIGA:  Yes.  That is one of our concerns.

10         Because this isn't the run of the mill case.  It

11    hasn't been from day one in many respects.  But risk of

12    personal harm has been front and center to an awful lot of

13    our work.

14         When the debtor comes in and says my fear is

15    incarceration and death, and that drives much of this case,

16    we have to take that seriously.

17         So this first sentence of paragraph 7 has to mean

18    something.  And it could cover a lot of our files or it

19    cover none of our files.  We don't know, including because

20    we don't know what the debtor today believes in good faith.

21         THE COURT:  Okay.

22         MR. BALDIGA:  Which is the language the parties

23    chose to use.

24         THE COURT:  I understand.  I do understand that.

25    And that was a subject of discussion at the hearings that we

1    had on that order.  So I do, I know that it's there.  And I

2    know that -- that doesn't mean that we all agree what it

3    means, but I understand.

4              MR. BALDIGA:  But it's not my place to say that.

5              THE COURT:  I understand.  I understand your

6    position.

7              MR. BALDIGA:  Any other questions at this time,

8    Your Honor?

9              THE COURT:  No.  But I appreciate that.  Thank

10   you.

11             MR. BALDIGA:  Thank you.

12             THE COURT:  Attorney Bassett?

13             MR. BASSETT: Yeah, Your Honor.  I apologize.  Nick

14   Bassett from Paul Hastings.

15             I just wanted to clarify, and Mr. Baldiga can

16   correct me if I'm wrong, but I think Brown Rudnick would

17   support the entry of the proposed order that we attached to

18   our motion.

19             So, again, Mr. Baldiga can correct me if I'm

20   wrong, but I think if that order were entered, it would

21   resolve their concerns that he had in particular.

22             THE COURT:  He's going to come forward and let you

23   know whether he agrees with what you just said.

24             MR. BALDIGA:  Yes, Your Honor.

25             I've spoken with Mr. Bassett about some very minor

1     wording changes, the addition of one phrase.  And instead of

2     saying authorized to say authorize and directed.

3          But if -- but basically, yes, we are satisfied --

4     well, we have no problem with the Court's entry of the

5     proposed order with some very minor wording changes.

6          THE COURT:  Okay.  All right.  Thank you.  I

7     appreciate that.

8          MR. BALDIGA:  Thank you.

9          THE COURT:  All right.  Attorney Bassett, so you

10    heard Attorney Baldiga, correct?

11         MR. BASSETT:  I did, Your Honor.  Thank you.

12         THE COURT:  So he's looking for some minor word

13    changes though to the order assuming it gets entered.  And

14    I'm not ruling on this today.  Remember, all I'm ruling on

15    today is whether there's an expedited -- we're going to have

16    an expedited hearing.  Okay?

17         And I did see the request for the expedited

18    hearing, but I also saw the objection that was filed.  So I

19    wanted to hear what everyone had to say today considering

20    that we have several issues that are unresolved, this is one

21    of them.

22         So with regard to the motion to expedite the

23    hearing, Attorney Romney, you just stated that you wanted to

24    be able to look at the documents and you need time.

25         But regardless of that, when we set a hearing on

1    the -- on the motion, you're going to have an opportunity to

2    file an objection.  The problem is, from your perspective, I

3    think, that you might not have as much time as you would

4    like.

5              The problem from the Court's perspective is that

6    the 2004 subpoena issue has been addressed several times and

7    agreed that there has been consent orders entered, but there

8    has to be a point where we have to go forward one way or

9    another, you know, whether or not -- I don't know how the

10   Court's going to rule.  Somebody's not, if I have to rule,

11   not going to like it.  And who knows what's going to happen

12   at that point.

13             But with regard to an expedited hearing, the

14   arguments that have been made that there has been a

15   substantial amount of time where compliance has not

16   occurred, where -- where it's now October 4th and we're

17   still -- we're not even -- we don't even have a hearing

18   scheduled yet on this issue --

19             MR. ROMNEY:  May I be heard on the delay issue,

20   Your Honor?

21             THE COURT:  I don't -- when I say -- did I use the

22   delay?  Did I use the word delay?  I think I said there

23   hasn't been compliance.

24             MR. ROMNEY:  May I be heard on the passage of time

25   issue?

1        THE COURT:  Sure.

2        MR. ROMNEY:  Your Honor, as I think everyone

3    agrees and has pointed out, the privilege order entered on

4    September 14th, on September 21st, that was seven days

5    later, I had lengthy calls with several people from Paul

6    Hastings as well as Attorney Linsey.  I had separate,

7    extensive calls with Attorney Baldiga and Attorney Axelrod

8    from Brown Rudnick.  Seven days later is when we said in

9    order to break this impasse, we will review the documents.

10       I do not believe that seven days in the context of

11   complex litigation and the number of issues going on in this

12   case at any one time is -- can fairly be said anything

13   remotely akin to an undue delay.  Seven days.  Sorry.

14       The following day, Attorney Baldiga sent me an

15   email after my understanding was that Paul Hastings was not

16   willing to allow us to undertake this review and move it

17   along.  And I said to him we've been trying to assist.

18   We're trying to break an impasse here.  But we don't have a

19   deal.  And we can only review these documents if the trustee

20   consents.  So comply with the subpoena to the best of your

21   ability.  That is the opposite of what we are being accused

22   of doing.

23       We are saying comply.  The best of your ability.

24   You have your ethical rules.  You have your rules under the

25   -- you have your obligations under federal rules.  Comply.

1   Look at the documents like we could.  We're not asking you

2   to hold anything back.  We're not saying you have to review

3   everything.

4          And this is an email so it's not going to be he

5   said, he said, because it was said.  And the things that are

6   being said about the positions I took, they're false.  And

7   that's just the reality.

8          Attorney Baldiga responded to me that evening.  I

9   remember it very clearly because I was working on my couch,

10  home with COVID, working on another matter, and Attorney

11  Baldiga said to me, in an email, what I think we should do

12  is just start excluding categories that we can exclude.

13  We'll get everything else to Zeisler & Zeisler and we'll

14  just get this out on a rolling basis.  And I said is Paul

15  Hastings okay with that?  And he said I believe so.

16         So that seemed inconsistent with what I had

17  discussed with Paul Hastings the day before. So the

18  following day I called Attorney Lindsey and said I had this

19  conversation with you and Attorney Bassett and Attorney Lutz

20  and then I got this email from Attorney Baldiga and they

21  seem inconsistent, so can you get back to me on what we

22  should be doing.  Never got back to me.

23         And here we are.  And my only point, Your Honor,

24  is we can -- Your Honor can obviously enter an expedited

25  hearing and then we can be back here again fighting the

1    merits or we can just be given a reasonable time to get this

2    done and we can spend our time getting documents to the

3    trustee instead of fighting about who said what, who didn't

4    say what, who's trying to delay, who's not, and we can just

5    do our jobs instead of fighting about how we got here.

6    Because it is what it is.

7             That's my humble suggestion, Your Honor.

8             THE COURT:  Well, let me ask you about that

9    suggestion.  You just said so you can do what you need to

10   do.  What is it that you need to do?

11            MR. ROMNEY:  Well, whatever documents Brown

12   Rudnick does not believe that it can produce to the trustee,

13   meaning that there is a colorable basis that there might be

14   harm to the debtor, and I believe that that's what ABA

15   formal opinion 473 says with respect to counsel and former

16   counsel that have been served with a subpoena, which is, if

17   there is a colorable basis, log it and assert the privilege.

18   If there isn't, produce the document.  That's more or less

19   what it says.

20            And we don't believe Brown Rudnick needs to review

21   every document because I think there are going to be a vast

22   majority of documents or a vast number of documents that can

23   just be excluded.

24            You know, the emails about what time should be

25   meet at court, all of these things can be filtered out.  I

1     don't know.  There's ways to sorts these things out with

2     electronic search terms.  Obviously emails with third

3     parties, they're not privileged.  They can be produced.

4            I'm not telling Brown Rudnick -- not that I expect

5     them to listen to me, but we're certainly -- and the debtor

6     is not directing them to withhold anything or not.  They're

7     a sophisticated law firm.  If they're not comfortable

8     producing something, we will look at it and we will do it

9     expeditiously.  And that will solve this problem.  It will

10    give this court one less issue that it needs to deal with in

11    this case.  And we will get it done quickly.

12           And if -- anyone will be free to come into court

13    and say Zeisler & Zeisler has had these documents for,

14    insert time, they're not doing what Mr. Romney said on

15    October 4th they would do.  And hold whoever in contempt of

16    the order that I'm asking you to enter giving us a

17    reasonable time, but that would seem to address everybody's

18    interest and be a fair result.  Because otherwise, I don't

19    know, it's just going to create a mess.

20           We're talking about the attorney/client privilege

21    and we're talking about the attorney/client privilege

22    concerning documents that Attorney Baldiga has just

23    confirmed some of them implicate issues that could be

24    withheld on paragraph 7 of the order, that, yes, the debtor

25    stipulated to, but the trustee stipulated it too.  And

1    what's good for the goose is good for the gander.

2         We now have an order.  It's --

3         THE COURT:  Let me just stop you for a second.  I

4    don't think Attorney Baldiga confirmed that there are

5    documents that the debtor could assert personal harm to.  I

6    think what Attorney Baldiga said is he's not going to

7    substitute his judgment for the debtor's judgment.  I think

8    there's a -- that's a distinction that does make a

9    difference.  So I just want to clarify that for the record.

10        Attorney Baldiga just nodded his head when I said

11   that as well.

12        So I'll I want -- all I'm trying to do, Attorney

13   Romney, because there are many, many issues in this case, is

14   just be as clear as possible.  Okay?  So I don't -- Attorney

15   Baldiga didn't say that.  Okay?  He said he's not going to

16   substitute his judgment, nor the firm, or Verdolino & Lowey,

17   for an assertion that the debtor could make.

18        MR. ROMNEY:  Fair enough, Your Honor.

19        There are documents that could -- that somebody

20   could in good faith argue these concern personal harm to the

21   debtor.

22        And I think what the ABA formal opinion 473 says

23   is that if there's a colorable dispute then that privilege

24   can be asserted, privilege should be asserted, and then

25   those documents can be logged, and we can submit those

1    documents to the Court in camera as I believe the stipulated

2    order prescribes --

3            THE COURT:  So what prevents Mr. Baldiga or

4    Verdolino & Lowey from turning over those documents to the

5    trustee right now?

6            MR. ROMNEY:  Absolutely nothing --

7            THE COURT:  Okay.

8            MR. ROMNEY:  -- if that's what they --

9            THE COURT:  So, but -- then why -- why do you need

10   to review them?  I'm not being -- I'm truly trying to

11   understand what's --

12           MR. ROMNEY:  I have --

13           THE COURT:  I'm not ruling on anything.  We

14   haven't even set an expedited hearing.  I'm just trying to

15   understand the point that you're making.

16           MR. ROMNEY:  Fair enough.

17           The point that I'm making is that we are not

18   saying that we need to review documents.  And I want to be

19   very clear about that.

20           What we are saying is we are -- the debtor has

21   said and asked Brown Rudnick to make a determination as to

22   what should be produced and what shouldn't.

23           My understanding is Brown Rudnick is not

24   comfortable doing that.  And I'm saying that with any

25   judgment one way or another.  Is that they will not.

1          And so because we were in a situation where Brown

2     Rudnick was not producing and we did not seem to be getting

3     anywhere in terms of resolving the issue of Brown Rudnick

4     not producing, and the debtor not be willing to say I waive

5     my right to assert privilege over all of these documents,

6     that's where we offered to step in and review documents.

7     And the debtor would then say there's no assertion --

8     privilege assertion here.  These can go.  And these we're

9     logging.  That we were offering to do that.

10         If Brown Rudnick is comfortable responding to this

11    -- or if Brown Rudnick will respond to this subpoena, that's

12    what we've asked it to do in an email on September 21st.

13         THE COURT:  Okay.  So let's just take a moment.

14         Brown Rudnick, through Mr. Baldiga, said that he

15    would be bound by the order that the trustee has asked enter

16    with some minor changes to the language.

17         You're now -- we've now spent at the beginning of

18    this hearing very -- I think you all worked hard to come up

19    with a protective order, right?  It all relates to all this.

20         So what would be the issue of having the documents

21    turned over to the trustee and then you asserting whatever

22    you want to assert, whatever you feel you can assert, under

23    this protective order and the privileges order?

24         MR. ROMNEY:  The issue is that we already

25    negotiated a stipulated order which has a procedure by which

1    most privileged documents should go to the trustee, but

2    there are to be some documents that are to be withheld.

3           THE COURT:  Where does -- I don't think it says

4    that quite.  I understand that it says that you can be

5    concerned about a good faith -- in a good faith basis to

6    believe personal harm.

7           I guess we'd have to pull it up.  You know, that's

8    one of the problems.  When we talking -- we've had -- how

9    many orders do we have now?  Quite a few.

10          MR. ROMNEY:  It's docket 856, Your Honor.

11          THE COURT:  856.  Let's pull up 856.  It may take

12   a minute, but let's pull it up and look at it.  Because I

13   thought what it said -- well, I'm not going to say anything.

14   Let's pull it up and we'll read it.  Okay?

15          (Pause)

16          THE COURT:  And what paragraph is it, Attorney

17   Romney, when we get it pulled up?

18          MR. ROMNEY:  I believe that the -- paragraphs 4

19   and 7 are the most applicable.

20          THE COURT:  Okay.  So let's scroll down when you

21   can to paragraphs 4 through 7.  Let's stop at paragraph 2

22   for a minute.

23          So, Attorney Romney, you were arguing earlier

24   about documents that may go to dischargeability of debt

25   issues.

1          MR. ROMNEY:  Correct.

2          THE COURT:  My understanding of paragraph 2 was

3    none of those documents are being requested because the

4    trustee has the exclusive control of any attorney/client

5    privilege, work product doctrine that could otherwise be

6    asserted by the debtor's counsel under any applicable law,

7    including common interest or joint defense privileges

8    concerning, one, assets, right?  Two, go to the next page if

9    you would, please, top of page 3, the debtor's financial

10   condition.  And three, activities related to the

11   administration of the estate.

12          So my understanding, and I thought we talked about

13   that fairly extensively, but I could be wrong, but my

14   understanding is that has nothing to do with the non-

15   dischargeability issues because, as Mr. Henzy's argued, I

16   believe, and you can certainly correct me if I'm wrong, but

17   that the trustee doesn't step into the shoes of Mr. Kwok in

18   the non-dischargeability actions.  And so, therefore, the

19   trustee agreed, through this order, to carve that out, to

20   not fight that fight another day if it's even going to be

21   fought, right?

22          So with regard to the issue of documents that go

23   to non-dischargeability, the trustee's not seeking that.

24   None of the -- none of the subpoenas seek that.  And so if

25   the subpoena document requests don't see anything with

1    regard to production of documents that might go to non-

2    dischargeability of debt, then those documents don't need to

3    be produced.

4             MR. ROMNEY:  But, Your Honor, I don't believe that

5    accurately states what the trustee is seeking from Brown

6    Rudnick.  I believe they're seeking anything in their file

7    regardless of subject matter.

8             And that's our entire point, Your Honor.  Is

9    that's why somebody needs to determine what falls within the

10   category of what should be produced under this order.

11            THE COURT:  But where does it say that?  It

12   doesn't say that.  It doesn't say somebody needs to

13   determine.

14            MR. BASSETT:  Your Honor.  Your Honor, if I --

15            THE COURT:  So you think it says that in

16   paragraphs 4 and 5 and 6?  Is it you want to keep going on

17   it?

18            Hold on.  Is that Attorney Bassett?

19            MR. ROMNEY:  How --

20            MR. BASSETT:  Your Honor --

21            MR. ROMNEY:  Sorry, I apologize.

22            MR. BASSETT:  I agree with Your Honor.  It does

23   not say that.

24            And, in fact, I just want to emphasize this again,

25   as I did at the outset, paragraph 7 of this order, if you

1    would scroll down --

2              THE COURT:  All right.

3              MR. BASSETT:  -- could not be more clear.  There

4    is a very limited ability of the debtor, notwithstanding the

5    presumption that is set forth in paragraph 6, that all of

6    the post-petition documents in the files of Brown Rudnick

7    and their financial advisor, which are the subject of this

8    motion, notwithstanding that the privilege passes to the

9    trustee on those documents, the debtor has a very narrow

10   ability to assert privilege to the extent that he believes

11   documents disclosed to the trustee could result in personal

12   harm.

13             If he has a good faith belief that such personal

14   harm will occur, paragraph 7 says that the debtor's counsel,

15   i.e. Zeisler & Zeisler, shall within ten days of the

16   applicable production deadline here -- as I mentioned, they

17   served a subpoena on August 17th, the deadline for

18   production was September 16th, ten days from September 16th

19   was September 26th -- the debtor's counsel can log those

20   documents.  They did not do so.  Nor did they come to this

21   court seeking relief from that deadline.

22             And, again, this ten day period was specifically

23   negotiated as part of this.  We had a dialogue with the

24   Court and with Mr. Romney where we talked about this and I

25   recall the Court saying we're going to make sure that is a

1    short period of time so there's no delay in this

2    investigation.

3           As it appears that what the debtor is now asking

4    is that we rewrite this order to give them a quote/unquote,

5    "Indeterminate reasonable time in order to complete a

6    privilege log." And that is something that the trustee is

7    not going to agree to. We think it entirely inappropriate.

8    It is rendering (indiscernible) any teeth that this ten day

9    deadline would have. So I think that alone is enough to

10   demonstrate why there's urgency in this relief.

11          That ten day period expired last week. We should

12   have already received any log. We haven't. If we were to

13   let this motion now play out on regular notice, we would be

14   making frankly a mockery of this ten day deadline.

15          The other thing I would say, Your Honor, and I

16   still haven't heard a response to this, is that we have

17   offered to resolve any issue of prejudice to the debtor by

18   allowing the debtor to assert a claw back right over these

19   documents.

20          So Mr. Romney's concern that the documents

21   produced, we don't know, it could go to non-

22   dischargeability, there could be personal harm in there,

23   they will have the opportunity to assert, after the fact, a

24   privilege over a document that's produced, and we can then

25   deal with any privilege issues at that time. So that there

1     would be no harm.  There would be no prejudice.  And there

2     is real urgency here.

3            We're just asking for this order, which we

4     painstakingly negotiated for specific purposes to avoid

5     long, drawn out fights, to be enforced.

6            THE COURT:  Okay.  Thank you.

7            Attorney Romney?

8            MR. ROMNEY:  Your Honor, it is absurd to read the

9     order as requiring the debtor's counsel, which it doesn't

10    say Zeisler & Zeisler, it says the debtor's counsel, it is

11    absurd to require anybody but the person who is in -- who

12    received the subpoena who is or was the debtor's subpoena

13    and that is in possession of the documents to create the

14    privilege log.

15           Zeisler & Zeisler and nobody in the universe other

16    than Brown Rudnick can create a privilege log of documents

17    within ten days or any days unless they have the documents.

18    It's an absurd reading of the order.

19           And to suggest that we would agree that the

20    debtor's current counsel in this bankruptcy, meaning Zeisler

21    & Zeisler, would be creating privilege logs regarding

22    documents in the custody of parties other than us within ten

23    days of the compliance date of the subpoena, it's physically

24    impossible to create a privilege log concerning documents

25    that one doesn't have custody or control over.

1          And the record is clear from the hearings, plural,

2     on the negotiation of this order, that the contemplation was

3     that the professionals who received these subpoenas would be

4     applying this order to the documents they were in possession

5     and control over.  It was one of the responses to the

6     trustee's concern that it would -- that the debtor would

7     have some carte blanche right to just start holding back

8     documents.

9          And it was very clearly stated on the record,

10    which is clear evidence of our intent, that, no, this is to

11    give direction to the more than 20 professional firms that

12    have received subpoenas to give them some guidance due to a

13    conflict of authority as to how this issue should be handled

14    in an individual debtor's case.

15         We just haven't delayed logging documents that we

16    don't have.

17         With regard to the trustee's proposal, all they're

18    saying is that they're bound by the Federal Rules of Civil

19    Procedure.  That's not a proposal.  That's not an offer of

20    compromise.  It is what it is.  They're bound by the Federal

21    Rules of Civil Procedure, just like very person and

22    professional that is subject to this court.  That's what

23    their proposal is, is give us everything we want.  And if

24    you want to raise an issue later, you can assert your rights

25    under Federal Rule 26.  I fail to see how that is any sort

1    of good-faith compromise.

2              THE COURT:  You already did assert your rights

3    under Federal Rule --

4              MR. ROMNEY:  The claw back provision of Federal

5    Rule 26.

6              THE COURT:  No.  But you already did.  This

7    resulted in this order.  You objected to the motion that was

8    filed with regard to the privileges and the Rule 2004

9    subpoenas.  This order, your client already objected to it.

10   This was a result -- this was an agreement reached after

11   that objection was raised.

12             MR. ROMNEY:  And --

13             THE COURT:  And you don't -- I don't think that

14   this order -- well, I'm not going to say anything more.  You

15   did already object.  You did.  And that's what resulted in

16   this order.

17             MR. ROMNEY:  And we are saying apply this order --

18             THE COURT:  Okay.

19             MR. ROMNEY:  -- to these facts --

20             THE COURT:  So --

21             MR. ROMNEY:  -- then there's no need for another

22   order.

23             THE COURT:  So then according to Attorney Bassett,

24   if you apply this order, then it says -- remember this is

25   covered by a trustee privilege, which is a defined term, and

1    that concern the investigation topics, which is also a

2    defined term, has nothing to do with non-dischargeability,

3    nothing, because that's not a defined -- that's not an

4    investigation topic.

5            MR. ROMNEY:  This order isn't the subpoena, Your

6    Honor.

7            THE COURT:  Hold on.  Hold on, Attorney Romney.

8            It may not be the subpoena, but it's what is

9    applied to the subpoenas.  That's what we had the hearing

10   about.  That's what it was all about.  You came in and

11   objected to subpoenas.  You said that it was all broad and

12   overreaching and -- I mean, understandably that you have the

13   right to do that.  There's no problem with that.  But this

14   is the order that resulted from that argument.

15           This is the order.  And it says that within ten

16   days of the applicable production deadline, subject to the

17   right to make a good -- a motion in good faith to the Court

18   for a reasonable extension of time, which that hasn't

19   happened, log all such documents in accordance with the

20   requirements of the Local District Court Rule 26 and/or

21   identify all such documentary information necessary to

22   support the claim of privilege, including with sufficient

23   information to prima facie identify the basis for asserting

24   the potential for personal harm.

25           So what I'm -- what my question was is so what's

1      the problem?  And I'm trying to understand it.

2              So if Brown Rudnick and Verdolino & Lowey and

3      everyone else that's been subpoenaed turns over this

4      information that's responsive to those topics, the

5      investigation topics, a term of art that was agreed to by

6      the parties, then what's the problem?

7              You still can assert that some of it is -- could

8      result in personal harm.  I'm trying to read the exact

9      language of the -- to the extent that the debtor believes in

10     good faith that particular documents covered by the

11     privilege in the investigation topics could result in

12     personal harm to the debtor.  You could still do that.

13             The trustee's already said he's not going to show

14     them to everybody else.

15             Isn't that what you said, Mr. Despins?  Isn't that

16     the agreement?

17             MR. DESPINS:  Yes.

18             THE COURT:  The agreement is you're not giving

19     these to anybody else?

20             MR. DESPINS:  Yes.  And we have -- we have no --

21             THE COURT:  This is just your investigation?

22             MR. DESPINS:  We have no power to waive the

23     privilege under the order.

24             THE COURT:  You're just -- it's just his

25     investigation.  He's not sharing these -- when -- these

1    documents aren't being put into evidence.  They're not being

2    testified to.  They're not -- there's nothing yet.  This is

3    to have his investigation begin, which he hasn't been able

4    to do, for whatever reason.  I'm not -- let's just be --

5    let's just state a fact.

6            The trustee has -- according to the documents that

7    have been submitted to this court, and I haven't seen

8    anything to the contrary, there haven't been compliance with

9    the subpoenas.

10            So there was this order entered back on September

11    14th to address these issues and to address the privilege

12    issue and the investigation topics.

13            Then there was a hearing today on a protective

14    order.  And you all come through and you have a protective

15    order that sets forth a mechanism with regard to specific

16    information that is only going to be shared with the trustee

17    and counsel to the committee at this point and then anybody

18    who signs a declaration.

19            So, again, this is all about protection, right?

20    It's all about protecting your client's rights and that's

21    what we're trying to do.  We're trying to protect your

22    client's rights.

23            But there also comes a point where there has to be

24    production.  And the production is -- should have already

25    taken place according to the order entered on September

1      14th.

2              MR. ROMNEY:  Your Honor, this order contemplates a

3      process for the application of documents that are otherwise

4      responsive to a subpoena to be produced or not.

5              Yes, nobody has produced a privilege log within

6      ten days of the compliance date.  But my point, Your Honor,

7      is the debtor couldn't possibly have done that because the

8      debtor doesn't control the documents.  They're not documents

9      in the debtor's control.

10             And, yes, we expected this order, document 856, to

11     be applied to the subpoena that was served on Brown Rudnick

12     and every other professional.

13             What I'm understanding is that Brown Rudnick is

14     uncomfortable, incapable, unwilling, I don't want to put

15     words in their mouth --

16             THE COURT:  I think Mr. Baldiga said it clearly.

17     He is not going to be put in the position of substituting

18     the judgment of Brown Rudnick for the debtor as to what the

19     debtor believes in good faith that particular documents or

20     information that are covered by a trustee privilege and that

21     concern the investigation topics could result in personal

22     harm to the debtor.  I don't think he said anything other

23     than that.  That's what he said.

24             MR. DESPINS:  Your Honor, it's very simple.  The

25     debtor has sued at least four firms for malpractice.  They

1   want cover from Your Honor.

2                THE COURT:  I understand.

3                MR. DESPINS:  That's all this is about.

4                THE COURT:  But I understand that.  Unfortunately,

5   I do understand that.

6                So I hear what you're saying, Attorney Romney, but

7   right now, first of all, I'm not ruling on anything.  I'm

8   just going to set a hearing.  Whether I'm going to set it

9   right now before we end this hearing or I set it when I go

10  back and look at documents again, but there's going to be a

11  hearing set on the motion, the underlying motion.  Okay?

12               We've now got -- we've now got three orders, the

13  governance order, the privileges and investigation topics

14  order, and, based upon everyone's representations already

15  made on the record today, there will be a protective order.

16  That governs the protections of the parties in the case.

17  Otherwise, we're not going to have a trial on these issues.

18               This is -- the trustee was appointed to

19  investigate the affairs of the debtor.  One of the reasons.

20  It states it clearly in the decision which was not appealed

21  by your client.  I know you weren't the lawyer.  I'm not

22  saying that.  But it wasn't appealed.  The appointment of a

23  Chapter 11 Trustee was not appealed by Mr. Kwok so there's a

24  Chapter 11 Trustee.

25               MR. ROMNEY:  There is.

1          THE COURT:  And he needs to carry out his

2     investigative duties under the code.  He's attempting to do

3     that.

4          You may disagree.  And I understand that as to

5     what this order says, but I haven't seen anything to the

6     contrary put in front of me that persuades me that this --

7     all these documents should not be produced to the trustee.

8     We're going to have a hearing on that, right?  That's what

9     it's going to be.  It's a motion to compel, right?

10         So we're going to have a hearing.  You're going to

11    argue that, you know -- and I'm not -- you have the right to

12    argue what you think is appropriate.  I'm not suggesting

13    anything to the contrary.

14         But the point is the subpoenas were served in

15    August after, by the way, being on -- and I'm not saying

16    that anyone had to do anything, because they don't under our

17    local rules, but parties were already on notice of what the

18    subpoenas were seeking before they were ever served because

19    that's how our process works in the 2004 examination.  The

20    subpoena gets attached to the motion, the form of the

21    subpoena.  And so the subpoena who is -- everybody that

22    received the motions received the subpoena.

23         Now, it wasn't a subpoena that was enforceable

24    because it hadn't been served yet, but everyone was on

25    notice as to what -- everyone that was served was on notice

1    as to what was going to be in the subpoena when it was

2    served on them, whatever the parties may be.  Okay?

3            Then we get to the point where service of the

4    subpoenas are made.

5            According to Attorney Bassett, it appears that's

6    true, but I'm just, I could be wrong about the date, but it

7    appears all of the subpoenas were served no later than

8    August 14th.  Under the Federal Rules of Civil Procedure

9    that requires compliance by September 14th.

10           You objected to the subpoena on behalf of Mr.

11   Kwok, and maybe on behalf of others, I don't recall, but you

12   objected and you asked for -- you said it was too broad --

13   you know, whatever, you made objections under the Federal

14   Rules of Civil Procedure.

15           Then you worked with the debtor's counsel, I mean,

16   the trustee's counsel, excuse me, and the trustee, and you

17   produced this agreed upon order.  I'm not going to -- I'm

18   not going to have hearings about what the agreed-upon order

19   means.  It is what it is.  It says what it says.

20           So I don't -- I still don't understand, with all

21   the protections in these, now it will be the third order,

22   how your client still can't -- is going to be harmed if

23   Brown Rudnick, Verdolino & Lowey, and any other professional

24   or any other party that was subject of the subpoenas, the

25   three groups of subpoenas, how your client's going to be

1    harmed.  He's still got protections.  He can assert whatever

2    he wants to assert.

3              MR. ROMNEY:  And one of those protections is the

4    right to assert privilege with respect to a narrow category

5    of documents.

6              THE COURT:  What narrow category?

7              MR. ROMNEY:  Documents, the disclosure of which,

8    could result in personal harm to the debtor.

9              THE COURT:  Okay.  So when Mr. Despins and you and

10   every -- I'm not saying just you, I know it was negotiated

11   with many people -- the topics were investigation topics,

12   assets.  Which by the way your client already disclosed when

13   he filed his schedules and statements of affairs, so he put

14   all that on the table.

15             There's no expectancy of confidentiality or

16   anything with regard to assets that your client has already

17   disclosed.  Okay?  There's case law on that.  How can there

18   be an expectancy when you voluntarily come to the Court and

19   you disclose all these assets?  Right?  One of which is the

20   suit in London.  The trustee had been attempting to get

21   information about that and has been not successful in doing

22   that.  Okay?

23             Your client made his decision.  With that

24   decision, comes consequences.  One of the consequences is

25   that information -- and you've already agreed that all post-

1    petition information is -- the trustee holds the privilege.

2    You've already agreed to that in this order.

3              MR. ROMNEY:  We have not, Your Honor.

4              THE COURT:  That's -- well, then, let's go back to

5    the beginning of the order.  Let's go back to paragraph 1.

6              MR. ROMNEY:  Paragraph 6 is what governs the

7    documents in the possession of Brown Rudnick and --

8              THE COURT:  I'm not talking about just Brown

9    Rudnick, Counsel, Mr. Romney.  I'm talking about everybody.

10             So can we go back to paragraph 1 on ECF 856,

11   please, scroll up, please.  Thank you.

12        (Pause)

13             THE COURT:  So the first line, the first sentence

14   that has many commas in it, but it says, upon the motion, in

15   his capacity as trustee, for entry of an order pursuant to

16   several sections of the bankruptcy code, including 521, 541

17   and 1108, and the Court's orders granting the trustee's

18   motions for examinations confirming that the trustee owns

19   and controls the attorney/client privilege, work product

20   privilege and other privileges -- I don't have to read it

21   all -- but you're already --

22             Keep scrolling down a little bit, please.  Keep

23   going.  Stop if that -- right there, please.

24             Paragraph 2, you've agreed -- you agreed to this.

25   The trustee has exclusive control of any attorney/client

1    privilege or work product protection that could otherwise be

2    asserted by a debtor's counsel concerning what I just

3    already said, the assets, the administration of the estate.

4           Go to the next page, if you would, please, page 3.

5    I'm sorry.

6           The financial condition of the debtor.  Any

7    activities related to the administration of the estate,

8    including, without limitation, the preparation of schedules

9    and the preparation of the declaration of Mr. Kwok.

10          So I don't understand the problem.  What could

11   possibly be in those documents that could cause personal

12   harm to your client that he already hasn't disclosed in this

13   case?

14          MR. ROMNEY:  The documents that are referred to in

15   the subpoena served on Brown Rudnick that are not enumerated

16   in paragraph 2.  That's exactly our point, Your Honor.

17          THE COURT:  What documents are those?

18          MR. ROMNEY:  Nobody's made that determination.

19          THE COURT:  Tell me what they are, Attorney

20   Romney.  Tell me what they are.

21          MR. ROMNEY:  I don't have Brown Rudnick's files.

22          THE COURT:  Well, you have the categories, so what

23   category is objectionable?

24          MR. ROMNEY:  The documents hypothetically that Mr.

25   Baldiga referenced at the beginning of this hearing or the

1    middle of this hearing, whenever it was, where the debtor

2    was discussing in theory his fear of going to jail and that

3    he would be assassinated in jail.

4              THE COURT:  That's not the -- that's not included

5    in the investigation topics --

6              MR. ROMNEY:  And who's going to --

7              THE COURT:  -- or the administration of the

8    estate.

9              MR. ROMNEY:  That's precisely my point, Your

10   Honor.  Somebody needs to determine what documents in the

11   Brown Rudnick file pertain to the debtor's fear of being

12   assassinated as distinguished from the assets of the estate.

13   That's all our point is.  And our view is that it should be

14   Brown Rudnick because they are competent and they can

15   interpret this order.

16             THE COURT:  Well, then, what's the problem?  They

17   are going to turn it over.  They're going to turn it over,

18   so I don't understand your problem.

19             MR. ROMNEY:  Turning -- they're proposing to turn

20   everything over, both the documents in paragraph 2 --

21             THE COURT:  No, they're not.  I think Attorney

22   Baldiga said there's things that are -- we're going to take

23   out of the file.  We're almost ready to.  And he said

24   Verdolino & Lowey is ready.  He didn't say he was going to

25   turn over every single document.  That's not what he said at

1    all.

2           Am I wrong, Attorney Baldiga?  You didn't say

3    that.  You said you were reviewing the file.  You're taking

4    out documents and you're taking out things that relate to

5    the firm's administration, or whatever, and that you're not

6    turning over the whole file.

7           MR. BALDIGA:  Thank you for the opportunity to

8    clarify.

9           We have very few documents that relate to the

10   internal administration of the firm.  I was the CEO of the

11   firm for most of the period here.

12          So there are certain things -- if we -- that have

13   nothing to do with the administration of the estate, but the

14   firm.  So the word Kwok would show up on our lists of

15   accounts receivable that we give to the bank for example.

16          THE COURT:  Certainly.  Yeah.  That's not --

17          MR. BALDIGA:  Okay.  Exclude those.

18          THE COURT:  That's not -- that's not part of the

19   subpoena.

20          MR. BALDIGA:  I don't think anybody has any

21   problem --

22          THE COURT:  Yeah.

23          MR. BALDIGA:  -- with that type of thing because I

24   get a lot of emails that others wouldn't.

25          We were not engaged to work on any of the

1    dischargeability matters, so that's off the table.

2              THE COURT:  So you don't have any -- you don't

3    have any documents in your files that relate to the

4    dischargeability matters?

5              MR. BALDIGA:  Well, I want to be clear, an awful

6    lot of our work had to do with PAX.  I'm just using that as

7    an example.  That's responsive.  PAX was -- PAX is the

8    creditor that had the proceedings that would have resulted

9    in the incarceration of Mr. Kwok, so -- and so -- and later

10   filed --

11             THE COURT:  But you don't have any of PAX's

12   documents.  You only have your own documents.

13             MR. BALDIGA:  No.  But what I mean is -- so the

14   entirety of our files, with the internal firm administration

15   exception that no one cares about, the entirety of our files

16   and Verdolino & Lowey's, fall within investigation topics.

17             Because we did not work on dischargeability

18   matters, there's one other thing that would need to be

19   clarified.  We were engaged three days before the petition

20   was filed.  Of course some period of time, but very short.

21             I have asked the parties to, with respect to us,

22   agree that since this order is phrased post-petition/pre-

23   petition, given that our work only has three pre-petition

24   days relating to the commencement of the case, that that be

25   clarified so that it's all included in one.  Because it

1     doesn't make any sense to have two separate protocols for us

2     at least.  Verdolino & Lowey was only post-petition.

3              So using PAX as an example, because I think it's

4     important, everything we have that relates to PAX at all is

5     within investigation topics.  PAX was threatening

6     incarceration and PAX later filed an objection to discharge.

7              So it depends on how the question is asked.  Did

8     we work on the dischargeability matter?  No.  Did we work on

9     everything to do with PAX's claims?  Yes.  On the basis of

10    that information, did PAX later file an objection to

11    discharge?  Yes.

12             THE COURT:  I don't think it's an objection to

13    discharge.  I think they filed an objection to the

14    dischargeability of their debt as opposed to -- yeah.

15             MR. BALDIGA:  Yeah.  I'm sorry.  As to their

16    claim, yes.

17             THE COURT:  Yes.  Okay.  That's fine.

18             MR. BALDIGA:  And did they threaten incarceration?

19    Yes.

20             So in fairness the entirety of our files falls

21    within section 2 of this order, investigation topics.

22             What we don't know is what the debtor would now

23    believe as part of those files would be subject to section 7

24    determination as to the current good-faith belief as to

25    personal harm.

1          THE COURT:  Understood.

2          MR. BALDIGA:  So I want to make it clear in that

3     regard.

4          THE COURT:  Right.  And so my question is so why

5     can't those documents all be turned over to the trustee and

6     then the debtor can make whatever claims that they want?

7          MR. BALDIGA:  We have no argument against that.

8          THE COURT:  Right.  No.  No.

9          MR. BALDIGA:  That's not our dispute.

10         THE COURT:  I understand.  I understand.

11         MR. BALDIGA:  Yeah.

12         THE COURT:  Okay.  I understand your point.  But

13    what I'm trying to ask Attorney Romney is he seems to think

14    that -- at least maybe I'm misunderstanding him, but it

15    seems to me what he's saying is he doesn't want you to turn

16    those over to the trustee until he looks at them and then

17    makes a determination.

18         MR. BALDIGA:  I don't want to speak for Mr.

19    Romney.

20         THE COURT:  Right.

21         But isn't that what you're saying, Attorney

22    Romney?

23         MR. ROMNEY:  No.

24         THE COURT:  Okay.  Then what are you saying?

25         MR. ROMNEY:  What I'm saying is that paragraph 7

1    refers to documents that both are covered by a trustee

2    privilege and concern the investigation topics and could

3    result in personal harm to the debtor if disclosed to the

4    trustee.

5           What I'm saying is given that there are documents

6    that it appears concern -- that are covered by a trustee

7    privilege and that are concerned investigation topics,

8    paragraph 2, and that could result in personal harm to the

9    debtor, somebody --

10          THE COURT:  How could --

11          MR. ROMNEY:  -- it does not need to be Zeisler &

12   Zeisler -- we've asked that it not be -- but we could agree

13   to do.

14          THE COURT:  How could -- how could anything that

15   Brown Rudnick has with regard to PAX's claim, which is all

16   public record, what would they have of PAX that isn't

17   already public record that would cause in a good -- have a

18   good faith basis for the debtor to believe that it would

19   cause him personal harm?

20          When you say threatened incarceration, PAX didn't

21   threaten incarceration.  They filed documents in a case in

22   state court and a state court judge entered orders with

23   regard to that.

24          So you're saying that none of that -- that's going

25   to be -- it can't be a basis to assert that there's going to

1   be personal harm to the debtor because it's all public

2   record.  And the debtor was represented by counsel in that

3   case.  And the debtor was involved in all of those matters.

4         So what could Brown Rudnick possibly have, or

5   anyone else, with regard to PAX's claim?  PAX didn't turn

6   over their documents to Brown Rudnick.  Brown Rudnick didn't

7   subpoena PAX.

8         MR. ROMNEY:  All internal communicatons that PAX

9   doesn't have that came from the debtor's counsel in these

10  matters, or the debtor, or the debtor's other professionals,

11  or internal discussion among Brown Rudnick about those

12  topics in discussions, none of which are available to --

13        THE COURT:  And that's already been waived by this

14  order.

15        MR. ROMNEY:  -- anyone in the universe except

16  Brown Rudnick.

17        THE COURT:  That's all been waived by this order.

18  You've all agreed that it passed to the trustee on a pre --

19  on a post -- yes, you did.  That's what the first two

20  paragraphs of the -- of the order say.

21        MR. ROMNEY:  Paragraph 7 says notwithstanding

22  anything to the contrary --

23        THE COURT:  Okay.  So then -- all right.

24        MR. ROMNEY:  -- that to --

25        THE COURT:  Go ahead.

1            MR. ROMNEY:  -- that to the extent documents are

2       covered by a trustee privilege and that concern

3       investigation topics, those are the documents in paragraph

4       2.  To the extent that any of those could result in personal

5       harm to the debtor if produced to the trustee, the debtor

6       has a right to assert privilege.  And when the debtor's

7       counsel or former counsel is holding --

8            THE COURT:  No.  The debtor doesn't have the

9       right.  The debtor has to have a good faith belief that he's

10      entitled to the privilege.  He doesn't have an automatic

11      right.

12           MR. ROMNEY:  That is --

13           THE COURT:  So let's make that very clear.  That's

14      what you negotiated.

15           MR. ROMNEY:  That's correct.

16           THE COURT:  We had a whole argument about what

17      that meant.  We had a whole argument about what personal

18      harm meant.  So if -- what personal harm could Mr. Kwok

19      suffer other than being incarcerated, by whom by the way?

20      There's no order by anyone anywhere that's going to put Mr.

21      Kwok in jail.  Not in the United States that anybody's told

22      me about.  So what -- he has to have a good-faith belief.

23           What order is there out there, Attorney Romney,

24      that's going to put Mr. Kwok in jail right now?

25           MR. ROMNEY:  That -- I'm not aware of any.

1      THE COURT:  So then how could he have a good-faith

2    belief that any of the documents that get turned over will

3    result in personal harm to a trustee who's not going to

4    share them with anybody else?

5      MR. ROMNEY:  Your Honor, this order was negotiated

6    and entered under the backdrop of authority that is split,

7    but that clearly recognizes the right of an individual

8    debtor to withhold based on privilege documents that concern

9    certain topics, is harm to the debtor in the case law.

10     I objected to the language personal harm.  I said

11   that I believed it was ambiguous.  I said why?  Because

12   there was a connotation that it related to physical injury.

13     You told me that my objection on that regard was

14   not well-founded, that, as I recall, that you felt personal

15   harm or your interpretation of the word personal there was

16   to the debtor as distinguished from to some other entity.

17   And based upon that interpretation we did not object to the

18   word personal harm.

19     But this order was negotiated under the backdrop

20   of a split of authority.  And what we intended to do was

21   take off the table any argument that the debtor retained all

22   of his privilege, even though there is authority for that,

23   would take off the table that the debtor had no right to

24   assert any privileges, and agree on what the majority of the

25   case law holds, which is a balancing test, but there has

1   been no balancing test done with respect to these documents

2   because no one has undertaken that test.

3           THE COURT:  Well, you haven't asserted that he has

4   a good-faith basis to object to anything at this point.

5           MR. ROMNEY:  I can't --

6           THE COURT:  That's your -- that's your job.  So

7   why haven't you done that?  If you believe he has a good

8   faith basis, then why haven't you done that?  The time to do

9   that was in this order.

10          MR. ROMNEY:  What we did was ask Brown Rudnick to

11  look at this order, look at the information on its files,

12  and make a determination as to whether any of this

13  information fell within it.

14          We don't know what's in their files.  It does.  If

15  Brown Rudnick makes a determination that it sounds like Your

16  Honor has made without seeing the files either that there

17  are no documents that the debtor is allowed to assert

18  control over, then Brown Rudnick can turn over its files and

19  it has nothing to worry about.

20          THE COURT:  I didn't make any determination,

21  Counsel.  I asked you a number of questions with regard to

22  issues that have been heavily negotiated.  And now you're

23  saying something that is not what we discussed when this

24  order entered.  You're saying that, oh, there's no way we

25  could ever comply with paragraph 7 unless we see the

1      documents first.  That's what you're saying.

2                  MR. ROMNEY:  No, I'm not saying that.

3                  THE COURT:  Then what are you saying, counsel?

4                  MR. ROMNEY:  I'm saying that the counsel that has

5      the documents can comply with paragraph 7 by looking at

6      paragraph 7 and knowing what it has.  And I don't think that

7      that requires someone to review every single document

8      necessarily.

9                  THE COURT:  Okay.

10                 MR. ROMNEY:  It could.  It's what I would do if I

11     were counsel served with a subpoena in this order.  But I'm

12     not going to tell any other counsel how to do their job.

13     That's their job to do.  And they were not comfortable

14     applying this order to their files, as I understand it, and

15     so we offered to do it.

16                 And if Brown Rudnick, with control of its files,

17     believes that there is nothing in its files that it can in

18     good faith assert privilege on behalf of its former client,

19     then it has an obligation to the Court and the trustee to

20     turn over those files.  That's a fact.

21                 THE COURT:  Okay.  Anything else that you'd like

22     to be heard on?

23                 MR. ROMNEY:  No, Your Honor.  Thank you.

24                 THE COURT:  Okay.  Thank you.

25                 All right.  So there's a motion to expedite the

1    hearing pending on -- I have to go back to the main case,

2    sorry, I'm in the adversary -- let me just get the right

3    order here.

4           (Pause)

5           THE COURT:  So on September 30, the Chapter 11

6    Trustee, through his counsel, filed a motion to expedite a

7    hearing on a motion for an order which is ECF 899.

8           The order that the trustee is seeking to expedite

9    the hearing on is the motion for compliance with the Rule

10   2004 subpoenas and enforcing consent order regarding control

11   of attorney-client privilege and work product protection

12   related to the 2004 subpoenaed information.

13          Mr. Baldiga has stated on the record that he,

14   although he has a vacation scheduled, and that he can't be

15   available if there is a hearing later this week or early

16   next week, that he has minor changes to the proposed order

17   that the trustee has submitted granting that motion, 899 --

18   that's 898 and 899, I'm sorry, 899 is the affidavit, 898 is

19   the motion.

20          Attorney Romney has made some arguments about

21   expediting the hearing and I understand those arguments.

22   And we talked about some of the merits.

23          But I'm not ruling on anything today because the

24   debtor will have an opportunity to file a response to the

25   motion.

1    Which I don't believe you have done that yet,

2    Attorney Romney, the motion.  It was filed on Friday, so I

3    would assume you have not filed any response, written

4    response, to the motion for order authorizing compliance.

5    Is that correct?

6         MR. ROMNEY:  It's correct, Your Honor.

7         THE COURT:  Okay.  Thank you.  I thought that was

8    the case.  I just wanted to make sure.

9         MR. ROMNEY:  Thank you.

10        THE COURT:  So I have a question as to why -- I'm

11   looking at scheduling a hearing on this motion to compel

12   compliance.  And I know we're -- Attorney Bassett has

13   suggested this Friday.

14        But I'm also considering whether or not we could

15   have that hearing on Thursday, October 13th.  And I heard

16   something before about, and I don't remember from whom at

17   this point, that there was a concern.

18        Well, the prejudgment remedy hearing is being

19   continued from the 13th and 14th to later in the month, but

20   what's the scheduling problem on the 13th?

21        MR. DESPINS:  It's mine, Your Honor.  So if it

22   could be on the 13th in the morning, that would be fine.

23   But I don't know if that's what you had in mind.

24        THE COURT:  That's fine.  I have no problem with

25   that.  We can start it, you know, 9:00 or 9:30.  We can --

1   if you have a scheduling conflict for the afternoon, we can

2   start earlier.

3            MR. DESPINS:  And could it be done by Zoom for my

4   partner, Mr. Bassett?

5            THE COURT:  Yes.

6            MR. DESPINS:  Okay.  Thank you, Your Honor.

7            THE COURT:  Anyone else have an issue with the

8   13th?

9            MR. ROMNEY:  The 13th works for me, Your Honor.

10           THE COURT:  Okay.  And that will give you an

11  opportunity to file a written objection too, Attorney

12  Romney.  Okay?

13           MR. ROMNEY:  Thank you, Your Honor.

14           Is there a particular date and time by which --

15           THE COURT:  Yes.

16           We have, I believe, although I honestly am not

17  sure, are we closed on Monday, October 10th for the holiday?

18           THE COURTROOM DEPUTY:  Yes.

19           THE COURT:  Okay.  So, yes.  I would like your

20  objection to be filed by noon on October 11th, so that gives

21  you a full week, well, a little less since it's 2:30, but

22  that gives you a few days to file a written objection to the

23  trustee's motion.

24           So what I'm going to do is the motion to expedite

25  the hearing, ECF 900, will be granted in part because it's

1    not going to be granted on the date that the debtor -- the

2    trustee asked, but it will be granted, and the hearing will

3    be held on October 13th at 9:30 a.m.

4              And then the debtor's counsel will have an

5    objection deadline of October 11 at 12 p.m.

6              And then we'll hear that order.  We'll hear that

7    -- we'll have a hearing on that motion.

8              MR. ROMNEY:  Your Honor may --

9              THE COURT:  Go ahead.

10             MR. ROMNEY:  -- I have until later in the day on

11   the 11th?  I'll be --

12             THE COURT:  How much later?

13             MR. ROMNEY:  5:00 p.m., or potentially even in the

14   evening.

15             THE COURT:  I'll give you 4:00, 4:00 p.m.  So 4:00

16   p.m. on the 11th.  Okay?

17             And then we will have that hearing.

18             Now, that's the only other -- I know that a motion

19   was also filed today.

20             MR. DESPINS:  Yes.

21             THE COURT:  I haven't read it.  I don't know if it

22   was -- if expedited relief was sought with regard to that

23   motion, but I don't think that is the case.

24             MR. DESPINS:  We didn't do that because we were

25   going to -- we were about to walk into court and I figured I

1    would -- I would raise the issue with Your Honor.

2              But basically, Your Honor, this is the Ace Decade

3    motion for contempt.  This has been pending for more than 30

4    days at this point.

5              So we would ask Your Honor to schedule that at

6    your earliest convenience, except that if there's going to

7    be witnesses, then -- because I understand that the argument

8    will be, as described by Mr. Henzy, that the translation's

9    not accurate.  We don't believe that's controlling because

10   there are other statements made.

11             But if Mr. Kwok's going to be coming to testify,

12   we would need to take his deposition, so we need to build

13   that into the schedule here.

14             THE COURT:  Okay.  I'm going to look at the motion

15   and then we'll figure that out.  And we'll have to figure

16   out -- you know, maybe we'll have to have some kind of

17   conference to schedule that.  I don't know.  I have to look

18   at it.  I haven't looked at it yet.

19             MR. DESPINS:  Thank you, Your Honor.

20             And then there was a last housekeeping matter.

21             I think Mr. Linsey wanted to address to the Court.

22             MR. LINSEY:  Good afternoon, again, Your Honor.

23   Patrick Linsey for the trustee.

24             This is back to the adversary proceeding we

25   discussed earlier.

1      THE COURT:  You need -- I'm sorry, when you filed

2      the cross-claim, there has been no summons issued.  Is that

3      --

4      MR. LINSEY:  That's exactly correct.

5      THE COURT:  Yes, I know that.  And that does have

6      to happen.  So I agree with you.  I haven't been able to

7      talk with the clerk's office about that yet, but there does

8      need to be a summons issued.

9      MR. LINSEY:  We just wanted to make sure there was

10     nothing else you needed from us, Your Honor.

11     THE COURT:  No.  But I completely agree that there

12     does need to be a summons issued.  Okay?

13     MR. LINSEY:  Thank you, Your Honor.

14     THE COURT:  And, as I said, you know, the clerk's

15     office might not have understood that there was a

16     counterclaim for which there was a summons that needs to be

17     issued, so we will take care of that as well.

18     MR. LINSEY:  Thank you.

19     THE COURT:  All right.  Thank you.

20     And just to be clear with everyone, maybe -- I

21     don't know what we're going to do yet as far as the motion

22     that was filed this morning in scheduling, but, Mr.

23     Kindseth, you said you think there will be a stipulated

24     order submitted on the repair reserve.  And you think that

25     will be submitted -- when did you say, tomorrow?

1          MR. KINDSETH:  Realistically, tomorrow.

2          THE COURT:  All right.  Well, if by Thursday,

3    midday or something, like that I haven't seen anything, I

4    may have a status conference and say where are things and --

5    because I need to know whether we're going to have a -- you

6    know, just so we have appropriate staff and everything if

7    we're actually going to have an evidentiary hearing on

8    Friday.

9          MR. KINDSETH:  I completely appreciate that, Your

10   Honor.

11         THE COURT:  Okay.  All right.  Thank you.

12         MR. LINSEY:  Your Honor, I have just one quick

13   question.

14         THE COURT:  Sure.

15         MR. LINSEY:  You had said to the trustee that Mr.

16   Bassett may appear without -- remotely, so we will not need

17   to file a separate request, correct?

18         THE COURT:  Yeah.  I'm going to try to stop you

19   all from having to file remote motions under the specific

20   facts and circumstances of this case.  Okay?  Because I

21   think we all know who's going to be here and not here.

22         But I think what I would like you to do, both

23   sides, depending upon -- I mean, obviously Mr. Romney and

24   Mr. Kindseth, when you had to appear, it was unfortunately

25   for health reasons and I understood that.  There's never

1    going to be an issue with regard to that.  And hopefully you

2    won't have to have that happen again.  Obviously.

3          But if we can just all agree that people can

4    appear remotely that are in Connecticut, I think that would

5    be helpful.

6          And what I would ask is the way that that could be

7    accomplished is that someone from the trustee, someone from

8    PAX, someone from HK, someone from the debtor, and Ms. Guo,

9    just send a -- one person sends it, I don't care who, an

10   email to the courtroom deputy with everybody else cc'd,

11   including the U.S. Trustee's Office so they know, these

12   people would like to appear remotely at whatever hearing it

13   is.  Okay?  Not witnesses.  I'm not talking about witnesses.

14         I'm talking about lawyers who want to either be

15   heard or be part of a hearing by observation.  If it came to

16   a witness situation, we'd have to have a discussion about

17   that.  And then you'll get the information for people to

18   appear remotely so we don't have to keep -- you don't have

19   to keep filing these motions.  Okay.

20         In the specific circumstances of this case,

21   because I'll probably get in trouble for having said all

22   that.  So you have to understand that I agree that -- we

23   don't need to have ten more docket entries about motions to

24   -- understandably that you filed them, but let's cut that

25   now if we can as long as everybody -- I don't see why

1      anybody have a problem with that.

2             Does anybody have a problem with that right now

3      what I've suggested?

4             ALL COUNSEL:  No, Your Honor.

5             THE COURT:  Okay.  Great.  I appreciate it.

6             MR. GOLDMAN:  Your Honor, I don't have a problem.

7      I just have a question.

8             The committee itself doesn't have out-of-state

9      counsel, and there are matters where we have only a

10     tangential interest, so would that -- would that -- would

11     Your Honor's remarks apply to --

12            THE COURT:  Yes, the committee.

13            MR. GOLDMAN:  -- the committee's counsel as well?

14            THE COURT:  Yes, it would.  I think that the

15     committee counsel can appear remotely even though the

16     committee's in Connecticut because, again, I agree, Attorney

17     Goldman, at this point, the role is different than it was

18     prior to the appointment of a trustee.

19            So unless someone has a problem with that, I have

20     no problem with that.  Okay?  But just get in the group of

21     the emails so that the courtroom deputy makes sure that

22     everyone is on the same page.  All right?

23            MR. GOLDMAN:  Thank you, Your Honor.

24            THE COURT:  But that's the way we'll disseminate

25     the information without everybody having to file motions.

1          All right.  Is there anything further we should

2     address this afternoon?

3               MR. DESPINS:  No, Your Honor.  Thank you.

4               THE COURT:  Okay.  Thank you, all.

5               MR. DESPINS:  Thank you.

6          (Proceedings adjourned at 2:29 p.m.)

7          I, CHRISTINE FIORE, Certified Electronic Court Reporter

8     and Transcriber, certify that the foregoing is a correct

9     transcript from the official electronic sound recording of

10    the proceedings in the above-entitled matter.

11

12    *Christine Fiore*

13    _____          October 13, 2022

14       Christine Fiore, CERT

15

16

17

18

19

20

21

22

23

24

25