**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| Debtor. | : | |

**DEBTOR'S OBJECTION TO MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER HOLDING DEBTOR IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH CORPORATE GOVERNANCE RIGHTS ORDER**

The debtor, Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., hereby objects to the Motion Of Chapter 11 Trustee For Entry Of Order Holding Debtor In Civil Contempt For Failure To Comply With Corporate Governance Rights Order (Doc. No. 913, the "Motion"). The Corporate Governance Order (as defined below) does not clearly and unambiguously require the Debtor to (a) execute, or cause any nominee shareholder to execute, a share transfer instrument to transfer all of the Debtor's shares in Ace Decade Holdings Limited ("Ace Decade") to the Trustee (as defined below), and (b) execute and/or cause the director(s) of Ace Decade to execute a resolution approving such transfer of the shares in Ace Decade to the Trustee. And even assuming the Corporate Governance Order does require such action by the Debtor (it does not), the Debtor is unable to comply. The Trustee cannot meet his burden to show by clear and convincing evidence that there is no fair ground of doubt as to whether the Debtor has violated the Corporate Governance Order, and this Court should not impose the "severe sanction" of contempt. In support of his objection, the Debtor respectfully states as follows:

1. On February 15, 2022 (the "Petition Date"), the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned

1

bankruptcy case.

2.  On June 15, 2022, this Court issued a Memorandum of Decision, *inter alia*, granting PAX's Motion to Dismiss or, in the alternative, Partial Joinder to the UST's Motion for the Appointment of a Chapter 11 Trustee (Doc. No. 183), to the extent that it sought the appointment of a Chapter 11 trustee (Doc. No. 465.)

3.  On July 7, 2022, the UST filed a notice appointing Luc A. Despins (the "Trustee") as Chapter 11 trustee (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515) seeking the Court's approval of the appointment of the Trustee. On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

4.  On July 23, 2022, the Trustee filed his Motion Of Chapter 11 Trustee For Entry Of Order, Pursuant To Bankruptcy Code Sections 363, 541, 1108, And 1505, (A) Confirming That Chapter 11 Trustee Holds All Of The Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 598, the "Corporate Governance Motion"). At paragraph 12 of the Corporate Governance Motion, the Trustee stated:

> Section 541 of the Bankruptcy Code provides that property of the estate includes "all property, wherever located and by whomever held, to which the debtor has legal or equitable interest." 11 U.S.C. § 541. In addition, section 1108 of the Bankruptcy Code provides that "[u]nless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." Id. § 1108. The related case law confirms that a chapter 11 trustee "possesses both the economic and governance rights to participate in the management of [the debtor-owned entity] that the Debtor himself enjoyed prior to his bankruptcy filing." *In re Modanlo*, 412 B.R. 715, 728 (Bankr. D. Md. 2006) (confirming chapter 11 trustee's authority to, among other things, amend formation papers of debtor's wholly-owned Delaware LLC, designate himself as the LLC manager, and place LLC into voluntary chapter 11). *See also In re Albright*, 291 B.R. 538 (Bankr. D. Col. 2003) ("Because the Trustee became the sole member of [debtor-owned entity] upon the Debtor's bankruptcy filing, the Trustee now controls, directly or

indirectly, all governance of that entity, including decisions regarding liquidation of the entity's assets.").

At paragraphs 20 and 21 of the Corporate Governance Motion, the Trustee further stated:

> [T]he Debtor should not be left to exercise any corporate governance rights with respect to the Debtor-Controlled Entities for one more day. … To enable the Trustee to exercise the foregoing authority without interference from the Debtor, the Court should confirm that the Debtor may not to interfere with, hinder, or delay the Trustee's exercise of the Debtor's economic and governance rights with respect to the Debtor-Controlled Entities.

5. On August 10, 2022, the Court entered its Order, Pursuant To Bankruptcy Code Sections 363, 521, 541, 1108, And 1505, (A) Confirming That Chapter 11 Trustee Holds All Of The Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 717, the "Corporate Governance Order"). Paragraphs 2, 3 and 6 of the Corporate Governance Order provide in relevant part:

> 2. Effective as of entry of the order, dated July 8, 2022, granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523], the Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all Debtor-Controlled Entities, including, without limitation, Genever (BVI). For the avoidance of doubt, the foregoing rights include the Trustee's asserted authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.
>
> 3. In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to, respectively, (a) cooperate with the Trustee as necessary to enable the Trustee to perform his duties, including, without limitation, the Trustee's investigation into the assets of the Debtor, and (b) surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate (including, without limitation, his shares in Genever (BVI) and all related corporate governance documents).
>
> 6. The Debtor shall not interfere with, hinder, or delay the Trustee's exercise of the authority under this Order ….

3

Paragraph 3(a) of the Corporate Governance Order went on to expressly direct the Debtor to execute a share transfer instrument and director's resolutions for Genever BVI in the forms attached as Exhibit A to the Corporate Governance Order. The Debtor did not dispute that he was the legal owner of the shares, and sole director, of Genever BVI on the Petition Date and at the time of the Trustee's appointment, and he promptly executed the share transfer and director's resolutions for Genever BVI following the entry of the Corporate Governance Order.

6.  On August 31, 2022, the Trustee sent counsel for the Debtor a letter requesting that the Debtor (a) execute, and cause any nominee shareholder to execute, a share transfer instrument to transfer all of the Debtor's shares in Ace Decade (including all shares beneficially owned by the Debtor through any nominee shareholder) to the Trustee, and (b) execute and/or cause the director(s) of Ace Decade to execute a resolution approving such transfer of the shares in Ace Decade to the Trustee. The Trustee's August 31, 2022, letter provides that the share transfer instrument and related director's resolution shall be in the same form as the corresponding documents related to the shares of Genever (BVI), which were attached as Exhibit A to the Corporate Governance Order. For the reasons stated herein, Debtor has not complied with the Trustee's request.

7.  By the Motion, the Trustee seeks to have the Debtor held in contempt, arguing that "despite the Court's clear directive in the Corporate Governance [Rights] Order, the Debtor refuses to transfer the shares of Ace Decade … to the Trustee or provide the Trustee with any corporate documents regarding Ace Decade or its wholly owned subsidiary Dawn State Limited ("Dawn State"), even though the Debtor has attested on multiple occasions—at the creditors' committee meeting in this chapter 11 case as well as in various court filings—that he owns Ace Decade and that Ace Decade wholly owns Dawn State." Motion ¶ 1, at 2.

8. A "bankruptcy court's contempt power, like that of a district court, is 'narrowly circumscribed.'" *PHH Mortg. Corp v. Sensenich (In re Gravel)*, 6 F.4th 503, 511 (2nd Cir. 2021). *See also Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2nd Cir. 2003) ("[O]ur review of a contempt order is more exacting than under the ordinary abuse-of-discretion standard because a district court's contempt power is narrowly circumscribed."). This is because "[t]he judicial contempt power is a potent weapon." *Int'l Longshoreman's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). *See also Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019) ("[C]ivil contempt is a severe remedy …."); *In re Attorney General of U.S.*, 596 F.2d 58, 65 (2nd Cir. 1979) ("[T]he court must not lightly invoke its contempt power."); *United States v. Wendy*, 575 F.2d 1025, 1030 (2nd Cir. 1978) (recognizing that the "exercise of the contempt power is awesome in its implications."); *Vineyard Vines, LLC v. MacBeth Collection, LLC*, 2018 U.S. Dist. LEXIS 205502, [*38] (D. Conn. Dec. 5, 2018) ("The standard is strict, and 'the power of a district court to impose contempt liability is carefully limited.'" (quoting *CBS Broad, Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2nd Cir. 2016))). Accordingly, "civil contempt 'should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Taggart*, 389 S.Ct. 1801 (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)) (emphasis in original). *See also PHH Mortg. Corp.*, 6 F.4th at 512 ("Under Taggart, a bankruptcy court may hold a creditor in contempt for violating the court's injunction only 'if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. The 'fair ground of doubt' standard has long been used in this Circuit to determine when a party may be held in contempt in the district court."); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2nd Cir. 1995) ("[C]ourts should not resort [to a contempt order] 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" (quoting *California Artificial Stone Paving Co.*, 113 U.S. at 618)).

9. "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict. More specifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King*, 65 F.3d at 1058 (citation omitted). *See also Vineyard Vines, LLC*, 2018 U.S. Dist. LEXIS 205502, [*39] ("'[T]he moving party …bears the burden of establishing [these] three factors[.]" (quoting *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2nd Cir. 2009))).

10. When the judicial contempt power "is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoreman's Ass'n*, 389 U.S. at 76. Accordingly, civil contempt usually is not appropriate unless "those who must obey [orders] will know what the court intends to require and what it means to forbid." *Id*. *See also Taggart*, 139 S.Ct. at 1802 ("[P]rinciples of 'basic fairness require[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in contempt." (*quoting Schmidt v. Lessard*, 414 U.S. 473, 476 (1974))); *PHH Mortg. Corp.*, 6 F.4th at 512 ("'[B]asic fairness requires that those enjoined receive explicit notice of what conduct is outlawed.'" (quoting *Taggart*, 139 S.Ct. at 1802)). "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (internal citations and quotation marks omitted). *See also Gucci Am. v. Bank of China*, 768 F.3d 122, 143 (2nd Cir. 2014) ("[U]nless the parties can 'ascertain from the four corners of the order precisely what acts are forbidden,' the order cannot form the basis for contempt." (quoting King, 65 F.3d at 1058)); *Liberty Propane L.P. v. Feheley*, 522 Fed. Appx. 38, 39 (2nd Cir. 2013) (vacating contempt order for failure to produce specific documents where

underlying orders regarding production did not expressly require production of those specific documents); *Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F. Supp. 116, 121 (S.D.N.Y. 1996) (finding contempt inappropriate where order operated by reference to motion, and thus did not expressly set forth its requirements within the four corners of the order). "Furthermore, 'the longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.'" *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989) (quoting *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971)).

11. "A long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order." *United States v. Wendy*, 575 F.2d at 1030 (finding technical ability to comply did not support contempt where there was no practical ability to comply). *See also Perez,* 347 F.3d at 425 (finding no evidence that defendants had not attempted to comply in a reasonable manner where defendants were not directly responsible for the improper conduct of others); *Experience Hendrix, LLC v. Hendrix*, 2021 U.S. Dist. LEXIS 4876, [*22] (S.D.N.Y. Jan. 11, 2021) (holding party defending against contempt may assert noncompliance because of inability or impossibility).

12. The Corporate Governance Order does not clearly and unambiguously require the Debtor to do what the Trustee is demanding. To the extent that the relief sought by the Trustee is based on his belief that the Debtor was the equitable owner of Ace Decade on the Petition Date and at the time of the Trustee's appointment (the Trustee has not claimed and there is no evidence that the Debtor was ever the nominee or legal shareholder or a director of Ace Decade), the Trustee's argument that the Corporate Governance Order somehow requires the Debtor to cause the person who is now the nominee shareholder of Ace Decade to execute a share transfer

7

agreement and cause the person who is now the director of Ace Decade to execute a resolution approving such transfer makes no sense in the context of the Corporate Governance Order and is inconsistent with the Corporate Governance Order and the position taken by the Trustee in the Corporate Governance Motion. As noted above, the Trustee took the position in the Corporate Governance Motion that upon his appointment he became the holder of all of the Debtor's governance and economic rights in any Debtor-Controlled Entities, that the Debtor should not be left to exercise any corporate governance rights with respect to the Debtor-Controlled Entities "for one more day," and that the Court should confirm that the Debtor may not to interfere with, hinder, or delay the Trustee's exercise of the Debtor's economic and governance rights with respect to the Debtor-Controlled Entities. Corporate Governance Motion, ¶¶ 12, 20 and 21. As also noted above, the Corporate Governance Order expressly states that "the Trustee holds all of the Debtor's economic and governance rights" and that "the Debtor shall not interfere with, hinder, or delay the Trustee's exercise of the authority under this Order." The entire premise of the Corporate Governance Motion and the Corporate Governance Order is that the Debtor has no governance rights with respect to any Debtor-Controlled Entities. Even assuming that the Debtor was the equitable owner of Ace Decade as of the date of the Trustee's appointment (he was not), as of the appointment of the Trustee he was no longer the equitable owner of Ace Decade, and the Corporate Governance Order expressly confirms that. How could the Debtor instruct the nominee shareholder of Ace Decade to transfer shares or the director of Ace Decade to execute a resolution approving such transfer when he has no governance rights with respect to Ace Decade? The Trustee asked for and received confirmation from this Court that he is the sole holder of all governance rights with respect to any entity that the Debtor owned prior to the Trustee's appointment. To the extent that the Trustee is now the equitable owner of Ace Decade (the Debtor believes that he is not), it

8

is up to the Trustee to instruct or cause any nominee shareholder or director of Ace Decade to take action. Finding that the Debtor has the authority to instruct any nominee shareholder or director of Ace Decade would imply that the Debtor has continuing governance rights with respect to Ace Decade and would be directly inconsistent with the paragraph 2 of the Corporate Governance Order. At the very least, the Corporate Governance Order is ambiguous on this issue and accordingly cannot be the basis for contempt.

13. This situation is distinguishable from that of Genever (BVI). There, the Debtor did not dispute that he was the legal owner and director of Genever (BVI) (he disputes that he is the equitable owner of Genever (BVI)). In the Corporate Governance Order, the Court *expressly and precisely* ordered the Debtor to perform what was essentially a ministerial act in executing the share transfer, there was no exercise of corporate authority by the Debtor of the type requested here in connection with Ace Decade.

14. In addition to the foregoing basic internal inconsistency that would be caused by the Trustee's interpretation of the Corporate Governance Order, the four corners of the Corporate Governance Order do not expressly and precisely require the Debtor to draft share transfer documents and cause any nominee shareholder to execute a share transfer or cause any director to execute a resolution approving such transfer. The Trustee knew how to ask for express, precise relief, as he did with respect to Genever (BVI), he did not do so with respect to Ace Decade. The very broad relief provided for in paragraph 3 of the Corporate Governance Order, which does nothing more than refer to and restate Bankruptcy Code section 521(a)(3) and (4), cannot be the basis for a contempt finding with respect to the action requested by the Trustee. *See King*, 65 F.3d at 1058 (party "must be able to ascertain from the four corners of the order precisely what acts are forbidden.").

15. To the extent that the Court interprets the Corporate Governance Order to require the Debtor to cause any nominee shareholder to execute a share transfer and cause any director to execute a resolution approving such transfer, the Debtor is unable to comply. At any hearing on the Motion, the Debtor will testify that he has never been the nominee shareholder or director of Ace Decade and that at the very least he was not the equitable owner of Ace Decade on the Petition Date or on the date of the Trustee's appointment. Thus, he can neither execute a share transfer or a director resolution nor instruct any nominee shareholder or director to execute such transfer or resolution.

16. The Trustee states in the Motion that the Debtor has attested in various court filings that he owns Ace Decade, but the only court filing he refers to that addresses ownership of Ace Decade is the Bill of Particulars filed in the UK action against UBS.[1] The Bill of Particulars alleges that Ace Decade was acquired by the Debtor in November 2014, more than seven years prior to the Petition Date. It does not say anything about who the equitable owner, nominee shareholder or director was on the Petition Date or the date of the Trustee's appointment.

17. The Debtor did not list Ace Decade on his schedules. (Doc. No. 78). This is consistent with the testimony that the Debtor will give at any hearing on the Motion that he has never been the nominee shareholder or a director of Ace Decade and that at least as of the Petition Date and the time of the Trustee's appointment he was not the equitable owner of Ace Decade.

18. The Debtor will testify at any hearing on the Motion that he did not intend to testify at the April 6, 2022 341 meeting that he was the owner of Ace Decade, and that to the extent that his testimony came across that way it was based on confusion and/or difficulties in the

---

[1] The Trustee attaches July 7, 2020, and February 9, 2022, orders entered by Justice Ostrager in the PAX New York Supreme Court litigation, but neither of those orders addresses or mentions Ace Decade.

interpretation. At any hearing on the Motion, the Debtor will put on testimony from an interpreter as to the many material deficiencies in the "official" translation of the 341 meeting. As an example, while the "official" translation of the April 6, 2022 341 meeting has the Debtor answer "no" in response to the US Trustee's question "Are there any other owners of Ace Decade?", just prior to that question, according to the "official" translation, the Debtor purportedly answered the US Trustee's question "Are you the only legal owner of Ace Decade?" by stating that he was "a legal representing owner." The Debtor's interpreter will testify, however, that the proper interpretation of the Debtor's response to the US Trustee's question "Are you the only legal owner of Ace Decade?" was "I am legally representing the owner." This is consistent with the Debtor's position that he was never the equitable owner of Ace Decade, but that he only represented such owner at the time of the UBS transaction.

19.     In addition to misinterpretations during that 341 meeting, there were numerous other problems with the interpretation during the April 6, 2022 341 meeting which created confusion. The following is an example of the difficulty that started early in that 341 meeting:

```
 8 MS. CLAIBORN: I think the better route
 9 for today --
10 THE OFFICIAL INTERPRETER: Yeah.
11 MS. CLAIBORN: -- and for purposes of a
12 clear translation and a clear record --
13 THE OFFICIAL INTERPRETER: Okay.
14 MS. CLAIBORN: -- is for you, Jeff, to
15 interpret --
16 THE OFFICIAL INTERPRETER: Uh-huh.
17 MS. CLAIBORN: -- my questions and to
18 interpret Mr. Kwok's answers.
19 THE OFFICIAL INTERPRETER: Okay.
20 MS. CLAIBORN: And if Mr. Kwok thinks,
21 based on your interpretation, that you have not
22 translated properly, then he can testify again and
23 you can try again.
24 But I would like to restrict the
25 interaction that happens between translators and
```

> 1 between Mr. Kwok's personal translator so that we
> 2 have an official record where the person asking the
> 3 question is me, it's being officially translated,
> 4 and Mr. Kwok is giving the answers, and that also is
> 5 being officially translated.
> 6 MR. BALDIGA: But, Holley, the problem
> 7 with that is the witness doesn't know whether Jeff's
> 8 English report is in fact accurate. You can't leave
> 9 it up to the witness. That's why we have a check
> 10 interpreter. If he spoke English, then we wouldn't
> 11 need any interpreters. He can't do that.
> 12 MS. CLAIBORN: I think as a practical
> 13 matter, Mr. Kwok speaks enough English to know
> 14 whether or not he's answered his question.
> 15 MR. BALDIGA: No, he doesn't. I object.
> 16 MS. CLAIBORN: Well, I -- I think that
> 17 that has been what I have seen from my own personal
> 18 experience.
> 19 That said, we're going to try and do the
> 20 best we can --
> 21 MR. BALDIGA: I agree.
> 22 MS. CLAIBORN: -- and we'll see where we
> 23 go.
> 24 MR. BALDIGA: Okay.
> 25  MS. CLAIBORN: Okay?

Transcript of April 6, 2022 341 Meeting, at 19-20. The official interpreter became upset on several occasions during the 341 meeting, which led to several stoppages and off-the-record discussions regarding how to proceed. For example, following an objection by Debtor's counsel, the following colloquy took place:

> 8 THE PRIVATE INTERPRETER: The counsel
> 9 raised objection. The interpreter did not interpret
> 10 the objection.
>
> 11  MS. CLAIBORN: I can happily repeat the
> 12 question, but we are not going to get anywhere today
> 13 in a meaningful fashion if people are interrupting
> 14 on basic questions.
> 15 MR. BALDIGA: No, I didn't interrupt, but
> 16 --

12

> 17 MS. CLAIBORN: So let me try again.
> 18 MR. BALDIGA: Okay. But hold on. If I
> 19 object or if I say anything else, that has to be
> 20 interpreted.
> 21 MS. CLAIBORN: You're not waiting for
> 22 space to interpret. So, Mr. Jeff, can you interpret
> 23 that exchange that just happened?
> 24 THE OFFICIAL INTERPRETER: Okay. I don't
> 25 know. It's just too much interruption.
> 1 MS. CLAIBORN: Right.
> 2 THE OFFICIAL INTERPRETER: Holley, I can't
> 3 do -- keep doing this. I just too distracted and I
> 4 don't know. It just a simple -- ask the witness
> 5 just a simple repeat and then --
> 6 MS. CLAIBORN: Let me try --
> 7 THE OFFICIAL INTERPRETER: -- it gets all
> 8 these people involved.
> 9 MS. CLAIBORN: Correct. Let me --
> 10 THE OFFICIAL INTERPRETER: We're not going
> 11 anywhere.
> 12 MS. CLAIBORN: Let me try the question
> 13 again.
> 14 BY MS. CLAIBORN:
> 15 Q Mr. Kwok, what do you mean by the term,
> 16 family office?
> 17 MR. BALDIGA: Objection. You may answer.
> 18 MS. CLAIBORN: Mr. Baldiga, that term is
> 19 all over the papers. Can you repeat -- translate?
> 20 THE OFFICIAL INTERPRETER: No, I'm not
> 21 going anywhere. Holley, I just excuse myself. I'm
> 22 sorry. It's -- it's not going --
> 23 MS. CLAIBORN: I'm going to put it on
> 24 pause, please.
> 25 THE OFFICIAL INTERPRETER: -- this is too
> 1 much.
> 2 (Off the record)
> 3 MS. CLAIBORN: We're back on the record
> 4 after a short break.
> 5 Mr. Kwok, you remain under oath. During
> 6 the break, I spoke with Attorney Baldiga and we have
> 7 agreed that all objections as to form of the
> 8 question are reserved.

It is not clear what the US Trustee meant by "all objections to form being reserved," but this was in the context of the US Trustee trying to limit the number of interruptions based on concerns

13

about the interpretation. As noted, at any hearing on the Motion, the Debtor will testify that he by no means intended to testify that he was the legal or equitable owner of Ace Decade prior to the appointment of the Trustee.

20. Based on the testimony that the Debtor will give at any hearing on the Motion that he was never the nominee shareholder or a director of Ace Decade and that at least as of the Petition Date and the time of the Trustee's appointment he was not the equitable of Ace Decade, the Debtor is not able to execute a share transfer document or resolution approving a transfer, cause a nominee shareholder to execute such a transfer document, or cause a director to execute a resolution approving a transfer. As the Debtor is not able to do what the Trustee is demanding, he may not be held in contempt.

**WHEREFORE,** the Debtor respectfully requests that the Court deny the Motion and grant him such other and further relief as justice requires.

Dated at Bridgeport, Connecticut on this 25th day of October, 2022.

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ Eric Henzy*
Eric Henzy (ct12849)
Stephen M. Kindseth (ct14640)
Aaron A. Romney (ct28144)
James M. Moriarty
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
skindseth@zeislaw.com
aromney@zeislaw.com
Jmoriarty@zeislaw.com
jcesaroni@zeislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                               */s/ Eric Henzy*
                                               Eric Henzy (ct12849)