**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                :

In re:                            :      Chapter 11
                                :

HO WAN KWOK, *et al.*,      :      Case No. 22-50073 (JAM)
                                :

           Debtors.[1]       :      Jointly Administered
                                :
-------------------------------------------------------x

## MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER COMPELLING INDIVIDUAL DEBTOR, MEI GUO, HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, HING CHI NGOK, GREENWICH LAND LLC, LAMP CAPITAL LLC, AND GOLDEN SPRING (NEW YORK) LTD. TO COMPLY WITH RULE 2004 SUBPOENAS

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the Individual Debtor's chapter 11 case (the "Chapter 11 Case"), hereby files this motion (the "Motion to Compel") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules"), and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") compelling the Individual Debtor, Mei Guo, HK International Funds Investments (USA) Limited, LLC ("HK USA"), Hing Chi Ngok ("Ngok"), Greenwich Land LLC ("Greenwich Land," together with the Individual Debtor, Mei Guo, and HK USA, and Ngok, the "Noncompliant Respondents"), Lamp Capital LLC ("Lamp Capital") and Golden Spring (New York) Ltd. ("Golden Spring," and together with Lamp Capital the "Defaulting Respondents" and

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Individual Debtor") and Genever Holdings Corporation (the "Genever BVI Debtor"). The mailing address for the Trustee and the Genever BVI Debtor is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

collectively with the Noncompliant Respondents, the "<u>Respondents</u>") to comply with this Court's Rule 2004 Orders[2] and with the subpoenas (the "<u>Subpoenas</u>")[3] the Trustee issued pursuant to such orders.  In support of the Motion to Compel, the Trustee submits the *Declaration of Avram E. Luft in Support of Motion to Compel* (the "<u>Luft Declaration</u>"),[4] and respectfully states as follows:

## <u>PRELIMINARY STATEMENT</u>

1.     Since his appointment, the Trustee has been conducting an investigation at the Court's direction to identify potential assets of the Individual Debtor's estate (the "<u>Estate</u>") notwithstanding the Individual Debtor's contention that he has virtually no assets to his name. Because this Chapter 11 Case has already been pending for nearly eight months, and history has shown that the Individual Debtor has a propensity to move his assets outside the reach of his creditors, it is critically important that the Trustee's investigation proceed expeditiously and free from obstruction. The Trustee's primary means of conducting the investigation thus far has been by seeking document productions pursuant to the Rule 2004 Orders, entered on August 16, 2022, which granted the Trustee's applications for Rule 2004 discovery and authorized service of the Subpoenas in connection therewith.  Unfortunately, the Respondents have not complied with the Subpoenas and are either impeding the Trustee's investigation or failing to respond altogether.

2.     Specifically, as set forth herein, the Noncompliant Respondents have refused to produce—or, in some cases, even search for—whole categories of documents that are critical to

---

[2]     The term "<u>Rule 2004 Orders</u>" shall mean the Court's (i) *Order Granting Chapter 11 Trustee's Application for Rule 2004 Discovery with respect to various Legal and Financial Advisors to the Debtor* [ECF No. 756] (the "<u>Advisor 2004 Order</u>"), (ii) *Order Granting Chapter 11 Trustee's Application for Rule 2004 Examination of Ho Wan Kwok* [ECF No. 757] (the "<u>Individual Debtor 2004 Order</u>"), and (iii) *Order Granting Chapter 11 Trustee's Application for Rule 2004 Discovery with Respect to Various Entities and Individuals Affiliated with Debtor* [ECF No. 758]  (the "<u>Associated Entity 2004 Order</u>").

[3]     A copy of each Subpoena is attached to the Luft Declaration (as defined herein) at **Exhibits B-1 to B-7**.

[4]     The Luft Declaration is being filed contemporaneously herewith.

the Trustee's investigation. Most egregiously, the Noncompliant Respondents have refused to search for documents and communications concerning potential Estate assets that may be held by the Individual Debtor's relatives, known associates, or shell companies.  Despite such potential assets being the *raison d'etre* of the Trustee's investigation, the Noncompliant Respondents have adopted the hyper-technical position that document searches concerning such assets are not required because the potential assets—e.g., bank accounts, real or personal property, ownership interests in a trust or commercial enterprise, among other potential valuable assets—are purportedly not owned or controlled by the Individual Debtor and, thus, are not relevant to the administration of his estate.

3.    By taking this position, the Noncompliant Respondents create a world in which virtually no responsive documents even exist because, in their view, the Individual Debtor does not admit to having any assets beyond the paltry amount listed on his schedules, and, as his acknowledged assets are the only ones that can be the target of the 2004 discovery, there are no assets to be investigated.  Accepting the Noncompliant Respondents' position would effectively prevent any investigation by the Trustee into the Individual Debtor's assets and leave his creditors to accept his implausible assertions that he is dead broke, despite courts having found the Individual Debtor to be hiding assets through shell companies while continuing to live the life of a billionaire.

4.    The calculated absurdity of the Noncompliant Respondents' position is exemplified by a position taken by counsel for the Individual Debtor, Mei Guo, and HK USA, in response to a hypothetical posed by the Trustee.  Specifically, counsel have said they would ***not agree*** to search for or produce documents related to a hypothetical asset identical to the *Lady May*—if another such yacht existed—because it would be the position of the Individual Debtor, Mei Guo, and HK

USA that the Individual Debtor does not presently own or control such asset.[5]  This discovery position is indefensible.  One of the most fundamental purposes of a Rule 2004 investigation is to identify assets that, although ostensibly belonging to others, may actually be property of the estate.  This is especially true here, where the New York Supreme Court has already determined that the Individual Debtor has engaged in efforts to hide his wealth through a network of shell companies and otherwise.  The Noncompliant Respondents must search for and produce the requested documents.

5.      In addition, certain Noncompliant Respondents have been unwilling to produce documents in the files of advisors and agents that are plainly within their control.  Specifically, the Individual Debtor, HK USA and Mei Guo have sought to restrict their document search obligations to only those documents in their physical possession.  Their discovery obligations, however, are not so limited.  They must search for not only documents in their possession but also documents in the files of agents, advisors, and other parties whom they control.  Documents in the files of such parties are critical to the Trustee's investigation because the Individual Debtor has used numerous law firms and advisors over the years to assist him in carrying out transactions, including transactions involving potential Estate assets, and it is his (and the other Respondents') obligation to make sure documents held by such advisors are searched in response to the Trustee's subpoena.[6]

---

[5]   The Individual Debtor's counsel has stated that the only difference from a discovery standpoint between the actual *Lady May* and a hypothetical second yacht is that the *Lady May* has already been discovered by the Individual Debtor's creditors, whereas the hypothetical second yacht is still unknown to the creditors. This would result in an untenable outcome.  The Trustee need not know the results of his investigation *a priori* in order to gain access to the discovery (from the Individual Debtor) for the same investigation.

[6]   Although the Trustee has separately subpoenaed a number of law firms and advisors under Bankruptcy Rule 2004, the requests to the Individual Debtor are not identical to those served on the various advisors.  Furthermore, additional advisors unknown to the Trustee who, thus, have not been identified and served with a subpoena, must be identified by the Individual Debtor and their documents collected and searched.

6.      Relatedly, certain Noncompliant Respondents have failed to satisfy their obligation to ensure that all sources of potentially responsive documents have been identified and adequately searched.  Specifically, counsel for the Individual Debtor has informed the Trustee that their search for responsive documents consisted of simply asking the Individual Debtor (or his other advisors) whether certain categories of responsive documents exist.  Counsel then took the response they received at face value, without performing a further search or investigation, even where the stated response defied common sense.  These search efforts are not sufficient under the Federal Rules of Civil Procedure.

7.      Rather, the law in the Second Circuit is clear that simply relying on a client's representation that it has no potentially relevant information falls far short of satisfying counsel's obligation to ensure that the client identifies sources of relevant information, searches such sources, and preserves all relevant information.  This is particularly true where the client's assertions are not credible.  Here, the Individual Debtor's representations to his counsel (as communicated to the Trustee) include that he: (i) does not use a computer or e-mail communications; (ii) has two iPhones, but after his search he did not identify any responsive documents on either iPhone; (iii) has no office or hard copy documents of any nature; (iv) has no responsive text or other digital messages, despite admitting to using digital messaging applications to communicate with business associates (including in a prior affidavit he submitted in support of his claims against UBS); (v) has no documents related to any expense or transfer of funds to him, despite stating that his lavish lifestyle is paid for by funds from sources other than his own assets; and (vi) has only ***approximately forty-six total responsive documents*** (the documents the Trustee

has received in discovery to date[7]) in his custody, possession, or control.[8]  These representations are simply not believable and cannot be accepted at face value.  Consistent with their obligations under the Federal Rules, counsel for the Individual Debtor must conduct their own search and review of their clients' files for potentially responsive documents.

8.      In addition to his obligations under the Federal Rules, section 521(a)(4) of the Bankruptcy Code requires the Individual Debtor to "surrender to the trustee all property of the estate and recorded information, including books, documents, records, and papers, relating to property of the estate."  The Individual Debtor has not made any effort to comply with this obligation, but rather has frustrated the Trustee's investigation and thereby undermined the purpose of the statute by refusing to conduct basic searches for documents potentially related to property of the estate.

9.      In addition, the Individual Debtor has also refused to produce (i) a copy of all of his passports (and pages within such passports) and (ii) any documents predating the Individual Debtor fleeing China in late 2014 or early 2015, when certain of the Individual Debtor's assets in China may have been seized by the Chinese government.  Because the Individual Debtor and entities related to him control assets outside of the United States—the Individual Debtor has admitted as much in YouTube videos and other venues—it is critical for the Trustee to understand where such assets may be located, including based on the Individual Debtor's travel.  The Individual Debtor must be compelled to produce his passports.  Moreover, the Individual Debtor must be compelled to search for and produce documents dated on or after February 5, 2012, which

---

[7]     The documents include, among others, the following: (i) eight checks from the U.S. Treasury or the State of New York; (ii) three litigation financing agreements; (iii) four **publically available** court documents; (iv) fifteen Federal or New York State tax documents; and (v) two promissory notes.

[8]     Mei Guo has produced nineteen documents to the Trustee.  HK USA has produced in the aggregate 372 documents to the Trustee.  Counsel to the Individual Debtor, Mei Guo, and HK USA has represented that no further responsive documents are likely to be produced.

is one outer limit for the statute of limitations concerning fraudulent transfer claims against the Individual Debtor.

10.    Finally, the Trustee also seeks relief against the Defaulting Respondents for failure to comply in any way with the Trustee's Subpoenas.  Specifically, the Defaulting Respondents, despite having been served with Subpoenas via process server, have failed to (i) communicate or meet and confer with the Trustee, despite multiple attempts by the Trustee to do so, (ii) serve responses and objections, or (iii) produce any responsive documents.  The Defaulting Respondents must be compelled to comply with their discovery obligations.

## FACTUAL BACKGROUND

### I.    Trustee's Rule 2004 Motions, Orders, and Subpoenas

11.    On July 28, 2022 the Trustee filed motions for Rule 2004 discovery as to the Individual Debtor (the "Individual Debtor 2004 Motion"),[9] various legal and financial advisors to the Individual Debtor (the "Advisors"),[10] and various entities and individuals affiliated with the Individual Debtor (the "Associated Entities")[11] (collectively, the "Initial 2004 Motions").

12.    On August 5, 2022, the Individual Debtor filed his *Limited Objection* to Rule 2004 Motions [ECF No. 703] (the "Limited Objection"), stating at the outset that the "Debtor agrees that the Trustee may take Rule 2004 examinations of the Debtor" and conceding that the "only issue before the Court [was] whether the Trustee may serve the Proposed Subpoenas—which he can—subject to the Debtor's . . . right to seek to quash the Proposed Subpoenas based on their scope or other grounds."  (ECF No. 703 at 1-3).  The Individual Debtor objected to the Individual

---

[9]    *See* [ECF No. 636].

[10]    *See* [ECF No. 637].

[11]    *See* [ECF No. 638].

Debtor 2004 Motion only to the extent it sought, among other relief, "to . . . compel the production of a particular scope of documents requested by the Trustee[.]" (*Id.* at 5).

13.     On August 16, 2022, the Court entered the Rule 2004 Orders, [ECF Nos. 756, 757, and 758], authorizing the Trustee to examine the Respondents pursuant to Rule 2004 and serve the Subpoenas and document requests attached thereto.   The Rule 2004 Orders directed the Respondents to, among other things: (i) "produce all documents within 30 days of the service of the Subpoena, or such other time as agreed upon by the Trustee[,]" and (ii) "ensure that all documents and other information, including without limitation in any electronic format . . . are available for production . . . [and] are not destroyed."  (ECF Nos. 756 at 1, 757 at 1, and 758 at 2).[12]

14.     Between August 19, 2022, and August 23, 2022 counsel to the Trustee served the Subpoenas on the Respondents.[13] The Subpoenas directed the Respondents to produce documents responsive to between twenty-one (21) and thirty (30) requests for production (the "Requests") concerning the Individual Debtor's acts, conduct, and/or property, among other topics related to the Individual Debtor's financial condition and affairs.[14]

## II.     Background Regarding Respondents

15.     Each of the Respondents is an important discovery target who is likely to have information highly relevant to Trustee's investigation.  The Individual Debtor is of course a critical source of information given his role as the debtor in this case, notwithstanding his assertions to

---

[12]    On September 7, 2022, the Trustee submitted his first supplemental motion for Rule 2004 discovery with respect to additional professionals, persons and entities related to the Individual Debtor, and relevant financial institutions.   *See* [ECF No. 839].   On September 21, 2022 the Court entered an order granting the First Supplemental 2004 Motion.  *See* [ECF No. 866].

[13]    *See* Luft Decl., Ex. C-1 (Aug. 19, 2022 correspondence); C-2-C-5 (affidavits of service for service of subpoenas on Ngok, Greenwich Land, Lamp Capital, and Golden Spring).

[14]    The Requests are attached as Exhibit A to each of the Subpoenas.  *See* n. 3 *supra*.

date that he has virtually no documents to produce to the Trustee.  The remainder of the Respondents are (i) related persons and/or Associated Entities or (ii) advisors to the Individual Debtor.  These parties are uniquely situated to have information directly related to the issues the Trustee is investigating, as follows:

- **Mei Guo** is the Individual Debtor's daughter (the "Daughter") who purportedly owns HK USA and Eastern Profit Corporation, a Hong Kong Entity that Judge Liman of the U.S. District Court of the Southern District of New York, in his 2021 decision in the case of *Eastern Profit Corp. v. Strategic Vision US LLC*, found to be, "in essence, a shell corporation" for the Individual Debtor[15] allegedly used to "protect his confidentiality and anonymity."[16]

- **HK USA** is purportedly owned by the Individual Debtor's Daughter.  HK USA holds title to the *Lady May*, a 150-foot luxury yacht that was found to be beneficially owned by the Individual Debtor.  In Adversary Proceeding 22-05003 in this case, the Trustee has taken the position that HK USA is the alter ego of the Individual Debtor and that the *Lady May* was received by HK USA pursuant to an actual fraudulent transfer effectuated by the Individual Debtor to protect the *Lady May* from creditors.  HK USA's expenses (including its legal fees) have been paid for by Golden Spring and Lamp Capital, entities that, as noted below, are purportedly owned by the Individual Debtor's son.  HK USA has no income, bank account, directors, officers, or employees.  HK USA has also shared an address with the Individual Debtor and other Individual Debtor-linked entities.  In the Individual Debtor's Chapter 11 Case, the Individual Debtor and HK USA currently are represented by the same counsel.

- **Ngok** is allegedly the Individual Debtor's wife who purportedly owns Greenwich Land, an entity which is the registered owner the Individual Debtor's residence on Taconic Road in Greenwich, Connecticut.

- **Greenwich Land** is purportedly owned by Ngok. Greenwich Land is the registered owner of the Individual Debtor's residence on Taconic Road in Greenwich, Connecticut. On April 26, 2022, Greenwich Land sold a second property on Ferncliff Road in Cos Cob, Connecticut.  The authorized signatory for Greenwich Land on the warranty deed in connection with the transfer is Max Krasner, who is an associate of the Individual Debtor with a number of roles at Individual Debtor-affiliated entities.  Greenwich Land's address at 162 East 64th Street, New York, New York 10065 has been used as the address of the Individual Debtor and numerous affiliated entities, including Golden Spring and HK USA.

---

[15]   *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC,* No. 18-CV-2185 (LJL), 2021 WL 2554631 at *1.

[16]   *Id.* at *7 ("During negotiations, [Kwok] requested that, to protect his confidentiality and anonymity, he would not sign or be a party to the Agreement but that a separate entity would sign and be a party.").

- **Lamp Capital** is purportedly owned by the Individual Debtor's son. Lamp Capital's sole member is Infinity Treasury Management, Inc., of which the Individual Debtor's son is the purported sole shareholder; the Individual Debtor's associate Max Krasner is director and officer; and the Individual Debtor's associate Daniel Podhaskie is a former director and officer. Lamp Capital also funded a $1 million retainer for the Individual Debtor's initial chapter 11 bankruptcy counsel, Brown Rudnick.

- **Golden Spring** is purportedly owned by the Individual Debtor's Son. Golden Spring was established and funded through a transfer of funds from one of the Individual Debtor's bank accounts in Hong Kong to the bank account of Golden Spring in New York in 2015. The Individual Debtor has testified that Golden Spring has been paying his living expenses since 2015. Golden Spring has also been paying the fees of the Individual Debtor's counsel and millions of dollars of maintenance fees associated with the Individual Debtor's apartment at the Sherry Netherland Hotel in Manhattan. Golden Spring's president, Yan Ping ("Yvette") Wang ("Ms. Wang") has testified that Golden Spring is the Individual Debtor's "family office." Golden Spring's address at 162 East 64th Street, New York, New York 10065 has been used as the address of the Individual Debtor and numerous affiliated entities, including HK USA and Greenwich Land. Importantly, Golden Spring has already twice filed notices of appearance in this case, on March 28, 23003 [EDF 139] and March 31, 2022 [ECF 149].[17]

## III.  Noncompliant Respondents' Responses and Objections to Subpoenas, Discovery Conferences, and Document Productions

### A.  The Individual Debtor, HK USA, and Mei Guo.

16.     On September 2, 2022, the Individual Debtor served Responses and Objections to the document requests attached to the Trustee's Subpoena (the "Individual Debtor's Responses and Objections").[18] In the Individual Debtor's Responses and Objections, the Individual Debtor puts forth multiple objections that improperly impede the Trustee's investigation. First, he contends without any support that the "breadth"[19] of certain Requests is so burdensome that no search is appropriate. Second, he takes issue with Requests that seek information concerning "non-

---

[17]  The order granting Golden Spring's motion to withdraw its appearance was entered on August 17, 2022. [ECF 760].

[18]  The Individual Debtor's Responses and Objections are attached to the Luft Declaration as **Exhibit D-1**.

[19]  *See* Luft Decl., Ex. D-1, Individual Debtor's Responses and Objections to Request Nos. 18, 19, 20 and 27.

debtor"[20] entities or potential assets or liabilities that the Individual Debtor asserts he does not have legal custody, possession, or control over, submitting that no documents of this nature will be searched for or produced because such assets are allegedly not estate assets and thus would have no relevance to this case. Third, he refuses to search for or produce any documents predating his fleeing China in late 2014 or early 2015.  In response to the Subpoenas, Mei Guo and HK USA submitted responses and objection to the Trustee's counsel in substantially the same form as the Individual Debtor, and on many of the same bases.

17.    Counsel to the Trustee and counsel to the Individual Debtor, HK USA, and Mei Guo (as noted above, the same counsel represents all three parties) held discovery conferences on September 9, 2022, September 15, 2022, and September 22, 2022.   At these conferences, counsel to the Individual Debtor, HK USA, and Mei Guo reiterated the position of such parties that they need not produce documents related to assets purportedly belonging to non-debtor entities, with the only exception being that they would produce documents related to assets over which a dispute of ownership presently exists (e.g., the *Lady May*).  Counsel to the Trustee stated its disagreement with this position.

18.    During their conferences, the parties also discussed the Individual Debtor's obligation to search for and produce documents from the files of his advisors and others holding documents on his behalf and the date range for the Requests.  Counsel to the Individual Debtor expressed its view that the Trustee's subpoenas to the Individual Debtor's Advisors obviated the need for the Individual Debtor (and for HK USA and Mei Guo) to search for and review documents in the possession of, for example, legal counsel, based on the Individual Debtor's representation that such advisors would produce all documents related to the Individual Debtor in their possession

---

[20]    *Id.* at Request Nos. 7, 9, 10, 12, 13, 14, 15, 16, 17, 19, 22, 23, 26, 30.

to the Trustee.  Counsel to the Trustee explained, however, that because such documents are in the control of the Individual Debtor and the Subpoena to the Individual Debtor covers different and additional topics not directed to the Advisors, the Individual Debtor must search for and produce non-duplicative documents of advisors, including advisors unknown to the Trustee.  Counsel to the Individual Debtor also reiterated the Individual Debtor's position that he would not search for or produce documents predating the Individual Debtor leaving China in late 2014 or early 2015, and the Trustee's counsel expressed disagreement with that position.

19.     Finally, the parties also discussed the sources of potential responsive documents of the Individual Debtor.  Counsel to the Individual Debtor explained that the Individual Debtor does not use a computer or e-mail and does not know how to use a computer, but he has two iPhones. Counsel also represented that the Individual Debtor searched his iPhones and did not identify any responsive documents.   Counsel further stated that, based on the Individual Debtor's representations, the Individual Debtor has no documents related to Golden Spring, an entity purportedly owned by the Individual Debtor's son and which purportedly pays all his living expenses, no documents related to his son or his son's business more generally, and no documents related to any one of numerous associated entities.  The Trustee also probed the Individual Debtor's assertion that he has no documents related to any business interests because he is not presently engaged in any business.  To test this assertion, the Trustee asked how the Individual Debtor could claim to have no business activity given that his music is currently for sale on iTunes, and given this, he must have related documentation.  The Individual Debtor's counsel could not answer the question.

20.     Following the above discussions, over the last several weeks, including into October 2022, the Trustee and his counsel have engaged in further discussions with the Individual

Debtor's counsel, regarding Subpoena and document production issues, including without limitation issues related to privilege disputes. These discussions have resulted in the recent production of documents from certain of the Individual Debtor's advisors, but they have not resolved any of the disputes between the Trustee and the Individual Debtor addressed herein.

21. To date, the Individual Debtor, HK USA, and Mei Guo have produced hardly any documents to the Trustee. On August 30, 2022, the Individual Debtor made a production of 14 documents, consisting primarily of corporate documents related to Genever Holdings Corporation. On September 16, 2022, the Individual Debtor produced 32 additional documents, consisting primarily of tax returns, government stimulus checks, and litigation funding agreements, for a total of *46 documents*. On September 19, 2022, HK USA and Mei Guo produced 18 and 19 documents, respectively, to the Trustee, including contracts with third parties, organizational documents, and screenshots of iPhone digital messages ("iMessages"). Notably, of the 19 seemingly hand-selected iMessages produced by Mei Guo, eighteen related to innocuous scheduling conversations between Mei Guo and the former captain of the *Lady May*. On September 30, 2022, HK USA produced an additional 354 documents and communications, including e-mail messages, documents related to the *Lady May*, and certain publicly available court pleadings. HK USA's second production did not include any documents related to the Individual Debtor's use of the *Lady May*, the costs and expenses of maintaining the yacht, who bore those costs, and/or how the yacht was acquired and with funds from what entity.

IV.    **Ngok and Greenwich Land**

22. The Trustee served Greenwich Land and Ngok with Subpoenas on August 22, 2022 and August 23, 2022, respectively. Both Greenwich Land and Ngok had a deadline of

September 6, 2022 to serve objections to the subpoenas and a deadline of September 21, 2022 for the production of documents.  The Trustee did not receive timely objections for either party.

23.     On September 16, 2022, counsel for the Trustee and counsel for Ngok discussed, among other things, the Subpoena served on Ngok.  During that meet and confer, counsel for Ngok asked whether the Trustee would accept service of responses and objections to the Subpoena. Counsel for the Trustee indicated that counsel for Ngok could send her responses and objections, but the Trustee was reserving all rights as to deadlines that already passed.

24.     On September 23, 2022, counsel for Ngok served untimely objections to the Subpoena (the "Ngok Objections").[21]  The Ngok Objections objected to, among other things, requests for information which it characterized as "beyond the scope permitted of a Rule 2004 examination" such as those requests which "seek[] information related to the Debtor's Family, Associated Entities, and Associated Individuals without sufficient limitation to information concerning the Debtor."[22]  On September 30, 2022, counsel for the Trustee and counsel for Ngok met and conferred to discuss the Ngok Objections.  Counsel for the Trustee noted that the Trustee is entitled to investigate potential assets of the Individual Debtor that may be held by people or entities other than the Individual Debtor, and that the Trustee's investigation is not limited to what few assets that the Individual Debtor himself admits to owning, or exclusively to communications or documents connected to the Individual Debtor, rather than to the Individual Debtor's Family, Associated Individuals, and Associated Entities.

25.     On October 13, 2022 and October 17, 2022, counsel for the Trustee emailed counsel for Ngok inquiring about, among other things, Ngok's production of documents.  That same day,

---

[21] A copy of the Ngok Responses and Objections is attached to the Luft Declaration as **Exhibit E**.
[22] *See* Luft Decl., Ex. E, Ngok Objections at 2.

Ngok submitted her Motion requesting an extension (the "Extension Motion") for the time to produce documents in response to the Subpoena up to and including November 10, 2022.

26.     On October 20, 2022, counsel for the Trustee spoke with counsel for Ngok, who stated that he was now counsel to both Ngok and Greenwich Land (collectively, the "Ngok Parties"), and reached an agreement resolving the Extension Motion on the following terms:

- the Ngok Parties would produce documents in connection with formation of Greenwich Land, its funding, acquisition of any property (notably the two homes), the sale of any property (notably the Fern Cliff residence), and the source and location of any funds for the acquisition of any property or sale of any property; and

- Ngok would not object to the search of documents related to Greenwich Land, and Greenwich Land would not object to the search of documents regarding Ngok.

27.     The Ngok Parties, however, maintained their objections to searching for documents related to Individual Debtor's Family, Associated Individuals, or Associated Entities (other than Greenwich Land), and the Trustee reserved all his rights in response to such objections.

## V.     Discovery From Other Subpoena Recipients

28.     Contemporaneously with his discussions with the Noncompliant Respondents, the Trustee has been discussing Subpoenas with and receiving documents from other parties, including current and former advisors to the Individual Debtors.  Certain of these other parties, including Melissa Francis and Aaron Mitchell, both counsel for the Individual Debtor, as well as other members of the Individual Debtor's family and his associates, originally adopted certain of the same positions as the Noncompliant Respondents, including the position that they would not search for and produce documents related to assets that ostensibly belong to persons other than the Individual Debtor.

29.     The Trustee was originally planning to file this motion to compel against some or all of these other parties, but he further met and conferred with such parties to see if disputes could be resolved consensually.  The Trustee is pleased to report that, through discussions that have occurred up until the date of this filing, he has—for the time being—resolved his issues with many of these parties without needing the assistance of the Court.  For example, both Ms. Francis and Mr. Mitchell agreed within the past week to drop their objection to searching for documents related to assets over which the Individual Debtor's family and associates claim ownership.

**VI.    Defaulting Respondents' Failure to Respond to Subpoenas**

30.     The Defaulting Respondents are Lamp Capital and Golden Spring.  The Trustee has served each with a Subpoena, but none has responded.  Specifically:

- The Trustee served Lamp Capital via process server on August 23, 2022 at a Delaware address for its registered agent.  Lamp Capital's deadline to serve objections was on September 6, 2022, and its deadline for the production of documents was September 22, 2022. The Trustee has not received any objections or document productions from Lamp Capital.  Counsel for the Trustee sent two letters to the registered agent of Lamp Capital to follow up on the Subpoena: the first on September 13, 2022, and the second on October 19, 2022.  Counsel for the Trustee has received no response to either correspondence.

- The Trustee served Golden Spring via process server on August 22, 2022 at a Delaware address for its registered agent.  Golden Spring's deadline to serve objections was on September 6, 2022, and its deadline for the production of documents was September 21, 2022.  The Trustee has not received any objections or document productions from Golden Spring.  The Trustee sent two letters to the registered agent of Golden Spring to follow up on the Subpoena: the first on September 13, 2022, and the second on September 30, 2022.  Counsel for the Trustee received no response to either correspondence.

## JURISDICTION AND VENUE

31.     The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in accordance with 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2) (A), (E), and (O).

## RELIEF REQUESTED

32.    The Trustee seeks entry of the Proposed Order (1) compelling the Noncompliant Respondents to comply with the Rule 2004 Orders by searching for and producing documents related to potential estate assets, regardless of whether other parties claim to own such assets;[23] (2) compelling the Individual Debtor, Mei Guo, and HK USA to search for and produce documents from February 5, 2012 forward, unless another timeframe is indicated by a Request; and (3) compelling the Individual Debtor to (i) search for and produce documents of advisors that are within his control, including all current and former law firms, accountants, and other advisors and agents; and (ii) perform, through counsel, a further investigation, consistent with the Federal Rules, for additional sources of responsive documents and electronically stored information and certify the results of such investigation to the Trustee in writing; and (4) holding the Defaulting Parties in civil contempt for failing to respond to the Subpoenas.

## BASIS FOR RELIEF

### I.    All Noncompliant Respondents Must Produce Information Related to Individual Debtor-Controlled Assets

33.    The Trustee is tasked with investigating the Individual Debtor's assets and affairs for the benefit of the Individual Debtor's creditors. Assets related to the Individual Debtor, but that the Individual Debtor or other third-parties assert are *not* owned or controlled by the Individual Debtor are precisely the potential Estate assets and property the Trustee must identify and investigate. The Noncompliant Respondents' refusal to search for any documents related to such

---

[23]    This includes all documents responsive to Individual Debtor Request Nos. 1-26 and 28, and all documents responsive to Mei Guo/HK USA Request Nos. 1, 3, 4, 7 through 11, 14, 15, 17, 18, and 20, which seek information concerning the identification of potential Estate assets or other property in which the Individual Debtor may hold an interest.

assets based upon their view that a non-debtor's purported ownership of such assets precludes the Trustee's investigation is baseless.

34.    "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Grp. Ltd.*, Case No. 16-13625-JLG, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (internal quotation and citation omitted).  This includes revealing the nature and extent of the estate and in discovering assets of the debtor that may have been intentionally or unintentionally concealed.  *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996); *see also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred.") (internal quotation and citation omitted)); *id.* (noting that "[u]nlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a fishing expedition and an inquisition") (internal citations and punctuation omitted); Fed. R. Bankr. P. 2004(b) (authorizing scope of 2004 examinations "relat[ing] . . . to . . . property . . . and financial condition of the debtor, or to ***any matter*** which may affect the administration of the debtor's estate") (emphasis added).

35.    Here, the Trustee's Requests, including those seeking information concerning known and unknown assets that may be Estate property, fall squarely within the universe of appropriate areas for inquiry under Bankruptcy Rule 2004.  The Trustee's Requests for information regarding assets ostensibly owned by relatives, known associates, or related entities are especially appropriate given the Individual Debtor's history of using such persons and entities as repositories of his assets and enablers of his lifestyle.  Indeed, multiple courts have already determined that the

Individual Debtor hides his assets in shell companies and through his family members. *See, e.g.*, *Eastern Profit Corp.,* 2021 WL 2554631, at *1 (Eastern Profit is "in essence, a shell corporation for" the Debtor"); Final Contempt Decision at 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 1181 (Individual Debtor had made "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members").

36.     The Individual Debtor's position that he need not search for documents related to these assets is absurd, as it would deprive the Trustee of information centrally relevant to his investigation and to the administration of this case.  For example, as noted above, the Individual Debtor's position would allow him to not produce documents related to another asset like the *Lady May* on the basis that someone else (*e.g.*, his daughter) claims to own the asset.  It would also allow the Individual Debtor to avoid producing documents in his possession that relate to entities (such as Golden Spring) that have been funding his expenses.  These documents are plainly relevant and must be produced.

37.     While the Individual Debtor and others may believe that particular assets do not belong to the Individual Debtor, that bald assertion cannot prevent the Trustee from conducting his investigation to arrive at his own conclusions.  If the Trustee eventually decides to bring legal action to determine the true ownership of an asset, it will be up to the Court—not to the Individual Debtor or anyone else—to determine whether or not an asset is property of the Estate. Accordingly, the Noncompliant Respondents must be compelled to search for and produce documents concerning potential estate assets, regardless of whether those assets ostensibly belong to others at this time.

## II.    Individual Debtor Must Search For Responsive Documents Beyond His Possession

38.    In responding to a subpoena for documents, a party "served with a subpoena must 'conduct a reasonable and diligent search for responsive documents.'"  *Universitas Educ. v. Benistar,* No. 3:20-cv-738, 2022 WL 860411, at *3 (D. Conn. Mar. 22, 2022) (citation omitted); *see also* Fed. R. Civ. P. 26(b).  Gathering documents from a single source without making an "effort to find responsive documents" from other sources is not a diligent search.  *Universitas Educ.*, 2022 WL 860411, at *3 (citation omitted).  At bottom, "perfection is not required. However, litigation is not a game, and parties cannot engage in halfhearted or ineffective efforts to identify and produce relevant documents."  *Top Jet Enters. v. Kulowiec,* No. 21-MC-789 (RA) (KHP), 2022 WL 280459, at *5 (S.D.N.Y. Jan. 31, 2022) (citations omitted).

39.    A subpoena recipient must search for and produce documents within its control but not in its immediate possession.  "[T]he vast majority of federal cases [ ] hold[ ] that Rule 34(a) of the Federal Rules of Civil Procedure, which allows document requests to be made as to items in the responding party's possession, custody, or control, enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained any *right or ability to influence* the person in whose possession the documents lie." *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 209 (S.D.N.Y. 2012) (internal quotations omitted) (emphasis in original); *see also Lopez v. Florez*, No. 1:08-cv-01975-LJO-JLT, 2013 WL 1151948, * 2 (E.D. Cal. Mar. 19, 2013) ("A responding party has an affirmative duty to reasonably seek information requested under Rule 34(a) from its agents or others under its control.").

40.    "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y.

2006) (quoting *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994)); *Bank of N.Y. v. Meridien BIAO Bank Tanz. Ltd*., 171 F.R.D. 135, 146 (S.D.N.Y. 1997) (same); *see also Annunziato v Collecto, Inc.*, 304 F.R.D. 360, 363 (E.D.N.Y. 2015) (finding that where a non-party was an agent of a party, the principal-agent relationship established the necessary control such that party-principal had the "right, authority or practical ability to obtain [ ] documents from [the] non-party to the action"); *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (finding that "control" of documents does not require legal ownership or physical possession).[24]

41.     In this case, the Individual Debtor has refused to comply with his duty to search for and produce documents in the possession of his advisors over which he has control.  All the Individual Debtor has said he is willing to do is simply not instruct those of his advisors who received separate Subpoenas to not respond to such Subpoenas.  The fact that the Trustee has also served Subpoenas on certain of the Individual Debtor's advisors, however, does not displace the Individual Debtor's own obligations to search documents within his control in response to the Subpoena served on him.  Unless the Individual Debtor does so, the Trustee will not receive all of the documents to which he is entitled.  This is so both because the Trustee's requests to the Individual Debtor are different than his requests to his advisors and also because the Trustee is not aware of (and therefore has not subpoenaed) all of the Individual Debtor's relevant advisors.  The Trustee must rely on the Individual Debtor to identify the entire universe of his advisors who may have responsive documents—including advisors not presently known to the Trustee—and collect and search their documents as necessary.[25]

---

[24]    Furthermore, a New York state court has already disposed of the Individual Debtor's argument that he need not search, review, and produce documents that he asserts are outside of his possession.  (*See generally* May 27,2021 Hr'g Tr. 10:4-8, (Ostrager, J), *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, Index No. 652077/2017 (movant entitled to have discovery of non-Debtor entity funding Debtor's expenses)).

[25]    The same standard applies to agents of Mei Guo and HK USA, and any documents in such agents' possession are controlled by Mei Guo and HK USA, and must be searched accordingly.

42.     To be clear, to the extent an advisor who separately received a Subpoena produces all documents in its possession concerning the Individual Debtor, the Trustee is not asking that the Individual Debtor search for and reproduce duplicative documents, nor does the Trustee have any objection to the Individual Debtor and his advisor coordinating to avoid duplication of efforts. The Individual Debtor, however, has an independent obligation to ensure that all documents responsive to his Subpoena are produced to the Trustee, even if those documents are in the possession of his advisors. The Court should order the Individual Debtor to comply with this obligation.

**III.   Counsel to the Individual Debtor Must Ensure Compliance With Discovery Obligations**

43.     In addition to the Individual Debtor's refusal to search the files of his agents and advisors, counsel for the Individual Debtor has failed to adequately identify and search various of his own sources of potentially responsive documents. In many cases, all counsel has done is simply ask the Individual Debtor (or his other advisors) whether he has various types of responsive documents—such as emails, text messages, and other electronic communications—and accepted his responses at face value. This is not enough to comply with counsel's discovery obligations on behalf of their client.

44.     At the outset of any litigation, counsel for a party has a duty to understand the ways in which their client stores documents and information, whether in traditional physical media or electronically. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("*Zubulake V*") (explaining that, to comply with discovery obligations, "counsel must become fully familiar with her client's document retention policies . . . [and] data retention architecture," and must also communicate with "'key players' in the litigation in order to understand how they stored information"). "A party ***and her counsel*** must make certain that all sources of potentially relevant information are identified and placed 'on hold' . . . ." *Id.* (emphasis added); *see also In*

*re NTL, Inc. Sec. Litig.,* 244 F.R.D. 179, 197-98 (S.D.N.Y. 2007) ("The preservation obligation runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'"). Once the information is placed on hold, "[c]ounsel must take affirmative steps to monitor compliance so that ***all sources of discoverable information are identified and searched***." *Id.* at 195 (emphasis added); *see also Phoenix Four, Inc. v. Strategic Resources Corp*., No. 05 Civ. 4837, 2006 WL 1409413, at \*5-6 (S.D.N.Y. May 23, 2006) (emphasizing counsels' affirmative duty to search for sources of electronic information). Importantly, "counsel's obligation is not confined to a request for documents; the duty is to search for ***sources*** of information." *Id.* at \*5 (emphasis in original).

45.    Here, counsel for the Individual Debtor has informed the Trustee that counsel relied on the Individual Debtor's statements that, outside of documents already produced to the Trustee, the only sources of responsive information the Individual Debtor has in his possession are two cell phones and that the Individual Debtor searched those phones and determined they contain no responsive documents. Counsel's unchecked reliance on the Individual Debtor's statements is not sufficient to comply with their discovery obligations, as counsel has an independent duty to oversee an adequate search of all potential sources of responsive documents in the Individual Debtor's custody, possession, or control. This is especially true where, as here, the client's statements are dubious at best.

46.    While, ordinarily, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible," a court must "evaluate[] [the producing party's] efforts 'in light of the  full record in the case,' including [any] demonstrated history of frustrating discovery efforts in the past." *Mintz Fraade Law Firm, P.C. v. Brady,* No.

19-CV-10236 (JMF), 2021 WL 621206, at *4 (S.D.N.Y. Feb. 17, 2021). Here, based on, among

other things, the Individual Debtor's vast business interests, his sprawling web of affiliated entities

and known associates, and the constant stream of social media and other digital content he puts

out on a daily basis, it is simply not credible that two cell phones are the *only* sources of potentially

responsive electronic documents in the Individual Debtor's custody, possession, or control and

that neither phone contains a *single* document responsive to the Subpoena.[26] Nor is it believable

that the Individual Debtor has only a grand total of only *forty-six responsive documents* in his

custody, possession or control. *See id.* (where the court, given defendant's "history in [the] case"

was "understandably suspicious" of defendant's "conclusory assertion" where defendant only

managed to produce "a meager twenty-two documents" yet asserted the he had "exhausted the

universe of responsive documents").[27]

47.     In summary, counsel cannot accept the Individual Debtor's representations

regarding his lack of responsive documents at face value but must instead perform a diligent search

by obtaining and searching all sources of potentially responsive information and ensure that all

---

[26]   Indeed, the Individual Debtor has, in the past, admitted to using numerous cell phones simultaneously. *See* Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions, Docket No. 107 at ¶ 17 (The Individual Debtor noting that the retains ownership of his own "clothing and mobile phones."); VICE News, "Exiled Chinese Billionaire Uses YouTube to Wage a War on Corruption, YouTube" (original air date on HBO, Nov. 15, 2017), https://www.youtube.com/watch?v=LkOsgh5kcgQ (In this video, the Individual Debtor shows multiple cellphones of his, and claims the Chinese Communist Party has hacked some of his phones).

[27]   The Individual Debtor's stated lack of almost any documents, if taken at face value, also raises very serious questions of spoliation. Not only has this case been pending since February 2022, but prior to it, the Individual Debtor was embroiled in countless lawsuits, most notably those involving his dealings with PAX, UBS and other business transactions. For each of these litigations, the Individual Debtor had an obligation to ensure that no relevant documents were destroyed and that all such documents were maintained. The Individual Debtor's assertion of having no more than 46 documents total seems to strongly suggest that the Individual Debtor has not complied with his preservation requirements. To give a concrete example, in the UBS litigation there were allegations by the Individual Debtor that he had WhatsApp messages that were relevant evidence in that matter. Yet, when asked why such documents had not been produced in response to the Subpoena in this case, counsel for the Individual Debtor stated they no longer existed, despite the fact that the litigation with UBS is ongoing. To the extent the Individual Debtor has not complied with his document preservation requirements, and has allowed for spoliation of his documents, the Trustee reserves all rights, including to seek an adverse inference as to what information the missing documents contained.

attendant data is preserved and produced.  This means, for example, that counsel must (i) image and search electronically the entire content of the Defendants' two iPhones for responsive documents; (ii) inquire and understand the location of documents counsel know must exist somewhere—e.g. records of the funds used to pay for the Individual Debtor's lavish lifestyle, documents related to the music, crypto and other business interests that he frequently openly discusses on social media; and (iii) either (a) run searches of all other potential sources of responsive documents or (b) certify under oath all the steps they have taken to determine that the Individual Debtor has no other such sources, including without limitation other electronic devices (such as laptops or tablets), email accounts, messaging and social media accounts (such as WhatsApp, iMessage, and Facebook), and hard copy documents.  *See generally CFTC v. Main & Prospect Capital, LLC,* No. 2:19-cv-09736-DSF-AFMx, 2020 WL 11303655, at *3 (C.D. Cal. Nov. 23, 2020) (requiring party, and counsel, to certify under oath that document production included all non-privileged responsive documents in party's custody, possession, or control); *Kaur v. Alameida*, No. CV F 05 276 OWW DLB, 2007 WL 1449723, *2 (E.D. Cal. May 15, 2007) (ordering defendants to conduct additional search for responsive documents and reminding defendants and counsel "of their duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents").

## IV.      Individual Debtor Must Produce all Passports, Including all Pages Thereof, and Must Search for Documents Dated February 5, 2012 or Later

48.      The Individual Debtor holds himself out as owning real and personal property throughout the world.  All of the Individual Debtor's passports and pages within, whether current or expired and regardless of the nation or nation-state of issuance, are relevant and critical to the Trustee's investigation into where potential Estate assets may be located, hidden, or moved by the Individual Debtor.

49.    Counsel to the Individual Debtor has stated that a tax document that has been produced to the Trustee includes the ***first page*** of the Individual Debtor's passport, and that counsel intends to stand on its objection regarding producing the entirety of the Individual Debtor's passport.  The Trustee, however, did not request the Individual Debtor's passport information to catalogue the Individual Debtor's passport number or similar information.  The Trustee needs the remainder of the passport pages to understand where the Individual Debtor has been and, therefore, where his assets and property may be located.

50.    The Individual Debtor has provided no justification for his refusal to produce this information to the Trustee.  To the extent the Individual Debtor believes his passport and travel history constitute confidential information, he can avail himself of the protections of the protective order in this case.  The Court must compel the production of the Individual Debtor's passports.

51.    In addition, the Court must compel the Individual Debtor to produce documents dated February 5, 2012 or later (unless another time period is indicated by a Request) and not permit him to limit his production to documents post-dating his fleeing China in late 2014 and/or early 2015.  The Individual Debtor's proposed date limitation is arbitrary and has the potential to exclude relevant documents.  The Individual Debtor must instead be required to search for documents dated as early as February 5, 2012, which documents are plainly relevant to fraudulent transfer claims that may be brought as a result of the Trustee's investigation.

## V.    <u>The Defaulting Parties Should be Held in Civil Contempt</u>

52.    As discussed above, the two Defaulting Parties—Lamp Capital and Golden Spring—are all closely connected to the Individual Debtor, his property, and his business dealings and are therefore highly likely to have documents relevant to the Trustee's investigation.  None of these parties, however, has responded in any way to the Trustee's Subpoenas.

53.     Rule 45(e) of the Federal Rules of Civil Procedure provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." *In re Corso*, 328 B.R. 375, 385 (E.D.N.Y. 2005) (quoting FRCP 45(e)) (quotations omitted); *PaineWebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) ("Where a party fails to object to a subpoena and also fails to comply, it may be held in contempt, pursuant to Rule 45[(e)]") (internal quotations omitted).

54.     In order to hold a party in civil contempt, "the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that the order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (*citing N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 857 (2d Cir. 1984)).

55.     In a civil contempt proceeding, a finding of contempt will be upheld so long as the order violated "is clear and unambiguous, the proof of non-compliance [with the order] is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply." *Corso*, 328 B.R. at 385 (quoting *United States v. Local 1804–1, Int'l Longshoremen's Assn.*, 44 F.3d 1091, 1096 (2d Cir.1995) (quotations omitted) (alterations in original)).

56.     Additionally, a party that fails to timely respond or object to a subpoena within the mandated period is not permitted to raise objections at a later time. *See Corso*, 328 B.R. at 384-85 ("Because [the subpoenaed party] did not raise any timely objections to the Trustee's subpoena, or move to quash it in a timely manner [it] waived its right to object to the Subpoena.").

57.     Finally, courts have found that a party that fails to respond or object to a subpoena may be sanctioned for that failure. *See PaineWebber Inc.*, 211 F.R.D. at 249 ("Where a party fails to object to a subpoena and also fails to comply, it may be held in contempt, pursuant to Rule

45[(e)], **and sanctions may therefore be imposed**.") (internal quotations omitted and emphasis added); *Corso*, 328 B.R. at 385-86 (upholding bankruptcy court's sanction of a party which made "no effort" to comply with a Rule 2004 subpoena). Specifically, courts in the Second Circuit have awarded attorneys' fees where a party fails to comply with a subpoena. *See Gucci Am., Inc. v. Li*, No. 10-CV-4974 (RJS), 2015 WL 7758872, at *4 (S.D.N.Y. Nov. 30, 2015) ("[C]ourts in this Circuit have awarded attorneys' fees where a party or a non-party willfully fails to comply with a subpoena.").

58.     Here, service of the document requests attached to the Subpoenas on the Defaulting Parties has occurred, and despite their awareness of the Subpoenas, the Defaulting Parties have made no effort whatsoever to comply with the documents requests attached to the Subpoenas. *See id.* (affirming bankruptcy court's Contempt Order where service of subpoena was clear and unambiguous and no effort was made to comply). Accordingly, the Court should issue an order (i) holding the Defaulting Parties in civil contempt of Court, (ii) preventing them from raising any objections to the Subpoenas, and (iii) ordering them to pay the Trustee's attorneys' fees related to this motion.

## NO PRIOR REQUEST

59.     The Trustee has not previously sought the relief requested herein from this or any other court.

## CERTIFICATION OF COUNSEL

60.     As set forth above, counsel for the Trustee has conferred with counsel for the Noncompliant Respondents in good faith via e-mail and in virtual conferences in an effort to resolve this dispute, which efforts were unsuccessful.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the

Proposed Order granting the relief requested in this Motion to Compel and such other relief as is

just and proper.


Dated:    October 28, 2022            LUC A. DESPINS,
          New Haven, Connecticut      CHAPTER 11 TRUSTEE

          By: */s/ Patrick R. Linsey*
              Patrick R. Linsey (ct29437)
              NEUBERT, PEPE & MONTEITH, P.C.
              195 Church Street, 13th Floor
              New Haven, Connecticut 06510
              (203) 781-2847
              plinsey@npmlaw.com

                  *and*

              Nicholas A. Bassett (admitted *pro hac vice*)
              PAUL HASTINGS LLP
              2050 M Street NW
              Washington, D.C., 20036
              (202) 551-1902
              nicholasbassett@paulhastings.com

                  *and*

              Avram E. Luft (admitted *pro hac vice*)
              Douglass Barron (admitted *pro hac vice*)
              PAUL HASTINGS LLP
              200 Park Avenue
              New York, New York 10166
              (212) 318-6079
              aviluft@paulhastings.com
              douglassbarron@paulhastings.com

              *Counsel for the Chapter 11 Trustee*

**<u>Exhibit A – Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                           :
In re:                                     :    Chapter 11
                                           :
HO WAN KWOK, et al.,                       :    Case No. 22-50073 (JAM)
                                           :
           Debtors.¹                       :    Jointly Administered
                                           :
-------------------------------------------------------x
```

**[PROPOSED] ORDER COMPELLING INDIVIDUAL DEBTOR, MEI GUO, HK
INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, HING CHI NGOK,
GREENWICH LAND LLC, LAMP CAPITAL LLC, AND GOLDEN SPRING (NEW
YORK) LTD. TO <u>COMPLY WITH RULE 2004 SUBPOENAS</u>**

Upon consideration of the Motion seeking an order compelling the Ho Wan Kwok (the
"<u>Individual Debtor</u>"), Mei Guo, HK International Funds Investments (USA) Limited, LLC ("<u>HK</u>
<u>USA</u>"), Hing Chi Ngok ("<u>Ngok</u>"), Greenwich Land LLC ("<u>Greenwich Land</u>," together with the
Individual Debtor, Mei Guo, and HK USA, and Ngok, the "<u>Noncompliant Respondents</u>"), Lamp
Capital LLC ("<u>Lamp Capital</u>") and Golden Spring (New York) Ltd. ("<u>Golden Spring</u>," and
together with Lamp Capital the "<u>Defaulting Respondents</u>" and collectively with the Noncompliant
Respondents, the "<u>Respondents</u>") to comply with the Court's *Order Granting Chapter 11
Trustee's Application for Rule 2004 Examination of Ho Wan Kwok* [ECF No. 757] (the "<u>Individual</u>
<u>Debtor 2004 Order</u>") and *Order Granting Chapter 11 Trustee's Application for Rule 2004
Discovery with Respect to Various Entities and Individuals Affiliated with Debtor* [ECF No. 758]
(together with the Individual Debtor 2004 Order, the "<u>Rule 2004 Orders</u>") and with the subpoenas
(the "<u>Subpoenas</u>") the Trustee issued pursuant to the Rule 2004 Orders, after notice and a hearing,
*see* 11 U.S.C. § 102(1), it appearing that cause exists to grant the requested relief as conditioned
hereafter; it is hereby

**ORDERED**: The Motion is granted as set forth below.

**ORDERED**: The Respondents are not entitled to object to the Trustee's Subpoenas and/or
refuse to search for and produce documents on the grounds that the Trustee has requested
information related to assets allegedly belonging to persons or entities other than the Individual
Debtor, including without limitation his family members and associated entities.  Any such
objections to the Subpoenas or document requests on this basis are overruled.  The Respondents

---

¹    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "<u>Individual Debtor</u>")
and Genever Holdings Corporation (the "<u>Genever BVI Debtor</u>"). The mailing address for the Trustee and the Genever
BVI Debtor is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the
Estate of Ho Wan Kwok (solely for purposes of notices and communications).

shall search for and produce all documents formerly withheld on this basis within 3 days of entry of this Order.

**ORDERED**:  The Individual Debtor, Mei Guo, and HK USA must search for and produce documents in response to the Trustee's Subpoena dated February 5, 2012 or later, unless a Request specifies a different time period.  The Individual Debtor shall produce all documents formerly withheld based on his objection to this time period within 3 days of entry of this Order.

**ORDERED**: The Individual Debtor must search for and produce documents in response to the Trustee's Subpoena that are within his custody, possession, or control, including documents in the files of his current or former counsel and other agents and advisors.  The Individual Debtor is not entitled to refuse to produce responsive documents on the grounds that documents in the possession of his counsel, advisors, and agents are not within his custody, possession, or control and/or that the production of such documents should instead be made by such counsel, advisors, and agents, and all such objections on this basis are hereby overruled.  The Individual Debtor shall produce all documents formerly withheld based on such objections within 3 days of entry of this Order.

**ORDERED**: Within 14 days of entry of this Order, the Individual Debtor shall file a sworn declaration describing in detail the document collection, search, and review actions taken by him and his counsel in response to the Individual Debtor 2004 Order and Subpoena, including without limitation a detailed description of the processes that he and his counsel performed to (i) identify all of the Individual Debtor's electronic devices; all online document repositories to which he has access; all social media, email, and other accounts associated with electronic documents; all bank accounts and related account statements; and all other potential sources of responsive hard copy and electronic documents that may exist; and (ii) search the foregoing sources for responsive documents, including without limitation for documents responsive to the Requests related to expenses or money transfers, to assets or financial or business transactions or records related to the Individual Debtor's family or Associated Entities, and to business interests associated with the Individual Debtor.

**ORDERED**: Within 3 days of entry of this Order, in the event the Defaulting Parties remain unresponsive to the Subpoenas, the Defaulting Parties shall be in civil contempt of Court, shall be estopped from raising any objections to the Subpoenas, and shall be required to pay the Trustee's attorneys' fees related to this Motion.

Dated: _____, 2022


_____
Julie A. Manning,
United States Bankruptcy Judge