UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
|     HO WAN KWOK, | * | |
| | * | |
|         Debtor. | * | |
| | * | |
| | * | |
| HK INTERNATIONAL FUNDS | * | Adv. Proc. No. 22-05003 |
|  INVESTMENT (USA) LIMITED, | * | |
| | * | |
|         Plaintiff, | * | |
| | * | |
| | * | Bridgeport, Connecticut |
|     v. | * | October 25, 2022 |
| | * | |
| LUC A. DESPINS, | * | |
|  Chapter 11 Trustee, | * | |
| | * | |
|         Defendant. | * | |
| | * | |

    * * * * * * * * * * * * * * * *

TRANSCRIPT OF MOTION TO QUASH and
CONTINUED PRETRIAL CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | ERIC A. HENZY, ESQ. |
| | Zeisler & Zeisler, P.C. |
| | 10 Middle Street, 15th Floor |
| | Bridgeport, CT  06604 |
| | |
| For the Creditor, Pacific | ANNECCA SMITH, ESQ. |
|  Alliance Asia Opportunity | Robinson & Cole |
|  Fund L.P.: | 28 Trumbull Street |
| | Hartford, CT  06103 |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES:   (Cont'd)


For the Chapter 11            PATRICK R. LINSEY, ESQ.
 Trustee:                     Neubert Pepe & Monteith, PC
                              195 Church Street
                              New Haven, CT  06510


For the Chapter 11 Trustee:  NICHOLAS A. BASSETT, ESQ.
                             Paul Hastings LLP
                             200 Park Avenue
                             New York, NY  10166


Chapter 11 Trustee:          LUC A. DESPINS, ESQ.
                             Paul Hastings LLP
                             200 Park Avenue
                             New York, NY  10166


For Baker Hostetler,         KELLIANNE BARANOWSKY, ESQ.
 Interested Party:           Green & Sklarz, LLC
                             One Audubon Street
                             New Haven, CT  06511

                             ANDREW V. LAYDEN, ESQ.
                             Baker Hostetler
                             200 South Orange Avenue
                             Suite 2300
                             Orlando, FL  32801


For Williams & Connolly,     JAMES J. HEALY, ESQ.
 Interested Party:           Cowdery & Murphy, LLC
                             280 Trumbull Street
                             Hartford, CT  06103

                             ERICA S. SIMPSON, ESQ.
                             Williams & Connolly, LLP
                             680 Maine Avenue, SW
                             Washington, DC  20024

1    (Proceedings commenced at 1:07 p.m.)

2          THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok, and Adversary No. 22-5003, HK International Funds

4    Investments (USA) Limited versus Trustee Luc Despins.

5          THE COURT:  Okay.  Good afternoon.  If we could

6    have appearances for the record starting with the Chapter 11

7    Trustee, please.

8          MR. DESPINS:  Good afternoon, Your Honor.  Luc

9    Despins, Chapter 11 Trustee.

10          THE COURT:  Good afternoon.

11          MR. LINSEY:  Good afternoon, Your Honor.  Patrick

12    Linsey, Connecticut counsel for the trustee.

13          THE COURT:  Good afternoon.

14          MR. BASSETT:  Good afternoon, Your Honor.  Nick

15    Bassett, from Paul Hastings, on behalf of the Chapter 11

16    Trustee.

17          THE COURT:  Good afternoon.

18          Attorney Henzy?

19          All the rest of you can come to the table.  Go

20    right ahead, please.

21          MR. HENZY:  Eric Henzy, of Zeisler & Zeisler, for

22    the debtor, Ho Wan Kwok.

23          THE COURT:  Good afternoon.

24          MR. HENZY:  Good afternoon.

25          MS. SMITH:  Annecca Smith, Robinson & Cole, for

1    PAX.

2              THE COURT:  Good afternoon.

3              THE COURTROOM DEPUTY:  Sorry, I didn't hear your

4    name.

5              MS. SMITH:  Annecca Smith.

6              THE COURTROOM DEPUTY:  Thank you.

7              MS. BARANOWSKY:  Good afternoon.  Kellianne

8    Baranowsky, with Green & Sklarz, local counsel to Baker

9    Hostetler.

10             THE COURT:  Good afternoon.

11             MS. BARANOWSKY:  Good afternoon.

12             MR. LAYDEN:  Good afternoon, Your Honor.  Andrew

13   Layden, from Baker Hostetler, on behalf of Baker Hostetler.

14             THE COURT:  Good afternoon.

15             MR. LAYDEN:  Thank you.

16             MR. HEALY:  Good afternoon, Your Honor.  James

17   Healy, from Cowdery & Murphy, in Hartford.  We've appeared

18   on behalf of Williams & Connolly.  I have here Attorney

19   Erica Simpson, who is the client representative of Williams

20   & Connolly, who has come up for this hearing.

21             THE COURT:  Good afternoon.

22             THE COURTROOM DEPUTY:  I'm sorry.  I didn't make

23   out your name.  I'm sorry.

24             MR. HEALY:  My name is James Healy, H-E-A-L-Y.

25             THE COURTROOM DEPUTY:  Thank you.

1          MR. HEALY:  I filed an appearance I believe

2     yesterday.

3          THE COURT:  Thank you.

4          And you are?

5          MS. SIMPSON:  Erica Simpson on behalf of Williams

6     & Connolly.  Thank you.

7          THE COURT:  Good afternoon.

8          MS. SIMPSON:  Good afternoon.

9          THE COURT:  All right.  Everyone have a seat.  We

10     have a few matters to address.

11          First and foremost, I wanted to just ask the

12     Chapter 11 Trustee and Mr. Henzy a follow-up question that I

13     asked you both yesterday afternoon about the pretrial

14     conference in the adversary proceeding.

15          MR. DESPINS:  Yes, Your Honor.

16          We do not need to go forward with the conference,

17     status conference, today in the adversary proceeding.

18          THE COURT:  Okay.  Thank you.

19          Attorney Henzy, you agree with that?

20          MR. HENZY:  I agree with that, Your Honor.

21          THE COURT:  Okay.  What I'm going to -- thank you,

22     both.

23          What I'm going to say, have the docket indicate,

24     was that the pretrial conference was not held and no further

25     pretrial conferences will be scheduled at this time.

1        Now, that doesn't -- that means either one of you

2   or anyone in the adversary can always ask for a pretrial

3   conference.  Or if the Court thinks there's one necessary,

4   we'll enter a new order scheduling one.  But at this point,

5   I don't think that it is necessary, given what we talked

6   about yesterday, to schedule any further pretrial

7   conferences at this time.  Okay?

8        MR. HENZY:  Thank you, Your Honor.

9        MR. DESPINS:  Thank you, Your Honor.

10       THE COURT:  Okay.  All right.  Then we'll move to

11  the matters that are in the main case on the -- that are on

12  the calendar today.

13       The first matter is the motion from Baker

14  Hostetler for process with regard to the subpoenas.  I have

15  a feeling, given what I've seen, that there might be some

16  agreement with regard to the Baker Hostetler motion or am I

17  incorrect?

18       MR. LAYDEN:  I believe so, Your Honor.

19       THE COURT:  Okay.

20       MR. LAYDEN:  If I may, I can give a brief overview

21  --

22       THE COURT:  Please.

23       MR. LAYDEN:  -- and what I believe is the

24  agreement.

25       THE COURT:  Thank you.  Go right ahead.

1          MR. LAYDEN:  Thank you, Judge.

2          Baker & Hostetler represented Mr. Kwok in six

3    matters before the bankruptcy case.  Those matters were all

4    stayed by the filing of the bankruptcy case.

5          Baker Hostetler was one of the parties that

6    received a 2004 subpoena from the Chapter 11 Trustee.  We,

7    with the consent of the Chapter 11 Trustee, received an

8    extension to respond to the subpoena until October 10th and

9    then timely responded to the subpoena.  And we also had an

10   agreement to extend our production date to October 21.

11         We worked extensively with both the trustee's

12   counsel and the debtor's counsel to negotiate the process

13   for identifying the personal harm documents under the

14   privileges consent order and that ultimately led to the four

15   or five bullet points, essentially, that are the main part

16   of the motion.

17         And those are that Baker Hostetler would review

18   the documents that were responsive to the agreedupon search

19   terms that we had with the Chapter 11 Trustee's counsel and

20   we would produce the documents that were not identified as

21   potentially personal harm documents to the trustee.

22         We would make a preliminary tag of documents that

23   could constitute personal harm and give those to the

24   debtor's counsel.

25         And then the debtor's counsel would be responsible

1    under the privileges consent order for that ten-day period

2    that the order contemplates from the production date to make

3    the final decision on if a document constituted a personal

4    harm document and create a log of those documents.

5          Then the final two bullet points or so are

6    basically just reservations of rights that all parties, you

7    know, retain the right to seek to claw back documents under

8    the Federal Rules of Civil Procedure, under the protective

9    order, so basically a reservation of rights for everybody.

10          This is essentially just a procedural motion to

11    handle how we hand off the documents to make the

12    determination.

13          We spent a lot time negotiating those four or five

14    bullet points.  We filed a motion within an hour or two of

15    having signed off on the language.  And we appreciate the

16    Court setting it for an expedited motion -- for an expedited

17    hearing on this.

18          What we've done, Judge, is very, very quickly

19    reviewed the documents.  There were about 60,000 documents

20    that were reviewed.  Baker Hostetler had a team of more than

21    50 lawyers reviewing the documents.  The search terms were

22    agreed upon at the end of September.  Documents were put

23    into a relativity database, which is a review platform for

24    reviewing and tagging documents, on October 12th.  And the

25    review -- they have to do some tech things to make that all

Case 22-50073   Doc 1059   Filed 11/02/22   Entered 11/02/22 13:08:01   Page 9 of 44

1    work, but the review started October 17th with a team of

2    between 50 and 65 lawyers working on it.

3          The productions to the trustee started three days

4    later on October 20th.  There's been to date three

5    productions to the trustee of, my understanding, 10,701

6    documents, which is a little over 63,000 pages that have

7    gone to the trustee.

8          The debtor has received 2,177 documents under the

9    potential personal harm category, which is about a little

10   over 18,000 pages.

11         And so we've been essentially acting in accordance

12   with the -- with the procedure that we're proposing today,

13   Judge, and we would request that the Court grant the order.

14         It was filed as unopposed, consented to by the

15   debtor.  I understand the trustee filed a consent after that

16   a few days afterwards.  So I believe the order is consensual

17   at this point and that's my understanding.

18         THE COURT:  Okay.  Thank you very much.

19         MR. LAYDEN:  Thank you.

20         THE COURT:  Attorney Bassett, I assume you're

21   handling this matter on behalf of the trustee?

22         MR. BASSETT:  Yes, Your Honor.  Thank you, Your

23   Honor.  Good afternoon, again.  Nick Bassett from Paul

24   Hastings on behalf of the trustee.

25         Mr. Layden is correct that we did, of course,

1    submit a reservation of rights in response to Baker

2    Hosteller's motion.  We, as we said in what we submitted, do

3    consent to the entry of the order.  We don't have any

4    objection to the procedure that Baker Hostetler has

5    proposed.

6              As we stated in our paper, we, you know, came to

7    that conclusion and got comfortable with the proposed order

8    based in part on the representation that Baker Hostetler had

9    made to the trustee about the progress that they have made

10   in reviewing documents, the fact that the lion's share of

11   the documents have already been reviewed and produced.

12             And to the extent that there are remaining

13   categories, those, you know, should not take too long.  It

14   should not prevent Baker Hostetler from complying with the

15   procedures that they have laid out.

16             One issue that did arise that I wanted to raise

17   with the Court is, as I understand from Baker Hostetler,

18   there are some documents, potentially a substantial number,

19   that are in Baker Hostetler's files and responsive to our

20   subpoena that were produced in the PAX state court

21   litigation.

22             And one of the responses that we have received

23   from them is that those documents, you know, would not be

24   produced to the trustee or that the trustee should get them

25   from another source.

1      And I think the two issues we had heard is that

2  there are confidentiality concerns because those documents

3  were produced pursuant to a protective order in the PAX

4  litigation, and/or some of those documents, according to

5  what we've heard, would need to be reviewed for potential

6  personal harm privileges belonging to the debtor.

7      I just wanted to, you know, briefly state our

8  position on those two issues, the first of which is that the

9  trustee has signed the protective order in the PAX

10  litigation at the request of the debtor.  We also now have a

11  protective order in this case.

12      So there should be no issue with the trustee

13  receiving documents marked confidential just because they

14  were produced in the PAX litigation.

15      The second issue is that if a document was

16  produced in discovery in the PAX litigation, there's no way

17  that document could be privileged on a personal harm basis

18  because it's already been made available to adversaries in a

19  litigation.

20      So our position is that all of those documents

21  should just be made available to the trustee.  And I raise

22  that now because I don't want this, you know, sort of bucket

23  of documents in the PAX litigation to, you know, somehow

24  create an issue that would bring us back before the Court,

25  notwithstanding the fact that we otherwise have an agreement

1    on a procedure that was laid out in the motion.  Thank you.

2          THE COURT:  Okay.  Thank you.

3          Attorney Layden?

4          MR. LAYDEN:  Sure.  The issue with the documents

5    in the PAX litigation is that the state court in the PAX

6    litigation entered an order that said if a receiving party

7    receives a subpoena for documents, or is otherwise compelled

8    to produce documents that are subject to the protective

9    order, then the protective order either has to be amended or

10   there has to be ten business days notice to the producing

11   party to give them an opportunity to object and then the

12   document can be produced.

13          And so I understand that there may be an agreement

14   with the Zeisler firm, but some of those documents are

15   third-party productions, so they're not documents that came

16   from Zeisler, for example, or came from the debtor's side.

17   They're documents that came from third parties under what

18   appear to be third-party subpoenas to them.  And so --

19          THE COURT:  That PAX had served on the third

20   parties is you're saying?  Or who served the --

21          MR. LAYDEN:  I don't know who served the

22   subpoenas.

23          THE COURT:  Okay.

24          MR. LINSEY:  The way that they're reflected in

25   what we have is it's they're called third-party production

1    and there's about ten parties listed with documents under

2    there.

3            And so I'm happy to work with the trustee's

4    counsel.  But what we think is appropriate is that we send a

5    letter to each of the parties that produced documents and

6    provide ten business days notice, which is what's required

7    under that order, and then produce them.

8            Because I'm not -- my reading of the protective

9    order is that even if the debtor and PAX were to agree it

10   can be produced, that the non-parties that produced

11   documents have rights under that order and the Court says

12   what is supposed to happen.

13           And so my understanding is that what should happen

14   is we should send a letter to give the ten days notice.  If

15   for some reason that's not necessary, we'll produce them,

16   but we believe that that's necessary to comply with the

17   state court order.

18           THE COURT:  Okay.  But the third-party documents

19   that you're talking about, third-party produced documents,

20   they're not privileged.  They're not subject to a privilege.

21   And how are they subject to a protective order?

22           MR. LAYDEN:  The protective order, by its terms,

23   apply to documents -- as I understand the state court

24   protective order applies to documents produced in that

25   litigation even if it's not privileged.  So a third party

1    that was producing documents under a subpoena I think it

2    could be covered by the protective order even though it's

3    not privileged, Your Honor.

4         THE COURT:  Well, I'll let you both try to figure

5    that out.  But it sounds -- I don't know.  I haven't looked

6    at the protective order that was issued in the state court

7    litigation so I don't know.

8         But if there are documents that have already been

9    produced and the debtor is not opposing the production to

10   the trustee, then I guess I'm somewhat not understanding the

11   issue.  But that doesn't mean -- I haven't read it.

12        MR. LAYDEN:  Understood.

13        THE COURT:  So I haven't read it.

14        Attorney Bassett, is there -- you know, you and

15   Attorney Layden are going to talk about this or are you

16   concerned that this is going to raise some other issue that

17   the Court needs to address right now?

18        MR. BASSETT:  Your Honor, I guess what I'd say is,

19   you know, I'm always hoping to avoid having to come back to

20   the Court.  So while obviously we can go talk to Attorney

21   Layden about it, you know, to the extent that there was an

22   ability for us to make progress during this hearing before

23   Your Honor, that would be great.

24        But the one thing I would mention is that we had

25   not understood, based on our conversations with Attorney

1    Layden prior to the hearing today, that their concern was

2    that these documents in the PAX litigation were produced by

3    third parties subject to the protective order.  But even

4    that being the case, my reaction is twofold.

5              One, the trustee has stepped into the shoes of the

6    debtor, who of course was a party to the protective order in

7    the PAX litigation and, therefore, I don't see any reason

8    why we would not have not access to those documents.

9              Two, out of an abundance of caution, we have

10   already agreed to be bound by that protective order.

11             So, again, I don't see the issue.  I think all

12   parties who have a concern regarding confidentiality should

13   be protected.  But I do appreciate the fact that Your Honor

14   does not have the protective order from that case before

15   you.  You have not reviewed it.  I am happy to go back to

16   try to work this out with Attorney Layden.

17             But, again, it is, to be clear, it is a

18   circumstance where we don't really think there should be an

19   issue at all.

20             THE COURT:  Anything further, Attorney Layden?

21             MR. LAYDEN:  Just briefly, Judge.

22             Our intent is to get them the documents that

23   they're entitled too.  We've gone to great lengths to try to

24   produce as quickly as we can.

25             This one was kind of a late arriving issue that

1    maybe we first talked about Friday afternoon late.  I feel

2    confident that we can work it out with the trustee's

3    counsel.  And our goal is to get them the documents they're

4    entitled to.  I just want to be careful that I don't violate

5    the state court order in doing so.

6          THE COURT:  Okay.  I understand your position.

7    Thank you.

8          With regard to the proposed order, Attorney

9    Bassett, that Baker Hostetler attached to its motion, it's a

10   two-page proposed order.  I've looked at it.

11         Are you saying that you have no changes or

12   additions or edits to the order?  I mean, we need to add the

13   date of the hearing and the ECF number of the motion, but

14   other than that, is there anything in this order that you

15   are not consenting to or wish to change?

16         MR. BASSETT:  No, Your Honor.  That's correct.  We

17   do not have an objection to the entry of the proposed order

18   as drafted.

19         THE COURT:  Okay.  All right.  Well, then what

20   will happen is the motion will be granted, your proposed

21   order will enter with -- we can enter the hearing date and

22   the ECF number, that's the only thing we need to enter

23   besides putting a -- putting the signature on the order.

24   Okay?

25         And then I know you will continue to work with

Ho Wan Kwok - October 25, 2022                    17

1    Attorney Bassett to try to resolve this remaining issue that

2    you addressed today.  And I'm confident, as you are, that

3    you will be able to resolve that issue.  Okay?

4              MR. LAYDEN:  Thank you, Judge.

5              THE COURT:  So the motion is granted and the

6    proposed order with the minor additions noted on the record

7    will enter.

8              MR. LAYDEN:  Thank you, Your Honor.

9              THE COURT:  Okay.

10             MR. LAYDEN:  I intend to stay in the courtroom for

11   as long as I can, but I have a flight, so can I otherwise be

12   excused?  This is the only matter I believe I'm involved in.

13             THE COURT:  You can do whatever you think is

14   appropriate.  You don't need to stay but you're welcome to

15   stay.

16             MR. LAYDEN:  Thank you very much.

17             THE COURT:  Okay.  Thank you.

18             MS. BARANOWSKY:  Thank you, Your Honor.

19             THE COURT:  Thank you.

20             All right.  If everyone will just give me one

21   moment until we go to the next matter, please.

22        (Pause)

23             THE COURT:  All right.  Then the remaining matter

24   in the Kwok case on today's calendar is the motion to quash

25   filed by -- on behalf of Williams & Connolly.  And I saw

1    that the Chapter 11 Trustee's counsel filed a response I

2    think last night.

3          Have the parties had an opportunity to discuss

4    this or are we proceeding?  Would you like to make argument

5    on your motion or would you just like to report on the

6    status?

7          MR. HEALY:  I'm happy to proceed however the Court

8    would prefer.

9          THE COURT:  Well, have you  made any progress with

10   regard to the issues in your motion to quash?

11         MR. LINSEY:  I mean, if it's their motion, I'll

12   say we have engaged in telephone conferences regarding the

13   issues in the motion including yesterday.

14         The last one was prior to the response that the

15   trustee filed yesterday evening.  However, it was -- I think

16   it's fair to say it ended with an agree to disagree and

17   we'll present the issues to the Court.

18         THE COURT:  That's fine.  That's fine.  Go right

19   ahead, counsel, then.

20         MR. HEALY:  Okay.  Thank you, Your Honor.

21         We did file the motion, you know, to seek the

22   Court's guidance on this issue and some I think bedrock

23   principles to keep in mind here.

24         Williams & Connolly has not represented this

25   debtor for almost five years, that Williams & Connolly also

1    provided the debtor's current counsel the entire client file

2    coming up on two years ago now.

3         And in our view there's no reason that the very

4    same information that's being requested of Williams &

5    Connolly couldn't be gathered from a party in this case.

6         And that's the case law that we briefed in our

7    motion, Your Honor, that, whereas here, the same

8    information, the documentation, can be obtained from a

9    party, courts generally will not impose that more serious

10   and unfair burden on a third-party law firm, which is what

11   we have here.

12        What we did provide the Court was the cover

13   correspondence that accompanied Williams & Connolly

14   providing that client file to the debtor's counsel so the

15   Court can, in fact, now have some confidence that that file

16   was provided to the debtor.

17        You know, if there's to be another production of

18   the client file to the debtor in order for the debtor to

19   then make the privilege calls, you know, we'll leave that to

20   the Court.

21        But, you know, our concern here is that there --

22   is that Williams & Connolly would be taking on the burden of

23   doing a review not only for responsiveness but also for

24   privilege.

25        And in this context, under the consent order that

1    governs in this case, we don't believe that the privilege

2    determinations will be an easy decision.

3           We think there will be some difficult calls.  You

4    know, for example, in determining whether something falls

5    within an investigative topic, which is the debtor's

6    privilege he retains versus something that is the trustee's

7    privilege, you know, the matters that William & Connolly

8    represented the debtor for, those are difficult decisions.

9           You know, some of these are employment matters

10   involving, you know, negotiating agreements or setting up

11   payroll, which side that falls on I think could be a

12   difficult call.

13          You know, one can imagine the tax planning or

14   corporate entity formation too could involve difficult

15   decisions in terms of which side that it falls on.

16          And in our view the better course is for the

17   debtor, the person who may, in fact, hold that privilege to

18   be the one who in the first instance makes that

19   determination.

20          And if there's a disagreement between the debtor

21   and the trustee, they can of course bring that to the Court

22   or work it out as the case may be.

23          So our view is that in this case given the

24   circumstance Williams & Connolly is in, have not represented

25   the debtor for quite some time, and has taken concrete steps

1    to ensure that the entire client file was, in fact, provided

2    to the debtor, that the better course of action would be, in

3    fact, to request those documents from the debtor in the

4    first instance and to proceed in that fashion.

5            THE COURT:  Okay.  Thank you.

6            And when you say the file was -- the entire file

7    was given to the debtor's counsel, which counsel?

8            MR. HEALY:  So the motion, Your Honor --

9            THE COURT:  I know you said it in the motion, but

10   I don't have it open in front of me unfortunately at the

11   moment.

12           MR. HEALY:  No, not a problem.  Let me --

13           THE COURT:  Although I could open it.

14           MR. HEALY:  No problem.  So it's Exhibit 2 to the

15   motion is a cover letter to Aaron Mitchell of Lawall &

16   Mitchell dated January 28th, 2021.

17           THE COURT:  Okay.  Attorney Mitchell has filed an

18   appearance in this case but hasn't really done anything in

19   this case.  The Zeisler firm has been the debtor's counsel.

20   So I understand what you're saying now.  Okay.  That's why

21   it didn't ring a bell immediately with me, but I understand

22   now.  Thank you.

23           All right.  Is there anything else you want to

24   add?  I'm going to hear from the trustee's counsel and I'll

25   give you an --

1          MR. HEALY:  Of course.  I'm happy to answer

2     questions either --

3          THE COURT:  -- I'll give you an opportunity to

4     respond after the Chapter 11 Trustee's counsel addresses the

5     issue.

6          MR. HEALY:  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          Attorney Linsey?

9          MR. LINSEY:  Thank you, Your Honor.

10         I guess before I get into the specifics, I just

11    wanted to start by noting the contrast.  We've been here now

12    with Brown Rudnick and with Baker Hostetler and now with

13    Williams & Connolly.  Obviously, there's subpoena discovery

14    under Rule 2004 going on with other law firms and advisors

15    behind the scenes.

16         But just taking, for example, what you heard from

17    Baker Hostetler today, that they have 50 different lawyers,

18    you know, looking over documents and preparing production,

19    Williams & Connolly's position, as has been articulated, and

20    as it appears in the motion, is that they don't want to be

21    bothered and that the production should be obtained from the

22    debtor and only from the debtor and that's simply untenable

23    and I'll discuss why.

24         The trustee served Williams & Connolly with a

25    subpoena under the Court's Rule 2004 order on September

1    22nd.  The deadline to file responses and objections was 14

2    days later.  That deadline passed without objections or

3    responses being served on the trustee.

4          The deadline for production to have been made

5    responsive to the subpoena was yesterday.  That deadline

6    passed as well without any production having been made.  The

7    motion to quash was filed I believe last Thursday.

8          Williams & Connolly has not filed any motions to

9    extend its time or request any extensions of time with

10   respect to these deadlines.

11         Now, for background, the trustee understands from

12   information that's been made available to the trustee from

13   other sources that Williams & Connolly represented the

14   individual debtor.

15         And given that we have jointly administered cases,

16   when I say the individual debtor, I mean Ho Wan Kwok as

17   opposed to the Genever BVI debtor, that Williams & Connolly

18   represented the individual debtor with respect to the

19   formation of the Genever BVI debtor, as well as Genever

20   U.S., that subsidiary that ultimately owns the penthouse

21   apartment in Manhattan.

22         The trustee believes that Williams & Connolly may

23   have represented the individual debtor and related persons

24   and entities as to other matters.  And from the presentation

25   today by Williams & Connolly it certainly sounds like that's

1    the case.

2              Unfortunately, in the meet and confers that we've

3    had the trustee has asked for a list of matters as to which

4    Williams & Connolly has represented the individual debtor

5    and related persons and entities and Williams & Connolly has

6    declined to provide that.

7              So, for example, tax advice.  That's the first the

8    trustee is hearing that is this hearing.  The notion that

9    there was payroll advice, I don't believe that we've heard

10   that prior to this hearing.  So that's put us in a position

11   to inhibit obviously any kind of cooperative efforts that

12   could occur to target discovery.

13             Of course, Williams & Connolly is essentially

14   taking the position that with most discovery that they're

15   not going to comply at all, that rather, the sole source of

16   that discovery should be from the individual debtor.

17             And I want to clarify a few things. With respect

18   to Williams & Connolly's contention that it provided the

19   client file to the individual debtor's counsel, that is

20   alleged to have occurred in January of 2021, nearly 20

21   months ago by my math, and more than a year prior to the

22   petition date in this case.

23             Whatever file was provided, it was provided to Mr.

24   Mitchell, not to Zeisler & Zeisler, the individual debtor's

25   current bankruptcy counsel in this case.

1          And the trustee has had numerous meet and confers

2     with individual debtor's counsel where the individual debtor

3     has taken the position, really ad nauseam, that he doesn't

4     have any documents, that there are no available documents,

5     and that the only place that the trustee is going to be able

6     to get documents is from the individual debtor's former

7     counsel.

8          Now, the trustee doesn't agree with that position.

9     But in order to move the trustee's investigation forward,

10    we're proceeding on multiple tracks.  And really, even

11    without respect to that position, we would be subpoenaing

12    further law firms -- former law firms and related entities.

13         Williams & Connolly, based on a telephone

14    conference that we had yesterday, I think would admit that

15    there are documents responsive to the subpoena that are

16    applicable to the disputed requests, that are not covered in

17    whatever client file that was given.  And, again, that

18    client file that was supposedly given to someone else has

19    not been made available to the trustee.

20         Now, there are procedures under the Federal Rules

21    of Civil Procedure for parties to assert privilege.  There

22    are special issues in this case because much of the

23    privilege has passed to the Chapter 11 Trustee.  And we've

24    dealt with those by creating procedures on a consensual

25    basis that Your Honor ordered in the form of that consent

1    order.

2              So there are procedures for all this to work out.

3    It's -- we're working it out with other parties, but

4    Williams & Connolly, like other advisory firms, in realizing

5    it's not pleasant, must play by the rules of the game and

6    produce responsive discovery so that the trustee's

7    investigation is not delayed.

8              A rough analogy, I think back to when I was --

9    when I was a kid there was one game I always hated and that

10   was Monkey in the Middle.

11             And there have been several times, I think Your

12   Honor's heard some of them, in the context of discovery in

13   this case where it's been, you know, the individual debtor

14   on one side, it's been someone else on the other, and

15   everyone's pointing fingers, there's a game of ping-pong

16   back and forth, get it from here, get from there.

17             The fact is parties, including third parties, have

18   obligations under discovery.  Subpoenas have been served.

19   Deadlines exist.  And now there needs to be production.

20             So in addition to the objection to the motion to

21   quash, there has been a cross-motion to compel, and the

22   trustee requests that the Court deny the motion to quash and

23   enter an order that production be made within seven days.

24             And if you have any questions, I'd be happy to

25   answer them, Your Honor.

1      THE COURT:  I don't have any questions at the

2  moment but I might.  Okay.

3      MR. LINSEY:  Thank you.  Okay.

4      THE COURT:  I would ask counsel for Williams &

5  Connolly, I have a question about your -- I just was able to

6  look at the exhibit that you referred to.  I did see it the

7  other day, but I didn't have it in front of me.

8      MR. HEALY:  Yes, Your Honor.

9      THE COURT:  And if I'm reading Exhibit 2 properly,

10  it's a letter to Aaron Mitchell that says enclosed is the

11  final tranche of the Kwok file returned.  So how many times

12  did Williams & Connolly turn over documents to Attorney

13  Mitchell?

14      MR. HEALY:  If I could have the client

15  representative address that directly, Your Honor?

16      THE COURT:  Sure.  Yes, please.

17      MS. SIMPSON:  We submitted three tranches of

18  documents.  This was during COVID.  And just as a rolling

19  basis.  Our office was closed and I was actually the one

20  that did it so we separated them into three individual

21  deliveries.  So we just sent you the last letter --

22      THE COURT:  Okay.

23      MS. SIMPSON:  -- to signify that the client file

24  had been delivered.

25      THE COURT:  And did Mr. Mitchell ask you to -- ask

1    the firm to turn over the client file?

2            MS. SIMPSON:  That's right.  Yes, he did.

3            THE COURT:  Okay.  And did he tell you why?

4            MS. SIMPSON:  He did not tell us why and we did

5    not ask him if the -- we confirmed with the client that the

6    client wished for that to happen.

7            THE COURT:  Okay.  With regard to the encrypted

8    drive that's referred to in the letter, the January 28, 2021

9    letter, is that --

10           MS. SIMPSON:  Yes.

11           THE COURT:  -- does Williams & Connolly still have

12   that -- a copy of that encrypted drive in your records?

13           MS. SIMPSON:  Yes, Your Honor, we do.

14           THE COURT:  Okay.

15           MS. SIMPSON:  Your Honor, if I may?

16           THE COURT:  Sure.

17           MS. SIMPSON:  What we did not do at the time

18   obviously we were delivering the client file pursuant to the

19   D.C. Rules, which are as you may know quite broad, so we did

20   not do any sort of, you know, we didn't review them for --

21   this was long before the bankruptcy so we weren't reviewing

22   them for any specific reason or pulling anything out.

23           THE COURT:  And did you -- did Williams & Connolly

24   retain a copy of everything that they turned over to

25   Attorney Mitchell?

1          MS. SIMPSON:  That's right.  Yes, we did.

2          THE COURT:  Okay.  All right.  That's helpful to

3     know.  Thank you.

4          MS. SIMPSON:  Yeah.

5          MR. DESPINS:  And, Your Honor, if I may?

6          THE COURT:  Yes.

7          MR. DESPINS:  I apologize for interrupting, but

8     it's more in the form of a question, which is what does it

9     mean a client file?  Does that include internal emails?

10    Because typically it doesn't.  And of course we're seeking

11    those, so I want to make sure that issue is before the

12    Court.

13         MS. SIMPSON:  Your Honor, if I may?

14         One point of clarification.  I think distinction

15    between Williams & Connolly and Baker Hostetler, who I had

16    the privilege to listen to, we did not handle one litigation

17    matter or even two concise litigation matters.  We handled

18    myriad matters.

19         And so, yes, the client file did include emails,

20    but it wasn't as easy as taking a litigation filing and

21    collecting that.  That -- this was over myriad matters from

22    many time keepers.  But, yes, the client file did include

23    internal emails.

24         THE COURT:  But did it include all of the internal

25    communications?  I think that's the question.

1            MS. SIMPSON:  Yes.

2            THE COURT:  You know, I don't know if it did or it

3    didn't, but I think the question is did Williams & Connolly

4    retain any documents, internal communications, that it

5    didn't turn over to Attorney Mitchell?

6            MS. SIMPSON:  We did.

7            THE COURT:  You did.  Okay.

8            MS. SIMPSON:  Yes.

9            THE COURT:  Okay.

10            MS. SIMPSON:  I can give you the reasons for that

11    if you'd like.

12            THE COURT:  Sure.  Go right ahead.

13            MS. SIMPSON:  Privilege, internal privilege

14    materials that where we were just talking with our general

15    counsel for example.  We also withheld bills.  We typically

16    don't consider that part of the client file, and we can

17    address that today as well.  Non-responsive, off-topic.

18            For example, one of our partners might send, Bob

19    Barnett, I don't know if you've heard of him, he's very

20    prone to seeing things in the news and he'll flip a news

21    letter or news clipping to another lawyer.  We did not

22    consider that part of the client file.

23            THE COURT:  Okay.

24            MS. SIMPSON:  So those are examples.

25            THE COURT:  Thank you.

1        MS. SIMPSON:  Yeah.

2        THE COURT:  I appreciate that.

3        MS. SIMPSON:  Yes, Your Honor.

4        THE COURT:  Attorney Linsey?

5        MR. LINSEY:  We start to get a -- when we parsed

6    very deeply into the facts, you know, we kind of lose the

7    forest for the trees, but suffice to say my understanding

8    from the call that we had yesterday is that the client file

9    is not contemporaneous, fully contemporaneous, with all

10   discovery in Williams & Connolly's possession with all

11   documents and information in their possession responsive to

12   the subpoena.  And that's, you know, there are several

13   reasons why we take issue with the motion to quash.

14        Even if we had had the entire client file turned

15   over, you know, allegedly by Mr. Mitchell, we would be, you

16   know, working with Williams & Connolly to obtain discovery

17   to ensure that we have everything from the individual debtor

18   that we're supposed to have.  But right now we don't have

19   anything.

20        And my understanding, and Williams & Connolly can

21   correct me if I'm wrong, but, you know, there are documents

22   that are responsive to the subpoena that are not contained

23   within the individual client file.

24        As far as privileges that might be asserted by

25   Williams & Connolly, there is a procedure to assert those

1    privileges, you know, to the extent they exist, under the

2    Federal Rules of Civil Procedure.

3              But the fact that it's onerous to participate in

4    discovery because there needs to be, you know, privilege

5    asserted or a privilege logs served, does not prevent the

6    functioning of discovery or the functioning of subpoenas.

7    If it did, then there could never be discovery.

8              MR. HEALY:  And, Your Honor, if I may?

9              Our motion to quash was not directed to the

10   entirety of the subpoena.  We directed it to the particular

11   paragraphs that would be responsive to the entire client

12   file as we've indicated to Mr. Lindsey in the meet and

13   confers.

14             For example, bills, those were not included in the

15   client file.  They are called for in a subpoena.  We have

16   indicated we will produce those, obviously, in collaboration

17   with ensuring there's no privilege claim.

18             But our motion to quash is based on the point that

19   an entire client file, that as you heard a moment ago,

20   includes the relevant internal communications that it should

21   not be on a third-party law firm to undertake the very

22   seriously burdensome procedure of reviewing that entire file

23   for responsiveness and for a privilege that belongs to the

24   debtor.  It does not belong to the law firm.  That's why we

25   undertook this motion.

1          THE COURT:  I understand.

2          So I wanted to ask you before, and I forgot, you

3     had talked about investigative topics, and you said that

4     something that I thought was -- might not be accurate.

5          Did you -- did you review, I'm sure you did, but

6     the definition of investigative topics really goes to -- in

7     the consent order goes to the trustee's investigation into

8     the assets known or unknown of the debtor and what other

9     causes of action might be available to the debtor or might

10    be available for the estate.

11         So when you're talking about billing records and

12    things of that nature, I don't see how that is an

13    investigative topic.

14         And I do think that there are -- there are -- when

15    you say -- and I understand, that you talk about specific

16    paragraphs with regard to the motion to quash then what is

17    the plan to produce the documents that aren't -- that you

18    are not seeking to quash?  You're not going to produce them?

19         You're going to still ask the -- I'm just asking

20    the question, I just want to make sure I understand --

21    you're still going to ask the trustee's counsel to get them

22    from the attorney?

23         MR. HEALY:  No.

24         What we have indicated to Mr. Linsey before --

25         THE COURT:  Okay.

1          MR. HEALY:  -- is what we do not have to do is go

2     through the client file and be responsible for making those

3     calls that Your Honor just explained.  That our client file

4     does not include bills.  We've indicated to Mr. Linsey we

5     will make --

6          THE COURT:  Well, I think the investigative --

7          MR. HEALY:  -- arrangements to provide those.

8     They were not in the client file.  They can be provided by

9     us.  That's what we were trying to do, Your Honor.  If there

10    are things specific to Williams & Connolly not in the client

11    file, that's the conversation we're prepared to have as part

12    of our burden --

13         THE COURT:  Okay.  Well, the investigation topics,

14    and believe me I've see a lot of things, so I could be

15    confusing things, so please correct me if I'm wrong.

16         But wasn't one of the issues why the trustee

17    sought the information from Williams & Connolly was that

18    Williams & Connolly -- and now, I could be wrong, so correct

19    me -- represented the debtor in the formation of some of the

20    entities in the British Virgin Islands, including the entity

21    that owns the hotel in -- I mean, not the hotel, but that

22    owns the apartment in the Sherry-Netherland Hotel?

23         MS. SIMPSON:  Your Honor, that is correct.

24         THE COURT:  Okay.

25         MS. SIMPSON:  Williams & Connolly did assist with

1    some of those transactions.

2              THE COURT:  Okay.  So why is that not -- why is

3    that information not being produced?

4              MS. SIMPSON:  Again, that was part -- we returned

5    all of that to Mr. Kwok's counsel, Mr. Mitchell.  We

6    considered that all part of the client file.  There was a

7    tremendous volume of transactional materials that we

8    returned to the debtor.

9              And, again, I think is -- our counsel is stating

10   we're here for your guidance on the best way to handle that.

11   We think that the debtor is in the best position to

12   determine very close privilege calls.  It's --

13             THE COURT:  Well, the privilege actually, if you

14   -- and I'm not saying you've had the opportunity to review

15   all this extensively, okay --

16             MS. SIMPSON:  Yeah.

17             THE COURT:  -- but we've had a lot of hearings

18   about the privilege issue.

19             MS. SIMPSON:  Right.

20             THE COURT:  We've had a lot of hearings about the

21   governance issues.  We've had a lot of hearings about the

22   protective order.  And the -- what the trustee is seeking,

23   at least from what I can see, is information that would

24   relate to the assets of the bankruptcy estate.

25             Now, the cases that you've cited in your motion to

1    quash, many of which are important cases, but don't

2    necessarily address the trustee's investigative duties in a

3    Chapter 11 case when the debtor has been removed from

4    possession, that means not able to continue to administer

5    the estate, and a third party has been ordered by the Court

6    to go in and conduct that investigation and that is what has

7    happened in this case.  And that ruling appointing the

8    trustee was not appealed and, therefore, it's a final order.

9           The issue with regard to the entities that your

10   firm represented the debtor in I think is subject to

11   discovery by your firm, even if you turned over the

12   documents to this attorney, who at some point filed an

13   appearance in this case when Brown Rudnick was withdrawing

14   its appearance, but before or very close to the time that

15   Zeisler & Zeisler came in to represent the debtor, and that

16   attorney has never done anything in this case other than

17   file an appearance.  He's never been in the court.  He's

18   never been on any kind of remote hearings we've had.  So I

19   have no way to gauge what he has or doesn't have, right?

20          All I have -- I mean, I do given what you've said,

21   but up to this point -- and now the trustee's saying to me,

22   look, I need that information.  I need that information.

23          There's a protective order in place.  There's a

24   consent order with regard to privileges.  You've filed a

25   motion to quash.

1          I think that I -- what I'm going to -- I am going

2     to order the two of you to do is to have a further

3     conversation about what you're going to produce, if

4     anything, and if you're not, then I want to know that

5     specifically and then I'll have to rule.

6          But I think that, you know, there is a lot of

7     different information in this case that you could assert is

8     privileged.  However, there is an order that says the

9     privileges have passed to the trustee subject only to

10    paragraph 7 which talks about the personal harm.

11         The formation of an entity in the British Virgin

12    Islands, a corporate entity that the debtor has some

13    ownership interest in, or whatever interest he has, whatever

14    it be, legal, beneficial, whatever, it would be hard for the

15    Court to find at this moment that would be somehow personal

16    harm to the debtor.

17         There was -- that issue was negotiated and argued

18    about extensively in this court.  And the trustee has to try

19    to fulfill his duties and that's what he's trying to do.

20    Okay.

21         And I understand -- I do understand the argument

22    about it's a burden, and I understand that.  Unfortunately,

23    that may be a burden that you have to undertake.

24         This is a Chapter 11 case in which a trustee has

25    been appointed.  That's an unusual situation.  The reason

1    that that happened was because of many reasons including the

2    fact that the debtor's counsel, prior debtor's counsel,

3    agreed that cause existed to appoint a Chapter 11 Trustee,

4    convert the case or dismiss the case.  Cause includes many

5    things.  And it's not a defined term as I'm sure you know.

6              But in this case there has been assertions from

7    the minute the debtor filed this case that the debtor was

8    not being honest about his assets.  Whether that's true or

9    not, that hasn't been tried.

10             That's the assertions that have been made and the

11   trustee is attempting to investigate those assertions and

12   find out whether they're true or not.

13             And the trustee definitely, you know, has a lot of

14   work to do.  But as far as I can see has been following the

15   Federal Rules of Civil Procedure with regard to that

16   investigation and the Federal Rules of Bankruptcy Procedure.

17             So what I'm going to do with regard to your motion

18   to quash is I'm going to order the parties to continue to

19   discuss this issue.

20             And I'm going to continue this hearing on both

21   your motion to quash and the cross-claim for a motion to

22   compel until Thursday and I want to see where things stand

23   on Thursday.

24             I will allow you -- because it will be the only

25   issue, I will allow you all to appear via Zoom.  You don't

1    have to come to the court.  Okay?

2              MS. SIMPSON:  Thank you.

3              THE COURT:  It will be -- but I want to know where

4    things stand.  I want the conversations to continue.  And I

5    believe the focus should be narrowed.  And if there is a

6    disagreement, I think the disagreement should be narrowed.

7              MR. LINSEY:  Your Honor.

8              THE COURT:  That's what I would say.

9              MR. LINSEY:  I respect the Court's instruction and

10   will certainly comply with that.

11             There was one thing I just want to put a finer

12   point on and that is going to get to this Monkey in the

13   Middle thing and it's with Williams & Connolly's complaint

14   that they don't want to be in the position of asserting a

15   privilege.

16             My understanding is that Williams & Connolly was

17   at one point willing to make documents that could be

18   produced to the trustee available to the individual debtor

19   for the individual debtor to assert that it retained a

20   privilege, that personal harm exception, if it wished, that

21   the individual debtor does not wish to do that and believes

22   that Williams & Connolly should review and assert the

23   privilege.

24             So when I say the Monkey in the Middle thing, I

25   mean, each side is saying the other side should do it and it

1    seems to me that's one of the fundamental disconnects here.

2    The trustee's --

3            THE COURT:  Well, haven't we already worked that

4    out with prior firms?

5            MR. LINSEY:  We have by the -- what we just saw

6    with the Baker & Hostetler order is that Baker & Hostetler

7    is affording the individual debtor the opportunity to make

8    determinations.

9            And the trustee has indicated to Williams &

10   Connolly that it was prepared to do that with Williams &

11   Connolly.  My understanding is that that was at least not

12   immediately acceptable to Williams & Connolly and they

13   wanted to continue with their motion to quash.

14           THE COURT:  Well, I'm going to let you all talk

15   about that and you're going to all figure that out before

16   Thursday.  And then if you don't, then I will order what

17   everybody needs to do.

18           MR. LINSEY:  Understood, Your Honor.

19           THE COURT:  Okay.  So we're going to continue the

20   hearing on the motion to quash and the cross-motion to

21   compel to Thursday, October 27th at 2:00 p.m.

22           It will be a remote hearing, so you'll have to

23   contact the courtroom deputy email box and they'll get you

24   the information for the remote hearing.  Okay?

25           MS. SIMPSON:  Thank you, Your Honor.

1                THE COURT:  All right.  Thank you.

2                MS. SIMPSON:  Yeah.

3                MR. LINSEY:  Before we adjourn, Your Honor, may I

4      raise one housekeeping matter, please?

5                THE COURT:  Yes.

6                MR. LINSEY:  The trustee filed yesterday evening a

7      motion for a further stay of certain adversary proceedings.

8      It's not on the calendar today.

9                THE COURT:  I know.  And I looked at it briefly.

10     You have two parties' consent.  Did you get the other

11     party's consent?

12               MR. LINSEY:  So that is what I wanted to address.

13               I neglected to indicate that PAX had also

14     consented.  They, in fact, consented prior to the filing of

15     the motion.  That's on me.  No other party that has

16     responded indicated any objection.  It doesn't seem like a

17     controversial motion.  It was just part --

18               THE COURT:  Let me just ask you a question.

19     When's the deadline run out?

20               MR. LINSEY:  The existing stay expired on Friday,

21     which is why we sought a bridge order.

22               THE COURT:  Right.

23               MR. LINSEY:  Again, it has not in the past been

24     controversial.  I don't expect it to be here.

25               THE COURT:  Well, this is what I'll do.

1        MR. LINSEY:  Yes, Your Honor.

2        THE COURT:  I'll grant the motion.  You don't have

3   to have a hearing on it.  Relate it back to the 21st.  And

4   if the parties who haven't affirmatively consented object,

5   then I'm going to give them a time to object and I'll deal

6   with it at that point in time.

7        MR. LINSEY:  I think that is perfectly fine, Your

8   Honor.  And, in fact, our position in the motion was that

9   the stay should go into effect and then any party could seek

10  to end it at any time.  It's functionally doing the same

11  thing that Your Honor said.

12       THE COURT:  Okay.  Then maybe I don't need to do

13  what I just said.  If I read the proposed order, maybe it

14  does what I need it to do.

15       MR. LINSEY:  Either way, Your Honor.  But we

16  certainly agree.

17       THE COURT:  So the only parties -- so there are

18  still a few parties who haven't responded?

19       MR. LINSEY:  Correct, Your Honor.

20       THE COURT:  So we've got three parties who've

21  consented and I think three parties who haven't responded?

22       MR. LINSEY:  If I were to be a stickler, I'd say

23  three sets of parties because I believe that Mr. Sansone

24  represents the plaintiff collective.

25       THE COURT:  Sets of parties, correct.

1            MR. LINSEY:  Correct, Your Honor.

2            THE COURT:  Okay.  All right.  I'll take a look at

3      that later today or tomorrow at the latest.

4            MR. LINSEY:  Thank you, Your Honor.

5            THE COURT:  Okay.  But I did see it.  I just -- I

6      didn't see a need for a hearing.

7            MR. LINSEY:  Yeah.  Look, nothing's -- the barn's

8      not on fire.  Nothing's happening in these adversary

9      proceedings, but we would like formal process to be

10     followed.

11           THE COURT:  Well, I think you need an order.

12           MR. LINSEY:  Yes, Your Honor.

13           THE COURT:  Yes.  I agree with that.  Okay.

14           So is there anything further that we need to

15     address in the Kwok case this afternoon?

16           MR. DESPINS:  No, Your Honor.

17           THE COURT:  Okay.

18           MR. DESPINS:  Thank you.

19           THE COURT:  Then we'll have a continued hearing on

20     the motion to quash, ECF 1002, on Thursday afternoon at 2:00

21     p.m. via Zoom and we'll see you all then.

22           ALL COUNSEL:  Thank you, Your Honor.

23           THE COURT:  Thank you.

24           (Proceedings adjourned at 1:57 p.m.)

1          I, CHRISTINE FIORE, Certified Electronic Court Reporter

2    and Transcriber, certify that the foregoing is a correct

3    transcript from the official electronic sound recording of

4    the proceedings in the above-entitled matter.

5

6          *Christine Fiore*

7    _____          November 1, 2022

8         Christine Fiore, CERT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Fiore Reporting and Transcription Service, Inc.