**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____
:
In re                                                    :          Chapter 11
                                                         :
HO WON KWOK,                                             :          Case No. 22-50073 (JAM)
                                                         :
                        Debtor.                         :
_____:

**JOINT OBJECTION OF THE DEBTOR, MEI GUO, AND HK INTERNATIONAL**
**FUNDS INVESTMENTS (USA) LIMITED, LLC TO CHAPTER 11 TRUSTEE'S**
**MOTION TO COMPEL COMPLIANCE WITH RULE 2004 SUBPOENAS**

The debtor, Ho Wan Kwok (the "Debtor"), Mei Guo ("Ms. Guo"), a counterclaim

defendant in the Adversary Proceeding captioned _HK International Funds Investments (USA)_

_Limited, LLC v. Ho Wan Kwok_, Adv. Pro. No. 22-05003 (the "HK USA Adversary") pending

before this Court, and HK International Funds Investments (USA) Limited, LLC ("HK USA"), the

plaintiff and a counterclaim defendant in the HK USA Adversary, by and through their

undersigned counsel, Zeisler & Zeisler, P.C., hereby object to the Motion of Chapter 11 Trustee

For Entry of Order Compelling Individual Debtor, Mei Guo, HK International Funds Investments

(USA) Limited, LLC, Hing Chi Ngok, Greenwich Land LLC, Lamp Capital LLC, and Golden

Spring (New York) Ltd. to Comply with Rule 2004 Subpoenas (Doc. No. 1046, the "Motion"). In

support of their Objection the Debtor, Ms. Guo and HK USA respectfully state as follows:

1.      The Motion continues the Chapter 11 Trustee's (the "Trustee") heretofore

successful strategy of repeating the mantra that the Debtor is bad with the hope and expectation

that the Court will ignore the actual merits of the Motion and grant the relief sought simply because

the Trustee has sufficiently disparaged the Debtor.

2.      Indeed, the Motion ignores that the Trustee has indisputably obtained hundreds of

thousands of pages of documents concerning the Debtor and various entities that the Trustee baselessly believes the Debtor controls or controlled, and that more documents will be forthcoming. These documents were produced and continue to be produced by professionals, primarily large law firms, who had provided services to, *inter alia,* the Debtor. The Debtor has done nothing to impede or obstruct the Trustee's document collection efforts.

3.      The Debtor's counsel told the Trustee's counsel during their first discovery meet and confer that the Debtor had a very limited number of documents in his personal possession, and that the vast majority of responsive documents would be with his professionals, a statement that has been proven to be true. Significantly, during this same meet and confer the Debtor's counsel suggested that there was no reason for the Debtor to approach his professionals, obtain the same documents that would be produced to the Trustee directly by the professionals pursuant to subpoenas served on them, and then produce those same exact documents to the Trustee a second time. The Trustee's counsel stated that he did not care who produced the documents as long as they were produced and they have been. Moreover, the Trustee actually acknowledges this agreement in the Motion, but only after accusing the Debtor of not seeking the production of documents in the possession of his professionals.

4.      The Debtor did have a limited number of documents in his personal possession, such as his personal tax returns, and those documents have also been produced.

5.      In short, there is simply nothing to compel. The Trustee's purported belief, which as articulated is based upon misrepresentations concerning the substance of several meets and confers, that the Debtor has not conducted a good faith search for documents without actual evidence that a good faith search has not been conducted is meaningless. Indeed, the Trustee contends that the Debtor's lack of responsive documents, and in particular electronically stored

information, is dubious, but the Trustee's fails to support his assertion that, for example, the Debtor is lying when he says that he does not use email by coming forward with any email sent by or to the Debtor within the tens of thousands of emails that have been produced to the Trustee by the Debtor's professionals. The Trustee's belief certainly does not provide a basis for the entry of an order granting a motion to compel.

6.      Neither the Debtor, Ms. Guo, nor HK USA have refused to search for responsive documents. There were some objections propounded to specific documents requests, such as the requests that Ms. Guo produce all documents over a more than 10-year period related to her personal assets, her personal bank accounts, and her tax returns, even though there is no evidence, or even allegation, that the Debtor has ever transferred an asset or anything of value to Ms. Guo. Ms. Guo has rightly refused to produce those categories of document.

7.      The Trustee does not, however, focus his Motion on specific objections to specific document requests. Instead, the Trustees argues that he is entitled to all of the documents he seeks from the Debtor, Ms. Guo, and HK USA simply because he is, again, without even attempting to show, as it relates to Ms. Guo's personal financial information, that the Debtor has ever transferred a single asset of his to Ms. Guo.

8.      And it is not just Ms. Guo's personal financial information. The Trustee believes that he is entitled to every document, as broadly defined, regarding every asset of every one of the Debtor's immediate and extended family members, as well as every document regarding a litany of entities, many of which the Debtor has never even heard of. The Trustee's position is absurd.

9.      The Trustee tries to hide the absurdity of his position and deflect by once again mischaracterizing what was said during a meet and confer regarding a hypothetical Lady May 2. During that meet and confer the Debtor's counsel was simply asked if there was a Lady May 2

3

would the Debtor produce documents related to it. The response was that the Debtor would not produce documents related to the hypothetical Lady May 2 if the Debtor did not have any interest in the hypothetical Lady May 2. The Trustee's counsel now misrepresents the substance of the hypothetical adding numerous additional facts that were not stated in the hypothetical during the meet and confer. Obviously, if there was a Lady May 2 that was situated exactly as the Lady May with a similar finding from a New York Supreme Court, responsive documents related to that Hypothetical boat would be produced just like responsive documents related to the actual Lady May have been produced. Regardless, the fact that the Trustee has to resort to a misleading hypothetical rather than focus on the reality of the massive volume of documents that he is actually receiving is quite telling and underscores the weakness of the Motion.

10.    Lastly, as it relates to Ms. Guo and HK USA the Trustee must seek further discovery, if at all, in the HK USA Adversary. On September 23, 2022, the Trustee filed a massive 62-page, 141 paragraph counterclaim with more than 3,100 pages of exhibits in the HK USA Adversary (the "Counterclaim"). The Counterclaim, which was filed 21-days after Ms. Guo and HK USA served objections to the Rule 2004 subpoenas served upon them and 6-days after Ms. Guo and HK USA produced responsive documents to the same subpoenas, adds Ms. Guo as a counterclaim defendant and expands the scope of the HK adversary so significantly that the vast majority of the document requests set forth in the Rule 2004 subpoenas served on Ms. Guo and HK USA now seek documents related to the allegations of the Counterclaim. In addition, the Trustee has filed a prejudgment remedy application against HK USA and Ms. Guo and an application for preliminary injunction against Ms. Guo in the HK Adversary while at the same time seeking to compel Ms. Guo to produce substantial personal financial information in response to the Rule 2004 subpoena. As a matter of law, the Trustee may not circumvent the protections

afforded to Ms. Guo and HK USA in the HK USA Adversary by the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure by seeking discovery related to the HK USA Adversary via Rule 2004. Thus, the Motion as to Ms. Guo and HK USA must be denied.

## **BACKGROUND**

11.     On February 15, 2022 (the "Petition Date"), the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing this bankruptcy case.

12.     On June 15, 2022, this Court issued a Memorandum of Decision, *inter alia*, granting PAX's Motion to Dismiss or, in the alternative, Partial Joinder to the UST's Motion for the Appointment of a Chapter 11 Trustee (Doc. No. 183), to the extent that it sought the appointment of a Chapter 11 trustee (Doc. No. 465.)

13.     On July 7, 2022, the UST filed a notice appointing the Trustee as Chapter 11 trustee (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515) seeking the Court's approval of the appointment of the Trustee. On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

14.     On July 28, 2022, the Trustee filed his i) Motion for 2004 Examination of the Debtor (Doc. No. 636), ii) Omnibus Motion of Chapter 11 Trustee For Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Legal and Financial Advisors to the Debtor (Doc. No. 637), and iii) Omnibus Motion of Chapter 11 Trustee For Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Entities and Individuals Affiliated with the Debtor (Doc. No. 638) (collectively the "July Rule 2004 Exam Motions"). In total through the July Rule 2004 Exam Motions the Trustee sought to issue a total of 34 subpoenas. Thereafter, on September 7, 2022, the

Trustee filed his First Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Additional Legal and Financial Advisors to the Debtor, Entities and Individuals Affiliated with Debtor, and Relevant Banks (the "September 2004 Motion") (Doc. No. 839.) The September 2004 Motion sought and obtained leave to conduct an additional 25 Rule 2004 examinations and to issue an additional 25 subpoenas in connection with those examinations. Thus, in total the Trustee sought and obtained leave to conduct a total of 59 Rule 2004 examinations and to issue 59 subpoenas in connection therewith; the Debtor has no reason to believe that the Trustee has not served all 59 subpoenas, or at least the vast majority of them.

15.     On August 5, 2022, the Debtor filed the Debtor's Limited Objection to Rule 2004 Motions (Doc. No. 703) to preserve certain rights, including the right to assert objections to the requests for the production of documents that would be served with the subpoena attached to the July Rule 2004 Exam Motions after the subpoena was actually served. By orders dated August 16, 2022, this Court granted the July Rule 2004 Exam Motions. The August 16 order entered following an August 12, 2022 status conference at which the Court reminded the parties that following the service of the July Rule 2004 Exam Motions subpoenas the parties have "whatever rights [they] have under the Federal Rules of Civil Procedure with regard to th[e] subpoena[s]". August 12, 2022, Transcript of Motion for 2004 Examination of the Debtor; Motion for 2004 Examination of Omnibus Re: Debtor's Professionals; Motion for 2004 Examination of Omnibus Re: Related Persons; Order Setting Status Conference Before the Honorable Julie A. Manning United States Bankruptcy Judge ("August 12 Tran."), at 19-20.

16.     Each of the Debtor, Ms. Guo and HK USA was served with a Rule 2004 subpoena through their respective counsel on August 19, 2022. Each of the Debtor, Ms. Guo and HK USA

served timely objections to the document requests attached to the subpoenas, asserting objections to certain of the enumerated Instructions and Definitions included with the requests for production, as well as objections to certain of the requests for production. The objections of non-debtors Ms. Guo and HK USA were more fulsome than those of the Debtor.

17.    The Debtor agreed to produce, and through his professionals and former professionals is producing, the vast majority of documents requested by the Trustee in the requests for production. The Debtor did object to the production of certain categories of documents, primarily documents related to the assets of his "family," which the Trustee defined to include "the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor," but the Debtor does not have documents related to the assets of his family and has not withheld documents based on that objection. In fact, the Debtor has not withheld any specific document or category of documents from production based on a discovery objection other than a paucity of documents, primarily from the files of his professionals, based on attorney-client privilege pursuant to this Court's September 14, 2022, Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents and Information (Doc. No. 856). The documents withheld on the basis of privilege have been logged in accordance with that same order.

18.    Ms. Guo and HK USA objected to certain of the requests served upon them that seek information concerning their personal assets and tax returns, and indicated that no responsive documents would be produced in response to those requests. Ms. Guo and HK USA produced documents responsive to requests related to HK USA and the Lady May. Other than documents related to their personal assets.HK USA and Ms. Guo have not withheld any responsive

documents. HK USA owns the Lady May and nothing more so documents related to its assets were produced.

19. Following the service of the respective objections counsel met with the Debtor on two separate occasions over video conference, first on September 14, 2022 and then on September 21, 2022, to discuss and explain the search to be undertaken for responsive documents. During the first of these meetings, which lasted more than one hour, counsel went through the requests with the debtor to identify the documents sought, read through the defined list of "Associated Entities" to determine whether the Debtor had ever heard of the entities, most of which he had not, and if he had— whether he had any documents related to the entities in his possession.  The Debtor's counsel also read through the defined list of "Associated Individuals" with the Debtor to determine whether the Debtor knew the individuals, again with many he did not, and if so whether he had any documents related to the individuals in his possession.

20. During this first meeting a discussion was also had regarding locations where responsive hard copy documents might be stored. The Debtor does not maintain an office or location for the storage of hard copy documents and does not maintain hard copy documents within his home. Responsive documents that may have existed in Hong Kong, where the Debtor maintained an office prior to fleeing in late 2014, have been seized by the Chinese government when it seized the Debtor's and certain of his family's assets in 2017. *See* Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions. (Doc. No. 107), at ¶17. The Debtor obviously does not have access to the documents seized by the Chinese government.

21. The second video conference meeting with the Debtor lasted approximately one hour and focused on electronically stored information. During this meeting the Debtor was asked whether he had a laptop or desktop computer. He does not have one, does not use one, and does

not know how to do so. The Debtor was also asked whether he had or was aware of any server that could contain responsive electronically stored information. He was not. The Debtor was asked whether he uses personal electronic devices such as a phone or tablet. The Debtor stated that he has two iPhones that he uses for social media and text messaging, *e.g.* WhatsApp. The Debtor stated that his text messaging is related to his ongoing efforts to take down the CCP. The Debtor does not read English and his text messages are in his native Chinese. The Debtor stated that he does not use email to communicate. The Debtor provided counsel with the responsive documents that he had in his possession and they were produced, including documents related to Genever Holdings Corporation and Genever Holdings, LLC, the only entities in which the Debtor actually owned an interest as of the petition date—albeit he owned that interest in his capacity as a trustee.

22.    During this same time frame counsel conferred with Ms. Guo multiple times via telephone to discuss her search for responsive documents on behalf of herself and on behalf of HK USA of which she is the sole member. Ms. Guo searched her email and text messages and provided counsel with copies of text messages she located related to the Lady May, including her text messages with the captain of the Lady May, which the Trustee requested and now disparagingly states in the Motion with absolutely no basis were "hand selected". Ms. Guo also provided copies of non-disclosure agreements with the crew of the Lady May, and produced numerous emails and draft agreements related to the loan transaction that funded what has become commonly referred to in the Debtor's case as the Lady May Escrow. In addition, Ms. Guo's counsel reached out to counsel that represented Ms. Guo and HK USA in connection with the February 2022 contempt hearing in the PAX action that was then pending in New York State Supreme Court, obtained documents from Ms. Guo's former counsel, and produced them. Lastly, and most recently, Ms. Guo produced the statement of claim and exhibits from an arbitration commenced against her and

HK USA by the lender that made the loan for the Lady May Escrow which it is now seeking to recover through arbitration.

23.     During the same time period that counsel was conferring with the Debtor and Ms. Guo regarding document production, counsel was also engaging in meets and confers with the Trustee's counsel to discuss discovery objections and document production.

24.     During the first meet and confer on September 9 the Trustee's counsel was told that the Debtor would not have a large volume of documents in his personal possession and that his documents would be with his professionals. The Debtor's counsel further stated that because the Trustee had subpoenaed the Debtor's professionals it was unnecessary for the Debtor to approach the same professionals to obtain the same files and produce them a second time. The Trustee's counsel initially balked but eventually agreed that he did not care who produced the documents as long as they were produced. *See* Motion at ¶42 ("To be clear, to the extent an advisor who separately received a Subpoena produces all documents in its possession concerning the Individual Debtor, the Trustee is not asking that the Individual Debtor search for and reproduce duplicative documents, . . .").

25.     During subsequent meet and confers the Trustee's counsel asked a number of questions about the Debtor's use of email, computers, and phones. The Debtor's counsel thereafter discussed the Trustee's counsel's questions with the Debtor and provided responses to the Trustee's counsel's questions.

26.     Throughout the meet and confer process the Trustee's counsel posed numerous hypotheticals including one where the Debtor owned one-hundred percent of Apple, Inc. and would therefore be required to produce every document related to Apple. The hypotheticals also included a hypothetical Lady May 2 and whether the Debtor would produce documents related to

a hypothetical Lady May 2—to which the Debtor's counsel rightly responded not if the Debtor did not have any interest in the hypothetical Lady May 2.

27.    During the final in the series of the meets and confers counsel went through each of the requests propounded to the Debtor and in nearly every instance the Debtor's counsel identified that the Debtor did not have any responsive documents in his possession. Thus, it was not and is not the case that the Debtor is refusing to produce responsive documents, it is simply that he does not have responsive documents in his possession to produce. The same is true for Ms. Guo and HK USA. Indeed, the Trustee implicitly acknowledges in the Motion that HK USA is unlikely to have any documents because "HK USA has no income, bank account, directors, officers, or employees." *See* Motion, at 9.

## ARGUMENT

### A. The Motion Should be Denied
### Because There is Nothing to Compel

28.    The Trustee does not appear to be seeking the production of documents responsive to any particular request for production.[1] Instead, the Trustee asks the Court to compel the Debtor, Ms. Guo and HK USA to conduct additional searches for responsive documents despite the fact that there is no evidence that their previous searches have been insufficient or that there are any additional documents in their possession to produce, as opposed to the possession of the Debtor's professionals which are being produced.

---

[1] The Debtor, MS. Guo and HK USA do not know exactly what the Trustee is seeking to compel because he has failed to comply with Local Bankruptcy Rule 7037-1 and D. Conn. L. Civ. R. 37 which requires that memorandum related to motions to compel

> . . . shall contain a concise statement of the nature of the case and a specific verbatim listing of each of the items of discovery sought or opposed, and immediately following each specification shall set forth the reason why the item should be allowed or disallowed.

29.     "Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production." *Margel v. E.G.L. Gem Lab Ltd.*, 04 Civ. 1514 (PAC)(HBP), 2008 U.S. Dist. LEXIS 41754, *8 (S.D.N.Y., May 29, 2008), (citation omitted). Moreover, "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain." *Mintz Fraade Law Firm, P.C. v. Brady*, 19-CV-10236 (JMF), 2021 U.S. Dist. LEXIS 29610, *14 (S.D.N.Y. Feb. 17, 2021).[2]

30.     Where, as here, a party claims that its adversary has not searched for and/or produced all responsive documents the party making that claim has to come forward with evidence to support the claim. *Margel* 2008 U.S. Dist. LEXIS 41754, at *8 ("Although I appreciate defendants' concern about plaintiffs' production, I do not believe that there is any basis for an award of sanctions. Defendants do not point to any specific evidence suggesting that additional responsive documents exist and have not been produced. Litigants commonly suspect that they are not getting all the documents they have requested and that an adversary is holding something back.").

31.     The Trustee does not identify a single piece of evidence to support his contention that there are additional responsive documents in the possession of the Debtor, Ms. Guo or HK USA that have not been produced.[3]

---

[2]  In *Mintz Fraade* the court ordered the defendants to conduct further searches for responsive documents because defense counsel informed the court that the individual defendant, who was also the principal of the corporate defendant, was not cooperating with counsel in obtaining responsive documents and counsel moved to withdraw citing the defendants' "fail[ure] to cooperate with [counsel] in . . . efforts to complete discovery." *Mintz Fraade Law Firm, P.C.*, 2021 U.S. Dist. LEXIS 29610, at *4 (brackets and ellipsis in original). That extreme example of a situation where a court will compel further searches for responsive documents is obviously not this case.

[3]  As discussed *supra*, the Debtor's counsel met with the Debtor on two separate occasions to discuss the categories of documents sought by the requests for production, the potential locations of responsive documents, and medium that could contain responsive electronically stored

32.     First, and as previously noted, the Trustee all but concedes that HK USA does not have any documents. *See* Motion, at 9. Moreover, the Trustee makes no effort whatsoever to show that Ms. Guo has additional responsive documents that she agreed to produce but has not produced.[4]

33.     As for the Debtor, the Trustee contends that his statements concerning a lack of additional responsive documents in his possession are dubious at best, Motion, at 45, but the Trustee offers no evidence to support this purported belief. Indeed, the Trustee has not identified a single email to or from the Debtor within the tens or hundreds of thousands of emails that he has received from the Debtor's professionals, the vast majority of which would be subject to attorney client privilege but for the Debtor's Bankruptcy case and the Privilege Order. Surely if the Debtor used email he would be communicating with his attorneys via email and those emails would be included in the incredibly large universe of emails the Trustee has received from the Debtor's professionals.[5]

---

information. The Debtor is an individual who does not even own or use a computer, let alone have servers, an IT department, and back up tapes similar to what was at issue in *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422 (S.D.N.Y. 2004). Moreover, counsel has seen no evidence calling into question the veracity of the Debtor's representations regarding his lack of use of computers and email and the Trustee has not identified any such evidence to the Debtor's counsel despite having received thousands and likely tens of thousands of emails from the Debtor's professionals to which the Debtor's counsel has not even been privy. Lastly, under the circumstances it is entirely reasonable for counsel to rely on the Debtor to review his text messages for responsive documents because those text messages are in Chinese. *See Id.*, at 435 (noting that "it is true that counsel need not supervise every step of the document production process and may rely on their clients in some respects").

[4]  Ms. Guo and HK USA, through their counsel, have sought to obtain documents concerning the costs and expense of maintaining the Lady May on multiple occasions but to date have been unsuccessful in doing so.

[5]  The Trustee knew at the time he filed the July Rule 2004 Motions that the vast majority of responsive documents would be produced by entities and individuals other than the Debtor and that is the reason that the Trustee served more than fifty (50) subpoenas. *See* August 12 Tran., at 12 (Trustee's counsel stating "we think the targets of these motions are the types of people who are likely to have that information, whether it's advisors that were used in forming legal entities and protecting assets, whether it's relatives who hold those assets, or related companies, those are really the targets of our motion.").

34.    The Trustee also points to an interview of the Debtor from five years ago where the Debtor is shown with multiple cell phones as evidence that the Debtor must have documents in his possession. The number of cell phones that the Debtor may or may not have had five years ago is irrelevant to what documents he has in his possession today. Moreover, the Debtor's counsel told the Trustee's counsel that the Debtor has two phones that he uses to post to social media and for text messaging. The Trustee is fully aware of the Debtor's social media activities, likely monitoring the Debtor's accounts 24 hours a day, 7 days a week. In fact, the Trustee's monitoring of the Debtor's social media activities caused the Trustee's counsel to call the Debtor's counsel very recently to ascertain the Debtor's Covid vaccine status for purposes of entry into a building for a deposition because the Trustee's counsel knew the Debtor's views on Covid vaccine from monitoring his social media accounts.

35.    With respect to text messages, the Debtor was instructed to search his text messages, which are in Chinese, for responsive documents after being instructed as to the types of documents sought by the requests for production served upon him. The Debtor has represented that he undertook that search and did not locate any responsive documents as his text messages relate to his efforts to take down the CCP.[6]

36.    The Trustee points to references to WhatsApp messages cited in a February 6, 2016, affidavit filed by the Debtor in an action captioned *Ace Decade Holdings Limited v. UBS AG*, Index No. 653316/2015 as evidence that the Debtor has additional responsive documents in his

---

[6] The Debtor's ongoing efforts to take down the CCP are well chronicled and include songs that the Debtor has performed and which, according to the Trustee's counsel, have been available on iTunes. The Trustee's counsel contends that the Debtor must have documents related to his music on iTunes. The Debtor has represented that he does not create and release music for money, he does so as part of his effort to take down the CCP, and as a result does not receive royalties or have any related documents. The Debtor's counsel confirmed the Debtor's statements regarding the lack of documents and royalties with his music with other of the Debtor's personal counsel who is knowledgeable regarding the matter.

possession. The WhatsApp messages referenced in the affidavit are 7 and 8 years old, and as the Trustee's counsel was told during one of the meet and confers the Debtor no longer has the referenced text messages in his possession—contrary to the Trustee's statement in the Motion, his counsel was never told that the text messages no longer exist. Indeed, the WhatsApp messages referenced in the 2016 affidavit are likely within the files of Boise Schiller, the law firm that represented Ace Decade Holding Limited in the litigation in which the affidavit was filed since its attorneys would have presumedly needed the WhatsApp messages to draft the affidavit which they almost certainly did.[7]

37.     The Trustee subpoenaed the Debtor's files from Boise Schiller, which includes document requests related to Ace Decade. The Debtor has no reason to believe that the files were not produced. Moreover, it is highly unlikely that Debtor could have obtained the Debtor's files from Boise Schiller because the Debtor's relationship with Boise Schiller ended with the parties involved in bitter litigation and the relationship has not improved.

38.     The Trustee also falsely claims that the Debtor, HK USA and Ms. Guo have been unwilling to produce documents in the files of advisors and agents. Ms. Guo, through her counsel, contacted her former counsel in the PAX New York action to obtain documents related to HK USA and the Lady May and those documents have been produced. Regardless, this statement is ridiculous in light of the barrage of subpoenas served by the Trustee, the lack of any evidence that the Debtor, Ms. Guo or HK USA have done anything to hinder or obstruct the subpoenaed parties from complying with the subpoenas, the massive amount of documents that have been produced in response to the subpoenas, and the agreement that the Debtor would not seek to obtain and

---

[7] Without any evidence whatsoever, and in an effort to again disparage the Debtor, the Trustee suggests that if the Debtor does not have the 2014 and 2015 WhatsApp messages in his personal possession, as opposed to in the possession of his professionals, he has likely spoliated evidence.

produce from professional firms the same documents that are being produced in response to the subpoenas.

39.      The Trustee contends that the Debtor has to seek documents from his professionals regardless of the issuance of subpoenas and production by the professionals because the requests served on the Debtor are different than those served on his advisors. Motion, at 21. The subpoena served on the Debtor and his professionals both broadly seek documents related to, *inter alia*, the Debtor's purported assets and as defined Related Entities. The subpoena served on the Debtor does include a greater number of request than the subpoenas served on the professional firms but the additional requests are generally specific to the Debtor and the professional firms would not have the documents sought by those requests, including:

8.      All Documents regarding any credit cards used by You, including without limitation monthly statements or other Documents sufficient to show all purchases, payments, and other transactions related thereto.

12.      All communications with Qu Guo Jiao regarding any Assets, liabilities, financial interests, economic health, financial statements of the Debtor, the Debtor's Family, or any Associated Entity.

13.      All communications with Daniel Podhaskie regarding any Assets, liabilities, financial interests, economic health, financial statements of the Debtor, the Debtor's Family, or any Associated Entity.

16.      Tax returns for the Debtor, each Individual member of the Debtor's Family, and any Associated Entity from the years 2014 to the present.

29.      All passports or similar Documents authorizing cross-border travel issued by any sovereign state, nation, city-state, or autonomous region to You, including but not limited to any expired or unused Documents, and all pages of such passports or similar Documents.

*See* The Debtor's Responses and Objections to the Chapter 11 Trustee's Requests for the Production of Documents included with the Rule 2004 Examination Subpoenas Served Upon the Debtor on August 19, 2022, a copy of which is attached hereto as Exhibit A.

40.      Regardless of the differences in the requests, the Trustee offers no evidence that the subpoenaed professionals have produced anything less than their respective complete file related

16

to the Debtor. Moreover, and significantly, the Trustee's counsel has been speaking and negotiating with the subpoenaed professionals regarding the scope of document productions. Indeed, the Debtor knows from statements made during hearings before this Court that the Trustee specifically negotiated search terms with Brown Rudnick and as such the Trustee controlled the scope of the information that was being produced to him by Brown Rudnick. The Trustee has most certainly negotiated and provided search terms to other of the subpoenaed professionals and likewise controlled the scope of the information that he has received.

41.     It would be nonsensical for the Debtor to go to each of the professionals that have already produced responsive documents to confirm that all responsive documents have been produced when the Trustee has dictated to those firms what he believes is responsive and received document productions based on parameters that he established.

42.     Likewise, it would have been very difficult if not impossible for the Debtor to undertake the exercise of providing search terms to his professionals to search for responsive documents in light of the fact that the Trustee clearly knows what he is looking for and what search terms are necessary to obtain that information. Indeed, if the Debtor had gone to his professionals, provided search terms, and then produced documents based on the results of the searches using those terms the Trustee would be moving to compel because the Debtor's search terms were deficient and yielded incomplete results.

43.     Lastly, the Trustee contends that the Debtor, Ms. Guo and HK must be required to search for and produce responsive documents within the more than ten year time period, *i.e.,* from February 5, 2012 to the present, set forth in the subpoena's requests because those documents are relevant to potential fraudulent transfer claims. The Trustee makes no effort whatsoever to identify the law that would apply to claims arising from fraudulent transfers, if any, made by the Debtor

17

during the 2012-2014 time period while he lived in Hong Kong, and whether the applicable law would even permit a ten or even eight year old fraudulent transfer claim to proceed. Thus, the trustee's demanded time frame is unreasonable and neither the Debtor nor Ms. Guo should be compelled to search for documents that pre-date the Debtor fleeing China in late 2014.[8] Responsive documents have been produced and continue to be produced for the shorter, though still very lengthy, time period of nearly eight years, *i.e.,* from the date the Debtor fled China, which the Debtor's and Ms. Guo's counsel offered as a compromise.[9]

44.    In short, there is no evidence that the Debtor, HK USA or Ms. Guo has failed to search for and produce responsive documents. Thus, there is nothing to compel and the Motion should be denied.[10]

**B.    Ms. Guo and HK USA Should Not be Compelled to Produce Documents Regarding Their Personal Assets**

45.    The scope of Rule 2004 examinations is broad but not limitless. *In re Roman Catholic Church of the Diocese of Gallup*, 513 B.R. 761, 764 (Bankr. D. NM 2014) ("There are limits however [to a Rule 2004 exam]. An examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper."); *In re Refco, Inc.*, Case No. 06 C 5529, 2007 U.S. Dist. LEXIS 4993, *9 (N.D. Ill, Jan 16, 2007) ("Although the scope of the examination permitted under Bankruptcy Rule 2004 is broad it is not without limits. The examination of a witness as to matters having no relationship to the debtor's

---

[8]  Nonetheless, the Debtor is not withholding documents on the basis of this objection.

[9]  HK USA was not formed until September 2018 and it does not have documents dating back to 2012.

[10]  The Trustee relies on *CFTC v. Main & Prospect Capital, LLC*, 2020 WL 11303655 (C.D. Cal. Nov. 23, 2020) as support for the ridiculously broad relief it seeks against the Debtor. The Court granted the broad relief requested in *Main Prospect Capital* in substantial part because the defendant did not oppose the plaintiff's motion to compel.

affairs or no effect on the administration of the estate is improper.") (citations omitted). Indeed,

"[i]t is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation

of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

*See also In re Matthews* No. 18-mc-80-LPS; No. 18-mc-153-LPS, 2018 U.S. Dist. LEXIS 178364,

*5 (D. Del., Oct. 17, 2018) ("But [the trustee] does not have unlimited power to investigate

anything he wishes without articulating a proper basis for the examination.").

     46.    The Trustee has served very broad discovery on Ms. Guo and HK USA seeking

information regarding their personal assets, including, by way of example only:

> 14.    Documents sufficient to show all of Your Assets and sources of income or funding.
>
> 16.    Copies of Your tax returns.
>
> 17.    Documents sufficient to show all bank accounts and investment accounts within Your possession or control, including the balances of and transfers to and from each such account.
>
> 18.   All Documents regarding any credit cards used by You, including without limitation monthly statements or other Documents sufficient to show all purchases related thereto for the benefit of the Debtor or an Associated Entity.

*See* September 2, 2022, Non-Party Mei Guo's Responses and Objections to the Chapter 11

Trustee's Requests for the Production of Documents Included with the Rule 2004 Examination

Subpoena Served Upon Ms. Guo on August 19, 2022, a copy of which is attached hereto as Exhibit

B. These same requests were served on HK USA, although for the majority of the requests it does

not have any responsive documents to produce. *See* Motion, at 9.

     47.    The Trustee also seeks the personal financial information of Ms. Guo through other

requests which also seek documents related to the Debtor, such as:

> 10.    All Documents regarding any gifts, benefits or loans, to, from or on behalf of the Debtor, the Debtor's Estate, the Debtor's Family, or the Associated Entities, including without limitation Documents sufficient to show the amounts of such gifts, benefits, or loans; the purposes for which such gifts, benefits, or loans were used; when the gifts, benefits, or loans were provided; and the terms of any loans, all representations and warranties made in connection with any loans, the interest

19

rate on any loans, and all evidence of payments of any loans.

11.     All Documents concerning any trust or similar instrument set up by, on behalf of, or for the benefit of the Debtor, the Debtor's Estate, the Debtor's Family, or an Associated Entity, including without limitation Documents sufficient to show when the trust(s) was created, by whom it was created, for whose benefit it was created, and the corpus of the trust.

*Id.* The requests require Ms. Guo to produce all types of documents that have absolutely nothing to do with the Debtor or the Debtor's Estate for a more than 10-year period. Indeed, read literally Request 10 would require Ms. Guo to produce every document regarding every gift that she has given to any person over the past 10-years, including thank you cards received by the gift's recipient. Surely, Ms. Guo, a non-debtor, cannot be compelled to produce those types of documents. Neither Ms. Guo nor HK objected to producing documents related to assets of the Debtor or assets of the Debtor's Estate, but did and do object to producing their own personal financial information and the Trustee is not entitled to that information.

48.     The Trustee has failed to allege, let alone demonstrate, any proper basis for an investigation into Ms. Guo's personal financial information. *In re Matthews*, 2018 U.S. Dist. LEXIS 178364, *5 ("But [the trustee] does not have unlimited power to investigate anything he wishes without articulating a proper basis for the examination."). There is no allegation that the Debtor ever transferred anything of value to Ms. Guo or HK USA. The Trustee's argument that he does not need any basis to obtain Ms. Guo's and HK USA's personal financial information because the Debtor theoretically may have made transfers to them. If the Trustee's view of the law was correct the Trustee would have the power to subpoena any person within this Court's broad jurisdiction to obtain personal financial information to satisfy himself that the subpoenaed party does not have assets of the Debtor. That is obviously not the law.

49.     Without an articulated good faith basis, which in this case is woefully lacking, the Trustee is not entitled to "launch into a wholesale investigation of a non-debtor's private business

affairs." *In re Wilcher*, 56 B.R. at 434. Thus, to the extent the Motion seeks to compel the production of the personal financial information of Ms. Guo and HK USA the Motion should be denied.

**C.    Any Further Discovery of Ms. Guo and HK USA Must
Be Taken Through the HK Adversary Pursuant to the
<u>Protections of the Federal Rules</u>**

50.    It is axiomatic that "'once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004,' *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ('The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination.')…." *In re SunEdison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017). *See also*, *In re Cambridge Analytica LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019) ("There is a well-recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the applicable Federal Rules of Civil Procedure, and not Rule 2004."); *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) ("Once an adversary proceeding or another contested matter has been initiated, parties must proceed with discovery for that litigation pursuant to the Federal Rules of Civil Procedure.").

51.    The HK Adversary was commenced in April 2022 with HK USA as the Plaintiff. Ms. Guo and HK USA were each served with a Rule 2004 Exam subpoena through their respective counsel on August 19, 2022. At that time Ms. Guo was not a party to the HK Adversary and the matter at issue in that action was limited to the narrow question of who owned the Lady May.

52.     Ms. Guo and HK USA served objections to the document requests included with the subpoenas served upon them on September 2, 2022, and produced documents on September 16, 2022, with Ms. Guo making supplemental productions thereafter.

53.     The Trustee filed his extensive Counterclaim in the HK Adversary and thereby impleaded Ms. Gou as a counterclaim defendant on September 23, 2022. Based on the breadth of the Counterclaim's allegations and the exhibits attached thereto the Trustee had been preparing his Counterclaim long before it was filed and likely before he issued the subpoenas to Ms. Guo and HK USA. Despite the knowledge that a Counterclaim would be filed that would add Ms. Guo as a defendant and greatly expand the scope of the HK Adversary by adding numerous allegations concerning the Debtor and entities he allegedly controls the Trustee represented in his "Omnibus Motion of Chapter 11 Trustee For Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Entities and Individuals Affiliated with Debtor (Doc. No. 638), that "this is not the classic situation where an adversary plaintiff, through Rule 2004, seeks to undermine the protections provided by the Bankruptcy Rules governing discovery in adversary proceedings." *Id.*, at 19, n.25. That is exactly what the Trustee is seeking to do.

54.     The Counterclaim's allegations related to the Debtor focus on many of the same matters for which the Trustee seeks discovery from Ms. Guo and HK USA via the Rule 2004 Exam subpoenas. Most egregiously, the Trustee has filed a prejudgment remedy application against Ms. Guo and HK USA seeking to attach their respective assets and an injunction application against Ms. Guo effectively seeking the same relief while at the same time moving to compel the production of a wide swath of information concerning, *inter alia*, Ms. Guo's and HK USA's personal assets via Rule 2004.

55.     Ms. Guo and HK USA are entitled to the protections of the Federal Rules of Bankruptcy Procedure and Federal Rules of Civil Procedure. *See In re Enron Corp.*, 281 B.R. 836, at 841 ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."). The Trustee cannot be permitted to end run those rules by using Rule 2004 to obtain discovery that is clearly intended to be used in the Adversary Proceeding and which the Trustee would not be entitled to obtain but for his use of Rule 2004. Thus, the Motion to Compel as to Ms. Guo and HK USA should be denied and the Trustee should be ordered to pursue any additional discovery as to them, including the discovery sought via the Motion, in the HK Adversary.

### D.    The Debtor's Complete Passport is Irrelevant

56.     The Trustee seeks the production of the Debtor's complete passport because according to the Trustee knowing where the Debtor traveled could inform the Trustee as to where the Debtor has assets. The Trustee's logic is utterly flawed. Even if the Debtor had assets it does not follow that because the Debtor traveled somewhere he has assets in that location. Indeed, taking the Trustee's argument to its logical conclusion the Trustee would be entitled to monitor the Debtor's movements 24 hours a day 7 days a week on the oft chance that the Debtor's travels lead the Trustee to the Debtor's allegedly hidden assets. The Debtor is a debtor in bankruptcy, not an escaped criminal, and the Trustee is a bankruptcy trustee, not a bounty hunter. The Trustee is not entitled to the Debtor's complete passport and his efforts to compel its production should be rejected.[11]

---

[11] The Debtor produced the first page of his passport only because it was appended to the Debtor's tax returns that were produced.

**WHEREFORE,** the Debtor, Ms. Guo, and HK USA respectfully request that the Court deny the Motion and grant them such other and further relief as justice requires.

Dated at Bridgeport, Connecticut on this 14th day of November, 2022.

                                            **THE DEBTOR,
HO WAN KWOK, ADVERSARY
PROCEEDING PLAINTIFF,
COUNTERCLAIM DEFENDANT AND
MOVANT, HK INTERNATIONAL
FUNDS INVESTMENTS (USA) LIMITED,
LLC, AND ADVERSARY PROCEEDING
COUNTERCLAIM DEFENDANT AND
MOVANT MEI GUO**

                                            */s/ James M. Moriarty*
Aaron A. Romney (ct28144)
James M. Moriarty (ct21876)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5485
Email: aromney@zeislaw.com
                Jmoriarty@zeislaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 14th day of November, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ James M. Moriarty
James M. Moriarty (ct21876)