**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------x
                                  :

In re:                          :     Chapter 11
                                  :
HO WAN KWOK, *et al.*,        :     Case No. 22-50073 (JAM)
                                  :
          Debtors.[1]         :     Jointly Administered
                                  :
------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S SEALED MOTION (A) TO SEAL REPLY IN SUPPORT OF MOTION FOR ENTRY OF ORDER HOLDING DEBTOR IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH CORPORATE GOVERNANCE RIGHTS ORDER AND RELATED DOCUMENTS; AND (B) TO ENLARGE PAGE LIMIT FOR REPLY**

Luc A. Despins, as the Chapter 11 Trustee appointed in the Debtor's chapter 11 case (the "Trustee"), by and through his undersigned counsel, pursuant to District of Connecticut Local Rule of Civil Procedure (the "Local Civil Rules") 5(e) and District of Connecticut Local Rules of Bankruptcy Procedure (the "Local Bankruptcy Rules") 7007-2 and 9077-1, hereby respectfully moves (the "Motion") for entry of the proposed order filed herewith as **Exhibit A** (the "Proposed Order"): (A) preserving essential privileges and confidentiality by permitting the sealed filing of the Trustee's *Reply Memorandum* (the "Reply") in support of his *Motion of Chapter 11 Trustee for Entry of Order Holding Debtor in Civil Contempt for Failure to Comply with Corporate Governance Rights Order* [Docket No. 913] (the "Contempt Motion")[2] and in response to the objection thereto [Docket No. 1026] (the "Objection") filed by the Debtor, and further permitting

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Debtor") and Genever Holdings Corporation ("Genever BVI"). The mailing address for the Trustee and Genever BVI is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms not otherwise defined herein adopt the definitions set forth in the Contempt Motion.

the sealed filing of certain exhibits that the Trustee will offer at the hearing on the Contempt Motion (the "Hearing"); and (B) enlarging the page limit for the Trustee's Reply to twenty-five (25) pages. In support of this Motion, the Trustee states as follows:

### RELEVANT FACTS

1.      The Trustee filed the Contempt Motion on October 7, 2022, thereby requesting that the Court hold the Debtor in civil contempt for the Debtor's willful failure and refusal to comply with the Corporate Governance Rights Order as it pertains to Ace Decade and its wholly owned subsidiary, Dawn State. The Debtor has asserted in response to the Contempt Motion, among other things, that he does not own Ace Decade, that other persons do, and that the Debtor is powerless to comply with the Trustee's request.

2.      The Debtor's arguments are without merit and have no basis in fact or law. In demonstrating this to the Court, the Trustee will rely upon information and documents obtained in discovery that either (i) are subject to attorney-client privilege and thus are subject to the Court's *Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents and Information* [Docket No. 856] (the "Privileges Order") or (ii) have been designated as confidential or highly confidential pursuant to the Court's *Protective Order* [Docket No. 923] (the "Protective Order") by the Debtor or by a third-party that produced such material.

3.      These materials include privileged email correspondence by and between the Debtor's former counsel (*i.e.*, the Trustee's Hearing Exhibits 21-23), as well as other correspondence between the Debtor's former counsel and the Debtor (Trustee's Hearing Exhibit 20), which the Trustee will offer as exhibits at the Hearing and which are discussed in the Trustee's Reply. Because the Trustee now owns and controls the Debtor's former attorney-client privilege,

among other privileges and rights the Trustee may exercise, it is critical that no inadvertent disclosures of privileged materials occur, especially when such disclosures could have a materially negative impact on the Debtor's estate. Permitting only the Trustee and the Debtor, who have already reviewed the privileged documents, along with the Court, to review such privileged materials will ensure that no such harm from disclosure and waiver will arise.

4.      Moreover, at present the Debtor's counsel has designated the entirety of the Debtor's deposition testimony (as well as the testimony of a third-party witness listed by the Debtor and also deposed Friday), as "highly confidential."  In other examples, law firms responding to the Trustee's Rule 2004 subpoenas have produced documents under only Confidential and Highly Confidential designations.  While the Trustee does not in many cases agree that this information is actually confidential, notably with regard to the Debtor and his interpreters deposition transcripts which were designated as highly confidential prior to a single question being asked, the Trustee is required to seek to file it under seal consistent with the plain language of the Protective Order until such time as the confidentiality designations have been removed, or the Court orders otherwise.

## THE COURT SHOULD SEAL PRIVILEGED AND CONFIDENTIAL INFORMATION AND DOCUMENTS BOTH AS EXHIBITS AND AS INCLUDED IN THE REPLY

5.      It is essential that the Trustee be able to use privileged and confidential documents and information to demonstrate the Debtor's beneficial ownership and control over Ace Decade and thus, in turn, the Debtor's ongoing contempt of the Court's Corporate Governance Rights Order.  It is likewise essential that the Trustee not waive any privileges that he controls and nor inadvertently disclose any confidential or highly confidential materials in his possession as a result of this ongoing investigation.

6.    Unnecessary disclosure of privileged and confidential information may tangibly prejudice the value of the Debtor's estate (the "Estate").  The Debtor and his companies, Ace Decade and Dawn State, have asserted claims against UBS in the United Kingdom to recover what they allege are $500 million in losses (the "UK Litigation").

7.    These claims are property of the Debtor's estate and disclosure of privileged or confidential documents or information could prejudice their value.  For example, UBS could conceivably seek to use privileged or confidential information to its advantage in seeking to defend the Estate's claims in the UK Litigation.[3]  The Court should preserve the value of the Estate by preserving privilege and maintaining confidentiality to the maximum extent possible.

8.    The sealing procedure for the privileged documents will ensure that the only entities that can review them – the Debtor and the Trustee – are ones for whom disclosure will not waive privilege. Furthermore, disclosure of the documents to the Court under this procedure, should be treated in the same way the Court would review privileged documents in camera.

9.    Moreover, it is imperative that the Trustee be able to file the Reply and his Hearing exhibits immediately, while at the same time comply with the Privileges Order and the Protective Order.  The Trustee should not be hamstrung in holding the Debtor accountable for his contempt while the Debtor and certain third parties refine any confidentiality designations.  The Trustee reserves all rights to object to confidentiality designations placed on discovery materials and to request the removal of such designations. To the extent that in the future any confidentiality designations are withdrawn, or if the Court should determine that any documents or information were improperly designated, these may be unsealed by agreement or by future order.

---

[3]  UBS is aware of the proceedings in this chapter 11 case; both from court filings in the United Kingdom and because the Trustee has subpoenaed UBS under Federal Rule of Bankruptcy Procedure 2004.

10.     Accordingly, the Trustee proposes to file both confidential documents and information (collectively, the "Confidential Material") and privileged documents and information (collectively, the "Privileged Material" and, together with Confidential Material, collectively, the "Protected Material") under seal.

11.     Local Civil Rule 5(e), applicable to this contested matter pursuant to Local Bankruptcy Rule 9077-1, provides for the Court to permit the filing of documents and information under seal.  The requisite factual bases are clearly and compellingly set forth in this Motion and are further included in the proposed order filed herewith; these are more than sufficient to justify the Court's sealing of the Protected Material.  *See* Local Civil Rule 5(e)(3).  The relief requested by this Motion is narrowly tailored to serve these important interests.  *See id.*

12.     The Local Civil Rule permits the filing of a sealed motion to seal.  *See* Local Civil Rule 5(e)(4).  The Trustee has filed this Motion under seal because, in explaining the need for sealed filings, this Motion itself discloses Protected Material.  The Trustee also wishes to ensure that the Court is able to review the Trustee's Reply without delay.  The Trustee will file a redacted version of this Motion later today.

13.     The Trustee thus appends to this Motion as **Exhibit B** an unredacted copy of his Reply with all Confidential Material highlighted in yellow and all Privileged Material highlighted in blue.  The Trustee will simultaneously file on the public docket a copy of his Reply with all Protected Material redacted.

14.     The Trustee further proposes to designate certain exhibits to be Confidential Material, including, without limitation: Exhibits 21, 27, and such other exhibits that the Trustee designates upon consultation with counsel for the Confidential Parties (as hereinafter defined); and to designate certain exhibits to be Privileged Material, including, without limitation: Exhibits 20,

22, 23, and such other exhibits that the Trustee designates upon consultation with counsel for the Debtor. The Trustee requests that the Court permit the Trustee to file all exhibits that are Protected Material under seal on this basis.

15.     The Trustee requests that disclosure of Confidential Material, in addition to the Court, be limited to the Trustee, the Debtor, PAX, the Committee, and the United States Trustee (the "Confidential Parties"), which are all bound by the Protective Order. Upon the Court's order granting this Motion, the Trustee will circulate a copy of the Reply with all Confidential Material unredacted[4] as well as all exhibits that are Confidential Material to the Confidential Parties.

16.     The Trustee requests that disclosure of Privileged Material, in addition to the Court, be limited to the Trustee and the Debtor (the "Privileged Parties").

17.     Further disclosure of Privileged Material could threaten not only privilege with respect to that material itself but potentially attorney-client privilege more generally with respect to documents relevant to the UK Litigation. The value of the Estate's claims in the UK Litigation is highly important to the Estate and the Trustee's obligation to maximize the value of its assets to ensure the best possible recovery for its creditors.

18.     Considering that the Debtor is party to the Privileges Order and the Confidentiality Order, the Trustee has served the Debtor with a copy of this sealed Motion[5], as well as an unredacted copy of the Trustee's Reply and the Trustee will serve copies of all exhibits that are Privileged Material on the Debtor at or before such time that the Trustee files them under seal.

---

[4]   Information that is Privileged Material will remain redacted in the copy of the Reply circulated to the Confidential Parties and the Trustee will not circulate exhibits that are Privileged Material to parties other than the Debtor.
[5]    To preserve applicable privileges with respect to Privileged Material, this Motion will not be served on parties other than the Debtor.

19.     The Trustee has drafted the Proposed Order granting this Motion to include particularized findings but to exclude outright disclosure of Protected Material in order to permit it to be filed on the public docket.

## THE COURT SHOULD ENLARGE THE PAGE LIMIT FOR THE TRUSTEE'S REPLY

20.     For the Trustee to adequately address the foregoing subject matter in his Reply – including to "fact-check" the Debtor's constantly changing positions and representations – the Trustee respectfully requests that the Court extend the page limitation from ten (10) pages to twenty-five (25) pages. *See* Local Bankruptcy Rule 7007-2 (permitting enlargement of page limitations with approval of the Court).

21.     Indeed, considering the extent to which the Debtor's purported defense to the Contempt Motion materially changed at his deposition, the Trustee's Reply must address effectively two Oppositions – the one the Debtor's counsel filed, and the one the Debtor articulated for the first time on Friday.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]*

WHEREFORE, the Court should grant this Motion, permit the filing of Protected Material under seal as provided in the Proposed Order, enlarge the page limit for the Trustee's Reply, and grant such other and further relief as the Court deems just and proper.

Dated:      November 14, 2022              LUC A. DESPINS,
            New Haven, Connecticut         CHAPTER 11 TRUSTEE


                                           By: */s/ Patrick R. Linsey*
                                               Douglas S. Skalka (ct00616)
                                               Patrick R. Linsey (ct29437)
                                               NEUBERT, PEPE & MONTEITH, P.C.
                                               195 Church Street, 13th Floor
                                               New Haven, Connecticut 06510
                                               (203) 781-2847
                                               dskalka@npmlaw.com
                                               plinsey@npmlaw.com

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, *et al.*,                                 :    Case No. 22-50073 (JAM)
                                                       :
          Debtors.[6]                                  :    Jointly Administered
                                                       :
-------------------------------------------------------x

**[PROPOSED] ORDER GRANTING**
**CHAPTER 11 TRUSTEE'S SEALED MOTION (A) TO SEAL REPLY IN SUPPORT**
**OF MOTION FOR ENTRY OF ORDER HOLDING DEBTOR IN CIVIL CONTEMPT**
**FOR FAILURE TO COMPLY WITH CORPORATE GOVERNANCE RIGHTS ORDER**
**AND RELATED DOCUMENTS; AND (B) TO ENLARGE PAGE LIMIT FOR REPLY**

UPON CONSIDERATION OF the motion (the "Motion") of Chapter 11 Trustee Luc A.

Despins (the "Trustee") requesting permission to file under seal his *Reply in Support of Motion for*

*Entry of Order Holding Debtor in Civil Contempt for Failure to Comply with Corporate*

*Governance Rights Order* (the "Reply") and certain other documents; and good cause having been

shown, and the Court having found that the disclosure of documents or information that are subject

to attorney-client privilege (collectively, "Privileged Material") or documents or information that

are otherwise confidential (collectively, the "Confidential Material" and, together with the

Privileged Material, the "Protected Material") could prejudice the Debtor's estate (the "Estate"),

including with respect to the value of assets of the Debtor's estate in the nature of pending litigation

---

[6]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Debtor") and Genever Holdings Corporation ("Genever BVI"). The mailing address for the Trustee and Genever BVI is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

claims, the Court having found that permitting the filing of Protected Material under seal is consistent with relevant parties' agreements and expectations under the Privileges Order and the Protective Order[7], to ensure the parties' compliance with such orders, the relief provided in this Order being narrowly tailored to serve the foregoing purposes, and good cause having thereby and otherwise been shown, it is by the Court, hereby

ORDERED, that the Motion is granted as set forth herein; and it is further

ORDERED, that the Court approves the filing of the Motion and the appended unredacted Reply under seal and the Motion shall remain under seal as well as the unredacted Reply; and it is further;

ORDERED, that the Trustee shall file a copy of the Reply on the public docket in this chapter 11 case that has been redacted with respect to any information that the Trustee has designated as Protected Material, provided, however, that the Trustee shall serve the Debtor, PAX, the Committee, and the United States Trustee (together, collectively, the "Confidential Parties") with a copy of the Reply with Privileged Material redacted but Confidential Material (that is not otherwise Privileged Material) unredacted, and the Trustee shall serve a fully unredacted copy of the Reply on the Debtor; and it is further

ORDERED, that the Trustee may file any Hearing exhibits that are Confidential Material under seal, provided, however, the Trustee shall serve all such exhibits (that are not otherwise Privileged Material) on the Confidential Parties upon such sealed filing; and it is further

ORDERED, that the Trustee may file any Hearing exhibits that are Privileged Material under seal, provided however, the Trustee shall serve all such exhibits on the Debtor upon such sealed filing; and it is further

---

[7]    Capitalized terms not otherwise defined in this Order shall adopted the definitions set forth in the Motion.

ORDERED, that the page limitation applicable to the Trustee's Reply shall be twenty-five (25) pages.

**EXHIBIT B**

**UNREDACTED REPLY HIGHLIGHTED TO REFLECT CONFIDENTIAL MATERIAL
AND PRIVILEGED MATERIAL**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------x
                                    :

In re:                           :    Chapter 11

                                      :

HO WAN KWOK, *et al.*,      :    Case No. 22-50073 (JAM)

                                      :

           Debtors.[1]       :    Jointly Administered

                                      :
---------------------------------------------------------x

### CHAPTER 11 TRUSTEE'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF ORDER HOLDING DEBTOR IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH CORPORATE GOVERNANCE RIGHTS ORDER

Luc Despins, as the Chapter 11 Trustee appointed in the chapter 11 case of Ho Wan Kwok (the "Trustee"), by and through his undersigned counsel, respectfully submits this reply (the "Reply") in support of his *Motion of Chapter 11 Trustee for Entry of Order Holding Debtor in Civil Contempt for Failure to Comply with Corporate Governance Rights Order* [Docket No. 913] (the "Contempt Motion")[2] and in response to the objection thereto [Docket No. 1026] (the "Objection") filed by Mr. Ho Wan Kwok (the "Debtor").

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Debtor") and Genever Holdings Corporation ("Genever BVI"). The mailing address for the Trustee and Genever BVI is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms not otherwise defined herein adopt the definitions set forth in the Contempt Motion.

## PRELIMINARY STATEMENT

1.      The Debtor's continued non-compliance with the clear and unambiguous

directives of this Court's Corporate Governance Rights Order and the requirements of sections

521(a)(3) and (4) of the Bankruptcy Code[3]—along with shifting excuses, obfuscations, and

outright misrepresentations to explain such non-compliance—evoke Justice Ostager's

admonition in the PAX litigation that "if billionaire litigants can simultaneously seek to use

Court process in New York and elsewhere in the United States while knowingly and

intentionally violating Court orders, there is no rule of law."[4]  Justice Ostager made this

statement after observing the Debtor's behavior for five years during the PAX litigation, during

which he demonstrated "utter contempt for [the New York state court] and the judicial process."[5]

2.      The Debtor is now employing many of the same strategies and tactics in response

to the Contempt Motion that led Justice Ostager to make his findings.  One of the Debtor's

favorite strategies in the PAX litigation and elsewhere has been to disavow, without any sense of

shame or embarrassment, any knowledge of or responsibility for his own words and statements,

including those made in court filings and/or under oath, if doing so advances his personal

interests.  For example, during his deposition in the PAX litigation, the Debtor claimed the

signature on his personal guarantee to PAX was forged, even though he had produced that very

document and relied on its authenticity when seeking to dismiss the PAX litigation in June

---

[3]    To be clear, nothing in the Corporate Governance Rights Order "preempted" the Debtor's requirements to comply with sections 521(a)(3) and (4) of the Bankruptcy Code.  *See* Corporate Governance Rights Order ¶ 3 ("In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to . . . ").

[4]    Decision and Order on Motion, dated February 9, 2022 at 10, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 1181

[5]    *Id.* at 4.

2017.[6]  In fact, the Debtor's own counsel previously admitted the guarantee was "signed by Mr. Kwok."[7]  The Debtor's incredible about-face caused Justice Ostrager to order him judicially estopped from asserting forgery as a defense to PAX's breach of contract claims.[8]  Another of the Debtor's favorite strategies is to baselessly claim that someone else (including a close family member or a trusted confidant) owns an asset of which the Debtor is the true beneficial owner.  These same strategies are on full display here.  The Debtor is both shamelessly abandoning his prior testimony and concocting an unbelievable story about who supposedly owns and controls Ace Decade in order to serve his own personal interests and shield his assets from creditors.  In the past, the Debtor attested in court filings and/or under oath—including at the Section 341 Meeting and in the U.K. Complaint—that he owns Ace Decade.  Now, however, the Debtor contends that his testimony at the Section 341 Meeting was somehow mistranslated, even though neither he nor his personal interpreter at the meeting objected to the supposedly incorrect translation at the time or in the six months since then.

3.      Specifically, the Debtor contends that he did not testify at the Section 341 Meeting that he is "a legally representing owner" of Ace Decade, as reflected in the meeting's official transcript, but rather that he is "legally representing the owner"—*i.e.*, that the owner is someone else and that the Debtor serves as a mere representative of that person.

---

[6]   *See* Hearing Ex. 45, Memo in Support of Kwok Motion to Dismiss at 3, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 8; Hearing Ex. 44, Affirmation of Fiona Yu in Support of Kwok Motion to Dismiss at 2, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 11 (attaching a true and correct copy of the personal guarantee between Kwok and PAX).

[7]   Hearing Ex. 47, Email chain between PAX LP and Stevenson Wong, dated March 16, 2011, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 354.

[8]   *See* Hearing Ex. 48, Judicial Estoppel Decision, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 404 ("[T]he Court holds that defendant Kwok is judicially estopped from challenging . . . the authenticity of documents defendant Kwok previously sponsored in proceedings before this Court, notwithstanding that defendant Kwok sought to disavow his signature on those documents during his deposition.").

████████████████████████████████████████████████████████████████

████████████████████████████████[9] This alone destroys the Debtor's story, exposing

it as a mere fabrication designed to prevent the Trustee from obtaining control of Ace Decade.

Making matters worse, the only witness the Debtor has identified to support the alleged

translation error—his personal interpreter—testified at her deposition last Friday ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████

4.      The Debtor is also now flatly contradicting his own sworn testimony in other

contexts concerning his interests in Ace Decade.  The Debtor previously testified that *he* used

Ace Decade to make the UBS investment and that *he* funded the investment with his own

personal funds.  At last Friday's deposition, however, ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████  ██████████████████████████████████████████

████████████████████████████████████████████████████████

---

[9]     Hearing Ex. 27, Nov. 11, 2022 Dep. Tr. of Ho Wan Kwok (the "<u>Kwok Deposition</u>") at 52:9-11.

[10]    Nov. 11, 2022 Dep. Tr. of Una Wilkinson (the "Wilkinson Deposition") at 20:4-12 ██████████

████████████████████████████████████████████████████████████████

██████████████████████████████

[11]    Hearing Ex. 27, Kwok Deposition at 30:7-8 ████████████████████████████████████

██████████████.

[12]    *Id.* at 69:9-11 ██████████████████████████████████████████████████████

██████████████

████████████████. In 2018, the Debtor testified in a deposition in another litigation—again, without any evidence—that his apartment at the Sherry Netherland in Manhattan was really owned by Mr. Wei.[13]  But, as the Court is aware, the Debtor now claims in these chapter 11 cases that the Sherry Netherland is and has always been held in trust for the benefit of Bravo Luck Limited, which in turn, again according to the Debtors, is owned by the Debtor's son.[14]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

All these schemes and ridiculous assertions that need to be investigated and answered by the Trustee (in addition to the Debtor's various attempts to frustrate the Trustee's work) are costing the estate millions of dollars in professional fees.  This must stop now.

6.    ████████████████████████████████████████████

████████████████████████████████████████. In 2016 and again in 2020, the Debtor stated that Yong Yu was the nominee shareholder of Ace Decade and that he was her "employer."[15]  Later, in a deposition held in 2021, the Debtor denied multiple times that he knew Yong Yu.[16] ████████████████████████████████████████

---

[13]    *See* Hearing Ex. 39, Oct. 3, 2018 Kwok Dep. Tr. at 125:13-19 ("Q. And my question is: Is it your position that our client cannot attach the apartment because you don't own it, but rather Zhang Wei does? . . . A. Yes.").

[14]    *See* First Day Declaration, Docket No. 107, ¶ 33 ("I hold all of the equity of Genever BVI. However, pursuant to a Declaration of Trust and Agreement, dated February 17, 2015 (the 'Trust Date'), I hold such equity in trust for Bravo Luck Limited.").

[15]    Hearing Ex. 15, Affidavit of Kwok Ho Wan, dated February 5, 2016, *Ace Decade vs. UBS AG*, Index No. 653316/2015 (N.Y. Sup. Ct.), NYSCEF Doc No. 27, ¶ 1 ("I am the employer of Yong Yu, the Director and sole shareholder of Ace Decade.").  *See also* U.K. Complaint ¶ 24 (identifying Yong Yu as Debtor's employee).

[16]    Hearing Ex. 46, July 21, 2021, Dep. of Guo Wengui, *Meng v. Guo*, Index No. 159636/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 69, at 159:21-160:5 ("Q. Okay. Do you know a person named Yong Yu? A. Yong Yu? I'm sorry . . . . Q. It's a person. Do you know a person named Yong Yu?  A. I don't know Yong Yu.").

██████████████████████████████ ██ ████████████████████████████████████

██████████████████████████████████████████████████████ In 2018,

the Debtor stated she was his "assistant"[18] (which is consistent with numerous documents in the

public record and/or produced to the Trustee),[19] ████████████████████████████████████

██████████████████████████████ ██

      7.     The Debtor's contradictions also extend to the schedules and declarations he

submitted in this chapter 11 case.  The Debtor listed the UBS litigation in his schedules as an

asset of his estate and stated in his March 20, 2022 declaration (the "First Day Declaration"),

which he also submitted in support of his request for DIP financing to help fund the UBS

litigation, that the proceeds of that litigation could go to creditors and would be used to formulate

a plan.[21] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[17]  Hearing Ex. 27, Kwok Deposition at 33:3-8.

[18]  Hearing Ex. 39, Oct. 3, 2018 Kwok Dep. Tr. at 55:23-25 ("Q. Who is your assistant? A. . . . [Yvette] Wang.").

[19]  In the Final Arbitration Award issued by arbitrator Frank Maas in connection with the fee dispute between the Debtor and Boies Schiller, Maas referred to Yvette Wang as "Kwok's chief of staff."  *See* Hearing Ex. 13, Arbitration Award at 3, *Boies Schiller Flexner, LLP v. Kwok*, Index No. 150001/2019 (N.Y. Sup. Ct.), NYSCEF Doc. No. 6.  *See also, e.g.*, Hearing Ex. 31, Yvette Wang Dep. Tr., dated Oct. 11, 2018, at 46:20-25 ("Q. I'm asking you whether or not you serve as an administrator for Mr. Kwok's interests? A. Yes. Q. What does that mean? A. Translator, **assistant**.") (emphasis added); Hearing Ex. 28, Email from Yvette Wang, dated July 11, 2019 ("[W]e [at Golden Spring] take care of Miles' and his family's business . . . ."); ███████████████ ████████████████████████████████

[20]  Hearing Ex. 27, Kwok Deposition at 77:16-79:13 ██████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████

[21]  *See* First Day Declaration ¶¶ 32, 47 (Debtor states that he "anticipated that the proceeds of recoveries or settlements in litigations in which I am a plaintiff will be used to fund a Chapter 11 plan.").

[22]  Hearing Ex. 27, Kwok Deposition at 30:7-8 ████████████████████████████████ ████████████

8.      Finally, in a last-minute effort to purportedly "comply" with the order the Trustee requests in the Contempt Motion, the Debtor has submitted to the Court a letter he reportedly delivered to Ms. Wang stating that he is instructing her to transfer the shares of Ace Decade to the Trustee to the extent he may have authority over Ace Decade.  As discussed further below, the letter—which accomplishes exactly nothing—is a shameless litigation tactic that the Court should reject out of hand.

9.      The Court should not countenance the Debtor's latest tactics to avoid compliance with the Corporate Governance Rights Order.  If the Debtor were allowed to keep on playing these games, he would make a mockery of this Court and the judicial system.  The Debtor is an individual with unlimited funds to hire attorneys to make every argument imaginable to seek to delay and obstruct judicial proceedings.  Given the Debtor's refusal to comply with the Corporate Governance Rights Order and his prior testimony that he owns Ace Decade, the Court should rule that the Debtor is the owner of Ace Decade and that Ace Decade's shares belong to the chapter 11 estate.  The Debtor should be held in contempt unless he turns over his shares in Ace Decade within a period of ten (10) days.

## ARGUMENT

### I.    Debtor Has Failed to Comply with Clear Directives of Corporate Governance Rights Order

10.      As an initial matter, the Debtor's Objection attempts to obfuscate the Court's clear directives in the Corporate Governance Rights Order.  However, try as he might, the Debtor cannot change the plain language of the Corporate Governance Rights Order, which provides that "the Trustee holds *all of the Debtor's economic and governance rights*, for the benefit of the Estate, *with respect to all Debtor-Controlled Entities*, including, without limitation, Genever (BVI)."  To implement the foregoing provision, the Corporate Governance Rights Order directs

7

the Debtor to "cooperate with the Trustee to enable the Trustee to perform his duties" and "surrender to the Trustee ***all property of the estate*** and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate."[23] To state the obvious, the Corporate Governance Rights Order is not limited to Genever (BVI), but rather applies to all of the Debtor's property, including Ace Decade, a company that the Debtor has repeatedly admitted, in court filings and/or under oath, he owns.

11.     Yet, despite the clear language in the Corporate Governance Rights Order, the Debtor insists that this order does not expressly require him to transfer shares of Ace Decade to the Trustee, and, thus, does not meet the Second Circuit's standard required to find contempt, which requires that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  But the Corporate Governance Rights Order could hardly be clearer, and there are few words less ambiguous than "all" property—language which undoubtedly includes his ownership of Ace Decade.

12.     Nor does the fact that the Corporate Governance Rights Order only specifically addresses the transfer of the Genever (BVI) shares limit the clear language requiring the Debtor to transfer "to the Trustee all property of the estate."  The Corporate Governance Rights Order is clear that the surrender of property of the estate includes "***without limitation***" the shares of Genever (BVI)[24]—language which courts in the Second Circuit have repeatedly found not to be construed as limiting.  *See, e.g.*, *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*,

---

[23]   Corporate Governance Rights Order ¶¶ 2, 3 (emphasis added).

[24]   Corporate Governance Rights Order ¶ 3 (emphasis added)

272 F.R.D. 350, 356 (W.D.N.Y. 2011) ("this Court [un]aware of any . . . argument that the

clause 'including, without limitation' should be read as a limiting clause."); *Shugrue v.*

*Continental Airlines,* 977 F. Supp. 280, 285-86 (S.D.N.Y. 1997) (plain language of "including

without limitation" indicates list in agreement is not exclusive).

13.     Additionally, there can be no question that the Trustee has met the "clear and

convincing" standard as it relates to the Debtor's non-compliance.  The Debtor has not

surrendered anything to the Trustee with regard to Ace Decade, nor given any serious indication

that he plans to do so.

14.     The Debtor advances the absurd theory that he cannot comply with the Corporate

Governance Rights Order because even if he were the owner of Ace Decade, the Trustee now

holds all corporate governance rights and thus only the Trustee could direct a transfer of the

shares of Ace Decade.  This argument is nonsense.  At this point, the Trustee is (still) not in

control of Ace Decade precisely because the Debtor refuses to cooperate in transferring the Ace

Decade shares to the Trustee.  The Debtor should not be excused from having to comply with an

order (as well as section 521(a)(3) and (4) of the Bankruptcy Code) that requires him to

cooperate with the Trustee and surrender his property to the estate on the ground that the very

same order supposedly prevents the Debtor from complying with that obligation.

15.     Nothing about this analysis is changed by the Debtor's production of a signed

letter, dated November 10, 2022 (the "Share Transfer Letter"), addressed to Yvette Wang, which

states that "in compliance with the Trustee's demands and to the extent that I may have any

authority over Ace Decade, I hereby direct you to execute the attached Share Transfer Instrument

and Share Transfer Resolution."[25]  This last-minute tactic is offensive—and sending such a

---

[25]    Debtor's Hearing Ex. B, at 1.

9

meaningless letter is anything but complying with the Corporate Governance Order. █████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



16.   ██████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████ Ironically, the Trustee has attempted to locate Ms. Wang in order to serve her with a

subpoena to testify in this matter but the Trustee's process servers have been unable to locate

Ms. Wang.[30]

17.   In sum, the Share Transfer Letter is a cynical, last-minute attempt to avoid a

contempt ruling by purporting to comply with the Corporate Governance Rights Order while in

---

[26]   Hearing █████ Kwok Deposition at 85:23-86:8 ██████████████████████
████████████████████████████████████

[27]   *Id*. at 48:14-16 (██████████████████████████████████████████
████████

[28]   *Id*. at 83:3-7.

[29]   *Id*. at 88:17-25.

[30]   Hearing Ex. 32, Affidavit of Attempted Service, dated Nov. 11, 2022 (describing attempts to serve Yvette Wang at multiple addresses, including at her attorney's address, on Nov. 9, 2022). In addition, Ms. Wang's counsel has informed the Trustee that he was not authorized to accept service of the Trustee's subpoena. *See* Hearing Ex. 33, Email chain between Avi Luft of Paul Hastings LLP and Alex Liman of Lipman Law PLLC, dated Nov. 10, 2022 (with Mr. Lipman noting that he "is not authorized to accept service" on Yvette Wang's behalf).

fact taking none of the steps that the Corporate Governance Rights Order would require. Clearly, the Corporate Governance Rights Order requires the Debtor to surrender the Debtor-Controlled Entities to the Trustee, and there can be no question that he has not attempted to comply, despite the clear and unambiguous terms of the order, and that his refusal to do so warrants entry of an order holding him in contempt.

## II.    **UBS Litigation and Related Filings Confirm Debtor's Ownership of Ace Decade**

18.    As detailed in the Motion, the U.K. Complaint (filed in September 2020) makes abundantly clear that Ace Decade and its wholly-owned subsidiary, Dawn State, are owned and controlled by the Debtor.  According to the U.K. Complaint, the Debtor was the true beneficiary of the equity investment in Haitong Securities Company Limited ("Haitong"), with Ace Decade and Dawn State merely acting as his investment vehicles so that the Debtor could avoid having to seek approval from the China Securities Regulatory Commission ("CSRC").  Among other things, the Debtor, Ace Decade, and Dawn State alleged in the U.K. Complaint that:

- "Mr Kwok resolved to invest approximately US$3 billion in H-Shares in order to obtain a major stake in Haitong.  This investment was to be made through the issue of new H-Shares by Haitong, and their allotment to companies controlled by Mr Kwok."  U.K. Complaint ¶ 7.

- "Mr Kwok communicated his intention to acquire a substantial stake in Haitong to Mr Hank Lo, a Hong Kong solicitor and partner in the firm Stevenson, Wong & Co."  U.K. Complaint ¶ 8.

- "Mr Kwok's intention was to acquire the shares for himself."  U.K. Complaint ¶ 11(3).

- UBS advised Mr Kwok "[n]ot purchase the shares through a company beneficially owned or controlled by him, as this would require CSRC approval," and "[i]nstead, set up a structure (which would be arranged by UBS) under which the UBS H-Shares would be acquired by a company controlled by a third-party intermediary, which acquisition would not require CSRC approval."  U.K. Complaint ¶ 18.  That third-party intermediary was Haixia Capital Management Company Ltd ("Haixia"), an entity that initially owned and controlled Dawn State.  U.K. Complaint ¶ 4.

11

- "Ace Decade was acquired on 10 November 2014 by Mr Kwok for the purpose of acting as the said investment vehicle." U.K. Complaint ¶ 24.

- "Ace Decade, Dawn State and UBS enter[ed] into a series of arrangements designed to allow Ace Decade to participate in the acquisition of UBS H-Shares through Dawn State." U.K. Complaint ¶ 29.

- Under this arrangement, "Ace Decade would have only a contractual right to participate in the Project, and no immediate proprietary interest in Dawn State or the UBS H-Shares which it acquired." U.K. Complaint ¶ 33(3).[31]

At no point does the U.K. Complaint even mention Mr. Wei, the relative the Debtor suddenly contends is the company's real owner. The silence in that regard is deafening.

19.     While the U.K. Complaint also alleges that "on the advice of Mr Wong, an employee of Mr Kwok, Ms Yu Yong ("Ms Yu") became [Ace Decade's] nominee shareholder and director," U.K. Complaint ¶ 24, this allegation does not take away from the other statements in the U.K. Complaint that the Debtor was the beneficial owner of Ace Decade. As the Debtor stated in an affidavit filed in a separate litigation by Ace Decade against UBS in New York state court (the "Kwok/UBS Affidavit"), Ms. Yu was selected by the Debtor, upon the advice of UBS, in order to satisfy "know your customer" requirements of Haixia (i.e., the intermediary for the investment in H-Shares).[32] That the Debtor "appointed" Ms. Yu to such a position further substantiates that he controls Ace Decade. ██████████████████████████████

████████████████████████████████████████████████████

---

[31]   On September 18, 2015, Haixia transferred its shares in Dawn State to Ace Decade. U.K. Complaint ¶ 74.

[32]   See Hearing Ex. 15, Affidavit of Kwok Ho Wan, dated February 5, 2016, *Ace Decade vs. UBS AG*, Index No. 653316/2015 (N.Y. Sup. Ct.), NYSCEF Doc No. 27, ¶ 17 ("Mr. Wong asked to review the resumes of some of my employees to assess whose background would most likely satisfy Haixia's requirements so that such employee could be appointed as the Director and sole shareholder of Ace Decade. He reviewed these resumes and advised that Ms. Yu's resume and background was best suited to satisfy Haixia's requirements and thus, that I should appoint Ms. Yu as the Director and sole shareholder of Ace Decade.").

[REDACTED]

The same is true in communications by or regarding Yvette Wang, to whom the Debtor (or his counsel) addressed the Share Transfer Letter.[35]

20.    All of the foregoing is also consistent with the Debtor's corporate shell game of putting close family members and trusted confidants "in charge" of corporate entities to hide the true ownership of his assets from his creditors or regulators.  Indeed, as explained in the Kwok/UBS Affidavit, the primary purpose behind using a convoluted intermediary holding structure for the H-Shares (as opposed to the Debtor investing directly) was to avoid detection by Chinese regulatory authorities.[36]

21.    In his Objection, the Debtor now claims that the statements in the U.K. Complaint merely confirm his ownership of Ace Decade in November 2014.  Putting aside that nothing in the U.K. Complaint (which, as noted, was filed in September 2020) suggests that the ownership of Ace Decade has changed, the Objection does not state who, if not the Debtor, is the current owner of Ace Decade, nor does the Objection indicate when Ace Decade's ownership supposedly changed hands.  [REDACTED]  This last-minute shift in the Debtor's story is simply not credible.

---

[33] [REDACTED]

[34] [REDACTED]

[35] See Hearing Ex. 28, Email from Yvette Wang, dated July 11, 2019 ("[W]e [at Golden Spring] take care of Miles' and his family's business . . . ."); [REDACTED]

[36] See Hearing Ex. 15, Affidavit of Kwok Ho Wan, dated February 5, 2016, Ace Decade vs. UBS AG, Index No. 653316/2015 (N.Y. Sup. Ct.), NYSCEF Doc No. 27, ¶ 13 ("[I]f I invested through Ace Decade directly, applicable disclosure requirements would require certain filings.").

22.     In any event, the statements in U.K. Complaint are consistent with the statements made in the Section 341 Meeting, and indeed with all statements made by the Debtor until September of this year, when the Trustee requested that the Debtor transfer the shares of Ace Decade to the Trustee.  Only then did the Debtor first give any indication that a third party might own Ace Decade—but *all* of his statements to that point were consistent with the fact that he is the owner of Ace Decade.

23.     Further, there is voluminous additional documentary evidence demonstrating, beyond any doubt, that the Debtor owns and controls Ace Decade—and none of it even mentions Mr. Wei.  For example:

- The Kwok/UBS Affidavit demonstrates that it was the Debtor that funded Ace Decade and that it was the Debtor who made the investment the H-Shares (through Ace Decade):

  o   "Mr. Wong [at UBS] told me that because of the size of the Investment that *I* was planning to make, senior executive from UBS globally would participate in structuring the deal."  Kwok/UBS Affidavit ¶ 10.

  o   "Based on these representation that senior executives at UBS globally would be involved in structuring and overseeing this Investment and that UBS would act in *my* best interests, *I* entrusted UBS to act as *my* advisor for the Investment."  *Id.* ¶ 11.

  o   "[UBS] advised *me* on which of my employees to appoint as sole shareholder and Director of Ace Decade, to *utilize Ace Decade* to enter into a side agreement with an intermediary entity that would hold legal title to the Shares, and how best to *transfer the funds necessary for the Investment from one of my UBS accounts to the Ace Decade account*."  *Id.* ¶ 12.

  o   "UBS advised that because the planned Investment comprised greater than 5% of the outstanding H-shares of Haitong, if *I invested through Ace Decade* directly, applicable disclosure requirements would require certain filings."  *Id.* ¶ 13.

- In his First Day Declaration, the Debtor stated that he "anticipated that the proceeds of recoveries or settlements in litigations in which I am a plaintiff will

14

be used to fund a Chapter 11 plan,"[37] and that UBS litigation claims were "assets that I anticipate relying on to help formulate and potentially confirm a plan of reorganization."[38]  This could only have been true if the proceeds of recoveries to Ace Decade flowed to the Debtor based on his status as owner of Ace Decade.



- Ace Decade's complaint in the UBS litigation filed in New York state court describes the UBS transaction as arising from plans by the Debtor to invest approximately $1 billion "through Ace Decade."[45]

---

[37]   First Day Declaration ¶ 47.

[38]   First Day Declaration ¶ 54.

[39]   *See* Hearing Ex. 41, Dep. Tr. of Ho Wan Kwok, dated November 25, 2019, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 350, at 10:21-24 (Mr. Podhaskie noting his representation of the Debtor in his personal capacity).

[40]   

[41]   *Id.*, ¶ 7(1).

[42]   *Id.*, ¶ 6.

[43]   *Id.*

[44]

[45]   *See* Hearing Ex. 14, Complaint, *Ace Decade vs. UBS AG*, Index No. 653316/2015 (N.Y. Sup. Ct.), NYSCEF Doc No. 1, ¶ 20.

- The complaint filed by the Debtor against Boies Schiller, his counsel in the New York UBS litigation, related to a fee dispute, asserts that the Debtor hired Boies Schiller to commence litigation on behalf of Ace Decade based on fraud and misrepresentations made to the Debtor.[46]

- The arbitration award issued in connection with the fee dispute between the Debtor and Boies Schiller states that the Debtor retained Boies Schiller "on his behalf" in the lawsuit against UBS and that Boies Schiller billed the Debtor approximately $1.5 million.[47]

24.     Indeed, if the Debtor does not have an economic interest in Ace Decade why did he commence litigation against UBS (including in New York state court and in U.K. courts) seeking to recover approximately $500 million in losses suffered as a result of an investment in the H-Shares?  These lawsuits clearly demonstrate that the Debtor sees the investment losses sustained by Ace Decade and Dawn State as his own—exactly as one would expect to be the case for the beneficial owner of Ace Decade and Dawn State.

## III.     The Court Should Reject the Debtor's Attempt to Disavow His Testimony at the Section 341 Meeting

25.     Faced with clear and unambiguous directions under the Corporate Governance Rights Order and his multiple statements, in court filings and/or under oath, that he is the owner of Ace Decade, the Debtor now attempts to challenges the accuracy of the official transcript of the April 6, 2022 meeting of creditors (the "Section 341 Meeting"), in which he confirmed, under oath, that he is the sole owner of Ace Decade.  To reiterate, during the Section 341 Meeting, counsel to the U.S. Trustee questioned the Debtor as follows:

Q     Mr. Kwok, do you own any interest in a company called Ace Decade Holdings Limited?

A     *Yes.*

---

[46]   *See* Hearing Ex. 11, Complaint, *Wengui v. Schiller, et al.*, Index No. 150001/2019 (N.Y. Sup. Ct.), NYSCEF Doc. No. 1, ¶¶ 6-7 ("The UBS matter involved damages in excess of $500 million as a result of UBS' fraud and misrepresentations to Guo . . . .").

[47]   *See* Hearing Ex. 13, Arbitration Award at 2, *Boies Schiller Flexner, LLP v. Kwok*, Index No. 150001/2019 (N.Y. Sup. Ct.), NYSCEF Doc. No. 6.

Q What is the nature of your ownership interest in Ace Decade
   Holdings Limited?

A So I have the interest and ask for UBS to pay back $500 million.
   That kind of interest.
   . . .

Q Are you [Mr. Kwok] the only legal owner of Ace Decade?

A ***I am a legal representing owner.***

Q Are there any other owners of Ace Decade?

A ***No.***

Q When did you become an owner of Ace Decade Holdings
   Limited?

A ***At the end of 2014.***[48]

26. At no time during the entire Section 341 Meeting did the Debtor assert that he is

not the owner of Ace Decade or that the owner of Ace Decade is Mr. Wei.[49]  Nor did the Debtor

dispute the official translation of this portion of the Section 341 Meeting, which the Debtor did

on many other occasions during the meeting.[50]  ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████  Nor did

the Debtor subsequently challenge the accuracy of any of these portions of the official

transcript—until, of course, the Trustee requested the transfer of the shares in Ace Decade.  It

was only then that the Debtor asserted, for the first time, that his prior admissions were

purportedly the result of a series of mistranslations.

27. In particular, the Debtor now argues that the proper translation of his exchange

with counsel to the U.S. Trustee was that she asked him "[a]re you the only legal owner of Ace

Decade?" to which the Debtor responded: "I am legally representing the owner."[51]  Putting aside

---

[48] Tr. of Section 341 Meeting at 60:16-61:10, dated April 6, 2022 (emphasis added).

[49] The Debtor only asserted that Mr. Wei gave the Debtor the $500 million in funds that the Debtor then provided
to Ace Decade.  *See id.* at 62:11-63:1 (Mr. Wei's name transcribed as "John Way").

[50] *See, e.g., id.* at 25:8-10; 40:14-23; 47:24-25; 83:22-25; 116:9-10.

[51] Objection ¶ 18.

that the Debtor does not even attempt to explain why his other statements at the Section 341 Meeting that he is the owner of Ace Decade were somehow mistranslated, the Debtor cannot now be heard to argue that "legal representing owner" meant "legally representing the owner."

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████

29.     Even if Ms. Wilkinson were allowed to testify, her testimony would have zero credibility.[53] ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[52]  Wilkinson Deposition at 20:4-12 ████████████████████████████████████

████████████████████████████████████████████

[53]  The Trustee is moving to exclude Ms. Wilkinson's proposed testimony.

[54]  *Id.* at 26:6-23 ██████████████████████████████████████████████

████████████████████████████████████



## CONCLUSION

30.     For several years now, the Debtor has asserted that he owns Ace Decade and its wholly owned subsidiary, Dawn State. It was only after the appointment of the Trustee that the Debtor began to change his story to now claim, unconvincingly, that he does not own Ace Decade and Dawn State. The Court should reject the Debtor's latest attempts of obfuscation and misdirection, and enforce the Court's order (as well as the Debtor's duties under the Bankruptcy Code) to cooperate with the Trustee and surrender *all* property of the estate. The impact of the Debtor's conduct is not limited to the proceedings before this Court. The Debtor's continued subterfuge is allowing Ace Decade and Dawn State to present themselves as "independent" of the Debtor and pursue objections to the Trustee's recognition application pending before the U.K. courts.[57]

31.     For all of these reasons, and those detailed in the Contempt Motion, the Trustee requests that the Contempt Motion be granted, including that the Debtor be held in contempt until he turns over the Ace Decade shares to the Trustee (regardless of who holds them for him) and that the Court hold that the Debtor is the owner of the Ace Decade shares.

*[Remainder of Page Intentionally Left Blank]*

---

[55]   *Id.* at 112:20-113:6.

[56]   *Id.* at 131:4-11

[57]   *See* Hearing Ex. 51, Letter from Wedlake Bell, dated November 3, 2022.

Dated:      November 14, 2022                LUC A. DESPINS,
            New Haven, Connecticut          CHAPTER 11 TRUSTEE


                                            By: */s/ Patrick R. Linsey*
                                                Douglas S. Skalka (ct00616)
                                                Patrick R. Linsey (ct29437)
                                                NEUBERT, PEPE & MONTEITH, P.C.
                                                195 Church Street, 13th Floor
                                                New Haven, Connecticut 06510
                                                (203) 781-2847
                                                dskalka@npmlaw.com
                                                plinsey@npmlaw.com

                                                    *and*

                                                Nicholas A. Bassett (admitted *pro hac vice*)
                                                PAUL HASTINGS LLP
                                                2050 M Street NW
                                                Washington, D.C., 20036
                                                (202) 551-1902
                                                nicholasbassett@paulhastings.com

                                                    *and*

                                                Avram E. Luft (admitted *pro hac vice*)
                                                Douglass Barron (admitted *pro hac vice*)
                                                PAUL HASTINGS LLP
                                                200 Park Avenue
                                                New York, New York 10166
                                                (212) 318-6079
                                                aviluft@paulhastings.com
                                                douglassbarron@paulhastings.com

                                                *Counsel for the Chapter 11 Trustee*

20

# **EXHIBIT A [REDACTED]**