**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, *et al.*,                                 :    Case No. 22-50073 (JAM)
                                                       :
            Debtors.[1]                                :    Jointly Administered
                                                       :
-------------------------------------------------------x

### CHAPTER 11 TRUSTEE'S RESPONSE IN OPPOSITION TO THE DEBTOR'S MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DISCLOSURE OF THE DEBTOR'S ASYLUM APPLICATION

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), respectfully submits this objection (the "Objection") to the Debtor's *Motion For Protective Order* [Docket No. 1063] (the "Motion for Protective Order"). In support of this Objection, the Trustee submits the *Declaration of Avram E. Luft in Support of Opposition to Protective Order* (the "Luft Declaration"),[2] and respectfully states as follows:

### PRELIMINARY STATEMENT

1.    Although the Court would not know it from reading the Debtor's Motion for Protective Order, what the Debtor seeks to do is prevent the Trustee from reviewing a critical document—the asylum application—that it is attached to and incorporated into the summary judgment motion filed by Clark Hill against the Debtor in the Malpractice Action and that forms

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Debtor") and Genever Holdings Corporation (the "Genever BVI Debtor"). The mailing address for the Trustee and the Genever BVI Debtor is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] The Luft Declaration is being filed contemporaneously herewith.

the backbone of the Debtor's claims in the Malpractice Action.[3]  The Malpractice Action is now an asset of the estate that the Trustee owns and controls.  Absent the production of the asylum application, and the information in it that is referenced in the pleadings, depositions and expert reports in the Malpractice Action, the Trustee will be flying blind in a litigation he controls, unable to read the pleadings and evidence at issue.  The Malpractice Action is a potentially valuable asset of the estate that could mature into a recovery for the Debtor's creditors, but only if the Trustee has the ability to assess and litigate the matter.

2.      The Debtor's Motion for Protective Order ignores this fundamental issue and is instead highly misleading, to the point where serious questions need to be asked regarding the Debtor's candor with this Court.  First, nowhere in the Motion for Protective Order does the Debtor disclose that the asylum application he seeks to withhold from production is at the very core of the Malpractice Action, a litigation that counsel for the Debtor has admitted is an asset of the estate.  The Debtor also omits that the asylum application was not independently requested by the Trustee, but rather is directly responsive to the Trustee's requests for the pleadings and related documents in the Malpractice Action to enable the Trustee to manage such action.

3.      Second, the Motion for Protective Order fails to disclose that seemingly the one point of agreement between the Debtor and Clark Hill in the Malpractice Action is that the information in the asylum application is already public.  While the Trustee has been prevented for almost three months from even being able to review the relevant pleadings in the Malpractice Action based on bogus objections by the Debtor's counsels, as it has been represented to the Trustee by counsel for Clark Hill, and as set forth in the complaint, the Debtor sued based on his theory that he was harmed due to the content of his asylum application being hacked and

---

[3] Capitalized terms within the Preliminary Statement take the meaning given to them *infra*.

released to the public, while Clark Hill has argued in response that the disclosed information was already public knowledge prior to the hack. Given this, it seems that what the Debtor wants is not to prevent his asylum application from being disclosed, but rather to prevent the Trustee from being able to exercise control over an estate asset – a violation of the automatic stay.

4.     Third, the Motion for Protective Order, despite being predicated on the alleged need to prevent production of the asylum application so as to be in compliance with the Privileges Consent Order, fails to disclose that counsel for the Debtor already admitted to counsel for Clark Hill that the Debtor's asylum application is ***not privileged***—making the Debtor's arguments to the Court based on the Privileges Consent Order irrelevant at best, and in reality misleading and disingenuous.

5.     Fourth, similarly, the Motion for Protective Order's reliance on comments made by counsel for the Trustee to this Court during hearings concerning the negotiation of the Privileges Consent Order – discussions inherently about ***privileged*** information – are nothing more than a smoke screen to obscure the Debtor's omissions.  At no point when the Privileges Consent Order was being negotiated did counsel for the Debtor, who had access to the pleadings and papers relevant to the Malpractice Action, tell counsel for the Trustee that the Debtor's asylum application was attached to Clark Hill's summary judgment briefing and formed the basis for its defense to the Debtor's claims.  The comments made by counsel for the Trustee simply indicated that the Trustee had no interest (and still has no interest) in specifically investigating the asylum application process or reviewing the substance of the application independent of its relevance to the Malpractice Action.

6.     Fifth, the Motion for Protective Order omits that the federal regulation the Debtor cites only applies to disclosures made by government officials, not private parties, and that far

from prohibiting disclosure of the asylum application to the Trustee, it explicitly states that the Debtor may consent for the government (or anyone else) to disclose the asylum application. Nothing prohibits the Debtor from disclosing the asylum application to the Trustee. His refusal not to do so is yet another example of his lack of cooperation with the Trustee and continued attempts to obstruct the Trustee's work under the Bankruptcy Code.

7.      There is no basis for the Debtor's motion: the asylum application is not privileged; by the Debtor's own admission, its contents have already been disclosed to the public; and withholding of the asylum application will prevent the Trustee from effectively exercising control over the Malpractice Action, an asset of the estate that must now be utilized to provide a recovery for the Debtor's creditors.

8.      The Trustee needs to be able to fully assess the merits of the Malpractice Action, which is an estate asset. To do so, the Trustee needs access to the Debtor's asylum application. Importantly, receiving the Debtor's asylum application to evaluate and exercise control over the Malpractice Action is quite different from requesting access to the Malpractice Action to explore the merits of the Debtor's asylum application—something the Trustee has no interest in doing. The Motion for Protective Order should be denied.

## **BACKGROUND**

### **A.  The Debtor's Malpractice Action against Clark Hill**

9.      On September 19, 2019, the Debtor filed a complaint against his former counsel Clark Hill PLC ("Clark Hill") alleging malpractice and seeking damages arising from a breach of Clark Hill's computer server resulting in the public dissemination of the Debtor's asylum application information on the internet (the "Malpractice Action"). The Malpractice Action was removed to the United States District Court for the District of Columbia (the "District Court") on

October 24, 2019.[4]

10.    The Debtor retained Ari Casper from The Casper Firm, LLC ("Casper") to represent him in the Malpractice Action, and Clark Hill retained Jenner & Block LLP ("Jenner & Block") as defense counsel.

11.    The Debtor alleged that, "[a]s a direct and proximate cause of [Clark Hill's] multiple breaches of their duties and legal obligations, the details and contents of [the Debtor's] asylum application and other materials have been disclosed widely on social media platforms and placed in the hands of third-parties hostile to [the Debtor]."[5]

12.    Up until the Debtor filed for bankruptcy, the parties to the Malpractice Action actively litigated the case: discovery proceeded and depositions were taken, which was then followed by service of expert reports from the parties and expert discovery. [6]

13.    On February 15, 2022, Clark Hill moved for summary judgment and to exclude the Debtor's experts.[7]

**B. The Debtor's Bankruptcy Case and Appointment of the Trustee**

14.    On February 15, 2022, the Debtor filed for bankruptcy in this Court, immediately triggering the automatic stay under section 362 of the United States Bankruptcy Code (the "Bankruptcy Code").

---

[4] *Wengui v. Clark Hill PLC*, 1:19-cv-03195-JEB (D.D.C.).

[5] Luft Decl., **Exhibit A**, Complaint in Malpractice Action at ¶ 57.

[6] In furtherance of the litigation, on May 26, 2020, the District Court entered the Stipulated Protective Order. *See* Stipulated Protective Order, *Wengui v. Clark Hill PLC*, 1:19-cv-03195-JEB (D.D.C.) [Docket No. 23] (the "Malpractice Action Protective Order").

[7] Because they referenced discovery designated as confidential, the pleadings were filed under seal. No public versions of these pleadings were ever filed, because counsel for the Debtor requested that he not be required to do so, given that he did not believe the Debtor would pay him for the work, given his bankruptcy filing.

15.     On June 15, 2022, this Court issued the Trustee Order (*see* ECF No. 465), and, on July 7, 2022, the Office of the United States Trustee filed a Notice of Appointment of Chapter 11 Trustee appointing Luc Despins as Chapter 11 Trustee. (*See* ECF No. 514).

16.     The Debtor in his bankruptcy schedules listed litigation claims, with unknown value, as property of his estate. (*See* ECF No. 78 at 6).  In his Statement of Financial Affairs, the Debtor listed the Malpractice Action as an active litigation in which he was a plaintiff. (*See* ECF No. 77 at 22).

17.     Upon his appointment, the Trustee stepped into the Debtor's shoes with respect to the Malpractice Action, and has a duty to litigate the Malpractice Action to its fullest potential, for the benefit of the Debtor's creditors and estate.

**C.  The Trustee's Rule 2004 Discovery**

18.     On July 28, 2022, the Trustee filed a motion for Rule 2004 discovery as to various legal and financial advisors to the Debtor, including Clark Hill (the "Professionals 2004 Motion") (*See* ECF No. 637).  On August 16, 2022, the Court granted the Trustee's Professionals 2004 Motion. (*See* ECF No. 756).

19.     Pursuant to the Court's order, on August 19, 2022, Clark Hill was served with a Rule 2004 Subpoena and document requests attached thereto (the "Subpoena").[8]  The Subpoena sought information necessary for the Trustee to both evaluate and exercise control over the Malpractice Action, which is property of the estate. *See* Subpoena, Request for Production 17.

20.     On September 14, 2022, this Court entered the *Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004*

---

[8] The Subpoena is attached to the Luft Declaration as **Exhibit B**.

*Subpoenaed Documents and Information* (the "Privileges Consent Order"). (*See* ECF No. 856).

21.    Among other things, the Privileges Consent Order holds that

The Trustee has exclusive control of any attorney-client privilege or work product protection that could otherwise be asserted by the Debtor or his counsel under any applicable law (including, without limitation, any interests of the Debtor in any common interest or joint defense privilege alleged to be held with other parties) . . . concerning (i) assets *(including actual or potential causes of action) that (A) are or were held by the Debtor*, (B) are or were held by others that the Trustee is investigating pursuant to the Rule 2004 Subpoenas for purposes of determining whether they hold or may have information about assets in which the Debtor holds or may have held an interest, or (C) otherwise relate to, or could be brought into, the Debtor's estate,[] (ii) the Debtor's financial condition (including, without limitation, liabilities of the estate), or (iii) activities related to the administration of the estate . . . during the period between the petition date and the issuance of the order appointing the Trustee on July 8, 2022 (topics (i) through (iii), collectively, the "Investigation Topics").

(*See* Privileges Consent Order at ¶ 2 (emphasis added)).

22.    The Privileges Consent Order also provides that

Nothing herein shall prevent the Debtor from asserting any and all privileges concerning legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application (*other than documents related to the [Malpractice Action] that relate to the merits of the legal malpractice action*, as distinguished from the merits of the Debtor's asylum application, subject to the balancing test incorporated herein, which does not relate to the substance of the asylum application). The Trustee and the Debtor reserve all rights with respect to any privileges claimed over such other matters.

(*See* Privileges Consent Order at ¶ 4 (emphasis added)).

23.    When counsel for the Trustee was negotiating the Privileges Consent Order with counsel for the Debtor, counsel for the Trustee did not have access to all the pleadings in the matter, including, notably, the motion for summary judgment. Thus, while the Trustee knew he had to carve out an exclusion of the transfer of the privilege to allow him access to information regarding the merits of that litigation, he was not aware that the asylum application itself was

incorporated into the pleadings in the Malpractice Action. Counsel for the Debtor, while

negotiating the Privileges Consent Order, never told counsel for the Trustee otherwise.

24.     Comments that counsel for the Trustee made during the hearings concerning the

negotiation of the Privileges Consent Order merely reflect that lack of knowledge. At the time

those statements were made, counsel for the Trustee did not know the full importance of the

Debtor's asylum application to Clark Hill's defenses in the Malpractice Action.

**D.  Trustee's Repeated Attempts to Gain Access to Pleadings, Expert Reports and Evidence in Malpractice Action**

25.     Since late August, the Trustee has repeatedly attempted to obtain access to

relevant documents in the Malpractice Action on a consensual basis.[9]

26.     Following receipt of this Court's Privileges Consent Order, on September 19,

2022, counsel for Clark Hill wrote Casper to make him aware (a) of the Privileges Consent

Order, (b) that the Trustee had requested copies of the pleadings filed under seal, (c) that while

the Trustee did not believe it was necessary, he was willing to sign the Malpractice Action

Protective Order, and (d) when that occurred, he would seek confirmation that Casper had no

objection to providing the Trustee with the requested documents.[10]

27.     Consistent with this message, on September 20, 2022, counsel for the Trustee

wrote counsel for Clark Hill and Casper jointly to inform them that he had executed the

undertaking for the Malpractice Action Protective Order on behalf of the Trustee, and asking for

confirmation that neither counsel had an objection to the Trustee being given access to the

---

[9] *See* Parties' Joint Status Report, *Wengui v. Clark Hill PLC*, 1:19-cv-03195-JEB (D.D.C. Aug. 31, 2022) (emphasis added) [Docket No. 95] ("Once the Trustee has received and reviewed this discovery and can review the relevant pleadings and documents in this case currently covered by the Protective Order, the Trustee has informed counsel that he will be in an informed position to give guidance and instruction on how he wants to proceed with this case.")

[10] Luft Decl., **Exhibit C**, email from John Storino, counsel for Clark Hill, to Ari Casper (Sept. 19, 2022, 12:58 EST).

pleadings filed under seal, along with the underlying expert reports and deposition transcripts.[11] Counsel for Clark Hill responded that "[t]he defense is fine providing the pleadings, expert reports and/or deposition transcripts that have been marked confidential or attorneys eyes only under the protective order to the Trustee's counsel."[12]  In contrast, Casper responded that "we are not authorized by Mr. Guo to agree to the disclosure of pleadings, reports, and/or transcripts marked confidential or attorney's eyes only and/or which have been filed under seal."[13]

28.    On September 21, 2022, following a telephone call during which Casper clarified that his objection was not at the behest of the Debtor, but that he wished for confirmation that the Debtor agreed the Malpractice Action was an asset of the estate that was now controlled by the Trustee, counsel for the Trustee sent an email to both Casper and bankruptcy counsel for the Debtor attaching the signed undertaking for the Malpractice Action Protective Order and asking for confirmation from the Debtor's bankruptcy counsel that "the Clark Hill litigation is property of the estate, and is under the exclusive control of the Trustee."[14]  Counsel for the Debtor immediately confirmed to Casper that "***Mr. Kwok[']s claims in the litigation against Clark Hill are property of the bankruptcy estate***."[15] Despite this confirmation, Casper still refused to withdraw his objection.

---

[11] Luft Decl., **Exhibit D**, email from Avram Luft, counsel for the Trustee, to Ari Casper, and John Storino, counsel for Clark Hill (Sept. 20, 2022, 2:54 EST).

[12] Luft Decl., **Exhibit E**, email from John Storino, counsel for Clark Hill, to Ari Casper, and Avram Luft, counsel for the Trustee (Sept. 20, 2022, 3:58 EST).

[13] Luft Decl., **Exhibit F**, email from Ari Casper to Avram Luft, counsel for the Trustee, and John Storino, counsel for Clark Hill (Sept. 20, 2022, 4:14 EST).

[14] Luft Decl., **Exhibit G**, email from Avram Luft, counsel to the Trustee, to Ari Casper (Sept. 21, 2022, 3:59 EST).

[15] Luft Decl., **Exhibit H**, email from Aaron A. Romney, counsel to the Debtor, to Ari Casper, and Avram Luft, counsel to the Trustee (Sept. 21, 2022, 4:43 EST) (emphasis added).

29.     On or around October 11, 2022, Clark Hill sent documents to counsel for the Debtor to review for personal harm.[16] On October 14, counsel for the Debtor emailed counsel for Clark Hill saying, "[p]lease withhold the following: Mr. Kwok's asylum application . . . ."[17]

30.     On October 19, 2022, counsel for the Trustee wrote Casper again requesting that Casper cease its control over the Malpractice Action and withdraw its objection to Clark Hill's production of documents concerning the Malpractice Action to the Trustee.[18] On October 19, 2022, counsel for Casper "expressly withdr[e]w the Casper Firm's prior opposition to the production of filings requested by Luc Despins, Trustee, by [Clark Hill]."[19]

31.     On October 27, 2022, counsel for Clark Hill asked counsel for the Debtor, among other things, "[w]hat is the basis for withholding [the Debtor's] asylum application. It was submitted to the immigration office several years ago as part of his seeking asylum. We don't see how it can be privileged."[20] That same day, counsel for the Debtor responded: "[t]he asylum application *isn't technically privileged* but it is a highly confidential document that has absolutely nothing to do with the debtor's estate."[21] Therefore, the Debtor sought to withhold the documents not based on any assertion of privilege.

32.     Later that day, counsel for Clark Hill responded to counsel for the Debtor saying, in part,

---

[16] Luft Decl., **Exhibit I at I-12**, email from John Storino, counsel for Clark Hill, to Aaron Romney, John Cesaroni, Eric Henzy, Stephen Kindseth, and Sadra Wenthen (Oct. 11, 2022, 9:45 EST).

[17] Luft Decl., **Exhibit I at I-11 – I-12**, email from John Cesaroni, counsel to the Debtor, to John Storino, Aaron Romney, John Cesaroni, Eric Henzy, Stephen Kindseth, among others (Oct. 14, 2022, 2:58 EST).

[18] Luft Decl., **Exhibit J**, letter from Avram Luft, counsel to the Trustee, to Ari Casper (Oct. 19, 2022).

[19] Luft Decl., **Exhibit K**, email from Gary Leibowitz, counsel to Casper, to John Storino, counsel for Clark Hill, and Avram Luft and Luc Despins, counsel for the Trustee (8:37 PM EST).

[20] Luft Decl., **Exhibit I at I-7 – I-8**, email from John Storino, counsel to Clark Hill, to Aaron Romney, John Cesaroni, Eric Henzy, and Stephen Kindseth, among others (Oct. 27, 2022, 8:11 EST).

[21] Luft Decl., **Exhibit I at I-7**, email from Aaron Romney to John Storino, John Cesaroni, Stephen Kindseth, and Eric Henzy, among others (Oct. 27, 2022, 10:35 EST) (emphasis added).

> Contrary to your assertion that the asylum application "has absolutely nothing to do with the debtor's estate," the core allegation of the debtor's complaint against Clark Hill [in the Malpractice Action] is that the content of the asylum application was leaked and therefore damaged the debtor; one of Clark Hill's primary defenses is that the supposedly leaked information was voluntar[il]y put on the internet or otherwise publicly disclosed by the debtor.  Thus the asylum application and the information from the asylum application that was supposedly leaked is fundamental to the [Malpractice Action], . . . .[22]

33.    On October 31, 2022, Counsel for the Trustee, counsel for the Debtor, and counsel for Clark Hill met and conferred. Counsel for Clark Hill reiterated the importance of the Debtor's asylum application to the Malpractice Action,  indicating that the Debtor's asylum application is discussed in detail within, and attached as an exhibit to, Clark Hill's summary judgement brief in the Malpractice Action, and that one of its main arguments in defense of the Malpractice Action is that the Debtor has not been harmed by the purportedly negligent disclosure of certain information in his asylum application to the public because such information was already in the public domain prior to the disclosure in question.

34.    On November 2, 2022, counsel for the Trustee emailed counsel for the Debtor saying,

> I am following up regarding your pending objection to Clark Hill producing to us the asylum application, that is both an exhibit to their motion for summary judgment and directly at issue in the litigation. After we all confirmed that it was not a privileged document, you asked to be able to speak to your client regarding your pending objection now that you understood that it is an exhibit and directly at issue in the litigation. Can you please confirm that your client is no longer objecting to the production of the document so that Clark Hill can proceed with its production to the Trustee. If he is maintaining his objection[,] I ask that you please let us and Jenner know the basis of your legal objection immediately so that we can take appropriate steps to address the issue promptly.[23]

---

[22] Luft Decl., **Exhibit I at I-5 – I-7**, email from Vincent Lazar to Aaron Romney, John Cesaroni, Eric Henzy, Stephen Kindseth, Avi Luft, Jonathon Kosciewicz, Douglass Barron, Ezra Sutton, and Nicholas Bassett, among others (Oct. 27, 2022, 7:13  EST).

[23] Luft Decl., **Exhibit I at I-1**, email from Avi Luft to Aaron Romney, among others (Nov. 2, 2022, 2:07  EST).

35.     That same day, counsel for the Debtor, for the first time, claimed that "[d]issemination of the [Individual] Debtor's Asylum application appears to violate Section 208.6 of Title 8 of the Federal Regulations."[24]  Later that night, counsel for the Debtor filed this Motion for Protective Order.

## Argument

### A.  The Debtor's Asylum Application is not Privileged

36.     "In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness." *Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005), *aff'd*, 332 F. App'x 643 (2d Cir. 2009) (citations omitted). Here, the Debtor's asylum application is not privileged, and the Debtor lacks standing to pursue the Motion for Protective Order.

37.     The Debtor purports to rely, in part, on paragraph 4 of the Privileges Consent Order to support his argument that he retains the ability to assert privilege over his asylum application. (*See* Motion for Protective Order at ¶ 6.  As noted above, paragraph 4 of the Privileges Consent Order states, in relevant part,

> Nothing herein shall prevent the Debtor from asserting any and all privileges concerning legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application (***other than documents related to the [Malpractice Action] that relate to the merits of the legal malpractice action***, as distinguished from the merits of the Debtor's asylum application, subject to the balancing test incorporated herein, which does not relate to the substance of the asylum application). The Trustee and the Debtor reserve all rights with respect to any privileges claimed over such other matters.

(*See* Privileges Consent Order at ¶ 4 (emphasis added)).

---

[24] Luft Decl., **Exhibit I at I-1**, email from Aaron Romney to Avi Luft, among others (Nov. 2, 2022, 6:14  EST).

38.     The Debtor's argument is fundamentally flawed because paragraph 4 of the

Privileges Consent Order, by its terms, only applies to documents that are privileged in the first

place.  That the Debtor's asylum application is not privileged is not in dispute – it was filed with

the government years ago – and counsel for the Debtor has admitted it is not privileged.[25]

39.     Moreover, even if the Debtor's asylum application was privileged (it is not),

paragraph 4 of the Privileges Consent Order carves out documents related to the merits of the

Malpractice Action, and distinguishes documents related to the merits of the Malpractice Action

from documents concerning the merits of the Debtor's asylum application. This carve out was

included in paragraph 4 of the Privileges Consent Order to ensure that the Debtor could not

assert privilege over documents relating to the Trustee's ability to evaluate the Malpractice

Action, an asset controlled by the Trustee.

40.     There is no denying that the Debtor's asylum application relates to the merits of

the Malpractice Action. The Debtor's core allegation in the Malpractice Action is that his asylum

application was made public in a hack of Clark Hill's systems. One of Clark Hill's main defenses

to the Malpractice Action is that the contents of the Debtor's asylum application were already

public prior to any hack. The asylum application is directly at issue in the litigation, exemplified

by the representation by counsel for Clark Hill to both the Trustee and Debtor that the asylum

application is directly put at issue within its motion for summary judgement and is attached as an

exhibit to that motion.

41.      It is disingenuous for the Debtor to suggest that comments made by counsel for

the Trustee during hearings concerning the Privileges Consent Order waived any right to obtain

---

[25] Luft Decl., **Exhibit I at I-7**, email from Aaron Romney to John Storino, John Cesaroni, Stephen Kindseth, and
Eric Henzy, among others (Oct. 27, 2022, 10:35  EST).

documents related to the Malpractice Action. Those comments need to be understood in their context, as standing for the proposition that the Trustee was not seeking documents to independently evaluate the merits of the Debtor's application for asylum, while ensuring access to all documents related to the merits of the Malpractice Action.  Nowhere in the Trustee's comments was it suggested that if the Debtor's asylum application was centrally relevant to the merits of the Malpractice Action, then the Trustee would not seek that document. Such a statement, in fact, would be contrary to the Privileges Consent Order, which permits the Trustee to obtain documents pertaining to the merits of the Malpractice Action.

### B.  The Debtor's Asylum Application is Related to the Administration of the Debtor's Estate Because it is Central to the Malpractice Action Which is a Potential Asset of the Estate

42.     Contrary to the Debtor's contention, the Debtor's Asylum Application is relevant to the Administration of the Debtor's Estate and well within the scope of Rule 2004.   The scope of an examination authorized under Rule 2004 is exceedingly broad and may relate to the "acts, conduct, or property or to the liabilities and financial condition of the Debtor, or to any matter which may affect the administration of the Debtor's estate."  Fed. R. Bankr. P. 2004(b).

43.     Upon his appointment, the Trustee was automatically substituted as the Plaintiff in the Malpractice Action, which became an estate asset.  *See* Fed. R. Bankr. P. 2012 ("[i]f a trustee is appointed in a chapter 11 case or the debtor is removed as debtor in possession in a chapter 12 case, the trustee is substituted automatically for the debtor in possession as a party in any pending action, proceeding, or matter").  Counsel for the Debtor has confirmed as much.[26]

---

[26] Luft Decl., **Exhibit H**, email from Aaron A. Romney, counsel to the Debtor, to Ari Casper, and Avram Luft, counsel to the Trustee (Sept. 21, 2022, 4:43 EST).

44.     The Malpractice Action also falls within the Investigation Topics defined by the Privileges Consent Order. Specifically, the Privileges Consent Order provides that "[t]he trustee has exclusive control of any attorney-client privilege or work product protection that could otherwise be asserted by the Debtor or his counsel under any applicable law . . . concerning (1) assets (*including actual or potential causes of action*) *that (A) are or were held by the Debtor*, . . . ." (*See* Privileges Consent Order at ¶ 2 (emphasis added)).

45.     As discussed above, the Debtor's asylum application is central to the Debtor's claim in the Malpractice Action and therefore well within the scope of Rule 2004.  The fact that the asylum application is an exhibit to Clark Hill's pending motion for summary judgment alone necessitates its disclosure to the Trustee.  The Trustee cannot possibly evaluate and make decisions regarding the Malpractice Action—which he now owns—unless he is able to fully evaluate the merits of the claims and defenses at issue, including especially the merits of a pending motion for summary judgment. Accordingly, the application must be produced.

### C.  The Immigration and Nationality Act Does Not Prohibit the Disclosure of the Debtor's Asylum Application

46.     The federal regulation[27] that the Debtor cites for the proposition that his asylum application is protected from disclosure concerns disclosure by *government officials*, not private parties. *See Al Otro Lado, Inc. v. Mayorkas*, No. 317CV02366BASKSC, 2021 WL 1312531, at *4 (S.D. Cal. Apr. 8, 2021) ("In support of their argument that additional conditions should now be imposed on the court-ordered disclosure, defendants rely heavily on federal regulations limiting the disclosure of asylum information *by the government*. [citing 8 C.F.R. §§ 208.6 and 1208.6]. Yet, as defendants admit, plaintiffs and their counsel are not subject to these

---

[27] 8 C.F.R. § 1208.6.

15

regulations." (emphasis in original)); *see also id.* ("Further, the plain text of the regulations does not constrain the treatment of asylum information by private actors."). The federal regulation cited by the Debtor does not prohibit Clark Hill, or any other private actor, from disclosing the Debtor's asylum application.

47.     Moreover, even if the plain text of the federal regulation cited by the Debtor does apply to private actors (it does not), the applicant can consent to disclosure through written consent. *See* 8 C.F.R. § 1208.6(a). Here, the Debtor simply refuses to provide such consent. The Debtor provides no support for the proposition that he may not consent to the production of the asylum application.

48.     Moreover, the Trustee is not a true third party in this case, and, therefore, any disclosure of the asylum application to the Trustee would not implicate the regulation.  The Trustee is not a third party but rather is the successor in interest to the Debtor and needs the application to carry out his responsibilities under the Bankruptcy Code.  The Debtor is free to designate the application confidential or highly confidential as appropriate under the Protective Order to guard against any possible concern espoused by the regulation the Debtor relies upon. But the Debtor is not entitled to refuse to provide the application to the Trustee.

49.     Finally, the regulation at issue is inapplicable because the Debtor chose to place his asylum application at the heart of the Malpractice Action. *See* 8 C.F.R. § 1208.6 (c)(2)(ii) ("This section shall not apply to any disclosure to: . . . [a]ny Federal, State, or local court in the United States considering any legal action: . . . [a[rising from the proceedings of which the asylum application, credible fear determination, or reasonable fear determination is a part."). Here, the Debtor brought the Malpractice Action on the theory that the contents of his asylum application were made public to his detriment. The contents of the asylum application are

therefore a central issue in the litigation.  Ironically, what is not in dispute by either the Debtor or Clark Hill is that the contents of the asylum application that the Debtor now seeks to prevent the Trustee from seeing is no longer confidential. As such, any law designed to maintain confidentiality of private materials is not applicable to these facts.

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that the Court deny the Debtor's Protective Order, or for any other relief the Court deems just and proper.

[*Remainder of page intentionally left blank*]

Dated:     November 16, 2022         LUC A. DESPINS,
            New Haven, Connecticut     CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*

    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

      *and*

    Nicholas A. Bassett (*pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

      *and*

    Avram E. Luft (*pro hac vice* pending)
    Douglass Barron (*pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com

    *Counsel for the Chapter 11 Trustee*