## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

------------------------------------------------------x
:
In re:                                                            :    Chapter 11
                                                                  :
HO WAN KWOK, *et al.*,                                            :    Case No. 22-50073 (JAM)
                                                                  :
                              Debtors.[1]                         :    Jointly Administered
                                                                  :
------------------------------------------------------x

**DECLARATION OF AVRAM E. LUFT IN SUPPORT OF CHAPTER 11
TRUSTEE'S RESPONSE IN OPPOSITION TO THE DEBTOR'S MOTION
FOR PROTECTIVE ORDER PRECLUDING THE DISCLOSURE
OF THE DEBTOR'S ASYLUM APPLICATION**

I, Avram E. Luft, declare:

1.       I am an attorney admitted to practice law in the State of New York and am Of

Counsel at the law firm of Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, and

counsel for Luc A. Despins as Chapter 11 Trustee (the "Trustee").  I respectfully submit this

declaration in support of the *Chapter 11 Trustee's Response in Opposition to the Individual*

*Debtor's Motion for Protective Order Precluding the Disclosure of the Individual Debtor's*

*Asylum Application* (the "Response").

2.       Attached hereto are true and correct copies of the following documents:


*[Remainder of page intentionally left blank]*

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Individual Debtor") and Genever Holdings Corporation (the "Genever BVI Debtor"). The mailing address for the Trustee and the Genever BVI Debtor is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

| Exhibit | Description of Exhibit | Date |
|---|---|---|
| A | Complaint in Malpractice Action[2] | 10/24/2019 |
| B | Rule 2004 Subpoena and document requests served on Clark Hill | 8/18/22 |
| C | E-mail from John Storino, counsel for Clark Hill, to Ari Casper (Sept. 19, 2022, 12:58 EST) | 9/19/22 |
| D | E-mail from Avram Luft, counsel for the Trustee, to Ari Casper, and John Storino, counsel for Clark Hill (Sept. 20, 2022, 2:54 EST) | 9/20/22 |
| E | E-mail from John Storino, counsel for Clark Hill, to Ari Casper, and Avram Luft, counsel for the Trustee (Sept. 20, 2022, 3:58 EST) | 9/20/22 |
| F | E-mail from Ari Casper to Avram Luft, counsel for the Trustee, and John Storino, counsel for Clark Hill (Sept. 20, 2022, 4:14 EST) | 9/20/22 |
| G | E-mail from Avram Luft, counsel to the Trustee, to Ari Casper (Sept. 21, 2022, 3:59 EST) | 9/21/22 |
| H | Email from Aaron A. Romney, counsel to the Individual Debtor, to Ari Casper, and Avram Luft, counsel to the Trustee (Sept. 21, 2022, 4:43 EST) | 9/21/22 |
| I | Email chain beginning on September 22, 2022, where John Storino of Jenner & Block emailed John Cesaroni, Aaron Romney, Stephen Kindseth, and Eric Henzy, all of Zeisler & Zeisler, among others, concerning Rule 2004 subpoena to Clark Hill and ending on November 2, 2022, where Aaron Romney emails Avi Luft, among others, concerning the Individual Debtor's asylum application | 9/22/22 |
| J | Letter from Avram Luft, counsel to the Trustee, to Ari Casper (Oct. 19, 2022) | 10/19/22 |
| K | Email from Gary Leibowitz, counsel to Casper, to John Storino, counsel for Clark Hill, and Avram Luft and Luc Despins, counsel for the Trustee (8:37 PM EST) | 10/19/22 |

*[Remainder of page intentionally left blank]*

---

[2] Terms not otherwise defined herein take the meaning given to them in the Response.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated:      November 16, 2022
            New Haven, Connecticut          Respectfully submitted,

                                            By: */s/ Avram E. Luft*
                                                Avram E. Luft (*pro hac vice* pending)
                                                aviluft@paulhastings.com
                                                PAUL HASTINGS LLP
                                                200 Park Avenue
                                                New York, New York 10166
                                                (212) 318-6079

                                                *Counsel for the Chapter 11 Trustee*

## Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GUO WENGUI a/k/a MILES KWOK a/k/a HO WAN KWOK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| CLARK HILL PLC and THOMAS K. RAGLAND, | ) ) ) | Removed from the Superior Court of the District of Columbia |
| Defendants. | ) ) ) ) | Superior Court of the District of Columbia Case No. 2019 CA 001614M |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441(b) and 1446, Defendants Clark Hill PLC and Thomas K. Ragland (collectively, the "Defendants") hereby remove this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia. The Defendants' Notice of Removal is based on the following:

1.     On September 19, 2019, the Plaintiff Guo Wengui ("Plaintiff") filed a complaint against Defendants in the Superior Court of the District of Columbia, Case No. 2019 CA 006164M (the "Complaint"). A true and correct copy of the Complaint and a copy of all process, pleadings, and orders served on Defendants are attached as Exhibit 1.

2.     Clark Hill PLC accepted service of the Complaint on behalf of itself and Defendant Ragland on September 26, 2019. This Notice of Removal is timely because it was filed within 30 days of service of the summons and complaint. *See* 28 U.S.C. §1446(b).

3.      This court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because the defendants are citizens of various States and the plaintiff is a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interests or costs.

4.      In his Complaint, Plaintiff alleges that he is a "native" of the People's Republic of China and is seeking asylum in the United States.  (Complaint ¶ 10).  Accordingly, for diversity purposes Plaintiff is a citizen of the People's Republic of China.

5.      Defendant Clark Hill PLC is a professional limited liability company organized under the laws of the State of Michigan, and with its principal place of business in Detroit, Michigan.  (*See*, *e.g*., Complaint ¶ 11; Exhibit 2).  Defendant Clark Hill PLC is comprised of approximately 298 members, who are either individual attorneys working in Clark Hill PLC's various offices, or professional corporations incorporated by individual attorneys through which they hold their memberships in Clark Hill PLC.  (Exhibit 2).   For the purpose of diversity of citizenship, the citizenship of a professional limited liability company is determined by the citizenship of its members.  *See, e.g. Cunningham & Assocs., PLC v. ARAG, LLC*, 842 F. Supp. 2d 25, 27 n.2 (D.D.C. 2012).

6.      None of Clark Hill PLC's individual members are domiciled in or citizens of the District of Columbia, and none of the professional corporations through which individuals hold memberships are incorporated under the laws of the District of Columbia.  (Exhibit 2). Accordingly, for diversity purposes Clark Hill PLC is not a citizen of the District of Columbia.

7.      All of Clark Hill PLC's individual members are citizens of the United States, and they all reside and are domiciled in a State.  None of Clark Hill PLC's members reside or are domiciled outside of the United States.  (Exhibit 2).  Accordingly, for diversity purposes, Clark Hill PLC is not a citizen of a foreign state.

8.      Defendant Thomas Ragland is domiciled in the Commonwealth of Virginia. (Exhibit 3).  Accordingly, for diversity purposes, Thomas Ragland is a citizen of the Commonwealth of Virginia.

9.      Defendants believe in good faith that the amount in controversy exceeds $75,000. Plaintiff's Complaint seeks compensatory damages of $50 million, and also seeks punitive damages.  (Complaint ¶ 1).  Accordingly, the amount in controversy exceeds $75,000 and this action may have been brought in this court.

10.     As required by 28 U.S.C. §1446(d), written notice of the filing of this Notice of Removal will be provided to Plaintiff, together with all supporting papers.  In addition, as is also required by 28 U.S.C. §1446(d), a copy of this Notice of Removal and all supporting papers are being filed with the Superior Court of the District of Columbia.

11.     By filing this Notice of Removal, Defendants do not waive any objections they may have to this action, and reserve the right to timely assert all defenses and objections.

12.     Defendants reserve their right to amend or supplement this Notice of Removal.

13.     Defendants demand a trial by jury.

WHEREFORE, Defendants Clark Hill PLC and Thomas K. Ragland remove this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

Dated: October 24, 2019                                          Respectfully submitted,

                                                                 CLARK HILL PLC and
                                                                 THOMAS K. RAGLAND

                                                                 By: */s/   Jessica Ring Amunson*
                                                                         One of their attorneys

Jessica Ring Amunson (#497223)
JENNER & BLOCK, LLP
1099 New York Avenue NW

Suite 900
Washington, DC 20001-4412
Tel: (202) 639-6000
JAmunson@jenner.com

**Certificate of Service**

      I, Jessica Ring Amunson, an attorney, hereby certifies that I served the foregoing Notice of Removal on the following by electronic mail and overnight delivery on this, the 24th day of October, 2019:

                Ari S. Casper
                Ralph S. Tyler
                The Casper Firm
                400 E. Pratt Street, Suite 903
                Baltimore, MD 21202

                                */s/  Jessica Ring Amunson*

# Exhibit 1

D.C. Superior Court
09/28/2019 08:15PM
Clerk of the Court

IN THE SUPERIOR COURT FOR THE
DISTRICT OF COLUMBIA

(Civil Division)

| | |
|---|---|
| GUO WENGUI a/k/a MILES KWOK<br>a/k/a HO WAN KWOK<br>162 E. 64th Street<br>New York, NY 10065<br><br>Plaintiff,<br><br>v.<br><br>CLARK HILL PLC<br>500 Woodward Avenue<br>Suite 3500<br>Detroit, MI 48226,<br><br>and<br><br>THOMAS K. RAGLAND<br>Clark Hill PLC<br>1001 Pennsylvania Avenue, NW<br>Suite 1300<br>Washington, DC 20004,<br><br>Defendants.<br><br>SERVE:<br><br>    John J. Hern, Jr.<br>    500 Woodward Avenue<br>    Suite 3500<br>    Detroit, MI 48226<br><br>    Thomas K. Ragland<br>    1001 Pennsylvania Avenue, NW<br>    Suite 1300<br>    Washington, DC 20004 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 2019 CA 006164 M |

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.     In this case, plaintiff Guo Wengui, a/k/a Miles Kwok a/k/a Ho Wan Kwok, ("plaintiff") seeks compensatory monetary damages of $50 million or more, jointly and severally, and punitive damages, also jointly and severally, against the defendant law firm Clark Hill PLC ("Clark Hill" or the "firm") and one of the firm's members, defendant Thomas K. Ragland, Esq. ("Mr. Ragland"), for damages, injuries, and wrongs which plaintiff has sustained as the direct and proximate result and consequence of defendants' multiple serious breaches of their duties to plaintiff arising from the firm's legal representation of plaintiff.  In addition to compensatory damages, plaintiff seeks punitive damages.  Punitive damages are warranted here because the wrongful conduct of Clark Hill and Mr. Ragland was reckless, oppressive, intentional, deliberate, and willfully disregarded plaintiff's rights.  (Clark Hill and Mr. Ragland are referred to herein collectively as "defendants" or the "firm.")

2.     Plaintiff was a client of Mr. Ragland and the Clark Hill law firm.  In the course of that representation, Mr. Ragland and the Clark Hill law firm breached a lawyer's/law firm's fundamental obligation to protect from improper unauthorized disclosure plaintiff's (a client's) confidential information.  The firm, specifically including Mr. Ragland, was reckless in its handling of plaintiff's confidential information and, as a direct result of that recklessness, plaintiff's confidential information was disclosed and widely disseminated, all to the great harm, detriment, and oppression of plaintiff.  Having failed to protect plaintiff's confidential information, the firm then proceeded to compound that breach by wrongfully, improperly, and without good cause terminating its representation of plaintiff.  This action, too, was reckless and in willful disregard of plaintiff's rights and in willful disregard of the firm's duties and obligations to plaintiff

2

as a client of the firm. The firm intentionally undertook a matter beyond its competence and capability and then intentionally, deliberately, and willfully, wrongly placed its interests above the firm's duties to its client. Plaintiff was damaged as a result of the firm's breaches of the duties which the firm and its lawyer (Mr. Ragland) owed to plaintiff as a client. The firm's actions were oppressive and were taken in willful disregard of plaintiff's rights.

3.     Plaintiff reasonably relied on the firm's assurances – both implicit and explicit – that the firm understood its ethical and legal obligations, including its fundamental obligation to protect plaintiff's confidential information, *and* that the firm actually had the capability to fulfill its obligations. In fact, however, Mr. Ragland failed to honor his assurances and, as a result, he recklessly exposed plaintiff's confidential information. Contrary to Mr. Ragland's representations, the firm did not have adequate and appropriate electronic security measures in place to protect plaintiff's information and Mr. Ragland failed to take appropriate actions to protect plaintiff's confidential information. The direct consequence of the firm's and Mr. Ragland's failures in this regard was that plaintiff's sensitive confidential information, which plaintiff disclosed to the firm in confidence and which the firm assured plaintiff would be protected, was disclosed broadly and disseminated over the internet on social media platforms. The firm's breaches of duty to plaintiff caused these unauthorized disclosures. These disclosures have harmed and damaged plaintiff and those harms and damages are continuous and ongoing. The firm's conduct here goes far beyond negligence and was conduct which was outrageous in its recklessness and in its willful disregard of plaintiff's rights.

4.     The firm's representation of plaintiff involved preparing and filing plaintiff's application for asylum in the United States. Plaintiff sought asylum in the United States after

fleeing from his native China to avoid further politically motivated harsh persecution, including fear of being tortured, incarcerated under extreme conditions, and potentially being murdered.

5.       The information which plaintiff disclosed to the firm and which, because of the firm's failures and breaches, was disclosed subsequently to the world, including to persons and interests in China committed to silencing, smearing, and potentially physically harming plaintiff, included information detailing plaintiff's political activities in China as well as other sensitive matters.  This sensitive information, the public disclosure of which jeopardizes the life, safety, and welfare of plaintiff and others, lost its confidential status when it was displayed and published on social media platforms, and this occurred because of defendants' failures to properly protect the information from improper disclosure.  Agents and officials of the Chinese government are believed to be among the parties who gained access to plaintiff's confidential information, which, again, they were able to obtain because of defendants' manifest failures and breaches of duty, including defendants' improper and unlawful actions and inactions in not taking necessary actions to protect plaintiff's confidential information from disclosure.

6.       As plaintiff's counsel, Clark Hill owed plaintiff an undivided duty to act in his best interests. Here, the firm, in its representation of plaintiff and then in improperly terminating that representation, violated that obligation.  The firm knew from the outset of considering whether to undertake the representation of plaintiff that agents and officials of the Chinese government have been and are hostile to plaintiff and pose a genuine threat to plaintiff's life, liberty, and security. These Chinese agents and officials and the persons and interests on whose behalf they have acted in the past and were (and are) expected to act in the future pose, as defendants knew before and when they agreed to represent plaintiff, a direct threat to plaintiff.  Notwithstanding defendants' knowledge of the powerful interests hostile to plaintiff, knowledge which defendants had prior to

4

agreeing to represent plaintiff, defendants failed to protect plaintiff's confidential information from disclosure from these persons and interests with a known agenda deeply hostile and antagonistic to plaintiff. Defendants' conduct prejudiced plaintiff, caused him severe personal and financial damage, all of which could have, and should have, been avoided.

7.      Defendants then compounded their breaches to plaintiff when they wrongfully, unlawfully, improperly, without valid cause, and without any meaningful consultation with plaintiff unilaterally terminated their representation of him. When this matter got "hot," defendants did not stand with their client; rather, they "ducked and ran." Defendants abandoned their client (plaintiff), and they put their perceived interests above their obligation to act in the interests of their client (plaintiff). Defendants violated their legal and ethical duty of undivided loyalty to their client. Defendants' conduct was oppressive, intentional, and willfully disregarded plaintiff's rights.

8.      Plaintiff brings this action because defendants must be – and in this action will be – held accountable for their gross and intentional misconduct. Defendants are liable for both compensatory and punitive damages. Defendants' egregious failures to protect plaintiff's information from being exposed to potential "hackers," including failing to have in place and/or to maintain necessary and effective electronic security measures sufficient to protect plaintiff's sensitive and confidential information, violated the rules of professional conduct; constituted a serious breach of the firm's fiduciary duty to plaintiff as a client of the firm; violated the firm's contractual obligations to plaintiff; and violated the firm's obligation to provide plaintiff competent legal representation.

9.      The wide-spread and deeply harmful publication and dissemination of plaintiff's sensitive personal information on social media was the direct, proximate, and inevitable (albeit

entirely avoidable) result and consequence of the firm's breaches of its duties and obligations to plaintiff. The firm then intentionally, deliberately, and oppressively made matters worse when it terminated its representation of plaintiff, advancing a plainly pretextual, if not risible, "justification" for the firm's improper action. Defendants acted in willful disregard for the rights of plaintiff, and defendants' conduct was reckless and taken without regard to the safety or protection of the plaintiff, the firm's client, and in willful disregard of the firm's duties and obligations to plaintiff as a client. Because plaintiff has suffered and continues to suffer serious harm and injury as a result of defendants' actions and inactions, plaintiff seeks monetary damages to compensate him for the grievous harms which defendants have caused him. In addition, plaintiff seeks punitive damages because of the recklessness, wantonness, and oppressiveness of defendants' conduct.

## **PARTIES**

10. Plaintiff, a native of China, currently resides in New York, NY. Plaintiff has a pending application for asylum in the United States. Plaintiff is a highly successful businessman and a political activist and well-known Chinese dissident. Plaintiff has fought vigorously for many years for the rule of law, human rights, and democracy in China. In early 2015, plaintiff was forced to escape from China as he justifiably feared being unlawfully arrested, detained, interrogated, tortured, and/or killed by the Chinese government and/or the Chinese Communist Party (the "CCP") because of his political activities and outspoken advocacy. (References herein to the "CCP" are inclusive of both the Chinese government and the Chinese Communist Party.)

11. Defendant Clark Hill PLC ("Clark Hill") is a major law firm of approximately 650 attorneys and professionals, in 25 offices, and operates as a professional services limited liability company, organized and existing under the laws of the State of Michigan. Clark Hill does business

6

on a regular, constant, and substantial basis in the District of Columbia, specifically including having an office at 1001 Pennsylvania Avenue NW, Suite 1300, Washington, DC 20004, and Clark Hill's lawyers appear regularly before courts, agencies, and Congress in the District of Columbia.

12.     Defendant Thomas K. Ragland, Esq. ("Mr. Ragland") is an attorney licensed to practice law in the District of Columbia and is a member (partner or principal) of the Clark Hill law firm in the firm's District of Columbia office.  Mr. Ragland does business on a regular, constant, and substantial basis in the District of Columbia, including maintaining his office for the practice of law at the Clark Hill office at 1001 Pennsylvania Avenue, NW, Suite 1300, Washington, DC 20004, and appearing before agencies and tribunals in the District of Columbia. (As noted previously, Clark Hill PLC and Mr. Ragland are referred to collectively herein as "defendants" or the "firm.")

## JURISDICTION, VENUE, AND CONVENIENCE

13.     This Court has jurisdiction over this matter pursuant to D.C. Code § 11-921.  This Court has personal jurisdiction over defendants as they both regularly and constantly conduct business in the District of Columbia.  Defendants' actions and inactions giving rise to the matters alleged in this complaint took place in the District of Columbia, including meetings with plaintiff and/or his agents and authorized representative, Dr. Lianchao Han ("Dr. Han").

14.     Venue is proper in this Court and this Court is a convenient forum for this action. This case relates directly to actions and inactions of defendants in connection with their law office and law practice in the District of Columbia; defendants are very much present and engaged in doing business on a daily basis in the District of Columbia; and a substantial part of the events, actions, and inactions giving rise to plaintiff's claims in this complaint occurred in the District of Columbia. By way of illustration, meetings between the firm and plaintiff's authorized

representative, Dr. Han, during which the firm and plaintiff formed an attorney-client relationship, regularly exchanged information relating to plaintiff's asylum application, Mr. Ragland's preparation of that application, the firm's withdrawal from the representation, and other actions and inactions arising out of that relationship occurred in the District of Columbia at the firm's office in the District. Mr. Ragland was the firm's principal lawyer representing plaintiff and most of the work which Mr. Ragland did on behalf of plaintiff was done in the District of Columbia.

## STATEMENT OF FACTS

**I.     Plaintiff is a political activist and target of the Chinese government and the CCP.**

15.     For years, plaintiff has been a forceful, visible, and well-known advocate for the rule of law, human rights, and democracy in China. In connection with his political activities and advocacy, plaintiff has, for example, exposed systemic corruption in the CCP, as well as by senior officials of the Chinese government and family members of those officials. Plaintiff has also disclosed the widespread abuse of human rights in China, including the use of torture. Plaintiff has opposed Chinese governmental and party suppression of democratic movements in China. Plaintiff has also been involved in exposing the degree, extent, and effectiveness of China's covert cultural, political, economic, and intelligence operations in the United States and elsewhere in the West.

16.     Plaintiff has been effective in influencing international opinion with respect to China and the CCP. From the perspective of the CCP, plaintiff's activities and advocacy have affected adversely China's and the CCP's stature in the world community and, in response, the Chinese government has attempted to silence plaintiff. The Chinese government/CCP has employed various tactics, including coercion and offering bribes to attempt to silence plaintiff. Upon information and belief, the Chinese government/CCP has used its overseas intelligence

networks to seek to discredit, silence, and threaten plaintiff's personal safety or, at the very least, to cause plaintiff to have good reason to fear for his personal safety as well as fearing for the safety of family members and friends.

17. Upon information and belief, the CCP believes plaintiff presently holds not publicly known proof of various types of improper conduct on the part of the CCP and those associated with it and acting on its behalf, including information relating to corruption, murder, hiding of illegally-gained money, and China's spy network. For these and other reasons, the Chinese government and the CCP are highly motivated, to understate the matter, and engaged aggressively in seeking to silence plaintiff. The Chinese government and the CCP are equally motivated and engaged in seeking to learn what plaintiff knows about improper activities undertaken by or on behalf of the Chinese government and the CCP. And, perhaps most critically, the Chinese government and the CCP have the capabilities – the "operational reach" – to carry out aggressive hostile actions against plaintiff.

18. In or about January 2015, for example, the CCP, through Bruno Wu Zheng, called plaintiff to request that plaintiff cooperate with the CCP and stop disclosing information regarding corruption on the part of senior CCP officials. Plaintiff refused. After several failed bribery attempts and threats, Bruno Wu Zheng directed the Central Commission for Discipline Inspection ("CCDI") and the Special Task Force to request (truly demand) that plaintiff cooperate with China and return any evidence he had of corruption among senior leaders. Plaintiff was asked to hand over his evidence to the CCP and to stop acting against the CCP. In return, Bruno Wu Zheng promised plaintiff, *inter alia*, that (1) none of plaintiff's assets or properties would be seized by the CCP; (2) all privileges would be returned to plaintiff and his family; (3) plaintiff's family members would not be arrested; and (4) plaintiff would not be physically threatened or killed.

Plaintiff refused this proposal. Plaintiff anticipated that this refusal would trigger the risk of serious persecution of plaintiff and his family.

19.     Plaintiff's political activities and his refusal to cease those activities, when coupled with the CCP's powerful interest in bringing those activities to a halt, including using brute force, made it dangerous for plaintiff to remain in China. Consequently, on or about January 2015, plaintiff fled from China. He rightly feared being arrested, detained, interrogated, tortured, and/or killed by the Chinese government and/or the CCP. At or around this same time, the CCP seized substantial sums of plaintiff's family's assets and questioned and arrested 18 of plaintiff's family members. The CCP also arrested or detained a number of plaintiff's colleagues and employees and prohibited others from leaving China.

20.     In May 2017, by which time plaintiff was residing in the United States, the CCP sent Liu Yanping and three other agents to New York City to speak with plaintiff in yet another effort to seek to silence him. Liu Yanping was then Secretary of the CCDI. Plaintiff refused this threat as he had refused previous threats. Instead of giving in to this latest threat, plaintiff disclosed a broad network of CCP spies operating in the United States. Upon information and belief, the United States government revoked the visas of these four officials, including Liu Yanping, because of their actions in the United States.

21.     The CCP also took another highly aggressive action to seek to silence plaintiff by issuing two International Criminal Police Organization ("INTERPOL") "red [arrest] notices." Plaintiff disputes the legitimacy of these notices.

22.     In or around October 2017, just prior to China's 19th National Congress, an event of great importance to the CCP, plaintiff's Twitter, YouTube, and Facebook accounts were abruptly and suspiciously suspended, all without explanation.

23.    Upon information and belief, beginning in 2017, the Chinese government and/or the CCP sent agents and officials to the United States to organize demonstrations aimed directly against plaintiff outside the building in New York City where plaintiff resides.  Persons attending these CCP-staged demonstrations, literally on plaintiff's front steps, were provided with preprinted signs defaming plaintiff in vile language, calling him a rapist and a liar, and urging plaintiff to leave the United States.

24.    The CCP separately orchestrated a malicious negative propaganda campaign against plaintiff.  The CCP formed a team of people, the "50-cent troll army," to manipulate public opinion on social media for the benefit of the CCP.  The commentators created favorable comments or articles on popular Chinese social media networks intended to derail discussions that are unfavorable to the CCP and promote narratives that serve the government's interests, together with disparaging comments and misinformation about political opponents and critics of the Chinese government, such as plaintiff.

25.    Merely supporting plaintiff became a crime in China.  One of plaintiff's supporters, Dong Qi, reportedly was arrested and sent to jail for wearing a T-shirt with plaintiff's slogan — "Everything is just beginning" — on it.  Upon information and belief, plaintiff's followers have been questioned, restrained, and intimidated.

26.    Upon information and belief, the CCP perceives plaintiff as a dangerous challenge to the stability, legitimacy, and credibility of the Chinese regime and the CCP.

27.    Plaintiff's political actions and advocacy are known to and widely supported by many people in China and, indeed, around the world.  The domestic Chinese and international support which plaintiff has and the related strong support for his political and advocacy activities are additional sources of anger, aggravation, deep displeasure, and frustration to the CCP.

II.     **Plaintiff retains the Clark Hill law firm to represent him in preparing and submitting an application for asylum in the United States.**

28.     Paragraphs 15-27 *supra,* describing plaintiff's political activities and advocacy and resulting persecution and justifiable fear of further retaliation after fleeing from China, provide background and context for plaintiff's seeking legal representation to assist him and advocate on his behalf in applying for and obtaining political asylum in the United States.  Plaintiff retained Mr. Ragland and the Clark Hill law firm to represent him in this regard.  Mr. Ragland holds himself out as a leading immigration lawyer.  Mr. Ragland and the firm represented to plaintiff that Mr. Ragland and the firm were qualified, capable, and competent to represent plaintiff and to protect his interests fully and professionally.  Plaintiff relied upon these representations; however, they turned out to be false.

29.     Clark Hill receives and expects to receive (as any large law firm would) a large amount of confidential client information, including financial records, trade secrets, sensitive personal communications and disclosures, and sensitive personally identifiable information (*e.g.*, addresses, contact information, social security numbers, and health information).  Receiving such information is a daily occurrence at Clark Hill (again, as it is at any law firm of comparable size).  Clients, specifically including the present plaintiff, disclose confidential information to Clark Hill reasonably and justifiably relying on the firm's professional ethical and legal obligations to protect and preserve the confidentiality of their information, while strictly limiting disclosure of such information to that information which the client authorizes the firm to disclose.

30.     Clark Hill has clear and undeniable ethical and legal obligations to preserve a client's (plaintiff's) confidential information. These obligations to preserve confidentiality include information provided to the firm electronically and/or stored electronically on the firm's computer network.  At all relevant times, Clark Hill and Mr. Ragland communicated to plaintiff, both

implicitly and explicitly, that the firm understood its obligations to preserve plaintiff's confidential information and, of equal importance, that the firm could and would do so (*i.e.*, that the firm had the requisite professional and technical knowledge, capability, and competence to protect plaintiff's information).

31.    On or about August 2017, plaintiff met with defendants in connection with plaintiff's potentially retaining the firm to represent him in preparing and filing his planned asylum application.  During that meeting, plaintiff explained his standing and visibility as a prominent Chinese political dissident who is perceived as hostile to the CCP and related interests in China. Plaintiff also explained the risks associated with and attendant to plaintiff's position as a prominent visible critic of the Chinese regime.  Plaintiff warned of the persistent and relentless cyberattacks that he and his associates had endured.  At that meeting and subsequently, plaintiff disclosed to the firm confidential information about plaintiff's political and advocacy activities and equally sensitive confidential information regarding plaintiff's knowledge of wrongful actions and activities of the CCP.  The firm knew from the very outset that plaintiff's asylum application was not "routine" and that in connection with that application plaintiff would necessarily be disclosing highly sensitive confidential information to Mr. Ragland and to the Clark Hill law firm.

32.    In meetings with the firm, plaintiff explained that any law firm preparing his asylum application had to expect to be subjected to sophisticated cyberattacks.  Having been so informed, with "eyes wide open," and with a full awareness and understanding of the cyber security and other potential risks involved, defendants agreed to move forward and agreed to undertake the representation of plaintiff.

33.    In agreeing to undertake the representation of plaintiff, Mr. Ragland and the firm agreed to take special precautions to prevent improper disclosure of plaintiff's sensitive

confidential information. Such precautions would include not placing any of plaintiff's information on the firm's computer server as doing so would, as Mr. Ragland and the firm understood, make the information an easy target for a "hacker" interested in obtaining the information. The firm also committed and agreed to have in place at all times the requisite security measures to protect plaintiff's confidential information and to otherwise provide plaintiff ethical and competent legal representation. Had the firm not made these commitments and agreements, plaintiff would not have retained the firm.

34. On or about August 28, 2017, plaintiff, through his authorized representative, Dr. Han, and defendants executed a letter of agreement (the "retention agreement") for legal services pertaining to plaintiff's asylum application. That agreement created and formalized contractual, common law, and professional ethical and legal duties and obligations of defendants (as legal counsel) to plaintiff (as client), including the duties and obligations of undivided loyalty and the duties and obligations to maintain adequate and necessary security measures sufficient to safeguard plaintiff's sensitive personal and confidential information and documents.

35. Whatever the firm's security protection obligations are or should be with respect to maintaining reasonable security measures to safeguard an "ordinary" client's sensitive personal information and confidential documents, the firm here was on full notice ("high alert") that the representation of plaintiff was in no sense an "ordinary" representation with "ordinary" risks of unauthorized disclosure. That is, the firm knew from the very outset, and prior to the firm's agreeing to undertake the representation of the plaintiff, that special care and attention to security measures were necessary, required, expected, and agreed-to by the firm. In agreeing to represent plaintiff, the firm agreed to take the necessary steps and actions to protect plaintiff's confidential

information recognizing that meant the firm would take "more than ordinary" protective efforts. Had the firm not so committed and agreed, plaintiff would not have retained the firm.

36.     In accordance with the retention agreement, plaintiff paid defendants a retainer fee of $10,000, and the firm subsequently billed plaintiff (or his authorized representative) for its fees and the firm's fees were paid.

37.     The firm's retention agreement and its related standard terms of engagement state, among other things, that plaintiff, as a client, has the right to "expect competent representation by an attorney" of the firm; that the firm "will at all times act on your behalf to the best of our ability"; and that the firm's lawyers "are subject to the Rules of Professional Conduct governing attorneys in Washington, DC."[1] *See also* CLARK HILL, *About Us*, https://www.clarkhill.com/pages/about (last visited Aug. 29, 2019) ("Ethical [b]ehavior is [n]on-[n]egotiable.  We believe in doing the right thing every time.  We uphold our professional responsibilities and are accountable for our actions.").

38.     Plaintiff delivered sensitive personal information and confidential documents to defendants so they, as counsel, could complete plaintiff's asylum application.  That application was prepared in the District of Columbia by Mr. Ragland in consultation with Dr. Han, plaintiff's authorized representative in the District of Columbia.  The application was filed with the United States Department of Homeland Security in Washington, D.C. on September 5, 2017.  As necessary and as appropriate and subject to appropriate protections (*e.g.*, under seal or *in camera*), plaintiff will identify the confidential information he disclosed to the firm.

---

[1]  Plaintiff certainly does not concede and expressly disputes that the retainer agreement's identification of certain rights is exclusive, and that plaintiff did not and does not have other rights.

**III.    Defendants' failure to adequately protect plaintiff's confidential information led to the information being disclosed and disseminated widely and harmfully.**

39.     Notwithstanding (1) the firm's obligation to protect the confidentiality of plaintiff's information, (2) the firm's advance knowledge of the circumstances of plaintiff's case and the increased need for protection of plaintiff's information, and (3) defendants' agreement, by undertaking the representation of plaintiff and otherwise, that it would and could protect plaintiff's confidential information, the firm failed to do so.  Discovery is needed to determine the specific details of the firm's failures; however, it is beyond dispute that the firm failed as plaintiff's information was disclosed.  Plaintiff alleges that Mr. Ragland used the firm's server to store and transmit plaintiff's sensitive information, and used his firm email account to transmit plaintiff's confidential information to third parties, including to third parties not approved by plaintiff.  If, as plaintiff believes and here alleges, that Mr. Ragland used his firm email account to transmit plaintiff's confidential information to third parties, that reckless and wanton conduct "opened the door wide" to the firm's server to potential "hackers" and thoroughly compromised the confidentiality of plaintiff's information.

40.     The combination of Mr. Ragland's reckless conduct and the firm's  inadequate cybersecurity measures and infrastructure was fatal.  As a result, plaintiff's sensitive confidential information was not protected, but was disclosed to the world at large, and thus made available to the CCP and others with hostile intent to plaintiff and with the capacity to carry out that hostile intent.

41.     The firm has indicated that on or about September 12, 2017, the firm's computer system was "hacked" by a third party.  This third party, apparently without great difficulty, circumvented the firm's demonstrably inadequate (essentially porous) security and monitoring programs.  After doing so, the third party "hacker" was able to locate and exfiltrate (obtain)

16

plaintiff's asylum application and affidavit and, perhaps, other information and materials relating
to plaintiff. On September 12, 2017, Mr. Ragland wrote to Dr. Han, plaintiff's representative,
that "his computer is down – apparently it was attacked."

42. The firm's security measures, whatever they were, failed to "safeguard" plaintiff's
sensitive personal information and confidential documents. The firm's security measures were
inadequate, unreasonable, and fell woefully far short of defendants' promises, assurances,
obligations, and commitments to provide adequate security measures, given the circumstances of
this case, in violation of defendants' contractual, common law, and professional duties to plaintiff.

43. Because of defendants' failures, documents obtained by the third party included
plaintiff's and plaintiff's spouse's sensitive personal information – *e.g.*, plaintiff's passport
identification number; plaintiff's I-94 admission-number; plaintiff's spouse's passport
identification number; and plaintiff's spouse's I-94 admission-number. Beginning on or about
September 23, 2017, sensitive personal information and confidential documents obtained from
defendants' computer system relating to plaintiff began to appear on Twitter. The published
material included the following:

a. A copy of plaintiff's application for political asylum;

b. Plaintiff's passport identification number;

c. Plaintiff's I-94 admission-number;

d. Plaintiff's spouse's passport identification number; and

e. Plaintiff's spouse's I-94 admission-number.

44. The information published and disseminated on social media included sensitive
personal information and confidential portions of plaintiff's asylum application and affidavit.
Plaintiff provided this and other highly sensitive information, including the entire contents of

17

plaintiff's asylum application, to defendants in connection with their representation of plaintiff. Plaintiff did not consent to nor did he authorize the disclosure of any of the information to any persons other than to those in the United States government with a direct "need to know" in connection with the review of plaintiff's asylum application. By law, asylum applications are strictly confidential. By virtue of the wrongful conduct of Mr. Ragland and the firm, plaintiff's asylum application became entirely public and was published on social media sites.

45. Defendants cannot properly, let alone reasonably, defend their undeniable failure to protect plaintiff's information on grounds of "impossibility" or some variation of that theme. If defendants lacked the will, the resources, or the technical capability or sophistication to protect plaintiff's information from being disclosed, defendants were duty-bound to disclose this limitation (whatever its cause and despite such disclosure being against the defendants' economic interest in gaining plaintiff as a client) to plaintiff *prior* to the firm's undertaking the representation of plaintiff, and thus afford plaintiff the opportunity not to retain the firm to represent him. The firm denied plaintiff this opportunity. The legal and ethical obligations of lawyers (here, Mr. Ragland) include the obligation to decline a representation when the matter is beyond the competence, capacity, or ability of the lawyer. Mr. Ragland and the Clark Hill law firm breached that duty and obligation because they undertook the representation of plaintiff when they lacked the competence and ability to do so professionally, properly, and without harming their client (plaintiff).

46. Since the "hacking," defendants have largely "stonewalled" and refused to provide plaintiff any meaningful information about what occurred. For example, defendants have refused to advise plaintiff of the scale of the attack, including whether materials of clients other than plaintiff were obtained and, if so, whether the firm withdrew from those representations, and

whether there is any discernible pattern in the materials seized; and defendants have likewise refused to advise plaintiff of how defendants first learned of the attack and what counter-measures, if any, defendants took.

47.     On or about May 14, 2019, Daniel S. Steinberg, Esq., as counsel for plaintiff, wrote to the firm's General Counsel, Edward J. Hood, Esq., to inquire regarding the cyberattack. Mr. Steinberg requested answers to several specific relevant questions:

> a.  Have you been able to identify the source of the attack and the mechanism by which access was gained to your firm's information systems?
>
> b.  What records were obtained by the hacker, and were they obtained by unauthorized access to an email server or by direct access to a storage location?
>
> c.  How did the attacker circumvent the firm's security measures, or did the attack entail malicious software that gained control of the firm's computer system until [plaintiff's] information was transferred?

48.     On or about May 23, 2019, Mr. Hood, claiming, without explaining, that the investigation which was conducted of the "hacking" is privileged, provided only a limited response. Mr. Hood failed to answer the direct question of "how did the attacker circumvent the firm's security measures." Presumably, the investigative report, which, to date, the firm has steadfastly hidden from plaintiff as the victim of the attack, includes at least a preliminary answer to this question.

**IV.    The firm's improper withdrawal as plaintiff's counsel.**

49.     A week following the "hacking" of defendants' plainly inadequate system, on or about September 19, 2017, Mr. Hood, in his capacity as General Counsel of the Clark Hill law firm, wrote to plaintiff to inform him that defendants were terminating their representation of plaintiff:

I regret to inform you that, after careful consideration, the Firm has concluded it must withdraw as your legal counsel.

**\*\*\*\*\*\*\*\*\*\***

The cyberattack has presented several ethical complications with continuing to represent you. <u>A primary concern is that the cyberattack will require Mr. Ragland – and possibly other members of the Firm – to be a witness in your asylum proceeding</u>. Under our Rules of Professional Conduct, a lawyer may not serve as an advocate in a proceeding where the lawyer is likely to be a material witness. Here, the cyberattack has placed Mr. Ragland in an untenable position of being a witness in your asylum case while simultaneously serving as your attorney. At this point, Mr. Ragland must confine his role to that of witness, rather than legal advocate. (Emphasis added.)

50.     The firm's stated "reason" for its extreme unilateral action that "it must withdraw" was that Mr. Ragland and perhaps others at the firm might be a witness in plaintiff's asylum proceeding. This "reason" is without credibility or merit.

51.     For example, no hearing was pending when the firm unilaterally withdrew from and abandoned plaintiff (and none is pending as of this filing); plaintiff had not asked that Mr. Ragland be a witness were there a hearing; as the client, it would be plaintiff's decision, not Mr. Ragland's or the firm's decision, as to whether the value or necessity of Mr. Ragland's testimony at any hearing outweighed the firm's continuing as counsel (particularly in light of Mr. Ragland's claimed preeminence in immigration and asylum matters); the substance of Mr. Ragland's testimony at any hearing, were he to testify, would relate to uncontested matters, *i.e.*, that the firm's server had been "hacked" and plaintiff's information had been obtained; the firm never asked plaintiff's opinion on the matter; and the firm never so much as hinted, let alone explained, why Mr. Ragland's testimony was, supposedly, so "essential" at a then-non-existent hearing as to warrant the firm's unilaterally, precipitously, and without regard to the best interests of plaintiff terminating its attorney-client relationship with plaintiff when it did.

52.     The firm simply wanted "out" despite its clear contrary ethical obligations, including the duty of undivided loyalty to its client (plaintiff).  To accomplish its improper "fire the client" escape mission, the firm manufactured a plainly bogus "reason" to seek to justify its action.  Here, the firm's client had done nothing wrong and certainly had done nothing to warrant such brutal, unjustifiable, and unethical treatment.  Determining the firm's actual reason(s), as distinguished from its manufactured one, for its wrongful termination of its representation of plaintiff, including whether the firm yielded to pressure whether from the "hacker" or otherwise, will be an important area for discovery.

53.     Clark Hill has advised that it conducted (or had conducted on its behalf) an investigation of the cyberattack at issue in this case.  That investigation and any investigative report may address the topic of the firm's improper withdrawal from representing plaintiff.  To date, the firm has failed to provide plaintiff any investigative report produced as a result of the internal investigation of this matter despite the fact that the plaintiff's information was obtained, and perhaps the only successful target of the attack, and the firm terminated its representation of plaintiff because of that attack.  Plaintiff will seek this report in discovery.  Accordingly, defendants are hereby on notice to preserve the report and all related drafts, investigative notes, transcripts, exhibits, and materials.

54.     If defendants were unwilling or unable to protect plaintiff's sensitive confidential information, or lacked the competence or the capability to keep plaintiff's information off the firm's server, or to secure properly its computer system and network to protect plaintiff's information, defendants were duty-bound to disclose this critical limitation to the plaintiff at the outset and prior to committing to represent plaintiff to give the plaintiff an opportunity to make an informed judgment as to whether to retain the firm given its limitations.  The firm made no such

disclosure and thereby denied plaintiff the opportunity to make an informed decision on retaining the firm. Had the firm been forthright and candid about its limitations and lack of adequate security measures and protections, plaintiff would not have retained the firm as his counsel.

**V.    Defendants' breaches of duty have damaged plaintiff.**

55.    As a direct and proximate cause of defendants' multiple breaches of their duties and legal obligations to plaintiff, plaintiff's sensitive personal information and confidential documents were disclosed to third-parties, to the world at large, and to persons and institutions in China, including the Chinese government and CCP, to the great and severe injury, harm, and detriment of plaintiff.

56.    As a direct consequence of defendants' wrongful and unlawful conduct, plaintiff has suffered and continues to suffer damages to his personal and professional reputation; he has lost substantial business opportunities; plaintiff's personal safety and security have been put at risk; his efforts to obtain political asylum have been delayed; his family has been arrested and threatened; plaintiff's employees in China have been harassed; plaintiff has incurred costs and expenses; and plaintiff has been denied the benefit of defendants' claimed immigration law expertise in connection with pursuing plaintiff's asylum application. Defendants' breaches of their legal duties and obligations caused these and potentially other harms and damages to plaintiff. These harms are continuous and ongoing, and there is a substantial risk, if not likelihood, of additional harm and damage in the future.

57.    As a direct and proximate cause of defendants' multiple breaches of their duties and legal obligations, the details and contents of plaintiff's asylum application and other materials have been disclosed widely on social media platforms and placed in the hands of third-parties hostile to plaintiff. There are powerful people and interests in China and elsewhere hostile to

plaintiff because of his political activities who now have – solely because of defendants' failures and breaches of duty – detailed information about plaintiff which they would not otherwise have. There is good cause to believe that these persons have used and will continue to use plaintiff's confidential information for purposes harmful to plaintiff.

58.     The severe harm defendants have caused extends to limiting plaintiff's freedom and liberty to travel and jeopardizes his personal safety.  Defendants' breaches of legal duties and obligations caused these harms and damages to plaintiff.  These harms are continuous and ongoing, and there is a substantial risk, if not likelihood, of additional harm and damage in the future.

59.     The defendants' failure to safeguard plaintiff's sensitive personal information and confidential documents was the direct and proximate cause of the dissemination of plaintiff's sensitive personal information and confidential documents on social media, the publication of which has caused great harm to plaintiff by tarnishing his reputation and undermining his credibility and the credibility of his work in advancing the causes of bringing the rule of law, democracy, and justice to China.  Defendants' breaches of legal duties and obligations caused these harms and damages to plaintiff.  These harms are continuous and ongoing, and there is a substantial risk, if not likelihood, of additional harm and damage in the future.

60.     Defendants' improper and unjustified termination of its attorney-client relationship and attendant obligations has harmed and damaged plaintiff.  Defendants' improper action in abandoning their client (plaintiff) denied plaintiff the benefit of counsel at a time when he needed counsel (because his confidential information had just been splayed all over social media); sent the message to the public that plaintiff was somehow untrustworthy or acted improperly in connection with the representation;  denied plaintiff defendants' claimed expertise in immigration law; and has caused and/or will cause undue delay and complications in action on plaintiff's

asylum application. These harms are continuous and ongoing, and there is a substantial risk, if not likelihood, of additional harm and damage in the future.

61. At trial, the jury will determine plaintiff's compensatory damages proximately caused by defendants. Plaintiff alleges that those damages are no less than $50 million and seeks a judgment in at least that amount.

## PUNITIVE DAMAGES

62. At trial, the jury will also be asked to award significant punitive damages in an amount the jury determines to be appropriate. Punitive damages are warranted here because defendants' actions, inactions, and breaches of duties and obligations were reckless, wanton, intentional, and taken in willful disregard of plaintiff's rights and of defendants' obligations and duties to protect plaintiff's rights.

63. Defendants were reckless in their handling of plaintiff's confidential information. Defendants' recklessness included failing to protect that information, putting it on the firm's computer server, either directly or indirectly by transmitting the information to third parties via the firm's email account, or otherwise. These actions were intentional, deliberate, and willfully disregarded plaintiff's rights and defendants' obligations and duties to protect plaintiff's rights.

64. Defendants knew and understood the importance of protecting plaintiff's sensitive and confidential information, and that the dissemination of such information would jeopardize the personal and professional interests of plaintiff, plaintiff's family, including putting plaintiff and his family at grave risk of harm. Defendants specifically knew and understood that the CCP would attempt to obtain plaintiff's sensitive and confidential information and use that information to harm plaintiff and his family. Nevertheless, defendants ignored these very real and present risks, and their conduct was accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, willful

disregard of the plaintiff's rights, his safety, his family's safety, and with other circumstances tending to aggravate plaintiff's injuries.

65.     Defendants' compounded their recklessness by abandoning plaintiff as their client, choosing self-interest over protecting their client.  Defendants' unilateral withdrawal as plaintiff's counsel was intentional, deliberate, reckless, and unwarranted conduct, and conduct in willful disregard of plaintiff's rights and of defendants' obligations and duties to protect plaintiff's rights.

## CLAIMS FOR RELIEF

## COUNT I – Breach of Fiduciary Duties

66.     Plaintiff adopts and incorporates by reference ¶¶ 1-65 as if each were here fully set forth.

67.     Defendants formed an attorney-client relationship with plaintiff.  As a consequence, defendants owed plaintiff all the fiduciary duties and obligations which a lawyer owes to a client. Rather than honor those duties and obligations, defendants breached them.

68.     At all relevant times, the fiduciary duties defendants owed to plaintiff included, but were not limited to, the duty not to undertake a matter beyond the professional and technical competence, capability, and capacity of defendants; the duty to maintain reasonable and adequate, in this case meaning heightened, security measures to safeguard plaintiff's sensitive personal information and confidential records; the duty not to expose plaintiff's confidential information to the risk of disclosure by allowing the information to appear on the firm's computer server; the duty to exercise at all times the utmost good faith and undivided loyalty toward plaintiff; the duty to provide competent professional legal representation; and the duty not to withdraw from representing plaintiff, effectively abandoning him, absent valid and appropriate cause.

69.     Defendants breached their fiduciary duties to plaintiff. These breaches include defendants' failing to maintain reasonable security measures to safeguard plaintiff's sensitive personal information and confidential records by failing to maintain reasonable security measures, including placing information on the firm's computer server and/or allowing access to the firm's server, thus allowing unauthorized third-parties to gain access to electronic files and communications containing plaintiff's sensitive personal information and confidential documents.

70.     Defendants further breached their fiduciary duties and obligations to plaintiff by improperly and without valid cause withdrawing from representing plaintiff, whether in response to a "ransom" demand or otherwise. Defendants acted to advance their interests and contrary to the interests of the firm's client (plaintiff) to whom the firm owed its primary duty of undivided loyalty.

71.     Defendants had no valid or legally or ethically sufficient cause for terminating their representation of plaintiff. Plaintiff had satisfied his obligations as a client; defendants breached their obligations as counsel. The firm's stated reason for terminating its attorney-client relationship with plaintiff (that Mr. Ragland might be a witness in some unknown as-of-yet not scheduled hearing) was a transparent sham proffered to justify the defendants' improper unilateral decision to terminate the attorney-client relationship.

72.     If defendants released plaintiff's sensitive personal information and confidential documents to regain control of their computer system, or engaged in any similar conduct (a topic plaintiff will pursue in discovery), defendants breached their primary duty of undivided loyalty to plaintiff as the firm's client by placing the interests of the firm above the interests of plaintiff.

73.     Plaintiff has been harmed and damaged as a result of defendants' breaches of duty to plaintiff. The amount of plaintiff's damages will be determined at trial.

74.     In addition to compensatory damages, defendants are liable for punitive damages because defendants' actions willfully disregarded the rights of plaintiff, were intentional, deliberate, and reckless.  The amount of punitive damages will be determined at trial.

## COUNT II – Breach of Contract of Representation

75.     Plaintiff adopts and incorporates by reference ¶¶ 1-74 as if each were here fully set forth.

76.     Plaintiff entered into a written contract with plaintiff for the firm to represent the plaintiff.  Defendants breached their contractual obligations to plaintiff by undertaking a matter beyond defendants' professional or technical competence, capability, and competence; by failing to provide plaintiff competent representation; by neglecting to undertake reasonable security measures to safeguard plaintiff's sensitive personal information and confidential documents; and by improperly and wrongfully terminating the firm's representation of plaintiff.

77.     Defendants further breached the retention agreement and the associated terms of engagement if they delivered a "ransom" to unknown third parties that included ceasing to represent plaintiff and/or providing plaintiff's sensitive personal information and confidential documents (plaintiff will pursue this topic in discovery).  If defendants did so, they failed to provide competent representation and failed to act to the best of their ability and for the benefit of their client.

78.     The firm wrongfully placed its interests above the interests of its client (plaintiff) in violation of the firm's contractual and ethical obligations.  Defendants had no good or sufficient cause for terminating their representation of plaintiff.  Plaintiff had satisfied his obligations as a client; defendants breached their obligations as counsel.  The firm's stated reason for terminating its attorney-client relationship with plaintiff (that Mr. Ragland might be a witness in some

27

unknown as-of-yet not scheduled hearing) was a sham proffered to justify the defendants' improper unilateral decision to terminate the attorney-client contractual relationship.

79.     Plaintiff has been harmed and damaged as a result of defendants' breaches of their contractual duties and obligations to plaintiff.   The amount of plaintiff's damages will be determined at trial.

## COUNT III – Legal Malpractice

80.     Plaintiff adopts and incorporates by reference ¶¶ 1-79 as if each were here fully set forth.

81.     At all relevant times, an attorney-client relationship existed between plaintiff and defendants.  Defendants owed plaintiff contractual, common law, and professional duties to use the required degree of professional care and skill to represent plaintiff competently and professionally and consistent with the applicable standard of care.  As detailed in this complaint, the firm did not represent plaintiff with the required degree of professional care and skill. Defendants breached their duties to plaintiff.

82.     The standard of care governing a lawyer's representation of a client is defined by a combination of contractual, common law, and professional (ethical) duties and obligations.  In this case, the firm breached the standard of care to represent plaintiff competently and professionally as the firm's representation of plaintiff and its termination of that representation fell far short of the required standard of care.

83.     Defendants breached their contractual, common law, and professional and ethical duties and obligations to plaintiff by undertaking a matter beyond defendants' professional or technical competence and capability; by failing to use the required degree of professional care and skill in representing plaintiff, resulting in the global exposure and dissemination of plaintiff's

sensitive personal information and confidential documents; and by wrongfully and without valid cause terminating their representation of plaintiff.

84.     Defendants failed to take competent and reasonable measures to safeguard plaintiff's sensitive personal information and confidential documents by, *inter alia*, failing to maintain reasonable security measures to secure plaintiff's files and communications; failing to maintain reasonable security measures to secure email accounts and information systems, including the data contained within them, from unauthorized access by third parties; and failing to maintain reasonable security measures to prevent email accounts from being accessed by unauthorized third parties.

85.     Had Mr. Ragland done as he promised—not exposed plaintiff's sensitive confidential information—and had defendants maintained reasonable security measures to secure their computer system from unauthorized access, as required and promised to plaintiff, the cyber adversary would not have been able to gain access to plaintiff's sensitive personal information and confidential documents.  If defendants lacked the will, the competence, or the capability to properly secure the firm's computer system and network and thereby protect plaintiff's information from unauthorized disclosure, defendants were duty-bound to disclose this limitation to the plaintiff at the outset, prior to undertaking the representation, to give the plaintiff an opportunity to make an informed judgment as to whether to retain the firm given its limitations. The firm made no such disclosure and thereby denied plaintiff the opportunity to make an informed decision on retaining the firm.

86.     Defendants further breached their contractual, common law, and professional duties to plaintiff if they delivered a "ransom" to unknown third parties that included ceasing to

represent plaintiff and providing plaintiff's sensitive personal information and confidential documents.

87.     Defendants further breached their contractual, common law, and professional duties to plaintiff by improperly and wrongfully terminating their representation of plaintiff and by the manner in which defendants did so.  Defendants had no good, sufficient, or valid cause for terminating their representation of plaintiff.  Plaintiff had satisfied his obligations as a client; defendants breached their obligations as counsel.  The firm's stated reason for terminating its attorney-client relationship with plaintiff (that Mr. Ragland might be a witness in some unknown as-of-yet not scheduled hearing) was a transparent sham proffered to justify the defendants' improper unilateral decision to terminate the attorney-client relationship.

88.     Plaintiff has been harmed and damaged as a result of defendants' breach of their duties and obligations of care and competence to plaintiff.  The amount of plaintiff's damages will be determined at trial.

## COUNT IV – Punitive Damages

89.     Plaintiff adopts and incorporates by reference ¶¶ 1-88 as if each were here fully set forth.

90.     Because defendants' actions, inactions, failures, breaches of duties and obligations, and violations of plaintiff's rights were intentional, deliberate, outrageous, and in willful disregard of defendants' duties and obligations and in willful disregard of plaintiff's rights, defendants are liable to plaintiff for punitive damages, in addition to compensatory damages.

91.     Defendants' conduct at issue in this case is so far beyond the pale as to warrant punitive damages.  Defendant's intentional, deliberate, wrongful conduct involves the failure to protect plaintiff's confidential information from deeply harmful public disclosure despite

defendants' specific knowledge of the acute need to do so followed by defendants' then immediately "running away" from its client (plaintiff) after the disclosure occurred, which occurred because of defendants' failures.

92.     Defendants' intentional and deliberate failures made plaintiff's information accessible to "hackers" and then defendants' intentionally, deliberately, wrongfully, and without regard to their duties and obligation and in willful disregard for the rights of plaintiff abandoned plaintiff as their client.

93.     The jury will determine the appropriate amount of punitive damages.

## PRAYERS FOR RELIEF

At trial or afterwards, plaintiff will seek a compensatory monetary judgment against defendants, jointly and severally, in an amount in excess of $50 million, plus interest at the legal rate, the costs and disbursements of this action, and such other relief as is just and proper.

In addition, plaintiff shall seek a judgment against defendants, jointly and severally, for significant punitive damages in an amount to be determined by the jury.

Respectfully submitted,

*/s/ Ari S. Casper*
Ari S. Casper (#471013)
Ralph S. Tyler (#357087)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(410) 989-5097 – Phone
(410) 630-7776 – Facsimile
acasper@casperfirm.com
rtyler@casperfirm.com
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

/s/ Ari S. Casper_____
Ari S. Casper

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Guo Wengui a/k/a Miles Kwok a/k/a Ho Wan Kwok

Case Number: __2019 CA 006164 M__

vs

Date: __September 18, 2019__

Clark Hill PLC and Thomas K. Ragland

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* Ari S. Casper | Relationship to Lawsuit |
|---|---|
| Firm Name: The Casper Firm | ☒ Attorney for Plaintiff |
| Telephone No.: 410-989-5097    Six digit Unified Bar No.: 471013 | ☐ Self (Pro Se) <br> ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury

Demand: $ 50,000,000.00     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar#:_____

NATURE OF SUIT: *(Check One Box Only)*

**A. CONTRACTS**      **COLLECTION CASES**

☐ 01 Breach of Contract   ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty   ☐ 17 OVER $25,000 Pltf. Grants Consent   ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument   ☐ 27 Insurance/Subrogation   ☐ 26 Insurance/Subrogation
☐ 07 Personal Property     Over $25,000 Pltf. Grants Consent     Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation   ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees     Under $25,000 Pltf. Grants Consent     Under $25,000 Consent Denied
   ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile   ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion   ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process   ☐ 10 Invasion of Privacy   ☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 02 Alienation of Affection   ☐ 11 Libel and Slander   ☐ 18 Wrongful Death (Not Malpractice)
☐ 03 Assault and Battery   ☐ 12 Malicious Interference   ☐ 19 Wrongful Eviction
☐ 04 Automobile- Personal Injury   ☐ 13 Malicious Prosecution   ☐ 20 Friendly Suit
☐ 05 Deceit (Misrepresentation)   ☒ 14 Malpractice Legal   ☐ 21 Asbestos
☐ 06 False Accusation   ☐ 15 Malpractice Medical (Including Wrongful Death)   ☐ 22 Toxic/Mass Torts
☐ 07 False Arrest   ☐ 16 Negligence- (Not Automobile, Not Malpractice)   ☐ 23 Tobacco
☐ 08 Fraud    ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE    IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

| /s/ Ari S. Casper | September 18, 2019 |
|---|---|
| Attorney's Signature | Date |

CV-496/ June 2015

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

WENGUI GUO
  Vs.                                      C.A. No.     2019 CA 006164 M
CLARK HILL PLC et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                    Chief Judge Robert E. Morin

Case Assigned to: Judge HIRAM E PUIG-LUGO
Date:  September 19, 2019
Initial Conference: 9:30 am, Friday, December 20, 2019
Location:  Courtroom 317
             500 Indiana Avenue N.W.
             WASHINGTON, DC 20001

                                                                            CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Robert E. Morin



**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

D.C. Superior Court
09/25/2019 13:55PM
Clerk of the Court

Guo Wengui a/k/a Miles Kwok a/k/a Ho Wan Kwok
_____
Plaintiff

vs.

**Clark Hill PLC**

Case Number _2019CA006164M_

_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**Ari S. Casper**
_____
Name of Plaintiff's Attorney

**400 E. Pratt Street, Suite 903**
_____
Address
Baltimore, MD 21202

**410-989-5097**
_____
Telephone

如需要翻译，请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

By _____

Clerk of the Court

Deputy Clerk

**09/26/2019**

Date _____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

Superior Court of the District of Columbia
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Guo Wengui a/k/a Miles Kwok a/k/a Ho Wan Kwok
_____
Plaintiff

vs.

Thomas K. Ragland                              Case Number   **2019CA006164M**
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**Ari S. Casper**
_____
Name of Plaintiff's Attorney

**400 E. Pratt Street, Suite 903**                By _____
_____        Deputy Clerk
Address
Baltimore, MD 21202

**410-989-5097**                                Date   **09/26/2019**
_____      _____
Telephone
如需翻譯，請打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오     የተተረጐ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GUO WENGUI a/k/a MILES KWOK a/k/a )
HO WAN KWOK, )
                                           )
                 Plaintiff, )
                                           )
                 v. )    No._____
                                           )
CLARK HILL PLC and THOMAS K. )
RAGLAND, )
                                           )
                 Defendants. )

## DECLARATION OF CITIZENSHIP OF CLARK HILL PLC

1.    My name is Kathleen M. Sullivan.

2.    I make this declaration based on personal knowledge, in support of Defendant Clark Hill PLC's Notice of Removal relative to *Guo Wengui v. Clark Hill PLC*, No. 219 CA 006164M, an action filed September 19, 2019 in the Superior Court for the District of Columbia.

3.    All statements in this declaration are true both as of the date this declaration was signed and as of September 19, 2019.

4.    I serve as the Chief Human Resources Officer of Clark Hill PLC, a professional limited liability company existing under and by virtue of the laws of the State of Michigan.

5.    The principal place of business of Clark Hill PLC is in Detroit, Michigan, which is the largest office of Clark Hill PLC and the office location for its Chief Executive Officer, Chief Operations Officer, and Chief Financial Officer. Clark Hill PLC's state of organization and its nerve center is in Michigan.

6.    Clark Hill PLC has 298 members among its nearly 570 attorneys. Some of its members are individuals, and some of its members are individuals who hold their memberships

through professional corporations. None of the professional corporations through which individuals hold memberships are incorporated under the laws of the District of Columbia.

7.  I have reviewed the personnel records relating to Clark Hill PLC's members to determine whether any member resides or is domiciled in the District of Columbia. I also requested confirmation from each member that he or she did not reside in the District of Columbia or were a citizen of a foreign state.

8.  Based on my investigation, every member of Clark Hill PLC is a citizen of the United States, and no member of Clark Hill PLC resides or is domiciled outside of the United States. Every member of Clark Hill PLC resides in, is domiciled in, and is a citizen of, a State.

9.  Based on my investigation, no member of Clark Hill PLC is a citizen of, resident of, or domiciled in the District of Columbia.

10.  Clark Hill PLC is not a citizen of the District of Columbia, nor is it a citizen of any foreign state.

11.  On September 26, 2019, Clark Hill PLC, through its general counsel, accepted service of the Complaint filed in this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct. *See* 28 U.S.C. § 1746.

Executed on October 24, 2019

Kathleen Sullivan

# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GUO WENGUI a/k/a MILES KWOK a/k/a      )
HO WAN KWOK,      )
                                     )
             Plaintiff,      )
                                     )
                v.                )     No._____
                                     )
CLARK HILL PLC and THOMAS K.      )
RAGLAND,      )
                                     )
             Defendants.      )

## **DECLARATION OF CITIZENSHIP**

1.      My name is Thomas K. Ragland.

2.      I make this declaration based on my personal knowledge and in support of Defendant Clark Hill PLC's Notice of Removal relative to *Guo Wengui v. Clark Hill PLC*, No. 219 CA 006164M, an action filed September 19, 2019 in the Superior Court for the District of Columbia.

3.      All statements in this declaration are true both as of the date this declaration was signed and as of September 19, 2019.

4.      I am an attorney licensed to practice law in the State of Maryland and the District of Columbia. I reside and am domiciled in the Commonwealth of Virginia and am a citizen of the Commonwealth of Virginia. I am not a resident, citizen or domiciled in the District of Columbia, nor am I a citizen of any foreign state.

I declare under penalty of perjury that the foregoing is true and correct. *See* 28 U.S.C. § 1746.

Executed on October 24, 2019

_____
Thomas K. Ragland

**CIVIL COVER SHEET**

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GUO WENGUI a/k/a MILES KWOK a/k/a HO WAN KWOK | CLARK HILL PLC and THOMAS K. RAGLAND |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF New York County, NY (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Wayne County, MI (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Ari S. Casper, Ralph S. Tyler, The Casper Firm, 400 E. Pratt Street, Suite 903, Baltimore, MD 21202 | ATTORNEYS (IF KNOWN) Jessica Ring Amunson (#497223), Jenner & Block LLP, 1099 New York Avenue NW, Suite 900, Washington, DC 20001-4412, (202) 639-6000 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ◉ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ◉ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

**○ A.  Antitrust**

☐ 410  Antitrust

**◉ B.  Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

**○ C.  Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E.  General Civil (Other)          OR          ○ F.  Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

Other Statutes
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ⦿ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Diversity of Citizenship, 28 U.S.C. § 1332, and Removal of Civil Actions, 28 U.S.C. § 1441

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** 50,000,000<br>**JURY DEMAND:** | Check **YES** only if demanded in complaint<br>YES ☒  NO ☐ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐  NO ☒ | If yes, please complete related case form |

| **DATE:** 10/24/2019 | **SIGNATURE OF ATTORNEY OF RECORD** /s/ Jessica Ring Amunson |
|---|---|

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of the case.

**VI.**      CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**      RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**Exhibit B**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of _Connecticut_____

In re  Ho Wan Kwok_____        Case No.  22-50073_____
                Debtor

Chapter _11_____

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  _Clark Hill PLC_____

*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166 | **September 19, 2022, 10 A.M.**<br>**(see attached Bankruptcy Court Order)** |

The examination will be recorded by this method:  _court reporter/stenographer_____

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Requests for Production of Documents, attached hereto._____

       The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  August 18, 2022

CLERK OF COURT

                             OR

_____        _____
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*
                                   Patrick R. Linsey (ct29437)

The name, address, email address, and telephone number of the attorney representing *(name of party)*
_Luc Despins, Ch. 11 Trustee_____ , who issues or requests this subpoena, are:

Patrick R. Linsey, Esq.; Neubert, Pepe & Monteith, P.C.; 195 Church Street, New Haven, Connecticut 06510
plinsey@npmlaw.com; 203-821-2000_____

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

## Request for Production of Documents

### I.   INSTRUCTIONS

1.    Unless otherwise indicated, the requests for documents set forth below, (the "Requests," and each, a "Request"), must be responded to separately and specifically.   Each Request shall be answered fully unless it is in good faith objected to, in which event the reason for Your objection shall be stated in detail, as set forth below.   If an objection pertains only to a portion of a Request, or a word, phrase or clause contained within it, You are required to state Your objection to that portion only and to respond to the remainder of the Requests.

2.    Electronically stored information must be produced in accordance with the following instructions:

   a.   Images.  Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.  File names cannot contain embedded spaces or special characters (including the comma). Folder names cannot contain embedded spaces or special characters (including the comma). All TIFF image files must have a unique file name, i.e. Bates number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image. The number of TIFF files per folder should not exceed 1000 files. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

   b.   Image Load File

      a.   Concordance® Data File. The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database. The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance® default delimiters: Comma ASCII character (020) Quote þ ASCII character (254). Date fields should be provided in the format: mm/dd/yyyy.  Date and time fields must be two separate fields. If documents includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file. For Documents with native files, a LINK field must be included to provide the file path and

1

name of the native file. The native file must be named after the FIRSTBATES.

b. Concordance Image® OR Opticon Cross-Reference File. The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,Box Break,PageCoun.

c. <u>Document Text.</u> Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. It is recommended document level ANSI text files, named per the FIRSTBATES/Image Key. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). Text files must be provided on a document level.

d. <u>Native Production for Certain File Types.</u> File types that reasonably require viewing in their native format for a full understanding of their content and meaning must be produced in native format. These include, but are not limited to, spreadsheets, spreadsheet-like files (Microsoft Excel, comma separated values, tab separated values, etc.), Microsoft PowerPoint or other special presentation files, database files, and audio/visual files. Provide an image of a Bates numbered slip sheet indicating the presence of a native file, and include the path to the native as a field in the .dat file. Name the produced native file with the Bates number corresponding to the slip sheet for the file. Group native files within incrementally named "NATIVE" directories, separate from images directories.

e. <u>De-duplication</u>. Produce a single copy of each electronic document for which exact duplicates exist. For email messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For email attachments and standalone electronic files, consolidate duplicates based on MD5 hash of the entire file.

f. <u>Metadata.</u> Produce extracted metadata for each document in the form of a Concordance compliant load file (.dat). The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance default delimiters: Comma , ASCII character (020) Quote þ ASCII character (254)
Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields. Required metadata listed below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/ TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>\*\*This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>\*\*This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>\*\*This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

3.    Each Request operates and should be construed independently and, unless otherwise indicated, no Request limits the scope of any other Request.

4.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in these Requests.

5.    Each Request contained herein extends to all Documents:  (a) in Your possession, custody, or control; or (b) in the possession, custody, or control of anyone acting on Your behalf,

including Your counsel or other representatives and advisors.  Each Document shall be produced in its entirety.

6.      If You are requested to produce a Document that is no longer in Your possession, custody, or control, then Your response must (a) describe in detail the nature of the document and its contents; (b) identify the person(s) who prepared or authored the Document (and, if applicable, the Person(s) to whom the Document was sent); (c) identify the date on which the document was prepared or created; (d) state whether such Document (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of; (e) state the reason for, and the facts and circumstances surrounding, such disposition; (f) identify the Persons who authorized such disposition; (g) identify the date or approximate date of such disposition; (h) state when the Document was most recently in Your possession, custody or control; and (i) identify the Person, if any, presently in possession, custody, or control of such Document.

7.      If You are requested to produce a Document that has been destroyed, then Your response must state, in addition to the information required by the preceding Instruction:  (a) the reason for the Document's destruction; (b) the identity of the Person who destroyed the Document; and (c) the identity of the Person who directed that the Document be destroyed.

8.      If You claim that a requested Document is privileged or attorney work-product, then Your response must: (a) state (i) a description of the Document adequate to support Your contention that the Document is privileged, (ii) the title of the Document, (iii) the date of the Document, (iv) the author of the Document, (v) the addressee of the Document, (vi) the identity of each Person who received or saw the original or any draft, copy, or reproduction of the Document, (vii) whether the Document itself, or any information contained or referred to in the Document is in the possession, custody, or control of any other Persons, and if so, the identity of

such Persons, as well as a statement addressing how the information came into their possession,
(viii) the claim of privilege under which the Document is withheld, and (ix) all of the circumstances
upon which You will rely to support such claim of privilege; and (b) produce a privilege log
containing all of the information requested in Part (a) of this Instruction for each Document
withheld on the basis of a claim of privilege in accordance with D. Conn. L. Civ. R. 26(e). For any
part of a Document Request as to which a claim of privilege or work product is not made,
responsive documents should be provided in full.

9.      If a portion of an otherwise responsive Document contains information subject to a
claim of privilege, only that portion of the Document subject to the claim of privilege shall be
deleted or redacted from the Document following the instructions above, and the rest shall be
produced.

10.      The Requests are continuing in nature. You are hereby instructed to (a) supplement
or correct any responses later learned to be incomplete or incorrect immediately upon learning that
a prior response was incomplete or incorrect; and (b) produce any additional Documents that are
called for under the

11.      If a Document is in a language other than English, You should provide that
Document.  If a Document is in a language other than English, and an English translation exists,
You should provide both Documents.

12.      All references to Entities includes all affiliates thereof.

13.      All references to individual names include all alternative names, aliased, or
nicknames.

14.     Unless otherwise expressly indicated, the period of time covered by the Document Requests is the period from February 5, 2012 to the date responses to the Document Requests are due.

## II.    RULES OF CONSTRUCTION

15.     The use of (a) any singular noun shall be construed to include the plural, and vice versa, and (b) a verb in any tense shall be construed as the use of the verb in all other tenses.

16.     The terms (a) "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope, and (b) "each" and "any" shall be deemed to include and encompass the words "every" and "all."

## III.    DEFINITIONS

The definitions supplied by D. Conn. L. Civ. R. 26(c) and the rules of construction supplied by D. Conn. L. Civ. R. 26(d), as incorporated by D. Conn. Bankr. L.R. 2004-1(a), shall apply to the Document Requests. In addition, the following terms used in these Document Requests shall have the following meanings:

1.      "You" or "Your" or "Yourself" means and refers to Clark Hill PLC, together with any of its employees, agents, counsel, advisors, or anyone acting on its behalf.

2.      "Debtor" means Ho Wan Kwok (a/k/a Miles Kwok, Miles Guo, Guo Wengui, Guo Haoyun, 郭文贵, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

3. "<u>Debtor's Son</u>" means Qiang Guo (a/k/a Mileson Kwok, 郭强, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

4. "<u>Debtor's Daughter</u>" means Mei Guo (a/k/a Mei Gui, 郭美, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

5. "<u>Debtor's Purported Wife</u>" means Hing Chi Ngok (a/k/a Hing Chi Ng, Yue Qingzhi, 岳庆芝, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

6. "<u>Debtor's Family</u>" means, collectively, the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor.

7. "<u>Associated Individuals</u>" means, individually and collectively, all individuals that (1) hold, control, have custody over, or discretion over assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family; or (2) have been employees, directors, or otherwise are affiliated with one or more Associated Entities, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing. Such Associated Individuals shall include, but are not limited to: Daniel Podhaskie, Jason Miller, Steve Bannon, Karin Maistrello, Melissa Francis, William Gertz, Arethusa Forsyth, Glenn Mellor, Jennifer Mercurio, Eduardo Eurnekian, Han Chunguang (a/k/a 韩春光), Qu Guojiao (a/k/a Qu Guo Jiao, 屈国姣), Guo Lijie (a/k/a 郭丽杰), Zhang Wei (a/k/a 张伟*), Lihong Wei Lafrenz (a/k/a Sara Wei, 魏丽红), Hao Haidong (a/k/a 郝海东), Ross Heinemeyer, Max Krasner, Kyle Bass, Melissa Mendez, Ya Li (a/k/a 李娅), Dinggang Wang (a/k/a 王定刚), An Hong (a/k/a 安红), Yvette Wang (a/k/a Yanping

8

Wang, Yan Ping Wang, 王雁平), Fiona Yu, Je Kin Ming (a/k/a William Je, Yu Jianming, 余建明), Yaz Qingua, and Lao Jiang (a/k/a Jiang Yunfu, Jiang Yunfu Be, 姜云浮).

8.    "Associated Entities" means, individually and collectively, all organizations or Entities of any type that (1) have been owned, controlled, or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing.  Such Associated Entities shall include, but are not limited to: 7 Nod Hill LLC, AAGV Limited, ACA Investment Management Limited, ACA Capital Group Limited, Ace Decade Holdings Limited, AI Group Holdings Inc., Alfa Global Ventures Limited, Alfonso Global Limited, Allied Capital Global Limited, Alpine Fiduciaries SA, Anton Development Limited, Assets Sino Limited, Auspicious Coast Limited, Beijing Pangu Investment Co., Beijing Pangu Investment Co. Ltd., Beijing Pangu Investment Inc., Beijing Zenith Holdings Company Limited, Bravo Luck Limited, BSA Strategic Fund I, China Golden Spring (Hong Kong) Limited, Chuang Xin Limited, Crane Advisory Group LLC, Creative Apex Investments Limited, Crystal Breeze Investments Limited, Dawn State Limited, Eastern Profit Corporation Limited, Elite Well Global Limited, Empire Growth Holdings, G Club Operations LLC, G Fashion LLC, G News LLC, GETTR USA, Genever Holdings Corporation, Genever Holdings LLC, GFASHION MEDIA GROUP INC., GFNY, Inc., Globalist International Limited, GNews Media Group Inc., Golden Spring (New York) Ltd., Greenwich Land LLC, Guo Media, GTV Media Group, Inc., Hamilton Capital Holdings Inc., Head Win Group Limited, Henan Yuda, Himalaya Embassy, Himalaya Exchange, Himalaya Federal Reserve, Himalaya Supervisory Organization, HK International Funds Investments (USA)

9

Limited LLC, Hong Kong International Funds Investments Limited, Infinite Increase Limited, Infinitum Developments Limited, Insight Phoenix Fund, Lamp Capital LLC, Leading Shine Limited, Leading Shine NY Limited, Long Gate Limited, Next Tycoon Investments Limited, New Federal State of China (a/k/a NFSC), Noble Fame Global Limited, Rosy Acme Ventures Limited, Rule of Law Foundation III, Inc., Rule of Law Foundation IV, Inc., Rule of Law Fund, Rule of Law Society, Rule of Law Society IV, Inc., G-Translators PTY LTD, Saraca Media Group, Inc., Shiny Ace Ltd., Shiny Times Holdings Ltd., Spirit Charter Investment Limited, Stevenson, Wong & Co., Voice of Guo Media, Inc., Well Origin Ltd., World Century Limited, Worldwide Opportunity Holdings Limited, Whitecroft Shore Limited, and ZIBA Limited.

9. "<u>Including</u>" or any variant thereof means "including without limitation."

10. "<u>And</u>" and "<u>or</u>" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

11. "<u>Any</u>" and "<u>all</u>" and "each" mean "each and every."

12. "<u>Each</u>" and "<u>every</u>" mean "each and every."

13. "<u>Third Party</u>" means a Person or Entity other than Yourself.

14. "<u>Transfer</u>" shall have the meaning given to it by section 101(54) of the Bankruptcy Code.

15. "<u>Document</u>" means any information or thing within the scope of Fed. R. Civ. P. 34, and includes, without limitation, each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your Possession, Custody or Control, including all printed and electronic copies of electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind,

charts, blueprints, drawings, sketches, graphs, plans, articles, specifications, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, telexes, facsimiles, emails, text messages, instant messages, voice messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, films, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or markings of any kind not found on the original documents or that are otherwise not identical to the original documents.

16.    "Person(s)" means an individual, corporation, proprietorship, partnership, association, or any other Entity. "Person" also includes any agent, representatives, or expert, including but not limiting to, attorneys or financial advisors.

17.    "Entity" means any natural Person, corporation, partnership, subsidiary, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic Person, as well as any affiliate, agent, parent including but not limited to counsel, financial advisors, or any other representative.

18.    "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to,

connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

19.     "Relating to," "relate(s) to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

20.     "Communication(s)" means, in the broadest possible sense, and without limitation, any transmittal of information or knowledge (in the form of facts, ideas, inquiries, or otherwise). Communication(s) further refers to all conversations, agreements, inquiries, or replies, whether in person, by telephone, in writing, or by means of electronic transmittal devices, and includes, but is not limited to, all correspondence, emails, recordings, transmittal slips, memoranda, telephone communications, voice messages, telegrams, telefaxes, telecopies, telexes, instant messages, chats, text messages, postings to a message board or group chat, social media posts, tweets, videos uploaded to any video platform, telephonic notes, or notes transmitted internally or with third parties.

21.     "Asset(s)" means any item of economic value that is subject to Possession, Custody, or Control. Asset includes all real and personal property, including but limited to, real estate, land, houses, apartments, condominiums, automobiles, yachts, boats, planes, jets, helicopters, cash, bank accounts, cryptocurrencies, securities, accounts receivables, inventory, and other tangible and intangible property.

## IV.     DOCUMENTS TO BE PRODUCED

1.     All Documents related to any income or Asset of the Debtor, the Debtor's estate, the Debtor's Family, or Associated Entity.

2.      All Documents related to any engagement letter with the Debtor, any member of the Debtor's Family, and/or any Associated Entity, including copy(ies) of such engagement letter(s).

3.      All Documents related to the payment of any retainer to You based upon your representation of the Debtor, the Debtor's Family, or an Associated Entity, including documents sufficient to identify the amount of the retainer and its source.

4.      All Documents related to any fees, payments, or monies received by You from or on behalf of the Debtor, the Debtor's Family, a Family Related Entity, or an Associated Entity held in escrow or in a client trust account.

5.      Documents sufficient to show the amount, date, and source of any payments made to You by or for the benefit of the Debtor, the Debtor's Family, or an Associated Entity.

6.      All Documents related to the Debtor's financial condition and obligations to his creditors, including without limitation all Documents related to any effort to avoid paying such obligations and All Documents related to this or any other actual or potential bankruptcy or similar insolvency proceeding.

7.      All Documents related to the Associated Entities, including but not limited to Documents related to their corporate structure, Assets, incorporation information, officers and directors, business purpose, and relationship to the Debtor, to any member of the Debtor's Family, or to any Associated Individual.

8.      All Documents regarding any investment or business dealing made by, with, or on behalf of Debtor or the Debtor's Family, on the one hand, and an Associated Entity, on the other hand.

13

9.      All Documents related to any Entity that the Debtor, the Debtor's Estate, the Debtor's Family, or the Associated Entities hold any interest or investment in, including but not limited to the nature and value of that interest or investment; any proceeds or benefits from such Entity that the Debtor, the Debtor's Estate, the Debtor's Family, or the Associated Entities receive on account of such interest or investment; and all Documents relating to any financial reporting or data relating to such Entity, including but not limited to all books and records, financial statements or tax Documents.

10.     All Documents regarding the *Lady May*; the Sherry Netherland Hotel / Condominium; the residential property located in Greenwich, Connecticut, at 373 Taconic Rd.; the residential property located in Greenwich, Connecticut, at 33 Ferncliff Rd.; the residential property located in Wilton, Connecticut at 354 Nod Hill Rd.; and any financial interest that the Debtor or the Debtor's estate possesses in any Associated Entity.

11.     All Documents related to the purported Declaration of Trust and Agreement, dated February 17, 2015, entered into by the Debtor, as Trustee, Genever Holdings Corporation, and Genever Holdings LLC, in favor of Bravo Luck Limited, as beneficiary.

12.     All Documents related to any aircraft owned, controlled, or used by the Debtor, including without limitation the aircraft bearing tail number T7-GQM any other aircraft registered in San Marino, including without limitation copies of all registration documents and flight manifests showing flights taken by such aircraft and the individuals onboard such flights.

13.     All Documents related to any investments or trading by the Debtor, the Debtor's Family, or an Associated Entity, in or around July 2020, or at any other time, in crude oil futures or any similar commodity, including without limitation Communications with Jiang Yunfu Be regarding any such investments or trading.

14

14.     All Communications between You and, either, the Debtor, the Debtor's Family, or
any Associated Individual, agent, employee, or other individual acting on behalf of the Debtor,
related to any Transfer, investment, or other transaction or business dealing relating to the Debtor,
the Debtor's Estate, the Debtor's Family, or the Associated Entities.

15.     All Documents concerning any trust or similar instrument set up by, on behalf of,
or for the benefit of Debtor, Debtor's Estate, Debtor's Family, or Associated Entities, including
but not limited to Documents showing when the trust(s) was created, by whom it was created, to
whose benefit it was created, and the corpus of the instrument.

16.     All Documents related to any sale, acquisition, disposition, purchase, investment,
contribution, gift, extension of credit, loan, or Transfer involving the Debtor, the Debtor's Family,
or any Associated Entity.

17.     All Documents related to any obligation, claim, liability, or debt associated with
any legal dispute involving the Debtor, including but not limited to those relating to any litigation
before any local, state, federal, or international body, whether an administrative body, court, panel,
or alternative dispute resolution entity.

18.     All Documents related to any loans or extensions of credit, or applications for the
same, to or from the Debtor, the Debtor's Estate, the Debtor's Family or any Associated Entity,
including but not limited to (i) the terms of any such loans or extensions of credit, including their
terms of repayment, representations and warranties, and interest rate, and (ii) all evidence of
payments of the loans.

19.     All Documents related to the Debtor's use of any Assets belonging to, controlled by, or whose complete or partial ownership is held by the Debtor's Family, an Associated Entity, or an Associated Individual.

20.     All Documents regarding any balance sheet, bank statement, account statement, financial statement, statement of account, wire transfer instructions and/or confirmation, proof of funds, certificate of deposit, certificate of holdings, investment portfolio summary, or similar document relating to the Debtor, the Debtor's Estate, the Debtor's Family, an Associated Entity, or an Associated Individual, including without limitation all Documents sufficient to show all Transfers to any of the foregoing.

21.     All Documents related to any pledges of Assets of any Associated Entity, including Bravo Luck Limited, to any other Entity.

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

**PROOF OF SERVICE**
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____

                                        _____
                                                     *Server's signature*

                                        _____
                                                     *Printed name and title*

                                        _____
                                                     *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                            :

In re:                         :    Chapter 11
                            :

HO WAN KWOK,         :    Case No. 22-50073 (JAM)
                            :

        Debtor.       :    RE: ECF No. 637
                            :

-------------------------------------------------------x

**ORDER**
**GRANTING CHAPTER 11 TRUSTEE'S APPLICATION**
**FOR RULE 2004 DISCOVERY WITH RESPECT TO VARIOUS LEGAL AND**
**FINANCIAL ADVISORS TO THE DEBTOR**

Upon consideration of the Application seeking an order authorizing a Federal Rule of Bankruptcy Procedure 2004 examination of the Professionals listed on Exhibit B thereto (the "Application", ECF No. 637), filed by Luc Despins, as the appointed Chapter 11 Trustee to the Debtor's estate (the "Applicant"), after notice and a hearing held August 12, 2022, it appearing that cause exists to grant the requested relief as conditioned hereafter; it is hereby

**ORDERED**: The Rule 2004 Motion is granted as set forth below.

**ORDERED**: Paul Hastings LLP and Neubert, Pepe & Monteith, P.C., as proposed counsel for the Trustee, are hereby authorized to sign Subpoenas in a form substantially similar to the Subpoenas attached to the Rule 2004 Motion as Exhibits C-1 to C-14 and to serve the Subpoenas, along with a copy of this Order, in accordance with Bankruptcy Rule 2004 requiring examination and the production of documents by the Professionals listed on Exhibit B to the Application.

**ORDERED**: Subject to any rights under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and applicable Local Rules, and unless otherwise ordered by the Court, the Professionals are hereby directed to produce all documents within 30 days of the service of the Subpoena, or such other time as agreed upon by the Trustee. To the extent a Professional does not produce any documents requested in the Subpoena on the basis of some privilege, the Professional is hereby directed to produce to the Trustee a privilege log that comports with Fed. R. Civ. P. 45(e)(2), made applicable by Fed. R. Bankr. P. 9016, and D. Conn. L. Civ. R. 26(e), within 30 days of service of the Subpoena, or such other time as agreed upon by the Trustee.

**ORDERED**: The Professionals are hereby directed to ensure that all documents and other information, including without limitation in any electronic format, requested in the Subpoenas or otherwise relevant to the Debtor, his business, assets, liabilities, financial condition, or this Chapter 11 case, are properly maintained, are available for production, inspection and copying, and are not destroyed.

      **ORDERED**: Paul Hastings LLP and Neubert, Pepe & Monteith, P.C., as proposed counsel for the Trustee, are hereby authorized, without further order of this Court, to take the testimony of one or more representatives of any Professional listed on Exhibit B to the Application by examination under Bankruptcy Rule 2004 either at the offices of Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, or at such other place that is mutually acceptable to the parties, on a date acceptable to the Trustee, which, at the election of the Trustee, shall be not less than 14 calendar days after the production of documents by the proposed examinee in compliance with the Subpoena and this Order pursuant to Bankruptcy Rule 2004, and such examination shall continue from day to day until completed.

      Dated at Bridgeport, Connecticut this 16th day of August, 2022.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut

**Exhibit C**

**From:** Storino, John R. <JStorino@jenner.com>
**Sent:** Monday, September 19, 2022 12:58 PM
**To:** acasper@casperfirm.com
**Subject:** In re Ho Wan Kwok, Case No. 22-50073 (JAM) (Bankr. D. Conn.)

Ari:

The court in the Bankruptcy Case entered the attached order last week.  As you can see, in sum, it states that "the Trustee owns and controls the attorney-client privilege, work product protection and other privileges on issues related to the Debtor's assets and financial affairs and the administration of his estate."

As such, the Trustee's counsel requested that we send them the pleadings in our case that were filed under seal.  While the Trustee does not believe its necessary, it is my understanding that he is willing to sign the protective order in our case.  Once that occurs, please confirm that you have no objection to my sending the Trustee's counsel the pleadings filed under seal in our litigation.

Thanks,

John

---

**John R. Storino**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456  |  jenner.com
+1 312 840 8683 | TEL
+1 312 316 6151 | MOBILE
+1 312 840 8783 | FAX
JStorino@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**Exhibit D**

**From:** Luft, Avi E. <aviluft@paulhastings.com>
**Sent:** Tuesday, September 20, 2022 2:54 PM
**To:** Ari Casper <acasper@casperfirm.com>; Storino, John R. <JStorino@jenner.com>
**Subject:** RE: In re Ho Wan Kwok, Case No. 22-50073 (JAM) (Bankr. D. Conn.)

<mark>**External Email - <u>Do Not Click</u>** Links or Attachments Unless You Know They Are Safe</mark>

Ari and John,

I have signed the undertaking on behalf of the trustee to speed this along and sent it to John (Ari, if you need a copy I can forward it to you as well). Given that, does anyone have a basis to not grant the trustee access to the relevant pleadings as well as the underlying reports and witness statements in this matter, that the Trustee now controls? Please let me know ASAP.

**Exhibit E**

**From:** Storino, John R. <JStorino@jenner.com>
**Sent:** Tuesday, September 20, 2022 3:58 PM
**To:** Luft, Avi E. <aviluft@paulhastings.com>; Ari Casper <acasper@casperfirm.com>
**Subject:** [EXT] RE: In re Ho Wan Kwok, Case No. 22-50073 (JAM) (Bankr. D. Conn.)

Avi:

The defense is fine providing the pleadings, expert report and/or deposition transcripts that have been marked confidential or attorneys eyes only under the protective order to the Trustee's counsel.

Thanks,

John

**Exhibit F**

**From:** Ari Casper <acasper@casperfirm.com>
**Sent:** Tuesday, September 20, 2022 4:14 PM
**To:** Storino, John R. <JStorino@jenner.com>; Luft, Avi E. <aviluft@paulhastings.com>
**Subject:** [EXT] RE: In re Ho Wan Kwok, Case No. 22-50073 (JAM) (Bankr. D. Conn.)

Avi:  We are not trying to be difficult. However, we are not authorized by Mr. Guo to agree to the disclosure of
pleadings, reports, and/or transcripts marked confidential or attorneys' eyes only and/or which have been filed under
seal. Ari

**Exhibit G**

**From:** Luft, Avi E. <<u>aviluft@paulhastings.com</u>>
**Sent:** Wednesday, September 21, 2022 3:59 PM
**To:** Ari Casper <<u>acasper@casperfirm.com</u>>
**Cc:** Aaron A. Romney <<u>aromney@zeislaw.com</u>>
**Subject:** Undertaking in Clark Hill matter

<span style="color:red">External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click
links or open attachments, unless you recognize the sending email address and know the content
is safe..</span>

Ari,

Attached please find a copy of the signed undertaking in the Clark Hill matter.

I have also copied Aaron Romney at Zeisler and Zeisler, who represents Mr. Kwok in the bankruptcy
case.

Aaron, for purposes of making sure there is no ambiguity and the Trustee can proceed with gaining
access to the relevant documents in the Clark Hill matter so that he can manage that estate asset, can
you as counsel for Mr. Kwok in the bankruptcy please confirm for Ari, who represents Mr. Kwok in the
Clark Hill litigation, that pursuant to the appointment of the Trustee in the bankruptcy, the Clark Hill
litigation is property of the estate, and is under the exclusive control of the Trustee.

Thanks.

Avi



**Avi E. Luft** | **Of Counsel** | **Financial Restructuring Group**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6
+1.212.318.6000 | Fax: +1.212.303.7079 | <u>email</u> | <u>www.paulhastings.com</u>

*******************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received
this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
If you reply to this message, Paul Hastings may collect personal information including your name, business name
and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy
and security principles please click <u>HERE</u>. If you have any questions, please contact <u>Privacy@paulhastings.com</u>.

**Exhibit H**

**From:** Aaron A. Romney <aromney@zeislaw.com>
**Sent:** Wednesday, September 21, 2022 4:43 PM
**To:** Luft, Avi E. <aviluft@paulhastings.com>; Ari Casper <acasper@casperfirm.com>
**Cc:** Eric Henzy <ehenzy@zeislaw.com>
**Subject:** [EXT] Re: Undertaking in Clark Hill matter

Mr. Kwoks claims in the litigation against Clark Hill are property of the bankruptcy estate.

**Exhibit I**

**Kosciewicz, Jonathon P.**

| | |
|---|---|
| **From:** | Aaron A. Romney <aromney@zeislaw.com> |
| **Sent:** | Wednesday, November 2, 2022 5:14 PM |
| **To:** | Luft, Avi E. |
| **Cc:** | Storino, John R.; Lazar, Vincent E.; John L. Cesaroni; Eric Henzy; Stephen Kindseth; Kosciewicz, Jonathon P.; Barron, Douglass E.; Sutton, Ezra; Bassett, Nicholas; Gonzalez, Maria C. |
| **Subject:** | [EXT] RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC |
| **Attachments:** | Asylum-Confidentiality USCIS Fact Sheet.pdf |

Sorry-I was prepping a witness all day and am catching up on emails.

After careful review, the Debtor is unable to consent to the release of his Asylum application to the Trustee. Dissemination of the Debtor's Asylum application appears to violate Section 208.6 of Title 8 of the Federal Regulations. See attached.

Aaron

-----Original Message-----
From: Luft, Avi E. <aviluft@paulhastings.com>
Sent: Wednesday, November 2, 2022 2:07 PM
To: Aaron A. Romney <aromney@zeislaw.com>
Cc: Storino, John R. <JStorino@jenner.com>; Lazar, Vincent E. <VLazar@jenner.com>; John L. Cesaroni <jcesaroni@zeislaw.com>; Eric Henzy <ehenzy@zeislaw.com>; Stephen Kindseth <SKindseth@zeislaw.com>; Kosciewicz, Jonathon P. <jonathonkosciewicz@paulhastings.com>; Barron, Douglass E. <douglassbarron@paulhastings.com>; Sutton, Ezra <ezrasutton@paulhastings.com>; Bassett, Nicholas <nicholasbassett@paulhastings.com>; Gonzalez, Maria C. <MGonzalez@jenner.com>
Subject: Re: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

Aaron,

I am following up regarding your pending objection to Clark Hill producing to us the asylum application, that is both an exhibit to their motion for summary judgment and directly at issue in the litigation. After we all  confirmed that it was not a privileged document, you asked to be able to speak to your client regarding your pending objection now that you understood that it is an exhibit and directly at issue in the litigation. Can you please confirm that your client is no longer objecting to the production of the document so that Clark Hill can proceed with its production to the Trustee. If he is maintaining his objection. I ask that you please let us and Jenner know the basis of your legal objection immediately so that we can take appropriate steps to address the issue promptly . Thanks.

Avi

[image001.png]<https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.paulhastings.com%2f&c=E,1,byjSx8C9DtBk hPGdkojzPC1bE_mQiciJWLDtZvPS-SJRlLl4QytHK0bppNYeK3oE-Hdc0SzZ2VdmSkvHiQdE6R1VLDm_TAeh3j782-MQViUJd0yCtj3CNg8,&typo=1>

Avi E. Luft | Of Counsel | Financial Restructuring Group

Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6079 | Main: +1.212.318.6000 | Fax: +1.212.303.7079 | email<mailto:email> |
https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fwww.paulhastings.com&c=E,1,SRaZsmA-QznFZMFv8JJUIzeZZ5IbwiUU58JbCGdlo6TP0bxOUYOWX7XULlhaAoI6FpsxFUovbiWMhZVQ8Ca2I2bcoGxPbjKfWn8khAQVoovDQ-
gfcJW69WQ,&typo=1<https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.paulhastings.com%2f&c=E,1,NC-9B-42YyIP1MvfJDNQo_8wVBDniyRB1JRDgSKg1MOKZrUL5Y2QXxvgbdYidLbFiOhN4p-DlqBOAO379SGK4OcsxL05F9h5Bl2UoMuD7XM2rOvAX3lAT_UI&typo=1>


On Oct 31, 2022, at 3:45 PM, Aaron A. Romney <aromney@zeislaw.com> wrote:


Once the text message we discussed is stamped confidential we everything, but the Cerda letter and the asylum application can be produced (with the markings preciously discussed).  I will revert back on the asylum application as soon as I can.

From: Storino, John R. <JStorino@jenner.com>
Sent: Monday, October 31, 2022 12:06 PM
To: Aaron A. Romney <aromney@zeislaw.com>; Lazar, Vincent E. <VLazar@jenner.com>; John L. Cesaroni <jcesaroni@zeislaw.com>; Eric Henzy <ehenzy@zeislaw.com>; Stephen Kindseth <SKindseth@zeislaw.com>; Luft, Avi E. <aviluft@paulhastings.com>; Kosciewicz, Jonathon P. <jonathonkosciewicz@paulhastings.com>; Barron, Douglass E. <douglassbarron@paulhastings.com>; Sutton, Ezra <ezrasutton@paulhastings.com>; Bassett, Nicholas <nicholasbassett@paulhastings.com>
Cc: Gonzalez, Maria C. <MGonzalez@jenner.com>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..
Great – we will send everyone on this email an invite and people can join if they like.

From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Monday, October 31, 2022 10:56 AM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Kosciewicz, Jonathon P. <jonathonkosciewicz@paulhastings.com<mailto:jonathonkosciewicz@paulhastings.com>>; Barron, Douglass E. <douglassbarron@paulhastings.com<mailto:douglassbarron@paulhastings.com>>; Sutton, Ezra <ezrasutton@paulhastings.com<mailto:ezrasutton@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>
Cc: Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe
145 works. My direct is 203-368-5473 or we can do a dial in if more people plan to attend. From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>> Sent: Monday, October 31, 2022 11:54 AMTo: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; Lazar, Vincent E.

2

<VLazar@jenner.com<mailto:VLazar@jenner.com>>; John

<https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fus.report.cybergraph.mimecast.com%2falert-details%2f%3fdep%3dk9cAt3lqaHxWrXtNMGrP8w%253D%253DVwsk7h9bGMQryVFla%252F%252BiBA3KO36FPEo%252FqU8thSqM1auSGOsVcaqe22RxXy6E31wO19X8w0eVBIrOwqYcJTs3jUf4TDgfgEi6kOv%252FhamOU5xVbk0H1DWCmgkSjLL%252BnRttxhytd8H58%252FacwqFYwZn7J2Noxfhz5T7FuYYMcZaLDEBsBxiiKLrhih9yoD0A0WiVagXFXhFmC8Q%252BmpfwtHECT4VTDWHiM50ZJZihH33GyQojIxYVEECUygiS7zm2bOmz%252BW%252BJMtRl1OVM%252FvW6REdr1gz3z5nKx4foJQ8U1nR1RgMINhdM%252FOby6Sgy5NMn9IT5C9ok0nuaXoTFfJDSzxkYAqHnzmUnllHG3zsOLGGmh73IBFwuNIjKfd%252FjTuK6rU3E44vIQRIHTGaobdr3Teq7ZBCTQfUkk7js%252Bl%252B02uVY%252FrGmZOj%252B9FGYWNCQmqIjlxWhtpiDp7vfx3V30YvQ3UY%252BgT7g%252FT7c%252BQD%252B7z7MvGHmP%252F2gttuB86M%252F3EGLUC3hjxMtJTPr7wEzUK2oieBzvwg%252FOol5URp%252FxGH1jrxcrPwq1ZfGIZ93zYJm5IHKkbmuyzqrry%252BORtt0XnEzAZuAFqwEVud6glM62m%252Bi1P61OlOFOfXshk%252Bl4J%252B3VuYNP%252B4yPRZu15b7rYcPivWFtF%252Fruj9NSEkSbAlcgK8SAm2jf57zBI8NbErm6fEonRfLCzWCG6bOrpJdxpkTSiP%252B8g9NRh%252F57A%253D%253D&c=E,1,ehX7l3i86nD0zLj92CxsGsAAviTNYqa60BJbbTga6layRLn7uLHwZ2nSDnLmUTqXqo78PRsIAzlaL857C-NiSGoSnSkNyKH2aVUvSkPAVm-divHbIYJqaQ,,&typo=1>

145 works.  My direct is 203-368-5473 or we can do a dial in if more people plan to attend.

From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Monday, October 31, 2022 11:54 AM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Luft, Avi E.
<aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Kosciewicz, Jonathon P.
<jonathonkosciewicz@paulhastings.com<mailto:jonathonkosciewicz@paulhastings.com>>; Barron, Douglass E.
<douglassbarron@paulhastings.com<mailto:douglassbarron@paulhastings.com>>; Sutton, Ezra
<ezrasutton@paulhastings.com<mailto:ezrasutton@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>
Cc: Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments,
unless you recognize the sending email address and know the content is safe..
Aaron:

We are free 145-3 pm CT.

What works for you?

John

From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Monday, October 31, 2022 10:46 AM

3

I-3

To: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Kosciewicz, Jonathon P. <jonathonkosciewicz@paulhastings.com<mailto:jonathonkosciewicz@paulhastings.com>>; Barron, Douglass E. <douglassbarron@paulhastings.com<mailto:douglassbarron@paulhastings.com>>; Sutton, Ezra <ezrasutton@paulhastings.com<mailto:ezrasutton@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>
Cc: Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>; Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe
Please let me know when you have a few minutes to discuss your first point this afternoon.  I'm a little confused by it.
Thanks

From: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>
Sent: Friday, October 28, 2022 4:35 PM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Kosciewicz, Jonathon P. <jonathonkosciewicz@paulhastings.com<mailto:jonathonkosciewicz@paulhastings.com>>; Barron, Douglass E. <douglassbarron@paulhastings.com<mailto:douglassbarron@paulhastings.com>>; Sutton, Ezra <ezrasutton@paulhastings.com<mailto:ezrasutton@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>
Cc: Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>; Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..
Aaron & team –  thank you for your response.  I need to make three points in response to your email.


  1. Based upon your response and our other prior email correspondence with your team, we are planning to provide to the Trustee's counsel with the three sets of documents we have previously provided to you and received approval from your office to send to the Trustee's counsel.  These documents are (1) the Guo financial-related documents in Clark Hill's possession, (2) the pleadings and attachments filed under seal, and (3) the deposition transcripts and expert reports. Per your request, we are marking all these documents "Highly Confidential."  We are not marking them privileged because you have not identified any specific documents as privileged, and in any event as noted in my email the trustee now holds the privilege and the Consent Order imposes upon the trustee an obligation to protect the privilege (the Consent Order makes no distinction between documents marked or not marked as privileged), and thus we do not see the privilege issue to be one involving our client.  We understand you are out until Monday.  We will provide these to the Trustee's counsel on Monday after 1pm ET.

1. Per your email on October 14, 2022 (see below), we will withhold in the production to the Trustee two documents: (1) Mr. Kwok's asylum application (Clark_Hill_000058-159) and (2) the email and attached retention agreement for Victor Cerda (Clark_Hill_000718-722).

1. With respect to the two withheld documents, you are correct that you did not "direct" Clark Hill to do anything. But that is semantics – you "strongly objected" to the production of the asylum application. And we of course did not send you the documents for an advisory opinion; we sent them to you in your capacity as debtor's counsel so that you could state the debtor's position with respect to the documents being produced in accordance with the terms of the Consent Order entered by the Bankruptcy Court. I therefore requested an explanation in accordance with the terms of the Consent Order for the basis for objecting to our production of the documents. We would ask that you address this when you return on Monday.

Safe travels, Vince

From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Thursday, October 27, 2022 7:29 PM
To: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Kosciewicz, Jonathon P. <jonathonkosciewicz@paulhastings.com<mailto:jonathonkosciewicz@paulhastings.com>>; Barron, Douglass E. <douglassbarron@paulhastings.com<mailto:douglassbarron@paulhastings.com>>; Sutton, Ezra <ezrasutton@paulhastings.com<mailto:ezrasutton@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>
Cc: Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>; Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Subject: Re: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

I am traveling on business, as I believe you know. I have read your email quickly and I'm heading into a business dinner and do not plan on reading it again before tomorrow at the earliest. So take this for what it's worth, but to be very clear, neither I nor my client have directed you or your client to do anything.

Your client received a subpoena. Your firm asked me for an opinion. I gave it to you. Proceed as you see fit.

My client reserves all rights. I personally reserve all rights with respect to your characterization of positions I have conveyed (all of which have been through email).

Have a good night. We can discuss on Monday when I am back in the office if you like.

Aaron Romney
_____
From: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>
Sent: Thursday, October 27, 2022 7:13 PM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth

<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Luft, Avi E.
<aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Kosciewicz, Jonathon P.
<jonathonkosciewicz@paulhastings.com<mailto:jonathonkosciewicz@paulhastings.com>>; Barron, Douglass E.
<douglassbarron@paulhastings.com<mailto:douglassbarron@paulhastings.com>>; Sutton, Ezra
<ezrasutton@paulhastings.com<mailto:ezrasutton@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>
Cc: Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>; Storino, John R.
<JStorino@jenner.com<mailto:JStorino@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

Aaron et al – we are adding the trustee's counsel back to this email chain.


   1.  With respect to the debtor's asylum application:


1.    You have directed us to withhold the asylum application from the trustee, which you acknowledge is not privileged. Contrary to your assertion that the asylum application "has absolutely nothing to do with the debtor's estate," the core allegation of the debtor's complaint against Clark Hill is that the content of the asylum application was leaked and therefore damaged the debtor; one of Clark Hill's primary defenses is that the supposedly leaked information was voluntary put on the internet or otherwise publicly disclosed by the debtor.  Thus, the asylum application and the information from that asylum application that was supposedly leaked is fundamental to the Clark Hill litigation, and which is one of the Investigation Topics (as defined in the Consent Order).


2.    You assert that the Consent Order acknowledges that the asylum application did not relate to the administration of the estate.  However, that is not what the Consent Order provides:  "4. Nothing herein shall prevent the Debtor from asserting any and all privileges concerning legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application (other than documents related to the litigation styled as Guo Wengui v. Clark Hill, PLC, Case No. 19-cv-03195 (D. D.C.) that relate to the merits of the legal malpractice action, as distinguished from the merits of the Debtor's asylum application, subject to the balancing test incorporated herein, which does not relate to the substance of the asylum application). The Trustee and the Debtor reserve all rights with respect to any privileges claimed over such other matters."  (emphasis supplied).  As noted above, the information in the asylum application is related to and indeed fundamental to the Clark Hill litigation, and thus appears to fall within the bolded exception.


3.    Paragraph 7 of the Consent Order provides that "to the extent the Debtor believes in good faith that particular documents or information that are covered by a Trustee Privilege and that concern the Investigation Topics could result in personal harm to the Debtor if disclosed to the Trustee, then (i) the Debtor's counsel shall, within 10 days of the applicable production deadline, subject to the right to make a motion in good faith to the Court for a reasonable extension of time, log all such documents in accordance with the requirements of D. Conn. L. Civ. R. 26(e) and/or identify all such non-documentary information in a manner necessary to support the claim of privilege including with sufficient information to prima facie identify the basis for asserting the potential for personal harm."  (emphasis supplied).  You did not log any documents, nor did you seek an extension of time from the Court, presumably because you recognize that the debtor cannot satisfy the first of the two criteria (that the document be privileged).   We

I-6

therefore request that you provide a detailed explanation for the basis for withholding what you acknowledge is a non-privileged document that is central to an Investigation Topic.

   1.  With respect to the remaining documents, you requested that we mark all (or at least most) of them as privileged before delivering them to the trustee, without any analysis of whether any of those documents are actually privileged. Setting aside the issue of whether any of the documents are actually privileged, the Consent Order contains no provision requiring a respondent to mark documents as privileged – it simply imposes upon the trustee the obligation to protect any privilege and requires that "all filings by the Trustee containing or describing documents or information covered by a Trustee Privilege shall be filed under seal absent the Debtor's written consent or further order of the Court, and all filings by the Trustee containing or describing documents or information covered by a Trustee Privilege shall be filed under seal." Consent Order, par. 8.   Nor does it contain any mechanism for the Debtor to designate documents as privileged before being produced to the trustee.  We therefore request that you (i) provide a basis for the debtor to require that documents delivered to the trustee be marked as privileged, and (ii) assuming that there is a basis to require documents to be so marked (and we are not aware of any) to identify by bates number the specific documents that the debtor asserts are privileged.

Please provide a response as soon as possible.  Regards, Vince

From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Thursday, October 27, 2022 10:35 AM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: Re: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

The asylum application isn't technically privileged but it is a highly confidential document that has absolutely nothing to do with the debtor's estate.  My recollection is that the Trustee's counsel acknowledged that the asylum application did not relate to the administration of the estate during the negotiation of the privilege order (and the privilege order basically acknowledges as much).  We strongly object to the production of that application.

I have not personally reviewed any documents that you have produced, but I don't think that I need to for you to determine which documents should be marked privileged.  If a communication is between an attorney and its client/client's agents, or among attorneys that represent the client, including attorneys at the same firm, the document is privileged.  Work product is also privileged.  This concept is the same in this case as it is in every other.  The only difference is that the Trustee gets the document (he just can't share it with third parties if its marked privileged).

I don't see any of this as complicated but let me know if you want to discuss.

_____
From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Thursday, October 27, 2022 8:11 AM

To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments,
unless you recognize the sending email address and know the content is safe..


Aaron:


I am following up on our exchange below.  Two things:


   1.  What is the basis for withholding Mr. Guo's asylum application?  It was submitted to the immigration office several
years ago as part of his seeking asylum.  We don't see how it can be privileged.


   1.  Regarding your request that we mark every document privileged, we don't believe each one is privileged.  For
instance, you agreed the money orders are not privileged.  Please let us know which documents discussed below are
privileged and should be labeled as such.


Thanks,


John


From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Friday, October 14, 2022 3:31 PM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

It shouldn't be withheld from the Trustee because under the privilege order the Trustee gets the information as long as we don't contend that producing it would cause harm to the debtor.  Marking it privileged means the Trustee can't share it with third parties absent further court order or Mr. Kwok's consent.

I don't think that producing documents back to a client in litigation operates as a privilege waiver.  I do agree that money orders are not privileged and I haven't read the documents myself.  My point is that I think any communications that would have been privileged but for the Clark Hill/Kwok lit. and/or the Kwok BK should be marked privileged and produced to the Trustee.  That said, this relates to a subpoena served on Clark Hill and we have never purported to direct Clark Hill how to respond.

You asked for our view of the application of the Privilege Order to the documents you provided to us.  That is our view, but we are not directing Clark Hill how to respond other than to say that Mr. Kwok does not waive any privileges that he retained under the Privilege Order.

Feel free to give me a call if you have any questions or concerns.

Thanks-have a good weekend

From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Friday, October 14, 2022 4:20 PM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

Aaron:

If you want to send me some caselaw supporting that limited waiver position, I am happy to review it.  However, even under your "limited waiver" view, these materials are not privileged because almost all these materials were produced

in the underling litigation so they are related to the malpractice.  The money orders weren't produced in the litigation, but they aren't privileged.  More fundamentally, I don't think you want me turning over documents to the Trustee labeled as privileged.  Obviously, I am not giving you legal advice but if you think something is privileged, it should be withheld.


Let us know which documents you think are privileged.


Happy to discuss.


John


From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Friday, October 14, 2022 3:10 PM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External Email - Do Not Click Links or Attachments Unless You Know They Are Safe


I don't profess to be an expert on this issue so perhaps I'm wrong, but doesn't the assertion of malpractice only operate as a waiver of privilege with respect to information that is reasonably required to be disclosed (or is disclosed) in the course of the malpractice?  I did not think it operated as a general waiver?


From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Friday, October 14, 2022 4:03 PM
To: John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Aaron A. Romney
<aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

I-10

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

John:


Thanks for the response.  That all sounds okay with us with one exception – I don't think we can mark the documents privileged.  As a matter of law, once Guo sued Clark Hill, he waived his privilege with Clark Hill.  The documents may be confidential under the protective order, but they aren't privileged any more.


Please confirm that you are okay with us just marking them confidential.


Thanks,


John


From: John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>
Sent: Friday, October 14, 2022 2:58 PM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; Aaron A. Romney
<aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External Email - Do Not Click Links or Attachments Unless You Know They Are Safe


John,


Thank you for sending the documents to us to review. Please mark all documents as confidential and mark everything that is privileged (but not withheld) as privileged.

Please withhold the following: Mr. Kwok's asylum application (Clark_Hill_000058-159) and the email and attached retention agreement for Victor Cerda (Clark_Hill_000718-722).


Thank you.

John


John L. Cesaroni

203-368-5467

jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>


From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Tuesday, October 11, 2022 9:45 AM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Sandra Wenthen <swenthen@zeislaw.com<mailto:swenthen@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

Aaron – Thanks for the email below.  We will send it to John C right now.


From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Tuesday, October 11, 2022 8:44 AM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>; Sandra Wenthen <swenthen@zeislaw.com<mailto:swenthen@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>

Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

I can't access these files.  Please have someone on your end coordinate send the ftp link to John Cesaroni and he will follow up if he has any questions or issues.  John Is copied on this email

From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Monday, October 10, 2022 4:41 PM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

Aaron – thanks you for the quick response.  Let me know if you need the documents re-sent to you………………………….John

From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Monday, October 10, 2022 3:40 PM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: Re: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

I-13

I didn't see your email with the FTP link last week and I'm not in the office today.  I should be able to have someone look at them tomorrow.

_____

From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Monday, October 10, 2022 4:19 PM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

Aaron:

Thanks for signing the undertaking in the protective order last week.  We appreciate it.

As you know, on Thursday (10/6/22), we sent you the first set of documents responsive to the Trustee's subpoena. Please let me know if your client is asserting privilege over any of the documents we provided you last week.

Thanks,

John

From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Tuesday, October 4, 2022 10:35 AM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>

14

Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

I am heading to court.  I've asked someone to take a look at it.

From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Tuesday, October 4, 2022 11:32 AM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments,
unless you recognize the sending email address and know the content is safe..

Aaron:

Thanks.  it is a very straightforward protective order.  It shouldn't take more than 15 minutes to review.  We would really
like to get you these documents for review.

We haven't asked the Trustee to approve this process, but his counsel is obviously aware of it.

Thanks,

John

From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Tuesday, October 4, 2022 10:12 AM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

I have not yet looked at it.  I will ask someone over here to do so.

Has the Trustee's counsel agreed to this process?

From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Monday, October 3, 2022 12:32 PM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments,
unless you recognize the sending email address and know the content is safe..

Aaron:

Thanks for the response below.  Have you had a chance to look at the protective order?  In response to your question
below, some of the confidential information is Mr. Kwok's and some is from other parties.  As such, we believe you need
to agree to the protective order.  It is straightforward.

16

Once you sign off on the protective order, I can send you the first set of documents responsive to the subpoena.


Thanks,


John


From: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>
Sent: Friday, September 30, 2022 11:00 AM
To: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>; John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth <SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


External Email - Do Not Click Links or Attachments Unless You Know They Are Safe


I haven't had a chance to review the order yet and I probably won't get to it today, but I don't plan on sharing the documents with anyone outside my firm and/or potentially other professionals who the debtor has retained, and if documents are marked confidential, I won't file them on a public docket without seeking to do so under seal.  Does that work?


Also, so I understand, is the confidential information Mr. Kwok's confidential information or someone else's?  If it's Mr. Kwok's info, I'm obviously under a professional obligation to protect it irrespective of a protective order.


Has the Trustee's counsel signed off on you providing me with these documents for purposes of making privilege determinations under the order regarding privilege?


From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Friday, September 30, 2022 9:39 AM

To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: FW: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC
Importance: High


External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments,
unless you recognize the sending email address and know the content is safe..

Aaron and all:


I am following up on the email below and the attached cover letter.  Please confirm that you will adhere to the attached
protective order so we can move forward and send you the first set of documents responsive to the Trustee's subpoena
for your review per your request below.



Thanks,



John



From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Thursday, September 29, 2022 11:49 AM
To: Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>; John L. Cesaroni
<jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Eric Henzy
<ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>; Stephen Kindseth
<SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas
<nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E.
<VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C.
<MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC


Aaron:

Thanks for your email below.  In response, please see the attached cover letter and protective order.

As requested in the cover letter, please confirm that you will adhere to the protective order so we can move forward.

Thanks,

John

From: Aaron A. Romney aromney@zeislaw.com<mailto:aromney@zeislaw.com>
Sent: Friday, September 23, 2022 3:41 PM
To: Storino, John R. JStorino@jenner.com<mailto:JStorino@jenner.com>; John L. Cesaroni
jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>; Eric Henzy
ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>; Stephen Kindseth
SKindseth@zeislaw.com<mailto:SKindseth@zeislaw.com>
Cc: Luft, Avi E. aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>; Bassett, Nicholas
nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>; Lazar, Vincent E.
VLazar@jenner.com<mailto:VLazar@jenner.com>; Gonzalez, Maria C.
MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>
Subject: RE: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External Email - Do Not Click Links or Attachments Unless You Know They Are Safe

John:

Thank you for your email.  The Debtor asserts all privileges that he has, including all privileges that he ever had that did not transfer to the Trustee. In particular, the Debtor asserts privilege with respect to i) all privileged communications concerning his or his family's asylum applications, except those related to the litigation referred to below that relate to the merits of that legal malpractice action, as distinguished from the merits of the Debtor's asylum application, and ii) any privileged communications, the release of which is reasonably likely to cause harm to the debtor personally that would outweigh any resulting benefit to the Debtor's estate.

Particularly in light of the unique sensitivies of the documents over which Clark Hill has control, Z&Z, on the debtor's behalf, will agree to review any documents a) over which Clark Hill has control and b) with respect to which Clark Hill has questions concerning the Debtor's assertion of privilege, in order to help identify documents over which the debtor may, or may not, assert privilege, provided that the Trustee agrees to allow the Debtor/Z&Z a reasonable time to do so.

If the Trustee will not agree to allow the Debtor/Z&Z a reasonable time to do so, the Debtor, nonetheless, asserts any/all privileges that he has to assert with respect to any/all documents in Clark Hills possession, and asks that Clark Hill assert the same in accordance with the Rules of Professional Conduct, the FRCP and the court's order regarding privilege entered in the Debtor's bankruptcy case.

I am happy to discuss this further with you or anyone else on this email on Monday or next week.

Thanks again for reaching out and have a great weekend.

Aaron A. Romney, Esq.

Zeisler & Zeisler, P.C.

10 Middle Street, 15th Floor

Bridgeport, CT 06604

203-368-4234 (Firm)

203-368-5473 (Direct and E-fax)

From: Storino, John R. <JStorino@jenner.com<mailto:JStorino@jenner.com>>
Sent: Thursday, September 22, 2022 1:25 PM
To: John L. Cesaroni <jcesaroni@zeislaw.com<mailto:jcesaroni@zeislaw.com>>; Aaron A. Romney <aromney@zeislaw.com<mailto:aromney@zeislaw.com>>;
skindseth@skindseth@zeislaw.com<mailto:skindseth@skindseth@zeislaw.com>; Eric Henzy <ehenzy@zeislaw.com<mailto:ehenzy@zeislaw.com>>
Cc: Luft, Avi E. <aviluft@paulhastings.com<mailto:aviluft@paulhastings.com>>; Bassett, Nicholas <nicholasbassett@paulhastings.com<mailto:nicholasbassett@paulhastings.com>>; Lazar, Vincent E. <VLazar@jenner.com<mailto:VLazar@jenner.com>>; Gonzalez, Maria C. <MGonzalez@jenner.com<mailto:MGonzalez@jenner.com>>
Subject: In re Kwok (Bankr. D. Conn. Case. No. 22-50073) -- 2004 Exam Subpoena to Clark Hill PLC

External E-mail - CAUTION: This email originated from outside the Firm. Do NOT reply, click links or open attachments, unless you recognize the sending email address and know the content is safe..

I-20

Counsel:

I represent Clark Hill PLC in the U.S. District of Columbia litigation captioned Guo Wengui v. Clark Hill, PLC, Case No. 19-cv-03195 (D.D.C.) ("Clark Hill Litigation"). I understand that you are bankruptcy counsel to the plaintiff, who is the debtor in In re Kwok, Case. No. 22-50073 (Bankr. D. Conn.).

As you are likely aware, the chapter 11 trustee served Clark Hill with a subpoena requesting substantially all documents under its possession or control relating to the debtor or the Clark Hill Litigation.  We are aware that the Bankruptcy Court recently entered an order regarding control of the attorney-client privilege and work product protections related to the subpoenaed documents and information. (ECF 856).  As we understand it, that order in sum and substance provides that the Trustee controls the privilege as it relates to "Investigation Topics," but that the debtor controls the privilege with respect to matter unrelated to the Investigation Topics, specifically Guo's asylum application.

In connection with the Clark Hill Litigation, Clark Hill produced documents bates-labeled Clark_Hill_000001 – Clark_Hill_007835 to the debtor, and debtor produced to Clark Hill documents labeled Plaintiffs_First_Production_000001 – 000101, Plf.000102 – 000416 (Videos), Dutta 00001 – 00105, Columbia 00001 – 00071, Goldsmith 001 – 052, and Shook 001 – 008.  Together with the court pleadings and other documents filed with the court in the Clark Hill Litigation, we believe that these documents comprise the universe of documents that are responsive to the subpoena.

We request that you consult with your client and advise at your earliest convenience whether your client is asserting a privilege over any of these documents, and if so the basis for his assertion in accordance with the Bankruptcy Court's order.  If you do not already have access to these documents from the debtor's counsel in the Clark Hill Litigation, we can provide a link to upload the document productions.

Please feel free to contact me by email or phone if you have any questions.

Sincerely,

John R. Storino

cc:      Avi Luft, Esq.

          Nicholas Bassett, Esq.

I-21

_____

John R. Storino

Jenner & Block LLP
353 N. Clark Street, Chicago, IL 60654-3456  |
https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fjenner.com&c=E,1,rlN-
aWXONyTU4ylYAVcMuBq9_fKrzE_2D3J9HXpLStDf2l7LVgrkkc_VWjDnFFkL66aesVMTaW9KYAIYiBumpBm7ao6Yqk2tU0Ni
CirVYQQcim67pGOP&typo=1<https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.jenner.com&c=E,1,nIq-
0r8PinAQ_n3fLPBNSv5M1aMrFDRPr6lJL1xJOGDj7sc1HFCOYG5Y-yRVsj4f0CoLx2j4GZPTkK1efcDxNpgZ8LW2eS1AGLvAuK-
wt6Fsxgk0stG9zuA,&typo=1>
+1 312 840 8683 | TEL
+1 312 316 6151 | MOBILE
+1 312 840 8783 | FAX
JStorino@jenner.com<mailto:JStorino@jenner.com>
Download V-
Card<https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fsvcs.jenner.com%2fJBvCard%2fvcardhandler%2fgetcardby
pid%2f69292&c=E,1,Ny8Bz-QaQn1-CRti86mN5gTledUh2KlIjuDxL651ijhQOWpBwImUhS6KLMClYBft31Vnmyq5p-
_5MdBLv1fa54k2NvreND2m5utsFISssllNjFM,&typo=1>  |  View
Biography<https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.jenner.com%2fpeople%2fJohnStorino&c=E,1,h
mbinBoiOo9XQM398iWXF2RBzOfP5vvu8EA_IylpKRiZbAOEda5j7BwmXF-
qMWpsMFGqXK9cTwTORzXX0aq2oLyJsHRAWClPhboNXkNXe8_icg,,&typo=1>

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

_____

**********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received
this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
If you reply to this message, Paul Hastings may collect personal information including your name, business name
and other contact details, and IP address.  For more information about Paul Hastingsâ    information collection, privacy
and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

**<u>Exhibit J</u>**



1 (212) 318-6079
aviluft@paulhastings.com

October 19, 2022

**VIA EMAIL**

Ari S. Casper
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(c) 443-691-9488
(p) 410-989-5097
www.casperfirm.com

       **Re:**    *In re Ho Wan Kwok*, Case No. 22-50073 (JAM) (Bankr. D. Conn.)

Dear Ari:

I write to you in my capacity as counsel to Luc A. Despins, the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Mr. Ho Wan Kwok (the "Debtor"), to make one final attempt before seeking the assistance of the bankruptcy court, to again request that you cease exercising control over *Wengui v. Clark Hill PLC*, 1:19-cv-03195-JEB (D.D.C.) (the "Clark Hill Litigation") through your refusal to allow the Trustee to gain access to the relevant pleading and documents in that case.

As you know from our prior communications, and the communication you received from the Debtor's counsel, the Trustee owns and controls the Clark Hill Litigation. The Trustee is now a party to the Clark Hill Litigation pursuant to Rule 2012 of the Federal Rules of Bankruptcy Procedure, and has also agreed to abide by the protective order entered in the Clark Hill Litigation. *See* Stipulated Protective Order, *Wengui v. Clark Hill PLC*, 1:19-cv-03195-JEB (D.D.C. May 26, 2020) [Docket No. 23] (the "Protective Order"). As such, there is no basis for your repeated objection in the name of the Debtor (who notably has not asked you to assert any such objection) to the Trustee receiving all pleadings, motions and evidence related to the Clark Hill Litigation. In particular, the Trustee has repeatedly requested access to the defendant's summary judgment motion, and motion to exclude the Debtor's expert reports, as well as the underlying deposition testimony and expert reports. It is critical that the Trustee review and analyze the requested pleadings, testimony and reports, so as to be able to assess and manage the case properly.

As you have been continually informed, your objections denying the Trustee the right to access the requested pleadings and discovery constitutes an assertion of control over the Clark Hill Litigation, an asset of the Debtor's estate.  This is a direct violation of the automatic stay pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code"), and is subject to sanctions and damages under the Bankruptcy Code.

If you do not withdraw your unauthorized objection, we will be forced to make a motion before the bankruptcy court for your violation of the automatic stay and will seek contempt sanctions. Please let me know by close of business today if you will withdraw your objection, or if the Trustee will need to file his motion. I sincerely hope it will not have to come to that.

PAUL
HASTINGS

October 19, 2022
Page 2

Best regards,


*/s/ Avram E. Luft*
Avram E. Luft
Counsel to the Chapter 11 Trustee

**Exhibit K**

| | |
|---|---|
| **From:** | Luft, Avi E. |
| **To:** | Kosciewicz, Jonathon P.; Sutton, Ezra; Catalano, Kristin |
| **Cc:** | Bassett, Nicholas |
| **Subject:** | Fwd: [EXT] In re Ho Wan Kwok / Trustee"s Request for Documents |
| **Date:** | Wednesday, October 19, 2022 9:05:52 PM |



**Avi E. Luft** | **Of Counsel** | **Financial Restructuring Group**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6079 |
Main: +1.212.318.6000 | Fax: +1.212.303.7079 | email | www.paulhastings.com

Begin forwarded message:

> **From:** "Leibowitz, Gary" <GLeibowitz@coleschotz.com>
> **Date:** October 19, 2022 at 8:37:41 PM EDT
> **To:** JStorino@jenner.com
> **Cc:** "Luft, Avi E." <aviluft@paulhastings.com>, "Despins, Luc A." <lucdespins@paulhastings.com>
> **Subject: [EXT] In re Ho Wan Kwok / Trustee's Request for Documents**

John:

Nice to meet you.  Please be advised that Cole Schotz was retained by the Casper Firm to represent it with regard to the Trustee's demand for documents in the above-referenced matter.

On behalf of the Casper Firm, and in light of the Trustee's execution of the Protective Order, I am sending this email to expressly withdraw the Casper Firm's prior opposition to the production of filings requested by Luc Despins, Trustee, by your firm.  For the avoidance of doubt, the Casper Firm no longer takes a position with respect to your firm's desire to produce the documents, and I have advised Avi Luft, counsel for the Trustee (who is copied here) of same.  I only ask that you advise me when the documents are provided to Mr. Luft so I can remain apprised of the situation.

This email is without prejudice to the Casper Firm's right, remedies and defenses, all of which are expressly reserved. Don't hesitate to call me if you have any questions.

Regards,



**Gary H. Leibowitz**
**Member**
300 E. Lombard Street | Suite 1800 | Baltimore, MD | 21202
Direct 410.528.2971 | Firm 410.230.0660 | Fax 410.528.9401 | Cell 410.258.8945 | gleibowitz@coleschotz.com
New Jersey    |    New York    |    Delaware    |    Maryland    |    Texas    |    Florida
vCard    |    bio    |    website

Legal Practice Assistant: Joelene A. Novak | 201.489.3000 x 2871 | jnovak@coleschotz.com

* * * * * *
This e-mail message from Cole Schotz P.C. is private and may contain privileged information. If you are not the intended recipient, please do not read, copy or use it or disclose it to others. If you have received this message in error, please notify the sender immediately by replying to this message and then delete it from your system.