# EXHIBIT A

Prepared by the USCIS Asylum Division
Date: October 18, 2012

## Fact Sheet: Federal Regulation Protecting the Confidentiality of Asylum Applicants

### Synopsis

The federal regulation at 8 CFR 208.6 generally prohibit the disclosure to third parties of information contained in or pertaining to asylum applications, credible fear determinations, and reasonable fear determinations—including information contained in RAPS or APSS[1]—except under certain limited circumstances. This regulation safeguards information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin. Moreover, public disclosure might, albeit in rare circumstances[2], give rise to a plausible protection claim where one would not otherwise exist by bringing an otherwise ineligible claimant to the attention of the government authority or non-state actor against which the claimant has made allegations of mistreatment.

According to established guidance, confidentiality is breached when information contained in or pertaining to an asylum application (including information contained in RAPS or APSS) is disclosed to a third party in violation of the regulation, and the unauthorized disclosure is of a nature that allows the third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum. The same principles generally govern the disclosure of information related to credible fear and reasonable fear determinations, as well as to applications for withholding or deferral of removal under Article 3 of the Convention Against Torture, which are included in the asylum application.

In the absence of the asylum applicant's written consent or the Secretary of Homeland Security's[3] specific authorization, disclosure may be made only to United States government officials or contractors and United States federal or state courts on a need to know basis related to certain administrative, law enforcement, and civil actions. In some instances, interagency arrangements have been established to facilitate the proper disclosure of asylum-related information to United States agencies pursuant to the regulation. The release of information relating to an asylum application, credible fear determination, or reasonable fear determination to an official of another government or to any entity for purposes not specifically authorized by the

---

[1] RAPS is the system for maintenance of records concerning aliens who affirmatively seek asylum by applying for the benefit with USCIS. APSS is the system for maintenance of records concerning aliens referred to a USCIS asylum officer for a credible fear or reasonable fear screening determination after having expressed a fear of return to the intended country of removal because of persecution or torture during the expedited removal process under INA sec. 235(b) or administrative removal processes under INA sec. 238(b) or INA sec. 241(a)(5).

[2] Public disclosure alone will rarely be sufficient to establish *sur place* protection claims under U.S. asylum laws. The applicant would have to establish, in light of this disclosure, that he or she has a well-founded fear of persecution on account of one of the protected grounds.

[3] By operation of section 1512(d) of the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, 2310, the Attorney General's authority under 8 C.F.R. § 208.6(a) to authorize disclosure of confidential asylum information held by the former Immigration and Naturalization Service (INS)—and now held by the Department of Homeland Security (DHS)—was transferred to the Secretary of DHS.

1

Prepared by the USCIS Asylum Division
Date: October 18, 2012

regulation without the written consent of the claimant requires the express permission of the Secretary of Homeland Security.

**Code of Federal Regulations, Title 8**
Sec. 208.6 *Disclosure to third parties.*

(a) Information contained in or pertaining to any asylum application, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General [now the Secretary of DHS].

(b) The confidentiality of other records kept by the [Immigration and Naturalization] Service [now DHS] and the Executive Office for Immigration Review that indicate that a specific alien has applied for asylum, received a credible fear or reasonable fear interview, or received a credible fear or reasonable fear review shall also be protected from disclosure. The Service [now DHS] will coordinate with the Department of State to ensure that the confidentiality of those records is maintained if they are transmitted to Department of State offices in other countries.

(c) This section shall not apply to any disclosure to:

(1) Any United States Government official or contractor having a need to examine information in connection with:

(i) The adjudication of asylum applications;

(ii) The consideration of a request for a credible fear or reasonable fear interview, or a credible fear or reasonable fear review;

(iii) The defense of any legal action arising from the adjudication of, or failure to adjudicate, the asylum application, or from a credible fear determination or reasonable fear determination under § 208.30 or § 208.31;

(iv) The defense of any legal action of which the asylum application, credible fear determination, or reasonable fear determination is a part; or

(v) Any United States Government investigation concerning any criminal or civil matter; or

(2) Any Federal, State, or local court in the United States considering any legal action:

(i) Arising from the adjudication of, or failure to adjudicate, the asylum application, or from a credible fear or reasonable fear determination under § 208.30 or § 208.31; or

(ii) Arising from the proceedings of which the asylum application, credible fear determination, or reasonable fear determination is a part.

**Frequently Asked Questions**

1. **Q: Why does the regulation protect asylum-related information from disclosure?**

   A: Public disclosure of asylum-related information may subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin. Moreover, public disclosure might, albeit in some limited circumstances, give rise to a plausible protection claim where one would not otherwise exist by bringing an otherwise ineligible claimant to the attention of the government authority or non-state actor against which the claimant has made allegations of mistreatment. Because refugee applicants face similar negative consequences when their information is disclosed to

2

Prepared by the USCIS Asylum Division
Date: October 18, 2012

a third party, as a matter of policy, USCIS extends the same protections outlined in 8 CFR 208.6 to refugees.

2. **Q: Under what specific circumstances can asylum-related information be disclosed to third parties?**

   **A:** In general, asylum-related information must not be shared with third parties without the asylum applicant's written consent or the Secretary of Homeland Security's specific authorization. However, this general prohibition does not apply to the following limited circumstances as established by the regulation at 8 CFR 208.6:
   (1) Any United States Government official or contractor having a need to examine information in connection with:
   (i) The adjudication of asylum applications;
   (ii) The consideration of a request for a credible fear or reasonable fear interview, or a credible fear or reasonable fear review;
   (iii) The defense of any legal action arising from the adjudication of, or failure to adjudicate, the asylum application, or from a credible fear determination or reasonable fear determination under § 208.30 or § 208.31;
   (iv) The defense of any legal action of which the asylum application, credible fear determination, or reasonable fear determination is a part; or
   (v) Any United States Government investigation concerning any criminal or civil matter; or
   (2) Any Federal, State, or local court in the United States considering any legal action:
   (i) Arising from the adjudication of, or failure to adjudicate, the asylum application, or from a credible fear or reasonable fear determination under § 208.30 or § 208.31; or
   (ii) Arising from the proceedings of which the asylum application, credible fear determination, or reasonable fear determination is a part."

3. **Q: To what extent may asylum-related information be disclosed to personnel within the Department of Homeland Security (DHS), such as Immigration and Customs Enforcement (ICE) or Customs and Border Protection (CBP) personnel?**

   **A:** Asylum-related information may be disclosed to ICE and CBP personnel, as they are not considered "third parties" for the purposes of 8 CFR 208.6. Protected asylum-related information may also be disclosed to offices within the direct policy and legal chains of command of DHS, such as DHS Office of General Counsel, the Office of the Undersecretary for Border and Transportation Security (BTS), the Office of the Deputy Secretary, and the Office of the Secretary.

4. **Q: If none of the regulatory exceptions applies, what information about an asylum applicant, if any, may be shared with third parties without breaching confidentiality?**

   **A:** According to established guidance, confidentiality is breached when information contained in or pertaining to an asylum application is disclosed to a third party in violation of the regulation, and the unauthorized disclosure is of a nature that allows the third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2)

3

Prepared by the USCIS Asylum Division
Date: October 18, 2012

specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum. The same principles govern the disclosure of information related to credible fear and reasonable fear determinations. They also generally apply to applications for withholding or deferral of removal under Article 3 of the Convention Against Torture, which are included in the asylum application.

5. **Q: Under the regulation's exceptions, can asylum-related information be disclosed to state law enforcement agencies or other state agencies?**

   A: No. The confidentiality regulation does not allow disclosure of asylum-related information to state agencies, including state law enforcement agencies, except with the asylum applicant's written consent or the Secretary of Homeland Security's specific authorization. The regulation at 208.6(c)(2) do, however, allow for disclosure to state or local courts under certain circumstances.

6. **Q: Under the regulation, how can a United States Government official or contractor, who is seeking asylum-related information and to whom asylum-related information may be disclosed, obtain that information from the United States Citizenship and Immigration Services (USCIS)?**

   A: Unless there is a pre-existing interagency arrangement or protocol, government officials or contractors should request asylum-related information about specific aliens directly from the appropriate USCIS Asylum Office Director with jurisdiction over the alien's application. Requests for asylum-related information concerning groups of aliens that match certain identified criteria must be made to the Chief of the Asylum Division of USCIS by the appropriate official in the requesting agency.

7. **Q: If asylum-related information is properly disclosed to a third party pursuant to the regulation, what is the third party's obligation with respect to confidentiality?**

   A: As the new custodian of the asylum-related information, the third-party recipient is bound by the confidentiality regulation under 8 CFR 208.6. The recipient must not disclose the asylum-related information to other parties, except as authorized by the regulation.

8. **Q: What are the obligations of U.S. government officials or contractors who work with or are responsible for maintaining asylum-related information in U.S. government systems?**

   A: U.S. government officials or contractors who encounter asylum-related information in their work are bound by the confidentiality regulation under 8 CFR 208.6. These personnel must not disclose the asylum-related information to third parties, except as authorized by the regulation. When making an authorized disclosure of asylum-related information to a third party, these personnel should alert the third party to the confidentiality requirements of 8 CFR 208.6.

Prepared by the USCIS Asylum Division
Date: October 18, 2012

9. **Q: Are non-USCIS custodians of asylum-related information required to obtain authorization from USCIS before disclosing the asylum-related information to another party pursuant to the regulation?**

    A: No. However, the transmitter of information should take reasonable steps to ensure that the new recipient of information is aware of the confidentiality rules described in this document to prevent unauthorized disclosure by the new recipient. The transmitter may want to provide the new recipient with a copy of this document for that purpose.

10. **Q: Is there an interagency arrangement between members of the Intelligence Community and agencies with counterterrorism functions and USCIS concerning the disclosure of asylum-related information?**

    A: On October 8, 2001, the Attorney General used his discretionary authority under 8 CFR 208.6 to provide the FBI access to asylum applications filed with USCIS for the purpose of gathering foreign counterintelligence or international terrorism information unrelated to pending criminal or civil litigation. This arrangement was superseded in an April 18, 2007, memorandum whereby Secretary of Homeland Security Chertoff exercised his authority under 8 CFR 208.6 to allow disclosure of asylum-related information to any element of the U.S. Intelligence Community or any other federal or state agency having a counterterrorism function, provided that the need to examine the information or the request is made in connection with its authorized intelligence or counterterrorism function or functions and that the information received will be used for the authorized purpose for which it was requested. On August 25, 2011, Secretary Napolitano signed an addendum to the 2007 Memorandum. The addendum expands sharing of asylum-related information to include sharing with any local government agency having a counterterrorism function.

    In general, requests for disclosure of asylum-related information shall be made to the DHS Office of Intelligence and Analysis Support Branch (IASB) using the DHS Support Request Form. Requests for asylum information must include a detailed justification directly linking the request to an authorized intelligence or counterterrorism function, as IASB is required to validate requests with the offices of Privacy, Intelligence Oversight, and the General Counsel. The request for asylum information must be approved by an individual with supervisory command from the requesting office.

    If the request for disclosure, or pre-emptive disclosure if no request is made, occurs in accordance with the terms and conditions of any applicable standing information-sharing arrangements between DHS and the recipient, disclosure may be made without using the DHS Support Request Form.

11. **Q: Can members of the Intelligence Community and agencies with counterterrorism functions that receive asylum-related information further disseminate it?**

    A: Under certain limited circumstances, an element of the Intelligence Community or other federal, state or local governmental agency having a counterterrorism function that received asylum or refugee-related information may further disseminate that information, but such

5

Prepared by the USCIS Asylum Division
Date: October 18, 2012

further disclosure must be authorized by the Secretary, Deputy Secretary or the Under Secretary for Intelligence and Analysis acting in coordination with the Director, USCIS, the Assistant Secretary, ICE or any other DHS official to whom disclosure authority under section 208.6(a) has been delegated.

**12. Q: Are there any other interagency arrangements?**

**A:** Yes. In 2002, the Attorney General authorized the Asylum Division to disclose to the Office of Refugee Resettlement (ORR) of the Department of Health and Human Services (HHS) biographical information on individuals granted asylum to enable ORR to meet congressional reporting requirements and generate statistical reports used to allocate funding for asylee social benefits. In 2001 the Attorney General authorized the Asylum Division to disclose to HHS certain biographical information on asylees to enable ORR and the Center for Disease Control (CDC) to provide emergency relief to qualified asylees.

**13. Q: Can asylum-related information be shared with foreign governments or international organizations (such as INTERPOL)?**

**A:** Asylum-related information cannot be shared with foreign governments or international organizations without the written consent of the asylum applicant, except at the discretion of the Secretary of Homeland Security. Secretary Napolitano has exercised her discretion to permit regular sharing of asylum-related information with Canada, Australia, the United Kingdom, and New Zealand. Secretary Ridge initially allowed the sharing of asylum-related information with Canada in 2003. The arrangement with Canada is in the form of a *Statement of Mutual Understanding on Information Sharing* (SMU) and an Asylum Annex to the SMU, which together permit Canada's Department of Citizenship and Immigration Canada (CIC) and USCIS to exchange asylum-related records on both a case-by-case and systematic basis.

Since the signing of the Asylum Annex to the Statement of Mutual Understanding on Information Sharing between the U.S. and Canada in 2003, USCIS and CIC have engaged in a regular exchange of information on asylum claims on a case-by-case basis. More recently, the USCIS Asylum Division has worked with US-VISIT on sharing information relating to refugee claimants as defined in the agreement under the Five Country Conference (FCC) High Value Data Sharing Protocol (Protocol). Beginning in 2010, the Asylum Division commenced information sharing under the FCC Protocol with Canada, Australia, and the United Kingdom. The Asylum Division commenced information sharing under the FCC Protocol with New Zealand in 2011.

**14. Q: Why are there special information-sharing agreements with Canada, Australia, the United Kingdom, and New Zealand?**

**A:** Sharing information on asylum seekers was included as an initiative in the agreement signed by former Attorney General Ashcroft and former Canadian Minister of Citizenship and Immigration Caplan on December 2, 2001. It was also one of the thirty initiatives included in the Ridge-Manley Smart Border Action Plan. In furtherance of this initiative, the

6

Prepared by the USCIS Asylum Division
Date: October 18, 2012

United States and Canadian governments entered into a formal arrangement in 2003 that permits USCIS and CIC to systematically share information on individuals seeking asylum in the U.S. or Canada. The subsequent information-sharing agreements with Canada, Australia, the United Kingdom, and New Zealand through the Five Country Conference (FCC) High Value Data Sharing Protocol (Protocol) further strengthen USCIS's capacity to acquire information relevant to asylum adjudications. By gaining access to this key information, USCIS and the immigration authorities in Canada, Australia, the United Kingdom, and New Zealand will enhance their abilities to prevent abuse of the asylum process in their respective countries and to make accurate asylum eligibility determinations, thereby strengthening the integrity of each country's asylum system.

15. **Q: What is the status of the implementation of the information-sharing arrangement with Canada?**

    **A:** USCIS and CIC have been sharing information on asylum seekers on a case-by-case basis since 2003. As of 2010, the USCIS Asylum Division has also worked with US-VISIT to share asylum-related information with Canada under the Five Country Conference (FCC) High Value Data Sharing Protocol (Protocol). The 2011 Beyond the Border agreement between the United States and Canada includes an action plan for enhanced information sharing between the two countries. USCIS and CIC and their technical specialists are working together to develop a fully automated systematic sharing of information to cover all asylum claimants who are subject to biometric collection requirements by 2014.

16. **Q: May protected asylum-related information be shared with congressional offices?**

    **A:** If the Chairman of a congressional committee with competent jurisdiction submits a written request for protected asylum-related information, the requested information will generally be provided without regard to the regulation. Written requests for asylum-related information by individual Members of Congress or their respective staff members will be considered on a case-by-case basis.

17. **Q: What information can be shared with the press when the applicant has gone public with the asylum claim?**

    **A:** Because the regulation currently requires the applicant's written consent, we generally do not recognize implicit waivers of confidentiality, even when the asylum-related information is a matter of public record.

18. **Q: Does 8 CFR 208.6 apply to refugee information?**

    **A:** As a matter of policy, USCIS extends the same protections outlined in 8 CFR 208.6 to refugees.

If you have any questions regarding these policies, please contact the Asylum Division's Operations Branch Chief at 202.272.1651.

7