UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                         *   Case No. 22-50073 (JAM)
                              *
    HO WAN KWOK and GENEVER   *
     HOLDINGS CORPORATION,    *
                              *
            Debtor.           *


    GENEVER HOLDINGS, LLC,    *   Case No. 22-50592 (JAM)
                              *
            Debtor.           *   Bridgeport, Connecticut
                              *   November 16, 2022
   * * * * * * * * * * * * * * *

     TRANSCRIPT OF MOTION FOR JOINT ADMINISTRATION WITH
     22-50073; MOTION FOR ORDER (I) SETTING BAR DATES FOR
   FILING PROOFS OF CLAIM; (ii) APPROVING FORM OF NOTICE
      OF BAR DATES and (iii) GRANTING RELATED RELIEF;
     MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER
  HOLDING DEBTOR IN CIVIL CONTEMPT FOR FAILURE TO COMPLY
     WITH CORPORATE GOVERNANCE RIGHTS; APPLICATION
   TO EMPLOY NEUBERT, PEPE & MONTEITH and MOTION FOR JOINT
            ADMINISTRATION WITH 22-50592
       BEFORE THE HONORABLE JULIE A. MANNING
          UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                ERIC A. HENZY, ESQ.
                               Zeisler & Zeisler, P.C.
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604


For the Creditor, Pacific      ANNECCA SMITH, ESQ.
 Alliance Asia Opportunity     Robinson & Cole
 Fund L.P.:                    28 Trumbull Street
                               Hartford, CT  06103

                               STUART SARNOFF, ESQ.
                               O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES: (Cont'd.)

For the Chapter 11          PATRICK R. LINSEY, ESQ.
 Trustee and Genever,      DOUGLAS SKALKA, ESQ.
 BVI and Genever U.S.:     Neubert Pepe & Monteith, PC
                           195 Church Street
                           New Haven, CT  06510


For the Chapter 11 Trustee:  NICHOLAS A. BASSETT, ESQ.
                           DOUGLAS BARRON, ESQ.
                           WILL CLARK FARMER, ESQ.
                           G. ALEXANDER BONGARTZ, ESQ.
                           Paul Hastings LLP
                           200 Park Avenue
                           New York, NY  10166


Chapter 11 Trustee:        LUC A. DESPINS, ESQ.
                           Paul Hastings LLP
                           200 Park Avenue
                           New York, NY  10166


For the U.S. Trustee:      HOLLEY L. CLAIBORN, ESQ.
                           Office of the United States
                              Trustee
                           The Giaimo Federal Building
                           150 Court Street, Room 302
                           New Haven, CT  06510


For the Creditors Committee:  JONATHAN KAPLAN, ESQ.
                           Pullman & Comley
                           850 Main Street
                           Bridgeport, CT  06601


For Logan Cheng, Creditor:  JAY MARSHALL WOLMAN, ESQ.
                           Randazza Legal Group, PLLC
                           100 Pearl Street
                           Hartford, CT  06103


For Melanie Siganowsky:    MICHAEL PANTZER, ESQ.
                           Otterbourg, P.C.
                           230 Park Avenue
                           New York, NY  10169
```

1          (Proceedings commenced at 1:04 p.m.)

2               THE COURTROOM DEPUTY:  Case no. 22-50592, Genever

3     Holdings LLC and case no. 22-50073, Ho Wan Kwok and Genever

4     Holdings Corporation.

5               THE COURT:  Good afternoon.  If we could have

6     appearances for the record, starting with the Chapter 11

7     Trustee, please?

8               MR. DESPINS:  Good afternoon, Your Honor.  Luc

9     Despins, Chapter 11 Trustee.

10               THE COURT:  Good afternoon.

11               MR. BASSETT:  Good afternoon, Your Honor.  Nick

12     Bassett from Paul Hastings on behalf of the Chapter 11

13     Trustee.

14               THE COURT:  Good afternoon.

15               MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

16     Sarnoff, O'Melveny & Myers, on behalf of creditor, Pacific

17     Alliance, or PAX.

18               MR. LINSEY:  Your Honor, I just -- quickly, Your

19     Honor.  Patrick Linsey for the Chapter 11 Trustee.  Also

20     with me is Doug Skalka, and we're also appearing on behalf

21     of Genever BVI and Genever U.S.

22               THE COURT:  Good afternoon.

23               MS. SMITH:  Good afternoon, Your Honor.  Annecca

24     Smith of Robinson and Cole, also here on behalf of creditor,

25     Pacific Alliance.

1              THE COURT:  Good afternoon.  Attorney Claiborn?

2              MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

3      Claiborn for the U.S. Trustee.

4              THE COURT:  Good afternoon.

5              MR. KAPLAN:  Jonathan Kaplan on behalf of the

6      Committee of Unsecured Creditors.

7              THE COURT:  Good afternoon.

8              MR. WOLMAN:  Good afternoon, Your Honor.  Jay

9      Wolman for creditor, Logan Cheng.

10             THE COURT:  Good afternoon.  Go ahead, Attorney

11     Henzy.  I'm sorry.  I think I cut you off when you were

12     about to speak.

13             MR. HENZY:  I was just going to say, Your Honor,

14     Eric Henzy, of Zeisler & Zeisler, for the debtor, Ho Wan

15     Kwok.

16             THE COURT:  Good afternoon.

17             MR. HENZY:  Good afternoon, Your Honor.

18             THE INTERPRETER:  Good afternoon, Your Honor.  I'm

19     the Mandarin interpreter.

20             THE COURT:  Oh, good afternoon.  Could you just

21     state your name for the record, please?

22             THE INTERPRETER:  Yes.  My name is Shi Seng.

23             THE COURT:  Could you spell that for the record as

24     well, please?

25             THE INTERPRETER:  Of course.  First name S-H-I.

1    Last name S-E-N-G.

2                THE COURT:  Thank you.  And I see other people

3    that are on the line that have not noticed -- have not

4    stated their appearance.  Mr. Barron.

5                MR. BARRON:  Your Honor, thank you.  My name is

6    Douglas Barron and I'm with Paul Hastings representing the

7    Chapter 11 Trustee.  Thank you so much.

8                THE COURT:  Good afternoon.  Mr. Pantzer?

9                MR. PANTZER:  Good afternoon, Your Honor.  Michael

10   Pantzer with the law firm of Otterbourg P.C.  I'm appearing

11   on behalf of Melanie Siganowsky as the sales officer of

12   Genever USA.  I apologize that Ms. Siganowsky had a conflict

13   this afternoon and is not able to attend.  I'm here if you

14   just have any questions for her, or if you'd like her to

15   appear at future hearings.

16               THE COURT:  Okay.  Thank you.  And I think you

17   just need to -- Mr. Pantzer, do you -- are you admitted in

18   the District of Connecticut so that you can file a notice of

19   appearance?

20               MR. PANTZER:  No, I'm not.  Otterbourg is not

21   retained by the estate.  Melanie was appointed sales officer

22   pursuant to a settlement agreement.  Otterbourg has been

23   assisting her with the sales process, but I am not admitted

24   in Connecticut.

25               THE COURT:  Okay.  Well, then I'm just going to

1    let you listen today, then, I think.  Okay?

2              MR. PANTZER:  Yes.

3              THE COURT:  And I don't think I will have any

4    questions of you today.  Thank you.

5              MR. PANTZER:  Thank you, Your Honor.

6              THE INTERPRETER:  Your Honor, this is the

7    interpreter speaking.  May I ask how you wish us to proceed?

8    For Zoom, I can only do this consecutively.

9              THE COURT:  Well, I'm not sure how we're

10   proceeding yet, so I will ask you to hold that thought until

11   we see what's happening with the Chapter 11 Trustee on how

12   he proposes to proceed.  Okay?  I don't --

13             THE INTERPRETER:  Okay.  That's okay.

14             THE COURT:  -- I don't -- thank you very much.

15             THE INTERPRETER:  Well, let me know, so I will

16   stand by and remain silent.

17             THE COURT:  Thank you so much.

18             MR. DESPINS:  Actually I -- just to save money and

19   time, I -- with me -- prior arrangements that have been

20   made, but Mr. Bassett, I'm sorry to put you on the spot, but

21   do we need the Mandarin interpreter at this time?

22             MR. BASSETT:  I don't think we are going to need

23   the Mandarin interpreter today.  Mr. Despins will -- and Mr.

24   Henzy, I imagine, will explain to Your Honor why in a few

25   moments, but I -- we originally had the Mandarin interpreter

1     lined up for today to interpret witness testimony.

2            That is no longer anticipated to happen today, but

3     this is all late breaking developments, so we weren't able

4     to relay all that information to the interpreter prior to

5     her appearing at the hearing this afternoon.  So I do think,

6     unless somebody disagrees with me, I think she could be

7     excused.

8            MR. HENZY:  Your Honor, I apologize, Your Honor.

9            THE COURT:  No, you go ahead, Attorney Henzy.

10           MR. HENZY:  I agree with Mr. Bassett, Your Honor.

11           THE COURT:  Okay.  Thank you.  Now, what about or

12    tomorrow's purposes?

13           Now, again, I know that Trustee Despins, and

14    Attorney Bassett, Attorney Henzy, you're going to explain

15    some things to me, I assume, in connection with a pleading

16    that was filed last night at 10:45 or something about that

17    time.  But I want to make sure, are we anticipating that we

18    would need the mandarin interpreter for tomorrow, because I

19    would like her to know for sure whether she needs to be

20    available tomorrow.

21           MR. DESPINS:  Your Honor, Luc Despins, Trsutee.

22    It would be presumptuous of me to address that or -- because

23    it really depends on how things go today, so --

24           THE COURT:  Okay.

25           MR. DESPINS:  -- I don't think so, but I can't --

1   we don't -- we don't know, because that assumes that Your

2   Honor would do certain things that you probably don't know

3   anything about at this point, so --

4          THE COURT:  Okay.  I think that's fair.  Then --

5   I'm sorry, Attorney Henzy.  Go ahead.

6          MR. HENZY:  And, Your Honor for the record,

7   believe it or not, I agree with Mr. Despins on what he just

8   said.

9          THE COURT:  Okay.  Well, thank you.  I appreciate

10  that.  So then, I would just ask the Mandarin interpreter,

11  you can be excused for this afternoon.  You might need to be

12  available tomorrow, and maybe your cat will join you.  But

13  in any event --

14         THE INTERPRETER:  So sorry.  I'm so sorry.

15         THE COURT:  No, that's okay.  We're all working

16  remotely today, so those things happen.

17         THE INTERPRETER:  Your Honor, I am so sorry, but I

18  will make myself available tomorrow (indiscernible) just in

19  case.  If you don't need me tomorrow, you can just message

20  me again like today.  Okay?

21         THE COURT:  Okay.  Great.

22         THE INTERPRETER:  Thank you.

23         THE COURT:  If there's some decision made before

24  tomorrow morning at 10:00, Mr. Bassett or someone will reach

25  out to you to let you know.  Okay?

1          THE INTERPRETER:  Thank you.  Have a good day.

2     Thank you.

3          THE COURT:  All right.  You too.  Thank you.

4          THE INTERPRETER:  Goodbye.

5          THE COURT:  All right.  Now, I think the only

6     other people whose appearances we haven't noted are Mr.

7     Farmer.

8          MR. FARMER:  Yes, Your Honor.  I'm just listening

9     today.  Paul Hastings LLP on behalf of the trustee.

10         THE COURT:  Okay.  Thank you.  And, Mr. Bongartz,

11    is that the same for you?

12         MR. BONGARTZ:  Yes.  I will be presenting a few

13    exhibits in connection with the bar date motions as well as

14    with respect to the status conference.  So I will request at

15    the appropriate time to be able to share my screen.

16         THE COURT:  Okay.

17         MR. BONGARTZ:  But just for the record, Alex

18    Bongartz, of Paul Hastings, on behalf of the Chapter 11

19    Trustee.  Thank you.

20         THE COURT:  Okay.  Thank you.  I appreciate that.

21    I just wanted to make sure that our record is clear and

22    accurate for everyone that's participating in the hearing

23    today, so thank you.

24         All right.  As we all know, there are many matters

25    on the calendar today.  I don't know, Trustee Despins, if

1   you'd like to take up the joint administration motion first,

2   or if you want to talk about the order that was submitted

3   last night.

4          I saw the proposed agenda, but with everything

5   that's gone on, I don't know if anything's changed.  But

6   I'll let you proceed in the manner in which you think is

7   appropriate.

8          MR. DESPINS:  Yes, Your Honor.  And as a matter of

9   fact, things moved quite -- in different ways that we didn't

10  anticipate.  So I need to address one very important issue

11  at the outset, and I ask that Mr. Barron be allowed to share

12  the screen.  I don't know who controls that.

13         THE COURT:  We can give control to Mr. Barron.

14         MR. DESPINS:  Yeah.

15         THE COURT:  So if Mr. Barron is just patient for a

16  moment, he will then have control and he can share his

17  screen.

18         MR. BARRON:  Thank you, Your Honor.

19         MR. DESPINS:  So I'll start because -- while this

20  is going on in the background.

21         But, Your Honor, as you know, we filed a contempt

22  motion and took the deposition of the debtor on Friday.  And

23  immediately after that, the debtor began posting false,

24  disparaging and inflammatory comments on social media about

25  individual lawyers of Paul Hastings and Paul Hastings, and

1    Pacific and at the deposition we took, accusing of us being

2    linked to the Communist Party, and I want to show that clip,

3    Your Honor, because that's just the beginning.

4          If you'll just indulge me, this will take no

5    longer than seven or eight minutes, not that the

6    (indiscernible) important to listen to this, -- well, to see

7    what's said in translation at the bottom of the screen.

8          Go ahead, Mr. Barron.

9          MR. BARRON:  Thank you.

10   (Thereupon, the audio recording was played for the

11   record)

12         MR. HENZY:  Your Honor, can I -- can I interrupt?

13   Can I interrupt for a moment, Your Honor?

14         THE COURT:  Hold on just a second.  So, can we

15   stop this for one second?  Attorney Henzy, go ahead.

16         MR. HENZY:  I'm not sure, Your Honor, what the

17   purpose of this is.  There's nothing before the Court.  This

18   is being -- I don't disbelieve, Mr. Despins, that there were

19   postings.  Obviously, we can all see this.  But I don't --

20   there's nothing before the Court on this.

21         If Mr. Despins wants to bring a motion to, I'm not

22   sure what, sanction Mr. Kwok for making public statements or

23   anything else, he can do that, but I don't think this is --

24   as far as I know, this is not relevant to any matter that's

25   before the Court today.

1          MR. DESPINS:  And let me address that, Your Honor.

2     This was just a lead in.  The follow up to that, that comes

3     right after that, is that there was a call for his followers

4     to protest at our individual houses, listing my house

5     address, my personal address, my ex-wife's personal address,

6     the personal address of the CEO or Chairman of PAX, with the

7     clear intention of intimidating a court officer.

8          And that's why I think this is really serious and

9     I believe the Court should give us latitude so you have the

10    full picture of what happened here.  So we would like to

11    continue with the presentation, Your Honor.

12         MR. HENZY:  Your Honor, I don't disbelieve

13    anything that Mr. Despins says, and to the extent this

14    happened, I do not defend it.

15         But again, I'll just say, I understand Mr.

16    Despins's concern, but I still say that there is nothing

17    before the Court today, as far as I know.

18         I don't know if Mr. Despins is going to ask for

19    some relief at the end of this presentation, and maybe --

20    maybe this -- it would be easier if Mr. Despins would tell

21    the Court, and so that I would know, is he going to ask for

22    some relief where viewing these materials would be relevant?

23         MR. DESPINS:  Well, it's very easy.  I think

24    either the U.S. Trustee is permitted to show, or the Court

25    on it's own, *sua sponte*, may decide to refer these matters

1   to the appropriate person, and I think that the Court is

2   entitled to know of these things.

3          The disparagement on the internet, we've had that

4   for months so, you know, I have a thick skin and not that

5   worried about that, except when it goes into the personal

6   individual layers.

7          But to post a trustee's home address on the

8   internet, asking people to go and picket that house and to

9   do the same thing with Paul Hastings, O'Melveny & Myers and

10  the CEO or Chairman of PAX, is completely beyond the pale,

11  and I think the Court needs to be informed of that, and if

12  the Court chooses to ignore it, that's okay,

13         Bt the U.S. Trustee needs to be informed of that,

14  and if they choose to ignore it, that's okay, but this is

15  certainly -- I understand why Mr. Henzy does not want the

16  Court to see this.  It's highly damaging to the debtor, but

17  -- and these are situations in the past, Your Honor, where

18  there has been violence involved.

19         When he has sent people to picket houses, they've

20  attacked people.  That's part of the video we're going to

21  show.  And therefore, this is not just us being nervous

22  Nellies here.  This is a very serious issue.  And actually,

23  I have a paralegal that works in our case, asking to be

24  removed from the case because basically saying they're

25  afraid of working on this case.

1          So this is a -- from a court point of view and

2     from a U.S. Trustee point of view, I think it's very

3     important that this is heard and it's not going to take that

4     much time, probably ten minutes at most.

5          MR. HENZY:  Your Honor, if I could, Your Honor?

6     As I said, I do not disbelieve what Mr. Despins is saying.

7     I do not defend any of this in any way, shape, or form.  In

8     fact, I condemn it.

9          I was not -- I was told -- I was aware that Mr.

10    Kwok may have posted something.  I was not -- I did -- was

11    not in any way aware he had posted anything about anyone at

12    Paul Hastings or Mr. Despins.

13          So this is the first I'm hearing of this.  I am

14    not trying to prevent this from being put in front of the

15    Court, or from the U.S. Trustee.

16          I just -- but I'm not sure that this is the

17    appropriate forum.  I am not -- if the idea is that this is

18    the basis for a criminal referral, I am not a criminal

19    lawyer.  I am not Mr. Kwok's -- I do not represent him on

20    any matter outside of this bankruptcy case.  I'm not his

21    criminal lawyer, if that is what Mr. Despins is talking

22    about.

23          I think -- I don't know, frankly, what the

24    appropriate way for this to be presented either to the Court

25    or to the U.S. Trustee if the idea is that it would be a

1    basis for a criminal referral.  But I am -- I am suggesting

2    that this is not it.

3          So -- and I don't -- and I wouldn't interpret it

4    -- if the Court said, I'm not going to do this right now.  I

5    would not interpret that as that the Court is choosing to

6    ignore anything that's happened here, or the U.S. Trustee is

7    choosing to ignore anything that's happened here.

8          I would be in -- the way I would look at it is,

9    this is -- this is not the appropriate time.  Or not -- I

10   don't -- when I say forum, I don't mean this Court not being

11   the appropriate forum at some point.

12         Again, I just don't know, but like I said, this is

13   -- this is -- this is not on the calendar.  Mr. Kwok is not

14   on notice of this.  I don't know anything about this.  Other

15   potential counsel of Mr. Kwok doesn't know anything about

16   it.

17         So I, again, I'm not trying to prevent the Court

18   or the U.S. Trustee from seeing this, viewing it, anything

19   like that, at the -- in the appropriate time, in the

20   appropriate manner.

21         MR. DESPINS:  Your Honor, time may be of the

22   essence here.  If people are getting harmed or potentially

23   harmed, it needs to be dealt with, we believe immediately.

24         And perhaps the solution would be to have Your

25   Honor direct the debtor to appear at the hearing tomorrow to

1    explain what is going on with these matters.

2         But this is way beyond the pale.  This is not just

3    lawyering.  This is -- we're talking about, you know,

4    personal houses being picketed and -- which involved in the

5    past, violence against the people that were being picketed.

6         So we believe that, first of all, it's a tenuous

7    thing and we would -- we would think that a Court would want

8    to see it right away.  But, obviously, Your Honor is --

9    controls her calendar.

10        MR. HENZY:  I have nothing further, Your Honor.

11        THE COURT:  Okay.  So what I'm going to do is, I

12   am going to instruct the courtroom deputy to -- aside from

13   Mr. Despins, Mr. Henzy and Attorney Claiborn, and Attorney

14   Barron, I think, who is for lack of a better term,

15   projecting this, Attorney Barron, correct?

16        MR. BASSETT:  That's correct, Your Honor.

17        THE COURT:  I'm going to have the -- instruct the

18   courtroom deputy to place all the other participants in the

19   waiting room, and we're going to have a discussion on the

20   record under seal.

21        I'm going to move that this be placed under seal

22   for the time being, and we will -- so we will take a recess

23   insofar as all the other parties will be placed into the

24   waiting room.

25        Trustee Despins, Attorney Henzy, Attorney

1    Claiborn, and Attorney Barron will remain, and then we will

2    start part of that hearing under seal to address the issues

3    that were just discussed and we will go from there.

4          MR. SARNOFF:  Your Honor, this is Stuart Sarnoff,

5    and I will abide obviously whatever your order is on this,

6    and perhaps you just made it, so -- but I'd just like point

7    out that Pacific Alliance, its chairman, it's chairman's

8    family, O'Melveny also has been named in this.

9          And so I do think and would ask for the Court to

10   at least consider including us in this as well, because I

11   have to report back to my client, who is currently in the

12   process of trying to secure protection and security for its

13   senior people and, frankly, for our firm itself.

14         So if you want to exclude us, I understand.  I

15   would just like to say that I think we're somewhat of an

16   interested party in this O'Melveny and Pacific Alliance.

17         THE COURT:  I understand.  I'm going to exclude

18   you for the time being, and then we'll see what occurs at

19   this -- after we have this conversation on the record under

20   seal, Attorney Sarnoff.  Okay?

21         MR. SARNOFF:  Okay.  Thank you.  Thank you, Your

22   Honor.

23         THE COURT:  Thank you.

24         MR. HENZY:  Your Honor, can I just ask that -- I

25   assume that people on the telephone listening only will be

1    excluded.

2            THE COURT:  Everyone will be excluded, and our --

3    we will record what happens completely under seal.  Everyone

4    will be excluded.

5            MR. HENZY:  Okay.  I just didn't know how the room

6    thing worked, so okay.

7            THE COURT:  It works -- it actually -- not only

8    can we exclude, we can just -- we will stop, because I'm

9    taking a recess, right?  We will stop.  Anybody that could

10   possibly be listening on the public access line, and then on

11   the --

12           UNIDENTIFIED SPEAKER:  (Indiscernible.)

13           THE COURT:  -- outside of the hearing, that will

14   continue under seal with Trustee Despins, you, Attorney

15   Claiborn, and Attorney Barron.  And our recording system of

16   our audio of every hearing has the ability to seal the

17   record immediately and that's what we're going to do.

18           MR. WOLMAN:  Your Honor, this is Jay Wolman for

19   Mr. Cheng.  I just want to note my objection to sealing it

20   for the record.

21           THE COURT:  Thank you.

22           MR. WOLMAN:  Under *Brown v. Maxwell.*

23           THE COURT:  Thank you.

24           MR. WOLMAN:   (Indiscernible)  the elements have

25   been met.

1          THE COURT:  Okay.  Thank you.  All right.  So I'm

2     going to give the courtroom deputy a moment to carry out the

3     steps that I've just so ordered on the record.

4          THE COURTROOM DEPUTY:  Your Honor, are you going

5     to officially say, take a recess, or --

6          THE COURT:  The Court is taking a recess.  The

7     public access line will be disconnected for the time being,

8     and all the other parties, other than Trustee Despins,

9     Attorney Henzy, Attorney Claiborn, and Attorney Barron, will

10    be placed in the waiting room until after -- until further

11    order of the Court -- until the Court comes back to the

12    hearing or not.

13          THE COURTROOM DEPUTY:  Okay.

14          THE COURT:  Okay?

15          THE COURTROOM DEPUTY:  Okay.  Thank you.  Court is

16    in recess.

17          (Recess from 1:27 p.m. to 2:29 p.m.)

18          (Recording from 1:27 p.m. to 1:57 p.m. placed under

19    seal.)

20          THE COURTROOM DEPUTY:  United States Bankruptcy

21    Court for the District of Connecticut is now in session

22    after recess.  The Honorable Julie Manning is presiding.

23          THE COURT:  Okay.  Good afternoon, again.

24          Trustee Despins, are you intending to proceed with

25    the motion for joint administration and the bar date order

1    first, or are we turning to the contempt matter and the

2    orders?

3          MR. DESPINS:  I think, Your Honor, we would get

4    rid of the procedural stuff first.  So I think either Mr.

5    Skalka or Mr. -- Mr. Skalka is going to handle the joint

6    administration.  Also, there was the motion to employ his

7    firm --

8          THE COURT:  Yes.

9          MR. DESPINS:  -- is still there, and then I'll do

10    the bar date, and then we'll end up with the contempt part.

11          THE COURT:  Okay.  Thank you very much.  Attorney

12    Skalka, please proceed.

13          MR. SKALKA:  Good afternoon, Your Honor.

14          Yes, as Trustee Despins mentioned, I'm presenting

15    both my firm's retention application and Genever Holding

16    Corporation proceeding, as well as the joint -- the motion

17    for joint administration involving all three of the related

18    debtors.

19          If I can, Your Honor, unless you have a

20    preference, if I could speak to the retention application

21    first.

22          THE COURT:  Go right ahead.

23          MR. SKALKA:  We have filed an application to serve

24    as counsel for Genever Holdings Corporation, which filed its

25    Chapter 11 proceeding on October 11th.

Ho Wan Kwok and Genever Holdings Corp. - November 16, 2022

1         As noted in the application, we are -- obviously,

2    counsel for Mr. Despins and -- as his local counsel in the

3    Kwok case, we have not received any objections to our

4    retention application.  Also, it's noted in the application,

5    we did not receive a retainer but we are planning to apply

6    for approval of our fees in the ordinary course based on our

7    customary rates, and for all those reasons, Your Honor, we'd

8    ask that our retention application be approved.

9         THE COURT:  Okay.  Thank you.

10        Does anyone else wish to be heard on the

11    application to employ Neubert, Pepe and Monteith as counsel

12    in the -- in these cases, in the Genever Holdings

13    Corporation case?

14        MR. HENZY:  Your Honor, I just have a question.

15        THE COURT:  Sure.

16        MR. HENZY:  Eric Henzy for the debtor.

17        The Genever Holdings had bankruptcy counsel in New

18    York, and my question is just what's happening to that firm?

19    Are they now out of the case, or they're going to be two

20    firms, or just what -- you know, kind of what's happening

21    with that because it's not disclosed in the application.

22        MR. HENZY:  Well, Your Honor, the --

23        MR. DESPINS:  That application -- sorry.  That

24    application is before the Court today, Mr. Henzy, in only

25    the BVI debtor, not the U.S. debtor yet.  That would be for

1    a later date.

2              MR. SKALKA:  Correct.  This is the -- All right.

3    Genever Holdings Corporation is the BVI entity, which did

4    not have bankruptcy counsel, which had not filed --

5              MR. HENZY:  Okay.  All right.  That's my

6    misunderstanding.  Okay.  Thank you.

7              THE COURT:  All right.  So this application to

8    employ applies only to the Chapter 11 case filed with regard

9    to Genever Holdings Corporation, which the trustee filed

10   after becoming the trustee, not with regard to the case

11   that's being transferred from New York.

12             MR. HENZY:  My fault.

13             THE COURT:  No problem.  That's fine.

14             MR. HENZY:  Thank you.

15             THE COURT:  It's better to be clear for the

16   record, so that's not a problem.

17             Attorney Claiborn?

18             MS. CLAIBORN:  Your Honor, the U.S. Trustee has no

19   objection to the employment of Neubert Pepe.

20             THE COURT:  Okay.  And I have looked at the

21   proposed order that was submitted with the application, and

22   I do not see any issues or concerns in the proposed order

23   that was submitted by Neubert Pepe and Monteith.

24             Does anyone else wish to be heard with regard to

25   the proposed order?

1      (No audible response)

2           THE COURT:  Okay, hearing nothing, then the

3      application to employ Neubert Pepe and Monteith as debtor's

4      counsel, the debtor being Genever Holdings Corporation, is

5      granted.  It's ECF Number 1060, and the proposed order

6      submitted with the application can enter.

7           MR. SKALKA:  Thank you, Your Honor.

8           THE COURT:  Thank you.

9           MR. SKALKA:  The second matter that I wanted to

10     present, Your Honor, is our motion for joint administration.

11     This does involve the New York -- the previously filed case

12     in the New York Southern District regarding Genever Holdings

13     LLC.

14          That case was transferred to Your Honor's court by

15     order of Judge Garrity on November 3rd, and the trustee, as

16     well as Genever Holdings Corporation, and now Genever

17     Holdings LLC has moved for joint administration of all three

18     cases.  Genever Holdings LLC is the wholly owned subsidiary

19     of Genever Holdings Corporation, which now Mr. Despins is

20     the equity holder of.

21          So for all the reasons we set forth in our motion

22     that these are interrelated debtors or affiliates, it makes

23     sense that the matters be jointly administered.  We have

24     proposed that the Kwok case be the lead case for all three

25     cases.  We have received no objection to the application and

1    would ask that the motion be granted.

2         THE COURT:  Does anyone wish to be heard on the

3    motion for joint administration of the matters here in

4    Connecticut and -- that are on -- that are jointly

5    administered under the Kwok main case number and the Genever

6    case that has been transferred from the Southern District of

7    New York to the District of Connecticut?

8         (No audible response.)

9         Okay.  I'm looking at your proposed order, and it

10   looks fine.  The only thing I noticed in the -- and when we

11   jointly consolidated the cases in Connecticut, there was one

12   provision that wasn't as clear as I thought it was.

13        I think, Attorney Skalka, all I would need you to

14   do is, in the proposed order you say, the caption of the

15   jointly administered case shall read as follows and you have

16   all that there.

17        I think you need to also say, add a paragraph, or

18   add something to the end of paragraph 4 that says, and all

19   pleadings filed in this case shall be filed on the docket of

20   the Ho Wan Kwok case, Case No. 22-50073, because there was

21   some confusion that people had before and I'd just like to

22   try to alleviate that confusion.  I'm not saying it

23   necessarily will, but I would like that specific provision

24   to be in the order.  Okay?

25        MR. SKALKA:  Understood, Your Honor.

1          THE COURT:  So -- go ahead.

2          MR. SKALKA:  I think I could just add a sentence

3    or two to that paragraph for -- and submit a revised order

4    that indicates that pleadings should be filed in all three

5    cases.  Excuse me.  At least in the Kwok case and in the

6    related case.

7          THE COURT:  No, everything should just be filed in

8    the Kwok case, now that we're jointly administering it.

9    That's the only --

10          MR. SKALKA:  Fine.

11          THE COURT:  -- place I want them to be filed.

12          MR. SKALKA:  Okay.

13          THE COURT:  Okay?  Because that's --

14          MR. SKALKA:  Yes.

15          THE COURT:  -- the point of joint administration,

16    so we don't have to look at more than one docket, right?  I

17    mean, with regard to proofs of claim, they can be filed in

18    separate cases on the claims register, but with regard to

19    the pleadings, I want them only to be filed in Kwok case 22-

20    50073.  Okay?

21          MR. SKALKA:  Yes.

22          THE COURT:  How much time would you need to submit

23    the order?

24          MR. SKALKA:  I could submit it by tomorrow

25    morning, Your Honor.

1        THE COURT:  Oh, that's fine.  Okay.  S

2        o, so that the record is clear, with regard to the

3   case of Genever Holdings, LLC, 22-50592, which was a Chapter

4   11 case pending in the Southern District of New York, which

5   has now been transferred to the District of Connecticut,

6   there was a motion for joint administration, ECF No. 229

7   filed in that case.

8        That motion is granted and a revised proposed

9   order will enter, and the companion motion in the Ho Wan

10  Kwok and Genever Holdings Corporation case, 22-5073, ECF No.

11  1070, will also be granted and will be essentially the same

12  revised proposed order.  It will be the same revised

13  proposed order, will be submitted by counsel on or before

14  November 17th.  Okay?

15       MR. SKALKA:  Thank you, Your Honor.

16       THE COURT:  Thank you.  Now, are we moving on to

17  the bar date order?

18       MR. DESPINS:  Yes, Your Honor.

19       THE COURT:  Please.

20       MR. DESPINS:  So, thank you, Your Honor.  Luc

21  Despins, Chapter 11 Trustee.

22       We filed a supplemental bar date motion November

23  8, Docket 1072.  You'll recall that we had prepared an

24  amended bar date, but then said, you know, we should really

25  wait to see if the New York case gets transferred.

1          And that's what we were waiting for, and then the

2     case was transferred.  So that's what this supplemental bar

3     date motion seeks to achieve, which is to have one bar date

4     for all debtors.

5          It's a bit more complicated than that, because

6     there was already a bar date in the Genever U.S. case, none

7     in the Genever BVI case. And so what we're proposing is that

8     there will be a general bar date of January 14th, 2023, for

9     all prepetition claims against the individual debtor, Mr.

10    Kwok, in Genever U.S. or Genever BVI.

11         For governmental claims against Kwok and Genever

12    USA -- U.S., the bar date will be the same, January 13th.

13    Why?  Because the cases have been pending for more than 180

14    days and therefore that provision of the statute that says

15    -- actually, it's Bankruptcy Rule 2002(c)(1), that you need

16    to wait 180 days for governmental entities does not apply to

17    those cases, but it does apply to the Genever BVI case,

18    because that's a newly filed case.  And for that one, we

19    need to have a governmental bar date of April 10th, 2023.

20         We also are seeking approval of the form of the

21    bar date notice.  We did receive some comments from the

22    committee counsel, Mr. Goldman.  We made those changes.

23    There's a form of publication notice, et cetera.

24         There are things that I need to address, though,

25    that are different than the standard bar date motion, that

1    is that in the Genever USA case, there was already a bar

2    date.  A notice had been given to maybe -- and this may be

3    exaggerated slightly, but 10, 12, 15 people max.

4          And we don't think that's appropriate, so we are

5    reopening the bar date for the Genever -- for the Kwok

6    individual creditor -- creditors to file, if they so desire,

7    a claim against Genever USA, and against Genever BVI.

8          And to make their life easier, we are providing in

9    the proof of claim form that the individual debtor

10   creditors, the creditors in Mr. Kwok's case, can assert an

11   alter ego claim, which we describe briefly in the proof of

12   claim form, by checking a box so that they can assert that

13   claim at the same time that they're asserting a claim

14   against Mr. Kwok.

15         There was one response filed, a formal response

16   filed, Your Honor, at Docket Number 1081, by Logan Cheng.  I

17   believe counsel is on the phone with us, and we have -- and

18   basically what were saying is that, wait a minute, we've

19   already filed a claim against Mr. Kwok.  We don't have to do

20   this twice.  Fair point.

21         And also, that concept only applies to 10 -- 15

22   people, so we've decided to make their life easier that any

23   creditor of Mr. Kwok that previously filed a proof of claim

24   against -- in Mr. Kwok's Chapter 11 case in a form

25   substantially similar to official form, shall be deemed to

1    have elected to also assert such claim against Genever BVI

2    and Genever USA on an alter ego basis so that they don't

3    have to refile.

4            It's really 15 people, and we can -- if you can

5    share the screen with Mr. Bongartz, we can show you the

6    exact language that we put in to address the Logan Cheng

7    response or rejection.

8            THE COURT:  Certainly.

9            MR. DESPINS:  We need Your Honor to --

10           THE COURT:  In just one moment.  There he is.

11           MR. DESPINS:  Yeah.  He has it.  Okay.

12           Here we go.  So that that's the underlying

13   language.  Any creditor (indiscernible) that's that language

14   that's been added to the bar date order and the notice.

15           In addition to that --

16           THE COURT:  Okay.

17           MR. DESPINS:  -- we received an informal comment

18   by, I think it was the Sherry Netherland, to the effect that

19   notice of commencement of the Genever BVI case generated an

20   automatic bar date of January 9, 2023.

21           And obviously, we're saying that that bar date is

22   not applicable, and the applicable bar date is January 13th,

23   2023.  And we have the footnote that says that, so we've

24   corrected that as well.

25           So in a nutshell, we have a further revised

1    proposed order which we can post online briefly, just to

2    take your -- I think we've taken you through all the

3    changes.  So you don't need to post it, really.

4           We need to submit it to the Court because we have

5    not submitted it to the Court yet.  But it would be a

6    further revised order.  We would show it to Your Honor,

7    marked, show changes and clean as well, and we would like to

8    submit that to Your Honor with your permission.

9           THE COURT:  Okay.  Thank you.

10           I just want to make sure no one else would like to

11    be heard on the motion to establish the bar date and the

12    procedures regarding the bar date.

13           MR. WOLMAN:  Good afternoon, Your Honor.  Jay

14    Wolman for Creditor Logan Cheng.  I just wanted to note that

15    I do believe that revision to the proposed order satisfies

16    my concern that I primarily raised.

17           I did raise in my response, that there were some

18    other exhibits, notices, et cetera, that also might need to

19    be revised in parallel form to address the creditors who had

20    previously filed, but I presume that that will happen.

21           MR. DESPINS:  Yes, it will, Your Honor.  It has

22    happened.  I mean, but we have not circulated that yet, but

23    we are -- we have made the corresponding changes.

24           THE COURT:  Okay.  Thank you.

25           MR. HENZY:  Your Honor, I would like to be heard.

1          THE COURT:  Yes.  Go right ahead.

2          MR. HENZY:  So, Your Honor, no objection to the

3     bar date for all entities for the individual debtor and for

4     Genever U.S., and no concern with the bar date for all

5     entities other than governmental entities against Genever

6     BVI.

7          The concern that I have is with the April 10

8     proposed bar date for governmental entities with respect to

9     Genever BVI. And I want to be very careful because I do not

10    want to disclose any settlement discussions that have

11    happened.  And so I expect if Mr. Despins thinks I've

12    crossed the line, he is going to jump in and tell you that.

13         But trying to be very neutral, the possibility of

14    a government entity having or not having a claim is a

15    significant point in the settlement discussions that have

16    taken place.

17         And I think that it would be very damaging

18    potentially to the process if the bar date for a

19    governmental entity to file a proof of claim against Genever

20    BVI was put out to April 10th.  That is a long time.  That's

21    another three months past January 13th.

22         And Mr. Despins cited Rule 3002.  I think he said

23    2002.  I think he meant 3002(c)(1).  But that -- that covers

24    Chapter 7, Chapter 12 and Chapter 13 cases.  I think the

25    applicable rule is 3003(c)(3), and that simply provides the

1    court shall fix and for cause shown may extend the time

2    within which to pursue claims or interest may be filed.

3            It then goes on to make, in some respect,

4    3002(c)(2), (c)(3), (c)(4), and (c)(6) applicable, but not

5    (c)(1).

6            So I don't believe there's any requirement in the

7    rules that a governmental entity get 180 days from the

8    petition date.

9            And the facts and circumstances, I think that any

10   relevant governmental agency has been well aware of Mr.

11   Kwok's case.

12           And again, without disclosing any confidences, I

13   think the claim that we would be concerned about, that

14   government entity -- that Mr. Kwok's case has been pending

15   since February.  The Genever U.S. case has been pending even

16   longer.  So I don't think there's a notice issue.  I don't

17   think that there would be an issue with any governmental

18   entity not understanding what is happening.

19           And in particular, that when you join that with

20   the provision that a proof of claim can be filed against

21   Genever BVI or Genever U.S. as alter egos of -- and I'm not

22   saying that you -- people can do that generally, I suppose,

23   but it's being very much highlighted.

24           I don't represent Genever BVI and I don't

25   represent Genever U.S., so I don't care about claims being

1   filed against them, whether -- on an alter ego basis or any

2   other basis.

3           What I do care about, though, is a claim being

4   filed against Genever BVI by a governmental entity, either

5   in a -- as an alter ego claim or otherwise, three months

6   after the general bar date, because my concern is that that

7   is going to impede the progress of these cases.  And that --

8   and potentially, I would argue, in a very, very significant

9   way.

10          So I think that January 13 is sufficient for any

11  governmental entity in the Genever BVI case, and I think

12  under Rule 3003, you can -- you can fix -- you can fix the

13  bar date.

14          THE COURT:  Understood.  Thank you.  Attorney --

15  Trustee Despins?

16          MR. DESPINS:  I don't -- I don't feel strongly

17  about that.  I want to make sure that Mr. Henzy is correct,

18  that he's -- he may be.  So check (indiscernible). So it's

19  an interesting law school question and we will -- what I

20  would like to do is revert back to this in maybe 20 minutes

21  while we go --

22          THE COURT:  That's fine.  That's fine.

23          I mean, my read of the rule is that -- is the same

24  as Attorney Henzy's, that 3002 only applies to 7, 12 and 13

25  and 3003 applies to 9 and 11.  But I think the question more

1    so, at least what I'm hearing from Attorney Henzy is, he's

2    not concerned about -- or he's not raising an issue with

3    regard to the treatment of the claim as any claim filed as

4    having alter ego claims.  He's concerned about the time

5    frame to provide to governmental units that would be, as he

6    stated, almost three months beyond the bar date of January

7    13.

8              And so, I think if you two can talk about that and

9    --

10             MR. HENZY:  Yes.

11             THE COURT:  -- come to an agreement, I don't see

12   that being -- at least under Rule 3003(c)(3), I think that

13   in a Chapter 9 and 11 case, it says that, you know, a proof

14   of claim may be filed to the extent -- and under the

15   conditions stated in Rule 3002(c)(2), (c)(3) and (c)(4), but

16   it doesn't say (c)(1) and 3002(c)(1) applies to a

17   governmental proof of claim.

18             So --

19             MR. HENZY:  I understand.

20             THE COURT:  -- I have no problem.  Whatever you

21   two come -- if all we're talking about is the date and you

22   can agree to the date, then I have no problem with that.

23             If we're talking about anything substantive, more

24   substantive with regard to this issue about the -- you know,

25   of basically being a claim against -- an alter ego claim

1     against the U.S. entity and the BVI entity, that's a

2     different story.  But I don't think you're talking about

3     that.  I think you're talking about --

4             MR. DESPINS:  And, Your Honor, I'm happy to have

5     an earlier bar date.  I just wanted to make sure technically

6     that was correct.  My colleague, Mr. Bongartz, is pointing

7     me to Section 502(b)(9), that seems to trump -- that is

8     saying, except for the claim of a governmental unit shall be

9     timely filed.  If it is filed before 180 days after the date

10    of the order for relief, or such later date as the federal

11    rules provide.

12            So let's park the issue.  This --

13            THE COURT:  That's fine.  I think --

14            MR. DESPINS:  I don't want to take --

15            THE COURT:  That's fine.  I think you both can

16    talk about it, and then you can -- if you still -- if

17    there's still a controversy, you'll let me know.  Otherwise,

18    you'll submit the order with the date that's agreed to.

19            MR. DESPINS:  Exactly, Your Honor.  Thank you very

20    much.

21            So with your -- well, maybe there are other

22    parties that want to be heard on the bar date.  If not, we

23    would move on to the -- I guess the main event, which is the

24    Ace Decade matter.

25            THE COURT:  Does anyone else wish to be heard on

1    the bar date motion?

2         (No audible response)

3         THE COURT:  All right then.  With regard to the

4    bar date, I mean, it will be granted for the reasons stated

5    on the record subject to a resolution of the issue of the

6    actual date of the governmental bar date, if that -- I don't

7    know if I just said that properly, but I think I --

8         MR. DESPINS:  Correct.  Yes.  But solely for the

9    BVI -- so this is what I refer to as plumbing, legal

10   plumbing.  So we should be able to agree on that, and we'll

11   try to do that very promptly, Your Honor.

12        THE COURT:  Okay.  Go right ahead.

13        MR. WOLMAN:  Your Honor, when you say it is

14   granted, you mean the -- it being the revised order that's

15   to be submitted.

16        THE COURT:  Yes.

17        MR. WOLMAN:  That's great.  Thank you.

18        THE COURT:  Yes.

19        MR. SKALKA:  Your Honor, if I could, just on a

20   housekeeping matter?  I have another court hearing later

21   this afternoon and Mr. Linsey is here to appear on behalf of

22   Mr. Despins and the other Genever entities.  So if I could,

23   can I please be excused for the balance of the --

24        THE COURT:  Yes.

25        MR. SKALKA:  -- of the hearing?

1          THE COURT:  Yes, you may.

2          MR. SKALKA:  Thank you, Your Honor.  Thank you.

3          THE COURT:  Thank you.

4          MR. DESPINS:  Okay.  So, Your Honor, moving on,

5    with Your Honor's permission, to the Ace Decade matter, let

6    me try to key this up for Your Honor.  You're right, we did

7    submit something at 11:30 last night, so I really want to

8    take you though that and how we got there.

9          So there are two parts to this, or at least there

10   were several parts to it but the two main parts to the

11   (indiscernible).  One is the did he own it. But for my

12   appointment as trustee, that Mr. Kwok own these shares or

13   not.  And the second one is, let's assume he does own it,

14   what does he have to do not to be held in contempt.

15         So what I'd like to do through this order is to

16   bifurcate these issues and have a finding by the Court that

17   but for my appointment where I, you know, according to the

18   bankruptcy code, took over ownership of all the assets of

19   the debtor, the debtor would be the owner of the shares of

20   Ace Decade.

21         And very precisely -- first, there is -- there is

22   an introductory paragraph that says the Court would make the

23   following findings that I'll describe in a second, based on

24   the following pieces of evidence.  And that's all been

25   negotiated, and those pieces of evidence are the transcript

1    of the two 341 hearings -- or meetings, I'm sorry.

2           Item Number B is the (indiscernible) of claims

3    that they (indiscernible) complaint.

4           Item Number 3 or C is the debtor's affidavit,

5    dated February 5th, 2016, filed in the *Ace Decade v. UBS*

6    case in New York Supreme Court.

7           And it says that these exhibits have been admitted

8    -- or this is if you enter the order.  They would have been

9    admitted pursuant to Your Honor's order without objection,

10   and that the debtor, having not opposed or otherwise

11   objected to entry of this order, the Court makes the

12   following finding.

13          I know in two seconds flat you're going to say, is

14   this a consent order, and -- because that's always the

15   question you ask.  And I'm getting better at this, I know.

16   I know.  And it's kind of an amorphous -- I know that it

17   would be simpler to have a consent order for -- also

18   (indiscernible) this is the agreement we're able to get.

19          Basically, that you have evidence that's admitted.

20   Based on that, you make these findings.  The debtor is not

21   objecting to the Court making these findings, and these

22   findings are as follows.  That the debtor exclusively and

23   beneficially owns and controls the shares of Ace Decade on

24   the petition date, and maintains such exclusive beneficial

25   ownership and control up to and including immediately prior

1   to the date of my appointment.  And that's the same thing

2   for Dawn State, which is 100 percent subsidiary of Ace

3   Decade.

4           In addition to that, it says for the avoidance of

5   doubt, this (indiscernible) is not and has never been a

6   beneficial owner of the shares in Ace Decade or Dawn State.

7           We believe that all the evidence that you would

8   have admitted without objection if you decided to enter this

9   order, supports these findings and the debtor is not

10  objecting to these findings being made.

11          Paragraph 2 states that the debtor represents that

12  he has never transferred or purported to transfer any

13  ownership or control in Ace Decade since the petition date.

14  Accordingly, the Court finds that but for my appointment,

15  the debtor would still exclusively benficially own and

16  control Ace Decade as of the date of this order.

17          And then paragraph 3 talks about part 2 of this,

18  because there's not a full agreement between the parties.

19  And basically that the Court -- it says that the Court would

20  hold a hearing tomorrow, because we -- you had to reserve

21  that time, so I don't know if it's still available, given

22  that you probably canceled your schedule on Tuesday, I don't

23  know.  So the point is, it would be a hearing.  We call

24  that the compliance hearing on the issue of, okay, now that

25  we've entered this order.  What does the debtor need to do

1   to not be held in contempt?  And there, there's going to be

2   -- I'm previewing this.  There's been open discussion with

3   this, the debtor is going to take the position that as long

4   as it does certain things, like send a letter pursuant to

5   whatever, that there should be no finding of contempt

6   because that's outside of his control.

7          And then we're going to say, no, you need to hold

8   them in content until he turns over the shares.  That's for

9   tomorrow, but we say in paragraph 4 that at the hearing, we

10  will rely on various exhibits and we will want some of these

11  exhibits to be admitted into evidence.

12         Already, the debtor has stipulated to the

13  admissibility of Exhibit 13.  That's all listed in paragraph

14  4, et cetera, so I'm not going to repeat those.  So that's

15  been stipulated to, and it's -- and these exhibits really

16  deal with the relationship between the debtor and Ms. Wang.

17         And the debtor reserves the right to represent

18  through his counsel, the debtor would testify that Ms. Wang

19  is not his employee and does not take direction from him,

20  and of course we reserve the right to object to that and the

21  parties, you know, basically reserve the right to argue that

22  different weight or no weight should be given to certain

23  exhibits, et cetera, et cetera.

24         Then paragraph 5 is a prophylactic provision that

25  basically says the debtor is not going to, through the back

1     door, try to help, assist anyone taking the position that

2     they own the shares of Ace Decades, so that the language has

3     been self-explanatory.

4          Paragraph 6 is very important.  I want to make

5     sure Your Honor understands this because it's counter

6     intuitive.

7          It says that nothing this order shall -- or the

8     entry of the order shall preclude the trustee in the context

9     of any further litigation against any third party from our

10    viewing that any purported transfer by the debtor of the

11    ownership or control of either or both of Ace Decade or Dawn

12    State was or is an avoidable transfer or -- sorry, avoidable

13    under the law or that such purported transfer should be

14    disregarded.

15         So what is this meant to cover?  This is meant to

16    cover a situation where, I don't know, the debtor forgot

17    that he transferred the shares to his son, you know, a year

18    ago.  And the son comes in and says, no, I'm the one who's

19    the owner of the shares.

20         And we would say, well, okay, assuming that you're

21    correct, we don't believe you're correct, but that transfer

22    from the father to the son would be an avoidable transfer

23    and we'd reserve the right to do that.

24         We don't want the son to come in and say, hey,

25    Judge Manning entered an order saying that the debtor owned

1    the shares, so you cannot come after me for the shares.  So

2    that's really the purpose of that section.  We hope we never

3    have to invoke that, but it's a fail safe mechanism.

4           Paragraph 7 says that the debtor has represented

5    that he does not contest any finding in this order and

6    accordingly will not appeal this order.  And that's

7    basically the rest or, you know, standard provisions, and

8    the point here is this.  We want this in two separate

9    phases, two separate orders.

10          So this order would become a final -- well, if

11   Your Honor decides to enter it, would be a final order

12   because the debtor could not appeal it.

13          What happens tomorrow, or whenever Your Honor

14   decides to hear that, that could be subject to an appeal by

15   the debtor if they're not happy with the result, or vice-

16   versa.  That's to be continued tomorrow, or if that schedule

17   still works for Your Honor.

18          So I wanted to describe this.  Obviously, the

19   words in the order are more precise than my description, but

20   I thought it was important to take you through every

21   provision that's material in this order and what it

22   accomplishes and what it doesn't accomplish.  Perhaps Mr.

23   Henzy has comments as well, so --

24          THE COURT:  Attorney Henzy?

25          MR. HENZY:  So, Your Honor, for the second time

1    today, I'm going to tell you I agree with everything that

2    Mr. Despins just said.  I think he summarized the order

3    very, very well.

4              I might add a little bit of color, but I don't --

5    to his description of what arguments might be made at the

6    compliance hearing, but I don't think he intended to be in

7    any way, you know, complete in that description.  I think it

8    was just a -- a sort of a -- to give you an idea what that's

9    going to be about.  But I think he summarized the order very

10   well.

11             And the idea here is -- really what this does, I

12   think, is obviate what might have been a lengthy evidentiary

13   hearing, and I (indiscernible) the discussion this morning

14   about whether or not the interpreter needs to be there.  I

15   think the idea is that this compliance hearing will be based

16   on documents and legal arguments and there won't be any

17   testimony.

18             So again, I -- Mr. Despins, I think correctly

19   summarized the order.

20             THE COURT:  Okay.  Thank you.  I -- you know, as

21   you probably both can gather, and I -- does anyone else wish

22   to be heard on the contest issue before I have anything to

23   say?

24        (No audible response)

25             THE COURT:  Okay.  Hearing nothing, I have

1    reviewed the order.  I have to say that I see that it is

2    progress without question, and that the parties are working

3    together to try to resolve many of the issues that are the

4    subject of the contempt motion.

5          The issues regarding -- in Paragraph 1 and 2 in

6    particular, with regarding -- with regard to Dawn State and

7    Ace Decade, all of the issues that were raised in the

8    contempt motion that relate to the government's order, and

9    then the objection and reply, those issues seem to be

10   resolved by this order.

11         The only -- the only issues that apparently I need

12   to address tomorrow is what -- and I'd like to make sure

13   that you agree with this, both of you, because I want to

14   make sure I'm not missing something.

15         The only issues that I -- when I say only, I'm not

16   saying it's simple.  I'm saying the narrower issue that

17   you're asking the Court to decide at a hearing, which yes,

18   we're still available to have that hearing at 10:00 a.m.

19   tomorrow morning, is if and to what extent the debtor should

20   be held in contempt, aside from the -- this order, what's

21   provided in this order.  Is that correct?  That's what

22   you're asking me to find?  If the debtor should be in

23   contempt -- held in contempt, and if he is held -- and if he

24   is in contempt, what is he in contempt of and what is the

25   remedy for that.  Is that what you're asking?

1          MR. DESPINS:  Correct.

2          THE COURT:  Okay.

3          MR. HENZY:  And I -- I guess I'm trying to think,

4     Your Honor.  I don't quibble with your characterization of

5     what the compliance hearing is about.

6               I might put it a little bit differently, and I'm

7     not -- I don't even know if this is inconsistent with what

8     you said, is with a finding that the debtor owned Ace Decade

9     through the time of Mr. Despins's appointment, then what, if

10    anything, is he obligated to do under the court -- the

11    governance order, and if he's obligated to do anything, what

12    is he obligated to do?  So that's the -- that's the way I

13    would characterize it.

14              And if he -- and if he -- if Your Honor finds that

15    he should have done something that he -- and he hasn't done

16    it, then it's -- is he -- should he be held in contempt?

17              So again, I don't know that that's inconsistent

18    with the way you framed it, which -- but I want to be on the

19    record, that that's sort the way I am framing it.

20          THE COURT:  Attorney -- Trustee Despins, I don't

21    think that's inconsistent.  I think Attorney Henzy's

22    description is probably better worded than mine was.

23          MR. DESPINS:  I don't agree with that, Your Honor.

24          THE COURT:  So I --

25          MR. DESPINS:  But I --

1          THE COURT:  -- think the issue is, it's all in --

2     it's all tying back to the corporate governance order, but

3     -- and which is what you said, so -- which is, is Mr. Kwok

4     in contempt of the corporate governance order?  And if he

5     is, how is he in contempt and what does he need to do to not

6     be in contempt?

7          MR. HENZY:  I think that's a very fair

8     characterization, Your Honor.  Yes.

9          MR. DESPINS:  And I would say also, given the

10    bankruptcy code as well.  It's --

11         MR. HENZY:  I don't disagree with that.  I do not.

12         THE COURT:  Oh, that's right.  Okay.  Thank you.

13    All right.

14         I -- so that -- you know, paragraph 3, when I read

15    paragraph 3, I thought okay, so what -- that's what I need

16    to do, figure out -- I believe given the provisions of the

17    order, and I understand it's not a full consent order, that

18    the parties -- that I believe what I'm -- what we'll see

19    tomorrow is that the trustee will assert through argument

20    and evidence that Mr. Kwok remains in contempt by not being

21    in full compliance with the order, and that Mr. Kwok will

22    argue that he is and then I'll have to decide.

23         MR. HENZY:  Yes.

24         THE COURT:  I think that's really what -- where we

25    are.

1          MR. HENZY:  Yes, Your Honor.

2          THE COURT:  Okay.  All right.  With regard to -- I

3     don't think I have any questions with regard to any of the

4     other provisions, although I didn't truly appreciate

5     Paragraph 6 until you explained it.  But Trustee Despins,

6     because again, when I read this order, I was focused more on

7     the first three paragraphs, I think, because --

8          MR. DESPINS:  Yep.

9          THE COURT:  -- I was trying to figure out what we

10    were doing tomorrow, but I understand better what you're

11    arguing, or what the -- that's not an argument.  What the --

12    what the purpose of paragraph 6 is in the order.

13          I don't have any further questions.  Does anyone

14    else wish to be heard in connection with this order that has

15    the trustee would like -- the trustee and the debtor would

16    like the Court to enter, and then have the compliance

17    hearing commence at 10:00 a.m. tomorrow morning?

18          MR. DESPINS:  Your Honor, I'm duty bound and I

19    partly hate myself for saying this, but -- because I -- in

20    theory, this should be a happy moment, but it's not a happy

21    moment.

22          I want to make sure you understand this is about

23    progress which has cost the estate hundreds of thousands of

24    dollars in litigation to get to this point.

25          You know, so I don't want you to have the

1    impression that this all -- this was generated.  You need to

2    look at the objections we filed, the discovery we have to

3    take, the translator that cost a fortune.  We have to go

4    through all of that to get to this point.  Two depositions.

5            So I don't -- you know, I know from a judge's

6    point of view it's like, oh, it looks good.  It looks like

7    they're settling.  They're working well together.  I can't

8    say that.  This was incredibly expensive and painful.  I'm

9    sorry, but I need to say that.

10           THE COURT:  I think that's fair, and when I say

11   progress, I don't mean that I think this is progress towards

12   ultimate resolutions of every issue in this case, or -- and

13   that I'm ignoring what has happened to get to this point and

14   the expense and efforts that have been undertaken to get to

15   this point, which may obviously have a detrimental effect on

16   creditor recovery in this case.

17           But what I meant was that the issues, specifically

18   the issues with regard to Ace Decade and the assertions that

19   had been made on the record that Mr. Kwok disagreed with the

20   translation and things of those nature -- of that nature, I

21   at least don't have to address those issues.  That doesn't

22   mean that I think it's progress in a manner that ignores

23   what happened to get to this point.

24           So I think it's a fair point that you raise,

25   Trustee Despins, and I do not want to give any impression

1    that I think that this was just some negotiation without a

2    great deal of effort and expense undertaken, which may be to

3    the detriment of creditors of the estate.

4              MR. HENZY:  If I could, Your Honor?  I agree with

5    Mr. Despins that this has been expensive and painful.  I

6    think we probably disagree about where responsibility lies

7    for that.  But again, I mean, that's not before the Court

8    right now.

9              THE COURT:  I agree with both of those statements.

10   But I think at -- when I say progress, I mean as far as

11   narrowing the issues that had to be decided in connection

12   with a motion for contempt.

13             MR. HENZY:  Understood.

14             THE COURT:  Okay?

15             MR. SARNOFF:  Your Honor, this is Stuart Sarnoff.

16   Just a brief logistical question.

17             THE COURT:  Yes.

18             MR. SARNOFF:  Is Your Honor -- is Your Honor

19   intending to hold tomorrow's hearing in person, and for

20   efficiency purposes and in light of it being effectively a

21   two-party argument, would Your Honor have any objection if

22   parties like PAX participated over Zoom virtually?  If you'd

23   like us to be there, we can, we just think it may be more

24   efficient if we're not going to be presenting or cross

25   examining or doing anything of that nature.

1          THE COURT:  Well, given the fact that I probably

2     am still contagious, I am not going to be in the courtroom.

3     So we are -- under the specific facts of circumstances of

4     today, which happens to be my illness, we are going to do

5     this via Zoom.

6          I have the flu, but it's still contagious and the

7     doctor suggested that I don't interact with people through

8     the end of this week.  So -- excuse me.

9          So I am going to conduct this hearing via Zoom, so

10    everyone can watch via Zoom.  I may -- depending upon what

11    happens, because it sounds like there isn't going to be

12    testimony, so that will make it -- when I say it, the

13    virtual hearing -- a little less complex. I think, because

14    even though there will be exhibits introduced and possibly

15    shown during the hearing, I think it's a little less -- less

16    complex.

17         If we were going to have witnesses, I still might

18    -- and we were going to proceed tomorrow, I probably still

19    would do it via Zoom, but that would be because of me, not

20    because of the circumstances.  I just don't -- you know, I'm

21    -- been under doctor's orders.

22         So in any event --

23         MR. HENZY:  Feel better.

24         THE COURT:  Thank you.

25         MR. LINSEY:  Your Honor, may I address something

1    that's relevant to the proceedings tomorrow?

2              THE COURT:  Yes.

3              MR. LINSEY:  Patrick Linsey for the Trustee.

4    First of all, I hope you're feeling better.  I'm sure

5    everybody does.

6              Second of all with respect to proceeding tomorrow,

7    there is a motion to seal the trustee had filed.  That's at

8    ECF 1091.  It was filed there on a sealed basis.

9              Actually, after we filed it, we determined that

10   there's nothing in the motion to seal itself that needed to

11   be sealed, so that's now also on the public docket at 1095.

12   And that addresses two things.

13             It addresses the trustee's reply memorandum

14   concerning the motion for contempt, but it also addresses

15   certain exhibits with respect to the motion for contempt.

16   Some of those exhibits will be at issue tomorrow.

17             So the issue of the exhibits that the trustee

18   believes should be sealed, the trustee has now filed under

19   seal and we would just ask that the Court, if it has the

20   time, look at that motion and hopefully be prepared to rule

21   that those exhibits can be considered in proceedings under

22   seal tomorrow.

23             I do think that we need to either have a

24   discussion with debtor's counsel, perhaps tweak the form of

25   order that was filed with the motion to seal.

1          So we will be in touch with debtor's counsel after

2      this hearing, but we do think that the exhibits should be

3      sealed tomorrow.  To the extent that, one, they're material,

4      that is subject to a privilege.  And Your Honor recalls that

5      under the privileges order, the trustee has been able to

6      obtain discovery that includes, for example, correspondence

7      among and with the debtor's former counsel.  So there's some

8      of that.  It is subject to a claim of privilege.

9          And then there's at least one exhibit that's

10     subject to a confidentiality designation.  And particularly

11     here, where the subject matter at issue with respect to Ace

12     Decade implicates the UBS claims under litigation in the

13     United Kingdom, we want to be sensitive to the existence

14     without privilege.  And so that's why we're trying to get

15     ahead of this by treating that issue with this motion.

16          THE COURT:  Okay.  Well, let me just ask a

17     question or two about that.  So, Attorney Henzy, what's your

18     position on the motion to seal?

19          MR. HENZY:  So if what Mr. Linsey is referring to

20     is that, I don't know, about noon today I think it was,

21     these two motions were filed, and they were -- all I

22     received was the ECF docket hit --

23          MR. LINSEY:  No, that's not -- that's not -- those

24     filings were the exhibits that were proposed to be under

25     seal, and you, the debtor is the only other party that

1    actually has those.  So you have those.

2           What I'm talking about is the motion that was

3    filed on Monday under ECF 1095 which is with respect to the

4    reply, and also the hearing exhibits on the motion for

5    contempt.

6           MR. HENZY:  Which you did -- you did send to me,

7    yes.

8           MR. LINSEY:  Correct.

9           MR. HENZY:  Okay.  Got it.  Okay, so --

10          THE COURT:  All right.  So 1095?  Is that what you

11   said?

12          MR. LINSEY:  Yes, Your Honor.

13          MR. HENZY:  Yes.  Your Honor, yes, subject to me

14   having this discussion with Mr. Linsey and whoever else is

15   -- from that -- their side is going to be on it.  I'd be

16   surprised if I had any objection to this.

17          THE COURT:  All right.  So let me just step back

18   then.  I obviously haven't looked at this yet.  Okay?  But I

19   can, and I will, but I have a couple of questions about it.

20          So let's assume that I grant the motion under

21   seal.  How are we going to present that evidence tomorrow if

22   it's under seal?

23          MR. LINSEY:  To the extent there is evidence being

24   presented that are privileged, subject to a claim of

25   privilege, then I believe Your Honor would need to close the

1      proceeding to parties that are not the debtor or the

2      trustee, and not -- not for sort of undefined reasons, but

3      for the very real and tangible reasons that there is a

4      financial interest the estate has in protecting the

5      existence of that privilege and its relation to the assets,

6      which are the claims in the United Kingdom and also, the

7      trustee has obligations under the consent privileges order

8      that was negotiated and that Your Honor approved.

9               THE COURT:  Okay.  That's what I could assume, but

10     I want to make sure be -- so what I'm wondering is -- and

11     you two still need to talk.

12              When I say you two, I don't mean necessarily the

13     two of you, but I mean the debtor and the trustee, about

14     these issues before tomorrow.  Should -- is it -- does it

15     make more sense to start the hearing at 11:00 to give

16     everyone time, as opposed to 10:00?  I mean, I'm happy to --

17              MR. LINSEY:  We can talk this afternoon, Your

18     Honor, if that works for Mr. Henzy.

19              MR. HENZY:  That's fine.

20              MR. WOLMAN:  Your Honor.

21              THE COURT:  Yes?

22              MR. WOLMAN:  I just want to make a point as to the

23     sealing motion.  I would direct the Court's attention to

24     *Brown v. Maxwell*, 929 F.3d 41.  That was a case involving

25     multiple materials, but specifically with regard to summary

1    judgment materials and a contempt hearing could be deemed

2    akin to that, where the presumption of access under both the

3    common law and the first amendment attaches.

4          These would be judicial documents where the Court

5    is being requested to rely on them to make a determination,

6    an appealable final determination in fact, and that in light

7    of the Court -- the Second Circuit said in *Brown*, in light

8    of this strong first amendment presumption -- this is on

9    Page 47 -- continued sealing of the documents may be

10   justified only with specific on-the-record findings that

11   sealing is necessary to preserve higher values and only if

12   the sealing order is narrowly tailored to achieve that aim.

13         So to the extent the Court will be sealing

14   anything, there has to be justified very -- as a very high

15   standard, since these are judicial documents, at what that

16   privacy interest is that is being bandied around, not merely

17   the fact that it's in the attorney/client privilege or

18   designated confidential, and that it's as narrowly tailored

19   to achieve that as possible.  So perhaps most of it gets

20   published and only a small portion gets redacted if

21   necessary.

22         MR. LINSEY:  Okay, Your Honor.  I can address

23   that.  The district court has a local rule, Local Rule 5E,

24   which has been adopted by the bankruptcy court's local

25   rules, and that is, I think, designed to sort of codify what

1    that standard is and, you know, has requirements that there

2    be particularized findings and the procedures being narrowly

3    tailored.  We confront that rule directly in the motion and

4    we explain what the findings are and how the relief that's

5    set forth in the motion is narrowly tailored.

6              I do think that the value of attorney/client

7    privilege with respect to a $500 million claim that's under

8    active litigation ought to be self evident.

9              MR. SARNOFF:  It didn't appear self evident,

10   that's why I'm raising the issue here.  Specific documents,

11   I have not seen them.  I've not been privy to them, but you

12   know, they will not be as high as the impounding party

13   believes they are as some higher values.

14             MR. LINSEY:  What I mean is the sanctity of

15   attorney/client privilege on facts that are well -- either

16   -- that are at issue in a litigation in another forum that

17   preserving the existence of that privilege is an important

18   interest.

19             And I really -- I would prefer not to get into

20   questions of partial labor.  I also -- we've had discussions

21   with PAX about this, Your Honor, and the understanding is,

22   to the extent that things are sealed, we're going to cabin

23   that as narrowly as we can.  We filed the vast majority of

24   the trial exhibits not under seal.  The vast majority of the

25   reply memorandum is not under seal.  And, you know, the vast

1    majority of -- I think what we're likely to undo tomorrow,

2    at least as much of it as we can, would not be under seal.

3    But these particularized things that their disclosure was,

4    you know -- certainly without regard or, you know, real

5    protection, could threaten value for the estate, we need to

6    protect those.

7              MR. SARNOFF:  Perhaps they are Your Honor, but you

8    know, certainly in the absence of information, and I just

9    want to make sure that the Court does do its diligence

10   because as happened in the *Brown v. Maxwell* case, Judge

11   Sweet from the Southern District of New York, completely

12   abandoned and advocated this responsibility, letting the

13   parties merely file anything they want, but under seal,

14   which resulted in a wholesale rebuke by the Second Circuit.

15   I know this because --

16             THE COURT:  We don't have that in this case,

17   counsel.

18             MR. SARNOFF:  Counsel to the unsealing party

19   there.

20             THE COURT:  We don't have that in this case.  This

21   isn't a wholesale (indiscernible) case where there's been

22   wholesale filings of things under seal.

23             MR. SARNOFF:  What I mean by that, Your Honor, is

24   that the parties were allowed to choose what to file under

25   seal and what not to, and that's what it sounds like Mr.

1    Linsey is suggesting, that his decision should be

2    substituted for the Court's, which it should not be.

3              MR. LINSEY:  Well, if that were the case I

4    wouldn't have filed a motion requesting an order from the

5    Court.

6              THE COURT:  I think that's --

7              MR. LINSEY:  That's why we're here.

8              THE COURT:  So -- and I also think that if you

9    have an issue, Attorney Wolman, you have rights under the

10   Federal Rules of Civil Procedure to move to unseal.  I think

11   that's your remedy, isn't it?

12             MR. SARNOFF:  Well, the primary motion is a motion

13   to seal.

14             THE COURT:  I understand.  I'm saying if it's

15   granted over your objection, then you have the right to seek

16   a motion to unseal that.

17             MR. SARNOFF:  That is correct, Your Honor.

18             THE COURT:  Yeah.  So that's how we will proceed

19   at the moment.  I am going to look at everything.  I haven't

20   decided anything.  As I said very clearly on the record, I

21   haven't looked at the motion.  It was filed on Monday, did

22   you say, Attorney Linsey?

23             MR. LINSEY:  Yes, Your Honor.

24             THE COURT:  Okay.  So I haven't reviewed it yet,

25   and I'm not going to start the hearing tomorrow until 11:00

1    because I would like to look at these issues and I would

2    like to make sure that I understand all the issues.

3            I think I -- the *Brown* case, my recollection was

4    that it was a serious issue of sexual assault or abuse,

5    which is not what we have in this case, and this is a

6    bankruptcy case that already has orders entered with regard

7    to privileged and confidential documentation.  So I will

8    review everything and I will rule accordingly.

9            MR. SARNOFF:  The *Brown* case, Your Honor, was a

10   defamation case, and there was a protective order in that

11   case as well.  I just --

12           THE COURT:  I'm not talking about just a

13   protective order, Attorney Wolman.  We have other orders

14   with regard to the privileges in this case.  It was a

15   defamation case about a sexual abuse victim.  That was --

16           MR. SARNOFF:  Yes.  Yes, Your Honor.

17           THE COURT:  Yes.

18           MS. CLAIBORN:  Your Honor, if I --

19           THE COURT:  Go ahead, Attorney Claiborn.

20           MS. CLAIBORN:  I apologize for the --

21   interrupting.  I just wanted to ask the Court, when

22   considering the motion to seal to make sure to preserve the

23   U.S. Trustee's rights under Section 108.  Sorry, 107(c)(3).

24           THE COURT:  Oh, yes.  That's not the -- that's

25   never an issue.  I mean, the statute already says, anything

1    that's under seal, the U.S. Trustee has access to.  That's

2    what the bank -- that's what congress decided.  That's not

3    the court deciding, that's congress.  So -- but I agree with

4    you.

5          MS. CLAIBORN:  I just wanted to make sure that

6    that was involved and put into the order

7    (indiscernible)**3:29:27.

8          THE COURT:  I completely understand what you're

9    saying.

10          MS. CLAIBORN:  Uh-huh.

11          THE COURT:  And if you want that in the order, you

12    could talk to Attorney Linsey about that.  I don't know if

13    I'm granting the order or granting anything that -- in the

14    same vein.

15          Somebody's speaking in the background.  Please,

16    could you put your microphone on mute?   Thank you.

17          MR. LINSEY:  I'll speak with Ms. Claiborn, Your

18    Honor, about that.

19          THE COURT:  Yeah.  This Court is well aware, but I

20    appreciate you pointing it out.  I'm not suggesting anything

21    is contrary.  But again, that's congress.  That's a

22    requirement under the bankruptcy code.

23          It has nothing to do with this Court's

24    determination as to whether or not something should be

25    sealed, right?  If that is that it gives the United States

1    Trustee the unfettered right to see any information or any

2    part of the record that may be placed under seal.  Okay?

3              MS. CLAIBORN:  Thank you.

4              THE COURT:  Thank you.  All right.  Is there

5    anything further to address this afternoon?

6              MR. SARNOFF:  Your Honor, Stuart Sarnoff.  If I

7    might just inquire?

8              There was a matter taken under seal at the

9    beginning of this hearing, and as a party who is a -- who is

10   a partner of a law firm whose officers have been sort of

11   targeted for protest and who represents a client and its

12   personnel, its senior personnel who has now been -- now been

13   targeted for protest, is there any update that the Court is

14   able to provide to us for our own -- so that we can action

15   item that and we can advise our client about what's

16   happening?

17             THE COURT:  You can talk with Trustee Despins and

18   Attorney Claiborn, but when you say on the record, targeting

19   and things of that nature, they -- there was something --

20   there was information provided to the Court.  The Court has

21   made no findings.  There are no findings or rulings with

22   regard to that information, so you need -- if you have any

23   questions, you can talk to Trustee Despins and Attorney

24   Claiborn.

25             MR. SARNOFF:  Okay.  Thank you.

1          THE COURT:  Okay?  Thank you.

2          MR. DESPINS:  Your Honor, to be clear, I'll be

3    free to convey to Mr. Sarnoff what happened during the

4    sealed portion of the hearing?

5          THE COURT:  Well, you have an obligation, right,

6    as a trustee, to the creditors of the estate, right?

7          MR. DESPINS:  Yes.

8          THE COURT:  And you can decide whatever you want

9    to disclose or not disclose and feel that you are meeting

10   and complying with your obligations.

11         MR. DESPINS:  Thank you, Your Honor.

12         THE COURT:  The record is under seal at this point

13   and will remain under seal.  There will be an order entered

14   keeping that record under seal, and if someone wants to move

15   to unseal that part of the record, there are -- that's what

16   the Federal Rules of Civil Procedure and the local rules of

17   procedure provide.

18         The sealing took place based upon a record that

19   was in place at that time about serious potential harm to

20   individuals involved in this case that has nothing to do

21   with the administration of the bankruptcy estate.

22         And that harm, that potential harm outweighs, at

23   least at this point, any interest in making that record

24   public at this time.  So therefore, if anybody -- you all

25   need to act in whatever way you feel is appropriate, but

1     that is what the -- that is why the Court placed the record

2     under seal at that point in time.  That order will enter,

3     and then any party can take any action it feels appropriate

4     under the circumstances.  Okay?

5               MR. DESPINS:  Thank you, Your Honor.

6               Your Honor, just before we go, we had tried to

7     slip in the brief status conference on various matters.  If

8     we could cover that?

9               MR. HENZY:  Well, can I interject, Your Honor?

10              THE COURT:  Yes, go ahead.

11              MR. HENZY:  Your Honor, a status conference is not

12    scheduled by a court -- by court order.  There's nothing on

13    the docket.  There's no notice that went to any party of a

14    status conference.

15              THE COURT:  I, unfortunately, Trustee Despins, I

16    agree with Attorney Henzy.  This contempt today and

17    yesterday -- yesterday, today, and -- well, actually it

18    wasn't today.  Yesterday and Thursday were to address the

19    contempt motion.

20              I also then scheduled what I thought were -- when

21    you -- when you filed what I would call administrative

22    matters to be heard first to help continue the

23    administration of the estate, which was the joint

24    administration and the bar date order.  There was not a

25    status conference actually scheduled for today.

1          If you would like one scheduled, I would just ask

2     you to -- we had a period of time where we were putting --

3     scheduling status conferences on schedule.

4          We -- that seemed to go to the side when we --

5     when -- and that was fine when the application for the

6     preliminary injunction and restraining order and other

7     relief, and the PJR, excuse me, application was filed.

8          So I didn't schedule anything -- there was not

9     anything, because you had asked for the contempt motion to

10    be addressed prior to the evidentiary hearing on the

11    prejudgment remedies.  And so today, yesterday and tomorrow

12    were supposed to be just those evidentiary hearings.  What

13    I've added to the calendar for -- that was supposed to occur

14    on yesterday and occurred today, again, were those

15    administrative matters.

16         We can have a status conference next week or the

17    following week, but it doesn't -- and we do need to have

18    some kind of either standing order or other order in place,

19    scheduling those status conferences so it's clear that

20    that's what we'll be addressing.  Okay?

21         MR. DESPINS:  Fair enough, Your Honor.  So can we

22    request the scheduling of the status conference?

23         THE COURT:  When would you like there to be a

24    status conference held?

25         MR. DESPINS:  As early as Your Honor is available.

1    This will take no more than 10, 15 minutes.

2              THE COURT:  I can have a status conference next

3    Tuesday, the 21st, and that will give people an opportunity

4    to know that there is a status conference being held.

5              MR. DESPINS:  Okay.

6              THE COURT:  Hold on a minute.  I'll check and see

7    what the time frame is.

8         (Pause)

9              THE COURT:  I could have a status conference at

10   noon, and I will hold it via Zoom if the parties -- you

11   don't have to request that.  I'm sure if it's only going to

12   be ten minutes, that we can do it via Zoom.

13             MR. DESPINS:  And, Your Honor, is that Tuesday,

14   the 22nd?

15             THE COURT:  Yes.  Did I say a different date?  I'm

16   sorry.

17             MR. DESPINS:  I thought I heard the 21st, but I

18   could have heard wrong.

19             THE COURT:  Well, I can do it -- I could do it

20   Monday or Tuesday, but Tuesday is fine if you -- if you want

21   that.

22             MR. DESPINS:  It's probably better on Monday

23   because I guess people are starting to disappear now, with

24   Thanksgiving.  Probably early on during the week so it's --

25   if you have Monday available, could --

1            THE COURT:  We could do Monday at noon or 1:00

2      p.m.

3            MR. DESPINS:  Oh, noon is fine for us.  Thank you,

4      Your Honor.

5            MR. HENZY:  And that would be via Zoom, Your

6      Honor.

7            THE COURT:  Via Zoom.

8            MR. HENZY:  Okay.  Yep.  That's fine, Your Honor.

9      That's fine with me.

10            THE COURT:  All right.  So we'll schedule a status

11      conference for November 21st at noon, and what we'll -- what

12      we should do is I'll ask the courtroom deputy to issue a

13      notice of a status conference to be held on the 21st at

14      noon, and then you should be -- we should be prepared that

15      if we're going to have continued status conferences, we need

16      to at least set some dates at that -- at that status

17      conference.  Okay?

18            MR. DESPINS:  Understood, Your Honor.

19            THE COURT:  All right.

20            MR. DESPINS:  And the last point I just want to

21      confirm before we let the interpreter go.  Mr. Henzy, there

22      will be no witnesses tomorrow?

23            MR. HENZY:  I do not  -- we're not calling any

24      witnesses, yes.

25            MR. DESPINS:  So we can cancel the interpreter.

1    Thank you very much, Your Honor.

2            THE COURT:  Okay.  Thank you.  All right.  This is

3    the last matter on today's calendar.  We are starting the

4    hearing tomorrow at 11:00 a.m. as opposed to 10:00 a.m., but

5    it will be via Zoom.  And since this is the last matter on

6    today's calendar, court is adjourned.

7            ALL:  Thank you, Your Honor.

8            THE COURTROOM DEPUTY:  Court is adjourned.

9            MS. CLAIBORN:  Thank you.

10    (Proceedings concluded at 3:38 p.m.)

11    I, CHRISTINE FIORE, Certified Electronic Court Reporter

12    and Transcriber, certify that the foregoing is a correct

13    transcript from the official electronic sound recording of

14    the proceedings in the above-entitled matter.

15

16    *Christine Fiore*

17    _____          December 1, 2022

18        Christine Fiore, CERT

19            Transcriber

20

21

22

23

24

25