UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

```
In Re                       *   Case No. 22-50073 (JAM)
                            *
    HO WAN KWOK and GENEVER  *
      HOLDINGS CORPORATION,  *
                            *
            Debtor.         *

    GENEVER HOLDINGS, LLC,   *   Case No. 22-50592 (JAM)
                            *
            Debtor.         *   Bridgeport, Connecticut
                            *   November 18, 2022
    * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION TO SEAL; MOTION OF
CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER HOLDING
DEBTOR IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH
CORPORATE GOVERNANCE RIGHTS ORDER and MOTION OF
CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER COMPELLING INDIVIDUAL
DEBTOR, MEI GUI, HK INTERNATIONAL FUNDS
INVESTMENTS (USA) LIMITED, LLC, HING CHI NGOK, GREENWICH
LAND LLC, LAMP CAPITAL LLC and COLD SPRING (NEW YORK) LTR TO
COMPLY WITH RULE 2004 SUBPOENAS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:              ERIC A. HENZY, ESQ.
                            JAMES MORIARTY, ESQ.
                            JOHN CESARONI, ESQ.
                            Zeisler & Zeisler, P.C.
                            10 Middle Street, 15th Floor
                            Bridgeport, CT 06604

For the Chapter 11 Trustee:  NICHOLAS A. BASSETT, ESQ.
                            AVI LUFT, ESQ.
                            DOUGLASS BARRON, ESQ.
                            ALEXANDER BONGARTZ, ESQ.
                            Paul Hastings LLP
                            200 Park Avenue
                            New York, NY  10166

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES: (Cont'd.)

For the Creditor, Pacific      ANNECCA SMITH, ESQ.
 Alliance Asia Opportunity     Robinson & Cole
 Fund L.P.:                    28 Trumbull Street
                               Hartford, CT  06103

                               STUART SARNOFF, ESQ.
                               PETER FRIEDMAN, ESQ.
                               O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036

For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the United States
                                  Trustee
                               The Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510

For the Creditors Committee:   JONATHAN KAPLAN, ESQ.
                               Pullman & Comley
                               850 Main Street
                               Bridgeport, CT  06601

For Logan Cheng, Creditor:     JAY MARSHALL WOLMAN, ESQ.
                               Randazza Legal Group, PLLC
                               100 Pearl Street
                               Hartford, CT  06103
```

1          (Proceedings commenced at 10:41 a.m.)

2          THE COURTROOM DEPUTY:  Case no. 22-50592, Genever

3     Holdings, LLC, and case no. 22-50073, Ho Wan Kwok and

4     Genever Holdings Corporation.

5          THE COURT:  If we could have appearances for the

6     record starting with the Chapter 11 Trustee, please.

7          MR. BASSETT:  Good morning, Your Honor.  It's Nick

8     Bassett, from Paul Hastings, on behalf of the Chapter 11

9     Trustee.  Trustee Despins is unavailable for this session

10    this morning.

11         THE COURT:  Okay.  Good morning.

12         Anyone else for the Chapter 11 Trustee?

13         MR. LINSEY:  Good morning, Your Honor.  I'm

14    Patrick Linsey, also for the Trustee.

15         MR. LUFT:  And, Your Honor, this is Avi Luft, of

16    Paul Hastings, also representing the Chapter 11 Trustee, Luc

17    Despins.

18         THE COURT:  Good morning.

19         MR. LUFT:  Good morning, Your Honor.

20         THE COURT:  Okay.  The Office of the United States

21    Trustee?

22         MR. BARRON:  Your Honor, excuse me.  This is

23    Douglass Barron also representing --

24         THE COURT:  Oh, I'm sorry.  I didn't --

25         MR. BARRON:  -- also representing the Chapter 11

1    Trustee.  Sorry.

2              THE COURT:  Hold on a second.  Hold on a second.

3    We're talking over each other.  I didn't see you, Attorney

4    Barron, so go ahead, please.

5              MR. BARRON:  I apologize.  There's some lag in my

6    mute button.  This is Douglass Barron representing the

7    Chapter 11 Trustee also from Paul Hastings.  I just wanted

8    to make my appearance.

9              THE COURT:  Yes.  Thank you.  Good morning.

10             The Office of the United States Trustee, please?

11             MS. CLAIBORN:  Good morning, Your Honor.  Holley

12   Claiborn for the U.S. Trustee.

13             THE COURT:  Counsel for the debtor?

14             MR. HENZY:  Eric Henzy, of Zeisler & Zeisler, for

15   the debtor.

16             THE COURT:  I should say --

17             MR. MORIARTY:  Good morning, Your Honor.  James

18   Moriarty, Zeisler & Zeisler, a,lso for the debtor.

19             MR. CESARONI:  Good morning, Your Honor.  John

20   Cesaroni, also of Zeisler & Zeisler, for the debtor.

21             THE COURT:  I should say are we only -- are you

22   only representing the individual debtor, Mr. Kwok?  What

23   about the other parties today?

24             MR. HENZY:  I believe, Your Honor, that the --

25   it's only Mr. Kwok that is involved in the contempt motion.

1    If the motion to compel is heard today, then we would also

2    be appearing for Mei Guo and HK International.

3              THE COURT:  Okay.

4              MR. HENZY:  Thank you.

5              THE COURT:  That's fine.  Thank you for clarifying

6    that for the record.

7              Counsel for PAX?

8              MR. SARNOFF:  Stuart Sarnoff, O'Melveny & Myers,

9    on behalf of Creditor PAX.

10             MR. FRIEDMAN:  Good morning, Your Honor.  It's

11   Peter Friedman, from O'Melveny & Myers, on behalf of PAX.

12             MS. SMITH:  Good morning, Your Honor.  Annecca

13   Smith, of Robinson & Cole, also on behalf of PAX.  We're

14   Connecticut counsel.

15             THE COURT:  Good morning.

16             MR. KAPLAN:  Good morning, Your Honor.  Jonathan

17   Kaplan, of Pullman & Comley, on behalf of the Creditors

18   Committee.

19             THE COURT:  Good morning.

20             And, Attorney Wolman, for Creditor Cheng?

21             MR. WOLMAN:  Yes.  Good morning.  Jay Wolman, of

22   Randazza Legal Group, for creditor Logan Cheng.

23             THE COURT:  Good morning.  All right.  I think

24   everyone has noted their appearance for the record, is that

25   correct?

1          (No response)

2                    THE COURT:  Okay.

3                    MR. BONGARTZ:  Your Honor, this is Alex Bongartz,

4     also of Paul Hastings, for the Chapter 11 Trustee.  I

5     apologize for having audio issues earlier on, but I'm also

6     participating via Zoom.  Thank you.

7                    THE COURT:  Okay.  Thank you.

8                    All right.  Today is -- the first matter we're

9     going to address today is the motion to seal and the

10    objection to the motion to the seal, but before we do that

11    there's a few things that I want to discuss with the parties

12    before we proceed today or in any further hearings in this

13    case.

14                   Yesterday's evidentiary hearing did not -- was not

15    structured properly and was very confusing and difficult for

16    the court to follow and that's one of the reasons why I've

17    said on many occasions if we're going to have evidentiary

18    hearings we're going to have them in person.

19                   As you can see we've already lost 25 minutes this

20    morning because of technical issues and I'm not going to do

21    this anymore.  Okay?  This case -- we need to address these

22    issues in person.  And today we're going to proceed via Zoom

23    because I said we were, but this is -- we have to get over

24    this expectation that everything's going to be via Zoom in

25    this case.  This is important enough that everyone needs to

1    be here in person if they wish to be, number one.

2           Number two, when evidence is presented to the

3    court during a hearing, whether it's through witnesses or

4    counsel and argument, the counsel will need to ask the

5    courtroom deputy to display whatever exhibit it is that

6    counsel is asking the parties to look at.  And then, and

7    only then, will control of that document be given to the

8    lawyer if the Court agrees to that occurring.

9           We need to maintain a record.  And the record of

10   yesterday's hearing is a mess and we're not going to have

11   that happen again.

12          With regard to the motion to seal and the

13   objection, I have read both of them and I am going to let

14   you both argue.

15          But before we get to the merits of the motion to

16   seal, I need the trustee's counsel to identify with regard

17   to each of the specific documents that the trustee is

18   asserting that -- exhibits that would be introduced at this

19   hearing, which grounds apply to each specific documents that

20   the trustee is asserting are reason to seal that document.

21          For example, are you asserting that it's protected

22   by the protective order, the privileges order, who asserted

23   what privilege, whether it's a third party, whether it's a

24   debtor, was the debtor, and what level of confidentiality in

25   connection with the terms and conditions of the protective

1   order, that needs to all be set forth specifically on the

2   record of this case before we proceed on the motion to seal.

3         So, Mr. Bassett, I don't know if you are prepared

4   to do that at this moment.  And if you're not and you need

5   to take a recess, we'll take a recess, but that -- this case

6   has to prepare -- be prepared and structured in a way that

7   makes sense.

8         We are not going to have an unruly hearing.  We're

9   not going to have people come in and out of a hearing.  This

10   is a hearing that is an evidentiary hearing at which the

11   lawyers have to present the evidence properly.

12         So before we proceed on the motion to seal, that

13   is what the trustee's counsel needs to do with regard to

14   every one of the exhibits that the trustee is asserting

15   should be sealed in connection with this hearing.

16         So, Attorney Bassett, do you need some time to put

17   that information together?

18         MR. BASSETT:  Your Honor, Attorney Linsey, for the

19   trustee, is going to be handling the motion to seal.  And I

20   will not speak for him, but I believe he is prepared to do

21   that now.

22         THE COURT:  Attorney Linsey?

23         MR. LINSEY:  Yes, Your Honor.  I can address -- I

24   can address the Court's question.

25         THE COURT:  Well, it's not a question.  It's a

1   requirement.  You are now faced with an objection to a --

2   not only you have to prove your entitlement to sealing, but

3   you're faced with an objection that none of these documents

4   should be sealed.

5              MR. LINSEY:  Okay.

6              THE COURT:  So you have to establish why they

7   should be.

8              And I asked the questions very specifically

9   yesterday and made a record about ECF No. 1099 and ECF No.

10  1110.  You told me that those are the sealed documents.

11  Trustee's Exhibits 20 through 24, 28 through 30, 34 through

12  38, and ECF No. 1099 and Exhibit 27 and ECF No. 1110.  So

13  you need to do that before we proceed with this motion to

14  seal.

15             MR. LINSEY:  You're right, Your Honor.  Let me

16  respond to that, please.

17             With respect to all but one of those exhibits, the

18  Exhibit 20, 21, 22, 23, 24, 28, 29, 30, 34, 35, 36, 37 and

19  38, these are email correspondence or memoranda by the

20  debtor's or among the debtor's former counsel that are

21  subject to attorney-client privilege.  In some of these,

22  there is attorney work product that I --

23             THE COURT:  I'm going to stop you right there.

24  That's not responsive to my question.

25             You're going to take each exhibit one at a time

1    and you're going to tell me under what grounds the trustee

2    is asserting that that document should be sealed.

3            MR. LINSEY:  Okay.

4            THE COURT:  So let's start with Exhibit 20.

5            MR. LINSEY:  Exhibit 20 is to be sealed as

6    confidential attorney-client privilege.

7            THE COURT:  And who's asserting that attorney-

8    client privilege?

9            MR. LINSEY:  The estate, the trustee is asserting

10   that attorney-client privilege.  He has assumed control of

11   the attorney-client privilege from the debtor pursuant to

12   the privileges order.

13           THE COURT:  Okay.  Hold on.  And that's the only

14   protection under the privileges order?  You're not seeking

15   -- you're not deeming it confidential or highly confidential

16   or any of the other terms that are in the protective order,

17   Exhibit 20?

18           MR. LINSEY:  Your Honor, I don't want to waive

19   that.  I will say that it's --

20           THE COURT:  Well, you may not want to waive it,

21   but you have to specify that you're asserting it.  So you

22   need to --

23           MR. LINSEY:  Okay.

24           THE COURT:  Because there's all different kinds of

25   provisions in this protective order about highly -- regular

1   level of confidentiality, highly confidential, and then

2   there's some other level I believe too.

3          So you all created these documents.  You all

4   agreed to these documents.  You need to use the provisions

5   of these orders properly to establish a record as to whether

6   or not I should grant your motion to seal.  Okay?

7          MR. LINSEY:  Yes.

8          THE COURT:  So you need to --

9          MR. LINSEY:  So let me -- let me try to respond to

10  that more articulately, Your Honor.

11         The reason I don't want to designate these under

12  the protective order is because the protective order

13  provides for certain designated material to be shared with

14  certain other parties that we can't share privileged

15  materials with.

16         So while we're not waiving the right to designate

17  if it were subsequently found to be not privileged, we think

18  it's clearly privileged, but if it -- we're not waiving the

19  right if there were a finding of non-privilege in the

20  future.

21         Right now the only protection being asserted with

22  respect to 20 is attorney-client privilege confidentiality

23  attendant to the privileges order and the attorney-client

24  privilege that is in effect that existed as of the petition

25  date, and control of which was assumed by the trustee

1    pursuant to the trustee's appointment, and as sort of

2    effectuated by the consent privileges order that Your Honor

3    entered.

4                THE COURT:  So Exhibit 20 is you are moving that

5    that exhibit be sealed and that it should be sealed on the

6    basis of the trustee is asserting an attorney-client

7    privilege with regard to all the information in that

8    exhibit.  Is that correct?

9                MR. LINSEY:  Correct, Your Honor.

10               THE COURT:  Okay.

11               MR. LINSEY:  Yes, Your Honor.

12               THE COURT:  Then let's move on to Exhibit 21.

13               MR. LINSEY:  The same -- the same answer goes to

14   Exhibit 21, Your Honor.

15               THE COURT:  So you're asking that Exhibit 21 be

16   sealed due to the attorney-client privilege, which is

17   asserted by the trustee in connection with the privileges

18   order?

19               MR. LINSEY:  Correct, Your Honor.

20               THE COURT:  Okay.  Exhibit 22.

21               MR. LINSEY:  The same answer as to Exhibit 22.

22   It's attorney-client privilege with respect to the

23   privileges order.

24               THE COURT:  Exhibit 23.

25               MR. LINSEY:  The same answer as to Exhibit 23,

1    attorney-client privilege with respect to the privileges

2    order.

3              THE COURT:  Exhibit 24.

4              MR. LINSEY:  The same answer with respect to

5    Exhibit 24, attorney-client privilege with respect to the

6    privileges order.

7              THE COURT:  Okay.  Then moving on to Exhibit 28.

8              MR. LINSEY:  Did we last skip 27, Your Honor?

9              THE COURT:  Exhibit 28.  Yeah.  We're skipping 27

10   because that's ECF No. 1110.

11             MR. LINSEY:  Understood, Your Honor.

12             THE COURT:  We're dealing with ECF No. 1099 right

13   now.

14             MR. LINSEY:  That's fine.  And I'll explain why

15   they're separately docketed later.

16             Exhibit 28 is the same answer, attorney-client

17   privilege with respect to the Court's privileges order.

18             THE COURT:  Okay.  Then Exhibit 29.

19             MR. LINSEY:  Attorney-client privilege with

20   respect to the Court's privilege order.

21             THE COURT:  You say the Court's privilege order,

22   but it's the consent order on the privileges that's been

23   approved by the Court.

24             MR. LINSEY:  Party's consent with the Court's

25   order.

1          THE COURT:  Right.

2          MR. LINSEY:  But whatever the -- whatever the

3     proper characterization is, I'll defer to Your Honor.

4          THE COURT:  I just want the record to be clear

5     that it's a consent order.

6          MR. LINSEY:  I appreciate that, Your Honor.

7          THE COURT:  All right.  Exhibit 30.

8          MR. LINSEY:  Attorney-client privilege with

9     respect to the consent privilege order.

10          THE COURT:  Exhibit 34.

11          MR. LINSEY:  Attorney-client privilege with

12     respect to the consent privilege order.

13          THE COURT:  Exhibit 35.

14          MR. LINSEY:  Attorney-client privilege with

15     respect to the consent privilege order.

16          THE COURT:  36.

17          MR. LINSEY:  Attorney-client privilege with

18     respect to the consent privilege order.

19          THE COURT:  37.

20          MR. LINSEY:  Attorney-client privilege with

21     respect to the consent privilege order.

22          THE COURT:  38.

23          MR. LINSEY:  Attorney-client privilege with

24     respect to the consent privilege order.  This one in

25     particular has -- is also work product, which is just a

1   general, common law protection.

2          And, Your Honor, in my -- in my argument, I'll

3   address how all of this relates to 107.

4          THE COURT:  No.  No.  Stop.  Stop.

5          MR. LINSEY:  Yes, Your Honor.

6          THE COURT:  Not yet.  I'm not ready.

7          We're not going go -- we're not going to have a

8   free-for-all hearing.  This is -- we're not -- we're not

9   doing that.

10          So now, Attorney Linsey, you have addressed every

11   exhibit that's been filed under seal and ECF No. 1099,

12   correct?

13          MR. LINSEY:  Correct, Your Honor.

14          THE COURT:  Okay.  So then let's turn to ECF 1110,

15   which is apparently only Exhibit 27.

16          MR. LINSEY:  That is the deposition transcript of

17   the debtor from the debtor's deposition taken last week.

18   Debtor's counsel marked that transcript highly confidential.

19   The trustee is obligated to file anything highly

20   confidential under seal and so that was filed under seal in

21   compliance with the trustee's obligations under the

22   protective order.

23          THE COURT:  And even if a party is a -- has agreed

24   to be bound by the confidential, excuse me, the protective

25   order by signing an agreement, the highly confidential

1   information is not shared or is it shared with that person?

2          MR. LINSEY:  Parties that have -- so under the

3   protective order, the attorney -- for anything designated

4   highly confidential, and that's what we're talking about

5   here, attorneys for the committee and the U.S. Trustee are

6   permitted to view highly confidential documents.

7          Attorneys for parties that have signed the

8   attachment to the protective order may also view highly

9   confidential documents.  However, that is subject to the

10  consent of the designating party, which consent will not

11  unreasonably withheld.

12         My understanding is that PAX has signed the

13  attachment to the protective order and I have posed to Mr.

14  Henzy whether the debtor consents to disclosure of that

15  exhibit to PAX as highly confidential.  And that my

16  understanding, and Mr. Henzy can correct me if I'm wrong, is

17  that the debtor does not object.  It's somewhat a *fait*

18  *accompli*.  PAX's counsel was attending the deposition.

19         So, you know, so for that reason, attorneys for

20  the U.S. Trustee, for the committee, and for PAX, as well as

21  the debtor, and obviously the Chapter 11 Trustee and the

22  Court may view Exhibit 27.

23         THE COURT:  Okay.

24         MR. MORIARTY:  Your Honor, this is James Moriarty

25  for the debtor.  Is it okay with the Court if I just add a

1    little bit of color to the deposition transcript?

2              THE COURT:  For what purpose?

3              MR. MORIARTY:  Well, maybe I can make that piece

4    of the motion potentially resolve itself.

5              THE COURT:  Okay.  Let me hear what you have to

6    say then.

7              MR. MORIARTY:  The debtor was deposed last Friday

8    for a hearing that was supposed to begin on Tuesday.  Under

9    the protective order, a deposition that is taken within less

10   than five business days of a hearing is automatically deemed

11   confidential.

12             And then the party designating it, in this case,

13   the debtor, has ten days to review the transcript and

14   effectively make whatever more narrow designations to the

15   extent designation should be more narrow that party deems

16   appropriate.

17             So our ten days, the debtor's ten days, expires

18   this coming Monday.  The debtor's intention is to file on

19   the docket a redacted version of Exhibit 27 to the extent

20   where redactions are appropriate.

21             For purposes of today's hearing, to the extent

22   that Attorney Henzy or Attorney Bassett intend to use the

23   transcript, we are not going to object.  We're not going to

24   ask that the courtroom be closed.  And any portions that are

25   discussed or shown during today's hearing will be unredacted

1     in the filing that is made on Monday.

2             THE COURT:  Okay.  So what you're saying is that

3     the document, as it exists right now in ECF No. 1110, which

4     is sealed, you will -- the debtor has no opposition to that

5     being shown during the hearing today by either Attorney

6     Bassett or Attorney Henzy, and that you will be filing a

7     redacted version of the document on the docket on Monday,

8     which will include an unredacted -- which will include

9     whatever is shown in court today, if anything, unredacted.

10    Is that correct?

11            MR. MORIARTY:  That is correct, Your Honor.

12            THE COURT:  Okay.  So then with regard to ECF No.

13    1110, if there is a sealing of that document, if the motion

14    to seal is granted, it's only going to be partially sealed,

15    and it may end up being only temporarily sealed, and there

16    will be a redacted version that someone could look at and

17    determine whether they want to see the remainder of it.  Is

18    that what you're saying?

19            MR. MORIARTY:  Yes, Your Honor.

20            THE COURT:  Or if someone wanted to see the ECF

21    1110 -- 1110 and they're not already a party to the

22    protective order, they could become a party to the

23    protective order, and see that transcript, correct?

24            MR. MORIARTY:  In accordance with the terms of the

25    protective order and with whatever rights the designating

1    party has, that is correct.

2              THE COURT:  Okay.  Thank you very much.

3              MR. WOLMAN:  Your Honor, may I be heard on this

4    brief exhibit?

5              THE COURT:  We're not ready to talk about the

6    motion to seal yet, Attorney Wolman, so, no.  We're going to

7    turn to the motion to seal in a minute.

8              All right.  So that is the status of the exhibits,

9    Attorney Linsey?

10             MR. LINSEY:  Yes, Your Honor.

11             THE COURT:  Okay.  All right.  Now, please proceed

12   with your motion to seal.

13             MR. LINSEY:  Thank you, Your Honor.

14             I have to confess I was a little surprised someone

15   found the motion to seal controversial, but in light of the

16   objection that's been filed, I have a number of case

17   citations that I can provide the Court reflecting that the

18   code provides for sealing privileged, and specifically

19   attorney-client privileged materials.

20             First though I'd like to briefly outline what's at

21   issue here and why the trustee -- the relief sought by the

22   trustee is both important and narrowly tailored.

23             This is a case where the trustee was appointed and

24   was charged with some control of the debtor's attorney-

25   client privilege on the material respects.

1          Your Honor found that and entered it as a consent

2    order as we discussed.  No one appealed the consent order.

3          This case has been fraught with constant conflict

4    between the trustee, for him to fulfill his obligations and

5    obtain control of the estate assets, and the debtor doing

6    what we've seen the debtor do in response.

7          The motion to seal is attendant to proceedings on

8    the trustee's motion for contempt, which is premised

9    ultimately to permit the trustee to assert the estate's

10   rightful control over assets Ace Decade and Dawn State which

11   are among the parties to a $500 million claim against UBS

12   pending in the United Kingdom.  That claim is an asset of

13   the estate.

14         As it relates to the motion for contempt, there

15   are certain privileged email communications and attorney

16   memorandum involving the debtor's former law firms that are

17   relevant to the factual issues in dispute, namely the

18   relationship between the debtor and Ms. Wang.

19         Attorney-client privilege, as it pertains to the

20   UBS litigation in the U.K., is of paramount importance.

21   We're talking about a potentially valuable asset of the

22   estate and the trustee has a duty to maximize its value for

23   the benefit of creditors.

24         Prejudicing attorney-client privilege on subject

25   matter related to the UBS litigation is plainly commercially

1    detrimental to the estate.

2           Further the work product the debtor's former

3    counsel equates to confidential research that has value to

4    the debtor's estate, which value would be obliterated by its

5    unnecessary disclosure.

6           There is ongoing litigation concerning the UBS

7    subject matter, a threat to the confidentiality of attorney-

8    client privilege and work product, therefore, threatens the

9    value of the estate's claims.

10          I just want to emphasize that because under

11   Section 107 all that needs to be shown is the potential of

12   harm to an entity.

13          What we have here is the potential for harm to the

14   entire estate and to numerous entities and the individuals

15   that are parties in interest in this case.

16          So that was the starting point for the trustee in

17   dealing with these certain privileged documents.

18          And so what was the trustee going to do?

19          Well, the trustee could have sought to close the

20   proceedings on the motion for contempt in their entirety and

21   to seal the parties' exhibits and pleadings, but the trustee

22   recognizes that there's a public interest in disclosure and

23   so the trustee instead took a thoughtful, surgical approach.

24          To the maximum extent possible, the trustee has

25   filed his exhibits on the public docket, except for a

1    confidentiality that was of paramount importance for all but

2    one exhibit and that is because of the attorney-client

3    privilege and the work product issues I've discussed.  All

4    of the other exhibits are on the docket.

5         The trustee has redacted only that information in

6    his reply memorandum that comes from sealed exhibits or

7    privileged or confidential material.

8         The trustee has also conducted the hearing and was

9    ready to continue conducting the hearing on the motion for

10   contempt in public for the most part only seeking such

11   limited sessions are as necessary to discuss protected

12   material in the absence of all parties.

13        The trustee also filed his reply on the public

14   docket with targeted redactions of protected material and

15   filed a motion to make sure that this issue was before the

16   Court, understood and the Court's findings were narrow,

17   targeted, justified and crystal clear.

18        Section 107 of the code protects an entity with

19   respect to trade secrets or confidential research,

20   developments or commercial information.

21        Numerous cases have found that attorney-client

22   privilege or work product falls into 107.  I'll read from *In*

23   *re: 50-Off Stores, Inc.,*  that's 213 B.R. 646, a bankruptcy

24   case from the --

25        THE COURT:  Could you state the name of the case.

1    I'm sorry.

2              MR. LINSEY:  Yes, Your Honor.

3              THE COURT:  Could you state the name of the case

4    and the cite again, Attorney Linsey?

5              MR. LINSEY:  Yes, Your Honor.  *In re 50-Off*

6    *Stores, Inc.*, 213 B.R. 646, the pin cite is 655.  It's a

7    bankruptcy court case from the Western District of Texas in

8    1997.  And this is quoting from that case.

9              "Section 107(b) by its express terms affords a

10   bankruptcy judge some authority to prevent just such an

11   obvious injustice by permitting the Court to protect an

12   entity with respect to confidential research or commercial

13   information.

14             Certainly a lawyer's work product is one type of

15   confidential research that falls within the plain language

16   of the statute's protection.  And certainly the client's

17   disclosures made in confidence to its attorneys is one kind

18   of confidential commercial information."

19             I would also cite the case of *In re: Pasquinelli*

20   *Home Building, LLC*.  Pasquinelli is spelled P-A-S-Q-U-I-N-E-

21   L-L-I.  The Lexis cite is 213 Bankruptcy Lexis 605.  The

22   Westlaw cite is 213 W.L. 594459.  That's a bankruptcy court

23   decision from the Northern District of Illinois in 2013.

24             In that decision, the Court, under 107, sealed

25   documents with respect to a retention application where the

1    documents in the retention application disclosed

2    confidential litigation strategy and subject matter with

3    respect to attorney-client privilege.

4           And what the bankruptcy court found is the reason

5    that a retention application exists is to maximize its value

6    of this asset of the estate and revealing attorney-client

7    privilege would threaten that asset's value.  So in that

8    sense, it's particularly on point here.

9           Another case I can cite is *Marigrove, Inc. v. De*

10   *Arruda, D-E A-R-R-U-D-A, Pinto, P-I-N-T-O*, 215 U.S. District

11   Lexis 66312.

12          And that is a case where the bankruptcy court

13   determined that sealed motions, including work product,

14   regarding the progress of an investigation was justified

15   because unsealing a motion could compromise efforts of the

16   trustee to recover hundreds of millions of dollars in

17   losses.  And the district court affirmed the bankruptcy

18   court in that case.

19          I'll also draw the Court's attention, and I think

20   it's relevant by analogy -- it's not relevant with respect

21   to 107, but *Team Obsolete, Ltd. vs. A.H.R.M.A.*, 464 F. Supp.

22   2d 164, that's an Eastern District of New York District

23   Court case.

24          What that decision notes is that routinely, with

25   respect to motions to withdraw counsel, courts admit

1    attorney-client privilege evidence but seal it to protect

2    the important interests in attorney-client privilege.

3              And that collects cases throughout the Second

4    Circuit in that regard.  So certainly, you know, there's all

5    sorts of relief justifying the sealing in this case.

6              But also common sense, and just that old maxim

7    that where's there's a right there's a remedy, the trustee

8    has the right to use -- to retain these attorney-client

9    privilege documents because the trustee has assumed the

10   privilege.

11             It simply cannot be the case that the trustee

12   cannot use those documents to correct a disagreement that

13   the trustee has with the debtor without voiding the

14   privilege and prejudicing the value of claims that are named

15   at hundreds of millions of dollars.

16             Now, I understand concerns that have been

17   discussed generally, concerns about rights of access to

18   publicly filed documents, concerns about rights that might

19   exist under the First Amendment and the public's right to

20   know, I get that.  I was a newspaper reporter before I went

21   to law school and I believe in that.

22             But, Your Honor, here, where there's been such a

23   specific (indiscernible) showing as to why there needs to be

24   confidentiality and also protection and procedures to make

25   sure that it's as targeted as possible, I would say that at

1    some point it's incumbent on anyone who has an issue with

2    that to explain exactly why they need to see these things.

3            I mean, we're talking about limited communication

4    being offered for a limited purpose, which is a discrete

5    factual dispute, a factual dispute that only exists between

6    the trustee and the debtor.  And the trustee's success in

7    that dispute will benefit all creditors in the estate.

8            So because there's been a showing of great

9    importance for sealing the documents, because the procedures

10   proposed by the trustee are narrow, and because they're

11   supported by the Bankruptcy Code and the case law

12   interpreting the code, we would ask that the Court grant the

13   motion.  Thank you, Your Honor.

14           THE COURT:  Okay.  Thank you.

15           Attorney Wolman?

16           MR. WOLMAN:  Your Honor, if I may?

17           There is no reason -- we do not have to explain

18   why.  The reason is because Mr. Cheng and the public have a

19   right, that is why.  That is the only right that is ever --

20   that is the only reason that is ever needed.  No on has to

21   explain why they want the vote.  No one ever has to explain

22   why they want to bear arms.  No one ever has to explain why

23   they want to invoke a lawyer to defend themselves at trial.

24   They just can.

25           The only -- Mr. Linsey mentioned that where

1   there's a right there's a remedy.  The only right we're

2   talking about here is the First Amendment right.  Attorney-

3   client privilege is a privilege.  A privilege is not a right

4   by definition.

5              So we have a number of exhibits here, 20, 21, 22,

6   23, et cetera, et cetera, from 1099, that I haven't seen.

7   No idea what they are.

8              We do not have a specification of what the -- the

9   functional equivalent of a privilege log, of what each one

10   is, who the communication is, and why that particular

11   document, if it were revealed, would cause harm.  And

12   they're listing them both under Section 107 and under the

13   First Amendment right.

14              They haven't identified what exactly is going to

15   happen if this comes to light, you know.

16              In the case of somebody withdrawing from

17   representing somebody, you know, there's a direct attorney-

18   client communication that likely goes to some unethical

19   issue typically, if that's why the Court needs to address it

20   and permit a withdrawal, that could then harm that client if

21   it were coming out.

22              Here, the possibility that it somehow affects this

23   UBS litigation, they say it, they say they're being surgical

24   with their approach, I have no idea.  There's no way for me

25   to assert that.

1        And the Court needs to use its own judgment and

2    say, okay, how does this document and the entirety of the

3    document -- maybe a small portion of the document, what

4    exactly are we talking about -- because the moving party,

5    whose burden it is, and it's always the burden of the party

6    seeking to seal to justify why it needs to be sealed, they

7    haven't set forth.

8        Now, with respect to Exhibit 27, which I believe

9    is on -- I've heard -- actually I believe it's ECF 1100, not

10   1110.

11       THE COURT:  You're right.  I misspoke.

12       MR. WOLMAN:  Yesterday we were talking 1100.

13       THE COURT:  You're correct.  I misspoke with the

14   number.

15       MR. WOLMAN:  But this morning the Court mentioned

16   1110, but I think that's an entirely different document and

17   it's an order.

18       THE COURT:  No.  Let me stop you.  You're correct.

19   I misspoke.  The ECF number is 1100.  So I misspoke.

20       MR. WOLMAN:  Thank you, Your Honor.

21       THE COURT:  Okay.  And we'll make that correction

22   in the record throughout the record.  I made that -- I made

23   a mistake because this case has over 1100 documents in it.

24   Okay?

25       So you're correct.

1          MR. WOLMAN:  Of course you --

2          THE COURT:  That is correct.  And I was going to

3    correct that when you were done.  But since you've raised it

4    now, the ECF number is 1100 immediately following 1099.

5          MR. WOLMAN:  Thank you, Your Honor.

6          With respect to that document, you know, I do

7    understand that Mr. Linsey had to do a *pro forma* request to

8    seal under the order.  And then typically when that happens,

9    then it's the party who claims the confidentiality who has

10   to assert what the confidentiality basis is.

11         And I appreciate Mr. Moriarty indicating that we

12   can be open to whatever is being used.

13         My concern, of course, is whether or not the Court

14   would still rely upon portions that would be redacted as

15   part of making its determination because those portions

16   would still consist of judicial documents.

17         With respect to the one exhibit that contains

18   attorney work product, I believe that is Exhibit 38, you

19   know, there's potentially an argument and I can recognize

20   that that being what constitutes confidential research.

21         But counsel hasn't pointed to any binding case law

22   that shows that attorney-client privilege is itself the

23   commercial information.  It's not confidential research.

24   It's a communication.  There's nobody researching anything

25   there.  And it's not commercial which 107(b) requires.

1    And they haven't said exactly what the harm is

2    under the First Amendment that justifies it being withheld

3    from the public.  The public has a right to know.

4    Mr. Linsey, as a journalist, had the right to

5    know.  He doesn't -- and while he's now advocating for the

6    trustee, everybody else now has the right to know.  My next

7    door neighbor has the right to know because he has the First

8    Amendment right, and that --

9    While Mr. Cheng may be the one arguing for this

10   right now, it's not merely for himself, but on behalf of the

11   public to vindicate the public's right.  The public has a

12   right of access under Section 107.  The public has a right

13   of access under the First Amendment which trumps Section

14   107.

15   And since we haven't specified other than a

16   generic invocation for all of these exhibits, except for 27,

17   as to it just being the trustee claiming privilege because

18   it might harm the estate in the UBS case, that is not

19   sufficient a reason, Your Honor.

20   MR. LINSEY:  Your Honor, I want to be crystal

21   clear on this.  The trustee's primary concern is that if the

22   trustee begins posting, publicly disclosing attorney-client

23   communications with respect to subject matter under

24   litigation, the trustee is concerned that UBS could say

25   you've waived the privilege.

1          And we are entitled to obtain -- what otherwise

2     would be attorney-client communications that are relevant to

3     the estate's claims, $500 million claims.  That is plainly

4     prejudicial to the estate's ability to litigate those

5     claims.

6          And the *50-Off* case that I cited actually

7     discusses that very construct.  And it notes the threat of

8     disclosure without taking steps to seal documents or

9     otherwise to prevent public disclosure, the threat that

10    unnecessary public disclosure has to attorney-client

11    privilege.

12         I could read all of the exhibits into the record,

13    but that would cause the very harm that the trustee is

14    seeking to prevent.  So that is the reason, among many

15    others, the Court should grant this motion.

16         MR. WOLMAN:  Your Honor, there's nothing here, no

17    U.K. law, that says --that's been submitted and offered to

18    the Court to suggest that submitting one document that's

19    privileged then opens the door to all privileged documents

20    and waives it in perpetuity.

21         MR. LINSEY:  Well, this is like 20.  But, I mean,

22    at a certain point, the rule of reason has got to kick in.

23    We've more than met the standard.  This should not be

24    controversial.  We need to get on with the hearing.  I'm

25    happy to answer any questions that the Court has.

1          THE COURT:  I have no questions.

2          Anyone else wish to be heard?

3          MR. MORIARTY:  Your Honor, James Moriarty on

4     behalf of the debtor.

5          The privilege consent order, docket 856,

6     specifically provides at paragraph 8 that the trustee does

7     not have the right to waive any trustee privilege.  And it

8     says in parentheticals, "For example, (By disclosing

9     privileged documents or information in open court or on any

10    public docket or by sharing such documents or information

11    with a third party)."

12         THE COURT:  Tell me again what you're referring

13    to, Attorney Moriarty.

14         MR. MORIARTY:  It is the consent order regarding

15    control of attorney-client privilege --

16         THE COURT:  Okay.

17         MR. MORIARTY:  -- and work product protection --

18         THE COURT:  ECF 856?

19         MR. MORIARTY:  856, yes.  And this is at paragraph

20    8.

21         THE COURT:  And what paragraph?  Paragraph 8?

22         MR. MORIARTY:  Yes.

23         So if I may, Your Honor, under that paragraph, the

24    trustee's entitled to use documents that are the debtor's

25    privileged documents which the trustee now owns, but the

1    trustee is not entitled to waive it.  And if those documents

2    are posted on the public docket, anybody who sees them is

3    going to argue there's a waiver and the trustee would be in

4    violation of this order.

5          So the debtor's going to object to those documents

6    being used if they're not sealed.

7          THE COURT:  The paragraph also says that any

8    request to waive a trustee privilege has to be made by

9    motion, and no one's done that.

10          MR. LINSEY:  Certainly the trustee is not doing

11    that.  And the trustee agrees the privileges order requires

12    that these items be filed under seal, which is why they were

13    filed under seal in the first place along with the motion.

14          THE COURT:  Okay.  Anyone else wish to be heard?

15          MR. WOLMAN:  And, Your Honor, I would like to

16    reiterate that the order itself yields to Section 107 and

17    the First Amendment.

18          THE COURT:  What order?  What order, Attorney

19    Wolman?

20          MR. WOLMAN:  The one we were just discussing --

21          THE COURT:  The privileges order?

22          MR. WOLMAN:  -- the one at 856, paragraph 8.

23          THE COURT:  The privileges order?

24          MR. WOLMAN:  Yes, Your Honor.

25          THE COURT:  You say it yields to 107?  Is that

1    what -- was that your term?

2              MR. WOLMAN:  Yes.  To the extent it is

3    inconsistent with Section 107 or the First Amendment, the

4    First Amendment and Section 107 governs, in that order.

5              THE COURT:  Okay.  Anything further?

6              MR. WOLMAN:  No, Your Honor.

7              THE COURT:  All right.  Court will be in recess

8    until 11:45.

9              (Recess from 11:27 a.m. until 12:37 p.m.)

10             THE COURTROOM DEPUTY:  Court is in session after

11   recess.  The Honorable Julie Ann Manning is presiding.

12             THE COURT:  Okay.  Good afternoon.  We're back on

13   the record after taking a recess following the hearing and

14   argument made in connection with the Chapter 11 Trustee's

15   motion to seal, and to enlarge the time to -- enlarge the

16   page limit to file a reply.

17             THE COURTROOM DEPUTY:  I'm sorry, Your Honor.

18             THE COURT:  You're not picking me up?

19             THE COURTROOM DEPUTY:  I didn't -- it wasn't

20   moving so --

21             THE COURT:  Okay.  We have to start again?

22             THE COURTROOM DEPUTY:  -- we have to start it

23   again.  Yes.

24             THE COURT:  Okay.  Tell me when you're ready.

25             THE COURTROOM DEPUTY:  I think there was a little

1    delay.  I'm ready.

2              THE COURT:  Okay.  And it's recording?

3              THE COURTROOM DEPUTY:  Yes, it is recording.

4              THE COURT:  Okay.  All right.  We're back on the

5    record after a recess.

6              Prior to the recess, the Court heard argument on

7    the Chapter 11 Trustee's motion to seal and the objection to

8    the motion to seal filed on behalf of the creditor, Logan

9    Cheng.  The parties cited to different case law and

10   authority that was not previously brought to the Court's

11   attention.

12             The Court reviewed that information during the

13   recess and is ready to rule.

14             Therefore, the Court will -- I will announce the

15   ruling on the record, and that will be followed up with a

16   written order to be entered on the docket, hopefully, maybe

17   later today, hopefully today.

18             In any event, this is the Court's ruling on the

19   motion to seal.

20             A hearing on the Chapter 11 Trustee's motion to

21   seal in support of holding the debtor in civil contempt for

22   failure to comply with corporate governance rights order and

23   related documents, and to enlarge page limit for a reply,

24   which is ECF No. 1095, and the objection to the motion to

25   seal, 1115, ECF No. 1115, was held earlier today on November

1    18, 2022.

2            The documents identified by the trustee's counsel

3    during the hearing as exhibits that the trustee may

4    introduce at the hearing, but wishes to be sealed, the

5    trustee asserts are protected by a trustee privilege.  And

6    those privileged documents are included in ECF No. 1099, and

7    that includes Trustee Exhibits 20 through 24, 38 through 30,

8    and 34 through 38.

9            The privilege being asserted pursuant to a consent

10   order regarding control of attorney-client privilege and

11   work product protection related to the Rule 2004 subpoena

12   documents, and that I will refer to as the privileges

13   consent order, ECF No. 856, those documents are ordered

14   sealed based upon the assertion of the attorney-client

15   privilege applicable to those documents and also because the

16   Court finds that under 11 U.S.C. 107(b)(1), and District

17   Court of Connecticut Local Rule, Local Civil Rule 5(e), that

18   the potential harm to the estate from the waiver of the

19   attorney-client privilege relating to a substantial

20   litigation asset of the estate outweighs the public's

21   interest in disclosure, and further that the disclosure at

22   this time will negatively impact the trustee's ability to

23   conduct and carry out an investigation of the debtor's asset

24   -- assets, excuse me.

25           The trustee also identified one of the privileged

1    documents as an attorney work product privileged document.

2    The work product exhibit in ECF 1099 was identified by the

3    trustee's counsel as Trustee's Exhibit 38, which document

4    shall be also sealed as protected attorney work product

5    information.

6              In addition, one exhibit, the individual debtor's

7    deposition, which is the entirety of ECF No. 1100, has been

8    designated by the individual debtor as highly confidential

9    information under the protective order that was entered in

10   this case, ECF No. 923, and the harm of the disclosure of

11   the individual debtor's deposition at this time outweighs

12   the interest of the public, and having access to that

13   document because it will negatively impact the trustee's

14   ability to conduct and carry out the investigation of the

15   debtor's assets as required by the Bankruptcy Code.

16             Accordingly, it's hereby ordered that the motion

17   to seal is granted for the reasons stated on the record, and

18   that the privileged documents, the work product exhibit, and

19   the debtor's deposition are temporarily sealed in connection

20   with the hearing on the motion for contempt and will remain

21   sealed until further order of the Court.

22             That is the ruling of the Court.

23             So that we now can proceed with the continued

24   evidentiary hearing on the motion for contempt.

25             Before we proceed with the -- continue to proceed

1    with the hearing on the motion for contempt, I want to make

2    sure that everyone understands how we will be proceeding

3    with the hearing on the motion for contempt.

4           We are not going to have a hearing like we had

5    yesterday where people come in and out of the hearing.  If

6    the trustee, who will continue the hearing from where he

7    left, trustee's counsel, from where he left yesterday, has

8    points to make to support the motion for contempt, he will

9    do so first with all evidence and documents that are not

10   sealed.

11          Then the debtor's counsel will have an opportunity

12   to review and respond to -- I don't mean review meaning

13   looking at documents, I should just say respond to and

14   challenge and object to the trustee's presentation on

15   evidence that is not under seal.

16          And then if there is a need to introduce documents

17   that are now under seal, then we'll have to remove the

18   appropriate people from the courtroom and proceed that way,

19   and that portion of the hearing will be under seal.  And

20   that is how we are going to proceed.

21          Does anyone have any questions?

22          MR. BASSETT:  Your Honor, it's Nick Bassett from

23   Paul Hastings on behalf of the trustee.  Just a point of

24   clarification.  I think I understand Your Honor, but I just

25   want to make sure.

1        As I had indicated yesterday, I do think I could

2   cover my entire argument by just referring to some of the

3   under seal exhibits very -- at a very high level.  I take it

4   that is not how Your Honor would like to proceed.  And that

5   if I want to refer to those documents, even in a general

6   way, that I should do that as part of a separate sealed

7   session at the end.  Is that correct, Your Honor?

8        THE COURT:  Well, it's not how I want to proceed.

9   It's that yesterday Mr. Henzy said that he could not proceed

10  in the manner that you've just described, that he would need

11  to be able to respond -- he did not want to be foreclosed,

12  for lack of a better term, from responding to any issue of a

13  document under seal by having -- he wants to be able to talk

14  about the document.

15       So I don't think it's going to work unless you and

16  Attorney Henzy have had some discussion since yesterday

17  about how to handle that issue.  If you don't have an

18  agreement on that issue, which is fine, then we're going to

19  proceed in the manner in which I stated we're going to

20  proceed.

21       Attorney Henzy?

22       MR. HENZY:  Your Honor, we haven't talked about

23  it.  I'm not going to tell Mr. Bassett obviously how to

24  conduct his argument.  If he can make his argument without

25  having a problem with the sealing order that's now been

1    entered, that's totally up to him.

2            I'm going to want to refer specifically to matters

3    in those documents so that --

4            THE COURT:  Okay.  Well, then we're going to

5    handle the matter in the way that I already stated.  We're

6    going to have a hearing that everyone is going to be able to

7    listen to with regard to documents that are not sealed, and

8    then we'll have to have a sealed portion of the hearing to

9    deal with the issues that are sealed.

10           MR. HENZY:  Your Honor, I don't want to belabor

11   it, just so I understand, the deposition transcript is

12   sealed for today's hearing, period, correct?

13           THE COURT:  That is correct.

14           MR. HENZY:  Okay.

15           THE COURT:  That is correct.  All of the documents

16   that were addressed this morning and the Court specifically

17   asked Attorney Linsey about, all the trustee's exhibits that

18   are part of ECF No. 1099 and 1100 are sealed.

19           MR. HENZY:  But, Your Honor, just to get out ahead

20   of it, when I do ask you to admit or not admit, the exhibits

21   that I want admitted, I am going to want portions of the

22   deposition transcript admitted.

23           I don't know if Mr. Bassett is going to object.

24   He may not know if he's going to object until I tell him

25   what the portions are.

1    But I think if there's no objection, I think I

2    could do that without saying what is in those portions.  I

3    just want to give the Court that may be -- that may be

4    something we have to sort out when we get there.  Okay?

5         THE COURT:  I think what you're saying, Attorney

6    Henzy, is similar to what Mr. Bassett was saying, but you

7    weren't necessarily agreeing to, which is you were going to

8    say to me -- let me just play this out, okay, Attorney

9    Henzy?

10        MR. HENZY:  Yeah.

11        THE COURT:  I think what you -- what I heard you

12   say is you may refer to specific portions of the transcript

13   without having to say what they say --

14        MR. HENZY:  Yes.

15        THE COURT:  -- and ask me to consider those and

16   that I wouldn't have to have -- you wouldn't have to have

17   that discussion under seal.  Is that what you're telling me?

18        MR. HENZY:  No, I'm sorry, Your Honor.

19        So yesterday Mr. Bassett had admitted documents

20   that are now under seal.  Those were actually admitted as

21   full exhibits by stipulation.  And the issue I think now --

22        THE COURT:  Okay.

23        MR. HENZY:  -- is Mr. Bassett wants to talk about

24   the exhibits, show you and talk about the exhibits that are

25   now admitted in full.  I think that's where we potentially

1    run into a problem.

2           What I'm telling -- what I'm going over with you,

3    the evidence that I would like to have admitted before I

4    make my argument, you know, I could say, Your Honor, of the

5    deposition transcript, which is Exhibit 27, I want this page

6    and these lines and this page and these lines and I could do

7    that without saying what's in those lines of deposition

8    transcript.

9           And if Mr. Bassett said, no objection, I think it

10   could be similar as yesterday, it could be admitted in full,

11   but he may not be okay doing that.  Certainly telling us now

12   he's okay doing it because we may need to talk about what

13   those are in order for you to make those rulings.

14          MR. BASSETT:  Your Honor, first of all, in

15   response to Attorney Henzy's comments, I absolutely intend

16   to object to his effort to introduce his own client's

17   deposition testimony, his own client who is very

18   transparently not here before the Court today offering

19   testimony subject to cross-examination.  He has no ability

20   to introduce his client's deposition testimony under Federal

21   Rules of Civil Procedure 32 or the Federal Rules of

22   Evidence.  It's all hearsay.  He has no ability to do that.

23          What I was going to propose, Your Honor, in

24   accordance with your instructions at the outset of the

25   hearing this morning, was before making my argument I think

1    what Your Honor had said is that, you know, and I think this

2    is the correct way to proceed, is to deal with the evidence,

3    make sure everybody understands what evidence is in the

4    record, on both sides, and then we can argue from that

5    evidence.

6            If we need to deal with objections to Mr. Henzy's

7    attempts to introduce the deposition transcript, I don't

8    know how he could do that in open court because I'd assume

9    I'm going to have to -- I mean, I think it's wholesale

10   improper, but I assume I may have to refer to the specific

11   lines that he's trying to introduce.

12           But from the trustee's standpoint, Your Honor,

13   what I can -- what I can tell you is that the exhibits that

14   we are relying upon as part of our presentation and our

15   affirmative case, as it relates to the motion to hold the

16   debtor in contempt, are the documents that are already set

17   forth in the order that the Court entered yesterday and that

18   were admitted into evidence yesterday.  I'm happy to go

19   through those again, but I think that is on the record from

20   yesterday.

21           That's Trustee Exhibits 7 and 10, Trustee Exhibit

22   6, Trustee Exhibit 15.  And then in paragraph 4 of the order

23   that the Court entered yesterday we also had admitted into

24   evidence a portion of Exhibit 13, all of Exhibits 28 to 30,

25   Exhibit 34, Exhibits 36 and 37, and a portion of Exhibit 39.

1          The only additional exhibits that at this point,

2    as part of again the trustee's affirmative presentation that

3    I plan to have admitted into evidence or to ask the Court to

4    admit into evidence, are Exhibits 32 and 33 on the trustee's

5    list, which are not confidential.

6          And then I was planning to refer to and ask the

7    Court to admit very small portions of Exhibit 27, which is

8    the debtor's deposition transcript from last week, which is

9    usable by the trustee and admissible under both the Federal

10   Rules and the Federal Rules -- the Federal Rules of Civil

11   Procedure and the Federal Rules of Evidence.

12         But that, at this point, subject to the trustee's

13   right to ask the Court to admit additional exhibits for

14   rebuttal purposes would be the extent of the exhibits that

15   we'd ask the Court to admit for purposes of this hearing.

16         THE COURT:  Okay.  Well, again, we're going to

17   take the -- you're going to tell me -- you started

18   yesterday, by showing me specific information in exhibits

19   that support your claim that the debtor is still not in

20   compliance with the corporate governance order.  You're

21   going to continue that presentation with exhibits that are

22   not sealed.

23         Then Mr. Henzy can respond to that presentation

24   when you're done with any exhibits that are not sealed.

25         And then if you want to, and I believe you do

1  because you've just mentioned exhibits that are under seal,

2  then we will have to close the courtroom and have that

3  section of the hearing under seal with regard to the

4  documents that are under seal.

5          MR. BASSETT:  Understood, Your Honor.  Does Your

6  Honor want to deal with all evidence at the outset prior to

7  the continuation of argument?

8          THE COURT:  No.  I want -- I want you to deal with

9  the evidence that is public record first and make your

10  points.  If you have four or five points, A through D, on

11  why, or however many you have, on why the debtor is in

12  contempt, then you will tell me what exhibits that are

13  public record and that have been admitted you're relying on

14  to support those assertions.

15          If you're telling me now that there are other

16  exhibits that -- in addition to the exhibits that were --

17  you introduced yesterday to be admitted into evidence that

18  are not under seal, then, yes, you can proceed with -- you

19  can tell me what those exhibits are first and we can move

20  for the admission.

21          It appears that Attorney Henzy doesn't have any

22  objection to the admission of those exhibits that are not

23  under seal.

24          And then you can make your argument.  And then

25  Attorney Henzy will be able to respond.  And then we will

1     close the hearing and we will have the hearing only limited

2     to the parties with regard to the matters under seal.  And

3     if you have to go back to points A, B, C and D again, that's

4     what you'll have to do.

5          I'm not having a hearing where we break every two

6     minutes to come back and forth.  It's untenable.  It makes

7     no sense.  You're asking the Court to do something that is

8     unfair and does -- not unfair, I'm saying how I'm -- how do

9     you want me to make this record?

10          I am not making a record where we have ten minutes

11    of public hearing, ten minutes under seal, ten minutes --

12    that's not going to happen.  That is not a good use of

13    anyone's time or resources.

14          I've made the ruling on the motion to seal.  I've

15    explained to you how the hearing is going to proceed.

16          So if there are -- if you would like to introduce

17    other exhibits that are on the trustee's exhibit list that

18    are not subject to the order that was just entered sealing

19    those specific exhibits, you may do so and then you must use

20    the exhibits to explain to me your points as to why and how

21    the debtor is in contempt of the corporate governance order.

22          Then Attorney Henzy will do the same thing.

23          And then we'll move on to the sealed portion of

24    the hearing.  Okay?

25          MR. BASSETT:  Understood.  Understood, Your Honor.

1    And I think that's what I was attempting to do at least.

2              The two exhibits that I mentioned that are not

3    confidential that I would like to have --

4              THE COURT:  Then you need to move for their

5    admission and see what -- tell me what they are, move for

6    their admission, and I have to see if anybody has any

7    objection to them.

8              MR. BASSETT:  Understood, Your Honor.

9              The two exhibits are Trustee Exhibits 32 and 33.

10   Those are -- Exhibit 32 is an affidavit from a process

11   server indicating the trustee's attempts to locate and serve

12   Ms. Yvette Wang with a subpoena.  Exhibit 33 is an exchange

13   with her counsel indicating that he refused to accept

14   service of the subpoena.

15             I plan to refer to those documents at some point

16   in my comments today.  And the trustee would move for their

17   admission into evidence.

18             THE COURT:  Okay.  Thank you.

19             Attorney Henzy, do you have any objection to the

20   admission of Trustee's Exhibits 32 and 33 as full exhibits?

21             MR. HENZY:  Your Honor, I do not object to Exhibit

22   32.  It's an affidavit from a process server.  It's a sworn

23   affidavit.

24             I do object to Exhibit 33.  It's from someone that

25   I don't -- I don't know who it is and I think it's hearsay.

1          MR. BASSETT:  Your Honor, the exhibit is not

2     hearsay.  It's not being offered for the truth of the matter

3     asserted.  It's being offered for the statement that this

4     individual, who is Ms. Yvette Wang's attorney, is

5     representing on the face of the document that he's unwilling

6     to accept service of the subpoena.

7          MR. HENZY:  Well, that is -- that is the truth of

8     the matter asserted, Your Honor.  I mean, that's what's

9     asserted.  What's asserted is that this person is unwilling

10     to accept service of a subpoena.  I don't understand how

11     that's not the truth of the matter asserted.

12          THE COURT:  Attorney Bassett?

13          MR. BASSETT:  Your Honor, that statement is being

14     offered for its effect on the listener and what it is saying

15     about the state of minds of the attorney who is making that

16     representation.  It's not being offered for the underlying

17     truth or any fact that we're trying to prove.

18          MR. HENZY:  I'm not sure what the purpose of

19     admitting it is then.  I mean, I think Mr. Bassett just said

20     what the purpose is.

21          MR. BASSETT:  Your Honor, this is a document --

22          MR. HENZY:  It's to show -- it's to show that this

23     person is not authorized to accept service.  I don't know

24     what other purpose it would serve.

25          MR. BASSETT:  At a minimum, Your Honor, it shows

1    that we have -- it's another document in relation -- in

2    addition to the affidavit from the process server showing

3    our efforts to try to find this witness.  Again, it's being

4    offered for that -- for that purpose.  It's not being

5    offered for any other purpose beyond that.

6              THE COURT:  Well, so you're saying that Exhibit 33

7    is being offered as evidence of the trustee's attempt to

8    locate Ms. Wang and not that he wouldn't -- not that the

9    lawyer would not accept service?  Is that what you're

10   saying?

11             MR. BASSETT:  Your Honor, I don't think it matters

12   whether that statement is true or not.  This document speaks

13   for itself in terms of our efforts to locate the witness who

14   is not here.

15             THE COURT:  Well, I think it does.  I think it

16   might matter.  So if you're -- if you're saying that you

17   want it admitted solely for the purpose of demonstrating

18   that the trustee tried to make service, that's one thing,

19   versus saying that it establishes that the lawyer declined

20   to accept service.

21             MR. BASSETT:  Your Honor, we're fine with it

22   coming in for the former purpose that's stated by the Court.

23             THE COURT:  Attorney Henzy?

24             MR. HENZY:  I think that makes no sense here, Your

25   Honor.  It doesn't -- I don't think it shows anything about

1    -- I think it's a statement by -- it's a statement by a

2    person.

3                THE COURT:  I'm not -- I just said if I was going

4    to admit it I would admit it solely as an example or

5    evidence of an attempt to serve a person.  That's it.

6                I wasn't talking about whether he -- I wasn't

7    going to give any weight to the evidence that somehow he

8    refused to accept service.

9                MR. HENZY:  Your Honor, then the exhibit makes no

10   sense.  I'm sorry.

11               THE COURT:  Well, I'm going to overrule your

12   objection and you can --

13               MR. HENZY:  Okay.

14               THE COURT:  -- you can reserve your right to

15   appeal that.

16               MR. HENZY:  Thank you, Your Honor.

17               THE COURT:  So I will admit that.

18               But for the limited purpose, Mr. Bassett, the

19   limited purpose of --

20               MR. BASSETT:  Understood, Your Honor.

21               THE COURT:  -- establishing that it was -- it

22   shows an effort to make service on Ms. Wang.  That's it.

23   Okay?

24               MR. BASSETT:  Understood.

25               THE COURT:  Not anything else.  Not anything with

1    regard to the lawyer's statement.  Okay?

2           So admit -- Trustee's Exhibit 32 is admitted in

3    full.

4           Trustee's Exhibit 33 is admitted solely to support

5    a finding that the trustee made an additional effort to

6    serve Ms. Wang.

7         (Trustee's Exhibit 32 received in evidence.)

8         (Trustee's Exhibit 33 received in evidence.)

9           MR. BASSETT:  Thank you, Your Honor.

10          THE COURT:  Okay.  Thank you.

11          So are you ready to proceed, to continue your

12   argument that you began yesterday?

13          MR. BASSETT:  I am, Your Honor.  Thank you.

14          THE COURT:  Go right ahead.

15          MR. BASSETT:  Thank you.

16          So yesterday, obviously, Your Honor, we've been a

17   bit interrupted in the flow of my remarks, and I'm certainly

18   not going to repeat everything I said yesterday, but just to

19   very quickly recap where we are.

20          At the outset of the argument yesterday I started

21   with the corporate governance rights order and the

22   provisions of the Bankruptcy Code that references what that

23   order demonstrates is that it very clearly applies to all of

24   the entities in which the debtor has an interest, including

25   Ace Decade.

1          And it also makes clear that, as is already clear

2     in the Bankruptcy Code, the debtor has a duty to cooperate

3     in making sure that the trustee has the ability to enjoy the

4     benefits of ownership and get control over entities that he

5     is now the owner of.

6          I then, Your Honor, after summarizing the

7     provisions of that order and the code, you know, noted that

8     the debtor's argument today, as set forth in his paper, I

9     expect is going to be that he is unable to do anything more

10    than he has already done in order to cause who he now says

11    is the nominee shareholder, Ms. Yvette Wang, to transfer the

12    shares of Ace Decade to the trustee.

13         I walked the Court through several of the non-

14    confidential, non-privileged exhibits on the list, which

15    demonstrate first, beyond any doubt I think, that the debtor

16    from the beginning of Ace Decade's formation through its

17    investment in the UBS transaction and through everything

18    else that it's ever done as an entity has been the

19    principal, the person in control, the single person behind

20    Ace Decade.

21         I also walked the Court through some additional

22    exhibits that demonstrate that Yvette Wang, like her

23    predecessor before her, was merely planted as a nominal

24    director and nominee shareholder of this entity.  There's an

25    abundance of testimony indicating that Ms. Wang is an

1  employee of Mr. Kwok's, simply serves as an assistant --

2           MR. HENZY:  Your Honor, actually I'm going to --

3  I'm going to object.  That --

4           THE COURT:  You're going to object for what?

5           MR. HENZY:  That's not in --

6           THE COURT:  On what basis?

7           MR. HENZY:  Your Honor, right now Mr. Bassett is I

8  think arguing based on things that are not in evidence

9  and/or I think are in -- maybe he could tell us what he's

10  referring to.  I don't see any testimony that's in evidence

11  here at all.

12           MR. BASSETT:  Your Honor --

13           MR. HENZY:  There's no -- there's no testimony

14  that has been admitted, Your Honor.

15           MR. BASSETT:  Your Honor, I would appreciate not

16  being interrupted during my argument.  I'm making an

17  argument based on the evidence that we discussed yesterday.

18  If Mr. Henzy disagrees with the way that I'm characterizing

19  that, he is free to make that point during his response.

20           MR. HENZY:  Your Honor, it's improper to argue

21  evidence that's not in evidence.  It's improper.

22           MR. BASSETT:  Your Honor -- Your Honor --

23           MR. HENZY:  I can come back and -- I can come back

24  and make that in my argument, Your Honor, but it's improper.

25           MR. BASSETT:  Your Honor, yesterday we walked

1    through -- and I really did not want to have to go back and

2    do my entire presentation of our case again, because I

3    walked the Court through exhibits that are in evidence where

4    Ms. Wang is referring to the debtor as her boss, where the

5    debtor refers to her as his employee, other statements and

6    documents that have been admitted into evidence where she's

7    referred as his chief of staff.

8          Your Honor, we went through all of these documents

9    yesterday as part of the continued argument.

10         So to the extent Mr. Henzy wants to respond to

11   those exhibits and arguments as part of my continued

12   argument, which he has not yet responded to, he'll have the

13   opportunity to do that.

14         MR. HENZY:  And I apologize, Your Honor.  But what

15   Mr. -- I will try to do that, Your Honor, but I think what

16   Mr. Bassett just said is incorrect in terms of what did

17   happen yesterday, and what he just referred to was testimony

18   and there's been no testimony in this hearing.

19         MR. BASSETT:  I did not -- if I used the word

20   testimony, that was not my intention.  I think I referred to

21   evidence which has been admitted through the documents that

22   are exhibits in this matter.

23         THE COURT:  Okay.  We're going to continue to

24   proceed.

25         Attorney Henzy, any other -- make your notes and

Ho Wan Kwok and Genever Holdings Corp - November 18, 2022

1    you can raise these in your response to -- once Mr.

2    Bassett's done with his presentation on the information and

3    exhibits that are not under seal.  Okay?  Thank you.

4            Go ahead, Attorney Bassett.

5            MR. HENZY:  Thank you, Your Honor.

6            MR. BASSETT:  Thank you, Your Honor.

7            The additional documents that I would refer to,

8    but I will reserve for the closed session, will continue

9    some of those points and I think flesh out those points that

10   have already been made.  But per Your Honor's instructions,

11   we will do that as part of the separate session.

12           So, Your Honor, what -- and I'm glad Mr. Henzy

13   made this point -- but what we don't have today from anyone

14   is testimony.  We certainly don't have testimony from the

15   debtor and that is -- that comes as no surprise whatsoever

16   to the trustee based not only on the testimony he's given in

17   this matter, but in past cases.

18           So I think the Court can and should derive

19   something from the fact that the debtor is not here today to

20   give testimony in support of what he could or could not do

21   to avoid being in contempt of court.

22           We also do not have today testimony from Ms.

23   Yvette Wang.  Why?  Because we cannot find her.  There are

24   two documents that we just discussed that are in the record.

25   We tried to serve her with a subpoena.  We've otherwise

1    tried to reach out to her.  There are other documents that I

2    will refer to in the private session that go to this point

3    as well.

4          What we are left with are the documents that I've

5    referenced that establish a clear relationship between Ms.

6    Wang and the debtor that we think indicates beyond doubt

7    that he has the ability to direct her to transfer these

8    shares if she would do so.

9          So, Your Honor, to recap where we are, I think the

10   rest of the evidence that I would have to present would be

11   in the closed session.

12         What I had planned to do is after finishing my

13   discussion of the evidence to talk about what I think that

14   means in terms of the relief we're asking the Court to issue

15   and the order that we would ask the Court to enter.

16         I assume Your Honor wants me to move into that now

17   even though it kind of flows from what would be discussed in

18   the closed session.  Is that correct, Your Honor?

19         THE COURT:  If you can do so without divulging

20   anything in the information in the sealed documents, yes.

21   If not, then we'll do it as part of the sealed session.

22         MR. BASSETT:  Okay.  All right.  Sorry, Your

23   Honor.  I'm just trying to --

24         THE COURT:  Take your time.

25         MR. BASSETT:  -- reorient myself given the --

1          THE COURT:  Take your time.

2          MR. BASSETT:  -- given the bifurcation of the

3     hearing.

4          THE COURT:  Unfortunately, I have no choice but to

5     bifurcate the hearing.

6          MR. BASSETT:  No, I'm not --

7          MR. HENZY:  Your Honor --

8          THE COURT:  It's just too complex.

9          MR. HENZY:  I apologize, Your Honor.  If it's all

10    right with the Court, I have no problem with Mr. Bassett

11    coming back after I've gone through mine and we've done our

12    sealed session because I -- so that he -- I understand it

13    would cause his close to be disjointed because he hasn't had

14    a chance to -- again, if that's a better way to do it, I'm

15    fine with that.

16          MR. BASSETT:  Your Honor, I really don't -- I

17    really don't think I can -- I can go to the rest without

18    referring back to information that --

19          THE COURT:  That's fine.

20          MR. BASSETT:  -- Your Honor's --

21          THE COURT:  I want to be clear for the record

22    because we need to be clear in this hearing, as we do in

23    every hearing, but because this hearing is going to have

24    different parts to it, the trustee's motion for contempt and

25    the evidence that has been presented so far to the Court on

1   the trustee's motion that we began talking about yesterday,

2   the following exhibits were entered into evidence yesterday:

3   Trustee's 6, 7, 10 and 15 in full without objection,

4   Trustee's 13, page 3.  And then the next exhibits were

5   subject to sealing, 28 through 30, 34, 36 through 37, and

6   39, page 55, line 25.

7          And then today Trustee's Exhibits 32 and 33.

8          Are there any other exhibits at this point,

9   Attorney Bassett, that I'm missing on your presentation that

10  you've already made to the Court?

11         MR. BASSETT:  I don't believe so.  I think you've

12  captured them all, Your Honor.

13         The only minor correction is I think with respect

14  to Exhibit 39.  I think Your Honor said page 55, line 25,

15  but it's actually lines 23 through 25.

16         THE COURT:  Oh, you're right, 23 through 25.

17  Sorry.  Okay.

18         And that -- and those exhibits in the mind, not

19  the mind, I mean, the trustee's presentation support

20  contempt for the following reasons. That Mr. Kwok remains in

21  contempt because he can take action to have the shares of

22  Ace Decade signed over to the trustee through Ms. Wang, who

23  the trustee asserts, as the evidence establishes, that Mr.

24  Kwok has a business relationship with Ms. Wang, that Ms.

25  Wang referred to Mr. Kwok on numerous occasions as her boss,

1    that Ms. Wang acted as a go-between in connection with

2    different transactions, and that the -- that that

3    establishes that Mr. Kwok has not done everything that he

4    can do to cooperate with the trustee, not only in connection

5    with the corporate governance order provisions itself, but

6    the provisions of the Bankruptcy Code that require the

7    cooperation of the debtor with the trustee, to cooperate

8    with the trustee so that the trustee can conduct the

9    investigation of the affairs of the debtor's estate.

10          In addition to the fact that the evidence

11    establishes those facts according to the trustee, the

12    evidence also establishes that there's no testimony from

13    either Mr. Kwok or Ms. Wang that would refute anything that

14    the trustee has stated and argued in support of those

15    claims.

16          Is that accurate, Mr. Bassett?

17          MR. BASSETT:  Your Honor, again, I think that was

18    a fair summary.  Obviously, I'll let the argument that I've

19    made speak for itself, but I think generally Your Honor

20    captured the key points that we're trying to make.

21          THE COURT:  All right.  I want to make sure that

22    that is the case.  Because, again, we are going to be having

23    two portions of the hearing.  So I want to make sure we're

24    addressing the appropriate issues of evidence during the

25    appropriate sessions of the hearing.

1          MR. BASSETT:  That's correct, Your Honor.  I mean,

2     I think the additional discussion that we will have in the

3     sealed portion will provide further support --

4          THE COURT:  Correct.  Understood.

5          MR. BASSETT:  -- for the arguments --

6          THE COURT:  Understood.  I'm trying to separate

7     out the arguments I'm going to hear that are not sealed or

8     subject to not having everyone be in attendance.  And so

9     that's what I've heard you say with regard to the public

10     part of this hearing.  Okay?

11          If I'm missing something, I'd like you to tell me

12     now.

13          MR. BASSETT:  I don't believe so, Your Honor.

14          THE COURT:  Okay.  Thank you.

15          So, Attorney Henzy, it's your turn to reply to the

16     presentation that Attorney Bassett has made up to this

17     point.  Okay?

18          MR. HENZY:  Thank you, Your Honor.

19          THE COURT:  And if you're going to seek to

20     introduce exhibits, I would like you to do that first --

21          MR. HENZY:  Understood, Your Honor.

22          THE COURT:  -- and then we'll find out whether or

23     not there's any objection to those exhibits.

24          MR. HENZY:  Thank you, Your Honor.

25          Your Honor, I would ask that my Exhibits B, C, D,

1    E, G, H and I be admitted.

2              THE COURT:  Let me just repeat that to make sure I

3    heard you properly.  Did you say B, C, E, G, H and I?

4              MR. HENZY:  I think -- I think I may have -- let

5    me restate it, Your Honor, to make sure.

6              So B as in boy.

7              THE COURT:  Yeah.

8              MR. HENZY:  C, as in cat.  D, as in dog.

9              THE COURT:  Okay.  I missed that.

10             MR. HENZY:  E, as in Eric.  G, as in George.  H,

11   as in Harry.  And I, as in iguana.

12             THE COURT:  Okay.  I missed D then when you

13   recited those, so that was my mistake.  Thank you.

14             All right.  Are you moving for the admission in

15   full of those exhibits, Attorney Henzy?

16             MR. HENZY:  Yes, Your Honor.

17             THE COURT:  Okay.  Attorney Bassett, do you have

18   any objection to the admission in full of the exhibits that

19   Attorney Henzy just stated on the record?

20             MR. BASSETT:  I do, Your Honor.

21             I would object to the admission of Exhibits H and

22   I.  Those are hearing transcripts of I believe not an

23   insignificant length.  I don't know what counsel is seeking

24   to admit.

25             MR. HENZY:  Just --

1          THE COURT:  All right.  So hold on a second.  Hold

2     on.  Hold on.  All right.

3          So, Mr. Bassett, you're only objecting to H and I

4     at this -- that's what -- I want to know right now so I can

5     admit the others if you're -- and then we can talk about H

6     and I.

7          MR. BASSETT:  That's correct, Your Honor.  I will

8     make arguments from the other exhibits, but I do not object

9     to them being admitted.

10          THE COURT:  Okay.  Thank you.

11          So let's make the record clear.  The Debtor's

12     Exhibits B, as in boy, C, as in cat, D, as in dog, E, as in

13     Eric, G, as in George, are admitted as full exhibits.  Okay?

14     (Debtor's Exhibit B, C, D, E and G received in

15     evidence.)

16          THE COURT:  Now, let's talk about H and I.

17          So, Mr. Bassett, tell me -- you started to, and I

18     probably stopped you in some respects, but tell me the basis

19     for your objection to the admission in full of the Debtor's

20     H and I, please.

21          MR. HENZY:  Your Honor, actually, maybe I could

22     make it simpler.

23          Mr. Bassett's point is a fair one, and I do not

24     intend to use or admit the full transcript.

25          So H is a transcript of the August 1 hearing in

1   this matter and I is the transcript of the August 4 hearing

2   in this matter.  And the only portions of those transcripts

3   that I am moving into evidence is the August 1 transcript,

4   which is my Exhibit H, it's at page 121, lines 23 through

5   25.

6            THE COURT:  Lines 23 through 25?

7            MR. HENZY:  Yes, Your Honor.

8            THE COURT:  All right.  Well, let's give Mr.

9   Bassett a minute to look at that then, please.

10            MR. BASSETT:  I'm trying to do that now, Your

11   Honor.

12            THE COURT:  Yeah.  Take your time.

13            MR. BASSETT:  I'm sorry.  Attorney Henzy, can you

14   tell me the page and line reference one more time?

15            THE COURT:  Page 121, lines 23 through 25.  Do you

16   want us to pull that up, Mr. Bassett?

17            THE COURT:  No.  I have it, Your Honor.  I'm just

18   trying to figure out who's speaking.

19            MR. HENZY:  Actually, I apologize for that.  I

20   would have to actually go back.

21            I'll represent that that's Mr. Despins.  And you

22   have to go back to page 118 at line 13.

23            So I guess I would ask that be admitted as well,

24   Your Honor, because Mr. Bassett is correct, that it's a

25   multiple page over then to be able to identify that Mr.

1   Despins is the speaker.

2            THE COURT:  Okay.

3            MR. BASSETT:  I don't have an objection to the

4   entry of that testimony.

5            I reserve the right to potentially ask the Court

6   to consider other aspects of this transcript in rebuttal,

7   but, you know, having just seen it right now, I don't know

8   what that might be until I hear Mr. Henzy's argument.

9            THE COURT:  So are we admitting from 118 through

10  121, or you just want at this point 118, line 13 and 121,

11  lines 23 and 25, Attorney Henzy?

12           MR. HENZY:  I'm asking for 118, line 13, because

13  that identifies Mr. Despins, and then 121, lines 23 through

14  25.

15           MR. BASSETT:  And I have no objection to that

16  subject to --

17           THE COURT:  Okay.

18           MR. BASSETT:  -- the reservation of rights that I

19  just gave.

20           But just to be clear, it's not 118, line 13

21  through the end, just 118, line 13, and then separately from

22  that --

23           THE COURT:  Yes.

24           MR. BASSETT:  -- 121 --

25           THE COURT:  Yes.

1          MR. BASSETT:  -- 23 to 25.

2          THE COURT:  So Exhibit H is admitted as a full

3     exhibit to the following extent:  we're only admitting --

4     it's not -- it's admitted in full, but the parties are

5     agreeing what the Court is going to look at is page 118,

6     line 13, and page 121, lines 23 through 25.  Correct?

7          MR. HENZY:  Correct, Your Honor.

8          THE COURT:  Okay.  All right.

9        (Debtor's Exhibit H, page 118, line 13, and page 121,

10    lines 23 through 25, received in evidence.)

11         THE COURT:  And then what about Exhibit I?

12         MR. HENZY:  So on Exhibit I, Your Honor, I would

13    ask that page 47, lines 15 through 16, be admitted.

14         THE COURT:  You're going to have to give Mr.

15    Bassett a minute there.

16         MR. BASSETT:  15 through 17 on page 47?

17         THE COURT:  15 through 16 I thought Attorney Henzy

18    said.

19         What did you say?

20         MR. HENZY:  15 through 16 on page 47.

21         THE COURT:  Yeah.

22         MR. BASSETT:  You're cutting off the end of a

23    sentence.  Is that intentional?

24         MR. HENZY:  Oh, so 15 through 17.

25         MR. BASSETT:  No objection.

1          THE COURT:  Okay.

2          MR. BASSETT:  Subject to the same reservation I

3     gave for the last exhibit.

4          THE COURT:  Okay.  Thank you.

5          Then Exhibit I is admitted, page 47, lines 15

6     through 17, with no objection from Mr. Bassett except for

7     the reservation of -- in response citing to possibly other

8     parts of that transcript.

9          (Debtor's Exhibit I, page 17, lines 15 through 17,

10    received in evidence.)

11         THE COURT:  Okay.  What else, Attorney Henzy?  Is

12    that -- those are your exhibits?

13         MR. HENZY:  And then, Your Honor, I would ask that

14    Exhibit 27.  Now, again, Your Honor, we're going to run into

15    the problem of this document is --

16         THE COURT:  We're not going to talk about Exhibit

17    27 right now.

18         MR. HENZY:  Okay.  Perfect.

19         THE COURT:  That's going to be part of the sealed

20    portion of the hearing.

21         MR. HENZY:  Okay.  Very, well, Your Honor.  Thank

22    you.

23         THE COURT:  So go ahead.

24         MR. HENZY:  So one point I want to get out of the

25    way, Your Honor, is Mr. Bassett points out that Mr. Kwok is

1    not here today.  He was on the trustee's witness list.

2         And my understanding was that we had resolved his

3    needing to testify through the partial resolution order that

4    we entered and I was not under the -- I did not have the

5    understanding that Mr. Bassett expected or wanted Mr. Kwok

6    to be here today.

7         Your Honor, I know that there is a lot going on in

8    this case, but I think it's critically important to focus on

9    what is before you.

10        There's a whole -- this is a contempt motion

11   specifically related to the corporate governance order and

12   whether or not Mr. Kwok is in violation of the corporate

13   governance order.  So all of these other things going on are

14   not part of that.  There's a very narrow issue that all the

15   other things in the case do not connect to.

16        I think it's also critically important to focus on

17   the contempt standard.

18        The Supreme Court in the *Taggart* case that I cite

19   in the objection, that's at 139 Supreme Court 1795, says

20   civil contempt should not be resorted to where there is not

21   -- where there -- I'm sorry, where there is -- so civil

22   contempt should not be resorted to where there is a fair

23   ground of doubt as to the wrongfulness of the defendant's

24   conduct.  So no civil contempt where there's a fair ground

25   of doubt.

1          The Second Circuit in the *King* case which is at --

2          THE COURT:  In what case?  In what case, Mr.

3    Henzy?  I'm sorry.  I couldn't hear you.

4          MR. HENZY:  It's the *King vs. Allied Vision* case.

5          THE COURT:   Okay.

6          MR. HENZY:  It's at 65 F.3d 1051.  And that case,

7    Your Honor, has been cited and quoted by many other Second

8    Circuit decisions and district court decisions in this

9    circuit, states a contempt order, following on that fair

10   ground of doubt standard, a contempt order is only warranted

11   where the moving party, that here is the trustee,

12   establishes by clear and convincing evidence -- so it's not

13   a preponderance standard, Your Honor -- it's clear and

14   convincing evidence that the alleged conduct contemnor

15   violated the Court's edict.

16         The *King* court goes on to say, more specifically,

17   a movant must establish:  One, the order the contemnor

18   failed to comply with is clear and unambiguous; two, the

19   proof of non-compliance is clear and convincing; and, three,

20   the contemnor has not diligently attempted to comply in a

21   reasonable manner.

22         The *King* court goes on to state a clear and

23   unambiguous order is one that leaves no uncertainty in the

24   minds of those to whom it is addressed who must be able to

25   ascertain from the four corners of the order precisely what

1    acts are forbidden.

2            In the Second Circuit case of *United States v.*

3    *Wendy*, it's at 575 F.2d, and this is at 1075 of that

4    decision, the Second Circuit stated a long recognized

5    defense to a civil contempt citation is the cited

6    individual's inability to comply with the Court's order.

7            Critically, Your Honor, the trustee has the burden

8    to prove by clear and convincing evidence that Mr. Kwok is

9    not in compliance with a clear and unambiguous order where

10   it's within the four corners of that order that what he's

11   being accused of having failed to do is within the four

12   corners of that order.

13           My first argument, Your Honor, is that Mr. Kwok is

14   not in violation of the order.  And I am not arguing that

15   your order is not clear and that it is ambiguous.

16           I am arguing that what the trustee requires you to

17   do, in some sense, would create ambiguity, because I just

18   don't think it's in the order.

19           The question on this first one I'm making is is

20   there no fair ground of doubt that -- and has the trustee

21   shown by clear and convincing evidence, that the order

22   clearly and unambiguously requires what the trustee is

23   demanding?

24           I'm not arguing impossibility here, Your Honor,

25   based on Mr. Kwok never having owned Ace Decade.  Again,

1   that was -- that was taken care of in the partial resolution

2   order which we did not object to.

3             Your Honor, I'd ask that Exhibit E be brought up.

4             THE COURT:  Okay.  Just give us a second and it

5   will be.  Thank you.

6             THE COURTROOM DEPUTY:  Exhibit E is being shown on

7   the screen.

8             MR. HENZY:  Thank you.

9             And, Your Honor, can control be turned over to Mr.

10  Cesaroni, please.

11            THE COURT:  Yes.  Just give that a second, please.

12            MR. CESARONI:  Your Honor, I have control of the

13  screen.

14            THE COURT:  Okay.  Thank you.

15            MR. HENZY:  Thank you.

16            Mr. Cesaroni, can you please take it to paragraph

17  2 on page 2.  Thank you.  Right there.

18            Your Honor, I'm focusing you on the first sentence

19  of that paragraph 2.  So effective as of the entry of the

20  order dated, July 8, 2022, granting the appointment of Luc

21  A. Despins as the trustee in the Chapter 11 case the trustee

22  holds all of the debtor's economic and governance rights for

23  the benefit of the estate with respect to all debtor-

24  controlled entities, including, without limitation Genever

25  BVI.

1          I'd ask that the Court show Exhibit -- put up

2     Exhibit G.

3          THE COURTROOM DEPUTY:  Exhibit G is being shown on

4     the screen.

5          MR. HENZY:  Thank you.

6          Once Mr. Cesaroni has control of it, Can you

7     please take it to paragraph 12 on page 4.

8          THE COURT:  Hold on.  What's Exhibit G?  Exhibit G

9     is what, the privileges order?

10          MR. HENZY:  Exhibit G, Your Honor, I apologize --

11     so Exhibit E was the corporate governance order.

12          THE COURT:  Right.  I saw that.

13          MR. HENZY:  Okay.  Exhibit G is the motion filed

14     by the trustee asking that the corporate governance order be

15     entered.

16          THE COURT:  Okay.  So it's the motion for the

17     entry of the corporate governance order.  Okay.  Thank you.

18          MR. HENZY:  Mr. Cesaroni, could you please go to

19     paragraph 12 at page 4.

20          And, Your Honor, I'm not going to read that entire

21     paragraph into the record.  Essentially it's a recitation in

22     the motion of what I would call the black letter law that

23     upon his appointment that Mr. Despins, in fact, succeeded to

24     all corporate governance and economic rights that the debtor

25     had in any entities, or debtor controlled entities as

1    defined in this motion.

2              Has Your Honor had a chance to look at that?

3              THE COURT:  Yes.  I'm looking at paragraph 12 of

4    Exhibit G.

5              MR. HENZY:  Thank you.

6              THE COURT:  Do you want me to go onto the next

7    page since it's an incomplete sentence at the bottom of page

8    4?

9              MR. HENZY:  It's just a citation, Your Honor.  I

10   don't need you to go past that.

11             But actually, on the next page, at paragraph 13, I

12   would ask you to -- I'll read the first sentence of that

13   paragraph 13.  It is paramount that the trustee exercises as

14   soon as possible economic and corporate control over the

15   debtor-controlled entities, including Genever BVI, in order

16   to preserve and recover assets for the benefit of the

17   estate.

18             Then I'd ask, Mr. Cesaroni, if you could page down

19   to paragraph 20 at page 9.  So actually that runs over.  If

20   you could go over to paragraph, I'm sorry, page 9, Mr.

21   Cesaroni.

22             The last sentence in that paragraph 20 that runs

23   over from page 8 to page 9, Your Honor, it says given this

24   history the debtor should not be left to exercise any

25   corporate governance rights with respect to the debtor-

1   controlled entities for one more day.

2          And then at paragraph 21, the first sentence, Your

3   Honor, to enable the trustee to exercise the foregoing

4   authority without interference from the debtor, the Court

5   should confirm that the debtor may not interfere with,

6   hinder, or delay the trustee's exercise of the debtor's

7   economic and governance rights with respect to the debtor-

8   controlled entities.

9          When you're ready, Your Honor, if the Court could

10  bring up Exhibit H.

11         THE COURT:  Okay.  Exhibit H.  And we're just

12  going to what, the page 121 again?

13         MR. BASSETT:  Yes, Your Honor.

14         MR. HENZY:  Yes, Your Honor.

15         THE COURT:  Lines 23 through 25?

16         MR. HENZY:  Yes, Your Honor.

17         THE COURT:  But we know that's Trustee Despins

18  speaking because page 118 indicates -- at line 13 indicates

19  that?

20         MR. HENZY:  Yes, Your Honor.

21         THE COURT:  Okay.  Hold on a second.  You don't

22  have to go to page 118.  You just have to go to page -- I

23  think everybody's agreeing that we can just go to page 121,

24  lines 23 through 25.

25         THE COURTROOM DEPUTY:  Exhibit H is on the screen.

1          THE COURT:  Thank you.  Could you scroll down --

2          MR. HENZY:  And go to lines --

3          THE COURT:  -- to page 121, lines 23 to 25,

4     please.  Thank you.  Right there.

5          MR. HENZY:  Your Honor, Mr. Despins at the August

6     1 hearing, I'm sorry, yes, at the August 1 hearing, on the

7     motion to approve corporate governance order, states and

8     that's what this accomplishes.  Basically it makes it very

9     clear that we hold all these rights and that's why we ask

10     Your Honor to enter the order.

11          And if the Court could go to Exhibit I when Your

12     Honor is ready.

13          THE COURT:  Certainly.  Okay.  Debtor's Exhibit I.

14     And, again, we're going to a specific page, correct?

15          MR. HENZY:  Yes, Your Honor.  We're going to page

16     47.

17          THE COURT:  What lines on page 47?  Wasn't there a

18     specific reference to lines?

19          MR. HENZY:  15 through 17, Your Honor.

20          THE COURT:  15 through 17.

21          THE COURTROOM DEPUTY:  Exhibit --

22          MR. HENZY:  And, Your Honor, where Mr. Despins

23     says --

24          THE COURTROOM DEPUTY:  Exhibit I is on the screen.

25          MR. HENZY:  -- Your Honor we filed --

1          I apologize.

2          THE COURTROOM DEPUTY:  Okay.

3          THE COURT:  The courtroom deputy just noted for

4    the record that Exhibit I is on the screen.

5          MR. HENZY:  Okay.

6          THE COURT:  And now I'm looking at page 47, lines

7    15 through 17.

8          MR. HENZY:  Thank you, Your Honor.

9          Where Mr. Despins states Your Honor we filed a

10   very broad motion to (indiscernible) all corporate

11   governance rights and we mention BVI specifically.

12         And then, Your Honor, if we go to page 64, at

13   lines 19 through 22.

14         THE COURT:  Did we -- we didn't talk about 64

15   before, did we though?  I mean, I'm not -- I don't know --

16         MR. HENZY:  Oh, I thought --

17         THE COURT:  -- Attorney Bassett's going to have

18   any objection to it, but did we talk about that before?

19         MR. HENZY:  I thought -- I thought we did, Your

20   Honor.

21         THE COURT:  No.  We only talked about page 47,

22   lines 15 -- at least my notes indicate that.  I could have

23   missed something.

24         Attorney Bassett, did you have any indication that

25   we were looking at anything other than page 47, lines 15

1    through 17 in I?

2           MR. BASSETT:  I did not, Your Honor.  That was the

3    only -- that was the only portion of this document that was

4    moved into evidence.

5           MR. HENZY:  That was my oversight, Your Honor.

6    I'd ask that page 64 at 19 -- at lines 19 through 22 be

7    admitted.

8           THE COURT:  Let me let Attorney Bassett take a

9    look at that off, you know, on his -- I'm asking the

10   courtroom deputy not to go to that other page yet.

11          MR. HENZY:  That's fine.

12          THE COURT:  Attorney Bassett, you can take a look

13   at it yourself or do you want us to go to that page?

14          MR. BASSETT:  I'll get it.  Can you just give me

15   the reference one more time, please.

16          THE COURT:  What is it, Attorney Henzy?

17          MR. HENZY:  Page 64 at lines 19 through 22.

18          MR. BASSETT:  What does it start with?  I just

19   want to make sure I'm at the right place.

20          MR. HENZY:  So it's at the reason we ask.

21          MR. BASSETT:  Well, that's -- oh, okay.  I thought

22   that was a statement you were making.  Let me read it.  I

23   see -- I see that it's Mr. Despins now.  One second.

24          THE COURT:  You're taking a look, Mr. Bassett?  Or

25   do you want us to turn to that page?

1          MR. BASSETT:  No.  I am, Your Honor.

2          THE COURT:  What I should say to you is do you --

3   have you had an opportunity to look at it and do you have

4   any objection to it?

5          MR. BASSETT:  The problem, Your Honor, is it's not

6   -- it's not very clear as a stand alone excerpt, so I'm

7   reading back to other pages.  It's hard to do this on a

8   moment's notice.  I apologize.

9          THE COURT:  That's okay.  Take your time.

10          MR. BASSETT:  Your Honor, I have to object at this

11   point.  The excerpt is not clear and I can't -- it's not

12   complete.  I mean, there's a reference in the language back

13   to something that's being discussed in prior pages of the

14   transcript, and I cannot -- not object to the document at

15   this stage.

16          MR. HENZY:  Your Honor, if I may?

17          THE COURT:  Yes, please.

18          MR. HENZY:  Mr. Bassett can certainly go back as

19   rebuttal if you ask that the Court -- any portion of the

20   transcript be admitted.

21          I think that the excerpt is clear for the purposes

22   I'm going to use it.  And this is his client's statement.  I

23   don't know how it could not be admissible.

24          THE COURT:  Well, he's not saying that it's not

25   admissible.  He's saying that he objects to it right now

1    because he doesn't understand it, it's context, because he

2    doesn't -- it's talking about a bunch of different things

3    and going back.

4              I don't know.  I'll have to look at it.  So you'll

5    have to give me a second.  I haven't seen it.  And it wasn't

6    raised obviously already before we started the argument, so

7    let me take a look at it.  So you'll have to be patient for

8    a moment.

9         (Pause)

10             THE COURT:  Okay.  Mr. Bassett, I'm going to let

11   that in.  I'm going to let page 64, lines 19 through 22 be

12   admitted.

13             And then you absolutely have the right to, in

14   response, suggest that something else should be added to the

15   record from that transcript.

16             And then I'll rule on that when and if you decide

17   to do that.  Okay?

18             MR. BASSETT:  That's fine, Your Honor.

19             And just to be clear, I've not been able to

20   understand from looking at it in, you know, three or four

21   minutes what that right in the passage that Mr. Henzy is

22   going to read or (indiscernible).  Maybe he can shed some

23   light on what he believes it means when he does his

24   argument.

25             MR. HENZY:  That's fine.

1      Your Honor, actually I would ask that I think line

2      14 at least -- but I say just to make 14 through 22 needs to

3      be admitted because that -- we need 14 in order for the

4      record to identify the speaker is Mr. Despins.

5           THE COURT:  So 14 through 22?

6           MR. BASSETT:  I have no --

7           MR. HENZY:  Yes, Your Honor.

8           THE COURT:  Attorney Bassett, were you going to

9      say something?

10          MR. BASSETT:  Yeah.  I think, Your Honor, we

11     should do what we did before which is line 14 comes in and

12     then 19 through 22.

13          MR. HENZY:  That's fine.  I'm fine with that.

14          THE COURT:  Okay.  I'm fine with that too.  Okay.

15     (Debtor's Exhibit I, page 64, line 14, and lines 19

16     through 22, received in evidence.)

17          THE COURT:  Then let's continue, please, Attorney

18     Henzy.

19          MR. HENZY:  Thank you, Your Honor.

20          So, Your Honor, in the motion the trustee told you

21     that the law provides that when he was appointed he

22     succeeded to all corporate governance rights.

23          The trustee told you in the motion that Mr. Kwok

24     should not have any governance rights for -- and give me one

25     second, Your Honor, I want to make sure I get the words

1    right.

2              (Pause.)

3              Mr. Kwok should not have any governance rights for

4    one more day.  Again, that's at paragraph 20, last sentence

5    of paragraph 20 of the motion.  The debtor should not be

6    left to exercise any corporate governance rights with

7    respect to debtor-controlled entities for one more day.  It

8    was so important to get this out of the hands of the debtor,

9    it couldn't be there for one more day.

10             The trustee in the motion specifically said it is

11   paramount that the trustee exercise as soon as possible the

12   economic and corporate control over debtor-controlled

13   entities.

14             The order itself, and, again, that is consistent

15   with the statements that Mr. Despins made on the record that

16   are now in evidence at the August 1 and August 4 hearings.

17             And that, Your Honor, if you circle back to the

18   first sentence of paragraph 2 of the order, effective at the

19   entry of the order granting --

20             THE COURT:  Hold on a second.  Hold on a second,

21   Attorney Henzy.  Let's just make sure we're citing to the

22   exhibits.  So circle back to E?

23             MR. HENZY:  Exhibit E.

24             THE COURT:  Yeah.

25             MR. HENZY:  Exhibit E.

1          THE COURT:  Okay.

2          MR. HENZY:  That first sentence, Your Honor, that

3     I pointed you to and read into the record, effective at the

4     entry of the order dated July 8th, 2022 granting the

5     appointment of Luc Despins as the trustee in the Chapter 11

6     case.  The trustee holds all of the debtor's economic and

7     governance rights for the benefit of the estate with respect

8     to all debtor-controlled entities including but not limited

9     to Genever BVI.

10          So as of -- the trustee -- so what Mr. Despins is

11     asking you to do is hold Mr. Kwok in contempt for not

12     exercising some authority he had as owner to direct Ms.

13     Wang, as nominee shareholder, and director of Ace Decade to

14     take certain action.

15          But this order, at Mr. Despins' request, upon Mr.

16     Despins's appointment, again, he tells you in the motion as

17     a matter of black letter law that the debtor was divested of

18     any corporate governance rights and he succeeded to those

19     rights.  He then had you or asked you and you did confirm

20     that in this order in very, very unequivocal terms.

21          If Mr. Despins wants to argue that notwithstanding

22     the language of what he asked -- the language he asked for

23     you -- he asked for this order in and then the language of

24     the order that Mr. Kwok has some residual corporate

25     authority, and this court decides to determine or hold that

1    notwithstanding the language of this order that Mr. Kwok has

2    some residual corporate authority to, as equitable owner or

3    beneficial shareholder, direct Ms. Wang to take some action

4    as nominee shareholder and director, Mr. Despins can make

5    that argument.  And Your Honor, with all due respect, you

6    can -- you can order that, but that's not what this order

7    says.

8            If Your Honor were to find today that there is

9    residual corporate authority in this order for Mr. Kwok to

10   take some action, from a perspective of corporate authority,

11   at the very least, Your Honor, given the language of the

12   order, the order -- the order is ambiguous because the order

13   doesn't say that.  It doesn't reserve -- it doesn't purport

14   to reserve any residual corporate authority in Mr. Kwok.

15           So if I dial back to the standard that I set out,

16   if you were going to hold Mr. Kwok in contempt, the trustee

17   has to prove that the order clearly and unambiguously

18   requires what the trustee is demanding.  That's my point

19   one.  My point --

20           THE COURT:  Let me stop you though because you've

21   already stated before we talked about Exhibit E and Exhibit

22   G that you're not arguing that the order is not clear and

23   ambiguous, but now you are.  So --

24           MR. HENZY:  No.  I'm not -- I'm not arguing that,

25   Your Honor, because I think that the order is clear.  I

1      think that the order has made clear that Mr. Kwok is

2      divested of all corporate authority.  I don't -- I don't --

3              With your finding that Mr. Kwok was the beneficial

4      owner through the appointment of Mr. Despins as trustee that

5      what follows is that your order is not ambiguous at all.

6              What your order says is that Mr. Kwok, as of the

7      trustee's appointment, is divested of all corporate

8      authority.  So I don't think -- I don't think the order --

9      actually I don't think the order is ambiguous.  And I think

10     that there is no residual corporate authority in your order

11     and, therefore, Mr. Kwok can't, as beneficial owner, direct

12     the shareholder or director to do anything as a matter of

13     corporate authority.  Okay?

14             My argument though was a different one, which is,

15     if you were to find today that my  -- I'll call it argument

16     1(a) is wrong, that Mr. Kwok, notwithstanding the trustee's

17     appointment and notwithstanding your entry of this order, of

18     the corporate governance order, has some authority, has some

19     residual authority to act as beneficial owner to direct Ms.

20     Wang to take corporate action, then I would argue to you --

21     that's the way you interpret your order, Your Honor, then I

22     would argue to you then your order is ambiguous because --

23             THE COURT:  Okay.

24             MR. HENZY:  -- it is so clear.  So that serves as

25     my argument 1(b).

1          I don't think the order is ambiguous.  But if

2     you're going to find there's this residual authority, then I

3     think your order is ambiguous because I don't see any

4     residual authority in the four corners of that order.

5     Which, again, that's the -- the *King*, Second Circuit, case

6     said it has to be in the four corners of the order.

7          What it is that Mr. Kwok is supposed to do and is

8     not doing has to be in the four corners of the order.

9          THE COURT:  Okay.  I understand.  Thank you.

10          MR. HENZY:  Thank you, Your Honor.  Thank you.

11          My argument -- so I'm going to phrase it as

12     argument 1(a) and 1(b) I've already made.

13          My argument two, it is -- it may sound somewhat

14     the same, but actually I think it's related but it's

15     different.

16          Now, again, the basic point on my argument number

17     2 is, or the frame of reference is, is there no fair ground

18     of doubt that and has the trustee shown by clear and

19     convincing evidence the debtor -- that the order clearly and

20     unambiguously requires what the trustee is demanding?

21          If I could take you back to Exhibit E, Your Honor,

22     which is the corporate governance order.

23          THE COURT:  Okay.  Shall we pull that up?

24          MR. HENZY:  Yes, please, Your Honor.

25          THE COURT:  Okay.  Exhibit E, please.

1    THE COURTROOM DEPUTY:  Exhibit E is on the screen.

2    THE COURT:  Thank you.

3    Do you want control over that document, Attorney

4    Henzy, or do you want us to go to a specific place in the

5    document?

6    MR. HENZY:  If you could page to paragraph 2 on

7    page 2, Your Honor.

8    THE COURT:  Okay.

9    MR. HENZY:  That's perfect.  That's perfect.

10   Thank you.  Your Honor -- oh, could you just page down a

11   little bit, Your Honor, because the bottom of that paragraph

12   2 is being cut off.  That's perfect.  Thank you.

13   Your Honor, I've already -- previously I focused

14   you on the first sentence of that paragraph 2.  Now I want

15   to focus you on the second and third sentences of that

16   paragraph 2.  So I'll read them into the record.

17   "For the avoidance of doubt, the foregoing rights

18   throughout" -- if you go back up to sentence number 1, in

19   that paragraph 2, the foregoing rights is referring to all

20   the debtor's economic and governance rights -- "for the

21   avoidance of doubt, the foregoing rights include the

22   trustee's asserted authority to replace any existing

23   officer, director, manager, or similar person of debtor-

24   controlled entities.  As part of the foregoing, to the

25   extent necessary, the trustee is authorized to act in his

1    capacity as Chapter 11 Trustee in a Chapter 11 case as any

2    such officer, director, manager, or similar person who has

3    been removed."

4           So, Your Honor, the order expressly contemplates

5    that the trustee can remove a director and remove a nominee

6    shareholder for a debtor-controlled entity.

7           If I could you back to Exhibit G, Your Honor, if

8    you could bring that up.

9           THE COURT:  Okay.  Sure.  Just give the courtroom

10   deputy a moment to get that, to get Debtor's Exhibit G.

11          THE COURTROOM DEPUTY:  Exhibit G is on the screen.

12          MR. HENZY:  Thank you.

13          THE COURT:  And, Attorney Henzy, where --

14          MR. HENZY:  If you could page to page 5, paragraph

15   13.

16          THE COURT:  Okay.  I'm looking at page 5,

17   paragraph 13, of Exhibit G.

18          MR. HENZY:  Your Honor, I previously pointed you

19   to the first sentence of that paragraph 13.  Now I'd pointed

20   you to the second sentence of that paragraph 13 which states

21   -- again, this is the trustee's motion seeking entry of the

22   corporate governance order -- for the avoidance of doubt,

23   this includes the trustee's authority to replace any

24   existing officer, director, manager, or similar person of

25   the debtor-controlled entities.

1          So in the motion the trustee is asking for

2     specific authority to replace officers, directors, et

3     cetera, and the Court in paragraph 2 of Exhibit E, the

4     corporate governance order, ordered that the trustee has

5     authority to replace any existing officer, director, manager

6     or similar person.

7          The Court has found, and the trustee has so

8     convinced Your Honor that Mr. Kwok is the beneficial owner

9     through the trustee's appointment, therefore, that he is now

10    the beneficial owner.  He's so convinced of that that he's

11    seeking to hold Mr. Kwok in contempt for failing to act.

12         This language, the language in paragraph 2 of

13    Exhibit E, the corporate governance order, expressly

14    contemplated what the trustee could do in a situation like

15    this.

16         As the beneficial owner, he could replace any

17    officer, director or like person and he could then direct

18    that person to do whatever he deems appropriate, including,

19    I believe, issue a new share certificate to him as -- or to

20    whoever the shareholder is going to be.

21         Not only would that procedure be more effective,

22    not only would it have been massively simpler than to hold

23    the debtor in contempt for doing something -- not doing

24    something that I think this order doesn't require him to do,

25    in fact, it makes the order -- I'm sorry, when I say this

1    order, the corporate governance order -- really nonsensical

2    -- not only is it more -- be more effective to do it that

3    way, I believe, Your Honor, under the corporate governance

4    order, the correct action to take is what the corporate

5    governance order expressly contemplates, that the trustee as

6    the beneficial owner would have the right to replace the

7    director and nominee shareholder and then take whatever

8    corporate action he deems necessary.

9         I have told the trustee, I will tell the Court,

10   that the debtor will not object to the trustee doing exactly

11   that, to doing what the corporate governance order expressly

12   contemplates that he has authority to do.

13        So that process or that type of procedure is

14   exactly the relief that was requested by the Court and that

15   the Court ordered.

16        And the trustee has chosen rather than to pursue

17   that path, which he requested in the court order, to spend a

18   lot of time and money seeking to hold Mr. Kwok in contempt

19   for something that, as I said, I believe the Court order

20   doesn't require and, in fact, that it does require him to do

21   what the trustee is asking is really nonsensical.

22        Your Honor, my point three is that again can the

23   trustee or has the trustee shown that there is no fair

24   ground of doubt and quite clear and convincing evidence that

25   the -- that the debtor has failed to comply.

1          And, Your Honor, on my point three, I would ask

2     the courtroom deputy to bring up Exhibit 10.

3          THE COURT:  The Trustee's Exhibit 10?

4          MR. HENZY:  I'm sorry, Your Honor.  I'm sorry.  My

5     Exhibit B.  I apologize, Your Honor.

6          THE COURT:  B, as in boy?

7          MR. HENZY:  B, as in boy.

8          THE COURT:  Okay.

9          THE COURTROOM DEPUTY:  Exhibit B is on the screen.

10         MR. HENZY:  Thank you.

11         THE COURT:  Exhibit B is there, Attorney Henzy.

12         MR. HENZY:  Your Honor, you can review the

13    document, but I'd represent that this is a letter from Mr.

14    Kwok addressed to Yvette Wang, and the letter -- it attaches

15    a share transfer instrument and a written resolution,

16    director resolution, in the form demanded by the trustee,

17    and on that -- right where we are right now, Your Honor, you

18    can see the last clause or the last sentence of that letter

19    states, "Therefore, in compliance with the trustee's demand

20    and to the extent that I may have any authority over Ace

21    Decade I hereby direct you to execute the attached share

22    transfer instrument and share transfer resolution."

23         Your Honor, in his reply that was filed under seal

24    -- and I think I can -- well, in his reply to our objection,

25    Your Honor, the trustee argues that sending this letter to

1    Ms. Wang with the share transfer instrument and the director

2    resolution attached is a litigation tactic.

3          I argue it is not a litigation tactic.  It is an

4    attempt to comply.

5          Contempt -- the purpose of civil contempt, is not

6    to punish, it is to compel compliance.  What Mr. Kwok is

7    trying to do here is comply.  He does not want to have this

8    fight.

9          If the trustee wants a different letter, or if the

10   Court thinks there should be a different letter, then that

11   should be specified.

12         And that goes back to Mr. Kwok needs to know

13   within the four corners of the order that you entered what

14   it is that he is required to do?

15         He has attempted to comply by sending this letter

16   to Ms. Wang.  If there is something else he needs to do, I

17   think it is not specified in the order.

18         And, again, the *King* case says that what is

19   required has to be in the four corners of an order entered

20   by the Court, and there's nothing in the order that

21   specifically says how Mr. -- it doesn't specifically address

22   this issue; that is, Mr. Kwok as the beneficial owner trying

23   to get a director and nominee shareholder to act at all, but

24   it certainly doesn't specify what exactly the action that he

25   would have to take would be.

1              I will point out, Your Honor, and if you could --

2       if the courtroom deputy could bring up Exhibits C -- Exhibit

3       C first.

4              THE COURT:  Okay.  Debtor's Exhibit C.

5              THE COURTROOM DEPUTY:  Exhibit C is on the screen.

6              THE COURT:  The share transfer instrument, is that

7       what you're looking at, Attorney Henzy?

8              MR. HENZY:  Yes, Your Honor.  And if you page down

9       -- and I don't -- that's -- maybe page back up a little bit.

10      Thank you.  That's probably great.

11             So, Your Honor, you'll see that that is a share

12      transfer instrument executed by Mr. Kwok.  Your Honor, the

13      trustee's demand was that Mr. Kwok execute a share transfer

14      and director resolution or cause the director and nominee

15      shareholder to do so.

16             I don't believe that anyone has ever claimed, I

17      don't believe the trustee has argued, that Mr. Kwok is, in

18      fact, this nominee shareholder or director, but I had him

19      execute this document anyway.  This is the share transfer

20      agreement.

21             And Exhibit D, Your Honor, if you could bring that

22      up.

23             THE COURT:  Which one now?  Go back to B?

24             MR. HENZY:  Exhibit D as in dog.

25             THE COURT:  Oh, D.  I'm sorry.  Okay.  Debtor's

1    Exhibit D as in dog.

2            THE COURTROOM DEPUTY:  Exhibit D is on the screen.

3            MR. HENZY:  That is the resolution of sole

4    director, Your Honor.  Again, that's executed by Mr. Kwok.

5    Although, to be very, very clear, no one has ever argued, I

6    don't believe the trustee argues, that Mr. Kwok, in fact, is

7    the director, but that was in the demand letter that the

8    trustee sent.

9            Again, he asked Mr. Kwok to execute a share

10   transfer agreement and a director resolution or cause this

11   nominee shareholder and director to execute such documents.

12           So, again, I had him execute this document so that

13   any claim that he hasn't complied with, the trustee's first

14   demand I think is answered by that.

15           So, again, Your Honor, Mr. Kwok has attempted to

16   comply.  If there is something more that he needs to do, I

17   would ask really the Court to instruct.

18           My last point, Your Honor, is sort of hopelessly

19   tied up with the sealed documents and --

20           THE COURT:  Well, then we're not going to talk

21   about them, that last point, right now, Attorney Henzy.

22           MR. HENZY:  And, Your Honor, the deposition

23   transcript that I am going to be -- ask to be admitted.

24           THE COURT:  I think it already is.  It's been

25   sealed, right, 27?  I think it's been already admitted

1    yesterday.

2              MR. HENZY:  No.  No.  I think Mr. Bassett and I

3    would agree it has not been admitted, Your Honor.  It's

4    sealed.  And it was identified by the trustee as an exhibit,

5    but it has not been admitted.

6              THE COURT:  I thought it was admitted yesterday.

7              MR. BASSETT:  Your Honor, it was not admitted

8    yesterday.  And I think --

9              THE COURT:  Okay.  All right.  That's fine.  I'm

10   just, you know, trying to keep up.  I thought I had made a

11   note about that exhibit, but, in any event, let me see.  Oh,

12   you're right.  It has not been.  All right.

13             Well, we're not going to admit it now.  We'll

14   admit it during the portion of the sealed portion of the

15   hearing.

16             So, Attorney --

17             MS. SMITH:  Your Honor, to the -- to the extent

18   that we'll be addressing the deposition transcript, PAX is a

19   party to the protective order and was, in fact -- counsel

20   for PAX was present at the deposition and we would request

21   that we be allowed to participate to the limited extent that

22   it concerns the deposition transcript.

23             THE COURT:  We will address that when we come to

24   that issue, but thank you.

25             MS. SMITH:  Thank you, Your Honor.

1          THE COURT:  Attorney Bassett, you were going to

2    respond to Attorney Henzy's arguments about the evidence

3    that is not under seal?

4          MR. BASSETT:  Yes.  Yes, Your Honor.  I will do

5    that, and then obviously save the balance of my remarks for

6    the closed session.

7          So, Your Honor, the first argument that you heard

8    Attorney Henzy make is that as of the entry of the corporate

9    governance order his client has effectively been divested

10   with any corporate authority and, therefore, at this point,

11   is, as Mr. Henzy would have it as a technical matter,

12   incapable of taking action to have transfer of Ace Decade --

13   to have Ace Decade's ownership rights, control and shares

14   transferred to the estate and to Trustee Despins.

15         That argument, Your Honor, is nonsensical, to put

16   it bluntly,  and completely inconsistent not only with the

17   order the Court ordered, the corporate governance rights

18   order, but also, as I said at the outset of my remarks

19   yesterday, a clear command of the Bankruptcy Code and the

20   debtor's duty to cooperate.

21         I'd like to have Exhibit E, and my colleague, Doug

22   Barron, who's on the line, can either put it up or take

23   control of the document, but I'd just like to --

24         THE COURT:  We're going to -- we'll have to -- we

25   have to --

1          MR. BASSETT:  -- to go back --

2          THE COURT:  The courtroom deputy will have to do

3     that first.  We have to do this to keep the record clear

4     with regard to the exhibits.

5          MR. BASSETT:  Sure.

6          THE COURT:  So you'd like the courtroom deputy to

7     pull up the Debtor's Exhibit E, Attorney Bassett?

8          MR. BASSETT:  The Debtor's Exhibit E, yes, Your

9     Honor.

10         THE COURTROOM DEPUTY:  Exhibit E is on the screen.

11         THE COURT:  Okay.  It's there now, Attorney

12    Bassett.  How do you want to handle that?

13         MR. BASSETT:  If control could be passed to my

14    colleague, Mr. Barron, that would be great.

15         THE COURT:  We can do that.  We're passing control

16    of Exhibit E to trustee's counsel for purposes of this

17    argument right now.

18         MR. BASSETT:  Thank you.

19         I'd ask Mr. Barron, once he has control, to go

20    down to I believe it's paragraph 2.  I don't know if we are

21    having some technical difficulties here?

22         MR. BARRON:  I am.  Sorry.  I apologize.  I'm

23    having a little trouble moving the screen.  Here we go.

24         MR. BASSETT:  Okay.  Thank you.

25         So, Your Honor --

1          THE COURT:  Okay.  I see paragraph 2.  Go ahead.

2          MR. BASSETT:  Thank you, Your Honor.

3          I think it's telling the way that Attorney Henzy

4     sequenced his argument in talking about the case law that

5     applies to a motion for contempt and then directing the

6     Court to the order that I started my argument with yesterday

7     and that governs this dispute and demonstrates beyond doubt

8     that the debtor is, in fact, in contempt for failing to

9     comply with the order.

10          So what Attorney Henzy said was, you know, an

11     order has to be clear and unambiguous in what it commands

12     for someone to be held in contempt for failing to comply

13     with that order.

14          Your Honor, paragraph 2, as I said yesterday,

15     based on the order that the Court has now entered, based on

16     the debtor abandoning the argument he previously led with in

17     his objection to our motion for contempt that he did not

18     actually own Ace Decade at all, which he's rightfully now

19     abandoned because it has no merit whatsoever as the

20     documents that we presented to the Court made clear,

21     notwithstanding the fact that he made the trustee spend

22     hundreds of thousands of dollars litigating that issue,

23     under paragraph 2 it says the trustee holds all of the

24     debtor's economic and governance rights for the benefit of

25     the estate with respect to the debtor-controlled entities

1    which includes Ace Decade.

2              Now, what the debtor would have the Court do is

3    stop there and say that's it. The trustee got what he

4    wanted, might have spent hundreds of thousands of dollars in

5    fighting to finally unveil the truth that the debtor does,

6    in fact, own Ace Decade, but now that he has the entity,

7    what else can I do?  Now it's the trustee's problem.

8              But that is not what this order requires and it's

9    not what the Bankruptcy Code requires.

10             If you look at paragraph 3 of this order, Your

11   Honor, again, as I focused the Court to yesterday, it says

12   very clearly, and as unambiguously as possible, that in

13   accordance with Sections 521(a)(3) and 521(a)(4) of the

14   Bankruptcy Code the debtor is hereby directed to cooperate

15   with the trustee as necessary to enable the trustee to

16   perform his duties.

17             Sections 521(a)(3) and (a)(4) of the Bankruptcy

18   Code, Your Honor, are very clear in what they direct.

19   521(a)(3) says that if a trustee has been appointed, the

20   debtor must cooperate with the trustee as necessary to

21   enable the trustee to perform his duties under this title.

22   Section 521(a)(4) says that if a trustee has been appointed,

23   the debtor must surrender to the trustee all property of the

24   estate and recorded information.

25             Your Honor, these provisions of the Bankruptcy

1    Code and this provision of this order make the abundantly

2    obvious point that the mere transfer as a matter of law of

3    the debtor's property to the trustee upon a bankruptcy

4    filing does not end the debtor's obligation to cooperate

5    with the trustee and take steps necessary to ensure that the

6    trustee is actually able to obtain control of that property,

7    including entities through its acquisition of corporate

8    governance rights.

9          That is what the debtor is required to do and that

10   is what he has utterly failed to do.

11         The other thing that Mr. Henzy omitted in his

12   argument was the history of how we got here, barely covered

13   the fact that since we filed this motion, they made the

14   completely unsupported argument that the debtor didn't own

15   the entity, notwithstanding the crystal clear evidence to

16   the contrary, which the Court has now entered a finding on,

17   but it also ignores how we got here more broadly in this

18   case.

19         Trustee Despins was appointed in July of this

20   year.  And as I just showed Your Honor the Bankruptcy Code

21   at that point was very clear in directing what the debtor

22   was required to do thereafter to cooperate with the trustee.

23         But what happened then and what's happened at

24   every single stage of this case since, whether it's with

25   respect to corporate governance rights or discovery or

1    anything else, the debtor refused to cooperate and did

2    everything in his power to make life difficult and expensive

3    for the trustee.

4           The trustee had no choice but to file a corporate

5    governance rights motion seeking relief in the order to make

6    it even more clear than it already was.  We now have that

7    order entered and we are still here.

8           Because notwithstanding the fact that control of

9    Ace Decade should have transferred to the estate, the debtor

10   is not taking action necessary to make that happen.

11          Now, what Attorney Henzy (indiscernible) to in his

12   second argument is the fact that, well, you know, even if

13   the debtor is able, notwithstanding the fact that he no

14   longer technically has the ability to do anything, but even

15   if he did, he's done everything he can do because --

16          And I'd like to ask the courtroom deputy to pull

17   up Exhibit B, the Debtor's Exhibit B, please.

18          THE COURTROOM DEPUTY:  Exhibit B is on the screen.

19          MR. BASSETT:  Thank you very much.

20          And if my colleague, Mr. Barron, could have

21   control, that would be much appreciated.

22          THE COURT:  I think he does already have control.

23          MR. BASSETT:  Okay.  Great.  Sorry.  Thank you,

24   Your Honor.

25          So this letter, Your Honor, which Attorney Henzy

1    focused on, and which I'll spend more time talking about in

2    the private session because there's testimony on it that's

3    under seal, is a farce to be honest.

4          The letter is dated November 10th, 2022 first of

5    all.  Our motion was filed weeks, if not at least a month

6    before that.  The debtor could have, had he been serious

7    about attempting to take action, at least at a minimum,

8    tried to do that prior to last week.  I'll get into the

9    testimony on the timing once we get into the private

10   session.

11         The other thing I would point out about this

12   letter is that it tellingly does not contain an address for

13   Ms. Wang.  I'll get into that more in the private session.

14   It says it was sent by personal delivery.  There's no

15   evidence at all this was actually delivered.

16         And if you look at the text of what is written

17   here it is so abundantly, transparently a litigation tactic

18   in that the debtor sends a letter saying that Ms. Wang, I

19   want you to -- plus he says, and he says in the second

20   sentence, the trustee believes that I control Ace Decade and

21   is requiring that I utilize that perceived control to direct

22   you to execute the attached share transfer instrument and

23   share transfer resolution.

24         But he's admitting on the face of the letter that

25   he's sending to Ms. Wang, purportedly asking her to take

1    these actions that he doesn't even think he has the ability

2    to request what's he's requesting.  The idea that he in good

3    faith believes that she's actually going to comply with that

4    request is simply not -- it's not believable.

5              Similarly in the last sentence, to the extent I

6    have any authority.  Again, a transparent admission to the

7    recipient of the letter don't do what I'm asking you to do

8    because I don't have the ability to do it.

9              Your Honor, this was filed in order to make it

10   seem like the debtor is taking action to comply with his

11   obligation under the corporate governance order and the

12   Bankruptcy Code.  Again, we'll get into more testimony about

13   it in the closed session.

14             And the share transfer resolution and the director

15   resolution, Attorney Henzy conceded to you in his argument

16   that those were ineffectual because Ms. Wang -- and by the

17   way, Your Honor, the debtor, in his opposition to the

18   motion, again, which led with the now dropped argument that

19   he didn't own Ace Decade, he didn't even mention who the

20   beneficial or nominee or other shareholder of Ace Decade

21   was.  That remained a mystery until this letter was entered

22   as an exhibit as far as the debtor is concerned.

23             So the idea that he has been acting in good faith

24   to take steps to cause Ms. Wang, who he didn't even identify

25   to us until November 10th, to take action to cause control

1    of Ace Decade to be transferred to the trustee is simply

2    untrue.

3           Your Honor, before we go into the private session,

4    I just want to wrap things up and recap where we are.

5           What the debtor would ask the Court to do is not

6    there.  And the consequence of that would be for the trustee

7    to have to continue doing what he's had to do since day one

8    in this case, which is scratch and fight and claw and spend

9    a ton of money and unnecessary time and effort to get what

10   he should have as a matter of law.

11          The debtor would have the trustee chase Yvette

12   Wang, to the extent he can even find her, to the BVI or

13   elsewhere, spending hundreds of thousands of dollars trying

14   to compel her to do something that the evidence is very

15   clear the debtor can do.

16          There is no credible argument that the debtor, who

17   has a long relationship with Ms. Wang, has done everything

18   he reasonably is required to do in accordance with the order

19   of this court and his obligations under the Bankruptcy Code

20   to make the transfer of the shares occur and to allow the

21   trustee to have the control that he is entitled to have.

22          Now, I have more comments that go to that and more

23   evidence that supports those points that I will reserve for

24   the private session, but, Your Honor, we think, based on the

25   record relating to this motion, based on the record in this

1    case, that it is clear the debtor has not complied with the

2    corporate governance rights order, should be held in

3    contempt, and he should be ordered not to take some

4    additional specific action to, oh, you know, revise that

5    letter, which I'm sure is an argument that Mr. Henzy will

6    make to say something slightly different, what the debtor

7    needs to do and what the trustee would ask the Court to do

8    is to compel the debtor to have the shares transferred to

9    the trustee, period.  He has the ability to do that.

10          The Court should set a deadline.  If he doesn't do

11   it by that deadline, and the trustee doesn't have the

12   shares, then the Court should at that point consider what

13   the sanctions are going to be for his continued failure to

14   comply.  And those sanctions are wide ranging in the

15   discretion of the Court and they include confinement.

16          I had a case last year before Judge Sontchi in

17   Delaware, very similar circumstances, exactly, actually a

18   year ago today, Your Honor, November 2021.  The *Eagle*

19   *Hospitality* case.  We were debtor's counsel.  We had two

20   former principals of the debtor who were subject to a

21   preliminary injunction order that we entered against them.

22   They were required to provide an accounting, to take public

23   steps to provide information to the debtor.  They repeatedly

24   failed to do that.

25          We asked the Court to enter an order of contempt

1    with the consequence of failure to comply being confinement.

2              Judge Sontchi entered an order that gave them two

3    weeks to comply.  If they didn't within those two weeks, the

4    order stated that they would be committed and confined

5    without further notice by order of the sheriff.

6              And what happened?  They complied.  And that, the

7    case reference, for Your Honor, just so you have it, again,

8    as I said, it's the *Eagle Hospitality* case.  The case number

9    is 21-10036 and the order is at ECF 1686.

10             So, Your Honor, we are really -- and I think, I

11   hope Your Honor is gathering from my comments that we are

12   getting to our wits end with the amount of effort we've had

13   to expend getting simple compliance from this debtor in this

14   case in order for the trustee to exercise his duties that he

15   is tasked with exercising under the Bankruptcy Code.

16             So we would ask that an order be issued finding

17   the debtor in contempt.

18             Again, as I said, I'm happy to address additional

19   points during the closed session.

20             THE COURT:  Okay.  Thank you.

21             Attorney Henzy --

22             MR. HENZY:  May I respond, Your Honor?

23             THE COURT:  -- you have an opportunity to reply

24   and then this will -- then we will be done with the portion

25   of the hearing that will be open to the public.  So go right

1    ahead.

2              MR. HENZY:  Thank you, Your Honor.

3              Almost the first remark I made, Your Honor, was I

4    understand -- I could not understand that there had been a

5    tremendous amount of activity and dispute in this case.

6              The only thing before the Court today is whether

7    or not the debtor has failed to comply with the corporate

8    governance order.  There is no other part of this case that

9    is relevant to what is before the Court today.

10             I will get to the 521(a)(3) and (4) argument in

11   terms of the debtor's ability -- sort of I'll call it

12   practical ability to comply.

13             But this is important.  This goes to my first

14   argument, Your Honor, about what the corporate governance

15   order says and does.  It states what is the black letter

16   law, which that as of Mr. Despins' appointment he had all

17   corporate governance rights.

18             In terms of the debtor's ability to cooperate

19   under 521(a)(3), a demand by the trustee for cooperation has

20   to be reasonable.

21             What Mr. Despins is positing in this situation

22   where the debtor is -- who Mr. Despins has consistently said

23   is not the beneficial owner upon Mr. Despins' appointment --

24   is going to the director and nominee shareholder and saying

25   to the director and nominee shareholder I am directing you

1    and telling you to do this.

2              And under the corporate governance order the

3    director and nominee shareholder would be well within that

4    person's right to say what is your authority to be asking me

5    to do this?

6              And the answer is that Mr. -- as of Mr. Despins'

7    appointment Mr. Kwok has no authority according to the

8    trustee.  He had no authority to direct the director and

9    nominee shareholder to do anything.

10             So the 521(a)(3), and I'll get to the second part

11   of the 521(a)(3) problem, the 521(a)(3) problem is by the

12   corporate governance order that Mr. Despins asked you to

13   order, enter, and by the operation of the Bankruptcy Code,

14   how does Mr. Kwok comply with that?

15             Does he -- does he use physical force if the

16   person says, no, I don't think that that is what is -- that

17   is what is complicated -- contemplated.

18             Give me one moment, Your Honor.

19             THE COURT:  Sure.

20             MR. HENZY:  Mr. Bassett, I think, just passed over

21   my second argument.

22             And, you know, I don't know that anybody is going

23   to feel sorry for me if I'm at my wits end, but my

24   consistent position or my consistent belief here, Your

25   Honor, has been this is -- this has been a waste of time.

1          The corporate governance order is clear what Mr.

2     Despins could have done here.  He had the authority under

3     that order to replace the director and nominee shareholder

4     and to take whatever corporate action he wanted to take.

5     That would have been fast.  It would have been cheap.  It

6     would have been easy.

7          As I've said, the debtor will not object to that.

8     The debtor never would have objected to that.

9          If Mr. Despins wants to have -- wanted to or wants

10    to have that blessed by the Court, he can do that.

11         I don't know why we've had to have this fight.

12         This is distinguishable.  And, again, this goes to

13    my argument, Your Honor, that if you're going to read into

14    this order what the trustee is asking you to read into the

15    order, then I think the order is ambiguous.

16         And I haven't seen Judge Sontchi's order, but just

17    from what Mr. Bassett said, this is not a case where you

18    ordered -- you ordered Mr. Kwok to provide an accounting.

19         This is -- this is an order where you said the

20    trustee has all corporate governance rights of any debtor-

21    controlled entity, and you ordered Mr. Kwok to cooperate.

22         This is not something where you specifically said

23    something like provide an accounting.  You didn't

24    specifically say here, notwithstanding that you are not the

25    beneficial owner, you need to go and direct this person to

1   take corporate action when you -- will not just enter an

2   order that says you have no corporate authority.

3          The 521(a)(3) language, Your Honor, in the order,

4   it says, as Mr. Bassett quoted, as necessary to perform

5   trustee's duties.  And that's from the code.

6          And, again, the argument is this was -- this was

7   not necessary for the trustee to perform the trustee's

8   duties.  What the trustee could have done very easily and

9   quickly and cheaply was simply to take corporate action by

10  himself.  That was expressly provided for in the corporate

11  governance order.

12         Your Honor, I'll say again, if -- and this, you

13  know, we'll get to the 521(a)(3) argument in terms of what

14  Mr. Kwok can or can't do.  He can't use physical force.

15         If there's a communication that the trustee or the

16  Court thinks is necessary to send, then I would like to be

17  told that, what it is, because right now I don't know what

18  it is that would satisfy the trustee or from the Court's

19  perspective the order entered by the Court.

20         And, you know, within reason, Mr. Kwok is going to

21  do what the Court specifically orders him to do.  That's

22  all, Your Honor.

23         THE COURT:  Okay.  Thank you.  All right.

24         With regard to the continuation of the hearing

25  that will be under seal, Attorney Bassett and Attorney

1    Linsey, your motion for seal talked about certain parties

2    being able to see the information even under seal because of

3    the protective order and all those parties being bound by

4    the protective order.  So the trustee, the debtor, PAX, the

5    committee and the United States Trustee are all bound by the

6    protective order.  Is that accurate?

7         MR. LINSEY:  Yes, Your Honor.  Solely with respect

8    to the Kwok deposition transcript.

9         THE COURT:  What about the other documents then?

10        MR. LINSEY:  The other documents can only be

11   available to the Court, the debtor and the trustee.

12        THE COURT:  So we're going to have to break down

13   the session into two sessions.  We're going to have to deal

14   with the deposition transcript separate and apart from all

15   the other exhibits.  Is that correct?

16        MR. LINSEY:  Yes, Your Honor.  I apologize.  I

17   know it's inconvenient.  It is --

18        THE COURT:  Oh, that's --

19        MR. LINSEY:  -- unfortunately just a creature --

20        THE COURT:  That's what I --

21        MR. LINSEY:  -- of what we're dealing with.

22        THE COURT:  That's what I envisioned, but I needed

23   -- I need you to, as you just have, articulate that for the

24   record.

25        MR. LINSEY:  Thank you, Your Honor.

1          THE COURT:  I mean, that's what I had -- you're

2     breaking -- it's breaking down into the parties who are

3     bound by the protective order can see the deposition

4     transcript.  But no one other than the debtor and the

5     trustee can argue about the other documents that are under

6     seal because they subject to the attorney-client privilege

7     and the work product doctrine?

8          MR. LINSEY:  Correct, Your Honor.

9          THE COURT:  Okay.

10          MR. HENZY:  And, Your Honor, practically I don't

11     know how that's going to work, Your Honor, because I don't

12     know how I'm going to try to pull the pieces of the argument

13     apart to make reference to parts that are under seal as

14     attorney-client privilege versus not under seal as attorney-

15     client privilege.

16          THE COURT:  Well, I'll tell you how it's going to

17     work.  We're going to limit the discussion with everyone

18     else in the room to the deposition transcript and then we're

19     going to break again and you're going to talk about the

20     sealed exhibits.  That's how it's going to work.

21          MR. HENZY:  Very well, Your Honor.

22          THE COURT:  Okay?  So what we're going to do now

23     then is we will take a recess until 3:00 p.m.

24          And the hearing will reconvene to address solely

25     Exhibit -- I think it's Exhibit 27, which is ECF 1100, which

1    is the deposition of Mr. Kwok that was conducted last Friday

2    I believe.

3            And the parties that will be able to be in that

4    portion of the hearing are the parties bound by the

5    protective order, that have all signed onto the protective

6    order, that I already mentioned on the record, which is the

7    debtor, the trustee, the U.S. Trustee, PAX and the

8    committee.

9            Okay.  Court is in recess until 3:00 p.m.

10           (Recess from 2:42 p.m. until 3:14 p.m.)

11           THE COURTROOM DEPUTY:  Court is in sessions after

12    recess.

13           THE COURT:  Okay.  Good afternoon.  In accordance

14    with the order that was read into the record during this

15    hearing today granting the trustee's motion to dismiss, the

16    trustee's motion to seal, excuse me, I looked at something

17    that says dismissed on it when I was saying that, I

18    apologize, this portion of the hearing will be under seal

19    and the parties that are able to attend this portion of the

20    hearing are the trustee, the debtor, the United States

21    Trustee and Pax.

22           Have I forgotten anyone?  I see no one else

23    participating in the hearing looking at the screen other

24    than those parties.  Oh, except Mr. Wolman.  I don't know

25    why Mr. Wolman is still here because he's not one of those

1    parties.

2              THE COURTROOM DEPUTY:  I can put him in the

3    waiting room and I will do that now.

4              THE COURT:  Okay.

5              MR. KAPLAN:  And, Your Honor, I believe the

6    committee.  I not sure if you said us, but I think we were

7    included in that.

8              THE COURT:  I might not have said that, Attorney

9    Kaplan, so you're right to make sure I did because the

10   committee is one of the parties.  I did say that before the

11   recess, but I didn't just say that.  So thank you.

12             Okay.  So we are going to only address -- oh, I'm

13   sorry, go ahead.

14             THE COURTROOM DEPUTY:  Am I sealing the recording?

15             THE COURT:  You're sealing the recording as well,

16   yes.

17             THE COURTROOM DEPUTY:  Okay.  I will.

18             THE COURT:  This is going to be a sealed portion

19   of this hearing.

20             (Audio portion from 3:15 p.m. until 4:04 p.m. sealed.)

21

22

23

24

25

1           I, CHRISTINE FIORE, Certified Electronic Court

2    Reporter and Transcriber, certify that the foregoing is a

3    correct transcript from the official electronic sound

4    recording of the proceedings in the above-entitled matter.

5

6    *Christine Fiore*

7    _____          December 2, 2022

8       Christine Fiore, CERT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    INDEX

2                                                                       Page

3        TRUSTEE'S EXHIBITS:

4        32    Declaration of Guo Wengui in Wengui v. Li         51

5        33    Letter from Wedlake Bell LLP to Paul Hastings      51

6              dated November 3, 2022 concerning Ace Decade

7              Holdings Limited and Dawn State Limited

8

9        DEBTOR'S EXHIBITS:

10       B     November 10, 2022 letter from the Debtor to       62

11             the director and nominee shareholder of

12             Ace Decade Holdings Limited with attached

13             Share Transfer Instrument and Share

14             Transfer Resolution

15       C     Ace Decade Holdings Limited Share Transfer         62

16             Instrument signed by the Debtor

17       D     Ace Decade Holdings Limited Share Transfer         62

18             Resolution signed by the Debtor

19       E     Order Pursuant to Bankruptcy Code Sections        62

20             363, 521, 1108, and 1505, (A) Confirming that

21             Chapter 11 Trustee holds all of the Debtor's

22             Economic and Corporate Governance Rights in

23             Debtor-Controlled Entities, (B) Authorizing

24             Chapter 11 Trustee to act in any foreign country on

25             behalf of Estate, and, (C) Granting related relief.

INDEX (Continued)

Page

DEBTOR'S EXHIBITS (Continued):

G   Motion of Chapter 11 Trustee for Entry of          62

    Order, Pursuant to Bankruptcy Code Sections

    363, 521, 1108, and 1505, (A) Confirming that

    Chapter 11 Trustee holds all of the Debtor's

    Economic and Corporate Governance Rights in

    Debtor-Controlled Entities, (B) Authorizing

    Chapter 11 Trustee to act in any foreign

    country on behalf of Estate, and,

    (C) Granting related relief.

H   August 1, 2022 Hearing Transcript excerpts,       65

    page 118, line 13, and page 121, lines 13

    through 25

I   August 4, 2022 Hearing Transcript excerpts,       66

    page 17, lines 15 through 17

    August 4, 2022 Hearing Transcript excerpts,       79

    page 64, line 14, and lines 19 through 22