UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

```
-------------------------------------------------------x
                                           :
In re:                                     :    Chapter 11
                                           :
HO WAN KWOK, et al.,                       :    Case No. 22-50073 (JAM)
                                           :
              Debtors.[1]                  :    Jointly Administered
                                           :
-------------------------------------------------------x
```

**APPLICATION OF CHAPTER 11 TRUSTEE, GENEVER HOLDINGS
CORPORATION, AND GENEVER HOLDINGS LLC FOR ENTRY OF ORDER (I)
APPROVING RETENTION AND APPOINTMENT OF EPIQ CORPORATE
RESTRUCTURING, LLC AS  CLAIMS AND NOTICING AGENT, EFFECTIVE AS OF
DECEMBER 1, 2022, AND (II) GRANTING RELATED RELIEF**

Luc Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Individual Debtor"), Genever Holdings Corporation

("Genever (BVI)"), and Genever Holdings LLC ("Genever (US)" and, together with Genever

(BVI) and the Trustee, the "Movants") file this application (the "Application") requesting entry

of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i)

appointing Epiq Corporate Restructuring, LLC ("Epiq") as claims and noticing agent (the

"Claims and Noticing Agent") for the chapter 11 cases of the Individual Debtor, Genever (BVI),

and Genever (US) (collectively, the "Debtors"), effective as of December 1, 2022, pursuant to

section 156(c) of title 28 of the United States Code (the "Judicial Code"), on the terms set forth

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
        Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
        Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The
        mailing address for the Trustee, Genever Holdings LLC, the Genever Holdings Corporation is Paul Hastings
        LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok
        (solely for purposes of notices and communications).

in the Services Agreement attached hereto as **Exhibit B** (the "Services Agreement"), including assuming full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in these chapter 11 cases; and (ii) granting related relief.  In support of the Application, the Movants submit the *Declaration of Kate Mailloux in Support of Application of Chapter 11 Trustee, Genever Holdings Corporation, and Genever Holdings LLC for Entry of Order (I) Approving Retention and Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent, Effective as of December 1, 2022, and (II) Granting Related Relief* (the "Mailloux Declaration"), attached hereto as **Exhibit C** and incorporated herein by reference.  In further support of this Application, the Movants respectfully state as follows.

## JURISDICTION, VENUE, AND STATUTORY BASES

1.      The United States Bankruptcy Court for the District of Connecticut (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended).  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are section 156(c) of title 28 of the Judicial Code and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

### I.      **The Individual Debtor's Chapter 11 Case**

4.      On February 15, 2022 (the "Petition Date"), the Individual Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in the Individual Debtor's chapter 11 case.  No examiner has been appointed in the Individual Debtor's chapter 11 case.

6.      On June 15, 2022, the Court entered a memorandum of decision and order [Docket No. 465] (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee.[2]

7.      On July 8, 2022, the Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [Docket No. 523].

**II.     Genever (BVI)'s Chapter 11 Case**

8.      On October 11, 2022 (the "Genever (BVI) Petition Date" and, together with the Genever (US) Petition Date and the Individual Debtor Petition Date, the "Petition Dates"), Genever (BVI) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

9.      No trustee or official committee of unsecured creditors has been appointed in Genever (BVI)'s chapter 11 case.

10.     October 14, 2022, the Court entered an order granting joint administration of the Individual Debtor's chapter 11 case and Genever (BVI)'s chapter 11 case [Docket No. 970].

---

[2]    The references to docket numbers set forth in this Motion refer to the Chapter 11 Case docket unless otherwise indicated.

### III.    Genever (US)'s Chapter 11 Case

11.    On October 12, 2020, Genever (US) filed its chapter 11 petition in the United

States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy

Court").

12.    No trustee or official committee of unsecured creditors has been appointed in

Genever (US)'s chapter 11 case.

13.    On September 30, 2022, the Trustee and Genever (US) file their joint motion to

transfer venue of Genever (US)'s chapter 11 case to this Court [Docket No. 211 in Case No. 20-

12411 (JLG)] (the "Venue Transfer Motion").  By order dated November 3, 2022, the New York

Bankruptcy Court granted the Venue Transfer Motion.

14.    On November 21, 2022, the Court entered an order granting joint administration

of the chapter 11 cases of the Individual Debtor, Genever (BVI), and Genever (US) [Docket No.

1141].

### IV.    Bar Date Motion

15.    On November 16, 2022, the Court held a hearing (the "Hearing") on the

*Supplemental Motion of Chapter 11 Trustee, Genever Holdings Corporation, and Genever*

*Holdings LLC for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim; (II)*

*Approving Form of Notice of Bar Dates; and (III) Granting Related Relief* [Docket No. 1072]

(the "Supplemental Bar Date Motion").  At the conclusion of the Hearing on the Supplemental

Bar Date Motion, the Court granted the Supplemental Bar Date Motion with certain modification

discussed by the Trustee on the record at the Hearing.[3]

---

[3]    On November 17, 2022, the Trustee submitted to the Court a revised proposed Bar Date Order, reflecting those
modifications.

16.     On December 2, 2022, Movants filed an addendum to the Supplemental Bar Date Motion [Docket No. 1191] (the "Addendum") requesting, among other things, that the Court approve procedures to allow individual creditors to submit proofs of claim on a confidential basis without publicly disclosing their names and contact information.

## EPIQ'S RETENTION

17.     By this Application, the Movants request entry of an order, substantially in the form attached hereto, appointing Epiq as the Claims and Noticing Agent for the Debtors in accordance with the Services Agreement, effective as of December 1, 2022.  As detailed in the Addendum, the Individual Debtor and his affiliated organization have engaged in numerous intimidation tactics, including targeting individuals and entities on social media and picketing the home of the Trustee and others, which has prompted the need for individual creditors to participate in the claims process on a confidential basis to keep their names and contact information from the public's view to avoid the potential risk of retaliation by the Individual Debtor or his affiliated entities.

18.     After conferring with the U.S. Trustee, the Trustee has determined that the most efficient and economical method of submitting proofs of claim on a confidential basis is through a claims and noticing agent.  Without retention of a claims and noticing agent, each individual creditor would need to seek relief from the Court to have the personal information in their proof of claim sealed.  Because this would impose an unnecessary administrative burden on the individual creditors, the Trustee, Genever (BVI), Genever (US), the Clerk, and the Court, the Movants believe the appointment of Epiq is appropriate and is otherwise in the best interests of the Debtors' estates, their creditors and stakeholders.

19.     Although the Services Agreement contemplates that Epiq will provide services for the Movants outside the scope of 28 U.S.C. § 156, the Movants will seek authorization by separate application to retain and employ Epiq as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for those services.[4]

## EPIQ'S QUALIFICATIONS

20.     Epiq is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Epiq's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Epiq's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide.

21.     Epiq has substantial experience in matters of this size and complexity and has acted as the official notice and claims agent in many large bankruptcy cases pending in districts nationwide.  *See, e.g.*, *In re The Norwich Roman Catholic Diocesan Corporation*, Case No. 21-20687 (JJT) (Bankr. D. CT. Jul 15, 2021); *In re The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (SCC) (Bankr. S.D.N.Y. Oct. 1, 2020); *In re Roman Catholic Diocese of Harrisburg*, Case No. 20-00599 (HWV) (Bankr. M.D.P.A. Feb. 19, 2020); *In re Tops Holding II Corporation, et al.,* Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Roust Corporation*, Case No. 16-23786 (RDD) (Bankr. S.D.N.Y. Jan. 10, 2017); *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (SHL) (Bankr. S.D.N.Y. Aug. 2, 2016); *In re China Fishery Group Ltd.*, Case No. 16-11895 (JLG) (Bankr. S.D.N.Y. May 24, 2017); *In re Nautilus Holdings*

---

[4]    At this time, the Movants have not yet determined whether to request such additional services from Epiq.

*Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. June 25, 2014); *In re LHI Liquidation Co. (f/k/a Loehmann's Holdings Inc.)*, Case No. 13-14050 (MG) (Bankr. S.D.N.Y. Dec. 17, 2013); *In re RDA Holding Co.*, Case No. 13-22233 (RDD) (Bankr. S.D.N.Y. Feb. 21, 2013); *In re HMX Acquisition Corp.*, Case No. 12-14300 (MEW) (Bankr. S.D.N.Y. Oct. 23, 2012); *In re K-V Discovery Solutions, Inc.*, Case No. 12-13346 (ALG) (Bankr. S.D.N.Y. Aug. 7, 2012); *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (MG) (Bankr. S.D.N.Y. May 29, 2012); *In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 4, 2012); *In re Dynegy Holdings, LLC*, Case No. 11-38111 (CGM) (Bankr. S.D.N.Y. Nov. 15, 2011); *In re 4Kids Entm't, Inc.*, Case No. 11-11607 (SCC) (Bankr. S.D.N.Y. Apr. 8, 2011); *In re Sbarro, Inc.*, Case No. 11-11527 (SCC) (Bankr. S.D.N.Y. Apr. 5, 2011); *In re St. Vincent's Catholic Med. Ctrs. of N.Y.*, Case No. 10-11963 (CGM) (Bankr. S.D.N.Y. Apr. 16, 2010); *In re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (SMB) (Bankr. S.D.N.Y. May 4, 2009); *In re Mark IV Indus., Inc.*, Case No. 09-12795 (SMB) (Bankr. S.D.N.Y. May 5, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (CGM) (Bankr. S.D.N.Y. Jan. 8, 2009); *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 16, 2008); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 2, 2008).

## SERVICES TO BE PROVIDED

22.     This Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c).  Any work to be performed by Epiq outside of this scope is not covered by this Application or by any order granting approval hereof.[5]

---

[5]   As noted, at this time, the Movants have not yet determined whether to request such additional services from Epiq.

23.     Subject to the Court's approval, at the request of the Movants, and to the extent necessary, the Movants anticipate that Epiq will perform the following tasks in its role as Claims and Noticing Agent as well as all quality control relation thereto (collectively, the "Claims and Noticing Services"), all as further detailed in the Services Agreement:

a)  maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form);

b)  provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process;

c)  create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests);

d)  process all proof of claim/interest submitted;

e)  provide access to the public for examination of copies of the proofs of claim or interest (subject to any confidentiality restrictions approved by this Court) without charge during regular business hours;

f)  maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest (i) name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent; (ii) date received; (iii) claim number assigned; and (iv) asserted amount and classification of the claim;

g)  create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket;

h)  transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line;

i)  implement necessary security measures to ensure the completeness and integrity of the claims registers;

j)  record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e);

k)  maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office;

l)  prepare and serve notice of the claims bar date;

m)  update claim database to reflect undeliverable or changed addresses;

n)  provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Movants;

o)  promptly comply with such further conditions and requirements as the Court may at any time prescribe;

p)  comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements; and

q)  provide temporary employees to the Clerk's Office to process claims, as necessary.

## **EPIQ'S COMPENSATION**

24.    The Movants respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

25.    Importantly, Epiq has agreed to ***defer collection of accrued fees and expenses while the Trustee marshals assets for the estate***.[6]  Without this substantial concession, the Trustee would not be able to retain a claims and noticing agent at this time.

26.    Epiq also agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on Genever (BVI),

---

[6]  Epiq will receive payment of all accrued fees and costs at the time assets are converted to funds on a *pari passu* basis with other retained professionals in the chapter 11 cases.

10

Genever (US), the Trustee, the U.S. Trustee, counsel for Genever (US), counsel for Genever (BVI), counsel for the Trustee, counsel for the Committee, and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

27.    Additionally, under the terms of the Services Agreement, the Trustee, Genever (BVI), and Genever (US) have agreed to indemnify, defend and hold harmless Epiq and its members, officers, employees, representatives, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or Proposed Order.  The Movants believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.  Any request for indemnification will be brought before this Court and shall be subject to the approval of the Court.

## **DISINTERESTED**

28.    Although the Movants do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Movants.  To the best of Movants' knowledge, information, and belief, and except as disclosed in the Mailloux Declaration, Epiq has represented that it neither holds nor represents any interest materially

11

adverse to the Debtors, their creditors or other relevant parties, by reason of any direct or indirect

relationship to, connection with, or interest in, the Debtors, or for any other reason.

29.     Moreover, in connection with its retention as Claims and Noticing Agent, Epiq

represents in the Mailloux Declaration, among other things, that:

(a)     Epiq is not a creditor of the Debtors;

(b)     Epiq will not consider itself employed by the United States government
        and shall not seek any compensation from the United States government in
        its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)     by accepting employment in these chapter 11 cases, Epiq waives any
        rights to receive compensation from the United States government in
        connection with these chapter 11 cases;

(d)     in its capacity as the Claims and Noticing Agent in these chapter 11 cases,
        Epiq will not be an agent of the United States and will not act on behalf of
        the United States;

(e)     Epiq will not employ any past or present employees of the Debtors in
        connection with its work as the Claims and Noticing Agent in these
        chapter 11 cases;

(f)     in its capacity as Claims and Noticing Agent in these chapter 11 cases,
        Epiq will not intentionally misrepresent any fact to any person;

(g)     Epiq shall be under the supervision and control of the Clerk's office with
        respect to the receipt and recordation of claims and claim transfers; and

(h)     none of the services provided by Epiq as Claims and Noticing Agent in
        these chapter 11 cases shall be at the expense of the Clerk's office.

30.     Epiq will supplement its disclosure to the Court if any facts or circumstances are

discovered that would require such additional disclosure.

## **BASIS FOR THE RELIEF**

31.     This Application is made pursuant to Judicial Code section 156(c), section 105(a)

of the Bankruptcy Code, and Bankruptcy Rule 2002(f), for entry of an order appointing Epiq as

the Claims and Noticing Agent in order to assume full responsibility for the distribution of

notices and the maintenance, processing, and docketing of proofs of claim filed in these chapter

11 cases.

32.     Judicial Code section 156, in relevant part, provides:

> Any court may utilize facilities or services, either on or off the court's
> premises, which pertain to the provision of notices, dockets, calendars, and
> other administrative information to parties in cases filed under the
> provisions of title 11, United States Code, where the costs of such
> facilities or services are paid for out of the assets of the estate and are not
> charged to the United States. The utilization of such facilities or services
> shall be subject to such conditions and limitations as the pertinent circuit
> council may prescribe.

33.     Section 105 of the Bankruptcy Code, in relevant part, provides:

> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title. No provision of this
> title providing for the raising of an issue by a party in interest shall be
> construed to preclude the court from, sua sponte, taking any action or
> making any determination necessary or appropriate to enforce or
> implement court orders or rules, or to prevent an abuse of process.

34.     The Movants believe the Debtors have hundreds of creditors, many of which are

individuals who will seek to keep their name and contact information confidential in light of the

Individual Debtor's intimidation scheme.  If Epiq is not retained as claims and noticing agent,

the individual creditors seeking to file confidential proofs of claim would have to file a motion

requesting the Court approve redactions of certain personal information of the claimant.  Not

only would this impose an administrative burden on the individual creditors, the Debtors, the

Clerk, and the Court, but it would also be uneconomical.  The Movants believe that the

appointment of Epiq as claims and noticing agent will result in a more efficient and cost effective

claims process.  For this reason, the Movants submit that the retention of Epiq as the Claims and

Noticing Agent is both necessary and in the best interests of the Debtors' estates and creditors.

13

## RETENTION EFFECTIVE AS OF DECEMBER 1, 2022 IS APPROPRIATE

35.     Local Bankruptcy Rule 2014-1 provides that if "an application to employ a professional is filed within thirty (30) days after the commencement of services provided by that professional, the application shall be deemed contemporaneously filed unless the Court orders otherwise."  Accordingly, the Movants request authority to retain and employ Epiq effective December 1, 2022, which was the date that Epiq began providing services to the Movants.

## NOTICE

36.     Notice of this Motion has been given to the United States Trustee, the Debtor, the Committee, and, by electronic filing utilizing the Court's electronic filing ("CM/ECF") system, to all appearing parties who utilize the CM/ECF system.


*[Remainder of page intentionally left blank.]*

WHEREFORE, for the foregoing reasons, the Movants requests that the Court enter an Order, substantially in the form of the Proposed Order filed herewith, granting the Application, and authorizing the employment of Epiq as claims and noticing agent, and order such other and further relief as the Court deems just and proper.

Dated: December 5, 2022
      New Haven, Connecticut

GENEVER HOLDINGS LLC

By: /s/ Douglas S. Skalka
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    dskalka@npmlaw.com
    plinsey@npmlaw.com

     *and*

    Kevin J. Nash, Esq.
    GOLDBERG WEPRIN FINKEL
    GOLDSTEIN LLP
    1501 Broadway, 22nd Floor
    New York, New York 10036
    (212) 221-5700

*Counsel for Genever Holdings LLC*
*Debtor and Debtor-in-Possession*

GENEVER HOLDINGS CORPORATION

By: */s/ Douglas S. Skalka*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    dskalka@npmlaw.com

LUC A. DESPINS, CHAPTER 11 TRUSTEE

 By: */s/ Douglas S. Skalka*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    dskalka@npmlaw.com
    plinsey@npmlaw.com

     *and*

    Luc A. Despins, Esq.
    G. Alexander Bongartz, Esq.
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6472

*Counsel for the Chapter 11 Trustee*

15

plinsey@npmlaw.com

*Counsel for Genever Holdings Corporation*
*Debtor and Debtor-in-Possession*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                :

In re:                          :     Chapter 11
                                :

HO WAN KWOK, *et al*.,       :     Case No. 22-50073 (JAM)
                                :

        Debtors.[1]          :     Jointly Administered
                                :
-------------------------------------------------------x

## ORDER (I) APPROVING RETENTION AND APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT, EFFECTIVE AS OF DECEMBER 1, 2022, AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application") of Luc Despins, in his capacity as the chapter

11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Individual

Debtor"), Genever Holdings Corporation ("Genever (BVI)"), and Genever Holdings LLC

("Genever (US)" and, together with Genever (BVI) and the Trustee, the "Movants") for entry of

an order (this "Order") (a) approving the retention and appointment of Epiq Corporate

Restructuring, LLC ("Epiq") as the Claims and Noticing Agent in the Debtors' chapter 11 cases,

effective as of December 1, 2022, under 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy

Code, and (b) for Epiq to, among other things, (i) distribute required notices to parties in interest,

(ii) receive, maintain, docket and otherwise administer the proofs of claim filed in the Debtors'

cases, and (iii) provide such other administrative services—as required by the Debtors—that

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

would fall within the purview of services to be provided by the Clerk's Office; and upon the

Mailloux Declaration; and it appearing that the receiving, docketing and maintaining of proofs of

claim would be unduly time consuming and burdensome for the Clerk; and this Court being

authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and

facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy

and transmit proofs of claim; and this Court being satisfied that Epiq has the capability and

experience to provide such services and that Epiq does not hold an interest adverse to the

Debtors or the estates respecting the matters upon which it is to be engaged; and good and

sufficient notice of the Application having been given; and no other or further notice being

required; and it appearing that the employment of Epiq is in the best interests of the Debtors,

their estates, their equity security holders, and creditors; and sufficient cause appearing

therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is approved as set forth in this Order.

2.      The Movants are authorized, pursuant to 28 U.S.C. § 156(c) to retain Epiq, and

Epiq is appointed as the Claims and Noticing Agent, effective as of December 1, 2022, under the

terms and conditions of the Services Agreement.

3.      Epiq is authorized and directed to perform noticing services and to receive,

maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases,

and all related tasks, all as described in the Application (the "Claims and Noticing Services").

4.      Epiq shall serve as the custodian of court records and shall be designated as the

authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and

directed to maintain a Claims Register for each of the Debtors, to provide public access to every

proof of claim, and to provide the Clerk with a certified duplicate thereof upon the request of the

Clerk (all subject to and in accordance with any confidentiality restrictions approved by the

Court),

5.      Epiq is authorized and directed to provide an electronic interface for filing proofs

of claim and to obtain a post office box or address for the receipt of proofs of claim.

6.      Epiq is authorized to take such other actions as are needed to comply with all

duties set forth in the Application.

7.      The Trustee, Genever (BVI), and Genever (US) are authorized to compensate

Epiq for the Claims and Noticing Services in accordance with the terms of the Services

Agreement.

8.      Epiq shall maintain records of all services showing dates, categories of services,

fees charged, and expenses incurred, and shall serve monthly invoices on the Genever (BVI),

Genever (US), the Trustee, the Office of the United States Trustee, counsel for Genever (BVI),

counsel for Genever (US), counsel for the Trustee, counsel for an official committee, if any,

monitoring the expenses of the Debtors, and any party in interest who specifically requests

service of the monthly invoices.

9.      The parties shall meet and confer in an attempt to resolve any dispute which may

arise relating to the Services Agreement or monthly invoices; *provided* that the parties may seek

resolution of the matter from the Court if resolution is not achieved.

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses

of Epiq under this Order shall be an administrative expense of the Debtors' estates.

11.    The Trustee, Genever (BVI), and Genever (US) shall indemnify Epiq and other Indemnified Parties, as that term is defined in the Services Agreement, under the terms of the Services Agreement, as modified pursuant to this Order.

12.    The Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the Claims and Noticing Services as provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

13.    Notwithstanding anything to the contrary in the Services Agreement, the Trustee, Genever (BVI), and Genever (US) shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or fraud; or (ii) settled prior to a judicial determination but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution, or reimbursement under the terms of the Service Agreement as modified by this Order.

14.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these chapter 11 cases, Epiq believes that it is entitled to the payment of any amounts by the Trustee, Genever (BVI), and Genever (US) on account of the their indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the advancement of defense costs, Epiq must file an application therefor in the Court, and the Trustee, Genever (BVI), and Genever (US) may not pay any such amounts to Epiq before the entry of an order by this Court

4

approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Trustee's, Genever (BVI)'s, and Genever (US)'s obligation to indemnify Epiq.  All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

15.     In the event Epiq is unable to provide the Claims and Noticing Services approved by this Order, Epiq will immediately notify the Clerk and the Movants' counsel, and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Movants' counsel.

16.     The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Epiq but is not specifically authorized by this Order.

17.     The Movants and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.     Epiq shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court.

19.     In the event that any of these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to the case or cases shall be under no obligation to continue to retain Epiq for any purpose.

20.     In the event of any inconsistency between the Services Agreement, the Application, and this Order, the terms of this Order shall govern.

21.    The Movants and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application and Services Agreement.

22.    Notwithstanding any term in the Services Agreement to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>EXHIBIT B</u>

**Services Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client.

**3.  Charges.**

3.1   For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt however, Epiq has agreed to defer payment of  accrued fees and costs while the client marshals assets for the estate. Client agrees to make payments to Epiq on accrued fees and costs at the time assets are converted to funds on a pari pasu basis with all other retained professionals in this matter.

3.2   Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2024.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3   Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4   Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied, or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5   Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of, or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6   In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

**4.  Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

**5.  Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use



of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

**6.  Disposition of Data.**

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents, and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

**7.  Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain

3

in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

**8. <u>Limitation of Liability</u>**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.

**9.   <u>Representations / Warranties.</u>**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10. <u>Confidential On-Line Workspace</u>**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace

in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11. **General**

11.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportation disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced



to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

      If to Epiq:

                Epiq Corporate Restructuring, LLC
                777 Third Avenue, 12th Floor
                New York, New York 10017
                Attn:  Brad Tuttle

      If to Client:

                Luc Despins
                Paul Hastings LLP
                200 Park Avenue
                New York, NY 10166

      With a copy to:

                Douglass Barron
                Paul Hastings LLP
                200 Park Avenue
                New York, NY 10166

11.11 Invoices sent to Client should be delivered to the following address:

                Luc Despins
                Douglass Barron
                Paul Hastings LLP
                200 Park Avenue
                New York, NY 10166

      Email:          lucdespins@paulhastings.com
                    douglassbarron@paulhastings.com

11.12   The "Effective Date" of this Agreement is 1st day of December 2022.

6



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name: Brad Tuttle
Title:   General Manager


**CLIENT:**


**LUC A. DESPINS, AS CHAPTER 11 TRUSTEE FOR HO WAN KWOK**

By:_____
Name: Luc Despins
Title:   Chapter 11 Trustee for Ho Wan Kwok


**GENEVER HOLDINGS CORPORATION**

By: _____
Name: Luc A. Despins
Title:   Authorized Signatory

**GENEVER HOLDINGS LLC**

By: _____
Name: Luc A. Despins
Title:   Authorized Signatory



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:   General Manager

**CLIENT:**

**LUC A. DESPINS, AS CHAPTER 11 TRUSTEE FOR HO WAN KWOK**

By: _____
Name: Luc Despins
Title:   Chapter 11 Trustee for Ho Wan Kwok

**GENEVER HOLDINGS CORPORATION**

By: _____
Name: Luc A. Despins
Title:   Authorized Signatory

**GENEVER HOLDINGS LLC**

By: _____
Name: Luc A. Despins
Title:   Authorized Signatory



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.


**<u>NOTICING</u>**

➢ Prepare and serve required notices in these Chapter 11 cases, including:

• Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

• Notice of any auction sale hearing;

• Notice of the claims bar date;

• Notice of objection to claims;

• Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

• Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

10

**<u>MISCELLANEOUS</u>**

➤ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➤ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➤ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➤ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $35.00 – $75.00 |
| IT / Programming | $75.00 – $95.00 |
| Project Managers/Consultants/ Directors | $100.00 – $195.00 |
| Solicitation Consultant | $195.00 |
| Executive Vice President, Solicitation | $215.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.12 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1]   Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors



## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER SERVICES RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Strategic Communication Services | Quoted at time of request |
| Escrow Services | Quoted at time of request /competitive rates |
| Securities Exchange / ATOP Event | Quoted at time of request |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |

**<u>EXHIBIT C</u>**

**Mailloux Declaration**

8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

-------------------------------------------------------x
                                  :
In re:                      :     Chapter 11
                                  :
HO WAN KWOK, *et al.*,     :     Case No. 22-50073 (JAM)
                                  :
           Debtors.[1]     :     Jointly Administered
                                  :
-------------------------------------------------------x

**DECLARATION OF KATE MAILLOUX IN SUPPORT OF APPLICATION
OF DEBTOR FOR AUTHORIZATION TO RETAIN AND
EMPLOY EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS
AND NOTICING AGENT AS OF THE PETITION DATE**

I, Kate Mailloux, make this declaration under 28 U.S.C. § 1746:

1.      I am a Senior Director of Epiq Corporate Restructuring, LLC ("Epiq"). The

matters set forth herein are made of my own personal knowledge and, if called and sworn as a

witness, I could and would testify competently thereto.[2]

2.      This Declaration is made in support of the Movants' application (the "Application")[3]

for an order pursuant to section 156(c) of title 28 of the United States Code, sections 503(b)(1)(A)

and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the

employment and retention of Epiq as claims and noticing agent ("Claims and Noticing Agent") to

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at Epiq and are based on information provided by them.

[3]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Application.

the Debtors as of December 1, 2022 in accordance with the terms and conditions set forth in that

certain Standard Services Agreement dated as of December 1, 2022, by and between Epiq and the

Trustee, Genever (BVI), and Genever (US) (the "Services Agreement").  A proposed form of order

granting the relief requested in the Application (the "Proposed Order") is annexed thereto as

**Exhibit A**.  The Services Agreement is annexed to the Application as **Exhibit B**.

3.       As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Epiq

will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk" and

the "Clerk's Office"), the noticing- and claims-related services specified in the Application and

the Services Agreement. In addition, at the Debtor's request, Epiq will perform such other

noticing, claims, administrative, technical, and support services specified in the Application and

the Services Agreement.

4.       Epiq is one of the country's leading chapter 11 administrators, with experience in

noticing, claims administration, solicitation, balloting, and facilitating other administrative

aspects of chapter 11 cases.  Epiq has substantial experience in matters of this size and

complexity and has acted as the official notice and claims agent in many large bankruptcy cases

pending in this District and other districts nationwide.  *See, e.g.*, *In re The Norwich Roman*

*Catholic Diocesan Corporation*, Case No. 21-20687 (JJT) (Bankr. D. CT. Jul 15, 2021); *In re*

*The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (SCC) (Bankr.

S.D.N.Y. Oct. 1, 2020); *In re Roman Catholic Diocese of Harrisburg*, Case No. 20-00599 (HWV)

(Bankr. M.D.P.A. Feb. 19, 2020); *In re Tops Holding II Corporation, et al.,* Case No. 18-22279

(RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Roust Corporation*, Case No. 16-23786 (RDD)

(Bankr. S.D.N.Y. Jan. 10, 2017); *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (SHL)

(Bankr. S.D.N.Y. Aug. 2, 2016); *In re China Fishery Group Ltd.*, Case No. 16-11895 (JLG)

(Bankr. S.D.N.Y. May 24, 2017); *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD)

(Bankr. S.D.N.Y. June 25, 2014); *In re LHI Liquidation Co. (f/k/a Loehmann's Holdings Inc.)*,

Case No. 13-14050 (MG) (Bankr. S.D.N.Y. Dec. 17, 2013); *In re RDA Holding Co.*, Case No.

13-22233 (RDD) (Bankr. S.D.N.Y. Feb. 21, 2013); *In re HMX Acquisition Corp.*, Case No. 12-

14300 (MEW) (Bankr. S.D.N.Y. Oct. 23, 2012); *In re K-V Discovery Solutions, Inc.*, Case No.

12-13346 (ALG) (Bankr. S.D.N.Y. Aug. 7, 2012); *In re Dewey & LeBoeuf LLP*, Case No. 12-

12321 (MG) (Bankr. S.D.N.Y. May 29, 2012); *In re Hawker Beechcraft, Inc.*, Case No. 12-

11873 (SMB) (Bankr. S.D.N.Y. May 4, 2012); *In re Dynegy Holdings, LLC*, Case No. 11-38111

(CGM) (Bankr. S.D.N.Y. Nov. 15, 2011); *In re 4Kids Entm't, Inc.*, Case No. 11-11607 (SCC)

(Bankr. S.D.N.Y. Apr. 8, 2011); *In re Sbarro, Inc.*, Case No. 1111527 (SCC) (Bankr. S.D.N.Y.

Apr. 5, 2011); *In re St. Vincent's Catholic Med. Ctrs. of N.Y.*, Case No. 10-11963 (CGM) (Bankr.

S.D.N.Y. Apr. 16, 2010); *In re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (SMB)

(Bankr. S.D.N.Y. May 4, 2009); *In re Mark IV Indus., Inc.*, Case No. 09-12795 (SMB) (Bankr.

S.D.N.Y. May 5, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (CGM) (Bankr. S.D.N.Y.

Jan. 8, 2009); *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.

Sept. 16, 2008); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr.

S.D.N.Y. May 2, 2008).

5. Epiq represents, among other things, the following:

    a. Epiq is not a creditor of the Debtor;

    b. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent in this Chapter 11 case;

    c. By accepting employment in this Chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with the Debtor's Chapter 11 case;

d.      In its capacity as Claims and Noticing Agent in this Chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.      Epiq shall not employ any past or present employee of the Debtor in connection with its work as Claims and Noticing Agent in this Chapter 11 case;

f.      In its capacity as Claims and Noticing Agent, Epiq will not intentionally misrepresent any fact to any person;

g.      Epiq shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

h.      None of the services provided by Epiq as Claims and Noticing Agent in this Chapter 11 case shall be at the expense of the Clerk's Office.

6.      To the best of my knowledge, and based solely upon information provided to me by the Movants, and except as provided herein, neither Epiq, nor any employee thereof, has any materially adverse connection to the Debtors, its creditors, or other relevant parties. Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as noticing, claims, and balloting agent for another chapter 11 debtor. Given Epiq's neutral position as the claims and noticing agent in the Debtors' case, or any other cases, Epiq does not view such relationships as real or potential conflicts.

7.      Epiq conducted a review, completed under my supervision, of the identified potential parties in interest (the "Potential Parties in Interest") in these chapter 11 cases based on a query of an internal client database containing names of individuals and entities that are present or recent clients of Epiq. The list of Potential Parties in Interest was provided by the Movants and is annexed hereto as Schedule 1. To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were connected to Epiq, these parties have been identified on a list annexed hereto as Schedule 2 (the "Client Match List"). To the best of my knowledge, any such

4

connections between Epiq and any parties on the Client Match List is completely unrelated to the Debtors.

8.    In addition, Epiq personnel may have relationships with some of the Debtors' creditors or other parties in interest.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these chapter 11 cases.  Epiq has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, Epiq has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases.  Epiq may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases of the Debtors.  To the best of my knowledge, neither Epiq, nor any employees thereof, represent any interest materially adverse to the Debtors' estate with respect to any matter upon which Epiq is to be engaged.  Based on the foregoing, I believe that Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

9.    Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

10.     Should Epiq discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to promptly file a supplemental affidavit.

11.     In performing the services of Claims and Noticing Agent, Epiq will charge the Debtor the rates set forth in the Services Agreement.

12.     Epiq will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

13.     Epiq was party to an agreement with Xclaim Inc. ("Xclaim").  As of September 9, 2022, Epiq has terminated its agreement with Xclaim.  Neither Epiq nor its affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under 28 U.S.C. § 156(c) to non-client third parties beyond the disclosed prior agreement with Xclaim.

14.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: December 5, 2022

*/s/ Kate Mailloux*
Kate Mailloux
Senior Director
Epiq Corporate Restructuring, LLC

## **SCHEDULE 1**

### **Potential Parties in Interest**

## <u>SCHEDULE OF PARTIES IN INTEREST</u>

### <u>20 LARGEST UNSECURED CREDITORS</u>

PACIFIC ALLIANCE ASIA OPPORTUNITY
GOLDEN SPRING NEW YORK
RUI MA
CHENG JIAN WU JIAN SHE
NING YE
GUO BAOSHENG
YAN LAN & WU ZHENG
HONG QI QU
NAN TONG SI JIAN
JIAN GONG
YAN ZHAO
YUA HUA ZHUANG SHI
LIEHONG ZHUANG/XIAO YAN ZHU
WEICAN MENG/BOXUN INC.
SAMUEL NUNBERG
LAMP CAPITAL LLC
JUN CHEN AKA JONATHAN HO
YUE HUA ZHU SHI
XIONG XIAN WEI YE
HUIZEN WANG

### <u>DEBTOR, FAMILY MEMBERS, AND CERTAIN RELATED ENTITIES</u>

HO WAN KWOK (A.K.A MILES GWOK, MILES GUO AND WENGUI GUO)
HING CH NGOK/YUE QINGZHI
QIANG GUO
MEI GUO/MEI GUI
HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC
BRAVO LUCK LIMITED
GENEVER HOLDINGS CORPORATION
GENEVER HOLDINGS LLC

### <u>BANKRUPTCY JUDGE AND U.S. TRUSTEE PERSONNEL</u>

HONORABLE JULIE A. MANNING
WILLIAM HARRINGTON
KIM L. MCCABE
HOLLEY CLAIBORN
JOSEPH H. FLAMINI
ERIN HOGAN
STEVEN MACKEY
FRANK MARINO
JENNIFER J. MOREY
NICOLE NEELY
SHARON WARNER
JOHN GERVAIS

**OTHER INTERESTED PARTIES**

7 NOD HILL LLC,
7 STAR EAST NY LLC
AAGV LIMITED
ABRAMS FENSTERMAN, LLP
ACA CAPITAL GROUP LIMITED
ACA INVESTMENT FUND
ACA INVESTMENT MANAGEMENT LTD.
ACASS CANADA LTD.
ACE DECADE HOLDINGS LIMITED
AI GROUP HOLDINGS INC.,
ALFA GLOBAL VENTURES LIMITED
ALFONSO GLOBAL LIMITED
ALLIED CAPITAL GLOBAL LIMITED
ALPINE FIDUCIARIES SA
AN HONG
ANDREW SULNER/FORENSIC DOCUMENT EXAMINATIONS, LLC
ANTON DEVELOPMENT LIMITED
APSLEY YACHTS LIMITED
ARETHUSA FORSYTH
ARI CASPER
ASSETS SINO LIMITED
AUSPICIOUS COAST LIMITED
BAIQIAO TANG A/K/A TANG BAIQIAO
BAKER HOSTETLER LLP
BARCLAYS BANK PLC
BEIJING BI HAI GE LIN YUAN LIN LU HUA, LTD.
BEIJING CHENG JIAN WU JIAN SHE GROUP, LTD.
BEIJING FU LE HONG MA JIAN ZHU ZHUANG SHI GONG CHENG, LTD.
BEIJING PANGU INVESTMENT CO.
BEIJING ZENITH HOLDINGS CO.
BEIJING ZHONG XIAN WEI YE STAINLESS DECORATION CENTER
BERKELEY ROWE
BERNARDO ENRIQUEZ
BNY MELLON, N.A.
BOIES SCHILLER
BOXUN INC.
BRANCH
BROWN HARRIS STEVENS
BROWN RUDNICK, LLP
BSA STRATEGIC FUND I
BURNETTE SHUTT AND MCDANIEL PA
CAHILL GORDON & REINDEL LLP
CAPITAL ONE BANK
CHAO-CHIH CHIU
CHASE BANK
CHENGLONG WANG
CHIESA SHAHINIAN & GIANTOMASI PC
CHINA GOLDEN SPRING GROUP (HONG KONG) LIMITED
CHONG SHEN RAPHANELLA
CHUANG XIN LTD.
CITIBANK
CLARK HILL PLC
CLAYMAN & ROSENBERG LLP
CLAYMAN ROSENBERG KIRSHNER & LINDER LLP

COHN BIRNBAUM & SHEA P.C.
COUNSEL PRESS INC.
CRANE ADVISORY GROUP LLC
CREATIVE APEX INVESTMENTS LIMITED
CRYSTAL BREEZE INVESTMENTS LIMITED
DANIEL PODHASKIE
DANIEL S. ALTER
DANYU LIN
DAWN STATE LIMITED
DONGNA FANG
DWF LLP
EASTERN PROFIT CORPORATION LIMITED
EDUARDO EURNEKIAN
ELITE WELL GLOBAL LIMITED
ELLIOTT KWOK LEVINE & JAROSLAW LLP
EMPIRE GROWTH HOLDINGS
ERIC GOLDSMITH MD, LLC
FAN BINGBING
FIONA YU
FIRST ABU DHABI BANK
FORBES HARE
FREEDOM MEDIA VENTURE LTD
G CLUB OPERATIONS LLC
G CLUB US OPERATIONS INC.
G CLUB US OPERATIONS LLC
G FASHION LLC
G FASHION US OPERATIONS INC.
G LIVE, LLC
G NEWS LLC,
GANFER SHORE LEEDS & ZAUDERER
GAO BINGCHEN
GBROADCAST, LLC
G-CLUB
G-CLUB INVESTMENTS LIMITED
GETTR USA
GFASHION MEDIA GROUP INC.,
GFNY, INC
GLENN MELLOR
GLOBALIST INTERNATIONAL LIMITED
GMUSIC,
GNEWS LLC,
GNEWS MEDIA GROUP INC.,
GOLDFARB & HUCK ROTH RIOJAS, PLLC
GPOSTS LLC
GREENWICH LAND LLC
G-TRANSLATORS PTY LTD
GTV MEDIA GROUP, INC.,
GUO LIJIE
GUO MEDIA
GUO WENOUN
GUO WENPING
GUY PETRILLO

HAIHONG WANG
HAMILTON CAPITAL HOLDINGS INC
HAN CHUNGUANG
HAO HAIDONG
HARCUS PARKER LTD.
HCHK PROPERTY MANAGEMENT, INC.
HCHK TECHNOLOGIES, INC.
HCHK TECHNOLOGIES, LLC
HE BEI YUE HUA ZHUANG SHI GONG CHENG LTD.
HEAD WIN GROUP LIMITED
HELEN MANIS
HENAN YUDA
HERO GRAND LIMITED
HIMALAYA EMBASSY
HIMALAYA EXCHANGE
HIMALAYA FEDERAL RESERVE
HIMALAYA INTERNATIONAL CLEARING LTD.
HIMALAYA INTERNATIONAL FINANCIAL GROUP LTD
HIMALAYA INTERNATIONAL PAYMENTS LTD.
HIMALAYA INTERNATIONAL RESERVES LTD.
HIMALAYA NEW WORLD INC.
HIMALAYA SUPERVISORY ORGANIZATION
HING CH NGOK
HONG KONG INTERNATIONAL FUNDS INVESTMENTS LIMITED
HONG QI QU JIAN SHE GROUP, LTD.
HONG ZENG
HSBC
HUDSON DIAMOND HOLDING INC.
HUDSON DIAMOND HOLDING LLC
HUDSON DIAMOND LLC
HUDSON DIAMOND NY LLC
INFINITE INCREASE LIMITED
INFINITUM DEVELOPMENTS LIMITED
INSIGHT CAPITAL
INSIGHT PHOENIX FUND
JACK S. LIPSON
JANOVER LLC
JASON MILLER
JENNIFER MERCURIO
JESSE BROWN
JIA LI WANG
JIA YANG LI
JIAMEI LU
JIAN FAN
JIANG SU PROVINCE JIAN GONG GROUP LTD BEIJING BRANCH
JIANG YUNFU BE
JIANHU YI
JIANSHENGXIE AND JIEFU ZHENG
JING GENG
JOHN S LAU
JONATHAN YOUNG
JUMBO CENTURY LIMITED
JUN LIU
JUNE SHI

KAIXIN HONG
KARIN MAISTRELLO,
KATHLEEN SLOANE
KERCSMAR FELTUS & COLLINS PLLC
KEYI ZIKLIE
KUI CHENG
LALIVE SA
LAO JIANG
LAW FIRM OF CALLARI PARTNERS, LLC
LAWALL & MITCHELL, LLC
LEADING SHINE LIMITED
LEADING SHINE NY LTD
LEE VARTAN
LIEHONG ZHUANG
LIHONG WEI LAFRENZ (AKA SARA WEI)
LINDA HE CHEUNG
LOGAN CHENG (F/K/A SHUIYAN CHENG)
LONG GATE LIMITED
MACDONALD
MAR-A-LAGO
MAUNAKAI CAPITAL
MAX KRASNER
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
MELISSA MENDEZ
MILES GUO
MILES GWOK
MOA-FU
NEW DYNAMIC DEVELOPMENT LIMITED
NEW FEDERAL STATE OF CHINA
NEW TREASURE LLC
NEXT TYCOON INVESTMENTS LIMITED
NOBLE FAME GLOBAL LIMITED
NOVELTY HILL LTD.
O'MELVENY & MYERS LLP
O'NEAL WEBSTER
OGIER
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.
PAUL WEISS
PETRILLO KLEIN & BOXER LLP
PHILLIPS NIZER LLP
PHOENIX CREW IC LIMITED
PULLMAN & COMLEY, LLC
QIQHUA FAN
QU GUOJIAO
QUIJU JIA
RANDAZZA LEGAL GROUP, PLLC
ROBINSON & COLE LLP
RONG ZHANG
ROSS HEINEMEYER
ROY D. SIMON
RUIZHENG AN
RULE OF LAW FOUNDATION III
RULE OF LAW SOCIETY IV INC
RUQUIN WANG

SAIL VICTORY LIMITED
SAMUEL DAN NUNBERG
SARA WEI (A/K/A LIHONG WEI LAFRENZ)
SARACA MEDIA GROUP, INC.,
SCHULMAN BHATTACHARYA, LLC
SELAS MONTBRIAL AVOCATS
SEVEN MISSION GROUP LLC
SHANE D SHOOK
SHERRY-NETHERLAND, INC.
SHI JIA ZHUANG ZHEN YUAN JIAN ZHU AN ZHUANG GONG CHENG LTD BEJING FIRST
SHINY ACE INNOVATION CO LTD
SHINY ACE LIMITED
SHINY TIMES LTD.
SHUANG WANG
SPIRIT CHARTER INVESTMENT LIMITED
STANDARD CHARTERED BANK
STEPHEN WONG
STEVE BANNON,
STEVENSON WONG
STOKES LAWRENCE, PS
STRATEGIC VISION LLC
TELI CHEN
THE CASPER FIRM
THE FRANCIS FIRM PLLC
THE LAW OFFICES OF RAFAEL A. VARGAS
THE SHERRY-NETHERLAND HOTEL
THOMAS RAGLAND
THREE TREASURE LLC
TM PRIMROSE LIMITED
TROUTMAN PEPPER HAMILTON SANDERS LLP
TROY LAW PLLC
U.S. LEGAL SUPPORT, INC.
UBS AG (LONDON BRANCH)
UBS AG (LONDON)
UK HIMALAYA LTD.
UNA MANYEE WILKINSON
US HIMALAYA LTD.
VERDOLINO & LOWEY
VERITEXT
VOICE OF GUO MEDIA, INC.
VX CERDA & ASSOCIATES
WA&HF LLC
WARD & BERRY, PLLC
WEICAN ("WATSON") MENG
WEIGUO SUN
WEIXIANG GE
WELL ORIGIN LTD.
WEN LIN
WENG
WHITECROFT SHORE LIMITED
WHITMAN BREED ABBOTT & MORGAN LLC
WILLIAM BRADLEY WENDEL
WILLIAM GERTZ
WILLIAM JE (JE KIN MING)

WILLIAMS & CONNOLLY
WORLD CENTURY LIMITED,
WORLDWIDE OPPORTUNITY HOLDINGS LIMITED
WU ZHENG
XIAO YAN ZHU
XIAODAN WANG
XINGYU YAN
XIQUI ("BOB") FU
YA LI
YACHTZOO SARL
YAN GAO
YAN HUANG
YANG LAN
YANKWITT LLP
YANPING WANG
YAZ QINGUA
YELIANG XIA
YI LI
YING LIU
YUE HUA ZHU SHI
YUNXIA WU
YVETTE WANG
ZEICHNER ELLMAN & KRAUSE LLP
ZEISLER & ZEISLER, P.C.
ZHANG WEI
ZHENG WU (A/K/A BRUNO WA)
ZHENGJUN DONG
ZIBA LIMITED

# SCHEDULE 2

## Client Match List

BNY MELLON, N.A.
CAPITAL ONE BANK
CITIBANK
HSBC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------x
                                                         :
In re:                                                   :        CHAPTER 11
                                                         :
HO WAN KWOK, *et al.*,[1]                                :        CASE NO. 22-50073 (JAM)
                                                         :
                        Debtors.                         :        Jointly Administered
---------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 5, 2022 the foregoing Application was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing pursuant to the Notice of Electronic Filing.  Parties may access this filing through the Court's system.

Dated: December 5, 2022            LUC A. DESPINS,
       New Haven, Connecticut      CHAPTER 11 TRUSTEE


                         By:    /s/Douglas S. Skalka
                                Douglas S. Skalka (ct00616)
                                NEUBERT, PEPE & MONTEITH, P.C.
                                195 Church Street, 13th Floor
                                New Haven, Connecticut 06510
                                (203) 821-2000
                                dskalka@npmlaw.com

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).