UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                          *   Case No. 22-50073 (JAM)
                               *
HO WAN KWOK and GENEVER        *
 HOLDINGS CORPORATION,         *   Bridgeport, Connecticut
                               *   November 21, 2022
              Debtor.          *
                               *
* * * * * * * * * * * * * * *

TRANSCRIPT OF MOTION FOR ORDER and
MOTION SETTING STATUS CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor, Mei Guo and     ERIC A. HENZY, ESQ.
 HK International:               Zeisler & Zeisler, P.C.
                                10 Middle Street, 15th Floor
                                Bridgeport, CT  06604


For the Creditor, Pacific       ANNECCA SMITH, ESQ.
 Alliance Asia Opportunity      Robinson & Cole
 Fund L.P.:                     28 Trumbull Street
                                Hartford, CT  06103

                                STUART SARNOFF, ESQ.
                                PETER FRIEDMAN, ESQ.
                                O'Melveny & Myers LLP
                                Times Square Tower
                                7 Times Square
                                New York, NY  10036


Chapter 11 Trustee:             LUC A. DESPINS, ESQ.
                                Paul Hastings LLP
                                200 Park Avenue
                                New York, NY  10166



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES: (Cont'd.)

For the Chapter 11                PATRICK R. LINSEY, ESQ.
 Trustee and Genever,             Neubert Pepe & Monteith, PC
 BVI and Genever U.S.:            195 Church Street
                                  New Haven, CT  06510


For the U.S. Trustee:             HOLLEY L. CLAIBORN, ESQ.
                                  Office of the United States
                                     Trustee
                                  The Giaimo Federal Building
                                  150 Court Street, Room 302
                                  New Haven, CT  06510


For the Creditors Committee:      IRVE GOLDMAN, ESQ.
                                  Pullman & Comley
                                  850 Main Street
                                  Bridgeport, CT  06601


For Logan Cheng, Creditor:        JAY MARSHALL WOLMAN, ESQ.
                                  Randazza Legal Group, PLLC
                                  100 Pearl Street
                                  Hartford, CT  06103

1          (Proceedings commenced at 2:15 p.m.)

2                    THE COURTROOM DEPUTY:  Case no. 22-50073, Ho Wan

3     Kwok.

4                    THE COURT:  Good morning.  If we could have

5     appearances for the record, starting with the Chapter 11

6     Trustee, please.

7                    MR. DESPINS:  Good morning, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9                    THE COURT:  Good morning.

10                   MR. BASSETT:  Good afternoon, Your Honor.  Nick

11    Bassett, from Paul Hastings, on behalf of the Chapter 11

12    Trustee.

13                   MR. LINSEY:  Good afternoon, Your Honor. Patrick

14    Linsey, Connecticut counsel for the trustee.

15                   THE COURT:  Good afternoon.

16                   And counsel for the debtor?

17                   MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

18    -- oh, sorry.

19                   THE COURT:  Go ahead, Attorney Claiborn.

20                   MS. CLAIBORN:  Good afternoon, Your Honor. Holley

21    Claiborn for the U.S. Trustee.

22                   THE COURT:  Good afternoon.

23                   MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

24    Goldman, Pullman and Comley, representing the creditors

25    committee.

1          THE COURT:  Counsel for the debtor, please.

2          MR. HENZY:  Eric Henzy, of Zeisler and Zeisler,

3   for the debtor.

4          MR. KINDSETH:  Stephen Kindseth, also of Zeisler

5   and Zeisler, for the debtor.

6          MR. MORIARTY:  James Moriarty, Zeisler and

7   Zeisler, for the debtor as well as -- since we're going to

8   be discussing the PJR, Ms. Guo and HK USA.

9          THE COURT:  Okay.  Good afternoon.  Counsel for

10   PAX.

11          MR. FRIEDMAN:  Peter Friedman, Your Honor, from

12   O'Melveny and Myers, on behalf of PAX.

13          MR. SARNOFF:  Stuart Sarnoff, from O'Melveny and

14   Myers, on behalf of PAX.

15          MS. SMITH:  Annecca Robinson and Cole, also on

16   behalf of PAX as Connecticut counsel.

17          THE COURT:  Good afternoon.  And then counsel for

18   the creditor, Mr. Cheng.

19          MR. WOLMAN:  Good afternoon, Your Honor.  Jay

20   Wolman, of Randazza Legal Group, for creditor, Logan Cheng.

21          THE COURT:  Okay.  Good afternoon.

22          So on the calendar today is a status conference

23   and I see, Trustee Despins, that you filed an agenda for the

24   status conference.  So you go right ahead and proceed with

25   your agenda, please.

1          MR. DESPINS:  Thank you, Your Honor.

2          The first item on the agenda is a modification --

3     a propose modification, because that's subject to Your

4     Honor's availability, but the proposed modification for the

5     schedule regarding the trustee's application seeking pre-

6     preliminary judgment remedy and also a preliminary

7     injunction.

8          The parties -- meaning the parties, the trustee

9     and the debtors and Hong Kong -- a company called Hong Kong,

10    Inc., the debtor's daughter, all counsel have conferred

11    regarding a proposed modified schedule, which would be --

12    and we were told there is an agreement on this as follows.

13         Mr. Moriarty can correct me if I got this wrong,

14    but the objection memorandum of law to be filed by the other

15    side of the trustee -- so there's a number of parties there,

16    but, you know, Hong Kong, Ms. Guo, would be filed on the

17    22nd of November, tomorrow, by 5:00 p.m.

18         They could file one consolidated memorandum that

19    would exceed the page limit.  That would be 35 pages total.

20    The witness and exhibit list would be exchanged by the

21    parties by tomorrow at 5:00 p.m. as well.

22         Depositions would take place between December 1st

23    and December 7th.  Supplemental exhibit list and rebuttal

24    experts would be filed by December 8th.  And the hearing, of

25    course, subject to Your Honor's availability, would commence

1    on December 12th, with the same time lag with respect to the

2    accounts that's frozen that applied now.

3          So I forget exactly the number of days, but it

4    would be -- we would mirror that time lag in the new

5    situation regarding the timing of the litigation of this

6    matter.

7          I believe that's the agreement but Mr. Moriarty

8    can correct me if I got this wrong.

9          MR. MORIARTY:  That's correct, Your Honor.

10       Counsel discussed this on Friday and over the weekend.

11   We recognize the court's frustration with how the contempt

12   hearing went, and based on the length of that hearing we

13   thought it would be in everybody's interest if we did not

14   try to jam this PJR and injunction hearing, which is

15   scheduled for three days, and we still have some discovery

16   to do, into what is now a less than ten-day period.

17         So we agreed, obviously, with the court being

18   available and the court approving it, that we would move out

19   the hearings to give ourselves just a little bit more time

20   so that we can actually make  presentation to the court that

21   doesn't result in what happened last week.

22         THE COURT:  Okay.  Well, those dates are fine

23   except for the hearing. I have something already scheduled

24   on the 12th.  We have things scheduled on the 13th and the

25   14th and we're not going to be able -- if we want three

1    consecutive hearing dates, it's going to have to be in

2    January.

3              MR. MORIARTY:  That is not something that we had

4    discussed with the trustee, Your Honor, but we are certainly

5    willing to have that discussion and see if we could continue

6    the orders that are in place, if that is something that the

7    trustee would like to have a discussion about.

8              MR. DESPINS:  We're okay with that, Your Honor.  I

9    mean, I assume you would be.

10             THE COURT:  Well, the first three consecutive days

11   would be January 9, 10 and 11 and the 10th would actually be

12   only part of that day because we have things scheduled on

13   the 10th as well, or you have to go to the next week.  The

14   16th, 17th and 18th of January.

15             MR. DESPINS:  I think, Your Honor, we should start

16   on the 9th.

17             MR. MORIARTY:  And that would be fine from the

18   standpoint of the respondents, provided that we have to have

19   a discussion with our client and confirm that the existing

20   orders regarding the funds that are at issue that are

21   effectively frozen can continue to be frozen.  And we can

22   have that discussion today.

23             THE COURT:  Okay.  January 9th, the schedule is

24   open.  January 10th would only be part day, part in the

25   morning until noon, I think.  And then January 11th looks

1   like it's a part day as well. I may you may get till 2:00

2   p.m. or something.

3          Otherwise, the next week, it doesn't have the same

4   scheduling issues as much.  So the 16th, 17th and 18th are

5   more open than the 10th and 11th.  The 9th is open, but the

6   10th and -- well, actually, is January 16 a holiday?

7          THE COURTROOM DEPUTY:  It is.

8          THE COURT:  So it's not the 16th.

9          MR. DESPINS:  MLK.

10          THE COURT:  So it would have to be the 17th, 18th

11   and 19th of January, Tuesday, Wednesday, Thursday.

12          So you all have to figure that out and let me know

13   what works for you.

14          But three consecutive days, it's not going to

15   start until the 9th of January at the earliest and then

16   there'll be somewhat chopped up.  At least the 10th will

17   definitely be chopped up.  And then the 11th you might only

18   have until the middle of the afternoon, or you go the next

19   week, the 17th, 18th and the 19th.  Or you go the following

20   week, the 23rd, the 24th and 25th.  But that's up to you.

21   You all will have to discuss it and we'll go from there.

22   Okay?

23          MR. DESPINS:  Thank you, Your Honor.

24          So the next matter on the agenda is just an update

25   on the transfer of venue of Genever Holdings LLC.  You know

1    that's a New York case.

2              So there's an action pending that we had to file

3    in that case because the two-year statute of limitation of

4    5.6 was about to expire and we had to file that before the

5    transfer of venue.

6              That action was transferred here.  We already had

7    filed an action against -- in the individual case of Mr.

8    Kwok that was basically a mirror of that action against

9    Bravo Luck.

10             The only one that doesn't have that

11   (indiscernible)  pending at this point is the BVI entity.

12             So what we're proposing to do is to amend and

13   restate all of this into one action against -- that would

14   involve these three parties. So, of course, we need to do

15   that, meaning to include BVI, Genever BVI and so that would

16   be the (indiscernible),  Your Honor.  So obviously dates

17   would have to be reset based on that.

18             But we wanted you to know that -- and by the way,

19   that action is with respect to owns the Sherry Netherland

20   apartments.

21             And so that's the game plan.  I want to make sure

22   Your Honor was aware of that.

23             THE COURT:  So are you going to be moving to

24   consolidate the adversary proceedings?  Is that what you're

25   saying?

1          MR. DESPINS:  Yes.  Yes, Your Honor.

2          THE COURT:  Okay.

3          MR. DESPINS:  Once we have amended to include

4     Genever BVI in it we would do that, yes.

5          THE COURT:  Okay.

6          MR. DESPINS:  The next matter is the trustee's

7     application in the U.K.  I wanted to make sure Your Honor

8     was aware of this.

9          On October 21st we filed the (indiscernible)

10    application to have these cases recognized in the UK as

11    foreign proceedings to allow us to take discovery, but also

12    to allow us to get information regarding the UBS litigation.

13         And the only party that objected to this was Ace

14    Decade and its subsidiary, Dawn State.

15         And I'm not making this up.  They objected saying

16    that we were moving too fast and as to -- contribute to

17    these UK lawyers, they were able to find the sentence in the

18    stipulated order that said that we were adjourning the PJR

19    because at the time there were negotiations ongoing with the

20    debtor and they made that point to the UK court that there's

21    no need to rush this because there were settlement

22    discussions going on in the U.S.

23         Of course, I'm being facetious and it's clear that

24    we were (indiscernible)  that information from the Kwok

25    team, whoever that is. I hope it doesn't include Zeisler.

1      So they're the ones who objected and have been

2   asked to have a trial in the UK because they're arguing that

3   (indiscernible)  based on the appeal that was filed

4   regarding my appointment, et cetera, et cetera.

5      So that is ongoing but I thought it was important

6   for Your Honor to understand that Ace Decade was mounting

7   this battle against (indiscernible)  in the UK.  So that

8   will be heard in December, Your Honor, but not

9   (indiscernible)  but in -- before the UK courts.

10      The next item on the agenda, Your Honor, is the

11   update regarding the (indiscernible)  debtor's continued

12   cyberbullying.  And we filed a statement, Your Honor, and I

13   don't think it needs to be very complicated.

14      There's a redacted version, and I'm saying this,

15   to Mr. Wolman. It's redacted and filed under seal only to

16   tide things like how many daughters do I have, where my

17   daughters live and all the cites to the actual videos,

18   because we don't want to be fueling the fire that has been

19   commenced by the debtor and his team on this.  That's why

20   this was filed under seal. I hope Mr. Wolman will see it and

21   not object to that filing under seal.

22      PAX got the full document.  The reason he gave me

23   it is that their subject -- and their executives and the

24   kids of these executives are subject to the same

25   cyberbulling attacking and picketing of their houses.

1    That's (indiscernible  to me and my daughter and my ex-wife

2    and that's why they got the full document and so did the

3    U.S. Trustee, because we're not concerned that the U.S.

4    Trustee would somehow repeat or divulge these various

5    sources of information.

6          But we're asking that the rest of the statements -

7    - by the way, we redacted the minimum, meaning anybody

8    reading the statement would see exactly what's going on

9    except they wouldn't know the daughters I have and where

10   they're working and where they're living, et cetera, et

11   cetera.

12         So I know this is a lot at the same time meaning -

13   - but it's asking in real time, Your Honor, meaning this was

14   happening over the weekend, it's happening today and we

15   filed the statement so that Your Honor has the full picture.

16   And we say in the statement, and I don't say this lightly,

17   this is all about the Chapter 11 case.

18         The fact that this is happening now when there's a

19   motion to hold the debtor in contempt is no accident.  This

20   is part of an orchestrated campaign to intimate and threaten

21   the trustee, the court appointed -- a court appointed

22   officer and large creditors in the case.

23         And, Your Honor, this cannot occur.  This cannot

24   happen.  Why?  Forget about me. I can handle this and I'm

25   going to handle it. It's not an issue.

1    But the creditors in the case and potential

2    witnesses that I'm talking to right now who have a lot of

3    information to provide are watching this and thinking wait a

4    minute.  If the court or somebody else is not going to

5    protect the trustee, who's court appointed, I'm going to be

6    -- this is a witness now, I'm going to be subject to the

7    same thing and worse.

8    And the same thing for claimants.  There are

9    people who are giving us detailed claims but they're saying

10   how can I hide my identity.  And I'll get to that in a

11   second.  At a minimum we need to do that.

12   And we need to allow individual claimants to file

13   using code names or some other structure, that Your Honor

14   would approve, with the U.S. Trustee's input to allow people

15   to be able to  (indiscernible) claim.

16   And, of course, Zeisler should seek everything,

17   because this is not a Zeisler issue.  Let me be very clear.

18   I made that clear to Mr. Henzy before.  We are a hundred

19   percent confident that they would never be involved in

20   something like that.  So they should see everything.

21   But we cannot have the debtor using the same

22   tactics to intimidate witnesses or people that are filing

23   claims.

24   So I know you always -- usually the next sentence

25   is so, do you have a motion or anything like that? I don't

1    have a motion, Your Honor, other than the following things.

2           One, this should be a referral to the U.S.

3    Attorney by this court.  In order to do that, the court does

4    not have to make any findings of guilt or anything like

5    that, but there's plenty of running smoke in order for Your

6    Honor to do that.

7           Yes, the U.S. Trustee can do the same thing, but

8    it doesn't have the same weight as a federal court does

9    (indiscernible)  U.S. Attorney.  That's number one.

10          Number two, Mr. Kwok should be called in to

11   explain this to the court and subject to cross examination.

12          This is -- you now, we're looking for case law on

13   this and I couldn't believe it but we found a case where a

14   creditor -- no, actually, the debtor kidnaped the daughter

15   of the Chapter 11 trustee.  And we cite that case in our

16   statement.

17          So this is not the same thing but it's really

18   close.  When they go to my daughter's house to picket with

19   signs that say your father is a scum bag, he's a communist,

20   all these things.  They're all there, Your Honor. That is

21   intimidation and it cannot be tolerate.

22          I know either Mr. Friedman or Mr. Sarnoff are

23   living the same thing, not only because of their law firm,

24   but because their client's daughters and sons are also being

25   bullied in the same fashion, that they will want to be heard

1    on this.  But this has to stop.  There's just no other way

2    around this.

3              And so that's -- you know, that's where we are. I

4    think maybe Mr. Friedman wants to be heard on this issue.

5              MR. FRIEDMAN:  May I, Your Honor?

6              THE COURT:  Yes.  Thank you. It's Peter Friedman.

7              Your Honor, this is -- could not be more

8    straightforward.  It's so simple.  This case is going very

9    badly for Mr. Kwok inside the courtroom, as every single

10   case he gets involved in does.

11             So he wants to disrupt it through actions outside

12   the courtroom.  Intimidation, harassment, doxing behind a

13   paper thin shield of it's not me.  But it's got to stop.

14             These are the quotes from Justice Ostrager that

15   probably started this case.  If there's one set of rules for

16   billionaire litigants to avoid justice, to gain the system

17   inside the courtroom, then we have no legal system rule of

18   law at all.  But it applies just as equally in the

19   proceedings -- to a litigant in proceedings before you.

20             If a debtor can use social media to try to harass,

21   and dox and intimidate a court appointed fiduciary and the

22   largest creditor, our system doesn't work.

23             Your Honor, I actually believe you have the

24   inherent authority, without any relief being sought, to

25   issue a gag order on Mr. Kwok.  Your Honor can determine

1    that his behavior is disruptive of court proceedings and

2    makes a mockery of what Mr. Despins was appointed to do and

3    what our client is lawfully entitled to do, which is pursue

4    claims free from harassment of its chairman and his

5    chairman's family.  The system simply doesn't work

6    otherwise.

7          Your Honor, we also, however -- if the court

8    doesn't feel like -- that it has the ability to issue an

9    order on its own, I'm prepared to file a preliminary

10   injunction -- to file a complaint and seek a temporary

11   restraining order, which we would ask to be heard as quickly

12   as tomorrow so that the court can exercise its power under

13   Section 105 of the bankruptcy code and (indiscernible)  to

14   stop Mr. Kwok from acting.  Frankly, we could this ex parte,

15   given how dangerous Mr. Kwok is, because the rules allow for

16   a temporary restraining order on that basis.

17          However, we do believe in a transparent system,

18   but we will be prepared to file pleadings tonight and would

19   ask to be heard tomorrow unless counsel for Mr. Kwok is

20   willing -- and Mr. Kwok himself is willing to consent to a

21   temporary restraining order until we can have a preliminary

22   injunction hearing.

23          But the situation is intolerable.  People are

24   protesting outside the homes of the chairman of PAX's

25   children.  Information about where they live has been put on

1    the internet.  There are people protesting outside my office

2    with pictures of me saying I am a CCP agent and spy.

3           There have been comparisons -- Your Honor knows I

4    take my religion seriously.  There have been statements re-

5    Tweeted by Mr. Kwok saying that I am akin to a Nazi and a

6    concentration camp guard.

7           And that's not the worst he's done.  It's a bad

8    day when the worst thing he's done isn't accuse somebody

9    else of being a Nazi.

10          That's how egregious and shameful his behavior is

11   and, again, it's pointed at one thing, which is to

12   intimidate people from exercising their rights under the

13   legal system, Your Honor.

14          So we will be filing a motion for a temporary

15   restraining order after we file our complaint.  We intend to

16   do that tonight.  And we would ask the court to hear us

17   tomorrow.  Thank you, Your Honor.

18          THE COURT:  Thank you.

19          MR. WOLMAN:  Your Honor, may I be heard, briefly?

20          THE COURT:  Yes.

21          MR. WOLMAN:  Thank you.

22          Responding to Mr. Despins, certainly I am

23   sympathetic to his concerns and, you know, I'll leave

24   whatever action the parties want to take against Mr. Kwok to

25   the defense by Mr. Henzy or his firm.

1          As to sealing documents, I am concerned there's a

2     basis why only PAX has seen an unredacted copy. I don't

3     think that this necessarily is something under the

4     protective order, the confidentiality order.

5          But I should note that it does not sound like the

6     trustee's asking for specific relief from this court.  So it

7     might not be a judicial document and I'm still assessing

8     what the purpose of the filing was.  So it would be a lower

9     standard for sealing.  I will concede that to the extent

10    relief is not being sought.

11         But I am concerned potentially with the breadth of

12    redactions. It does sound a bit that perhaps the genie is

13    already out of the bottle.  The ad people who have the

14    information already have the information at issue and to

15    what extent the public otherwise doesn't have access, I'm

16    concerned about.  I haven't had a chance to fully read every

17    detail of the report.

18         But finally, my primary concern is the John Doe

19    creditor claims as it were, that -- the methodology for

20    doing that because I don't know how a party in interest

21    under Section 502 for Rule 3007 might be in a position to

22    object to the claim if they don't know who the claimant is.

23         THE COURT:  Okay.  Well, that's not before me

24    today, so I understand your concern, but no one has filed

25    any motion seeking any of that form of relief.

1          MR. WOLMAN:  Your Honor, a revised order was

2     submitted to that effect, I believe.

3          THE COURT:  Well, I haven't seen it.

4          MR. WOLMAN:  The trustee --

5          MR. DESPINS:  Sorry, Your Honor.  This was just to

6     let you know not to sign the (indiscernible) order today, if

7     you're inclined to do that, because we want to address this

8     issue and we don't want to have to amend an order.  We're

9     not to address this on this call, but there has to be a

10    mechanism to protect the identity.

11          And the point I was making, while I was muted, was

12    that the trustee is the party that has the right to object

13    and he -- I'm a fiduciary and I will object to all claims

14    that are not valid.

15          And as to others that have an interest, such as

16    the creditors committee or the Zeisler firm, they would have

17    full access to that information and so they can -- the point

18    is that there should not be public dissemination of personal

19    information about the claimants because they're at physical

20    risk and there's a risk of harm to them.  And there are ways

21    of protecting the integrity of the system, I should describe

22    it.

23          So the actual methodology we use, that's wide

24    open.  But the goal is to protect these poor people who are

25    believed -- who have either been threatened or believe that

1    they would, but still able to assert a claim within the

2    process.

3         MR. GOLDMAN:  Your Honor, may I be heard on behalf

4    of the committee?

5         THE COURT:  I said yes. I don't know if you heard

6    me.

7         MR. GOLDMAN:  I just wanted to express our support

8    for the trustee's claims for relief here.  The level of

9    abuse that is being perpetrated by Mr. Kwok is patent.

10        I've never seen it to this degree in my 37 years

11   of practice, and the trickle effects that it's going to

12   have, as mentioned by Mr. Despins, are real and really has

13   to be addressed in order for the system to work properly.

14        I would point out that the court actually could

15   act *sua sponte* under Section 105(a) to issue any orders that

16   were necessary to prevent an abuse of process, is what the

17   section describes.

18        And as I said, I think that is patent here.  So

19   however Your Honor chooses to proceed, whether it's formally

20   based on a set of papers from Mr. Friedman or -- certainly I

21   think you could do it *sua sponte*.  That's all I have.

22        THE COURT:  Okay.  Anyone else wish to be heard?

23        Attorney Henzy, have you discussed these issues

24   with your client, the issues that the Chapter 11 Trustee has

25   raised with regard to -- as it stated on the agenda, social

1     media bullying and intimidation?

2              MR. HENZY:  Yes.

3              THE COURT:  And you had said to me last week, I

4     believe, that I believe that you were informed that certain

5     videos, I believe, would be taken down.  Have you had any

6     discussions with your client about whatever's occurred this

7     weekend being stopped?

8              MR. HENZY:  Yes.

9              THE COURT:  And you have no ability to represent

10    to the court that it will be stopped?

11             MR. HENZY:  No.

12             THE COURT:  Okay.  All right.  What else are we

13    going to address this afternoon?

14             Didn't you have an order -- didn't you need an

15    order, Trustee Despins, extending the time frame to remove

16    actions?

17             MR. DESPINS:  Yes, I believe Mr. Linsey was going

18    to handle that. I apologize for not putting that on the

19    agenda.

20             MR. LINSEY:  We do, Your Honor.  We filed a second

21    motion for extension of time to extend the deadline for

22    removal.

23             Given everything that's going on in the case and

24    everything that the trustee is evaluating at the moment, we

25    believe that would be in order.

1            There were no objections to the first motion that

2    we filed seeking an extension of time. I haven't seen any

3    objections to this motion.  Frankly, we didn't expect them.

4            The reason that we sought expedited relief is

5    because the current extension expires on December 6th.  So

6    we would ask, given that service is proper, given that no

7    one has objected, that the court enter that further

8    extension, which would carry the existing extension through

9    and including April 5th of 2023.

10            THE COURT:  Does anyone have any objection to the

11    extension of time with regard to the removal of actions that

12    has just been recited on the record by Attorney Linsey?

13            All right.  Hearing none, then I will take a look

14    at that order and that motion will be granted and the order

15    will enter, unless there is some issue with the order that

16    we will let you know about, okay?

17            MR. LINSEY:  Thank you, Your Honor.

18            THE COURT:  Thank you.

19            MR. FRIEDMAN:  Your Honor --

20            THE COURT:  Yes.

21            MR. FRIEDMAN:  It's Peter Friedman.

22            So just without knowing where the hearing is going

23    from here, would we -- if necessary, would we be able to

24    have a temporary restraining order and hearing tomorrow?

25            THE COURT:  Well, this isn't a hearing today.

1    It's a status conference.  And the only other thing that was

2    scheduled was the extension of time for removal of a civil

3    action, which we just addressed.  This was specifically

4    requested to be a status conference, so that is what we're

5    doing.

6              As far as you filing papers, we have hearings

7    already scheduled tomorrow in other matters. So I'd have to

8    see whatever you file and I'll have to see whatever it is,

9    if anything, that the court can address tomorrow. But that's

10   where we are.

11             I mean, I don't know what the United States

12   Trustee's Office's position is with all of this and where

13   they stand. I have no idea.

14             I understand some things were filed in the last

15   hour and a half or less with regard to things that occurred

16   outside of court.

17             You know, as I said the other day -- I think I

18   said -- maybe I said it in a sealed portion of the hearing,

19   these -- well, I may have said it -- I don't even recall if

20   I said it during a public part of the hearing or a sealed

21   part, but these issues are obviously not what anyone was

22   anticipating would occur in the case and this is a

23   bankruptcy case.

24             So you all have to do whatever you think is

25   appropriate and we'll go from there.

1          But what is the U.S. Trustee's Office -- has the

2     U.S. Trustee's Office seen the information that -- regarding

3     this, apparently, that have occurred over the weekend and

4     today with regard to protests and things of that nature?

5          MS. CLAIBORN:  Yes, Your Honor. I have now

6     received a full, unredacted copy of what was filed with the

7     court. I don't have an official position to convey to Your

8     Honor about the release that's been requested, as I was not

9     privy to that in anticipation of the hearing today.

10          But I do want to reiterate what I said last week,

11     which is that the U.S. Trustee is very concerned about the

12     conduct of outside individuals with respect to this case and

13     with respect to Mr. Kwok to the extent that he's involved

14     with it, and that we are taking it seriously and we have

15     been in communications with the appropriate authorities.

16          THE COURT:  Okay.  Thank you.

17          Okay.  Again, you know, I understand what's been

18     said and, obviously, there's very serious issues involved. I

19     haven't reviewed any of it to make any determinations and

20     I'm not sure that I am -- well, we'll just have to see what

21     you file and where we go from there.  These are serious

22     issues and they need to be brought and reviewed

23     appropriately.

24          MR. FRIEDMAN:   Your Honor, we do believe that

25     there's exigent risk so we will get our papers in and filed

1   as quickly as possible and make ourselves available in

2   person or remotely, whatever the court wishes for, so that

3   we can have these issues in front of you, because we do

4   believe urgent relief is necessary.

5          Facts are unfolding in real time.  The pleading

6   and the (indiscernible)  is constant and we don't want to

7   see any -- you know, it's already troubling.  We obviously

8   don't want to see it go any further.

9          THE COURT:  I understand.

10          MR. DESPINS:  And, Your Honor, the first thing

11   people have told me about this case, and Your Honor -- is

12   don't ever cite 105 to the bench and the last thing -- but I

13   know the feeling.  But if there's ever a situation where 105

14   should be invoked to protect the integrity of the process

15   and the court, this is the one.

16          I understand you haven't read anything so you

17   cannot form an opinion on the spot. Understood.  But I would

18   urge Your Honor to read and go and see what was posted about

19   high school pictures and my daughters and things like that.

20   It's just insanity.

21          And they always say, oh, we're going to be

22   peaceful.  That's until somebody goes haywire and decides

23   they need to take the law in their own hands and by that

24   time it will be too late.

25          So I am sorry be perhaps overly dramatic about

1    this, but I really feel very strongly that this is

2    fundamental to the case and to the judicial process.  Thank

3    you, Your Honor.

4            THE COURT:  Thank you.  All right.  Is there

5    anything else we can address this afternoon?

6            MR. MORIARTY:  Your Honor, James Moriarty. If I

7    could turn back to the pre-judgment remedy and injunction

8    application for one second.

9            The respondent's objection is due today at 5

10   o'clock and each party is supposed to be filing their

11   witness and exhibit list today at 5 o'clock.

12           Since we are discussing continuing the hearing

13   likely to a date in January, can we assume that those dates

14   are no longer applicable so we do not have to file today?

15           MR. DESPINS:  So that will be fine in theory,

16   except if Mr. Kwok decides that he is not willing to

17   maintain the status quo until then, then we're left in a bad

18   spot.  So I think that -- we're happy with those dates.

19   Happy to do the January dates, but it has to be with the

20   (indiscernible)  continuing.

21           MR. MORIARTY:  And that's fine. Mr. Kwok's

22   actually not a party to --

23           MR. DESPINS:  Oh, I'm sorry.  Okay. Sorry.

24           Well, the other side of the (indiscernible)  needs

25   to agree to that.

1            MR. MORIARTY:   Yeah, I get the point and I

2     understand and I agree with you.

3            But at a minimum we had discussed moving it up to

4     the 12th and we already have agreement on that. So our dates

5     would be tomorrow.

6            And then assuming we get further agreement for

7     January, I just want to make sure there's no filing

8     requirement today.

9            MR. DESPINS:  From out point of view that's fine,

10    as long as we're not going to be faced with a situation

11    where there's no agreement for January and then we have to

12    proceed with the existing dates.  That would be a problem.

13           So we're okay with the dates in January as long as

14    the stand still is maintained. And I think -- that's the

15    only issue.  We're not going to try to default you tomorrow.

16    That's not the goal. The point is though we need to have a

17    full agreement on this.

18           THE COURT:  Well, I'll let you discuss that off

19    the record and then you can submit an order with regard to

20    dates, or however you want to proceed so that your agreement

21    is enforceable.

22           MR. MORIARTY:  Thank you, Your Honor.

23           MR. DESPINS:  Thank you, Your Honor.

24           THE COURT:  Okay.  Thank you.

25           Anything further this afternoon?

1          MR. DESPINS:  Well, there -- I'm just mentioning

2    it because I doubt we'll go forward on it, but there was the

3    motion to compel.  We need to continue that to a date --

4    from our perspective because we're seeking production as

5    soon as possible.  I'm just saying it's not going to happen

6    today.

7          THE COURT:  Right. It's not going to happen today.

8          So I will take a look and we'll see where things

9    stand in the next few days.  Maybe we'll see if it can be

10   next week or the following week.  Okay?

11         MR. DESPINS:  Thank you, Your Honor.

12         THE COURT:  Okay.  All right.  Anything further

13   this afternoon?

14         UNIDENTIFIED:  Your Honor, there was a motion for

15   joint administration to jointly administer the three cases

16   that the court had granted.  But I haven't seen an order on

17   it.  And I only ask because there's been some confusion

18   about what caption to use.

19         THE COURT:  The caption that you use is the main

20   case caption.  Mr. Kwok's case.  That's the first name.

21         And have we gotten that order?

22         THE COURTROOM DEPUTY: I was just going to check.

23         THE COURT:  We're just checking.  But we were in

24   court all day Friday so we still had other work to do today.

25         (Pause.)

1          THE COURT:  All right.  We'll take a look at that

2     order right after we complete this hearing and we'll try to

3     get it entered within the next half an hour, okay?

4          UNIDENTIFIED:  Thank you so much, Your Honor.

5          THE COURT:  All right.  Thank you.

6          MR. DESPINS:  Thank you.

7          THE COURT:  All right.  Court is adjourned.

8        (Proceedings adjourned at 2:56 p.m.)

9     I, CHRISTINE FIORE, Certified Electronic Court Reporter and

10    Transcriber, certify that the foregoing is a correct

11    transcript from the official electronic sound recording of

12    the proceedings in the above-entitled matter.

13

14    *Christine Fiore*

15    _____          December 4, 2022

16      Christine Fiore, CERT

17

18

19

20

21

22

23

24

25