**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HO WAN KWOK, *et al.* | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtors. | : | |
| | : | |

**INDIVIDUAL DEBTOR'S MOTION FOR LEAVE TO FILE APPEAL OF
ORDER GRANTING IN PART MOTION FOR PROTECTIVE ORDER AND, IN THE
ALTERNATIVE, PETITION FOR WRIT OF MANDAMUS**

Pursuant to 28 U.S.C. §158(a)(3), Fed. R. Bankr. P. 8004, and 28 U.S.C. § 1651, the individual debtor, Ho Wan Kwok (the "Individual Debtor"), by and through his undersigned counsel, Zeisler & Zeisler, P. C. ("Z&Z"), respectfully moves (the "Motion/Petition") for leave to appeal the Bankruptcy Court's December 9, 2022 Order Granting in Part Motion for Protective Order (Doc. No. 1217, the "Order"), which authorized the production of the Individual Debtor's asylum application (the "Asylum Application") to the chapter 11 trustee Luc A. Despins (the "Trustee") and, in the alternative, petitions for a writ of mandamus vacating the Bankruptcy Court's Order. In further support of his Motion/Petition, the Individual Debtor respectfully states as follows.

**I.    INTRODUCTION**

1.    The Individual Debtor has been a political target of the Chinese Communist Party (the "CCP") for many years. In early 2015, after learning that the CCP was going to arrest him on politically motivated charges based on fabricated evidence, the Individual Debtor fled to the United States. Since the Individual Debtor left China, both he and his family have been the subject of relentless threats and harassment by the CCP and its agents.

1

2. Several years before filing for bankruptcy protection, the Individual Debtor, with the assistance of counsel at Clark Hill PLC ("Clark Hill"), prepared and submitted the Asylum Application to the United States Department of Homeland Security. By the Asylum Application, the Individual Debtor sought refuge in the United States and protection from the CCP's persistent threats. The Asylum Application contains confidential, highly sensitive information that is expressly protected from disclosure by 8 C.F.R. §§ 208.6(a) and 1208.6(a).[1]

3. By the instant motion, the Individual Debtor seeks leave to obtain appellate review of an order entered by the United States Bankruptcy Court for the District of Connecticut (*Manning, J.*) (the "Bankruptcy Court"), which authorized the production of, *inter alia*, the Asylum Application to the Trustee and his counsel. In the alternative, the Individual Debtor respectfully petitions for a writ of mandamus vacating the Bankruptcy Court's Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

4. On February 15, 2022 (the "Petition Date"), the Individual Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case. On July 7, 2022, the Trustee was appointed. (*See* Doc. No. 514).

5. One of the assets of the Individual Debtor's bankruptcy estate is a pre-petition claim (the "Malpractice Action") that the Individual Debtor initiated against Clark Hill. In the Malpractice Action, the Individual Debtor alleges that he was harmed when Clark Hill's computer system was hacked, which allowed unauthorized persons to access the Asylum Application. Specifically, the Individual Debtor asserted, *inter alia*, that as a direct and proximate cause of Clark Hill's multiple breaches of their duties, the details and contents of the Asylum Application

---

[1] 8 C.F.R. § 208.6(a) and 8 C.F.R. § 1208.6(a) are identical, except one authorizes the Secretary of Homeland Security and the other authorizes the Attorney General to permit the disclosure of information contained in or pertaining to an asylum application. For ease of reference, this Motion/Petition cites to only 8 C.F.R. § 1208.6 except where necessary.

were disclosed widely on social media platforms and placed in the hands of third-parties hostile to the Individual Debtor. Clark Hill retained Jenner & Block, LLP ("Jenner & Block") to represent it in the Malpractice Action.

6. On July 28, 2022, the Trustee filed his Omnibus Motion of Chapter 11 Trustee for Entry of Order under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Legal and Financial Advisors to the Debtor (Doc. No. 637, the "Professionals 2004 Motion"), seeking, *inter alia*, to conduct the examination of Clark Hill.

7. The Individual Debtor filed a limited objection (Doc. No. 703), *inter alia*, to the Professionals 2004 Motion on August 5, 2022, on the grounds that if the proposed order filed therewith was entered and interpreted literally, it would preclude substantive objections to the subpoenas to be served in accordance with the Professionals 2004 Motion, including objections based upon privilege, in violation of Bankr. L. R. 2004-1.

8. On August 16, 2022, the Bankruptcy Court entered the Order Granting Chapter 11 Trustee's Application for Rule 2004 Discovery with Respect to Various Legal and Financial Advisors to the Debtor (the "Order Granting the Professionals 2004 Motion") (Doc. No. 756). The Order Granting the Professionals 2004 Motion, *inter alia*, permitted service of a subpoena upon Clark Hill (the "Subpoena"), but directed that compliance was "[s]ubject to any rights under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and applicable Local Rules[.]" Thus, the Bankruptcy Court modified the Trustee' proposed order granting the Professionals 2004 Motion so as to preserve the Individual Debtor's and the recipients of the subpoenas' rights to object to the substance of the subpoenas.

9. On August 18, 2022, the Trustee gave notice that it would serve subpoenas pursuant to the Order granting the Professionals 2004 Motion, including, *inter alia*, the Subpoena on Clark Hill.

10. On September 14, 2022, the Court entered the Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents and Information (Doc. No. 856, the "Consent Order"). The Consent Order defined the scope of the Trustee's and Individual Debtor's respective control of the attorney-client and work-product privileges and set forth certain procedures for disputes concerning the same. Moreover, the Consent Order specifically provided:

> Nothing herein shall prevent the Debtor from asserting any and all privileges concerning legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application (other than documents related to the litigation styled as *Guo Wengui v. Clark Hill, PLC*, Case No. 19-cv-03195 (D. D.C.) [(the "Clark Hill Action")] that relate to the merits of the legal malpractice action, as distinguished from the merits of the Debtor's asylum application, subject to the balancing test incorporated herein, **which does not relate to the substance of the asylum application**).

(Consent Order, ¶¶ 2, 4.) (emphasis added). The Investigation Activities are limited to the Debtors' assets, financial condition, or activities related to the administration of the bankruptcy estate, which, per the Consent Order, "does not relate to the substance of the asylum application." (*Id.*, ¶ 2).

11. During the hearings held in the Bankruptcy Court concerning the negotiation of the Consent Order, the Trustee and his counsel each represented—and separately so—that the Trustee did not seek the Debtor's Asylum Application:

> The debtor identifies his concerns about potentially privileged documents related to . . . things that have been made against him as well as his asylum application. ***We are not, in our investigation at this time, seeking any documents related to those issues***. (Tr. 8/30/22, **Exhibit A**, at 104: 6-11 (Bassett, N.) (emphasis added)).

4

> [T]he debtor contends, well as I said before, there's a concern that, you know, it's possible documents the trustee is seeking to have access to could involve potential . . . ***unrelated issues like his asylum application*, *but, again, as I said before, we're not seeking to get those documents through our discovery requests***. (*Id*., at 110: 12-19 (Bassett, N.) (emphasis added)).

> The debtor has identified one request in our subpoena directed to his former law firms and professionals, ***Request 17, that asks for information about legal disputes which could be read to include . . . his asylum application, we are willing to make clear on the record that we're not seeking to get that type of information and we'll limit that request accordingly***. (*Id.*, at 110: 20-111:2 (Bassett, N.) (emphasis added)).

> [***T***]***here is no basis that's been provided as to why documents would relate to assets, financial condition, or the administration of the estate, would have anything to do with the debtor's asylum application***. (*Id.*, at 137: 17-20 (Bassett, N.) (emphasis added)).

> But, again, if there is language we could work out to make clear if there's a document that talks about . . . ***his asylum application***, things like that, in his objection, I think we could work out language to put in the proposed order to again make clear that ***we are not seeking that***. (*Id.*, at 138: 24-139: 5 (Bassett, N.) (emphasis added)).

> [A]s we've made clear in our order, you know, ***there are carveouts designed to address specifically the concerns that the debtor has raised concerning privileged communications that relate to . . . his asylum application***. (Tr. 9/6/22, **Exhibit B**, 49: 5-10 (Bassett, N.) (emphasis added)).

> And that is exactly how we tried to craft our revised proposed order is to track those categories in that weigh of the case law and then to also make clear to address the debtor's concerns that he is still able to assert privileges over documents related to . . . his asylum application . . . . (*Id.*, at 76: 13-18 (Bassett, N.)).

> So the balancing—[the court is] doing the balancing. [The court is] doing the balancing in a category-by-category document ***with some very specific carveouts regarding . . . the asylum issue carved out, [the court is] doing the balancing***. (*Id.*, at 108: 9-15 (Despins, L.) (emphasis added)).

12. The Bankruptcy Court expressly relied on the Trustee's and his counsel's representations when it entered the Consent Order, just as the Individual Debtor did when he agreed to the Consent Order:

> The Bankruptcy Court: Well, I'm trying to figure out how we should proceed. And

5

right now this was a continued hearing on the trustee's motion to have this court determine that he holds all the privileges of the debtor.

My understanding of that motion was that even though the trustee wants that order, ***he would agree to carveout anything with regard to the asylum issue. . .***

***I mean, he was—he's not asserting and never has asserted that he's going to exercise that right.*** (*Id.*, at 67: 20-68:5) (emphasis added)).

13. Thereafter, pursuant to discussions among the Individual Debtor's counsel and Clark Hill's counsel, it was agreed that Clark Hill would produce documents responsive to the Subpoena to the Individual Debtor's counsel for review.

14. Clark Hill's counsel produced documents to the Individual Debtor's counsel, which included the Asylum Application. Thereafter, counsel for the Individual Debtor asserted to the Trustee's counsel that the Asylum Application is prohibited from disclosure and requested to Clark Hill's counsel that it refrain from producing the Asylum Application to allow the Individual Debtor an opportunity to seek a protective order.

15. Consequently, the Individual Debtor filed the Motion for Protective Order (ECF No. 1063) with the Bankruptcy Court. The Trustee objected, claiming that his and his counsel's statements to the Bankruptcy Court during hearings concerning the Consent Order were inapplicable because the Trustee did not know at the time that Clark Hill had attached the Asylum Application to its Motion for Summary Judgment in the Malpractice Action.

16. After hearings held on November 30, 2022, and December 2, 2022, to consider the Individual Debtor's Motion for Protective Order, the Bankruptcy Court issued the Order attached hereto as **<u>Exhibit C</u>**.[2]

---

[2] The Bankruptcy Court's Order references hearings on November 30, 2022 and December 1, 2022. In actuality, the second hearing to consider the Motion for Protective Order was held on December 2, 2022.

17. In the Order, the Bankruptcy Court held that the Trustee and his counsel "need access to the Motion for Summary Judgment and the Asylum Application to prosecute the Malpractice Action[.]"[3] (Order, at 2). Consequently, the Bankruptcy Court ordered that Jenner & Block (as Clark Hill's counsel) "is authorized to produce the Motion for Summary Judgment and the Asylum Application" to the Trustee and his counsel.[4] (*Id*., at 3).

### III. THE ASYLUM APPLICATION IS PROTECTED FROM DISCLOSURE BY 8 C.F.R. § 1208.6(a)

18. As asserted by the Individual Debtor in his Motion for Protective Order submitted to the Bankruptcy Court, the Immigration and Nationality Act ("INA") "prohibits the disclosure of information pertaining to any asylum application. . . ." *Zhong Rong Li v. Gonzales*, 181 F. App'x 124, 128 (2d Cir. 2006); *see also Gafurova v. Whitaker*, 911 F.3d 321, 328 n.3 (6th Cir. 2018) (the INA "generally prohibit[s] the disclosure to third parties of any information relating to an asylum application without the written consent of the applicant unless permitted by the listed exceptions or at the discretion of the [Secretary of the Department of Homeland Security]") (citing 8 C.F.R. §§ 208.6, 1208.6(a)).

19. Specifically, 8 C.F.R. § 1208.6(a) provides:

> Information contained in or pertaining to any application for refugee admission, asylum, withholding of removal under section 241(b)(3) of the Act, or protection under regulations issued pursuant to the Convention Against Torture's implementing legislation, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by

---

[3] The Individual Debtor does not object to the Trustee receiving Clark Hill's Motion for Summary Judgment and exhibits thereto that do not contain content from his Asylum Application.

[4] Though the Subpoena was directed at Clark Hill, at oral argument concerning the Individual Debtor's Motion for Protective Order, the Trustee orally requested that Jenner & Block be authorized to produce the Asylum Application. The Individual Debtor objected, asserting that the Trustee's request was procedurally improper. Nonetheless, the Bankruptcy Court authorized Jenner & Block to produce the Asylum Application.

    this section or at the discretion of the [Secretary of the Department of Homeland Security].

  20. 8 C.F.R. § 1208.6(a), along with the substantially similar 8 C.F.R. § 208.6(a), "establish a 'right' of asylum seekers 'to keep confidential any information contained in or pertaining to an asylum application that allows a third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum.'" *Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 U.S. Dist. LEXIS 210401, at *22 (S.D. Cal. Dec. 20, 2017) (citation omitted).

  21. "These regulations 'safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin.'" *Id.*, at*22-23, *quoting* U.S. DEP'T OF HOMELAND SECURITY, U.S. Citizenship & Immigration Servs. Asylum Div., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applications* (Oct. 12, 2011).

  22. The Trustee argued to the Bankruptcy Court that 8 C.F.R. § 1208.6(a) is inapplicable to the production of an Asylum Application by non-government actors. However, nothing within the text of 8 C.F.R. § 1208.6(a) limits its application in that manner. Rather, ***only certain exceptions*** to the general prohibition against disclosure of an asylum application in 8 C.F.R. § 1208.6(a) apply only to government actors. *E.g.*, 8 C.F.R. § 1208.6(c) ("**This section shall not apply to any disclosure to: (1) Any United States Government official or contractor having a need to examine information in connection with**. . . .") (emphasis added).

23. Further evidencing the confidentiality of asylum applications, the *Federal Regulation Protecting the Confidentiality of Asylum Applicants Synopsis* (the "Synopsis") prepared by the United States Citizenship and Immigration Services agency, attached hereto as **Exhibit D**, expressly states that third parties who receive an asylum application are bound by the confidentiality regulations. *See Synopsis, Frequently Asked Question 2*, at p. 3 ("In general, asylum-related information must not be shared with third parties without the asylum applicant's written consent or the Secretary of Homeland Security's specific authorization."); *Frequently Asked Question 7*, at p. 4 (Q: If asylum-related information is properly disclosed to a third party pursuant to the regulation, what is the third party's obligation with respect to confidentiality? A: ***As the new custodian of the asylum-related information, the third-party recipient is bound by the confidentiality regulation under 8 CFR 208.6.***") (emphasis added).

24. Additionally, at least one court in the District of Connecticut has denied a "motion to compel the production of documents concerning [an individual plaintiff's] asylum application" to the defendant in that action on the basis that such material is not generally subject to disclosure, notwithstanding the fact that the defendant argued that the content of the plaintiff's asylum application was relevant to the plaintiff's claim for infliction of emotional distress. *See Bakhit v. Safety Marking, Inc.*, No. 3:13CV1049 (JCH), 2015 U.S. Dist. LEXIS 192934, at *9 (D. Conn. Feb. 17, 2015).

25. Thus, it is clear that the Asylum Application is protected from disclosure by 8 C.F.R. § 1208.6(a), and that no exception is applicable to permit disclosure.[5] *See* 8 C.F.R. § 1208.6(c)-(e); *see also Bakhit*, No. 3:13CV1049 (JCH), 2015 U.S. Dist. LEXIS 192934, at *9.

---

[5] In addition, the Asylum Application does not relate to the Investigation Activities of the Trustee – *i.e.*, investigation of the Debtor's assets, financial condition, and administration of the estate—a fact that the Trustee's counsel repeatedly represented to the Court during the hearings concerning the Consent Order. Moreover, in light of the fact that the Subpoena had already been served when the Trustee's counsel made

9

## IV. THE INDIVIDUAL DEBTOR RESPECTFULLY MOVES FOR LEAVE TO APPEAL THE BANKRUPTCY COURT'S ORDER

### a. QUESTIONS PRESENTED AND RELIEF SOUGHT

26. The Individual Debtor respectfully submits the following question in the appeal of the Order:[6]

> i. Whether the Bankruptcy Court erred in ordering the production of the Asylum Application to the Trustee and his counsel in violation of 8 C.F.R. § 1208.6(a).

27. The Individual Debtor respectfully requests that the District Court vacate the Order and prohibit the production of the Asylum Application to the Trustee and his counsel.

### b. REASONS THIS APPEAL SHOULD BE GRANTED

#### 1. STATEMENT OF JURISDICTION

28. This Court has jurisdiction over this proposed appeal pursuant to 28 U.S.C. § 158(a)(3) because the Order sought to be appealed from is an interlocutory ordered entered by the Bankruptcy Court in a core proceeding under 28 U.S.C. § 157 and the Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. § 1334. Venue was proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

those representations in open court, the Subpoena cannot reasonably be construed to seek to compel Clark Hill to produce the Individual Debtor's Asylum Application. Simply stated, since the Trustee represented in open court that the Subpoena did not seek to compel the production of the Asylum Application, and the Court entered an order expressly relying on that representation; *see Exhibit B*, at 67:20-68:5; the Trustee is judicially estopped from arguing that the Subpoena compels (or even permits) Clark Hill to produce the Asylum Application. *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 620 (2d Cir. 2012) ("[T]he [Supreme] Court has stated that judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" (*quoting New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

[6] The Individual Debtor reserves the right to alter, amend, add to, or otherwise change this question when he submits a statement of the issues presented in accordance with the applicable rules.

## 2. STANDARD FOR GRANTING LEAVE TO APPEAL

29. A party may seek an interlocutory appeal of orders and decrees of the Bankruptcy Court "with leave of the [District] [C]ourt" pursuant to 28 U.S.C. § 158(a)(3). "[C]ourts in this Circuit have invariably held that all appeals governed by [28 U.S.C. §] 158(a)(3) should refer to the standards articulated by [28 U.S.C. §] 1292(b) to determine whether leave to appeal should be granted." *Golden v. Pa. Higher Educ. Assistance Agency*, No. 22-MC-01899 (HG), 2022 U.S. Dist. LEXIS 143072, at *11 (E.D.N.Y. Aug. 10, 2022) (quotation, citation, and ellipsis omitted).

30. This Court may accept an appeal from an interlocutory order if "the order (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Osuji v. U.S. Bank, Nat'l Ass'n*, 285 F. Supp. 3d 554, 558 (E.D.N.Y. 2018). "[A]ppellants bear the burden of showing that exceptional circumstances exist that warrant an interlocutory appeal…." *Id.* (citation and quotation omitted).

### a. THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW

31. An order involves a controlling question of law where "reversal of the bankruptcy court's order would (1) terminate the action or (2) materially affect the outcome of the litigation." *Osuji*, 285 F. Supp. 3d at 558. "In addition, the question of law must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *2178 Atl. Realty LLC v. 2178 Atl. Ave. Hous. Dev. Fund Corp.*, No. 20-CV-1278 (RRM), 2021 U.S. Dist. LEXIS 62226, at *11 (E.D.N.Y. Mar. 30, 2021) (citation omitted).

32. The question of law at the core of the Bankruptcy Court's Order, and this appeal, is undeniably "pure" and this Court can decide it "quickly and cleanly without having to study the record." Indeed, the core issue here is whether 8 C.F.R. § 1208.6 prohibits the disclosure of the

Asylum Application to the Trustee. This Court need not review the record to adjudicate this purely legal question.

33.   Additionally, adjudication of this narrow legal question will "materially affect the outcome of the litigation" because this is a contested matter in the Bankruptcy Court and the sole issue is the Trustee's right to access the Asylum Application. *See generally Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582, 586(2020) ("A bankruptcy case embraces an aggregation of individual controversies.") (quotations and citations omitted). With each additional entity that maintains a copy of the Asylum Application, the risk that the Asylum Application falls into the hands of individuals who wish to do the Individual Debtor harm (including the CCP and its agents) rises incrementally, as evidenced by the hack of Clark Hill's computer system. *See generally Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 265 (E.D.N.Y. 2012) (finding that a question of law "materially affect[s] the outcome of the litigation" when it would force a debtor to act "immediately," as the Individual Debtor might to protect the safety of himself and his family, "which could have significant consequences"). Fundamentally, and despite their presumably best technological and security efforts, the Trustee and his counsel maintaining copies of the Asylum Application increases the potential for unauthorized third parties to obtain copies of the Asylum Application, further infringing on the Individual Debtor's privacy and potential safety.

34.   Therefore, the Bankruptcy Court's Order involves a controlling question of law.

### b. THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

35.   There is a substantial ground for difference of opinion "where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Osuji*, 285 F. Supp. 3d 554, 558 (E.D.N.Y. 2018).

36. The Individual Debtor submits that the law on the protected status of an asylum application under 8 C.F.R. § 1208.6 is well-settled and, as such, there is not conflicting authority on the issue.

37. However, the issue of whether a chapter 11 bankruptcy trustee has the ability to obtain a copy of a debtor's asylum application—despite well settled law ***protecting an asylum application from disclosure***—is a "particularly difficult" issue given a bankruptcy trustee's established duties (including those under 11 U.S.C. § 1106 to investigate the assets and liabilities of the debtor, such as the Malpractice Action) and the highly confidential and protected nature of an asylum application under Federal regulations. *See* 8 C.F.R. § 1208.6. The difficulty of this issue is compounded by the fact that it is, as far as the Individual Debtor can determine, an issue of first impression for the Second Circuit.

38. Additionally, there is a substantial ground for difference of opinion as to whether the Trustee, in fact, "need[s] access to the… Asylum Application to prosecute the Malpractice Action," which the Bankruptcy Court found without providing any meaningful analysis. (Order, at 2). In opposing the Individual Debtor's Motion for Protective Order, the Trustee stated in highly conclusory fashion that he "needs access to the [Individual] [D]ebtor's [A]sylum [A]pplication" to "fully assess the merits of the Malpractice Action." *Even if* a showing of need was sufficient to overcome the protections provided to the Individual Debtor under 8 C.F.R. § 1208.6 (the Individual Debtor submits that a showing of need is *not* sufficient), the conclusory statements by the Bankruptcy Court and the Trustee as to the Trustee's need to access the Asylum Application provide no basis to understand *why* the Trustee needs the Asylum Application. Accordingly, there is a substantial ground for difference of opinion as regards the Bankruptcy Court Order.[7]

---

[7] See footnote 3.

### c. AN IMMEDIATE APPEAL MATERIALLY ADVANCES THE ULTIMATE TERMINATION OF THE LITIGATION

39. This prong, "assessing whether an appeal would materially advance termination of the litigation, is satisfied where the appeal promises to advance the time for trial or to shorten the time required for trial." *Osuji*, 285 F. Supp. 3d at 558 (citation and quotation omitted).

40. The Individual Debtor acknowledges that this appeal technically is a discovery dispute which renders it an interlocutory appeal under binding precedent. However, the **_sole_** issue underlying this dispute is whether Federal regulation entitles the Individual Debtor to keep his Asylum Application confidential from the Trustee and whether the Bankruptcy Court exceeded its authority by ordering Clark Hill's counsel to produce it. Said differently, unlike almost all other discovery disputes, there is no other/larger dispute between the Trustee and the Debtor that will be impacted by the very narrow subject of this appeal, *i.e.,* the Trustee's right (or lack thereof) to access the Debtor's asylum application. In this extreme and highly uncommon circumstance, the Individually Debtor respectfully submits that allowing an immediate appeal will resolve the entirety of this dispute and provide clarity to other courts concerning the rights to which victims of political persecution are entitled.

41. Therefore, by granting the immediate appeal of the Bankruptcy Court's Order (and subsequently vacating the Order), this Court will resolve the entirety of this underlying dispute between the Individual Debtor and the Trustee and provide necessary guidance to similarly situated parties.

### d. EXCEPTIONAL CIRCUMSTANCES EXIST THAT WARRANT AN INTERLOCUTORY APPEAL

42. The Individual Debtor respectfully submits that the production of the Asylum Application to the Trustee represents exceptional circumstances warranting an interlocutory appeal for the following reasons.

43. In issuing the Order, the Bankruptcy Court deviated from the protections afforded to the Individual Debtor under 8 C.F.R. §§ 208.6 and 1208.6. Functionally, with an order than runs barely more than two pages, the Individual Debtor's privacy rights in the Asylum Application enshrined by Congress in the INA were effectively eliminated.

44. The chilling effects of such an order are profound, as persons may be dissuaded by seeking much-needed bankruptcy protection to avoid producing "information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin." *Al Otro Lado, Inc.*, No. 17-cv-02366-BAS-KSC, 2017 U.S. Dist. LEXIS 210401, at *22-23, *quoting* U.S. DEP'T OF HOMELAND SECURITY, U.S. Citizenship & Immigration Servs. Asylum Div., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applications* (Oct. 12, 2011).

45. One of the purposes of bankruptcy proceedings is "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Williams v. United States Fid. & Guar. Co.*, 236 U.S. 549, 554-55, 35 S. Ct. 289, 290 (1915). It is simply unjust to force the Individual Debtor to choose between obtaining such relief and protecting himself and his family from retaliatory measures by government authorities or non-state actors. An immediate appeal should be granted in light of this exceptional circumstance.

46. Unlike in *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 130 S. Ct. 599, 606 (2009), where the Supreme Court held that the improper disclosure of privileged material could be remedied "by vacating [the] adverse judgment and remanding for a new trial," there is no way to avoid the immediately present danger of the Asylum Application falling into the hands of persons and entities who wish the Individual Debtor harm without an immediate appeal. *Id*., at 109. Simply stated, the issue here is not a potential adverse impact that disclosure may have on litigation (which a court could rectify later)—it is an adverse impact that disclosure may have on the Debtor's safety and security (which, unfortunately, no court can rectify or reverse).

47. For these reasons, the Individual Debtor respectfully submits that leave to appeal the Bankruptcy Court's interlocutory Order should be granted.

**V.      IN THE ALTERNATIVE, THE INDIVIDUAL DEBTOR RESPECTFULLY PETITIONS FOR WRIT OF MANDAMUS TO VACATE THE BANKRUPTCY COURT'S ORDER**

48. In the Second Circuit, appellate courts "will exercise mandamus review of discovery orders relating to claims of privilege where: (i) an issue of importance and of first impression is raised; (ii) the privilege will be lost in the particular case if review must await a final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege." *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992).

49. The Supreme Court "has recognized that the writ of mandamus has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so…. Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this

16

extraordinary remedy. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S. Ct. 188, 190 (1980) (citations and quotations omitted).

50. In *Chase Manhattan Bank, N.A.*, the Second Circuit entertained a petition for a writ of mandamus "because of the unusual nature of the challenged discovery order," which effectively permitted opposing counsel to conduct a privilege review, "and the significant and important issues it raises relating to the attorney-client privilege." *Id.*, at 166; *see also, e.g., In re Itron, Inc.*, 883 F.3d 553, 568 (5th Cir. 2018) (granting mandamus following improper application of attorney-client privilege); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375–76 (Fed. Cir. 2007) (granting mandamus after district court held that a party waived the attorney-client privilege and work product), *overruled on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 579 U.S. 93, 136 S. Ct. 1923 (2016).

51. Here, the production of the Asylum Application is "an issue of great importance" as it eliminates protections explicitly afforded to the Individual Debtor (and all other similarly situated debtors) under 8 C.F.R. §§ 208.6 and 1208.6. *Chase Manhattan Bank, N.A.*, 964 F. 2d, at 163. Likewise, as discussed herein, it appears to be an issue of first impression in this Circuit.

52. Further, the protections of 8 C.F.R. §§ 208.6 and 1208.6 "will be lost in the particular case if review must await a final judgment." *See Chase Manhattan Bank, N.A.*, 964 F. 2d, at 163. Indeed, the very purpose of 8 C.F.R. §§ 208.6 and 1208.6 is to prevent the disclosure "to third parties of any information relating to an asylum application without the written consent of the applicant unless permitted by the listed exceptions," which do not apply to the current situation,

"or at the discretion of the Attorney General" or the Secretary of Homeland Security, which have not authorized the disclosure. *Gafurova v. Whitaker*, 911 F.3d 321, 328 n.3 (6th Cir. 2018) (citing

8 C.F.R. §§ 208.6, 1208.6(a)). If the Trustee and his counsel obtain a copy of the Asylum Application pursuant to the Order, then the Individual Debtor's privacy rights under 8 C.F.R. §§ 208.6 and 1208.6 immediately vanish.

53. Finally, the "immediate resolution" of the dispute regarding the Asylum Application "will avoid the development of discovery practices or doctrine undermining the privilege," specifically a doctrine that allows a bankruptcy trustee (and a bankruptcy court) to circumvent the provisions of 8 C.F.R. §§ 208.6 and 1208.6, which are designed solely to protect asylum applicants – the very narrow class of persons to which the Individual Debtor is indisputably a party. *Chase Manhattan Bank, N.A.*, 964 F. 2d, at 163.

54. As in *Chase Manhattan Bank, N.A.*, the Bankruptcy Court's Order is "unusual," to say the least, in that it permits the Trustee to obtain documents that are confidential and protected pursuant to Federal regulations and does so without any legal analysis that addresses the regulation. For this reason, and because of "the significant and important issues" the Order "raises relating to" the confidentiality of asylum applications, this Court should grant this petition for a writ of mandamus. *Chase Manhattan Bank, N.A.*, 964 F. 2d, at 166.

## VI.    CONCLUSION

55. For the reasons set forth above, this Court should (i) grant the Individual Debtor leave to appeal the Bankruptcy Court's Order or, in the alternative, (ii) grant the Individual Debtor's petition for a writ of mandamus.

                          THE DEBTOR,
                          HO WAN KWOK

By:    */s/ Aaron A. Romney*
       Aaron A. Romney (ct28144)
       ZEISLER & ZEISLER, P.C.
       10 Middle Street, 15th floor
       Bridgeport, CT  06605
       Telephone: (203) 368-4234
       Facsimile: (203) 368-0903
       Email: aromney@zeislaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13 day of December, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                       By:    */s/ Aaron A. Romney*
                                                      Aaron A. Romney (ct28144)