**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| HO WAN KWOK, *et al.* | : | Case No. 22-50073 (JAM) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |

**INDIVIDUAL DEBTOR'S MOTION FOR STAY PENDING APPEAL OF ORDER GRANTING IN PART MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Bank. P. 8007(a), the individual debtor, Ho Wan Kwok (the "Individual Debtor"), by and through his undersigned counsel, Zeisler & Zeisler, P. C. ("Z&Z"), respectfully moves for a stay (the "Motion to Stay") pending appeal of this Court's December 9, 2022 Order Granting in Part Motion for Protective Order (Doc. No. 1217, the "Order"). The Individual Debtor filed a notice of appeal of the Order on December 12, 2022. The Individual Debtor appeals from the Order and seeks a stay pending appeal to prevent chapter 11 trustee Luc A. Despins (the "Trustee") and the Trustee's counsel from obtaining a copy of the Individual Debtor's asylum application (the "Asylum Application") until the Individual Debtor can obtain appellate review of the Order. In support of his Motion to Stay, the Individual Debtor respectfully states as follows. [1]

**I.      INTRODUCTION**

1.      For the reasons set forth herein, the Individual Debtor has a substantial possibility of success on his appeal. The relief granted in the Order is extraordinary. The Order Compels the

---

[1] Pursuant to Fed. R. Bank. P. 8004, on December 13, 2022, the Individual Debtor also filed a motion for leave to appeal (the "Motion for Leave") prepared in accordance with Fed. R. Bank. P. 8004(b). In the Motion for Leave, the Individual Debtor petitions, in the alternative, for a writ of mandamus. *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992) ("We have in the past treated appeals dismissed for lack of jurisdiction as petitions for a writ of mandamus").

production of the Asylum Application, which is expressly prohibited by 8 C.F.R. §§ 208.6 and 1208.6(a), and the Order articulates no substantive basis for why the express terms of those regulations do not apply. Simply stated: this Court does not have authority to compel the production of the Asylum Application in violation of 8 C.F.R. §§ 208.6 and 1208.6(a).

2. In addition to the substantial possibility of success on appeal, the issuance of a stay is warranted by the other factors that the Second Circuit balances when considering whether to grant a stay pending appeal. As demonstrated herein, (a) absent a stay, the Individual Debtor will be irreparably harmed if the Asylum Application is produced to the Trustee and his counsel, and the balance of hardships tips in his favor, (b) the Trustee will not suffer substantial injury if a stay is issued, and (c) the public interest supports a stay.

## II.   BACKGROUND

3. On February 15, 2022 (the "Petition Date"), the Individual Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case. On July 7, 2022, the Trustee was appointed. (*See* Doc. No. 514).

4. One of the assets of the Individual Debtor's bankruptcy estate is a pre-petition action (the "Malpractice Action") that the Individual Debtor initiated against Clark Hill PLC ("Clark Hill"). In the Malpractice Action, the Individual Debtor alleges that he was harmed when Clark Hill's computer system was hacked, which allowed unauthorized persons to access the Asylum Application. Specifically, the Individual Debtor asserted, *inter alia*, that as a direct and proximate cause of Clark Hill's multiple breaches of their duties, the details and contents of the Asylum Application were disclosed widely on social media platforms and placed in the hands of third-parties hostile to the Individual Debtor. Clark Hill retained Jenner & Block, LLP ("Jenner & Block") to represent it in the Malpractice Action.

5. On July 28, 2022, the Trustee filed his Omnibus Motion of Chapter 11 Trustee for Entry of Order under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Legal and Financial Advisors to the Debtor (Doc. No. 637, the "Professionals 2004 Motion"), seeking to conduct the examination of Clark Hill.

6. The Individual Debtor filed a limited objection (Doc. No. 703) to the Professionals 2004 Motion on August 5, 2022, on the grounds that if the proposed order filed therewith were entered and interpreted literally, it would preclude objections, including based upon privilege, in violation of Bankr. L. R. 2004-1.

7. On August 16, 2022, the Bankruptcy Court entered the Order Granting Chapter 11 Trustee's Application for Rule 2004 Discovery with Respect to Various Legal and Financial Advisors to the Debtor (the "Order Granting the Professionals 2004 Motion") (Doc. No. 756). The Order Granting the Professionals 2004 Motion, *inter alia*, permitted service of a subpoena upon Clark Hill (the "Subpoena"), but directed that compliance was "[s]ubject to any rights under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and applicable Local Rules[.]" Thus, the Bankruptcy Court modified the Trustee' proposed order granting the Professionals 2004 Motion so as to preserve the Individual Debtor's and the recipients of the subpoenas' rights to object to the substance of the subpoenas.

8. On August 18, 2022, the Trustee gave notice that it would serve the Subpoena upon Clark Hill.

9. On September 14, 2022, this Court entered the Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents and Information (Doc. No. 856, the "Consent Order"). The Consent Order defined the scope of the Trustee's and Individual Debtor's respective control of the attorney-client and work-

product privileges and set forth certain procedures for disputes concerning the same. Moreover, the Consent Order specifically provided:

> Nothing herein shall prevent the Debtor from asserting any and all privileges concerning legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application (other than documents related to the litigation styled as *Guo Wengui v. Clark Hill, PLC*, Case No. 19-cv-03195 (D. D.C.) [(the "Clark Hill Action")] that relate to the merits of the legal malpractice action, as distinguished from the merits of the Debtor's asylum application, subject to the balancing test incorporated herein, **which does not relate to the substance of the asylum application**).

(Consent Order, ¶ 4.) (emphasis added). The Investigation Activities are limited to the Debtors' assets, financial condition, or activities related to the administration of the bankruptcy estate, which, per the Consent Order, "does not relate to the substance of the asylum application." (*Id.*, ¶¶ 2, 4.)

10.     During the hearings held in the Bankruptcy Court concerning the negotiation of the Consent Order, the Trustee and his counsel each represented—and separately so—that the Trustee was not seeking the Debtor's Asylum Application. (See ¶¶ 11-12 of Motion for Leave, Doc No. 1228).

11.     Thereafter, pursuant to discussions among the Individual Debtor's counsel and Clark Hill's counsel, it was agreed that Clark Hill would produce documents responsive to the Subpoena to the Individual Debtor's counsel for review.

12.     Clark Hill's counsel produced documents, which included the Asylum Application, to the Individual Debtor's counsel to review for personal harm as defined by the Consent Order. Thereafter, counsel for the Individual Debtor asserted to the Trustee's counsel that the Asylum Application is prohibited from disclosure and requested to Clark Hill's counsel that it refrain from producing the Asylum Application to allow the Individual Debtor an opportunity to seek a protective order.

13. Consequently, the Individual Debtor filed the Motion for Protective Order (ECF No. 1063) with the Bankruptcy Court. The Trustee objected, claiming that his and his counsel's statements to the Bankruptcy Court during hearings concerning the Consent Order were inapplicable because the Trustee did not appreciate at the time that Clark Hill had attached the Asylum Application to its Motion for Summary Judgment, which was filed under seal in the Malpractice Action.

14. After hearings held on November 30, 2022, and December 2, 2022, to consider the Individual Debtor's Motion for Protective Order, this Court issued the Order attached hereto as **Exhibit A**.[2]

15. In the three-page Order that did not reference either 8 C.F.R. §§ 208.6 or 1208.6(a), this Court held that the Trustee and his counsel "need access to the Motion for Summary Judgment and the Asylum Application to prosecute the Malpractice Action[.]" (Order, at 2). Consequently, this Court ordered that Jenner & Block (as Clark Hill's counsel) "is authorized to produce the Motion for Summary Judgment and the Asylum Application" to the Trustee and his counsel. (*Id.*, at 3).[3]

16. On December 12, 2022, the Individual Debtor filed a Notice of Appeal and on December 13, 2022, he filed his Motion for Leave to File Appeal of Order Granting in Part Motion for Protective Order and, In the Alternative, Petition for Writ of Mandamus.[4]

---

[2] This Court's Order references a hearing on November 30, 2022, and December 1, 2022. In actuality, the second hearing to consider the Motion for Protective Order was held on December 2, 2022.

[3] Though the Subpoena was directed at *Clark Hill*, at oral argument concerning the Individual Debtor's Motion for Protective Order, *the Trustee orally requested that Jenner & Block be authorized to produce the Asylum Application*. The Individual Debtor objected, asserting that the Trustee's request was procedurally improper. Nonetheless, this Court without any analysis in the Order, authorized Jenner & Block to produce the Asylum Application.

[4] The Individual Debtor does not object to the Trustee receiving Clark Hill's Motion for Summary Judgment and exhibits thereto that do not contain content from his Asylum Application.

### III. ARGUMENT

17. Fed. R. Bank. P. 8007(a)(1)(A) provides that "[o]rdinarily a party must move first in the bankruptcy court for … a stay of a judgment, order, or decree of the bankruptcy court pending appeal …."

18. The Second Circuit has articulated the following four-prong test in determining whether to issue a stay of an order pending appeal: (a) whether there is a probability or possibility of success, or substantial probability or possibility of success, or serious legal questions going to the merits; (b) irreparable injury, balance of hardships tipping in favor of, or some injury to the movant if a stay is denied; (c) substantial injury to the party opposing a stay if one is issued; and (d) the public interest. *Mohammed v. Reno*, 309 F.3d 95, 100-01 (2nd Cir. 2002); *see also United States v. Grote,* 961 F.3d 105, 122-23 (2nd Cir. 2020) (standard is (1) whether a movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected); *Hirschfeld v. Bd. Of Elections of N.Y.*, 984 F.2d 35, 39 (2nd Cir. 1993) (same).

19. The "degree to which a factor must be present varies with the strength of the other factors, meaning more of one excuses less of the other." *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2nd Cir. 2007) (citation and internal quotation marks omitted); *see also Mohammed*, 309 F.3d at 100-01 ("[W]e see considerable merit in the approach expressed by the District of Columbia Circuit: 'The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.' Applying that test, that Circuit has granted a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant, and has stated that a stay may be

granted where the probability of success is 'high' and 'some injury' has been shown. As the Sixth Circuit has explained, 'The probability of success that must be demonstrated is inversely proportional to the amount of injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other.'" (citations omitted)); *In re Taub*, 470 B.R. 273, 278 (Bankr. E.D.N.Y. 2012) ("The requisite showing of substantial possibility of success is inversely proportional to the amount of injury [the movant] will suffer absent the stay.").

    **a. The Individual Debtor has a Substantial Possibility of Success on Appeal or, at the Very Least, there are Serious Legal Questions Going to the Merits**

20. The Individual Debtor has demonstrated a substantial possibility of success on his appeal of the Order. Pursuant to the Order, this Court has authorized Jenner & Block to produce the Asylum Application to the Trustee in violation of 8 C.F.R. §§ 208.6 and 1208.6(a). This Court's entry of the Order thus constitutes a clear error of law.

21. The Immigration and Nationality Act ("INA") "prohibits the disclosure of information pertaining to any asylum application. . . ." *Zhong Rong Li v. Gonzales*, 181 F. App'x 124, 128 (2d Cir. 2006); *see also Gafurova v. Whitaker*, 911 F.3d 321, 328 n.3 (6th Cir. 2018) (the INA "generally prohibit[s] the disclosure to third parties of any information relating to an asylum application without the written consent of the applicant unless permitted by the listed exceptions or at the discretion of the [Secretary of the Department of Homeland Security]") (citing 8 C.F.R. §§ 208.6, 1208.6(a)).

22. Specifically, 8 C.F.R. § 1208.6(a) provides:[5]

> Information contained in or pertaining to any application for refugee admission, asylum, withholding of removal under section 241(b)(3) of the Act, or protection under regulations issued pursuant to the

---

[5] 8 C.F.R. § 208.6(a) is identical, except it authorizes the Secretary of Homeland Security, rather than the Attorney General, to permit the disclosure of information contained in or pertaining to an asylum application. For ease of reference, this Motion/Petition cites to only 8 C.F.R. § 1208.6 except where necessary.

>  Convention Against Torture's implementing legislation, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the [Secretary of the Department of Homeland Security].

23. 8 C.F.R. § 1208.6(a), along with the substantially similar 8 C.F.R. § 208.6(a), "establish a 'right' of asylum seekers 'to keep confidential any information contained in or pertaining to an asylum application that allows a third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum.'" *Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 U.S. Dist. LEXIS 210401, at *22 (S.D. Cal. Dec. 20, 2017) (citation omitted).

24. "These regulations 'safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin.'" *Id.*, at *22-23, *quoting* U.S. DEP'T OF HOMELAND SECURITY, U.S. Citizenship & Immigration Servs. Asylum Div., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applications* (Oct. 12, 2011).

25. Importantly, nothing within the text of 8 C.F.R. § 1208.6(a) limits its application so as to only preclude disclosure of an asylum application by government actors. Rather, ***only certain exceptions*** to the general prohibition against disclosure of an asylum application in 8 C.F.R. § 1208.6(a) apply only to government actors. *E.g.*, 8 C.F.R. § 1208.6(c) ("**This section**

**shall not apply to any disclosure to: (1) Any United States Government official or contractor having a need to examine information in connection with**. . . .") (emphasis added).

26.     Further evidencing the confidentiality of asylum applications, the *Federal Regulation Protecting the Confidentiality of Asylum Applicants Synopsis* (the "Synopsis") prepared by the United States Citizenship and Immigration Services agency, attached hereto as **Exhibit B**, expressly states that third parties who receive an asylum application are bound by the confidentiality regulations. *See Synopsis, Frequently Asked Question 2*, at p. 3 ("In general, asylum-related information must not be shared with third parties without the asylum applicant's written consent or the Secretary of Homeland Security's specific authorization."); *Frequently Asked Question 7*, at p. 4 (Q: If asylum-related information is properly disclosed to a third party pursuant to the regulation, what is the third party's obligation with respect to confidentiality? A: ***As the new custodian of the asylum-related information, the third-party recipient is bound by the confidentiality regulation under 8 CFR 208.6.***") (emphasis added).

27.     Additionally, at least one court in the District of Connecticut has denied a "motion to compel the production of documents concerning [an individual plaintiff's] asylum application" to the defendant in that action on the basis that such material is not generally subject to disclosure, notwithstanding the fact that the defendant argued that the content of the plaintiff's asylum application was relevant to the plaintiff's claim for infliction of emotional distress. *See Bakhit v. Safety Marking, Inc.*, No. 3:13CV1049 (JCH), 2015 U.S. Dist. LEXIS 192934, at *9 (D. Conn. Feb. 17, 2015).

28. Thus, it is clear that the Asylum Application is protected from disclosure by 8 C.F.R. § 1208.6(a), and that no exception is applicable to permit disclosure.[6] *See* 8 C.F.R. § 1208.6(c)-(e).

29. Further, there is nothing in the Bankruptcy Code that enables this Court to overrule the express provisions of 8 C.F.R. § 1208.6(a). Indeed, although Bankruptcy Code section 521(a)(3) provides that a debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title," a "[d]ebtor's duty to cooperate with the Trustee does not specifically require a debtor to waive privilege." *Coyle v. Coyle (In re Coyle)*, 538 B.R. 753, 763-64 (Bankr. C.D. Ill. 2015). Similarly, the Individual Debtor's duty to cooperate with the Trustee does not require the Individual Debtor to consent to (much less authorize this Court to authorize over the Individual Debtor's objection) the production of the confidential Asylum Application to the Trustee.

30. Finally, the Order provides for extreme relief in that it eviscerates the protections afforded to the Individual Debtor by 8 C.F.R. § 1208.6(a) while providing no authority for its holding. In the Order, this Court merely concluded that "the Trustee and his counsel need access to the Motion for Summary Judgment and the Asylum Application to prosecute the Malpractice

---

[6] In addition, the Asylum Application does not relate to the Investigation Activities of the Trustee – *i.e.*, investigation of the Debtor's assets, financial condition, and administration of the estate—a fact that the Trustee's counsel repeatedly represented to the Court during the hearings concerning the Consent Order. Moreover, in light of the fact that the Subpoena had already been served when the Trustee's counsel made those representations in open court, the Subpoena cannot reasonably be construed to seek to compel Clark Hill to produce the Individual Debtor's Asylum Application. Simply stated, since the Trustee represented in open court that the Subpoena did not seek to compel the production of the Asylum Application, and the Court entered an order expressly relying on that representation; *see Exhibit B*, at 67:20-68:5; the Trustee is judicially estopped from arguing that the Subpoena compels (or even permits) Clark Hill to produce the Asylum Application. *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 620 (2d Cir. 2012) ("[T]he [Supreme] Court has stated that judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

10

Action" and the "production of these documents to the Trustee and his counsel will not result in personal harm to the Individual Debtor." (Order, at 2). Without meaningful analysis, the extreme relief granted by the Order is unwarranted and unsupported.

### b. The Individual Debtor Will Likely Suffer Irreparable Injury Absent a Stay and the Balance of Hardships Tip in Favor of the Individual Debtor

31. Absent a stay, the Individual Debtor will likely suffer irreparable injury, or at the very least, the balance of hardships tips in his favor.

32. The purpose of 8 C.F.R. § 1208.6(a) is to "'safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin.'" *Al Otro Lado, Inc.*, No. 17-cv-02366-BAS-KSC, 2017 U.S. Dist. LEXIS 210401, at *22-23, *quoting* U.S. DEP'T OF HOMELAND SECURITY, U.S. Citizenship & Immigration Servs. Asylum Div., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applications* (Oct. 12, 2011).

33. Authorizing the production of the Asylum Application in violation of 8 C.F.R. § 1208.6(a) harms the Individual Debtor because, with each additional entity that maintains a copy of the Asylum Application, the risk that the Asylum Application falls into the hands of individuals who wish to do the Individual Debtor harm (including the CCP and its agents) rises incrementally, as evidenced by the hack of Clark Hill's computer system. Despite their presumably best technological and security efforts, the Trustee and his counsel maintaining copies of the Asylum Application increases the potential for hackers to obtain copies of the Asylum Application—just as Clark Hill's maintenance of the Asylum Application did—further infringing on the Individual Debtor's privacy and potential safety.

34. In similar circumstances involving privileged documents – protected from disclosure not by Federal regulations but by doctrines such as the attorney-client privilege – courts have held that forced disclosure of material may bring about irreparable harm. *See*, *e.g.*, *In re Search Warrant Issued June 13, 2019)*, 942 F.3d at 175 ("In ruling that the law firm had not established a likelihood of irreparable harm, the district court erred as a matter of law by affording insignificant weight to the … principles protecting attorney-client relationships. Crucially, the court failed to recognize that an adverse party's review of privileged materials seriously harms the privilege holder." (internal citation omitted)); *United States v. Philip Morris, Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) ("Although [the party] 'has not asserted any specific irreparable injury that would occur' if it produced the [document], the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of the privileged documents to an adverse party is clear enough.") *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) ("We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm."); *Kelly v. Ford Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954, 963 (9th Cir. 1997) ("[O]nce putatively protected material is disclosed, the very 'right sought to be protected' has been destroyed." (quoting *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3rd Cir. 1984))); *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1491 (9th Cir. 1989) ("In view of the irreparable harm a party will suffer if erroneously required to disclose privileged materials or communications, courts have recognized the propriety of using mandamus for the review of orders compelling discovery in the face of assertions of absolute privilege.").

35. Here, this Court is authorizing the production of confidential and sensitive information relating to the Individual Debtor's Asylum Application over his objection and in violation of Federal regulations. The Individual Debtor is therefore being deprived of his rights

under 8 C.F.R. § 1208.6(a) and, once Jenner & Block produces the Debtor's Asylum Application to the Trustee, the Individual Debtor's rights under 8 C.F.R. § 1208.6(a) will be destroyed. A stay is necessary to prevent such harm, particularly considering the clearly erroneous nature of the relief granted in the Order.

### c. The Trustee Will Not Suffer Substantial Injury if this Court Stays the Order

36. Even assuming the Trustee and his counsel need the Asylum Application to evaluate the ultimate merits of the Malpractice Action (and the Individual Debtor submits that they do not), the Trustee's investigation of the Malpractice Action will likely take longer than it will for the Individual Debtor to obtain appellate review of the Order—which would eliminate any hypothetical injury to the Trustee from a stay that might otherwise justify declining to stay the Order. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d at 181-82 (delay in investigation did not outweigh potential disclosure of privilege materials); *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) ("A mere assertion of delay does not constitute substantial harm.").

37. Moreover, the Malpractice Action itself is currently stayed until *at least* December 30, 2022. *See Wengui v. Clark Hill Plc, et al.*, Case No. 12-cv-3195 (D.D.C.), at Doc. No. 98 (the parties' "Joint Status Report" stating that they "request that the Court continue its stay until December 30, 2022"), 12/1/22 Minute Order ("The Court ADOPTS the parties' 98 Status Report and ORDERS that they shall file a further JSR by December 30, 2022. So ORDERED by Judge James E. Boasberg on 12/1/2022"). Insofar as the Malpractice Action itself was already stayed pending an adjudication of the Individual Debtor's Motion for Protective Order, a stay to seek appellate review of the Order (and thus a likely further stay of the Malpractice Action) will not harm the Trustee.

### d. The Public Interest Supports a Stay

38. The public interest militates in favor of a stay. In issuing the Order, this Court deviated from (and seemingly failed to consider) the protections afforded to the Individual Debtor under 8 C.F.R. § 1208.6. Indeed, the Individual Debtor's privacy rights in the Asylum Application enshrined by Congress in the INA were effectively eliminated.

39. The chilling effects of such an order are profound, as persons may be dissuaded in seeking much-needed bankruptcy protection to avoid producing "information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin." *Al Otro Lado, Inc.*, No. 17-cv-02366-BAS-KSC, 2017 U.S. Dist. LEXIS 210401, at *22-23, *quoting* U.S. DEP'T OF HOMELAND SECURITY, U.S. Citizenship & Immigration Servs. Asylum Div., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applications* (Oct. 12, 2011).

40. One of the purposes of bankruptcy proceedings is "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Williams v. United States Fid. & Guar. Co.*, 236 U.S. 549, 554-55, 35 S. Ct. 289, 290 (1915). It is simply unjust to force an individual bankruptcy debtor to choose between obtaining such relief and protecting himself and his family from retaliatory measures by government authorities or non-state actors.

41. Accordingly, the Individual Debtor respectfully submits that it is in the public's interest for this Court to stay the Order (and thereby allow the Individual Debtor to obtain meaningful appellate review of the Order), which would eliminate the chilling effects that might

befall would-be or actual debtors with contemplated, pending, or completed asylum applications at least until an appropriate appellate review has been completed.

## IV.   CONCLUSION

42.   For the reasons set forth above, this Court should (a) issue a stay of the Order pending the Individual Debtor's appeal of the Order and (b) grant the Individual Debtor such other and further relief as justice requires.

 

THE DEBTOR,
HO WAN KWOK

By:   */s/ Aaron A. Romney*
Aaron A. Romney (ct28144)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th floor
Bridgeport, CT  06605
Telephone: (203) 368-4234
Facsimile: (203) 368-0903
Email: aromney@zeislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ *Aaron A. Romney*
Aaron A. Romney (ct28144)