UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                          *   Case No. 22-50073 (JAM)
                               *
     HO WAN KWOK,              *   Bridgeport, Connecticut
                               *   September 12, 2022
                    Debtor.    *
                               *
* * * * * * * * * * * * * * *  *


TRANSCRIPT OF MOTION FOR ODER
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:                AARON ROMNEY, ESQ.
                               Zeisler & Zeisler, P.C.
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604

For the Creditor, Pacific      PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity     O'Melveny & Myers LLP
 Fund L.P.:                    Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               ANNECCA SMITH, ESQ.
                               Robinson & Cole
                               28 Trumbull Street
                               Hartford, CT  06103

For the Chapter 11 Trustee:    NICHOLAS A. BASSETT, ESQ.
                               Paul Hastings LLP
                               200 Park Avenue
                               New York, NY  10166


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

APPEARANCES Cont'd:

| For the Chapter 11<br> Trustee: | PATRICK R. LINSEY, ESQ.<br>Neubert Pepe & Monteith, PC<br>195 Church Street<br>New Haven, CT  06510 |
|---|---|
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the Creditors Committee: | IRVE GOLDMAN, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States<br>  Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For the Creditor,<br> Logan Cheng: | JAY MARSHALL WOLMAN, ESQ.<br>Randazza Legal Group, PLLC<br>100 Pearl Street, 14th Floor<br>Hartford, CT  06103 |

1      (Proceedings commenced at 2:16 p.m.)

2            THE COURTROOM DEPUTY:  Case Number 22-50073, Ho

3      Wan Kwok.

4            THE COURT:  Okay.  Good afternoon.  If we could

5      have appearances for the record, starting with the Chapter

6      11 Trustee, please?

7            MR. DESPINS:  Good morning, Your Honor.  Luc

8      Despins, Chapter 11 Trustee.

9            THE COURT:  Good afternoon.

10           MR. BASSETT:  Good after -- sorry.  Good

11     afternoon, Your Honor.  Nick Bassett from Paul Hastings on

12     behalf of the Chapter 11 Trustee.

13           THE COURT:  Good afternoon.

14           MR. LINSEY:  Good afternoon, Your Honor.  Patrick

15     Linsey, local counsel of the trustee.

16           THE COURT:  Good afternoon.

17           MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

18     Peter Friedman of O'Melveny and Myers on behalf of PAX.

19           THE COURT:  Good afternoon.

20           MR. ROMNEY:  Good afternoon -- is someone else

21     speaking?

22           MS. SMITH:  This is Annecca smith of Robinson and

23     Cole, also Connecticut counsel on behalf of PAX.

24           THE COURT:  Good afternoon.  Mr. Romney?

25           MR. ROMNEY:  Good afternoon, Aaron Romney, Zeisler

4

1    and Zeisler in behalf of the debtor.

2              THE COURT:  Good afternoon.  Mr. Goldman.

3              MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

4    Goldman, Pullman and Comley for the Creditor's Committee.

5              THE COURT:  Attorney Claiborn.

6              MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

7    Claiborn for the U.S. Trustee.

8              THE COURT:  Good afternoon.  And, Mr. Wolman.

9              MR. WOLMAN:  Good afternoon, Your Honor.  Jay

10   Wolman of Randazza Legal Group for creditor, Logan Cheng.

11             THE COURT:  Good afternoon.

12             I think we've taken everyone's appearances at this

13   point then, so we'll proceed.

14             MR. BALDIGA:  Your Honor, William Baldiga, Brown

15   Rudnick.

16             THE COURT:  Oh, I'm sorry.  I didn't see you

17   anywhere.

18             MR. BALDIGA:  Not a problem.

19             THE COURT:  Do you -- I don't see Mr. Baldiga.

20             THE COURTROOM DEPUTY:  He must be on his phone.

21             THE COURT:  Okay.

22             THE COURTROOM DEPUTY:  He's on the phone.

23             THE COURT:  Oh, okay.  You're participating by

24   phone, Mr. Baldiga.

25             MR. BALDIGA:  Yes.

1          THE COURT:  Okay.  Sorry.  That's why I didn't see

2     you.  In any event, good afternoon.

3          So today, our hearing today is the continued

4     hearing on the motion for an order providing that control of

5     the privilege is passed to the trustee upon appointment and

6     related relief.  We've had two hearings on the trustee's

7     motion, August 30 and September 6th.

8          When we were here last, the Chapter 11 trustee and

9     the debtor's counsel had submitted revised proposed orders

10     with regard to the motion that the trustee had filed,

11     providing that control of the privileges had passed to him.

12     We had some discussions about those proposed orders during

13     our last hearing.  Those proposed orders were filed shortly

14     before the hearing on September 6th, which is what I asked

15     for, but I did not have an opportunity to fully review them

16     before our continued hearing on September 6th.

17          I know the parties then submitted orders on

18     September 7th, which essentially showed -- well, I should

19     say the trustee submitted a supplemental exhibit showing the

20     differences between the trustee's proposed order and the

21     debtor's proposed order, and that was at ECF 835, and then

22     the debtor proposed a summary of disputed issues in a list

23     form at ECF Number 836.

24          Have the parties had any further discussions

25     regarding the trustee's motion for order providing that

1     control of privileges passed to the trustee upon

2     appointment?

3          MR. DESPINS:  Yes, Your Honor.  Luc Despins,

4     Chapter 11 Trustee.

5          I also wanted to make sure Your Honor had a chance

6     to look at something we filed Friday afternoon, which is

7     Docket Number 846, which is -- which added two provisions

8     that we believe should address the debtor's issues, but --

9     and there's been a lot of back and forth since then as late

10    as this morning, and what I think would make sense at this

11    point would be for Mr. Bassett to take the Court through

12    what these two provisions that were added on Friday, what

13    they do, what they're supposed to address, and then see --

14    take the Court through what issues we believe have been

15    resolved, and because I believe some have been resolved, not

16    all unfortunately, but some have been resolved, to save the

17    Court some time.

18         So I would -- with Your Honor's permission, I

19    would turn it over to Mr. Bassett to take Your Honor through

20    this.

21         THE COURT:  That's fine.  Thank you.  Mr. Bassett.

22         MR. BASSETT:  Yeah.

23         THE COURT:  I'm now looking at 846.  Do you want

24    me to be looking at 846?

25         MR. BASSETT:  Yes, Your Honor.  And again, for the

1    record, Nick Bassett from Paul Hastings on behalf of the

2    trustee.  I think Your Honor --

3              THE COURT:  Why don't we pull up -- why don't we

4    pull up 846 so everyone's looking at the same document at

5    the same time?  Okay?

6              MR. BASSETT:  Sure.  And then, Your Honor -- oh, I

7    apologize.

8              THE COURT:  Go right ahead.

9              MR. BASSETT:  I was just going to say that I would

10   suggest going to Page 13 of 19 of the PDF, which would be

11   Exhibit B to what we filed, because that contains the

12   redline that I think will be easiest for us to use.

13             THE COURT:  13 of 19?

14             MR. BASSETT:  That's correct, Your Honor.  It

15   should say Exhibit B on it.

16             THE COURT:  I see.

17             MR. BASSETT:  And then if you go to the next page,

18   it will be the first page of the redline.

19             THE COURT:  I see.  Thank you.  So then we'll turn

20   to Page 14 of 19 right now.  Okay.

21             MR. BASSETT:  Perfect.

22             THE COURT:  Go right ahead.

23             MR. BASSETT:  So, Your Honor -- thank you, Your

24   Honor.

25             And before I dive in and walk Your Honor through

1    the changes, just a bit of further context.

2          So after the hearing that we had last week, we sat

3    down internally and sort of thought over what we had heard

4    from the debtor at that hearing, and also the comments and

5    the discussion that occurred with the Court.

6          So over a couple of days after the hearing last

7    week, we endeavored to put together this revised proposed

8    order that in our mind was specifically designed to address

9    what we understood to be really the key concerns that the

10   debtor had referenced, and this was our attempt to really

11   kind of bridge the gap and specifically to address some of

12   the concerns that had been raised regarding the sort of

13   balancing test that we've been discussing and some of the

14   specific issues regarding waiver and otherwise that had come

15   up in the discussions with the Court.

16         Now the last point on process I'll just raise is

17   that we had sent this revised proposed order, or actually a

18   version slightly different from it, but that contained most

19   of these changes, on Thursday evening.  We were hoping to

20   discuss that on Friday.

21         We didn't have the opportunity to discuss it with

22   the debtor's counsel on Friday, so we went ahead and

23   submitted our revised proposed order, which is what we're

24   looking at here at Docket 846.

25         But the Court on Friday -- because we wanted to

1    make sure that Your Honor had some time with it had you been

2    able to take a look at it between then and now, that said,

3    we also had continued to have a discussion with counsel for

4    the debtor.

5         Attorney Romney and I had a call yesterday, and

6    then we received a markup containing additional comments

7    from them this morning, which I think he -- I will let him

8    explain it to you, but I think it goes to further evolve

9    some of our issues.

10        But before going to that, I think it would be

11   helpful for me to just walk you through, Your Honor, the key

12   changes that we've made.  I think we could go ahead and

13   scroll down.  There are no material changes until we get to

14   Paragraph 7.

15        Paragraph 2, there's just a definitional

16   clarification that is not material on -- when we get to

17   Paragraph 7, which is on Page 17 of 19 of the PDF, this is

18   our first major change that we included, again, to address

19   some of the issues that were raised.

20        Now specifically what this would do is -- although

21   the earlier paragraphs of the order remain the same in terms

22   of defining the scope of the trustee privileges that have

23   passed to the trustee and that those paragraphs make clear,

24   that privileges related to assets of the estate to the

25   debtor's financial condition and liabilities, and to post

1    petition -- the post-petition administration of the estate,

2    of the sort of default rule if you will, is that those

3    privileges would pass to the debtor, or to the trustee,

4    rather, and I think that, you know, gives us the

5    clarification that we are seeking and will really help

6    inform the path forward as to what may or may not be

7    withheld by the debtor in discovery.

8          But what Paragraph 7 does, is it addresses

9    specifically the concern that the debtor had raised that,

10    you know, he believes, although the documents outside some

11    criminal issues, have not really been identified, he

12    believes that there could be documents that would contain

13    information that's privileged that if disclosed, could

14    result in harm to the debtor.

15          So what we've tried to do here is build in a

16    provision that would allow the debtor, in a situation where

17    he believes going forward, has a good faith belief that

18    there is information in a document or testimony that sort of

19    now applies to both documents and information, I think

20    that's agreed by the parties.

21          But to the extent the debtor thinks there is

22    information that if disclosed to the trustee -- information

23    that's privileged, could result in personal harm to the

24    debtor, then there is a process by which we would submit

25    that issue to the Court for resolution.

1          Specifically, the debtor would first log the

2    document, would identify on that log the personal harm that

3    is the subject of the claim of privilege, and then after

4    that, either party could seek relief from the Court, but

5    importantly we've built in an expedited process for that to

6    happen, just so we're not, you know, taking a ton of time to

7    resolve these issues as they arise.

8          And importantly, at the end of this paragraph,

9    Your Honor, after we describe the process for review that we

10   would envision on an expedited basis, which could include

11   in-camera review of documents by the Court, we have language

12   clarifying or adding some important clarity around the sort

13   of definition of personal harm, or what we mean by that.

14          And what this language at the end makes clear, is

15   that the debtor cannot take a position that he would be

16   personally harmed by revealing documents that could result

17   in the recovery of estate assets.  You know, this goes back

18   to what we talked about at the last hearing, where we're

19   concerned that the debtor could take the position that if

20   we're seeking documents from a relative or an affiliate that

21   relates to their assets, which we think could be property of

22   the estate, or assets that are purportedly theirs that we

23   think should be property of the estate, you know, the debtor

24   could not claim in response to that, that he would be harmed

25   because he would take the position that those assets are not

1    property of the estate.  So that's sort of generally what

2    that clarification at the end of this paragraph is designed

3    to address.

4           The one other thing I would say on Paragraph 7,

5    Your Honor, is that, you know, we did hear the Court loud

6    and clear.  I think Your Honor had made a couple of comments

7    at the last hearing that it would be nice to resolve this

8    privilege issue up front once and for all so we don't have a

9    series of disputes that continue to pop up later in the

10   case.

11          We agree with that.  We think -- you know, we

12   drafted this paragraph to sort of strike a balance between

13   that concern and also the concerns that the debtor had

14   addressed of not being able to anticipate every potential

15   document that could relate to -- or that could cause

16   personal harm that disclosed to this -- gets kind of a

17   narrow ability for those types of issues to be resolved on a

18   case-by-case basis in the future, but without opening up the

19   door for any and all privilege issues to have to be decided

20   on a case-by-case basis.

21          So that's Paragraph 7.  I can answer questions

22   about that before getting to Paragraph 8 if Your Honor would

23   like but --

24          THE COURT:  Well, my question is, is -- Mr.

25   Romney, are you agreeing to the language in Paragraph 7?

1        MR. ROMNEY:  Your Honor, we agreed with the

2    language of Paragraph 7, as well as the other changes that

3    Mr. Bassett is getting into, significantly bridged the gap.

4    We had returned a redline of this document to the trustee's

5    counsel this morning.  I had hoped to get it last night but

6    it didn't happen, and as Attorney Bassett was saying, we

7    were speaking as recently as -- actually about an hour ago.

8        We do have a -- there are still some differences.

9    I believe personally, and I'm sharing my view here, that I

10   believe that if given a little bit more time we would be

11   able to bridge those gaps because they are getting to be

12   many, but not all, but in many respect, semantical in

13   nature.

14       My understanding is that the trustee's counsel

15   would prefer to just submit this, have the debtor's counsel

16   submit its redline to that document, and then the Court will

17   rule in whatever way the rules fit.  The judge -- the Court

18   can fit.

19       So to answer your question, no, we are not in

20   complete agreement, but we are substantially closer to an

21   agreement than we have ever been with respect to this issue.

22       And as I said, I do believe at this point, given

23   how far we've come, that we could get there with a little

24   more time, but I also do want to make clear that the

25   trustee's position is that it would like to submit this

14

1   issue to the Court.

2           THE COURT:  I didn't hear the last thing you said.

3   You said, I want to make clear that the trustee's position,

4   and then I couldn't understand what you said.

5           MR. ROMNEY:  Is that it's time to submit this to

6   the Court and not attempt to take a little bit more time to

7   get a completely consensual order.

8           THE COURT:  Okay.

9           MR. DESPINS:  Your Honor -- Your Honor, this is

10  Luc Despins.  Two seconds on that.

11          I mean, of course, you know, if we could take --

12  the point is, we sent them that markup on Thursday

13  afternoon.  That's a -- to me, that's a long time between

14  now and then.

15          And, you know, if they need another half hour to

16  resolve the issues, okay, but I -- my fear is that now we're

17  talking about another week and it just -- you know, a bunch

18  of us don't -- you know, we don't think that's appropriate.

19          By the way, Your Honor, I received an email from

20  Mr. Goldman saying that he was -- he was dropped from the

21  call and he's not able to dial back in, so whoever controls

22  the Zoom should let Mr. Goldman back in because he's not

23  able to join for some reason.

24          THE COURT:  Thank you.  Thank you.  We'll see if

25  we can get him back in.

15

1          THE COURTROOM DEPUTY:  He's not in the waiting

2     room.

3          THE COURT:  He's not in the waiting room.  Yeah,

4     he's not able to connect for some reason.  I don't know why.

5          (Pause)

6          THE COURT:  Okay.  Thank you, Mr. Despins, for

7     that update.

8          Mr. Romney, I'd like to have Mr. Bassett go

9     through the rest of the changes, and then we're going to

10    talk about -- you know, you say that you're substantially

11    there.  I want you to make sure that you're telling me

12    ultimately what your issues still are.  And I mean, I --

13    you're absolute entitled to have your issues, but as I said

14    last week at the hearings, I need to understand what you're

15    objecting to.  Okay?

16         So just, would you keep that in mind, please, when

17    Mr. Bassett is going --

18         MR. ROMNEY:  Understood, Your Honor.

19         THE COURT:  -- through the rest of the changes?

20         Okay.  All right.  So now we just went through

21    paragraph -- and I'm not saying I don't have questions by

22    the way, but I want to hear from the parties first.

23         So we've now gone through Paragraph 7.  So should

24    we go to Paragraph 8, Mr. Bassett?

25         MR. BASSETT:  Yes, Your Honor.  I'm happy to walk

16

1    through Paragraph 8.  I think this one will be a shorter

2    discussion.

3            As I'm sure Your Honor recalls from the hearings

4    that we've had, one of the issues that the debtor has raised

5    on a number of occasions is a concern about a quote/unquote,

6    waiver of a privilege occurring.

7            And I think what we've always maintained is that

8    the relief we are seeking is about control of the privilege,

9    and that would mean, obviously that the trustee going

10   forward, to the extent privilege pass -- privilege passes to

11   it, would have the control to, you know, do what it wants

12   with that privilege going forward.

13           But what we have done in this Paragraph 8 to

14   address specifically the concern that has been addressed --

15   that has been raised about waiver, is to say that for

16   purposes of this order at this time, when we talk about

17   passage of control of privileges to the trustee, all that

18   means right now is that the trustee will be able to review,

19   access, and otherwise use all of the documents and

20   information subject to the claimed privileges.

21           So what that means is, we could use that for all

22   purposes of our investigation.  To the extent that the

23   trustee determines based on information he has received that

24   he believes there are claims worth pursuing, for example, to

25   recover state assets, we could use all of the information,

1    including the privileged information that we've received for

2    that purpose, but we would not be entitled to further waive

3    the privilege over those documents by, for example, filing

4    them on the public docket so that the rest of the world can

5    see the privileged information.  We would not, you know,

6    share privileged documents with third parties.

7            So the trustee would have access, but would not be

8    able to effect a waiver by providing the privileged

9    information to third parties.

10           And we've also built in this paragraph, a

11   mechanism for being able to file under seal, and then to the

12   extent that down the road, the trustee does feel that it is

13   appropriate for him to waive a privilege over a particular

14   document, he would be able to come to the Court and request

15   that relief, and we have envisioned that that would happen

16   under the same expedited type of process that we've outlined

17   in the prior paragraph.

18           Lastly, Your Honor, Paragraph 9, that is basically

19   adopting language that the debtor had proposed in its last

20   order to the Court.

21           The debtor had a -- had this language in its order

22   where it wanted to clarify that nothing in this order was

23   designed to impact the issues that are involved in the

24   Court's other order related to the corporate governance

25   motion, and in particular, the UBS litigation.

1        So this paragraph just incorporates that and makes

2   explicit that nothing herein is intended to effect the

3   privileges at issue in that litigation, which again are

4   subject to the other order.

5        So those were the changes, Your Honor.  I won't

6   speak for Attorney Romney, but I do think that this new

7   version of the order does resolve a lot of the other issues

8   that we had identified and that we had submitted to the

9   Court in our issues list at Docket 835, as I mentioned

10  before as an example.

11       You know, the issue is to whether this applies to

12  both documents and information that's been resolved.  It

13  applies to both documents and information, there's issues

14  with some of the wording in Paragraph 2 that I think are now

15  resolved in light of the new Paragraphs 7 and 8 that we've

16  added.

17       So I do think the issues are substantially more

18  narrow, but based on the markup that we've received this

19  morning, as Mr. Despins said, you know, I think our view is

20  that there are still issues that remain and we want to have

21  a decision on those issues at this stage.

22            THE COURT:  Okay.  Thank you.  Mr. Romney?

23            MR. ROMNEY:  Thank you, Your Honor.

24            THE COURT:  With regard to --

25            MR. ROMNEY:  Aaron Romney --

1    THE COURT:  -- with regard to paragraphs --

2    MR. ROMNEY:  -- Zeisler and Zeisler for the

3    debtor.

4    THE COURT:  Hold -- hold on a second.  Hold on a

5    second, Mr. Romney.

6    With regard to Paragraph 7 of this marked up

7    document, on Page 17 of 19 of ECF 846, what --

8    MR. ROMNEY:  Yes.

9    THE COURT:  -- objections does the debtor have

10   with regard to the language in Paragraph 7?

11   MR. ROMNEY:  With regard to Paragraph 7,

12   specifically we felt that the word personal home is

13   ambiguous, and I'm going in no particular order here other

14   than the order with which they show up on the redline that I

15   am looking at that the Court does not yet have.

16   But looking at the case law, we believe that the

17   language, the balancing test would be just home to the

18   debtor rather than personal home.

19   With regard to the submission and the timing of a

20   privilege log, as well as the information that should be on

21   any privilege log, we believe there should just be a

22   reference to Local Rule 26(e), rather than anything that at

23   least arguably not applies that, such as requiring the log

24   contemporaneously with the production deadline.  We don't

25   believe that's consistent with applicable case law.

1          And probably the most significant issue in

2     Paragraph 7 is the trustee's language that would require all

3     privilege issues submitted through this process to be

4     considered on an expedited basis and to be briefed within

5     four days.  It's -- it was debtor's position that the

6     federal and local rules exist for a reason, and that's

7     because people deserve a reasonable amount of time to

8     respond to issues that are brought before them.  Sometimes

9     counsel have other cases.  Sometimes counsel have families.

10    Sometimes counsel need to sleep.  And four days, just

11    because as distinguished from a particular situation that

12    requires adjudication in, you know, an expedited basis, we

13    don't believe that that is reasonable or fair.

14          As Attorney Bassett and I were discussing as

15    recently as earlier this afternoon, there is probably a

16    middle ground on this issue.  And by probably, I believe

17    there is, meaning there is a number between 4 and the 14

18    that I think the debtor could live with, but we've -- you

19    know, the clock ran out on us and here we are.  Four days is

20    just cutting it a bit close.

21          The events of the last two days are a perfect

22    illustration for that.  The trustee pointed out, they got us

23    a proposed order on Thursday night, and I personally

24    couldn't look at that proposed order until Saturday morning,

25    and that's because I had two deadlines on Friday evening in

1    another case, and that happens sometimes and it's not being

2    dilatory or not giving it the attention it deserves.

3            It's just that human beings can only do one thing

4    at once, particularly when we're talking about complex

5    issues that have significant implications on the party's

6    rights, and we believe that four days just because it falls

7    under this order and no showing of cause, is simply not fair

8    or consistent with applicable law.

9            THE COURT:  Okay.  So you're saying to me that if

10   you had another day, you think you could work this provision

11   out?

12           MR. ROMNEY:  This particular provision, I am

13   reasonably -- I am at least reasonably confident that this

14   provision, these are -- this is one provision of a few, but

15   this is probably the most significant one.  I believe we

16   could work out a reasonable time line sometime between the 4

17   and the 14 that the default order is.  And yes, I do.

18           MR. BASSETT:  Your Honor.  It's Nick Bassett from

19   Paul Hastings.

20           On that particular point, Attorney Romney is

21   correct.  We did have a discussion about whether there might

22   be a middle ground between regular notice and the expedited

23   notice that we proposed in this language that we're looking

24   at.  I think what we said was four days.  You know, Attorney

25   Romney said, you know, under the rules you would typically

22

1    have 14.  Can we go somewhere in the middle and say maybe,

2    you know, eight days to respond, and then, you know, three

3    days for a reply?   Something to that effect.  I think that

4    would be fine.

5          But just to be clear, I mean, the reason for

6    making this expedited is that there are a lot of parties

7    from whom the trustee is seeking discovery where these

8    issues could potentially arise.

9          As the Court, knows, we've served subpoenas on a

10   number of law firms who used to represent or continue to

11   represent the debtor, and we're going to, I imagine, get

12   privilege logs and information from those firms at varying

13   times.

14         And you know, it could be that as those issues

15   arise, we need to avail ourselves of this procedure.  If it

16   happens a number of times, we just can't be in a position

17   where our investigation is unduly delayed because we have to

18   do through regular notice every time, even though these

19   issues by that point will be very, very familiar to the

20   Court, given how much we've already spent -- how much time

21   we've already spent talking about it.  So that's really the

22   logic for it.

23         But as I said, you know, it sounds like we can --

24   we can bridge the gap on the timing issue by going to

25   something in the middle.

1           THE COURT:  Thank you.  All right.  With regard to

2       Paragraph 7, Mr. Romney, so it sounds to me as

3       though -- I want to make sure the record is accurate.

4           Number 1, the last -- during the last hearing that

5       we had on this issue on September 6th, your colleague stated

6       that this was an advisory opinion and it could be deemed to

7       be that.

8           I'm not going to enter an order if your client is

9       going to take the position that this is an advisory opinion.

10      So you need to clarify for the record whether or not at the

11      entry of this order you're going to appeal it as an advisory

12      opinion, because if you are, then I'm not going to enter

13      this order.  I'm going to have to write a written decision

14      and I think you've already abandoned that argument and

15      waived that argument anyway.

16          When I went back and looked at your affidavit in

17      -- that you had submitted, it was actually a declaration

18      that you had submitted after -- to just talk about the meet

19      and confer, you state in your declaration that you swore to

20      that you wanted the process to be dealt with in an omnibus

21      fashion, and that you didn't want it to be on a piece meal

22      fashion.

23          And so I want to make sure that you're not

24      changing that position because I -- I'm not going to proceed

25      if you're going to assert contrary positions with regard to

24

1   this motion.

2          So what's your position with regard to the entry

3   of an order on the trustee's motion regarding the

4   privileges?

5          MR. ROMNEY:  So the -- and I want to make sure I

6   choose my words very carefully here so that I'm precise.

7          I unquestionably signed a declaration that stated

8   my view that this -- that the resolution of these issues

9   would be substantially more efficient if the parties were

10  aware of which line of authority or even subline of

11  authority.

12         The standard to the Court was imposing that I felt

13  that the -- there would be a lot less disputes down the line

14  related to individual documents if we knew the standard the

15  Court was going to apply.

16         I believed that to be the case.  I still believe

17  that to be the case, and that's why I signed that

18  declaration and that's why we've been working with trustee's

19  counsel to get to, you know -- to get to a place that

20  whether the Court adjudicates or the parties ultimately

21  consent to that makes everybody's lives, including the

22  Court's, more efficient down the line.

23         Now fast forward to last week.  I believe you're

24  referring to Attorney Henzy made the comment about that this

25  could be construed as an advisory opinion.  I believe in the

1    first hearing concerning this matter, I actually raised the

2    issue that it could be -- but I didn't know, and that

3    arguably it wasn't advisory opinion, and that's why --

4    that's why I'm on this side of the bench and the Court is on

5    the other side, because I honestly don't know the answer to

6    that as to whether somebody could determine that this is

7    advisory opinion.

8           But I think really to what the Court's question

9    was, I mean, we have -- I stated, hopefully clearly at the

10   last hearing, we are consenting -- we have -- we would have

11   consented to the entry of a proposed order that we had

12   submitted as of the last hearing.

13          I intend, if I am permitted by the Court following

14   the conclusion of this hearing, unless the determine is made

15   that was -- the determination is made that we're going to

16   try and take a little bit more time to work this out.

17          But barring that, I would like the Court's

18   permission to submit yet another order that the debtor would

19   consent to entry, and I believe if the debtor's consent to

20   entry, it would have waived its right to appeal.

21          And while I have not specifically discussed the

22   question with our client as to how -- have you waived any

23   appellate rights, have you not waived any appellate rights.

24          The only thing I can say as I sit here right now

25   is that the differences between the proposed orders, the one

26

1    that I would propose to submit and the one that has been

2    submitted, I would imagine that the only issues we were

3    reserving our rights to appeal, even in theory, are to the

4    extent that there are differences between the two orders,

5    and I do have authority to submit -- to consent to the

6    proposed order that I already submitted.  So in that respect

7    --

8          THE COURT:  But the proposed order that you've

9    already you've just said is changed again.

10         MR. ROMNEY:  Correct, and by it will have changed,

11   I mean it will be closer to some -- there will be less

12   differences between it and the trustee's proposed order.

13         So I guess what I'm saying, perhaps not

14   articulately, is I would imagine that the only thing a party

15   could appeal having consented to entry of an order, would be

16   the few -- issues that were materially different than to

17   what they had consented.

18         And in that respect, I wouldn't -- I just don't --

19   I believe that the debtor is going to consent to an order on

20   this issue.  And if the issues is that the Court enters an

21   order that's not -- is materially different than what the

22   debtor was prepared to consent to, then any hypothetical

23   appeal would have to relate to issues to which the debtor

24   was not consenting.  Does that make sense, Your Honor?

25         THE COURT:  Possibly.  But here's the problem.

1    You have, as does Mr. Despins and Mr. Bassett, an ongoing

2    obligation to act in good faith with regard to discovery

3    disputes.  You had your meet and confer.  You filed a

4    declaration in which you said that you thought it should be

5    -- proceed -- these issues of privilege should proceed in an

6    omnibus fashion.

7         After you filed that declaration, the trustee

8    filed his motion to proceed with these issues in an omnibus

9    fashion.

10        If someone files an appeal saying that this -- an

11   entry of any order on this motion is an advisory opinion,

12   I'm not sure that's good faith.  In fact, I think it's close

13   to not being good faith, because otherwise you shouldn't

14   have engaged in all of these discussions, including filing

15   orders with the Court.

16        Now I think you should -- you party -- the two of

17   you should continue to work on a consensual order, and I'm

18   going to give you some time to do that until tomorrow

19   afternoon.  It sounds -- but I am not going to put this

20   court or anyone else in the position of having to deal with

21   appeals on issues that relate to the administration of this

22   estate, that with regard to the production of documents in

23   which you've already stated in an order that you submitted

24   to this Court, a proposed order that you just said that your

25   -- you had authority to consent to, that at least the post

28

1     petition information would be made available to the Chapter

2     11 Trustee.

3               And you've also stated that you believe there's a

4     balancing test that had to come into play.  And so when you

5     talk about the three buckets of the types of law out there,

6     with regard to the attorney/client privilege in an

7     individual case, and specifically -- and there are no cases

8     that have been found by anyone in an individual Chapter 11

9     case with regard to the privilege passing to the trustee,

10    but there are cases, and you're consenting to that, that

11    they're on a post-petition basis from the time that your

12    client voluntarily subjected himself to the jurisdiction of

13    this Court, and to the date that the trustee became the

14    trustee, the Chapter 11 Trustee, that all that information,

15    the privileges pass -- the control of that passes to the

16    trustee.

17              Now the trustee had carved out what you asked him

18    to carve out.  The trustee has asked -- specifically carved

19    out of this order what you've specifically asked him to

20    carve out.  And so why I asked you what you still object to,

21    you and Mr. Bassett, I'm going to give you some time to

22    finalize that.

23              But I will say one thing I don't understand about

24    Paragraph 7, and I don't know if this is your language, Mr.

25    Romney, or Mr. Bassett's language, or both, but paragraph --

1   the fourth line says, "The trustee then 1, the debtor or his

2   counsel as applicable."

3       The debtor can't act in this court on his own.  He

4   has his -- he acts through you.  And I'm not having filings

5   made by the debtor on his own while he has counsel.  So I

6   want that to be very clear.  The debtor has no right in this

7   court to file some separate kind of document that isn't

8   signed by you as his counsel and submitted under Rule 11

9   standards.

10      MR. ROMNEY:  Understood, Your Honor.  I don't

11  believe the intent of this line -- and I --

12      THE COURT:  Well, then let's take --

13      MR. ROMNEY:  -- understand the --

14      THE COURT:  -- out the debtor and say the debtor's

15  counsel.

16      MR. BASSETT:  Well, Your Honor.  Your Honor, this

17  is Nick Bassett from Paul Hastings.

18      But I do think that may have been our language,

19  but I think the intent behind it was to address the fact

20  that we have served subpoenas on the debtor through his

21  counsel in this case.

22      THE COURT:  Then his counsel will have to

23  interpose the objections, not the debtor.

24      MR. BASSETT:  Understood, Your Honor.  But we've

25  also served subpoenas on a number of other law firms that

1    either currently or formerly represented him, so I think

2    Attorney Bassett is --

3         THE COURT:  Then they'll have to interpose their

4    own objections.  They're not going to --

5         MR. BASSETT:  Right.  What --

6         THE COURT:  -- Mr. Kwok isn't going to be

7    interposing any objections for any of his professionals.

8         MR. BASSETT:  Understood, Your Honor.  So we can

9    -- we're on the same page.  We can clarify that.  That's not

10   -- that's not what we had intended by this language, but I

11   understand the Court's concern.

12        THE COURT:  Yeah.  I'm not going to spend any time

13   on that.  Then the debtor's counsel shall by the applicable

14   production deadline, log all such documents in accordance

15   with the requirements of the District Court Local Rule

16   26(e).  Okay?  That's going to happen.

17        Then with regard to the deadlines, the dates, it

18   sounds like, Mr. Bassett, you might be able to work with Mr.

19   Romney to change those dates and give Mr. Romney a little

20   more time between the 4 days and the 14 days and Rule 26,

21   correct?

22        MR. BASSETT:  Yes, that's correct, Your Honor.

23   And the only other thing I wanted to mention is, I didn't --

24   I think Mr. Romney, when you had asked him to articulate his

25   issues with Paragraph 7, he had mentioned the expedited

31

1      process as one of three.

2              I just didn't want my silence on the other two to

3      be misunderstood.  We do have an issue which we will

4      continue to discuss with Attorney Romney regarding his

5      proposal that the word personal be removed.  We do think

6      that is an important word.  We're happy to discuss it with

7      him, but we don't consent to simply removing it.

8              And I think he had also mentioned that with

9      respect to the privilege log requirement, he wanted to

10     strike the language saying by the applicable production

11     deadline, and then he also wanted to strike the language

12     that follows the reference to the local district court rule

13     concerning the identification of information necessary to

14     support the claim for personal harm.

15             We also take issue with those changes and we do

16     think it's important to get privilege logs at the time of

17     production, given the context of this case.

18             We also think given the way this carve out or this

19     sort of safety valve provision is drafted, that it's

20     absolute necessary for us to understand what the particular

21     personal harm being claimed is.

22             So again, I just wanted to clarify that we do have

23     issues with those two other aspects of Paragraph 7 that

24     Attorney Romney addressed.

25             THE COURT:  Well, with regard to the personal harm

1      issue and the term personal, Mr. Romney, I haven't found any

2      cases that talk about the balancing test in an individual

3      case.  They all talk about harm to the debtor.

4              The debtor in this case is a person.  So the harm

5      that would be suffered would be personal harm.  So I'm not

6      persuaded by your argument that the term personal shouldn't

7      be in there.

8              The debtor is a person.  The only case law that

9      talks about harm to the debtor talks about it in the context

10     of a corporate case.  So I don't understand what your issue

11     is with the term personal.

12              MR. ROMNEY:  Your Honor, I -- in the case -- in

13     the context of the cases that discuss the balancing test in

14     the individual debtor situation, the language just says harm

15     to the debtor.

16              Now I agree with you, when you're talking about a

17     person, harm to the debtor is harm to debtor, not somebody

18     else or some business that the debtor no longer, you know,

19     owns or controls, or never owned or controlled, but it's --

20     again, my comment there was to track the language in cases

21     that the -- that the parties have both cited, frankly,

22     talking about balancing the harm to the debtor.  And I think

23     that the connotation of personal there is that it has a

24     connotation of physical injury as distinguished from

25     economic injury.  That maybe --

33

1    THE COURT:  I did completely disagree with you.

2    MR. ROMNEY:  -- that's not correct.

3    THE COURT:  The term personal is never defined as

4    physical injury.  Where do you -- where is a case that says

5    that?

6    MR. ROMNEY:  Well, I suppose where it most comes

7    from is that the practice group in many firms called

8    personal injury is almost exclusively physical injury to an

9    individual.

10    THE COURT:  If that -- if that -- this doesn't say

11    personal injury, Mr. Romney.  It says personal harm.  That's

12    what it says.  So I don't think your --

13    MR. ROMNEY:  And --

14    THE COURT:  -- argument on that issue is

15    persuasive.

16    With regard to the other issues, you and Mr.

17    Bassett should continue to try to work those out.  I agree

18    with you, Mr. Romney, and I think Mr. Bassett has already

19    stated that he agrees that he will increase the period of

20    time for the motion and the privilege log, but the -- where

21    is the case law that says the privilege log doesn't need to

22    be produced at the time that you're objecting to the

23    production of documents?

24    MR. ROMNEY:  My understanding is -- not my

25    understanding.  My very clear recollection is that there is

1    a long line of cases from the District of Connecticut

2    talking about that a privilege log must be produced within a

3    quote/unquote, reasonable period of time from the production

4    date under the circumstances.

5              THE COURT:  Okay.  Well, then I'll set a --

6              MR. ROMNEY:  I don't have those cases --

7              THE COURT:  -- reasonable period of time if you

8    both can't agree to one, but I'm telling you right now a --

9    if someone is going to assert a privilege with regard to all

10   this information that you've already consented the entry of

11   an order with regard to these categories of information, the

12   administration of the estate, the assets of the estate, and

13   the claims to and against or by the estate, you've already

14   consented to the entry of that order, then I will set the

15   reasonable time if you and Mr. Bassett don't come up with

16   one.

17             But it's going to be short because we are not

18   going to bog down this case with motion practice and

19   discovery disputes.  It's not going to happen.

20             Your client came to this Court voluntarily.  He

21   has exposed himself to the jurisdiction of this Court, and

22   under the balancing test that you both cited, as you've just

23   stated, he has exposed all of his assets and liabilities,

24   including claims brought against him and claims that he has

25   brought to the administration of the estate in this court.

1          So I would suggest that you and Mr. Bassett come

2    up with a date by which that privilege log needs to be filed

3    after the date for compliance of the subpoena, but I am

4    telling you right now, it's not going to be a long period of

5    time.

6          It's not going to be the 30 days that you have to

7    object to the materials in this subpoena.  That's not going

8    to happen.  It's not going to be an additional 30 days for a

9    privilege log.  Not going to happen.

10          So, Mr. Bassett, have you served these subpoenas

11    --

12          MR. ROMNEY:  Your Honor, may I be --

13          THE COURT:  -- yet?  Have you served these

14    subpoenas yet?

15          MR. BASSETT:  Your Honor, generally speaking, the

16    answer is yes, we have.  I have colleagues who have a

17    comprehensive list and would know better than I do.  There

18    may be a few of the subpoenas that for whatever reason we're

19    still addressing service issues.  But because there was a

20    number of them, we were serving them as quickly as we can.

21    Some had to be served in different ways, but generally

22    speaking, yes, we've certainly served the subpoena on the

23    debtor himself.

24          THE COURT:  Okay.  So the 30-day period for

25    production of documents has -- the clock has begun.

36

1    MR. BASSETT:  It has begun and I think is about to

2    expire in some cases.  Yes, Your Honor.

3    THE COURT:  Okay.  Mr. Romney, I think I cut you

4    off.  You wanted to say something.  I'm sorry, I was asking

5    a question to Mr. Bassett, but go ahead.

6    MR. ROMNEY:  Yeah.  Thank you, Your Honor.

7    The reason -- and I -- why I think that the

8    reasonable standard applies to privilege log is because in

9    any given case, depending on the volume of electronically

10   stored information that any particular recipient of a

11   subpoena is holding, in some cases, it may be minor.

12   In some it may be voluminous and there's going to

13   require search terms, and someone's going to have to go

14   through these documents to see what would implicate the

15   balancing test and what should simply just be turned over.

16   And in many cases, if not most, it may be most or

17   all the documents in possession of counsel.  I just don't

18   know, and the reason for the reasonableness standard, I

19   believe, is if somebody is clearly acting in good faith and

20   they're producing on a rolling basis, and they're logging

21   what they -- what they have flagged within those

22   productions, I think it's just an acceptance of the reality

23   of the volume of information in certain cases.

24   But as long as people are being reasonable and

25   being transparent and working as diligently as they can,

1    that it makes more sense to be reasonable than it does to

2    impose an artificial time line that may make sense in some

3    or all cases, but might not in a particular situation.  And

4    that's why I believe that the great weight of the authority

5    has said that it is a reasonableness case with specific

6    time.  It's not an effort to sandbag anyone.

7         But the debtor has no -- delaying does not help

8    this debtor to the extent it helps anybody else.  The issues

9    in this case are going to be decided.  They're either going

10   to be decided by the parties working something out, or the

11   Court is going to rule and somebody is going to be happy in

12   any given situation and someone's not going to be.

13        But this is not a situation where -- certainly, I

14   can't ascertain any reason why anybody would benefit from

15   only -- from delaying just for the sake of delaying.  Either

16   the trustee is going to get information or not, and assets

17   are going to be determined to belong to somebody and not

18   somebody else, but it's -- there's just no incentive that I

19   see to delay, and I believe that the debtor -- while anyone

20   can say what they want about anybody, but certainly to my

21   firm, and perceiving -- before my firm was involved for the

22   debtor, I believe that people are working diligently to try

23   and provide information and dealing with a tremendous amount

24   of requests for it from a number of different directions,

25   and I believe that -- well, I know that as long as Zeisler

1    and Zeisler and myself are working with the debtor, as well

2    as the other professionals who I've worked with on the

3    debtor's behalf, we are going to do a job, we are going to

4    be reasonable, and we are going to be diligent.

5         And I don't believe that anything has been done

6    that should lead to a presumption that anything but that

7    will happen, and for that reason I think the customary

8    reasonable language does belong in this order.

9         THE COURT:  Okay.  I understand what you said, but

10   you also said that things will move along.  So then it won't

11   be arbitrary for me to set a date for that compliance with

12   the privilege log.  And then you will add a provision that

13   if for some reason you can't meet that privilege log date,

14   you'll file a motion seeking an extension of that time.

15   That's what you'll do, because we are going to set a date

16   for that.

17        These Rule 2004 motions have been out there for

18   more than 30 days.  The trustee has -- was appointed 60 days

19   ago.  It was more than 60 days ago.  It was clear that the

20   trustee was going to need to do investigation into this

21   estate and its assets.  It's also clear that everyone that

22   was involved in the case before the appointment of the

23   Chapter 11 trustee knew that that would have to occur.

24        This is -- so if we want to talk about

25   reasonableness, the reasonableness of these issues and the

1    time to comply with the cooperation with the trustee and to

2    provide the trustee with the information the trustee needs

3    to administer the estate, has at least been pending for 60

4    days.  Actually, 64 days.

5            And if you go back to the time when the trustee --

6    United States Trustee's office filed the motion for the

7    appointment of an examiner, that was in February of this

8    year.

9            So the reasonableness period of time has been

10   running since, the best case scenario for your client, July

11   8th, and the worst case scenario since February -- I don't

12   know.  I can look at the docket, but I would say 28th or the

13   very beginning of March.

14           So for anyone to make an argument that there

15   somehow -- it's unreasonable, and they haven't been given a

16   reasonable time to comply with these requests is not

17   persuasive.

18           So the reasonableness standard has already been in

19   place, and you will -- you and Mr. Bassett will talk about a

20   date, and it will be subject to extension if some party can

21   come in and show why they need the extension.  But there is

22   going to be a date in the order.

23           MR. ROMNEY:  Understood, Your Honor, but, if I

24   may?  With respect to particular document requests, I don't

25   think that it would be reasonable to assume that the

1    recipients of subpoenas would be searching for responsive

2    documents and identifying which ones are privileged and

3    which ones are not, and which ones belong on a privilege log

4    before they've been served with subpoenas.

5              THE COURT:  I understand that.

6              MR. BASSETT:  Your Honor.

7              THE COURT:  But I just -- that's why I asked Mr.

8    Bassett, did he serve the subpoenas.  And what I also said

9    was, the 30-day period is what's applicable to the

10   subpoenas.

11             So when someone gets the subpoena, they're on

12   notice that they're being subpoenaed, and they have 30 days

13   to comply with the subpoena.

14             And what the order is going to say is that after

15   the period of time to comply with the service of the

16   subpoena passes, they will have whatever amount of days you

17   both agree to.  Ten, 14, days to produce a privilege log on

18   what they claim is privileged, and they would have had to

19   have file a motion to quash or a protective order before

20   then, timely, in accordance with the Federal Rules of Civil

21   Procedure.  And if they don't do that, then they will have

22   waived their right to do all those things.  Okay?

23             But the privilege log, when they -- they have an

24   obligation when they're reviewing the documents, to comply

25   with a subpoena to put those documents aside that they claim

1  are privileged, or at least partially privileged, and then

2  create that log.  And so that's how this is going to

3  proceed.

4          MR. ROMNEY:  Understood, Your Honor.  And my only

5  point, and I thank you for the clarity, I think that's a

6  very reasonable approach.  My only point was sometimes when

7  you're dealing with large volumes of documents, it takes

8  some more time to get through everything, depending on the

9  number of bodies one (indiscernible) to it and the number of

10  documents involved, but you're certainly correct.  The time

11  to --

12          THE COURT:  The Federal Rules of -- the Federal

13  Rules of Civil Procedure address all your concerns, Mr.

14  Romney.

15          MR. BASSETT:  And, Your Honor.  Your Honor, I

16  apologize, but I do have to just provide one quick response

17  to something that Mr. Romney keeps emphasizing.

18          When he talks about the burden involved of

19  reviewing many responsive documents and logging a large

20  number of documents, I just want to put this in a bit of

21  context.

22          You know, we had a meet and confer with the debtor

23  on discovery last week, and what we are being told so far,

24  which we frankly find very hard to believe and we are still

25  exploring, is that they don't believe that the debtor has

42

1     very many responsive documents at all, because he does not

2     communicate in writing.

3             So I just -- this idea that there is some

4     voluminous production out there that needs to be reviewed

5     and therefore it's not reasonable to produce a privilege log

6     in a short period of time, that's just not consistent with

7     what we've been told and I don't want the Court to be under

8     a misimpression as to what we expect to find out when we get

9     a production from the debtor.

10            THE COURT:  Understood.

11            MR. ROMNEY:  If I may?  Aaron Romney, Zeisler and

12    Zeisler.

13            My understanding is that when requests are made

14    for communications between the debtor and insert third

15    party, that that includes his agents and with respect to the

16    communications between the debtor's agents and the third

17    parties, that's really what we're getting into, where we're

18    thinking there's going to be large volumes.

19            The statement that I made to Mr. Bassett, and now

20    we're yet again getting into the substance of a meet and

21    confer, that I'd rather avoid those conversations in court

22    because the point of meeting and conferring is to try and

23    work these things out.

24            But the statement that I made with regard to the

25    debtor as an individual speaking with others and my concern

43

1   with the volumes of documents would be -- third persons

2   acting on behalf of the debtor or a third party if there's

3   an allegation that there is someone acting on behalf of the

4   debtor.

5          To the extent that the trustee is solely seeking

6   communication regarding the debtor personally and not his

7   agents, I agree.  That should not be a voluminous or

8   burdensome task.

9          THE COURT:  Well, I understand your point, but

10   obviously you don't represent the debtor's agents, and

11   whomever represents the debtor's agents will have to address

12   those issues.

13          MR. ROMNEY:  Understood, Your Honor, but it is

14   information that at least in theory pertains to the debtor.

15   And I say at least in theory because we're here talking

16   about a concept and not particular documents.

17          THE COURT:  Which is what you asked the trustee to

18   do when you filed your declaration and at your first meet

19   and confer, which was to deal with these issues on an

20   omnibus basis, and that's what we're doing.  And now we're

21   doing it on a limited omnibus basis.

22          We're doing it in connection with the post-

23   petition assets, administration of the estate, and claims

24   asserted by and against the debtor, and the Rule 2004

25   Examinations, all of which have been granted.  No appeal

1  from any of those orders were taken.  Mr. Bassett has told

2  me that some, if not all, of the subpoenas have served --

3  been served, and therefore, any party's rights with regard

4  to these issues are governed by applicable Federal Rules of

5  Civil Procedure, and will be by this order.

6          So with regard to Paragraph 7, the change that I

7  expect that -- you both to make is to change the wording

8  that  -- it should just say the debtor's counsel shall, by

9  the applicable production deadline, log all such documents.

10  Then you're going to talk about dates.  You're going to talk

11  about this expedited basis provision being extended for a

12  period of time, and then you're going to talk about a date

13  by which the privilege log will be produced.

14          With regard to Paragraph 8, what -- are there any

15  other objections, Mr. Romney, you have with regard to

16  Paragraph 7?

17          MR. ROMNEY:  Not in addition -- not beyond that

18  which I've identified on the Court -- on this record.

19          THE COURT:  Okay.  Thank you.  With regard to

20  Paragraph 8, what objections does the debtor have with

21  regard to Paragraph 8?

22          MR. ROMNEY:  The objection with respect to

23  Paragraph 8, I don't -- they're minor and really fine point

24  that I don't think are -- will be objectionable.

25          One of them is that where the language refers to

45

1    the trustee not being entitled to waive any trustee

2    privilege, for example, by disclosing privileged documents

3    or information on any public docket.

4           We have a qualification in there that this should

5    apply to, in open court as well, meaning -- spoken word in

6    court as distinguished from written word on the docket.

7           I don't expect that to be controversial, but I

8    wouldn't put words -- or try to put words in anybody's

9    mouth, but we just hadn't gotten around to discussing that

10   point yet.

11          THE COURT:  Mr. Bassett, that seems reasonable to

12   me.  Does that seem reasonable to you?

13          MR. BASSETT:  It does, Your Honor.

14          THE COURT:  Okay.  So that takes care of --

15          MR. BASSETT:  There is no issue with it.

16          THE COURT:  -- that issue.  What else, Mr. Romney?

17          MR. ROMNEY:  There's a reference to -- immediately

18   after the language that I just read, there's a reference to

19   the docket in this case.  Same concept, any public docket,

20   meaning if it's in an adversary proceeding, if it's in

21   litigation, this -- the rule would apply until the Court

22   orders otherwise.

23          THE COURT:  Mr. Bassett?

24          MR. BASSETT:  No issue with that either, Your

25   Honor.

46

1          THE COURT:  Okay.  Thank you.  Mr. Romney, what

2     else, on Paragraph 8?

3          MR. ROMNEY:  The only other issue with 8 is to the

4     extent the last sentence refers to the timing issue in the

5     prior paragraph that we've just discussed we would -- we

6     would incorporate whatever changes into this paragraph,

7     although to the extent that it's just referring to the

8     expedited dates of -- and that is defined by agreement in

9     Paragraph 7, there would not -- there would likely not be

10    any reason to further change Paragraph 8 as a result of that

11    issue.

12         THE COURT:  Okay.  Thank you.  The two of you are

13    going to talk about that expedited basis provision.  So as

14    you said, if you agree, if you both agree, then they'll --

15    let's assume you both agree, then the debtor has no

16    objections to anything in Paragraph 8 because we've just

17    resolved them.

18         MR. ROMNEY:  Correct, Your Honor.

19         THE COURT:  Okay.  Great.  Thank you.  Now what

20    about Paragraph 9?  I think that's your language, Mr.

21    Romney, isn't it?

22         MR. ROMNEY:  That is -- I believe it is, and

23    whether there were any minor changes to it or not, there's

24    no objection to Paragraph 9.

25         THE COURT:  Okay.  Great.  So then as far -- you

47

1   have a few things to address in Paragraph 7, and if you

2   agree on the expedited basis timing in Paragraph 7, then

3   they'll have no objection to Paragraph 8.  So 8 and 9 are no

4   longer at issue.

5          So it's only Paragraph 7.  And then obviously,

6   there may be something else that Mr. Romney wants to add,

7   Mr. Bassett.  I obviously don't have the redline version of

8   the document he sent to you today, but I'm going to ask you

9   both to work together on that and it should be, Mr. Romney

10  -- I mean, this sounds like there's a very good chance that

11  this will be a consented to order.  Do you agree with that?

12          MR. ROMNEY:  I do agree with that, Your Honor.

13          THE COURT:  Okay.  Thank you.

14          So tomorrow, we have hearings during the day, and

15  our last hearing is at, I believe 3:00 p.m.  Well, hold on

16  just a second and I will confirm that for you.

17          It is.  It's at 3:00 p.m. tomorrow, and I

18  anticipate, although I could be wrong, of course, that that

19  will not take a great deal of time.  So I could hear this --

20  I could continue this matter until 3:30 tomorrow afternoon

21  via Zoom if -- does anyone have any issue with that?

22          MR. ROMNEY:  Your Honor, that should be fine.  I

23  personally have somewhere I need to be for a childcare

24  issue.  I need to leave the office at 4:30 tomorrow.

25          THE COURT:  Okay.

48

1          MR. ROMNEY:  I don't have these very often, but I

2     do tomorrow.  I imagine one of my colleagues, if we went

3     beyond 4:30, one of my colleagues could step in, but I do

4     have to leave at 4:30, hard stop, tomorrow.

5          THE COURT:  Well, I'm trying -- I understand that,

6     and I appreciate that.  I'm trying to give you as much time

7     to work with Attorney Bassett as possible.

8          The other thing we could do is we could schedule

9     it earlier at say, 1:30.  But you decide.  I mean, I don't

10    -- you can -- you and Mr. Bassett can talk offline, and you

11    can let the clerk's office know what time you would prefer.

12    I have different pockets of time in between hearings, and

13    then -- why I was saying 3:30, because I think everything

14    will be done for the day.  But you could -- you could, you

15    know  -- we could start as early as noon, 1:00, or 1:30, but

16    I didn't want you to feel time pressure -- as much time

17    pressure.  So that's why I went to 3:30.

18          But you and Mr. Bassett talk, and then you'll let

19    the courtroom staff know.  And whatever time you all want to

20    do it, whether it's at noon, 1:00, 1:30, or 3:30, we can --

21    or, you know, I -- whatever you -- whatever you decide.

22    Okay?  But I -- it sounds to me like we are going to have a

23    consensual order, so I would like that to occur tomorrow.

24    Okay?

25          MR. ROMNEY:  Understood, Your Honor.

49

1          MR. BASSETT:  Thank you, Your Honor.

2          THE COURT:  All right.  Is there anything else we

3    need to address this afternoon?

4          MR. DESPINS:  Yes, Your Honor.  Luc Despins,

5    trustee.

6          You'll recall at the last hearing, we provided the

7    Court with reference to the complaint filed in the UK to

8    show that the debtor owned Ace Decade.

9          And since then, we've discovered another reference

10   even better than that, which is the debtor's own statement

11   under oath at the 341 hearing, and we just filed this before

12   the hearing.

13         We've shown you extracts of that 341 hearing that

14   lasted hours, so we didn't want to burden the Court with

15   everything.  But you'll see in there, the question is, Do

16   you have a question in Ace Decade?  And essentially he says,

17   yes, I own it.  Are there any other owners?  No.

18         So the point is, I'm not asking you to rule on

19   that today.  What I would like to see the Court order,

20   because we already have an order in place on this, that's

21   the corporate governance order, that direct the debtors to

22   respond to this issue within, you know, three or four days

23   because now the evidence on this issue that he owns it is as

24   fresh as during this case, in the 341 hearing in April of

25   2022.

50

1          THE COURT:  I apologize, but I don't remember -- I

2     do remember, obviously, the governance order, but what do

3     you mean that they need to respond?  Have they been --

4          MR. DESPINS:  Yeah, they need to respond because

5     -- yeah, we sent them a letter.  By now, it's been ten days,

6     15 days, but said, hey, you own this entity as Ace Decade,

7     and we want you to turn over to us all the books and records

8     and the stock, the same way you have to do in Javer (ph) --

9          THE COURT:  I see.

10         MR. DESPINS:  -- based on the corporate governance

11    order.  And Mr. Henzy said, I'm very busy, I have other

12    clients and all that, and we said, still rightly so, you've

13    just hit me with this, Mr. Despins, so let me review the

14    complaint and all that, and I -- my point is, I wanted Your

15    Honor to see that there's much more recent testimony from

16    the debtor saying, I own it.  I'm the sole owner of this

17    entity.

18         And of course I'm not asking you now to say, yes,

19    you're right, but rather you should set a deadline for the

20    debtor's counsel to respond to my letter of, you know,

21    before the Labor Day weekend, the Thursday before the Labor

22    Day weekend that says, provide us with the documents.

23         And so we're asking the Court to set a response

24    deadline at this point, given this new -- I think.  I don't

25    know how they would contest that, that that 341 testimony

1    that he owns this entity; he's the sole owner.

2           THE COURT:  Okay.  I have a recollection now of

3    what you're talking about so I will take a look at what was

4    filed on the docket today, and consider your request for the

5    deadline for the debtor to respond to the issues regarding

6    that entity.

7           MR. DESPINS:  Thank you, Your Honor.

8           THE COURT:  Thank you.  All right.  Is there

9    anything further we need to address this afternoon?

10          All right.  So, Mr. Romney and Mr. Bassett, when

11   you -- when you're talking, I would appreciate it if

12   possible, for you to send an email to the courtroom deputy

13   box tonight so that the courtroom deputy knows by early

14   tomorrow morning at the latest, what time this hear -- when

15   I say early, by, you know, 8:30, 9:00 tomorrow morning, what

16   time this hearing is going to be continued to tomorrow, and

17   then we will go from there.  Okay?

18          We have hearings starting at 10:00 in other cases.

19   As I told you, I have some time.  Noon, 1:00, 1:30, 3:30.

20   You decide, but if you would please -- even if you don't

21   send that email to the courtroom deputy until tomorrow

22   morning, I would ask that it be sent at least between 8:30

23   and 9:00 a.m., please, so that the courtroom deputy can

24   schedule things appropriately.

25          At the moment, the docket will indicate that the

52

1    hearing was held today, and it's continued to tomorrow at a

2    time to be determined.  Okay?

3            MR. ROMNEY:  Understood, Your Honor.  Thank you.

4            MR. BASSETT:  Thank you, Your Honor.

5            THE COURT:  Okay.  Thank you.  All right.  I think

6    that that takes care of everything in the Kwok case today,

7    so we will see the parties tomorrow, and court is adjourned

8    for today.

9            MR. ROMNEY:  Thank you.

10           THE COURTROOM DEPUTY:  Court is adjourned.

11       (Proceedings concluded at 3:29 p.m.)

12

13           I, CHRISTINE FIORE, court-approved transcriber and

14   certified electronic reporter and transcriber, certify that

15   the foregoing is a correct transcript from the official

16   electronic sound recording of the proceedings in the above-

17   entitled matter.

18

19   *Christine Fiore*

20   _____        December 18, 2022

21     Christine Fiore, CERT

22       Transcriber

23

24

25