# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT BRIDGEPORT DIVISION

## EXHIBIT LIST FOR HO WAN KWOK, DEBTOR

IN RE:

HO WAN KWOK,
      DEBTOR.

CHAPTER 11

CASE No.:  22-50073 (JAM)

**ECF No. 913** Motion of Chapter 11 Trustee for Entry of Order Holding Debtor in Civil Contempt for Failure to Comply with Corporate Governance Rights Order filed by Douglas S. Skalka on behalf of Luc A. Despins, Chapter 11 Trustee

**HEARING DATE(S)**: November 16-18, 2022

**EXHIBITS SUBMITTED BY:** Ho Wan Kwok, Debtor

**ATTORNEY:** Eric Henzy

| EXHIBIT | DESCRIPTION | ID/FULL | SUBMIT DATE |
|---|---|---|---|
| B | Letter dated November 10, 2022 from Debtor to the director and nominee shareholder of Ace Decade Holdings Limited | FULL | 11/18/2022 |
| C | Ace Decade Holdings Limited Share Transfer Instrument signed by the Debtor. | FULL | 11/18/2022 |

| EXHIBIT | DESCRIPTION | ID/FULL | SUBMIT DATE |
|---|---|---|---|
| D | Ace Decade Holdings Limited Share Transfer Resolution signed by the Debtor.[1] | FULL | 11/18/2022 |
| E | Order Pursuant to Bankruptcy Code Sections 363, 521, 1108, and 1505, (A) Confirming That Chapter 11 Trustee Holds All of Debtor's Economic and Corporate Governance Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (C) Granting Related Relief (ECF No. 717). | FULL | 11/18/2022 |
| G | Motion of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 363, 521, 1108, and 1505, (A) Confirming That Chapter 11 Trustee Holds All of Debtor's Economic and Corporate Governance Rights in Debtor- Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (C) Granting Related Relief. | FULL | 11/18/2022 |
| H | Hearing Transcript dated August 1, 2022 Page 118, Line 13; Page 121, Lines 23-25 | FULL | 11/18/2022 |
| I | Hearing Transcript dated August 4, 2022, updated as of August 17, 2022 Page 47, Lines 15-17 Page 64, Lines 14 and 19-22 | FULL | 11/18/2022 |

---

[1] The Debtor denies that he is the director or nominee shareholder of Ace Decade. The Debtor has executed the i) Share Transfer Instrument, Exhibit C, and ii) Share Transfer Resolution, Exhibit D, and provided those documents to the Trustee to comply with the Trustee's demands. Those documents will have whatever legal force and effect that they will have based on the fact that the Debtor is not the director or nominee shareholder. In addition, the Debtor has hand delivered to the person who is the nominee shareholder and director of Ace Decade the letter with attached Share Transfer Instrument and Share Transfer Resolution marked as Exhibit B.

Ho Wan Kwok
373 Taconic Road
Greenwich, Connecticut 06831

November *10* 2022

Ms. Yanping (Yvette) Wang
Ace Decade Holdings Limited

*Via personal delivery*

Re:  *In re Ho Wan Kwok*, Case No. 22-50073 (JAM)
     Chapter 11 Trustee's Demand for Transfer of Shares of Ace Decade
     Holdings Limited

Dear Ms. Wang:

I am the Debtor in the above-referenced bankruptcy case pending in the United States Bankruptcy Court for the District of Connecticut. The appointed Chapter 11 Trustee, Luc A. Despins (the "Trustee"), has obtained an order from the Bankruptcy Court confirming that he holds all of the economic and corporate governance rights in entities that I control. The Trustee believes that I control Ace Decade Holdings Limited ("Ace Decade") and is requiring that I utilize that perceived control to direct you to execute the attached Share Transfer Instrument and Share Transfer Resolution. Therefore, in compliance with the Trustee's demands and to the extent that I may have any authority over Ace Decade, I hereby direct you to execute the attached Share Transfer Instrument and Share Transfer Resolution.

Very truly yours,

Ho Wan Kwok

Enc.

| | |
|---|---|
| CASE NO. | 2022-50073 |
| IN RE: | Ho Wan Kwok |
| VS. | |
| Debtor  EXHIBIT | B |
| DATE | IDEN. |
| DATE 11/18/2022 | EVID. |
| BY | P.E. |
| | Deputy Clerk |

AO 386-A

**ACE DECADE HOLDINGS LIMITED**
**incorporated in the British Virgin Islands**
**Company No. 1828656**
(the *Company*)

---

**SHARE TRANSFER INSTRUMENT**

---

I, Yanping (Yvette) Wang, of [*insert address*] (the *Transferor*) DO HEREBY transfer to **Luc A.**

**Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan Kwok**, of 200

Park Avenue, New York, New York 10166 (the *Transferee*), all shares of the Company standing

in my name in the share register of the Company.

This share transfer instrument is governed by British Virgin Islands law.


As witness the hand of the Transferor this _____ day of November, 2022.


Executed by                                           )
**Yanping (Yvette) Wang**                    ) _____
                                                          )

This share transfer instrument is not subject to stamp duty in the British Virgin Islands unless the Company or its direct or indirect subsidiaries holds real property within the British Virgin Islands. The Company will not treat the Transferee as the registered holder of any shares until the name of the Transferee has been entered in the share register of the Company.

# ACE DECADE HOLDINGS LIMITED
## incorporated in the British Virgin Islands
## Company No. 1828656
### (the *Company*)

---

### WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR OF THE COMPANY

---

WHEREAS the Company has received a share transfer dated November __, 2022 relating to the transfer of all shares in the capital of the Company (the *Shares*) executed by Yanping (Yvette) Wang in favour of Luc A. Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan Kwok, of 200 Park Avenue, New York, New York 10166 (the *Transferee*), together with a certificate representing the Shares (the *Certificate*).

I, the undersigned, being the sole director of the Company, DO HEREBY ADOPT the following resolutions:

1.      the transfer of the Shares be and is hereby approved;

2.      the Certificate be and is hereby cancelled;

3.      a new certificate relating to the Shares and signed by the director of the Company be issued under the common seal of the Company to the Transferee;

4.      the registered agent of the Company be and is hereby authorised and directed to update the Company's share register; and

5.      any of the foregoing which have been done on or before the date hereof be and are hereby adopted, ratified, confirmed and approved.

Yanping (Yvette) Wang hereby confirms that she is the Transferor and therefore has an interest in and connection with the transactions contemplated by these resolutions.

I have executed this director's resolution this __ day of November 2022.

_____

Yanping (Yvette) Wang – Director

**ACE DECADE HOLDINGS LIMITED**
**incorporated in the British Virgin Islands**
**Company No. 1828656**
(the *Company*)

---

## SHARE TRANSFER INSTRUMENT

---

I, Ho Wan Kwok, of 373 Taconic Road, Greenwich, CT 06831 (the *Transferor*) DO HEREBY

transfer to **Luc A. Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan**

**Kwok**, of 200 Park Avenue, New York, New York 10166 (the *Transferee*), all shares of the

Company standing in my name in the share register of the Company.

This share transfer instrument is governed by British Virgin Islands law.


As witness the hand of the Transferor this __10__ day of November, 2022.


Executed by
**Ho Wan Kwok**

<table>
<tr><td>CASE NO.</td><td>2022-50073</td></tr>
<tr><td colspan="2">IN RE: Ho Wan Kwok</td></tr>
<tr><td>VS.</td><td></td></tr>
<tr><td>Debtor</td><td>EXHIBIT    C</td></tr>
<tr><td>DATE</td><td>IDEN.</td></tr>
<tr><td>DATE 11/28/2022</td><td>EVID.</td></tr>
<tr><td>BY P.E.</td><td>Deputy Clerk</td></tr>
<tr><td>AO 386-A</td><td></td></tr>
</table>

This share transfer instrument is not subject to stamp duty in the British Virgin Islands unless the Company or its direct or indirect subsidiaries holds real property within the British Virgin Islands. The Company will not treat the Transferee as the registered holder of any shares until the name of the Transferee has been entered in the share register of the Company.

**Debtor's Exhibit C**

**ACE DECADE HOLDINGS LIMITED**
**incorporated in the British Virgin Islands**
**Company No. 1828656**
(the *Company*)

---

WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR OF THE COMPANY

---

WHEREAS the Company has received a share transfer dated November 18 2022 relating to the transfer of all shares in the capital of the Company (the *Shares*) executed by Ho Wan Kwok in favour of Luc A. Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan Kwok, of 200 Park Avenue, New York, New York 10166 (the *Transferee*), together with a certificate representing the Shares (the *Certificate*).

I, the undersigned, being the sole director of the Company, DO HEREBY ADOPT the following resolutions:

1.      the transfer of the Shares be and is hereby approved;

2.      the Certificate be and is hereby cancelled;

3.      a new certificate relating to the Shares and signed by the director of the Company be issued under the common seal of the Company to the Transferee;

4.      the registered agent of the Company be and is hereby authorised and directed to update the Company's share register; and

5.      any of the foregoing which have been done on or before the date hereof be and are hereby adopted, ratified, confirmed and approved.

Ho Wan Kwok hereby confirms that he is the Transferor and therefore has an interest in and connection with the transactions contemplated by these resolutions.

I have executed this director's resolution this ___ day of November 2022.

_____

Ho Wan Kwok – Director

| | |
|---|---|
| CASE NO. | 2022-50073 |
| IN RE: | Ho Wan Kwok |
| VS. | |
| Debtor | EXHIBIT    D |
| DATE | _____ IDEN. |
| DATE | 11/18/2022 ___ EVID. |
| | BY   P.E. |
| | Deputy Clerk |
| AO 386-A | |

UNITED STATES BANKRUPTCY CO
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

CASE NO. _____ 2022-50073

IN RE: Ho Wan Kwok

VS. _____

Debtor   EXHIBIT _____ E

DATE _____ IDEN.

DATE 11/18/2022 _____ EVID.

BY P.E. _____

Deputy Clerk

AO 386-A

---------------------------------------------------x
                                                   :
In re:                                             :   Chapter 11
                                                   :
HO WAN KWOK,                                        :   Case No. 22-5007
                                                   :
            Debtor.                                :
                                                   :
---------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363, 521, 541, 1108, AND 1505, (A) CONFIRMING THAT CHAPTER 11 TRUSTEE HOLDS ALL OF DEBTOR'S ECONOMIC AND CORPORATE GOVERNANCE RIGHTS IN DEBTOR-CONTROLLED ENTITIES, (B) AUTHORIZING CHAPTER 11 TRUSTEE TO ACT IN ANY FOREIGN COUNTRY ON BEHALF OF ESTATE, AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Mr. Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), for the entry of an order (this "Order"), pursuant to sections 363, 541, 1108, and 1505 of title 11 of the United States Code (the "Bankruptcy Code"), (a) confirming that the Trustee holds all of the Debtor's economic and corporate governance rights in all corporate entities owned and/or controlled by the Debtor (the "Debtor-Controlled Entities"), including, without limitation, Genever Holdings Corporation ("Genever (BVI)") and granting related relief, (b) authorizing the Trustee to act in any foreign country on behalf of the Debtor's estate (the "Estate"), and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court

**Debtor's Exhibit E**

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Motion is in the best interest of the Estate, its creditors, and all parties in interest; and due

and sufficient notice of the Motion having been given under the particular circumstances; and it

appearing that no other or further notice need be given; and upon all of the proceedings had

before this Court; and any objections to the relief requested herein having been withdrawn or

overruled on the merits; and after due deliberation and sufficient cause appearing therefor; and

for the reasons stated on the record at the hearings held on August 1, 2022 and August 4, 2022

with respect to the Motion and the additional relief sought through, among other things, the filing

of the revised proposed orders filed on July 31, 2022 [ECF No. 645], August 2, 2022 [ECF No.

671], and August 4, 2022 [ECF No. 681], it is hereby ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Effective as of entry of the order, dated July 8, 2022, granting the appointment of

Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523], the Trustee holds all of the

Debtor's economic and governance rights, for the benefit of the Estate, with respect to all

Debtor-Controlled Entities, including, without limitation, Genever (BVI).  For the avoidance of

doubt, the foregoing rights include the Trustee's asserted authority to replace any existing

officer, director, manager, or similar person of the Debtor-Controlled Entities.  As part of the

foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter

11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who

has been removed.

3.      In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the

Debtor is hereby directed to, respectively, (a) cooperate with the Trustee as necessary to enable

the Trustee to perform his duties, including, without limitation, the Trustee's investigation into

2

the assets of the Debtor, and (b) surrender to the Trustee all property of the estate and any

recorded information, including, without limitation, books, documents, records, and papers

relating to property of the estate (including, without limitation, his shares in Genever (BVI) and

all related corporate governance documents).  In furtherance of the Debtor's duties under

sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to:

(a)     fill in all missing information and execute each of (i) the share transfer

instrument, (ii) the director's resolution with respect to the Debtor's shares in

Genever (BVI), and (iii) the director's resolution related to the restoration of the

Genever (BVI), submission of the transfer-in pack, and appointment of a new

registered agent, in each case in the forms attached hereto as **Exhibit A** (leaving

such documents in undated form) and deliver, within two business days after

entry of this Order, such completed and executed documents to the Trustee (who

will then submit such documents to the new registered agent for Genever (BVI) in

the British Virgin Islands ("BVI")) as well as provide the Trustee with the

information necessary for the Trustee to complete the transfer-in pack of Harneys

Fiduciary, in the form included in **Exhibit A** hereto, within two business days

after entry of this Order (who will then submit the transfer-in pack to the new

registered agent for Genever (BVI) in the BVI); and

(b)     deliver, no later than five business days after entry of this Order, a copy of the

letter in the form attached hereto as **Exhibit B** (the "Letter to UK Counsel") to the

law firm of Harcus Parker Limited, former counsel to the Debtor in the litigation

styled *Kwok Ho Wan, Ace Decade Holdings Limited, and Dawn State Limited v.*

*UBS AG (London Branch)*, Case No. CL-2020-000345, pending in the High Court

3

of Justice, Business and Property Courts of England and Wales, Queen's Bench

Division, Commercial Court (the "UBS Litigation"), with a copy of such letter to

be delivered concurrently to the Trustee.  For the avoidance of doubt, the Trustee

shall be deemed, for all purposes, to be the owner of the Debtor's claims asserted

in the UBS Litigation.

4.      To the extent the Trustee's exercise of economic and governance rights with

respect to the Debtor-Controlled Entities is deemed to be outside the ordinary course of business,

such exercise by the Trustee of economic and governance rights is hereby approved, as there is

sound business justification for the exercise of such rights, including because the Trustee holds

all of the Debtor's economic and governance rights with respect to such entities for the benefit of

the Estate.  Notwithstanding the applicability of any of Bankruptcy Rule 6004(h) or any other

provisions of the Bankruptcy Rules or the Local Rules of Bankruptcy Practice and Procedure for

the United States Bankruptcy Court for the District of Connecticut to the contrary, the terms and

conditions of this Order shall be immediately effective and enforceable upon its entry, and any

applicable stay of the effectiveness and enforceability of this Order is hereby waived.  For the

avoidance of doubt, nothing in this Order authorizes the Trustee to sell, otherwise dispose of,

lease, or encumber any equity in Debtor-Controlled Entities or other assets of the Debtor.

5.      Pursuant to section 1505 of the Bankruptcy Code, the Trustee is hereby

authorized to act, as the Estate's foreign representative, in any foreign country on behalf of the

Estate in any way permitted by applicable foreign law for the purpose of (a) investigating,

collecting, and recovering assets of the Debtor located in foreign countries, including relief in

foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the

Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as

necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate

foreign corporate registries (or similar entities) holding such documents with respect to the

Debtor-Controlled Entities.  Without limiting the foregoing, the Trustee is authorized, pursuant

to section 1505 of the Bankruptcy Court, to request and obtain the corporate documents related

to Genever (BVI) from the appropriate BVI entity holding such corporate documents.

6.      The Debtor shall not interfere with, hinder, or delay the Trustee's exercise of the

authority under this Order, including any action taken or to be taken by the Trustee in a foreign

court on behalf of the Estate in furtherance of such authority.  To the extent the Debtor opposes

the Trustee's exercise of such authority, the Debtor shall be limited to seeking relief from this

Court (and not the relevant foreign court or other foreign entity, as the case may be) on notice to

parties in interest, to the extent the Debtor can show that he has standing to do so.

7.      In furtherance of the Trustee's exercise of the authority under this Order, the

Court respectfully requests the assistance of the foreign courts with respect to the Trustee's

exercise of corporate control over the Debtor-Controlled Entities, including, without limitation,

Genever (BVI).

8.      Nothing in this Order shall be deemed to authorize any particular action with

respect to Genever Holdings LLC ("Genever (US)") in its chapter 11 case pending before the

United States Bankruptcy Court for the Southern District of New York (the "Genever Court").

The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the

Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its

chapter 11 case.

9.      Nothing in this Order shall constitute a ruling or determination regarding the

validity or enforceability of the alleged trust agreement, purportedly dated February 17, 2015 and

executed by the Debtor, Genever (US), Genever (BVI), and Bravo Luck Limited (the "Alleged Trust Agreement"), or regarding any challenges to the Alleged Trust Agreement, and all rights of all parties in respect thereto are preserved.

10.     The Trustee is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated at Bridgeport, Connecticut this 10th day of August, 2022.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut

## **Exhibit A**

**Share Transfer Form and Director's Resolution**

# GENEVER HOLDINGS CORPORATION

**incorporated in the British Virgin Islands**
**Company No. 1862840**
(the *Company*)

---

### SHARE TRANSFER INSTRUMENT

---

I, **Ho Wan Kwok**, of [*insert address*] (the *Transferor*) DO HEREBY transfer to **Luc A. Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan Kwok**, of 200 Park Avenue, New York, New York 10166 (the *Transferee*), the 1000 shares of US$0.001 par value standing in my name in the share register of the Company.

This share transfer instrument is governed by British Virgin Islands law.

As witness the hand of the Transferor this _____ day of August, 2022.

Executed by                                    )
**Ho Wan Kwok**                           )      _____
                                                      )

This share transfer instrument is not subject to stamp duty in the British Virgin Islands unless the Company or its direct or indirect subsidiaries holds real property within the British Virgin Islands.  The Company will not treat the Transferee as the registered holder of any shares until the name of the Transferee has been entered in the share register of the Company.

**GENEVER HOLDINGS CORPORATION**
Incorporated in the British Virgin Islands
Company No. 1862840
(the *Company*)

WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR OF THE COMPANY

WHEREAS the Company has received a share transfer dated August _____, 2022 relating to the transfer of 1000 shares in the capital of the Company (the *Shares*) executed by Ho Wan Kwok in favour of Luc A. Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan Kwok, of 200 Park Avenue, New York, New York 10166 (the *Transferee*), together with a certificate representing the Shares (the *Certificate*).

I, the undersigned, being the sole director of the Company, DO HEREBY ADOPT the following resolutions:

1.      the transfer of the Shares be and is hereby approved;

2.      the Certificate be and is hereby cancelled;

3.      a new certificate relating to the Shares and signed by the director of the Company be issued under the common seal of the Company to the Transferee;

4.      the registered agent of the Company be and is hereby authorised and directed to update the Company's share register; and

5.      any of the foregoing which have been done on or before the date hereof be and are hereby adopted, ratified, confirmed and approved.

Ho Wan Kwok hereby confirms that he is the Transferor and therefore has an interest in and connection with the transactions contemplated by these resolutions.

I have executed this director's resolution this ……. day of August 2022.

_____

Ho Wan Kwok – Director



## Transfer-In Pack – BVI Business Company

| PART A - COMPANY | |
|---|---|
| **Name of the Company**<br>*(Note: Type the name underline{exactly} as listed on the Certificate of Incorporation/Registration)* | |
| **Former Name(s) (if applicable)** | |
| **Company Type** | |
| **Current Registered Agent** | Name of Registered Agent<br>Contact Person |
| **Contact Details** | Telephone Number · Email Address |
| **Method of Change of registered office and agent** | ☐ I will arrange for the outgoing agent to file the transfer<br>☐ I would like to arrange a 'forced transfer' by Harneys legal team |
| **Reason for change of registered office and agent** | |
| **Director's Resolution** | Please click here for a template resolution to change the Company's registered agent. |
| **Is the Company operating a non-profit/charity within the British Virgin Islands?** | ☐ Yes ☐ No |
| **Is the Company regulated by or registered with the Financial Services Commission?** | ☐ Yes ☐ No |
| **Purpose of Company**<br>*(Note: Please be specific "holding Company" or "investment fund" is insufficient)* | |
| | |
| **Intended nature of Company's business** | |
| Does the Company: | |
| 1. | receive more than 20% of its revenue in the form of cash or equivalents? | ☐ Yes ☐ No |

Is the company involved in:

| 2. | the arms, defence, military or nuclear industries? | ☐ Yes ☐ No |
|---|---|---|
| 3. | trading oil and gas, precious metals, gems, jewels, fine art, real estate or other collectors' items? | ☐ Yes ☐ No |
| 4. | the creation or provision of any one of the following: | ☐ Yes ☐ No |

4315095
**Effective October 2019**

# Transfer-In Pack – BVI Business Company



|  | | |
|---|---|---|
|  | • blockchain technology<br>• the creation or issuance of virtual assets or tokens<br>• any one of the following: the offering of an exchange between virtual assets and fiat currencies, the offering an exchange between one or more forms of virtual assets, the provision of services relating to the transfer of virtual assets, the provision of virtual asset custody services or the participation in, and provision of, financial services related to a virtual asset issuance or the sale of a virtual asset? |  |
| 5. | the production or trading of substances or products? | ☐ Yes ☐ No |
| 6. | gambling or the adult entertainment industry? | ☐ Yes ☐ No |
| 7. | activities that may have a major environmental impact (e.g. forestry, oil and gas, deep sea mining, quarrying or power generation)? | ☐ Yes ☐ No |

**Collective Investment**

| 8. | Is this vehicle being used to pool investor capital to generate capital or income returns? | ☐ Yes ☐ No |
|---|---|---|

**Structure**

| 9. | If this entity will form part of a group (including holdings of minority interests), please provide a chart indicating the position this entity will take in the structure. The chart should include all entities holding, directly or indirectly, an interest of 10% or more in this entity and any subsidiaries of the entity. If the structure has 3 layers or less then copies of the Register of Members of each entity through to the ultimate parent maybe provided as an alternative to a structure chart. |
|---|---|

If you have answered **YES** to any of the questions above, please provide details.

If the intended nature of the Company's business is not identified above, please provide details.

**Country(ies) of intended business activities**
*(Note: Please include location of customers, distributors and bank accounts.)*

**Source of funds**
*(Note: Please provide details of the source of funding for the initial activities of the Company. You may be asked to provide supporting documentation.)*

## PART B - ECONOMIC SUBSTANCE

The Company may be required to have adequate substance' in the BVI.

*Please click here to review Harneys guidance on economic substance requirements. If you have any queries please liaise with your usual Harneys contact.*

**Economic Substance Financial Reporting Period**



*Transfer-In Pack – BVI Business Company*

Default reporting periods depend on the date of incorporation. If you have elected to use an economic substance reporting period end that is not your default date please tick here, and confirm the date of your reporting period end:

| ☐ | We have formally notified the ITA of a change to our economic substance reporting period, our current reporting period end is: | [dd/mm/yyyy to dd/mm/yyyy] |
|---|---|---|
| ☐ | We would like to apply to make a change to our default reporting period. Harneys is able to arrange this notification – we will contact you to discuss what is possible to achieve and provide a quote. | |

If no box is ticked, the default reporting period will apply.

**Does Company conduct:**

| 1. | banking business? | ☐ Yes ☐ No |
|---|---|---|
| 2. | distribution and service centre business? | ☐ Yes ☐ No |
| 3. | financing and leasing business? | ☐ Yes ☐ No |
| 4. | fund management business? | ☐ Yes ☐ No |
| 5. | headquarters business? | ☐ Yes ☐ No |
| 6. | holding company business? | ☐ Yes ☐ No |
| | Please specify the types of asset(s) that the Company is intending to hold. | |
| | Please provide details of any other legal entities in which the Company will hold interests (e.g. shares, partnership interests, etc.) | |
| 7. | insurance business? | ☐ Yes ☐ No |
| 8. | intellectual property business? | ☐ Yes ☐ No |
| 9. | shipping business? | ☐ Yes ☐ No |

If you have answered **YES** to any of the questions above, please provide details.

*(Note: The activities above may be 'relevant activities' for economic substance purposes. Please include as much detail as possible on the exact scope of any relevant activity.)*

| Please confirm the entity's country(ies) of tax residence. | |
|---|---|

**PART C - SHAREHOLDERS**

*(Note: Details of additional shareholders can be entered in Part I.)*

| **Name of Shareholder** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |
| | | |
| **Name of Shareholder** | Name | |

*Transfer-In Pack – BVI Business Company*



| Contact Details | Telephone Number | Email Address |
|---|---|---|
| | | |
| Name of Shareholder | Name | |
| Contact Details | Telephone Number | Email Address |
| | | |
| Name of Shareholder | Name | |
| Contact Details | Telephone Number | Email Address |

## PART D - BENEFICIAL OWNER(S)

*Note: Under the Beneficial Ownership Secure Search System Act, 2017 (**BOSS Act**), unless the Company is exempt, it is required to identify its beneficial owners and registrable legal entities and to notify its registered agent of the prescribed particulars of such persons. **The registered agent is then obliged to establish and maintain a database with such particulars which may be made available for searching by the International Tax Authority**. A beneficial owner under the BOSS Act is a natural person who: (i) ultimately owns or controls 25% or more of the shares or voting rights of the Company; or (ii) otherwise exercises control over the management of the Company. Any such person is referred to below as a "BOSS Act Beneficial Owner".*

Please provide:
   (i)   details of all beneficial owners of the Company who are interested in 10% or more of the Company (indicating which, if any, hold 25% or more or otherwise qualify as a BOSS Act Beneficial Owner); and
   (ii)  details of all registrable legal entities of the Company.

### Beneficial Owner Particulars - Natural Persons

*Note: A beneficial owner under the Anti-Money Laundering Terrorist Financing Code of Practice, 2008 (AML Code) is a natural person who ultimately owns or controls 10% or more of the shares or voting rights of the Company.*

| First Name | Middle Name | Surname | Residential Address | |
|---|---|---|---|---|
| | | | Address 1 | |
| Nationality | Date of Birth (DD/MM/YYYY) | | Address 2 | |
| | | | City | State |
| BOSS Act Beneficial Owner | ☐ Yes   ☐ No | | Country | Post/Zip Code |
| | | | | |
| First Name | Middle Name | Surname | Residential Address | |
| | | | Address 1 | |
| Nationality | Date of Birth (DD/MM/YYYY) | | Address 2 | |
| | | | City | State |
| BOSS Act Beneficial Owner | ☐ Yes   ☐ No | | Country | Post/Zip Code |

*Transfer-In Pack – BVI Business Company*



| First Name | Middle Name | Surname | Residential Address | |
|---|---|---|---|---|
| | | | Address 1 | |
| **Nationality** | **Date of Birth (DD/MM/YYYY)** | | Address 2 | |
| | | | City | State |
| **BOSS Act Beneficial Owner** | ☐ Yes ☐ No | | Country | Post/Zip Code |

| First Name | Middle Name | Surname | Residential Address | |
|---|---|---|---|---|
| | | | Address 1 | |
| **Nationality** | **Date of Birth (DD/MM/YYYY)** | | Address 2 | |
| | | | City | State |
| **BOSS Act Beneficial Owner** | ☐ Yes ☐ No | | Country | Post/Zip Code |

**Beneficial Owner Particulars - Registrable Legal Entities**

*Note: A registrable legal entity is a legal entity which would be a beneficial owner if it were a natural person and falls into one of the following categories: (a) its securities are listed on a recognised stock exchange or a subsidiary of an entity the securities of which are so listed; (b) it is a BVI regulated investment fund or a subsidiary of such a fund; (c) it is a BVI regulated person or a foreign regulated person; or (d) it is a sovereign state or a wholly owned subsidiary of a sovereign state. Additional information may be requested.*

| Full Legal Name | Registered Address | |
|---|---|---|
| | Address 1 | |
| **Alternative Name(s)** *(if applicable)* | Address 2 | |
| | City | City |
| | Country | Country |
| **Country of Registration** | | |
| **Registration Number** | | |
| **Date of incorporation** | (DD/MM/YYYY) | |
| **Name of Stock Exchange** *(if applicable)* | | |
| **Name of Regulator** *(if applicable)* | | |
| **Location of Beneficial Ownership Database** | **Address** | |
| **Beneficial Ownership Database** | Address 1 | |



| | Address 2 | |
|---|---|---|
| | City | City |
| | Country | Country |
| **Contact Details** | Telephone Number | Email Address |

**Beneficial Owner - Exemption**

| Will the company be an exempt person under the BOSS Act? | ☐ Yes ☐ No |
|---|---|

| If **YES**, on what basis? |
|---|
| |

**PART E - DIRECTOR(S)**

Each director must sign and complete the relevant section in our Compliance Pack (Individuals or Companies or Others) together with a Consent to Act Form signed at their original date of appointment – if you need to reproduce this document please use this template (Individual Directors or Non-Individual Directors).

*Please refer to our Additional Services section for more information about our director services.*

*(Note: Details of additional directors can be entered in Part I.)*

| **Name of Director** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |

| **Name of Director** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |

| **Name of Director** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |

**PART F - OFFICER(S)**

*(Note: Details of additional officers can be entered in Part I.)*

| **Name of Officer** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |

| **Name of Officer** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |

**PART G - COMPLIANCE QUESTIONNAIRE**

Any natural person or corporate entity which is listed in one of the following sections must complete a Compliance Questionnaire:

*Transfer-In Pack – BVI Business Company*



HARNEYS
FIDUCIARY

- ☐ Shareholders in Part C
- ☐ Beneficial Owners in Part D
- ☐ Registrable legal entities listed in Part D
- ☐ Directors listed in Part E

Please refer to our Compliance Pack (Individuals or Companies or Others).

## PART H - LOCATION OF ORIGINAL CORPORATE RECORDS

*Note: It is a mandatory requirement for the Company to keep either: (i) the original; or (ii) a copy of the corporate records listed below at the office of its registered agent. The company must inform the registered agent if original corporate documents will be kept at an alternative address and update the registered agent within 14 days of any change in location of the original records.*

| Corporate Record | Harneys | Alternative Address | |
|---|---|---|---|
| **Register of Members** | ☐ | Address 1 | |
| | | Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | Telephone Number | | Email Address |
| Corporate Record | Harneys | Alternative Address | |
| **Register of Directors** | ☐ | Address 1 | |
| | | Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | Telephone Number | | Email Address |
| Corporate Record | Harneys | Alternative Address | |
| **Minutes and Resolutions of Directors and Members** | ☐ | Address 1 | |
| | | Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | Telephone Number | | Email Address |
| Corporate Record | Harneys | Alternative Address | |
| **Register of Charges** | ☐ | Address 1 | |
| | | Address 2 | |



| | | City | State |
|---|---|---|---|
| | | Country | Post/Zip Code |
| **Contact Details** | | Telephone Number | Email Address |

*Note: Additional fees will be incurred annually by the Company which must be paid in advance if Harneys are required to maintain the original financial records.*

| Corporate Record | Harneys | Alternative Address | |
|---|---|---|---|
| **Financial records and underlying documentation** | ☐ | Name of record keeper | |
| | | Address 1 / Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | | Telephone Number | Email Address |
| Harneys can also provide specialised Bookkeeping and Financial Statement preparation services. Would you like us to contact you with more information? | | ☐ Yes  ☐ No | |

## PART I - ADDITIONAL INFORMATION

*Note: Please use this space to provide us with any special instructions or additional information. Any work which is not within the scope of our services may be referred to our affiliate law firm, Harneys Westwood & Riegels LP, who will contact you directly.*

## PART J - PAYMENT INSTRUCTIONS AND BILLING

If you have not received a quote in relation to our services please contact our New Business Team.

**Method of payment:** We accept payments via wire transfer and credit card. Please click here for our payment instructions and use the reference 'New Business' and the proposed name of the Company provided in Part A.

| Instructing Agent/Client | | |
|---|---|---|
| **Please indicate your method of payment** | ☐ Credit Card   ☐ Wire | |
| **Billing Address** | Address 1 | |
| | Address 2 | |
| | City | City |
| | Country | Country |
| **Billing Email** *(Note: We only send invoices by email.)* | | |

## PART K - DECLARATION AND UNDERTAKING

*Transfer-In Pack – BVI Business Company*



I declare that I have read the **Terms and Conditions** and request that Harneys Fiduciary proceed with the Transfer-In of the Company according to the details provided in this Pack and I am authorised by each data subject to provide their personal data to Harneys Fiduciary. I certify that the information provided in this Pack is true and correct to the best of my knowledge, and I undertake to inform Harneys Fiduciary promptly should any of the provided details change. I further confirm that no situation has occurred where I have reason to believe that there may be legal or tax issues in connection with this structure and the laws and institutions of any jurisdiction.

| | |
|---|---|
| **Full Name** | |
| **Name of corporate entity (if applicable)** | |
| **Position with corporate entity (if applicable)** | |
| **Signature** | |
| **Date** | |



## Transfer-In Pack – BVI Business Company

### ADDITIONAL SERVICES

#### Company Secretarial Services

Our company administration teams provide secretarial and administrative support including acting as company secretary throughout the life of a business or project. This includes maintenance of company records.

#### Nominee Shareholder Services & Trust Services

We provide nominee shareholder services. For clients interested in succession planning involving their BVI business company shares we would invite you to consider the use of our trust services. Our experienced team of private wealth practitioners can advise you on this process. One of the key benefits of succession planning through trusts is avoiding the time, cost and publicity associated with a BVI probate application.

#### Director Services

Harneys Fiduciary offers both corporate directors and qualified professionals who may be appointed to serve as directors of a BVI Company. Provision of director services is considered on a case by case basis, however, taking into consideration the type of company and its activities.

#### Bank Accounts

We work closely with numerous financial institutions in the BVI and internationally and can help you open a bank account for your new company quickly and efficiently. We can provide authorised signatories for bank accounts and maintain and keep your financial records.

#### Accounting Services

Harneys Fiduciary has its own in-house accounting team specialising in the provision of bookkeeping and accounting services to meet the needs of companies, limited partnerships and trusts.

Our accounting services include maintenance of financial records, preparation of monthly, quarterly, or annual management accounts, preparation of annual financial statements and liaising with external auditors and advisors as required.

We can also provide access to auditors and other specialists outside our firm if this is necessary to meet your particular needs. Our connections both locally in the BVI and internationally are numerous and well established.

#### Other Services

Harneys Fiduciary also provides other services including liquidation services, authorised representative services, safe custody, escrow and a wide range of corporate secretarial services provided on an ad-hoc basis.

If you have any questions or would like more information on any of the above services please contact us.

## GENEVER HOLDINGS CORPORATION
### Incorporated in the British Virgin Islands
### Company No. 1862840
### (the *Company*)

### WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR OF THE COMPANY

---

WHEREAS the Company's registered agent has resigned, and the Company is currently struck-off of the Registry of Corporate Affairs (the *Registry*) pursuant to s.213(1) of the BVI Business Companies Act 2004.

WHEREAS the Company intends to rectify the status of the Company and place it back in good standing and in order to do so desires to appoint Harneys Corporate Services Limited of Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, VG 1110, British Virgin Islands as its registered agent.

I, the undersigned, being the sole director of the Company, DO HEREBY ADOPT the following resolutions:

1. the Company change its registered agent to Harneys Corporate Services Limited of Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, VG 1110, British Virgin Islands;

2. the Company change its registered office to Craigmuir Chambers, Road Town, Tortola, VG 1110, British Virgin Islands;

3. a notice, in the approved form, of the change of registered agent and registered office of the Company, be filed with the BVI Registry of Corporate Affairs; and

4. the sole director, any employee of Harneys Corporate Services Limited or any employee of Harney Westwood & Riegels LP, be and is hereby authorised to:

   a. pay any outstanding fees due to the Registry;

   b. execute or submit any document to the Registry; and

   c. to take any and all other actions necessary to bring the Company into good standing and to give full effect to the change of registered agent and registered office; and

5.  the terms and conditions of Harneys Corporate Services Limited for the provision of registered office and registered agent services (as amended or supplemented from to time) be and are approved, and the completion and execution of the Harneys Corporate Services Limited 'transfer-in pack' for and on behalf of the Company by the sole director be and is hereby approved.

Ho Wan Kwok hereby confirms that he has no conflict of interest in connection with the transactions contemplated by these resolutions.

I have executed this director's resolution this ……. day of August 2022.

_____

Ho Wan Kwok – Director

## **Exhibit B**

**Letter to Harcus Parker Limited**

Ho Wan Kwok
*[insert address]*

August [___], 2022

**VIA EMAIL**

Harcus Parker Limited
7th Floor
Melbourne House
44 - 46 Aldwych
London, WC2B 4LL
Attn:   Jennifer Morrissey
Email: JMorrissey@harcusparker.co.uk

**Re:**   ***Kwok Ho Wan, Ace Decade Holdings Limited, and Dawn State Limited v. UBS AG (London Branch)*, Case No. CL-2020-000345 – Appointment of Trustee in Chapter 11 Case of Ho Wan Kwok**

Dear Ms. Morrissey:

This is to confirm to you that Luc A. Despins has been appointed as the trustee (the "Trustee") in my chapter 11 case, pending before the United States District Court for the District of Connecticut (the "U.S. Bankruptcy Court").  All of my interests in the litigation against UBS AG (London Branch) pending in  the High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court (the "UBS Litigation") is property of my bankruptcy estate as a matter of United States bankruptcy law.

Upon Mr. Despins' appointment as the Trustee, he exercises control over all property of the bankruptcy estate, including my claim in the  UBS Litigation, so that he now has authority and standing to apply to be recognized as the appropriate party to prosecute my claim in the UBS Litigation.  As a matter of United States bankruptcy law, I have no authority or standing at this time to prosecute the UBS Litigation.

In furtherance of the foregoing, and for the avoidance of doubt, I hereby expressly authorize you to have full and complete discussions on my behalf with Mr. Despins regarding the UBS Litigation, the merits thereof, any related settlement discussions, and any other topics related to the prosecution of the UBS Litigation and to take instructions from him in relation to my claim in the UBS Litigation regardless of any attorney-client privilege, work product, or other privilege which belongs to me.  Any waiver of privilege is limited to the provision of this information to the Trustee.  My consent is limited to giving access to the Trustee to the extent that I am entitled and contains no wider waiver of privilege and is not consent by me to the Trustee to waive my privilege.

1

Among other things, and as detailed in the order of the U.S. Bankruptcy Court (a copy of which is enclosed as <u>Exhibit 1</u>), I instruct you to (i) as soon as is practicable deliver to and share with the Trustee all memoranda, advice, and other communications by you to me regarding the UBS Litigation, any other information (whether in written form or not) regarding the merits of the UBS Litigation, and any settlement offers received or made by me or you in connection with such litigation, and (ii) as soon as is practicable provide the Trustee will full access to the parts of your case file in the UBS Litigation to which I am entitled as well as all pleadings and other court documents filed in the UBS Litigation.

Sincerely,

_____

Ho Wan Kwok

cc: Luc A. Despins, in his capacity as trustee in the chapter 11 case of Ho Wan Kwok

Enclosure

2

# Notice Recipients

District/Off: 0205–5      User: admin      Date Created: 8/10/2022

Case: 22–50073      Form ID: pdfdoc2      Total: 66

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| 20 | Pacific Alliance Asia Opportunity Fund L.P. |
| cr | Zheng Wu |
| 20 | Rui Ma |
| 20 | Weican Meng |
| intp | Golden Spring (New York) LTD |
| crcm | Official Committee of Unsecured Creditors |
| intp | HK International Funds Investments (USA) Limited, LLC |
| intp | Mei Guo |
| cr | Baosheng Guo |
| cr | Yan Zhao |
| cr | Ning Ye |
| cr | Chong Shen Raphanella |
| cr | Xiaodan Wang |
| cr | Rong Zhang |
| aty | Michael S. Weinstein |

TOTAL: 15

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | U. S. Trustee | USTPRegion02.NH.ECF@USDOJ.GOV |
| tr | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Aaron Romney | aromney@zeislaw.com |
| aty | Aaron A Mitchell | aaron@lmesq.com |
| aty | Annecca H. Smith | asmith@rc.com |
| aty | Avram Emmanuel Luft | aviluft@paulhastings.com |
| aty | Carollynn H.G. Callari | ccallari@callaripartners.com |
| aty | David S. Forsh | dforsh@callaripartners.com |
| aty | David V. Harbach, II | dharbach@omm.com |
| aty | Douglas S. Skalka | dskalka@npmlaw.com |
| aty | Douglass E. Barron | douglassbarron@paulhastings.com |
| aty | Eric A. Henzy | ehenzy@zeislaw.com |
| aty | G. Alexander Bongartz | alexbongartz@paulhastings.com |
| aty | Holley L. Claiborn | holley.l.claiborn@usdoj.gov |
| aty | Irve J. Goldman | igoldman@pullcom.com |
| aty | James C. Graham | jgraham@npmlaw.com |
| aty | James M. Moriarty | jmoriarty@zeislaw.com |
| aty | Jay Marshall Wolman | jmw@randazza.com |
| aty | John L. Cesaroni | jcesaroni@zeislaw.com |
| aty | Jonathan Kaplan | jkaplan@pullcom.com |
| aty | Kristin B. Mayhew | kmayhew@mdmc–law.com |
| aty | Laura Aronsson | laronsson@omm.com |
| aty | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Lucas Bennett Rocklin | lrocklin@npmlaw.com |
| aty | Mia N. Gonzalez | mgonzalez@omm.com |
| aty | Michael S. Weinstein | mweinstein@golenbock.com |
| aty | Nicholas A. Bassett | nicholasbassett@paulhastings.com |
| aty | Patrick M. Birney | pbirney@rc.com |
| aty | Patrick R. Linsey | plinsey@npmlaw.com |
| aty | Peter Friedman | pfriedman@omm.com |
| aty | Peter J. Zarella | pzarella@mdmc–law.com |
| aty | Sara Pahlavan | spahlavan@omm.com |
| aty | Scott D. Rosen | srosen@cb–shea.com |
| aty | Stephen M. Kindseth | skindseth@zeislaw.com |
| aty | Stuart M. Sarnoff | ssarnoff@omm.com |
| aty | Thomas J. Sansone | tsansone@carmodylaw.com |
| aty | Timothy D. Miltenberger | Tmiltenberger@cbshealaw.com |
| aty | William R. Baldiga | wbaldiga@brownrudnick.com |

TOTAL: 38

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | | | |
|---|---|---|---|---|---|---|
| db | Ho Wan Kwok | 373 Taconic Road | Greenwich, CT 06831 | | | |
| cr | Logan Cheng | c/o Randazza Legal Group, PLLC | 100 Pearl Street | 14th Floor | Hartford, CT 06103 | |
| ca | Stretto | 410 Exchange, Suite 100 | Irvine, CA 92602 | | | |
| dbaty | Brown Rudnick LLP | One Financial Center | Boston, MA 02111 | | | |
| crcm | Pullman & Comley, LLC | 850 Main Street | Bridgeport, CT 06601 | | | |
| 20 | Huizhen Wang | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly | Los Angeles, CA 90067–2367 | |

| | | | | |
|---|---|---|---|---|
| cr | Chao–Chih Chiu | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly |
| | Los Angeles, CA 90067–2367 | | | |
| cr | Yunxia Wu | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly |
| | Los Angeles, CA 90067 | | | |
| cr | Keyi Zilkie | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly |
| | Los Angeles, CA 90067 | | | |
| intp | Yongbing Zhang | 223 West Jackson Bl;vd. #1012 | Chicago, IL 60606 | |
| cr | Brown Rudnick LLP | One Financial Center | Boston, MA 02111 | |
| aty | Luc A. Despins | Paul Hastings LLP | 200 Park Avenue | New York, NY 10166 |
| aty | Steven E. Mackey | Office of the U.S. Trustee | The Giaimo Federal Building | 150 Court Street, Room 302 |
| | New Haven, CT 06510 | | | |

TOTAL: 13

IN RE: Ho Wan Kwok

VS. _____

Debtor    EXHIBIT _____ G

DATE _____ IDEN.

DATE 11/18/2022 _____ EVID.

BY P.E. _____
                                Deputy Clerk

AO 386-A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

-----------------------------------------------------x
                                                     :
In re:                                               :   Chapter 11
                                                     :
HO WAN KWOK,                                         :   Case No. 22-50073 (JAM)
                                                     :
           Debtor.[1]                                :
                                                     :
-----------------------------------------------------x

**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER, PURSUANT TO
BANKRUPTCY CODE SECTIONS 363, 541, 1108, AND 1505, (A) CONFIRMING THAT
CHAPTER 11 TRUSTEE HOLDS ALL OF DEBTOR'S ECONOMIC AND
CORPORATE GOVERNANCE RIGHTS IN DEBTOR-CONTROLLED ENTITIES,
(B) AUTHORIZING CHAPTER 11 TRUSTEE TO ACT IN ANY FOREIGN COUNTRY
ON BEHALF OF ESTATE, AND (C) GRANTING RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the
chapter 11 case of Ho Wan Kwok (the "Debtor"), respectfully states as follows in support of this
motion (the "Motion"):

**RELIEF REQUESTED**

1.      By this Motion, the Trustee seeks entry of an order, substantially in the form
attached hereto as **Exhibit A** (the "Proposed Order"), confirming that, as of his appointment on
July 8, 2022, the Trustee holds all of the Debtor's economic and governance rights, for the
benefit of the Debtor's estate (the "Estate"), with respect to all corporate entities owned and/or
controlled by the Debtor (the "Debtor-Controlled Entities").  The Debtor-Controlled Entities
include, without limitation, Genever Holdings Corporation ("Genever (BVI)"), a British Virgin
Islands ("BVI") corporation that, through its wholly owned subsidiary, Genever Holdings LLC

_____

[1]     Although the Debtor's legal name is Ho Wan Kwok, he is also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases.  The last four digits of the Debtor's taxpayer identification number are
9595.

**Debtor's Exhibit G**

("Genever (US)"),[2] a New York limited liability company, is the registered owner of, among

other things, an apartment at the Sherry-Netherland building in New York, New York (the

"Sherry-Netherland Apartment").[3]  This relief is necessary because the Debtor has shown a

willingness to defy court orders, suggesting that the Debtor and related persons (whether acting

individually or through the Debtor-Controlled Entities) may try to take advantage of any

ambiguity or misunderstanding concerning the Trustee's rights in order to frustrate the Trustee's

efforts to identify and recover property of the Estate.

2.       In addition, to facilitate the Trustee's exercise of corporate control over the

Debtor-Controlled Entities and to support the Trustee's investigation, collection, and recovery of

other Estate assets that may be located in foreign jurisdictions, the Trustee requests, pursuant to

section 1505 of the Bankruptcy Code, the authority to act, as the Debtor's foreign representative,

in any foreign country on behalf of the Estate in any way permitted by applicable foreign law for

the purpose of (a) investigating, collecting and recovering assets of the Debtor located in foreign

countries, including seeking relief in foreign courts in furtherance thereof, as necessary or

appropriate, (b) exercising control over the Debtor-Controlled Entities, including seeking relief

in foreign courts in furtherance thereof, as necessary or appropriate, and (c) requesting and

obtaining corporate documents from appropriate foreign corporate registries (or similar entities)

---

[2]     On October 12, 2020, Genever (US) commenced a chapter 11 case, which is currently pending before the
United States Bankruptcy Court for the Southern District of New York, Case No. 20-12411 (JLG).  For the
avoidance of doubt, at this time, the Trustee is not requesting any relief with respect to the chapter 11 case of
Genever (US), including any modification of the *Second Amended and Restated Settlement Agreement*, dated as
of September 24, 2021 [ECF No. 131-1 in Case No. 20-12411 (JLG)].  Nor should the requested relief, if
granted, be deemed to authorize the Trustee to take any particular action with respect to Genever (US) in its
chapter 11 case, with respect to which the Trustee will seek relief from the United States Bankruptcy Court for
the Southern District of New York (the "New York Bankruptcy Court"), as may be appropriate.  The Trustee
reserves all its rights in that regard.

[3]     As the Court is aware, the identity of the true owner of the Sherry-Netherland Apartment is presently subject to
dispute.

holding such documents with respect to the Debtor-Controlled Entities, including the corporate documents related to Genever (BVI) from the appropriate BVI entity.

3.      To enable the Trustee to exercise the foregoing authority without interference from the Debtor, the Trustee requests confirmation from the Court that the Debtor may not interfere with, hinder, or delay the Trustee's exercise of the Debtor's economic and governance rights with respect to the Debtor-Controlled Entities or the Trustee's authority as the Debtor's foreign representative under section 1505 of the Bankruptcy Code.

4.      Finally, the Trustee requests that the Court request the assistance of the foreign courts in furtherance of the Trustee's exercise of the foregoing authority, including the assistance of the BVI courts regarding any request of the Trustee for relief (including on an emergency basis) with respect to the Trustee's exercise of corporate control over Genever (BVI).

## JURISDICTION, VENUE, AND STATUTORY BASES

5.      The United States Bankruptcy Court for the District of Connecticut (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended). This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

6.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 363, 541, 1108, and 1505 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

8.      On February 15, 2022 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.      On March 21, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in the Debtor's chapter 11 case (the "Chapter 11 Case"). No examiner has been appointed in the Chapter 11 Case.

10.      On June 15, 2022, the Court entered a memorandum of decision and order [ECF No. 465] (the "Trustee Order") directing the United States Trustee to appoint a chapter 11 trustee in the Chapter 11 Case.  Pursuant to the Trustee Order, the United States Trustee selected Luc A. Despins as the Trustee.

11.      On July 8, 2022, the Court entered an order granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523] (the "Appointment Order").

## BASIS FOR RELIEF

### A.      The Court Should Confirm that the Trustee Holds All of Debtor's Economic and Governance Rights with Respect to All Debtor-Controlled Entities

12.      Section 541 of the Bankruptcy Code provides that property of the estate includes "all property, wherever located and by whomever held, to which the debtor has legal or equitable interest."  11 U.S.C. § 541.  In addition, section 1108 of the Bankruptcy Code provides that "[u]nless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business."  *Id*. § 1108.  The related case law confirms that a chapter 11 trustee "possesses both the economic and governance rights to participate in the management of [the debtor-owned entity] that the Debtor himself enjoyed prior to his bankruptcy filing."  *In re Modanlo*, 412 B.R. 715, 728 (Bankr. D. Md. 2006) (confirming chapter 11 trustee's authority to, among other things, amend formation papers of debtor's wholly-owned Delaware LLC, designate himself as the LLC manager, and place LLC into voluntary chapter 11).  *See also In re Albright*, 291 B.R. 538 (Bankr. D. Col. 2003) ("Because the Trustee became the sole member of [debtor-owned entity] upon the Debtor's bankruptcy

4

filing, the Trustee now controls, directly or indirectly, all governance of that entity, including decisions regarding liquidation of the entity's assets.").

13.     It is paramount that the Trustee exercise, as soon as possible, economic and corporate control over the Debtor-Controlled Entities, including Genever (BVI), in order to preserve and recover assets for the benefit of the Estate.  For the avoidance of doubt, this includes the Trustee's authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities.

14.     It is undisputed that the Debtor owns all of the equity in Genever (BVI).[4]  It is also undisputed that Genever (BVI), in turn, wholly owns Genever (US),[5] which owns, among other things, the Sherry-Netherland Apartment.  According to the Genever (US)'s schedules of assets and liabilities in its chapter 11 case, the Sherry-Netherland Apartment had an initial purchase price of $70 million, and the Trustee believes it continues to have substantial value. Genever (US) is seeking in its chapter 11 case to sell the Sherry-Netherland Apartment, with the proceeds to be distributed pursuant to a proposed chapter 11 plan.[6]  Chapter 11 counsel to Genever (US) has advised the Trustee that, to date, the Debtor has been directing such counsel in the conduct of Genever (US)'s chapter 11 case.  In light of the Trustee having stepped into the shoes of the Debtor, including as it relates to the Debtor's economic and governance rights with respect to Genever (BVI), **the Trustee, not the Debtor**, should have the authority to provide direction to Genever (US).  Accordingly, the Trustee needs to exercise, as soon as possible, the

---

[4]     *See, e.g.*, *Global Notes and Statements of Limitations, Methodology, and Disclaims Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs* at 4 [ECF No. 77] (the "Global Notes"). The Debtor has asserted that he holds the equity in Genever (BVI) in trust for Bravo Luck Limited, the equity of which is owned by the Debtor's son.  The Trustee is investigating to what extent this assertion is accurate.

[5]     *See* List of Equity Holders attached to Chapter 11 Petition of Genever (US) [ECF No. 1] (Case No. 20-12411 (JLG) (Bankr. S.D.N.Y.) (identifying Genever (BVI) as sole equity holder).

[6]     To be clear, the Trustee is not seeking to stop the sale process with respect to the Sherry Netherland Apartment. The Debtor reserves all rights, however, with respect to the proceeds of such sale.

5

Estate's rights in Genever (US)'s chapter 11 case, which will include seeking relief in the New York Bankruptcy Court, as necessary.

15.     In addition, the Trustee is investigating the extent to which the Debtor owns and/or controls additional corporate entities.[7]  As part of this investigation, on July 12, 2022, the Trustee sent letters to Debtor's counsel requesting, among other things, documentation and information regarding the Debtor's economic and governance rights in the Debtor-Controlled Entities, including Genever (BVI).  Among other things, the Trustee requested, with respect to each such entity, the organizational documents, capitalization tables, structure charts, schedules identifying the composition of board of directors, board of directors, or similar governing bodies, schedules of all officers, and other related documents.[8]  To date, the Debtor has not provided any such documents to the Trustee.  The Trustee needs these documents to understand the full universe of corporate entities with respect to which the Trustee has governance rights.

16.     Unless the Court confirms the Trustee's governance rights with respect to all Debtor-Controlled Entities, the Trustee is deeply concerned that the Debtor will continue his efforts to impede the Trustee's exercise of control over assets of the Estate.  Indeed, as the Court is aware, Justice Barry Ostrager of the New York Supreme Court already found that the Debtor has a history of "secret[ing] his assets in a maze of corporate entities and with family members."[9] He further observed:

---

[7]   For example, in addition to Genever (BVI), the Debtor's *Statements of Financial Affairs* identifies two corporate entities that the Debtor claims he owned in the past, but for various reasons, no longer controls, namely Shiny Times Holdings, LTD, and Well Origin Limited.  *See* Global Notes at 6-7.

[8]   The Trustee's letter also requested that Debtor's counsel preserve all documents, data, information, and communications related in any what to the Debtor, his affiliates, the Estate, property of the Estate, and/or the Chapter 11 Case.

[9]   *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al.*, Case No. 22-50073 (February 9, 2022) (the "New York State Court Ruling") at 1.  A copy of New York State Court Ruling is attached hereto to **Exhibit B**.

6

> [t]he machinations associated with the shell game Kwok has
> orchestrated with respect to the Lady May are of a piece with every
> other evasive and contemptuous act Kwok has taken during the five
> years this litigation has been pending . . . [10]

Accordingly, the relief the Trustee seeks with respect to corporate governance rights is both critically important and very time sensitive.

17.     To be clear, through this Motion, the Trustee is merely seeking confirmation from this Court that he now holds the same economic and corporate governance rights in the Debtors-Controlled Entities as the Debtor had prior to entry of the Appointment Order.  The Trustee is not seeking permission to *exercise* such governance rights, as doing so is well within the ordinary course of the Debtor's business.  However, to the extent the Court finds it necessary to authorize such actions under section 363(b) of the Bankruptcy Code, the Trustee requests such authorization and submits that sound business justification exists for this request for all the reasons set forth above.  *See Modanlo*, 412 B.R. at 732 (granting chapter 11 trustee's request, under section 363(b) of Bankruptcy Code, to take corporate action related to subsidiary of entity owned by debtor, but without deciding whether such action was inside or outside the ordinary course of business).  To be clear, by this Motion, the Trustee is not seeking authority to sell or otherwise dispose of any equity in any Debtor-Controlled Entities or other assets of the Debtor.  To the extent the Trustee seeks to sell or otherwise dispose of assets that are identified and recovered for the benefit of the Estate, the Trustee will seek approval of any such sales or dispositions by separate motion.

18.     Finally, to the extent the Court finds it necessary to rely on section 363(b) for the relief requested in this Motion, the Trustee requests a waiver of the fourteen-day stay requirements under Bankruptcy Rule 6004(h), such that the Proposed Order be effective

---

[10]    New York State Court Ruling at 7.

immediately upon entry thereof.  For all the reasons set forth above, delays in the Trustee's

exercise of economic and corporate governance rights could adversely affect the Trustee's ability

to identify and recover property of the Estate.

**B.    The Court Should Appoint the Trustee as Foreign Representative of Debtor's Estate**

19.    Section 1505 of the Bankruptcy Code provides that, to the extent consistent with

applicable foreign law, a "trustee or another entity (including an examiner) may be authorized by

the court to act in a foreign country on behalf of an estate created under section 541." 11 U.S.C.

§ 1505.  Here, the Trustee requests authority under section 1505 to act as the Debtor's foreign

representative in any foreign country for the purpose of (a) investigating, collecting, and

recovering assets of the Debtor located in foreign countries, including seeking relief in foreign

courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the Debtor-

Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as necessary

or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign

corporate registries (or similar entities) holding corporate documents with respect to the Debtor-

Controlled Entities, including the corporate documents related to Genever (BVI) from the

appropriate BVI entity.   The Trustee will, of course, comply with all applicable foreign law

requirements when acting in any foreign country.

20.    In addition, and in furtherance of the this relief, the Trustee requests that the Court

request the assistance of the foreign courts, including the assistance of the BVI courts regarding

any request of the Trustee for relief with respect to the Trustee's exercise of corporate control

over Genever (BVI).  In this regard, the Trustee is informed by BVI counsel that the BVI courts

will be in summer recess until September 2022, which practically means that no hearing could be

held in the BVI until September 2022, except on an emergency basis.  The Trustee respectfully

requests this Court's assistance in obtaining emergency relief from the BVI courts as necessary.[11]

Such relief is plainly warranted in light of the Debtor's propensity, as discussed above, to hide

his assets from creditors and to disregard court orders (even when threatened with contempt

sanctions).  Given this history, the Debtor should not be left to exercise any corporate

governance rights with respect to the Debtor-Controlled Entities for one more day.

21.     To enable the Trustee to exercise the foregoing authority without interference

from the Debtor, the Court should confirm that the Debtor may not to interfere with, hinder, or

delay the Trustee's exercise of the Debtor's economic and governance rights with respect to the

Debtor-Controlled Entities or the Trustee's authority as the Debtor's foreign representative under

section 1505 of the Bankruptcy Code, including any action taken by the Trustee in a foreign

court on behalf of the Estate in furtherance thereof.  To the extent the Debtor opposes any action

taken or to be taken by the Trustee in accordance with the foregoing authority, the Debtor should

be limited to seeking relief from this Court (and not the relevant foreign court or other foreign

entity, as the case may be) on notice of parties in interest in this case, to the extent the Debtor can

show that he has standing to do so.

## NO PRIOR REQUEST

22.     The Trustee has not previously sought the relief requested herein from this or any

other court.

*[Remainder of page intentionally left blank.]*

---

[11]    The Trustee is hopeful that he will not have to seek the intervention of the BVI courts on an emergency basis
but needs to be authorized to do so to the extent necessary.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the

Proposed Order granting the relief requested in this Motion and such other relief as is just and

proper.

Dated:    July 23, 2022               LUC A. DESPINS,
            New Haven, Connecticut     CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

     *and*

    Nicholas A. Bassett *(pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

     *and*

    Avram E. Luft *(pro hac vice* pending)
    Douglass Barron *(pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com

    *Proposed counsel for the Chapter 11 Trustee*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                        :
In re:                                  :   Chapter 11
                                        :
HO WAN KWOK,                            :   Case No. 22-50073 (JAM)
                                        :
            Debtor.                     :
                                        :
-------------------------------------------------------x
```

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363, 541, 1108, AND 1505, (A) CONFIRMING THAT CHAPTER 11 TRUSTEE HOLDS ALL OF DEBTOR'S ECONOMIC AND CORPORATE GOVERNANCE RIGHTS IN DEBTOR-CONTROLLED ENTITIES, (B) AUTHORIZING CHAPTER 11 TRUSTEE TO ACT IN ANY FOREIGN COUNTRY ON BEHALF OF ESTATE, AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Mr. Luc A. Despins, in his capacity as the chapter 11

trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), for the

entry of an order (this "Order"), pursuant to sections 363, 541, 1108, and 1505 of title 11 of the

United States Code (the "Bankruptcy Code"), (a) confirming that the Trustee holds all of the

Debtor's economic and corporate governance rights in all corporate entities owned and/or

controlled by the Debtor (the "Debtor-Controlled Entities"), including, without limitation,

Genever Holdings Corporation ("Genever (BVI)") and granting related relief, (b) authorizing the

Trustee to act in any foreign country on behalf of the Debtor's estate (the "Estate"), and (c)

granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the *Standing Order of Reference* from the United States District Court for the District

of Connecticut (as amended); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Motion is in the best interest of the Estate, its creditors, and all parties in interest; and due

and sufficient notice of the Motion having been given under the particular circumstances; and it

appearing that no other or further notice need be given; and upon all of the proceedings had

before this Court; and any objections to the relief requested herein having been withdrawn or

overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is

hereby ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Effective as of entry of the order, dated July 8, 2022, granting the appointment of

Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523], the Trustee holds all of the

Debtor's economic and governance rights, for the benefit of the Estate, with respect to all

Debtor-Controlled Entities, including, without limitation, Genever (BVI).  For the avoidance of

doubt, the foregoing rights include the Trustee's authority to replace any existing officer,

director, manager, or similar person of the Debtor-Controlled Entities.  As part of the foregoing,

to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee

in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been

removed.

3.      To the extent the Trustee's exercise of economic and governance rights with

respect to the Debtor-Controlled Entities is deemed to be outside the ordinary course of business,

such exercise is hereby approved, as there is sound business justification for the exercise of such

rights, including because the Trustee holds all of the Debtor's economic and governance rights

with respect to such entities for the benefit of the Estate.  Notwithstanding the applicability of

any of Bankruptcy Rule 6004(h) or any other provisions of the Bankruptcy Rules or the Local

Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Connecticut to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived. For the avoidance of doubt, nothing in this Order authorizes the Trustee to sell or otherwise dispose of any equity in Debtor-Controlled Entities or other assets of the Debtors.

4.      Pursuant to section 1505 of the Bankruptcy Code, the Trustee is hereby authorized to act, as the Debtor's foreign representative, in any foreign country on behalf of the Estate in any way permitted by applicable foreign law for the purpose of (a) investigating, collecting, and recovering assets of the Debtor located in foreign countries, including relief in foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign corporate registries (or similar entities) holding such documents with respect to the Debtor-Controlled Entities. Without limiting the foregoing, the Trustee is authorized, pursuant to section 1505 of the Bankruptcy Court, to request and obtain the corporate documents related to Genever (BVI) from the appropriate British Virgin Island ("BVI") entity holding such corporate documents.

5.      The Debtor shall not interfere with, hinder, or delay the Trustee's exercise of the authority under this Order, including any action taken or to be taken by the Trustee in a foreign court on behalf of the Estate in furtherance of such authority. To the extent the Debtor opposes the Trustee's exercise of such authority, the Debtor shall be limited to seeking relief from this

Court (and not the relevant foreign court or other foreign entity, as the case may be) on notice to

parties in interest, to the extent the Debtor can show that he has standing to do so.

6.      In furtherance of the Trustee's exercise of the authority under this Order, the

Court respectfully requests the assistance of the foreign courts, including the assistance of the

BVI courts regarding any request of the Trustee for relief (including on an emergency basis) with

respect to the Trustee's exercise of corporate control over Genever (BVI).

7.      Nothing in this Order shall be deemed to authorize any particular action with

respect to Genever Holdings LLC ("Genever (US)") in its chapter 11 case pending before the

United States Bankruptcy Court for the Southern District of New York (the "Genever Court").

The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the

Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its

chapter 11 case.

8.      The Trustee is authorized and empowered to take all actions necessary to

effectuate the relief granted in this Order.

9.      The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

10.     This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

**<u>EXHIBIT B</u>**

**February 9, 2022 Decision of Supreme Court of the Statue of New York**

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| PRESENT: | HON. BARRY R. OSTRAGER | PART | IAS MOTION 61EFM |
| --- | --- | --- | --- |
| | *Justice* | | |

-------------------------------------------------------------------X

PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

Plaintiff,

- v -

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI, a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a HAOYUN GUO, GENEVER: HOLDINGS LLC, and GENEVER HOLDINGS CORPORATION,

Defendants.

-------------------------------------------------------------------X

| INDEX NO. | 652077/2017 |
| --- | --- |
| MOTION DATE | |
| MOTION SEQ. NO. | 019 |

**DECISION + ORDER ON MOTION**

HON. BARRY R. OSTRAGER

In this 2017 case with 1,180 docket entries – almost all of which involve defendant Kwok Ho Wan's ("Kwok") efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members -- this Court is called upon to determine whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has met the burden of establishing that the Court should enter a final Order of Civil Contempt against Kwok. For the reasons that follow, this Court is simultaneously issuing a final Order of Civil Contempt.

PAX secured a judgment against Kwok in the sum of $116,402,019.57 on February 3, 2021 (NYSCEF Doc. No. 716). Thereafter, PAX undertook a year's long effort to enforce its judgment by first identifying and then attempting to levy upon Kwok's assets in the United States. PAX encountered difficulty identifying assets over which Kwok exercised control because Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members. This scheme has enabled Kwok to assert that he has no assets despite his lavish lifestyle, which plaintiff has catalogued with material from social

media clippings, photographs and videotapes showing Kwok living large and boasting of his

wealth, expensive homes, private plane, and yacht. As noted in the transcript of proceedings of

February 2, 2022, this evidence is of little probative value, as the witnesses sponsoring this

evidence have no first-hand knowledge of the authenticity of this "evidence" other than that it is

accessible on various websites.

On February 2, 2022, this Court held an evidentiary hearing at which seven witnesses

submitted direct testimony by affidavit and were made available for cross-examination. The

hearing followed protracted proceedings by PAX to locate and levy upon assets owned by

defendant Kwok. Those proceedings established, among other things, that Kwok exercised

dominion and control over a yacht called the Lady May and resulted in a series of orders

restraining Kwok and/or the registered owners of the yacht called Lady May from removing the

Lady May from the Court's jurisdiction. The first such Order was issued on September 30,

2020, as described in detail *infra,* and was followed by an October 15, 2020 Order that restrained

"Mr. Kwok and/or the registered owners of . . . the yacht, the 'Lady May'" from leaving the

jurisdiction. (NYSCEF Doc. No. 630). As detailed *infra*, Kwok spent much of July, August and

September of 2020 on the Lady May. Contemporaneously with the proceedings resulting in the

September 30 and October 15, 2020 restraining Orders, Kwok and his cohorts made arrangement

for the Lady May to sail to Florida in early October 2020 and, thereafter, to the Bahamas. On

March 16, 2021, the Court issued a conditional order of civil contempt which directed that if

Kwok failed to return the Lady May to the jurisdiction of this Court by May 31, 2021, he would

be subject to a $500,000.00 fine for each day that the Lady May remained outside the jurisdiction

of this Court.

The Appellate Division, First Department, affirmed this Court's order holding Kwok in

conditional civil contempt, finding that "the daily fine of $500,000.00 was intended to strongly

encourage defendant to purge himself of the contempt, which, despite being permitted to

accomplish, he has shown no interest in doing. . .”  NYSCEF Doc. No. 953, 199 AD3d 423

(2021).  The Appellate Division further held:

> The motion court acted within its discretion in holding defendant in civil contempt, as
> plaintiff established by clear and convincing evidence that defendant violated a lawful,
> clear mandate of the court, of which he had knowledge, and that such violation resulted
> in prejudice to plaintiff's rights (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015];
> Judiciary Law § 753). …  The motion court is instructed to proceed with an evidentiary
> hearing to resolve a dispute as to ownership and control of the yacht, and to assess
> appropriate penalties.

Pursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022

evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the

yacht.  Kwok failed to testify at the February 2, 2022 hearing, having previously invoked his

Fifth Amendment right to decline to testify or respond to discovery requests relating to the Lady

May in response to PAX's asset discovery efforts.  PX 27, 28, 29, 30.[1]  This invocation of the

Fifth Amendment notwithstanding, Kwok is an active litigant in multiple fora and he has given

prior testimony in this and other proceedings.

Kwok also filed a complaint in this court captioned *Guo Wengui a/k/a Miles Kwok v*

*Hong Zeng*, 157025/2020, which references a blog post from Freebeacon.com dated September

8, 2017 in which Kwok complains about "several incidents involving *his* 152-foot motor yacht,

Lady May..."  (Complaint ¶ 8, NYSCEF Doc. No. 001) ("the Zeng Complaint").  The Zeng

Complaint describes Kwok as an "outspoken critic of the CCP" who has gone to great "lengths

to expose the rampant corruption within the CCP and the Chinese government."  The

*Washington Post* reported that a former advisor to President Trump, Steve Bannon, was arrested

in 2020 while on board the Lady May, and described Mr. Bannon as a friend and business

---

[1] "PX" refers to Plaintiff's Trial Exhibits.

associate of Kwok, "a vocal online critic of the Chinese government who was once close with that country's intelligence service but is now wanted by authorities in Beijing on charges of fraud, blackmail and bribery." Other news outlets have reported that Mr. Bannon utilized Kwok's private jet on more than one occasion to travel to political rallies.

The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process.

Kwok once was the sole shareholder of Hong Kong Investments Limited ("HK International"). The testimony adduced at the hearing established that in 2014 Kwok transferred a 100% interest in HK International to one Qu Guo Jiao for no consideration. Ms. Qu was a trusted business associate of the Kwok family. Thereafter, Kwok fled China and on February 23, 2015, HK International purchased the Lady May for £ 28 million GBP. No testimony adduced at the hearing established the source of funds to purchase the Lady May, but the uncontradicted testimony of Kwok's daughter Mei Guo established that Ms. Qu did not provide the funds to purchase the yacht. Tr. 44.[2] Consequently, a reasonable inference is that Kwok provided the funds to HK International which were used to purchase the yacht. It is undisputed that Ms. Qu transferred the ownership of the Lady May to Kwok's daughter, Mei Guo, on or around June 17, 2017, for $1 or no consideration. Tr. 47. According to Ms. Guo's affidavit (NYSCEF Doc. No. 1162), Ms. Guo ultimately transferred ownership of the Lady May to the current title holder HK International Funds Investments (USA) Limited, LLC ("HK USA"). Ms. Guo further avers that she is the sole owner of HK USA, although all of the multi-million dollar annual expenses for the

---

[2] "Tr." refers to the transcript of the evidentiary hearing, efiled at NYSCEF Doc. No. 1179.

Lady May, including fuel, maintenance, and the captain and crew are paid by Golden Spring

(New York) Ltd. ("Golden Spring."), which is allegedly the Kwok family office.

At the hearing Ms. Guo testified that her brother had bought the Lady May for her. Tr.

46. The Court cannot credit this testimony as there is no evidence that Ms. Guo's brother was

involved with the corporate transactions leading to Ms. Guo's acquisition of the title to the yacht.

And, indeed, in response to a question from the Court, Ms. Guo acknowledged that her brother

was not involved in any of the transfers that occurred before she acquired the yacht. Tr. 47.

Other testimony adduced at the hearing established that Kwok was repeatedly on the

yacht every summer and that Ms. Guo was infrequently on the yacht. Trial Tr. 88:8-20. The

Lady May's captain testified that Kwok was aboard the yacht for a significant portion of the

months of July, August and September in 2020 and that this was consistent with his usual

practice in the summer. Trial Tr. 87:24-88:7. Subsequent to this Court's September 30, 2020

restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for

repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of

Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30,

2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady

May be returned to the Court's jurisdiction Tr. 55; 57-60; 62.

Ms. Guo testified that on the one hand, she directed the Lady May's itinerary but, on the

other hand, testified that security for Kwok was such a concern that there would be no

memorialization of any itinerary. Tr. 52. She further testified that when her father was on the

yacht unaccompanied by her he had the freedom to choose wherever he wanted to go. Tr. 50.

The fundamental issue, however, is who directed the yacht to be removed from this Court's

jurisdiction in October 2020. Ms. Guo claims that in early October 2020 she no longer wished to

5

use the yacht and relayed that instruction to Golden Spring which, in turn, relayed her directive

to the then captain of the ship, Captain Heaslop. Tr. 53.

      Upon further questioning, Ms. Guo admitted that it was Golden Spring that advised her

that the yacht needed to be moved to a warmer place. Tr. 55. Ms. Guo then repeated her

retracted testimony that her brother had given her the yacht, and she stated that her brother is the

sole owner of Golden Spring. Tr. 56. This testimony is not credible given that on September 30,

2020 the Court entered a temporary restraining order restraining Kwok

> . . . from making or causing any sale, assignment, transfer, or interference with any
> property in which he has an interest, or from paying over or otherwise disposing of any
> debt now due or thereafter coming due to him, subject to the exceptions set forth in
> CPLR 5222 and in the ordinary course.

NYSCEF Doc. No. 591. Significantly, Captain Heaslop, the then Captain of the Lady May,

testified that Mr. Kwok told Captain Heaslop that Kwok would no longer be a guest on the Lady

May "a few days" before the Lady May departed for Florida in early October 2020 (and

apparently after the issuance of this Court's September 30, 2020 Order). Tr. 89. Captain

Heaslop also contradicted Ms. Guo's testimony that Ms. Guo gave Captain Heaslop instructions

about the yacht's movement. Tr. 94.

      Ms. Guo also acknowledged having subsequently read the Court's March 16, 2021 Order

requiring the Lady May to be returned to the Court's jurisdiction by May 31, 2021 (NYSCEF

Doc. No. 728). She further acknowledged that she had discussed the Order with her lawyer

(whose services were paid for by Golden Spring) and that she had *ignored* the Order.

      Russell Stockil, the Yacht Management Director for Yachtzoo SARL, testified that his

company had a management contract with HK USA dated May 2021 and that he communicated

with HK USA and Golden Spring, but never with Ms. Guo. Tr. 78. This was also the testimony

of successor Captain Momchil Ivanov. Tr. 82. In short, Ms. Guo's testimony that she owns and

controls the Lady May cannot be credited in any respect. Ms. Guo appears to be a woman in her

twenties, has introduced no evidence that she exercised dominion and control of the Lady May,

and provided no confirmation that she came into possession of the Lady May, other than as a

ruse to shield the Lady May from being levied upon by her father's creditors.

The machinations associated with the shell game Kwok has orchestrated with respect to

the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken

during the five years this litigation has been pending, which is why there are 1,180 docket entries

in this case.

The Court has the authority to hold Kwok in civil contempt under Judiciary Law

§ 753—and "to punish [him], by fine and imprisonment"—where, as here, the Court "expressly

find[s] that [Kwok's] actions were calculated to or actually did defeat, impair, impede, or

prejudice the rights or remedies of a party to a civil proceeding." *Oppenheimer v. Oscar Shoes,*

*Inc.*, 111 A.D.2d 28, 28 (1st Dep't 1985) (citing N.Y. Judiciary Law § 753).   Section 753 sets

forth four requirements:

> [T]o find that contempt has occurred in a given case, it must be determined that
> [1] a lawful order of the court, clearly expressing an unequivocal mandate, was in
> effect. [2] It must appear, with reasonable certainty, that the order has been
> disobeyed . . . [3] Moreover, the party to be held in contempt must have had
> knowledge of the court's order, although it is not necessary that the order actually
> have been served upon the party . . . [4] Finally, prejudice to the right of a party to
> the litigation must be demonstrated.

*Fleetwood Fin. v Walter J. Dowd, Inc.*, 2016 WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016)

(citing *McCormick v Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)).   The

testimony adduced in this case satisfies each element of this standard.   Indeed, the Appellate

Division intimated as such.  *See Pacific Alliance Asia Opportunity Fund L.P.*, 199 A.D.3d 423

(1st Dep't 2021) ("[PAX has] established by clear and convincing evidence that [Kwok] violated

a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted

in prejudice to plaintiff's rights. . .").

The extent of PAX's ongoing "prejudice" turns on whether PAX has demonstrated that it

could ultimately levy on the Lady May to satisfy its now centi-million dollar judgment against

Kwok.  Under CPLR § 5225, "money or other personal property" is leviable where the debtor

holds the requisite "interest." To satisfy this requirement, "[i]t is not necessary that the judgment

debtor have legal title to the property; a beneficial interest is sufficient."  Weinstein, Korn &

Miller, New York Civil Practice: CPLR ¶ 5225.09. "A beneficial interest is '[a] right or

expectancy in something . . . as opposed to legal title to that thing.'"  *Peterson v. Islamic Rep. of

Iran*, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing Black's Law Dictionary,

Interest (9th ed. 2009)).  Kwok has much more than a beneficial interest in the Lady May.  Not

only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the

person who principally enjoys the use of the yacht.

The key factor is whether "the property benefitted [the beneficial owner] as if he

had received the property directly." *Id*. (quoting *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper

Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010); *see also Gliklad v. Chernoi*, 129 A.D.3d 604 (1st

Dep't 2015) (upholding rejection of the judgment debtor's contention that he no longer held an

interest in property because he transferred his interest to his daughters); *Colfin Bulls Funding B,

LLC v. Ampton Invs., Inc*., 112 N.Y.S.3d 868 (Table), at *2, 6 (N.Y. Sup. Ct. 2018) (granting

judgment creditor's turnover motion notwithstanding judgment debtor's assertion that he

transferred property to a corporation, because even if true, the evidence showed that he "retained

control and/or an interest" in the property).

The evidence clearly and convincingly demonstrates that Kwok holds a beneficial

interest in and controls the Lady May. In the latter connection, the Court takes notice of the

filing of the Zeng case and draws an inference from all the record facts that Kwok has taken

extraordinary steps to shield the yacht from his creditors. Moreover, Kwok's "family office"

funds the yacht's day-to-day operations and maintenance.

The Court finds that Ms. Guo's testimony was not only internally inconsistent and

dissembling, but also significantly undermined by the testimony of Captains Heaslop and Ivanov

and Mr. Stockil, who stated that they have never taken yacht-related direction from Ms. Guo in

the four and-a-half years that she directly or indirectly held title to the yacht.

In addition, it is established New York law that a party's invocation of the Fifth

Amendment in a civil proceeding "may form the basis of an adverse factual inference." *DeBonis*

*v. Corbisiero*, 155 AD2d 299, 300 (1st Dep't 1989). An adverse inference may be applied

whenever a factual determination is necessary or permitted, including in the context of contempt

motions. *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *10

(S.D.N.Y. Dec. 19, 2013), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *LiButti v. United States*, 107

F.3d 110, 120–25 (2d Cir. 1997).

Similarly, under the missing witness rule, "[a] trier of fact may draw the strongest

inference that the opposing evidence permits against a witness who fails to testify." *Crowder v.

Wells & Wells Equip., Inc.*, 11 A.D.3d 360, 361 (1st Dep't 2004) (applying adverse inference

where defendant who failed to appear "would be knowledgeable about a material issue raised by

the evidence").

PAX is entitled to an adverse inference under both of these avenues. Kwok has invoked

his Fifth Amendment right against self-incrimination in response to PAX's post-judgment

discovery, including in response to requests specifically about the Lady May. While Kwok

9

argues that an adverse inference is not appropriate here because "[o]nly after a threshold showing

that a piece of evidence is authentic is a party obligated to respond to it," this contention fails of

its own weight. PAX has proffered substantial admissible evidence that Kwok has the requisite

beneficial interest in and control of the Lady May. *See People v. Primo*, 96 N.Y.2d 351, 753

N.E.2d 164 (2001) (explaining that evidence is probative if it "tends to prove the existence or

non-existence of a material fact, *i.e.*, a fact directly at issue in the case").

As of February 7, 2022, the Lady May has remained outside the jurisdiction of the Court

for 268 days. Based on the daily fine of $500,000 imposed by this Court and affirmed by the

Appellate Division, the resultant fine would amount to $134,000,000.00, which is more than

PAX's outstanding judgment of nearly $120 million and a multiple of the GBP £ 28 million

purchase price of the Lady May. Nevertheless, if billionaire litigants can simultaneously seek to

use Court process in New York and elsewhere in the United States while knowingly and

intentionally violating Court orders, there is no rule of law. Kwok must remit $134,000,000.00

to PAX within five business days of the service of this Court's Order with Notice of Entry. The

Court is prepared to exercise its full authority under Judiciary Law § 753 in the event the fine is

not timely paid.

Dated: February 9, 2022

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

10

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                         *   Case No. 22-50073(JAM)
                              *
    HO WAN KWOK,              *   Bridgeport, Connecticut
                              *   August 1, 2022
              Debtor.         *
                              *
* * * * * * * * * * * * * * * *


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                    AARON ROMNEY, ESQ.
                                   ERIC A. HENZY, ESQ.
                                   STEPHEN M. KINDSETH, ESQ.
                                   Zeisler & Zeisler, P.C.
                                   10 Middle Street, 15th Floor
                                   Bridgeport, CT  06604

                                   WILLIAM BALDIGA, ESQ.
                                   Brown Rudnick, LLP
                                   Seven Times Square
                                   New York, NY  10036


For the Creditor, Pacific          PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity         STUART M. SARNOFF, ESQ.
 Fund L.P.:                        O'Melveny & Myers LLP
                                   Times Square Tower
                                   7 Times Square
                                   New York, NY  10036

                                   PATRICK BIRNEY, ESQ.
                                   Robinson & Cole
                                   28 Trumbull Street
                                   Hartford, CT  06103


Proceedings recorded by electronic sound
transcript produced by transcription se

**Fiore Reporting and Transcription Service, I**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

CASE NO. _____ 2022-50073 _____

IN RE: Ho Wan Kwok

VS. _____

    Debtor   EXHIBIT _____ H _____

DATE _____ IDEN.

DATE 11/18/2022 EVID.

        BY   P.E.

            Deputy Clerk

AO 386-A

APPEARANCES Cont'd:

For the Creditors Committee:     IRVE GOLDMAN, ESQ.
                                 Pullman & Comley
                                 850 Main Street
                                 Bridgeport, CT  06601

For the Creditors, Rui Ma,       KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:       McElroy Deutsch
                                 225 Liberty Street
                                 36th Floor
                                 New York, NY  10281

For the U.S. Trustee:            HOLLEY L. CLAIBORN, ESQ.
                                 Office of the United States
                                    Trustee
                                 The Giaimo Federal Building
                                 150 Court Street, Room 302
                                 New Haven, CT  06510

For HK International and         STEPHEN M. KINDSETH. ESQ.
 Mei Guo:                        Zeisler & Zeisler, P.C.
                                 10 Middle Street, 15th Floor
                                 Bridgeport, CT  06604

Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166

Proposed Counsel for the         DOUGLAS SKALKA, ESQ.
 Chapter 11 Trustee:             Neubert, Pepe & Monteith
                                 195 Church Street
                                 New Haven, CT  06510

3

1        ((Proceedings commenced at 12:15 p.m.)

2              THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok.

4              THE COURT:  Okay.  Good afternoon.  If we could

5     have appearances for the record, starting with the Chapter

6     11 Trustee, please.

7              MR. DESPINS:  Good afternoon, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9              THE COURT:  Good afternoon.

10             MR. SKALKA:  Good afternoon, Your Honor.  Douglas

11    Skalka as proposed local counsel for the Chapter 11 Trustee.

12             THE COURT:  Good afternoon.

13             MS. CLAIBORN:  Good afternoon.  Holley Claiborn

14    for the U.S. Trustee.

15             THE COURT:  Good afternoon.

16             MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

17    Goldman, Pullman & Comley, representing the creditors

18    committee.

19             THE COURT:  Good afternoon.

20             MR. GOLDMAN:  If I can ask where I might get a

21    mask from the Court?

22             THE COURT:  There's some right on the table here,

23    Attorney Goldman, right in front of Attorney Henzy.

24             MR. GOLDMAN:  Oh, okay.  Thank you.

25             THE COURT:  Sure.

4

1          MR. FRIEDMAN:  Good afternoon, Your Honor.  Peter

2     Friedman from O'Melveny & Myers, on behalf of Pacific

3     Alliance Asia Opportunity Fund, L.P.

4          THE COURT:  Good afternoon.

5          MR. FRIEDMAN:  Thank you.

6          THE COURT:  And with your is your co-counsel and

7     local counsel?

8          MR. SARNOFF:  Stuart Sarnoff also of O'Melveny &

9     Myers.

10          MR. BIRNEY:  And Patrick Birney, Robinson & Cole.

11     Good afternoon.

12          THE COURT:  Good afternoon.

13          Attorney Henzy?

14          MR. HENZY:  Eric Henzy for Ho Wan Kwok.

15          THE COURT:  Good afternoon.

16          MR. ROMNEY:  Aaron Romney also on behalf of

17     debtor, Ho Wan Kwok.

18          THE COURT:  Good afternoon.

19          MR. KINDSETH:  Stephen Kindseth on behalf of Ho

20     Wan Kwok.

21          THE COURT:  And what about your other clients, Mr.

22     Kindseth?

23          MR. KINDSETH:  I don't know if it would be

24     necessary for us to appear on behalf of HK International,

25     but also on behalf of HK International, Stephen Kindseth,

5

1    Zeisler & Zeisler.

2              THE COURT:  And Mei Guo?

3              MR. KINDSETH:  And Mei Guo.

4              THE COURT:  Okay.  Thank you.

5              MS. MAYHEW:  Good afternoon, Your Honor.  Kristen

6    Mayhew, McElroy Deutsch Mulvaney & Carpenter, on behalf of

7    Creditors Rui Ma, Zheng Wu and Weican Meng.

8              THE COURT:  Good afternoon.

9              Mr. Baldiga, I saw you back there, but please go

10   ahead and announce --

11             MR. BALDIGA:  Yes, Your Honor.  William Baldiga,

12   Brown Rudnick.  Thank you.

13             THE COURT:  Good afternoon.

14             Does anyone else wish to make an appearance on the

15   record today?

16        (No audible response.)

17             THE COURT:  Okay.  Mr. Baldiga, we're going to

18   take up your application, your motion to withdraw as

19   attorney, first, if you'd like to come forward, please.  You

20   can come up to the lectern if that's easier, whatever is

21   easier for you.

22             MR. BALDIGA:  I'll do that.  Thank you.

23             THE COURT:  Good afternoon.

24             MR. BALDIGA:  Good afternoon.  Well, Your Honor,

25   our motion was filed on July 13.  We supplemented it with a

1    further submission at docket 623 last week.

2              THE COURT:  I did see that.  Thank you.

3              MR. BALDIGA:  Okay.  And I think there were

4    possibly at least two concerns with the court or among other

5    parties.

6              One is a matter of law, whether we are entitled to

7    withdraw, especially now that there has been the appearance

8    of two other firms for Mr. Kwok as debtor out of possession.

9              And then second, we anticipated, I think

10   appropriately and had conversations with Ms. Claiborn and

11   Mr. Despins, as to our continuing responsibilities as to our

12   retainer and as former counsel to the debtor.

13             We just wanted there to be no mystery or no

14   question about the fact that we understand the rules.  We've

15   complied with the rules throughout and would continue to.

16   And if -- if there were any concerns, I wanted to be

17   proactive in addressing those, including with the court

18   today.

19             We have no benefit from holding the retainer.  And

20   so we -- other than security for our fee obviously -- and so

21   we're happy to have whatever arrangements -- I think the

22   current arrangements are fine with Ms. Claiborn and her

23   office and with the trustee and his office --

24             THE COURT:  For your firm to retain the -- or to

25   keep the retainer subject to an order granting your fees, is

1    that the current -- is that --

2              MR. BALDIGA:  Yes, Your Honor.

3              THE COURT:  Yeah.  Sure.  Okay.  Go ahead.  That's

4    fine.

5              MR. BALDIGA:  And, I mean, it's with a very

6    wellregarded bank.  It's not the firm's funds.

7              THE COURT:  Right.

8              MR. BALDIGA:  It's we keep retainers in a

9    segregated account.  We're a firm in -- fortunately in good

10   standing financially and otherwise so I don't think they're

11   at risk in any way.

12             As to replacement counsel, I unfortunately was on

13   vacation at the last hearing, but I've read the --

14             THE COURT:  Well, hopefully it was a good

15   vacation.

16             MR. BALDIGA:  -- transcript and I understand the

17   dialog.

18             THE COURT:  Hopefully, it wasn't unfortunate that

19   you were on vacation.  Hopefully --

20             MR. BALDIGA:  I wasn't going to say that, but I

21   appreciate that comment.  I think that's right.  I'm not

22   going to take a position as to the Zeisler retention.

23             THE COURT:  Understood.

24             MR. BALDIGA:  That's a matter for other parties to

25   address.  But Mr. Mitchell has appeared.  The Zeisler firm

8

1    has appeared.

2            I think our motion to withdraw should be allowed

3    as a matter of law whether or not actually there is

4    replacement counsel.  But with the replacement counsel, I

5    think it should be, hopefully, routinely addressed.

6            I'm happy to answer any questions from any party

7    or the court, but otherwise I would just rest on those

8    papers.

9            THE COURT:  Thank you.  I want to hear from

10   everyone else as -- I haven't seen anyone object to your

11   motion and I don't know of any objection.

12           So if anyone has an objection I'd like them to

13   raise it now.

14           MR. DESPINS:  Your Honor, it's not an objection,

15   but we had subject to, so if we could be heard at the

16   appropriate time?

17           THE COURT:  Well, subject to -- I'm going to make

18   Brown Rudnick -- they're going to have to file a fee

19   application.  They know that.  That's already -- that's not

20   a problem.

21           Is the issue -- when you say -- are you concerned

22   about Brown Rudnick holding onto the funds?  I thought there

23   was no problem with that.

24           MR. DESPINS:  No, Your Honor.  The issue is that

25   we want them to confirm that they will make themselves

9

1    available.

2              And may I approach, Your Honor?

3              THE COURT:  Yes.  Yes.  Yes, please.

4              MR. DESPINS:  Okay.

5              THE COURT:  I'm sorry.  I understand what your

6    point is now that I forgot to mention.  You had said in your

7    papers that you would like them to be available and to

8    assist you if necessary.

9              MR. DESPINS:  Subject to whatever protective order

10   Your Honor would enter.

11             THE COURT:  Right.

12             MR. DESPINS:  We filed a 2004 --

13             THE COURT:  Yes.

14             MR. DESPINS:  -- last week.  They're one of the

15   targets.

16             THE COURT:  Right.

17             MR. DESPINS:  So we don't need to debate the

18   merits of that.  Just that --

19             THE COURT:  Right.

20             MR. DESPINS:  -- I want to make sure that they're

21   not sailing into the sunset.  That's all.

22             THE COURT:  Okay.  And have you and Mr. Baldiga

23   had any -- I don't know that you've had an opportunity, but

24   have you had any conversations about what you've just said

25   on the record?

10

1           MR. DESPINS:  Not about that point.

2           MR. BALDIGA:  I'd be happy to address it, Your

3      Honor.

4           Well, we have obligations, obviously, to the Court

5      under the rules and under law.  Former counsel is in an

6      awkward position when it comes to matters as to privilege.

7      We don't want to be whipsawed in that I don't want to make a

8      commitment to do something that could violate a privilege

9      here.

10          And so, for example, of course, I've already had

11     conversations with Mr. Despins.  Will continue to be

12     available.  I'm not hard to find.

13          I certainly don't want to make a commitment that

14     would put our firm at risk for a claim by a former client

15     that we've somehow invaded a privilege or put them in a

16     position where they couldn't defend a privilege.

17          This is really I don't think an issue for Brown

18     Rudnick as much as it is for the trustee and counsel,

19     replacement counsel, to the debtor to navigate.  These, in

20     my experience, have been challenging issues to navigate in

21     the few other cases I've been in where there's a debtor out

22     of -- out of possession.

23          So I'm pleased to continue to be available to Paul

24     Hastings as they -- as they wish, but I will not commit to

25     do something that will put our firm at risk.

11

1          THE COURT:  Understood.  I have a question for you

2     though too.

3          MR. BALDIGA:  Certainly.

4          THE COURT:  And I'll hear from Mr. Despins if he

5     wants to respond to what you've said.

6          What I would ask is -- and I -- I would assume

7     this would not be a problem from your perspective, that the

8     firm will, you know, accept service.  There won't be any

9     issue of service if -- Mr. Despins going to serve probably a

10    subpoena, right, on your records.  He's going to want to see

11    your records.

12         And you're going to -- you're going to either --

13    you or other counsel object on privilege grounds and then

14    we'll have to see how it all works out at the end of the

15    day, whether there can be some form of protective order

16    that's agreed to or that the Court has to enter.

17         I just don't want to have an issue that you

18    wouldn't accept service or something along -- because, to

19    me, that's rudimentary.  You have every right, your firm has

20    every right to file whatever documents they think are

21    appropriate with regard to any discovery requests that are

22    made upon you and anything like that.  That's not what I'm

23    talking about.

24         I'm just talking about I don't want us all to

25    spend time on issues of service or something that I would

12

1    consider, you know, fundamental.

2         There is every -- you have every right to raise

3    any issue you feel is appropriate under applicable law and

4    rules with regard to your attorney/client privilege and any

5    other privilege that you may assert, but I just want -- that

6    would be the commitment that the Court would -- I don't want

7    to spend any time on that and I don't think you do either.

8         MR. BALDIGA:  So two commitments, Your Honor.

9         One, as is customary and appropriate, the trustee

10   as one of his first orders of business -- I think as he said

11   in his papers, sent a simple letter, a document hold letter

12   --

13        THE COURT:  Right.

14        MR. BALDIGA:  -- which is customary in

15   investigations more generally.  And we have -- and I told

16   the trustee this, we have implemented our hold internally,

17   so we've been responsible in that regards.  So nothing will

18   be lost.  That's step number one and frankly basics.

19        Step number two, there will not need to be service

20   or constables or any type of thing.  If there's a 2004 order

21   entered, we'll comply with it.  We don't need a subpoena or

22   other formal process as long as the debtor is not

23   challenging whether this trustee has gone through the

24   appropriate steps.

25        That's really up for the debtor to say --

13

1          THE COURT:  I understand.

2          MR. BALDIGA:  -- that something is lacking, but it

3    won't be Brown Rudnick standing in the way.

4          THE COURT:  That's my question and my request and

5    I appreciate that.  Thank you.

6          MR. BALDIGA:  Okay.

7          THE COURT:  Now, Mr. Despins, do you have anything

8    else you want to add to what Mr. Baldiga just stated?

9          MR. DESPINS:  No, Your Honor.  You covered my

10   point.  Thank you.

11         THE COURT:  Okay.  Thank you.  All right.

12         So, Mr. Baldiga, as you said in your remarks, we

13   haven't had that many cases where -- in recent past, where

14   the debtor has been removed from possession and so the

15   issues about whether -- you know, I don't even understand

16   the two counsel yet. I'm going to talk to Mr. Henzy about

17   that.

18         But I agree with you that your motion should be

19   granted.  And it is going to be granted on the grounds that

20   other parties, other lawyers, have filed an appearance on

21   behalf of the debtor, and the debtor is out of possession.

22   So that's fine.

23         What I need to know from you, and I don't know if

24   you've had any conversations with Attorney Claiborn about

25   this, or anybody else, and I'm not saying you should have --

14

1    how much time do you need to file a fee application?

2              MR. BALDIGA:  On that point, Your Honor, I have

3    not had discussions, but I've had quite a bit of thought

4    about it.

5              At the -- at the last couple of hearings, one of

6    the Court's comments, which I thought was very well taken by

7    everyone, is that what you would hate to do is put people

8    through a lot of work needlessly.  I think the same goes --

9    there will be a time and a place for a fee application.

10             Given the criteria for the allowance of fees,

11   especially as counsel for the estate, is so what did your

12   work come to?

13             I think it would be very difficult for the Court

14   or any party to assess today.  For example, in your

15   memorandum of decision appointing a trustee, you cited to

16   two of the things that we brought about.

17             One was we filed a plan.  Whether that is

18   stillborn or ends up being the basis for a plan that's

19   confirmed in this case, time will tell.  I don't think it's

20   possible to assess that today and maybe not for some time.

21             Second, the boat.  We don't know where the boat --

22   the whole issue with the boat is going.  Not just

23   procedurally, but does that become part of the estate or

24   not?  Is it voluntary or by court decision?  Is it part of

25   the deal or not?

1          We take some pride in what we've done, substantial

2    pride in what we've done.  The case, for us, is not ending

3    in the way that we had intended, but I think the Court, and

4    especially the trustee, the Office of the United States

5    Trustee, the replacement counsel, the committee, will all be

6    able to assess the value of what we've done with the benefit

7    of some hindsight once the dust has settled here.

8          So I -- and it's a lot of work to put together a

9    fee application.

10          The other problem with doing a fee application

11    today is it's very hard to go further than what I just did

12    without concerns of privilege and confidentiality.  Those

13    will be lessened over time as discovery plays out.

14          So I would ask that given the recognition, that I

15    confirm again, that the money doesn't go anywhere without a

16    fee application that we just table that for this -- at this

17    point.  And at some point any party can say to the Court or

18    to me, hey, I think we need to get this going.  But I just

19    don't think it's today.  And I think as the case proceeds it

20    will become more obvious when that will be.

21          THE COURT:  Okay.  I would like to hear from

22    others about that point.  Okay?

23          MR. BALDIGA:  Of course.

24          THE COURT:  But I understand your point.  Thank

25    you.

16

1         All right.  Does anybody --

2         MR. BALDIGA:  Anything else from me right now,

3    Your Honor?

4         THE COURT:  Say that again?

5         MR. BALDIGA:  Anything else right now from --

6         THE COURT:  I don't have any questions right now.

7    I understand what your position is.  And I'm curious to hear

8    what other parties think about that.

9         MR. BALDIGA:  I'll stand back for a moment.

10        THE COURT:  Okay.  Thank you.

11        I'd like to know what the other parties think

12   about Mr. Baldiga's suggestion that while the motion to

13   withdraw the appearance would be granted at this time that

14   there wouldn't be a need to file a fee application at this

15   time?

16        MS. CLAIBORN:  Your Honor, Holley Claiborn for the

17   U.S. Trustee.

18        I think Attorney Baldiga makes some fair and valid

19   points about the process and about where we are in this

20   case.  And perhaps the easiest way to do it is to put it on

21   a tickler say four to six months out and we can revisit the

22   issue, where we are in the case and whether or not it's an

23   appropriate time to file a fee application.

24        Because as Attorney Baldiga noted there would be a

25   difficulty at this point in assessing the value to the

17

1    estate of the services that were provided because we don't

2    know all the facts and we aren't anywhere near the finish

3    line.

4            THE COURT:  Okay.  Thank you.

5            Anyone else wish to be heard?

6            MR. DESPINS:  Your Honor, the trustee agrees with

7    Mr. Baldiga's proposal.

8            THE COURT:  Okay.  Thank you.

9            Mr. Friedman?

10           MR. FRIEDMAN:  It's Peter Friedman from O'Melveny

11   & Myers.  PAX agrees that this is a sensible way to proceed.

12           THE COURT:  Okay.  Thank you.

13           MR. GOLDMAN:  Your Honor, for the committee, Irve

14   Goldman.  We have no problem with the proposal suggested by

15   the U.S. Trustee.

16           THE COURT:  And Mr. Baldiga?

17           MR. GOLDMAN:  Correct.

18           THE COURT:  Yes.  Thank you.

19           Anyone else wish to be heard?

20         (No audible response)

21           THE COURT:  Okay.  So, Mr. Baldiga, the motion to

22   withdraw as attorney filed on behalf of Brown Rudnick, and

23   obviously all the individuals from Brown Rudnick who filed

24   notices of appearance, in the case is granted.

25           And there will not be a need to file a fee

18

1    application at this time.

2              So the order, probably just do some firm of a

3    virtual order that says the motion to withdraw is granted

4    for the reasons stated on the record, and that further order

5    of the Court will enter with regard to the filing of a fee

6    application by Brown Rudnick.

7              Does that make sense to you?

8              MR. BALDIGA:  It does, Your Honor.  Thank you.

9              THE COURT:  Okay.  All right.  Well, I'm sorry to

10   see you go.  But it is an unusual case.  And I understand

11   the position that you and your firm have taken on the

12   parties, all of the parties who have been intimately

13   involved in the case, and newly involved in the case, agree

14   with your position and so I have no reason to think it

15   should move in any other direction at this point.

16             MR. BALDIGA:  Thank you, Your Honor.

17             THE COURT:  Okay.  Thank you.

18             MR. BALDIGA:  May I take my leave?

19             THE COURT:  Yes, you may.

20             MR. BALDIGA:  Okay.

21             THE COURT:  Okay.

22             MR. BALDIGA:  Very good.  Thank you, Your Honor.

23             THE COURT:  All right.  Thank you very much.

24             All right.  So the motion to withdraw as attorney

25   is granted and an order will enter, but it will most likely

1    be just a virtual order.  Okay?  So that's ECF 543.

2              All right.  Just if everyone could give me one

3    moment and then we'll turn to the rest of the matters.

4         (Pause)

5              THE COURT:  Now, with regard the rest of the

6    matters on the calendar, I'm sure people have an idea of how

7    they think they should proceed, as far as the order, in

8    which they should go.  I have an idea of how I think they

9    should proceed.

10             Mr. Despins, what is your position as to what we

11   should address next today?

12             MR. DESPINS:  Thank you, Your Honor.

13             Very briefly, as an initial matter I want to say

14   that at the end of the hearing we have a lot of -- not a lot

15   -- but we have a number of housekeeping matters that we will

16   want to cover.

17             THE COURT:  Well, do you want to cover them now?

18   Are we talking about motions that have been pending by the

19   debtor since the beginning of the case, or are you --

20             MR. DESPINS:  No.  But, for example, the bar date

21   order.  There's a -- I don't want to cover it now because

22   it's actually more involved than initially thought.

23             THE COURT:  Okay.

24             MR. DESPINS:  So the bar date order is one of

25   them.  Also we would want the Court to -- so I'm not going

20

1    to cover all of them -- but to schedule status conferences

2    on a regular basis in the case.

3         THE COURT:  That's fine.

4         MR. DESPINS:  So things like that.

5         THE COURT:  I will say one thing that's not

6    relevant to you actually -- or it might be -- Mr. Baldiga,

7    as counsel, and his firm, filed several motions some time

8    ago that never were resolved because of the change of the

9    circumstance of the case when the debtor decided to withdraw

10   the motion for funding.

11        There are still outstanding motions out there that

12   we're -- we can talk about later -- but the committee also

13   has outstanding applications to employ professionals.

14   There's a lot of things that maybe we do just address at a

15   status conference or later today, but we're going to resolve

16   those one way or another.

17        I would want to know whether or not you, as the

18   trustee, are going to, you know, step into the shoes of any

19   of those pending motions that were -- for example, they were

20   -- the debtor was -- we had an evidentiary hearing about a

21   financial advisor.

22        You know, I was about to rule when all of that

23   changed, everything changed, the motion to withdraw the

24   funding came.  You know, it was withdrawn.  And then I think

25   that the reality is that that is a motion at least if Brown

21

1   Rudnick stayed in the case they were no longer going to

2   pursue.  I have no idea if you're going to do that.  But in

3   any event we can talk about it later.

4           With regard to where we are today --

5           MR. DESPINS:  Yes.

6           THE COURT:  -- I mean, the most important things

7   -- everything's important, but -- including the bar date

8   order -- and I did look at -- I have to say I haven't

9   scoured, but I looked at the proposed order that you

10  submitted with redlining and things like that and I have a

11  couple of thoughts on that but nothing substantial.  Okay?

12          With regard to whether or not -- so the things

13  that have to be decided today are -- everything has to --

14  has to be handled -- but as we had our last hearing, I know

15  there's a lot of discovery that's been served on you because

16  you filed motions to quash.  So I understand that.

17          Mr. Henzy's pursuing this -- his motion for relief

18  from judgment order.  That's been objected to by several

19  parties.  I have some concerns about the motion and the

20  process that we'll all need to talk about.

21          And then you -- and then it's the Paul Hastings'

22  retention and the -- and the local counsel retention.

23          MR. DESPINS:  Correct.  And then there was also --

24  but I'm not sure you're going to take that up -- you had

25  asked the Zeisler firm and the U.S. Trustee to brief some

22

1    issue.

2              THE COURT:  Yes.

3              MR. DESPINS:  We didn't get involved in that --

4              THE COURT:  No.

5              MR. DESPINS:  -- so I don't know where that

6    stands.

7              THE COURT:  That has -- that's where we're going

8    to turn next I believe.

9              MR. DESPINS:  Okay.

10             THE COURT:  Okay.  But let's do the housekeeping,

11   for what we call housekeeping, although it has substantive

12   impact at the end then.

13             MR. DESPINS:  Yes.

14             THE COURT:  Let's hope.

15             MR. DESPINS:  There's a lot -- there's a lot to

16   cover in a sense that --

17             THE COURT:  Yes.

18             MR. DESPINS:  -- for example, the bar date, we did

19   mark it up because you asked us to do that.

20             THE COURT:  Right.

21             MR. DESPINS:  And that's going to sound bizarre,

22   but I don't think we should proceed with that for reasons

23   related to the *Genever* case.  There's a whole thing --

24             THE COURT:  Oh, okay.

25             MR. DESPINS:  -- that I want to explain to Your

23

1    Honor.

2              THE COURT:  Okay.

3              MR. DESPINS:  -- so we'll do that at the end of

4    the hearing --

5              THE COURT:  Okay.  That's fine.

6              MR. DESPINS:  Thank you, Your Honor.

7              THE COURT:  All right.  Thank you.

8              All right.  So, Attorney Claiborn and Attorney

9    Henzy, the last hearing I did ask you both -- and I know you

10   did brief the issue on whether or not 327(a) applies to

11   Zeisler & Zeisler and whether or not there's an actual

12   conflict of interest because of the representation of three

13   parties in this case at the same time.

14             Before we get to that though, I don't understand

15   the other lawyer, Attorney Henzy, who has filed an

16   appearance and what his role is going to be and why there's

17   a need for another attorney?

18             MR. HENZY:  I'm going to take my mask off just

19   when I speak, Your Honor.

20             THE COURT:  Go right ahead.

21             MR. HENZY:  I apologize for that.  I just --

22             So Attorney Mitchell appeared -- as I understand

23   it, Your Honor, there was this window, I'll call it, between

24   Brown Rudnick exiting and one -- I don't think it makes any

25   difference to Mr. Baldiga's presentation, but the debtor had

24

1    --  I'm told -- I was not part of it, but made an

2    affirmative decision to terminate --

3            THE COURT:  That's what we were told by someone

4    from Brown Rudnick last week.  And I don't remember who it

5    was, so I apologize.

6            MR. HENZY:  And, of course, subject to any

7    bankruptcy code, bankruptcy rules issue, under the Rules of

8    Professional Conduct, if a client terminates a lawyer, the

9    lawyer is ethically prohibited from representing a client

10   any further.

11           So there was this window where Brown Rudnick was

12   no longer representing -- again, putting the bankruptcy

13   code, bankruptcy rules and the need to withdraw aside -- but

14   I could understand them taking the position they were no

15   longer representing the debtor and my firm was not -- was

16   not at that point retained by the debtor and Mr. Mitchell

17   appeared really solely for the purpose -- I think at the

18   time of that -- the July 8 hearing that Your Honor held on

19   the U.S. Trustee's motion to appoint Mr. Despins as trustee,

20   to put something on the record that the debtor in fact was

21   objecting to Mr. Despins' appointment as trustee.

22           And my recollection is that it was done by filing

23   a kind of a letter as opposed to a formal pleading that you

24   typically would see.

25           But I believe that the debtor does not have any

1    intention of having Attorney Mitchell be in court

2    representing him.  That's why he's retained -- he's retained

3    us.

4            THE COURT:  Well, then, will Mr. Mitchell be

5    withdrawing his appearance?

6            MR. HENZY:  I'd certainly discuss that with the

7    debtor and with Mr. Mitchell, yes.

8            THE COURT:  Because Mr. Mitchell said in the

9    letter that he understood all the rules in the bankruptcy

10   court, but yet he filed this letter.

11           So I -- I don't think that there should be two

12   lawyers for the debtor in this court.  I don't see the need

13   for it.

14           And I don't -- and Mr. Mitchell, who says he

15   understood, does not understand how it works here

16   apparently.  So I would think that it would be wise for Mr.

17   Mitchell to withdraw his appearance.

18           MR. HENZY:  Understood, Your Honor.

19           THE COURT:  Okay.

20           MR. HENZY:  And we'll get that cleaned up.

21           THE COURT:  Okay.  All right.  Now, turning to the

22   327(a) issue, and Attorney Claiborn as well, and, you know,

23   Attorney Henzy, I went back when you said, you know, it was

24   black letter law.

25           And of course it's not really black letter law.

26

1    It says it in a line in *Collier's* that -- and it doesn't

2    cite to any cases.  And then the cases that cite to the

3    proposition that says that a debtor out of possession,

4    327(a), doesn't apply, cite to the *Collier's* cite.

5              So it's very interesting actually because you

6    would think there would have been more out there than there

7    really is.

8              And the cases that cite for the proposition that

9    say you are out of possession and, therefore, the chapter --

10   I'm sorry -- therefore, the 327(a) does not apply all rely

11   on a sentence in *Collier's* which is fairly interesting to

12   me.

13             But in any event there's other things in *Collier's*

14   that are interesting as well with regard to the status of

15   this case.

16             Attorney Claiborn, your motion talks about whether

17   the debtor's acting on behalf of the estate or on his

18   individual -- in an individual way as to why -- whether

19   327(a) should apply.

20             So where do things stand from the U.S. Trustee's

21   standpoint at this point?

22             MS. CLAIBORN:  Your Honor, I don't think we're any

23   further than we were when we filed our brief except to say

24   that the debtor's brief filed by the Zeisler firm did

25   acknowledge the fact that there have been conflict waivers

27

1    executed amongst the parties.

2              THE COURTROOM DEPUTY:  Attorney Claiborn, you're a

3    little low.

4              THE COURT:  She can't -- yeah.  You have to speak

5    up a little bit.  She can't you.  I'm sorry.

6              MS. CLAIBORN:  I am actually speaking loudly, but

7    I'll try again.

8              I wanted to point the court to the fact that in

9    the Zeisler brief at ECF 620 there is a representation that

10   conflict waivers have been executed by and between the

11   debtor, HK International and Ms. Guo.

12             We have not seen those conflict waivers and we're

13   not privy to any discussions that may have happened by and

14   among the debtor, HK, and Ms. Guo and Zeisler's office.

15             So as we are at the moment not any further along

16   in the analysis than we were when we filed our brief back on

17   July 27th, so in our viewpoint it very much depends on what

18   the debtor is aiming towards and what the debtor is doing as

19   to whether or not the Zeisler firm must comply with Section

20   327(a).  And as part of that it has a lot to do with their

21   role with respect to the three different parties, the

22   debtor, HK and Ms. Guo.

23             THE COURT:  Okay.  So you're -- you don't know

24   whether 327(a) applies?  Or you're saying it's not -- it's

25   not discernible because you don't know what role they're

28

1    playing?

2              MS. CLAIBORN:  Correct.

3              THE COURT:  Okay.  Does anyone else wish to be

4    heard on the conflict issue?

5              The 327(a) issue, I have to say, again, *Collier*

6    says in one line that it doesn't apply to a debtor not in

7    possession.  That's all it says.  But that issue, you know,

8    could be continually raised depending upon what happens in

9    the case just because -- if I find 327(a) doesn't apply at

10    this time, it doesn't mean I couldn't find 327(a) doesn't

11    apply at some other time.

12              But that's aside from the fact that the Zeisler

13    firm represents now Mr. Kwok, HK International and Ms. Guo,

14    and says that because the trustee now is automatically

15    substituted as a party in the adversary proceeding that HK

16    brought against Mr. Kwok that there's no conflict.

17              Do you agree with that?

18              MS. CLAIBORN:  I don't think it's as pure as that,

19    Your Honor.

20              THE COURT:  Well, that's their argument though.

21              MS. CLAIBORN:  Correct.

22              THE COURT:  Okay.  And so what do you think?

23              MS. CLAIBORN:  Your Honor, the U.S. Trustee -- the

24    brief that we filed sets out the opinions that have been

25    issued in various different jurisdictions, and obviously not

29

1    this one, as to the applicability of 327 and I think there

2    is support for the idea that depending on what counsel is

3    doing and what their role really is in the case, that they

4    are subject to 327.

5            To the extent that the debtor is pursuing the

6    debtor's Rule 60(b) motion here today with the mind set and

7    the goal that that trustee appointment is invalid because

8    Trustee Despins does not satisfy the disinterested status

9    that is required, that position is being taken and advocated

10    for the apparent benefit of the estate.

11            And so to the extent that that is the debtor's

12    objective and that is the debtor's goal, there is an

13    interpretation that can be made that 327(a) does in fact

14    imply to Zeisler.

15            THE COURT:  Okay.  Attorney Henzy?

16            MR. HENZY:  On the two points, Your Honor, I -- I

17    did not recollect that all of the cases that I cited on the

18    327(a) issue that I -- I know for sure several of them did

19    cite the *Collier's*, but I'm not sure all of them did.

20            I could not find any case that said to the

21    contrary, that a debtor out of possession is required to

22    retain --

23            THE COURT:  I think you're right.  I couldn't

24    either.  I looked.  I agree with you.  I don't -- and I

25    think the references in those cases to *Collier* is it.

30

1       There's other cases -- there's other issues about

2   whether you can be compensated under 330.  That's a

3   different issue.

4       MR. HENZY:  Yeah.  Yeah.  Which I think the

5   Supreme Court --

6       THE COURT:  But I agree.  The 327(a), there's

7   nothing that says that a debtor in -- a debtor out of

8   possession's counsel must abide by 327(a).  I wasn't able to

9   find anything.

10      And then the only thing is whether or not you had

11  to disclose your compensation.  And you disclosed your

12  compensation.

13      But I don't understand what an evergreen retainer

14  means from your perspective.  I think I know what it means,

15  but I assume that means when you're done with your hundred

16  thousand you get another -- it's evergreen, it's always

17  blooming, it never loses it's --

18      MR. HENZY:  It always -- it's always blooming.

19      THE COURT:  It's always blooming.

20      MR. HENZY:  It's always blooming, yes.

21      THE COURT:  So you -- so you go -- you use the

22  hundred thousand -- I'm just saying -- and then you get

23  another hundred thousand.

24      MR. HENZY:  Or whatever has been used that

25  particular billing period.  Yeah.

31

```
 1                THE COURT:  Okay.  And so --

 2                MR. HENZY:  So let's say in a month we billed

 3    $10,000, we would bill the client -- we would send the

 4    client an invoice for $10,000.  We would take the $10,000

 5    from the retainer and the client would be obligated to

 6    replenish the retainer.

 7                THE COURT:  Okay.

 8                MR. HENZY:  That's the idea.

 9                THE COURT:  And the -- and how would -- how would

10    the Court know when your retainer is -- has -- is about to

11    lose its bloom and needs to be replenished?

12                MR. HENZY:  I don't know that the Court would know

13    that.  I don't know that the Court under the rules needs to

14    know that.  I suppose they're not -- I'm just saying in

15    theory, say take a hypothetical, if the -- if a -- in a

16    situation like that, the retainer stopped blooming, the way

17    the Court might find out about it is that counsel might be

18    filing a motion to withdraw on the basis that the client --

19                THE COURT:  Okay.

20                MR. HENZY:  -- is not satisfying its obligations.

21                THE COURT:  That's possible.  But, again, the

22    debtor's son has provided you with the hundred thousand

23    dollars, correct?

24                MR. HENZY:  Yeah.  That's correct.

25                THE COURT:  Okay.  And so the debtor's son -- you
```

32

1    represent the debtor, the debtor's daughter, the entity that

2    asserts --

3              MR. HENZY:  Says that it owns the boat.

4              THE COURT:  -- that they're the registered owner

5    of the boat, and now -- now you're getting money from the

6    debtor's son?

7              MR. HENZY:  Yes.

8              THE COURT:  Okay.  And you don't think any of

9    that's a conflict?

10              MR. HENZY:  I do not believe that any of it is a

11    non-waivable conflict other --

12              THE COURT:  Well, there's other things you have to

13    meet under Rule 1.7.  It's not just that you got an informed

14    consent waiver in writing.  It's four things.

15              That you reasonably believe that you'll be able to

16    provide competent and diligent representation.  I'm not

17    suggesting you don't.  You may believe that.  Somebody might

18    not agree with you, but you may reasonably believe that.

19              The representation is not prohibited by law.

20    Well, I'm not sure about that if the bankruptcy code

21    sections apply, as Attorney Claiborn asserts they might.

22              MR. HENZY:  Which I would like to come back to

23    that.

24              THE COURT:  Yeah.  We'll come back to that.

25              The representation does not involve the assertion

33

1    of a claim by one client against another client represented

2    by the lawyer in the same litigation or other proceeding

3    before a tribunal.

4          So we're not just talking about the adversary

5    proceeding here, right?  We're talking about the case as a

6    whole, the Chapter 11 case, where the entity -- Mr. Friedman

7    reminded me last hearing, because I couldn't remember the

8    entity who was loaning the money to the estate, was also an

9    entity I believe controlled by the son, and now who's paying

10   you, I guess not through an entity but by himself.

11         That's what your disclosure says, correct?

12         MR. HENZY:  Yes.

13         THE COURT:  That the money came directly from the

14   son, not from any other entity?

15         MR. HENZY:  Yes.

16         THE COURT:  Okay.  Okay.  And so you have four

17   things you have to meet under Rule 1.7, not just -- not just

18   the waiver of the conflict.

19         And there's plenty of cases out there -- and I

20   don't -- I'm not saying we're going to go through them

21   today, okay -- but there's plenty of cases out there,

22   bankruptcy judges saying you can assert all those things,

23   but that doesn't mean that the conflict is truly waivable.

24   Just because you got them to sign a letter that says they

25   waive the conflict doesn't mean it's actually waivable.

34

1      That's the issue that you have -- or one of the issues that

2      I think you have.

3           And given what has occurred outside of this court

4      before the filing of this case, there's a lot of information

5      that could become fact in this case to the contrary, that

6      there's -- they're all one in the same.  And some people

7      could argue that your representation of all of them just

8      supports that they're all one in the same, because Mr.

9      Despins said last time we were here that -- and he may be

10     filling more of this in later -- that with regard to the New

11     York bankruptcy case that the direction came from Mr. Kwok,

12     not from the corporate entity.

13          And, you know, I mean, Mr. Friedman's papers, as

14     you know, Mr. Henzy, I'm sure you've read them, go through

15     extensively all the findings that have been made outside of

16     this court.

17          So Mr. Friedman says, you know, you may need to

18     think about that, Judge, because maybe this is all just a

19     continuation of what was going on back in New York, that

20     through this weave and this web of issues that we just

21     continue to do the same thing, just in another court.

22          And what I'm having difficulty with is I don't see

23     how you can represent all three of those entities and now

24     get paid by the son and say that you don't have a concurrent

25     conflict of interest under Rule 1.7, which is different from

1    the 327(a) issue.  Okay?

2            I'm not -- I'm saying even if I agree with you

3    that 327a doesn't apply, and I think you might be right --

4    although I hear Attorney Claiborn's argument. I think the

5    argument with that though is that it has to be raised when

6    the issue has obviously come up.  I don't -- I don't think

7    she's -- her office is able to at this point show that this

8    issue that you're really -- that it's -- you're really

9    representing the estate, because I'm not sure I agree with

10   that at this point either.

11           It's complex, obviously, as you know, and this has

12   been going on for a long time.  So I just don't see how it's

13   not a conflict of interest.

14           There is -- there are claims in the estate that

15   are going to -- how are you going to provide advice to Mr.

16   Kwok individually, and HK and Ms. Guo, individually without

17   being -- without having their interests overlap and/or

18   conflict, which they can and very well may do?

19           MR. HENZY:  So I guess a couple of preliminary

20   points, Your Honor.

21           THE COURT:  Yeah.

22           MR. HENZY:  Absolutely court has the authority to

23   enforce the rules of professional conduct when it involves

24   proceedings in their court.  Absolutely, no -- I don't

25   question that in any way, shape or form.

36

1    However, the principal -- in the first instance,

2    it's up to the lawyer to be aware of and to -- their own

3    conflicts and to make sure that they're in compliance with

4    the rules of professional conduct.  And, again, if something

5    is in front fo the Court and the Court says that that's a

6    conflict, the Court certainly has the authority and maybe

7    the obligation to do something.

8    Courts are, the Second Circuit says, to be

9    somewhat deferential to a client's choice of counsel because

10   there's a generally recognized right of people to retain

11   counsel and to retain counsel of their choosing.  And I

12   think the 1.7(a) rules don't recognize that or address that

13   or deal with that.

14   On 1.7(a)(1), right now, there is no adversity.

15   We represent HK International and I think -- and Mei Guo.

16   And there may be other issues that we end up representing

17   them on in the case, but principally, and I don't want to

18   say almost exclusively, it's been on the Lady May.

19   Now, I understand we filed appearances in the case

20   -- and in theory could an issue come up other than with

21   respect to the Lady May where they're adverse to each other

22   -- but all we've done so far for those two -- those two --

23   the person and the entity is with respect to the Lady May.

24   I think it is generally recognized, Your Honor,

25   that where there is no existing concurrent conflict -- and

37

1    that's what Rule 1.7 says, is a concurrent conflict of

2    interest exists that the fact that there may be a conflict

3    sometime in the future does not disqualify counsel and you

4    potentially have to deal with that.

5            And it certainly is our practice, and I think most

6    firms' practice, to -- in any joint representation -- to

7    advise clients if there -- if you end up with adverse -- end

8    up adverse to each other, we're going to have to deal with

9    that and that may have consequences to you.  We may have to

10   resign for one, both, all three, it's -- but you don't know

11   that until you get to that concurrent conflict and you have

12   to deal with it.

13           Really, same theme on 1.7(a)(2), there is no --

14           THE COURT:  I'm not talking about (a) though.  I'm

15   talking about (b).

16           MR. HENZY:  I'm going to -- I'm going to get to

17   (b) because (b) follows (a).  It's --

18           THE COURT:  Yeah.  But it says notwithstanding.

19           MR. HENZY:  But you don't get to (b) -- if there's

20   no concurrent conflict of interest, you don't get to (b).

21           THE COURT:  Okay.  Go ahead.

22           MR. HENZY:  (b) is notwithstanding the existence

23   of a concurrent conflict of interest under subsection (a).

24   A lawyer may represent a client, yes, but you don't get to

25   (b) unless you fail (a).

38

1      THE COURT:  How can you fail -- how do you get by

2  (a)(1) then?  You represent HK and Mr. Kwok.  The boat --

3  the trustee wants the boat to be property of the estate.

4      MR. HENZY:  Yeah.

5      THE COURT:  HK's got a different interest in that

6  boat than Mr. Kwok does according to you.  So how is it

7  right now that there is -- they're not directly adverse to

8  each other?

9      MR. HENZY:  Well, Mr. Kwok is no longer a party to

10 that adversary proceeding --

11     THE COURT:  That's not what I'm saying.

12     MR. HENZY:  -- and has no --

13     THE COURT:  I don't care if he's not a party to

14 the adversary proceeding.  He still has an adverse interest

15 with regard to the boat because he -- because they're still

16 going to have to be -- if Mr. Despins is successful, right,

17 in saying that the boat is property of the estate, then that

18 is an -- then it's an adverse interest to your client and to

19 HK because then HK doesn't have the boat and the debtor

20 does.

21     How are they not -- how are they not -- how is it

22 not adverse?

23     MR. HENZY:  Certainly it would be adverse to HK if

24 the Court said --

25     THE COURT:  Right.  And you represent HK and the

39

1    debtor.

2            MR. HENZY:  Yeah.  But I'm not sure I agree with

3    you.  Mr. Kwok's position is that HK owns the boat so

4    they're not adverse.  He does not believe that he owns the

5    boat.  He does not believe that it's property of the

6    bankruptcy estate.  I'll say that unequivocally on the

7    record.  So I don't see how they can be adverse if they take

8    the same position.

9            I think he's -- he would -- I know he would

10   contemplate not being involved in that fight.  That's a

11   fight between presumably the trustee and HK International.

12           But I don't -- Mr. Kwok -- again, I'll say this on

13   the record, he will not be -- I suppose he might be involved

14   if someone wants to call him as a witness or something like

15   that, but he will not be taking positions.  That will be a

16   fight between the trustee and HK International, so there's

17   no adversity, Your Honor.

18           THE COURT:  I don't agree with you, but go ahead.

19           MR. HENZY:  Okay.  When you get to (b), as you

20   said, we do believe that we can provide competent, diligent

21   representation to each client.  I'm not concerned that we're

22   going to be pulling punches on behalf of HK International or

23   having what's going on with the boat impact our

24   representation of Mr. Kwok at all.

25           On (b)(2), the 327 issue, again, we can talk more

40

1   about.

2          I've made the point in the papers -- I don't want

3   to belabor it, Mr. Kwok is no longer a party to the

4   adversary proceeding.  I believe Mr. Despins said that at

5   the last hearing.

6          He was automatically substituted as the party in

7   that -- in that adversary proceeding.  And I cited the rule

8   and cases that say that, that upon appointment of a trustee,

9   he is automatically substituted for the debtor in that

10  action.

11         And all three clients have given consent.  We did

12  advise them, if they wanted to, to consult with other

13  counsel and they've confirmed their consent in writing.

14         So even assuming that there is a concurrent

15  conflict under 1.7(a) -- and, Your Honor, to your point, it

16  may be that at some point in this case a concurrent conflict

17  does arise.  I don't think one exists today -- there may be

18  at some point a concurrent conflict arises.  And if it does,

19  then in compliance with the rules of professional

20  responsibility, we will have a professional responsibility

21  to address that.

22         And, again, typically when you have a joint

23  representation you advise clients if a concurrent conflict

24  arises we may need to withdraw or otherwise address it.

25         But if and when a conflict -- concurrent conflict

41

1    arises, we'll -- we will have to address it.  And the

2    clients have been informed of that.  And, again, they have

3    -- they have given their consent.

4              THE COURT:  Well, we -- I don't know how they gave

5    their consent.  So, I mean, you could have just said I

6    consent.  I don't know what they said.  I know what you're

7    saying they said, but just by saying I consent doesn't mean

8    that's a -- that is a waiveable conflict --

9              MR. HENZY:  Well, the only --

10             THE COURT:  -- because you have to know what

11   they're consenting to.

12             MR. HENZY:  The only non-waiveable conflict under

13   this rule is if we represent two parties in the same

14   litigation.  And because Mr. Kwok is no longer a party to

15   the adversary proceeding, I believe that we do not represent

16   two parties to the same litigation.  So they can consent --

17             THE COURT:  But it's not just to the litigation

18   that -- you keep focusing on the issue of the adversary --

19   it's the case.  It's the case.  It's still Mr. Kwok is in

20   the case.  It's his case whether he's not -- out of

21   possession or not.  It doesn't just go away because he's out

22   of possession.  It's still an issue in the case.

23             You know, it's too convenient to say Mr. Despins

24   steps into the shoes of Mr. Kwok in that adversary but not

25   in any of the 523 adversaries.  And I understand the

42

1   argument.  I'm not -- I understand the argument.  But it

2   doesn't -- you just don't have a conflict and then it

3   doesn't -- it just doesn't -- it goes away.  It doesn't

4   exist anymore.  That's not how it works.

5         The conflict as I think we talked about it the

6   last time, you know, you take the client as you find him.

7   You know, you may argue you don't have a conflict at the

8   moment, but the parties have a conflict with each other.

9   There's some issues here.

10        MR. HENZY:  I don't -- I don't see where the

11  parties right now are directly adverse to each other.

12        THE COURT:  Well, you may not see it, but that

13  doesn't mean it doesn't exist.

14        MR. HENZY:  But if --

15        THE COURT:  The problem is in this case, and in

16  the case before this case, that there were -- there were

17  many, many findings made with regard to this -- these number

18  of family -- closely -- and they're all insiders by the way

19  so let's just -- we didn't raise that either.  They're all

20  insiders.

21        MR. HENZY:  None of it before you, Your Honor.

22        THE COURT:  No.  No.  No.  I'm talking --

23        MR. HENZY:  None of it before you.

24        THE COURT:  No.  No.  No.  I'm talking about in

25  this case right now.  Ms. Guo is an insider of Mr. Kwok.

1          MR. HENZY:  Yes.

2          THE COURT:  The son who paid you a hundred

3    thousand dollars is an insider of Mr. Kwok.  HK

4    International may or may not be an insider of Mr. Kwok, but

5    it's close.

6          MR. HENZY:  Okay.

7          THE COURT:  Okay?  So how is that not a conflict?

8          MR. HENZY:  Because they are not adverse -- they

9    are not directly adverse to each other.  Your Honor, if a --

10         THE COURT:  If Mr. Despins sues Ms. Guo right now

11   --

12         MR. HENZY:  Yeah.

13         THE COURT:  -- and says she got paid whatever she

14   got -- I'm making -- I'm giving a hypothetical. She got paid

15   by Mr. Kwok a hundred thousand dollars 90 days before the

16   filing, then how are they not adverse?

17         MR. HENZY:  I think that Mr. Despins and Ms. Guo

18   would be adverse.

19         THE COURT:  No.  Because the money's got to come

20   back from Mr. Kwok and Mr. -- you've got -- you keep --

21         MR. HENZY:  If Ms. -- if Ms. Guo is sued for --

22         THE COURT:  What's the -- you're not going to --

23   are you going to raise a defense on her part?  What's her

24   defense?

25         MR. HENZY:  Hold on.  Assume -- I apologize, Your

44

1    Honor.

2              THE COURT:  No.  That's okay.  It's okay.

3              MR. HENZY:  No.  No, that was not okay.  I

4    apologize.

5              THE COURT:  That's okay.

6              MR. HENZY:  If Mr. Despins sues Ms. Guo for a

7    preference, which I think is what you were positing, or for

8    whatever, for whatever --

9              THE COURT:  For whatever.

10             MR. HENZY:  -- then the money would come back I

11   think from Ms. Guo, not from Mr. --

12             THE COURT:  But what's her defense?  She's going

13   to have a defense.  She's not going to just turn it over.

14   If she can, she can turn it over today then.

15             MR. HENZY:  I don't know --

16             THE COURT:  How are you going to represent her?

17             MR. HENZY:  I don't know what claim Mr. Despins is

18   bringing against her, so I don't --

19             THE COURT:  I understand that.

20             MR. HENZY:  -- I don't know what her defense would

21   be.  It's possible.  I suppose he would bring a claim, I

22   don't know what it would be, that would create some direct

23   adversity, in which case we would have to deal with that.

24   But that doesn't exist today.

25             THE COURT:  Okay.

45

1      MR. HENZY:  It may exist, Your Honor, sometime in

2  the future, but it doesn't exist today.  And for the 1.7(a)

3  analysis, it's a concurrent conflict of interest exists.

4      Today, is there a conflict?  If a conflict -- and

5  the rules specifically contemplate -- I think it's in the

6  comments to 1.7 where it addresses joint representation --

7  that a conflict -- a conflict may arise in the future.  And

8  if it does, counsel has an ethical responsibility to address

9  it.

10      But today, Ms. Guo hasn't been sued by Mr. Despins

11  for anything.  She may get sued by him for something and

12  that, whatever that suit is, may or may not raise -- put Ms.

13  Guo and Mr. Kwok in a directly adverse position.  But I --

14  but I don't know.  I can't know that today.

15      THE COURT:  Well, (a) doesn't talk about the fact

16  that there has to be a lawsuit by the way.

17      MR. HENZY:  Oh, no.  It's any -- it's any adverse

18  --

19      THE COURT:  So it doesn't talk about it.

20      MR. HENZY:  No.  It's any -- I was just -- I was

21  addressing your --

22      THE COURT:  (b) talks about it, not (a).

23      MR. HENZY:  I was addressing Your Honor's comment

24  about what if --

25      THE COURT:  I understand.  So I'm saying there

Fiore Reporting and Transcription Service, Inc.

46

1    doesn't have to be a lawsuit in (a).  It's if you have the

2    representation of one client will be directly adverse to

3    another.

4            MR. HENZY:  And I --

5            THE COURT:  There doesn't have to be a lawsuit to

6    have that issue.

7            MR. HENZY:  And today I don't see how Ms. Guo and

8    Mr. Kwok are directly adverse --

9            THE COURT:  Okay.

10           MR. HENZY:  -- on anything.  I don't see how HK

11   International and Mr. Kwok are directly adverse on anything.

12           Again, Mr. Despins is going to bring whatever

13   claims he brings and we're going to go -- we're going to go

14   from there ormake whatever claims he makes.

15           THE COURT:  Okay.

16           MR. DESPINS:  Your Honor, if I could be heard for

17   two minutes on this?

18           THE COURT:  Yes.  Yes, please.

19           MR. DESPINS:  Not on 327.  I don't have a view on

20   that.

21           But on the issue of waivable conflict or not, 521,

22   debtor's duties, 521(a)(3), if there's a trustee appointed,

23   the debtor's duty is to cooperate with the trustee as

24   necessary to enable the trustee to perform the trustee's

25   duties.  (a)(4), if there's a trustee serving, they must

47

1    surrender all properties, et cetera.

2            Of course their view is, oh, you know, he's a

3    billionaire, but he has no assets so, therefore, we're on

4    the same side of the V.  But that duty that a -- statutory

5    duty that the debtor has exists today.  And you know that

6    there are criminal provisions in 18 U.S.C. that tie into

7    these obligations to do these things.

8            So I'm -- so I'm not so sure this is a waivable

9    conflict despite the fact that there's consent because the

10   debtor has a statutory duty to do certain things that are in

11   direct conflict with the other party that they're

12   representing.

13           Thank you, Your Honor.

14           THE COURT:  Thank you.

15           MR. DESPINS:  And also, by the way, I want to

16   mention that chart that they said the son paid, they also

17   checked the box that the debtor would -- might pay in the

18   future.  I want to be very clear under 549 we reserve all

19   rights.  If the debtor is paying Zeisler, I don't want them

20   to think that because they checked that box that somehow

21   we're looking the other way.  I don't see how the debtor is

22   paying -- would be paying them during the case.

23           Thank you, Your Honor.

24           THE COURT:  Thank you.

25           MR. HENZY:  I'm pretty sure that Mr. Despins is

48

1    not looking the other way on anything, Your Honor.

2            THE COURT:  But it's a good point about the debtor

3    making future payments for fees.  I think that would be

4    tremendously problematic.

5            MR. HENZY:  Your Honor, the debtor is not going to

6    make any payments at the very least out of any -- Mr.

7    Despins references to 549 and any property that's property

8    of the bankruptcy estate.  And we wouldn't -- we wouldn't

9    take any such payments, certainly not knowingly anyway.

10           So I'll say again, Your Honor, the debtor -- so

11   the debtor has duties under 521, but I'm not seeing how that

12   -- and Mr. Despins already has made in the corporate

13   governance motion some proposals, but I'm still not seeing

14   that today that there's any directly adverse -- that

15   anyone's directly adverse.  Again, it may be that something

16   happens in the future where there is adversity.

17           The only conflict -- expressly under the rules,

18   the only conflict that is not waivable is the (b)(3).  So we

19   may think that a client should not --

20           THE COURT:  I'm not sure that's true by the way.

21   I mean, that's not -- case law doesn't really support that

22   completely.  I understand that's your argument.  But when do

23   -- where -- what authority are you relying on that says the

24   only thing that's not waivable is (b)(3)?

25           MR. HENZY:  I think that that's the plain language

49

1   of the rule.  That is the -- unless it's prohibited by law,

2   which is back to the 327(a) issue.

3        THE COURT:  Which is (2).  Yeah.

4        MR. HENZY:  Okay.  But I'm not aware of any

5   prohibition in any law --

6        THE COURT:  Well, actually there's a lot --

7   believe it or not, I've seen some case law that the -- even

8   when the informed consent is in writing, the bankruptcy

9   court has found that it's not a waivable conflict no matter

10  what, you know, was written in that consent.  Okay?

11        There's cases, and there's recent cases about it,

12  throughout the country that talk about, you know, the --

13  that it's -- you know, you can waive -- you can say whatever

14  you want and waive it, but just because you said it doesn't

15  mean it's enforceable and it's waivable.

16        MR. HENZY:  Yeah.  I --

17        THE COURT:  And at this point, you know, I'm not

18  sure that it is.  But go ahead.

19        MR. HENZY:  I don't understand I guess that point.

20        THE COURT:  Well --

21        MR. HENZY:  If there's no prohibition by law and

22  it's not claims made against each other --

23        THE COURT:  Because it impacts the estate as a

24  whole.  This isn't just about the one adversary proceeding

25  in which HK International sued Mr. Kwok.  It's what Mr.

50

1    Despins is saying and more.  The debtor still has -- he may

2    be a debtor out of possession, but he still has obligations

3    under the bankruptcy code.

4         He voluntarily came to this court and subjected

5    himself to the jurisdiction of this court.  And with that,

6    you know, he gets all the benefits, but he also has the

7    burdens.  And he has to cooperate and turn over to the

8    trustee all of his -- all property of the estate, whatever

9    equitable or legal interest he has in a -- in a -- any piece

10   of -- any property, whatever it is, whether it's real,

11   personal, whatever.  And when there are --

12        We still haven't gotten to the issue of what HK is

13   doing with regard to the certification on the boat.  That

14   seems to have gone by the wayside for a while.  But there's

15   $37 million in an escrow account that Mr. Despins is going

16   to argue one way or another either that money or the boat's

17   the estate.  And that money --

18        Now Mr. Friedman's going to have to remind me

19   again, was that Golden Spring who funded that 37 million or

20   was it somebody else?

21        MR. HENZY:  But, Your Honor, a couple of points.

22        THE COURT:  No.  But wait a minute.  Let me just

23   finish my thought process first and I'll get back to you.

24        But the point is Mr. Kwok is going to argue that

25   something different -- how could Mr. Kwok -- is he -- he's

51

1   going to say, oh, yeah, go ahead HK, give the boat over to

2   the estate or don't?  Go ahead, Mr. -- escrow agent.  Give

3   the 37  -- who's going to fight that fight?

4               MR. HENZY:  Not Mr. Kwok.

5               THE COURT:  Well, who's going to fight the fight?

6   HK International.  And you represent HK International and

7   Mr. Kwok.

8               MR. HENZY:  And Mr. Kwok's not fighting that fight

9   at all.

10              THE COURT:  He's not going to fight the fight.

11              MR. HENZY:  No.

12              THE COURT:  So then I could find today -- I could

13   make a ruling that the boat is property of the estate and

14   Mr. Kwok's not going to fight that fight?

15              MR. HENZY:  Mr. Kwok is out of that fight.

16              THE COURT:  He's not going to fight it?

17              MR. HENZY:  He is --

18              THE COURT:  So you're going to represent HK

19   International in that fight?

20              MR. HENZY:  He is out of that fight.  That fight

21   is now Mr. Despins' fight with HK International.  It's not

22   Mr. Kwok's fight.

23              THE COURT:  All right.  What about the $37 million

24   in escrow?

25              MR. HENZY:  Same answer, that's not Mr. Kwok's

52

1    fight.  That is HK International's fight.  And Mr. -- I'm

2    not sure that's even a fight.

3              THE COURT:  So how can you represent HK

4    International in a fight against the estate in which the

5    estate is your client's estate?

6              MR. HENZY:  But the estate is not my client.  The

7    Supreme Court says that in the *Baker Botts* decision and the

8    --

9              THE COURT:  Yes.  But the estate is the

10   responsibility of your client.

11             MR. HENZY:  No.

12             THE COURT:  Yeah.  Yes, it is under 521.

13             MR. HENZY:  No.  I think that's wrong.

14             THE COURT:  Yes.  He's got to turn it over.  He's

15   got to cooperate and turn it over.

16             MR. HENZY:  He has responsibilities --

17             THE COURT:  So is he going to cooperate right now

18   and say that, yeah, you know what, HK International really

19   doesn't own the boat.  I do according to the New York State

20   Court.  So why don't you just move it over here now?

21             Is that how he's going to cooperate?

22             And then how does that make sense for him to say

23   that and then have HK say, no, I'm the -- I'm the record

24   owner of the boat?

25             MR. HENZY:  So he -- he has his obligations under

53

1   521, but that doesn't mean -- 521 doesn't mean that he has

2   to say -- get on the witness stand and say something is true

3   that he doesn't believe is true.

4           So if Mr. Despins is pursuing that action or that

5   action is being pursued and Mr. Kwok is put on the witness

6   stand and Mr. Despins says, isn't it true that you own the

7   boat?  And Mr. Kwok says, no.  That's not -- he's not

8   violating his obligations under 521 of the bankruptcy code.

9   He's giving truthful testimony.  So I'm not --

10          THE COURT:  Well, whether it's true or not isn't

11  for Mr. Kwok to decide.  That's the point.  Otherwise why

12  are we here?

13          MR. HENZY:  Oh.  I agree with you.  But he's

14  obligated to give truthful testimony.

15          THE COURT:  He's obligated to give testimony.

16          MR. HENZY:  To give truthful --

17          THE COURT:  He makes the determination of whether

18  or not it's truthful.

19          MR. HENZY:  Well, but -- but no one would say,

20  well, Mr. Kwok you believe that you don't own the boat?

21  That's right, I believe I don't own the boat.  Well, you

22  can't give that answer.  You have to testify that you do own

23  the boat because 521 says you have to testify --

24          THE COURT:  Nobody would suggest -- nobody's

25  suggesting that.

54

1          MR. HENZY:  Then I'm missing -- I'm missing the

2     point.

3          THE COURT:  Okay.  Maybe I'm not articulating it

4     well.  I don't understand how this can continue, but we'll

5     talk about it.

6          Does anyone else wish to be heard on whether or

7     not the Zeisler firm can represent these three entities at

8     the same time and not have it be deemed to be a conflict of

9     interest?

10          MR. HENZY:  One point, Your Honor.  If you're

11     going to rule that we have a conflict of interest, or you're

12     not going to rule, then I don't believe anything else should

13     go forward today.  You can't -- because the debtor is then

14     --

15          THE COURT:  I agree with you and that's why I

16     asked to hear what everybody else --

17          MR. HENZY:  Okay.  Because then the debtor is not

18     --

19          THE COURT:  That's why we're talking about this

20     right now.

21          MR. HENZY:  The debtor is not represented.  And to

22     the extent you haven't ruled --

23          THE COURT:  Well, he is represented.  He's got

24     another lawyer.  He's got Mr. -- whatever --

25          MR. HENZY:  No one's here in court today

55

1    representing the debtor.

2                THE COURT:  I understand that.  But that -- you

3    know, this is not news that the issue was raised about the

4    conflict of interest.  So just hold on.

5                MR. HENZY:  Okay.

6                THE COURT:  I hear you.  I hear you.

7                MR. HENZY:  Okay.

8                THE COURT:  Does anyone else wish to be heard on

9    this conflict of interest issue?

10               MR. DESPINS:  I would just say, Your Honor, that

11   I'm not sure.  We need a genie to decide that issue today.

12   I think the issue is still live, will continue to be live,

13   you know, later.

14               THE COURT:  Okay.  Thank you.

15               Attorney Claiborn?

16               MS. CLAIBORN:  Your Honor, I agree the issue does

17   not die today if the Court decides not to rule on it today.

18               The only other issue that I would throw into the

19   mix is that looking into the future and cognizant of the

20   past, the debtor's position on things has changed over time.

21   And to the extent that the debtor uses this particular

22   conflict, albeit resolved at the moment as a future sword,

23   then we have a problem in this case.

24               THE COURT:  What do you mean?

25               MS. CLAIBORN:  To the extent that he takes the

56

1    position in the future that his guidance and his advice from

2    his now current counsel, Zeisler, was conflicted and that he

3    should not be bound by any of the outcomes of that, that's

4    going to cause a problem in this case in the future.

5    The debtor does have a history of parting ways with counsel.

6            THE COURT:  Okay.  I think I understand your

7    point.  I might -- I might not be understanding it fully at

8    the moment, but that's fine.

9            Anyone else wish to be heard?

10       (No audible response)

11           THE COURT:  Okay.  So, Mr. Henzy, with regard to

12   the concurrent representation of these three parties, Mr.

13   Kwok, who has continuing and remaining and continuous

14   obligations under the bankruptcy code, even if he is a

15   debtor out of possession, and HK International, and Mei Guo,

16   the debtor's daughter, I agree with you that at the moment

17   there is -- you appear to be complying with all of the

18   provisions of Rule 1.7.

19           But I do agree that things can change very quickly

20   and parties, including you, and/or the Court, and/or others,

21   need to bring this to the Court's attention if there are

22   issues that are happening in this case.

23           I think your client, as I said to you the other

24   day, you take your client as you found them.

25           And as your client has some issues with regard to

57

1    litigation that has occurred outside of this court, that at

2    some point's going to come back to this court somehow.

3          Mr. Despins is going to have to do what Mr.

4    Despins has to do and so do all the other creditors.  I have

5    no idea what any of the other creditors are going to do.

6    They have their rights too.  And they -- they can seek

7    whatever relief they think is appropriate with regard to

8    your clients, all three of them.

9          So I -- given the positions that have been taken,

10   and that the U.S. Trustee believes that 327(a) may apply and

11   that you may have a conflict, I think the issue is

12   continuing before this court and there won't -- you know,

13   could be a problem as early as tomorrow.  Who knows?  And

14   we'll have to deal with that.

15         With regard to your motion for relief from

16   judgment order under --

17         MR. HENZY:  Your Honor, can I -- can I just ask a

18   question?

19         THE COURT:  Yes.

20         MR. HENZY:  I'd like to think anyway that I take

21   my obligations under the rules of professional

22   responsibility pretty seriously.

23         THE COURT:  No one's questioning that.

24         MR. HENZY:  Okay.  I'll accept that.  But --

25         THE COURT:  But you have to understand that the

58

1       issues that have been raised in this case are every day --

2       every week it changes, right?  We're going down one path,

3       then we go down another path, now we're down an other path.

4               Now you're filing a motion to try to remove the

5       trustee after, you know, you said -- after your client came

6       in and wanted the boat to be part of the $8 million, have

7       the boat be part of the estate, move forward, try to -- who

8       Mr. Baldiga said on many occasions wants to have -- and it

9       says it in the papers, so it's an admission of your party,

10      of your client, whether or not you represent your client or

11      Mr. Baldiga represented your client, that they wanted this

12      case to be a place where everyone could come together and

13      resolve all the issues and have a fair and equal

14      distribution to creditors.  And that's not what's happening.

15      Okay?  That's not what's happening.  There wouldn't have

16      been an appointment of a Chapter 11 trustee if that was what

17      was happening.

18              So I'm not trying to challenge your personal

19      seriousness about the Rule 1.7.

20              As I keep saying to you, you don't represent

21      yourself.  You represent your clients.  And your clients

22      already have some negative rulings against them that the

23      Court has heard about time and time again.

24              And your client has come in and said he wanted to

25      do all these things and then immediately changes course and

59

1   pulls the plug on everything and leaves everybody in a

2   completely different -- on a completely different path than

3   he came in here and said that he was going to pursue.

4   That's what I'm talking about.  Okay?

5          MR. HENZY:  The point I was going to make, Your

6   Honor, is I think I take my obligations pretty seriously.

7   And if I ever believe that I have a concurrent conflict, I'm

8   going to address it, with the clients if necessary, with the

9   Court.  So I would -- I would always do that.

10          A second point is, Mr. -- Ms. Claiborn's point

11   that she doesn't want to see the debtor using a purported

12   conflict of my firm as a sword, I make the same point back

13   at people.

14          To have this sort of weird maybe three -- so if

15   327 applies, if the debtor is asserting his rights, and if

16   I'm arguing too vigorously about some issue, then 327(a)

17   applies.  But if the debtor just sits and doesn't -- quietly

18   and doesn't push back on anything, then 327 doesn't apply.

19          I would hope that parties aren't going to use that

20   in the future when the debtor potentially is objecting to

21   something to stand up and say now he's under 327, he's got

22   to go.

23          A third point, Your Honor, the -- what happened

24   outside of this court in pre-bankruptcy litigation I'm not

25   sure what that has to do with whether or not my firm has a

60

1    conflict under Rule 1.7 or 327(a) is implicated.  I don't --

2    I don't think that it does.

3            This is a tough case.  I don't think anybody would

4    disagree with that.  This is a -- this is a tough, tough

5    case.  But the toughness of the issues isn't the driver on I

6    have a conflict or I don't have a conflict.  I either have a

7    conflict or I don't have a conflict.

8            And what I -- what I don't want to do, Your Honor,

9    is go away from today with you having -- because I -- when

10   you -- I think anyway, okay -- I never would intend to put

11   words in Your Honor's mouth, that's why I'm going to say

12   what I thought I heard -- what I thought I heard was you

13   agree with me that today you believe I don't have an issue

14   under Rule 1.7.  But then you said -- I think anyway --

15   again, I want to be very careful -- but maybe you do.

16           And if the Court is going to determine that today

17   I have a concurrent conflict of interest and I should not be

18   representing the debtor, I need to know that, because then

19   if that's the case, from the time the Court says that every

20   word that comes out of my mouth I am violating my

21   obligations under the rules of professional responsibility.

22           So either the Court finds I have a concurrent

23   conflict of interest today or it doesn't.

24           And recognizing that if something comes up in the

25   future that creates that conflict, we're going to have to

61

1    deal with it.  But I -- I kind of need to know that today.

2              THE COURT:  I think I said you didn't have a

3    concurrent conflict of interest today, but you might in the

4    future.

5              MR. HENZY:  Agreed.

6              THE COURT:  And that parties needed to bring that

7    to the Court's attention.

8              MR. HENZY:  Understood, Your Honor.

9              THE COURT:  Okay?

10             MR. HENZY:  Thank you.

11             THE COURT:  All right.  With regard to Rule 9024

12   motion, as I mentioned to you last time, I didn't understand

13   why you weren't moving under section 324, the removal of the

14   trustee.

15             And the case law that I've looked at says that a

16   rule -- and *Collier*, again, says that Rule 60 is not the

17   appropriate way to challenge the appointment of a trustee

18   under -- that the United States -- because the Court's not

19   involved in the appointment.  Remember.  Right?  The Court's

20   not involved in the appointment.  The U.S. Trustee's

21   involved in the appointment.

22             And the U.S. Trustee is only simply asking that

23   the appointment be approved and the Court approved it.  No

24   one was able to put forth any evidence as to why it

25   shouldn't be approved.

62

1          And so -- then it's -- then that appointment

2     stands.

3          And the way that you have to proceed is a motion

4     of 324.  And if that motion is denied, it's not a final

5     appealable order.

6          Which obviously you want the Rule 60 to be an

7     appealable order.  So we're not -- we're not proceeding down

8     the Rule 60 road, because according to sources that I've

9     looked at, it's not appropriate.

10          Mr. Despins was appointed as the Chapter 11

11     Trustee.  And the only way he can be removed is under 324.

12     So if you want to file a motion under 324 and meet those

13     requirements, you're entitled to do so.

14          MR. HENZY:  I think or under 1105, Your Honor.

15     But the --

16          THE COURT:  Under what?

17          MR. HENZY:  I think also 1105 provides for the

18     termination of trustee's appointment.

19          THE COURT:  But it refers back to 324.

20          MR. HENZY:  1105 doesn't, but that's neither here

21     nor there.

22          THE COURT:  The rules do.

23          MR. HENZY:  I understand.

24          Just to be clear, is Your Honor denying our --

25          THE COURT:  Yes.

63

1          MR. HENZY:  -- 60(b) motion?

2          THE COURT:  I'm denying your 60(b) motion.

3          MR. HENZY:  Thank you, Your Honor.

4          THE COURT:  And all discovery that was related to

5   the 60(b) motion is denied because the motion -- because

6   it's moot.

7          MR. HENZY:  Can I have one moment, Your Honor?

8          THE COURT:  Yes.

9        (Pause)

10         MR. HENZY:  So, Your Honor, the motion -- the

11  motion to quash is granted?

12         THE COURT:  It doesn't need to be granted.  It's

13  moot.  The Rule 60(b) motion is denied.

14         MR. HENZY:  Very well.  Understood.

15         THE COURT:  Any discovery with it, associated with

16  it, is moot.

17         MR. HENZY:  Understood, Your Honor.  Understood.

18         MR. DESPINS:  Your Honor --

19         THE COURT:  Yes.

20         MR. DESPINS:  -- may I be heard on this?

21         THE COURT:  Yes.

22         MR. DESPINS:  I know your reaction might be, you

23  just won, why don't you sit down.  But, Your Honor, I know

24  in this case what's going to happen.  Everything is going to

25  get appealed.  And I wonder whether the Court would

64

1    entertain alternative findings on this, which is that you've

2    already ruled it's not procedurally proper.  But in any

3    event, the concept of disinterestedness under 101.54 or 59,

4    I forget which subsection --

5                 MR. HENZY:  14.

6                 MR. DESPINS:  14.  Sorry.  101.14 deals with the

7    estate, not the debtor.  And there's nothing that's been

8    alleged in anything they've produced that would somehow

9    affect the disinterestedness of the trustee vis-a-vis the

10   estate as an alternative finding.

11                Just because what I -- you know what I'm -- I

12   don't want to go back and forth, back and forth --

13                THE COURT:  Well, I haven't -- I haven't written

14   an order --

15                MR. DESPINS:  Okay.

16                THE COURT:  -- denying the Rule 60 motion yet,

17   which would have to happen before there could even be an

18   appeal.  Number one.

19                MR. DESPINS:  Thank you, Your Honor.  Thank you.

20                THE COURT:  And number two, if there was an

21   appeal, they'd have to be a bond posted.

22                MR. HENZY:  And I don't know whether there will be

23   an appeal or not.  But, Your Honor, I think those

24   alternative findings should not be made.

25                And I actually disagree with Mr. Despins that a

65

1    trustee does not have to be disinterested vis-a-vis a

2    debtor.  And there is case law that says a trustee has to be

3    disinterested vis-a-vis a debtor.

4         But, again, I don't think you need to make

5    alternative findings.  You've denied the motion.  I

6    understand the basis for the denial.  And I think that

7    should be it.

8         THE COURT:  Well, there's still going to be a

9    written order.  There has to be a written order.

10        MR. HENZY:  I mean, if you're going to go beyond

11   denying on the I'll call it the 324 ground, which I

12   understand, then I am aware Collier says a 324 or 1105

13   motion is preferable to a 60(b).

14        But there -- I would -- if you're going to make

15   alternative findings, I would at least like an opportunity

16   to argue because --

17        THE COURT:  You put that argument in your papers.

18   Your argument is in the papers.  You stated why you think

19   the trustee should be removed and why the relief from the

20   order should enter.  And your papers say all that.  You say

21   -- you talk about all that in your papers.

22        MR. HENZY:  I think you can -- I would argue you

23   can -- you can deny -- again, that sounds funny because you

24   can do what you obviously decide to do.

25        But denial based on that you need to bring a

66

1   motion under 324, I think you --

2          THE COURT:  I didn't say -- I didn't say just

3   that.  That's not appropriate.

4          I said you have to bring a -- and I said to you at

5   the last hearing that the standards under Rule 60 and the

6   standards under 324 are completely different.

7          And so I didn't just say it's denied because you

8   didn't bring it under 324.  That's not what I said.

9          MR. HENZY:  Okay.

10         THE COURT:  Okay?  I said that the motion is

11  denied because you didn't bring it under 324 because that's

12  the appropriate section to bring it under.  Number one.

13         And number two, I don't-- I don't have any --

14  there's no -- you didn't bring forth anything to me under a

15  Rule 60 motion that met the standard under a Rule 60 motion,

16  which is that under your 60(b) motion, you would have to

17  find -- I would have had to have found that there was

18  inadvertent mistakes, surprise or excusable neglect.  That's

19  doesn't apply.

20         Newly discovered evidence that with reasonable

21  diligence could not have been discovered in time to move for

22  a new trial.  That doesn't apply.  Fraud, which doesn't

23  apply.  You brought forth no evidence of that.  That the

24  judgment is void.  That doesn't apply.  The judgment has

25  been satisfied, released or discharged.  That doesn't apply.

1          Or any other reason that justifies relief.  There

2    is no other reason that you've set forth that justifies

3    relief under Rule 60.

4          So if you want to file a motion and try to meet

5    the requirements of 324, you're welcome to do so.

6          But you already argued all of those issues in your

7    Rule 60(b) motion and I'm denying it.  There are no grounds

8    for relief that you have presented to the Court under Rule

9    60 and bankruptcy Rule 9024, to grant relief under those

10   rules.

11          MR. HENZY:  Understood, Your Honor.

12          THE COURT:  Okay.  Thank you.

13          All right.  So now we can move on to the

14   application to employ Paul Hastings.

15          MR. DESPINS:  Thank you, Your Honor.

16          There were two -- one statement and one objection.

17          And the first, the objection, is filed by the

18   debtor.  And we cited a Fifth Circuit decision -- although

19   we don't need a Fifth Circuit decision, but the technical

20   decision that says a debtor out of possession cannot -- does

21   not have standing to object to the retention of counsel.  So

22   I believe that's hornbook law.

23          Actually, you had hinted at that at the last

24   hearing without talking about the retention of counsel

25   specifically.

68

1        But that case applies to the retention of counsel

2    because it's a case administration matter and the debtor out

3    of possession does not have standing unless there's a

4    surplus.  And in this case, they're saying there's no

5    surplus because they have no assets.

6        Now, I think it's still important again, for

7    appellate purposes, to just assume standing for two minutes

8    and address the debtor's objection.  And I go back to the

9    definition of disinterestedness.  It's keyed off to the word

10   estate.  And it's true that it talks about creditors, equity

11   holders, and the debtor, but the test is vis-a-vis the

12   estate.  And none of what's been alleged here has anything

13   to do with the estate.

14       The issue of Mr. Wynn, you know, has nothing to do

15   with the estate.  And I want to be clear about this.  My

16   firm was retained after Mr. Wynn was sued by the DOJ, did

17   not advise Mr. Wynn in any way regarding what to do or not

18   to do vis-a-vis Mr. Kwok.  There's none of that.  Mr. Wynn

19   is not a creditor.  The Wynn litigation will not affect the

20   estate up or down in any way and that's very important.

21       And it's the same thing with the Chinese offices.

22   I mean, that the fact that we have offices in China first of

23   all was well known from the beginning.

24       But it all falls on the basic point I made before

25   -- and I want to explain this concept where I used insanity

69

1   -- in their papers.  They say that's outrageous that he says

2   it was insane.

3           I've always been very precise that what is insane

4   is the lack of a link that they're establishing between

5   what's happening between the debtor, his immigration status

6   and the Chinese Communist Party, and this estate.

7           Your Honor is not dealing with an immigration

8   matter.  Your Honor is not -- we are not dealing with that.

9   We have no position on that.  It's not our issue and we're

10  not going to be involved in these issues.

11          And that's where everything falls apart because

12  there's no link between all of this and the -- and the

13  estate and the job we have to do, which is to get the

14  maximum assets possible and to the holders of allowed claims

15  in this case.

16          The other point is the UBS matter.  That's another

17  distraction.  First, they've known about UBS from the

18  beginning.  That was in the first declaration we said that

19  we represent UBS affiliates.  I think I said predominantly

20  or primarily regarding financing matters.  We didn't say

21  exclusively.  But what does it matter whether we represent

22  them regarding traffic tickets or financing matters or

23  bankruptcy matters?

24          I've said clearly that I've never represented

25  them.  I'm not representing them.  I am able to be

70

1    litigation adverse, meaning as trustee against them.  And,

2    in fact, the litigation against them is pending in England.

3              And as Your Honor knows, you know, in England to

4    be appearing in court and to argue a case you have to be a

5    barrister.  Paul Hastings are not barristers in the U.K.

6              So practially the people will use -- if you look

7    for example -- at their objection, attached to the complaint

8    that filed against UBS, if you go to the end, there are

9    three signatures there.  These are three barristers.  We

10   don't have barristers.  And those are the people I would

11   think that would continue to handle this matter given

12   they've been handling it for two years, with some success by

13   the way.  Well, procedural success I should say.

14             So the issue of UBS is a non-issue because in any

15   event I'm the one as trustee who will handle this.  I will

16   supervise the work of U.K. barristers -- who are not Paul

17   Hastings people because we don't have barristers -- and

18   that, again, resolves that issue. And I believe the rest is

19   all the same as the 60(b).

20             PAX also filed a response.  I think it would

21   probably make sense to deal with the debtor's issues first,

22   and then we'll come back to PAX after that.  Thank you.

23             THE COURT:  That's fine.  Thank you.

24             Mr. Henzy?

25             MR. HENZY:  Thank you, Your Honor.

71

1    So if I could address the standing issue first.   With

2    standing, first point, 1109(b) says the debtor has a right

3    to raise, appear and be heard on any issue in a Chapter 11

4    case.   That's very, very clear.

5         I recognize that 1109, courts hold that a debtor

6    still has to have -- you may be able to raise, appear and be

7    heard, but that doesn't necessarily mean listening to me

8    talk is the equivalent of an objection that the Court needs

9    to rule on.

10        So you can maybe painfully have to listen to me,

11   but then say, thank you, Mr. Henzy, but I don't -- you don't

12   have standing to object.   And you've raised, appeared and

13   been heard, but I don't have to rule on anything.

14        So I understand that there's -- there's really

15   just two levels to the analysis.   There's 1109(b) and then

16   there's do you have standing.

17        The traditional standing analysis is you have to

18   -- you either have to be classically aggrieved -- and I

19   don't think that's what's at issue here, because we're

20   dealing with a statute -- or you have to have statutory

21   standing.

22        So you have to have a statute that Congress has

23   passed where the argument is that Congress intended to give

24   a party a right to be heard in connection with that.   And

25   that is all very well laid out in many Supreme Court

72

1    decisions, Your Honor.

2              The standard that the Supreme Court has laid out

3    in those decisions -- so the principal decisions being

4    *Association of Data Processing Service vs. Camp,* that's at

5    397 U.S. 150, and then *Clarke vs. Security Industry*

6    *Association, t*hat's at 479 U.S. 388, where they lay out that

7    it is a party within the zone of interest to be protected by

8    the statute in question.

9              The standard that the Supreme Court has laid out

10   is a -- it's a pretty low bar.  It's a quote from the *Clarke*

11   decision.

12             The Court to say there's no standing would have to

13   find that the zone of interest denies a right to participate

14   of the parties because the parties' interests are so

15   marginally related to or inconsistent with the purpose

16   implicit in the statute that it cannot reasonably be assumed

17   that Congress intended to permit participation.

18             The *Clarke* court further says the test is not

19   meant to be especially demanding.  In particular, there be

20   no indication of congressional purpose to benefit the would-

21   be plaintiff.

22             And back to *Collier's*, the -- discussing those

23   cases, *Collier's* at Volume 7, 1109.04, subparagraph (4)(b),

24   says given the nature of Section 1109(b) because courts have

25   said that in thinking about that zone of interest analysis

73

1   under the Supreme Court case law you plug that in together

2   with 1109(b).  And so *Collier's* says given the nature of

3   section 1109(b) and the purposes that it was designed to

4   serve the zone of interest has to be liberally construed in

5   favor of participation in Chapter 11 cases.

6           There are cases, Your Honor, that say that a

7   debtor has a right to object to the retention of counsel.

8   Among other cases, Judge Krechevsky, *in In re Pappas*, at 216

9   B.R. 87, it's a 1997 decision, ruled that -- he actually

10  ruled that Rule 2002 refers to a debtor as a party in

11  interest and the debtor had standing to object under 327.

12          And then Judge Brozman in a case, the *Vebeliunas*

13  *-- it's V-E-B-E-L-I-U-N-A-S* -- it's 231 B.R. -- give me one

14  second, Your Honor -- 181.

15          And actually, Your Honor, there Judge Brozman

16  disqualified trustee's counsel on the basis that trustee's

17  counsel, before the 341 had occurred, before ever examining

18  the debtor, had made public statements that indicated an

19  extreme bias against the debtor.  He called the debtor a

20  liar and other inappropriate things.  And Judge Brozman

21  found that the debtor there both had standing to and, in

22  fact, disqualified counsel on that basis.

23          Also I point, Your Honor, to a Second Circuit

24  decision, *Savage & Associates, P.C. vs. K&L Gates*, 640 F.3d

25  53, where the Second Circuit made clear that a debtor has

74

1    standing to -- I'm sorry -- that a party may have standing

2    not just based -- not based on a financial interest alone,

3    but also based on having a legal interest.

4          And, again, both Judge Krechevsky and Judge

5    Brozman found that a debtor did have a legal interest in

6    objecting to a 327(a) application where counsel was not

7    disinterested.

8          On the financial interest, look, I have no idea

9    where this case is going to come out, Your Honor.  And I

10   understand that at filing the debtor had some very small

11   amount of money in his possession.

12         But speaking of the U.K. litigation, the amount

13   demanded there is $500 million.  And I don't know anything

14   really about the status other than I think I may have heard

15   a comment that maybe sounds like something similar to what

16   Mr. Despins has heard that that litigation apparently has

17   gone reasonably well.

18         So it may well be that this estate is not solvent.

19   And it may be that there's a $500 million recovery against

20   UBS in the U.K.  And that would be terrific for everyone,

21   including the debtor.

22         So I believe that the debtor does have standing

23   here to -- to object to Paul Hastings' retention.

24         In terms of the conflicts and -- I did, you know,

25   file a witness and exhibit list with exhibits.  I'm prepared

75

1    to put on evidence.  Although with respect to much of the

2    evidence I would put on, I'm not sure that there's any

3    disputed issue.  And I don't want to belabor or take up a

4    lot of time that we don't need to take up.

5         I don't think it's disputed that Paul Hastings

6    does work for various UBS entities.  The initial declaration

7    that Mr. Despins filed states that and names the entities.

8    Actually the Paul Hastings financial restructuring web page

9    says that they have done -- I don't know if they do today --

10   but that they have done work for UBS entities.

11        I don't think it's disputed that the defendant in

12   the U.K. action is UBS AG.  That the -- in the debtor's

13   schedules, and I don't know why -- in the statement of

14   financial affairs I don't know why this was done, but it was

15   disclosed there was an action against UBS AG, and then, in

16   parens, it says London branch.

17        And in the initial declaration filed by Mr.

18   Despins the UBS AG that he is talking about in the

19   declaration is defined to be that UBS AG, in parens, London

20   Branch.

21        But if you look at the complaint, which I actually

22   attached to our objection -- again, I could -- I'm happy to

23   put it into evidence, Your Honor, but it's attached to our

24   objection and I don't think there's any dispute that it is

25   -- it is the complaint -- it's clear that the defendant

76

1    there is UBS AG -- I'm going to say the big UBS AG -- the

2    one that's headquartered in Switzerland and presumably is

3    the parent of a whole bunch of other UBS entities.

4             Again, the damages there asserted is $500 million.

5    So this is not an insignificant claim.  And that's in,

6    again, in the complaint that I attached to the -- to the

7    objection that we filed.

8             Mr. Despins says he's never represented any UBS

9    entity -- this is in his -- in his initial declaration --

10   and that he in his capacity as trustee is able to be adverse

11   to UBS AG and to be named plaintiff.

12            A couple of points. In the declaration, because of

13   the way he's defined UBS AG, again, to be just UBS AG, in

14   parens, London Branch, close parens, I don't think his

15   declaration as filed actually covers the actual defendant in

16   that lawsuit because his declaration -- he does say in the

17   declaration that he can be adverse to any -- he's never

18   represented any UBS -- what the declaration says is he's

19   never represented any UBS entity.  That's easy to

20   understand.

21            In my capacity as trustee, I'm able to be adverse

22   to UBS AG and to be named plaintiff as Chapter 11 Trustee in

23   any lawsuit against UBS AG.  But, again, his definition of

24   UBS AG is UBS AG, London Branch, and that's not -- the

25   principal defendant in that action is UBS -- big UBS AG I'll

77

1   call it.

2          And so his declaration just -- it just does not --

3   other than that he's never represented any UBS entity, it

4   does not address the actual defendant in that lawsuit.

5          The actual --

6          THE COURT:  Why does it need to address the actual

7   defendant if he said he didn't represent any UBS entity

8   ever?

9          MR. HENZY:  Well, Your Honor, because it's not

10  clear from all of that whether Paul Hastings has represented

11  --  if we were talking about my denied 60(b) motion, that

12  would be important.  But we're not.

13         We're talking about Paul Hastings.  And so the

14  issue is whether -- not whether Mr. Despins has ever

15  represented any UBS entity.  It's whether any UBS entity is

16  a former or current client of Paul Hastings.  And I don't

17  think that his declaration addresses that.

18         THE COURT:  Okay.

19         MR. HENZY:  Mr. Bassett -- in the actual

20  application to retain Paul Hastings, it's Mr. Despins'

21  application, but there's a declaration by his partner, Mr.

22  Bassett, that's attached.

23         And Mr. Bassett's declaration does not address

24  that representation at all.  What it does is it points to

25  Mr. Despins' declaration, his first declaration and just

78

1   says when it comes to connections, I'm just relying on his

2   declaration.

3            Which I actually under Rule -- under the rule, I'm

4   not really sure that you can do that.  I'm not sure counsel

5   -- in a retention application, I'm not sure that the firm

6   affidavit or declaration that's attached to the application

7   can point to something else and say I'm not -- I'm not

8   disclosing any conflicts.  I'm pointing you to somebody -- a

9   different declaration that somebody else has filed and go

10  look at that.

11           But I guess in some sense I'm not -- I'm not

12  swearing to anything here other than what Mr. Despins said

13  over there is true.  So Mr. Bassett doesn't himself in his

14  declaration address the UBS issue at all.

15           So I think the bottom line of all of that is that

16  I'm sure the UBS issue has been addressed by the existing

17  declarations.

18           And I'm also not sure how you get around -- or

19  maybe you can get around Paul Hastings representing the

20  trustee here, but I don't think that what is on file now

21  does that.

22           It doesn't carve out Paul Hastings from

23  representing UBS.  It just -- it just doesn't.  They're

24  being retained as general bankruptcy counsel to the trustee

25  and I think that that's a significant conflict for them.

1          That UBS is a client of Paul Hastings I think is

2     admitted.  And UBS is a defendant in a major asset of this

3     bankruptcy estate.

4          And I'm a -- I'm a little -- I could keep -- I

5     don't know if we're going to address the PAX/PAG issue

6     separately.  Or I can keep going on the issues that I've

7     raised.

8          Because I guess I think the issues that Attorney

9     Friedman has raised are actually different than the ones I

10    would raise with respect to PAX and PAG.

11         So should I keep going, Your Honor?

12         THE COURT:  Well, I don't know.  Maybe we should

13    hear from Mr. Despins first on this issue and then keep

14    going.  I mean, otherwise we're going to be here all day.

15    Right?

16         I mean, what -- you know, the issue is, Mr.

17    Despins, Mr. Henzy's saying your firm has a conflict because

18    they represent UBS.  It's not clear that they represent UBS.

19    And they're -- UBS is a defendant in the adversary -- in the

20    case in London.  So, you know, he's saying that Mr. Barnett

21    I believe --

22         MR. DESPINS:  Bassett.

23         THE COURT:  Bassett, I'm sorry, his affidavit

24    isn't -- doesn't answer that question.

25         MR. DESPINS:  May I, Your Honor?

80

1          THE COURT:  Yes, please.

2          MR. DESPINS:  So the application to retain Paul

3   Hastings, which I signed, incorporates by reference my

4   declaration, and the declaration addresses both the trustee

5   appointment and Paul Hastings.  It says that expressly, that

6   the disclosures in that declaration cover both the trustee

7   and Paul Hastings.

8          That declaration says that we don't represent

9   London, sorry, UBS AG currently.  We've represented them in

10  the past, but we represent other UBS entities.

11         And I don't think -- I'll check this -- but I

12  don't think that the fact that it said, open paren, London

13  Branch verses non-London Branch changes the analysis.  I

14  think that from my point of view it's the same thing.

15         Luc Despines as Trustee can be trustee and handle

16  as trustee litigation against any UBS entity, London Branch

17  of not, and practically -- that's why Mr. Henzy has not --

18  he makes all of these great points, but doesn't die into

19  reality.

20         The reality here is that there is counsel involved

21  in the case.  They're barristers.  These are the people that

22  have been handling this case for two years.  And I'm -- I

23  think they will continue to do that.  It would be not a good

24  idea to replace them with new counsel.  In any event, even

25  if I wanted to do that, Paul Hastings are not barristers in

81

1    London, therefore, cannot handle that litigation.

2           So Paul Hastings, it's a false issue.  Paul

3    Hastings cannot handle that litigation.  So that's really

4    the crux of the issue, Your Honor, is that it's a non-issue

5    for that reason.

6           And, you know -- you know, I'm sure Your Honor

7    knows the difference between solicitors and barristers.  But

8    we are solicitors in London, we're not barristers, cannot

9    file a complaint or handle a trial.  I'd love to be able to

10   do that, but we're not equipped to do that.  So that, to me,

11   deals with that issue completely.

12          THE COURT:  Okay.

13          MR. DESPINS:  Thank you.

14          THE COURT:  Thank you.

15          Go ahead, Mr. Henzy.

16          MR. HENZY:  So just -- so just to be clear, Your

17   Honor, the only place where the UBS issue is addressed is in

18   the U.S. Trustee's application for order approving

19   appointment of Chapter 11 Trustee, which attached to that

20   was Mr. Despins' declaration of disinterestedness.

21          And paragraph 7(c) of that declaration provides

22   while Paul Hastings previously represented UBS AG, in

23   parens, London Branch, defined -- it's in quotes -- "UBS

24   AG."  So in -- in his declaration, UBS AG means UBS AG,

25   London Branch.  That's not my definition.  I'm not -- I

82

1    don't think I'm parsing things, words, or anything like

2    that.  That's how he has defined UBS AG.

3         And what the declaration says is then I have never

4    represented any UBS entity, including UBS AG.  I, in my

5    capacity as trustee, am able to be adverse to UBS AG --

6    again, substitute for that UBS AG, London Branch -- and to

7    be named the plaintiff as Chapter 11 Trustee in a lawsuit

8    against UBS AG -- again, substitute UBS AG, London Branch.

9         What the declaration says about Paul Hastings is

10   Paul Hastings does not currently represent UBS AG.  But,

11   again, that-- the way he's defined it UBS AG means UBS AG,

12   London Branch.  It doesn't mean big UBS AG.  That may -- I

13   don't know.  It may or may not be true that Paul Hastings

14   doesn't represent big UBS AG, but that's not what this says.

15        Paul Hastings does currently represent certain UBS

16   entities, namely UBS Securities, LLC, UBS Securities,

17   Limited, Seoul Branch, UBS Investment Bank, that are

18   affiliates of UBS AG, which again I think means UBS AG,

19   London Branch, in unrelated matters.

20        And so I don't think Mr. Despins' declaration

21   addresses Paul Hastings' representation of big -- what I'm

22   calling big UBS AG, which is the defendant in the U.K.

23   action, at all.  It just doesn't.

24        And Mr. Bassett's declaration does no more than

25   refer to Mr. Despins's declaration.

83

1          Mr. Despins' declaration may be adequate with

2    respect to his being disinterested with respect to this

3    issue.  And he says that he is able to be adverse to UBS AG,

4    and meaning London Branch, and to be the named plaintiff

5    against UBS AG, London Branch, but it doesn't say anything

6    about Paul Hastings.

7          So right now I don't think there's been any

8    disclosure, Your Honor.

9          And, again, I don't know if it's -- I've never

10   seen in an application to retain a professional that the

11   declaration with the affidavit attached to the affidavit

12   simply makes reference to somebody else's declaration.  But

13   that -- maybe there's something out there that says that's

14   okay.

15         So the application is for Paul Hastings to be

16   general bankruptcy counsel.  There's no -- there's no carve

17   out.

18         MR. DESPINS:  Your Honor, I'm happy to put a carve

19   out.  Paul Hastings will not handle the U.K. litigation.

20   That's the end -- that's the end of it.  I mean, we can --

21   because we can't.  We're not barristers, Your Honor.

22         THE COURT:  Anything further on that point, Mr.

23   Henzy?

24         MR. HENZY:  I don't have anything further on that

25   point, Your Honor.

84

1          THE COURT:  Okay.  So what's your next point?

2          MR. HENZY:  With respect to PAX/PAG that was the

3     subject of -- I understand there was disclosure right at the

4     time of the July 8 hearing, and then there was a

5     supplemental disclosure.

6          There has been no disclosure with respect to the

7     common officers, common directors, common control between

8     the PAG, the so-called PAG entities, that Paul Hastings

9     until very recently represented and apparently terminated

10    that relationship.  There's no disclosure of the

11    circumstances of the termination of the relationship.

12         And I -- Mr. Friedman can certainly correct this,

13    but based on the statement that he made at the July 21

14    hearing, my sense was that PAG may not have understood that

15    it was a former client of Paul Hastings.

16         And, again, Mr. Bassett's declaration does not

17    address PAX or PAG at all.  It just refers to Mr. Despins'

18    -- actually his initial declaration.

19         So I don't think that the disclosure here has been

20    adequate.  And as the Court is obviously very, very aware,

21    the -- PAX is a major creditor in this -- in this bankruptcy

22    case.

23         THE COURT:  Mr. Despins?

24         MR. DESPINS:  Your Honor, the first supplemental

25    declaration, again, says it's filed in support of the

Fiore Reporting and Transcription Service, Inc.

85

1    trustee appointment and the Paul Hastings retention.  That's

2    paragraph one.  So that issue is addressed.

3         My declaration covers both.  So I don't understand

4    why going back to Bassett -- Bassett is irrelevant for the

5    purpose of conflict.  There's only one conflict disclosure.

6    They're my declarations.  Number one, number two, number

7    three.

8         So Bassett, the fact that he's incorporated by

9    reference is of no meaning because the application to employ

10   Paul Hastings says we -- Paul Hastings is relying on the

11   declarations of Luc Despins.  Plural.

12        Now, on the issue of PAX, he's saying we don't

13   know if they're the same officers and all that, paragraph 4

14   of the declaration says, and in any event assuming without

15   conceding the point that PAG entities and PAX would be

16   treated as one for conflict purposes, meaning assuming that

17   they have the same directors and officers, which we didn't

18   get into, I'm still able to be adverse to them because

19   they're a former client.

20        So that's the end of the inquiry, meaning I'm

21   assuming the worst here, that they are all the same, which

22   I'm not sure is the case.

23        But assuming it is the case, we are able to be

24   adverse because they're former clients on a -- on a related

25   matter.

86

1   There was -- the last transaction is a transaction

2   that closed in May -- I forget the exact date -- May 15th,

3   17th, something like that.  And it's a corporate

4   transaction, and there was a closing, and that was the

5   closing transaction.  That was in May of 2022.  So I'm not

6   sure I see the point there.

7   THE COURT:  Mr. Henzy?

8   MR. HENZY:  I mean, again, Your Honor, the only

9   declaration that was actually attached to the application to

10  retain Paul Hastings was Mr. Bassett's.

11  But, I mean, it's always the case, Your Honor,

12  where you have a transactional client there's going to be

13  periods of time where there's no transaction that's pending,

14  and it sounds like PAG, these PAG entities, were

15  transactional clients of Paul Hastings.

16  And I don't -- I don't doubt that in I guess it

17  was May that whatever transaction they were working on

18  closed, but, I mean, at least it appears that there was a

19  relationship.

20  And Paul Hastings certainly can take the position

21  that, well, right now we're not representing any of the PAG

22  entities on any matter and, therefore, they're a former

23  client.

24  Now, that -- and that's always a sort of

25  discussion thing.  If you have a client and you're doing

87

1    work for that client on a regular basis, but at a point in

2    time you don't have any matter you're actively working on,

3    is the client a former client or is the client a current

4    client?

5            I think I understand the technical argument is a

6    former client, but I think often times clients don't

7    understand the technical argument and might not always agree

8    with that.

9            I still think that there is a disclosure issue

10   though.  What were the -- what were the circumstances of

11   PAG, the PAG entities, becoming former clients?

12           I mean, did Paul Hastings inform them we are not

13   going to represent you anymore?  I think that is -- I think

14   that's relevant.

15           How many -- how long did the relationship exist?

16   How many transactional matters did Paul Hastings represent

17   the PAG entities on?  I think that is all relevant

18   disclosure, Your Honor.

19           THE COURT:  Anything further?

20           MR. HENZY:  No, Your Honor.

21           THE COURT:  Anything further on the application to

22   employ Paul Hastings as a whole?

23           MR. HENZY:  Yes, Your Honor.

24           THE COURT:  What?  What's next?

25           MR. HENZY:  Okay.  Next is I'll call it the

88

1    broadly Paul Hastings' connections with China.

2            I don't think, Your Honor, that it's disputed that

3    Paul Hastings has a presence in China.  It has offices in

4    Beijing, in Shanghai, and it also has an office in Hong

5    Kong.  I don't know if it's -- would be disputed today that

6    Paul Hastings does do work for Chinese state owned entities

7    and it also does work for businesses.  They're doing

8    business in China.

9            I don't expect anyone to agree with me today that

10   China exercises significant review, control, over businesses

11   in China.  I will admit that I'm not going to be able to

12   prove that today.  I'm not sure how I would have prove it.

13           I did cite a statement by the Director of the FBI,

14   Christopher Wray, in the objection.  I did not subpoena Mr.

15   Wray to court here today to say in court today what he has

16   said publicly in terms of China's -- the degree of control

17   China exercises over -- over businesses in China, including

18   their license to do business in China.

19           I also believe, Your Honor -- I don't know if this

20   would be disputed or not -- there's a pretty good public

21   record of this, that to put it mildly, Mr. Kwok got on the

22   wrong side of the government of China.  He had to leave the

23   country.  He is seeking asylum here.

24           The Peoples -- the Chinese government and/or the

25   Hong Kong government seized billions of dollars of assets of

89

1    family members, and others and potentially very significant

2    dollars that I don't think he would dispute were in entities

3    that he did control, like the Pangu Plaza, which my

4    understanding is that that was actually PAX's -- connected

5    with PAX's loan and kind of was the part anyway of the

6    reason that a lot that unraveled.

7         Mr. Kwok may have claims against the government of

8    Hong Kong or the Peoples Republic of China based on the

9    seizure of those assets.  I am not obviously an expert in

10   that world, but my understanding is that there at least in

11   form is a procedure that a person can go through if their

12   assets have been seized.

13        I don't know of Mr. Despins has done any analysis

14   of that at all in terms of is there a claim to be made by

15   the estate based on the seizure of assets. So there's --

16   that's a specific concern.

17        The general concern is that the Chinese government

18   I think it has demonstrated that it is -- it is going after

19   Mr. Kwok.

20        Again, we cite Department of Justice documents in

21   the objection, Your Honor, that make it clear that the

22   government of China has attempted in various ways to remove

23   Mr. Kwok from this country.  And so there's a couple of

24   concerns with that.

25        One is that the Chinese government will seek to

90

1    exercise influence over Paul Hastings.  Paul Hastings cannot

2    do business in China if -- unless China allows it to do

3    business there.  And, again, according to the FBI director,

4    the government of China does exercise control over

5    businesses that are doing business there.

6          Very recent and up front is -- and Mr. Despins

7    made reference to this, the United States Department of

8    Justice has sued Mr. Stephen Wynn for failing to register

9    under the Foreign Agent Registration Act.  And the

10   allegation is that Mr. Wynn acted as an agent for the

11   Chinese government in seeking to have Mr. Kwok removed from

12   -- from this country.

13         On July 15, Paul Hastings appeared on behalf of

14   Mr. Wynn in that District of Columbia action and they are

15   seeking to dismiss that action.

16         Mr. Despins -- after we put this in the objection,

17   he filed a second supplemental disclosure, and among other

18   things, in paragraph 3 of that disclosure, he said I did not

19   disclose Paul Hastings' representation of Mr. Wynn in the

20   prior declaration because he first learned about it by --

21   via the objection.

22         Well, obviously the firm knew about its

23   representation of Mr. Wynn and I think it's the firm has an

24   obligation to make their adequate disclosure.

25         In the paragraph 4 of the declaration, Mr. Despins

91

1    also says that he believes the Wynn representation has no

2    bearing on the retention of Paul Hastings as counsel, and

3    essentially it's just -- it's completely unconnected,

4    irrelevant.  I think it's connected in a number of ways.  Or

5    the Chinese government's actions are certainly connected in

6    a number of ways.

7          One, if Mr. Kwok is removed from this country that

8    obviously has significant impact on this bankruptcy case if

9    he's not here.

10         Mr. Despins states in the -- in his declaration

11   that the debtor will not be a witness in the action that's

12   pending in -- in the District of Columbia.

13         I don't know how Mr. Despins could know that to be

14   true.  I don't know how anyone, unless they talk to someone

15   at the DOJ, could know whether or not the DOJ is going to

16   decide, or maybe Mr. Wynn is going to decide, that Mr. Kwok

17   should be called as a witness.

18         Mr. Despins also states the debtor's estate will

19   not be increased or decreased based on the action that's

20   pending in the District of Columbia.

21         I don't know if Mr. Despins has concluded that the

22   debtor has no claim against Mr. Wynn.  And if you -- if you

23   read the complaint filed in the District of Columbia action,

24   it essentially alleges a pretty broad, you know, pattern of

25   behavior put it.

92

1        Someone might -- you know, someone might say it

2    looks like a conspiracy amongst a group of people to have

3    Mr. Kwok removed from the country.  So he may well have a

4    claim or there may well be a claim against Mr. Wynn on

5    account of Mr. Wynn's conduct related to Mr. Kwok.

6        So that is it, Your Honor.

7        THE COURT:  Okay.  Thank you.

8        Mr. Despins, did you want to respond to that last

9    point?

10       MR. DESPINS:  Yes, Your Honor.

11       First, you know, the -- Mr. Henzy talks about

12   claims the debtors may have.  The schedules don't mention

13   any of this.  Claims against the Chinese government is not

14   in the schedules.

15       And here, again, the point about exercising

16   pressure is, you know, there's always a failure to connect

17   to the conduct by the trustee of this case.  How is that

18   going to be influenced by any pressure that the -- that

19   could be put on.  It's really not there.

20       He's not going to be a witness because it has --

21   as my partner told me -- it could have been lobbying to sell

22   Chinese technology or Chinese tea or something or anything

23   like that.

24       It's you need to register if you are acting as a

25   foreign agent.  The subject matter of the discussion is not

93

1    part of the case.  The fact is you did make representation

2    or not -- don't know -- regarding -- on behalf of a foreign

3    entity.  And if that's the case, you need to register.

4    That's the end of it.  So that's why he's not going to be a

5    witness.

6              As to the Kwok claims against Mr. Wynn, you know,

7    I hesitate to say this because -- but have at it.  I mean,

8    meaning Paul Hastings is not going to represent Mr. Wynn in

9    defending him against claims asserted by Mr. Kwok because

10   clearly they're trying to create a scenario of some kind

11   where somehow Mr. Kwok, you know, has a legitimate concern.

12             I'm telling you right now if Mr. Kwok decides to

13   sue Mr. Wynn for whatever, Paul Hastings will not defend Mr.

14   Wynn in that litigation.  So there's no animosity or issue

15   there.  So I think that answers those questions.  Thank you.

16             MR. HENZY:  I'll be brief.  I probably was not

17   clear.  I think the concern is does the trustee and Paul

18   Hastings representing the trustee have an obligation to

19   investigate what claims might exist against Mr. Wynn or

20   other people who were involved in this behavior where they

21   were seeking to assist the Chinese government in having Mr.

22   Kwok deported.

23             I mean, in terms of a claim against either the

24   government of Hong Kong or the government of China, the

25   debtor did not schedule that.  But presumably Mr. Despins

94

1    and Paul Hastings representing Mr. Despins would want to

2    investigate that.

3            Again, this Pangu Plaza was worth hundreds of

4    millions of dollars, and it was -- and it was seized.  And I

5    think whatever assets that either indirectly or directly may

6    have been owned by a debtor go away that that's something

7    that needs to be looked at an investigated.

8            THE COURT:  Anything further?

9            MR. DESPINS:  Just one last point on this, Your

10   Honor.

11           If the debtor gets into a car accident tomorrow

12   and has a claim against the other driver, am I supposed to

13   pursue that or is that -- that's another, you know -- so the

14   claims against Mr. Wynn have nothing to do with -- it's not

15   a -- it's a post-petition claim by the debtor.  I'm not sure

16   that's for the trustee to prosecute.

17           MR. HENZY:  This is -- all the conduct here

18   occurred pre-petition, Your Honor.  All of the conduct.  The

19   lawsuit was filed by the DOJ post-petition, but all the

20   conduct that occurred occurred pre-petition.  And the same

21   thing with the seizure of assets.  So it's -- to the extent

22   that there are assets, they're pre-petition. I think those

23   would be property of the bankruptcy estate I believe.

24           THE COURT:  Anything further, Mr. Henzy, on your

25   objection to Paul Hastings being retained as counsel to the

95

1    Chapter 11 trustee?  Mr. Henzy?

2              MR. HENZY:  I'm sorry, Your Honor.

3              THE COURT:  I said is there anything further that

4    you want to state with regard to your objection of -- for

5    Paul Hastings being retained as counsel to the trustee?

6              MR. HENZY:  No, Your Honor.  No, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              Anyone else?

9              Mr. Friedman, didn't you file an objection or a

10   limited objection with regard to the retention of Paul

11   Hastings?

12             MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

13   Peter Friedman from O'Melveny & Myers.

14             THE COURT:  Good afternoon.

15             MR. FRIEDMAN:  So we noted our concern that if

16   there's going to be a circus around this that that is a

17   problem.  Obviously, there are other routes that could have

18   been gone in terms of a trustee.

19             But I don't -- we don't think, having looked at

20   the issues, there's a statutory reason other than it not

21   being potentially in the best interest of the estate to have

22   Paul Hastings retained. Our objections were mostly fee-

23   oriented and cost-structurally oriented.

24             The colloquy back and forth though did sort of

25   remind me of an issue you talked about, which is, you know,

96

1    you take the debtor as you find them.  And it is a little

2    weird to hear the debtor now talking about all these

3    potentially valuable assets he has that weren't in the

4    schedules and when it was convenient for him to say I have

5    $3,850 or, no, the assets were never mine.  They were always

6    my families'.  But now he claims he maybe does have lawsuits

7    against the Chinese government.  There is sort of this very

8    weird miasma around -- it's almost like an -- the case is

9    almost like an etch a sketch from the debtor's perspective.

10          What he said in the past literally doesn't matter

11    to what he feels today.  I think that's sort of a troubling

12    portion of this case, that it simply just doesn't matter

13    what he said in the past in other context.  Something else

14    that comes up new that sort he thinks he can ride on the

15    back -- like a blank slate, if it advantages him today and

16    that is sort of a troubling pattern that we've seen over the

17    years.

18          Look, on fees, Your Honor, we were in a situation

19    where the U.S. Trustee picked somebody who had a lower fee

20    structure, much lower fee structure, which we do think is

21    appropriate for the case overall, particularly if you wind

22    up with either a non-consensual plan or low recoveries.

23          We are concerned about eating into creditor

24    recoveries, you know, if substantial costs are run up by the

25    trustee and his counsel.

97

1    The trustee sort of, you know, has a response. One of the

2    points of the response is, well, on the other hand, we're

3    not acting like a true contingency counsel fee firm because

4    the upside isn't so great.

5         And to be fair, Your Honor, if the upside turns

6    out to be even better, right, maybe our proposals on the

7    upside aren't as generous as they could be.  If the trustee

8    recovers $150 million, I think we, you know, we might be

9    open to substantial fee enhancements.

10        We just -- our real concern is, you know, if there

11   is a low end or if some money gets exhausted after running

12   after Mr. Kwok for many years.  And Mr. Despins may well

13   not.

14        But, you know, and you end up with 60 or 70

15   million dollars of recovery, but you also wind up with 10 or

16   15 million dollars in legal fees, that would be a real loss

17   from the PAX perspective and I think the perspective of

18   other creditors, particularly where there was an option at

19   the outset of the case for lower costs.  So that's our

20   concern.

21        And so, you know, I think the Court has it in her

22   power either to evaluate costs now, evaluate costs in the

23   context of what value is given to the estate as things come

24   up.  Obviously, you know, people may prefer for it to be

25   dealt with now.  We would.  But, you know, that's where we

98

1      stand.

2             This is -- you know, I think you've heard from me

3      over the course of years.  This isn't like a -- over the

4      last six months.  This isn't like I'm going to pound the

5      table because there are immediate factual issues that have

6      to be addressed.

7             But there are real concerns from PAX about how

8      much money is PAX going to wind up with at the end of the

9      day versus how much is going to be paid to professionals.

10     So I think, and said, we've -- we've put forward.

11            Beyond that, you know, our specific concerns and

12     specific proposal, I think we're amenable to making the

13     upside better from our perspective if that's enticing and

14     appealing to the trustee and his law firm.

15            But whether it's dealt with now or whether it has

16     to be dealt with in the future when asset -- when cash comes

17     in, we think it's really important to address.

18            Thanks, Your Honor.

19            THE COURT:  Thank you.

20            Anyone else wish to be heard?

21            Oh, I'm sorry, Mr. Despins.  Would you like to

22     respond first?

23            MR. DESPINS:  No.  Maybe others want to be heard.

24            MR. GOLDMAN:  Just briefly, Your Honor.  Irve

25     Goldman for the creditors committee, Your Honor.

99

1          On the -- this newly raised potential claim that

2     the debtor says he may have against Steve Wynn, as Mr.

3     Friedman pointed out, that's a claim that should have been

4     but was not listed on the schedules.

5          As Mr. Henzy said it's based on pre-petition

6     conduct so it would have had to have been listed on the

7     schedules as an asset of the estate.

8          There is well settled case law that when a debtor

9     doesn't list a claim on its schedules and then tries to

10    bring an action post confirmation, for example, it's going

11    to be judicially estopped from pursuing that claim.  And

12    that's the situation here.  It should be judicially estopped

13    from making the argument that he has a claim that the

14    trustee needs to investigate against Mr. Wynn.

15         As to the Paul Hastings application, we did file a

16    statement indicating that we had certain understandings

17    concerning how the Paul Hastings firm would represent the

18    trustee in this case, which were formed based on discussions

19    with Mr. Despins.

20         And that is that they would, whenever possible,

21    economize by using local counsel, whose rates are much lower

22    than the Paul Hastings firm, and that also they would not be

23    seeking litigation funding for the causes of action that we

24    believe exist and which results in a savings in the sense of

25    it would have been an expensive proposition to obtain

1    litigation funding.

2         So I think it's important that these

3    understandings at least be confirmed on the record here

4    today.

5         Another one of those understandings was that the

6    trustee himself, in the capacity as trustee, would not be

7    seeking percentage compensation under Section 326 for assets

8    that may be recovered and distributed in this case, but that

9    he would be just looking for his hourly rate as counsel for

10   Paul Hastings for -- in lieu of any percentage compensation

11   that he might claim under section 326 at the end of the day.

12        So I would just appreciate if he can confirm those

13   understandings on the record. As we said in our papers, we

14   have no objection to the retention.

15        THE COURT:  Okay.  And just why do you think that

16   he should not be receiving a statutory percentage of any

17   recovery?

18        MR. GOLDMAN:  Well, because if he's going to be

19   compensated as a lawyer for Paul Hastings at these rates --

20        THE COURT:  Oh, if he's going to be as -- working

21   as a lawyer?

22        MR. GOLDMAN:  Yeah.

23        THE COURT:  Okay.  All right.

24        MR. GOLDMAN:  Yeah.

25        THE COURT:  I didn't understand.  I got it now.

1     Okay.

2              MR. GOLDMAN:  Yeah.

3              THE COURT:  Sorry.

4              MR. GOLDMAN:  And that he --

5              THE COURT:  I got you.

6              MR. GOLDMAN:  Okay.

7              THE COURT:  I didn't understand it.  I just didn't

8     hear you properly I guess.

9              MR. GOLDMAN:  Okay.  Thank you.

10             THE COURT:  I'm sorry.

11             MR. GOLDMAN:  Thank you.

12             THE COURT:  Okay.  Thank you.

13             Attorney Claiborn?

14             MS. CLAIBORN:  Your Honor, the U.S. Trustee has no

15    objection to the employment of Paul Hastings based upon the

16    documentation filed thus far in the case.

17             I just would note, as we observed this previously

18    in this case, that the continuing obligation to disclose

19    exists today, tomorrow, into the future.

20             And then with respect to the issue of the

21    compensation, the U.S. Trustee's position is that attorneys

22    carry their firm's fees and their own hourly rates with them

23    from their home market.

24             And that this is a complex case.  It's got a lot

25    of moving parts and it requires experienced counsel and that

102

1    necessarily sometimes translates into higher fees.

2              The work that's got to get done in this case does

3    need to get done in a cost effective manner.  I think

4    everyone has made that clear to Trustee Despins and he's

5    aware of it and I'm sure that he's going to do his best to

6    make sure that the skills match the services and that we are

7    doing them in a cost effective manner.

8              And that when we get to a place of fee application

9    that is the appropriate place and the time to debate the

10   cost effectiveness of the services rendered and the benefit

11   to the estate.

12             THE COURT:  Thank you.

13             Trustee Despins, is there -- would you like to

14   respond?

15             MR. DESPINS:  Thank you, Your Honor.

16             I'll pick up where counsel for the committee, you

17   know, left off, which is I've made that commitment to try to

18   be as nimble as possible.

19             First of all, it's our job to do that, but -- and

20   that means practically relying on local counsel, on Mr.

21   Skalka and Mr. Linsey, as much as we can.

22             And also leverage what PAX has done in the state

23   court, because there's three years, maybe four years, of

24   learning there and there's no point in us reinventing that

25   wheel.  Us as lawyers.  We can just borrow from that and we

103

1    intend to do that.  And that combined together should lower

2    the cost.

3         But I don't want to mislead you.  This is going to

4    be an expensive process.  And I want to touch on the point

5    that I've agreed there will be no litigation funding.  That

6    is correct.

7         But I did get a quote just to give Your Honor a

8    sense.  A litigation funder -- let's assume we wanted $5

9    million to pursue claims -- they -- the fee they will charge

10   will be two to four times the amount.  So you have to repay

11   the 5 million.  Then it would be a 10 to 20 million dollar

12   fee.  Just to put that in perspective.

13        We're not asking for any of this.  We're not

14   asking for 30 percent, 40 percent.  We're asking for our

15   rates.

16        I understand that our rates are high compared to

17   local rates.  I understand that, Your Honor.  But here I

18   could end up with a zero recovery.

19        I know we all know and we believe what should

20   happen.  And I believe that too.  But from that to reality

21   is going to take a lot of time and a lot of effort.

22        And we are bearing the risk of that because the

23   debtor has unlimited resources and they will fight us on

24   everything.  It will be appealed to the Second Circuit.  And

25   if they can, to the Supreme Court.  I've no doubt about

104

1    that.

2          And that's what we're facing in terms of getting

3    paid.  And, therefore, we believe in light of that it would

4    be really inappropriate to say, oh, we're going to discount

5    your rates if you don't collect more than X dollars.

6          Because, for example, let's assume tomorrow I wave

7    a magic wand in my dreams and I get the Sherry-Netherland

8    and the yacht here, how much do they sell for?  I don't

9    know.

10         What if they sell -- and this is not my goal -- I

11   want them to sell for 70 million for the apartment and 40

12   million for the yacht.  But let's assume they sell for 20

13   each.

14         Well, under Mr. Friedman's proposal I'm taking a

15   hit because even though I've obtained a good result in

16   bringing these two assets in, I didn't get the value that

17   people thought would be obtained from the assets.  I've

18   become an insurer of the value of the assets.  That's really

19   wrong.

20         So I understand PAX's frustration.  They've spent

21   millions of dollars chasing this debtor in a kind of a catch

22   me if you can caper.  And they almost, almost got it.

23   Almost got it, but they didn't.

24         And now they have -- they have this fear -- and I

25   share the fear -- which is is this the beginning of another

105

1    catch me if you can?  And my job is to make sure that the

2    movie is shorter this time or more successful.

3          But I -- but the point is that that should not

4    translate into we're going to -- we're frustrated and we're

5    going to hurt you on your fees.

6          I just -- I don't want to sound arrogant about

7    this, Judge, but if I came back to the office and said it's

8    a contingent case and I took a discount on my hours, they

9    would say what did you do?  They would just say they would

10   have to have my head examined.

11         So I don't want to be arrogant about this, Judge,

12   but -- and I wish -- I feel Mr. Friedman and his client's

13   pain on this, but there's nothing I can do on the hourly

14   rates.  And I would urge Your Honor to look at this as a

15   contingency fee transaction.  And in that context, it's a

16   very reasonable rate.

17         Thank you, Your Honor.

18         THE COURT:  Thank you. Mr. Henzy?

19         MR. HENZY:   So the -- on the Wynn claim, this

20   action was just filed by the Department of Justice on May

21   17.  So approximately three months after the petition was

22   filed and after the schedules were filed.  So a lot of --

23         THE COURT:  But you said it was all pre-petition

24   conduct.

25         MR. HENZY:  I'm basing that on -- I'm reading the

1    complaint, Your Honor. I'm saying the complaint was filed --

2            THE COURT:  Well, your client would know or not

3    know whether it was pre-petition conduct.  That's --

4            MR. HENZY:  No, Your Honor.

5            THE COURT:  Yes, he would.

6            MR. HENZY:  That's not -- the facts of what

7    happened here became public on May 17.  They all occurred

8    years ago.  They became public on May 17, 2022 when the

9    government filed it's complaint against Mr. Wynn. So I'm

10   just -- I'm pointing out that many of the facts which

11   occurred years ago became public for the first time when

12   this complaint was filed.  That's all.

13           So three months after the case was filed and after

14   the schedules were filed.

15           A second point --

16           THE COURT:  Well, the trustee didn't get appointed

17   until July 8th.  So your client could have amended his

18   schedules before that.

19           MR. HENZY:  I suppose he could have, Your Honor.

20   I'm not sure --

21           THE COURT:  Well, he has a duty to do that.

22           MR. HENZY:  I'm not sure in this case --

23           THE COURT:  It's not just a supposition.

24           MR. HENZY:  Yeah, given all that was going on I

25   don't know --

1         THE COURT:  What was going on?  Your client wasn't

2    doing anything.  They weren't fighting anything.  They

3    decided that the case should be dismissed.

4         MR. HENZY:  Yeah.

5         THE COURT:  Right.  So he then just decided what

6    he thought should happen and he doesn't have any other

7    obligations under the code?

8         MR. HENZY:  No, I don't think that's fair, Your

9    Honor.

10        THE COURT:  Well, I don't think it's fair to say

11   that he could have maybe amended his schedules.

12        MR. HENZY:  Maybe.

13        THE COURT:  He had an obligation to amend his

14   schedules.

15        MR. HENZY:  Your Honor, I'm pointing out the facts

16   here became public well after the case was filed and also --

17        THE COURT:  It wasn't well after the case was

18   filed, by the way.  The schedules weren't filed until March.

19        MR. HENZY:  Mr. Despins I don't think is

20   judicially estopped by what's in the debtor's schedules.  So

21   whether there's a claim against Mr. Wynn or not I don't

22   know, but I do know that Mr. Despins is not estopped.

23        MR. DESPINS:  Your Honor, two seconds on that.

24        THE COURT:  Yes.

25        MR. DESPINS:  Just to show you -- you know, Mr.

108

1    Henzy's very creative.  We'll give him that.  So we could

2    have a claim.  Let's look at his motion to remove me as

3    trustee.

4             THE COURT:  Why don't we do that.

5             MR. DESPINS:  It says --

6             THE COURT:  Hold on a second. Let's look at it all

7    together because it's a lot easier for me when we're all

8    looking at it together.

9             So his motion to remove you --

10            MR. DESPINS:  Is 561.

11            THE COURT:  561.  Let's look at that.

12            MR. DESPINS:  Paragraph 21.

13            THE COURT:  Just give the courtroom deputy a

14   second and we'll pull it up.

15        (Pause.)

16            THE COURT:  What page?

17            MR. DESPINS:  Paragraph 21, page 7, Your Honor.

18            THE COURT:  Thank you.  Can we make that bigger,

19   please?  Thank you.

20            Okay.

21            MR. DESPINS:  So the point there, Your Honor, as

22   you'll see, it talks about a former DOJ official pleaded

23   guilty to facilitating the transfer of millions of dollars

24   from foreign bank accounts to the United States to fund a

25   lobbying campaign to pressure a high ranking U.S. official

109

1    to unlawfully remove the debtor from the United States.

2    Whoa, that's pretty bad.

3         And is that claim in the schedules anywhere?

4    That's 2018.  Is that in the schedule?  It's not in the

5    schedules.  Why?  Because, again, I give credit to Mr. Henzy

6    to come up with these theories, but the debtor had a

7    beautiful claim apparently here against this person but is

8    not pursuing that claim.

9         So the claims against Wynn are all of the same

10   ilk, meaning obviously, if the debtor thought they had a

11   claim against Wynn, they would have asserted this one for

12   sure against the DOJ -- ex DOJ official.  So it's just to

13   show you that this all pretends to try to bounce Paul

14   Hastings from the case, Your Honor.

15        THE COURT:  Thank you.

16        All right.  Anyone else wish to be heard?

17        All right.  The application -- go ahead, Mr.

18   Friedman. I'm sorry.

19        MR. FRIEDMAN:  Your Honor, the only thing I would

20   say is just in response to Attorney Claiborn's position is

21   obviously they also thought that the first counsel they

22   hired was sophisticated and capable and just came in with a

23   different set of rates.  That's all I have to say, Your

24   Honor.

25        THE COURT:  Okay.  Thank you.

1          Now Mr. Despins, I just have to look back at --

2     with your application did you file a proposed order?   I

3     think you did. I'm not sure it was filed with it or

4     subsequent.

5          MR. DESPINS:  It should have been.  Let me --

6          THE COURT:  I've looked at -- I may even have it

7     right here.  As you can imagine --

8          MR. DESPINS:  Let me find it.

9        (Pause.)

10         THE COURT:  I'll look.  Don't worry. I can take a

11    look.  It will just take me a second.

12         (Pause.)

13         MR. DESPINS:  It's document 539.

14         THE COURT:  Yeah, it's there.  It is there.  It's

15    Exhibit -- it's -- proposed order is five pages.

16         MR. DESPINS:  Yes.  531 -- 539-1.

17         THE COURT:  Yes, I'm looking at it right now.

18    Thank you.

19         (Pause.)

20         When do -- Mr. Despins, do hourly rate increases

21    go into effect in your firm?  Does it happen at the

22    beginning of the year or -- is it normally when that

23    happens?

24         MR. DESPINS:  Typically, yes, Your Honor, but we

25    have a fiscal year that starts in February, February 1st. So

111

1    typically it would be at that time.

2            THE COURT:  Okay.  Because I think -- and one of

3    the things that I tend to do in cases where people are

4    concerned about hourly rates is to make sure that I'm aware

5    of whatever rate increases there are before they would be

6    binding on anyone in this case.

7            So, for example, in your proposed order you say

8    that you would give no less than ten business day's notice

9    about any increases in rates.  And you'll file such notice

10   with the court. I think that's fine, because it may be that

11   depending upon where we are, that maybe the rate will not be

12   increased in the case, okay?  It's possible.

13           MR. DESPINS:  Understood.

14           THE COURT:  Okay.  And then I just want to look at

15   one other thing and then I'll --

16           (Pause.)

17           I know that -- as everybody has acknowledged

18   today, that this is a difficult case.  There are many issues

19   and I understand everyone's concerns. I think people have a

20   right to -- raise the concerns that they've raised and I

21   have listened to them. I have looked at the documents that

22   have been filed in the connection with the application to

23   employ Paul Hastings.

24           I know that Paul Hastings and Trustee Despins have

25   a continuing duty, as does everyone in the case, to address

1    issues that may impact conflicts or disinterestedness.

2          I at this point find that Paul Hastings is

3    disinterested.  That the arguments that have been set forth

4    by the debtor through counsel are not persuasive and that

5    the application to employ Paul Hastings will be granted.

6          The proposed order, Mr. Despins, if there's any

7    minor change to it, it will be minor, but I note, as I note

8    for all counsel, or at least try to remember to. I don't

9    know if I do it as well as I think I do or should, but

10   Section 330 of the bankruptcy code allows the court after a

11   hearing on reimbursement of compensation and expenses to

12   award and amount less than that sought and, therefore, while

13   these rates and issues are before the court are -- you've

14   set forth what you're going to charge, that those are your

15   rates, that the court could make a different finding in the

16   future.

17         But I'm not suggesting that that's what's going to

18   happen. I'm just suggesting the code -- I like to make sure

19   that counsel knows that the code says that.  The code says,

20   and I think it's 330(b), that compensation can be awarded in

21   an amount of less than that sought.

22         And I do understand your point with regard to this

23   case and how to view it, but at this point the application

24   is granted.  The proposed order with some minor change may -

25   - I think the only change it will be -- a reference to rule

113

1  -- I mean, excuse me, Section 330 and that, you know, the

2  court may not enforce an increase in rates if one is filed

3  with the court. It may not be enforced against the estate or

4  it may, depending upon the circumstances of what happens.

5        Again, I think this case has a lot of issues and,

6  you know, I think we just have to see what happens. I think

7  the flexibility is there in the code to give the court as

8  the oversight body the ability to make a determination on

9  the fees and expenses.

10        MR. DESPINS:  Understood, Your Honor. Our only

11  point is that we didn't want that discretion, which is

12  normal, meaning if it costs us $500,000 to obtain a bond,

13  you should disallow that.  Okay?

14        THE COURT:  Right?

15        MR. DESPINS:  But I want to be clear is that

16  that's not going to be a back door way to bring local rates,

17  or anything like that --

18        THE COURT:  No, I'm not doing that. I agree with

19  that.

20        MR. DESPINS:  Thank you, Your Honor.

21        THE COURT:  That is not happening.  The only thing

22  that would happen is if an application is filed and the

23  court finds that there's some reason why the services

24  rendered should not be reimbursed.

25        MR. DESPINS:  Absolutely.  Understood, Your Honor.

114

1          THE COURT:  And not an increase in rates. I'm not

2     sure that an increase in rates will be -- we'll have to see

3     where we stand at that point.

4          MR. DESPINS:  Understood.

5          THE COURT:  Mr. Friedman.

6          MR. FRIEDMAN:  I just want to make clear, and I

7     don't think we need to add this to the order because I think

8     it's always part of the procedure that, for example, if we

9     want to object to compensability for sideshows about whether

10    a disclosure was appropriate, or if there's an appeal to the

11    Supreme Court that somebody brings, we always have the right

12    in connection with each application, whether interim or

13    final, to assert that a specific time entry was not for

14    value to the estate.

15         THE COURT:  Absolutely.  Everybody has that right.

16    That is correct.

17         MR. FRIEDMAN:  Thank you, Your Honor.  Thank you

18    very much.

19         THE COURT:  Okay.  And the court could make that

20    determination as well, upon review of the fee application.

21         So the application to employ Paul Hastings is

22    granted and the order will enter with minor changes, Trustee

23    Despins, okay?

24         MR. DESPINS:  Thank you, Your Honor.

25         THE COURT:  Now we can move onto the application

115

1    to employ Neubert, Pepe and Monteith.

2              MR. SKALKA:  Good afternoon, Your Honor.

3              THE COURT:  Good afternoon.

4              MR. SKALKA:  Douglas Skalka on behalf of Neubert,

5    Pepe and Monteith's application.

6              Your Honor, as you I think are aware, the trustee

7    filed an application to retain my firm as his local counsel.

8    The application was dated July 19th. It's docket no. 569.

9    We received no objections or responses to the application.

10             We did get a request from the U.S. Trustee's

11   Office to submit a supplemental declaration, which we did on

12   July 26th.

13             As part of that supplemental application we

14   indicated that we no objection to amending our order to add

15   a paragraph indicating that we would need seek compensation

16   for trustee related services.  So that's not in the order

17   that's on file, Your Honor.

18             THE COURT:  Okay.

19             MR. SKALKA:  I can submit a revised order to that

20   effect and certainly would be willing to do that later today

21   or tomorrow.

22             THE COURT:  And does anyone else wish to be heard

23   in connection with the trustee's application to employ

24   Neubert, Pepe and Monteith?

25             MS. CLAIBORN:  Your Honor, just briefly.  Holley

1    Claiborn for the U.S. Trustee.

2              The paragraph to which Attorney Skalka's referring

3    is also found in the application to employ Paul Hastings in

4    that proposed order for Paul Hastings at paragraph 5.

5              And it limits the compensation that might be

6    awarded to the firm and excludes compensation for trustee

7    services.

8              THE COURT:  Thank you.

9              So you're saying Attorney Skalka just needs to

10   have that language in the proposed order.

11             MS. CLAIBORN:  Correct.

12             THE COURT:  Okay.  That's fine.

13             MS. CLAIBORN: And with that the U.S. Trustee has

14   no objection.

15             THE COURT:  Okay.  Thank you.

16             MR. SKALKA:  And it's completely acceptable to

17   Your Honor -- to my firm, Your Honor.

18             THE COURT:  Does anyone else wish to be heard on

19   the application to employ Neubert, Pepe, Monteith?

20             Okay.  Hearing nothing from anyone else and having

21   reviewed the application and the desire of all parties to

22   attempt to make this case as efficient as possible,

23   including fees and expenses, I understand the trustee's

24   reason for seeking to employ Neubert, Pepe and Monteith.

25             I think that Neubert, Pepe and Monteith has

117

1    demonstrated that they are disinterested and that no one

2    else has any objection to the application.  Neubert, Pepe

3    and Monteith has stated that they will submit a new proposed

4    order with the qualifications set forth on the record by the

5    United States Trustee's Office and that were in the order

6    approving the application to employ Paul Hastings.

7            So for all those reasons the application to employ

8    Neubert, Pepe and Monteith is granted and the proposed order

9    -- Attorney Skalka, how much time do you need to submit that

10   proposed order?

11           MR. SKALKA:  I think I'll have it by tomorrow,

12   Your Honor.

13           THE COURT:  Okay.  Well, I'll give you -- so it's

14   easier for the clerk's office I'll say till August 3rd.

15   How's that?  That's Wednesday.

16           MR. SKALKA:  That's fine.

17           THE COURT:  Okay.  Thank you.

18           MR. SKALKA:  Thank you, Your Honor.

19           THE COURT:  If everyone could just give me one

20   moment, please.

21       (Pause.)

22           Okay.  So that application is granted.

23           Then just so we're clear on what's on the calendar

24   today, then -- I already said that the motion to quash is

25   moot due to the denial of the Rule 60 motion.

1          So then we just have left on the calendar the

2     motion for order confirming that the Chapter 11 trustee

3     holds all the debtor's economic and corporate governance

4     rights and debtor controlled entities and authorizing the

5     trustee to act in a foreign country.

6          So Mr. Despins, would you like to be heard on

7     that?

8          MR. DESPINS:  Yes, Your Honor.

9          THE COURT:  Please.  Go right ahead.

10          MR. DESPINS:  And also remember that we have

11     housekeeping matters.

12          THE COURT:  Yes.

13          MR. DESPINS:  Okay.  So the corporate governance

14     motion is basically to confirm that we step into the shoes

15     of the debtor.  And I'm glad we filed the motion because the

16     debtor's response made clear that it's unclear to the extent

17     they will cooperate with us.

18          So basically they raised issues regarding BVI --

19     sorry.  Genever BVI.  Remember, that's the parent holding

20     company in BVI that holds the interest in the Chapter 11

21     debtor that's in front of Judge Garrity.

22          And to address their concern about what would

23     happen there we actually provided yesterday, last night

24     fairly late, we filed an amended proposed order that says

25     okay, this is what we need from the debtor.

119

1          We look at this, to be kind of colloquial about

2     it, the debtor has a car.  We want the keys to the car. Or

3     the debtor has stock.  We want the debtor to endorse the

4     stock essentially to give it to us.

5          So the way to do that under BVI law is that he

6     needs to sign certain documents, which we have attached

7     drafts thereof, which our BVI counsel has drafted, and

8     basically the order says Mr. Kwok will within I guess two

9     business days sign these documents, assigning his rights to

10    those share to the trustee.

11         And there's a lot of text, but that's really what

12    it is.

13         In addition to that, because of an issue that was

14    unresolved with the UK lawyers that I mentioned that

15    represent Mr. Kwok in the litigation against UBS, basically,

16    I reached out to them a long time ago, I think two days or

17    three days after being appointed, and they called Mr. Henzy

18    -- actually it would have been later because Mr. Henzy was

19    not appointed til Friday the 14th or something like that.

20         In any event, they reached out to Mr. Henzy saying

21    this guy, meaning the trustee, is calling us.  Should we

22    talk to him.

23         Mr. Henzy, to his credit, wrote a very nice email

24    to them saying the trustee owns all the rights in the

25    litigation.  Mr. Kwok doesn't control any of this.  Talk to

120

1     him.

2          So we got on the phone with them and they said

3     well, that may be the U.S. view of the law, but that's not

4     the U.K. view.  You may have to file a motion to be

5     recognized as a foreign -- and I said, no. I need to do that

6     if I want to start a foreign insolvency proceeding against

7     someone. But if I just want to be substituted as a plaintiff

8     I don't need to do that.

9          Not to make the story too long, Your Honor, they

10    said well, actually, what we need is a letter from Mr. Kwok,

11    because they're afraid of getting sued for -- they haven't

12    used those terms getting sued but it's clear from the body

13    language that they don't want to do anything with a letter

14    from Mr. Kwok.

15         So that's the same analogy here. I need the keys

16    to the car and the keys to the car, Mr. Kwok has it.  He

17    just needs to send a letter to them. It's basically --

18    parrots what Mr. Henzy has written to them already but it

19    would be under the debtor's signature that says this

20    litigation is owned by the Chapter 11 Trustee now.  He has

21    all the rights.  You should tell him everything, privileged

22    or not.  You should communicate everything with him.

23         So that's really what we're doing with this

24    motion. The criticism we've received is by the debtors that

25    -- first of all there's a standing issue and the debtor be

1    heard on these issues.  They raised the rights of others

2    like Bravo Luck, although we gave notice to Bravo Luck.  We

3    served Bravo Luck's counsel.  So that's not an issue.

4         But the debtor's standing on this is questionable.

5    But putting aside the standing yes, we're seeking broad

6    relief, Your Honor.  Why, because cost.  We don't want to

7    come back to the court saying hey, could you authorize this

8    for Australia, please?  Could you authorize this for Canada?

9    I'm making those up. And come back to court all the time.

10        So, yes, we're asking for something that's broad.

11   The idea is that the trustee will use his discretion to do

12   this in a way that makes sense and if not, you're going to

13   get me basically.  You're going to tell me that I shouldn't

14   have done these things.

15        But I think that it is standard, and we cited

16   cases to that effect, to have the trustee's authority to act

17   from a corporate governance point of view recognized.

18        For example, we need to see Judge Garrity in the

19   Genever case. I don't want to be in a situation where Bravo

20   Luck, which is the son's alleged company, shows up to say

21   he's not authorized to speak.  He didn't get the shares from

22   BVI, et cetera.  We can't deal with that.

23        And that's what this accomplishes.  Basically, it

24   makes it very clear that we hold all these rights and that's

25   why we would ask Your Honor to enter the order.

122

1          But I'm happy to answer any questions, Your Honor,

2     or respond to any remaining criticism by the debtor.

3          THE COURT:  I just have a question about this --

4     again, the order was filed yesterday. So I looked at it I

5     would say not as intently as I might otherwise.  But that's

6     fine. I've looked at it.

7          I would assume, but I shouldn't assume, but I

8     won't assume.  What -- if this order enters and Mr. Kwok

9     doesn't sign these documents, then what's the next step?

10          MR. DESPINS:  You're getting to a point that we'll

11     get to in this case eventually, which is contempt.

12          THE COURT:  So we need to have another hearing.

13          MR. DESPINS:  Well, there'll be a motion to hold

14     them in contempt.

15          THE COURT:  Right.

16          MR. DESPINS:  Yes.

17          THE COURT:  Okay.  So that's -- I mean, that's my

18     read of it but, again, as I'm saying to you, I read it not

19     as thoroughly as I might have otherwise because I just had a

20     little bit of time this morning to look at it, but that's

21     fine.

22          I understand the terms and conditions of it in

23     general and I understand that you are asking the court to

24     enter an order under specific sections of the bankruptcy

25     code, including the sections that --

1          MR. DESPINS:  521.

2          THE COURT:  The debtor's duties under the code,

3    whether the debtor's in possession or not.  And that you

4    need this for different -- not only in the United States but

5    for different matters that are pending and were pending at

6    the time that Mr. Kwok filed his Chapter 11 case here in

7    Connecticut.

8          So I have no further questions. I just was asking

9    about that issue.

10         MR. DESPINS:  Thank you, Your Honor.

11         THE COURT:  Thank you.  Mr. Henzy?

12         MR. HENZY:  So, Your Honor --

13         THE COURT:  So you wish to be heard on this?

14         MR. HENZY:  I do, Your Honor.

15         THE COURT:  Okay.  Go ahead.

16         MR. HENZY:  On the two what I'm going to call new

17   pieces of relief that are now being sought, they were not in

18   the motion.

19         THE COURT:  You mean the letters?

20         MR. HENZY:  So the letter that he's asking you to

21   order Mr. Kwok to sign that would be sent to the Harcus

22   Parker law firm in the U.K., that was not addressed in the

23   motion in any way, shape or form.

24         So I don't know how Mr. Despins gets that relief

25   today.  That's new.

124

1          With respect to the substance there, Mr. Despins

2     is right. I tried to get out front on that because the

3     Harcus Parker people were trying to contact me and my

4     position was I don't want to talk to you because Mr. Kwok is

5     no longer party in that action.  You need to talk to Mr.

6     Despins.

7          And I copied him on the email that I sent him and

8     I have not been part of any communication between them and

9     him since I sent that email.

10         I don't know what the law is in the U.K.  I don't

11    know what requirements there are for a court over there. I

12    don't know what privilege issues they live under.

13         I do know -- I mean, I don't represent these

14    people but Mr. Kwok is being asked to sign a letter that may

15    impact other people's rights. I don't know -- the Harcus

16    Parker firm I believe represents other people in that action

17    as well.

18         So I'm in a position where Mr. Despins is adding

19    relief to what was in the motion and I don't know what --

20    and the relief -- with respect to this anyway would direct

21    Mr. Kwok to do something and I have no idea whether -- what

22    Mr. Kwok is being directed to do is appropriate in the facts

23    and circumstances.

24         THE COURT:  Well, let me ask you a question.

25         MR. HENZY:  Sure.

125

1          THE COURT:  You are objecting to Mr. Kwok even

2    signing the share transfer instrument of the Genever

3    Holdings Corporation?

4          MR. HENZY:  Well, let me get to that.

5          THE COURT:  That's my question.  Are you objecting

6    to that.

7          MR. HENZY:  So that was not part of the relief

8    sought either.

9          THE COURT:  Let me just ask the question.

10          You now have come in and you articulated very

11    clearly that Mr. Kwok is no longer a debtor in possession.

12          MR. HENZY:  That's right.

13          THE COURT:  Okay.  So he still has obligations

14    under the bankruptcy code and Mr. Despins has asked him to

15    provide information to him, including turning over the

16    shares of Genever Holdings Corporation, correct?

17          Didn't you say you got a letter -- Mr. Despins

18    sent you a letter or sent Mr. Kwok a letter saying he wanted

19    all the information?

20          MR. HENZY:  I don't --

21          MR. DESPINS:  Your Honor, we sent a letter to Mr.

22    Baldiga before he was terminated.  We sent a letter to Mr.

23    Mitchell?  And then we copied -- when they were appointed we

24    copied saying we need all this.  And it asked for all the

25    corporate governance documents regarding BVI.

126

1          THE COURT:  Right.  So wait a minute. So my

2     question to you is why would Mr. Kwok not sign over the

3     shares of a company that he owns to this trustee?

4          MR. HENZY:  I didn't know if you were done, Your

5     Honor.

6          THE COURT:  I am, actually.  So go right ahead.

7          MR. HENZY:  Okay.  So the background is that

8     there's this apartment in New York at the Sherry Netherland

9     Hotel.  That's owned by an entity that is in a Chapter 11

10    before Judge Garrity.

11         THE COURT:  I understand.

12         MR. HENZY:  Okay.  And my understanding, okay,

13    because I haven't spent a bunch of time looking at

14    everything that's gone in that case is that the ownership of

15    then the BVI parent is -- has been disputed.

16         And actually, Judge Garrity -- there was a

17    settlement -- an order, a settlement type of order I guess

18    I'll call it, by Judge Garrity where he -- it basically

19    provides for the sale of the apartment and it's to be

20    overseen by Melanie Cyganowski.

21         And as I understand it the debtor in the Chapter

22    11 case really signed away almost most of its -- or maybe

23    all of its ability to control that sale.

24         So everybody agreed the apartment's going to get

25    sold and we're going to put it in Melanie Cyganowski's hands

127

1    to do that.

2          So that -- the apartment's not going anywhere.

3    It's going to get sold.  And I assume the money is going to

4    be in a DIP account in that case and nothing bad is going to

5    happen.

6          But again, the ownership of the parent is in

7    dispute.  The allegation is that a trust owns the parent and

8    Mr. Kwok holds the shares as trustee.

9          Your Honor, I want to be clear, that's the

10   allegation that has been made, again, in the Chapter 11 case

11   in front of Judge Garrity. I haven't spent any time on it.

12         My concern is that Mr. Kwok with -- this is -- I

13   saw these documents for the first time -- actually I think I

14   saw them this morning when I woke up because they were filed

15   at 10:09 last night and, frankly, I turned my phone off

16   probably not long before that.

17         So Mr. Kwok -- Mr. Despins has asked you to enter

18   an order directing Mr. Kwok to sign these documents. I have

19   no idea, Your Honor, whether these documents are the

20   appropriate documents. I have no idea how this impacts

21   what's going on in Judge Garrity's case.  How it impacts

22   anything.  I have no idea.

23         I'm not a BVI lawyer. I don't know if these are

24   the correct documents. I don't know what BVI law says. I've

25   never seen the trust agreement that allegedly exists that

128

1   would control anybody's rights here.

2           So if Mr. Despins wants to get an order from the

3   court directing Mr. Kwok to sign specific documents and here

4   -- these specific documents, my argument is that he should

5   have to file a motion and that -- I should have some time to

6   review the motion and to review these documents and try to

7   get an understanding about whether or not these documents

8   are appropriate documents.

9           Again, these documents were not attached to the

10  motion that was filed with the court, Your Honor.  This is

11  new relief that is being sought.

12          All that was sought -- what was sought with

13  respect to the corporate governance was just this

14  confirmation that the trustee has all of the economic and

15  governance rights of the debtor.  It wasn't -- there was

16  nothing in the motion that said please give me an order that

17  directs the order to sign specific documents.

18          THE COURT:  Okay.  Mr. Despins?

19          MR. DESPINS:  Yes, Your Honor.

20          The history there, as you relate is, is that we've

21  been asking for documents since July 14th.  They have not

22  produced one single document, and the document on corporate

23  governance of this entity.

24          So when we filed this motion they said oh, we're

25  not sure this works under BVI law, I said fine.  We'll make

1    it work.  That's why the order actually provides what it

2    provides.

3            And it's true that it's on short notice, but 1021

4    says that -- I'm sorry.  Which section says after notice and

5    a hearing --

6            THE COURT:  1021

7            MR. DESPINS:  1021.  It is whatever notice is

8    appropriate under the particular circumstances.

9            So if Your Honor wanted to -- and I think you have

10   -- Tuesday are bad days for you, right?  You have a full

11   calendar or -- I don't know -- or Wednesday morning, so he

12   can respond but I want before we close on this to provide an

13   exhibit to, Your Honor, if I may approach.

14           THE COURT:  Is it something in the record already?

15           MR. DESPINS:  No.  It's something in the record of

16   the New York court where Mr. Kwok --

17           THE COURT:  Judge Garrity's case?

18           MR. DESPINS:  No.  It's in the New York *Ostrager*

19   case.  Where Mr. Kwok swore that he's the only owner of the

20   shares.  So may --

21           THE COURT:  Yes, you could approach the courtroom

22   deputy, please.  Thank you.

23           MR. HENZY:  Your Honor, I'm not -- I'm going to

24   object to the admission here.  This is an affidavit by --

25           MR. DESPINS:  It's more than that.  It's a

130

1    compilation of documents, but in the first affidavit you'll

2    see it's highlighted.  And it says Mr. -- this is an

3    affidavit by and entity that is related to Mr. Kwok.  And it

4    says Mr. Kwok is a sole shareholder of BVI.

5         But let's assume that doesn't exist.  Let's

6    continue flipping the pages.  Then we get to Defendant

7    Kwok's responses and objections to plaintiff Pacific

8    Alliance set of interrogatories.

9         Then you go to a page, page 6, responses to

10   interrogatories.  Subject to general, dah, dah, dah, I

11   respond that I am the legal owner of the issued shares of

12   Genever Holdings Corporation.

13        And then if you go to the end of that document

14   it's signed by Kwok Ho Wan, December 4th, 2020.

15        THE COURT:  And actually, he says it again on page

16   9 in response to interrogatory number 5.

17        MR. DESPINS:  So yes, there's this issue of --

18   okay, I'm not trying to be cute here.  There is an issue of

19   a trust agreement that would render the son the beneficial

20   owner of the apartment.

21        But that does not -- that does not affect the fact

22   that Kwok is the sole shareholder of the BVI holding entity.

23   And, in fact, the fact that he has -- him, not his son, has

24   continued to exercise control over the debtor entity.  For

25   example, when the debtor in front of Judge Garrity enters

131

1    into an agreement, it's signed by Mr. Kwok on behalf of the

2    debtor entity.

3         So the only thing we're asking is to have the same

4    rights at BVI and at the debtor entity level so that we can

5    be recognized by Judge Garrity in that case.

6         So -- and I've said this before. We're not trying

7    to stop the sale.  But there are things I will address

8    during the housekeeping issues that are fundamental issues

9    that we need to address in that case that makes this a time

10   sensitive issue.

11        MR. HENZY:  I'm not clear.  Are we having a trial,

12   Your Honor, on the issues -- the ownership issues on this

13   that have been in front of Judge Garrity and that I think

14   the order he entered contemplates that are going to get

15   resolved in litigation someplace else, that's not -- none of

16   this is before the court.  None of this was in the motion

17   that was filed by Mr. Despins.  He asked for a broad

18   confirmation of whatever governance and economic rights he

19   has.  And this is -- none of this is in that motion.

20        MR. FRIEDMAN:  Your Honor?

21        THE COURT:  Yes.

22        MR. FRIEDMAN:  It's Peter Friedman. I just want to

23   be heard for two seconds on this.

24        THE COURT:  Yes.

25        MR. FRIEDMAN: I just think, again, there's a lot

132

1   of etch-a-sketch and just to go back to one of the issues we

2   talked about a moment ago, if you look at -- I think it's

3   docket no. 107, I think it's paragraph 16, just to be clear

4   and I think you should take into this account the etch-a-

5   sketch nature of everything that happens from that side.

6          Mr. Kwok actually says under oath in that

7   declaration that he knew in May, 2021 about Steve Wynn,

8   right?  And now you hear he didn't know until May, 2022.

9          I just think you need to be really careful with

10  everything you hear connected to Mr. Kwok.  And that goes to

11  who owns the Genever shares.

12         The one thing I wanted to add is that one of the

13  thing we won in addition to the contempt order, in addition

14  to the judgment, was a turnover the shares from Justice

15  Ostrager who said that Mr. Kwok was actually required to

16  turn over the shares of Genever BVI to PAX.

17         So this is just another -- as we see it as this is

18  another attempt to frustrate legitimate creditor access to

19  the shares of valuable entities.  And we think it should

20  stop and we think that the shares should be ordered to be

21  turned -- that the shares have already been ordered to be

22  turned over and that should be effectuated by the relief

23  sought today.

24         And it's just -- it's just a continued pattern of

25  really trying to thwart every effort of creditors to recover

133

1    assets.  And that's just so important from PAX's perspective

2    that that not be delayed any further.  Thank you, Your

3    Honor.

4              THE COURT:  Thank you.  Mr. Henzy?

5              MR. HENZY:  I never said that Mr. Kwok didn't know

6    about Mr. Wynn prior to the case being filed.  What I said

7    was that a lot of the facts came out after the case was

8    filed, when the DOJ filed it's complaint.

9              And so I think that to keep going back to that,

10   it's twisting I think what I said.  I said when I stood up,

11   Your Honor, that it may be that signing these documents,

12   that there's no objection.

13             What there's an objection to is that the --

14   there's nothing in the motion that asks for this relief.

15   The first --

16             THE COURT:  Well, it asks for it generally. I

17   understand your point.  There were --

18             MR. HENZY:  The --

19             THE COURT:  I understand your point.  There

20   weren't two letters attached to the motion for Mr. Kwok to

21   sign. I understand that.

22             MR. HENZY:  That would be egregious, Your Honor.

23   To say that the relief sought in that motion translates to -

24   - and you have to sign these specific documents --

25             THE COURT:  Well, I don't know if it's egregious

134

1     though.  I don't know if I agree with you completely, okay,

2     insofar as there's been a trustee in place since July 8th.

3     It's August 1st.  The debtor has obligations.  The debtor

4     stated in prior documents in different cases that he owns

5     certain things.

6            There's a share certificate that has been

7     produced.  There's -- this isn't anything new. It may be new

8     to you, but it's not new.  And looking at what Mr. Friedman

9     just pointed out to me again the declaration of Mr. Kwok

10    that was entered on March 20, 2022, where he references the

11    article -- and article about Steve Wynn facing Justice

12    Department action.

13           You know, there comes a point where the arguments

14    start to not be credible.  And the problem is Mr. Kwok

15    thought his case was going to get dismissed.  I don't know

16    why he thought that, but he thought that.

17           After -- you know, when there was a potential --

18    two other things happening.  Appointment of Chapter 11

19    trustee or conversion to Chapter 7.

20           He has obligations.  He doesn't -- he hasn't met

21    those obligations.  With regard to your argument --

22           MR. HENZY:  In what way?  In what way?

23           THE COURT:  Hold on a second.

24           MR. HENZY:  In what way, Your Honor, has he not

25    met -- since the --

1          THE COURT:  He hasn't turned over to Mr. Despins

2     what Mr. Despins' asked him to turn over.

3          MR. HENZY:  Mr. Despins sent a letter --

4          THE COURT:  Hold on.  Wait a minute.  Wait a

5     minute. Now you're not answering my question.

6          MR. HENZY:  Well, what's your --   I don't --

7          THE COURT:  He hasn't turned over to Mr. Despins

8     what Mr. Despins rightfully under the Bankruptcy Code told

9     him to turn over.

10          MR. HENZY:  Okay. I don't have the letter in front

11     of me and I -- and what I don't want --

12          THE COURT:  Well, your client should have provided

13     it to you.

14          MR. HENZY:  What I don't -- no, I've seen the

15     letter, Your Honor.  And what I don't want is for Mr.

16     Friedman to jump up and say -- and twist my words and say I

17     said something I didn't say, okay?

18          But I don't have the letter in front of me.  I

19     don't --

20          THE COURT:  Well, no, but --

21          MR. HENZY:  I don't have the letter in front of

22     me, Your Honor.

23          THE COURT:  Yeah.

24          MR. HENZY:  I think what Mr. Despins asked for in

25     the letter, and Mr. Despins has the letter out and he's

1   going to tell you if I'm wrong, is it was a very broad -- we

2   want to see a whole bunch of information about specific

3   entities, okay?

4          So I don't remember right now, was there a

5   demanding that letter that these documents, okay, but --

6   which I don't know if these documents even exist.

7          I don't remember there being a demand in that

8   letter that said anything other than we want you to turn

9   over a whole bunch of stuff to us, which I will tell you,

10   Your Honor, the debtor -- we are working on that.  We are

11   trying to collect those documents to send them to Mr.

12   Despins.  We are doing that, okay?

13          I have no doubt that Mr. Despins and maybe Your

14   Honor thinks that that should go faster and fine.  But we

15   are working on that.

16          But I don't remember in that letter a document

17   that said -- okay. Mr. Kindseth is telling me, and I think

18   he has a better knowledge of that letter than I do, that

19   there was no such request, okay?

20          So I'm not --

21          THE COURT:  No specific letter or with regard to

22   Genever? I mean, that's a different -- you're parsing things

23   differently.

24          MR. HENZY:  I'm not parsing things.  There was a

25   letter that Mr. Despins sent that appropriately -- okay,

1    there's no push back -- said you've got to send me this

2    stuff, okay?  That hasn't happened yet. I admit that.

3            The debtor -- we're working on that.

4            THE COURT:  Okay.

5            MR. HENZY:  Should it go more quickly?  Maybe it

6    should.

7            THE COURT:  But let me just say why your argument

8    is failing, okay?

9            Mr. Kwok submitted an affidavit in this court on

10   May -- March 20, ECF 107, paragraph -- I'll tell you what

11   page.  Page 16 or 108.  Cooperative shares in the Sherry

12   Netherland apartment are held by Genever Holdings, LLC. The

13   membership interests in Genever U.S. are in turn held by

14   Genever Holdings Corporation, Genever BVI. I hold all of the

15   equity of Genever BVI.  That's Mr. Kwok.

16           MR. HENZY:  But you have to keep going. I think --

17   I would suggest --

18           THE COURT:  No, I don't.

19           MR. HENZY:  However --

20           THE COURT:  No, I really don't.  Not when it

21   matters with regard to Genever BVI and that's what the

22   trustee's asking about.

23           MR. HENZY:  However, pursuant to a declaration of

24   trustee agreement dated February 17, 2015 I hold such equity

25   in trust for Bravo Luck Limited.  My son owns the equity of

138

1    the apartment owner.

2            THE COURT:  Well, guess what?  You don't get to

3    Bravo Luck, Limited till you get to Genever BVI.  You can't

4    -- all you have to do is look at the chain.  You don't get

5    to Bravo Luck Limited until you get to Genever BVI because

6    he holds all the equity but then he holds it in a trust.  I

7    mean, it's going to be very difficult.

8            We can do a chart.  We can make a nice little

9    chart.  We can draw the lines from entity to entity.  But

10   this --

11           MR. HENZY:  What this -- I apologize, Your Honor.

12           THE COURT:  This is what he said.  And he said it

13   also bears noting that any interest I have in Genever BVI

14   has been ordered by Justice Ostrager to be turned over to

15   PAX, provided that such a turnover does not interfere with

16   pending litigation in the British Virgin Islands or Genever

17   U.S. bankruptcy.  Okay?

18           So Mr. Kwok said this on March 20.  It's August

19   1st.  For him to be -- I'm not saying I'm not going to give

20   you an opportunity to respond, because I am going to give

21   you one, okay?  It's not going to be long.

22           And the point is this -- to make an argument that

23   you don't -- not that you, not about you.  That counsel for

24   Mr. Kwok doesn't know whether this will have an impact and

25   other parties, worried about other third parties, that's all

1   irrelevant because Mr. Kwok already swore to this court that

2   he holds all the equity of Genever BVI.

3           MR. HENZY:  I think that you and I are reading

4   this differently, Your Honor.  I'm sorry.

5           THE COURT:  Okay.  Then we're reading it

6   differently.  But then guess what?  Then you'll have -- I'm

7   going to rule that he has to do this ultimately.  This is

8   what he said.  This is what he said.  My son owns -- the

9   apartment owner.

10          However, pursuant to a declaration of trust, I

11   hold such equity in trust for Bravo Limited.

12          MR. DESPINS:  He still holds it.

13          MR. HENZY:  He holds it in --

14          THE COURT:  He's still --

15          MR. HENZY:  He holds it in trust for Bravo

16   Limited.

17          THE COURT:  Okay.

18          MR. HENZY:  Look, I --

19          THE COURT:  And how did Bravo Limited pay for that

20   apartment?  Are we just going to go through all the -- this

21   is what -- we're going to follow the money, right?  Is that

22   what we're going to do?  Isn't that what we're doing?

23          MR. HENZY:  I have no idea.

24          THE COURT:  That's what we're doing.  That's why

25   there was a Chapter 11 trustee appointed.  That's what we're

140

1    doing.

2              What's happened here is --

3              MR. HENZY:  There's a bunch of things here that

4    seem to me like they're not connected, Your Honor.

5              THE COURT:  Well, how can they not be connected?

6    He said they're connected.  He wrote it in his own

7    declaration.  This is what he -- he is saying.  So --

8              MR. HENZY:  He says he holds it in trust for

9    someone else.  And look, again, I haven't had -- I have not

10   had time to analyze this because this was --

11             THE COURT:  Okay.  Let's look at the certificate.

12   Let's look at the certificate that was in the New York State

13   action, which is dated some time in -- February 13, 2015.

14   He holds the -- it says "I certify that I am the registered

15   holder of 1,000 share of U.S. dollar, one penny par value,

16   each being fully paid in the above company subject to the

17   memorandum and article association of the company."

18             So that's February 13, 2015.  This trust was dated

19   four days later.  So then he took his equity.  So then maybe

20   it's a fraudulent transfer.

21             MR. HENZY:  It might be. It might, Judge.

22             THE COURT:  It might be.

23             MR. HENZY:  Okay.  But we're not -- I don't think

24   we can resolve that on essentially 14 hours notice.

25             THE COURT:  I just told you I'm going to give you

1    time to respond.

2                MR. HENZY:  Okay.

3                THE COURT:  I'm going to give you time to respond.

4                MR. HENZY:  To circle all the way back here, I

5    said, Your Honor, it may be completely appropriate, the

6    debtor may have no objection to signing these documents, but

7    I don't know because this was filed at 10:09 last night.

8    And it wasn't in the motion that had previously been filed.

9                THE COURT:  Okay.  Well, I'm going to give you an

10   opportunity to ask your client if he's going to sign the

11   documents, okay?

12               MR. HENZY:  Thank you, Your Honor.

13               THE COURT:  Okay.

14               MR. HENZY:  Can I have enough time to do the

15   diligence?  Because I have -- I would like to find out --

16   for me to advise my client I think I need to do some

17   diligence and understand this, okay?  So I'm hoping I'm

18   going to get more than 24 or 36 hours. I heard Mr. Despins

19   say Wednesday morning.  Nothing is happening here, Your

20   Honor.  The apartment --

21               THE COURT:  That's the point. Nothing is happening

22   here.

23               MR. HENZY:  No, no, no, no.  On the apartment --

24   and everybody --

25               THE COURT:  And we've got to get some stuff to

1   move forward.

2           MR. HENZY:  I don't know what I said that was

3   funny. I'm generally not viewed as being a funny guy, but

4   the apartment is going to get sold under a process that's

5   being supervised by Melanie Cyganowski.  The apartment, the

6   money, it's all going to be property of that bankruptcy

7   estate in the Southern District under Judge Garrity's

8   supervision.  It's not going anywhere.

9           I don't know -- is the idea that Mr. Kwok is going

10  to somehow abscond with the apartment, he's going to take

11  the Sherry Netherland apartment and go away with it or he's

12  going to take the money from the apartment and go away with

13  it.  That's not going to happen.

14          So I think it's fair given the complexity here.

15  And you and I do read this paragraph differently. I think

16  that -- I don't know, Your Honor, what the structure is

17  here. I do know that property that's held in trust for

18  another is not property of a bankruptcy estate, depending on

19  --

20          THE COURT:  I'm not so sure about that.

21          MR. HENZY:  Depending on facts and circumstances.

22          THE COURT:  I'm not so sure about that.

23          MR. HENZY:  So maybe sometimes it is.  I think

24  often times it is not.  So I don't know what all of the

25  facts are here because as I said, this was not part of a

143

1    motion that had been filed.  This was in an order that was

2    filed at 10:09 last night.

3              THE COURT:  I understand.

4              MR. DESPINS:  And, Your Honor, I'll provide Mr.

5    Henzy more documents.  Actually, there's one which is --

6              MR. HENZY:  Don't hand -- I don't want you to hand

7    me documents. We're in court.

8              MR. DESPINS:  Okay.

9              MR. HENZY:  You can get me documents.

10             MR. DESPINS:  Okay.  But the point, Your Honor, is

11   that Mr. Kwok is exercising control over that entity.  So

12   ti's not his son.

13             So, for example, when the Genever U.S. wanted to

14   file for bankruptcy the authorization is signed by Mr. Kwok.

15   It's not signed by the son or Bravo Luck. It's signed by Mr.

16   Kwok.

17             So I guess, Your Honor, we're talking about

18   scheduling since --

19             THE COURT:  Yes, we are.  We're talking about

20   scheduling. I'm going to give Mr. Henzy some time to look at

21   this and file a response.

22             I'm looking at -- hold on one second, okay?  I

23   just need to look at the calendar.

24        (Pause.)

25             All right.  With regard to the motion filed by the

144

1    trustee, the motion for order confirming that the Chapter 11

2    trustee holds all the debtor's economic and corporate

3    governance rights, ECF 598, and the order -- revised

4    proposed order with regard to that motion that appears at

5    ECF 645, for the reasons stated on the record that matter

6    will -- this matter will be continued to Thursday, August

7    4th at 1:00 p.m.

8         Now with regard to the -- so that I think takes

9    care of all of our matters, other than the housekeeping

10   matters, Trustee Despins, which includes the proof of claim

11   bar date order.

12        MR. HENZY:  Can I have one point or question, Your

13   Honor?

14        THE COURT:  Yes.

15        MR. HENZY:  Okay.  On the letter to the Harcus

16   Parker firm, I'm not talking to Harcus Parker without Mr.

17   Despins being on the phone because I think I'm going to get

18   -- probably I'm going to get accused of saying something I

19   shouldn't have said or my words are going to get twisted.

20        THE COURT:  Well, you and Mr. Despins work that

21   out. I'm not ordering that you be on the phone.

22        MR. HENZY:  I don't know what their availability

23   is. I don't know -- you know, so I don't know if that can

24   happen by August 4 at 1 o'clock.  That's all.

25        I certainly will make myself available and use

1    best efforts, but we're talking about talking to lawyers in

2    London and I don't know what -- how much time that's going

3    to take.

4            THE COURT:  I don't think anybody's talking about

5    talking to lawyers in London other than you.

6            MR. HENZY:  We have to.

7            THE COURT:  Then that's your issue. You can figure

8    it out. We're having a hearing on Thursday at 1:00 p.m.

9            MR. HENZY:  Okay.  So I don't know how I figure it

10   out if I --

11           THE COURT:  Well, you'll try.  You can figure it

12   out.  You'll try to.

13           MR. DESPINS:  Your Honor, Thursday at 1:00 is that

14   in person or a Zoom?

15           THE COURT:  Well, what do you -- do you have a

16   conflict with Thursday?  Is that what you're telling me?

17           MR. DESPINS:  Yes, I'm out of the country.

18           THE COURT:  Oh, you're out of the country.  Well,

19   that's --

20           MR. DESPINS:  But I can do Zoom.

21           THE COURT:  Okay.  Well, then we can -- I guess --

22   when are you going to be back?  Are you out for a long time?

23           MR. DESPINS:  Yes.

24           THE COURT:  Okay.  All right.  So then we'll do it

25   by Zoom then.

146

```
 1                 MR. DESPINS:  Thank you, Your Honor.

 2                 THE COURT:  We'll do it by Zoom.

 3                 MR. DESPINS:  So now I would go into the

 4      housekeeping matters, but --

 5                 THE COURT:  Last point and I'll be quiet, Your

 6      Honor.  I promise. I just want to be clear.

 7                 There's other relief sought in that motion that

 8      the debtor objected to.  So I don't want the court to think

 9      that -- and I'm fine if that goes to --

10                 THE COURT:  I don't know -- we're going to talk

11      all about that on Thursday.

12                 MR. HENZY:  So everything is getting carried to --

13                 THE COURT:  I will tell you, I -- my initial

14      review, subject to further argument on Thursday, is I don't

15      know what the basis for the objection of the debtor would be

16      to any other relief set forth in that motion.

17                 MR. HENZY:  Okay.  Understood, Your Honor.

18                 THE COURT:  Okay.

19                 MR. DESPINS:  So, Your Honor, we've been at it for

20      three hours and 45 minutes.  I don't know if you want to

21      take a break before we go into the -- because there's a good

22      20 --

23                 THE COURT:  Well, I'll ask the courtroom staff.

24      Would you like to take a break?  I'm sure they would,

25      actually.  Would you like to take a few minute break?  Okay.
```

147

1     Thank you.

2           So it's 3:40.  What, do you want to come back at

3     3:50 or you want longer than that?

4           MR. DESPINS:  No, that's fine, Your Honor.

5           THE COURT:  Does that work for you -- all of us?

6     I mean, it works for me.

7           So court will be in recess until 3:50.

8        (Recess from 3:37 p.m. until 3:50 p.m.)

9           THE COURTROOM DEPUTY:  We're still on case no. 22-

10    50073, Ho Wan Kwok.

11          THE COURT:  Okay.  Mr. Despins.  Before the recess

12    we were going to talk about a few --

13          MR. DESPINS:  Housekeeping.

14          THE COURT:  -- housekeeping matters, so go right

15    ahead.

16          MR. DESPINS:  The first one, Your Honor, was the

17    request to have the status conference every ten days or so.

18    And the trustee would have an obligation to file an agenda

19    24 hours before.

20          I may be that sometimes we'll say no need for the

21    status conference, but I think it's really important,

22    especially in the first few months of the case, to stay in

23    touch with the court and so, therefore, we would ask that we

24    could just --

25          THE COURT:  That's fine.  That's absolutely fine.

148

1    Do you have proposed dates in mind or --

2              MR. DESPINS:  Not yet.  I'll discuss this with Mr.

3    Skalka and we'll come back to Your Honor but I just want to

4    --

5              THE COURT:  Certainly.

6              MR. DESPINS:  Okay.

7              The next item -- this is more complicated.  And I

8    know last time we talked about the bar date and I said we

9    would mark it up and we did.

10             But I started looking deeper into this and

11   realized that there's a fundamental problem here and it is

12   as follows.

13             You've go the Genever U.S. case that was filed

14   before this case --

15             THE COURT:  Yes.

16             MR. DESPINS:  -- and what's at state there is who

17   owns the Sherry Netherland.  And there was a bar date set in

18   that case, but notice was not given -- first of all, there

19   was no publication notice and there was no notice given to

20   potential creditors of Mr. Kwok.  It was given to a few

21   people and Mr. Friedman and his colleagues, of course, were

22   around the hoop because they were already involved.

23             And God bless them from their point of view.  They

24   did file a claim of PAX against Genever there but my

25   position vis-a-vis that entity is I'm an equity holder

149

1    because I'm -- I own the shares.

2          Well, I own the shares not personally, but this

3    estate owns the share.  And that doesn't work because the

4    bar date has passed in that case.  My Goldman's clients were

5    never on notice of this because he didn't exist then because

6    there was no case here.

7          So there is a need -- a pretty important need to

8    coordinate these two cases, not only because of that issue,

9    because there are many ways of fixing that issue. One would

10   be expand the bar date in that case, reopen it to allow Mr.

11   Goldman's clients to file claims. I'm not saying that's a

12   preferred course, but that's one.

13         Another one would be for us to file a piercing the

14   veil or alter ego claim in that case, et cetera, et cetera.

15         But the point is there's a need for coordination

16   because right now that case is going on its merry way.  The

17   sale is not an issue.  That's not a problem.

18         It's going on its merry way where at the end of

19   the day assuming the best thing, which is the Sherry

20   Netherland is owned by Mr. Kwok, that money would be shared

21   with those creditors around the hoop there only and that's

22   PAX and the Sherry Netherland, the hotel itself and very few

23   other people.  Well, that's -- a fiduciary to the creditors

24   in this case to me that can't work.

25         So -- and there's a second thing that's

150

1    fundamental.  We should not have two courts, two separate

2    courts, deciding the issue of the Sherry Netherland -- the

3    ownership of the Sherry Netherland and the issue of who owns

4    the yacht.  And you might say well, the yacht is different

5    than the hotel, yes.

6           But at the end of the day, one is the daughter,

7    one is the son. It's all the same issues.  Yes, there'll be

8    different timing issues, but at the end of the day the

9    arguments will all be the same.

10          To have two separate courts decide that issue

11   would be a huge waste of judicial resources and professional

12   fees.  So you might say well, that's a lot to process and to

13   digest and I've been struggling with this.  And I've talked

14   to the committee and to PAX about this and they're

15   proceeding it too.

16          But I think what needs to happen is there should be -

17   - because I would appear in front of Judge Garrity and tell him

18   the same things.  But I think you and him need to either -- I

19   don't know how you feel about that, have a conversation about

20   this or have a joint status conference, which is very unusual,

21   but it's been done.

22          But that issue needs to be tackled in one way or

23   another in the next month or so because it is unfair to the

24   people who have claims against Mr. Kwok to have missed out on

25   the bar date in that case because they have no greater or worse

151

1    right than PAX had.  PAX claim against Genever is a piercing

2    the veil, an alter ego claim.

3         And, again, I'm not criticizing them.  They're doing

4    their job.  They're not a fiduciary for anyone and for some

5    reason the debtor -- well, the debtor was controlled by Mr.

6    Kwok so obviously not interested in publicizing -- having

7    publication notice et cetera, et cetera, and that's why I told

8    you the bar date, even though we marked it up an all that.

9         I think until that issue is resolved we should park

10   it because what I don't want to do is do two publication notice

11   and we need to resolve this issue one way or another and my job

12   is to propose a path forward which I'm not ready to do without

13   talking again to the committee and to PAX and to debtor's

14   counsel in the Genever case.

15        And I want to be clear, this does not affect the

16   sale. I'm not trying to say oh, we're not going to sell the --

17   that's not the case.

18        But there's a nee for coordination and I wanted to

19   put that in front of Your Honor. I don't expect you to have a

20   response on the spot because there's a lot of moving pieces to

21   this but I think that -- and I know you have a full docket, so

22   I'm not trying to put another case on your plate.  I understand

23   that.

24        Judge Garrity is also very busy so that's why I think

25   there needs to be either a call between the two of you or a

152

1    joint status conference but I think that makes sense to happen

2    once we have a path forward to recommend.

3            THE COURT:  Well, so what I think you're saying is

4    you think that both of the cases should be in front of the same

5    judge.  So isn't there a way to do that by filing a motion?

6            MR. DESPINS:  Yeah, there is.  But I --

7            THE COURT:  Because I don't know that a judge should

8    have a conversation with another judge about -- I mean, I --

9            THE COURT:  Well, especially do you want to -- one of

10   the reasons I would be not inclined to do that is I don't want

11   to open up any allegations that there was something improper or

12   --

13           MR. DESPINS:  Yeah.

14           THE COURT:  I mean, what -- you know, but if you

15   think that's appropriate, then you can file -- anyone can file

16   a motion.

17           MR. DESPINS:  Well, but to be clear, that motion

18   would have to be filed in front of Judge Garrity, because he's

19   the first to file.

20           THE COURT:  I understand.  And so this case may go

21   there is what you're saying.

22           MR. DESPINS:  What I'm saying is that, first of all,

23   I would never file that motion without talking to you first

24   because you might say what did you just do?  And so I'm

25   socializing the issue with you.  You should think about it and

153

1    we will come back to the court probably at our next status

2    conference on this.

3         But I want to make sure that is something that you're

4    thinking about because it needs to be resolved in one way or

5    another.  So that's really the issue regarding the bar date in

6    Genever.

7         The next thing I wanted to mention very briefly the

8    Lady May inspection.  Mr. Kindseth last time described the fact

9    that they were very -- well, I won't say very minor, but fairly

10   discreet issues that need to be resolved.

11        It turns out that that's not the case.  As Your Honor

12   will remember even though I'm not a party to the stipulation,

13   they allowed me visiting rights or inspection right and it

14   turns out that there are more issues.

15        But the parties are talking and we're hopeful that

16   that will be resolved.  But I wanted to make sure that you knew

17   that that dialogue was ongoing.  We had a call I think last

18   week about this with the Zeisler firm and with PAX's counsel.

19        Your Honor, you will recall that we hired Paul

20   Derektor as an expert to assist us with that, $2,500.  And it's

21   a request for Your Honor, and I know the rules and the U.S.

22   Trustee will probably scream about this, but would it be okay

23   if we just expensed it.

24        What I mean by that is not file a motion to retain

25   him as an expert?  We can do that but it's going to cost more

154

1    than the $2,500 and my point is -- expensive meaning right now

2    there are no assets.  So I mean we're paying for it.

3    Eventually we hope that there'll be money to be paid but we

4    would put that as a line item expense rather than filing a

5    motion to retain Mr. Derektor in the case as an expert.  But I

6    don't feel strongly. It's just from a cost savings point of

7    view I think it would make sense.

8              THE COURT:  Well, I think you should talk to the

9    parties about that too.  I mean, if people don't have an

10   objection, then it's likely to be fine.

11             MR. DESPINS:  Okay.  We'll table that. You're

12   absolutely right, Your Honor.

13             Lady May we talked about.  Just housekeeping, the

14   debtors are still -- their monthly operating reports from May

15   and June still haven't been filed.  The debtor still is under

16   obligation to file that so I want to remind everyone of that

17   and that's all I have from a housekeeping point of view, Your

18   Honor.

19             THE COURT:  Okay.

20             MR. DESPINS:  Thank you.

21             THE COURT:  Let me just take one look for a second

22   and see if there's anything else that I think I had any

23   questions about.

24        (Pause.)

25             So with regard to the bar date motion and the

155

1    proposed order then, we're just going to continue those to a

2    future status conference?  Is that what you're thinking?

3             MR. DESPINS:  That's correct, Your Honor.

4             THE COURT:  Okay.  So to a date to be determined

5    essentially.

6             MR. DESPINS:  Yes, Your Honor.

7         (Pause.)

8             THE COURT:  Mr. Kindseth?

9             MR. KINDSETH:  Yes, Your Honor.  In the interest of

10   just basically updating Your Honor and the other parties with

11   respect to the Lady May, Your Honor, for HK International, no

12   one is more interested in expediting the satisfaction of the

13   requirements set forth in the stipulation with respect to the

14   Lady May more than my client.  We've been working very

15   diligently to satisfy those obligations.

16            Your Honor made reference to the certification.  My

17   client is unable to file the certification until the other

18   elements are satisfied, one of which is this court's

19   establishment of the repair reserve. The repair reserve

20   requires my client to provide proposals with respect to the

21   repairs that need to be done for the Lady May to be returned in

22   good working order.

23            There's been some delay with respect to finding and

24   getting proposals from entities just because they're very busy

25   right now.

156

1      As we've received proposals we've circulated them

2  with the trustee, creditors committee counsel and PAX counsel.

3      With respect to the actual repairs that need to be

4  performed, unbeknownst to me at the time before Your Honor last

5  there was an additional repair that needs to be performed.

6      Apparently when the fuel pump failed, which I did

7  disclose to the court, it caused the gears, some gears to

8  basically get stripped.  And so there are tiny shards of metal

9  that you can see from the gears -- and, again, this was

10  produced to everybody -- that were circulated in the oil system

11  within the engine.

12      So the oil needs to be cleaned out.  The shards need

13  to be reduced.  We's just talking about little pieces but

14  obviously it needs to be repaired and we received a quote for

15  that.

16      And so we're in communications with the trustee and

17  counsel for the creditors committee and counsel for PAX to try

18  to come up with an agreed up number for the repair reserve

19  which would then enable us, once this court orders the repair

20  reserve, to file the certification.  Thank you, Your Honor.

21      THE COURT:  Thank you.

22      Does anyone else wish to be heard?

23      MR. HENZY:  Not on the Lady Mae, Your Honor, but am I

24  to file a replay before Thursday at 1 o'clock on the --

25      THE COURT:  Yes. Yes.

1          MR. HENZY:  And I didn't write it down --

2          THE COURT:  I didn't give you a time frame, but I can

3    give you till Thursday morning at 9 o'clock, if you'd like.

4    But I can't give you any longer than that. I've got to be able

5    to read it before the hearing or there's no point in the

6    hearing.

7          MR. HENZY:  I'll get it -- thank you, Your Honor.  I

8    expect I'll get it filed before then but thank you.

9          THE COURT:  Okay.  Anyone else wish to be heard?

10         (No audible response.)

11         THE COURT:  Okay. I think that takes care of all the

12   matters today then in this case and we will reconvene on

13   Thursday, via Zoom at 1:00 p.m.  And the debtor has until 9:00

14   a.m. on Thursday morning to file the response to the corporate

15   governance motion, okay?

16         That takes care of all the matters on the calendar so

17   court is adjourned.

18         (Proceedings adjourned at 4:05 p.m.)

19

20

21

22

23

24

158

1

2          I, CHRISTINE FIORE, court-approved transcriber and

3     certified electronic reporter and transcriber, certify that the

4     foregoing is a correct transcript from the official electronic

5     sound recording of the proceedings in the above-entitled

6     matter.

7

8          *Christine Fiore*

9     _____          August 9, 2022

10       Christine Fiore, CERT

11          Transcriber

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES BANKRUPTCY COURT   **UPDATED**
DISTRICT OF CONNECTICUT   **10/17/22**
BRIDGEPORT DIVISION

```
In Re                        *   Case No. 22-50073 (JAM)
                             *
     HO WAN KWOK,            *   Bridgeport, Connecticut
                             *   August 4, 2022
              Debtor.        *
                             *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

```
For the Debtor:                 ERIC A. HENZY, ESQ.
                                Zeisler & Zeisler, P.C.
                                10 Middle Street, 15th Floor
                                Bridgeport, CT  06604


For the Creditor, Pacific       PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity      STUART M. SARNOFF, ESQ.
 Fund L.P.:                     O'Melveny & Myers LLP
                                Times Square Tower
                                7 Times Square
                                New York, NY  10036

                                PATRICK BIRNEY, ESQ.
                                Robinson & Cole
                                28 Trumbull Street
                                Hartford, CT  06103

For the Creditors Committee:    IRVE GOLDMAN, ESQ.
                                Pullman & Comley
                                850 Main Street
                                Bridgeport, CT  06601
```

Proceedings recorded by electronic sou[nd]
transcript produced by transcription s[ervice]

**Fiore Reporting and Transcription Service[...]**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-999[...]**

CASE NO. _____2022-50073_____

IN RE: Ho Wan Kwok

VS. _____

Debtor  **EXHIBIT** _____I_____

**DATE** _____ IDEN.

**DATE** __11/18/2022_____ EVID.

**BY** __P.E.__

**Deputy Clerk**

AO 386-A

2

```
APPEARANCES:  (Cont'd)

For the Creditors, Rui Ma,      KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:      McElroy Deutsch
                                225 Liberty Street
                                36th Floor
                                New York, NY  10281


For the U.S. Trustee:           HOLLEY L. CLAIBORN, ESQ.
                                Office of the United States
                                   Trustee
                                The Giaimo Federal Building
                                150 Court Street, Room 302
                                New Haven, CT  06510


Chapter 11 Trustee:             LUC A. DESPINS, ESQ.
                                Paul Hastings LLP
                                200 Park Avenue
                                New York, NY  10166


Counsel for the                 G. ALEXANDER BONGARTZ, ESQ.
 Chapter 11 Trustee:            Paul Hastings LLP
                                200 Park Avenue
                                New York, NY  10166

                                PATRICK R. LINSEY, ESQ.
                                Neubert, Pepe & Monteith, P.C.
                                195 Church Street, 13th Floor
                                New Haven, CT  06510


For Creditor Logan Cheng:       JAY M. WOLMAN, ESQ.
                                Randazza Legal Group, PLLC
                                100 Pearl Street, 14th Floor
                                Hartford, CT  06103
```

3

1          (Proceedings commenced at 1:05 p.m.)

2          THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok.

4          THE COURT:  Thank you.

5          If we could have appearances for the record,

6    starting with the Chapter 11 trustee, please.

7          MR. DESPINS:  Good afternoon, Your Honor.  Luc

8    Despins, Chapter 11 Trustee.  And I'm here with my counsel

9    from Paul Hastings, Alex Bongartz, and Mr. Linsey, local

10   counsel to the trustee.

11         THE COURT:  Good afternoon.

12         And then if we could have counsel for the

13   committee, please.

14         MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

15   Goldman, Pullman & Comley, representing the creditors

16   committee.

17         THE COURT:  Good afternoon.

18         And counsel for the creditor PAX.

19         MR. BIRNEY:  Good afternoon, Your Honor.  Patrick

20   Birney, Robinson & Cole, on behalf of PAX.  With me this

21   afternoon is Stuart Sarnoff from O'Melveny & Myers.

22         THE COURT:  Good afternoon.

23         Who am I missing?

24         Counsel --

25         MR. BIRNEY:  Your Honor, Mr. Friedman has just

1   joined as well.

2             THE COURT:  Okay.  Thank you.

3             Counsel for the creditors Rui Ma and related

4   creditors.

5             MS. MAYHEW:  Yes.  Good afternoon, Your Honor.

6   Kristen Mayhew, McElroy Deutsch Mulvaney & Carpenter, on

7   behalf of Rui Ma, Zheng Wu and Weican Meng.

8             THE COURT:  Good afternoon.

9             Counsel for the debtor.

10            MR. HENZY:  Good afternoon, Your Honor.  Eric

11   Henzy, of Zeisler & Zeisler, for the debtor.

12            THE COURT:  Good afternoon.

13            Counsel for the U.S. Trustee, please.

14            MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

15   Claiborn for the U.S. Trustee.

16            THE COURT:  And I think Mr. Wolman.  And that's

17   the only person I'm missing at this point, is that right?

18            THE COURTROOM DEPUTY:  I believe so, Your Honor.

19            MR. WOLMAN:  Good afternoon, Your Honor.  Jay

20   Wolman, of Randazza Legal Group, for creditor Logan Chang.

21            THE COURT:  Good afternoon.

22            Okay.  I think everyone's appearances have been

23   noted for the record.

24            As I stated before, that there are two matters on

25   the calendar.

1          I did not see any objection or response to the

2   Chapter 11 trustee's motion for extension of time with

3   regard to the removal of civil actions.  The motion looks

4   fine to me, as does the proposed order.

5          Does anyone wish to be heard on the trustee's

6   motion to extend the deadline for removal of civil actions?

7      (No audible response)

8          THE COURT:  Okay.  Hearing no response --

9          MR. LINSEY:  Your Honor.

10          THE COURT:  Yes.

11          MR. LINSEY:  Yeah.  I won't say much if the motion

12   looks fine to you.

13          THE COURTROOM DEPUTY:  Attorney Linsey --

14          MR. LINSEY:  This is Patrick Linsey for the

15   trustee.  Just note --

16          THE COURTROOM DEPUTY:  Excuse me.  Attorney

17   Linsey, if you could just state your name.

18          MR. LINSEY:  This is Patrick Linsey for the

19   trustee.

20          THE COURTROOM DEPUTY:  Thank you.

21          THE COURT:  Go right ahead.

22          MR. LINSEY:  I won't -- I won't say much

23   considering Your Honor said the motion looks acceptable.

24          I will just note there was a prior motion that had

25   been filed by the debtor that I do not believe there were

1    any objections to that's not been acted upon.  And presuming

2    the Court enters the order that we filed with our motion

3    will then be causing the debtor's motion to be withdrawn.

4                THE COURT:  Yes.  That was noted in your motion.

5    So thank you.

6                And when this order enters, that -- the proposed

7    order that was submitted with the motion, as appears at

8    pages 10 and 11 of ECF 672,and when that order enters, then

9    the prior motion of the debtor will be withdrawn is on the

10   record now withdrawn by the trustee.

11               MR. LINSEY:  Thank you, Your Honor.

12               THE COURT:  Okay.  Thank you.

13               So that motion is granted and the proposed order

14   can enter.  So that takes care of the first matter on

15   today's calendar.

16               The second matter obviously is the -- was

17   continued from Monday, the 1st, to today, and it is the

18   trustee's motion for an order confirming that the trustee

19   holds all the debtor's economic and corporate governance

20   rights.

21               And this was continued to today to give the debtor

22   an opportunity to file a response, which the debtor did this

23   morning.  And I also -- the debtor objected and then the

24   Chapter 11 Trustee filed a reply to the objection.

25               So I understand in the papers, or at least I've

1   seen some mention in the papers, and I'll turn to you, Mr.

2   Despins, first, that there's been some discussions.

3             And I see that there's been a redline version of

4   an order that appears to show there's been some I guess I

5   would call progress with counsel in London about the issues

6   that we discussed on Monday, but I'd like to hear from you

7   on where things stand, please.

8             MR. DESPINS:  Yes, Your Honor.

9             So there are two aspects to the motions.  Well,

10  there are many aspects, but there are two that are contested

11  I think.  The focus is on UBS, which is you just raised.

12  And then the other one is what's happening with the BVI

13  shares, et cetera.

14            So since you started with UBS, let me launch into

15  that.

16            There were a lot of back and forth between me and

17  counsel for -- or counsel for the debtor in that UBS action.

18  And basically, you know, they raised several issues.

19            And at the end of the day, I said, look, why don't

20  you just draft a letter that you would be comfortable

21  receiving from Mr. Kwok that would allow you to, you know,

22  give me an update on the merits of the claims, any

23  settlement proposals, basically what a client would receive.

24  And eventually she did that.  And the -- and we said that in

25  the reply.  There are parts of this that I have swallow hard

1    to accept in the sense that, you know, you know, to say

2    that, you know, that the Court's jurisdiction is a U.S.

3    issue only.  I mean, as you know in the U.S. we view you,

4    Your Honor, as having worldwide jurisdiction over all assets

5    of the debtor.

6          But putting that aside I figure let's not have a,

7    you know, US/UK debate over jurisdiction.

8          And so we took her letter with some minor changes

9    and basically that's the letter that we're now asking the

10   Court to direct the debtor to send to her that basically

11   says give him full access.

12         But the debtor, per her -- U.K. counsel's request

13   is saying that his consent, and this is in the letter, does

14   not extend to me waiving a privilege.

15         And that's not an issue meaning, I didn't intend

16   to do that anyways.  But I thought it's always my privilege

17   to waive.  But my point is let's not get into those issues.

18         The important thing is to get access to the files

19   and understand the case, to get a full briefing.  And based

20   on the letter I think, although they were very careful about

21   saying we cannot guarantee that this letter will bind us,

22   and we said fine, but I think that based on that letter we

23   should have full access to the files.  And that's the goal.

24         And, therefore, you know, we're going to look the

25   other way on the issues of limiting the Court's jurisdiction

1    and all that.  So that's where we are on that.

2            So from my point of view, vis-a-vis U.K. counsel,

3    I think we're done.  But I don't know where the debtor is at

4    on that issue.

5            THE COURT:  Attorney Henzy?

6            MR. HENZY:  We're not done on that issue.  A

7    couple of points, Your Honor.

8            First, Mr. Despins referred to U.K. counsel, which

9    the person that he and I both have been communicating with

10   is Jenny Morrissey of the Harcus Parker firm.

11           As debtor's counsel, I just want to be clear.  I'm

12   not sure that that is correct.  I'll be honest with you,

13   Your Honor.  The convergence of U.S. and U.K. law is a

14   little bit unclear to me.

15           I know that under the bankruptcy code that upon

16   his appointment Mr. Despins was automatically substituted as

17   the plaintiff in that U.K. action.

18           What I've heard from Attorney Morrissey is that

19   what the bankruptcy code says, that's not her view anyway.

20   And I'm not -- I don't -- I know zero about U.K. law, so

21   she's right, she's wrong, but that -- that is her view.

22           I believe it's also her view that Mr. Despins is

23   not yet a party in that action.  There are some steps that

24   have to be taken under U.K. law.  Again, I don't opine as to

25   that.  I'm reporting to you what Attorney Morrissey

1    indicated to me.

2            So I don't think she's the debtor's lawyer.  I

3    don't think she's Mr. Despins' lawyer.  I frankly am not

4    sure where that leaves the status of whoever is the

5    plaintiff in that action in the U.K.

6            I'm not sure where the letter stands.  The last

7    iteration of the letter that I saw was from Paul Hastings to

8    Harcus Parker.  I think Mr. Despins said this on the last

9    day Harcus Parker is being very, very careful here, so I

10   don't know if the last iteration that Paul Hastings sent to

11   Harcus Parker would be acceptable to Harcus Parker or not.

12           Even assuming that it is, I believe that it is

13   simply beyond question that the Court, with all due respect

14   to the Court, may not compel Mr. Kwok to waive his attorney-

15   client privilege.

16           Now, I --

17           THE COURT:  The letter doesn't say that he is

18   waiving his privilege.  In fact, it says that any waiver of

19   the privilege is limited to the provision of this

20   information to the trustee.  That's what it says.

21           MR. HENZY:  That the waiver is -- that the waiver

22   is privileged, Your Honor.

23           So there's -- I want to make a distinction here.

24   There are two -- and, Your Honor, we're dealing with cross-

25   border issues here.  So the privilege here I think anyway is

1    not under U.S. law.  It's under U.K. law.

2            And as I understand my communications from

3    Attorney Morrissey, there may be items that -- I think this

4    is true under U.S. law too, a trustee is appointed and

5    there's different standards between a corporate debtor and

6    an actual person.  An actual person may maintain certain

7    privilege even after the appointment of a trustee.  And as I

8    understand it, it is similar in the U.K.

9            So there may be items that are in the possession

10   of Harcus Parker that Mr. Kwok personally still has a

11   privilege with respect to, as opposed to items that under

12   U.K. law he doesn't.

13           And I -- again, I don't know U.K. law.  I don't

14   think Mr. Despins knows U.K. law.  What's what I do not

15   know.

16           There's a right way to do this, Your Honor, I

17   think.  Mr. Despins needs to take steps to have himself

18   recognized as a party in the U.K. action and that privilege

19   issue then I think needs to be worked through.

20           I don't know how the debtor -- I don't know how

21   Mr. Kwok can say I'm going to grant a waiver of any

22   privilege rights I have.  Again, it's any privilege rights

23   that he has.

24           Your Honor, I don't know.  Attorney Morrissey may

25   make a judgment that he doesn't have any privilege rights.

1    She may make a judgment that he has a lot of privilege

2    rights with respect to what's in her possession.

3           I don't know how he can fairly be asked to waive

4    any privilege that he still has when he doesn't know what

5    he's waiving it with respect to.

6           So I don't know what documents Attorney Morrissey

7    would say would come under an umbrella of things that Mr.

8    Kwok under U.K. law still has a privilege in.

9           Again, I think there is a way to work through

10   this.  It may be that Attorney Morrissey would identify some

11   discrete number of documents that she would say these are

12   documents that Mr. Kwok has privilege in and possibly

13   subject to me reviewing and they're completely innocuous --

14   and that's great -- but there has to be a process gone

15   through.

16          Mr. Kwok cannot make a knowing and voluntary

17   waiver when he doesn't know what he's waiving.  He can't do

18   that.  And he's not going to do that.

19          And, again, with all due respect, I don't believe

20   you can compel him to do that.  I do not believe that you

21   can compel him by signing this letter to waive his --

22   whatever his attorney/client privilege is under U.K. law.

23          MR. DESPINS:  Your Honor, if I may?

24          THE COURT:  Yes.

25          MR. DESPINS:  You know, there's an attempt to

1    muddy the waters here.  If the letter doesn't work for

2    counsel in the U.K., I'll deal with that.  So let's put that

3    aside for now.

4            I think it will work because she marked up our

5    letter and she sent us this letter.  We made some very minor

6    nonsubstantive kind of changes, so that's number one.

7            And that letter basically, that she marked up,

8    says that if she gets that letter she will share the

9    privilege as to -- or she will give me privileged

10   information.  As to what?  As to the merits of the

11   litigation.

12           That's an asset of the debtor.  Mr. Henzy made a

13   big deal about his 475 million or whatever sum.  That's an

14   asset of the debtor.

15           The only way -- this is like a car.  In order to

16   access the car, I need the key.  The key is the letter.

17   Because otherwise they won't talk to me because, you know,

18   either U.K. rules or their concern about being sued.

19   They've never actually articulated that, but that's the

20   subtext here.  It's pretty clear.  So the letter I think

21   works.

22           There's not an unknown or unlimited waiver of the

23   privilege.  It's regarding the merits of that litigation.

24   That's what she's going to share with me.  Because Mr. Henzy

25   has -- you must remember -- had very nicely sent an email to

1    them a long time ago that said I own the claims basically

2    dealing with Mr. Despins.  Mr. Kwok is completely out of

3    this -- out of that claim.  He did say that.

4              So what would be the point of me being, you know,

5    having the claim if I cannot be briefed by the lawyers about

6    the merits of the claim?  Again, it's the key that gets me

7    the car.  And I absolutely need that.

8              And case law is clear, Your Honor, that the

9    trustee can have access to privileged information of the

10   debtor with respect to assets of the debtor.

11             Here there's not even a dispute.  This is not like

12   the yacht or the Sherry-Netherland apartment where he says,

13   oh, I don't own it.  He says -- he filed a claim.  He said I

14   own this.  It's clear that the trustee owns the claim now.

15   And clearly I have the right to have access to that.

16         There's not an unknown or unlimited waiver.  And so,

17   therefore, we believe the Court can compel.  This is

18   521(a)(3),(a)(4).  The Court can absolutely do that because

19   this is equal to the debtor saying, yeah, here's the car,

20   but I'm not giving you the key.

21             Without the briefing on the merits of the claim or

22   knowing whether there has been any settlement, I cannot

23   drive the car.  I cannot sell the car.  You know, that's the

24   analogy.  And we need access to that.

25             Thank you, Your Honor.

1        MR. HENZY:  Your Honor, if I may?

2        THE COURT:  Yes.

3        MR. HENZY:  One point I want to be clear on, that

4   Attorney Morrissey's clear with me on, is that there's two

5   other plaintiffs here and the privilege is joint.

6        And Attorney Morrissey's been clear that Mr. Kwok

7   cannot raise the privilege with respect to information that

8   is the joint information of -- along with those other

9   parties.  So she's been very, very clear that the only thing

10  that in theory Mr. Kwok could raise with respect to -- with

11  the property that as I understand it he is the sole owner

12  of.

13       So, again, what the -- the universe of information

14  here is that Harcus Parker would ever say that they're going

15  to release is that, you know, I don't know.

16       But I want to give you two cites that were not in

17  my objection.  I did have a relatively short time to get the

18  objection done, Your Honor.  I did cite one case where the

19  Second Circuit says that you cannot compel a person to waive

20  their attorney/client privilege.

21       And, again, I want to be clear here, Your Honor,

22  to the extent that Mr. Kwok no longer owns the privilege,

23  under -- I think it's under U.K. law -- not under U.S. law

24  -- whether -- what the attorney-client privilege is in the

25  U.K. and what -- to what extent the privilege belongs to him

1    versus belongs Mr. Despins, that's what's -- that's a matter

2    of U.K. law.  It's not U.S. law.

3             But two other Second Circuit Court of Appeals

4    cases.  One is *Highland Capital Management vs. United*

5    *States.*  It's at 626 F. App'x -- I never know how to

6    pronounce that thing, 324.  It's a 2015 decision.

7             If I could quote, Your Honor.  "Compelled

8    disclosure of privileged attorney/client communications

9    absent waiver or acceptable exception is contrary to well-

10   established precedent.  When parties disagree whether a

11   privilege applies, courts often review the contested

12   material in camera.  In contrast, requiring a litigant to

13   turn over documents subject to claims of attorney/client

14   privilege to opposing counsel without a judicial ruling on

15   the merits of the claim will undermine the attorney/client

16   privilege and it's, therefore, impermissible."

17            So, again, what privilege Mr. Kwok has here and

18   what privilege he doesn't have may well be subject to

19   dispute.  Plus you can't order him to waive privilege

20   without working through that dispute.

21            And I'll say again, Your Honor, there's a right

22   way to do this.  If Mr. Despins, rather than trying to

23   bulldoze through an order here, would work with U.K. counsel

24   and me to try to identify what potentially is the universe

25   of documents that even are at issue here she may go through

1    her documents, Your Honor, and say I can't give you anything

2    because these other people have privilege and I'm not going

3    to -- I'm not going to give you anything.

4          She may say there's five pieces of paper that Mr.

5    Kwok is the sole owner of that I could ever release to you.

6    And the five pieces of paper are pictures of his kids.  And

7    no one -- and no one's going to care about that -- to tell

8    us any number of things.  But there's a -- there's a process

9    that has to be worked through.

10          The Second Circuit says that you cannot order this

11    kind of blanket waiver without making findings with respect

12    to specific documents.

13          THE COURT:  Where does it say that in the *Highland*

14    case?  I'm looking at it.

15          And the *Highland* case is not a bankruptcy case.

16    It's a third-party subpoena with regard to an IRS issue.

17          So where does it say that?  Where does it say that

18    a court cannot compel a debtor out of possession to waive a

19    privilege with regard to an asset that the debtor has stated

20    under penalty of perjury is an asset of his estate?

21          MR. HENZY:  Your Honor, this is -- you're right.

22    This is not a debtor case.

23          But I don't think -- I don't -- I'm not aware of

24    any case.  And I will say this, Your Honor.  I'm not aware

25    of any case that says that.

1        Because what the Second Circuit says is that after

2    an applicable exception.  And I think the typical exception

3    that comes up in cases is where a party -- in criminal cases

4    where a party says it had ineffective assistance of counsel.

5        And the rule is that you can't say you haven't had

6    effective assistance counsel unless you're going to be

7    willing to waive relevant communications with counsel.

8        I'm not aware of any case that says that a -- that

9    there's an applicable exception for a debtor.

10       But I'm going to push back to one of the other

11   points I've made here.  I don't think it's up to the debtor

12   that's here to prove the negative.  Not by motion.  But by

13   submitting a proposed order Mr. Despins is seeking relief

14   from it.  He is seeking to have you compel the debtor --

15            THE COURT:  Not yet.

16            MR. HENZY:  -- to waive his privilege.

17            THE COURT:  Not yet.  If the debtor doesn't sign

18   the document, then -- I asked that question of Mr. Despins

19   the other day, and then he will file a motion.

20       The problem is your case law says compel

21   disclosure of privileged attorney/client communications

22   absent waiver or applicable exceptions contrary to well-

23   established precedent.

24       Well, this is -- this is -- Mr. Kwok has stated

25   under penalty of perjury in his schedules -- and you've

1   reached out to the lawyer in the U.K. saying that Mr.

2   Despins is the party, and you've acknowledged that Mr.

3   Despins steps into the shoes of Mr. Kwok in the action in

4   the U.K.  And so you can't then argue that Mr. Kwok -- the

5   lawyers who represented Mr. Kwok can't turn over that

6   information to Mr. Despins for his review.  I mean, you can

7   make that argument, but it's not persuasive.

8              You're having --

9              MR. HENZY:  Okay.  There's nothing --

10             THE COURT:  Excuse me.  Let me -- let me just

11   finish.

12             You are coming to this court.  Your client

13   voluntarily came to this court and put his assets in

14   question for creditors of this estate and has stated that

15   this cause of action is his cause of action and an asset of

16   the estate.

17             The minute the Chapter 11 trustee was appointed,

18   the Chapter 11 trustee steps into the shoes of Mr. Kwok.  So

19   the Chapter 11 trustee has the privilege of Mr. Kwok in that

20   lawsuit.

21             And so your arguments are not persuasive.  So

22   let's move onto the next issue about whether -- because that

23   order --

24             MR. HENZY:  Your Honor, can I -- can I -- may I --

25             THE COURT:  Excuse me.  I'm not finished.

1          MR. HENZY:  Okay.

2          THE COURT:  That letter -- Mr. Despins has just

3     stated he's a -- he is subject to Rule 11 sanctions if he's

4     incorrect, Mr. Henzy.  That he got this letter from the

5     lawyers in -- from the barristers or solicitors in London.

6     They're willing to sign it.  They marked it up.  That's

7     what's going to happen.  That's what's going to happen.

8          So let's go to the next issue which has to do with

9     the Genever issue and the fact that you've argued that Mr.

10    Kwok, you know, doesn't have any control over Genever.

11         But when you look at the trustee's reply to your

12    objection this morning, there are exhibits attached to it

13    where Mr. Kwok admits -- it's an admission of a party, that

14    he owns the shares of the cooperative that owns the

15    apartment.

16         So what's your response to that?

17         MR. HENZY:  Your Honor, just if I could go back

18    for a second.  For the record, you're not going to hear any

19    further arguments from me on the privilege issue.

20         THE COURT:  That is correct.

21         MR. HENZY:  I just want to make --

22         THE COURT:  I've decided the issue.

23         MR. HENZY:  I want to make a record.

24         THE COURT:  I've decided the issue.  That is

25    correct.  Your arguments about the privilege are not

1    persuasive.

2             Mr. Despins stepped into the shoes of the debtor

3    when he became the Chapter 11 trustee.  There's well settled

4    case law on that, Attorney Henzy.

5             The cases that you've cited are not applicable.

6    They're not involving a Chapter 11 trustee who steps into

7    the shoes of a debtor who has been taken out of possession.

8    And so, therefore, your case law does not support your

9    argument.

10            And I will -- and we can move on to the next issue

11   now about the Genever Holdings matter and the Sherry-

12   Netherlands apartment.

13            MR. HENZY:  Thank you, Your Honor.

14            On the Genever BVI issue, my first -- because I

15   got this not that long ago, but the documents that are

16   attached to the reply are not in evidence, Your Honor.  I

17   think we can all agree on that.  And I -- I'm not -- I do

18   not --

19            THE COURT:  Well, I'm not sure that's true.  First

20   of all, some of them are from the bankruptcy court in New

21   York.  And this court can take judicial notice of those

22   documents and their reliability based upon the fact that

23   they were filed in a -- in the Chapter 11 case of Genever

24   Holdings in New York.

25            So when you say they're not in evidence, well,

1   then I can make them in evidence.  I can say that they are

2   now evidence in connection with the trustee's motion because

3   they were all filed, many of them -- and we can go through

4   each one -- in the -- in the bankruptcy case of Genever

5   Holdings.  And the Court can take judicial notice under the

6   federal rules of evidence of that because the reliability of

7   that is obvious.

8           So to say that they're not in evidence, well,

9   okay, I'm going to now rule that they are in evidence. That

10  the exhibits attached to the trustee's reply that was filed

11  today in response to your objection, Exhibits A through G,

12  are in evidence and they will be marked as exhibits.  So

13  that if you want to appeal you can -- these exhibits will be

14  in evidence.

15          (Exhibits A through G attached to Trustee's motion

16  for an order received into evidence as Trustee Exhibits A

17  through G.)

18          MR. HENZY:  Thank you, Your Honor.

19          Just for the record, so I make my record, I do

20  object to their admission.

21          THE COURT:  Understood.

22          MR. HENZY:  And in addition to -- I'm in a

23  difficult position to give you specific objections as I'm

24  required to do under the rules of evidence as I've -- as

25  that I've had almost no time to go through these documents

1    individually.  So that is an issue for me.  And that kind

2    puts, you know, pushes me to a different issue which --

3            THE COURT:  Well, let's go through them right now.

4    We'll pull up Exhibit A.

5            MR. HENZY:  That's unfair, Your Honor.  Because if

6    I --

7            THE COURT:  No, it's not unfair, counsel.

8            MR. HENZY:  It is.

9            THE COURT:  Because these are all exhibits that

10   your client signed or you should have as his counsel.  You

11   don't get to come in and stall things.  And I'm not saying

12   -- you don't get to come in and say the trustee, who's been

13   appointed since July 8th, can't do his job because I'm new

14   counsel and I haven't had a chance to look at all this.  You

15   don't get that opportunity.

16           MR. HENZY:  No.

17           THE COURT:  It doesn't happen that way.

18           MR. DESPINS:  Your Honor.

19           MR. HENZY:  The point -- the point I was going to

20   make, Your Honor, is that you're admitting exhibits in

21   connection with relief sought by the trustee that is not in

22   the motion that he filed and on a hearing that as far as I

23   know was not scheduled as a trial, but an evidentiary

24   hearing.  I have no ability to try to rebut what is in these

25   documents.  That this is just -- it is fundamentally unfair.

1          THE COURT:  Okay.

2          MR. HENZY:  I have no notice --

3          THE COURT:  How would you rebut the -- your

4    client's answers to interrogatories that were filed in the

5    New York State Court, which is Exhibit A and which he

6    signed?  How would you rebut that?  What could you possibly

7    put forth that could rebut that -- those interrogatory

8    answers that your client signed in an action in New York

9    that has been pending for years?

10         MR. HENZY:  I'm going to try to answer that

11   specifically, Your Honor, but I think -- and actually I'm

12   going to try to answer your question.  Okay.

13         The first -- I don't know.  I'm not -- I don't --

14   I do not practice trial law in New York State so I don't

15   know if interrogatories are filed.  They're not filed, for

16   example, in federal court or state court in Connecticut.  So

17   maybe they are and maybe they aren't.  I don't know that.

18   So that if they're not, I don't think you could take

19   judicial notice.  That's one issue.

20         THE COURT:  Well, there's a file stamp on the top

21   of it from New York filed New York County Clerk 4/28/2021,

22   10:54 p.m.  That states that on the top of the document.

23         MR. HENZY:  Sorry.  I don't -- again, Your Honor,

24   I'm not -- I don't practice trial law in New York so I don't

25   know what the procedure is.

1          I will point out, Your Honor, if you go to page 3,

2     the definition of interest.

3          THE COURT:  Page 3 of Exhibit A?  Is that what

4     you're saying?

5          MR. HENZY:  Of what I -- what I'm understanding is

6     now you've admitted this as Exhibit A.

7          THE COURT:  That is correct.

8          MR. HENZY:  Okay.  And just to be clear, I do

9     object to that, Your Honor.  I understand you're overruling

10    my objection, but the -- on page 3, definition 2 -- I might

11    -- I might be getting this wrong, Your Honor -- again, I

12    have not -- I understand Your Honor.

13         I'm not telling you that I don't have a

14    responsibility to have gone through things, but there is a

15    lot that was put on in connection with this this morning.

16         But the definition of interest is very, very

17    broadly defined there.  The term interest means any direct,

18    indirect interest, whether partial, whole or potential, et

19    cetera.  So it's a very, very broad definition of interest.

20         Again, if I go to response interrogatory number

21    one, where, among other things, there's a little box that

22    says admission of ownership -- and I don't, Your Honor,

23    where that came from.  I don't -- I don't know if that was

24    part of what was filed with the New York State Court. I'm

25    going to doubt it, as opposed to this is somehow

1    constructive for your purposes or someone else's purposes.

2    I don't know.  I just wasn't -- I did -- I don't know the

3    answer to that.  That -- I think that should not be before

4    Your Honor.

5            But his answer is I am the legal owner of the

6    issued shares of Genever Holdings Corporation.  And if you

7    go back to definition of interest -- again, it's a very,

8    very broad definition, it makes the distinction between

9    legal and equitable.

10           And if I jump to response interrogatory number 5,

11   on page 9, again, I am the legal owner of the issued shares

12   of Genever Holdings Corporation.  That statement is

13   consistent with the statements that Mr. Kwok made in the

14   declaration he filed in this case and also consistent with

15   the global notes to the statement of financial affairs that

16   he filed in this case.  That is, that he is the legal owner

17   of the issued shares of Genever Holdings Corporation, which

18   will be referred to as Genever BVI.

19           And what he's said there -- in the declaration

20   filed in this case and in the global notes filed in this

21   case -- is that he holds those shares, he holds legal title

22   to those shares as trustee under a trust.  And the

23   beneficiary of that trust is Bravo Luck.

24           So I -- we can debate -- and I know Mr. Sarnoff

25   really wants to debate -- about what this says.  But my

1     point is I'm -- I am not able to put on evidence, Your

2     Honor, to explain this and to explain what's in the

3     declaration and to explain what's in the global notes.  And

4     that's not -- that's fundamentally unfair.

5              This was not scheduled to have an evidentiary

6     trial.  I have -- this is not even -- what the relief sought

7     here -- as I pointed out in my objection, Your Honor, it is

8     not even relief that's sought in the motion that was

9     actually filed.

10             This is -- this is new relief.  And we're now

11    having, as I understand it, a trial on almost no notice on

12    new relief where I have absolutely no ability to meet the

13    claim that is now being made.  And that is -- again, I think

14    that's fundamentally unfair and I absolutely object to it.

15             MR. SARNOFF:  Judge Manning, this is Stuart

16    Sarnoff.  May I be very, very briefly heard, because I might

17    be able to help the Court on an issue relating to this?

18             THE COURT:  Go right ahead.

19             MR. SARNOFF:  So I -- Judge Manning, I've been the

20    lead counsel for PAX in the state court litigation.  I filed

21    the complaint on its behalf.

22             All I want to do, Your Honor, is to point out that

23    PAX filed and won a turnover motion with respect to Genever

24    BVI shares as a post judgment enforcement action.

25             And I would just raise that never proffered before

1    the Court was the alleged deed of trust.  But in any event,

2    the judge -- on September 22nd, 2021, Judge Ostrager,

3    Justice Ostrager, in his ruling on the record, and then

4    confirmed in an order dated that day, ordered the turnover

5    to PAX of Mr. Kwok's Genever BVI share ownership because he

6    said, quote, on page 16 of the September 22nd, 2021

7    transcript, "Mr. Kwok identified his ownership interest in

8    Genever Holdings BVI as his only asset worth more than

9    $10,000 in response to PAX's post-judgment interrogatories,"

10   which is the document at number 756 in this case at page 9.

11   The ownership shares -- and then he goes on to say the

12   ownership -- so he's admitted that this is his one asset.

13          And because PAX has a judgment of 130-something

14   million dollars at that time, $126,000 million, they're

15   entitled to get turnover.

16          We had to bring a subsequent contempt motion which

17   was pending when Mr. Kwok filed for bankruptcy because of

18   course Mr. Kwok didn't do what he was supposed to do, vis-a-

19   vis, the turning over.

20          But there is -- you know, there's a judicial

21   ruling that the shares belong to Mr. Kwok for purposes of

22   being able to turn them over or for, in this case, for Mr.

23   Despins to step into those shoes to have that same bundle of

24   rights.

25          And I would also note, Your Honor, that Mr. Kwok

1    did not appeal that ruling.

2            You know, it should be collaterally estopped.  You

3    know, whatever it is. This has been litigated whether or not

4    the shares are sufficiently his for purposes of turnover or

5    for Mr. Despins to step into his shoes.

6            And in a ruling on September 22nd, 2021 --

7            MR. HENZY:  Your Honor.

8            MR. SARNOFF:  -- Justice Ostrager ruled on that.

9            MR. HENZY:  I want to be clear.  Is Mr. -- are you

10   taking this as Mr. Sarnoff's testimony?  Because if you are,

11   I would like him to be sworn.

12           THE COURT:  I'm not taking it as Mr. Sarnoff's

13   testimony, Attorney Henzy.

14           MR. HENZY:  Thank you, Your Honor.

15           Mr. Despins?

16           MR. DESPINS:  Your Honor, if I may very briefly?

17           You are not -- we're not asking you today to find

18   that the trust agreement isn't valid or doesn't exist.  We

19   added -- in what we filed today at 681, docket 681, we added

20   a safety valve.  So I thought that Mr. Henzy would jump at

21   that.

22           But basically it says the Court is not finding --

23   making any findings regarding the validity or invalidity of

24   the trust agreement.  Any challenges to the trust agreement

25   are preserved.

1           However, what cannot be controverted is that he's

2     the legal owner of these shares and now we are entitled to

3     get those shares.

4           And the issue of the validity of that trust -- by

5     the way, we have craved out over it -- you know, that trust,

6     the allegation that there's a trust was never raised in

7     state court for four years, so that gives you a sense of how

8     -- you know, that's let not editorialize over that.

9           But the point is that there's a safety valve in

10    the order and, therefore, the order should enter. And then

11    Mr. Henzy also complained about the lack of notice in these

12    documents.

13          Your Honor, on August 1st, you may remember -- I

14    don't know if you saw this, but I offered Mr. Henzy more

15    documents.  These were these documents and he threw them to

16    the floor.  A little temper tantrum there.  I don't know if

17    you saw that.

18          But the point is that if he hadn't done that he

19    would have all these exhibits, that these were the exhibits

20    I was giving him at the time, which are, as you said, are

21    exhibits, for example, in the Genever Chapter 11 case, which

22    nobody can dispute.

23          And those are to the effect that Mr. Kwok is

24    exercising, and I've exercised, all corporate governance

25    rights with respect to Genever Holdings, Genever USA, and --

1          And so regardless of the trust agreement, there's

2     never a -- in all these signature pages, you never see a

3     countersign or approved by Bravo Luck or anything like that.

4     It's Mr. Kwok signing.

5          And so, therefore, that tells you that these are

6     the rights we should have.  And those include the rights to

7     direct the Chapter 11 case of Genever Holdings subject to

8     the jurisdiction of Judge Garrity.

9          And there's also a safety valve in the order that

10    says you're not ordering me or allowing me to do anything in

11    that case without his approval.  So that's all covered.

12         But I think it's important to stick to the facts

13    here.  And it's a limited relief.  And it's basically

14    getting the shares in my name so I can exercise all the

15    corporate governance rights of that entity.

16         Thank you, Your Honor.

17         MR. HENZY:  Your Honor, just so I could be clear,

18    I assume that that was -- you're not taking Mr. Despins'

19    statements as testimony either?

20         THE COURT:  I'm not taking anyone's statements,

21    including yours, as testimony either.

22         MR. HENZY:  Oh, I know you're not taking or I

23    think I know you're not taking mine.

24         Your Honor, I probably did have a little, very

25    brief temper tantrum on Monday.

1    But this is a trial by ambush, Your Honor, and I

2    think the rules do need -- there does need to rules.  There

3    needs to be order in proceedings.  And I don't -- I don't

4    think that that is happening here.

5    I've tried -- I don't know if Your Honor has more

6    questions of me.  I would like to make further points,

7    again, just to make my record, you know.

8    I believe there is a dispute.  I understand that

9    Mr. Despins doubts it.  I understand that Mr. Despins and

10   Mr. Sarnoff have formed a version of facts to, you know, to

11   the Court that, again, I'm not in a position to rebut.  I

12   don't have a witness here.  I don't -- I didn't know this

13   was going to be a trial.

14   I will point out, Your Honor, that this dispute is

15   the subject of a settlement agreement in the Genever U.S.

16   case that was approved by Judge Garrity, that as I

17   understand it contemplates that this ownership issue is to

18   be litigated in the BVI.  Again, that is my --

19   THE COURT:  So do you -- so you're asking for your

20   exhibits then to become part of the record as well in

21   evidence because now you're relying on exhibits that you

22   attached to your objection to make the statement that you

23   just made?

24   MR. HENZY:  You know, Your Honor, I am relying on

25   that --

1          THE COURT:  Okay.  Then they'll be admitted into

2     evidence as well.

3          MR. HENZY:  -- to try to make an argument, to try

4     to respond.

5          THE COURT:  Okay.  Well, then your exhibits are

6     admitted into evidence as well.

7          (Exhibits attached to Debtor's objection to

8     Trustee's motion for an order received into evidence.)

9          I mean, what else do you -- why else would you

10    have filed an exhibit -- and the same reason that Mr.

11    Despins did -- so the Court could review them in connection

12    with your positions?

13         MR. HENZY:  In connection with --

14         THE COURT:  And so to argue that this is now an

15    evidentiary hearing and that you're being -- you're not

16    given fair opportunity -- but you want to make your argument

17    based upon the exhibits that you attached to your motion,

18    your reply.

19         So I think you need to be a little bit more -- we

20    need to be -- treat this the same on both sides of these --

21    of the equation.

22         You can't argue that Mr. Despins is now making

23    this an evidentiary hearing because he's submitted exhibits

24    and attached to his reply, but you can persuade the Court

25    with regard to the exhibits you've attached to your -- to

1    your objection and that's -- that's not part of an

2    evidentiary hearing.

3              Well, of course it is.  It's either -- it's all in

4    evidence or it's not, Mr. Henzy.  It's part of the record of

5    this case.  You made it part of the record when you

6    submitted your objection with those exhibits.  That's the

7    record of this case, ss are the exhibits that Mr. Despins

8    submitted.  Then you made the argument, well, they're not in

9    evidence.

10             Well, I don't agree with you because they're part

11   of the record of the case.  But we'll just put them all in

12   evidence.  So there's no --

13             MR. HENZY:  Well, Your --

14             THE COURT:  -- there's nothing unfair about that,

15   Mr. Henzy.  That's how it works.

16             MR. HENZY:  Oh, I think there is something unfair

17   about it, Your Honor, but I understand your ruling.

18             THE COURT:  I know you do.

19             MR. HENZY:  I understand --

20             THE COURT:  But you haven't been able to

21   articulate or point to any case law or statute that supports

22   your argument.

23             MR. HENZY:  Your Honor, you're taking evidence.

24   And I understand I attached a document to my memo.  Okay.

25   And that's for the purposes of argument.  I was not

1    contemplating anything was going to be admitted into

2    evidence.  You're taking evidence.  You're holding a trial

3    right now as I understand it.

4                THE COURT:  No, I'm not holding a trial, Mr.

5    Henzy.

6                You're the one that said that Mr. Despins couldn't

7    argue about the exhibits attached to his reply because they

8    weren't in evidence.  And I said to you, okay, well, then

9    let's put them in evidence because they are part --

10               MR. HENZY:  And I --

11               THE COURT:  -- of the record of this case.

12               And then you just said -- you just said -- you

13   weren't relying on those exhibits to make findings but, yes,

14   you are.  You exactly just said the settlement agreement

15   that's been approved by Judge Garrity is what controls

16   Genever Holdings.

17               And so it's either part of the record or it's not.

18   If you're -- then nothing you've said -- you don't have any

19   -- anything to support your argument because you don't want

20   it to be part of the record.  So fine.  If you don't want it

21   to be part of the record, that's fine.  And if you don't --

22   but you already made it part of the record because you

23   submitted it with your pleading.

24               MR. HENZY:  I'm not going to dispute, Your Honor,

25   that you can take judicial notice for what it's worth of a

1  document that's been filed in the Genever bankruptcy case.

2  I'm not going to -- I'm not going to dispute that.

3        THE COURT:  But you have to do that under the

4  federal rules of evidence, Attorney Henzy.  I don't just say

5  I take judicial notice.  I have to do that under the -- the

6  applicable rule of evidence regarding judicial notice.  So

7  it's evidence, as is the documents you've submitted with

8  regard to the settlement agreement.

9        MR. HENZY:  Yeah.  I understand, Your Honor.  I

10  understand your ruling.

11        But there is a dispute, Your Honor, as to the

12  ownership.  Now, Mr. Despins did file -- and that dispute I

13  believe under applicable law has to be resolved by an

14  adversary proceeding.  And I've cited lots and lots of cases

15  that say that.

16        THE COURT:  Mr. Henzy, let me stop you right there

17  on the adversary proceeding issue.

18        I think you have a problem with the language in

19  7004 -- 7001(a) that you didn't -- you stopped the sentence.

20  I mean, I looked back at it three times this morning because

21  I thought that you were -- that was not an accurate

22  statement.  And it says -- (a)(1) says a proceeding to

23  recover money or property other than a proceeding to compel

24  the debtor to deliver property to the trustee.

25        How do you -- do you not see that language?  How

1    do you interpret that language in any other way that that

2    still requires Trustee Despins to file an adversary

3    proceeding?  How do -- I don't understand that.

4              MR. HENZY:  So, Your Honor, just as with the cases

5    that -- Judge Trancredi case that I cited that dealt with a

6    363 motion, I don't -- I understand he can file a motion for

7    turnover but, Your Honor, he hasn't filed a motion for

8    turnover.

9              THE COURT:  He doesn't have to.  Your client is

10   obligated to cooperate with him under the debtor's duties

11   when he voluntarily came to this court and sought this

12   court's protection.

13             And then -- and to say that your client's being

14   ambushed, this issue of the trustee has been pending since

15   the middle of February.  The trustee was appointed on July

16   8th.  It's August 4th.  And your client hasn't cooperated

17   with the trustee.

18             I mean, you can continue to make the argument, but

19   your argument is not persuasive.

20             MR. HENZY:  May I speak, Your Honor?

21             THE COURT:  Yes.

22             MR. HENZY:  I don't agree that Mr. Kwok has not

23   cooperated with the trustee.  So that's one.

24             I understand this case was filed in February.  The

25   trustee was not appointed until July 8th, Your Honor.  I

1    understand a trustee was appointed.

2           I have tried to familiarize myself with as much of

3    the record in this case as I could.  I don't understand that

4    Your Honor has ever made findings regarding the debtor's

5    lack of cooperation, regarding the debtor being a bad

6    person.

7           My understanding of your ruling granting the

8    motion was really -- that it was focused on best interest of

9    creditors.  You said that there may be assets -- just a

10   centralized form. So really the best interest of creditors

11   type of matters.

12          I've read your decision and I don't see anything

13   regarding misconduct.  I believe that Mr. Kwok's consent

14   that there was cause was based on best interest of

15   creditors.  There was no admission by him as to malfeasance

16   or any kind of bad conduct.

17          So in the -- I guess it's three or four weeks

18   since Mr. Despins -- and I'll say, Your Honor, I don't -- I

19   don't believe that because a person files Chapter 11 that

20   they then waive any and all of their rights if and when a

21   trustee is appointed.

22          THE COURT:  Okay.  But you didn't answer my

23   question, Mr. Henzy, about 7001(a) and how you could

24   interpret it in any way other than the language in the rule?

25          MR. HENZY:  So, Your Honor, 542 -- 7001(a)(1) --

1    I'm sorry -- 7001(1) applies -- I recognize it applies to a

2    proceeding to compel the debtor to deliver property to the

3    trustee.  But where -- I think that is with respect to

4    property where there's no dispute that the property is

5    property of the estate.  And here there is a dispute.

6            It's the same as with the 363 motion, Your Honor.

7    The courts have held, including Judge Tancredi, that you

8    can't grant a 363 motion until you've decided whether the

9    property that's sought to be sold is property of the

10   bankruptcy estate.  And that requires an adversary

11   proceeding.

12           THE COURT:  We're not selling property at this

13   time.  Number one.

14           And number two, it is being sold subject to the

15   New York Bankruptcy Court's order selling the property.  So

16   that's already been done, number one.

17           And then your client admits that it is his asset

18   in some way, shape or form, Mr. Henzy.  I don't have to find

19   whether he -- it's a legal interest, an equitable interest,

20   a beneficial interest.  I don't have to find any of that.

21   Your client has already admitted it, that it's his asset.

22           So I don't -- so I don't --  you still haven't

23   answered the question of how 7001(a) requires Mr. Despins to

24   bring an adversary proceeding.

25           MR. HENZY:  Well, Your Honor, I think there is no

1    7001(a).  It's 7001(1), which does provide --

2              THE COURT:  Okay.  Sorry, 7001(1).

3              MR. HENZY:  -- a carve -- it carves out --

4              THE COURT:  Sorry.

5              MR. HENZY:  -- it carves out turnover.  But,

6    again, that's for property of the estate.  There has to be a

7    determination that that, in fact, is property of the estate.

8    And that --

9              THE COURT:  Your client has already said it is

10   property of the estate in the declaration.  Even if he says

11   he's holding it in trust, he still owns the shares.  He says

12   that in the declaration 107 that we talked about the other

13   day.  So he's already said that.

14             MR. HENZY:  What he said is that he has -- he has

15   legal title as --

16             THE COURT:  Okay.  And guess what, as you know,

17   the definition of property of the estate includes all

18   interests, legal, beneficial, equitable, that you have in

19   any property that you have.  And so he has.

20             MR. HENZY:  But, Your --

21             THE COURT:  It's property of the estate.

22             MR. HENZY:  Your Honor, Mr. Despins filed the --

23   the third revised proposed order, I think, nine -- or nine

24   and a half minutes before the hearing.  I did not have a

25   chance to look at it.  If there are appropriate protections

1    in there, then it may well be that the debtor won't object

2    to the entry of that order, but I would like an opportunity,

3    and not in the middle of this hearing, to review that order.

4              THE COURT:  Okay.  Would you like to take a recess

5    for an hour and you can go read the order?  I mean, that's

6    fine if that's what you'd like to do.

7              But Mr. Despins just explained how he did put in

8    safeguards in that order.

9              MR. HENZY:  I don't know what safeguards he put in

10   and I don't know if they're sufficient.

11             The issue, Your Honor, the problem, is that what

12   Mr. Despins put in front of you would appear to be a --

13   require a transfer of the shares in full.  Okay.  That's the

14   way I understood it.  Okay.  Where he said these shares get

15   transferred to him solely in his capacity as Chapter 11

16   trustee.

17             Well, if Mr. Kwok is the mere legal owner, as

18   trustee, and these are now being transferred to Mr. Despins,

19   I think Mr. Despins is becoming the trustee of that trust.

20   If there's a valid -- if there's a valid trust, there has to

21   be a trustee.  And if Mr. Despins is now the legal owner of

22   the shares, I think he's owning them as trustee of that

23   trust.  So, again, if we're all clear that that is the case,

24   then maybe we don't have a problem.

25             I'm not sure Mr. Despins really wants to be a

1    trustee of that trust with all that that might bring in

2    terms of duties to the beneficiary of the trust, but you

3    can't have it both ways.

4            As Your Honor has said multiple times, you take

5    the debtor as -- in this case -- he comes.  And the argument

6    is that with respect to this asset the way he came was as

7    the legal owner, as trustee of a trust, for the benefit of a

8    third party.

9            So if -- if the -- all that he has is that legal

10   ownership interest as trustee is what's being transferred,

11   and it's being transferred to Mr. Despins as trustee of that

12   trust, then maybe that's okay.

13           MR. DESPINS:  Your Honor.

14           THE COURT:  Yes.  Go ahead.

15           MR. DESPINS:  That argument is preserved.  We're

16   not asking you to go all the way and find that the trust is

17   not valid.  We're preserving that issue for another date.

18   But he cannot have an advisory opinion saying that a trust

19   is valid.

20           As you pointed out in the interrogatories, it's

21   not question whether they've been filed or not in New York

22   State.  They're signed under penalty of perjury by Mr. Kwok.

23   And he never mentioned the trust, the trust that existed

24   five years or four years before.

25           So that's the state of the law.  That's how we

Ho Wan Kwok - August 4, 2022                                    43

1    take our debtor.  The debtor said nothing about that trust.

2    And I'm -- I think we're being kind.

3            We're preserving their argument that there's a

4    trust for a later date, meaning it would be unfair to ask

5    you to rule that the trust is not valid.  We have serious

6    issues about it, but that's for another day.  That's what

7    the order provides.  It leaves that issue open for another

8    day.

9            THE COURT:  All right.  So, Mr. Henzy, did you --

10           MR. SARNOFF:  Your Honor, it's Stuart Sarnoff.

11           THE COURT:  Okay.  Hold on one second.

12           MR. SARNOFF:  Your Honor, I was just going --

13           THE COURT:  Go ahead, Mr. Sarnoff.  Go ahead.

14           MR. SARNOFF:  Your Honor, I was merely going to

15   point out that the Court's decision and -- decision and

16   order on motion with respect to PAX's motion for turnover,

17   not the transcript, but the written decision and order, was

18   filed.

19           We filed it in this court's docket on March 1st,

20   2022 as I believe docket number 57-2.  If I have my --

21   forgive me if my information is incorrect.  We were

22   scrambling.  But I think that's the correct information.

23           It's a Supreme Court in the State of New York

24   decision and order, and that would be the court's -- Justice

25   Ostrager's ruling on our motion for a turnover.  The

1    predicate of which was it was his asset that he needed to

2    turn over to PAX.

3              THE COURT:  You think it's at ECF what?  What

4    page?  57 at what page?

5              MR. SARNOFF:  Dash 2, Your Honor.

6              THE COURT:  It's just taking a minute to open.

7    I'm trying to see.

8              MR. DESPINS:  And, Your Honor, with your

9    permission, could we show on the Zoom -- I don't know --

10             THE COURT:  Yes.

11             MR. DESPINS:  -- my colleague -- put up the --

12             THE COURT:  Yes, we can.  What would you like to

13   show?

14             MR. DESPINS:  Show the paragraph that we've added

15   to the order so Mr. -- so they can see that.  It's a very

16   short paragraph.

17             THE COURT:  So we need to pull up ECF 681.  And

18   you want to go to the black lined version or the plain

19   version?

20             MR. DESPINS:  My colleague -- my colleague, Mr.

21   Bongartz, can tell us exactly where we have to go.

22             MR. BONGARTZ:  It's page 35 at 40.

23             THE COURT:  Okay.  We'll just need a minute, and

24   the clerk will pull it up so we can all read it.

25             MR. DESPINS:  Thank you, Your Honor.

1          (Pause)

2              MR. BONGARTZ:  And, Your Honor, while he's doing

3      that, I do have a page reference.  I guess -- I guess 57-2

4      is an exhibit.  I believe it's page 131 of the exhibit, 1-3-

5      1 of the exhibit.  Sorry.

6              THE COURT:  Thank you.

7          (Pause)

8              THE COURT:  We're just waiting on 681, right, to

9      be pulled up?  And go to page 35 of 40 on that, please.  I'm

10     looking at a hard copy of it, but I can -- I'm sure we can

11     pull it up in a second.

12             THE COURTROOM DEPUTY:  Yes.

13         (Pause)

14             THE COURT:  If you're having difficulty, I can

15     share my screen and show it.  Right?

16             THE COURTROOM DEPUTY:  Yes.

17             THE COURT:  Is there a --

18             THE COURTROOM DEPUTY:  She is having a problem

19     there.  Yes, she's having a problem.

20             THE COURT:  All right.  So then you need me to --

21     you need to let me share then.

22             THE COURTROOM DEPUTY:  Okay.  You can share.

23             THE COURT:  Okay.

24             THE COURTROOM DEPUTY:  You have ability.

25         (Pause)

1          THE COURT:  Is it showing?

2          THE COURTROOM DEPUTY:  Yes.

3          THE COURT:  I can't see because I can't know that

4     I'm sharing.

5          All right.  So this is the paragraph, Mr. Despins,

6     paragraph 9?

7          MR. DESPINS:  Yes.  Correct, Your Honor.

8          THE COURT:  Yeah.  Can everyone see that?

9        (No audible response)

10         THE COURT:  Okay.  Everyone can at least view

11    that?

12         Attorney Henzy, do you see that?  I'm not

13    suggesting that you can't have a recess to look at the whole

14    order.  I'm just asking do you see paragraph 9?

15         MR. HENZY:  I see it, Your Honor.

16         THE COURT:  Okay.  Thank you.  All right.  So,

17    Attorney Henzy, are you -- are you asking the Court for a

18    recess so that you can review this matter, or what are you

19    asking the Court to do at this point?

20         MR. HENZY:  I don't think I was asking the Court

21    to do anything, Your Honor.  If the Court would like, I'm

22    happy to take a recess and review this carefully.  I don't

23    know if it will take an hour.  I don't know if it will

24    require discussions with Mr. Despins or anyone else.

25         I will though -- I want to be clear, Your Honor,

1    that I am pressing my objection that this was not in the

2    motion that was filed.  And under Rule 9013 and relevant

3    case law, I think it's not properly before the Court.

4            So principally my argument is that you should not

5    rule on this and that you should tell Mr. Despins to file a

6    motion so that this can be done in an orderly way, as

7    opposed to this was first filed and raised at 10:09 on

8    Sunday night, Your Honor.  Okay.

9            So, again, this is -- this is not fair.  There's

10   not sufficient notice.  His support for the relief he's

11   seeking is not stated with particularity anywhere.

12   Certainly it's not in the motion.  And I don't think it's --

13   the revised proposed order that he has, it does not speak

14   for itself.

15           MR. DESPINS:  Your Honor, we filed a very broad

16   motion seeking all corporate governance rights and we

17   mention BVI specifically.

18           Mr. Henzy responded saying BVI, it's too late.

19   There's no -- you can't just -- you can't give an open-ended

20   order like that with respect to BVI.

21           We responded by saying, okay, we'll be very

22   precise.  That's exactly what we need from BVI.  That's

23   subsumed in the relief sought.  So I don't understand the --

24   but he got it Sunday.

25           The relief, again, this is very simple.  There's a

1    car, we need the key.  If we're to get the keys to Genever,

2    we need the debtor to sign all these documents so that the

3    transfer is processed.  That's very consistent with the

4    motion.  It didn't have to be more specific than that, but

5    now it's very, very specific and it's been very specific

6    since Sunday.

7              MR. HENZY:  I disagree, Your Honor.  I think it's

8    not -- it was not -- the relief that's sought now was not

9    part of the motion that was -- that was produced and filed.

10   So I'm going to -- I'm going to press that objection.

11             Again, if the Court or the parties think it makes

12   sense for us to take an hour recess so I can look at the

13   order and potentially talk to my client at least, I'm happy

14   to do that.

15             But I don't -- I don't want there to be a surprise

16   if I come back and I say something like irrespective of

17   what's in this order I'm objecting to the relief being

18   entered.

19             THE COURT:  Does anyone else wish to be heard?

20             MR. HENZY:  Your Honor, this doesn't need to

21   happen this way.  But the status in the Genever U.S. case is

22   the property is being sold under the supervision of Melanie

23   Cyganowski.  As I understand it the debtor there has

24   essentially handed control of that process over to Melanie

25   Cyganowski.

1          As I understand it, I don't think the debtor can

2    do anything to impede that process.  So nothing here is

3    going anywhere.

4          There's going to be a sale process.  The sale

5    proceeds I believe will be property of that bankruptcy

6    estate and I believe won't be distributed except pursuant to

7    court order, a court order entered by Judge Garrity.  So

8    there's no -- I don't think there's any rush here.

9          And, again, as with the discovery, the U.K.

10   discovery issue, Your Honor, if it's done the right way,

11   this might be a lot easier.

12         I don't think -- I don't think I'm creating the

13   agita here.  I think the trustee is creating the agita by

14   the way that he's choosing to do this, which is really just

15   to try to push them through on essentially no notice.

16         MR. DESPINS:  Your Honor, the reason for the

17   emergency is that we need to appear in the Genever case for

18   reasons I explained about of last year.  There are time-

19   sensitive issues.  We need to resolve them as soon as

20   possible.

21         And I don't want to go to that court and have

22   someone like Bravo Luck say, well, he doesn't have the right

23   to be here because he doesn't hold the shares.  I don't want

24   to be in that position, Your Honor.  That's why we're doing

25   this now.

Ho Wan Kwok - August 4, 2022                                    50

1          Thank you.

2          MR. FRIEDMAN:  Your Honor, it's Peter Friedman.

3    If I may be heard for just a moment?

4          We strongly agree with that.  There's a plan on

5    file in that case which PAX has objected to.  But, you know,

6    it has all sorts of provisions that we think unfairly favor

7    certain parties that are aligned with Mr. Kwok.

8          And obviously the debtor as a -- we don't think

9    he's actually acted as a fiduciary in the context of that

10   plan proposal and we believe that it would be much more

11   appropriate to have Mr. Despins in whatever capacity dealing

12   with the debtor in an even handed manner that benefits Mr.

13   Kwok's legitimate creditors and so there actually is time

14   sensitivity.

15         I think there's a disclosure statement here -- and

16   at least currently scheduled for August 16th.  And the shape

17   of the river of that case could be substantially changed if

18   Mr. Despins' ability to participate in that case is made

19   clear.

20         THE COURT:  Right.

21         MR. GOLDMAN:  Your Honor, Irve Goldman for the

22   committee.  May I be heard briefly?

23         THE COURT:  Yes.

24         MR. GOLDMAN:  Your Honor, I think a distinction

25   has to be drawn between the equitable ownership of share

1    interests and the legal ownership of share interests which

2    carry with it corporate governance rights.

3            And I think it's unquestionable that the debtor

4    has acknowledged he's the legal owner of the shares and he

5    has exercised that legal ownership to control the

6    administration of the Genever USA Chapter 11 case. So that

7    is the subject of the motion.

8            And the trustee has acknowledged by paragraph 9 of

9    the order that the equitable interest by virtue of the trust

10   agreement cannot be determined at this point.  So I'm not

11   sure what the argument is about.

12           Secondly, even under the case law that Attorney

13   Henzy cited regarding Rule 9013 and the need to be

14   particular about the relief granted, this is simply

15   incidental to the principal form of the relief that was

16   sought in the first instance.  It just got more -- the

17   relief got more particular at the request of the debtor.

18           So we support completely what the trustee has

19   presented in the form of the proposed order.

20           I just want to go back for a minute to the

21   proposed letter to Attorney Morrissey before we break.  And

22   these are -- these comments are really pro estate comments.

23           I think that the way the letter is drafted, the

24   revised letter, could suggest that the attorney/client

25   privilege belongs to the debtor.  It does not.

52

1          I agree fully with the trustee that the trustee

2     holds the debtor's attorney/client privilege particularly

3     when it relates to a matter that seeks to augment the

4     estate.

5          Now, this letter states that -- in part the black

6     lined version states -- and to take instructions from him,

7     meaning the trustee, in relation to my claim in the UBS

8     litigation regardless of any attorney/client privilege, work

9     product, or other privilege which belongs to me.

10         I would suggest that the word may be inserted,

11    which may belong to me, and then the following sentence.

12    Any waiver of privilege is limited to the provision of this

13    information to the trustee.  My consent is limited to giving

14    full access to the trustee and is not a consent by me to

15    allow the trustee to waive the privilege.

16         I don't want that sentence to be taken to mean

17    that we need Mr. Kwok's allowance to the trustee to waive

18    the privilege.  The privilege belongs to the trustee in the

19    first instance.

20         So I would suggest if it wouldn't upset the

21    agreement that the trustee reached, or apparent agreement

22    the trustee reached with the U.K. firm that these provisions

23    be massaged somewhat to -- not be taken to concede that it's

24    the trustee that has the privilege.

25         MR. HENZY:  Your Honor, may I be heard?

1        THE COURT:  Yes.

2        MR. HENZY:  Thank you.

3            Mr. Goldman can hope, we can all,  but I will tell

4     you that that letter I'm aware has gone through several

5     iterations between U.K. counsel and Mr. Despins' firm.  And

6     I think the U.K. counsel is taking a pretty careful approach

7     and they're -- they are very concerned about their own

8     professional obligations.

9            In response to something that Mr. Goldman said,

10    the trustee holds the privilege.  We're talking about

11    privilege under U.K. law, Your Honor.  We're not talking

12    about attorney/client privilege under U.S. law.

13           There's new litigation pending in the U.K.  Mr.

14    Goldman may have some expertise on privilege under U.K. law.

15    I'll admit I have none.  I'm relying on what U.K. counsel

16    has stated to me.

17           So I don't think it's as simple as this is what

18    the bankruptcy code says when a trustee is appointed vis-a-

19    vis privilege.

20           There's a -- how the privilege works in the U.K.

21    is how it works in the U.K.  So I don't think -- I don't

22    know that anybody on this hearing can with any authority

23    speak on that, on how the privilege works in the U.K.

24           So I think -- I think it's dangerous to -- to be

25    -- I'm trying to wordsmith -- when we frankly don't know

1    that we really know we're talking about.

2              MR. DESPINS:  Your Honor, if I may?

3              I totally feel Mr. Goldman's pain.  I feel the

4    same pain.  He is correct.  Except that here, you know, this

5    is -- I think this could turn out to be a fool's errand,

6    meaning that they could play a game where the letter is sent

7    and they say, oh, we're not going to share anything with you

8    because he hasn't waived the privilege or anything like

9    that.  Of course, we'll be back to Your Honor.

10             The important thing is Your Honor or the trustee

11   are not taking the position.  The letter is being sent by or

12   is supposed to be sent by Mr. Kwok to counsel and that's his

13   letter.

14             We're not -- the trustee is not taking the

15   position that that's the correct view under U.S. law.  It is

16   my price of admission apparently to see what's behind the

17   curtain.  And if it's there's nothing behind the curtain,

18   I'll be back to Your Honor.  I hope that I will see what's

19   behind the curtain.

20             And I think the same thing as Your Honor.  But

21   because you're directed to send the letter doesn't mean that

22   you agree that I don't have access to the privilege.  It's a

23   -- it's a practical solution.  And I am -- this will be rare

24   event.

25             I would be aligned with Mr. Henzy on this.  I

1    would not try to wordsmith the letter today on this if we

2    can.  And I am not naive.  I know this -- this could be a

3    setup where, in fact, there's nothing behind the curtain and

4    I'll be back before Your Honor.

5           Your Honor is not ruling that the privilege does

6    not belong to me.  It's just directing the debtor to send

7    that letter.  So I want to be --

8           So, Mr. Goldman, I understand his point

9    completely, but I would urge the Court not at this stage to

10   play with the language.

11          Thank you.

12          THE COURT:  Thank you.

13          MR. GOLDMAN:  Your Honor, I think with that, with

14   that caveat, you know, I think I would be fine as long as we

15   recognize that no ruling here -- there's no ruling on

16   whether the trustee holds a privilege and -- or whether it's

17   Mr. Kwok.

18          I think there is an issue, given that this is an

19   asset of a bankruptcy estate in the U.S., whether, you know,

20   it's U.S. or U.K. law that governs a privilege -- but we --

21   I agree with Mr. Despins that it's not necessary to make

22   that determination today.

23          THE COURT:  And the motion doesn't ask --

24          MR. HENZY:  I think it's really not necessary

25   because --

1        THE COURT:  The motion doesn't ask for --

2        MR. HENZY:  -- as I said --

3        THE COURT:  Hold on a second, Attorney Henzy.

4        And the motion doesn't ask for that determination

5   to be made.  So I'm not making that determination.

6        Sorry, Attorney Henzy.  Go ahead.

7        MR. HENZY:  Well, Your Honor, actually the motion

8   doesn't address the Harcus Parker issue at all in any way,

9   shape or form.

10        We can argue about whether the action on BVI is

11   incidental to the motion that was filed, and I think it

12   wasn't, but I don't think there really is an argument that

13   the Harcus Parker issue is part of that motion.  It's just

14   not there, Your Honor.

15        And I'll say again I think that the right way to

16   do this where, you know, it may be that we can get to a

17   productive place, and this -- this is not it.

18        In terms of talking about the contents of the

19   letter, Mr. Kwok is not going to waive, voluntarily waive,

20   attorney-client privilege.  He's not going to do it.  And as

21   I said I'm not going to compel him to do it.  So it may be

22   that if you're going to enter an order we're going to get to

23   -- we're going to get to a contempt, but he's not going to

24   do it.

25        So I don't know how much time we need to spend on

1    the language of that, of that letter.

2              THE COURT:  Well, I'm going to take a recess until

3    3:30.  And then we'll come back and see if you've had any

4    discussions.  And if not, we'll go from there.

5              MR. HENZY:  Right.  Thank you, Your Honor.

6              THE COURT:  All right.  Court is in recess until

7    3:30.

8              (Recess from 2:25 p.m. until 3:31 p.m.)

9              THE COURTROOM DEPUTY:  The United States

10   Bankruptcy Court in the District of Connecticut is now in

11   session after recess.  We remain on case number 2022-50073,

12   Ho Wan Kwok.

13             THE COURT:  Okay.  Good afternoon.  We're back

14   after recess.

15             When we took a recess, the parties were going to

16   attempt to talk and look at a proposed order that was filed

17   on the docket today by the Chapter 11 trustee.

18             So, Mr. Despins, where do things stand after a

19   recess?

20             MR. DESPINS:  I'll let Mr. Henzy provide more

21   detail because it's really the ball is in his camp.  But we

22   -- we did talk about one aspect -- well, we talked about all

23   aspects, but one might be resolved, so maybe Mr. Henzy can

24   address the Court on this.

25             THE COURT:  Okay.  Thank you.

58

1              Mr. Henzy?

2              MR. HENZY:  Sure.  So, Your Honor, with that

3      additional paragraph 9, you know, the Court -- the Court

4      enters an order directing Mr. Kwok to sign these -- the BVI

5      share transfer document and the resolution and the -- the

6      so-called Transfer-In Pack of Harneys Fiduciary, that Mr.

7      Kwok is going to do that.

8              Just for the record, I believe that, you know, the

9      trust agreement itself does prohibit Mr. Kwok from

10     transferring the shares, but he is not doing so voluntarily.

11     He's being forced to by a court.  Whatever flows from that

12     flows from that I believe.

13             And whatever other rights any party has as a

14     result of Mr. Despins becoming the -- whatever he's

15     becoming, the legal owner, trustee under a trust, et cetera,

16     whatever he is, flow from that, I just -- the debtor is not,

17     you know, certainly not opining on what may flow from it.

18     And I don't think I want the debtor to be accused of having

19     failed to fully inform people or anything like that.

20             But all that being said, with that paragraph 9,

21     the debtor is not going to object to the entry of that

22     portion of the order.

23             THE COURT:  Okay.  Thank you.

24             MR. DESPINS:  Your Honor, just two seconds on

25     this.

1          The transfer occurred on July 8th when I was

2     appointed.  The bankruptcy code made that transfer happen.

3     What we're doing here is we're documenting the transfer.

4     Again, you own the car.  The car became the trustee's car,

5     not personally, but in a trustee capacity, and now we're

6     dealing with the registration to make sure it's endorsed and

7     all that.

8          The transfer occurred on July 8th by operation of

9     law.  I think that's very important to -- to understand

10    that.  But, you know, it is what it is.  So we're -- I think

11    we're happy that this aspect of it was resolved.

12         MR. HENZY:  And just for the record, I hear Mr.

13    Despins' position.  I don't agree with it.  But, again, this

14    aspect of it is resolved because Mr. Kwok, upon being

15    ordered to do so, is going to sign these documents.

16         THE COURT:  Okay.  Then what is left is the issue

17    of the letter to counsel in -- to the firm in London.  Is

18    that the remaining issue?

19         MR. HENZY:  So, Your Honor, just to be clear, I

20    had filed -- after the motion itself was filed, but before

21    the revised proposed order was filed, I filed an objection

22    raising other objections and I have not waived those

23    objections.

24         I know at the last hearing you told me that -- and

25    I can't remember your exact words, you were inclined or you

60

1    had -- to overrule those objections.  But I want to be clear

2    that I am not waiving those objections.  That I'm pressing

3    those objections.  And I'm happy to be --

4              THE COURT:  Well, let's make the record clear then

5    because --

6              MR. HENZY:  I would like to be --

7              THE COURT:  -- I need to know what you're

8    objecting to.

9              MR. HENZY:  Thank you, Your Honor.

10             THE COURT:  You're objecting to the fact that Mr.

11   -- that Mr. Despins didn't file an adversary proceeding to

12   have the property turned over to him?

13             MR. HENZY:  Your Honor, I think that issue is

14   resolved.

15             THE COURT:  Well, I need to know that.  When you

16   say you think that issue is resolved, if it's not, I'm going

17   to rule on it, so you need to tell me whether it's resolved.

18             MR. HENZY:  Now, Judge, I'm sorry.  I think I was

19   being unclear.

20             The argument that this needs to be done by

21   adversary proceeding, that argument has gone away because

22   that related to this share transfer that we just told you is

23   resolved and going to happen.

24             So when I'm referring to my other objections, if

25   dial back to the motion as originally filed -- give me one

1    second, Your Honor --

2              THE COURT:  Sure.

3              MR. HENZY:  -- the motion as originally filed,

4    which is document 598 --

5              THE COURT:  ECF 598.  Right.  And you're saying

6    you still want to preserve your objection that the trustee

7    didn't specifically reference section 521 of the code?

8              MR. HENZY:  No.  So, Your Honor, on July 29, I

9    filed an objection.  It's document number 643.

10             THE COURT:  Yes.  I understand.

11             MR. HENZY:  Okay.  Okay.  And I raised objections

12   to the relief that was originally sought in the motion that

13   has nothing to do with Harcus Parkus -- I keep saying Harcus

14   Parkus, which sounds terrible -- but Harcus Parker and then

15   the share issue that we resolved.  I raised other objections

16   that we haven't talked about at all today.

17             THE COURT:  Okay.  Well, go ahead then.

18             MR. HENZY:  And, again --

19             THE COURT:  I want to know what it is specifically

20   you are still objecting to.

21             MR. HENZY:  Okay.  And maybe, Your Honor, the --

22   to try to be -- to try and like to be clear, I am objecting

23   to -- give me one -- I'm sorry, Your Honor.  Give me one

24   second.

25             THE COURT:  That's fine.

1           (Pause)

2                 MR. HENZY:  I'm sorry. I'm getting all these

3       orders straight.

4                 So in the objection that I filed on July 29, if I

5       -- if I look at the -- the easiest way to organize it might

6       be the order that was filed this afternoon just before the

7       hearing, which is document no. 681.

8                 THE COURT:  Yes.  Go ahead.  I'm listening.  I'm

9       not sure where you're going.  I thought we were going to --

10                MR. HENZY:  Okay.  I just want --

11                THE COURT:  -- talk about what you're --

12                MR. HENZY:  I want -- Judge, I'm sorry.  I just

13      wanted to try to tie back to the objection I filed on July

14      29.

15                THE COURT:  Okay.

16                MR. HENZY:  Okay.  It's paragraph 2 -- and this is

17      -- this is -- putting aside --

18                THE COURT:  Paragraph 2 of what, the order or your

19      objection?

20                MR. HENZY:  Of the order.

21                THE COURT:  Paragraph 2 of ECF 681.

22                MR. HENZY:  Correct.

23                THE COURT:  You're objecting to what?

24                MR. HENZY:  Okay.  I'm objecting to paragraph 2,

25      although, again, we've dealt with the BVI issue.

1          But this, the relief sought here asks for very

2     broad relief with respect to entities that are not

3     specified, the authority to replace any existing officer,

4     director, manager or similar person.

5          So Mr. Despins is seeking this court to give him

6     authority over entities that are not specified without

7     regard to those particular entities, what applicable law,

8     non-bankruptcy law governs those entities and what the

9     organization documents of those entities might provide.

10         I don't think, Your Honor, that this works.  I

11    think that this type of authority -- with Mr. Despins, I

12    think he has the authority that he has, and this goes -- and

13    I'm not disputing any particular authority he has with

14    respect to any entities because I don't know what entities

15    we're talking about.  But what this provision would do is

16    give him authority that may not be provided for under

17    applicable non-bankruptcy law and the governing documents of

18    particular entities.

19              THE COURT:  Can't that just be --

20              MR. HENZY:  And the cases that Mr. --

21              THE COURT:  Can't that just -- can't we just fix

22    that problem by saying that -- you're talking about for the

23    avoidance of doubt language, that sentence?

24         For the avoidance of doubt, that foregoing rights

25    include the trustee's asserted authority.  He's asserting he

1    has the authority.  If he doesn't and he does something

2    wrong, then you can sue him.

3          MR. HENZY:  Actually, Your Honor, I mean, I think

4    I put this in my response, which is, if this paragraph had

5    just been made -- made subject to applicable non-bankruptcy

6    law and the governing documents of these entities, then I --

7    then I would have no objection to this provision.

8          Again, I'm not trying -- I'm not trying to create

9    an issue here.  I really am not.  But I think that that is

10   the correct statement of law.  He has whatever authority he

11   has as trustee, but with respect to any particular entity,

12   it is subject to applicable non-bankruptcy law and the

13   governing documents of that entity.  That's all.

14         MR. DESPINS:  Your Honor, if we do, we do.  If we

15   don't, we don't.  But I don't want to open satellite

16   litigation over these issues with the debtor because that's

17   how the fees are going to be -- you know, going to get out

18   of control in this case.

19         The reason we asked for blanket authority is

20   because we will not exercise that right unless we believe

21   through due diligence we have the power to do it.  And if

22   we're doubtful, we'll come back to the Court.

23         But we cannot be in a position where there's a

24   satellite litigation open whether -- what state law

25   provides, what foreign law provides, because that's a --

1    that's going to be another case basically.

2              MR. HENZY:  Judge, the last thing that Mr. Kwok

3    wants to do is engage in litigation over how these entities

4    are going to be governed.

5              But if Mr. Despins is saying to you he -- after

6    doing his diligence, that he would only do what he has the

7    power to do, then I don't know -- all I want is to say that

8    in this order, but I think that's not what this order says.

9              THE COURT:  Well, I think that a --

10             MR. HENZY:  It goes -- it goes beyond that.

11             THE COURT:  -- I think my suggestion works.  For

12   the avoidance of doubt, the foregoing rights include the

13   trustee's asserted authority to replace any existing

14   officer, director, manager or similar person of the debtor-

15   control entities.  And then the next sentence says as part

16   of the foregoing.

17             So the point is he's asserting he has this

18   authority.  He's acting as a trustee.  So that's what he's

19   asserting.  And that's what I'm going to -- I'm going to add

20   the word assert.  And that's all I'm going to change in

21   paragraph 2.

22             MR. HENZY:  Thank you, Your Honor.

23             Just to be clear, I'm not -- I am not -- I am

24   pressing my objection to that, that language.

25             THE COURT:  Understood.  That objection's

1    overruled.

2              So what's your next objection?

3              MR. HENZY:  Okay.  Again, I'm trying to simplify

4    here, Your Honor.  Is I have no objection on -- to the first

5    decreedal paragraph of paragraph 3.

6              And then now with this resolution on BVI that we

7    had just told you about, to that -- then that -- as you go

8    over to page 3, that little (a), I have no objection to that

9    paragraph.  Then that's been resolved.

10             The next paragraph down on that page, paragraph

11   (b), we've discussed that at length, the -- on the U.K.

12   issue, the UK/UBS litigation issue and I maintain my

13   objection on that issue.

14             On paragraph --

15             THE COURT:  Hold on.  Just wait a minute.  I'm

16   just writing this down.

17             So what else are we going to discuss about (b)?  I

18   think the arguments have been made, correct?

19             MR. HENZY:  I think the arguments have been made,

20   Your Honor.  I don't want to belabor anything.

21             THE COURT:  Okay.

22             MR. DESPINS:  But, Your Honor, I just want to add

23   briefly to that the only privilege information we're seeking

24   is with respect to the merits of the affirmative claims of

25   Mr. Kwok against UBS.  No other issues.

1          So, for example, crazy example, Mr. Kwok, in the

2     context of that representation, said, oh, by the way, I've

3     transferred an interest in a private jet to my daughter.

4     I'm not -- I'm not seeking that.  That's not part of the

5     affirmative claim of Mr. Kwok against UBS.

6          So that privilege that the -- that Your Honor is

7     directing him to send a letter about is the privilege

8     regarding that litigation, that affirmative litigation,

9     only.  I want to make sure the record is clear about that.

10         MR. HENZY:  And, Your Honor, I'd like to be clear.

11    I understand Mr. Despins' position.  I'd like to be clear

12    that I believe Mr. Despins owns whatever -- I assume, again,

13    I don't know U.K. law -- he owns whatever privilege he owns

14    and Mr. Kwok has whatever privilege he has, if any.

15         And Mr. Kwok is -- to the extent he has any

16    privilege, he is not going to waive it.  But, again, I think

17    we've made -- I've made the argument that I have to make on

18    that.  I think.

19         THE COURT:  Okay.  The objection to the language

20    in paragraph (b) on page 3 of the proposed order is

21    overruled.

22         MR. HENZY:  Thank you, Your Honor.

23         THE COURT:  So what's your next objection?

24         MR. HENZY:  On paragraph 4, on page 4, Your Honor,

25    that essentially is a blanket authorization to the trustee

1   to act outside of the ordinary course of business with

2   respect to so-called debtor controlled entities.  And I

3   object to that.  Frankly, I've never heard of or seen that.

4          My understanding of bankruptcy code Section 363 is

5   that when a debtor trustee -- debtor or trustee -- debtor-

6   in-possession or trustee wants to act out of the ordinary

7   course of business, they need to notice a hearing, come and

8   ask for the Court's authority to do that.  And this would

9   make it so that there doesn't have to be notice and a

10  hearing.

11         And, again, this is a blanket authority.  And I

12  think that is not provided for in the code.  I think that is

13  just extraordinary relief and I don't think it's

14  appropriate.

15         MR. DESPINS:  Your Honor, on that point, it's the

16  same argument as to applicable law.  We don't want to be in

17  a position where later it is argued that we acted outside of

18  the ordinary course of business.

19         And the safe valve -- the safety valve, is at the

20  end of paragraph 4 where it says for the avoidance of doubt

21  nothing in this order authorizes the trustee to sell,

22  otherwise dispose of, lease or encumber any equity in debtor

23  controlled entities or other assets of the debtor.

24         So, yes, the language is broad, but then it's

25  completely narrowed at the end to avoid the type of concerns

1    that have been raised.

2            The reason we need the opening language is we

3    don't want to be in a position where we're litigating over,

4    well, you know, you terminated or you removed a director, an

5    officer.  You shouldn't have done that.  That's not --

6    that's not in the ordinary course of business, and we have

7    all these satellite litigation over whether we acted within

8    -- with or without it.

9            We believe that we should get both reliefs as long

10   as the safety valve is in there which protects the estate,

11   no sale, no lease of property without a court order.

12           Thank you.

13           THE COURT:  Does anyone else --

14           MR. HENZY:  I see -- I see the limitation, Your

15   Honor, but I still think -- I don't think there's any such

16   thing as blanket authorization to act out of the ordinary

17   course under 363.

18           MR. DESPINS:  That solely to exercise corporate

19   governance rights, Your Honor.  Nothing else.

20           MR. FRIEDMAN:  Your Honor, may I be heard -- it's

21   Peter Friedman -- for just a moment?

22           The order that was originally proposed did not

23   include that language that Mr. Despins put in and we thought

24   it was extremely important.

25           And, you know, I think had that language not been

1    in there, as creditors, we would have objected.  But we

2    found that that addition to be -- to represent I think an

3    extremely good faith move by the trustee in balancing the

4    economic interests of creditors, which I think has to be

5    paramount, with efficiency.

6            So we strongly support the inclusion of that

7    particular paragraph with the protective language that was

8    added at our request.

9            THE COURT:  Thank you.

10           Does anyone else wish to be heard on paragraph 4?

11       (No audible response)

12           THE COURT:  Okay.  I'm just reading the language

13   again.

14       (Pause)

15           THE COURT:  Okay.  Anything further from anyone on

16   paragraph 4?

17       (No audible response)

18           THE COURT:  While I understand the objection,

19   Attorney Henzy, I'm overruling it because I think that the

20   language -- it is specific to the economic and governance

21   rights with respect to the debtor-controlled entities.  And,

22   you know, if litigation ensues about that, then it can

23   ensue.  But we're not going to -- it is -- it is qualified

24   by the last sentence and I think it's protective enough of

25   the debtor.

1          MR. HENZY:  Thank you, Your Honor.

2          THE COURT:  So what is your next objection?

3          MR. HENZY:  And, Your Honor, great news, I have no

4     objection to paragraph 5.

5          THE COURT:  Okay.  Thank you.

6          MR. HENZY:  On paragraph 6, the -- so paragraph 6

7     provides debtor shall not interfere with, hinder or delay

8     trustee's exercise of authority on this order.

9          I have no objection to the first sentence of

10    paragraph 6.  However, the second sentence would restrict

11    the debtor's ability to seek relief and it would restrict it

12    to seek relief from this court.

13          And I don't -- I don't know that the debtor ever

14    would seek relief.  But because particularly for the fact

15    this paragraph 4 and the broad authority that Mr. Despins is

16    being granted there, I don't know what might occur here.

17          I don't know what rights, if any, the debtor would

18    have to do anything.  But I don't think the debtor -- to the

19    extent that the debtor otherwise would have a right to seek

20    relief, I don't think it should be restricted by this order.

21          So I would ask that the second sentence of

22    paragraph 6 be struck from the order.

23          MR. DESPINS:  Your Honor, same issue.  The debtor

24    is before this court.  He has worldwide assets.  From your

25    perspective you have exclusive jurisdiction over that.  We

1    cannot have the debtor running in foreign courts to assert

2    claims.

3            It may be that he comes, Your Honor, but, you know

4    what, there's a real important twist on the U.K. law

5    regarding issue XYZ there.  And you might decide, yeah,

6    you're right, go for it or something like that.  But

7    everything needs to be centralized in this court by this

8    debtor.  He cannot have satellite litigation elsewhere.  And

9    they have the ability to come to this court for relief.  So

10   that's a very important position, Your Honor.

11           MR. HENZY:  Your Honor, the way this order is set

12   up, Mr. Despins can run to other courts including courts in

13   foreign countries.

14           MR. DESPINS:  That's correct.

15           MR. HENZY:  So the way that this would now be set

16   up is Mr. Despins decides he's going to go to a court in

17   this country or a foreign country and the debtor, even

18   assuming under the law of that foreign country, the debtor

19   has a right to appear and do whatever a debtor is going to

20   do. This order says the debtor can't do that.

21           And it says the debtor I guess would have to come

22   back to you and say to you Mr. Despins is doing this thing

23   in a foreign court and I'm in front of you telling you he

24   shouldn't be doing it because I've been told I can't go to a

25   foreign court to make the argument that under the foreign

1    court law I'm entitled to make.  And that doesn't -- that

2    does not make any sense to me.

3             MR. DESPINS:  Your Honor --

4             MR. HENZY:  If Mr. Despins is going to have the

5    ability without seeking court authority to go to other

6    courts, then -- again, Your Honor, you said it, you take the

7    debtor as he comes.  The debtor should be able to go do

8    whatever the debtor has a right to do under the foreign law.

9             THE COURT:  Well, the problem is --

10            MR. DESPINS:  Your Honor --

11            THE COURT:  -- Mr. Despins is the debtor and so he

12   already has the rights.  He doesn't need authority from this

13   court to do what he's doing in the actions that are already

14   pending in which the debtor is a party.

15            So your argument, while I understand it to an

16   extent, the problem is what right would Mr. Kwok have to do

17   anything in any of those foreign courts if Mr. Despins has

18   now become Mr. Kwok?

19            MR. HENZY:  Well, Mr. Despins is not --

20            THE COURT:  Which you've admitted in your papers

21   that as soon as the filing of -- as soon as the order

22   appointing the trustee was approved, that Mr. Despins became

23   Mr. Kwok.  So what possible rights would Mr. Kwok have?

24            MR. HENZY:  Well, Your Honor --

25            THE COURT:  Mr. Despins has stepped into all of

1    those rights.

2              MR. HENZY:  I think I agree.  I didn't -- I don't

3    think I said Mr. Despins became Mr. Kwok.  And I'm going to

4    guess Mr. Despins doesn't want to be Mr. Kwok, but he

5    absolutely is substituted for Mr. Kwok in any pending

6    litigation.

7              But I don't think that the way this order is set

8    up it's not just pending litigation, Mr. Despins can

9    commence new litigation that the debtor might or might not

10   even be a party to.

11             Now, what rights in particular in a foreign

12   jurisdiction Mr. Kwok might have as a debtor out of

13   possession?  Your Honor, I don't know.  He may or may not

14   have any.  He may not have any rights.  So I don't know

15   because I don't know what jurisdiction we're talking about.

16   I don't know what entity we're talking about.  I don't know

17   what action it is that Mr. Despins would be taking.

18             So I'm perfectly -- look, the way, again, this is

19   set up is Mr. Despins can go do whatever he's going to do,

20   only to the extent that under some applicable foreign law

21   Mr. Kwok would have a right to show up and do something --

22   and he might not, he might not, Your Honor, he should be

23   able to do that.  I don't -- I don't think he should have to

24   come back to this court to find out whether or not he has a

25   right to show up in another court under non-bankruptcy --

1    applicable non-bankruptcy law.

2              MR. FRIEDMAN:  Your Honor, may I be heard for a

3    moment on this issue?  It's Peter Friedman.

4              I think it is really important because I think the

5    issue is, you know, in any premise, Mr. Kwok's going to have

6    to determine if he has standing given the insolvency of his

7    estate.

8              So I think it's actually critical, given that he

9    said he has $3,850, that before he goes to another court and

10   be permitted to litigate, that he actually would show that

11   he would have permission to interfere with the trustee's use

12   of debtor property given his economic -- where the economics

13   of this exist.  I think that's an issue that really has to

14   be made to determine with reference to U.S. bankruptcy law

15   and his rights.

16             So I actually think what Mr. Despins has proposed

17   is extremely appropriate.  It certainly is a prudent measure

18   and one that falls really within core bankruptcy

19   determination as to whether he even has standing to have

20   standing to be heard.

21             MR. HENZY:  Your Honor, just to pose a

22   hypothetical.

23             Let's say Mr. Despins goes to a foreign court and

24   in the foreign court seeks to compel Mr. Kwok to do the kind

25   of things that he sought to do with this order.  He seeks to

Ho Wan Kwok - August 4, 2022                                              76

1    compel him to execute a document, let's say a corporate

2    document.  Then I don't -- I mean, would anyone say that Mr.

3    Kwok wouldn't have standing in that foreign court to tell

4    the judge in the foreign court, well, I shouldn't have to

5    execute this document for whatever reason.

6              And the judge may say, you're wrong, you have to

7    execute the document.  The judge is going to say whatever

8    the judge is going to say.  But how could Mr. Kwok not have

9    the right to show up in that foreign court -- and it's

10   before a judge -- before a judge can say to Mr. Kwok I don't

11   believe you have standing for whatever reason.  And Mr.

12   Despins can tell the judge, the foreign judge, Mr. Kwok

13   doesn't have standing.

14             So how can Mr. -- in my hypothetical, how can Mr.

15   Kwok not have the ability to show up in court and

16   potentially defend his rights to the extent that he has any?

17             MR. FRIEDMAN:  Your Honor, I won't speak for Mr.

18   Despins, but I don't understand the order as depriving Mr.

19   Kwok of the ability to defend himself if there's a matter in

20   a different court.

21             But if he's seeking to initiate litigation, I

22   think he would certainly have to come to this court.

23             MR. HENZY:  Well, that's not what the order says.

24             MR. DESPINS:  In any event, Your Honor, the point

25   is that the Court has exclusive jurisdiction over Mr. Kwok.

1    He needs to come back to this court.  And, in fact, if there

2    are compelling circumstances, yeah we'll authorize him to go

3    to Australia, for example, to defend some action to see

4    that.

5            The point is that he should not be roaming around

6    and having the ability to disrupt what we're doing around

7    the world without coming to Your Honor to say this is what

8    I'm doing.  I have some particularized injury that somehow

9    I'm able to assert even though I'm out of possession.  Well,

10   that argument should only be made to Your Honor.

11           And then if you find it compelling, you'll send --

12   you'll authorize him to do whatever he wants abroad.  But

13   you cannot have him running around in this.  It's just

14   fundamental, Your Honor.

15           MR. HENZY:  But, Your Honor, arguably what this

16   order is doing though you are giving up a certain degree of

17   jurisdiction to Mr. Despins, meaning you're telling him that

18   he can act out of the ordinary course of business without

19   coming and asking permission from you.

20           But then what Mr. Despins and Mr. Friedman are

21   essentially arguing is but you -- but you hang on with

22   respect -- let's say to the same matter, you hang on to

23   jurisdiction with respect to the debtor.

24           So Mr. Despins can do whatever he wants to do, but

25   Mr. Kwok can't respond to that.  And that seems it should be

1    one way or the other.

2          If Mr. Despins wants to come back and make a

3    motion to act out of the ordinary course of business and the

4    debtor has to respond to that in bankruptcy court, that's

5    okay.  But if he's going to not have to do that, then I

6    think the debtor should be able to show up wherever he's

7    doing things and respond to the extent that he has a right

8    to do so.

9          MR. DESPINS:  Your Honor, the debtor and the

10   trustee are not on equal footing.  This concept that somehow

11   because we have the right to do it they should.  That's not

12   the way it works.

13         THE COURT:  Well, I was going to make that point.

14   The point is Mr. Despins is an independent third party who's

15   been appointed to run the -- administer the estate of Mr.

16   Kwok.

17         It's the -- the language says in the second

18   sentence to the extent the debtor opposes the trustee's

19   exercise of authority, okay, the debtor shall be limited to

20   seeking relief from this court on notice to parties in

21   interest to the extent the debtor can show he has standing

22   to do so.

23         And, unfortunately, given where -- for the debtor

24   -- given what he's stated in all of his filings, and as

25   we've talked before, there is no evidence before this court,

1    and nothing in the record -- in fact, the only things in the

2    record support that the debtor will have no interest in this

3    estate because there won't be any -- a full payment to

4    creditors in this case.  And so there will not be any

5    surplus to which the debtor would have standing to raise

6    such arguments.

7           And if Mr. Despins does something outside of his

8    authority, then the debtor still has the right to make that

9    argument.  But he has to make it here in this court subject

10   to this court's authority over this estate.  And that's one

11   of the, you know, results of the appointment of a Chapter 11

12   trustee.

13          So, again, while I understand your argument, it

14   doesn't foreclose the debtor from opposing the trustee's

15   exercise of authority, but he has to do it in this court.

16          And so I'm going to overrule your objection to

17   paragraph 6.

18          MR. HENZY:  Thank you, Your Honor.

19          Just as an aside, just saying, the damage claim in

20   the UBS litigation in the U.K. is $500 million.  I have no

21   knowledge of the strength --

22          THE COURT:  That claim wasn't listed as an asset

23   of this estate, Mr. Henzy.

24          MR. HENZY:  Oh, no, it was.

25          THE COURT:  No.  It actually wasn't originally.

1          MR. HENZY:  I believe it was.

2          THE COURT:  No.  I think it was not.

3          MR. HENZY:  Okay.  I'll go -- I'll go back and

4     check, but I thought that it was.

5          But in any event, I don't -- I don't think the

6     debtor would dispute at all that to the extent that it

7     wasn't in the schedules, Your Honor, it should have been.

8     And I think the debtor absolutely --

9          THE COURT:  Well, maybe it was.  So let me just --

10    let me go back in the global notes which aren't really notes

11    -- which, again, there's no authority for any debtor, that

12    I'm aware of under the bankruptcy code, under case law,

13    under statute, under local rules, under the federal rules,

14    to file global notes to your -- to your schedules to disavow

15    what you say in your schedules under penalty of perjury.

16    I've never seen or heard of such a thing, but I understand

17    that's now becoming something that people do.

18         But that doesn't -- that doesn't mean that the

19    global notes have any bearing on whether or not Mr. Kwok

20    accurately completed his schedules.

21         All that being said, even if he did list it, it's

22    a $500 million claim with two other plaintiffs, correct?

23         MR. HENZY:  Yes, but --

24         THE COURT:   So it would be split three ways,

25    correct?

1          MR. HENZY:  Under --

2          THE COURT:  And the claim of -- the claim of PAX

3     that your client did put in his schedules, actually on a

4     schedule, is -- he listed it as not less than $254 million,

5     I believe, maybe it's 53.  I haven't looked at it recently.

6          But in any event, the solvency of your debtor, of

7     your client, is still very much at issue in this case.

8          MR. HENZY:  I don't -- I don't disagree with that

9     at all, Your Honor.

10          THE COURT:  Okay.

11          MR. HENZY:  I'm just pointing out that you're not

12     -- I have no idea of what the strength or weakness of the

13     claim in the U.K. is and what percentage --

14          THE COURT:  I understand.

15          MR. HENZY:  -- if that's so.

16          THE COURT:  But he'll have -- he'll have to come

17     back here and explain why he opposes the trustee's exercise

18     of authority.  And he'll be heard.

19          MR. HENZY:  Okay.  Understood.  My objection on --

20     I understood.

21          THE COURT:  Maybe.

22          MR. HENZY:  That objection's overruled.

23          THE COURT:  Depending upon if he has standing,

24     okay, at that point in time.

25          MR. HENZY:  Understood, Your Honor.

1          THE COURT:  So that -- so that, I overruled your

2    objection to paragraph 6, the language in paragraph 6 we

3    just discussed on the record.

4          MR. HENZY:  Thank you, Your Honor.

5          THE COURT:  So what is your next objection?

6          MR. HENZY:  The last objection is on paragraph 7.

7          THE COURT:  Okay.

8          MR. HENZY:  So this asks for an order where --

9    that provides that you request the assistance of foreign

10   courts, including the assistance of the BVI court regarding

11   any request of the trustee for relief with respect to the

12   trustee exercising corporate control over Genever BVI.

13         I would -- I'm absolutely not going to tell the

14   Court what it ought to be telling other judges, but I just

15   -- I think that is very, very broad.

16         And the way I read this is it would sort of give

17   Mr. Despins this court's impromatur to go in front of

18   another judge and say please give this to me -- and Judge

19   Manning tells you that you ought to give it to me, even if

20   you, Your Honor, don't know that -- what it is that he's

21   telling another judge that it is that he wants.

22         THE COURT:  Okay.

23         MR. DESPINS:  So, Your Honor, this type of

24   language is often used in the foreign, you know, foreign

25   representative context.

1    I'm happy -- obviously, you don't know me and you

2    may not be comfortable giving me a blank check and I don't

3    think this is a blank check -- but it's really an indication

4    to foreign courts that it may not be (indiscernible) as U.S.

5    courts that this court is requesting their assistance not to

6    do something illegal or inappropriate, but in requesting

7    their assistance.

8         That's kind of run of the mill language, but I was

9    always told never raise section 105 in front of Judge

10   Manning, so I'm not going to raise it.

11        But it's something along those lines.  So if you

12   -- I'm happy with it or without it.  I'd rather have it in,

13   but I'm not going to -- I don't want to put you in a

14   position where you don't feel 100 percent comfortable with

15   that.

16        THE COURT:  Well, I mean, I think that the section

17   in Chapter 15 -- you know, the whole purpose of Congress

18   making Chapter 15 part of the code in 2005 was to

19   acknowledge, you know, cross border cases and try to have

20   cooperation between the foreign courts and foreign

21   representatives.  Okay?

22        So I think we could -- we could say in furtherance

23   of the trustee's exercise of authority of this order, the

24   Court respectfully requests the assistance of foreign courts

25   with respect to the trustee's exercise of corporate control

1    over debtor entities, including Genever BVI.  I don't think

2    there's --

3              MR. DESPINS:  Absolutely.  Good point.

4              THE COURT:  -- any problem with that.  I mean.

5    And I think that it -- I mean, I think in the -- there have

6    been cases in this district where an order like that has

7    entered with regard to proceedings in other -- outside of

8    the United States.

9              So I don't -- I think I could change -- Mr.

10   Despins, do you have any problem -- I didn't write down

11   exactly what I just said --

12             MR. DESPINS:  No.

13             THE COURT:  -- but would the -- with the change

14   that I described?

15             MR. DESPINS:  We'll make that change, Your Honor,

16   if you want.

17             THE COURT:  Okay.

18             MR. DESPINS:  Or it's up to you.

19             MR. HENZY:  And, Your Honor, just for the record,

20   I am -- if the Court's comfortable with the language, I'm

21   not going to press an objection on that issue.

22             THE COURT:  All it's --

23             MR. HENZY:  Again, that --

24             THE COURT:  All it's asking for, and I believe is

25   appropriate, is that because Congress decided to make

1   Chapter 15 a separate and distinct chapter in the code that

2   they're trying to recognize the cooperation between courts

3   that might be necessary for a case in one jurisdiction to be

4   carried out with respect to related proceedings in another

5   jurisdiction outside of this country.

6           So I don't have a problem with it, with the

7   changes as I've just described them.

8           MR. HENZY:  Understood, Your Honor.

9           THE COURT:  Okay.

10          MR. DESPINS:  We'll make the change, Your Honor.

11          THE COURT:  Thank you.

12          MR. HENZY:  Last issue, Your Honor -- and I'm not

13  trying to go back and argue the --

14          MR. DESPINS:  I thought it was the -- that was the

15  last issue.

16          MR. HENZY:  There's one more.  I'm not -- I'm not

17  trying to go back.  On paragraph 3, so back on page 3, this

18  is the Harcus Parker letter, what this says is that the

19  debtor is directed to deliver no later than two business

20  days after the entry of this order.  Well, there's a couple

21  of issues with that, Your Honor.

22          The copy of the letter and the form attached as to

23  Exhibit B to what's in front of you has -- as I understand

24  it, that has not been agreed to by Harcus Parker.  So you're

25  kind of in some sense --

1        THE COURT:  I just have a question about that

2   though because Trustee Despins said that this is the letter

3   he got back from them, so how would they not agree to it?

4        MR. DESPINS:  It's a letter.  What I said is the

5   letter we got back from them with some minor changes that we

6   made.  But in the event, I'll deal with that, meaning if

7   they -- if they say -- I think the changes we made are --

8   and by the way, we did send them earlier today a -- the

9   changes we made, so they've seen them.  We haven't heard

10  back from them.

11       But if it's an issue, we'll fix it, meaning,

12  that's not Mr. Kwok's issue, meaning, we have the letter as

13  we submitted it to Your Honor and we'll see what they say.

14  And if it needs to be modified, we'll just file a

15  supplement.  It would be very, very -- a very minor change

16  really.

17       MR. HENZY:  I guess -- so I'm not clear if -- so

18  he's going to be -- Mr. Kwok's going to be ordered to sign a

19  letter that U.K. counsel may tell us is not acceptable.

20       I don't want to be in a situation where Mr.

21  Despins is negotiating for three days with the U.K. counsel

22  on what a letter might say and this says he has to sign --

23       THE COURT:  So I think what you're saying,

24  Attorney Henzy, is you just don't want the Court to enter

25  the order until you see the final version of the letter.  Is

1    that what you're saying?

2             MR. HENZY:  Or at least until there -- yes, until

3    there is a final version.  Yes, until there is -- right now,

4    as I understand it, there is no final version.

5             But then the second point is -- as I said earlier,

6    Mr. Kwok is not going to sign this letter.  This provides

7    that he must do so within two business days of whenever the

8    letter is actually finalized and complete.

9             And I just -- you know, I -- we will be filing an

10   appeal.  We will seek a stay pending appeal.

11            I just -- I don't want Mr. Kwok to be in contempt

12   because he has not -- he has not signed this order.  I just

13   want -- so I just wanted to alert the Court.

14            I would -- I guess I don't know why there's a rush

15   of two business days.  I don't know what's going to happen

16   in two business days, you know, and why there couldn't be a

17   little longer period of time so that Mr. Kwok can get his

18   appeal filed and file whatever motion for stay pending

19   appeal he's going to file.

20            I just don't want to have an unnecessary fire

21   drill, Your Honor.  If the order ends up not being stayed

22   and he -- and he's not signing it, then whatever

23   consequences from that will flow from that.

24            But I don't -- I don't know how realistic it is

25   going to be that we're going to be able to get in front of

1    Your Honor within two business days on a motion for a stay

2    pending appeal.  That's all.

3              And, again, I don't -- I would ask that this be a

4    longer period than two days.

5              MR. DESPINS:  So, Your Honor, we -- I understand

6    your concern and I share your concern to be sure that the

7    changes we made were stylistic only.

8              But, you know, given where this is heading, we

9    should have precision.  So what we should do is -- I'm just

10   kind of thinking out loud here what's the best way to handle

11   this -- I mean, there will be a letter.  There should be a

12   final letter.

13             And maybe the order can provide that we will

14   provide the letter in the final form within X days and the

15   debtor will have Y days to -- to do it.  Y number of days to

16   do it.  And the letter will be substantially in the form

17   attached.  So we can submit an order that will address that

18   issue, that exact issue, Your Honor.

19             And understand that precision -- we shouldn't --

20   we should be careful about this and have more precision

21   rather than that.  I understand your point, Your Honor.

22             THE COURT:  Do you have any objection to extending

23   the two days to a longer period of time for the debtor?

24   He's not going to sign it, but I guess what he's saying is

25   he wants the -- he's going to be filing an appeal so -- I

1    don't --

2                MR. DESPINS:  Sure.

3                THE COURT:  I don't have an opinion either way.  I

4    was just asking you the question.

5                MR. DESPINS:  Your Honor -- and the answer is of

6    course.  I mean, whatever you, Your Honor, feels is a better

7    period of time we'll obviously go with that.

8                Generally we want to get the show on the road

9    regarding that claim, but two versus four days is not going

10   to, you know, break the bank.

11               THE COURT:  Mr. Henzy?

12               MR. HENZY:  I'd ask for five business days.  That

13   I don't -- I don't know when exactly this is all going to

14   happen.  I don't know what will be going on in my life.  I

15   don't know what will be going on with the Court.  I don't --

16   I don't think a day or two one way or another --

17               MR. DESPINS:  You know, five business days is

18   fine, Your Honor.  Thank you.

19               MR. HENZY:  I just --

20               THE COURT:  Five days did you say, Mr. Despins?

21   That's fine?

22               MR. DESPINS:  Yes, Your Honor.

23               THE COURT:  Okay.  Then there you go.  You've got

24   five days, Attorney Henzy.

25               MR. HENZY:  And, Your Honor, again, I -- because I

1    don't want to have parties, you know, pointing at me or

2    pointing at Mr. Kwok, I think this is going to be a mess,

3    okay, in terms of getting this letter done.

4          The Harcus Parker lawyer told me that a

5    prerequisite to her ever agreeing to do anything is that any

6    waiver by Mr. Kwok would have to be voluntary.  And this is

7    not going to be voluntary.

8          I'm not telling her what position she should take

9    based on that.  Mr. Kwok is not communicating with her.  So

10    I don't -- what her response to Mr. Kwok being ordered over

11    the objection to sending this letter, I, you know, that's

12    not my -- that's not my thing.  That's not Mr. Kwok's thing.

13    The U.K. lawyer is going to react however -- they going to

14    react however they react.  Okay?

15          MR. DESPINS:  I understand that, Your Honor.  And

16    the point is that there's a certain limit to what we're

17    going to allow these folks to dictate.

18          If they get a letter from someone regardless of

19    whether a court orders them to do it or not -- and by the

20    way, this is moot because he's saying he's not going to sign

21    the letter.  So, you know, we're arguing -- we're --

22          THE COURT:  Right.  He's not going to sign it

23    anyway.  Right.

24          MR. HENZY:  Well, but the -- there just may never

25    be a letter.  That's all.  I mean, at some point, I

Ho Wan Kwok - August 4, 2022                              91

1    understand --

2              THE COURT:  Oh, no.  I think there'll be a letter.

3    The point is your client's already stating he's not going to

4    sign it.  He's not.  He's already stating through you that

5    he's not going to comply with this court order.

6              MR. HENZY:  And, Your Honor --

7              THE COURT:  And it hasn't even entered yet, but

8    he's not going to comply with it.

9              MR. HENZY:  He's not going to voluntarily waive

10   his privilege, Your Honor, to the extent he has any.

11             But I think -- the point I'm trying to make is a

12   letter, I understand Mr. Despins at some point is going to

13   put a letter in front of you and that letter may not be

14   agreed to by the Harcus Parker firm.  That's all.  Because

15   the Harcus Parker --

16             THE COURT:  He's not going to put a letter in

17   front of me that's not agreed to by that firm.  They're the

18   ones that have prepared it.

19             MR. HENZY:  No, they haven't.

20             THE COURT:  They're the ones who have made the

21   final comments to it.

22             MR. HENZY:  Your Honor, I don't know what they're

23   going to do.  If they understand that the debtor is not

24   voluntarily waiving, they make take the position we're not

25   -- we're just not doing it.  Okay.  I don't know that, Your

1    Honor.

2             THE COURT:  Well, then, Mr. Despins will have to

3    deal with that.

4             MR. HENZY:  Okay.

5             THE COURT:  If he doesn't have a letter, then

6    there isn't any five days to worry about.  If he doesn't get

7    a letter from them, then you -- there's nothing -- then your

8    client won't be in violation of a court order because there

9    wouldn't be a letter --

10            MR. HENZY:  Okay.

11            THE COURT:  -- for him to have to sign to deliver

12   to them.

13            MR. DESPINS:  No.  Actually, Your Honor, I think

14   -- at one point we will need a letter from the debtor,

15   because otherwise these lawyers would just keep us in limbo.

16            What's going to happen is that if the debtor

17   refuses to sign the letter, we'll have a court order.  We'll

18   go to U.K. court.  It will cost a lot of money and all that,

19   but we'll go to the U.K. courts and seek relief from the

20   U.K. courts against these lawyers who are refusing to give

21   us access even if there's a letter from the debtor that says

22   you need to give them access.

23            But, again, I -- you know, we're arguing over a

24   letter that the debtor says we'll never -- they will never

25   sign anyway, so, you know, I think that's -- let's get to

1    that point first.

2              MR. HENZY:  I'm comfortable with the Court saying

3    if there's no -- if there's no letter the firm is agreeing

4    to there's nothing for the debtor to do.

5              MR. DESPINS:  No.  Your Honor, because that's

6    giving -- that's --

7              THE COURT:  Well, that's not what I said.  I said

8    then the five days doesn't matter.

9              MR. HENZY:  Okay.

10             THE COURT:  If there's no letter, than the five

11   days doesn't matter.  That's what I said.  You asked for

12   more time.

13             MR. HENZY:  Yeah.  Yeah.

14             THE COURT:  He's agreed to more time.  Then you've

15   now said, what you've also said on many times during the --

16   during this day that your client's not going to sign the

17   letter.

18             MR. HENZY:  Yes.

19             THE COURT:  So I said if he's not going to sign

20   the letter, then he's going to be in violation of the court

21   order.

22             MR. HENZY:  I'm positing a situation where there

23   is not a letter that the firm in the U.K. has agreed to.

24   That's all.

25             MR. DESPINS:  And the firm in the U.K. cannot be

1    the ultimate arbiter of what happens in this case.  We've

2    given them a lot of leeway.

3              And Your Honor is not going to give a U.K. lawyer

4    control over privilege in this case.

5              So we're willing to work with them.  And we're

6    doing that.  But, you know, Mr. Henzy cannot use their

7    ability to derail the process as a defense for him, his

8    client, not signing the letter.

9              MR. HENZY:  I'm not using anything to derail the

10   process here, Your Honor.

11             Your Honor, if you -- I understand that if there

12   is a letter and you order -- whether the U.K. firm has

13   agreed to the letter or not, and you order Mr. Kwok to sign

14   that letter that his five days will start to run.  I

15   understand that.

16             MR. DESPINS:  That's all I'm asking.

17             And, Your Honor, we would propose to revise the

18   order to deal with the letter and all that.  So we will do

19   that if Your Honor will authorize us because we need to fix

20   the order.  You suggested better language elsewhere so we

21   need to do that and we will do that with your permission.

22             THE COURT:  Yes.  You have my permission to do

23   that.  And do you think you will get that order to the Court

24   tomorrow?

25             MR. DESPINS:  Yes, Your Honor.

1          THE COURT:  Okay.  Or Monday?

2          MR. DESPINS:  From our point of view, yes.  We

3     will do our best to do that, yes.

4          THE COURT:  Or Monday.

5          MR. HENZY:  Can I have some time -- I would like

6     some time just to review the order, Your Honor.

7          MR. DESPINS:  Yes.

8          MR. HENZY:  Okay.

9          THE COURT:  Well, we've just gone through what the

10    order is going to say.  We've gone through every paragraph

11    including every one of your objections, which were

12    overruled.  I've stated all the rulings on the record.

13         MR. HENZY:  I would like to just put eyes on the

14    order, Your Honor, just -- I'm not -- I completely trust Mr.

15    Despins, that he's going to accurately make the changes that

16    we talked about, but I just am in the practice of wanting to

17    see the final order.  That's all.  I'm not saying I'm going

18    to object to it or anything like that.

19         THE COURT:  But then if you disagree, we're going

20    to have another hearing.  That's what -- that's what you're

21    trying -- that's what you're saying.  You're saying you --

22    if something -- if something doesn't comport with what you

23    think it is, then we're going to have another hearing.

24    That's what you're saying.

25         MR. HENZY:  Yes.  But that's all because --

1          THE COURT:  Well, I'm not going to have another

2     hearing.  I've ruled.  I've ruled what the order's -- what

3     the order needs to say.  We've gone through it.

4          You just spent the time.  You said to me -- this

5     is what you said -- I asked you what your objections were to

6     the relief.  And I went back and I started with so you're

7     objecting about the fact that Mr. Despins didn't cite to

8     521.  And you said, no, no.  Let's go -- let's go through

9     the order.  Let's go through my original objections and

10    let's go through the order.  So that's what we just did.

11         We're not coming back to court on this.  This is

12    what we just did.

13         MR. HENZY:  So, Your Honor, what if -- what if --

14    what if the order that's submitted -- again, I am not

15    telling -- saying I think Mr. Despins is going to do this --

16    what if the order that's submitted is not consistent with

17    what's been on the record today?

18         THE COURT:  Then I'm not going to enter it.  I'm

19    going to read the order.

20         MR. HENZY:  I'm sorry, Your Honor.  I think it's

21    customary for all counsel to have an opportunity to review

22    an order before it's entered.  But I understand.

23         THE COURT:  But that's what we just did.  We just

24    spent the time that you would spend going over an order.

25         MR. HENZY:  I understand what the Court's saying.

1          THE COURT:  We just spent a substantial amount of

2     time, as a matter of fact, going through every paragraph in

3     the order.

4          MR. HENZY:  Your Honor, if you're ruling I'm not

5     going to have an opportunity to review the final order --

6          THE COURT:  Mr. Despins --

7          MR. HENZY:  -- then I understand the Court's --

8          THE COURT:  You know, I'm --

9          Mr. Despins, is your firm going to have --

10         This is what I would want everyone to do.  This is

11    how it's going to work out because we are not doing this on

12    a regular basis.

13         Mr. Despins, would you please send an email to the

14    courtroom deputy box, your firm will know and Mr. Linsey can

15    help you if necessary, with the order CC'ing all the

16    parties.

17         I'm not going to enter that order for some period

18    of time -- I don't know what -- but several hours probably.

19    Okay?  And then I'm going to enter the order.

20         I'm not going to have another hearing going

21    through the language of the order.  We just did that.

22         The only reason that that order will not enter is

23    if Mr. Despins wrote something like the Court has allowed me

24    to live in the courtroom.  Then I wouldn't enter that order.

25    Okay?  For many reasons.  It wouldn't be comfortable for him

1   anyway.

2          But that's the point.  We're not going to do this.

3   We've had -- this is the second hearing on this issue.  This

4   motion was filed on July 23rd.  It's August 4th.

5          Your client is no longer a debtor in possession.

6   Someone has to come to that realization.  Okay?  The trustee

7   has that authority to do what he's doing as I have just

8   ruled.

9          And that's -- we've gone through every paragraph

10  of the order and I have made rulings on those paragraphs.

11  And there are changes that will be made.  And so that's what

12  we're going to do.

13         Mr. Despins, your office or through Mr. Linsey

14  will send --

15         MR. DESPINS:  Yes.

16         THE COURT:  -- an email to the courtroom deputy

17  box in Bridgeport and indicate that the order -- this is the

18  order that has been prepared after the hearing on August 4th

19  with all the changes discussed on the record.  And you will

20  CC all the parties, including Mr. Henzy.

21         And then I will enter that order in due course

22  after some period of time.   But I am not having a further

23  hearing.  This hearing is concluded.

24         MR. DESPINS:  Understood, Your Honor.

25         THE COURT:  I have ruled.  Okay?

1           MR. DESPINS:  Your Honor, two housekeeping

2     matters.

3           THE COURT:  Yes.  Go right ahead.

4           MR. DESPINS:  Five minutes.  Okay.

5           First, we have suggested dates, but of course

6     subject to Your Honor's schedule for status conferences.

7           THE COURT:  Did you submit them to someone yet?

8           MR. DESPINS:  Actually, we have not.

9           THE COURT:  Okay.

10          MR. DESPINS:  So you're absolutely right.  That's

11    tabled.  Let's table.  We were going to post them.  I don't

12    know if my colleague has the ability to put that up on Zoom,

13    the potential suggested dates.

14          Or you know what, Your Honor, let's circulate.

15    We'll table that.  Let's circulate those dates.  We'll come

16    back to Your Honor about that.

17          THE COURT:  Okay.

18          MR. DESPINS:  Apologies.  You're absolutely right.

19    We should --

20          THE COURT:  And you can communicate to the

21    courtroom deputy about those suggested dates through the

22    email box and CC everybody so everybody knows this is what

23    you're suggesting.

24          MR. DESPINS:  Will do.

25          THE COURT:  Okay?

100

1      MR. DESPINS:  Will do, Your Honor.

2          Next item I want to raise is we've had a meet and

3  confer with the debtor's counsel regarding the Rule 2004

4  discovery on the issue of discovery of professionals, like

5  lawyers. And that issue is going to be a problem in the

6  sense that they -- their view is that we don't have access

7  to the -- at least the way it was articulated to me, that we

8  don't have access to the privilege documents when the debtor

9  -- with respect to assets of the debtor or assets we think

10 should be the debtor's such as the Lady May or Sherry-

11 Netherland because the debtor believes they're not assets

12 and, therefore, they would be invading his privilege to go

13 after these documents.

14         So the reason I'm telling you this -- I'm not --

15 because I'm not asking you to rule on this, but we need to

16 tee that up sooner rather than later because they want to

17 tee it up 30 days after they receive the subpoena which

18 would get us into September/October.

19         There's a clear issue here which is an issue of

20 what privilege the trustee succeeds to.  And I think the

21 case law is clear that when dealing with assets of the

22 estate, either assets that are already in the estate or

23 assets that there is a claim they belong to the estate, such

24 as the Lady May and the Sherry-Netherland, that the trustee

25 have access to privileged communications regarding these

1    assets, or with respect to administration of the case, for

2    example, preparation of schedules by Brown Rudnick.

3            I'm not asking you to rule, but we need to tee

4    that up.  And we're not going to do that now, but we want to

5    tell you we're going to ask for a date earlier than 30 days

6    after the service of subpoena because that could bring us to

7    September or October.

8            So that's an issue that's out there.

9            The last issue, Your Honor, is, you know, you've

10   asked us, you raised this issue of conflict before and we

11   left it the other day.  And you said, hey, people need to be

12   attuned to this.

13           But this meet and confer just made us or my

14   partners realize that the issue is not a Zeisler issue.  The

15   issue is that a target of the trustee's investigation, which

16   is his son, the debtor's son, is paying for the fees of

17   counsel.

18           It's impossible for counsel to be adverse or to

19   think in any way adverse to somebody paying their fees.

20   It's theoretically possible, but I wouldn't hold anyone to

21   that standard.

22           So we're not asking -- there's no punch line here

23   where we're saying we're asking you to disqualify Zeisler.

24   I don't think it's Zeisler issue.

25           I think that it is very difficult for any firm

1    that represents the debtor, that has duties to the estate,

2    to be paid by the targets of the trustee's claims.  And the

3    harm here, that's the Sherry-Netherland, Bravo Luck, et

4    cetera.

5            And so, you know, again, I don't have a punch

6    line.  We're still thinking about it, but I wanted to -- we

7    have a duty to relay the issue to the Court.

8            I don't want somebody weeks from now to say you

9    sat on this.  Really, that's the issue, is the payment of

10   fees by a target of the investigation to debtor's counsel.

11   That is problematic, I think.

12           THE COURT:  Okay.  Thank you.

13           MR. DESPINS:  That's all we have.

14           MR. HENZY:  May I be heard, Your Honor?

15           THE COURT:  Yes.

16           MR. HENZY:  Thank you.

17           On the 2004, I don't know why that's coming up

18   now.  We're talking about 2004 orders that haven't been

19   entered.  As to the objection date to the 2004 motions that

20   were filed hasn't even come up.  It's tomorrow.  So we're

21   talking about 2004 orders that haven't entered and subpoenas

22   that haven't issued.  I don't know how that's going to play

23   out, but right now it's interesting to preview it I suppose,

24   but I have no idea how that's going to play out.

25           On my firm's conflict issue, if Mr. Despins wants

1    to file a motion disqualifying my firm, he should do that.

2    Any party wants to file a motion to disqualify my firm, they

3    should do that.

4             If the Court believes my firm should be

5    disqualified, then the Court should take whatever action the

6    Court deems necessary.

7             But other than that, I'm not going to -- I'm not

8    going to think about it and I'm not going to talk about it.

9    I'm going to represent my client.

10            All the facts are out there.  If somebody thinks

11   there's a problem, they should -- they should do that.

12            I said this at the hearing the other day.  This

13   should not being used as  (indiscernible) sword against my

14   firm or against Mr. Kwok.  So either file your motion or

15   just leave it alone.

16            THE COURT:  All right.  Anything further from

17   anyone this afternoon?

18            MR. DESPINS:  No, Your Honor.  Thank you.

19            THE COURT:  Okay.  Thank you.

20            Then the -- so that the record is clear, the

21   trustee's motion for order extending deadline to file

22   notices of removal is granted and the proposed order will

23   enter.

24            The motion for order confirming that the Chapter

25   11 Trustee holds all of the debtor's economic and corporate

1    governance rights in debtor controlled entities authorizing

2    Chapter 11 trustee to act in any foreign country on behalf

3    of the estate and granting related relief is granted for the

4    reasons stated on the record with an order to be submitted

5    by trustee's counsel on notice to all other parties who will

6    be -- receive a copy of that when it's submitted to the

7    Court.  And then the Court will review it and enter it after

8    the fact.

9           Okay?  All right.  Thank you, all.  This is the

10   last matter on the calendar, so court is adjourned.

11          ALL COUNSEL:  Thank you, Your Honor.

12       (Proceedings concluded at 4:35 p.m.)

13

14

15          I, CHRISTINE FIORE, court-approved transcriber and

16   certified electronic reporter and transcriber, certify that

17   the foregoing is a correct transcript from the official

18   electronic sound recording of the proceedings in the above-

19   entitled matter.

20

21   *Christine Fiore*

22   _____          October 17, 2022

23     Christine Fiore, CERT

24       Transcriber

25

1                                INDEX

2

3       TRUSTEE EXHIBITS:                              PAGE

4       A-G        Attachments to Trustee's motion        33

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25