**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No: 22-50073 (JAM) |
| Debtors. | |
| | |
| HO WAN KWOK, | |
| Movant, | |
| v. | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE | |
| Respondent. | |

## <u>MOTION FOR ORDER REMOVING TRUSTEE</u>[1]

To quote Luc A. Despins (the "Trustee"), this Chapter 11 case is at a "crossroads" (Adv.

Pro. No. 22-05032, Transcript of December 12, 2022 Hearing ("Dec. 12 Tr."), at 898, lines 15-

17)—it can go down a years-long path of expensive litigation[2] with an uncertain outcome, or the

---

[1] As detailed in The Debtor's Motion For Relief From Order Appointing Luc A. Despins As Chapter 11 Trustee (ECF Doc. No. 561, the "Rule 60(b) Motion"), the Debtor believes that the Trustee is not disinterested and should be removed based on the Trustee's and/or Paul Hastings' relationships with UBS, PAX related entities, the People's Republic of China, and the Chinese Communist Party. However, the Debtor recognizes that in an order entered on August 2, 2022 (ECF Doc. No. 667), the Court held that the foregoing relationships do not provide a basis to remove the Trustee. The Debtor has appealed the Court's order that the grounds cited in the Rule 60(b) Motion are not grounds to remove the Trustee, ECF Doc. No. 715, and the Debtor reserves the right to seek the Trustee's removal based on the grounds cited in the Rule 60(b) Motion if that appeal is successful. Unlike the Rule 60(b) Motion, this motion is focused on the Trustee's conduct since his appointment.

[2] Notwithstanding that the Trustee has testified that the Debtor's case "is actually pretty straightforward," Adv. Pro. No. 22-05032, Transcript of December 7, 2022 Hearing, at 715, effective January 1, 2023, Paul Hastings' hourly rates will be as follows: $1,400 - $2,075 for partners; $1,400 - $2,000 for of counsel; $800 - $1,320 for associates; and $275 - $600 for paralegals. ECF Doc. No. 1251. The Trustee is not providing reporting to the Court or the parties in interest in this case, but a conservative estimate is that Paul Hastings has incurred between $6 million and $8 million in fees to date. This estimate does not include the Trustee's Connecticut counsel.

true parties in interest in the case can work constructively to maximize recoveries to creditors in an efficient and expeditious way. As described herein, the debtor, Ho Wan Kwok (the "Debtor"), has worked for months to pursue the latter path.[3] The Trustee has aggressively pursued the former, and has sought to prevent a fair, efficient, and prompt resolution of the case.

The Trustee consciously obstructed a potential global settlement of the case that was very near final and that had been negotiated over a period of months with PAX and the Creditors' Committee.[4] As the Trustee made clear in the November 17 Meeting described and defined herein, the Trustee is following a strategy of trying to entrap the Debtor in a contempt, perjury or some other crime, and then using the threat of criminal sanction, namely incarceration, to leverage a payment to the estate—which would have to come from the Debtor's immediate and/or extended family members—that would be far in excess of what the true parties in interest have indicated would be acceptable and far in excess of any reasonable assessment of what is available to the estate. ("The Trustee said he [the Debtor] will [pay $250 million] when he is about to go to jail." Dec. 12 Tr., at 867, lines 22-24.). The Trustee's approach culminated in the November 17 Meeting, during which the Trustee threatened the Debtor with criminal consequences if the Debtor, or more

---

[3] As described herein, since at least August the Debtor has worked very concretely towards the goal of an expeditious and efficient resolution of this case, notwithstanding the efforts of the Trustee to prevent that from happening. An efficient and fair resolution has been the Debtor's stated goal since the outset of the case. *E.g.*, Declaration of Mr. Ho Wan Kwok In Support of the Chapter 11 Case and Certain Motions, ECF Doc. No. 107, ¶ 39, at 18 ("My ultimate objective is to arrive at a fully consensual Chapter 11 plan that finally resolves all issues with my creditors. I hope to achieve this outcome through reasoned and reasonable dialogue …."). Reasoned and reasonable dialogue has been possible with PAX and the Creditors' Committee. Unfortunately, as described herein, it has not been possible with the Trustee.

[4] The Debtor respectfully submits that Rule 408 of the Federal Rules of Evidence does not, in the context of this motion and the relief sought herein, prohibit the disclosure of the settlement terms negotiated with PAX and the Creditors' Committee, and proposed to the Trustee. Notwithstanding, the Debtor has elected not to disclose such terms in this motion and anticipates that whether such terms may be disclosed to this Court and others in this proceeding will be resolved at a subsequent hearing or by further motion. If the terms negotiated with PAX and the Committee, and proposed to the Trustee are disclosed to the Court, the Debtor reasonably anticipates that the Court will agree that the Trustee's failure to pursue those terms, and instead advance a strategy of threatening the Debtor, was a massive failure by the Trustee.

accurately the Debtor's immediate and/or extended family members, did not accede to the Trustee's demand of $250 million.

The Trustee has engaged in misconduct and is the major impediment to a fair and efficient resolution of this case. Accordingly, and in order to promote a fair and efficient resolution of this case, the Debtor, by and through his undersigned counsel, Zeisler & Zeisler, P.C., moves pursuant to Bankruptcy Code section 324(a) for an order removing the Trustee as the Chapter 11 trustee in this case. To be clear, the Debtor is not challenging through this Motion that there be **_any_** Chapter 11 trustee; rather, he asserts that **_the_** Trustee should be removed so that a reasonable, non-biased, and conflict-free trustee can be appointed to administer the Debtor's estate. In support of his Motion, the Debtor represents as follows:

## **BACKGROUND**

1.      The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court for this case and this motion pursuant to 28 U.S.C. §§ 1408 and 1409, respectively.

2.      On February 15, 2022, the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.      On June 15, 2022, the Bankruptcy Court issued its Memorandum of Decision And Order Denying Motion To Dismiss Without Prejudice And Granting Joinder To Motion For Appointment Of Chapter 11 Trustee (ECF Doc. No. 465), ordering, among other things, that a chapter 11 trustee be appointed in the bankruptcy case.

4.      On July 7, 2022, the United States Trustee filed a notice appointing the Trustee as trustee in this bankruptcy case (ECF Doc. No. 514), and an Application for Order Approving

Appointment of Chapter 11 Trustee (ECF Doc. No. 515), seeking the Court's approval of the appointment of the Trustee.

5.      On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (ECF Doc. No. 523), granting the appointment of the Trustee as chapter 11 trustee in the bankruptcy case.

The Trustee's Immediate Bias Against the Debtor

6.      Almost immediately after his appointment, and before he could have or had commenced (let alone conducted) an independent investigation into the Debtor's purported assets and affairs, the Trustee demonstrated a bias against the Debtor. *Examples only* of the Trustee's many statements indicating bias against the Debtor include:

a.      In his Objection of Chapter 11 Trustee to Debtor's Motion for Relief from Order Appointing Luc A. Despins as Chapter 11 Trustee, ECF Doc. No. 575, ¶ 1, at 2, filed on July 20, 2022, twelve days after the order entered granting the Trustee's appointment, before he possibly had any opportunity to conduct any independent investigation, the Trustee stated that "this Debtor's demonstrated objective through years of litigation with his creditors has been to keep his purported billions of dollars in assets outside of their reach through shell companies and transfers to his family members, while he simultaneously retains all the benefits of those assets and uses them to enable his lavish lifestyle."

b.      In his Motion of Chapter 11 Trustee for Entry of Order, Pursuant To Bankruptcy Code Sections 363, 541, 1108, And 1505, (A) Confirming That Chapter 11 Trustee Holds All Of The Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 598, the "Corporate Governance Motion"), filed on July 23,

2022, fifteen days after the order entered granting the Trustee's appointment, the Trustee stated that the "Debtor has shown a willingness to defy court orders," Corporate Governance Motion ¶ 1, at 1, and that the "Trustee is deeply concerned that the Debtor will continue his efforts to impede the Trustee's exercise of control over assets of the Estate …." Corporate Governance Motion ¶ 16, at 6. At the time the Corporate Governance Motion was filed, there was not even any claim that the Debtor had defied any order of this Court. At the time the Corporate Governance Motion was filed, the Debtor could not possibly have impeded the Trustee's exercise of control over assets of the estate, in that the Trustee had only been in place for fifteen days and had only requested information from the Debtor at that point.

c.      Perhaps most egregiously, at a hearing on August 1, 2022, the Trustee stated that "we'll get to [a point] in this case eventually, which is contempt." Transcript of August 1, 2022, Hearing, at 122, lines 10-11. This statement was made in the context of a discussion of what the consequence would be if the Debtor did not comply with the proposed Corporate Governance Order (as defined below), but it was a more general prediction by the Trustee, three weeks after his appointment, that the Debtor would commit some contempt of an order of this Court. This was a foreshadowing of the Trustee's strategy to entrap the Debtor in a contempt, perjury or some other crime in order to gain a litigation advantage.

d.      In his Trustee's Objection to Debtor's Motion for Stay Pending Appeal of Order, Pursuant to Bankruptcy Code Sections 363, 521, 541, 1108, And 1505, (A) Confirming That Chapter 11 Trustee Holds All Of The Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief, ¶ 55, at 24, the Trustee stated that the Debtor seemed intent on obstructing the administration of the estate at every turn and using this

Court as a "shield" from his creditors. The Debtor's effort to protect attorney-client and other privilege belonging to him is in no sense evidence of an effort by the Debtor to improperly use of this Court as a "shield" from his creditors. And, as describe herein, the Debtor has worked to promote, not obstruct, the administration of this estate.

e.      The Trustee has stated in Court on at least one occasion that Himalaya International Financial Group Ltd, the entity that loaned HK International Funds Investments (USA) Limited, LLC the $37 million that is now held in escrow and the repair reserve for the Lady May, "is Kwok." The Trustee has provided no evidence whatsoever of this claim, and the Debtor denies it. This is an example of the Trustee's attempt to prejudice the Court against the Debtor without providing any evidence of statements made.

<u>The Trustee's Strategy to Entrap the Debtor in a Contempt, Perjury or Other Crime</u>

7.      As noted above and described in more detail below, the Trustee believes that the Debtor, or more accurately the Debtor's immediate and/or extended family members, will accede to the Trustee's demand to pay $250 million when the Debtor is "about to go to jail." In accordance with that belief, rather than pursue legitimate claims or a fair resolution of this case, the Trustee has pursued a strategy of trying to entrap the Debtor in a contempt, perjury or some other crime.

8.      One of the principal examples of this strategy is the Trustee's attempt to have the Court hold the Debtor in contempt (and subject him to "confinement," as noted below) due to his purported non-compliance with the Court's Order, Pursuant To Bankruptcy Code Sections 363, 521, 541, 1108, And 1505, (A) Confirming That Chapter 11 Trustee Holds All Of The Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 717, the "Corporate Governance Order").

9.      On August 10, 2022, the Court entered the Corporate Governance Order. Paragraphs 2, 3 and 6 of the Corporate Governance Order provide, in relevant part:

> 2.      Effective as of entry of the order, dated July 8, 2022, granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523], the Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all Debtor-Controlled Entities, including, without limitation, Genever (BVI). *For the avoidance of doubt, the foregoing rights include the Trustee's asserted authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.*

> 3.      In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to, respectively, (a) cooperate with the Trustee as necessary to enable the Trustee to perform his duties, including, without limitation, the Trustee's investigation into the assets of the Debtor, and (b) surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate (including, without limitation, his shares in Genever (BVI) and all related corporate governance documents).

(Emphasis added). Thus, the Corporate Governance Order expressly granted the Trustee the power to replace any officer, director or similar person, and such person would then be able to take any corporate action deemed necessary by the Trustee.

10.     On August 31, 2022, notwithstanding the express authority granted to the Trustee in the Corporate Governance Order, the Trustee sent counsel for the Debtor a letter requesting that the Debtor (a) execute, and cause any nominee shareholder to execute, a share transfer instrument to transfer all of the Debtor's shares in Ace Decade Limited (including all shares beneficially owned by the Debtor through any nominee shareholder) to the Trustee, and (b) execute and/or cause the director(s) of Ace Decade Limited to execute a resolution approving such transfer of the shares in Ace Decade Limited to the Trustee. The Debtor did not comply with the Trustee's request.

11.     On October 4, 2022, again, notwithstanding the express authority granted to the Trustee in the Corporate Governance Order, the Trustee filed his Motion Of Chapter 11 Trustee For Entry Of Order Holding Debtor In Civil Contempt For Failure To Comply With Corporate Governance Rights Order (Doc. No. 913, the "Contempt Motion"). By the Contempt Motion, the Trustee seeks to have the Debtor held in contempt, arguing that "despite the Court's clear directive in the Corporate Governance [Rights] Order, the Debtor refuses to transfer the shares of Ace Decade … to the Trustee or provide the Trustee with any corporate documents regarding Ace Decade or its wholly owned subsidiary Dawn State Limited ("Dawn State") …." Motion ¶ 1, at 2. As the Court is aware, there was a lengthy hearing on the Contempt Motion the week of November 14, 2022.

The Trustee's Destruction of a Potential Global Settlement and the November 17 Meeting

12.     Beginning in July 2022, the Debtor, through counsel, engaged in extensive negotiations with PAX and the Creditors' Committee towards a global resolution of this case. The Debtor negotiated with PAX, with the idea that if he reached an agreement with PAX, then he would try to reach an agreement with the Creditors Committee. These negotiations were extremely complex because, in addition to negotiating with PAX and the Committee, the Debtor, through counsel, had to negotiate with the Debtor's immediate and/or extended family members, as all value to be paid to creditors would come from such family members, via, in part, the surrender of rights in various assets asserted by such family members. The Debtor and PAX made significant progress in August, to the point where the Debtor requested that PAX summarize its demands in writing. Negotiations continued through September and culminated in a term sheet at the end of September (the "September PAX Term Sheet"). The term sheet contemplated, among other things, a substantial payment to PAX in full satisfaction of its claim, with security for such payment to be

further discussed. (Dec. 12 Tr. at 844, lines 4-17).

13.    After reaching agreement in principle with PAX as reflected in the September PAX Term Sheet, the Debtor, through counsel, focused on reaching an agreement with the Creditor's Committee. The Debtor negotiated with the Creditors' Committee through October and reached an agreement in principle with the Committee by the end of October. (Dec. 12 Tr. at 844, lines 17-22).

14.    On October 26, 2022, the Debtor's counsel informed the Trustee in writing that the Debtor had reached an agreement in principle on all material terms with both PAX and the Creditors' Committee. The Debtor's counsel had been informing the Trustee of the substantial progress being made with the creditors, and asking him repeatedly to stand down on the many motions he was filing with the Court and on the voluminous discovery he was seeking, which he refused to do. The Debtor's purpose in asking the Trustee to stand down was not to prevent the Trustee from conducting his investigation, but rather to slow down the continuing excessive accrual of administrative expenses in the case.

15.    The Debtor's counsel asked the Trustee to articulate what additional concessions he wanted in addition to what had already been negotiated, and agreed to, with PAX and Creditors' Committee. The Trustee sent the Debtor's counsel an eight-page, single spaced term sheet on October 30, 2022, outlining his "preliminary issues." The Trustee's focus was on (1) trying to secure performance of the agreements that had been reached with PAX and the Creditors' Committee and (2) with *potential* claims related to H-Coin surfacing in the future. While the Debtor's counsel disputed that there was any validity to these so-called potential H-Coin claims, the Trustee raised an issue with how any such potential claims would be addressed in the case. (Dec. 12 Tr. at 844, line 21 to 845, line 16).

16.    In November, PAX raised its desire to have further security through a line of credit or some other collateral, *e.g.*, the posting of cash. The Debtor's counsel and PAX went back and forth, and by November 16th, the Debtor's extended family members had agreed to provide PAX what it was requesting in terms of security. (Dec. 12 Tr. at 845, lines 19-23).

17.    On November 16, the Debtor's counsel sent a letter to the Trustee summarizing the terms that had been negotiated with PAX and the Creditors' Committee, and that the Debtor believed should be acceptable to the Trustee with respect to global settlement in the case (the "November 16 Letter"). The Debtor's counsel believed that what was proposed in the November 16 Letter was very, very close to reaching a global settlement, and again asked the Trustee to stand down while the parties worked to finalize a settlement. (Dec. 12 Tr. at 846, lines 2-15; Adv. Pro. No. 22-05032, Transcript of December 5, 2022 Hearing ("Dec. 5 Tr."), at 247, lines 8-9).

18.    The Trustee called the Debtor's counsel later on November 16th to request a face-to-face meeting with Debtor. The Debtor agreed to meet the following day, November 17 (the "November 17 Meeting"). The Debtor's counsel was guardedly optimistic about the meeting—they were hopeful that the Trustee's request for a meeting was for the purposes of being conciliatory, building consensus, and expressing whatever remaining concessions the Trustee was asking for. The Debtor's counsel did not believe that the Trustee would use the meeting as an opportunity to intimidate or threaten the Debtor given where settlement discussions stood. (Dec. 12 Tr., at 841, line 18, to 843, line 24 ("[W]e were, also, very concerned of the possibility that the Trustee who we perceived as having been extraordinarily aggressive in this case was going to use this meeting as an opportunity to intimidate or threaten Mr. Kwok. And so we contemplated that risk, but we dismisse[d] it, and literally, I concluded that there's no way the Trustee is that stupid to have a meeting like that under these circumstances when millions and millions of dollars …

10

have been spent. … We concluded that the Trustee's intentions had to have been in good faith, and so we agreed to the meeting.")).

19.     The November 17 Meeting took place in New York and was attended by the Debtor, the Debtor's translator, the Debtor's attorneys Stephen Kindseth and Aaron Mitchell, the Trustee, and the Trustee's attorney Nicholas Basset. (Dec. 12 Tr., at 848, line 25 to 849, line 1; Adv. Pro. No. 22-05032, Transcript of December 7, 2022 Hearing ("Dec. 7 Tr."), at 672, line 13 to 673, line 2; Dec. 5 Tr., at 230, line 17 to 231, line 20).

20.     During the November 17 Meeting, the Trustee spoke and first told the Debtor that he should not speak. The Trustee began by stating that he would be able to recover all of the identified assets: the $37 million Lady May escrow, the Sherry-Netherland apartment, the Lady May, and the house in Greenwich owned by the Debtor's wife. (Dec. 12 Tr., at 861, lines 15-20).

21.     At one point the Trustee asked the Debtor if he knew who Al Capone was and then told him what happened to Al Capone, that he went to jail for tax evasion. (Dec. 12 Tr., at 862, lines 18-19; Dec. 7 Tr., at 673, lines 6-8 13).

22.     The Trustee stated that while friends and supporters were supporting the Debtor financially, the Trustee hoped that such support was being reported as income in the United States. The Trustee also stated that he assumed the Debtor had paid income tax on consulting fees. The Trustee then immediately said that he spoke to the IRS and SEC on a weekly basis, (Dec. 12 Tr., at 862, line 24 to 863, line 11; Dec. 7 Tr., lines 10-12), and that the Debtor that he had better settle because it would soon be "too late." (Dec. 12 Tr., at 863, lines 11-12).

23.     The Trustee then demanded that the Debtor pay $250 million. (Dec. 12 Tr., at 863, lines 16-18; Dec. 7 Tr., at 691, lines 20-22; Dec. 5 Tr., at 227, line 20 to 228, line 5, and 247, lines 18-19).

24.    Finally, the Trustee threatened to lock the Debtor out of Sherry-Netherland apartment and stated that the Debtor would pay $250 million when he was about to go to jail. (Dec. 12 Tr., at 866, line 24 to 867, line 24).

## APPLICABLE LAW

25.    Bankruptcy Code section 324(a) provides, in part: "The court, after notice and a hearing, may remove a trustee … for cause."

26.    Courts have held that "cause," which is not defined by the Bankruptcy Code, must be determined on an "ad hoc" basis. *E.g., Livore v. Hargrave (In re Livore)*, 2010 Bankr. LEXIS 1653, [*5] (Bankr. D. N.J. May 6, 2010) ("Cause, which is not defined by the Bankruptcy Code, must be determined by courts on an ad hoc basis."); *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990) (same).

27.    To remove a trustee for cause generally requires a showing of fraud or actual injury to the bankruptcy estate. *Dieffenbach v. Haworth (In re Haworth)*, 356 Fed. Appx. 529, 530 (2nd Cir. 2009); *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965); *In re Cee Jay Discount Stores*, 171 B.R. 173, 175-76 (Bankr. E.D.N.Y. 1994); *In re Lundborg*, 110 B.R. at 108.

28.    Courts have held that cause may include trustee incompetence, violation of fiduciary duties, misconduct, failure to perform trustee's duties, lack of disinterestedness or holding an interest adverse to the estate. *E.g.*, *Dye v. Brown (In re AFI Holding, Inc.)*, 355 B.R. 139, 148 (9th Cir. BAP 2006) ("It is well established that 'cause' may include trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate."), *aff'd*, 530 F.3d 832 (9th Cir. 2008); *In re Regan*, 2021 Bankr. LEXIS 2855, [*] (Bankr. N.D.N.Y. Oct. 14, 2021) (same); *In re Derryberry,* 72 B.R. 874, 879-81 (Bankr. N.D. Ohio 1987) (trustee removed based on, among

other reasons, violations of Code of Professional Conduct). *See also* 28 CFR § 58.6(3) (reasons United States Trustee may suspend panel trustee may include failure to comply with local rules of court).

29.    In defining a trustee's duties, courts have held that a trustee owes a fiduciary duty to creditors *and* the debtor to act fairly. *See Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he fiduciary duty of the trustee runs to shareholders as well as to creditors."); *In re WHET, Inc*., 750 F.2d 149, 149 (1st Cir. 1984) (a trustee "owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests."); *Wiscovitch-Rentas v. Liberty Mut. Ins. Co. (In re Fiddler Gonzales & Rodriquez, P.S.C.)*, 415 F.Supp. 272, (D. P.R. 2019) (same); *In re Vebeliunas*, 231 B.R. 181, 190 (Bankr. S.D.N.Y. 1999) ("[T]he trustee's professionals cannot be allowed under any circumstances to lack disinterestedness through bias against a debtor given the responsibilities of the trustee in regard to a natural debtor …."). *See also* 7 Collier on Bankruptcy ¶ 1106.02[3], at 1106-11 (16th Ed. 2019) ("In addition to the explicit duties specified in the Bankruptcy Code, the trustee in a reorganization case is a fiduciary who has an obligation to treat all parties in the case fairly. As a fiduciary, the trustee owes the debtor's estate and its creditors a general duty of loyalty, i.e., absence of self-interest."); United States Trustee Chapter 11 Trustee Handbook, https://www.justice.gov/ust/file/ch11handbook-200405.pdf/download, at 19 ("In short, a chapter 11 trustee is a fiduciary charged with protecting the interests in the bankruptcy estate of all parties, including all creditors and the debtor. The trustee must protect and preserve estate assets.").

30.    A Chapter 11 trustee also has the duty to consult with creditors with the goal of confirming a plan as expeditiously and efficiently as possible, so that the return to creditors is maximized in a reasonable period of time. 11 U.S.C. § 1106(a)(5) ("A trustee shall— **…** as soon

as practicable, file a plan under section 1121 of this title, file a report of why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7, 12, or 13 of this title or dismissal of the case."); Senate Report No. 95-989, 95th Cong., 2d Sess., 116 (1978) ("It is anticipated that the trustee will consult with creditors and other parties in interest in the formulation of a plan … ."); House Report No. 95-595, 95th Cong., 1st Sess., 404 (1977) ("It is anticipated that the trustee will consult with creditors and other parties in interest in the formulation of a plan …. Consultation will be necessary in order to make more likely the obtaining of the requisite number of acceptances of the plan that is eventually formulated.").

31.     Courts have held that in determining whether there is injury sufficient to justify removal of a trustee, courts must consider the best interests of the bankruptcy estate. *In re Freeport Italian Bakery*, 340 F.2d at 55 ("If the administration of the estate in bankruptcy would suffer more from the discord created by the present trustee than would be suffered from a change of administration, the removal of the trustee is necessarily the better solution."); *Morgan v. Goldman (In re Morgan)*, 375 B.R. 838, 848 (8th Cir. BAP 2007) ("Court must also consider the best interests of the estate when determining whether to remove a trustee." (internal quotation marks omitted)); *In re Baker*, 38 B.R. 705, 708 (D. Md. 1983) (same); *In re Mason*, 12 B.R. 318, 318-19 (Bankr. D. Nev. 1981) (trustee relieved of duties where there was a "bitter feeling of enmity by the debtor against the trustee in bankruptcy.").

32.     Notably, removal may be based on *the appearance of impropriety* as well as actual impropriety. *See Morgan v. Goldman (In re Morgan)*, 375 B.R. 838, 848 (8th Cir. BAP 2007) (some courts "have found that removal can be based not only [on] actual impropriety, but [on] the appearance of impropriety as well." (internal quotation marks omitted)); *In re Vebeliunas*, 231 B.R. at 187-95 ("To be disinterested is to prevent even the appearance of a conflict irrespective of

14

the integrity of the person or firm under consideration." (internal quotation marks omitted)); *In re Micro-Time Management Sys.*, 102 B.R. 602, 603-09 (Bankr. E.D. Mich. 1989) (trustee disqualified based on prior work for creditor).

## ARGUMENT

### The Trustee has Engaged in Misconduct

33.    The Trustee has caused actual injury to the estate by engaging in blatant misconduct that clearly violates the Connecticut Rules of Professional Conduct.

34.    Connecticut Rule of Professional Conduct 3.4(7) provides that a lawyer shall not "[p]resent, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."[5]

> [T]he rule is designed to promote "fair competition in the adversary system [by] securing prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like." ….
> "[T]he conduct proscribed by rule 3.4 is incompatible with the principle of fair competition that forms the basis of our adversary system of justice … . The conduct contemplated by rule 3.4(7) is prohibited because it is deemed to be unfairly coercive and, therefore, an abuse of the criminal process … . As an officer and commissioner of the court, an attorney is obliged to refrain from using improper tactics whether acting in a personal or representative capacity.

---

[5] Rule 1001-1(b) of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut provides: "The Local Rules of Civil Procedure of the United States District Court for the District of Connecticut shall apply in all cases or proceedings in the Bankruptcy Court to the extent they are relevant and not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or these Local Rules of Bankruptcy Procedure." Rule 83.2(a)1 of the Local Civil Rules of the United States District Court for the District of Connecticut provides: "Except as provided in Rule 83.2(a)2 of these Local Rules, this Court recognizes the authority of the 'Rules of Professional Conduct,' as approved by the Judges of the Connecticut Superior Court as expressing the standards of professional conduct expected of lawyers practicing in the District of Connecticut." In paragraph 6 of his affidavit annexed to the Motion for Admission *Pro Hac Vice* of Luc A. Despins (ECF Doc. No. 540), the Trustee stated, as required by D. Conn. L. Civ. R. 83.1(d)(1)(d): "I have read and am familiar with the Federal Rules of Civil and Criminal Procedure, the Local Rules of the United States District Court for the District of Connecticut, the Local Rules of the Bankruptcy Court for the District of Connecticut, and the Connecticut Rules of Professional Conduct, and will abide by and comply with the substantive and procedural requirements of the local rules and the administrative orders of this Court." Courts have a responsibility to enforce applicable Rules of Professional Responsibility. *United States v. Hammad*, 858 F.2d 834, 837 (2nd Cir. 1988) ("The federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar."); *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2nd Cir. 1975) ("The district court bears the responsibility for the supervision of the members of its bar.").

*Somers v. Statewide Grievance Comm.*, 245 Conn. 277, 288 (1988) (quoting Commentary to Rule 3.4, ¶ 1). In an analogous situation to what occurred here, the Connecticut Statewide Grievance Committee found by clear and convincing evidence that an attorney representing a creditor violated Rule 3.4(7) where the attorney faxed a letter to the attorney for the debtor stating:

> Since our meeting I have had four discussions with individuals from the Department of Consumer Protection who tell me, because your client is unregistered, they will have an arrest warrant out for your client within 72 hours of my filing a written complaint for criminal violation of the State's contractor licensing laws. I have not yet filed this complaint. They also tell me because your client took $30,000.00 from my client and did not do the work said violation is a Class A felony. I would suggest your client soften his view on this case, and you immediately forward 1) a general release and non disclosure naming my clients, and 2) a trustee check in the amount of $37,000.00 to my office to cover my clients' original payment and their attorney fees to date. I would also suggest your client make said payment on or before close of business Monday May 15, 2006, **Time is of the essence.** Failure to take said action as aforesaid will result in my clients taking whatever actions are necessary to protect their rights.

Douglas Fleming vs. Arthur D. Machado, Statewide Grievance Committee Grievance Complaint #07-0062, https://jud.ct.gov/sgc/decisions/070062.htm.

35.    At the November 17 Meeting, the Trustee threatened the Debtor with criminal sanction if the Debtor did not immediately accede to the Trustee's demand for payment of $250 million. The Trustee stated what had happened to Al Capone to compare the Debtor's fate to that of Al Capone, stated that he spoke to the IRS and the SEC every week, stated that the Debtor needed to settle before it was too late, and bluntly stated to Debtor's counsel that the $250 million would be paid to the Trustee when the Debtor was about to go to jail. The Trustee's statements were a blatant and not even remotely veiled threat that there would be criminal consequences if the Debtor did not accede to the Trustee's civil demands. Thus, *at a minimum*, the Trustee's conduct clearly violated Rule 3.4(7) of the Connecticut Rules of Professional Conduct. The Trustee's conduct is worse than that of an attorney seeking an advantage for a client because the

Trustee is an officer of the Court and his actions carry the imprimatur of the Court, thereby giving greater weight to his threats of criminal action absent the Debtor meeting his demands.

36.     The Trustee has caused actual injury to the estate by engaging in blatant misconduct and by breaching his duties to the Debtor in that he has engaged in a strategy of trying to entrap the Debtor in a contempt, perjury or some other crime for the purpose of using the threat of criminal sanction, namely incarceration, in order to leverage a $250 million payment from the Debtor's immediate and/or extended family. The Trustee's statement at the November 17 Meeting that such a payment would be forthcoming when the Debtor was about to go to jail is telling as to the Trustee's strategy.

37.     A primary example of the Trustee's strategy in this regard with which the Court is familiar is the Contempt Motion. The entire premise of the Corporate Governance Motion and the Corporate Governance Order was that the Debtor has no governance rights with respect to any Debtor-Controlled Entities. The Trustee requested in the Corporate Governance Motion and was granted in the Corporate Governance Order the power to do what the Trustee was demanding of the Debtor. The Trustee's purpose with the Contempt Motion was not to gain control of Ace Decade Limited, which did not require any action from the Debtor, but rather to have the Debtor held in contempt and incarcerated. Transcript of November 18, 2022 Hearing, at 103, lines 10 to 104, line 9 ("[S]anctions are wide ranging in the discretion of the Court and they include confinement"). The Contempt Motion was a massive waste of time and money, and was pursued with the improper purpose of entrapping the Debtor in a contempt in order to gain leverage against the Debtor and his immediate and/or extended family members.

<u>The Trustee's Removal Would Be in the Best Interests of the Estate</u>

38.     The Trustee's conduct in obstructing a global resolution of this case has caused

actual injury to the estate and his removal would be in the best interests of creditors and the estate.

39.    Since at least August of this year, the Debtor has actively worked on reaching a fair resolution with his creditors. As described above, the Debtor had reached agreements in principle with both PAX and the Creditors' Committee with respect to a global resolution of the case. Creditors certainly are the best judge of what would be a reasonable and acceptable payout to them.

40.    For motives that only the Trustee may be able to explain, the Trustee actively obstructed such a global resolution. Instead, he threatened the Debtor and made outrageous demands. At this point, based on the Trustee's conduct, the Debtor and, more importantly, the Debtor's immediate and extended family members (because they would fund payments to creditors under any consensual plan) will not deal with the Trustee. At this point, the options are removal of the Trustee or years of expensive and uncertain litigation. The discord created by the Trustee in this case is such that, while there may be some cost to replacing the Trustee, the removal of the Trustee is necessarily the better solution. *See In re Freeport Italian Bakery*, 340 F.2d at 55.

41.    The Trustee has not complied with his obligation to consult with creditors in formulating a plan. As described above, PAX and the Creditors' Committee spent months negotiating a global resolution of this case. The Trustee chose to completely disregard all of that work and the wishes of the major creditor constituencies in this case.

42.    The Trustee has not complied with his duty to administer the Debtor's estate in order to minimize expense and maximize value available to creditors. The Trustee has continued to vigorously litigate even though he knew about settlement negotiations and was asked repeatedly to "stand down." Again, by "stand down" the Debtor never meant that the Trustee should not execute his duties, but rather, that all parties should work to limit administrative costs and allow counsel to focus on negotiations. The Trustee refused and consistently filed motions on an

expedited basis and took (and continues to take) voluminous amounts of discovery. Massive administrative expenses continue to be run up in this case for no good purpose.

43.    The Trustee not complied with his duty to deal fairly with the Debtor. As described above, the Trustee displayed a massive bias against the Debtor essentially from the day he was appointed, he has engaged in a strategy to entrap the Debtor in a contempt, perjury or some other crime, he threatened the Debtor with criminal consequences if the Debtor did not accede to his demands. At the very least, the Trustee's conduct gives the appearance of massive bias against the Debtor.

**WHEREFORE,** the Debtor respectfully requests that the Court grant his Motion, enter an order removing the Trustee, and grant him such other and further relief as justice requires.

Dated at Bridgeport, Connecticut on this 30th day of December, 2022.

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ Eric Henzy*
Eric Henzy (ct12849)
Aaron A. Romney (ct28144)
James M. Moriarty (ct21876)
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
           aromney@zeislaw.com
           Jmoriarty@zeislaw.com
           jcesaroni@zeislaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>                    Debtors.<br><br> | Chapter 11<br><br>Case No:  22-50073 (JAM) |
| HO WAN KWOK,<br><br>                    Movant,<br><br>v.<br><br>LUC A. DESPINS,<br>CHAPTER 11 TRUSTEE<br><br>                    Respondent. | |

## <u>PROPOSED ORDER GRANTING MOTION FOR ORDER REMOVING TRUSTEE</u>

Upon the Motion for Order Removing Trustee (the "Motion"), filed by the debtor, Ho Wan Kwok, having come before the Court, and there being due and sufficient cause to grant the requested relief, it is hereby

**ORDERED**, that the Motion is in all respects **GRANTED**, and it is further

**ORDERED**, that the Chapter 11 Trustee, Luc A. Despins, is hereby removed as the Chapter 11 trustee in this bankruptcy case for cause pursuant to 11 U.S.C. § 324(a).

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No:  22-50073 (JAM) |
| Debtors. | |
| HO WAN KWOK, | |
| Movant, | |
| v. | |
| LUC A. DESPINS,<br>CHAPTER 11 TRUSTEE | |
| Respondent. | |

**<u>NOTICE OF CONTESTED MATTER RESPONSE DEADLINE</u>**

Ho Wan Kwok (the "Debtor") has filed a Motion for Order Removing Trustee (the "Contested Matter") in the above-captioned case.  Notice is hereby given that any response to the Contested Matter must be filed with the Court no later than January 13, 2023.  In the absence of a timely filed response, the proposed order in the Contested Matter *may* enter without further notice and hearing, *see*, 11 U.S.C. section 102 (1).

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ Eric Henzy*
Eric Henzy (ct12849)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com

21

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No:  22-50073 (JAM) |
| Debtors. | |
| | |
| HO WAN KWOK, | |
| Movant, | |
| v. | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE | |
| Respondent. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of December, 2022, copies of foregoing Motion for Order Removing Trustee, Proposed Order, and Notice of Contested Matter Procedure were filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

**THE DEBTOR,**
**HO WAN KWOK**

*/s/ Eric Henzy*
Eric Henzy (ct12849)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com