**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| IN RE: | ) | No. 22-50073 |
| Ho Wan Kwok, et al | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors | ) | January 4, 2022 |

**HCHK TECHNOLOGIES, INC., HCHK PROPERTY MANAGEMENT, INC. AND LEXINGTON PROPERTY AND STAFFING, INC.'S OBJECTION TO PRODUCTION REQUEST, MOTION TO QUASH AND/OR MOTION TO MODIFY 2004 EXAMINATION SUBPOENAS**

Pursuant to Fed. R. Civ. Pro. 45(c)(2) and 45(c)(3), applicable to this matter pursuant to Fed. R. Bankr. Pro 9016, Fed. R. Bankr. Pro 2004 and Local Rule 2004-1, HCHK Technologies, Inc., ("HCHK Technologies") HCHK Property Management, Inc. ("HCHK Property") and Lexington Property and Staffing, Inc. ("Lexington") (collectively the "Subpoenaed Parties"), hereby object to the production requests contained in the Chapter 11 Trustee Luc Despin's (the "Trustee") Rule 2004 Examination subpoenas served upon them on December 7 and December 8, 2022, and/or move to quash and/or modify same subpoenas as follows:

1.  On November 18, 2022, the Trustee filed a Second Supplemental Omnibus Motion for Entry of Order Under Bankruptcy Rule 2004, seeking to examine numerous persons and entities pursuant to proposed attached subpoenas, including the Subpoenaed Parties (ECF 1116).

2.  On December 2, 2022, the Court granted the Trustee's Motion (ECF 1184), and the Chapter 11 Trustee served three identical Rule 2004 Examination subpoenas on the Subpoenaed Parties – HCHK Property Management Inc. on December 7, 2022, and HCHK Technologies, Inc. and Lexington Property Management, Inc. on December 8, 2022.

3. Pursuant to Rule 45(c)(2), the Subpoenaed Parties had until December 21 and December 22, 2022 respectfully, to object to same subpoenas. The Chapter 11 Trustee consented to a 2 week extension of this deadline to January 4 and January 5, 2023, respectively.

4. Local Rule 2004-1(a) provides that:

Except for the provisions of FRCP 26 (a), (b), (d), (f), and (g), FRBP 7026 and D. Conn. L. Civ. R. 26(a)-(e) and 37 shall apply to examinations and the production of documents under FRBP 2004. Proportionality considerations apply to a request for the production of documents or electronically stored information in connection with a FRBP 2004 examination.

5. Fed. R. Civ. Pro. 45(c)(3) and (d) provide:

(c)(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(d)(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena…

These rules apply to subpoenas issued in connection with a 2004 examination. Fed. R. Bankr. R. 2004(c) (The attendance of an entity for examination and for the production of documents ….may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial).

6. It is beyond cavil that 2004 examinations have been characterized as "fishing expeditions," and have a broad reach. But same reach is not limitless. The use of a 2004

examination is not permitted for matters not related to the financial condition of a debtor or a debtor's estate. Upon a creditor objection, the examiner must establish "good cause," taking into consideration the totality of the circumstances, including the importance of the information to the examiner and the costs and burdens on the creditor. *In re GYPC, Inc.,* 2020 Bankr. LEXIS 1848, at *10-11 (Bankr. S.D. Ohio June 24, 2020) *citing In re Countrywide Home Loans*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).  The level of good cause required to be established varies depending on the potential intrusiveness. *Id.*; *see In re Eagle-Pitcher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (citation omitted) ("examination should not be so broad as to be more disruptive and costly" to the party to be examined than beneficial to the party seeking discovery); *Hammond*, 140 B.R. at 201 (similar).

7.      In addition, Fed. R. Civ. P. 45, cited above, governs subpoenas issued to nonparties, and also applies to Rule 2004 examination subpoenas. When considering the propriety of enforcing a subpoena, a trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Pac. All. Corp. v. Wiggins*, 2019 U.S. Dist. LEXIS 26661, at *2-4 (E.D.N.C. Feb. 20, 2019); *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002)).  "In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" *Schaaf*, 233 F.R.D. at 453 (quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)). The determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens,

considering whether the information is necessary and whether it is available from another source. *Pac. All, supra* (citations omitted).

8. The Subpoenaed Parties object to the Chapter 11 Trustee's Instructions 1 and 2, which require them, among other things, to a) produce electronically stored documents as single page TIFF files with certain file naming protocols and to include bates numbering; b) produce a "Concordance Data File," a program unfamiliar to undersigned counsel and the Subpoenaed Parties but which appears to be litigation management software that counsel and the Subpoenaed Parties do not possess; c) produce a "Concordance Image OR Opticon Cross Reference File, the latter of which is also likely litigation management software that neither the Subpoenaed Parties or undersigned counsel possess; and d) producing extracted metadata in the form of a "Concordance complaint load file (.dat)," along with instructions as to formatting same.

9. Complying with the above instructions is in part impossible, because neither Subpoenaed Parties nor undersigned counsel own the relevant software, and in part onerous and unduly burdensome, as the Subpoenaed Parties can potentially extract metadata from their electronic files, but only on a file-by-file basis, at a considerable investment of time and effort.

10. This time and effort constitutes an unfair burden on the Subpoenaed Parties, as these instructions in essence attempt to force the Subpoenaed Parties to prepare and collate the Chapter 11 Trustee's discovery for him, a job better and more fairly suited to the one conducting the discovery. Likewise, it is "settled law that a person cannot be compelled to prepare a document not now in existence in order to produce same," which is the effective result of the above instructions. In re Sutera, 141 B.R. 539, 542 (Bankr. D. Conn. 1992)

11. The Trustee's Instructions at No. 3 also commands the Subpoenaed Parties to produce documents "as kept in the usual course of business or are to be organized and labeled to

correspond with the categories in those requests," which appears contradictory to Instructions 1 and 2. The Subpoenaed Parties do not object to producing documents responsive to the subpoenas as kept in their usual course of business.

12. The 2004 Examination Subpoenas Definition Section likewise defines Associated Individuals as "all individuals that hold, control, have custody over, or discretion over assets owned, controlled or enjoyed by the Debtor or Debtor's Family; or have been employees, director, or otherwise are affiliated with one or more Associated Entities, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing. Such Associated Individuals *shall include, but are not limited to*…" and then goes on to list approximately 29 individuals.

13. The Definition Section also defines "Associated Entities" to include "entities of any type that (1) have been owned, controlled, or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing. Such Associated Entities *shall include, but are not limited to*.." and then goes on to list approximately 81 entities.

14. The Subpoenaed Parties object to these Definitions, and the related document production requests (including without limitation Nos. 3, 5, 6 and 10) inasmuch they utilize these definitions, as they are the very definition of overly broad requests constituting an undue burden. The Subpoenaed Parties can review their records for documents related to the persons specifically named in their respective subpoenas. But they can not be reasonably expected to conduct that review based on the above referenced speculative, exceedingly broad, and

completely subjective definitions, based on information they either do not have or have no reason to know they have, with a contemplated scope of hundreds or thousands of unknown persons.

15. The Subpoenaed Parties are still reviewing their files in response to the Trustee's subpoenas. To the extent they locate responsive documents, and same were entrusted to them by their clients/customers, being compelled to produce same information would potentially cause the Subpoenaed Parties great embarrassment, and create a real danger that they could lose these customers/clients, to the extreme detriment of their businesses. The Trustee's Omnibus Motions for Orders for 2004 Examinations cover an extraordinarily wide range of examination deponents (See Trustee's Omnibus Motions for 2004 Examinations, ECF 637, 638, 839, 1116, 1259). In light of same, to the extent the Subpoenaed Parties discover they possess documents from customers/clients that are also the subject of their own 2004 examinations by the Trustee, they should not be compelled to produce these documents when the Trustee will directly receive same from the customers/clients in question.

16. The Subpoenaed Parties also object to the following requests:

> 14. Documents sufficient to show all of Your Assets and sources of income or funding.
>
> 15. For all Assets identified in response to Request 14 having a value of more than $50,000, all (i) Documents related to Your acquisition of such Asset and …
>
> 16. Copies of Your tax returns.
>
> 17. Documents sufficient to show all bank accounts and investment accounts within Your possession or control, including the balances of and transfers to and from each such account.
>
> 19. All corporate governance and organizational Documents, including without limitation by-laws and certificates of incorporation and other Documents sufficient to show Your corporate structure, names of officers and directors,

business purpose, and relationship to the Debtor or to any member of the Debtor's Family.

17. Obviously, it is potentially embarrassing and harmful for their businesses for the third party deponent Subpoenaed Parties to be compelled to produce their confidential internal financial and corporate governance documents. They should not be compelled to do so without the Trustee showing a greater need for same, nor should they be compelled to do so without appropriate protections and/or confidentiality measures/orders in place.

18. Lastly, the Subpoenaed Parties reasonably require more time to respond to the Trustee's subpoenas. The holiday season and resulting lack of staff severely hampered the Subpoenaed Parties' efforts to review their files and emails in order to respond to these subpoenas. In particular, HCHK Technologies has approximately 50 email boxes that must be searched box by box for at least approximately 110 names, by employee(s) who also need to fulfill their employment duties.

**WHEREFORE**, the Subpoenaed Parties object to the Trustee's Requests for Production, respectfully request that this Court quash and/or modify his subpoenas, and/or respectfully request they be allowed more time to respond to same.

**HCHK TECHNOLOGIES, INC.**
**HCHK PROPERTY MANAGEMENT, INC.**
**LEXINGTON PROPERTY AND STAFFING, INC.**

__/s/ Scott M. Charmoy_____
Scott M. Charmoy, Esq.   CT 15889
Charmoy & Charmoy, LLC
1465 Post Road East, Suite 100
Westport, CT  06880
(203) 255-8100
scottcharmoy@charmoy.com