UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                        *   Case No. 22-50073 (JAM)
                             *
HO WAN KWOK, GENEVER HOLDINGS *
 CORPORATION and GENEVER     *
 HOLDINGS, LLC,              *
                             *
              Debtor.        *
                             *
                             *
LUC DESPINS,                 *   Adv. Proc. No. 22-5027
                             *
              Plaintiff,     *   Bridgeport, Connecticut
                             *   January 3, 2022
v.                           *
                             *
BRAVO LUCK LIMITED, et al.,  *
                             *
              Defendants.    *
                             *
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

TRANSCRIPT OF MOTION FOR ORDER SETTING BAR
DATES AND APPROVING FORM OF NOTICE; APPLICATION TO EMPLOY;
APPLICATION TO EMPLOY ENGINEERING OPERATIONS AND
CERTIFICATION SERVICES, LLC AS EXPERT; MOTION TO
MODIFY CONSENT ORDER GRANTING INT'L FUNDS MOTION
FOR ORDER and PRETRIAL CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:              ERIC HENZY, ESQ.
                            STEPHEN KINDSETH, ESQ.
                            Zeisler & Zeisler, P.C.
                            10 Middle Street, 15th Floor
                            Bridgeport, CT  06604


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES: (Cont'd.)

```
For the Creditor, Pacific        PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity       STUART M. SARNOFF, ESQ.
 Fund L.P.:                      O'Melveny & Myers LLP
                                 Times Square Tower
                                 7 Times Square
                                 New York, NY  10036

                                 ANNECCA H. SMITH, ESQ.
                                 Robinson & Cole, LLP
                                 280 Trumbull Street
                                 Hartford, CT  06103


For the Chapter 11 Trustee:      PATRICK LINSEY, ESQ.
                                 Neubert, Pepe and Monteith
                                 195 Church Street
                                 New Haven, CT  06510


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 G. ALEXANDER BONGARTZ, ESQ.
                                 Paul Hastings, LLP
                                 200 Park Avenue
                                 New York, NY  10166


For the U.S. Trustee:            HOLLEY L. CLAIBORN, ESQ.
                                 Office of the United States
                                   Trustee
                                 The Giaimo Federal Building
                                 150 Court Street, Room 302
                                 New Haven, CT  06510


For the Creditors Committee:     IRVE GOLDMAN, ESQ.
                                 Pullman & Comley
                                 850 Main Street
                                 Bridgeport, CT  06601
```

1          (Proceedings commenced at 3:39 p.m.)

2          THE COURTROOM DEPUTY:  Case no. 22-50073, How Wan

3     Kwok, and adversary no. 22-5027, Despins versus Bravo Luck

4     Limited, et al.

5          THE COURT:  Okay.  Good afternoon.  If we could

6     have appearances for the record starting with the Chapter 11

7     Trustee please.

8          MR. LINSEY:  Your Honor, Connecticut counsel for

9     the Chapter 11 Trustee, Patrick Linsey.

10          Mr. Despins' flight unfortunately was cancelled --

11          THE COURT:  Oh.

12          MR. LINSEY:  -- and so he is unable to be here

13     today.  I filed this morning a request that he be able to

14     participate by Zoom, but I understand Your Honor's been in

15     calendars all day --

16          THE COURT:  We've been in court, yes.

17          MR. LINSEY:  -- and I understand that you probably

18     didn't have time to address that.

19          THE COURT:  Unfortunately, no.

20          Does anyone have any opposition if we try to allow

21     Mr. Despins to participate in this hearing?  I don't know

22     how it's going to work, but --

23          MR. HENZY:  No opposition, Your Honor.

24          THE COURT:  Okay.  Thank you.

25          So hold on a second then.  Okay?  Let's let the

1    courtroom deputy see what we can do about getting

2    information to Mr. Despins.

3              So, yeah, we didn't see that request.  I mean --

4              MR. LINSEY:  No.  I realize it was just filed.

5              Obviously, I think it's been in the news, travel's

6    been difficult --

7              THE COURT:  Oh, yeah.  No.  I understand that.

8              MR. LINSEY:  -- all around lately.

9              THE COURT:  Unfortunately, people -- I do

10   understand.

11             MR. LINSEY:  To everyone's consternation.

12        (Pause.)

13             MR. LINSEY:  And, Your Honor, we have reached out

14   to him.  I do want to -- I'll just note that I spoke with

15   -- was in touch with him when I was on my way here to the

16   proceeding hearing, and he understood that the Court was in

17   calendars and other matters, and I think he anticipated that

18   he likely would not be able to participate, so --

19             THE COURT:  Okay.

20             MR. LINSEY:  -- we should know shortly.

21             THE COURT:  So you think we should proceed without

22   him?  Is that what you're saying?  Or do you want to wait a

23   few minutes?

24             MR. LINSEY:  I think there are a few -- I think we

25   can proceed.  And if we hear from him, then --

1        THE COURT:  All right.  Let me just check with the

2    courtroom deputy.

3        (Pause.)

4        THE COURT:  So you sent Trustee Despins an email

5    giving him the information in case he wants to --

6        THE COURTROOM DEPUTY:  Yes.

7        THE COURT:  -- in case he's able to join?

8        THE COURTROOM DEPUTY:  Yes.

9        THE COURT:  Okay.  All right.  So I think if that

10   works for everyone, we'll proceed.  And then if Trustee

11   Despins joins, he joins.

12       MR. LINSEY:  That's good.

13       THE COURT:  Does that make the most sense?

14       MR. LINSEY:  Yes.  And Alexander Bongartz of Paul

15   Hastings, counsel for the trustee, is here with me and so we

16   are prepared to address the matters that are on the calendar

17   today.

18       I will note that I am also here in my capacity as

19   counsel for Genever Holdings Corporation and Genever

20   Holdings, LLC.

21       THE COURT:  Thank you.

22       MR. LINSEY:  Thank you, Your Honor.

23       THE COURT:  All right.  So then we should continue

24   taking appearances please.

25       MR. BONGARTZ:  Yes.  Good afternoon, Your Honor.

1    Alex Bongartz, of Paul Hastings, for the trustee.

2            THE COURT:  Good afternoon.

3            MR. FRIEDMAN:  Good afternoon and Happy New Year,

4    Your Honor.  It's Peter Friedman from O'Melveny & Myers on

5    behalf of PAX.  I'm joined by my colleague, Mr. Stuart

6    Sarnoff.

7            MR. SARNOFF:  Good afternoon, Your Honor.

8            THE COURT:  Good afternoon.

9            MS. SMITH:  Good afternoon, Your Honor.  Annecca

10   Smith of Robinson & Cole, Connecticut counsel for PAX.

11           THE COURT:  Good afternoon.

12           MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

13   Claiborn for the U.S. Trustee.

14           MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

15   Goldman, Pullman & Comley, for the creditors committee.

16           THE COURT:  Good afternoon.

17           MR. HENZY:  Eric Henzy, of Zeisler & Zeisler, for

18   the debtor.

19           THE COURT:  Good afternoon.

20           MR. KINDSETH:  Good afternoon, Your Honor.

21   Stephen Kindseth for the debtor as well as HK USA.

22           THE COURT:  Good afternoon.

23           And I should have said Happy New Year to all.

24           So there are a lot of matters on the calendar

25   today, including the pretrial conference in Despins versus

1   Bravo Luck, but also the motion for order setting bar dates

2   and approving form of notice, an application to employ in

3   Genever Holdings Corporation case, an application to employ,

4   there's quite -- and a motion to modify consent order, and

5   another application to employ.

6          I was looking at the matters trying to figure out

7   what we should take up first and it sounds like it might

8   make sense to take up the applications to employ first,

9   because unless I'm missing something, I don't see any

10  objection to the applications to employ.

11         Am I correct on that?

12         MR. LINSEY:  That's correct, Your Honor.

13         THE COURT:  Okay.  So then let's look at first the

14  application -- let's look at 1198 which is the application

15  to employ Epiq.  Now, we had a discussion about this some

16  time ago.

17         Oh, there's Mr. Despins.  He's joining us now.

18  There he is.  Okay.  Good afternoon, Trustee Despins.

19         MR. DESPINS:  Good afternoon, Your Honor.  I

20  apologize for not being there in person.

21         THE COURT:  That's fine.  Not a problem.  Not a

22  problem.  I'm glad you could join us.

23         We were just about to discuss the applications to

24  employ that are on the calendar today because we thought we

25  might -- I thought we might be able to address them in a

1    somewhat summary fashion.

2         But I did have a question on the application to

3    employ the claims agent, because we had talked about that

4    some time ago.  Now, this was months ago, I think, if I

5    remember correctly, but I wasn't sure why -- well, you're

6    still intending to employ a claims agent, is that correct?

7         MR. DESPINS:  That is correct, Your Honor.  That's

8    a new issue.  We did not intend to do that earlier.

9         That came up as a result of, you know, a social

10   media campaign by the trustee in the fact that claimants

11   expressed to us their concern about filing a claim and being

12   subject to some form of harassment and, therefore, we needed

13   to figure out a way for people to file claims without

14   disclosing their identity.

15        And so initially we talked to the U.S. Trustee

16   saying why don't they send them to us, the trustee, and they

17   said, no, that's a bad idea because the debtor will say that

18   somehow we're playing with the claims.

19        So the only way to do it, and this is based on

20   what happened in one of these, sorry for a better term, one

21   of these catholic sex abuse cases was to use a claims agent

22   so people can send to the claims agent something where the

23   claims agent can redact the name and the information of the

24   claimant to protect the identity of the claimant.

25        So that just came up in the last 30 days, 40 days,

1    Your Honor.  We did not intend to use a claims agent before.

2              THE COURT:  All right.  Well, you know, obviously,

3    the issues that are being raised in the Southern District of

4    New York with regard to claims agents.  I'm sure you're

5    aware of that, correct?

6              MR. DESPINS:  Yes.

7              THE COURT:  Okay.

8              MR. DESPINS:  But I don't believe they're

9    implicated here.

10             THE COURT:  Well, that's what we need to make

11   sure.  Okay?  We need to make sure because that's -- it's a

12   -- it appears to be a serious issue that Chief Judge Glenn

13   and others in the Southern District of New York think are

14   very serious.

15             MR. DESPINS:  Yes.

16             THE COURT:  And, obviously, if we're going to have

17   a claims agent be employed by this estate, then I want to

18   make sure that their services are narrowed and very precise.

19             MR. DESPINS:  Correct.

20             THE COURT:  And I don't think anyone's objected to

21   this, but I do think that we have to see what happens as far

22   as the Southern District of New York issues are concerned.

23   Because whether or not anybody was aware of what might have

24   been going on, which I have no idea whether it was or

25   wasn't, that's what Judge Glenn is going to decide, right,

1    it is -- I don't want to have to deal with that issue.

2    Okay?  So I want to make it very clear --

3            MR. DESPINS:  But I think -- let me try to nip

4    that one in the bud, not now, but with the claims agent

5    after this hearing to make sure that none of those issues

6    are present here and we can assure the Court of that fact.

7    So that is what I would propose to do.

8            Because, obviously, this is tied into the bar

9    date.  We need to get moving on that.  So possibly it's time

10   sensitive.  So if we could then --

11           I understand Your Honor's concern.  I'm aware of

12   the issue.  I don't think it applies here, but I don't want

13   to give you that assurance without double checking with the

14   claims agent and actually perhaps in the order tightening

15   that up so there's no issue whatsoever.  So let me do that

16   and come back to the Court as soon as possible.

17           THE COURT:  Thank you.

18           Does anyone have any objection with regard to the

19   retention of Epiq as a claims agent in this case?

20           MR. HENZY:  Your Honor, Eric Henzy for the debtor.

21           The debtor does not have any objection to the

22   retention of Epiq as claims agent in the case.

23           We have not objected to the bar date motion.  I

24   will have some comments on the bar date motion.  And I think

25   Mr. Despins may have previewed this in the sense that the

1     bar date motion and the Epiq retention are tied, because the

2     reason Epiq is being retained is in connection with the

3     relief being sought in the bar date motion.

4              THE COURT:  Okay.

5              MR. HENZY:  So no objection to Epiq being

6     retained, but I will have some comments that relate to Epiq.

7              THE COURT:  Okay.  Thank you.

8              So with regard to this order, Trustee Despins, I

9     think one of the things that I -- I have to say that I

10     haven't studied the order so it could be that it's there,

11     but I don't see -- so the clerk's office is not going to

12     maintain a proof of -- a claims register.  Epiq is going to?

13              MR. DESPINS:  That's correct, Your Honor.  That's

14     the intent.  Yes.  And they will do so as agent of the

15     clerk's office.

16              MR. HENZY:  Although, Your Honor, just to be

17     clear, that in the Kwok case there already is a claims

18     register.

19              THE COURT:  There are some claims that have been

20     filed.  That's true.

21              MR. HENZY:  I think --

22              THE COURT:  There's a claims register that's been

23     created by the clerk's office.  That is correct.

24              MR. HENZY:  Yeah.  So we may have two --

25              THE COURT:  So are we talking about -- we're

1    talking only about claims that haven't been filed yet?

2              MR. DESPINS:  Correct.  We're talking about -- the

3    claims that have been filed, I think there are no more than

4    12, 13, something --

5              MR. HENZY:  I think it's 15.

6              THE COURT:  15?

7              MR. HENZY:  Yeah.

8              THE COURT:  Attorney Henzy thinks.  Okay.

9              So I guess we should make that clear, that there

10   are two claims registers, the claims registers that existed

11   before the retention of Epiq, and then the claims register

12   that Epiq is going to create and maintain, which --

13             MR. HENZY:  I guess I --

14             THE COURT:  The language about the confidential --

15   I mean, I think I'm a little concerned that the order

16   doesn't say that the -- does not provide -- it attempts to,

17   but it says to provide public access to every proof of claim

18   and to provide the clerk with a certified duplicate copy

19   thereof upon request of the clerk.

20             But I thought the purpose of Epiq was that we

21   weren't going to provide the public access to every proof of

22   claim?

23             MR. DESPINS:  Maybe Mr. Bongartz, my colleague --

24             MR. BONGARTZ:  Yes.

25             THE COURT:  Okay.  Go ahead.

1          MR. DESPINS:  -- can address that.

2          THE COURT:  Go ahead, Counsel.

3          MR. BONGARTZ:  Yes, Your Honor.  May I approach?

4          THE COURT:  Please.

5          MR. BONGARTZ:  Okay.  Thank you.

6          Good afternoon, Your Honor.

7          THE COURT:  Good afternoon.

8          MR. BONGARTZ:  You correctly identified that we

9     tried to address this through the immediately following

10    parenthetical at the end of paragraph 4 that the foregoing

11    is subject to and in accordance with any confidentiality

12    restrictions approved by the Court.

13          If you would like us to specifically cross-

14    reference the confidentiality restrictions that will be or,

15    you know, request be approved pursuant to the bar date

16    order, I'd be more than happy to do so.

17          THE COURT:  Okay.  I don't think you need to do

18    that yet.

19          But, yes, if we're going to grant the bar date

20    motion, then I want it to be clear in this order what Epiq's

21    obligations are with regard to these confidentiality issues

22    and whether or not -- what if somebody in the public wants

23    to see what Epiq has?  How does that work?

24          MR. BONGARTZ:  This is explained in the bar date

25    order, proposed bar date order, as follows.  Epiq will keep

1   the proofs of claims confidential, but will post redacted

2   versions of the proofs of claims where the names and contact

3   information of the claimants, if they choose to have their

4   proof of claim be treated confidentially where such

5   information would be redacted, and the claims register that

6   is publicly available on Epiq's website will post the proofs

7   of claims with that information redacted.

8          THE COURT:  Okay.  And then the public

9   availability, how do they -- they just go on the website?

10  They don't have to register or anything?

11         MR. BONGARTZ:  Correct.  It's a publicly available

12  website.  It will just be on a website on Epiq.

13         And I believe that in the bar date order we have

14  also identified the website where people can submit their

15  claims, which is the same website where people can also

16  review the redacted versions of claims that have been filed

17  and posted.

18         THE COURT:  Okay.  I'm just looking at this as

19  well.

20       (Pause.)

21         THE COURT:  You know, I'm looking at the proposed

22  order and the agreement with Epiq.  And, again, just so it's

23  clear, Epiq's right to make reasonable price increases is

24  not absolute.  It's still subject to court approval.  Okay?

25  So I think that needs to be clear.

1           Epiq understands there's no money to pay them,

2    correct?

3           MR. BONGARTZ:  Correct.

4           THE COURT:  Okay.

5           MR. BONGARTZ:  And, in fact, they have agreed --

6           THE COURT:  Because that's not what this agreement

7    says.

8           MR. BONGARTZ:  No.  No.  But they have agreed that

9    they will defer payment until there are resources available

10   in the estate.

11          And, in fact, actually the agreement does cover

12   this point.  Let me --

13          THE COURT:  Where does it say that?

14          MR. BONGARTZ:  Yeah.  Let me point you to the

15   section.  It's Section 3.1 at the end.  Epiq has agreed to

16   defer payment --

17          THE COURT:  Okay.  I didn't see that sentence.

18   Thank you.

19      (Pause.)

20          THE COURT:  Why is there an indemnification

21   provision in this agreement?  I mean, I know the answer is

22   because there always is.

23          But why is there an indemnification provision?

24   Why does Epiq need an indemnification provision?  I don't

25   understand that.

1          MR. BONGARTZ:  Well, it is part of their

2     engagement contract, but --

3          THE COURT:  I know it's part of their standard

4     agreement, but what --

5          MR. BONGARTZ:  -- we have --

6          THE COURT:  So we're going to open up claims

7     against the estate by Epiq?  I don't think that makes a lot

8     of sense.

9          I'd like you to see if they'd agree to delete that

10    provision or substantially narrow it, because it says, I

11    mean, it couldn't be broader, "Indemnified person may be

12    subject or involved in any capacity arising out of or

13    relating to this agreement or Epiq's rendering of services

14    pursuant hereto regardless of whether any indemnified person

15    is a party to other than losses resulting solely from gross

16    negligence or willful misconduct without limiting the

17    generality of the foregoing.  Losses include" --

18         I don't want to -- I'm not having litigation over

19    whether or not they should be indemnified.  I'm not doing

20    that.  Okay?  We've got too many other things going on in

21    this case.  We're not going to set ourselves up for an

22    indemnification argument.  Okay?

23         MR. BONGARTZ:  Understood.  Understood, Your

24    Honor.

25         I just would like to point out to a separate

1  section of the agreement, and that is Section 8, 8.C, which

2  applies notwithstanding anything to the contrary in the

3  agreement including the --

4          THE COURT:  Then you don't need the indemnity

5  agreement.

6          MR. BONGARTZ:  Well, the --

7          THE COURT:  See, that -- you know, I've done it

8  all.  I get it.  I understand.

9          MR. BONGARTZ:  Okay.

10         THE COURT:  I understand, but I'm not doing that.

11  I'm not going to have a claims agent come in and have

12  potential litigation in a Chapter -- it's just not going to

13  happen.  Or you're not going to have a claims agent.  I'm

14  not going to do it.  It's a waste of time and resources in a

15  case where we don't have the ability to waste more time or

16  any more resources.

17         MR. DESPINS:  Your Honor, I hear you a hundred

18  percent, but I had to beg to have these people take on this

19  thing without any payment on the current basis.  I really

20  fear that they'll just tell us, sorry, we're not doing it.

21         I don't disagree with your point.  That's not my

22  point.  I'm just really concerned that we will lose them and

23  nobody else is going to do this on a contingent basis.

24  That's my only concern.

25         THE COURT:  I understand.  But they're going to

1    have to make that decision because I'm not going to have

2    litigation about indemnity of a claims agent.  If all

3    they're doing is recording and taking claims in a case, then

4    why do they need to be indemnified?  For what?

5        (No response.)

6        THE COURT:  All right.  With regard to -- so, as

7    Attorney Henzy stated, Attorney -- so we've got it -- you

8    need me to look at the bar date motion at the same time.

9        So we essentially need to cross-reference these

10   issues in these orders, correct?  Is that what you're

11   telling me?

12       MR. BONGARTZ:  Yes.  The two go together.

13       THE COURT:  I know they go together.  But I'm

14   saying in the proposed orders, they don't -- there's no

15   reference from one to the other in the -- at least not in

16   the Epiq order, right?

17       So let's look at the bar date order.

18       Wait a minute.  I'm sorry.  Attorney Henzy, you

19   said you had comments.  Are you talking about to the order

20   or to the motion as a whole with regard to the bar date?

21       MR. HENZY:  Really to the order.

22       THE COURT:  Okay.  So then we'll go through the

23   order in a minute.

24       All right.  So the application to employ Epiq is

25   granted insofar as if they want to continue to be the claims

1    agent after what I said needs to be limited and fixed with

2    regard to the order.  If they don't agree to that, then I

3    guess we'll have to figure out how to proceed.  But

4    otherwise there's no need for me to sit here and look at

5    these orders, right?

6              I mean, the Court has to have some control over

7    what happens in the case and that's how this court believes

8    that should work.  And if Epiq has an issue with that, then

9    they'll have to let you know.  Okay?

10             Now, let's look at the bar date order.

11             MR. HENZY:  Just so I'm clear, Your Honor.  So is

12   that -- is the application to retain Epiq going to get

13   continued?

14             THE COURT:  No.  It's granted, unless they come

15   and tell me that Epiq isn't willing to abide by the terms

16   that I just stated on the record.

17             MR. HENZY:  Okay.  My only concern is you may

18   enter the bar date order and have it not really --

19             THE COURT:  I'm not going to enter anything until

20   I hear back on the whole -- since they're related, I'm not -

21   - that's not going to happen.  Okay?

22             MR. HENZY:  Thank you, Your Honor.

23             THE COURT:  But I understand your point, so that's

24   fine.

25             MR. FRIEDMAN:  Your Honor --

1            THE COURT:  So now we're looking at 1212, correct?

2            MR. FRIEDMAN:  Your Honor?

3            THE COURT:  Yeah.

4            MR. FRIEDMAN:  It's Peter Friedman for PAX.

5            THE COURT:  Yes.

6            MR. FRIEDMAN:  May I just ask that there be a time

7    limit by which --

8            THE COURT:  I will take care of all of that once

9    we get --

10           MR. FRIEDMAN:  -- yeah, by which they have to come

11   back, because --

12           THE COURT:  We're going to take care of all of

13   that once we get through these, through these motions.

14           MR. FRIEDMAN:  Thank you, Your Honor.

15           THE COURT:  The motion for order setting bar date.

16   So this is the proposed order that I should be going

17   through, correct?  Right at the moment?

18           MR. BONGARTZ:  You said docket no. 1212.

19           THE COURT:  I said the wrong docket number.

20           MR. BONGARTZ:  Okay.

21           THE COURT:  You're right.  It's 1191, correct?

22           MR. BONGARTZ:  Correct.

23           THE COURT:  So that was my mistake.  I'm sorry.

24   So let me get to that order.

25           (Pause.)

1          THE COURT:  All right.  I'm looking at the

2     redlined version of the order which is on -- I'll tell you

3     in a second where I am.

4          Do you want me to pull it up?  Would that be

5     helpful to you?

6          MR. BONGARTZ:  I have it in front of me.

7          THE COURT:  All right.  Attorney Henzy, do you

8     need it pulled up or do you have it in front of you?

9          MR. HENZY:  I have it in front of me, Your Honor.

10    Thank you.

11         THE COURT:  Okay.  So I'm at 191, page 48 of 81,

12    is that where I'm starting?  Right?  Okay.

13         All right.  So go -- I would like to hear from --

14    I've looked at the redlined.  I have a couple of questions

15    possibly, but I don't really have anything that I think

16    needs to be immediately changed, so maybe we should hear

17    from Attorney Henzy about what his comments are and then see

18    if there's anything else we need to do.

19         MR. BONGARTZ:  I'm more than happy to --

20         THE COURT:  Does that make sense?

21         MR. BONGARTZ:  That makes perfect sense.  I just

22    would like to preview that --

23         THE COURT:  Sure.  Go right ahead.

24         MR. BONGARTZ:  -- after discussions with counsel

25    for the official committee we have agreed to also make a few

1    minor modifications.  I'm happy to walk Your Honor through

2    those before or after Mr. Henzy has provided --

3              THE COURT:  That's fine.  The only question I have

4    -- actually, the only question I have is, I know we didn't

5    have the hearing until today.  You changed the date as of

6    December 2nd to January 27th --

7              MR. BONGARTZ:  Yes.

8              THE COURT:  -- but today's already January 3rd.

9              MR. BONGARTZ:  Yes.  Yes.

10             THE COURT:  So are you proposing to a different

11   date because the hearing wasn't held until today?

12             MR. BONGARTZ:  Correct.  I was going to address

13   that point as well.

14             THE COURT:  All right.  Go right ahead.

15             MR. BONGARTZ:  We are prepared to move it out by

16   30 days to February 27.

17             THE COURT:  Okay.  Thank you.

18             And then go ahead and preview the other issues

19   you'd like to preview for me please.

20             MR. BONGARTZ:  Thank you, Your Honor.  Just give

21   me a second.

22             THE COURT:  Certainly.

23             MR. BONGARTZ:  I'm just going to pull up the

24   document.  Okay.  So there are -- it's really just a handful

25   of changes.

1              The first document to look at actually is the

2      proposed bar date notice --

3              THE COURT:  Okay.

4              MR. BONGARTZ:  -- which is annex 1.

5              THE COURT:  Which is attached to the order.  Yeah.

6              MR. BONGARTZ:  Correct.  Let me -- I also have

7      hard copies of the markup if Your Honor prefers.

8              THE COURT:  I'm looking at it right now on the

9      computer.

10             MR. BONGARTZ:  Okay.

11             THE COURT:  Unless it's different from the --

12             MR. BONGARTZ:  It is.

13             THE COURT:  -- December 2nd --

14             MR. BONGARTZ:  It is.

15             THE COURT:  Oh.  Okay.  Yes.  Then would you hand

16     that up please.

17             MR. BONGARTZ:  Yes.  Of course.  And I have extra

18     copies for --

19             THE COURT:  Attorney Henzy and --

20             MR. BONGARTZ:  -- for the attorneys in the room.

21             THE COURT:  Okay.  Good.

22             MR. BONGARTZ:  May I approach?

23             THE COURT:  Please.  Thank you.

24             MR. BONGARTZ:  Just a second while I --

25         (Pause.)

1          MR. BONGARTZ:  Okay.  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. BONGARTZ:  All right.  In the bar date notice,

4     the first change --

5          THE COURT:  So don't go to the order, go to the

6     notice first.

7          MR. BONGARTZ:  Yeah.

8          THE COURT:  That's fine.

9          MR. BONGARTZ:  That's how I had organized it here,

10    but --

11         THE COURT:  That's fine.

12         MR. BONGARTZ:  -- we'll flip back to the order in

13    a second.

14         THE COURT:  Okay.  Go ahead.

15         MR. BONGARTZ:  This is on page 4 of the blackline,

16    Section 2, entitled What to File.

17         THE COURT:  Uh-huh.

18         MR. BONGARTZ:  In the second paragraph, counsel to

19    the committee suggested, and we agreed, to add the words or

20    the claimant's attorney at the end of the first sentence

21    such that it's consistent with the official form proof of

22    claim.

23         Then in --

24         THE COURT:  That's fine.

25         MR. BONGARTZ:  -- in paragraph or Section 3, right

1    after we identify the Epiq address where to submit proofs of

2    claims, as well as where we explain how to submit claims

3    electronically, we, again at the suggestion of counsel to

4    the committee, are adding a proviso to make absolutely clear

5    that if you do want to submit a claim on a confidential

6    basis you must submit the claim to the claims agent as

7    opposed to the Court directly.

8              So those are the two changes to the bar date

9    notice.

10             And then in the bar date order, in paragraph 3.D,

11   we have added, right after movants, we've added or the

12   debtors because the debtors could also amend the schedules.

13             THE COURT:  Okay.  Sure.

14             MR. BONGARTZ:  That's just a clarifying change.

15             And then in paragraph 4, this is a clarification

16   from our end.  We just wanted to avoid any confusion in this

17   regard, to make it clear, that the names and contact

18   information would be redacted wherever they may appear in

19   the proof of claim including in any attachments so, you

20   know, there's no gaps there.

21             And then the markup I've handed up to Your Honor

22   also reflects our new proposed bar date of February 27.

23             THE COURT:  I saw that.  Thank you.

24             MR. BONGARTZ:  Okay.  Those are all the changes

25   from our end.

1        And just to be clear, this blackline, where it's

2    marked to show changes, were against the proposed order that

3    we had attached to the addendum filed with the Court on

4    December 2nd.

5            THE COURT:  Okay.  Thank you very much.

6            Attorney Henzy, do you want to address your

7    comments then?

8            MR. HENZY:  Sure.  Thank you, Your Honor.

9            First, just a clarification based on the earlier

10   discussion is I think that there will now be two claims

11   registers included on a going forward basis because the way

12   this is set up a claimant can file either with the Court or

13   with the claims agent if they want their -- to take

14   advantage of these confidentiality provisions.

15           So I have no objection to that, but just --

16           THE COURT:  Is that your understanding, Counsel,

17   that there will be two claims registers maintained?

18           So somebody may get this, some individual or

19   company might get this order, they may decide they can just

20   file their proof of claim with the clerk's office.  Is that

21   your anticipation?

22           MR. BONGARTZ:  Yes, that was the thinking.

23           THE COURT:  Okay.  Okay.

24           MR. BONGARTZ:  But obviously subject to Your

25   Honor's --

1          THE COURT:  No, it's fine.  It's fine.  I just

2     want to make sure everybody's on the same page.

3          MR. BONGARTZ:  But the --

4          THE COURT:  This provision -- this proposal and

5     process is to really deal with confidential claims and

6     confidential information?

7          MR. BONGARTZ:  Correct.  It doesn't take anything

8     away from the process that we had envisioned prior --

9          THE COURT:  Okay.

10          MR. BONGARTZ:  -- to the recent round of changes.

11          THE COURT:  That's fine.

12          Okay.  So, Attorney Henzy, does that satisfy your

13     question?

14          MR. HENZY:  Yeah.  Again, that was just a -- that

15     was my understanding, just a clarification based on the

16     earlier discussion about that.

17          THE COURT:  Sure.  Go ahead.

18          MR. HENZY:  Second, Your Honor, the debtor objects

19     to pushing the bar date out to February 27.

20          I understand that the committee has agreed to

21     that, and I understand what the Court's view may be, but

22     that -- without getting into any detail at all on

23     discussions that have taken place in the case, the not

24     knowing is a significant driver in this case at this point.

25          And pushing it out another month at the rate that

1  I think administrative expenses are being incurred in this

2  case is -- I think it's just -- it's too long.

3          This is not a case that people don't know about.

4  It has had certainly a certain amount of publicity or maybe

5  notoriety.

6          I think January 27 is over three weeks.  I don't

7  think -- I don't know what someone would need here in terms

8  of times.  I just don't see how anybody here would not

9  understand whether or not they have a claim and they would

10  need that much time.

11          So I would ask that the date not be February 27,

12  that it be sooner than that.

13          MR. FRIEDMAN:  Your Honor, this is Peter Friedman

14  for PAX.

15          We would join that request, just that it be moved

16  as quickly as possible in the process.  We do think it's

17  important.  We do think the case has had notoriety for some

18  obvious reasons, and the sooner we -- the universe of

19  claims, I think the better for everybody.

20          MR. GOLDMAN:  Your Honor, the committee joins --

21          MR. DESPINS:  Your Honor --

22          THE COURT:  Hold on a second.

23          MR. GOLDMAN:  -- in Mr. --

24          THE COURT:  Hold on a second Trustee Despins.

25          Go ahead.

1          MR. GOLDMAN:  -- in Mr. Friedman's position on

2    behalf of PAX.  Perhaps another week or two.  But I think we

3    do benefit from having a claims bar date that is shorter

4    than February 27th.

5          THE COURT:  Attorney Claiborn?

6          MS. CLAIBORN:  Your Honor, the U.S. Trustee

7    believes an additional amount of time is appropriate.  There

8    is notice provisions within this process that will take some

9    time to actually accomplish.

10          And so what we're really talking about by the time

11    that is all said and done, and by the time this court enters

12    this order, it's probably sometime around about a period of

13    a month for creditors to actually get notice and get a proof

14    of claim on file with the Court or with Epiq or wherever.

15          And there are creditors who through no fault of

16    anyone here may not actually be following the news coverage

17    and may not be aware of what's going on, so we need time for

18    those people to take this into consideration and take

19    appropriate action if they want to file a proof of claim.

20          THE COURT:  Trustee Despins, did you want to be

21    heard?

22          MR. DESPINS:  Yes.

23          Just as Your Honor must remember that numerous

24    claimants are located overseas so -- and English not being

25    their first language there's a whole process issue here.

1    So I get the point that the earlier the better.

2    And I understand why PAX would want that because their claim

3    is already there, so they don't really care about other

4    claimants, but we have to be careful.

5         There are, you know, numerous people that are

6    contacting us from overseas.  You know, not only China, but

7    we're talking about Australia, U.K., et cetera, so to put a

8    bar date at the 27th of January would be I'm sorry to say

9    that it would be insane.

10        February 27, now, can it be shorter by a few days?

11   Sure.

12        But we have to be careful here because there are a

13   lot -- these people are pro se, English is not their first

14   language, so there's a whole process issue that needs to

15   occur here.  Thank you.

16        THE COURT:  Thank you.

17        Attorney Henzy?

18        MR. HENZY:  Your Honor, I guess I've said my

19   piece.  I think there should have been a bar date here a

20   long time ago.  The debtors had no control over this

21   whatsoever.  The longer this goes out, the higher degree of

22   difficulty in this case, in a case that's already pretty

23   high in a degree of difficulty.

24        But, you know, I've said --

25        THE COURT:  Okay.

1          MR. HENZY:  -- I've made my position clear.

2          THE COURT:  All right.  Well, I'll -- I'm

3     considering everyone's statements.

4          Go on to your next point please.

5          MR. HENZY:  Thank you, Your Honor.

6          Again, the debtor does not agree that this

7     confidentiality relief is necessary.  Other people have

8     filed proofs of claim and I'm not aware that there's been

9     any problem.  But, again, trying not to fight about things

10    that we don't need to fight about, I think it probably makes

11    sense to see what claims actually get filed under this

12    procedure.

13         The order does provide that Zeisler & Zeisler gets

14    to see the proof of claim subject to confidentiality,

15    subject to a protective order, but at some point we can't by

16    ourselves determine the validity or lack of validity of a

17    claim.  So at some point we're going to need someone on

18    behalf of the debtor potentially to look at this claims.

19         I mean, among other things, the debtor may file a

20    plan and it would be difficult for us to file a plan if we

21    don't know what the claims are.

22         So my only comment is that this confidentiality

23    procedure should be subject to further order of the Court.

24         We should just have the ability after we've seen

25    what claims come in to come before the Court and ask for a

1    change and we can have a discussion at that time about

2    whatever protective mechanisms need to be put in place.

3          But just a simple addition to the order that says

4    this is subject to further order of the Court, which I think

5    arguably it is anyway, but I want everyone to be on notice

6    that we may be coming in front of you, Your Honor, and

7    saying we need to share this information with someone or the

8    debtor to be able to proceed with things that we have a

9    right to proceed with and that we want to proceed with.

10         THE COURT:  Counsel?

11         MR. DESPINS:  We have no problems with that, Your

12   Honor.

13         MR. BONGARTZ:  And I was just going to point out

14   that the order already provides that the Court may authorize

15   that additional parties get access to the confidential

16   proofs of claims subject to the protective order.  So I

17   don't know if that's what Mr. Henzy had in mind or --

18         MR. HENZY:  I wasn't clear that that covered -- at

19   some point we may need to go to the debtor and say this

20   person has made this claim against you, is there any

21   validity to the claim?  I don't know how we avoid having the

22   debtor involved.

23         So I appreciate that language, but I -- kind of

24   the whole purpose of this was, as I understand it, was to

25   keep this information out of the hands of the debtor and at

1   some point I think that just doesn't work.  Maybe.  Again,

2   it may be that no one files one of these claims.

3           So, again, we're trying to avoid fighting about

4   something we may not need to fight about.

5           It may be that based on our -- just Zeisler &

6   Zeisler's review of the claims we can -- that may be enough,

7   but there may be a situation where this -- a proof of claim,

8   one or more, needs to be shared with the debtor in order to

9   proceed with the case.

10          THE COURT:  What language were you referring to

11   that you thought might address, Attorney --

12          MR. BONGARTZ:  Yes.  Yes.  This is on page 6,

13   paragraph 4.B.iii at the bottom, subject to the protective

14   order, such other persons as the Court may authorize to

15   access the confidential claim pursuant to a subsequent

16   order.  And that could include anyone that the Court deems

17   necessary to become an authorized party.

18          MR. HENZY:  Your Honor, if counsel is saying on

19   the record that that other persons could include the debtor,

20   then I think that's subject to obviously the Court --

21          THE COURT:  I think that's what he's saying.

22          MR. HENZY:  Yes.

23          THE COURT:  Right?

24          MR. HENZY:  Then that -- then that --

25          THE COURT:  Then you're all set on that issue.

1              MR. HENZY:  -- then I think I'm all set.  Yes,

2      Your Honor.

3              THE COURT:  Okay.  Go ahead.  Then what's your

4      next issue?

5              MR. HENZY:  That was it, Your Honor.

6              THE COURT:  All right.  So the only issue is the

7      bar date?  That's the only issue?  That's the only issue?

8              MR. HENZY:  Yes, Your Honor.

9              THE COURT:  So some people want February 27th.

10     Some people want January 27th.  There's, you know -- I mean,

11     we can be very non-scientific --

12             I'm sorry.  Who's that?  I don't know who that

13     was.

14         (Pause.)

15             THE COURT:  I'll set the bar date at February 17,

16     which is a Friday.  Okay?

17             So then that -- so then that order will enter.

18             Other than, counsel, I just think we do need to

19     make a cross-reference between the Epiq order --

20             MR. BONGARTZ:  Sure.

21             THE COURT:  -- and this order.  Okay?

22             MR. BONGARTZ:  Yes, we will.  We will add

23     language.  And I think it goes right in the -- at the end of

24     paragraph 4 where you've already identified the issue of

25     access to the claims register.

1              THE COURT:  Yes.  Thank you.

2              And I do -- I have reviewed the form of notice and

3      all that, the notice of deadlines that is attached.  I don't

4      have any further questions, comments, concerns.

5              Obviously, you know, you're all going to do

6      everything you can with regard to service.

7              MR. BONGARTZ:  Of course.

8              THE COURT:  And you'll demonstrate how service of

9      this was made.

10             MR. BONGARTZ:  Yes.

11             THE COURT:  And then we'll go from there.

12             So the motion for order setting bar date is

13     granted with -- you're going to have to submit the new order

14     anyway, right?

15             MR. BONGARTZ:  Correct.

16             THE COURT:  As you will with the Epiq order.

17             But I agree with Attorney Henzy.  We won't enter

18     any order until we -- the process that we use is that we

19     submit the orders to the courtroom deputy box in Bridgeport.

20     You don't have to put it on the docket.  I mean, some people

21     do and that's fine, but you don't have to with everyone in

22     agreement here.  We're not --

23             But do you think you'll be able to do that by this

24     Friday?

25             MR. BONGARTZ:  Yes, we will.  We will endeavor,

1    obviously subject to talking to Epiq --

2              THE COURT:  Right.

3              MR. BONGARTZ:  -- which I don't know what their

4    response is going to be.

5              THE COURT:  All right.  Well, I would like you to

6    try to do that by this Friday --

7              MR. BONGARTZ:  Yes.

8              THE COURT:  -- because I would like to get the

9    orders entered as soon as possible so you can start the

10   process as soon as possible.  Okay?

11             MR. BONGARTZ:  Yes.

12             THE COURT:  All right.  So then let's look at the

13   next matter that we need to look at.

14             MR. DESPINS:  Your Honor --

15             THE COURT:  Yes.

16             MR. DESPINS:  -- if I may on the Epiq matter?

17   I was wondering if there's a way to finesse the issue you

18   raised by adding some language that would say something like

19   provided, however, that the bankruptcy court shall have

20   exclusive jurisdiction to determine the right of Epiq to any

21   such (indiscernible) so it's clear that we can go -- that

22   (indiscernible) the only one -- it's clear that subject to

23   the gross negligence exclusion.

24             Because I really fear, Your Honor, that they'll

25   say, look, this was a favor we're doing you because we've

1     dealt with you for many years.

2              I know how they're -- they're so dogmatic about

3     their rights.  And I'm really trying to finesse the issue,

4     Your Honor, so that you're comfortable and I can tell them

5     they should be comfortable as well.

6              THE COURT:  Does anyone have any concerns about

7     what Trustee Despins just said with regard to the

8     indemnification provision in the Epiq agreement?

9              MR. BONGARTZ:  I just wanted to add to that if

10    Your Honor won't mind?

11             THE COURT:  Go right ahead.

12             MR. BONGARTZ:  We've already included in

13    paragraphs 12 and 13 of the proposed order a structure that

14    there is no indemnification unless approved by the Court.

15             THE COURT:  Okay.  Fine.  Then we'll live with it,

16    but I don't want to see any litigation over indemnification.

17    I really don't.

18             MR. DESPINS:  Understood.

19             THE COURT:  I just don't think that would be of --

20             MR. DESPINS:  We'll make sure they understand

21    that.

22             THE COURT:  I think that would be a waste of

23    everyone's time.

24             MR. DESPINS:  Okay.

25             MR. BONGARTZ:  Just to --

1          MR. DESPINS:  Thank you, Your Honor.

2          MR. BONGARTZ:  Just so I can button his up --

3          THE COURT:  Sure.

4          MR. BONGARTZ:  -- I want to make sure the only

5     change then will be a process for notifying the Court and

6     parties in interest of a change in the rates of Epiq.  Is

7     that --

8          THE COURT:  And a cross-reference --

9          MR. BONGARTZ:  Yes.

10          THE COURT:  -- between the two orders.

11          MR. BONGARTZ:  Correct.  Okay.

12          THE COURT:  Both orders should cross-reference the

13     other.  I think they should.  I think that if it's -- they

14     work hand in hand, then we should make sure that they --

15     someone who has no idea of what's going on reading them

16     might understand that.  Okay?

17          MR. BONGARTZ:  Understood, Your Honor.

18          THE COURT:  Thank you.

19          Now, the next matter is the application to employ

20     an engineering and operations and certification specialist?

21          MR. BONGARTZ:  Yes.  I will be handling that

22     application.

23          THE COURT:  Go right ahead.

24          Does anyone have any objection to this motion that

25     you --

1          MR. BONGARTZ:  Yes.  I was just going to start.

2     This is an uncontested --

3          THE COURT:  Okay.

4          MR. BONGARTZ:  -- application to retain

5     Engineering Operations and Certification Services, LLC that

6     the trustee engaged to conduct the inspection of the Lady

7     May in accordance with the repair reserve order previously

8     granted by the Court.

9          I don't, as I -- as you correctly observed, there

10    have been no objections.

11         And I'm happy to walk the Court through the

12    application, but if that's not necessary, we would obviously

13    request that the application be granted.

14         I do want to flag just briefly that we did file a

15    revised proposed order --

16         THE COURT:  I'm looking at the revised proposed

17    order right now.

18         MR. BONGARTZ:  Yes.  We filed that yesterday.

19         THE COURT:  Yes.

20         MR. BONGARTZ:  -- reflecting two changes requested

21    by the United States Trustee's Office.  They're fairly

22    straight forward.

23         They asked that it be made clear that

24    notwithstanding anything to the contrary in the engagement

25    letter, that the retention is governed by the laws of

1    Connecticut, that any dispute arising out of that retention

2    be resolved by this court which obviously we were okay with.

3              THE COURT:  Thank you.  Yes, I see that in

4    paragraph 8.

5              MR. BONGARTZ:  I would like to add one sort of

6    additional data point.

7              The inspection was of the initial work, to be

8    precise, the inspection of the initial work was conducted,

9    and we have received an invoice from Mr. White, who is the

10   President and CEO of Engineering Operation Services.

11             And I just wanted to in the interest of full

12   disclosure tell the court that their fees for that

13   inspection were less than $10,000, so well below the cap

14   envisioned under the fee protocol.

15             And we intend, subject to approval of the

16   retention, to submit that invoice obviously to the Court by

17   filing it on the docket and giving parties in interest the

18   contemplated notice period.

19             THE COURT:  Okay.  Thank you very much.

20             MR. BONGARTZ:  Thank you.

21             THE COURT:  Mr. Kindseth?

22             MR. KINDSETH:  Yes.

23             I actually wasn't going to make any comment, but

24   in light of what was said about the initial inspection I

25   just want to alert the Court that there is a dispute as to

1    whether or not there was an inspection or this inspection

2    period with an initial inspection and then some open-ended

3    inspection duration, which we dispute.

4              From our perspective, the inspection has been

5    conducted and we've provided all the information.  There's

6    been a sea trial.  I believe that everything has passed with

7    flying colors.

8              We've been seeking confirmation from the trustee

9    that that is, in fact, the case, that the Lady May is in

10   good working order.  We're waiting for a response.  And we

11   dispute that there's this prolonged inspection process.

12             THE COURT:  Okay.  Well, that's not on the

13   calendar today.

14             MR. KINDSETH:  I was just responding --

15             THE COURT:  I understand.

16             What's on the calendar today is the retention of

17   this entity, Engineering Operations and Certification

18   Services.  And no one has any objection to that that I -- no

19   one has filed any written objection and there's no one

20   participating in this hearing today that's objecting.

21             So I appreciate your comment and we'll see what

22   happens.  Okay?

23             MR. KINDSETH:  Thank you.

24             THE COURT:  That's where we'll head.

25             Does anyone else wish to be heard on this

1    application?

2         (No response.)

3         THE COURT:  Okay.  Hearing nothing, then the

4    application to employ Engineering Operations and

5    Certification Services, LLC as expert is granted for the

6    reasons stated on the record and the revised proposed order

7    will enter.

8         MR. BONGARTZ:  Thank you, Your Honor.

9         THE COURT:  Thank you.

10        Just give me one second please.

11        (Pause.)

12        THE COURT:  All right.  Then we also have an

13   application to employ the lawyers in the British Virgin

14   Islands, correct?

15        MR. LINSEY:  Yes, Your Honor.  I can address that.

16        THE COURT:  Okay.  Thank you.  Thank you, Counsel.

17        MR. LINSEY:  Your Honor, Patrick Linsey for --

18   I'll just take care of it if it's all the same to the Court

19   -- Patrick Linsey for Genever Holdings Corporation, which

20   again is the intermediate entity between Ho Wan Kwok, the

21   debtor, individual debtor, and Genever Holdings, LLC, which

22   is the owner of the apartment at the Sherry-Netherland

23   Hotel.

24        As Your Honor knows, we filed the Chapter 11 case

25   for Genever Holdings Corporation, which has been

1    consolidated with the other two Chapter 11 cases -- rather

2    is now jointly administered with the other two Chapter 11

3    cases.

4         This law firm, Harney Westwood & Riegels, in the

5    British Virgin Islands has already been employed by the

6    Court's order to represent the trustee with respect to

7    matters in the British Virgin Islands and BVI law.

8         This application is for the firm to be employed to

9    represent Genever Holdings Corporation.  Genever Holdings

10   Corporation has a director in the British Virgin Islands and

11   issues of BVI law have come up and may come up in the

12   future.

13        There have been no objections filed and we would

14   ask that the order be granted.

15        THE COURT:  Okay.  Thank you.

16        Does anyone else wish to be heard on the

17   application to employ Harney Westwood & Riegels as British

18   Virgin Islands counsel for the debtor?  One of the debtors

19   obviously, Genever Holdings Corp., right, Corp., not LLC?

20        MR. LINSEY:  Corporation, yeah, as opposed to LLC.

21        THE COURT:  Right.

22     (No response.)

23        THE COURT:  Okay.  Hearing nothing, I have

24   reviewed the application to employ.  It appears that the

25   application is in proper order.  I understand why the debtor

1   is seeking to employ the counsel.

2            The information submitted complies with the

3   Bankruptcy Code and the bankruptcy rules and our local

4   rules.

5            No one has filed a written objection to the

6   application and there is no one participating in this

7   hearing today that is objecting to the application.

8            For all those reasons, the application to employ

9   is granted and the proposed order, which I have reviewed

10  that was attached to the application, can enter.

11           MR. LINSEY:  Thank you, Your Honor.

12           THE COURT:  Thank you.

13           All right.  Then we have two other things on the

14  calendar, two other matters.  We have the pretrial

15  conference in the Bravo Luck adversary, but also the motion

16  to modify a consent order with regard to the amounts in

17  reserve for the repairs.

18           I assume that the modification of the consent

19  order will take more time than the adversary proceeding, but

20  I'm not sure about that.

21           MR. KINDSETH:  It actually probably will not, Your

22  Honor.

23           THE COURT:  Okay.  Go ahead then.

24           MR. KINDSETH:  Thank you.  Steve Kindseth for the

25  movant, HK USA.

1            Before the Court is a motion by my client to

2    obtain this court's permission to use some of the repair

3    reserve money to pay ongoing operating expenses for the Lady

4    May.

5            In response to the motion, the trustee has made a

6    proposal, and we're evaluating the proposal, and I

7    anticipate --

8            THE COURT:  Oh, okay.

9            MR. KINDSETH:  -- we're going to be engaging in

10   conversations concerning a hopefully consensual resolution

11   to this motion, so I'd ask to continue it one week if I

12   could, Your Honor.

13           THE COURT:  Okay.  Hold on one second please.  But

14   I understand what you're saying, so just give me a second to

15   look at the calendar and things.

16       (Pause.)

17           THE COURT:  Next Tuesday is -- we have regular

18   calendar and Chapter 13 day so that wouldn't -- I mean, you

19   could wait around.  I mean, I can't promise you you'd be

20   heard before 2:30, 3 o'clock, but we could continue it to

21   that if you would like to do so.

22           MR. KINDSETH:  That would -- that's fine by me.

23           THE COURT:  Trustee Despins and counsel for

24   Trustee Despins?

25           MR. DESPINS:  That works.

1          THE COURT:  Okay.  All right.  So then let's -- I

2     would say to be on the safe side, I would say 3 p.m. to be

3     on the safe side.  Okay?

4          MR. KINDSETH:  Thank you very much, Your Honor.

5          THE COURT:  If you want to some in at 2:45 and

6     we're done with the other matters, we can start then, but

7     I'm just not sure.  It's hard to predict on Chapter 13

8     hearings how long they'll last.

9          MR. KINDSETH:  Thank you.

10          THE COURT:  All right.  So then we will continue

11     the hearing on the motion to modify the consent order

12     regarding the repair reserve to January 10 at 3 p.m.  Okay.

13          Then the only thing left on the calendar today

14     then is the adversary proceeding pretrial conference.  Is

15     that -- that's all I see anyway.  Am I missing something?

16          MR. DESPINS:  That's correct.

17          THE COURT:  Okay.  All right.  So in the pretrial

18     conference, there has not been an answer filed by the

19     defendants, correct?

20          So who will be discussing the pretrial conference

21     at the moment?

22          MR. LINSEY:  Your Honor, there was a -- we were

23     contacted yesterday by counsel who will be coming in to

24     represent the defendant, Bravo Luck Limited, whose name is

25     Francis Lawall, of the law firm Troutman Pepper.  And he

1  notified us that he will be filing an appearance and

2  responding to the complaint.  However --

3          THE COURT:  Only for Bravo Luck?

4          MR. LINSEY:  Correct, Your Honor.

5          THE COURT:  Okay.  Go ahead.

6          MR. LINSEY:  However, he's --

7          THE COURT:  Sorry.  I didn't mean to interrupt,

8  but I just wanted to make sure.

9          MR. LINSEY:  No.  No.  I appreciate the question,

10 Your Honor.

11         However, he's in the process of locating

12 Connecticut counsel and he asked that the -- this pretrial

13 conference be continued.  And the trustee consents to that.

14 I should say all the adversary plaintiffs would consent to

15 that.

16         It may make more sense to have a pretrial

17 conference after the response date in any event to the

18 complaints, so --

19         THE COURT:  Well, the response date has passed.

20         You're talking about with regard to the other

21 adversary proceedings?

22         MR. LINSEY:  Correct, Your Honor.

23         THE COURT:  So right now you filed a motion to

24 consolidate three adversary proceedings, correct?

25         MR. LINSEY:  I have, Your Honor.

1          THE COURT:  Okay.  And we haven't --

2          MR. LINSEY:  And in one --

3          THE COURT:  -- we haven't -- motions to

4    consolidate normally do get set for a hearing in case

5    someone has an opposition to that.

6          The problem with these three adversary

7    proceedings, it's not a problem, is that we don't have

8    appearance on behalf of the defendants yet, correct?  In any

9    of them, do we?

10         MR. LINSEY:  We do not.  And I anticipate that

11   that problem will be resolved in short order, in a matter of

12   days, as to what we heard from Mr. Lawall.

13         THE COURT:  So how -- what would you like to do?

14         MR. LINSEY:  What we'd like to do is continue this

15   pretrial conference to a date in early November, I'm sorry,

16   early February.

17         THE COURT:  When you say early November, wow.

18         All right.  Early February is either -- I think

19   it's going to have to be February 14th, but let me look at

20   the docket.

21      (Pause.)

22         THE COURT:  It's going to have to be February 14th

23   in the afternoon or some other day that week.  But if --

24   that's a Tuesday.  I mean, that's where we are.

25         Now, the motion to consolidate these adversaries

1    could come on before then and they could be consolidated and

2    we could figure out how you're going to deal with them if

3    you want to do that.

4              MR. LINSEY:  It may, Your Honor.  The motions to

5    consolidate are also something that we're discussing with

6    Mr. Lawall and it is possible that there will be a consent

7    order submitted.

8              THE COURT:  Well, do you want to continue this

9    pretrial conference to January 31st then?

10             MR. LINSEY:  I believe that would be fine.  Sure.

11             THE COURT:  Does anyone have any opposition to

12   January 31st at 3:00 p.m.?

13        (No response.)

14             THE COURT:  All right.  So then we will continue

15   the pretrial conference to January 31st at 3:00 p.m.

16             So the motion to consolidate, are you asking the

17   Court to set that for a hearing on these three adversary

18   proceedings, Attorney Linsey?

19             MR. LINSEY:  No, Your Honor.  There have not been

20   any objections filed at this point, so I think we'd like to

21   see --

22             THE COURT:  There is an objection deadline.  You

23   filed motions to consolidate.  I don't think you filed an

24   objection deadline, did you?

25             MR. LINSEY:  No.

1          But based on my understanding of the local rules

2     we would then be following District Court Local Rule 7, so

3     there would be a 21-day objection period.

4          THE COURT:  That's true and not true.

5          Because that's true if you seek it -- generally

6     that's true in adversary proceedings, but I don't know that

7     any of the adversary proceedings say that.

8          Actually, you filed the motions all in the

9     adversary proceedings, so did the docket entry indicate

10    there was a 21-day response date?

11         I'm looking at the courtroom deputy now.  I can

12    look too.

13         MR. LINSEY:  Thank you, Your Honor.

14       (Pause.)

15         THE COURT:  All right.  There has not been any

16    response date indicated on the docket yet, at least in 27-

17    5027.  What happened was the rules require you to file them

18    in all the cases.  You did on the 29th it looks like.  We'll

19    look at it.  Okay.  We'll just look at it.

20         THE COURTROOM DEPUTY:  I think there was on the

21    18th.

22         THE COURT:  Yeah.

23         THE COURTROOM DEPUTY:  I think then the deadline

24    was the 18th.

25         THE COURT:  The 18th of what?

```
 1              THE COURTROOM DEPUTY:  Of January, coming up.  Or
 2      is it the 18th?
 3              THE COURT:  Where does it say that?
 4              THE COURTROOM DEPUTY:  Let me --
 5              THE COURT:  It doesn't say that on the docket
 6      though.
 7              THE COURTROOM DEPUTY:  In number 5, I'm sorry,
 8      number 8, ECF No. 8.
 9              THE COURT:  Oh, good.  All right.  There it is.
10      All right.  Then it's the 18th.  Okay.  Great.  Thank you.
11              See that's why I ask the courtroom deputy.
12              THE COURTROOM DEPUTY:  You're welcome.
13              THE COURT:  Okay.  And it says that in the other
14      two adversaries as well?
15              THE COURTROOM DEPUTY:  Let me check.
16              THE COURT:  It might not.  It might --
17              THE COURTROOM DEPUTY:  Right.
18              THE COURT:  It might be one more day.
19              THE COURTROOM DEPUTY:  On 22 -- on 22-5030, it's
20      January 19th.
21              THE COURT:  Yeah.  The next day.
22              THE COURTROOM DEPUTY:  And let me --
23              THE COURT:  And the same thing will be true in 35,
24      because that 21 days was keyed off when you filed the motion
25      to consolidate in the other two adversary proceedings.
```

1          THE COURTROOM DEPUTY:  Right.

2          MR. LINSEY:  Understood, Your Honor.

3          THE COURT:  So the 19th is going to be the

4     response date essentially.

5          MR. LINSEY:  So here's what I would propose, Your

6     Honor.  I don't know that we need to have a hearing at this

7     point.

8          THE COURT:  No, we don't.  We'll wait and see what

9     response you get, if any.

10          MR. LINSEY:  Correct.

11          And I would ask that if there is a consent to a

12     form of consolidation order --

13          THE COURT:  Yeah.  Then you just file it.

14          MR. LINSEY:  -- that we just be permitted to file

15     that --

16          THE COURT:  You just file it.  You don't need --

17          MR. LINSEY:  -- as a consent order.

18          THE COURT:  You don't need permission.

19          MR. LINSEY:  Okay.

20          THE COURT:  You just file it.

21          MR. LINSEY:  Thank you, Your Honor.

22          THE COURT:  All right.  Let me make sure that

23     we're not missing anything.

24          Does anyone else think that there's anything else

25     we need to address this afternoon?

1           MR. BONGARTZ:  Your Honor, I have one final matter

2      I would address.

3           THE COURT:  Is it on the calendar today?

4           If it's -- I'm not saying I'm not going to listen

5      to you.  I'm just saying is there something that's -- that

6      I'm missing that's on today's calendar?

7           And you're saying, no, but there's something else

8      you want to talk about?

9           MR. BONGARTZ:  Correct.

10          THE COURT:  Okay.  Go right ahead.

11          MR. BONGARTZ:  Yes.  I hope this can be resolved

12     quickly and briefly.

13          So this relates to the HK USA adversary

14     proceeding.  And as Your Honor knows there is a PJR hearing

15     coming up in mid-February.

16          In connection with the trustee's application for

17     prejudgment remedies, we intend to depose the debtor, and we

18     had listed him as a witness on our witness list, and HK USA

19     had listed him on their list as well, although they have

20     recently indicated that they may not call him as a witness.

21          We sought confirmation from debtor's counsel that

22     they would accept service of the subpoena, but we've been

23     informed that Zeisler is not authorized to accept service of

24     the deposition subpoena.  And Zeisler has also informed us

25     that the debtor's other counsel, Mr. Aaron Mitchell, has

1    also not been authorized by the debtor to accept service.

2              This puts us, you know, in a position where we

3    will have to incur additional expense to serve the debtor

4    here in this case with a subpoena related to an application

5    in one of the adversary proceedings.

6              And we believe that debtor's counsel should accept

7    the subpoena under these circumstances.  I mean, it is the

8    debtor's case.  The debtor does have a duty to cooperate

9    with the trustee under the Bankruptcy Code.

10             The debtor's counsel has also filed a notice of

11   appearance demanding that all notices and all papers served

12   be served on them.

13             So we're looking for, you know, the Court's

14   guidance and hopefully instruction as to how to proceed

15   here.  You know, that's the issue I wanted to raise.

16             THE COURT:  Okay.  Thank you.

17             MR. BONGARTZ:  Thank you.

18             THE COURT:  Attorney Henzy, Attorney Kindseth, why

19   would you not accept service of a subpoena when you are

20   representing the debtor in this case?

21             You've made --

22             MR. KINDSETH:  First of all, Your Honor, I don't

23   think we've responded to that email.  And I'm not lead

24   counsel.

25             And so you're saying my office affirmatively said

1    that we would not accept service, or are you still waiting

2    for a response?

3           MR. BONGARTZ:  We have an affirmative response

4    from Mr. Aaron Romney --

5           MR. KINDSETH:  Right.

6           MR. BONGARTZ:  -- confirming that --

7           MR. KINDSETH:  So Attorneys Romney and Moriarty

8    are handling this matter, Your Honor.  And the adversary

9    proceeding is not --

10           THE COURT:  You know what?  They may be handling

11    this matter, but you're all working together in this case.

12    There's no reason why your firm shouldn't accept service of

13    a subpoena when you represent this individual in this case.

14           What's the reason?

15           MR. KINDSETH:  Your Honor --

16           THE COURT:  Tell me why you shouldn't be required

17    to accept service of that subpoena.

18           MR. KINDSETH:  Your Honor, I can only -- as a

19    representative, as a lawyer for a client, I can only do and

20    my firm can only do what we are authorized to do.  If we're

21    not authorized to do it, then it's as simple as that.

22           THE COURT:  You're the debtor in a Chapter 11 case

23    in which your client voluntarily consented to the

24    jurisdiction of this court.

25           You can't do things to evade service.  And your

1    client can't do things to evade service.  He voluntarily

2    came to this court.

3              And if I have to, I will order that you have to

4    accept service, because I don't want to spend one more

5    minute on that.  That's a complete waste of time.  And that

6    doesn't help your client in this case.

7              MR. KINDSETH:  And just to be very clear, Your

8    Honor --

9              THE COURT:  So this is a prejudgment remedy

10   hearing that has been going on -- we've been working toward

11   very -- there's been parts of the time where you've -- the

12   parties have worked well, but I am not going to have a fight

13   about service of a subpoena on a debtor who -- by the way,

14   every single matter that we put on the calendar you're

15   allowed to come in and object to when you're no longer the

16   debtor-in-possession, when your client is no longer the

17   debtor-in-possession.  But he came to this court

18   voluntarily.

19             If you're telling me that your -- you are not

20   authorized and will not be authorized to seek service of a

21   subpoena, then I'll have to enter some kind of a form of

22   order that your client's not going to like.  And you're not

23   going to like.  Because you have obligations to this court

24   as the debtor's counsel whether this debtor is in possession

25   or not in possession.

1          MR. KINDSETH:  May I be heard, Your Honor?

2          THE COURT:  Yes, you may.

3          MR. KINDSETH:  Thank you, Your Honor.

4          First of all, to be very clear, this is not in the

5    bankruptcy case.  This is in the adversary proceeding

6    brought with HK USA and Mei Guo, and Mr. Kwok is a --

7          THE COURT:  That your client brought.  Your

8    client, HK International, commenced that adversary

9    proceeding.

10          MR. KINDSETH:  Which is -- and Mr. Kwok is not a

11    party.  So this is a non-party, third-party subpoena, not in

12    the bankruptcy case --

13          THE COURT:  Okay.  All right.  If you're going to

14    take that position, then you can't complain about the cost

15    that the trustee has to incur in order to serve Mr. Kwok.

16    So you do that at your own peril.

17          MR. KINDSETH:  Again, we were -- I was not aware

18    that a definitive response had been provided.

19          We will consult with our client, that being Mr.

20    Kwok.  But, again, in the context of the adversary

21    proceeding is a third-party witness.  And, you know, he will

22    guide us and instruct us as he deems appropriate.

23          THE COURT:  You put on your list of witnesses and

24    exhibits Mr. Kwok as a witness.

25          MR. KINDSETH:  And we actually have already

1    advised -- I believe we've already advised counsel for the

2    trustee that that is being amended based upon this decision.

3              THE COURT:  Based upon the decision not to accept

4    service of a subpoena?

5              MR. KINDSETH:  And not testify.

6              THE COURT:  Okay.  Counsel, you can take whatever

7    action you think is appropriate.  If you do not -- if they

8    will not accept service, you file the appropriate documents

9    with the Court and the Court will act on them accordingly.

10   Okay?

11             MR. BONGARTZ:  Thank you.  Thank you, Your Honor.

12             THE COURT:  With regard to a motion that was

13   apparently filed by HK International in the main case with

14   regard to hiring a new captain, has the trustee seen this

15   motion?

16             MR. BONGARTZ:  We have, Your Honor.

17             THE COURT:  Do you have any opposition to the

18   motion?

19             MR. BONGARTZ:  We had two comments that we have

20   provided to counsel to the debtor which we understand are

21   acceptable.  In essence, they are to make sure that the new

22   incoming captain remains subject to the stipulated order

23   regarding the Lady May to the same extent that the old

24   captain was and he currently is.

25             THE COURT:  Absolutely.  They have to be bound by

1   the -- that they're restrained from removing the boat from

2   the navigable waters of Connecticut and all the other

3   provisions.

4           And that's going to be clear in that order,

5   Attorney Kindseth?

6           MR. KINDSETH:  Yes, Your Honor.  I believe that

7   was already in there, but if not, we'll clarify it.  And

8   that, of course, was our intention.

9           And we said we'd be serving the new captain.  And

10  I plan on having the captain served either Thursday or

11  Friday before there's any transition of the captain.

12          THE COURT:  Does anyone else wish to be heard on

13  the motion with regard to the replacement of the captain of

14  the Lady May?

15          MR. GOLDMAN:  Your Honor, to the extent you would

16  like the committee's input here, I'm still polling the

17  committee.  But I'm going to recommend that they consent to

18  the release subject to the caveats that counsel for the

19  trustee mentioned.

20          THE COURT:  Well, I don't want to have a separate

21  hearing on this.  We're here.  We're all here.  There's no

22  reason to have a separate hearing on this.  There's going to

23  be a captain or there isn't going to be a captain.  If

24  people have an objection, I want to know about it now.

25          MR. GOLDMAN:  I can't say we have an objection,

1    Your Honor.

2         MR. KINDSETH:  I believe PAX has already indicated

3    that they do not object to the change of captain.

4         MR. FRIEDMAN:  Your Honor, it's Peter Friedman.

5         PAX does not object.  I just want to have it be

6    very clear that I'm just remembering there's something in

7    the motion that how Yachtzoo hadn't recalled exactly when to

8    serve certain materials on certain people.  Just an

9    assurance from counsel that we've very clearly communicated

10   to Yachtzoo what their obligations are.

11        MR. KINDSETH:  Correct.  We obviously -- this

12   occurred because of Yachtzoo, unfortunately, not recalling

13   that a change in the captain required a court order.

14        Additionally, the captain only gave his notice on

15   December 23rd.

16        And just so the record's very clear, our

17   expectation, and it will happen, that the captain will

18   comply with the stipulation, so the captain, the new

19   captain, will have to sign the declaration.  The new captain

20   will have to be served with a copy of the order.

21        And so our expectation is that we will fully

22   comply with the stipulation with this as the captain with

23   respect to the stipulated order concerning the return of the

24   Lady May.

25        THE COURT:  Okay.  Then with regard to some

1    motions that were filed, I believe yesterday or the day

2    before, I'm not even sure at this point, it might have been

3    filed today. Let's see.

4          They were filed on the 30th, and the Court was

5    closed on the 30th, so Friday, and the Court was closed

6    yesterday, the 2nd, but the -- what was filed on Friday was

7    a motion for order authorizing HK International Funds

8    Investment to engage James Pizzarusso, I don't know if I

9    pronounced that properly, as captain of the Lady May and a

10   motion to expedite.

11         Denying the motion to expedite is moot since we

12   just discussed the motion on the record.

13         And the motion, ECF 1272, is granted subject to

14   all parties seeing the proposed order and you submitting the

15   order to the courtroom deputy, cc'ing all parties so that I

16   know that everyone is in agreement with the order.  Okay?

17         MR. KINDSETH:  Thank you, Your Honor.  Very much

18   appreciated, Your Honor.

19         THE COURT:  Yeah.  Thank you.

20         All right.  Is there anything further we need to

21   discuss this afternoon?

22         MR. DESPINS:  Yes, Your Honor.

23         Very briefly, not on the agenda, and it does not

24   require comment, but I just wanted to make sure Your Honor

25   knew that the picketing has gone on unabated.  And more than

1    that, it has expanded.  And as of today, back at my ex-

2    spouses house, at my two daughters' houses, one in Los

3    Angeles and one in Boston.  Thank you, Your Honor.

4            THE COURT:  Okay.  Thank you for providing an

5    update.

6            Anything further from anyone?

7        (No response.)

8            THE COURT:  All right.  That concludes the

9    hearings in the Kwok Chapter 11 case and related adversary

10   proceedings, so Court is adjourned.

11       (Proceedings adjourned at 4:56 p.m.)

12       I, CHRISTINE FIORE, Certified Electronic Court Reporter

13   and Transcriber, certify that the foregoing is a correct

14   transcript from the official electronic sound recording of

15   the proceedings in the above-entitled matter.

16

17   *Christine Fiore*

18   _____        January 9, 2023

19       Christine Fiore, CERT

20

21

22

23

24

25