### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

```
------------------------------------------------------x
                                              :
In re:                                        :     Chapter 11
                                              :
HO WAN KWOK, et al.,                          :     Case No. 22-50073 (JAM)
                                              :
              Debtors.¹                       :     Jointly Administered
                                              :
------------------------------------------------------x
```

### OBJECTION OF CHAPTER 11 TRUSTEE TO
### MOTION FOR ORDER REMOVING TRUSTEE

To the Honorable United States Bankruptcy Judge Julie A. Manning:

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), submits this objection (the "Objection") to the Debtor's *Motion for Order Removing Trustee* [Docket No. 1274] (the "Motion"). In support of his Objection, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.     The Court has demonstrated, in its *Memorandum of Decision Granting In Part Motion for Preliminary Injunction* [ECF No. 128, Adv. Proc. No. 22-05032] (the "Preliminary Injunction Decision"), that it is very familiar with the factual and procedural background relevant to the Motion. Therefore, the Trustee will refrain from a full examination of that background, and instead focus on the narrow legal standard applicable to a motion to remove a trustee.

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

2.      As an initial matter, the Debtor lacks standing to seek the Trustee's removal because he has failed to show that the estate will generate a surplus.  Absent such a surplus, the Debtor has no economic interest in the estate and only his creditors have standing to dispute the Trustee's performance of his duties in connection with the administration of the estate (and they have not—to the contrary, the Creditors' Committee and PAX, the Debtor's largest creditor, oppose the Motion).

3.      Separately, the Debtor fails, for numerous reasons, to meet the demanding standard required to establish cause for the extraordinary remedy of removal of the Trustee. Among other things, the Debtor fails to show (or even allege) fraud, fails to show actual harm to the estate from the Trustee's business judgment decision to reject the Debtor's settlement proposal, fails to justify interference in that judgment, and fails to show that the Trustee committed any form of misconduct that might justify removal.  In fact, as highlighted by this Court's findings in the Preliminary Injunction Decision, the Trustee's efforts have benefited the estate and increased the likelihood of recoveries to creditors, while the Debtor's proposal, the removal and replacement of the Trustee, would result in significant delay and destruction of value. **The Trustee's investigation has made significant progress, as evidenced by, among other things, the important document attached as <u>Exhibit A</u> hereto.** This is exactly the type of progress that the Debtor is attempting to stop or stymie.

4.      Finally, it is important to note what the Motion reveals regarding the Debtor's strategy.  The Debtor seeks, essentially, to take the estate and creditors, and this Court, hostage. The Motion brazenly states that "the Debtor and, more importantly, the Debtor's immediate and extended family members (because they would fund payments to creditors under any consensual plan) will not deal with the Trustee.  At this point, the options are removal of the Trustee or years

of expensive and uncertain litigation."[2]  This statement is a ransom note to the Court: "give me a

new trustee or I will never settle, and the estate will suffer."  The Court should reject these

threats and tactics, which directly attack the fair administration of the estate, and deny the

Motion.

## **OBJECTION**

### A.  Debtor Lacks Standing

5.    A debtor out-of-possession "is a 'party in interest' and has standing to object to a

sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if

there could be a surplus after all creditors' claims are paid."  *See In re 60 E. 80th St. Equities,*

*Inc.*, 218 F.3d 109, 115 (2d Cir. 2000); *see also In re Licata*, 659 Fed. Appx. 704, 706 (2d Cir.

2016) (debtor "has the burden of showing that there is at least a reasonable possibility of a

surplus").

6.    Based on this rule, a debtor has no standing to seek the removal of a trustee based

on allegations related to the trustee's administration of the estate.  For example, in *In re Cole,*

No. 10-50091 (JAM) (Bankr. D. Conn.), this Court determined that the debtor lacked standing to

seek removal of the trustee given that the debtor had failed to show that a surplus would remain

after creditors' claim were satisfied.[3]  This Court's ruling was affirmed on appeal.  *Cole v.*

*Rescia*, No: 3:21-cv-01130-MPS, 2022 WL 4536830 (D. Conn. Sept. 28, 2022).

---

[2]    Motion ¶ 40.

[3]    *See* Aug. 6, 2019 Hearing Transcript at 39:7-9, 67:1-4, *In re Cole*, No. 10-50091 (JAM) (Bankr. D. Conn.)
("[debtor does not] have standing to make these arguments.  The debtor has no rights anymore as a chapter 7
debtor unless and until there's clearly a surplus.") [ECF No. 1267], attached hereto as **Exhibit B**; Aug. 10, 2019
Hearing Transcript at 11:6-9, *In re Cole*, No. 10-50091 (JAM) (Bankr. D. Conn.) ("a debtor doesn't have
standing to raise issues unless there is going to be some surplus from the estate.") [ECF No. 1270], attached
hereto as **Exhibit C.**

7.      Here, the Debtor seeks removal of the Trustee based on the Trustee's decision to (i) continue investigating the Debtor's assets and (ii) decline to settle estate causes of action on terms proposed by the Debtor.[4]  Estate causes of action are assets of the estate to be administered by the Trustee.  *See, e.g.*, *In re Petroleum Piping Contractors, Inc.,* 211 B.R. 290, 311 (Bankr. N.D. Ind. 1997) ("The trustee succeeds to and has exclusive control over all assets of the estate, including causes of action.").  The Trustee's decision to settle or pursue estate causes of action is clearly an aspect of the Trustee's administration of the Debtor's estate on account of which the Debtor has no standing to seek the Trustee's removal absent the showing of a surplus.

8.      Absent any showing of a surplus, the Motion must be denied based on the Debtor's lack of standing.[5]  The Trustee invites the Debtor to disclose estate property currently held under the names of family members and shell companies, which may, depending on the value of such property, make the estate solvent and provide the Debtor with standing in matters related to estate administration.  But the Trustee points out that, at this stage, there are more than $370 million in claims against the estate and the bar date has not even passed yet.

**B.  Debtor Fails to Establish Cause to Remove Trustee**

9.      Removal of a trustee for cause is "an extreme remedy," *In re Log & Conventional Homes, Inc*., Nos. SC–11–1000–KIMKH, 09–12365–JM, 2011 WL 7145883, *4 (9th Cir. BAP Dec. 22, 2011); *see also In re Gunartt*, 355 Fed. App'x 66, 68 (7th Cir. 2009), requiring "a

---

[4]     The Debtor's allegations of misconduct, whether based on statements allegedly made in settlement discussions, alleged "entrapment," or the Trustee's alleged bias, all amount to criticisms of the Trustee's decision to pursue his investigation of the Debtor and seek the return of assets to the estate, and thus amount to attacks on the Trustee based on his decisions in connection with the administration of the estate.

[5]     Moreover, in the absence of any surplus the Trustee owes no fiduciary duties to the Debtor.  *See In re Christensen*, No. 15-29773, 2020 WL 2027232, at *4 (Bankr. D. Utah Mar. 27, 2020) (stating a trustee "owes fiduciary duties only to the bankruptcy estate and its beneficiaries, and, as a result, only beneficiaries can bring claims for breach of those duties against the trustee"); *Pergament v. Varela (In re Varela)*, 530 B.R. 573, 583 (Bankr. E.D.N.Y. 2015) ("Trustee owes no fiduciary duty to the Debtor. There is a discrete set of parties whose interests must be safeguarded by the trustee: creditors; shareholders; and the debtor may become a member of this group should the estate become solvent.").

strong factual showing" *Surabian v. Picard*, No. 13 Civ. 935(JGK), 2014 WL 917091, at \*2 (S.D.N.Y. Mar. 7, 2014) (quotations and citation omitted), because "removal is deleterious to the continuity of administration of the estate." *In re Empire State Conglomerates, Inc*., 546 B.R. 306, 317 (Bankr. S.D.N.Y. 2016) (quotations omitted).  Removal of a trustee for cause generally requires a showing of fraud or actual injury to the bankruptcy estate. *Dieffenbach v. Haworth (In re Haworth)*, 356 Fed. App'x 529, 530 (2d Cir. 2009).  "A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances, and courts should consider the best interests of the estate." *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990).

10.     Here, the Debtor has failed to carry his burden to demonstrate any cause at all for the removal of the Trustee, much less any strong factual showing demonstrating such cause.

### a.  Debtor Has Failed to Show Fraud

11.     Because the Debtor does not allege that the Trustee has committed fraud of any kind, fraud provides no basis for removal.

### b.  Debtor Has Failed to Show Actual Harm to the Estate

12.     At the core of the Motion is the Debtor's argument that the Trustee somehow caused actual harm to the estate by declining to agree to the Debtor's proposal for a supposed "global" settlement or resolution that the Debtor was in the process of negotiating with PAX and certain other creditors.  This argument fails for multiple reasons.

13.     First, the premise of the Motion—that the Debtor had a settlement with PAX "in the bag" immediately prior to the Debtor's meeting with the Trustee on November 17, 2022—is mistaken, as demonstrated by the actual chronology of events in the days leading up to the November 17 meeting:

a. On **November 15, 2022**, the Debtor posted a video at the @Miles Gettr handle with a message stating: "Our reconciliation with PAG, has become impossible for sure."[6]

b. Also on **November 15, 2022**, "the NFSC[7] Gettr Page, @NFSCSpeaks, posted personal home addresses of . . . the chairman of PAG, family members of the chairman of PAG, . . . and PAX's counsel. The @NFSCSpeaks post called for a 90-day protest at these locations. The post also contained photographs of some of the individuals living at the home addresses listed in the post."[8]

c. On **November 16, 2022**, the Trustee alerted the Court with respect to the Debtor's social media and protest campaign against the Trustee and PAX. PAX's counsel stated, among other things, that PAX was "currently in the process of trying to secure protection and security for its senior people and, frankly, for our firm itself."[9]

d. Also on **November 16, 2022**, NFSC released a video, described in greater detail in the *Statement of Chapter 11 Trustee with Respect to Debtor's Social Media Intimidation Campaign* [Docket No. 1133], which, among other outrageous and false statements, accused Shan Weijian, the chief executive of PAX's parent company, of "using money from both American and Chinese people . . . to enslave the Chinese people" and being a "spy and a thief stealing pension funds" for the Communist Party.[10]

14.     Thus, the November 16, 2022 "peace at last" letter from Debtor's counsel rings hollow when one looks at the case status landscape on that date. In other words, before November 17, 2022, the Debtor himself stated there was no possibility of a settlement with PAX

---

[6]  Screenshot of these images are attached hereto as **Exhibit D.**

[7]  The Court has found that NFSC (New Federal State of China) is one of a series of entities that "serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor," Preliminary Injunction Decision ¶ 7, and that are the Debtor's officers, agents, servants, employees, attorneys, and/or other persons who are in active concert or participation with the Debtor, his officers, his agents, his servants, his employees, and his attorneys." *Id.* at 60.

[8]  *Id.* ¶ 34.

[9]  Nov. 16, 2022 Hr'g Tr, at 17:11-13, attached hereto as **Exhibit E.**

[10]  *See Statement of Chapter 11 Trustee with Respect to Debtor's Social Media Intimidation Campaign* [ECF No. 1133], ¶ 6(a). The presenters of this video were Beile Li and Pamela Tsai, individuals identified by the Court as "friends, employees, servants, associates, followers, and/or colleagues of the Debtor." Preliminary Injunction Decision ¶ 14.

and had, through his own actions, destroyed any possibility of a settlement with PAX by directing his followers to protest and harass PAX and its counsel.  As the Court pointed out in the Preliminary Injunction Decision, even the Debtor recognized that the actions undertaken by him and his followers in connection with the social media campaign against PAX and the Trustee "were harmful to a settlement with PAX."[11]

15.    Second, the Motion presupposes that the "global resolution" proposed by the Debtor was, in fact, an advantageous settlement for the estate and that the estate was harmed when the Trustee, in the exercise of his business judgment, declined to accept the Debtor's proposal.  That is simply untrue.  The Debtor's proposal was not advantageous to the estate and the Trustee acted appropriately in rejecting it.

16.    The Trustee will not discuss herein the details of the Debtor's settlement proposal because they are protected by Rule 408 of the Federal Rule of Evidence ("Rule 408"), but will address the Debtor's contention regarding the settlement proposal in broad strokes given that the Debtor has raised the issue.[12]  Suffice it to say, the Debtor's proposal was completely non-actionable as a matter of bankruptcy law.  Not only was the proposal premature given that the claims bar date had not occurred (making it impossible to even estimate the claims pool entitled to recoveries),[13] but the proposal contained elements that would have resulted in any chapter 11 plan based on the settlement proposal being non-confirmable.  Had the Trustee accepted the Debtor's proposal, he would have been required to unilaterally "stand down" by stopping his

---

[11]    Preliminary Injunction Decision at 42.

[12]    The Debtor's Motion ignores Rule 408, disclosing a variety of pieces of information about the settlement proposal as part of an argument that the Trustee somehow erred in not accepting it.  This is exactly the type of strategic use of settlement proposals in litigation that Rule 408 is designed to prevent.

[13]    While PAX and the creditors' committee may have been amenable to certain terms of the Debtor's proposal, those parties do not have the benefit of the Trustee's knowledge, based on his ongoing investigation, regarding the potential magnitude of the claims to be filed against the Debtor.

investigation (thus allowing the individuals and entities controlled by the Debtor to, among other

things, transfer property without hindrance or scrutiny).[14]  Moreover, accepting the Debtor's

proposal would have wasted a tremendous amount of time and resources on a plan process

doomed to failure while giving the Debtor complete optionality. The proposal was a road to

nowhere, and the Trustee acted correctly in declining to accept it.

### c.  Trustee's Use of Discretionary Business Judgment Not Grounds for Removal

17.    As noted above, "[a] trustee should not be removed for mistakes in judgment

where that judgment was discretionary and reasonable under the circumstances." *In re*

*Lundborg*, 110 B.R. at 108.

18.    Decisions regarding whether to settle or pursue estate causes of action are

decisions a trustee makes in his business judgment as aspects of estate administration and,

therefore, a mistaken decision cannot in and of itself constitute grounds for removal.  *See In re*

*Consolidated Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) ("[I]f a decision not to

pursue an action... falls within the scope of the trustee's business judgment, the court should not

consider removing the trustee, because the same decision cannot simultaneously be both a proper

exercise of the trustee's discretion and cause for removal."); *Holzer v. Barnard*, No 15-CV-6277

(JFB), 2016 WL 4046767, at *15 (E.D.N.Y. July 27, 2016) (finding trustee decision not to bring

action was not basis for removal because "the decision whether to pursue claims against a

potential adversary qualifies as a discretionary decision that falls within the Trustee's purview

and was reasonable under the circumstances"); *In re Livore*, No. 08-32423/JHW, 2010 WL

---

[14]  The Preliminary Injunction Decision has recognized that the Trustee acted appropriately in rejecting the Debtor's repeated demands that the Trustee "stand down."  *See* Preliminary Injunction Decision at 39 ("The Chapter 11 Trustee has fiduciary duties to creditors other than PAX, including those creditors who have not yet filed proofs of claim.  Although the Debtor's bankruptcy counsel testified that he repeatedly asked the Chapter 11 Trustee to 'stand down,' the Court appointed the Chapter 11 Trustee precisely to fulfill those fiduciary duties.").

1849322, at *5 (Bankr. D.N.J. May 6, 2010) (rejecting debtor's claim for removal based on

mismanagement of the estate where "the debtor failed to show . . . that the trustee's

determination not to challenge the Bank's claim was so unreasonable that it is not protected by

the business judgment rule and that the lack of action by the trustee in this regard warrants

removal").

19.    Thus, even if the Trustee's decision to decline the Debtor's settlement proposal

was a mistake (it was not), that decision would not be grounds for removal.  Further, even if the

Debtor could show that the Trustee's decision was a mistake (he cannot), the Debtor has failed to

demonstrate in any way that the Trustee's decision was unreasonable and outside the Trustee's

business judgment.

### d.    Trustee Has Not Committed Misconduct

20.    The Motion contains a litany of baseless accusations of alleged "misconduct" by

the Trustee.  Broadly speaking, these accusations relate to (i) statements allegedly made by the

Trustee at the November 17, 2022 meeting with the Debtor, which statements allegedly violated

one of the Connecticut Rules of Professional Conduct ("CRPC"); (ii) the Trustee supposedly

seeking to "entrap" the Debtor into committing perjury or falling in contempt of court; and (iii)

alleged improper "bias" shown by the Trustee against the Debtor.  The Debtor fails to show any

sort of misconduct on the part of the Trustee.

### i.  No Misconduct at November 17, 2022 Meeting

21.    There is no need to belabor the Debtor's accusations that the Trustee made

inappropriate statements at the November 17, 2022 meeting.  Those accusations have already

been heard and addressed in connection with the preliminary injunction trial in December of

2022 and were rejected by the Court in the Preliminary Injunction Decision, which, as discussed above, endorsed the Trustee's role and actions in connection with the Debtor's chapter 11 case.[15]

### ii. No Misconduct Through "Entrapment"

22.    The Debtor accuses the Trustee of engaging in a "strategy to entrap the Debtor in a contempt, perjury or other crime."[16] This accusation is nonsensical and amounts to a brazen refusal by the Debtor to take responsibility for his own actions.  It is completely within the Debtor's control whether the Debtor decides to ***violate*** court orders and fall into contempt or ***obey*** court orders and avoid falling into contempt.[17]  It is also completely within the Debtor's control whether the Debtor decides to lie under oath and commit perjury or tell the truth and avoid perjury.  The Debtor's poor decision-making at such junctures is not the Trustee's fault, and in no way amounts to "entrapment." It is worth noting that the Debtor has already been held in contempt for disobeying court orders in prior proceedings in which the Trustee had no involvement. Moreover, the Debtor has in numerous proceedings (including before this Court) invoked his Fifth Amendment rights against self-incrimination.  The combination of these two sets of facts should encourage the Court to take the Debtor's arguments of alleged shock and fear with a grain of salt.

---

[15]    Preliminary Injunction Decision at 53-54.

[16]    Motion at 6.

[17]    If the Debtor is suggesting that the Trustee should not pursue contempt even if the Debtor violates court orders, that proposal is obviously unreasonable.  The Trustee does not seek contempt rulings for sport, but because faced with a Debtor who claims to have no money, monetary sanctions are illusory.

### iii.  No Misconduct Through "Bias"

23.    In the Motion, the Debtor casts himself as an innocent victim of alleged improper "bias" on the part of the Trustee.[18]  Even under the most cursory inspection, this argument holds no water.

24.    To begin with, most of the statements made by the Trustee that the Debtor casts as somehow evidencing improper bias consist of the Trustee doing nothing more than accurately describing the record in this case and in the prior litigation—including orders and findings of other courts—involving the Debtor.  The Trustee has made statements related to the Debtor's efforts to keep assets from creditors[19] and the Debtor's violation of court orders,[20] because Justice Ostrager has already found that the Debtor uses shell companies to protect assets from creditors and that the Debtor violated court orders—that is why Justice Ostrager held the Debtor in contempt.  Moreover, statements made by the Trustee regarding the likelihood of additional rulings holding the Debtor in contempt[21] do nothing more than reflect this well-known history, and the Trustee's predictions proved accurate, as the Trustee's contempt motion remains pending before the Court.  Similarly, the Trustee's comments on the Debtor's obstruction of the Trustee's investigation simply echo statements this Court has already made.[22]

---

[18]    It is highly ironic that the Debtor accuses the Trustee of bias, when the Debtor began accusing the Trustee of collusion with the Chinese Communist Party immediately upon the Trustee's appointment, calling the Trustee, among other things, a "scumbag," "criminal," "garbage lawyer," and "bloodiest attorney in the American legal community."  *Pacific Alliance Asia Opportunity Fund L.P.'s Position Statement in Joint Response to (I) Debtor's Motion for Relief from Order Appointing Luc A. Despins as Chapter 11 Trustee, and (II) Application of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 327, 328 and 330 and Bankruptcy Rules 2014 and 2016, Authorizing and Approving Retention and Employment of Paul Hastings LLP as Counsel to Chapter 11 Trustee*, ¶ 10 [ECF No. 618].

[19]    Motion ¶ 6.a.

[20]    *Id.* ¶ 6.b.

[21]    *Id.* ¶ 6.c.

[22]    *Id.* ¶ 6.d.  *See* Preliminary Injunction Decision at 37; *Chapter 11 Trustee's Answer and Counterclaims* Exhibit 89, Aug. 30, 2022 Tr.at 94:19-95:2 ("[A]ll the arguments that you have made has been to stop the trustee from trying to do what the trustee is going to do. If you don't like what the trustee does, then you can sue him. You

25.     The Debtor also seems to believe that the Trustee's arguments about entities linked to the Debtor somehow reflect improper bias.  The Trustee's statements regarding Himalaya Financial Group Ltd.[23] reflect arguments made by the Trustee in pleadings filed with the Court and are, contrary to the Debtors' accusation in the Motion, supported by voluminous evidence cited in the counterclaims filed by the Trustee in the adversary proceeding with respect to the *Lady May*,[24] as well as additional evidence that will be presented in connection with the upcoming trial on the Trustee's application for a pre-judgment remedy.  Making arguments supported by evidence regarding entities linked to the Debtor is not improper bias; it is the Trustee's job.  *See In re Stokes*, No. 21-90013-JDP, 2021 WL 1567500, at *3 (Bankr. D. Mont. Apr. 21, 2021) (denying removal of trustee based on alleged personal bias and prejudice where the debtor failed to demonstrate the trustee's acts amounted to anything other than his exercise of appropriate judgment).[25]

---

can do that. There's a remedy. You have a remedy. You can sue him. But you are now obstructing the administration of this estate that all the other creditors have been waiting to have administered.").  Moreover, in the Court's Preliminary Injunction Decision, it found, among other things, that the Debtor is the "leader of . . .Himalaya," Preliminary Injunction Decision ¶ 7,  and that the "Himalaya entities", which include Himalaya Exchange, are "under the leadership of the Debtor" and are among the entities found by the Court to be the Debtors "Debtor's officers, agents, servants, employees, attorneys, and/or other persons who are in active concert or participation with the Debtor, his officers, his agents, his servants, his employees, and his attorneys." *Id.* at 60.

23    Motion ¶ 6.e.

24    *See Chapter 11 Trustee's Answer and Counterclaims* [ECF No. 36, Adv. Proc. No. 22-05003].

25    The Debtor cites a number of cases that supposedly stand for the proposition that "discord" or "enmity" between a Debtor and his trustee are grounds for removal, but those cases are easily distinguishable from and have no bearing on this case, as they involve remarkable conflicts or apparent conflicts of interest, nothing like the scenario here.  *See In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965) (removing trustee who was close relative of principals of debtor and of major creditors and participated in defrauding other creditors); *In re Mason*, 12 B.R. 318, 318-19 (Bankr. D. Nev. 1981) (removing trustee whose husband had prosecuted debtor in criminal case which led to debtor being confined in state penitentiary). As the Court is aware, the Debtor does not raise conflicts issues in the Motion, but raised them previously in opposition to the appointment of the Trustee and the retention of Paul Hastings, at which point such contentions were rejected by the Court.

### e.  Removal of Trustee Is Not In Best Interests of Estate

26.    As also noted above, in considering removal of a trustee courts "should consider the best interests of the estate." *In re Lundborg*, 110 B.R. at 108. Here, the record makes clear that the Trustee's efforts have benefitted the estate significantly and, by contrast, the removal of the Trustee would cause enormous harm to the estate.

27.    If not already evident, this point is driven home by the Court's numerous findings in the Preliminary Injunction Decision endorsing the Trustee's role and actions taken by the Trustee and highlighting the benefits derived from the Trustee's efforts.  Among other things, the Court stated that:

a.  "The Chapter 11 Trustee was appointed to investigate" claims that "the Debtor has many undisclosed assets that are hidden in a maze of corporate entities held by family members and associates."[26]

b.  "The Chapter 11 Trustee's investigation," despite the Debtor's option is likely to liquidate *disclosed* assets" and "likely to bring at least some of the currently *contested* assets . . . into the Estate for the benefit of creditors."[27]

c.  "[T]he Court believes the Chapter 11 Trustee's investigation will liquidate and recover enough assets to fund a confirmable Chapter 11 plan.  The Court would consider such a plan, if confirmed, a successful result for the Debtor's Chapter 11 case."[28]

d.   "[T]he Chapter 11 Trustee . . . is not at all opposed to reaching a settlement in this case."[29]

e.  "The Chapter 11 Trustee has fiduciary duties to creditors other than PAX, including those creditors who have not yet filed proofs of claim. Although the Debtor's bankruptcy counsel testified that he repeatedly asked the

---

[26]  Preliminary Injunction Decision at 37.

[27]  *Id.* (italics in original).

[28]  *Id.* at 38.

[29]  *Id.* at 39.

13

Chapter 11 Trustee to 'stand down,' the Court appointed the Chapter 11 Trustee precisely to fulfill those fiduciary duties."[30] *Id.*

f. "[T]he Court granted a Motion to Appoint a Chapter 11 Trustee to investigate the affairs of the Debtor for the benefits of creditors."[31]

28.    In contrast to the benefits accruing to the estate from the Trustee's efforts, removal of the Trustee would destroy the progress made by the Trustee to date and return the case to square one.  As the Court observed in the Preliminary Injunction Decision: "Any replacement trustee would have to start over again and would likely face opposition from the Debtor immediately upon appointment, as the Chapter 11 Trustee has faced since his appointment."[32]  Further, the unnecessary delay associated with the removal of the Trustee, which would make the delay caused by the Debtor's social media harassment pale in comparison, "is likely to lead to the dissipation of assets and reduced recoveries to creditors."[33] The notion peddled by the Debtor that, upon the replacement of the Trustee, "the lion will lay with the lamb," and the Debtor will cooperate with a new trustee and work quickly towards an equitable settlement is pure fantasy belied by the Debtor's own past conduct, and cannot form the basis for the Trustee's removal.  The Trustee should be allowed to continue his investigation in course, consistent with his fiduciary duties to all creditors, and the Motion should be denied.

*[Remainder of Page Intentionally Left Blank.]*

---

[30]    Preliminary Injunction Decision at 39.

[31]    *Id.* at 41.

[32]    *Id.* at 41-42.

[33]    *Id.* at 41.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Court

deny the Motion and grant such further relief as the Court deems just and proper.

Dated:    January 13, 2023          LUC A. DESPINS,
          New Haven, Connecticut    CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    plinsey@npmlaw.com

       *and*

    Nicholas A. Bassett (*pro hac vice* pending)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

       *and*

    Avram E. Luft (*pro hac vice* pending)
    Douglass Barron (*pro hac vice* pending)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com

    *Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

----------------------------------------------------x
:
In re:                                            :    Chapter 11
:
HO WAN KWOK, *et al.*,                            :    Case No. 22-50073 (JAM)
:
Debtors.[1]                              :    Jointly Administered
:
----------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 13, 2023, the foregoing Objection, including all attachments thereto (except Exhibit A, which exhibit was filed under seal), was electronically filed. Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.[2] Parties may access this filing through the Court's CM/ECF system.

Dated:     January 13, 2023          LUC A. DESPINS,
New Haven, Connecticut     CHAPTER 11 TRUSTEE

By:     /s/ *Patrick R. Linsey*
Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 821-2000
plinsey@npmlaw.com

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]     To the extent that the foregoing was filed outside regular business hours, service by mail on recipients unable or not qualified to accept electronic notice was made on the next business day.

*and*

Nicholas A. Bassett *(pro hac vice)*
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

*and*

Avram E. Luft *(pro hac vice)*
Douglass Barron *(pro hac vice)*
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com

*Counsel for the Chapter 11 Trustee*

# EXHIBIT A

This exhibit has been filed under seal.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                         *    Case No.10-50091(JAM)
                              *
     HAROLD E. COLE,          *    Bridgeport, Connecticut
                              *    August 6, 2019
          Debtor.            *
                              *
* * * * * * * * * * * * * * * *


TRANSCRIPT OF MOTION TO WITHDRAW AS
ATTORNEY and ORDER TO SHOW CAUSE
BEFORE THE HONORABLE JULIE A. MANNING
CHIEF UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

Chapter 7 Trustee:            KARA S. RESCIA, ESQ
                              PAIGE M. VAILLANCOURT, ESQ.
                              Rescia & Katz, LLP
                              5104 Bigelow Commons
                              Enfield, CT  06082

For the Debtor:               MAXIMINO MEDINA, JR., ESQ.
                              Zeldes, Needle & Cooper
                              1000 Lafayette Blvd
                              Bridgeport, CT  06601

For the U.S. Trustee:         HOLLEY L. CLAIBORN, ESQ.
                              Office of the United States
                                 Trustee
                              The Giaimo Federal Building
                              150 Court Street, Room 302
                              New Haven, CT  06510




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          THE COURT:  I already saw your motion.  Is that

2     what you mean?

3          MS. HEMINWAY:  Correct.

4          THE COURT:  Yeah.

5          MS. HEMINWAY:  But I'm not allowed to provide any

6     --

7          THE COURT:  Well, you don't have standing to move

8     for the withdraw -- to -- a debtor doesn't have the right to

9     say that the trustee can be removed.

10         MS. HEMINWAY:  I understand.  I have been told

11    throughout this process that if the debtor has an excess

12    estate then he can in fact have limited input to how things

13    are managed because --

14         THE COURT:  There's case law on both sides of that

15    equation and there's no controlling case law in Connecticut.

16    And in fact the case law on that issue says that the debtor

17    has to prove that there will be a surplus.  And at this

18    point, given what the trustees told me, there may not even

19    be a surplus for your dad.

20         The fact that we've gone through these processes

21    in different steps, and there was an auction some time ago

22    where the belief was that there would be more money that

23    would be obtained in the auction, and there wasn't, there

24    may not be.

25         And so I'm not going to hold anything up because

1        So it would have been in the best interest of the

2    bankruptcy estate to have an auctioneer sell it that said it

3    was only 200,000?

4            THE COURT:  I don't understand your point.

5            MS. HEMINWAY:  We had an auctioneer that would

6    liquidate it who ran Early American antique auctions on a

7    very regular basis.  He ran ten per year in each of the

8    years prior to --

9            THE COURT:  Then what's -- you have information

10   about his rate of recovery and all the assets that he

11   auctioned off?

12           That he had an 80 percent or 90 percent or 100

13   percent, you know, recovery of funds based upon his estimate

14   of what he would get?

15           MS. HEMINWAY:  We can certainly -- we could have

16   certainly provided a record.

17           THE COURT:  Well, it's -- it's --

18           MS. HEMINWAY:  We could have -- it's very easy to

19   provide a record of an auction hall's pre-auction estimates

20   and the realized bids.  We could have certainly provided

21   that to the trustee.

22           THE COURT:  Okay.

23           MS. HEMINWAY:  And it's very easy to determine

24   that.

25           THE COURT:  But as I started today, the hearing

1    today, I said to you at the very beginning, you don't have

2    standing to make these arguments.  The debtor has no rights

3    anymore as a Chapter 7 debtor unless and until there's

4    clearly a surplus.  And even then the case law says not so

5    fast.

6              The Chapter 7 Trustee has the rights and

7    responsibilities and duties under the bankruptcy code.

8    She's trying to carry out those duties.  That's what's going

9    to happen.

10             MS. HEMINWAY:  And those duties are better served

11   by selling it for a lesser amount?

12             THE COURT:  She's not selling it for a lesser

13   amount.  She's going to sell it for as much an amount as it

14   can produce.

15             MS. HEMINWAY:  Your Honor, I provided

16   documentation to the trustee.  Her auctioneers are not

17   experts in Early American antiques.

18             Even in the motion that's before the Court today

19   --

20             THE COURT:  What motion that's before the Court?

21             MS. HEMINWAY:  What Your Honor approved recently

22   on the motion to sell antiques, they recommend -- they

23   represent certain information about online sales and leaving

24   inventory in place because it brings more money.

25             If you look at the online sales they have sold,

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 10-50091(JAM) |
| | * | |
| HAROLD E. COLE, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | | |
| HAMILTON GROUP, LLC, | * | Adv. Proc. No. 21-5007 |
| | * | |
| Plaintiff, | * | Bridgeport, Connecticut |
| | * | August 10, 2021 |
| vs. | * | |
| | * | |
| HAROLD E. COLE, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * *

TRANSCRIPT OF THIRD AMENDED MOTION TO
REMOVE TRUSTEE; MOTION FOR LEAVE OF
COURT TO FILE AMENDED CIVIL ACTION
BEFORE THE HONORABLE JULIE A. MANNING
CHIEF UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

Chapter 7 Trustee:          KARA S. RESCIA, ESQ
                            PAIGE M. VAILLANCOURT, ESQ.
                            Rescia & Katz, LLP
                            5104 Bigelow Commons
                            Enfield, CT  06082


For the Debtor:             NEAL P. ROGAN, ESQ.
                            Law Offices of Neal
                              Rogan, LLC
                            315 Post Road West
                            Westport, CT  06880


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

11

1    really had the opportunity, and I know the Court mentioned

2    that there have been hearings on this, but this is the first

3    time we've had an opportunity to present a full evidentiary

4    hearing on this motion to remove the trustee.

5         THE COURT:  Well, Attorney Rogan, as we've

6    discussed in prior hearings, the case law is very clear that

7    in a Chapter 7 case, a debtor doesn't have standing to raise

8    issues unless there is going to be some surplus from the

9    estate, and we've had this discussion on several occasions,

10   including back to when Mr. Berillo represented Mr. Cole,

11   before Ms. Hemingway was involved.  And they were completely

12   in agreement with the process and the sale of all of these

13   assets, until Ms. Hemingway came involved and said that she

14   thought that the appraisers and the auctioneers were not

15   right and that someone else should be conducting the

16   auction.

17        Those motions were all denied, and there were

18   orders entered requiring the cooperation of the debtor with

19   regard to the sale and auction of the assets of the debtor's

20   estate.

21        Now we can go back, and I'm happy to do so, and go

22   through all the representations made on the record by

23   Attorney Berillo and others in his firm, about the -- when

24   this case was converted and what happened in Chapter 11 by

25   the way, Attorney Rogan, which is -- you had no -- nothing

# EXHIBIT D

← **Post**

| Log In | Sign Up |
|---|---|

**MILES GUO** ✅
@Miles · Nov 15

2022.11.14 Our reconciliation with PAG, has become impossible for sure. In this case, no matter what the circumstances are, the opposite side is trying to do everything it can to make you in contempt of court. You can be jailed for contempt of court. And then, you can be fined again, again and again. That is, I have become the one fined the most in the US history.

（无LOGO版）我们跟这个太平联盟的和解，是肯定不可能了。这个案子不论任何情况，对方就是想尽一切办法，就是让你藐视法庭，藐视法庭是可以把你扔到监狱里去的。然后呢，可以再罚款，再罚款，就是我成了美国历史以来，最大的罚款。



Posted on 1:04 AM · Nov 15th, 2022

**1.9K** Likes    **1.2K** Reposts

---

**境随心转** @qingnan · 51m
Replying to @Miles
愿万佛万神给七哥保护　　不受这些罪恶的伤害 和困扰　　早点结束这个黑暗集团的邪恶计划！　　让这些杂种早点下地狱！

💬 0    👍 0    🔁 0

---

**luizkonz7** @luizkonz7 · 7h
Replying to @Miles
It's hard when not understanding commercial, friendly or when the miser just wants to profit without caring about anyone's financial health. Lament

💬 0    👍 0    🔁 0

---

**宝石baoshi** ✅ @baosi · 17h
Replying to @Miles

💬 0    👍 0    🔁 0

---

Have your own opinion to voice out?
GETTR opens your way to new experiences.

| Log In | Sign Up |
|---|---|

# EXHIBIT E

```
              UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF CONNECTICUT
                   BRIDGEPORT DIVISION

In Re                          *   Case No. 22-50073 (JAM)
                               *
     HO WAN KWOK and GENEVER   *
       HOLDINGS CORPORATION,   *
                               *
               Debtor.         *

     GENEVER HOLDINGS, LLC,    *   Case No. 22-50592 (JAM)
                               *
               Debtor.         *   Bridgeport, Connecticut
                               *   November 16, 2022
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

        TRANSCRIPT OF MOTION FOR JOINT ADMINISTRATION WITH
       22-50073; MOTION FOR ORDER (I) SETTING BAR DATES FOR
      FILING PROOFS OF CLAIM; (ii) APPROVING FORM OF NOTICE
          OF BAR DATES and (iii) GRANTING RELATED RELIEF;
        MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER
     HOLDING DEBTOR IN CIVIL CONTEMPT FOR FAILURE TO COMPLY
        WITH CORPORATE GOVERNANCE RIGHTS; APPLICATION
   TO EMPLOY NEUBERT, PEPE & MONTEITH and MOTION FOR JOINT
              ADMINISTRATION WITH 22-50592
          BEFORE THE HONORABLE JULIE A. MANNING
              UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:              ERIC A. HENZY, ESQ.
                             Zeisler & Zeisler, P.C.
                             10 Middle Street, 15th Floor
                             Bridgeport, CT  06604


For the Creditor, Pacific    ANNECCA SMITH, ESQ.
 Alliance Asia Opportunity   Robinson & Cole
 Fund L.P.:                  28 Trumbull Street
                             Hartford, CT  06103

                             STUART SARNOFF, ESQ.
                             O'Melveny & Myers LLP
                             Times Square Tower
                             7 Times Square
                             New York, NY  10036


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1    Claiborn, and Attorney Barron will remain, and then we will

2    start part of that hearing under seal to address the issues

3    that were just discussed and we will go from there.

4              MR. SARNOFF:  Your Honor, this is Stuart Sarnoff,

5    and I will abide obviously whatever your order is on this,

6    and perhaps you just made it, so -- but I'd just like point

7    out that Pacific Alliance, its chairman, it's chairman's

8    family, O'Melveny also has been named in this.

9              And so I do think and would ask for the Court to

10   at least consider including us in this as well, because I

11   have to report back to my client, who is currently in the

12   process of trying to secure protection and security for its

13   senior people and, frankly, for our firm itself.

14             So if you want to exclude us, I understand.  I

15   would just like to say that I think we're somewhat of an

16   interested party in this O'Melveny and Pacific Alliance.

17             THE COURT:  I understand.  I'm going to exclude

18   you for the time being, and then we'll see what occurs at

19   this -- after we have this conversation on the record under

20   seal, Attorney Sarnoff.  Okay?

21             MR. SARNOFF:  Okay.  Thank you.  Thank you, Your

22   Honor.

23             THE COURT:  Thank you.

24             MR. HENZY:  Your Honor, can I just ask that -- I

25   assume that people on the telephone listening only will be