**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :   Chapter 11
                                                       :
HO WAN KWOK, *et al.*,[1]                              :   Case No. 22-50073 (JAM)
                                                       :
                                    Debtors.           :   (Jointly Administered)
                                                       :
-------------------------------------------------------x
                                                       :
PACIFIC ALLIANCE ASIA                                  :
OPPORTUNITY FUND L.P.,                                 :
                                                       :   Adv. Proceeding No. 22-05032 (JAM)
                                    Plaintiff,         :
v.                                                     :
                                                       :
HO WAN KWOK,                                           :
                                                       :
                                    Defendant.         :
                                                       :
-------------------------------------------------------x

**EMERGENCY MOTION OF CHAPTER 11 TRUSTEE AND GENEVER DEBTORS
FOR ENTRY OF ORDER (A) COMPELLING INDIVIDUAL DEBTOR TO COMPLY
WITH PRELIMINARY INJUNCTION WITH RESPECT TO CLAIMS PROCESS, (B)
QUASHING INDIVIDUAL DEBTORS' OBJECTIONS TO CLAIMS, AND (C)
BARRING INDIVIDUAL DEBTOR FROM FILING FURTHER OBJECTIONS TO
CLAIMS, ABSENT LEAVE OF COURT**

Luc Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Individual Debtor"), Genever Holdings Corporation

("Genever (BVI)"), and Genever Holdings LLC ("Genever (US)" and, together with the Trustee,

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles
Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever
Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The
mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul
Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho
Wan Kwok (solely for purposes of notices and communications).

and Genever (BVI), the "<u>Movants</u>"), by and through their undersigned counsel, respectfully

submit this emergency motion requesting entry of an order, substantially in the form attached

hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), (a) compelling the Individual Debtor and anyone in

active concert or participation with the Individual Debtor to comply with the *Corrected Order*

*Granting in Part Motion for Preliminary Injunction* [Adv. Proc. Docket No. 134] (the

"<u>Preliminary Injunction Order</u>") issued by this Court in the above-captioned adversary

proceeding (the "<u>PI Adversary Proceeding</u>") and to cease all activities interfering with the claims

process, (b) quashing the Individual Debtor's recently filed objections to three proofs of claim

[Main Case Docket Nos. 1332, 1334, 1335] (the "<u>Claims Objections</u>"), and (c) barring the

Individual Debtor from filing any further objections to claims without first obtaining prior leave

of this Court.  In support of this Motion, the Trustee respectfully states as follows:

## <u>PRELIMINARY STATEMENT</u>

1.       As the Court is well aware, since the Trustee's appointment on July 8, 2022, the

Individual Debtor has waged a non-stop battle against the Trustee's efforts to investigate the

Individual Debtor's financial affairs and recover assets for the benefit of the Individual Debtor's

creditors.  Indeed, not only has the Trustee's investigation "been met with opposition at every

step in the process,"[2] but the Individual Debtor's out-of-court intimidation and harassment

campaign against, among others, the Trustee, his family members, and his counsel has forced the

Trustee to expend substantial resources to seek injunctive relief from this Court as well as

slowed down the Trustee's investigation into the Individual Debtor's assets and financial

---

[2]    *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction* [Adv. Proc. Docket No. 133] (the "<u>Memorandum Decision</u>") at 38.

affairs—all of which was undoubtedly one of the principal purposes of the Individual Debtor's extra-judicial campaign.

2.        Worse, even after this Court enjoined the Individual Debtor from "interfering *in any way with the integrity of his Chapter 11 case*,"[3] the Individual Debtor has continued his efforts to hijack these chapter 11 cases.  In particular, the Trustee has recently become aware that the Individual Debtor is using his social media presence and his network of followers to (i) harass creditors who have filed proofs of claim in these chapter 11 cases and (ii) encourage his followers to file non-meritorious proofs of claim in these chapter 11 cases.  In addition, earlier this week, the Individual Debtor also filed three objections to proofs of claim filed on the Court's claims register, even though an out-of-possession and out-of-the-money debtor does *not* have the right to do so—as this Court has previously recognized.[4]

3.        The Individual Debtor's objective is clear: intimidate creditors into not filing proofs of claim, flood the claims register with non-meritorious claims, and thereby delegitimize the entire claims process and render the process cost-prohibitive for the Trustee.[5]  As a result, the Trustee is again forced to expend time and resources addressing the Individual Debtor's efforts to undermine the integrity of these chapter 11 cases—in clear violation of the preliminary injunction entered by this Court only a week ago.  This must stop.  Now.

---

[3]    Preliminary Injunction Order ¶ 2 (emphasis added).

[4]    While there are exceptions to this rule (such as when there is a surplus in the estate), given that the Individual Debtor takes the position that he is penniless, the possibility of any surplus in these chapter 11 cases is speculative, at best.  Nor should the Individual Debtor be allowed to hijack these cases based on the possibility that his family may fund a hypothetical future chapter 11 plan that would pay creditors in full, especially in light of his recent statement that "the Debtor and, more importantly, the Debtor's immediate and extended family members (because they would fund payments to creditors under any consensual plan) will not deal with the Trustee.  At this point, the options are removal of the Trustee or years of expensive and uncertain litigation." *Motion for Order Removing Trustee* [Main Case Docket No. 1274] (the "Removal Motion") ¶ 40.

[5]    The Trustee is still evaluating the impact of the Individual Debtor's actions on the claims filing process.  The Trustee reserves the right to move to extend the bar date to the extent such relief is necessary to remedy the harm caused by the Individual Debtor.

4.    Accordingly, by this Motion, Movants request entry of an order (which, in the Court's discretion, may be an order of contempt) compelling the Individual Debtor and anyone in active concert or participation with the Individual Debtor to comply with the terms of the Preliminary Injunction Order and immediately cease all out-of-court and in-court activities interfering with the claims process, including any attempts to intimidate creditors into not filing claims (including by publishing creditors' personal information on social media) or in any way suggesting to the Individual Debtor's followers that they should file non-meritorious claims.

5.    In addition, Movants request that the Individual Debtor's Claims Objections be quashed (without prejudice to Movants' right to object to such claims at a later date) because, at this juncture in these chapter 11 cases, the Individual Debtor has no right to object to claims filed in these cases.

6.    Finally, Movants request that the Individual Debtor be barred from filing any objections to claims, without first obtaining prior leave of this Court, except that the Individual Debtor may file, without seeking prior leave of this Court, objections to claims that are the subject of an adversary proceeding in these chapter 11 cases challenging the dischargeability of such claim (collectively, the "Dischargeability Adversary Proceedings"), but subject to any stay currently in effect with respect to these proceedings.  Absent such relief, the claims process will be bogged down by the Individual Debtor's incessant efforts to interfere with the integrity of these cases.[6]

---

[6]    While the Preliminary Injunction Order was entered in PI Adversary Proceeding, it clearly applies to these chapter 11 cases as a whole, and, accordingly, Movants are requesting that the relief sought in this Motion apply to all three jointly administered chapter 11 cases.  **For that reason, Movants are filing this Motion in both the PI Adversary Proceeding and the main chapter 11 case.**

## BACKGROUND

### A.    Preliminary Injunction Order

7.     On January 11, 2023, the Court issued the Preliminary Injunction Order (a corrected version of which was filed on January 13, 2023) in the PI Adversary Proceeding, which was commenced by Pacific Alliance Asia Opportunity Fund L.P. ("PAX" and, together with the Trustee, the "Plaintiffs") in response to the intimidation campaign unleashed by the Individual Debtor against the Trustee and PAX.

8.     Among other things, the Preliminary Injunction Order enjoins the Individual Debtor "from interfering *in any way with the integrity of his Chapter 11 case*, the Chapter 11 case of Genever Holdings, LLC and the chapter 11 case of Genever Holdings Corporation, which have been jointly administered in this Court . . ."[7]

9.     The Preliminary Injunction Order applies not only the Individual Debtor, but also "his officers, his agents, his servants, his employees, his attorneys, and other persons who are in active concert or participation with the Debtor, his officers, his agents, his servants, his employees, and his attorneys . . upon receiving actual notice by personal service or otherwise."[8] In this regard, the Court specifically found that the Individual Debtor's officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with the Individual Debtor including the following individuals and entities:

> (a) the individuals Fay Fay, Beile Li, Huo Lai, Pamela Tsai, Roy Guo, Jiao Bing Shang, Shan Mu, Yaqin Li, Ziheng Cheng, and Elliot Dordick and (b) the entities New Federal State of China; Himalaya Global Alliance and other Himalaya entities, such as Himalaya Exchange, Himalaya Farms, and Himalaya New World, Inc.; the Rule of Law Foundation; and G-Series entities, including, without limitation, GTV

---

[7]    Preliminary Injunction Order ¶ 2 (emphasis added).

[8]    *Id.* ¶ 5.

5

and G-News, as well as any persons or entities acting at their direction or on their behalf.[9]

## B.    Individual Debtor's Campaign to Undermine Claims Process

10.    It was recently brought to the Trustee's attention that the Individual Debtor is using his social media presence and his network of followers to (i) harass certain creditors who recently filed proofs of claim in these chapter 11 cases by, among other things, publishing their personal information online, and threaten others who might file claims with a similar harassment campaign and (ii) encourage his followers to file non-meritorious proofs of claim.

11.    In particular, on January 6, 2023, Qiu Yu ("Ms. Yu") filed two proofs of claim in the Individual Debtor's chapter 11 case (the "Proofs of Claim"), which claims were entered on the Court's claims register on January 9, 2023.[10]  Shortly thereafter, the Individual Debtor (and various other social media accounts associated with the New Federal State of China ("NFSC"))[11] began making malicious and/or harassing statements on social media directed at Ms. Yu, including the following:

- On January 10, 2023, the Individual Debtor, on a Gettr live broadcast (the "January 10 Broadcast"),[12] publicly threatened investors who filed claims in these chapter 11 cases, including, specifically, Ms. Yu.[13]  Among other things, during the January 10 Broadcast, the Individual Debtor made the following statements:

---

[9]    *Id.*

[10]    *See* Proof of Claim 16-1 and Proof of Claim 17-1.  Because the Proofs of Claim were submitted to the Bankruptcy Court (and not the claims agent), these claims, including the claimant's name and contact information, are publicly available.

[11]    As the Court is well aware, the Individual Debtor is the founder and leader of NFSC.  Memorandum Decision ¶¶ 1, 7.  Moreover, the Court previously found that NFCS is an entity "in active concert or participation" with the Individual Debtor.  Preliminary Injunction Order ¶ 5.

[12]    The January 10 Broadcast can be viewed at https://media.discordapp.net/attachments/755721451142905867/1062400865161445468/MILES_GUO_on_Gettr-_2023.01.10_.mp4

[13]    In the January 10 Broadcast, the Individual Debtor made repeated reference to a Gong Zu.  The Trustee understands, based on other posts with Ms. Yu's image that have circulated on social media accounts associated with the Individual Debtor and his various organizations, that Gong Zu is a nickname for Ms. Yu.

○ "[Ms. Yu's behavior] is ***completely gangster behavior***. She dares to go to the bankruptcy court in Connecticut and list herself as a debtor, ah, as a creditor."[14]

○ "[Ms. Yu] is lying and faking it 100%."[15]

○ "Now these spies like [Ms. Yu] have come out."[16]

○ "Every person who reports their case must show up in court. Everything you said will be published, including everything about you. Let's see."[17]

• On January 10, 2023, Gettr account @OXVDESIGN posted that Ms. Yu listed herself as a creditor in the case, and posted a picture of Ms. Yu with text reading "Yu Qiu (nickname is Gong Zu) went to the bankruptcy court in Connecticut, USA and joined the list of creditors using a $5000 claim (and) ***help Luc vilify the Whistleblower Revolution***."[18]

• On January 10, 2023, Gettr account @piaochanghai posted an image of Ms. Yu's German Identity Card stating "***expose another little bastard*** discord called Gong Zu, real name Yu Qiu, fellow fighters dig it up, heard that (she) is very close to Dai Jian Feng. Any fellow fighter know (her)?"[19]

The message to potential claimants is clear: if you file a claim we will expose you and your personal information.

12.   In addition, on January 13, 2023, the Individual Debtor posted on the @MilesGuo Gettr account that Paul Hastings was launching a "creditor registration operation" suggesting that

---

[14]   *See* January 10 Broadcast 3:05 – 3:14 (emphasis added). These and the below statements have been informally translated from Chinese into English. Given the emergency nature of the relief sought in this Motion, Movants did not have sufficient time to obtain an official translation; however, they would be happy to do so if requested by the Court.

[15]   *See* January 10 Broadcast 3:37 – 3:39.

[16]   *See* January 10 Broadcast 6:34 – 6:37.

[17]   *See* January 10 Broadcast 7:10 – 7:20.

[18]   *See* @OXVDESIGN, GETTR (January 10, 2023, 11:40 AM), https://gettr.com/post/p24kani22bb (last accessed January 12, 2023) (emphasis added). A screenshot of that image is attached as Exhibit 1 to the Declaration of Douglass Barron (the "Barron Declaration") filed concurrently with this Motion. The Gettr account @OXVDESIGN is associated with NFSC, as indicated by the banner at the top of the Gettr account of @OXVDESIGN. A screenshot of the banner is attached to the Barron Declaration as Exhibit 2.

[19]   *See* @piaochanghai, GETTR (Jan. 10, 2023, 10:53 AM), https://gettr.com/post/p24jxee624f (last accessed January 12, 2023). A screenshot of that image is attached to the Barron Declaration as Exhibit 3. The Gettr account @piaochanghai is associated with NFSC, as indicated by the banner at the top of the Gettr account of @piaochanghai. A screenshot of the banner is attached to the Barron Declaration as Exhibit 4.

his followers should register with the Court (*i.e.*, file claims), and that doing so could result in them becoming billionaires.  In particular, the post stated:

- "If there are fellow fighters who are not steadfast!  Feel that your own investment and past investment!  No sense of security and need to be a debtor [sic].[20]  If you think this is a better choice, then you must contact Paul Hastings as soon as possible to register with the Connecticut bankruptcy court . . . ***Maybe you can become a billionaire***."[21]

Again, the message is not subtle: Let's all file claims to introduce chaos into the claims process.

13.    Finally, and most recently, the Individual Debtor filed three Claims Objections [Main Case Docket Nos. 1332, 1334, and 1135] seeking to disallow three proofs of claim recently filed on the Court's claims register, namely the two Proofs of Claims filed by Ms. Yu (*i.e.*, Claim Nos. 16-1 and 17-1) and Claim No. 18-1.  The Claims Objections purport to require the claimants to file a written response with the Court by February 17, 2023.

## JURISDICTION AND VENUE

14.    The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.  Venue is proper in accordance with 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to, among others, 28 U.S.C. § 157(b)(2)(A).

## RELIEF REQUESTED

15.    Movants seek entry of an order (a) compelling the Individual Debtor and anyone in active concert or participation with the Individual Debtor to comply with the Preliminary Injunction Order and immediately cease to interfere with the integrity of the claims process,[22] (b)

---

[20]    The reference to "debtor" is likely meant to be "creditor."

[21]    *See* @MilesGuo, GETTR (Jan. 13, 2023, 10:45 AM), https://gettr.com/post/p24ybdca10b (last accessed January 15, 2023) (emphasis added).  A screenshot of that image is attached to the Barron Declaration as Exhibit 5.

[22]    As noted, Movants defer to the Court as to whether, at this stage, to also hold the Individual Debtor and persons in active concert or participation with the Individual Debtor in contempt for violating the terms of the Preliminary Injunction Order.

quashing the Claims Objections, and (c) barring the Individual Debtor from filing any further objections to claims, absent first obtaining prior leave of this Court, except that the Individual Debtor may file, without prior leave of this Court, objections to claims that are the subject of a Dischargeability Adversary Proceeding (subject to any stay currently in effect with respect to these proceedings).

## BASIS FOR RELIEF

16.    Intimidation of creditors and interference with the claims process are serious issues.   As the Court observed in its Memorandum Decision, "[b]ankruptcy is a process through which a debtor's financial affairs are put in order and *all claims against the debtor are treated fairly and equitably*. . . .  It is a benefit to the public to have such a system and for that reason, its integrity must be maintained."[23]  Indeed, in connection with the bar date order entered in these chapter 11 cases, the Court already recognized the need to give individual creditors the option to keep their names and contact information confidential given the risk that creditors may otherwise refrain from filing a proof of claim out of concerns that the Individual Debtor will retaliate against them.[24]  The Individual Debtor's and his followers' most recent harassment of creditors not only validates these concerns, but further heightens the need for additional relief to bring the Individual Debtor's incessant efforts to derail these chapter 11 cases to an end.

**A.    Court Should Compel Individual Debtor to Comply With Preliminary Injunction Order**

17.    The Preliminary Injunction Order is clear: the Individual Debtor is enjoined "from interfering *in any way with the integrity of his Chapter 11 case*, the Chapter 11 case of Genever

---

[23]    Memorandum Decision at 55 (emphasis added).

[24]    *See Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Main Case Docket No. 1297] ¶ 4 (establishing procedures for individual claimants to submit their proofs of claim on a confidential basis so as to keep their names and contact information confidential).

Holdings, LLC and the chapter 11 case of Genever Holdings Corporation, which have been jointly administered in this Court . . ."[25]  This language clearly encompasses the Individual Debtor's latest efforts to interfere with the claims process, which is obviously an integral part of these chapter 11 cases.  The Preliminary Injunction Order is also clear that the foregoing injunction applies not only to the Individual Debtor but also all persons "who are in active concert or participation with the Debtor," which the Court specifically found to include NFCS.[26]

18.    It goes well beyond the pale for an out-of-possession debtor to single out individual creditors, publicly distribute personal information about such creditors, and then harass such creditors—all for the obvious purpose of discouraging other creditors from filing claims.  But the Individual Debtor did not stop there.  By suggesting to his followers that they could become billionaire by filing a claim, the Individual Debtor not only makes a mockery of the claims process, but is inviting his followers to file non-meritorious claims.  These types of statements directly harm the legitimacy of the claims process and, moreover, could result in the filing of a plethora of non-meritorious claims, all of which would need to be reviewed and analyzed by the Trustee and his counsel, furthering delaying the administration of the Debtors' estates and causing additional expense.[27]

19.    Accordingly, in the interest of protecting the integrity of the claims process and these chapter 11 cases, the Individual Debtor (and anyone in active concert or participation with the Individual Debtor) should be ordered to immediately cease (a) making harassing statements directed at Ms. Yu and any other creditors who file, have filed, or may file a proof of claim in

---

[25]    Preliminary Injunction Order ¶ 2 (emphasis added).

[26]    *Id.* ¶ 5.

[27]    To be clear, the Trustee reserves all rights with respect to any fraudulent claims.

these chapter 11 cases, (b) suggesting, in any way, that his followers file non-meritorious claims, and (c) otherwise interfering with the claims process.

### B.   Individual Debtor's Claims Objections Should Be Quashed Because He Has No Right to Object to Claims

20.    The Claims Objections should be quashed (without prejudice for the Movants' right to object to such claims at a later time) because the Individual Debtor has no right to pursue such objections.  As a matter of general principles, "in the bankruptcy context, standing requires an "aggrieved person … directly and adversely affected pecuniarily" by the order of a bankruptcy court.  *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir. 1997).  Accordingly, a debtor "has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, ***only if there could be a surplus after all creditors' claims are paid***."  *See In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (emphasis added); *see also In re Licata*, 659 Fed. Appx. 704, 706 (2d Cir. 2016) (debtor "has the burden of showing that there is at least a reasonable possibility of a surplus").  Indeed, this Court previously determined in *In re Cole*, No. 10-50091 (JAM) (Bankr. D. Conn.) that a debtor lacked standing to seek removal of the trustee where the debtor had failed to show that a surplus would remain after creditors' claim were satisfied.[28]

21.    Likewise, courts generally hold that a debtor lacks standing to object to claims unless "the debtor can show a 'reasonable possibility of a surplus once all claims are paid.'" *Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 127–28 (S.D.N.Y. 2011) (quoting *In re Ulz*,

---

[28]    *See, e.g.*, Aug. 6, 2019 Hearing Transcript at 39:7-9, 67:1-4, *In re Cole*, No. 10-50091 (JAM) (Bankr. D. Conn.) ("[debtor does not] have standing to make these arguments. The debtor has no rights anymore as a chapter 7 debtor unless and until there's clearly a surplus.") [Docket No. 1267], attached to the Barron Declaration as Exhibit 6; Aug. 10, 2019 Hearing Transcript at 11:6-9, *In re Cole*, No. 10-50091 (JAM) (Bankr. D. Conn.) ("a debtor doesn't have standing to raise issues unless there is going to be some surplus from the estate.") [Docket No. 1270], attached to the Barron Declaration as Exhibit 7.

401 B.R. 321, 328 (Bankr. N.D. Ill. 2009); *see also In re Ferraro*, No. 13-30996 (AMN), 2017

WL 874977, at *3 (Bankr. D. Conn. Mar. 3, 2017) ("[T]he general rule is that a debtor lacks

standing to object to a claim because bankruptcy proceedings absolve the debtor of any liability

to creditors and the debtor has no interest in the distribution of the estate's property since the

property has passed to the trustee.") (quoting *Licata v. Coan*, Docket No. 3:14-cv-1754 (MPS),

2015 WL 9699304, at *5 (D. Conn. Sept. 22, 2015)); *In re I & F Corp.,* 219 B.R. 483, 484

(Bankr. S.D. Ohio 1998) ("The vast majority of courts have held that a chapter 7 trustee alone

may file objections to proofs of claim."); *Caserta v. Tobin*, 175 B.R. 773, 775 (S.D. Fla. 1994)

("As a chapter 7 debtor in a case where a trustee has been appointed and where no surplus will

exist to create a pecuniary interest on behalf of the debtor, [debtor] lacks standing to object to his

creditor Tobin's claims.").

22.     Here, the Individual Debtor has not made (and cannot make) any showing

whatsoever that there would be a surplus once all claims are paid.  To the contrary, throughout

these chapter 11 cases, the Individual Debtor has asserted that he is penniless.[29]  Nor is this a

situation where the Individual Debtor's Claims Objection, if successful, would result in a surplus

in the estate.  And the possibility that the Individual Debtor's family may, at some point in the

future, fund a hypothetical chapter 11 plan that would pay creditors in full is far too speculative

to allow the Individual Debtor to object to claims.  This is especially true in light of the

Individual Debtor's recent statement that "the Debtor and, more importantly, the Debtor's

immediate and extended family members (because they would fund payments to creditors under

---

[29]   It would be the height of irony if the Individual Debtor were granted standing because of the possibility that the
Trustee—over the strenuous resistance of the Individual Debtor—recover sufficient assets for the benefit of
these estates such that there would be a surplus.

any consensual plan) will not deal with the Trustee.  At this point, the options are removal of the Trustee or years of expensive and uncertain litigation."[30]

23.     In the Claims Objections, the Individual Debtor asserts that, notwithstanding the foregoing, he has standing to object to claims because this rule, according to the Individual Debtor, applies only to a chapter 7 debtor, as opposed to an out-of-possession debtor in a chapter 11 case.  This is not the law.

24.     Courts have consistently applied the surplus analysis to standing in a chapter 11 case, both in the context of claims objections and other areas of bankruptcy law.  In *In re Visiting Nurse Ass'n*, 176 B.R. 748, 750 (Bankr. E.D. Pa. 1995), the chapter 11 debtor had proposed a liquidating plan of reorganization, and filed an objection to the claim of a creditor.  The creditor asserted that the chapter 11 debtor lacked standing because the liquidating plan did not show a surplus, and the debtor responded that the cases cited by the creditor were all in the context of a chapter 7 and, therefore, "inapposite."  *Id.*  at 750.  The court did not accept this argument, which would have easily resolved the issue.  Instead, while the court allowed the debtor's claim objection to proceed, the court did so because there had "been no Trustee appointed to take over the Debtor's affairs" and because the court was unable "at this juncture [to] declare unequivocally that the Debtor will not produce a surplus from its liquidation."  *Id.* at 751.  Further embracing the surplus analysis, the court concluded that it was still possible that "the Debtor is a party which will economically affected by the determination of Godwin's claim."  *Id.*

25.     *In re Olympia Office LLC*, 574 B.R. 38 (Bankr. E.D.N.Y. 2017), similarly demonstrates that principles of prudential standing limit claim objections in a chapter 11 case.  In that case, the chapter 11 debtors had objected to the claim filed by certain noteholders, and the

---

[30]    Removal Motion ¶ 40.

court noted that it was not going to address standing because the noteholders had not raised the issue. The court did "note, however, that if Debtor's pending claims objections were fully sustained, a legitimate prospect of a surplus does exist." *Olympia Office LLC*, 574 B.R. at 46 n.5. And in *In re McCorhill Pub., Inc.*, 89 B.R. 393 (Bankr. S.D.N.Y. 1988), the court explained that a "debtor has a pecuniary interest in the equity of the estate if all the creditors can be paid in full, or if each class of impaired claims accepts the plan," and, in "such case, the chapter 11 debtor possesses a direct pecuniary interest in the estate." 89 B.R. at 396. Because the out of possession chapter 11 debtor sought to bring certain claims that would have "create[d] an equity for the debtor," the court allowed the debtor "to protect its equity interests, if any," and held that the debtor would "be regarded as a party in interest with standing to object to [the secured creditor]'s claim." *Id.*

26. These cases are consistent with the approach adopted by Collier on Bankruptcy, which explains that "[i]n a chapter 7 case, *or a chapter 11 case in which the debtor is not in possession and there is no possibility of a surplus being returned to the debtor*, the debtor usually has no pecuniary interest in the outcome of claims objections and thus no standing to object to claims." Collier on Bankruptcy § 502.02[2][c] (emphasis added). It is also consistent with the undisputed general rule that a bankruptcy trustee, whether a chapter 7 or a chapter 11 trustee, is the only person in charge of administering the estate. *See, e.g.*, *In re Bay Voltex Corp.*, No. 03 42684 EDJ, 2006 WL 3834300, at *1 (Bankr. N.D. Cal. Dec. 29, 2006), *aff'd*, No. BAP.NC-08-1069-DJUT, 2008 WL 8444794 (B.A.P. 9th Cir. Oct. 9, 2008), *aff'd*, 371 F. App'x 820 (9th Cir. 2010) ("Neither a chapter 7 debtor no[r] a chapter 11 debtor out of possession is a trustee, and neither represents the estate."); *Morrison v. U.S. Trustees*, No. 09-CV-3565 (CBA), 2010 WL 2653394, at *5 (E.D.N.Y. June 24, 2010) (same). As the Second Circuit has

explained, this rule limits the standing of an out-of-possession debtor.  *See In re Dawnwood Properties/78*, 209 F.3d 114, 116 (2d Cir. 2000) ("Once the trustee was appointed to maximize the assets of the Chapter 11 bankruptcy estate, neither Rooney nor Dawnwood had standing to bring this adversary proceeding on Dawnwood's behalf; that authority instead rested solely with the trustee.").

27.     Ignoring these authorities, the Individual Debtor supports his contention that "chapter 11 is different" only by reference to section 1121(c) of the Bankruptcy Code for the proposition that "even where there is a trustee appointed the Debtor is a party in interest, who can, *inter alia*, file a plan."[31]  The Individual Debtor's argument, therefore, is dependent entirely on its conclusory "*inter alia*" language: according to the Individual Debtor, if a debtor out of possession can file a plan, it must also be able to file a claim objection and otherwise interfere with the administration of the estate.  Again, this is not the law.

28.     It is true that, pursuant to section 1121(c), an out-of-possession chapter 11 debtor may have standing to file a plan.  *See In re McCorhill Pub., Inc.*, 89 B.R. at 396 (under section 1121 of the Bankruptcy Code "Chapter 11 trustee does not have exclusive authority to file a plan of reorganization").  "***Nonetheless, the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104 terminates the debtor in possession's trustee-like authority under 11 U.S.C. § 1107***."  *Id.* (emphasis added).  "The appointed Chapter 11 trustee then assumes the duties expressed in 11 U.S.C. § 1106, including most of the duties specified in 11 U.S.C. § 704."  *Id.* Included in those duties is the duty to object to examine and object to proofs of claim.  *See 11 U.S.C. § 704(a)(5).*  Unlike filing a plan, the out-of-possession chapter 11 debtor retains

---

[31]     *See, e.g., Objection to Claim Number 16 of Qiu Yu* ¶ 8.

authority to file a claim objection under section 704 only to the extent the debtor "has a pecuniary interest in the equity of the estate." *In re McCorhill Pub., Inc.*, 89 B.R. at 396.

29.     The Trustee recognizes that courts have also allowed out-of-possession debtors to object to claims under certain limited circumstances, such as where "the trustee failed or refused to object to the claim or claims in question; and/or . . . the debtor's objection would not undermine the efficient administration of the estate." *In re Choquette*, 290 B.R. 183, 187-88 (Bankr. D. Mass. 2003).  However, the Trustee is not refusing to object to the claims in question. The claims in question were only filed a little over a week ago, and the general bar date is not until February 17, 2023.  The Trustee will analyze these (and other claims) in due course, and, based on his analysis of these claims, will make a determination as to whether to object to these claims.

30.     Relatedly, the weight given by courts to the final factor—whether the debtor's objection would undermine the efficient administration of the estate—cannot be overstated. Courts have repeatedly emphasized that the need to preserve the trustee's ability to efficiently administer the estate is a basis to prevent other parties in interest from filing claims objections, whether in chapter 7 or chapter 11 cases.  *See, e.g.*, *In re Simon*, 179 B.R. 1, 7 (Bankr. D. Mass. 1995) ("if every creditor were entitled to challenge the claim of another creditor filed in a particular case, an orderly administration could degrade to chaos"); *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992) ("absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim"); *In re Chi. Invs., LLC*, 470 B.R. 32 (Bankr. D. Mass. 2012) (concerns for orderly administration "echo those raised by the First Circuit in the context of Chapter 7").

31.     As one court has explained, the "phrase 'parties in interest' in section 502(a)

applies to those who have some interest in the assets of the debtor being administered in the case.

Under such definition, the debtor's creditors are the primary parties in interest . . . . *Yet the needs*

*of orderly and expeditious administration do not permit the full and unfettered exercise of*

*such right.  It is the trustee who acts as the spokesman for all creditors in discharge of the*

*trustee's duty unless the trustee refuses to take action.*"  *In re Dow Corning Corp.*, 244 B.R.

721, 750 (Bankr. E.D. Mich. 1999) (as modified) (internal references omitted) (emphasis in

original).  "For this policy reason . . . where a trustee is charged with administering a bankruptcy

estate, a creditor can object to the claim of another creditor only if, upon demand, the trustee

refuses to do so and the court grants the creditor the right to act on behalf of the trustee."  *Id.*

32.     These concerns apply with particular force here, where the Individual Debtor's

out-of-court intimidation tactics are well-documented, as are his efforts to undermine the

Trustee's performance of his statutory duties.  Allowing the Individual Debtor to pursue the

Claims Objections (or any other claim objections for that matter) would unquestionably

jeopardize the efficient administration of these chapter 11 estates.  Indeed, there seems to be no

rhyme or reason as to why the Individual Debtor chose to object to claims now or why he chose

to object to the three particular claims in question (out of the nineteen claims filed on the Court's

claims register)—other than, of course, as part of his larger campaign to intimidate creditors into

not filing claims.

33.     Finally, the Individual Debtor argues in the Claims Objections that he has

standing to object because certain other claimants have asserted that their claims are non-

dischargeable.  However, while some courts have endorsed a theory of standing based on the

pecuniary effect that the disallowance of a particular claim could have on distribution to other

creditors and, hence, the debtor's remaining exposure to non-dischargeable claims, other courts have rejected this approach, and for good reason.  As one bankruptcy court observed:

> The problem with this theory is twofold.  First, standing requires that the court's order affect the debtor's pecuniary interest "directly and adversely."  But the effect that the [debtors] and the cases supporting them describe is at best indirect: the administration of the estate produces no surplus, and so the trustee pays no money to the debtor himself, but payments the trustee makes to certain creditors arguably alter the debtor's post-bankruptcy liability to those creditors.  Courts adopting the [debtors'] standing theory describe this effect as "direct."  If so, it is hard to imagine what an "indirect" effect would be.

> Second, granting standing to every debtor who happens to be subject to some nondischargeable claim would interfere with the administration of chapter 7 cases.  Many debtors are subject to nondischargeable claims. If every such debtor were suddenly entitled to take an active role in the trustee's administration of the case, the result would slow down the bankruptcy system and make it more costly. . . .

> The bankruptcy system works because it processes cases expeditiously, and it will continue to work only as long as it does so. The public policy goal of "swift and efficient" bankruptcy administration is "achieved primarily by narrowly defining who has standing in a bankruptcy proceeding."  Adding exceptions that expand the standing of chapter 7 debtors beyond the single exception for surplus cases "would complicate the process unnecessarily."

*In re Adams*, 424 B.R. 434 (Bankr. N.D. Ill. 2010) (internal citations omitted).

34.    That said, the Trustee does not dispute that a debtor has standing to object to specific claims that may not be discharged.  *See Willard v. O'Neill (In re Willard)*, 240 B.R. 664, 668 (Bankr. D. Conn. 1999) (finding that chapter 7 debtor had standing to object to claim that may never be discharged because debtor holds a direct pecuniary interest in the outcome of disallowance action).  Here, however, the Claims Objections are not directed at claims that are subject to any action challenging dischargeability.

35.     For all these reasons, Movants submits that the Individual Debtor lacks standing to pursue the Claims Objections, and, accordingly, Movants respectfully requests that the Claims Objections be quashed.

### C.    Individual Debtor Should Be Barred From Filing Objections to Claims Absent Leave of Court

36.     Given the Individual Debtor's established track-record of seeking to slow down the Trustee's investigation and the administration of these chapter 11 cases, the Trustee submits that it is appropriate for the Court to bar the Individual Debtor from filing any further objections to claims unless the Individual Debtor first obtains leave of Court to do so.[32]  To be clear, the foregoing limitation would ***not*** preclude the Individual Debtor from prosecuting the Dischargeability Adversary Proceedings or objecting to the claims that are the subject of such actions (subject to any stay currently in effect with respect to these proceedings).

37.     It is well established that bankruptcy courts in the Second Circuit, like all federal courts, "possess the inherent authority to prohibit abusive and vexatious litigation practices through the issuance of filing injunctions." *Seaport Capital Partners v Speer (In re Speer),* No. 14-21007 (AMN), AP No. 15-2031, 2017 Bankr. LEXIS 4523 at *18-19 (Bankr. D. Conn. Nov. 22, 2017) (citing *In re Belmonte,* 524 B.R. 17, 33 (Bankr. E.D.N.Y. 2015)).  A prefiling order that includes a "leave of court" requirement before a vexatious litigant may file future pleadings, motions, or appeals, is a common remedy under such circumstances.  *See, e.g., Coan v. Peia (In re Peia),* 212 B.R. 217, 219-220 (D. Conn. 1997).

38.     The need for a prefiling order is particularly acute when a vexatious debtor seeks to disrupt the administration of the estate by harassing a bankruptcy trustee.  *See, e.g. In re*

---

[32]    The Trustee will consider seeking broader relief (e.g., barring the Individual Debtor from seeking any affirmative relief, absent prior leave of court) if the Individual Debtor continues to flaunt orders of this Court through his in-court and out-of-court activities.  The Trustee reserves all rights in this regard.

*Armstrong,* 297 B.R. 154, 162 (Bankr. D. Utah 2003) (granting chapter 11 trustee's motion for

vexatious debtor filing restrictions), *aff'd, In re Armstrong,* 309 B.R. 799 (10th Cir. BAP 2004);

*In re Melcher,* BAP No. NC-13-1168, 2014 WL 1410235, at *12 (9th Cir. BAP April 11, 2014)

(applying *Safir, see infra,* and remanding for entry of order granting chapter 7 trustee's motion

for order including prefiling review requirement).

39.     In *Safir v. U.S. Lines, Inc.,* 792 F.2d 19 (2d Cir. 1986), the Second Circuit

provided five elements to consider when a court decides whether to restrict a party's ability to

file pleadings in federal court:

1.  The litigant's history of litigation and in particular whether it entailed
    vexatious, harassing or duplicative lawsuits;

2.  the litigant's motive in pursuing the litigation, e.g., does the litigant have
    an objective good faith expectation of prevailing?;

3.  whether the litigant is represented by counsel;

4.  whether the litigant has caused needless expense to other parties or has
    posed an unnecessary burden on the courts and their personnel; and

5.  whether other sanctions would be adequate to protect the courts and other
    parties.

*Safir,* 792 F2d at 24.  Here, a limited prefiling order is necessary and appropriate to reduce the

costs and expenses of the administration of the estate.

40.     As the Court recognized in its Memorandum Decision, the Individual Debtor has

opposed the Trustee's investigation "at every step in the process."[33]  Moreover, the

Memorandum Decision recounts, in minute detail, the Individual Debtor's extensive out-of-court

campaign to harass and intimidate, among others, the Trustee, his family, and his counsel, as

well as the estate's largest unsecured creditor (PAX), thereby undermining the integrity of these

---

[33]   Memorandum Decision at 38.

chapter 11 cases.  The Individual Debtor's motives in pursuing the Claims Objections are not merely suspicious, they are plain: to harass creditors and intimidate them into not filing proofs of claim.

41.     Further, the burden that the Individual Debtor's tactics (both in-court and out-of-court) have put on the Trustee and the administration of these estates are already significant, including millions of dollars of professional fees and substantial delay.  Absent a bar on filing objections to the claims, the Individual Debtor will no doubt continue to undermine the administration of these chapter 11 cases.  Also, to reiterate, the relief requested is narrowly tailored, as it would only bar the Individual Debtor from filing of objection to claims (not pleadings in general), absent leave of this Court.  And, as noted, Movants are not seeking to preclude the Individual Debtor from objecting to claims that are the subject of a Dischargeability Adversary Proceeding.

42.     Finally, at this point, after a two-month long distraction due to the PI Adversary Proceeding alone, Movants respectfully submit that there are no viable alternatives than barring the Individual Debtor from filing objections to claim, subject to the aforementioned exceptions.

## **NO PRIOR REQUEST**

43.     Movants have not previously sought the relief requested herein from this or any other court.

*[Remainder of page intentionally left blank.]*

21

WHEREFORE, for the foregoing reasons, Movants requests that the Court enter an order granting the relief requested in this Motion and such other relief as is just and proper.

Dated: January 19, 2023
      New Haven, Connecticut

GENEVER HOLDINGS LLC

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    dskalka@npmlaw.com
    plinsey@npmlaw.com

*Counsel for Genever Holdings LLC*
*Debtor and Debtor-in-Possession*

GENEVER HOLDINGS CORPORATION

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    dskalka@npmlaw.com
    plinsey@npmlaw.com

*Counsel for Genever Holdings Corporation*
*Debtor and Debtor-in-Possession*

LUC A. DESPINS, CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    dskalka@npmlaw.com
    plinsey@npmlaw.com

    *and*

    Luc A. Despins, Esq.
    G. Alexander Bongartz, Esq.
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6472

*Counsel for the Chapter 11 Trustee*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------------x
                                              :
In re:                                        :    Chapter 11
                                              :
HO WAN KWOK, et al.,¹                         :    Case No. 22-50073 (JAM)
                                              :
                          Debtors.            :    (Jointly Administered)
                                              :
-------------------------------------------------------x
                                              :
PACIFIC ALLIANCE ASIA                         :
OPPORTUNITY FUND L.P.,                         :
                                              :    Adv. Proceeding No. 22-05032 (JAM)
                          Plaintiff,          :
v.                                            :
                                              :
HO WAN KWOK,                                  :
                                              :
                          Defendant.          :
                                              :
-------------------------------------------------------x
```

**ORDER (A) COMPELLING INDIVIDUAL DEBTOR TO COMPLY WITH**
**PRELIMINARY INJUNCTION WITH RESPECT TO CLAIMS PROCESS, (B)**
**QUASHING INDIVIDUAL DEBTORS' OBJECTIONS TO CLAIMS, AND (C)**
**BARRING INDIVIDUAL DEBTOR FROM FILING FURTHER OBJECTIONS TO**
**CLAIMS, ABSENT LEAVE OF COURT**

Upon the motion (the "Motion")² of Luc Despins, in his capacity as the chapter 11 trustee

(the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Individual Debtor"),

Genever Holdings Corporation ("Genever (BVI)"), and Genever Holdings LLC ("Genever (US)"

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

and, together with the Trustee and Genever (BVI), the "Movants") requesting entry of an order (a) compelling the Individual Debtor and anyone in active concert or participation with the Individual Debtor to comply with the Preliminary Injunction Order issued by this Court in the PI Adversary Proceeding and to cease all activities interfering with the claims process, (b) quashing the Individual Debtor's Claims Objections, and (c) barring the Individual Debtor from filing any further objections to claims without first obtaining prior leave of this Court, all as more fully set forth in the Motion; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the District of Connecticut (as amended); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that that it may enter a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested by the Motion is in the best interest of the Debtors' estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, itis hereby ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Individual Debtor is hereby directed to comply with the Preliminary Injunction Order and immediately cease to interfere with the integrity of the claims process, including (a) disseminating or threatening to disseminate on social media or otherwise any personal information of claimants and their relatives (including names, contact information, pictures of the claimants or

their relatives, and other identifying information) ("Personal Creditor Information"), whether or not such creditor has filed a claim, (b) taking any act to threaten, and/or directing or encouraging others to take any act that threatens, the safety of any claimant that files, has filed, or may file a claim in these chapter 11 cases and any of such person's relatives, and (c) in any way suggesting or encouraging anyone to file claims that are not meritorious.

3.      The Individual Debtor is directed to take down all existing social media posts on accounts he uses or controls, including, without limitation, the Gettr accounts with the (former) handles @Miles, @MilesGuo, and @MilesGuoLive, that contain (a) any Personal Creditor Information, (b) in any way suggesting or encouraging his followers to file claims that are not meritorious, and/or (c) encourage, incite, or suggest any activity enjoined in paragraph 2 above.

4.      In accordance with Fed. R. Civ. P. 65(d)(2), the Individual Debtor, his officers, his agents, his servants, his employees, his attorneys, and other persons who are in active concert or participation with the Individual Debtor, his officers, his agents, his servants, his employees, and his attorneys are bound by this Order upon receiving actual notice by personal service or otherwise.  For the reasons stated in the Preliminary Injunction Order and the Memorandum Decision, the Court has found that (a) the individuals Fay Fay, Beile Li, Huo Lai, Pamela Tsai, Roy Guo, Jiao Bing Shang, Shan Mu, Yaqin Li, Ziheng Cheng, and Elliot Dordick and (b) the entities New Federal State of China; Himalaya Global Alliance and other Himalaya entities, such as Himalaya Exchange, Himalaya Farms, and Himalaya New World, Inc.; the Rule of Law Foundation; and G-Series entities, including, without limitation, GTV and G-News, as well as any persons or entities acting at their direction or on their behalf are the Debtor's officers, agents, servants, employees, attorneys, and/or other persons who are in active concert or participation with the Individual Debtor, his officers, his agents, his servants, his employees, and his attorneys.

5.      Movants are authorized to serve the Individual Debtor, his officers, his agents, his servants, his employees, his attorneys, and other persons who are in active concert or participation with the Individual Debtor, his officers, his agents, his servants, his employees, and/or his attorneys, including, without limitation, the persons and entities explicitly listed in paragraph 4, with notice of this Order.

6.      The Claims Objections are hereby quashed, without prejudice to the Movants' right to object to such claims at a later date.

7.      The Individual Debtor is hereby barred from filing any further objections to claims, absent first obtaining prior leave of this Court, except that the Individual Debtor may file, without prior leave of this Court, objections to claims that are the subject of a Dischargeability Adversary Proceeding (subject to any stay currently in effect with respect to these proceedings).

8.      Movants are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.      This Order shall remain in effect until (a) further order of this Court, (b) the dismissal or closure of the Individual Debtor's Chapter 11 case, or (c) one year after its entry, unless further order of this Court extends its duration.

11.      The Court shall retain jurisdiction over this adversary proceeding to ensure compliance with this Order and for all other purposes related to the PI Adversary Proceeding and the chapter 11 cases.  This Court shall retain jurisdiction to hear and determine all matters arising from the implementation, interpretation, and/or enforcement of this Order.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------x
                  :

In re:                  :    Chapter 11
                  :

HO WAN KWOK, *et al.*,[1]    :    Case No. 22-50073 (JAM)
                  :

          Debtors.    :    (Jointly Administered)
                  :

---------------------------------------------------------x
                  :

PACIFIC ALLIANCE ASIA    :
OPPORTUNITY FUND L.P.,   :
                  :    Adv. Proceeding No. 22-05032 (JAM)
          Plaintiff,   :
v.                 :
                  :

HO WAN KWOK,        :
                  :
          Defendant.   :
                  :
---------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 19, 2023, the foregoing Motion, and the related Barron Affidavit, were electronically filed. Notice of these filings was sent by e-mail to all parties to the above-captioned adversary proceeding by operation of the Court's electronic filing ("CM/ECF") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.[2] They may be accessed by the CM/ECF system.

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]   To the extent that the foregoing was filed outside regular business hours, service by mail on recipients unable or not qualified to accept electronic notice was made on the next business day.

Dated:        January 19, 2023
              New Haven, Connecticut

By: */s/ Patrick R. Linsey*
Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Movants*