**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
:
In re:                                          :        Chapter 11
                                                :
HO WAN KWOK, *et al.*,[1]                        :        Case No. 22-50073 (JAM)
                                                :
            Debtors.                            :        (Jointly Administered)
                                                :
-------------------------------------------------------x

## MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER COMPELLING UBS AG TO COMPLY WITH RULE 2004 SUBPOENA

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the Ho Wan Kwok's (the "Individual Debtor") chapter 11 case (the "Chapter 11 Case"), hereby files this motion (the "Motion to Compel") for entry of an order, substantially in the form appended hereto (the "Proposed Order"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules"), and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") compelling UBS AG ("UBS") to comply with this Court's *Order Granting First Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Additional Legal and Financial Advisors to the Debtor, Entities and Individuals Affiliates with the Debtor, and Relevant Banks* dated September 21, 2022 (ECF No. 866, the "Rule 2004 Order") and with the Trustee's Subpoena and Request for Production of Documents issued to UBS pursuant to such

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

order, attached hereto as **Exhibit A** (collectively, the "UBS Subpoena"), and overrule UBS's objections to the UBS Subpoena, attached hereto as **Exhibit B** (the "Objections").  In support of the Motion to Compel, the Trustee respectfully states as follows:

### FACTUAL BACKGROUND

1.      On September 7, 2021, the Trustee filed his First Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Additional Legal and Financial Advisors to the Debtor, Entities and Individuals Affiliates with the Debtor, and Relevant Banks (the "First Omnibus 2004 Motion") seeking discovery with respect to various legal and financial advisors to the Individual Debtor, persons affiliated with the Individual Debtor, and, as relevant here, banks at which the Individual Debtor and persons and entities related to the Individual Debtor are believed to have deposited funds or conducted financial transactions.

2.      In particular, the Individual Debtor, and individuals and entities controlled by or allied with him, held substantial assets at UBS, borrowed from, and otherwise did business with and through UBS.  This is shown by, among other things, documents and information obtained by the Trustee reflecting accounts at UBS in the name of Bravo Luck Limited ("Bravo Luck") – an entity the Individual Debtor previously owned (and which is now allegedly owned by the Individual Debtor's son), and which the Trustee's investigation suggests received, held, and distributed millions of dollars on the Individual Debtor's behalf.

3.      Indeed, UBS's involvement with the Individual Debtor is exemplified by a reference letter that UBS provided to the Sherry Netherland Board of Directors in 2015 (the "Sherry Netherland Board"), wherein UBS represented that the Individual Debtor had been "a client of ours through a personal investment company since July 2012" with "funds involved in

this banking relationship [of] not less than USD400,000,000." A true and accurate copy of this letter is attached hereto as **Exhibit C** (the "UBS Letter"). UBS issued the UBS Letter from its office in Hong Kong (the "Hong Kong Branch") to the Sherry Netherland Board in Manhattan, presumably at the Individual Debtor's direction.[2]

4.     Still further, the Trustee has obtained records reflecting that the UBS office located in Stamford, Connecticut (the "Stamford Branch") was involved in transactions that transferred millions of dollars funds from Bravo Luck's accounts at UBS. Thus, on numerous occasions, UBS has conducted business involving the Individual Debtor either within the United States or, in the case of the UBS Letter, directed to the United States.

5.     For these reasons, among others, the Trustee included UBS in his First Rule 2004 Motion. UBS did not object to the First Rule 2004 Motion, which the Court granted by its Rule 2004 Order on September 21, 2022. Pursuant to the Rule 2004 Order, the Trustee issued the UBS Subpoena, which subpoena was served on UBS at its Stamford Branch on September 26, 2022.

6.     UBS served the Trustee with its Objections on October 12, 2022. UBS's Objections did not specifically respond to the requests in the Requests for Production appended to the UBS Subpoena. Rather, they recited a blanket objection to producing documents related to accounts purportedly located in jurisdictions outside of the United States.

7.     The Trustee and UBS met and conferred (telephonically through counsel) regarding the UBS Subpoena. UBS first requested time to ascertain what documents and information are responsive to the UBS Subpoena and to consider its willingness to comply with the UBS

---

[2] This letter was among the documents that the Sherry Netherland Board relied upon in approving the Individual Debtor's purchase, through co-debtors Genever Holdings Corporation ("Genever (BVI)") and Genever Holdings LLC ("Genever (US)") and, together with the Individual Debtor and Genever (BVI), collectively, the "Debtors"), a condominium at the Sherry Netherland Hotel in Manhattan for approximately $70 million.

Subpoena.  The Trustee cooperated to provide UBS information in an effort to aid and expedite its review.

8.      UBS informed the Trustee earlier this month that it will not produce *any* documents or information – or even disclose what documents or information exists – responsive to the UBS Subpoena, because of banking privacy laws in foreign jurisdictions.  Specifically, UBS has cited Hong Kong privacy laws and suggested that the Trustee pursue discovery through legal process in Hong Kong.  Meanwhile, UBS has refused to confirm the individuals and entities for which it has responsive documents or even list the countries where it alleges responsive documents must be pursued.  Thus, following the logic of UBS, in order to obtain documents responsive to the UBS Subpoena[3], the Trustee would need to pursue Hague Convention discovery or commence recognition proceedings in *dozens of countries* throughout the world where UBS has branches:



[4]

---

[3] UBS has stated only that "accounts" do not exist in the United States, the United Kingdom, and the British Virgin Islands.  As the map of UBS's global presence reflects, numerous jurisdictions remain scattered across six continents. Throughout the meet-and-confer process, UBS has sought to put the onus on the Trustee to name specific jurisdictions where UBS should search its documents and information.  While the Trustee has noted certain jurisdictions of particular interest (again, in the hopes of expediting production), the Trustee has likewise been clear that it is not his obligation to tell UBS where it maintains its own documents and information.
[4] The white squares denote UBS branch locations.  Source: https://www.ubs.com/locations.html#europe/en/se/all/

9.      Alternatively, UBS has suggested that the Trustee secure consent from individuals and entities associated with the Individual Debtor.  Obviously, such consent is not likely to be forthcoming, considering the posture of these cases.  Rather, as the Court recently noted, the Trustee's investigation "has been met with opposition at every step in the process …" *Memorandum of Decision Granting in Part Motion for Preliminary Injunction*, Adv. Pro. 22-05032 (Jan. 11, 2023) [ECF No. 128] (the "Injunction Decision") at p. 37. [5]

10.      In discussions with UBS, the Trustee provided its counsel a copy of the UBS Letter and information reflecting the involvement of the Stamford Branch with respect to relevant accounts and transactions.  UBS should also be aware of the foregoing from its own records and at no time has UBS denied that it directed the UBS Letter to the Sherry Netherland Board in Manhattan or the involvement of its Stamford Branch.

11.      The meet-and-confer process persisted *for months*, with the Trustee providing UBS documents and information in an effort to assist UBS's search and to highlight UBS's conduct in and towards the United States.  This process has included more than half a dozen telephone conferences between counsel and numerous email exchanges.

12.      Ultimately, notwithstanding UBS's substantial business operations in the United States (particularly at the Stamford Branch), and UBS's business activities that occurred in the United States specifically relating to the Individual Debtor and the discovery at issue, UBS has refused to comply with the UBS Subpoena.  Instead, UBS has proposed that the Trustee pursue purported alternatives that UBS knows or reasonably should know are unworkable in this Chapter

---

[5] The Trustee has already issued subpoenas to several of the entities from which UBS suggests the Trustee seek consent (*i.e.*, Lamp Capital LLC and Golden Spring (New York) Ltd.), and the entities simply ignored them.  (*See* Motion to Compel [ECF No. 1046].)  The notion that such entities would now provide the Trustee consent to obtain records from UBS is absurd.

11 Case.  If UBS had informed the Trustee of its ultimate position months ago, the Trustee would have saved substantial time and expense. Hence this Motion to Compel.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in accordance with 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2) (A), (E), and (O).

## RELIEF REQUESTED

14.     The Trustee seeks entry of the Proposed Order compelling UBS to comply with the UBS Subpoena within fourteen days.

## BASIS FOR RELIEF

**The Court Has Charged the Trustee to Investigate the Individual Debtor's Financial Condition and Has Authorized the Trustee's Use of Bankruptcy Rule 2004 Discovery**

15.     UBS must comply with the UBS Subpoena and provide documents and information that are of key importance to the Trustee's investigation of the Individual Debtor's financial condition and affairs.  The Trustee is tasked with investigating the Individual Debtor's assets and affairs for the benefit of the Individual Debtor's creditors.  "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Grp. Ltd.*, Case No. 16-13625-JLG, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (internal quotation and citation omitted).

16.     This includes revealing the nature and extent of the estate and in discovering assets of the debtor that may have been intentionally or unintentionally concealed.  *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996); *see also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Legitimate goals of Rule 2004 examinations

include discovering assets, examining transactions, and determining whether wrongdoing has occurred.") (internal quotation and citation omitted)); *id.* (noting that "[u]nlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a fishing expedition and an inquisition") (internal citations and punctuation omitted); Fed. R. Bankr. P. 2004(b) (authorizing scope of 2004 examinations "relat[ing] . . . to . . . property . . . and financial condition of the debtor, or to ***any matter*** which may affect the administration of the debtor's estate") (emphasis added).

17.     As set forth above, UBS has documents and information responsive to the UBS Subpoena.  Following months-long discussions between the Trustee and UBS, the Trustee understands that UBS's sole basis for refusing to comply with the UBS Subpoena is the purported applicability of foreign privacy laws.  UBS's reliance on foreign law to avoid its obligations to comply with the UBS Subpoena is misplaced.

## **UBS Must Comply with the Subpoena, Including for Accounts It Alleges Are Overseas**

18.     The Second Circuit has repeatedly compelled foreign entities to produce documents "notwithstanding competing foreign legal obligations." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 114-116 (2d Cir. 2013); *see also United States v. Davis*, 767 F.2d 1025, 1033-35 (2d Cir. 1985); *United States v. First Nat'l City Bank*, 396 F.2d 897 (2d Cir. 1968).  As have the district courts within this circuit.  *See, e.g., Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 364 (S.D.N.Y 2018); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 456 (E.D.N.Y. 2008); *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 57-58 (E.D.N.Y. 2007).

19.     Foreign "bank secrecy laws are not a 'get out of jail free' card." *Nike, Inc. v. Wu*, 349 F. Supp. 3d at 364.

The Supreme Court long ago recognized the difficulties faced by parties for whom compliance with a U.S. discovery order would violate foreign law.  Operation of

foreign law do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [law]. Ultimately, the District Court possesses wide discretion to proceed in whatever manner it deems most effective.

*Id.* (internal citations and quotation marks omitted) (*citing Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-211, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958)); *see also Linde*, 706 F.3d at 109.

20.    In *Linde v. Arab Bank, PLC*, the Second Circuit adopted from the Restatements a balancing test governing the Court's "discretion to enter a discovery order that may violate foreign law." *Nike, Inc. v. Wu*, 349 F. Supp. 3d at 364.

Section 442 [of the Restatement (Third) of Foreign Relations Law of the United States] provides that, in determining whether to issue a production order for information located abroad, courts should consider [1] "the importance to the investigation or litigation of the documents or other information requested; [2] the degree of specificity of the request; [3] whether the information originated in the United States; [4] the availability of alternative means of securing the information; and [5] the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." Restatement § 442(1)(c). Cases from our Circuit counsel that, when deciding whether to impose sanctions, a district court should also examine the [6] hardship of the party facing conflicting legal obligations and [7] whether that party has demonstrated good faith in addressing its discovery obligations.

*Linde*, 706 F.3d at 109-10; *see also Laydon v. Mizuho Bank, Ltd*, 183 F.Supp.3d 409, 420 (S.D.N.Y. 2016) (numbering factors).

21.    The balancing test under *Linde* tilts strongly in the Trustee's favor.

22.    <u>Importance to the Investigation.</u>  The documents and information sought by the Trustee are of paramount importance to his investigation. Bravo Luck (at a time it was owned and controlled by the Individual Debtor) held hundreds of millions of dollars in UBS accounts. UBS represented to the Sherry Netherland Board that these funds were associated with the Individual Debtor "through a personal investment company." (*See* UBS Letter.) The Trustee must uncover

where these funds came from and what happened to them.  Further, the Trustee's experience with other financial institutions that handled the Individual Debtor's assets suggests that the Individual Debtor, or individuals or entities controlled by or allied with him, may have held other assets at UBS.  This information is likewise of critical necessity to understand the Individual Debtor's financial condition.  Accordingly, the first factor favors the Trustee.

23.     <u>Specificity of Requests.</u>  The document requests set forth in the UBS Subpoena are specific to the Individual Debtor and certain persons and entities that are directly related to or associated with him.  The Trustee has worked with UBS to provide substantial additional information to assist UBS in conducting its internal review and search for documents and information.  The Trustee's efforts in this regard have been met by UBS's refusal to comply with the UBS Subpoena.  This factor thus likewise supports compelling production.

24.     <u>Location of the Information.</u>   UBS is a "global financial services firm"[6] headquartered in Switzerland with substantial business operations located in the United States and with branches throughout the world.  UBS was involved in transactions using relevant accounts through its Stamford Branch, which suggests that at least some responsive documents and information are located within the United States.  Further, to the extent that UBS has additional documents and information located overseas, it has previously shown its ability (by its representations in the UBS Letter) to transmit these to the United States.  It may not refuse to do so now in defiance of the UBS Subpoena.  This factor supports the Trustee.

25.     <u>Availability of Alternative Means to Obtain Information.</u>  UBS has suggested that the Trustee pursue evidence abroad by obtaining counsel in overseas jurisdictions, commencing recognition proceedings, and seeking document production in numerous foreign jurisdictions (a

---

[6]   UBS describes itself as, among other things, a "global financial services firm."  *See* https://www.ubs.com/global/en.html

list of which UBS refuses to disclose).  Alternatively, UBS has suggested that the Trustee pursue evidence via the Hague Evidence Convention – again, throughout the world.  Neither suggestion presents a viable alternative, because either would cause delay and expense that these bankruptcy estates cannot afford.  Rather, the Federal Rules and the Bankruptcy Rules provide a simpler, cheaper, faster mechanism for the Trustee to obtain production.  "The discovery procedures provided by the Hague Convention … are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 182 (S.D.N.Y. 2006); *see also Valois of Am., Inc. v. Risdon Corp.*, 183 F.R.D. 344, 349 (D. Conn. 1997) (noting that "it is generally recognized that procedures under the Hague Convention are far more cumbersome than under the Federal Rules of Civil Procedures").  Because UBS will not even confirm where it alleges the Trustee would need to seek such documents, to ensure complete compliance the Trustee would be required to undertake Hague Convention discovery or institute recognition proceedings in dozens of countries throughout the world.  These are not realistic alternatives.

26.    As the Court recently found, delay and expense are both immensely prejudicial to the Trustee's investigation and, thus, to these bankruptcy estates.  *See* Injunction Decision at pp. 32-33 ("The delay is particularly harmful because there may not be an adequate remedy at law to compensate for the delay.  The Chapter 11 Trustee cannot hire professionals to assist with the investigation without Estate assets and Estate assets may be placed outside the reach of creditors while the investigation continues to be delayed.").  UBS's suggestion that the Trustee obtain consent from persons and entities affiliated with the Individual Debtor is also plainly unrealistic considering the persistent refusal of the Individual Debtor, and his allies, to cooperate with the Trustee's investigation.  The absence of viable alternatives supports compelling UBS.

27.    <u>Noncompliance Undermines Important U.S. Interests.</u>  The United States has a crucial interest in ensuring that the Trustee is permitted to diligently investigate the Individual Debtor's financial affairs.  The Court has repeatedly recognized the importance of the Trustee's investigation for these bankruptcy estates.  *See, e.g.,* Injunction Decision at pp. 38, 39, 41.  The Trustee's investigation is essential to ensure that creditors may eventually recover from property that rightfully belongs to these estates under federal bankruptcy law.

28.    The Trustee's investigation is important not only for the benefit of these estates and their creditors, but also to ensure the integrity of the bankruptcy process.  The Court recognized this in appointing the Trustee and continues to recognize this interest.  *See id.* at pp. 54-55 (noting that the Trustee is an "officer of the Court" and discussing the integrity of the bankruptcy process).  Other courts have likewise recognized the importance of this interest.  *See, e.g., In re RnD Eng'g, LLC*, 556 B.R. 303, 313 (E.D. Mich. 2016 ("the integrity of the bankruptcy process is an important consideration to the Court").  This factor then also supports compelling production.

29.    <u>Hardship and Good Faith.</u>  In asserting a hardship, UBS must "show that the possibility of civil and/or criminal punishment is more than speculative."  *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 U.S. Dist. LEXIS 85650, *41-42 (S.D.N.Y. June 11, 2013).  UBS has provided no such showing; nor can it given, among other things, its conduct in the United States concerning the Debtors, and the involvement of UBS through its Stamford Branch in relevant transactions.  By contrast, any prejudice claimed by UBS may be mitigated by a Court order directing its compliance with the UBS Subpoena and by the *Protective Order* previously entered in the Chapter 11 Case [ECF No. 923].  Further, while UBS has engaged in numerous meet-and-confer telephone conferences, its continuing outright refusal to comply with the UBS

Subpoena – particularly after information uncovered by the Trustee reflecting UBS's conduct in and involving the United States – cannot be further maintained in good faith.

30.     Because all relevant factors support enforcing the UBS Subpoena, the Court should compel compliance by UBS.

**Whose Privacy Rights Is UBS Protecting?**

31.     UBS's prolonged resistance to compliance with the UBS Subpoena begs the question: Whose privacy interests is it protecting?

32.     As for the Individual Debtor, whom UBS has already acknowledged was its client in the UBS Letter, the Trustee stands in his shoes and is entitled to his records.  As for Bravo Luck, it has long had notice of the Chapter 11 Case and is now appearing in the case through counsel. The Debtor's son (Qiang Guo) filed a proof of claim in the Genever US chapter 11 case [Claim No. 3-1 in case no. 22-50592].  These parties have accepted the Court's jurisdiction.  Any could have opposed the First Omnibus 2004 Motion or moved to quash the UBS Subpoena had they wished to do so.

33.     In any event, UBS will be fully protected by a court order directing it to produce documents and information responsive to the UBS Subpoena.  The Court should enter such an order without further delay and prejudice to these bankruptcy estates.

**NO PRIOR REQUEST**

34.     The Trustee has not previously sought the relief requested herein from this or any other court.

<u>**CERTIFICATION OF COUNSEL**</u>

35.    As set forth above, and in the Declaration of Patrick R. Linsey filed herewith, counsel for the Trustee conferred with counsel for UBS in good faith in an effort to resolve this dispute without success.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the Proposed Order granting the relief requested in this Motion to Compel and such other relief as is just and proper.

Dated:      January 23, 2022                    LUC A. DESPINS,
            New Haven, Connecticut              CHAPTER 11 TRUSTEE

                                                By: */s/ Patrick R. Linsey*
                                                    Patrick R. Linsey (ct29437)
                                                    NEUBERT, PEPE & MONTEITH, P.C.
                                                    195 Church Street, 13th Floor
                                                    New Haven, Connecticut 06510
                                                    (203) 781-2847
                                                    plinsey@npmlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

----------------------------------------------------x
                                      :

In re:                                :      Chapter 11
                                        :

HO WAN KWOK, *et al.*,[7]        :      Case No. 22-50073 (JAM)
                                        :

            Debtors.            :      (Jointly Administered)
                                        :

----------------------------------------------------x

**DECLARATION OF PATRICK R. LINSEY IN SUPPORT OF**
**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER COMPELLING**
**UBS AG TO COMPLY WITH RULE 2004 SUBPOENA**

I, Patrick R. Linsey, declare:

1.      I am an attorney admitted to practice law in the State of Connecticut and an associate at the law firm of Neubert, Pepe & Monteith, P.C., and counsel for Luc A. Despins as Chapter 11 Trustee (the "Trustee"). I respectfully submit this declaration in support of the *Motion of Chapter 11 Trustee for Entry of Order Compelling UBS AG to Comply with Rule 2004 Subpoenas* (the "Motion").

2.      I have conferred with counsel for UBS AG (the "UBS") on several occasions over an extended period of time concerning the dispute addressed by the Motion, including (most

---

[7]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

recently) on January 20, 2023.  Despite having so conferred in good faith, the Trustee and UBS were unable to resolve their dispute.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated:       January 23, 2023

             New Haven, Connecticut        Respectfully submitted,

                                           By: */s/ Patrick R. Linsey*
                                               Patrick R. Linsey (ct29437)
                                               NEUBERT, PEPE & MONTEITH, P.C.
                                               195 Church Street, 13th Floor
                                               New Haven, Connecticut 06510
                                               (203) 781-2847
                                               plinsey@npmlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                         :

In re:                    :    Chapter 11
                         :

HO WAN KWOK, *et al.*,[1]   :    Case No. 22-50073 (JAM)
                         :

         Debtors.      :    (Jointly Administered)
                         :

-------------------------------------------------------x

## [PROPOSED] ORDER COMPELLING UBS AG TO COMPLY WITH RULE 2004 SUBPOENA AND AWARDING SANCTIONS

       Upon consideration of the Motion seeking an order compelling UBS AG. (the "<u>UBS</u>") to comply with the Court's *Order Granting First Supplemental Omnibus Motion of Chapter 11 Trustee for Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Additional Legal and Financial Advisors to the Debtor, Entities and Individuals Affiliates with the Debtor, and Relevant Banks* dated September 21, 2022 (ECF No. 866, the "<u>Rule 2004 Order</u>") and with the subpoena (the "<u>UBS Subpoena</u>") the Trustee issued to UBS pursuant to the Rule 2004 Order, after notice and a hearing, *see* 11 U.S.C. § 102(1), it appearing that cause exists to grant the requested relief as conditioned hereafter; it is hereby

       **ORDERED**: The Motion is granted as set forth below.

       **ORDERED**: All objections of UBS to the UBS Subpoena are hereby **OVERRULED**.

       **ORDERED**: UBS shall search for and produce all documents responsive to the UBS Subpoena within fourteen (14) days of the entry of this Order.

Dated: _____, 2023

                               _____
                               Julie A. Manning,
                               United States Bankruptcy Judge

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

**EXHIBIT A**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of **Connecticut**

In re **Ho Wan Kwok**

Debtor

Case No. **22-50073**

Chapter **11**

## SUBPOENA FOR RULE 2004 EXAMINATION

To: **UBS AG**

*(Name of person to whom the subpoena is directed)*

**X** *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE<br>**NEUBERT, PEPE & MONTEITH, P.C.**<br>**195 Church Street, 13th Floor**<br>**New Haven, Connecticut 06510** | DATE AND TIME |
|---|---|

The examination will be recorded by this method: **court reporter/stenographer**

**X** *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**See Requests for Production of Documents, attached hereto.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **September    , 2022**

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*
                                                          **Patrick R. Linsey (ct29437)**

The name, address, email address, and telephone number of the attorney representing *(name of party)*
**Luc Despins, Ch. 11 Trustee**          , who issues or requests this subpoena, are:

**Patrick R. Linsey, Esq.; Neubert, Pepe & Monteith, P.C.; 195 Church Street, 13th Floor, New Haven, Connecticut 06510**
**plinsey@npmlaw.com; (203) 821-2000**

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

<u>**Request for Production of Documents**</u>

## I.    <u>INSTRUCTIONS</u>

1.    Unless otherwise indicated, the requests for documents set forth below, (the "<u>Requests</u>," and each, a "<u>Request</u>"), must be responded to separately and specifically.  Each Request shall be answered fully unless it is in good faith objected to, in which event the reason for Your objection shall be stated in detail, as set forth below.  If an objection pertains only to a portion of a Request, or a word, phrase or clause contained within it, You are required to state Your objection to that portion only and to respond to the remainder of the Requests.

2.    Electronically stored information must be produced in accordance with the following instructions:

 a.    <u>Images.</u>  Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.  File names cannot contain embedded spaces or special characters (including the comma). Folder names cannot contain embedded spaces or special characters (including the comma). All TIFF image files must have a unique file name, i.e. Bates number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image. The number of TIFF files per folder should not exceed 1000 files. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

 b.    <u>Image Load File</u>

  a.    Concordance® Data File. The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database. The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance® default delimiters: Comma ASCII character (020) Quote þ ASCII character (254). Date fields should be provided in the format: mm/dd/yyyy.  Date and time fields must be two separate fields. If documents includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file. For Documents with native files, a LINK field must be included to provide the file path and

1

name of the native file. The native file must be named after the FIRSTBATES.

b. Concordance Image® OR Opticon Cross-Reference File. The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,Box Break,PageCoun.

c. <u>Document Text.</u> Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. It is recommended document level ANSI text files, named per the FIRSTBATES/Image Key. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). Text files must be provided on a document level.

d. <u>Native Production for Certain File Types</u>. File types that reasonably require viewing in their native format for a full understanding of their content and meaning must be produced in native format. These include, but are not limited to, spreadsheets, spreadsheet-like files (Microsoft Excel, comma separated values, tab separated values, etc.), Microsoft PowerPoint or other special presentation files, database files, and audio/visual files. Provide an image of a Bates numbered slip sheet indicating the presence of a native file, and include the path to the native as a field in the .dat file. Name the produced native file with the Bates number corresponding to the slip sheet for the file. Group native files within incrementally named "NATIVE" directories, separate from images directories.

e. <u>De-duplication</u>. Produce a single copy of each electronic document for which exact duplicates exist. For email messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For email attachments and standalone electronic files, consolidate duplicates based on MD5 hash of the entire file.

f. <u>Metadata.</u> Produce extracted metadata for each document in the form of a Concordance compliant load file (.dat). The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance default delimiters: Comma , ASCII character (020) Quote þ ASCII character (254)
Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields. Required metadata listed below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/ TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |

3

| | | |
|---|---|---|
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

3.      Each Request operates and should be construed independently and, unless otherwise indicated, no Request limits the scope of any other Request.

4.      All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in these Requests.

5.      Each Request contained herein extends to all Documents:  (a) in Your possession, custody, or control; or (b) in the possession, custody, or control of anyone acting on Your behalf,

including Your counsel or other representatives and advisors.  Each Document shall be produced in its entirety.

6.      If You are requested to produce a Document that is no longer in Your possession, custody, or control, then Your response must (a) describe in detail the nature of the document and its contents; (b) identify the person(s) who prepared or authored the Document (and, if applicable, the Person(s) to whom the Document was sent); (c) identify the date on which the document was prepared or created; (d) state whether such Document (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of; (e) state the reason for, and the facts and circumstances surrounding, such disposition; (f) identify the Persons who authorized such disposition; (g) identify the date or approximate date of such disposition; (h) state when the Document was most recently in Your possession, custody or control; and (i) identify the Person, if any, presently in possession, custody, or control of such Document.

7.      If You are requested to produce a Document that has been destroyed, then Your response must state, in addition to the information required by the preceding Instruction:  (a) the reason for the Document's destruction; (b) the identity of the Person who destroyed the Document; and (c) the identity of the Person who directed that the Document be destroyed.

8.      If You claim that a requested Document is privileged or attorney work-product, then Your response must: (a) state (i) a description of the Document adequate to support Your contention that the Document is privileged, (ii) the title of the Document, (iii) the date of the Document, (iv) the author of the Document, (v) the addressee of the Document, (vi) the identity of each Person who received or saw the original or any draft, copy, or reproduction of the Document, (vii) whether the Document itself, or any information contained or referred to in the Document is in the possession, custody, or control of any other Persons, and if so, the identity of

such Persons, as well as a statement addressing how the information came into their possession, (viii) the claim of privilege under which the Document is withheld, and (ix) all of the circumstances upon which You will rely to support such claim of privilege; and (b) produce a privilege log containing all of the information requested in Part (a) of this Instruction for each Document withheld on the basis of a claim of privilege in accordance with D. Conn. L. Civ. R. 26(e). For any part of a Document Request as to which a claim of privilege or work product is not made, responsive documents should be provided in full.

9.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions above, and the rest shall be produced.

10.     The Requests are continuing in nature. You are hereby instructed to (a) supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response was incomplete or incorrect; and (b) produce any additional Documents that are called for under the

11.     If a Document is in a language other than English, You should provide that Document.  If a Document is in a language other than English, and an English translation exists, You should provide both Documents.

12.     All references to Entities includes all affiliates thereof.

13.     All references to individual names include all alternative names, aliased, or nicknames.

6

14.     Unless otherwise expressly indicated, the period of time covered by the Document Requests is the period from February 5, 2012 to the date responses to the Document Requests are due.

## II.     RULES OF CONSTRUCTION

15.     The use of (a) any singular noun shall be construed to include the plural, and vice versa, and (b) a verb in any tense shall be construed as the use of the verb in all other tenses.

16.     The terms (a) "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope, and (b) "each" and "any" shall be deemed to include and encompass the words "every" and "all."

## III.     DEFINITIONS

The definitions supplied by D. Conn. L. Civ. R. 26(c) and the rules of construction supplied by D. Conn. L. Civ. R. 26(d), as incorporated by D. Conn. Bankr. L.R. 2004-1(a), shall apply to the Document Requests. In addition, the following terms used in these Document Requests shall have the following meanings:

1.     "You" or "Your" or "Yourself" means and refers to UBS AG, together with any of its affiliates, parents, and subsidiaries, and any of their employees, agents, counsel, advisors, or anyone acting on their behalf.

2.     "Debtor" means Ho Wan Kwok (a/k/a Miles Kwok, Miles Guo, Guo Wengui, Guo Haoyun, 郭文贵, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

7

3.      "Debtor's Son" means Qiang Guo (a/k/a Mileson Kwok, 郭强, or any other alias), together with his employees, agents, counsel, advisors, or anyone acting on his behalf.

4.      "Debtor's Daughter" means Mei Guo (a/k/a Mei Gui, 郭美, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

5.      "Debtor's Purported Wife" means Hing Chi Ngok (a/k/a Hing Chi Ng, Yue Qingzhi, 岳庆芝, or any other alias), together with her employees, agents, counsel, advisors, or anyone acting on her behalf.

6.      "Debtor's Family" means, individually and collectively, the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor.

7.      "2004 Discovery Targets" means, individually and collectively, the Debtor, the Debtor's Family, ACA Capital Group Limited, Himalaya International Financial Group Ltd., Himalaya International Clearing Ltd., Himalaya International Payments Ltd., Himalaya International Reserves Ltd., Jesse Brown, William Je, William Je, Eastern Profit Corporation Limited, HK International Funds Investments (USA) Limited LLC, Bravo Luck Limited, Golden Spring (New York) Ltd., Lamp Capital LLC, Greenwich Land LLC, Qu Guo Jiao, Daniel Thomas Podhaskie, Yvette Wang, Ace Decade Holdings Limited, Dawn State Limited, Rule of Law Society IV Inc., Rule of Law Foundation III, GTV Media Group, Inc., Voice of Guo Media, Inc., and Saraca Media Group Inc.

8.      "Associated Individuals" means, individually and collectively, all individuals that (1) hold, control, have custody over, or discretion over assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family; or (2) have been employees, directors, or otherwise are affiliated with one or more Associated Entities, together with the respective employees, agents, counsel,

8

advisors, or anyone acting on behalf of any of the foregoing. Such Associated Individuals shall include, but are not limited to: Daniel Podhaskie, Jason Miller, Jesse Brown, William Je, Steve Bannon, Karin Maistrello, Melissa Francis, William Gertz, Arethusa Forsyth, Glenn Mellor, Jennifer Mercurio, Eduardo Eurnekian, Han Chunguang (a/k/a 韩春光), Qu Guojiao (a/k/a Qu Guo Jiao, 屈国姣), Guo Lijie (a/k/a 郭丽杰), Zhang Wei (a/k/a 张伟*), Lihong Wei Lafrenz (a/k/a Sara Wei, 魏丽红), Hao Haidong (a/k/a 郝海东), Ross Heinemeyer, Max Krasner, Kyle Bass, Melissa Mendez, Ya Li (a/k/a 李娅), Dinggang Wang (a/k/a 王定刚), An Hong (a/k/a 安红), Yvette Wang (a/k/a Yanping Wang, Yan Ping Wang, 王雁平), Fiona Yu, Je Kin Ming (a/k/a William Je, Yu Jianming, 余建明), Yaz Qingua, and Lao Jiang (a/k/a Jiang Yunfu, Jiang Yunfu Be, 姜云浮).

9.    "Associated Entities" means, individually and collectively, all organizations or Entities of any type that (1) have been owned, controlled, or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing.  Such Associated Entities shall include, but are not limited to: 7 Nod Hill LLC, AAGV Limited, ACA Investment Management Limited, ACA Capital Group Limited, Ace Decade Holdings Limited, AI Group Holdings Inc., Alfa Global Ventures Limited, Alfonso Global Limited, Allied Capital Global Limited, Alpine Fiduciaries SA, Anton Development Limited, Assets Sino Limited, Auspicious Coast Limited, Beijing Pangu Investment Co., Beijing Pangu Investment Co. Ltd., Beijing Pangu Investment Inc., Beijing Zenith Holdings Company Limited, Bravo Luck Limited, BSA Strategic Fund I, China Golden Spring (Hong Kong) Limited, Chuang Xin Limited, Crane Advisory Group LLC, Creative Apex Investments Limited, Crystal Breeze Investments Limited,

Dawn State Limited, Eastern Profit Corporation Limited, Elite Well Global Limited, Empire Growth Holdings, G Club Operations LLC, G Fashion LLC, G News LLC, GETTR USA, Genever Holdings Corporation, Genever Holdings LLC, GFASHION MEDIA GROUP INC., GFNY, Inc., Globalist International Limited, GNews Media Group Inc., Golden Spring (New York) Ltd., Greenwich Land LLC, Guo Media, GTV Media Group, Inc., Hamilton Capital Holdings Inc., Head Win Group Limited, Henan Yuda, Himalaya Embassy, Himalaya Exchange, Himalaya Federal Reserve, Himalaya International Financial Group Ltd., Himalaya International Clearing Ltd. , Himalaya International Payments Ltd., Himalaya International Reserves Ltd., Himalaya Supervisory Organization, HK International Funds Investments (USA) Limited LLC, Hong Kong International Funds Investments Limited, Hudson Diamond NY LLC, Infinite Increase Limited, Infinitum Developments Limited, Insight Phoenix Fund, Lamp Capital LLC, Leading Shine Limited, Leading Shine NY Limited, Long Gate Limited, Next Tycoon Investments Limited, New Federal State of China (a/k/a NFSC), Noble Fame Global Limited, Rosy Acme Ventures Limited, Rule of Law Foundation III, Inc., Rule of Law Foundation IV, Inc., Rule of Law Fund, Rule of Law Society, Rule of Law Society IV, Inc., G-Translators PTY LTD, Saraca Media Group, Inc., Shiny Ace Ltd., Shiny Times Holdings Ltd., Spirit Charter Investment Limited, Stevenson, Wong & Co., TM Primrose Limited, Voice of Guo Media, Inc., Well Origin Ltd., World Century Limited, Worldwide Opportunity Holdings Limited, Whitecroft Shore Limited, and ZIBA Limited.

10.      "Including" or any variant thereof means "including without limitation."

11.      "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

12.      "Any" and "all" and "each" mean "each and every."

13.      "Each" and "every" mean "each and every."

14.     "<u>Third Party</u>" means a Person or Entity other than Yourself.

15.     "<u>Transfer</u>" shall have the meaning given to it by section 101(54) of the Bankruptcy Code.

16.     "<u>Document</u>" means any information or thing within the scope of Fed. R. Civ. P. 34, and includes, without limitation, each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your Possession, Custody or Control, including all printed and electronic copies of electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, charts, blueprints, drawings, sketches, graphs, plans, articles, specifications, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, telexes, facsimiles, emails, text messages, instant messages, voice messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, films, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or markings of any kind not found on the original documents or that are otherwise not identical to the original documents.

17.     "<u>Person(s)</u>" means an individual, corporation, proprietorship, partnership, association, or any other Entity. "Person" also includes any agent, representatives, or expert, including but not limiting to, attorneys or financial advisors.

11

18.    "<u>Entity</u>" means any natural Person, corporation, partnership, subsidiary, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic Person, as well as any affiliate, agent, parent including but not limited to counsel, financial advisors, or any other representative.

19.    "<u>Regarding</u>" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

20.    "<u>Relating to</u>," "<u>relate(s) to</u>" or "<u>related to</u>," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

21.    "<u>Communication(s)</u>" means, in the broadest possible sense, and without limitation, any transmittal of information or knowledge (in the form of facts, ideas, inquiries, or otherwise). Communication(s) further refers to all conversations, agreements, inquiries, or replies, whether in person, by telephone, in writing, or by means of electronic transmittal devices, and includes, but is not limited to, all correspondence, emails, recordings, transmittal slips, memoranda, telephone communications, voice messages, telegrams, telefaxes, telecopies, telexes, instant messages, chats, text messages, postings to a message board or group chat, social media posts, tweets, videos uploaded to any video platform, telephonic notes, or notes transmitted internally or with third parties.

22.    "Asset(s)" means any item of economic value that is subject to Possession, Custody, or Control. Asset includes all real and personal property, including but limited to, real estate, land, houses, apartments, condominiums, automobiles, yachts, boats, planes, jets, helicopters, cash, bank accounts, cryptocurrencies, securities, accounts receivables, inventory, and other tangible and intangible property.

## IV.    DOCUMENTS TO BE PRODUCED

1.    All Documents dated between January 1, 2012 and the present related to any account held by, controlled by, on behalf of, or otherwise related to any of the 2004 Discovery Targets, including any and all account statements, authorizations, power of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

2.    All Documents dated between January 1, 2012 and the present related to any funds, securities, property, or assets belonging to, held by, controlled by, on behalf of, or otherwise related to any of the 2004 Discovery Targets, including any and all account statements, authorizations, powers of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

3.    All Documents dated between January 1, 2012 and the present related to any business, commerce or financial transactions, including but not limited to any loan, line of credit, bailment, deposit, swap, securities transactions, mortgage, or ISDA, with any of the 2004 Discovery Targets, including any and all account statements, authorizations, powers of attorney, trusts, instructions or forms, copies of cancelled checks, correspondence, and wire transfers and related correspondence and instructions.

4.      All Documents dated between January 1, 2012 and the present relating to any wire transfer activity relating to the 2004 Discovery Targets, regardless of the existence of any accounts, including but not limited to all wire transfer receipts, account numbers, balances, authorizations, identification information related to the parties to the transfer, correspondence, instructions, or other records.

5.      All Documents dated between January 1, 2012 and the present related to any correspondence and communications between you and the 2004 Discovery Targets.

6.      All Documents dated between January 1, 2012 and the present related to any account with any 2004 Discovery Target relating to  opening of the account, authorized users of the account and maintenance of the account.

7.      All Documents dated between January 1, 2012 and the present  related to any anti-money laundering, know-your-customer, or other compliance activity relating to any of the 2004 Discovery Targets, including but not limited to any information provided by any of the 2004 Discovery Targets, or learned by You.

8.      All Documents dated between January 1, 2012 and the present relating to any communications with any regulator from any country, including but not limited to the Bank of England, the United States Federal Reserve, the S.E.C., the CFTC, FINRA, China Securities Regulatory Commission, People's Bank of China, Hong Kong Securities and Futures Commission, and the Hong Kong Monetary Authority relating to any of the 2004 Discovery Targets.

**EXHIBIT B**



**UBS Business Solutions US LLC**
1285 Avenue of the Americas
New York NY 10019
Tel. +1-212-821 3000

Americas Litigation

Theodore Wills
Assistant General Counsel
Tel: 615-393-7618
Theodore.Wills@ubs.com

**www.ubs.com**

**Confidential**

October 12, 2022

BY EMAIL plinsey@npmlaw.com
Patrick R. Linsey, Esq.
Neubert Pepe & Monteith, PC
195 Church Street, 13th Floor
New Haven, CT 06510

    **Re:**   *In Re Ho Wan Kwok*
        United States Bankruptcy Court, District of Connecticut
        Case No. 22-50073
        Our Matter No.: 43442005-2022-1244

Dear Counsel,

This letter is written on behalf of UBS AG ("UBS") in response to the Subpoena for Rule 2004 Examination to UBS AG dated September 22, 2022 and served upon UBS by your firm in connection with the above-referenced action currently pending in the United States Bankruptcy Court, District of Connecticut (the "Subpoena or Request").

<u>**OBJECTIONS TO DOCUMENT REQUESTS**</u>
<u>**and INSTRUCTIONS and DEFINITIONS**</u>

UBS objects to the production of any documents related to accounts located in jurisdictions outside of the United States. United States Bankruptcy courts do not have jurisdiction over UBS entities in jurisdictions outside of the United States as UBS entities in jurisdictions outside of the United States do not conduct business in the United States. Also, US UBS employees do not have access to the systems that house the documents related to accounts held in jurisdictions outside of the United States and employees of UBS entities in jurisdictions outside of the United States could face criminal penalties if they were to produce documents in response to a United States District Court subpoena.

UBS objects to the production of Documents related to any regulator of UBS, anti-money laundering Documents, and other compliance Documents as the production of such documents could expose UBS to legal and/or regulatory liability.

UBS objects to the Subpoena on the grounds that it is overly broad and unduly burdensome, as compliance would impose significant expense and burden on UBS, a non-party, and the issuing party has failed to take reasonable steps to avoid imposing such hardships on UBS. For example, certain of

the Requests could be sought from the parties to the action.  UBS contends that the Requests fail to identify documents with reasonable particularity, including but not limited to identifying a reasonable time-period for which you are seeking discovery.  Moreover, certain requests can be construed as seeking documents that are in UBS's affiliates' possession, custody or control having corporate identities separate and apart from UBS and therefore not in UBS's possession, custody or control.

UBS will not produce documents or information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege or protection which UBS is entitled to assert.  UBS reserves the right to recall from discovery any inadvertently produced document that is protected by the attorney-client privilege, the work product immunity doctrine, or any other applicable privilege or immunity.  Further, UBS will not produce documents from UBS's offices or those of its affiliates or subsidiaries located outside of the United States that would violate the laws of any other jurisdiction.

UBS's forgoing objections and responses to the Subpoena, does not concede that responsive documents exist or are within its possession, custody, or control. Further, no documents will be produced absent entry of an appropriate confidentiality stipulation and protective order governing their use and disclosure. UBS reserves the right to supplement or amend these responses.

Subject to and without waiver of the foregoing objections, UBS is willing to meet and confer in an effort to narrow or eliminate areas of dispute relating to this Request.

Sincerely,

*/s/ Theodore Wills*
Theodore Wills
Assistant General Counsel

## EXHIBIT C

**UBS**

Hong Kong Branch
52/F Two International Finance Centre
8 Finance Street,
Central, Hong Kong
Tel. +852-2971 8888
Fax +852-2971 8001

Feb. 23, 2015

Board of Directors of the Sherry-Netherland
The Sherry-Netherland
781 Fifth Avenue
New York, NY 10022

Dear Sirs,

## Bank Reference – [Application for Real Estate Investments]

We have been asked to provide a reference letter in connection with Application for Real
Estate Investments. We confirm that:

**Kwok Ho Wan**
[client's ID:

has been a client of ours through a personal investment company since July 2012 and during
this time Mr. Kwok Ho Wan has had a satisfactory banking relationship with us. As at 18 Feb,
2015, the funds involved in this banking relationship is not less than USD400, 000,000.

The above information is based on our experience of this banking relationship as at current
date and is given in confidence for your private use only, without any responsibility on the
part of UBS AG or its employees. This letter may only be used in the business context outlined
at the beginning of this letter and does not constitute a guarantee or any other obligation on
the part of UBS AG. In particular, we are under no obligation to inform you of any subsequent
change of circumstances in this banking relationship.

Yours faithfully,
For and on behalf of
UBS AG Hong Kong Branch

Tommy Cheung
Managing Director

Stephen Wong
Managing Director

**SN 0056**