**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| HO WAN KWOK et al. | § | CASE NO. 22-50073 (JAM) |
| | § | |
| Debtors. | § | |

# THE DEBTOR'S OBJECTION TO EMERGENCY MOTION OF CHAPTER 11 TRUSTEE AND GENEVER DEBTORS FOR ENTRY OF ORDER (A) COMPELLING INDIVIDUAL DEBTOR TO COMPLY WITH PRELIMINARY INJUNCTION WITH RESPECT TO CLAIMS PROCESS, (B) QUASHING INDIVIDUAL DEBTORS' OBJECTIONS TO CLAIMS, AND (C) BARRING INDIVIDUAL DEBTOR FROM FILING FURTHER OBJECTIONS TO CLAIMS, ABSENT PRIOR LEAVE OF COURT

Ho Wan Kwok, the individual debtor (the "Debtor") in the above-captioned bankruptcy case (the "Bankruptcy Case"), respectfully submits his objection to the Emergency Motion of Chapter 11 Trustee and Genever Debtors for Entry of Order (A) Compelling Individual Debtor to Comply with Preliminary Injunction with Respect to Claims Process, (B) Quashing Individual Debtors' Objections to Claims, and (C) Barring Individual Debtor from Filing Further Objections to Claims, Absent Prior Leave Of Court (Doc. No. 1345) (the "Motion to Compel and Quash"), filed by Luc A. Despins, the Chapter 11 Trustee (the "Trustee"), and debtors Genever Holdings LLC ("Genever (US)") and Genever Holdings Corporation ("Genever BVI" and collectively with the Trustee and Genever (US), "Movants")[1] on January 19, 2023. Because the Motion to Compel and Quash concerns both the Bankruptcy Case and the adversary proceeding captioned *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok*, Adv. Pro. No. 22-05032 (the "Adversary Proceeding"), and undersigned counsel only represents the Debtor in the Bankruptcy

---

[1] After the Trustee took control of Genver (US) and Genver BVI, their bankruptcy cases were transferred to this district and is now jointly administered along with the Debtor's case. *See* Order Granting Motion for Joint Administration of Related Chapter 11 Cases (Doc. No. 970).

Case, this objection is limited to addressing the relief sought by the Motion to Compel and Quash in the Bankruptcy Case, specifically, orders (i) quashing the subject claims objections (Doc. Nos. 1332, 1333, 1334) (collectively, the "Claims Objections"), filed by the Debtor; and (ii) barring the Debtor from filing any further objections to claims absent prior leave of the Court.[2] In support of this objection, the Debtor respectfully represents as follows:

## I. PRELIMINARY STATEMENT

1. There is absolutely no legal or factual justification in this Chapter 11 Bankruptcy Case to quash the Debtor's Claims Objections or prohibit the Debtor from filing future objections to claims. To the contrary, the Debtor's perfectly legitimate effort to challenge claims he disputes, investigate the grounds relied upon by the claimants, and seek the disallowance of invalid claims is, beyond question, in the best interests of the bankruptcy estate, its creditors and other parties in interest.

2. As a Chapter 11 debtor (even out of possession), the Debtor has standing to object to claims in this case. The cases cited by Movants are inapplicable because they involve debtors in Chapter 7. In a Chapter 11 case where the Trustee has been appointed, the Debtor's rights and interests are not completely divested. Rather, the Debtor shares the paramount interest in addressing the allowed claims asserted against him through a plan of reorganization. This is precisely why the Debtor possesses the statutory right to file a plan of reorganization to treat allowed claims.

3. The Debtor's extensive good faith efforts to file and confirm a plan and also to obtain agreement from the then known creditors concerning their treatment is hardly theoretical in this case. As this Court heard from the Debtor's counsel during his prior testimony, the Debtor

---

[2] Counsel for the Debtor in the Adversary Proceeding will be filing an opposition therein.

and his counsel engaged in months of negotiations which resulted in agreements in principle with the Debtor's largest unsecured creditor, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") and the Official Committee of Unsecured Creditors (the "Committee"), subject to an agreement being reached with the Trustee and the plan of reorganization being confirmed, among other performance conditions.

4.     However, at a meeting between the Trustee and the Debtor, the Trustee demanded instead that the Debtor pay $250 million to settle this case, well more than had been agreed in principle between the Debtor and his then known creditors. The Trustee's purported justification for his position was that the Trustee claimed to believe that there were significant additional claims against the Debtor related to investments in Himalaya Coin ("H-Coin"). Thus, the full and fair determination of these H-Coin claims bears directly upon the Debtor's prospect for a successful reorganization. Prohibiting the Debtor from objecting to and investigating what he believes to be illegitimate claims serves only to preclude an expeditious resolution of this Bankruptcy Case. Moreover, the Debtor is in the very best position to challenge these claims where appropriate. Thus, the Motion to Compel and Quash should be denied to the extent that it seeks to quash the Claims Objections and restrict the filing of further objections.

## II. BACKGROUND

5.     On February 15, 2022, the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6.     On June 15, 2022, the Bankruptcy Court issued its Memorandum of Decision and Order Denying Motion To Dismiss Without Prejudice And Granting Joinder To Motion For Appointment Of Chapter 11 Trustee (Doc. No. 465), ordering, among other things, that a chapter 11 trustee be appointed in the bankruptcy case.

7. On July 7, 2022, the United States Trustee filed a notice appointing the Trustee, as trustee in this bankruptcy case (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515), seeking the Court's approval of the appointment of the Trustee.

8. On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as chapter 11 trustee in the bankruptcy case.

9. On November 17, 2022, at the Trustee's request, a meeting (the "November 17 Meeting") was held among the Trustee, the Trustee's counsel, Nicholas Bassett, the Debtor, and the Debtor's counsel, Aaron Mitchell and Stephen Kindseth ("Attorney Kindseth"), at the offices of Brown Rudnick LLP in New York City.[3] (Transcript of Hearing on Motion for Preliminary Injunction, December 12, 2022, Adv. Pro. No. 22-05032 ("Dec. 12 Tr."), 841:15-23, 848:21 – 849:5, Direct Examination of Attorney Kindseth.)[4] At that meeting, the Trustee demanded that the Debtor pay $250 million to the Debtor's estate. (*Id.*, 864:24 – 865:4.) This demand deviated greatly from the "nearly imminent" global settlement of the Bankruptcy Case as it stood the day before, which had been negotiated over the course of several months with the major creditor, PAX, and the Committee. (*Id.*, 866:1-8.) The Trustee's issue with the negotiated settlement stemmed entirely from the *potential* claims related to H-Coin surfacing in the future.[5] (*Id.*, 844:21 – 845:16.) While the Debtor disputes that there is any validity to these so-called potential H-Coin claims, the Trustee raised an issue with how any such potential claims would be

---

[3] A translator for the Debtor was also present.
[4] A true and correct copy of the relevant excerpts from the Dec. 12 Tr. is attached hereto as **Exhibit A**.
[5] As testified to by Debtor's counsel, the Debtor had resolved the issue of providing sufficient security to secure the payment obligations due PAX. (Dec. 12 Tr., 895:9-24.)

4

addressed in the case. (*Id.*)

10. On January 6, 2023, Qiu Yu ("Yu") filed Claim number 16 ("Claim 16") in the amount of $14,000.00 and Claim number 17 ("Claim 17") in the amount of $200,200.00. Claim 16 asserts a non-priority unsecured claim in the amount of $14,000.00. The only basis alleged by Yu in support of Claim 16 is "investment fraud", and the only documents attached to Claim 16 are what appear to be two wire transfer confirmations, in German – one in the amount of $7,000.00 to an entity called Himalaya International Clearing, and the other in the same amount to Deltec Bank and Trust Limited. Claim 17 asserts a non-priority unsecured claim in the amount of $200,200.00. The only basis alleged by Yu in support of Claim 17 is "investment fraud", and again, the only documents attached to Claim 17 are what appear to be a wire transfer confirmation and bank form, both in German, regarding a transfer to Crane Advisory Group, LLC.

11. On January 11, 2023, Lee Chu ("Chu" and together with Yu, "Claimants")) filed Claim number 18 ("Claim 18" and collectively with Claim 16 and Claim 17, the "Claims") in the amount of $9,809,860.00. Claim 18 asserts a non-priority unsecured claim in the amount of $9,809,860.00. Chu alleges the basis of the claim is that "Miles Guo fraudulently induced me to wire money to a number of entities." In addition, a number of documents are attached to Claim 18; however, none of them establish the fraudulent inducement claimed by Chu.

12. On January 13, 2023, the Court entered the Corrected Order Granting in Part Motion for Preliminary Injunction (Adversary Proceeding, Doc. No. 134) (the "Preliminary Injunction"). Relevant here, the Preliminary Injunction provides: "The Debtor is further preliminarily enjoined from interfering in any way with the integrity of his Chapter 11 case . . . including taking any act to, and/or directing or encouraging others to take any act that, threatens,

or encourages others to threaten the safety of Chapter 11 Trustee, PAX's or its affiliates' officers or employees, counsel to the Chapter 11 Trustee or PAX, and any of their respective relatives (including former spouses)." (Preliminary Injunction, ¶ 2.) The Preliminary Injunction further provides that it binds, *inter alia*, the Debtor's attorneys upon their receipt of actual notice thereof. (*Id.*, ¶ 5.)

13. On January 17, 2023, the Debtor filed the Claims Objections separately objecting to each of the claims because he disputed he owed an debt to Claimants. Claimants also failed to allege, in the first instance, sufficient facts or attach documentation to the Claims to demonstrate that they have a claim against the Debtor.

14. On January 19, 2023, Movants filed the Motion to Compel and Quash, seeking an order (i) compelling the Debtor to comply with the Corrected Order Granting in Part Motion for Preliminary Injunction (Adv. Proc. Docket No. 134) issued by this Court in the Adversary Proceeding; (ii) quashing the Claims Objections; and (iii) barring the Debtor from filing any further objections to claims absent prior leave of the Court.

### III. LEGAL ANALYSIS

#### A. The Debtor Has Standing to Pursue the Claims Objections

15. Movants' sole argument in support of quashing the Claims Objections is that the Debtor lacks standing to pursue them because the Trustee has been appointed in the Bankruptcy Case. However, the Trustee cites to and relies upon authority concerning the standing of a debtor to object to claims in a Chapter 7 case. As set forth below, a Chapter 11 case where a trustee has been appointed is different because, unlike in a Chapter 7 case, the Debtor has a more far-reaching pecuniary interest in the case, specifically, resolving claims against him through objections to claims to determine whether disputed claims should be allowed and then through

the treatment of allowed claims in a plan of reorganization.

16. Considering that the Trustee's ostensible reason for demanding $250 million at the November 17 Meeting was the existence of these H-Coin claims, the Trustee cannot dispute that their resolution is at the very core of the Debtor's reorganization. Accordingly, the Debtor's right to object to claims he disputes, to investigate those claims through discovery, and to demonstrate to the Court that such claims should be disallowed should not be infringed. Rather than interfering with the administration of the estate, the Claims Objections, and any future objections, if successful, would only benefit the estate by reducing the number and amount of claims – specifically those without merit.

17. Moreover, even in the Chapter 7 context, there are several recognized exceptions to the general rule that the Chapter 7 debtor lacks standing to pursue claims objections that are applicable here, including that there are nondischargeable claims asserted against the Debtor and the objection will not interfere with the administration of the estate. The Trustee could proceed independently with his administration of the estate unaffected by the Claims Objections and simply let the Debtor prosecute them to their appropriate conclusion, by way of settlement or adjudication. Thus, the Debtor has standing to pursue the Claims Objections.

18. Section 502(a)[6] provides in relevant part that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

---

[6] References herein to "Section(s)" are to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise indicated.

7

19. "Section 1109(b) must be construed broadly to permit parties affected by a Chapter 11 proceeding to appear and be heard." *In re Texaco, Inc.*, 81 B.R. 820, 828 (Bankr. S.D.N.Y. 1988); *see also Frontier Ins. Co. v. Westport Ins. Corp. (In re Black)*, 460 B.R. 407, 413 (Bankr. M.D. Pa. 2011). "For the purposes of Chapter 11 proceedings, a 'party in interest' includes 'the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee.'" *Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 127 (S.D.N.Y. 2011) (quoting 11 U.S.C. § 1121(c)). "There is no reason to define 'party in interest' standing more narrowly in the context of an objection to a claim than in the context of a plan objection. Parties in interest for the purpose of claims objections 'include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.'" *Frontier Ins. Co.,* 460 B.R. at 414 (quoting *Adair v. Sherman*, 230 F.3d 890, 894 n. 3 (7th Cir. 2000)). Thus, in a Chapter 11 case, the Debtor has standing to object to a claim filed in his bankruptcy case even where a trustee has been appointed because the Debtor is a party in interest. *In re Futterman*, 602 B.R. 465, 472 (Bankr. S.D.N.Y. 2019). *Cf. In re Greenfield*, 2021 Bankr. LEXIS 1845, at *4 (Bankr. D. Idaho July 13, 2021) (rejecting Chapter 7 debtor's argument that she had standing to object to claims under Section 1109(b) because "§ 1109(b) allows a debtor standing to raise and be heard on any issue in a case under chapter 11.").

20. Confoundingly, all the cases cited by the Trustee in opposition to the Debtor's standing are Chapter 7 cases. *See In re 60 E. 80th St. Equities*, 218 F.3d 109, 115 (2d Cir. 2000); *In re Licata*, 659 Fed. App'x 704, 706 (2d Cir. 2016); *Cole v. Rescia*, 2022 U.S. Dist. LEXIS 175759, at *15-16, 2022 WL 4536830 (D. Conn. Sept. 28, 2022); *Pascazi*, 445 B.R. at 127; *Chorches v. Ferraro (In re Ferraro)*, 2017 Bankr. LEXIS 583, at *7 (Bankr. D. Conn. Mar. 3,

8

2017); *In re I & F Corp.*, 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998); *Caserta v. Tobin*, 175 B.R. 773, 775 (S.D. Fla. 1994).[7] The gravamen of the cases under Chapter 7 is that a debtor has standing to object to a claim if he has a pecuniary interest such as the reasonable possibility of a surplus. *See Ferraro*, 2017 Bankr. LEXIS 583, at *7. This is because in a Chapter 7 case, the "'proceedings absolve the debtor of any liability to creditors and the debtor has no interest in the distribution of the estate's property since the property has passed to the trustee.'" *Id.* (quoting *Licata v. Coan*, 2015 U.S. Dist. LEXIS 160333, at *15, 2015 WL 9699304, at *5 (D. Conn. Sep. 22, 2015)). This makes sense in a Chapter 7 case where "a trustee is appointed to administer the debtor's case, by collecting the property of the estate, reducing it to cash, and distributing the proceeds to creditors." *In re Abbott*, 2010 Bankr. LEXIS 1550, at *9 (Bankr. S.D.N.Y. May 4, 2010).

21.   However, in a Chapter 11 case, the debtor, whether or not a trustee is appointed, has a more far-reaching pecuniary interest in the case. Chapter 11 debtors, even out of possession, are not simply absolved of liability, and therefore, they seek to resolve through the Chapter 11 bankruptcy case all the valid claims against them. Accordingly, such debtors have statutory authority to object to claims. *See* 11 U.S.C. §§ 502(a) & 1109(b). They also have the right to file and confirm a plan of reorganization. This is made abundantly clear by Section 1121(c), which provides that "[a]ny party in interest, including the debtor, the trustee, a

---

[7] Movants also cite Collier on Bankruptcy for the proposition that "[i]n a chapter 7 case, or a chapter 11 case in which the debtor is not in possession and there is no possibility of a surplus being returned to the debtor, the debtor usually has no pecuniary interest in the outcome of claims objections and thus no standing to object to claims." Collier on Bankruptcy § 502.02[2][c]. However, that assertion in the treatise cites only to *Pascazi*, 445 B.R. 124, a Chapter 7 case, which does not support the assertion regarding a Chapter 11 case. In fact, *Pascazi* refers to Chapter 11 only to distinguish it: "For the purposes of Chapter 11 proceedings, a 'party in interest' includes 'the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee.' 11 U.S.C. § 1121(c). But the term is not defined in Chapter 7." *Id.* at 127.

creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if — (1) a trustee has been appointed under this chapter. . . ." Moreover, it has been recognized that

> [t]he Chapter 11 trustee's authority to conduct the debtor's business and to manage the estate, primarily for the creditors, does not mean that the Chapter 11 debtor's interests are totally divested. In addition to having standing to file a reorganization plan, the debtor has a pecuniary interest in the equity of the estate if all the creditors can be paid in full, or if each class of impaired claims accepts the plan in accordance with 11 U.S.C. § 1129 (a) (8) (A), so that the debtor may retain an equity interest. In such case, the Chapter 11 debtor possesses a direct pecuniary interest in the estate which would not implicate the rights of the Chapter 11 trustee, whose primary function is to protect the creditors' interests in the estate.

*In re McCorhill Pub., Inc.*, 89 B.R. 393, 396 (Bankr. S.D.N.Y. 1988).

22. Here, the Debtor certainly has interests in his bankruptcy estate that are clearly sufficient to establish his standing to file the Claims Objections and further objections to claims. As the Debtor has the ability to file and confirm a plan, and the impediment (or at least the impediment claimed by the Trustee) is that there are supposedly significant additional H-Coin related claims against the Debtor, the Debtor has a direct interest in investigating such claims and having them disallowed to the extent that they are not legitimate claims against him. This would allow the Debtor to demonstrate the feasibility of a plan, and acceptability to existing creditors, in line with the terms previously negotiated with creditors. Otherwise, the Debtor's ability to propose a plan and settle this Bankruptcy Case would be seriously compromised, if not eliminated.

23. If the Trustee's true concern is that there are other significant, legitimate claims against the Debtor –based on H-Coin–, which forms the basis for his demand of $250 million, then the administration of the estate could only benefit if the Debtor could demonstrate that there are no other legitimate claims. In that case, the creditors of the Debtor's estate would be limited

to those that the Debtor, and indeed the creditors, believe to exist. This would support a potential resolution of this Bankruptcy Case along the lines of the settlement that the Trustee effectively quashed.

24.     Moreover, even if the Court believes that the caselaw regarding a debtor's ability to object to claims in a Chapter 7 case applies, Courts have recognized several situations in which a debtor can object to a claim, including (1) there could be a surplus for the debtor; (2) there are nondischargeable claims against the debtor; (3) the trustee has failed or refused to object to the claim; or (4) the objection will not interfere with the administration of the estate. *See In re Stylianou*, 2009 Bankr. LEXIS 5524, at *78 n.48 (Bankr. S.D.N.Y. Aug. 21, 2009); *In re Yerushalmi*, 2019 Bankr. LEXIS 1769, at *34 (Bankr. E.D.N.Y. June 5, 2019) (citing cases); *McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996). Thus, even assuming, *arguendo*, that the Chapter 7 caselaw applies here, there have been several nondischargeability complaints filed against the Debtor, and while the Debtor denies that the claims are nondischargeable and believes he will prevail in those actions, he recognizes that there is risk inherent in all litigation. Moreover, the Debtor's objections would not interfere with the administration of the Debtor's estate. As set forth above, the disallowance of illegitimate claims only serves to aid in the administration of the estate. Moreover, the Claims Objections are separate contested proceedings that would only affect whether, and to what extent, the Claims should be disallowed.

25.     Therefore, since the Debtor clearly has standing to prosecute the Claims Objections, and objections to other claims, the Court should deny the Motion to Compel and Quash to the extent that it seeks to quash the Claims Objections.

### B. There Is No Basis for a Bar on the Debtor Filing Further Objections to Claims without Leave of the Court

26.     The Trustee has not established that the Debtor should be barred from filing any

future objections to claims in the Bankruptcy Case without leave of the Court. The fact that the Debtor filed legitimate Claims Objections certainly does not rise to the level of the extreme circumstances that would support a bar on filing pleadings in this case. Therefore, to the extent that Movants seek a restriction on the Debtor's ability to file legitimate pleadings in this Bankruptcy Case, the Motion to Compel and Quash should be denied.

27. The Second Circuit has established factors to consider before restricting a litigant's access to the Courts:

> [I]n determining whether or not to restrict a litigant's future access to the courts, courts should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). "[A] prefiling order is an extreme remedy to be imposed only under extreme circumstances." *Richardson v. Melcher (In re Melcher)*, 2014 Bankr. LEXIS 1586, at *29 (B.A.P. 9th Cir. Apr. 11, 2014).

28. All of the *Safir* factors clearly militate against restricting the Debtor's access to this Court as requested by Movants. First, the Debtor's history of litigation has not entailed vexatious, harassing, or duplicative proceedings. Specifically, as set forth above, and in the Claims Objections themselves, the Claims Objections are legitimate challenges to the allowance of illegitimate claims that provide no evidence that Claimants have any claims against the Debtor. Vexatious proceedings or litigation are made "for the purpose of harassing, annoying, and vexing an opponent, rather than for the adjudication of rights, being invoked, not for the

attainment of justice, but to further or satisfy a malicious motive." Vexatious Suit, *Ballentine's Law Dictionary*, 2010 ed. The Claims Objections, and indeed the Debtor's filings in this case, have not been made for the purpose of harassing, annoying, and vexing any opponent, but rather, have been filed in order to adjudicate the rights of the Debtor – i.e., whether the Claimants have any valid claims against the Debtor. Moreover, there has not been any duplication of litigation.

29.     Second, the Debtor has a good faith objective for filing the Claims Objections. He seeks to have the Court determine the validity of the Claims, which he believes are illegitimate based on the information set forth in the Claims themselves, in order to attempt to resolve this case by demonstrating that the Trustee's concerns about significant additional claims are unfounded. As a result, he continues to pursue the objective of resolving this case along the lines of the terms that were previously acceptable to creditors. While Movants assert that the purpose of the Claims Objections is "to harass creditors and intimidate them into not filing proofs of claim"; Motion to Compel and Quash, p.21; there is absolutely nothing intimidating about the Claims Objections as they merely challenge claims filed without adequate allegations to demonstrate they are claims against the Debtor. If anything, the Claims Objections make Claimants (and other potential claimants) aware of deficiencies in their claims, which they presumably could correct before the claims bar date.

30.     Third, the Debtor does have counsel, and counsel submit that the Claims Objections fall squarely within their duty to zealously advocate for their client. Movants do not accuse counsel of any sanctionable conduct.[8]

---

[8] In the Motion to Compel and Quash, Movants do not appear to argue that the filing of the Claims Objections violated the Preliminary Injunction, and indeed, the Claims Objections do not violate the Preliminary Injunction. However, to the extent that the Motion to Compel and Quash can be read to claim that the filing of the Claims Objections violated the Preliminary Injunction, the Debtor and his counsel reserve all rights to challenge such an assertion.

31.     Fourth, the Debtor has not imposed a needless expense on other litigants or an undue burden on the Court. Indeed, the prosecution of the Claims Objections would reduce expenses to the estate (and ultimately proper creditors) by avoiding the use of potential estate funds by the Trustee in litigating objections to the Claims. Moreover, there is no undue burden on the Court as deciding whether claims should be allowed or not is squarely within the ordinary functions of the Bankruptcy Court.

32.     Last, lesser, or any, sanctions would be inappropriate because, as set forth herein, the Claims Objections are completely legitimate filings made by the Debtor in furtherance of his rights.

33.     Moreover, the cases cited by Movants highlight the type of extreme, prolonged conduct necessary to justify a filing ban. *See Safir*, 792 F.2d at 20-21, 25 (upholding permanent injunction barring further proceedings because of "meritless, duplicative, and burdensome" litigation over nearly twenty years); *Seaport Capital Partners v. Speer (In re Speer)*, 2017 Bankr. LEXIS 4523, at *15, 25 (Bankr. D. Conn. Nov. 22, 2017) (warning that after a further hearing debtor's filing of future documents could be restricted for, *inter alia*, filing sixty-four documents in case in eight months that did not address prior sanctions order); *Coan v. Peia (In re Peia)*, 212 B.R. 217 (D. Conn. 1997) (prohibiting debtor from filing actions against Bankruptcy Judge, but not others, after thirteen bankruptcy filings in nine years that were used to file innumerable adversary proceedings against government officials and others); *In re Armstrong*, 297 B.R. 154 (Bankr. D. Utah 2003) (enjoining debtor from filing new motions or actions related to bankruptcy proceedings where debtor had filed over thirty actions collaterally attacking confirmation order); *Melcher*, 2014 Bankr. LEXIS 1586, at *5, 25 (directing bankruptcy court to fashion appropriate prefiling order where debtor made "seemingly endless" filings and docket

14

had over 1,700 entries in about a year).

34. Such extreme conduct is not present here. In fact, the Debtor has not demonstrated any improper conduct through his filings with the Court, including the Claims Objections, which are legitimate filings to further the Debtor's rights. Therefore, to the extent that the Motion to Compel and Quash seeks the imposition of a filing restriction on the Debtor, it should be denied.

## IV. CONCLUSION

**WHEREFORE**, the Debtor requests that the Court deny the Motion to Compel and Quash to the extent set forth herein, and grant him such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut this 24th day of January, 2023.

**THE DEBTOR,
HO WAN KWOK**

*/s/  John L. Cesaroni*
Stephen M. Kindseth (ct14640)
James M. Moriarty (ct21876)
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: skindseth@zeislaw.com
          jmoriarty@zeislaw.com
          jcesaroni@zeislaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| HO WAN KWOK et al. | § | CASE NO. 22-50073 (JAM) |
| | § | |
| Debtors. | § | |

**CERTIFICATE OF SERVICE**

I, John L. Cesaroni, hereby certify that on the 24th day of January, 2023, a copy of the foregoing was sent by e-mail to all appearing parties by operation of the Court's electronic filing system.

        */s/*   John L. Cesaroni
        John L. Cesaroni (ct29309)
        10 Middle Street, 15th Floor
        Bridgeport, Connecticut 06604
        Telephone: (203) 368-4234
        Facsimile: (203) 368-5487
        Email: jcesaroni@zeislaw.com