# **EXHIBIT A**

```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                         BRIDGEPORT DIVISION

                                         .
IN RE:                                   . Chapter 11
                                         .
HO WAN KWOK,                             . CASE NO.: 22-50073 (JAM)
                                         .
              Debtors.                   .
. . . . . . . . . . . . . . . . . . .
PACIFIC ALLIANCE ASIA                    .
OPPORTUNITY FUND L.P.,                   . Adv. Pro. No.: 22-05032
                                         .
              Plaintiff,                 .
     v.                                  .
                                         .
HO WAN KWOK,                             .
                                         . Bridgeport, Connecticut
              Defendants.                . December 12, 2022
. . . . . . . . . . . . . . . . . . .
```

TRANSCRIPT OF MONTION FOR PRELIMINARY INJUNCTION
**BEFORE THE HONORABLE JULIE A. MANNING**
**UNITED STATES BANKRUPTCY JUDGE**

**(DAY 4)**

APPEARANCES:

| | |
|---|---|
| For the Plaintiffs: | PETER FRIEDMAN, ESQ.<br>DAVID HARBACH, ESQ.<br>STUART SARNOFF, ESQ.<br>DANIEL CANTOR, ESQ.<br>O'Melveny & Myers, LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036 |
| Transcription Company: | Reliable<br>1007 N. Orange Street<br>Wilmington, Delaware 19801<br>(302)654-8080<br>Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1        A.    Yes, I am.

2        Q.    And you're an attorney, obviously.  What's your
3   specialty?

4        A.    Commercial litigation and bankruptcy -- commercial
5   bankruptcy.

6        Q.    And how long have you been practicing in that
7   area?

8        A.    Twenty-eight years.

9        Q.    And you're affiliated with a firm?

10       A.    Yes, I am.

11       Q.    Which firm is that?

12       A.    Zeisler & Zeisler.

13       Q.    And do you have a position with that firm?

14       A.    I am a shareholder and managing partner.

15       Q.    And Mr. Kindseth, were you present at a meeting
16  between the Debtor and the Trustee on November 17th, 2022?

17       A.    Yes, I was.

18       Q.    How did it come about that you had this meeting
19  with the Trustee?

20       A.    The Trustee called my partner, Eric Henzy, and
21  requested a face-to-face meeting on November 16th in the
22  afternoon, and ultimately, we agreed to meet with the
23  Trustee.

24       Q.    And what was your response to the proposal to have
25  a meeting with the Trustee?

1    Q.   And can you describe for the Court, without
2 getting into specific terms, the process that had unfolded in
3 trying to achieve a global settlement?
4    A.   Yes, so I originally represented Ms. Mao Gou
5 (phonetic) is HKUSA, and through that had developed a -- what
6 I thought as a very good working relationship with PAX's
7 counsel, Attorney Friedman and Attorney Sarnoff.  And then,
8 when I got retained to represent Mr. Kwok in the bankruptcy
9 case, we started having discussions about an global
10 settlement.  And so, this would be July and August, and they
11 continued primarily between me and Attorney Sarnoff.
12         We made significant progress in August, to the
13 point where I requested that they summarize what their
14 demands were, which was provided to me in early September.
15 We negotiated through September and then reached the point on
16 those terms where we felt we -- actually, there was a term
17 sheet on September 23rd, and then we turned our attention to
18 the creditor's committee -- counsel and the creditor's
19 committee.
20         We negotiated with them through October, to the
21 point where on October 26th, we articulated to the trustee
22 that we had reached an agreement on all material terms.  And
23 we had been informing the t=Trustee of the progress that we
24 were making, and asking him repeatedly to stand down, and he
25 refused.  We asked him to articulate what additional

1  concessions he wanted, in addition to everything we had given
2  to PAX and the creditors' committee.  And he provided what --
3  that to us on October 30th.
4      Q.   And was there anything else about the negotiations
5  with the trustee, in terms of how they proceeded prior to the
6  meeting?
7      A.   So the Trustee had unique -- you know, distinct
8  issues to the -- to the Trustee's place in this case.  And
9  the Trustee's focus really was on trying to secure
10 performance of the agreements that had been reached.  And the
11 Trustee also had a significant issue with the H-coin
12 potential claims.  And you know, we disputed that there was
13 any validity to these claims, and the Trustee raised an issue
14 with how those would be addressed in the case.  And so, that
15 is really what the focus was on in November, trying to deal
16 with this possibility.
17     Q.   And did any other issues arise in the settlement
18 discussions?
19     A.   PAX, in November, raised the desire to have
20 further security through a line of credit or some other
21 collateral, posting of cash.  And we went back and forth, but
22 by November 16th I believe we had given PAX everything it
23 wanted.
24     Q.   And -- so where were the settlement discussions
25 by the time the Trustee had requested this meeting?  The

1       MR. FRIEDMAN:  Thank you, Your Honor.
2       THE COURT:  Overrule your objection.  Continue,
3  counsel.
4  BY MR. WACHEN:
5       Q.   So --
6       THE COURT:  I don't know if there -- I think you
7  answered that question?
8       MR. WACHEN:  Did --
9       THE WITNESS:  Thank you.
10      MR. WACHEN:  -- did you finish your answer?
11      THE COURT:  Yeah, I think that -- that answer,
12 you're done, you should ask another question.
13      MR. WACHEN:  Okay.  Yeah.  Thank you, Your Honor.
14 BY MR. WACHEN:
15      Q.   And what was your response to having received that
16 email with a proposed agreement?
17      A.    We decided to -- that we were -- we were sitting
18 and listening.  And if -- you know, and we would comply with
19 the agreement, and we were going to sit and listen, even
20 though there were numerous red flags.
21      Q.   And the meeting was on the 17th of November,
22 right?
23      A.   Correct, November 17th.
24      Q.   And who was at the meeting?
25      A.   So the was me, Aaron Mitchell, Nicholas Bassett,

1        THE COURT: You talk -- I understand the question
2   about Al Capone, that's fine. Okay? And I understand about
3   the -- talking about the IRS and SEC, you know, that Mr.
4   Despins testified about that.
5        MR. WACHEN: Right.
6        THE COURT: But we're not talking about who is
7   keeping what and what the terms of the settlement are. And I
8   don't want to -- I can't be more clear than that.
9        MR. WACHEN: Okay.
10       THE COURT: Okay?
11       MR. WACHEN: Okay.
12       THE COURT: So we need to be -- you can ask him
13  anything you want to ask him about what Mr. Despins said.
14  But if we start talking about who's keep what and getting
15  this and getting that, that's not relevant, and it's not
16  admissible. And this is not what the preliminary injunction
17  is about. Okay?
18       MR. WACHEN: Understood --
19       THE COURT: So --
20       MR. WACHEN: -- Your Honor.
21       THE COURT: -- go ahead.
22       MR. WACHEN: Okay.
23  BY MR. WACHEN:
24     Q.   So you testified that Mr. Despins said pay me $250
25  million dollars?

1    A.    Yes.

2    Q.    And what was your understanding of that?

3    A.    My understanding -- I mean, I assumed he meant as
4 Trustee for the estate.

5    Q.    And so, this was -- was this a part of his
6 proposal, pay me $250 million?

7         MR. BASSETT:  Objection.

8         THE COURT:  Hey, we don't want a proposal,
9 counsel, again, right?  Mr. Despins talked about the $250
10 million, right?

11        MR. WACHEN:  Right.

12        THE COURT:  So did Mr. Kwok.  That's fine.  Just
13 talk about the $250 million.  It's not -- we're not talking
14 about it in terms of a proposal.

15        MR. WACHEN:  Okay.

16        THE COURT:  You asked a question, which I think
17 was a valid question given what's occurred in this -- these
18 hearing already, that -- to Mr. Kindseth, did Mr. Despins say
19 pay me $250 million?  Mr. Kindseth said yes, you asked him
20 what did that mean, Mr. Kindseth said, I believe he meant as
21 the Trustee.  So now, let's go on --

22        MR. WACHEN:  Okay.

23        THE COURT:  -- okay?

24        MR. WACHEN:  Thank you.

25 BY MR. WACHEN:

1    Q.   And what was -- what was your reaction to his
2 request to pay him $250 million?  Without -- without going
3 into the terms of a proposal?
4    A.   Livid.  I was very upset, distraught.
5    Q.   And why was that?
6    A.   It deviated greatly from what was -- what I
7 believed a global settlement that was nearly imminent the day
8 before.
9    Q.   And do you know how Mr. Kwok perceived that
10 statement by Mr. Despins, pay me $250 million?
11         MR. BASSETT:  Objection.  Calls for speculation.
12 Calls for hearsay.
13         THE COURT:  Sustained.
14 BY MR. WACHEN:
15    Q.   At some point, did you respond to Mr. Despins in
16 his -- in his statement, pay me $250 million?
17    A.   Yes, I did.  There was two phases.  There was one
18 in the presence of everyone, and then there was a separate,
19 where I came back into the conference room, after showing my
20 client, and the translator, and Attorney Mitchell out and had
21 a response.  So --
22    Q.   Let's take them one at a time.
23    A.   Okay.
24    Q.   So what did you say in the room when everybody was
25 there?

1  remotely doing his or her job would make it his or her number
2  one priority to investigate the entities who have connections
3  with the Debtor, his relatives and other individuals to
4  determine whether it is in fact true that this Debtor, who
5  has in the past, professed to have the life of billionaire,
6  only has a few thousand dollars to his name.
7     A.  Not when all known creditors have agreed to a
8  global settlement.
9     Q.  Well, there wasn't a global settlement, was there?
10    A.  Because the Trustee was in the way of that. And
11 then he torpedoed it.
12    Q.  Well, isn't the reason that there was no global
13 settlement ultimately because this Debtor could not come up
14 with security for the amount that he had agreed to pay?
15    A.  That's not true. We offered -- we offered
16 security that was asked. It was on the table. That's why I
17 wrote the letter.
18    Q.  So he had --
19    A.  Because we had offered a cash deposit in escrow
20 which satisfied PAX. We were done. And still there was no
21 settlement.
22    Q.  Had you offered to secure the entirety of the
23 payment -- the entire payment was supposed to be in escrow?
24    A.  To PAX, yes. To PAX, yes.
25    Q.  Okay. But that wasn't the entirety of the

```
 1                          CERTIFICATION
 2
 3   We certify that the foregoing is a correct transcript from
 4   the electronic sound recording of the proceedings in the
 5   above-entitled matter to the best of our knowledge and
 6   ability.
 7
 8   /s/ Mary Zajaczkowski                      December 14, 2022
 9   Mary Zajaczkowski, CET-531
10   Certified Court Transcriptionist
11   For Reliable
12
13   /s/ WENDY SAWYER                           December 14, 2022
14   WENDY SAWYER, CDLT
15
16
17
18
19
20
21
22
23
24
25
```