UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re:<br><br>HO WAN KWOK *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>Jointly Administered<br><br>January 25, 2023 |

**BRAVO LUCK LIMITED'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA**

Bravo Luck Limited ("Bravo"), by and through its undersigned counsel, submits this memorandum of law in support of *Bravo Luck Limited's Motion to Quash Subpoena* concurrently filed herewith (the "Motion to Quash"), seeks entry of an order, pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to these proceedings by Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Bankruptcy Rule 2004 hereby, quashing the *Subpoena for Rule 2004 Examination*, served on Bravo on January 11, 2023 (the "Rule 2004 Subpoena") by Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee"). In support of the Motion to Quash, Bravo respectfully submits as follows.

**CONCISE STATEMENT OF THE CASE AND RELEVANT BACKGROUND**

1. On February 15, 2022, Ho Wan Kwok (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court and on July 8, 2022, the Court entered an order [Bankr. Docket No. 523] appointing the Trustee. The Debtor's chapter 11 case is being

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

140639252v8

jointly administered, for procedural purposes, with the chapter 11 cases of Genever Holdings LLC ("Genever (US)") and Genever Holdings Corporation ("Genever (BVI)"). *See* Bankr. Docket No. 1141.

2. On July 28, 2022, the Trustee filed the *Omnibus Motion of Chapter 11 Trustee for Entry of Order under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Entities and Individuals Affiliated with Debtor* [Bankr. Docket No. 638] (the "Rule 2004 Motion"), seeking authority to seek discovery on certain parties, including Bravo, pursuant to Bankruptcy Rule 2004. A proposed from of Bankruptcy Rule 2004 examination was attached as Exhibit C-5 to the Rule 2004 Motion. On August 16, 2022, the Court entered an order [Bankr. Docket No. 758] (the "Rule 2004 Order") granting the Rule 2004 Motion.

3. On October 11, 2022, the Trustee filed the *Adversary Complaint against Bravo Luck and Qiang Guo Seeking (I) Invalidation of Purported Trust Agreement in Favor of Bravo Luck and, (II) in Alternative, Ruling that Debtor Effectuated Fraudulent Transfer in Favor of Bravo Luck and Qiang Guo Pursuant to Section 276 of New York Debtor and Creditor Law, Made Applicable by Section 544 of Bankruptcy Code* [Adv. Proc. Docket No. 1] (the "Complaint") against Bravo, initiating Adv. Proc. No. 22-05027 (JAM) (the "Adversary Proceeding").

4. On October 11, 2022, Genever (US) filed the *Adversary Complaint against Bravo Luck Seeking (I) Invalidation of Purported Trust Agreement in Favor of Bravo Luck and, (II) in Alternative, Ruling that Debtor Effectuated Fraudulent Transfer in Favor of Bravo Luck Pursuant to Section 276 of New York Debtor and Creditor Law, Made Applicable by Section 544 of Bankruptcy Code* [Adv. Proc. No. 22-05030 (JAM), Docket No. 1] initiating Adv. Proc. No. 22-01157 (JGL) (the "Genever (US) Adversary Proceeding") before the Bankruptcy Court for the Southern District of New York. On November 3, 2022, venue of Genever (US)'s chapter 11 case

was transferred to this Court (*see* Case No. 20-12411 (JLG) (Bankr. S.D.N.Y.), at Docket No. 211). The Genever (US) Adversary Proceeding was likewise transferred to this Court and is currently pending as Adv. Proc. No. 22-05030 (JAM).

5. On December 23, 2022, Genever (BVI) filed the *Adversary Complaint Against Bravo Luck Seeking (I) Invalidation of Purported Trust Agreement in Favor of Bravo Luck and, (II) in Alternative, Ruling that Debtor Effectuated Fraudulent Transfer in Favor of Bravo Luck Pursuant to Section 276 of New York Debtor and Creditor Law, Made Applicable by Section 544 of Bankruptcy Code* [Adv. Proc. No. 22-05035 (JAM), Docket No. 1], initiating Adv. Proc. No. 22-05035 (JAM) (the "Genever (BVI) Adversary Proceeding" and, together with the Genever (US) Adversary Proceeding, the "Genever Adversary Proceedings"). Counsel for the Trustee is also counsel to each of the plaintiffs in the Genever Adversary Proceedings.

6. Notwithstanding the pendency of the Adversary Proceeding and the Genever Adversary Proceedings, on January 11, 2023, the Trustee served the Rule 2004 Subpoena on Bravo, seeking both testimony and the production of documents from Bravo. The place of compliance listed in the Rule 2004 Subpoena is the offices of Paul Hastings LLP located at 200 Park Avenue, New York, New York 10166 (the "Place of Compliance"). A copy of the Rule 2004 Subpoena is attached hereto as **Exhibit A**.

7. On January 25, 2023, Bravo sent counsel to the Trustee a letter voicing various objections to the Rule 2004 Subpoena, a copy of which is attached hereto as **Exhibit B** (the "Objection Letter") and is incorporated herein by reference.

## DISCOVERY OPPOSED BY BRAVO

8. Through the Motion to Quash, Bravo opposes the demand for testimony and every request for production contained in the Rule 2004 Subpoena. The use of a Bankruptcy Rule 2004

examination is entirely inappropriate pursuant to the "pending proceeding rule" that is widely-accepted in this Circuit. The pending proceeding rule prohibits the use of Bankruptcy Rule 2004 examinations against defendants to adversary proceedings because discovery in adversary proceedings is governed by the Civil Rules, as made applicable by the Bankruptcy Rules, and the protections and process embodied therein—Bankruptcy Rule 2004 examinations are devoid of such protections, are far broader, and serve a different purpose. Bravo is currently the defendant in three adversary proceedings, one filed by the Trustee, and many of the requests listed in the Rule 2004 Subpoena have a direct bearing on the claims asserted in those adversary proceedings.

9. Bravo further opposes the demand for testimony in the Rule 2004 Subpoena as it violates the geographical restrictions of Civil Rule 45(c). Bravo does not reside, is not employed, and does not regularly transact business in person within 100 miles of the Place of Compliance in New York City. To the extent that Bravo is deemed a party to the above-captioned bankruptcy case, neither Bravo, nor its sole officer and principal, reside, are employed, or regularly transact business in person within the State of New York.

10. Finally, Bravo further opposes demands for document production in the Rule 2004 Subpoena on two bases. First, Bravo is a British Virgin Islands corporation located well beyond 100 miles from New York City. Accordingly, to the extent that any of the Rule 2004 Subpoena's document requests seek documents located beyond 100 miles of the Place of Compliance, Bravo opposes such requests as being beyond Civil Rule 45's geographical restrictions. Additionally,

140639252v8

Bravo opposes each of the Rule 2004 Subpoena's document requests as imposing an undue burden on Bravo, as the requests are overly broad and/or seek irrelevant documents.

**BASIS FOR QUASHING THE RULE 2004 SUBPOENA**

A. **The Trustee's Use of a Bankruptcy Rule 2004 Examination against Bravo is Improper While Bravo is the Defendant in Three Adversary Proceedings, Including One Filed by the Trustee**

11. The Court should quash the Rule 2004 Subpoena because it flies in the face of the well-established "pending proceeding rule" and attempts to seek discovery from Bravo, as the defendant in the Adversary Proceeding, without the protections established by Bankruptcy Rules 7026-7037 and the Civil Rules they incorporate. Under the pending proceeding rule, which is applied widely within the Second Circuit, "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (collecting cases); *accord In re Cambridge Analytica LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019) ("[T]here is a well-recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the applicable Federal Rules of Civil Procedure, and not Rule 2004."); *In re Martelli,* Nos. 16-20983-PRW, 16-20316-PRW, 16-20968-PRW, 2017 Bankr. LEXIS 2015, at *12 (Bankr. W.D.N.Y. July 20, 2017) ("'The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Rule 7026 FRBP *et seq.*, rather than by a Rule 2004 FRBP examination.'") (quoting *In re Bennett Funding Grp.*, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)) (internal modifications omitted); *In re MF Glob. Inc.*, No. 11-02790 (MG), 2013 Bankr. LEXIS 129, at *4-5 (Bankr. S.D.N.Y. Jan. 8, 2013) (denying a Rule 2004 motion due to, among other reasons, the pending

proceeding rule); *see also In re Sutera*, 141 B.R. 539, 541-42 (Bankr. D. Conn. 1992) (collecting cases applying the pending proceeding rule).

12. The pending proceeding rule protects the distinction between the restrictive nature of the Civil Rules, incorporated through the Bankruptcy Rules, applicable to adversary proceedings, and the broad nature of Bankruptcy Rule 2004 examinations, which lack certain protections in the Civil Rules. *See In re Enron*, 281 B.R. at 840-41 (noting that, for example, in a Rule 2004 examination a witness has no right to be represented by counsel except at the discretion of the court, the right to object to immaterial or improper questions is limited, there is no right to cross-examine a witness, and there is no right to have issues defined beforehand). Indeed, due to this distinction, "courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure." *Id*. at 241; *In re Martelli*, 2017 Bankr. LEXIS 2015, at *14 ("The Court will not permit the UST to avoid the safeguards and protections established by the Federal Rules of Civil Procedure for seeking discovery from these debtors.").

13. More specifically, a trustee is precluded from using Bankruptcy Rule 2004 examinations to uncover discovery with respect to entities affected by a pending adversary proceeding or issues related to a pending adversary proceeding. *See In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996) ("[A] trustee, like a creditor, must look to Fed.R.Bankr.P. 7026 *et seq.* after an adversary proceeding is commenced for discovery as to both entities affected by the proceeding and issues addressed in the proceeding."); *accord In re Enron*, 281 B.R. at 843. For example, the *In re Bennett* Court refused to allow the trustee to seek discovery against adversary proceeding defendants under Bankruptcy Rule 2004, even when the trustee claimed the discovery sought was unrelated to the adversary proceeding, because in the complaint,

the trustee argued the defendants created a "financial superweb" and it would be difficult, if not impossible, to determine whether and to what extent information gleaned from the Bankruptcy Rule 2004 examination would ultimately be related to the parties and issues raised in the adversary proceeding. *In re Bennett*, 203 B.R. at 29-30.

14. Here, through the Rule 2004 Subpoena, the Trustee seeks to violate the pending proceeding rule and evade the protections of the discovery process for adversary proceedings embodied in the Bankruptcy Rules and Civil Rules by improperly using a Bankruptcy Rule 2004 examination to seek discovery against Bravo. Bravo is clearly a party related to an ongoing adversary proceeding—the Trustee himself brought the Adversary Proceeding against Bravo and is fully aware of the pending Genever Adversary Proceedings, as the Trustee has jointly filed a motion to consolidate the three adversary proceedings, which characterize the complaints therein as "each [raising] identical issues in pursuit of nearly identical relief." Adv. Proc. Docket No. 8, at ¶ 25.

15. Further, the topics specified in Bankruptcy Rule 2004 examination attached to the Rule 2004 Subpoena undoubtedly relate to the claims raised in the Adversary Proceeding and the Genever Adversary Proceedings. For example, the Trustee has alleged in the Complaint that a trust agreement between the Debtor, Genever (US), and Genever (BVI), in favor of Bravo, is a fraudulent document—through the Rule 2004 Subpoena, the Trustee requests all documents related to that trust agreement. Similarly, the Trustee brings a claim against Bravo for actual fraudulent transfer under New York law—the Rule 2004 Subpoena is replete with requests that would be directly relevant to such a claim, including a request for all documents regarding "any income or Asset of the Debtor, the Debtor's estate, or an Associated Entity." Moreover, the Subpoena includes a request that seeks "[a]ll Documents related to any Assets that You, the

140639252v8

Debtor, the Debtor's Estate, the Debtor's Family, or an Associated Entity, ever held at UBS AG (or any affiliated Entities) including, without limitation, that with respect to 'Portfolio 371236.'" Portfolio 361236 is alleged in paragraph 17 of the Complaint to be one of Bravo's bank accounts central to the transactions that give rise to the alleged fraudulent transfer. *See* Complaint, at ¶ 17. Thus, given that there are several adversary proceedings pending against Bravo, one initiated by the Trustee, and given that the issues raised in the Rule 2004 Subpoena are directly linked to the central issues of those adversary proceedings, the Trustee should be precluded from seeking discovery against Bravo via Bankruptcy Rule 2004 pursuant to the pending proceeding rule. Any discovery sought against Bravo should be done properly, under the Bankruptcy Rules and Civil rules that apply to adversary proceedings.

16. Importantly, the Rule 2004 Order does not change this result. At the time the Rule 2004 Order was entered, the Trustee had not brought the Adversary Proceeding against Bravo. According to the Rule 2004 Motion, the Trustee was seeking approval to conduct Bankruptcy Rule 2004 examinations for the purpose conducting an investigation into the Debtor's financial affairs. *See* Rule 2004 Motion, at ¶ 1. However, in the time that has passed since the entry of the Rule 2004 Order, the facts of the case have changed. Indeed, the timing of the service of the Rule 2004 Subpoena is telling—the Trustee served the Rule 2004 Subpoena on Bravo right as the Adversary Proceeding is becoming active, with Bravo's deadline for a responsive pleading to the Complaint only weeks away. *See* Adv. Proc. Docket No. 17.[2] The timing and content of the Rule 2004 Subpoena show that the Trustee's Bankruptcy Rule 2004 examination is a litigation tactic, meant to improperly extract discovery from Bravo. The Rule 2004 Order is not a shield behind which

---

[2] The Trustee and Bravo had stipulated to Bravo's January 31, 2023 response deadline prior to the Trustee's service of the Rule 2004 Subpoena. *See* Adv. Proc. Docket No. 13.

the Trustee can hide from proper procedure or the protections granted to Bravo under the Bankruptcy Rules and Civil Rules governing discovery in adversary proceedings.

**B.    The Rule 2004 Subpoena Should Be Quashed Because it Demands that Bravo Comply Beyond the Geographical Limits Specified in Civil Rule 45(c) and Subjects Bravo to Undue Burden**

17.    The Rule 2004 Subpoena must be quashed under the Civil Rules because it demands that Bravo provide testimony and produce documents at a location well beyond the geographical scope permitted under Civil Rule 45(c) and subjects Bravo to undue burden. Civil Rule 45(d)(3) provides that, "[o]n timely motion, the court for the district where compliance is required **must** quash or modify a subpoena that . . . (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c) [or] . . . (vi) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(ii), (vi) (emphasis added). Here, the Rule 2004 Subpoena does both. The Trustee is demanding that an entity incorporated and located in the British Virgin Islands provide testimony and produce documents in New York City. These demands far exceed the permissible geographical range of Civil Rule 45. In addition, the Rule 2004 Subpoena subjects Bravo to undue burden. Further, the requests for production in the Rule 2004 Subpoena are overbroad and seek irrelevant documents.

18.    Civil Rule 45(c) only permits a subpoena to command a person to attend a deposition within 100 miles of where a person resides, is employed, or regularly transacts business in person or, with respect to a party or party's officer, within the state where the person resides, is employed, or regularly transacts business. *See* FED. R. CIV. P. 45(c)(1). Similarly, a subpoena may only command production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person. *See* FED. R. CIV. P. 45(c)(2).

140639252v8

19. With respect to the demanded testimony, Bravo, who is not a party to the Debtor's bankruptcy case, is protected by Rule 45's 100-mile geographical limit. *See* FED. R. CIV. P. 45(c)(1)(A).[3] Bravo is a British Virgin Islands corporation and does not regularly transact business within 100 miles of the Place of Compliance in New York City. Even if the Court finds that Bravo is a party to the Debtor's chapter 11 case, both Bravo and its sole officer are protected by Rule 45's out-of-state geographical limit applicable to parties and officers of parties. *See* FED. R. CIV. P. 45(c)(1)(B)(i). Bravo, as a British Virgin Islands corporation, does not reside or regularly conduct business in the State of New York. Likewise, Bravo's principal (and sole officer) resides outside of the United States and does not reside, is not employed, and does not regularly transact business in person in the State of New York. Accordingly, regardless of Bravo's status as a party to the above-captioned bankruptcy case, the Rule 2004 Subpoena's demand for deposition testimony is beyond the geographical limits of Civil Rule 45(c). Likewise, Bravo is a British Virgin Islands corporation, located well beyond 100 miles of the Place of Compliance. *See* FED. R. CIV. P. 45(c)(2)(A). Thus, the Rule 2004 Subpoena's demands for document production should be quashed to the extent that they seek any of Bravo's documents located in the British Virgin Islands, as such demands exceed Civil Rule 45(c)'s geographical limitations. For these reasons, the Rule 2004 Subpoena should be quashed.

20. Further, as asserted in the Objection Letter, the Rule 2004 Subpoena imposes an undue burden on Bravo, and thus, should be quashed pursuant to Civil Rule 45(d)(3)(iv).

---

[3] Bravo has not filed a proof of claim, any pleadings, or an appearance in the Debtor's chapter 11 case. While Bravo has been involved in Genever (US)'s chapter 11 case, the two are substantively distinct and are consolidated "for procedural purposes **only**". See Bankr. Docket No. 1141, ¶ 2 (emphasis added). The only involvement Bravo has had whatsoever in the Debtor's chapter 11 case is as a defendant to the Adversary Proceeding—where discovery should only proceed pursuant to the Bankruptcy Rules and Civil Rules applicable to adversary proceedings, not via Bankruptcy Rule 2004, as argued above.

140639252v8

Throughout the Rule 2004 Subpoena, the Trustee demands "all Documents" on a variety of topics, without any reasonable limitation, such as:[4]

> 1. All Documents regarding any income or Asset of the Debtor, the Debtor's estate, or an Associated Entity.
>
> 2. All Documents related to the Debtor's financial condition and obligations to his creditors, including without limitation all Documents related to any effort to avoid paying such obligations and All Documents related to this or any other actual or potential bankruptcy or similar insolvency proceeding.
>
> 3. All Documents regarding any balance sheet, bank statement, account statement, financial statement, statement of account, wire transfer instructions and/or confirmation, proof of funds, certificate of deposit, certificate of holdings, investment portfolio summary, or similar document relating to the Debtor, the Debtor's Estate, the Debtor's Family, an Associated Entity, or an Associated Individual, including without limitation all Documents sufficient to show all Transfers to any of the foregoing.
>
> 4. All Documents regarding any investment, business dealing or transactions made by, with, or on behalf of the Debtor.
>
> 5. All Communications with the Debtor, and Documents related to Communications with the Debtor, related to the operation, management, or decision-making of any Entity, including without limitation the Associated Entities.
>
> 6. All Documents regarding any Transfer, investment, or other transaction or business dealing made to, by, or with the Debtor, the Debtor's Family, or an Associated Entity.
>
> 7. All Documents regarding any property ever occupied or used by the Debtor, including without limitation the *Lady May;* the Sherry Netherland Hotel / Condominium; the residential property located in Greenwich, Connecticut at 373 Taconic Rd.; the residential property located in Greenwich, Connecticut at 33 Ferncliff Rd.; and the residential property located in Wilton, Connecticut at 354 Nod Hill Rd.
>
> 10. All Documents regarding any gifts, benefits or loans, to, from or on behalf of the Debtor, the Debtor's Estate, the Debtor's Family, or the Associated Entities, including without limitation Documents sufficient to show the amounts of such gifts, benefits, or loans; the purposes for which such gifts, benefits, or loans were used; when the gifts, benefits, or loans were provided; and the terms of any loans,

---

[4] Bravo objects to and seeks to quash all demands for document production in the Rule 2004 Subpoena, regardless of whether such demands are specifically listed herein.

all representations and warranties made in connection with any loans, the interest rate on any loans, and all evidence of payments of any loans.

11. All Documents concerning any trust or similar instrument set up by, on behalf of, or for the benefit of the Debtor, the Debtor's Estate, the Debtor's Family, or an Associated Entity, including without limitation Documents sufficient to show when the trust(s) was created, by whom it was created, for whose benefit it was created, and the corpus of the trust.

12. All Documents related to any obligation, claim, liability, or debt associated with any legal dispute involving the Debtor, including but not limited to those relating to any litigation before any local, state, federal, or international body, whether an administrative body, court, panel, or alternative dispute resolution entity.

13. All Documents and communications between any of your outside counsel or other advisors and the Debtor.

14. Documents sufficient to show all of Your Assets and sources of income or funding.

15. For all Assets identified in response to Request [13][5] having a value of more than $50,000, all (i) Documents related to Your acquisition of such Asset and (ii) Communications with the Debtor or the Debtor's Family regarding such Asset.

18. All Documents regarding any credit cards used by You, including without limitation monthly statements or other Documents sufficient to show all purchases related thereto for the benefit of the Debtor or an Associated Entity.

    21.    The scope of these requests is enormous, especially in light of the fact that such requests are for document dating back to February 5, 2012—documents over 11 years old by the date of compliance. Further, the sheer breadth of the definitions of "Associated Individuals" (defined to include "**all individuals** that (1) hold, control, have custody over, or discretion over assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family; or (2) have been employees, directors, or otherwise are affiliated with one or more Associated Entities, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing" without limitation), "Associated Entity" (defined to include "**all organizations or**

---

[5] *Sic.* This demand was likely intended to refer to Request 14.

140639252v8

**Entities of any type** that (1) have been owned, controlled, or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing" without limitation) and "Entity" (defined as "any natural Person, corporation, partnership, subsidiary, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic Person, as well as any affiliate, agent, parent including but not limited to legal counsel, financial advisors, or any other representative" without limitation) render any demand including those terms unreasonably expansive. While it is possible that some of these requests would produce relevant documents, given the massive scope, a significant portion the production process in response to these requests would be dedicated to irrelevant documents.

22. In addition, certain requests in the Rule 2004 Subpoena are entirely irrelevant to the Trustee's stated purpose of conducting an investigation into the financial affairs of the Debtor (*see* Rule 2004 Motion, at ¶ 1) and, like those demands listed above, are overly broad and without reasonable limitation:

> 16. Copies of Your tax returns.
>
> 17. Documents sufficient to show all bank accounts and investment accounts within Your possession or control, including the balances of and transfers to and from each such account.
>
> 19. All corporate governance and organizational Documents, including without limitation by-laws and certificates of incorporation and other Documents sufficient to show Your corporate structure, names of officers and directors, business purpose, and relationship to the Debtor or to any member of the Debtor's Family.
>
> 20. All Documents related to any pledges of Your Assets to any other Entity.
>
> 22. All Documents related to Transfers you received in January 2015 from HK International Funds Investment (USA) Limited, LLC, Hong Kong International

>Funds Investments Limited, and/or Eastern Profit Corporation Limited in the approximate amount of $520 million.
>
>23. All Documents related to any Assets that You, the Debtor, the Debtor's Estate, the Debtor's Family, or an Associated Entity, ever held at UBS AG (or any affiliated Entities) including, without limitation, that with respect to "Portfolio 371236."

23. While the above-listed topics may have some bearing on *Bravo's* financial affairs, they are outside the scope of a Bankruptcy Rule 2004 examination, per Bankruptcy Rule 2004(a), and are not relevant to the *Debtor's* financial affairs—an investigation of which was the Trustee's alleged purpose behind the Rule 2004 Subpoena. Thus, to the extent that such demands relate to an entity other than the Debtor, Bravo submits they ought to be quashed as imposing an undue burden for seeking irrelevant document production.[6]

24. Given the undue burden that the Rule 2004 Subpoena imposes on Bravo—through the massive scope of the requests and the total irrelevance of certain requests—the Court should quash the Rules 2004 Subpoena.

---

[6] To the extent the Trustee argues that these requests are relevant to any alleged fraudulent transfers involving the Debtor and Bravo, this further highlights the impropriety of serving such documents requests via a Bankruptcy Rule 2004 examination, as opposed to properly serving discovery in the Adversary Proceeding, where Bravo is a defendant with respect to such a fraudulent transfer claim.

**CONCLUSION**

WHEREFORE, Bravo respectfully requests that the Court grant the Motion to Quash and grant such other and further relief as may be just and proper.

Dated: January 25, 2023

/s/ Francis J. Lawall
Francis J. Lawall, Esq.
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4481
francis.lawall@troutman.com

and

David M. S. Shaiken (ct02297)
Shipman, Shaiken & Schwefel, LLC
433 South Main Street, Suite 319
West Hartford, CT 06110
Telephone: (860) 606-1703
Fax: (866) 431-3248
david@shipmanlawct.com

*Counsel for Bravo Luck Limited*

140639252v8

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 25, 2023, the *Bravo Luck Limited's Memorandum of Law In Support of Its Motion to Quash Subpoena* was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by United States first class mail, postage prepaid, to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A.     Electronic Notice Via CM/ECF Service List

| | |
|---|---|
| Laura Aronsson | laronsson@omm.com |
| Tristan G. Axelrod | taxelrod@brownrudnick.com |
| William R. Baldiga | wbaldiga@brownrudnick.com |
| Kellianne Baranowsky | kbaranowsky@gs-lawfirm.com, aevans@gs-lawfirm.com; kbaranowsky@ecf.courtdrive.com |
| Daniel D. Barnes | dbarnes@csglaw.com |
| Douglass E. Barron | douglassbarron@paulhastings.com |
| Nicholas A. Bassett | nicholasbassett@paulhastings.com; jonathonkosciewicz@paulhastings.com; lucdespins@paulhastings.com; alexbongartz@paulhastings.com; ezrasutton@paulhastings.com; douglassbarron@paulhastings.com; ecf.frg@paulhastings.com; aviluft@paulhastings.com |
| Patrick M. Birney | pbirney@rc.com, ctrivigno@rc.com |
| Christopher H. Blau | cblau@zeislaw.com |
| G. Alexander Bongartz | alexbongartz@paulhastings.com |
| Carollynn H.G. Callari | ccallari@callaripartners.com |
| Daniel Cantor | dcantor@omm.com |
| John L. Cesaroni | jcesaroni@zeislaw.com |
| Scott M. Charmoy | scottcharmoy@charmoy.com, ecf-3ae5beb98d9b@ecf.pacerpro.com; charmoysr97992@notify.bestcase.com |
| Holley L. Claiborn | holley.l.claiborn@usdoj.gov |
| Samuel Bryant Davidoff | sdavidoff@wc.com |
| Luc A. Despins | lucdespins@paulhastings.com, matlaskowski@paulhastings.com; davidmohamed@paulhastings.com |
| Sam Della Fera, Jr. | sdellafera@csglaw.com |
| David S. Forsh | dforsh@callaripartners.com |
| Peter Friedman | pfriedman@omm.com |

142502959v1

| | |
|---|---|
| Taruna Garg | tgarg@murthalaw.com, mgarcia@murthalaw.com |
| Irve J. Goldman | igoldman@pullcom.com, rmccoy@pullcom.com |
| Evan S. Goldstein | egoldstein@uks.com |
| Mia N. Gonzalez | mgonzalez@omm.com |
| Marc Gottridge | marc.gottridge@hsf.com |
| James C. Graham | jgraham@npmlaw.com, sgibbons@npmlaw.com; NeubertPepeMonteithPC@jubileebk.net |
| Lawrence S. Grossman | LGrossman@gs-lawfirm.com, aevans@gs-lawfirm.com; ngolino@gs-lawfirm.com; lawrencegrossman@ecf.courtdrive.com; mbuckanavage@gs-lawfirm.com; eross@gs-lawfirm.com |
| David V. Harbach, II | dharbach@omm.com |
| James J. Healy | jhealy@cowderymurphy.com |
| Jeffrey Hellman | jeff@jeffhellmanlaw.com;  christen@jeffhellmanlaw.com |
| Eric A. Henzy | ehenzy@zeislaw.com, cjervey@zeislaw.com |
| Jonathan Kaplan | jkaplan@pullcom.com, prulewicz@pullcom.com; rmccoy@pullcom.com |
| Stephen M. Kindseth | skindseth@zeislaw.com, cjervey@zeislaw.com |
| Nancy Bohan Kinsella | nkinsella@npmlaw.com, moshea@npmlaw.com; smowery@npmlaw.com; npm.bankruptcy@gmail.com |
| Andrew V. Layden | alayden@bakerlaw.com |
| Patrick R. Linsey | plinsey@npmlaw.com, karguello@npmlaw.com; NeubertPepeMonteithPC@jubileebk.net |
| Avram Emmanuel Luft | aviluft@paulhastings.com |
| Kristin B. Mayhew | kmayhew@pullcom.com, kwarshauer@mdmc-law.com; bdangelo@mdmc-law.com |
| Danielle L. Merola | dmerola@bakerlaw.com |
| Sherry J. Millman | smillman@stroock.com |
| Aaron A Mitchell | aaron@lmesq.com |
| James M. Moriarty | jmoriarty@zeislaw.com, cgregory@zeislaw.com |
| Sara Pahlavan | spahlavan@omm.com |
| Patrick N. Petrocelli | ppetrocelli@stroock.com |
| Lucas Bennett Rocklin | lrocklin@npmlaw.com, NeubertPepeMonteithPC@jubileebk.net |
| Aaron Romney | aromney@zeislaw.com, swenthen@zeislaw.com |
| Scott D. Rosen | srosen@cb-shea.com, msullivan@cbshealaw.com; dtempera@cbshealaw.com |
| Thomas J. Sansone | tsansone@carmodylaw.com |
| Stuart M. Sarnoff | ssarnoff@omm.com, stuart-sarnoff-1059@ecf.pacerpro.com |
| Douglas S. Skalka | dskalka@npmlaw.com, smowery@npmlaw.com; NeubertPepeMonteithPC@jubileebk.net |
| Jeffrey M. Sklarz | jsklarz@gs-lawfirm.com; aevans@gs-lawfirm.com; mbuckanavage@gs-lawfirm.com; eross@gs-lawfirm.com, jsklarz@ecf.courtdrive.com |
| Annecca H. Smith | asmith@rc.com |

| John Troy | johntroy@troypllc.com |
|---|---|
| Tiffany Troy | tiffanytroy@troypllc.com, troylaw@troypllc.com |
| U.S. Trustee | USTPRegion02.NH.ECF@USDOJ.GOV |
| Lee Vartan | lvartan@csglaw.com |
| Stephen G. Walko | swalko@ibolaw.com |
| Michael S. Weinstein | mweinstein@golenbock.com |
| Jay Marshall Wolman | jmw@randazza.com, ecf-6898@ecf.pacerpro.com |
| Peter J. Zarella | pzarella@mdmc-law.com |

B.      United States First Class Mail, Postage Prepaid, Service List

Brown Rudnick LLP
Attn: President or General Mgr
One Financial Center
Boston, MA 02111

Dundon Advisers LLC
Attn: President or General Mgr
10 Bank Street, Suite 1100
White Plains, NY 10606

Chao-Chih Chiu, Huizhen Wang Yunxia Wu, Keyi Zilkie
c/o TroyGould PC
1801 Century Park East, 16th Floor
Attn: Christopher A. Lilly
Los Angeles, CA 90067-2367

Peter M. Friedman
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Gregory A. Coleman
Coleman Worldwide Advisors, LLC
PO Box 2839
New York, NY 10008-2839

Steven E. Mackey
Office of the U.S. Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

J. Ted Donovan and Kevin J. Nash
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway 22nd Floor
New York, NY 10036

Gabriel Sasson
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Sherry Millman
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Douglas E. Spelfogel
Derek L. Wright
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001

Richard C. Morrissey
Office of the U.S. Trustee
201 Varick Street, Room 1006 New York, NY 10014

Stretto
Attn: President or General Mgr
410 Exchange, Suite 100
Irvine, CA 92602

-4-

| | |
|---|---|
| Edward Moss, Diana Perez,<br>Stuart Sarnoff, and Daniel Shamah<br>O'Melveny & Myers LLP<br>7 Times Square<br>New York, NY 10036 | Yongbing Zhang<br>223 West Jackson Blvd. #1012<br>Chicago, IL 60606 |
| Alissa M. Nann<br>Foley & Lardner LLP<br>90 Park Avenue<br>New York, NY 10016 | Genever Holdings Corporation<br>P.O. Box 3170<br>Road Town<br>Tortola, British Virgin Islands |
| Irve Goldman, Esq.<br>Pullman & Comley, LLC<br>850 Main Street<br>Bridgeport, CT 06601 | Genever Holdings LLC<br>781 Fifth Avenue Apt. 1801<br>New York, NY 10022-5520 |
| Epiq Corporate Restructuring, LLC<br>777 Third Avenue<br>12th Floor<br>New York, NY 10017 | |

*/s/ Francis J. Lawall*
Francis J. Lawall (admitted *pro hac vice*)