**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| HO WAN KWOK, *et al.*,[1] | : | Case No. 22-50073 (JAM) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P., | : | Adv. Proceeding No. 22-05032 (JAM) |
| Plaintiff, | : | |
| v. | : | |
| HO WAN KWOK, | : | |
| Defendant. | : | |

---

**OMNIBUS REPLY OF CHAPTER 11 TRUSTEE AND GENEVER DEBTORS (I) IN SUPPORT OF THEIR EMERGENCY MOTION, FOR ENTRY OF ORDER (A) COMPELLING INDIVIDUAL DEBTOR TO COMPLY WITH PRELIMINARY INJUNCTION WITH RESPECT TO CLAIMS PROCESS, (B) QUASHING INDIVIDUAL DEBTORS' OBJECTIONS TO CLAIMS, AND (C) BARRING INDIVIDUAL DEBTOR FROM FILING FURTHER OBJECTIONS TO CLAIMS, ABSENT LEAVE OF COURT, AND (II) IN RESPONSE TO OBJECTIONS**

To the Honorable United States Bankruptcy Judge Julie A. Manning:

Luc Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Individual Debtor" or "Defendant"), Genever Holdings

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Corporation ("Genever (BVI)"), and Genever Holdings LLC ("Genever (US)" and, together with the Trustee, and Genever (BVI), the "Movants"), respectfully submit this omnibus reply (the "Reply") (a) in support of the *Emergency Motion of Chapter 11 Trustee and Genever Debtors for Entry of Order (A) Compelling Individual Debtor to Comply With Preliminary Injunction With Respect to Claims Process, (B) Quashing Individual Debtors' Objections to Claims, and (C) Barring Individual Debtor From Filing Further Objections to Claims, Absent Leave of Court* [Main Case Docket No. 1345] (the "Motion")[2] and (b) in response to (i) the objection filed by the Individual Debtor in the main chapter 11 case [Main Case Docket No. 1380] (the "Main Case Objection") and (ii) the objection filed by Individual Debtor in this adversary proceeding [Adv. Proc. Docket No. 154] (the "AP Objection," and, together with the Main Case Objection, the "Objections").  In support of the Reply, the Movants respectfully state as follows.

## REPLY

**A.    Court Should Compel Individual Debtor to Comply With Preliminary Injunction Order**

1.    As a threshold matter, neither Objection challenges the accuracy of the statements made by the Individual Debtor (and his followers) detailed in the Motion, including the informal English translations of such statements.[3]  Still, the Individual Debtor asserts that he is merely "voic[ing] his opinion with respect to the legitimacy of a particular claim that he believes is unfounded."[4]  This is a blatant mischaracterization of the statements in question, all of which go well beyond expressing an "opinion" about the merits of a claim.  Instead, as detailed in the

---

[2]   Capitalized terms used but not defined herein have the meanings set forth in the Motion.

[3]   To remove any doubt as to the accuracy of the translations, Movants are also filing, concurrently with the Reply, a declaration (the "Barron Declaration") attaching certified translations of the social media posts and the video quoted in the Motion.

[4]   AP Obj. ¶ 6.

2

Motion, the Individual Debtor and his followers are clearly maligning an individual creditor (accusing her of "gangster behavior," "lying," being a "little bastard," etc.) and exposing personal information about her (including a copy of her German ID card), not addressing the merits of her claim. Worse, the Individual Debtor is not limiting his *ad hominem* attacks to one particular creditor, but threatens to expose personal information of "every person who reports their case" to the court. These are not merely "opinions" about the merits of a claim, but clear threats directed at all creditors who file, have filed, or may file a proof of claim against the Individual Debtor.[5]

2.      Nor are the Individual Debtor's statements that his followers could "become billionaire[s]" by filing proofs of claim innocent musings of an out-of-possession debtor. Whatever the import of this statement viewed in isolation, it must be read and understood in the larger context of the Individual Debtor's well-documented harassment campaign directed at the Trustee and his largest unsecured creditor, as orchestrated through his web of related organizations that "serve as business vehicles to the [Individual] Debtor" and whose members are "personally loyal to the [Individual] Debtor."[6] Here, again, the Individual Debtor is using his social media presence and his related organizations to rally his followers to file frivolous claims in an attempt to throw the claims process into disarray. Through this lens, it is obvious

---

[5]  The Individual Debtor asserts that Movants' "concerns about personal information do[] not make sense in the context of the claims process, which requires claimants to include their name and address on the court docket if they file a claim." AP Obj. ¶ 8. While it is true that creditors who file their proofs of claim with the Court's claims registry are publicly disclosing their names and contact information, this certainly does not mean that they also assume the risk that other personal information not included in their claims (such as an ID card or passport) will be disclosed by the Individual Debtor or persons in active concert or participation with the Individual Debtor. Nor do they assume the risk that they will become the target of a social media harassment campaign.

[6]  *Corrected Memorandum of Decision Granting in Part Motion For Preliminary Injunction* [Main Case Docket No. 133] (the "Preliminary Injunction Decision") ¶ 7. These organizations include all the entities associated with "the Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya." *Id.*

that the Individual Debtor's latest antics are simply a continuation of the very conduct that this Court previously found "embarrass[es], burden[s], delay[s] or otherwise impede[s] the reorganization proceedings."[7]

3.  If any further proof of the Individual Debtor's intention of flooding the claims register with frivolous claims were necessary, it was supplied by an article posted on GNews on January 25, 2023:[8]

> Mr. Guo suggested that all the comrades could register because they had invested in GTV, but GTV was pseudo-classed as a fraudulent case and the SEC investigated it, so the money invested by the comrades had been withheld from the SEC, and the comrades were looking for money from the SEC, but in the bankruptcy case, the comrades could register as creditors of Mr. Guo. accept the registration of other comrades. ***If all the comrades go to register, they will make up the majority of the creditors, then the money Mr. Guo earned will be distributed to the comrades, which Mr. Guo is very willing to do. In addition war buddies as the majority can initiate the ownership of lady may ship and the 18th floor, is also the majority will be given to the hands of war buddies, such a way of handling, all happy***. In addition, after the registration of creditors, is to testify in court, some can not get a visa to come to the United States of war, can have a reasonable reason to come to the United States, if you do not want to leave, you can apply for political asylum on the spot. We can legally use the law to solve the problem.[9]

4.  There can also be no serious argument that preserving the integrity of the claims process (which is a key component of any bankruptcy case) is part and parcel of the Court's directive that the Individual Debtor not "interfere in any way with the integrity of [t]his Chapter

---

[7] Preliminary Injunction Decision at 41.

[8] As the Court previously found, the Individual Debtor "founded and controls GNews." Memorandum Decision ¶ 3.

[9] *See Mr. Guo's wisdom: war veterans can all go to register creditors in bankruptcy* cases, GNews (January 25, 2023, 17:38 p.m.), https://gnews.org/articles/828166 (last accessed January 25, 2023) (emphasis added). A copy of the English version of the article (as posted on GNews' website) is attached as Exhibit 7 to the Barron Declaration.

4

11 case."[10] In this regard, the Court should reject the Individual Debtor's suggestion that the only conduct prohibited by the foregoing injunction is behavior that raises safety concerns because the Court included, as an example of such prohibited conduct, actions that threaten, or encourage others to threaten, the safety of the Trustee, PAX, and related persons.[11] It should go without saying that the word "including" is **not** limiting—indeed, this is one of the fundamental rules of construction of the Bankruptcy Code.[12] In any event, posting a German ID card of a creditor and exposing other personal information does raise serious safety concerns. For all these reasons, and the reasons set forth in the Motion, Movants submit that there is substantial evidence that the Individual Debtor and others in active concert or participation with the Individual Debtor are violating the Preliminary Injunction Order by interfering with the integrity of the claims process.

5.    Finally, the Court should reject the Individual Debtor's argument that Movants are seeking to short-circuit the process of finding the Individual Debtor in contempt.[13] The Motion is not requesting that the Court hold the Individual Debtor in contempt, but Movants recognize that the Court has the discretion to do so, if it is satisfied that the statements by the Individual Debtor and his followers are a clear violation of the Preliminary Injunction Order. For these reasons, Movants defer to the Court as to whether the Individual Debtor should be held in contempt based on the facts presented.

---

[10]   Preliminary Injunction Order ¶ 2.
[11]   AP Obj. ¶ 4.
[12]   11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").
[13]   AP Obj. ¶ 5

**B.     Individual Debtor's Claims Objections Should Be Quashed Because He Has No Right to Object to Claims**

6.     The Individual Debtor continues to press his argument that the surplus analysis—in which a debtor out of possession has standing only if there will be a surplus in the estate—does not apply in chapter 11.[14] In doing so, however, he ignores the multiple cases cited in the Motion that demonstrate the opposite: courts have consistently applied the surplus analysis to standing in a chapter 11 case.[15]

7.     The Individual Debtor relies on *McCorhill*, another case cited in the Motion, but then goes on to selectively quote (and ultimately misunderstand the holding of) that case.[16] As explained in the Motion, the out-of-possession chapter 11 debtor in *McCorhill* sought to assert certain claims that would have "create[d] an equity for the debtor," *Kraus-Thomson Org., Ltd. v. McCorhill Publ'g, Inc. (In re McCorhill Publ'g, Inc.)*, 89 B.R. 393, 396, and the court allowed the debtor to bring those claims to "protect [those] equity interests, if any." *Id.* at 396.[17] This is entirely consistent with and, in fact, supports the Trustee's point that the Individual Debtor does **not** have the right to object to claims because there is no surplus here and the Claims Objections, even if successful, would not create a surplus.

8.     Ignoring this, the Individual Debtor cites to *McCorhill* in an attempt to support his argument that he has standing to file a plan and, therefore, has standing to file a claim

---

[14]  Main Case Obj. ¶¶ 15-25.

[15]  For example, the Individual Debtor ignores the Trustee's citations to *In re Visiting Nurse Ass'n*, 176 B.R. 748, 750 (Bankr. E.D. Pa. 1995) and *In re Olympia Off. LLC*, 574 B.R. 38, 46 (Bankr. E.D.N.Y. 2017), even though in both of these chapter 11 cases the court recognized that principles of prudential standing limit claim objections in a chapter 11 case. *See* Mot. ¶¶ 24, 25.

[16]  Main Case Obj. ¶ 21.

[17]  The court also held that the "debtor's counsel must look beyond this estate for any compensation unless the debtor's efforts succeed in producing an equity for the debtor." *In re McCorhill Publ'g, Inc., 89 B.R.* at 396.

6

objection.[18] However, the court in *McCorhill* reached the exact opposite conclusion: while an out-of-possession debtor "continues to be regarded as a party in interest for plan filing purposes[,] *[n]onetheless*, the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104 terminates the debtor in possession's trustee-like authority under 11 U.S.C. § 1107." *In re McCorhill Publ'g, Inc.*, 89 B.R. at 396 (emphasis added). And for those purposes—*i.e.*, purposes of the trustee-like authority under section 1107, including the authority to object to a proof of claim—"the debtor has a pecuniary interest in the equity of the estate *if* all the creditors can be paid in full." *Id.* at 396 (emphasis added).

9. The Individual Debtor also cites to section 1109 of the Bankruptcy Code, which allows "parties in interest" to be heard on matters in the bankruptcy case. This, however, ignores a fundamental point: an out-of-possession debtor is not a "party in interest" because it has no interest to protect. This is exactly the distinction made by *McCorhill*, which recognized that an out-of-possession debtor is "regarded as a party in interest *for plan filing purposes*," but not for the "trustee-like authority under [section 1107 of the Bankruptcy Code]." *Id.* (emphasis added).

10. The reason for this is the structure of the Bankruptcy Code. Section 1106 of the Bankruptcy Code imposes certain obligations on a bankruptcy trustee, including the obligation to "perform the duties of the trustee" appointed under section 704(a) of the Bankruptcy Code. 11 U.S.C. § 1106(a)(1). One of those duties is to examine and object to proofs of claim—but only if a purpose would be served in doing so.

11. Under section 1107 of the Bankruptcy Code, as long as a chapter 11 debtor remains in possession, the debtor retains the authority to act as trustee. However, "the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104 terminates the debtor in

---

[18] Main Case Obj. ¶ 21.

possession's trustee-like authority under 11 U.S.C. § 1107." *McCorhill Publ'g, Inc.*, 89 B.R. at 396. At that point, "the appointed Chapter 11 trustee then assumes the duties expressed in 11 U.S.C. § 1106, including most of the duties specified in 11 U.S.C. § 704." *Id.* The Bankruptcy Code does not contemplate that a chapter 11 trustee would be required to share the powers, and obligations, of section 704 with an out-of-possession debtor. That would be an absurd result that would be inconsistent with the basic structure of the Bankruptcy Code and would also undermine the effective administration of the estate. To the contrary, an out-of-possession chapter 11 debtor can exercise the powers granted to a chapter 11 trustee only where he "possesses a direct pecuniary interest the estate which ***would not implicate the rights of the Chapter 11 trustee***." *Id.* (emphasis added).

12. None of the other cases cited in the Main Case Objection help the Individual Debtor. For example, the Individual Debtor cites *Frontier Insurance* for the proposition that a "party in interest" should not be construed more narrowly for claims objections. Yet this ignores the very next sentence in the decision, in which the court explained that "[p]arties in interest for the purpose of claims objections 'include not only the debtor, ***but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding***.'"[19] (emphasis added). In other words, anyone—like the Individual Debtor—who has failed to show that the proofs of claim at issue affect their interests has no such standing. *See In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992) (stating under section 502, "[t]he phrase 'parties in interest' applies to those who have some interest in the assets of the debtor being administered in the case") (internal quotations omitted); *see also In re Quintero*, 513 B.R. 127, 133 (Bankr.

---

[19] *See* Main Case Obj. ¶ 19 (citing *Frontier Ins. Co. v. Westport Ins. Corp. (In re Black)*, 460 B.R. 407, 413 (Bankr. M.D. Pa. 2011) (emphasis added).

D.N.M. 2014) ("Typically, a debtor is not a 'party in interest' within the meaning of § 502(a) because the debtor will not receive a distribution from estate assets, and therefore has no 'pecuniary interest' in the outcome of the claim objection.").

13. But even if the Individual Debtor were to qualify as a "party in interest" under sections 1109 and 502 of the Bankruptcy Code, that would not, on its own, enable the Individual Debtor to prosecute the Claims Objections. Numerous courts have held that, even for a "party in interest," the right to object to claims is not an unbridled right—nor could it be, as an unbridled right would wreak havoc on case administration. *See, e.g.*, *In re Dow Corning Corp.*, 244 B.R. 721, 750 (Bankr. E.D. Mich. 1999) ("While the [unsecured creditors' committee] is a 'party in interest' under § 502 with the right to object to other creditors' claims, it is well-settled that the right nevertheless has limits.") (subsequent history omitted); *see generally In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) ("But we do not think that this section was intended to waive other limitations on standing, such as that the claimant be within the class of intended beneficiaries of the statute that he is relying on for his claim, although a literal reading of section 1109(b) would support such an interpretation."); *In re Abengoa Bioenergy Biomass of Kansas, LLC*, No. 16-10446, 2018 WL 2138620, at *3 (Bankr. D. Kan. May 7, 2018) ("While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to § 502(a) of the Code, however, any party in interest may object to a claim. But under § 704 the trustee, if any purpose would be served thereby, has the duty to, examine proofs of claim and object to improper claims.") (discussing comments to Bankruptcy Rule 3007) (internal quotations omitted).[20] The reason for this limitation is

---

[20] *See also In re Simon*, 179 B.R. 1, 7 (Bankr. D. Mass. 1995) ("if every creditor were entitled to challenge the claim of another creditor filed in a particular case, an orderly administration could degrade to chaos"); *In re*

9

straightforward: "If every creditor were entitled to challenge the claim of another creditor an orderly administration could degrade to chaos." *In re Ampal-Am. Israel Corp.*, 545 B.R. 802, 809 (Bankr. S.D.N.Y. 2016) (citing *In re Sinclair's Suncoast Seafood, Inc.*, 140 B.R. 588 (Bankr. M.D. Fla. 1992) (as modified)).[21]

14. The foregoing analysis is not affected by the Individual Debtor's assessment that claims based on the issuance of Himalaya Coins are "at the very core of the Debtor's reorganization."[22] Even assuming that is the case, it would **not** advance the administration of these chapter 11 cases to allow the Individual Debtor to object to these claims before the Trustee has had the opportunity to analyze these claims, in a holistic fashion, and after he has completed his investigation into the Debtor's financial affairs, **particularly** as it relates to the Debtor's relationship with Himalaya and the issuance of Himalaya Coins. Allowing the Individual Debtors to file *ad hoc* objections to these types of claims does not advance the resolution of these complex issues or the administrations of these cases—and this is especially true when viewed in light of the Individual Debtor's out-of-court antics directed at the very creditors that are asserting claims based on the issuance of Himalaya Coins.[23]

---

*Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992) ("absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim"); *In re Chi. Invs., LLC*, 470 B.R. 32 (Bankr. D. Mass. 2012) (concerns for orderly administration "echo those raised by the First Circuit in the context of Chapter 7").

[21] The judge-made limitation on claim objections comes up most frequently in the context of one creditor objecting to the claim of another. But creditors, by definition, have a pecuniary interest in the estate and are **even still** limited in their right to bring claim objections. In fact, in the *Dow Corning* case discussed above, the court applied this limitation to an official committee. Certainly, then, an out-of-possession debtor with no such pecuniary interest should have no greater rights under section 1109 than other creditors.

[22] Main Case Obj. ¶ 16.

[23] It is also of no moment that the Individual Debtor's stated motivation for objecting to claims based on the issuance of Himalaya Coin is to eliminate claims that he views as illegitimate in order to return to his preferred settlement structure. As noted, whether such claims are, in fact, legitimate can only be determined in a holistic fashion.

10

**C.   Individual Debtor Should Be Barred From Filing Objections to Claims Absent Leave of Court**

15.   The Individual Debtor does not dispute that Movants' request for a limited prefiling order (as it relates to the filing of objections to claims) is governed by the multi-factor test laid out by the Second Circuit in *Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986). The Individual Debtor asserts, however, that the *Safir* factors do not support the requested relief and further asserts, with no sense of irony, that "the Debtor has not demonstrated any improper conduct through his filings with the Court."

16.   The Individual Debtor's proclivity for interfering with the Trustee's investigation and the administration of these chapter 11 cases has already been well documented, including in the memorandum decision issued by this Court in connection with the Preliminary Injunction Order. In fact, only yesterday, the Court issued the *Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order* [Docket No. 1372] (the "Ace Decade Contempt Order"). In that order, the Court found that the Individual Debtor acted in bad faith, including by (i) failing to comply with the corporate governance order [Docket No. 717] and (ii) taking one position in court pleadings and during deposition and then abandoning that position.[24] As a result of these findings and the Individual Debtor's bad faith, the Court held the Individual Debtor in civil contempt and ordered him to cure the contempt or be sanctioned to pay the fees and costs the Trustee was forced to incur in pursuing compliance with the Corporate Governance Order.

17.   Movants submit that based on the record of these chapter 11 cases, including the Preliminary Injunction Order and the Ace Decade Contempt Order, the *Safir* test has been easily

---

[24]   Ace Decade Contempt Order at 13.

11

12

satisfied, and, accordingly, Movants request that the Individual Debtor be required to seek leave of court to file objections to claims is appropriate and necessary.

[*Remainder of page intentionally left blank.*]

WHEREFORE, for the foregoing reasons, the Movants respectfully request that the Court overrule the Objections and enter the Proposed Order granting the relief requested in the Motion and such other relief as is just and proper.

| | |
|---|---|
| Dated: January 25, 2023<br>New Haven, Connecticut | LUC A. DESPINS, CHAPTER 11 TRUSTEE, GENEVER HOLDINGS LLC, AND GENEVER HOLDINGS CORPORATION |

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka (ct00616)
    Patrick R. Linsey (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 781-2847
    dskalka@npmlaw.com
    plinsey@npmlaw.com

      *and*

    Nicholas A. Bassett (admitted *pro hac vice*)
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1902
    nicholasbassett@paulhastings.com

      *and*

    Avram E. Luft (admitted *pro hac vice*)
    G. Alexander Bongartz (admitted *pro hac vice*)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6079
    aviluft@paulhastings.com
    alexbongartz@paulhastings.com

    *Counsel for the Chapter 11 Trustee, Genever Holdings LLC, and Genever Holdings Corporation*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---------------------------------------------------------x
                                                                         :

In re:                                                              :     Chapter 11

HO WAN KWOK, *et al.*,[1]                       :     Case No. 22-50073 (JAM)

                          Debtors.           :     (Jointly Administered)

---------------------------------------------------------x

PACIFIC ALLIANCE ASIA
OPPORTUNITY FUND L.P.,

                                                        Adv. Proceeding No. 22-05032 (JAM)

                          Plaintiff,

v.

HO WAN KWOK,

                          Defendant.

---------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 25, 2023, the foregoing Reply, and the Second Declaration of Douglass Barron filed contemporaneously therewith (including all exhibits thereto), was sent by e-mail to all parties able to receive electronic notice by operation of the Court's electronic filing system ("CM/ECF"). Parties may access these filings by CM/ECF.

*[THE REST OF THIS PAGE IS INTENTIONALLY BLANK.]*

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

Dated: January 25, 2023
       New Haven, Connecticut

By:   */s/ Patrick R. Linsey*
     Patrick R. Linsey (ct29437)
     NEUBERT, PEPE & MONTEITH, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     (203) 821-2000
     plinsey@npmlaw.com