**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

**UBS AG'S OBJECTION TO MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER COMPELLING**
**UBS AG TO COMPLY WITH RULE 2004 SUBPOENA**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 5

   I.    UBS Served Valid Objections to the Subpoena................................................ 6
   II.   The Trustee Misrepresents UBS's Cooperation to Date................................... 9

ARGUMENT ............................................................................................................ 10

   I.    Complying with the Subpoena Would Require UBS to
       Violate Foreign Law and Place UBS Employees in Legal Jeopardy............... 10

        A.   Relevant Provisions of Foreign Law .................................................. 10

             i.   *Hong Kong* ................................................................................ 10
             ii.  *People's Republic of China* ...................................................... 11
            iii.  *Switzerland* .............................................................................. 12

   II.   The Trustee Should Be Ordered to Seek Discovery Pursuant to UBS's Proposal ........... 12

        A.   The Trustee Could Seek Discovery by
             Filing Applications Under the Hague Convention .................................. 13
        B.   The Trustee Could Seek Discovery by
             Seeking Hong Kong Recognition of the
             US Bankruptcy Proceedings and Pursuing Disclosure There ................ 14

   III.  The Comity Balancing Test Requires that the Trustee Proceed Via One of the Proposed
       Alternatives ...................................................................................................... 15

        A.   The Information the Trustee
             Seeks Includes a Broad Swath of Irrelevant Documents Available Elsewhere. .... 16
        B.   The Trustee's Requests Are Not "Specific."........................................... 17
        C.   The Information Sought Did Not "Originate in the United States." ...................... 19
        D.   The Information is Available Through Other Means. ............................. 19
        E.   The Balance of Interests Tips in Favor of Respecting Foreign Law..................... 21
        F.   Responding to the Subpoena Would
             Impose Substantial Hardship On UBS. .................................................. 23
        G.   UBS Has Acted in Good Faith. ............................................................. 24

   IV.  The Subpoena as Drafted is Vague and
       Overbroad, and Complying is Impracticable ................................................... 24

   V.   The Subpoena Improperly Seeks Information Relating to a Pending Proceeding........... 27

A.    The Pending Proceeding Doctrine Bars the Use of Rule 2004 Discovery Once Parallel Litigation Has Begun ............................................................................... 27

B.    The Motion Should Be Denied and the Subpoena Quashed with Respect to All 2004 Discovery Targets Who Are Parties to the Pending UK Litigation ...................... 28

VI.    If this Court Orders UBS to Comply with the Subpoena, UBS Must Be Granted Its Reasonable Costs .................................................. 29

CONCLUSION ...................................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Pages(s)**

*Advanced Indus. Products, S.C.S v. Alcoa Glob. Fasteners, Inc.*,
   No. CV 04-3049-ABC(CTx), 2006 WL 8433934 (C.D. Cal. Feb. 1, 2006) ............................ 13

*CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*,
   No. 12-CV-08087 CM SN, 2013 WL 2661037 (S.D.N.Y. June 12, 2013)........................Passim

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................................................... 9

*de Borja v. Razon*,
   No. 3:18-cv-01131-YY, 2019 WL 4724317 (D. Or. Aug. 16, 2019)........................................ 13

*In re Aggrenox Antitrust Litig.*,
   No. 3:14-MD-02516 (SRU), 2017 WL 4679228 (D. Conn. Oct. 18, 2017) ............................ 29

*In re Bennett Funding Grp., Inc.*,
   203 B.R. 24 (Bankr. N.D.N.Y. 1996)..................................................................................28-29

*In re Brown*,
   No. 18-10617-JLG, 2018 WL 4944816 (Bankr. S.D.N.Y. Oct. 11, 2018) .............................. 27

*In re Buccaneer Res., LLC*,
   No. 14-60041, 2015 WL 8527424 (Bankr. S.D. Tex. Dec. 10, 2015) ...................................... 30

*In re China Fishery Grp. Ltd.*,
   No. 16-11895 (JLG), 2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ............................ 26

*In re Coffee Cupboard, Inc.*,
   128 B.R. 509 (Bankr. E.D.N.Y. 1991) .................................................................................... 28

*In re Comair Ltd.*,
   No. 21-10298(JLG), 2021 WL 5312988 (Bankr. S.D.N.Y. Nov 14, 2021) ............................ 20

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) .................................................................................................... 9

*In re Martelli*,
   No. BR 16-20316-PRW, 2017 WL 3098105 (Bankr. W.D.N.Y. July 20, 2017)...................... 27

*In re Merrill*,
   No. 09-54616-C, 2010 WL 985231 (Bankr. W.D. Tex. Mar. 16, 2010).................................. 25

*In re Sanomedics, Inc.*,
   No. 16-21659-RAM, 2018 WL 3816772 (Bankr. S.D. Fla. July 25, 2018).............................. 28

*In re Szadkowski,*
    198 B.R. 140 (Bankr. D. Md. 1996) .................................................................27-28

*In re Texaco Inc.,*
    79 B.R. 551 (Bankr. S.D.N.Y. 1987).............................................................. 18, 25

*Kansas Heart Hosp., L.L.C. v. Exec. Risk Indem., Inc.,*
    No. 06-1345-MLB, 2007 WL 1125772 (D. Kan. Apr. 16, 2007) ........................... 27

*Koopmann v. Robert Bosch, LLC,*
    No. 18-CV-4065 (JMF), 2018 WL 9917679 (S.D.N.Y. May 25, 2018) ..............................29-30

*Laydon v. Mizuho Bank, Ltd.,*
    183 F. Supp. 3d 409 (S.D.N.Y. 2016) ..................................................................... 19

*Linde v. Arab Bank, PLC,*
    262 F.R.D. 136 (E.D.N.Y. 2009).............................................................................. 19

*Linde v. Arab Bank, PLC,*
    463 F. Supp. 2d 310 (E.D.N.Y. 2006) ..................................................................... 22

*Minpeco, S.A. v. Conticommodity Servs., Inc.,*
    116 F.R.D. 517 (S.D.N.Y. 1987).......................................................... 15, 18, 22, 24

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa,*
    482 U.S. 522 (1987) ...............................................................................15-16, 21-22

*Rotstain v. Trustmark Nat'l Bank,*
    No. 3:09-CV-2384-N-BG, 2015 WL 13031698 (N.D. Tex. Dec. 9, 2015).............................. 21

*Société Internationale Pour Participations Industrielles Et Commerciales,* S. A. v. Rogers,
    357 U.S. 197 (1958) ................................................................................................ 23

*Strauss v. Credit Lyonnais. S.A.,*
    249 F.R.D. 429 (E.D.N.Y. 2008)..................................................................... 18, 23

*Tiffany (NJ) LLC v. Qi Andrew,*
    276 F.R.D. 143 (S.D.N.Y. 2011)....................................................................... 9, 22

*United States v. First Nat. Bank of Chicago,*
    699 F.2d 341 (7th Cir. 1983) .................................................................................. 22

**Rules**

Fed. R. Civ. P. 34...................................................................................................... 25

Fed. R. Civ. P. 45.................................................................................................. 4, 29

**Other Authorities**

Br. United States *Amicus Curiae* Opp'n Pet. Writ Cert. *Arab Bank, PLC v. Linde*, 2014 WL
2191224 (U.S.) ..................................................................................................................... 22

Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c).................. 16

John Fellas et al., Transnational Litigation Guide § 25:46 (2022) .................................. 13

Notice of Presentment of Debtors Application on
Consent for an Order Pursuant to Rule 7028 of the Federal Rules of
Bankruptcy Procedure Issuing a Letter of Request for an Order
Compelling the Examination Under Oath of Louisa Watt in the
United Kingdom Under the Hague Evidence Convention,
*In re: Lehman Brothers Holdings Inc.*,
08 BR 13555 (Bankr. S.D.N.Y. Aug. 31, 2009) [ECF No. 5015] ....................................... 14-15

Non-party UBS AG ("UBS"), by and through its undersigned counsel, respectfully submits this objection to the Motion of Chapter 11 Trustee for Entry of Order Compelling UBS AG to Comply with Rule 2004 Subpoena [ECF No. 1362] (the "Motion"), filed by Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") on January 23, 2023.  The Motion to Compel seeks an order requiring UBS to produce within 14 days documents responsive to the Trustee's Subpoena for Rule 2004 Examination (the "Subpoena").  The Motion should be denied.

## INTRODUCTION

1.      UBS has been and remains willing to cooperate and comply with the Trustee's requests to the extent it can.  UBS has made clear to the Trustee that it will provide responsive material he requests through recognized international channels from jurisdictions that prohibit UBS from simply producing materials pursuant to the Subpoena.   Contrary to the mischaracterizations in the Motion, UBS has never refused to comply.  Although the Trustee claims to have received no responsive information to date, UBS voluntarily performed substantial investigations in response to the extremely broad Subpoena after UBS served its objections. Moreover, UBS has reported to the Trustee that, apart from those 2004 Discovery Targets (as defined in the Subpoena) against which UBS is already litigating in a pending proceeding in the United Kingdom,[1] none of the remaining 2004 Discovery Targets have accounts in the United States, the United Kingdom, or the British Virgin Islands – three of the six jurisdictions that the Trustee's counsel has consistently represented to be jurisdictions of primary interest to the Trustee. In the time since the Trustee filed the Motion, UBS has additionally confirmed that if any documents responsive to the Subpoena exist in Switzerland – one of the three remaining jurisdictions the Trustee indicated was of primary interest – they would not be in the possession,

---

[1]      *See, infra*, Section III.

custody or control of UBS, because as of June 14, 2015, all Swiss-booked wealth management and retail and corporate accounts were transferred from UBS to an affiliated entity, UBS Switzerland AG ("UBS Switzerland"), as a consequence of a spin-off of the Swiss-booked business into a separately incorporated entity.[2]

2.      With respect to the remaining jurisdictions the Trustee has claimed to be potentially relevant  – Hong Kong, the People's Republic of China (the "PRC"), and Switzerland (which is included here in an abundance of caution in the event that the Trustee suggests that the Subpoena reaches any separately incorporated UBS-related entity in Switzerland, which it does not) – and the Subpoena more generally, UBS objects to the Motion, chiefly on three bases:[3]

3.      *First*, complying with the Subpoena would require UBS to violate the laws of Hong Kong, the PRC, and Switzerland.  However, UBS can provide disclosure using appropriate international channels through which the Trustee can readily obtain local court orders with which UBS can and would comply, to the extent that responsive material exists.  Indeed, in Hong Kong and Switzerland, UBS and its employees would violate the law even by confirming whether any relevant accounts exist.  Should UBS or its employees disclose any information without either customer consent or an order from a court in those jurisdictions, they could face severe, and in some cases criminal, consequences.  The Trustee should instead pursue the disclosure he seeks in those jurisdictions *either*: (i) with respect to all three jurisdictions, by pursuing disclosure via the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague

---

[2]      *See, infra,* ¶ 15.

[3]      The Trustee is incorrect in his purported understanding that "UBS's sole basis for refusing to comply with the UBS Subpoena is the purported applicability of foreign privacy laws." (Motion ¶ 17).  UBS asserted several other objections to the Subpoena (*see* Motion, Ex. B) and made clear during the parties' meet-and-confer discussion that one of its key objectives in negotiating with the Trustee was reaching agreement on a manageable scope of disclosure limited to documents the Trustee actually requires and that UBS might be in a position to provide.  (*See* Declaration of Lisa J. Fried, date January 30, 2023 (the "Fried Declaration" or "Fried Decl.") ¶ 6).

Convention"), or (ii) with respect to Hong Kong, by seeking recognition of the US bankruptcy proceedings, thereby enabling the Trustee to seek disclosure in those jurisdictions, consistent with local law.

4.      As UBS has communicated to the Trustee, UBS would not object to the Trustee proceeding via either of these alternatives, and UBS would work in parallel to search for and prepare for production responsive documents, to the extent they exist, to avoid further delay until appropriate foreign court orders calling for production are issued.  The balance of interests favors these alternatives.  Employing Hague Convention procedures or recognition in Hong Kong would not prejudice the Trustee or the estates.  And these alternatives would also substantially protect UBS, its employees, and its agents from the legal jeopardy they would face if they violated the laws of jurisdictions in which UBS operates; would comport with principles of international comity; and likely would take only a few weeks to a couple of months.

5.      *Second,* the Subpoena is overbroad and vague and cannot be enforced as written. The Subpoena applies to a staggering range of materials relating to an indeterminate number of more than 25 individuals and entities, around the world, going back 11 years – despite the fact that this Court has ordered some of the 2004 Discovery Targets themselves to produce documents dating back only nine years.  Strict compliance with the Subpoena's terms would require UBS to mount a global investigation of everything from cancelled checks to marginal notes on paper documents potentially relating to UBS's tens of thousands of current and former employees around the world, covering petabytes of electronic data, among other materials.  The Subpoena as drafted could generate an enormous volume of documents beyond the proper scope of a Rule 2004 subpoena to investigate the assets of the estates.  Moreover, the Trustee's requests are to some extent duplicative of requests already issued to individuals and entities related to the Debtor.

6.      UBS, in an effort to narrow the scope of the Subpoena, asked that the Trustee indicate the jurisdictions upon which he was primarily focused.   Thereafter, UBS invested substantial time and resources in researching what information it could and could not provide to the Trustee from the six jurisdictions that the Trustee's counsel identified as being of primary interest.   UBS should not now be required to perform additional costly and time-consuming searches with respect to an unspecified number of additional jurisdictions around the world.

7.      *Third*, the Subpoena violates the Pending Proceeding Doctrine to the extent that a number of the 2004 Discovery Targets are claimants in ongoing litigation against UBS in the United Kingdom.   The Pending Proceeding Doctrine is well-established law in this Circuit, and the Trustee has no legal basis to use Rule 2004 to seek discovery on subjects that are at issue in the UK litigation between 2004 Discovery Targets Mr. Kwok, Ace Decade and Dawn State (the "Claimants"), on the one hand, and UBS, on the other, where the Trustee intends to litigate on behalf of the Claimants by stepping into Mr. Kwok's shoes.

8.      Finally, by refusing to engage in good faith negotiations to reasonably narrow the overbroad scope of the Subpoena, the Trustee has violated his obligation to take "reasonable steps" to avoid imposing an undue burden upon a non-party such as UBS pursuant to Fed. R. Civ. P. 45(d).   If this Court orders UBS to comply with the Subpoena over UBS's objections, then this Court "must protect [UBS]," as an entity "who is neither a party nor a party's officer from significant expense resulting from compliance."   *See* Fed. R. Civ. P. 45(d)(2)(B)(ii).

9.      Accordingly, UBS requests that the Court issue an order denying the Motion and quashing the Subpoena or, in the alternative, (i) ordering the Trustee to seek discovery via the Hague Convention or after obtaining foreign recognition of the instant bankruptcy proceedings; (ii) ordering the Trustee to narrow the scope and breadth of the Subpoena substantially to

adequately specify the discovery sought, avoid imposing an undue burden on UBS, and comply with the proper scope of a Rule 2004 subpoena; (iii) denying the Motion as to those 2004 Discovery Targets that are Claimants in the UK Proceedings; and (iv) to the extent that the Court orders UBS to comply with the Subpoena, authorizing UBS to recover the reasonable costs and attorneys' fees incurred in compliance.

## FACTUAL BACKGROUND

10.     The Trustee served the exceedingly broad Subpoena on September 26, 2022, demanding that UBS produce a nearly limitless range of information and documents relating to the 2004 Discovery Targets, *i.e.*, Debtor Ho Wan Kwok and 26 other individuals and entities[4] purportedly associated with him.  (*See* Fried Decl. ¶ 2).  The Subpoena seeks dozens of types of documents[5] going back 11 years, to January 1, 2012, and the Trustee's counsel, during the parties' meet and confer discussions, has insisted that the Trustee seeks documents held by UBS anywhere on earth.  (*See id.* ¶ 4).  Nonetheless, in his motion for leave to serve the Subpoena [ECF No. 839], the Trustee indicated that the Subpoena should be directed to "UBS AG Hong Kong branch" (*see id.*, Ex. B at 4), suggesting that his primary, albeit not sole, jurisdiction of interest is Hong Kong.

---

[4]     These are merely the discovery targets that are specifically identified; the Subpoena defines "Debtor" to include not only Mr. Kwok but also his "employees, agents, counsel, advisors, or anyone acting on his behalf," making it impossible to know with certainty who the actual discovery targets are.  (Subpoena, at 7).

[5]     The Subpoena defines "Documents" to include "electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, charts, blueprints, drawings, sketches, graphs, plans articles, specification, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, telexes, facsimiles, emails, text messages, instant messages, voice messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, film, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or marking of any kind not found on the original documents or that are otherwise not identical to the original documents." (Subpoena, at 11).

## I.   **UBS Served Valid Objections to the Subpoena**

11.     On October 12, 2022, UBS served its objections to the Subpoena (the "Objection"). (*See* Motion, Ex. B).  Among other objections, UBS objected:  (i) to producing documents relating to accounts located outside the US, noting that "employees of UBS entities in jurisdictions outside of the United States could face criminal penalties" if they were to produce documents in response to a subpoena; (ii) to producing documents relating to any regulator of UBS; (iii) on the basis that the Subpoena is overly broad and unduly burdensome; (iv) because certain of the materials requested in the Subpoena could be sought from the parties to the proceeding; (v) to the lack of particularity of the Subpoena and its failure to identify a reasonable time period; (vi) to the extent that it improperly seeks documents in the possession, custody or control not of UBS but of UBS's affiliates; and (vii) on the basis of attorney-client and other applicable privileges.  The Objection also stated, "UBS will not produce documents from UBS's offices or those of its affiliates or subsidiaries located outside of the United States that would violate the laws of any other jurisdiction."  (*Id.* at 2).  UBS also reserved the right to supplement or amend the Objection and offered to meet and confer with the Trustee to narrow or eliminate areas of dispute.

12.     Counsel for UBS and the Trustee communicated in the weeks that followed to arrange a mutually convenient time for a meet-and-confer discussion, which occurred on November 28, 2022.  (*See* Fried Decl. ¶ 4).  During that call, and in subsequent discussions, UBS – far from "refus[ing] to comply with the UBS Subpoena" (Motion ¶ 12) – has worked in good faith to provide to the Trustee information it could supply without violating the laws of jurisdictions in which UBS operates and to propose procedures that would enable the Trustee to seek the additional information sought in the Subpoena without putting UBS, its employees, and agents in legal jeopardy abroad.  Following each of the parties' meet-and-confer calls, UBS and

its counsel have worked diligently – across multiple time zones, and over the Lunar New Year holidays when business activity in Hong Kong and the PRC slows considerably – to obtain information for the Trustee.  (*See* Fried Decl. ¶ 5).

13.     In light of the vagueness and overbreadth of the Subpoena as drafted, UBS's counsel, during the meet and confer discussions, requested that the Trustee point UBS to the jurisdictions and 2004 Discovery Targets in which the Trustee was primarily interested.  (*See* Fried Decl. ¶ 7).  The Trustee asserts that "UBS has sought to put the onus on the Trustee to name specific jurisdictions where UBS should search its documents and information" (Motion ¶ 8 n.3) but has never responded to UBS's well-founded objection to the impracticability and undue burden of requiring a non-party to search *all* of its systems throughout the world for a seemingly endless list of documents relating to an unlimited number of individuals and entities, over an 11-year period.  Lacking any other good-faith guidance from the Trustee regarding what specifically the Bank should be looking for, and where, UBS reasonably asked the Trustee to specify jurisdictions of primary interest.

14.     On January 10, 2023, the Trustee's counsel confirmed that the jurisdictions in which the Trustee was primarily interested were the United States, the United Kingdom, the British Virgin Islands, Hong Kong, the PRC, and Switzerland.  (*See* Fried Decl. ¶ 9).  UBS subsequently determined the scope of the information potentially responsive to the Subpoena it was able to provide to the Trustee relating to those jurisdictions.  On the parties' most recent meet-and-confer telephone call on January 20, 2023, UBS's external counsel informed the Trustee's counsel that:

    a.  UBS had not identified any responsive accounts in the United States, the United Kingdom or the British Virgin Islands relating to any of the 2004 Discovery Targets that are not also claimants in a pending proceeding between those claimants and UBS in the United Kingdom;

    b.  UBS expected to soon be in a position to update the Trustee with respect to the PRC but would need additional time, in part because of the Lunar

New Year holiday (celebrated January 22 through February 5, 2023), during which business in the PRC slows in a manner analogous to the US holiday period between Christmas and New Year's Day; and

c.  With respect to Switzerland and Hong Kong, assuming that UBS had any responsive materials in those jurisdictions, UBS would not be able to produce any information or documents in response to the Subpoena without violating those jurisdictions' laws, which carry severe, and in certain circumstances criminal, penalties for violation.  However, as UBS's external counsel had explained on several of the parties' earlier meet-and-confer calls, the Trustee could instead seek disclosure from those jurisdictions *either* by (i) proceeding under the Hague Evidence Convention or, (ii) seeking judicial recognition in Hong Kong of this U.S. bankruptcy case, which could lead to local court orders with which UBS could comply, eliminating the risk of it violating the law of those jurisdictions.  UBS's external counsel – again, not for the first time – also explained that UBS would not object if the Trustee proceeded via either or both of these alternative paths and that, to the extent any potentially responsive materials existed in Switzerland or Hong Kong, UBS was prepared to review and prepare such materials for production in parallel with the Trustee making his applications under the Hague Evidence Convention or for foreign recognition, to avoid any delay once appropriate court orders were issued requiring production in those jurisdictions.

(*See* Fried Decl. ¶ 10.)

15.    UBS subsequently confirmed that, as of June 14, 2015, all Swiss-booked wealth management and retail and corporate accounts were transferred from UBS to an affiliated entity, UBS Switzerland AG ("UBS Switzerland"), as a consequence of a spin-off of the Swiss-booked business into a separately incorporated entity in response to a request by the Swiss Financial Market Supervisory Authority ("FINMA"), the Swiss financial market regulator.  It necessarily follows that documents responsive to the Subpoena, if any exist in Switzerland, would not be in the possession, custody or control of UBS in Switzerland.  (*See* Fried Decl. ¶ 12).[6]

---

[6]    To the extent that the Trustee asserts that the Subpoena reaches beyond UBS to any separate legal entity affiliated with it, UBS reiterates its objection to the Subpoena to the extent that it can be construed as seeking documents in the possession, custody or control of UBS's affiliates having corporate identities separate and apart from UBS.  (*See* Motion, Ex. B at 2).  The Trustee has never challenged that objection and could not, as this Court lacks jurisdiction to compel UBS Switzerland or any other affiliate of UBS to comply with the Subpoena, where such affiliates are neither incorporated in nor principally based in the United States and are not alleged to have engaged in

## II.   **The Trustee Misrepresents UBS's Cooperation to Date**

16.     It simply is not true that UBS "informed the Trustee earlier this month that it will
not produce *any* documents or information – or even disclose what documents or information
exists – responsive to the UBS Subpoena, because of banking privacy laws in foreign jurisdictions"
(Motion ¶ 8).  Nor did UBS insist that the Trustee undertake legal process (via Hague Convention
discovery or recognition proceedings) "in *dozens of countries* throughout the world where UBS
has branches." (*Id.* (emphasis in original)).  Rather, UBS proposed viable and well-recognized
alternative paths for the Trustee to seek the information he requests without requiring UBS to
violate other jurisdictions' laws.  And, contrary to the Trustee's assertion, those alternatives are
anything but "unworkable." (Motion ¶ 12).  Federal courts frequently require litigants to resort to
Hague Convention procedures.  *See, e.g.*, *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 160
(S.D.N.Y. 2011) (directing plaintiffs to request information they sought in China through the
Hague Convention), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, No. 10 Civ. 9471(WHP), 2011
WL 11562419 (S.D.N.Y. Nov. 14, 2011).

17.     During the January 20, 2023 meet-and-confer telephone call, the Trustee's external
counsel stated that, rather than pursue any of the alternative paths UBS had outlined (and agreed
not to oppose), the Trustee planned to file the Motion to Compel.  (*See* Fried Decl. ¶ 11).

---

any acts sufficient to subject them to specific jurisdiction by this Court.  *See generally Daimler AG v. Bauman*, 571
U.S. 117, 139 (2014); *In re del Valle Ruiz*, 939 F.3d 520, 529 (2d Cir. 2019).  To be sure, the Trustee can direct a
Hague Convention request to UBS Switzerland.

## ARGUMENT

### I. Complying with the Subpoena Would Require UBS to Violate Foreign Law and Place UBS Employees in Legal Jeopardy

#### A. Relevant Provisions of Foreign Law

18.     The Trustee does not dispute that complying with the Subpoena would require UBS to violate foreign law.  Instead, he merely asserts, without any support, that "UBS will be fully protected by a court order directing it to produce documents and information responsive to the UBS Subpoena."  Motion ¶ 33.[7]  As detailed below, that is demonstrably false.

##### i.    *Hong Kong*

19.     The Declaration of Eugene Fung, dated January 27, 2023 (the "Fung Declaration" or the "Fung Decl."), submitted herewith, describes the provisions of Hong Kong law that UBS's Hong Kong branch (and its employees and agents) would be forced to violate if compelled to comply with the Subpoena.  In sum, UBS's Hong Kong branch is under a contractual duty of confidentiality to its customers in respect of information about the customers' affairs gained by virtue of the banking relationship.  That duty may be overridden by a Hong Kong court order compelling the Hong Kong branch to disclose documents relating to its customers (but not a foreign court order).  *See* Fung Decl. ¶¶ 4, 8(2), 23, 25.  Complying with the Subpoena would render UBS and its employees and agents in breach of its duty of confidentiality towards its customers, which could lead to serious financial and reputational harm.  *See id.*  In addition to exposing UBS and its employees and agents to the possibility of civil liability, a customer advised (as required under Hong Kong law) that a bank intends to breach the bankers' duty of confidentiality by disclosing the customer's account information may be able to obtain an

---

[7]     The Trustee has not addressed the potential liability of UBS employees for facilitating compliance with the Subpoena.

injunction restraining the bank from doing so.  Penalties for violation of any such injunction could include fines for the entity itself and, for a director or other officer of the bank, imprisonment.  *See id.* ¶¶ 10, 26.

### ii. *PRC*

20.     The Declaration of Gary Gao, dated January 29, 2023 (the "Gao Declaration" or the "Gao Decl."), submitted herewith. describes the provisions of PRC law that UBS (and its employees and agents) would be forced to violate if compelled to comply with the Subpoena.  In sum, PRC laws and regulations impose broad restrictions on banks operating in the PRC, which limit the circumstances in which information and documents relating to accounts at such branches can be disclosed.  The laws imposing such restrictions include, but are not limited to, the *Civil Procedure Law of the People's Republic of China*, *Criminal Law of the People's Republic of China*, *Data Security Law of the People's Republic of China*, *Cybersecurity Law of the People's Republic of China*, *Personal Information Protection Law of the People's Republic of China*, and the *Commercial Banking Law of the People's Republic of China*.  UBS's PRC Branch and its employees and agents would not be able to comply with the Subpoena without violating PRC laws and regulations, absent (a) approval of PRC authorities, (b) express consent of any account holder at issue and (c) the release of any other restrictions imposed by PRC laws and regulations.  *See* Gao Decl. ¶¶ 13, 20-32, 34, 36.  UBS's PRC branch and its employees and agents would face severe consequences if it disclosed information or documents relating to accounts held there in violation of PRC laws and regulations, including but not limited to criminal penalties, significant fines, suspension of business, disqualification of senior management of the Bank, and reputational harm.  *See id*.  And a US court order would not offer UBS any protection from these consequences.

*See id.* ¶¶ 23–25 ("Banks in China are not legally obligated to comply with the U.S. courts' orders.")

### iii.    *Switzerland*

21.    As described, *supra*, ¶ 15, documents responsive to the Subpoena, if any exist in Switzerland, would not be in the possession, custody or control of UBS in Switzerland.  However, in an abundance of caution, in the event that the Trustee suggests that the Subpoena reaches any separately incorporated UBS-related entity in Switzerland, which it does not, the Declaration of Felix Dasser, dated January 27, 2023 (the "Dasser Declaration" or the "Dasser Decl."), submitted herewith, describes the provisions of Swiss law that a financial institution operating in Switzerland (and its employees and agents) would be forced to violate if compelled to comply with the Subpoena.  In sum, production of documents by a financial institution in Switzerland in compliance with the Subpoena would be prohibited by Swiss criminal law, namely Article 47 of the Swiss Banking Act ("SBA"), Article 271 of the Swiss Penal Code ("SPC") and Article 273 of the SPC and would expose any employees and agents of such an institution involved in the production of the documents to criminal sanctions, including imprisonment.  *See* Dasser Decl. § III (Conclusions), (1).  *See also id.* ¶¶ 11, 18–21, 36 (noting that violations of Swiss bank secrecy provisions are regularly prosecuted, and the Swiss Federal Statistical Office reports on average about a dozen criminal convictions per year relating to the SBA alone).

## II.    <u>The Trustee Should Be Ordered to Seek Discovery Pursuant to UBS's Proposal</u>

22.    UBS proposes that the Trustee proceed via one of two alternate methods, depending on the jurisdiction, and would not object if the Trustee pursued either method.  In addition, UBS would work in parallel to identify and prepare for production of responsive documents, to the extent that they exist, so as to be in a position to produce those documents to the Trustee as soon as an appropriate order is issued by the appropriate courts in those jurisdictions.

### A. The Trustee Could Seek Discovery by
### Filing Applications Under the Hague Convention

23.    In each of Hong Kong, the PRC and Switzerland, the Trustee could pursue discovery by filing applications under the Hague Convention, "which provides for the efficient transmission of evidence abroad." *de Borja v. Razon*, No. 3:18-cv-01131-YY, 2019 WL 4724317, at *8 (D. Or. Aug. 16, 2019), *report and recommendation adopted*, 2019 WL 4723070 (D. Or. Sept. 25, 2019), *aff'd*, 835 Fed. Appx. 184 (9th Cir. 2020).[8]  "[W]here, as here, discovery is directed to foreign nationals, who are not parties to the litigation, proceeding under the Hague Evidence Convention is often more appropriate." *Advanced Indus. Prods., S.C.S v. Alcoa Glob. Fasteners, Inc.*, No. CV 04-3049-ABC(CTx), 2006 WL 8433934, at *1 (C.D. Cal. Feb. 1, 2006) (citation omitted).

24.    Litigants routinely seek discovery from Hong Kong, the PRC, and Switzerland via the Hague Convention, and in each of those jurisdictions, such applications are processed swiftly and routinely granted.  *See* Fung Decl. ¶¶ 4 (noting that discovery is available in Hong Kong pursuant to the Hague Convention), 27–37 (noting that applications seeking discovery in Hong Kong pursuant to the Hague Convention typically are "disposed of quickly"); Gao Decl. ¶ 14 (noting that pursuing discovery in the PRC via the Hague Convention "would be an effective and legitimate approach" for the Trustee), 47 (noting that the PRC Ministry of Justice has processed 1,827 requests for judicial assistance including through the Hague Convention), 49 ("Procedures of obtaining evidence through the Hague Evidence Convention [are] clear and straightforward" in the PRC); Dasser Decl. ¶¶ 45–46 (noting that Swiss courts can order the production of documents

---

[8]    *See also* JOHN FELLAS ET AL., TRANSNATIONAL LITIGATION GUIDE § 25:46 (2022) ("The major goal of the Hague Evidence Convention is to simplify the service of letters rogatory and, thereafter, the taking of evidence itself.").

13

from Switzerland, including the disclosure of secret information about bank customers, for use in foreign proceedings through the route of the Hague Convention, and that such applications typically are processed by Swiss authorities in a timely manner, *i.e.*, between a few weeks and three months).  In sum, seeking discovery via the Hague Convention is simple, fast and efficient and would enable the Trustee to seek the same discovery requested in the Subpoena, without requiring UBS to violate the laws of Hong Kong, the PRC, or Switzerland and subject UBS to monetary fines, reputational damage and imprisonment of one or more of its employees or agents.

**B.  The Trustee Could Seek Discovery by Seeking Hong Kong Recognition of the US Bankruptcy Proceedings and Pursuing Disclosure There**

25.    With respect to any disclosure the Trustee seeks from UBS's branch in Hong Kong, the Trustee could, as an alternative to applying via the Hague Convention, seek recognition of the US bankruptcy proceedings and the Trustee's corresponding authority, which could permit the Trustee to pursue disclosure directly in Hong Kong.  Litigants routinely seek recognition of foreign insolvency proceedings in Hong Kong, and the Trustee could do so here as well.  *See* Fung Decl. ¶ 42 (noting that "a Hong Kong court can recognise foreign insolvency proceedings and can grant assistance to a foreign insolvency office-holder in the form of an order which must be consistent with justice and public policy of the Hong Kong").  As with an application under the Hague Convention, this alternative could enable the Trustee to seek the discovery requested in the Subpoena, without requiring UBS to violate foreign law.

26.    UBS's proposal is consistent with recent practice in other proceedings involving information and documents subject to foreign laws.  *See, e.g.*, Notice of Presentment of Debtors Application on Consent for an Order Pursuant to Rule 7028 of the Federal Rules of Bankruptcy Procedure Issuing a Letter of Request for an Order Compelling the Examination Under Oath of Louisa Watt in the United Kingdom Under the Hague Evidence Convention, *In re: Lehman*

*Brothers Holdings Inc.*, 08 BR 13555 (Bankr. S.D.N.Y. Aug. 31, 2009) [ECF No. 5015] (noticing an application "for the issuance of a Letter of Request compelling the examination under oath of [a witness] in the United Kingdom" under the Hague Convention); *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, No. 12-CV-08087 CM SN, 2013 WL 2661037, at *18 (S.D.N.Y. June 12, 2013) ("CEIR may seek relief through the Hague Evidence Convention in Singapore.").

### III.     The Comity Balancing Test Requires that the Trustee Proceed Via One of the Proposed Alternatives

27.     The Trustee maintains that UBS must search for potentially responsive documents "across six continents."  (Motion ¶ 8 n.3).  Setting aside the overbreadth and burden concerns that statement raises in and of itself, the conflict of law issues raised squarely by the Subpoena require analysis under principles of international comity.  The Motion makes short shrift of UBS's good-faith objection that UBS, its employees and agents stand to suffer a broad range of consequences – including potential criminal prosecution, regulatory sanctions and civil liability.

28.     The central question therefore is whether the Court should, in its discretion, giving due weight to international comity, issue an order that would cause UBS to violate foreign laws. *See Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 520 (S.D.N.Y. 1987) (denying motion to compel where Swiss bank secrecy provisions would be violated).  This Court should decline to issue an order requiring UBS to produce documents in violation of foreign laws.

29.     Considerations of comity require US courts to "exercise special vigilance to protect foreign litigants [such as UBS] from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("*Aérospatiale*").  This Court "should therefore take care to demonstrate due respect for any special problem confronted by [UBS] on account of . . . the location of its operations . . . ."  *Id.*  The Trustee cannot deny that the

Subpoena will require UBS and its employees and agents to violate foreign law due to the locations of UBS's operations but has refused to engage in any good faith efforts to narrow the scope of the Subpoena.

30.    The international comity inquiry "calls for a 'particularized analysis of the respective interests of the foreign nation and the requesting nation.'"    *CE Int'l*, 2013 WL 2661037, at *8 (quoting *Aérospatiale*, 482 U.S. at 543–44).    The inquiry is case- and fact-specific, turning on a careful balancing of factors identified by the Supreme Court in *Aérospatiale*, "the five-factor test set forth in the Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c)," and other considerations, including the objecting party's good faith. *Id.*  The Supreme Court has emphasized that our courts should "exercise special vigilance" before overruling foreign litigants' comity-based objections. *See Aérospatiale*, 482 U.S. at 546.

31.    The *Aérospatiale* factors weigh decisively in favor of this Court denying the Trustee's Motion.

### A. The Information the Trustee Seeks Includes a Broad Swath of Irrelevant Documents Available Elsewhere.

The first *Aérospatiale* factor requires consideration of "the importance . . . of the documents or other information requested."  *CE Int'l*, 2013 WL 2661037, at *8.  *First*, UBS does not dispute that some of the documents the Trustee seeks in the Subpoena may be relevant and therefore "important" to these proceedings.  However, if enforced as drafted, the Subpoena also would seek a vast array of wholly irrelevant, and therefore unimportant, documents. *See, infra,* at 26-27.

32.    *Second*, the Trustee argues that the information requested in the Subpoena is of "paramount importance" on the basis that "Bravo Luck (at a time it was owned and controlled by the Individual Debtor) held hundreds of millions of dollars in UBS accounts." (Motion ¶ 22). But

whatever importance such materials may have in the abstract, it is hardly "crucial" that the Trustee obtain them from UBS, when he is seeking materials from Bravo Luck itself via a separate subpoena served in this proceeding. *See CE Int'l*, 2013 WL 2661037, at \*9 ("Where parties have other means of obtaining the requested documents, courts consider the requested discovery to have a 'reduced degree of importance'" (citation omitted)).

33.      *Third*, the Subpoena seeks information dating back eleven years (from January 1, 2012 to present) concerning the Debtor and the 2004 Discovery Targets.  Separately, though, the Trustee requested, and this Court ordered, the Debtor and other 2004 Discovery Targets to produce documents for a significantly shorter date range (from June 1, 2014 to present).  *See* Order Granting in Part Motion to Compel Compliance with Rule 2004 Subpoenas dated January 20, 2023 [ECF No. 1353].  The Trustee nowhere explains why he seeks discovery from UBS going back further than that which has been sought from the Debtor himself.  Thus, fully two-and-a-half years' worth of the eleven years' worth of documents the Trustee seeks in the Subpoena already has implicitly been held to be of no relevance in this case and, by implication, not "important."

## B. The Trustee's Broad Requests for Customer Information Are Not "Specific."

34.      The Trustee claims that "[t]he document requests set forth in the UBS Subpoena are *specific* to the Individual Debtor and *certain persons and entities that are directly related to or associated with him*."  (Motion ¶ 23 (emphasis added)).  Even a cursory review of the Subpoena undermines that statement, as key terms within the Subpoena are vaguely and expansively defined.  For example, the Subpoena defines the term "Debtor" to include not only Mr. Kwok but also his "employees, agents, counsel, advisors, or anyone acting on his behalf," making it impossible to know with certainty who the actual discovery targets are.  (Subpoena, at 7).  Similarly, the term "2004 Discovery Targets" includes the term "Debtor's Family," which in turn is defined to include

not only the Debtor's immediate family, but *any* person with "any other familial relation to the Debtor." (Subpoena, at 8).

35.     In addition, the categories of information for which UBS would be obligated to perform searches across its global network of branches is unreasonable and impracticable, given the expansive scope of the term "Documents" under the Subpoena and the overbroad language of the specific requests. For example, a request for *"All Documents* dated between January 1, 2012 and the present related to any funds, securities, property, or assets belonging to, held by, controlled by, on behalf of, *or otherwise related* to *any* of the 2004 Discovery Targets" is not "specific"; such a request by its terms calls for the search, review, and production of documents that would be irrelevant to the Trustee's investigation. (*See* Subpoena, at 13 (emphasis added)); *see Minpeco*, 116 F.R.D. at 528 ("given the wide scope of plaintiffs' requests and interrogatories, compliance by BPS is very likely to yield much material that plaintiffs will not find useful in this litigation").

36.     The facts here are easily distinguishable from those in *Strauss v. Credit Lyonnais. S.A.* or similar cases*,* where the requested discovery involved only a single customer account that was crucial to the litigation, rendering "the requested discovery . . . relevant, vital and narrowly tailored . . . ." 249 F.R.D. 429, 441 (E.D.N.Y. 2008). Here, in contrast, the vague and overbroad language of the Subpoena would require a costly, time consuming and unduly burdensome – and likely impossible – effort to determine, among other issues, how many individuals and entities must be included within the "2004 Discovery Targets," and which accounts may be "related" to such persons or entities. *See In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (noting that "the scope of [a 2004] examination is not limitless" and limiting a requested 2004 subpoena).

**C. The Customer Information
Did Not "Originate in the United States."**

37.     The Motion alleges that "at least some responsive documents and information are located within the United States."  (Motion ¶ 24).  As an initial matter, UBS already has informed the Trustee that, with respect to all 2004 Discovery Targets that are not Claimants in the UK litigation against UBS, there are no accounts in the US.  In any event, the Trustee has insisted throughout the parties' meet-and-confer discussions that he seeks documents that originated and are located in foreign jurisdictions such as Hong Kong.  The foreign location of those materials "weighs in favor of non-enforcement."  *CE Int'l*, 2013 WL 2661037, at *10 (citing *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 150 (E.D.N.Y. 2009)); *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 421 (S.D.N.Y. 2016) ("Given that the Document Requests relate to documents turned over to UK regulators, and which are in the possession, custody or control of banks that are located in the UK, it is likely that much, if not all, of the requested information originated outside of the United States.  Accordingly, this factor favors the [party resisting producing documents].").

**D. The Information is Available Through Other Means.**

38.     The Trustee acknowledges (as he must) that UBS has in good faith made at least three constructive proposals to facilitate the Trustee's investigation in jurisdictions where UBS, its employees, and agents would be subject to legal jeopardy if UBS is forced to comply with the Subpoena.  (Motion ¶¶ 25–26).  UBS's proposals have included (i) commencing recognition proceedings; (ii) submitting requests via the Hague Convention; or (iii) obtaining consent from the individuals and entities affiliated with the Debtor that are included within the scope of the Subpoena.  The Trustee claims that these options are not "realistic" or "viable," and the lack of alternatives "supports compelling UBS."  *Id.*  At least with respect to two of these alternatives – seeking foreign recognition of the US proceedings and seeking discovery pursuant to the Hague

Convention – the Trustee's conclusory dismissal of these alternatives is unavailing.[9]   "[I]f the information sought can be easily obtained elsewhere, there is little or no reason to require a party to violate foreign law." *CE Int'l*, 2013 WL 2661037, at *10.  The alternatives UBS has proposed would enable the Trustee to obtain the requested information through well-established channels for foreign discovery sought from non-parties such as UBS and would not require UBS to violate foreign law.

39.     *First*, the Trustee does not explain why seeking recognition of the US bankruptcy proceedings in Hong Kong would not be "realistic," deny that discovery could be obtained through such proceedings, or otherwise identify any specific barrier to the Trustee's seeking the requested information through direct applications to the appropriate Hong Kong court. This factor weighs strongly in favor of UBS. *See id.* at *13.  Seeking recognition by a Hong Kong court of the instant bankruptcy proceedings to pursue discovery of facts relevant to these proceedings would be entirely analogous with the representative of a foreign debtor seeking recognition of those proceedings under Chapter 15 in order to pursue disclosure of facts in the US to support those foreign proceedings. *See, e.g.*, *In re Comair Ltd.*, No. 21-10298(JLG), 2021 WL 5312988, at *13 (Bankr. S.D.N.Y. Nov 14, 2021) (finding that the Foreign Representative had established grounds to conduct discovery in the US relating to causes of action that Debtor might hold).

40.     *Second*, the Trustee's argument that proceeding under the Hague Convention is not "realistic" is undermined by the Supreme Court's holding in *Aérospatiale*.  There, the Supreme Court observed that although the Hague Convention procedure may be more time-consuming and

---

[9]     The Trustee rejects the notion that he could seek consent from purported UBS accountholders on the basis of those individuals' and entities' refusal to cooperate in these proceedings to date. (*See* Motion ¶ 9). But the Trustee nowhere explains why the remedy for noncompliance by the Debtor and his affiliates should be to require UBS – a non-party – to violate foreign law.

expensive in certain situations, "in other instances a litigant's first use of the Hague Convention procedures can be expected to yield *more evidence abroad more promptly* than use of the normal procedures governing pre-trial civil discovery."  482 U.S. at 542 n.26 (emphasis added).  Here, given the global scope of the Subpoena and the binding nature of the bank secrecy and other laws restricting disclosure in Hong Kong, the PRC, and Switzerland, UBS submits that the Hague Convention could be expected to yield more evidence responsive to the Trustee's requests more promptly than compelling UBS's compliance.  *See CE Int'l*, 2013 WL 2661037, at *10 ("the better course is 'to forebear from assuming that the Hague Evidence Convention is not a viable option until the [local] authorities have had a meaningful opportunity to comply' with a request" (citation omitted)).

41.      In sum, UBS has proposed viable alternatives for seeking discovery in the relevant jurisdictions.  The Trustee has failed to articulate any specific reasons why one or both alternatives are unavailable or would otherwise compromise the Trustee's investigation.

### E. The Balance of Interests Tips in Favor of Respecting Foreign Laws.

42.      UBS does not dispute that the United States has an important interest in ensuring that the Trustee is permitted to diligently investigate the Individual Debtor's financial affairs.  (*Cf.* Motion ¶ 27).  However, UBS's proposal of alternative methods for obtaining the information requested would not compromise the Trustee's investigation or US interests.  In contrast, an order compelling UBS and its employees and agents to violate foreign laws would substantially undermine the interests of the foreign jurisdictions at issue.  Foreign sovereigns have substantial interests, based on important domestic policies, in the enforcement of their laws as to banking secrecy and customer confidentiality.  *See generally* Fung Decl.; Gao Decl.; Dasser Decl.

43.      Courts have repeatedly recognized that a foreign jurisdiction's interest in

compliance with its bank secrecy laws is an "important" interest of the foreign jurisdiction. *See*, *e.g.*, *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 315 (E.D.N.Y. 2006) (noting that "maintaining bank secrecy is *an important interest of the foreign jurisdictions where the discovery sought here resides – indeed the United States has enacted similar bank secrecy protection*") (emphasis added), *aff'd*, 2007 WL 812918 (E.D.N.Y. Mar. 14, 2007); *United States v. First Nat. Bank of Chicago*, 699 F.2d 341, 346 (7th Cir. 1983) ("Although the interest of the United States in collecting taxes is of importance to the financial integrity of the nation, the interest of Greece, served by its bank secrecy law is also important . . . ."); *see also* Br. United States *Amicus Curiae* Opp'n Pet. Writ Cert. 8-21, at *8, *Arab Bank, PLC v. Linde*, No. 12–1485, 2014 WL 2191224 (U.S.) (arguing that lower courts erred in "failing to accord sufficient weight to the foreign jurisdictions' interests in enforcing their bank secrecy laws" in the context of discovery).

44.     The bank secrecy laws at issue here "have the legitimate purpose of protecting commercial privacy inside and outside" Hong Kong, the PRC, and Switzerland. *Minpeco*, 116 F.R.D. at 524. These laws embody a "sovereign interest expressed by a foreign state," that is worthy of "due respect[.]" *Aérospatiale*, 482 U.S. at 546. *See also Minpeco*, 116 F.R.D. at 524 (finding that Switzerland has a "substantial" interest in its bank secrecy laws where prohibition is codified and violators are subject to criminal penalties); *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N-BG, 2015 WL 13031698, at *4 (N.D. Tex. Dec. 9, 2015) (largely rejecting plaintiffs' request to compel production of material protected by Swiss banking secrecy law); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 158 (S.D.N.Y. 2011) ("While the United States certainly has an interest in enforcing its orders and protecting trademark rights, the Chinese interest in protecting its account holders' confidentiality appears more significant in this case.").

45.     In contrast, the United States does not have a strong interest in compelling UBS

and its employees and agents to take action that would place them in legal jeopardy elsewhere. This is not a case where "the substance of the matter concerns issues of national concern," like the "goal of combatting terrorism." *CE Int'l*, 2013 WL 2661037, at *13 (citing *Strauss*, 249 F.R.D. at 443). Nor is this a "request . . . initiated by the U.S. government for purposes of an enforcement action or criminal prosecution." *Id.* (citation omitted). In such circumstances, "courts allocate relatively less weight to the United States in this analysis." *Id.* at *14. Here, although UBS does not dispute that the Trustee is required to investigate assets of the estates, the Trustee has made no showing that that goal outweighs the interests of Hong Kong, the PRC and Switzerland in the enforcement of their customer confidentiality and bank secrecy laws, especially where the Trustee's overbroad requests are likely to lead to the discovery of substantial quantities of irrelevant information, and where the requests are wholly duplicative of outstanding requests issued to persons and entities linked to the Debtor.

## F. Responding to the Subpoena Would Impose Substantial Hardship On UBS.

46.     "If compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure." *Id.* at *15. If the Court grants the Motion, the Trustee will have succeeded in placing UBS between a rock and a hard place – if UBS searches for and produces the materials sought in the Subpoena, it will violate foreign bank secrecy laws, exposing it and its employees to civil and criminal liability and regulatory enforcement. "It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction." *Societe Internationale Pour Participations lndustrielles Et Commerciales,* S. *A.* v. *Rogers,* 357 U.S. 197, 211 (1958).

47.     In any event, hardship is heightened where the party from whom discovery is sought, here UBS, is not a party to the litigation:

> [W[here the party sought to be compelled to produce documents in violation of foreign secrecy laws is merely a neutral source of information, and not itself a target of a criminal investigation or an adverse party in litigation, some courts have found the hardship to weigh more heavily in the balance.  Indeed, it has been suggested that the factor which distinguished the early Second Circuit cases adopting a restrictive approach to ordering discovery in the face of foreign nondisclosure laws was the fact that they all involved a nonparty witness.

*Minpeco*, 116 F.R.D. at 526–27 (citations omitted).

### G.  UBS Has Acted in Good Faith.

48.    As noted above, UBS does not object in principle to complying with the Subpoena as evidenced by its multiple discussions with the Trustee seeking to narrow issues and offer potential avenues to *legally* turn over the requested documents.  To that end, UBS has worked in good faith to provide the Trustee with information it could supply without violating the laws of jurisdictions in which it operates and to propose procedures that would enable the Trustee to seek the information sought in the Subpoena without putting UBS, its employees, and agents in legal jeopardy abroad.  Unlike bad faith actors, UBS has not "deliberately courted legal impediments to production."  *Minpeco*, 116 F.R.D. at 523 (citation omitted).  Instead, UBS merely wants to ensure that it abides by applicable law.  UBS has never attempted to delay these proceedings.  Indeed, once it realized that foreign law prohibited disclosure of documents from Hong Kong, the PRC, and Switzerland, UBS promptly and voluntarily proposed alternative, and workable, paths for the Trustee to seek the information he requests without putting UBS in violation of other jurisdictions' laws, notwithstanding the fact that UBS had already submitted its objections to the Subpoena and it is the Trustee's obligation – not UBS's – to take "reasonable steps" to ensure that the Subpoena does not impose an undue burden or expense upon UBS.

### IV.    The Subpoena as Drafted is Vague and Overbroad, and Complying is Impracticable

49.    Even setting aside UBS's objections based on foreign law, the Subpoena is

impermissibly vague and overbroad, and complying with the Subpoena as drafted would be impracticable.

50.      *First*, the Subpoena is impermissibly vague.  For example, the Subpoena defines "Debtor's Family" to include the impossibly broad qualifier of "any other familial relation to the Debtor".  Similarly, the term "Debtor" includes the Debtor's "employees, agents, counsel, advisors, *or anyone acting on his behalf*."  (emphasis added).  These terms make it impossible as a practical matter for UBS to identify a complete list of appropriate search terms or even know the total number of Discovery Targets.  *Cf. In re Merrill*, No. 09-54616-C, 2010 WL 985231, at *2 (Bankr. W.D. Tex. Mar. 16, 2010) (finding permissible definition of "[t]he debtor's estate" which included "all assets of both spouses (essentially) and encompasses all liabilities of both spouses.").

51.      *Second*, the Subpoena is overbroad.  As noted above, the Trustee requests "[a]ll Documents" dating back over eleven years to January 1, 2012, which concern, inter alia, any accounts, property, business, transfers, communications related to at least 28 persons or entities.  Indeed, much of the discovery sought appears to be irrelevant.  *See In re Texaco Inc.*, 79 B.R. at 553–54 (noting that "Pennzoil's definition of the word 'document' is *obviously too broad and borders on the ridiculous*," holding that "[f]or purposes of the examination, the word 'document' shall mean financial or other reports, contracts, records and minutes," and limiting the examination to "only to those three corporations which are debtors in these Chapter 11 cases").  As worded, the Subpoena would require UBS to search for many documents – *e.g.*, a cancelled check from 2012 by a family member of the Debtor – which would reveal absolutely nothing about the "nature and extent of the bankruptcy estate." The Subpoena's definition of "Documents" unreasonably goes far beyond that in Fed. R. Civ. P. 34(a), applicable pursuant to Local Civil Rule 26(c)(2).

52.      *Third*, the Subpoena impermissibly seeks discovery that is wholly duplicative of

discovery sought from others.  This Court has already authorized Rule 2004 subpoenas against *the same persons and entities* that are included within the "2004 Discovery Targets."[10]  The fact that the Trustee is pursuing simultaneous, overlapping discovery from these persons and entities makes it extremely likely that UBS's prior and ongoing efforts to provide information to the Trustee are duplicative of other discovery targets' efforts.  It is unduly burdensome to require a nonparty such as UBS to comply with an overbroad subpoena where the Trustee can and is taking steps to obtain disclosure from so many others.  *See, e.g.*, *In re China Fishery Grp. Ltd.*, No. 16-11895 (JLG), 2017 WL 3084397, at *10 (Bankr. S.D.N.Y. July 19, 2017) ("The Court expects that as the Trustee moves forward with his Rule 2004 discovery, and as applicable, he will first seek to obtain information from the Debtors").

53.     *Fourth,* complying with the Subpoena as drafted would effectively be impossible, for a global financial institution of UBS's size and operations.  *See* Declaration of Scott Lipnick, dated January 29, 2023 (the "Lipnick Declaration" or "Lipnick Decl") ¶ 9 ("Several categories of documents requested in the Subpoena cannot be scoped in good faith due to a lack of specificity."; ¶ 10 ("The result of the lack of specificity described above is that it is impossible to scope what is actually sought by the Subpoena.  It likewise would be extraordinarily time consuming and costly – if even possible – to structure search parameters adequate to search for

---

[10]     *See* Order Granting Chapter 11 Trustee's Application for Rule 2004 Examination of Ho Wan Kwok [ECF No. 758] (granting Rule 2004 subpoena against the Debtor); Order Granting Chapter 11 Trustee's Application for Rule 2004 Discovery with respect to Various Entities and Individuals affiliated with Debtor [ECF No. 758] (granting Rule 2004 subpoenas against Ace Decade Holdings Limited, Bravo Luck Limited, Daniel Thomas Podhaskie, Dawn State Limited, Mei Guo, Qiang Guo, Hing Chi Ngok, Eastern Profit Corporation Limited, Golden Spring (New York) Ltd., Greenwich Land LLC, GTV Media Group, Inc., HK International Funds Investments (USA) Limited LLC, Lamp Capital LLC, Qu Guo Jiao, Rule of Law Society IV Inc., Saraca Media Group, Inc., Voice of Guo Media, Inc., and Yvette Wang); Order Granting First Supplemental Omnibus Motion of Chapter 11 Trustee for Rule 2004 Examination of Additional Legal and Financial Advisors to the Debtor, Entities and Individuals Affiliated with Debtor, and Relevant Banks [ECF No. 866] (granting Rule 2004 subpoenas against ACA Capital Group Limited, Himalaya International Clearing Ltd., Himalaya International Financial Group Ltd., Himalaya International Payments Ltd., Himalaya International Reserves Ltd., Jesse Brown, and William Je).

materials requested in the Subpoena."); ¶ 9(c) ("The Subpoena also does not indicate what custodians, current or former, should have their custodial files searched for potentially relevant information.  UBS AG can run archive-wide searches for keywords, but running such searches can elicit a substantial number of false positive results if the keywords are not narrowly tailored"); ¶ 12 ("In my more than three years as eDiscovery COunsel, I have never seen a motion to compel production relating to any document request or production demand as broad as the one at issue here.  The requesting party's unwillingness to identify custodians, keywords, or jurisdictional limitations is without precedent."); *see also Kansas Heart Hosp., L.L.C. v. Exec. Risk Indem., Inc.*, No. 06-1345-MLB, 2007 WL 1125772, at *3 (D. Kan. Apr. 16, 2007) (holding, where "plaintiffs' definition of 'you' include[d] all of defendant and any of the Chubb Corporation's affiliated companies," including "120 offices in some 29 countries worldwide," that "[p]laintiffs have not shown the relevance or need for conducting a worldwide search for documents").

## V.   The Subpoena Improperly Seeks
### Information Relating to Several Pending Proceedings

### A.  The Pending Proceeding Doctrine Bars
### the Use of Rule 2004 Discovery Once Parallel Litigation Has Begun

54.      The Pending Proceeding Doctrine prevents the Trustee from using the broad power of Rule 2004 to obtain disclosure as an end-run around disclosure limitations that exist in the context of a separate pending proceeding.  *See, e.g.*, *In re Brown*, No. 18-10617-JLG, 2018 WL 4944816, at *4 (Bankr. S.D.N.Y. Oct. 11, 2018) ("[O]nce an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not Rule 2004."  (citations omitted)); *In re Martelli*, No. BR 16-20316-PRW, 2017 WL 3098105, at *4 (Bankr. W.D.N.Y. July 20, 2017); *In re Szadkowski*, 198 B.R. 140, 142 (Bankr. D. Md. 1996) (holding that "once an adversary proceeding . . . has been commenced, the discovery of matters related to that adversary proceeding . . . must proceed in accordance with the discovery

provisions of the Federal Rules of Civil Procedure").

**B. The Motion Should Be Denied and the Subpoena Quashed with Respect to All 2004 Discovery Targets Who Are Claimants in the UK Litigation**

55.     Here, where the discovery sought in the Subpoena relates to numerous individuals and entities against whom the Trustee or anticipates actively litigating against UBS, such discovery is improper and the Trustee should instead be made to proceed under the more limited Federal Rules of Civil Procedure.  As this Court is aware, three 2004 Discovery Targets – the Claimants – have asserted claims against UBS in the United Kingdom in a proceeding in which disclosure has yet to be exchanged.  The Trustee has indicated that he intends to step into Mr. Kwok's shoes for purposes of litigating that matter.  (*See, e.g.*, Objection Filed by Patrick R. Linsey on behalf of Luc A. Despins Trustee, (RE: 761 Motion To Stay Pending Appeal [ECF No. 796])).  Permitting the Trustee to pursue virtually unfettered disclosure about the Claimants from UBS via a Rule 2004 subpoena is improper when he has made clear to the Court his intention to step into Mr. Kwok's shoes for purposes of the UK proceeding.  *See, e.g.*, *In re Sanomedics, Inc.*, No. 16-21659-RAM, 2018 WL 3816772, at *2–3 (Bankr. S.D. Fla. July 25, 2018) (holding that the "textbook cause for application of the pending proceeding rule" is where the party seeking discovery would be / is seeking the same documents in a parallel proceeding); *In re Coffee Cupboard, Inc*., 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991) (Rule 2004 "should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal").

56.     In *In re Bennett Funding Grp., Inc.*, where the complaint in the parallel proceeding implicated a broad range of financial activities of the defendants, and the scope of the Rule 2004 discovery, if permitted, "could not avoid delving into issues" that related to the complaint, the court deemed the Rule 2004 discovery demand to be improper.  203 B.R. 24, 30 (Bankr. N.D.N.Y. 1996).  In such circumstances, the court acknowledged that the target of the

requested Rule 2004 examination and the parties and subject matter of the parallel proceeding were "not easily separable because of the complex relationship between them," and the Court recognized that use of a Rule 2004 examination would "unavoidably and unintentionally create a back door through which the Trustee could circumvent the limitations" of the narrower disclosure rules applicable to the parallel proceeding. *Id.* That is precisely what the Trustee is attempting here in seeking disclosure from UBS in connection with the Claimants.

## VI.    If this Court Orders UBS to Comply with the Subpoena, UBS Should Be Granted Its Reasonable Costs

57.    Rule 45(d) provides, in relevant part, that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). By refusing to engage in any good faith negotiation to narrow the scope of the Subpoena, the Trustee has violated Fed. R. Civ. P. 45(d). *See In re Aggrenox Antitrust Litig.*, No. 3:14-MD-02516 (SRU), 2017 WL 4679228, at *3 (D. Conn. Oct. 18, 2017) ("Rule 45 directs district courts to 'impose an appropriate sanction – which may include . . . reasonable attorney's fees – on a party or attorney who fails to comply' with the Rule's mandate to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'") (citing Fed. R. Civ. P. 45(d)(1)).

58.    Separately, pursuant to Rule 45(d)(2)(B)(ii), if this Court orders compliance with the Trustee's overbroad Subpoena, the Court must order the Trustee to bear UBS's reasonable costs and attorneys' fees incurred in complying with the Subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B)(ii) (providing that a court ordering compliance with a subpoena over an objection "*must* protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" (emphasis added)); *see also Koopmann v. Robert Bosch, LLC*, No. 18-CV-4065 (JMF), 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018) ("Courts have deemed . . . Rule

[45(d)(2)(B)(ii)] 'to make cost shifting *mandatory* in all instances in which a non-party incurs significant expense from compliance with a subpoena.'" (emphasis added)).  This applies in the Rule 2004 context as well.  *See, e.g.*, *In re Buccaneer Res., LLC*, No. 14-60041, 2015 WL 8527424, at *8 (Bankr. S.D. Tex. Dec. 10, 2015) (granting certain directors subjected to Rule 2004 examinations $744,424.28 pursuant to Rule 45).

## **CONCLUSION**

59.      For the foregoing reasons, UBS respectfully requests that the Court issue an

order denying the Motion and quashing the Subpoena or, in the alternative:

(i)      ordering the Trustee to seek discovery via the Hague Convention or after obtaining foreign recognition of the instant bankruptcy proceedings;

(ii)      ordering the Trustee to narrow the scope and breadth of the Subpoena substantially to adequately specify the discovery sought, avoid imposing undue burden on UBS, and comply with the proper scope of Rule 2004;

(iii)      denying the Motion as to those 2004 Discovery Targets that are Claimants in the UK litigation against UBS; and

(iv)      if this Court orders UBS to comply with the Subpoena, granting UBS its reasonable costs and attorneys' fees incurred in compliance.

Dated:      January 30, 2023

UBS AG


By: */s/ Marc J. Gottridge*
Marc J. Gottridge (ct12094)
Lisa J. Fried (*admission pending*)
HERBERT SMITH FREEHILLS
    NEW YORK LLP
450 Lexington Avenue
New York, New York 10017
(917) 542-7600
marc.gottridge@hsf.com
lisa.fried@hsf.com


*Counsel for Non-Party UBS AG*

31

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on January 30, 2023, the foregoing Objection, along with all declarations submitted in support thereof,[11] was electronically filed.  Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("CM/ECF") system or by mail to anybody unable to accept electronic filing as indicated on the Notice of Electronic Filing.[12]  Parties may access this filing through the Court's CM/ECF system.

Dated:      January 30, 2023          UBS AG


By:  ____*/s/ Marc J. Gottridge*____
          Marc J. Gottridge (ct12094)
          Lisa J. Fried (*admission pending*)
          HERBERT SMITH FREEHILLS
                NEW YORK LLP
          450 Lexington Avenue
          New York, New York 10017
          (917) 542-7600
          marc.gottridge@hsf.com
          lisa.fried@hsf.com

          *Counsel for Non-Party UBS AG*

---

[11]      The declarations include, along with the exhibits thereto, the Declaration of Lisa J. Fried, dated January 30, 2023; the Declaration of Scott Lipnick, dated January 29, 2023; the Declaration of Gary Gao, dated January 29, 2023; the Declaration of Felix Dasser, dated January 27, 2023; and the Declaration of Eugene Fung, dated January 27, 2023.

[12]      To the extent that the foregoing was filed outside regular business hours, service by mail on recipients unable or not qualified to accept electronic notice was made on the next business day.