由此

HCMP 1478/2011

**IN THE HIGH COURT OF THE**
**HONG KONG SPECIAL ADMINISTRATIVE REGION**
**COURT OF FIRST INSTANCE**
MISCELLANEOUS PROCEEDINGS NO. 1478 OF 2011

---

IN THE MATTER of Part VIII of the Evidence Ordinance, Cap. 8, Laws of Hong Kong

and

IN THE MATTER of Order 70 of the Rules of the High Court

and

IN THE MATTER of a civil proceeding now pending before the Superior Court of the State of California for the County of Los Angeles, Central Division – Stanley Mosk Courthouse under case no. BC428298

---

BETWEEN

ANGELA CHEN also known as
ANGELA C. SABELLA — Applicant

and

VIVIEN CHEN — 1st Respondent

SAI WO ENTERPRISES LIMITED — 2nd Respondent

---

Before: Deputy High Court Judge Lok in Chambers
Date of Hearing: 28 November 2011
Date of handing down of Decision: 7 December 2011

---

DECISION

---

1. These proceedings are concerned with a letter of request for international judicial assistance issued by the Honourable Luis A. Lavin, Judge of the California Superior Court, Los Angeles County, United States on 9 March 2011 ("the Letter of Request").

2. The Letter of Request seeks the assistance of the High Court of Hong Kong to compel the Respondents to appear before an examiner in Hong Kong to give evidence and to produce documents for the purpose of the pending proceedings in the California Superior Court ("the California Court"), Case No. BC428298 ("the California Action").

3. By an *ex parte* Originating Summons dated 4 August 2011, the Applicant applied for an order in respect of the 1st and 2nd Respondents to give effect to the Letter of Request. On 5 September 2011, Master Hui granted the application and ordered that, *inter alia*:

(i) the 1st Respondent attend before Mr. Richard Zimmern, who is the appointed Examiner ("the Examiner"), to be examined on oath to give the testimony on the matters specified in the Letter of Request;

(ii) the 1st Respondent also bring with her and produce at the time of her testimony the documents set out in Schedule A of the Letter of Request for inspection and copying by the Applicant's representative; and

(iii) the officers, directors, shareholders and/or other persons most knowledgeable of the 2nd Respondent attend before the Examiner and produce copies of the documents set out in Schedule B of the Letter of Request for inspection and copying by the Applicant's representative.

4. In this application before me, the 1st Respondent seeks to set aside the Order of Master Hui ("the Order") insofar as it concerns her on the grounds that:

(i) the Applicant has failed to make full and frank disclosure of matters material to the application; and

(ii) the Order is vexatious, oppressive and an abuse of process of the court.

*Background*

5. The Applicant, Madam Angela Chen ("Angela"), is the elder sister of the 1st Respondent, Madam Vivien Chen ("Vivien"), and both of them are the children of Mr. Chen Din-Hua ("Mr. Chen"), the founder and the owner of the well-known Nan Fung Group.

由此



6. Rostack Investments Inc. ("Rostack"), a Liberian company, is a wholly owned subsidiary of the 2nd Respondent, Sai Wo Enterprises Limited ("Sai Wo"). Sai Wo is a Hong Kong company, which, in turn, is wholly owned by Mr. Chen. Vivien was one of the directors of Rostack prior to 2000. Since 15 November 2000, the only directors of Rostack have been Mr. Patrick Yu ("Mr. Yu") and Madam Gladys Au ("Madam Au"). Rostack is in the business of lending to United States based residents and investing in loan participations where the borrowers are United States based entitles or residents.

7. In December 2009, Rostack commenced the California Action against Angela for repayment of a US$30 million promissory note made in 1995 ("the Note"). The maturity date of the Note was 5 July 2010. Angela was required to make annual interest payments on 5 July each year. A failure to make an annual interest payment was a default entitling Rostack to recover the entire unpaid principal balance and all accrued unpaid interest immediately due.

8. According to the Complaint filed in the California Court dated 18 December 2009, Rostack alleges that Angela had defaulted in making interest payments since July 2006. On 25 May 2009, Rostack declared that the entire outstanding principal of US$28,273,000 and accrued interest of US$8,063,614.52 immediately due and payable.

9. According to the Amended Answer to the Complaint dated 10 June 2010, the defences pleaded by Angela in the California Action are: (i) estoppel; (ii) laches; and (ii) discharge.

由此



10. The defence of estoppel is alleged to operate in the following manner. The Note formed part of a series of inter-family arrangements and understandings which were partly written and partly oral between Angela and Mr. Chen, whereby it had been agreed that Mr. Chen would, through gifts to Angela, fund the interest payments and discharge the loan in full. It is alleged that Mr. Chen had sought the help of Angela to acquire rubber plantations and large parcels of farmland for the Chen Family. Angela had used the loan represented by the Note to purchase a ranch in Utah known as "Two Bear Ranch" on behalf of the Chen Family. As part of the arrangement, Mr. Chen agreed, partly in writing and partly orally, to fund the interest payments on the Note through annual gifts made by him to Angela, and to waive the balance of the Note as a gift or to gift an amount of cash equal to the balance to enable her to discharge the balance of the Note. Hostilities had then ensured between Angela and Vivien, and Vivien had exerted improper influence and control over Mr. Chen and interfered with the said arrangements and understandings. Rostack was controlled and directed by Vivien, and through such dominance and control, Vivien interfered with Mr. Chen's gifts to Angela and disabled her from paying the interest and principal on the Note. In the circumstances, Rostack is estopped from enforcing the Note.

11. As to the defence of laches, Angela claims that Rostack and Vivien had deliberately delayed the enforcement of the Note in the knowledge that due to Mr. Chen's declining health, he would no longer be able to control Rostack or to give testimony as to the said arrangements and understandings. Hence, Rostack is barred from enforcing the Note.

由此



12. As to the defence of discharge, Angela claims that the Note should have been discharged since Mr. Chen intended to gift her the outstanding balance of the loan.

13. The trial has been set down to commence on 17 January 2012.

14. On 13 December 2010, Angela issued a Notice of Motion requesting the California Court to issue a letter of request for international judicial assistance to compel Vivien and representatives of Sai Wo to attend an examination and make discovery. Rostack's lawyers in the United States opposed the Notice of Motion primarily on the ground that the evidence sought in the intended Letter of Request was unnecessary and irrelevant to the California Action. In reply, Angela's lawyers in the United States contended that, *inter alia*, Vivien was a relevant and material witness because:

(i) Vivien and other family members have knowledge of the complex arrangements involving the Two Bears property in Utah;

(ii) it is Angela's allegation that individual officers at Rostack and its directors were just low-level functionary employees who served at the pleasure of Vivien and took all their instructions and orders from Vivien or people designated by Vivien to give such orders;

(iii) it is also Angela's allegation that Rostack was the alter-ego of Vivien or Mr. Chen, and so the agreement to discharge the

Note can be laid at the feet of Rostack and enforced against Rostack; and

(iv) the manuscript of Vivien in a document entitled Proposal No. A60297 dated 7 February 2005 ("the Proposal") shows that Vivien knew about the gift made by Mr. Chen to Angela "several years ago".

15. The hearing of the Notice of Motion took place on 15 February 2011. Notwithstanding Rostack's opposition, the California Court granted the Motion.

16. Judge Lavin of the California Court then issued the Letter of Request dated 9 March 2011. A brief summary of the nature of the claim in the California Action and the grounds of defence put forward by Angela is contained in §7(a) of the Letter of Request. In §10, the California Court requested Vivien to provide evidence on matters relating to the California Action including the following:

> *"(i) the formation, negotiation, and/or entering into the alleged $30 million promissory note that forms the basis of Plaintiff's claims in the Foreign Action ('the Note');*
>
> *(ii) the alleged default of the Note; any facts and circumstances, including communications, relating to any agreement or understanding between or among the Defendant, Vivien Chen and/or their father that the Note would be repaid or discharged by their father through gifts to Defendant or otherwise;*
>
> *(iii) Vivien Chen's interest in or control of the Plaintiff;*
>
> *(iv) all allegations of the Complaint and all matters appertaining to Defendant's answer and affirmative defences thereto."*

由此



17. On 4 August 2011, Angela issued the *ex parte* Originating Summons herein which was supported by her 1st Affirmation. The substantive contents of the Affirmation are essentially the matters raised in Angela's pleaded defence and the Notice of Motion in the California Action.

*The mental health proceedings and the alleged material non-disclosure*

18. There were two facts which had not been disclosed to the California Court in the Notice of Motion hearing and to Master Hui in the *ex parte* application ("the Two Facts"):

(i) Mr. Chen has been declared mentally incapacitated by the Hong Kong court since 21 November 2008 and that, since then, Mr. Man Mo Leung of Mazars CPA ("Mr. Man") was appointed as the Committee of the Estate of Mr. Chen and has since been managing and administering the property and affairs of Mr. Chen; and

(ii) Angela had obtained two medical reports on the mental condition of Mr. Chen in April and May 2007 ("the Medical Reports"), which showed that Mr. Chen was by that time at an advanced stage of Dementia and was incapable of managing and administering his property and affairs.

19. Because of these Two Facts, it the Vivien's case that the following allegations of Angela cannot be true:

(i) Vivien sought to enforce or cause Rostack to enforce the Note in 2009;

(ii) Vivien had delayed taking action to enforce the Note until Mr. Chen's health had deteriorated to such a degree that he would not be able to give evidence to support the existence of the family arrangements;

(iii) Rostack and Mr. Chen are currently under the wrongful influence and control of Vivien and she is now directing the California Action against Angela; and

(iv) the current directors of Rostack, Mr. Yu and Madam Au, are merely mid-levels employees who serve at the pleasure of and take instructions and orders from Vivien.

20. The central issue in the present case is, therefore, to what extent the Two Facts and the non-disclosure of the Two Facts affect the question as to whether the Hong Kong court should offer judicial assistance to the California Court under the Letter of Request.

*General principles for compliance with foreign request for evidence*

21. To answer this question, I need to set out the legal principles adopted by the Hong Kong court in dealing with such kind of application.

22. After perusing the authorities referred to me by the parties and *Hong Kong Civil Procedure 2012*, I would try to summarise what I perceive to the relevant legal principles:

(i) s. 75 of the Evidence Ordinance (cap. 8) ("the Ordinance") provides that where an application is made to the Court of First Instance for an order for evidence to be obtained and the court is satisfied that the application is made in pursuance of a request issued by a court in a country or territory outside Hong Kong and that the evidence to which the application relates is to be obtained for the purposes of civil proceedings which either have been instituted before the requesting court or whose institution before that court is contemplated, the Court of First Instance shall have the powers conferred on it by Part VIII of the Ordinance;

(ii) the power of a court in Hong Kong to give effect to an application for international judicial assistance is contained in s. 76 of the Ordinance;

(iii) the Ordinance sets out the circumstances under which the court in Hong Kong would render assistance to a foreign court by ordering the taking of evidence in Hong Kong, and the procedure in respect of applications made for assistance is contained in O. 70 of the RHC;

(iv) the Hong Kong court will ordinarily give effect to such request so far as is proper and practicable and to the extent that is permissible under Hong Kong law. Such principle reflects judicial and international comity and it conforms with the spirit of the Hague Convention and Part VIII of the Ordinance as it conformed with the spirit of the former statutes (see: *Hong Kong Civil Procedure 2012*, at §70/6/2);

(v) in dealing with a request for evidence from a foreign court, the Hong Kong court has first to decide whether it has jurisdiction to make an order to give effect to the request, and secondly, if it has, whether as a matter of discretion it ought to make or refuse to make such an order (see: *Hong Kong Civil Procedure 2012*, at §70/6/2);

(vi) as a matter of discretion, again in the ordinary way, the Hong Kong court should exercise its discretion to make the order asked for unless it is satisfied that the application would be regarded as falling within the description of frivolous, vexatious or an abuse of the process of the court (see: *Hong Kong Civil Procedure 2012*, at §70/6/2);

(vii) the Hong Kong court has power to accept or reject the foreign request in whole or in part, whether as to oral or documentary evidence, and it can and should delete from the foreign request any parts that are excessive either as regards witnesses or as regards documents, which is commonly known as applying a "blue-pencil" (see: *Hong Kong Civil Procedure 2012*, at §70/6/2); and

(viii) it is essentially a matter for the requesting court whether the evidence requested will be relevant and admissible. In the face of a statement in the letter of request that a certain person is a necessary witness, the Hong Kong court should not be astute to examine the issues in the action and the circumstances of the case with excessive particularity for the purpose of determining the question of relevance and

admissibility in advance (see: *Rio Tinto Zinc Corp. v Westinghouse Electric Corp.* [1978] AC 547 at 654 per Lord Keith of Kinkel F-G and *Hong Kong Civil Procedure 2012* at §70/6/16).

23. For third party discovery of documents as opposed to oral testimony, there seems to be some conflicting authorities. Mr. Sussex S.C., senior counsel for Angela, refers me to the Court of Appeal decision of *PrediWave Corp v New World TMT Ltd* [2007] 4 HKC 206, which seems to support the proposition that in assessing the relevancy of the evidence and documents sought, the Hong Kong court should give due weight to the decision made by the foreign court about the relevancy of the evidence and documents. On the other hand, Mr. Ho S.C., senior counsel for Vivien, relies on the decision of Deputy High Court Judge Au, as he then was, in *Primarius Capital LLC v Jayhawk Capital*, unreported, HCMP No 1961 of 2008 (decision on 21 April 2009), and argues that the Hong Kong court should revisit the issue of relevancy of the evidence and documents in considering whether to offer legal assistance to the foreign court.

24. Being a Court of Appeal decision, *PrediWave* is strictly binding on this court. Furthermore, it seems that the decision of Deputy Judge Au in *Primarius Capital* is only limited to support the following propositions: (i) s. 76 of the Ordinance provides a strict approach of the Hong Kong court not to countenance "fishing expedition" recognized locally in the law of discovery as against non-party witnesses; and (ii) for discovery of documents, the applicant must comply with the requirements set out in s. 76(4). In any event, it is not necessary for me to resolve the apparent difference in the approaches as I will elaborate in the decision

below, I share the view of Judge Lavin that the evidence of Vivien is relevant in determining the various issues in the California Action.

*The relevance of the Two Facts*

25. Should the court then set aside the Order because of the revelation of the Two Facts?

26. In my judgment, the Two Facts have nothing to do with the merits of the application. According to §10 of the Letter of Request, Vivien is requested to testify on the four matters mentioned therein, including, *inter alia*: the formation, negotiation and entering into the Note; the alleged default of the Note; any facts and circumstances, including communications, relating to any agreement or understanding between or among Angela, Vivien and their father that the Note would be repaid or discharged by their father through gifts to Angela. In other words, Vivien is asked to provide evidence on a wide range of matters from the time when the Note was made in 1995 up to the present moment. The Two Facts may have some bearing on the validity of Angela's allegations in respect of some matters in the recent years. However, what happened in the early years when the Note was made in 1995 are also crucial matters which have to be investigated by the court in the California Action. Being in the same family, Vivien should be asked to provide evidence about her knowledge, if any, of the alleged gift and family arrangement, and that was one of the very reasons why the California Court issued the Letter of Request. Although Vivien denies any personal knowledge of these matters, it is a question to be determined by the California Court.

27. Further, Angela is relying on the Proposal which contains the following manuscript of Vivien:

> *"It is totally up to [Mr. Chen] to gift [Angela] additional 30 million US dollars, [Vivien] will not oppose it. Especially [Angela] said [Mr. Chen] agreed to give to her several years ago."*

28. According to Angela, such manuscript shows that Vivien knew about the gift arrangement. Vivien disputes that and offers some explanations as to why she wrote those words in the Proposal. Again, such matter should be properly investigated by the California Court and Vivien's evidence would be crucial for the court to make the correct decision in this regard.

29. On the face of it, the Two Facts may weaken some of the allegations of Angela made in the California Action, for example, whether Vivien had exerted control over Rostack in commencing the California Action in 2009 or whether Vivien had caused any delay in the enforcement of the Note. Despite that, Angela is able to produce a letter from Mr. Man's solicitors dated 17 October 2011, which indicates that Mr. Man has not exercised any day-to-day management control of Rostack or its affairs including the prosecution and conduct of the California Action. Angela claims that as the directors of Rostack, Mr. Yu and Madam Au, are just mid-level employees in the Nan Fung Group, it is still possible for Vivien to have exerted control over Rostack in respect of the conduct of the California Action. Again it would be a matter for investigation by the California Court.

30. If the court were to decline to offer judicial assistance, there may be serious miscarriage of justice as the California Court would be

deprived of the opportunity of considering the evidence of a potentially very important witness, Vivien, who had close connection with Mr. Chen and Angela within the family at least in the early years. Without such opportunity, the California Court would only have a limited view of the evidence, making it more difficult to arrive at the correct decision about the merits of the claim. Such possible miscarriage of justice is a real concern of the Hong Kong court. Further, as Mr. Chen is now incapable of testifying in the California Court by reason of his health condition, I would imagine that the evidence of Vivien would become more important in the California Action.

31. On the other hand, there is no real prejudice to Vivien. The order is, in substance, only a *subpoena* issued by a foreign court. When testifying before the Examiner, Vivien has every opportunity to put forward her case and evidence before the California Court for consideration, and I would not regard it as an invasion of her right or privacy by ordering her to testify before the Examiner. Neither can Angela's application be regarded as frivolous, vexatious or an abuse of the process of the court. There is also no suggestion that the evidence or documents required of Vivien to disclose under the Letter of Request are excessive such that the court should apply a "blue-pencil". Hence, even with the revelation of the Two Facts, the Hong Kong court should still offer legal assistance to the California Court to give effect to the Letter of Request.

*Material non-disclosure?*

32. The next question I have to consider is whether the Hong Kong court should decline to offer assistance because Angela had failed to

disclose the Two Facts in the Notice of Motion hearing before Judge Lavin and in the O. 70 application before Master Hui.

*(i) The Notice of Motion hearing in the California Court*

33. Though Vivien was not a party, the Notice of Motion hearing before Judge Lavin was, nonetheless, an *inter parte* hearing. In such case, I doubt whether the duty of full and frank disclosure applied.

34. In respect of the Mental Heath proceedings of Mr. Chen in 2008, the Hong Kong court had made a confidentiality order prohibiting the publication of the proceedings. The confidentiality order was subsequently relaxed but the order was still binding on the parties at the time of the hearing before Judge Lavin. Despite that, both Angela and Rostack were aware of the Two Facts at that time, and yet neither of the parties considered the Two Facts to be relevant to seek the leave from the Hong Kong court to disclose or rely upon the same in the California Court.

35. This was not surprising as the Two Facts were not relevant to the consideration of the application before the California Court. According to Vivien, the Two Facts were relevant because it would destroy some of the allegations of Angela in the California Action, including Vivien was still controlling Rostack and she had delayed the enforcement of the Note. However, all of these assertions, which are clearly disputed by Angela, would go to the merits and creditability of Angela's defence in the California Action. These are clearly issues for the trial in the California Court.

36. Further, as Vivien is expected to provide evidence on a wide range of matters from 1995 up to the present moment, it would not be necessary for Angela to disclose facts or evidence which may affect the credibility of some of Angela's allegations relating to events only in the recent years. Hence, in my judgment, the Two Facts were quite irrelevant as to whether Vivien should be asked to testify on the specified matters before the Examiner in Hong Kong.

37. I also do not accept that Angela had been acting *mala fides* or trying to exert improper pressure on Vivien by not disclosing the Two Facts in the California Action. The Two Facts were clearly known to the parties of the California Action by that time. Furthermore, Vivien would have every opportunity of putting forward her case and evidence when testifying before the Examiner, and the trial judge would certainly be aware of the Two Facts when he or she is considering the merits of the claim. Hence, there was no point for Angela to withhold the Two Facts with a view to obtain an unfair advantage in the California Action.

38. In his supplemental submissions, Mr. Ho S.C. submits that as it is uncertain as to how the California Court would react to the non-disclosure of the Two Facts in the Notice of Motion hearing, the proper procedure to follow is to discharge the *ex parte* order and to direct Angela to reapply to the California Court again by making full disclosure of the materials. Such approach, says Mr. Ho S.C., is consistent with what is suggested in §70/6/2 of *Hong Kong Civil Procedure 2012*, where it is stated that: "[if] there is any doubt about the matter, the Hong Kong Court may allow the parties to refer back to the foreign court or judge who issued the request for evidence (see: *American Express Warehousing Ltd v Doe* [1967] 1 Lloyd's Rep. 222)."

39. With respect, I see no merit in such suggestion. The terms of the Letter of Request are clear. The California Court requests Vivien to testify on a wide range of matters covering a considerable period of time. As mentioned above, the non-disclosure of the Two Facts should have no practical effect on the decision as to whether Vivien should be ordered to testify before an Examiner, and I consider it a waste of time and costs to request Angela to make a fresh application to the California Court. If Vivien feels aggrieved with the Order, which is, in effect, no more than a *subpoena* that is issued by a foreign court, the proper procedure is for her to make an application as she thinks fit to the California Court to set aside the Letter of Request. As the Letter of Request is still a valid one, the Hong Kong court should give effect to such request.

*(ii) The ex parte application before Master Hui*

40. The application before Master Hui was an *ex parte* one, and so the duty of full and frank disclosure applied. However, even if there was initial non-disclosure, it remains a matter of discretion whether to set aside the order or not. Provided any non-disclosure was not deliberate and the matter undisclosed was not seriously prejudicial, the usual approach should be to exercise the discretion in favour of the requesting court (see: *Re Troielli* [1995] 2 HKC 785, *per* Barnett J at 796I-797A, *Re New World TMT Ltd & Others* [2006] HKEC 1598 at §82 and *Hong Kong Civil Procedure 2012* at §70/6/16).

41. According to the Letter of Request, Vivien is expected to give evidence on a wide range of matters and her evidence is crucial for the California Court to understand what happened when the Note was made in 1995 and the subsequent developments. As the Two Facts would, at most,

由此



affect the creditability of Angela's allegations relating to some events in the recent years, they were quite irrelevant for purpose of the application before Master Hui. As mentioned above, in the face of a statement in the letter of request that a certain person is a necessary witness, the Hong Kong court should not be astute to examine the issues in the action and the circumstances of the case with excessive particularity for the purpose of determining the question of relevance and admissibility in advance. Hence, I do not find that Angela had failed in the duty of full and frank disclosure in the *ex parte* application.

42. Even if I am wrong on such particular issue, there are strong reasons for the court not to aside the Order. I take note of the judgment of A. Cheung J, as he then was, in the case of *Kan Hung Cheung v The Director of Immigration*, unreported, HCAL 74/2007 (decision on 13 February 2008) referred to me by Mr. Ho S.C., where the learned judge stated that the jurisdiction to set aside *ex parte* order for material non-disclosure is a disciplinary, indeed penal, jurisdiction, quite irrespective of the merits of the application. Nevertheless, assuming that Angela had failed in her duty of full and frank disclosure in the *ex parte* application (which I do not accept it to be the case), the discharge of the Order would virtually mean that the California Court would be deprived of the opportunity of considering the evidence of a potentially very important witness, Vivien, and there may be serious miscarriage of justice as the California Court would only have a limited view of the evidence. As Angela was not trying to exert improper pressure on Vivien to testify before the Examiner and the non-disclosure of the Two Facts was not seriously prejudicial, the Hong Kong court should give effect to the Letter of Request.

43. Based on the aforesaid, I exercise the discretion to offer judicial assistance to the California Court pursuant to the Letter of Request and dismiss Vivien's application to set aside the Order. I also make an order *nisi* that Vivien do pay to Angela the costs of the summons dated 28 September 2011 to be taxed if not agreed with certificate for two counsel. The order *nisi* shall be made absolute 14 days after the date of the handing down of this Decision.

44. I am grateful to counsel for all the assistance that they have provided to this court.

(David Lok)
Deputy High Court Judge

Mr. Charles Sussex S.C. and Mr. Douglas Lam, instructed by Messrs. DLA Piper Hong Kong, for the Plaintiff

Mr. Ambrose Ho S.C. and Mr. Victor Dawes, instructed by Messrs. Mayer Brown JSM, for the 1st Defendant