Case 22-50073    Doc 1409-16    Filed 01/30/23    Entered 01/30/23 10:03:34    Page 13

| | Re Troielli and the Prosecutor's Office at the Ordinary Court of | |
|---|---|---|
| **[1995] 2 HKC** | Milan, Italy (Barnett J) | **785** |

**A**  **RE TROIELLI & ANOR AND THE PROSECUTOR'S OFFICE AT THE ORDINARY COURT OF MILAN, ITALY**

HIGH COURT – MISCELLANEOUS PROCEEDINGS NO 620 OF 1994
BARNETT J
26–28 JUNE, 14 JULY 1995

**B**

**Evidence – Letter of request – Jurisdiction – Whether foreign requesting party a court or tribunal – Meaning of 'court' – Magistrate in Italy performing role as investigator and prosecutor not a court or tribunal under Hong Kong law – Evidence Ordinance (Cap 8) s 75**

**C**

**Words and Phrases – 'Court' – Evidence Ordinance (Cap 8) s 75**

Under a letter of request by the 'Prosecutor's Office at the Ordinary Court of Milan', an ex parte order was made by a master requiring that the duly authorised officer of A Ltd be examined in relation to specific matters. By a summons, A

**D** Ltd, joined by T (the applicants), applied to set aside the order on the grounds that the master lacked jurisdiction, that there was material misdirection or non-disclosure when the ex parte application was heard and that the order provided for general discovery.

In relation to the jurisdiction point, the applicant submitted that in order to

**E** assume jurisdiction, the court must be satisfied that the request must be by or on behalf of a court or tribunal, that the evidence sought must be for the purposes of criminal proceedings which had been instituted or whose institution was likely before the requesting court if the evidence was obtained and that the criminal proceedings were not of a political character. Moreover, there was a residual discretion under s 76(1) of the Evidence Ordinance (Cap 8) (the Ordinance) to

**F** refuse an order in appropriate circumstances.

**Held, setting aside the order:**
(1) Jurisdiction to give effect to a letter of request from a court or tribunal in another country was conferred on the High Court by Pt VIII of the Ordinance. The

**G** fact that a requesting party considered that it fell within the definition of court or tribunal could not confer jurisdiction on a Hong Kong court if the requesting party was not a court within s 75 of the Ordinance according to Hong Kong Law. *Re State of Norway's Application* [1987] 1 QB 433 and *Re Binoy & Court of the Special Judge Delhi, India* [1995] 1 HKC 305 considered (at 787D, 793G).

(2) Part VIII of the Ordinance plainly contemplated the situation where an

**H** organ of the foreign judicial authority was seized of and in control of proceedings in which it would ultimately determine the rights between the parties to those proceedings or the guilt of an accused person. Fishing or mere investigation was not permissible. It was therefore difficult to see how a purely investigatory authority could be a court. *Re State of Norway's Application* [1987] 1 QB 433 and

**I** *Rio Tinto Zinc Corp & Ors v Westinghouse Electric Corp* [1978] AC 547 applied (at 793H-794A).

(3) Although a magistrate in Italy acting as public prosecutor fell within the judicial umbrella according to Italian law, it was clear that he had a distinct and

**A** separate role as investigator and prosecutor. Such a magistrate performing the function of public prosecutor under Italian law was not a court or tribunal within s 75 (at 794B, 795H).

(4) The court, in the interests of international comity, should strive to give effect to a letter of request if at all possible. The letter should stand or fall on its own. The function of the Crown Solicitor was little more than that of a conduit for **B** placing the letter before the court although he would help to ensure that there was no glaring omission or error in the letter (at 796G-H).

(5) If objection was taken to the letter or an order made on it, it was permissible to look at any material then provided to see whether jurisdiction exists. Even if there was initial non-disclosure, it remained a matter of discretion whether to set aside the order or not (at 796H-I). **C**

(6) Provided any non-disclosure was not deliberate and the matter undisclosed was not seriously prejudicial, the usual approach should be to exercise discretion in favour of the requesting court (at 796I-797A).

**Cases referred to**
**D**
*Binoy & Court of the Special Judge Delhi, India, Re* [1995] 1 HKC 305
*Crown Solicitor v Datuk Dr Jeffrey Kitingan* [1994] 1 HKC 516
*Extradition Act 1870, Re* [19691 1 WLR 12
*State of Norway's Application, Re* [1987] 1 QB 433
*Rio Tinto Zinc Corp & Ors v Westinghouse Electric Corp* [1978] AC 547
*Schtraks v Government of Israel & Ors* [1964] AC 557 **E**

**Legislation referred to**
Evidence Ordinance (Cap 8) ss 75, 76
Rules of the Supreme Court (Cap 4) O 41 r 5(2), O 70
Criminal Justice (International Co-operation) Act 1990 [UK]
Evidence (Proceedings in Other Jurisdiction) Act 1975 [UK] **F**

**Other sources referred to**
European Convention on Mutual Assistance in Criminal Matters

**Application** **G**
This was an application to set aside an ex parte order made under O 70 of the Rules of the Supreme Court pursuant to various letters of request made by the Public Prosecutor's Office at the Ordinary Court of Milan, Italy. The facts appear sufficiently in the following judgment.

**H**
*Barrie Barlow (Wilkinson & Grist) for the first applicant.*
*Raymond Faulkner (Haldanes) for the second applicant.*
*Geoffrey Ma QC & Paul Shieh (Crown Solicitor) for the respondent.*

**Barnett J:** On 29 April 1994, a master gave effect to letters of request which, in the order made ex parte, are recited as 'of the Court of Milan'. **I** The order required that among others Acceptor Corp Ltd (Acceptor) by its duly authorised officer be examined in relation to specified matters.

A  By summons dated 10 May 1994, Acceptor applied to set aside the order. By summons dated 16 June 1994 one Gianfranco Troielli applied to be added as a party and to have the order set aside. These two summonses are now before me.

Mr Troielli's application to be joined was not opposed. That part of the
B  application I granted.

The substantive part of the applications by Acceptor and Mr Troielli (the applicants) falls into three parts:

1. The master lacked jurisdiction.
2. There was material misdirection or non-disclosure when the ex parte
C    application was made.
3. Paragraphs 3(a), 4(a) and 5 of the order provided for general discovery.

*Jurisdiction*

D  Jurisdiction to give effect to a letter of request from a court or tribunal in another country is conferred on the High Court by Pt VIII of the Evidence Ordinance (Cap 8) (the Ordinance).

Mr Barlow who appeared for Mr Troielli and Mr Faulkner who represented Acceptor submitted that in order to assume jurisdiction the High Court must be satisfied of three matters:
E
1. The request must be made by or on behalf of a court or tribunal.
2. The evidence sought must be for the purposes of criminal proceedings which have been instituted or whose institution is likely before the requesting court if the evidence is obtained.
F  3. The criminal proceedings are not of a political character.

Assuming that jurisdiction has been established it was also submitted that under s 76(1) of the Ordinance a residual discretion is conferred on the High Court to refuse an order in appropriate circumstances.

Mr Ma QC appeared for the Crown Solicitor who made the application
G  for the order pursuant to O 70 on behalf of the requesting authority in Italy. Mr Ma did not, as I understood him, dissent from any of the three jurisdictional points made by the applicants. He contested, however, the applicants' arguments that the request failed on all three points.

H  *The letters of request*

The request is contained in five documents or letters and numerous attachments. The first letter dated 7 June 1993 is headed 'Prosecutor's Office at Ordinary Court of Milan' and was signed by 'The Assistant Public Prosecutor Dott Antonio Di Pietro'. The letter reads at least in part:

I
    Subject: Demand for Judicial help in criminal matter in the criminal proceeding n 8655/92 mod 21 against <u>PACINI BATTAGLIA Pierfrancesco</u> and others. (Account 567.159140 - 201).

This Prosecutor's Office, Judicial Authority of Italian Repubblic, as an international courtesy and with assurance of reciprocity, is proceeding within an extensive investigation concerning crimes against Pubblic Administration also with respect to PACINI BATTAGLIA Pierfrancesco (of Italian nationality) born in Bientina on February 21st 1934 for the crimes of abetment in aggravated extortion and/or bribery and illicit financing of political parties.

In particular, at present the above mentioned is subjected to the investigations as he has paid, directly or indirectly, in some Banks of Hong Kong large sums of money to public officers and to Italian political representatives.

In this framework it's necessary to acquire the whole documentation concerning the current account used by the above mentioned to transfer large sums of money so abstracted.

It's likewise necessary to order the attachment of the sums paid on the mentioned current account, as well as on those to which the very sums result to have been in case transferred afterwards.

PACINI BATTAGLIA Pierfrancesco has been interrogated before the Pubblic Prosecutor; on this occasion he has delivered the ample statements attached to this letter. From them we infer that above mentioned payments on current accounts have been made on the following current account:

Current account n 567159140-201 open in the name of TASH KURGHAN COMPANY LTD of HONG KONG in BANK SHANGAY BANKING CORPORATION of HONG KONG.

The letter then went on to indicate the information being sought, which was certainly far more than this court would be prepared to contemplate, and wound up in a somewhat florid and general vein. It left a great deal to be desired.

A second letter, which clarified the name of the bank, was issued by Dr Di Pietro who signed as 'Solicitor General' on 25 August 1993. This letter referred to criminal proceedings against 'Ferranti Enrico and others'.

A third letter dated 7 January 1994 was issued by 'Milano District Attorney Dr A Di Pietro-Asstnt' and was headed 'Office of the District Attorney c/o Milano Ordinary Court'. This letter plainly attempted to grapple with some of the defects which had no doubt been drawn to Dr Di Pietro's attention by the Crown Solicitor. After asking for judicial assistance in respect of the two men who had been specifically named in the earlier letters, it went on:

In summary, this Office has informed the HONG KONG counterpart that proceedings were being instituted against PACINI BATTAGLIA Pierfrancesco (born at Bienfina on Feb 21st, 1934) and others (including FERRANTI Enrico, born in Rome on Aug 26th, 1944) for the crimes of concurrence in aggravated corruption and illegal financing of political parties.

On this subject we are dispatching a copy of the records of questioning of PACINI BATTAGLIA on June 4th 1993 (Att 3) and of July 19th 1993 (Att 4),

A    as well as a copy of the same document sent by PACINI BATTAGLIA defending counsel Mr Giuseppe LUCIBELLO (Att 5).

It was inferred from all above documents (and is still our belief) that PACINI BATTAGLIA, around Nov 9th 1990 has made a US$880.000 payment into the account no 567-159140-201 at the HONG KONG AND SHANGHAI BANKING CORPORATION (1, Queen's Road Central Hong Kong) in favour of TASH KURGHAN COMPANY LIMITED of Hong Kong.

The scope of the request is the identification by name and personal full particulars of the account holder and of any other person who may have used the abovesaid account and of any other account into which these sums of money might have been transferred, and the sequestration of any available residual amount.

First of all, we wish to clarify that the District Attorney Office c/o Milano Ordinary Court, like all other Italian Republic District Attorneys is, for all intents and purposes, a judiciary Authority before the Italian and the International Low (see art 24 of the European Agreement on Judicial Assistance signed at Strasbourg on Apr 20th, 1959).

The investigation on PACINI BATTAGLIA, which began some time ago, is now practically completed and has become a formal criminal proceedings, registered in the Notice of Crimes Registrar under no 8655/92.

Such Registrar is the official document for the purpose of identification of criminal proceedings, as per art 355 of the Criminal Procedure Code (see Att 8). A statement of the Registrar Officer, stating that criminal proceedings against PACINI and FERRANTI are in course is also produced (Att 9).

It can be seen immediately that Dr Di Pietro was attempting to deal with the first two requirements of the Ordinance.

The same letter went on to explain in detail the case against Battaglia and Ferranti and other named persons arising out of the cheating of a company ENI to the benefit of another company called Montedison. It continued:

This behaviour caused a financial damage to ENI in the way of lost interests and a personal profit of 10.5 Million US$ to Montedison executives. FERRANTI took care of the operation, through PACINI BATTAGLIA and the false invoice ALLIED ENGINEERING; PACINI BATTAGLIA, FERRANTI, CAGLIARI GAROFANO, SAMA and GARDINI have therefore concurrently committed the crime of corruption, a violation of arts 312 and 321 of Criminal Code (Att 19).

These are crimes against the Public Administration, certainly not of a political nature.

PACINI BATTAGLIA, once received the abovesaid sum, took care of its distribution to various persons in several accounts, as instructed by BALZAMO (see records of PACINI questioning of July 19th 1993, Att 4).

> In more detail, for the scope of this request, BALZAMO instructed PACINI BATTAGLIA to transfer the 880.000 US$ into the bank account n°567-159140-201 at the HONG KONG AND SHANGHAI BANKING CORPORATION to the credit of TASH KURGHAN COMPANY LIMITED of HONG KONG.

> It seems therefore necessary to uncover the account holder identity, as well as that of all others who may have used that or other accounts where the money might have been subsequently transferred. It seems further necessary to proceed and sequestrate whatever amount may still be found, as an income generated through a crime.

> Information from the holder is required so that he may explain on whose behalf the operations have been carried out. All the above being stated, the following specific requests are made, in compliance with your request for clarification ref AGC MIS 440/93 of Aug 3rd 1993. We trust that you will satisfy them as an international courtesy, with our commitment of reciprocity.

Inter alia, the letter is there grappling with the third requirement of the Ordinance.

In the letter there followed requests seeking documents and the questioning of representatives of the company Tash Kurghan and of the bank in relation to the bank account. The letter then continued:

> These documents and the information requested above are directly related to the proceedings indicated in the opening remarks. It is believed that, following this course of action, it may be possible to find out who received the money arising from the corruption and the falsification of Company's accounting brought about by FERRANTI, GAROFANO, PACINI BATTAGLIA and others. This hitherto unknown beneficiary will be held responsible under Italian law for concurrence in the above crimes and/or for handling of stolen property (see Att 20).

> None of these crimes bears any political connotation.

> The writing Judicial Authority is not opposed to the use of the information given for the purpose of justice by the answering Authority.

> This office is committed to refrain from using any received information or documentation for purposes other than those indicated above.

> On a courtesy basis it is asked, if at all possible, that the Assistant District Attorney Dr Antonio DI PETRO be present during the questioning of witnesses.

It is perhaps hardly surprising that the applicants complain that the request is all part of an ongoing criminal investigation rather than criminal proceedings as would be understood in Hong Kong.

A fourth letter was dated 17 January 1994; it was entitled 'District Attorney's Office at the Ordinary Court of Milan' and signed 'The District Attorney's Office Dott Antonio Di Pietro — Substitute —'.

**A**  This letter disclosed that one Agostino Ruju had been detained under the Italian Code of Criminal Procedure (the Code) and under interrogation confessed that, through Acceptor, he had set up a number of companies in Hong Kong for Mr Troielli to enable Mr Troielli to receive what he understood to be commissions. The letter therefore sought to widen the
**B**  request to include the questioning of Acceptor generally in relation to such companies and in particular in relation to seven named companies including Tash Kurghan.

Finally, the Crown Solicitor received a letter dated 1 February 1994 making a number of small corrections to the previous letter. It was signed
**C**  'The Attorney General of the Republic/S/Dr Antonio Di Pietro (Assistant)' and was chopped with the stamp of 'The Attorney General's Office in the Milan Ordinary Court'.

The letters themselves were relatively short running to about 24 pages. They were accompanied, however, by over 100 pages of transcripts of
**D**  interrogations of various persons under investigation by Dr Di Pietro's office and other documents. Altogether it was a pretty indigestible mass of material. It is not clear whether the master attempted to deal with the material on her own or whether the Crown Solicitor was asked to appear in support of the application. At all events the master plainly satisfied
**E**  herself that the three requirements of the Ordinance had been met and made the order. Given the passages in the letters dealing with these requirements and given the assertions to like effect in the supporting affidavit, the master's order is hardly surprising. The contention is, however, that the master was wrong in assuming jurisdiction.

**F**  Available to me but not to the master are affidavits of Italian law from a number of eminent Italian jurists and lawyers. There is really little dispute between them. I see no point therefore in analysing their affidavits in detail. For the purposes of this application it is enough to paint in the consensual picture.

**G**  Under the constitution of the Italian Republic there is established 'The Judiciary'. It is composed of magistrates who are assigned by the Superior Council of the Judiciary to act as judges (in the sense that we understand that word) or as prosecutors under the Pubblico Ministero who has the 'obligation to conduct criminal proceedings'. The judiciary has control over the criminal police. The judiciary is autonomous and independent.

**H**  The Code prescribes the manner in which the judiciary shall discharge its functions and confers various powers on it. The Code, which came into effect in 1989, provides for an accusatorial (again as we understand this word) procedure at trial as opposed to the previous inquisitorial nature of the proceedings.

**I**  Upon complaint being made of a criminal offence, a prosecutor makes a formal entry in the Register prescribed by the Code and opens a file. With the help of the police, he assembles material/evidence pointing to the

guilt or otherwise of the person or persons under investigation. When the prosecutor has completed his investigation or upon expiry of the relevant time limit imposed by the Code, he will submit his file to a judge of preliminary investigation (JPI). In so far as it is possible to make comparisons, the JPI would appear akin to a magistrate in Hong Kong hearing committal proceedings. The JPI can commit for trial before a judge; close or terminate the case; or deal summarily with the offender and impose a penalty. The latter course seems to involve a combination of plea bargaining and a plea of guilty.

Up to this point a judge of trial has no part to play. The conduct of the proceedings is entirely in the hands of the prosecutor who has, amongst his powers, power to issue letters rogatory to foreign jurisdictions.

If a person is committed for trial, a file is prepared for the trial judge. This file is selective and by no means contains all of the material/evidence in the prosecutor's file. I was referred to various sections of the Code but, perhaps because of difficulties of translation, it is not clear exactly what is put in the file for the judge. What is clear, however, is that the trial judge can determine what will be used in evidence (in the sense that we understand that word) and has powers to issue letters rogatory to foreign jurisdictions. Otherwise, it appears that the trial is conducted very much along the lines of a criminal trial in Hong Kong.

One issue that divided the expert is 'proceedings'. Mr Piercamillo Davigo, who has succeeded Dr Di Pietro as Deputy Public Prosecutor and assumed responsibility for this case, and who has served as both judge and magistrate, deposed that in the Code:

> the word 'proceedings' (procedimento) includes the preliminary investigations stage as well as the trial stage, whilst the latter by itself is referred to as 'trial' (processo). 'Criminal proceedings' begin when the public prosecutor receives notification that a crime has been committed and continue throughout the investigation until the case is at an end.

Mr Nicola Mazzacuva, who has an impressive record both in the judiciary and in academia, disagreed with Mr Davigo. He deposed:

> In the most authoritative commentaries to the CCP the terms 'proceedings' (procedimento) and 'trial' (processo) have completely different meanings. The proceedings phase is characterised by the partisan activity of the public prosecutor's office in charge of the investigation whereas the trial phase is characterised by the intervention of the court. In my opinion, there is a precise technical-legal distinction between the proceedings and the trial proper which reflects the accusatory nature of the CCP which gives predominant weight to a hearing in open court.

Mr Mazzacuva disappointingly did not cite the commentaries he mentioned. Despite the fluency and clarity of his affidavit, I am unable to accept his view. Having regard to art 112 of the Constitution, which imposes an

A  obligation on the Pubblico Ministero 'to conduct criminal proceedings', and the procedure for dealing with criminal cases that I have outlined, I find that as a matter of Italian law criminal proceedings commence with the registration of a complaint and end either when the JPI refuses to commit or declines to deal with the case summarily, or when a trial
B  concludes.

Although criminal proceedings were undoubtedly on foot in Italy, the applicants' primary argument is that the request did not come from 'a court or tribunal'. They submitted that s 75 of the Ordinance must be interpreted according to Hong Kong law and that these words should be
C  accorded the meaning that Hong Kong law plainly calls for, that is, an organ dealing with the trial process.

Mr Ma argued that s 75 should be given a broad construction and 'court or tribunal' interpreted as 'the judiciary or judicial authorities' of another country. That will enable s 75 to embrace a system such as that to be found
D  in Italy. Judicial comity requires that the Hong Kong courts should entertain letters of request from the judiciary of other countries.

That being so, Mr Ma said that under Italian law magistrates performing the function of a public prosecutor come under the judicial umbrella. They are involved in criminal proceedings from start to finish, which includes
E  the trial stage. When issuing letters, as they are empowered to do, magistrates are carrying out the functions of the judiciary. Magistrates are therefore a court or tribunal as widely construed or at least are acting on behalf of the Italian courts.

There is no direct authority on this point. In *Re State of Norway's*
F  *Application* [1987] 1 QB 433 the Court of Appeal decided that in order to determine whether proceedings in a foreign court are proceedings in a civil matter, the requested court should first consider whether they are civil proceedings by the law of the requesting court and, if so, accept that categorisation and jurisdiction if it is not in conflict with any fundamental principle of its own law. Such an approach appears to have been adopted
G  by Sears J in his judgment in *Re Binoy & Court of the Special Judge Delhi, India* [1995] 1 HKC 305.

The tail cannot, of course, be allowed to wag the dog. That the requesting party considers that it falls within the definition of court or tribunal cannot confer jurisdiction on a Hong Kong court if the requesting party is not a
H  court within the meaning of s 75 according to Hong Kong law.

I am unable to accept Mr Ma's submission. In my judgment, Pt VIII of the Ordinance plainly contemplates the situation where an organ of the foreign judicial authority is seized of and in control of proceedings in which it will ultimately determine the rights between the parties to those
I  proceedings or the guilt of an accused person. That, I think, is demonstrated by the nature and extent of orders that may be made under s 76. Further, all the leading authorities such as *Norway* and *Rio Tinto Zinc Corp & Ors*

*v Westinghouse Electric Corp* [1978] AC 547 are clear that fishing or mere investigation is not permissible. It is therefore difficult to see how a purely investigatory authority can be a court.

In the latter case, the House of Lords had no difficulty in deciding that a United States grand jury was not a court. That decision must be applied with some caution however in view of the wholly exceptional facts of that case.

In the present case, although a magistrate in Italy acting as public prosecutor falls within the judicial umbrella according to Italian law, it is clear that he has a distinct and separate role as investigator and prosecutor.

If Mr Ma is right in his contention, it would have been easy for the legislature to have used an expression such as 'judicial authorities' in s 75. That the legislature chose not to do so but to use words which have a well-known and restricted meaning in our jurisdiction militates against Mr Ma's argument.

In fact, wider words have been used elsewhere. The third letter of request refers to the 'European Agreement on Judicial Assistance' signed at Strasbourg in 1959. The correct title is in fact the 'European Convention on Mutual Assistance in Criminal Matters' (the Convention). This was picked up by Professor Mario Pisani who made an affidavit on behalf of Dr Di Pietro. (Two translations were made of this affidavit. It is still difficult to follow.) In para 3 Professor Pisani said:

> *During the phase of preliminary investigation*, and that is when the (possible) prospect of judgment has not yet matured, there still are no judges, nor any magistrates called upon to make a decision with regard to the charge.
>
> Therefore, during this phase, *the pubblico ministero's office is the only one that may set in action any international rogatory commission*, it should be noted, with the intention of gathering the necessary elements for the preparation of the charge.
>
> *The Italian proceedings in which the rogatory commission in question may be included is precisely during the phase of preliminary investigation.*
>
> f) The (Italian CCP) provision according to which, besides courts and tribunals with criminal jurisdiction authority, each 'prosecuting authority' (and moreover only the authorities assimilated thereto) is also lawfully authorized to request rogatory commissions overseas, finds a very significant parallel, even at historical level, in the recent provisions of the Criminal Justice (International Co-operation) Act of 1990, which, in art 4 (see Annexure No 4) regulates the 'United Kingdom evidence for use overseas'.

I note that there Professor Pisani seems to be drawing a clear distinction between courts and tribunals and an investigating authority such as a magistrate discharging the function of public prosecutor.

The Convention refers expressly to 'judicial authorities'. Article 15 provides, inter alia:

**A**

4. Requests for mutual assistance, other than those provided for in paras 1 and 3 of this article and, in particular, requests for investigation preliminary to prosecution, may be communicated directly between the judicial authorities.

5. In cases where direct transmission is permitted under this Convention, it may take place through the International Criminal Police Organisation (Interpol).

**B**

Article 24 provides:

**Article 24**

**C**
A Contracting Party may, when signing the Convention or depositing its instrument of ratification or accession, by a declaration addressed to the Secretary General of the Council of Europe, define what authorities it will, for the purpose of the Convention, deem judicial authorities.

**D**
Both Italy and UK are parties to the Convention. To give effect to the Convention, UK at least would have to pass domestic legislation. I have not been referred to any such legislation but it seems likely that wide wording to accord with the Convention would be required. Wider wording was used in the Criminal Justice (International Co-operation) Act 1990 where, in relation to obtaining in UK evidence for use overseas, s 4 reads:

**E**
4(1) This section has effect where the Secretary of State receives —

(a) from a court or tribunal exercising criminal jurisdiction in a country or territory outside the United Kingdom or a *prosecuting authority* in such a country or territory; or

**F**
(b) from any other authority in such a country or territory which appears to him to have the function of making requests of the kind to which this section applies,

a request for assistance in obtaining evidence in the United Kingdom in connection with criminal proceedings that have been instituted, or a *criminal investigation* that is being carried on, in that country or territory. (My emphasis.)

**G**
The Ordinance is of course derived from the Evidence (Proceedings in Other Jurisdictions) Act 1975. Plainly, UK deemed the 1975 Act not wide enough to embrace what appears to be a more liberal approach to assisting other countries in criminal investigation. There is no reason to believe that the Ordinance should be construed differently.

**H**
It is clear to me that, whatever title or label he may have, a magistrate performing the function of public prosecutor under Italian law is not a court or tribunal within the meaning of s 75.

I also reject Mr Ma's submission that the magistrate's request was made 'on behalf of a court or tribunal'. There were interesting arguments as to whether the public prosecutor was seeking evidence in the sense that it is used in the trial process or mere material as part of his investigatory function. Article 431 of the Code provides that the file for trial will contain, inter alia:

**I**

 The minutes of the deeds obtained in the probatory objection … and of those acquired abroad in consequence of a rogatory commission. **A**

The product of a letter of request may therefore certainly be evidence. Whether it is obtained by or on behalf of a court depends upon the facts as found. I find the facts to be that Dr Di Pietro as public prosecutor made the request in his own right and not on behalf of a court. **B**

 It follows that this court does not have jurisdiction to entertain the letter of request. Accordingly the order of the master is set aside.

 In the circumstances, I deal only briefly with other grounds advanced by the applicants as to why the order should be set aside. All but one can, I think, be dealt with together. The applicants said that the affidavit by an **C** officer of the Crown Solicitor is defective because it contains statements of information and belief which are inadmissible either because these are not interlocutory proceedings or because the sources have not been disclosed: O 41 r 5(2). Therefore, the affidavit did no more than exhibit the letters of request which is insufficient for the purposes of O 70. **D**

 Next, the applicants maintained that the material placed before the court did not and could not help the Crown Solicitor because, this being an application to set aside an order made ex parte, it is necessary to look at the material which was before the master to see whether she was properly satisfied that she had jurisdiction. **E**

 Then they said that Dr Di Pieto failed to disclose the nature and state of the proceedings, and that the 'clean hands campaign' as these proceedings have been called, has led to political uproar in Italy so that it is arguable that the proceedings are of a political character.

 In *Westinghouse*, Lord Keith of Kinkel said at p 654: **F**

In the face of a statement in letters rogatory that a certain person is a necessary witness for the applicant, I am of opinion that the court of request should not be astute to examine the issues in the action and the circumstances of the case with excessive particularity for the purpose of determining in advance whether the evidence of that person will be relevant and admissible. **G**

In my judgment, that principle should apply to the overall approach by this court to a letter of request. This court in the interests of international comity should strive to give effect to a letter of request if at all possible. The letter should stand or fall on its own. The function of the Crown Solicitor is little more than that of a conduit for placing the letter before **H** this court although plainly he will help, as in this case, to ensure that there is no glaring omission or error in the letter. If objection is subsequently taken to the letter or order made on it, it is in my view permissible to look at any material then provided to see whether jurisdiction exists. Even if there was initial non-disclosure (which in my view there was not in this **I** case) it remains a matter of discretion whether to set aside the order or not. Provided any non-disclosure was not deliberate and the matter undisclosed

**A** was not seriously prejudicial, the usual approach should be to exercise discretion in favour of the requesting court.

The question then remaining was whether the proceedings are of a political character. There has been immense political debate and upheaval in Italy as a result of this campaign. Two governments have fallen. Because

**B** politicians exclusively are being targeted by the campaign, it is contended that the proceedings are political. Absent, however, a motive on the part of the prosecutor other than to see justice done, I do not see that on the authorities the proceedings here were political in character. There is no real evidence that Dr Di Pietro, his assistants or successor had or have any

**C** such motive or purpose The authorities are to be found in *Schtraks v Government of Israel & Ors* [1964] AC 557 in *Re Extradition Act 1870* [1969] 1 WLR 12 and a decision of Jones J in *Crown Solicitor v Datuk Dr Jeffrey Kitingan* [1994] 1 HKC 516 delivered on 20 January 1994.

As far as fishing is concerned, Mr Ma conceded that para 5(a) of the

**D** order is too wide and must be 'blue pencilled'. On the material disclosed by the letters, I would not be disposed to blue pencil further.

As I said, the master's order must be set aside. I make an order nisi that the applicants have their costs.

Reported by Victor T Gidwani

**E**

**F**

**G**

**H**

**I**