[2022] 3 HKLRD 316

## Re Global Brands Group Holding Ltd (In Liq)

————

[2022] HKCFI 1789

(Court of First Instance)

(Miscellaneous Proceedings No 644 of 2022)

————

**Harris J in Chambers**

1, 23 June 2022

*Company law — insolvency — foreign insolvency proceedings — recognition and assistance — provisional liquidator appointed in place of company's incorporation — approach where liquidation not taking place in jurisdiction of company's centre of main interest — in circumstances, order made limited to confirming provisional liquidator's power to receive and transfer out company's assets in Hong Kong*

*Conflict of laws — corporations and corporate insolvency — cross-border insolvency — recognition and assistance — future approach — criteria primarily to be determined by location of company's centre of main interest — limited exceptions*

*公司法 — 清盤 — 外地清盤法律程序 — 認可和協助 — 任命臨時清盤人代替公司法團 — 當清盤不在公司主要利益中心的司法管轄權範圍內進行時的做法 — 在某些情況下，命令僅限於確認臨時清盤人收取及轉移公司在香港的資產的權力*

*法律衝突 — 法團和法團清盤 — 跨國界清盤 — 認可和協助 — 未來的做法 — 準則主要由公司主要利益中心的地點來確定 — 有限制的例外情況*

C was an investment holding company incorporated in Bermuda and listed on the Main Board of the Stock Exchange of Hong Kong. Upon C's application to the Bermuda Court in September 2021, a provisional liquidator (PL) was appointed over C for restructuring purposes who continued in office on the making of the winding-up order by the Bermuda Court in November 2021. PL tried to take possession of C's assets in Hong Kong, specifically certain cash balances held by Rs, and applied for an order for recognition and assistance.

**Held,** allowing PL's application to make the order as set out below, that:

(1)  Hong Kong did not have any legislation dealing with cross-border insolvency and restructuring, it had largely been

left to the Judiciary to use common law tools to address challenges that arose in this area. To date, the criteria for granting recognition and assistance were: (i) that the foreign insolvency proceedings were collective insolvency proceedings; and (ii) that the foreign insolvency proceedings were opened in the company's country of incorporation. It was open to the court to develop the common law principles in a manner better suited to the circumstances in which transnational insolvencies currently arose in Hong Kong and the development of the principles in comparable jurisdictions, provided that such development was consistent with modified universalism (*Solicitor (24/07) v Law Society of Hong Kong* (2008) 11 HKCFAR 117, *Rubin v Eurofinance SA* [2013] 1 AC 236, *Singularis Holdings Ltd v PricewaterhouseCoopers* [2015] AC 1675 considered). (See paras.10, 16–21, 26.)

(2)    In future, the criteria for recognition should primarily be determined by the location of a company's centre of main interests (COMI). The use of companies incorporated in offshore jurisdictions as holding companies and intermediate subsidiaries for business groups conducting their activities in Hong Kong and the Mainland was widespread. It was rare for such companies to conduct any business in their place of incorporation. When such companies were put into provisional or final liquidation at least one of the liquidators appointed by the offshore court would be based in Hong Kong from where they conducted the liquidation. Treating the place of incorporation as the natural home or commercially most relevant jurisdiction for the purpose of determining which jurisdiction was the appropriate place for the seat of a principal liquidation was highly artificial. Adopting the COMI criteria would also bring Hong Kong in line with the approach in the Mainland. Accordingly, the criteria to be adopted were that: (i) the foreign proceedings constituted a collective insolvency process; and (ii) those proceedings (subject to limited exceptions) were conducted in the jurisdiction in which the company's COMI was located (*Re Lamtex Holdings Ltd* [2021] 2 HKLRD 177 considered). (See paras.17, 32.)

(3)    In determining a company's COMI, the court would consider factors including the location of directors, principal officers and board meetings, notices of relocation, location of operations, assets, bank accounts, books and records and where the restructuring activities took place (*Re Ocean Rig UDW Inc* 570 BR 687 (Bank SDNY Aug 24, 2017) applied; *Re HIH Casualty and General Insurance Ltd* [2008] 1 WLR 852, *Re Opti-Medix Ltd* [2016] 4 SLR 312, *Re Zetta Jet Pte Ltd*

[2019] 4 SLR 1343, *Re Investin Quay House Ltd* [2021] EWHC 2371 (Ch) considered). (See paras.34–38.)

(4)  The recognition regime was distinct from the winding-up jurisdiction. The fact that the debtor could be, or had been, wound up in Hong Kong was not of itself a bar to the court granting assistance (*Singularis Holdings Ltd v PricewaterhouseCoopers* [2015] AC 1675 considered). (See para.39.)

(5)  In the absence of a winding-up order in Hong Kong, it was not possible for a foreign liquidator to conduct a winding-up in Hong Kong which required the liquidator to exercise the powers available to a Hong Kong liquidator under the Companies (Winding Up and Miscellaneous Provisions) Ordinance (Cap.32). Nor did the common law power of assistance permit the court in such circumstances to grant powers analogous to those available to a liquidator under that Ordinance. However, the court could grant powers intended to assist a foreign liquidator whose appointment had been recognised on orthodox principles of private international law (*Singularis Holdings Ltd v PricewaterhouseCoopers* [2015] AC 1675 considered; *Re Up Energy Development Group Ltd* [2022] 2 HKLRD 993 explained). (See paras.46–47.)

(6)  The correct approach to assessing whether a foreign liquidation should be recognised was first to determine if at the time the application for recognition was made the liquidation was taking place in the jurisdiction of the company's COMI. If it was not, recognition and assistance should be declined, unless:

   (i)     it was limited to recognition of a liquidator's authority, if appointed in the place of incorporation, to represent a company and orders that were an incident of that authority; which might be described as managerial assistance; or

   (ii)    recognition and limited and carefully prescribed assistance were required as a matter of practicality (*Re Opti-Medix Ltd* [2016] 4 SLR 312 referred to). (See para.50.)

(7)  In the present case, the Court would grant an order for recognition of PL with assistance limited to the power to receive and transfer out of Hong Kong the account balances in question. PL was C's lawful agent as a matter of the law of its place of incorporation and entitled to direct that its assets be transferred from accounts in Hong Kong to accounts in Bermuda. The order simply confirmed the position under orthodox principles of private international law and gave PL assistance which was more managerial in nature than a type associated specifically with insolvency. (See paras.14, 48, 50.)

(8)    (*Obiter*) The Court's preliminary view is that in future the Hong Kong court should generally decline to recognise soft-touch provisional liquidators appointed by offshore jurisdictions adopting a debtor in possession model. Hong Kong has consciously decided not to enact legislation providing for this kind of debt moratorium. (See para.12.)

## Application

This was an application by the provisional liquidator of the subject company appointed in Bermuda for an order seeking recognition and assistance from the Hong Kong court.

Mr Look Chan Ho, instructed by Stephenson Harwood, for the applicant (provisional liquidator of Global Brands Group Holding Ltd).

The 1st respondent (Computershare Hong Kong Trustees Ltd) was not represented and did not appear.

The 2nd respondent (Hongkong and Shanghai Banking Corp Ltd) was not represented and did not appear.

## Legislation mentioned in the judgment

Bankruptcy Code [United States] Chs.11, 15

Companies (Winding Up and Miscellaneous Provisions) Ordinance (Cap.32) ss.193, 327

Companies Ordinance (Cap.32) (predecessor) s.327

## Cases cited in the judgment

Bank of Credit and Commerce International (Overseas) Ltd v Bank of Credit & Commerce International (Overseas) Ltd, Macau Branch [1997] HKLRD 304

Bear Stearns High-Grade Strategies Master Fund Ltd, Re 381 BR 37

CEFC Shanghai International Group Ltd, Re [2020] 1 HKLRD 676, [2020] 4 HKC 62, [2020] HKCFI 167

Cambridge Gas Transportation Corpn v Official Committee of Unsecured Creditors of Navigator Holdings plc [2006] UKPC 26, [2007] 1 AC 508, [2006] 3 WLR 689, [2006] 3 All ER 829

Chen Li Hung v Ting Lei Miao (2000) 3 HKCFAR 9, [2000] 1 HKLRD 252, [2000] 1 HKC 461

China Bozza Development Holdings Ltd, Re [2021] 2 HKLRD 977, [2021] 4 HKC 560, [2021] HKCFI 1235

China Fishery Group Ltd, Re [2019] 1 HKLRD 875, [2019] 6 HKC 189, [2019] HKCFI 174

China Huiyuan Juice Group Ltd, Re [2021] 1 HKLRD 255, [2021] 1 HKC 387, [2020] HKCFI 2940

China Medical Technologies Inc (No 1), Re [2018] HKCA 111, [2018] HKCLC 65

Creative Finance Ltd Case No. 14-10358 (REG)

Eurofood IFSC Ltd, Re [2006] Ch 508, [2006] 3 WLR 309, [2006] BCC 397, [2006] ILPr 23

Gibbs (Antony) & Sons v La Société Industrielle Et Commerciale Des Métaux (1890) 25 QBD 399

HIH Casualty and General Insurance Ltd, Re [2008] UKHL 21, [2008] 1 WLR 852, [2008] 3 All ER 869, [2008] Bus LR 905

HNA Group Co Ltd, Re; sub nom Re Jiang Wenyu [2021] HKCFI 2897, [2021] HKEC 4405

Hsin Chong Group Holdings, Re (Joint and Provisional Liquidators of) [2019] HKCFI 805, [2019] HKEC 945

Information Security One Ltd, Re [2007] 3 HKLRD 780

Investin Quay House Ltd, Re [2021] EWHC 2371 (Ch), [2022] BCC 497

Irish Shipping Ltd, Re [1985] HKLR 437

Joint Administrators of African Minerals Ltd v Madison Pacific Trust Ltd [2015] 4 HKC 215

Joint Official Liquidators of A Co v B [2014] 4 HKLRD 374

Kam Leung Sui Kwan v Kam Kwan Lai (2015) 18 HKCFAR 501, [2015] 6 HKC 644

Kireeva v Bedzhamov [2021] EWHC 2281 (Ch), [2021] BPIR 1465

Kireeva v Bedzhamov [2022] EWCA Civ 35, [2022] 2 All ER (Comm) 212, [2022] BCC 603

Lee Wah Bank, Re (1926) 2 Malayan Cases 81

Legend International Resorts Ltd, Re [2006] 2 HKLRD 192, [2006] 3 HKC 565

Li Yiqing v Lamtex Holdings Ltd, Re [2021] 2 HKLRD 177, [2021] HKCFI 622

Moody Technology Holdings Ltd, Re [2020] 2 HKLRD 187, [2020] 4 HKC 78, [2020] HKCFI 416

Nuoxi Capital Ltd v Peking University Founder Group Co Ltd [2022] 2 HKC 1, [2021] HKCFI 3817

Ocean Rig UDW Inc, Re 570 BR 687 (Bank. S.D.N.Y. Aug. 24, 2017); aff'd 585 BR 31 (S.D.N.Y. April 5, 2018)

Opti-Medix Ltd, Re [2016] SGHC 108, [2016] 4 SLR 312

Riverrock Securities Ltd v International Bank of St Petersburg (Joint Stock Co) [2020] EWHC 2483 (Comm), [2021] 2 All ER (Comm) 1121, [2020] 2 CLC 547

Rubin v Eurofinance SA [2012] UKSC 46, [2013] 1 AC 236, [2012] 3 WLR 1019, [2013] 1 All ER 521

Russo–Asiatic Bank, Re The (1929–30) 24 HKLR 16

Shenzhen Everich Supply Chain Co Ltd, Re [2020] HKCFI 965, [2020] HKEC 1188

Silver Starlight Ltd v China CITIC Bank Corp Ltd, Tianjin Branch [2021] HKCA 1248, [2021] HKEC 3771

Singularis Holdings Ltd v PricewaterhouseCoopers [2014] UKPC 36, [2015] AC 1675, [2015] 2 WLR 971, [2015] BCC 66

Solicitor (24/07) v Law Society of Hong Kong (2008) 11 HKCFAR 117, [2008] 2 HKLRD 576, [2008] 2 HKC 1

Stichting Shell Pensioenfonds v Krys [2014] UKPC 41, [2015] AC 616, [2015] 2 WLR 289, [2015] BCC 205

Tchenguiz v Grant Thornton UK LLP [2017] EWCA Civ 83, [2018] QB 695, [2018] 2 WLR 834

Up Energy Development Group Ltd, Re [2022] 2 HKLRD 993, [2022] HKCFI 1329

Z–Obee Holdings Ltd [2018] 1 HKLRD 165

Zetta Jet, Re [2019] SGHC 53, [2019] 4 SLR 1343

## DECISION

**Harris J in Chambers**

### The Application

1. On 25 May 2022 the Provisional Liquidator of Global Brands Group Holdings Ltd (**Provisional Liquidator** and the **Company** respectively) issued an originating summons to which Computershare Hong Kong Trustee Ltd (**Computershare**) and The Hong Kong and Shanghai Banking Corporation Ltd (**HSBC**) are Respondents seeking an order for recognition and assistance. The Company is incorporated in Bermuda and was wound up in Bermuda on 5 November 2021. The circumstances of the application provide an opportunity to consider in more detail an issue I discuss in *Re Li Yiqing v Lamtex Holdings Ltd*,[1] namely, whether in future the Hong Kong court will recognise and assist a foreign insolvency process conducted in the place of company's centre of main interests (**COMI**) and it is not sufficient, nor necessary, that the foreign insolvency process is conducted in a company's place of incorporation.

### Background

2. The Provisional Liquidator, John McKenna, had been appointed on 16 September 2021 and continued in office on the making of the winding-up order. The principle reason for seeking recognition and assistance from the Hong Kong court is to obtain the proceeds of the sale of shares held by Computershare in Hong Kong on behalf of the Company, totalling approximately HK$9

---

[1]   [2021] HKCFI 622; [2021] HKCLC 329.

million, and the rather more modest balance held by HSBC in the Company's bank account in Hong Kong, which totals approximately US$5,000. The originating summons also seeks certain other general powers. I will explain them later in this judgment.

3.    In his affidavit in support of the application the Provisional Liquidator explains the background to the Company and the circumstances leading up to its liquidation in Bermuda. The Company is an investment holding company. The Company, along with its subsidiaries (**Group**), were engaged in the business design, development, marketing and sale of branded children's, men's and women's apparel, footwear, fashion accessories and related lifestyle products in North America and Europe. The Company and its subsidiaries were also engaged in brand management and offered expertise in expanding its clients' branded assets new product categories, new regions and retail collaborations, as well as assisting in distribution of licensed products on a global basis.

4.    The Company was listed on the Main Board of The Stock Exchange of Hong Kong (**HKEX**) Ltd in 2014 as a result of a spin-off from Li & Fung of which it had formed part. Due to the ongoing COVID-19 pandemic and geopolitical uncertainties, as well as structural shifts in the retail industry, the business of the Company and its subsidiaries was seriously challenged. As a result, the Company had been facing immense financial difficulties since 2020. For the year ended 31 March 2020, the Group reported: **(a)** a net loss after tax of US$586,590,000; **(b)** current liabilities exceeding current assets by US$772,125,000; and **(c)** cash and cash equivalents amounting to US$83,880,000. For the six months ended 30 September 2020, the Group reported: **(a)** a net loss after tax of US$119,838,000; **(b)** that current liabilities exceed current assets by US$899,391,000; and **(c)** that the Group's cash and cash equivalents were US$55,805,000.

5.    From around January 2021, the Company actively engaged in discussions with the lenders of a syndicated loan to the Group (**Lenders**) of which the Company was a guarantor, other creditors, and potential investors in relation to revising repayment obligations of loans and injecting new equity from prospective investors. The Company also explored different debt restructuring options including potential transactions or corporate actions involving the sale, disposal and/or restructuring of various assets or businesses of the Group (collectively, "**Restructuring**").

6.    While the Company explored various restructuring options to improve its financial position, the board of the Company resolved that it was in the interests of the Company and its creditors to commence its own winding-up proceedings and apply to the Bermuda Court to appoint a provisional liquidator with limited powers, which could maximise the chance of success of the

restructuring and provide a moratorium on claims against the Company to avoid a potential disorderly liquidation by the Company's creditors. The appointment was apparently intended to create an environment for a successful restructuring. The board could continue to manage the Group's business operations, a provisional liquidator would monitor and consult with the board on implementing a group-wide and coordinated debt restructuring plan, and the business of the Group could continue to operate to generate revenue as a whole instead of assets being subject to fire sale at a significant discount.

7.    On 10 September 2021, the Company presented a petition to the Bermuda Court for the winding-up of the Company (**Petition**) and made an application for appointment of Mr McKenna as provisional liquidator of the Company on a "limited powers" basis for restructuring purposes only. Suffice to say the attempts to restructure proved unsuccessful, the board recognised that a winding-up would be in creditors' best interests and the Company applied successfully for a winding-up order on 5 November 2021.

8.    Since his appointment, the Provisional Liquidator has been trying to take possession of the Company's assets in Hong Kong. The Company's assets in Hong Kong are:

(1)    cash balances in the sum of about HK$8 million held by Computershare, which represents a surplus arising from the Group's employee share schemes; and

(2)    cash balances in the sum of about US$4,800 held in the Company's bank accounts with HSBC.

Both Computershare and HSBC require the Provisional Liquidator to obtain a recognition order before they will release the cash balances. Nearly all the Company's creditors are in Hong Kong. As is to be expected as it is a holding company, the creditors are largely financial or professional companies and are all unsecured. The remainder of the liquidation will be straightforward. The Provisional Liquidator will adjudicate proofs, which seems likely to be uncontroversial, and declare a dividend to be paid out of the assets, which he will receive if a recognition and assistance is granted, which consists of the monies I have referred to in the previous paragraph.

9.    The Provisional Liquidator accepts that before the Bermuda liquidation the Company's COMI was probably in Hong Kong. In the light of the Provisional Liquidator's activities after the Bermuda liquidation commenced the COMI may have become either Hong Kong or Bermuda. For the purposes of this decision the Provisional Liquidator accepts that the core requirements that need to be satisfied

before the Hong Kong court will exercise its winding-up jurisdiction over a foreign company are satisfied.[2]

### Recognition and Assistance in Hong Kong — Background

10.     Commencing in 2014 recognition and assistance has increasingly been used to address issues arising in transnational restructuring and insolvency in Hong Kong that largely arise as a consequence of the extensive use of holding companies incorporated in offshore jurisdictions rather than Hong Kong or the Mainland, although the business groups affected commonly consist of operating and asset owning companies in Hong Kong and the Mainland. This practice has become the norm in the case of companies listed on the HKEX. The operating and asset owning subsidiaries are commonly separated from the holding company by a layer of intermediate subsidiaries incorporated in an offshore jurisdiction different from the holding company. The most common structure recently adopted would appear to involve a Cayman holding company and intermediate subsidiaries incorporated in the British Virgin Islands. The business groups have no assets, creditors or debtors in the offshore jurisdictions. When such business groups encounter financial difficulties and creditors and the companies themselves are considering what steps to take to protect their interests they encounter problems arising from the artificial structure of the group, which it is difficult to address because unlike comparable jurisdictions Hong Kong has neither legislation dealing with rehabilitation of distressed businesses nor legislation dealing with transnational insolvency other than the discretionary power given to the court by *s.327* of the *Companies (Winding Up and Miscellaneous Provisions) Ordinance* (Cap.32) (**Ordinance**), to wind up a foreign company. The absence of the tools available in other jurisdictions, including the Mainland, to address these issues has been a well-publicised source of concern to those involved in restructuring and insolvency for over two decades. In the absence of any legislation to address these issues the Court has worked with practitioners to use common law techniques to address them so far as the common law permits. There have been two major problem areas.

11.     The first concerns the restrictions that exist on winding up a foreign incorporated company. It is not necessary to explore this issue in depth as it is comprehensively dealt with in a number of authorities well known to practitioners. In summary the court has adopted what Ma CJ and Lord Millett NPJ refer to in the Court of Final Appeal's judgment in *Kam Leung Sui Kwan v Kam Kwan*

---

2    *Silver Starlight Ltd v China CITIC Bank Corporation Ltd, Tianjin Branch* [2021] HKCA 1248; [2021] HKCLC 1347 at [15] (G Lam JA).

*Lai.*[3] as "*necessary self-imposed constraints on the making of a winding-up order against a foreign company*". In some cases, these are easy to satisfy. Others less so resulting in delay in creditors or shareholders being able to take action in Hong Kong to protect their economic interests while complicated questions concerning jurisdiction are resolved. It was this problem that led to the application and decision in *Joint Official Liquidators of A Co v B.*[4] The liquidators appointed in the Cayman Islands, where the Company was incorporated, initially sought (ultimately successfully) to wind up the Company in Hong Kong, but pending the determination of the petition wished to be able to obtain documents from the Company's bankers in Hong Kong concerning a substantial fraud. The bankers refused to provide them without an order of the Hong Kong court confirming the liquidators' authority to represent the company in Hong Kong.

12.    The second issue concerns the problems caused by Hong Kong's lack of any legislation facilitating debt restructuring and rehabilitation of financially distressed companies. In the period following the Asian Financial Crisis of 1997 and 1998 the practice was developed of companies, mainly listed companies, being put into a form of soft-touch provisional liquidation in Hong Kong to facilitate a debt restructuring. This practice was brought to a halt by the Court of Appeal's decision in *Re Legend International Resorts Ltd,*[5] which determined that the power to appoint provisional liquidators conferred by *s.193* of the *Ordinance* could not be used to appoint provisional liquidators for the principle purpose of restructuring a company. Many of these companies were incorporated in offshore jurisdictions. To circumvent the practical problem to which the Court of Appeal's decision gave rise a technique was developed,[6] which involved a company incorporated in an offshore jurisdiction being put into soft-touch provisional liquidation in its domestic jurisdiction, the courts of those jurisdictions treating this as a proper use of the power to appoint provisional liquidators, and the provisional liquidators being recognised in Hong Kong and assistance being provided in the form of the limited powers necessary for provisional liquidators to participate in the restructuring process in Hong Kong. Unfortunately, it has become increasingly apparent that what is commonly referred to as the *Z-Obee* technique has been abused by certain insolvency

---

3   (2015) 18 HKCFAR 501. See [18]–[24] in which Ma CJ and Lord Millett NPJ explain the constraints, commonly referred to as "the 3 core requirements" and their application.

4   [2014] 4 HKLRD 374.

5   [2006] 2 HKLRD 192; [2006] 3 HKC 565.

6   *Z-Obee Holdings Ltd* [2018] 1 HKLRD 165; *Re Joint and Provisional Liquidators of Hsin Chong Group Holdings* [2019] HKCFI 805; *Re Moody Technology Holdings Ltd* [2020] 2 HKLRD 187.

practitioners and offshore law firms.[7] It seems to me tolerably clear that many of the offshore soft-touch provisional liquidations adopt a debtor in possession model, which has been rejected in Hong Kong, the principal purpose of which, viewed from the Company's point of view, is to obtain so far as possible a moratorium on action being taken to recover unpaid debts. The application to appoint provision liquidators in the present case would appear to be an example. Hong Kong has consciously decided not to enact legislation that provides for this kind of debt moratorium. Although it is not an issue that I need to decide in the present case and is one which requires detailed consideration, my preliminary view is that in future the Hong Kong court should generally decline to recognise soft-touch provisional liquidators appointed by offshore jurisdictions on the kind of terms I have summarised.

13.    There is another consideration. As I have already explained the businesses of companies of the sort with which I am concerned are carried on in China; primarily the Mainland. The Mainland has a different economic system to Hong Kong. Reconciling the differences between the Hong Kong and the Mainland systems can be challenging. It requires an understanding of the different insolvency systems and the different social and economic considerations, which are reflected in the differing statute law and the decisions that judges and others involved in the insolvency and restructuring process are required to make. To take one example, the *Enterprise Bankruptcy Law* gives primacy to rehabilitation of businesses reflecting the importance placed in the Mainland on maintaining economic and social stability. Consistent with this the Mainland favours debtor in possession solutions. As I have explained Hong Kong does not. Hong Kong and Mainland judges are familiar with these issues and are well placed to deal with them; courts outside China considerably less so. Relevant to this are the concerns that have recently been expressed by two leading academics in the field of international insolvency, Professor Jay Westbrook of the University of Texas at Austin and Professor Christoph Paulus of Humboldt-Universität zu Berlin,[8] about judicial decision making and bankruptcy law becoming increasingly remote from territorial or political control. The suggestion that a Chinese business can avoid the supervision of its affairs by Chinese courts[9] when bankrupt by using a company incorporated in, what has been called by the European Court of Justice, amongst others, a "*letter box*

---

7   See for example *Re China Bozza Development Holdings Ltd* [2021] 2 HKLRD 977; [2021] HKCFI 1235.
8   International Insolvency Institute's podcast 23 April 2022.
9   Whether the courts of the Hong Kong SAR or the Mainland.

*jurisdiction*"[10] invites the question that Professor Westbrook and Professor Paulus pose as to the extent to which it is congruent with the purpose of insolvency law and the expectations of creditors to allow a commercial enterprise to use a bankruptcy process in a jurisdiction with which it or its debt[11] has no economic or social connection rather than one in which it carries on business. The question is relevant to the issue, which I am considering, which in practice amounts to this: should a jurisdiction in which a company's business is conducted recognise an insolvency process conducted in a place with which the company has no material economic connection.

**The Order**

14.     I will grant an order for recognition of the Provisional Liquidator with assistance limited to the power to receive and transfer out of Hong Kong the balances in the account to which I have referred in [8]. My reasons for so ordering are explained in [48]–[50]. The majority of the remainder of this decision concerns the basis on which in future Hong Kong should grant recognition and assistance to foreign insolvency practitioners. The decision is divided into sections addressing the following:

(1)    The established principles for common law recognition and assistance relevant to this application.
(2)    COMI as the criteria for recognition and assistance.
(3)    Principles of recognition — modified universalism.
(4)    Modified universalism — criteria for determining home or principal jurisdiction in comparative authorities.
(5)    Adopting the COMI criteria in Hong Kong.
(6)    Authorities in Hong Kong.
(7)    The recent case of Up-Energy.
(8)    Conclusion.

**Principles of common law recognition and assistance**

15.     There is a distinction between recognition and assistance. Recognition concerns acknowledging and confirming the status of a foreign insolvency process and officer. Assistance involves granting

---

10     *Re Eurofood IFSC Ltd* [2006] Ch 508; *Creative Finance Ltd* Case No. 14-10358 (REG) 13 January 2016; *Re Bear Stearns High-Grade Strategies Master Fund, Ltd* 381 BR 37 (Bankr. S.D.N.Y. 2007), aff'd 389 BR 325 (S.D.N.Y.) (Sweet J).
11     As opposed, for example, to US$ debt governed by United States Law, which would have an economic connection with the United States and might be compromised under *Chapter 11* of the *United States Bankruptcy Code* and normally recognised in Hong Kong in accordance with the *Rule in Gibbs, Antony Gibbs & Sons v La Société Industrielle Et Commerciale Des Métaux* (1890) 25 QBD 399.

expressly to the foreign insolvency officer powers to act in the local jurisdiction. The distinction is well understood. In *Kireeva v Bedzhamov*,[12] Snowden J held:

> [T]here is a conceptual distinction between the principles that apply to the decision whether to recognise a foreign bankruptcy, and the principles that apply to the question of what, if any, further assistance ought to be given by the English court to a foreign trustee in bankruptcy following recognition.

In *Net International Property Ltd v ADV Eitan Erez*,[13] Webster JA explains the distinction in more detail:

> The starting point on the issues of recognition and assistance is to determine what, if any, is the difference between recognition and assistance. There is, at least in theory, a difference between the two principles. Recognition is the formal act of the local court recognising or treating the foreign office holder as having status in the BVI in accordance with his or her appointment by the foreign court. In this case, this means recognising the Trustee's position granted by the courts of Israel as being the trustee in bankruptcy of the assets of Mrs. Sofer and treating him as the trustee of those assets in the BVI.
>
> Assistance goes further. If granted by the BVI court, it allows the Trustee to deal with the BVI assets of Mrs. Sofer, namely, her legal and beneficial interest in the shares of Net International. Put another way, recognition gives the foreign office holder status in the BVI and assistance gives him or her power to deal with the BVI assets. However, the dividing line between the two principles is blurred in practice because recognition by itself is generally of little assistance to the foreign office holder unless it is accompanied by the grant of assistance to deal with the local assets. Viewed in this way, recognition is generally treated as recognition and assistance. The blurring of the lines between the two concepts is illustrated by the judgment of the Supreme Court of Transvaal, South Africa, in *Re African Farms Ltd* …
>
> Notwithstanding the blurring of the lines between recognition and assistance, it is important to bear in mind that recognition does not necessarily include assistance. In this case, the trial judge's order recognising the Trustee included assistance.

A simple practical example of the distinction is to be found in my decision in *Re China Bozza Development Holdings Ltd*.[14] I held:

---

12  [2021] EWHC 2281 (Ch); [2021] BPIR 1465 at [107].
13  (Eastern Caribbean Court of Appeal, 22 February 2021) at [19]–[21].
14  [2021] HKCFI 1235; [2021] HKCLC 831 at [23].

[N]otwithstanding my misgivings about how this matter has developed the JPLs should be recognised and I will so order. However, granting an order providing active assistance is a different matter. I am not currently satisfied that I should make an order granting the type of general assistance which I have on previous occasions …

16.    The authorities establish that the orthodox common law position is that the court may recognise foreign insolvency proceedings that comply with two criteria.[15] First, that the foreign insolvency proceedings are collective insolvency proceedings; and secondly, that the foreign insolvency proceedings are opened in the company's country of incorporation. Part of the rationale for recognising and assisting foreign officeholders appointed in the country of incorporation is to be found in ordinary conflict of laws principles for corporations as opposed to pure insolvency law. As Lord Sumption explains in *Singularis Holdings Ltd v PricewaterhouseCoopers*:[16]

12.    [E]ven without a winding up, the court could, on ordinary principles of private international law, have recognised as a matter of comity the vesting of the company's assets in an agent or office-holder appointed or recognised under the law of its incorporation. For many years before a corresponding rule was recognised for the winding up of foreign companies, the principle had been applied in the absence of any statutory powers to the English moveable assets of a foreign bankrupt which had been transferred to an office-holder in an insolvency proceeding under the law of his domicile.

**COMI as the criteria for recognition and assistance**

17.    To date the court in Hong Kong has not used COMI as the yardstick for granting common law recognition or assistance. The criteria applied are those explained in the previous paragraph. It is, however, open to the court as a matter of principle and authority to develop these common law principles. As the then Chief Justice Li observed in *Solicitor (24/07) v Law Society of Hong Kong*:[17] "*[t]he great strength of the common law lies in its capacity to develop to meet the changing needs and circumstances of the society in which it functions*". For the reasons discussed in the

---

15    See *Re CEFC Shanghai International Group Ltd* [2020] HKCFI 167; [2020] HKCLC 1 at [8].
16    [2014] UKPC 36; [2015] AC 1675.
17    (2008) 11 HKCFAR 117 at [19].

remainder of this judgment in my view the criteria to be adopted in future in determining whether or not foreign insolvency proceedings should be recognised and assisted are, in short, that the foreign proceedings constitute a collective insolvency process and that the proceedings (subject to limited exceptions) are conducted in the jurisdiction in which the Company's COMI is located.

18.    As I have already explained Hong Kong is unusual in not having any legislation dealing with cross-border insolvency and restructuring. The Government has largely left it to the Judiciary to use common law tools to address the challenges that have arisen in this area as Hong Kong's economy has developed in line with the Mainland's rapid economic expansion. This is not an oversight. On 14 May 2021 the Secretary for Justice and the Supreme Court signed a "*Record of Meeting of the Supreme People's Court and the Government of the Hong Kong Special Administrative Region on Mutual Recognition of and Assistance to Bankruptcy (Insolvency) Proceedings between the Courts of the Mainland and of the Hong Kong Special Administrative Region*". This Cooperation Mechanism consists of two parts. The first is the Record of meeting. The second is "*The Supreme People's Court's Opinion on Taking Forward a Pilot Measure in relation to the Recognition and Assistance to Insolvency Proceedings in the Hong Kong Special Administrative Region.*"[18] As is explained in both documents the purpose of the Mechanism is to facilitate economic integration and development in Hong Kong and the Mainland. Paragraphs 3 and 5 of the Record of Meeting make it clear that the parties expect the High Court to grant assistance to Mainland Administrators and cooperate on the implementation and improvement of the Mechanism. The absence of relevant legislation and the purpose of the Cooperation Mechanism are relevant to a consideration of the development of common law assistance in Hong Kong, its necessity and what form it might take. Hong Kong is not in the same position as jurisdictions, which have enacted comprehensive statutory codes to regulate recognition and assistance of foreign insolvencies. As the Cooperation Mechanism to which I have referred demonstrates, the absence of a statutory code to regulate recognition and assistance does not imply that the court is to take a restrictive view of its ability to develop the common law principles to address the issues that come before it. It is clear that the opposite is the case.

19.    In *Rubin v Eurofinance SA*[19] Lord Collins at [129] describes the limits of a court's ability to develop the law in this field. Lord Collins says this:

---

[18]  最高人民法院關於開展認可和協助香港特別行政區破產程序試點工作的意見
[19]  [2012] UKSC 46; [2013] 1 AC 236.

A change in the settled law of the recognition and enforcement of judgments, and in particular the formulation of a rule for the identification of those courts which are to be regarded as courts of competent jurisdiction (such as the country where the insolvent entity has its centre of interests and the country with which the judgment debtor has a sufficient or substantial connection), has all the hallmarks of legislation, and is a matter for the legislature and not for judicial innovation. The law relating to the enforcement of foreign judgments and the law relating to international insolvency are not areas of law which have in recent times been left to be developed by judge-made law. As Lord Bridge of Harwich put it in relation to a proposed change in the common law rule relating to fraud as a defence to the enforcement of a foreign judgment, 'if the law is now in need of reform, it is for the legislature, not the judiciary, to effect it': *Owens Bank Ltd v Bracco [1992] 2 AC 443*, 489.

20.    **It can readily be understood why the courts in England would approach the development of the common law relating to international insolvency as Lord Collins describes. Judge initiated developments in the law, which in the context of a system, which has introduced deliberate and comprehensive legislation to regulate cross-border insolvency, may be viewed as judicial overreach, are not necessarily to be viewed similarly in a jurisdiction, which lacks comparable legislation and whose current circumstances justify modifying the common law to implement more effectively an established legal principle. The development of the basis upon which foreign liquidations are recognised which I am considering does not involve the creation of a new legal principle. It involves a modification of an existing one, namely, recognition and assistance of a foreign insolvency process. The purpose of the modification is to implement the principle in a manner better suited to the circumstances in which transnational insolvencies currently arise in Hong Kong and the development of the principle in comparable jurisdictions.**

21.    **It is apparent from its terms that the Cooperation Mechanism is premised on the assumption that the common law as practiced in Hong Kong has developed to provide for judicial assistance to insolvencies conducted in different jurisdictions; albeit in the China context different legal jurisdictions within one unitary State. There are many examples of common law assistance being granted by the Hong Kong court to foreign insolvency office holders. In [43]–[44] I give a number of examples of the Court of Final Appeal and the Court of Appeal recognising the court's power to do so. In the case of administrators from the Mainland the Court of First Instance has made a number of orders for recognition and assistance in recent years: *Re Liquidator of CEFC Shanghai***

*International Group Ltd;*[20] *Re Shenzhen Everich Supply Chain Co, Ltd;*[21] *Re HNA Group Co Ltd;*[22] *Nuoxi Capital Ltd v Peking University Founder Group Company Ltd.*[23]

## Principles of recognition — modified universalism

22.    Underpinning the principle of recognition is the principle that the insolvency law of a company's home insolvency jurisdiction is applicable across the world. This is illustrated by the English Court of Appeal's decision in *Tchenguiz v Grant Thornton UK LLP,*[24] which concerned whether Icelandic Insolvency Law applied throughout the European Economic Area, including England, by virtue of *Article 10* of the *Parliament and Council Directive 2001/24/EC*, given effect in *England by the Credit Institutions (Reorganisation and Winding Up) Regulations 2004.* Briggs LJ explains the character of the extraterritorial effect of Icelandic bankruptcy law in the following paragraphs:[25]

> 66.    This much more confined part of the appeal also breaks down into two sections. The first raises the question whether Icelandic insolvency law (and its equivalents in all other home member states) is 'internationalised' by virtue of the Winding up Directive (and the Insolvency Regulation) regardless whether, viewed separately, it has purely domestic or both domestic and extraterritorial effect. The judge concluded that it was internationalised in that sense, and the claimants' third ground of appeal challenges that conclusion.
> …
> 68.    The answer to the first of those questions flows in my view inexorably from the analysis of the purposes and terms of the Insolvency Instruments, as described above. The very essence of the universalism sought to be achieved by making the insolvency law of the home member state applicable across the territory of all member states depends upon that being achieved in relation to every potential home member state in which a credit institution is regulated and has its head office regardless whether, apart from those instruments, that state's insolvency law would be anything more than domestic in its application. If that were not so, then the creation of a universally applicable law (subject to strict exceptions) for

---

20  *Supra* footnote 14.
21  [2020] HKCFI 965, [2020] HKEC 1188.
22  [2021] HKCFI 2897.
23  [2022] 2 HKC 1; [2021] HKCFI 3817.
24  [2017] EWCA Civ 83; [2018] QB 695.
25  *Ibid* [68].

> the insolvency of credit institutions, and other entities, would
> fall at the first hurdle, in relation to any home member state
> the insolvency law of which did not already have
> cross-border effect.

23.    Consistent with this principle the aim of modified universalism is that there should be a unitary bankruptcy proceeding in the court of the home insolvency jurisdiction which receives world-wide recognition and it should apply universally to all the bankrupt's assets. This is explained by Lord Hoffmann in *Re HIH Casualty and General Insurance Ltd*:[26]

> 6.    Despite the absence of statutory provision, some degree of
> international co-operation in corporate insolvency had been
> achieved by judicial practice. This was based upon what
> English judges have for many years regarded as a general
> principle of private international law, namely that bankruptcy
> (whether personal or corporate) should be unitary and
> universal. There should be a unitary bankruptcy proceeding
> in the court of the bankrupt's domicile which receives
> worldwide recognition and it should apply universally to all
> the bankrupt's assets.

24.    Universalism is to be contrasted with territorialism where each country is regarded as determining according to its own law the distribution of the assets of an insolvent company located within its territorial jurisdiction.[27] Modified universalism is a compromise between these two opposites, recognising that the theoretical ideal of universality must in some circumstances give way to the practical reality of territorial or local interests. Lord Hoffmann describes the principle in *HIH* in the paragraph immediately following the one I have just quoted:[28]

> 7.    This was very much a principle rather than a rule. It is
> heavily qualified by exceptions on pragmatic grounds;
> elsewhere I have described it as an aspiration: see *Cambridge
> Gas Transportation Corp v Official Committee of Unsecured
> Creditors of Navigator Holdings plc* [2007] 1 AC 508, 517, para
> 17. Professor Jay Westbrook, a distinguished American writer
> on international insolvency has called it a principle of
> 'modified universalism': see also *Fletcher, Insolvency in Private*

---

26    [2008] UKHL 21; [2008] 1 WLR 852 at [6].
27    *Stichting Shell Pensioenfonds v Krys* [2014] UKPC 41; [2015] AC 616 at [15] (Lord Sumption and Lord Toulson).
28    *Supra* at [7].

*International Law*, 2nd ed (2005), pp 15–17. Full universalism can be attained only by international treaty. Nevertheless, even in its modified and pragmatic form, the principle is a potent one.

This principle has been part of the English common law since the 18th century.[29]

25.    In *Singularis* the Privy Council considered three propositions derived from the decision of the Privy Council in *Cambridge Gas Transportation Corpn v Official Committee of Unsecured Creditors of Navigator Holdings plc*.[30] "*First the principle of modified universalism, namely, that the court has a common law power to assist foreign winding up proceedings so far as it properly can. The second is that this includes doing whatever it [the court] could properly have done in a domestic insolvency, subject to its own law and public policy. The third (which is implicit) is that this power is itself the source of its jurisdiction over those affected, and that the absence of jurisdiction in rem or in personam according to ordinary common law principles is irrelevant.*"[31] The Privy Council concluded that the 2nd and 3rd principles had been wrongly decided, but not the first, which Lord Sumption explains in [19]:

> 19.    However, the first proposition, the principle of modified universalism itself, has not been discredited. On the contrary, it was accepted in principle by Lord Phillips, Lord Hoffman and Lord Walker in *HIH* [2008] 1 WLR 852, and by Lord Collins of Mapesbury (with whom Lord Walker and Lord Sumption JJSC agreed) in *Rubin v Eurofinance SA* [2013] 1 AC 236. Nothing in the concurring judgment of Lord Mance JSC in that case casts doubt on it. At paras 29–33, Lord Collins summarised the position in this way:
>
> > 29.    'Fourth, at common law the court has power to recognise and grant assistance to foreign insolvency proceedings. The common law principle is that assistance may be given to foreign office-holders in insolvencies with an international element. The underlying principle has been stated in different ways: "recognition … carries with it the active assistance of the court": *In re African Farms Ltd* [1906] TS 373, 377;

---

29  *Re HIH Casualty and General Insurance Ltd supra* at [30]; *Singularis Holdings Ltd v PricewaterhouseCoopers supra* at [19] and [23]; *Riverrock Securities Ltd v International Bank of St Petersburg (Joint Stock Co)* at [80] (Foxton J); *Kireeva v Bedzhamov* [2022] EWCA Civ 35 at [81]–[88] (Newey LJ).

30  [2006] UKPC 26; [2007] 1 AC 508; [2006] 3 WLR 689; [2006] 3 All ER 829.

31  *Supra* Lord Sumption [15].

"This court … will do its utmost to co-operate with the US Bankruptcy Court and avoid any action which might disturb the orderly administration of [the company] in Texas under Chapter 11": *Banque Indosuez SA v Ferromet Resources Inc* [1993] BCLC 112, 117.

30.  In *Crédit Suisse Fides Trust v Cuoghi* [1998] QB 818, 827, Millett LJ said: "In other areas of law, such as cross-border insolvency, commercial necessity has encouraged national courts to provide assistance to each other without waiting for such co-operation to be sanctioned by international convention … It is becoming widely accepted that comity between the courts of different countries requires mutual respect for the territorial integrity of each other's jurisdiction, but that this should not inhibit a court in one jurisdiction from rendering whatever assistance it properly can to a court in another in respect of assets located or persons resident within the territory of the former."

31.  The common law assistance cases have been concerned with such matters as the vesting of English assets in a foreign office-holder, or the staying of local proceedings, or orders for examination in support of the foreign proceedings, or orders for the remittal of assets to a foreign liquidation, and have involved cases in which the foreign court was a court of competent jurisdiction in the sense that the bankrupt was domiciled in the foreign country or, if a company, was incorporated there ….

33.  One group of cases involved local proceedings which were stayed or orders which were discharged because of foreign insolvency proceedings. Thus in *Banque Indosuez SA v Ferromet Resources Inc* [1993] BCLC 112 an English injunction against a Texas corporation in Chapter 11 proceedings was discharged; cf *In re African Farms Ltd* [1906] TS 373 (execution in Transvaal by creditor in proceedings against English company in liquidation in England stayed by Transvaal court), applied in *Turners & Growers Exporters Ltd v The Ship "Cornelis Verolme"* [1997] 2 NZLR 110 (Belgian shipowner in Belgian bankruptcy: ship released from arrest); *Modern Terminals (Berth 5) Ltd v States Steamship Co* [1979] HKLR 512 (stay in Hong Kong of execution against Nevada corporation in Chapter 11 proceedings in United States federal court in

California), followed in *CCIC Finance Ltd v Guangdong International Trust & Investment Corpn* [2005] 2 HKC 589 (stay of Hong Kong proceedings against Chinese state-owned enterprise in Mainland insolvency). Cases of judicial assistance in the traditional sense include *In re Impex Services Worldwide Ltd* [2004] BPIR 564, where a Manx order for examination and production of documents was made in aid of the provisional liquidation in England of an English company.

In the Board's opinion, the principle of modified universalism is part of the common law, but it is necessary to bear in mind, first, that it is subject to local law and local public policy and, secondly, that the court can only ever act within the limits of its own statutory and common law powers. What are those limits? In the absence of a relevant statutory power, they must depend on the common law, including any proper development of the common law. The question how far it is appropriate to develop the common law so as to recognise an equivalent power does not admit of a single, universal answer. It depends on the nature of the power that the court is being asked to exercise. On this appeal, the Board proposes to confine itself to the particular form of assistance which is sought in this case, namely an order for the production of information by an entity within the personal jurisdiction of the Bermuda court. The fate of that application depends on whether, there being no statutory power to order production, there is an inherent power at common law do so.

26.    It is clear from this passage that modified universalism is the foundation of the common law power to recognise and assist a foreign insolvency process and that the power may be developed if the development is consistent with modified universalism and is consistent with the applicable domestic legal framework. Although the formulation of the principle in *Singularis* is considerably more restrictive than that to be found in *Cambridge Gas*, as is apparent from the final paragraph of the extract of Lord Collin's judgment that I have quoted, it envisages further development of the common law power of assistance.

**Modified universalism — criteria for determining home or principle jurisdiction in comparative authorities**

27.    Universalism and modified universalism are premised on there being a home or principal insolvency jurisdiction. The criteria

for determining the home or principal insolvency jurisdiction have evolved over time. First, there is the concept of the debtor's domicile.[32] Secondly, there is the concept of the debtor's country of incorporation: In *Singularis*, Lord Sumption talks of the common law principle of modified universalism treating the place of incorporation as being the principal insolvency jurisdiction:

> The principle of modified universalism is a recognised principle of the common law. It is founded on the public interest in the ability of foreign courts exercising insolvency jurisdiction in the place of the company's incorporation to conduct an orderly winding up of its affairs on a world-wide basis, notwithstanding the territorial limits of their jurisdiction."[33]

Thirdly, there is the concept of COMI. Lord Hoffmann explains in *HIH*.[34] The emergence of the criteria for assessing the most appropriate country to be treated as the principal jurisdiction in which a transnational insolvency is to be conducted:

> In some cases there may be some doubt about how to determine the appropriate jurisdiction which should be regarded as the seat of the principal liquidation. I have spoken in a rather old-fashioned way of the company's domicile because that is the term used in the old cases, but I do not claim it is necessarily the best one. Usually it means the place where the company is incorporated but that may be some offshore island with which the company's business has no real connection. The Council Regulation on insolvency proceedings ((EC) No 1346/2000 of 29 May 2000) uses the concept of the '*centre of a debtor's main interests*' as a test, with a presumption that it is the place where the registered office is situated: see article 3.1. That may be more appropriate.

28.     Assuming one uses the old concept of domicile, there appear to be two schools of thought on the meaning of "domicile" of a company. One view is that the domicile of a company is in its place of incorporation. Lord Collins explains this in *Rubin v Eurofinance SA*:[35]

> 31.     The common law assistance cases have been concerned with such matters as the vesting of English assets in a foreign officeholder, or the staying of local proceedings, or orders for examination in support of the foreign proceedings, or

---

32   *Re HIH Casualty and General Insurance Ltd supra* at [6] and [8]; see also *Stichting Shell Pensioenfonds v Krys supra* at [14].
33   *Singularis Holdings Ltd v PricewaterhouseCoopers supra* at [23].
34   *Supra* at [31].
35   *Supra* at [31].

orders for the remittal of assets to a foreign liquidation, and have involved cases in which the foreign court was a court of competent jurisdiction in the sense that the bankrupt was domiciled in the foreign country or, if a company, was incorporated there.

**The alternative view is that the domicile of a company is in its principal place of business, which may or may not be the country of incorporation. This is explained by Murison CJ in *Re Lee Wah Bank*:**[36]

The general principle in cases of this kind is clear enough. It is laid down by Vaugham Williams J in *In re English Scottish and Australian Chartered Bank* [[1893] 3 Ch 385] thus: — 'Where there is a liquidation of the concern the general principle is — ascertain what is the domicile of the company in liquidation; let the Court of the country of domicile act as the principal Court to govern the liquidation; and let the other Courts act as ancillary, as far as they can, to the principal liquidation.' The domicile of a trading company is fixed by the situation of its principal place of business (*Jones v Scottish Accident Insurance Company Ltd* [(1886) 17 QBD 421]) and there is no doubt at all that in this case the domicile of the liquidating Company is Hong Kong.

29.     In Singapore, the common law recognition regime has developed to embrace the COMI concept for reasons explained by Abdullah JC in *Re Opti-Medix Ltd*:[37]

Under a universalist approach, one court takes the lead while other courts assist in administering the liquidation …

A consequence of a greater sensitivity to universalist notions in insolvency is a greater readiness to go beyond traditional bases for recognising foreign insolvency proceedings. As the winding up of a company by the court of the place of incorporation accords with legal logic, there may be a natural tendency to regard a liquidator appointed by that court as having primacy or legitimacy. However, the place of incorporation may be an accident of many factors, and may be far removed from the actual place of business. The approach of identifying the COMI has much to commend it as a matter of practicality

30.     The position adopted in Hong Kong has historically been that a liquidator appointed in the place of incorporation is

---

36   (1926) 2 Malayan Cases 81, 84.
37   *Re Opti-Medix Ltd* [2016] SGHC 108; [2016] 4 SLR 312 at [17]–[18] (Aedit Abdullah JC).

recognised.[38] However, it would be incorrect to say that the Hong Kong recognition criteria has exclusively been tied to the debtor's country of incorporation. There are instances of the Hong Kong court granting, or being willing to grant, recognition to insolvency office-holders appointed in a foreign jurisdiction which was not the jurisdiction of incorporation. In *Re The Russo-Asiatic Bank*,[39] the Court recognised liquidators appointed by the English court over a Russian bank. In *Bank of Credit and Commerce International (Overseas) Ltd v Bank of Credit & Commerce International (Overseas) Ltd, Macau Branch*,[40] the Court of Appeal recognised liquidators appointed in Macau over a Cayman-incorporated bank. In *Joint Administrators of African Minerals Ltd v Madison Pacific Trust Ltd*,[41] I took the view that there was no objection in principle to granting recognition to an English administrator over a Bermuda-incorporated company with its COMI in England.

## Adopting the COMI criteria in Hong Kong

31.    In *Re Li Yiqing v Lamtex Holdings Ltd*[42] at [22] and [26] I suggested that the Hong Kong court should, as Singapore has done, consider whether common law recognition based on place of incorporation is consistent with contemporary commercial practice in the SAR and the Mainland:

> 22.    It is becoming increasingly apparent that it is desirable, and it might reasonably be suggested essential, that the Hong Kong courts are able to deal with recognition and assistance using methods that are consistent with commercial practice in the SAR and the Mainland. In response to suggestions for legislation to address this subject, it has been the Government's position that for the time being it is a matter for the courts of Hong Kong to address using the techniques available at common law. The current position in Hong Kong is that the court recognises only insolvency practitioners appointed in the place of incorporation. In my view we have reached the stage at which this question needs to be reconsidered at there is much in my view to be said in support of Abdullah J's conclusion that the common law in this area contains sufficient flexibility to develop so as to be consistent with commercial practice and there is nothing in principle preventing recognition of liquidators appointed

---

38    *Re China Fishery Group Ltd* [2019] HKCFI 174; [2019] HKCLC 45 at [24]–[25].
39    (1929–30) 24 HKLR 16.
40    [1997] HKLRD 304.
41    [2015] 4 HKC 215; [2015] HKCLC 323.
42    *Supra* footnote 1.

in a company's COMI or a jurisdiction with which it has a
sufficiently strong connection to justify recognition, just as
the Hong Kong court will exercise its discretion to wind up
a foreign incorporated company if the connection between
it and Hong Kong is substantial and the other core
requirements are satisfied.[43] It might, I appreciate, be objected
that there is a material difference in the case of the
jurisdiction to wind up a foreign incorporated company,
namely, the power is expressly conferred by statute. This
takes me back to *Singularis*.[44]

…

26.   As I have already observed Hong Kong has no legislation
      dealing with recognition of foreign insolvencies. Issues such
      as recognition of foreign soft-touch provisional liquidation
      do not involve using the common law to extend legislation.
      In Hong Kong it is purely a matter of common law. *Singularis*
      is authority that the common law generally permits
      recognition and assistance of foreign liquidations. The issue
      I am currently considering is whether the common law of
      Hong Kong should be extended to permit recognition of
      insolvencies in places other than a company's place of
      incorporation and in particular in which its COMI or
      something similar is to be found. I can see no doctrinal reason
      why it should not be.

32.   In my view the criteria for recognition should in future
primarily be determined by the location of a company's COMI. As
I suggest in *Lamtex*,[45] this better reflects the current commercial
practice in Hong Kong. The use of companies incorporated in
offshore jurisdictions as holding companies and intermediate
subsidiaries for business groups conducting their activities in Hong
Kong and the Mainland is widespread. The connection between
such companies and the place of their incorporation is entirely
formal. It is rare for such companies to conduct any business in the
jurisdiction and I imagine commonly no director or employee ever
visits them. Normally in my experience when such companies are
put into provisional or final liquidation two or three liquidators are
appointed by the offshore court at least one of whom, commonly
two, are based in Hong Kong from where they conduct the
liquidation. Treating the place of incorporation in such circumstances
as being the natural home or commercially most relevant jurisdiction
of the company for the purpose of determining, which jurisdiction

---

[43] See the authorities discussed in *Re China Huiyuan Juice Group Ltd* [2021] 1 HKLRD
     255, [18]–[29].
[44] *Supra* at [11].
[45] *Supra*.

is the appropriate place for the seat of a principal liquidation is highly artificial. It also encounters problems of the type discussed recently by Linda Chan J in *Re Up Energy Development Group Ltd*,[46] namely, the need in the case of a genuine liquidation (as opposed to the type of soft-touch provisional liquidation that I have referred to in [12]) for the liquidator to be able to access the wide, express powers provided for in the *Ordinance*, which cannot be granted by way of recognition at common law. I discuss *Up Energy* in more detail later in [46]. If a company's COMI is in Hong Kong I would not normally expect there to be any difficulty in a petitioner demonstrating that the court can properly exercise its discretion to wind up a foreign incorporated company.[47] A winding up order made in Hong Kong will allow the liquidator to use the powers available under the *Ordinance* and, importantly, seek recognition and assistance in the Mainland, which is normally where a company's business is primarily conducted and its assets located. The Cooperation Mechanism I have referred to in [18] permits the relevant Mainland courts to recognise liquidators appointed in Hong Kong over companies whose COMI is located in Hong Kong at the time the application for recognition and assistance is commenced. Adopting the COMI criteria would bring Hong Kong in line with the approach in the Mainland, which is of itself desirable.

33.    Adopting and framing the COMI criteria requires consideration of five subsidiary questions. **First**, it is necessary to decide the relevant date for determining COMI. There are three alternatives:

(1)    the COMI location as at the date of commencement of the foreign insolvency proceedings;
(2)    the COMI location as at the date of the hearing of the foreign officeholder's recognition application in Hong Kong; and
(3)    the COMI location as at the date the foreign office-holder's Hong Kong recognition application is made. This approach would be consistent with the position under *Article 6* of *The Supreme People's Court's Opinion on Taking Forward a Pilot Measure in relation to the Recognition of and Assistance to Insolvency Proceedings in the Hong Kong Special Administrative Region*, which forms part of the Cooperation Mechanism. See also *Re Zetta Jet*.[48]

34.    **Secondly**, it is necessary to decide the elements of COMI. There are four established approaches. All are similar. Under the

---

[46]   [2022] 2 HKLRD 993.
[47]   See [11].
[48]   [2019] SGHC 53; [2019] 4 SLR 1343 at [52]–[61] (Aedit Abdullah J).

Cooperation Mechanism, COMI generally means the place of incorporation, although other factors are also relevant, including the place of the debtor's principal office, the debtor's principal place of business, and the place of the debtor's principal assets (*Article 4* of the Cooperation Mechanism). In the context of the common law Lord Hoffmann in *HIH*[49] regarded the following as the key COMI elements — the place of incorporation, the place of central management, and the location of assets and liabilities. In *Re Opti-Medix Ltd*,[50] the Singapore court suggested the following common law COMI test:

> The COMI will likely be the place where most dealings occur, most money is paid in and out, and most decisions are made. It is thus the place where the bulk of the business is carried out, and for that reason, provides a strong connecting factor to the courts there …
>
> I would note that on a common law adoption of the COMI test, there need not necessarily be a presumption in favour of the registered office, as there is under the Model Law or the EU Insolvency Regulation. However, such a presumption provides a sound default rule in the absence of evidence to the contrary, and provides certainty and regularity. The adoption of such a presumption would also harmonise the results on common law and statutory applications of the COMI test.

35.    ICC Judge Mullen explains the key COMI considerations under the EU Insolvency Regulation, in *Re Investin Quay House Ltd*:[51]

> [T]here is a presumption that the COMI of a company corresponds to the place in which it is registered. Ms Staynings took me to factors that have been held to be relevant in rebutting the presumption, which include —
>
> i)     Where the majority of the company's administration is undertaken in the UK, particularly if the company's creditors would consider the UK to be the place where the important functions are carried out …;
>
> ii)    Where day to day conduct of the business and activities of the company was handled by an agent appointed in England and dealings with third parties were arranged from offices in London, particularly since a third party

---

49    *Supra* at [31].
50    *Supra* at [18] and [25].
51    *Re Investin Quay House Ltd* [2021] EWHC 2371 (Ch) at [35].

would not have known that board meetings took place
in Jersey …;

iii)     Where a company is a 'letterbox' company that does not
carry out any business in the country where its office is
situated …; and

iv)     Generally, factors going to the 'head office functions test',
including the law governing the main contracts, the
location of business relations with clients, the location of
creditors, and the management of the company …

I bear in mind of course that the question is fact specific and
the cases cited are simply examples of factors that the court has
considered relevant in the particular circumstances of those cases.

36.     **The term COMI is not defined in the UNCITRAL Model
Law on Cross–Border Insolvency. The key COMI considerations
are summarised by Abdullah JC in *Re Zetta Jet*[52] at [29] and [85]:**

The term 'COMI' is not … defined in the Model Law or the
Singapore Model Law. There is only a presumption under Art
16(3) of the Singapore Model Law that the place of the debtor's
registered office is its COMI …

I will assess the various factors raised by the parties in the
following categories:

(a)     the location from which control and direction was
administered;

(b)     the location of clients;

(c)     the location of creditors;

(d)     the location of employees;

(e)     the location of operations;

(f)     dealings with third parties; and

(g)     the governing law.

37.     **A more comprehensive discussion of the criteria for
determining COMI under the Model Law is to be found in the
judgment of Glenn J in *Re Ocean Rig UDW Inc*,[53] which concerned
an application for recognition under *Chapter 15* of the *United States
Bankruptcy Code*. The case concerns the restructuring of the debt
of four companies through a scheme of arrangement sanctioned in
the Cayman Islands. One which was incorporated in the Cayman
Islands was the holding company of the other three, which were
incorporated in the Republic of the Marshall Islands. Until sometime**

---

52   *Supra.*
53   570 BR 687 (Bank. S.D.N.Y. Aug. 24, 2017); the decision was upheld on appeal 585
BR 31 (S.D.N.Y. April 5, 2018).

in 2016 each of the companies had its COMI in the Marshall Islands. It was the companies' case that subsequently the COMI was moved to the Cayman Islands. Whether or not this was correct was relevant because recognition under *Chapter 15* requires that a company is in an insolvency process in the location of its "centre of main interests", in which case it is a "foreign main proceeding", or in a place in which it has an "establishment", in which case it is a "foreign non-main proceeding": the terms in quotes being defined in *Chapter 15*, which adopts the *UNCITRAL Model Code* on cross-border insolvency. The legal framework and the issue is summarised by Glenn J at p.695:

> [O]f course, more than good intentions are required before a U.S. bankruptcy court can recognize a foreign proceeding as either a foreign main or foreign non-main proceeding. For example, a so-called 'letter box company,' with no real establishment or other required indicia for its proposed COMI, cannot support recognition. See *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 BR 122, 129-31 & n.8 (Bankr. S.D.N.Y.), *aff'd*, 389 BR 325 (S.D.N.Y. 2007) (stating that 'the COMI presumption may be overcome particularly in the case of a "letterbox" company not carrying out any business' in the country where its registered office is located) (citation omitted). The question that must be addressed here is whether the Foreign Debtors' change of COMI from the RMI to the Cayman Islands satisfies the requirements of the Bankruptcy Code, permitting this Court to recognize the Cayman Proceedings as a foreign main proceeding. A U.S. bankruptcy court that is asked to recognize a foreign proceeding as a foreign main proceeding must decide where a foreign debtor has its center of main interest.

38.   It is not necessary for me to consider the detailed analysis by Glenn J of the evidence relied on as demonstrating that the COMI for each company had moved from the Marshall Islands to the Cayman Islands. It is sufficient to note that Glenn J considered evidence of the following matters as being relevant: the location of directors and board meetings, the location of the companies' principal officers, notices of relocation to the Cayman Islands, location of operations, location of assets, location of bank accounts, location of books and records and the location in which the restructuring activities took place. Glenn J concluded that the COMI of each of the companies was in the Cayman Islands and the proceedings in the Cayman Islands to restructure the debt were "foreign main proceedings". His conclusion is contained in the following passages on p.704.

[I]n assessing these factors, a chapter 15 debtor's COMI is determined as of the filing date of the chapter 15 petition, without regard to the debtor's historic operational activity. See *In re Fairfield Sentry*, 714 F.3d at 137 ('[A] debtor's COMI should be determined based on its activities at or around the time the chapter 15 petition is filed, as the statutory text suggests.'). However, as discussed in greater detail below, to the extent that a debtor's COMI has shifted prior to filing its chapter 15 petition, courts may engage in a more holistic analysis to ensure that the debtor has not manipulated COMI in bad faith.

The JPLs submit that, as of the Petition Date, each Debtor's 'center of main interests' within the meaning of chapter 15 of the Bankruptcy Code was in the Cayman Islands and that COMI was not manipulated prior to the filing in bad faith. As explained more fully below, the Court agrees. The Court concludes that the Cayman Proceedings are foreign main proceedings based on the facts discussed at considerable length in Section F. of the Background section (I.) above. Those facts establish that, among other things, the Foreign Debtors (i) conduct their management and operations in the Cayman Islands; (ii) have offices in the Cayman Islands; (iii) hold their board meetings in the Cayman Islands; (iv) have officers with residences in the Cayman Islands; (v) have bank accounts in the Cayman Islands; (vi) maintain their books and records in the Cayman Islands; (vii) conducted restructuring activities from the Cayman Islands; (viii) provided notices of relocation to the Cayman Islands to paying agents, indenture trustees, administrative and collateral agents, and investment service providers; and (ix) filed a Form 6-K with the SEC showing that their office was in the Cayman Islands.

**In my view similar matters are relevant to the Hong Kong court's determination of whether or not the COMI of a company is in the jurisdiction of the foreign insolvency proceedings.**

**39. Thirdly, how the relationship between the COMI criteria and the Hong Kong court's winding-up jurisdiction may be relevant; a subject I touched on in [32]. The position in my view is as follows. The recognition regime is distinct from the winding-up jurisdiction. The Court may recognise foreign insolvency proceedings whether or not the debtor may be wound up in Hong Kong: *Singularis Holdings Ltd.*[54] The fact that the debtor could be, or has been, wound up in Hong Kong is not of itself a bar to the Court granting assistance to the foreign insolvency office-holders. Recognition as an ancillary liquidation is one form of assistance that may be granted to foreign insolvency office-holders.**

---

54  *Supra* at [5] and [13].

40.   **Fourthly,** whether an inconsistency between the principles of private international law and the principles of recognition and assistance, the former supporting recognition of foreign office-holders appointed in the country of incorporation as the company's lawful agents in accordance with agency theory and ordinary conflict of laws principles for corporations and the latter supporting recognition largely determined by COMI, will cause practical problems. In my view not. The COMI test is relevant in cases in which a foreign liquidator requires more than an order that confirms the liquidator's status and rights arising from his appointment in the place of incorporation (which is justified by orthodox principles of private international law) and seeks a power necessary to exercise a right in furtherance of a liquidation (which engages the principle of modified universalism); the sort of order referred to by Lord Sumption in [23] of *Singularis*,[55] albeit on the assumption that the Liquidator had been appointed in the place of incorporation and this justifies recognition:

> [T]he right and duty to assist foreign office-holders which the courts have acknowledged on a number of occasions would be an empty formula if it were confined to recognising the companies title to its assets in the same way as any other legal person who has acquired title under a foreign law, or to recognising the office-holders right to act on the company's behalf in the same way as any other agent or company appointed in accordance with the law of its incorporation. The recognition by a domestic court of the status of a foreign liquidator would mean very little if it entitled him to take possession of the company's assets but left him with no effective means of identifying or locating them.

41.   **Fifthly,** cases where the location of the COMI is unclear. In my view where the location of COMI is unclear, the Court may nevertheless grant recognition and assistance if for practical reasons it is necessary and the foreign insolvency process is in the place of incorporation. This type of pragmatic approach was supported by Abdullah JC in *Re Opti-Medix Ltd*:[56]

> Aside from a common law COMI test, the recognition of the Tokyo order could also be justified on practical grounds. Where the interests of the forum are not adversely affected by a foreign order, the courts should lean towards recognition. This approach could be justified on the bases of not only comity but also of business practicality. In the present case, the interests of Singapore creditors were protected by the undertaking …, and there was no

---

[55]   *Supra.*
[56]   *Supra* at [26].

competing jurisdiction interested in the winding up of the Companies. On the other hand, the jurisdiction which had the greatest interest, Japan, had moved in favour of liquidation. To hinder the orderly dissolution of the Companies in this situation would serve no purpose. The decisions in both *Re Lee Wah Bank* … and *Re RussoAsiatic Bank* … could perhaps be explained on this practical basis.

42.   In my view none of the subsidiary matters I have considered suggest that adopting the COMI criteria conflicts in a material and problematic way with other principles and practical considerations, which are potentially engaged.

## Authorities in Hong Kong

43.   The authorities show the following types of specific assistance having been granted. In *Re Irish Shipping Ltd*[57] concerned a petition to winding up an unregistered company pursuant to *s.327* of the *Companies Ordinance* (Cap.32). The company was incorporated and in liquidation in Ireland. The petition was presented by the company's liquidator. Jones J in accepting that assistance in the form of an ancillary liquidation should be granted says this:

Another factor that I have taken into account in exercising my discretion is the comity of nations whereby it is desirable that the court should assist the liquidator in another jurisdiction to carry out his duties unless good reasons to the contrary have been put forward and I find none in this case. The jurisdiction of this court in the liquidation would be ancillary as far as possible to the winding up in Ireland and would provide assistance to the official liquidator in the collection and preservation of the assets within Hong Kong.

In *Re Information Security One Ltd*[58] the winding–up petition was brought by the company in compulsory liquidation in the Cayman Islands in which it was incorporated acting by its joint and several liquidators. Kwan J as she then was held that:

8.   Authorities for the proposition that an ancillary liquidation may be brought in Hong Kong in respect of a foreign company where there is principal liquidation in its place of incorporation are found in *Re Irish Shipping Ltd* [1985] HKLR 437 and *Re Zhu Kuan Group Co Ltd* (unrep., HCCW No 874 of 2003) …

---

[57]   [1985] HKLR 437, 439, 445 (Jones J).
[58]   [2007] 3 HKLRD 780 at [1]–[2] and [8] (Kwan J).

Similarly, in *Re China Medical Technologies Inc (No 1)*[59] where the Court of Appeal permitted Cayman Liquidators to act on behalf of the debtor in Hong Kong. Barma JA explains the situation in [5]–[6] and [24]:

> The Company, incorporated in the Cayman Islands, was not registered in Hong Kong. It was the holding company of a group of companies which developed, manufactured and marketed surgical and medical equipment in China. It was wound up in the Cayman Islands in July 2012 and placed into bankruptcy in New York in August 2012…
>
> The petition to wind up the Company in Hong Kong was, as noted above, brought by the Company itself, acting through its Cayman Islands Joint Official Liquidators …
>
> In the present case, it is pertinent to note that while the winding up order sought is in respect of an insolvent company, the petition is not in fact brought by a creditor, but by the Company itself, acting through its liquidators appointed in its home jurisdiction, by the courts of its place of incorporation.

44.    The following cases demonstrate that it is permissible for foreign insolvency office-holders to take possession of the debtor's assets: In *Singularis Holdings Ltd*[60] Lord Sumption explains that:

> The English courts have for at least a century and a half exercised a power to assist a foreign liquidation by taking control of the English assets of the insolvent company.

The Court of Final Appeal in *Chen Li Hung v Ting Lei Miao*[61] recognised and assisted Taiwanese bankruptcy trustees. Bokhary PJ held:

> By suing to establish that shares registered in other persons' names are beneficially owned by a bankrupt, his trustees in bankruptcy would be doing nothing materially different from suing to recover debts due to him. And I am satisfied that we should proceed on the footing that under the law in operation where they were appointed, the Trustees have the right to sue in their own names here with a view to getting the disputed 1.25 million Nikko shares into Mr Ting's estate. This is because it is not in dispute that every step taken by the Trustees, including every step which they have taken in Hong Kong, is in conformity with directions obtained by them from the bankruptcy court in Taiwan …

---

[59]  [2018] HKCA 111; [2018] HKCLC 65.
[60]  *Supra* at [10].
[61]  (2000) 3 HKCFAR 9 at 16–17, 21.

I hold that the Taiwanese bankruptcy order extends to Mr Ting's assets situated in Hong Kong…

In my judgment, the Taiwanese bankruptcy order is to be given effect by the Hong Kong courts…

That the Trustees act in accordance with the directions of the Taiwanese bankruptcy court is an unremarkable matter consistent with routine insolvency practice the world over.

**45.    It is permissible to grant foreign insolvency office-holders the power to gather information from third parties. Continuing from his explanation quoted in [25] above Lord Sumption explains in *Singularis*:**[62]

> [T]here is a power at common law to assist a foreign court of insolvency jurisdiction by ordering the production of information in oral or documentary form which is necessary for the administration of a foreign winding up. In recognising the existence of such a power, the Board would not wish to encourage the promiscuous creation of other common law powers to compel the production of information. The limits of this power are implicit in the reasons for recognising its existence. In the first place, it is available only to assist the officers of a foreign court of insolvency jurisdiction or equivalent public officers. It would not, for example, be available to assist a voluntary winding up, which is essentially a private arrangement and although subject to the directions of the court is not conducted by or on behalf of an officer of the court. Secondly, it is a power of assistance. It exists for the purpose of enabling those courts to surmount the problems posed for a world-wide winding up of the company's affairs by the territorial limits of each court's powers. It is not therefore available to enable them to do something which they could not do even under the law by which they were appointed. Thirdly, it is available only when it is necessary for the performance of the office-holder's functions. Fourth, the power is subject to the limitation in *In re African Farms Ltd* and in *HIH* and *Rubin*, that such an order must be consistent with the substantive law and public policy of the assisting court … It follows that it is not available for purposes which are properly the subject of other schemes for the compulsory provision of information.

**Also in *Singularis* a stay was imposed on creditors trying to levy execution against local assets.**[63]

---

[62]  *Supra.*
[63]  *Supra* at [12]–[14] and [19] (Lord Sumption), and [54] (Lord Collins).

*Re Up Energy Development Group Ltd*

46.    Mr Ho drew my attention to a very recent decision of Linda Chan J in *Re Up Energy Development Group Ltd*.[64] As Chan J notes in the first paragraph of her judgment *Up Energy* is an unusual case. *Up Energy* is incorporated in Bermuda, listed in Hong Kong and its business was conducted in the Mainland. The winding-up petition in Hong Kong came on for substantive hearing before Chan J on 10 January 2022. As I understand the position the company sought initially to have the petition adjourned until after a hearing to convene a meeting of creditors, which it intended would be made before me a few months later. Chan J was not satisfied that all the relevant issues had been properly addressed before her and adjourned the petition for further argument on 14 February 2022. Chan J ordered further submissions to be made. The company was wound up in Bermuda on 11 March 2022. The company had been put into soft-touch provisional liquidation in 2017, which was recognised by an order made by me in August 2017. Obviously this proved unsuccessful. The Company argued that it should not be wound up in Hong Kong and instead the liquidation in Bermuda should be recognised and the powers necessary to conduct the liquidation in Hong Kong extended to the liquidators by way of common law recognition. Chan J rejected this argument. Chan J held, and I simplify, that it was not possible for a foreign liquidator to conduct a winding up in Hong Kong, which required the liquidators to exercise the powers available to a Hong Kong liquidator under the *Ordinance*. The common law power of assistance did not permit the court "*to make the provisions under the CWUO available to the Bermuda liquidators or the Company in the absence of a winding up order made by the Hong Kong court.*"[65] Mr Ho in the present case agreed that Chan J's conclusion represented the current orthodox view for the reasons explained in *Rubin v Eurofinance*[66] and *Singularis*.[67] I agree. So far as the present case is concerned what requires consideration is sub-paragraph (3) of [81], which contains Chan J's determinations. Chan J says this: "*In the absence of a winding up order [in Hong Kong] made against the [c]ompany, the court does not have power under the common law to confer any powers on the Bermuda Liquidators or make any provisions under the [Companies (Winding Up and Miscellaneous Provisions) Ordinance (Cap.32)] available to the [c]ompany.*" Mr Ho quite properly brought it to my attention, because although the second part of the sentence, which concerns the issue that I understand was

---

[64]  *Supra.*
[65]  [59].
[66]  *Supra.*
[67]  *Supra.*

central in the case is not relevant to the present matter as the order sought does not require a power under the *Ordinance* to be extended to the Liquidator, the first part of the sentence suggests that no powers at all can be conferred at common law.

47.    As I have explained, in the present case the order that I have made is justified by established principles of private international law. As Lord Sumption demonstrates in the parts of *Singularis* referred to in [16] above the court is not constrained from granting any assistance at all to a foreign liquidator. The court can grant assistance to facilitate a foreign liquidator whose appointment has been recognised on orthodox principles of private international and which engages the principles of modified universalism. As Chan J refers at length to *Singularis* in her judgment I think a fair reading of [81(3)] is that her Ladyship had in mind (A) an argument that the common law allowed powers analogous to those provided in the Ordinance to be granted to foreign liquidators rather than (B) powers intended to assist a foreign liquidator effectively to exercise rights that a domestic court recognises because the liquidator had been appointed in the place of incorporation; in other words the situation discussed by Lord Sumption in [23] of *Singularis*. I am concerned with the latter type of case. For the reasons I have explained in earlier paragraphs, in my view it is entirely consistent with modified universalism and the established common law principles of recognition and assistance for the Hong Kong court to grant powers intended to assist a foreign liquidator appointed in the jurisdiction of a company's COMI effectively to exercise rights, which arise from the liquidator's status in the COMI jurisdiction.

**Form of Order**

48.    I will grant an order in the form annexed to this judgment. In [1] I will order that the liquidation is recognised. This I do on the basis discussed in [39]–[40] alternatively on practical grounds. The Liquidator is the lawful agent of the Company as a matter of the law of its place of incorporation and entitled to direct that its assets are transferred from accounts in Hong Kong to accounts in Bermuda. Paragraph 2 confirms that the Provisional Liquidator has the power to secure and obtain the Company's assets and documents in Hong Kong. This is simply confirming the position under orthodox principles of private international law and gives the Provisional Liquidator assistance, which might fairly be described as more managerial in nature than of a type associated specifically with insolvency.

49.    Paragraph 3 permits the transfers of the relevant sums of money as directed by the Provisional Liquidator. Paragraphs 4 and 5 are self-explanatory.

## Conclusion

50.    In my view the correct approach to assessing whether or not a foreign liquidation should be recognised is first to determine if at the time the application for recognition is made the foreign liquidation is taking place in the jurisdiction of the Company's COMI. If it is not recognition and assistance should be declined unless the application falls within one of the following two categories. **First**, it is limited to recognition of a liquidator's authority, if appointed in the place of incorporation, to represent a company and orders that are an incident of that authority; which might be described as managerial assistance. As the Provisional Liquidator in the present case only requires an order that demonstrates to Computershare and HSBC that as the lawful agent of the Company he is entitled to direct the monies to be transferred to another bank account in my view the application, when the superfluous paragraphs dealing with more general assistance in the originating summons are deleted, is justified by established principles of private international law. **Secondly**, recognition and limited and carefully prescribed assistance which does not fall within the first category required by a liquidator appointed in the place of incorporation as a matter of practicality; the type of situation in other words, which Abdullah JC describes as justifying assistance on practical grounds in *Opti-Medix*.

**Reported by Ken TC Lee**

**Appendix**

*Order*

UPON the application of Mr. John Christopher McKenna of Finance & Risk Services Ltd in his capacity as the sole provisional liquidator of Global Brands Group Holding Ltd (In Liquidation in Bermuda) (**Company**) by way of *ex parte* originating summons filed on 25 May 2022

AND UPON reading the Letter of Request issued by the Supreme Court of Bermuda dated 28 March 2022, the Affidavit of John Christopher McKenna filed on 26 May 2022 and the exhibit referred to therein, and the 2nd Affidavit of Lau Po Wa Vivian filed on 27 May 2022 and the exhibit referred to therein

AND UPON hearing counsel for the Applicant, the 1st and 2nd Respondents being absent

**IT IS ORDERED THAT:**

(1)    The liquidation of the Company pursuant to the order of the Supreme Court of Bermuda (**Bermuda Court**) dated 5 November 2021 and the appointment of John Christopher McKenna of Finance & Risk Services Ltd, Suite 502, 26 Bermudiana Road, Hamilton, Bermuda, as provisional liquidator (**Provisional Liquidator**) pursuant to the order of the Bermuda Court dated 16 September 2021, and his continuation in office pursuant to the order of the Bermuda Court dated 5 November 2021, be recognised by this Court.

(2)    The Provisional Liquidator has and may exercise in the Hong Kong Special Administrative Region the following powers:

  a)    to locate, protect, secure and take into their possession and control the books, papers, and records of the Company including the accountancy and statutory records within the jurisdiction of this Court. The books, records and documents of the Company include:

    i.    Emails exchanged and other correspondences between the Company and its auditors, and the Company and other third parties; and

    ii.   Documents and information provided by the Company to its auditors and provided by the

auditors to the Company in relation to the audit work;

b)    to take all necessary steps to prevent any disposal of the Company's assets and, in particular, to secure any credit balances in any bank accounts in the name or under the control of the Company within this jurisdiction;

c)    to operate and open or close any bank accounts in the name and on behalf of the Company for the purpose of collecting the assets and paying the costs and expenses of the Provisional Liquidator;

d)    to retain and employ barristers, solicitors or attorneys, accountants and/or such other agents or professional persons as the Provisional Liquidator considers appropriate for the purpose of advising or assisting in the execution of their powers and duties under this Order; and

e)    to bring legal proceedings and make applications to this Court, whether in his own name or in the name of the Company.

(3)    Subject to any adjustments for additional interest accrued and for bank charges or fees incurred, the following balances comprising receivables due in respect of dividends and interest income derived from shares that are not vested under the Company's 2014 and 2016 share award schemes (**GBG Share Award Schemes**) because of staff termination standing to the credit of the 1st Respondent, the trustee for the GBG Share Award Schemes, and maintained with the 2nd Respondent, be delivered up to the Company in accordance with the instructions issued by the Provisional Liquidator:

| Type of account | Name of Account | Account number | Balances (HKD) |
| --- | --- | --- | --- |
| Cash Custodian Account | Computershare Hong Kong Trustees Ltd Account No. 0018 | 848-XXXXXX-001 | 64,860.54 or any balances remaining therein |
| Cash Custodian Account | Computershare Hong Kong Trustees Ltd Account No. 0047 | 741-XXXXXX-001 | 8,399,057.66 or any balances remaining therein |

| Type of account | Name of Account | Account number | Balances (HKD) |
| --- | --- | --- | --- |
| | Computershare Hong Kong Trustees Ltd Account No. 0047 – No.2 Account | | |

(4)    The sum of HK$135,250 be returned by the 1st Respondent to the Company in accordance with the instructions issued by the Provisional Liquidator. Such sum is the total amount deducted by the 1st Respondent from the cash balance held by them as trustee under the GBG Share Award Schemes to set off their outstanding fees for the months of April to August 2021.

(5)    The following balances standing to the credit of the Company maintained with the 2nd Respondent, subject to any adjustments for additional interest accrued and for bank charges or fees incurred be delivered up to the Company in accordance with the instructions issued by the Provisional Liquidator:

| Type of account | Account number | Balances |
| --- | --- | --- |
| EUR Current Account | 848-XXXXXX-220 | EUR 9.85 |
| HKD Current Account | 848-XXXXXX-001 | HKD 730.01 |
| USD Current Account | 848-XXXXXX-201 | USD 4,748.79 |

(6)    The Provisional Liquidator does have liberty to apply; and

(7)    The costs of this application be paid out of the assets of the Company as an expense of the liquidation.