UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

------------------------------X
IN RE:                        :
                              :   Chapter 11
HO WAN KWOK, *et al.*,        :
                              :   Case No. 22-50073 (JAM)
                              :
                              :   (Jointly Administered)
                              :
                              :
                              :
                              :
                              :
------------------------------X

### DECLARATION OF PROFESSOR DR. FELIX DASSER, LL.M.
### IN OPPOSITION TO CLAIMANT'S MOTION TO COMPEL

I, Professor Dr. Felix Dasser, LL.M., declare as follows:

**I.    Professional Qualifications**

1. I am qualified to practice law before the Swiss bar and I am a partner at Homburger AG, a law firm in Zürich, Switzerland.

2. I am also an Adjunct Professor of Law (*Titularprofessor*) at the University of Zürich. I teach mainly international dispute resolution, private international law, and contract law.

3. I hold a PhD degree in law from the University of Zurich (1989) and an LL.M. degree from Harvard Law School (1990) and had a post-doctoral thesis (professorial "*Habilitation*") accepted by the University of Zurich in 1999.

4. My *curriculum vitae*, including a list of publications, is attached as <u>Exhibit 1</u>.

**II.     Scope of Engagement**

5. I have been engaged by UBS AG ("UBS AG") in order to address certain questions of Swiss law in relation to the proceedings currently pending involving Ho Wan Kwok as well as Luc A. Despins in his capacity as the chapter 11 trustee appointed in the Ho Wan Kwok's chapter 11 case ("the Trustee") and UBS AG, Case No. 22-50073 ("the Case"), in the United States Bankruptcy Court District of Connecticut, Bridgeport Division ("the Court").

6. In particular, my engagement concerns a motion to compel by the Trustee filed in the Court seeking the production by UBS AG of certain documents relating to accounts, funds, transactions and other activities related to certain entities and persons and other financial information in Switzerland ("the Motion to Compel") as specified in the Trustee's Subpoena for Rule 2004 Examination dated September 22, 2022 ("the Subpoena").

7. I am advised by UBS AG that:

    a.   all Swiss-booked wealth management and retail & corporate accounts were moved from UBS AG to a new subsidiary, UBS Switzerland AG ("UBS Switzerland"), as of June 14, 2015 as a consequence of a spin-off of the Swiss booked business into a separate and independent business unit in response to a request by the Swiss Financial Market Supervisory Authority ("FINMA"), the Swiss financial market regulator. Therefore, the respective information and documents would not be in the possession or under the control of UBS AG;

    b.   the information and documents requested, to the extent that they exist, concern the banking relationship, if any, of UBS AG and/or UBS Switzerland (together "the UBS Companies") with various persons and entities listed in the Subpoena and defined as the 2004 Discovery Targets ("the 2004 Discovery Targets"). I am

not informed of any waiver of the banking secrecy by the 2004 Discovery Targets.

8. The questions regarding which my opinion has been requested are the following:

(1) Are there any impediments under Swiss law against UBS AG providing documents situated in Switzerland under the Subpoena, and if so, what would be the sanctions in case of a breach?

(2) Are there alternative means of providing the documents available under Swiss law?

9. My response to the questions is set forth below.

## III. Conclusions

(1) In summary, I am of the opinion that production of documents by UBS AG as listed in the Subpoena would be prohibited by Swiss criminal law, namely article 47 Swiss Banking Act ("SBA"), articles 271 Swiss Penal Code ("SPC") and article 273 SPC, and would expose any employees and agents of UBS AG who are involved in the production of the documents, to criminal sanctions, including imprisonment.

(2) Document production may instead legally be obtained through the Hague Convention on the Taking of Evidence.

## IV. Issues of Swiss Law

10. Attached as <u>Exhibit 2</u> for the Court's convenience are unofficial translations of the Swiss statutes referenced herein.

### A. Swiss Banking Secrecy

11. To the extent that documents sought by the Trustee contain information about a customer relationship with a Swiss bank, such as the UBS Companies, article 47(1) of the Swiss

Banking Act of November 8, 1934 ("SBA") must be taken into account. Article 47 SBA provides that bank employees and agents who violate their duty of confidentiality are subject to criminal sanctions, including imprisonment. The relevant provisions read as follows:

> "1   Whoever intentionally does the following shall be imprisoned up to three years or fined accordingly:
>
> a. disclose confidential information entrusted to them in their capacity as a member of an executive or supervisory body, employee, representative, or liquidator of a bank or a person in accordance with article 1b, as member of a body or employee of an audit firm or that they have observed in this capacity;
>
> b. attempt to induce an infraction of the professional secrecy;
>
> c. disclose confidential information to third parties or use this information for own benefits or the benefit of others.
>
> $1^{bis}$   Whoever enriches themselves or others with an action in accordance with (1)(a) or (c) shall be punished with imprisonment for up to five years or fined accordingly.
>
> 2   Whoever acts in negligence shall be penalized with a fine of up to CHF 250,000
>
> [...]"

12. A Swiss bank is required to keep its relationships with bank customers secret. It may divulge information affecting the financial privacy of its customers only upon a waiver by the customer or by order of a competent Swiss court (Günter Stratenwerth, in: Watter/Vogt/Bauer/-Winzeler, eds., Basler Kommentar Bankengesetz [commentary to the Swiss Banking Act], 2nd ed. 2013, N 25 *et seq. ad* Art. 47 SBA ["BSK-Stratenwerth"]).

13. Article 47 SBA was enacted in 1934 on the background of a traditionally strong right to privacy applying to all persons, irrespective of whether they are Swiss or foreign, and to domestic and international situations (BSK-Stratenwerth, N 1 *ad* Art. 47 SBA; Federal Supreme Court BGE 137 [2011] II 431 cons. 2.1.1). Thus, article 47 SBA is not a "blocking statute" directed against U.S. authorities as is sometimes alleged in ignorance of the historic context.

14. The banking secrecy as protected by article 47 SBA covers any and all information about a customer, including, in particular, the existence or inexistence of a banking relationship as such, any account details, transactions performed on behalf of a customer, and any documents concerning such a banking relationship (*see* BSK-Stratenwerth, N 13 *ad* Art. 47 SBA; Jörg Schwarz, in: Ackermann, ed., Wirtschaftsstrafrecht der Schweiz, 2nd ed. 2021 Bern, §19 N 75, p. 690 ["Schwarz"]). Thus, any information or documents concerning a possible banking relationship of the UBS Companies with the 2004 Discovery Targets are protected by article 47 SBA.

15. It is worth noting that over the past decade, Parliament has slightly expanded the scope of the provision and increased the penalties in certain situations, thereby indicating the Swiss interest in protecting the banking secrecy from breaches by individual persons, while Switzerland at the same time facilitated the disclosure of banking data through official governmental channels.

16. Any violation of article 47 SBA has to be prosecuted *ex officio,* even in the absence of any complaint by the customer (Schwarz, §19 N 111, p. 699). This indicates the strong public policy underlying the financial privacy of bank customers.

17. Under Swiss law, the restrictions of article 47 SBA may not be lifted due to the order of a foreign court. Thus, an order issued by a foreign court to collect and produce documents covered by the banking secrecy for use in foreign civil proceedings may not be followed by employees or agents of a Swiss bank without violating article 47 SBA (Schwarz, §19 N 104, p. 697).

18. To the extent an employee or agent of the UBS Companies assisted with the collection and/or production of the requested documents, he or she would be committing a criminal offense punishable by up to three years in prison, regardless of whether such collection and/or production was done in response to the order of a foreign court.

19. To the extent that an employee or agent of UBS AG would ask, request or otherwise instigate an employee of UBS Switzerland to provide customer information or documents, such employee or agent of UBS AG would also be punishable pursuant to article 47 SBA, even if UBS AG were considered a third party with respect to customers of UBS Switzerland (*see* BSK-Stratenwerth, N 16 *ad* Art. 47 SBA).

20. Violations of the banking secrecy are regularly prosecuted and sanctioned by Swiss public prosecutors and courts. The Swiss Federal Statistical Office reports on average about a dozen criminal convictions per year relating to the SBA (articles 46, 47, 49 SBA), but does not report separate figures for violation of the banking secrecy.[1] (*See* https://www.bfs.admin.ch/bfsstatic/dam/assets/17244022/master.) I understand that there are on average several convictions under article 47 SBA per year. I have personal knowledge of several criminal proceedings and also of convictions.

21. In an *amicus* brief filed in the action captioned *U.S.* v. *UBS AG*, No. 09-cv-20423 in the Southern District of Florida on April 30, 2009, the Government of Switzerland stated that, "[s]ince 1993, there have been 48 convictions for violations of article 47." The *amicus* brief and relevant supporting declaration are attached as <u>Exhibit 3</u>. Some cases are public knowledge, such as the conviction and sentencing to three years imprisonment of a German national who worked at a Swiss bank and provided customer data to German tax authorities in violation primarily of article 47 SBA and article 273 SPC (Federal Criminal Court SK.2013.26, August 22, 2013). Under similar circumstances a former employee of Credit Suisse was sentenced to two years imprisonment (Federal Criminal Court SK.2011.21, December 15, 2011). An employee of

---

[1] To put this figure into perspective: in Switzerland, there are on average 15 convictions for murder per year (BSK-Schwarzenegger, Section I *ad* Art. 112 SPC).

Hyposwiss Privatbank AG who disclosed customer information to a Swiss attorney for forwarding to his foreign client was sentenced to 15 months imprisonment for, primarily, attempted violation of article 273 SPC (merely attempted because the Swiss attorney reported to the Swiss authorities, not to his client) and violation of article 47 SBA (Federal Criminal Court SK.2013.37 December 10, 2013).

22. In a recent Federal Supreme Court case, the issue was whether a former employee of a bank violated the banking secrecy when he (allegedly by mere oversight) produced documents which contained unredacted customer data in a labor court case against the bank. The Supreme Court held that article 47 SBA is applicable even in such a situation, where the protected information was merely disclosed to the court, the records of which are not public, and remitted the case to the lower court to further assess the facts of the potential breach of the banking secrecy (6B_247/2019, June 22, 2020).

23. In addition, in case of violation of the banking secrecy, a bank as well as its senior employees would face serious regulatory action and potential sanctions by FINMA for collecting or producing information or documents covered by the banking secrecy under the requirement to be "fit and proper to do business". For an employee, such sanctions may include a disqualification to work for a regulated Swiss financial institution in a senior position.

B.     **Protection of Swiss Sovereignty (Article 271 SPC)**

24. Article 271(1) of the Swiss Penal Code of December 21, 1937 ("SPC") provides:

"Any person who carries out activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official,

any person who carries out such activities for a foreign party or organisation,

any person who facilitates such activities

shall be liable to a custodial sentence not exceeding three years or to a monetary penalty, or in serious cases to a custodial sentence of not less than one year.

25. As is typical for a civil law country, Switzerland considers the taking of evidence to be a purely judicial function. Thus, any taking of evidence in court proceedings is seen as an action reserved to public authorities, even if undertaken by private parties or counsel. If such taking of evidence is done for foreign proceedings, it is prohibited by article 271 SPC. This includes the production of documents in the context of discovery proceedings. The same applies if a party is to produce documents in a foreign proceeding that are not in its possession or under its control and have to be gathered in Switzerland from a third party in a manner that is similar to investigations under judicial assistance (Markus Husmann, in: Basler Kommentar zum Schweizerischen Strafrecht [commentary to the Swiss Penal Code] II, 4th ed. 2019 ["BSK-Husmann"], N 49 *ad* Art. 271 SPC).

26. Under Swiss law, each affiliated company in a group of companies is qualified as a separate legal entity. In the present case, all Swiss retail, corporate and wealth management bank accounts held at UBS AG were moved to UBS Switzerland as of June 14, 2015. Thus, account information, if any, pertaining to the 2004 Discovery Targets is not in possession or under control of UBS AG.

27. To the extent that UBS AG may have its own information or documents relating to the 2004 Discovery Targets, UBS AG cannot disclose such information or documents under a subpoena order from a foreign court without violating article 271 SPC, as UBS AG would be considered acting on behalf of such foreign court (*see* Guidelines International Judicial Assistance in Civil Matters, Federal Office of Justice, 3rd ed. 2003, last updated January 2013, p. 20 *et seq.*; available at https://www.rhf.admin.ch/rhf/de/home/zivilrecht/wegleitungen.html).

28. Furthermore, in recent years the Swiss Government has considered production of document to foreign authorities to be in violation of article 271 SPC if they contain information about third parties who have not consented to the disclosure (BSK-Husmann, N 45 *ad* Art. 271 SPC with references to decisions of the Federal Justice and the Federal Finance Departments). Any production of documents would, therefore, require careful redaction of any information that would allow the identification of third parties, such as the 2004 Disclosure Targets.

29. Cases of article 271 SPC are usually dealt with at the level of the public prosecutors and the lower courts and thus often not rendered public. Few cases reach the higher courts. A recent exception is a saga concerning the chairman of an asset management company (not a bank) who, in 2013, disclosed client data to the U.S. Department of Justice ("DOJ") in the context of the DOJ's investigations against Swiss financial institutions for aiding and abetting tax fraud by U.S. taxpayers. The chairman did so in view of a non-prosecution agreement reached with the DOJ. The first instance Federal Criminal Court acquitted him against all expectations, arguing that he had not been aware of the violation of article 271 SPC (SK.2017.64, May 9, 2018). The Federal Supreme Court set this judgment aside because an error about the criminal nature of an act is not an obstacle to punishment even though such an error may be taken into account in the assessment of the punishment (6B_804/2018, December 4, 2018). The accused was then duly convicted by the Federal Criminal Court, although merely with a fine of CHF 10,000, not imprisonment, because of the alleged error of the accused about the applicability of article 271 SPC (SK.2018.71, May 2, 2019). An appeal by the accused was dismissed by the Appeals Chamber of the Federal Criminal Court (CA.2019.6, December 5, 2019). A further appeal by the accused against this judgment was dismissed by the Federal Supreme Court (6B_2016/2020, November 1, 2021, partly published as a so-called leading decision in Decisions of the Federal Tribunal ["DFT"] 148 [2022]

IV 66)[2]. The decision is attached as <u>Exhibit 4</u> together with an unofficial English translation by the undersigned.

30. While it is not entirely clear to what extent the reasoning in these decisions is also applicable in cases concerning foreign civil cases instead of foreign criminal investigations, e.g. by the DOJ, the decisions are generally interpreted as indicating a strict approach by the Swiss courts.

31. In particular, the Federal Supreme Court held:

" […] it is widely undisputed in the doctrine that an act which is accompanied by a violation or circumvention of Swiss or international administrative or judicial assistance law or which, according to administrative and judicial assistance law, lies within the jurisdiction of a Swiss authority or official, is covered by article 271 para. 1 SPC ([…]). Circumvention of administrative or judicial assistance by a Swiss party is not a preliminary act within the meaning of article 271 para. 1 section 3 SPC, but the original act within the meaning of article 271 para. 1 section 1 SPC ([…]).
As the lower court correctly states, there is extensive discussion in the doctrine as to whether and to what extent the collection of documents with a view to foreign proceedings and their subsequent submission can be punishable. This, as well as all conceivable constellations, need not be discussed in detail in the present case. What is decisive is that the release of information and documents that can only be lawfully released in Switzerland by sovereign order affects the legal interest protected by article 271 SPC ([…]). In all constellations, only files and information that can be freely disposed of may be handed over. Only the official or legal assistance channel offers a procedural vessel in which secrecy and disclosure obligations can be juxtaposed and the principle of speciality can be guaranteed ([…]). It is not possible to freely dispose of identifying information about third parties that is not publicly accessible ([…])."[3]

32. As a consequence, the accused violated article 271 SPC when he surrendered data about his clients in circumvention of the judicial assistance laws.

---

[2]  Note: all of these decisions are publicly available on the webpage of the respective court. Important reasons for judgment of the Federal Supreme Court are, in addition, traditionally published in the series Decisions of the Federal Tribunal as an indispensable source of Swiss case law.

[3]  DFT 148 (2022) IV 66, cons. 1.4.2.

33. This case was a rare one that reached the level of the Federal Criminal Court and the Federal Supreme Court, but convictions occur regularly even though internationally active Swiss entities are normally well aware of article 271 SPC and cautious. Between 1976 and 2017, there have been 35 convictions for violations of Art. 271 SPC (*see* BSK-Husmann, Section I *ad* Art. 271 SPC).

34. The risk of violating article 271 SPC is taken very seriously in cross-border situations. In my own practice, I advise clients on how to avoid a potential violation of article 271 SPC in the context of foreign legal proceedings almost on a weekly basis.

35. It is important to note that article 271 SPC is not intended to prevent the taking of evidence, but rather ensures that the taking of evidence in aid of foreign proceedings is conducted through the Swiss courts, such as pursuant to the Hague Convention on the Taking of Evidence in Civil and Commercial Matters of March 18, 1970 ("the Hague Evidence Convention") (which is in force, amongst others, in Switzerland, Hong Kong and the United States of America). It thus protects Swiss sovereignty.

**C.      Economic Espionage (Article 273 SPC)**

36. A person who collaborates in taking evidence in Switzerland for use in American court proceedings may face criminal prosecution and conviction for economic espionage pursuant to article 273 SPC, if the taking of evidence is not in accordance with the procedures provided for in the Hague Evidence Convention. Article 273 SPC reads as follows:

"Any person who seeks to obtain a manufacturing or trade secret in order to make it available to an external official agency, a foreign organisation, a private enterprise, or the agents of any of these, or,

any person who makes a manufacturing or trade secret available to an foreign official agency, a foreign organisation, a private enterprise, or the agents of any of these,

shall be liable to a custodial sentence not exceeding three years or to a monetary penalty, or in serious cases to a custodial sentence of not less than one year. Any custodial sentence may be combined with a monetary penalty."

37. Article 273 SPC is designed to protect national public and economic interests at large (BSK-Husmann, N 5 *ad* Art. 273 SPC).

38. A *secret* within the meaning of article 273 SPC is any fact which is not publicly known or accessible (*e.g.*, via publicly accessible internet) and which shall be kept secret pursuant to the intention of the master of the secret, provided that this interest in keeping it secret is worth being protected. Moreover, the secret must have a connection to Switzerland, either because it affects Swiss national interests or because the private party whose secrets are protected resides in Switzerland (BSK-Husmann, N 12, 53 *ad* Art. 273 SPC).

39. In 1977, the Swiss Federal Attorney General issued guidelines as to what constitutes economic espionage under article 273 SPC. The crucial statements are as follows (*see* BSK-Husmann, N 20 *et seqq. ad* Art. 273 SPC):[4]

"1. Insofar as the disclosure is restricted to information with respect to which solely the disclosing person has an interest in secrecy, the decision on the disclosure of such matters may be left to that person.

---

[4] Unofficial translation by the undersigned.

  2. However, according to article 273 SPC it is forbidden and punishable to inform a foreign entity about economic circumstances

    a) in which there is a (direct) national interest in secrecy, or

    b) in the secrecy of which a third party, who has not previously given his formal consent, has an interest worthy of protection."

40. Consequently, while a party requested to provide confidential information may waive the confidentiality of its own secrets for purposes of article 273 SPC, it may not do so to the extent that Swiss third party secrets or the interests of Switzerland as a whole are involved (*i.e.*, when there is a "Swiss nexus"). Whether this is the case depends on the particular circumstances. With regard to bank accounts, in particular, the mere existence of a Swiss bank account suffices for the necessary Swiss nexus even if the account holders are non-Swiss (*see* Appeals Chamber of the Federal Criminal Court BB.2013.133 cons. 5.2, April 16, 2014; BSK-Husmann, N 56 *et seq. ad* Art. 273 SPC).

41. In particular, according to the view of the Swiss Federal Government, a person or entity disclosing secrets as specified above in compliance with a foreign subpoena order or any other order threatening adverse inference or worse in case of non-compliance is in breach of article 273 SPC. The Federal Government even opines that such foreign pressure, however strong it might be, does not create a state of distress justifying the breach of article 273 SPC (BSK-Husmann, N 83 *ad* Art. 273 SPC).

42. Disclosure of secrets does not violate the law if a competent Swiss authority orders disclosure, *i.e.*, by way of judicial assistance proceedings. Conversely, an order by a foreign authority does not justify disclosure (*See* BSK-Husmann, N 78 *et seqq. ad* Art. 273 SPC).

43. Between 1960 and 2016, 102 convictions for violation of article 273 SPC have been rendered (*see* BSK-Husmann, Section I *ad* Art. 273 SPC).

**D.     Judicial Assistance**

44. Neither article 47 SBA nor articles 271 or 273 SPC are so-called "blocking statutes" that would entirely prevent the taking of evidence.

45. To the contrary, Swiss courts can order the production of documents from Switzerland, including the disclosure of secret information about bank customers, for use in foreign proceedings through the route of the Hague Evidence Convention (*see* Federal Office of Justice, Guidelines, *op. cit.*, pp. 20 *et seq.*).

46. Such judicial assistance proceedings are rather frequent. Any such requests by a foreign court that comply with the Hague Evidence Convention are processed by Swiss authorities in a timely manner as I know from my own practical experience with several such proceedings. Typically, such proceedings take between a few weeks and three months.

47. To the extent that documents and information are produced under order of a Swiss court in judicial assistance proceedings, Swiss privacy rules and criminal statutes preventing the production of documents abroad do not apply. This is explicitly stated in article 47(5) SBA with regard to the banking secrecy:

> "(5) The federal and cantonal provisions on the duty to provide evidence or on the duty to provide information to an authority shall be exempted from this provision."

I hereby solemnly declare the foregoing to be true and correct.

Executed on January 27, 2023.

_____
Professor Dr. Felix Dasser, LL.M.

## Official Certification

Seen for authentication of the reverse side signature of

Mr. **Prof. Dr. iur. Felix DASSER**, born 3rd May 1958, Swiss citizen of Thalwil und Herrliberg, according to his information residing at Rietliweg 80, 8704 Herrliberg, personally known to us.

The signature was acknowledged before us by an authorized third party.

This legalization refers only to the authentication of the signature and not to the contents or validity of the document.

Zürich, 27th January 2023
BK no. 369
Fee CHF 20.00

**NOTARIAT UNTERSTRASS-ZÜRICH**

Armin Kuhn, Notary Public

---

**APOSTILLE**
(Convention de la Haye du 5 octobre 1961)

1. Land: Schweizerische Eidgenossenschaft, Kanton Zürich
   Country: Swiss Confederation, Canton of Zürich
   Diese öffentliche Urkunde / This public document
2. ist unterschrieben von
   has been signed by          Armin Kuhn
3. in seiner Eigenschaft als
   acting in the capacity of   Notary Public
4. sie ist versehen mit dem Stempel/Siegel des (der) - bears the stamp/seal of
   Notariat Unterstrass-Zürich Kt. Zürich

   Bestätigt / Certified
5. In / at 8090 Zurich / Zurich    6. am / the    27.01.2023
7. durch die Staatskanzlei des Kantons Zürich
   by the Chancellery of State of the Canton of Zurich
8. unter Nr. / under N°    1275835/2023
9. Stempel/Siegel, Stamp/seal    10. Unterschrift / Signature

S. Overkott