**Exhibit 4**



Urteilskopf

148 IV 66

7. Auszug aus dem Urteil der Strafrechtlichen Abteilung i.S. A. gegen Bundesanwaltschaft (Beschwerde in Strafsachen)
6B_216/2020 vom 1. November 2021

Regeste

Art. 271 Ziff. 1 Abs. 1 StGB; verbotene Handlungen für einen fremden Staat.
Der Straftatbestand soll die Ausübung fremder Staatsgewalt auf dem Gebiet der Schweiz verhindern und das staatliche Machtmonopol sowie die schweizerische Souveränität schützen (E. 1.4.1). Eine Handlung, die mit einer Verletzung oder Umgehung des schweizerischen oder internationalen Amts- oder Rechtshilferechts einhergeht bzw. die gemäss Amts- und Rechtshilferecht im Zuständigkeitsbereich einer schweizerischen Behörde bzw. Amtsperson liegt, wird von Art. 271 Ziff. 1 StGB erfasst. Die Herausgabe von Informationen und Unterlagen, die in der Schweiz einzig auf hoheitliche Anordnung hin rechtmässig herausgegeben werden dürfen, tangiert das von Art. 271 StGB geschützte Rechtsgut. Betroffene dürfen nur Akten herausgeben, über die sie frei verfügen dürfen. Nicht frei verfügt werden darf über nicht öffentlich zugängliche, identifizierende Informationen über Dritte (E. 1.4.2). Dass die herauszugebenden Informationen bestimmungsgemäss auch in einem Drittstaat gespeichert sind, führt zu keiner anderen Beurteilung (E. 1.4.3).

Sachverhalt ab Seite 67

BGE 148 IV 66 S. 67

A.

A.a Der Verwaltungsrat der B. AG, einer in Zürich domizilierten Vermögensverwaltungsgesellschaft, liess im Zuge des Steuerstreits zwischen der Schweiz und den USA die Kundenbeziehungen überprüfen. Die Prüfung ergab, dass die B. AG und ihre Tochtergesellschaften zwischen 2002 und 2012 über eine gewisse Zahl von Kunden verfügten, die sich in den USA eventuell nicht regelkonform versteuert hatten. In der Folge beauftragte A. in seiner Funktion als Verwaltungsratspräsident der B. AG eine Anwaltskanzlei sowie einen Mitarbeiter der B. AG, Dossiers von in den USA mutmasslich steuerpflichtigen Kunden zusammenzustellen. Im Oktober 2012

BGE 148 IV 66 S. 68

reichte A. eine Selbstanzeige beim amerikanischen Justizdepartement (Departement of Justice; nachfolgend: DoJ) ein. Dieses lehnte ein Gesuch um Herausgabe der betreffenden Kundendossiers auf dem Rechts- und Amtshilfeweg ab. Im Hinblick auf ein sog. Non Prosecution Agreement (nachfolgend: NPA) reiste A. schliesslich Mitte November 2013 in die USA und liess dem DoJ - ohne über eine Bewilligung im Sinne von Art. 271 Ziff. 1 StGB zu verfügen - durch einen Rechtsanwalt einen USB-Stick mit insgesamt 109 Kundendossiers der B. AG sowie deren Tochtergesellschaften übergeben.

A.b Am 28. April 2015 erstattete die Eidgenössische Finanzmarktaufsicht (FINMA) bei der Bundesanwaltschaft Anzeige gegen die Verantwortlichen der B. AG sowie allfällige weitere involvierte Personen.
Die Bundesanwaltschaft verurteilte A. mit Strafbefehl vom 19. September 2017 wegen verbotener Handlung für einen fremden Staat (Art. 271 Ziff. 1 Abs. 1 StGB) zu einer bedingten Geldstrafe von 160 Tagessätzen zu Fr. 1'650.- und zu einer Busse von Fr. 10'000.-.
Auf Einsprache von A. hin erhob die Bundesanwaltschaft am 17. November 2017 Anklage.

A.c Die Strafkammer des Bundesstrafgerichts sprach A. am 9. Mai 2018 frei.

A.d Das Bundesgericht hiess die von der Bundesanwaltschaft erhobene Beschwerde in Strafsachen am 4. Dezember 2018 gut, hob das Urteil des Bundesstrafgerichts vom 9. Mai 2018 auf und wies die Sache zur neuen Entscheidung an die Strafkammer des Bundesstrafgerichts zurück (Verfahren 6B_804/2018).

B.

B.a Die Strafkammer des Bundesstrafgerichts verurteilte A. am 2. Mai 2019 wegen verbotener Handlung für einen fremden Staat zu einer Busse von Fr. 10'000.- und auferlegte ihm die Verfahrenskosten.

B.b Die Berufungskammer des Bundesstrafgerichts wies am 5. Dezember 2019 die von A. erhobene Berufung ab, bestätigte das erstinstanzliche Urteil und auferlegte ihm die Verfahrenskosten.

**C.** A. beantragt mit Beschwerde in Strafsachen, das Urteil der Berufungskammer des Bundesstrafgerichts sei aufzuheben und er sei vom Vorwurf der verbotenen Handlungen für einen fremden Staat freizusprechen. Eventualiter sei das Urteil aufzuheben und die

BGE 148 IV 66 S. 69

Sache sei zum Freispruch an die Berufungskammer des Bundesstrafgerichts zurückzuweisen.
Das Bundesgericht weist die Beschwerde ab.

Erwägungen

Aus den Erwägungen:

**1.** (...)

**1.4**

**1.4.1** Gemäss Art. 271 Ziff. 1 Abs. 1 StGB wird bestraft, wer auf schweizerischem Gebiet ohne Bewilligung für einen fremden Staat Handlungen vornimmt, die einer Behörde oder einem Beamten zukommen. Durch die Bestimmung sollen die Ausübung fremder Staatsgewalt auf dem Gebiet der Schweiz verhindert und das staatliche Machtmonopol und die schweizerische Souveränität geschützt werden (Urteile 6B_804/2018 vom 4. Dezember 2018 E. 3; 6B_402/2008 vom 6. November 2008 E. 2.3.2 mit Hinweis; siehe auch Urteil 8G.125/2003 vom 9. Dezember 2003 E. 1.3; MARKUS HUSMANN, in: Basler Kommentar, Strafrecht, Bd. II, 4. Aufl. 2019, N. 6 zu Art. 271 StGB; GAUTHEY/MARKUS, Zivile Rechtshilfe und Artikel 271 Strafgesetzbuch, ZSR 134/2015 I S. 366; FISCHER/RICHA, in: Commentaire romand, Code pénal, Bd. II, 2017, N. 8 zu Art. 271 StGB; YOLANDA MC GOUGH, Verbotene Handlungen für einen fremden Staat, 2018, S. 9 f. Rz. 18). Damit ist stets der Staat Träger des geschützten Rechtsguts; private Personen können nur indirekt betroffen sein (Urteil 8G.125/2003 vom 9. Dezember 2003 E. 1.3; HUSMANN, a.a.O., N. 6 zu Art. 271 StGB). Angegriffen wird mit einer Verletzung der Bestimmung der Anspruch der Schweiz, dass staatliches Handeln auf ihrem Gebiet allein durch ihre Institutionen vorgenommen wird. Im Fokus steht heute zumeist die Frage der Amts- und Rechtshilfebedürftigkeit von Handlungen in Zusammenhang mit ausländischen Rechtsordnungen und Verfahren (vgl. HUSMANN, a.a.O., N. 8 und 27 zu Art. 271 StGB; siehe E. 1.4.2). Eine einer Behörde oder einem Beamten zukommende Handlung ist - unbekümmert, ob ein Beamter dabei tätig wurde - jede Handlung, die für sich betrachtet, d.h. nach ihrem Wesen und Zweck sich als Amtstätigkeit charakterisiert. Entscheidend ist mithin nicht die Person des Täters, sondern der amtliche Charakter der Handlung (**BGE 114 IV 128** E. 2b mit Hinweisen; HUSMANN, a.a.O., N. 10, N. 12 und 23 zu Art. 271 StGB; DAMIAN K. GRAF, Mitwirkung in ausländischen Verfahren im Spannungsfeld mit Art. 271 StGB, Unter Berücksichtigung der

BGE 148 IV 66 S. 70

jüngsten Bewilligungspraxis von EJPD und EFD, Gesellschafts- und Kapitalmarktrecht [GesKR] 2016 S. 171; OESTERHELT/FRACHEBOUD, in: Kommentar zum Schweizerischen Steuerrecht, Amtshilfe, 2020, § 29 N. 16 ff.; MC GOUGH, a.a.O., S. 47 ff. Rz. 103 ff.; DAVID ROSENTHAL, in: Handkommentar zum Datenschutzgesetz, Rosenthal/Jöhri [Hrsg.], 2008, N. 6 zu Art. 271 StGB). Die strafbare Handlung muss für einen fremden Staat, d.h. in dessen Interesse erfolgen (**BGE 114 IV 128** E. 3b; HUSMANN, a.a.O., N. 14 zu Art. 271 StGB; GRAF, a.a.O., S. 172; OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 26; DUPUIS UND ANDERE, CP, Code pénal, 2. Aufl. 2017, N. 14 zu Art. 271 StGB). Der Tatbestand erfasst nur diejenigen Handlungen, die ohne staatliche Bewilligung vorgenommen werden. Über entsprechende Bewilligungen nach Art. 271 Ziff. 1 StGB zur Vornahme von Handlungen für einen fremden Staat entscheiden die Departemente und die Bundeskanzlei in ihrem Bereich (Art. 31 der Regierungs- und Verwaltungsorganisationsverordnung vom 25. November 1998 [RVOV; SR 172.010.1; in der bis zum 31. Dezember 2013 geltenden Fassung]; GRAF, a.a.O., S. 172 f.; siehe ausführlich zu den Bewilligungen OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 34 ff.; HUSMANN, a.a.O., N. 78 ff. zu Art. 271 StGB; FISCHER/RICHA, a.a.O., N. 38 ff. zu Art. 271 StGB; MC GOUGH, a.a.O., S. 137 ff. Rz. 359 ff.). Die betreffende Handlung muss auf schweizerischem Gebiet stattgefunden haben. Dabei genügt es nach herrschender Lehre, dass nur ein Teil der strafbaren Handlungen in der Schweiz vorgenommen wurde (OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 22 ff. und N. 73; FISCHER/RICHA, a.a.O., N. 36 zu Art. 271 StGB; ROSENTHAL, a.a.O., N. 34 zu Art. 271 StGB; DUPUIS UND ANDERE, a.a.O., N. 13 zu Art. 271 StGB).

**1.4.2** Vorliegend ist unbestritten, dass die Handlung des Beschwerdeführers, das heisst, die Übergabe der Kundendossiers an das DoJ, im Interesse der USA und für einen fremden Staat, auf schweizerischem Gebiet und ohne Bewilligung erfolgte. Umstritten und damit zu prüfen ist, ob die Handlung einer Behörde oder einem Beamten vorbehalten ist, sie mit anderen Worten amtlichen Charakter hat. Die Qualifikation einer Handlung als Amtshandlung hat nach schweizerischer Rechtsauffassung zu erfolgen (vgl. **BGE 114 IV 128** E. 2c; GAUTHEY/MARKUS, a.a.O., S. 368; MC GOUGH, a.a.O., S. 48 Rz. 105; ROSENTHAL, a.a.O., N. 6 zu Art. 271 StGB; HUSMANN, a.a.O., N. 23 und 27 zu Art. 271 StGB; FISCHER/RICHA, a.a.O., N. 7 zu Art. 271 StGB; OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 16). Für die Auslegung der Tathandlung ist das geschützte Rechtsgut massgebend.

BGE 148 IV 66 S. 71

Bei der Bestimmung des strafbaren Charakters einer Handlung ist danach zu fragen, ob die betreffende Handlung geeignet ist, die "staatliche Herrschaftssphäre" zu gefährden (vgl. MC GOUGH, a.a.O., S. 75 Rz. 180; HUSMANN, a.a.O., N. 30 zu Art. 271 StGB). In der Doktrin werden die von der Rechtsprechung entwickelten Kriterien der verbotenen Handlung weiter konkretisiert (vgl. bspw. HUSMANN, a.a.O., N. 23 ff. zu Art. 271 StGB). Darauf braucht vorliegend jedoch nicht im Detail eingegangen zu werden, da in der Lehre weitestgehend unbestritten ist, dass eine Handlung, die mit einer Verletzung oder Umgehung des schweizerischen oder internationalen Amts- oder Rechtshilferechts einhergeht bzw. die gemäss Amts- und Rechtshilferecht im Zuständigkeitsbereich einer schweizerischen Behörde bzw. Amtsperson liegt, von Art. 271 Ziff. 1 StGB erfasst wird (HUSMANN, a.a.O., N. 27 und N. 31 zu Art. 271 StGB; OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 7 f.; ROSENTHAL, a.a.O., N. 1 zu Art. 271 StGB; CLAUDIO BAZZI, Internationale Wirtschaftsspionage, 2015, S. 186 ff. Rz. 368 ff.; GAUTHEY/MARKUS, a.a.O., S. 394 ff.; relativierend bezüglich Privatpersonen: MC GOUGH, a.a.O., S. 75 f. Rz. 181). Eine Umgehung der Amts- oder Rechtshilfe durch eine schweizerische Partei stellt kein Vorschubleisten i.S.v. Art. 271 Ziff. 1 Abs. 3 StGB, sondern die originäre Handlung i.S.v. Art. 271 Ziff. 1 Abs. 1 StGB dar (vgl. GRAF, a.a.O., S. 178 f.; HUSMANN, a.a.O., N. 40 zu Art. 271 StGB; GAUTHEY/MARKUS, a.a.O., S. 394 f.).

Wie die Vorinstanz zutreffend festhält, wird in der Lehre ausführlich darüber diskutiert, ob und inwieweit die Sammlung von Dokumenten im Hinblick auf ein ausländisches Verfahren und deren anschliessende Einreichung strafbar sein kann. Darauf, wie auf alle denkbaren Konstellationen braucht vorliegend nicht im Detail eingegangen zu werden. Massgebend ist, dass die Herausgabe von Informationen und Unterlagen, die in der Schweiz lediglich auf hoheitliche Anordnung hin rechtmässig herausgegeben werden können, das von Art. 271 StGB geschützte Rechtsgut tangiert (vgl. HUSMANN, a.a.O., N. 40 zu Art. 271 StGB; BAZZI, a.a.O., S. 188 Rz. 370). In sämtlichen Konstellationen dürfen nur Akten und Informationen herausgegeben werden, über die frei verfügt werden kann. Nur der Amts- oder Rechtshilfeweg bietet ein prozessuales Gefäss, in welchem Geheimhaltungs- und Offenlegungspflichten einander gegenübergestellt und der Spezialitätsgrundsatz gewährleistet werden können (GAUTHEY/MARKUS, a.a.O., S. 396; HUSMANN, a.a.O., N. 45 zu Art. 271 StGB; BAZZI, a.a.O., S. 189 f. Rz. 373). Nicht frei verfügt

BGE 148 IV 66 S. 72

werden kann über nicht öffentlich zugängliche, identifizierende Informationen über Dritte (HUSMANN, a.a.O., N. 45 zu Art. 271 StGB; vgl. die bei GRAF, a.a.O., S. 183 wiedergegebenen, unveröffentlichten Verfügungen des Eidgenössischen Finanzdepartements [EFD]; kritisch GRAF, a.a.O., S. 183 ff.).

**1.4.3** Gemäss den vorinstanzlichen Feststellungen enthielten die vom Beschwerdeführer übergebenen Dateien ausschliesslich Unterlagen betreffend Kunden der B.-Gruppe, die potenziell steuerrechtlich relevant sind. Die Bankunterlagen der Kunden wurden der B. AG als Vermögensverwalterin gestützt auf die vertragliche Beziehung originär in der Schweiz von den Banken in Kopie zur Verfügung gestellt. Die Bankunterlagen waren der B. AG unter klaren Vertragsbedingungen anvertraut. Der Beschwerdeführer war folglich nicht berechtigt, die Drittpersonen betreffenden Unterlagen direkt an das DoJ zu übermitteln. Vielmehr hätte Letzteres den Amts- bzw. Rechtshilfeweg beschreiten und die Dateien über die zuständigen schweizerischen Behörden bei der B. AG als Informationsträgerin mit Sitz in der Schweiz herausfordern müssen. Indem der Beschwerdeführer dem DoJ die Unterlagen in Umgehung des Amts- bzw. Rechtshilfewegs direkt übermittelte, nahm er eine Handlung für einen fremden Staat vor, die den schweizerischen Behörden vorbehalten war.

Inwiefern der Umstand, dass die Daten bestimmungsgemäss auch in einem Drittstaat gespeichert waren, zu einer anderen Beurteilung führen soll, ist nicht ersichtlich. Der Beschwerdeführer übersieht bei seiner Argumentation, dass bei der Bestimmung des strafbaren Charakters seiner Handlung nach dem Gesagten nicht die Natur der Daten, sondern die Wahrung des staatlichen Machtmonopols zu berücksichtigen ist. Der Beschwerdeführer hat ihm bzw. der B. AG anvertraute, Drittpersonen betreffende Daten, die sich zumindest auch in der Schweiz befanden, direkt an das DoJ geliefert, wobei er seine Reise in der Schweiz angetreten hat. Damit verletzte er die schweizerische Souveränität, da die aus der Schweiz stammenden Daten von der Schweiz aus nur von den schweizerischen Behörden über den Amts- bzw. Rechtshilfeweg unter Einhaltung der einschlägigen rechtlichen Bestimmungen hätten weitergegeben werden dürfen. Ob es dem Beschwerdeführer auch möglich bzw. ob es zulässig gewesen wäre, die sich in einem Drittstaat befindenden Daten vom Drittstaat aus an das DoJ zu übermitteln, ist vorliegend nicht relevant. Etwas anderes ergibt sich auch nicht aus der vom

BGE 148 IV 66 S. 73

Beschwerdeführer zitierten E-Mail des Bundesamts für Justiz, da es im dort beurteilten Fall um Daten gegangen zu sein scheint, die sich bereits in den USA befanden und den dort zuständigen Behörden hätten herausgeben werden sollen. Vorliegend befanden sich die Daten unbestrittenermassen nicht in den USA, sondern neben der Schweiz (teilweise) auch in einem Drittstaat.

Auch die vom Beschwerdeführer zitierten Literaturstellen können so verstanden werden, dass darin jeweils davon ausgegangen wird, dass sich die Daten (neben der Schweiz) auch in dem Land befinden, in dem das Verfahren geführt wird, in das sie eingebracht werden sollen. So schreibt GRAF: "Befinden sich die im ausländischen Verfahren offenzulegenden Informationen nun bereits im Ausland [...], so können sie schrankenlos zur Verfügung gestellt werden. In diesem Fall müssen die Unternehmen die Unterlagen nach vorliegender Auffassung sogar wahlweise aus dem Ausland oder aus der Schweiz liefern können, falls die Informationen [...] in beiden Staaten verfügbar sind, denn solche Daten sind vom Schutzzweck von Art. 271 StGB nicht mehr gedeckt." (GRAF, a.a.O., S. 179). Hinweise darauf, dass mit "Ausland" ein anderer Staat gemeint ist, als der in dem das Verfahren geführt wird, ergeben sich nicht. Zudem begründet GRAF seine Einschätzung nicht näher. Gleich können grundsätzlich auch die Lehrmeinungen von ROSENTHAL und

HUSMANN interpretiert werden. Während HUSMANN - ebenfalls ohne weitere Begründung - vorwiegend auf GRAF und ROSENTHAL verweist (HUSMANN, a.a.O., N. 72 zu Art. 271 StGB), beschäftigt sich ROSENTHAL an der vom Beschwerdeführer zitierten Stelle mit dem Binnenbezug bzw. der Frage, ob die Handlung auf schweizerischem Gebiet stattgefunden hat. Er vertritt die Ansicht, dass eine Beweiserhebung von sich in der Schweiz befindlichen Beweismitteln dann nicht in der Schweiz stattfindet, wenn diese Beweismittel bzw. Inhalte aufgrund ihrer Bestimmung ohnehin auch im Ausland verfügbar sind und daher im Rahmen der konkreten Beweiserhebung im Ausland darauf zurückgegriffen werden kann (ROSENTHAL, a.a.O., N. 35 zu Art. 271 StGB). Von diesem Beispiel unterscheidet sich der vorliegende Sachverhalt in zweierlei Hinsicht: Einerseits geht es hier nicht um die Beweiserhebung, sondern die direkte Herausgabe von Daten an eine Behörde eines fremden Staates. Andererseits wurde nicht im Ausland auf die Daten zugegriffen, sondern die Daten wurden von der Schweiz ins Ausland gebracht. Folglich vermögen die vom Beschwerdeführer angeführten Lehrmeinungen an der obgenannten

BGE 148 IV 66 S. 74

Beurteilung, wonach er eine Handlung vornahm, die den schweizerischen Behörden vorbehalten war, nichts zu ändern, weshalb darauf nicht näher eingegangen werden muss.

(informal translation; machine-assisted)

## Head of judgment

148 IV 66

7. excerpt from the judgment of the Criminal Chamber in the case of A. v. Office of the Attorney General of Switzerland (appeal in criminal cases)
6B_216/2020 of November 1, 2021

## Summary

Article 271 para. 1 section 1 SPC; prohibited acts for a foreign state.
The offense is intended to prevent the exercise of foreign state power on Swiss territory and to protect the state's monopoly on power as well as Swiss sovereignty (cons. 1.4.1). An act that involves a violation or circumvention of Swiss or international administrative or judicial assistance law, or that is within the jurisdiction of a Swiss authority or official according to administrative and judicial assistance law, is covered by article 271 para. 1 SPC. The release of information and documents that may only be lawfully released in Switzerland on the basis of a sovereign order affects the legal interest protected by article 271 SPC. The persons concerned may only hand over files that they may freely dispose of. Identifying information about third parties that is not publicly accessible may not be freely disclosed (cons. 1.4.2). The fact that the information to be disclosed is also stored in a third country does not lead to a different assessment (cons. 1.4.3).

Facts from page 67

BGE 148 IV 66 P. 67

**A.**

**A.a** The Board of Directors of B. AG, an asset management company domiciled in Zurich, had its client relationships reviewed in the course of the tax dispute between Switzerland and the USA. The audit revealed that between 2002 and 2012, B. AG and its subsidiaries had a certain number of clients who may not have paid tax in the USA in accordance with the rules. As a result, A., in his capacity as Chairman of the Board of Directors of B. AG, commissioned a law firm and an employee of B. AG to compile dossiers of customers presumed to be liable for tax in the USA.

BGE 148 IV 66 P. 68
In October 2012, A. filed a voluntary disclosure with the US Department of Justice (hereinafter: DoJ). The DoJ rejected a request for the disclosure of the relevant client files by way of legal and administrative assistance. In view of a so-called Non Prosecution Agreement (hereinafter: NPA), A. finally traveled to the USA in mid-November 2013 and had a lawyer hand over a USB stick containing a total of 109 customer files of B. AG and its subsidiaries to the DoJ - without having a permit pursuant to article 271 para. 1 SPC.

**A.b** On April 28, 2015, the Swiss Financial Market Supervisory Authority (FINMA) filed charges with the Office of the Attorney General of Switzerland against the persons responsible at B. AG and any other persons involved.
By penalty order dated September 19, 2017, the Office of the Attorney General of Switzerland sentenced A. to a conditional monetary punishment of 160 daily sentences of Fr. 1,650 and a fine of Fr. 10,000 for prohibited acts on behalf of a foreign state (article 271 para. 1 section 1 SPC).
Following an objection by A., the Office of the Attorney General of Switzerland filed charges on November 17, 2017.

**A.c** The Criminal Chamber of the Federal Criminal Court acquitted A. on May 9, 2018.

**A.d** On 4 December 2018, the Federal Supreme Court upheld the appeal in criminal matters filed by the Office of the Attorney General of Switzerland, set aside the judgment of the Federal Criminal Court of 9 May 2018, and remanded the case to the Criminal Chamber of the Federal Criminal Court for a new decision (Case 6B_804/2018).

**B.**

**B.a** On May 2, 2019, the Criminal Chamber of the Federal Criminal Court sentenced A. to a fine of Fr. 10,000 for prohibited acts on behalf of a foreign state and ordered him to pay the costs of the proceedings.

**B.b** On December 5, 2019, the Appeals Chamber of the Federal Criminal Court dismissed A's appeal, upheld the first-instance judgment, and ordered him to pay the costs of the proceedings.

(informal translation; machine-assisted)

**C.** A. filed an appeal in criminal matters requesting that the judgment of the Appeals Chamber of the Federal Criminal Court be set aside and that he be acquitted of the charge of prohibited acts on behalf of a foreign state.
In the alternative, the judgment should be set aside

BGE 148 IV 66 P. 69

and the case should be referred back to the Appeals Chamber of the Federal Criminal Court for acquittal. The Federal Tribunal dismisses the appeal.

Considerations

From the recitals:

**1.** (...)

**1.4**

**1.4.1** According to article 271 para 1 section 1 SPC, anyone who performs acts on behalf of a foreign state on Swiss territory without authorization, which are the responsibility of an authority or an official, is punished. The provision is intended to prevent the exercise of foreign state power on Swiss territory and to protect the state's monopoly on power and Swiss sovereignty (judgments 6B_804/2018 of 4 December 2018 E. 3; 6B_402/2008 of November 6, 2008 E. 2.3.2 with reference; see also judgment 8G.125/2003 of December 9, 2003 E. 1.3; MARKUS HUSMANN, in: Basler Kommentar, Strafrecht, vol. II, 4th ed. 2019, N. 6 on article 271 SPC; GAUTHEY/MARKUS, Zivile Rechtshilfe und Artikel 271 Strafgesetzbuch, ZSR 134/2015 I p. 366; FISCHER/RICHA, in: Commentaire romand, Code pénal, vol. II, 2017, n. 8 on article 271 SPC; YOLANDA MC GOUGH, Verbotene Handlungen für einen fremden Staat, 2018, p. 9 f. para. 18). Thus, the state is always the bearer of the protected legal interest; private persons can only be indirectly affected (judgment 8G.125/2003 of December 9, 2003 E. 1.3; HUSMANN, loc. cit., n. 6 on article 271 SPC). What is attacked with a violation of the provision is Switzerland's claim that state action on its territory is carried out solely by its institutions. The focus today is mostly on the question of the need for administrative and judicial assistance for acts in connection with foreign legal systems and procedures (cf. HUSMANN, loc. cit., n. 8 and 27 on article 271 SPC; see E. 1.4.2). An act attributable to an authority or a civil servant is - regardless of whether a civil servant was active in it - any act which, considered in itself, i.e. according to its nature and purpose, characterizes itself as an official act. The decisive factor is therefore not the person of the perpetrator, but the official character of the act (**BGE 114 IV 128** E. 2b with references; HUSMANN, loc. cit., n. 10, n. 12 and 23 on article 271 SPC; DAMIAN K. GRAF, Mitwirkung in ausländischen Verfahren im Spannungsfeld mit article 271 SPC, Unter Berücksichtigung der

BGE 148 IV 66 P. 70

Jüngsten Bewilligungspraxis von EJPD und EFD, Gesellschafts- und Kapitalmarktrecht [GesKR] 2016 p. 171; OESTERHELT/FRACHEBOUD, in: Kommentar zum Schweizerischen Steuerrecht, Amtshilfe, 2020, § 29 N. 16 et seq.; MC GOUGH, op. cit. para. 103 ff.; DAVID ROSENTHAL, in: Handkommentar zum Datenschutzgesetz, Rosenthal/Jöhri [ed.], 2008, n. 6 on article 271 SPC). The criminal act must be committed for a foreign state, i.e. in its interest (**BGE 114 IV 128** E. 3b; HUSMANN, loc. cit., n. 14 on article 271 SPC; GRAF, loc. cit., p. 172; OESTERHELT/FRACHEBOUD, loc. cit., § 29 n. 26; DUPUIS UND AND OTHERS, CP, Code pénal, 2nd ed. 2017, n. 14 on article 271 SPC). The offense covers only those acts that are carried out without state authorization. The departments and the Federal Chancellery decide on corresponding authorizations under article 271 para. 1 SPC to perform acts for a foreign state in their area (article 31 of the Government and Administration Organization Ordinance of November 25, 1998 [RVOV; SR 172.010.1; in the version applicable until December 31, 2013]; GRAF, op. cit, p. 172 ff.; see in detail on authorizations OESTERHELT/FRACHEBOUD, loc. cit., § 29 n. 34 ff.; HUSMANN, loc. cit., n. 78 ff. on article 271 SPC; FISCHER/RICHA, loc. cit., n. 38 ff. on article 271 SPC; MC GOUGH, loc. cit., p. 137 ff. para. 359 et seq.). The act in question must have taken place on Swiss territory. According to prevailing doctrine, it is sufficient that only a part of the criminal act was committed in Switzerland (OESTERHELT/FRACHEBOUD, loc. cit, § 29 N. 22 ff. and N. 73; FISCHER/RICHA, loc. cit., N. 36 on article 271 SPC; ROSENTHAL, loc. cit., N. 34 on article 271 SPC; DUPUIS UND AND ANDERE, loc. cit., N. 13 on article 271 SPC).

**1.4.2** In the present case, it is undisputed that the complainant's act, i.e., the handing over of the client files to the DoJ, took place in the interest of the USA and for a foreign state, on Swiss territory and without authorization. What is disputed and thus to be examined is whether the act is reserved for an authority or an official, in other words, whether it has an official character. The qualification of an act as an official act must be made according to Swiss legal opinion (cf. **BGE 114 IV 128** E. 2c; GAUTHEY/MARKUS, loc. cit., p. 368; MC GOUGH, loc. cit, p. 48 para. 105; ROSENTHAL, loc. cit., n. 6 on article 271 SPC; HUSMANN, loc. cit., n. 23 and 27 on article 271 SPC; FISCHER/RICHA, loc. cit., n. 7 on article 271 SPC; OESTERHELT/FRACHEBOUD, loc. cit., § 29 n. 16). The protected legal interest is decisive for the interpretation of the act.

BGE 148 IV 66 P. 71

(informal translation; machine-assisted)

In determining the punishable nature of an act, it must be asked whether the act in question is capable of endangering the "sphere of state authority" (cf. MC GOUGH, loc. cit., p. 75 para. 180; HUSMANN, loc. cit., n. 30 on article 271 SPC). In the doctrine, the criteria of the prohibited act developed by case law are further specified (see, for example, HUSMANN, loc. cit., n. 23 et seq. on article 271 SPC). However, it is not necessary to go into this in detail in the present case, since it is widely undisputed in the doctrine that an act which is accompanied by a violation or circumvention of Swiss or international administrative or judicial assistance law or which, according to administrative and judicial assistance law, lies within the jurisdiction of a Swiss authority or official, is covered by article 271 para. 1 SPC (HUSMANN, loc. cit, N. 27 and N. 31 on article 271 SPC; OESTERHELT/FRACHEBOUD, loc. cit., § 29 N. 7 f.; ROSENTHAL, loc. cit., N. 1 on article 271 SPC; CLAUDIO BAZZI, Internationale Wirtschaftsspionage, 2015, p. 186 ff. para. 368 ff; GAUTHEY/MARKUS, op. cit., p. 394 ff; relativizing with regard to private individuals: MC GOUGH, op. cit., p. 75 f. para. 181). Circumvention of administrative or judicial assistance by a Swiss party is not a preliminary act within the meaning of article 271 para. 1 section 3 SPC, but the original act within the meaning of article 271 para. 1 section 1 SPC (cf. GRAF, loc. cit., p. 178 f.; HUSMANN, loc. cit., n. 40 on article 271 SPC; GAUTHEY/MARKUS, loc. cit., p. 394 f.).

As the lower court correctly states, there is extensive discussion in the doctrine as to whether and to what extent the collection of documents with a view to foreign proceedings and their subsequent submission can be punishable. This, as well as all conceivable constellations, need not be discussed in detail in the present case. What is decisive is that the release of information and documents that can only be lawfully released in Switzerland by sovereign order affects the legal interest protected by article 271 SPC (cf. HUSMANN, loc. cit., n. 40 on article 271 SPC; BAZZI, loc. cit., p. 188, para. 370). In all constellations, only files and information that can be freely disposed of may be handed over. Only the official or legal assistance channel offers a procedural vessel in which secrecy and disclosure obligations can be juxtaposed and the principle of speciality can be guaranteed (GAUTHEY/MARKUS, op. cit., p. 396; HUSMANN, op. cit., n. 45 on article 271 SPC; BAZZI, op. cit., p. 189 f. para. 373). It is not possible to freely dispose

BGE 148 IV 66 P. 72

of identifying information about third parties that is not publicly accessible (HUSMANN, loc. cit., n. 45 on article 271 SPC; cf. the unpublished orders of the Federal Department of Finance [FDF] reproduced in GRAF, loc. cit., p. 183; critically GRAF, loc. cit., p. 183 et seq.)

**1.4.3** According to the findings of the lower court, the files handed over by the complainant exclusively contained documents concerning clients of the B. Group that were potentially relevant under tax law. Based on the contractual relationship, the bank documents of the clients were originally made available to B. AG as asset manager in Switzerland by the banks in copy. The bank documents were entrusted to B. AG under clear contractual conditions. Consequently, the complainant was not entitled to transmit the documents concerning third parties directly to the DoJ. Rather, the latter would have had to take the official or legal assistance route and request the files via the competent Swiss authorities from B. AG as the information provider domiciled in Switzerland. By directly transmitting the documents to the DoJ in circumvention of the official or legal assistance channel, the complainant performed an act for a foreign state that was reserved for the Swiss authorities.

It is not evident how the fact that the data was also stored in a third country in accordance with its intended purpose should lead to a different assessment. In his argumentation, the complainant overlooks the fact that, according to what has been said, it is not the nature of the data but the preservation of the state's monopoly on power that must be taken into account when determining the criminal nature of his act. The complainant delivered data entrusted to him or to B. AG and concerning third parties, which were at least also located in Switzerland, directly to the DoJ, starting his journey in Switzerland. In doing so, he violated Swiss sovereignty, since the data originating in Switzerland could only have been passed on from Switzerland by the Swiss authorities via the official or legal assistance channel in compliance with the relevant legal provisions. Whether it would also have been possible or permissible for the complainant to transfer the data located in a third country to the DoJ from the third country is not relevant in the present case. Nor does anything to the contrary result from the

BGE 148 IV 66 P. 73

e-mail from the Federal Office of Justice cited by the complainant, since the case assessed there appears to have involved data that was already in the USA and should have been handed over to the authorities responsible there. In the present case, it is undisputed that the data was not located in the USA, but (partially) also in a third country in addition to Switzerland.

The literature cited by the complainant can also be understood in such a way that it assumes in each case that the data (in addition to Switzerland) is also located in the country in which the proceedings are conducted to which it is to be introduced. Thus GRAF writes: "If the information to be disclosed in the foreign proceedings is now already located abroad [...], it can be made available without restriction. In this case, according to the present opinion, the companies must even be able to provide the documents either from abroad or from Switzerland, if the information [...] is available in both states, because such data are no longer covered by the protective purpose of article 271 SPC." (GRAF, op. cit., p. 179). There are no indications that "abroad" refers to a state other than the one in which the proceedings are being conducted. Moreover, GRAF does not give any further reasons for his assessment. The doctrines of ROSENTHAL and

(informal translation; machine-assisted)

HUSMANN can be interpreted in the same way. While HUSMANN - also without further justification - mainly refers to GRAF and ROSENTHAL (HUSMANN, loc. cit., n. 72 on article 271 SPC), ROSENTHAL, in the passage cited by the complainant, deals with the domestic nexus or the question of whether the act took place on Swiss territory. He is of the opinion that the collection of evidence located in Switzerland does not take place in Switzerland if this evidence or content is also available abroad anyway due to its purpose and can therefore be used in the context of the concrete collection of evidence abroad (ROSENTHAL, loc. cit., n. 35 on article 271 SPC). The present case differs from this example in two respects: On the one hand, it is not a question here of the collection of evidence, but of the direct handing over of data to an authority of a foreign state. On the other hand, the data was not accessed abroad, but the data was taken abroad from Switzerland. Consequently, the doctrines cited by the complainant cannot be applied to the aforementioned

BGE 148 IV 66 P. 74

This does not change the assessment that he performed an act that was reserved for the Swiss authorities, which is why it is not necessary to go into this in more detail.