**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered) |

**DECLARATION OF SCOTT LIPNICK**
**IN SUPPORT OF UBS AG'S OPPOSITION TO CHAPTER 11 TRUSTEE'S**
**MOTION TO COMPEL**

I, Scott Lipnick, declare as follows:

1. I am eDiscovery Counsel, working in the UBS eDiscovery function, employed by UBS Business Solutions LLC. I have held that position since August 2019. The eDiscovery function supports the internal legal and investigation teams within the UBS group of companies ("UBS") on a variety of data law issues that center around the identification, preservation, collection, processing, review, and production of internal data for matters impacting UBS group companies including UBS AG ("UBS AG"), which is the entity which is relevant for the purpose of this declaration.

2. I am based in the Americas region and partner with internal counsel at UBS to manage end-to-end eDiscovery requirements and processes on behalf of UBS globally. I have been asked to provide this declaration in support of UBS AG's opposition to the Motion of Chapter 11 Trustee for Entry of Order Compelling UBS AG to Comply with Rule 2004 Subpoena ("Motion to Compel," ECF No. 1362), and in particular to provide the Court with information relating to the time and resources that would be required to comply with a subpoena such as the Rule 2004 subpoena at issue in the Motion to Compel (the "Subpoena"), which I have reviewed.

1

**Introduction**

3. In this declaration, I will address the following from my perspective as eDiscovery Counsel: (i) the steps UBS initially takes to respond when a document request or subpoena is served on a UBS entity; and (ii) two points of concern specifically related to the Subpoena at issue here.

4. I do not control nor am I am responsible for supervising or maintaining electronic communication archiving systems at UBS AG, but, based on information received from members of the relevant teams, I can confirm that there are several hundred thousand current and former employees that have their electronic business communications journaled globally in over a dozen different locations. Further, while I do not have direct access to or knowledge of storage data volumes, UBS AG has petabytes of electronic communication data in the archives.

5. To start the process of collecting electronically stored information once UBS has been served with a document request or subpoena, a UBS employee submits a collection request to the eDiscovery team. The request typically includes general matter information (*e.g.*, matter name; originating country; matter type; production deadlines; assigned counsel) and request-specific information (*e.g.*, custodian(s) or client account(s) implicated; data types; collection periods of interest) so that the eDiscovery service can collect relevant data. It is important for the employee using the eDiscovery service to "scope" the request to the greatest extent possible by being precise about what employee or client information needs to be collected. This way, irrelevant data is not pulled into the data set subject to review and production.

6. Typically, it takes the eDiscovery team ten business days after approval by an eDiscovery counsel, such as myself, to deliver data requested under a collection request, but requests can take significantly longer than that in instances where (i) broad keywords are asked to

2

be searched against custodians listed under the request or (ii) keywords are asked to be run across entire email archives. In addition, the data collection process can take substantially longer when non-US data needs to be processed and/or produced in the US. Globally, there are a patchwork of foreign data protection laws that UBS AG is legally obligated to consider prior to determining whether it can move forward with cross border discovery. If the law of a particular jurisdiction prohibits the collection of documents for transmittal to, or use in, the US, UBS AG does not have the ability to obtain documents from that jurisdiction.

7. It is important to keep in mind that data collection is only the beginning of the document production process. Once collected, data typically is sent to an eDiscovery vendor for processing and data hosting. Costs associated with document processing, hosting and review can be substantial, especially in instances where document requests are not narrowly tailored. As such, in matters where document production requests are broad and matters stay open upwards of one year or longer, it would not be surprising for processing, hosting, and review costs to be in the six figures.

**The Subpoena in this Proceeding**

8. In reviewing the Subpoena in this proceeding, two areas stand out as points of concern: lack of specificity / overbreadth and extraterritoriality.

*Lack of Specificity / Overbreadth*

9. Execution of a request to collect electronic communications, business records, or other discoverable data from UBS AG requires that the requesting party be targeted in its requests. Several categories of documents requested in the Subpoena cannot be scoped in good faith due to a lack of specificity. Here are examples:

    a. The Subpoena seeks production of documents relating to various individuals and entities defined in the Subpoena collectively as "2004 Discovery Targets." The

        2004 Discovery Targets, in turn, include several individuals whose names are separately defined as including not only the individuals themselves but also their unidentified "employees, agents, counsel, advisors, or anyone acting on his behalf," making it impossible to know who the actual targets of the Subpoena are.

    b. The Subpoena also seeks "[a]ll Documents" from an 11-year period beginning on January 1, 2012 satisfying certain criteria, and "Documents" is defined extraordinarily broadly to include "electronic mail, computer files maintained in electronic form, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, charts, blueprints, drawings, sketches, graphs, plans articles, specification, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data compilations of any kind, telexes, facsimiles, emails, text messages, instant messages, voice messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, film, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or marking of any kind not found on the original documents or that are otherwise not identical to the original documents." Subpoena § III, ¶ 16.

    c. The Subpoena also does not indicate what custodians, current or former, should have their custodial files searched for potentially relevant information. UBS AG can run archive-wide searches for keywords, but running such searches can elicit a substantial number of false positive results if the keywords are not narrowly tailored.

    10.    The result of the lack of specificity described above is it that it is impossible to scope what is actually sought by the Subpoena. It likewise would be extraordinarily time consuming and costly – if even possible – to structure search parameters adequate to search for materials requested in the Subpoena.

    11.    The Subpoena's breadth poses additional challenges. As an example, "You" is defined in the Subpoena to include "UBS AG, together with any of its affiliates, parents, and subsidiaries, and any of their employees, agents, counsel, advisors, or anyone acting on their behalf." Subpoena § III, ¶ 1. In responding to a document request or subpoena, UBS AG is limited

to responding solely on its own behalf and not on behalf of individuals or entities distinct from UBS AG.

12. In my more than three years as eDiscovery Counsel, I have never seen a motion to compel production relating to any document request or production demand as broad as the one at issue here. The requesting party's unwillingness to identify custodians, keywords, or jurisdictional limitations is without precedent in my personal experience.

*Extraterritoriality*

13. Any order of a US court requiring the collection of data sourced to non-US custodians or non-US entities must consider foreign data protection laws. These laws, like the European Union's General Data Protection Regulation (GDPR) or China's Personal Information Protection Law (PIPL), may place express restrictions on UBS AG's ability to have data sent to the US for processing and possible production in the instant proceeding. This is true even in instances where compliance with a court's document request is compulsory.

14. Despite the obstacles set forth above, I understand from conversations with counsel that UBS AG has been able to search for accounts relating to certain of the 2004 Discovery Targets in several jurisdictions that I understand are of interest in this proceeding. I further understand that UBS AG's external counsel has reported on the results of those searches to counsel for the Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 29, 2023.

_____
Scott Lipnick