**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
--------------------------------------------------------x
                                              :
In re:                                        :    Chapter 11
                                              :
HO WAN KWOK, et al.,[1]                       :    Case No. 22-50073 (JAM)
                                              :
            Debtors.                          :    (Jointly Administered)
                                              :
--------------------------------------------------------x
```

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER**
**COMPELLING UBS AG TO COMPLY WITH RULE 2004 SUBPOENA**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in Ho

Wan Kwok's (the "Individual Debtor") chapter 11 case (the "Chapter 11 Case"), hereby files this

reply memorandum (the "Reply") in support of his Motion for Entry of Order Compelling UBS

AG to Comply with Rule 2004 Subpoena [ECF No. 1345] (the "Motion to Compel") and in

response to UBS's Objection thereto dated January 30, 2023 [ECF No. 1407] (the "Objection").[2]

In support of the Motion to Compel, the Trustee respectfully states as follows:

**UBS HAS NOT PROPOSED FEASIBLE ALTERNATIVES**

1.      **The purported "alternatives" UBS asserts that the Trustee should pursue to**

**obtain documents and information are illusory.**  UBS knows from the parties' extensive

discovery conferences that neither Hague Convention discovery nor foreign recognition

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] All capitalized terms not expressly defined in this Reply adopt the definitions as set forth in the Motion to Compel.

proceedings are viable courses for the Trustee on account of the urgency of the Trustee's investigation and the lack of funds in the estate to pay for foreign proceedings. Further, these purported alternatives would likely be unworkable even without regard to time or expense.

**Hague Convention Discovery Is Not a Viable Alternative**

2.       The Objection, and several of the lengthy declarations attached thereto, suggest that the Trustee should pursue Hague Discovery. It is highly doubtful that the Trustee could **ever** obtain compliance with the UBS Subpoena using the Hague Convention.

3.       Discovery under Bankruptcy Rule 2004 is "exceptionally broad." *In re Rafsky*, 300 B.R. 152, 153 (D. Conn. 2003) (*citing In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999); *In re GHR Energy Corp.*, 33 B.R. 451, 453-54 (Bankr. D. Mass. 1983)). "Examinations under [Bankruptcy] Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition." *In re Rafsky*, 300 B.R. at 153 (internal quotation marks omitted).

4.       By contrast, the path UBS proposes under the Hague Convention is both narrow and fraught with legal and practical peril. Generally, Hague Convention discovery requires the pursuit of documents by "letters of request" or "letters rogatory" – which must be submitted to and approved by foreign judicial authorities. *See* Eric D. Schwartz and Jose F. Bibiloni, "Does Seeking Discovery on Parties in Foreign Countries Under Bankruptcy Rule 2004 Make Sense," *American Bankruptcy Institute Global Insolvency*, *available at* https://globalinsolvency.com/committee-post/does-seeking-discovery-parties-foreign-countries-under-bank  ("Schwartz and Bibiloni") (attached hereto as **Exhibit A**). The use of Hague Discovery would thus put the Trustee's investigation at the mercy of foreign tribunals where the Court's Rule 2004 Order and its mandate to investigate the Individual Debtor's financial affairs would not apply.

2

5.      The standards necessary to obtain discovery under the Hague Convention – even at their most permissive – are substantially stricter than under Bankruptcy Rule 2004.  For example, the Hague Convention expressly forbids its use to obtain documents that are "not intended for use in judicial proceedings, commenced or contemplated."  The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231 at art. 1 *available at* https://assets.hcch.net/docs/dfed98c0-6749-42d2-a9be-3d41597734f1.pdf.

6.      Further, many developed countries that are party to the Hague Convention have joined only with express "reservations" that additionally restrict the availability of discovery.  *See* Schwartz and Bibiloni ("A letter of request that seeks discovery within the scope of Bankruptcy Rule 2004, such as a request targeting information that is designed to test the strength of an estate claim prior to litigation, may be barred by a reservation entered by the country where such discovery is sought.").

7.      **UBS's Objection omits to discuss that all three of the jurisdictions where it suggests the Trustee pursue Hague Convention discovery have issued such reservations further limiting access to documents and information.**  In fact, Hong Kong's reservations outright prohibit the execution of letters of request "for the purpose of obtaining pre-trial discovery and documents."  Reservations of Special Administrative Region of Hong Kong *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=493&disp=resdn.

8.      The People's Republic of China and Switzerland have also issued reservations limiting Hague Convention discovery.  China limits such discovery to documents that are "of direct and close connection with the subject matter of the litigation."  *Id.*  But it is fundamental that

Bankruptcy Rule 2004 discovery does not require litigations or knowledge of particular claims to permit investigatory examinations for the benefit of bankruptcy estates.[3]

9.       The Trustee would likewise be limited in obtaining deposition testimony under the Hague Convention – to the extent that it would be available at all.  *See, e.g.,* "China Judicial Assistance        Information,"        U.S.        State        Department        *available        at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html ("China does not permit attorneys to take depositions in China for use in foreign courts."); "Hong Kong Judicial Assistance Information," U.S. State Department *available at*                    https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html (depositions may not be compelled under Hague Convention in Hong Kong).

10.     It is then unsurprising neutral commentators have observed that seeking "discovery abroad via the Hague Convention may be a cumbersome and complicated process, and especially so for a party that seeks Bankruptcy Rule 2004 discovery …. Foreign discovery, including Bankruptcy Rule 2004 discovery, under the Hague Convention may end up being a drawn-out and frustrating endeavor."   Schwartz and Bibiloni.

**The Estate Cannot Endure the Costs and Delays of UBS's Purported "Alternatives"**

11.     As discussed in the Motion to Compel as well as the Court's Injunction Decision, time and delay are particularly prejudicial to the estates in these chapter 11 cases.  (Injunction Decision at pp. 32-33.)  UBS is well aware of these realities from its review of the docket in these

---

[3] Switzerland also places limits, including that requests must be "direct[ly] and necessary[ily] link[ed] with the proceedings in question" and may not require the party from which discovery is sought to "indicate what documents relating to the case are or were in his/her possession or keeping or at his/her disposal."  Reservations of Switzerland *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=561&disp=resdn.

cases and from the extensive meet-and-confer process. Indeed, the time that UBS took to reach its outright refusal to comply with the UBS Subpoena has already prejudiced these estates.[4]

12.     Even if the Trustee's investigation could be conducted by Hague Convention discovery (it cannot), the delay and expense inherent to the "drawn out and difficult process" render it unworkable here.  *See* Schwartz and Bibiloni; *see also Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522, 542 (1987) ("In many situations the Letter of Request procedure authorized by the Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules."); Tony Abdollahi, "The Hague Convention: A Medium for International Discovery," 40 N.C. J. INT'L L. 771 (2014) *available at* https://scholarship.law.unc.edu/ncilj/vol40/iss3/4 ("Unlike the comparative predictability of the Federal Rules, discovery under the Convention is often expensive and may yield uncertain results.").

13.     Instituting foreign recognition proceedings for the sole purpose of obtaining discovery from UBS would likewise impose unacceptable delay and expense.  The Trustee lacks available funds to hire legal counsel, translators, and other professionals in far flung locations to satisfy UBS's unreasonable demands.  Moreover, these chapter 11 cases cannot be put "on hold" while Trustee chases documents and information from UBS across the world.  The Trustee has made these realities abundantly clear to UBS over the last three months.

14.     Accordingly, the "alternatives" proposed by UBS are not alternatives at all.  UBS must comply with the UBS Subpoena and produce responsive documents and information forthwith.

---

[4] As the Trustee has made clear, UBS telling the Trustee to pursue Hague Convention discovery or institute foreign recognition proceedings does not amount to compliance with the UBS Subpoena.

5

## UBS'S RESORT TO FOREIGN PRIVACY LAW IS UNAVAILING

15.     The Second Circuit has instituted a balancing test – based on the Supreme Court's holding in *Societe Nationale Industrielle Aerospatiale* and the Restatement (Third) of Foreign Relations Law of the United States – providing for courts to compel foreign entities to produce documents and information "notwithstanding competing foreign legal obligations" under appropriate circumstances. *Linde v. Arab Bank, PLC*, 706 F.3d 92, 114-116 (2d Cir. 2013).

16.     The Supreme "Court held that the operation of foreign law 'do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [law].' *Id.* at 109 (*quoting Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 544 n. 29). **In particular, foreign "bank secrecy laws are not a 'get out of jail free' card."** *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 364 (S.D.N.Y 2018); *see also Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 456 (E.D.N.Y. 2008); *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 57-58 (E.D.N.Y. 2007).

17.      UBS admits in its Objection (it could not do otherwise) the importance of the documents and information sought to the Trustee's investigation (at ¶ 31) and "that the United States has an important interest in ensuring that the Trustee is permitted to diligently investigate the Individual Debtor's financial affairs" (at ¶ 42).  UBS ignores the prejudicial impacts of delay and expense on these bankruptcy estates and proposes purported "alternatives" that would cause still more delay and expense (before likely failing altogether).

18.     UBS also does not contest (again choosing to ignore) its own conduct related to the Individual Debtor and the 2004 Discovery Targets that occurred within and directed towards the United States (*e.g.*, the Objection omits any discussion of the UBS Letter that UBS sent to the Sherry Netherland Board).  The Trustee's requests for records relating to the 2004 Discovery

Targets are narrowly focused and UBS has prevented further negotiation on the manner of its compliance by its outright refusal to provide documents or information (discussed further below).

19.    Applying the circumstances here to the Second Circuit's balancing test in *Linde*, foreign law plainly cannot excuse UBS's compliance with the UBS Subpoena.

**UBS HAS NOT COOPERATED TO NARROW THE SCOPE OF DISCOVERY**

20.    Trustee's counsel consistently stated throughout the parties' discovery conferences that for the parties to consensually narrow any requests in the UBS Subpoena, UBS must provide basic information about its involvement with the Individual Debtor and affiliated entities and individuals (*i.e.*, the 2004 Discovery Targets).  In response, UBS was likewise consistent in its refusal to provide this basic information (*e.g.*, even to state which individuals and entities were UBS accountholders/customers or to provide a list of jurisdictions where UBS believed foreign discovery should be sought).

21.    Contrary to the statements and insinuations in its Objection (*e.g.*, at ¶¶ 8, 27-29, 35, 57), UBS never sought to negotiate search terms or to narrow the scope of specific requests.  Nor is this surprising; UBS's outright refusal to provide responsive documents or information (or even acknowledge the existence of relevant accounts) rendered such discussion pointless.

22.    **The Trustee's counsel has repeatedly urged UBS to reconsider this blanket refusal so that the parties may negotiate the particulars of UBS's compliance, as the Trustee's counsel has done with dozens of other Bankruptcy Rule 2004 examinees.  Again and again, UBS has refused.**

23.    Contrary to UBS's portrayal in its Objection, it would not require inordinate resources for UBS to provide the Trustee with basic information about its relationships with the Individual Debtor and the other 2004 Discovery Targets.

7

24.     UBS voluntarily issued the UBS Letter to the Sherry Netherland Board, signed by two of its managing directors, representing that the Individual Debtor was a client with $400 million in funds invested through a "personal investment company." Plainly, UBS understands the relevant business relationships and would not be required to resort to "archive-wide keyword searches" to uncover them (*see* Objection at ¶ 53).

25.     Under these circumstances, UBS's suggestion that it should be entitled to recover costs and attorney's fees from these bankruptcy estates is absurd. The record is clear that whatever fees and costs UBS has incurred were incurred in delaying and obstructing the Trustee's investigation.

26.     Rather, the Court should enforce its Rule 2004 Order, order UBS to comply with the UBS Subpoena within fourteen days, and – absent such compliance – award the Trustee his costs and expenses incurred in connection with all efforts (including the Motion to Compel) to obtain UBS's compliance with the subpoena.

*[Remainder of Page Intentionally Left Blank.]*

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of the Proposed Order granting the relief requested in this Motion to Compel and such other relief as is just and proper.

Dated:     January 31, 2023         LUC A. DESPINS,
           New Haven, Connecticut    CHAPTER 11 TRUSTEE

                                     By: */s/ Patrick R. Linsey*
                                        Patrick R. Linsey (ct29437)
                                        NEUBERT, PEPE & MONTEITH, P.C.
                                        195 Church Street, 13th Floor
                                        New Haven, Connecticut 06510
                                        (203) 781-2847
                                        plinsey@npmlaw.com

**EXHIBIT A**



Does Seeking Discovery on Parties in Foreign Countries Under Bank...

Matter of the Year Award

This article addresses foreign discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the application of the *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* (the "Hague Convention" or the "Convention") to such discovery. It concludes that discovery under the Hague Convention, including Bankruptcy Rule 2004 discovery, may end up being a drawn-out and difficult process.

**Bankruptcy Rule 2004**

Bankruptcy Rule 2004 is an important discovery tool for a party in interest in a chapter 11 bankruptcy case. Bankruptcy Rule 2004(b)'s definition of the scope of discovery is broad and includes any matter that may relate to the property and assets of the estate, to the financial condition of the debtor, or that may affect the administration of the estate.[1] Bankruptcy Rule 2004 is also commonly used as a prelitigation device that affords estate representatives the opportunity to assess whether to pursue estate claims.[2] However, once litigation associated with a bankruptcy case begins, Bankruptcy Rule 2004 discovery ceases to apply and Bankruptcy Rules 7026–7037[3] govern discovery under the resulting adversary proceeding.[4]

**Application of the Hague Convention on the Taking of Evidence in Civil or Commercial Matters to Bankruptcy Rule 2004 Discovery**

The Hague Convention provides a procedure for propounding discovery requests relating to foreign proceedings through the issuance of letters of request (letters of request and letters rogatory are synonymous terms).[5] Article 1 of the Convention provides that "[i]n civil or commercial matters a judicial authority of a Contracting State may . . . request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence."[6] Further, Article 1 of the Convention prohibits the use of letters of request to obtain evidence "which is not intended for use in judicial proceedings, commenced or contemplated."[7] Therefore, a letter of request under the Convention must, at the very least, seek discovery in "contemplated" judicial proceedings.

Article 23 of the Convention provides that "[a] Contracting State may at the time of signature, ratification, or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries."[8] Convention signatories may file a complete or limited reservation under Article 23 of the Convention. For example, China's limited reservation states that it will accept letters of request for pretrial discovery "only [if] the request for obtaining the discovery of documents [is] clearly enumerated in the Letters of Request and of direct and close connection with the subject matter of the litigation."[9]

Many western European nations have also entered reservations disallowing letters of request that seek pretrial discovery.[10] Thus, Article 23 of the Convention presents an obstacle to prosecuting Bankruptcy Rule 2004 discovery requests abroad. A letter of request that seeks discovery within the scope of Bankruptcy Rule 2004, such as a request targeting information that is designed to test the strength of an estate claim prior to litigation, may be barred by a reservation entered by the country where such discovery is sought. In contrast, discovery sought under the adversary proceeding discovery rules will likely not run into the same problem posed by reservations for Bankruptcy Rule 2004 discovery.

**Obtaining Discovery Under the Hague Convention**

The first step for a party in a United States bankruptcy proceeding that seeks to obtain discovery through the Hague Convention is to file a Motion for the Issuance of Letters of Request for International Judicial Assistance with the bankruptcy court.[11] If granted, the bankruptcy court issues, or directs the party seeking discovery to forward, the court-approved letter of request to the applicable central authority[12] of the jurisdiction where discovery is sought. [13] Next, the central authority typically forwards the letter of request to the appropriate judicial authority to execute the request. Article 9 of the Convention provides that "the judicial authority that executes a Letter of Request shall apply its own law to the methods and procedures to be followed."[14] The procedures followed by the central authority and then the judicial authority of the signatory nation that receives the letter of request can vary greatly depending on the law of the receiving jurisdiction.

One example of the functionality of this discovery procedure is found in the internal procedure of Switzerland. If a party seeks discovery in Switzerland, the bankruptcy court directs the letter of request to the proper central authority at the Swiss cantonal level. Switzerland also requires that the letter of request be translated to the correct language of the cantonal authority requested to execute it.[15] The letter of request should provide specific details about the judicial action and the discovery sought — it should contain the name of the requesting party, the nature of the judicial action, and must specify the discovery it seeks.[16] The discovery sought may be a list of documents or the names and addresses of witnesses to examine, accompanied by a statement of the subject matter upon which the witness will be examined.[17] After discovery is conducted, the Swiss central authority then draws up documents confirming execution in its official language and sends them back to the United States.

## Conclusion

Obtaining discovery abroad via the Hague Convention may be a cumbersome and complicated process, and especially so for a party that seeks Bankruptcy Rule 2004 discovery. A letter of request seeking pretrial discovery through Bankruptcy Rule 2004 may be blocked by a reservation entered by signatory nation pursuant to Article 23 of the Hague Convention. Even when a discovery request made under the adversary proceeding rules is sought by a letter of request, the procedures followed by the receiving jurisdiction vary greatly.

Foreign discovery, including Bankruptcy Rule 2004 discovery, under the Hague
Convention may end up being a drawn-out and frustrating endeavor. The
United States Department of State counsels generally that service via the
letters rogatory process "is not recommended given the routine time delays of
up to a year or more in the execution of requests." Thus, parties should be
wary of these roadblocks when deciding to pursue foreign discovery.

---

[1] Bankruptcy Rule 2004's scope is broad because the purpose behind the
rule "is to assist a party in interest in determining the nature and extent of the
bankruptcy estate, revealing assets, examining transactions and assessing
whether wrongdoing occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr.
S.D.N.Y. 2004).

[2] *In re Wash. Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009). For example, one
bankruptcy court approved a Bankruptcy Rule 2004 request for investigation
into a debtor's potential antitrust claims against a third-party manufacturer.
*In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985). The court found the
requested Bankruptcy Rule 2004 examination proper because the trustee
sought to determine "whether the estate has potential anti-trust claims
against [the manufacturer]." *Id.*

[3] These are the rules governing adversary proceedings. They incorporate the
Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 7026–7037.

[4] *Wash. Mut., Inc.*, 408 B.R. at 50. "The 'pending proceeding' rule states 'that
once an adversary proceeding or contested matter has been commenced,
discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 *et
seq.*, rather than by a [Bankruptcy Rule] 2004 examination.'" *Id.* (quoting *In re
Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)).

[5] *See* The Hague Convention on the Taking of Evidence Abroad in Civil or
Commercial Matters, March 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231. This
multination treaty currently has fifty-nine signatories, including the United
States. *See* Hague Conference on Private International Law, *Status Table*,
https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last
updated January 12, 2017).

[6] The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *supra* note 5, art. 1.

[7] *Id.*

[8] *Id.* art 23.

[9] *See* Hague Conference on Private International Law, *supra* note 5.

[10] *See id.* Spain, for instance, does not accept letters of request seeking pre-trial discovery. *Id.*

[11] *See, e.g.*, *Qimonda Richmond, LLC v. Kingston Technology Int'l* (*In re Qimonda Richmond, LLC*), Adv. Pro. No. 09-52137 (D.I. 47) (Bankr. D. Del. July 19, 2010); *SNMP Research Int'l v. Nortel Networks* (*In re Nortel Networks*), Adv. Pro. No. 11-53454 (D.I. 258) (Bankr. D. Del. Sept. 4, 2015).

[12] Article 2 of the Convention directs signatories to designate a "Central Authority" that will receive letters of request from judicial authorities of other signatories. *See* The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *supra* note 5, art. 2.

[13] *See Qimonda Richmond, LLC v. Kingston Technology Int'l* (*In re Qimonda Richmond, LLC*), Adv. Pro. No. 09-52137 (D.I. 49) (Bankr. D. Del. July 23, 2010); *SNMP Research Int'l v. Nortel Networks Inc.* (*In re Nortel Networks*), Adv. Pro. No. 11-53454 (D.I. 281) (Bankr. D. Del. Sept. 25, 2015).

[14] The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *supra* note 5, art. 9.

[15] *Id.* Depending on which cantonal authority in Switzerland executes the letter of request, that language could be German, French, or Italian.

[16] *See* Dr. Peter C. Honegger and Andreas Kolb, *Mutual Assistance in Switzerland*, https://www.nkf.ch/wAssetsnkf2/docs/publikationen/peter_c_honegger/nkf_h...

[17] *Id.*

## AUTHORS





**Eric D. Schwartz**

[http://www.mnat.com](http://www.mnat.com)

**Jose F. Bibiloni**

[http://www.mnat.com](http://www.mnat.com)

**Location**

[United States](United States)

PUBLICATIONS ›

NEWSLETTERS ›

ABI INTERNATIONAL BOARD COMMITTEE ›

© 2022 Global Insolvency, All Rights Reserved

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

------------------------------------------------------x
                                  :
In re:                           :    Chapter 11
                                  :
HO WAN KWOK, *et al.*,[1]     :    Case No. 22-50073 (JAM)
                                  :
             Debtors.     :    (Jointly Administered)
                                  :
------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 31, 2023, the foregoing Reply (including any exhibits thereto) was electronically filed.  Notice of this filing was sent by e-mail to all parties able to receive electronic notice by operation of the Court's electronic filing system ("<u>CM/ECF</u>").  Parties may access these filings by CM/ECF.

Dated: January 31, 2023
      New Haven, Connecticut

                     By:     */s/ Patrick R. Linsey*
                         Patrick R. Linsey (ct29437)
                         NEUBERT, PEPE & MONTEITH, P.C.
                         195 Church Street, 13th Floor
                         New Haven, Connecticut 06510
                         (203) 821-2000
                         plinsey@npmlaw.com

---

[1]     The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).