<pre>
                      UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
                          BRIDGEPORT DIVISION


IN RE:                         .  Chapter 11
                               .  Case No. 22-50073 (JAM)
HO WAN KWOK AND GENEVER        .
HOLDINGS CORPORATION AND       .
GENEVER HOLDINGS, LLC,         .  Brien McMahon Federal Building
                               .  915 Lafayette Boulevard
                               .  Bridgeport, Connecticut 06604
          Debtor.             .
                               .  Tuesday, January 31, 2023
. . . . . . . . . . . . . . .  2:38 p.m.

                        TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE JULIE A. MANNING
                  UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Chapter 11
Trustee:                      Patrick R. Linsey, Esquire
                              NEUBERT PEPE & MONTEITH, P.C.
                              195 Church Street
                              13th Floor
                              New Haven, Connecticut 06510

                              -and-

                              Luc A. Despins, Esquire
                              PAUL HASTINGS, LLP
                              200 Park Avenue
                              New York, New York 10166

(APPEARANCES CONTINUED)

Audio Operator:               Electronically recorded

Transcription Company:        Reliable
                              The Nemours Building
                              1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
                              Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
</pre>

APPEARANCES (CONTINUED):

For Pacific Alliance
Asia Opportunity
Fund L.P.:                   Annecca H. Smith, Esquire
                             ROBINSON & COLE, LLP
                             280 Trumbull Street
                             Hartford, Connecticut 06103


For The Sherry-
Netherland, Inc.:            Julie A. Lavoie, Esquire
                             MURTHA CULLINA, LLP
                             280 Trumbull Street
                             12th Floor
                             Hartford, Connecticut 06103

                             -and-

                             Patrick N. Petrocelli, Esquire
                             Sherry J. Millman, Esquire
                             STROOCK & STROOCK & LAVAN, LLP
                             180 Maiden Lane
                             New York, New York 10038


For the U.S. Trustee:        Holley, L. Claiborn, Esquire
                             OFFICE OF THE UNITED STATES TRUSTEE
                             Robert N. Giaimo Federal Building
                             150 Court Street
                             Room 302
                             New Haven, Connecticut 06510


For the Official
Committee of Unsecured
Creditors:                   Kristin B. Mayhew, Esquire
                             PULLMAN & COMLEY, LLC
                             850 Main Street
                             8th Floor
                             Bridgeport, Connecticut 06601


For Bravo Luck
Limited:                     Francis J. Lawall, Esquire
                             TROUTMAN PEPPER HAMILTON SANDERS LLP
                             3000 Two Logan Square
                             Eighteenth and Arch Streets
                             Philadelphia, Pennsylvania 19103

1 | APPEARANCES (CONTINUED):

2 | For the Debtor:              Stephen M. Kindseth, Esquire
  |                              ZEISLER & ZEISLER, P.C.
3 |                              10 Middle Street
  |                              15th Floor
4 |                              Bridgeport, Connecticut 06604

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2  MOTIONS:                                              PAGE

3  Matter
   No. 1257:  Motion for Order Further Extending the Sale      8
4             Process of Sherry-Netherland Apartment and
              Retention of Sotheby's International Realty
5             as Broker Filed by Douglas S. Skalka on
              behalf of Luc A. Despins, Genever Holdings
6             Corporation, Genever Holding

7             Court's Ruling:                               22

8
   Matter
9  No. 1297:  Order Establishing Deadlines for Filing        26
              Proof of Claim and Approving Form and Manner
10            of Notice Thereof (Re: 1191)

11            Court's Ruling:                               31

12
   Matter
13 No. 1298:  Order (I) Approving Retention and             23
              Appointment of Epiq Corporate Restructuring,
14            LLC as Claims and Noticing Agent, effective
              as of December 1, 2022, and (II) Granting
15            Related Relief (Re: 1198)

16            Court's Ruling:                               --

17 Matter
   No. 1303:  Motion to Compel JPMorgan Chase Bank, N.A.    31
18            to Comply with Rule 2004 Subpoena Filed by
              Douglas S. Skalka on behalf of Luc A.
19            Despins, Chapter 11 Trustee

20            Court's Ruling:                               --

21 Matter
   No. 1362:  Motion to Compel Compliance with Bk. Rule     31
22            2004 Subpoena by USB AG Filed by Patrick
              R. Linsey on behalf of Luc A. Despins,
23            Chapter 11 Trustee

24            Court's Ruling:                               --

25

INDEX

MOTIONS:                                                        PAGE

Matter
No. 1328:  Motion to Seal Filed by Patrick R. Linsey on    31
           behalf of Luc A. Despins, Chapter 11 Trustee

           Court's Ruling:                                  --

Transcriptionist's Certificate                              32

1          (Proceedings commenced at 2:38 p.m.)

2          THE COURTROOM DEPUTY:  Case Number 22-50073, Ho

3    Wan Kwok, and also Adversary Number 22-5027 [sic], Despins v

4    Bravo Luck Limited.

5          THE COURT:  If we could have appearances for the

6    record -- hold on one second, though.

7          MR. DESPINS:  Yeah.

8          THE COURT:  So, Bravo Luck is not on until 3:00.

9    We have a number of matters in the Kwok case at 2:30.

10          THE COURTROOM DEPUTY:  Oh, I'm sorry, Your Honor.

11    I called it out of turn.

12          THE COURT:  That's okay.  That's okay.  So right

13    now, we're just calling the matters that are scheduled for

14    2:30 --

15          THE COURTROOM DEPUTY:  Yes.

16          THE COURT:  -- okay?

17          THE COURTROOM DEPUTY:  Okay.

18          THE COURT:  And then we can schedule -- we can

19    call the adversary at 3:00.

20          THE COURTROOM DEPUTY:  Okay.

21          THE COURT:  All right.  Could we have appearances

22    for the record, please, starting with the Chapter 11 trustee.

23          MR. DESPINS:  Good afternoon, Your Honor.  Luc

24    Despins, Chapter 11 trustee.  I'm here with Mr. Linsey, our

25    Connecticut counsel, but he's in the hallway trying to cut

1  deals to avoid a protracted hearing, so he will be back soon.

2          THE COURT:  Okay.  Thank you.

3          MS. SMITH:  Good afternoon, Your Honor.  Annecca

4  Smith, Robinson & Cole, on behalf of PAX.

5          THE COURT:  Good afternoon.

6          MR. PETROCELLI:  Good afternoon, Your Honor.

7  Patrick Petrocelli from Stroock & Stroock & Lavan, on behalf

8  of The Sherry-Netherland.

9          THE COURT:  Good afternoon.

10          MS. LAVOIE:  Good afternoon, Your Honor.  Julie

11  Lavoie of Murtha Cullina, on behalf of The Sherry-Netherland.

12          THE COURT:  Good afternoon.

13          MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

14  Claiborn for the U.S. Trustee.

15          THE COURT:  Good afternoon.

16          MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

17  Mayhew, Pullman & Comley, on behalf of the Creditors'

18  Committee.

19          THE COURT:  Good afternoon.

20          MR. LAWALL:  Good afternoon, Your Honor.  Fran

21  Lawall, Troutman Pepper, on behalf of Bravo Luck.

22          THE COURT:  Good afternoon.

23          MR. KINDSETH:  Good afternoon, Your Honor.

24  Stephen Kindseth, Zeisler & Zeisler, on behalf of the debtor,

25  Ho Wan Kwok.

1          THE COURT:  Good afternoon.

2          Okay.  Let's just take a moment and let me catch

3  up where I was there, and I lost my place so just bear with

4  me for a moment, please.

5       (Pause)

6          THE COURT:  All right.  The -- we're going to --

7  maybe you're going to tell me this is why Mr. Linsey is out

8  in the hallway, Trustee Despins, but I was going to start

9  with The Sherry-Netherland.

10          Is that Mister -- no?

11          MR. DESPINS:  No, he's --

12          THE COURT:  Okay.

13          MR. DESPINS:  -- dealing with UBS matters.

14          THE COURT:  Okay.  I think, counsel from Murtha, I

15  don't see your appearance on -- in the case yet.  Have you

16  filed a notice of appearance?

17          MS. LAVOIE:  No, Your Honor.

18          THE COURT:  Okay.  You need to do that when you

19  get back to your office, okay?

20          MS. LAVOIE:  Absolutely.  Yep.

21          THE COURT:  That's required under our Local Rules.

22          All right.  So, what is -- I'm sorry, Trustee

23  Despins, I saw, but I'm not saying I studied, the issues.

24          The only issue with The Sherry-Netherland sale

25  process is the issue about renting the apartment?

1          MR. DESPINS:  Having the ability to market --

2          THE COURT:  To rent it, yes.

3          MR. DESPINS:  -- to -- but subject to coming back

4   to court to rent it.  It's not authority to rent, but

5   authority to market for rent.

6          THE COURT:  Okay.  But there's still a dispute on

7   that, correct?

8          MR. DESPINS:  That's correct, Your Honor.

9          THE COURT:  All right.  And, counsel, you've

10  disputed that, correct?

11         MR. LAWALL:  We have, Your Honor.  Thank you.

12         THE COURT:  Okay.  So your dispute is that, I

13  think -- and, please, I mean, I think things were just filed

14  today.  We had hearings this morning, so I could be wrong,

15  but I think your argument is that that was not part of the

16  original motion filed in the Holdings case and that if that's

17  what the trustee wants, he needs to file a new motion?

18         MR. LAWALL:  Yes.  Again, Your Honor, good

19  afternoon.  Fran Lawall for Bravo.

20         Your Honor, yes, that's exactly the issue.  When

21  we left court last week, the only issue was with respect to

22  eliminating the consent right with respect to the sale

23  agreement and having everything else to be a consultation

24  right.  That evening, both PAX, as well as Bravo, notified

25  the trustee that we were good with that and so we had thought

1  the matter was done.

2          The following day, we got a proposed sale order

3  which inserted the requested rental language in it, which was

4  not within the original request that was before Your Honor

5  and the issue which we thought had been resolved at the

6  hearing, where I thought everyone had pretty much confirmed

7  on the record that's where we were.  The proposed order that

8  the trustee has submitted, Your Honor, with the rental

9  language, we, this morning -- and I apologize, I don't have

10  the docket number because I was in transit on the way up --

11  we adopted the --

12          THE COURT:  I think I do, so hold on a second.

13  Because I was in court this morning, so -- but I had tried to

14  look at it really quickly, so I think I have it, where you

15  have your marked-up order, as well.

16          Is that what you were going to refer to, counsel?

17          MR. LAWALL:  That is correct, Your Honor.

18          And if it makes it easier, Your Honor, we have

19  adopted the trustee's proposed order in every way, but for

20  the rental language.  And, Your Honor, our -- we have

21  concerns at this point:  number one, it hasn't been noticed

22  up; and number two, we think that there has to be some

23  additional consideration before the rental issue is finally

24  resolved; and then, ultimately, we will have an issue with

25  respect to the disposition of the rent itself because if

1  we're able to reach agreement, with respect to rental, we

2  strongly believe that all of the rental monies have to go

3  toward the maintenance and upkeep of the property and those

4  were issues, Your Honor, we weren't able to get past.

5        What I had -- what I would propose, Your Honor, is

6  the order that we have uploaded, which I thought had

7  satisfied the issues last week with respect to the rental

8  issues, that they can be revisited in another filing.  I

9  believe it's been indicated on the record that currently

10 there's over a million dollars of money on reserve with

11 respect to the maintenance, so I think we're good for another

12 13 months there.

13        If the trustee continues, or decides to continue

14 to move forward with the rental issue, I would like the

15 opportunity to have a conversation with both, the rental

16 agent, as well as the sales officer, to make sure, first of

17 all, so that I can inform my client what impact having a

18 parallel rental program on top of a sale program might have

19 in connection with a possible buyer.

20        And, of course, Your Honor, we believe, although,

21 I don't think it has to be an issue for today, rental really

22 is outside the form of the settlement agreement.  But I think

23 from a notice standpoint, from a motion standpoint, the

24 rental issue today is really not properly teed up.  Bravo is

25 not trying to stand in, in any way, with respect to progress,

1  but this is an important issue.  It has been from the

2  beginning.  Rental is a new issue and we think it has to be a

3  little bit more thoughtfully continued -- thought about and

4  explored.

5          And then with respect to the disposition of the

6  rental proceeds themselves, we think that's a critical issue.

7  If you recall, Your Honor, there are three different

8  adversaries against my client at the moment, all of them

9  having to do with who really owns this property.  And so, as

10  you can imagine, the disposition of those rental proceeds,

11  outside of the use of a property, would give us some

12  heartburn.

13          So that's really the essence, Your Honor.  We'd

14  respectfully ask that the order that we have uploaded, which

15  accepts all of the trustee's comments and all the trustee's

16  language, but for the rental issue, that be approved today

17  and that we will work with the trustee on the rental issue to

18  explore if there's a pathway here, where we can reach

19  agreement on it, but it's not necessarily a today issue, Your

20  Honor.

21          THE COURT:  Okay.  I have a couple of questions,

22  given what you've just stated.  When the Holdings case was in

23  New York, the -- my understanding, and I believe it's

24  accurate, is that the debtor, Holdings, filed the motion and

25  a plan to sell the property, to sell the apartment and there

1 was a sales agent hired and all that, and that's been going

2 on for more than a year and a half.  And from what I

3 understand, but you obviously, The Sherry-Netherland's lawyer

4 can correct me if I'm wrong, too -- anybody can -- I haven't

5 seen any offers for the purchase of that apartment.

6            Is that correct?

7            MR. LAWALL:  Your Honor, there's been activity.  I

8 don't think -- I'm not aware of a firm offer having been --

9            THE COURT:  Right.

10            MR. LAWALL:  -- made on the property.  I'm not

11 sure that the sales process has been going on for a year and

12 a half.  It could have been, Your Honor.  I don't have those

13 dates in front of me.

14            THE COURT:  Well, I can tell you that the orders

15 that I have reviewed of Judge Garrity approved a second

16 restated settlement agreement and other things back in early

17 September of 2021, so I do think it's been going on for just

18 about a year and a half, if not longer, but at least that

19 long, number one.  Number two, the debtor, Holdings, sought

20 the approval with regard to the disposition of this property

21 under Section 363 of the Code, which you know, is "use, sale,

22 or lease of property."

23            So, I understand your point, and I'm not ruling on

24 it at the moment, but I don't think -- I think if there is

25 any issue with regard to the lease and teeing it up in a

1   different motion, we can do that in a week or two.  I mean,

2   it really doesn't take a lot of time.

3          This is the only asset of the debtor.  The debtor,

4   when represented by counsel in that New York case, confirmed

5   that time and time again in all of the pleadings they filed

6   in that case, they even commenced an action against your

7   client saying that they were "directed," I believe the word

8   is -- but I'm not sure that's accurate, so I shouldn't say

9   that -- but they were told that they had to place the name --

10  title to the apartment under the name of "Bravo Luck" for the

11  benefit of the debtor's son; that's what the allegation is.

12  It's a declaratory judgment action, right, and that's what --

13  and they're saying that Bravo Luck doesn't own the -- that's

14  what they want the declaration to be from this Court, or it

15  was Judge Garrity before, but once it got transferred here,

16  then this Court, that Bravo Luck doesn't own the apartment,

17  right?

18          MR. LAWALL:  The -- Your Honor, I'm not sure I

19  would characterize it exactly like that, but I think the

20  essence is correct.  The dispute here is who actually has

21  ownership of the apartment --

22          THE COURT:  Right.

23          MR. LAWALL:  -- and that's been central to the

24  dispute --

25          THE COURT:  Right.

 1              MR. LAWALL:  -- and it will continue to be.

 2   The --

 3              THE COURT:  Well, I don't know how long it will

 4   continue to be, so just -- I just want you to understand

 5   that.  I mean, this is -- this has been going on for a long

 6   time.  The trustee has come in.  We had the whole issue with

 7   Genever BVI and the fact that the BVI Court was not going to

 8   hear the continued challenges to the ownership of the -- of

 9   BVI and then, therefore, the apartment.  I mean, I understand

10   everything you're saying.  All I'm saying to you is I don't

11   know how much longer this is going to go on, okay.

12              So, with regard to the rent issue, the issue that

13   you raise about notice and it not being part of the original

14   motion, I think is persuasive, but I think we can rectify

15   that issue very quickly.  The Code and the Rules say that the

16   Court can shorten any time frame for notice of a motion

17   brought under Section 363 for cause shown; I think it's

18   Rule 2002(a), possibly.  And the cause shown here is that

19   this property has not sold for more than a year and a half,

20   and not even has one offer been brought forward, okay, and --

21   not that I'm aware of anyway.  If anybody's -- if I'm wrong,

22   correct me, okay, but I don't see anything in the record of

23   these cases to establish that there's been a sale of this

24   property, even contemplated, you know.  Even if it was just

25   an offer that was still subject to Court approval hasn't even

 1  been brought forward.

 2              Now --

 3              MR. LAWALL:  Understood, Your Honor.

 4              THE COURT:  -- Gen -- the Holdings -- Holdings

 5  filed a plan in that Chapter 11 case more than a year and a

 6  half ago that said, We're liquidating this apartment --

 7              MR. LAWALL:  Right.

 8              THE COURT:  -- all right.  But it hasn't happened,

 9  okay.

10              MR. LAWALL:  Well, that, in part, you were, was

11  because of the filing of the Kwok bankruptcy and that plan

12  was --

13              THE COURT:  It may or may not be, but it doesn't

14  matter, because it still was that -- Gen -- Holdings' estate

15  was comprised of the ownership interest in the apartment and

16  everybody agreed that the property was going to be sold

17  through the sales agent.  And there was a whole, apparently,

18  many, many hearings about what the sales agent could or could

19  not do, which resulted in different agreements and then the

20  agreements not necessarily being met.  And the issues that

21  were raised last week here, whether that settlement agreement

22  has expired by its own terms, because it was expired in

23  November of 2022, you've all come to an agreement on the

24  consent, and I'm happy that that's the case.

25              I -- as I said, I'm persuaded by your argument

1  about the trustee now seeking to rent, not necessarily being

2  on notice to everybody, but I think that can be accomplished

3  in a very short amount of time.  And if that's what the

4  trustee wants to do, then that can happen in this court,

5  okay, because he came into this situation when there were

6  facts that were already in existence for a long time in the

7  New York case, and now he's trying to turn that asset into

8  cash, which was what was always contemplated by the

9  Chapter 11 case in New York.

10          Now, you may say the rental income, you're going

11  to fight, you know, about who -- not fight, but raise issues

12  about who's entitled to be paid that.  Well, as you just

13  said, and counsel for The Sherry-Netherland said last week,

14  if there's a million dollars in a security deposit and

15  there's 13 months left, then I wouldn't know why the rental

16  income wouldn't come into this estate.

17          MR. LAWALL:  Well --

18          THE COURT:  I -- and we'll -- we can talk about

19  that when we get there, but I'm just giving you a heads-up.

20  I think that the rental income, why wouldn't it be property

21  of this estate, of these jointly administered estates --

22          MR. LAWALL:  Sure.  Your Honor --

23          THE COURT:  -- you know?  So -- and you'll make

24  your argument and you'll tell me why I'm wrong --

25          MR. LAWALL:  Sure.

1          THE COURT:  -- and I'll listen to you, but the

2    issue now is Mr. Despins was appointed to determine the

3    assets of this -- these debtor's estates and turn them into

4    cash to distribute them to creditors.  That's what we're

5    going to do, okay.

6          So -- but as far as today is concerned, I saw your

7    order and I appreciate it.  I understand you took -- you

8    deleted the paragraph about the rental, renting it, and I

9    can -- I think that's fine.  I actually think that's fine,

10   but I also think that I can add to this order that the

11   trustee is entitled to, and I'll give him a period of time,

12   to bring a motion to -- with regard to renting the property.

13         Mr. Despins, did you have an issue with what I

14   just said?

15         MR. DESPINS:  Very slight, Your Honor.

16         I wanted you to know that in our noticed proposed

17   order we said that to the extent necessary, this shall be

18   deemed an amended motion to seek this relief.  That was filed

19   on the 25th, so I would ask the Court to consider when you

20   set new deadlines, the fact that there's already been notice

21   given of this amended motion on January 25th and, therefore,

22   I would want you to take that into account, Your Honor.

23   That's --

24         THE COURT:  Okay.  I'll take that into account.

25         MR. DESPINS:  -- that's my point.

1    THE COURT:  So, I'm prepared to enter your order

2 with some, most likely an addition that says that the trustee

3 can do something in a period of time and you'll have a right

4 to object to it, okay.

5    MR. LAWALL:  Yes, Your Honor.

6    I think just to round out the discussion, if I

7 may?

8    THE COURT:  Sure.

9    MR. LAWALL:  The -- one of the issues is really

10 going to come and Your Honor had specifically identified the

11 issue in terms of monetizing this asset for sale.  What I

12 understand to be is they're talking about a 12-month lease.

13 So, if it gets leased for 12 months, it's not going to be

14 sold for that period of time.  So, my point has been this

15 issue of leasing is a little more complicated than simply

16 going out and finding a tenant for 30 days or 60 days,

17 particularly given a property of this import.

18    And given the market, Your Honor, at this point,

19 with respect to those rental income, those monies, in terms

20 of it being property of the estate, there is certainly an

21 issue, Your Honor, given the disputed ownership, which the

22 trustee has identified in three separate adversary

23 proceedings against my client.  There's a dispute there.

24    THE COURT:  Well, Holdings --

25    MR. LAWALL:  I'm sorry, Your Honor?

1          THE COURT:  Holdings identified it, as well.  It

2   signed the complaint in New York.

3          MR. LAWALL:  That was at the direct -- that was at

4   the time, Your Honor, and I appreciate the separation, but

5   that was at a time when Mr. Despins was already the

6   trustee --

7          THE COURT:  I understand.

8          MR. LAWALL:  -- in the Kwok bankruptcy.

9          THE COURT:  I understand.

10         MR. LAWALL:  Right.

11         THE COURT:  But a lawyer that wasn't Mr. Despins'

12  lawyer signed that complaint.

13         MR. LAWALL:  Understood, Your Honor.

14         And there's -- we have never shied away from the

15  fact that there is a dispute with respect to the ownership

16  and with respect to trying these issues.  We are fully

17  prepared to try them, Your Honor, and to set a schedule and

18  all of that.  We're not trying to hide from that.  We know --

19         THE COURT:  I didn't say -- I never suggested that

20  you were.  I'm not suggesting that at all.

21         I'm suggesting we're going to move on with the

22  property:  it's either going to be sold, rented, or both --

23         MR. LAWALL:  But the problem with renting --

24         THE COURT:  -- then we'll see what happens.  You

25  know, maybe -- you'll be able to talk once the specifics are

1  ironed out and, you know, who knows, you know, people could

2  be renting with an option to purchase.  I don't know, you

3  know.  I mean, we'll see.  We'll see how the issue is raised.

4         But I am going to give the trustee the opportunity

5  to have an order authorizing him to rent the apartment and

6  he's going to have to provide all the terms and conditions

7  and you're going to have an opportunity to object to that,

8  okay, and anybody else that wants to object to it.

9         And so, with regard to the motion for the order

10  further extending the sale process, what I'm going to do is

11  I'm going to, you know, grant it in part with your proposed

12  order, counsel, with changes -- with additions that I'm going

13  to make that says what I've just stated, without specifically

14  using all the language that will be in the order, and

15  acknowledging -- Mr. Despins wants me to say that the motion

16  filed on the 25th was, in fact, that.  And I'll say that

17  that's his assertion, but I'm going to give times for

18  somebody to do whatever it is they're going to do, okay.

19  That's how we're going to proceed.

20         MR. LAWALL:  Very good, thank you.

21         Your Honor, we have the -- well, I'll leave to the

22  3 o'clock list for the adversary.  Thank you.

23         THE COURT:  Yes, thank you.

24         MR. DESPINS:  Your Honor, to be candid with Your

25  Honor, I did not review his form of order.  I'm relying on

1  his representation that it's identical to ours --

2          THE COURT:  I think it is.

3          MR. DESPINS:  -- except for the rental issue.  If

4  that's the case, then we have no issues with using his order.

5          THE COURT:  I can tell you that I believe it is.

6  I -- but did I look at this somewhat quickly?  Yes, but I

7  believe it is exactly the same order with that one paragraph

8  deleted.

9          MR. LAWALL:  Your Honor, if there were any

10 changes, and I'm not aware of any, because I, myself, was the

11 one who deleted the one paragraph, but if there are any

12 changes, we will certainly conform it to his original.

13         THE COURT:  Okay.  Thank you.

14         All right.  So with regard to that motion, then

15 the motion for -- to extend the sale process, then that is

16 granted, in part, for the reasons stated on the record.

17         I will take Bravo Luck's counsel's marked-up

18 order, which I do believe, but I will confirm is the

19 trustee's proposed order, with the deletion of the paragraph

20 about the rent, and then I will add provisions regarding the

21 filing of a motion or seeking approval to rent the property

22 and providing an opportunity to object and setting a hearing

23 on that, as well, okay.

24         MR. LAWALL:  Thank you, Your Honor.

25         MR. DESPINS:  Thank you.

1          THE COURT:  Thank you.

2          MR. PETROCELLI:  Your Honor, if I could, just to

3    clarify one point?  I just want to make sure that I'm not

4    misunderstanding what Your Honor is saying, is that the order

5    will give the trustee the opportunity to do what he proposed

6    to do in this current order, which is get authorization to

7    try to rent the apartment?

8          Certainly, there were --

9          THE COURT:  That is correct.

10          MR. PETROCELLI:  -- representations in there about

11    preserving the rights of The Sherry-Netherland, including

12    approval rights, and we just want to make sure that it's

13    clear that we're -- our understanding is that this is not

14    actually to rent the apartment, but to attempt to rent the

15    apartment?

16          THE COURT:  That is correct.  And you will have

17    notice and you will be able to file whatever response that

18    you feel is necessary to protect your client's rights.

19          MR. PETROCELLI:  Thank you very much, Your Honor.

20          THE COURT:  Okay.  Thank you.

21        (Pause)

22          THE COURT:  Okay.  With regarding -- with regard

23    to the order establishing deadlines for the filing of proofs

24    of claim and the retention order on, with regard to Epiq, I

25    saw, Trustee Despins, a revised, proposed order on Epiq, but

1   it still doesn't do what it needs to do as far as from the

2   Clerk's Office perspective and the statutory cites.

3           The -- there -- so, I am going to have to submit

4   to you all, or we'll have to somehow -- I mean, I think

5   there's a lot of findings in here that are unnecessary and

6   not accurate.  I mean, I don't think it is necessarily

7   burdensome for the Clerk's Office to do this.  You want

8   the -- Epiq to do it because of the confidential nature of

9   the claims and that's fine.  I don't think the -- I think the

10  Clerk's Office could do this, but I don't -- I have no

11  problem with Epiq doing it, okay.  So I'm going to make some

12  of those changes.

13          I'm going to add some language in the order that

14  says, you know, "subject to the conditions of this order,"

15  because the services agreement doesn't include noticing and

16  then it includes a bunch of other things like helping the

17  debtor prepare schedules.  Obviously, that's not going to

18  happen in this case, so I'll take care of that.

19          When it says Epiq shall service the custodian of

20  the court of records -- of the court records, I think it

21  needs to say, "Epiq shall serve to assist the Clerk of Court

22  as the custodian of the court records."  I understand Epiq is

23  going to keep everything, okay -- I've got no problem with

24  that -- but Epiq has to, then, be responsible for serving

25  everything that needs to be served by, either this Court's

1  direction, the Clerk of the Court's direction, or your

2  direction, and it has to be clear who they're serving.  I

3  don't think that's going to be a problem.  I just think the

4  order has to be clear to say that.

5       Also, I'm going to change the certificate of

6  service that they're going to file to one business day after

7  they serve, because they can do a certificate of service

8  within one business day.

9       They also have a paragraph that I don't think that

10  they -- I think it just doesn't make sense.  Because it

11  says -- paragraph 4 that was added to the redlined version,

12  they say:

13       "Epiq shall eliminate all duplicate notices in its

14  service list and for services upon those parties who have

15  filed a notice of appearance, limit service to the persons

16  identified in such notice."

17       They don't have to serve anybody that's filed a

18  notice of appearance; that's the whole point.  There's -- a

19  notice of electronic filing is the certificate of service

20  under our District Court Local Rules and our Bankruptcy Court

21  Local Rules.  So, what I'm saying is don't -- all you have to

22  serve is the people who don't get it electronically, that's

23  all you have to serve, and show that you did that.  That's

24  all they have to do, okay.

25       It's not -- none of this, in my opinion, is earth-

1  shattering.  What I'd like your office to do when you have

2  the opportunity, is to get the version -- and maybe you

3  already have -- to the clerk -- to the courtroom deputy in

4  Word and then we can show you the changes we're going to

5  make, and then if anybody has a problem with it, they can let

6  the Court know, okay.

7          MR. DESPINS:  Will do, Your Honor.  Thank you.

8          THE COURT:  Thank you.

9          Now, with regard to the proof of claim deadline,

10  as I stated last week during the hearing when we had evidence

11  with regard to many exhibits introduced with regard to the

12  claims process in this case and I issued orders overruling

13  the debtor's objections to, I believe it was three proofs of

14  claim, and stating that the debtor could not object to any

15  further claims, any future -- any other claims, without

16  obtaining Court approval, I said to everyone, and I asked

17  everyone to be prepared to respond to it today, that I'm

18  considering extending the proof of claim bar date because of

19  what has gone on in this case.

20          So, Trustee Despins, have you had an opportunity

21  to think about that?

22          MR. DESPINS:  Yes, Your Honor.

23          THE COURT:  Okay.  And what's your thoughts,

24  please?

25          MR. DESPINS:  May I approach the --

1                 THE COURT:  Yes, thank you.

2                 MR. DESPINS:  First, I want to -- I know you were

3 in court this morning so you may not have seen it, we filed a

4 statement.

5                 THE COURT:  I haven't seen it.

6                 MR. DESPINS:  Okay.  But, basically, showing to

7 the Court that there's more of the same going on.  This time,

8 basically telling the supporters of Mr. Kwok, him telling

9 them to file claims and basically -- it's a quote, "Let the

10 attorney's fees of trustees accumulate to one trillion, if

11 possible."  Essentially, we can't control the case, but we'll

12 make sure that it's a complete mess.

13                 So we filed this, and we're obviously very upset

14 about this, but -- and it's going to surprise you -- at the

15 end of the day, we believe the Court has, and you know that

16 you do have under the excusable neglect standard, the

17 ability, after the fact, to look at claimants who filed a

18 late claim and say, You know what, I can find that these

19 people were confused or felt threatened and I have the

20 ability through that mechanism to remedy the potential harm

21 here.

22                 And I know it's counterintuitive, because you

23 might say, Well, the trustee is going to ask for more time.

24 The problem with that, you know, there are a couple of

25 points, Your Honor.  One is, if it's, like, a few days, okay,

1  but if it's more than that, I need to give notice of that to

2  people.  And, Your Honor, we are so tapped out from a funds

3  point of view, we -- we're in the negative zone now where

4  we're financing all of these expenditures.  So, for example,

5  publication notice:  $20,000.  Things like that.  So,

6  therefore, we're asking the Court to maintain the bar date

7  with the understanding that the Court would have the ability

8  through the excusable neglect tool, to remedy the situation

9  after the fact if there's a need for that.

10         And so, we thought a lot about it, Your Honor, and

11  that's where we came out.  We believe that your decision to

12  quash the claims objections and other things that have

13  happened, are sending a signal through the internet, you

14  know, communication that these people have, that have partly

15  remedied what's going on in the case, but time will tell

16  whether it's fully remedied or not.  And I believe that

17  through excusable neglect, you have the ability to deal with

18  that and that would be, ultimately, our recommendation, to

19  not change the bar date, Your Honor.

20         THE COURT:  Okay.  Thank you.

21         MR. DESPINS:  Thank you.

22         THE COURT:  Does anyone else wish to be heard?

23         MS. SMITH:  May I?

24         THE COURT:  Yes, please.

25         MS. SMITH:  Thank you, Your Honor.  Annecca Smith,

1   on behalf of PAX.

2          It is also PAX's view that it would be appropriate

3   to maintain February 17th as the bar date, in part, for the

4   reasons that Trustee Despins stated, including the Pioneer

5   factors and the excusable neglect standard, and the view of

6   PAX that this Court's action last week to also cut off

7   further objection rights, claim objection rights of Kwok,

8   absent permission, are sufficient for these purposes.

9          In addition, PAX wanted to emphasize the

10  importance of the mediation to these cases.  Mr. Friedman and

11  Mr. Sarnoff asked me to pass along their regrets that they

12  are unable to attend today; they are going to be meeting with

13  the mediator on behalf of PAX as an initial jumping-off point

14  for that process.

15         The February 17th date is appropriate for use in

16  the mediation because it will enable the parties to fully

17  understand the universe of claims and maximize the chances of

18  a successful settlement.  To further delay that, given the

19  bounds of the current mediation order, would jeopardize the

20  success of the mediation.

21         Excuse me, Your Honor.

22     (Pause)

23         MS. SMITH:  In addition, this case has been

24  pending for almost exactly one year as of the bar date, in

25  particular, and it is the view of PAX that the interests of

1 the creditors are also better served to reach a settlement

2 and reach a resolution of these cases.  Thank you.

3          THE COURT:  Thank you.

4          Does anyone else wish to be heard?

5          MS. MAYHEW:  Your Honor, the Committee agrees with

6 the approach proposed by Trustee Despins.  I think it makes

7 sense to keep the bar date as is, and to the extent that

8 there are any late-filed claims, they can certainly be

9 considered.  But at this point, it doesn't seem to make sense

10 to extend it, either a month or even a few weeks through the

11 end of the month, given the costs that would be incurred.

12 Thank you.

13          THE COURT:  Thank you.

14          Mr. Kindseth?

15          MR. KINDSETH:  The debtor is not taking any

16 position with respect to this issue, Your Honor.

17          THE COURT:  But you -- the debtor has taken a

18 position, with respect to the issue before.

19          MR. KINDSETH:  The debtor's position is -- has not

20 changed, so --

21          THE COURT:  Then you are taking a position,

22 because your position was made clear in previous hearings

23 that you wanted the bar date to be as soon as possible,

24 correct?

25          MR. KINDSETH:  Correct.

1          THE COURT:  Okay.  Any -- we -- anyone else have

2   anything they want to add on the bar date issue?

3        (No verbal response)

4          THE COURT:  Okay.  Then we'll come back to that

5   later.

6          All right.  Now, we have the motion to compel

7   compliance with subpoenas for JPMorgan and UBS.  Who will be

8   handling that, Attorney -- Trustee Despins?

9          MR. DESPINS:  That will be Mr. Linsey, but he's

10  busy doing God's work out there, so if we could skip that for

11  now, that would be great, Your Honor.

12         THE COURT:  All right.  Well, then we have left

13  the adversary proceeding pretrial conference or the motion to

14  seal.  So the adversary proceeding pretrial conference, shall

15  we address that now?

16         MR. LAWALL:  That would be fine, Your Honor.

17         MR. DESPINS:  Sure.

18         THE COURT:  All right.  Just let -- if you would,

19  let the courtroom deputy just call the adversary proceeding

20  number so she can make sure that the record that we just

21  discussed, we're going to discuss will be part of the

22  adversary proceeding.

23         So, go right ahead.

24         THE COURTROOM DEPUTY:  Okay.

25        (Proceedings concluded at 3:13 p.m.)

1                                    CERTIFICATION

2                 I certify that the foregoing is a correct

3        transcript from the electronic sound recording of the

4        proceedings in the above-entitled matter to the best of my

5        knowledge and ability.

6

7        /s/ William J. Garling                         February 2, 2023

8        William J. Garling, CET-543

9        Certified Court Transcriptionist

10       For Reliable