```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
                          BRIDGEPORT DIVISION

In Re                        *   Case No. 22-50073 (JAM)
                             *
HO WAN KWOK and GENEVER      *
 HOLDINGS CORPORATION,       *
                             *
             Debtor.         *
                             *
PACIFIC ALLIANCE ASIA        *   Adv. Proc. No. 22-05032
 OPPORTUNITY FUND L.P.,      *
                             *   Bridgeport, Connecticut
             Plaintiff,      *   January 26, 2023
                             *
     v.                      *
                             *
HO WAN KWOK,                 *
                             *
             Defendant.      *
                             *
* * * * * * * * * * * * * * * *
```

                TRANSCRIPT OF MOTION TO COMPEL COMPLIANCE WITH
                    PRELIMINARY INJUNCTION AND QUASHING
                     INDIVIDUAL DEBTOR'S CLAIMS OBJECTIONS
                             (EMERGENCY MOTION)
                  BEFORE THE HONORABLE JULIE A. MANNING
                     UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor, HK          AARON ROMNEY, ESQ.
 International and Mei Guo:  JOHN CESARONI, ESQ.
                            Zeisler & Zeisler, P.C.
                            10 Middle Street, 15th Floor
                            Bridgeport, CT  06604


For the Creditor, Pacific   ANNECCA SMITH, ESQ.
 Alliance Asia Opportunity  Robinson & Cole
 Fund L.P.:                 28 Trumbull Street
                            Hartford, CT  06103


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:

| | |
|---|---|
| For the Creditor,<br> Pacific Asia Opportunity<br> Fund L.P.: | STUART SARNOFF, ESQ.<br>DANIEL CANTOR, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| For the Chapter 11 Trustee: | NICHOLAS BASSETT, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| | PATRICK LINSEY, ESQ.<br>Neubert, Pepe and Monteith<br>195 Church Street<br>New Haven, CT  06510 |
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States<br> Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For the Creditors Committee: | KRISTEN MAYHEW, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |
| For the Defendant Kwok: | DAVID S. WACHEN, ESQ.<br>Wachen LLC<br>11605 Montague Court<br>Potomac, MD  20854 |

1    (Proceedings commenced at 12:10 p.m.)

2         THE COURTROOM DEPUTY:  Case no. 22-50073 Ho Wan

3    Kwok and adversary no. 22-5032, Pacific Alliance Asia

4    Opportunity Fund vs. Kwok.

5         THE COURT:  Okay.  Good afternoon.  If we could

6    have appearances for the record, starting with the Chapter

7    11 Trustee, please.

8         MR. DESPINS:  Good afternoon, Your Honor.  Luc

9    Depins, Chapter 11 Trustee.

10        MR. HASTINGS:  Nick Bassett, Paul Hastings, on

11   behalf of the Chapter 11 Trustee.

12        MR. LINSEY:  Good afternoon, Your Honor.  Patrick

13   Linsey, from Neubert, Pepe & Monteith, Connecticut counsel

14   for the trustee.

15        MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

16   Sarnoff, O'Melveny and Myers, on behalf of creditor, PAX.

17   With me is my partner, Dan Cantor -- Daniel Cantor from

18   O'Melveny, saving Annecca Smith, from Robinson Cole, local

19   counsel, an opportunity to have to run up in front and

20   announce herself, I thought I would do that myself.

21        THE COURT:  Good afternoon.  Thank you.

22        MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

23   Claiborn for the U.S. Trustee.

24        MR. MAYHEW:  Good afternoon, Your Honor.  Kristen

25   Mayhew, Pullman and Comley, on behalf of the Creditor's

1    Committee.

2              MR. ROMNEY:  Good morning, Your Honor.  Aaron

3    Romney, Zeisler and Zeisler, on behalf of HK International,

4    Mei Guo, and the debtor.  Although, just calling the

5    adversary proceeding, we have not appeared in that case.

6              THE COURT:  Is anybody here appearing in the

7    adversary proceeding?

8              MR. DESPINS:  Mr. Wachen.

9              THE COURT:  Oh, Mr. Wachen.  I'm sorry --

10             MR. WACHEN:  Your Honor, David Wachen.

11             THE COURT:  -- Mr. Wachen.  I saw you.  I

12   apologize.  I was just looking in the courtroom so I got --

13             MR. WACHEN:  It's okay.

14             THE COURT:  -- confused.  Sorry.  If you would

15   just note your appearance, Mr. Wachen?  I'm sorry.

16             MR. WACHEN:  Sure, Your Honor.  David Wachen on

17   behalf of Mr. Kwok.

18             THE COURT:  Okay.  Good.  Good afternoon.

19             All right.  So there are several matters on the

20   calendar.  The first matter, my understanding is there may

21   be some request for a continuance.  Is that correct, Trustee

22   Despins?

23             MR. DESPINS:  That's correct, Your Honor.

24             THE COURT:  Go right ahead.

25             MR. DESPINS:  For the record, Luc Despins, Chapter

1    11 Trustee.  This is a -- this is on the motion to extend

2    the sale process for the Sherry Netherland.  The parties

3    have agreed -- well, subject to Your Honor's agreement of

4    course -- that we would like to adjourn this to the January

5    31st hearing next Tuesday.

6              There is a proposed order that was circulated that

7    meets with everyone's approval other than Bravo Luck at this

8    point, so they are considering that, and they did not have a

9    chance to consult their client on that and, therefore, we're

10   not ready to appear today on that matter, so we have agreed

11   to adjourn it to the 31st, subject to Your Honor's agreement

12   of course.

13             THE COURT:  Okay.  Hold on one second, please.

14             So counsel for Bravo Luck is not here today.

15             MR. DESPINS:  That's correct, Your Honor.

16             THE COURT:  There was probably presumption that

17   this will be continued to the 31st.

18             MR. DESPINS:  Correct.  We did send an email -- or

19   Mr. Linsey sent an email to the courtroom deputy yesterday.

20   I forgot what time but, you know, asking that it be

21   adjourned and --

22             THE COURT:  That's fine.  I'm having some computer

23   issues but -- but that's fine.  So I don't recall sitting

24   here, because I'm having computer issues.

25             What time the -- is it in the afternoon of the

1    31st, correct?

2              UNIDENTIFIED SPEAKER:  Yes.  I think it's 2:30.

3              MR. DESPINS:  2:30, Your Honor.

4              THE COURT:  I'm looking at the courtroom deputy.

5              THE CLERK:  Yes.

6              THE COURT:  She's -- all right.

7              THE CLERK:  It's 2:30.

8              THE COURT:  So we'll continue this first matter,

9    12:57 to 2:30 p.m., and just give me a moment if you would,

10   please?

11        (Pause)

12             THE COURT:  All right.  Sorry.  There's something

13   wrong with my computer, but I can see all of you so I think

14   we'll be okay.

15             All right.  So the first matter, 1257 is continued

16   to January 31st at 2:30 p.m.

17             MR. DESPINS:  And, Your Honor, thank you for that.

18   We were wondering if we could hijack the agenda a little bit

19   to talk about a procedural --

20             THE COURT:  I'm not -- no.

21             I'm not going to take the procedural matters

22   first.  I'm going to take the evidentiary matters first,

23   because they could impact the procedural matters.

24             So I'm going to take the evidentiary hearings

25   first, on the issue of the motion -- the motions to compel.

1          MR. DESPINS:  Thank you, Your Honor.  Mr. Bassett

2     will be handling that matter.

3          MR. BASSETT:  Your Honor, just for the record, for

4     appearances, it was a little confusing with respect to the

5     adversary proceeding versus the main case.  But just to

6     clarify the record, I'd like to note our appearances in the

7     main case only.

8          THE COURT:  I think Mr. Romney did that, but

9     that's fine.

10          MR. BASSETT:  I don't think he completed the

11     sentence, but for the record, Your Honor, Aaron Romney,

12     Steven Kindseth and John Cesaroni for the debtor, Ho Wan

13     Kwok, in the bankruptcy case.  Thank you, Your Honor.

14          THE COURT:  Don't you represent other people in

15     the bankruptcy case too?

16          MR. BASSETT:  We do, but that matter -- I don't

17     think there's a matter pertaining to Mei Guo and HK USA.

18     We'd hoped to talk to the Court about the PJR hearing, but

19     Your Honor is taking up this matter first, and we'd appear

20     for them --

21          THE COURT:  There's nothing about the PJR hearing

22     on the calendar today, so there's nothing to discuss.  So

23     we're going to take up the motion to compel.  Go right

24     ahead.  Hold on.  Sorry, Mr. Bassett.  Hold on.

25          Oh, right, right, right.  Okay.  So what I said,

1    Mr. Kindseth, is we're taking up the motion to compel, and

2    there's nothing about the PJR hearing on the calendar today.

3    So, go right ahead, Mr. Bassett.

4              MR. BASSETT:  Thank you, Your Honor.  Good

5    afternoon.  Again, for the record, it's Nick Bassett, from

6    Paul Hastings, on behalf of the Chapter 11 Trustee.

7              Your Honor, there are, I think, sort of two

8    distinct components as we see it too, the motion that we

9    filed.

10             Sort of the relief that we are seeking is to -- is

11   with respect to the debtor's standing, which we don't think

12   he has, to object to proofs of claim and relief that we're

13   seeking with respect to objections that he's filed and his

14   ability to do so in the future.  That's primarily a legal

15   argument based on standing that the trustee actually is

16   going to be handling.

17             The other piece of it, and it's sort of been

18   separated in that way with respect to Mr. Kwok's counsel as

19   well.  I believe that's an issue that the Zeisler firm will

20   be handling.

21             The other issue is the motion to compel compliance

22   with the Court's preliminary injunction order.  It's related

23   in that the issue is, you know, in our view, the debtor's

24   ongoing conduct that violates the preliminary injunction

25   order with respect to, in particular, statements made about

1    creditors that we think are highly problematic and we will

2    discuss in more detail.

3         What I've proposed just as a matter of structure

4    is that we address that second piece first, which is the

5    only piece that has evidence, and I'll start with the

6    evidence, and then we can move into argument on that.

7         THE COURT:  That's what I need you to do.

8         MR. BASSETT:  Okay.

9         THE COURT:  Right?  I've looked at the motion.  It

10   has a lot of assertions in it, so I need you to show me the

11   evidence that supports those assertions.

12        MR. BASSETT:  Understood, Your Honor.

13        So the evidence -- and we have -- we have copies

14   of these documents that we can provide to the Court.

15   There's not a lot.  The first two documents, and these are

16   cited in our motion, are the proofs of claim that were filed

17   by creditor, Ms. Qiu Yu on January 6th.

18        THE COURT:  Would you please spell that name for

19   the record?

20        MR. BASSETT:  Sure.  It's Q-I-U, and then the last

21   name is Y-U.  Q-I-U is the first name, and the last name is

22   Y-U.  And throughout the day today, you'll -- there will be

23   evidence indicating that that individual also goes by Gong

24   Zu, and that is G-O-N-G, last name Z-U.

25        These two proofs of claim are available on the

1    claims register at Claims 16-1 and 17-1.

2              THE COURT:  Are both of the proofs of claim in the

3    name of Qiu Yu?

4              MR. BASSETT:  They are.

5              THE COURT:  Okay.  Thank you.  That's --

6              MR. BASSETT:  They are.  And we would -- and we

7    would offer them as just one exhibit, Trustee's Exhibit 1.

8    Again, I can provide copies of those to the Court if the

9    Court needs them.

10             THE COURT:  Well, I think I do in connection with

11   this hearing, right?  This is -- you're going to put on

12   evidence to support the --

13             MR. BASSETT:  Understood.

14             THE COURT:  -- assertions, so, yes.

15             MR. WACHEN:  Your Honor, I have not seen that

16   exhibit either.  It was not -- as far as I know, it was not

17   filed in the adversary proceeding.

18             THE COURT:  It wouldn't be because it's a proof of

19   claim, so it would just be filed on the claims register in

20   the main case.

21             MR. BASSETT:  It's a --

22             MR. WACHEN:  No, I understand that, but --

23             MR. BASSETT:  Sorry, Mr. Wachen.  I was just going

24   to say, because it may be helpful, these two claims are

25   available publically on the ECF.  We're only introducing

1    them to show that these claims were filed by this

2    individual.  That's it.  They're publically available.  You

3    can obviously -- they were cited in our motion and you know,

4    it's -- they're readily verifiable.

5              THE COURT:  All right.  So you -- you were

6    proposing to admit into evidence as full exhibits, Trustee

7    Exhibit 1.  Did you say 1?  I'm going to make it 1 if you

8    didn't say 1.

9              MR. BASSETT:  Yes, I did, Your Honor.

10             THE COURT:  Okay.  Sorry.  Thank you.  Two proofs

11   of claim which are identified on the claims register in this

12   -- in the main case of 22-50073 as Claims 16-1 and 17-1?

13             MR. BASSETT:  That's correct, Your Honor.

14             THE COURT:  Okay.  Any opposition?  I'm looking --

15   this is -- this motion is in both the main case and in the

16   adversary.  It's the same motion, isn't it?

17             MR. BASSETT:  That is correct, Your Honor.

18             THE COURT:  All right.  So --

19             MR. WACHEN:  Yes, Your Honor.

20             THE COURT:  -- any opposition in the main case?

21             MR. BASSETT:  No, Your Honor.

22             THE COURT:  Okay.  Any opposition in the adversary

23   proceeding?

24             MR. WACHEN:  No, Your Honor.

25             THE COURT:  Okay.  Thank you.  All right.  So I'd

1    ask you, Mr. Bassett, if you would, to approach the

2    courtroom deputy and she will mark those exhibits -- those

3    proofs of claim as one document as Trustee's Exhibit 1.

4                MR. BASSETT:  Thank you, Your Honor.

5        (Trustee's Exhibit No. 1 marked and admitted)

6                THE COURT:  And what will happen after the

7    hearing, Mr. Bassett, is I'll have you -- your office file

8    these documents on the docket as exhibits introduced at the

9    hearing in PDFs with the labels that the courtroom deputy

10   will be affixing to any paper documents.  Okay?

11               MR. BASSETT:  Understood.  We will do so.  Thank

12   you, Your Honor.

13               THE COURT:  Thank you.

14               MR. BASSETT:  The next exhibit that the trustee

15   would offer, I would offer it in two pieces, a 2A and a 2B.

16   This is a video that the debtor posted to his GETTR account

17   on January 10th of 2023.  It's cited in our motion.  It was

18   actually also filed -- obviously the video itself was not

19   filed, but with a reply brief last night, we filed a

20   declaration of Douglas Baron.  It appears at ECF 160 in the

21   adversary proceeding.

22               And Exhibit F, Your Honor, to that declaration is

23   a screenshot -- first of all, the declaration on Page 2 into

24   Page 3 -- again, this is ECF 160 -- displays the URL where

25   this video is located online at the GETTR website.

1       And then Exhibit F is a screenshot that contains

2    an image from the GETTR page that contains the picture of

3    the video, and then behind that, we have a certified,

4    notarized translation of certain excerpts of the video.

5       And what I would propose to do, and we

6    communicated with the Court prior to today's hearing, is not

7    -- not play the entire video because the video itself is in

8    Mandarin, but I could have my colleague just publish for the

9    Court, for the record, a snippet of, you know, the beginning

10   of the video just to show that that video is an exhibit that

11   we intend to introduce.

12      We can coordinate with Your Honor to have that

13   submitted to the Court in the appropriate way so the actual

14   physical video file is on record.

15      I have discussed with Mr. Wachen, the

16   authentication of this document and others that are on our

17   list, and I believe we have an understanding that there is

18   an agreement that the video we are offering is authentic, is

19   in fact available on the debtor's GETTR page.  But aside

20   from that, I'll have to defer to Mr. Wachen as to whether he

21   has any other issues with the exhibit.

22      But just in terms of relevance, Your Honor, this

23   is a January 10th -- a January 10th video, again posted by

24   the debtor, where, as we say in the translation attached as

25   Exhibit F, the debtor makes reference to Ms. Qiu Yu, who

1    filed the proof of claim on January 6th, calling the filing

2    of the claim gangster behavior, talking about how this

3    person is lying, it's fake, and that everything that this

4    person says will be published, et cetera.  This is all in

5    the -- the certified translation that we have.

6           So with that, I can -- I can have my colleague

7    publish the video, and then we would offer that video as the

8    first component of Trustee's Exhibit 2, and then Exhibit F

9    to the Baron declaration would be the rest, which includes

10   the certified translation.

11          THE COURT:  All right.  So hold on.  I think I've

12   followed you, but I want to make sure I have.

13          So Trustee's Exhibit 2, which you're proposing to

14   enter into evidence as a full exhibit is going to be a --

15   the actual video you're going to show me?

16          MR. BASSETT:  That's correct, Your Honor.

17          THE COURT:  Okay.  So then --

18          MR. BASSETT:  Along with the certified

19   translation.

20          THE COURT:  All right.  So then the actual video

21   from Mr. Kwok's -- what page?  From @MilesGuo?

22          MR. BASSETT:  Yes, Your Honor.  Let me defer to my

23   colleague.

24   (Pause)

25          MR. BASSETT:  Yes, it is, Your Honor.  If you look

1    at Exhibit F in the Baron declaration --

2              THE COURT:  Well, I haven't looked at Exhibit F

3    last --

4              MR. BASSETT:  And we'll send --

5              THE COURT:  -- because it was filed last night.

6              MR. BASSETT:  Understood, Your Honor.  It --

7              THE COURT:  Well, it was filed at 10:15 last

8    night, right?

9              MR. BASSETT:  Understood, Your Honor.

10             THE COURT:  So I haven't looked at it.

11             MR. BASSETT:  Understood.  When you do have a

12   chance to look, you will see that it is in fact the

13   @MilesGuo handle.

14             THE COURT:  Okay.  I'm going to -- I am going to

15   look at it right now, because I'm not going to admit into

16   evidence anything I haven't looked at, okay?  And you're

17   going to have to show me that video too.

18             MR. BASSETT:  Yes, Your Honor.

19             THE COURT:  Unless Mr. Wachen is completely

20   agreeing that you don't have to show the video and it's --

21   you know, that's up to the two of you.  I have no idea what

22   discussion you've had about it, but I'm now pulling up what

23   I -- is Exhibit F, attached to a Document 160.

24             MR. BASSETT:  That's correct.

25             THE COURT:  In the adversary proceeding, 22-5032,

1    and it's Page 35 of 41.  Well, 34 of 41 is a document

2    entitled Exhibit F.

3             Then 35 of 41 is -- appears to be a post, and it

4    does say GETTR in the middle of it, and it does say Miles

5    Guo with a V, a white V in a red circle, which we talked

6    about at the preliminary injunction hearing, @MilesGuo with

7    a, what I would call a dot, January 10.  I don't know if

8    that is what it is.

9             And I see a picture of a person with a -- with a

10   symbol of the -- a recording to hit play, and it says that

11   the video is 7 minutes and 49 seconds.  It was posted at --

12   on 7:33 a.m. January 10th, 2022.

13            And we know that posting time, whatever, could be

14   different depending upon time zones.  That's what was

15   testified to -- well, during the preliminary injunction

16   hearing.

17            And there's a image of a person that aside from

18   the black circle with the -- what I would call a sideways

19   arrow, or the play button, looks to be Mr. Guo, or Mr. Kwok,

20   I should say, the person that's been in front of me.  So

21   that's what I see.

22            And then the next page, 36 of 41, is a

23   certification of Divergent Language Solutions that certifies

24   that the attached translation is to the best of my knowledge

25   and belief, a true and accurate translation from Chinese

1    into English of the attached transcript excerpt from Miles

2    Guo on GETTR, dated January 10, 2023 with Source Link, and

3    then there's a link, signed by Edward J. Jacob, Divergent

4    Language Solutions.  Subscribed and sworn by a notary

5    public, Matthew Zellick (ph).

6              And then the 37 of 41 is the last page of Exhibit

7    F, and that appears to be Mr. Jacob's translation of the

8    audio portion of this video into English.  That's what I

9    see.

10             Mr. Wachen, do you have an objection to the

11   admission of this -- of the video and Exhibit F that's

12   attached to ECF 160 as Trustee's Exhibit 2?

13             MR. WACHEN:  Your Honor, I do have an objection to

14   the translation, because all they've offered is snippets out

15   of context.  I thought they were going to offer a

16   translation of the whole video, but they haven't.

17             And so I think it could be misleading to just see

18   these one, you know, little phrases or sentences completely

19   out of context.  So I do have an objection to that.

20             I agreed with Mr. Bassett before the hearing that

21   the video that they are offering appears to be authentic in

22   the sense that it comes from the internet, although the link

23   that they cite is actually not from GETTR, it's from a

24   Discord page, but he showed me the video.  He showed me

25   where it was on the internet, so I agree that the video that

1    he's going to offer is authentic.

2           So I'll agree with that, but I do object to the

3    translation as it's currently being proposed.

4           THE COURT:  Because the translation is not

5    complete, or because the translation is not an accurate

6    translation?

7           MR. WACHEN:  Because it's not complete, Your

8    Honor.

9           THE COURT:  Okay.  What's your response, Attorney

10   Bassett?

11          MR. BASSETT:  So, Your Honor, it's -- as Your

12   Honor observed and as Mr. Wachen can also confirm, this is

13   indeed a 7-minute and 50-second -- nearly 8-minute video.

14          It is extraordinarily expensive to have these

15   certified translations done.  We did what we had also done

16   for many of the videos that came into evidence, I believe,

17   at the preliminary injunction hearing, which is, you know,

18   focus our efforts on having certified translations done of

19   the relevant excerpts that we were asking the Court to rely

20   upon.

21          To the extent that Mr. Wachen wants to say that

22   the Court should discount the weight that it gives to this

23   document based on the fact that, you know, it doesn't have

24   the full context, it can't see everything else, that's up to

25   the Court.

1          To the extent Mr. Wachen wanted to introduce a

2     fulsome translation to show additional context, you know,

3     he's free to do that, but we don't think that the Court

4     should, you know, only accept this video as translated into

5     English into evidence in a full, lengthy translated form.

6          THE COURT:  Mr. Wachen?

7          MR. WACHEN:  Yeah.  Well, they're offering the

8     whole video, and the first line of the video -- or the first

9     line of the translation says, "It is completely gangster

10    behavior," but we don't even know what it is referring to.

11    This is three minutes into the video, and I'm assuming

12    they're going to suggest what they think it is, but it's

13    completely out of context.

14         MR. BASSETT:  Your Honor --

15         MR. WACHEN:  And none of us speak Chinese.

16         MR. BASSETT:  Your Honor, if I may?  This piece of

17    evidence is also not being entered in a vacuum.

18         As the Court will see two other documents, two

19    other exhibits that we're asking to be admitted into

20    evidence are posts from the exact same day, in fact, within

21    hours of this video by persons on GETTR with the New Federal

22    State of China banner at the top of their GETTR page that

23    relates exactly to this proof of claim and relates to, you

24    know, our position that Mr. Guo -- or Mr. Kwok and his

25    associates are threatening creditors, including this in

1    particular creditor.

2              So we think that it's very clear what this post is

3    referring to; what these excerpts from the post by Mr. Kwok

4    on January 10th are referring to.  But again, you know, it's

5    up to the Court.  You know, this is not a -- obviously,

6    there's no jury.

7              It's up to the Court to decide what weight to give

8    the certified translation, and if Mr. Wachen's argument is

9    that, well, you know, it's not clear to him what it refers

10   to, then I think the -- you know, the Court can take that

11   into account.  But I don't think it's something that should

12   -- you know, should prevent this document from being

13   admitted into evidence.

14             MR. WACHEN:  Your Honor, he's asking you to make

15   some conclusions or findings based on the truth of what is

16   said in this video, and he's offering -- it's a 7-minute

17   video.  He's offering you about ten lines of text from a 7-

18   minute video in which he wants you to make some adverse

19   conclusions about Mr. Kwok.

20             And it's their burden, not ours.  We're not the

21   ones who brought this motion.  They're the ones -- they say

22   it's expensive.  You know, this is now the first time I'm

23   hearing them express concern about expense.  I mean, they

24   bring lots of lawyers to the courtroom.  They file motion

25   after motion.  It's expensive for Mr. Kwok to have to defend

1    these motions.

2              And if they're going to ask you to make

3    conclusions from this video, they're the ones who picked the

4    seven minute video, not me, then they should have to provide

5    a complete transcript of the video for you to be able to

6    understand the context.  Or they don't have to use the

7    video.  They say they have other posts, they can rely on

8    those posts.  We don't even need to talk about this video if

9    they don't want to.

10             MR. BASSETT:  Your Honor, a couple further points.

11             THE COURT:  Yes.

12             MR. BASSETT:  If I may?

13             First of all, we're not offering this for the

14   truth of the matter assented, to the extent that that's what

15   Mr. Wachen was suggesting, although it wouldn't be hearsay

16   because it's a statement of Mr. Kwok anyway.

17             But we're offering to show what Mr. Kwok.  You

18   know, the words on the page, not the truth of whether or

19   not, for example, filing a claim is gangster behavior.

20   We're obviously not trying to prove that.  We're trying to

21   prove that this statement was made.

22             In regards to, you know, the other posts that we

23   are going to introduce, those are by other individuals who

24   have the New Federal State of China header at the top of

25   their page, and we think it's very clear based on the

1    Court's findings in the preliminary injunction order and the

2    accompanying memorandum decision that these individuals who

3    are associated with the New Federal State of China are in

4    active concert, in participation with the debtor, and that

5    they are taking direction from him.

6              And this -- the reason this video is so critical

7    is because again of the sequence.  You have a proof of claim

8    that's filed on January 6th.  You have this video published

9    by Mr. Kwok on January 10th in the morning.

10             Immediately thereafter, you have two other

11   accounts, which will be the next exhibits that we show, with

12   the New Federal State of China header, attacking this

13   creditor, doxing this creditor, putting passport information

14   online, criticizing the creditor for trying to attack the

15   whistleblower movement, which the Court already found in the

16   preliminary injunction order is controlled by the debtor.

17             So it's a critical exhibit.  We can't just rely on

18   the other two, and it's -- it's again, what we have asked

19   the Court to admit into evidence is -- it's relevant and we

20   think it's admissible.

21             THE COURT:  Let me see the next two exhibits,

22   please.

23             MR. BASSETT:  Sure.

24             THE COURT:  And then I will hold my ruling on this

25   exhibit.

1      MR. BASSETT:  So the next -- the next exhibit,

2  Your Honor, is -- I'm going to combine these together just

3  to, I think, simplify the record.

4      It's going to be -- the Trustee Exhibit 3 would be

5  Exhibits A and B to the Baron Declaration at ECF 160, and in

6  particular this -- so this would be at Page 4 of 41 of that

7  document, Your Honor, as the cover sheet for Exhibit A.

8      And then what you'll see -- what you'll see behind

9  that, Your Honor, is a GETTR post on January 10th.  It is

10  from an account with the name OXV Design, O-X-V, Design.

11      Again, the red checkmark that we talked about

12  earlier, and then the handle also @OXVDesign, followed by

13  January 10th appears below that.  The URL where this is

14  currently available on GETTR.

15      This is something that I've discussed also with

16  Mr. Wachen as to authenticity, appears in the upper left-

17  hand corner of the document, slightly obscured by the ECF

18  time stamp.

19      As Your Honor will see, the post is in Chinese.

20  Behind that, though, we do have a certified translation of

21  the entire post.

22      What you will see is that -- I won't read the

23  entire thing, but there is an image, and it has Gong Zu and

24  Yu Qiu, which as Your Honor will recall, is the name of the

25  person who filed the proof of claim.  And then it says, went

1    to US Bankruptcy Court in Connecticut, (indiscernible) the

2    matter with $5,000, put herself on the list of creditors,

3    helped Luc to vilify the whistleblower movement.

4            Again, Your Honor, just to tie this to the last

5    exhibit, this is January 10th, the same day that -- and if

6    you look at the time stamp at the bottom, it's posted 11:40

7    a.m.  And I believe if you go to Exhibit F, which we just

8    looked at --

9            THE COURT:  7:33 a.m. is my recollection.

10           MR. BASSETT:  7:33 a.m. is the posting time on

11   Exhibit F, and then it's 11:40 on Exhibit A, and the last

12   thing that -- the other component of this exhibit, Your

13   Honor, I apologize, as I said, would be Exhibit B.

14           And if you turn to Exhibit B of the Baron

15   declaration, which is at Page 11 of 41, we're offering this

16   simply to show that this is the header of the OXV Design

17   GETTR page, because that header doesn't appear on the

18   individual post page at Exhibit A.  But what the header page

19   shows is that this particular user has at the top, we are

20   the citizens of the NFSC.  Our mission is to take down the

21   evil CCP.

22           So again, Your Honor, this is a post by someone ON

23   GETTR who very clearly, based on what we just looked at,

24   associates him or herself with the New Federal State of

25   China.  The Court already found in the preliminary

1    injunction order and accompanying memorandum decision, that

2    the debtor founded the NFSC, directs the NFSC, and directs

3    the whistleblower movement.

4        What you have again, sequentially, is the debtor

5    in the morning of January 10th, posting the video that we

6    just talked about, and then a couple hours later, you have

7    this person from the New Federal State of China, posting a

8    picture which I think the Court can, you know, infer from

9    the post is of this claimant, whose name is posted there,

10   criticizing this person for helping to, quote/unquote,

11   villify the whistle blower movement, which again the Court

12   also has already found is directed and controlled by the

13   debtor.

14       So with that, Your Honor, I would offer this

15   exhibit into evidence, and obviously we can -- we can

16   revisit the last exhibit if the Court would like, but maybe

17   that makes more sense after the next exhibit.

18       THE COURT:  Let's do the next exhibit first,

19   please, and then we'll revisit all three.

20       MR. BASSETT:  Sure.  So the next exhibit we'll do

21   in the same way, Your Honor, in that there will be two

22   exhibits to the Baron declaration that I'll offer as -- as

23   one exhibit in the hearing today.

24       This cover sheet for Exhibit C appears at Page 16

25   of 41 of the Baron declaration, and what you will see, Your

1    Honor, this time it's a little more difficult because the --

2    at least on the untranslated version, the user name is in

3    Chinese characters.

4            But beneath that you'll see an at, and you'll see

5    P-I-A-O-C-H-A-N-G-H-A-I, and then a dot, and then January

6    10th.  We've redacted all the personal passport information

7    from what was posted here.  But again, we sent  -- Mr.

8    Wachen has seen the unredacted version.

9            And then if you look behind that, Your Honor, we

10   have a certified translation, and what you'll see is that

11   reveals the name of this user on GETTR as -- I'm probably

12   not going to pronounce this correctly, but Chang Hai Piao,

13   paren, Chang Hai Park, South Korea, Giangdo Farm (ph).

14   Beneath that the post says, "More whistleblowing news about

15   a little bastard Discord called Gong Zu, whose real name is

16   Yu Qiu.  Comrades, please try to investigate.  I heard that

17   her relationship with Di Dong Fang (ph) is very good."

18   There's an emoji.  "Do you know her?"

19           Behind that, Your Honor, at Exhibit D, again we'll

20   do what we did before -- and by the way, I should have

21   mentioned for the record, the time of that post, which was

22   10:53 a.m. on January 10th.

23           If you go to Exhibit D, again, we're introducing

24   this, Your Honor, to show that this particular GETTR user

25   has at the top of his or her GETTR page banner, we are the

1    citizens of the NFSC.  Our mission is to take down the evil

2    CCP.

3              I don't think I need to explain, you know, why

4    we're introducing this and its relevance because it's the

5    same as what I explained for the last exhibit, but those are

6    the next two exhibits that we would offer into evidence,

7    Your Honor.

8              THE COURT:  Okay.  Thank you.

9              Mr. Wachen, do you have any objection to the

10   admission in full of Trustee Exhibit 3 and 4?

11             MR. WACHEN:  That's the last two?  No, Your Honor.

12             THE COURT:  Okay.  Exhibits 3 and 4 are admitted

13   in full.

14         (Trustee's Exhibit Nos 3 and 4 marked and admitted)

15             THE COURT:  You're going to have to get those

16   documents to the Court, Mr. Bassett, as a PDF, because we

17   don't -- you don't have them to give to the courtroom deputy

18   right now, correct?  They're just part of ECF 160?

19             MR. BASSETT:  That's correct, Your Honor.

20             THE COURT:  Okay.

21             MR. BASSETT:  But we obviously -- we --

22             THE COURT:  Okay.

23             MR. BASSETT:  -- certainly will get them to the

24   Court.

25             THE COURT:  All right.  With regard to Trustee's

1    Exhibit 2, are you going -- I'd like you to start the video

2    so I can see it, please.

3            MR. BASSETT:  Sure.  Just with court's indulgence.

4    One moment, Your Honor.

5            THE COURT:  Certainly.

6        (Pause.)

7            THE COURT:  Now, how is Mr. Wachen going to be

8    able to see that?  Is he going to be able to see that?

9            MR. BASSETT:  Well, that does create -- it does

10   create an issue because he's on Zoom, Your Honor.

11   Technologically, I don't think he will be, but I also -- I

12   don't want to speak for him, but I think he has the video

13   and I can represent to him that we're playing the exact same

14   seven minute and 49-second video that he's seen and that

15   appears online.

16           THE COURT:  Okay.

17           MR. WACHEN:  I do -- on my Zoom screen, I do have

18   all these other boxes from the Court.  I don't -- maybe it

19   will show up on --

20           MR. BASSETT:  No, the issue is that we're doing it

21   by, like, hard wire into the monitor, so it's not linked to

22   Zoom.

23           THE COURT:  No, I don't think it will show up for

24   you, Mr. Wachen.  I think it's just going to be projected in

25   the courtroom.

1          MR. WACHEN:  Okay.

2          THE COURT:  But we'll see.

3          MR. BASSETT:  Yeah.

4          MR. WACHEN:  I've seen the video, so if it's the

5    same video you sent me yesterday, then that's fine.

6          THE COURT:  Okay.  Thank you.

7          MR. BASSETT:  And I can represent that it is.

8    This video is muted on there.  No, it's on -- on here, it's

9    muted.  Yeah.

10         (Thereupon, the video recording was played for the

11    record)

12         MR. BASSETT:  Your Honor, I'm pausing it only to

13    ask if the Court would like us -- we obviously could play

14    the entire eight minute video.  I could also play the

15    Chinese excerpts of the English translations that we're

16    seeking to introduce, or we could stop it here.  I'm happy

17    to do whatever the Court would like.

18         THE COURT:  Mr. Wachen, what's your position on

19    what part of the video should be played?

20         MR. WACHEN:  I don't know that any more needs to

21    be played as far -- I mean, none of us will understand it,

22    so I'm -- you know?  I agree that there was a video posted.

23         THE COURT:  But you object to --

24         MR. WACHEN:  My big concern was --

25         THE COURT:  -- you object to the --

1          MR. WACHEN:  -- with the translation.

2          THE COURT:  All right.  You agree that there is a

3     video posted.  You agree that that's your client, Mr. Kwok,

4     in the video.  Is that correct?

5          MR. WACHEN:  Yes, Your Honor.

6          THE COURT:  Okay.  And then your objection -- the

7     remainder -- so that, you -- there's no objection with

8     regard to those two factors.

9          But with regard to the translation that was

10    submitted as Exhibit F to ECF 160, that was filed last

11    night, you object to the admission of that translation

12    because it is only a portion of the entire video, and it's -

13    - is that correct?

14         MR. WACHEN:  And a very small portion.  And it --

15    and the parts of it -- I mean, there -- they translated

16    several lines from the video.

17              I'm assuming the translator has to translate

18    the whole thing in order to find these particular snippets,

19    and it's just taken completely out of context.

20         I mean, there isn't -- how -- I don't know how you

21    can -- from an eight minute video, how you can draw context

22    from, you know, 50 words basically what -- I mean, I haven't

23    counted them up, but I mean, it's just a smattering of

24    words.

25         MR. BASSETT:  Your Honor, at a minimum, I mean --

1  he's saying it's out of context, but in the -- in the

2  context of this dispute, and the context that I just

3  explained of these other exhibits, what is undisputed,

4  unless Mr. Wachen is saying he takes issue with the

5  translation, is that Mr. Kwok in this video is absolutely

6  referring to this individual, this creditor.

7         I mean, there are lines in here, Yu Qiu, you know,

8  Gong Zu, 100 percent is lying and faking it.  100 percent.

9  I mean, the Court's seen the proof of claim, seen the name

10  on the proof of claim.  The Court's seen the other exhibits.

11         So I don't -- he may, you know -- I don't know

12  what other context he thinks is necessary, but these

13  translated excerpts themselves demonstrate the relevance of

14  this video.

15         THE COURT:  I'd like you to go to three minutes

16  and five seconds in the video and play it at least until

17  three minutes and 40 seconds, please.

18     (Thereupon, the video recording was played for the

19  record)

20         THE COURT:  I can't -- yeah, I was going to say,

21  you must be -- I can't really see it.

22         MR. BASSETT:  Yeah.  We're now at 3:54 and I would

23  -- obviously, Your Honor heard what Your Honor heard, but to

24  my ear you could hear Mr. Kwok saying the name Gong Zu,

25  which again is in the translation, which is not disputed.

1    We're happy to show other portions as well.

2          MR. WACHEN:  I'm not -- I'm not -- I'm not -- I'm

3    not disagreeing that he mentioned her name, or that he

4    thinks it's a bogus claim.  But I would say, so what.  And

5    -- but some of these other things, I mean, I just don't know

6    -- if all the point is did he talk about this woman in the

7    video, I'll agree that he did.

8          THE COURT:  Is that sufficient, Mr. Bassett, for

9    you?

10          MR. BASSETT:  It's not sufficient for me, Your

11   Honor, because it's not just that he mentioned her name.

12   It's the, frankly, you know, inflammatory and outrageous

13   statements that he's made.  He's calling her spies.  You

14   know?

15          MR. WACHEN:  Well, he --

16          MR. BASSETT:  There's -- hold on.  Let me --

17          MR. WACHEN:  Well, he --

18          MR. BASSETT:  -- I mean -- but there's language in

19   here, right?  It's Gong Zu 100 percent is lying and faking

20   it, 100 percent.  Now these spies like Gong Zu have come

21   out.  And you know, it's completely gangster behavior.

22          All of this is -- it's relevant because it's not

23   just that he's -- this is not -- this is not Mr. Kwok going

24   online and saying, hey everyone, I respectfully disagree

25   with a proof of claim that was filed against my bankruptcy

1    estate, and I think we're kidding ourselves if that's the

2    way this would be interpreted.  It is a much different tone

3    in this message, and that's why all the excepts that we've

4    had translated should be a part of the record in our view.

5                THE COURT:  Anything further, Mr. Wachen?

6                MR. WACHEN:  Your Honor, I think yes, he's

7    critical of her claim.  He thinks it's a bogus claim.  And I

8    haven't seen the claim, so I can't -- and my colleagues at

9    Zeisler could probably speak to the claim itself, but I

10   think it's one of the ones that we objected to, but I can't

11   -- since I haven't seen it, I'm not certain about that.

12               But yes, he's critical of the claim and, you know,

13   did he say that she's lying and faking it?  I think that's

14   probably what he believes.  But I don't know that there's

15   any -- I mean, I think he's entitled to express his opinion

16   about a claimant.

17               THE COURT:  Okay.  I'm going to admit Trustee's

18   Exhibit 2 in full.  Do you have any other exhibits after

19   Exhibit 4?

20        (Trustee's Exhibit 2 marked and admitted in evidence)

21               MR. BASSETT:  I believe just two more, Your Honor.

22               The first one is --

23               MR. WACHEN:  Your Honor, can I -- Your Honor, I'm

24   sorry to interrupt Mr. Bassett, but could I just -- I just

25   -- before we go too far, I just want to mention something.

1       We received Your Honor's mediation order, and we

2   spoke with the other side about trying to table these

3   issues, essentially, until March 3rd, and that we would --

4   that Mr. Kwok would be willing to do certain things to kind

5   of keep things --

6       THE COURT:  I don't really want to hear any of

7   that, Mr. Wachen.  That's why you're in mediation, okay?

8       MR. WACHEN:  Okay.

9       THE COURT:  And the mediation order clearly says

10  that the hearings that were already scheduled for Tuesday,

11  two days ago, today, and Monday are going forward.

12      So I appreciate that you're talking, but I can't

13  be part of that, okay?  That's why you're in mediation.  So

14  -- and continue to talk.  But right now, this hearing was

15  scheduled and it's going forward, and that's what we're

16  doing.  Okay?  Thank you, though.

17      Go ahead, Mr. Bassett.

18      MR. BASSETT:  Thank you, Your Honor.  The next --

19  and again, like I said, there's only two more I believe.

20      The next exhibit is Exhibit E, E as in Edward, to

21  the Baron declaration.

22      THE COURT:  And that will be Trustee's Exhibit 5

23  is what you're proposing?

24      MR. BASSETT:  That's correct, Your Honor.

25      THE COURT:  Okay.

1          MR. BASSETT:  And this -- I apologize.  This

2    exhibit begins at Page 28 of 41 of the declaration.

3          If you turn to page 29 of 41, you will see that

4    this is another GETTR post.  This one has the user name

5    Miles Guo, and then beneath it with the red checkmark that

6    the Court observed earlier, beneath that, @MilesGuo with a

7    dot, and then January 13th.  What's posted then is in

8    Mandarin.

9          If you look behind this, there is a certified

10   translation.  And then the certified translation says, with

11   the date January 13th, 2023, "Greetings esteemed comrades.

12   Paul Hastings Law Firm is launching a campaign to register

13   creditors.  If there are comrades who are not strong willed,

14   feeling their own investments and past investments have no

15   sense of security and need to be a debtor, and if you think

16   it is a better choice, you must contact Paul Hastings Law

17   Firm to register in the bankruptcy court of Connecticut as

18   soon as possible, and maybe you can become a billionaire."

19         And then there are a couple of comments that it

20   looks like other users posted beneath that, that I won't

21   read into the record, but it was part of the post.

22         And that's the -- that's the extent of -- that's

23   the extent of Trustee's Exhibit 5, Your Honor, and just in

24   terms of the reason we're offering it -- our motion really

25   addressed two issues.

1          The statements that we believe are violating the

2     preliminary injunction order in terms of harassing creditors

3     and dissuading people from filing claims against the estate.

4          And then the other issue is that, as we discussed

5     in our motion, the debtor has made statements online

6     encouraging people to file claims, and I'll get into more of

7     that in the argument as to why that's relevant and needs to

8     be stopped.  But that's why we're offering this exhibit.

9          THE COURT:  Okay.  Thank you.  Mr. Wachen, do you

10    have any objection to the admission of Exhibit 5?

11          MR. WACHEN:  No, Your Honor.

12          THE COURT:  Okay.  Thank you.  Anyone in the main

13    case have an exhibit -- objection to Exhibit 5?

14          MR. CESARONI:  No, Your Honor.  But again, for

15    the record, I believe this is part of the injunction portion

16    of the proceeding, so we're deferring to Mr. Wachen.

17          THE COURT:  Okay.  Thank you.  Trustee's Exhibit 5

18    is admitted in full.

19          (Trustee's Exhibit No. 5 admitted in evidence)

20          MR. BASSETT:  Thank you, Your Honor.

21          The last -- the last exhibit is Trustee's Exhibit

22    6, which will be Exhibit G to the Baron Declaration at ECF

23    160.  This starts on Page 38 of 41.

24          This time, a translation is not necessary because

25    the document itself is in English.  And, Your Honor, what

1   this exhibit shows is -- this is a printout from an article,

2   and I don't -- oh, I was going to say, I don't believe the

3   URL is on here, but the URL is in the Baron declaration.

4            So if you were to go to Page G -- or sorry, Page 3

5   of the Baron declaration, Paragraph 8, it says, "Attached as

6   Exhibit G is an English language version of an article

7   posted on January 25th, 2023, to the Gnews.org website,

8   which is available at the following URL."  And then the URL

9   where this appears, Your Honor, is

10  Gnews.org/articles/828166.

11           And this article posted by G News, which the Court

12  found in, I believe, Paragraph 9 of its memorandum decision

13  on the preliminary injunction, is an entity acting in

14  concert with Mr. Kwok; an entity that he controls.  And

15  again, this is -- there is further discussion here of

16  encouraging people to file claims.

17           If the Court were to look at the second page of

18  the document, what this article talks about in this -- in

19  the first full paragraph on the second page, it says, "Mr.

20  Guo suggested that all comrades could register because they

21  had invested in G TV, but G TV was pseudo-classed as a

22  fraudulent case and the SEC investigated it, so the money

23  invested by the comrades had been withheld from the SEC and

24  the Comrades were looking for money from the SEC."

25           "But in the bankruptcy case, the comrades could

1    register as creditors of Mr. Guo, accept the registration of

2    other comrades.  If all the comrades go to register, they

3    will make up the majority of the creditors, then the money

4    Mr. Guo earned will be distributed to the comrades, which

5    Mr. Guo is very willing to do."

6              "In addition, War Buddies as the majority can

7    initiate the ownership of Lady May ship and the 18th floor,

8    as also the majority will be given to the Hands of War

9    Buddies such as a way of handling all happy."  And then it

10   goes on -- it goes on from there.

11             So with that, Your Honor, I would offer this

12   document.  Again, Exhibit G to the Baron declaration, as

13   Trustee's Exhibit 6.

14             THE COURT:  Okay.  Thank you.  Mr. Wachen, do you

15   have any objection to the admission of Trustee's Exhibit 6?

16             MR. WACHEN:  I do, Your Honor.

17             This is like multiple levels of hearsay, and it

18   purports to quote my client, but we don't know who wrote

19   this, and there's no way to really verify it other -- I

20   mean, I'm accepting the fact that it came off the internet,

21   but whether my client actually said this or not, is sort of

22   the problem I'm having with it.  And so, I do object to the

23   admission of this one.

24             THE COURT:  Okay.

25             MR. BASSETT:  Your Honor, this document does not,

1    I don't believe, purport to quote Mr. Guo.  It is rather an

2    article that is expressing viewpoints, as I just read for

3    the Court, about the potential filing of claims in the case

4    by comrades.

5            And the article is -- as the Court can see from

6    the URL and from the label on the first page, an article

7    issued on the G News website.

8            Again, that is an organization that the Court has

9    already found is an organization controlled by Mr. Guo,

10    along with the other G-series entities we all know well, G

11    TV, G Fashion, and the like.

12            So I guess two points on that for me, a hearsay

13    perspective.  First of all, we're not offering this for the

14    truth of the matter asserted.  We're offering this to

15    demonstrate that G News, an entity controlled by Mr. Guo, is

16    disseminating information online about encouraging creditors

17    to file claims in the case in the means that I read into the

18    record.

19            Even if we were offering it for the truth of the

20    matter asserted, which we're not, this is an entity as I

21    said, that the Court has found is controlled by Mr. Guo.

22            So I think from that perspective, it could be seen

23    as an admission of a party opponent.  But again, I don't

24    think the Court needs to go there because we're not offering

25    it for the truth of any statements made, or facts contained

1    in this article.

2            THE COURT:  So you're offering it for the purpose

3    of establishing that this article was posted on January

4    25th, 2023 on the G News Org website?

5            MR. BASSETT:  Yes, and that it -- and that it has

6    the statements that it contains about encouraging comrades

7    to go register.

8            Again, that's not a -- we're not offering  --

9    we're not trying to establish any facts based on what's said

10   here.  We're offering this to show that this message was

11   communicated online by G News.  I mean, that's a -- that's

12   established by the document itself.

13           THE COURT:  Mr. Wachen?

14           MR. WACHEN:  My understanding was that -- or my

15   belief was they were offering this to establish that Mr.

16   Guo, or Mr. Kwok, was encouraging people to file claims.

17           And so they are offering it for what it says, not

18   the fact  -- so -- and if it's not quoting him, then we

19   don't know who wrote this.

20           We don't -- you know, it's purporting to -- it's

21   purporting to communicate certain things relating -- that

22   Mr. Guo was advocating, and so I think it's prejudicial and

23   unreliable in the sense that it -- there's no way to really

24   check it or cross-examine the person who wrote it to find

25   out, is this just someone's opinion of the circumstances?

1    Is this actually Mr. Guo who's saying this,

2    because this is not consistent with the video, I don't

3    think, or some of the other things that -- the GETTR posts

4    that they showed from Mr. Guo.

5           MR. BASSETT:  Your Honor, two --

6           MR. WACHEN:  And so that's the concern --

7           MR. BASSETT:  Sorry.

8           THE COURT:  Go ahead, Mr. Wachen.

9           MR. WACHEN:  No, and so that's the concern I have,

10   that this is being offered for what it's saying.  I think it

11   is being offered for the truth.

12          MR. BASSETT:  Your Honor, two brief responses to

13   that.

14          First, the exhibit we looked at before, Trustee's

15   Exhibit 5, demonstrates that Mr. Guo was advocating for

16   people to file claims.  We're not offering this document,

17   Trustee's Exhibit 6 for that purpose because we have the

18   other exhibit.

19          What we're introducing this document for is to

20   show that G News was doing it.  I think that's -- that's

21   self-evident from the document itself, and we already have

22   established in this case, through findings of fact, that Mr.

23   Guo controls G News.

24          MR. WACHEN:  Well, I think this article is

25   purporting to communicate what Mr. Guo has been saying, and

1    I don't think this -- I don't think everything that G News

2    puts out can be attributed to Mr. Kwok, as the words of him,

3    that he's -- that he's authorizing all these communications.

4    It's just something that was released.

5        Do I agree that he was advocating for people who

6    have claims to file claims?  Yes.  But that's -- this

7    article says something a little bit different, and I don't

8    know if it's just someone's interpretation or what, but it's

9    unreliable in the sense that the -- for what they're

10    offering it.

11        If they're -- if all they're trying to show is

12    that he's encouraging people to file claims, they have the

13    GETTR posts.  I'm not sure why they would need this.

14        THE COURT:  Mr. Baron (sic), anything further?

15        MR. BASSETT:  No, Your Honor.

16        THE COURT:  Mr. Wachen, anything further?

17        MR. WACHEN:  No, Your Honor.

18        THE COURT:  All right.  I'm going to admit Exhibit

19    6 as a full exhibit over objection, and I will give it

20    whatever weight I think is appropriate.

21    (Trustee's Exhibit No. 6 marked and admitted in

22    evidence.)

23        MR. BASSETT:  Thank you, Your Honor.  I believe

24    that closes the trustee's evidentiary presentation on the

25    motion.

43

1    THE COURT:  And then we're going to talk about the

2    legal side of it, and then you want me to decide it all as

3    one, or how will we --

4    MR. BASSETT:  Well, so I was -- I was getting --

5    what I had proposed to do, Your Honor, is that I would --

6    again, since we sort of bifurcated this, right, the portions

7    that Mr. Wachen and I are handling are the portions that

8    have the evidence, that the evidence that was just

9    introduced is relevant to.

10    So what I would propose is that I proceed with the

11    -- with the trustee's argument on that issue.  Mr. Wachen

12    can respond and if -- you know, obviously reserve some time

13    for rebuttal, and then we could deal with the separate, you

14    know, more legal standing issue as I would call it, after

15    that, which has different counsel handing it.  But I'm

16    obviously happy to proceed however the Court thinks is best.

17    THE COURT:  Well, if the debtor doesn't have

18    standing, then -- well, I guess just proceed the way you've

19    proceeded, but I think standing is a --

20    MR. BASSETT:  Well, this --

21    THE COURT:  -- gateway issue, isn't it?

22    MR. BASSETT:  No, it is.  It is, Your Honor, and I

23    guess to be clear, I don't think the issue is whether the --

24    whether the debtor has standing to respond to our request to

25    enforce the preliminary --

1          THE COURT:  I understand.

2          MR. BASSETT:  -- injunction.

3          THE COURT:  But your -- the issue of standing --

4          MR. BASSETT:  It's standing to file proofs of --

5          THE COURT:  -- is whether or not they have --

6          MR. BASSETT:  -- claim.

7          THE COURT:  -- a right to object to the proofs of

8     claim.

9          MR. BASSETT:  Exactly.  I'm sorry.  Exactly.  I'm

10    sorry, Your Honor.

11         THE COURT:  I understand.

12         MR. BASSETT:  Yeah.

13         THE COURT:  So what your motion is saying is that

14    the Court -- well, what are you asking the Court to do? Let

15    me ask you that question.  What are you asking the Court to

16    do?

17         MR. BASSETT:  So my colleagues will certainly jump

18    in if I get this wrong, but in our motion, we are asking the

19    Court to enter an order finding that the debtor has no

20    ability to object to proofs of claim filed in this case.

21    That objections he has filed be quashed.  That he be

22    enjoined from further filing injunctions, unless -- or

23    filing objections to claims unless he first obtains

24    permission from the Court.  That's part 1.

25         The second part is, we're asking the Court to

1    enter an order enforcing, if necessary, finding the debtor

2    in contempt for failing to comply with the preliminary

3    injunction order and the TRO that preceded it, by making the

4    statements that the evidence we've presented has shown that

5    he's made, and the consequences that those statements have

6    had in terms of the statements that the followers of the

7    NFSC have made.

8            So those are the -- that's -- I think that's the

9    summary of what we're seeking in our motion, Your Honor.

10           THE COURT:  All right.  Well, Mr. Wachen and Mr.

11   Barrett (sic), what else are you going to tell me that you

12   haven't already told me with regard to the issue of the

13   evidence and with regard to what you've bifurcated as to

14   apparently the alleged violations of the preliminary

15   injunction?

16           MR. BASSETT:  Is that to me, Your Honor, or to Mr.

17   Wachen?

18           THE COURT:  It's to both of you.

19           MR. BASSETT:  Oh, so --

20           THE COURT:  What else are you going to tell me?  I

21   mean --

22           MR. BASSETT:  Well, what I -- what I was going to

23   tell you, Your Honor, was simply that we think the

24   preliminary injunction order that the court entered on

25   January 11th is very clear, and what it prohibits.  And to

1    be fair, in sequencing some of these posts that we showed

2    were on January 10th.  At that point, the TRO was in effect.

3         Both the TRO and a preliminary injunction very

4    clearly -- and this is Paragraph 2 of the preliminary

5    injunction order, prevents the debtor from taking any action

6    that interferes with the integrity of his Chapter 11 case.

7         And the Court entered that order on the heels of

8    an extensive evidentiary presentation, along with a very

9    lengthy, detailed, thoroughly reasoned memorandum decision

10   that took into account that evidence, including evidence and

11   findings, that part of what led to the inunction was the

12   fact that statements that the debtor had been making were in

13   fact interfering with creditors and disincentivizing them,

14   and dissuading them from participating in the claims

15   process.

16        So on the heels of that, on January 10th -- and

17   then we have two things that happen.  January 10th, you have

18   the debtor post this video where he immediately -- I mean,

19   it took a matter of days.  The claim was filed -- it's dated

20   January 6th.

21        I'm not actually sure when it became publically

22   available on ECF.  Either way, almost four days later the

23   debtor is on GETTR calling out the name of a person who

24   filed that claim, calling the filing of the claim gangster

25   behavior, saying that the person is lying, saying that the

1    consequence of participating in the case is going to be

2    having your information publically disclosed online.

3           And then what happens after that, which is what

4    has happened every time this same type of thing has been

5    done by the debtor in the past, as we demonstrated during

6    the PI hearing, is that his followers are immediately called

7    into action.

8           His initial post on a topic is a call to arms.

9    Within hours, we have two people posting from GETTR accounts

10   bearing the NFSC banner at the top, who start attacking that

11   same creditor.  We have somebody who posts a passport

12   online.

13           We have somebody else who is calling out that

14   person for trying to vilify the whistle blower movement.

15   All of that is designed to keep these engines moving, to get

16   other followers, to get everyone else to line up and to dox

17   and to threaten people who dare to stand up to this debtor,

18   and dare to do something like file a claim in this case.

19           So we think it's abundantly clear that the

20   debtor's post is -- it's interfering with this Chapter 11

21   process.  There's no question about it.  He's calling out a

22   creditor who filed a claim, immediately after that claim

23   filed.  These other parties who are posting with NFSC

24   banners, the Court found that the NFSC is in active concert

25   and participation with the debtor.

1      So we don't think there's any question that a

2    violation has occurred, but yet that post hasn't been taken

3    down.

4           Paragraph 3, I believe, of the Court's preliminary

5    injunction order says that the debtor has to take down all

6    social media posts that violate Paragraphs 1 and 2 above.

7           Paragraph 2 above is the paragraph that talks

8    about interfering with the Chapter 11 process.  These posts

9    are still out there.  You can go to the website right now,

10   they're still there.  There's absolute no question that he's

11   violating the preliminary injunction order.

12          The other thing the debtor did -- this is on the

13   January 23rd post, and then the January 25th G News article

14   -- is he's going out there and additionally interfering with

15   the integrity of the Chapter 11 process by encouraging his

16   comrades across the world to come and flood the docket with

17   proofs of claim.

18          And as the article indicates, I mean, what's the

19   debtor's purpose?  Probably to make the trustee's life more

20   difficult, to interfere with progress being made in the

21   trustee's investigation, and the other aspects of this case

22   that are critically important.

23          Then the article also mentions, you know, you'll

24   be able to, you know, have a say in the case.  You know,

25   perhaps the objective of the debtor is to try to drum up

1    support for a plan.  I don't know.

2              But what I do know is that the debtor is posting

3    online, encouraging people to come file claims with this

4    court in a way that's going to interfere with the process.

5    So that's another way that we think -- there really is no

6    dispute.

7              It's violating the clear language of and -- and

8    definitely the spirit of Paragraph 2 of the preliminary

9    injunction, which prohibits him from interfering with the

10   integrity of this case.

11             Mr. Wachen's arguments and his objection are that

12   there's no evidence of noncompliance.  I think the evidence

13   speaks for itself, and there absolutely is evidence of

14   noncompliance with the preliminary injunction order.

15             He also says that no further order is necessary.

16   The fact that the debtor is not complying, the fact that

17   these posts continue to sit online is evidence in and of

18   itself that a further order is in fact necessary.

19             At a minimum, the debtor needs to know that what

20   he has done is not complying with the preliminary injunction

21   order to the extent there was any doubt in his mind about

22   that.  And if he doesn't do that, he needs to be held in

23   contempt of court.

24             The objection also says that -- tries to make the

25   case that what the debtor is doing is harmless because if

1    anything, he's simply raising concerns about improper

2    claims.  You know, I don't even know how to react to that.

3    If he had concerns about improper claims, he could try to

4    raise them in the procedurally and legally correct way.

5           But going online and calling people gangsters,

6    doxing them by having followers put out information on

7    passports, is not just simply raising concerns about valid

8    claims.  It's intimidation, which the Court has already

9    found the debtor has engaged in.

10          That's -- those are the primary points, Your

11   Honor.  We think to summarize, the preliminary injunction

12   order and the TRO that preceded it, are very clear what they

13   prohibit, and they're made even more clear against the

14   backdrop of the memorandum decision that the Court entered

15   and it's findings of fact.

16          And then we also think the evidence that we've

17   introduced is clear, that what the debtor is doing is

18   violating that order, and it's having the exact same harmful

19   effects that we've always worried about because it's

20   activating his followers across the world to do even more

21   damage.

22          So that's why we think we're entitled to that

23   relief that we're seeking, Your Honor.

24          THE COURT:  Okay.  Thank you.  Mr. Wachen, what's

25   your response to Mr. Bassett's argument?

1          MR. WACHEN:  Your Honor, we take issue strongly

2     with what he is arguing.  We don't think Mr. Kwok is

3     violating the order in any way.  The order talks about

4     interfering in any way with the integrity of the case, and

5     it specific -- the only thing it specifically mentions is

6     safety involving certain -- with the people, the trustee,

7     PAX, affiliated officers and so on and so forth.

8          There's no allegation that Mr. Kwok is doing

9     anything with respect to the safety of those individuals.

10     Mr. Bassett didn't even mention that.

11          And as far as the integrity of the proceedings go,

12     if anything, I would say Mr. Kwok is concerned about the

13     integrity of the proceedings, because he's concerned about

14     this individual claim, which he believes is bogus, and he is

15     calling it out.

16          They're saying, well, there's a way to do it in

17     the Chapter 11 case, but then they're also saying that he

18     shouldn't be allowed to object in the Chapter 11 case.  So

19     where can -- where can he express his concerns?

20          I think there's nothing in this order from Your

21     Honor that prohibits him from expressing concerns about

22     bogus claims.

23          There's also nothing in this order that prohibits

24     him from encouraging people to file meritorious claims if

25     they have one.

1          And that's all his GETTR post says, that if you

2     have a claim, you can file it.  If anything, you would think

3     -- I mean, I thought that's what the trustee was trying to

4     do, to get people who have claims to file them.  So I don't

5     see how this is inconsistent.

6          Now his language about maybe you can become a

7     billionaire, I think when you read the context of it, I

8     think it's clear sarcasm.  It's not -- it's not -- that's

9     really all it is.  That's the way I understood it anyway,

10    and you know, part of the problem here is, most of these

11    things are written in Chinese.  Sometimes things are lost in

12    translation.

13         The use of the word gangster, for example, I don't

14    -- I mean, it's offered totally out of context, but you

15    know, that may be some -- have some meaning in Chinese that

16    we don't fully appreciate.

17         But he's criticizing someone who he thinks doesn't

18    have a meritorious claim.  And I know some of the details of

19    it.  The bankruptcy counsel for the debtor I think probably

20    could speak in more detail to what the problems are with

21    that particular claim.

22         But that's his concern and I think he has a right.

23    If anything, I don't see how expressing concern about a

24    particular claim and whether it's legitimate or not,

25    interferes in any way with the integrity.  So that's --

1    that's what I would say about that.

2           They are asking Your Honor to -- at the beginning

3    of their order, they're asking you to order Mr. Kwok to

4    comply with your preliminary injunction order, which seems

5    superfluous.  You've already issued an order.

6           As far as we're concerned, he is complying with

7    it.  I don't think there's a need for another order to say

8    comply with that other order.  The order speaks for itself

9    and it's still in effect.

10          We've appealed it.  We don't think it's valid.  We

11   don't think it's clear, quite honestly, with all due

12   respect, and that's why we've appealed it for that and many

13   other reasons.  But we don't think there's been any

14   violation.

15          This speculation as to what's behind all this,

16   this is all -- you know, it's all contrived and it's all --

17   well, what he's really suggesting is this, and he's -- this

18   is a way fro him to mobilize people on social media.

19          But the reality of social media is, somebody posts

20   something on social media and people react to it.  Whether

21   it's Mr. Kwok or anybody else who gets -- has a large

22   following on social media.  And he can't control what these

23   people say or do.

24          And these people -- these posts, there's no

25   evidence that he has anything to do with these other posts.

1    The video, the one that he posted, okay.  That's him.  But

2    these other ones, there's no connection with him and there's

3    no -- one of the people was I think in South Korea and he

4    posted it, it appeared.  But he had nothing to do with those

5    and there's nothing he can do to control them.

6              But he does have a right to speak out on things

7    that he hasn't been enjoined to speak out on, and speaking

8    out on this individual is not one of those things that he

9    was not allowed to talk about.

10             Paragraph 3 talks about taking down different

11   social media posts in certain categories, containing the

12   home addresses of the trustee, PAX, related officers,

13   employees and so on and so forth.  There's no allegation

14   that that's contained in any of his posts, or encouraging or

15   inciting or suggesting activities enjoined.  There's no

16   indication that he's done that either.  So there's really no

17   reason for him to have to take anything down.

18             He has a right to speak out, and I mean, he didn't

19   -- by filing for bankruptcy, he didn't give up his First

20   Amendment rights, and I think that's what the trustee is

21   trying to do, to silence him, but he has a right to call

22   into question claims that have been asserted that frankly

23   don't have any merit.  And to the extent people who have

24   claims want to file them, they can file them, and I think

25   that's what the trustee is trying to do.

1    We don't believe there's any violation.  There's

2    been no doxing, either, by Mr. Kwok.  That was another thing

3    he mentioned.  The information about -- I mean, he mentioned

4    her name.  Her name is a matter of public record.  She filed

5    a claim on the docket.  Her name and address are in the

6    bankruptcy case.  But he mentioned her name.  The passport,

7    or whatever it was, that wasn't something that he posted.

8    That was somebody else.  So I don't think he can be called

9    to answer for that.

10    And at this point -- I mean, to the extent they're

11    seeking to hold him in contempt of the order, I think, you

12    know, for them to just -- they mention contempt, I think in

13    a parenthetical.  That was the extent.

14    I don't think it's appropriate for Your Honor to

15    hold Mr. Kwok in contempt without a full evidentiary hearing

16    on that issue, and then having to meet their burden of

17    what's needed, and we haven't even -- that process hasn't

18    even begun, but we don't believe there's any basis for doing

19    so.

20    So for all those reasons, Your Honor, we'd ask the

21    Court to deny their motion at this point.

22    MR. BASSETT:  Just a couple responses, Your Honor.

23    Oh, I'm sorry.

24    THE COURT:  And you've spoken, Mr. Wachen, with

25    your client about Paragraphs 2 and 3 of the preliminary

1   injunction order?

2            MR. WACHEN:  I have not personally spoken with

3   him, but he has been spoken with.

4            THE COURT:  Okay.  Who has he been spoken with by?

5   Who -- you represent him in this adversary proceeding.  So

6   you haven't talked to him directly about what this

7   preliminary injunction order means?

8            MR. WACHEN:  Well, for what I -- I don't speak

9   Chinese, so that's one concern I have.  But I have spoken

10  with his -- with co-counsel, and co-counsel have spoken with

11  him about it.

12           THE COURT:  Which co-counsel have you spoken with?

13           MR. WACHEN:  Well, several of them, but the one I

14  will mention is Mr. Mitchell.

15           THE COURT:  Okay.

16           MR. WACHEN:  It's my understanding that Mr.

17  Mitchell has discussed the order with him.

18           THE COURT:  But you have not directly had any

19  discussions with Mr. Kwok about this preliminary injunction

20  order or the memorandum of decision?

21           MR. WACHEN:  I have not, Your Honor, no.

22           THE COURT:  Okay.  Thank you.

23           MR. WACHEN:  But I've discussed it with Mr.

24  Mitchell, and Mr. Mitchell, I understand, has discussed it

25  with Mr. Kwok, and I've discussed that with Mr. Mitchell.

1        THE COURT:  Okay.  Thank you.  Mr. Barrett (sic),

2   what else would you like to say?

3        MR. BASSETT:  Just a couple -- a couple responses,

4   Your Honor.  He mentioned, in discussing Paragraph 2 of the

5   preliminary injunction order, he said that there's been no

6   evidence that anything that the debtor is -- has done would

7   affect the safety of any individual.  Two responses to that.

8        First of all, Paragraph 2 is not so limited.  I

9   mean, Paragraph 2 says very clearly, the debtor is further

10  preliminarily enjoined from interfering in any way with the

11  integrity of his Chapter 11 case, and then it goes on to

12  say, including taking any act to threaten the safety of the

13  Chapter 11 trustee, PAX, or its affiliates, and others.  So

14  the including clause obviously is not -- is not limiting.

15  Number one.

16       Number two, what you have here is very clear

17  evidence of intimidation.  I'll get to the argument that

18  there's no connection between Mr. Kwok's post and what

19  happens by his followers and that he has no control over

20  that.

21       But you have a call to arms by Mr. Kwok.  That's

22  what we think it very clearly is, and this is not in a

23  vacuum.  This is based on the evidence, the abundant

24  evidence the Court has already heard at the preliminary

25  injunction hearing.

1          And then after that, within hours, you have NFSC

2    supporters posting online passport information.  And Mr.

3    Kwok -- Mr. Kwok himself, in the translated excerpt of the

4    video said, if you do this, you're going to be exposed.

5          What happens?  Immediately, there's information

6    online, passport, personal information that absolutely is

7    something that begins to threaten the safety of these

8    individuals given the nature of this case, given the --

9    everything the Court has seen in evidence about the protests

10   and how exercised people on either side of this are.

11         That kind of doxing is certainly something that

12   threatens the safety, but it doesn't matter because

13   Paragraph 2 is not limited to threatening the safety in any

14   event.

15         He mentioned, well, you know, if the debtor cannot

16   you know, criticize claims online, and we're also arguing

17   that he doesn't have standing, then he has no place to go.

18   Your Honor, the standing issue is separate.  We don't think

19   the debtor has standing.

20         But if he doesn't have standing, his recourse is

21   not to circumvent that and get around it by going out and

22   harassing people online and taking his criticism public

23   because he has no right to do it in this Court.  So that's,

24   I think, a non-answer to the question.

25         I think that's it, Your Honor.  I mean, again, on

1    the question of is there control of these people.  The

2    timing.  He posts this in the morning on January 10th.

3    Immediately there are NFSC members posting thereafter.  Mr.

4    Wachen mentioned that one of them appeared to be in South

5    Korea.  I don't understand how that's possibly a limitation.

6    The Court heard evidence that there are people protesting

7    outside of Paul Hastings' office in Tokyo.  The reach of

8    this is worldwide.

9            Your Honor, that's all I had.  I appreciate the

10   Court's time on this today.

11           THE COURT:  Okay.  Thank you.  Mr. Wachen,

12   anything further?

13           MR. WACHEN:  Yes, Your Honor.

14           Just to be clear, this safety thing that they keep

15   talking about, the language at Paragraph 2 talks about the

16   safety of Chapter 11 trustee, PAX's or its affiliated --

17   affiliates, officers, or employees, counsel to the Chapter

18   11 trustee or PAX, and any of their respective relatives.

19           So unless this woman is somehow a relative of one

20   of these people that we don't know, or a former spouse, the

21   safety clause of Paragraph 2 doesn't even come into play

22   here.

23           Mr. Kwok hasn't threatened the safety of anyone,

24   but to the extent that's what they're arguing, the safety

25   clause is really a non-issue because it's not -- she's not

1    one of the people that's mentioned.

2            But in terms of interfering in any way with the

3    integrity, I'll just reiterate that nothing he's done here

4    to criticize a claimant who he thinks has filed a bogus

5    claim, who's trying to take advantage of the system, is

6    interfering with the integrity.  If anything, it's helping

7    to ensure the integrity.  And so I guess I just don't

8    understand that argument that they're making.

9            If this is about this being a call to arms any

10   time he opens his mouth, well, he has a lot of people who

11   believe in him.  He's -- he has -- you know, he's a public

12   figure.  He is a leader of the Chinese Dissident Movement.

13   There are people all around the world who support him in

14   various ways.  Not the people he knows, but people who

15   believe in him.

16           And so, like anything else on social media, when

17   somebody posts something, people often react to it from all

18   over the place, and that's -- you know, it's uncontrolled.

19   I mean, I think that's just the nature of social media, that

20   people come out of the woodwork and start saying things.

21           I don't think he knows -- I don't think there's

22   any evidence that he has anything to do with these posts or

23   that he knows who posted this passport or whatever it is,

24   from this woman.

25           Somebody put it up there, but it wasn't him, and

1    it wasn't as if he encouraged someone to do that either.

2    He's just concerned about her and other people, perhaps like

3    her, who are going to flood -- I mean, basically what

4    they're concerned about.  They're going to come forward and

5    put in claims that are not legitimate.

6         So I mean, on the one hand they're concerned about

7    people flooding the docket with illegitimate claims, but

8    then when he raises an issue or concern about one of the

9    claims, now he's done something wrong.  I mean, it just --

10   it seems like, you know, no matter what he does, he's

11   somehow doing something wrong.

12        But the fact that people react to his posts on

13   social media, I mean, that's just -- I think that's just the

14   nature of social media.  There's no indication that he has

15   anything to do with actively encouraging these people to go

16   and put up the passport or to do what they were doing.

17        And as far as harassment, I just don't think

18   there's any indication that he has harassed anybody.  Have

19   other people done things that maybe they shouldn't?

20   Perhaps, but I don't think he has to answer for someone --

21   some guy in South Korea who posted some inflammatory post.

22        THE COURT:  Okay.  Thank you, both.  I will hear

23   the arguments on standing, please.

24        MR. BASSETT:  Thank you, Your Honor.

25        MR. DESPINS:  Good afternoon, Your Honor.   For

1    the record, Luc Despins, Chapter 11 Trustee.  I'll try to

2    cover this briefly.

3           We believe that the Court should enter an order

4    quashing these objections under various grounds.  It's not

5    limited to standing, technical standing.  It's important to

6    go through the code.  I know you know it well, but just for

7    two seconds.

8           704 Sub (a)(5) says that the trustee -- we're

9    talking about a Chapter 7 trustee now -- has the duty --

10   shall, it's a shall -- review claims and object to claims if

11   appropriate, or something like that.  Claims that are

12   improper.  That's the Chapter 7 trustee, 704(a)(5).

13          1106 says that the title -- the Chapter 11 trustee

14   has those duties.  Those duties were given under 1107 to the

15   debtor in possession while he was in possession, but doesn't

16   have that ability anymore.

17          So there's very specific language regarding this,

18   and the argument to the contrary is that we're a party in

19   interest under 1109.

20          And by the way, Your Honor, there are many other

21   parties -- people that are parties in interest under 1109.

22   A creditor, like PAX, the creditor's committee.  Everyone is

23   a party in interest.  It doesn't stop.  And by the way,

24   under 502, it says a party in interest can object to claims.

25          And that has not stopped courts repeatedly in

1    Chapter 7 cases to say, creditors cannot go and object to

2    other creditor's claims, even though you're a party in

3    interest.  And they have done the same in Chapter 11.  Why?

4    Because it would be chaos.

5         That's the -- you know, the *Dow Corning* case lists

6    tons of cases on this, that we cannot allow creditors that

7    have -- when you think about it, creditors have much more

8    standing than an out-of-possession debtor.  Especially in a

9    case like this, because the current position of the debtor

10   is, I have no assets.  That's the position that he had --

11   that he's advocated thus far.

12        And, however, PAX is a creditor.  Clearly a party

13   in interest.  In theory, they should go and object -- they

14   could go and object to other creditor's claim, because there

15   would be a direct benefit to them, a direct pecuniary

16   interest, right?  Because you follow that logic of party in

17   interest.  But courts never allow that when there's a

18   trustee in place.  Even, they don't do it when the debtor in

19   possession is in place.

20        I'll put that aside, but when a trustee is in

21   place, they don't allow creditors to do that; creditors that

22   have more standing from a pecuniary interest point of view

23   than a debtor that's out of possession that says, I have no

24   assets and my claims -- although he's going to dispute all

25   those claims -- but there's at least $400 million of claims

1     before the bar date that are in the case.

2           So the point is not only standing, because you

3     know, the issue -- you know, it's true that 1109 says a

4     debtor is a party in interest, and also says a creditor's

5     committee and creditors are parties in interest, but it has

6     not stopped cases or courts in Chapter 7 and Chapter 11

7     cases from saying, you cannot file objections because it's

8     chaos.  It's the job of the trustee to do that.

9           And just, if we look at this case, Your Honor,

10    recall the case started with, I have no assets, so there's

11    nothing to distribute.  Now, it's getting pretty clear that

12    there are some assets.  I don't want to be over confident

13    about this, but I think that we will establish that there

14    are some assets of the estate.

15          So now the debtor is shifting to, well, but there

16    are no claims.  We're going to object to all the claims, and

17    the problem with that is that we're conducting an

18    investigation.  So on the H coins, for example, we are

19    conducting an investigation.  We're not done with that

20    investigation, and we've told Your Honor months ago that the

21    first focus has to be on bringing assets into the estate.

22          But the debtor is very good at distracting all of

23    us, and I'm including the Court, not in the critical way,

24    but -- in fact, I was thinking about this.

25          This opinion you wrote on the First Amendment and

1    all that, I know it would have taken me 150 hours to do this

2    because I know nothing about the First Amendment.  So I'm

3    assuming you know a lot more than me, but it certainly took

4    you a hundred hours to write  this.  This is a hundred hours

5    that could have been spent on other aspects of the case.

6              But -- so the Court was distracted.  We were

7    distracted.  And now they want to open another angle, which

8    is, let's object to claims.  Let's have trials on the H Coin

9    and all that.  I have not completed my investigation on

10   that.  That's why the trustee is supposed to do this, not

11   the out-of-court -- not an out-of-possession debtor.  And

12   that's fundamental.

13             So in this case, what's happening is that they

14   want us to be distracted again from the main task, which is

15   bringing assets into the estate so that we are going after

16   claimants.

17             And, you know, look, it's -- I'm looking at the

18   claims.  I have already said this to Your Honor.  The

19   claimants are not sophisticated in the sense that they

20   believe they've been defrauded.  They don't express that in

21   the best terms.  I saw the claim myself, but that claim was

22   filed two weeks ago.  This is not like I'm sitting on this

23   for two years.  It was filed two weeks ago.

24             I have not spent any time looking at these claims

25   in detail.  I'm looking at them, you know, briefly, but not

1    in detail because the main goal here is to get money into

2    the estate.

3            Without money into the estate, this case dies and

4    we cannot spend our time being distracted by the debtor

5    that's completely out of possession economically, trying to

6    open up these sideshows, as we had on the First Amendment,

7    and now there seem to be another sideshow which is, let's

8    object to claims.  We cannot have that, Your Honor.

9            This is why courts have said in their -- you know,

10   again, the *Dow Corning* case cites probably ten cases that

11   have held this in Chapter 11, where it basically says that a

12   trustee or debtor in possession, even though creditors have

13   standing under -- because they're a party in interest, we

14   will preclude them from that because otherwise it would be

15   chaos.

16           And for these reasons, Your Honor, we would ask

17   you to enter an order that says that these objections are

18   quashed.

19           Two, that no other objections by the debtor may be

20   filed without prior permission from Your Honor.  And so they

21   can come back later.  You know, if they can establish that

22   the trustee has been sitting on those claims, and really to

23   favor these people, fine.  But they filed those claims like

24   two weeks ago, or I'm not even sure it's been two weeks.

25           Obviously, we have no time to act.  Perhaps we

1    will review them and determine, after we complete our

2    investigation on the H Coin, that these people have valid

3    claims, or not.

4            I am telling Your Honor that if these claims are

5    not valid, they will not be allowed.  This is not a game

6    that we're going to play.  If they're not valid, you know,

7    they will not be allowed.

8            And it's, you know -- also, lastly I would say

9    that there's kind of something humorous about a debtor that

10   has no records whatsoever, right?  That's the theory.  Not

11   only I have no assets, but I have no records, but they're

12   sure that these claimants have no claims.  And they know

13   that how?  Because they have no records themselves of any of

14   this.

15           Your Honor, there will be certainly more than 200

16   claims filed in this case.  Perhaps more than that.  So all

17   these people are wrong.  All people are imagining things?

18           Possible, but I would say, Your Honor, the trustee

19   needs to be able to conclude its investigation to review

20   those claims.

21           And if the debtor eventually is able to put

22   forward a plan that pays people in full, then they can

23   object to claims, but until then, they have no credential

24   standing, and even from a chaos point of view, they should

25   be precluded from prosecuting these objections.

1          Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. CESARONI:  Good afternoon, Your Honor.

4          THE COURT:  Good afternoon.

5          MR. CESARONI:  The issue that the trustee had

6   raised was pretty clearly the standing of the debtor to file

7   objections to claims in this Chapter 11 case.

8          I don't know where the sort of chaos argument came

9   from, but in the larger picture, if the debtor objects to

10  claims, takes discovery from those claimants as to the

11  propriety of their claims, and is able to eliminate claims,

12  it would actually benefit the estate because in the end the

13  estate -- the trustee wouldn't have to spend estate money

14  doing that type of investigation and it would also reduce

15  the total claims pool.

16         As Your Honor had heard --

17         THE COURT:  How could the debtor do that if it

18  doesn't have -- he doesn't have any income?

19         MR. CESARONI:  So, as the Court had heard --

20         THE COURT:  No, I mean, I've looked back at the

21  schedules during the course of the case and the debtor lists

22  on his schedules that he has zero income and he doesn't

23  anticipate having any in the future.  That's what he says on

24  his schedules.

25         So even if I were to agree with what you just

1    said, how would the debtor do that if he doesn't have any

2    money and he doesn't have any income?

3                MR. CESARONI:  Well, in --

4                THE COURT:  Who would pay -- who would pay for

5    that?

6                MR. CESARONI:  Well, and I won't get into the

7    details, but the Court --

8                THE COURT:  Well, but you have to.  I mean, your

9    argument is -- your argument is, you'd be helping the estate

10   because the debtor would undertake this analysis and

11   discovery and determine whether the claims were valid or

12   not.

13               And I -- so my question is, well, how would that

14   happen?  He said in this Court while he was a debtor in

15   possession, in -- on his schedules filed under penalty of

16   perjury, that he has no income and doesn't anticipate any

17   change in that -- in that status.  That's what his schedules

18   say.  I'm not -- I mean, I can open them up for you and we

19   can go right to them.

20               So my -- so if you're going to make that argument,

21   I'm happy to have you make the argument, but you have to

22   tell me how that's going to happen.

23               MR. CESARONI:  Yes, Your Honor.

24               So the Court had heard testimony from, among other

25   people, Mr. Kindseth.  And I'm -- what I said I'm not going

1    to get into deal -- details of was, I believe there was

2    testimony that there was a settlement but we never got into

3    -- the Court never heard what the terms were and --

4              THE COURT:  And I'm not going to hear anything

5    about a settlement.

6              MR. CESARONI:  -- I'm not going to -- right.

7              THE COURT:  So you're telling me that I don't -- I

8    have to take on face value, that this debtor, who came to

9    this court voluntarily, no one forced this debtor to file

10   Chapter 11, that he -- even though he has no income and

11   doesn't expect to have any income, that he can handle all

12   this and don't worry about it, Court.  Right?  That's what

13   you're saying.

14             MR. CESARONI:  Well, I think -- I think that the

15   evidence that this could potentially be handled by money

16   coming in from potential other sources, is the fact that

17   through negotiation, there was at least a potential

18   settlement of the case in principle with the creditor's

19   committee and the major creditors.

20             THE COURT:  I don't -- I don't care about the

21   settlement --

22             MR. CESARONI:  So there --

23             THE COURT:  -- in principle.  That's not my

24   question.  I'm responding to your argument.  Your argument

25   is, the trustees just said that there would be chaos.  You

1    know, and you didn't know where that came from, and I

2    understand what you're saying.

3            And then you said, but, regardless of that, if the

4    debtor does this, it's going to help the estate because he's

5    going to determine whether there's valid claims or not.

6    He's going to conduct discovery, which I think is an

7    interesting suggestion that you make, of a debtor out of

8    possession conducting discovery on proofs of claim filed in

9    a case in which there's a trustee, and then somehow the

10   debtor is going to be able to afford to do all that, and

11   that's going to benefit the estate.  That doesn't really

12   make a lot of sense to me right now.  I'm having trouble

13   understanding that, okay?

14           MR. CESARONI:  I understand the Court's concern.

15           So the real impediment to actually resolving this

16   case is the belief by the trustee that the claims in the

17   debtor's schedules and to the PAX claim and the claims

18   represented by the creditor's committee, are not the entire

19   universe of claims, or it -- and that there are many other

20   claims out there that have to do with things like H Coin and

21   the -- and with the basis of which, which obviously we

22   disagree with, is that, you know, that people are saying

23   that, well, it's hard to tell from the face of these proofs

24   of claim, but people are essentially saying that they made

25   investments and that the debtor fraudulently induced them to

1    do so.

2              Now if those claims are not valid, which is what

3    the debtor -- debtor argues, and which we believe we could

4    show, then that eliminates a large part -- that eliminates

5    the problem that got in the way of potentially resolving

6    this case which was, the trustee saying, no, there are all

7    these other issues and --

8              THE COURT:  I don't want to know about what

9    potentially -- look, we're focused today.  This is what our

10   focus is today, right?

11             Our focus today is, does the debtor have standing

12   to object to these proofs of claim.  That's the focus of --

13   that's -- other than the argument that Mr. Bassett and Mr.

14   Wachen just went through with regard to whether he's in

15   violation of the preliminary injunction order and should be

16   held in contempt, the issue is, does the debtor have

17   standing to object to proof of claims, the debtor who is no

18   longer in possession, have standing.  That's the issue.  I

19   don't want to hear about a global settlement.

20             MR. CESARONI:  Sure.

21             THE COURT:  I want to hear why you believe the

22   debtor has standing to do this.

23             MR. CESARONI:  So in a Chapter 11 case -- so a lot

24   of the case law that the trustee, and pretty much

25   exclusively relies upon, is Chapter 7.  And a Chapter 7

1    debtor is in a different position than a Chapter 11 debtor

2    in a case where a trustee has been appointed, and there are

3    a couple of reasons.

4            First of all, Section 1121 allows the debtor to

5    file a plan of reorganization.  So the -- so once a trustee

6    is appointed, the trustee can file a plan, the creditors can

7    file a plan, the debtor can file a plan.  So the debtor has

8    an interest in being able to confirm a plan of

9    reorganization so that -- so that he can resolve his

10   liabilities.

11           Unlike in a Chapter 7 where presuming --

12   presumably if there wasn't any fraud or misconduct, the

13   Chapter 7 debtor doesn't have to do anything and -- you

14   know, except comply with the bankruptcy code, do what he has

15   to do.

16           I'm not suggesting that a Chapter 7 debtor doesn't

17   have to do anything, but you know, assuming that there's no

18   successful objections to discharge or non-dischargeable

19   claims, the Chapter 7 debtor will get his discharge.

20           So courts in that instance have said, well even

21   so, in a Chapter 7, there are situations where that Chapter

22   7 debtor has standing.  One of them that there be a surplus

23   in the estate, or a pecuniary interest of the debtor.

24           THE COURT:  Okay.

25           MR. CESARONI:  Now, we're --

1           THE COURT:  I understand that.  So --

2           MR. CESARONI:  We're not arguing that there's

3     going to be a surplus here --

4           THE COURT:  Well, but you have to argue that,

5     don't you?  I mean, here's the point, right?  This is a

6     Chapter 11 case in which this debtor says he has no income

7     and he doesn't foresee any income.  So how could this be a

8     surplus case?

9           MR. CESARONI:  Well, I again --

10          THE COURT:  And he has no assets.

11          MR. CESARONI:  Again, I don't think it has to be a

12    surplus case.

13          THE COURT:  Well, and why is that?

14          MR. CESARONI:  Well, because if his claims -- if

15    the debtor's claims are not automatically discharged in a

16    Chapter 11, and he would have to -- one of two things would

17    have to happen.

18          A plan of reorganization would have to be

19    confirmed, or this would essentially have to be a

20    liquidating 11, which is interesting as to a individual

21    debtor, but I won't get into that.  But the issue really is

22    that the debtor has two sides of a balance sheet.

23          Right now, there are very significant claims out

24    there against the debtor, and being able to potentially

25    confirm a plan with money from assets that are not part of

1    the estate, which might be used as part of some type of

2    plan.  So, you know, plans have certainly been confirmed

3    where money comes from outside sources and --

4              THE COURT:  Understood.  I -- but -- but --

5              MR. CESARONI:  And so, the fact that the --

6              THE COURT:  -- but didn't you --

7              MR. CESARONI:  -- fact that the debtor doesn't

8    have personal assets doesn't necessarily mean that a plan

9    couldn't be confirmed, and it also doesn't mean that, for

10   example, creditors might, for the right amount of money,

11   agree to their claims being impaired.

12             THE COURT:  Well, that's a whole different

13   situation that we haven't come anywhere near yet in this

14   case, number one.

15             Number two, why can't he -- as most often -- I

16   mean, we can -- we can -- all the cases that have been

17   cited, we can go through that the objection to claims don't

18   even happen until after confirmation.  So what's the need to

19   object to the claim now, a claim that was filed two weeks

20   ago?

21             MR. CESARONI:  I -- and I think that the need is

22   the fact that we view these claims, and the debtor views

23   these claims as an impediment in this case because these

24   types of claims that are made, you know, that there's some

25   sort of fraudulent inducement or investment fraud as they're

1    claiming, apart from the fact that we don't think that

2    they're valid, they are on the claims register and so the

3    value of the case on paper is going to look like it's more

4    than we believe that it is.

5              And if that's the case, it's going to make it very

6    difficult to resolve a case in a situation where we don't

7    know what the end -- we don't know what the -- what the

8    amounts are that we have to deal with.  So if somebody said

9    --

10             THE COURT:  So that happens all the time in

11   Chapter 11.  It happens all the time.  It --

12             MR. CESARONI:  It --

13             THE COURT:  -- almost every Chapter 11 case of any

14   size, the claims are not resolved until after confirmation

15   of the plan, okay?  Number one.

16             Number two, when you say we think these claims

17   aren't valid, what evidence do you have that they're not

18   valid?

19             MR. CESARONI:  Well, the --

20             THE COURT:  Because as you know, the bankruptcy

21   code and rules provide that a proof of claim is prima facie

22   validity of that proof of claim.  So what evidence do you

23   have that it's not valid?

24             MR. CESARONI:  Well, again, the code does provide

25   that, provided that it's a -- and this is addressed in the

1    specific objections to the individual claims, but our

2    argument is that on their face, the claims are not claims --

3    the claims have not demonstrated or alleged sufficient facts

4    or provided sufficient documentation to show that on their

5    face they are claims against the debtor, because, just for

6    example, in the claims of Ms. Yu, there -- the -- it just

7    says, I think investment fraud is the reason, and then

8    attached is a wire transfer in German from Ms. Yu to

9    something called the Crane Advisory Group.

10             THE COURT:  Okay.  So if you think --

11             MR. CESARONI:  I mean, so --

12             THE COURT:  -- they're not valid, then why are you

13    worried about them?  You can worry about the later.  If you

14    want to file a plan, your client wants to file a plan, your

15    client can file a plan and say that he's not going to treat

16    these claims because he thinks they're invalid, and he's

17    going to be a -- at confirmation objecting to them.  And

18    then the Court can consider all that.

19             But if you're saying on the one hand that they're

20    not valid, but yet you need to object to them within two

21    weeks of the filing of the claim, that seems odd to me.

22             MR. CESARONI:  Well, I mean, I do understand that

23    the normal -- in a normal case, in -- that a lot of times

24    claims rejections are handled after the fact.  Now it's --

25    in some cases, they could just not be treated.

1    I think that that creates serious issues for plan

2    confirmation and would probably draw objections, at least

3    from the creditors who weren't being treated.  But assuming

4    that they were, the money has to be there to account for

5    their claims and be held, generally by a claims agent, but -

6    -

7          THE COURT:  And how many times do we have Chapter

8    11 plans that have a reserve set aside for disputed claims

9    that if the claim is found to be valid, that it gets paid,

10   and if it doesn't, then it enures to the benefit of either

11   the estate, or the debtor if there's a surplus?

12         MR. CESARONI:  Right.  And that's a question of

13   timing, but the issue --

14         THE COURT:  No, that's a question of law.  That's

15   a question of law.  See, you still -- what I don't

16   understand is what's the rush to object to these claims.  If

17   you even have standing.  Okay, which I -- we haven't even

18   talked about that.

19         I'm reacting to your argument that this would be

20   helpful to the estate, and I -- and -- because he's going to

21   do all this discovery and all this other -- these other

22   things, with no money, and that's going to be beneficial to

23   the estate.

24         But, at the same time you say they're invalid.  So

25   what do you have to do discovery about?  I mean, what's --

1    why go down that path?  It makes no sense.  There's no logic

2    associated with what's going on.

3            So then the Court says, well, what's going on?

4    What's going on here?  There -- you know, I -- so what's

5    your argument about standing?

6            MR. CESARONI:  Yes, Your Honor.  And just very

7    briefly, I think that me saying they're invalid or Mr. Kwok

8    saying they're invalid is certainly one thing.  It's a

9    completely different thing if the Court finds that, because

10   then it's not a topic for debate, it's been decided.

11           But as to standing, I'll start with, you know, Mr.

12   Despins, cited to 704(a)(5), which actually -- which says,

13   if a purpose would be served, examine proofs of claim and

14   object to the allowance of any claim that as improper.  So

15   that's -- the trustee shall do that.

16           Just because someone has a duty to something -- do

17   something, doesn't mean that it's the case that no one else

18   can do it.  The trustee may have to examine claims, and it

19   says in an appropriate case.  In a Chapter 7, it's generally

20   going to be an asset case that would be the appropriate case

21   to object to claims, but that's not exclusive.

22           There's nothing in 705 or in 1106, which

23   incorporates 705 -- 705(a)(5), or 704(a)(5) rather, into a

24   Chapter 11 case where a trustee has been appointed.  And a

25   Chapter 7 is also silent about who's a party in interest for

1    the purposes of who can object to a claim under 502, and

2    Chapter 11 isn't.  Chapter -- in Chapter 11, 1109

3    specifically references the debtor in addition to the

4    trustee and creditors as being parties in interest.

5              But even in a Chapter 7, you know, courts have

6    carved out situations where there would be standing of the

7    debtor.  And one, as I said, was a surplus.  The other is --

8    there are a few others, but one is that if the debtor has

9    non-dischargeable claims against him, the debtor would have

10   standing, even if there's not going to be a surplus.

11             And the theory behind that is that if the debtor

12   can decrease the size of the claim pool, he will increase

13   the payments to non-dischargeable claims, which will

14   decrease his personal liability after the case to pay those

15   non-dischargeable claims.  And there have been several non-

16   dischargeable claims asserted in this bankruptcy case, and

17   Mr. Kwok certainly would have an interest in decreasing the

18   size of the claim pool in order to theoretically have more

19   payments go to non-dischargeable claims, even if there isn't

20   a surplus.

21             And now, you know, obviously we're not -- we have

22   opposed the non-dischargeability actions and we don't

23   believe that they have merit, but you know, of course,

24   there's always risk in litigation, and -- as we all know.

25   So that's -- and that is nowhere in the trustee's papers,

1    even when -- even assuming that the Chapter 11 case is

2    applied, which I don't think they do because, you know, 1109

3    puts --

4              THE COURT:  You mean the Chapter -- you mean the

5    Chapter 7 cases, right?

6              MR. CESARONI:  Yes.  Thank you, Your Honor.

7              THE COURT:  That's all right.

8              MR. CESARONI:  I don't think --

9              THE COURT:  I just wanted to make sure I was

10   following you.

11             MR. CESARONI:  Right.  So I don't think -- to the

12   extent that the Chapter 7 cases even apply, there are other

13   exceptions, one being, you know, the surplus.  One being the

14   non-dischargeable claims, and one being that it isn't

15   interfering with the administration of the estate.

16             I don't see how -- and even in cases -- I don't

17   see how the trustee has an issue with a debtor spending --

18   not spending estate money to potentially reduce the claim

19   pool.

20             We're only here because the trustee objected to us

21   going forward and says, we don't have standing, which I

22   believe we do, you know, under 1109 and under the -- there

23   admittedly aren't a lot of cases, but the cases that I had

24   cited that stood for the proposition that, you know, Chapter

25   11 is different.

1          THE COURT:  Well, wouldn't you have to ask for

2     court approval to do that?  So a creditor's committee is a

3     party in interest in a Chapter 11 case, correct?

4          MR. CESARONI:  That's correct.

5          THE COURT:  Right.  So -- and they can't bring

6     causes of action against certain parties unless they get

7     court approval, or unless the debtor refuses to do so,

8     correct?

9          MR. CESARONI:  That's true.

10          THE COURT:  So what's the difference with this and

11     the Chapter 11 trustee?  You aren't -- your client is no

12     longer in possession, and may not even have a pecuniary

13     interest in the outcome of this case, because if there isn't

14     a surplus, there isn't a surplus.

15          So why aren't you asking -- show where in the

16     bankruptcy code that says you can do what you can do.  I

17     don't find it, and in all the cases that have cited -- that

18     have been cited, there are some Chapter 11 cases that have

19     been cited, number one.

20          Number two, you already have referenced that it

21     could be a liquidating plan.  Well, if it's a liquidating

22     plan, then the decisions in the Chapter 7 case would be very

23     supportive of the trustee's argument in this case.  That's

24     another issue.

25          And then again, what is the need to object to the

1   claims now?  You haven't convinced me there's a need.

2            There is no need, in fact, that claims -- this is

3   the whole claims process.  You don't -- people don't get to

4   -- the proof of claim bar date hasn't even passed and you're

5   -- and you're starting -- your client -- you, on behalf of

6   your client, have filed papers under Rule 11 that says,

7   these claims are invalid.

8            And I asked you what evidence you have of that,

9   and you said, well, there's a -- I think you said, there's a

10   wire transfer from Germany.  Okay.  How does that establish

11   that the claim is invalid?

12            MR. CESARONI:  I believe that our argument in the

13   claims objection is predicated on the fact that the claims

14   are filed without sufficient allegations or evidence.

15            THE COURT:  Right.  So even if that's true, I can

16   allow them to amend their claim.

17            MR. CESARONI:  Well, then would -- then in that

18   sense, I think it would help the estate to the extent that

19   -- it would actually help the creditor if the creditor knew

20   that we thought the claim was objectionable to fix it.

21            THE COURT:  That's only if I think that it doesn't

22   meet the prima facie validity on it -- under the rules.

23            MR. CESARONI:  That's true, Your Honor.

24            THE COURT:  That's not up for the debtor to

25   decide.

1          MR. CESARONI:  I -- that, I completely understand,

2     and I wasn't suggesting otherwise, but I mean, just timing

3     -- standing doesn't affect -- isn't affected by timing.

4          I mean, there's nothing in the bankruptcy code

5     that says you have to wait until after the -- you have to

6     wait until X date or after confirmation, or anything about

7     when you're going to file objections to --

8          THE COURT:  I agree, but there's nothing in the

9     bankruptcy code that says a debtor in possession can object

10    to proofs of claim either.

11         A debtor out of possession can object to proofs of

12    claim when a trustee has been appointed and the trustee has

13    statutory duties to administer the estate, which includes

14    proofs of claim filed in the case.

15         MR. CESARONI:  So Section 502 --

16         THE COURT:  Yep.  Go ahead.  What do you think 502

17    says?

18         MR. CESARONI:  It says -- Part A says a claim or

19    interest, proof of which is filed under Section 501 of this

20    title, is deemed allowed unless a party in interest,

21    including a creditor of a general partner and a partnership

22    that is debtor under Chapter 7 of this title, objects.

23         THE COURT:  Right.

24         MR. CESARONI:  And then --

25         THE COURT:  Right.

1          MR. CESARONI:  -- 1109 goes on to define what a

2     party in interest is --

3          THE COURT:  Yep.

4          MR. CESARONI:  -- in a Chapter 11 case.

5          THE COURT:  Yep.

6          MR. CESARONI:  And it includes -- it says a party

7     in interest, including the debtor, the trustee, a creditor's

8     committee, an equity security holder's committee, a creditor

9     equity security holder, or any indentured trustee may raise

10    -- may raise and may appear and be heard on an issue in the

11    case --

12         THE COURT:  No, I know what it says.

13         MR. CESARONI:  -- under this chapter. Okay.

14         THE COURT:  I know what it says.  Yep.

15         MR. CESARONI:  So, if a party in interest can

16    object to proofs of claim, and the debtor is a party in

17    interest, then the debtor should be able to object to --

18         THE COURT:  Except there's plenty of cases that

19    don't allow parties in interest to do exactly what you're

20    saying that you want to do, as I just gave you the example

21    of the creditor's committee.

22         The Creditor's committee can't bring the cause of

23    action unless they get approval from the bankruptcy court to

24    do so, and the bankruptcy court would have to make findings

25    as to why that power that was reserved to a debtor in

1   possession, or a trustee that was appointed and the debtor

2   became out of possession, why that power should be allowed

3   to be exercised by someone other than the party that is

4   obligated to do so under the code, number one.

5        Number two, you know, if you look at *Colliers* and

6   you look at what they think about this issue, and what they

7   talk about, they say that a debtor -- an out of possession

8   is like a Chapter 7 debtor and doesn't have standing to

9   challenge claims unless there is -- they have a pecuniary

10   interest in the outcome of the case or could prove there's a

11   surplus.

12        So if you can prove there's a surplus, then we

13   were talking -- we have a whole different ball game.  But

14   that's -- you -- I don't know how you can do that at this

15   point.  Maybe you can at some point, but right now the

16   debtor's schedules say he had zero income and he doesn't

17   anticipate any change in that status.

18        Now he hasn't updated any of his schedules or said

19   that he has any income, but without that, you know, you're

20   taking -- you're -- at some point, you're using the fact

21   that you're a debtor out of possession and you don't have to

22   comply with what you'd have to do when you're a debtor in

23   possession.

24        But then when -- but then when -- you're saying,

25   but we're still a party in interest and we can do this

1    because it doesn't say we can't.

2             Well, it doesn't say you can, and any other party

3    in interest in a Chapter 11 case that tries to do -- take an

4    action that they're not directly authorized to take, has to

5    ask for the court approval to do so, and you haven't done

6    that.

7             What you've done is you've filed objections to

8    claim -- claims that were filed two weeks ago, well before

9    the proof of claim bar date was set, when it's the trustee's

10   initial duty to do that.

11            So I'm not convinced.  I'm not convinced.  If you

12   -- you look at the -- these are the treatises on bankruptcy

13   law, and this is what they say, both in -- speaking in

14   Section 502 and speaking in Section 1109.

15            And it talks about that a party in interest may

16   not always be able to do what a party in interest thinks

17   they can do under -- under 1109.

18            MR. CESARONI:  So I am familiar with the *Colliers*

19   statement in 11 -- I believe it's -- actually, I think it's

20   in 502 --

21            THE COURT:  It's in 502.

22            MR. CESARONI:  -- in 502.

23            THE COURT:  That's correct.

24            MR. CESARONI:  That a Chapter 11 debtor -- it

25   lumps the Chapter 11 debtor and a Chapter 7 debtor together

1   and actually cites to a --

2          THE COURT:  Well, I'm not sure it -- I'm not sure

3   it lumps them.  I think, you know, this is a treatise.

4   They've thought about it very carefully, and it says, in a

5   Chapter 7 case, or in a Chapter 11 case in which the debtor

6   is not in possession and there is no possibility of a

7   surplus being returned to the debtor, the debtor has no

8   pecuniary interest in the outcome of claims objection, and

9   thus no standing to object to claims.  That's what it says.

10          I wouldn't call that a lumping.  I would call that

11   that -- you may disagree with it.  I understand that, but

12   they cite to two cases, and this is recognized as the

13   treatise on bankruptcy law.

14          So I understand -- I just -- I would just -- you

15   can say you disagree.  I'm happy to have you say that, but I

16   don't think it's a lumping.

17          It's very specific about a Chapter 11 case in

18   which the debtor is out of possession.  That's what this

19   case is.  And you made that clear to the Court from the very

20   minute after the debtor was no longer in possession, and

21   that's fine, and you're correct.

22          But with that, it also carries this issue, which

23   is I don't see how you have standing to object to the claims

24   at this point.  You haven't proven that there's -- that the

25   debtor is solvent.  You haven't proven that there will be a

1    surplus.  You haven't proven that the debtor has any

2    pecuniary interest in the outcome of this case.

3            And I don't know how you can at this point when

4    the only evidence in this record about the debtor's

5    financial status is that he has no income, he has assets of

6    less then $4,000, and he doesn't believe that there will be

7    any change in his status as to income in this case.

8            So I -- you know, you can make your arguments

9    about 1109, and I understand them, but the argument you're

10   -- I'm not persuaded by them.

11           MR. CESARONI:  I understand, Your Honor.  Although

12   I -- you know, I don't think that the -- that there has to

13   be a surplus is the correct analysis because, you know,

14   there is a Chapter 11 trustee, but the debtor's not

15   completely divested of its interest in this -- of his

16   interest in this case, and I cite to cases that discuss that

17   in our papers.  The real -- because the debtor can file a

18   plan, and --

19           THE COURT:  Right.

20           MR. CESARONI:  -- the fact that he can file a plan

21   --

22           THE COURT:  Go right ahead.

23           MR. CESARONI:  -- gives him an interest in this

24   estate.  Apart from the 1109 argument --

25           THE COURT:  And I've already suggested --

1           MR. CESARONI:  -- which --

2           THE COURT:  -- what you can do with these claims

3     with regard to this plan that you're going to file on behalf

4     of the debtor.

5           He can say in that plan that these claims are

6     invalid and that there will be a claims objection process

7     after confirmation.  But if he can't confirm a plan,

8     counsel, then it doesn't really matter.  Okay?  That's the

9     point.

10           MR. CESARONI:  Well, I --

11           THE COURT:  The point is, this is a Chapter 11

12     case.  There's going to be a plan or there isn't going to be

13     a plan.  And the plan that is filed, if it is filed, has to

14     be confirmable.

15           If it's not confirmable, it really -- I'm not

16     going to spend this time -- this Court's time or resources,

17     or have to deal with discovery issues about the debtor going

18     after a claimant for depositions and interrogatories and

19     whatever else.  That is not going to happen.

20           MR. CESARONI:  I understand, obviously, the

21     Court's position, although, you know -- and I will just say

22     is -- the last point is that, you know, we very much do

23     believe that a large impediment to being -- and probably the

24     main impediment to being able to resolve this case is the

25     presence of claims which I don't know what the trustee's

1    opinion of their validity is, and I don't -- but the debtor,

2    you know, obviously, doesn't believe that there are grounds

3    for these claims to be allowed.

4              THE COURT:  What's the total amount of these three

5    claims?

6              MR. CESARONI:  So, it's about $10 million.  But of

7    course the claim -- the claim bar date is not for some time

8    now, so --

9              THE COURT:  I'm asking about these three claims,

10   $10 million, right?

11             MR. CESARONI:  It's about $10 million.

12             THE COURT:  Okay.

13             MR. CESARONI:  So as that number would

14   theoretically grow, it's going to make that problem even

15   bigger, and we wanted to address it now, in the interest of

16   being able to get to a point where we could, you know,

17   potentially try to file a -- you know, the idea is to try to

18   -- is to gain consensus and try to resolve this case.

19             And obviously, neither the Court has ordered us to

20   mediation, which, you know, the debtor, you know, fully will

21   -- you know, will fully participate in, in hopes that this

22   will work in good faith and hopes that this case can be

23   resolved.

24             But you know, it -- short of that, it's going to

25   be very difficult with these claims sitting out here and the

1    argument being that you're not -- the argument I think will

2    be that, okay, debtor, you may have come up with -- you're

3    saying the claims pool is this, but it's really not, it's

4    this.  And I think that that would be -- that's a key issue

5    that if we don't address it now, it is going to be

6    detrimental, I think, down the line in this case, and that's

7    why we moved quickly to do what we did.

8            THE COURT:  Okay.  I understand, but I'm

9    overruling the objections to all three of those claims.  I'm

10   going to enter an order that the debtor is not authorized to

11   object to any claims without seeking authority to do so from

12   the Court.

13           And with regard to your comments, I understand

14   your comments about the world of creditors, or the amount of

15   money that might be at the -- exposed.

16           But Chapter 11, you can file a plan that says if

17   these are the amount of the claims, this is how it will

18   work, Part A.

19           If these are the amount of the claims, this is how

20   it will work, Parts B.  If these are the amount of the

21   claims, this is how it will work, Part C.  It's all

22   completely doable.  It's been done time and time again, and

23   the arguments that have been raised are not persuasive.

24           The debtor does not have the authority or the

25   standing to do what he's doing at this point in time.  A

1    proof of claim bar date hasn't passed, and to say that the

2    claims are invalid with a creditor who has no records,

3    according to his schedule, no books or records, but can say

4    that these claims are invalid, I'm not going to go down a

5    path of discovery disputes and other issues that will waste

6    this Court's time.

7             If the debtor and the parties -- and I'm talking

8    about all the parties, are really in good faith wanting to

9    resolve this case, you now have an opportunity and a pathway

10   to do that.  Okay?

11            So the objection to the claims, all three, are

12   overruled.  An order will enter that says that the debtor is

13   not allowed to object to any claims unless and until he

14   obtains authority from the Court to do so.

15            MR. CESARONI:  Understood, Your Honor.  Thank you.

16            MR. KINDSETH:  So, Your Honor, just to be clear

17   with respect to the overruling, can it be without prejudice,

18   Your Honor, just so the record --

19            THE COURT:  Well, I just said, you can seek

20   authority to file --

21            MR. KINDSETH:  Thank you.

22            THE COURT:  -- new claims.

23            MR. KINDSETH:  Thank you.

24            THE COURT:  That's what I said.  All right.  So

25   what else do we need to address this afternoon?

1          MR. DESPINS:  Your Honor, can we add on Tuesday, a

2    status conference only regarding the PJR?  It's not going to

3    be controversial, I don't think.

4          THE COURT:  Well, you can do whatever you want,

5    but we're not having the PJR hearing in February as

6    scheduled.  So --

7          MR. DESPINS:  No, no, we want to --

8          THE COURT:  -- and if anybody didn't get that,

9    then --

10         MR. DESPINS:  No, no.  We --

11         THE COURT:  -- I don't know how much more I need

12   to say.

13         MR. DESPINS:  We got that loud and clear.

14         THE COURT:  Okay.

15         MR. DESPINS:  That -- it's not to revisit that.

16   It's plumbing issues, Your Honor, that's -- that's basically

17   it.

18         THE COURT:  Okay.  With regard to the status

19   conferences on the proof of claim issue and the Epic issue,

20   there is a couple of issues with regard to the Epic order

21   and what I was told was going to happen and what's

22   happening, which I think we can work out, but we need to

23   work it out.

24         I was told -- because I think, Mr. Despins, you'll

25   remember that when -- you won't remember what happened

1   before you were appointed, but before you were appointed,

2   the debtor in possession wanted to have a claims agent, and

3   I said to counsel at that time, I see no reason why there

4   would be a claims agent in this case.  It will only result

5   in additional administrative expenses being incurred, and

6   the clerk's office is completely equipped to deal with

7   proofs of claim.

8            The prior counsel for the debtor said okay, fine,

9   we won't press that motion.  We're not going to seek a

10   claims agent, even though that claims agent started making

11   service of things before there was ever any ruling on

12   whether or not there would be a claims agent.

13            This is not a Chapter 11 Southern District of New

14   York, Delaware bankruptcy case of a corporation with -- you

15   know, this is just not -- it's not that case.

16            So then we had a discussion, Mr. Despins, when you

17   came in and you said I would like to have a claims agent

18   because I'm concerned about the confidentiality of certain

19   proofs of claims and people are afraid to file proofs of

20   claims because they believe that the debtor will go after

21   them if they file proofs of claim.

22            And I said, okay, well -- I wanted to be clear

23   with Epic, because I talked about I don't -- then if that's

24   all they're doing, why do we have an indemnification

25   provision and all these other things?  We went through this.

1    So in any event, the order that was submitted, I

2    think goes a little further than what I thought was going to

3    happen, which is now I -- my understanding is that Epic is

4    serving pleadings in the case.  Not -- they're not just

5    maintaining a claims register with confidential claims, but

6    that they're serving different documents, and my

7    understanding is that, you know, they -- there's not really

8    any direction as to whom they should serve with what.

9    And my problem with that is, that I -- I'm

10   concerned with that.  I don't know who they're serving, and

11   they -- the other day we had a hearing where they didn't

12   file their certificate of service until after the hearing

13   started.  So that doesn't really help me.  I need to know

14   who's being served, and why, and when, and have the

15   certificate of service filed before a hearing, and that's

16   not happening.

17   Now, I didn't understand or appreciate that you

18   were having them serve anything, because I thought the whole

19   purpose of Epic was to maintain this confidential claims

20   register.  If you want them to serve things, then we need to

21   get that in order because the order as it exists right now,

22   are not -- is not clear on that.

23   I also think they need to serve things

24   differently, and they need to clean up their service list,

25   because they're serving people that already are represented

1  by counsel, and they served Paul Hastings four times with

2  things in the mail.  I don't understand that, and that's not

3  going to be compensated.  Okay?

4          This is a case where, as we all know, it's --

5  they're -- we're not going to incur administrative expenses

6  unnecessarily.  It's only going to -- it's not going to help

7  what everybody just said they want, which is a global

8  resolution of this case.

9          So, Mr. Despins, what I need you to do -- or

10  whomever, you know, with you, helping you, is you've got to

11  talk to Epic, and you've got to tell me exactly what they're

12  doing and how they're doing it, clean up the service list,

13  stop listing -- creating a document of people who get served

14  electronically.

15          Our local rules in every district court in the

16  United States and bankruptcy court local rule says, the

17  notice of electronic filing is the certificate of service.

18  I don't need that again.  That doesn't need to be another

19  page stuffed in an envelope for which they can get a copy --

20  and I'm not blaming them.  I'm not -- this isn't a blame --

21  I'm just saying, in this case, not happening.  We're

22  cleaning this up.  This needs to be cleaned up.

23          I need to understand what they're serving.  I need

24  to understand who are they taking direction from, if

25  anybody, and they should be.  They need to be taking either

1    direction from the clerk's office, or from the Court, or

2    from you.

3              And we -- or whomever files whatever.  I'm not

4    just talking about you.  I don't know what they're serving.

5    I don't know if they're serving other people's motions.  I

6    have no idea what they're doing, but it needs to be cleaned

7    up.

8              And we may need to figure out a process where -- I

9    don't know -- understand fully, but I mean, I think I

10   understand but I haven't seen -- that they must be creating

11   a confidential proof of claim register.  Fine.  That's fine.

12             But I need to know how many claims are being

13   filed, and there might need to be some kind of duplication

14   of that claims register for the clerk's office, because the

15   Court is supposed to maintain --

16             MR. DESPINS:  Yes.

17             THE COURT:  -- the record of the case.

18             MR. DESPINS:  Yes.

19             THE COURT:  Okay?  There's no problem with

20   sealing.  We've already done all that.  We agree, everything

21   is going to be under seal.  Our clerk's office needs --

22   knows how things work under seal.  They do it on a regular

23   basis, okay?

24             So this -- I need you to tell me by Tuesday at the

25   latest, if not before.  I want some kind of revised order

1    regarding the retention and appointment of Epic, and if

2    there -- are they just the claims agent, or are they the

3    noticing agent?

4              And if they are, then I want to know exactly

5    what they're noticing and how they're noticing it, and make

6    it very clear to them, they've got to clean up this service

7    stuff.

8              I'm not -- again, I'm not blaming them.  I'm just

9    telling you, this is a very specific issue in this case that

10   I do not want to have get out of control, and that's how

11   that's going to work.  All right?

12             Now it may be that they do have to serve

13   everything.  And so maybe Epic has to talk to the clerk of

14   the court before, you know, tomorrow and Monday, but they

15   have to do it in a manner that makes sense.  Okay?

16             And it may be that they have to serve everything,

17   and I don't know the answer to this yet, but -- because they

18   have that confidential claims register.  But they have to

19   work that out.  Everybody's making assumptions about things

20   and nobody really understands what everybody's doing, so we

21   need to fix that.  All right?

22             So I will -- we'll put this on the calendar on

23   Monday -- Tuesday, excuse me.  But if you submit an order

24   prior to that time, a revised order, and it makes sense,

25   then -- and I enter it, then you know we don't have to talk

1    about it on Tuesday, okay?

2         With regard to the -- so that's it on Epic.

3    Anybody have any questions?

4         MR. DESPINS:  I would just say, Your Honor, that I

5    have not, but my colleague, Mr. Bongartz has been in touch

6    with them daily, and I understand they have been in touch

7    with the clerk's office.  They only served the bar date

8    notice and the one order that -- I mean, I'll confirm that

9    -- but that the clerk's office had asked them whether it was

10   okay to --

11        THE COURT:  They served a notice of hearing too.

12   They did other things.  And they --

13        MR. DESPINS:  Okay.

14        THE COURT:  -- you just made me think of something

15   when you said that.  Now I lost it.  Now, I don't remember.

16        MR. DESPINS:  Well, we'll --

17        THE COURT:  In any event --

18        MR. DESPINS:  -- we'll fix it.

19        THE COURT:  We just need you --

20        MR. DESPINS:  We'll --

21        THE COURT:  We just need to fix it up, that's all.

22        MR. DESPINS:  Absolutely.

23        THE COURT:  Just, we need to fix it.

24        MR. DESPINS:  Absolute.  That's not an issue.

25        THE COURT:  That's all.  We just need to --

1          MR. DESPINS:  We will fix it, Your Honor.

2          THE COURT:  -- we just need to fix it.  Okay?  All

3     right.

4          Oh, I know what I was going to say.  Because the

5     services agreement attached to the application doesn't say

6     -- very -- if it said something about being a noticing

7     agent, it only says it as if it is their title, as opposed

8     to specifically delineating service of things.  Okay?

9          And I think they did that on purpose because Mr.

10    Despins said, hey, she doesn't want you doing all this

11    stuff.  She wants you to just do the claims register, and

12    they did you a favor, they -- you said, because they know

13    they don't know if they're going to get paid, and I

14    understand that.  I do understand that.

15         And so I think the servicing agreement may have

16    been different from ones they use in other cases.  They

17    might have crossed some stuff out and things like that.  But

18    just, somebody take a look at it and fix it.

19         MR. DESPINS:  And we'll report to the Court and

20    we'll see exactly what they'll do with respect to service,

21    or not do, and we'll do all of that.  Okay.

22         THE COURT:  Yeah.  I know, it's not a problem, but

23    I'm explaining to you how it needs -- I know it's going to

24    get fixed, but that's what you have to do, you have to fix

25    it.

1          MR. DESPINS:  Okay.

2          THE COURT:  Okay.  With regard to the proof of

3     claim issue, the reason I put that on the calendar today for

4     a status conference was because I didn't know what everyone

5     was going to argue with regard to this issue about the

6     proofs of claim that were filed and the objections to the

7     proofs of claim.  I've heard the arguments.  I'm overruling

8     the objections to the proofs of claim and allowing the

9     debtor to file an application to object to a proof of claim

10    in the future, which may or may not be granted.

11         The issue I have, though, if there is still an

12    issue with regard to the proof of claim process, is that Mr.

13    Cesaroni, I'm -- whatever that order is that comes out that

14    I just overruled these objections, you're going to have to

15    serve that on those claimants so they know they don't have

16    to file a response by February 17th.  I'm going to put that

17    in the order, okay?

18         MR. CESARONI:  Absolutely, Your Honor.

19         THE COURT:  So that they understand.  And my

20    concern -- not about that, okay.  My concern overall is,

21    it's January 26th, right, so we have a month left of proof

22    of claims.

23         And I have to tell you that I'm all considering --

24    and I will tell you on Tuesday whether I'm going to do

25    anything different.  But I'm considering extending that bar

1   date.  Whether I will or not, I don't know, and I'll give

2   you all the opportunity to tell me what you think about it

3   on Tuesday.  And that's the reason that I put this matter on

4   the calendar with all these other matters today.

5           This has to be a process that's fair, transparent,

6   and accurate and I don't want people to not file proofs of

7   claim for any reason, no matter what it may be, if they

8   believe they have a proof of -- a valid claim.

9           Now, their claim may not be valid ultimately, but

10  to -- I do not want there to be one possible perception that

11  people should not file proofs of claim.

12          If you want to go back and read *Stern*, Chief

13  Justice Roberts was very clear about the Supreme Court's

14  view of bankruptcy, which is it's a claims process.  And the

15  claims process should not be disturbed in any way, shape, or

16  form.  And so I'm telling you all now that I'm thinking

17  about that, and I'll let you all tell me what you think

18  about that on Tuesday.  Okay?

19          I am not ruling on anything.  I'm just concerned

20  given different issues that have been brought to the Court's

21  attention, and the evidence that's been submitted today,

22  quite frankly, in connection with this preliminary

23  injunction motion for contempt.

24          I'm not ruling on the contempt portion of the --

25  your motion today, Mr. Bassett.  I have to think about it.

1    I have to look at what you've submitted.  As you said, you

2    filed this last night at 10:00 or whatever.  I didn't see it

3    until now.  I've looked at it while we've talked about it,

4    but I have to go back and look at it.

5            I have to take into consideration some of the

6    things that Mr. Wachen said.  I mean, all the exhibits are

7    in.  I'm not suggesting anything to the contrary, but the

8    last -- the exhibit on the article, you know, I said I'd

9    give it whatever weight I think it's worth, right?  So I

10   have to think about that, and I will.

11           So what I'm going to do is continue the status

12   conference on both the Epic -- I'm looking at the courtroom

13   deputy now -- at the Epic matter and the proof of claim

14   matter to Tuesday as well.  Maybe one of them may  not go

15   forward if there's some kind of order on Epic before that.

16           On the bar date issue, I'm going to keep that on

17   the hearing because I'm going to -- no, I don't want anybody

18   filing any papers.  Okay?  I know what everybody's positions

19   are.  I don't need any papers.  I just want to hear what

20   your thoughts are on the bar date issue, on whether or not

21   the bar date should be further extended.  Okay?

22           And I think that takes care of everything for this

23   afternoon.

24           Did you have something, counsel?

25           MR. CANTOR:  Yeah.  May I be heard briefly, Your

1    Honor?

2              THE COURT:  Yes.

3              MR. CANTOR:  Thank you.  Daniel Cantor, Your

4    Honor, from O'Melveny on behalf of PAX.

5              Your Honor, PAX just wanted to express its sincere

6    and deep thanks for the Court's decision to send this case

7    to mediation, and for the process that it laid out in its

8    order.

9              We are very supportive of that process.  We think

10   it is exactly the right move at this point in the case.  PAX

11   intends to be an active participant in the mediation, it

12   intends to be a constructive presence, and will do what it

13   can to try and make all of this work.

14             We hope and are hopeful that the mediation will

15   succeed.  But for any mediation to succeed, the parties need

16   to trust and believe in the good faith of the parties that

17   they are negotiating with in that process.

18             You heard Mr. Cesaroni a moment ago, mention that

19   Mr. Kwok will participate in good faith in the mediation.

20   But frankly, Your Honor, it's a bit hard for PAX to believe

21   that it has a good faith negotiating partner in Mr. Kwok,

22   given the ongoing and very targeted campaign of harassment

23   against PAX, its executives, and its outside counsel.

24             For example, Your Honor, the demonstrations

25   outside of Mr. Sarnoff's house continue again this morning

1    with no respect and no recognition of the time, place, and

2    manner restrictions from Your Honor's preliminary injunction

3    order.

4            And earlier this month, Your Honor, Mr. Kwok's

5    supporters filed a completely friviolous lawsuit against --

6    law suits, I should say, against PAX and Mr. Shan (ph) and

7    O'Melveny and Mr. Sarnoff, claiming, among other things,

8    that they are unregistered foreign agents of the People's

9    Republic of China.

10           Your Honor, this has to stop.  But the cessation

11   of this campaign of harassment, Your Honor, it cannot be the

12   end goal, merely the end goal of the mediation.

13           It's not some sort of a bargaining chip to be

14   passed across the table in order to achieve something

15   through negotiation.  Rather, Your Honor, it is a necessary

16   -- an extremely important condition in order to create an

17   environment for productive negotiations.

18           And, Your Honor, Mr. Kwok knows this.  As Your

19   Honor heard during the preliminary injunction hearing, as

20   Your Honor noted in your decision on the preliminary

21   injunction motion, back in October, when the parties were

22   having discussions about a potential resolution of this

23   matter, Mr. Kwok broadcast to his supporters, calling on

24   his, quote, fellow fighters, friends of the New Federal

25   State of China, to stop doxing and harassing PAX's

1    executives, family members, and counsel.

2         And you heard in the hearing that it was

3    understood that that was necessary in order to -- for there

4    to be a chance to have a successful negotiation.

5         So, Your Honor, we just wanted to flag that as we

6    head towards the mediation process, a mediation process that

7    PAX truly hopes is going to result in a global resolution,

8    as you mentioned several times today, and ends the disputes

9    between the various parties and brings peace to this whole

10   process.  So we just wanted to express that, Your Honor.

11   Thank you very much.

12         THE COURT:  Thank you.  All right.

13         MR. DESPINS:  Your Honor.

14         THE COURT:  Mr. Despins?

15         MR. DESPINS:  I would just echo that, you know,

16   150 percent.  You know, and I'm saying this on my behalf, on

17   behalf of Paul Hastings and my family.  I don't see how we

18   can have constructive discussions when somebody is holding a

19   gun to our head.  So I'm not going to go further than that,

20   but I think that's a really important issue.  Thank you.

21         THE COURT:  Thank you.  And as noted, I noted it

22   in the preliminary injunction motion, that it was obviously

23   able to be accomplished back in October, and I would

24   certainly hope that the parties that are in this courtroom

25   would understand that there is a way to accomplish it again.

1    So you'll need to talk to Judge Tancredi about all those

2    issues.  Okay?

3            All right.  That concludes the hearings today, so

4    court is adjourned.

5            THE CLERK:  All right.  Court is adjourned.

6        (Proceedings concluded at 2:34 p.m.)

7        I, CHRISTINE FIORE, Certified Electronic Court Reporter

8    and Transcriber, certify that the foregoing is a correct

9    transcript from the official electronic sound recording of

10    the proceedings in the above-entitled matter.

11

12    *Christine Fiore*

13    _____        February 2, 2023

14        Christine Fiore, CERT

15            Transcriber

16

17

18

19

20

21

22

23

24