**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| HO WAN KWOK, *et al.* | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtors. | : | |
| | : | |

**INDIVIDUAL DEBTOR'S MOTION FOR STAY PENDING APPEAL OF ORDER**
**HOLDING HIM IN CONTEMPT OF CORPORATE GOVERNANCE ORDER**

Pursuant to Fed. R. Bank. P. 8007(a), the individual debtor, Ho Wan Kwok (the "Individual

Debtor"), by and through his undersigned counsel, Zeisler & Zeisler, P. C., respectfully moves for

a stay (the "Motion to Stay") pending appeal of this Court's January 24, 2023, Order Granting

Motion to Hold Debtor in Contempt of Corporate Governance Order (Doc. No. 1372, the

"Contempt Order"). The Individual Debtor filed a notice of appeal of the Contempt Order on

February 7, 2023. The Individual Debtor seeks a stay of the Contempt Order's enforcement

pending appeal so that the monetary sanctions imposed against him in the Contempt Order will

not accrue and the threat of further punishment, including imprisonment which the Trustee

desperately desires, will not hang over his head while he pursues appellate review. In support of

his Motion to Stay, the Individual Debtor respectfully states as follows.

## I.     INTRODUCTION

1.      The Individual Debtor has a substantial possibility of success on his appeal. The

order underlying the contempt finding is not clear and unambiguous as it must be to hold the

Individual Debtor in contempt for its violation. In particular, the portion of the order at issue in the

contempt proceeding does not identify in any way, let alone a particularized way, what the

Individual Debtor is required to do and to refrain from doing, but instead does nothing more than

incorporate a provision of the Bankruptcy Code and direct the Individual Debtor to "obey the law." The law is clear and settled that a statute cannot properly be made the basis of contempt proceedings merely by incorporating a reference to its terms into a court order. Thus, the Individual Debtor cannot be in contempt for his purported failure to comply with underlying order and the Motion for Stay should be granted. In addition, as detailed below, the Court made findings that are not supported by the evidence.

2.      A stay pending appeal should also enter because a stay is supported by the other factors that the Second Circuit balances when considering whether to grant such a stay. As demonstrated herein, (a) absent a stay, the Individual Debtor will be forced to face sanctions, with the probability that they will increase while his appeal is pending, or comply with the Contempt Order and moot his appeal even though the Individual Debtor is not in contempt; the balance of hardships therefore tips decidedly in the Individual Debtor's favor, (b) the Trustee will not suffer substantial injury if a stay is issued, and (c) the public interest supports a stay.

## II.      BACKGROUND

3.      On February 15, 2022 (the "Petition Date"), the Individual Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case.

4.      On July 7, 2022, the UST filed a notice appointing Luc A. Despins (the "Trustee") as Chapter 11 trustee (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515) seeking Court approval of the appointment of the Trustee. On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

5.      On July 23, 2022, the Trustee filed his Motion Of Chapter 11 Trustee For Entry Of Order, Pursuant To Bankruptcy Code Sections 363, 541, 1108, And 1505, (A) Confirming That Chapter 11 Trustee Holds All Of The Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 598).

6.      On August 10, 2022, this Court entered its Order, Pursuant To Bankruptcy Code Sections 363, 521, 541, 1108, And 1505, (A) Confirming That Chapter 11 Trustee Holds All Of The Debtor's Economic And Corporate Governance Rights In Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee To Act In Any Foreign Country On Behalf Of Estate, And (C) Granting Related Relief (Doc. No. 717, the "Corporate Governance Order"). Paragraphs 2 and 3 of the Corporate Governance Order provide in pertinent part:

> 2.      Effective as of entry of the order, dated July 8, 2022, granting the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523], the Trustee holds all of the Debtor's economic and governance rights, for the benefit of the Estate, with respect to all Debtor-Controlled Entities, including, without limitation, Genever (BVI). For the avoidance of doubt, the foregoing rights include the Trustee's asserted authority to replace any existing officer, director, manager, or similar person of the Debtor-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.
>
> 3.      In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to, respectively, (a) cooperate with the Trustee as necessary to enable the Trustee to perform his duties, including, without limitation, the Trustee's investigation into the assets of the Debtor, and (b) surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate (including, without limitation, his shares in Genever (BVI) and all related corporate governance documents). . . .

3

7.      Paragraph 3(a) of the Corporate Governance Order expressly directs the Individual Debtor to execute a share transfer instrument and director's resolutions for Genever BVI in the forms attached as Exhibit A to the Corporate Governance Order. The Individual Debtor thereafter executed the share transfer and director's resolutions for Genever BVI and they were provided to the Trustee.

8.      On August 31, 2022, the Trustee sent counsel for the Individual Debtor a letter requesting that the Individual Debtor (a) execute, and cause any nominee shareholder to execute, a share transfer instrument to transfer all of the Individual Debtor's shares in Ace Decade Holdings Limited ("Ace Decade") (including all shares beneficially owned by the Individual Debtor through any nominee shareholder) to the Trustee, and (b) execute and/or cause the director(s) of Ace Decade to execute a resolution approving such transfer of the shares in Ace Decade to the Trustee. The Trustee's August 31, 2022, letter provides that the share transfer instrument and related director's resolution shall be in the same form as the corresponding documents related to the shares of Genever (BVI), which were attached as Exhibit A to the Corporate Governance Order.

9.      On October 4, 2022, the Trustee filed his Motion of Chapter 11 Trustee For Entry Of Order Holding Debtor In Civil Contempt For Failure To Comply With Corporate Governance Rights Order (Doc. No. 913, the "Motion for Contempt"). The gravamen of the Motion for Contempt was the Individual Debtor's purported failure to cooperate with the Trustee in connection with the Trustee exercising corporate control over Ace Decade.

10.     On October 25, 2022, the Individual Debtor filed his Objection to the Motion for Contempt (Doc. No. 1026). In his Objection to the Motion for Contempt, the Individual Debtor argued, among other things, that paragraph 3 could not be the basis for a contempt finding. *See* Objection ¶14, at 9 ("The very broad relief provided for in paragraph 3 of the Corporate

Governance Order, which does nothing more than refer to and restate Bankruptcy Code section 521(a)(3) and (4), cannot be the basis for a contempt finding with respect to the action requested by the Trustee.").

11.    On November 10 and 11, 2022, the Individual Debtor attempted to comply with the Trustee's August 31, 2022, demand by (a) providing the Trustee with a fully executed (i) Share Transfer Instrument transferring all shares of Ace Decade in the Individual Debtor's name to the Trustee and (ii) Written Resolutions of the Sole Director of the Company [Ace Decade], *inter alia*, approving and effectuating the share transfer pursuant to the Share Transfer Instrument, and (b) sending a letter (the "Wang Letter") with a form of Share Transfer Instrument and Written Resolutions of the Sole Director of the Company [Ace Decade] to Ms. Yanping (Yvette) Wang in her capacity as sole director of Ace Decade. The Share Transfer Instrument and Written Resolutions of the Sole Director of the Company executed by the Individual Debtor and in the form sent to Ms. Wang as attachments to the Wang Letter were in the form demanded by the Trustee in the Trustee's August 31, 2022, letter.[1]

12.    The Court held a hearing on the Motion for Contempt on November 16, 17 and 18, 2022.

13.    In line with this Court's prior directives to the parties to work together to resolve disputes by agreement, in the days leading up to the hearing counsel for the parties engaged in discussions in an effort to find common ground and at least narrow the issues to be presented to the Court for decision. The discussions between counsel resulted in the filing of a proposed order

---

[1] The Wang Letter with the form of Share Transfer Instrument and Written Resolutions of the Sole Director of the Company as well as the Share Transfer Instrument and Written Resolutions of the Sole Director of the Company executed by the Individual Debtor and provided to the Trustee in advance of the November 16 hearing were introduced into evidence during the hearing on the Motion for Contempt without objection as [Individual] Debtor's exhibits, B, C and D respectively.

that would, if granted, narrow the issues for the Court's consideration during the hearing on the Motion for Contempt. The parties' proposed order was subsequently revised following discussion with the Court and on November 17, 2022, the Court entered an Order Regarding Partial Resolution of Trustee's Contempt Motion (Doc. No. 1110, the "Partial Resolution Order"). Pursuant to the Partial Resolution Order the Court found that certain facts related to the Individual Debtor's beneficial ownership and control of Ace Decade had been established and the Debtor did not contest and agreed that he would not appeal those findings. *See* Partial Resolution Order, at ¶1.

14.      On January 24, 2023, the Court entered the Contempt Order, finally deciding the discrete issues related to the Individual Debtor's obligations vis-à-vis Ace Decade under the Corporate Governance Order and holding the Individual Debtor in contempt for failing to comply with the Corporate Governance Order. In the Contempt Order, the Court found, among other things, that Ms. Yvette Wang is the nominee owner of Ace Decade, that the Debtor has control over Ms. Wang, and that the language of the Wang Letter does not fully support executing the share transfer instrument. *See generally*, Contempt Order, at 3-5.

15.      The Contempt Order focuses on paragraphs 2 and 3 of the Corporate Governance Order. The Court concluded that those paragraphs of the Corporate Governance Order are clear and unambiguous, and required the Individual Debtor "to cooperate with the Trustee regarding the Trustee's control of the Ace Decade Entities and also required the surrender of the Ace Decade Entities, ownership interests in the Ace Decade Entities, and corporate governance documents relating to the Ace Decade Entities." *Id.*, at 6-7. The Court held that "there is no fair ground of doubt that paragraph 2 of the Corporate Governance Order allows the Trustee to act of his own accord to assert control over corporate entities, including the Ace Decade Entities," but does not

require the Trustee to do so, *id.*, at 7, and speculated that "recourse to self-help may be in contravention of applicable non-bankruptcy law or existing corporate governance documents and could create legal problems for the Trustee." *Id.*, at 8. The Court then held that the Debtor violated paragraph 3 of the Corporate Governance Order by failing to cooperate with the Trustee by locating Ms. Wang and compelling turnover of her ownership interest in Ace Decade. *Id.*, at 9-12.

16.     The Contempt Order requires the Individual Debtor to purge himself of his contempt by 5:00 p.m. on March 6, 2023. *Id.*, at 15. The Contempt Order further provides that any failure to purge the contempt will result in the Individual Debtor being sanctioned the reasonable attorneys' fees and costs incurred by the Trustee in bringing the Contempt Motion, and threatens the possibility of further sanctions upon motion in order to secure compliance with the Corporate Governance Order. *See Id.*

## III.    ARGUMENT

17.     Fed. R. Bank. P. 8007(a)(1)(A) provides that "[o]rdinarily a party must move first in the bankruptcy court for … a stay of a judgment, order, or decree of the bankruptcy court pending appeal …."

18.     The Second Circuit has articulated the following four-prong test in determining whether to issue a stay of an order pending appeal: (a) whether there is a probability or possibility of success, or substantial probability or possibility of success, or serious legal questions going to the merits; (b) irreparable injury, balance of hardships tipping in favor of, or some injury to the movant if a stay is denied; (c) substantial injury to the party opposing a stay if one is issued; and (d) the public interest. *Mohammed v. Reno*, 309 F.3d 95, 100-01 (2d Cir. 2002); *see also United States v. Grote,* 961 F.3d 105, 122-23 (2d Cir. 2020) (standard is (1) whether a movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued,

(3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected); *Hirschfeld v. Bd. Of Elections of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (same).

19.     The "degree to which a factor must be present varies with the strength of the other factors, meaning more of one excuses less of the other." *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007) (citation and internal quotation marks omitted); *see also Mohammed*, 309 F.3d at 100-01 ("[W]e see considerable merit in the approach expressed by the District of Columbia Circuit: 'The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.' Applying that test, that Circuit has granted a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant, and has stated that a stay may be granted where the probability of success is 'high' and 'some injury' has been shown. As the Sixth Circuit has explained, 'The probability of success that must be demonstrated is inversely proportional to the amount of injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other.'" (citations omitted)); *In re Taub*, 470 B.R. 273, 278 (Bankr. E.D.N.Y. 2012) ("The requisite showing of substantial possibility of success is inversely proportional to the amount of injury [the movant] will suffer absent the stay.").

### a.  The Individual Debtor has a Substantial Possibility of Success on Appeal or, at the Very Least, there are Serious Legal Questions Going to the Merits

20.     It is axiomatic that a "bankruptcy court's contempt power, like that of a district court, is 'narrowly circumscribed.'" *PHH Mortg. Corp v. Sensenich (In re Gravel)*, 6 F.4th 503, 511 (2d Cir. 2021). *See also Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003) ("[O]ur review of a contempt order is more exacting than under the ordinary abuse-of-discretion standard because a district court's contempt power is narrowly circumscribed."). This is because "[t]he

judicial contempt power is a potent weapon." *Int'l Longshoreman's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). *See also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) ("[C]ivil contempt is a severe remedy …."); *In re Attorney General of U.S.*, 596 F.2d 58, 65 (2d Cir. 1979) ("[T]he court must not lightly invoke its contempt power."); *United States v. Wendy*, 575 F.2d 1025, 1030 (2d Cir. 1978) (recognizing that the "exercise of the contempt power is awesome in its implications."). Accordingly, "civil contempt 'should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Taggart*, 389 S. Ct. 1801 (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885) (emphasis in original)).

21.    "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict. More specifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King*, 65 F.3d at 1058 (citation omitted). *See also Vineyard Vines, LLC v. MacBeth Collection, LLC*, 2018 U.S. Dist. LEXIS 205502, *39 (D. Conn., Dec. 5, 2018) ("'[T]he moving party …bears the burden of establishing [these] three factors[.]") (quoting *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009)).

### i.   The Corporate Governance Order is Vague and Ambiguous with Respect to the Demand That was Made by the Trustee

22.    When the judicial contempt power "is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoreman's Ass'n*, 389 U.S. at 76. Accordingly, civil contempt usually is not appropriate unless "those who must obey [orders] will know what the court intends to require and what it means to forbid." *Id*. *See also Taggart*, 139 S. Ct. at 1802

("[P]rinciples of 'basic fairness require that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in contempt." (*quoting Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

23.     "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (internal citations and quotation marks omitted). *See also Federated Dep.'t Stores, Inc. v. Wongco (In re R.H. Macy & Co.)*, 236 B.R. 583, 592 (Bankr. S.D.N.Y. 1999) ("A finding of civil contempt requires a showing that there exists an enforceable order that is clear and specific which unambiguously commands such party to perform or refrain from performing in accordance with the order."); *Gucci Am. v. Bank of China*, 768 F.3d 122, 143 (2d Cir. 2014) ("[U]nless the parties can 'ascertain from the four corners of the order precisely what acts are forbidden,' the order cannot form the basis for contempt." (*quoting King*, 65 F.3d at 1058)); *Liberty Propane L.P. v. Feheley*, 522 Fed. Appx. 38, 39 (2d Cir. 2013) (vacating contempt order for failure to produce specific documents where underlying orders regarding production did not expressly require production of those specific documents); *Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F. Supp. 116, 121 (S.D.N.Y. 1996) (finding contempt inappropriate where order operated by reference to motion, and thus did not expressly set forth its requirements within the four corners of the order). "Furthermore, 'the longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.'" *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989) (quoting *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971)).

24.     Of particular relevance here, a statute cannot properly be made the basis of

contempt proceedings merely by incorporating a reference to its broad terms into a court order.

> A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past. But the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged. This Court will strike from an injunction decree restraints upon the commission of unlawful acts which are thus disassociated from those which a defendant has committed.

*NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941). *See also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 195-96 (1949) (Frankfurter, J. and Jackson, J., dissenting) ("[T]his Court has indicated again and again that a statute cannot properly be made the basis of contempt proceedings merely by incorporating a reference to its broad terms into a court order."); *New York, N.H. & H.R. Co. v. Interstate Commerce Com.*, 200 U.S. 361, 404 (1906) ("In other words, the proposition is that by the effect of a judgment against a carrier concerning a specific violation of the act, the carrier ceases to be under the protection of the law of the land and must thereafter conduct all its business under the jeopardy of punishment for contempt for violating a general injunction. To state the proposition is, we think, to answer it. … The requirement of the act to regulate commerce that a court shall enforce an observance of the statute against a carrier who has been adjudged to have violated its provisions, in no way gives countenance to the assumption that Congress intended that a court should issue an injunction of such a general character as would be violative of the most elementary principles of justice. … To accede to the doctrine relied upon would compel us, under the guise of protecting freedom of commerce, to announce a rule which would be destructive of the fundamental liberties of the citizen."); *Perez v. Ohio Bell Tel. Co.*, 655 Fed. Appx. 404, 410-11 (6th Cir. 2016) ("The prohibition on overbroad or vague injunctions is deeply rooted in equity.

The Supreme Court has warned against 'sweeping injunction[s] to obey the law' and has cautioned courts about their 'duty to avoid' such orders. *Swift & Co. v. United States*, 196 U.S. 375, 401, 25 S. Ct. 276, 49 L. Ed. 518 (1905). The warning followed from the Supreme Court's emphasis that 'defendants ought to be informed, as accurately as the case permits, what they are forbidden to do.' *Id.* … Most importantly, a broad injunction requiring a party to obey the law would require 'that courts … give effect in contempt proceedings to an order of such breadth.' *Id.* 'The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one.' *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S. Ct. 201, 19 L. Ed. 2d 236 (1967).”); *S.C. Johnson & Son, Inc. v. Clorox Co*., 241 F.3d 232, 240-41 (2d Cir. 2001) (“Under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law. To comply with the specificity and clarity requirements, an injunction must be specific and definite enough to apprise those within its scope of the conduct that is being proscribed. This rule against broad, vague injunctions is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing.” (internal citations and quotation marks omitted)); *Hughey v. JMS Dev. Corp*., 78 F.3d 1523, 1531 (11th Cir. 1996) (“[A]ppellate courts will not countenance injunctions that merely require someone to ‘obey the law.’ Broad, non-specific language that merely enjoins a party to obey the law or comply with an agreement … does not give the restrained party fair notice of what conduct will risk contempt. Because of the possibility of contempt, an injunction must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law.” (internal citations and quotation marks omitted)); *Louis W. Epstein Family Partnership v. Kmart Corp*., 13 F.3d 762, 771 (3d Cir. 1994) (“Broad, non-specific language that merely enjoins a party to obey the law or comply with

12

an agreement … does not give the restrained party fair notice of what conduct will risk contempt."); *SEC v. Sky Way Global, LLC*, 710 F. Supp. 2d 1274, 1292 (M.D. Fla. 2010) ("[A]n abundance of precedent rejects an injunction framed entirely in the broad terms of the statutory language."); *Cuviello v. City of Oakland*, 2009 U.S. Dist. LEXIS 26067, [*9] (N.D. Cal. March 19, 2009) ("[C]ontempt may be issued against a party only if it is violation of a specific and definite order. That there must first be a specific and definite order is dictated by Federal Rule of Civil Procedure 65(d), which provides that 'every order granting an injunction must … state its terms specifically' as well as 'describe in reasonable detail … the act or acts restrained or required.' Notably, courts have held that not only vague injunctions but also injunctions that simply require a defendant to 'obey the law' fail to comply with Rule 65(d).").

25.    Paragraph 3 does not, as the Court states, "require[] the [Individual] Debtor's cooperation with the Trustee in locating the [Individual] Debtor's nominee, Ms. Wang, and in effectuating turnover of her ownership interest in Ace Decade." Contempt Order, at 9. *See also*, *id.,* at 11 ("The Debtor is required by the clear terms of paragraph 3 to cooperate with the Trustee as necessary to realize the assertion of control and possession over the Ace Decade Entities for the benefit of the Estate, . . ."). Indeed, paragraph 3 says nothing whatsoever about Ms. Wang or Ace Decade, but broadly and generally requires the Debtor to cooperate with the Trustee in accordance with section 521(a)(3) and 521(a)(4) of the Bankruptcy Code. The Individual Debtor cannot be held in contempt for purportedly failing to comply with such a broad and general directive.

26.    The Trustee, whose counsel drafted the Corporate Governance Order, knows how to draft an order with the necessary specificity to put the Individual Debtor on notice of what is required of him. Indeed, in paragraph 3(a) of the Corporate Governance Order the Trustee detailed what the Individual Debtor was required to do to facilitate the transfer of Genever BVI, an

Individual Debtor-Controlled Entity, as that term is defined in the Corporate Governance Order, to the Trustee, and attached to the Corporate Governance Order the documents that the Trustee was requiring the Individual Debtor to complete and execute to facilitate the Genever BVI transfer. The Trustee could have included that same, or any, level of detail with respect to Ace Decade, an entity that he knew at that time he would seek to exercise control over, but chose not to and as a result the Individual Debtor cannot be held in contempt for purportedly violating the exceedingly general requirement to cooperate with the Trustee, an obligation that exists independent of the Corporate Governance Order within section 521 of the Bankruptcy Code and for which other remedies are available for failure to comply. *See* Contempt Order, at 10 ("Given the close resemblance of the text of the Bankruptcy Code and the explicit cite to section 521 in the Corporate Governance Order, it is clear and unambiguous that paragraph 3 should be read similarly broadly.").

27.    Moreover, the Court's holding with respect to paragraph 2 of the Corporate Governance Order underscores its lack of clarity. The Individual Debtor argued in opposition to the Motion for Contempt that pursuant to paragraph 2 of the Corporate Governance Order the Trustee became the holder of all of the Individual Debtor's governance and economic rights in any Debtor-Controlled Entities, upon his appointment, and the Court agreed. *See* Contempt order, at 7 ("The Court agrees with the Debtor that there is no fair ground of doubt that paragraph 2 of the Corporate Governance Order allows the Trustee to act of his own accord to assert control over corporate entities, including the Ace Decade Entities."). *See also*, *Id.*, at 10 ("Therefore, the Trustee holds the Debtor's economic and governance rights with respect to the Ace Decades Entities in furtherance of his duties to the Estate."). Yet, the Court then held that the Debtor was supposed to understand based on the incorporation of Bankruptcy Code section 521 into paragraph

14

3 of the Corporate Governance Order, and on pain of contempt, that the specific authority granted in paragraph 2 of the Corporate Governance Order was elective and merely provided the Trustee one method among several for asserting control over Ace Decade. To reiterate the controlling law in the Second Circuit, the issue on contempt is whether an order "leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058. The Corporate Governance Order, or at least those sections at issue, utterly fail to meet this strict standard.

28.     Holding the Individual Debtor in contempt based on his purported violation of paragraph 3 of the Corporate Governance Order constitutes clear error.

## ii.    The Individual Debtor Diligently Attempted to Comply

29.     The Court found that the Individual Debtor has control over Ms. Wang. The Court based this finding on Trustee's Exhibits 29 and 30. Exhibit 29 is an e-mail string from late 2016 and Exhibit 30 is an e-mail string from mid-2017. In those e-mails, Ms. Wang indicated that in some fashion she took direction from the Debtor. The Trustee presented no evidence that the Individual Debtor has any control over Ms. Wang today.

30.     While the Trustee presented no evidence that the Individual Debtor has any ability to control Ms. Wang today, and although the Corporate Governance Order does not expressly require the Individual Debtor to take any action vis-à-vis Ace Decade, as noted above, in an effort to cooperate with the Trustee the Individual Debtor (a) provided the Trustee with a fully executed (i) Share Transfer Instrument transferring all shares of Ace Decade in the Individual Debtor's name to the Trustee, and (ii) Written Resolutions of the Sole Director of the Company [Ace Decade], *inter alia*, approving and effectuating the share transfer pursuant to the Share Transfer Instrument, and (b) sent the Wang Letter attaching forms of the same documents to Ms. Wang in her capacity

15

as sole director of Ace Decade. The Court criticizes the Individual Debtor for the wording of the Wang Letter, but the Individual Debtor had to word the letter in such a way so as to not represent to Ms. Wang that he owned or controlled Ace Decade because, as memorialized by the Corporate Governance Order, he did not as the Trustee had succeeded to his corporate rights. Thus, the Individual Debtor had to walk a fine line between requesting that Ms. Wang take certain actions while not violating the Corporate Governance Order by holding himself out as owning or controlling ACE Decade. In addition, at the November 18 hearing the Individual Debtor through counsel made clear that he would send a different letter if the Trustee or the Court specified what should be in such a letter. *See* November 18, 2022, Transcript of Motion to Seal; Motion for Entry of Order Holding Debtor in Civil Contempt for Failure to Comply with Corporate Governance Rights Order and Motion of Chapter 11 Trustee for Entry of Order Compelling Individual Debtor, Mei Gui (sic), HK International Funds Investments (USA) Limited LLC, Hing Chi Ngok, Greenwich Land LLC, Lamp Capital LLC and Cold (sic) Spring (New York) LTR (sic) to Comply with Rule 2004 Subpoenas Before the Honorable Julie A. Manning United States Bankruptcy Judge ("Nov. 18 Tran."),  at 90:9-11.

31.     The efforts undertaken by the Individual Debtor to cooperate with the Trustee by executing certain corporate documents, requesting Ms. Wang do the same, and negotiating an order to streamline the Contempt Hearing were not undertaken in bad faith. Indeed, it appears that the primary basis for the Court's conclusion that the Debtor acted in bad faith is the timing of his efforts to cooperate with the Trustee. Contempt Order, at 13. The Debtor should not be punished for making an effort to comply with the incredibly broad mandate of paragraph 3 of the Corporate Governance Order before the hearing on the Motion for Contempt, and then agreeing to streamline

the hearing by resolving a substantial issue pre-hearing when the Trustee refused to accept his compliance.

32.     Parties often resolve contested issues and even full cases shortly before a hearing or trial. Indeed, this Court has encouraged the parties to work together to find negotiated solutions to various issues since the Trustee was appointed, and was complementary of the parties for working out the Partial Resolution Order:

> 25.     THE COURT: Okay. Hearing nothing, I have
> 1.      reviewed the order. I have to say that I see that it is
> 2.      progress without question, and that the parties are working
> 3.      together to try to resolve many of the issues that are the
> 4.      subject of the contempt motion.

November 16, 2022, Transcript of Motion for Joint Administration with 22-50073; Motion for Order (I) Setting Bar Dates of Filing Proofs of Claim; (ii) Approving Form of Notice of Bar Dates and (iii) Granting Related Relief; Motion of Chapter 11 Trustee for Entry of Order Holding Debtor in Civil Contempt for Failure to Comply with Corporate Governance Rights [Order]; Application to Employee Neubert, Pepe & Monteith and Motion for Joint Administration with 22-50592 Before the Honorable Julie A. Manning United States Bankruptcy Judge, at 43:25-44:4.

33.     The Individual Debtor is at a loss to understand how the same act could be viewed by the Court as laudatory and undertaken in bad faith.

34.     The Individual Debtor has not acted in bad faith and there is simply no basis to shift the burden to him to prove by clear and convincing evidence that the Corporate Governance Order is unclear and ambiguous, even if such burden shifting was permissible, a proposition that is not fully supported by *Taggart v. Lorenzen*.[2] Nevertheless, even if the burden of persuasion was shifted to the Individual Debtor he has satisfied that burden.

---

[2] *Taggart* does not expressly shift the burden of persuasion in contempt proceedings to the alleged contemnor when the contemnor has proceeded in bad faith, instead noting that the contemnor bears

17

35.     The Individual Debtor's possibility of success is substantial and as a result the remaining factors do not have to weigh heavily in his favor to obtain a stay, *see McCue*, 503 F.3d 167, at 170 ("[The] degree to which a factor must be present varies with the strength of the other factors, meaning more of one excuses less of the other."), but they do.

### b. The Individual Debtor Will Likely Suffer Irreparable Injury Absent a Stay and the Balance of Hardships Tip in Favor of the Individual Debtor

36.     Absent a stay, the Individual Debtor will likely suffer irreparable injury, or at the very least, the balance of hardships tips in his favor.

37.     The Individual Debtor is not suggesting that the imposition of monetary sanctions alone constitutes irreparable harm, but the Court has made clear that further sanctions could issue, and the Trustee has made clear to the Individual Debtor that the Trustee will seek the Individual Debtor's incarceration which would deprive the Individual Debtor of his liberty and constitute quintessential irreparable harm. *See* Nov. 18, Tran., at 103:10-15; *Hardy v. Fischer*, 701 F. Supp. 2d 614, 619 (SDNY 2010) ("Alleged violations of constitutional rights are commonly considered irreparable injuries for purposes of a preliminary injunction.") (citations omitted); *Cobb v. Green*, 574 F. Supp. 256, (W.D. Mich. 1983) (court finds irreparable harm where finding of contempt for failure to pay child support could lead to incarceration and notes that "[t]here is no adequate remedy at law for a deprivation of one's physical liberty").

---

the risk that his acts and actions will be within the scope of the order at issue and subject him to contempt. *Taggart*, 139 S. Ct. 1795, at 1802 ("Thus, in *McComb*, we explained that a party's 'record of continuing and persistent violations' and 'persistent contumacy' justified placing 'the burden of any uncertainty in the decree . . . on [the] shoulders' of the party who violated the court order.") (ellipsis and brackets in original, *quoting McComb*, 336 U.S. 187, at 192-93)). *McComb* likewise does not hold that the burden of persuasion shifts to a contemnor who has purportedly acted in bad faith. *McComb*, at 336 U.S. at 192. Indeed, the most logical reading of *Taggart's* reference to the contemnor bearing the burden of uncertainty is to a shift in the general rule that "ambiguities and omissions in orders redound to the benefit of the person charged with contempt," *Drywall Tapers, Local 1974*, 450 F.2d 279, at 280, not a shift in the burden of persuasion.

38.     The Individual Debtor is thus faced with the choice of purging himself of what he believes is a wrongful contempt finding by this Court, having the contempt finding stand, and likely mooting his appeal, *see Legacy Healthcare, LLC v. New York (In re Legacy Healthcare, LLC)*, 09-CV-1102A; 09-CV-1103A, 2010 U.S. Dist. LEXIS 98329, * (W.D.N.Y., Sept. 20, 2010) (staying order pending appeal to avoid mooting appeal and causing irreparable harm), or facing ever increasing sanctions as his appeal remains pending and the Trustee inevitably moves for further contempt sanctions. Under these circumstances the Individual Debtor will suffer irreparable harm absent a stay pending appeal and the balance of the hardships thus tip decidedly in the Individual Debtor's favor.

### c.   The Trustee Will Not Suffer Substantial Injury Upon a Stay

39.     The granting of the Motion for Stay will not result in any prejudice to the Trustee. The Court has already provided the Trustee with all of the corporate authority he needs to effectuate a transfer of Ace Decade and the Trustee is fully aware of the process to facilitate the transfer of a BVI entity to his name because he has already transferred Genever BVI to his name. Moreover, the Trustee has retained BVI counsel to represent him in this case.

40.     There may be some delay in the transfer of Ace Decade, but that delay could have been avoided if the Trustee had simply exercised the rights this Court granted him at his request shortly after his appointment. Regardless "[a] mere assertion of delay does not constitute substantial harm." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003).

### d.   The Public Interest Supports a Stay

41.     The public interest militates in favor of a stay. "The judicial contempt power is a potent weapon," *Int'l Longshoreman's Ass'n.* 389 U.S. 64, at 76, that should not be lightly invoked. *In re Attorney General of U.S.*, 596 F.2d 58, at 65. The public has a keen interest in fully

understanding the types of orders for which contempt citations may issue, and whether those orders must be narrow and specific, or can be broad and general such as the Corporate Governance Order.

42.    Denying the Individual Debtor's Motion has the potential to moot the Individual Debtor's appeal and thereby deny the public further review of the Contempt Order and a decision as to whether the Corporate Governance Order, and in particular paragraph 3, is too broad and general to support a finding of contempt. Such a decision will enlighten other bankruptcy case participants as to the necessity of narrowly tailored orders, and whether the cooperation requirements of Bankruptcy Code section 521(a) can be incorporated into an order and thereafter form the basis for a finding of contempt. *See McComb*, 336 U.S. 187, at 195-96 (Frankfurter, J. dissenting) ("[T]his court has indicated again and again that a statute cannot properly be made the basis of contempt proceedings merely by incorporating a reference to its broad terms into a court order.") (citations omitted)

43.    Accordingly, the Individual Debtor respectfully submits that it is in the public's interest for this Court to stay the Contempt Order to allow the Individual Debtor to obtain meaningful appellate review.

## IV.    CONCLUSION

44.    For the reasons set forth above, this Court should (a) issue a stay of the Contempt Order pending the Individual Debtor's appeal thereof and (b) grant the Individual Debtor such other and further relief as justice requires.


Dated at Bridgeport, Connecticut on this 1st day of March, 2023.

THE INDIVIDUAL DEBTOR,
HO WAN KWOK

By:*/s/ James M. Moriarty*
Eric Henzy (ct12849)
James M. Moriarty (ct21876)
John L. Cesaroni (ct29309)
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-548
Email: ehenzy@zeislaw.com
           Jmoriarty@zeislaw.com
           jcesaroni@zeislaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of March, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By:    */s/ James M. Moriarty*
       James M. Moriarty (ct21876)