**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

------------------------------------------------------x
:
In re:                                                              :      Chapter 11
                                                                    :
HO WAN KWOK, *et al.*,                          :      Case No. 22-50073 (JAM)
                                                                    :
                            Debtor.[1]                    :      (Jointly Administered)
                                                                    :
------------------------------------------------------x

**TRUSTEE'S OBJECTION TO INDIVIDUAL DEBTOR'S MOTION
FOR STAY PENDING APPEAL OF ORDER HOLDING HIM IN
<u>CONTEMPT OF CORPORATE GOVERNANCE ORDER</u>**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") appointed in the chapter 11 case of Ho Wan Kwok (the "<u>Debtor</u>"), files this objection (the "<u>Objection</u>") to the *Individual Debtor's Motion for Stay Pending Appeal of Order Holding Him in Contempt of Corporate Governance Order* [Docket No. 1492] (the "<u>Motion to Stay</u>").[2] In support of this Objection, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  For more than six months now, the Trustee has attempted to obtain the Debtor's cooperation to effectuate the transfer ownership of Ace Decade Holdings Limited ("<u>Ace Decade</u>") and its wholly owned subsidiary, Dawn State Limited ("<u>Dawn State</u>" and, together with Ace Decade, the "<u>Ace Decade Entities</u>") to the Trustee. Unable to secure the Debtor's

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Capitalized terms used but not defined in this Objection have the meanings set forth in the Motion to Stay.

cooperation, as required by the Corporate Governance Order, to obtain full ownership and control of the Ace Decade Entities, the Trustee sought and obtained the Contempt Order, which gave the Debtor one last opportunity to come into compliance with the Corporate Governance Order by March 6, 2023 before sanctions would be triggered. In response to the Contempt Order, the Debtor has remained defiant—instead of finally complying with the Corporate Governance Order and transferring ownership of the Ace Decade Entities, the Debtor has appealed the Contempt Order and sought a stay pending appeal of such order.

2.     While the Debtor is, of course, free to appeal the Contempt Order, the Court should deny the Motion to Stay for what it is: the latest ploy to delay compliance with this Court's clear directives to effectuate the transfer of an undisputed estate asset, *i.e.*, Ace Decade, to the estate—all for the obvious purpose of impeding the Trustee's efforts to investigate and recover assets for the estate and imposing ever-increasing costs on the estate along the way.

3.     The Motion to Stay does not even come close to satisfying the standard for a stay pending appeal. To obtain a stay, the Debtor must establish (i) a substantial likelihood of success on the merits, (ii) that he will suffer irreparable injury if a stay is denied, (iii) that there will be no substantial injury to the party opposing a stay if one is issued, and (iv) that a stay would be in the public interest. The Debtor cannot satisfy any one of these factors, much less show that, on balance, they entitle him to a stay pending appeal.

4.     <u>First</u>, the Debtor's appeal of the Contempt Order has virtually no likelihood of success. The Court has already carefully considered and rejected the Debtor's argument that the Corporate Governance Order is somehow vague and ambiguous. This conclusion is not altered by the case law cited by the Debtor for the proposition that the violation of a court-issued injunction does not give rise to contempt sanctions if the injunction incorporates broad statutory

language of general character. *See* Motion to Stay at 10-13. This case law merely reflects one special subset of cases where the relevant language—*i.e.*, non-specified or generic statutory provisions—was not sufficiently clear and unambiguous to serve as the basis for contempt sanctions. Contrary to the Debtor's suggestion, there is no absolute rule that adopting statutory language into an order automatically precludes contempt sanctions for violation of such order.

5.  Here, the Court correctly concluded that paragraph 3 of the Corporate Governance Order (which adopts language from section 521(a)(3) and (4) of the Bankruptcy Code) leaves no ambiguity as to what is required by the Debtor—namely, effectuating the transfer of Ace Decade to the Trustee. But even if the Corporate Governance Order were somehow ambiguous (which it is not), it is undisputed that no ambiguity exists in the **Contempt Order** as to what actions the Debtor needed to take on or before March 6, 2023 to avoid sanctions.

6.  Similarly, the Court should reject the Debtor's argument that the Contempt Order will likely be reversed on appeal because the Debtor supposedly diligently attempted to comply with the Corporate Governance Order. For one, the Court's findings regarding the Debtor's non-compliance, including his bad faith conduct, are reviewed for clear error—a high bar under the circumstances. In any event, the Debtor's arguments as to his purported compliance with the Corporate Governance Order rely on numerous mischaracterizations of the record and the Court's findings in the Contempt Order. For example, contrary to the Debtor's assertion, the Court did not base its conclusion that the Debtor has control over Ms. Wang solely on two emails from late 2016 and mid-2017. Instead, the Court based its conclusion on the entire record before it, including the fact that the Debtor exclusively beneficially owned and controlled the Ace Decade Entities as of the appointment of the Trustee and that Ms. Wang currently is the Debtor's nominee shareholder of Ace Decade. Nor is there any support for the Debtor's convoluted

argument (raised for the first time in the Motion to Stay) that the Debtor did not give explicit instructions in his letter to Ms. Wang to transfer the shares in Ace Decade because he was purportedly concerned about *violating* the Corporate Governance Order if he held himself out as owning or controlling Ace Decade.  Nothing in the Debtor's letter to Ms. Wang, or the rest of the record, suggests that the Debtor was motivated by such concerns when he wrote the letter.  Rather, as the Court correctly recognized, the Debtor's letter makes clear that he "does not fully support executing the share transfer instrument" to the Trustee.  Contempt Order at 4.  For these and the additional reasons discussed below, the Debtor has failed to show that his appeal is likely to succeed on the merits, and, accordingly, the Motion to Stay should be denied on this basis alone.

7. <u>Second</u>, the Debtor cannot establish that he will suffer irreparable injury absent a stay.  If the Debtor does not comply with the Contempt Order, he will face monetary sanctions, which, as a matter of black letter law (and as the Debtor acknowledges) cannot constitute irreparable harm.  To support his assertion of irreparable harm, the Debtor speculates that the Trustee could, in the future, request additional sanctions, including incarceration, and that such future sanctions constitute irreparable harm.  However, the possibility of future sanctions is not irreparable harm—and the Debtor cites no authority for this rather absurd proposition.  At this time, no request for further sanctions has been made, and if such a request were to be made in the future, the Debtor will have every opportunity to oppose such request.  Regardless, the ultimate arbiter of whether any additional sanctions should be imposed is this Court, not the Trustee.

8. <u>Third</u>, further delaying the transfer of ownership of and control over Ace Decade to the Trustee will cause substantial harm to the Trustee and this estate.  As the Court is well aware, Ace Decade and Dawn State are co-plaintiffs in the Debtor's pending litigation against

UBS in the English courts (the "UBS Litigation"), the largest identified asset on the Debtor's schedules. In order for the Trustee to be able to steer the course of that litigation (including in as it relates to any potential settlement), the Trustee must have full corporate control over the Debtor's co-plaintiffs, *i.e.*, Ace Decade and Dawn State, which the Debtor advocates the Trustee does not have at this time (as discussed in paragraph 11 below).

9.     The Trustee's current lack of full control over these entities is materially harming the estate because they are refusing to cooperate with the Trustee. For example, Ace Decade has vigorously opposed the Trustee's efforts to gain access to the Debtor's privileged documents related to the UBS litigation in the possession of the Debtor's UK counsel, Harcus Parker Limited ("UK Counsel"). While, as detailed below, the English courts have ultimately rejected virtually all of Ace Decade's arguments (including its argument that any joint-privilege among the Debtor, Ace Decade, and/or Dawn State somehow precludes the Trustee from gaining access to the Debtor's privileged documents), Ace Decade's obstructionism has come at a price: months-long delay and substantial legal expense. Given Ace Decade's track record so far, the Trustee has every reason to believe that it will continue to obstruct the Trustee's efforts to obtain documents from UK Counsel and to control the UBS litigation for the benefit of this estate.

10.     Moreover, it is (to be charitable to the Debtor) unclear who, if not the Debtor (or someone under his control), has been directing and funding Ace Decade's quest to impede the Trustee's access to the Debtor's documents and take control of the UBS litigation. It is particularly troubling that much of Ace Decade's obstructionism occurred *after* November 17, 2022, *i.e.*, the date this Court entered the Partial Resolution Order, at which point the Debtor had agreed not to contest the finding that the Trustee now beneficially owns Ace Decade. Put

5

differently, on what basis and at whose direction has Ace Decade been continuing to take actions directly contrary to the interests of its current beneficial owner, *i.e.*, the Trustee?

11.  Only a few days ago, the Debtor posted a video on his Gettr account (the "March 1, 2023 Video") thumbing his nose at the Trustee by saying the Trustee is not capable of settling the UBS Litigation because the Trustee does not have control over Ace Decade and Dawn State—which is exactly why the Stay Motion should not be granted:

> I guess when Luc was asking UBS Switzerland for money
> UBS told him: "You can kick Miles Guo out of the case"
> "but Ace Decade and Dawn State"
> "have nothing to do with Miles Guo"
> "How can you guarantee the dismissal of the case?"
> In other words, if UBS decided to pay Luc
> How could Luc manage to close the case for good?
> He is not capable of doing so[3]

This statement demonstrates the Debtor's continued disregard for this Court's orders, both the uncontested Partial Resolution Order, which found that Ace Decade and Dawn State are now beneficially owned by the Trustee and the Corporate Governance Order, which requires him to transfer corporate control of Ace Decade and Dawn State to the Trustee.

12.  Fourth, the public interest strongly weighs in favor of not staying the Contempt Order. The Debtor has had plenty of opportunity to comply with the Corporate Governance Order, including during the six-week period between the entry of the Contempt Order (on January 24, 2023) and the deadline for the Debtor to purge himself of contempt (*i.e.*, March 7, 2023). Nor is this Court writing on a blank slate; the Debtor has repeatedly shown a willingness to disregard the Court's orders in this case, including orders compelling him to produce documents and orders instructing him to stop interfering with the bankruptcy process. The Court

---

[3] The March 1, 2023 Video can be viewed at https://gettr.com/post/p2a84wc2639. The quoted excerpt of the March 1, 2023 Video is at time stamp 1:31 to 1:50.

also has the benefit of the experience of Judge Ostrager who has presided over five years of "evasive and contemptuous acts" by the Debtor, and has concluded that the Debtor has "knowingly and intentionally violat[ed] Court orders."[4] There could not be a better description of why the public interest factor weighs heavily in favor of the Trustee here.

## BACKGROUND

13. On October 4, 2022, the Trustee filed the Contempt Motion [Docket No. 913] seeking entry of an order holding the Debtor in contempt for failing to comply with the Corporate Governance Order, namely the Debtor's failure to effectuate the transfer of his ownership interest in Ace Decade to the Trustee.

14. On October 25, 2022, the Debtor file his objection to the Contempt Motion [Docket No. 1026], and, on November 14, 2022, the Trustee filed his reply in further support of the Contempt Motion [Docket No. 1092].

15. On November 17, 2022, the Court entered the Partial Resolution Order, pursuant to which the Court made the following findings, among others:

> 1. The Court hereby finds that (i) the Debtor exclusively beneficially owned and controlled Ace Decade Holdings Limited ("Ace Decade") on the February 15, 2022 petition date (the "Petition Date") and maintained such exclusive beneficial ownership and control up to and including immediately prior to the date of the Trustee's appointment, and (ii) Dawn State Limited ("Dawn State" and, together with Ace Decade, the "Ace Decade Entities") is Ace Decade's wholly-owned subsidiary and is exclusively owned and controlled by Ace Decade. For the avoidance of doubt, Yanping "Yvette" Wang is not and has never been a beneficial owner of the shares in Ace Decade or Dawn State. The Debtor does not contest the findings in this paragraph and will not appeal such findings.
>
> 2. The Debtor represents that he has never transferred or purported to transfer any ownership or control of Ace Decade to any other person

---

[4] Decision & Order on Motion, *PAX v. Kwok*, 652077/2017 (N.Y. Sup. 2020), ECF No. 1181 ("Final Contempt Order") at 7, 10.

7

or entity since the Petition Date. Accordingly, the Court further finds that, but for the Trustee's appointment and his rights under the Bankruptcy Code and the Corporate Governance Rights Order, the Debtor would still exclusively beneficially own and control Ace Decade as of the date of this order. The Debtor does not contest the findings in this paragraph and will not appeal such findings.

16. The Partial Resolution Order did not resolve the entirety of the Trustee's Contempt Motion, including as it related to the Debtor's obligation, under the Corporate Governance Order, to cause the transfer of Ace Decade to the Trustee.

17. The Court held an evidentiary hearing on the Contempt Motion on November 16, 17, and 18, 2022, including as it relates to the unresolved portion of the Partial Resolution Order.

18. On January 24, 2023, the Court entered the Contempt Order [Docket No. 1372] finding the Debtor in civil contempt and imposing sanctions (in the form of reasonable attorneys' fees and costs that the Trustee has had to incur in pursuing compliance with the Corporate Governance Order as it relates to the Ace Decade Entities) in the event he fails to purge himself of contempt on before 5:00 p.m. on March 6, 2023.

19. For additional background on the Debtor's non-compliance with the Corporate Governance Order, the Trustee refers to the factual findings set forth in the Contempt Order.

## ARGUMENT

20. For the Contempt Order to be stayed pending appeal, the Debtor must show he has satisfied the four-prong test set out by the Second Circuit in *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002): "[1] the likelihood of success on the merits, [2] irreparable injury if a stay is denied, [3] substantial injury to the party opposing a stay if one is issued, and [4] the public

interest."[5]  The Debtor fails establish any of these factors, much less show that they collectively weigh in his favor.

## I. Debtor Cannot Demonstrate a Likelihood Of Success On Merits

21.    To satisfy the likelihood of success prong of the standard for a stay pending appeal, the movant must make "a strong showing that he is likely to succeed on the merits." *In re Cacioli*, 302 B.R. 429, 431 (Bankr. D. Conn. 2003) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987) (noting the factors governing stays pending appeal as "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies)).[6]  The Debtor falls far short of meeting this standard.

### A. Corporate Governance Order Is Not Vague and Ambiguous as it Relates to Debtor's Obligation to Transfer Ace Decade to Trustee

22.    In the Contempt Order, the Court concluded that the Corporate Governance Order is clear and unambiguous and that there is no fair ground of doubt as to its meaning.  There is no basis to conclude that an appellate court would disturb that ruling—let alone that the Debtor will likely succeed on the merits of his appeal.  In fact, virtually all arguments raised by the Debtor in his Motion to Stay were previously raised in his objection to the Contempt Motion and *rejected* by this Court in the Contempt Order.

---

[5]  The "degree to which a factor must be present varies with the strength of the other factors, meaning more of one [factor] excuses less of the other." *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007) (citation and internal quotation marks omitted) (alterations in original).

[6]  Some other courts in the Second Circuit have articulated slightly modified standards in analyzing motions for stay pending appeal. *See, e.g.*, *In re Country Squire Assoc. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. BAP 1996) ("(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected."). Here, Debtor fails under both standards.

23. In particular, this Court already considered and rejected the argument that paragraph 3 of the Corporate Governance Order is vague and unambiguous. In this regard, the Court concluded that: "[t]here is no fair ground of doubt that paragraph 3 requires the Debtor's cooperation with the Trustee in locating the Debtor's nominee, Ms. Wang, and in effectuating turnover of her ownership interest in Ace Decade," Contempt Order at 9; "[t]he Debtor is required by the clear terms of paragraph 3 to cooperate with the Trustee as necessary to realize this assertion of control and possession over the Ace Decade Entities for the benefit of the Estate," *Id.* at 10-11; and "[t]here is no fair ground of doubt . . . that the Debtor is required to surrender to the Trustee the Ace Decade Entities, including the ownership interests in the Ace Decade Entities and corporate governance documents related to the Ace Decade Entities." *Id.* at 11.

24. Similarly, the Court also considered and rejected the argument that paragraphs 2 and 3 of the Corporate Governance Order are somehow in tension such that obligations in the paragraph 3 are somehow ambiguous. There simply is no conflict. Indeed, as the Court explained, paragraph 2 and 3 complement each other: while paragraph 2 confirms the Trustee's *de jure* control over the Debtor's economic and governance rights with respect to all Debtor-Controlled Entities (as defined in the Corporate Governance Order), that control is not necessarily self-effectuating and, therefore, requires the Debtor to turn over *de facto* possession and control—which is exactly what paragraph 3 is intended to accomplish. Contempt Order at 12. Simply put, paragraph 2 sets forth the Trustee's legal rights as it relates to Debtor-Controlled Entities, while paragraph 3 imposes obligations on the Debtor to cooperate with the Trustee and surrender property of the estate in order for the Trustee to be able to realize those rights.

25. In his Motion to Stay, the Debtor also argues that the violation of a court-issued injunction does not give rise to contempt sanctions if the injunction incorporates broad statutory language of general character. *See* Motion to Stay at 10-13. However, the cases cited by the Debtor in support of that proposition do not change anything about this Court's analysis in the Contempt Order. These cases merely affirm the general rule that non-specific, generic injunctions cannot form the basis for contempt sanctions. *See, e.g.*, *Louis W. Epstein Family Partnership v. Kmart Corp.*, 13 F. 3d 762, 771 (3d Cir. 1994) ("Broad, non-specific language that merely enjoins a party to obey the law or comply with an agreement . . . does not give the restrained party fair notice of what conduct will risk contempt."). Contrary to the Debtor's suggestion, there is no absolute rule that adopting statutory language into an order automatically precludes contempt sanctions for violation of such order.

26. Here, while the Corporate Governance Order tracks the statutory language of sections 521(a)(3) and 521 (a)(4) of the Bankruptcy Code, that language forms a proper basis of the contempt ruling. As the Second Circuit observed in *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir.2001), "under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law. . . . To comply with the specificity and clarity requirements, an injunction must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" (internal citation omitted). To be clear, "[c]ases like *S.C. Johnson* do not prohibit courts from ordering parties to obey the law, but rather require that such orders be specific and clear." *Ligon v. City of N.Y.*, 925 F. Supp. 2d 478, 539 n. 455 (S.D.N.Y. 2013).

27. The Corporate Governance Order is sufficiently specific to apprise the Debtor of what conduct would risk contempt. *See United States v. Miller*, 588 F.2d 1256, 1261 (9th Cir.

1978) ("the mere fact that the injunction is framed in language almost identical to the statutory mandate does not make the language vague" so long as "the statutory terms adequately describe the impermissible conduct").  The Corporate Governance Order makes clear that the Debtor was required to surrender property of the estate and any documents related to property of the estate.  In fact, the Corporate Governance Order provides even further context for the actions required by the Debtor, stating that such property includes "without limitation, his shares in Genever (BVI) and all related corporate governance documents."  Corporate Governance Order ¶ 3.  It cannot legitimately be argued that the Debtor was unaware he would also have to transfer his interest in other corporate entities he owns, such as Ace Decade.

28.     Moreover, the Corporate Governance Order must be read in the context of this chapter 11 case.  Courts recognize that "[t]here may be circumstances when obey-the-law injunctions are justified by the facts of the case in which the injunction is sought." *Perez v. Ohio Bell Tel. Co.*, 655 Fed. Appx. 404, 412 (6th Cir. 2016).  Such provisions "of that generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949); *see U.S. v. Philip Morris USA Inc.*, 566 F.3d 1095, 1138 (D.C. Cir. 2009) (stating injunction requiring defendant to "avoid making false statements or committing racketeering acts: the manufacturing, marketing, promotion, health consequences, and sale of cigarettes, along with related issues that [d]efendants have reason to know are of concern to cigarette consumers" is "not a generalized injunction to obey the law . . . These injunctions may be broad, but breadth is warranted to prevent further violations where[, as here,] a proclivity for unlawful conduct has been shown.") (quotations omitted).

29. In this case, the Trustee's appointment arose out of the concern that the Debtor did not appropriately manage the estate and that a chapter 11 trustee ought to be appointed to investigate the assets of the Debtor. A similar concern, namely the Debtor's track record of hiding his assets from creditors in a maze of corporate entities, more than justified the breadth of the Corporate Governance Order so as to ensure that ***all*** of Kwok's property interests would be surrendered to the Trustee.

30. For these reasons, it is irrelevant that the Corporate Governance Order does not specifically mention Ace Decade. Because it is undisputed that the Debtor was the beneficial owner of Ace Decade at the time of the Trustee's appointment, the Debtor was obligated to take the necessary steps to surrender that ownership interest to the Trustee. Similarly, there is no significance to the fact that Ms. Wang is not specifically named in the Corporate Governance Order. Putting aside that the Debtor didn't even disclose that she was the nominee shareholder until his deposition less than a week before the hearing on the Contempt Motion, the Debtor's obligation to turn over property of the estate to the Trustee cannot possibly turn on the identity of the nominee shareholder of Ace Decade or any other Debtor-Controlled Entity. It would be absurd to allow the Debtor to escape complying with the clear directives of this Court merely because those directives did not specify the names of unknown nominee shareholders that the Debtor selected for the very purpose of obscuring his ownership interests.

31. In sum, while paragraph 3 of the Corporate Governance Order may be broad, it ***is*** specific: it requires the Debtor to, among other things, "surrender to the Trustee ***all*** property of the estate." Corporate Governance Order ¶ 3. The breadth of the Court's directive does ***not*** mean that it is ambiguous, such that the Debtor was not on fair notice of what conduct would result in the imposition contempt sanctions. But even if the Corporate Governance Order were

somehow ambiguous (which it is not), there is clearly no ambiguity (and the Debtor doesn't assert there is any) in the Contempt Order as to what actions the Debtor is required to take on or before March 6, 2023 to avoid the imposition of sanctions.

B.   <u>Debtor Did Not Diligently Attempt to Comply</u>

33. The Court should also reject the Debtor's attempt to re-argue the Debtor's alleged compliance with the Corporate Governance Order. The Court has already considered and rejected all these arguments, finding that the Debtor did *not* comply with his obligations and, worse, acted in bad faith by feigning compliance. Contempt Order 14-15. The Debtor fails to demonstrate that an appellate court would reverse the Court's factual findings in that regard.

33. As noted, the Debtor's arguments as to his purported compliance with the Corporate Governance Order rely on numerous mischaracterizations of the record and the Court's ruling in the Contempt Order. <u>First</u>, contrary to the Debtor's assertion, the Court did not base its conclusion that the Debtor has control over Ms. Wang solely on two emails from late 2016 and mid-2017. Instead, the Court's conclusion was based on the entire record before it, including the fact that the Debtor exclusively and beneficially owned and controlled the Ace Decade Entities as of the appointment of the Trustee and that Ms. Wang currently is the Debtor's nominee shareholder of Ace Decade. Contempt Order at 4.

34. <u>Second</u>, neither the Debtor's executed share transfer instrument (which purported to transfer all shares in Ace Decade to the Trustee) nor the Debtor's executed written resolution as sole director of Ace Decade (which purported to authorize the transfer of Ace Decade shares to the Trustee) comply with the Corporate Governance Order because neither document has legal effect. The Debtor is *not* the nominee shareholder of Ace Decade, nor is he a director of Ace Decade. In each case, the relevant party who needs to execute these documents is Ms. Wang, a fact that the Debtor well understands. In short, these executed documents are worthless.

14

35. <u>Third</u>, the Debtor's letter to Ms. Wang also does not constitute compliance with the Corporate Governance Order. The Court has already set forth the numerous reasons as to why this letter was a mere subterfuge, including:

- The Debtor failed to sufficiently establish that the letter was delivered to Ms. Wang, Contempt Order at 14;

- The letter, if delivered at all, was dilatory, coming a month after the Contempt Motion was filed, *id.*;

- The letter, if delivered at all, was not sent in a reasonable manner, including because the letter contains no address, there is no post-mark, there is no acknowledgment of receipt, and the Debtor does not even know which of his bodyguards allegedly personally delivered the letter, *id.* at 14-15;

- Because of the lack an address, the letter also obscures the location of Ms. Wang from the Trustee, who has been unable to serve her with a subpoena, *id.* at 13; and

- The language in the letter signals to its reader that the Debtor does not fully support executing the share transfer instrument, *id.* at 4.

36. <u>Fourth</u>, there is no support for the Debtor's convoluted argument (raised for the first time in the Motion to Stay) that the Debtor did not give explicit instructions to Ms. Wang to transfer the shares in Ace Decade because he was purportedly concerned about ***violating*** the Corporate Governance Order if he held himself out as owning or controlling Ace Decade. Nothing in the Debtor's letter to Ms. Wang, or the rest of the record, suggests that the Debtor was motivated by such concerns when he wrote the letter.

37. <u>Fifth</u>, there is no inconsistency between, on the one hand, the Court commending the parties for reaching a consensual resolution on the Partial Resolution Order shortly before the hearing on the Contempt Motion and, on the other hand, the Court faulting the Debtor for sending a dilatory letter to Ms. Wang more than a month after the Motion for Contempt had been filed. Contrary to the Debtor's assertion, these two acts are not the "same act." Motion to Stay

15

¶ 33. The former represents an effort by the parties to narrow the issues and reach a consensual resolution. The latter represents an effort by the Debtor to feign compliance with the Corporate Governance Order, while, in reality, taking no steps to actually effectuate the transfer of Ace Decade to the Trustee, as required by the Corporate Governance Order (and, at the same time, obscuring the location of Ms. Wang to impede the Trustee's efforts to serve her with a subpoena).[7]

38. For all these reasons, the Debtor has failed to show that his appeal is likely to succeed on the merits.

## II. Debtor Will Not Suffer Irreparable Injury Absent a Stay

39. The Debtor fails to articulate any *actual* irreparable injury he will allegedly suffer absent a stay. In fact, the Debtor acknowledges that the monetary sanctions under the Contempt Order do *not* constitute irreparable injury. Instead, he claims that he will, in future, suffer irreparable harm if and when additional sanctions are sought and imposed. However, there is no legal support (and the Debtor offers none) that the possibility of future sanctions constitutes irreparable harm. At this time, no request for further sanctions has been made, and if such a request were to be made in the future, the Debtor will have every opportunity to persuade the Court that no further sanctions should be issued.

---

[7] The Debtor also makes a half-hearted attempt to suggest that this Court erred, as a legal matter, that a finding of bad faith shifts the "burden of persuasion" as to whether the Corporate Governance Order is unclear and ambiguous to the Debtor. Motion to Stay ¶ 34 n.2. However, the Court did not suggest that the "burden of persuasion" shifted. Instead, and consistent with *Taggart v. Lorenzen ex rel. Brown*, 139 S. Ct. 1795 (2019), the Court merely observed that "if a reviewing court were to find the Corporate Governance Order is unclear, the burden of that uncertainty is not upon the Trustee, but upon the Debtor, on account of the Debtor's bad faith." Contempt Order at 13. The point here simply is that, in light of the Debtor's bad faith, the Debtor bears the risk that his action (or inaction) comply with the Corporate Governance Order or not.

### III. Trustee Will Suffer Substantial Injury If Stay is Granted

40. As noted, the Trustee has been attempting for six months now to obtain control over Ace Decade (and its wholly-owned subsidiary Dawn State). During this time, the Trustee had to incur substantial expense fending off Ace Decade's vigorous opposition to the Trustee's efforts to obtain access to the Debtor's privileged documents from UK Counsel. Clearly, in order for the Trustee to be able to direct the course of that litigation (including in as it relates to any potential settlement), and to avoid the delay and costs resulting from Ace Decade's obstructionism, the Trustee must have full corporate control over the Debtor's co-plaintiffs, *i.e.*, Ace Decade and Dawn State.

41. These are no mere hypothetical concerns. To date, Ace Decade has opposed the Trustee's efforts in the English courts at every turn. Among other things:

- On November 3, 2022, Ace Decade's counsel sent a letter to Trustee's counsel regarding the Trustee's application in the English courts for (a) recognition of this chapter 11 case as a foreign main proceeding and (b) access to the Debtor's privileged documents related to the UBS litigation in possession of the Debtor's UK Counsel, *i.e.*, Harcus Parker (the "Recognition Application"). The letter sought to cast doubt on the Trustee's ability to seek relief in the English courts including because of the Debtor's pending appeals of (i) the order denying the Debtor's motion to vacate the appointment of the Trustee and (ii) the order directing the Debtor to send a letter his UK counsel directing the release of UBS-related documents to the Trustee. The letter also asserted, without elaboration, that the Trustee's request to gain access to the Debtor's privileged documents was contrary to English law. As a result of Ace Decade's letter, the hearing on the Trustee's application was adjourned from November 7, 2022 to December 20, 2022.

- On December 9, 2022, Ace Decade filed a witness statement attaching 600 pages of supposed "evidence" for its positions—evidence consisting primarily of court documents from this chapter 11 case—but offering no further elaboration on its legal theories as to why the pending appeals of unstayed orders of this Court would affect the Trustee's ability to seek recognition in the UK or why the Trustee's request for access to Debtor's privileged documents should be denied.

17

- On December 17, 2022, *i.e.*, three days prior to the December 20, 2022 hearing on the Recognition Application, Ace Decade submitted its "skeleton" argument explaining, for the first time, its legal position in opposition to the Recognition Application.  Among other things, Ace Decade argued that the Trustee was not entitled to access documents subject to the Debtor's privilege to the extent such privilege was jointly held by the Debtor, Ace Decade, and/or Dawn State.

- At the December 20, 2022 hearing, Ace Decade's counsel argued in opposition to the Trustee's request to obtain access to the Debtor's privileged documents in possession of UK Counsel relating to the UBS litigation.

- Following the hearing, Ace Decade continued to oppose the Trustee at virtually every turn.  For example, after the English court had advised the parties that it would rule in favor of the Trustee, counsel for Ace Decade, rather than working cooperatively with counsel the Trustee in drafting the form of order (as is common practice in England), contacted the English court directly to express its opposition to the Trustee's proposed form of order and to request a follow-up hearing to determine certain ancillary matters, including Ace Decade's request for the reimbursement of more than £60,000 in legal fees.

42. Ultimately, on January 24, 2023, the English court issued its order ***granting*** the Trustee's Recognition Application in all respects, including directing UK Counsel to provide the Trustee with access to all of the Debtor's documents relating to the UBS litigation, regardless of any claim by Ace Decade and/or Dawn State to joint privilege.  The English court provided only for one narrow exception: Ace Decade and Dawn State were given the opportunity to identify, by March 31, 2023, documents as to which they claim sole privilege, with any dispute in that regard to be decided by the English court.

43. The foregoing illustrates the real and substantial delay and costs resulting from Ace Decades obstructionism to date, which will likely continue unless the Trustee obtains effective corporate control over Ace Decade now.  The balance of hardship thus clearly tips in favor of not granting the Motion to Stay.

## IV. <u>**Public Interest Weighs Against a Stay**</u>

44. The only public interest that the Debtor raises in support of his requested stay is that the public has a "keen interest in fully understanding the types of orders for which contempt citations may issue, and whether those orders must be narrow and specific, or can be broad and general." Motion to Stay ¶ 41. That interest, however, would already be served by the appeal and does not require a stay pending appeal, unless the appeal were to be moot in the absence of a stay. But mootness is not a real concern here because if this Court were to impose monetary sanctions, an appellate court could still grant effective relief in the event of reversal of the Contempt Order, namely the return of moneys paid. In fact, the only scenario in which mootness could occur is if the Debtor purges himself of contempt by finally transferring ownership of Ace Decade to the Trustee—and, of course, if the Debtor purges himself of contempt in this manner, he will necessarily be acknowledging that the directives of the Corporate Governance Order and Contempt Order he is challenging are *not* unclear and overbroad.

45. The real public interest at stake here is ensuring that debtors comply with the directives of bankruptcy courts to cooperate with a chapter 11 trustee by turning over property of the estate. The Debtor voluntarily filed for chapter 11 to avoid pending actions to collect debts of the Debtor. There is no public interest in allowing the Debtor to use this Court as a shield from his creditors, while working tirelessly to obfuscate his assets, so that he can continue to live the life of a billionaire. As Judge Ostrager noted "[i]f billionaire litigants can simultaneously seek to use Court process[es] in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of law." Final Contempt Order at 10. The public interest dictates allowing the Trustee to expediently do his work, in the UBS Litigation and elsewhere, so that creditors can be paid as soon as possible.

Dated: March 6, 2023  LUC A. DESPINS,
      New Haven, Connecticut  CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*
    Douglas S. Skalka, Esq. (ct00616)
    Patrick R. Linsey, Esq. (ct29437)
    NEUBERT, PEPE & MONTEITH, P.C.
    195 Church Street, 13th Floor
    New Haven, Connecticut 06510
    (203) 821-2000
    dskalka@npmlaw.com
    plinsey@npmlaw.com

      *and*

    Nicholas A. Bassett, Esq. *(pro hac vice)*
    PAUL HASTINGS LLP
    2050 M Street NW
    Washington, D.C., 20036
    (202) 551-1700
    nicholasbassett@paulhastings.com

      *and*

    G. Alexander Bongartz, Esq. *(pro hac vice)*
    Douglass Barron, Esq. (*pro hac vice*)
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, New York 10166
    (212) 318-6000
    alexbongartz@paulhastings.com
    douglassbarron@paulhastings.com

    *Counsel for the Chapter 11 Trustee*