# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# BRIDGEPORT DIVISION

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No: 22-50073 (JAM) |
| HO WAN KWOK,<br><br>　　　　　　Movant,<br><br>v.<br><br>LUC A. DESPINS,<br>CHAPTER 11 TRUSTEE<br><br>　　　　　　Respondent. | |

## DECLARATION OF MEI GUO

I, Mei Guo, hereby declare:

1. I am in receipt of the Trustee's Rule 2004 subpoena directed to me (the "Subpoena") in the above matter. I make this declaration in order to demonstrate my compliance with the Subpoena, and in response to the Court's March 10, 2023 Order (ECF No. 1537), holding me, together with HK International Funds Investments (USA) Limited, LLC ("HK USA"), in contempt and issuing sanctions for purported discovery violations with respect to the Subpoena and subsequent Court Orders.

2. In submitting this declaration, I hope that the Court will understand that it has never been my intention to avoid discovery obligations, and I have worked to produce documents responsive to the Subpoena since receipt of the Subpoena.

3. It is important for the Court to understand my lived experiences, which are helpful to explain why I am in possession of relatively few documents responsive to the Subpoena.

## BACKGROUND

4. The debtor, Kwok Ho Wan, is my father. He has been a political target of the Chinese Communist Party ("CCP") for years. My father fled mainland China and, ultimately, Hong Kong to the United States in early 2015 after learning that the CCP was going to arrest him on politically motivated charges.

5. The CCP took my father's refusal to submit to the false charges out on my mother, my extended family, and me.

6. Just days after my father arrived in the United States, representatives of the CCP detained my mother and me for approximately 10 days. I alone was detained a second time in or about December 2016 for approximately 40 days. During each of those detentions, my communications with my family were cutoff, and I was physically and psychologically tortured.

7. For example, I was kept awake for 48 hours at a time, monitored every minute of every day, and prohibited from physically moving, using the bathroom, or even brushing my hair, without the permission of my jailers.

8. Following my release, my father remained an outspoken critic of the CCP and its many abuses. His criticisms continued to anger Chinese authorities. In or about April 2017, a high-ranking Chinese official told my mother and me that we would be permitted to briefly visit my father in the United States if we could convince him to stop exposing the CCP's corruption and return to China.

9. On May 16, 2017, I traveled from China to the United States with my mother accompanied by the high-ranking Chinese official and several Chinese security agents. My mother

and I were bargaining chips. During that visit, the high-ranking Chinese official was unable to coerce my dad to return to China. My mother and I disregarded the Chinese official's demands that we return to China, and remained in the United States. I feared being re-arrested and tortured again in China, and am presently seeking political asylum in the United States.

### MY EXPERIENCE IN DETENTION HAS LEFT ME SCARED, DISTRUSTFUL AND IN CONSTANT FEAR OF THE CCP

10. Although removed from the immediate dangers of living in China, I am not beyond the reach of the CCP and its agents. Indeed, I am regularly the subject of threats on social media, and am forced to live in constant fear for my safety.

11. Among other things, my experience with the CCP, and the torture I suffered while I was in my mid-twenties, has drastically altered how I interact with the world, including the technology and means of communication that I utilize.

12. During my first detention experience in January 2015, the CCP took possession of my then existing email accounts. Since my initial release from CCP detention on or about January 20, 2015, I have not had access to any email account that I utilized prior to that time. After my first detention, I did not use email as a means of communication for years, in fear of the CCP tracking and harassing me.

13. After I was released from detention a second time in early 2017, my relationship with technology was further changed due to constant CCP monitoring. After I was released from CCP detention, I had to contact the CCP every evening and provide them with my exact location.

14. Even after seeking asylum in the United States, I live in constant fear of the CCP, and am cautious with every interaction I have with technology for fear of the CCP tracking my whereabouts and harassment.

15. These fears were realized when I first came to the United States in 2017. I was the

victim of multiple cyber-attacks, which I believe were orchestrated by the CCP. During one such attack, I received thousands of telephone calls per day as well as pornographic pictures to my phone. During other attacks, I've had my cellphone infiltrated and pictures and personal information posted to the internet, including my passport information. These attacks have sent a clear message – even though I am outside of China, I am not outside the reach of the CCP.

## RULE 2004 SUBPOENA

16. On August 19, 2022, I was served with the Trustee's Rule 2004 Subpoena, and thereafter served timely objections to the document requests attached to the Subpoena, asserting objections to certain of the enumerated Instructions and Definitions included with the requests for production, as well as objections to certain of the requests for production.

17. On or about October 28, 2022, the Trustee filed a motion seeking among other things, to compel compliance with the Subpoena.

18. I responded to that motion on November 14, 2022, and explained the efforts I had undertaken to respond to the Subpoena. (ECF No. 1090).

19. Specifically, I explained that after receiving the subpoena, I searched my email and text messages, and provided my then lead counsel, with copies of text messages I located related to the Lady May, including my text messages with the captain of the Lady May. I also provided copies of non-disclosure agreements with the crew of the Lady May, and produced numerous emails and draft agreements related to the loan transaction with Himalaya International Financial Group Limited ("Himalaya") that were in the possession of my counsel who negotiated the transaction.

20. Additionally, upon receipt of the Subpoena, I reached out to my attorneys, including former counsel, and asked them to search for corporate documents and communications responsive to the Subpoena.

21. As I explained in my November 14, 2022 opposition to the motion to compel, the only documents I withheld from production, based on what I understood to be valid objections regarding the breadth of the Subpoena, as well as my own security concerns, related to my personal assets. As my counsel wrote at the time: "Other than documents related to their personal assets, HK USA and Ms. Guo have not withheld any responsive documents. HK USA owns the Lady May and nothing more so documents related to its assets were produced." (ECF No. 1090).

22. Indeed, HK USA and I produced over two-thousand pages in response to the Subpoena.

23. A hearing in connection with the Trustee's motion to compel was held on November 30, 2022.

24. On January 20, 2023, the Court entered an Order granting the Trustee's motion in part (the "January 20 Order") (ECF #1353).

25. Relevant to the Subpoenas, the January 20 Order directed that:

Mei Guo and HK (USA) shall, by 5:00 p.m. on January 31, 2023, search for and produce to the Trustee:

(i) documents responsive to the Trustee's requests, except as to the documents that concern the Lady May, dated June 1, 2014, or later, unless a particular request specifies a different time period and such time period does not begin before June 1, 2014;

(ii) documents responsive to the Trustee's requests, except as the documents concern the Lady May, as to both assets the Debtor acknowledges he owns and assets that allegedly belong to persons or entities other than the Debtor, including without limitation his family members, including Mei Guo herself, and associated entities, including HK (USA) itself; and

5

  (iii) documents responsive to the Trustee's requests that are within their custody, possession, or control, except as to the documents that concern the Lady May, including without limitation documents in the files of their current or former counsel and other agents and advisors, unless such documents have already been produced by their current or former counsel and other agents and advisors but without consideration of any potential future production by their current or former counsel and other agents and advisors.

(ECF #1353).

  26. Upon receipt of the January 20 Order, I began taking steps to confirm my compliance with the Subpoena, which I believed I had already largely complied with based on my prior search and review for documents responsive to the Subpoena. Indeed, because I had already produced documents responsive to the Subpoena, other than those relating to my personal assets, I knew there would only be a small number of responsive documents, but nonetheless began searching for hard copy records and conducting an inventory of electronic records.

### ACTIONS TAKEN TO COMPLY WITH THE SUBPOENA AND ORDER

  **A. Electronic Devices**

  27. First, I understand that the Court has questioned "what electronic documents/devices are in [my] custody, possession, and control." (ECF No. 1537).

  28. I have one laptop computer, which I have used for several years. I do not use a tablet or other similar device.

  29. The only other electronic device in my possession is my cell phone from which I access the messaging applications WhatsApp and Telegram.

  **B. Email Review**

  30. I currently have access to three email accounts. I understand that the Court has requested some clarity regarding these email accounts. These three email addresses are the only email addresses that I have access to. As set forth above, I have not had access to the email

6

accounts I used prior to my detention since my release. Moreover, since my release, I have sought to limit my email correspondence, and all written correspondence, as much as possible to avoid issues with CCP monitoring and hacking.

31. When I first received the Subpoena, I searched all three email addresses for documents responsive to the Subpoena.

32. I created the email account XXXXXX1989@gmail.com in or around January 30, 2021 to communicate with my attorneys at Chiesa Shahinian & Giantomasi with respect to the Lady May and the contempt proceedings before the Supreme Court of New York. I reviewed every single email in this account, together with counsel, and confirmed that this email account contains no non-privileged emails or documents responsive to the Subpoena.

33. I created the email account XXXXXX22@gmail.com in or around April 2022 for purposes of communicating with Zeisler & Zeisler, P.C. Again, I reviewed every email in this account, together with my attorneys, and confirmed that this email account contains no non-privileged emails or documents responsive to the Subpoena.

34. My third email account is 1@XXXXXXXX.com, which was created in or around September 2019. I consider this email account my primary email account that I use for personal and work matters. To be clear, however, as set forth above, email is not my preferred means of communication. Generally, most of my communications occur by phone or through in-person communications.

35. While I searched this account for responsive documents upon initial receipt of the Subpoena, on February 20, 2023, I provided my counsel with unfettered access to the 1@XXXXXXXX.com email account to run searches and review documents potentially responsive to the Subpoena.

36. With counsel, we specifically ran search terms intended to be responsive to the Trustee's requests in the Subpoena, and performed searches for the following terms: "Ho Wan Kwok," "Miles Kwok," "Miles Guo," "Guo Wengui," "Guo Haoyun," "Qiang Guo," "Mileson Kwok," "Hing Chi Ngok," "Hing Chi Ng," "Yue Qingzhi," "Daniel Podhaskie," "Jason Miller," "Steve Bannon," "Karin Maistrello," "Melissa Francis," "William Gertz," "Arethusa Forsyth," "Glenn Mellor," "Jennifer Mercurio," "Eduardo Eumekian," "Han Chunguang," "Qu Guojiao," "Qu Guo Jiao," "Guo Lijie," "Zhang Wei," "Lihong Wei Lafrenz," "Sara Wei," "Hao Haidong," "Ross Heinemeyer," "Max Krasner," "Kyle Bass," "Melissa Mendez," "Ya Li," "Dinggang Wang," "An Hong," "Yvette Wang," "Yanping Wang," "Yan Ping Wang," "Fiona Yu," "Je Kin Ming," "William Je," "Yu Jianming," "Yaz Qingua," "Lao Jiang," "Jiang Yunfu," "Jiang Yunfu Be," "Nod Hill LLC," "AAGV Limited," "ACA Investment Management Limited," "ACA Capital Group Limited," "Ace Decade Holdings Limited," "AI Group Holdings Inc.," "Alfa Global Ventures Limited," "Alfonso Global Limited," "Allied Capital Global Limited," "Alpine Fiduciaries SA," "Anton Development Limited," "Assets Sino Limited," "Auspicious Coast Limited," "Beijing Pangu Investment Co.," "Beijing Pangu Investment Co. Ltd.," "Beijing Pangu Investment Inc." "Beijing Zenith Holdings Company Limited," "Bravo Luck," "BSA Strategic Fund I," "China Golden Spring (Hong Kong) Limited," "Golden Spring," "Chuang Xin Limited," "Crane Advisory Group LLC," "Creative Apex Investments Limited," "Crystal Breeze Investments Limited," "Dawn State Limited," "Eastern Profit Corporation Limited," "Elite Well Global Limited," "Empire Growth Holdings," "G Club Operations LLC," "G Fashion LLC," "G News LLC," "GETTR USA," "Genever Holdings Corporation," "Genever Holdings LLC," "GFASHION MEDIA GROUP INC.," "GFNY, Inc.," "Globalist International Limited," "GNews Media Group Inc.," "Golden Spring (New York) Ltd.," Greenwich Land LLC," "Guo Media,"

8

"GTV Media Group, Inc.," "Hamilton Capital Holdings Inc.," "Head Win Group Limited," "Henan Yuda," "Himalaya Embassy," "Himalaya Exchange," "Himalaya Federal Reserve," "Himalaya Supervisory Organization," "HK International Funds Investments (USA) Limited LLC," "Hong Kong International Funds Investments Limited," "Infinite Increase Limited," "Infinitum Developments Limited," "Insight Phoenix Fund," "Lamp Capital," "Leading Shine," "Leading Shine NY," "Long Gate Limited," "Next Tycoon Investments Limited," "New Federal State of China," "Noble Fame Global Limited," "Rosy Acme Ventures Limited," "Rule of Law Foundation III," "Rule of Law Foundation IV," "Rule of Law Fund," "Rule of Law Society," "Rule of Law Society IV," "G-Translators PTY," "Saraca Media Group," "Shiny Ace Ltd." "Shiny Times Holdings Ltd.," "Spirit Charter Investment Limited," "Stevenson, Wong & Co.," "Voice of Guo Media, Inc.," "Well Origin Ltd.," "World Century Limited," "Worldwide Opportunity Holdings Limited," "Whitecroft Shore," and "ZIBA Limited."

37.  After applying these search terms, I discovered a single email reflecting transfers from Leading Shine, one of my businesses, to my separate business that I began in the United States, and which is entirely unrelated to my father.

38.  I understand that the Court has questioned the search terms applied, and specifically that "[t]here are no names of endearment or names denoting familiarity listed among the search terms."

39.  These searches were run with counsel after I had initially reviewed my email account in response to the Subpoena. I would like to be clear that these search terms were intended to be responsive to the Trustee's Subpoena, and if the Trustee would like me to run additional search terms in my email account, I will do so.

9

40. In any event, I do not communicate with my father over email or any other form of electronic communication, and to the best of my knowledge, he does not have an email address.

### C. Messaging Applications

41. Next, I understand that the Court has also questioned my review of my WhatsApp and Telegram messages. Again, I initially conducted a review of these messaging applications upon receipt of the Subpoena. Indeed, I produced responsive communications to the Trustee in or around September 19, 2022 as MG-00001 through MG-00019.

42. After receiving the January 20 Order and reviewing my messaging communications, I again reviewed my messages for potentially responsive communications. I also made my cellphone and messaging applications available to counsel for search and review. No responsive communications were found.

43. I understand that the Court has questioned representations made by my counsel that I do not typically communicate with my family using messaging applications. This is true, and was intended to provide clarity in anticipation of potential questions from the Court regarding the limited production from my messages.

44. I do not conduct business over messaging applications. Moreover, and going to the heart of the Subpoena, I do not have conversations regarding money or family business over messaging applications. Indeed, I would never, as I would never trust that any messaging application was immune from potential hacking by the CCP. I have searched these applications several times, and produced the responsive material to the Trustee.

### D. Hard Copy Documents

45. In addition to review of electronic communications, I also searched for hard copy records responsive to the Subpoena.

46. When I first received the Subpoena, I reviewed my records for any hard copy corporate documents that might be responsive to the Subpoena, and I asked my attorneys to do the same, including former attorneys.

47. Because the only documents that I originally withheld from production in response to the Subpoena related to my personal assets, upon receipt of the January 20 Order, I reviewed my records to determine whether I had any hard copy materials relating to my assets, and searched for any additional hard copy documents that may not have been initially produced.

**E. Documents Regarding Personal Assets**

48. As explained above, because my primary objection to the Subpoena related to the production of information concerning my personal assets, upon receipt of the Court's January 20 Order, I focused on that portion of the Subpoena.

49. I collected documents from my Citibank account, which was closed in December 2022. These documents have been produced.

50. Since coming to the United States, I have faced multiple bank account closures. I originally utilized an account with Chase Bank, which was closed in 2017. After that account was closed, I opened an account with Bank of America and First County Bank in Connecticut. Both of these accounts have since been closed, and I do not have ready access to account statements for these accounts. Prior to submission of my attorney's certification on March 6, 2023, I had attempted to access account statements from closed bank accounts, but was unable to do so. While I do not have ready access to these account statements, I have reviewed the portion of the Court's March 10 Order relating to these bank accounts, and am seeking to obtain records from each of these accounts and will continue to do so, both on my own and through counsel.

51. I also have an account with the Bank of China, but do not have electronic access to that account, and cannot visit a branch location due to safety concerns. While I have an account with the Bank of China, I have not used my bank card since coming to the United States, in fear of the CCP tracking my payments, and as a result, my location. Nonetheless, I have reviewed the portion of the Court's March 10 Order relating to my Bank of China account, and my counsel will seek records from the Bank of China on my behalf. I hope the Court can understand that my hesitancy to interact with the Bank of China comes from significant safety concerns borne out of my time spent in detention. Moreover, I have not, and will not, object to any efforts by the Trustee to secure these records from the Bank of China directly.

52. Additionally, I have continued to review my records, and have produced additional documents relating to my personal assets to the Trustee. Among other things, I have requested documents from my accountant, which have been produced to the Trustee.

**F. Documents from Agents and Advisors**

53. Finally, I understand that the Court has questions regarding my efforts to obtain documents from my agents and advisors.

54. As I explained in my November 14, 2022 opposition to the motion to compel, upon receipt of the Subpoena, I sought documents from my former attorneys regarding HK USA. Those documents have been produced in my prior productions.

55. I understand that the Court has raised that during my deposition I testified about my "management and/or ownership positions in several companies in [my] family's business empire," and concluded that I "almost assuredly [have] control over many documents in the possession of current or former attorneys and other agents and advisors."

56. I have again made requests to my attorneys, former attorneys, accountants, tax advisors and managers regarding documents relating to my family's businesses. Among other measures, I contacted ACASS, the outside company that assisted with the sale of airplane referenced during my deposition. I will produce to the Trustee any documents I receive in response to these requests.

57. I have endeavored to comply with the Subpoena directed towards me since receipt, and produced over two-thousand pages of documents. While I originally interposed objections to requests for documents relating to my personal assets, I understand that the Court has directed that I produce those documents, and I have taken steps to do so. As I explained in November 2022, other than materials relating to my personal assets, I did not withhold any other documents responsive to the Subpoena, which personal materials I am now producing to the Trustee.

58. I take this matter very seriously, and therefore wanted to provide the Court with a comprehensive overview of my collection efforts and review of documents responsive to the Subpoena.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated at New York, New York this 13th day of March, 2023.

_____
Mei Guo

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of March, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Lee Vartan
Lee Vartan