UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION


In Re                          *   Case No. 22-50073 (JAM)
                               *
HO WAN KWOK, GENEVER HOLDINGS  *
  CORPORATION and GENEVER      *
  HOLDINGS, LLC,               *
                               *
              Debtor.          *
                               *

LUC A. DESPINS, et al.,        *   Case No. 22-05027 (JAM)
                               *
              Plaintiffs,      *
                               *
      v.                       *
                               *
BRAVO LUCK LIMITED, et al.,    *
                               *
              Defendants.      *


GENEVER HOLDINGS, LLC, et al., *   Case No. 23-05002 (JAM)
                               *
              Plaintiffs,      *
                               *   Bridgeport, Connecticut
      v.                       *   March 7, 2023
                               *
HO WAN KWOK, et al.,           *
                               *
              Defendants.      *
                               *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *


BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

TRANSCRIPT OF
ORDER TO APPEAR AND SHOW CAUSE
WHY THE COURT SHOULD NOT HOLD THE NON-RESPONDING
PARTIES IN CONTEMPT OF COURT; ORDER GRANTING IN PART
MOTION FOR ORDER TO APPEAR AND SHOW CAUSE WHY THE COURT
SHOULD NOT HOLD THE HK PARTIES IN CONTEMPT OF COURT; MOTION
TO EXTEND TIME TO COMPLY WITH THE COURT'S ORDER DATED
1/20/23; MOTION FOR ORDER TO SHOW CAUSE WHY DEBTOR SHOULD
NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY W/ ORDER TO
COMPEL RE FRBP2004 SUBPOENAS; DEBTOR'S MOTION FOR STAY
PENDING APPEAL OF ORDER HOLDING HIM IN CONTEMPT OF CORP.
GOVERNANCE ORDER; MOTION TO SEAL SUPPLEMENTAL OBJECTION
TO CHAPTER 11 TRUSTEE ORDER SETTING STATUS CONFERENCE;
OBJECTION TO PRODUCTION REQUEST AND MOTION TO QUASH AND/OR
MODIFY 2004 EXAM SUBPOENAS; MOTION TO COMPEL COMPLIANT WITH
BK. RULE 2004 SUBPOENA; CONTINUED PRETRIAL CONFERENCE;
OMNIBUS MOTION TO SEAL AMENDED ADVERSARY COMPLAINTS; MOTION
FOR AUTHORIZING SALES OFFICE AND SOTHEBY'S INTL. REALTY
TO MARKET SHERRY-NETHERLAND APT FOR RENT; STATUS CONFERENCE
MOTION FOR ORDER AND MOTION FOR SUMMARY JUDGMENT

APPEARANCES:

| | |
|---|---|
| For the Creditor, Pacific Alliance Asia Opportunity Fund L.P.: | ANNECCA SMITH, ESQ.<br>Robinson & Cole<br>28 Trumbull Street<br>Hartford, CT  06103 |
| | STUART SARNOFF, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| For the Chapter 11 Trustee: | NICHOLAS BASSETT, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| | PATRICK LINSEY, ESQ.<br>Neubert, Pepe and Monteith<br>195 Church Street<br>New Haven, CT  06510 |
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |

APPEARANCES: (Cont'd.)


| | |
|---|---|
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States<br>  Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For the Creditors Committee: | JONATHAN KAPLAN, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |
| For The Sherry-Netherland,<br> Creditor: | SHERRY J. MILLMAN, ESQ.<br>Stroock  &  Stroock  & Lavan<br>180 Maiden Lane<br>New York, NY  10038 |
| | TARUNA GARG, ESQ.<br>Murtha Cullina<br>280 Trumbull Street<br>Hartford, CT  06103 |
| For the debtor, Mei Guo and<br> HK International: | STEPHEN KINDSETH, ESQ.<br>ERIC A. HENZY, ESQ.<br>JAMES MORIARTY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th Floor<br>Bridgeport, CT  06604 |
| | SAM DELLA FERA, JR., ESQ.<br>Chiesa, Shahinian &<br> Giantomasi, P.C.<br>105 Eisenhower Parkway<br>Rossland, NJ  07068 |
| For UBS, AG, Interested<br> Party: | LISA FRIED, ESQ.<br>Herbert Smith Freehills<br> New York, LLP<br>450 Lexington Avenue<br>New York, NY  10017 |
| For Bravo Luck Limited,<br> Interested Party: | FRANCIS J. LAWALL, ESQ.<br>Troutman Pepper Hamilton<br> Sanders LLP<br>1313 N. Market Street<br>Washington, DC  19801 |

1      (Proceedings commenced at 1:18 p.m.)

2          THE COURT:  For today, where there's -- there are

3   matters in the main case and then matters in adversary

4   proceedings that the reporter -- not through the reporter's

5   fault -- the reporter's not in court, so they do the best

6   they can -- broke up the transcript into part of it filed in

7   the main case, part of it filed in the adversary's, when

8   that wasn't exactly accurate.

9          So what we're going to make sure of in the future

10   is that whenever anybody orders a transcript of a hearing

11   like today's hearing, where they are matters scheduled in

12   the main case and matters scheduled in the adversary, that

13   the transcript will be filed both in the main case and in

14   any adversary proceeding that is on the calendar for that

15   day, so that there's no confusion and the transcriber

16   doesn't have to make any kind of judgment call as to where

17   this transcript should be and sit.

18          So, for example, on the 20, I don't know what day

19   it was, the 31st I think of January, there were hearings in

20   the main case, and there were hearings in adversaries, and

21   there was a hearing on a motion to seal that was in the main

22   case, but it did affect an adversary.

23          And long story short, although the transcript

24   request didn't make any delineation between the main case

25   and the adversary, the reporter did, and so the transcript

1      is broken down to partially filed in the main case and

2      partially filed in an adversary, which is not completely

3      accurate.

4              So does anybody have any questions about that

5      before the case gets called?

6          (No response.)

7              THE COURT:  Okay.  Then I would ask the courtroom

8      deputy, she's going to call the main case and the adversary

9      proceedings that are on the calendar for today. Then we're

10     going to take appearances, and then we will start addressing

11     the matters on the calendar in the order in which I will

12     tell you they will be addressed.

13             So I'm looking at the courtroom deputy, does that

14     make sense?

15             THE COURTROOM DEPUTY:  Yes.

16             THE COURT:  Okay.  Thank you.  Go right ahead

17     then.

18             THE COURTROOM DEPUTY:  Okay.  Case No. 22-50073,

19     Ho Wan Kwok, Genever Holdings Corporation and Genever

20     Holdings, LLC.; Adversary No. 22-5027, Despins vs. Bravo

21     Luck, Limited; and 23-5002, Genever Holdings, LLC vs Kwok.

22             THE COURT:  Thank you.

23             Okay.  If we could have appearances for the record

24     please, starting with the Chapter 11 Trustee.

25             MR. DESPINS:  Good afternoon, Your Honor.  Luc

1    Despins, Chapter 11 Trustee.

2            THE COURT:  Good afternoon.

3            MR. BASSETT:  Good afternoon, Your Honor.  Nick

4    Bassett, from Paul Hastings, on behalf of the Chapter 11

5    Trustee.

6            THE COURT:  Good afternoon.

7            MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

8    Sarnoff, O'Melveny & Myers, on behalf of creditor PAX.  And

9    with me today is local counsel, Annecca Smith, of Robinson &

10   Cole, on behalf of PAX.

11           THE COURT:  Good afternoon to both of you.

12           THE COURTROOM DEPUTY:  I'm sorry.  I did not hear.

13   You said who was with you?

14           MR. SARNOFF:  Annecca Smith from Robinson & Cole.

15   Sorry, I was quiet.

16           THE COURTROOM DEPUTY:  Thank you.

17           MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

18   Claiborn for the U.S. Trustee.

19           THE COURT:  Good afternoon.

20           MR. LINSEY:  Good afternoon, Your Honor.  Patrick

21   Linsey, Connecticut counsel for the Trustee.

22           THE COURT:  Good afternoon.

23           MR. KAPLAN:  Good afternoon.  Jonathan Kaplan on

24   behalf of the committee.

25           THE COURT:  Good afternoon.

1        MS. GARG:  Good afternoon, Your Honor.

2        THE COURT:  You're going to have to come forward,

3   Attorney Garg, because we won't be able to hear you on the

4   microphones.  Okay?  Sorry.  It's just we won't be able to

5   pick it up.

6        MS. GARG:  Good afternoon, Your Honor.  Taruna

7   Garg on behalf Sherry-Netherland.  I will be joined -- I

8   expect to be joined by Sherry Millman also on behalf of

9   Sherry-Netherland.

10       THE COURT:  Who's the person that you expect to

11  join you?

12       MS. GARG:  Attorney Sherry -- Sherry Millman.

13  She's of Strook.

14       THE COURT:  Okay.  Thank you.

15       MS. GARG:  Thank you.

16       THE COURT:  Go ahead, Counsel.

17       MR. KINDSETH:  Good afternoon, Your Honor.  Steve

18  Kindseth, Zeisler & Zeisler, for Mei Guo and HK USA.  And

19  with me is Attorney Sam Della Fera who has been admitted pro

20  hac vice.

21       Additionally, I'm also appearing on behalf of the

22  debtor, Ho Wan Kwok.  And with me is Attorney Henzy for that

23  -- for the debtor.

24       THE COURT:  Okay.  Good afternoon to all of you.

25       MR. HENZY:  Good afternoon, Your Honor.

1          MR. DELLA FERA:  Privilege to appear, Your Honor.

2          THE COURT:  All right.  Is that everyone's

3     appearance then?

4          MS. FRIED:  Good afternoon, Your Honor.  I'm Lisa

5     Fried and I'm here on behalf of UBS, AG.

6          THE COURT:  Thank you.

7          And I think I did see an appearance your behalf

8     filed in the case.  Yes, thank you.

9          Okay.  All right.  So we have several matters on

10    the calendar.  We tried to group them by time in case there

11    was parties that didn't need to be here the whole time.  I

12    don't know if that makes sense anymore.  I mean, maybe we

13    just set them all at the same time.  We'll see how things go

14    today.

15         But the first matter on the calendar today in the

16    -- is the order to appear and show cause, ECF No. 1397, with

17    regard to Lamp Capital and Golden Spring.

18         So I need to talk to the Trustee's counsel about

19    this order to appear and show cause, correct?  Attorney

20    Bassett, you're going to address this matter?

21         MR. BASSETT:  Yeah.  That's correct, Your Honor.

22         THE COURT:  Okay.  Go right ahead.

23         MR. BASSETT:  Good afternoon, again, Your Honor.

24    For the record, Nick Bassett, from Paul Hastings, on behalf

25    of the Chapter 11 Trustee.

1            Actually, Your Honor, with respect to this agenda

2    item, the order to show cause at 1397, unless counsel for

3    Lamp Capital and Golden Spring, and/or Golden Spring, are in

4    the courtroom today, which I don't think I heard an

5    appearance on either of their behalves, then I think we

6    actually would request that the Court adjourn this matter,

7    the issue being that the Trustee did not have the

8    opportunity, encountered some issues, trying to serve the

9    order to show cause on these two parties.

10            So what I would respectfully request is that the

11   matter be adjourned, a new date set for service, you know,

12   adjourned by maybe, you know, sometime next month, and then

13   a new date set for service and we'll try to do this again at

14   a time when the other parties have appropriate notice.

15            THE COURT:  Okay.  So you had difficulty serving

16   them, is that what you're saying?

17            MR. BASSETT:  That's correct, Your Honor.

18            And obviously if the Trustee decides it prudent to

19   bring some sort of request for alternative service to the

20   Court, we would do that.

21            THE COURT:  Okay.  All right.  Hold on one second.

22   I just want to take a look at this.

23            (Pause.)

24            THE COURT:  Didn't Golden Spring have an

25   appearance in this case some time ago?  Didn't somebody

1  represent Golden Spring in this case?

2          MR. DESPINS:  Yes.

3          THE COURT:  And that's been -- and that appearance

4  was withdrawn?

5          MR. BASSETT:  I'm not -- I'm not entirely sure of

6  the status of --

7          THE COURT:  People behind you are nodding yes --

8          MR. BASSETT:  Yeah.

9          THE COURT:  -- so I think that that is correct.

10         MR. DESPINS:  Yes.

11         MR. BASSETT:  That's --

12         THE COURT:  Just so you know.  You don't have to

13 -- I mean, I'm pretty -- I think that's what happened.

14         MR. BASSETT:  No.  That is -- that is correct.

15 What I -- I'm not sure of the status of whether that was --

16         THE COURT:  Because Golden Spring was the lender

17 of the $8.8 million is my recollection back when the

18 individual debtor was a debtor in possession.

19         MR. BASSETT:  That's correct, Your Honor.  Off the

20 top of my head, I just don't know if that appearance had

21 been withdrawn or not.

22         THE COURT:  I think it has been actually.  And I'm

23 almost certain of that.

24         MR. BASSETT:  Okay.

25         THE COURT:  So you are not aware, at this point,

1  of any lawyers representing Golden Spring or Lamp Capital?

2          MR. BASSETT:  Subject to the caveat I just gave

3  about not personally being aware of whether that was

4  withdrawn.  If that were the case, then, yes, Your Honor, I

5  believe we are not aware.

6          THE COURT:  Okay.

7          MR. BASSETT:  And to be -- you know, full

8  disclosure, the issue that really prompted this is we were

9  trying to serve both of them, and we got a return from the

10  registered agent for Lamp Capital saying that sometime

11  between when we had served them in the past with the

12  subpoena and other documents, and when we attempted to serve

13  them about a month ago, that registered agent in Delaware is

14  saying they're no longer authorized to accept service on

15  behalf of that entity.

16          THE COURT:  What does the Secretary of State's

17  Office information say?  Do they say they're still the

18  registered agent for service?

19          MR. BASSETT:  Well, what we've been told is that

20  they're apparently no longer a registered entity at this

21  point.  So we're trying to figure out what does that mean,

22  how can we move forward --

23          THE COURT:  Okay.

24          MR. BASSETT:  -- with respect to them in light of

25  that.

1          THE COURT:  I understand.  I think that's

2     interesting.

3          So you're saying at some point between when you

4     tried to serve the record registered agent for service and

5     now that that registered agent for service doesn't exist

6     anymore?

7          MR. BASSETT:  The agent exists, but the response

8     to us was we're no longer authorized to accept service of

9     this entity.  This entity, as far as their records show, is

10     no longer operating.

11          THE COURT:  And which entity are you talking

12     about?

13          MR. BASSETT:  Lamp Capital.

14          THE COURT:  Lamp Capital.  All right.

15          What about with Golden Spring?  Don't they have a

16     registered agent for service?

17          MR. BASSETT:  They do, and we can serve them.  We

18     wanted to do it all at once to bring both of them in.

19          THE COURT:  Understood.  I'm just asking the

20     question --

21          MR. BASSETT:  Yeah.

22          THE COURT:  -- so I understand --

23          MR. BASSETT:  So we'll do it that way.  And, you

24     know, we would obviously through any counsel who had

25     appeared on their behalf if they were still counsel in the

1    case --

2              THE COURT:  I don't think there is in this case,

3    but I could be wrong about that.

4              All right.  So what -- you have a proposed date to

5    adjourn this matter to and make service by?

6              I can tell you that the first week of April does

7    not work, just so -- before you throw out a date in the

8    first week of April, it's not going to work.

9              MR. BASSETT:  I would say, Your Honor -- I was

10   going to say the second week of April.  And then --

11             THE COURT:  What about --

12             MR. BASSETT:  And then maybe give us two weeks

13   from now to affect service.

14             THE COURT:  I can do Wednesday, April 12th.  Or we

15   can -- actually, there's already a matter scheduled in

16   Adversary 05002 for April 18th at 2:00 p.m.  I don't know if

17   that's interesting to you or if that -- you don't want to go

18   that long.

19             MR. BASSETT:  I mean, six days, I think that would

20   be fine.

21             THE COURT:  Okay.  Let's go back then.

22        (Pause.)

23             THE COURT:  All right.  So the order to appear and

24   show cause, ECF 1397, why the Court should not hold the non-

25   responding parties in contempt, Golden Spring, New York,

1    Limited and Lamp Capital, LLC, the hearing is continued to

2    April 18th at 2:00 p.m.

3              And what date do you want to make service by?

4              MR. BASSETT:  Like I said, Your Honor, if we could

5    have two weeks, two weeks from today, I think would be okay.

6              THE COURT:  That's March 21st.  Does that -- that

7    gives you enough time?  I think you could go to the end of

8    that week, March 24th.

9              MR. BASSETT:  That would be -- if that's

10   acceptable to the Court, that would be great, Your Honor.

11             THE COURT:  It is acceptable to the Court, because

12   that still provides the parties with one, two, three full

13   weeks and two days before the hearing.  Okay?

14             MR. BASSETT:  Thank you, Your Honor.

15             THE COURT:  All right.  So let me just make a note

16   of that, please.

17        (Pause.)

18             THE COURT:  So the service of the order to show

19   cause will be on or before March 24th.  All right.  So that

20   takes care of that matter then.  We're going to adjourn that

21   motion -- I mean that order to appear and show cause I

22   should say.

23             Then the next matters on the calendar are the

24   order to show cause, granting the motion, and the motion to

25   extend time to comply with the Court's order dated January

1   20 on behalf of Mei Guo, HK International, Limited, and the

2   order that I -- we entered granting in part that motion,

3   which required filings by Mei Guo and HK as to what they've

4   done to turn over discovery responses to the Chapter 11

5   Trustee.

6           So where do things stand as -- I mean, I know that

7   things were filed late last night after the deadlines

8   required in court orders, which the Court does not

9   appreciate, and that you filed a response this morning,

10  which I -- we had hearings today so, you know, I looked at

11  it for about two minutes, but where do things stand as of --

12  on this matter?

13          MR. BASSETT:  Sure.  I'm happy to give you the

14  overview, Your Honor.  And I think in our filing this

15  morning we did generally try to address the current status.

16          But just obviously how we got here, filed a

17  subpoena, served a subpoena on Mei Guo and HK International

18  back I think in August, didn't get cooperation, did not get

19  the documents to which we were entitled, filed a motion to

20  compel later that fall, had a hearing in November.

21          January 20th the Court issued its order compelling

22  the production of documents by January 31st.  Didn't get the

23  production of documents.

24          We filed our motion for the order to show cause on

25  February 10th.  Counsel for Mei Guo and HK International or

1   HK USA, rather, filed their motion for an extension of time.

2        The Court entered its order on the 13th imposing

3   the deadlines that the Court just discussed.

4        And frankly, you know, we are a bit exhausted that

5   we are still here, and in the Trustee's view not getting

6   really anywhere close to compliance with the order that the

7   Court entered on February 13th.

8        As the Court observed, the order required Mei Guo

9   and HK USA to submit by 5:00 p.m. yesterday a declaration

10  detailing their compliance with the order on the motion to

11  compel or explaining why they were unable to do so.

12       The order also, as Your Honor will recall, because

13  in the -- to take a step back -- in the motion for extension

14  of time, Mei Guo and HK International, which they filed in

15  the beginning of February, had stated to the Court that

16  although they were unable to comply with their document

17  production obligations at that time and meet the existing

18  January 31st deadline, they very much intended to produce

19  documents on a rolling basis throughout the month of

20  February.

21       In the Court's order entered on the 13th, the

22  Court recognized that commitment and said that Your Honor

23  expected them to continue producing documents on a rolling

24  basis during the mediation.

25       Fast forward, we got nothing.  We heard nothing

1   from counsel at all about the document production

2   requirements or the Court's order to show cause during the

3   mediation.  We received zero documents prior to last night.

4   No request to meet and confer, nothing of that sort.

5           At approximately 8:30 last night, we received a

6   document production consisting from both -- both of the HK

7   parties, Mei Guo and HK USA, consisting of a grand total of

8   11 documents.

9           We then received, also at approximately 8:30 last

10  night, the declaration of their counsel, Lee Vartan,

11  purporting to describe the efforts that they believe

12  indicate that the HK parties have complied with the document

13  production obligations.

14          And for a variety of reasons, which I will quickly

15  go through, that declaration falls, in our view, woefully

16  short of what the Court ordered and what is necessary to

17  assess whether or not the HK parties are, in fact, complying

18  with their document production obligations.

19          As an initial matter, as I said, technically and

20  timely, which in and of itself is a problem, the other

21  issue, which is glaring and extremely troubling to the

22  Trustee, is that it is a declaration from Mr. Vartan as

23  counsel.

24          The Court, in our view, is clear in its order to

25  show cause that the parties themselves needed to file a

1   sworn declaration indicating what efforts they undertook.

2          And if you look at the substance of the

3   declaration that was filed, that distinction is critically

4   important here.  Because what you'll find in the

5   declaration, and I'll go through some of these issues in a

6   moment, are all kinds of incomplete, vague, and frankly

7   totally not credible statements about the documents that Mei

8   Guo does or does not have, the fact that she has only one

9   email account that apparently has no responsive emails,

10  whether or not she uses WhatsApp, another application for

11  messaging, to whom she communicates; her lack of access to

12  bank accounts.

13         There are all kinds of statements, which I'll walk

14  through, that if they're going to make those statements, and

15  if they are going to rest and say we are not able to satisfy

16  our document production obligations because we basically

17  have no documents, and we don't communicate, then we need a

18  sworn -- and I think the Court should have, a sworn

19  declaration from the parties under penalty of perjury,

20  actually attesting to these statements rather than have

21  counsel who apparently is offering hearsay, based on what he

22  heard from his client, in the form of a declaration.

23         And Mr. Vartan who submitted the declaration also

24  is not here.

25         THE COURT:  I noticed that.

1        MR. BASSETT:  The next thing I would like to do,

2   Your Honor, is -- well, I just want to walk through, because

3   I do think it is important, walk through some of the just I

4   think facial, and we got this last night at 8:30.

5        THE COURT:  Well, let's pull it up --

6        MR. BASSETT:  Yeah.

7        THE COURT:  -- so we can all read it at the same

8   time since it was filed late and it's not in compliance with

9   the Court's previous orders.

10       (Pause.)

11       MR. BASSETT:  And obviously I'm happy to take it

12   in whatever order the Court would like once it's pulled up

13   on the screen, but I think it would be most efficient, at

14   least at the beginning, for me to kind of go through some of

15   the items that I had identified.

16       THE COURT:  Yes.  Let's just get to --

17       MR. BASSETT:  Sure.

18       THE COURT:  Let me just get the number for the

19   courtroom deputy so we can pull it up.  I think it's 1512,

20   correct?

21       MR. BASSETT:  That's correct, Your Honor.

22       THE COURT:  So we need to --

23       MR. BASSETT:  And our response, just for the

24   record, is 1517.

25       (Pause.)

1        THE COURT:  Can we make it so people --

2        Where do you want to go with this, Mr. Bassett?

3    What page would you like to go to first?

4        MR. BASSETT:  So I think what I'll do, Your Honor,

5    is I'll --

6        THE COURT:  Well, I would like to note for the

7    record -- I'd like the courtroom deputy to scroll to the end

8    of this document, go up one, a page, to page 10 -- so this

9    is a document that's signed by a lawyer who's not here

10   today, not in the courtroom.

11       Mr. Vartan, you in the courtroom anywhere?

12       (No response.)

13       THE COURT:  Okay.  So I'd like that to be noted on

14   the record, number one.

15       If you could scroll up another page, please.

16   Okay.  You can keep going up if you don't mind.  It might

17   start -- I'm not sure if it starts on page 5 or 6 of this

18   document, but -- no, keep going down then, I apologize.  I'm

19   not sure what page it starts on since it was filed at 8

20   o'clock, 8:30 last night, three hours after it was supposed

21   to be filed pursuant to court order, which obviously didn't

22   concern anyone.

23       (Pause.)

24       THE COURT:  So my mistake.  The whole thing is his

25   -- is his declaration?

1          MR. BASSETT:  That's correct, Your Honor.

2          THE COURT:  I thought there was a page break

3    there.  Sorry.  I thought it was an objection with a then

4    attached declaration but, as I said, I haven't had a chance

5    to read -- oh, it is the whole thing.  Okay.  So it's a

6    declaration of counsel who represents Mei Guo and HK

7    International.

8          And during the last hearing we had before the

9    mediation session, I specifically asked Mr. Rooney, who's

10   not here today, Mr. Romney, excuse me, who's not here today,

11   about why there needed to be other counsel for HK

12   International and Mei Guo because they already have counsel,

13   and no one could explain that.  No one could answer that

14   question.

15         And I asked the United States Trustee's Office to

16   opine on the issue.  I haven't seen anything from the United

17   States Trustee's Office other than -- not from the U.S.

18   States Trustee's Office -- but the only thing I've seen

19   since that last hearing is supplemental disclosures of

20   compensation to Zeisler & Zeisler from entities of names

21   that I've never seen before in this case about payments for

22   their legal fees.

23         So I still don't have an answer as to why HK

24   International -- and I'm going to turn to Zeisler & Zeisler

25   -- and Mei Guo needs separate counsel, who by the way filed

1    this declaration supposedly in response to a court order and

2    he's not here in court.

3            So what do you have to say about that, Mr.

4    Kindseth?

5            MR. KINDSETH:  The client -- the clients have

6    elected to retain separate lead counsel, which is her right

7    and its right, and Zeisler & Zeisler is abiding by her

8    direction.  Our role --

9            THE COURT:  She directed you specifically?  You're

10   going to testify that Mei Guo looked you in the face and

11   told you that she directed you specifically to allow her to

12   retain separate counsel to address what?  What's your

13   testimony going to be?

14           MR. KINDSETH:  My testimony would be, and what

15   actually transpired was that Ms. Guo has told me she wants

16   new counsel to lead this case.

17           THE COURT:  Oh, so you're going to -- so Zeisler &

18   Zeisler is going to be leaving this case?

19           MR. KINDSETH:  No.  We're local counsel in this

20   regard.  We're just not lead counsel.

21           THE COURT:  Well, that's not -- wait a minute.

22   Slow down.  You're not local counsel.

23           MR. KINDSETH:  In this --

24           THE COURT:  You've been -- you came into this case

25   in July or whatever it was of last year as the debtor's

1   counsel.  We have been through time and time again about

2   what -- how you communicate and what communications and who

3   you get direction from in this case.  And we've talked about

4   Mr. Mitchell.  We've talked about Ms. Francis.  We've had

5   all different kinds of things come out in this case.

6          And now you're telling me that you're only local

7   counsel with regard to a subpoena served on your client that

8   you are -- you are counsel of record for?  You're only local

9   counsel?

10          MR. KINDSETH:  There term I used for local counsel

11  was in connection with the pro hac vice.  So for purposes of

12  the pro hac vice, we were -- we were the sponsoring law firm

13  for new counsel.

14          And you're right, Your Honor.  In terms of

15  appearances, there's no distinction, counsel is counsel.

16          But I'm informing Your Honor that with respect to

17  the client's wishes, the new firm is taking the lead role

18  for these two clients.

19          And it's no different than other firms who have

20  joint counsel.  And sometimes counsel, certain counsel take

21  the lead in some matters.  Sometimes other counsel take the

22  lead in other matters.

23          In fact, if you look at the other side, there's

24  multiple local counsel and lead counsel and there's nothing

25  inappropriate --

1        THE COURT:  They're not the debtor's counsel, sir,

2    in a case where the debtor has been dispossessed of his

3    rights after filing a voluntary Chapter 11 petition in this

4    court.

5        MR. KINDSETH:  That's correct.

6        And I don't -- I guess I'm not sure what that

7    particular issue is.  We were discussing Ms. Guo.

8        THE COURT:  Who's taking direction?  From whom?

9        So you're telling me, you're telling me, that Mr.

10   Vartan, who isn't here by the way --

11       MR. KINDSETH:  Had a conflict with this --

12       THE COURT:  Where did he say he had a conflict,

13   Counsel?  There's nothing in the record that tells me he has

14   a conflict, is there?

15       MR. KINDSETH:  I've been informed by his

16   colleague, who's with me here now, that Mr. Vartan --

17       THE COURT:  That's not good enough.

18       MR. KINDSETH:  It is --

19       THE COURT:  That's not good enough.

20       MR. KINDSETH:  Well, he's --

21       THE COURT:  So go ahead, Attorney Bassett.

22       Because I cannot believe that you think that this

23   is an appropriate way to proceed in this case and that what

24   has happened with regard to this motion is appropriate,

25   because it's not.

1          MR. KINDSETH:  Attorney Della Fera is prepared to

2     respond to --

3          THE COURT:  I don't -- that's fine.  He can

4     respond.  It doesn't matter.  It's inappropriate.  The

5     person who signed the declaration isn't even here.  And the

6     order required your clients and your clients to file their

7     own declarations, which they didn't do.

8          So I guess I'll grant the motion for contempt,

9     right?  Why shouldn't I?

10         This is -- this is not how this is going to

11    proceed.  And I still don't understand why any party hasn't

12    raised these issues with regard to these conflicts and why

13    this is being allowed to happen.  This court is not to be

14    used in an improper manner and that's exactly what's

15    happening.

16         This is -- tell me where in the order, Attorney

17    Kindseth, you could somehow feel and believe that a lawyer's

18    declaration, who's not in the courtroom, was -- is in

19    compliance with the Court's order?

20         No, I'm asking you, Attorney Kindseth.

21         MR. KINDSETH:  Your Honor --

22         THE COURT:  I'm asking you.

23         MR. KINDSETH:  Your Honor, my clients have chosen,

24    which is their right, to have the counsel of their choice

25    represent them in this matter.  That counsel is prepared to

1    address these issues.

2              THE COURT:  Why aren't you prepared to address

3    them?

4              MR. KINDSETH:  Because my client --

5              THE COURT:  You're their lawyer too.

6              MR. KINDSETH:  A lawyer is a representative for

7    the client.  The lawyer can only --

8              THE COURT:  I understand that, Attorney Kindseth.

9              MR. KINDSETH:  And then the lawyer can only do

10   what they are instructed to do by their clients.  I --

11             THE COURT:  That is not true, Attorney Kindseth.

12             MR. KINDSETH:  I have not been --

13             THE COURT:  That is -- that's an incorrect

14   statement.

15             MR. KINDSETH:  I have not been instructed by my

16   client to represent her or HK USA in connection with this

17   matter.  She has counsel who has been instructed --

18             THE COURT:  When this order was entered, there was

19   no other counsel appearing on behalf of HK and Mei Guo.

20             MR. KINDSETH:  I'm not sure --

21             THE COURT:  So you had to -- you had to -- your

22   obligation as a lawyer is to explain to them what they

23   needed to do.  Are you telling me you didn't have that

24   conversation with them?

25             MR. KINDSETH:  Your Honor, you're asking about

1    attorney-client communications.

2              THE COURT:  No, I'm not.  I'm asking about

3    compliance with a court order.  That's a -- there's a huge

4    difference there, Attorney Kindseth.

5              MR. KINDSETH:  And there's another -- there's

6    other lawyers in my firm who were -- Attorney Romney

7    handling this.

8              THE COURT:  Okay.  Well, call him and get him here

9    then.

10             MR. KINDSETH:  He's not -- he's not available.

11             THE COURT:  Okay.  All right.  You know what?

12   That's fine.

13             Go ahead.  Go ahead, Attorney Bassett.  You go

14   right ahead.

15             MR. BASSETT:  Thank you, Your Honor.

16             And for the reasons that were just discussed, I do

17   think that there's a basis for a finding of contempt simply

18   based on the fact that this declaration does not comply with

19   the order, and was untimely, et cetera.

20             I would like to just go through, even if the Court

21   were to, you know, accept this declaration for what it

22   purports to say in substance, I think there are all kinds of

23   glaring omissions, ambiguities, and other problems that

24   would prevent it from complying with the order in any event.

25             The first of which, and some of these are sort of

1    global comments, so it doesn't make sense to go to a

2    particular page --

3          THE COURT:  Okay.

4          MR. BASSETT:  -- but the first of which is that,

5    if you read through this declaration, what you will find is

6    that it is Mr. Vartan, Attorney Vartan, talking about the

7    situation confronting and the documents relating to Ms. Guo.

8          It talks about how, you know, somehow her

9    experiences in China have led to her not having documents.

10   It talks about her apparent lack of communication with

11   people via email and other, you know, common means, et

12   cetera.

13         What is glaringly omitted from this is any

14   discussion whatsoever of HK USA.  So even if the Court were

15   to accept this on behalf of Ms. Guo, there's no declaration

16   before the Court that in any substance at all talks about

17   what HK USA has done, if anything, to comply with the order

18   to show cause.

19         Getting into -- and, again, Your Honor, we've had

20   this for just overnight, so when we submitted our paper this

21   morning, these were kind of initial reactions to some of the

22   things that jumped off the page to us, but let me just go

23   through the list.

24         First of all, this declaration does not make clear

25   what electronic documents Ms. Guo may or may not have in her

1    possession, including the quantity and types of electronic

2    devices that are within her custody, possession or control.

3    There's no inventory or list of how many iPhones she's had,

4    whether she has iPhones, whether she has a laptop, whether

5    she has iPads, tablets, et cetera, there's no inventory of

6    that.

7            The one thing I would note though is that in her

8    deposition taken on January 20th she noted that apparently

9    due to concerns of spying by the CCP she gets a new cell

10   phone -- what did she say? She changes her phone every

11   month.

12           There's nothing in this declaration that talks

13   about what efforts were undertaken, if any, to the extent

14   it's true that Ms. Guo really changes her phone every month,

15   to capture, preserve, and extract all relevant documents

16   that may be on each of those phones.  We've been at this for

17   seven, eight months, so that's at least seven phones.

18   There's no discussion of that at all in the declaration.

19           The declaration also does not describe -- it talks

20   about emails, but it does not describe that an adequate

21   search was conducted.

22           First of all, in paragraph 28 of the declaration,

23   it states that Ms. Guo presently, and I'm quoting,

24   "Presently maintains three email addresses."  Apparently two

25   of these email addresses she created solely for the purpose

1    of communicating with counsel and, therefore, those, as far

2    as the declaration suggests, weren't searched because all of

3    that would be privileged.

4           There's one other email address, email account,

5    that she created I think in 2019, according to the

6    declaration, but -- and it says that for the first time, and

7    this I think goes to the heart of why sanctions are

8    appropriate and why compliance with this court orders --

9    with this court's order has not been even in the vicinity of

10   a priority for Ms. Guo and HK USA, is that the attorney

11   declaration says that counsel first got access, they say

12   unfettered access, to this email account in order to search

13   it for the first time on February 20th.  That's three weeks

14   after the deadline that they were ordered to produce

15   documents under an order on a motion to compel.

16          And even after they got that unfettered access,

17   apparently they applied search terms, I'll get to those in a

18   second, but even setting that aside, there's no discussion

19   in the declaration of what did they do once they got access

20   on February 20th to ensure that no emails had been deleted?

21          What kind of spoliation issues might there be?

22   Did they talk to their client before then to tell her to

23   preserve documents or did they just look at what they found

24   on February 20th and take it for face value that's all

25   that's in there?

1    And I think there's really a strong basis to be

2    very skeptical of all of this considering that they produced

3    11 documents.  And I don't know off the top of my head

4    because I was flipping through them last night and I just

5    don't recall if there's even a single email in there.  There

6    may be one, but I think most of the documents were not.

7         Another issue, Your Honor, is with the search

8    terms.  The declaration, in paragraph 31, lists all these

9    search terms that were apparently applied to search for the

10   emails, but the search terms are facially, extraordinarily

11   problematic, almost certainly designed to not capture

12   documents that would be responsive.

13        Just as a few examples, the search terms list, I

14   believe -- yeah, Mei Guo's father, the debtor, they

15   purported to search for "Ho Wan Kwok, Miles Kwok, Miles Guo,

16   Guo Wengui," in quotes.

17        So unless she referred to her father in

18   communications by using his full name, those emails would

19   not be captured.  I would presume she talks to him by

20   calling him dad or maybe his first name, but that's just one

21   example of according to the searches that they apparently

22   performed none of those documents would be captured.

23        We have the same issue with all the individuals

24   they searched for.  And individual whose name the Court has

25   heard often in this case is Yvette Wang, who's heavily

1    involved in the debtor's business, and is well known to and

2    somebody with whom Ms. Guo has had frequent interactions,

3    her name is just listed as Yvette Wang.  So unless there's

4    an email that uses both her first and last name, apparently

5    wouldn't be captured.  And I can't imagine she knows a lot

6    of Yvettes, but it would make sense to maybe do a search for

7    individual names.

8         The same thing is true with respect to entity

9    names.  Only full entity names, not abbreviations.  ACA

10   Investment Management, Limited.  There's no search for just

11   ACA.

12        All kinds of glaring problems with the search

13   terms, even assuming they were searching the right corpus of

14   documents, which is uncertain at best given the fact that

15   only one of her three email accounts was searched and the

16   access was not obtained until February 20th. There are other

17   kinds of glaring omissions.

18        The declaration in paragraph 34, and this is, Your

19   Honor, I'll just refresh the Court's memory on this, I think

20   in past hearings, including the preliminary injunction

21   hearing with respect to the harassment, there was talk about

22   people using WhatsApp and other similar messaging

23   applications like Telegram to communicate with each other,

24   including the debtor and some of the protestors and things

25   of that nature.

1          Well, in the attorney declaration at paragraph 34,

2     Ms. Guo says with respect to WhatsApp and Telegram, which

3     she has conceded she uses, concedes in the declaration she

4     has used, and conceded in her deposition she has used, she

5     simply says that she does not, quote, "Typically communicate

6     with her family on WhatsApp and Telegram."

7          She fails to talk about what does typically mean?

8     Did she search for any communications that she may have had

9     even if they were atypical?

10         She also says nothing about whether she has

11    engaged in WhatsApp or Telegram messages with non-family

12    members that would be responsive to the subpoena.

13         So this idea that she's not searching WhatsApp and

14    Telegram because she doesn't typically communicate with her

15    family members is just -- it makes no sense, Your Honor.

16         The attorney declaration talks about a search for

17    hard copy documents.  It references that generally, but

18    doesn't talk about what process was actually undertaken to

19    search for hard copy documents, what set of hard copy

20    documents were searched, where those documents are located,

21    what kinds of hard copy documents Mei Guo would normally

22    keep in the ordinary course of business, or HK USA for that

23    matter, who's not even addressed in the declaration, all of

24    that is missing.

25         Your Honor, another glaring omission or issue with

1    the declaration is the description in paragraph 38 about

2    bank accounts.

3            So what Ms. Guo says is that -- I think she

4    mentions two or three bank accounts that she previously had

5    that are now closed.  She claims to have no access

6    whatsoever to those accounts.  There's no discussion of

7    whether or not the records might be available to her.  If

8    they're still at the bank, if she were to call and get them.

9    She has not provided account numbers to us so we could

10   subpoena that information.

11           She says that she has one account that's presently

12   open at the Bank of China.  And she contends, again, this I

13   believe is in paragraph 38, she contends that she does not

14   have access to any account statements or other records at

15   the Bank of China account because, one, she doesn't -- I

16   guess apparently has not signed up for electronic online

17   access, which I'm sure everyone else in this room probably

18   has for their bank accounts -- she has not signed up for it.

19           And, second, she's afraid for her personal safety

20   due to I guess her concerns about the CCP to go to a

21   physical branch location and ask for the documents.

22           Your Honor, I'm not sure how Bank of China's

23   online banking works, but I would imagine she could get

24   access to her account online without appearing at the bank.

25   I also think she could send a designee or representative to

1    the branch if she didn't feel safe going there herself.

2           The idea that she's complied by simply stating

3    that she doesn't have online access and won't go there, it's

4    frankly beyond the pale.

5           The other thing I would note is that in her

6    deposition on January 20th she said that she -- she

7    mentioned other bank accounts that are nowhere to be found

8    in the declaration.

9           She said that, this is in her deposition on

10   January 20th, she said recently she has had five or six bank

11   accounts that she's opened, used for a period, and then been

12   closed.  According to her, they were shut down by the banks.

13   But she said five or six of them.

14          There are two to four, it's a little unclear

15   whether it's, sorry, it's either three or four, it's unclear

16   whether it's three or four, that are mentioned in the

17   declaration.

18          She also testified at her deposition that she's

19   presently receiving her salary that she lives on into the

20   Bank of China account, so she clearly has access to that

21   account in order to get money out.

22          There are a couple more, a couple more points,

23   Your Honor.  And this one, I saved it for last, but this is

24   perhaps the most -- one of the most critical of all.

25          As the Court will recall, the January 20th order

1    on the motion to compel required Ms. Guo and HK USA to

2    produce certain categories of documents, one of which was

3    documents related to potential assets of the estate even if

4    there was, you know, a dispute over whether or not those

5    assets might be owned by the debtor.

6           Another equally important category, which was

7    really one of the main drivers behind our motion to compel

8    in the first place, was that she search -- not only search,

9    collect, and produce not only documents in her possession,

10   but also documents in the possession of her current or

11   former counsel, advisors, and agents that may be within her

12   custody or control, regardless of whether or not -- and the

13   order says this, regardless of whether or not the Trustee

14   had sent subpoenas to those other agents and advisors, and

15   regardless of whether productions from them might be

16   forthcoming.

17          The declaration is utterly silent on that point.

18   It says absolutely nothing about Ms. Guo's efforts to

19   contact or HK USA's for that matter efforts to contact

20   current or former counsel, agents, or advisors and that is a

21   glaring omission.

22          Everything we've heard, including, again, in her

23   deposition, is that Mei Guo is heavily involved, according

24   to her, in the family business.  She is the director and

25   owner of a number of BVI entities.  So she apparently is

1   somebody who is able to conduct all of this business,

2   according to her, earn her own income.  She does all of that

3   without maintaining enough documents to produce more than

4   11.  I think she produced initially maybe 20 documents,

5   something like that.  She does all of that without

6   maintaining documents.

7          And she did -- we know that she's worked with

8   advisors, counsel, others in the past, made no effort to go

9   out to them.

10         To the extent it's all of her, you know, she has

11   other people who do these things for her, whether it's

12   counsel, advisors, people like Max Krasner, who the Court's

13   heard, Yvette Wang, to the extent that she has them do her

14   work and HK USA's work, it was incumbent upon her to go get

15   the documents from them and there's nothing in the

16   declaration that talks about those efforts.

17         So, again, as I said, Your Honor, this is a fairly

18   quick reaction based on, you know, having 12 or so hours

19   with the declaration, all of which is overnight, but there

20   are several fundamental problems with the declaration that

21   prevents it from complying in any way with the Court's order

22   to show cause.

23         I think sanctions are appropriate.  I think

24   sanctions to compensate the Trustee and the estate for all

25   the expenses that were incurred in bringing the motion to

1    compel, or bringing the motion for an order to show cause,

2    being here today, all of this, that's one.

3              And then also obviously sanctions moving forward

4    to do what's necessary to finally, after I think more than

5    seven months, get Ms. Guo and HK USA to comply with their

6    discovery obligations per the orders of this court.

7              Thank you, Your Honor.

8              THE COURT:  Thank you.

9              MR. DELLA FERA:  Good afternoon, Your Honor.  Sam

10   Della Fera, Chiesa, Shahinian & Giantomasi, for the HK

11   parties, including Ms. Guo.

12             I have the unenviable task of trying to explain to

13   Your Honor --

14             THE COURT:  Yes, you do.

15             MR. DELLA FERA:  And I do apologize for the

16   lateness of the filing.  I do hope Your Honor takes the

17   opportunity to review it in detail because it is --

18             THE COURT:  Why was it filed late, counsel?

19             MR. DELLA FERA:  We did not have the information

20   that we needed from our client until later in the day,

21   including the documents that were produced to the Trustee.

22             THE COURT:  So why didn't you file a motion for

23   extension of time if you weren't going to comply with the

24   Court's order?

25             MR. DELLA FERA:  I can't speak for Mr. Vartan,

1    Your Honor.

2            By the way, I think when Mr. Kindseth referred to

3    a conflict, just to be clear, it was a conflict of Mr.

4    Vartan's being able to appear today, not necessarily a

5    conflict that created this desire by Ms. Guo for new

6    counsel.  Mr. Vartan has appeared before Your Honor as you

7    may recall and --

8            THE COURT:  Once.

9            MR. DELLA FERA:  -- and he will be here next week

10   again.

11           THE COURT:  Well, he may not be here next week.

12           So I'm very displeased that he filed this

13   declaration, which is in -- which is not in compliance with

14   the Court order.  They filed it at 8:14 last night.  And

15   he's not here.  I feel for you too because you're going to

16   have to listen to me because he's not here.

17           I just don't understand how lawyers who practice

18   in a court that review an order and understand that they

19   have time, there are specific -- it says the -- it says that

20   Mei Guo and HK shall, it doesn't say may, it says shall by

21   5:00 p.m.  That's what it says.  The order is very clear.

22           So if I were that lawyer and I wasn't going to

23   meet that deadline, I would have filed something to be

24   respectful to the Court and not hopefully be found in

25   contempt, because, you know, your firm could be found in

1    contempt.  You have not complied with a court order.  It's

2    very clear that there's a lack of compliance.  It's not even

3    a close call.

4          And I just -- you know, I just can't -- you

5    haven't told me anything to convince me why I should look at

6    anything you filed.  It's late.  There's no motion.  Mr.

7    Vartan isn't here.  He doesn't file a motion saying why he

8    can't be here.

9          This isn't a game of let's put somebody up for the

10   day and make them make the argument.  That's not what we're

11   doing here.  This is a very serious case with very serious

12   allegations and accusations and all kinds of things that

13   have gone on in this case.  And, you know, you have a duty

14   of candor to the Court as does every lawyer in this

15   courtroom.

16         I just can't -- I just can't imagine it.  I can't

17   imagine being a practicing lawyer and doing that.  Never in

18   my life would I have done that as a practicing lawyer.  I

19   would have been shaking in my boots if I didn't get

20   something on file by a time frame that a court ordered in an

21   order.

22         And apparently nobody seems to care with regard to

23   Ms. Guo and HK.  And that's just unacceptable to the Court.

24   That's unacceptable.  There is nothing.  You didn't even

25   make an attempt to comply timely with this order, not even

1    an attempt.

2            MR. DELLA FERA:  Well, Your Honor, as to the

3    timeliness, I have -- I have no explanation for you.

4            THE COURT:  I know you don't.  That's my point.

5            MR. DELLA FERA:  But I do --

6            THE COURT:  There is no explanation.

7            MR. DELLA FERA:  I do want Your Honor to be

8    assured that we are taking this matter very seriously.  I

9    don't think even Your Honor could suggest that this is a

10   pattern of action on behalf of my firm or my colleague.

11           We missed that 5:00 p.m. deadline.  There's no

12   excuse for that, Your Honor.  I agree with you.  But this is

13   not a pattern.  We take this matter very seriously.  We

14   appreciate the seriousness of the issues that the Trustee

15   and others have raised.

16           We've done our best to comply with deposition

17   deadlines, et cetera.  We're prepared to comply with the PJR

18   hearing schedule next week.

19           I do -- I would respectfully request that Your

20   Honor -- just in order to understand why it is that Ms. Guo

21   may not have kind of the ready access that most of us do to

22   these hard copy documents or electronic versions of those

23   documents, it is spelled out in Mr. Vartan's declaration.

24   And perhaps --

25           THE COURT:  It's really not.  So you can argue

Ho Wan Kwok—March 7, 2023                                      42

1    that, but it's not.  And this subpoena's been outstanding

2    since August.  It's March.  It's March 7th.

3             I mean, I'm going to make -- let you make your

4    argument, but I don't think you're going to convince me of

5    anything, Counsel.  This is unacceptable.  This is

6    unacceptable.

7             And when a motion for contempt is filed, I think

8    the rule says, if it's granted, then sanctions are entered.

9    I mean, it's not even -- I don't even think it gives the

10   Court discretion.  I just -- I just am at a loss as to why

11   you would proceed this way.  I just -- and I --

12            And you're right.  You're unfortunately the person

13   standing here today.  And I'm sorry for that for you, but

14   that is -- it's just not even remotely acceptable.

15            It's just -- it's as if you're saying to the

16   Court, and forget about your clients, it's as if you're

17   saying to the Court I don't care if the Court entered an

18   order requiring something to happen by 5:00 p.m.  I'll get

19   it in when I get it in.

20            That's not acceptable.  That's not how a court

21   works.  And as -- I'm just floored by it.  I'm honestly

22   floored that you, as your firm, as practicing lawyers, would

23   think that you didn't have to take some other step than just

24   file this late.  But that's what you've done, so, you know,

25   whatever consequences flow from that will flow from that.

1          But with regard to the -- Mr. Vartan's

2   declaration, it's completely -- lacks compliance with the

3   Court's order.  There is -- again, if the order says,

4   without question, I mean, we can pull it up if you'd like,

5   it says Mei Guo --

6          And, as Mr. Bassett correctly points out, there's

7   no argument about HK.  What did HK do?  They haven't done

8   anything.

9          And by the way, Mr. Kindseth stood here last April

10  when the debtor was still a debtor in possession and said HK

11  International -- I said to him are you sure you want to

12  appear and subject yourself to the jurisdiction of this

13  court?

14         And he said absolutely.  We are subjecting

15  ourselves to the jurisdiction of this court and we are going

16  to enter into an order with regard to the Lady May.  And

17  they went through the whole process.

18         And so HK said, and they are bound by what they

19  said last year, whether you represent them now or Mr.

20  Kindseth does, which is another whole issue, they said they

21  were subject to the jurisdiction of this court.  They put

22  themselves here, just like the debtor did.

23         And so why hasn't HK complied?  There isn't even

24  an attempt in Mr. Vartan's non-compliance declaration to

25  address HK.  So how do you respond to that?

1        MR. DELLA FERA:  Only, Your Honor, that Ms. Guo is

2    the sole principal of HK and her records are effectively --

3    her HK USA's records are effectively her records.

4        THE COURT:  So we can collapse those two entities

5    then into each other, HK and Ms. Guo?  That's what we can

6    do?  You're admitting that?

7        MR. DELLA FERA:  Well, no.  For purposes of

8    producing documents --

9        THE COURT:  No.  It's not for purposes of

10   producing documents.

11       MR. DELLA FERA:  Well, I could not --

12       THE COURT:  It's for everything.  You can't come

13   in and say, well, I didn't say anything about HK because Ms.

14   Guo is HK.  But Ms. Guo isn't really HK when the Trustee's

15   trying to get to HK's assets.  Oh, but, no, that, no.  You

16   can't -- you can't have it both ways.

17       I mean, I think you really need to think about

18   what you're saying to the Court.  This is a really serious

19   issue.  I'm not suggesting you don't think it's serious, but

20   to come in and try to argue to this court that that

21   declaration is somehow in compliance with the Court's order

22   of January 20, how could it possibly be?

23       The order says Mei Guo and HK shall by 5:00 p.m.

24   on January 31st search for and produce to the Trustee, and

25   it lists the categories of documents.  That's what it says.

1    It says that.  It's not -- it's not even remotely unclear.

2              MR. DELLA FERA:  No.  And there was untimeliness

3    with respect to that.

4              THE COURT:  So why didn't -- why didn't Mei Guo

5    submit a declaration then?

6              MR. DELLA FERA:  Well, on that point, Your Honor,

7    and at the risk of appearing to be argumentative, and that's

8    not the intention, the order directs, quote, "The HK parties

9    to file a sworn declaration on the docket detailing full

10   compliance with the order, or failing that describing in

11   detail the efforts taken to comply."

12             Frankly, it was our interpretation of that that a

13   declaration of counsel that detailed either full compliance

14   or describing in detail the efforts taken to comply would

15   satisfy that.

16             THE COURT:  Where in the Federal Rules of Civil

17   Procedure does that -- does that fall, Counsel?

18             Tell me when there's a motion for contempt filed

19   against a party that the lawyer who represents the

20   individual can come in and testify about what steps were

21   taken to comply with the discovery request.  Tell me where

22   that is.

23             MR. DELLA FERA:  I could not cite you that

24   provision as I stand here, Your Honor.

25             THE COURT:  Okay.  All right.  Thank you.

1          MR. DELLA FERA:  We could and will, if Your Honor

2     so directs, supply a declaration of Ms. Guo that reiterates

3     and/or expands upon what -- much of what Mr. Vartan has

4     declared if that is the Court's direction.

5          I can't -- you know, I won't belabor the point.  I

6     certainly don't want to compound the problem by attempting

7     to make declarations of my own.  And so other than as set

8     forth in Mr. Vartan's declaration, I don't have any

9     additional facts to add.

10          THE COURT:  Okay.  Thank you.

11          MR. DELLA FERA:  Thank you, Your Honor.

12          THE COURT:  Mr. Bassett?

13          MR. BASSETT:  Unless the Court has further

14     questions for me, I don't have anything else to add at this

15     point, Your Honor.

16          THE COURT:  So what are you -- what sanction are

17     you asking the Court to impose?

18          MR. BASSETT:   I think there are two, potentially

19     two issues, Your Honor.  Again, Nick Bassett from Paul

20     Hastings on behalf of the Chapter 11 Trustee.

21          So, you know, first we have the issue of, as I

22     said before, the time and expense spent by the Trustee and

23     his advisors trying to compel the production of these

24     documents, right?

25          The Trustee obviously had to file the motion to

1  compel that was heard in November.  The Court then issued an

2  order on that on January 20th.  And then we didn't get the

3  documents so we had to file the motion that we filed that

4  led us here today on February 10th.

5          Obviously a lot of time and effort were spent

6  preparing those documents, preparing for and appearing at

7  today's hearing, so I think it's certainly within the

8  Court's authority to impose costs on and charge Ms. Guo and

9  HK USA with paying the fees and expenses and costs that have

10  been incurred in those efforts.

11          The other aspect of this, which I think is, you

12  know, the most important for this case and for the Trustee's

13  investigation to actually get us where we need to be, is for

14  there to be, you know, forward looking sanctions that are

15  designed to finally, after all this time, compel Ms. Guo and

16  HK USA to comply with their obligations.

17          So obviously I would defer heavily to the Court as

18  to what is necessary and appropriate for that to happen.  I

19  think whatever happens should be on expedited time frame.

20          I think certainly the imposition of a daily,

21  accruing fine is well within the Court's authority because

22  we are talking about non-debtor parties here ostensibly.

23  That would work going forward.

24          And, you know, obviously, on the more extreme end,

25  the Court has remedies available to it, including even

1    incarceration as we talked about before.

2            But I'm just going to let the Court I think

3    determine what would be most appropriate under the

4    circumstances to do what we think needs to be done and what

5    we've been trying to do all along, which is just get the

6    information which we need for our investigation and to

7    administer this case.

8            THE COURT:  The deposition transcript of Mei Guo,

9    that's not on the docket of this case, is it?

10           MR. BASSETT:  It is not, Your Honor.

11           I'd have to go back and check to see if there were

12   any confidentiality designations.  But subject to that, we

13   would, you know, be able to file it if the Court would like.

14           THE COURT:  Well, I might, given what's occurred,

15   right?

16           MR. BASSETT:  Yeah.

17           THE COURT:  And given what you've talked about

18   today.

19           MR. BASSETT:  Of course.  Understood, Your Honor.

20           THE COURT:  So I'd need to think about that.  All

21   right.

22           Did you take -- did you try to take the deposition

23   of HK?

24           MR. BASSETT:  We have not yet taken our 2004

25   deposition of HK or -- I don't believe her deposition was a

1    30(b)(6), so the answer to that I believe is --

2              THE COURT:  I'm just curious.  Is there some other

3    document that you may have to put on the record that would

4    be of assistance to the Court in connection with your motion

5    as it relates to HK?

6              MR. BASSETT:  Something may come to me momentarily

7    before this hearing is over today, Your Honor, but the

8    deposition transcript --

9              THE COURT:  That's fine.

10             MR. BASSETT:  -- is the main thing.

11             THE COURT:  I'll let you -- if you come up with

12   something, you let me know.  Okay?

13             MR. BASSETT:  Thank you.

14             THE COURT:  I'm going to think about it obviously.

15   Documents were filed at 8 o'clock, 8:30 last night.  The

16   Court had hearings today as already noted, so I've asked

17   counsel and he's explained to me that -- he explained to me

18   they didn't comply.  They did at 8 o'clock or 8:15.  And

19   that there's no compliance issue in Mr. Vartan's non-

20   compliant declaration with regard to HK because Mei Guo is

21   HK.

22             So that's the answer that I've gotten and that's

23   what I have to work with, in addition to the fact of all the

24   other record of the case, which includes HK's voluntarily

25   submitting itself to the jurisdiction of this court back in

1   April of last year.  Or it might be even March.  I'd have to

2   look at the docket and make sure about that.

3         And then also I'd have to think about what the

4   appropriate sanctions will be, but I noticed -- would be if

5   I entered sanctions, but I do note that Rule 7037, which

6   incorporates Rule 37 of the Federal Rules of Civil

7   Procedure, says in (b)(2)(C), in addition, instead of or in

8   addition to the orders above, the Court must order the

9   disobedient party, the attorney advising the party, or both,

10  to pay the reasonable expenses, including attorney's fees,

11  caused by the failure unless the failure was substantially

12  justified or other circumstances make an award of expenses

13  unjust.

14        So, I'll be reviewing that provision of the

15  Federal Rules of Civil Procedure and the Federal Rules of

16  Bankruptcy Procedure as well.

17        MR. BASSETT:  And, Your Honor, in that regard, the

18  one other type of sanction that is available to the Court,

19  as a discovery sanction that I didn't mention before, is

20  obviously determining -- either determining facts against

21  the parties, determining that issues have been decided, or

22  precluding them from arguing otherwise.

23        Your Honor obviously has already, you know,

24  pointed out the admission that Mei Guo and HK are

25  effectively one in the same, but it could obviously extend

1    beyond that to other issues in the case as well.

2              THE COURT:  Okay.  Thank you.

3              Counsel?

4              MR. DELLA FERA:  Your Honor, if I may?

5              THE COURT:  Yes.

6              MR. DELLA FERA:  I don't believe that there is

7    sufficient evidence before this court that Mei Guo and HKI

8    are one in the same.

9              As I responded to the Court, in connection with

10   responding to this discovery request, the information that

11   Mei Guo had is the same information that's available to HKI

12   because she is the principal of HKI.

13             I hope Your Honor is not in a position to make a

14   finding today that HKI and Mei Guo are one in the same.

15             THE COURT:  So why didn't you turn over the

16   information from HK then?

17             MR. DELLA FERA:  There was no information to turn

18   over, Your Honor.

19             THE COURT:  Where did it say that?  Where does it

20   say that anywhere?  It doesn't say that in Mr. Vartan's

21   declaration.

22             MR. DELLA FERA:  It indicates that Ms. Guo

23   attempted to find information responsive to the subpoena --

24             THE COURT:  Okay.

25             MR. DELLA FERA:  -- and could not.

1          THE COURT:  Okay.

2          MR. DELLA FERA:  Thank you, Your Honor.

3          THE COURT:  All right.  So I will review the

4     documents filed, even the documents that are not -- were

5     filed untimely and do not provide compliance with the

6     Court's order, and I will determine next steps in the next

7     day or two with regard to that -- the show cause order.

8          And the motion for extension of time, Counsel, is

9     denied.  There's no basis to extend time for Mei Guo or HK

10    to respond.  You've had since August.  You haven't

11    responded.  The motion for extension of time is denied.  And

12    you certainly haven't put forth anything in argument or

13    papers to support any extension of time.

14         MR. DELLA FERA:  Your Honor, that motion may

15    already have been ruled upon.  I don't believe it was --

16         THE COURT:  No, it wasn't.

17         MR. DELLA FERA:  Okay.

18         THE COURT:  It was ruled upon in part.  And it was

19    ruled upon based upon your colleague's representation to

20    this court in writing that he would do a rolling disclosure

21    of documents, which he didn't do.

22         So he's now -- his credibility before this court

23    is on life support because he said in his paper, under Rule

24    11, as a lawyer signing a pleading, that he would put forth

25    on a rolling basis the discovery to the Trustee's counsel,

1  which he has not done.

2        So the motion is denied.  And I'm extremely

3  disappointed that any lawyer would come before this court

4  and act that way.

5        All right.  Now, Mr. Bassett, the next matter on

6  the calendar is ECF 1453, which is a motion for an order to

7  show cause why -- I'm sorry, that's the wrong number.  I

8  have the wrong number.  I apologize.  Hold on.  That was my

9  fault.

10        (Pause.)

11        THE COURT:  Those are 155 -- 1455, 1454 and 1453

12  are all related and I'll be dealing with those matters.

13        The only thing with regard to 1453 though, Mr.

14  Bassett, that we haven't fully addressed is the issue on the

15  individual debtor's filing a declaration asserting the Fifth

16  Amendment privilege.

17        And we -- I entered an order saying that there

18  would be some scheduling order entered in connection with

19  that issue following the conclusion of mediation.

20        So I don't know if you're prepared to address that

21  or if you have any suggestions with regard to that at the

22  moment, Mr. Bassett?

23        MR. BASSETT:  Your Honor, again, Nick Bassett from

24  Paul Hastings on behalf of the Trustee.

25        And I think just so we can all orient ourselves

1    and for the sake of clarity of the record, Your Honor

2    absoluteely was correct in her recollection.

3            This is paragraph 2 of the February 13th order at

4    ECF 1455.  And what it says was the Court is aware that the

5    debtor asserted his Fifth Amendment Right against self-

6    incrimination regarding production under the order

7    compelling production.  The applicability of the Act of

8    Production Doctrine will require additional submissions and

9    the Court will set a briefing schedule on that issue after

10   the conclusion of the mediation.

11           And then it goes on to encourage the parties to

12   see if common ground could be reached.  I'll report that no

13   common ground exists as to that issue.

14           I don't necessarily have a schedule.  I think it

15   is incumbent upon the debtor to respond to what we filed and

16   to provide clarity as to the basis, if any, for the blanket

17   assertion of the Fifth Amendment in response to literally

18   every document production request.

19           Not only it's in response to a request for the

20   additional production of documents, which the Court ordered

21   in the January 20th order, so there's a blanket assertion of

22   the Fifth Amendment saying he can't produce any documents

23   because doing so under the Act of Production Doctrine would

24   somehow incriminate him across the board on every subject

25   matter we covered in our subpoena.

1        And then the second is that he took the Fifth

2    Amendment in response to the January 20th order's

3    requirement that he submit a declaration talking about the

4    process that he went through similar to what we've been over

5    with Ms. Guo and HK USA to identify responsive documents.

6    He asserted the Fifth Amendment as a blanket assertion there

7    as well.

8        As I said, in what we filed, we have reached out

9    to counsel for the debtor.  We said, hey, we hear what

10   you're saying in response to our document request and

11   received your declaration which said, from Mr. Kwok, I'm

12   submitting, I'm asserting my Fifth Amendment privilege.

13       And the email we got in response was recorded in

14   our submission to the Court was, I think this was somebody

15   from the Zeisler firm said, we have nothing further to add

16   at this time as to the debtor's assertion of his Fifth

17   Amendment rights, but we are continuing to discuss the

18   matter with his criminal counsel.

19       I don't know who criminal counsel is.  I assume

20   that's somebody who's not appeared in this bankruptcy case,

21   but that was the response that we received.

22       So, basically at this juncture, we don't have any

23   visibility into the arguments that the debtor would raise as

24   to how he's entitled to a blanket assertion of the Fifth

25   across the board, so we really need some sort of briefing

1    schedule that would give us clarity.  And then obviously

2    once we understand their position, we can respond.

3                THE COURT:  Okay.

4                MR. BASSETT:  But I think --

5                THE COURT:  So your --

6                MR. BASSETT:  You know, I think, given how long

7    we've been at this, I would -- I would, you know,

8    respectfully suggest that whatever happen happen on a

9    relative truncated timetable, but otherwise I don't have

10   particular dates in mind.

11               THE COURT:  Your suggestion is though that the

12   debtor must file the brief first?

13               MR. BASSETT:  I think that makes sense, Your

14   Honor.

15               THE COURT:  That's what I was asking, what your --

16   not only dates --

17               MR. BASSETT:  Yeah.

18               THE COURT:  -- but what was your proposal with

19   regard to --

20               MR. BASSETT:  Understood.

21               THE COURT:  Okay.  Mr. Kindseth, do you wish to be

22   heard on that issue?

23               MR. KINDSETH:  Yes.

24               First of all, we don't disagree that the debtor

25   should take the lead on briefing that particular issue.

1          I would note, Your Honor, that matter 1455 was not

2     on today's calendar.

3          THE COURT:  53 -- 1453 --

4          MR. KINDSETH:  I actually thought --

5          THE COURT:  -- is on today's calendar.

6          MR. KINDSETH:  I thought the paragraph that was

7     referred to was at paragraph 1455.

8          THE COURT:  No, 1455 -- no.  That's the motion to

9     appear and show cause why HK and Mei Guo shouldn't be held

10    in contempt.  We just dealt with that.

11         MR. KINDSETH:  Fourteen --

12         THE COURT:  1453 is a motion for order to show

13    cause why the debtor, Mei Guo and HK, should not be held in

14    contempt for failure to comply with an order, and Rule 2004

15    subpoenas.  And your client did file something.  He filed a

16    declaration asserting the Fifth Amendment privilege.

17         So you need to now brief as why he can do that

18    with regard to the discovery sought by the Chapter 11

19    Trustee in this case.

20         MR. KINDSETH:  I see that it's on the screen, Your

21    Honor.  It's not on my printed calendar.  But regardless, we

22    respect the fact that there needs to be a briefing schedule

23    with respect to that issue so it could be addressed.

24         What I'd ask for is three weeks for an initial

25    brief, Your Honor.  It does represent some complicated

1    issues with respect to the Fifth Amendment and we'll need

2    the assistance of other counsel, criminal counsel, to

3    facilitate that brief, but we would be prepared to submit

4    such a brief in three weeks.

5         THE COURT:  Three weeks from today is March 28th,

6    is that the date that you're suggesting?

7         MR. KINDSETH:  That's the date that I'm asking

8    for, Your Honor.

9         THE COURT:  Okay.  That's fine.  All right.  Hold

10   on one second.

11        (Pause.)

12        THE COURT:  I'm not going to set an exact time of

13   the day, you know, but you've got to file it by 11:59 p.m.

14   or it's not going to be timely.  All right?

15        MR. KINDSETH:  I appreciate that, Your Honor.

16   Very much so.

17        THE COURT:  Okay.  Then, Attorney Bassett, how

18   much time -- I would think you would need at least two weeks

19   if not more to respond, but you tell me if I'm wrong.

20        MR. BASSETT:  Your Honor, I mean, the Trustee's

21   view is that we'd like to have this submitted fully to the

22   Court for a decision as soon as possible, again, just given

23   how long we've been trying to get these documents.

24        So, you know, if the Trustee's going to have --

25   sorry, if the debtor's going to have until March 28th, which

1    seems like frankly a lot of time at this juncture, that's

2    fine, the Court has decided that, I think we'd be willing to

3    do it in ten days after that.

4              THE COURT:  Okay.  So give me a second, please.

5         (Pause.)

6              THE COURT:  That would be Friday, April 7th is ten

7    days.

8              MR. BASSETT:  Okay.

9              THE COURT:  Not that -- I don't think it has any

10   impact on the Court's schedule, but I should ask, I think

11   that's Good Friday.  Are we open?

12             I mean, you could still file if the clerk's office

13   is closed, but I have no idea if we're closed.

14             You don't think we are?

15             THE COURTROOM DEPUTY:  We've normally been open.

16             THE COURT:  We've normally been open.  It used to

17   be a holiday, a state holiday in Connecticut, but I don't

18   believe that it is anymore.  But that's just so you know.

19   Okay?

20             MR. BASSETT:  Okay.  That's fine, Your Honor.

21             THE COURT:  Okay.  April 7.  And I'm not going to

22   put a time frame on you either, except that it's got to be

23   by 11:59 p.m.

24             MR. BASSETT:  Yeah.

25             THE COURT:  Okay?  All right.  Hold on one second

1    then.

2         (Pause.)

3              THE COURT:  Attorney Kindseth?

4              MR. KINDSETH:  Nothing further.

5              THE COURT:  Okay.  All right.

6              MR. BASSETT:  And, Your Honor --

7              THE COURT:  And then --

8              MR. BASSETT:  Your Honor, the only thing I was

9    going to suggest was, just so we have finality as to that

10   issue, to the extent the Court would hold a hearing with

11   respect to those submissions, I think it would be helpful if

12   we could set that now.

13             THE COURT:  I will set a date and then I will

14   determine whether or not we're actually going to have that

15   hearing based upon the submissions made.

16             MR. BASSETT:  Okay.

17             THE COURT:  Okay?

18             MR. BASSETT:  Thank you, Your Honor.

19             THE COURT:  All right.  So give me one moment

20   please to look at dates.

21        (Pause.)

22             MR. BASSETT:  Your Honor, I think we had talked

23   about an April 18th date previously that was already --

24             THE COURT:  Well, we -- you do have -- we now have

25   two things scheduled already for -- we already had basically

1   a pretrial conference, that's what is what I would call the

2   standard first pretrial conference that the clerk's office

3   sets, when an adversary proceeding is commenced, in the

4   Genever Holdings vs Kwok matter at 2:00 p.m.

5           Then, a few hours ago now, we adjourned the

6   hearing on the order to show cause with regard to Lamp

7   Capital and Golden Spring and that's also going to be held

8   on the 18th at 2:00, so that's fine.

9           MR. BASSETT:  Okay.

10          THE COURT:  Let's schedule it for the 18th at

11  2:00.  And then I will tell the parties whether or not I

12  feel I can rule on the submissions or I need any oral

13  argument and whether there actually will be oral argument on

14  that motion on the 18th.  Okay?

15          MR. BASSETT:  Thank you, Your Honor.

16          THE COURT:  All right.  Let's just make sure I've

17  got that correct.  And would be April 18th at 2:00 p.m.

18          So I'm going to ask the courtroom deputy that we

19  are going to note that the motion, 1453, will be continued

20  to April, what did I just say, 18th, right, at 2:00 p.m. if

21  necessary because I may determine something different based

22  upon the submissions of the parties.  Okay?

23          THE COURTROOM DEPUTY:  Okay.

24          THE COURT:  Okay.  Thank you.

25          THE COURTROOM DEPUTY:  You're welcome.

1          (Pause.)

2                    THE COURT:  All right.  Now, the next matter on

3          today I have, excuse me, I just have to get back to where I

4          was, is the 1492, the individual debtor's motion for stay

5          pending appeal of holding him in contempt of corporate

6          governance motion, order, I should say, I'm sorry.

7                    Attorney Henzy, you're going to be addressing that

8          motion?

9                    MR. HENZY:  Yes, Your Honor.

10                   THE COURT:  Okay.  Go right ahead.

11                   MR. HENZY:  Thank you, Your Honor.  Good

12         afternoon.

13                   THE COURT:  Good afternoon.

14                   MR. HENZY:  Your Honor, I'm not going to go into

15         really any background.  I know Your Honor is very familiar

16         with the contempt order.

17                   As Your Honor knows, there's a four-part test on

18         whether or not a stay pending appeal is appropriate.  It's

19         whether there's a probability of success or a substantial

20         probability or possibility of success or serious legal

21         questions going to the merits, irreparable injury, or

22         balance of hardships tipping in favor of a party, whether

23         there's substantial injury to the party opposing a stay if

24         one is issued, and the public interest.

25                   And, Your Honor, I think the Trustee agrees that

1    in the Second Circuit the cases say that the degree to which

2    a factor must be present varies with the strength of the

3    other factors, meaning more of one excuses less of the

4    other.

5          Your Honor, on the likelihood of success.  And,

6    again, so Your Honor, as Your Honor knows, you entered an

7    order finding Mr. Kwok in contempt because he had not taken

8    certain actions with respect to Ace Decade.  And you found

9    that paragraph 3 of the corporate governance order which

10   provides that he is to comply with, and I'm not going to

11   quote the language, 521(a)(3) and (4) was the basis for him

12   to have been required to take those actions.

13         On likelihood of success, Your Honor, and I think

14   Your Honor you recognized this case law in your contempt

15   order, in the Second Circuit, it is axiomatic that a

16   bankruptcy court's contempt power, like that of a district

17   court, is narrowly circumscribed.

18         And in our motion for stay, I cited the *PHH*

19   *Mortgage Corp.* at 6 F. 4th 503, the Second Circuit case from

20   2021, and other cases, including, Your Honor, the Supreme

21   Court case, *International Longshoreman's Association*, 389

22   U.S. 64.  It's a 1967 case where the Supreme Court stated

23   that the judicial contempt power is a potent weapon.

24         And, again, Your Honor, I cited in the motion

25   other cases, Supreme Court and Second Circuit cases, that

1   say the same.

2          And I believe Your Honor quoted this in your

3   decision, in your contempt decision, that based on that, a

4   civil contempt should not be resorted to where there is a

5   fair ground of doubt.  So that is the standard that the

6   Supreme Court and the Second Circuit have stated as to

7   whether -- as to the wrongfulness of the defendant's

8   conduct.

9          And Your Honor I believe cited, and I cited in the

10  motion, that the Supreme Court's *Taggart* decision, at 389

11  Supreme Court 1801.

12         Consistent, Your Honor, with those basic

13  principles, the Second Circuit has stated a clear standard

14  that a contempt order is warranted only where the moving

15  party establishes, that's the moving party establishes by

16  clear and convincing evidence, that the alleged contemnor

17  violated a district court's edict.

18         More specifically, a movant must establish that

19  the order the contemnor failed to comply with is clear and

20  unambiguous, the proof of non-compliance is clear and

21  convincing, and the contemnor has not diligently attempted

22  to comply in a reasonable manner.  And I cited in the

23  motion, Your Honor, the *King* case, Second Circuit case, at

24  65 F. 3d at 1058, and other cases.

25         Your Honor, specifically on the first factor the

1    Second Circuit has stated on whether or not an order is

2    clear and unambiguous, the Second Circuit, I'm sorry, the

3    Supreme Court has stated when the judicial contempt power is

4    founded upon a decree too vague to be understood, it can be

5    a deadly one.

6          Accordingly, civil contempt usually is not

7    appropriate unless those who must obey orders will know what

8    the Court intends to acquire and what it means to forbid.

9    That is at the Supreme Court's *International Longshoreman's*

10   decision and is also stated in the Supreme Court's *Taggart*

11   decision.

12         The Second Circuit adds to that, and critically I

13   think in this case, and this is a quote, "A clear and

14   unambiguous order is one that leaves no uncertainty in the

15   minds of those to whom it is addressed who must be able to

16   ascertain from the four corners of the order precisely what

17   acts are forbidden."  That's the *King* case at page 1058.

18   And, again, in the motion I cite other Second Circuit cases

19   that say the same.

20         The Second Circuit has also stated that in

21   contempt cases ambiguities and omissions are to redound to

22   the benefit of the person charged with contempt.  And in the

23   motion I cite the *Drywall* papers, local case at 889 F. 2d

24   389.

25         Your Honor, of particular relevance here, and we

1    did object on this basis in the objection we filed to the

2    Trustee's motion, of particular relevance here the general

3    rule is that a statute cannot properly be made the basis of

4    contempt merely by incorporating a reference to its broad

5    terms into a court order.

6              So I'm going to say that again.

7              A statute cannot properly be made the basis of

8    contempt proceedings merely by incorporating a reference to

9    its broad terms into a court order.  That's the general

10   rule.  And I cite, Your Honor, in the motion, a number of

11   Supreme Court cases that state that rule.  And I'm going to

12   go back to those in a second.

13             I also cite the leading Second Circuit, which is

14   *S.C. Johnson and Son, Inc. vs Clorox Company*, 241 F. 3d 232

15   at 240 through 41.  That's a Second Circuit 2001 case.

16             In that case, the Second Circuit states an

17   injunction must be more specific than a simple command that

18   the defendant obey the law.

19             To comply with the specificity, and this is a

20   continuing quote, Your Honor, and clarity requirements, "An

21   injunction must be specific and definite enough to apprise

22   those within its scope of the conduct that is being

23   prescribed.  This rule against broad, vague injunctions is

24   designed to prevent uncertainty and confusion on the part of

25   those to whom the injunction is directed, and to be sure

1    that the appellate court knows precisely what is being

2    reviewed."

3           So this general rule, Your Honor, on incorporating

4    a statute or so-called obey the law orders circles back to

5    the requirement that an order be clear and unambiguous.

6           And just to give Your Honor some language from

7    Supreme Court decisions, again, this is in the motion, *NLRB*

8    *vs. Express Publishing Company* decision at 312 U.S. 426 at

9    435 through 36, the Supreme Court stated a federal court has

10   broad power to restrain acts which are the same type or

11   class as unlawful acts which the Court has found to have

12   been committed or whose commission in the future unless

13   enjoined may fairly be anticipated from the defendant's

14   conduct in the past.

15          But the mere fact that a court has found the

16   defendant has committed an act in violation of a statute

17   does not justify an injunction broadly to obey the statute

18   and thus subject the defendant to contempt proceedings if he

19   shall at anytime in the future commit some new violation

20   unlike and unrelated to that with which he was originally

21   charged.

22          This court will strike from an injunction decree

23   restraints upon the commission of unlawful acts which are

24   thus disassociated from those which a defendant has

25   committed.

1      Your Honor, in the *McComb vs Jacksonville Paper*

2  case at 336 U.S. 187, it's at page 195 through 96, this is a

3  joint dissent.  It is a dissent, Your Honor, so, therefore,

4  admittedly, it's dicta, from Justices Rankfurter and

5  Jackson.

6      Although I will say that this language is quoted

7  by courts sort of down the years, it's 1949 decision, in

8  that dissent, Justices Rankfurter and Jackson state this

9  court has indicated again and again that a statute cannot

10  properly be made the basis of contempt proceedings merely by

11  incorporating a reference to its broad terms into a court

12  order.

13      Again, Your Honor, in the motion, I cite other

14  Supreme Court case law.  And in addition to the Second

15  Circuit case, I cite case law from other circuits that

16  clearly state the general rule that against so-called obey

17  the law orders, meaning orders that incorporate a general

18  statute, and say follow that statute and overlay potential

19  contempt proceeding if you don't -- if you don't follow the

20  statute.

21      Your Honor, in their objection, in his objection,

22  the Trustee cites a number of cases which I'm just going to

23  quickly refer to because I think they actually prove the

24  point.

25      The Trustee cites the *Ligon vs. City of New York*

1    case at 925 F. Supp. 478.  In that case, the Court ordered

2    the New York Police Department to immediately, this is the

3    language of the Court's order, cease performing trespass

4    stops outside of private buildings in the Bronx without

5    reasonable suspicion of trespass.

6          So, Your Honor, the New York Police Department had

7    instituted a program where an owner of a private building

8    could essentially ask the police to stop and frisk people

9    who were coming out of their buildings, or near their

10   buildings and the New York Police were sued based on Fourth

11   Amendment grounds.  And, again, the Court specifically

12   ordered the police to stop unless the police had reasonable

13   suspicion of trespass.

14         The Court then went to expressly define what its

15   test was for reasonable suspicion rather than the Court just

16   ordering the New York City Police Department to comply with

17   the Fourth Amendment.

18         The New York City Police Department complained

19   that it was a simple command that they simply obey the law

20   and so that that order was not enforceable.

21         And the Court responded that it had expressly --

22   it had made express what the requirements were.  You are to

23   stop arresting people or stop -- you're to stop stopping and

24   frisking people unless you have reasonable suspicion.  And,

25   again, the Court gave very, very clear definition on what it

1   meant by reasonable suspicion.

2           Your Honor, as distinguished from here, what the

3   corporate governance order, paragraph 3 of the corporate

4   governance order, did was it quoted 521(a)(3) and (4) and

5   said comply with these.  And 521(a)(3) provides the debtor

6   is to cooperate, but it doesn't give -- its very

7   distinguishable say from that --  the situation in the *Ligon*

8   case where the Court specifically said you can't arrest

9   people unless you have reasonable suspicion and it

10  specifically defined what it meant by reasonable suspicion.

11          The Trustee cites *U.S. v. Miller*.  Your Honor,

12  it's a Ninth Circuit case at 588 F. 2d 1256.  Your Honor, in

13  that case, the Court did order someone essentially to comply

14  with the statute, but the distinction was that the statute

15  itself, and the language of the order -- this was an

16  interstate commerce case.

17          And the Interstate Commerce Act requires people

18  who are transporting goods on highways that they be licensed

19  to do so.  And this entity apparently was not -- was not

20  licensed and was transporting goods and so the Court ordered

21  in compliance with the Interstate Commerce Act entered an

22  order expressly directing this party to comply with the

23  order.

24          But, again, the specificity there is you can't

25  transport goods on highways unless you go get licensed by

1    the ICC.  So not at all a general statute where a party

2    wouldn't know what their obligation was purely based on that

3    statute and that statute's incorporation into an order.

4           With that order, and with the order in *Ligon*, you

5    wouldn't have to outside of the four corners of the order to

6    understand what it is that you're required to do or that you

7    are prohibited from doing.

8           The Trustee cites the *SEC*, I'm sorry, the *Perez*

9    *vs. Ohio Bell Telephone Company* case.  It's at 655 F. App'x

10   404.  It's a Sixth Circuit, 2016 case.  That, Your Honor,

11   there, the Sixth Circuit noted that there may be

12   circumstances when obey the law injunctions are justified by

13   the facts of the case in which the injunction is sought.

14          But there, the Sixth Circuit actually denied the

15   injunction that was being sought and relied on the general

16   rule that an injunction that does no more than prohibit any

17   and all conduct and contravention of already existing law is

18   over broad under the terms of Rule 65.

19          So, again, Your Honor, I think the cases that the

20   Trustee cites really, if anything, prove the rule or are not

21   inconsistent with my argument, which is there is a general

22   rule, Supreme Court cases, Second Circuit cases, against

23   obey the law injunctions and nothing in those cases say that

24   that's not true.

25          Again, those cases are very distinguishable

1   because there was specific conduct that was required in

2   those cases to the extent that they were injunctions that

3   were entered.

4           In this case, Your Honor, paragraph 3, I'm going

5   to disagree with what was in Your Honor's -- in the order.

6   Paragraph 3 does not, as the Court stated in the order,

7   require the individual debtor's cooperation with the Trustee

8   in locating the individual debtor's nominee, Ms. Wang, in

9   effectuating the turnover of her ownership interest in Ace

10  Decade.

11          Paragraph 3 says nothing whatsoever about Ms. Wang

12  or about Ace Decade.  It just broadly and generally requires

13  the debtor to cooperate with the Trustee in accordance with

14  Section 521(a)(3) and 521(a)(4).

15          The specific action required of the debtor is not

16  within the four corners of the order.  The debtor could not

17  tell from the order alone what he was required to do.

18          The critical thing, Your Honor, is that the

19  content here, or the specific action of the debtor, was left

20  to the discretion of the Trustee.  If the Trustee didn't

21  tell Mr. Kwok to go do this with respect to Ace Decade, then

22  he wouldn't have been required to do it.

23          The order itself did not require him to do it.  It

24  was the order plus this direction from Mr. Despins that

25  arguably required the debtor to go do this.  And that is

1    where we run afoul of the general rule of the *King* case that

2    says you have to -- it has to be within the four corners of

3    the order and runs afoul of the rule against obey the law

4    orders.

5                THE COURT:  Okay.  So let me just stop you right

6    there.

7                I'm not going to rule on what I've already ruled

8    on.  Your arguing your appeal as opposed to how the factors

9    on the stay pending appeal I should look at to determine

10   whether I should grant a stay pending appeal.

11               So I'm going to have you focus on the factors and

12   tell me whether your client's going to suffer irreparable

13   harm absent a stay, whether your client's going to suffer

14   substantial injury absent a stay, whether the movant --

15   whether any party will suffer substantial injury if a stay

16   is issued, whether you, as the movant, has demonstrated a

17   substantial possibility, although less than a likelihood of

18   success on appeal, and how the public interest may be

19   affected if I don't stay your -- this order.  That's what I

20   need you to tell me.

21               MR. HENZY:  If I wasn't being clear, Your Honor, I

22   was focusing on what I think you just laid out as the third

23   factor which is the likelihood of success on appeal.

24               THE COURT:  Okay.  Thank you.  All right.  Go

25   ahead.

1          MR. HENZY:  And so I apologize if I was not clear.

2          THE COURT:  So you're not saying that you're going

3     to suffer irreparable -- are you arguing that your client --

4          MR. HENZY:  Oh, I'm going to get there.  I'm going

5     to get there, Your Honor.

6          THE COURT:  Okay.  Well, let's do that.

7          MR. HENZY:  Okay.  Your Honor, if I could finish

8     on the likelihood of success point?  I just --

9          THE COURT:  Yeah.  Yeah.  Sure.  Sure.  I just

10    want to focus on the elements.  That's what I want to focus

11    on.

12         MR. HENZY:  I'll try -- I'll try to shorten it up,

13    Your Honor.

14         THE COURT:  Okay.

15         MR. HENZY:  I think, Your Honor, that your order

16    is an obey the law order.

17         THE COURT:  Okay.

18         MR. HENZY:  And I think the case law is clear that

19    those cannot be the basis of contempt and they are not

20    enforceable.

21         Again, without -- you left to Mr. Despins'

22    discretion what was going to be required.  You did not

23    require Mr. Kwok to take action with respect to Ace Decade.

24    It's Mr. Despins required Mr. Kwok to take action with

25    respect to Ace Decade.  And that may be, Your Honor, the

1    basis for some other relief, but it's -- it's not, it can't

2    be the basis for a contempt order.

3           So Mr. Despins may have rights and he may be able

4    to take action based on what's happening with Ace Decade,

5    but he can't get contempt.

6           So I think there's a distinction there.  It's not

7    that Mr. Despins doesn't have any remedy, it's the remedy

8    that he chose to pursue I think is not legally supportable.

9           And I think, on likelihood of success, Your Honor,

10   with all due respect, I think the case law is clear that

11   obey the law injunctions are not -- are not enforceable.

12          On the irreparable harm, Your Honor, case law is

13   clear that where compliance -- when compliance would moot

14   the appeal, that that may constitute irreparable harm.

15          So if Mr. Kwok were to comply with the order, he

16   was supposed to comply yesterday, and obviously, I mean he

17   has not complied, that he would then not have the -- it

18   would moot his appeal of Your Honor's contempt finding.

19          And among other cases, and I did not cite these in

20   the motion because this is really in response to the

21   Trustee's objection, *Becker vs. U.S.*, it's at 451 --

22          THE COURT:  It's not cited?  What you just said,

23   *Becker vs. U.S.*, you're saying you have not cited it or you

24   did cite it?  I'm sorry, I couldn't hear you.

25          MR. HENZY:  So I didn't cite it in the -- in the

1   motion, Your Honor, so this is I'm really responding to

2   arguments that the Trustee made in his objection to the

3   motion.

4           THE COURT:  Okay.

5           MR. HENZY:  Okay.  But the *Becker vs. U.S.*, 451

6   U.S. 1306, so that's -- I know I'm going fast, Your Honor --

7   so 451 U.S. 1306.

8           THE COURT:  I got it.

9           MR. HENZY:  At page 311, I'm sorry 1311, that's a

10  1981 Supreme Court case, where the Supreme Court says the

11  balance in that case, the Court found I should say, it's a

12  Justice Rehnquist opinion, the balance of the equities tips

13  decidedly in favor of the applicant so the stay is not

14  granted.  Applicant's appeal may well be mooted, I'm sorry,

15  will be -- may well become moot.

16          Second Supreme Court case, *John Doe Agency vs.*

17  *John Doe Corp.*  It's at 488 U.S. 1306, so that's 448 U.S.

18  1306.

19          THE COURT:  Same page number as the other?  That's

20  kind of interesting, isn't it?

21          MR. HENZY:  No.  So, Your Honor, the *Becker* case

22  was at 451 U.S. -- oh, I definitely got my -- I will provide

23  the citations to the Court, Your Honor, because I'm now

24  looking at my notes and --

25          THE COURT:  It would be unusual to have two cases

1    start on the same page in different volumes.

2           MR. HENZY:  Well, actually, Your Honor -- so the

3    *Becker* case is 451 U.S. -- well, Your Honor, sometimes -- so

4    the *Becker* case is 451 U.S. 1306.

5           THE COURT:  Yeah.

6           MR. HENZY:  And the *John Doe Agency* case, in fact,

7    is 488 U.S. --

8           THE COURT:  Okay.  Well, let's -- that's why I

9    wanted to make sure.

10          MR. HENZY:  -- 1306.

11          THE COURT:  Okay.  All right.

12          MR. HENZY:  So thank you for asking the question,

13   Your Honor.

14          THE COURT:  Okay.

15          MR. HENZY:  And I don't need to provide you with

16   the cite because that is the same page number, but the --

17   and that -- that case makes the same point.

18          THE COURT:  Okay.

19          MR. HENZY:  A third Supreme Court case, and I'm --

20   just want to make sure because it's not the same, but it's

21   very close, is *New York vs. Kleppe* 429 U.S. 1307.  It's a

22   1976 case.

23          THE COURT:  I'm laughing because of the page

24   again, 1307.

25          MR. HENZY:  Your Honor, I'm looking at it and I

1    had -- I wanted to confirm it too, but it is the correct

2    page number.

3              THE COURT:  Okay.

4              MR. HENZY:  Where the Supreme Court, the quote

5    from that case, "Perhaps the most compelling justification

6    for a circuit justice to upset an interim decision by a

7    Court of Appeals is to protect" -- so this was on a motion

8    for stay to a circuit justice as opposed to the full court

9    -- "is to protect this court's power to entertain a petition

10   per certiorari before or after a final judgment of a Court

11   of Appeals."

12             Another cite, Your Honor, *In re Adelphia*

13   *Communications Corp.* 361 B.R. 337.  And at page 348, the

14   Southern District of New York states with a denial of a stay

15   pending appeal risks mooting any appeal of significant

16   claims of error, the irreparable harm standard requirement

17   is satisfied.  So, again, Your Honor, the issue here is that

18   if Mr. Kwok were to comply, he would -- it would moot his

19   appeal.

20             A second irreparable harm point, Your Honor, is

21   that non-compliance will not result not in merely monetary

22   damages, which is the argument the Trustee makes in his

23   objection to the motion, it really will expose Mr. Kwok to

24   further contempt.  He potentially is exposed to an argument

25   that he's in contempt of your contempt order.

1        So your contempt order says he's in contempt of

2   the corporate governance order and the sanction, if he does

3   not purge himself, which he was supposed to purge himself by

4   yesterday and he has not purged himself, is that he will be

5   charged for the Trustee's attorney's fees in connection with

6   this matter, in connection with the motion for contempt.

7        Your Honor, Bankruptcy Code Section 1115 provides

8   that any property that comes to Mr. Kwok post-petition, any

9   income that he receives post-petition, is property of the

10  bankruptcy estate; therefore, by definition, any property

11  the debtor would have to comply with the sanction that

12  you've ordered would be property of the bankruptcy estate,

13  which I think means it would be legally impossible for him

14  to comply.

15       He would not -- he does not have, legally he would

16  not have, any money that was not already property of the

17  bankruptcy estate to pay for the Trustee's fees.

18       And, Your Honor, I couldn't find a lot of case law

19  specifically on that point.

20       One case, a Southern District of New York case,

21  *U.S. vs. Fox*, it's at 1983 U.S. District Lexis 19273, and

22  there the Court states the respondent is faced with the

23  irreparable -- with irreparable harm in that without a stay

24  his only means of preserving his appeal is through risk of

25  sanctions for contempt.

1    So, here, Mr. Kwok is faced with that choice.  The

2    only way he can preserve his appeal is to not comply with

3    the order.  But by doing so, he exposes himself to a risk of

4    sanctions for contempt.

5    And, Your Honor, I believe that that, facing

6    contempt, being -- potentially being held in contempt for

7    not complying with Your Honor's contempt order, that that

8    constitutes irreparable harm.

9    In terms of harm to the Trustee, a couple of

10   points Your Honor.

11   What the Trustee argues in his objection to the

12   motion is that because he doesn't have control of Ace Decade

13   it's making what he's doing in the UBS litigation much more

14   difficult.  And he goes through a recitation of what he has

15   had to do over there, in the U.K., in connection with the

16   UBS litigation.

17   First, Your Honor, Mr. Despins is going to have to

18   fight for control.  My understanding is he is going to have

19   to fight for control over Ace Decade.  There is another

20   person out there who claims he is the owner of Ace Decade.

21   THE COURT:  Who's that?

22   MR. HENZY:  His name is John Wey or Wang.  I think

23   it's -- I don't --

24   THE COURT:  Do you know how to spell it?

25   MR. HENZY:  So, Your Honor, there's a -- he has a

1    Chinese name.

2              THE COURT:  I understand.  I'm just asking you if

3    you know how to spell it?

4              MR. HENZY:  And I believe the Chinese version,

5    it's Wang Zei, and I -- I'm sorry, Zang Wey -- and I don't

6    know how to spell it, Your Honor.  The Americanized version

7    is he's referred to as John Wey.

8              THE COURT:  Do you know how to spell Wey?

9              MR. HENZY:  I don't, Your Honor.  I'm not -- I

10   don't.  I apologize.

11             THE COURT:  Well, how do you know this

12   information?

13             The reason I'm asking is it's not going to -- for

14   transcript purposes, right, what's the transcriber going to

15   do with that?  So we need to know how it's spelled.

16             MR. HENZY:  I would spell --

17             THE COURT:  Even if you only know the -- what you

18   referred to as the American spelling.

19             MR. HENZY:  I would spell it John, J-O-H-N, and

20   then Wey, W-E-Y.  But I --

21             THE COURT:  W-E-Y?

22             MR. HENZY:  Yeah.

23             THE COURT:  Okay.

24             MR. HENZY:  But, again, that's an Americanized

25   version and --

1          THE COURT:  I understand.  I just --

2          MR. HENZY:  -- different people might have --

3          THE COURT:  I just want to have something --

4          MR. HENZY:  Yeah.

5          THE COURT:  -- in the record so when someone

6    orders a transcript, the transcriber has something to work

7    with.  Okay?

8          MR. HENZY:  Yeah.

9          THE COURT:  That's my point.  So go ahead.

10         MR. HENZY:  So the point, Your Honor, is that even

11   if Mr. Kwok somehow could cause the nominee shareholder of

12   Ace Decade to deliver to Mr. Despins what he wants, I don't

13   think that's going to end it.  I think that he is --

14         THE COURT:  But that doesn't matter.  I mean, I'm

15   listening to all your other arguments, but that doesn't

16   matter.  It doesn't matter.  I don't --

17         John Wey isn't here.  I don't have -- John Wey

18   didn't voluntarily file a Chapter 11 petition, right?  Mr.

19   Kwok did.

20         MR. HENZY:  Mm-hmm.

21         THE COURT:  So, I mean, while I hear your other

22   arguments, I don't find that argument persuasive, because if

23   that's true, what you're saying is true about John Wey, then

24   the Trustee will have to deal with that.  That has nothing

25   to do with whether or not Mr. Kwok should have done

1    something with regard to Ace Decade.  So that's all I'm

2    saying.  Okay?

3            MR. HENZY:  I don't disagree with you, Your Honor.

4    I think where that matters is on the stay pending appeal

5    standard.  So it's what's -- if you grant a stay --

6            THE COURT:  But I -- but I can't -- I can't rely

7    on what you just said on the stay pending appeal standard

8    because I don't have any evidence.

9            All you have, I mean, at this point, is you've

10   been told, I think you said, you've been told that there is

11   some other person out there who's claiming an interest in

12   Ace Decade and his name is John Wey.  That's all.

13           I don't have any evidence in the record of this

14   case about that, so I'm not going to consider that on stay

15   pending appeal.

16           MR. HENZY:  And, Your Honor, I'm not sure you have

17   any evidence of what's happening in the U.K.

18           And if you are not going to take cognizance of

19   what the Trustee put in his objection to the motion about

20   what is going on in the U.K., then I would -- then I would

21   say I'm okay with that.  But I think it has to be -- there

22   has to be equivalence.

23           THE COURT:  Well, wait a minute.  When you're

24   saying that -- I don't know yet because I haven't heard from

25   the Trustee, but my recollection or my -- is that there was

1    some order issued in the United -- in the Untied Kingdom

2    saying that -- I don't remember what it said, I'm going to

3    let the Trustee tell me what it said, right -- but that he

4    hash to turn over the information about Ace Decade.  That's

5    what I believe.

6              So hold on.  Just let me say what I'm going to say

7    and you can tell me whatever you want to tell me.

8              MR. HENZY:  Okay.

9              THE COURT:  So if he shows me that order, why

10   wouldn't I consider it?

11             That's completely different from saying you've

12   been told, in my opinion anyway, that is completely

13   different from anything in this record that says there's

14   somebody named John Wey who claims he owns Ace Decade.

15             MR. HENZY:  Well, it's more than a -- so two

16   points.

17             You're correct.  An order was entered in the U.K.

18   litigation that granted Mr. Despins recognition in the U.K.

19   litigation and ordered the U.K. lawyers to turn over -- I'm

20   going to say as I understand it most but not all of the

21   documents in their possession.

22             So that you're absolutely correct.  An order that

23   says roughly that Mr. Despins -- and Mr. Bassett I'm sure

24   would know with more specificity what that order said -- but

25   that order absolutely entered and I have no --

1    Obviously Your Honor, I think can take cognizance

2    of what's in an order entered by a court, but I think what

3    Mr. -- in the objection, what the Trustee tells you is a lot

4    more than what's in the order.  He tells you about all the

5    difficulty he has had over in the U.K. proceeding as a

6    result of Mr. Kwok not having done whatever Mr. Despins

7    wanted with respect to Ace Decade.

8    So, again, I have no problem.  In fact, one of the

9    arguments I would make in terms of harm to the Trustee is he

10   managed to get this order entered over there.  He's doing

11   great.  He's gotten -- he's been recognized.  He's getting

12   all the information he wants.  What's the problem?  So I'm

13   fine with that.

14   I mean, again, you can take cognizance of that

15   order.  And the Trustee is doing his thing over there, and

16   he's getting, so far, he's getting what he needs.

17   It's not -- I'm telling you -- this is one of

18   those difficult things in this case, Your Honor.  I'm

19   telling you that it has been claimed that there is this

20   other person who's the owner.  I'm not sure I can tell you

21   the source of that because frankly it's in a document that I

22   think is -- has been marked confidential.

23   THE COURT:  Well, it's not part of the motion

24   anyway, so I think we need to move on.

25   MR. HENZY:  Okay.

1          THE COURT:  Okay?

2          MR. HENZY:  Okay.  On harm to the Trustee, Your

3   Honor, I want -- I want to try to get this right, the debtor

4   is not going to comply.  He is not going to purge himself of

5   the contempt.  And I understand that you found differently

6   in the order, but he does not believe he has the ability to

7   comply.

8          So I understand this may be kind of a perverse

9   argument.

10         The Trustee's not going to be harmed at all

11  because nothing is going to change with respect to the

12  obligations on the Trustee depending on whether or not you

13  stay this order.  The only thing that will change is is the

14  debtor going to face the risk he will be held in further

15  contempt by non-payment of the sanction that you ordered.

16         Whatever burdens there are on the Trustee in the

17  U.K. litigation, you entering a stay today or not entering a

18  stay today are not going to change those burdens, because,

19  again, Mr. Kwok is not going to, and I would argue he's not

20  going to be able to, but he is not going to comply.  He's

21  not going to deliver to Mr. Despins the share certificates

22  of Ace Decade.

23         So I don't think that you entering a stay --

24  again, Mr. Despins is going to argue, and it may well be

25  true, him not having control of Ace Decade is creating these

1    additional burdens and so there's harm to him, but the harm

2    will not be caused by the fact that you enter a stay of the

3    pending appeal if you decide to do so.

4             Your Honor, on public interest, there is a public

5    policy of preserving rights that would otherwise be lost.

6    Again, if Mr. Kwok were to comply, it would moot his appeal.

7             There is the seriousness of the contempt power.

8    And I quoted and cited the cases from the Supreme Court and

9    the Second Circuit that show stay contempt is a potent

10   weapon.  And I think there's a policy that courts should be

11   very careful before implementing them or at least give

12   parties a full and fair opportunity to vindicate their

13   rights.

14            Your Honor, I'd also say that if there's not a

15   stay here, there is going to be follow-on litigation,

16   because presumably the Trustee is going to be in front of

17   you seeking to put a dollar amount on the sanction that

18   you've ordered.

19            And just to be clear, you have ordered a sanction.

20   If Mr. Kwok did not purge himself by yesterday, your order

21   states that he is going to be sanctioned the amount of

22   attorney's fees that the Trustee has incurred here.  There

23   will be further litigation on that and that may not be

24   necessary.  And there is case law that says that judicial

25   economy is -- constitutes public interest within the meaning

1    of the stay statute.

2           And the one case I would cite, Your Honor, is *In*

3    *re Gorsoan.  It's* G-O-R-S-O-A-N.  It's a Southern District

4    of New York case from 2020 at 2020 U.S. District Lexis

5    128980.  And the Court says, among other things, that

6    there's a public interest in preserving judicial resources

7    by avoiding unnecessary proceedings while an appeal is

8    pending.

9           And I think that is the case that we have here.

10   There is an appeal.  And to continue to litigate around this

11   matter while that appeal is pending risks duplication of

12   judicial efforts.

13          So, Your Honor, with that, I'd ask that the motion

14   for stay be granted.  Thank you.

15          THE COURT:  Thank you.

16          Trustee Despins?

17          MR. DESPINS:  Good afternoon, Your Honor.  For the

18   record, Luc Despins, Chapter 11 Trustee.  I'll try to be

19   brief on this.

20          And I'm not going to spend a lot of time on the

21   issue of the likelihood that Your Honor's decision would be

22   upheld on appeal because I've seen very -- I've rarely seen

23   a bankruptcy judge say, actually, I got it wrong, let me

24   correct it now.  And so we believe you got it right.  We

25   believe that it was precise.

1        And actually to the extent they're confused

2    somehow, the motion or the order granting the contempt is

3    very precise, page 6 and 7, as to what they should have

4    done.  So by now, they should know.

5        This is kind of, you know, insulting people's

6    intelligence saying we're really confused.  We don't know

7    what we have to do or not do.  We had a whole trial on this.

8        What were we trying to get?  Control of Ace

9    Decade.  That is what we want and that's what they need to

10   give us.  And Your Honor found that they can do that.

11       I would like to talk about the harm to the estate

12   here.  And what's happening, and we filed this -- or maybe

13   on Monday, Your Honor, so you probably didn't get a chance

14   to look at it, but Mr. Kwok -- you know, we always, you

15   know, appreciate the gifts that he gives us -- but he's on

16   the internet.  This is a quote from him.  This is on

17   paragraph 11 of our response.

18       He says, "I guess when Luc was asking UBS for

19   money, UBS told him you can kick Miles Guo out of the case,

20   but Ace Decade and Dawn State have nothing to do with Miles

21   Guo.  How can you guarantee that dismissal of the case"  --

22   in other words -- this is still him saying this -- "If UBS

23   decided to pay Luc, how could Luc manage to close the case

24   for good?  He is not capable of doing so."

25       He's basically taunting the Trustee and the Court

1    because he's saying the Trustee cannot settle the UBS

2    litigation because the Trustee does not have control of Ace

3    Decade and -- he doesn't say that -- but he's the one who's

4    preventing that.

5            And as to the harm, you know, Mr. Henzy was

6    talking about, well, I don't know, we should exclude what

7    the Trustee said about the harm to the Trustee or to the

8    estate, I mean, it's flagrant here.

9            We've spent hundreds of hours in the U.K. -- and I

10   remember vividly because I have to get up at 4 o'clock,

11   sometimes 5 o'clock in the morning to be on these court Zoom

12   calls -- where the other party opposing us is Ace Decade.

13   It's Ace Decade opposing us at every turn.

14           And you might say -- he might say, well, he got

15   what he wanted.  Ultimately, we did after two or three

16   hearings.  But this continues in the sense the judge said

17   you will, you, the lawyers, will produce the advice you gave

18   to Mr. Kwok and Ace Decade to the Trustee so he can review

19   that advice.  And they did that, but the lawyers for Ace

20   Decade redacted.

21           So, for example, there's a sentence that says on

22   this issue there are three important factors.  Everything is

23   redacted after that.  So I have a document that is useless

24   or quasi-useless so I need to go back to court again.  So

25   this is trench warfare.

1          And, you know, so there's irreparable harm to the

2     estate because we're not getting to where we want to be

3     because the UBS litigation in theory could be a valuable

4     asset, but he is preventing me from getting at that.

5          And I have the utmost respect for Mr. Henzy, but I

6     cannot believe that he pulled the Zang Wey rabbit out of the

7     hat.

8          Mr. Kwok has three or four go-to responses when

9     he's in trouble.

10         One is CCP.  Whoever did something wrong to me,

11    like Paul Hastings, is CCP.  Ostrager is CCP now.  We've

12    read recently that somehow he's influenced by the CCP.

13         The next one is forgery.  You will hear that, I

14    guarantee you, in this case.  He will argue that some

15    documents are forged.  That's what happened in the PAX

16    litigation.  They produced documents.  And they later said

17    these are forgery.  These are not -- I didn't sign those.

18    So that's the next one.

19         Then the other one is take the Fifth.

20         And the last one is Zang Wey.  Zang Wey is the ace

21    in the whole because -- we have this saying in French, I'm

22    not going to say it -- but basically somebody who comes from

23    afar can lie very easily.  And what I'm saying about that is

24    that he has said all sorts of things about Zang Wey.  That

25    Zang Wey is in prison.  We cannot contact him.  He's been --

1    he is being detained.  But he owns all of -- it's just --

2    it's insanity.

3           And, Your Honor, you've probably excluded that,

4    but I think it's really important for the Court to deal with

5    this, you know, by denying the stay because this is, you

6    know, fundamental and goes to the integrity of the process.

7           And, Your Honor, your order on contempt said,

8    that's built into the order, that the Court can impose

9    additional sanctions.

10          And what I didn't understand from Mr. Henzy's

11   argument, he said, well, it's irreparable harm because

12   compliance would moot the appeal.  I hear that as, oh, we

13   can comply, but we won't because that would moot the appeal.

14   And it's a bizarre argument for somebody who's been held in

15   contempt to make I think because it implies that, in fact,

16   they could.  But then later on he says we can't and we

17   won't.

18          But if the concern is that compliance would moot

19   the appeal, there's an implication here that they could

20   comply.  And if they can comply, they should comply, Your

21   Honor.

22          And those are basically my remarks on this topic.

23   Thank you.

24          THE COURT:  Thank you.  Anything further, Mr.

25   Henzy.

1          MR. HENZY:  Just briefly, Your Honor.  First, I'm

2     going to ask that -- it's in paragraph 11 of their

3     objection.  And then Mr. -- what Mr. Despins just quoted

4     from paragraph 11 on this Gettr --

5          THE COURT:  You want to see it?  Is that what

6     you're saying?

7          MR. HENZY:  -- this Gettr thing.

8          THE COURT:  Is that what you're -- you're saying

9     you want to see it?

10          MR. HENZY:  No, I -- no, no.

11          THE COURT:  Okay.  Go ahead.

12          MR. HENZY:  No.  I can see -- I'm going to ask

13     that it be stricken, Your Honor.  It's not properly in

14     evidence.  It goes -- it's -- I have no idea whether

15     Mr. Kwok said this.  So I'm going to ask that that be

16     stricken from this argument.

17          Really, Mr. Despins' argument, Your Honor, I think

18     went almost all to the harm to the estate.  And, again, I'm

19     not -- I want to be clear.  I'm not arguing that Zang Wey or

20     John Wey owns Ace Decade.  I'm not arguing that, because I

21     don't know if he owns it.

22          What I'm arguing is Mr. Despins is going to have a

23     contest.  The fight on Ace Decade is not going to go away

24     because you don't stay pending appeal.  That is not going to

25     change.  He's going to have that fight whatever you do.

1          And I believe him that he's having to fight these

2     issues in the UK.  But I think as with the recognition --

3     and as I argued in connection all the way back, Your Honor,

4     in the corporate governance order in connection with him

5     being ordered to -- Mr. Kwok being ordered to sign a letter,

6     the proper place to fight out those attorney/client

7     privilege issues is not here.  It's in the UK.  And, again,

8     he -- Mr. Despins has been successful on that.

9          So, Your Honor, with that, thank you.

10          THE COURT:  Okay.  Thank you.

11          Anything further, Mr. Despins?

12          MR. DESPINS:  I would just say, Your Honor, that

13     you can infer from all the circumstances that there is harm

14     to the estate if -- unless and until we get control of Ace

15     Decade.  And that's obvious from the record.  And I don't

16     think anything else needs to be added to that.

17          THE COURT:  Okay.  Thank you.

18          All right.  With regard to the motion for stay

19     pending appeal, the Court will take the matter under

20     advisement and rule accordingly.

21          MR. HENZY:  Thank you, Your Honor.  Your Honor, if

22     I could?

23          THE COURT:  Yes.

24          MR. HENZY:  May I be excused?  I am not involved

25     in any of the other matters on the calendar.

1          THE COURT:  Yes.

2          MR. DESPINS:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4          Okay.  The next matter to be heard is the 1489

5    motion to seal the supplemental objection to the motion to

6    modify the consent order establishing the repair reserve.

7    So who's going to argue that motion?

8          MR. DESPINS:  I will, Your Honor.

9          THE COURT:  Okay.  Go right ahead.

10         MR. DESPINS:  Hopefully this will not be too

11   controversial.  But, basically, we obtained a document from

12   a firm called Phillips Nizer, which is a management and

13   operating agreement, regarding the Lady May.  It's an

14   agreement between a company called Lamp Capital and HK

15   International.

16         That document, when it was produced, was

17   designated as highly confidential and under the protective

18   order that Your Honor entered.  We're duty bound to -- when

19   we refer to it or when we attach it to file it under seal.

20   And that's why we did it.  Either way, the trustee doesn't

21   believe it's confidential.  But the order presumes that we

22   need to do that until somebody else agrees otherwise.  And,

23   therefore, that's why we did this.

24         And so, therefore, what's redacted from our

25   supplemental objection are just references to that agreement

1    and quotes from the debtor's daughter with respect to that

2    agreement from her deposition.  And so that's all the relief

3    we're asking for on that matter, Your Honor.

4             THE COURT:  Thank you.

5             Does anyone object to this motion to seal?

6             MS. CLAIBORN:  Your Honor, thank you.  Holley

7    Claiborn for the U.S. Trustee.  We have no objection to the

8    motion to seal, but I note that the order that was proposed

9    with the motion doesn't contain the statutory acts as

10   provided to the U.S. Trustee under Section 107.

11            MR. DESPINS:  That was our mistake, Your Honor.

12   We'll add -- we'll submit a new order.

13            THE COURT:  Okay.  Hold on.

14            MS. CLAIBORN:  Thank you.

15            THE COURT:  Let me just take a look at the order

16   for a moment, please.

17       (Pause)

18            THE COURT:  Okay.  So the proposed order looks

19   fine to me.  You just need to add a -- the reference that

20   Attorney Claiborn has noted.  So as soon as you do that --

21   can you do that by this Friday?

22            MR. DESPINS:  Yes, Your Honor.  We'll do it

23   tomorrow.

24            THE COURT:  Okay.  So then I -- no other party has

25   objected to the motion.  No one's filed a written objection.

1    There is nobody -- no one participating in this hearing

2    today that is objecting to the motion to seal.  So for all

3    those reasons, the motion to seal is granted and a revised

4    proposed order will be submitted on or before March 10.

5    Okay?

6              All right.  Next matter on the calendar is an

7    order setting a status conference on the supplemental

8    objection of the Chapter 11 trustee to the motion to modify

9    the consent order granting HK International's motion for

10   order establishing reserve for the Lady May.  So who's going

11   to be arguing this matter?

12             MR. DESPINS:  Your Honor, for the record, Luc

13   Despins, Chapter 11 Trustee.  I don't believe that is on for

14   a hearing today.

15             THE COURT:  Well, there's a status conference.

16             MR. DESPINS:  Status conference.  So --

17             THE COURT:  So I want to know what's going on.

18             MR. DESPINS:  Okay.  So --

19             THE COURT:  Isn't there some issue about --

20             MR. DESPINS:  Yes.

21             THE COURT:  -- money?

22             MR. DESPINS:  Yes.

23             THE COURT:  Okay.

24             MR. DESPINS:  So, Your Honor, by way of

25   background, this is the issue of the use of the $4 million

1    reserve to pay for maintenance costs relating to --

2    maintenance and other related costs -- operating costs of

3    the Lady May.

4            And this supplemental objection, what it did is

5    said, hey, we just learned through discovery, and I just

6    mentioned this, that there's an operating and management

7    agreement between HK USA and Lamp Capital that says that

8    Lamp Capital is going to pay for those expenses.

9            So the trustee, you know, shame on us for having

10   paid all the prior requests or have allowed that -- the

11   prior request to the tune of $520,000 came out of the

12   reserve.  But this is another -- an additional argument why

13   the money should not be coming out of the reserve.  It

14   should be coming from Lamp Capital that has agreed to cover

15   these expenses.

16           And in -- during the deposition of the debtor's

17   daughter, we asked her is this agreement still in effect,

18   and she said yes.  And so that's what the supplement --

19           THE COURT:  Her deposition was on what day?

20           MR. DESPINS:  Sorry, Your Honor?

21           THE COURT:  Her deposition was on what day?  It

22   was in January, I think Mr. Bassett said.

23           MR. DESPINS:  It doesn't matter.  You don't have

24   to know.  If you don't know --

25           MR. DESPINS:  It was in the last three weeks,

1    three or four weeks maximum, so --

2              THE COURT:  Okay.

3              MR. DESPINS:  And so that's really the point we're

4    making which is Lamp Capital should be paying for that.

5              THE COURT:  So --

6              MR. DESPINS:  But I think that there's --

7              THE COURT:  HK has come to the Court and asked

8    that monies held in the funds that are in escrow be released

9    to pay the expenses.

10              But there's a -- there's an agreement that HK

11    should absolutely know about, because HK and Mei Guo are --

12    she's -- controls HK according to counsel.  So they should

13    know that there's an agreement.  Yet, they came to the Court

14    and said that you needed to release $4 million in proceeds

15    to pay the expenses that Lamp Capital should have been

16    paying all along?

17              MR. DESPINS:  Well, the 4 million was -- that's  a

18    bit of a -- that's not the right amount of the -- the actual

19    amount of the maintenance so far that we've actually

20    authorized --

21              THE COURT:  Right.  But wasn't the request that 4

22    million be taken out of the 37 million?

23              MR. DESPINS:  That was to do repairs and

24    maintenance.  The repairs --

25              THE COURT:  Okay.

1          MR. DESPINS:  -- was always -- we never disputed

2     the --

3          THE COURT:  Well, does this agreement require Lamp

4     Capital to pay for the repairs?  It's an operating

5     agreement.

6          MR. DESPINS:  To be honest with you, Your Honor, I

7     did not look at that angle.  I looked purely at the angle of

8     the maintenance and the payment of the crew and all of that.

9          THE COURT:  Doesn't maintenance include repairs?

10    If something breaks, you've got maintain it, don't you?

11         MR. DESPINS:  Yeah.  I would like to review the

12    agreement more carefully.

13         THE COURT:  I understand.  So what are you asking?

14    So we're having a status conference on this, because -- what

15    do you want the Court to do?

16         MR. DESPINS:  We're not asking for anything,

17    because I think that what's --

18         THE COURT:  Well, somebody's come in and say

19    somebody's got to pay.

20         MR. DESPINS:  Yes.

21         THE COURT:  Right?

22         MR. DESPINS:  What's happening is that the

23    debtor -- or, sorry, HK filed this motion which -- for which

24    there's no scheduled date, as far as I know.  And so,

25    therefore, I assume they will ask the Court for a date on

1    which this would be heard.  I think that's my understanding

2    of the status, Your Honor.

3             THE COURT:  Okay.  Counsel?

4             MR. DELLA FERA:  I think that's -- sorry.  Sam

5    Della Fera, CSG Law, for the HK parties.  I think that's

6    right, Your Honor, subject to perhaps an opportunity to

7    reply to the supplemental objection that was recently filed

8    by the trustee.

9             THE COURT:  Well, what reply would you have?

10            MR. DELLA FERA:  Well, first of all, the trustee

11   has a habit of seeking the benefits of certain agreements

12   without having to bear the burdens --

13            THE COURT:  How could HK not know about this

14   agreement, counsel?

15            MR. DELLA FERA:  It wasn't about --

16            THE COURT:  How --

17            MR. DELLA FERA:  It wasn't that HK didn't know

18   about it, Your Honor.

19            THE COURT:  Well, then why did HK come to the

20   Court and ask for money to be taken out of the reserve to

21   pay repairs?

22            MR. DELLA FERA:  Because we believe this agreement

23   is unenforceable.  And I'll -- I can explain that, Your

24   Honor.

25            THE COURT:  Go right ahead.

1          MR. DELLA FERA:  So conspicuously absent from the

2     trustee's submission to this Court is any reference to

3     Section 7 of the agreement which provides for the

4     compensation to be provided to Lamp Capital as the SP,

5     service provider, okay?

6          Section 7A of the agreement says, "While service

7     provider is employed by the company hereunder and as

8     otherwise provided in this agreement, the company shall

9     provide consideration in the form of general purpose use of

10    the pleasure lot -- pleasure yacht," pardon me, "Lady May

11    and/or Lady May II owned by the company for up to 30

12    calendar days a quarter to the service provider.  Lamp" --

13         THE COURT:  Who's the service provider?

14         MR. DELLA FERA:  Lamp Capital, Your Honor.  Who,

15    by the way, I don't represent.

16         THE COURT:  Wait, wait.  So hold on.  Hold on.  So

17    what's the point of that provision?  You give them -- you

18    give the boat to them for 30 days?  That's the point of the

19    provision that you just read?

20         MR. DELLA FERA:  Apparently they have use of the

21    yacht for 30 days --

22         THE COURT:  Okay.

23         MR. DELLA FERA:  -- per quarter.

24         THE COURT:  So what does that have to do with

25    anything?

1          MR. DELLA FERA:  Well, they haven't been given use

2     of the yacht for 30 days per quarter.

3          THE COURT:  Have they asked?

4          MR. DELLA FERA:  Have -- I don't -- I don't --

5          THE COURT:  I understand you don't.

6          MR. DELLA FERA:  Right.

7          THE COURT:  But you can't make an argument about

8     that -- what their rights are if you don't represent them,

9     right?  And you can't answer the question.

10          MR. DELLA FERA:  It's --

11          THE COURT:  And I'm not saying you should be able

12     to answer question.

13          MR. DELLA FERA:  No, I understand.  But I -- it's

14     my understanding that my client's understanding is that Lamp

15     Capital is not prepared to provide its --

16          THE COURT:  Okay.

17          MR. DELLA FERA:  -- half of the bargain unless it

18     receives what it bargained for.

19          THE COURT:  Okay.  So, well, your client -- your

20     clients affirmatively subjected themselves to the

21     jurisdiction of this Court.  Your clients affirmatively

22     entered into a consent order with regard to the Lady May.

23     There's still a restraining order in place with regard to

24     the Lady May.  So aren't all your arguments about Lamp

25     Capital beside the point?  Your client started an adversary

1    proceeding with regard to the Lady May --

2              MR. DELLA FERA:  That's correct, Your Honor.

3              THE COURT:  -- in April of last year.

4              MR. DELLA FERA:  That's correct.

5              THE COURT:  Okay.  So aren't all your clients --

6    look, this is what we'll do.  We'll set a hearing.  And I'm

7    going to require Mei Guo to come here and testify, so you

8    better get her ready.

9              MR. DELLA FERA:  Okay, Your Honor.   I appreciate

10   that.

11             THE COURT:  Because that's what's going to happen.

12   And you're going to ask her -- and if you don't ask her the

13   questions that needs to be asked and the trustee doesn't,

14   then we'll -- then I'll ask the questions.  Your client

15   started the adversary proceeding, not the trustee, while the

16   individual debtor was a debtor-in-possession.  Your client

17   made that decision.

18             So now you're coming in and you're saying you want

19   to -- that you want a motion to modify the consent order

20   that your client entered into voluntarily and consensually.

21   And you now -- what is it that you want at this point?  I

22   don't understand what you want.  There already have been

23   agreements with regard to release of funds to pay for

24   repairs.  So what is it that you want?  What is it that HK

25   and Mei Guo want?

1          MR. DELLA FERA:  Additional releases from the $4

2     million reserve --

3               THE COURT:  For what?

4               MR. DELLA FERA:  -- to maintain and repair the

5     Lady May.

6               THE COURT:  For what?  It's been fixed.  It's

7     sitting in the water over there.  We went through this whole

8     thing.

9               MR. DELLA FERA:  Well, Your Honor, there are

10    substantial expenses, including crew expenses --

11              THE COURT:  The boat's not going anywhere.  What

12    do you need a crew for?

13              MR. DELLA FERA:  Your Honor, I don't operate

14    yachts.  I'm just --

15              THE COURT:  I don't either.

16              MR. DELLA FERA:  I'm just an attorney.

17              THE COURT:  So I guess Ms. Guo's going to have to

18    come in and testify about all that.

19              MR. DELLA FERA:  Or someone will.  Yes.

20              THE COURT:  No.  She will.  She is, as you said

21    today three or four times --

22              MR. DELLA FERA:  Right.

23              THE COURT:  -- in control of HK International.

24    You didn't respond to the discovery, because she didn't

25    respond to the discovery.  So, no, not somebody else will.

1    She's going to have to testify.

2            MR. DELLA FERA:  As to the --

3            THE COURT:  We're not going to do this anymore,

4    counsel.  Okay?  This is not going to happen.  You need to

5    understand that.

6            So, okay, so why don't I set a hearing for a few

7    weeks from now, and I'm going to order that she appear and

8    testify.

9            MR. DELLA FERA:  Well, Your Honor, if the Court is

10   inclined not to allow any money to be spent for the

11   maintenance and repair of the ship, I don't believe that's

12   in anyone's best interest.  I don't believe it's in the

13   trustee's best interest, the estate's best interest.  There

14   needs to be funds expended to maintain and operate this

15   yacht to the tune of roughly 100 --

16           THE COURT:  So let Lamp Capital pay.  That was the

17   agreement.

18           MR. DELLA FERA:  Well, Lamp --

19           THE COURT:  I'm being told that's the agreement.

20           MR. DELLA FERA:  Lamp Capital is not here, so.  I

21   would prefer that they pay.  I think that would help

22   relations between the trustee and my clients.  But Lamp

23   Capital, I'm told, is unwilling to pay, because their

24   compensation --

25           THE COURT:  Well, you know what?  We're all going

1  to find out whether they're unwilling to pay, because we're

2  going to schedule a hearing, and we're going to --

3       MR. DELLA FERA:  Well, that's the goal.  Yes.

4       THE COURT:  -- and we're going to have Ms. Guo

5  come and testify.  That's what's --

6       MR. DELLA FERA:  And --

7       THE COURT:  -- going to happen.

8       MR. DELLA FERA:  And Lamp Capital may have to --

9       THE COURT:  Well, you're going to have to deal

10  with that, counsel, right?  You're going to -- we don't --

11  nobody here has any -- there's no attorney for Lamp Capital.

12  So you're going to have to figure that out.  And if you

13  can't, then you can't.  Then we'll just keep moving along

14  the way that we have already -- we already have in existing

15  orders.  But that's -- you know, that's how it's going to

16  work.

17       MR. DELLA FERA:  I understand.

18       THE COURT:  This boat is subject to a restraining

19  order.

20       MR. DELLA FERA:  Yes, Your Honor.

21       THE COURT:  Okay?

22       MR. DELLA FERA:  And it need -- but there needs to

23  be funds expended --

24       THE COURT:  Well, then you better find -- see if

25  you can find out a way to get those funds.  Because this

1   isn't -- so, anyway --

2          MR. DELLA FERA:  But --

3          THE COURT:  I'm going to set a hearing on your

4   motion HK International's motion to modify the consent order

5   is ECF Number 1216.

6          It's going to be an evidentiary hearing, because

7   you're going to have to present evidence, not legal

8   argument, as to what has to be done to -- according to the

9   motion to maintain the boat in the condition that it's in

10  for whatever repairs and crew costs, whatever you've decided

11  that it needs to -- that needs to be in place --

12         MR. DELLA FERA:  We welcome that opportunity, Your

13  Honor.

14         THE COURT:  Okay.  I'm going to give it to you.

15  I'm just looking at the calendar right now.  March 23rd is a

16  Thursday.  We'll start the evidentiary hearing at 11:00 a.m.

17  The list of witnesses and exhibits must be filed by the

18  parties by noon on March 17th.  And Mei Guo is ordered to

19  appear at the hearing and testify on behalf of HK

20  International.

21         MR. DELLA FERA:  Thank you, Your Honor.

22         THE COURT:  Thank you.

23         Okay.  So I'm turning to the courtroom deputy now.

24  So we are going to issue a notice of hearing on 12/16 for

25  March 23rd at -- did I say 11 a.m.?  Yes.  Right?

1           THE COURTROOM DEPUTY:  Yes.

2           THE COURT:  And all exhibits need to be filed on

3    the docket in PDF format with the list of witnesses and

4    exhibits.  And the documents shall have numbers associated

5    with them.  No letters.  So it could be HK 1, HK 2,

6    Trustee's 1, Trustee's 2, however many exhibits you have.

7           Okay.  Hold on one second, please.

8       (Pause)

9           THE COURT:  Actually, I'm not going to have you

10   issue a notice of hearing.  I'm going to issue an order

11   scheduling the hearing.  Okay?  So we will do that.  All

12   right?

13          THE COURTROOM DEPUTY:  Yes.

14          THE COURT:  All right.  So that is the result of

15   the status conference on ECF 1216.

16          Now let's move on to the next matter on today's

17   calendar, which is an objection to production request and

18   motion to quash and modify subpoenas filed by Scott Charmoy

19   on behalf of HCHK Property Management.  Is Mr. Charmoy in

20   the courtroom?

21          MR. LINSEY:  Your Honor, Patrick Linsey for the

22   trustee.  May I approach?

23          THE COURT:  Please.

24          MR. LINSEY:  Your Honor, Mr. Charmoy has withdrawn

25   from representation of HK -- of, rather, of these 2004

1   examinees.

2              THE COURT:  Has that been granted?

3              MR. LINSEY:  That was, Your Honor.  My

4   understanding is he withdrew after new counsel appeared for

5   these examinees.

6              THE COURT:  Oh.  So who's the new counsel?

7              MR. LINSEY:  I can find their name, but I can -- I

8   am aware that there have been conversations between counsel

9   for the trustee and counsel for this new counsel.

10  Counsel -- or rather counsel for this -- new counsel for

11  these examinees.

12             THE COURT:  Okay.

13             MR. LINSEY:  New counsel for these examinees

14  informed us that they were withdrawing this motion and were

15  not proceeding on it in advance --

16             THE COURT:  Well, they haven't done that yet.

17             MR. LINSEY:  Apparently they haven't done the

18  paperwork, Your Honor.  I will alert them that's something

19  they need to do.  But they --

20             THE COURT:  Tell them that I'm ordering to do --

21  them to do so by 5:00 p.m. tomorrow or they're going to have

22  to come in and explain what they're doing.

23             MR. LINSEY:  Thank you, Your Honor.

24             THE COURT:  Okay?

25             MR. LINSEY:  Understood.

1        THE COURT:  All right.  So what you're saying --

2    I'm not going to act on this motion then, this objection,

3    because I want to see this withdrawal filed by 5:00 p.m.

4    tomorrow.

5        MR. LINSEY:  Understood, Your Honor.

6        THE COURT:  Okay?  I mean, that's not your -- they

7    have to do it.  I understand.

8        MR. LINSEY:  Yeah.  And I don't know if they

9    regularly practice in this court, Your Honor, but we will --

10   we will -- and it's --

11       THE COURT:  Well, they better learn how to.

12       MR. LINSEY:  We will advise them.  Thank you, Your

13   Honor.

14       THE COURT:  All right.  The next matter on the

15   calendar is the motion to compel compliance with 2004

16   subpoena directed to UBS.  So who's handling that matter?

17       MR. LINSEY:  Your Honor, again, Patrick Linsey for

18   the trustee.

19       MS. FRIED:  Good afternoon, Your Honor.  Again,

20   I'm Lisa Fried, from Herbert Smith Freehills, for UBS.

21       THE COURT:  Okay.  You're going to have to go to

22   the table, because we're not -- or you come forward and

23   share the microphone, whatever you're going to do.  But we

24   can't hear unless you speak --

25       MR. LINSEY:  Do you want to share --

1          THE COURT:  -- into the microphone.

2          MR. LINSEY:  -- share the mic?

3          MS. FRIED:  I'm happy to share the mic.

4          MR. LINSEY:  All right.

5          THE COURT:  Okay.  Go right ahead.

6          MR. LINSEY:  In the spirit of our report, we'll

7     share the mic, Your Honor.  Since we were last in court on

8     this, which I believe was about a month ago, there have been

9     four productions made by UBS.  Counsel for the trustee is

10    working together with UBS.  That counsel would be my firm in

11    this case.

12         And we do have some questions about the documents

13    that have been produced to date.  The most recent document

14    production came in on Friday, and that's not been fully

15    reviewed yet.  There's also been an amended subpoena that

16    was served just today on UBS that I expect counsel and I

17    will be working together to go through compliance on.

18         So in light of that, I don't know that we've

19    necessarily resolved all issues that fall under the existing

20    motion.

21         THE COURT:  It doesn't sound like you have, so

22    we're going to continue the hearing then, and we'll see --

23    how much time are you both thinking you are going to be

24    talking to each other to try to resolve these issues?

25         MR. LINSEY:  Well, we were both available on the

1   18th, Your Honor.

2          THE COURT:  Okay.  We'll continue it to the 18th.

3   But I'm very hopeful that before the 18th I'll see that

4   there's an agreement reached between the parties with regard

5   to the production.

6          MR. LINSEY:  And, Your Honor, when that

7   happened -- or at least when issues were resolved with

8   Chase, we did withdraw that motion.

9          THE COURT:  Yes.  Yes.

10          MR. LINSEY:  And we know how to do that, and we'll

11   do the same thing when --

12          THE COURT:  Okay.  Thank you.

13          MR. LINSEY:  -- when that happens here.

14          THE COURT:  So what we'll do is we'll continue

15   this hearing on this matter, the motion to compel

16   compliance, 1362, to April 18th at 2:00 p.m. as well.  So

17   there's going to be a number of matters on, on the 18th, but

18   maybe there'll be one less if you both resolve this between

19   now and then.  Okay?

20          MR. LINSEY:  Thank you, Your Honor.

21          THE COURT:  All right.

22          MS. FRIED:  Thank you, Your Honor.

23          THE COURT:  Thank you.

24          MS. FRIED:  Your Honor, that was the only matter

25   involving UBS.  May I be excused?

1          THE COURT:  Yes.  Thank you.

2          MS. FRIED:  Thank you very much.

3          THE COURT:  All right.  The next matters on the

4   calendar are in connection with Adversary Proceeding

5   22-0527, Despins vs. Bravo Luck Limited.  There's a

6   continued pretrial conference and an omnibus motion of the

7   Chapter 11 Trustee to seal amended adversary complaints.

8          So, Mr. Despins, are you arguing this or

9   Mr. Bassett?

10          MR. BASSETT:  Your Honor, again, it's Nick Bassett

11   from Paul Hastings on behalf of the Chapter 11 Trustee.  So

12   I'll take the -- maybe the two items in reverse order.  With

13   respect to the continued pretrial conference in these

14   consolidated adversary proceedings, there have been

15   intervening events, I would say, since that conference was

16   scheduled, the most significant of which is that the trustee

17   has filed amended complaints in the matter.

18          Prior to that, counsel for the trustee and counsel

19   for Bravo Luck had begun conferring on, you know, the 26F

20   conference that needs to take place prior to a fulsome

21   scheduling conference before the Court in the adversary

22   proceeding.

23          We had identified during that conference some of

24   the kind of big picture issues that both sides would need to

25   address in terms of the contours of discovery and other

1    items.  I think we both agree that the filing of the amended

2    complaints kind of changes the landscape in terms of the

3    scope of discovery and other issues that would need to be

4    discussed in scheduling.

5         That also dovetails with a pending 2004 subpoena

6    that the trustee has issued to Bravo Luck which, I think,

7    was removed from the calendar on the basis of the trustee's

8    withdrawal that we noted yesterday of our subpoena subject

9    to our right to serve another subpoena.

10        But the bottom line, Your Honor, is that all of

11   those discovery issues relating to Bravo Luck, both under

12   2004 and in the adversary proceeding, sort of remain in

13   flux.  We're continuing to work with and confer with

14   counsel.

15        So as to the pretrial conference in the adversary

16   proceeding, we would request that that be adjourned, again I

17   think to sometime next month.  In the interim, we will work

18   with counsel at Bravo Luck to have a further meet and confer

19   under 26(f) and then be prepared to address --

20        THE COURT:  Be prepared to enter into a pretrial

21   order at the next conference.

22        MR. BASSETT:  That's what I'm proposing, Your

23   Honor.

24        THE COURT:  That's what the Court's going to

25   order.  Okay?

1      Counsel?

2          MR. LAWALL:  Your Honor, Fran Lawall, Troutman

3  Pepper, for Bravo.  We're in agreement with trustee's

4  counsel.

5          THE COURT:  That's good, because that's what I was

6  going to order regardless whether you were in agreement.  So

7  what date are you looking for, Mr. -- both of you?  Have you

8  talked about a date?

9          MR. BASSETT:  We would have the 18th as a hold

10  date.

11          THE COURT:  Well, the 18th -- I mean, we're going

12  to be here until 9:00 on the 18th at this rate, which -- so,

13  you know, I mean, that's fine.  But then I want you to both

14  have a pretrial order already -- dates already agreed to.

15  I'm not going to spend an amount of time on dates on a

16  pretrial order.

17          And, you know, and I don't want to see -- unless

18  somebody can show me some reason why there could be a

19  possible basis for summary judgment -- which maybe there is.

20  Then you need to show me that if we're going to enter into

21  dates.  This isn't going to be a pretrial order that's going

22  to go out to a trial in 2024.

23          MR. LAWALL:  Your Honor?

24          THE COURT:  So I want to be very clear about that.

25          MR. LAWALL:  I don't think we're contemplating

1    that, Your Honor.  I think that --

2           THE COURT:  Well, even if you are, whether you are

3    or not, I'm telling you that it's not going to be allowed.

4    So we need to get this in order and get this done.  So do

5    you -- if you want to do the 18th at 2:00 p.m., that's fine.

6    I don't know what time on that -- what actual time on that

7    date this will be heard.  But that's fine.

8           MR. BASSETT:  That's okay with the trustee, Your

9    Honor, and we will certainly work with counsel to have that

10   all buttoned up before coming before Your Honor that day.

11          THE COURT:  Thank you.

12          MR. LAWALL:  Yeah.  Thank you, Your Honor.

13          THE COURT:  Thank you.

14          MR. BASSETT:  The other item, Your Honor, was the

15   motion to seal.  This is similar to the other motion to seal

16   that the trustee commented on earlier.

17          The amended complaints cite to a handful of

18   documents that were produced in discovery by two Rule 2004

19   examinees.  There were a couple of documents, I believe,

20   that were produced by the law firm Paul, Weiss which

21   previously represented the debtor.

22          Those were marked confidential or -- I believe

23   confidential or -- it might have been high confidential.

24   And then there were also a few documents produced by UBS

25   which were also marked confidential in discovery.

1        So, again, it's a situation where the trustee is

2   merely complying with his obligations under the protective

3   order to file those documents marked in discovery as

4   confidential under seal.  It's not our position that they

5   need to remain sealed, necessarily, but we're asking that

6   the complaint be sealed for the time being for that reason.

7        THE COURT:  Does anyone object to your motion?

8        MR. BASSETT:  I don't believe any objections were

9   filed, Your Honor.

10        THE COURT:  I didn't see any.

11        Does anyone object to the trustee's motion?

12        Okay.  I'm looking at the proposed order.  Okay.

13   That motion is granted, and your proposed order will enter.

14        MR. BASSETT:  Thank you very much, Your Honor.

15        THE COURT:  Thank you.

16        Okay.  So the next motion on the calendar is a

17   motion filed by the Chapter 11 Trustee authorizing sales

18   officer and Sotheby's to market Sherry-Netherland apartment

19   for rent.  Who's going to address that motion?

20        MR. DELLA FERA:  Your Honor, if I may address the

21   Court for a moment?  In reviewing the balance of the Court's

22   calendar, it doesn't appear that any of the other matters

23   relate to HK or Ms. Guo, and I'd ask to be excused at this

24   point.

25        THE COURT:  That's fine.  Thank you.

1          MR. DELLA FERA:  Thank you, Your Honor.

2          MR. DESPINS:  I will address this motion, Your

3    Honor.  This is Luc Despins, Chapter 11 Trustee, for the

4    record.  You'll recall that we had submitted a motion to

5    continue the sale process.  And after the fact, based on

6    conversations I had with Judge Cyganowski, the issue of the

7    wisdom of also trying to rent the property was raised.

8          And there was an objection by Bravo Luck.  You

9    said that's well taken; you should have included that in

10   your motion, but we will allow the trustee to file a

11   supplemental to the motion to authorize that relief.

12         The relief, to be clear, is not to rent the

13   property but to market the property for rent.  So,

14   therefore, to the extent they would ever find a renter, we

15   would have to come back here to get your authorization

16   subject to objections by Bravo Luck or any other party.

17         So that's the motion we filed.  You had directed

18   that we file this motion by February 7th.  We did.  And

19   Bravo Luck objected, and their argument is basically that

20   marketing the property for rent is inconsistent with the

21   settlement agreement and, therefore, the Court cannot grant

22   that relief.

23         The first point on that is your order approving

24   the continuation of the sale process included language

25   saying the trustee is authorized or directed to file this

1    motion regarding rental.

2           So I'm not saying that you said you want grant

3    that, but obviously it could not be that by entering an

4    order you were locking yourself up and precluding yourself

5    from considering the motion that that same order provided

6    could be filed by February 7th.

7           The second point Bravo Luck makes is that the

8    marketing of the apartment could undermine the sale process.

9    And on that, first of all, it's not their business judgment.

10   It's our business judgment.

11          And as I said, we're not asking the Court to

12   authorize the rental.  We're asking the Court to authorize

13   the consideration and the marketing of the property for rent

14   but not exclusively.  The main goal again here is to sell

15   the property, because we need money.

16          And the problem is that the property has been on

17   the market for a year, and the property has not sold.  And

18   to be prudent, because there is a escrow agreement or a fund

19   that's dedicated to the payment of the 85 or 87,000 a month

20   maintenance, and that is a depleting asset which will be

21   exhausted in about a year, it is prudent to look at rentals.

22          Because if we could rent it, if -- for a sum that

23   is close to the maintenance, then you prolong your ability

24   to sell it in a -- perhaps, better market.  And that --

25   obviously, that's the best position to be in to have

1    optionality.  It gives us a longer runway.

2           But we would like to sell the property if we can,

3    and that's our -- that's the primary goal.  That continues

4    to be the primary goal.  But as a insurance device, it is

5    prudent to look at rentals.  That's all, Your Honor.

6           THE COURT:  Thank you.

7           MR. LAWALL:  Good afternoon, Your Honor.  Fran

8    Lawall, Troutman Pepper, on behalf of Bravo Luck.  Your

9    Honor, I know --

10          THE COURT:  Good afternoon.

11          MR. LAWALL:  -- you've heard a lot of this

12   argument already with respect to the rental issue.  We do

13   believe if the trustee moves forward it would be a breach of

14   the settlement agreement.  But we won't reargue that at the

15   moment.

16          One of our primary concerns -- and it's really

17   tied up with the adversary that the trustee has now filed

18   for which we have filed a motion to intervene.  I realize

19   that maybe the next issue up on your calendar.

20          This really has to do, Your Honor, with respect to

21   the three adversaries that have been filed against Bravo

22   Luck and the issue as to whether this property is actually

23   property of the estate or not.

24          To the extent that it's not property of the

25   estate, Your Honor, the trustee doesn't have the authority

1    to either market or to do anything outside of the agreement.

2    I recognize this is a controversial issue, but Your Honor,

3    this is tied up directly with respect to the three adversary

4    proceedings.

5              I realize today the only relief that the trustee

6    is asking for is for purposes of marketing.  So my only

7    point, Your Honor, is twofold.

8              One is, if Your Honor is inclined to grant that

9    relief that it has no determination with respect to whether

10   this is property of the estate, because that's more properly

11   part of the three adversaries and now may be the fourth

12   adversary that's filed, and that to the extent that a renter

13   is brought to this floor, Your Honor, that this issue with

14   respect to whether the trustee has the ability to amend the

15   documents for purposes of renting the property, that will

16   have to ultimately be determined.  Not --

17             THE COURT:  I understood your first part, but I

18   didn't understand your second -- what you -- second point

19   you just made.  Amend what documents?

20             MR. LAWALL:  Your Honor, the subject of the

21   trustee's adversary, which I believe is up for the next

22   matter on the status conference, has to do with modifying

23   certain documents that were executed apparently in

24   connection with the original acquisition of the property.

25             THE COURT:  Okay.

1    MR. LAWALL:  And they have to do with certain

2    rights for certain people to use the property or not use the

3    property.  The trustee has filed a motion seeking the

4    ability to try and amend that document.

5         Our point here, Your Honor, is until it is

6    determined whether this is property of the estate, that

7    relief may not be appropriate.  All we're really looking to

8    do here, Your Honor, is to make this as efficient as

9    possible.

10         And I just want to remind the Court,

11    notwithstanding everything that's going on today, from the

12    beginning Bravo Luck in the original bankruptcy entered into

13    this settlement agreement to provide a really efficient way

14    of selling this property.

15         And we believe that rental of the property could

16    cause negative implications, but we'll wait to see, I guess,

17    Your Honor, if Your Honor approves this today and if there's

18    a hearing for a renter, whether that's going to impact

19    actually the marketing of the property.  There has been no

20    testimony, no evidence before Your Honor at this point

21    exactly what impact rental of the property will have on the

22    overall marketing strategy or the ability to maximize the

23    return.

24         But, again, Your Honor, returning to center, the

25    issue here really comes down to it's property of the estate

1   or not.  And these are issues which the trustee has raised

2   in three separate adversaries.  There is now a fourth

3   pending.

4          We have filed a counterclaim in -- a motion to

5   intervene as well as a counterclaim with respect to the

6   issue of the property of the estate, because our concern was

7   that in that adversary there were a number of statements

8   that this property was property of the estate.  We didn't

9   want to have an inadvertent ruling that it was property of

10  the estate without having a fulsome ruling in connection

11  with the three adversaries.

12         And that was the whole reason why, Your Honor,

13  you're seeing multiple pleadings.  We're more than happy to

14  consolidate it all.  We will work with the trustee's counsel

15  to put together a scheduling order to get this resolved, and

16  we will move forward.

17         THE COURT:  Okay.  A couple of things that you

18  just said that I did want to discuss, so I appreciate you

19  raising them.  So now that they've been consolidated, we

20  don't need -- do we need three amended complaints and three

21  answers?

22         MR. LAWALL:  I --

23         THE COURT:  Don't we have one --

24         MR. LAWALL:  I asked that question myself, Your

25  Honor, and I was told the trustee was sticking with the

1    three complaints.  As you recall, we filed three motions to

2    dismiss.

3              THE COURT:  Yes, I do.

4              MR. LAWALL:  We're --

5              THE COURT:  I'm trying to make it more --

6              MR. LAWALL:  Understood.  We agree.

7              THE COURT:  -- efficient as well.  But I don't --

8    maybe there is a need for three amended complaints.  I don't

9    know.  But I want to know the answer to that question,

10   because it's confusing.  It can be confusing to people as to

11   what we're doing.  And it's confusing to the clerk's office.

12             And I think there was some entry made today about

13   you not filing an appearance or something.  Just disregard

14   that.  You filed a motion to intervene.  That's going to get

15   set for a hearing.  We'll deal with it.  Okay?

16             MR. LAWALL:  I filed another notice of

17   admission --

18             THE COURT:  Oh.

19             MR. LAWALL:  -- this afternoon too.

20             THE COURT:  Okay.  Sorry.

21             MR. LAWALL:  No.  That's okay.

22             THE COURT:  Okay.  It's confusing to people.

23             MR. LAWALL:  Understood.

24             THE COURT:  Okay?

25             MR. LAWALL:  Understood.

1          THE COURT:  So, Attorney Bassett, just to -- I'm

2    putting you on the spot, because I did mean to ask this

3    question, and I forgot.  Do we need to have three amended

4    complaints?

5          MR. BASSETT:  Your Honor, I'm happy to think about

6    ways to make the process more efficient.  Because,

7    obviously, we're aligned in that goal.  However, we do -- we

8    did technically need to file three amended complaints,

9    because --

10         THE COURT:  I agree.  I completely agree.

11         MR. BASSETT:  But --

12         THE COURT:  But at this point now there's an order

13   consolidating all these adversary proceedings, right?

14         MR. BASSETT:  Right.  Well, the issue --

15         THE COURT:  So why don't you both think about

16   this --

17         MR. BASSETT:  Okay.

18         THE COURT:  -- before the April 18th conference.

19   You know, I just want to -- we don't -- we're not going to

20   write, you know, three decisions on everything that's filed.

21   That doesn't make any sense, right?  So think about whether

22   or not there really needs to be three amended complaints.

23         At this point, counsel, you're going to have to

24   file an answer.  I think wasn't there an agreement that --

25         MR. LAWALL:  Yeah.

1          THE COURT:  -- you're going to file an answer at a

2     certain time once the amended complaints were filed?

3          MR. LAWALL:  Procedurally, Your Honor, what

4     happened was they filed their original complaints.  We filed

5     three motions to dismiss.

6          THE COURT:  Yeah.

7          MR. LAWALL:  They filed their amended complaints.

8     We're scheduled to file our responses which will be motions

9     to dismiss on March 21.

10          THE COURT:  Okay.

11          MR. LAWALL:  And so that's in process.

12          THE COURT:  Yeah.  I guess if -- I would ask the

13     parties to really think about this before March 21st then

14     to -- because I'd rather -- if it's -- and maybe it's not.

15     Okay?  I haven't looked at everything.  I haven't had an

16     opportunity to look at all the issues in the amended

17     complaint and -- but if there's an ability to not have three

18     motions to dismiss versus one motion to dismiss, then I

19     would like you to explore that and see whether or not that

20     can be accomplished.

21          If you say it can't be, then I will look at that

22     too.  I just don't know.  And it is confusing to parties

23     that -- and the clerk's office, in particular.

24          MR. LAWALL:  There's no question, Your Honor.

25     From what I've seen, there are certain nuances within the

1    complaints themselves.  There are certain issues that are

2    common among the three.  Maybe between ourselves and

3    trustee's counsel, we can figure out a way of presenting it

4    to Your Honor so that at least when Your Honor is

5    considering the issues they'll be in silos so that'll it

6    make it a little bit easier.

7              THE COURT:  Whatever -- right.  I just -- I agree

8    with you.  I'm asking you to undertake that analysis and

9    discussion and see what you can come up with.  Okay?

10             MR. LAWALL:  Certainly we'll work on that, Your

11   Honor.

12             THE COURT:  Okay.

13             MR. BASSETT:  We'll do that as well, Your Honor.

14             THE COURT:  Okay.  Yeah.  And maybe there has to

15   be three.  I don't know.  But I understand that you're

16   saying by the 21st you -- at this point, unless there's some

17   agreement, that you will be filing three motions to dismiss.

18   And that's fine.

19             MR. LAWALL:  That's the current expectation, Your

20   Honor.  We think ultimately it'll probably be more efficient

21   unfortunately now, given where we are at the moment.  So

22   but, Your Honor, we will work with trustee's counsel to

23   figure out a way to try to make this as efficiently as -- as

24   efficient as possible.

25             With respect to the rent issue, Your Honor, I

1    think you understand the concern.  It's that if the -- I

2    really do believe that with respect to renting this property

3    absent a consent, which doesn't exist at the moment, I don't

4    think until the issue with respect to property of the estate

5    is resolved, which is front and center in all these

6    adversaries, that the underlying agreements can be revised

7    to allow, from what the trustee's apparent perspective is, a

8    free path to rent these properties.

9          THE COURT:  Well, what about -- and I think I

10   heard -- let me step back.  I haven't looked at the -- or I

11   don't have it right in front of me at the moment, but I

12   could get it, whatever the proposed order is that would be

13   granting this motion.

14         What if the order said that the trustee's

15   authorized to undertake the marketing of renting this

16   property and that -- and I'm not saying it's just going to

17   say that.  But that no further -- that no -- that any lease

18   has to come before the Court first.  And you have all your

19   rights to object at the same time.

20         MR. LAWALL:  I think --

21         THE COURT:  And including your objection to these

22   documents that I'm not truly familiar with at the moment.

23         MR. LAWALL:  Understood.

24         THE COURT:  But that -- to me, and maybe I'm

25   wrong.  But to me, that seems -- that does not seem -- or

1    let me say it this way.  That seems reasonable that the

2    trustee would have the opportunity to attempt to market the

3    property for rent, but he can't enter into a lease or he

4    can't do anything with regard to the rental until he comes

5    before this Court, makes a motion, which you're -- you would

6    have the absolute right to object to and be heard on.

7           And under 363 of the Code anyway, as you know, I

8    mean, there's going to have to be a hearing on the lease of

9    property.  I agree that, though, you could still make the

10   argument at that hearing that, Judge, you can't grant that,

11   because you -- they haven't established that this is

12   property of the estate.

13          MR. LAWALL:  Your Honor, I think -- in many

14   respects, I think Mr. Despins will tell you that's pretty

15   close to the essence of his motion, that he -- all he's

16   asking for today is to rent the property.  Or not -- I'm

17   sorry.  Let me take that back.  To market the property

18   subject to Your Honor's subsequent determination.

19          My biggest concern is to the extent we have this

20   settlement agreement that we not be in a position -- our

21   position is going to be maintained that any change to that

22   settlement agreement, which was carefully constructed, to

23   rent the property would be a breach of that agreement.

24          THE COURT:  To sell the property, you mean?

25          MR. LAWALL:  Yeah.  I'm sorry.

1          THE COURT:  That's okay.

2          MR. LAWALL:  Anything --

3          THE COURT:  But the problem with the settlement

4     agreement, at least from my perspective --

5          MR. LAWALL:  Right.

6          THE COURT:  -- is it's expired.  The settlement --

7     this was all in front of a different judge, right, when this

8     happened.

9          MR. LAWALL:  It was, Your Honor.

10         THE COURT:  Okay?  And so I have to look at it as

11    what the documents say.  And my -- the issue that I've seen,

12    anyway, is that it appears to me that the settlement

13    agreement has expired.  That doesn't mean the parties

14    couldn't work cooperatively, and there's all other things

15    you could do.  And it doesn't mean you can't still argue

16    that you believe that the settlement agreement is -- has --

17    is not expired.

18         But for purposes of allowing the trustee to

19    attempt to rent the property -- just market it, not actually

20    have the authority to enter into the lease and do whatever

21    else he would need to do with regard to an actual rental,

22    assuming there is one, which we -- none of us know if it'll

23    even happen.

24         MR. LAWALL:  Sure.

25         THE COURT:  Right?  Then I'm more persuaded to

1    allow that marketing process to occur than to not occur at

2    this point in time with all your rights reserved.

3            MR. LAWALL:  Your Honor, I -- two points.  One,

4    with respect to whether the settlement agreement's

5    terminated or not, I think as I may have explained at that

6    last hearing, there's more to the settlement agreement than

7    simply marketing the property.  There are issues in there

8    with respect to the use of the deposit for purpose of --

9            THE COURT:  Understood.

10           MR. LAWALL:  And all that stuff.

11           THE COURT:  Yeah.

12           MR. LAWALL:  But I think, Your Honor, if your

13   decision today is the trustee can go out and market and it

14   is with complete reservation of Bravo's rights across the

15   board, including if, in fact, it gets leased that would be a

16   violation of the settlement agreement --

17           THE COURT:  You can still make that argument.

18           MR. LAWALL:  -- then --

19           THE COURT:  Yes.

20           MR. LAWALL:  -- then if that's how the trustee

21   wants to move forward and it's without -- completely without

22   prejudice on our part, then go with God.

23           From that perspective, I think that -- we think

24   because the property of the estate issue is going to be key,

25   it may be a mistake.  But if that's how the trustee wants to

1    move forward, and it's with full reservation, then I won't

2    stand in the way.

3            THE COURT:  Well, what we'll do -- or what you'll

4    do then, counsel, is you'll go over the order with the

5    trustee and just make sure you both agree to the -- what it

6    says and submit it.  If you don't agree, then you'll have to

7    show me why -- what it is you don't agree to.  You know, you

8    could file the order with, you know, all this language is

9    agreed, this language isn't agreed to by Bravo or by the

10   trustee.  And then I'll do what I think is appropriate.

11           MR. LAWALL:  That's fine, Your Honor.  And we will

12   try and keep it simple.

13           THE COURT:  Okay.  I appreciate that.

14           MR. LAWALL:  Thank you, Your Honor.

15           THE COURT:  Thank you.

16           All right.  So did the U.S. Trustee wish to be

17   heard on this motion?

18           MS. CLAIBORN:  Just briefly, Your Honor.

19           THE COURT:  Go ahead.

20           MS. CLAIBORN:  Holley Claiborn for the U.S.

21   Trustee.  I wanted to rise and tell the Court that we have

22   no objection to the marketing of the property for rent.  I

23   did want to make a point that I think is silent in the

24   motion but which I understand from Trustee Despins, and that

25   is to say that the cost of the marketing, to the extent that

1    a renter is obtained, will be borne by the renter and not

2    borne by the estate.

3              THE COURT:  I don't know how you can -- I'm not

4    sure how you can do that.

5              MR. DESPINS:  Well, I inquired -- the U.S.

6    Trustee's concern is that are we approving sub silentio a

7    fee for the broker to rent.  And I was told not to worry

8    about this.  Rental fees in New York are paid by the renter,

9    not by the person renting, not -- by the entity renting, not

10   the --

11             THE COURT:  So whatever commission the broker --

12             MR. DESPINS:  Tenant.  Not --

13             UNIDENTIFIED SPEAKER:  Not the landlord.

14             UNIDENTIFIED SPEAKER:  Well said.

15             MR. DESPINS:  God.

16             THE COURT:  Whatever --

17             MR. DESPINS:  Not the landlord.  Thank you.

18             THE COURT:  Whatever commission the broker would

19   be entitled to, the renter has to pay, is what you're

20   saying?

21             MR. DESPINS:  Yes.

22             THE COURT:  Well, then good luck with that.  I

23   mean, I'm not going to --

24             MS. CLAIBORN:  That's my understanding.  I just

25   wanted --

1           THE COURT:  You know, I --

2           MS. CLAIBORN:  I just wanted to say that out

3     loud --

4           THE COURT:  Yeah.

5           MS. CLAIBORN:  -- so that we're all on the same

6     page.

7           MR. DESPINS:  It took a while, but yes.

8           THE COURT:  Counsel, did you want to come forward?

9           MS. MILLMAN:  Yes.  Thank you, Your Honor.  Good

10    afternoon, Your Honor.  I'm Sherry Millman with Stroock &

11    Stroock & Lavan, admitted pro hac vice on behalf of The

12    Sherry-Netherland, Inc.  It sounds like the Court has agreed

13    to grant the relief as to which we have no objection.  We

14    filed papers to that effect.  And part of it is because we

15    understand that the trustee's goal is really to sell, which

16    is what we share, and that the rental may accomplish that in

17    a way.

18          We approve of the proposed order which actually

19    reserves everybody's rights.  But in particular, what's

20    important to us is the Sherry-Netherland's rights as we have

21    specific consent rights over the rental.

22          THE COURT:  Sure.

23          MS. MILLMAN:  While I'm up here just wanted to

24    respond, because I've heard this comment made a couple of

25    times during the transcript, on the record by Bravo Luck's

1    counsel.  In terms of the settlement agreement and the

2    reference to application of the deposit, there is a separate

3    consent order that Judge Garrity entered.

4              THE COURT:  Okay.

5              MS. MILLMAN:  It's at Docket Number 107.

6              THE COURT:  Thank you.

7              MS. MILLMAN:  And it gave us the ability to apply

8    the deposit to pay the monthly maintenance and assessments.

9    And that's been going on since that order was entered last

10   year.

11             THE COURT:  Okay.  That's helpful to me.  Thank

12   you.

13             MS. MILLMAN:  Okay.  Thank you, Your Honor.

14             THE COURT:  Right.  Because I don't know

15   everything that occurred in the case, obviously, before it

16   came here.  And with regard to your statement, I appreciate

17   that.  The order -- it will be to market the property for

18   rent.

19             If there is someone or entity coming that wants to

20   rent, it's still going to be -- the trustee's going to have

21   to bring that motion forward, and it will be noticed to

22   everyone and including the Sherry-Netherland would have any

23   rights it has to object to or to consent to the renter

24   becoming -- coming into the property.

25             MS. MILLMAN:  Yes, Your Honor.  And I think how it

1  would work -- and I think that Mr. Despins has recognized

2  that -- is there would be discussions first and an agreement

3  first before this ever came before the Court.

4  　　　　　THE COURT:  Before the motion gets filed.  Right.

5  　　　　　MS. MILLMAN:  Okay.

6  　　　　　THE COURT:  Okay.  Thank you very much, counsel.

7  　　　　　MS. MILLMAN:  Thank you, Your Honor.

8  　　　　　THE COURT:  I appreciate that.

9  　　　　　MR. DESPINS:  So, Your Honor, just to be very

10  precise on that, the order says nothing herein amends,

11  modify, or supersedes any rights, including any approval

12  rights, of the Sherry-Netherland, because --

13  　　　　　THE COURT:  All right.  Let me take a look at

14  that.  I just don't have it right in front of me at the

15  moment.

16  　　　　　MR. DESPINS:  It's Docket 1446.

17  　　　　　THE COURT:  Right.  I just have to open it -- I'm

18  just not there yet at the moment.

19  　　　　　MR. DESPINS:  Page 11 of 14.

20  　　　　　THE COURT:  Thank you.

21  　　　(Pause)

22  　　　　　THE COURT:  So do you think the Bravo Luck

23  language, Trustee Despins, that's in this order right now

24  covers what I've said in court today?

25  　　　　　MR. DESPINS:  I believe so.  But, you know, this

1   was provided to Bravo Luck, so they -- I don't know if you

2   have any comments on the order.  But it says it -- the

3   rights of all parties in interest, including without

4   limitation PAX and Bravo Luck, to object to approval of such

5   agreements are preserved.  To me, that's fairly broad.

6           MR. LAWALL:  Your Honor, if I may?  And I'm sure

7   we can work this out in the next day or so.  There may be

8   some just additional protections based on our colloquy that

9   I'd like to put in there.  But the essence is there.

10          THE COURT:  Okay.  That's fine.  I think just work

11  on it for the next day or two and submit the revised

12  proposed order with the comments.  And if for some reason

13  there's still a disagreement, then note -- you know, give a

14  redline version of the order, who agrees to what, and then

15  I'll do what I think is appropriate.

16          MR. LAWALL:  Very good.  Thank you, Your Honor.

17          THE COURT:  Okay?  All right.  So the motion is

18  granted for the reasons stated on the record.  And a revised

19  proposed order will be submitted by Friday.  Obviously,

20  you'll probably do it before then, but I'm giving a date for

21  the clerk's office.  Okay?

22          MR. DESPINS:  Yes.

23          THE COURT:  Okay.  All right.  So the last two

24  matters on the calendar today -- but we still have a few

25  things to talk about that aren't on the calendar -- is a

1    status conference -- there are two status conferences.  The

2    first is -- in Adversary 23-5002, the -- go ahead, Trustee

3    Despins.  I've got two issues here. A motion for order to

4    schedule a hearing on a summary judgment and the motion for

5    summary judgment.

6              MR. DESPINS:  Correct.

7              THE COURT:  Okay.

8              MR. DESPINS:  Obviously, the motion for summary

9    judgment is not before the Court.  But by way of

10   background -- and I want to correct the record here.

11   Genever USA owns the lease.  There's no -- so the state --

12   the legal status right now is that that debtor is the entity

13   that owns the lease.

14             And so any argument that somehow Bravo Luck has

15   that right is something that Bravo Luck would need to

16   establish.  But the legal entitlement today is that Genever

17   USA is the entity to the lease, not Bravo Luck.  So that's

18   very important.

19             So what are we trying to do -- to achieve here?

20   As you know, we're trying to sell the property or rent it.

21   Mr. Kwok is using the property from time to time.  And,

22   obviously, we cannot be in the position where somebody says,

23   okay, I'm interested in renting or buying the property, and

24   we have to say, well, you know what, let's check with

25   Mr. Kwok to see how that works.

1        Because what happened, when Genever USA acquired

2    this property, there was a -- as part of the lease agreement

3    between the Sherry-Netherland and Genever USA, there was an

4    agreement just between those two parties, Your Honor, not

5    with Mr. Kwok but just between those two parties, to allow

6    Mr. Kwok and his immediate family, which means his son and

7    daughter and his spouse, if she is his spouse -- that's not

8    a knock.  I think that technically she may not be, but so

9    that's beside the point for today.  But so that that

10   immediate family can use the apartment under that lease

11   between Genever USA and the Sherry-Netherland.

12        That is a right that's modifiable by those two

13   parties, those two parties being Genever USA and the

14   Sherry-Netherland.  There's no requirement to have

15   Mr. Kwok's consent for that.

16        But, obviously, we know the nature of this case

17   and how litigious it is, and we basically need to clear that

18   issue out so that if we find a buyer or a renter we don't

19   have to wait months and months to litigate this issue,

20   potential appeals, et cetera, et cetera.  We need to get

21   that done.

22        And by the way, there's no benefit to the estate

23   in having Mr. Kwok use that property.  He is not paying

24   anything.  So there's no contribution to the estate of any

25   kind.

1    So what we did is we filed a complaint for a

2    declaration that we can do that based on the documents.  And

3    we also filed on the same day a motion for summary judgment

4    saying -- plus a Rule -- I think it's a Rule 56 declaration

5    that basically says there are no contested facts here.

6        Because through discovery we've established that

7    his "wife" does not reside there.  The daughter doesn't

8    reside there.  The son does not reside there.  And Mr. Kwok

9    himself in his petition said that he has some kind of

10   entitlement to use the property but certainly not that it

11   was his residence.

12       So that subsequently we did.  We served this on

13   Paul, Weiss.  And you might say, well, why serve Paul,

14   Weiss?  Because the lease agreement had a -- very specific

15   provisions.  Section 15 of the agreement said that Paul,

16   Weiss is appointed as the service of process agent for all

17   disputes regarding the lease, anything arising there under

18   that and is appointed by Mr. Kwok and the permitted

19   occupants, meaning the family members.

20       So we served that on Paul, Weiss.  They rejected

21   service.  But eventually we served them by Federal Express.

22   We also served the Kwok family and their counsel and Bravo

23   Luck.  And --

24       THE COURT:  Let me just stop you right there --

25       MR. DESPINS:  Yeah.

1          THE COURT:  -- for a moment, please.  When you say

2     Paul, Weiss rejected service, you mean someone went to their

3     offices and --

4          MR. DESPINS:  Yes.

5          THE COURT:  Oh, and they said --

6          MR. DESPINS:  They were --

7          THE COURT:  They refused to accept service?

8          MR. DESPINS:  And we told them, look, Section 15

9     of the agreement provided that.  And not to spend time on

10    it, we just Federal Expressed it to them.  And so that's --

11    that accomplished service on them.

12          But the agreement is very clear that they were

13    appointed as agent and attorney in fact to accept service of

14    process in any action or proceeding arising under or in

15    connection with the lease and/or this agreement with respect

16    to, among others, the occupant, Mr. Kwok, and any permitted

17    occupant, i.e. the members of the occupant's immediate

18    family.

19          But in any event, we served the other party, so

20    there's no issue of service here.  So what we're before --

21    we're before the Court here today to try to have a schedule

22    on this.  We filed this on February 15th.  So they've had

23    this for a while.  And we were asking the Court to order

24    that they would have until March 20th to respond and that we

25    would like -- we wanted a hearing on March 27th.

1       Obviously, you didn't enter those orders, so we

2   need to now discuss the issue of when would be a reasonable

3   response date.  Remember, they've had this since February

4   15th or 16th.

5       THE COURT:  Well, let's -- so the summons was

6   served --

7       MR. DESPINS:  I think on the 17th.  It was issued

8   on the -- it was issued on February 16th.  And after the

9   summons issued, we served the summons together with the

10  complaint and the summary judgment on all the parties I

11  list --

12      THE COURT:  On February 16th, right.  So let's

13  look at their original summons.

14      MR. DESPINS:  Which names Mr. Kwok and his

15  immediate family members as defendants.

16      THE COURT:  And the answer date in the summons is

17  March 20, isn't it?

18      MR. DESPINS:  That may be, Your Honor.

19      THE COURT:  Am I looking at that right?  All

20  right.  Hold on a second.

21      MR. DESPINS:  But we're really focusing on the

22  summary judgment.

23      THE COURT:  No, I understand.

24      MR. DESPINS:  Okay.

25      THE COURT:  I'm just -- I am looking -- I want to

1    see what the summons itself says.

2           MR. DESPINS:  Yes.  Yes, Your Honor.  So let me

3    address right now the issue that -- raised by Bravo Luck

4    then.  Let's remember, Bravo Luck is the debtor's son, so

5    let's never forget that.

6           So Bravo Luck is saying, wait a minute, this

7    implies that you own it.  And the answer is, yes, we do own

8    it.  Legally, we own it.  I mean, I don't want to -- when I

9    say we own it, it's not a condo.  It's a co-op.  But do you

10   understand what I mean?  Own it is that we are the party

11   with legal title to the -- as far as the lease is concerned.

12          And the point here, and I will make that very

13   clear, is that nothing that happens in this adversary

14   proceeding impacts Bravo Luck's rights.

15          What I mean by that is that we're willing to

16   stipulate that any ruling by this Court saying that Mr. Kwok

17   needs to vacate the premise, et cetera, et cetera, will not

18   affect the issue of claimed ownership by Bravo Luck under

19   the trust agreement.  That's not -- we're not attempting to

20   influence that at any point.

21          But if we're going to sell this property, if we're

22   going to rent it, we cannot be in a position where we're

23   telling a renter, yes, you're interested, but it could take

24   six, seven months, maybe a year before you can get the

25   property.  That's not real life.  These people who want to

1   rent these types of property, they want to sign something

2   and be in there very soon.

3           And, therefore, the argument that somehow we don't

4   have a renter today, we don't have a buyer today, that's not

5   relevant, because we need this apartment to be vacant,

6   because the apartment is not -- we're not getting paid in

7   any way.  The estate is not recovering any money from the

8   use of the apartment.  And it's important for the sale or

9   rental that the apartment be empty.

10          So, again, this is not the motion for summary

11  judgment.  This is just -- the issue we're debating is the

12  timing.  And so I'm sure counsel for Bravo Luck will want to

13  be heard on that issue.  Thank you.

14          THE COURT:  Yes.  Thank you.

15          MR. LAWALL:  Thank you, Your Honor.  And, again,

16  Fran Lawall, Troutman Pepper, for Bravo.

17          What the trustee is not thinking about,

18  apparently, is the whole 541 property of the estate issue

19  where cases from the Supreme Court all the way down suggest

20  that when a property is being held in trust by the debtor,

21  and the debtor simply has legal but not beneficial

22  ownership, it's not property of the estate.  That is an

23  issue that the trustee has now raised directly and

24  indirectly through three complaints plus the latest

25  complaint that they have filed.

1    Our only point here is that that issue has to be

2    resolved before any position can be taken whether this is

3    property of the estate.  The trustee is right.  We have to

4    affirmatively raise that.  We have filed a motion to

5    intervene as well as a counterclaim in the latest adversary

6    in order to bring that issue on.

7    That is precisely why summary judgment is

8    inappropriate here, because there are clearly, as Your Honor

9    well knows, going to be significant issues of fact that are

10   going to have to be sorted through which are complex.

11   And so based on my earlier statements, which is

12   why I thought these are going to have to be conflated and

13   resolved in one time, one of the things I think the trustee

14   misses in all of this is that the whole purpose of that

15   settlement agreement that was done in Genever was to do just

16   what he wants to do as to provide a mechanism for selling

17   this property free and clear.  Bravo Luck agreed to it.  It

18   provides a pathway for the estate to sell the property and

19   put the money into escrow.

20   And that's -- and we -- but if that settlement

21   agreement is blown up or it's breached, then that consent

22   may not be there.  But that was one of the major benefits of

23   this that we worked hard in the New York court to get that

24   done.  And that is still in place, and we are not trying to

25   walk away from it.

1    But that is why, Your Honor, I think as we paint

2    the broader picture, why that settlement agreement was so

3    important and why starting to deviate from it may not only

4    be bad for maybe Bravo but possibly the estate and possibly

5    other parties.  We agree we have to get these issues

6    resolved.  We've tried to do it efficiently by filing an

7    affirmative -- an intervention as well as an affirmative

8    request for a determination.

9    But we do think it's all going to have to be

10    molded into this one case, into whatever, quite frankly,

11    scheduling order that we're able to reach in order to get

12    the discovery done and get it before Your Honor and heard.

13    It's complex, but we're ready to move forward and try and

14    get this done.

15    THE COURT:  Okay.  Thank you, counsel.

16    MR. MORIARTY:  Good afternoon, Your Honor.

17    THE COURT:  Good afternoon.

18    MR. MORIARTY:  James Moriarty from Zeisler &

19    Zeisler for the debtor, Ho Wan Kwok, who is a defendant in

20    this adversary proceeding.

21    Your Honor, we're happy to work with the trustee

22    and Attorney Lawall to come up with a scheduling order.

23    We're happy to work with them if this new adversary is to be

24    consolidated into the other three so that we can come up

25    with a scheduling order that works for everybody.

1          I think Attorney Lawall is right that there is an

2     issue of fact that would permeate this summary judgment

3     motion, and that is, is this lease property of the Genever

4     estate?  Because if it's not, then Genever doesn't have the

5     right to do what it's seeking to do via the summary judgment

6     motion.

7          This is a contract claim.  And on behalf of my

8     client, we believe that there are issues of fact.  This

9     consent agreement is a three-party agreement.  The debtor is

10    a party to that agreement.  The trustee's position and

11    Genever's position is there are specific provisions in that

12    agreement to which the trustee is not a party.

13         But it's a fully integrated agreement, so there's

14    going to be issues of fact as to the agreement and as to the

15    intent of the parties.  And we would like the opportunity to

16    take discovery as it relates to the intent of the parties.

17    And that discovery would be narrow, Your Honor.  It would

18    really be limited to the Sherry-Netherland and the intent of

19    the Sherry-Netherland when it was entering into these

20    agreements.

21         And the trustee may have all of the documents that

22    we would need to take that discovery.  So that discovery

23    could be limited.  I don't know what discovery the trustee

24    would need and what discovery Bravo Luck would need.  But,

25    again, we would be happy to work with them to come up with a

1    scheduling order that works for everybody.

2           The trustee made the comment that we need this to

3    be done quickly without appeal so that we can rent the

4    apartment.  This is a summary judgment motion.  Summary

5    judgment motions are generally not granted at the beginning

6    of a case without discovery.

7           If this motion is pushed through and the trustee

8    prevails, there's going to be appeals.  So that's not going

9    to get to the ultimate goal that the trustee is looking for.

10   This should be done deliberately, but it should be done

11   correctly.

12          THE COURT:  Are you saying -- I mean, I have no

13   idea.  I haven't looked.  Okay?  This case was just filed a

14   couple of days ago, right?  I mean --

15          MR. MORIARTY:  It was filed about three weeks ago.

16          THE COURT:  Okay.  Well --

17          MR. MORIARTY:  Yeah.

18          THE COURT:  -- in any event, I haven't looked at

19   it, right?  It was served on the 16th of February.  So we're

20   talking two weeks ago, two and a half weeks ago.

21          MR. MORIARTY:  Correct.

22          THE COURT:  Are you -- is it the debtor's position

23   that Genever USA does not -- is not a party to the lease

24   with the agreement with the Sherry-Netherland?

25          MR. MORIARTY:  No, that's not the debtor's

1    position, Your Honor.

2          THE COURT:  So what is the debtor's position?

3          MR. MORIARTY:  So there's a lease between the

4    Sherry-Netherland and Genever.  There is a second agreement.

5    It is a consent agreement.  That agreement --

6          THE COURT:  About the use of the property?

7          MR. MORIARTY:  Correct.

8          THE COURT:  Okay.  So, okay.  So then what -- so

9    what's the point?  I'm a little confused.

10         MR. MORIARTY:  The debtor is a party to that

11    agreement.

12         THE COURT:  Okay.

13         MR. MORIARTY:  And the debtor's --

14         THE COURT:  So what does that have to do with

15    anything?  They're not a -- he's not a party to the lease.

16         MR. MORIARTY:  Correct, Your Honor.  But what the

17    trustee is trying to do through this adversary proceeding is

18    amend that consent agreement.  And his position is the

19    debtor doesn't need to be a party to that amendment, because

20    the debtor is not a party to the particular provision in the

21    agreement that allows for it to be amended.

22         And our position is he is, because he's a party to

23    the agreement, and it's a fully integrated agreement.  You

24    can't carve out one provision that you believe is beneficial

25    to your argument and say the debtor's not a party to that

1    provision.

2              THE COURT:  So this is a declaratory judgment

3    action.  That's what this is, right?

4              MR. MORIARTY:  Yes.

5              THE COURT:  And the trustee is asking the Court to

6    declare that -- I'm going to look and see what he says.

7         (Pause.)

8              To declare that on March 6, 2015, Genever USA as

9    lessee and the Sherry-Netherland as lessor entered into the

10   leases that relate to the common stock allocated to the

11   apartment which is -- we -- it's a co-op, so we know that.

12   Okay?  That Genever US and the Sherry-Netherland are the

13   only parties to the leases.  That the purchase price was

14   approximately $70 million.  That Genever US and

15   Sherry-Netherland entered into an agreement with consent

16   with respect to shares and proprietary lease.

17             All right.  Let's see.  That's Exhibit 4.  Let's

18   take a look at that.

19        (Pause)

20             THE COURT:  I'm trying to find the beginning of

21   Exhibit 4.  There's 260 pages, so it's taking me a minute to

22   find it.  Does anybody know where Exhibit 4 starts, what

23   page number, since it's 250 pages?  So, oh, here.  I got it.

24   I just found it.

25             MR. DESPINS:  Okay.

1          THE COURT:  Page 145, Exhibit 4.  This agreement

2     is made as of the 6th day of March.  Agreement and consent

3     with respect to shares and proprietary lease by and between

4     the Sherry-Netherland, Inc., Genever Holdings, LLC, and

5     Mr. Kwok, known as Miles Kwok, known as Miles Guo, having an

6     address at -- okay.

7          All right.  So you're saying he's a party to this

8     agreement?

9          MR. MORIARTY:  Correct.

10         THE COURT:  Okay.  And because of that, you want

11    to do discovery with regard to what?

12         MR. MORIARTY:  What was the intent of the parties

13    when they entered into that agreement?

14         THE COURT:  Well, it doesn't matter.

15         MR. MORIARTY:  Was the intent to make Mr. Kwok --

16         THE COURT:  I mean, contract law says it doesn't

17    matter what their intent was.  It says what the contract

18    says, right?

19         MR. MORIARTY:  Well, if the contract --

20         THE COURT:  Isn't that the old -- I mean, parol

21    evidence.  Didn't we all learn about that?  I mean,

22    that's --

23         MR. MORIARTY:  There are exceptions, Your Honor.

24         THE COURT:  Yeah.  But there aren't many.

25         MR. MORIARTY:  That's true.  But there are

1  exceptions.  And in this case, that contract is not as clear

2  as the trustee would contend it is.  And to the extent

3  there's ambiguities in the contract, those ambiguities can

4  be proven --

5       THE COURT:  Well, I'm going to take a look.  I'm

6  not convinced that there's any need for discovery.  That

7  doesn't mean he's going to win.  But I don't understand why

8  you need discovery on a summary judgment motion.  He's put

9  forth what he says will establish that there's no genuine

10 issue of material law -- I mean, material fact to be tried.

11      You can respond to that.  And you can say, well,

12 yeah, there is.  But I don't see discovery.  You're not

13 convincing me of that at this point.

14      MR. MORIARTY:  Well, Your Honor, we can certainly

15 say that there are issues of fact, but we can't just say

16 that.

17      THE COURT:  Well, there has to be an issue -- a

18 genuine issue of material fact.  It doesn't have to be just

19 an issue of fact.  There's always an issue of fact.

20      MR. MORIARTY:  Correct, Your Honor.  But under

21 Local Rule 56(a)(2), we are required to come forward with

22 evidence as to those issues of fact.  And if we can't take

23 discovery, where do we get that evidence from?

24      THE COURT:  Discovery on what?

25      MR. MORIARTY:  Again, Your Honor, on --

1           THE COURT:  Just because you -- what discovery

2    could you possibly need?  Seriously?  I need to understand

3    that.  You're going to take Mr. Kwok's deposition of what he

4    thought it meant?

5           MR. MORIARTY:  Of course not, Your Honor.

6           THE COURT:  Then what are going to do?

7           MR. MORIARTY:  Because I don't need to do that.  I

8    would take discovery from the Sherry-Netherland as to what

9    the intent of the Sherry-Netherland was.  The trustee

10   alleges and argues that the Kwok family are licensees of

11   this property and, therefore, this Court has jurisdiction to

12   force them to vacate.  They don't have to go to New York.

13   They don't have to go through housing court.

14          Well, was it the intent of the parties to this

15   agreement that the Kwok family, the debtor and his wife and

16   his two children, would be licensees?  Or was it the intent

17   that they would be tenants?  If they're tenants, they have

18   different rights.  The trustee admits that.  That's the type

19   of discovery we need to be able to take.

20          THE COURT:  But what discovery would you take to

21   establish that?

22          MR. MORIARTY:  We would obtain documents from The

23   Sherry-Netherland, take a 30(b)(6) deposition of the

24   Sherry-Netherland.  And we would determine what it was at

25   that time that the Sherry-Netherland understood.

1          Mr. Kwok can come forward with an affidavit and

2      say this was the intent, but the Court may reject that

3      affidavit.

4          THE COURT:  Well, I have to think about it.  I

5      have to think about it.  I'll think about it.  But that's

6      what you're asking?  You don't want there to be a motion --

7      a hearing set on summary judgment right now.  You want there

8      to be a discovery schedule set.  That's what you're asking?

9          MR. MORIARTY:  I'm asking for a discovery

10     schedule, Your Honor.  And, again, we would coordinate with

11     Bravo Luck's attorney and the trustee's attorney to set a

12     schedule, because we do think there is an issue of fact as

13     to whether the lease is property of the estate.

14          I understand Genever is the party to the lease,

15     but there are three adversary proceedings.  And now there's

16     a fourth where Bravo Luck is seeking to intervene where

17     Bravo Luck is claiming, no, that's not property of the

18     estate.

19          To the extent the Court's not going to allow us to

20     take discovery, we would at least ask for more than two

21     weeks from today to be able to respond to the summary

22     judgment motion.  At least 30 days from the date --

23          THE COURT:  Well, I -- there's no date set to

24     respond to the summary judgment motion yet.  The only date

25     that's set to respond to anything is the responsive pleading

1   due under the summons.

2           MR. MORIARTY:  Correct, Your Honor.  The trustee

3   is asking for the Court to set a summary judgment response

4   date --

5           THE COURT:  I understand.

6           MR. MORIARTY:  -- of March 20th.

7           THE COURT:  I understand.  And I haven't done

8   that.  I haven't done that.  I'm not saying I'm doing that.

9   I'm saying -- but regardless of what I do with the summary

10  judgment motion, there is a responsive pleading deadline in

11  this adversary proceeding that's set by the summons that has

12  to be complied with.

13          MR. MORIARTY:  Correct, Your Honor.  I understand

14  that.  And that's March 20th.  My only point to the Court is

15  to the extent Your Honor is not going to allow discovery to

16  be taken, we would ask that we be given sufficient time to

17  respond to the summary judgment motion.

18          And if that's 30 days, if it's 45 days from

19  whenever the Court issues an order, either granting or, more

20  likely -- or I shouldn't say more likely, but denying

21  discovery.  Because if you grant discovery, then we don't

22  have to worry about an immediate response.  If you deny it,

23  then we do have to be concerned with an immediate response.

24          THE COURT:  Okay.  I understand.  And I just want

25  to be clear.  I completely understand what you just said.

1    But I'm not changing the response date of the summons as

2    they're two separate things.  And I just want to be very

3    clear about that.

4                MR. MORIARTY:  Okay.

5                THE COURT:  Okay?

6                MR. MORIARTY:  And I'm not asking for an

7    extension --

8                THE COURT:  Okay.

9                MR. MORIARTY:  -- of the answer date, Your Honor.

10               THE COURT:  Okay.  Thank you.

11               MR. DESPINS:  Your Honor, very briefly.

12               THE COURT:  We have to just still hear from --

13               MR. MORIARTY:  Oh, sorry.  Excuse me.

14               THE COURT:  -- the debtor's spouse, right?

15               MR. GOLDSTEIN:  Yes, Your Honor.

16               THE COURT:  Okay.  Could you state your name for

17   the -- you know, I'm sorry.

18               MR. GOLDSTEIN:  Of course.

19               THE COURT:  Will you just make your appearance for

20   the record, please?

21               MR. GOLDSTEIN:  Of course.  Evan Goldstein at

22   Updike, Kelly & Spellacy on behalf of Hing Chi Guo, the

23   debtor's wife of 37 years, Your Honor.

24               THE COURT:  Good afternoon.

25               MR. GOLDSTEIN:  Good afternoon.  Just for the

1    record, I -- to -- and not to repeat the arguments that were

2    made by the debtor and Bravo Luck.  Hing Chi Guo objected to

3    Genever Holdings and the trustee's scheduling motion related

4    to the motion for summary judgment, Document Number 22.

5         The request that we're asking is actually denying

6    the scheduling motion and defer the hearing on the summary

7    judgment based on the fact that there is no standing at this

8    point.

9         As the Court points out, there's three adversary

10   proceedings pending, making that determination at some point

11   of actually who has ownership of the property, of the

12   apartment.

13        And until that is determined by the Court, it's

14   our position that the trustee does not have standing to

15   actually make a claim to remove my client as use and

16   occupancy of the property.

17        THE COURT:  Okay.  I think there's two different

18   issues in what you just said.  I mean, I think standing is

19   interesting insofar as it appears that there's a lease

20   between Genever USA and the Sherry-Netherland.  No one's --

21   no one has disputed that.  Whether or not it's property of

22   the estate, I think, is, you know, maybe a different issue.

23        But I hear what you've said.  You don't want

24   anything to be scheduled right now.  However, I want to be

25   very clear.  I'm not deciding this today.  I can't.  I

1    haven't even looked at all this.  You filed things in the

2    last -- and that's fine -- in the last few days.

3         We've had -- we've been sitting -- we've been in

4    court here for four hours, right, on about 12 different

5    things.  And we still have to talk about other things.  So

6    I'm not going to schedule the summary judgment motion

7    hearing today or a response deadline.

8         Would I do that tomorrow?  I don't know.  It's

9    possible.  I'm going to take into account everything

10   everyone said, of course.  But that doesn't change any

11   requirement to respond to the complaint, whatever that

12   response is.

13        So I just want to be very clear about that.  I

14   understand that the trustee filed the complaint and the

15   summary judgment motion the same day.  I understand all

16   that.  But we're not changing the date to respond to the

17   complaint.

18        And you file whatever response you think is

19   appropriate under the Federal Rules of Civil Procedure --

20   Federal Rules of Bankruptcy Procedure.  That's absolutely

21   fine.

22        MR. GOLDSTEIN:  Understood.

23        THE COURT:  So with regard to the -- these two

24   motions -- I'm sorry.  I shouldn't say that.  It's with

25   regard to the two matters on the calendar today in this

1    adversary proceeding, 23-5002, which is a motion for order

2    to schedule a hearing on summary judgment, which is ECF 6.

3    And then a -- the motion for summary judgment.

4            I'm not going to act on those today.  I have to

5    look at them, and I'll rule accordingly.  I'm not going to

6    have any further hearings on the issue.  I understand the

7    parties' positions, and I will figure out what to do.  Okay?

8            But I haven't had the opportunity other than just

9    talking with you right now in court to fully understand

10   what's happening and -- although I think I have a pretty

11   good idea.  But so that's what I'm going to do.  Does anyone

12   have any questions about that?

13           MR. DESPINS:  No.  But I -- just two seconds, Your

14   Honor?

15           THE COURT:  Yes.  Go right ahead.

16           MR. DESPINS:  So I -- when you get to that, Your

17   Honor, I would urge you to look at Section 9 of the

18   agreement and consent.  It says lessor, that means

19   Sherry-Netherland, and lessee, that means Genever, hereby

20   agree that the apartment will be occupied as a private

21   dwelling, et cetera, et cetera, for no other person and that

22   only the occupant, that's Mr. Kwok, and the members of the

23   occupant's immediate family may occupy or use the apartment.

24           That's an agreement -- this is not like a -- this

25   is standard boilerplate period that basically says that it's

1    the lessee and the lessor that agree to that and that grant

2    them that right.  Therefore, those two parties are the

3    parties that can take away that right.

4            And as to Mr. Lawall's argument that, hey, there's

5    property of the estate, let's step back for a second, Your

6    Honor.  This is a -- what he's relying on is an agreement

7    between Mr. Kwok and his son.  And there's a lot of issues

8    about that, and we'll cover that in the -- at the various

9    adversary proceedings.

10           But the point here is that Genever USA is the

11   title -- legal title owner.  They are trying to impose a

12   trust on it that they claim is valid.

13           It doesn't mean that -- if that happens in a

14   bankruptcy case, it doesn't mean that everything stops with

15   respect to the property where the debtor holds title.  Not

16   everything stops until they prove their case that that trust

17   agreement is valid and is enforceable and is not a

18   fraudulent transfer.

19           So I would urge Your Honor to look at it in that

20   context which is that it's up to them to impose that trust.

21   We don't come to the Court with the assumption that that

22   trust between the father and son is valid and is not subject

23   to avoidance.  It is up to them to prove that that trust

24   should be imposed on the legal title owner, which is Genever

25   USA.  Thank you.

1          THE COURT:  Okay.  Thank you.

2          MR. LAWALL:  Your Honor?

3          THE COURT:  Counsel, go ahead.

4          MR. LAWALL:  I don't mean to belabor this, but --

5          THE COURT:  Just wait until you get closer to the

6    microphone, please, just so we can pick it up.

7          MR. LAWALL:  Yeah.  I apologize, Your Honor.

8    Again, for the record, Fran Lawall of Troutman.  The

9    trustee's own papers have repeatedly said that there is an

10   issue with respect to title that has to be resolved.  So and

11   by the way, we have filed a motion to intervene plus an

12   affirmative pleading in order to seek a determination of the

13   trust issue.

14         We're not also -- we're not just relying upon the

15   fact that there's this trust agreement.  The trustee has

16   admitted again and again that Bravo Luck was the one who

17   paid the $70 million for this property.  It doesn't say that

18   Miles Kwok paid for it.  It was Bravo Luck.

19         So there's more than just simply a trust agreement

20   here.  There's a lot more here, Your Honor.  And I don't

21   want to belabor it.

22         But, again, there is a significant 541 issue

23   that's got to be resolved.  We do have the motion to

24   intervene pending, Your Honor.  I don't know --

25   procedurally, how would you like --

1      THE COURT:  I think it was just filed.  Wasn't it

2  just filed yesterday?

3      MR. LAWALL:  It was, Your Honor, together with the

4  proposed answer.

5      THE COURT:  Well, normally when a motion is filed

6  in an adversary proceeding under the general rules -- I have

7  to look, but the general rules of the district court and the

8  bankruptcy court is that there's a 21-day response period --

9      MR. LAWALL:  Right.

10     THE COURT:  -- for a motion.  So I've got to take

11 a look, okay?

12     MR. LAWALL:  That's fine, Your Honor.  I just

13 wanted to bring that to your attention.

14     THE COURT:  Oh, I haven't had a chance.  I know

15 you filed it.

16     MR. LAWALL:  Right.

17     THE COURT:  That's all I know.  Because I saw

18 that.  I did -- it was brought to my attention, something

19 about the appearance, and I just said that's not -- you

20 don't have to worry about that, because --

21     MR. LAWALL:  Got it.

22     THE COURT:  -- unless and until they intervene --

23 or granted to intervene -- but you filed the appearance, so

24 that's fine.

25     MR. LAWALL:  Okay.

1          THE COURT:  All right.

2          MR. LAWALL:  Thank you, Your Honor.

3          THE COURT:  I'll take a look.  Thank you.

4          Anyone else wish to be heard?

5          Okay.  So I'm going to -- the summary judgment

6     motion is a pending motion.  Whether and when it gets set

7     for hearing is what ECF Number 6 is asking.  It's asking for

8     an order setting the hearing and the response date on the

9     summary judgment.

10          I'm not doing that today.  So I have to take a

11     look at it.  And I will do that in short order.  And you

12     will all know when you get your -- the notice of electronic

13     filing of whatever order I issue.  Okay?

14          All right.  Now, that does address everything

15     that's on the calendar today, but there are two further

16     issues that I need to address.

17          So it was brought to my attention that with regard

18     to the prejudgment remedy hearing scheduled to start next

19     week that, Attorney Kindseth, you want to testify at a

20     different time, because you have a vacation.  Which I

21     understand.

22          But I was confused by that, because your office

23     asked for those dates for the actual evidentiary hearing.

24     So I -- I'm a little bit at a loss, because I removed --

25     moved things around the calendar to set those dates as -- on

1    consecutive dates, because your office in the actual

2    pleading said those dates work.

3            Now, it appears that the trustee -- and maybe I'm

4    wrong, Mr. Despins.  You don't object to Mr. Kindseth's

5    testimony being taken out of order.  I don't know.

6            But I'm not taking it this Friday.  I'm not going

7    to change the schedule all around when we -- you know,

8    that's concerning to me a little bit.  So I'm not doing it

9    this week.  It can't happen.  Okay?

10           The hearings are scheduled next week for -- what

11   is it?  It starts on the 15th.  We have the 15th, 16th, and

12   17th, right?  Isn't that what we had scheduled for the PJR

13   hearing?

14           UNIDENTIFIED SPEAKER:  That's correct, Your Honor.

15           THE COURT:  Okay.

16           MR. KINDSETH:  Yes, Your Honor.  And if I could --

17           THE COURT:  So then -- so you're going to be back

18   from vacation on Monday the 20th?

19           MR. KINDSETH:  I am.  And I apologize, Your Honor.

20           THE COURT:  So you're going to testify on Monday

21   the 20th.  I don't know why you need to testify.  But if

22   you're going to testify, that's when you're going to

23   testify.

24           I'm not going to break up the -- you know, we've

25   done this in a couple of matters, and it's really not

1    actually fair to the Court to break up the presentation of

2    evidence to suit the lawyers.  And I'm not -- that didn't

3    come out right.  I know if you have a vacation, you have a

4    vacation.  But I'm still confused, because your office

5    specifically asked for those dates.

6            So what were you going to say, Attorney -- what

7    were you going to say?

8            MR. BASSETT:  Yeah.  Your Honor, Nick Bassett from

9    Paul Hastings for the record.

10           I was just going to say that we -- well, first of

11   all, we were also surprised that it didn't work, because

12   from our perspective we worked together with Zeisler to come

13   up with this schedule to do the hearing on dates when we all

14   knew we would be available.

15           And we, on our end, were specifically navigating

16   issues of availability including family vacations.  And the

17   one significant week that we navigated around that does not

18   work for us is the week of the 20th, which is the week after

19   next week.

20           So what we told Attorney Kindseth and his

21   colleagues when they reached out, we said, look, we don't

22   understand how this was not addressed at the time we set the

23   schedule.  But, of course, we are willing to be reasonable

24   in trying to accommodate the vacation if we can.

25           So the solution that we came up with was for

1    Mr. Kindseth, if it were acceptable to the Court, to testify

2    early this week.  I understand that doesn't work.

3           So now I think we're at a loss for where we go

4    from here.  I had two ideas, one of which was

5    Mr. Kindseth -- and, first of all, I think from the

6    trustee's perspective, it's not clear to us either why

7    Mr. Kindseth needs to testify.  Be that as it may, he's on

8    their exhibit list.

9           We took his deposition.  Prior to that deposition,

10   the issue of Mr. Kindseth's unavailability during the court

11   ordered hearing dates -- that arose prior to the deposition.

12   So at that deposition, we hadn't resolved the issue.

13          One thing we could have done is they could have

14   asked questions of Mr. Kindseth at the deposition.  And by

15   the way, counsel who's representing the daughter and HK

16   left, so he's not here to address the reasons why

17   Mr. Kindseth may testify and what happened at the

18   deposition.  But our position was let's do it by deposition

19   then.

20          We asked him everything he was going to testify

21   about.  What we were told is that he's going to testify

22   about the Himalaya loan that was allegedly provided in

23   connection with the stipulation on the $37 million in

24   escrow.  We asked repeatedly, is there anything else you've

25   got to testify about?  He testified to all of that.  We

1    think the testimony is exhaustive.

2              In our view, let's submit the deposition testimony

3    via designations from each side.  That can come in as

4    testimony.  Another option, which I would hate to impose on

5    Mr. Kindseth, is if it's amenable to the Court, he could

6    testify remotely while he's on vacation.  But we

7    specifically navigated around the week of the 20th, because

8    that does not work for us.

9              The other obvious issue, Your Honor, is I don't

10   see how it would be possible to not have closing argument,

11   which we think is very important, until after the close of

12   evidence.

13             So moving -- you know, it's not an issue of just

14   moving Mr. Kindseth's testimony to a half day.  It would be

15   let's move that to a day when thereafter we would have time

16   to do closings, which could take a significant amount of

17   time.

18             So, you know, again, we're trying to accommodate.

19   Nobody wants to ruin vacations.  But it's -- we find

20   ourselves in a very difficult position.

21             THE COURT:  So what's wrong with using your

22   deposition testimony?

23             MR. KINDSETH:  First, Your Honor, if I could, I'd

24   like to address what transpired.

25             First, there was no communication with me,

1    contrary to what Attorney Bassett stated, concerning the

2    date, which was the problem.  The --

3           THE COURT:  What date?

4           MR. KINDSETH:  The date of the trial.

5           THE COURT:  Yes.  Your firm filed a motion and

6    said you wanted it on those dates.

7           MR. KINDSETH:  It was a joint -- Your Honor --

8           THE COURT:  Wait a minute.  Let me --

9           MR. KINDSETH:  Can I --

10          THE COURT:  Let me just stop you right there.

11   Seriously.  Let me stop you right there.  That is just not

12   going to work.  You all have decided that you're all going

13   to take on whatever you're going to take on.  That's

14   absolutely fine.  I don't -- you know, whatever you're going

15   to do.

16          But you can't then submit something to the Court,

17   say this is the week that's going to work for us.  Then I

18   change everything around to make it work.  And then you come

19   in less than two weeks before and say, oh, by the way, I

20   can't -- I'm going to testify, and I can't be there, so you

21   need to do it on a different day, Judge.  Well, that's not

22   how it works.

23          MR. KINDSETH:  Your Honor, I understand --

24          THE COURT:  It's not going to work that way.

25          MR. KINDSETH:  Your Honor, it was an internal

1    issue where the parties scheduling the dates did not

2    communicate with me personally.  We accept responsibility

3    for that internal mistake.

4              THE COURT:  Well, then we'll use your deposition.

5    What's wrong with using your deposition?

6              MR. KINDSETH:  It was only an examination of me --

7    first of all, I'd like to alert the Court to the fact that

8    lead counsel is not present.  I'm the proposed witness.

9              THE COURT:  Well, then he should have stayed here.

10             MR. KINDSETH:  Well, Your Honor, it wasn't on the

11   calendar.

12             THE COURT:  Well, you mean to tell me none of you

13   were going to talk about the PJR --

14             MR. KINDSETH:  No.

15             THE COURT:  -- hearing today?

16             MR. KINDSETH:  What we contemplated doing is

17   filing a motion.

18             THE COURT:  Well, why didn't you?

19             MR. KINDSETH:  No.  Because --

20             THE COURT:  You haven't filed a motion.

21             MR. KINDSETH:  We actually --

22             THE COURT:  And the hearing is next week.

23             MR. KINDSETH:  As a courtesy on agreement, we

24   submitted an email to the courtroom deputy alerting the

25   Court to this request.  Since we had not heard a response,

1    we anticipated filing a motion as soon as possible so this

2    issue can be addressed by counsel who are trying the case.

3    And so but since Your Honor raised the issue, I wanted to

4    alert Your Honor and explain.

5             And it is unfortunate.  It is an internal problem

6    that happened within Zeisler & Zeisler.  That's unfortunate.

7    And it's unfortunately affecting my vacation with my family.

8    And I would prefer not to fly back from Portugal on Thursday

9    in the middle of the vacation and leave my wife and two

10   kids, but I will if I have to.  Because I have a commitment

11   to the client.  The client --

12            THE COURT:  Why do you need to testify?  Why can't

13   you accomplish it in some other way so you can enjoy your

14   vacation with your wife and your kids?

15            MR. KINDSETH:  Your Honor, I understand the fact

16   that a mistake was made, but the fact --

17            THE COURT:  No, no.  That's not answering my

18   question.  You're the lawyer.  What are you going to testify

19   about with regard to a transaction?  And if you do --

20            MR. KINDSETH:  Because they're claiming it's

21   not --

22            THE COURT:  -- aren't you waiving the

23   attorney/client privilege --

24            MR. KINDSETH:  No.  It's a --

25            THE COURT:  -- with regard to that transaction?

1          MR. KINDSETH:  It's a transaction with a third

2     party.  The loan that my client obtained from Himalaya, I

3     was lead transactional counsel negotiating that loan.  And

4     I'm being called to testify as to that transaction.

5          THE COURT:  For what purpose?

6          MR. KINDSETH:  For purposes of rebutting their

7     contention that Himalaya is a "shell" of Mr. Kwok.  And --

8          THE COURT:  Well, how can you prove that?

9          MR. KINDSETH:  No.  I'm just going to simply

10    testify -- and, again, I'm not -- I'm not lead counsel.

11    Trial counsel should be making these arguments.

12         THE COURT:  I understand that.  But you can't

13    prove that even -- no matter what you say.

14         MR. KINDSETH:  But, Your Honor, two points.  First

15    of all, other counsel should be arguing it.  Second of all,

16    this is -- and I understand Your Honor's --

17         THE COURT:  Fine.  You know what we're going to

18    do?  We're going to have a conference tomorrow and get

19    counsel back here.  And he's going to explain why this is --

20    why he waited to do all this and what the problem is.

21         Because I don't understand why your deposition

22    testimony can't come in.  What possibly could you say on the

23    stand that you haven't already said in your deposition

24    testimony?  So fine.

25         MR. KINDSETH:  We would appreciate that very much,

1      Your Honor.

2                  THE COURT:  Fine.  Everybody's got to be back here

3      tomorrow then.  I just need to look at timing.

4                  MR. LAWALL:  Your Honor, just to be clear, Bravo

5      is not part of this, so you're not expecting Bravo to be

6      here, are you?

7                  THE COURT:  You can be here if you'd like to be,

8      but I'm not --  the issue right now is between the HK

9      parties and Mr. Kindseth and the debtor -- and the trustee.

10     Okay?  You can be here if you want.

11                 MR. LAWALL:  No.  I'm more than happy not to be,

12     Your Honor.

13                 THE COURT:  You're not calling witnesses or

14     introducing exhibits --

15                 MR. LAWALL:  Not at all, Your Honor.

16                 THE COURT:  -- at a PJR hearing next week.

17                 Mr. LAWALL:  Nope.

18                 THE COURT:  Okay.  So then --

19                 MR. LAWALL:  Thank you, Your Honor.

20                 THE COURT:  Okay.  Thank you.  But you're more

21     than welcome to come.

22                 MR. LAWALL:  Understood.

23                 THE COURT:  All right.  1:00 p.m. tomorrow

24     afternoon, unless there's an agreement submitted by the

25     parties that the deposition testimony can be used.  Then

1    counsel for HK has to be here in this court and explain why

2    this has to happen.  Okay?

3            So that's what we're going to do.  We're going to

4    issue -- there is no motion pending.  So we're going to --

5    I'm going to issue an order -- well, I'm doing it on the

6    record.

7            I am not going to issue a separate order, because

8    it's 5:15.  I mean, when is the -- the clerk's office isn't

9    going to be able to deal with this.  They've got to go home

10   and eat and be with their families too.

11           So I am issuing -- I'm making an oral ruling that

12   there's going to be a status conference with regard to the

13   prejudgment remedy trial scheduled to begin I believe at

14   10:00 a.m. on the 15th at 1:00 p.m. tomorrow unless there's

15   an agreement in writing between counsel that the deposition

16   testimony of Mr. Kindseth can be used at trial.

17           Is that -- you have any questions on that,

18   Mr. Bassett?

19           MR. BASSETT:  That's fine, Your Honor.  I'm sorry.

20   But one additional -- I would just like to say that if we

21   are going to be before the Court tomorrow, there are some

22   other issues related to the PJR hearing.  So if it's a

23   general status conference, I think that would --

24           THE COURT:  Yes.  Sure.

25           MR. BASSETT:  Yeah.  Okay.

1          THE COURT:  We'll talk about it.

2          MR. BASSETT:  Thank you.

3          THE COURT:  That's fine.  All right.  So that's

4     one thing that I wanted to talk about.

5          The other thing that I wanted to talk about, which

6     is not -- it's not -- the process has not been -- Judge

7     Tancredi entered an order in the *Norwich Diocese -- Roman*

8     *Catholic Diocese* case yesterday and had a hearing apparently

9     on February 15 with regard to disclosure of confidential

10    information by Epiq and the names and addresses of the

11    sexual abuse victims in the -- in that case.

12         And the victims have all -- have now filed a -- an

13    action in the district court of Connecticut seeking damages

14    against Epiq for that disclosure and apparently have, I --

15    from -- I believe I am accurate in stating, seeking to have

16    that action be certified as a class action and have alleged

17    that Epiq has disclosed confidential information in several

18    cases throughout the country and in Canada.  That's my

19    understanding.

20         The proof of claim bar date in this case has

21    passed.  The clerk's office of this Court received proofs of

22    claim in this case during the same time that Epiq received

23    proofs of claim in this case.  And so there is an existing

24    claims register that the Court has, and Epiq hasn't,

25    apparently, finished processing of all of its claims.

1          But at this time, that claims register is not

2     available for public view in light of many issues, including

3     Judge Tancredi's order, that he's concerned about this

4     across the judiciary, not just in his case.  Okay?

5          So the likelihood is -- and I don't really think

6     it really impacts anybody other than, I think, to tell you

7     that the likelihood is that all of those claims that Epiq

8     has or -- will be turned over to this Court, and this Court

9     will maintain the claims register of both non-confidential

10    and confidential claimants.

11         And any service to be made in this case, as

12    already was ordered in an enter -- an order entered on

13    February 8th regarding Epiq's services, which was entered

14    when I had no idea about what happened in the *Norwich*

15    *Diocese* case, said that they're supposed to -- Epiq was

16    supposed to serve things only at the direction of the Court,

17    the clerk, or the Chapter 11 trustee.

18         So I don't think it's -- I think that that is the

19    proper way to proceed because, as we also all know, I think,

20    my understanding, again, is that there are some 1,300 claims

21    filed and that there are likely going to be a lot of issues

22    raised at some point in this case about the validity of many

23    of those claims.

24         So it makes more sense for those claims to be here

25    with our court for us to deal with it, because Epiq

1    apparently testified that they -- well, they want to get rid

2    of the -- I shouldn't -- that's not fair.  Not rid of.

3    They're turning over, if Judge Tancredi orders it, the

4    processing of claims and other issues in that case for

5    specific reasons to a different claims agent, although that

6    case has money to pay a claims agent.

7            And I don't see the reason to do that in this

8    case.  I think the bar date's passed.  We get all the

9    claims.  We deal with them here in the court and the clerk's

10   office as the statute requires the clerk's office to do.

11           So does anyone have any concerns about that?  I

12   know I'm -- we can -- you can raise them tomorrow, I

13   suppose, if -- you haven't really had any time to think

14   about it, obviously.

15           And I don't remember -- I can look right now while

16   we're here.  I can try to find Judge Tancredi's order that

17   issued yesterday.  I've seen it, so I know it exists.  But I

18   don't know if I have it right in front of me.

19           MR. DESPINS:  So, Your Honor, if I may just

20   address it -- this briefly?

21           THE COURT:  Yes.

22           MR. DESPINS:  Luc Despins, Chapter 11 Trustee.  I

23   was aware of what was going on.  I am not aware of the order

24   entered yesterday, but I was aware of what was going on in

25   that case.  I think Mr. Kindseth actually represents the

1    committee, but -- in that case.

2            And we did have a discussion with Epiq saying what

3    measures have you taken so -- to make sure that nothing like

4    this happens here.

5            THE COURT:  Yeah.  But they haven't taken any

6    measures, according to Judge Tancredi, unfortunately,

7    Trustee Despins.

8            MR. DESPINS:  No, no.  I understand.  So I'm

9    not --

10            THE COURT:  And I guess he's actually -- this

11    order that entered yesterday.  He's requiring them to, in

12    addition to the fact that they testified, to file a

13    declaration about what they're going to do.  I just --

14    there's too much going on in this case.

15            MR. DESPINS:  Okay.

16            THE COURT:  I cannot spend my life --

17            MR. DESPINS:  No, I understand.

18            THE COURT:  -- worrying about the proofs of claim.

19            MR. DESPINS:  No, no.  We --

20            THE COURT:  I mean, this is --

21            MR. DESPINS:  We understand, Your Honor.  So --

22            THE COURT:  It just doesn't make any sense to me.

23            MR. DESPINS:  So we're not trying to defend Epiq.

24    I just wanted to let you know that we had attempted to --

25            THE COURT:  Okay.

1          MR. DESPINS:  -- cover that.

2          THE COURT:  I appreciate that.

3          MR. DESPINS:  And what I would like to do is be

4    able to talk to my colleague who's handling this process so

5    I can have a more intelligent response to Your Honor's

6    position, but -- and I can report on that tomorrow.

7          THE COURT:  I'm trying to find the case right now.

8    And I'm just probably looking in the wrong place.  But maybe

9    I'm not.  So give me a second.

10         MR. DESPINS:  Okay.

11         THE COURT:  Well, Attorney Kindseth, do you know

12   the case number?  You're involved in the case, aren't you?

13   Or --

14         MS. CLAIBORN:  The *Norwich* case number?

15         UNIDENTIFIED SPEAKER:  I think it's 21 --

16         THE COURT:  All right.  Hold on.  The --

17         MS. CLAIBORN:  It's 21-20687.

18         THE COURT:  21-20867.

19         MS. CLAIBORN:  20687.

20         THE COURT:  Oh, 20687.  Thank you.

21         MR. DESPINS:  Thank you.

22         MS. CLAIBORN:  Your Honor, if I just could put one

23   comment on the record, which is that one of the issues that

24   prompted the use of Epiq in this particular case was the

25   concern that creditors who may file proofs of claim may be

1    concerned about airing their addresses and their public

2    information with the debtor and/or the people in the

3    debtor's camp.

4           So what I have seen is, notwithstanding the

5    passage of the bar date, creditors are continuing to file

6    proofs of claim.  And so to the extent we have to figure out

7    a better solution to protect creditors, we need to take into

8    account the fact that there may be creditors who properly

9    have late filed claims and who need to be treated as

10   confidential and protected.

11          THE COURT:  Without question.  And if Epiq gets

12   that information, they're going to have to continue to turn

13   it over to us.  That's what the order of February 8 said.

14   So I understand what you're saying.

15          And the anticipation is, if this is to occur that

16   the Court is going to -- well, I don't mean the Court.  The

17   clerk's office is going to be, as it's statutorily required

18   to be, the repository of the -- all claims in a case.  Then

19   there will be a confidential claims register that will not

20   be available to the public.  I mean, that's just the way

21   it's going to have to be until there's further order of the

22   Court.

23          I just -- I -- with -- I just don't want to spend

24   any more time worrying about -- other than maintaining what

25   we all -- everybody agreed was appropriate and was ordered

1     that there be confidential claims and non-confidential

2     claims, our clerk's office can handle it.  And I don't

3     want -- according to the -- what I've been told and seen,

4     there's a person pressing a button that pressed a button on

5     occasions in the *Norwich* case and others that disclosed that

6     information.

7               I'm not going to have that.  I don't need to have

8     that in this case.  Okay?  Does that make sense?

9               MS. CLAIBORN:  Yes, Your Honor.

10              THE COURT:  Okay.  Does anyone else wish to be

11    heard on that issue?  All right.  Well, we can talk about it

12    more tomorrow.  All right?

13              But it's a serious issue, and there's some serious

14    allegations out there.  And I completely understand why

15    there was a request to retain Epiq to do what -- to have

16    confidential claims filed.  But if we can't be confident

17    that those confidential claims will remain confidential,

18    then I just don't need to address -- I just don't see the

19    point in having that continue.  Okay?

20              MR. DESPINS:  Understood.

21              THE COURT:  All right.  That takes care of

22    everything on today's calendar.  Even if you have an

23    agreement with regard to Mr. Kindseth's testimony by 1:00

24    p.m. tomorrow, we're still going to talk about the PJR

25    hearing?

1           MR. DESPINS:  Yes.

2           THE COURT:  Is that correct?

3           MR. BASSET:  That's correct, Your Honor.

4           THE COURT:  All right.

5           MR. LINSEY:  Your Honor?

6           THE COURT:  Yes.

7           MR. LINSEY:  We reached out to counsel for HCHK in

8      Lexington.  They did file that notice of withdrawal.

9           THE COURT:  I actually just saw that, thank you,

10     when I looked at the docket.  So I saw the withdrawal of

11     that motion that was on the calendar today.  I'm looking at

12     the courtroom deputy.  It'll come up.  It was withdrawn

13     while we were in court today.

14          THE COURTROOM DEPUTY:  Okay.

15          THE COURT:  Okay?

16          THE COURTROOM DEPUTY:  Yes.

17          THE COURT:  All right.  Thank you, all.  I'll see

18     you tomorrow.  We will see you tomorrow at 1:00 p.m.  Court

19     is adjourned.

20          MR. DESPINS:  Thank you.

21          (Proceedings adjourned at 5:22 p.m.)

22

23

24

25

1    I, CHRISTINE FIORE, court-approved transcriber and certified

2    electronic reporter and transcriber, certify that the

3    foregoing is a correct transcript from the official

4    electronic sound recording of the proceedings in the above-

5    entitled matter.

6

7    *Christine Fiore*

8    _____          March 15, 2023

9        Christine Fiore, CERT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25