UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

```
In Re                          *   Case No. 22-50073 (JAM)
                               *
HO WAN KWOK and GENEVER        *
 HOLDINGS CORPORATION,         *
                               *
              Debtor.          *

HK INTERNATIONAL FUNDS             Adv. Proc. No. 22-05003
 INVESTMENTS (USA) LIMITED,    *
                               *   Bridgeport, Connecticut
              Plaintiff,       *   March 23, 2023
                               *
      v.                       *
                               *
LUC A, DESPINS,                *
                               *
              Defendant.       *
                               *
* * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION TO QUASH SUBPOENA FROM TRUSTEE;
OBJECTION AND CROSS-MOTION TO COMPEL;
APPLICATION TO EMPLOY PALLAS PARTNERS LLP AS U.K.
SOLICITORS; MOTION TO QUASH SUBPOENA FILED BY
RICHARD N. FREETH; OBJECTION AND CROSS-MOTION
TO COMPEL and MOTION TO EXTEND TIME TO RESPOND TO
PRELIMINARY INJUNCTION ORDER TO MARCH 27, 2023
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Defendant,          NICHOLAS A. BASSETT, ESQ.
 Luc A. Despins, Chapter 11  G. ALEXANDER BONGARTZ, ESQ.
 Trustee:                    Paul Hastings, LLP
                             200 Park Avenue
                             New York, NY  10166

                             DOUGLAS G. SKALKA, ESQ.
                             PATRICK R. LINSEY, ESQ.
                             Neubert Pepe & Monteith, PC
                             195 Church Street
                             New Haven, CT  06510

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:  (Cont'd.)

| | |
|---|---|
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings, LLP<br>200 Park Avenue<br>New York, NY  10166 |
| For the Creditor, Pacific<br> Alliance Asia Opportunity<br> Fund L.P.: | ANNECCA SMITH, ESQ.<br>Robinson & Cole<br>28 Trumbull Street<br>Hartford, CT  06103 |
| For the Creditors Committee: | KRISTIN MAYHEW, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States<br>   Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For Jiaming Liu and<br> Himalaya Investment LLC,<br> Interested Party: | RICHARD N. FREETH, ESQ.<br>Freeth & Associates<br>260 Madison Avenue<br>New York, NY  10016 |
| For Pacific Alliance Asia<br> Opportunity Fund, L.P.: | STUART M. SARNOFF, ESQ.<br>O'Melveny & Myers, LLP<br>7 Times Square<br>New York, NY  10036 |
| For Mei Guo and HK Int'l<br> Funds Investment (USA): | AARON ROMNEY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street<br>Bridgeport, CT  06604<br><br>LEE VARTAN, ESQ.<br>Chiesa Shahinian &<br> Giantomasi, P.C.<br>One Boland Drive<br>West Orange, NJ  07052 |

1          (Proceedings commenced at 11:07 a.m.)

2               THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3     Kwok, and Case No. 22-5003, HK International Funds

4     Investments versus Despins.

5               THE COURT:  Good morning.  If we could have

6     appearances for the record starting with the Chapter 11

7     Trustee, please.

8               MR. DESPINS:  Good morning, Your Honor.  Luc

9     Despins, Chapter 11 Trustee.

10              THE COURT:  Good morning.

11              MR. BASSETT:  Good morning, Your Honor.

12              THE COURT:  And counsel for the -- go ahead,

13    Attorney Bassett.  I was just going to say and counsel for

14    the Trustee, please.

15              MR. BASSETT:  Sorry, Your Honor.  Nick Bassett,

16    from Paul Hastings, counsel for the Chapter 11 Trustee.

17              MR. SKALKA:  Good morning, Your Honor.  Douglas

18    Skalka, as local counsel of Neubert Pepe & Monteith, on

19    behalf of the Trustee.

20              THE COURT:  Good morning.

21              MR. SMITH:  Good morning, Your Honor.  Stuart

22    Sarnoff, of O'Melveny & Myers, on behalf of creditor PAX.

23              THE COURT:  Good morning.

24              MS. SMITH:  Good morning, Your Honor.  Annecca

25    Smith, of Robinson & Cole, Connecticut counsel for PAX.

1          THE COURT:  Good morning.

2          MS. MAYHEW:  Good morning, Your Honor.  Kristin

3     Mayhew, Pullman & Comley, on behalf of the Creditors

4     Committee.

5          THE COURT:  Good morning.

6          MS. CLAIBORN:  Good morning, Your Honor.  Holley

7     Claiborn for the U.S. Trustee.

8          THE COURT:  Good morning.

9          Then, Attorney Freeth, the motions -- you have

10    some motions on at 10 o'clock.  Could you please note your

11    appearance for the record.

12         MR. FREETH:  Sure.  Richard Freeth, Freeth &

13    Associates, for Interested Party Liu.

14         THE COURT:  I'm sorry.  I couldn't hear you, Mr.

15    Freeth.  Could you speak -- I don't know where your

16    microphone is, but our record in the bankruptcy court is all

17    audio so we -- if we can't hear you, that won't pick up, it

18    won't make a record, so I'm going to ask you to do that

19    again, please.

20         MR. FREETH:  Understood.  My apologies.  My name

21    is Richard Freeth, Freeth & Associates, and I am here on

22    behalf of -- for lack of a better term we call it an

23    Interested Party, Mr. Liu, L-I-U, who received a subpoena,

24    actually two subpoenas.

25         THE COURT:  And are you also appearing on behalf

1    of a corporate entity?

2            MR. FREETH:  Yes.  His LLC, which is called

3    Himalaya Investments -- Investment, LLC.

4            THE COURT:  Okay.  Thank you.  Good morning.

5            Attorney Linsey, did you want to note your

6    appearance for the record?

7            MR. LINSEY:  Thank you, Your Honor.  I'm up in

8    Judge Tancredi's court this morning, but I'm trying to be on

9    when I can.  I apologize for coming in late.  Patrick

10   Linsey, Connecticut counsel for the Trustee.

11           THE COURT:  Good morning.

12           All right.  So on the calendar at 11:00 a.m. are

13   some discovery disputes, but also an application to employ

14   that the Chapter 11 Trustee has filed with regard to

15   retention of a solicitor in London.  And I'd like to take

16   that application to employ first please, which is 1496.

17           MR. DESPINS:  Good morning, Your Honor.  Luc

18   Despins, Chapter 11 Trustee.

19           We filed this application to retain the Pallas

20   firm as our solicitors.  As you recall, that we had

21   disclosed, this is at the beginning of the case, that Paul

22   Hastings represented certain UBS entities and we had, you

23   know, indicated that the firm would not be involved.  I was

24   able to (indiscernible) to UBS, but the firm would not be

25   involved in the UBS matters.

1        And that issue was also raised in the U.K.

2  proceedings by Ace Decade and others.  And we confirmed to

3  the court in the U.K. that only I would be receiving

4  information regarding UBS and would be retaining a separate

5  solicitor firm to handle the UBS matters.  And so that's how

6  we're before the Court on the retention of the Pallas firm

7  to be our solicitor counsel with respect to UBS matters in

8  the U.K., Your Honor.

9        I don't know if Your Honor has specific questions.

10        THE COURT:  I do not have any questions at the

11  moment other than once the solicitor is retained, if no one

12  opposes it, and I think the United States Trustee's Office

13  has filed a statement of no objection, what are the next

14  steps in the litigation in England?

15        MR. DESPINS:  So as I mentioned at the last

16  hearing, UBS was unsuccessful in its attempt in the Court of

17  Appeals to get the jurisdictional decision reversed, so now

18  it goes back to the lower court, the trial court, and we

19  believe that UBS has three months from the date of service

20  of that Court of Appeals order, which just happened

21  yesterday or the day before, to file a defense to the claim,

22  so that's the next step.

23        Obviously, there are issues, as I mentioned, with

24  respect to costs and in the sense that in the U.K. if you're

25  not successful in the litigation, your costs would be

1    awarded against the party that's not successful.  And UBS is

2    raising that issue vis-a-vis the Trustee and also vis-a-vis

3    Ace Decade, and those issues are percolating now.

4         So these are not public filings but they're

5    hanging in the background.  Basically UBS's position is that

6    it needs to be protected in the event it prevails for the

7    fees and expenses incurred in its defense.

8         So that's the -- so the next steps is not for

9    several months, Your Honor, but there's a lot of activity in

10   the background with respect to these issues that I just

11   described.

12         THE COURT:  Okay.  Thank you for that update.  I

13   appreciate that.

14         Attorney Claiborn?

15         MS. CLAIBORN:  Thank you, Your Honor.

16         I filed a statement of no objection which is at

17   ECF 1542.

18         THE COURT:  Yes.  Thank you.  I've seen that

19   statement of no objection.

20         Does anyone else wish to be heard on the

21   application of the Trustee to retain and employ Pallas as

22   solicitors in the United Kingdom?

23      (No response.)

24         THE COURT:  All right.  Hearing nothing, then, no

25   one has filed any written objection to the application and

1    there is no one participating in this hearing today that is

2    objecting to the application.  I understand the reasons why

3    the Trustee is seeking to retain the solicitors in the

4    United Kingdom.  So for all those reasons, the application

5    is granted.

6            Trustee Despins, I'm going to make very minor

7    changes to the proposed order, and they're not substantive

8    in any way, in my opinion, the second page of the order.

9            I think it's probably because the Southern

10   District of New York has amended its standing order of

11   reference, but the United States District Court for the

12   District of Connecticut has not, so it's still -- the order

13   of reference is still the order from 1984 signed by Judge

14   Daly who was the District Court Judge at the time, Chief

15   District Court Judge at the time, so I'm going to remove the

16   words as amended at the top, the fourth line on page 2 of

17   the order.

18           And then before it is hereby ordered language, all

19   I'm going to say is -- after a hearing held on -- just take

20   out the after due deliberation and sufficient cause, we've

21   already found all that above.

22           So just change that, those minor changes and then

23   the order will enter unless you have any concerns about what

24   I just said.

25           MR. DESPINS:  Not at all, Your Honor.  Thank you.

1      THE COURT:  Okay.  All right.  Thank you.

2          So the application is granted and the order will

3  enter with minor changes noted on the record.  Okay?  I

4  assume that will be later today or tomorrow at the latest.

5          And I agree that your application was filed under

6  our local rules within the time -- within 30 days of when

7  the solicitor started rendering services, so that their

8  services will be effective as of January 26th, 2023.  Okay?

9      MR. DESPINS:  Thank you, Your Honor.

10     THE COURT:  Okay.  Thank you.

11         Now, moving onto the other matters at 11:00, there

12 are, Attorney Freeth has filed a motion to quash a subpoena

13 directed to his individual client, which is ECF No. 1465,

14 and a motion to quash subpoena directed to the corporate

15 entity, which Attorney Freeth has described this morning as

16 the individual's LLC, which is 1541.  And each one of those

17 motions has an objection and cross-motion to compel filed by

18 the Trustee.

19         So, Attorney Freeth, to me, and you can -- you can

20 state if you think I'm incorrect, but I believe the

21 objections that you have in your motion to quash in both the

22 subpoena directed to the individual and the subpoena

23 directed to the corporation are substantially the same, is

24 that correct?

25     MR. FREETH:  Yes.

1        THE COURT:  Okay.

2        MR. FREETH:  That is correct, Your Honor.

3        THE COURT:  Okay.  And then I see, it seems to me

4    anyway, that there have been some discussions had between

5    the parties with regard to the subpoenas but, I believe,

6    unless something has occurred recently, that there's no

7    agreement with regard to these motions between the parties,

8    is that correct?

9        MR. FREETH:  At the moment, that's correct.

10       THE COURT:  Okay.  So you, Attorney Freeth, want

11   to quash the subpoenas because you believe that the Trustee

12   shouldn't have served them, he should have done more due

13   diligence and that they're broad, overly broad, is that

14   correct?

15       MR. FREETH:  Well, the first half, yes,

16   (indiscernible).  The second half are technical things as

17   far as CP -- it's cited in the motion.

18       But he's in Scottsdale, Arizona, Mr. Liu, and his

19   LLC is an Arizona LLC.  And the subpoenas that he received

20   directed him to appear and produce, and et cetera, in New

21   York, obviously, more than 100 miles from where he resides

22   or works, and so we have a technical issue that was the

23   other half of my arguments for the quash.

24       THE COURT:  Okay.  But I've read -- I think I've

25   read in the documents that were in response to the motion to

1    quash, that the Trustee has offered to travel to Arizona and

2    conduct the deposition in Arizona within 100 miles of where

3    your client, individual client, either lives or the business

4    -- the business address of the corporate client, isn't that

5    correct?

6              MR. FREETH:  That was brought up in our

7    discussions.  Again, we didn't have a conclusion to those

8    discussions.  We started talking and then the, well, the

9    filed a motion to (indiscernible).  The client gave the

10   message to me that, okay, well, I guess we're not

11   negotiating anything (indiscernible).

12             THE COURT:  I can't understand what you're saying.

13   Attorney Freeth, I can't understand what you're saying.

14             MR. FREETH:  I'm sorry.

15             THE COURT:  You just have to talk closer to the

16   microphone because I can't understand the words.  I

17   understood some of it, but I didn't understand all of it.

18             MR. FREETH:  I apologize.  I'm fighting a cold, so

19   I'm not exactly --

20             THE COURT:  Okay.  That may be.  Yeah.  That may

21   be the reason why it sounds funny.  Go ahead.

22             MR. FREETH:  I'll start from the beginning of what

23   I -- the last part that I just said.

24             We were in discussions to have some sort of

25   solutions like that, but to me that begged the question he's

1    the wrong person.  They named him because he happened to

2    choose Himalaya, which is the largest mountain chain in the

3    world, (indiscernible), so he gets dragged into

4    (indiscernible) and he has to spend his time dealing with a

5    thing that --

6            I volunteered to provide an affidavit.  I spent

7    time with him on the phone.  I went over every single

8    element of the subpoenas to confirm that what he's telling

9    me (indiscernible) case was correct, that he doesn't know

10   any of the parties, has no information, has no

11   documentation, doesn't even know 99 percent of the people,

12   I've vaguely heard of Mr. Kwok.  That's it.  And that was

13   where we left off.

14           But as I mentioned, when we were trying to talk of

15   some way to resolve things, they filed a motion to compel,

16   which to me communicated that they want to do things

17   forcefully.  So I guess there's nothing else for me to say

18   at this point other than hope that we can get to a

19   resolution with the motion to quash.

20           THE COURT:  Okay.  Well, you -- both sides have

21   ongoing obligations to meet and confer and act in good faith

22   with regard to discovery requests under the Federal Rules of

23   Civil Procedure.

24           You indicated, Attorney Freeth, that you offered

25   an affidavit, but I haven't seen any affidavit from your

1    client yet, have I?  I don't see anything in the record of

2    this case.

3            MR. FREETH:  No.  We drafted it already.  I can

4    have it submitted probably in 48 hours if he can sign it

5    before a notary out in Arizona.  I'm assuming he has access

6    to them somewhere in Scottsdale.  So it's already drafted.

7    We can probably turn it around maybe even in 24 hours.

8            THE COURT:  Have you shown that affidavit to Mr.

9    Despins or his counsel?

10           MR. FREETH:  No, we can -- no, I don't believe we

11   did.  So I can send that to him first for his approval.

12           THE COURT:  Well, it's not necessarily his

13   approval, but it's -- if yor clients -- see, first of all,

14   Attorney Freeth, in bankruptcy cases, Rule 2004 discovery is

15   broad and it's akin to a fishing exposition -- expedition.

16   There's a number of cases that say that.

17           It is broader than a subpoena in a specific

18   lawsuit or adversary proceeding because in certain cases,

19   like the case that is before this court now, the Trustee's

20   charged with investigating the affairs of the debtor in

21   order to determine whether or not there are assets available

22   to pay the claims of creditors.

23           MR. FREETH:  Of course.

24           THE COURT:  So while you're -- while you may -- I

25   think you -- I know you've argued that the subpoenas are

1    broad.  That's not necessarily a basis to quash a subpoena

2    in connection with a Rule 2004 examination, number one.

3            Number two, I have read in the papers that the

4    Trustee and his counsel are willing to come to Arizona to

5    conduct the deposition and to obtain document.

6            So I'm not sure what -- why that -- you continue

7    to raise the objection about it being outside of New York,

8    because they've already said they're going to come to

9    Arizona to do that.  So I don't see that that's a

10   sustainable objection or basis to grant your motion to

11   quash.

12           So the two bases upon which you've asserted in

13   your motion that the subpoenas should be quashed that the

14   discovery is overly broad and the Trustee hasn't done

15   anything that he needs to do for due diligence is not a --

16   is not a basis upon which this court would grant a motion to

17   quash a Rule 2004 subpoena.

18           And your other basis for outside of -- 100 miles

19   outside of Arizona, the Trustee has stated in pleadings in

20   this case that he will go to Arizona.  So that's another --

21   that basis to grant a motion to quash is also not

22   sustainable at this point.

23           So what other arguments do you have that would --

24   that you would like the Court to consider in your assertion

25   that the subpoenas should be quashed?

1          MR. FREETH:  Well, to be specific, the subpoena

2     says -- it doesn't say anything about going to Arizona.

3     It's only what he said after a reasonable --

4          THE COURT:  I understand it doesn't say.  We're

5     beyond the subpoena now.  We're at the motion to quash stage

6     and the response, right?  And the response says that they're

7     going to go to Arizona.  So I'm not going to make your

8     clients come to New York.  That's fine.

9          MR. FREETH:  Okay.

10         THE COURT:  But they've already -- they've already

11    conceded one of your arguments in your motion to quash,

12    which is, okay, then we'll go to Arizona.  So that's taken

13    care of.

14         MR. FREETH:  Okay.

15         THE COURT:  So what's --

16         MR. FREETH:  I believe that -- I believe that my

17    client would do as, you know, instructed if this is what the

18    order of the Court is, that he -- if someone on behalf of

19    the Trustee goes there and does what they want to do there.

20    I believe he's amenable.

21         My personal objection is that it's a waste of his

22    time.  It's not fair to him.  But if you're going to order

23    that, even though he clearly (indiscernible), you don't have

24    to take my word for it, or his word for it, I understand,

25    but I do think it's practically speaking a waste of the

1    Trustee's time and my client's time.  But, sure.

2            THE COURT:  Well, maybe the Trustee would agree

3    with you if you provided him with an affidavit that is

4    signed by your client individually and your client on behalf

5    of the corporation.  I don't know.

6            But he hasn't been provided with that yet, so he

7    doesn't have anything to work with other than what he had

8    originally which was a right to conduct a Rule 2004

9    examination and subpoena the individual client and the

10   corporate client.  So it's possible that if you provide him

11   that with information.  I have no idea.

12           But with regard to your motions to quash and the

13   bases set forth in your motions to quash, the Court finds

14   that your argument about the 100-mile issue, which is a

15   valid argument, is moot because the Trustee is going to go

16   to Arizona.  That's what he said.  So he's already conceded

17   that part of your argument.

18           MR. FREETH:  Okay.

19           THE COURT:  The argument with regard to the

20   broadness of the subpoena, again, under Rule 2004, that's

21   what is allowed under the bankruptcy rules.

22           And I'm not suggesting that you would necessarily

23   understand that unless you practiced in the Bankruptcy

24   Court, but that is a well-known -- a well-known and well-

25   settled principle of discovery under Rule 2004 of the

1   bankruptcy rules.

2           And that has been cited across the country in

3   almost every jurisdiction as a broader discovery than would

4   be allowed under the discovery rules in a specific adversary

5   proceeding or civil cause of action.

6           MR. FREETH:  I understand that, Your Honor.

7           THE COURT:  So how would you like to proceed,

8   Attorney Freeth?  Are you going to -- how would you like to

9   proceed?

10           MR. FREETH:  I can provide to counsel for the

11   Trustee our draft or proposed affidavit for our client to

12   sign time.  And if they find it acceptable or some versions

13   thereof acceptable, then we could resolve it that way

14   quickly.

15           Barring that, then my client, I believe, would

16   appear, if he was instructed to by counsel.  So if need be,

17   then we can do it that way.

18           But I'd like to be able to save everybody time.

19   So maybe if I can have a window, at least maybe a day, where

20   I can provide them.  Like I said, this is rough.

21           As soon as I'm off the phone to the counsel for

22   the Trustee I'll draft a subpoena -- I'm sorry, affidavit.

23   And if they find it acceptable, we can have it signed within

24   a day or two.

25           THE COURT:  Trustee Despins or Attorney Bassett?

1          MR. BASSETT:  Yeah.  Your Honor, Nick Bassett,

2     from Paul Hastings, on behalf of the Trustee.  I'll be

3     addressing this matter this morning.

4          So just -- just a couple of remarks, and I'll

5     respond specifically to the proposal regarding the affidavit

6     in a moment.

7          And I do feel compelled to raise this because in

8     the papers, Your Honor, there were accusations that the

9     Trustee and/or his counsel had failed to act with

10    professionalism in pursuing the subpoena.  I think that's

11    paragraph 2 of the motion to quash.

12         Obviously, we take exception to that.  And I can

13    assure the Court that the Trustee did have a good-faith

14    basis for pursuing the subpoena.

15         As the Court is aware, as it has come up in the

16    past hearings on numerous occasions, you know, we've told

17    the Court that the Trustee has a number of people who have

18    provided information concerning the debtor and his

19    organization, and that it is including the Himalaya entities

20    with which the Court is very familiar from the PI hearing

21    and otherwise.

22         We filed this particular 2004 motion in I believe

23    it was December of 2022.  Prior to that, in mid-November of

24    2022, we received a tip or an email from one of the people

25    who often provides us with information identifying some of

1    the quote/unquote, "Himalaya foreign entities."

2              One of the entities in that email was Himalaya New

3    World, Inc., which the Court may remember was the entity

4    owned by a witness who testified in support of the debtor at

5    his PI hearing.  That tip obviously turned out to be correct

6    as that witness confirmed on the stand.

7              Another entity, an individual, named in that

8    correspondence was the recipient of this 2004 subpoena, Mr.

9    Freeth's client, and the entity that he controls.  So that

10   was the basis for serving it at that time.

11             Your Honor, since then, you know, we've done

12   further diligence.

13             And just to point out a couple of things in the

14   papers, Attorney Freeth said that his client is, you know,

15   working as a delivery person at approximately $3,000 a

16   month.  That's his job. What we've come to understand, is in

17   addition to this LLC in which we've received no explanation

18   as to what type of business it's engaged in if it's not

19   related to the debtor or his group of companies.

20             In addition to that, Mr. Liu, the target of the

21   subpoena, is the co-trustee of another entity called the

22   Himalaya Revocable Trust.  This is all from public property

23   records in Arizona.  That entity in turn owns at least five,

24   maybe six, different real properties which appear to have a

25   value of at least two to $3 million.

1          And, you know, look, it could be -- it could be a

2     coincidence.  You know, these entities may have nothing to

3     do the debtor.  In this case, it could have been wrong.

4          So as we told Mr. Freeth that we are willing to

5     entertain an affidavit.  We have no incentive to put anyone

6     through unnecessary burdens in responding to a subpoena if

7     they actually have no relevant information.

8          In fact, I think the correspondence between us

9     sort of left off on March 10th where Attorney Linsey had

10    told Attorney Freeth that if he wanted to send an affidavit,

11    we would consider that.  And we stand by that.  And we will

12    consider whatever he would want to send.

13         The only thing I would note is that, you know,

14    that affidavit, for it to be acceptable to the Trustee,

15    cannot simply say, you know, I know nothing and my Himalaya

16    entities have nothing to do with the debtor.

17         You know, given the circumstances, we're obviously

18    going to require some explanation as to, you know, what do

19    these entities actually do then.  You know, how did he come

20    to acquire these properties, things of that nature, to help

21    us reconcile the assertion with sort of the facts that we've

22    come to understand.

23         The last thing I would note that is a connection

24    that I think would need to be addressed is that Attorney

25    Freeth happens to be the attorney who is counsel for a group

1    of plaintiffs who filed a FARA action against Paul Hastings

2    asserting that Paul Hastings and Trustee Despins are somehow

3    acting at the behest -- acting at the behest of the Chinese

4    Communist Party, et cetera.

5            So, again, maybe that's a coincidence, but I think

6    the affidavit needs to address how this individual came to

7    be represented by Attorney Freeth.

8            So these are the types of the details that we're

9    going to need to have addressed for us to get comfortable

10   that there's nothing further to explore here.

11           The last thing I'd note is that we, as the Court

12   recognized, you know, we would come to Arizona.  We also had

13   proposed to make it easier for everybody to do the

14   deposition, if there is one, remotely.  And obviously the

15   documents, as is customary, could be provided electronically

16   to resolve any concern about that as well.

17           So with that, Your Honor, that's all I have to

18   say.  I don't think it's a basis to quash the subpoena.

19           But the Trustee will be reasonable in continuing

20   to work with Mr. Freeth and his client to see if there's a

21   way to resolve this without imposing an unnecessary, undue

22   burden on anyone.

23           THE COURT:  Attorney Freeth?

24           MR. FREETH:  Your Honor, might I be heard?

25           Oh, thank you.

1          THE COURT:  Attorney Freeth, any response?

2          MR. FREETH:  The latter part of Mr. Bassett's

3     comments about other businesses or LLC's, I have no

4     knowledge about.

5          So it may be that -- maybe it would behoove

6     everyone for them to do this in person because they have the

7     information that I spoke with Mr. Liu.  According to him,

8     you know, he's a simple guy.  He only has this one business

9     entity that he created to try to do a real estate project

10    that never even got off the ground.

11         This other information is new to me.  I don't

12    know.  I don't know any of this.  So if he's involved with

13    other businesses, then maybe the ability to resolve this by

14    an affidavit is wishful thinking.

15         And I do object to their deposing other matters

16    not relevant to this pending matter.  I don't think -- I

17    don't think it's relevant at all as far as my relationship

18    with a particular client.  I'm not going to get into that.

19         So that's all I have to say.

20         THE COURT:  Okay.

21         MR. FREETH:  I'm willing to try to --

22         THE COURT:  So what I need to know, Attorney

23    Freeth, are you withdrawing these motions to quash then

24    because you're going -- because you're acknowledging that

25    the Trustee's going to examine your clients and require

1    documents?

2              MR. FREETH:  No.  If they're going to withdraw the

3    motions to compel, I'll withdraw the motion to quash, and

4    we'll operate under the -- under the subpoenas as they are

5    and just have them done, executed in Arizona by agreement.

6              THE COURT:  Attorney Bassett?

7              MR. BASSETT:  I'm sorry, Your Honor.  I missed the

8    question that was directed to me.

9              THE COURT:  What I'm asking is, given what we

10   just discussed this morning, I asked Attorney Freeth is he

11   was going to withdraw the motions to quash the subpoenas,

12   because he's just said that even though he may give an

13   affidavit it may not be enough.  And that as long as you're

14   going to come to Arizona and conduct these depositions in

15   person that you should proceed with the subpoenas as issued

16   and that you'll --

17             What Attorney Freeth didn't say, but I would

18   order, is that the parties confer on a date and time for

19   these depositions to -- these Rule 2004 examinations to

20   occur.

21             Then he asked in response, and he said, I asked if

22   he was, Attorney Freeth, if he was going to withdraw the

23   motions to quash and he said he would do so if you withdrew

24   your objection and your cross-motion to compel.

25             MR. BASSETT:  If the result, Your Honor, is that

1    Mr. Freeth's clients are going to comply with the subpoenas,

2    then, of course, we would withdraw the motion to compel.

3    And his withdrawal of the motion to quash obviously would be

4    acceptable as well.

5            THE COURT:  Okay.  So then what we're going to do

6    is, ECF 1465, the motion to quash the subpoena is withdrawn

7    on the record for the reasons stated on the record.

8            And the objection and cross-motion to compel is

9    withdrawn as well on the record for the reasons stated on

10   the record.

11           And the same will be true with regard to the

12   motion to quash that was filed on behalf of the corporate

13   entity and the objection to that motion and the motion to --

14   the cross-motion to compel.

15           And what the parties need to do now is you need to

16   get together and agree on dates for compliance with the

17   subpoena, including the date by which the documents will be

18   produced and that are responsive to the subpoena and the

19   date on which the examinations will be held.  Okay?

20           MR. FREETH:  I've got it.  Yes.

21           THE COURT:  All right.

22           MR. BASSETT:  Thank you, Your Honor.

23           THE COURT:  Anything further with regard to the

24   discovery matters?

25           (No response.)

1          THE COURT:  Okay.  Thank you.

2          Attorney Freeth, we have another matter on the

3   calendar at 11:30 that does not involve you.  You're welcome

4   to stay, but you do not have to stay.  That's your choice.

5          MR. FREETH:  Appreciate it, Your Honor.  Thank

6   you, very much.

7          THE COURT:  Okay.  Thank you.

8          MR. FREETH:  Thank you.

9          THE COURT:  All right.  Then on the calendar at

10  11:30, the Court set a hearing this morning on the motion to

11  extend time to respond to a preliminary injunction order

12  filed on behalf of Mei Guo and HK International Fund

13  Investments and required Attorney Romney and Attorney Vartan

14  to -- and/or, but it appears they're both here, so I would

15  need you both to note your appearances for the record,

16  please.

17         MR. ROMNEY:  Thank you.

18         Aaron Romney, Zeisler & Zeisler, on behalf of Mei

19  Guo and HKI Investments.

20         MR. VARTAN: Good morning, Your Honor.  Lee Vartan

21  on behalf of the same parties.

22         THE COURT:  Good morning.

23         All right.  I set this hearing because the motion

24  to extend the time that you filed at, you know, whatever

25  time it was, a little after 11:00, which was timely, didn't

1    provide at least the Court with the understanding of why you

2    needed additional time until March 27.

3          The information that was to be provided was Ms.

4    Guo's individual address and the landowner of the building

5    or apartment she lives which you agreed to provide and it

6    would be deemed highly confidential in connection with the

7    protective order that's been in place in the main case

8    since, you know, I don't have the date in front of me, but

9    it's August at the -- for months, for lack of a better term.

10         So why do you need additional time to provide that

11   information to the Trustee that you agreed, during the

12   hearing on March 15th that we had, that you would provide to

13   the Trustee and designate that as highly confidential in

14   connection or in accordance with the provisions of the

15   protective order.

16         MR. VARTAN:  Your Honor, I can clarify that.

17         So we were required under the Court's order to

18   provide the information that Your Honor just put on the

19   record by Friday, March 17th, which we did do.  We did

20   provide that information to Mr. Bassett and to Mr. Luft.

21         The information that was required to be provided

22   by yesterday, we did bring information.  It was under -- the

23   information was to be provided under I believe subparagraph

24   (d) of the preliminary injunction order, which I think is

25   Docket Entry 142.

1          THE COURT:  Okay.  And what information is that?

2          MR. VARTAN:  That information had to do with any

3     and all property that was owned or controlled by HK USA or

4     Ms. Guo, individually.  And the property was not defined

5     anywhere in the order, but that was really not the reason,

6     of course, for seeking additional time as we put forward in

7     our submission from last night.

8          Ms. Guo is in the process of looking to obtain

9     criminal counsel to advise her on all that's going on.  And

10    some of this, of course, Your Honor is well familiar with

11    based upon our last appearance on March 15th.

12         She's not yet retained criminal counsel and she

13    needs criminal counsel to consult with Mr. Romney and with

14    me about how she's going to proceed with respect to the

15    obligations under the preliminary injunction order.

16         Then I believe, Your Honor, there's a PJR order

17    within 30 days of entry of that order, which I believe was

18    March 17th, Ms. Guo is required to sit for a deposition.

19    And, again, she would want to consult with criminal counsel

20    before she does though.  That's not time sensitive in the

21    same way the corporate March 22nd obligation was.

22         THE COURT:  All right.  Let's go back.  Because

23    the preliminary injunction order, you're saying she had to

24    produce what in connection?

25         First of all, it's at HK, but, what paragraph are

1    you saying that she needed to provide information and she

2    has not yet?  What is the -- I don't see what you're talking

3    about.  Are you sure you're not talking about the

4    prejudgment remedy order, the motion for disclosure of

5    assets, that's part of that order?

6              MR. DESPINS:  Your Honor, this is Trustee Despins

7    here.

8              It's subparagraph (d) of the preliminary

9    injunction order.  The counter defendant shall identify to

10   the Trustee and to the Court within five days of entry of

11   this order, so last Friday --

12             THE COURT:  Oh, (d), (d), okay.

13             MR. DESPINS:  -- any other property in which they

14   hold an interest.  And counter defendant shall not transfer,

15   encumber, remove or dispose, et cetera, et cetera, of such

16   property.

17             THE COURT:  Okay.  So subparagraph (d) of page --

18   okay.  I see.  I couldn't -- I didn't understand that's what

19   Mr. Vartan said.

20             All right.  So, Mr. Vartan, as we discussed last

21   week, neither HK or Mei Guo are under indictment, so what --

22   what is -- you know, I mean, getting criminal -- you agreed

23   to -- you consented and agreed to the entry of this order.

24             And there's no -- unless you're showing me there's

25   some indictment that issued in the last two or three days

1  against Mei Guo or HK International, then I don't understand

2  the need for additional time.

3          MR. VARTAN:  Your Honor, there is no new

4  indictment.

5          But what we had put on the record on the 15th, and

6  will again put on the record here is that Ms. Guo is at

7  least named glancingly in the indictment as relative one or

8  relative two.  I think Your Honor is aware that she is named

9  as a relief defendant in the SEC complaint.

10         Since we were before Your Honor, I learned that

11 there was a companion complaint, not an indictment, that was

12 issued out of the Southern District of New York.

13         We know of no charges against Ms. Guo.  We know of

14 no imminent charges against Ms. Guo.  There may never be

15 charges.  But the point is that we're operating five days

16 into all of this.  There's a lot going on, as I know Your

17 Honor knows.

18         And Ms. Guo, as do Mr. Romney and I, feel it's

19 prudent for her to consult with criminal counsel before

20 making further representations given that there is

21 effectively complete overlap, as I understand it, between

22 what's happening in this court in the adversary proceeding

23 and what has been itemized or described in the indictment

24 and the SEC complaint.

25         So we understand, of course, what the order says.

1   We did not want to ignore the obligation in the order which

2   is why she is seeking criminal counsel to consult with her.

3   We would ask for a brief adjournment or continuance for us

4   to meet or address that obligation.  I think Monday is not

5   so significant, and ask -- given the fact that the

6   indictment was just handed down on March 15th.

7           THE COURT:  Trustee Despins or Mr. Bassett, what's

8   your position regarding the requested extension of time?

9           MR. BASSETT:  Sure.  I'm happy to address that,

10  Your Honor.  Again, Nick Bassett, from Paul Hastings, on

11  behalf of the Trustee.

12          You know, our position is I think consistent with

13  some of the remarks the Court made insofar as, you know,

14  this order was consented to and it contained the deadline

15  that it contains at the time of that consent.

16          It was then submitted to the Court, again,

17  contained that language and there was no response or

18  objection to the deadline at that time.  So it seems to us

19  that, you know, there's really no basis for this request at

20  this time.

21          All that being said, you know, they are requesting

22  in this instance, which, you know, by comparison is a

23  relatively modest extension as compared to other requests

24  that have been made, so I think the Trustee is prepared to

25  not oppose an extension to Monday, which is next Monday,

1    March 27th, to provide this information subject to, you

2    know, a couple of I would say caveats or conditions, the

3    first of which is the Trustee expects and would respectfully

4    request that the Court order that there be no further

5    extension beyond next Monday.

6         Obviously, we don't want to be in a position where

7    this is just the first request and then Monday comes around

8    and we find out they need more time.  In that circumstance,

9    the Trustee would certainly have an issue.

10        The other point that I would make is -- and we've

11   already been down the road of the debtor at least in this

12   case asserting that he can't provide any information at all

13   to the Trustee on account of the Fifth Amendment, and his

14   Act of Production Doctrine privilege that he's asserted,

15   which as the Court is aware from the hearing we had earlier

16   this week, the debtor made that assertion over a month ago,

17   before any criminal charges were announced.

18        So the reason I bring that up is because we also

19   don't really want to be in a position where we find out on

20   Monday that Ms. Guo and HK are somehow saying they can't

21   produce anything, give us any information, on that same

22   basis.

23        You know, any opposition by the Trustee to this

24   request of extension is with the understanding and

25   expectation that actual information concerning assets in

1   accordance with the order will be provided on Monday.

2          So with that, and, again, just to reiterate as we

3   have over the last couple of hearings, that the Trustee

4   cannot emphasize enough how he does not want to have the

5   criminal charges pending against the debtor to be used

6   continually for further delay.

7          With all the sort of, you know, reservations, if

8   you will, in this instance, given the relatively limited

9   nature of the request for an extension, we would not have an

10  opposition to the extension until Monday being granted.

11         THE COURT:  Okay.  Thank you.

12         Attorney Vartan or Attorney Romney, any response

13  to Attorney Bassett?

14         MR. VARTAN:  I just have two quick responses, Your

15  Honor.

16         Certainly we're not going to seek additional time.

17  As we've represented to the Court, Ms. Guo is actively

18  seeking criminal representation and so that will be secured

19  well before Monday, and that attorney, he or she, will be on

20  board and able to appropriately advise Ms. Guo.

21         Certainly with respect to what that advice is, I

22  don't think either Attorney Romney or I are in a position to

23  prejudge what criminal counsel is going to tell her.  I

24  don't think I'm prepared, nor could I be to say that the

25  advice is going to be to produce documents or not produce

1   documents.  That's the whole point of her consulting with

2   criminal counsel in the first place.

3           THE COURT:  So what are you going to do then on

4   Monday, Attorney Vartan?  How are you going to comply with

5   paragraph (d) --

6           MR. VARTAN:  D like door, Your Honor.

7           THE COURT:  Yes.  On page -- how are you going to

8   comply with that then?  You're not -- the criminal lawyer

9   isn't coming into this court and representing her.  You are.

10  So how are you going to comply with that?

11          MR. VARTAN:  I wouldn't be in a position to tell

12  the Court that at this point because we haven't consulted

13  with our client, nor is criminal counsel on board.  So at

14  this point, it would be premature for me to say what will

15  happen on Monday because there is no criminal attorney

16  presently representing Ms. Guo.

17          THE COURT:  That's not my question.  My question

18  is how are you going -- Attorney Vartan, you have to figure

19  out what the eventualities are, right?  What are the

20  possibilities?

21          The possibilities are you either give the Trustee

22  an entire list of information that is responsive to (d) or

23  you don't.  And if you don't, that's -- you're going to say

24  because that's on the advice of her criminal counsel?

25          MR. VARTAN:  Again, I can't predict the future --

1        THE COURT:  Well, yes, you can.

2        MR. VARTAN:  Your Honor is correct.

3        THE COURT:  Because you're her lawyer in this

4    courtroom you, can predict the future.  You are saying that

5    you need an extension of time to -- because she has to

6    consult with a criminal lawyer.  Okay.  And you've said that

7    you need that extension of time because you don't -- because

8    the criminal lawyer may have to provide her with advice

9    about criminal matters.  This isn't a criminal matter.  This

10   is a civil action --

11       MR. VARTAN:  But I --

12       THE COURT:  -- in the Bankruptcy Court in which

13   you, as her lawyer, consented to the entry of a preliminary

14   injunction.

15       So, yes, you can predict what's going to happen.

16   You're either going to comply or you're not.  So I want to

17   know how you're not going to comply.  What are you going to

18   say?  And the lawyer -- you're her lawyer here, Counsel.

19   Remember, you're her lawyer.

20       MR. VARTAN:  Understood.  Understood.  But all I'm

21   saying is, in complying, and we certainly do not waive her

22   Constitutional right, nor could we.

23       So to the extent that providing certain

24   information is going to potentially incriminate her, and

25   that's the purpose of consulting with a criminal counsel, we

1    may take the position that we're not able to provide some or

2    all of the information required.

3              THE COURT:  All right.  Well, if you do that --

4              MR. VARTAN:  But I don't know that at this point.

5              THE COURT:  -- then you're going to have to

6    support that with law.  You're not -- I'm not going -- it's

7    not going to be acceptable compliance for you to say on the

8    advice of her criminal counsel we are not going -- she's not

9    going to comply.  That's not compliance.

10             And you have obligations, as a lawyer in this

11   court, subject to discovery and other rules that are

12   applicable in this case, and the preliminary injunction

13   order that you consented to the entry of, your compliance is

14   going to have to establish a legal basis why she would not -

15   - she and HK would not comply with (d) in the preliminary

16   injunction order.

17             So, for example, with regard to Mr. Kwok, he

18   asserted his Fifth Amendment privilege on February 7th, but

19   he didn't say -- he didn't submit any bases legally to

20   support why that was applicable to the civil matter that was

21   pending in front of him at that time when there was not any

22   criminal matter pending against him in that time.  And,

23   therefore, those issues are to be briefed and heard.  And

24             I'm telling you right now I'm not setting a new

25   briefing schedule with regard to this.  You consented to the

1    entry of the preliminary injunction.  So if you fail to

2    comply, if your attempt at compliance is we've been told by

3    her criminal counsel, whoever that might be, by the way,

4    which you're going to have to disclose, and you're going to

5    have to have an affidavit of that criminal counsel that says

6    I advised my client, or clients, not to respond to the

7    preliminary injunction order, paragraph (d), that they

8    consented to because it exposes them to criminal liability.

9          So you're going to have to do that and you're

10   going to have to have an affidavit of that counsel and

11   you're going to have to have law that supports that claim.

12   Without that, you will not be in compliance with the

13   preliminary injunction order.  And then you'll be -- they'll

14   be subject to further and appropriate relief which could

15   include additional sanctions.

16         So I want to be very clear that by coming in and

17   saying, well, she needs to get a criminal lawyer so we don't

18   know what's going to happen, that's not accurate.  You do

19   know what's going to happen.  You're either going to comply

20   or you're not going to comply.

21         And let's assume that you're not going to comply

22   because you're going to be -- because you're going to say

23   that you were told by criminal counsel that it could

24   implicate her criminally.

25         Well, again, you're going to have to disclose that

1    criminal counsel, that criminal counsel's going to have to

2    file an affidavit in this court that says that's the advice

3    that was provided and that it was -- and it's a proper

4    assertion of whatever that advice is sustained by law.

5            If those things don't happen, then your clients,

6    HK and Ms. Guo, will be in -- will be -- will have violated

7    an order which seeks relief to which they consented to.

8            Do you have any questions about that?

9            MR. VARTAN:  No.  No, Your Honor.  But, you know,

10   I guess I would say two things.

11           Again, at no point in any of this has Ms. Guo, nor

12   could we, or could she waive her Fifth Amendment rights.

13   And the whole -- this is not, you know, done against the

14   backdrop of speculation or done against the backdrop of the

15   potentiality of criminal charges.  There are live criminal

16   charges that were brought --

17           THE COURT:  Not against your clients, Mr. Vartan.

18           MR. VARTAN:  There's --

19           THE COURT:  Not against your clients.

20           MR. VARTAN:  There's a live SEC complaint where my

21   client is named as a relief defendant.  And whether she

22   makes --

23           THE COURT:  That's not a criminal action, is it?

24   Is that a criminal action or a civil action?

25           MR. VARTAN:  There need not be a criminal action

1  pending in order to rightly invoke your Fifth Amendment

2  rights.  This is black letter law.

3          THE COURT:  So show me the -- it's not black

4  letter law.  But you're going to have cite the law --

5          MR. VARTAN:  It is.

6          THE COURT:  -- that supports your assertion, Mr.

7  Vartan.  That's what you're going to have to do.  I think

8  I've been very clear about that.

9          MR. VARTAN:  And there's no issue in doing that

10 because, again, there need not be a pending criminal matter

11 in order for someone to invoke their Fifth Amendment rights.

12 That is black letter law.

13         THE COURT:  Okay.  We'll see.  I'd like to see it

14 in black and white, Mr. Vartan.  You can show me in your --

15         MR. VARTAN:  I will provide that, Your Honor.

16         THE COURT:  Because it's -- it appears likely then

17 what we're going to find on Monday is that you're not going

18 to comply with this order.

19         MR. VARTAN:  That's not -- that's not to keep --

20 again, the whole point of what we put forward to the Court

21 was to say that we want to consult with competent criminal

22 counsel.  That that is her right.  It makes perfect sense to

23 want to do that here given an indictment and an SEC

24 complaint and another complaint.

25         We don't know what the U.S. Attorney's Office is

1    thinking about, contemplating or doing. So I can't tell you

2    what criminal counsel is going to tell us and, therefore,

3    we're going to be representing to the Court or the Trustee.

4    What I will say is --

5              THE COURT:  What other complaint are you talking

6    about?

7              MR. VARTAN:  That there's a complaint, or there's

8    a criminal complaint, against Yvette Wang --

9              THE COURT:  Okay.

10              MR. VARTAN:  -- that was also filed.

11              So at the end of the day, Your Honor, very simply,

12    we don't know what is in the mind of the U.S. Attorney for

13    the Southern District of New York.

14              We do know that whatever is happening in this

15    proceeding is very likely overlapping with what is

16    enumerated in the indictment and so it's perfectly

17    reasonable for Mei Guo to want to consult with criminal

18    counsel.  And I can't prejudge what criminal counsel is

19    going to tell her.

20              THE COURT:  Well, yes, you can, because you told

21    me you're a criminal defense lawyer.  You can prejudge.  You

22    can have a very good idea of what criminal counsel's going

23    to tell her.  You've made it clear to the Court that that's

24    what your area of expertise is.

25              MR. VARTAN:  But I'm not, as Your Honor made

1   clear, I'm not here as her criminal attorney.  I'm here as

2   her civil attorney in the adversary proceeding.

3            THE COURT:  Yeah.  But you just said you can't

4   begin to predict.  I disagree with you.  I think you can

5   predict.  You can predict what the advice may be.

6            MR. VARTAN:  Maybe better stated --

7            THE COURT:  So I just want to be clear for the

8   record, Mr. Vartan, you've got to be careful about what you

9   say.

10           Because when you say you can't possibly begin to

11  predict what criminal counsel will say, I don't think that's

12  -- that is not persuasive to the Court when you've made it

13  clear to the Court on many occasions that you're a criminal

14  defense lawyer.  So I just don't -- so I think we just stop

15  that conversation right now, Mr. Vartan.

16           Now, the only other thing I'm going to say to you

17  and Mr. Romney is that I want to be very clear on the record

18  about your motion for extension of time, because in your

19  motion for extension of time, in paragraph 6, at ECF 154,

20  you say thereafter HK USA and Ms. Guo consented to the

21  entry, for the time being, of a prejudgement attachment

22  order and preliminary injunction.  That statement for the

23  time being is inaccurate.  And if you don't strike that from

24  the pleading, then I will.

25           Because I -- we can go back and listen to the

1    hearing.  You consented to the entry of the orders clearly

2    and you said -- and I said and you can have whatever

3    applicable non-bankruptcy law rights that you have that

4    exist, that existed before you consented and existed after

5    you consented, which is you can move to dissolve the

6    prejudgment remedy or set aside the preliminary injunction,

7    but it is not for the time being.

8              And if I see that again in any pleading that you

9    sign under Rule 11, then you will be sanctioned.  You'll be

10   further sanctioned.

11             So are you agreeing on the record that the words

12   for the time being can be stricken?

13             MR. ROMNEY:  Your Honor, Aaron Romney, Zeisler &

14   Zeisler.  I signed this pleading.  No, I'm not.

15             THE COURT:  So did Mr. Vartan, Mr. Romney.  So did

16   Mr. Vartan.  You both did.  So go ahead.

17             MR. ROMNEY:  When I said for the time being in the

18   pleading that I signed, I was referring to Your Honor's

19   comment on the record consistent with Connecticut law that

20   we have the right to seek to modify or discharge the PJR.

21   That was my intention --

22             THE COURT:  But that doesn't mean you don't

23   consent, Mr. Romney.  That doesn't mean you didn't consent.

24   You'd have to have a basis.

25             MR. ROMNEY:  I didn't say that I didn't consent.

1    I'm sorry if --

2              THE COURT:  Okay.  Well, for the time being

3    implies that.

4              MR. ROMNEY:  I apologize if that's the way that

5    those words were interpreted.  But the intention behind

6    those words when I signed this pleading in good faith was

7    referring to our rights to seek to modify based on future

8    events, Your Honor.

9              THE COURT:  Okay.  That's fair.  Then I appreciate

10   you've made that clarification on the record.  Thank you.

11             MR. ROMNEY:  Thank you, Your Honor.

12             THE COURT:  Okay.  All right.

13             Then with regard to the motion for extension of

14   time, the motion for extension of time will be granted

15   through March 27th for the reasons stated on the record.

16   There will be no further extensions, not only because the

17   Chapter 11 Trustee's counsel has asked for that, but because

18   Attorney Vartan has stated on the record that he will not

19   seek any additional time, and that criminal counsel will be

20   secured well before Monday.

21             That's what Attorney Vartan's representations to

22   the Court have been on the record.  So an order will enter

23   to that extent probably later today.

24             Now, with regard to other matters that -- whether

25   or not Attorney Romney or Attorney Vartan or anybody else

1    wants to continue to participate in this hearing, you're

2    welcome to, but you don't have to.

3            I asked the Trustee to consider some issues with

4    regard to Epiq during our hearings a few days ago and I

5    wanted to address that.

6            And I also wanted to address that we have an

7    application for compensation pending, which under the rules,

8    Rule 2002, requires notice to be provided to all creditors.

9            But we don't know who all creditors are at this

10   point, because of the Epiq issues and, so, therefore, I was

11   going to ask you, Trustee Despins, do you -- are you seeking

12   to have a hearing set on that application for compensation

13   in the next 30 to 45 days?

14           If you are, I don't know if we're going to have an

15   entire service list available because of the issues with

16   Epiq, as far as names that have been captured under both

17   public proofs of claim and confidential proofs of claim.

18   And it looks like there may be some duplication on a claim

19   that was filed here in the court and then sent to Epiq and

20   then Epiq may have entered it again.

21           So there's a lot of service issues, unfortunately,

22   that I think absolutely can be corrected and put in order,

23   but I don't know that that will be done in the next week or

24   two so I wanted to ask you about that as well.

25           MR. DESPINS:  Yes.  And I will, Your Honor, in two

1      seconds.

2              But before Mr. Romney and Mr. Vartan leave, I want

3      to give them a heads-up that I'm going to raise an issue

4      related to the Lady May.

5              But to answer your question, what I -- well,

6      obviously, would like, and this is going back to September

7      expenses, and I would (indiscernible), but we would -- we

8      could move -- I believe the Court has the ability to narrow

9      the notice to the (indiscernible) --

10             THE COURT:  I agree.  You'd have to file a motion,

11     but you could do that.

12             MR. DESPINS:  And so we will do that.  We will do

13     that.

14             THE COURT:  Okay.  Why don't you do that.  Then

15     that will be -- that will address the issue at least for the

16     time being.

17             MR. DESPINS:  Okay.  So, Your Honor, I didn't want

18     to cut you off, but can I raise the Lady May issue at this

19     point?

20             THE COURT:  And then we'll go back to Epiq after

21     you raise the Lady May issue.

22             MR. DESPINS:  Okay.

23             THE COURT:  Okay?

24             MR. DESPINS:  So the Lady May issue, and I want to

25     be clear, I'm not -- I don't want to be perceived as

1    presumptuous in anyway, but if, and there are a lot of if's

2    here, but if the Court were going to grant the relief we're

3    seeking in the summary judgment on Monday, we would have

4    only 24 hours to get insurance.  And I'm told that if the

5    ship does not have insurance, it's a huge problem from a

6    maritime law point of view.

7         And so where I'm heading is that we would file

8    today a motion to show notice to have a motion allowing us

9    to use the repair reserve to make the payment of the

10   insurance on the ship, and we'd have that heard either

11   immediately after the hearing on Monday or Tuesday morning.

12        Again, I want to be careful.  I don't want to be

13   presumptuous, but the point is that we would not have -- if

14   we were going to prevail, we would not have time to turn and

15   file that motion and have it heard, so we need to file it as

16   kind of a conditional motion.

17        I would stipulate that the opponents of that don't

18   need to file papers against that because, you know, we don't

19   want them to spend money on this, but basically it could be

20   heard immediately after on Monday on the summary judgment,

21   depending on Your Honor's ruling.

22        If the ruling is not favorable to us, then there's

23   nothing to be heard.  But if it's favorable to us, you know,

24   it's an emergency that it be heard.

25        And so we haven't filed this. We just wanted to

1    give you the heads-up, and give Zeisler and Mr. Vartan the

2    heads-up that we were going to file that motion to short

3    notice.  So that's all I wanted to accomplish with that,

4    Your Honor, for now.

5              THE COURT:  Okay.  Thank you.

6              So, Attorney Romney and Attorney Vartan, you just

7    heard what the Trustee said.  He's going to file an

8    emergency motion.

9              He's asking for it to be scheduled on the 27th

10   following the preliminary -- excuse me, the summary judgment

11   hearing, and he's saying that he will waive any requirement

12   for you to file any written response.  You can make your

13   argument at that hearing.

14             Do you have any questions about that?  I mean,

15   nothing's going to happen until he files that motion

16   obviously, but that's what he's saying he's going to file.

17             MR. ROMNEY:  Aaron Romney, Zeisler & Zeisler, on

18   behalf of HK International and Mei Guo.

19             I guess what I would say is if Trustee Despins has

20   a motion to file, we will read it.  I'm unfamiliar with any

21   rule of civil procedure that would preclude us from

22   objecting to a motion in writing.

23             THE COURT:  Oh, he's not -- he's not saying he's

24   precluding you.  That's not at all what he said, Attorney

25   Romney.  He said and I won't make them do it in writing so

1    they don't have to spend money.  And it's a timing issue.

2    It's an emergency.  He didn't say you couldn't do it.

3           He was trying to be -- he was actually trying to

4    be professional in my opinion and, say, look, I'm not giving

5    them a lot of time, so I'm not going to -- if they don't

6    have time to file a written objection, I get it, and let

7    them object orally.  That's all he said.  He wasn't trying

8    to preclude you.

9           MR. ROMNEY:  I appreciate the professional

10   courtesy, Trustee Despins, and Your Honor for the

11   explanation.  I misunderstood.  That sounds great.  We will

12   review his motion and we will respond to it and perhaps we

13   will have no objection.

14          THE COURT:  Okay.  Great.  And if you have an

15   objection and you want to file one, then you're all --

16   you're more than welcome too, Attorney Romney.  Okay?

17          I'm not -- I would never preclude anyone from

18   filing anything unless the rules or the circumstances

19   justified it.  So anyway -- you understand.

20          All he's saying is, that, Judge, don't make them

21   have to file something in writing if they don't have a lot

22   of time to do it.  They have a right to make their oral

23   objection at the hearing.  That's what he said.  I'm fine

24   with that.  But that doesn't preclude you, Attorney Romney,

25   from filing something.  Okay?

1          MR. ROMNEY:  Sounds great, and I very much

2     appreciate the courtesy, Trustee Despins.

3          MR. DESPINS:  Thank you.

4          THE COURT:  Okay.  So, Trustee Despins, that

5     motion that you're speaking of you think will be filed

6     before the close of business today?

7          MR. DESPINS:  Yes.  Yes, Your Honor.

8          THE COURT:  Okay.  Thank you.

9          All right.  Then with regard to the Epiq issue,

10    Trust Despins, did you have an opportunity to discuss with

11    them the issues that we -- and maybe you haven't, the issues

12    that we talked about I guess just -- what's today, Thursday

13    -- so I guess Tuesday about whether they were going to keep

14    the docket up and whether they were going to continue to

15    allow you and the United States Trustee and parties to the

16    protective order, which includes the committee, to have

17    access to confidential information?

18         MR. DESPINS:  Yes, Your Honor.

19         So those discussions took place.  This is a bit

20    unorthodox, Your Honor, but I am here with my colleague, Mr.

21    Bongartz, who has had those discussions.

22         THE COURT:  Okay.

23         MR. DESPINS:  He has not appeared yet, but it

24    probably would make better sense for him to address these

25    issues.  I can, but it's going to be less efficient than if

1    he does.  With your permission, can we do that?  He's just

2    here beside me.

3           THE COURT:  I have no problem with it.  I have no

4    problem.  And you can just file an appearance after the

5    hearing, please.

6           MR. BONGARTZ:  Okay.  I'll just announce my

7    appearance.  I'm Alex Bongartz, with Paul Hastings, for the

8    Chapter 11 Trustee.  So I believe there were three open

9    issues that Your Honor had asked that we talk to Epiq about.

10          So the first one is the data room of the claims to

11   which certain authorized parties, the Trustee, committee

12   counsel, would continue to have access to Epiq.  It has no

13   issue with continuing to maintain that data room and keep

14   uploading claims to the extent (indiscernible) require the

15   clerk to share claims that get filed with the clerk.

16          But Epiq is prepared to continue to maintain that

17   data room for the benefit of the authorized parties that are

18   entitled to receive access to it.  So that was issue one.

19          Issue number two was the online docket to the main

20   case that is currently being maintained on the Epiq case

21   website for the Kwok matter.

22          Epiq did also okay and is agreeable to maintain

23   and continue maintaining that website going forward.  To be

24   clear, this will only be the docket in the main case.  It

25   would not be the claims register or any docket in the

1   adversary proceedings.

2              THE COURT:  I agree.

3              MR. BONGARTZ:  And it would just be for --

4              THE COURT:  I agree with that.  Okay.

5              MR. BONGARTZ:  Okay.  And then the third point is

6    the claims submission portal, which is part of the case

7    website on the Epiq web page.

8              I think we previously raised the concern to keep

9    the portal open for the time being.  I want to add one

10   additional point in that regard.  And that is the

11   governmental bar date in the Genever Holdings Corporation

12   case has not yet passed.  It is April 10th of this year.

13             And so at a minimum we would ask that the portal

14   be kept open until then, or say the end of April, so that

15   both the governmental claims as well as any other late filed

16   claims, you know, could still be submitted.

17             Obviously, Epiq would forward any claims that do

18   get filed, as it has done in the past, to the clerk of the

19   court so the clerk would know about those claims as well.

20   Again, none of those claims get posted on the Epiq website.

21             THE COURT:  Yeah.  And none of the claims -- even

22   if Epiq were to receive claims, they're not going to put

23   them -- make them as part of a register, correct?

24             MR. BONGARTZ:  No.  No.

25             THE COURT:  They're going to take them and forward

1    them to the clerk of the court?

2           MR. BONGARTZ:  Correct.

3           THE COURT:  Okay.

4           MR. BONGARTZ:  Absolutely correct.

5           THE COURT:  All right.  Well, I think that does

6    address the three issues then.

7           And so what we need -- what we're going to need --

8    the Court will do is we'll get together a proposed order

9    that will be shared with the parties, including the debtor's

10   counsel.  And before it gets docketed, everybody will have

11   an opportunity to make any comments about it and then we'll

12   go from there.  Okay?

13          MR. BONGARTZ:  Thank you.

14          THE COURT:  Does that make sense, Counsel?

15          MR. BONGARTZ:  Yes, it does.  Thank you.

16          THE COURT:  I don't know when that order will be

17   available, probably by early next week.  And then there will

18   be some time frame set for parties to file any comments or

19   suggest any comments or changes to the order before it

20   enters.  Okay?

21          MR. BONGARTZ:  Thank you, Your Honor.

22          THE COURT:  All right.  Thank you.  I appreciate

23   the update.

24          MR. BONGARTZ:  You're welcome.

25          THE COURT:  All right.  I believe that that

1    concludes all of the business in these matters today unless

2    someone has some other issue that they want to raise.

3          (No response.)

4                THE COURT:  Okay.  Then thank you, all.  And court

5    is adjourned.

6                ALL COUNSEL:  Thank you, Your Honor.

7          (Proceedings concluded at 12:19 p.m.)

8

9                I, CHRISTINE FIORE, Certified Electronic Court

10   Reporter and Transcriber, certify that the foregoing is a

11   correct transcript from the official electronic sound

12   recording of the proceedings in the above-entitled matter.

13

14   *Christine Fiore*

15   _____        April 3, 2023

16      Christine Fiore, CERT

17

18

19

20

21

22

23

24

25