UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK and GENEVER | * | |
| HOLDINGS CORPORATION, | * | |
| | * | |
| Debtor. | * | |
| | | |
| HK INTERNATIONAL FUNDS | | Adv. Proc. No. 22-05003 |
| INVESTMENTS (USA) LIMITED, | * | |
| | * | Bridgeport, Connecticut |
| Plaintiff, | * | March 27, 2023 |
| | * | |
| v. | * | |
| | * | |
| DESPINS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF EMERGENCY MOTION OF CHAPTER 11
TRUSTEE FOR ENTRY OF ORDER MODIFYING REPAIR RESERVE
ORDER and MOTION FOR SUMMARY JUDGMENT ON FIRST COUNTERCLAIM
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff,<br>HK International and<br>Mei Guo: | MELISSA WERNICK, ESQ.<br>Chiesa Shahinian &<br> Giantomasi, PC<br>One Boland Drive<br>West Orange, NJ  07052 |
| | JAMES MORIARTY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street<br>Bridgeport, CT  06604 |
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings, LLP<br>200 Park Avenue<br>New York, NY  10166 |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:  (Cont'd.)

| | |
|---|---|
| For the Defendant,<br> Luc A. Despins, Chapter 11<br> Trustee: | NICHOLAS A. BASSETT, ESQ.<br>Paul Hastings, LLP<br>200 Park Avenue<br>New York, NY  10166 |
| | PATRICK R. LINSEY, ESQ.<br>Neubert Pepe & Monteith, PC<br>195 Church Street<br>New Haven, CT  06510 |
| For the Creditor, Pacific<br> Alliance Asia Opportunity<br> Fund L.P.: | ANNECCA SMITH, ESQ.<br>Robinson & Cole<br>28 Trumbull Street<br>Hartford, CT  06103 |
| | STUART SARNOFF, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| For the Creditors Committee: | IRVE GOLDMAN, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |
| For the RCI Bridgeport, LLC,<br> Interested Party: | SABATO P. FIANO, ESQ.<br>Zeldes, Needle & Cooper PC<br>1000 Lafayette Blvd.<br>Bridgeport, CT  06601 |

1         (Proceedings commenced at 11:09 a.m.)

2              THE COURTROOM DEPUTY:  Adversary no. 22-5003, HK

3    International Funds Investment vs. Luc Despins.

4              THE COURT:  Good morning. If we could have

5    appearances for the record, starting first with the Chapter

6    11 Trustee, please.

7              MR. DESPINS:  Good morning, Your Honor.  Luc

8    Despins, Chapter 11 Trustee.

9              THE COURT:  Good morning.

10             MR. BASSETT:  Good morning, Your Honor. Nick

11   Bassett, from Paul Hastings, counsel for the Chapter 11

12   Trustee.

13             THE COURT:  Good morning.

14             MR. LINSEY: Good morning, Your Honor.  Patrick

15   Linsey for the trustee.

16             THE COURT:  Good morning.  Attorney Sarnoff, do

17   you want to continue?

18             MR. SARNOFF:  Good morning, Your Honor.  Stuart

19   Sarnoff, on behalf of creditor PAX. I didn't know that we

20   were a party to this action.

21             THE COURT:  Well, you're here so you might as well

22   note your appearance.  Go right ahead, counsel.

23             MS. SMITH:  Good morning, Your Honor.  Annecca

24   Smith, Robinson and Cole, Connecticut counsel to PAX.

25             THE COURT:  Good morning.

1          MR. GOLDMAN:  Good morning, Your Honor.  Irve

2   Goldman, Pullman and Comley, for the creditors committee.

3          THE COURT:  Good morning.   Counsel?

4          MS. WERNICK:  Good morning, Your Honor. Melissa

5   Wernick, of Chiesa Shahinian & Giantomasi, on behalf of HK

6   USA and Ms. Guo.

7          THE COURT:  Good morning.

8          MR. MORIARTY:  Good morning, Your Honor.  James

9   Moriarty, from Zeisler and Zeisler, for the same parties.

10          Attorney Wernick will be taking the lead on the

11   summary judgment argument today and I just want to state for

12   the record, because Attorney Barton's name is mentioned

13   quite often, that he is traveling today on a pre-planned

14   trip that was planned before the hearing was scheduled.

15   That's why he's not present.

16          THE COURT:  Okay.  Thank you.  Good morning.

17          MR. FIANO:  Good morning, Your Honor.  Sabato

18   Fiano, Zeldes, Needle and Cooper.  We just filed our

19   appearance on behalf of an interested party, RCI Bridgeport,

20   LLC, which actually operates the marina at which the subject

21   vessel is housed.  So we obviously have some interest in

22   terms of insurability and other things with respect to

23   today's proceedings.

24          THE COURT:  Okay.  Good morning.

25          All right.  Trustee Despins, this is your motion

1    for summary judgment so please proceed.

2           MR. BASSETT:  Again, good morning, Your Honor.

3    For the record, it's Nick Bassett, from Paul Hastings,

4    counsel to the Chapter 11 Trustee.

5           THE COURT:  Good morning.

6           MR. BASSETT:  Your Honor, we had prepared some

7    slides to help with our argument today, just a few of them.

8    We've already shared them with opposing counsel and the

9    other parties in the courtroom.  May I approach?

10          THE COURT:  Certainly.  Are those slides that are

11   going to be shown, projected?

12          MR. BASSETT:  No, we can just -- I have enough

13   copies. I think we can just use the hard copies.

14          THE COURT:  That's fine.  Okay.  Thank you.

15          MR. BASSETT:  The other thing I would note, Your

16   Honor, before beginning is that this morning, I think some

17   time within the last hour, or maybe slightly more than that,

18   we filed a supplemental rebuttal declaration on the docket

19   that just has a few additional exhibits attached to it by

20   way of rebuttal to the papers that were filed last night by

21   the counter-defendants.  I may refer to some of those during

22   the course of my argument today.

23          THE COURT:  Okay.  Thank you.

24          MS. WERNICK:   Your Honor, if I may, the counter-

25   defendants do have an objection to the reference to the

1    exhibits that were filed this morning to which we have not

2    had an opportunity to fully review and which it appears

3    counsel intends to rely upon in his slide deck this morning.

4            THE COURT:  Understood.  You can raise those

5    during the course of the hearing.  Thank you.

6            MR. BASSETT:  And, Your Honor, the only thing I

7    would note is that they're all documents filed on the public

8    docket in the PAX litigation.  So they're documents with

9    which counsel, in particular Attorney Vartan, are very

10   familiar.  And they just respond to points that were made in

11   their papers.

12           THE COURT:  We'll address those when and if they

13   come up.

14           MR. BASSETT:  Thank you.

15           THE COURT:  Okay.  Go right ahead.

16           MR. BASSETT:  So, Your Honor, the issue before the

17   court today on summary judgment is whether there is any

18   genuine issue of material fact as to whether collateral

19   estoppel applies to the issue of the debtor's ownership of

20   the Lady May, as set out in the trustee's first

21   counterclaim.

22           And as I will explain during the course of my

23   argument today we believe it is clear that there is no such

24   genuine dispute and to hold otherwise would only result in

25   the waste of time and resources by allowing the counter-

1    defendants to relitigate the exact same issue of the yacht's

2    ownership that was already decided against them and against

3    the debtor by Justice Ostrager in New York Supreme Court in

4    2022.

5            Now, Your Honor, going to the first page of the

6    slide deck, or I guess the second page, it sets out the

7    standard for collateral estoppel.

8            The parties agree that New York law applies to the

9    question of collateral estoppel in this instance because the

10   decision was rendered by a New York court.

11           Now under New York law -- again, I believe this is

12   undisputed, the trustee needs to satisfy two elements.  One,

13   that there is an identical issue necessarily decided in a

14   prior action and that issue is decisive of the current

15   action.

16           And then second that the party to be precluded

17   from relitigating here, the counter-defendants, had a full

18   and fair opportunity to litigate in that prior action.

19           We submit that both elements are readily satisfied

20   here and there is no genuine dispute of material fact as to

21   their satisfaction.

22           On the next page, Your Honor, we get into the

23   first issue, which is whether there -- in the litigation

24   before Ostrager and in this adversary proceeding, is an

25   identical issue that was necessarily decided in that prior

1    action.

2              I'll get to some of the quotes on the side deck in

3    a moment, but before doing that I'll maybe take a step back

4    or two just to provide a recap of some of the context and

5    history that led to Justice Ostrager's February, 2022

6    decision.

7              So as the court is aware by this point, in 2017

8    PAX commenced litigation against the debtor before Justice

9    Ostrager in the New York Supreme Court on account of a

10   guarantee of a loan that PAX made to one of the debtor's

11   business entities.

12             In September, 2020, PAX prevailed on its summary

13   judgment motion against the debtor on that claim.

14   Thereafter, later in 2020, PAX sought and obtained

15   restraining orders prohibiting the debtor from dissipating

16   his assets, including specifically the Lady May.

17             Now in March of 2021 PAX filed a motion, which

18   Justice Ostrager granted, which was an interim decision

19   holding the debtor in contempt of court for violating the

20   restraining orders that had been issued that prevented the

21   Lady May from being moved outside the jurisdiction of U.S.

22   waters, which had happened.

23             After that March, 2021 order the debtor appealed.

24   He appealed that contempt decision and he argued in the

25   appeal, among other things, that that decision was improper

1   because Justice Ostrager, before rendering that initial

2   March, 2021 contempt decision, should have held an

3   evidentiary hearing and determined the issue of whether the

4   debtor owned the Lady May.

5          And while the appeal was pending -- so while that

6   appeal was pending to the appellate division, on July 8th of

7   2021 PAX filed another motion before Justice Ostrager asking

8   for him to hold the counter -- or to hold the debtor in

9   final contempt of court for ongoing violations of the prior,

10  March, 2021 restraining order.

11         In response to that the debtor filed an opposition

12  and at the same time Attorney Vartan, on behalf of HK USA,

13  filed an affirmation supporting the debtor's opposition.

14         And I'll get to the text and the context of that

15  affirmation in a minute.

16         Also, after the filing of that final contempt

17  motion, Justice Ostrager noted, in response to some of the

18  arguments that had been made on appeal by the debtor, that

19  he would need to have -- he said he heard them say that

20  there should be an evidentiary hearing on the issue of

21  ownership and he promised that he would hold such a hearing.

22         So the appeal was pending while all of these

23  events were happening before Justice Ostrager.  And on

24  November 9th of 2021 the New York Appellate Division issued

25  its order on the pending appeal of that March, 2021

1    decision.

2              And what the appellate division found was that

3    Justice Ostrager had properly acted within his discretion in

4    holding the debtor in contempt.

5              And then critically, for purposes of the motion

6    before the court and the issue of collateral estoppel, and

7    this is listed in the -- and highlighted in the slide before

8    the court, the appellate division specifically instructed

9    Justice Ostrager -- it said the motion court, i.e., the New

10   York Court, Justice Ostrager, is instructed to proceed with

11   an evidentiary hearing to resolve a dispute as to ownership

12   and control of the yacht and to assess appropriate

13   penalties.

14             There's no ambiguity in that language as to what

15   it instructed Justice Ostrager to do.

16             Justice Ostrager in response to that decision --

17   that instruction from the appellate division, in fact, held

18   an evidentiary hearing on February 2nd to decide this exact

19   issue.

20             And the decision that he ultimately rendered after

21   that hearing on February 9th, 2022 is crystal clear in that

22   regard and eliminates any doubt as to what the issue was

23   that he was deciding.

24             And this is Exhibit 18 of my initial declaration

25   at ECF 150, where in his February 9th decision Justice

1    Ostrager said pursuant to the appellate division's order,

2    this court scheduled the February 2nd, 2022 evidentiary

3    hearing to resolve the issue of whether Kwok beneficially

4    owns and controls the yacht.  Period.

5           Again, unequivocally clear as to what the issue

6    was that Justice Ostrager was deciding in issuing his final

7    contempt order.

8           Not only did Justice Ostrager state the issue that

9    he was deciding that way he, in fact, decided it consistent

10   with the way he framed the issue.

11          On the next slide you'll see at page 4 of the

12   Ostrager decision, among his many findings and conclusions

13   was that "the testimony adduced at the hearing out of the

14   mouths of the defendant's witnesses, which included Mei Guo

15   and other witnesses that her counsel presented, clearly and

16   convincingly demonstrated that Kwok beneficially owns and

17   controls the Lady May and has utter contempt for this court

18   and the judicial process."

19          Not only did he make the unequivocal finding about

20   the beneficial ownership and control, in the process of

21   doing so he went out of his way to very specifically and

22   very firmly reject all of the testimony that Mei Guo, on

23   behalf of HK, USA, counter-defendants in this litigation,

24   offered in support of an opposite conclusion.

25          Specifically, on page 6 and 7 of his decision he

1  said, characterizing the testimony that he had heard from

2  Ms. Guo, in short Ms. Guo's testimony that she owns and

3  controls the Lady May cannot be credited in any respect.

4       Ms. Guo appears to be a woman in her 20's, has

5  introduced no evidence that she exercised dominion and

6  control of the Lady May and provided no confirmation that

7  she came into possession of the Lady May other than as a

8  rouse to shield the Lady May from being levied upon by her

9  father's creditors.

10      In addition to that statement, Your Honor,

11 although that -- not displayed on the slide here, I think

12 this was also at page 4 of the Ostrager decision, he

13 indicated that the evidence supported a finding that the

14 debtor had provided the funds used to purchase the Lady May.

15      So, again, Your Honor, from all of this it is

16 crystal clear based on the appellate division order, Justice

17 Ostrager's decision and response to that order and his

18 findings that the issue he decided was whether the debtor

19 beneficially owns and controls the yacht.

20      And he decided resoundingly, after hearing

21 evidence from the debtor and from the counter-defendants

22 from HK, USA, that he did.

23      And, Your Honor, I'll get to these specific

24 documents more in a minute, but even if it weren't crystal

25 clear based on the two orders that I just discussed what the

1    issue was that decided, which by the way is, of course,

2    identical to the issue before this court, which is does the

3    debtor own the Lady May, in addition, the statements of the

4    counter-defendants and their counsel, and their actions

5    before Justice Ostrager make it clear that they understood

6    exactly what the issue was that they were litigating.

7         And I'll get to this document in more detail later

8    when I talk about their active participation in the

9    litigation, which is a second prong of the analysis, but if

10   you look at -- as I mentioned earlier, in July of 2021

11   Attorney Vartan filed an affirmation in support of the

12   debtor's opposition to the final contempt motion, which is

13   several pages of him laying out in detail all the reasons

14   why the court should find that HK, USA and not the debtor,

15   owned the Lady May.

16        So he clearly knew exactly what the issue was and

17   he submitted an affirmation several pages long specifically

18   to argue that issue.

19        Similarly, before the hearing on February 9th, Mei

20   Guo submitted a declaration, or her own affidavit, which

21   served as her direct testimony, where she spends pages

22   addressing that exact issue, and I'll get to the specific

23   quotes from the document as well.

24        So the court knew the issue it was deciding. It

25   actually decided that issue and the counter defendants knew

1    what the issue was.  There's no dispute that that issue is

2    the exact same as the issue before this court.

3            In terms of some of the counter arguments that

4    have been made, one of the counter arguments that we see in

5    the papers filed last night was that the issues are somehow

6    different because the issue before Justice Ostrager was

7    whether the debtor should be held in contempt of court,

8    whereas the issue before this court is who owns the yacht.

9            The problem with that argument is that the issue

10   that Justice Ostrager clearly said he needed to decide in

11   order to issue the final contempt ruling, was who owns the

12   yacht.

13           The fact that that wasn't the ultimate exclusive

14   question before him does not change the fact that he finally

15   and necessarily decided that issue.

16           And they cite a couple of cases that appear to be

17   in support of this notion that if you have contempt

18   proceedings previously and then other litigation

19   subsequently, collateral estoppel doesn't apply, but the

20   cases are completely in apposite.  They're not even remotely

21   on point.  They're both divorce cases.

22           One is *McNeal vs. Frankie* from the 8th Circuit in

23   1996.  That case involved a divorce decree pursuant to which

24   one of the spouses, the defendant's wife, was said to be the

25   20 percent owner of a promissory note and was entitled to

1   principal and interest distributions on the note.

2          When the husband failed to send the payments to

3   his spouse, his ex-spouse, in accordance with that decree,

4   she filed a motion for contempt of court.

5          Now while that was happening, in the interim the

6   defendant -- the husband had engaged in a refinancing

7   transaction and certain of the new entities that became

8   liable filed for bankruptcy.

9          After all of that, the wife filed another action,

10  this time a litigation, making the argument that her claim

11  on the old now refinanced promissary note was superior to

12  and had priority over the claims of all these new interest

13  holders.

14         And the court naturally in that situation said

15  that collateral estoppel didn't apply because the issues

16  were entirely different.

17         As the court said, the issue in a contempt lawsuit

18  was whether the husband's refinancing transactions wilfully

19  violated the language of the consent decree -- from the

20  divorce decree.

21         The issue in this lawsuit is the legal effect of

22  the refinancing transactions on the wife's property rights,

23  which depends on tenant in common principles.

24         The court reiterated she does not merely seek to

25  relitigate the issue that was litigated previously but

1     instead asked the court to decide the legal status of her

2     security interests in the underlying collateral underlying

3     the promissory note.  Completely different issues.  Not our

4     case at all, because the same issue is necessary decided

5     before Ostrager that is presently before this court.

6            The other case is even less relevant.  This is

7     *Bouchard v. Sunburg*.  It's -- I don't know if I have the

8     right reference, but it's in the papers to the Reporter

9     citation.

10           But like the *McNeal* case, this also involved a

11    divorce situation.  This time it was a child custody

12    arrangement, and when one spouse didn't comply with that

13    child custody arrangement, which included certain counseling

14    sessions, a trial court decided that ultimately it was not

15    going to force the children to continue going to these

16    sessions because it wasn't in their best interests.

17           Later, the same spouse sued for breach of contract

18    separately and the issue of collateral estoppel was raised.

19           Again, naturally, the court said these issues are

20    completely different.  The court said first of all, the

21    prior actions involved enforcement of court orders while the

22    current is breach of contract -- the current action is

23    breach of contract.

24           And then the court said the orders focused on the

25    custody of children based on the parties' agreement, more

1    specifically the failure to comply with the orders requiring

2    attendance at counseling sessions.  Such orders in that

3    action are based on equitable considerations that arise

4    under Connecticut child custody statutes.

5            So the issue is whether or not the court should

6    determine that it was in the best interests of the children

7    to continue to engage in counseling sessions.

8            By contrast, the breach of contract case, as the

9    court recognized, dealt with the elements of breach of

10   contract.  Was there a promise?  Was there a consideration?

11   Was that promise breached and what were their damages?

12           And the court said none of those issues were

13   addressed by a court focusing on the interests of the

14   children in determining whether or not counseling sessions

15   should continue.  So collateral estoppel did not apply.

16   Again, totally different circumstances.

17           Other arguments that the counter-defendants raise,

18   Your Honor, is -- they suggest that the final contempt

19   decision from February of 2022 was somehow a temporary or

20   interim decision.

21           It was not. It was by its very terms, and the way

22   it was teed up, was a final decision on the heels of the

23   prior earlier March, 2021 order.

24           And what they do -- what the counter-defendants do

25   is they liken this to -- and they cite case law involving

1    preliminary injunction decisions, and they say that those

2    decisions should not be entitled to preclusive effect.

3         But those decisions are completely inapplicable

4    because in a -- the whole point is that when the court is

5    deciding a preliminary injunction the issue is whether the

6    party seeking the injunction has a likelihood of success on

7    the merits.

8         So by definition in a preliminary injunction

9    setting the court is not finally determining success on the

10   merits.  Here Justice Ostrager was finally determining the

11   ownership question.  That's what he set out in his order.

12   That's what the appellate division instructed him to do and

13   that's what he, in fact, did.

14        It's completely different.  It's not a preliminary

15   injunction, likelihood of success standard that applied. It

16   was a success on the merit standard that applied.

17   And he found against the counter-defendants and against the

18   debtor.

19        The counter-defendants also argue that the

20   decision was somehow temporary because Justice Ostrager was

21   planning to have a subsequent hearing to determine the issue

22   of -- they suggest whether HK USA was the debtor's alter-

23   ego.

24        That is completely wrong.  There was never a claim

25   filed by PAX in the New York litigation in which they sought

1    an ultimate determination as to alter-ego status with

2    respect to HK USA.

3          The only alter-ego claim brought was with respect

4    to Genever and the Sherry-Netherland apartment.  There was

5    never contemplated a final additional after the February 9th

6    decision hearing to determine whether or not the Lady May

7    was property of the estate.  It was decided in that hearing.

8          And in support of that, Your Honor, you can see

9    one of the exhibits that we filed in rebuttal is Exhibit 7,

10   which is nothing more than the amended complaint that PAX

11   filed in the New York litigation.  And that shows that there

12   was a count in there for veil piercing with respect to

13   Genever and the Sherry-Netherland.  There's no similar count

14   anywhere in the record because there wasn't one with respect

15   to the Lady May.

16         Now -- one second, Your Honor.

17       (Pause.)

18         So, Your Honor, I think that takes us through the

19   first issue in the collateral estoppel analysis but,

20   obviously, I'll respond to any arguments that counsel may

21   raise on reply.

22         The second element of the test, as I said, is

23   whether or not the party to be estopped -- here, the

24   counter-defendants and HK USA in particular, had a full and

25   fair opportunity to litigate the issue in the prior action.

1          Now this is on slide 5.  This requirement under

2     New York law -- and again, I don't think this is disputed,

3     if you look at the papers, is satisfied if the party to be

4     estopped one, is in privity with the party against which the

5     prior judgment was rendered or two, alternatively, actively

6     participated in the prior litigation.

7          And notably on this second prong of the collateral

8     estoppel test, Your Honor, the law is clear that the party

9     opposing the estoppel, here the counter-defendants, actually

10    bear the burden of proof to show that they actively

11    participated.  And I think it's abundantly clear they have

12    not met that burden.

13         And, in fact, we've satisfied both of the two

14    alternative bases; privity and active participation.

15         On the next slide, which is slide 6, this talks

16    about privity.  And the standard that courts generally apply

17    in determining whether there was privity, if you look at the

18    case law, which we've cited in our brief, is that it's a

19    very flexible standard that looks at all the facts and

20    circumstances of the case.  There's no hard and fast rule,

21    or hard and fast set of requirements. It's a flexible

22    standard that looks at the relationship between the parties

23    and whether or not they had an alignment of interest.

24         Here it is not disputed at all, for obvious

25    reasons, I think, that the debtor and his daughter have a

1    very close relationship.

2          It's also not disputed, based on evidence in the

3    record and based on the counter-defendants own statements

4    that the daughter and HK USA are essentially one and the

5    same. It's not disputed that's it's her company.  There's

6    evidence in the record and attached to my declaration that

7    it has no employees. It has no other assets, according to

8    them, other than the Lady May.  They're basically the same.

9          So, therefore, it's -- I don't think subject to

10   any genuine dispute that the debtor has a very close

11   relationship both with his daughter and through her with HK

12   USA. So that's sort of part one.

13         Part two is they have -- they had in front of

14   Justice Ostrager a very clear alignment of interest. If you

15   look at the record, if you look at all the documents that

16   were submitted, the pleadings that are attached to my

17   initial declaration and my rebuttal declaration it is

18   crystal clear that they both -- both the debtor and HK USA

19   and Mei Guo on its behalf wanted Justice Ostrager to find

20   more than anything that HK USA and not the debtor own the

21   yacht.

22         And the best in response to this that the counter-

23   defendants have been able to come up with is that somehow

24   there was not an alignment of interest because the debtor,

25   like he apparently always does, decided before Justice

1    Ostrager to assert his Fifth Amendment rights when he

2    testified, as opposed to providing substantive answers.

3              And that, Your Honor, is -- it's entirely beside

4    the point, because it does not change the fact that the

5    debtor's interest in that litigation, which he argued --

6    regardless of his testimony -- which he argued through

7    counsel vociferously for was that HK USA owned the yacht.

8    and through HK USA his daughter.

9              And this is -- if you look at Rebuttal Exhibit 2

10   to my declaration -- and again, this should not be subject

11   to any controversy because it's a very clear pleading that

12   they filed, or that the debtor filed on their side in the

13   litigation, where in his post-trial briefing after the

14   contempt hearing, the debtor argued that -- and he argued

15   strenuously throughout the entire ten to 20 pages of his

16   post-trial briefing that HK USA and Mei Guo owned the Lady

17   May.

18             If you look at -- again, this is Exhibit 2 to my

19   rebuttal declaration, if you look the preliminary statement

20   of what the debtor filed in post-hearing briefing, it's like

21   a two-page preliminary statement that does nothing other

22   than argue he shouldn't be held in contempt of court because

23   his daughter owns the yacht and there's no evidence to the

24   contrary.

25             It's basically a recap of the exact same arguments

1    these counter-defendants have made before this court.  And

2    the point, Your Honor, is that the idea that the debtor did

3    not have the same interest and did not advocate for the same

4    interest as the counter-defendants because he took the Fifth

5    is just totally wrong.

6         In addition to submitting this briefing in which

7    he clearly argued the issue, he had the counter-defendant

8    call witnesses, including Mei Guo, and other individuals who

9    had roles with respect to management and operation of the

10   yacht come to testify. So he made his case and he advanced

11   his interest every way he could.  The fact that he took the

12   Fifth does not change that.  It does not change that there's

13   privity.

14        So I think it's clear that the first prong of

15   privity is established but alternatively, the record is also

16   clear in this case that the counter-defendant actively

17   participated in the litigation before Justice Ostrager.

18        And I'll start with -- and this now goes to page 7

19   of the slides and I had promised the court that I would get

20   to this -- I had mentioned this affirmation earlier and I

21   promised the court that I would get back to it, but this is

22   the July, 2021 affirmation that Attorney Vartan, on behalf

23   of HK USA, filed in response to PAX's filing a contempt

24   motion.

25        In this affirmation Attorney Vartan is essentially

1    submitting a brief arguing the issue of ownership.  If this

2    isn't clear evidence of participation actively in that

3    litigation, I don't know what would be.

4          As the quotes show, and these are just some

5    snippets from the multi-page affirmation, but as it starts

6    out, "While HK International," in this case HK International

7    refers to HK USA, "is not a party to this action, it is the

8    owner of the yacht, the Lady May, whose movement is asserted

9    to be the basis of the final order of the contempt motion."

10         And he goes on and he says "I will address the

11   ownership as shown by documentary evidence of the motor

12   vessel, the Lady May, the movement of which is the subject

13   of the final order of contempt -- the final order of

14   contempt motion.  Then I will review documents concerning

15   the formation, existence, separate corporate identity and

16   independent ownership of HK International."

17         He goes on through the course of the next 16

18   paragraphs to layout all these documents and to make his

19   argument.

20         Then in paragraph 21 he says, "Based on the

21   registration certificate, the certificate of formation and

22   the LLC agreement, it is clear that HK International is the

23   sole" -- again, it's HK USA -- "is the sole owner of the

24   Lady May since April, 2020 and Ms. Guo is the sole member of

25   HK USA."

1          He again concludes a couple of paragraphs later,

2    "Accordingly, based on everything I've said in my

3    affirmation, HK USA respectfully submits that the foregoing

4    documents demonstrate A, that the yacht, the Lady May, is

5    owned by HK USA and B, that HK USA is in turn one hundred

6    percent owned by Ms. Guo."

7          That, Your Honor, is one example of clear, active

8    participation by the counter-defendants through their

9    counsel in the very issue that Ostrager ended up deciding.

10          Their participation continued.  At the February

11   2nd hearing HK USA and its counsel, and this is the next

12   slide on the deck, participated extensively in the trial on

13   the merits.

14          In advance of the trial, pursuant to an order of

15   Justice Ostrager, Mei Guo submitted an affidavit which

16   served as her direct testimony.  They also submitted

17   affidavits from three other witnesses, including a captain

18   and other individuals who had roles in managing and

19   operating the Lady May.

20          On the slide deck I've included some excerpts from

21   Mei Guo's declaration.  Again, she had every opportunity,

22   every motivation to litigate the ownership issue, which is

23   clear based on her statements.  She said in paragraph 2 I am

24   the owner of the yacht, the Lady May. I have been the owner

25   of the Lady May since and/or around June, 2017.

1           A few paragraphs later, at the time I escaped from

2    the CCP's brutality -- and, by the way, these arguments are

3    going to sound very familiar to the court because they're

4    the exact same arguments we've heard in this adversary

5    proceeding, the Lady May was owned by HK USA -- was owned by

6    HK International, and the sole member of HK International

7    Natashia Qu.  And she said I understand that Ms. Qu was a

8    trusted business partner of my brother's, as well as my

9    uncles and cousins.  The same argument she's made here.

10           Paragraph 9, however, from the time of its

11   purchase the Lady May was always intended to be my boat,

12   given my love of the ocean.  Indeed it bears my name.

13           In June, 2017, when I was safely in the United

14   States, ownership of the Lady May was transferred to me.

15   These are just some snippets from her declaration but, Your

16   Honor, this is exactly active participation.

17           In addition to that, as the transcript that's part

18   of my declaration shows, Attorney Vartan, not only did he

19   put Mei Guo on the stand for cross examination on that

20   declaration at the hearing, he put the three other witnesses

21   that were called in support of the debtor's position on the

22   stand as well. He actively participated in the hearing.

23           Now some of the counter-arguments in the papers

24   filed last night, I want to address a couple of those.

25           The counter-defendants pick out certain things

1    that they say the counter-defendants, or that HK USA and Mei

2    Guo didn't have the opportunity to do and, therefore, they

3    didn't actively participate or have the full and fair

4    opportunity to litigate before Justice Ostrager.  They say

5    they didn't take discovery.

6          First of all, I want to say before addressing this

7    argument and the other particular things they say they

8    weren't able to do, there is no hard and fast test.  There's

9    no case law saying that you have to be able to take

10   discovery in order for collateral estoppel to apply.

11         As I said before, it is a flexible standard that

12   looks at all the facts and circumstances and determines

13   whether it would be fair to allow collateral estoppel to

14   apply.

15         I would submit that the only thing that would be

16   unfair would be to not allow it to apply and to give these

17   counter-defendants, who already litigated this issue, a

18   second bite at the apple and waste more time and more

19   resources of the trustee and of this court and of the

20   creditors of the debtor's estate.

21         But on these particular issues they say that the

22   debtor did not get the chance to -- or the counter-

23   defendants did not get the chance to take discovery.

24         Your Honor, what discovery could they possibly

25   have needed?  And I also don't know that it's not true that

1    they didn't take informal discovery.  They were trying to

2    prove -- the counter-defendants were trying to prove that

3    they owned the Lady May.  To the extend that they needed

4    evidence to present in support of that position it is

5    inherently and necessarily evidence that they own and

6    control.  It's the argument that they own it.

7            And they, in fact, obviously had access to that

8    information because they put Ms. Guo on the stand to testify

9    as to all the reasons why she thinks she owns the Lady May.

10   They put these other witnesses who they had access to,

11   people who had management and operational responsibilities

12   with the yacht on the stand.  They had access to them.  They

13   had everything they needed necessarily to litigate their

14   case.

15           They also suggest that they were not able to

16   submit their own briefing.  But as I just showed, they

17   effectively did that in multiple ways.  Attorney Vartan's

18   information serves a declaration, or serves as a brief.

19           Also, here, the debtor, who they're a hundred

20   percent aligned in interest with, as I said before,

21   submitted his own briefing multiple times, including post-

22   trial briefing where he argued the ownership issue

23   strenuously and made the exact same arguments that the

24   counter-defendants wanted him to make and that they're

25   making here. So, again, that's another red herring.

1    They also say, and this one's sort of more

2    remarkable than the others, that somehow they didn't have a

3    full and fair opportunity to litigate because there was no

4    redirect examination of witnesses.  We have no authority

5    that suggests that the lack of redirect would somehow mean

6    that they didn't have an opportunity to litigate.  That's

7    just not true, number one.

8         Number two, in support of that they cite to

9    Exhibit F to the Vartan declaration.  This is an order prior

10   to the February 2nd hearing from Justice Ostrager setting

11   out how the hearing would work procedurally.

12        And it says absolutely nothing of the sort that

13   redirect was prohibited.  And they said it was by agreement

14   of the parties and the court that they were not involved in

15   that redirect --

16        THE COURT:  What exhibit are you referring to

17   right now?  I'm not sure which one you are referring to?

18        MR. BASSETT:  This is Exhibit F to the Vartan

19   declaration in support of their opposition to the motion for

20   summary judgment.

21        THE COURT:  Okay.  So in the New York case, it's

22   Exhibit --

23        MR. BASSETT:  No, no.  In this case.  Exhibit --

24        THE COURT:  In this case --

25        MR. BASSETT:  His --

1          THE COURT:  Oh, in their summary judgment -- okay.

2          MR. BASSETT:  Yes. Sorry.

3          THE COURT:  Sorry.  That's why I'm asking. I want

4     to make sure I'm following you.

5          MR. BASSETT:  Understood.

6          So in Exhibit F -- so what they say in their

7     papers is that the parties agreed, along with Justice

8     Ostrager, there would be no direct.  Again, this is -- I'm

9     spending too much time on this because I don't think that

10    really matters anyway.

11         But I just want to point out that's factually

12    incorrect.  They cite to this Exhibit F, which is the

13    pretrial order. It says nothing about there being no

14    redirect.

15         THE COURT:  So it's Exhibit F to ECF 160.

16         MR. BASSETT:  I think that's the right ECF

17    reference.

18         THE COURT:  It is.

19         MR. BASSETT:  It says nothing of the sort.

20         THE COURT:  161.  I'm sorry. I apologize.  At

21    least from what I'm looking at it's 161.

22         MR. BASSETT:  No problem, Your Honor.  Thank you.

23         All that order says is that direct testimony will

24    be by affidavit and then witnesses will be presented for

25    cross.

1      If you look at the transcript, which is at Exhibit

2   16 to my declaration, in fact, what happened at the February

3   2nd hearing is that PAX tried to redirect -- tried to

4   conduct redirect examination of one of its own witnesses.

5          THE COURT:  All right.  Let me look at yours so

6   I'm following you.  Okay?

7          MR. BASSETT:  Sure.

8          THE COURT:  So we're talking -- you're now saying

9   but -- not look at my declaration and look at what Exhibit?

10          MR. BASSETT:  Exhibit 16, Your Honor.

11          THE COURT:  Okay.  Hold on a second.

12          So your declaration is 150 in this adversary. So

13   just give me a moment.

14          MR. BASSETT:  No problem at all.

15      (Pause.)

16          THE COURT:  All right. So where in Exhibit 16 do

17   you want me to look?

18          MR. BASSETT:  It's at page 32 and, again, I fear

19   that I may be taking too long to make a point that I don't

20   think is absolutely critical, but I'll still finish the --

21          THE COURT:  Page 32.

22          MR. BASSETT:  I'll still close the loop.  Yes,

23   it's Exhibit 16 at 32.

24          THE COURT:  Okay.  Give me a moment, please.

25      (Pause.)

1        THE COURT:  Okay.  I am on page 32.

2        MR. BASSETT:  So the point, Your Honor, is that

3    contrary to what the counter-defendants had said, there was

4    no agreement among counsel.  And when I say agreement among

5    counsel, their point is that they say that the debtor and

6    PAX agreed without their involvement that there would be no

7    redirect and, therefore, they were prejudiced.

8        But that was not the case at all.  What happened

9    is on page 32 PAX tried to do direct of its own witness and

10   Justice Ostrager said he's not going to allow redirect.

11       So it was just Justice Ostrager deciding how to

12   conduct trials before his court.  He obviously is free to

13   determine what all parties may and may not do.  It was not

14   some agreement of the parties that was designed to prejudice

15   the counter-defendants and their rights. And their assertion

16   to the contrary is just wrong.

17       The next issue I want to address -- well,

18   actually, before moving on, and I think I'm close to

19   concluding my opening remarks, Your Honor, is I just want to

20   emphasize again that this is a particularly strong case for

21   satisfaction of the full and fair opportunity requirement of

22   the collateral estoppel analysis because we're not just

23   relying on one or the other of the privity and active

24   participation prongs.  We have both of them.

25       And in looking at all the facts and circumstances,

1    even if the court were to think well, maybe they could have

2    had more participation rights, or maybe there could have

3    been greater privity, here the argument on both sides is

4    bolstered by the fact that there's both.  So it wasn't just

5    that they were in privity.  They also actively participated

6    in the litigation.

7            And I'll give the court a case cite that I think

8    is helpful on this.  It's the *Allegra Credit vs. Tin Chu*

9    case, 29 A.D. 3d 718. This is a New York Second Department

10   Decision from 2006.

11           THE COURT:  Just give me the cite one more time,

12   please.

13           MR. BASSETT:  Sure.  29 A.D. 3d 718.

14           THE COURT:  Okay.  Go ahead.  Thank you.

15           MR. BASSETT:  And in this case there was a

16   criminal prosecution brought against a son who had forged a

17   deed of transfer of his father's house to himself and then

18   he procured a fraudulent mortgage after he had forged the

19   transfer of the deed.  And he was convicted.

20           The father in a subsequent litigation tried to

21   prevent foreclosure on the property on the grounds that it

22   had been transferred to his son.

23           And the court held that because of their close

24   relationship and the fact that they both had the exact same

25   interest in arguing that the forgery did not occur, that the

1    transfer deed was that he was bound even though in that case

2    the father did not participate at all, did not appear, did

3    not say anything in the prior criminal proceeding, but yet

4    collateral estoppel applied.

5         A couple of more issues that I think can be

6    dispensed with relatively quickly and then I'll reserve the

7    balance of my time to respond to arguments of counsel.

8         The first issue is -- this has come up already.

9    The court actually alluded to it in a past hearing and this

10   is the issue of whether an appeal or appellate rights

11   somehow factor into the collateral estoppel analysis in New

12   York and whether the pendency of an appeal would prevent

13   this court from finding that the counter-defendants are

14   estopped by Justice Ostrager's ruling.

15        In their brief -- I don't know how they say this

16   but they say that we rely on one old case from the late

17   1970's in support of this proposition that in New York law

18   the pendency of an appeal does not prevent collateral

19   estoppel and that they think the law has somehow changed.

20   That's just not the case.

21        We also cite to a 2004 decision, the *Bridgeview*

22   *Garden Apartments* case cited in our paper in which the court

23   -- the New York Court said the rule in New York is clear

24   that "the mere pendency of an appeal does not prevent the

25   use of the challenged judgment as the basis of collaterally

1    estopping a party to that judgment in a second proceeding."

2         Another case is a Second Circuit case from 2003.

3    This is the *Scherer v. Equitable Life Assurance Society of*

4    *the United States* case.  The citation is 347 F.3d 394.

5         The Second Circuit in that case said even though

6    the appeal was still pending when the suit was brought, the

7    district to treat the New York State judgment as final for

8    res judicata purposes.

9         In New York the rule is clear.  The dependency of

10   an appeal does not effect the application of collateral

11   estoppel.

12        To the extent that the counter-defendants cite

13   other cases purporting to go in a different direction, those

14   cases are inconsistent with the prevailing law and they

15   also, as far as I can tell, all involve criminal cases that

16   dealt uniquely with the situation that occurs in a criminal

17   trial where somebody is trying to use estoppel for criminal

18   liability.

19        Also, Your Honor, the cases that they cite and

20   rely on dealt with situations where no party had the

21   opportunity for appellate review.

22        But as we've already been over extensively, the

23   debtor and HK USA and Mei Guo were a hundred percent aligned

24   in interest before Justice Ostrager.  The debtor, in fact

25   has appealed and exercised his appellate rights to appeal

1    Justice Ostrager's decision.

2          So this isn't a situation where there was no

3    opportunity for pursuit of appellate rights.

4          The last issue, Your Honor, that I'll conclude

5    with and I think this will be very brief is the last

6    argument that they make in their papers where they say that

7    the court can't grant summary judgment because there are

8    issues with I guess the competency of the evidence that the

9    trustee is relying upon.  They say it's hearsay.

10          Your Honor, I think it's obvious that that's not

11    the case based on the nature of our argument.  We're arguing

12    collateral estoppel.  So we're putting Justice Ostrager's

13    decision before the court.  We're putting the appellate

14    division's decision before the court.  We're putting other

15    documents before the court, not for the purpose of proving

16    the truth of the matter asserted in factual findings.

17          We're putting them before the court to show the

18    procedural history of what happened before the New York

19    Court and the language of the decisions where the court

20    described what it was finding.

21          The fact that the counter-defendants through their

22    counsel participated in the proceedings before Justice

23    Ostrager, that's all clear based on the face of the

24    documents.  It's not -- there's not a hearsay issue.

25    There's no issue of the competency of the evidence before

1  the court.  I think that argument was put last in their

2  brief for a reason.

3       So, Your Honor, I think those are my opening

4  remarks in support of why we believe the court should grant

5  the motion for partial summary judgment.  Obviously, I'll

6  reserve time to respond to any arguments that counsel may

7  have.  Thank you.

8       THE COURT:  Thank you.

9       Counsel?

10       MS. WERNICK:   Thank you, Your Honor.

11       And before I begin I would be remiss not to

12  reflect on how we came to be here today, which is in large

13  part as a result of the motion to expedite this hearing

14  filed just last week in connection with the motion for

15  summary judgment which HK USA objected to and continues to

16  remain of concern in the course of responding to such an

17  important motion relating to a $37 million asset all in the

18  course of a week.

19       And so while we understand the concerns the

20  trustee has raised with respect to insuring, and we have

21  concerns as well, there's an ongoing objection to having a

22  hearing on such short notice on what is a dispositive issue

23  in this case.

24       THE COURT:  Okay.  But that -- your objection's

25  been overruled.

1        MS. WERNICK:   I understand.

2        THE COURT:  There's a hearing today right now.

3        MS. WERNICK:   Right.  And I understand.

4        THE COURT:  So now is your time to make your

5    arguments, okay.  And you brought the issue before the court

6    by telling the court that you weren't going to -- that there

7    was no -- that there was not going to be any insurance on

8    the boat, on the yacht, after tomorrow.

9        So while I understand your comments, I think that

10    to make the record clear -- you can obviously make any

11    argument that you think is appropriate, but if there isn't

12    any insurance on the yacht, then I would think you would be

13    opening up your own client to causes of action against it.

14        So go ahead.  Proceed.

15        MS. WERNICK:   I understand, Your Honor.

16        And so from an initial place I guess I'd like to

17    begin in response to the notion raised by the trustee that

18    somehow HK USA should not be permitted to relitigate issues

19    that were previously decided by the New York court.

20        And I would take issue with that contention on two

21    fronts, both with the idea that these issues were fully

22    litigated and second, with the idea that HK USA was not a

23    party to the underlying New York action, had an opportunity

24    to litigate these issues at all.

25        The New York proceeding involved the contempt

1    hearing that last just a few hours on Zoom. It's not a

2    sufficient record to strip HK USA from its ownership of a

3    $37 million asset.

4               I agree with counsel on the standard for

5    collateral estoppel that there must be an identity of issues

6    that have been necessarily decided in the prior action and

7    that's decisive of the present action, and that there must

8    be a full and fair opportunity to contest the decision

9    that's now said to be controlling.

10              On both of these issues we respect that the

11   trustee has not made its showing.  And because estoppel

12   places the termination of litigation ahead of insuring the

13   correct result, it's for that very reason why courts are

14   asked to narrowly consider the issue.

15              So to rewind, as counsel did, as a starting place,

16   the New York action involved the breach of contract between

17   the debtor and PAX. It's undisputed that HK USA and Ms. Guo

18   were not parties to that litigation.

19              After summary judgment was entered in favor of PAX

20   and in the context of prejudgment enforcement proceedings,

21   under CPLR 5229 the New York court entered a contempt

22   decision against the debtor.

23              That decision, which considers the issue of

24   contempt, cannot now collaterally estop HK USA from arguing

25   or from establishing that it owns the Lady May.

1          And so that's where I would like to begin because

2     it is clear that the New York proceedings involved an issue

3     of contempt.  And on contempt what the court was asked to

4     consider was whether there was a lawful order of the court,

5     whether it appeared with reasonable certainty that the order

6     had been disobeyed and that the parties to be held in

7     contempt must have had knowledge of the court's order and

8     finally, prejudiced to the right of a party to the

9     litigation that must be demonstrated.

10          None of those factors that were before the court

11     in contempt context raised questions regarding full and

12     final rights with respect to the Lady May.

13          And it's important to have a full understanding in

14     the contest of the CPLR in this motion because it's without

15     question that the CPLR does address and has a procedure in

16     place for the turnover of assets that are in the hands of

17     another, which is CPLR 5225.

18          And in such a proceeding the judgment creditor can

19     initiate an action against a garnishee, in which case the

20     garnishee, or the party in possession of the asset would be

21     a party to that proceeding on notice and being given an

22     opportunity to litigate the issue.

23          That's not what happened here.  The contempt

24     proceeding addressed solely the issue of whether the debtor

25     could be found to be in contempt of the court's order and

1    did not -- certainly did not make a final determination, as

2    counsel now suggests, with respect to the Lady May.

3            And, again, it's clear that the New York court

4    recognized this.  The New York court explains that it was

5    called on to determine whether PAX had carried its burden to

6    hold the debtor in civil contempt.

7            The question of ownership, and certainly a full

8    and final determination of ownership of the Lady May, was

9    not the issue that was before the court.

10           The court inquired as to whether PAX could

11   potentially ultimately levy on the Lady May, but that would

12   have required that step two proceeding under the CPLR, which

13   unequivocally did not happen.

14           And so when counsel suggests that reference to

15   case law surrounding interim or preliminary relief is

16   improper, I would have to push back and really take issue

17   with that because that is all that the finding was in the

18   court's February 9th order.

19           In order for there to have been a full disposition

20   and turnover the Lady May, there would necessarily have had

21   to have been a further proceeding in the New York court,

22   which did not happen.

23           And because a final finding as to the ownership of

24   the Lady Mae was not necessary for the court to issue the

25   final contempt order, any findings around ownership cannot

1   be given a preclusive effect.

2          And I would refer to the court to cases cite in

3   our brief, including *Little Robinson Shoemaker vs.*

4   *Shoemaker*, 309 A.D. 2d 688, which explains a collateral

5   estoppel did not apply or the relevant issue was not the

6   focus of the prior hearing and was not necessarily decided.

7          THE COURT:  Just hold on one second again. Let me

8   just have that cite, please.

9          MS. WERNICK:   Sure.  309 A.D. 2d 688, a First

10  Department decision out of New York.

11         THE COURT:  And what year is that?

12         MS. WERNICK:   2003.

13         THE COURT:  Okay.  Thank you.

14         Go ahead. I'm sorry. I just wanted to make sure I

15  get the cite properly.  I want to hear you.  Because, as you

16  know, we only have audio so it's not as if I can go back and

17  read what you've said, okay?

18         MS. WERNICK:   And so to be clear, the court in

19  issuing the contempt decision in New York did not find that

20  the Lady May was beneficially owned and controlled by the

21  debtor and not by HK USA or Ms. Guo.

22         All that the court found was that the debtor holds

23  a beneficial interest in and could control the Lady May.

24  The court did find that the debtor holds the only beneficial

25  interest in the yacht or that HK USA or Ms. Guo held no

1    interest in the yacht.

2         Again, those are all questions would be

3    potentially considered by the court in a turnover proceeding

4    that did not happen.

5         That being the case, there's certainly no final

6    determination over the ownership of the yacht arising out of

7    the contempt decision that could be given a preclusive

8    effect.

9         With respect to the much hyped participation in

10   connection with the New York action I think, again,

11   revisiting the procedural history is important.

12        On January 14th, 2022 in the exhibit that was

13   referenced in the Vartan declaration as Exhibit 6 or -- I

14   think we used letters.  The appropriate corresponding

15   designation.  The court issued an order on January 14

16   setting up a schedule for a hearing on the issue of

17   contempt.

18        Notably in connection with the schedule it

19   directed the parties to the litigation to submit affidavits

20   in connection with the proceedings by January 28 and

21   provided the parties to the litigation with an opportunity

22   to submit briefing.

23        Now if you look at the New York court docket that

24   was appended to the declaration filed yesterday, it's

25   important to note that the declarations that were submitted

1    in connection with this hearing were not filed by HK USA,

2    were not filed by my office, but were filed by debtor's

3    counsel, because the witnesses were witnesses, Ms. Guo

4    included, that were being put on by debtor's counsel in

5    connection with the hearing.

6          And that's all that they were.  And so it's really

7    a misnomer to characterize Mr. Vartan as having called four

8    witnesses in connection with the hearing.

9          What happened in practice and in reality, he

10   participated in the hearing to defend his clients that were

11   called as witnesses by other parties.

12         Counsel for HK USA did not have an opportunity to

13   present opening statements, as did counsel to the parties,

14   counsel for HK USA did not have an opportunity to cross

15   examine plaintiff's witnesses that were presented during the

16   course of the hearing.

17         When the court called into conference counsel for

18   the parties during the course of the hearings it was to the

19   exclusion of Mr. Vartan, who was not included in those

20   conversations.

21         And the reason for this all is clear. It's because

22   HK USA and Ms. Guo were not parties to the underlying

23   action.  They were merely being called as witnesses in

24   connection with this hearing.

25         And that's significantly important as well, going

1    back to the notion that HK USA and Ms. Guo did not move to

2    intervene in the underlying New York action, nor would they

3    have had any reason to.

4          They appeared in connection with the contempt

5    hearing, and that was the sole issue that was before court.

6    If there was an issue with respect to actual -- and a final

7    determination of ownership, they knew that the CLPR provided

8    for another proceeding where that issue would be determined.

9    This wasn't their forum for raising issues with respect to a

10   final determination of ownership.  They would have another

11   day to do that. The issue that was before the New York court

12   had to do with contempt.

13         And so that being said, HK USA, Ms. Guo, did not

14   have an opportunity to call their own witnesses.  The debtor

15   called witnesses in connection with the hearing.  They

16   didn't have an opportunity to conduct discovery prior to the

17   hearing and they didn't have the opportunity to cross

18   examine witnesses that were brought by plaintiffs.

19         And with respect to the notion of appellate rights

20   raised by counsel, again, we would refer the court to *Bland*

21   *vs. New York*, which is 263 F.Supp. 2d 526, which is an

22   Eastern District of New York case from 2003, which really

23   highlights the importance and the necessary requirement of

24   appellate review in the context of preclusion.  And it's --

25         THE COURT:  Wasn't that case though -- that case

1    that you cited, *Bland vs. New York*, wasn't that because

2    there was -- the prior proceeding was an administrative

3    proceeding and not a proceeding at law and, therefore,

4    collateral estoppel didn't apply because the court found

5    that the prior proceeding, in which there were findings

6    made, was an administrative proceeding and not a legal

7    proceeding?  Isn't that correct?

8         MS. WERNICK:   Well, the importance is that there

9    needs to be an opportunity for a review of the underlying

10   proceeding in order to make sure --

11        THE COURT:  That's not what that case says.  That

12   case says that there wasn't collateral estoppel because the

13   issues were -- regarding discipline by the office of the

14   court's administration because the judge had sexually

15   harassed his secretary.

16        So that case -- I looked at that case.  And so

17   when you say with respect to appellate review, you rely

18   heavily on that case. I'm not persuaded by that case.  So do

19   you have another case?

20        MS. WERNICK:   Sure. I'd also point Your Honor to

21   *Avail vs. Ryder Systems*, which is out of the Second Circuit,

22   which, again, as we noted in our brief, stands for the

23   proposition that a party can't be considered to have full

24   and fair review of an opportunity to litigate an issue of

25   there is an inability to obtain appellate review.

1          And so here --

2          THE COURT:  That, again, involved an arbitration,

3     not a legal proceeding in which a court made findings and

4     issued a ruling which was subject to appeal.

5          MS. WERNICK:   But there the argument is twofold.

6          One, Ms. Guo, as a non-party to the New York

7     action, did not have an opportunity in her own right to

8     appeal.

9          And here in this case, the notion of appellate

10    review, or the availability of appellate review, again, it

11    appears to be a misnomer as the trustee in its papers sort

12    of flouts the idea that they can do what they will with the

13    appeal.

14         But with respect to claims preclusion, there needs

15    to be some assuredness that the underlying decision was

16    rightly and fairly decided, which is not the case without

17    the availability of -- an opportunity to review the matter.

18         THE COURT:  Okay.

19         MS. WERNICK:  And then to also touch upon the

20    notion of a privity relationship between HK USA and the

21    debtor in the New York action is again one that we would

22    submit the trustee cannot show.

23         So first with respect to the notion that their

24    interests were aligned, we would, again, refer the court

25    back to the notion that the proceeding in New York was a

1    contempt proceeding.

2         The debtor's interest in that proceeding was to

3    ensure he didn't go to jail.  On the other hand, HK USA and

4    Ms. Guo have a strong interest in securing their property

5    which, again, they had every expectation to believe that

6    they would have an opportunity to do that in the event there

7    was a turnover proceeding in which they would actually be

8    entitled, upon their request, to a jury trial on that issue.

9         THE COURT:  But that doesn't address the alignment

10   of interest.  You're talking about different issues and I

11   understand that argument.  But what about the alignment of

12   interests.  Ms. Guo's interests weren't aligned with her

13   father's?

14        MS. WERNICK:  They were not the same interests

15   certainly, right?

16        THE COURT:  Well, they have to be aligned.  That's

17   the status, right?  That's the test.  So how were they not

18   aligned?

19        MS. WERNICK:  Because the interest that the

20   debtor is presenting in the New York action is solely for

21   the purpose of avoiding either civil contempt or really

22   criminal contempt to the extent the judge was going to send

23   him to jail for not complying with the court's orders.

24        That's his focus, right?  His focus is pleading

25   the Fifth, so he doesn't have to testify, and ensuring he

1    doesn't go jail.  What --

2            THE COURT:  But didn't he say in that case the --

3    didn't he say that the boat was owned by HK?

4            MS. WERNICK:   Yeah, certainly.

5            THE COURT:  And didn't HK argue the same thing?

6            MS. WERNICK:   Yes.  However --

7            THE COURT:  So how are their interests not aligned

8    then?

9            MS. WERNICK:  Because to the extent that if HK

10   were a party to that litigation or had an opportunity to

11   present its case as a party to the litigation, they could

12   have certainly gone much further and presented additional --

13           THE COURT:  Well, that's a choice HK made.

14           MS. WERNICK:   No, but they didn't make it because

15   they were --

16           THE COURT:  Sure, they did.  They could have

17   intervened.  They could have done 17 different things.

18           MS. WERNICK:   No, because they had an

19   understanding and a right -- a correct understanding that

20   there would be no final determination with respect to

21   ownership arising out of that proceeding.  There couldn't

22   be.  The CPLR provides otherwise.

23           And so why would they intervene in an action that

24   was relating to contempt when there's a whole other

25   procedure to address what they really care about --

1          THE COURT:  Well, they did intervene in that they

2     argued that the asset was attempting to seize upon, right,

3     as part of the judgment, was theirs.  So they did intervene.

4          MS. WERNICK:   Well, they were presented as

5     witnesses, respectfully --

6          THE COURT:  But they didn't have to appear as

7     witnesses.  Did anybody subpoena them?

8          MS. WERNICK:   But as witnesses --

9          THE COURT:  Wait a minute. Answer my question.

10          MS. WERNICK:   Yeah.

11          THE COURT:  Did anybody subpoena them?

12          MS. WERNICK:   I don't have factual knowledge as

13     to that issue.

14          THE COURT:  Okay.  Well, that's relevant, don't

15     you think?  And did Mr. Vartan -- nobody forced Mr. Vartan

16     to file an affirmation in the New York case?

17          MS. WERNICK:   No, but it's not being filed --

18     nothing was filed on behalf of HK USA in its capacity as a

19     litigant, right?  So they're able to provide information in

20     the capacity as witnesses --

21          THE COURT:  Well, you're in -- HK's interest was

22     the same and Mr. Kwok's at that time.  You didn't want PAX

23     to get the yacht, right?  That was the whole thing.  You

24     didn't want PAX to get the yacht.

25          So when you say their interests aren't aligned,

1    I'm having trouble being persuaded by your argument. I

2    understand your argument about two different issues, but I'm

3    not sure I understand your argument about aligning the

4    interest.

5         There's nothing in the record before the court

6    here that Mr. Vartan was obligated to do anything in the New

7    York State Court.  And that choices were made by HK.  Your

8    client is HK and Mei Guo.  You made a choice to file Mr.

9    Vartan's affirmation.  For Ms. Guo to file her affidavit and

10   to testify at that hearing.

11        So I'm just telling you with regard to your issue

12   about alignment of interest, I'm not -- you're not

13   persuading me at the moment, number one.  Number two, the --

14   you know, your office and Zeisler all represent all three

15   parties in this action.  In this case, in the bankruptcy

16   case, Zeisler and Zeisler represents Mr. Kwok, Ms. Guo and

17   HK.

18        You've just joined recently.  I don't know -- I

19   never -- wasn't quite sure why, but maybe the interest is --

20   the reason is to try to show that there isn't some alignment

21   of interest, even though HK voluntarily submitted itself to

22   the jurisdiction of this court and essentially -- not

23   essentially.  And did file a complaint seeking to

24   collaterally attack Justice Ostrager's determination that --

25   you want a declaratory judgment that your clients are the

1    owners of the yacht.

2            Justice Ostrager found that Mr. Kwok has a

3    beneficial interest in and controls the yacht.  Do you agree

4    with that?

5            MS. WERNICK:   That is his words in the order.

6            THE COURT:  Okay.  Then go ahead.  Keep going.

7            MS. WERNICK:   So respectfully, Your Honor, and to

8    address that point, the reason that we're here before this

9    court and not in that separate CPLR proceeding that I

10   referred to, is because the debtor filed for bankruptcy and

11   the actions in New York were all stayed.

12           So now this became the forum for addressing --

13           THE COURT:  Not necessarily.  Not necessarily at

14   all.  It could have been addressed in a different forum.

15           In fact, there was a motion pending from PAX to

16   bring it back to the New York forum and you -- your clients

17   came in and said, no, no.  Let's not do that.  We'll get the

18   boat here.  We'll get the yacht here.  And we'll solve the

19   relief from stay.  That's what your clients argued, not the

20   debtor.  Not the debtor, but your clients argued that in

21   this court.

22           And you commenced this adversary proceeding.  Your

23   clients.  And you -- your firm didn't become part of this

24   until well after -- the adversary proceeding was filed in

25   April of 2022.  And your firm got involved in January, I

1    believe, of this year.

2          So you have to think about what's been said in

3    pleadings filed by your client in this court -- clients, as

4    well as in the court in New York.

5          So you can -- I'm not being persuaded by your

6    argument that there isn't an alignment of interest between

7    Mr. Kwok, and Mei Guo, and HK International.

8          MS. WERNICK:   Okay.

9          THE COURT:  So go ahead.

10          MS. WERNICK:   Yes, and I appreciate -- and then I

11    would just repeat and reinforce our position, for the

12    record, that because the debtor, Mr. Kwok, invoked his Fifth

13    Amendment right and did not present a full defense in the

14    New York action, his interests certainly were not in lock

15    step with HK USA's -- again, the debtor was concerned with

16    protecting his criminal interests and interests in avoiding

17    contempt.  HK USA is interested in ensuring the preservation

18    of its property in the yacht.

19          And then, again, just to comment on the trustee's

20    notion of the close relationship between the debtor and Ms.

21    Guo.

22          Again, I refer the court to the cases cited in our

23    submission that make clear that the familial relationship

24    between two parties is insufficient to establish privity for

25    purposes of preclusion, and that's really all that the

1    trustee offers on that point is the notion that because the

2    debtor and Ms. Guo have a father/daughter relationship, that

3    that additionally bolsters their notion for privity.

4           And, again, I would refer the court to the cases

5    cited, in particularly the *Willsey* case *vs. Strawway*, which

6    is --

7           THE COURT:  You can tell me that one again?

8           MS. WERNICK:  Yes.  It's --

9           THE COURT:  Say the first name of it. I'm sorry --

10          MS. WERNICK:  *Willsey*.

11          THE COURT:  W-O-O --

12          MS. WERNICK:  W-I-L-L-S-E-Y.

13          THE COURT:  Okay.

14          MS. WERNICK:  Versus *Strawway*, S-T-R-A-W-W-A-Y,

15   which is a Supreme Court case available at 255 NYS 2d 224.

16          And so that case the court refused to apply

17   collateral estoppel against a daughter who was the driver of

18   a father's automobile that was involved in the accident,

19   even though the daughter had been a material witness in a

20   prior lawsuit between the father and owner of the other

21   automobile where the daughter's attorney had appeared and

22   examined witnesses in the prior trial.

23          And the court found that the daughter was not

24   precluded from maintaining an action against the other

25   driver because she was not a party to the prior lawsuit.

1    And so different context but very similar set of

2    facts, as we have here.  Ms. Guo was a witness in the prior

3    case in New York.  She wasn't a party to the case.  That's

4    undisputed.

5    She had minimal participation by virtue of

6    appearing as a witness in a few hour proceeding in the

7    context of a five years long litigation, in which case her

8    counsel merely appeared to interpose objections on the

9    record during the course of her cross examination and

10   nothing more.

11   THE COURT:  Well, didn't he file an affirmation

12   before that?  He filed documents.  It wasn't just that he

13   showed up the day of the hearing and asked her questions.

14   Isn't that accurate?

15   MS. WERNICK:  Yes, so in July of 2021 --

16   THE COURT:  Right.

17   MS. WERNICK:  Right, there was an affirmation

18   filed.  But, again, it's in connection with the debtor's

19   opposition to a contempt finding, not as part as any

20   affirmative --

21   THE COURT:  Well, why should she need to file

22   anything on behalf of the debtor's opposition to a contempt

23   filing in July of 2021 when the hearing on the ownership

24   wasn't until February of 2022?

25   MS. WERNICK:  Well, because there was an initial

1    hearing in July.

2            THE COURT:  But she wasn't called at that hearing.

3            MS. WERNICK:   Well, there's nothing inconsistent

4    in providing evidence to the debtor with respect to the

5    ownership issue, but then continuing to argue that there was

6    not an opportunity for our client, HK USA, to be heard as a

7    witness to represent their own interest in the context of a

8    litigation where they were just a bit part in a year's long

9    proceeding.

10           THE COURT:  Okay.

11           MS. WERNICK:   And so with that I would just end

12   by repeating where I began. HK USA, Ms. Guo, were not

13   parties to the New York action.  As Your Honor noted, they

14   had two interactions with the underlying dispute over the

15   course of a five-year history of that litigation.

16           Ms. Guo appeared at the February 2nd, 2022 hearing

17   as a witness for the debtor, did not have the opportunity to

18   cross examine any witnesses, present additional witnesses,

19   provide briefing, appeal any determination of the court.

20           But more importantly I think going back to the

21   first prong is that the issues before this court are simply

22   not the same as the issues that were before the court in New

23   York, in that the court in New York was being asked to

24   consider the issue of contempt, always having an

25   understanding that there would have to be another proceeding

1    on turnover.

2          And the trustee here is simply looking to skip

3    that other proceeding and essentially take dicta in the

4    context of the court's contempt order and make a dispositive

5    finding here, which he cannot do under the law.

6          THE COURT:  Thank you.

7          MR. MORIARTY:  Your Honor, may I just have one

8    moment with my co-counsel before she wraps?

9          THE COURT:  You may have one moment.

10         MR. MORIARTY:  Thank you.

11        (Pause.)

12         MR. BASSETT:  Again, Your Honor, for the record,

13   Nick Bassett, from Paul Hastings, on behalf of the Chapter

14   11 Trustee.

15         Your Honor, I'll try to be hopefully brief in my

16   arguments in response.  I did want to address a couple of

17   the points that came up.

18         The first is I want to address this issue that

19   counsel sort of started and ended with which is the argument

20   that the issues were different.

21         I don't think there is any, again, genuine dispute

22   of material fact as to the position of the trustee that the

23   issues were identical.

24         And I would submit at the outset that the analysis

25   starts and ends with the language that the New York courts

1    specifically put in the orders they issued.

2            Back, again, to the slide, page 3.  And I thought

3    it was rather revealing that counsel did not talk at all

4    about the clear construction of the appellate division in

5    his November, 2021 order, which it said Ostrager is

6    instructed to proceed with an evidentiary hearing to resolve

7    a dispute as to ownership and control of the yacht.

8            And the Justice Ostrager did exactly that in his

9    February 9th decision.  Again, he says pursuant to that

10   appellate court the court scheduled the February 2nd hearing

11   to resolve the issue of whether Kwok beneficially owns and

12   controls the yacht.

13           What counsel would like the court to do is to read

14   some additional language that doesn't exist into the court's

15   framing of the issue to suggest that Ostrager had told the

16   parties in his ruling and that the appellate court had

17   instructed him to find of the debtor held any interest,

18   however small, in the ownership of the yacht.

19           But that is not what the plain language of his

20   decision says.  The issue of whether Kwok -- Kwok, not the

21   daughter, but of Kwok, beneficially owns and controls the

22   yacht.

23           Again, I won't belabor the point but his findings,

24   based on the decision, were completely consistent with that.

25   The issue he was deciding was whether the debtor had some

1    interest, however small, then he would not have found as he

2    did that the daughter's testimony that she owned the yacht

3    cannot be credited whatsoever.

4         He says cannot be credited in any respect.  That

5    means he categorically rejected her argument that she had

6    some ownership interest in the yacht.

7         And, Your Honor, the fact that the issue was

8    presented and decided in this manner is, in fact, consistent

9    with the final contempt issue before the court.

10        I believe counsel framed the issue on contempt as

11   involving several elements, including whether there was a

12   lawful order, whether that order was disobeyed, whether the

13   party disobeying that order had knowledge of it and whether

14   there would be prejudice as a result.

15        And if you look at the submissions of the parties,

16   including the briefing to the appellate division, when they

17   talk about the ownership issue, the reason that was relevant

18   and central to the finding was that it went to the question

19   of prejudice, because the argument was if the debtor does

20   not won the yacht, then how is PAX, a judgment creditor,

21   going to be prejudiced by the yacht moving from the

22   jurisdiction.

23        So the court needed to decide the ownership issue

24   to decide prejudice.  And he wasn't just deciding that the

25   debtor held some interest greater than zero in the yacht for

1    purposes of reaching that decision, because you have to look

2    at what the order was that he was entering, that he was

3    being asked to enter.

4         It was an order not just giving the debtor a slap

5    on the wrist for keeping the yacht outside of the

6    jurisdiction.  He was imposing a $500,000 per day penalty if

7    he did so.

8         What the appellate court recognized, and Justice

9    Ostrager recognized, is that to support that finding it was

10   necessary for him to determine that the debtor, and the

11   debtor alone, owned the yacht, because that is a

12   significant, to say the least, fine.

13        It would have made on sense for Justice Ostrager

14   to support his contempt decision if he had merely decided

15   that the debtor owned, for example, a .01 ownership interest

16   in the yacht, which is what counsel claims was the issue

17   before the court.

18        So the other point they raise about how there

19   would eventually have been a further turnover proceeding in

20   order to determine the yacht's ownership, I agree that had

21   the litigation not been stayed, PAX probably would have

22   moved for turnover.

23        But guess what?  In response to that, they would

24   have said collateral estoppel.  They would have said law of

25   the case.  They would have said Justice Ostrager, you

1    already decided this issue. It's the debtor's property.

2            So there wasn't -- the fact there may have been a

3    later turn over motion doesn't mean that the final prior

4    decision, as made clear by Justice Ostrager in his order,

5    itself has preclusive effect.

6            Just to address  -- I won't spend a whole lot of

7    time on the participation issues because I think the record

8    is undisputed, certainly beyond any genuine dispute as

9    required by Rule 56 for summary judgment, that the counter

10   defendants, HK USA participated extensively.

11           This was already covered during your colloquy with

12   counsel.  Attorney Vartan decided to submit his lengthy

13   affirmation.  They called witnesses.

14           And, again, in addition to that it wasn't just the

15   counter-defendants and HK USA who protected their interest

16   by personally participating in the proceedings.  They had an

17   alignment of interest with the debtor who himself did all

18   the things they claim they couldn't do.

19           He filed a post-trial brief.  He did everything.

20   He argued his case based on their evidence, based on their

21   testimony.

22           So under all the facts and circumstances, which is

23   what a court has to look at in determining whether the

24   litigant to be estopped had a full and fair opportunity in a

25   prior action, I don't think they were could be any question.

1    And this is a perfect case to demonstrate that that element

2    is satisfied.

3            They mention the fact that this is a five-year

4    litigation and they weren't involved until close to the end

5    of -- the issue that we're talking about was the issue that

6    was presented to Justice Ostrager as a result of the March

7    and July, 2021 contempt orders.  And that is the issue in

8    which HK USA and Mei Guo were heavily involved.

9            I'll spend just a couple of moments addressing the

10    issue of whether the pendency of an appeal in New York can

11    defeat collateral estoppel.

12            I think the court was absolutely correct in its

13    assessment of the *Bland* case and other authorities relied

14    upon by counsel for the counter-defendants.

15            Those cases involved administrative proceedings.

16    They involved completely different circumstances where based

17    on, again, all the facts and circumstances they did not

18    apply collateral estoppel.

19            It was not because there was not an opportunity

20    for appellate review.  That's not the way the test works.

21    That's not what those courts decided.

22            And, again, the case law on this is crystal clear

23    in New York.  And I just want to give the court another more

24    recent decision that drives home the point.

25            This is the -- it's a bankruptcy case of a debtor,

1    *Adamo*, in an adversary proceeding *Marini vs. Adamo*.  The

2    case citation is 560 B.R. 642.  This is in the United States

3    Bankruptcy Court, Eastern District of New York decision from

4    2016.

5                THE COURT:  560 B.R. what?

6                MR. BASSETT:  560 B.R. 642.

7                THE COURT:  Okay.  Go ahead.  Thank you.

8                MR. BASSETT:  2016 decision.  If you go to the

9    last page of the decision, it deals with collateral

10   estoppel.

11               Defendant -- and this is a quote, "Defendant's

12   second argument in opposition to the motion is equally

13   unavailing.  Defendant contends that collateral estoppel

14   does not apply because he filed an appeal.  The pendency of

15   an appeal does not preclude application of the doctrine of

16   estoppel.  And it cites cases in support of that conclusion.

17               So I don't think that issue is subject to any real

18   dispute.

19               Your Honor, let me just, with the court's

20   indulgence, check my notes to make sure I had no other

21   points that I wanted to make.

22               One last note that I made is that I think counsel

23   again mentioned the fact that during the hearings before

24   Justice Ostrager they didn't have the opportunity to cross

25   witnesses.

1          I think it's worth the only witness who was

2     presented by PAX was a witness who was authenticating social

3     media posts.  So this is not a situation where PAX paraded

4     an assortment of fact witnesses and they had no ability to

5     cross examine. I don't think that would change anything one

6     iota if that were the case.

7          But I just wanted to point out that that was, in

8     fact, what happened before Justice Ostrager on February 2nd.

9          That's all I have, but I'm, of course, happy to

10    answer any questions the court may have.

11         THE COURT:  Thank you.  I don't have any questions

12    at this time.

13         MR. BASSETT:  Thank you, Your Honor.

14         THE COURT:  Counsel, would you like to respond?

15         MS. WERNICK:   Just briefly, Your Honor.

16         THE COURT:  Sure.

17         MS. WERNICK:   So, again, just to begin, I want to

18    draw the court's attention back to the appellate division

19    decision that counsel just mentioned.

20         And I think it's worth noting to the court that

21    the appellate division in affirming Justice Ostrager's

22    decision noted that the court was in its discretion to hold

23    the defendant in contempt, citing the various prongs of a

24    contempt ruling, including the idea that such a violation

25    resulted in prejudice to plaintiff's rights.

1          And so the idea that that was a necessary finding

2     of there being ownership in connection with central

3     prejudice to PAX's rights in the court below, I think

4     doesn't jive with the court -- the appellate division's

5     decision.

6          And, again, I recognize that the appellate

7     division instructed the lower court to proceed with an

8     evidentiary hearing to resolve a dispute as to ownership,

9     but I don't know if what -- the proceeding that filed is

10    necessarily what the appellate division was contemplating as

11    opposed to a separate proceeding, as I noted that the CLPR

12    would call for with respect to a full determination on

13    ownership involving the party in possession of the asset

14    here, the yacht and HK.

15          THE COURT:  Well, let me ask you a question about

16    that.

17          So you're saying you don't know what the appellate

18    court was -- what it meant when it said conduct an

19    evidentiary hearing.  It could have meant that they wanted a

20    CPLR 5225 hearing to proceed?

21          MS. WERNICK:  I think it's just plausible --

22          THE COURT:  Okay.  So tell me what the difference

23    is then.

24          MS. WERNICK:  Well, a CPLR 5225 proceeding would

25    be a proceeding commenced against HK USA.

1    THE COURT:  Okay.  Well, why wouldn't the

2    appellate court have said that, as opposed to saying I want

3    you to conduct an evidentiary hearing on the issue of who

4    owns the yacht?  Why wouldn't they have said that.

5         I mean, the appellate court knows the CPLR.  They

6    know it, right?  I mean, I would assume they obviously know

7    it.  And they would understand the distinction between that

8    proceeding and HK USA at that time, why couldn't you have

9    started a proceeding under CPLR rules?

10        I'm not saying a 5225 proceeding, but you could

11   have started some proceeding as well if you were concerned

12   about there actually being an evidentiary hearing in which

13   you weren't a party.

14        MS. WERNICK:   Yes, I mean, I think with respect

15   to that, I mean some of that is a bit of speculation and a

16   matter of retrospect in the manner in which things have

17   since played out.

18        But I think the notion is that that as I said in

19   the initial presentation there wouldn't have been a reason

20   for HK USA to intervene in the PAX litigation, since it had

21   a full and fair expectation of there being some other

22   proceeding involving them if there was going to be a

23   question of turnover, which the trustee is now asking for

24   here.

25        And I think just from a plain reading of the

1   appellate division's decision, I think there is certain

2   ambiguity in the decision, but leads to a fair conclusion

3   that if there was going to be a determination as against HK

4   USA, that they would have to have been involved in that

5   proceeding as something other than a mere witness.

6        And so, again, just to comment on counsel's

7   remarks regarding the full participation of HK USA and the

8   New York proceeding, again, I think the entirety of the

9   contempt hearing occurred over the matter of a few hours.

10       There was, you know, maybe two hours of testimony

11   on this issue and certainly -- I mean, I remember I was here

12   I guess just ten days ago in connection with the PJR

13   application, where counsel came in with boat loads of

14   documents and information ready to present on the underlying

15   issues, which surely would be much more than the record that

16   was before the court in New York in order to make a

17   substantive decision on this very significant asset.

18       THE COURT:  Okay.  Anything further?

19       MS. WERNICK:  And then just on the issue of

20   appellate review, not to just go back and forth with case

21   citations, but I would also refer the court to *Gelb vs.*

22   *Royal Globe Insurance Company*, which is 798 F.2d 38.

23       THE COURT:  I think I did see that case.  It was a

24   criminal case, right?

25       MS. WERNICK:  It involved an underlying criminal

1   conviction,  correct.

2          THE COURT:  All right.  Anything further, counsel?

3   No?  Okay.

4          MR. BASSETT:  No, Your Honor.

5          THE COURT:  All right. With regard to the

6   emergency motion for an order that the trustee has filed

7   with regard to the repair reserve for the insurance and

8   other payments, Mr. Bassett, are you prepared to discuss

9   that at the moment, or who's going to --

10          MR. BASSETT:  The Trustee's going to address that,

11   Your Honor.

12          THE COURT:  Okay.  Trustee Despins.  And Mr.

13   Moriarty, you're going to address that issue?

14          MR. MORIARTY:  I will, Your Honor, although my

15   understanding of that motion is that it's contingent upon

16   the court's ruling on the summary judgment motion and it may

17   be that depending on how the court rules on the summary

18   judgment motion, we may be able to reach agreement on that

19   motion.

20          THE COURT:  You may be able to reach an agreement?

21          MR. MORIARTY:  Yes.

22          THE COURT:  What does that mean?  What kind of an

23   agreement?

24          MR. MORIARTY:  I would have to speak with the

25   trustee about a proposed order, depending on --

1   THE COURT:  Why couldn't you reach the agreement

2   regardless?  You can't have a boat -- a yacht without

3   insurance.

4         Your own motion that you withdrew, the motion to

5   modify, I looked at it again, okay.  And in that motion you

6   have an extensive attachment, breakdown line by line, about

7   how all the monies were going to be spent, which included

8   over $100,000 for payment of insurance.

9         So HK, until you withdraw the motion after

10  consenting to the entry of the PJR and the preliminary

11  injunction, your own client's position was that the

12  insurance needed to be paid.

13        MR. MORIARTY:  I agree with that, Your Honor.

14        THE COURT:  And Mr. Despins is in control of the

15  funds.  And that was on consent. Mr. Despins holds the

16  funds.

17        How could it be prejudicial to your client to have

18  the funds spent in the manner in which you wanted -- your

19  client wants those funds spent until it decided to withdraw

20  the motion, which was supposed to be heard last week.  We

21  were going to have an evidentiary hearing on that motion, as

22  you recall.

23        So how would that prejudicial to your client,

24  regardless of what the ruling is on summary judgment?

25        MR. MORIARTY:  Your Honor, if the court grants the

1    trustee's summary judgment motion, the trustee takes title

2    to the Lady May, the repair reserve is part of that broader

3    escrow.  The escrow was $37 million that was loaned to HK. I

4    understand that the Department of Justice, the SEC and the

5    trustee may have different views on that, but as of right

6    now there is a $37 million loan made to HK --

7              THE COURT:  But you've agreed and consented to $4

8    million of it going -- being held by the trustee in this

9    repair reserve.

10             MR. MORIARTY:  Correct.

11             THE COURT:  So I understand your argument about

12   the loan. I'm not getting involved in the loan right now,

13   right?

14             What I'm asking you is regardless of how I rule on

15   summary judgment, how would it be prejudicial to your client

16   to have -- your clients, to have the trustee spend the money

17   in the same way you propose to spend -- you propose that it

18   be spent a few weeks ago.

19             MR. MORIARTY:  So, Your Honor, it probably

20   wouldn't be prejudicial.

21             THE COURT:  Okay.  Good.

22             MR. MORIARTY:  My point is --

23             THE COURT:  It doesn't matter.  Then why aren't we

24   agreeing to it.

25             Even if the insurance is obtained in the name of

1    HK for the benefit of the trustee, why are we arguing about

2    it?

3            MR. MORIARTY:  Your Honor, if the trustee takes

4    title to the boat this money, which as of right now is HK's

5    money because it took the loan --

6            THE COURT:  Well, it's subject to a prejudgment

7    remedy right now and a preliminary injunction, right?

8            MR. MORIARTY:  Correct.

9            THE COURT:  Okay.

10           MR. MORIARTY:  But it's still HK's property,

11   regardless of whether it's attached.

12           THE COURT:  It may be.

13           MR. MORIARTY:  The attachment doesn't affect HK's

14   property rights. It just affects HK's ability to deal with

15   the property and to dissipate the property.

16           So as of right now that's HK's property.  If title

17   passes to the trustee, then the trustee is using HK's

18   property to maintain an asset of the estate.

19           So all that we would be asking for is that the

20   order protects HK's rights so that if in the future this

21   court or another court of competent jurisdiction finds that

22   those funds are HK's, then HK would have a right to recoup

23   the money that the trustee has spent to maintain an estate

24   asset.

25           THE COURT:  Well, how would that right go away,

1    even if he did spend it?  Even if he did spend it, how would

2    -- there's nothing that would say your right of recoupment.

3    Where under the law would your right of recoupment go away,

4    if you're right, if you prevail?

5              MR. MORIARTY:  It may not, Your Honor, but all

6    that I'm saying is that we would want some specific language

7    in an order, which I think we could work out, that

8    specifically provides for that so that we're not --

9              THE COURT:  Well, my point is this, counsel. I

10   hear you, but even if I don't rule on summary judgment

11   today, why wouldn't you be able to do what you're talking

12   about?  I don't understand why that can't be accomplished.

13             MR. MORIARTY:  It probably could be, Your Honor --

14             THE COURT:  Okay.  Good.  Well, then we're going

15   to take a recess and you're going to accomplish it.

16             MR. MORIARTY:  Okay.  But --

17             THE COURT:  Because it doesn't make any sense.

18   What are going to fight about?  Your clients in pleadings

19   before this court said we need to spend this money.  And

20   we've been talking about spending the money for the reserve

21   for months now, back to November or December or something. I

22   don't recall at the moment, but for several months now.

23             And the parties have seemed to work to -- not

24   necessarily on all fours, but that things have to get paid

25   and we were taking it in certain steps, right?  We were

1    taking it incrementally.

2              But the problem now isn't an incremental problem.

3    If your client -- you talk about your property, right?  Your

4    client's property.  Why would you want to have your client's

5    boat -- yacht, exposed to the world without insurance? I

6    just can't understand that.

7              MR. MORIARTY:  We don't, Your Honor.

8              THE COURT:  Then work out a deal.  The money's

9    there.  You asked for the same amount of money the trustee's

10   asking for.

11             MR. MORIARTY:  Correct, Your Honor.  We did at a

12   time when my client owned and had title to the boat.

13             My only point is if title passes, we just want to

14   make sure that we have rights in the event that this money

15   is determined to be HK's at some future point.

16             THE COURT:  Well, I'm going to give you the

17   opportunity to have that discussion with the trustee right

18   now.

19             MR. MORIARTY:  Thank you.

20             THE COURT:  Okay?  Because I don't see any reason

21   why we're going to sit here and have an argument about

22   release of the funds when it's clear that the boat -- the

23   yacht has to be insured. It has to be insured.  I don't know

24   why you would open up your clients to a cause of action that

25   they failed to insure it.

1          I mean, I can't understand that.  So I can't

2    believe that you're actually doing that so I think that you

3    just need to work out a deal with regard to the money so

4    that the insurance can be obtained and that there's

5    insurance that covers the yacht.  I think that clearly needs

6    to happen.

7          And it would have happened -- I mean, we were

8    supposed to have that evidentiary hearing last week, but you

9    chose -- and that's your choice.  But you made a choice to

10   withdraw that motion.  Okay.  So that motion was withdrawn.

11   But it still doesn't change the fact that the yacht needs to

12   be insured, whether you own it or the trustee owns it.

13          I agree, Your Honor.  And I frankly don't know

14   what the relief would have been on that motion because the

15   trustee did oppose that motion and now he's asking for the

16   same relief, but I agree with the court and I hear the

17   direction, and we will work it out.

18          THE COURT:  Okay.  Thank you.  So then --

19          MR. DESPINS:  So --

20          THE COURT:  Yes, Trustee Despins.

21          MR. DESPINS:  Your Honor, I hate to say it like

22   that, but we have an expert that's working with us on

23   getting insurance and the feedback we got is we cannot get

24   insurance unless we have title.

25          THE COURT:  I understand all that. I'm not

1    disputing what you're saying to me, okay.  But I'm also

2    saying I'm not going to have an argument of an hour and a

3    half about whether money should be spent and by whom.

4            MR. DESPINS:  Agreed, Your Honor.

5            THE COURT:  Okay.  Because it clearly needs to be

6    spent.  There's -- no one can dispute that.

7            So what I'm going to do is I'm going to take a

8    recess until 2:00 p.m.  I'd ask the parties to have a

9    discussion about the expenditure of the funds to obtain the

10   insurance and possibly the other items, such as pay the

11   crew, and the other things that are in the motion.

12           And then I'm going to go back. I have to look at -

13   - you've both cited some new case law.  I haven't looked at

14   it. I need to look at that and then we'll come back at 2

15   o'clock and we'll see where things stand.

16           But I do think that the issue of -- I just -- the

17   trustee is in control of the reserve -- repair reserve. I

18   understand your argument, Mr. Moriarty. I do.  About at one

19   point they're objecting. Now they're asking for the same

20   thing.

21           But you're objecting to what they're -- we keep

22   going back and forth.  The long story short is your client

23   wanted that money spent to protect what it believes is its

24   asset. It says it's his asset.  So then let's spend it.

25           There is no way that this court is going to go

1  forward without the insurance being obtained however it

2  needs to be obtained.

3         Now you say you want to make sure that if the

4  title passes you have recoupment rights. I don't know how --

5  I don't know where in the law you don't have whatever rights

6  you claim you have.

7         But that's something you can all talk about, okay?

8         MR. MORIARTY:  Thank you, Your Honor.

9         THE COURT:  All right.  So then court is in recess

10  until 2:00 p.m.

11         MR. DESPINS:  Thank you.

12         (Recess from 12:51 p.m. until 2:19 p.m.)

13         THE COURT:  Okay.  Before we took a recess we were

14  discussing the issues about the monies in the repair reserve

15  and if the parties would discuss any possible agreement or

16  resolution with regard to the repair reserve, specifically

17  with regard to the obtaining of insurance to insure the Lady

18  May and then also with regard to other costs associated with

19  the maintenance of the yacht.

20         So Trustee Despins, Attorney Moriarty, did you

21  have any discussions during the break.

22         MR. MORIARTY:  We did, Your Honor. I actually had

23  brought with me to court today a markup of the order that

24  was -- proposed order that was filed with Trustee Despins's

25  motion.  I gave them my redline.  They gave me back some

1    comments and I would say 98 percent of this is done.

2            There's one thing that I just need to confirm with

3    my office that I haven't been able to do yet, so what I will

4    represent to the court and say to the court is the -- HK has

5    no objection to the entry of or -- let me back up.

6            HK has no objection to the trustee's motion and

7    does not oppose entry of an order permitting the trustee to

8    use up the $500,000 from the repair reserves with an agreed

9    upon order to follow.

10           THE COURT:  Okay.  Trustee Despins?

11           MR. DESPINS:  That's correct, Your Honor. I think

12   we're fairly comfortable that we'll have a consensual order

13   in a few hours.

14           THE COURT:  Okay.  So is the consensual order

15   going to say that title to the Lady May is in the name of

16   the estate of Ho Wan Kwok?

17           MR. MORIARTY:  It is not, Your Honor, which is the

18   reason why I initially said --

19           THE COURT:  I understand.

20           MR. MORIARTY:  -- the second order is based on the

21   summary judgment rule.

22           THE COURT:  Okay. I understand. All right.

23           Anything further on summary judgment?

24           MR. MORIARTY:  No, Your Honor.

25           THE COURT:  All right.  During the recess the

1    court went and reviewed certain documents, including -- and

2    cases that were cited by the parties during oral argument

3    and reviewed the pleadings submitted by the parties and the

4    pleadings in -- that include pleadings in the main Chapter

5    11 case of Mr. Kwok and in the action that PAX commenced

6    against Mr. Kwok in the New York State Court that was one of

7    the reasons the debtors -- debtor, Mr. Kwok, indicated he

8    had voluntarily commenced this Chapter 11 case and had come

9    to this court to seek relief under the bankruptcy code.

10          With regard to the motion for summary judgment

11   that's before the court today, ECF No. 146, the court's

12   reviewed the positions of the parties and listened to the

13   oral arguments made today during the hearing on the motion

14   for summary judgment.

15          Upon review of the first counterclaim of the

16   Chapter 11 trustee, which is contained in ECF No. 36, the

17   first counterclaim in that pleading filed by the trustee is

18   entitled Lady May is Property of the Debtor.

19          And in the -- I'm -- I think it's only less than

20   ten paragraphs of that pleading, but I will look right now.

21      (Pause.)

22          The first counterclaim appears on page 58 --

23   begins on page 58 of ECF 36.  Actually, it's only seven

24   paragraphs, the counterclaim.

25          And obviously it does incorporate and realleges

1    facts in prior complaint -- in prior paragraphs of the

2    document but paragraph 106 says that in the final contempt

3    decision Justice Ostrager found that the debtor beneficially

4    owns and controls the Lady May.

5            And then paragraph 107 states that Justice

6    Ostrager's finding with respect to the debtor's ownership of

7    the Lady May was preclusive in effect and HK USA is

8    collaterally estopped from contesting that issue.

9            Paragraph 108 states that New York issue

10   preclusion law is applicable, given that the findings in the

11   final contempt decision were made by a New York court.

12           The next paragraph, 109, says under New York law

13   collateral estopped bars relitigation of an issue when the

14   identical issues necessarily was decided in the prior action

15   and is decisive of the present action and the party to be

16   precluded from relitigating the issue had a full and fair

17   opportunity litigate the issue in the prior action.

18           And there's a cite to Plymouth Venture Partners

19   II, LP vs. GTR Source, LLC, 988 F.3d 634, 642 Second Circuit

20   2021, applying New York law.

21           So when the court -- and he parties have agreed,

22   both counsel for the trustee and counsel for HK USA, that

23   the test that the court has to apply in determining whether

24   collateral estoppel applies in this adversary proceeding is

25   the test that I just read into the record and that is stated

1    in *Plymouth Ventures*, which is the identical issue

2    necessarily was decided in the prior action and is decisive

3    of the present action and the party to be preluded from

4    relitigating the issue had a full and fair opportunity to

5    litigate the issue in the prior action.

6          So the court has gone back and reviewed these --

7    the two factors and as I said, the parties agree that they

8    apply, but how those factors apply, the parties are not in

9    agreement with regard to their application.

10         So with regard to the first factor, the identical

11   issue was necessarily -- was decided in the prior action and

12   is decisive of the present action, there really are the two

13   components to that.  It has to be the identical issue was in

14   both cases and that it was necessarily decided in the prior

15   case.

16         The identical issue in this case, there's a

17   disagreement about what it is, although not a complete

18   disagreement.  The argument made by the trustee is that the

19   identical issue in this case that is decisive of the summary

20   judgment motion on the first counterclaim is that the Lady

21   May is property of the debtor's, Mr. Kwok's Chapter 11

22   estate.

23         HK argues that while that issue was addressed in

24   the prior litigation, the issue was in the prior litigation

25   an issue of contempt and not the ownership of the Lady May.

1    The court agrees with the trustee that the issue

2    that is decisive of the summary judgment motion in the

3    present action is the identical issue that was necessarily

4    decided in the prior action.

5    The arguments made by HK USA that the appellate

6    court direction to Justice Ostrager was possibly not clear

7    are not persuasive.

8    If we look at the appellate court's direction to

9    Justice Ostrager, which is at Exhibit 15 attached to ECF

10   150, which is the Bassett declaration, the appellate court

11   says, and I quote, "The motion court is instructed to

12   proceed with an evidentiary hearing to resolve a dispute as

13   to the ownership and control of the yacht, and to assess

14   appropriate penalties."

15   Therefore, this court finds that the issue -- the

16   identical issue that was necessarily decided on direction

17   from the appellate court, which Justice Ostrager did decide

18   in his opinion of February 9, 2022 -- I believe, I'm correct

19   on that date, was the ownership of the Lady May.

20   And so the identical issue that was necessarily

21   decided in the prior action by the New York State Court is

22   decisive of the present action and that part of the first

23   factor is met, as is the second part of the first factor,

24   which is it was necessarily decided in the prior case.

25   I'm just looking for the reference to -- and I

1   will find it.  The Justice Ostrager opinion is Exhibit 18 to

2   ECF 150, the Bassett declaration?

3        (Pause.)

4            MR. MORIARTY:  That's correct, Your Honor.

5            THE COURT:  And the language -- there's several

6   portions in the decision that the court will refer to at

7   different points and that have been referred to by both

8   parties during the oral argument.

9            But Justice Ostrager found after conducting the

10  hearing that he was required to conduct by the appellate

11  court in entering a final order of civil contempt, which is

12  what Justice Ostrager's opinion says.  And so it wasn't a

13  situation where this wasn't a proceeding that was some

14  preliminary step in the litigation.

15           Justice Ostrager found that the proceedings

16  established, among other things, that Kwok exercised

17  dominion and control over the Lady May and that resulted in

18  a series of orders restraining Kwok, and or the registered

19  owners of the yacht called Lady May, from removing the Lady

20  May from the court's jurisdiction.

21           The first such order was issued in September 30,

22  2022 -- I'm sorry. I read that wrong.  Issued on September

23  30, 2020, which the court finds was well in excess of

24  February 9, 2022, and described -- as described in greater

25  detail in Justice Ostrager's opinion, which was followed by

1    an October 15, 2020 order that restrained Mr. Kwok, and/or

2    the registered owners of the yacht, the Lady May, from

3    leaving the jurisdiction.

4           So as early as September 30, 2020 and then

5    subsequent orders issuing as well, the registered owner of

6    the Lady May was served with orders restraining Mr. Kwok

7    and/or the registered owners from leaving the jurisdiction.

8           No actions were taken that the court is aware of

9    by the registered owners in the action in front of Justice

10   Ostrager to either vacate or set aside a temporary

11   restraining order that clearly restrained them, the

12   registered owners, meaning HK USA and Ms. Guo, from removing

13   the yacht from the jurisdiction of the New York court.

14          In addition, Justice Ostrager states in his

15   opinion the testimony adduced at the hearing, out of the

16   mouths of the defendant's witnesses, clearly and

17   convincingly demonstrated that Kwok beneficially owns and

18   controls the Lady May and has utter contempt for this court

19   and the judicial process.

20          Justice Ostrager goes on to say the testimony

21   adduced at the hearing established that in 2014 Kwok

22   transferred a 100 percent interest in HK International to

23   one Qu Guo Jiao for no consideration. Ms. Qu was a trusted

24   business associate of the Kwok family.

25          Thereafter, Kwok fled China and on February 23rd,

1    2015 HK International purchased the Lady May for 28 million

2    pounds.

3         No testimony adduced at the hearing established

4    the source of funds to purchase the Lady May, but the

5    uncontradicted testimony of Kwok's daughter, Mei Guo,

6    established that Ms. Qu did not provide the funds to

7    purchase the yacht.

8         Consequently, a reasonable inference is that Kwok

9    provided the funds to HK which were used to purchase the

10   yacht.

11        It is undisputed that Ms. Qu transferred the

12   ownership of the Lady May to Kwok's daughter, Mei Guo, on or

13   about June 17, 2017 for $1 or no consideration.

14        Ms. Guo ultimately transferred ownership of the

15   Lady May to the current title holder, HK USA.  Ms. Guo

16   further avers that she's the sole owner of HK USA, although

17   all of the multi-million dollar annual expenses for the Lady

18   May, including, fuel, maintenance and the captain and crew

19   are paid by Golden Spring (New York) Ltd.

20        Ms. Guo acknowledged that she was aware of both

21   this court's September 30, 2020 restraining order and this

22   court's subsequent March 16, 2021 order directing that the

23   Lady May be returned to the court's jurisdiction.

24        Justice Ostrager furthers stated on page 8 of his

25   decision that Kwok has much more than a beneficial interest

1    in the Lady May.  Not only does he control the yacht, it

2    appears he provided the funds to purchase it and he is the

3    person who principally enjoys the use of the yacht.

4         Justice Ostrager then says on page 9, the evidence

5    clearly and convincingly demonstrates that Kwok holds a

6    beneficial interest in and controls the Lady May.

7         The court finds Ms. Guo's testimony was not only

8    internally inconsistent and dissembling, but also

9    significantly undermined by the Captains Heaslop and Ivanov

10    and Mr. Stockil, who stated they have never taken yacht

11    related direction from Ms. Guo in the four and a half years

12    that she directly or indirectly held title to the yacht.

13         So the court finds for the reasons that have been

14    stated already on the record and with regard to the

15    statements in Justice -- and findings in Justice Ostrager's

16    opinion that the first factor of collateral estopped that

17    the identical issue necessarily was decided in the prior

18    action and is decisive of the present action has been met.

19         The court also finds that it's clear from New York

20    law when there is an appeal pending, the ruling that is on

21    appeal can have collateral estoppel effect and that the

22    cases cited by HK to attempt to argue that there is no

23    collateral estoppel effect are not applicable and are not

24    persuasive in this case.

25         With regard to the second factor, the party to be

1    preluded from relitigating the issue had a full and fair

2    opportunity to litigate the issue in the prior action.

3         All -- both parties agree -- the Chapter 11

4    trustee and HK International and Mei Guo, that HK and Mei

5    Guo were not parties to the PAX litigation before Justice

6    Ostrager.  And the court finds that to be true, that they

7    were not parties.

8         With regard to the factors, the full and fair

9    opportunity to litigate factors, there are, again, two parts

10   to the factor.  The privity with the party against whom the

11   judgment has been rendered, the interests aligned test, that

12   we've address already this morning during oral argument and

13   the realities of the litigation and the opportunity to fully

14   and fairly litigate that litigation.

15        With regard to this prong of the test, the court

16   notes the case of *Schwartz vs. Public Administrator of the*

17   *Bronx*, which established the modern rule of collateral

18   estoppel and it states unequivocally that it is a non-

19   movant's burden to prove lack of full faith and opportunity

20   should the movant prove identity of the issues.

21        And in this -- I've already found that the trustee

22   has proved the identity of the issue and under

23   (indiscernible)  this burden remains on the non-movant,

24   although the trustee must make an initial showing, which the

25   court has found that the trustee has done.

1        So, therefore, HK USA and Mei Guo have the burden

2    in this case, under this factor, to prove a lack of full and

3    fair opportunity to litigate the issue that was the -- the

4    identical issues that was necessarily decided in the prior

5    action and is decisive in this action.

6        The court finds that HK USA and Mei Guo have not

7    met their burden with regard to the second factor.  HK

8    argues that Mr. Kwok took the Fifth Amendment, or invoked

9    his right against self incrimination, and that does not make

10    him in privity with HK USA and Mei Guo.

11        However, Mr. Kwok argued, as noted by the court

12    this morning during questioning of HK's counsel, that Mr.

13    Kwok filed documents and pleadings in the New York

14    litigation, asserting that HK owned the boat -- the yacht.

15    And that in so doing he was aligning his interests with the

16    interests of HK USA and Mei Guo.

17        As noted, both parties argued strenuously in front

18    of Justice Ostrager that HK USA was the owner of the boat

19    and both parties wanted that finding to be made by the New

20    York court so that the yacht would be outside of the reach

21    of PAX as part of its post-judgment proceedings.

22        In addition, HK USA made arguments in their papers

23    and in oral argument this morning that talks about -- that

24    says that just because the --  Ms. Guo and Mr. Kwok are

25    father and daughter, that there can't be any privity because

1    of that relationship.

2              But that's not what the trustee argued in

3    connection with this element.  The trustee was not arguing

4    just because Ms. Guo and Mr. Kwok are father and daughter.

5    That equals privity.

6              The argument was much broader than that by the

7    trustee and supports a finding that there is an alignment of

8    interest and there was an alignment of interest between Ms.

9    Guo, HK USA and Mr. Kwok at the time that the Justice

10   Ostrager decision was issued on February 9, 2022 and prior

11   to that time, that is what Justice Ostrager found, because

12   they both -- both sides, both the father and the daughter

13   though -- individually and through the corporate entities

14   wanted to keep the Lady May out of the reach of PAX.

15             With regard to the second part of the full and

16   fair opportunity to litigate prong, the cases in New York

17   and that are recognized applying this law -- the law under

18   New York law with regard to collateral estoppel say that the

19   court needs to look at the realities of the litigation.

20             And the reality of the litigation in New York

21   State Court is that as early as September 2020, Justice

22   Ostrager was issuing temporary restraining orders against

23   both Mr. Kwok and the record owners of the Lady May.

24             There is nothing in the record before this court

25   that demonstrates that HK USA or Mei Guo sought to vacate,

1    modify or set aside any of those temporary restraining

2    orders.

3          The record in this court through Justice

4    Ostrager's opinion demonstrates that Mei Guo was aware of

5    the temporary restraining orders that were issued in

6    September, 2020 and October, 2020 and that, again, there's

7    nothing in the record to indicate that there was any attempt

8    to set aside those restraining orders.

9          In addition, the record in this court establishes

10   that in July of 2021 Attorney Vartan filed an affidavit in

11   opposition to PAX's motion for a final order of contempt and

12   in that declaration -- affidavit, Attorney Vartan stated

13   that he was filing this document on behalf of HK

14   International because the property interests of HK

15   International were being affected by the final contempt

16   motion.

17         Now the parties have argued and HK and Mei Guo's

18   counsel have admitted several times on the record that HK

19   USA and Mei Guo are one and the same.

20         And so with regard to the issue of civil contempt

21   as to Kwok and HK USA asserting in July of 2021 that their

22   property rights were being affected by the final contempt

23   motion, also established that they had a full and fair

24   opportunity to litigate and chose not to in the New York

25   action.

1          Finally, as I may have already said, but I will

2     say this again, Justice Ostrager's ruling was not a

3     preliminary ruling, although HK USA argued that it was and

4     that the appellate court's ruling might be ambiguous and I

5     find that that argument is not persuasive.

6          The appellate court's ruling was very clear.  The

7     appellate court said -- I have to find it.  I think it's

8     Exhibit 15, but maybe I'm wrong. It might be Exhibit 7.  No.

9     Give one moment, if you'll bear with me.

10          Yes, the appellate court said in Exhibit 15,

11     that's attached to the Bassett declaration, ECF 150, that

12     the motion court is instructed to proceed with an

13     evidentiary hearing to resolve a dispute as to ownership and

14     control of the yacht, and to assess appropriate penalties.

15          So this court finds that there was no ambiguity in

16     what the appellate court was directing Justice Ostrager to

17     do and that Justice Ostrager did so when he conducted a

18     hearing, an evidentiary hearing on the ownership of the Lady

19     May and ruled on the ownership on February 9th, 2022.

20          With regard to any further arguments about not

21     being able to appeal or participate in the litigation in the

22     Connecticut -- I'm sorry, in the New York State Court, I

23     find that the arguments that HK advanced are not persuasive.

24          New York law provides that if a party is in

25     privity with another party it does not matter who controls

1       the appeal and that different things could have occurred for

2       HK to exercise its rights in that New York State litigation

3       and it chose not to do so.

4                However, it came before this court voluntarily

5       when it was not a debtor and it had sought to stop PAX from

6       obtaining relief from the stay to go back to the New York

7       State court to continue with the action in front of Justice

8       Ostrager.

9                And HK affirmatively decided in this case, in this

10      bankruptcy court, to bring a cause of action to determine

11      the ownership of the Lady May even though that determination

12      had already been made by Justice Ostrager in the New York

13      court action.

14               The arguments that Attorney Vartan was only

15      involved for a little bit and was only there at a three-hour

16      hearing are also unpersuasive.

17               As noted on the record, Attorney Vartan filed a

18      declaration affirmation in July of 2021. His clients knew of

19      the temporary restraining orders back to September of 2020.

20               And as noted, Attorney Vartan's filing says that

21      the action in the New York State court with regard to PAX's

22      attempts to execute on a judgment and seize assets were

23      affecting his clients right and property rights with regard

24      to the yacht.

25               So for all of those reasons the court grants the

1    motion for summary on the first counterclaim that is set

2    forth in ECF 36.

3              It is likely that this ruling will be supplemented

4    by a written ruling and that may take a day or so, or

5    probably more than that because we have other matters to

6    address in other cases this week.

7              But this ruling is so ordered as of 2:55 p.m. on

8    March 27th, 2023, even if a written ruling does not issue

9    for a few days.

10             Mr. Despins, your proposed order that was

11   submitted -- I have to find it. I have here it here

12   somewhere.

13             MR. DESPINS:  I have extra copies, Your Honor.

14             THE COURT:  I have it.  Thank you. I just need to

15   find it.  Here it is.

16        (Pause.)

17             MR. DESPINS:  We probably should add something

18   that says and for the reasons stated on the record by the

19   court, or something like that.  We don't have that.

20             THE COURT:  Again, I still may supplement this

21   with a written decision, but this order is going to enter

22   effective, as I said, 2:55 p.m. on March 27th, or whatever

23   time I said. I think that's the time I said.

24             And the -- opposing counsel has a copy of the

25   order.  Mr. Despins --

1      MS. WERNICK:   It was electronically filed.

2      THE COURT:   Yes.   Do you have the -- did you give

3  them the version that also has the -- you know, the redline

4  or whatever.

5      MR. DESPINS:   It should be the last few pages.

6      THE COURT:   The last few pages.

7      MR. DESPINS:   12 out of 13.

8      THE COURT:   Page 12.   I mean, page 11 is the

9  caption, but then you turn to page 12.

10      Do you both see where I am on page 12?

11      MR. DESPINS:   Yes, Your Honor.

12      THE COURT:   Okay.   Mr. Despins, so this is -- I'm

13  going to make a few changes to this order but it's because

14  what I think the order should say.   And they're not

15  substantial but they're -- they -- my changes are using the

16  language from the statute, okay?   From 541 and 542, all

17  right?

18      So in addition to the fact that probably above

19  paragraph one, before it says it is hereby ordered, it will

20  probably say for the reasons stated on the record, okay?

21  And then there'll be some -- I'll say effective as of

22  whatever time I said on the record, which I think was 2:55

23  but the courtroom deputy will help me with that.

24      Paragraph 3, the second sentence.   In particular

25  the order should read -- it should say in particular the

1    Lady May is property of the Chapter 11 estate of Ho Wan Kwok

2    pursuant to Section 541 -- 11 USC Section 541.

3            Furthermore, pursuant to 11 USC Section 542, I

4    think you defined -- I think -- well, maybe you didn't yet.

5    Let me see.

6            So then pursuant to Section 542, HK USA and Mei

7    Guo shall deliver to the trustee the Lady May and it will

8    say, who is the trustee of the estate for Ho Wan Kwok, all

9    right?

10           And on paragraph 4 -- I don't have to make any

11   changes. Paragraph 5, the second line, instead of surrender,

12   shall deliver.  The statute requires delivery, not

13   surrender.  And delivery, in my opinion is more of an

14   affirmative -- an act than surrendering, okay.

15           And then I will add some -- and all the rest of it

16   I have no changes to, except that I'll add something about

17   the time.

18           Does anyone have any questions?

19           MR. DESPINS:  Yes, Your Honor.  This is plumbing

20   and I'm not anxious to have my name on any order but for

21   insurance purposes and for registration purposes, if we just

22   say the estate of Ho Wan Kwok, that's going to make it

23   harder mechanically, as opposed to saying in my name as

24   trustee for the estate of Ho Wan Kwok.

25           THE COURT:  Okay.  So tell me what you want it to

1    say then.

2              MR. DESPINS:  Well, I think we -- in particular

3    the sole owner of the Lady May is Luc Despins, as the

4    Chapter 11 Trustee for the estate of Ho Wan Kwok.  So we

5    already have that language there.

6              I think it's important to have an individual name

7    so that he can -- also we can keep property of the estate of

8    Ho Wan Kwok, but the sole owner for purpose -- I think it

9    would be better to have my name there, as trustee, of

10   course.

11             THE COURT:  That's going to make it easier for

12   you to obtain insurance?  Is that --

13             MR. DESPINS:  Also to register the boat wherever

14   we need to register it.

15             THE COURT:  Counsel, do you have any response to

16   Trustee Despin's request with regard to the language, in

17   particular the sole owner of the Lady May is?

18             MR. MORIARTY:  No, Your Honor.  The only thing

19   that I would point out is in paragraph 5 it says and all

20   assistance reasonably necessary.  We have no intention of

21   doing anything to prevent the trustee from --

22             THE COURT:  I'm sorry. I couldn't hear you,

23   Attorney Moriarty.  Can you say that again?

24             MR. MORIARTY:  Sure.  So paragraph 5 says that it

25   require HK and Ms. Guo to deliver the Lady May and provide

1    any and all assistance reasonably necessary.  We will

2    provide the trustee with the assistance that we can provide.

3              If there's something that we can't do, obviously,

4    we can't do it and I don't want to be in a situation where

5    we're being asked to do something we can't do.

6              I've been working with the trustee over the last

7    few days to provide him information in case did grant the

8    summary judgment motion. I have some more information I'll

9    provide him today.  So we will work with him. I just don't

10   know what all assistance reasonably necessary means.

11             THE COURT:  Well, I think when -- if there's a

12   dispute, you'll have to bring it to the court --

13             MR. MORIARTY:  Thank you, Your Honor.

14             THE COURT:  -- unfortunately.

15             MR. MORIARTY:  I wanted to avoid that but we will

16   do our best.

17             THE COURT:  I don't -- I'm not certain either, but

18   I have an idea. But that doesn't mean my idea is correct.

19             MR. MORIARTY:  I appreciate it.  Thank you.

20             THE COURT:  All right.

21             MR. FIANO:  Your Honor, if I may, on behalf of the

22   non-party --

23             THE COURT:  Would you just come forward, Attorney

24   Fiano --

25             MR. FIANO:  Yes.

1          THE COURT:  -- because we won't be able to hear

2     you.

3          MR. FIANO:  Yes.  On behalf of the non --

4          THE COURT:  Come right up here to the microphone,

5     please.

6          MR. FIANO:  On behalf of the non-party marina, it

7     would also facilitate in dealing with my client if, in fact,

8     the order was in the name of the trustee rather than just

9     simply the debtor.

10         THE COURT:  That's fine. I appreciate that. And

11    that's what we're going to do now.  We'll keep that -- but I

12    do want to make the other citations to the other sections of

13    the code, because it should have a citation to the code,

14    okay?

15         All right.  Is there anything further we need to

16    accomplish this afternoon?

17         MR. DESPINS:  Yes, Your Honor.

18         Apologies, but while we were in court we filed a

19    complaint with respect to an entity called Greenwich Land,

20    and also the debtor's wife.  This is relating to the

21    Greenwich house.

22         It's a complaint for a declaration of alter ego,

23    but we are seeking immediate ancillary relief in the form of

24    a PJR and also injunction.  Of course, Your Honor hasn't

25    seen those because you were on the bench. I think it was

1    filed at 2:15 or something like that.

2         And so that you know, we've put in a feature where

3    the court would enter a PJR -- of course, you'll do that if

4    you think it's appropriate, on an ex-parte basis, but with a

5    feature that the defendant's counsel could come to court any

6    time they feel it's appropriate and they have sufficient

7    time to basically force us to obtain a continued PJR and in

8    that context the burden would remain on us.

9         So, therefore, we would not gain any advantage

10   with ex parte entry of the PJR but for the protection of the

11   house.

12        And basically we're in a mode now where because of

13   the criminal indictment and other things, things can move

14   really fast. Mortgages can be granted, transfers can occur.

15   Yes, the house cannot move itself. I understand that.

16        But this entity has already disregarded a notice -

17   - it's not a lis pendens notice, but a notice that was given

18   by PAX pre-bankruptcy but was effective for one year after

19   the notice that would preclude them from selling assets.

20        And, in fact, an entity did sell the other

21   property, the other real estate on Ferncliff Drive.  And we

22   don't know what happened to the proceeds.

23        So the point is that we know that the debtor has

24   disregarded court orders.  We know that in spades.  We know

25   that he's been held in contempt in many places.

1          This entity itself disregarded that notice from

2     PAX and actually that happened during the Chapter 11 case

3     last summer without any notice to anyone.

4          And on top of that we know of other things.  For

5     example, Your Honor knows this from reviewing the deposition

6     of the debtor's daughter where she claims to have sold a $10

7     million aircraft and she just doesn't know who's holding the

8     $10 million right now.

9          So the point is we're in a dangerous phase right

10    now from the point of your protecting estate assets and we

11    need to act with all due diligence and that's why we're

12    moving so quickly on this.

13         We don't want to prejudice the rights of counsel

14    for Greenwich Land and the debtor's wife and that's why we

15    put in a provision that says you can come back at any time

16    that you choose -- well, on reasonable notice to us, to

17    undue this and at that hearing the burden will remain on the

18    trustee to prove to the court that the continued PJR or the

19    continued preliminary injunction should remain in place.

20         We believe that that kind of removes the -- I

21    wouldn't use the sting, but the point is the inconvenience

22    caused by an ex-parte filing.

23         But we need to move on an ex-parte basis because

24    there's a real risk that bad things could happen to these

25    assets.  And also they have a bank account and that needs to

1    be protected as well.

2         We believe that there's plenty of evidence and,

3    again, because I'm proceeding without counsel for that

4    company being there. I want to be judicious about that, but

5    we -- you know, the owner of that entity is the debtor's

6    wife.  We deposed her.  She knew nothing about this company.

7    She didn't even know -- we asked her -- we showed her five

8    pictures of different houses around Ferncliff Road,

9    including the one she owned and asked her to pick which one

10   was Ferncliff.  Could not do that.

11        So it's clear, and we have evidence from the

12   brokers and from the lawyers regarding these transactions

13   that Mr. Kwok was directing all these purchases and that

14   they were paid by Mr. Kwok or by companies related to Mr.

15   Kwok.

16        So I hate to hit you with this. You have not read

17   anything. I just wanted to alert you to it, alert you to the

18   fact that we're seeking ex parte immediate entry of PJR so

19   we can go and file that on house, again with that feature

20   that it can be removed by the court upon motion of the

21   defendants at any time, and that in that context the burden

22   will remain on us as if a PJR had never been issued.

23        So we're not trying to gain any advantage there

24   but we need to protect the estate's assets, Your Honor. So I

25   don't know how you want to proceed from here.  Obviously,

1    you haven't seen anything so, therefore, I don't know how

2    you want to proceed.

3            THE COURT:  Does Greenwich Land have an appearing

4    counsel?

5            MR. DESPINS:  Yes.  Mr. Goldstein. I forget his

6    first name.

7            THE COURT:  Evan Goldstein.  He was here last

8    week.

9            MR. DESPINS:  Correct.

10           THE COURT:  Okay.

11           MR. DESPINS:  Correct.

12           THE COURT:  And he represents Mr. Kwok's wife as

13   well, correct?

14           MR. DESPINS:  Correct.  And he has notice now

15   through the ECF of the filing of the complaint.  We

16   instructed our team to send him immediately by email

17   unredacted copies of these documents, so he is on notice at

18   this point.

19           THE COURT:  Is the complaint redacted?  Is that

20   what you're telling me?

21           MR. DESPINS:  There are portions of the complaint

22   that are redacted, but he is seeing --

23           THE COURT:  No, I'm just trying to understand --

24           MR. DESPINS:  Yes, it is -- because, again, it's

25   the protective order where the deposition of some parties

1    were designated as highly confidential, or confidential

2    where we don't think they are, but we have to respect that

3    until that veil has been lifted.

4            THE COURT:  All right.  Well, as you correctly

5    noted, I have not seen anything yet, so I don't know what

6    I'm going to do until I see that.

7            MR. DESPINS:  Thank you, Your Honor.

8            THE COURT:  Thank you.  Is there anything else we

9    need to address this afternoon?

10           MR. LINSEY:  Just a minor procedural issue, Your

11   Honor.  Patrick Linsey for the trustee.

12           Last night we filed a motion for entry of an order

13   further extending the deadline for removal actions.  We did

14   not file a motion to expedite.

15           The existing deadline expires on April 5th and

16   under the local rules governing motions for extension of

17   time I thought that would be sufficient for the court to

18   consider the order.

19           However, if you'd like us to file a motion to

20   expedite or a motion to seek a hearing, we're happy to do

21   that.  But otherwise I just wanted to put that deadline on

22   the court's radar.  That is at ECF No. 1601 in the main

23   case.

24           THE COURT:  Okay.

25           MR. LINSEY:  Thank you, Your Honor.

1        THE COURT:  Thank you.  All right.  Anything

2   further this afternoon?

3        All right.  Court is adjourned.

4     (Proceedings concluded at 3:10 p.m.)

5

6        I, CHRISTINE FIORE, Certified Electronic Court

7   Reporter and Transcriber, certify that the foregoing is a

8   correct transcript from the official electronic sound

9   recording of the proceedings in the above-entitled matter.

10

11   *Christine Fiore*

12   _____        April 6, 2023

13      Christine Fiore, CERT

14

15

16

17

18

19

20

21

22

23

24