```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                        BRIDGEPORT DIVISION

In Re                         *   Case No. 22-50073 (JAM)
                              *
HO WAN KWOK and GENEVER       *
 HOLDINGS CORPORATION,        *
                              *
             Debtor.          *

HK INTERNATIONAL FUNDS            Adv. Proc. No. 22-05003
 INVESTMENTS (USA) LIMITED,   *
                              *   Bridgeport, Connecticut
             Plaintiff,       *   March 30, 2023
                              *
     v.                       *
                              *
LUC A. DESPINS,               *
                              *
             Defendant.       *
                              *
* * * * * * * * * * * * * * * *
```

                    TRANSCRIPT OF STATUS CONFERENCE
               BEFORE THE HONORABLE JULIE A. MANNING
                  UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor and          AARON ROMNEY, ESQ.
 Plaintiff, HK              Zeisler & Zeisler, PC
 International and          10 Middle Street, 15th Floor
 Mei Guo:                   Bridgeport, CT  06604


For the Plaintiff,          MELISSA F. WERNICK, ESQ.
 HK International and       Chiesa Shahinian &
 Mei Guo:                    Giantomasi, PC
                           One Boland Drive
                           West Orange, NJ  07052

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES:  (Cont'd.)

For the Defendant,              AVRAM EMMANUEL LUFT, ESQ.
 Luc A. Despins, Chapter 11     NICHOLAS BASSETT, ESQ.
 Trustee:                       Paul Hastings, LLP
                                200 Park Avenue
                                New York, NY  10166

                                DOUGLAS S. SKALKA, ESQ.
                                Neubert Pepe & Monteith, PC
                                195 Church Street
                                New Haven, CT  06510

Chapter 11 Trustee:             LUC A. DESPINS, ESQ.
                                Paul Hastings, LLP
                                200 Park Avenue
                                New York, NY  10166

For the Creditor, Pacific       STUART SARNOFF, ESQ.
 Alliance Asia Opportunity      PETER FRIEDMAN, ESQ.
 Fund L.P.:                     O'Melveny & Myers LLP
                                Times Square Tower
                                7 Times Square
                                New York, NY  10036

                                ANNECCA H. SMITH, ESQ.
                                Robinson & Cole
                                28 Trumbull Street
                                Hartford, CT  06103

For the Creditors Committee:    IRVE GOLDMAN, ESQ.
                                Pullman & Comley
                                850 Main Street
                                Bridgeport, CT  06601

For the U.S. Trustee:           HOLLEY L. CLAIBORN, ESQ.
                                Office of the United States
                                  Trustee
                                The Giaimo Federal Building
                                150 Court Street, Room 302
                                New Haven, CT  06510

For Logan Cheng, Creditor:      JAY M. WOLMAN, ESQ.
                                Randazza Legal Group, PLLC
                                100 Pearl Street, 14th Floor
                                Hartford, CT  06103
```

1        (Proceedings commenced at 1:31 p.m.)

2            THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok and Genever Holdings Corporation and Genever Holdings,

4    LLC and case No. 22-5003, HK International Funds Investment

5    (USA) Limited versus Despins.

6            THE COURT:  Okay.  Good afternoon.  If we could

7    have appearances for the record starting with the Chapter 11

8    Trustee, please.

9            MR. DESPINS:  Good afternoon, Your Honor.  Luc

10   Despins, Chapter 11 Trustee.

11           THE COURT:  And Trustee's counsel?

12           MR. BASSETT:  Good -- sorry, Your Honor.

13           THE COURT:  That's Okay.

14           THE COURT:  Good afternoon, Your Honor.  It's Nick

15   Bassett, from Paul Hastings, as counsel to Chapter 11

16   Trustee.      THE COURT:  Good afternoon.

17           MR. SKALKA:  Sorry.  Good afternoon, Your Honor.

18   Douglas Skalka, from Neubert, Pepe and Monteith, as

19   Connecticut counsel for the Chapter 11 Trustee.

20           THE COURT:  Good afternoon.

21           MR. LUFT:  Good afternoon, Your Honor.  Avi Luft,

22   from Paul Hastings, also here on behalf of the Trustee.

23           THE COURT:  Good afternoon.

24           Then if we could have appearances for counsel for

25   the debtor, please.

1           MR. ROMNEY:  Aaron Romney, Zeisler & Zeisler, for

2     the debtor, as well as HK International (USA) and Ms. Mei

3     Guo.

4           THE COURT:  Good afternoon.

5           And counsel --

6           MS. WERNICK:  Good afternoon, Your Honor.  Melissa

7     Wernick, from Chiesa Shahinian & Giantomasi, on behalf of

8     Mei Guo and HK International (USA).

9           THE COURT:  Good afternoon.

10          And counsel for PAX?

11          MR. FRIEDMAN:  Good afternoon, Your Honor.  It's

12    Peter Friedman from O'Melveny & Myers.  Mr. Sarnoff is also

13    -- on behalf of PAX.  Mr. Sarnoff is also on video, as is

14    our Connecticut counsel, Annecca Smith, from the Robinson &

15    Cole firm.

16          THE COURT:  Good afternoon to all of you.

17          MR. FRIEDMAN:  Thank you.

18          THE COURT:  The Office of the United States

19    Trustee, please.

20          MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

21    Claiborn for the U.S. Trustee.

22          THE COURT:  Okay.  And Attorney Wolman?

23          MR. WOLMAN:  Good afternoon, Your Honor.  Jay

24    Wolman, of Randazza Legal Group, for creditor Logan Cheng.

25          THE COURT:  Good afternoon.

1      All right.  I believe that's -- I have taken

2  everyone's -- oh, I'm sorry, Attorney Goldman.  I didn't

3  take your appearance.  Go right ahead.

4      MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

5  Goldman, Pullman & Comley, for the Creditors Committee.

6      THE COURT:  Good afternoon.

7      All right.  Trustee Despins, you had asked for an

8  emergency status conference and it has been scheduled for

9  today at 1:30, so please proceed.

10      MR. DESPINS:  Thank you, Your Honor.

11      We will do this in two parts.  And I'll cover the

12  second part, which will be an update on the Lady May, and I

13  would say that's generally good news.  But Mr. Bassett will

14  begin with the issues relating to the Lady May II and

15  related matters.

16      THE COURT:  Okay.  Thank you.

17      Mr. Bassett?

18      MR. BASSETT:  Thank you, Your Honor.  Again, for

19  the record, it is Nick Bassett, from Paul Hastings, as

20  counsel to the Chapter 11 Trustee.

21      Your Honor, one of the main reasons for the status

22  conference, and certainly for the emergency nature of it, is

23  to address recent information that has come to the Trustee's

24  attention that is really beyond troubling in terms of how it

25  fits into what the Trustee has been told for the duration of

1    this case by the debtor, by HK USA, and my Mei Guo, and

2    their collective counsel.

3          And this relates to the Trustee's discovery of HK

4    USA's ownership of the Lady May II yacht.  And I want to

5    give some context for kind of how we got here and why this

6    is so troubling.

7          Before I do that I do want to note just to make

8    clear to the extent that there was any suggestion to the

9    contrary in what's been filed, the Lady May II while it is

10   in some way -- I'm not a yacht or a boating person

11   whatsoever but I understand it performs some service role

12   with respect to the Lady May, but that not be mistaken, it

13   is a significant vessel.  For anyone other than a

14   billionaire I would submit that it would be the yacht of a

15   lifetime.  I mean, we're talking about a, as far as I

16   understand it, million dollar or so, if not more, vessel.

17         And, again, I want to take a step back and just

18   talk about how we got here and to put in context why we're

19   so concerned about what we've -- what we've learned and then

20   I'll tell the Court what we would propose in terms of the

21   next steps and relief that the Trustee would need.

22         But in terms of just how we got here, I won't

23   belabor this because the Court knows it, but we've been at

24   this obviously since August.  We've been trying to get

25   discovery from the debtor, from Mei Guo, from HK USA

1    concerning potential assets of the estate.  We obviously

2    went through motion to compel practice.  We had an order to

3    show cause.  We had all of that and we went back and forth.

4        It's notable that during the motion to compel

5    argument and hearing and briefing one of the things we were

6    focused on is whether -- if HK USA had additional assets

7    that we weren't aware of beyond the Lady May, whether they

8    would give us documents related to those assets.

9        We actually used as an example, because we did not

10   know that HK USA owned the Lady May II, we used as an

11   example during all of that the hypothetical possibility that

12   HK USA would own a yacht called the Lady May II and whether

13   or not we would get documents related to that yacht.

14       As the Court will recall what they said is, well,

15   if there's not been any order saying that the Lady May II,

16   if it existed, was property of the estate, we're not going

17   to disclose anything regarding that.  So I'll put that out

18   there as one point that leads to how troubling this

19   revelation is.

20       The next thing, Your Honor, as you fast forward,

21   the Court granted our motion to compel.  We had a motion for

22   an order to show cause regarding Mei Guo's and HK USA's lack

23   of compliance with that -- with the order on the motion to

24   compel.  On March 13th of this year, in an effort to comply

25   with the order to show cause, Mei Guo submitted a

1    declaration on behalf of HK USA which states, and this is

2    cited in our request for the status conference, which states

3    at paragraph 24 unequivocally that HK USA's sole asset is

4    the Lady May, period.

5              Fast forward from there, the Court grants our

6    motion for summary judgment earlier this week.  Thereafter,

7    that same -- that same day -- sorry, this follows the

8    Court's entry of an order granting our request for a PJR and

9    preliminary injunction.

10             As the Court knows, one of the requirements of the

11   preliminary injunction of course was for Mei Guo and HK USA

12   to identify to the Trustee their assets.

13             As the Court knows, on Monday, Mei Guo submitted a

14   brief saying that she, on her own behalf, was asserting the

15   Fifth Amendment.

16             For HK USA, Attorney Vartan sent a letter to the

17   Trustee saying this is the disclosure about assets on behalf

18   of HK USA.  And it stated again unequivocally the only asset

19   of HK USA other than the Lady May was the $37 million in

20   escrow which they actually contend was a liability.  Zero

21   mention of the Lady May II.

22             After the Court granted our motion for summary

23   judgment, we immediately thereafter, when we had the

24   opportunity to finally have privity and have direct

25   discussions with those who are in control of the Lady May,

1    my colleague reached out to representatives in Yachtzoo, who

2    is the yacht management company, had a conversation with

3    them about getting access to the Lady May and next steps and

4    a representative said, well, what about the Lady May II?

5    Don't you want information on that?  Sure.  He said because

6    HK USA also owns the Lady May II.  I said, well, do you have

7    documentation that shows that?  And he sent us a

8    registration certificate which clearly stated that the Lady

9    May II was registered to HK USA.

10          Even after getting that on this Tuesday, I mean,

11    we couldn't believe that we had gotten that in light of the

12    unequivocal statements from Attorney Vartan and from Mei Guo

13    in her declaration.

14          But even after getting that, we still gave them

15    the benefit of the doubt.  I said to one of my colleagues,

16    well, maybe it's possible that -- because the registration

17    certificate, and I'll clarify, the registration certificate

18    that we originally got was dated in 2020.

19          So maybe it was transferred, with which it would

20    have been troubling because we didn't know about the

21    transfer, but maybe the ownership was transferred and that

22    HK USA doesn't currently own it.

23          So we asked the representative of Yachtzoo how can

24    we can confirm that the ownership today is still with HK

25    USA?  He said you can request from the relevant Cayman

1    Island Registry a current, up-to-the-moment report on who

2    the current owner is.  We got that yesterday and it

3    confirmed that today HK USA remains the sole owner of the

4    yacht.  So that's why we requested our status conference.

5            And I think these facts, Your Honor, I don't know

6    how it can be explained other than in one of two ways.

7            First, Mei Guo -- and before I get there, Your

8    Honor, just one thing I wanted to note is that despite what

9    Attorney Romney has said, and what he filed about how there

10   was disclosures concerning this, he's referring to things

11   that are buried in unrelated filings.

12           No ownership of HK USA was ever disclosed to the

13   Trustee or anyone else in this case in a responsive way, in

14   response to our discovery requests in the adversary

15   proceeding, none of that was ever disclosed.

16           In fact, we had no reason to believe that it was

17   owned by HK USA because in the PAX litigation, and this is

18   an exhibit before the Court that the Court has, in the PAX

19   litigation in February, the hearing on the final consent

20   order, on February 2nd, 2022, which we just discussed at

21   length earlier this week, Mei Guo, during cross-examination,

22   and this is at page 72 of that hearing transcript, she was

23   asked by counsel for PAX, she was shown a video that had a

24   picture, that had an image of the Lady May II in it, she was

25   asked during her cross-examination, are you familiar with

1    what that boat in the video is?

2             She said, yes, that's the Lady May II.  Then she

3    was asked who owns the Lady May II?  She said my brother.

4    Your brother owns it?  Yes.  So that's what we understood

5    until now.  And what this tells us, Your Honor, is one of

6    two things.

7             One, either that Mei Guo's past testimony through

8    today, including the declaration she submitted to this

9    court, which by the way she also confirmed at her

10   deposition, that she did not -- that HK USA had no other

11   assets than the Lady May, either that she was perjuring

12   herself and lying because she always knew that the -- that

13   HK USA also owned the Lady May II or she doesn't even know.

14            And if she doesn't even know, then that is further

15   extraordinary compelling evidence to add to our mountain of

16   compelling evidence that Mei Guo does not actually own or

17   have any responsibility whatsoever with respect to HK USA

18   and that it's all Mr. Kwok because she doesn't even know

19   what assets it has.

20            So, Your Honor, that leads us to where we are

21   right now and what we think needs to happen.

22            The first thing, Your Honor, and there are really

23   three different things, and I'm sure the Trustee will jump

24   in if I'm forgetting anything because we're all moving very

25   quickly here, but the first thing is Attorney Vartan's

1   letter that he sent to us in which he disclosed that HK USA

2   has no assets other than the Lady May is obviously

3   deficient.

4           And what we're very concerned about is now that

5   we've found out on our own about the Lady May II what else

6   might there be?  And what did Attorney Vartan do in order to

7   get comfortable sending that letter?  We need to know in

8   detail who he spoke to?  What he was told?  Was this all

9   from Attorney Mitchell?  Was it conversations with his

10  client?  Whatever diligence they did was not remotely

11  sufficient.

12          Once we understood, after we were told by Yachtzoo

13  about the Lady May II, it was not difficult at all to get

14  that information.  It would not have been difficult at all

15  for him to get it, for Mei Guo to get it, for anyone who

16  actually wanted to give us accurate information to get that.

17  They could have done that.  So that's number one.

18          Number two is, in light of this, we've looked back

19  at the order, the order the Court already entered, the

20  preliminary injunction order and the PJR.  And the

21  preliminary injunction order, which applies to assets

22  wherever located and freezing of those assets, we think

23  needs to be clarified to make sure that the prohibition on

24  HK USA and Mei Guo transferring, encumbering, moving or

25  disposing of their interests in any property applies

1    regardless of whether that property has been disclosed.  And

2    this is, for the Court's reference, ECF 142, is the

3    preliminary injunction order.  And the way paragraph B --

4         THE COURT:  Yeah.  I have it.  I have it right in

5    front of me so I know exactly what you're talking about.

6         MR. BASSETT:  Thank you, Your Honor.

7         The way paragraph B presently reads is that

8    counter-defendants shall identify to the Trustee and to the

9    Court within five days of the entry of this order any other

10   property in which they hold an interest and counter-

11   defendants shall not transfer, encumber, move, dispose of,

12   or in any way impair their interests in such property until

13   further order of the Court.

14        What has now happened, of course, is that we have

15   Mei Guo who's taking the Fifth and refusing to disclose her

16   assets, and we have Attorney Vartan, who has given us a

17   facially incomplete recitation of HK USA's assets, so we

18   need paragraph B to be clarified to say is that the

19   requirement and the injunction that Mei Guo and HK USA not

20   transfer, encumber, et cetera, their property applies to any

21   property that they actually own regardless of whether they

22   disclosed it in response to paragraph B.

23        It can't operate any other way because if so, that

24   would allow Mei Guo by taking the Fifth to not actually

25   freeze any of her assets and would allow HK USA by providing

1    an untruthful and incomplete disclosure of its assets to not

2    have to have them subject to the injunction.

3            So we can provide exact language, but that

4    clarification also needs to occur.

5            Related to this, Your Honor, we think -- what we

6    intend to do -- as the Court is aware, some assets of Mei

7    Guo, that we are aware of that she again hasn't disclosed in

8    response to this order because she took the Fifth, are her

9    interests in multiple companies in the British Virgin

10   Islands.

11           And we understand that there is a process by which

12   we can seek something that I believe is referred to as a

13   stop order in the British Virgin Islands that would prevent

14   anybody from transferring ownership in those entities.

15           We think that is critically important for us to do

16   in light of all the circumstances and the concerns we have

17   about what other property there might be out there that

18   we're not aware of that has deliberately not been disclosed

19   to us that might be transferred.  We think it's very

20   important for us to do that.

21           That's not something again that we request before

22   the Court, but we would ask for the Court to issue an order

23   in aid of that relief we would be seeking in the BVI to

24   author -- to specifically authorize the Trustee to do that

25   because we think that will be helpful when we ask for that

1    relief in the BVI.

2         The third and final thing, Your Honor, is that we

3    wanted to inform the Court, we're not asking for any relief

4    with respect to this today, we wanted to inform the Court

5    that even prior to learning of these recent developments

6    over the last two days, the Trustee had been preparing and

7    intending to file as soon as possible a further motion for

8    partial summary judgment in the HK USA adversary proceeding

9    seeking summary judgment on the count of his complaint that

10    seeks an order from the Court that HK USA is the debtor's

11    alter ego.

12         We think there is, before the development of the

13    last two days, no dispute at all or genuine dispute of

14    material facts to our entitlement to that relief.

15         They've taken the position that the only asset

16    prior to now was the  Lady May.  That asset is owned by the

17    debtor.  They've conceded that HK USA has no employees, et

18    cetera, et cetera.  It's a very narrow, factual, you know,

19    set of facts that are relevant to that issue and we think

20    it's ripe for summary adjudication.

21         The reason I bring it up now is because we -- in

22    light of these developments, we need to move very quickly on

23    that.  So I wanted to give the Court a heads-up that when we

24    file that motion, and we expect to file it I would say

25    sometime in the next couple of days, we're going to ask to

1    have it heard on a week's notice similar to the last motion

2    that we filed.

3         Again, we don't think that because all these facts

4    have been briefed, the law has been briefed, we don't think

5    there's any reason why it can't be heard on that track.  And

6    it's critically important that we do it quickly.  And we'll

7    put this in a motion to expedite that we file, but for a

8    couple of reasons.

9         One, we don't know right now what other assets, as

10   I said before, HK USA might have that are not being reported

11   to us.

12        And, therefore, we need to move as quickly as

13   possible for the Trustee to gain ownership of HK USA so it

14   has the full ability to do what he needs to do on his own to

15   try to identify any other assets of HK USA that might exist.

16        The second thing is that if we are successful in

17   proving that HK USA is the debtor's alter ego, that will

18   result in HK USA's property, including the Lady May II,

19   because we can then take action with respect to it if we own

20   that boat, and the $37 million placed in escrow would become

21   property of the estate.

22        And we need that $37 million to fund ongoing

23   expenses related to the Lady May and the Lady May II, all of

24   that is critically important that we have that not in a

25   month, not, you know, in two weeks, but as soon as we

1    possibly can.  And that's why we will be asking the Court to

2    hear that motion on an expedited basis.

3            Again, we're not asking for relief today, but we

4    wanted to let the Court know that that will be happening,

5    because it does tie into the recent events and it's sort of

6    an exigency surrounding it or it's a function of or a by-

7    product of what's happened.

8            So I'll stop there.  If the Trustee thinks I've

9    missed anything, he can let me know.  But that was -- that

10   was what I wanted to tell the Court on that first issue.

11           MR. DESPINS:  And, Your Honor, Mr. Bassett covered

12   everything.

13           The only thing I would add before turning it over

14   to the other side is -- or to be supporting our position is

15   that not the last point about summary judgment.  Of course

16   we're not going to consent to that that, but the other ones

17   to clarify the preliminary injunction order is stop noticing

18   of that, that's something that the representatives of HK

19   International and the debtor's daughter should consent to.

20   Of course, they're going to say, well, that's for them to

21   decide.  Absolutely.  But I would find it very hard, given

22   the current posture of the case, to understand why they

23   would not consent to those first items that Mr. Bassett

24   described.

25           Obviously, they're not going to consent to summary

1    judgment on the alter ego.  We would like them to do that,

2    but that, I'm realistic, that's asking too much.

3            But the other parts are, frankly, in the current

4    posture almost like an automatic, but I'll turn over to them

5    or to the counsel for PAX or the Committee if they want to

6    be heard.

7            Thank you, Your Honor.

8            THE COURT:  Well, I'd like to ask Mr. Bassett a

9    question first.

10            Mr. Bassett, you said that you obtained the

11    information from one of the representatives of Yachtzoo, is

12    that correct?

13            MR. BASSETT:  That's correct, Your Honor.

14            So my colleague, Attorney Bongartz, on Monday, I

15    believe, after the Court entered the summary judgment order

16    which gave the Trustee ownership of the Lady May, then

17    reached out to Yachtzoo to immediately open a line of

18    communication as the owner of the yacht.

19            At that point, we were able to interface directly

20    with Yachtzoo as the owner.  And in that conversation, he

21    said, the representative of Yachtzoo as I understand it,

22    told Attorney Bongartz, well, we should also discuss the

23    Lady May II.  And that's when we said, well, we understood

24    that based on her testimony in PAX case that was owned by

25    her brother.  And he said I think it's owned by HK USA.

1           And we asked for the certificate of registry.  He

2      sent it to us.  And then we confirmed by getting the updated

3      one, as I described earlier.

4           THE COURT:  Okay.  And that was the first that you

5      learned that the Trustee and his counsel learned about the

6      Lady May II?

7           MR. BASSETT:  We had heard the references to it,

8      obviously, including in the PAX litigation, but that was the

9      first time we had ever become aware that it was owned by HK

10     USA.

11          THE COURT:  That's the question I should have

12     asked you, Mr. Bassett.  So you answered the question I

13     should have asked.  My question wasn't correct.

14          My question was is that the first time that the

15     Trustee and you as his counsel learned that the Lady May II

16     was owned by HK USA?  And you've just said yes.

17          MR. BASSETT:  That's correct, Your Honor.

18          THE COURT:  Okay.

19          MR. BASSETT:  And I just obviously -- yeah, okay.

20     Thank you.

21          THE COURT:  Thank you.  I didn't ask a very good

22     question.  So I apologize.

23          MR. BASSETT:  No problem.

24          THE COURT:  Okay.  I'm going to turn to Attorney

25     Romney and Attorney Wernick.  I understand Attorney Vartan

1     is not here today.

2            But in the meantime, when I reviewed the Trustee's

3     request for an emergency status conference on this issue,

4     and the reason that the conference was set was because what

5     is in the record before this court, both in documents and

6     testimony and in representations in writing made by Attorney

7     Vartan and others, was that the only assets of HK USA was

8     the Lady May.

9            You're not even -- you wouldn't -- I mean, the

10    documents say that you disagree that the 37 million is

11    property of HK USA.

12           So why was the ownership of the Lady May II not

13    disclosed to the parties and to the Court, Attorney Romney

14    and Attorney Wernick?

15           MR. ROMNEY:  Thank you, Your Honor.  Aaron Romney,

16    Zeisler & Zeisler, on behalf of HK International USA.

17           I'm going to back it up a little bit and directly

18    answer the Court's question, but as I sit here, I'm

19    wondering why we're here because all of this could have been

20    avoided, resolved with a simple phone call or an email.

21           THE COURT:  Hold on a second, Attorney Romney.

22    Just hold on a second because you're a little muffled.  Can

23    you get a little closer to the microphone, because I'm

24    having -- I can mostly hear what you're saying, but you're a

25    little muffled.

1          MR. ROMNEY:  I apologize.  Is that better, Your

2     Honor?

3          THE COURT:  That is better.

4          MR. ROMNEY:  Okay.  So as I was saying, I'm a

5     little bit perplexed as to why we're sitting here right now

6     under these circumstances.  I don't believe there's an

7     emergency.  I don't believe there's a situation that can't

8     be resolved with a simple conversation and perhaps

9     consensual modifications to orders.

10         First, the existence of the Lady May II has been

11    disclosed.  It was disclosed to PAX and the Creditors

12    Committee by Attorney Kindseth when he provided evidence of

13    insurance at the inception of this case.

14         Invoices concerning registration of the Lady May

15    II in the name of HK USA had been produced to the Trustee in

16    connection with other documentation concerning the boat.

17         As to Mei Guo's testimony at her deposition, which

18    to be honest, I was present at that deposition.  I don't

19    recall it as I sit here, so I haven't discussed it with her,

20    but I can tell you that from my personal understanding, as

21    well as Attorney Vartan's from having spoken to him and

22    having reviewed his letter, is our understanding is that the

23    Lady May II is a boat that effectively exists to service the

24    Lady May.  We viewed it --

25         THE COURT:  But that doesn't -- Attorney Romney,

1    none of what you're saying answers the --

2            MR. ROMNEY:  Your Honor, may I finish my thoughts

3    before --

4            THE COURT:  -- none of what you're saying is

5    answering -- hold on -- none of what you're saying is

6    answering the question.  I don't -- it doesn't matter

7    whether the Lady II May [sic] services the Lady May.

8            You need to show me where -- you just said -- you

9    said something that is relevant.  You said that you produced

10   documents to PAX and others that show that the Lady May II

11   was owned by HK USA.  That's what I thought I heard you say.

12   If that's true, then I'd like to see those --

13           MR. ROMNEY:  That is correct, Your Honor.

14           THE COURT:  -- I'd like to see those documents and

15   I'd like to see when they were produced, number one.

16           Number two, the issue with regard to what the Lady

17   May II does or doesn't do is not relevant.  If it's owned by

18   HK USA, then that's relevant.  And you --

19           MR. ROMNEY:  Your Honor, if I could have two

20   minutes.  I --

21           THE COURT:  Hold on a second.  Hold on a second,

22   please, Attorney Romney.

23           And there are two declarations of Mei Guo in

24   addition to the testimony that I didn't -- I wasn't even

25   looking at the testimony Mr. Bassett just talked about --

1    that state as -- unequivocally that the only asset of HK USA

2    is the Lady May.  And that's what your client swore to under

3    penalty of perjury.

4         And Attorney Vartan's letter that was sent on the

5    27th, where we gave him time to -- additional time, the

6    Court provided additional time to provide that information

7    to the Trustee says the only asset of HK USA is the Lady

8    May.  So unless you can show me documents that --

9         MR. ROMNEY:  I would like to answer your question

10   --

11        THE COURT:  -- unless you can show me documents

12   that show this registration that was produced, that show

13   this registration that -- of the Lady May II in the name of

14   HK USA that were produced to the Trustee and his counsel,

15   then I think you've got a problem.

16        But you also have a problem because of what your

17   client has sworn to in declarations, and apparently

18   testified to at a 2004 examination, and what Mr. Vartan has

19   represented in a written letter to the Trustee in compliance

20   with an order of this court, in purported compliance with an

21   order of this court.

22        So I think you need to answer those questions.

23        I don't -- it doesn't matter to me if the Lady May

24   II services the Lady May because the Lady May II is a

25   separate vessel.  Even if it is the tender or whatever it

1    is, it doesn't matter.

2            It's a separate vessel that needs to be insured,

3    that has a different registration and apparently is

4    registered in the name of HK USA.  Okay?  No one seems to be

5    quarreling about that right now.  Do you disagree that it's

6    registered in the name of HK USA, the Lady May II?

7            MR. ROMNEY:  I do not, Your Honor.

8            And I would like to answer your other questions as

9    well if I can have an opportunity to do so.

10            THE COURT:  You absolutely shall have the

11    opportunity.  Go right ahead.

12            MR. ROMNEY:  Thank you.

13            So, again, speaking as for my understanding, as

14    well as Attorney Vartan's, because I've discussed this issue

15    with him, I also reviewed his letter, the reality is, and I

16    apologize that neither of us are boating experts, we viewed

17    the asset of the Lady May II as part of the same asset.  If

18    that's technically incorrect, we stand corrected.

19            But to the Trustee's point, there was no intent to

20    conceal anything.  And based on our position that we had

21    essentially viewed this as one in the same asset.

22            While I believe there would need to be an

23    amendment to the summary judgment order, for the same

24    reasons there was no malicious intent, no intent to deceive,

25    and this would have been resolved with a phone call or an

1   email, while we disagree with the Court's summary judgment

2   motion, and we do reserve our rights to appeal it, that is a

3   separate issue from the fact that for the same reasons that

4   we believe disclosing the Lady May was substantively

5   disclosing the Lady May II, and we believe that everyone

6   knew of it, we would consent that the Court's summary

7   judgment order applies.

8          And I believe that for technical reasons we'd need

9   a modification where it applies to the Lady May II.  It's

10   the exact same issue.  In our view, it was the same asset.

11   I apologize if we were technically incorrect.  There was no

12   intent to deceive.

13          And I'm sitting here telling the Court, and I

14   would have told the Trustee or his -- and his counsel, if

15   they had picked up the phone or emailed me, that we can

16   resolve the issue of the Lady May II through that.

17          THE COURT:  Well, Mr. Romney, your office has

18   consistently said throughout these proceedings that the

19   Trustee needs to file papers.

20          The Trustee started this whole process off by

21   trying to enter into agreements with you on behalf of Mr.

22   Kwok and HK USA and Mei Guo.

23          And you have stood here, as have other of your

24   colleagues, and said is there a motion pending?  Because I'm

25   not going to address that unless there's a motion pending?

1    And so you can't take that position now.  Number one.

2          Number two, I don't know how anyone in their -- in

3    a reasonable review of what an asset is could think that the

4    Lady May II is part of the Lady May.  If it was, then it

5    should be sitting on the side of it over at the dock here in

6    Bridgeport and it's not.

7          And apparently the only testimony with regard to

8    the Lady May II, apparently, and if someone shows me

9    something different, I will review it, is that your client,

10   Ms. Wernick and Mr. Romney, your client, Ms. Guo, testified

11   that it was owned by her brother.  So why would you then

12   think that was part of the Lady May if that's what your

13   client testified to in a deposition?

14         MR. DESPINS:  Your Honor, if I may jump in for two

15   seconds?

16         We will take Mr. Romney's concession.  We will

17   submit an amended order clarifying that the summary judgment

18   applies to both.  The consequences of what they did, we can

19   deal with that later.  But we can amend that order and say

20   that we own the Lady May II as well.

21         You know, it's like the bank robber with a bag of

22   money saying look at me, I'm giving you the money back.

23   Yeah.  I'll take the money back.  I'll take the bag.  We'll

24   deal with the rest --

25         THE COURT:  Is it insured though --

1          MR. DESPINS:  -- we'll deal with the rest later,

2     but we should amend the order.

3          THE COURT:  -- Trustee Despins?  Do you know if

4     there's any insurance on the property?

5          MR. DESPINS:  No, I don't know that.  But if I'm

6     going to own it, we'll have to insure it.

7          THE COURT:  Right.  And as I noted, I believe in

8     the written opinion, that supplemental opinion on summary

9     judgment that was issued this morning, that in the

10    stipulated order regarding the Lady May, HK USA stated that

11    they would pay for the insurance on the Lady May II,

12    unequivocally again and did not do so.  So I think there's a

13    lot of issues here.

14         But fine.  If the parties want to work it out and

15    submit new orders, that's fine.

16         I think that the prejudgment remedy order does not

17    need to be modified, but if you want to modify it, that's

18    fine because it says to attach any interests in any property

19    that the defendants may have.  But if you need to amend

20    that, then fine.

21         So then HK USA and Mei Guo, despite the testimony

22    under oath that has been made repeatedly, are going to

23    consent and concede that HK USA owns the Lady May II, and

24    now in accordance with the summary judgment motion that that

25    order can be amended to include the Lady May II.

1          Is that correct?  Attorney Romney and Attorney

2    Wernick?

3          MR. DESPINS:  That's what I understand the offer

4    to be.

5          MR. ROMNEY:  I'm sorry.  I couldn't hear.

6          THE COURT:  Attorney Wernick, Attorney Romney?

7          I thought Attorney Wernick was the main counsel

8    for HK USA .  That's what I was told a few weeks ago, that

9    office, so what's the answer to the question?

10          MS. WERNICK:  Our office is co-counsel, Your

11    Honor.  And, I mean, to Mr. Romney --

12          THE COURT:  That's not what Attorney Vartan said,

13    but go right ahead.

14          MS. WERNICK:  I think to stress -- to Mr. Romney's

15    point that there is an agreement and there's no objection to

16    amending the summary judgment order to include the Lady May

17    II as an asset that's being turned over pursuant to the

18    order.

19          MR. DESPINS:  Okay.  So, Your Honor, therefore,

20    there are couple of things that remain to be done.

21          One, is we need to clarify the injunction order

22    because it says -- it could be read to say --

23          THE COURT:  I agree.

24          MR. DESPINS:  -- that it only applies to what they

25    disclose.  And since they don't -- they disclose nothing, we

1    need to fix that to say all your assets are frozen, you

2    cannot transfer them.  So that's number one.

3              The first question is --

4              THE COURT:  Whether they're disclosed or not

5    disclosed.

6              MR. DESPINS:  Correct.  And the question is is

7    there consent to that?

8              MS. WERNICK:  I think it goes without saying.

9              MR. DESPINS:  Okay.  So then --

10             THE COURT:  I don't agree that it goes without

11   saying, Attorney Wernick.  Because if it went without

12   saying, we'd all know about the Lady May II.  That's such a

13   -- that is -- okay.

14             MR. DESPINS:  Okay.

15             THE COURT:  You better work it out because you're

16   on thin ice.  Okay?

17             MR. DESPINS:  Okay.  So that --

18             THE COURT:  This is really -- this is -- you have

19   obligations of honesty and candor to this court and I just

20   am -- anyway, go ahead, Trustee Despins.

21             MR. DESPINS:  So the next item is, and Mr. Bassett

22   will help me, it is the stop orders in the BVI.

23             So we want to know whether there will consent by

24   both the daughter, the debtor's daughter -- this actually

25   applies to only the debtor's daughter, she's the one who is

1    the beneficial owner nine BVI companies or so -- whether

2    there's consent to this court entering an order saying that

3    the Trustee is authorized and the Court seeks assistance of

4    the BVI courts to issue a stop order which basically

5    prevents any transfers of the interests of the daughter in

6    these companies.

7             And the way it works is that they can go back to

8    the BVI court on two weeks' notice to undo that, but in the

9    meantime the asset is frozen.

10            THE COURT:  Attorney Wernick, Attorney Romney, you

11   can respond to Trustee Despins' request?

12            MR. ROMNEY:  Your Honor, I would say in response

13   to that that if there is a -- there's two things.

14            One, if the Trustee would like us to stipulate to

15   something, we would like to see it in writing and -- I

16   believe based upon my understanding of what's been described

17   the order being requested would be redundant, the injunction

18   already in place, which we understand to apply to all

19   assets.

20            I certainly never read the order, you know, not to

21   sort of switch issues, but I never read the order to apply

22   only to disclosed assets.  I think that would be an overly

23   hypertechnical and ridiculous reading frankly that if one

24   didn't disclose an asset it wouldn't be subject to an

25   injunction.

1          So if Trustee Despins has additional language for

2     additional clarity or comfort that is in accordance with the

3     spirit of the existing order, I would ask that he send it

4     over to us and we will review it, discuss it with our

5     client, and if it's the way it appears, I imagine we would

6     consent to it, but it's not something we've discussed with

7     our client because we're just learning about it for the

8     first time at this status conference.

9          MR. DESPINS:  It is the equivalent, Your Honor, of

10    a prejudgement remedy, which as you know is limited to

11    Connecticut in the BVI.

12         Basically that whether they decide to comply or

13    not with the injunction, and we know that they have not in

14    other cases, they as a group -- so the BVI course would go

15    on in the transfers.  That's what this does.  It's the

16    equivalent of a PJR order over there.  That's what this

17    does.

18         The injunction is a good thing, but at the end of

19    the day if somebody's willing to breach that, it's not an

20    interim remedy.  We all know that.

21         THE COURT:  Well, I think the way to proceed is to

22    see if you get their agreement.  And then if you don't, then

23    you ask the Court to enter the order.

24         MR. DESPINS:  Okay.  Will do, Your Honor.  Thank

25    you.

1          Mr. Bassett, I don't know if there's anything I

2     forgot.

3          MR. BASSETT:  No.  I mean, the only thing that I

4     had mentioned is we are being lied to by somebody, Your

5     Honor.  There's no other way to put it.  The testimony of

6     Mei Guo was that her brother owned this boat, she testified

7     that HK USA has no other assets.  We got the letter from

8     Attorney Vartan that didn't mention the Lady May II.

9          And as the Court pointed out, no reasonable person

10    could possibly inferred from that that they meant when they

11    said that HK USA owns the Lady May it included the Lady May

12    II.

13         There's been months of discussion, more than a

14    year I think at this point of discussion in this case, about

15    getting the Lady May II, sorry, getting the Lady May to

16    Connecticut, having a repair reserve established, all of

17    these things.  There was never a mention of getting the

18    Lady May II there, about the condition of the Lady May II.

19    About any of that stipulation applying to the Lady May II,

20    none of that.  There's zero reason why any reasonable person

21    to have interpreted the statement to this court in the way

22    that Attorney Romney asked the Court (indiscernible).

23         And these other disclosures by the way, the one

24    disclosure that Attorney Romney mentioned when he filed with

25    the Court was from December of 2022 when his clients filed a

1    motion to modify the repair reserve for the Lady May.  They

2    had attached as exhibits like 40 pages of expenses and

3    things like that.  Part of one invoice referenced services

4    that were provided on the Lady May II.

5        We necessarily would have never thought to look at

6    that document to determine that HK USA owned the Lady May II

7    because they were filing it ironically in connection with

8    expenses in the repair reserve applicable to the Lady May.

9    It's beyond the pale.

10        And the reason I'm saying all this is because we

11    have to have some way to get actual compliance with the

12    Court's order.

13        The letter that Attorney Vartan sent us on Monday

14    is not compliant.  If there's one asset, the Lady May II,

15    which is a very significant asset, that was omitted from

16    that letter, what else is there?  We have no way of knowing,

17    but we need to know.

18        And maybe we'll never get honest and forthright

19    answers in this case, but at least we can know how he went

20    about gathering this information.  Did he actually even talk

21    to his client?

22        And maybe Attorney Vartan is just being fed, you

23    know, incomplete information from Mei Guo and she's telling

24    him, you know, this is the only asset.  But maybe he's not

25    even talking to her.

1          And even if he is getting information from her,

2    how is he double-checking that?  Did he think to go look at

3    the registry for the Lady May II?  What other diligence

4    could be done to give us the information that we need?

5          And we think a further order in that regard is

6    required for us to get critical information about assets of

7    the estate that we have just never gotten.

8          THE COURT:  And I would note for the record there

9    was a discussion in front of this court on November 30,

10   2022, at which Mr. Moriarty talked about a hypothetical Lady

11   May II and said that as we state in our objection at

12   paragraph 9 if there was a hypothetical Lady May II that was

13   exactly as the Lady May with an order from a court in New

14   York finding what Justice Ostrager found, we would produce

15   responsive documents.

16         But, one, that hypothetical Lady May II was

17   hypothetical.  And two, hypothetical in the meet and confer

18   was if there was a Lady May II would you produce documents?

19   Not will all of the surrounding factual information.  And

20   the response was if there was a Lady May II and the debtor

21   didn't have any interest in it, no responsive documents

22   would be produced.

23         That's what was said to the Court back in -- on

24   November 30, 2022.

25         So to say, Attorney Romney and Attorney Wernick,

1    that you thought the Lady May II was part of the Lady May is

2    not persuasive to the Court.

3           So I'm going to consider whatever remedies the

4    Trustee thinks are appropriate in connection with the issue

5    regarding the Lady May II.

6           Does anyone else wish to be heard?

7           MR. ROMNEY:  Yes, Your Honor.

8           I'd just say in 15 years I've never been accused

9    of making a misrepresentation to a court.  I never made a

10   misrepresentation to a court.  I stand by it now.

11          Attorney Vartan who is not here has spent the

12   majority of his career serving his country for the

13   Department of Justice.  He's a respectful man of honor.

14          All I can tell you is what was going on in my

15   mind.  I'm not the one behind these representations.  But

16   frankly, based upon my understanding, I would have made the

17   same ones too because that's what I believed.  People aren't

18   perfect.  With the benefit of hindsight should this have

19   been disclosed?  Yes.  Clearly it is, they're two different

20   boats.  We did not understand them.

21          The Lady May II, as I understand it, has been

22   sitting in storage since when the Lady May went to Europe.

23   It has been in storage.  It has not been used.  There was

24   nothing to bring back because it never left.  It's been in

25   storage.  Nobody's using it.  Nobody's doing anything with

1    it.  Nobody's been focused on it because the focus has been

2    on the larger yacht.  There was no intent whatsoever to

3    deceive.

4           And that's why I'm standing before this court

5    saying, based on our perception, we are stipulating that the

6    order applies to both vessels and that's all I have to say.

7    But I -- as I said, I've never been accused in 15 years of

8    lying, so today's the first.

9           THE COURT:  I didn't say you -- I didn't accuse

10   you of lying, Mr. Romney.

11          MR. ROMNEY:  But I will stand by my integrity and

12   my honor.

13          THE COURT:  I said you're not persuading me that

14   you thought that the Lady May II was part of the Lady May,

15   number one.

16          Number two, Mr. Vartan's letter of two days, three

17   days ago says earlier today the Court entered an order

18   holding that effective as of 2:55 p.m., on March 27th, the

19   Lady May is property of the debtor's Chapter 11 estate.

20          HK's only other property is the escrowed funds

21   deposited pursuant to the certain escrow agreement.  That's

22   what his letter says.  He doesn't say anything about the

23   Lady May II and he obviously knew about the Lady May II

24   because you're telling me you all knew about it.

25          And who knew that it was stored in a warehouse in

1    Mamaroneck?  I don't.  I've never heard that before today.

2    So how can --

3              MR. ROMNEY:  I didn't either actually, Your Honor.

4              THE COURT:  Well, you could --

5              MR. ROMNEY:  Before yesterday.

6              THE COURT:  Yes, you did, because you read the

7    document that you were served with last night that the

8    Trustee said --

9              MR. ROMNEY:  No.  I said before yesterday.

10             THE COURT:  -- it was in a document -- in a

11   warehouse.

12             So, you know, it's just not -- it's hard to

13   believe the circumstances that the Court is being told.

14   It's very disappointing.  This is a situation where this

15   case -- the fight has been intense, and it is -- it has been

16   constant.

17             And now to say to the Court, well, we didn't think

18   that the Lady May II was different from the Lady May, that's

19   just -- there's nothing in the record to support that

20   thought.  And it's very difficult for the Court to hear what

21   I'm hearing.

22             So I will have to see what Trustee Despins decides

23   and we will go from there.  But I am very, very troubled by

24   this development.

25             MR. ROMNEY:  Your Honor, all I can tell you is

1  what I believed, what I thought, and what I said, and stand

2  by all of it because they're all consistent.

3           I will also put on the record that my

4  understanding to the point of the storage, I learned of the

5  storage issue yesterday.  My understanding had been -- and,

6  again, our focus has always been on the Lady May.

7           To Your Honor's point about there's always been

8  many issues, there's five things going on in this case at

9  once.  We're all human beings.  We can't focus on everything

10  at once.  We're doing our best.  There is no basis for any

11  lack of integrity on the part of myself or Attorney Vartan.

12           My understanding, and granted it was -- I don't

13  know who told me this, it was obviously misinformation.  I

14  had thought that the Lady May II was inside the Lady May I

15  and that's why I thought it was all part of one asset

16  because sometimes larger boats actually house the smaller

17  boat and serve the purpose of transport to and from.  That

18  was my understanding.

19           It was obviously misinformation and it was

20  obviously not something that I considered significant enough

21  to follow up and verify because the focus had been on the

22  Lady May as well as the many other issues at stake.

23           THE COURT:  But, Attorney Romney, I understand

24  what you're saying.

25           However, the discovery process has been ongoing

1    since August.  Tomorrow is April.  So it's very difficult

2    for the Court to look at this in a way that what -- the way

3    that you've described.  This has been going on since April.

4    Mr. Kwok and Ms. Guo and HK USA have been represented by

5    numerous attorneys.  These issues have been raised and

6    discovery has been going on.

7             And actually HK USA came to this court and

8    subjected itself to the jurisdiction of this court in April

9    of last year, so actually, it's been almost a year.

10            And it's very difficult to think that somebody at

11   HK USA and Mei Guo didn't understand that, and their

12   counsel, that the boat known as the Lady May II is a

13   separate and distinct asset when the Trustee and PAX before

14   it in the state court action all was -- all they were trying

15   to do was seize assets, discover and seize assets.  That's

16   clear.  I mean, it's clear.  No one can dispute that.

17            So I understand what you've just said.  But as I

18   said before, I will consider whatever Trustee Despins puts

19   in front of the Court and give anybody an opportunity to

20   respond, but it is very troublesome that this is what is

21   being presented to the Court at this point in time.  And

22   that's putting it mildly.

23            MR. ROMNEY:  Your Honor, the only thing I will say

24   is I don't know how HK or my firm could have been attempting

25   to conceal an asset when my understanding is that Attorney

1   Kindseth at the inception of this case, going back to April,

2   turned over the proof of insurance in the name of HK

3   International to PAX and the Creditors Committee.

4          And to use Trustee Despins' bank robber

5   explanation, so we told PAX and the Committee that we were

6   going to rob a bank and then we robbed the bank a year

7   later, that doesn't make any sense to me.

8          THE COURT:  Okay.  So are you saying the proof of

9   insurance shows that it insures the Lady May and the Lady

10  May II?

11         MR. ROMNEY:  That is my understanding.  Yes.

12         THE COURT:  Well, you'd need to show that to me

13  then.

14         MR. ROMNEY:  I will -- would be glad to.  Would

15  the Court like me to file it on the docket, whatever he has?

16         THE COURT:  Yes.

17         MR. ROMNEY:  Again, it's Attorney Kindseth.  We

18  will put it on the docket today.

19         MR. DESPINS:  Your Honor, these insurance papers,

20  which I have not seen myself, cannot overcome the direct and

21  unequivocal testimony and letters regarding ownership.

22         It just -- and also we know Mr. Vartan was

23  involved in representing the daughter in the PAX litigation,

24  so he knew her position there was the Lady May was owned by

25  the son, not by her.

1          So when did it change that they all agreed that,

2     in fact, it was owned by HK International, everything was

3     fine.  It just makes no sense.  But anyway, the Court

4     doesn't need -- we don't need to resolve that today.

5          I'd like Your Honor's permission to move onto the

6     other aspects of the status conference, which is the Lady

7     May itself.

8          THE COURT:  Yes.  Go right ahead.

9          MR. DESPINS:  Okay.  And this actually is for a

10    change better news.

11         So we received confirmation from the insurers that

12    we have insurance coverage.  I was very nervous about that,

13    but we did get the insurance coverage.  It's in place.

14         We are in the process of changing the ownership

15    registration in the Cayman Islands because that's a Cayman

16    Islands registered ship.

17         And, Your Honor, I have the same reaction you

18    have, because I personally know nothing about yachts and all

19    that, but I thought, hey, if this thing is not moving, why

20    do we need a crew and all that?

21         And I learned a lot about these yachts in the last

22    five days, and basically there are insurance requirements,

23    and the registration requirements that a crew be on there

24    and same thing for the marina.  The marina will not accept

25    the Lady May there unless there's a crew of X, because they

1    need to -- you need that number of people to move the yacht

2    if there's a problem.

3         And so it's all -- and my reaction is we don't

4    need anybody there.  We just lock it up and leave it there.

5    But you can't do that.  So there's a lot of work that needs

6    to be done.

7         For example, there's the management company.  We

8    need to hire the same management company.  We need to have

9    new contracts.  Same thing for the crew.  The crew is hired

10   by some intermediate company and we're working on that.  We

11   are also -- I mentioned the insurance, the crew.  We also

12   need to sign an agreement with the Bridgeport Seaport

13   Marina. That's in progress.

14        And, Your Honor, we will need to file a motion on

15   short notice to get the Court to approve all this because,

16   you know, I'm not in the business, the Trustee is not --

17   it's not in the ordinary course of business for the the

18   Trustee to do this, and so we want the Court to approve the

19   execution of these agreements.

20        And the goal, Your Honor, to be very clear, is to

21   sell this asset as soon as we can.  And in order to do that,

22   we'll need to retain a broker.  We will need to file a

23   motion to get the Court to approve the retention of a broker

24   and the terms of that commission.

25        Next item is, you will recall that there was one

1    repair that needed to be done, which is the valve repairs.

2    That has not been done.  That needs to be done.  That was

3    supposed to be covered by the repair reserve.

4              We'll talk to Mr. Moriarty as to whether they'll

5    agree that it can come out of the repair reserve.  But it

6    needs to.  And if we don't have an agreement, we'll be back

7    in front of Your Honor on this.

8              The next item, Your Honor, is that we may need to

9    move the yacht from Bridgeport to Newport.  And the reason

10   for that, and, again, I'm learning a lot about this, is that

11   because this was a foreign registered ship you cannot market

12   it and sell it in the U.S. with Americans visiting the ship

13   for the purpose of buying it.  You cannot do that.  There

14   are tax issues involved in that.  It's because the ship --

15   it's like an immigration visa.  It has an immigration visa.

16   They can do chartering or cruising around the U.S., but it

17   cannot be in the process of being sold.

18             And in Newport, Rhode Island, I'm informed that

19   there is a tax-free zone where you can actually moor these

20   boats that are foreign, that are on foreign flag, and you

21   can actually sell them or attempt to sell them through that

22   process.

23             So we will keep the Court informed about this and

24   we will not just move it, you know, on short notice, but I

25   want to make sure that the Court knows that there's a very

1   good possibility that we will have to move it to Newport to

2   accomplish a sale or at least to market it.

3          What else?

4          I just want to mention one thing, Your Honor, is

5   that the 500,000 we got is not going to get us very far and

6   that's why we need access to the 33 million because, as I

7   said, it's a shock to me.  I thought we could just lock it

8   up, but you cannot do that.  There's a crew.  There's a

9   management company.  Just, you know, to own these ships you

10  have to be a billionaire.  And we're not a billionaire, so

11  we need to sell it.  And, therefore, depending on how long

12  it takes to sell it, you know, we need access to other

13  funds.

14         Just to give you a sense, just to moor the boat in

15  low season, Your Honor, it costs $16,000 a month in

16  Bridgeport.  In high season, I think it's double or triple

17  that, and we're getting to high season soon.

18         So we will come back to court to report with

19  requests with respect to these various agreements, but I

20  wanted to give Your Honor a preview of that.

21         And of course the crew, the management company,

22  and the marina, you know, they want everything done

23  yesterday.  I said that's not the way it works.  We're in

24  bankruptcy.  We need to -- there's a process, et cetera.

25         But I ask the Court to be prepared for this so

1    that when we ask for short notice, because they're -- they

2    have the ability in theory to walk off and we don't want

3    them to do that obviously.

4           The last point I would ask, Your Honor, is, you

5    know, remember the contempt order you entered and we had to

6    file a fee application by a certain date. We obtained an

7    extension from Your Honor to April 3rd.

8           But given everything that's going on and the work

9    on the summary judgment and all that, we would ask for

10   another extension.  If we could get another seven days to

11   April 10th, we would really appreciate that.  This is the

12   fee application for --

13          THE COURT:  I have no problem with that.  You can

14   take as much as you'd like.  It's a matter of you submitting

15   information that would then form the basis for the sanction

16   that would be imposed.  So that's --

17          MR. DESPINS:  Correct, Your Honor.

18          Okay.  So we will submit an order, I guess, to the

19   courtroom deputy --

20          THE COURT:  Yes.

21          MR. DESPINS:  -- extending it to the 10th of

22   April.

23          THE COURT:  Yes.  Thank you.

24          MR. DESPINS:  And that is all we have for today,

25   Your Honor.

1          THE COURT:  Okay.  Thank you.

2          MR. DESPINS:  Thank you, Your Honor.

3          THE COURT:  Does anyone else wish to be heard?

4      (No response.)

5          THE COURT:  Okay.  Hearing nothing, then this is

6   the last matter on the calendar, so court is adjourned.

7   Thank you.

8      (Proceedings concluded at 2:33 p.m.)

9              I, CHRISTINE FIORE, Certified Electronic

10  Court Reporter and Transcriber, certify that the foregoing

11  is a correct transcript from the official electronic sound

12  recording of the proceedings in the above-entitled matter.

13

14  *Christine Fiore*

15  _____            April 7, 2023

16     Christine Fiore, CERT

17

18

19

20

21

22

23

24

25