**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| HO WAN KWOK, *et al.*[1] | : | Case No. 22-50073 (JAM) |
| Debtors. | : | (Jointly Administered) |

**DEBTOR'S MOTION FOR A LIMITED STAY OF ORDER GRANTING IN PART MOTION TO COMPEL COMPLIANCE WITH RULE 2004 SUBPOENA**

Debtor Ho Wan Kwok (the "**Debtor**"), hereby respectfully moves (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), staying this Court's *Order Granting in Part Motion to Compel Compliance with Rule 2004 Subpoenas* dated January 20, 2023 (the "**January 20 Order**") on a limited basis to preserve the Debtor's rights under the Fifth Amendment to the United States Constitution (the "**Fifth Amendment**"). In support of this Motion, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  The Debtor was indicted on March 6, and on March 15 he was arrested and detained in connection with alleged wide-ranging, grievous, and consequential federal crimes. The United States has alleged that the Debtor has engaged in a years-long conspiracy to defraud

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

investors—many of whom have asserted claims in these chapter 11 cases—that has resulted in alleged losses amounting to $1 billion. The gravamen of the government's allegations is that, as "The Principal," the Debtor directed and controlled a host of entities to perpetuate a series of fraudulent schemes, allegations that in many respects mirror many of the allegations asserted in this case by the Chapter 11 Trustee in support of the discovery and other relief he has sought before this Court.

2.  The Debtor has the Constitutional right to a full and fair opportunity to defend against these charges. Critical to his Constitutional protections is the Debtor's rights under the Fifth Amendment to the U.S. Constitution, which enshrines the right of an individual to not bear witness against himself.

3.  In these chapter 11 proceedings, prior to the unsealing of that indictment and the Debtor's arrest and detention, this Court ordered the Debtor to respond to the Trustee's request for documents relating to entities and individuals purportedly under the Debtor's "control." Compliance with this Court's directive necessarily would require the Debtor to communicate— beyond the mere act of producing the documents—whether, among other things, he believes the various entities and individuals are under the Debtor's "control." This directive would require the Debtor to choose between compliance with that order and the Debtor's ability to assert his privilege against self-incrimination, and his ability to fully and fairly defend himself against the criminal charges.

4.  Accordingly, the Debtor hereby respectfully requests a limited stay of the January 20 Order as necessary and appropriate to protect the Debtor's Fifth Amendment privilege against self-incrimination, and to otherwise afford him a full and fair opportunity to defend against the charges leveled against him.

**BACKGROUND**

  A. **Pending Criminal Proceedings**

  6. On March 15, 2023, a twelve-count indictment was unsealed in the United States District Court for the Southern District of New York charging the Debtor and King Ming Je ("**Mr. Je**") with various federal crimes.[2] The Debtor was arrested by federal law enforcement authorities on March 15, 2023, and remains in federal custody.

  7. On March 29, 2023, the government filed a *Superseding Indictment*, attached hereto as **Exhibit B**. The Superseding Indictment names Yanping Wang ("**Ms. Wang**") as an additional co-defendant. The government alleges that the Debtor, Mr. Je, and Ms. Wang "conspired to defraud thousands of victims of more than approximately $1 billion." [Ex. B at ¶1.] The government further alleges that Debtor, Mr. Je, and Ms. Wang "operated through a series of complex fraudulent and fictious businesses and investment opportunities that connected dozens of interrelated entities, which allowed the defendants and their co-conspirators to solicit, launder, and misappropriate victim funds." [*Id.*]

  8. The government has made direct allegations against the Debtor and his alleged co-conspirators in connection with this Chapter 11 proceeding, stating that they "operated the scheme for years" by "continually adapting the scheme's means and methods to evade the enforcement of investor-protection, anti-money laundering, and ***bankruptcy laws in the United States*** . . . ." [*Id.* at ¶5.]

  9. The government further alleges that the Debtor "was the leader of, and directed, the scheme." [Ex. B at ¶ 6.] Throughout the Superseding Indictment, the government alleges that the Debtor controlled various entities and individuals. For example, the government alleges that the

---

[2]  *See United States v. Ho Wan Kwok et al.*, Case Number S1 23 Cr. 118 (AT), pending in the United States District Court for the Southern District of New York.

Debtor "functionally owned and controlled" GTV Media Group, Inc., "although [Debtor] held no formal position or title" in that entity. [Ex. B at ¶ 10.] Furthermore, the government alleges that G|Clubs "was functionally owned and controlled by [the Debtor] although [the Debtor] held no formal position or title at G|Clubs." [*Id.* at ¶11.] The government also alleges that "[e]ntities functionally owned and controlled by [the Debtor], such as G|Clubs and G|Fashion, had purported business relationships with the Himalaya Exchange . . ." and that the Debtor "claimed to be the designer of its purported cryptocurrency, although [the Debtor] held no formal position or title at the Himalaya Exchange." [*Id.* at ¶12.] In allegations of "control" that mirror those made by the Trustee, the government alleges that the Debtor "directed" that "$100 million raised from investors" be transferred into a hedge fund. [*Id.* at ¶13h.] The government further alleges that this transfer was made by Ms. Wang (at the Debtor's direction). [*Id.* at ¶32b.]

B. **The Trustee's Investigation**

10. On February 15, 2022 (the "**Petition Date**"), the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On July 8, 2022, the Court entered its *Order Granting Appointment Of Chapter 11 Trustee* (Doc. No. 523), appointing Luc Despins as the Chapter 11 trustee in this case (the "**Trustee**").

11. On July 28, 2022, the Trustee filed his i) *Motion for 2004 Examination of the Debtor* (Doc. No. 636), ii) *Omnibus Motion of Chapter 11 Trustee For Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Legal and Financial Advisors to the [Individual] Debtor* (Doc. No. 637), and iii) *Omnibus Motion of Chapter 11 Trustee For Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Entities and Individuals Affiliated with the Debtor* (Doc. No. 638) (collectively the "**July Rule 2004 Exam Motions**").

12. On August 5, 2022, the Debtor filed his *Limited Objection to Rule 2004 Motions* (Doc. No. 703) to preserve certain rights, including the right to assert objections to the requests for the production of documents that would be served with the subpoena attached to the July Rule 2004 Exam Motions after the subpoena was actually served. By orders dated August 16, 2022, this Court granted the July Rule 2004 Exam Motions.

C. **The Rule 2004 Subpoena**

13. The Debtor was served with a Rule 2004 subpoena (the "**Rule 2004 Subpoena**") on August 19, 2022. The Debtor served timely objections to the document requests attached to that Subpoena, asserting objections to certain of the enumerated Instructions and Definitions included with the requests for production, as well as objections to certain of the requests for production.

14. The Rule 2004 Subpoena contains thirty requests for the production of documents, of which twenty include demands for documents relating to "Associated Individuals" and/or "Associated Entities." [*See* Rule 2004 Subpoena, *passim*.]

15. An Associated Individual is defined, in relevant part, as "individually and collectively, all individuals that (1) hold, control, have custody over, or discretion over assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family; or (2) have been employees, directors, or otherwise affiliated with one or more Associated Entities, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing." [*Id.*] The definition of Associated Individuals includes twenty-seven individuals, which would seem to include the alleged criminal co-conspirators and co-defendants, Ms. Wang and Mr. Je.

16. An Associated Entity is defined, in relevant part, as "individually and collectively, all organizations or Entities of any type that (1) have been owned, controlled, or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets

5

owned, controlled, or enjoyed by the Debtor or the Debtor's Family, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing," [*Id.*] The definition of Associated Entity includes seventy-seven entities, including the following entities listed in the Superseding Indictment: GTV Media Group, Inc., G|Club Operations, LLC, G|MUSIC, Himalaya Exchange, Saraca Media Group, Inc., Rule of Law Foundation III, Inc., Rule of Law Foundation IV, Inc., Rule of Law Fund, Rule of Law Society, Rule of Law Society IV, Inc., and related entities.

17. The Debtor agreed to produce, and through his professionals and former professionals did produce, the vast majority of documents requested by the Trustee in the requests for production. The Debtor objected to the production of certain categories of documents, primarily documents related to the assets of his "family," which the Trustee defined to include "the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor."

18. On October 28, 2022, the Trustee filed his *Motion of Chapter 11 Trustee for Entry of Order Compelling Individual Debtor, [and Others] to Comply with Rule 2004 Subpoenas* (Doc. No. 1046) (the "**Motion to Compel**").

19. On November 14, 2022 the Debtor (and others) filed their *Joint Objection of the Debtor, Mei Guo, and HK International Funds Investments (USA) Limited, LLC to Chapter 11 Trustee's Motion to Compel Compliance with Rule 2004 Subpoenas* (Doc. No. 1090). This Court held a hearing on the Motion to Compel on November 30, 2022.

20. The Court entered the January 20 Order. As it relates to the Debtor, the January 20 Order required that the Debtor produce the following:

    a. "documents responsive to the Trustee's requests dated June 1, 2014 or later;"

b. "documents responsive to the Trustee's requests as to both assets he acknowledges he owns and assets belonging to persons or entities other than the Debtor, including without limitation his family members and associated entities;" and

c. "documents responsive to the Trustee's requests that are within his custody, possession, or control, including without limitation documents in the files of his current or former counsel and other agents and advisors, unless such documents have already been produced by his current or former counsel and other agents and advisors but without consideration of any future potential production by his current or former counsel and other agents or advisors." [January 20 Order, Doc. No. 1353 at p. 4.]

21. The Order further demanded that the Debtor file, by 5:00 p.m. on February 7, 2023, a sworn declaration concerning, *inter alia*, efforts to locate and review responsive documents. [*Id.* at p. 4-5.]

**D.    The Debtor Invokes the Fifth Amendment**

22. The Debtor's counsel thereafter informed the Trustee's counsel that the Debtor is asserting his rights under the Fifth Amendment, including any rights under the act of production doctrine, and on February 7, 2023, the Debtor filed a sworn declaration stating:

> I am the Debtor in the above-captioned Chapter 11 case and am in receipt of the Court's order on the Trustee's Motion to Compel, dated January 20, 2023, Doc. No. 1353. I hereby invoke my rights under the 5th Amendment to the United States Constitution, including under the act of production doctrine, with respect to the Subpoena dated August 17, 2022, in its entirety, including all requests for documents and information set forth therein.

February 7, 2023, *Declaration of Mr. Ho Wan Kwok Concerning Invocation of Fifth Amendment Privilege in Regard to Rule 2004 Discovery* (Exhibit A to Doc. No. 1444).

23. On February 10, 2023, the Trustee filed a motion for an *Order to Show Cause* why Debtor [and others] should not be held in *Contempt of Court for Failure to Comply with Order Compelling Compliance with Rule 2004 Subpoenas and Sanctioned for such Contempt* (Doc. No. 1453). The Trustee's Motion challenges the Individual Debtor's invocation of his Fifth

Amendment privilege in response to the Motion to Compel Order and seeks to hold the Debtor in contempt.

24. On February 13, 2023, this Court issued its *Order Granting In Part Motion for Order to Appear and Show Cause Why the Court Should not Hold the HK Parties in Contempt of Court* (the "**February 13 Order**" (Doc. No. 1455)). The February 13 Order stated that the Court would set a briefing schedule on the Debtor's assertion of his Fifth Amendment privilege at the conclusion of the mediation. *Id.*, at 2. Following the completion of the mediation, on March 7, 2023, this Court held a status conference on a number of matters.[3] During the status conference the Court ordered the Debtor to respond to the Order to Show Cause by March 28, 2023. The Debtor's time to respond to the Order to Show Cause was subsequently extended to April 10, 2023.

## RELIEF REQUESTED

25. The Debtor respectfully seeks, pursuant to section 105 the Bankruptcy Code, the entry of an order, substantially in the form attached hereto as **Exhibit A**, staying this Court's January 20 Order on a limited basis to the extent necessary to preserve Debtor's Constitutional rights under the Fifth Amendment. Specifically, rather than seek a stay of the entire bankruptcy case, the relief sought herein is limited to relieving the Debtor from further compliance with the January 20 Order pending resolution of the parallel criminal proceedings.

26. This limited relief is appropriate for several reasons. First, while the Debtor has already produced a number of documents, such as his personal tax returns, the Debtor is now incarcerated, and the government has seized what it views as all of the Debtor's records and

---

[3] The Debtor was indicted the prior day, although neither the Court nor the Debtor was aware of that fact. The Debtor now understands that the Trustee had been in regular contact with the Government as to the possibility of the criminal charges, but the Debtor does not know whether the Trustee knew at that time that the indictment had been actually issued the day before.

devices. The Debtor therefore does not have responsive documents in his possession and cannot produce anything further, at least in the foreseeable future.

27.     Second, the only portion of the requests still at issue relate to those documents that the Trustee alleges are held by other entities or individuals, but within the Debtor's "control." As explained below, the production of such documents is necessarily testimonial and compliance would require waiver of the Debtor's Constitutional rights. Nor can the Debtor provide a declaration attesting to his efforts to locate and review responsive documents where the very production of those documents would impact his Fifth Amendment privilege against self-incrimination—there is simply no testimony for him to provide consistent with exercise of his Constitutional rights.

28.     Therefore, a limited stay relieving the Debtor of further compliance with the order is necessary and legally warranted. Courts have found limited stays similar to the stay requested herein appropriate. *See, e.g.*, *Brock v. Tolkow*, 109 F.R.D. 116, 119-20 (E.D.N.Y. 1985) (stay found appropriate where defendants sought a limited stay of discovery pending the outcome of a criminal investigation, and not a stay of the entire civil case). For example, in *O'Connell v. Wells Fargo Bank, N.A. et al. (In re Julmice)*, defendants in an adversary proceeding were indicted in a parallel criminal proceeding. 458 B.R. 657, 664 (Bankr. E.D.N.Y. 2011). To protect the defendants' Fifth Amendment rights, which would have been prejudiced if the defendants were required to defend the adversary proceeding while the criminal charges were pending, the court found that a limited stay was warranted. For the reasons and on the basis of the authorities discussed below, such a stay should be ordered here, too.

**BASIS FOR RELIEF**

29. In general, a court has discretion to stay a civil action during the pendency of a criminal action if justice so requires. *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). To prevail on a motion for a stay, a defendant need show only that the continuation of the civil proceeding will unduly prejudice him or interfere with his constitutional rights. *Sterling Nat'l Bank v. A-1 Hotels, Int'l Inc.*, 175 F. Supp. 2d 573, 575–576 (S.D.N.Y. 2001).

    A.    <u>The January 20 Order Prejudices Debtor's Fifth Amendment Privilege Against Self-Incrimination</u>

30. Here, further enforcement of the January 20 Order at this time, pending the resolution of the criminal charges, will severely and unduly prejudice the Debtor's constitutional privilege against self-incrimination. The Fifth Amendment declares in part: "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. Amend. V. The privilege may be invoked whether the answer would itself support a criminal conviction **_or_** where the answer would furnish a link in the chain of evidence required to prosecute. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Importantly, the disclosure need not be an element of the crime to preclude disclosure—it merely must ***tend to incriminate the witness***. *United States v. St. Pierre*, 132 F.2d 837, 838 (2d Cir.1942) (emphasis added). The privilege applies where the declarant has reasonable cause to fear the consequences of an answer. *Hoffman*, 341 U.S. at 486.

31. The compelled production of documents may implicate Fifth Amendment concerns. An individual may assert his Fifth Amendment right against self-incrimination to avoid producing documents if the act of producing the documents would tend to incriminate him. *Fisher v. U.S.*, 425 U.S. 391, 410 (1976). The doctrine operates to prevent an individual from being compelled to furnish evidence against themselves by the very act of producing documents. In brief, "[t]he act of producing evidence in response to a subpoena . . . has communicative

aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the person subpoenaed. It would also indicate the person's belief that the papers are those described in the subpoena." *Fisher*, 425 U.S. at 410 (citations and quotations omitted).

32. That act of production doctrine squarely applies here: where the heart of the criminal indictment is that the Debtor is alleged to have control over many other persons and entities, the Debtor will and does dispute that contention, and the Trustee seeks the Debtor here to cause those persons and entities to do certain things. Accordingly, compliance with the January 20 Order would require the Debtor to effectively waive his Fifth Amendment privilege. The January 20 Order requires the Debtor to produce documents in response to the Requests in the Rule 2004 Subpoena relating to "assets allegedly belonging to persons or entities other than the Debtor, including without limitation his family members and associated entities." [*Id.*] Finally, the January 20 Order directs the Debtor to turn over the files of his "current or former counsel and other agents and advisors" to the extent those files include documents responsive to the requests. [*Id.*]

33. However, nearly every one of the requests in the Rule 2004 Subpoena requires the Debtor to communicate his belief, and then to act on such belief, as to whether or not the entities or individuals referenced in the Subpoena are within his "control." Several of the entities listed in the Rule 2004 Subpoena, and at least two individuals, are specifically named in the Superseding Indictment as individuals or entities over whom the Debtor had "control." Compliance with the January 20 Order would force the Debtor to take positions and make admissions inconsistent with his Fifth Amendment privilege against self-incrimination – precisely what the Constitution prohibits.

34. Importantly, the government has alleged a years-long and pervasive "fraud." Further, the government may yet supersede its indictment again. As such, even as to those entities and individuals listed in the Rule 2004 Subpoena but not in the Superseding Indictment, the Debtor has a reasonable apprehension of incrimination, and invokes his Fifth Amendment privilege as to those entities and individuals as well.

      **B.     A Limited Stay of the January 20 Order is Appropriate here to Preserve Debtor's Fifth Amendment Privilege against Self-Incrimination**

35. Courts regularly grant stays of civil proceedings pending the resolution of parallel criminal proceedings. *In re Par Pharmaceutical*, 133 F.R.D. 12, 13 (S.D.N.Y.1990) ("[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment"); *see also Wheling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1089 (5th Cir. 1979) (civil discovery stayed until "all threat of criminal liability ended"). It is well-settled that a court has the discretion to impose a stay to preclude prejudice to a defendant's Fifth Amendment privilege. *Kashi v. Gratos*, 790 F.2d 1050, 1057 (2d Cir. 1986). "Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *See Trustee of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1138-39 (S.D.N.Y. 1995) (citations omitted).

36. A court will balance the following factors when determining whether to stay a civil proceeding pending resolution of a criminal action: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiff in

12

proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *Transworld*, 886 F. Supp. at 1139; *Hicks v. City of New York*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003). As set forth in greater detail below, all of the factors warrant the imposition of a limited stay of the January 20 Order.

                **i.**        **Overlap Between the Criminal Case and the Rule 2004 Subpoena**

37. The first factor is the "most important factor" to be considered in determining whether it is appropriate to stay civil litigation related to a pending criminal matter. *See Transworld*, 886 F. Supp. at 1139. This is so because "self-incrimination is more likely if there is a significant overlap" between the criminal and non-criminal proceedings. *Id.*

38. Here, as set forth above, the core allegations in the Superseding Indictment are allegations of control with respect to entities and individuals that are directly identical to the admissions sought by way of the Rule 2004 Subpoena – precisely the heart of the Trustee's asserted grounds for relief against the Debtor. This is especially true now where the Debtor himself has no access to any of his own books and records, all of which have been seized. There is significant overlap between the Trustee's claims and those in the Superseding Indictment. For example, the Rule 2004 Subpoena assumes the Debtor's control of both of his co-defendants—an allegation identical to that in the Superseding Indictment that the Debtor is the "The Principal" and the leader of the alleged conspiracy. Furthermore, at least ten of the entities listed in the Rule 2004 Subpoena as entities over which the Debtor has control are entities specifically mentioned in the Superseding Indictment as entities by which the Debtor perpetuated the alleged fraud. Here, compliance with the January 20 Order directly hits at the truth or falsity of the

allegations in the Superseding Indictment because of the existing "significant overlap." *Transworld*, 886 F. Supp. at 1139.

39. The Debtor understands that the Trustee is in constant communication and working cooperatively with the prosecutors and law enforcement in the criminal proceedings. As set forth above, a stay is critically important where proceeding with the non-criminal proceeding would "extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b) or expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *See Transworld*, 886 F. Supp. at 1139 (citations omitted). Here, where there is significant overlap between the Trustee's claims and the criminal allegations, and where the Trustee is cooperating and acting in concert with prosecutors and federal law enforcement agencies, the risk of self-incrimination is heightened, and a stay is warranted.

### ii. Status of the Criminal Case

40. Furthermore, a civil proceeding generally will be stayed if, as here, the defendant has been indicted. *Hicks*, 268 F.Supp.2d at 242. Specifically, "the likelihood that a defendant may make incriminating statement is greatest after an indictment has issued, and ... the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Transworld*, 886 F. Supp. at 1139. With respect to this factor, courts consider the strain on the defendant's resources from having to simultaneously defend multiple actions, as well as the risk of exposing the defense's theory to the prosecution in advance of trial. *See, e.g., Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F.Supp.2d 263, 265 (E.D.N.Y. 2002). Here, the Debtor has been indicted in the Southern District of New York, and must now expend scarce resources to defend overlapping claims in

multiple fora.  As a practical matter, the Debtor is incarcerated with severe limits on his ability to even confer with his attorneys, to make or receive calls, or to otherwise meaningfully participate in any efforts to comply with the Rule 2004 Subpoena.  A stay of the January 20 Order will enable the Debtor to focus on preparing his defense against the criminal charges against him.

### iii.    The Prejudice to the Trustee in Connection with a Limited Stay

41.    Here, there is little to no prejudice to the Trustee in connection with a stay of the January 20 Order.  In connection with the criminal proceedings, all or virtually all the assets that are alleged by the Trustee to be possibly assets of the chapter 11 estate have been seized by federal law enforcement authorities.  The Debtor has no access to any of them, never mind the ability to dissipate them. As such, it is unlikely that these proceedings will advance in any meaningful way until the resolution of the criminal proceedings.  Accordingly, the Debtor respectfully asserts that the Trustee will not be prejudiced by a limited stay of the January 20 Order.

### iv.    The Interests of, and Burden on, the Debtor

42.    Here, as set forth above, the interests of the Debtor in a stay of the January 20 Order are immense.  The allegations against the Debtor are serious, his very life and liberty are at stake, and the Debtor has a compelling interest in securing his freedom from the threat of life in prison.  The burden on him here is similarly grave: he is forced to either be held in contempt of this Court for invoking his Constitutional privilege to not bear witness against himself; or to comply with the January 20 Order and waive his constitutional right, greatly handicapping his defense of these serious criminal charges as a result.  This factor weighs heavily in favor of a limited stay of the January 20 Order.

15

### v. The Interests of the Court and of the Public

43. Here, the court and public would benefit from a limited stay of the January 20 Order because, as set forth above, the interests of judicial efficiency favor a resolution of the criminal proceedings in advance of this proceeding. Specifically, courts have found that where criminal prosecution is not merely conjectural, and defendants have been indicted and face trial imminently, judicial efficiency weighs in favor of granting a stay. *See Transworld*, 886 F.Supp. at 1140 (explaining that "resolution of the criminal case may increase the possibility of settlement of the civil case").

44. Nor would the public interest be harmed by the stay. As set forth above, the Debtor is seeking a limited stay of the January 20 Order, rather than the entire bankruptcy case, and in any event, in light of the criminal case, the assets at issue in the bankruptcy case have been or will likely by seized and frozen. As such, the public interest will not be harmed by the limited stay of the January 20 Order. Furthermore, a stay of the January 20 Order would promote due process by affording the Debtor and full and fair opportunity to defend the criminal charges against him.

### CONCLUSION

For the foregoing reasons, the Debtor respectfully requests the entry of an order staying the January 20 Order, and relieving the Debtor of the obligation to produce any documents or to submit any declaration in further connection with the January 20 Order.

Dated: April 10, 2023                                           Respectfully submitted,

/s/ *Dylan P. Kletter*
Dylan P. Kletter (ct28197)
Brown Rudnick LLP
185 Asylum Street, 38th Floor

Hartford, Connecticut 06103
Tel: (860) 509-6500
Fax: (860) 509-6501
Email: dkletter@brownrudnick.com

Stephen R. Cook (*pro hac vice pending*)
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Tel: (949) 752-7100
Fax: (949) 252-1514
Email scook@brownrudnick.com

Stephen A. Best (*pro hac vice pending*)
601 13th Street, NW, Suite 600
Washington, DC 20005
Tel.: (202) 536-1737
Fac : (219) 938-2937
Email: sbest@brownrudnick.com

SPECIAL (CRIMINAL DEFENSE) COUNSEL
FOR DEBTOR HO WAN KWOK

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Dylan P. Kletter