**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| HO WON KWOK, *et al.,*[1] | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**INDIVIDUAL DEBTOR'S OBJECTION TO THE**
**CHAPTER 11 TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE**
**WHY DEBTOR SHOULD NOT BE HELD IN CONTEMPT**

Ho Wan Kwok (the "Debtor"),[2] by and through his undersigned counsel, hereby objects to the Motion of Chapter 11 Trustee For Order to Show Cause Why Debtor … Should not be Held in Contempt of Court for Failure to Comply with Order Compelling Compliance with Rule 2004 Subpoenas and Sanctioned for Such Conduct (Doc. No. 1453, the "Motion"). Because of his criminal indictment, the Debtor does not have a present ability to comply with this Court's Order Granting in Part Motion to Compel Compliance with Rule 2004 Subpoenas (the "January 20 Order") without waving his Fifth Amendment privilege, assuming he ever had the ability to comply. If this Court were to hold the Debtor in contempt, it would be compelling the Debtor to waive his Fifth Amendment privilege, but the Fifth Amendment prohibits this Court from

---

[1] The debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] As used herein the term "Debtor" refers only to the individual debtor Ho Wan Kwok.

compelling the Debtor to be a witness against himself. In support of his objection, the Debtor respectfully states:

## **PRELIMINARY STATEMENT**

1.     By the Motion, the Trustee seeks to have this Court hold the Debtor in contempt for failing to comply with the January 20 Order. In the January 20 Order, this Court ordered the Debtor to produce certain documents to the Trustee on or before January 31, 2023, and to file a sworn declaration on or before February 7, 2023, describing the document collection, search and review actions taken by him and his counsel in response to the Rule 2004 Subpoena (as defined below). The Debtor invoked his Fifth Amendment privilege against self-incrimination in response to the January 20 Order. The gravamen of the Motion is that the Debtor's invocation of his rights under the Fifth Amendment on January 31 and February 7, in response to the January 20 Order, was not proper.

2.     There has been a massive intervening event since the entry of the January 20 Order. As stated in the Debtor's Motion for a Limited Stay of Order Granting in Part Motion to Compel Compliance with Rule 2004 Subpoena (the "Stay Motion"), filed of even date herewith, the "Debtor is charged with grievous and consequential federal crimes. The government has alleged that the Debtor has engaged in a years-long conspiracy to defraud investors that has resulted in losses amounting to $1 billion. The gravamen of the government's allegations is that, as 'The Principal,' the Debtor directed and controlled entities to perpetuate a pervasive fraud. The Debtor must be afforded a full and fair opportunity to defend against these grave charges." Stay Motion, ¶ 2.

3.     The Fifth Amendment to the United States Constitution provides in part that no person "shall be compelled in any criminal case to be a witness against himself …." As discussed

further below and in the Stay Motion, present compliance with the January 20 Order would require the Debtor to waive his Fifth Amendment privilege. Given the extremely broad and non-specific allegations made by the government in the criminal action described herein, the nature and the early stage of the criminal proceedings, the extremely broad requests made in the Rule 2004 Subpoena, the known substantial overlap between the allegations made by the government and the requests made in the Rule 2004 Subpoena, and the unknown possible further overlap between the allegations made by the government and the requests made in the Rule 2004 Subpoena, this Court should not enter an order that would compel the Debtor to waive his Fifth Amendment privilege or, at the very least, the Court should defer consideration of entry of such an order until the criminal proceedings are concluded.

## **BACKGROUND**

4.      On February 15, 2022, the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On July 8, 2022, the Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

5.      On July 28, 2022, the Trustee filed his i) Motion for 2004 Examination of the Debtor (Doc. No. 636, the "Debtor 2004 Motion"), ii) Omnibus Motion of Chapter 11 Trustee For Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Legal and Financial Advisors to the Debtor (Doc. No. 637), and iii) Omnibus Motion of Chapter 11 Trustee For Entry of Order Under Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Discovery with Respect to Various Entities and Individuals Affiliated with the Debtor (Doc. No. 638) (collectively the "July Rule 2004 Exam Motions"). In terms of the type of information the Trustee is seeking pursuant to the Rule 2004 Subpoena (defined below), in the

Debtor 2004 Motion the Trustee alleged, among other things, that "[r]eports suggest that the Debtor … has a financial interest in myriad for-profit and not-for-profit entities," that the "Debtor has an extensive network of shell companies he uses to pursue business interests and store his wealth," and that the "Debtor … reportedly owns or controls 'more than 60 commercial, nonprofit and online groups' collectively referred to as the whistleblower movement." Debtor 2004 Motion, ¶¶ 12, 13 and 28. In the Debtor 2004 Motion, the Trustee made specific reference to, among other entities and individuals, GTV, GClubs, GMusic, the Rule of Law Society, the Rule of Law Foundation, Saraca Media Group, Inc., and the Debtor's family members.

6.      On August 5, 2022, the Debtor filed the Debtor's Limited Objection to Rule 2004 Motions (Doc. No. 703) to preserve certain rights, including the right to assert objections to the requests for the production of documents that would be served with the subpoena attached to the July Rule 2004 Exam Motions after the subpoena was actually served. By orders dated August 16, 2022, this Court granted the July Rule 2004 Exam Motions.

7.      The Debtor was served with a Rule 2004 subpoena (the "Rule 2004 Subpoena") through his counsel on August 19, 2022. The Rule 2004 Subpoena contains thirty requests for the production of documents, of which twenty include demands for documents relating to "Associated Individuals" and/or "Associated Entities."

8.      An Associated Individual is defined in the Rule 2004 Subpoena, in relevant part, as "individually and collectively, all individuals that (1) hold, control, have custody over, or discretion over assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family; or (2) have been employees, directors, or otherwise affiliated with one or more Associated Entities, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of

any of the foregoing." The definition of Associated Individuals includes twenty-seven individuals, including Yanping Wang ("Ms. Wang") and Je Kin Ming ("Mr. Je").

9.      An Associated Entity is defined in the Rule 2004 Subpoena, in relevant part, as "individually and collectively, all organizations or Entities of any type that (1) have been owned, controlled, or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing." The definition of Associated Entity includes seventy-seven entities, including: GTV Media Group, Inc., G|Club Operations, LLC, G|MUSIC , Himalaya Exchange, Saraca Media Group, Inc., Rule of Law Foundation III, Inc., Rule of Law Foundation IV, Inc., Rule of Law Fund, Rule of Law Society, Rule of Law Society IV, Inc., and related entities.

10.      The Debtor served timely objections to the document requests attached to the subpoena, asserting objections to certain of the enumerated Instructions and Definitions included with the requests for production, as well as objections to certain of the requests for production. The Debtor objected to the production of certain categories of documents, primarily documents related to the assets of his "family," which the Trustee defined to include "the Debtor, the Debtor's Son, the Debtor's Daughter, and the Debtor's Purported Wife, and any other familial relation to the Debtor." The Debtor agreed to produce, and through his professionals and former professionals did produce, certain documents requested by the Trustee in the requests for production.

11.      On October 28, 2022, the Trustee filed his Motion of Chapter 11 Trustee for Entry of Order Compelling Individual Debtor, [and Others] to Comply with Rule 2004 Subpoenas (Doc. No. 1046 the "Motion to Compel"). On November 14, 2022 the Debtor filed his Joint Objection of the [Individual] Debtor, Mei Guo, and HK International Funds Investments (USA) Limited,

LLC to Chapter 11 Trustee's Motion to Compel Compliance with Rule 2004 Subpoenas (Doc. No. 1090). This Court held a hearing on the Motion to Compel on November 30, 2022, and entered the January 20 Order on January 20, 2023.

12.     On February 1, 2023, the Debtor through counsel informed the Trustee through counsel that the Debtor was asserting his rights under the Fifth Amendment, including any rights under the Act of Production Doctrine, in response to the January 20 Order. On February 7, 2023, the Debtor filed a sworn declaration stating:

> I am the Debtor in the above-captioned Chapter 11 case and am in receipt of the Court's order on the Trustee' s Motion to Compel, dated January 20, 2023, Doc. No . 1353. I hereby invoke my rights under the 5th Amendment to the United States Constitution, including under the act of production doctrine, with respect to the Subpoena dated August 17, 2022, in its entirety, including all requests for documents and information set forth therein.

February 7, 2023, Declaration of Mr. Ho Wan Kwok Concerning Invocation of Fifth Amendment Privilege in Regard to Rule 2004 Discovery (Exhibit A to Doc. No. 1444).

13.     The Trustee filed the Motion on February 10, 2023.

14.     On February 13, 2023, this Court issued its Order Granting in Part Motion for Order to Appear and Show Cause Why the Court Should not Hold the HK Parties in Contempt of Court (Doc. No. 1455, the "February 13 Order"). The February 13 Order stated that the Court would set a briefing schedule on the Debtor's assertion of his Fifth Amendment privilege at the conclusion of mediation that the Court had ordered. *Id.*, at 2. Following the completion of such mediation, on March 7, 2023, this Court held a status conference on a number of matters. During the status conference the Court ordered the Debtor to respond to the Order to Show Cause by March 28, 2023. The Debtor's time to respond to the Order to Show Cause was subsequently extended to April 10, 2023.

15.    On March 15, 2023, a twelve-count indictment was unsealed in the United States District Court for the Southern District of New York charging the Debtor, King Ming Je and *others known and unknown* with various federal crimes. *United States v. Ho Wan Kwok et al.*, Southern District of New York Case Number S1 23 Cr. 118 (AT), Doc. No. 2. The Debtor was arrested by federal law enforcement authorities on March 15, 2023, and remains in federal custody. The government has stated that through the execution of search warrants it recovered from premises that it asserts are the Debtor's premises cellphones, computers or laptops, and external media storage devices. *Id.*, Doc. No. 26.

16.    On March 29, 2023, the government filed a *Superseding Indictment*. The Superseding Indictment names Ms. Wang as a co-defendant. The government alleges that the Debtor, Mr. Je, Ms. Wang and *others known and unknown* "conspired to defraud thousands of victims of more than approximately $1 billion." *Id.*, Doc. No. 19, ¶ 1. The government further alleges that the Debtor, Mr. Je, Ms. Wang and "their co-conspirators operated through a series of complex fraudulent and fictious businesses and investment opportunities that connected dozens of interrelated entities, which allowed the defendants and their co-conspirators to solicit, launder, and misappropriate victim funds." *Id.* The government further alleges that the Debtor and Mr. Je "transferred, and directed the transfer of, money into and through more than approximately 500 accounts held in the name of at least 80 different entities or individuals." Id. ¶ 3. The government names some of such entities or individuals, including GTV, GClubs, GMusic, the Rule of Law Society, the Rule of Law Foundation, Saraca Media Group, Inc., and the Debtor's family members (entities and individuals listed in the Rule 2004 Subpoena), but the great majority of such "dozens of interrelated entities", "80 different entities or individuals" and "approximately 500 accounts" are not named or identified.

17.    Significantly, the government alleges that the Debtor and his alleged co-conspirators "operated the scheme for years" by "continually adapting the scheme's means and methods to evade the enforcement of investor-protection, anti-money laundering, and bankruptcy laws in the United States" and that the Debtor "was the leader of, and directed, the scheme." *Id*., ¶¶ 5-6.

18.    Throughout the Superseding Indictment, the government alleges that the Debtor controlled various entities and individuals, some named and many not named. For example, the government alleges that the Debtor "functionally owned and controlled" GTV Media Group, Inc., "although [Debtor] held no formal position or title" in that entity. *Id*., ¶ 10. Furthermore, the government alleges that G|Clubs "was functionally owned and controlled by [the Debtor] although [the Debtor] held no formal position or title" at G|Clubs. *Id.,* at ¶ 11. The government also alleges that "[e]ntities functionally owned and controlled by [the Debtor], such as G|Clubs and G|Fashion, had purported business relationships with the Himalaya Exchange . . ." and that the Debtor "claimed to be the designer of its purported cryptocurrency, although [the Debtor] held no formal position or title at the Himalaya Exchange." *Id.,* at ¶12. Importantly, the government alleges that the Debtor "directed" that "$100 million raised from investors" be transferred into a hedge fund. *Id.,* ¶13h. The government further alleges that this transfer was made by Ms. Wang (at the Debtor's direction). *Id.,* ¶ 32b. While in the Superseding Indictment the government refers to certain individuals and entities by name, the government refers repeatedly to "others known and unknown" that conspired with the Debtor in the alleged fraud, *id*., ¶¶ 1, 13, 15-17, 22, 26-32, and unnamed co-conspirators. *Id*., ¶¶ 1-3, 5, 13h and 14.

## ARGUMENT

19.    A "bankruptcy court's contempt power, like that of a district court, is 'narrowly circumscribed.'" *PHH Mortg. Corp v. Sensenich (In re Gravel)*, 6 F.4th 503, 511 (2d. Cir. 2021). *See also Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d. Cir. 2003) ("[O]ur review of a contempt order is more exacting than under the ordinary abuse-of-discretion standard because a district court's contempt power is narrowly circumscribed."). This is because "[t]he judicial contempt power is a potent weapon." *Int'l Longshoreman's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). *See also Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019) ("[C]ivil contempt is a severe remedy …."); *In re Attorney General of U.S.*, 596 F.2d 58, 65 (2d. Cir. 1979) ("[T]he court must not lightly invoke its contempt power."); *United States v. Wendy*, 575 F.2d 1025, 1030 (2d. Cir. 1978) (recognizing that the "exercise of the contempt power is awesome in its implications."); *Vineyard Vines, LLC v. MacBeth Collection, LLC*, 2018 U.S. Dist. LEXIS 205502, [*38] (D. Conn. Dec. 5, 2018) ("The standard is strict, and 'the power of a district court to impose contempt liability is carefully limited.'" (quoting *CBS Broad, Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d. Cir. 2016)). Accordingly, "civil contempt 'should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Taggart*, 389 S. Ct. 1801 (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)) (emphasis in original). *See also PHH Mortg. Corp.*, 6 F.4th at 512 ("Under Taggart, a bankruptcy court may hold a creditor in contempt for violating the court's injunction only 'if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. The 'fair ground of doubt' standard has long been used in this Circuit to determine when a party may be held in contempt in the district court."); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d. Cir. 1995) ("[C]ourts should not resort

[to a contempt order] 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" (quoting *California Artificial Stone Paving Co.*, 113 U.S. at 618)).

20.     "A long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order." *United States v. Wendy*, 575 F.2d at 1030. Technical ability to comply does not support contempt where there is no practical ability to comply. *Id.* The relevant time to determine an alleged contemnor's ability to comply is the time of the hearing on a contempt motion:

> In a civil contempt proceeding such as this, of course, a defendant may assert a *present* inability to comply with the order in question. While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action.

*United States v. Rylander*, 460 U.S. 752, 757 (1983). *See also Maggio v. Zeitz*, 333 U.S. 56, 73 n.6 (1948) ("[W]hile a bankrupt's denial of present possession, standing alone, may not be sufficient to establish his inability to produce the property or its proceeds, if the Court is satisfied, from all of the evidence before it, that the bankrupt has not the present ability to comply, the commitment order should not issue."). Here, as of the hearing on the Motion, whether the Court may hold the Debtor in contempt based on his non-compliance with the January 20 Order will turn on whether the Debtor is presently properly invoking his Fifth Amendment rights. Notwithstanding the criminal indictment, the Trustee would nevertheless argue that there is no "fair ground of doubt" that the Debtor's present invocation of his Fifth Amendment rights is improper.

21.     The Fifth Amendment "must be accorded a liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). *See also Estate of Fisher v. Comm'r*, 905 F.2d 645, 648 (2d. Cir. 1990) ("The guarantee must be broadly construed to serve the right it was intended to protect."). Thus, the Fifth Amendment privilege extends to "answers that would in themselves support a conviction under a federal criminal statute but

10

likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Estate of Fisher*, 905 F.2d at 648. *See also United States v. Hubbell*, 530 U.S. 27, 38 (2000) ("Entirely apart from the contents of the 13,120 pages of materials that respondent produced in this case, it is undeniable that providing a catalog of existing documents fitting within any of the 11 broadly worded subpoena categories could provide a prosecutor with a 'lead to incriminating evidence,' or 'a link in the chain of evidence needed to prosecute.'").

22.     The privilege applies where the declarant has reasonable cause to fear the consequences of an answer, and the court determines whether the apprehension is reasonable. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486-87.

23.     Importantly, the disclosure need not be an element of the crime to preclude disclosure—it merely must tend to incriminate the witness. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d. Cir. 2011) ("Even where it would not be direct evidence of wrongdoing with respect to the scheme charged in the criminal case, such testimony may be admissible as Fed. R. Evid. 404(b) evidence in any criminal trial." (citation and quotation marks omitted)); *Estate of Fisher*, 905 F.2d at 649 (courts look "only to whether the question would tend to incriminate the witness."); *United States v. St. Pierre*, 132 F.2d 837, 838 (2d Cir.1942) (emphasis added). Moreover, "[c]ompelled testimony that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." *Hubbell.* 530 U.S. at 38.

24.     The production of documents implicates Fifth Amendment concerns. An individual may assert his Fifth Amendment right against self-incrimination to avoid producing documents if the act of producing the documents would tend to incriminate him. *Fisher v. U.S.*, 425 U.S. 391, 410 (1976). The doctrine operates to prevent an individual from being compelled to furnish evidence against themselves by the very act of producing documents. In brief, "[t]he act of producing evidence in response to a subpoena … has communicative aspects of its own, wholly aside from the contents of the papers produced.  Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the person subpoenaed. It would also indicate the person's belief that the papers are those described in the subpoena." *Id.* (citations and quotations omitted). *See also Hubbell*, 530 U.S. at 36 ("We have held that "the act of production' itself may implicitly communicate 'statements of fact.' By 'producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic."); *United States v. Doe*, 465 U.S. 605, 613 (1984) (same); *In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992*, 1 F.3d 87, 93 (2d. Cir. 1993) (act of producing may require incriminating testimony "(1) if the existence and location of the subpoenaed papers are unknown to the government; or (2) where production would 'implicitly authenticate' the documents." (internal quotation marks omitted)).

25.     The act of production doctrine is not limited solely to documents actually produced by the individual claiming the protections of the Fifth Amendment. Documents delivered to professionals, attorneys and accountants, are also subject to the act of production doctrine such that the attorney or accountant may not be compelled to produce the documents. *In re Hyde*, 253 B.R. 539, 546 (S.D.N.Y. 1999) (holding that act of production doctrine applied to preclude compelled production of documents provided to debtor's attorneys and forensic accountants

12

retained by the attorneys because, "production of the Finax books and records sought from Hyde's attorney's accountant could well implicitly authenticate them.").

26.    Likewise, there is no prohibition on blanket assertions of the act of production doctrine in response to broad subpoenas such as that served on the Debtor in this case. *See SEC v. Forster*, 147 F.Supp.3d 223, (S.D.N.Y 2015) (rejecting SEC's argument that blanket assertion of Fifth Amendment privilege in response to document requests was improper and stating that "First, a document-by-document analysis by Forster would not be useful to determining whether Forster has validly asserted the act-of-production privilege, and the SEC has not explained how such a proffer would even work. … Second, the SEC has not 'demonstrated with reasonable particularity that it knows of the existence and location;' of the many documents it seeks from Forster. … To comply, Forster would implicitly state what documents exist, are in his possession, and are authentic."). Indeed, the Supreme Court has made it clear that the act of production doctrine is applicable to protect against exceedingly broad subpoenas:

> Given the breadth of the description of the 11 categories of documents called for by the subpoena, the collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions. The assembly of literally hundreds of pages of material in response to a request for "any and all documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or provided to" an individual or members of his family during a 3-year period, Appendix, infra, at 19, is the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition.

*Hubbell*, 530 U.S. 27, at 41-43 ("It was unquestionably necessary for respondent to make extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the requests in the subpoena.").

27.    Here, as set forth above, compliance with the January 20 Order requires the Debtor to waive his Fifth Amendment privilege. The requests in the Rule 2004 Subpoena and the

allegations of the Superseding Indictment are incredibly broad and have substantial overlap in terms of the entities and individuals named and the underlying allegations made. Compliance with this Court's directive necessarily requires the Debtor to communicate—beyond the mere act of producing the documents—whether, among other things, he believes the various entities and individuals are under the Debtor's "control." Several of the entities listed in the Rule 2004 Subpoena, and at least two individuals, are specifically named in the Superseding Indictment as individuals or entities over whom the Debtor had "control." In addition, as noted above, the Superseding Indictment includes repeated references to "unknown" persons involved in the alleged fraud and unnamed co-conspirators, so there is no way for the Debtor to know whether they are the same persons named and unnamed in the Rule 2004 Subpoena. Accordingly, the Debtor has a reasonable apprehension of incrimination with respect to all persons and entities covered by the Rule 2004 Subpoena, whether expressly named or not, and invokes his Fifth Amendment privilege as to all such persons and entities.

28.     Importantly, the government has alleged a years-long and pervasive "fraud." The government may yet supersede its indictment again. As such, and given the substantial overlap in the underlying allegations made by the government and the Trustee, the Debtor has a reasonable apprehension of incrimination with respect to all matters described in the Rule 2004 Subpoena, and invokes his Fifth Amendment privilege as to all such matters.

29.     In addition to directly admitting an element of the government's criminal case, i.e., the Debtor's alleged control over various named and unnamed person and entities, compliance with the both the production and the declaration requirements of the January 20 Order necessarily would require the Debtor to concede the existence and identify the location of documents relevant to the Superseding Indictment, concede his possession or control over any such documents, and

implicitly authenticate any such documents. Compliance with the declaration requirement essentially would require the Debtor to potentially provide a roadmap of the existence and location of evidence to the government in the criminal case, which the Debtor cannot be compelled to do over his Fifth Amendment invocation. *Hubbell*, 530 U.S. at 43 ("In sum, we have no doubt that the constitutional privilege against self-incrimination protects the target of a grand jury investigation, [or in this case an individual already indicted by a grand jury], from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence. That constitutional privilege has the same application to the testimonial aspect of a response to a subpoena seeking discovery of those sources.")

30.     Compliance with the January 20 Order would furnish a "link in the chain of evidence needed to prosecute." *Hubbell*, 530 U.S. at 42. The government has a burden of proving its allegations in the criminal case beyond a reasonable doubt—without the assistance of the Debtor. This Court should not enter an order in this case that would interfere with the Debtor's assertion of his Constitutional rights in the criminal case. The proper assertion of the Debtor's Fifth Amendment rights in connection with the criminal case should be for the District Court in the criminal case to determine.

**WHEREFORE,** the Debtor respectfully requests that the Court deny the Motion and grant the Debtor such other relief as is just.

Dated at Bridgeport, Connecticut, on this 10th day April, 2023.

**HO WAN KWOK**

*/s/ Eric Henzy*
Eric Henzy (ct12849)
James M. Moriarty (ct21876)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
         jmoriarty@zeislaw.com
His Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Eric Henzy*
Eric Henzy (ct12849)