**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---------------------------------------------------------x
:
In re:                                : Chapter 11
:
HO WAN KWOK, *et al.*,     : Case No. 22-50073 (JAM)
:
Debtors.[1]            : Jointly Administered
:
---------------------------------------------------------x

**TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR A LIMITED STAY OF ORDER GRANTING IN PART MOTION TO COMPEL COMPLIANCE WITH RULE 2004 SUBPOENA**

Luc. A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case (the "Chapter 11 Case") of How Wan Kwok (the "Debtor"), respectfully submits this objection (the "Objection") to the *Debtor's Motion for a Limited Stay of Order Granting in Part Motion to Compel Compliance with Rule 2004 Subpoena* (the "Motion for Limited Stay") [Docket No. 1649]. The Trustee's Objection is as follows:

**Preliminary Statement**

1.  The Debtor was first served with a Rule 2004 subpoena on August 19, 2022 – exactly eight months ago. Taking advantage of his countless delays in complying with that subpoena, the Debtor now seeks a stay of the January 20 Order,[2] opportunistically arguing that such a stay is necessary to protect his Fifth Amendment privilege against self-incrimination in

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Debtor") and Genever Holdings Corporation (the "Genever BVI Debtor"). The mailing address for the Trustee and the Genever BVI Debtor is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] *Order Granting in Part Motion to Compel Compliance with Rule 2004 Subpoenas* [ECF No. 1353] (entered Jan. 20, 2023). Capitalized terms not defined herein have the meanings given to them in the Objection.

1

connection with a parallel criminal proceeding. The Debtor makes this request through his new counsel, Brown Rudnick, which previously served as counsel to the Debtor while he was the debtor-in-possession in this case prior to the Trustee's appointment and also serves as his counsel in his criminal case. The Trustee is troubled by Brown Rudnick's involvement and the conflict issues it raises and reserves all rights. Regardless of which counsel is making the request, the Debtor cannot use his criminal prosecution to delay progress in this case to the detriment of his creditors. His request for a stay of the January 20 Order should be denied.

2. None of the reasons the Debtor gives in support of his requested stay support the relief he seeks. Contrary to the Debtor's contentions, the government's seizure of his devices and records provides no basis to stay the January 20 Order because the Debtor may still have possession, custody, or control of copies of those records or of other responsive materials. Moreover, the Trustee understands that the government is in the process of producing a large amount of data to the Debtor pursuant to disclosure obligations in the criminal proceeding. Once the Debtor receives this information, the January 20 Order should compel him to produce it to the Trustee to the extent it is responsive to the Trustee's subpoena.

3. To the extent the Debtor has access to documents that he could produce in response to the January 20 Order, he has failed to adequately explain why doing so would violate his Fifth Amendment rights, other than by arguing that he cannot concede his control over certain entities and individuals by producing documents in their possession. The Fifth Amendment, however, does not permit the Debtor to avoid complying with his statutory obligations under section 521 of the Bankruptcy Code. In any event, the January 20 Order concerns more than just documents possessed by others that are under the Debtor's "control,"

including documents in the Debtor's possession related to potential assets of the estate, and the Debtor has failed to explain how producing such additional documents would be incriminating.

4.      Finally, the Trustee would be severely prejudiced by a stay of the January 20 Order. The Trustee has a fiduciary duty to creditors to expeditiously administer the Debtor's bankruptcy estate. A stay of the January 20 Order would hinder the Trustee's efforts in this regard and prejudice the Debtor's creditors. The cases the Debtor cites in support of a stay are largely non-bankruptcy cases that address requested stays of civil litigations against criminal defendants.  A case involving a debtor in bankruptcy is markedly different, and, for this reason, the Debtor seems to acknowledge that he could never obtain a stay of the entire bankruptcy case pending the Debtor's criminal prosecution.  The relief the Debtor seeks, however, is arguably even worse, as he proposes a world in which the Trustee will need to continue to administer this case without any cooperation from his most critical witness—the Debtor himself.  Such a result would never be permitted in a civil litigation—i.e., where a plaintiff would continue to litigate against a criminal defendant, but that defendant need not participate in discovery or in the litigation more generally—and it should not be permitted here.

5.      The requested stay of the January 20 Order should be denied or, alternatively, should be limited to the extent necessary to require the Debtor to comply with such order in a manner that does not infringe on the Debtor's Fifth Amendment rights.

## Argument

### A. Government's Seizure of Debtor's Devices Provides No Basis For Stay

6.      The Debtor first contends that the Court should stay the January 20 Order because the government "has seized what it views as all of the Debtor's records and devices," and

therefore, he "does not have responsive documents in his possession" to produce. Motion for Limited Stay at ¶ 26. This argument does not justify the requested stay.

7. <u>First</u>, the Debtor's statements about the government's seizures are telling for what they do not say. For instance, the Debtor states that the government has seized what "***it views***" as all of the Debtor's records and devices, but the Debtor notably does not say that the government has ***in fact*** seized all of his records and devices. To the extent the Debtor still has access to responsive documents (including backup copies of devices the government seized, such as such as backup storage devices, cloud storage accounts, or email accounts containing the same information as the devices, or other documents altogether), they are subject to production.

8. <u>Second</u>, the Debtor refers only to documents "in his possession" and says nothing of responsive documents in his custody or control. Any such documents possessed by others that are subject to the Debtor's custody or control are also subject to production to the Trustee.

9. <u>Third</u>, as the Debtor acknowledges, any seizure is temporary. Even if it were true that the Debtor could not produce documents now because they have been seized by the government, that is not reason to stay the January 20 Order. Rather, the January 20 Order should remain in place to ensure that it compels the Debtor to immediately produce responsive documents if and when he has access to such documents in the future. These responsive documents may include, among others, those that the government produces to the Debtor in discovery in the criminal proceeding.

**B. Debtor Has Failed to Explain Why Compliance With January 20 Order Would Violate Fifth Amendment Privilege**

10. The party invoking the protection of the Fifth Amendment bears the burden of demonstrating how and why it applies in a given situation. *See, e.g.*, *In re Schick*, 215 B.R. 4, 9 (Bankr. S.D.N.Y. 1997). To satisfy this burden, the party "must provide enough information to

4

enable the Court to conduct a factual inquiry to determine the incriminating potential of the documents sought and the act of production against the privilege asserted." *Id.* at 9 (citation and internal quotation marks omitted). Invocation of the Fifth Amendment may not be done in a blanket or conclusory manner. Rather, "in order to effectively invoke the protections of the Fifth Amendment, a party must make a particularized objection to each discovery request." *In re Astor*, 62 A.D.3d 867, 869 (2009) (citation and internal quotations omitted).

11. Importantly, the Fifth Amendment privilege "does not . . . reach the content of voluntarily created documents because there is no compulsion to create them." *Schick* 215 B.R. at 8. "This is particularly true where the contents of the documents relates to debtors, their property and their business transactions." *Id.*; *see also Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir. 1985) ("Information relating to property of the estate is not so intimately personal as to evoke serious concern over privacy interests, particularly in bankruptcy where the trustee has a strong interest in knowing the nature and scope of the estate's holdings.").

      i. **Fifth Amendment Does Not Prevent Debtor From Complying With Statutory Obligations Under Bankruptcy Code**

12. The Fifth Amendment privilege may not be invoked to resist compliance with a "regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws." *Baltimore City Department of Social Services v. Bouknight*, 493 U.S. 549, 556 (1990). This limitation applies to a debtor's statutory obligations under section 521 of the Bankruptcy Code. As the Supreme Court noted long ago in *In re Harris*, when a bankrupt seeks to withhold documents under the Fifth Amendment, "the question is not of testimony but of surrender – not of compelling the bankrupt to be a witness against himself in a criminal case,

5

past or future, but of compelling him to yield possession of property that he no longer is entitled to keep." *In re Harris*, 221 U.S. 274, 279 (1911) (Holmes, J.).[3]

13. In *Baltimore City Department of Social Services v. Bouknight,* 493 U.S. 549, 556 (1990), the Supreme Court rejected the act of production privilege claim of a mother who had been granted custody of an abused child but later declined to bring the child to a welfare examination ordered by the state. In conducting its analysis, the Supreme Court analogized the mother's situation in *Bouknight*, which required her to comply with a specific regulatory regime, to a debtor's statutory obligation to surrender financial documents to a bankruptcy trustee. 493 U.S. at 556 (citing *Harris*); *see also* 3 *Collier on Bankruptcy*, ¶ 344.03[4] (Rev. 16th ed.) ("[I]t is doubtful that a debtor, as opposed to other witnesses, may successfully refuse to turn over the property, books and records that every debtor under the Code is required to surrender to the trustee on the basis that this 'act of production' might itself tend to incriminate.").

14. The cases the Debtor cites in support of his argument for a stay of the January 20 Order are inapposite. In fact, the Debtor cites to only one bankruptcy case, *In re Julmice*, 458 B.R. 657 (Bankr. E.D.N.Y. 2011). There, the chapter 7 trustee filed an adversary complaint against individual and corporate defendants, none of which were the debtor in the main bankruptcy case. *See Julmice*, 458 B.R. at 659. Those defendants moved for a stay of the adversary proceeding after the two individual defendants (again, non-debtors) were criminally indicted. *Id.* at 661. The court granted a short stay of the adversary proceeding as to the movants, subject to extension upon application of the movants. *Id.* at 665. Those facts are

---

[3] Although the Supreme Court's rejection of the privilege claim in *Harris* ultimately relied on a property rights theory of the Fifth Amendment that is no longer viable—that is, that the debtor could not claim the Fifth Amendment privilege as to books and records that were no longer his—as *Collier on Bankruptcy* has observed, the Supreme Court's decision in *Bouknight* has revived the applicability of *Harris* within the contemporary Fifth Amendment doctrine context. 3 *Collier on Bankruptcy*, ¶ 344.03 (Rev. 16th ed.).

6

inapposite here, where the Debtor himself is moving to stay an order compelling disclosure in the main bankruptcy proceeding, for an indefinite period of time "pending resolution of the parallel criminal proceedings." *See* Motion for Limited Stay at ¶ 25.

      ii.    **Documents Under "Control" of Others Are Not Only Documents at Issue**

15.    The Debtor contends that "the only portion of the requests still at issue relate to those documents that the Trustee alleges are held by other entities or individuals, but within the Debtor's 'control.'" Motion for Limited Stay at ¶ 27. This is not so. In addition to requiring the Debtor to produce documents from sources under his control, the January 20 Order also requires him to produce documents within his possession related to assets of the Debtor and others. *See* Jan. 20 Order at 4 (compelling the Debtor to produce, among other things, (i) "documents responsive to the Trustee's requests ***as to both assets he acknowledges he owns and assets allegedly belonging to persons or entities other than the Debtor***, including without limitation his family members and associated entities" and (ii) "documents responsive to the Trustee's requests ***that are within his custody, possession***, or control, ***including without limitation*** documents in the files of his current of former counsel and other agents and advisors[.]") (emphasis added). The Debtor has provided no explanation as to why producing documents in his possession concerning potential assets (to the extent they exist) would be incriminating.

      iii.    **Even as to Documents Under "Control" of Others, Debtor Has Failed to Satisfy His Burden Under Fifth Amendment**

16.    Even if the Debtor's production of documents under the control of others could, in some instances, expose him to potential criminal liability, the Debtor cannot reasonably take the position that this is so for every person under the Debtor's control who may possess responsive documents. Unless the Debtor genuinely believes the scope of the criminal indictment extends

to everyone the Debtor has ever known, there must be persons or entities involved in transactions unrelated to those at issue in the indictment for whom documents could be produced without any risk of potential incrimination.

17.  It is for this reason the law provides that one must invoke the Fifth Amendment in a ***particularized manner for each document or category of documents***.  See *Astor*, 62 A.D.3d at 869 ("in order to effectively invoke the protections of the Fifth Amendment, a party must make a particularized objection") (citation and internal quotations omitted). As applied here, the Debtor must state with particularity those Associated Entities and Associated Individuals listed in the Trustee's subpoena for which he is refusing to produce documents on the basis that the Fifth Amendment allegedly prevents him from testifying as to whether he has control over those individuals or entities.  Absent such specificity, the Debtor is not entitled to the Fifth Amendment's protections.  See *e.g.*, *In re Connelly*, 59 B.R. 421, 445 (Bankr. N.D.Ill. 1986) (holding that the debtor, upon classifying the documents to be produced and those to be withheld, is required to indicate why the act of producing each class of documents withheld might be incriminating); *In re Crabtree*, 39 B.R. 702, 712 (Bankr. E.D. Tenn. 1984) (finding that a debtor's refusal to provide information based on a blanket assertion of his Fifth Amendment right does not satisfy the debtor's statutory obligations, and that the debtor must "file a second statement […], addressing each question and asserting any privilege claimed on an item-by-item basis."); *In re Blan*, 239 B.R. 385, 392 (Bankr. W.D. Ark. 1999) (finding that debtor must substantiate his Fifth Amendment privilege that responding to the specific requests for information may tend to incriminate him).

      iv. **Debtor Has Not Explained Why Compliance With January 20 Order's Declaration Requirement Would Implicate Fifth Amendment**

18. The January 20 Order also requires the Debtor to provide a declaration detailing his search and collection process. *See* Jan. 20 Order at 4-5. The Debtor, however, has provided no basis for why simply describing where and how he looked for documents could tend to incriminate him. If the Debtor has not even searched for responsive documents, how could he possibly know that his production of documents in his possession would be incriminating? The Debtor must provide a description of his search and collection efforts to comply with the January 20 Order, and the Fifth Amendment does not excuse him from doing so.

**C. Trustee Would Be Severely Prejudiced by Stay of January 20 Order, And Stay Would Run Contrary to Public Interest**

19. The Debtor argues that public interest would not be harmed by a stay of the January 20 Order, arguing that "in light of the criminal case, the assets at issue in the bankruptcy case have been or will likely be seized and frozen." *See* Motion for Limited Stay at ¶ 44. However, not all relevant assets at issue have been seized and frozen. In fact, there may be assets not yet discovered. Regardless, the Trustee's purpose extends beyond ensuring that already frozen assets do not escape the potential reach of the Trustee. The Trustee has a fiduciary duty to creditors of the bankruptcy estate and needs to monetize assets as quickly as possible to fund this case and eventually make distributions to creditors.[4]

20. Moreover, the Debtor fails to mention that his criminal case could take years to resolve. Staying the January 20 Order, for an indefinite period of time, potentially several years, would severely prejudice the Trustee's efforts in this bankruptcy proceeding and run contrary to

---

[4] The Trustee's duty stands in contrast to that of the government in the Debtor's criminal prosecution. The government is interested in identifying and seizing assets involved in a crime, whereas the Trustee is interested in identifying potential estate assets regardless of their connection to any criminal activity.

public interest. *See In re MGL Corp.*, 262 B.R. 324, 330 (Bankr. E.D. Pa. 2001) ("The public interest in the expeditious administration of bankruptcy cases is impaired by obstructing a trustee's efforts to collect, liquidate and distribute assets to creditors of the estate.").

21. Finally, the Debtor's importance to the Trustee's investigation and to this case more generally cannot be overstated. Requiring the Trustee to continue administering this case without the Debtor's involvement and participation, as the Debtor proposes, is untenable. No court would ever suggest that a plaintiff in a civil litigation should have to litigate its case against a criminal defendant under circumstances where that defendant will have no obligation to provide discovery or otherwise participate in the case. The result should be no different here.

**D. Reservation of Rights Concerning Debtor's Retention of Brown Rudnick**

22. Finally, the Trustee is concerned with the Debtor's retention of his current criminal counsel and former debtor-in-possession bankruptcy counsel, Brown Rudnick, to represent him in this case. As a former professional for the Debtor's estate, Brown Rudnick owed duties to the estate and creditors before the Trustee's appointment and now owes duties of cooperation to the Trustee, and the Trustee fears that these duties cannot be exercised free from potential conflict of interest. This concern is heightened by remarks Brown Rudnick recently made at the Debtor's bail hearing in the criminal case, where counsel stated, "[c]oncerning the civil lawsuits and the bankruptcy litigation and Mr. Kwok's alleged disregard for the law, first of all, it's important to keep in mind that much of the civil litigation, including the civil litigation that ultimately led to the bankruptcy filing was prompted by the CCP itself. That is not just a conspiracy theory. That is a documented fact." *See United States v. Ho Wan Kwok*, 23 CR 118 Apr. 4, 2023 Hr'g Tr., at 29 (citing to a 2020 Wall Street Journal article that has nothing to do with the Debtor and nothing to do with the CCP's nonexistent influence over this bankruptcy

case). The Trustee does not see how counsel who is on record stating that the CCP is influencing and controlling this case can possibly fulfill its and the Debtor's duties to cooperate with the Trustee under the Bankruptcy Code.[5] While the Trustee is not presently requesting any relief as to this issue, he reserves all rights to do so as this case progresses.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the Debtor's Motion for Limited Stay be denied and for such other relief as is just and proper.

Dated:   April 19, 2023            LUC A. DESPINS,
         New Haven, Connecticut    CHAPTER 11 TRUSTEE

                                   By: */s/ Patrick R. Linsey*
                                       Patrick R. Linsey (ct29437)
                                       NEUBERT, PEPE & MONTEITH, P.C.
                                       195 Church Street, 13th Floor
                                       New Haven, Connecticut 06510
                                       (203) 781-2847
                                       plinsey@npmlaw.com

                                            and

                                       Nicholas A. Bassett (admitted *pro hac vice*)
                                       PAUL HASTINGS LLP
                                       2050 M Street NW
                                       Washington, D.C., 20036
                                       (202) 551-1902
                                       nicholasbassett@paulhastings.com

                                       Avram E. Luft (admitted *pro hac vice*)
                                       Douglass Barron (admitted *pro hac vice*)
                                       PAUL HASTINGS LLP
                                       200 Park Avenue
                                       New York, New York 10166
                                       (212) 318-6079
                                       aviluft@paulhastings.com
                                       douglassbarron@paulhastings.com

                                       *Counsel for the Chapter 11 Trustee*

---

[5] These conflict issues are further exacerbated by the fact that William Baldiga, the debtor-in-possession's former lead attorney in this case, who is likely to be called as a witness to testify in this case, is also personally representing the Debtor in his criminal proceeding.

11