# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# BRIDGEPORT DIVISION

| | |
|---|---|
| In re:<br><br>HO WAN KWOK,<br><br>               Debtor. | Chapter 11<br><br>Case No. 22-50073 (JAM) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

Pursuant to D. Conn. L. Civ. R. 7, made applicable to this proceeding by D. Conn. Bankr. L. R. 1001-1(b), HK International Funds Investments (USA) Limited, LLC ("HK USA"), Mei Guo ("Ms. Guo"), Lee Vartan, Esq. ("Attorney Vartan"), and Chiesa Shahinian & Giantomasi PC ("CSG Law" and, collectively with HK USA, Ms. Guo, and Attorney Vartan, the "HK Parties"), by and through their undersigned counsel, respectfully submit their Memorandum of Law in Support of the HK Parties' Motion for Reconsideration of the Court's April 21, 2023 Order Awarding Fees of Chapter 11 Trustee and His Counsel Pursuant to Sanctions Order (the "Fee Order") [Doc. No. 1693], which awarded attorneys' fees in the amount of $83,370.26 to the Individual Debtor's Estate for payment to Paul Hastings LLP with said fees to be paid by the HK Parties on or before May 5, 2023. The Fee Order further ordered that the HK Parties are jointly and severally liable for the payment of said fees.

The HK Parties seek reconsideration to address the clear error and manifest injustice that results from the Fee Order, an order that entered without the HK Parties being afforded any opportunity to object to the Special Fee Application of Chapter 11 Trustee and his Counsel, Paul

Hastings LLP (together, the "Applicants"), for Services Rendered in Securing Compliance with Court-Authorized Subpoenas (the "Fee Application") [Doc No. 1648].

## I.     BACKGROUND

On October 28, 2022, the Chapter 11 Trustee (the "Trustee") filed a motion pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, to compel (the "Motion to Compel") compliance with Rule 2004 Subpoenas (the "Rule 2004 Subpoenas") [Doc No. 1046]. The single Motion to Compel sought compliance with subpoenas served upon seven different parties: (i) Ho Won Kwok (the "Individual Debtor"); (ii) HK USA; (iii) Ms. Guo; (iv) Hing Chi Ngok; (v) Greenwich Land LLC; (vi) Lamp Capital LLC and (vii) Golden Spring (New York) Ltd. (the "Motion to Compel Parties"). Thereafter, following entry of an order granting the Motion to Compel in-part, on February 10, 2023, the Trustee filed a Motion for Order to Show Cause as to why the Individual Debtor, HK USA, and Ms. Guo should not be held in contempt of court for failing to adequately respond to the Order Granting Motion to Compel (the "Order to Show Cause") [Doc No. 1453].

On March 10, 2023, the Court entered an Order Holding the HK Parties in Contempt of Court and Sanctioning them (the "Contempt Order") [Doc. No. 1537]. In accordance with the Contempt Order, HK USA and Ms. Guo were held in civil contempt of Court for failure to comply with (i) the Court's January 20, 2023 Order Granting in Part Motion to Compel Compliance With Rule 2004 Subpoenas filed by the Trustee [ECF No. 1353]; and (ii) the Court's February 13, 2023 Order Granting in Part the Trustee's Motion for Order to Appear and Show Cause Why the Court Should Not Hold the HK Parties in Contempt of Court [ECF No. 1455].

In addition, the Contempt Order held that HK USA, Ms. Guo, Attorney Vartan and CSG Law were jointly and severally liable for and sanctioned, as compensatory damages, reasonable attorneys' fees and costs related to the Trustee's efforts to secure compliance with the Rule 2004

2

Subpoenas and prosecution of the Moton to Compel. The Contempt Order also held that the Trustee's reasonable attorneys' fees and costs associated with securing compliance with the Rule 2004 Subpoenas, would "be determined by the Court upon the fee application(s) of the Trustee, which applications(s) are to be submitted on or before March 24, 2023." *See* Contempt Order, at 26.

On March 17, 2023, the Trustee filed an Unopposed Motion Pursuant to Bankruptcy Rule 9006(b), for Entry of an Order Extending Time to File Fee Application Pursuant to the Contempt Order (the "Motion to Extend Time") [Doc No. 1558]. Prior to filing the Motion to Extend Time, the Trustee's counsel requested the consent of the HK Parties to file the motion, which consent was agreed to by the HK Parties.

By Order dated March 20, 2023, the Court granted the Trustee's Moton to Extend Time which extended the filing date for the fee application by ten days to April 3, 2023. During a status conference on March 30, 2023, counsel for the Trustee requested a second extension to file the Fee Application, to April 10, 2023, which was granted by the Court. Thereafter, on April 10, 2023, the Trustee filed the Fee Application [Doc No. 1648].

Rule 2002(a)(6) of the Federal Rules of Bankruptcy Procedures governs fee applications and states in pertinent part:

> Twenty-one-day Notices to Parties in Interest. Except as provided in subdivisions (h), (i), (l), (p), and (q) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of :…(6) a hearing on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000.

Moreover, D. Conn. L. Civ. R. 7(a), made applicable to this proceeding by Local Bankr. R. 1001-1(b), provides that memoranda in opposition to motions "shall be filed within twenty-one (21) days of the filing of the motion." The Court did not set a deadline for the HK Parties to file an

3

opposition to the Fee Application. Thus, under the above stated rules, the deadline for the HK Parties to object to the Fee Application could be no earlier than May 1, 2023 based on the April 10, 2023 filing date, and a hearing could not be held until at least twenty-one (21) days after notice of a hearing issued which has yet to happen.

Notwithstanding the time limitations of Bankruptcy Rule 2002(a)(6), and D. Conn. L. Civ. R. 7(a), and the fact that no other deadline was fixed by this Court for the HK Parties to oppose the Fee Application, the Court entered the Fee Order on April 21, 2023, before the HK Parties' time to respond had elapsed. Indeed, had the HK Parties been given the appropriate opportunity to oppose the Fee Application, they would have objected to the relief requested based upon the arguments below which clearly demonstrate that the Trustee is not entitled to the recovery awarded by the Court.

## II. ARGUMENT

D. Conn. L. Civ. R. 7(c) provides for the limited use of motions for reconsideration where "the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c).

"A motion for reconsideration is committed to the sound discretion of the court." *Talyosef v. Saul*, Docket No. 3:17-CV-01451(KAD), 2020 U.S. Dist. LEXIS 101433, *8 (D. Conn., June 9, 2020) (citation omitted). "The grounds justifying reconsideration" include "the need to correct a clear error or prevent manifest injustice." *Nesbitt v. Bemer*, Docket No. 3:18-CV-00699 (VLB), 2018 U.S. Dist. LEXIS 185458, at *7-8 (D. Conn. Oct. 30, 2018), *quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "In the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is direct, obvious, and observable." *Talyosef*, 2020 U.S. Dist. LEXIS 101433, at *8, *quoting Corpac v. Does*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2015); *see also Waller v. City of Middletown*, 89 F. Supp.

4

3d 279, 282-83 (D. Conn. 2015) (granting motion for reconsideration in-part to correct a clear error and avoid manifest injustice).

Here, reconsideration is justified to address the denial of due process to the HK Parties by the Court granting the Fee Application without affording the HK Parties an opportunity to respond and demonstrate, *inter alia,* why the Trustee's fees are unreasonable. Indeed, the HK Parties respectfully submit that because this Court failed to permit any opposition to the Fee Application it overlooked argument and authority, as set forth below, that would alter the conclusion reached by the Court, and therefore correct a clear error and prevent manifest injustice to the HK Parties. Thus, reconsideration is necessary and appropriate, and the HK Parties' motion should be granted.

### A. The Requested Fees are Patently Unreasonable

This Court determined that the fees sought by the Trustee are reasonable without articulating the basis for that finding, including why the hourly rates charged by the Trustee's counsel are reasonable within the District of Connecticut. *See* Fee Order, at 1. Indeed, it appears that the Court accepted the Applicant's unsupported statement that "[s]uch fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market." Fee Application, at 10. The Applicants do not define the "national legal market" within which their hourly billing rates are reasonable, nor do they submit any evidence of other law firms, let alone law firms from across the undefined "national legal market," that bill at the same hourly rates as Paul Hastings. The absence of such evidence is understandable since there are very few law firms with billing rates at the same level as Paul Hastings, including billing junior associates at more than $1,000 per hour.

*See* Fee Application, at 2, Compensation by Individual, junior associate Ezra Sutton billing at $1,015.00 per hour.

The Contempt Order sanctions require the HK Parties to pay "***reasonable*** attorney's fees and costs . . .". Contempt Order, at 25-26, emphasis added. In the Second Circuit,

> A reasonable hourly rate is generally "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill, 522 F.3d at 190.* "In assessing a reasonable hourly rate, the court takes into consideration the market rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Bozdogan v. 23 Ludlam Fuel, Inc., 16-CV-1053 (JMW), 2022 U.S. Dist. LEXIS 233168, 2022 WL 17987044, at *3 (E.D.N.Y. Dec. 29, 2022)*(internal citations omitted). The relevant community is the district in which the reviewing court sits. This is known as the "forum rule." *See, Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174-75 (2d Cir. 2009).*

*Jackson v. GSO Bus. Mgmt., LLC (In re Jackson)*, Chap. 11 Case No.: 15-21233 (AMN), Adv. Proc. No. 17-2068, 2023 Bankr. LEXIS 464, at *10, 2023 WL 2202738 (Bankr. D. Conn., Feb. 23, 2023).

Courts are not bound by the "forum rule" and in rare cases may apply an hourly rate from outside of the forum in awarding attorneys' fees:

> [A] district court may use an out-of-district hourly rate - or some rate in between the out-of-district rate sought and the rates charged by local attorneys - in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally. This presumption may be rebutted - albeit only in the unusual case - if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of district attorney was reasonable under the circumstances.

*In re Jackson,* 2023 Bankr. LEXIS 464, at *11-12, quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 191 (2d Cir. 2007).

6

The Trustee makes no attempt whatsoever to rebut the "forum rule" because he cannot. Indeed, the Trustee has retained the Connecticut firm of Neubert, Pepe & Monteith, P.C. ("Neubert, Pepe"), to serve as both his local counsel and to handle matters that Paul Hastings cannot handle due to conflicts.[1] Neubert, Pepe has handled motions to compel compliance with Rule 2004 subpoenas filed against some of the world's largest financial institutions when Paul Hastings has been conflicted. *See e.g.,* Motion of Chapter 11 Trustee for Entry of Order Compelling UBS AG to Comply with Rule 2004 Subpoena, [Doc. No. 1362], including the signature block of only Attorney Patrick Linsey of Neubert, Pepe because Paul Hastings could not be adverse to UBS AG; Motion of Chapter 11 Trustee for Entry of Order Compelling JPMorgan Chase Bank N.A. to Comply with Rule 2004 Subpoena, [Doc. No. 1303], including the signature block of only Attorney Patrick Linsey of Neubert, Pepe because Paul Hastings could not be adverse to JPMorgan Chase Bank N.A.

If Neubert, Pepe has the competency to address motions to compel directed to UBS and JPMorgan Chase, they certainly have the competency to handle the routine Motion to Compel and Order to Show Cause that underlies the Fee Application. Thus, because the Trustee has failed to rebut the "forum rule" it is the hourly rate charged by lawyers of "reasonably comparable skill, experience and reputation within the District of Connecticut", *In re Jackson*, at *10, that should be applied in determining what constitutes a reasonable fee "to secure compliance with the Court-authorized Subpoenas from the preparation and prosecution [of the] Motion to Compel through

---

[1] During an August 1, 2022 hearing, the Trustee represented, in response to concerns about Paul Hastings' billing rates, that the Trustee would rely on Attorneys Skalka and Linsey "as much as we can." Transcript of Motion Hearing Before the Honorable Julie A. Manning United States Bankruptcy Judge, at 102:19-21. It does not appear that the Trustee is relying on Neubert, Pepe, of which he is not a member, and their substantially lowering billing rates "as much as he can."

and including the reasonable attorneys' fees and costs spent in relation to ongoing efforts to secure compliance . . . ." Contempt Order, at 26.

In determining what constitutes a reasonable hourly rate within the forum, courts can consider evidence submitted by the parties, as well as rates within the community of which the court is aware. *In re. Jackson*, 2023 Bankr. LEXIS 464, at *15 ("Beyond just this evidence [submitted by the parties], I am aware of, and can consider, the range of hourly rates awarded in similar cases in this District."). After noting the appropriateness of considering hourly rates awarded in similar cases, Judge Nevins went on to identify hourly rates of a number of Connecticut Bankruptcy Court practitioners, including some of the most senior members of Connecticut's Bankruptcy bar:

> *In re Simone, 18-21993 (JJT), 2022 Bankr. LEXIS 1558, 2022 WL 1923278, at *2 (Bankr. D. Conn. June 3, 2022)*(finding hourly rate of $565 reasonable for Attorney Irve Goldman, chair of the bankruptcy, creditors' rights, and financial restructuring practice at Pullman & Comley); *Jackson v. DeJesus (In re Jackson), 15-21233 (AMN), 2020 Bankr. LEXIS 367, 2020 WL 718609, at *4 (Bankr. D. Conn. Feb. 12, 2020)*(concluding $325 per hour reasonable for Attorney John Cesaroni, then an associate, now currently a partner at Zeisler & Zeisler, P.C.). I am also aware of the hourly rates charged by attorneys in some of the more complex Chapter 11 cases pending recently in this District, including:
>
> • $695 per hour for Attorney Patrick Birney, partner at Robinson & Cole, LLP as debtor's counsel in *In re The Norwich Roman Catholic Diocesan Corporation*, Case No. 21-20687 (JTT);
>
> • $450 per hour for Attorney Douglas Skalka, a principal of Neubert, Pepe & Monteith, P.C., as local counsel to the Chapter 11 Trustee in *In re Ho Wan Kwok*, Case No. 22-50073 (JAM);
>
> • $400 per hour for Attorney Jeffrey Sklarz, partner at Green & Sklarz, LLC, as local counsel to debtors in *In re The Rosegarden Health and Rehabilitation Center, LLC*, jointly administered under Case No. 18-30623 (AMN);
>
> • $500 per hour for Attorney James Berman, partner at Zeisler & Zeisler, P.C., as counsel to debtors in *In re Servicom, LLC*, jointly administered under Case No. 18-31722 (AMN).

*In re Jackson*, 2023 Bankr. LEXIS 464, at *15-16. Many of the attorneys identified by Judge Nevins have also appeared in this case: Attorney Goldman is lead counsel to the Creditor's Committee, Attorney Cesaroni has appeared for HK USA, Ms. Guo and the Individual Debtor, Attorney Birney and his law firm, Robinson & Cole, are Connecticut counsel to PAX, and Attorney Skalka is counsel to the Trustee.[2]

In *In re Jackson* the fee applicants, who were New York practitioners, sought to be compensated at an hourly rate of $750 per hour. *Id.*, at 14. Judge Nevis found the proposed rate to be unreasonable, *id.*, and instead awarded fees based on an hourly rate of $500 which Judge Nevins concluded was reasonable "[b]ased upon the prevailing rates ranging from $400 to $695 per hour in this District." *Id.*, at 16. *See also*, Connecticut Rules of Professional Conduct Rule 1.5 (noting that one of the factors to be utilized in determining whether an attorneys' fee is reasonable is "[t]he fee customarily charged in the locality for similar legal services");[3] *Duracell Inc. v. Global Imps., Inc.,* 17-mc-185 P1 (KNF), 2018 U.S. Dist. LEXIS 140093, at *22 (S.D.N.Y. Aug. 16, 2018) ("A reasonable hourly rate is the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." (quoting *Farbotko v. Clinto Cty. Of N.Y.*, 433 F.3d 204, 208 (2d Cir. 2005) (internal quotation omitted); *see*

---

[2] At the time of the filing of the Trustee's Application to Employ Neubert, Pepe & Monteith as Local Counsel and Special Conflicts Counsel in July 2022, Attorney Linsey's hourly billing rate was $350 and Attorney Skalka's hourly billing rate was $450 per hour. *See* Doc. No. 569, at 6, ¶18.

[3] Other factors identified in Rule 1.5 also weigh heavily against assessing fees at the rates charged by the Trustee's counsel. Neither the Motion to Compel nor the Order to Show Cause presented novel or difficult legal questions and did not require attorneys with any specialized training. *See* Rule 1.5 (a)(1). Moreover, the Motion to Compel was denied in part, *id.*, at (a)(4), and both the Motion to Compel and the Order to Show Cause were undertaken on a timeline chosen by the Trustee. *Id.*, at (a)(5). In short, the Trustee is seeking to recover almost $90,000 in fees for a run-of-the-mill Motion to Compel and subsequent Order to Show Cause.

9

*also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 119 (2d Cir. 2007) (stating "a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally."); *Peterson v. McAndrew*, 160 Conn. App. 180, 211-212 (Conn. App. 2015) (affirming trial court's grant of attorney's fees pursuant to prevailing rate for litigators in Stamford-Norwalk judicial district of $300-$425 per hour and rejecting argument that fees should be allowed based on attorneys' hourly rate of $520-$540 per hour).

Based on the applicable "forum rule" and the prevailing rates within the District of Connecticut for attorneys of reasonably comparable skill, experience, and reputation the rates charged by the Trustee's counsel, which with some timekeepers are as high as $1,625, are patently unreasonable within the District of Connecticut and should not be utilized in determining the amount of attorneys' fees to be awarded. At most, the Court should award a maximum hourly rate of $450 per hour for partners and counsel and a maximum of $350 per hour for associates, the same hourly rates charged by the Trustee's very capable local and conflicts counsel, Neubert, Pepe.[4]

Moreover, according to the Fee Application, the Applicants failed to utilize lower billing associates for this case, even though their billing rates are still far and away higher than similar and even more senior attorneys within the District of Connecticut.[5] Specifically, the Applicant's

---

[4] The appropriate forum rates result in a blended rate of $400 per hour. The Trustee seeks recovery for 131.2 hours of attorney time. *See* Fee Application, at 2, Compensation by Individual. The total fees at a blended rate of $400 per hour for 131.2 hours is $52,480. Fifty percent of $52,480 is $26,240. That is the maximum the Applicants should be able to recover and the starting point from which the Court should make cuts for, *inter alia*, excessive and duplicative billing.

[5] Attorney Linsey is an associate with Neubert, Pepe, who, according to the State of Connecticut Judicial Branch, was first admitted to practice in November 2010, *see* https://www.jud.ct.gov/attorneyfirminquiry/attorneyfirminquiry.aspx last visited April 27, 2023, and whose billing rate is, or at least was as of July 2022, $350 per hour. *See* Doc. No. 569, at 6,

10

partners and of counsel attorneys, all of whom bill at rates of $1,625 or greater per hour (as of January 1, 2023), billed 69.10 hours to the Motion to Compel and Order to Show Cause, while associates billed 59.60.

For example, during October 2022, one "Of Counsel" member of Paul Hastings, billed 11.9 hours, which accounted for $17,969 in fees, leading up to the filing of the Motion to Compel on October 28, 2022. The work primarily consisted of reviewing and editing the motion. Thereafter, the same attorney billed 12.7 hours, which accounted for $19,177 in fees, in preparation for the oral argument for the motion to compel hearing and attending the hearings on November 29 and November 30, 2022, respectively. The Objectors submit that $37,146 in fees is unreasonable to assist with drafting the Motion to Compel and then arguing the motion.

The foregoing example illustrates one attorney's time out of the eight that billed time related to the Motion to Compel, and only comprises a small percentage of the total amount requested in the Fee Application. *See Hensley v. Eckerthardt*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983) (stating that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…."). And, while in analyzing fee applications "a court need not, and indeed should not become [a] green eyeshade account[]," *In re Jackson*, 2023 Bankr. LEXIS 464, at *13, (citations omitted), "[a] court

---

¶18. Paul Hastings junior associates who were first admitted to practice in 2021, eleven years after Attorney Linsey was admitted to practice, are billing in this matter for 2023 at the rate of $915 per hour, Attorney Kosciewicz, and $1,015 per hour, Attorney Sutton. *See* Fee Application, at 2. Paul Hastings senior associates assigned to this matter, none of whom are more senior than Attorney Linsey, bill at rates that are nearly four times higher than his. *See id.*, Attorney Barron, admitted to practice in 2012, billing at the hourly rate of $1,320, and Attorney Maza, also admitted to practice in 2012 and billing at the same hourly rate as Attorney Barron. Lastly, Paul Hastings mid-level associate, Attorney Farmer, who was first admitted to practice in 2018, less than five years ago, is billed at $1,120 per hour. *Id.* Attorney Farmer billed 22.7 hours for a total of $25,424 which Applicants seek to recover. *Id.* Those same hours at Attorney Linsey's billing rate would equate to $7,945 in fees.

may adjust the number of hours to account for items that are 'excessive, redundant, or otherwise unnecessary . . . ." *Id.* In this case, the Court should determine the amount of fees to be assessed by applying forum billing rates of $450 per hour for partners and counsel and $350 for associates to the hours worked. The Court should then apply an appropriate across the board cut to the total fees calculated based on the forum billing rates in order to account for excessive or otherwise unnecessary hours billed by Applicants. *Id.*, at *18 (calculating attorneys' fees based on a billing rate of $500 per hour and then applying a 15% across the board reduction to account for "vague and excessive billing entries.").

**B. The Applicants Arbitrarily Allocated Half of Their Fees Incurred for the Motion to Compel and Motion for Order to Show Cause to HK USA & Ms. Guo Despite the Numerous Other Parties Involved**

The Motion to Compel sought compliance with the Rule 2004 Subpoenas served upon seven different and differently situated parties, represented by different counsel and who in some instances were in various stages of responding to their respective subpoenas. Despite these substantial differences the Applicants prepared a single Motion to Compel. See Fee Application ¶ 2. The Applicants admit that because they filed a single motion, "it is not possible, with absolute precision, to determine how much time was spent on each specific discovery target." Id.[6]

Notwithstanding this fact, the Applicants arbitrarily allocated one-half of all fees associated with the Motion to Compel and Order to Show Cause to HK USA and Ms. Guo, with respect to any time entries that did not specifically identify a particular discovery target. *See* Fee Application at ¶ 3. That calculation is without any basis. Instead, all time entries that do not specifically

---

[6] This issue is all the more pertinent given that Court's recent order [ECF No. 1709] granting the Trustee's motion to hold Golden Spring (New York) Ltd. and Lamp Capital LLC in contempt, and awarding attorneys fees and costs in connection with the same Motion to Compel.

address the target of the discovery should be denied and the Fee Application should be reduced by the amount of fees associated with such time entries.

Case law permits the Court to adopt across-the-board percentage cuts to the Fee Application based on the arbitrary allocation of fees assessed to HK USA and Ms. Guo. In *Duracell Inc.* 2018 U.S. Dist. LEXIS 140093 at, *36-37, the district court stated in relevant part:

> Courts are not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131,134 (2d Cir. 1994). In calculating reasonable attorney's fees, "the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987) (*quoting* Carey, 711 F.2d at 1146); *see, e.g., RCB Equities #3, LLC v. Alma Bldg., LLC*, No. 11-CV-1004, 2012 U.S. Dist. LEXIS 32884, 2012 WL 832286 (E.D.N.Y. Mar. 12 2012) (adopting the magistrate judge's recommendation to apply sixty percent reduction to the requested attorneys' fees in light of a slightly excessive number of hours and the straightforward nature of the action); *Gesualdi v. Stallone Testing Labs, Inc.*, No. 10-CV-646, 2011 U.S. Dist. LEXIS 77906, 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (applying fifty percent reduction of the requested attorneys' fees in part because of "poor drafting" which casted "doubt on the accuracy of a party's submissions to the court and forcing the court to expend resources unnecessarily as a result.); *Hernandez v. Punto Y Coma Corp.*, No. 10-CV-3149, 2013 U.S. Dist. LEXIS 128734, 2013 WL 4875074, at *12 (E.D.N.Y. Sept. 11, 2013) (applying forty percent reduction because the application fee was excessive).

"While a multi-office firm is certainly free to allocate its work force as it sees fit, that does not mean an adversary should be required to pay for those staffing decisions." *Daiwa Special Asset Corp. v. Desnick*, No. 00 Civ. 3856, 2002 U.S. Dist. LEXIS 23073, 2022 WL 31767817, at *3-5 (S.D.N.Y. Dec. 3, 2002). There is much fat to trim here, particularly given the overstaffing that the Applicants employed, and the Court should therefore apply an appropriate across the board reduction to the fees ultimately awarded under the appropriate billing rates. *See id.* (applying a fifty percent reduction to the requested attorneys' fees for "duplication of attorney efforts, the overstaffing of meetings and depositions, and the inefficient allocation of human resources.").

### III. CONCLUSION

Based upon entry of the Contempt Order on March 10, 2023, and the eventual submission of a fee application by the Trustee, the Applicants were given thirty (30) days to file the Fee Application. The Court, however, failed to provide the HK Parties with the required time to object and respond to the Trustee's application. The HK Parties Motion for Reconsideration should be granted.

Dated:  April 28, 2023
      Roseland, New Jersey

/s/ Lee Vartan
Lee Vartan (admitted pro hac vice)
lvartan@csglaw.com
Sam Della Fera, Jr. (admitted pro hac vice)
sdellafera@csglaw.com
Melissa F. Wernick (admitted pro hac vice)
mwernick@csglaw.com
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
*Attorneys for Mei Guo, HK International Funds Investments (USA) Limited, LLC, Lee Vartan, Esq., and Chiesa Shahinian & Giantomasi PC*

Aaron A. Romney (ct28144)
aromney@zeislaw.com
James M. Moriarty (ct21876)
jmoriarty@zeislaw.com
**ZEISLER & ZEISLER PC**
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone:  (203) 368-4234
Facsimile:  (203) 368-5485
*Local Counsel for Mei Guo, HK International Funds Investments (USA) Limited, LLC, Lee Vartan, Esq., and Chiesa Shahinian & Giantomasi PC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, | Case No: 22-50073 (JAM) |
| Debtor. | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: April 28, 2023  
      Roseland, New Jersey

/s/ Lee Vartan
Lee Vartan (admitted pro hac vice)
lvartan@csglaw.com
Sam Della Fera, Jr. (admitted pro hac vice)
sdellafera@csglaw.com
Melissa F. Wernick (admitted pro hac vice)
mwernick@csglaw.com
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
*Attorneys for Mei Guo, HK International Funds Investments (USA) Limited, LLC, Lee Vartan, Esq., and Chiesa Shahinian & Giantomasi PC*

      *and*

Aaron A. Romney (ct28144)
aromney@zeislaw.com
James M. Moriarty (ct21876)
jmoriarty@zeislaw.com
**ZEISLER & ZEISLER PC**
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone:  (203) 368-4234
Facsimile:  (203) 368-5485
*Local Counsel for Mei Guo, HK International Funds Investments (USA) Limited, LLC, Lee Vartan, Esq., and Chiesa Shahinian & Giantomasi PC*