UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK and GENEVER | * | |
| HOLDINGS CORPORATION, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | | |
| GENEVER HOLDINGS LLC, et al., | * | Adv. Proc.  No. 23-05002 |
| | * | |
| Plaintiffs, | * | |
| v. | * | Bridgeport, Connecticut |
| | * | May 2, 2023 |
| | * | |
| HO WAN KWOK, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * *

TRANSCRIPT OF

#1362    MOTION TO COMPEL COMPLIANCE WITH BK RULE 2004
         SUBPOENA BY UBS AG
#1495    INTERIM APPLICATION FOR COMPENSATION OF CHAPT. 11
         TRUSTEE AND HIS COUNSEL, PAUL HASTINGS, LLP, FOR
         REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM
         JULY 8, 2022 THROUGH OCTOBER, 2022
#1669    APPLICATION TO EMPLOY ENGINEERING OPERATIONS AND
         CERTIFICATION SERVICES, LLC AS EXPERT/CONSULTANT
#1674    INTERIM APPLICATION FOR COMPENSATION/ALLOWANCE
         AND REIMBURSEMENT FOR EXPENSES FOR NEUBERT, PEPE
         AND MONTEITH
#1704    AMENDED ORDER SETTING STATUS CONFERENCE
         PRETRIAL CONFERENCE #1 COMPLAINT 91(DECLARATORY
         JUDGMENT)

BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

```
APPEARANCES:


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings
                                 200 Park Avenue
                                 New York, NY  10166


For the Chapter 11 Trustee:      PATRICK R. LINSEY, ESQ.
                                 Neubert Pepe & Monteith, PC
                                 195 Church Street
                                 New Haven, CT  06510


For the U.S. Trustee:            HOLLEY L. CLAIBORN, ESQ.
                                 Office of the United States
                                   Trustee
                                 The Giaimo Federal Building
                                 150 Court Street, Room 302
                                 New Haven, CT  06510


For the Debtor:                  ERIC A. HENZY, ESQ.
                                 JAMES MORIARTY, ESQ.
                                 Zeisler & Zeisler, PC
                                 10 Middle Street, 15th Floor
                                 Bridgeport, CT  06604


Special Criminal Defense         WILLIAM BALDIGA, ESQ.
 Counsel to Mr. Kwok:            Brown Rudnick
                                 601 13th Street NW, Suite 600
                                 Washington, DC  20005


For the Official Committee       KRISTIN MAYHEW, ESQ.
 Of Unsecured Creditors:         Pullman & Comley, LLC
                                 P.O. Box 7006
                                 Bridgeport, CT  06601


For the Defendant, Hing Chi      CHRISTOPHER J. MAJOR, ESQ.
Ngok:                            Meister Seelig & Fein LLP
                                 125 Park Avenue
                                 New York, NY  10017
```

1          (Proceedings commenced at 2:06 p.m.)

2              THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3      Kwok, and Adversary No. 23-5002, Genever Holdings, LLC

4      versus Kwok.

5              THE COURT:  Okay.  Good afternoon.  If we could

6      have appearances for the record, starting with the Chapter

7      11 Trustee please.

8              MR. DESPINS:  Good afternoon, Your Honor.  Luc

9      Despins, Chapter 11 Trustee.

10             MR. LINSEY:  Hi, again, Your Honor.  Patrick

11     Linsey for the Trustee.

12             MS. CLAIBORN:  Holley Claiborn for the U.S.

13     Trustee.

14             MS. MAYHEW:  Good afternoon, Your Honor.  Kristen

15     Mayhew, Pullman & Comley, on behalf of the Committee, but

16     only with respect to the main case, not the adversary

17     proceeding.

18             THE COURT:  Thank you.

19             MR. HENZY:  Eric Henzy, Zeisler & Zeisler, for the

20     debtor.

21             MR. MORIARTY:  James Moriarty, Zeisler & Zeisler,

22     for the debtor.

23             MR. MAJOR:  Your Honor, in the adversary

24     proceeding, Chris Major, Meister Seelig & Fein, for

25     Defendant Hing Chi Ngok.

1          THE COURT:  Good afternoon.

2          MR. MAJOR:  Good afternoon.

3          THE COURT:  Mr. Baldiga?

4          MR. BALDIGA:  Good afternoon, Your Honor.  William

5     Baldiga, Brown Rudnick, special criminal defense counsel to

6     the debtor, Mr. Kwok.

7          THE COURT:  Good afternoon.  Thank you.  All

8     right.  There are two matters on at 2:00 p.m.

9          Trustee Despins, I don't know which order you're

10     anticipating that we will handle those, but go right ahead.

11          MR. DESPINS:  Your Honor, if Your Honor is okay

12     with this, I think it would make sense to deal with the

13     adversary proceeding matter --

14          THE COURT:  That's fine.

15          MR. DESPINS:  -- because it's really not going

16     forward on a substantive basis.  We'll just adjourn it.  To

17     make a long -- if that's okay, Your Honor, I can just give

18     preamble as to why it should be adjourned --

19          THE COURT:  Yes, please.

20          MR. DESPINS:  -- which is that we received a

21     proposal from Zeisler regarding a way to resolve the

22     adversary proceeding.  We are -- we've considered it.  And

23     we've passed it on to the Sherry-Netherland because the

24     Sherry-Netherland is not a party to the adversary

25     proceeding, but practically they're a party to some

1    agreements that would need to be modified, so we need their

2    involvement or their consent.

3            I wouldn't say consent, because I don't want to be

4    in a position where I'm being held to that, but it would be

5    better to have their consent if we can get it.

6            And, therefore, because we were not able to obtain

7    their consent, it makes sense to adjourn this so that we can

8    see if we can get their consent and not have to litigate

9    this at all.

10           And, therefore, we would ask the Court to adjourn

11   this for two weeks, or whatever, you know, period you think

12   is reasonable.

13           THE COURT:  Let me ask you, just so I make sure I

14   understand what you just said.

15           You received an offer to resolve the proceeding

16   from Zeisler & Zeisler?

17           MR. DESPINS:  Basically that this is the

18   proceeding to terminate the -- Mr. Kwok and the --

19           THE COURT:  Right.

20           MR. DESPINS:  -- Kwok members.  Remember, his

21   family has access to the Sherry-Netherland and we received a

22   proposal that would obviate the need to litigate the issue.

23           THE COURT:  Okay.

24           MR. DESPINS:  But there are issues involving the

25   Sherry-Netherland that we need their involvement in and

1    that's why we could not proceed with that today.

2              THE COURT:  All right.  That's fine.  That's fine.

3              But, Counsel, are you part of this resolution as

4    well, this proposed resolution, so that there wouldn't be a

5    need to litigate this matter?

6              MR. MAJOR:  Your Honor, we are -- we have been

7    participating in the back and forth on the stipulation.  We

8    have not signed off on it yet, but are working with counsel

9    on the draft stipulation.

10             THE COURT:  I just want to make sure everyone's

11   talking together, right?  It doesn't make any sense -- and

12   you represent separately --

13             MR. MAJOR:  Ms. Ngok.

14             THE COURT:  Ms. Ngok.  Right.

15             And what about -- okay, just give me a second, I

16   mean, that's fine by the way.  It's all fine.  I'm just

17   trying to understand the playing field.

18             MR. DESPINS:  The only one we need and missing is

19   the son.  But, again, at this point, we're just adjourning

20   the hearing.

21             THE COURT:  Okay.  So Zeisler and -- I just -- I

22   agree that this is not a problem.  Zeisler & Zeisler on

23   behalf of Mr. Kwok and Mei Guo are submitting this proposal

24   in an attempt to resolve without the need for litigation, is

25   that correct?

1           MR. MORIARTY:  Not totally.

2           THE COURT:  Well, okay.

3           MR. MORIARTY:  On behalf of the debtor --

4           THE COURT:  The reason I ask is there's -- there

5      are four defendants, right --

6           MR. MORIARTY:  Correct.

7           THE COURT:  -- in this adversary proceeding.  So I

8      need to understand that, or not, or one way or another

9      whether all four of these defendants are involved in this

10     process or not.

11          MR. MORIARTY:  So, on behalf of the debtor,

12     Zeisler & Zeisler, who only represents the debtor in this

13     adversary proceeding, has been trying to reach a resolution

14     that would include the debtor's wife, Ms. Ngok, and his

15     daughter, Ms. Guo.  And we have been communicating with

16     Attorney Vartan on behalf of Ms. Guo.

17          Now, Ms. Guo hasn't appeared in this case by

18     counsel, but, as you know, Attorney Vartan has an attorney-

19     client relationship with her.

20          And so the only one that would not be a part of

21     this stipulation, as we have currently set it up, would be

22     the son, Mileson Guo.  He is not in the U.S. and is not

23     represented by counsel, hasn't appeared in this matter, and

24     there's nobody for me to talk to about including him.

25          MR. DESPINS:  Your Honor, I --

1          THE COURT:  Isn't this all about who has access to

2     the apartment at what -- at what times?

3          MR. DESPINS:  Yes.

4          THE COURT:  Isn't that what this is about?

5          MR. DESPINS:  Basically it's to cut off

6     permanently access to the apartment.

7          THE COURT:  Right.

8          MR. DESPINS:  But as to the son there have been

9     many attempts at service.  You know.  Basically he's making

10    sure we can't serve him, so we would default on this

11    actually.

12         We don't need to resolve this now, but I don't

13    think that it would be an impediment to reaching a

14    consensual resolution with the other members of the family.

15         THE COURT:  All right.  Well, obviously, if

16    there's an ability to resolve all or part of the adversary

17    proceeding, then the Court would welcome that.

18         But we still have to figure out how that's all

19    going to work with regard to the defendant, who's not

20    represented by counsel or hasn't filed an appearance.  I

21    suppose you could default them.  I mean, there's different

22    ways you could proceed, right?

23         But if we're going to get to the point of where

24    there's actually some kind of a binding judgment, whether by

25    stipulation or otherwise, all the defendants have to be

1    dealt with in some way, shape or form.  That's all I'm going

2    to say about that.  I mean, that's -- that's what will have

3    to happen.  So you'll all figure it out, I suppose.

4         So with regard to timing, Trustee Despins, you

5    want something as soon as two weeks from now, is that what

6    you're saying?

7         MR. DESPINS:  Yes.  Because I -- you know, the

8    Sherry-Netherland got the draft yesterday, so that's plenty

9    of time for them to respond and to see whether we have an

10   agreement or not.  And if we don't, we might have to go

11   forward with the proceeding.  But two weeks should be plenty

12   of time.

13        THE COURT:  I'm just looking at the Court's

14   calendar.  There's a hearing scheduled for May 17th at 10

15   a.m. in the *Despins vs. Greenwich Land* adversary proceeding

16   on a motion for a preliminary injunction.  You want that

17   scheduled the same day or you want it scheduled on a

18   different day?  I mean, I have no idea what's happening with

19   that matter insofar as are there going -- is it going to be

20   a long evidentiary hearing?

21        MR. DESPINS:  No.

22        THE COURT:  I really have no idea.  You'll have to

23   educate me as to that.

24        MR. DESPINS:  And we always try to avoid those,

25   Your Honor.  But it would be prudent to have it on a -- on a

1    different day because I --

2            THE COURT:  A different day.  All right.  Well,

3    the day before is a Tuesday, where we already have hearings

4    scheduled in other cases.  We have something scheduled at 2

5    o'clock already on the 16th.  But I -- when I say that, it's

6    something I think, I should -- I should make sure, but I

7    could see that that might not be more than a half an hour or

8    so.  But let me take a look on that for a minute.

9        (Pause)

10           THE COURT:  Well, I'm not sure if the matter

11   that's on at 2 o'clock on the 16th is actually going to go

12   forward, but I can't say that for right now.

13           So what I could do is either schedule you for 2:30

14   or 3:00 on the 16th or schedule you at 2:00 and realize you

15   might have to listen to something -- you don't have to

16   listen, but there might be another matter at 2 o'clock.

17           So how would you like to handle that, Trustee

18   Despins?

19           MR. DESPINS:  2:30 is fine, Your Honor.

20           THE COURT:  Okay.  So we'll continue the pretrial

21   conference.

22           MR. DESPINS:  That's on May 16th, Your Honor?

23           THE COURT:  May 16th, yeah.  I just need a moment.

24   I just -- there's so many different things, I have to make

25   sure I'm in the right place.

1          So, yes.  So we will continue the pretrial

2     conference in this adversary proceeding, 23-5002, to May

3     16th at 2:30 p.m.  Okay?  So that addresses that matter on

4     the calendar.

5          So now we have a continued hearing on the issue

6     with regard to discovery and compliance with the subpoena

7     served on Mr. Kwok.  And I don't recall sitting here right

8     now, but did we enter that order already with regard to the

9     200 questions?

10          MR. DESPINS:  You did.  So there's only one issue

11     that remains open.

12          THE COURT:  Okay.  All right then.

13          MR. DESPINS:  So if I may, Your Honor?

14          THE COURT:  But did that order enter with regard

15     --

16          MR. DESPINS:  Yeah.

17          THE COURT:  Okay.  Okay.

18          MR. DESPINS:  Yes, you did.

19          THE COURT:  I thought it did, but sometimes it

20     hard to keep track.

21          MR. DESPINS:  Understood.

22          THE COURT:  Okay.  So go right ahead.

23          MR. DESPINS:  So, Your Honor, we left the last

24     hearing without resolving this issue because we didn't have

25     a transcript.  But now we do have a transcript and the

1    transcript is very clear as to what transpired and what the

2    agreement was.

3             I, you know, don't want to do that -- you know,

4    spend too much of the Court's time, but starting on page 113

5    of the transcript, lines 10 through 15.  Mr. Best --

6             THE COURT:  Give me a second to get there, please.

7             MR. DESPINS:  Okay.  Sorry.

8             THE COURT:  113?

9             MR. DESPINS:  Yeah.  113.

10            THE COURT:  Lines what?

11            MR. DESPINS:  10 through 15.

12            THE COURT:  Okay.  Go ahead.

13            MR. DESPINS:  This is Mr. Best addressing the

14   Court.  "What they  -- what the problem which we need to

15   figure out is the Southern District has a protective order

16   or the use of that information.  I don't know how that can

17   be worked out with Your Honor and with counsel, but that

18   will come up whether it's directly to the Department of

19   Justice or through us, meaning that they would produce,

20   they, the defendant, would produce to us documents."  So

21   that's the teeing up of the issue.

22            Then I go next to page 123, lines 7 through 14.  So

23   page 123, lines 17 through 14.  This is where I address the

24   court, and I said, "But the defendant, he has standing in

25   that court to say you know what, Judge -- criminal judge, we

1    would like a modification to the protective order, and that

2    modification would be that we," this is again the defendant,

3    "can provide to the Trustee, Chapter 11 Trustee, copies of

4    the documents that the Government gave us or gives us.  This

5    court, Your Honor, could direct the debtor to seek such a

6    modification of the protective order.  This is my proposal."

7            Then page 139, lines 7 through 19. So page 139,

8    lines 7 through 19.  Again, Mr. Best addressing the Court.

9    And it's more lines 13 through 19.  "But we are in agreement

10   in principle that's subject to the U.S. Department of

11   Justice and really most importantly the District Court Judge

12   agreeing to the disclosure of it.  I'm sure with many

13   limitations or qualifications that we won't stand in the way

14   of that.  The discussion really is what's the best way?

15   How's the best way to accomplish that?"

16           Then page 140, lines 4 through 6.  Again, Mr. Best

17   addressing the Court.  "There's a concern from the U.S.

18   Trustee's counsel," I guess that's a misnomer, it was -- is

19   the Trustee's counsel, that they don't have standing in the

20   Southern District for the subpoena.  I don't care how we get

21   home.  There are multiple ways of doing that."

22           And then lower down on that page, still page 140,

23   lines 20 to 23.  Again, Mr. Best.  "And so I want the help -

24   - to help the Court explore this and then help the Court in

25   fashioning an order that -- or a ruling or you don't -- or

1    you don't -- I mean, I don't even know if you need to assure

2    ruling, but I'd like clarity on the way forward."

3              And then page 141, lines 10 through 15.  This is

4    where I address the court and I say, "And so what should

5    happen is that I think the Court," meaning Your Honor,

6    "should enter an order saying that the debtor is directed to

7    seek a modification of any applicable protective order in

8    the criminal case to allow the Chapter 11 Trustee access to

9    the document produced by the Government to the debtor."

10   Couldn't be clearer.

11             Then on page 143, or sorry, the bottom of 142,

12   line 25, and the top of 143, lines 1 and 2.  Mr. Best, "I'm

13   fine with counsel proposing a draft order that we look at

14   and get to Your Honor if that's the easiest way of doing

15   it."

16             And then on lines, same page, 143, lines 7 through

17   9.  "So that I think there's an agreement to be -- to abide

18   by.  If the Southern District allows to use the information

19   subject to a protective order, them being part of the

20   protective order.  There's no mention that it has to come

21   directly from the Department of Justice to us."

22             Then, even the Court, although that was cut off,

23   this is on page 146, I was trying to correct the statement

24   that had been made, but on top of 146, it says the Court,

25   "The debtor will seek, but then share with you," meaning

1    with the Trustee, once their -- once their -- it's not --

2    it's cut off because Your Honor's -- I said "correct".  But

3    basically what you were saying is that once they get the

4    documents from the DOJ they'll share with you, the Trustee.

5            Page 149, lines 9 through 11.  I believe this is

6    the Court, nope, yeah, it is the Court.  "There's an

7    agreement.  We're going to proceed with that agreement.  I'm

8    going to hold Mr. Best and Mr. Despins to that agreement."

9            Then I go to page 149, 14 through 18.  "The Court:

10   All I would say about what you just said is that when you

11   say see your client, I understand -- I understand you have

12   to see your client.  But you've agreed that your client's

13   not going to oppose this.  Mr. Best:  I agree."

14           And so that's all I would cover, Your Honor.

15   There was never any discussion by Mr. Best saying, oh, we

16   can't, we can't turn over anything to them, it has to come

17   from the Department of Justice directly to the Trustee.

18           The reason they're proposing that, Your Honor, I

19   want to be very direct about this, is because that would

20   never happen.  The DOJ is never going to produce anything to

21   us.  We don't exist in their court.

22           So they're proposing something that essentially

23   defeats what we're trying to do, when, in fact, you know,

24   they said, oh, we have no problems with getting you the

25   documents.  You just need to get them from the DOJ.  But

1  they know what that means.  Is that we will never get those

2  documents.

3          And the argument that was made by Mr. Baldiga last

4  time was we don't know what is -- we don't know what's in

5  that file.  There could be horrible things.  But by the same

6  token he's saying it's okay if they get it all from the DOJ.

7  I have no problems with that.  But then he says I can't give

8  it to them because there could be horrible things in there.

9          Well, there's some -- there's a logical gap that's

10  missing here, which is, if they're okay with us getting it

11  from the Government, why is it not okay for them to give it

12  to us?

13          There's no act of production doctrine here.  It

14  comes from the Government.  They get a computer chip.  They

15  get it from the Government.  They copy it with a computer

16  and they give it to us.  There's no active production.

17  There's no recognition by them that this information is

18  valid, truthful or anything like that.  It's a pure pass

19  through.

20          And we cannot -- you know, we have no standing to

21  go and seek, to subpoena the DOJ.  That may be what they

22  intended.  But at the end of the hearing, it was pretty

23  clear as to what was agreed to.  So they raised issues of

24  act of production.  There's no act of production here.  This

25  would be passing on what the DOJ gives them.

1          Then they raised the issue of, well, there's

2     national secrets in there.  I'm sure the DOJ will -- knows

3     how to protect itself and they will put limitations on what

4     we can see and not see.

5          And by the way, the order that Your Honor would

6     enter says that only the Trustee and his counsel can see the

7     documents.  Nobody else in the case can see the documents.

8          But if that's not okay with the DOJ, they will

9     raise their hand and say, no, no, we can't do that because

10    they're -- like there's secret sauce information in there.

11    We can't share that with the Trustee.  They will do that.

12         We are taking that risk.  We've always made that

13    clear.  The order says, the proposed order we submitted

14    says, that there's no guarantee that there's no consequence

15    to the debtor if the criminal court and the DOJ says no.

16    There's no -- there's no consequence to that.

17         We're not holding them to a standard where they

18    must deliver the documents.  The only standard is they must

19    make their request and file the motion with the Court and

20    attach the order that Your Honor would enter.

21         So on that basis, Your Honor, I would say that the

22    agreement that was entered into at that hearing was that the

23    debtor would seek permission from the criminal court and

24    from the DOJ to give to the Trustee documents that they

25    receive.  And they have the ability to review it.  The

1    debtor has the ability and its counsel has the ability to do

2    that.

3              And, again, to be clear, there's no obligation of

4    result here.  The obligation is to seek that permission from

5    the criminal court and from the DOJ.  And I believe that's

6    what we left the April 20th hearing with and that's what

7    we'd like the Court compel the debtor to do.

8              I'd be happy to answer any questions you may have.

9              THE COURT:  I do not have any questions at this

10   time.  Thank you.

11             Mr. Baldiga or Mr. Henzy, who is going to address

12   the matter?

13             MR. BALDIGA:  I think I am, Your Honor.

14             THE COURT:  Okay.  Go right ahead.

15             MR. BALDIGA:  William Baldiga, Brown Rudnick,

16   special criminal defense counsel to the debtor.

17             Your Honor, we are here again to answer the

18   question as to what did the debtor agree to do?

19             And I don't know whether the Court had an

20   opportunity to look at our submission yesterday by which we

21   attached the transcript.  It's Docket 1737 is the

22   transcript.  I think it's not a --

23             Given what I just heard, which I'm frankly

24   astounded to have heard, it's not a coincidence that we

25   chose to file the transcript so that everyone could see it.

1           And Mr. Despins chose to wait until just now to

2     select those parts of it.  And so I'll have to go through

3     each one.

4           But at Docket 1737 is the debtor's supplemental

5     submission for primary purposes to provide the transcript.

6           And I agree with Mr. Despins.  The issue is what

7     did the debtor agree to do?  Because we're here to try

8     implement what the debtor agreed to do.

9           And I don't know whether you have that in front of

10    you, Your Honor, the transcript, but --

11          THE COURT:  I do.

12          MR. BALDIGA:  Okay.

13          THE COURT:  You have to -- you'll direct me to the

14    pages you want me to read though, please.

15          MR. BALDIGA:  Yes.  And it's in the supplemental

16    submission by page and line.  And there's four times in

17    which the debtor's proposal was made crystal clear.  And you

18    didn't hear any of that from Mr. Despins.  So unfortunately

19    we're going to have to hit them right now.

20          Page 84, lines 11 to 12.

21          THE COURT:  All right.  Give me a second, please.

22    It will take me a minute to get there.

23          MR. BALDIGA:  Of course.

24          THE COURT:  All right.  I'm on page 84.

25          MR. BALDIGA:  Lines 11 to 12.  This is Mr. Best.

1    And it's important who's speaking, right, because we're here

2    to implement what the debtor proposed and Mr. Best spoke for

3    the debtor.  Mr. Despins did not.  "They might as well make

4    the request of the Government."

5            Second, page 93, lines 11 to 14.

6            THE COURT:  All right.  Give me a second again,

7    please.

8            MR. BALDIGA:  Of course.

9            THE COURT:  93 did you say?

10            MR. BALDIGA:  Yes.  The Court asked a very direct

11    and very clear question.  "So you're saying the only way --

12    the only way, the Trustee can proceed is to get the

13    information from the Government?  Correct."

14            Given the issue on the table, I am a little more

15    than surprised that Mr. Despins didn't see that when he

16    reviewed the transcript.

17            But, again, page 94, the very next page, lines 1

18    through 11.  "The Court:  The only way the Trustee can

19    proceed is to get it from the Government?  No.  If the

20    exercise was we as defense counsel received a discovery

21    packet, we would have to go to the Government and get their

22    consent.  We would also then have to go to the Court and get

23    the Court's consent."  And so Mr. Best concludes exactly

24    with the same words he used before, "they can go directly to

25    the Government and bypass all of that."

1        Page 113, lines 7 to 10.

2              THE COURT:  Hold on, please.

3              MR. BALDIGA:  Of course.

4              THE COURT:  Okay.  I'm here.

5              MR. BALDIGA:  Starting at the top of the page, "I

6    tried to come in and craft a solution and so forth saying

7    they can simply go to the Department of Justice."

8              There's some confusion, which I tried to correct

9    my colleague, who's not familiar with the differences

10   between a Chapter 11 Trustee and a United States Trustee,

11   but I think he's not the first one to have confused that.

12   Ignore that.

13             "They can go to the Department of Justice Criminal

14   Division U.S. Attorney's Office Southern District and ask

15   for the discovery."  Okay.  Four times in a row, clear as

16   crystal each of the four times.

17             Now starting at page 113 is Mr. Best, also by way

18   of being very forthcoming, brings up at line 10 the issue

19   that then we need to discuss at length which is how to deal

20   with the protective order.  Okay.  So we're now turning to

21   the second part which is how do we deal with the protective

22   order?  The proposal has now been stated consistently,

23   clearly, no doubt.  Okay.

24             Now, we need to figure out is -- the Southern

25   District has a protective order over the use of that

1     information.  I don't know how that could be worked out.

2     Now, we have a lot of discussion as to that.

3           So let's go through each of Mr. Despins' suggested

4     pages having ignored the ones, where the proposal is

5     actually made.  So I'll go in the same order that Mr.

6     Despins did.

7           Page 123, lines 7 to 9.

8           THE COURT:  All right.  Give me a second, please.

9           MR. BALDIGA:  Yes.  Now, importantly, this is no

10    longer Mr. Best talking.  So the debtor has made its

11    proposal which we're here trying to implement.

12          This is Mr. Despins, not Mr. Best, who speaks for

13    the debtor.  And Mr. Despins is saying, "But, you know,

14    judge, criminal judge, we would like a modification to the

15    protective order."  This is the language that Mr. Despins

16    just suggested to you to define what Mr. Best proposed.

17    Well, obviously, it's neither Mr. Best, and not the

18    proposal.  It's to talk again about the protective order

19    that Mr. Best first brought up at page 113.  Okay.  So

20    that's the Trustee's first language.

21          Next, let's got to the next page the Trustee

22    suggested, page 139.

23          THE COURT:  Okay.

24          MR. BALDIGA:  Lines 7 to 19.  This is Mr. Best.

25    Two paragraphs.

1          "One is agreeing, as we have agreed and the Court

2     has now entered, that we -- that Mr. Kwok would invoke the

3     Fifth or not on a subject matter specific question by

4     question."

5          Then second, the second paragraph, "we won't stand

6     in the way of it or of that.  The discussion really is the

7     best way to accomplish that."  Again, it's about the

8     protective order.  Because that's what we're talking about,

9     having already concluded 20 minutes before that what the

10    proposal was, and we've been talking about now the

11    protective order for the last 20 minutes.  There's nothing

12    there that refines the prior proposal, but that's the best

13    language the Trustee has.

14         Then he suggested we also look at the next page,

15    140.  Okay?  This is Mr. Best talking about how to solve the

16    protective order.  "I don't care how we get home.  There are

17    multiple ways to do that.  And he spoke about not wanting to

18    have the obligation to go the Department of Justice

19    themselves."

20         Mr. Best says, "I'm just transparent with the

21    Court.  They're going to end up in front of the U.S.

22    District judge in the Southern District of New York because

23    I'm sure he or she is going to want to hear from them on the

24    issues regarding limitations of use and confidentiality and

25    protective order."  Okay.  Still talking about the

1    protective order.

2           As Mr. Despins knows, page 141, again, I'm going

3    through every time Mr. Despins said the Court should look at

4    the transcript, page 141, lines 10 through 15.  Now, this is

5    not Mr. Best.  He's done.  This is Mr. Despins saying "What

6    I think should happen is that the Court should enter an

7    order saying that the debtor is directed to seek a

8    modification of the protective order," again, to talk about

9    the protective order, "To allow the Chapter 11 Trustee

10   access to the documents produced by the Government."  Okay.

11   We agreed to do that.  Again, a good discussion about the

12   protective order, absolutely appropriate.

13          Mr. Despins asked that we now look at the next

14   page, 142.

15          THE COURT:  Okay.

16          MR. BALDIGA:  Still Mr. Despins.  So Mr. -- this

17   cannot be Mr. Best changing his earlier proposal, because

18   this is Mr. Despins talking, so that doesn't change the

19   debtor's proposal.

20          And then finally -- no, it's not finally, page

21   146.  Page 146 is entirely a colloquy between the Trustee

22   and the Court.  So that's not Mr. Best changing the debtor's

23   proposal.

24          And finally the Trustee suggests the Court look at

25   page 149, at 9 to 11.  This is after the -- PAX asked, and I

1    think someone else may have as well, access and the Court

2    declined to expand the order accordingly.  Well, this

3    doesn't change anything.

4              I think this, we're talking now about mechanics as

5    to who's going to draft an order.  And Mr. Best saying,

6    "Yyou know, our client, when we talk with our client, our

7    client's not going to change what we've agreed to."  Well,

8    we're not saying he did.  And, in fact, I'm confirming that

9    he didn't.

10             So, Your Honor, again, there is a reason we filed

11   the transcript yesterday with our supplement and the Trustee

12   did not.  It's because it is so crystal clear exactly what

13   the debtor proposed.

14             And, again, it's -- it would be clear if Mr. Best

15   said it once, but as set forth in our supplement, Mr. Best

16   said the same thing and the Court repeated the words.  And

17   Mr. Best said correct.

18             Again, at pages 84, 93, 94 and 113.  They can go

19   to the Department of Justice Criminal Division U.S.

20   Attorney's Office Southern District and ask for the

21   discovery.

22             And, Your Honor, this makes all the sense in the

23   world.  Again, and not to repeat it all, but we're here to

24   implement what's already been what the debtor has agreed to,

25   and the Court seemed inclined to enter an order implementing

1    what the debtor proposed as a compromise of sorts on this.

2            And it makes sense for many reasons, including

3    we're talking about materials that no one at this hearing

4    knows what they are.

5            These would likely, almost certainly, include

6    materials seized during the day of Mr. Kwok's arrest from

7    him or from others.  It almost certainly would include other

8    materials that the Department of Justice has gathered over

9    years or months.  We don't know.  No one, not the Trustee,

10   not us, not Mr. Kwok, and not this court has any idea what

11   the subject matter would be of what the Trustee suggests.

12           So the Trustee is suggesting that the Court enter

13   an order directing someone, and I'm not sure, and we'll talk

14   about who it would be, but someone do something with things

15   that no one knows what they are.

16           Second, and these all tie together, this would

17   almost certainly implicate Fifth Amendment rights or other

18   constitutional rights.  But given that we don't know what

19   materials we're talking about, no one could really say.

20           And, again, we point to the fact that there's a

21   second Department of Justice investigation apparently that

22   the Trustee alerted us to, because he received a subpoena.

23   We do not represent Mr. Kwok in connection with that.  We

24   don't know whether he has counsel that's representing him as

25   to that.  I'm not sure he even needs counsel.

1          But if Mr. Kwok is directed to surrender anything,

2     whoever that counsel would be would have to advise Mr. Kwok,

3     if they can gain access to him in the penitentiary, to

4     discuss with him his rights, constitutional and others in

5     connection with that.  We're a long ways away from doing

6     that.

7          And, again, I'm not even sure that other firm

8     would ever have access to those materials to start that

9     discussion with their client as to their client's

10    constitutional rights, but the Trustee would have this court

11    blow right through that, whatever those bundle of rights are

12    as to those unknown documents.

13         Third, these materials could be subject to

14    attorney-client or product privileges.  This court entered

15    on September 14, at Docket 856, a consent order as to

16    attorney-client or work product privileges assigning them to

17    the Trustee, but as to three specific so-called

18    investigation topics that are very tightly defined.  One is

19    assets of the estate or assets of the debtor.  Two, the

20    debtor's financial condition.  And three, administration of

21    the estate.

22         I have no idea, and neither does the Trustee, and

23    with all respect no one else, including this court, has any

24    idea of what portion of the documents we're now talking

25    about may concern any one of those investigation topics.

1    Could be entirely outside of that universe.  Almost

2    certainly would contain documents outside the universe, but

3    we're all just guessing.

4           But what the Trustee is suggesting is that the

5    Court's consent order entered at Docket 856 be expanded

6    indefinitely to have effectively a privilege waiver as if

7    this court never spent any time defining those.  And I

8    understand the parties spent a lot of time negotiating that

9    order.  Thankfully we did not have to have any part of that.

10   But it would make a mockery of that order for the Court to

11   enter the order the Trustee is now suggesting.

12          Fourth, we have been told by the Department of

13   Justice that the reason we don't have the materials yet is

14   because we must obtain certain national security clearances

15   under a federal law called CIPA to review the materials, or

16   a great portion of them, and we're in the process of doing

17   that.  But we're told it's not a simple process.  It

18   requires background checks, fingerprinting, and so forth.

19          Fifth, we've been told that some, maybe a

20   significant portion of the materials will be for attorney's

21   eyes only.  Our eyes.  Our client won't even get to see

22   them, which raises the question if the Court is to enter an

23   order as the Trustee suggests, are you ordering the client,

24   Mr. Kwok, to turn over something that he can't have access

25   to?  Well, that, that can't happen because he won't ever

1    have it.

2              THE COURT:  Well, let me stop --

3              MR. BALDIGA:  Or are you --

4              THE COURT:  -- you right there, Mr. Baldiga

5              MR. BALDIGA:  -- would you --

6              THE COURT:  -- on what you just said for a second.

7         Regardless of everything both of you have just

8    said about the transcript, there was never going to be an

9    order requiring Mr. Kwok to turn things over that he can't

10   have.

11        It was -- the request, and what I thought was

12   resolved, was that there was -- Mr. Kwok was going to ask

13   the District Court judge and the United States Attorney's

14   Office, whether simultaneously or in steps, whatever's

15   produced to him would be produced to the Trustee.  That was

16   my understanding of what was supposed to happen.  And when I

17   took that into --

18             MR. BALDIGA:  We agreed one hundred percent --

19             THE COURT:  Wait.  Hold on a second, please.

20        And I took that into consideration because your

21   colleague, Mr. Best, made substantial arguments to which the

22   Trustee responded, and I think I questioned him about a

23   case, a *Bouknight* case, that said doing so is not

24   testamentary.  It's turning over information that belongs to

25   the estate.  And there was a case, the *Bouknight* case.

1    I believe I even -- I'm looking at this

2    transcript, having not read it all, but looking at what you

3    pointed me to, and I even see that I talk about it.  And I

4    see that the majority of the -- and I'm not saying this

5    changes your position.  I'm just pointing out something for

6    the record.

7         The majority of the sections of the transcript you

8    asked me to look at, actually all of them, pages 84, pages

9    93, pages 94 and 113, all occur before there was a recess

10   that the Court took and came back at 2:00 p.m., at which Mr.

11   Best and Mr. -- and Trustee Despins reported on their

12   conversations.

13        So to be -- to set the record straight, there was

14   no agreement in place before there was a recess.

15        I understand what your argument is is this is what

16   you believe the agreement is.  And I understand Mr. Despins

17   says he believes this is what the agreement is.

18        But before there was a recess at 2:00 p.m. there

19   was no agreement.  Part of the reason of taking the recess

20   was to go have the discussion about this right?

21        And it was clear that there was no problem with

22   regard to the 200 and some odd questions that the Trustee

23   wanted specific invocations of the Fifth Amendment to or not

24   by your client, and you -- Mr. Best agreed to it and that

25   order is entered.

1           The only remaining issue is how, if at all, does

2     the Trustee get discovery with regard to the information

3     that's part of the criminal indictment?

4           And the Trustee asked for your client to turn it

5     over -- to turn over whatever the Government turns over to

6     your client to the Trustee.

7           And I just want to be clear.  So your argument is

8     the same argument it was before the recess, which is you

9     can't do that because that's testamentary in nature?

10          I don't know what the documents are either.

11    Nobody does.  But that's not the point.  The point is there

12    was supposed to be some kind of process by which the Trustee

13    would seek to get that information, understanding, as it's

14    said in different places in the transcript, including after

15    the recess, that even if the debtor sought that information

16    and didn't obtain it then the -- and the U.S. Attorney's

17    Office and the District Court judge didn't agree with the --

18    Mr. Kwok, assuming Mr. Kwok asked for the information, then

19    that's all Mr. Kwok could do.  He asked.  And he didn't get,

20    right?  That was -- that was the way it was presented to the

21    Court.  It was presented in that manner after the recess at

22    2:00 p.m.

23          Yes, was there a discussion about the protective

24    order?  Without question there was a discussion about the

25    protective order.

1           And my assumption was that when a request was made

2     to the United States Attorney's Office, maybe in the first

3     place, and to the judge in the second place, or

4     simultaneously, that the protective order would be part of

5     that because whatever was going to be produced, if anything,

6     by the Government to Mr. Kwok would obviously be subject to

7     a protective order that's already in place.  Right?

8           But the Trustee is not a party to that protective

9     order.  And, and, what the Trustee, at least in my mind --

10    and I'm looking at everything you've read, you're pointing

11    me to, the Trustee is saying I can't go into the Southern

12    District of New York and ask for that because they're going

13    to say I don't have standing.  Right?  So he wanted your

14    client's cooperation to get over the standing hurdle and

15    then work with --

16           MR. BALDIGA:  But we agreed --

17           THE COURT:  -- then work with -- and then take the

18    risk that the U.S. Attorney's Office and/or the Court, the

19    District Court, the United States District Court, says no.

20    I don't care what you think Trustee, we're not -- I'm not

21    giving it -- you don't get it, you don't get it at this

22    point or maybe ever.

23           MR. BALDIGA:  Your Honor, our proposed order at

24    1698 that we filed on April 24th does exactly what you just

25    described.

1      THE COURT:  Okay.  Well, let me look at it.

2   What's the number?

3      MR. BALDIGA:  1698.

4      THE COURT:  Okay.  Hold on a second.  It will just

5   take me a minute to get there.  Okay?

6      MR. BALDIGA:  Of course.

7   (Pause.)

8      THE COURT:  It will take me a minute.  I'm sorry.

9   It's just it's a large, as you know, it's a large docket so

10  it takes a minute to load.

11     MR. BALDIGA:  Getting larger.

12     THE COURT:  Yes.  I'm almost there.  All right.

13  I'm going to open it now.

14     MR. BALDIGA:  Everything except paragraph 1, I

15  believe, is agreed, so it's only paragraph 1 that is at

16  issue.  I believe that.  There may be slight differences

17  otherwise, but -- and the only issue really is what the

18  request is.

19     We've agreed to request the Government, we agreed

20  to request the Court and we agreed to seek to modify the

21  protective order to allow the Government to produce whatever

22  it wants to produce to the Trustee.  Everything this court

23  just said and everything Mr. Best volunteered to do.

24     THE COURT:  Well, I think I said a little more

25  than that.  And maybe it's a distinction you think doesn't

1    have a difference, but I'm not sure about that yet.  But

2    let's talk it through.  I --

3              MR. BALDIGA:  The distinction is, as the Trustee

4    is arguing, is whether the materials must be produced by the

5    debtor.

6              And in every one of the cases the Trustee cites is

7    a Section 551 case having to do with property of the estate,

8    and the surrender obligation which is really not at issue

9    here at all because we're not talking about the debtor

10   surrendering anything of his.

11             We're talking about discovery of materials

12   produced by the Government.  So the surrender cases, and,

13   again, every single one of the Trustee's cases is a

14   surrender case under Section 551 --

15             THE COURT:  But isn't *Bouknight* or one of the

16   other cases, it involved a criminal proceeding?   It

17   involved --

18             MR. BALDIGA:  But they're still -- but they're 551

19   cases surrender of property of the estate.

20             THE COURT:  But how do you know -- just like you

21   just said though, Attorney Baldiga --

22             MR. BALDIGA:  Yes.

23             THE COURT:  -- you said you don't know what's in

24   those documents.  Nobody does.  So how do you know that they

25   don't, those documents don't relate to surrender of property

1    of the estate?  You don't know, none of us know that.  We

2    don't know.  We don't.  We have no idea.

3          MR. BALDIGA:  No.  The trustee in those other

4    cases, the debtor was resisting production, but it was

5    production of papers of the estate.

6          Here, you're right.  We don't know what these

7    papers are.  Many of them almost certainly will not be

8    papers of the estate because the file that the Government

9    has to turn over is the *Brady* production, everything that it

10   has uncovered from any witness or anyone over the course of

11   an investigation that may go over months or years.

12         So, yes, could there be something within the

13   Court's earlier July consent order conceivably?  Yes.  But

14   we're all guessing as to what portion.  But the --

15         THE COURT:  So let me just ask you another

16   question.  Let's assume --

17         MR. BALDIGA:  Certainly.

18         THE COURT:  Let's assume that your -- let's just

19   argue -- let's just say for sake of argument that they have

20   to go to the Department of Justice to get this -- the

21   Trustee has to go to the -- so why can't you just say, yeah,

22   we have no problem with that?  You should turn over to them

23   everything you're going to turn over to us.  What's the

24   problem then?

25         MR. BALDIGA:  No problem whatsoever, done and

1    done.  We will do exactly that.  And our order says exactly

2    that.

3              THE COURT:  Well, I don't think it does say

4    exactly that, but --

5              MR. BALDIGA:  Then I'm happy to -- happy to make

6    it even more clear.  But what you just said, we've agreed to

7    do.

8              MR. DESPINS:  They've agreed to do that, Your

9    Honor, because it won't happen.  The DOJ has no obligation

10   to give us any documents.  The only way we have access to

11   that court is through the defendant.  He's already said that

12   he's okay with the DOJ giving us --

13             MR. BALDIGA:  But we'll move the Court to do it.

14             MR. DESPINS:  Let me finish.

15             THE COURT:  Hold on a second.

16             MR. DESPINS:  Okay.

17             MR. BALDIGA:  Okay.

18             MR. DESPINS:  So he's already said that he's okay

19   with the DOJ giving us all the documents.  Once he's crossed

20   that road, how does he say, oh, if I'm the one giving it to

21   you, then there's a real problem with that?

22             We all know that the act of production does not

23   apply in that context because it's Government documents.

24   The Government gave them the documents.  So this argument

25   that somehow it has to go through the DOJ, I know why

1    they're proposing that, because it's a fool's errand.

2           We will never get an order from the criminal court

3    saying the DOJ must produce to us.  We don't exist in that

4    court.  The only way we can get that is through the debtor.

5    And let's focus on what's the problem the debtor has?

6           The debtor has already crossed the road and said

7    it's okay for us to get all those documents through the DOJ.

8    So now all of a sudden they say if we have to give it to

9    you, there's a problem.  Well, there's no act of production.

10   These are the Government's documents so we know that's a red

11   herring.

12          And the other stuff about national security.  I

13   can be -- if Mr. Baldiga can be qualified to review those

14   documents, I'm sure I can too.  Now, my fingerprints have

15   already been taken by the FBI to be a trustee, so I'm sure

16   that I can pass that clearance.

17          But, in any event, if the DOJ has a problem, they

18   will raise their hand and say don't allow that.  But this is

19   -- you know, this structure they're proposing is a guarantee

20   not to happen.

21          The other structure they're proposing is, has a

22   chance of happening, but not a guarantee.  And I realize

23   that.

24          But for sure to seek an order saying that the DOJ

25   must turn over to us documents, it's a non-starter.  And the

1    only reason they're proposing that is because they know

2    that's the result.

3                Thank you.

4                MR. BALDIGA:  We don't know anything.

5                But going back to what you just said, Your Honor,

6    we're willing to do exactly what you just said.

7                And nothing that the Trustee just said resolves

8    any of the issues that we put on before about the other

9    investigation, Mr. Kwok's Fifth Amendment rights, the fact

10   that none of his cases that he has cited are anything but

11   551 turnover of property of the estate cases and not

12   testamentary cases that are implicated by turning over

13   testimonial documents, which is where the Fifth Amendment is

14   implicated.  That's even before you get to the attorney-

15   client issues.

16               And, Your Honor, what's instructive here is I

17   agree with the Trustee with one thing, we're here because

18   the Trustee is pressing.

19               THE COURT:  The Trustee is what?

20               MR. BALDIGA:  Is pressing to try to get an

21   advantage by Mr. Kwok's being imprisoned and not being able

22   to be able to actually defend himself without implicating

23   his Fifth Amendment rights.

24               So the Trustee wants to take advantage of a

25   terrible situation for civil advantage.  Okay.  Well, our

1   motion, Your Honor, is as to a stay.

2          And let's just take this SEC.  At the same time

3   Mr. Kwok was arrested, the SEC brought a typical SEC action

4   for securities fraud against the same defendants, Mr. Kwok

5   and the two co-defendants.

6          The DOJ has already intervened in the SEC case

7   saying, hey, SEC, we don't even care what you want, you're

8   stayed.  Just for these very same reasons.

9          So if Mr. Despins is correct that in the middle of

10  a very serious felony proceeding in which the defendant is

11  incarcerated and it implicates all sorts of Fifth Amendment

12  rights, and that's even before you get to a separate

13  investigation, the reason why this is all so difficult is

14  because almost always this is stayed entirely.

15         We're coming before the Court trying to thread a

16  needle to not ask for a general stay, to allow the estate to

17  be administered as best we can, but consistent with the

18  constitutional rights of the debtor, our client.

19         And if Mr. Despins wants to admit that there's no

20  way to reconcile the two, the constitutional rights win out.

21         We're trying not to make it that dramatic and we'd

22  like to find a way, just as we did with the order that the

23  Court was able to enter yesterday, but it does have limits.

24         And constitutional rights aren't going to be

25  sacrificed because Mr. Despins thinks it's all going to be

1    difficult.

2              What you just suggested twice during this hearing

3    is exactly what our proposed order at 1698 does.

4              THE COURT:  Well, it's not exactly.  It's not

5    exactly.  But I see what -- you know, I mean, you don't --

6    it just says that you will, you, Brown Rudnick, will

7    promptly request that the Assistant --

8              MR. BALDIGA:  No.  It says the debtor through

9    counsel will request.

10             THE COURT:  Right.  Yeah.

11             MR. BALDIGA:  All right.

12             THE COURT:  That the Assistant United States

13   Attorney to -- but if necessary by filing a motion to modify

14   the existing protective order, provide to the Trustee the

15   documents and materials the Government produces to the

16   debtor.  You're just requesting that.  You're not -- and --

17             MR. BALDIGA:  But we can't force that.

18             THE COURT:  I understand that.  I'm not -- that's

19   not what I'm saying.

20             MR. BALDIGA:  Well, we're willing to put -- we'll

21   use your words, not ours.

22             THE COURT:  I don't even recall what my words were

23   at the moment, Mr. Baldiga, so we'd have to go back,

24   honestly.

25             MR. BALDIGA:  As long as what we're filing a

1    motion for, requesting, demanding, whatever, is that the

2    Government produce to the Trustee what the Government

3    produces to the debtor, we're okay.  As long as --

4              THE COURT:  Mr. Despins' argument --

5              MR. BALDIGA:  -- it's from the Government.

6              THE COURT:  -- is that they'll never agree to

7    that.  Can you tell me why?

8              MR. BALDIGA:  I don't know that the Government's

9    ever going to agree to anything.

10             THE COURT:  But --

11             MR. BALDIGA:  We don't know.

12             THE COURT:  -- why would they --

13             MR. BALDIGA:  That's why the Government --

14             THE COURT:  This can't be the first time there was

15   a Chapter or some form of trustee involved in some kind of

16   proceeding in which the person is being charged with a

17   crime.  I mean, this can't be -- we can't be making this up.

18             MR. BALDIGA:  No.  There's one that's, you know,

19   that's very significant that we all read about.  Sam

20   Bankman-Fried is not even the debtor, but he is the

21   principal of --

22             THE COURT:  Well, that's part of the problem.

23   He's not a debtor.

24             We're talking -- I'm talking about a debtor who

25   already has obligations under the Bankruptcy Code to the

1    Trustee --

2           MR. BALDIGA:  Yeah.  So those cases are stayed.

3           THE COURT:  -- who's been appointed to investigate

4    his affairs.

5           MR. BALDIGA:  Right.  Most civil proceedings are

6    stayed because it is so difficult to protect constitutional

7    rights in the course of civil litigation where the debtor is

8    awaiting trial, not just having a fear that he might be

9    indicted some day, but literally incarcerated, awaiting

10   trial, there's a stay.

11          THE COURT:  But what's your point?  Your point

12   still is is that if he turns it over to the Trustee, your

13   client, it's testamentary and it can be used against him?

14   That's your argument?

15          MR. BALDIGA:  That's one of the arguments.

16          But also he cannot agree to turn over what he

17   doesn't -- isn't able to see or review first.

18          THE COURT:  Well, who said he wasn't going to see

19   or review it first?  Nobody said that.

20          MR. BALDIGA:  Because we don't know what it is, so

21   how can we agree today to turn over something which we don't

22   even know what we're talking about.

23          MR. DESPINS:  Judge, they've already crossed that

24   bridge.

25          MR. BALDIGA:  We don't know what it is.

1          MR. DESPINS:  They've said that if it comes from

2     the DOJ I get it all.

3          THE COURT:  Yeah.

4          MR. DESPINS:  They've already said that.

5          THE COURT:  I'm a little confused by --

6          MR. DESPINS:  It makes no sense.

7          THE COURT:  I'm a little confused by that part of

8     the argument I have to say.  I'm a little confused by -- you

9     get to --

10          MR. BALDIGA:  No one can say --

11          THE COURT:  -- you get to see it.  You get to see

12     it before you turn it over to the Trustee, so what's the

13     problem?

14          MR. BALDIGA:  Because --

15          THE COURT:  And then you can assert whatever

16     privileges you assert.  You've already -- haven't you

17     already done that with a bunch of pleadings anyway, a bunch

18     of documents anyway?  I mean, things are marked highly

19     confidential.  We have a protective order in place too.  I

20     mean, I'm a little confused by that part of the argument.

21          MR. BALDIGA:  If the debtor has turned over things

22     that he hasn't seen prior to our representation of him,

23     shame on him.  I highly doubt that happened.  But if it did,

24     it did.  I don't know that.

25          THE COURT:  No.  But that's not the point.  The

1   point is your client -- no one's suggesting that your client

2   isn't going to get to see whatever is produced by the

3   Government before it gets turned over to the Trustee.  No

4   one's suggesting that.

5              MR. BALDIGA:  Oh, yes.  Well, yeah.  He won't be

6   able to see some of this.

7              THE COURT:  Why?  Well, that's the Government.

8              MR. BALDIGA:  Because the protective order --

9              THE COURT:  That has nothing to do with the

10  Chapter 11 Trustee.

11             MR. BALDIGA:  -- the protective order doesn't

12  allow the debtor to see some of it.

13             THE COURT:  But that's what I'm saying.  That's

14  not Trustee Despins' issue.  That's the United States

15  Government's issue.

16             MR. BALDIGA:  Okay.  So our client --

17             THE COURT:  He's not trying to get something from

18  the United States Government that your client can't see.

19             MR. BALDIGA:  Yes, he -- yes, we are.

20             THE COURT:  No, he's not.

21             MR. BALDIGA:  Yes.  And that's what he's asking

22  for.

23             THE COURT:  No, he's not.  No.  That's where I

24  would disagree.

25             MR. DESPINS:  We can carve that out if that's

1    necessary.  That's not an issue, but --

2         THE COURT:  Well, I don't know how he'd be

3    entitled to get something from the United States Government

4    that your client can't see.

5         MR. BALDIGA:  We can't agree to produce -- I'm not

6    even sure who the we is here.  But our client will --

7    doesn't know what materials we're even talking about today.

8    Neither do we.  We don't know what they are.

9         And the appropriate time to -- for us to commit to

10   do something with those is after they've been reviewed for

11   attorney-client privilege, after they've been reviewed for

12   Fifth Amendment privilege, after --

13        THE COURT:  Well, attorney-client privilege you

14   might have an issue with.  Okay?  We've gone through that

15   before in this case.

16        MR. BALDIGA:  We absolutely do.

17        THE COURT:  Okay.

18        MR. BALDIGA:  Yeah.

19        THE COURT:  So we've gone through that before, the

20   attorney-client privilege.

21        But with regard to other issues, your Fifth --

22        MR. BALDIGA:  But what about the Fifth Amendment

23   privilege in the other grand jury proceeding that none of us

24   are parties to?

25        MR. DESPINS:  Your Honor, that's the same issue.

1    Is there an active production issue?

2              THE COURT:  What's the other --

3              MR. DESPINS:  There's none.  It comes from the

4    Government.

5              THE COURT:  Yeah.  What's the other grand jury?

6    What are you talking about?  Which one?  I'm trying to keep

7    up.

8              MR. BASSETT:  There is another grand jury.  I

9    mean, there is a second grand jury proceeding --

10             THE COURT:  Oh, the one where you produced --

11   there was a subpoena served on Paul Hastings --

12             MR. BALDIGA:  -- where the Trustee has been asked

13   for --

14             THE COURT:  -- is that what you mean?

15             MR. BALDIGA:  -- materials which -- in which we do

16   not represent the debtor and neither does Zeisler.  And to

17   our knowledge, no one represents the debtor.

18             And to the extent the debtor is called upon to

19   deliver anything, he's going to have to have some law firm

20   advise him as to his Fifth Amendment rights in connection

21   with that other proceeding.

22             THE COURT:  Yeah.  But we're not talking about the

23   other proceeding.  We're talking about a proceeding right

24   now --

25             MR. BALDIGA:  Oh, our client is.

1        THE COURT:  -- in which you represent the debtor.

2        MR. BALDIGA:  My client is absolutely talking

3    about that other proceeding.

4        THE COURT:  No, we're not.  I don't even know

5    anything -- there's nothing in the record that establishes

6    there was a subpoena served.  So what?  That doesn't stop --

7        MR. BALDIGA:  That there's another grand jury

8    proceeding and my client, it has to do with my client's

9    bankruptcy case, and my client is not going to agree to turn

10   over documents in possible derogation of his constitutional

11   rights without having a lawyer take him through those

12   documents and understand what they are.

13       THE COURT:  You're now talking about something

14   that is unknown.  No one knows what you're talking about.

15   Because --

16       MR. BALDIGA:  No.  Based on what we know --

17       THE COURT:  So what if there was a subpoena

18   served, we don't know what a grand jury is going to do.  We

19   don't even know if a grand jury is going to indict.

20       MR. BALDIGA:  Of course, we don't need --

21       THE COURT:  You know, just because somebody is

22   investigating something --

23       MR. BALDIGA:  -- an indictment to happen --

24       THE COURT:  -- doesn't mean there's an indictment.

25       MR. BALDIGA:  No.  But as all the cases that we've

1    all been reviewing reflect you don't need an indictment --

2             THE COURT:  Well, you -- but you don't represent

3    --

4             MR. BALDIGA:  -- in order to implicate your Fifth

5    Amendment rights.

6             THE COURT:  -- you don't represent Mr. Kwok in

7    connection with that proceeding.  You've just said so.  And

8    neither does Zeisler & Zeisler.

9             MR. BALDIGA:  That's right.

10            THE COURT:  So the only parties that represent him

11   are here in the court, in this court, with regard to the

12   Trustee's motion to compel compliance with subpoena.

13            So the remaining issue is how, if at all, does the

14   Trustee get the documents that are in the Government's

15   control?

16            His position is that you should have -- your

17   client should have to turn over to him whatever -- your

18   client should have to turn over to the Chapter 11 Trustee

19   whatever is produced to your client.

20            Your argument is it should all come from the

21   Government.  Right?  That's where we are.

22            MR. BALDIGA:  Yes.

23            THE COURT:  We haven't changed the position that

24   we originally had before we had the hearing on April 20th --

25            MR. BALDIGA:  Yes, that's right.

1          THE COURT:  -- because that was the position

2     before April 20.

3          MR. BALDIGA:  That's right.

4          Our client has Fifth Amendment rights that would

5     be abrogated by a requirement that he turn over things

6     especially given the other proceeding and especially given

7     that he has not even been able to have a conversation with

8     counsel or look at the subject matter of that order.

9          THE COURT:  Of what order?

10          MR. BALDIGA:  The extraordinary remedy that would

11     certainly implicate his constitutional rights and abrogate

12     them.

13          THE COURT:  What order?

14          MR. BALDIGA:  Any order entered along the lines

15     suggested by the Trustee.

16          THE COURT:  Well, that's what Mr. Best said he was

17     going to do.  He was going to go back and show --

18          MR. BALDIGA:  No.  Mr. Best said that he would ask

19     --

20          THE COURT:  -- he said he had to talk to his

21     client, that was the whole point.

22          MR. BALDIGA:  No.  We went through what Mr. Best

23     suggested.  Mr. Best suggested that we would do whatever the

24     Trustee wants by way of request to the Court and to the

25     Department of Justice to say turn over whatever you want,

1    whatever you can, whatever is consistent with your own

2    processes.  The debtor is not going to stand in the way.  In

3    fact, the debtor is fine with it.  You do it.

4              MR. DESPINS:  That's not what was agreed to.

5              THE COURT:  Okay.  I think you're forgetting that

6    there was a recess that was taken and the parties went out

7    to discuss those issues.

8              MR. BALDIGA:  But there's no point after the

9    recess which the debtor's proposal changed.  Zero.  We went

10   through every -- went through twice.  One with Mr. Despins

11   and once with me.

12             Where did the debtor's proposal change after the

13   recess?  It was stated clearly before the recess what it

14   was, precisely, concretely four times.  It never changed.

15             And Mr. Despins has had plenty of time to tell the

16   Court where Mr. Best said his proposal had changed.  Didn't

17   happen.

18             MR. DESPINS:  Your Honor, on page 141, after the

19   recess, I stated very clearly what should happen.  It said

20   the Court should enter an order saying that the debtor is

21   directed to seek a modification of any applicable protective

22   order in the criminal case to allow the Chapter 11 Trustee

23   access to the documents produced by the Government to the

24   debtor.

25             After that, the only time that Mr. Best is heard

1    is I'm fine with counsel proposing a draft order that we

2    look at and get Your Honor if that's the easiest way of

3    doing it.  He had plenty of (indiscernible) to say, wait a

4    minute, this doesn't work.  We can only get documents -- he

5    can only get documents from the District Attorney.  There

6    was none of that.  That's the way the hearing ended.

7             So there's just --

8             MR. BALDIGA:  Can you go through your language

9    again because we're talking about the protective order.  So

10   let's go.  Mr. Despins' best language now.  No pun intended.

11            MR. DESPINS:  Of course we're --

12            MR. BALDIGA:  Is what he just pointed to at page

13   141.

14            MR. DESPINS:  -- talking about the protective

15   order.  That's the only way this would be implemented.

16   There's a protective order --

17            MR. BALDIGA:  All right.  So agree.

18            MR. DESPINS:  -- in the criminal case, Your Honor,

19   that says that the defendant is not allowed to share the

20   documents produced by the Government other than to the

21   following people.

22            And we said, okay, what needs to be happen is that

23   the debtor must go to the criminal court and to the DOJ to

24   say we need to modify that protective order to allow me, the

25   debtor, to give to the Trustee what --

1           MR. BALDIGA:  Whoa.  Wait.

2           MR. DESPINS:  -- the DOJ gives me.

3           MR. BALDIGA:  Whoa.  Whoa.  Whoa.  That's not on

4    page 141.  That, where is that, Mr. Despins?

5           MR. DESPINS:  That's on --

6           MR. BALDIGA:  That's not there.

7           MR. DESPINS:  That's on -- that's on line 13

8    through 15.  It says in the criminal case to allow the

9    Chapter 11 Trustee access to the documents produced by the

10   Government to the debtor.

11          MR. BALDIGA:  Okay.

12          MR. DESPINS:  To the debtor.

13          MR. BALDIGA:  But you said something else --

14          MR. DESPINS:  To the debtor.

15          MR. BALDIGA:  -- when you were talking.

16          When you're reading it's -- it doesn't -- nowhere

17   does it say, again, this is not even Mr. Best talking and

18   you're trying to describe where Mr. Best changed after the

19   recess, but we agreed to seek a modification to the

20   protective order to allow the Trustee access to the

21   documents produced by the Government.  Get them from the

22   Government.

23          MR. DESPINS:  No.  But if you continue to read on

24   here, and on page 141, I say on line 19, "If they get shot

25   down, they get shot down, that's the risk we take."

1        They cannot oppose that relief because there's

2    nothing with act of production.  That's totally out of the

3    door then.  That's the point I was making, which is when

4    they're producing to us Government documents, there's no

5    active production.  These are not their documents.  They're

6    not the debtor's documents.  They're documents from the

7    Government.

8        And that's why -- that's the whole point of --

9    that's consistent with the structure that has been -- that

10   was proposed, which was that they need to produce to us

11   because we have no standing in that court.  It needs to

12   come from the debtor to us, Your Honor.  That's very clear

13   from the transcript.

14       MR. BALDIGA:  The request has to come from us.

15   Well, you need to subpoena them.  But then the request needs

16   to be from us.  But we agree.  But nothing you just

17   described --

18       I'll address the Court.  Nothing described by the

19   Trustee is Mr. Best suggesting that he has changed a crystal

20   clear, four-time repeated --

21       THE COURT:  The only thing I would say about that,

22   Mr. Baldiga, if it was crystal clear, then we wouldn't have

23   needed a recess for the parties to talk about it.  And I say

24   that before the recess.  The whole point of taking the

25   recess was to go out and talk about it.

1        And when Mr. Best comes back after Mr. Despins

2    says what he says on pages 141 and 142, and after we get

3    over the fact that -- and understandably that Mr. Best was

4    conflating the U.S. Trustee's Office with the U.S.

5    Attorney's Office -- Mr. Best says, "I'm fine with counsel

6    proposing a draft order that we look at and get it to Your

7    Honor if that's the easiest way of doing it.  I just want to

8    make sure everyone knows that there will be -- the

9    protective order has limitations of use of the information."

10       And I think I see Mr. Despins shaking his head in

11   acknowledgment.  "So that I think there's an agreement to be

12   abide by if the Southern District of New York so allows to

13   use the information subject to the protective them being

14   part of the protective order."  That's what he says.

15            MR. DESPINS:  And, Your Honor --

16            MR. BALDIGA:  We all agree.  Couldn't agree more.

17            MR. DESPINS:  -- that language, that language that

18   says there are limitations in the protective order, they're

19   not limitations on the Government.  They're the limitations

20   on the -- on what the defendant can do with the information

21   they get from the Government.  So that goes to the issue of

22   limitations of what they can do to give it to us.  That's

23   why the protective order needs to be modified.

24            MR. BALDIGA:  That's just false.  The protective

25   order is a mutual and, in fact, multi-party protective

1    order.  That's actually what Mr. Despins said and it's --

2              MR. DESPINS:  No, Your Honor.  We're talking --

3              MR. BALDIGA:  -- it's okay --

4              MR. DESPINS:  We're talking about documents that

5    the Government has.  The Government is not limiting itself

6    to the use of those documents.  They're giving the documents

7    to the debtor, or to the defendant, I'm sorry, and are

8    limiting the defendant's use of those documents.  That's

9    what the protective order achieves with respect to those

10   documents.  There are other aspects of the order, but that's

11   --

12             MR. BALDIGA:  No one doubts that we've agreed to

13   seek modification to the protective order to allow the

14   Trustee to get what he wants to the extent that the

15   Government wants to give it to him.  That's what we talked

16   about.  That's what we've agreed to do.  If the Government

17   wants to give it to him, they will.

18             But never did we agree, and we would not agree,

19   for this debtor to waive his constitutional rights to

20   directly produce.

21             THE COURT:  It's not a waiver of his

22   constitutional rights.  It's the --

23             MR. BALDIGA:  It absolutely would be.

24             THE COURT:  How is it a waiver of his rights if

25   the Government produces the documents to him and he shares

1    them with the Trustee, who is his legal representative in

2    this bankruptcy estate?

3              MR. BALDIGA:  The act of sharing documents is

4    itself testimonial.

5              THE COURT:  No.  It's not, according to -- and

6    that's why I raised that issue in the last hearing.

7              MR. BALDIGA:  It's not --

8              THE COURT:  The *Bouknight* case says that it's not

9    testimonial.  And there's other cases that say it's not

10   testimonial --

11             MR. BALDIGA:  It does, in fact, as to --

12             THE COURT:  -- including the *Harris* case, back

13   from 1911 of the Supreme Court, that says the question is

14   not one of testimony but of surrender --

15             MR. BALDIGA:  To surrender --

16             THE COURT:  -- not of compelling the bankrupt to

17   be a witness against himself in a criminal case past or

18   future but of compelling him to yield possession of property

19   that he no longer is entitled to keep.

20             MR. BALDIGA:  Okay.

21             THE COURT:  That's what --

22             MR. BALDIGA:  So can we just stop --

23             THE COURT:  -- that's what the United States

24   Supreme Court said in 1911.

25             MR. BALDIGA:  Right.  Can we just stay with that

1    language, Your Honor, because that -- you're right.  That's

2    a  -- it's a turnover, no longer entitled to keep, its

3    property that the debtor doesn't own.  That is not the

4    subject of any of this motion practice.  That is property of

5    the estate.  We're not talking about property of the estate.

6    We're talking about discovery in a criminal case.

7                THE COURT:  You don't know that though.

8                MR. BALDIGA:  That is not property --

9                THE COURT:  That's the problem, Mr. Baldiga.

10               MR. DESPINS:  But, Your Honor --

11               THE COURT:  You don't know that.

12               MR. DESPINS:  -- the property can include

13   documents, commercial documents clearly can be property of

14   the estate.  So there could be property of the estate in

15   those documents that are produced.

16               Remember, let's go back to the fundamentals here.

17   They're okay if the Government gives it all to us.  At that

18   point, once they've agreed to that, then the rest becomes

19   just subterfuge really.

20               MR. BALDIGA:  There's no subterfuge.

21               Your Honor, every one of the Trustee's cases is a

22   surrender of ownership where the trustee owns something

23   already and the cases hold uniformly to every one of the

24   cases cited by the Trustee, it's absolutely consistent,

25   which is, if something is owned by the trustee, it's not

1    testimonial for the debtor to surrender possession of what

2    he has no entitlement to.  That is a completely different

3    situation from which we are.  The case law is clear.

4          And there's not a single case the Trustee has

5    which deals with the testimonial aspects of property that

6    every one of the Trustee's cases centers on the debtor when

7    a trustee has been appointed no longer has legal entitlement

8    to that property and so must surrender it.  And if so doing,

9    it's not testimonial.

10          That is -- and the Trustee knows that's the case.

11   Those are not cases that deal with the present situation.

12          THE COURT:  Well, I'm not sure you're right.

13          But, in any event, we obviously don't have an

14   agreement here which the parties, you know, stated on the

15   record, including Mr. Best, that he did have an agreement,

16   and that he was only going to show the order to Mr. Kwok and

17   that there wasn't going to be -- as I said, I don't want to

18   hear that there isn't an agreement.  Well, there isn't

19   agreement.  So then I guess I'll have to go back and rule --

20          MR. BALDIGA:  That's not how to do it.

21          THE COURT:  -- on whether the debtor is -- whether

22   I should hold the -- the fact that the debtor hasn't

23   complied and hasn't purged himself of his obligation to

24   comply under the subpoena that was issued in this court with

25   regard to the debtor's obligations to cooperate with the

1    Trustee, which at this point there's still a controversy

2    over.

3              And so you're answering my question, which was, so

4    your argument is that it's testimonial in nature?  That's

5    the only argument you have.

6              MR. BALDIGA:  No.

7              THE COURT:  Because in one case you're saying the

8    Government can turn over everything to the Trustee, but the

9    Trustee said the Government's never going to do that.

10             And then -- and you're saying, well, we're not

11   going to turn it over even if -- but we'll ask the

12   Government to do that.

13             So then that's -- you think by asking the

14   Government to do that that is in compliance with your

15   obligations under the subpoena issued in this case?

16             MR. BALDIGA:  Well, the debtor -- the answer is

17   clearly yes.

18             The debtor is in a fairly small prison cell.  He

19   clearly has -- he's agreed to answer the Trustee's questions

20   question by question.  That was yesterday's order.

21             Now the question is must the debtor deliver up

22   everything he has?  Well, he has.  He has nothing in his

23   cell, and there's only -- and we've gone through this,

24   there's only two categories of things left.  Things that

25   have been seized by the Government and things that the

1   Trustee would have the debtor direct others to deliver,

2   which I think has been now conceded to be testimonial in

3   nature, because --

4           THE COURT:  I don't think anyone's conceded that

5   point yet, but go ahead.

6           MR. BALDIGA:  Oh.  All right.  Well, it hasn't

7   been seriously argued that that would not be testimonial and

8   it clearly would be.

9           So that's why we come back to the debtor has

10  emptied his jail cell, unfortunately, literally, so he can't

11  deliver anything he has.  He doesn't have anything.

12          So the Trustee then latched onto, well, he might

13  get some stuff from the Government.  And we've said, hey, if

14  the Government's willing to give it to you, we have no idea,

15  no idea, but we won't stand in the way.  In fact, we'll

16  pursue it and we'll even request it.

17          But we can't produce it if we haven't seen it.  It

18  implicates attorney-client privilege.  And most importantly

19  implicates constitutional privileges to do so.  And that

20  would be testimonial.

21          THE COURT:  The only party that's going to argue

22  it's testimonial if you turn it over is the Government?

23  That's your fear?  I'm trying to understand.

24          On the one hand, you say if they get it from the

25  Government, which Mr. Despins says is never going to happen,

1      there's no problem.  But if they get it from you, it is.

2              So where's the problem?  The problem is because

3      then the Government can use that information and say he

4      waived his Fifth Amendment privilege because he turned over

5      a document that says something in it that could be self-

6      incriminating?

7              MR. BALDIGA:  Yeah.  Exactly.  That's why -- we

8      represent Mr. Kwok in a criminal proceeding in which the

9      Government is trying to keep him incarcerated for the rest

10     of his life.  We need to do everything we can so that Mr.

11     Kwok goes into that trial with his constitutional

12     protections intact.  He can't waive them.

13             And the Trustee is trying to put the screws to him

14     using the contempt power of this court to get him to waive

15     that because the Trustee, as the Court has already heard,

16     threatened that, you know, he would work with the Government

17     to have Mr. Kwok incarcerated if he didn't cooperate.  Now

18     that's happened.

19             THE COURT:  I don't think that's fair, Mr.

20     Baldiga.

21             MR. BALDIGA:  Well, we don't know.

22             THE COURT:  I don't think that's fair.  I really

23     don't.  No matter what's going on in this case, I don't

24     think that's a fair statement.

25             MR. BALDIGA:  Okay.  We weren't party to those

1    discussions, but Mr. -- I'll withdraw that.  Fair enough.

2         Mr. Kwok needs to go into his criminal proceeding

3    with his Fifth Amendment rights intact --

4         MR. DESPINS:  So, the argument, Your Honor, the

5    argument is --

6         MR. BALDIGA:  -- and use the powers of this court

7    --

8         THE COURT:  Hold on a second.  Just let him

9    finish.  Let Mr. Baldiga finish, please.

10        MR. BALDIGA:  -- using the powers of this court to

11   try to force a waiver of those constitutional protections

12   when his literal life and liberty are at risk is exactly

13   what the Constitution is designed to prohibit.

14        Thank you.

15        THE COURT:  Thank you.

16        MR. DESPINS:  Your Honor, the concept that the

17   Government could -- has a bundle of documents, gives them to

18   the debtor, and then the debtor gives it to the Trustee, and

19   the Government says, aha, the documents I gave to you,

20   because you gave them to the Trustee, you've admitted that

21   they're valid and that act showed that you're guilty of a

22   crime.

23        I mean, sorry to say, that's legal insanity,

24   meaning that that can't be.  And, if we can, put some

25   provision in the order saying that the debtor is acting as a

1    mere conduit and is not producing it, not acknowledging the

2    truth of any of what's in the documents.

3         But I know one thing, those documents are going to

4    be a treasure trove of information about transfers, bank

5    transfers, et cetera, that would cost us millions of dollars

6    to trace and that's why we need access to that because our

7    job is to get assets into this estate.

8         And the argument that somehow the act of

9    production isn't involved in this -- in this current

10   structure, which is the documents come from the Government

11   to the debtor, the debtor to us, and somehow the debtor is

12   waiving his Fifth Amendment rights by doing so, I'm sorry,

13   but that just, that doesn't hold -- you know, I'm sorry,

14   that just doesn't make sense.

15        MR. BALDIGA:  I wish we could bind the Government

16   to not do what we fear, that would be a great result.  We

17   could have the Government come in and answer the question I

18   guess and be bound by it.

19        THE COURT:  Anything further from anyone?

20        MR. HENZY:  Your Honor, may I be heard briefly?

21        THE COURT:  Yes.

22        MR. HENZY:  Thank you, Your Honor.

23        Since you may be circling back on what's actually

24   before you, the two things before you are the motion for

25   stay filed by criminal counsel and the order --

1          THE COURT:  Well, the motion for stay is not

2     before me because Mr. Best already agreed that he wasn't

3     seeking a stay, so I don't agree with you on that.

4          What's the second thing that's before me?

5          MR. HENZY:  The thing before you then, Your Honor,

6     is the order to show cause at why Mr. Kwok should not be

7     held in contempt.

8          THE COURT:  Right.

9          MR. HENZY:  And I actually signed and filed the

10    objection to that order to show cause.

11         I don't think you need to do this now, Your Honor.

12    And in thinking about that, I want to point to a case that

13    no one has cited.  It's *McCarthy v. Arndstein*, A-R-N-D-S-T-

14    E-I-N.  It followed the *Harris* case.

15         THE COURT:  What's the cite, please?

16         MR. HENZY:  The cite is 266 U.S. 34.  It actually

17    followed the *Harris* case and distinguished the *Harris* case.

18         So this is a Supreme Court case.  And it dealt

19    with the predecessor to Rule 2004.  It was Section 21(a) of

20    the Act.  And it -- I'll just read some of the -- briefly

21    some of the language.

22         "The cases which hold that a bankrupt must

23    surrender books and papers, although they contain

24    incriminating evidence, rest upon a principle different from

25    that here involved."  And it cites *Matter of Harris* with the

1    citation.

2          Skipping down a little bit, "Section 21(a), which

3    is the predecessor to 2004, on the other hand, deals

4    specifically and solely with the adjective law with evidence

5    and witnesses.  When the bankrupt appears before a

6    commissioner under this section, he comes like any other

7    person, merely to testify.  In that connection, he may, like

8    any other witness, assert the constitutional privilege."

9          So there is a distinction, Your Honor, between

10   testimonial and surrender under 521(a)(4).

11         I'd also point out, Your Honor, a case that Mr.

12   Bassett's quoted from heavily, that again was not cited by

13   anyone in any papers, *In re Ross*, which is the Idaho case,

14   156 B.R. 272.

15         The Court there -- and I don't, maybe no one's

16   disagreeing with this, expressly said the statute, the

17   bankruptcy statutes, must give way before the constitutional

18   rights if those rights are infringed.  That was a lengthy

19   case and I think illustrative of this.  It's a very, very

20   fact-sensitive analysis.  And the Court there did discuss

21   the foregone conclusion analysis that Mr. Best talked about.

22         But I want to circle back, Your Honor.  What's

23   before you is the order to show cause as to why Mr. Kwok

24   should not be held in contempt.

25         As you know, you need to conclude there's no fair

1    ground of doubt.

2            I think this discussion has underscored that there

3    is, in fact, a fair ground of doubt, including because

4    there's a great deal of speculation.  And maybe because

5    mostly I've been sitting and listening, there's a great deal

6    of speculation about what the Government will or won't do.

7    And I don't think anyone in this courtroom knows that, Your

8    Honor.  There's a great deal of speculation.

9            And Mr. Despins can say that there's a trove of

10   information about transfers by the debtor.  He doesn't -- he

11   doesn't know that.  No one knows.  Mr. Baldiga has pointed

12   this out over and over and over.  No one knows what the

13   Government actually is going to hand over to the debtor.  No

14   one knows when, I think right now, when the Government is

15   going to hand documents over to actually not even the debtor

16   but to debtor's counsel.

17           Again, we don't know what's going to be debtor's

18   counsel's eyes only.  We don't know what is going to be

19   actually available to the debtor.  We don't know what

20   conditions documents are going to be handed over on.

21           So I don't want to go back over all the arguments

22   that have been made.  They've been made very well and at

23   great length, Your Honor.

24           But I guess, again, I'm going to come back to I

25   don't think you need to do this right now.  For you to hold

1    -- for you to rule today that Mr. Kwok should be held in

2    contempt, you have to find there's no fair ground of doubt.

3    Given all the uncertainty here, I'm going to argue, Your

4    Honor, that I don't think you can do that.

5          And I don't know if it's two weeks from now.  I

6    don't know if it's a month from now.  I don't know when the

7    Government's going to hand over documents here.  I don't

8    know that's happening any time in the next -- in the next

9    week or two weeks or anything like that.

10          It would make sense I think to I guess temporarily

11   stay this until we know what the Government is going to hand

12   over, when the Government's going to hand it over, and

13   potentially what the Government is going to do.

14          I think you risk, Your Honor, by entering an order

15   now, you risk interfering with the process that is going on

16   down there.

17          If you enter an order that says Mr. Kwok has to

18   hand over any documents that he gets, does that -- does that

19   somehow impact then what the Government is going to do in

20   terms of handing over documents?  I think --

21          THE COURT:  Let me just stop you for a second.

22          The *McCarthy-Arndstein* case I'm looking at.  And

23   it was all about whether or not the privilege against self-

24   incrimination applied in a bankruptcy case.  It wasn't -- it

25   didn't distinguish *Harris* and what *Harris* held.  It said the

1    cases which hold that a bankrupt must surrender books and

2    papers, although they contain incriminating evidence, rest

3    upon a different principle from that here involved.

4         And the principle that here involved in *McCarthy*

5    *vs. Arndstein* was whether or not the privilege against self-

6    incrimination extends to an examination of the bankruptcy --

7    of the bankrupt made for the purpose of obtaining possession

8    of property belonging to his estate.

9         So that was an examination.  It was not a turnover

10   of documents.

11        So I just want to be clear, although you pointed

12   out that case, it's not distinguishing *Harris* in saying

13   there's something wrong with *Harris*.  *Harris* dealt with the

14   turnover of books and records and the surrender of books and

15   records, not a direct examination of a witness for purposes

16   of self-incrimination.

17        MR. HENZY:  But, Your Honor, this is a -- this is

18   a 2004 subpoena, so this is -- this is not a turnover.  Mr.

19   Baldiga's made this point.  This is not a turnover.

20        THE COURT:  So what if -- what if the Trustee then

21   filed a motion under 541 and 542, are you going to make the

22   same argument now that he -- now that he's couched it as a

23   turnover motion?  He's now -- now he'll say, okay.

24        So you're going to argue that under -- because

25   it's a 2004 examination I can't get this information.

1              But if I file a motion under -- let's see, what

2    would we file it under?

3              MR. HENZY:  Your Honor, if I may?

4              THE COURT:  No.  I'd like to finish my thought.

5              So if you -- if he files a motion under 542, then

6    what's your argument then?  Because it's turnover of

7    property to the estate.

8              So it says, except as provided, an entity other

9    than a custodian, custodian or custody or control during the

10   case, the property that the trustee may use, so lease, under

11   Section 363, or that the debtor may exempt, shall deliver to

12   the trustee and account for such property or the value of

13   such property unless such property is of inconsequential

14   value.

15             So this is the whole -- so you're saying --

16             MR. DESPINS:  But also, Your Honor, Subsection

17   (e).

18             THE COURT:  I hadn't gotten there yet.

19             MR. DESPINS:  Okay.

20             THE COURT:  But I started with (a).

21             So then it says -- and there's a lot in Section

22   542, including (e), which says subject to any applicable

23   privilege that -- the Court may enter -- may order an

24   attorney, accountant or other person that holds recorded

25   information, including books, documents, records and papers

1    relating to the debtor's property or financial affairs to

2    turn over or disclose such recorded information to the

3    trustee.

4            So how does your argument change then?  You're

5    saying, okay, Trustee, we're not going to -- you can't do

6    this under 2004, but how are you going to make that argument

7    under 542?

8            MR. HENZY:  I don't need to make that argument

9    today, Your Honor, because right now there's no turnover

10   order.

11           THE COURT:  I understand that.

12           MR. HENZY:  And so --

13           THE COURT:  But maybe I'm going to convert it into

14   one.

15           MR. HENZY:  I don't --

16           THE COURT:  So we don't spend the next three

17   months arguing about something that is something that has

18   been on the table since July 8th, 2022.  And it's March

19   [sic] 2nd, 2022.

20           THE COURT:  I don't believe you have the authority

21   to do that, Your Honor.  But if that --

22           THE COURT:  You may --

23           MR. HENZY:  -- if that --

24           THE COURT:  -- you may --

25           MR. HENZY:  -- but if that --

1    THE COURT:  -- you may be right, but --

2    MR. HENZY:  The only thing --

3    THE COURT:  -- you may be wrong too.

4    MR. HENZY:  I might be, Your Honor.

5    The only thing before you is on contempt and the

6    only order is an order compelling Mr. Kwok to comply with

7    the 2004 subpoena.  So I don't -- I don't think there's such

8    a thing as anticipatory contempt.  So I --

9    THE COURT:  It's not anticipatory contempt,

10   Attorney Henzy.  Okay?  Number one.

11   Number two, your client has been on notice since

12   January and earlier that the Trustee has been seeking

13   contempt.  So how you can say that's anticipatory contempt,

14   I don't -- that, I don't even begin to understand.

15   But, in addition to that, there's already an --

16   you know, the one thing that keeps getting lost, your client

17   voluntarily submitted himself to the jurisdiction of this

18   court as a debtor in possession.

19   And with that he voluntarily submitted himself to

20   all the obligations of a debtor under this, under the

21   Bankruptcy Code, which includes obligations under 542 of the

22   estate.

23   Now, I understand what you're saying.  But all I'm

24   saying is to continue to come in and act as if -- I hear Mr.

25   Baldiga saying the Trustee's threatening this, threatening

1   that, doing this, doing that.

2          The Trustee's trying to do his job.  You may not

3   agree with it and that's fine.  You have every right to not

4   agree with it.  Everybody can disagree on whether he has a

5   right to do his job, but he's trying to do his job, a job

6   that --  by the way, the debtor came in and said he was

7   going to do all these things and then withdrew them all and

8   then said, yeah, I think I'll just agree to let my case get

9   dismissed.  Well, that's not what happened.  Sorry, but

10  that's not what happened.

11         What happened was a Chapter 11 Trustee was

12  appointed and a Chapter 11 Trustee is trying to do his job.

13  And there was an agreement reached on the record.

14         What's before me right now is what was that

15  agreement, that's what's before me.  Because there was an

16  agreement that resolved everything.  Okay.

17         And now -- and I said on the record to Mr. Best,

18  when he said I just need some time to go to my client,

19  understood.  I said understandably.  He said I can't.  I

20  don't have easy access to him.  I need until Monday.  That's

21  what he said.  I said okay, but I don't want -- I don't want

22  to hear that there isn't an agreement.  And then look where

23  we are.  There's no agreement.

24         So the point that we're all missing here, and I

25  understand that you have to do whatever you have to do that

1    you believe is appropriate to protect your client, but it

2    doesn't make sense to me at this point in time, subject to -

3    - and going back and reviewing what everyone has said, both

4    in pleadings and on the record, and on a record where we

5    already had an agreement and now we don't have an agreement,

6    that if you have no problem with the Government turning over

7    everything, but you do have a problem with your client

8    turning it over to the Trustee, there does seem to be a

9    disconnect there.

10          And the problem is either you know -- you could

11   make an argument, you could make an argument -- you know the

12   Government's not going to turn over anything to the Trustee

13   or you -- or that you are going to not cooperate -- and let

14   me use the word carefully, you're not going to turn over

15   because you're going to then assert, oh, but if I do that,

16   the Government can use that against me.

17          Well, if the Government already has all the

18   information, why can't they use it against you already?  How

19   do they not -- how can they not use it against you?

20          MR. BALDIGA:  That's a totally different point,

21   Your Honor.  The Government --

22          THE COURT:  No.  I don't think it is.  How is that

23   a totally different point?

24          MR. BALDIGA:  The debtor has Fifth Amendment

25   rights not to incriminate himself.

1           First, I want to go back to the 542 (e) point you

2      make.  I agree with Your Honor on that.  I think -- I think

3      if we were here on 542(e) the arguments would be exactly the

4      same.  And that's why 542(e) starts with subject to all

5      applicable privileges.

6           We'd be having the same exact argument because one

7      of those privileges would be attorney-client.  And more

8      importantly one of those privileges here would be Fifth

9      Amendment rights.  So the arguments aren't the same.

10          But I also agree with Mr. Henzy.  You can't be in

11     contempt of a motion that hasn't been filed.

12          But, in any event, we do have an agreement.  The

13     record is pretty clear what that agreement was, because in

14     each of the places where Mr. Best made a proposed agreement,

15     his statements are clear and it never changed.

16          And to cast aspersions on us, it takes two to

17     implement an agreement and we haven't changed.  We haven't

18     changed a bit.

19          But to your point as to what the Government can

20     and cannot do, boy, that's a -- I wish I could tell them.  I

21     wish I could tell you what the Government can and cannot do.

22     None of us can.

23          But our client has important rights against self-

24     incrimination.  If he doesn't waive those rights, for

25     example, he'd need not testify at his own criminal defense

1        trial.

2                 To the extent that you force him here to waive

3        those rights, he would then perhaps have to testify against

4        himself in that criminal proceeding.

5                 I would love to have faith in our government that

6        they would not take advantage of that.  I think that's

7        wishful thinking on all of our parts that the Government

8        would not take advantage of a waiver of a Fifth Amendment

9        right.  I would love that to be correct.  We don't know.

10       And it's a hell of a bet, which is why we can't rely on the

11       Government to not take advantage of a waiver.

12                So it is a difference for the Government to

13       produce something to the Trustee, that does not implicate my

14       client's Fifth Amendment rights.

15                THE COURT:  Right.  So it is what I've been saying

16       now.  I think four times this will be the time I've said it

17       now.  So your argument is that it's testimonial.  That's

18       your argument.  This is -- your argument is --

19                MR. BALDIGA:  Yes, it is.

20                THE COURT:  -- you can't turn it over because it's

21       testimonial.

22                MR. BALDIGA:  Yes.

23                THE COURT:  And the Trustee --

24                MR. BALDIGA:  I think our answer is saying --

25                THE COURT:  -- has cited case law to the contrary.

1        So the issue then is I have to either figure out

2    whether or not -- I have to figure out whether or not I'm

3    going to enter any kind of order and -- and/or -- you know,

4    as Mr. Best said, I didn't have to rule, but now I have to

5    rule.  Mr. Best specifically said that in the -- in the

6    transcript.  He said, no, you don't have to rule.  You just

7    have to enter an order.  But now I have to rule.  Now I

8    possibly have to rule because I'd have to find --

9        MR. BALDIGA:  Well --

10       THE COURT:  If I were to enter an order different

11   from the one that you submitted, then I would have to find

12   that the production of the -- by the Government to the

13   debtor and then the debtor giving access to that production

14   to the Trustee would not be testimonial.  So it would just

15   be another issue on appeal, right?  Because that's what will

16   happen.

17       MR. BALDIGA:  You will absolutely --

18       THE COURT:  You'll appeal it.  And so it will be

19   another issue on appeal.

20       MR. BALDIGA:  You would absolutely have to make

21   that finding.

22       THE COURT:  Right.

23       MR. BALDIGA:  I agree.

24       THE COURT:  Which Mr. Best said I didn't have to

25   do when he agreed to the agreement --

1        MR. BALDIGA:  Well, if the Trustee followed

2    through with the agreement we had, you wouldn't have to.

3    But now the Trustee is putting you in the position where you

4    would have to.  Yes.

5        THE COURT:  Well, I have -- I'm not sure about

6    that.

7        If you listened to what the Trustee said after the

8    recess and Mr. Best didn't -- and he said the production of

9    the Government to the debtor, that's what -- that's what

10   they said, that's what he said, maybe Mr. Best didn't hear.

11       MR. BALDIGA:  He said access --

12       THE COURT:  Maybe.  I'm not saying -- I'm not

13   saying --

14       MR. BALDIGA:  -- would allow us --

15       THE COURT:  Wait a minute.  Wait a minute.

16       Maybe he didn't hear, but those are the words

17   after the recess.  And nowhere does Mr. Best say, no, no,

18   wait a minute.  I didn't agree to that.  I didn't agree to

19   that.  I never agreed to that.

20       And I specifically said we have an agreement.  And

21   we went through this whole thing because PAX and the

22   Committee wanted to see the documents and I said no.  The

23   only people that are going to see the documents are the

24   debtor, the debtor's counsel and the Trustee.  That's what I

25   said.  I mean, we went through that whole thing.

1          So it's not as if this -- you know, Mr. Best had

2     plenty of opportunity to say that's not what I agreed to.

3          MR. BALDIGA:  Your Honor, that's not what the

4     Trustee said.

5          I have to -- honestly, it's frustrating, but at

6     page 141, the best language that the Trustee cites, after 20

7     pages of discussion about the protective order, the -- you

8     did not actually say the words that the -- that the

9     transcript has.  Even though Mr. Despins used different

10    words, it doesn't mean you should adopt them.

11         The words in the transcript are the debtor

12    directed to seek a modification of any applicable protective

13    order in the criminal case to allow the Chapter 11 Trustee

14    access to the documents produced by the Government to the

15    debtor.

16         It does not say that the debtor must produce to

17    the Trustee.  It just doesn't do that.  And no matter how

18    many times Mr. Despins wishes it would say that, it isn't.

19         With as many times as Mr. Best was crystal clear,

20    if that's the best the Trustee can argue -- to characterize

21    this as somehow the debtor going back on the agreement is

22    just wrong.

23         MR. DESPINS:  Your Honor, why would there be an

24    need --

25         MR. BALDIGA:  No matter how many attempts --

1          MR. DESPINS:  -- to talk about the act of

2     production?

3          Right after that it says, if that's the way it's

4     struck, they cannot oppose that relief because the active

5     production, that's totally out the door.

6          MR. BALDIGA:  Agreed.  There's no active

7     production problem if the Trustee gets it from the

8     Government.

9          MR. DESPINS:  No.  No.  Because --

10         MR. BALDIGA:  We completely agree.

11         THE COURT:  No.  But you just said two different

12    things.  Honestly, Mr. Baldiga.  Right there, you did.  I

13    was with you for a long time until right there.

14         You said what's the problem if we provide access

15    to the documents?  And then you just said it's for the

16    Trustee to get it from the Government.  Those are two

17    different things.

18         MR. BALDIGA:  No.  It doesn't say we provide

19    access.

20         THE COURT:  Those are two absolutely different

21    things.

22         MR. BALDIGA:  No.  It doesn't say --

23         THE COURT:  That's an obligation on the debtor to

24    provide access to the documents provided to the debtor by

25    the Government.

1           MR. BALDIGA:  No.  That's not what -- that's not

2     what this says.  It's even the Trustee's language.  It

3     doesn't say we provide access.

4           THE COURT:  No.

5           MR. BALDIGA:  It doesn't --

6           THE COURT:  You just said that.  You just said

7     there wouldn't be a problem --

8           MR. BALDIGA:  If we provide access.

9           THE COURT:  -- to provide access.  That's what you

10    said.  So you can't provide access to something you don't

11    have.  So you'd have to have them in order to provide access

12    to the Trustee.  Why can't that be the solution?  I don't

13    understand.

14          MR. BALDIGA:  But, Judge, the transcript doesn't

15    say -- and, again, this isn't even Mr. Best's words, it's

16    the Trustee's -- it's to seek a modification of the

17    protective order to allow the Trustee access to the

18    documents.  It doesn't --

19          THE COURT:  Produced by the Government to the

20    debtor.  That's what it says.  That's the end of that

21    sentence.

22          MR. BALDIGA:  Right.  It's the same documents.

23          THE COURT:  So what's the problem?

24          MR. BALDIGA:  It's the -- it defines the

25    documents.

1          THE COURT:  No, no, no, no.  But stop.

2          Let's please be realistic here.  What's the

3     problem if your client gets documents and then provides that

4     access to the Trustee?  What's the problem?  He's not

5     turning over anything.  How is that testamentary?

6          MR. BALDIGA:  It is.  We are --

7          THE COURT:  All right.

8          MR. BALDIGA:  Just so --

9          THE COURT:  So we're back to the same place.

10    Okay.  Forget it.  I got it. That's your argument.  You're

11    sticking to it.  I got it.  Okay.

12          MR. BALDIGA:  Absolutely.

13          THE COURT:  And I'm not saying you're wrong.  I

14    asked five times now is that your argument and that's your

15    argument no matter what.  No matter what.  As long as the

16    debtor's in possession, if a trustee sees what the debtor's

17    in possession of, then it's testamentary.  That's your

18    argument.

19          MR. BALDIGA:  As to the material subject, before

20    the Court today, yes.

21          THE COURT:  I don't know what that means, but

22    that's okay.

23          MR. BALDIGA:  Well, I don't want to be answering

24    the question hypothetically as to some other turnover motion

25    or whatever.  But on the -- on what we're arguing about

1  today, yes.  It would be testamentary -- testimonial for the

2  debtor to produce.  And it would abrogate his Fifth

3  Amendment rights.

4       And we have been I think entirely consistent in

5  saying that from the first paper we filed and through the

6  conclusion of this hearing.  Absolutely.

7       THE COURT:  I know I said testamentary.  I

8  apologize.  I did mean testimonial.

9       MR. BALDIGA:  Well, it could be -- yeah, the way

10  we're going, it could end up being that way too.

11       THE COURT:  All right.  Anything further from

12  anyone?

13       MR. BALDIGA:  Not by me, Your Honor.  Thank you.

14       THE COURT:  Does anyone else wish to be heard?

15     (No response)

16       THE COURT:  I have no idea what I'm going to do

17  given what we've just spent the last two hours talking

18  about.

19       And looking at the transcript, I think there is a

20  problem because -- and there was a recess for a reason.

21       Every cite that you cited to, Attorney Baldiga,

22  and I'm not ruling right now, I'm just telling you, every

23  cite that you cited to this afternoon were statements made

24  before the recess was taken.  Every one of them.

25       There's a -- I state why we're going to take a

1    recess.

2              MR. BALDIGA:  There's two possibilities that --

3    right.  There's two possibilities.  One is there's an

4    agreement.  And if there was an agreement, it's clearly our

5    order.

6              Or there was no agreement, and just a

7    misunderstanding, in which case, we're back to arguing the

8    motions on the merits to stay and the contempt order.

9    Because if there's no agreement, then the merits of the two

10   motions aren't before the Court.

11             THE COURT:  The merits of the two -- say that last

12   sentence again.  It came out -- I couldn't hear it well.

13             MR. BALDIGA:  Sure.  So there were two motions

14   before the Court when we started these arguments on April

15   20.

16             THE COURT:  Okay.  Well, I can tell you that --

17             MR. BALDIGA:  Because one -- there were two

18   agreements we thought.  One agreement actually got put to

19   bed with the order entered yesterday.  So all well and good.

20   We thought that we had an agreement as to the second part.

21             Now, everyone's acting in good faith.  Maybe there

22   just was a -- not a meeting of the minds.  I think there

23   was, but maybe there wasn't.

24             And if there's no agreement that obviates a ruling

25   on the merits of the motion, then the Court is left with the

1    merits of the motion.  And that's fine.  I mean, obviously

2    that's what happens when there's no agreement.  Courts are

3    there to make rulings on the merits of what's before it.

4           And we've asked for a stay, a limited stay.  And

5    Mr. Henzy has asked for a ruling that there has been no

6    contempt.  And those are before the Court.

7           THE COURT:  All right.  Anything further?

8           MR. DESPINS:  Yes, very briefly, Your Honor.

9           Just I was rereading, again after the break, page

10   123, lines 7 to 14, this is, of course it's me talking, but

11   before that on line 1.  So he's saying, I'm referring to Mr.

12   Best, let's have the U.S. Trustee call the DOJ, dah, dah,

13   dah.  That's not the way that works.  We don't exist in the

14   criminal court.  We don't exist in the Southern District of

15   New York.

16          And then I say, "But the defendant," this is on

17   line 7, "He has standing in that court to say you know what,

18   judge, the criminal judge," this is the defendant saying

19   this to the criminal judge, "We would like a modification of

20   the protective order and that modification would be that we

21   can," we, the debtor, "can provide to the Trustee, Chapter

22   11 Trustee, copies of the documents that the Government

23   gives us."  Couldn't be clearer than that.

24          So at that point he had to stand up and say, no,

25   we cannot do that.  There was -- there's not a word from Mr.

1     Best about that.

2               If 141 is not clear, this 123 is crystal clear.

3               MR. BALDIGA:  Well, it's not Mr. Best speaking

4     obviously.  But, anyway, we've argued this, Your Honor, I

5     think round and round and round.

6               And, again, I'll give the Trustee the benefit of

7     the doubt that he's not, you know, rethinking the agreement

8     that he made and that there was just not a meeting of the

9     minds.  And if so, we're comfortable with the merits of our

10    motion and we'll accept that.

11              THE COURT:  All right.  Well, I'm going to reflect

12    and I will let you know what I'm going to do when I

13    determine what I'm going to do.  Okay?  All right.

14              MR. BALDIGA:  Thank you very much for --

15              THE COURT:  That's all that's on the calendar for

16    this afternoon, so court is adjourned.  Thank you.

17              MR. DESPINS:  Thank you, Your Honor.

18              (Proceedings concluded at 3:57 p.m.)

19

20

21

22

23

24

25

1

2

3         I, CHRISTINE FIORE, court-approved transcriber and

4    certified electronic reporter and transcriber, certify that

5    the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9    *Christine Fiore*

10   _____        May 9, 2023

11      Christine Fiore, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25