B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>GENEVER HOLDINGS LLC, | DEFENDANTS<br><br>AIG PROPERTY CASUALTY COMPANY |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Saxe Doernberger & Vita, PC<br>35 Nutmeg Drive, Trumbull, CT 06611,<br>203-287-2100 | ATTORNEYS (If Known)<br>John F. O'Connor<br>Steptoe<br>1330 Connecticut Ave, NW, Washington, DC, 202-429-3000 |
| PARTY (Check One Box Only)<br>☒ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
This claim is an insurance coverage action involving AIG property and liability coverage. AIG 1) refused to provide property coverage for a fire loss, 2) refused to provide third-party liability coverage for anticipated lawsuits against the insured for damage to third-party property, and 3) wrongfully attempted to cancel all of the insured's policies. Claimants are bringing causes of action for breach of contract and declaratory judgment pursuant to 28 U.S.C. 2201. Claimant also seeks injunctive relief foreclosing AIG from cancelling its policies

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Ho Wan Kwok et al. | BANKRUPTCY CASE NO.<br>22-50073 (JAM) | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-------------------------------------------------x
                                                 :
In re:                                           :    Chapter 11
                                                 :
HO WAN KWOK, et al.,¹                            :    Case No. 22-50073 (JAM)
                                                 :
                          Debtors.               :    (Jointly Administered)
                                                 :
-------------------------------------------------x
                                                 :
GENEVER HOLDINGS LLC,                            :
                                                 :
                          Plaintiffs,            :    Adv. Proceeding No. [_____]
v.                                               :
                                                 :
AIG PROPERTY CASUALTY COMPANY:
                                                 :    May 12, 2023
                          Defendant.             :
                                                 :
-------------------------------------------------:
                                                 x
```

**COMPLAINT UNDER SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7001 OF GENEVER HOLDINGS LLC AGAINST AIG PROPERTY CASUALTY COMPANY UNDER VARIOUS INSURANCE POLICIES FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT**

Genever Holdings LLC ("Genever (US)"), debtor in the above-captioned jointly administered cases (collectively, the "Chapter 11 Cases"), by and through their respective undersigned counsel, bring this adversary complaint against defendant AIG Property Casualty Company ("AIG").

---

¹ The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## NATURE OF ACTION[2]

1.     Genever (US) owns apartment space comprised of the entire 18th floor (the "Apartment"), as well as Apartment MR 2219, and Apartment MR 719 (collectively with the Apartment, the "Covered Residences") in the Sherry-Netherland building located at 781 Fifth Avenue, New York, New York 10022 (the "Sherry-Netherland").

2.     Thus, the Covered Residences are property of Genever (US)'s estate.

3.     Genever (US) purchased from AIG property insurance coverage in excess of $28 million to protect the Covered Residences and valuable property therein. The insurance Genever (US) purchased obligates AIG to pay for "all risk" of property loss that Genever (US) may suffer except that which is expressly excluded. In addition, the insurance Genever (US) purchased from AIG affords liability coverage for claims arising out of its ownership of the Covered Residences. The property and liability insurance policies AIG sold to Genever (US) are hereinafter referred to as the "AIG Insurance Policies." See Exhibits 6, 9, 12-14.

4.     On March 15, 2023, Genever (US) suffered a loss at the Apartment when a fire broke out (the "Fire"). As a result of the Fire, Genever (US) has suffered physical damage to its Apartment and property therein.

5.     Genever (US)'s damages are still being calculated, but the losses are known to reach into the millions of dollars.

6.     Genever (US)'s "all risk" property insurance provides the broadest insurance protection for any damages not specifically excluded, and the insurance is designed to, and does, cover the type of loss Genever (US) suffered. See generally id.

---

[2]    Capitalized terms not defined in the Nature of the Action section shall have the meanings ascribed to them elsewhere in this Adversary Proceeding Complaint.

7.      Genever (US) provided prompt notice of the Fire to AIG through AIG's agent at Wolfson Insurance Brokerage, Inc ("Wolfson"). <u>See</u> March 16, 2023 Email Patrick Linsey to Catherine Skibitcky, attached hereto as Exhibit 21.

8.      On April 17, 2023, AIG stated that it was conducting an investigation into the Fire. <u>See</u> April 17, 2023 Letter Michael Bono to Luc Despins, attached hereto as Exhibit 17.

9.      However, eight (8) days later and without any indication that AIG had concluded its investigation, AIG issued "Notices of Cancellation of Insurance," purporting to cancel the AIG Insurance Policies. <u>See</u> Notices of Cancellation of Insurance, attached hereto as Exhibits 1-5.

10.     As grounds for cancellation, AIG listed "discovery of willful or reckless acts by the insured increasing the hazard insured against" and "physical changes in the property insured, after issuance of the renewal, which resulted in the property becoming uninsurable in accordance with the Company's underwriting standards." <u>Id.</u>

11.     AIG did not explain or provide any factual basis for these purported grounds for cancellation. <u>See</u> <u>id.</u>

12.     The AIG Insurance Policies include a Homeowner's Amendatory Endorsement, which, in accordance with New York insurance regulations, provides AIG with limited bases for cancellation:

3

Part IV - CONDITIONS, Our Cancellation is deleted and replaced by the following:

**Our Cancellation**
We may cancel the entire policy only for the reasons stated in this condition.  The cancellation notice will be mailed to you at the address shown on the Declarations Page.  Proof of mailing will be sufficient proof of notice.

1.   When you have not paid the premium, we may cancel the entire policy at any time by mailing to you at least fifteen (15) days notice of cancellation.  The cancellation notice shall state the amount of premium due.
2.   When this policy has been in effect for less than sixty (60) days and is not a renewal with us, we may cancel the entire policy for any reason by letting you know at least 30 days before the date of cancellation takes place.
3.   When this policy has been in effect for sixty (60) days or more, or at any time if it is a renewal with us, we may cancel the entire policy only for one or more of the following reasons by notifying the **insured person** at least thirty (30) days prior to the proposed cancellation date:
     a.   Conviction of a crime arising out of acts increasing the hazard insured against;
     b.   Discovery of fraud or material misrepresentation in obtaining the policy or in the presentation of a claim thereunder;
     c.   Discovery of willful or reckless acts or omissions increasing the hazard insured against;
     d.   Physical changes in the property insured occurring after issuance or last annual anniversary date of the policy which result in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last voluntarily renewed; or
     e.   A determination by the Superintendent of Insurance that the continuation of the policy would violate or would place us in violation of the New York Insurance Law.

     If one of the reasons listed in this Paragraph 3. exists, we may cancel the entire policy.

E.g., Exhibit 6 at 42 (emphasis added).

13.     In fact, the day after it issued the Notices of Cancellation, AIG reiterated that "AIG's investigation into the Claim is ongoing."  See April 26, 2023 Letter Michael Bono to John Panico, attached hereto as Exhibit 7.

14.     AIG's Notices of Cancellation purport to take effect on May 31, 2023. See Exhibits 1-5.

15.     AIG's stated grounds for attempting to cancel the AIG Insurance Policies are both unduly vague and meritless.

16.     AIG's improper attempt to cancel the AIG Insurance Policies constitutes a breach of the policies' terms and applicable insurance statutes, potentially resulting in Genever (US) losing ownership of its property. Thus, AIG should be enjoined to prevent cancellation and AIG's

4

improper avoidance of its continuing coverage obligations.

17.    Moreover, the losses that Genever (US) has suffered are covered under the "all risk"
insurance, and AIG's material denial of coverage for these losses to the severe detriment of Genever
(US) is a breach of contract.

## JURISIDICTION AND VENUE

18.    The United States Bankruptcy Court for the District of Connecticut (the
"Bankruptcy Court" or the "Court") has jurisdiction over this adversary proceeding pursuant to 28
U.S.C. §§ 157, 1334, and sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 7001.

19.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

20.    This adversary proceeding is commenced pursuant to Bankruptcy Rules 7001(1) and
7001(7) and seeks relief under sections 105(a) and 363 of the Bankruptcy Code.

21.    The AIG Insurance Policies are property of the Genever (US) bankruptcy estate.
AIG has taken the position that these policies are post-petition contracts, which renders this
adversary proceeding a "core" proceeding to be determined by this Court pursuant to 28 U.S.C. §
157(b)(2) because it involves both property of Genever (US)'s estate and claims Genever (US)'s
estate possesses under the AIG Insurance Policies.

## PARTIES

22.    Genever (US) is a New York limited liability company. Genever (US) owns the
Covered Residences. As detailed below, the Trustee of the estate of Ho Wan Kwok indirectly
controls Genever (US) through the estate's ownership of all shares of Genever Holdings
Corporation ("Genever (BVI)"), which, in turn, wholly owns Genever (US).

23.    AIG is, on information and belief, a corporation organized and existing under the
laws of the State of Illinois, with its principal offices in New York, New York.  On information and

5

belief, AIG is authorized to, has done, and continues to do business in the States of Connecticut and New York.

<h1 style="text-align:center">FACTUAL ALLEGATIONS</h1>

**A.**     **Genever (US)'s Property and All-Risk Insurance Coverage**

24.     On March 6, 2015, Genever (US) executed a proprietary lease with the Sherry-Netherland (the "Proprietary Lease"), a cooperative housing corporation through which Genever (US) owns a number of shares that are assigned to various apartments that Genever (US) leases. See Proprietary Lease, attached hereto as Exhibit 15.

25.     Pursuant to the Proprietary Lease, maintaining insurance on the Covered Residences is a requirement for Genever (US)'s continued ownership of those properties.

26.     Under the Proprietary Lease, Genever (US) is required to maintain property and liability insurance on the Covered Residences as a condition of ownership. See Exhibit 15 at § 3.30. If Genever (US) fails to maintain continuous insurance coverage in connection with the Covered Residences, it will be in default of the Proprietary Lease. Id. ("The failure of the Lessee to obtain and maintain, throughout the term of this lease, the insurance required in (a) and (b) above shall be a default under the lease.").

27.     In the event of a default and the inability to cure the default within thirty (30) days (Id. at § 4.1(e)), Genever (US)'s Proprietary Lease provides that such lease could be terminated (Id. at § 4.1), and its shares allocable to the apartment for which it has defaulted could be forfeited. Id. at § 4.4.

28.     Pursuant to the terms of the Proprietary Lease, Genever (US) purchased the AIG Insurance Policies, including "all risk" homeowners insurance covering both first-party property

6

and third-party liability risks in connection with residential spaces (and valuable personal property)

Genever (US) owned in the Sherry-Netherland at 781 Fifth Avenue, New York, New York 10022.

29.    Specifically, AIG sold to Genever (US) the following AIG Insurance Policies:

a)    Homeowners Policy No. PCG 0061821440, in effect between March 6, 2023 and March 6, 2024, covering "781 Fifth Avenue, 18th Floor, New York, NY 10022," attached hereto as Exhibit 9;

b)    Homeowners Policy No. PCG 0061821443, in effect between March 6, 2023 and March 6, 2024, covering "781 Fifth Avenue Apt # 2219, New York, NY 10022," attached hereto as Exhibit 12;

c)    Homeowners Policy No. PCG 0061821444, in effect between March 6, 2023 and March 6, 2024, covering "781 Fifth Avenue Apt # 719, New York, NY 10022," attached hereto as Exhibit 6;

d)    Private Collections Policy No. PCG 0013893743, in effect between March 6, 2023 and March 6, 2024, covering "valuable articles anywhere in the world," attached hereto as Exhibit 13 (the "Private Collections Policy");

e)    Excess Liability Policy No. PCG 0017034504, in effect between March 6, 2023 and March 6, 2024, providing excess liability coverage on substantially the same terms and conditions as the above-listed homeowners policies, attached hereto as Exhibit 14 (the "Excess Liability Policy").

30.    Each of the AIG Insurance Policies lists Genever (US) as the named "Insured." None of the AIG Insurance Policies contain a "change of control" provision permitting AIG to deny, restrict, or terminate coverage on the basis of a change in ownership or control of the insured.

31.    The insurance policies numbered PCG 0061821440, PCG 0061821443, PCG 0061821444 (collectively, the "Homeowners Policies") each cover a different unit of the Covered Residences. See Exhibits 6, 9 and 12.

32.    The Homeowners Policies each provide coverage for Genever (US)'s property on an "all risk" basis, meaning that Genever (US) is covered against a cause of loss to its covered property not otherwise excluded by the Homeowners Policies:

7

### A. Insuring Agreement

This policy covers you against all risks of direct physical loss or damage to your **house, contents** and **other permanent structures** unless an exclusion applies.

E.g., Exhibit 6 at Part II, A.

33.     The Private Collections Policy also provides coverage for Genever (US)'s property on an "all risk" basis, meaning that Genever (US) is covered against a cause of loss to its valuable articles not otherwise excluded by the Private Collections Policy:

### A. Valuable Articles

We cover all risks of direct physical loss or damage to **valuable articles** anywhere in the world unless stated otherwise in this policy or an exclusion applies.

Exhibit 13 at Section II, A.

34.     The Homeowners Policies also provide third-party liability coverage, obligating AIG to defend Genever (US) against any suit seeking covered damages for personal injury or property damage, and to pay damages Genever (US) is obligated to pay for personal injury or property damage caused by an "Occurrence." See, e.g., Exhibit 6 at Part III, A. ("We will pay **damages** an **insured** is legally obligated to pay for **personal injury** or **property damage** caused by an **occurrence** covered by this policy . . ..") (emphasis in original).

35.     The Excess Liability Policy provides third-party liability coverage in excess of, and pursuant to functionally the same terms as the third-party liability coverage provided by the Homeowners Policies. See Exhibit 14 at Part II, A. The Excess Liability Policy also provides "first dollar" third-party liability coverage in certain circumstances. See id.

36.     Each of the AIG Insurance Policies only permits AIG to cancel such policy under

certain strict conditions, which mirror the requirements of New York Insurance Law § 3425(c)(2):

> (c) After a covered policy has been in effect for sixty days, or upon the effective date if the policy is a renewal, no notice of cancellation shall be issued to become effective unless required pursuant to a program approved by the superintendent as necessary because a continuation of the present premium volume would be hazardous to the interests of policyholders of the insurer, its creditors or the public, or unless it is based on one or more of the following:
>
> . . .
>
> (2) With respect to personal lines insurance policies:
>
> . . .
>
> (A) nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the insured of the amount due;
>
> (B) conviction of a crime arising out of acts increasing the hazard insured against;
>
> (C) discovery of fraud or material misrepresentation in obtaining the policy or in the presentation of a claim thereunder;
>
> (D) discovery of willful or reckless acts or omissions increasing the hazard insured against;
>
> (E) physical changes in the property insured occurring after issuance or last annual anniversary date of the policy which result in the property becoming uninsurable in accordance with the insurer's objective, uniformly applied underwriting standards in effect at the time the policy was issued or last voluntarily renewed; or
>
> (F) a determination by the superintendent that the continuation of the policy would violate or would place the insurer in violation of this chapter.

N.Y. Ins. Law § 3425(c)(2); see also Exhibits 6, 9, 12 at 42-43; Exhibit 13 at 34; Exhibit 14 at 53.

37.    AIG concedes through its notices of cancellations that cancellation must be based on the insured's acts or conduct:

> The reason for cancellation is  discovery of willful or reckless acts by the insured increasing the hazard insured against. Additionally, physical changes in the property insured, after issuance of the renewal, which resulted in the property becoming uninsurable in accordance with the Company's underwriting standards.

See Exhibits 1-5 (emphasis added). AIG further concedes that it does not premise the cancellation

9

on any purported acts or conduct of Genever (US) or the Trustee in control of Genever (US). Instead, AIG concedes that its cancellation is not based on actual facts, but rather based solely on what AIG calls "suspicious circumstances" involving Kwok. See May 3, 2023 Letter John O'Connor to John Gibbons, attached hereto as Exhibit 16.

38.    AIG's speculations concerning Kwok fail to meet the requirements for cancellation for numerous legal reasons.

39.    Genever (US) has paid all premiums due for the Policies and satisfied all conditions of coverage prior to filing this adversary proceeding.

40.    AIG's proposed cancellation of the insurance policies would place Genever (US) in default of its contractual obligations to the Sherry-Netherland, and the ultimate legal consequence of such a default could be forfeiture of the ownership interest Genever (US) holds for the Apartment and the other Covered Residences.

## B.    The Trustee's Indirect Control of Genever (US)

41.    On October 12, 2020, Genever (US) filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "SDNY Bankruptcy Court").

42.    On February 15, 2022, Kwok filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court.

43.    On March 19, 2022, the United States Trustee filed a motion for an order directing appointment of an examiner or, in, the alternative, directing the appointment of a Chapter 11 trustee in Kwok's case.

44.    On June 15, 2022, the Bankruptcy Court entered a memorandum decision directing the United States Trustee to appoint a Chapter 11 trustee in Kwok's case (the "Memorandum

10

Decision"). Following entry of the Memorandum Decision, the United States Trustee selected Luc. A. Despins as Trustee.

45.     On July 8, 2022, the Bankruptcy Court entered an order granting the appointment of Luc. A. Despins as the Trustee in Kwok's Chapter 11 Case.

46.     On August 10, 2022, the Bankruptcy Court entered an order (the "Corporate Governance Order") providing, among other things:

> [T]he Trustee holds all of the [Kwok's] economic and governance rights, for the benefit of the Estate, with respect to all [Kwok]-Controlled Entities, including, without limitation, Genever (BVI). For the avoidance of doubt, the foregoing rights include the Trustee's asserted authority to replace any existing officer, director, manager, or similar person of the [Kwok]-Controlled Entities. As part of the foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter 11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who has been removed.[3]

47.     Following entry of the Corporate Governance Order, the Trustee and Kwok took the necessary steps for the Trustee to obtain corporate control over Genever (BVI), which is the sole member of Genever (US), including by transferring Kwok's 100% ownership interest in Genever (BVI) to the Trustee. At that time, Kwok ceased to have any control or economic interest in Genever (BVI), Genever (US), and the Apartment.

48.     On October 11, 2022, Genever (BVI) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. At the time of the March 6, 2023 renewal of the insurance policies, Kwok had no economic interest in the Apartment or in the insured Genever (US) as a result of the bankruptcy cases. Prior to the renewal AIG, through its agent Wolfson, was informed of, and aware of, the bankruptcy cases, including the appointment of a Trustee. Moreover,

---

[3]    Order, Pursuant to Bankruptcy Code Sections 363, 521, 541, 1108, and 1505, (A) Confirming that Chapter 11 Trustee Holds All of Debtor's Economic and Corporate Governance Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of Estate, and (c) Granting Related Relief ¶ 2 [Docket No. 717].

at the time of the Fire, Kwok continued to have no economic interest in the Apartment or in the Genever entities.

49.     On November 3, 2022, the SDNY Bankruptcy Court entered an order transferring the venue of Genever (US)'s Chapter 11 Case to this Court, and the Chapter 11 Cases of the Kwok, Genever (US), and Genever (BVI) are being jointly administered for procedural purposes only.

50.     In December 2022, counsel for Genever (US) and for the Trustee communicated with AIG's agent, Wolfson, concerning the Chapter 11 bankruptcy cases and the Trustee's control over, amongst other things, Genever (BVI) and Genever (US). See December 2022 Emails Patrick Linsey and Catherine Skibitcky, attached hereto as  Exhibit 8.

51.     On March 6, 2023, AIG renewed the insurance policies for the new annual period of March 6, 2023 to March 6, 2024. See Exhibits 6, 9, 12-14.

52.     On March 15, 2023, the Fire damaged the Apartment and property therein.

53.     On March 16, 2023, the day after the Fire, AIG's agent, Wolfson, issued an updated Declarations Page for the AIG Insurance Policies noting the role of the Trustee with respect to the Insured Genever (US). See Exhibits 6, 9, 12, 14 at 5; Exhibit 13 at 3.

54.     Since the Fire, this Court has entered three emergency orders prohibiting access to the Apartment to anyone other than limited parties. (See, e.g., Docket No. 1687, attached hereto as Exhibit 10). At all times, the Sherry-Netherland has complied with such orders by controlling and limiting access to the Apartment.

55.     On April 17, 2023, AIG, through counsel, issued a letter to Trustee Luc Despins, which indicated that it was investigating the Fire. See April 17, 2023 Letter from Michael A. Bono to Luc Despins, attached hereto as Exhibit 17.

56.     On April 19, 2023, the Sherry-Netherland, through its counsel, advised Genever

12

(US) through Trustee, Luc Despins, that "it is imperative that emergency services be undertaken to mitigate damage to the building and other units at the Sherry Netherland caused by the March 15th Fire in the eighteenth floor apartment owned by Genever Holdings LLC[.]" April 19, 2023 Letter from Sherry Millman to Luc Despins, attached hereto as Exhibit 11. The Sherry Netherland has asserted that "[r]egardless of AIG's position[s], Genever [(US)], as shareholder, and [Mr. Despins], at the helm of Genever [(US)], are responsible for this clean up and the injury resulting from any failure to undertake the clean up promptly." Id.

57.     As such, AIG's actions in failing to timely provide the insurance coverage owed to Genever (US) with respect to the emergency response costs in the preliminary proof of loss threaten to cause irreparable harm to Genever (US) by creating new liabilities for it to the Sherry Netherland and potentially other residents of the Sherry Netherland.

**C.     Genever (US)'s Covered Losses at the Sherry-Netherland**

58.     On March 6, 2023, AIG renewed the insurance policies of the new annual period of March 6, 2023 to March 6, 2024. See Exhibits 6, 9, 13-14.

59.     On March 15, 2023, Kwok was arrested by federal law enforcement in the Apartment owned by Genever (US).

60.     Later that same day, the Fire broke out in the Apartment and damaged the Apartment and property therein.

61.     The Fire caused substantial property damage requiring repair and/or replacement to property covered by one or more of Genever (US)'s Homeowners Policies and the Private Collections Policy.

62.     The extent of the damage—and the costs to repair and replace it—is still being investigated but is certainly into the millions of dollars.

13

63.     Upon information and belief, at least one potential third-party claimant, the insurance company insuring the Sherry-Netherland at the time of the Fire, has informed AIG that it may seek to hold Genever (US) responsible for any and all damage to the Sherry-Netherland stemming from the Fire.

64.     On March 16, 2023, the day after the Fire, AIG's agent, Wolfson, issued an updated Declarations Page for the insurance policies noting the role of the Trustee with respect to the Insured Genever (US). See Exhibits 6, 9, 12, 14 at 5; Exhibit 13 at 3.

65.     Since the Fire, this Court has entered three emergency orders prohibiting access to the Apartment to anyone other than limited parties. See, e.g., Exhibit 10. At all times, the Sherry-Netherland has complied with such orders by controlling and limiting access to the Apartment.

66.     On April 17, 2023, AIG, through counsel, issued a letter to Trustee Luc Despins, which indicated that it was investigating the Fire. See Exhibit 17.

67.     On April 19, 2023, the Sherry-Netherland, through its counsel, advised Genever (US) through Trustee, Luc Despins, that "it is imperative that emergency services be undertaken to mitigate damage to the building and other units at the Sherry Netherland caused by the March 15th Fire in the eighteenth floor apartment owned by Genever Holdings LLC[.]" Exhibit 11. The Sherry Netherland has asserted that "[r]egardless of AIG's position[s], Genever [(US)], as shareholder, and [Mr. Despins], at the helm of Genever [(US)], are responsible for this clean up and the injury resulting from any failure to undertake the clean up promptly." Id.

68.     As such, AIG's actions in failing to timely provide the insurance coverage owed to Genever (US) with respect to the emergency response costs in the preliminary proof of loss threaten to cause irreparable harm to Genever (US) by creating new liabilities for it to the Sherry Netherland and potentially other residents of the Sherry Netherland.

14

**D.      AIG's Rejection of Coverage and Attempt to Cancel the Policies**

69.     Genever (US) provided prompt notice of the fire loss to AIG through the insurer's agent, Wolfson, in satisfaction of the Policies. See Exhibit 21.

70.     On April 17, 2023, AIG's legal counsel issued a letter to Genever (US) on behalf of AIG, stating that as "previously advised, AIG is currently conducting an investigation into the fire at 781 Fifth Avenue, New York, NY under a strict reservation of rights."  Exhibit 17.

71.     AIG also reserved its rights concerning a number of policy exclusions related to losses caused by foreseeable or intentional acts. See id.

72.     To assist in preparing its insurance claim, Genever (US) retained a public adjuster who submitted a preliminary proof of loss to AIG on April 21, 2023 for covered initial cleanup costs as a result of the Fire. That preliminary proof of loss detailed covered costs of $391,047.97. See April 21, 2023 Partial Sworn Statement in Proof of Loss, attached hereto as Exhibit 19.

73.     This post-Fire emergency clean-up was critical to limiting the damage to Genever (US), the Sherry-Netherland, and other residents, and the Sherry-Netherland has asserted that any failure to take necessary and critical emergency cleanup service may result in the imposition of liabilities upon Genever (US). See Exhibit 11.

74.     The post-Fire emergency cleanup is also critical to selling the Apartment as soon as possible.

75.     On April 25, 2023, AIG issued five "Notices of Cancellation," one for each of the Policies, purporting to notify Genever (US) that AIG was cancelling the Policies effective May 31, 2023. See Exhibits 1-5.

76.     Each of the Notices of Cancellation list, in conclusory fashion, two of the Policies' Cancellation Conditions, stating: "The reason for cancellation is discovery of willful or reckless

acts by the insured increasing the hazard insured against. Additionally, physical changes in the property insured, after issuance of the renewal, which resulted in the property becoming uninsurable in accordance with [AIG's] underwriting standards." Id.

77.    None of the Notices of Cancellation contained any further explanation or factual support for the purported cancellation of the Policies. AIG's notices of cancellations simply direct further questions to AIG's agent at Wolfson:

**IF YOU HAVE ANY QUESTIONS REGARDING THIS TERMINATION, PLEASE CONTACT THIS COMPANY'S REPRESENTATIVE AT: Wolfson Insurance Brokerage, Inc.**
**358 Fifth Avenue, 8th Floor**
**New York, NY 10001**
**(212) 683-2622**

Id. For the avoidance of doubt the use of the term "Company" in the sentence quoted above refers to AIG.

78.    On April 26, 2023, the day after issuing the Notices of Cancellation, AIG responded to Genever (US)'s submission of its preliminary proof of loss, stating that "AIG has not requested this proof of loss and has not made a determination on coverage under the Policy. ***As such, AIG hereby rejects the Proof of Loss and will not be issuing payment***." Exhibit 7 at 3 (emphasis added). AIG also represented that "AIG's investigation into the Claim is ongoing." Id. at 2.

79.    At the time, AIG had already been advised of the critical nature of the emergency cleanup services and remediation work to be performed and the potential for liabilities being imposed on Genever (US) for any failure to undertake the emergency services and remediation work. See April 14, 2023 Email Luc Despins to Cara Digiovanna and Michael Bono, attached hereto as Exhibit 22.

80.    Under New York law, the insurer has the burden of establishing the validity of its cancellation of a personal lines insurance policy, including a homeowner's policy. See Unitrin

16

<u>Direct Ins. Co. v. Barrow</u>, 128 N.Y.S.3d 638, 639-40 (N.Y. App. Div. 2020).

81.     On April 30, 2023, counsel for Genever (US) issued a letter contesting AIG's purported cancellation of the AIG Insurance Policies, noting that AIG had not met its burden to establish valid grounds to cancel the AIG Insurance Policies, and that the two reasons provided by AIG were factually inaccurate. <u>See</u> April 30, 2023 Letter John Gibbons to Michael Bono, attached hereto as Exhibit 18.

82.     On May 3, 2023, AIG responded, defending its decision to attempt to cancel the Policies by arguing that the "discovery of willful or reckless acts by the insured increasing the hazard insured against" Cancellation Condition was supported by the "suspicious nature" of the arrest and Fire, and that even though the AIG Insurance Policies insure Genever (US), the conduct of Kwok is "imputed to Genever and the Trustee of his bankruptcy estate for purposes of rights and obligations under the Policies." Exhibit 16 at 2.

83.     In the same letter, AIG argues that the "physical changes in the property insured, after issuance of the renewal, which resulted in the property becoming uninsurable in accordance with [AIG's] underwriting standards" Cancellation Condition was supported by the "substantial damage" caused by the Fire "under highly suspicious circumstances." <u>Id.</u>

84.     AIG's counsel's letter fails to adhere to the limited basis(es) for cancellation, as provided under the AIG Insurance Policies' conditions and as outlined pursuant to New York Insurance Law § 3425. <u>E.g.</u>, Exhibit 6 at 42-43.

85.     AIG concedes in the notices of cancellation that cancellation can only be premised on acts or conduct of the insured, Genever (US), which is under the control of the Trustee:

The reason for cancellation is  discovery of willful or reckless acts by the insured increasing the hazard insured against. Additionally, physical changes in the property insured, after issuance of the renewal, which resulted in the property becoming uninsurable in accordance with the Company's underwriting standards.

E.g., Ex. 1.

86.     Neither of AIG's explanations is sufficient to establish any Cancellation Condition as identified in any of the AIG Insurance Policies or as permitted pursuant to New York Insurance Law § 3425.

87.     Under the Cancellation Condition concerning "discovery of willful or reckless acts by the insured," AIG never identified any potential willful or reckless acts by anyone, let alone the insured; nor did AIG establish that it had actually discovered such acts. Instead, AIG relied solely on the "suspicious nature" of the Fire. AIG also cited no precedent or policy provision supporting the imputation of the conduct and scienter of Kwok, a non-insured, to Genever (US), the insured. See Exhibit 16.

88.     In addressing the Cancelation Condition concerning "physical changes in the property . . . which resulted in the property becoming uninsurable in accordance with [AIG's] underwriting standards", AIG again relied on supposed "highly suspicious circumstances," but the only "physical change" AIG identified was the damage suffered as a result of the Fire. See id.

89.     AIG's overreliance on its "suspicion" of undefined wrongdoing illustrates that AIG cannot meet its burden to establish any actual facts to satisfy its stated Cancellation Conditions.

90.     Fires are precisely the kind of events that are covered by property insurance and, upon information and belief, do not render property "uninsurable" under AIG's underwriting standards.

91.     Moreover, AIG never attempted to explain why the supposed "willful or reckless acts" or "physical changes" in relation to the Apartment required cancellation of the insurance policies providing coverage to Genever (US)'s *other* Covered Residences and the property therein.

92.     AIG's attempt to cancel the AIG Insurance Policies thus violates the terms and

18

conditions of those policies related to cancellation..

93.      AIG's attempt to cancel the AIG Insurance Policies also violates New York Insurance Law § 3425(c), which limits cancellation to the strict bases that the AIG Insurance Policies identify and which the insurer must  prove  with actual acts or conduct by the insured, Genever (US).

## FIRST CLAIM FOR RELIEF

### (BREACH OF CONTRACT– CANCELLATION)

94.      Plaintiffs repeat and reallege the allegations set forth in the forgoing paragraphs as if repeated in full.

95.      Genever (US) has fully complied with all terms and conditions of the AIG Insurance Policies and paid all required premiums.

96.      AIG has breached its duties and obligations under the AIG Insurance Policies by purporting to cancel them without adequate justification under both the express terms of the AIG Insurance Policies and New York Insurance Law § 3425(c).

97.      None of the AIG Insurance Policies' listed factual justifications for cancellation have occurred.

98.      AIG's purported cancellation of the AIG Insurance Policies without the required factual or evidentiary support constitutes a material breach of the AIG Insurance Policies.

99.      AIG's breach of the AIG Insurance Policies has proximately caused Genever (US) damages for which, in part, an adequate legal remedy does not exist.

100.      Without immediate remedial action or equitable relief Genever (US) will suffer irreparable harm.

101.      Maintaining insurance on the Covered Residences is a requirement for continued

19

ownership of those properties in accordance with the Proprietary Lease.

102.    Genever (US) has been harmed and disparaged by AIG's wrongful attempt to cancel the AIG Insurance Policies insofar as other insurers are not reasonably likely to insure the Covered Residences after the AIG Insurance Policies have been cancelled mid-policy period.

103.    If AIG is permitted to improperly cancel the AIG Insurance Policies based on the unfounded assertions in AIG's Notices of Cancellation, Genever (US) will continue to be harmed and disparaged because other insurers are not reasonably likely to insure the Covered Residences after the AIG Insurance Policies have been cancelled mid-policy period.

104.    As a result, Genever (US) will be in default of the Proprietary Lease for failure to maintain insurance, and, pursuant to the terms of the Proprietary Lease, within thirty (30) days of failing to cure the default, the Proprietary Lease may be terminated and Genever (US)'s shares in the Covered Residences forfeited.

105.    Maintaining the AIG Insurance Policies imposes little-to-no burden on AIG because insurance premiums have already been paid, and maintenance of the AIG Insurance Policies does not impact AIG's coverage obligations for the Fire that pre-dates the proposed May 31, 2023 cancellation date.

106.    Conversely, cancellation of the AIG Insurance Policies imposes the substantial and significant risk of the Proprietary Lease being terminated and Genever (US) losing ownership interest in the Covered Properties.

107.    AIG's improper attempt to cancel the AIG Insurance Policies is a fundamental divergence from the legal requirements imposed upon AIG per the terms of the AIG Insurance Policies and New York Insurance Law § 3425(c).

108.    Therefore, AIG's improper attempt to cancel the AIG Insurance Policies has caused

Genever (US) to suffer damages and poses an existential threat to Genever (US)'s ownership interest in the Covered Residences.

109.    Genever (US), accordingly, seeks:

      a)     Monetary damages in a final amount to be proven at trial; and

      b)     Any and all equitable relief deemed just and proper including, but not limited to, an order by the Court enjoining AIG from cancelling the AIG Insurance Policies.

**SECOND CLAIM FOR RELIEF**

**(BREACH OF CONTRACT – INSURANCE COVERAGE)**

110.    Plaintiffs repeat and reallege the allegations set forth in the forgoing paragraphs as if repeated in full.

111.    Genever (US) has fully complied with all terms and conditions of the AIG Insurance Policies and paid all required premiums.

112.    Genever (US) suffered covered losses to its insured real and personal property as a result of the Fire.

113.    Genever (US) submitted a preliminary proof of loss detailing initial costs of remediating some of the damage caused by the Fire.

114.    Such covered losses fall within the protections provided by the AIG Insurance Policies.

115.    The insurer for the Sherry-Netherland, FM Global, engaged an expert consultant who has already finalized his investigation "and ruled the [cause of the] fire undetermined." See April 27, 2023 Email Michael Dudas to Cara Digiovanna and Luc Despins, attached hereto as Exhibit 20.

21

116.    Upon information and belief, all other insurers of Sherry-Netherland's residences other than AIG have already concluded that the cause of the Fire cannot be determined.

117.    AIG nonetheless rejected Genever (US)'s preliminary proof of loss and refused to pay any of Genever (US)'s claimed losses.

118.    AIG has breached its duties and obligations under the AIG Insurance Policies by rejecting Genever (US)'s preliminary proof of loss and refusing to pay any of Genever (US)'s claimed losses resulting from the Fire.

119.    AIG's failure to pay these losses promptly, including the emergency cleanup costs, has exposed Genever (US) to irreparable harm, including: (1) Genever (US) will be subject to potential additional liabilities to the Sherry-Netherland and other residents; (2) the failure to conduct the required emergency measures may itself be deemed a default of the Proprietary Lease subjecting Genever (US) to potential forfeiture of the Apartment; and (3) under any circumstance without the emergency repairs and cleanup Genever (US) will be unable to sell the Apartment, which is critical for Genever (US) as debtor-in-possession.

120.    AIG's inequitable action of not paying for these losses promptly is violative of the terms of the AIG Insurance Policies, for which Genever (US) paid substantial premiums in consideration for the coverages the AIG Insurance Policies provide.

121.    Moreover, AIG's failure to pay for these losses promptly is a fundamental divergence from the legal requirements imposed upon AIG per the terms of the AIG Insurance Policies and New York Insurance Law §3425(c).

122.    AIG's assertion that its investigation is continuing is neither credible nor does it justify its rejection of Genever (US)'s preliminary proof of loss.

123.    AIG has also raised policy exclusions related to losses caused by foreseeable or intentional acts, and, although it has not explicitly stated that those exclusions apply, AIG's stated (and erroneous) bases for cancellation of the AIG Insurance Policies would, if true and valid as AIG contends, implicate these exclusions.

124.    No exclusions in the AIG Insurance Policies apply to Genever (US)'s losses resulting from the Fire.

125.    AIG's breach of the AIG Insurance Policies has proximately caused Genever (US) monetary damages in a final amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT --CANCELLATION)

126.    Plaintiffs repeat and reallege the allegations set forth in the forgoing paragraphs as if repeated in full.

127.    This is an action for declaratory relief brought pursuant to Bankruptcy Rule 7001(1), section 363 of the Bankruptcy Code, and 28 U.S.C. § 2201.

128.    Genever (US) has fully complied with all terms and conditions of the AIG Insurance Policies and paid all required premiums.

129.    A justiciable controversy exists between Genever (US) and AIG as to their respective rights, obligations, and AIG's improper notices of cancellations of the AIG Insurance Policies that Genever (US) purchased.

130.    The AIG Insurance Policies and New York Insurance Law § 3425 only permit to AIG narrow and specific bases upon which AIG may cancel the policies that have been issued.

131.    AIG has issued notices of cancellation that do not establish any legitimate basis for cancellation of the AIG Insurance Policies in accordance with the policies' own terms and New

23

York law.

132.    In correspondence, AIG has not provided any actual factual support for cancellation of the AIG Insurance Policies. AIG's counsel, in correspondence, concedes that the cancellation is not based on facts but rather on "suspicions," which are no better than speculation and insinuation and, in any event, do not satisfy AIG's burden of proof for cancellation.

133.    AIG further concedes that its "suspicions" do not relate to any actual conduct or acts of Genever (US), the named Insured under the AIG Insurance Policies, nor of the Trustee, who controls Genever (US).

134.    AIG cannot cancel the AIG Insurance Policies by pointing to facts or conduct of any entity other than Genever (US) or at any individual other than the Trustee, who controls Genever (US).

135.    AIG's notices of cancellation are factually and legally deficient, and Genever (US) is substantially likely to succeed on the merits of its claim to declare that AIG's attempted cancellation is invalid.

136.    Genever (US), accordingly, seeks a declaration that:

a)    The AIG Insurance Policies remain in force for the policy period of March 6, 2023 to March 6, 2024.

b)    AIG cannot, pursuant to the terms of the AIG Insurance Policies and New York Law, cancel the AIG Insurance Policies based on its "suspicions."

c)    AIG's notices of cancellation are factually and legally deficient, pursuant to both the terms of the AIG Insurance Policies and New York Insurance Law § 3425.

24

## FOURTH CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT – COVERAGE )

137.    Plaintiffs repeat and reallege the allegations set forth in the forgoing paragraphs as if repeated in full.

138.    This is an action for declaratory relief brought pursuant to Bankruptcy Rule 7001(1), sections 105(a) and 363 of the Bankruptcy Code, and 28 U.S.C. § 2201.

139.    Genever (US) has fully complied with all terms and conditions of the AIG Insurance Policies and paid all required premiums.

140.    A justiciable controversy exists between Genever (US) and AIG as to their respective rights, obligations, and the scope of coverage owed by AIG for the losses suffered by Genever (US) under the AIG Insurance Policies.

141.    Genever (US) seeks a judicial determination to resolve a present justiciable controversy among the parties regarding the scope of coverage available to Genever (US) for the Fire under the AIG Insurance Policies.

142.    Genever (US) is entitled to a judicial declaration that AIG has a duty to pay Genever (US)'s losses in relation to the Fire, including payment of Genever (US)'s first-party property losses and costs of defending and indemnifying Genever (US) in the event of third-party claims asserted against Genever (US).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in its favor and granting the following relief:

i.      Enjoin AIG from cancelling the AIG Insurance Policies sold to Genever (US);

ii.     A declaration that AIG must provide coverage under the AIG Insurance Policies for first- and third-party losses resulting from the Fire;

iii.    A declaration that AIG may not cancel the AIG Insurance Policies for the March 6, 2023 to March 6, 2024 policy term and that AIG's notices of cancellation are legally insufficient pursuant to the terms of the AIG Insurance Policies and New York Insurance Law § 3425;

iv.     Awarding Genever (US) compensatory damages for breach of contract in an amount to be determined at trial but in any event exceeding the jurisdictional amount;

v.      Awarding Genever (US) immediate insurance proceeds for the emergency cleanup measures necessary to protect its interests, render the Apartment saleable, and limit Genever (US)'s third-party claims arising out of the Fire, including assertions of liability by the Sherry-Netherlands and other potential claimants;

vi.     Awarding Genever (US) punitive damages and/or sanctions as appropriate under the circumstances, as well as its attorneys' fees and costs of this suit;

vii.    Awarding Genever (US) pre-judgment and post-judgment interest; and

viii.   Awarding Genever (US) such other and further relief as this Court may deem just, proper, or equitable under the circumstances.

*[Remainder of page intentionally left blank.]*

Dated: May 12, 2023                         GENEVER HOLDINGS LLC
Trumbull, Connecticut


By: */s/ David G. Jordon*
    David G. Jordan
    Tracy A. Saxe
    Brian J. Clifford
    Saxe Doernberger & Vita
    35 Nutmeg Drive, Suite 140
    Trumbull, CT 06611
    (203) 287-2100
    djordan@sdvlaw.com
    tsaxe@sdvlaw.com
    bclifford@sdvlaw.com

    *Proposed Special Insurance Coverage*
    *Counsel for Debtor-In-Possession Genever*
    *Holdings LLC*