UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re * Case No. 22-50073 (JAM)

HO WAN KWOK and GENEVER HOLDINGS CORPORATION, * Bridgeport, Connecticut
* May 4, 2023

Debtor.

* * * * * * * * * * * * * * * *

TRANSCRIPT OF
#1724 MOTION TO APPROVE SETTLEMENT AGREEMENT
#1727 MOTION TO SEAL
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

Chapter 11 Trustee: LUC A. DESPINS, ESQ.
Paul Hastings
200 Park Avenue
New York, NY 10166

For the Chapter 11 Trustee: PATRICK R. LINSEY, ESQ.
Neubert Pepe & Monteith, PC
195 Church Street
New Haven, CT 06510

For the U.S. Trustee: HOLLEY L. CLAIBORN, ESQ.
Office of the United States Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES: (Cont'd)

| | |
|---|---|
| For the Official Committee Of Unsecured Creditors: | IRVE J. GOLDMAN, ESQ.<br>Pullman & Comley, LLC<br>P.O. Box 7006<br>Bridgeport, CT 06601 |
| For the Creditor, Pacific Alliance Asia Opportunity Fund L.P.: | PETER FRIEDMAN, ESQ.<br>LAURA ARONSSON, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036 |
| | ANNECCA H. SMITH, ESQ.<br>Robinson & Cole<br>28 Trumbull Street<br>Hartford, CT 06103 |

(Proceedings commenced at 1:06 p.m.)

THE COURTROOM DEPUTY: Case Number 22-50073, Ho Wan Kwok.

THE COURT: Good afternoon. If we could have appearances for the record, starting with the Chapter 11 Trustee, please?

MR. DESPINS: Good afternoon, Your Honor. Luc Despins, Chapter 11 Trustee.

THE COURT: Trustee's counsel?

MR. LINSEY: Patrick Linsey for the trustee.

THE COURT: I can't hear you, Attorney Linsey.

MR. LINSEY: I'm sorry. Can you hear me now, Your Honor?

THE COURT: Yes. You just need to get closer to your microphone, please.

MR. LINSEY: Okay. All right. That's the side effect for making my face bigger. I apologize. Patrick Linsey for the trustee.

THE COURT: Good afternoon. Someone's got some feedback. Is somebody on the telephone as well? If you are, if you could turn that off, because I can hear feedback?

But in any event, Office of the United States Trustee?

MS. CLAIBORN: Good afternoon, Your Honor. Holley

Claiborn for the U. S. Trustee.

THE COURT: Counsel for PAX.

MR. SARNOFF: Stuart Sarnoff, for the creditor, PAX.

THE COURT: Mr. Friedman, Ms. Smith, are you noting your appearances?

MR. FRIEDMAN: Yes, Your Honor. Good afternoon. Peter Friedman, from O'Melveny, on behalf of PAX.

MS. SMITH: Thank you, Your Honor. Annecca Smith, Robinson and Cole, on behalf of Pax.

THE COURT: Good afternoon. And counsel for the committee.

MR. GOLDMAN: Good afternoon, Your Honor. Irve Goldman, Pullman and Comley, for the creditor's committee.

THE COURT: Good afternoon. All right.

So there are two matters on the calendar to which there are no objections, Trustee Despins. The motion to approve the settlement agreement and the motion to seal. So how do you wish to proceed?

MR. DESPINS: Your Honor, we probably have to start with the motion to seal, Docket No. 1727.

Basically, we sealed only two exhibits attached to the motion, which we had to because under the protective order, they can only be reviewed by counsel for the trustee, the trustee and the Zeisler firm, and this -- it's -- this is

information that is -- it refers to the asylum application by Mr. Kwok. So he's been very sensitive about that and, therefore, we didn't take any chances and we filed it under seal.

No objections were received and, therefore, we would ask the Court enter the order. All the other parties have seen the unredacted motion, just the exhibits --those two exhibits, we haven't seen.

THE COURT: The only question I had, Trustee Despins, with regard to the order granting the motion to seal, the second paragraph says, "The trustee is hereby authorized to file unredacted versions of the 9019 motion under seal." Didn't you already do that, or did you just do the exhibits?

MR. DESPINS: Mr. Linsey, if I can call him --

MR. LINSEY: I have an answer on that, Your Honor. I apologize. It was originally anticipated that there was going to be content in the motion that would need to be redacted, and it was -- it turned out there was not. It was only the exhibits.

THE COURT: Okay.

MR. LINSEY: So that's essentially a (indiscernible) provision that was left over from what we had earlier contemplated. I apologize for the confusion. But given that we didn't have to redact anything from the

motion, we just filed the motion on the docket in the first instance.

THE COURT: Okay. So --

MR. LINSEY: Would you like us to prepare a revised order --

THE COURT: -- Paragraph 2 can -- so Paragraph 2 can be deleted. What about Paragraph 3? It says, the trustee is further authorized to file on this Court's docket and to serve on other parties in interest, copies of the 9019 motion with the summary judgment exhibit and the motion in limine exhibit redacted.

Did you do that already too?

MR. LINSEY: Yes, Your Honor. We filed the motion and we filed the -- we filed the exhibit under seal. There is no -- you'll notice when we filed the exhibit on the public docket, there is just a placeholder page that says files under seal for the exhibits that are filed under seal.

Your Honor, perhaps we could do that. Could we -- if Your Honor would be willing, perhaps Your Honor could grant the motion on the record and we could submit a revised order that cleans up that language.

THE COURT: That's fine with me. Does anyone else --

MR. LINSEY: Thank you, Your Honor.

THE COURT: -- wish to be heard on the motion to

seal? No one's filed any objections, so I don't think that there's a lot to discuss, but --

MR. LINSEY: Yeah. Your Honor, the issue is with the prior -- with all the prior things that we've filed under seal, there had been reference in the actual papers to the sealed content that had to be redacted.

Here, we were able to sort of write around that, which we thought made things a little bit cleaner. So that was -- that's sort of what caused this hiccup, but we'll take care of that with a revised order.

THE COURT: Okay. Then for the reasons stated on the record and in the motion itself, ECF No. 1727, the motion to seal is granted and a revised proposed order will be submitted when, Attorney Linsey?

You can have as much time as you want, I'm just -- I just need a date.

MR. LINSEY: Sure. Tomorrow, Your Honor?

THE COURT: Okay. Thank you. So the revised --

MR. LINSEY: Thank you.

THE COURT: -- proposed order will be submitted by May 5th.

All right. So now we can turn to the motion to approve the settlement agreement.

MR. DESPINS: Correct, Your Honor. Thank you. So the motion to approve the settlement agreement under 9019,

that Bankruptcy Rule of 9019 is at Docket No. 1724.

We received no objections to that, but just by way of proffer, just a bit of background, this is the settlement of a litigation commenced by Mr. Kwok pre-bankruptcy and it was commenced in 2019, against a law firm named Clark Hill and one of their partners.

And it was alleging malpractice, and that resulted from, among other things, a cyber attack on that firm where outsiders were able to access information on the firm's computer server, including Mr. Kwok's assylum application or documents relating thereto.

And that complaint was filed in the District of Columbia Superior Court, was removed to the district court in the D.C. Circuit and, eventually, you know, there was a motion to dismiss filed by Clark Hill to narrow the types of claims that could be asserted. They were both economic claims and emotional distress claims filed by Mr. Kwok, and also they're seeking punitive damages.

So as a result of the motion to dismiss, the punitive damages claims were dismissed and the -- and other claims were narrowed as well.

And in the subsequent discovery, the debtor abandoned the economic damage claim -- part of their claim. Economic, you know, harm damages that they were asserting in the complaint.

That’s actually pretty interesting, because they start asking Mr. Kwok in the deposition, so tell us about your income. Tell us about your income. Tell us about your assets.

Then he took the Fifth and the practical result of that is they couldn't pursue the economic damages types of claims, and at the end it was only pursuing emotional distress claims, and there was -- there were -- there was a motion for summary judgment filed by Clark Hill on the petition date in this case. It's by happenstance, February 15, 2022.

And basically they pointed out that this type of emotional damage claims could not be recovered in D.C. with respect to the types of claims that were asserted, among other things.

So that motion for summary judgment was never answered by us, because we have the benefit of the stay, and there was also a motion in limine that was filed to exclude a bunch of experts that the debtor had retained.

So that's the -- that's where we took the litigation, basically, where there was a motion for summary judgment pending, no ruling on that.

So what the team did is, all these things that they reviewed, all the documents -- but you will recall, Your Honor, that that took a while because they didn't --

the debtor did not want us to have access to that.

We had to get a ruling from Your Honor allowing us access to that, which was appealed, and that appeal was dismissed as an interim appeal -- interlocutory appeal, I should say. And so that allowed us to actually review the documents.

And we reviewed the various documents attached to the summary judgment motion and other relevant pleadings. We had various discussions with counsel for Mr. Kwok in that litigation, and obviously we had some in discussions with the law firm representing Clark Hill, which beginning offered us, you know, really a very -- a very small recovery. Obviously, we were at a much higher amount than what we settled for. Just for the record, we settled for $499,000.

But at the end of the day, Your Honor, this type of litigation where the debtor is alleging emotional distress, emotional harm, that litigation would rely heavily on his testimony and the credibility of that testimony.

And so we had to take into account that, and the fact that the debtor, although he had not been indicted by the time we have reached this agreement, clearly was distracted in other things and had invoked the Fifth Amendment in multiple types of proceedings and, therefore, there would be obviously a credibility issue, but also a

motivation issue.

What’s the motivation of the debtor to spend a lot of time to help us collect on that claim given that he's not going to get a penny out of that settlement, or litigation, even if successful.

And at the end of the day, we decided to settle for, you know, $1 less than 500,000, because that's the best amount we could recover from Clark Hill and its insurance carriers, given the -- how that litigation was teed up, the narrow claims that were remaining and the debtor's current position.

And frankly, while the discussions were pending, although we have not documented the -- finally documented the settlement that Mr. Kwok was indicted, so that really sealed it from our point of view, which is that it would have been impossible if not -- it would be very difficult, if not impossible to prosecute -- to continue to prosecute that ligation.

And therefore, that's how we arrived at that settlement. That is really the best settlement we could get under the circumstance, Your Honor, and we believe that it's -- given the circumstance and the limited nature of the claims, it is way above the lowest intermediate point that this (indiscernible) settle that, or even litigate it, and therefore, we would ask the Court to approve the settlement.

THE COURT: Okay. Thank you very much. Does anyone else wish to be heard?

(No audible response)

THE COURT: Okay. Hearing nothing, I have reviewed the settlement agreement and mutual release, and Trustee Despins, I generally don't approve settlement agreements.

I approve the authority to enter into a settlement agreement, but in this specific case, I did review the specific settlement agreement and mutual release, and I understand its terms and conditions, and I do not have any questions or concerns about its terms and conditions.

Obviously, it's a helpful settlement to the estate, and it certainly falls within the range or reasonableness that the Rule 9019 standard requires to approve a settlement agreement.

As you have noted on the record, this would be a difficult matter to settle without the information that you -- that was not provided and/or subject to privilege, and so it does appear to be a reasonable settlement under the circumstances, the very specific circumstances and detailed circumstances of this case.

So for all those reasons, the motion to approve the settlement agreement with Clark Hill PLC, pursuant to Federal Rule of Bankruptcy Procedure 9019 is approved -- is

granted, I should say. The motion is granted. And the proposed order that you submitted, which would require the Court to attach the settlement agreement and mutual release as Exhibit A can enter. So thank you.

MR. DESPINS: Thank you, Your Honor. If I may, just a couple of things that are unrelated to this -- I'm sorry. I don't know if Your Honor has concluded her remarks, or --

THE COURT: I have. Go right ahead.

MR. DESPINS: Okay. Okay. So the first thing is the Lady May II, we were seeking a hearing on an expedited basis to get the boat fixed and in the water so it can be moved to Newport. And as I -- so I want to make sure that was on you radar screen.

And then the other thing is the -- we're filing today, I would think -- and I think it's the last motion of this type, but a motion regarding the Lady May itself to -- and we had previewed this to Your Honor -- to transfer the Lady may to a tax free zone, free tax zone at the Newport Shipyard.

There are costs involved in that. We have to sign the bond, provide a bond to the entity that's administering the tax-free zone, and so we're filing that motion today, and we are -- also in there we'll seek expedited consideration of that motion because the broker is telling

us that a number of people, they're all American citizens, want to visit the boat. They're interested in it, but they can't do that until the boat is in the free tax zone with American citizens and therefore -- and we could not get this resolved until today, so we're filing that motion in the next hour or two and we will seek expedited consideration of that.

And I believe that that should be the last one of this nature. I know we've handled probably 3 or 4 already, and I apologize for them having being all segmented and it would be better to have all of them together, but it was impossible from a timing point of view to get that done and, therefore -- you know, we want Your Honor to know that that motion is coming today and that seeks expedited consideration as well.

THE COURT: Okay.

MR. DESPINS: That's all we have, Your Honor.

THE COURT: With regard to the -- two things. Three things, I guess. The Lady May is in Newport now? Is that correct?

MR. DESPINS: Yes, it is. Yes, Your Honor.

THE COURT: Okay. And the Lady May II is still in Mamaroneck, but this motion --

MR. DESPINS: Correct.

THE COURT: -- is going to ask to do what? To

remove it from the warehouse and do what?

MR. DESPINS: Well, it removes the warehouse, but before it has to -- before it can leave the warehouse, it has, you know, repairs that need to be done --

THE COURT: Okay.

MR. DESPINS: -- so it can be recommissioned to be in the water.

THE COURT: I see.

MR. DESPINS: And that's part of that motion that we filed two days ago, and for which we're seeking an expedited hearing.

THE COURT: Okay. And then what about -- we had some discussion the other day about the tender. Where is that? That's the one that's in Florida?

MR. DESPINS: The tender is in -- yes, and we need to have a member of the crew go and make arrangements to get it and to bring it to Newport. But that's happening real-time in the next ten days or so.

THE COURT: So you're going to need another motion on that.

MR. DESPINS: No. No.

THE COURT: No? Because it's --

MR. DESPINS: We're just going to --

THE COURT: -- why is that?

MR. DESPINS: -- basically, it's really going to

-- because it's only going to get the tender and bring it back to -- that's a smaller boat, Your Honor. That's --

THE COURT: No, I know.

MR. DESPINS: -- what I would call a kind of a --

THE COURT: Yeah.

MR. DESPINS: Okay.

THE COURT: That's the one that fits inside --

MR. DESPINS: So that can be brought to --

THE COURT: -- the boat?

MR. DESPINS: Yes. Yes. Yes.

THE COURT: Okay. So I don't need to do anything further with regard to the tender in Florida.

MR. DESPINS: For the tender, no.

THE COURT: Okay.

MR. DESPINS: No. What's coming today is the transferring the ship to the tax free zone. Unfortunately, that costs more money. I think it's 11,000 or so more per month, and we have the bonding requirements to protect that -- the entity that's administering that to make sure that if we do something wrong, they're protected.

The cost of the bond is not that much. It's about $5,000 but, you know, all of that needs to be approved, and we're filing that motion in the next two hours, Your Honor.

THE COURT: All right. So let's talk about scheduling. You want the expedited hearing on both of these

motions when? Did you specifically request a date?

MR. DESPINS: Well, if Your Honor is available, Wednesday the 10th would be the best possible --

THE COURT: Tuesday the 9th is --

MR. DESPINS: -- days.

THE COURT: -- Tuesday the 9th in the afternoon is too soon?

MR. DESPINS: Well, it's your -- leave it to your discretion, Your Honor. We're okay with the 10th, but that's -- Tuesday the 9th also works, in the afternoon. Sure.

THE COURT: The reason I mention that is there were matters scheduled for that afternoon that are not going to -- in another case, that are not going to proceed, and so there is availability that afternoon, as opposed to Wednesday. But if you'd prefer Wednesday, that's fine. I just don't know that it will be --

MR. DESPINS: No, but --

THE COURT: -- 10:00 a.m. It will be later in the day.

MR. DESPINS: Tuesday is fine, Your Honor.

THE COURT: All right. Well, let us, after this hearing, go look at what you've asked us to look at, and we'll confirm that the matters that are scheduled for the afternoon of the -- of Tuesday the 9th, are not going

forward.

And if they're not going forward, then we might be able to schedule this for -- schedule the matter that you've already filed and the one that you're going to file. Then that's probably what will happen. Okay? Otherwise, we'll schedule it on Tuesday -- Wednesday, but it won't be first thing in the morning. It may not be until noon or something.

MR. DESPINS: Understood. And the last point I wanted to mention, Your Honor, is that I retained a -- what is called a cause and location fire expert for the Genever estates. The name of the company is called Find The Cause, appropriately named, and that is only -- the fees that that firm is charging is only $3,300.

We've asked -- and you'll recall that we had hired an expert of some Derecktor Shipyard in the main case for, I think it was three or $4,000, and we had asked the U. S. Trustee in that context, whether it would be okay not to file an application.

We made the same request with respect to the Find the Cause retention because, you know, it's counterproductive if we have to file papers and all that. It's going to cost, you know, some money and the amount is only $3,000 -- $3,300 and, therefore, we were -- wanted to know whether the Court would be okay, the same way you were

-- you allowed us not to file an application with respect to Derecktor Shipyard, because of the small amount involved.

If not, we'll file an application, but it's just we're trying to save money whenever we can, Your Honor. So that -- given the small amount involved, the U. S. Trustee was okay with us not filing an application, but obviously it's your decision at the end of the day.

THE COURT: Well, if the -- is anyone else -- Attorney Claiborn, is that the U. S. Trustee's position?

MS. CLAIBORN: Correct, Your Honor.

THE COURT: Okay. Then I have no problem with it, unless someone else wishes to be heard with regard to that issue. Okay?

MR. DESPINS: Thank you, Your Honor.

THE COURT: All right. So then, we'll go back and look at the matter that you've already filed, which will either be scheduled for Tuesday afternoon or Wednesday at some point during that day, and then --

MR. DESPINS: The free trade motion that's coming -- that's coming in two hours.

THE COURT: Right. That's the other one that's other one that's coming this afternoon. Which will be scheduled --

MR. DESPINS: Correct.

THE COURT: -- at the same time. So the soon --

MR. DESPINS: Thank you, Your Honor.

THE COURT: -- as soon as you can get it in, that would be helpful. Okay?

MR. DESPINS: Yes, Your Honor. Thank you.

THE COURT: All right. Thank you. All right. That concludes the hearings today, then, in the Kwok matter, so -- and this is the last matter on the calendar today, so court is adjourned.

MR. DESPINS: Thank you, Your Honor.

MS. CLAIBORN: Thank you.

(Proceedings concluded at 1:30 p.m.)

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Christine Fiore

______________________________ May 12, 2023

Christine Fiore, CERT