<table>
<tr><td colspan="2"><strong>ADVERSARY PROCEEDING COVER SHEET</strong><br>(Instructions on Reverse)</td><td><strong>ADVERSARY PROCEEDING NUMBER</strong><br>(Court Use Only)</td></tr>
</table>

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Luc A. Despins, as Chapter 11 Trustee | Mei Guo |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Douglass Barron, Tel: 212-318-6000 | **ATTORNEYS** (If Known)<br>Chiesa Shahinian & Giantomasi PC, 105 Eisenhower Parkway Roseland, NJ 07068; Zeisler & Zeisler, P.C., 10 Middle St., 15th Floor, Bridgeport, CT 06851 |

**PARTY** (Check One Box Only)
- ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor  ☐ Other
- ☒ Trustee

**PARTY** (Check One Box Only)
- ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor  ☒ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

First Claim: Declaration that the Bombardier Proceeds are property of the Debtor's chapter 11 estate; Second Claim (in the alternative): Avoidance of Postpetition Transfer, pursuant to Bk. Code secs. 549/550; Third Claim (in the alternative): Avoidance of Actual Fraudulent Transfer, pursuant to N.Y. Debtor & Creditor Law sec. 276 and Bk. Code secs. 544/550; and Fourth Claim: Declaratory Judgment that Debtor Is True Beneficial Owner of BVI Shell Companies, pursuant to Bk. Code secs. 541/542/544.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☒ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

Declaratory relief as set forth above.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Ho Wan Kwok | BANKRUPTCY CASE NO.<br>22-50073 (JAM) | |
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISION OFFICE<br>Bridgeport | NAME OF JUDGE<br>Manning, J. |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Patrick R. Linsey | | |
| DATE<br><br>May 16, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Douglass Barron | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

--------------------------------------------------------x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
HO WAN KWOK, *et al.*,[1]                               :    Case No. 22-50073 (JAM)
                                                        :
                               Debtors.                 :    (Jointly Administered)
                                                        :
--------------------------------------------------------x
                                                        :
LUC A. DESPINS, CHAPTER 11                               :
TRUSTEE,                                                 :
                                                        :    Adv. Proceeding No. [_____]
                               Plaintiff,               :
v.                                                      :
                                                        :
MEI GUO,                                                :    May 16, 2023
                                                        :
                                                        :
                               Defendant.               :
                                                        :
--------------------------------------------------------x

**COMPLAINT OF CHAPTER 11 TRUSTEE FOR ESTATE OF**
**HO WAN KWOK FOR (I) DECLARATORY JUDGMENT, PURSUANT TO SECTIONS**
**541, 542, AND 544 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7001,**
**THAT PROPERTY HELD BY MEI GUO IS PROPERTY OF ESTATE AND**
**(II) RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor" or "Kwok"), files this

adversary complaint (the "Complaint") against defendant Mei Guo, stating as follows:

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## NATURE OF ACTION

1.      The Trustee commences this adversary proceeding to recover valuable property of the Debtor, held by or in the name of Mei Guo, that should be turned over to the Trustee and incorporated into the Debtor's chapter 11 estate for the benefit of the Debtor's creditors.

2.      First, the Trustee seeks to recover the proceeds of the unauthorized postpetition sale of the Debtor's private jet.  As of the filing of the Debtor's chapter 11 petition on February 15, 2022 (the "Petition Date"), the Debtor was the beneficial owner of a Bombardier Global XRS private jet with serial number 9189 (the "Bombardier"), held in the name of Whitecroft Shore Limited ("Whitecroft"), a shell company nominally owned by his daughter, Mei Guo.  According to the testimony of Mei Guo at her January 20, 2023 deposition, the Bombardier was sold in the summer of 2022 for over $10 million to a party whose name Mei Guo could not remember.[2]  Mei Guo testified she held these funds through a third party, whose name she did not know.

3.      As discussed further below, despite Whitecroft's nominal title to the Bombardier, the Debtor beneficially owned the Bombardier at all relevant times, including at the time of its sale.  The Debtor's asset protection strategy here—the holding of a valuable asset in a shell company nominally owned by his daughter—is identical to the method the Debtor employed to beneficially own the Lady May yacht while claiming it belonged to his daughter.

4.      Because the Bombardier was beneficially owned by the Debtor at the time of its sale, it was property of the Debtor's chapter 11 estate.  The proceeds of the sale are also property of the estate pursuant to section 541(a)(6) of the Bankruptcy Code (defining as property of estate all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate").  Based on

---

[2]      The Trustee reserves all his rights in connection with asserting avoidance actions against the transferee of the Bombardier.

these facts, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that the proceeds of the sale of the Bombardier (the "Bombardier Proceeds") held by Mei Guo constitute property of the Debtor's chapter 11 estate to be administered by the Trustee and (2) ordering Mei Guo to surrender the Bombardier Proceeds or the value thereof to the Trustee, which order will constitute a personal money judgment against Mei Guo.

5.      The Trustee also asserts, in the first alternative, that, even assuming the Bombardier Proceeds are not currently property of the estate, the Bombardier Proceeds were property of the estate and were transferred to Mei Guo following the Bombardier's sale, which constituted an unauthorized post-petition transfer of estate property under section 549 of the Bankruptcy Code.  Accordingly, the Trustee seeks an alternative ruling, pursuant to sections 549 and 550 of the Bankruptcy Code, ordering Mei Guo to surrender the Bombardier Proceeds or the value thereof to the Trustee, which order will constitute a personal money judgment against Mei Guo.

6.      The Trustee further asserts, in the second alternative, that, even assuming Mei Guo was the beneficial owner of the Bombardier (directly or indirectly) at the time of its sale, she received such beneficial ownership through an actual fraudulent transfer by the Debtor. Specifically, on June 27, 2017, the Debtor transferred his ownership interest in the entity that at that time held title to the Bombardier, Anton Development Limited ("Anton Development"), to Mei Guo for the purpose of hindering, delaying, or defrauding his creditors.  Accordingly, the Trustee seeks an alternative ruling, pursuant to Section 276 of the New York Debtor and Creditor Law and sections 544 and 550 of the Bankruptcy Code, ordering Mei Guo to surrender to the Trustee the value of Anton Development at the time it was transferred to her on June 27, 2017, which order will constitute a personal money judgment against Mei Guo.

3

7.      Finally, the Trustee separately asserts that Mei Guo is the nominal holder of a number of entities incorporated in the British Virgin Islands (BVI) that are beneficially owned by the Debtor (the "BVI Shell Companies").[3]  These BVI Shell Companies are comprised of:

    a.  Whitecroft;

    b.  Allied Capital Global Limited;

    c.  Creative Apex Investments Limited;

    d.  Crystal Breeze Investments Limited;

    e.  Elite Well Global Limited;

    f.  Globalist International Limited;

    g.  Infinite Increase Limited, Infinitum Developments Limited;

    h.  Noble Fame Global Limited; and

    i.  Rosy Acme Ventures Limited.

8.      As discussed further below, Mei Guo is a mere nominee owner of the BVI Shell Companies on behalf of the Debtor, while the Debtor is their true beneficial owner.  The Trustee seeks a ruling that Mei Guo's ownership interests in the BVI Shell Companies belong to the chapter 11 estate and that they be turned over to the Trustee.[4]

---

[3]    At this time, because Mei Guo and the Debtor invoked the Fifth Amendment to refuse to disclose their assets, it is not clear which assets, if any, are currently held by the BVI Shell Companies.  The Trustee notes that, even if the BVI Shell Companies do not hold valuable physical assets, their assets may include claims that could be monetized for the benefit of the estate once the Trustee takes control of these entities.

[4]    The Trustee also has claims pending against Mei Guo in adversary proceeding 22-05003 (the "HK USA Adversary Proceeding"), and the Court previously granted the Trustee preliminary injunctive relief therein by restraining Mei Guo from transferring or otherwise dissipating her assets.  The relief sought in this Complaint makes it critical that such injunctive relief remain in place.  Given that Mei Guo has previously moved to terminate the injunction in the HK USA Adversary Proceeding (which motion was denied without prejudice), and may do so again, the Trustee may seek similar relief in connection with the allegations made in this Complaint.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

10.     This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. §157(a).

## THE PARTIES

11.     The Trustee is the chapter 11 trustee in the Chapter 11 Case pursuant to the Court's order entered on July 8, 2022 [Main Case Docket No. 523].

12.     Mei Guo is the Debtor's daughter and the purported owner of the BVI Shell Companies.  Mei Guo testified in her January 2023 deposition that she held the Bombardier Proceeds at the time of the deposition.

## FACTS

### I.      Debtor's Prolific Use of Shell Companies

13.     As the Court is well aware, the Debtor is a prolific user of shell companies, purportedly owned by family members or business subordinates, to shield his assets and activities from creditors.  The Debtor's "shell game" has allowed him to continue to deny ownership of assets, refuse to pay debts, and—until his recent arrest by the FBI—live a life of luxury.

14.     Among other examples, shell companies purportedly owned by the Debtor's son (Lamp Capital LLC and Golden Spring (New York) Ltd.) have paid the Debtor's living expenses and legal fees; a shell company purportedly owned by Mei Guo (Hong Kong International Investments (USA) Limited ("HK USA")) has held title to the Debtor's yacht, the *Lady May*

5

(which the Court ruled was property of the estate despite its nominal ownership by HK USA);[5] and another shell company purportedly owned by the Debtor's wife (Greenwich Land LLC) holds title to the Debtor's Connecticut residence.[6]  The Debtor also claims that his apartment at the Sherry Netherland Hotel is held in trust for the benefit of yet another shell company purportedly owned by his son (Bravo Luck Limited).[7]

15.    Moreover, this Court has already found that numerous purportedly independent entities and organizations involved in the Debtor's recent social media and protest campaign against Pacific Alliance Asia Opportunities Fund ("PAX") and the Trustee were controlled by the Debtor,[8] led by the Debtor,[9] or served "the purposes of . . . and as business vehicles of" the Debtor.[10]  This Court separately found, in its order holding the Debtor in contempt for violating the Court's corporate governance order, that the Debtor was the beneficial owner of Ace Decade Limited (and, through it, Dawn State Limited), and that the Debtor controlled and employed Ace Decade Limited's nominee owner, Yvette Wang.[11]

---

[5]    The Trustee has sought an alter ego judgment against HK USA in adversary proceeding 22-05003, in connection with which the Court entered a prejudgment remedy and preliminary injunction orders against Hong Kong International Investments (USA) Limited and Mei Guo.  *See Order Granting Trustee's Application for Prejudgment Remedy* (Adv. Proc. No. 22-05003, Mar. 17, 2023, Docket No. 140); *Order Granting Trustee's Motion for Preliminary Injunction* (Adv. Proc. No. 22-05003, Mar. 17, 2023, Docket No. 142).

[6]    The Trustee has sought an alter ego judgment against this entity in adversary proceeding 23-05005, in connection with which the Court entered a prejudgment remedy and temporary restraining orders against Greenwich Land LLC and the Debtor's wife.  *See Order Granting in Part Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction* (Adv. Proc. No. 23-05005, Mar. 28, 2023, Docket No. 14); *Order Granting Chapter 11 Trustee's Amended Application for Ex Parte Prejudgment Remedy* (Adv. Proc. No. 23-05005, Mar. 28, 2023, Docket No. 15).

[7]    The Trustee has challenged Bravo Luck Limited's asserted interest in the Sherry Netherland apartment in his *Amended Adversary Complaint Against Bravo Luck and Qiang Guo Seeking (I) Invalidation of Purported Trust Agreement in Favor of Bravo Luck and, (II) in Alternative, Ruling that Debtor Effectuated Fraudulent Transfer in Favor of Bravo Luck and Qiang Guo Pursuant to Section 276 of New York Debtor and Creditor Law, Made Applicable by Section 544 of Bankruptcy Code* (Adv. Proc. No. 22-05027, Feb. 28, 2023, Docket No. 40).

[8]    PI Decision, ¶ 3 ("The Debtor also controls Saraca Media Group and a related entity 'GTV'").

[9]    *Id.* ¶ 7 ("The Debtor is the leader of The Whistleblower Movement, NFSC, ROLF, and Himalaya.").

[10]    *Id.* ("The Whistleblower Movement, NFSC, ROLF, GSeries, and Himalaya serve the purposes of the Debtor, serve as business vehicles for the Debtor, and their members are personally loyal to the Debtor.").

[11]    *Order Granting Motion to Hold Debtor in Contempt of Corporate Governance Order*, ¶¶ 1, 4 (Jan. 24, 2023, Docket No. 1372) ("Corp. Governance Contempt Order").

6

16.     Similarly, immediately prior to the filing of the Debtor's chapter 11 case in February 2022, in the Debtor's pre-petition litigation against PAX in New York state court (the "State Court Action"), Justice Ostrager found that it was the Debtor's practice to use shell companies to shield his assets from creditors.[12]  Justice Ostrager also found that the Lady May yacht was beneficially owned and controlled by the Debtor, despite title to the yacht being nominally held by HK USA, purportedly owned by Mei Guo.

17.     Previously, Judge Liman of the United States District Court for the Southern District of New York found, in a decision issued in 2021, that Eastern Profit Corporation Limited ("Eastern Profit"), another company purportedly held by the Debtor's daughter, was "in essence, a shell corporation" for the Debtor.[13]  The Debtor's counsel in connection with the litigation before Judge Liman, Hodgson Russ LLP, has also testified that the Debtor controlled Eastern Profit.

18.     Relatedly, a confidential witness declaration filed by the Trustee under seal at Docket No. 1327 (the "Confidential Witness Declaration") and incorporated by reference as an exhibit in support of this Complaint, establishes, among other things █████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████

---

[12]    Ex. 1, February 9, 2022 Decision and Order, at 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct.), NYSCEF Doc. No. 1181 (the "Final Contempt Decision").

[13]    *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL), 2021 WL 2554631 at *1, (S.D.N.Y. June 22, 2021) (the "Liman Decision").

19.    In sum, while this Complaint focuses on the Bombardier and the BVI Shell Companies, the Trustee believes that context regarding the Debtor's wide-ranging strategy of using shell companies to shield assets from creditors will assist the Court in understanding the Trustee's position.  Of course, the Trustee also expressly reserves his rights to pursue actions asserting claims against other entities at the appropriate time.

## II.    Bombardier Nominally Held by and Transferred Between Shell Companies

### A.    Bombardier Held by Head Win Group

### B.    Bombardier Transferred to Anton Development

21.    ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████.  Upon information and belief, Anton Development provided no material consideration in exchange for the Bombardier.

---

[14]   Ex. 2 ███████████████████████████████████
[15]   Ex. 28 ██████████████████

22.     Upon information and belief, at the time of the transfer of formal ownership of the Bombardier to Anton Development, Anton Development was nominally owned by the Debtor's bodyguard, Han Chunguang.

23.     On June 27, 2017, while Anton Development held title to the Bombardier, Han Chunguang transferred his purported ownership of Anton Development to Mei Guo for consideration of HK $1.00.  This amount represented a substantially undervalued price for Anton Development given that at the time Anton Development held title to the Bombardier (and potentially other valuable assets as well).

24.     Anton Development, registered in Hong Kong, is a shell company of the Debtor. Among other things:

   a.  Upon information and belief, Anton Development was controlled by the Debtor.

   b.  Upon information and belief, the Debtor placed certain of his employees, and, later, his daughter Mei Guo, as the directors of Anton Development.

   c.  Upon information and belief, the Debtor placed his assistant (Natasha Qu) and his bodyguard (Han Chunguang) as Anton Development's account signatories.

   d.  Upon information and belief, Anton Development's bank accounts at DBS Bank (Hong Kong) Limited were controlled by the Debtor.

   e.   Upon information and belief, the assets of Anton Development were, effectively, the Debtor's assets.

25.     Notably, Mei Guo obtained title to Anton Development on the exact same day (June 27, 2017) she received the nominal ownership of Debtor shell companies Eastern Profit (from Han Chunguang) and Hong Kong International Funds Investments Limited ("HK International") (from Natasha Qu) for consideration of HK $1.00.  Indeed, the history of Anton

Development—its ownership by the Debtor's bodyguard, Mr. Han, and subsequent transfer from Mr. Han to Mei Guo for HK $1.00 on June 27, 2017—is nearly identical to that of Eastern Profit, which, as noted above, was found by Judge Liman to be a shell company of the Debtor.

26.     In his deposition, taken on March 2, 2023, the Debtor was asked whether Anton Development, among other entities, was an asset "held in the name of [his] daughter but that [he] actually own[s] and control[s]."  In response, the Debtor asserted his Fifth Amendment right against self-incrimination.

### C.     Bombardier Transferred from Anton Development to Whitecroft

27.     ███████████████████████████████████████████████████
███████████████████████████████████████████████████ Upon information and belief, Whitecroft provided no material consideration in exchange for the Bombardier.

28.     Whitecroft is a BVI entity incorporated on February 2, 2018, with an address at 49th Floor Bank of China Tower Garden Road Central Hong Kong.[16]  Upon information and belief, this address has been used by the Debtor and other Debtor-affiliated individuals and entities, including Natasha Qu, Han Chunguang, Bravo Luck Limited, and Leading Shine Limited.  Mei Guo has at all relevant times been the sole member and director of Whitecroft.[17]  Upon information and belief, Whitecroft never had any business other than that of holding the Bombardier and never had any material assets other than the Bombardier.

29.     In his deposition, taken on March 2, 2023, the Debtor was asked whether Whitecroft, among other entities, was an asset "held in the name of your daughter but that you

---

[16]   *See* Ex. 5, Whitecroft Shore Limited Written Resolution, dated April 4, 2018, at 1.
[17]   Ex. 6, Whitecroft register of directors (LSE0000105); Ex. 7, Whitecroft register of members (LSE0000106).

actually own and control."  In response, he asserted his Fifth Amendment right against self-incrimination.

**III.   Sale of Bombardier for Over $10 Million in Summer of 2022**

30.    At her deposition on January 20, 2023, Mei Guo testified that in the summer of 2022 the Bombardier was sold for over $10 million (i.e., the Bombardier Proceeds) to a party whose name Mei Guo could not remember.  Mei Guo further testified that the Bombardier Proceeds were (at least as of the time of her deposition) held by her through a third party whose name she did not remember.  Thus, if Mei Guo's testimony is accurate in this respect, the Bombardier Proceeds were transferred to Mei Guo following the sale.

**IV.   Bombardier Was Beneficially Owned by Debtor**

31.    Abundant evidence demonstrates that, despite being nominally owned by shell companies, the Bombardier was at all times controlled and beneficially owned by the Debtor.

**A.    Debtor Financed Purchase of Bombardier**

32.    The Debtor, not Mei Guo, was the individual who financed the purchase of the Bombardier, ██████████████████████████████████████
████████████████████.[18]

33.    Mei Guo could not have financed the purchase of the Bombardier.  Mei Guo, born in 1989, would have been nineteen or twenty years old when the Bombardier was purchased in 2009.  Indeed, Mei Guo testified that she traveled on the Bombardier with her family as a teenager.[19]  It is implausible that Mei Guo had the financial wherewithal to finance the purchase of the Bombardier herself.

---

[18] *See* Ex. 3, ██████████████████████
[19] *See* Ex. 8, Mei Guo Deposition Transcript, dated January 20, 2023  ("Mei Guo Deposition Transcript") at 73:22-74:6 ("Q: Is it a plane you had traveled on with family? A: When I was a kid back in China, I traveled with my family on it a lot; Q: How old were you then? A: I was a teenager.")

34.     Nor could any member of the Debtor's family, other than the Debtor himself—whose immense wealth was well known—have financed the Bombardier.  At her deposition, Mei Guo could not identify any other individual in her family as a millionaire or billionaire.[20] Further, as noted above, the Confidential Witness Declaration establishes, among other things,

██████████████████████████████████████████████████████████████

###### B.     Debtor's Counsel Advise Him Regarding Bombardier

35.     In 2015, the Debtor's personal counsel was Williams & Connolly LLP ("Williams & Connolly").  █████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

36.     Williams & Connolly advised the Debtor in connection with numerous issues related to the Bombardier.  Documents produced by Williams & Connolly make it clear that the Bombardier belonged to the Debtor and no one else.  ██████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

[20]  *See id.* 49:15-21.
[21]  *See* Ex. 9, ██████████████████████████████████████  Ex. 10,

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

[22]  *See* Ex. 12, ██████████████████████
[23]  *See* Ex. 13, ████████████████████████████████████████



37. ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████

38.    Later, in September of 2018, at a time when the Debtor was being advised by

Hodgson Russ with respect to corporate and litigation matters. ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

24  Ex. 11 ███████████████████████████████
    ████████████████████████
25  *See* Ex. 14, ██████████████████████
26  Ex. 15, ██████████████
27  *See, e.g.*, Ex. 16, ████████████████████████
28  *See* Ex. 17, ████████████████████

13



31

39.     After receiving this advice, the Debtor did not pursue the proposed transactions, but instead transferred formal ownership of the Bombardier from Anton Development to Whitecroft in exchange for, upon information and belief, no consideration.  In addition, as discussed in pleadings filed in the HK USA Adversary Proceeding, the Debtor arranged for formal ownership of the Lady May to be transferred from HK International to HK USA for no consideration.

40.     

---

29  Ex. 17,
30
31  Ex. 4,
32  Ex. 17,

### C.    Debtor Boasted About Owning Private Jets

41.    Similarly, the Bombardier was one of the private planes the Debtor referenced in a 2017 *Vice News* interview in which he boasted that he owned "two private jets."[33]  As noted above, the Debtor owned two airplanes at the time, the Bombardier and the larger Airbus.

### D.    Debtor Asserts Fifth Amendment When Questioned About Bombardier

42.    In his deposition on March 2, 2023, the Debtor was asked whether "you placed your asset Bombardier Global XRS . . . a plane, with the serial number 9189, into Whitecroft Shore Limited."  The Debtor invoked the Fifth Amendment in response.[34]  The Debtor was then asked whether despite this plane being listed under the name of Whitecroft Shore Limited, he was the beneficial owner and controller of the plane.  Again, the Debtor asserted his Fifth Amendment rights.[35]

## V.    <u>Debtor Control of BVI Shell Companies</u>

### A.    Whitecroft

43.    As noted above, Whitecroft is a BVI entity incorporated on February 2, 2018, with an address at the 49th Floor of Bank of China Tower, Garden Road, Central Hong Kong.[36]  Upon information and belief, this address has been used by the Debtor and other Debtor-affiliated individuals and entities, including Natasha Qu, Han Chunguang, Bravo Luck Limited, and Leading Shine Limited.  Mei Guo has at all relevant times been the sole member and director

---

[33]   *See* VICE News, "Exiled Chinese Billionaire Uses YouTube to Wage a War on Corruption, YouTube" (original air date on HBO, Nov. 15, 2017), https://www.youtube.com/watch?v=LkOsgh5kcgQ (In this video, the Debtor describes various of his assets, including the Sherry Netherland Apartment ("I buy the apartment"), the Lady May ("my yacht"), the "most luxurious apartment in London," "two private jets," and "hundreds of race cars." The Debtor also comments on his great wealth generally, stating, "I have the wealthy life that everyone in the world dreams about," and "I don't have any material needs anymore.").

[34]   Ex. 18, Ho Wan Kwok Deposition Transcript dated March 2, 2023 ("<u>Debtor's Deposition Transcript</u>") at 91:20-23.

[35]   *See id.* at 91:24-92:4.

[36]   *See* Ex. 5, Whitecroft Shore Limited Written Resolution, dated April 4, 2018, at 1.

of Whitecroft.[37]  Upon information and belief, Whitecroft never had any business other than that of holding the Bombardier and never had any material assets other than the Bombardier—the Debtor's private jet beneficially owned by the Debtor.

### B.    Other BVI Shell Companies

44.    In addition to Whitecroft, Mei Guo has also identified herself as the purported beneficial owner of a series of other BVI entities that are, in reality, owned and controlled by the Debtor.  With respect to each of these entities: (i) the entity was, upon information and belief, previously held in the name of one of the Debtor's employees; (ii) the entity is, upon information and belief, a shell company of the Debtor; (iii) the entity's bank account was, upon information and belief, controlled by the Debtor; and (iv) when questioned about his control of the entity, the Debtor asserted his Fifth Amendment right against self-incrimination.  More specifically:

a.    **Allied Capital Global Limited ("Allied")** is a BVI entity incorporated in February 2015 that, upon information and belief, as of March 2015, had as its sole purported equity holder and director an individual named Su Yan, who was an employee of the Debtor.  Upon information and belief, Allied was used as a shell company by the Debtor in connection with a share placement fraud scheme that took place in 2015 related to the Debtor's purchase of securities of Haitong Securities Company Limited on the Hong Kong Stock Exchange.  Upon information and belief, Natasha Qu, the Debtor's assistant, served as the authorized signatory for Allied's bank accounts until May 2015, when she was replaced by the Debtor's employee, Yu Yong, and his bodyguard, Han Chunguang. Upon information and belief, Allied's bank account at China Minsheng Banking

---

[37]    Ex. 6, Whitecroft register of directors (LSE0000105); Ex. 7, Whitecroft register of members (LSE0000106).

Corp., Ltd., Hong Kong Branch, was controlled by the Debtor.  On July 4, 2017, Mei Guo signed BVI due diligence forms identifying herself as the purported "beneficial owner" of Allied.[38]  In his deposition, taken on March 2, 2023, the Debtor was asked whether Allied, among other entities, was an asset "held in the name of your daughter but that you actually own and control," in response to which the Debtor asserted his Fifth Amendment right against self-incrimination.[39]

b.  **Creative Apex Investments Limited ("_Creative_")** is a BVI entity incorporated in October 2014 that, upon information and belief, as of March 2015, had Natasha Qu, the Debtor's assistant, as its sole purported equity holder and director.  Upon information and belief, Creative was used as a shell company by the Debtor in connection with a share placement fraud scheme that took place in 2015 related to the Debtor's purchase of securities of Haitong Securities Company Limited on the Hong Kong Stock Exchange.  Upon information and belief, Natasha Qu served as the authorized signatory for Creative's bank accounts until May 2015, when she was replaced by the Debtor's employee, Yu Yong, and his bodyguard, Han Chunguang.  Upon information and belief, Creative's bank account at China Minsheng Banking Corp., Ltd., Hong Kong Branch, was controlled by the Debtor.  On July 4, 2017, Mei Guo signed BVI due diligence forms identifying herself as the purported beneficial owner of Creative.[40]  In his deposition, taken on March 2, 2023, the Debtor was asked whether Creative, among other entities, was an asset "held in the name of your daughter but that you actually own and control," in

---

[38]   _See_ Ex. 19, Vistra Due Diligence Form – Allied Capital Global Limited.
[39]   Ex. 18, Debtor's Deposition Transcript at 49:15-50:7
[40]   _See_ Ex. 20, Vistra Due Diligence Form – Creative Apex Investments.

response to which the Debtor asserted his Fifth Amendment right against self-incrimination.[41]

c. **Crystal Breeze Investments Limited ("Crystal")** is a BVI entity incorporated in February 2015 that, upon information and belief, as of March 2015, had as its sole purported equity holder and director an individual named Sun Ailing, who was an employee of the Debtor. Upon information and belief, Crystal was used as a shell company by the Debtor in connection with a share placement fraud scheme that took place in 2015 related to the Debtor's purchase of securities of Haitong Securities Company Limited on the Hong Kong Stock Exchange. Upon information and belief, Natasha Qu, the Debtor's assistant, served as the authorized signatory for Crystal's bank accounts until May 2015, when she was replaced by the Debtor's employee, Yu Yong, and his bodyguard, Han Chunguang. Upon information and belief, Crystal's bank account at China Minsheng Banking Corp., Ltd., Hong Kong Branch, was controlled by the Debtor. On July 4, 2017, Mei Guo signed BVI due diligence forms identifying herself as the purported "beneficial owner" of Crystal.[42] In his deposition, taken on March 2, 2023, the Debtor was asked whether Crystal, among other entities, was an asset "held in the name of your daughter but that you actually own and control," in response to which the Debtor asserted his Fifth Amendment right against self-incrimination.[43]

d. **Elite Well Global Limited ("Elite Well")** is a BVI entity incorporated in February 2015 that, upon information and belief, as of March 2015, had as its sole

---

[41] Ex. 18, Debtor's Deposition Transcript at 49:15-50:7.
[42] *See* Ex. 21, Vistra Due Diligence Form – Crystal Breeze Investments Limited.
[43] Ex. 18, Debtor's Deposition Transcript at 49:15-50:7

purported equity holder and director an individual named Sun Li, who was an employee of the Debtor.  Upon information and belief, Elite Well was used as a shell company by the Debtor in connection with a share placement fraud scheme that took place in 2015 related to the Debtor's purchase of securities of Haitong Securities Company Limited on the Hong Kong Stock Exchange.  Upon information and belief, Natasha Qu, the Debtor's assistant, served as the authorized signatory for Elite Well's bank accounts until May 2015, when she was replaced by the Debtor's employee, Yu Yong, and his bodyguard, Han Chunguang. Upon information and belief, Elite Well's bank account at China Minsheng Banking Corp., Ltd., Hong Kong Branch, was controlled by the Debtor.  On July 4, 2017, Mei Guo signed BVI due diligence forms identifying herself as the purported "beneficial owner" of Elite Well.[44]  In his deposition, taken on March 2, 2023, the Debtor was asked whether Elite Well, among other entities, was an asset "held in the name of your daughter but that you actually own and control," in response to which the Debtor asserted his Fifth Amendment right against self-incrimination.[45]

e. **Globalist International Limited ("Globalist")** is a BVI entity incorporated in February 2015 that, as of March 2015, had as its sole purported equity holder and director an individual named Sun Yanfeng, who was an employee of the Debtor. Upon information and belief, Globalist was used as a shell company by the Debtor in connection with a share placement fraud scheme that took place in 2015 related

---

[44]   *See* Ex. 22, Vistra Due Diligence Form – Elite Well Global Limited.
[45]   Ex. 18, Debtor's Deposition Transcript at 49:15-50:7

to the Debtor's purchase of securities of Haitong Securities Company Limited on the Hong Kong Stock Exchange.  Upon information and belief, Natasha Qu, the Debtor's assistant, served as the authorized signatory for Globalist's bank accounts until May 2015, when she was replaced by the Debtor's employee, Yu Yong, and his bodyguard, Han Chunguang.  Upon information and belief, Globalist's bank account at China Minsheng Banking Corp., Ltd., Hong Kong Branch, was controlled by the Debtor.  On July 4, 2017, Mei Guo signed BVI due diligence forms identifying herself as the purported "beneficial owner" of Globalist.[46]  In his deposition, taken on March 2, 2023, the Debtor was asked whether Globalist, among other entities, was an asset "held in the name of your daughter but that you actually own and control," in response to which the Debtor asserted his Fifth Amendment right against self-incrimination.[47]

f. **Infinitum Developments Limited ("Infinitum")** is a BVI entity incorporated in February 2015 that, as of March 2015, had as its sole purported equity holder and director an individual named Niu Runze, who was an employee of the Debtor. Upon information and belief, Infinitum was used as a shell company by the Debtor in connection with a share placement fraud scheme that took place in 2015 related to the Debtor's purchase of securities of Haitong Securities Company Limited on the Hong Kong Stock Exchange.  Upon information and belief, Natasha Qu, the Debtor's assistant, served as the authorized signatory for Infinitum's bank accounts until May 2015, when she was replaced by the Debtor's employee, Yu Yong, and

---

[46]   *See* Ex. 23, Vistra Due Diligence Form – Globalist International Limited.
[47]   Ex. 18, Debtor's Deposition Transcript at 49:15-50:7

his bodyguard, Han Chunguang.  Upon information and belief, Infinitum's bank
account at China Minsheng Banking Corp., Ltd., Hong Kong Branch, was
controlled by the Debtor.  On July 4, 2017, Mei Guo signed BVI due diligence
forms identifying herself as the purported "beneficial owner" of Infinitum.[48]  In his
deposition, taken on March 2, 2023, the Debtor was asked whether Infinitum,
among other entities, was an asset "held in the name of your daughter but that you
actually own and control," in response to which the Debtor asserted his Fifth
Amendment right against self-incrimination.[49]

g. **Noble Fame Global Limited ("<u>Noble Fame</u>")** is a BVI entity incorporated in
February 2015 that, as of March 2015, had as its sole purported equity holder and
director an individual named Ren Meizi, who was an employee of the Debtor.
Upon information and belief, Noble Fame was used as a shell company by the
Debtor in connection with a share placement fraud scheme that took place in 2015
related to the Debtor's purchase of securities of Haitong Securities Company
Limited on the Hong Kong Stock Exchange.  Upon information and belief,
Natasha Qu, the Debtor's assistant, served as the authorized signatory for Noble
Fame's bank accounts until May 2015, when she was replaced by the Debtor's
employee, Yu Yong, and his bodyguard, Han Chunguang.  Upon information and
belief, Noble Fame's bank account at China Minsheng Banking Corp., Ltd., Hong
Kong Branch, was controlled by the Debtor.  On July 4, 2017, Mei Guo signed
BVI due diligence forms identifying herself as the purported "beneficial owner" of

---

[48] *See* Ex. 24, Vistra Due Diligence Form – Infinitum Developments Limited.
[49] Ex. 18, Debtor's Deposition Transcript at 49:15-50:7.

Noble Fame.[50]  In his deposition, taken on March 2, 2023, the Debtor was asked

whether Noble Fame, among other entities, was an asset "held in the name of your

daughter but that you actually own and control," in response to which the Debtor

asserted his Fifth Amendment right against self-incrimination.[51]

h. **Rosy Acme Ventures Limited ("Rosy Acme")** is a BVI entity incorporated in

May 2014 that, upon information and belief, as of October 2014, had Han

Chunguang, the Debtor's bodyguard, as its sole purported equity holder, director,

and account signatory.  Upon information and belief, Rosy Acme is a shell

company controlled by the Debtor that the Debtor used to execute fund transfers

on his behalf.  In addition, upon information and belief, Rosy Acme's account at

China Construction Bank (Asia) Corporation Limited was controlled by the

Debtor.  On July 4, 2017, Mei Guo signed BVI due diligence forms identifying

herself as the beneficial owner of Rosy Acme.[52]  In his deposition, taken on March

2, 2023, the Debtor was asked whether, among other entities, Rosy Acme was an

asset "held in the name of your daughter but that you actually own and control," in

response to which the Debtor asserted his Fifth Amendment right against self-

incrimination.[53]

## VI.   Mei Guo's Deposition Testimony

45.    Mei Guo, though purporting to own the BVI Shell Companies, has, according to

her own testimony, very little knowledge about them or involvement with them, further

---

[50]   *See* Ex. 25, Vistra Due Diligence Form – Allied Capital Global Limited.
[51]   Ex. 18, Debtor's Deposition Transcript at 49:15-50:7.
[52]   Ex. 27, Vistra Due Diligence Form – Noble Fame Global Limited.  *See also* Ex. 26, Rosy Acme Ventures Limited Register of Members.
[53]   *See* Ex. 18, Debtor's Deposition Transcript at 49:15-50:7.

22

demonstrating that she holds such entities merely as the nominee for their real owner, the Debtor. For example, at her deposition held in January 2023, Mei Guo testified that, with the exception of HK USA, she did not remember how many entities she owned,[54] what their names were,[55] or who established them.[56] She also testified that the decision to transfer the entities to her was a decision made by herself and two of her uncles whose names she did not know.[57]

46.    At her deposition, Mei Guo initially testified that the only asset owned by her entities was the *Lady May.* Later, after being pressed further, she admitted that Whitecroft had held the Bombardier and sold it in the summer of 2022. As noted above, Mei Guo testified that the Bombardier was sold to a party whose name she could not remember, in exchange for the Bombardier Proceeds.[58] Mei Guo further claimed that she was the owner of the Bombardier Proceeds, though she did not know where they were being held.[59] According to Mei Guo, the Bombardier Proceeds were held by her through a third party whose identity she did not know, but if she needed the funds, she could ask her brother.[60]

## VII.    Mei Guo Refuses to Disclose Assets

47.    Following her deposition, on March 13, 2023, Mei Guo filed a declaration in which she stated that she "contacted ACASS, the outside company that assisted with the sale of airplane referenced during my deposition" regarding documents responsive to the Trustee's document requests.[61] Mei Guo failed to produce such documents or provide any other

---

[54]    Ex. 8, Mei Guo Deposition Transcript at 60:16-22 (Q: "[H]ow many entities do you believe that you own other than Hong Kong International USA? A: I don't remember.").

[55]    *Id.* at 61:4-6. (Q: "What are their names?", A: "I can't remember now.").

[56]    *Id.* at 63:3-5 (Q: "Who were they established by?", A: "I don't remember.").

[57]    *Id.* at 66-1-13 (Q: "Specifically, which people made the decision…to transfer these companies that did not have assets and operations to your ownership?", A: "My uncles and also myself.").

[58]    *Id.* at 70:16-19 (Q: "Who did you sell the plane to?", A: "I can't remember the party's name that I sold it to.").

[59]    Ex. 8, Mei Guo Deposition Transcript at 71:19-72:14 (Q: "And once you sold it, where did those $10 million in funds go?", A: "Now it's at somewhere with a third party.").

[60]    *Id.*

[61]    *Declaration of Mei Guo* (Mar. 13, 2023, Docket No. 1543), ¶ 56.

information.  In response to the Court's order in the HK USA Adversary Proceeding requiring

that Mei Guo disclose her assets [Adv. Proc. 22-05003, Mar. 17, 2023, Docket No. 142], Mei

Guo filed a declaration of counsel stating that "Ms. Guo would, at this time, invoke her privilege

against self-incrimination pursuant to the Fifth Amendment to the United States Constitution."

[Adv. Proc. 22-05003, Mar. 27, 2023, Docket No. 173-1].

## **FIRST CLAIM**

### **(Declaratory Judgment that Debtor Beneficially Owned Bombardier and Ordering Turnover of Bombardier Proceeds or Value Thereof to Trustee)**

48.    The Trustee repeats and realleges the allegations contained in paragraphs 1-47.

49.    As discussed in more detail above, the Bombardier was beneficially owned by the

Debtor.  Among other things, the Debtor paid for the Bombardier and held it in shell companies

he controlled: (i) Head Win Group, held in the Debtor's name; (ii) Anton Development, held in

the name of the Debtor's bodyguard, Han Chunguang, and later in the name of his daughter, Mei

Guo; and (iii) Whitecroft, held in the name of Mei Guo.  In addition, the Debtor's counsel at

Williams & Connolly and later Hodgson Russ handled legal issues related to the Bombardier

pursuant to the instructions of the Debtor and his representatives.  Among other things, Williams

& Connolly advised the Debtor in connection with disputes and negotiations with airplane

management companies related to the Bombardier, and Hodgson Russ advised the Debtor in

connection with the Debtor's proposal to transfer the Bombardier from Anton Development to

another entity.  Communications produced by these law firms make clear that everyone involved

understood the Bombardier to belong to the Debtor.  The Debtor even boasted in a television

interview regarding his ownership of the Bombardier and, when asked in his March 2023

deposition about his ownership of the Bombardier, the Debtor invoked the Fifth Amendment in

response.

50.     To the extent Mei Guo or shell companies held title to the Bombardier, they did so in name only, with the Debtor acting at all times as the plane's true beneficial owner.

51.     Because the Bombardier was beneficially owned by the Debtor, it was property of the Debtor's chapter 11 estate, and the proceeds of its sale following the Petition Date constitute property of the estate pursuant to section 541(a)(6) of the Bankruptcy Code (defining as property of estate all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate").

52.     Based on these facts and circumstances, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that the proceeds of the sale of the Bombardier (the "Bombardier Proceeds") held by Mei Guo constitute property of the Debtor's chapter 11 estate to be administered by the Trustee and (2) ordering Mei Guo to surrender the Bombardier Proceeds or the value thereof to the Trustee, which order will constitute a personal money judgment against Mei Guo.[62]

## SECOND CLAIM

**(Avoidance of Postpetition Transfer)**
**(Asserted in the Alternative to First Claim)**

53.     The Trustee repeats and realleges the allegations contained in paragraphs 1-47.

54.     In the alternative, if the Court does not rule in favor of the Trustee in connection with the First Claim, the Trustee asserts that the Bombardier constituted property of the Debtor's chapter 11 estate at the time of its sale in the summer of 2022 in exchange for the Bombardier Proceeds.  After the sale, the Bombardier Proceeds were transferred to the Debtor's daughter (the "2022 Transfer"), who stated in her deposition that she owned such proceeds.  This post-petition transfer of the Bombardier Proceeds is avoidable pursuant to section 549 of the Bankruptcy Code

---

[62]     The Trustee reserves all his rights in connection with asserting avoidance actions against the transferee of the Bombardier once the transferee's identity has been ascertained.

because the Bombardier was owned the Debtor, the Bombardier Proceeds were property of the estate, and the transfer of the Bombardier Proceeds to Mei Guo was not authorized by the Court.

55.    Because the transfer of the Bombardier Proceeds is avoidable pursuant to section 549, the Bombardier Proceeds or the value thereof may be recovered by the Trustee under section 550 of the Bankruptcy Code.

56.    Accordingly, the Trustee seeks a ruling, pursuant to sections 549 and 550 of the Bankruptcy Code, (1) avoiding the 2022 Transfer and (2) ordering Mei Guo to surrender the Bombardier Proceeds or the value thereof to the Trustee, which order will constitute a personal money judgment against Mei Guo.

## THIRD CLAIM

**(Avoidance of Actual Fraudulent Transfer)**
**(Asserted in the Alternative to First Claim or Second Claim)**

57.    The Trustee repeats and realleges the allegations contained in paragraphs 1-47.

58.    In the alternative, assuming that the Court does not rule in favor of the Trustee in connection with the First Claim or the Second Claim, the Trustee asserts an actual fraudulent transfer claim against Mei Guo pursuant to Section 276 of the New York Debtor and Creditor Law,[63] made applicable by section 544 of the Bankruptcy Code, based on the transfer of Anton Development to Mei Guo on June 27, 2017.

59.    More specifically, as supported by the facts plead herein:

   a. Prior to June 27, 2017, Anton Development was beneficially owned by the Debtor through his bodyguard, Han Chunguang.

---

[63]    This was the governing New York statute on the date of the transfer.

  b.  Thus, prior to June 27, 2017, the Debtor beneficially owned Anton Development
      and, with it, the Bombardier to which Anton Development then held title.

  c.  On June 27, 2017, Anton Development was transferred to Mei Guo for
      consideration of HK $1.00 (the "2017 Transfer").

60.    The 2017 Transfer is a fraudulent transfer under New York law.  Pursuant to
section 550 of the Bankruptcy Code, the value of Anton Development at the time of its transfer
may be recovered from Mei Guo as transferee of such value.

61.    The analysis of a debtor's intent to hinder, delay, or defraud under New York law
is identical to the analysis under section 548 of the Bankruptcy Code.[64]  A claim of actual intent
to defraud under section 548(a)(1)(A) of the Bankruptcy Code requires allegations that the
debtor-transferor made a transfer or incurred an obligation with "actual intent" to "hinder, delay
or defraud" a past or future creditor.[65]

62.    "Because of the difficulty in proving actual intent to hinder, delay, or defraud in
making its case, a party can rely on the 'badges of fraud,' which are 'circumstances so
commonly associated with fraudulent transfers that their presence gives rise to an inference of
intent.'"[66]

63.    Examples of 'badges of fraud' include, *inter alia*: (1) concealing facts and false
pretenses; (2) an unconscionable discrepancy in consideration received in exchange for the value

---

[64]  *In re Combes*, 382 B.R. 186, 193-94 (Bankr. E.D.N.Y. 2008) ("The analysis of the debtor's intent to hinder, delay, or defraud under [section] 548 of the Bankruptcy Code and under New York law is identical.").  The debtor-transferor's intent is at issue in such claims, not the transferee's.  *In re LXEng LLC*, 607 B.R. 67, 91 (Bankr. D. Conn. 2019).

[65]  *In re Integrity Graphics, Inc.*, 623 B.R. 21, 29-30 (Bankr. D. Conn. 2020).

[66]  *In re Jie Xiao*, 608 B.R. 126, 157 (Bankr. D. Conn. 2019); *see also In re Andersen*, 166 B.R. 516, 529 (Bankr. D. Conn. 1994) ("In recognition of that reality, courts have held that fraudulent intent may be inferred from the circumstances surrounding the transfer.  Indirect evidence of fraud may consist of the circumstances of the transfer and the conduct and action of the parties to the alleged fraudulent transfer with respect to the possession, management and control of the premises.") (emphasis added).

of the property transferred; (3) creating a closely-held corporation for property receipt; (4) closeness in relationship between the parties; (5) retaining the property in question for benefit or use; (6) the financial condition of the transferor and transferee both before and after the transfer(s); (7) repeated patterns or cumulative effect of courses of conduct post-insolvency or financial troubles; and (8) the timeline of events. . . The transfer of property to a spouse is a 'classic' badge of fraud. . . . Asset shifting to different corporate entities wholly owned or 'so closely assimilated' by the debtor is an additional badge of fraud.[67]

64.     Facts discussed in this Amended Complaint demonstrate numerous of the badges of fraud commonly associated with fraudulent transfers.  These include, among others:

a.  "Concealing facts."  The Debtor and Mei Guo have both failed to provide information regarding the Bombardier and Anton Development and subsequently asserted their Fifth Amendment right against self-incrimination in response to questioning by the Trustee.

b.  "An unconscionable discrepancy in consideration received in exchange for the value of the property transferred."  In the 2017 Transfer, Mei Guo received Anton Development, which was the holder of the Bombardier (an aircraft that five years later was sold for over $10 million) along with other assets, for HK $1.00.

c.  "Closeness in relationship between the parties."  The Debtor and his daughter, Mei Guo, have a close father-daughter relationship.

d.  "Retaining the property in question for benefit or use."  Following the 2017 Transfer, the Debtor still treated the asset of Anton Development, the Bombardier,

---

[67]  *In re Jie Xiao*, 608 B.R. at 157.

as his own.  The Debtor continued to use the Bombardier and provided instructions to his counsel with respect to the transfer of the Bombardier.

65.     The Debtor's fraudulent conduct in this instance is consistent with his *modus operandi*, as found by Justice Ostrager, of using shell companies to hold assets out of the reach of creditors.

66.     At all relevant times, the Debtor was indebted to one or more creditors.  Such creditors could have pursued the relief sought in this Complaint by the Trustee in exercise of such creditors' rights.

67.     At all relevant times, the Debtor's creditors would have had no reason to suspect that the 2017 Transfer had occurred or that the Debtor had used the 2017 Transfer to effectuate a fraudulent transfer.

68.     Accordingly, assuming that the relief requested in the First Claim is not granted, the Trustee seeks a ruling, pursuant to Section 276 of the New York Debtor and Creditor Law, and sections 544 and 550 of the Bankruptcy Code, ordering Mei Guo to surrender to the Trustee the value of Anton Development at the time it was transferred to her on June 27, 2017, which order will constitute a personal money judgment against Mei Guo.

## <u>FOURTH CLAIM</u>

### (Declaratory Judgment that Debtor Is True Beneficial Owner of BVI Shell Companies and Ordering Turnover of Ownership of Mei Guo BVI Entities to Trustee)

69.     The Trustee repeats and realleges the allegations contained in paragraphs 1-47.

70.     The facts set forth herein demonstrate that the Debtor at all relevant times remained in control the BVI Shell Companies, despite their nominal ownership by Mei Guo.

29

71.     One of the BVI Shell Companies is Whitecroft, whose only business, upon information and belief, was that of owning the Bombardier—the private jet beneficially owned by the Debtor.  Moreover, Whitecroft's address is at the 49th Floor of Bank of China Tower, Garden Road, Central Hong Kong, an address used by the Debtor and other Debtor-affiliated individuals and entities, and Mei Guo has at all relevant times been the sole member and director of Whitecroft.

72.     With respect to the other BVI Shell Companies identified in the Complaint, Mei Guo has also identified herself as the purported beneficial owner of each of these entities, each of which, upon information and belief, (i) was previously held in the name of one of the Debtor's employees; (ii) is a shell company of the Debtor; (iii) had a bank account controlled by the Debtor.  In addition, when questioned about his control of these entities, the Debtor asserted his Fifth Amendment right against self-incrimination.

73.     Under BVI law, these facts and circumstances warrant the conclusion that Mei Guo was a mere nominee or "bare trustee," considered to hold legal title to ownership interests in a company only for the benefit of the party that controls the company as the company's true beneficial owner—here, Kwok.  *See e.g.*, *IRC v Silverts Ltd,* [1951] Ch 521, CA (describing bare trustee of shares in a company as a "mere name or 'dummy' for the true owner").

74.     Therefore, the Trustee seeks a ruling pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that the ownership interests in the BVI Shell Companies purportedly held by Mei Guo are property of the Debtor's chapter 11 estate and (2) ordering the surrender of such ownership interests, and all related rights of corporate control, to the Trustee.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that judgment be entered as follows:

1.      On the First Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that the Bombardier Proceeds are property of the Debtor's chapter 11 estate to be administered by the Trustee and (2) ordering Mei Guo to surrender the Bombardier Proceeds or the value thereof to the Trustee, which order will constitute a personal money judgment against Mei Guo;

2.      On the Second Claim, an order, pursuant to sections 549 and 550 of the Bankruptcy Code, ordering Mei Guo to surrender the Bombardier Proceeds or the value thereof to the Trustee, which order will constitute a personal money judgment against Mei Guo;

3.      On the Third Claim, an order, pursuant to Section 276 of the New York Debtor and Creditor Law, and sections 544 and 550 of the Bankruptcy Code, ordering Mei Guo to surrender to the Trustee the value of Anton Development at the time it was transferred to her on June 27, 2017, which order will constitute a personal money judgment against Mei Guo;

4.      On the Fourth Claim, an order, pursuant to sections 541, 542, and 544 of the Bankruptcy Code (1) declaring that the ownership interests in the BVI Shell Companies purportedly held by Mei Guo are property of the Debtor's chapter 11 estate and (2) ordering the surrender of such ownership interests and all related rights of corporate control to the Trustee;

5.      Reasonable attorneys' fees, costs, and expenses incurred in this action; and

31

6.      Such other and further relief as the Court may deem just, proper, or equitable under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

Dated:  May 16, 2023                    LUC A. DESPINS
          New York, New York            CHAPTER 11 TRUSTEE


                              By: /s/ *Douglass Barron*
                                  Avram E. Luft (admitted *pro hac vice*)
                                  Douglass Barron (admitted *pro hac vice*)
                                  PAUL HASTINGS LLP
                                  200 Park Avenue
                                  New York, New York 10166
                                  (212) 318-6000
                                  aviluft@paulhastings.com
                                  douglassbarron@paulhastings.com

                                       *and*

                                  Nicholas A. Bassett (admitted *pro hac vice*)
                                  PAUL HASTINGS LLP
                                  2050 M Street NW
                                  Washington, D.C. 20036
                                  (202) 551-1902
                                  nicholasbassett@paulhastings.com

                                       *and*

                                  Douglas S. Skalka (ct00616)
                                  Patrick R. Linsey (ct29437)
                                  NEUBERT, PEPE & MONTEITH, P.C.
                                  195 Church Street, 13th Floor
                                  New Haven, Connecticut 06510
                                  (203) 781-2847
                                  dskalka@npmlaw.com
                                  plinsey@npmlaw.com

                                  *Counsel for the Chapter 11 Trustee*