**Exhibit 18**

1

2  UNITED STATES BANKRUPTCY COURT

3  DISTRICT OF CONNECTICUT

4  BRIDGEPORT DIVISION

5  ---------------------------------------X

6  In Re:
                                        Chapter 11
7          HO WAN KWOK,                  Case No.
                                        22-50073 (JAM)
8                    Debtor.

9  ---------------------------------------X

10

11      REMOTE VIDEOTAPED DEPOSITION OF HO WAN KWOK

12              Thursday, March 2, 2023

13

14

15

16  Reported by:

17  Angela M. Shaw-Crockett, CCR, CRR, RMR, CSR

18  Job 222883

19

20

21

    22

23

24

25

1

2

3                    March 2, 2023

4                    10:28 a.m.

5

6    REMOTE VIDEOTAPED DEPOSITION OF HO WAN KWOK,

7    before Angela M. Shaw-Crockett, a Certified Court

8    Reporter, Certified Realtime Reporter, Registered

9    Merit Reporter and Notary Public of the States of

10    New York, New Jersey, and Connecticut.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              H. Kwok

2     R E M O T E   A P P E A R A N C E S:

3     PAUL HASTINGS LLP
              Attorneys for TRUSTEE
4             200 Park Avenue
              New York, New York  10166
5
      BY:  AVRAM LUFT, ESQ.
6          DOUGLASS BARRON, ESQ.
           WILL FARMER, ESQ.
7

8     CHIESA SHAHINIAN & GIANTOMASI PC
              Attorneys for HK INTERNATIONAL
9             MEI GUO
              One Boland Drive
10            West Orange, New Jersey 07052

11    BY:  PATRICIA BERGAMASCO, ESQ.

12

13    ZEISLER & ZEISLER P.C.
              Attorneys for HK INTERNATIONAL
14            MEI GUO
              10 Middle Street
15            Bridgeport, Connecticut  06604

16    BY:  AARON ROMNEY, ESQ.

17

18    ALSO PRESENT:  Matthew Chin-Quee, The Videographer

19                   Luyi Song, Law Clerk, Paul Hastings

20                   Jingyi Wang, Mandarin Interpreter

21                   Una Wilkinson, Mandarin Check Interpreter

22           **              **              **

23

24

25

1                    H. Kwok

2         THE VIDEOGRAPHER:  Good morning.  My name

3     is Matthew Chin-Quee.  I'm a legal videographer

4     in association with TSG Reporting.  I won't be

5     in the same room with the witness.  I'll record

6     the deposition remotely.  The reporter,

7     Angie Shaw-Crockett also will not be in the

8     same room and will swear the witness remotely.

9         Do parties stipulate to the validity of

10    the video recording and remote swearing and

11    that it will be admissible in the courtroom as

12    if it had been taken following Rule 30 of the

13    Federal Rules of Civil Procedures and the

14    state's rules where the case is pending?

15        MR. LUFT:  This is Avi Luft on behalf of

16    the Chapter 11 trustee, and we agree.

17        MR. ROMNEY:  Yes, Aaron Romney,

18    Zeisler & Zeisler on behalf of the debtor, the

19    witness.  We agree.

20        MS. BERGAMASCO:  Patricia Bergamasco on

21    behalf of Mei Guo and HK International.

22        THE VIDEOGRAPHER:  Thank you.

23        This is the --

24        MR. LUFT:  You agree?

25        MS. BERGAMASCO:  Yes.  My apologies.

1                    H. Kwok

2         THE VIDEOGRAPHER:  Thank you.

3         This is the start of tape number 1 of the

4    videotaped deposition of Ho Wan Kwok in the

5    matter In Re: Ho Wan Kwok in the United States

6    Bankruptcy Court District of Connecticut

7    Bridgeport Division, number 22-50073 (JAM).

8    The parties have agreed to appear remotely on

9    March 2, 2023, at approximately 10:28 a.m.

10        My name is Matthew Chin-Quee from

11   TSG Reporting, and I'm the legal video

12   specialist.  The court reporter is

13   Angie Shaw-Crockett, in association with

14   TSG Reporting.

15        Will all counsel please introduce

16   yourself.

17        MR. LUFT:  Hi.  This is Avi Luft of

18   Paul Hastings.  I represent the Chapter 11

19   trustee in, in Re: Ho Wan Kwok.  Along with me

20   are my colleagues Douglass Barron, Will Farmer,

21   and Luyi Song, who is a law clerk.

22        MR. ROMNEY:  Aaron Romney,

23   Zeisler & Zeisler.  I represent the Debtor

24   Mr. Kwok in the main bankruptcy case.  Also

25   representing him in his capacity as a witness

1                          H. Kwok

2        today in this adversary proceeding.  I do also

3        have an appearance on behalf of Mei Guo and

4        HKI USA in this adversary proceeding.

5              MS. BERGAMASCO:  This is Patricia

6        Bergamasco from Zeisler & Zeisler, representing

7        Mei Guo and HK International USA in the

8        adversary proceeding.

9              THE VIDEOGRAPHER:  Thank you.

10             Will the court reporter please swear in

11        the Interpreter and the witness.

12   J I N G Y I   W A N G,

13           having been first duly sworn by a Notary

14           Public within and for the State of New York,

15           translated the questions from

16           English to Mandarin and the answers

17           from Mandarin to English under oath as

18           follows:

19    Ho Wan Kwok, having been called as a witness, having been

20   first duly sworn (through an Interpreter),  was examined and

21   testified as follows:

22             THE WITNESS:  Thank you.

23             THE INTERPRETER:  And just a note from the

24        Interpreter.  The Interpreter has received the

25        link, and the realtime is now working.

1                        H. Kwok

2               MR. LUFT:  Great.

3    EXAMINATION

4    BY MR. LUFT:

5         Q.   Good morning, Mr. Kwok.  How are you?

6         A.   I'm very well, Counsel.  How are you this

7    morning?

8         Q.   I'm well.  Thank you for asking.

9               Before we start, I'm going to read through

10   the terms that counsel has agreed to with regard to

11   this remote deposition today.  There are multiple,

12   so I think what I will do, I will pause after each

13   one so that the Interpreter has an opportunity to

14   just translate it.  I'm not looking for an answer,

15   I'm just more just stating what they are.  But I

16   think that will be easier.

17              Trustee has agreed to take the debtor's

18   deposition remotely today based on the following

19   agreements agreed to by debtor's counsel, on his

20   behalf:  First, HK USA and Ms. Mei Guo no longer

21   intend to call the debtor to offer testimony on

22   their behalf and have removed him from their list of

23   intended hearing witnesses.

24              The taking of this deposition remotely is

25   based on the understanding that other than questions

1                           H. Kwok

2    regarding Mr. Kwok's name, his address, and

3    identifying who his family members are, it is the

4    debtor's intention to assert his Fifth Amendment

5    rights to any questions posed at this deposition.

6             If the debtor attempts to assert -- to

7    not -- excuse me.  Let me strike that.

8             If the debtor attempts to not assert his

9    Fifth Amendment rights and, instead, answer the

10   questions, this is a breach of the agreement to

11   conduct his deposition remotely, and his deposition

12   will immediately be taken in person.  Both sides are

13   clear that deciding to not answer a question by

14   asserting his Fifth Amendment rights is not an

15   option for the debtor to consider at this time.

16            The remote deposition is being offered in

17   good faith because the debtor requested it, not

18   because of need or the trustee's acknowledgment that

19   a remote deposition of the debtor is appropriate

20   here or going forward.  And any attempt to

21   substantively answer and not assert his Fifth

22   Amendment rights is a breach of this agreement.

23            I'm sorry.  We're going to need to go off

24   the record.  My computer just crashed.  I apologize.

25            THE VIDEOGRAPHER:  We're going off the

1                   H. Kwok

2   record at 10:37 a.m.

3        (Recess.)

4        THE VIDEOGRAPHER:  We're back on the

5   record at 10:45 a.m.

6        MR. LUFT:  I will keep going with the

7   stipulations.  Sorry for the technical issue.

8        The debtor must be physically within the

9   jurisdiction of the court, meaning within

10  100 miles of the court, when the deposition is

11  taken.  No one other than the debtor's

12  interpreter and his attorney from

13  Zeisler & Zeisler may be in the room with the

14  debtor when he is deposed.  The debtor may not

15  communicate with anyone other than his counsel

16  from Zeisler & Zeisler when the deposition is

17  on the record.

18       The debtor's interpreter is not to

19  communicate with the debtor while we are on the

20  record.  The only interpreter is the official

21  one, Ms. Jingyi Wang.  The debtor's interpreter

22  is there to help the debtor communicate with

23  Zeisler & Zeisler on breaks and to advise

24  Zeisler & Zeisler regarding the translation

25  while the deposition is ongoing.  The debtor's

1                         H. Kwok

2    interpreter is not to speak on the record.

3         The debtor is to have access to no devices

4    that can send or receive messages while the

5    deposition is on the record.  The debtor is not

6    to send or read messages during the deposition

7    while it is on the record.

8         Are we -- all counsel, are we all still in

9    agreement as to these stipulated agreements?

10        MR. ROMNEY:  Yes.  That's correct.  The

11   only qualification I would say is, to the

12   extent I need to say something on the record

13   that requires the debtor to understand

14   Ms. Wilkinson -- to the extent I need to

15   communicate with the debtor, it will be through

16   Ms. Wilkinson.

17        MR. LUFT:  Mr. Romney, while we're on the

18   record, I'd ask that you use Ms. Wang to speak

19   to the debtor.  To extent you need to speak to

20   him about privilege, let's go off the record,

21   in which case, you can use Ms. Wilkinson

22   however you need to, to speak to him.

23        MR. ROMNEY:  Sure.  I think that's

24   generally correct.  To the extent that, like in

25   a typical setting, where I would say something

1                          H. Kwok

2          to a client on the record without taking a

3          break to determine if a break is necessary, it

4          may need to be through Ms. Wilkinson, but I'm

5          not anticipating any issues.

6                MR. LUFT:  Fine.

7                And Ms. Bergamasco, you remain in

8          agreement to these terms?

9                MS. BERGAMASCO:  Can you repeat that?

10               MR. LUFT:  Just confirming that your firm

11         remains in agreement to the terms that have

12         been agreed upon that I have just set forth.

13               MS. BERGAMASCO:  Yes.

14               MR. LUFT:  Great.

15    BY MR. LUFT:

16          Q.   Mr. Kwok, you have been extremely patient.

17    Thank you for that.

18               Mr. Kwok, can I ask you to state your name

19    and your residence for the record?

20          A.   My Chinese name is Kwok Ho Wan.  My

21    address is on the Fifth Avenue in New York.  It's

22    the Sherry-Netherlands, but I can't remember the

23    exact number.  It's either 768 or 769.

24          Q.   And Mr. Kwok, are you in that address

25    right now?

1                            H. Kwok

2         A.    Yes.

3         Q.    Okay.  Mr. Kwok, I know you've been

4    deposed before, but I just want to go over some

5    basic ground rules just so we are on the same page;

6    is that okay?

7         A.    Okay.

8         Q.    Mr. Kwok, do you understand that you're

9    testifying under oath today?

10        A.    Yes, I understand.

11        Q.    And by that, all your -- any testimony you

12   offer must be truthful.

13              Do you understand that?

14        A.    Yes, I understand.

15        Q.    Is there any reason that you cannot offer

16   truthful testimony today?

17        A.    No.

18        Q.    Mr. Kwok, can we have an agreement that if

19   any of my questions are not clear to you, you will

20   ask me -- you will let me know and ask me to

21   clarify?

22        A.    Okay.  Thank you very much.

23        Q.    Mr. Kwok, if you don't tell me that

24   something is unclear, could we have an agreement

25   that I can assume that you understand my question?

```
 1                       H. Kwok

 2        A.    Okay.  That's fine.

 3        Q.    Mr. Kwok, is anyone in the room with you

 4   today?

 5        A.    My attorney and the Interpreter, Una.

 6        Q.    Is your attorney Mr. Romney?

 7        A.    I only know him by Aaron.  I'm not sure

 8   about his other name.

 9              MR. LUFT:  Mr. Romney, that is you,

10        correct?

11              MR. ROMNEY:  Yes, it is me, Avi.  Aaron

12        Romney.

13   BY MR. LUFT:

14        Q.    And your interpreter is Una Wilkinson,

15   correct?

16        A.    Yes.

17        Q.    Is there anyone else in the room with you

18   today?

19        A.    No.

20        Q.    Mr. Kwok, what is the name of your

21   daughter?

22        A.    Kwok Mei.

23        Q.    And what is the name of your son?

24        A.    Kwok Qiang.

25        Q.    Does he sometimes also go by the name
```

1                          H. Kwok

2    Mileson Kwok?

3         A.   Yes.

4         Q.   And what is name of your wife?

5         A.   Yu Chang Chu.

6         Q.   Mr. Kwok, did you do anything to prepare

7    for your deposition today?

8         A.   No.

9         Q.   Did you meet with counsel to prepare for

10   your deposition today?

11        A.   No.

12        Q.   Did you review any documents in

13   preparation for your deposition today?

14        A.   No.

15        Q.   Did you review anything to refresh your

16   recollection for your deposition today?

17        A.   No.

18        Q.   At this point, Mr. Kwok, we're going to

19   shift to the substantive part of your deposition to

20   which I understand it is your intention to plead the

21   Fifth.

22             I ask that you just let me finish asking

23   my question and allow the translator to fully

24   translate it before you make any such assertion,

25   okay?

1                          H. Kwok

2        A.    Okay.

3        Q.    Mr. Kwok, at all times since the Lady May

4   was purchased on February 23, 2015, by Hong Kong

5   International Funds Investments Limited, which I

6   will also refer to as "HK International," you have

7   been the beneficial owner of the Lady May, correct?

8        A.    I assert the Fifth.

9        Q.    At all times since the Lady May was

10  purchased on February 23, 2015, by HK International,

11  you, the debtor, have been the equitable owner of

12  the Lady May, correct?

13       A.    I plead the Fifth.

14       Q.    At all times since the Lady May was

15  purchased on February 23, 2015, by HK International,

16  you have controlled the Lady May?

17       A.    The Fifth.

18       Q.    At all times since the Lady May was

19  purchased on February 23, 2015, by Hong Kong

20  International, you have been the legal owner of the

21  Lady May?

22            THE WITNESS:  Ms. Wang, what is the

23       question?  Is that the question whether I am?

24            MR. LUFT:  Yes.

25

1                        H. Kwok

2    BY MR. LUFT:

3        Q.   Is my statement correct?

4        A.   The Fifth.

5        Q.   Mr. Kwok, you do not need Mei Guo's

6    permission to board the Lady May, correct?

7        A.   The Fifth.

8        Q.   Mr. Kwok, you do not need to ask Mei Guo's

9    permission to use the Lady May, correct?

10       A.   The Fifth.

11       Q.   Mr. Kwok, you do not need to ask Mei Guo's

12   permission to direct the crew of the Lady May to

13   navigate the Lady May from location to location,

14   correct?

15       A.   The Fifth.

16       Q.   Mr. Kwok, at all times since the

17   establishment of Hong Kong International Funds

18   Investment Limited, you have been its beneficial

19   owner, correct?

20       A.   The Fifth.

21       Q.   Mr. Kwok, at all times since the

22   establishment of HK International, you have been its

23   equitable owner, correct?

24       A.   The Fifth.

25       Q.   Mr. Kwok, at all times since the

1                         H. Kwok

2    establishment of HK International, you have

3    controlled HK International, correct?

4         A.   The Fifth.

5         Q.   Mr. Kwok, at all times since the

6    establishment of HK International, you have been its

7    legal owner, correct?

8         A.   The Fifth.

9         Q.   Mr. Kwok, at all times since the

10   establishment of HK International, it has been -- it

11   has been your alter ego, correct?

12             THE INTERPRETER:  Counsel, could you

13        please explain "alter ego"?

14             MR. LUFT:  Just translate the term.  It's

15        a legal term.

16             THE INTERPRETER:  I've got the legal term.

17             MR. LUFT:  Okay.

18             THE WITNESS:  The Fifth.

19   BY MR. LUFT:

20        Q.   Mr. Kwok, you're familiar with an entity

21   called "HK International Funds Investment USA

22   Limited," or I may refer to it as "HK USA," correct?

23        A.   The Fifth.

24        Q.   Mr. Kwok, at all times since the

25   establishment of HK USA, you have been its

1                            H. Kwok

2    beneficial owner, correct?

3         A.    The Fifth.

4         Q.    Mr. Kwok, at all times since the

5    establishment of HK USA, you have been its equitable

6    owner, correct?

7         A.    The Fifth.

8         Q.    Mr. Kwok, at all times since the

9    establishment of HK USA, you have controlled it,

10   correct?

11        A.    The Fifth.

12        Q.    Mr. Kwok, at all times since the

13   establishment of HK USA, you have been its legal

14   owner, correct?

15        A.    The Fifth.

16        Q.    Mr. Kwok, at all times since the

17   establishment of HK USA, it has been your alter ego,

18   correct?

19        A.    The Fifth.

20        Q.    Mr. Kwok, you know an individual named

21   Natasha Qu, correct?

22        A.    The Fifth.

23        Q.    Mr. Kwok, the transfer of HK International

24   to Natasha Qu was done to hide your assets from your

25   creditors, correct?

1                          H. Kwok

2          A.    The Fifth.

3          Q.    Mr. Kwok, you directed Natasha Qu to

4     execute a declaration of trust, governing your

5     shares in Hong Kong International on or about

6     October 10, 2014, correct?

7          A.    The Fifth.

8                MR. LUFT:  At this point, I'd ask the

9          court reporter to mark as Kwok PJR Deposition

10         Exhibit 1, a copy of the declaration of trust

11         made on the 10th day of October 2014, as well

12         as the certified translation we have of it.

13               I'll ask my colleague, Mr. Farmer, to post

14         that if possible.

15               (Kwok PJR Exhibit 1 was received and

16         marked for identification, as of this date.)

17     BY MR. LUFT:

18         Q.    Mr. Kwok, take a minute to review the

19     Exhibit 1.

20               MR. ROMNEY:  Avi, may be the formatting of

21         the screen.  I don't see Bates numbers on

22         there.

23               Have these been produced in connection

24         with the PJR proceeding?

25               MR. LUFT:  There is no Bates number.  We

1                      H. Kwok

2      have offered to produce it to you.

3           MR. ROMNEY:  I'm sorry.  I'm not sure what

4      you're referring to.

5           THE WITNESS:  I'm done reading it.

6  BY MR. LUFT:

7      Q.   Mr. Kwok, is this a true and correct copy

8  of the Declaration of Trust you entered into with

9  Natasha Kwok [sic] on October 10 -- Natasha Qu, on

10 October 10, 2014, relating to your shares of Hong

11 Kong International?

12          MR. ROMNEY:  Object to the form of the

13     question.

14     A.   The Fifth.

15 BY MR. LUFT:

16     Q.   Mr. Kwok, the signed copy of Exhibit 1,

17 the Declaration of Trust, dated October 10, 2014,

18 was given to your counsel Stevenson, Wong & Co. for

19 them to retain on your behalf, correct?

20     A.   The Fifth.

21     Q.   Mr. Kwok, pursuant to the terms of the

22 Declaration of Trust, even after Hong Kong

23 International was transferred by you to Natasha Qu,

24 you still retained control and beneficial ownership

25 of Hong Kong International and its assets, including

1                          H. Kwok

2    the Lady May, correct?

3             MR. ROMNEY:  Objection to form.

4        A.   The Fifth.

5    BY MR. LUFT:

6        Q.   Mr. Kwok, the Lady May was purchased on

7    your behalf, correct?

8        A.   The Fifth.

9        Q.   Mr. Kwok, the Lady May was purchased for

10   you to control and beneficially own, correct?

11       A.   The Fifth.

12       Q.   Mr. Kwok, all of the funds used to

13   purchase the Lady May were funds you owned and

14   controlled, correct?

15       A.   The Fifth.

16       Q.   Mr. Kwok, you funded the purchase of the

17   Lady May on February 23, 2015, with funds you

18   exclusively controlled to an entity named Bravo

19   Luck, correct?

20       A.   The Fifth.

21       Q.   Mr. Kwok, Bravo Luck is an entity that you

22   at all times have had exclusive control over,

23   correct?

24       A.   The Fifth.

25       Q.   Mr. Kwok, at all times, you have had

1                          H. Kwok

2    exclusive control over the assets of Bravo Luck,

3    correct?

4         A.   The Fifth.

5         Q.   Mr. Kwok, none of the funds used to

6    purchase the Lady May belonged to your son, Mileson

7    Kwok, correct?

8         A.   The Fifth.

9         Q.   Mr. Kwok, you had the Lady May purchased

10   by Hong Kong International for your own use,

11   correct?

12        A.   The Fifth.

13        Q.   Mr. Kwok, you directed Hong Kong

14   International to purchase the Lady May with your own

15   assets to attempt to obscure your ownership of the

16   Lady May, correct?

17        A.   The Fifth.

18        Q.   For clarity, when I refer to Bravo Luck,

19   you understand I'm referring to Bravo Luck Limited,

20   correct?

21        A.   The Fifth.

22        Q.   Mr. Kwok, you directed Hong Kong

23   International to purchase the Lady May with funds

24   you owned to shield the Lady May from your

25   creditors, correct?

1                          H. Kwok

2       A.    The Fifth.

3       Q.    Mr. Kwok, you directed Ms. Qu to transfer

4  her purported ownership in Hong Kong International

5  to Mei Guo for the consideration of one Hong Kong

6  dollar on June 27, 2017, correct?

7       A.    The Fifth.

8       Q.    Mr. Kwok, you directed the transfer on

9  June 27, 2017, of Ms. Qu's purported ownership of

10  HK International to Mei Guo for the consideration of

11  one Hong Kong dollar in an attempt to obscure your

12  ownership of the Lady May, correct?

13      A.    The Fifth.

14      Q.    Mr. Kwok, you directed the transfer on

15  June 27, 2017, of Ms. Qu's purported ownership of HK

16  International to Mei Guo for the consideration of

17  one Hong Kong dollar to try to shield the Lady May

18  from your creditors, correct?

19      A.    The Fifth.

20      Q.    Mr. Kwok, the transfer on June 27, 2017,

21  of Ms. Qu's purported ownership of HK International

22  to Mei Guo did not change the fact that you remained

23  in control of and the beneficial owner

24  of HK International, correct?

25            MR. ROMNEY:   Object to the form.

1                         H. Kwok

2       A.    The Fifth.

3  BY MR. LUFT:

4       Q.    Let me just break that up, because there

5  was an objection.

6              The transfer on June 27, 2017, of Ms. Qu's

7  purported ownership of HK International to Mei Guo

8  did not change the fact that you remained in control

9  of HK International following that transfer,

10  correct?

11      A.    The Fifth.

12      Q.    Mr. Kwok, the transfer on June 27, 2017,

13  of Ms. Qu's purported ownership of HK International

14  to Mei Guo did not change the fact that you remained

15  the beneficial owner of Hong Kong International

16  after that transfer, correct?

17             MR. ROMNEY:   Object to the form.

18      A.    The Fifth.

19  BY MR. LUFT:

20      Q.    Mr. Kwok, the transfer on June 27, 2017,

21  of Ms. Qu's purported ownership of HK International

22  to Mei Guo did not change the fact that you remained

23  in control of the Lady May both before and after the

24  transfer, correct?

25             MR. ROMNEY:   Object to the form.

```
 1                    H. Kwok

 2        A.    The Fifth.

 3   BY MR. LUFT:

 4        Q.    Mr. Kwok, the transfer on June 27, 2017,

 5   of Ms. Qu's purported ownership of HK International

 6   to Mei Guo did not change the fact that you remained

 7   the beneficial owner of the Lady May both before and

 8   after the transfer, correct?

 9              MR. ROMNEY:   Object to the form.

10        A.    The Fifth.

11   BY MR. LUFT:

12        Q.    Mr. Kwok, you -- and by that, I mean

13   yourself or through your agents -- directed the

14   formation of HK International Funds Investments USA

15   Limited on September 11, 2018, correct?

16        A.    The Fifth.

17        Q.    Mr. Kwok, the Lady May was transferred to

18   HK USA in an attempt to obscure your ownership of

19   the Lady May, correct?

20              MR. ROMNEY:   Object to the form.

21        A.    The Fifth.

22   BY MR. LUFT:

23        Q.    Mr. Kwok, the Lady May was transferred to

24   HK USA at your direction in an attempt to shield it

25   from your creditor, correct?
```

1                          H. Kwok

2         A.    The Fifth.

3         Q.    Mr. Kwok, you have used the entities

4    Golden Spring and Lamp Capital to pay the expenses

5    of the Lady May, correct?

6              MR. ROMNEY:   Object to the form.

7         A.    The Fifth.

8    BY MR. LUFT:

9         Q.    Mr. Kwok, you are the owner of

10   Golden Spring, correct?

11             MR. ROMNEY:   Object to the form.

12        A.    The Fifth.

13   BY MR. LUFT:

14        Q.    Mr. Kwok, all assets owned by Golden

15   Spring belong to you, correct?

16             MR. ROMNEY:   Object to the form.

17        A.    The Fifth.

18   BY MR. LUFT:

19        Q.    Mr. Kwok, you control Golden Springs

20   Limited, correct?

21        A.    The Fifth.

22        Q.    Mr. Kwok, you have control of all assets

23   of Golden Spring, correct?

24        A.    The Fifth.

25        Q.    Mr. Kwok, all expenses related to the

1                         H. Kwok

2    Lady May paid by Golden Spring New York Limited,

3    which I've been referring to as "Golden Spring,"

4    were paid with funds you control, correct?

5         A.   The Fifth.

6         Q.   Mr. Kwok, all expenses related to the

7    Lady May paid by Golden Spring were paid with funds

8    you owned, correct?

9              MR. ROMNEY:   Object to the form.

10        A.   The Fifth.

11   BY MR. LUFT:

12        Q.   Mr. Kwok, all expenses related to the

13   Lady May paid by Golden Spring were paid at your

14   direction, correct?

15        A.   The Fifth.

16        Q.   Mr. Kwok, none of the expenses paid by

17   Golden Spring for the Lady May were paid for with

18   assets belonging to Mileson Kwok, correct?

19             MR. ROMNEY:   Object to the form.

20        A.   The Fifth.

21   BY MR. LUFT:

22        Q.   Mr. Kwok, you are the equitable owner of

23   Lamp Capital, correct?

24        A.   The Fifth.

25        Q.   Mr. Kwok, you are the beneficial owner of

```
 1                      H. Kwok
 2  Lamp Capital, correct?
 3       A.   The Fifth.
 4       Q.   Mr. Kwok, you're the equitable owner of
 5  Golden Spring, correct?
 6       A.   The Fifth.
 7       Q.   Mr. Kwok, you are the beneficial owner of
 8  Golden Spring, correct?
 9       A.   The Fifth.
10       Q.   Mr. Kwok, you have exclusive control over
11  Lamp Capital, correct?
12       A.   The Fifth.
13       Q.   Mr. Kwok, all expenses related to the
14  Lady May paid by Lamp Capital LLC were paid with
15  assets you controlled, correct?
16       A.   The Fifth.
17       Q.   Mr. Kwok, all expenses related to the
18  Lady May paid by Lamp Capital LLC were paid with
19  assets that you owned, correct?
20            MR. ROMNEY:   Object to the form.
21       A.   The Fifth.
22  BY MR. LUFT:
23       Q.   Mr. Kwok, all expenses related to the
24  Lady May paid by Lamp Capital LLC were paid at your
25  direction, correct?
```

1                          H. Kwok

2        A.    The Fifth.

3        Q.    Mr. Kwok, none of the expenses paid by

4   Lamp Capital related to the Lady May were paid with

5   assets belonging to Mileson Kwok?

6             MR. ROMNEY:   Object to the form.

7        A.    The Fifth.

8   BY MR. LUFT:

9        Q.    Mr. Kwok, none of the assets of

10  Lamp Capital belong to Mr. Kwok -- Mr. Mileson Kwok,

11  correct?

12            MR. ROMNEY:   Object to the form.

13       A.    The Fifth.

14  BY MR. LUFT:

15       Q.    Mr. Kwok, you have exclusive control over

16  the assets of Lamp Capital, correct?

17       A.    The Fifth.

18       Q.    Mr. Kwok, your son Mileson Kwok has no

19  control over the assets of Lamp Capital, correct?

20       A.    The Fifth.

21       Q.    Mr. Kwok, your son Mileson Kwok has no

22  control over the assets of Golden Spring, correct?

23            MR. ROMNEY:   Object to the form.

24       A.    The Fifth.

25

```
 1                        H. Kwok

 2   BY MR. LUFT:

 3       Q.   Mr. Kwok, you asked Yvette Wang to take

 4   actions on your behalf related to the Lady May and

 5   HK USA and HK International, correct?

 6            MR. ROMNEY:   Object to the form.

 7       A.   The Fifth.

 8   BY MR. LUFT:

 9       Q.   Mr. Kwok, you asked Max Krasner to take

10   actions related to the Lady May, HK International,

11   and HK USA on your behalf, correct?

12            MR. ROMNEY:   Objection.

13       A.   The Fifth.

14   BY MR. LUFT:

15       Q.   Mr. Kwok, all actions taken by Yvette Wang

16   relating to the Lady May are taken at your

17   direction, correct?

18            MR. ROMNEY:   Object to the form.

19       A.   The Fifth.

20   BY MR. LUFT:

21       Q.   Mr. Kwok, all actions taken by Yvette Wang

22   related to the Lady May are taken on your behalf,

23   correct?

24       A.   The Fifth.

25            MR. ROMNEY:   Object to the form.
```

1                         H. Kwok

2    BY MR. LUFT:

3        Q.   Mr. Kwok, all actions taken by Max Krasner

4    that relate to the Lady May are taken at your

5    direction, correct?

6        A.   The Fifth.

7        Q.   Mr. Kwok, all actions taken by Max Krasner

8    related to the Lady May are taken on your behalf,

9    correct?

10            MR. ROMNEY:   Object to the form.

11       A.   The Fifth.

12   BY MR. LUFT:

13       Q.   Mr. Kwok, all actions taken by Yvette Wang

14   relating to HK International are taken at your

15   direction, correct?

16       A.   The Fifth.

17       Q.   Mr. Kwok, all actions taken by Yvette Wang

18   relating to HK USA are taken at your direction,

19   correct?

20            MR. ROMNEY:   Object to the form.

21       A.   The Fifth.

22   BY MR. LUFT:

23       Q.   Mr. Kwok, all actions taken by Yvette Wang

24   relating to HK International are taken on your

25   behalf, correct?

1                        H. Kwok

2              MR. ROMNEY:  Object to the form.

3         A.   The Fifth.

4    BY MR. LUFT:

5         Q.   Mr. Kwok, all actions taken by Yvette Wang

6    relating to HK USA are taken on your behalf,

7    correct?

8              MR. ROMNEY:  Object to the form.

9         A.   The Fifth.

10   BY MR. LUFT:

11        Q.   Mr. Kwok, all actions taken by Max Krasner

12   as related to HK International are taken at your

13   direction, correct?

14             MR. ROMNEY:  Objection to form.

15        A.   The Fifth.

16   BY MR. LUFT:

17        Q.   Mr. Kwok, all actions taken by Max Krasner

18   as related to HK USA are taken at your direction,

19   correct?

20             MR. ROMNEY:  Object to the form.

21        A.   The Fifth.

22   BY MR. LUFT:

23        Q.   Mr. Kwok, all actions taken by Max Krasner

24   as related to HK International are taken on your

25   behalf, correct?

1                         H. Kwok

2                 MR. ROMNEY:  Object to the form.

3         A.   The Fifth.

4   BY MR. LUFT:

5         Q.   Mr. Kwok, all actions taken by Max Krasner

6   as related to HK USA are taken on your behalf,

7   correct?

8                 MR. ROMNEY:  Object to form.

9         A.   The Fifth.

10  BY MR. LUFT:

11        Q.   Mr. Kwok, Yvette Wang is currently your

12  employee, correct?

13        A.   The Fifth.

14        Q.   Mr. Kwok, Ms. Wang has been your employee

15  since at least 2015 and up through the present,

16  correct?

17        A.   The Fifth.

18        Q.   Mr. Kwok, Ms. Wang, since at least 2015

19  through the present, has acted as your agent,

20  correct?

21        A.   The Fifth.

22        Q.   Mr. Kwok, Ms. Wang currently acts as your

23  agent, correct?

24        A.   The Fifth.

25        Q.   Mr. Kwok, you know the current location of

1                         H. Kwok

2    Ms. Wang, correct?

3         A.    The Fifth.

4         Q.    Mr. Kwok, at what location does Ms. Wang

5    currently reside?

6         A.    The Fifth.

7         Q.    Mr. Kwok, Max Krasner is currently your

8    employee, correct?

9         A.    The Fifth.

10        Q.    Mr. Kwok, at all times Mr. Krasner has had

11   any involvement with the Lady May, he has been your

12   employee, correct?

13        A.    The Fifth.

14        Q.    Mr. Kwok, at all times that you've had

15   involvement with Mr. Krasner, he has acted as your

16   agent, correct?

17        A.    The Fifth.

18        Q.    Mr. Kwok, Mr. Krasner currently acts as

19   your agent, correct?

20        A.    The Fifth.

21        Q.    Mr. Kwok, you have Mr. Krasner's current

22   contact information, including his address and his

23   phone number, correct?

24        A.    The Fifth.

25        Q.    Mr. Kwok, what is Mr. Krasner's current

1                          H. Kwok

2    home address?

3         A.    The Fifth.

4         Q.    Mr. Kwok, what is Mr. Krasner's current

5    phone number?

6         A.    The Fifth.

7         Q.    Mr. Kwok, you know how to get in touch

8    with Ms. Yvette Wang, correct?

9         A.    The Fifth.

10        Q.    Mr. Kwok, you have not shared that

11   information with the trustee, correct?

12        A.    The Fifth.

13             MR. ROMNEY:  Could the Interpreter ask the

14        witness if he needs a break.

15   BY MR. LUFT:

16        Q.    Mr. Kwok, you know how to get in touch

17   with Mr. Krasner, correct?

18             MR. ROMNEY:  Avi, could you not hear what

19        I just placed on the record.

20             MR. LUFT:  I did not hear you, Aaron.

21        Sorry.

22             MR. ROMNEY:  Oh, I'm sorry.  I had asked

23        if the Interpreter could ask the witness if he

24        needs a break.

25             THE INTERPRETER:  Oh, okay.

1                         H. Kwok

2              (Complies.)

3              THE WITNESS:  Yes.  It's quite tiring.  I

4       need a break.

5              MR. LUFT:  Okay.  Aaron, I have like two

6       more questions just to finish this.  Could we

7       just do that, and then we'll take a break?

8              THE WITNESS:  Okay.

9    BY MR. LUFT:

10        Q.   Mr. Kwok, you know the contact

11   information, including address and phone number, of

12   Mr. Krasner currently, correct?

13        A.   The Fifth.

14        Q.   Mr. Kwok, you have not shared this

15   information with the trustee, correct?

16        A.   The Fifth.

17             MR. LUFT:  Aaron, if you want to take a

18       break now, that's fine.  How long would you

19       like?

20             MR. ROMNEY:  How long do you want?  Five,

21       ten minutes?

22             THE WITNESS:  Ten minutes.

23             MR. ROMNEY:  Ten minutes?

24             MR. LUFT:  Sure.

25             THE VIDEOGRAPHER:  We're going off the

1                          H. Kwok

2          record at 11:47 a.m.

3              (Recess.)

4              THE VIDEOGRAPHER:  We're back on the

5          record at 12:05 p.m.

6     BY MR. LUFT:

7          Q.   Mr. Kwok, you have ultimate authority with

8     respect to the movements of the Lady May, correct?

9          A.   The Fifth.

10         Q.   Mr. Kwok, you have ultimate control over

11    where the crew of the Lady May sails the yacht,

12    correct?

13         A.   The Fifth.

14         Q.   Mr. Kwok, you gave instructions for the

15    Lady May to be sailed from New York to Florida in

16    2020, correct?

17         A.   The Fifth.

18         Q.   Mr. Kwok, the Lady May was sailed from

19    New York to Florida in the fall of 2020 because you

20    directed that it be done so, correct?

21         A.   The Fifth.

22         Q.   Mr. Kwok, you gave instructions for the

23    Lady May to be sailed from Florida to the Bahamas in

24    the fall of 2020, correct?

25         A.   The Fifth.

1                          H. Kwok

2        Q.   Mr. Kwok, the Lady May was sailed from

3   Florida to the Bahamas in the fall of 2020 because

4   you instructed the crew for it to do so, correct?

5        A.   The Fifth.

6        Q.   Mr. Kwok, you instructed the Lady May to

7   be sailed to Europe in 2021, correct?

8        A.   The Fifth.

9        Q.   Mr. Kwok, the reason the Lady May was

10  sailed to Europe in 2021 was because you gave

11  instructions for that to happen, correct?

12            MR. ROMNEY:   Object to the form.

13       A.   The Fifth.

14  BY MR. LUFT:

15       Q.   Mr. Kwok, you gave directions for the

16  Lady May to be sailed to Europe to keep the Lady May

17  out of the hands of your creditors, correct?

18       A.   The Fifth.

19       Q.   Mr. Kwok, the Lady May remained in Europe

20  until you authorized it to return to the

21  United States, correct?

22       A.   The Fifth.

23       Q.   Mr. Kwok, you're the only person who had

24  the authority to order the Lady May to return to the

25  United States, correct?

1                    H. Kwok

2       A.   The Fifth.

3       Q.   Mr. Kwok, when you directed the Lady May

4  to sail to Europe in 2021, you and your daughter,

5  Mei Guo, were aware that doing so would violate

6  Ostrager's order and cause you to incur contempt

7  fees, correct?

8            MR. ROMNEY:  Object to the form.

9       A.   The Fifth.

10 BY MR. LUFT:

11      Q.   Mr. Kwok, the Lady May was returned to

12 Connecticut waters in 2022 only because you directed

13 that to happen, correct?

14      A.   The Fifth.

15      Q.   Mr. Kwok, you're familiar with an

16 individual named William Je?

17      A.   The Fifth.

18      Q.   Mr. Kwok, William Je is a close family

19 friend, correct?

20      A.   The Fifth.

21      Q.   Mr. Kwok, Mr. Je is referred to by your

22 daughter as "Uncle William," correct?

23      A.   The Fifth.

24      Q.   Mr. Kwok, Mr. Je acts as an agent,

25 correct?

1                          H. Kwok

2          A.    The Fifth.

3          Q.    Mr. Kwok, Mr. Je is currently acting as

4     your agent in your business dealings, correct?

5          A.    The Fifth.

6          Q.    Mr. Kwok, in April of 2022, Mr. Je -- any

7     actions Mr. Je took in relation to the Lady May were

8     as your agent, correct?

9          A.    The Fifth.

10         Q.    Mr. Kwok, any actions Mr. Je takes in

11    connection with business dealings are taken at your

12    direction, correct?

13              MR. ROMNEY:   Object to the form.

14         A.    The Fifth.

15    BY MR. LUFT:

16         Q.    Mr. Kwok, with regard to any business

17    dealings involving you and Mr. Je, Mr. Je is under

18    your control, correct?

19         A.    The Fifth.

20         Q.    Mr. Kwok, Mr. Je acts at your direction to

21    generate funds for you through the use of the

22    Himalaya Farms, correct?

23         A.    The Fifth.

24         Q.    Mr. Kwok, any assets purportedly under the

25    control of William Je are actually assets under your

1                    H. Kwok

2   control, correct?

3          MR. ROMNEY:  Object to the form.

4       A.   The Fifth.

5   BY MR. LUFT:

6       Q.   Mr. Kwok, any entities purportedly under

7   the control of William Je are actually entities

8   under your control, correct?

9          MR. ROMNEY:  Object to the form.

10      A.   The Fifth.

11  BY MR. LUFT:

12      Q.   Mr. Kwok, the loan agreement dated

13  April 19, 2022, between Himalaya International

14  Financial Group Limited as lender and HK USA as

15  borrower was arranged at your request, correct?

16      A.   The Fifth.

17      Q.   Mr. Kwok, you control Himalaya

18  International Financial Group Limited, correct?

19          THE WITNESS:  I want to speak with my

20          attorney now.

21          MR. LUFT:  Okay.

22          MR. ROMNEY:  Take five.

23          MR. LUFT:  Okay.

24          THE VIDEOGRAPHER:  We're going off the

25          record at 12:17 p.m.

1                    H. Kwok

2          (Recess.)

3          THE VIDEOGRAPHER:  We're back on the

4     record at 12:24 p.m.

5   BY MR. LUFT:

6     Q.   Mr. Kwok, you are the beneficial owner of

7   Himalaya International Financial Group Limited,

8   correct?

9     A.   The Fifth.

10    Q.   Mr. Kwok, all assets of Himalaya

11  International Financial Group Limited are under your

12  control, correct?

13    A.   The Fifth.

14    Q.   Mr. Kwok, the $37 million of funds

15  Himalaya International Financial Group loaned to

16  HK USA were funds that you owned and controlled,

17  correct?

18    A.   The Fifth.

19    Q.   Mr. Kwok, you control the $37 million that

20  was put in escrow by HK USA in connection with this

21  Chapter 11 case, correct?

22    A.   The Fifth.

23    Q.   Mr. Kwok, any repayment by HK USA of the

24  principal $37 million on account of the purported

25  $37 million loan from Himalaya International

1                           H. Kwok

2    Financial Group Limited will be made to entities

3    that you control, correct?

4           MR. ROMNEY:  Object to the form.

5        A.   The Fifth.

6    BY MR. LUFT:

7        Q.   Mr. Kwok, any payment of interest by

8    HK USA on account of the purported $37 million loan

9    from Himalaya International Financial Group Limited

10   will be paid to an entity that you control, correct?

11          MR. ROMNEY:  Object to the form.

12       A.   The Fifth.

13   BY MR. LUFT:

14       Q.   Mr. Kwok, at the February 7, 2022,

15   evidentiary hearing before Justice Ostrager of the

16   Supreme Court of the State of New York, your

17   interest was for the Court to find HK USA to be the

18   beneficial owner and to have control of the

19   Lady May, correct?

20          MR. ROMNEY:  Object to the question.

21          THE INTERPRETER:  I didn't catch.  Someone

22      mentioned something after the question.

23          MR. ROMNEY:  Could we have the question

24      read back.

25          MR. LUFT:  Could we get it translated, and

1                           H. Kwok

2        then it can be read back.

3              THE INTERPRETER:  (Complies.)

4              MR. ROMNEY:  Could we hear the question

5        read back before?

6              (The last question was read back by the

7        Reporter.)

8              MR. ROMNEY:  Object to the form.

9        A.   The Fifth.

10   BY MR. LUFT:

11       Q.   Mr. Kwok, counsel for HK USA and Mei Guo

12   appeared at the February 7, 2022, evidentiary

13   hearing, correct?

14       A.   The Fifth.

15       Q.   Mr. Kwok, counsel for HK USA and Mei Guo

16   helped present your defense at the February 7, 2022,

17   hearing, correct?

18              MR. ROMNEY:  Object to the form.

19       A.   The Fifth.

20   BY MR. LUFT:

21       Q.   Mr. Kwok, counsel for HK USA and Mei Guo

22   worked with your counsel at the February 7, 2022,

23   hearing to prepare for and present your case,

24   correct?

25              MR. ROMNEY:  Object to the form.

1                          H. Kwok

2        A.    The Fifth.

3    BY MR. LUFT:

4        Q.    Mr. Kwok, you directed your counsel for

5    the February 7, 2022, evidentiary hearing to enter

6    into a common interest agreement with HK USA and

7    Mei Guo in connection with that hearing, correct?

8             MR. ROMNEY:  I'm going to direct the

9             witness not to answer based on the

10            attorney-client privilege.

11            MR. LUFT:  Mr. Romney, you know that is

12            pre-petition, and thus, any common interest

13            belongs to the trustee, correct?

14            MR. ROMNEY:  Can the reporter read the

15            question, please -- read back the question.

16            (The last question was read back by the

17            Reporter.)

18            MR. ROMNEY:  You can answer.

19       A.    The Fifth.

20   BY MR. LUFT:

21       Q.    Mr. Kwok, HK USA and Mei Guo shared

22   identical interests to you in the court finding

23   HK USA was the beneficial owner and had control over

24   the Lady May for the February 7, 2022, evidentiary

25   hearing before Justice Ostrager, correct?

1                           H. Kwok

2              MR. ROMNEY:  Object to the form.

3        A.   The Fifth.

4    BY MR. LUFT:

5        Q.   Mr. Kwok, schedules you had filed in

6    connection with your Chapter 11 filing should have

7    included your beneficial ownership of the Lady May

8    as an asset of your estate, correct?

9              MR. ROMNEY:  Object to the form.

10       A.   The Fifth.

11   BY MR. LUFT:

12       Q.   Mr. Kwok, the schedules you filed in

13   connection with the Chapter 11 filing should have

14   included your beneficial ownership of HK USA as an

15   asset of the estate, correct?

16             MR. ROMNEY:  Object to the form.

17       A.   The Fifth.

18   BY MR. LUFT:

19       Q.   Mr. Kwok, any assets of Golden Spring and

20   Lamp Capital that have been used to pay the

21   Lady May's expenses, including any legal fees

22   related to it, should have been declared as assets

23   of the estate on your schedules for your Chapter 11

24   filing, correct?

25             MR. ROMNEY:  Object to the form.

1                           H. Kwok

2        A.    The Fifth.

3    BY MR. LUFT:

4        Q.    Mr. Kwok, all assets held by Golden Spring

5    are really assets of your estate, correct?

6        A.    The Fifth.

7        Q.    Mr. Kwok, all assets held by Lamp Capital

8    are really assets of your estate, correct?

9        A.    The Fifth.

10       Q.    Mr. Kwok, all assets held in the name of

11   your son Mileson Kwok are really assets of your

12   estate, correct?

13       A.    The Fifth.

14       Q.    Mr. Kwok, all assets held in the name of

15   your daughter Mei Guo are really assets of your

16   estate, correct?

17            MR. ROMNEY:   Object to the form.

18       A.    The Fifth.

19   BY MR. LUFT:

20       Q.    Mr. Kwok, all assets held in the name of

21   your wife Hing Chi Ngok are actually assets of your

22   estate, correct?

23            MR. ROMNEY:   Object to the form.

24       A.    The Fifth.

25

1          H. Kwok

2  BY MR. LUFT:

3      Q.   Mr. Kwok, you have directed that numerous

4  offshore companies, whether located in the BVI, Hong

5  Kong, and elsewhere, be set up for purposes of

6  holding your assets, correct?

7      A.   The Fifth.

8      Q.   Mr. Kwok, you have had these offshore

9  companies set up in the name of your children, your

10  wife, and your business associates, correct?

11     A.   The Fifth.

12     Q.   Mr. Kwok, regardless of whether any of

13  these entities are listed in the name of your wife,

14  your daughter, your son, Ms. Wang, Mr. Krasner, or

15  any of your other business associates, in fact, you

16  own and control each of these offshore entities,

17  correct?

18          MR. ROMNEY:  Object to the form.

19     A.   The Fifth.

20  BY MR. LUFT:

21     Q.   Mr. Kwok, the reason you had these

22  offshore entities set up was to obscure your

23  ownership of the assets that they held, correct?

24          MR. ROMNEY:  Object to the form.

25     A.   The Fifth.

```
 1                        H. Kwok

 2  BY MR. LUFT:

 3      Q.   Mr. Kwok, the reason you had these

 4  offshore entities set up and placed assets in them

 5  is to attempt to hide your assets from your

 6  creditors, correct?

 7      A.   The Fifth.

 8      Q.   Mr. Kwok, all entities for which your

 9  daughter Mei Guo is a member, director, or principal

10  are actually beneficially owned and controlled by

11  you, correct?

12           MR. ROMNEY:  Object to form.

13      A.   The Fifth.

14  BY MR. LUFT:

15      Q.   Mr. Kwok, HK USA, HK International,

16  Eastern Profit Corporation Limited, Whitecroft Shore

17  Limited, Anton Development Limited, Anton

18  Development USA Limited LLC, GM27 LLC, Loss Draft

19  LLC, Gypsy May Productions LLC, Gypsy May Food

20  Service LLC, Hudson Diamond Holdings LLC, Hudson

21  Diamond New York LLC, Allied Capital Global Limited,

22  Creative Apex Investment Limited, Crystal Breeze

23  Investments Limited, Elite Well Global Limited,

24  Globalist International Limited, Infinite Increased

25  Limited, Infinium Developments Limited, Noble Fame
```

1                         H. Kwok

2    Global Limited, Rosy Acme Ventures Limited, Leading

3    Shine New York Limited, and Leading Shine Limited

4    are all assets held in the name of your daughter but

5    that you actually own and control, correct?

6              MR. ROMNEY:  Object to the form.

7         A.   The Fifth.

8    BY MR. LUFT:

9         Q.   Mr. Kwok, all assets held in the name of

10   Mei Guo were purchased with funds exclusively owned

11   and controlled by you, correct?

12             MR. ROMNEY:  Could the reporter read that

13        back before the witness answers.

14             (The last question was read back by the

15        Reporter.)

16        A.   The Fifth.

17   BY MR. LUFT:

18        Q.   Mr. Kwok, all assets held in the name of

19   Mei Guo are exclusively owned and controlled by you,

20   correct?

21             MR. ROMNEY:  Object to the form.

22        A.   The Fifth.

23   BY MR. LUFT:

24        Q.   Mr. Kwok, between 2015 and today, no funds

25   used to pay any expenses related to you, including

1                          H. Kwok

2  but not limited to living costs and legal expenses,

3  were provided by Mei Guo and any entity she owns or

4  controls?

5          MR. ROMNEY:  I apologize.  Could we have

6      that one read back as well.  I'm sorry.

7          (The last question was read back by the

8      Reporter.)

9          MR. ROMNEY:  Object to the form.

10     A.   The Fifth.

11  BY MR. LUFT:

12     Q.   Mr. Kwok, between 2015 and today, no funds

13  used to pay any expenses related to you, including

14  but not limited to living costs and legal expenses,

15  were provided by any family members of yours

16  residing in China, correct?

17         MR. ROMNEY:  Object to the form.

18     A.   The Fifth.

19  BY MR. LUFT:

20     Q.   Mr. Kwok, Mei Guo has no source of income

21  other than from entities that you own and control,

22  correct?

23         MR. ROMNEY:  Object to the form.

24     A.   The Fifth.

25

1                          H. Kwok

2   BY MR. LUFT:

3       Q.   Mr. Kwok, any funds Mei Guo receives from

4   any entity you own and control are gifts from you to

5   her, correct?

6            MR. ROMNEY:   Object to the form.

7       A.   The Fifth.

8   BY MR. LUFT:

9       Q.   Mr. Kwok, any funds that Mei Guo and any

10  entities in her name received from any entity you

11  own and control remain funds under your control even

12  after being transferred to Ms. Guo, correct?

13      A.   The Fifth.

14      Q.   Mr. Kwok, Mei Guo has never been the CEO

15  of Pangu Plaza, correct?

16            MR. ROMNEY:   Object to the form.

17      A.   The Fifth.

18  BY MR. LUFT:

19      Q.   Mr. Kwok, Mileson Kwok has no source of

20  income other from entities -- other than from

21  entities that you own and control, correct?

22      A.   The Fifth.

23      Q.   Mr. Kwok, any funds that Mileson Kwok and

24  any entities in his name received from any entity

25  you own and control remain funds under your control

1                        H. Kwok

2    even after being transferred to Mileson Kwok,

3    correct?

4            MR. ROMNEY:  Object to the form.

5        A.   The Fifth.

6    BY MR. LUFT:

7        Q.   Mr. Kwok, any funds Mileson Kwok receives

8    from any entity you own and control are gifts from

9    you, correct?

10           MR. ROMNEY:  Object to the form.

11       A.   The Fifth.

12   BY MR. LUFT:

13       Q.   Mr. Kwok, between 2015 and today, no funds

14   used to pay any expenses related to you, including

15   but not limited to living costs and legal expenses,

16   were provided by Mileson Kwok and any entity he owns

17   and controls?

18           MR. ROMNEY:  Object to the form.

19       A.   The Fifth.

20   BY MR. LUFT:

21       Q.   Mr. Kwok, all entities for which your son

22   Mileson Kwok is named as a member, director or

23   principal are actually beneficially owned and

24   controlled by you, correct?

25           MR. ROMNEY:  Object to the form.

1                        H. Kwok

2        A.    The Fifth.

3   BY MR. LUFT:

4        Q.    Mr. Kwok, Golden Spring New York Limited,

5   Lamp Capital LLC, Bravo Luck Limited, Infinity

6   Treasury Management, Inc., Saraca Media Group, Inc.,

7   K Legacy Limited, Well Origin Limited, ACA Hong Kong

8   Investment Holdings Group Limited, and

9   Powerwell Flowable Limited are all entities held in

10   the name of your son Miles Kwok, but, in fact, are

11   owned and controlled by you, correct?

12            MR. ROMNEY:   Object to the form.

13        A.    The Fifth.

14   BY MR. LUFT:

15        Q.    Mr. Kwok, the entity known as Kingdom Rich

16   Limited is owned and controlled by you, not your

17   son, correct?

18        A.    The Fifth.

19        Q.    Mr. Kwok, all assets held in the name of

20   your son Mileson Kwok were purchased with funds

21   owned and controlled by you, correct?

22            MR. ROMNEY:   Object to the form.

23        A.    The Fifth.

24   BY MR. LUFT:

25        Q.    Mr. Kwok, all assets held in the name of

Page 55

1                           H. Kwok

2    your son Mileson Kwok are, in fact, owned and

3    controlled by you, correct?

4              MR. ROMNEY:   Object to form.

5         A.   The Fifth.

6    BY MR. LUFT:

7         Q.   Mr. Kwok, this includes the residence at

8    5 Princess Gate, London, correct?

9         A.   The Fifth.

10        Q.   Mr. Kwok, you own and control your son

11   Mileson Kwok's collection of cars, correct?

12        A.   The Fifth.

13             MR. ROMNEY:   Avi, we're getting pretty far

14        afield of the issues in this adversary

15        proceeding.  I've been giving quite a bit of

16        leeway, but I am going to have to start

17        directing the witness not to answer, and we'll

18        move for a protective order if we have to.

19             I don't believe there's any allegations

20        concerning cars in the counterclaims that we're

21        here discussing today.

22             MR. LUFT:  I disagree, I think.  But I

23        have a couple of wrap-up questions right here,

24        and then I think we'll -- my next set of

25        questions, I think you'll see -- I don't think

1                         H. Kwok

2         there will be any dispute between us as to

3         their relevance.

4    BY MR. LUFT:

5         Q.   Mr. Kwok, no assets held in the name of

6    your son Mileson Kwok are owned or controlled by any

7    of your -- his family members other than you,

8    correct?

9              MR. ROMNEY:   Object to the form.

10        A.   The Fifth.

11   BY MR. LUFT:

12        Q.   Mr. Kwok, no assets held in the name of

13   your son Mileson Kwok were purchased with funds

14   owned or controlled by any of its family members

15   other than you, correct?

16             MR. ROMNEY:   Object to the form.

17        A.   The Fifth.

18   BY MR. LUFT:

19        Q.   Mr. Kwok, on October 3, 2006, you

20   incorporated a Hong Kong entity named Hong Kong

21   International Funds Limited, which we've been

22   referring to as HK International, correct?

23        A.   The Fifth.

24        Q.   Mr. Kwok, at that time, all assets of Hong

25   Kong International belonged to you, correct?

1                    H. Kwok

2          MR. ROMNEY:  Object to the form.

3      A.   The Fifth.

4  BY MR. LUFT:

5      Q.   Mr. Kwok, you were Hong Kong

6  International's sole shareholder and director up to

7  and through October 10, 2014, correct?

8      A.   The Fifth.

9      Q.   Mr. Kwok, in October 2014, Natasha Qu,

10  also known as Qu Guo Jiao was your financial

11  manager, correct?

12     A.   The Fifth.

13     Q.   And Ms. Qu handled your financial affairs

14  at that time, correct?

15     A.   The Fifth.

16     Q.   Mr. Kwok, at that time Ms. Qu was your

17  employee and acted as your agent on all matters

18  relating to your finances, correct?

19         MR. ROMNEY:  Object to the form.

20     A.   The Fifth.

21  BY MR. LUFT:

22     Q.   Mr. Kwok, the Declaration of Trust that

23  was entered into between you and Ms. Qu, which has

24  been marked as Exhibit 1, identified Ms. Qu as the

25  trustee and you as the beneficiary, correct?

1                         H. Kwok

2             MR. ROMNEY:  Object to the form.

3       A.   The Fifth.

4  BY MR. LUFT:

5       Q.   Mr. Kwok, that Declaration of Trust which

6  has been marked as Exhibit 1, which I'll refer to as

7  "HK International Declaration of Trust," was entered

8  into with Ms. Qu -- sorry -- that was entered into

9  with Ms. Qu, authorized and requested Ms. Qu to hold

10  your main shares in Hong Kong International,

11  correct?

12             MR. LUFT:  I'm going to strike that

13             question, because I don't think it came across

14             clearly.

15  BY MR. LUFT:

16       Q.   Mr. Kwok, pursuant to the Hong Kong

17  International Declaration of Trust you entered into

18  with Ms. Qu, you authorized and requested Ms. Qu to

19  hold in your name shares in Hong Kong International,

20  correct?

21       A.   The Fifth.

22       Q.   Mr. Kwok, the Hong Kong International

23  Declaration of Trust that you entered into with

24  Ms. Qu provides that the shares you transferred to

25  Ms. Qu do not belong to Ms. Qu, but to you, as the

Page 59

```
 1                      H. Kwok

 2   beneficiary under the agreement, correct?

 3              MR. ROMNEY:  Object to the form.

 4        A.   The Fifth.

 5   BY MR. LUFT:

 6        Q.   Mr. Kwok, the HK International Declaration

 7   of Trust that you entered into with Ms. Qu provides

 8   that Ms. Qu would hold the shares in Hong Kong

 9   International that you transferred to her as nominee

10   and in trust for you, correct?

11        A.   The Fifth.

12        Q.   Mr. Kwok, pursuant to the HK International

13   Declaration of Trust that you entered into with

14   Ms. Qu, Ms. Qu was to exercise the rights in

15   connection with the HK International shares that you

16   transferred to her solely at your direction,

17   correct?

18              MR. ROMNEY:  Object to the form.

19        A.   The Fifth.

20   BY MR. LUFT:

21        Q.   Mr. Kwok, even after October 10, 2014, you

22   continued to beneficially own HK International

23   pursuant to the undisclosed HK International

24   Declaration of Trust, correct?

25              MR. ROMNEY:  Object to the form.  Also,
```

Page 60

1                          H. Kwok

2          asked and answered.

3                  THE WITNESS:  Asked and answered.  Okay.

4          A.    The Fifth.

5     BY MR. LUFT:

6          Q.    Mr. Kwok, after October 10, 2014, you

7     continued to control HK International, correct?

8                  MR. ROMNEY:  Objection.  Asked and

9          answered.

10         A.    I'm quite confused.  You're asking the

11    same questions.  Every time, the same questions

12    again and again.

13    BY MR. LUFT:

14         Q.    Mr. Kwok, I don't believe I am.  Your

15    counsel is free to raise an asked-and-answered

16    objection, even though it is not an appropriate

17    objection at a deposition.  With that said, he's

18    free to raise it, but I still will need you to

19    answer the question.

20         A.    The Fifth.

21         Q.    Mr. Kwok, on February 23, 2015,

22    HK International purchased the Lady May for

23    EUR 28 million from Apsley Yacht Limited at your

24    direction, correct?

25                  MR. ROMNEY:  Object to the form.

1                          H. Kwok

2        A.    The Fifth.

3   BY MR. LUFT:

4        Q.    Mr. Kwok, in February 2015, you

5   exclusively beneficially owned and controlled

6   Bravo Luck Limited, correct?

7              MR. ROMNEY:   Objection.

8        A.    The Fifth.

9   BY MR. LUFT:

10       Q.    Mr. Kwok, today you still beneficially own

11  and control Bravo Luck Limited, correct?

12       A.    The Fifth.

13       Q.    Mr. Kwok, on February 23, 2015, Bravo Luck

14  Limited transferred, at your direction, funds from a

15  Bravo Luck bank account at UBS that you exclusively

16  control, correct?

17             MR. ROMNEY:   Object to the form.

18       A.    The Fifth.

19             MR. LUFT:   I'm going to ask that the court

20        reporter mark as Kwok PJR Deposition Exhibit 2,

21        document bearing the Bates stamp UBS00137

22        through 156.

23             Will, that's tab 190, if you could put it

24        up.

25             (Kwok PJR Exhibit 2 was received and

1                         H. Kwok

2         marked for identification, as of this date.)

3    BY MR. LUFT:

4         Q.   Mr. Kwok, do you recognize this document?

5              MR. ROMNEY:   Could you make that larger?

6         A.   The Fifth.

7    BY MR. LUFT:

8         Q.   Mr. Kwok, this is a 2015 UBS bank

9    statement for Bravo Luck showing funds that you

10   beneficially owned and controlled in that account,

11   correct?

12        A.   The Fifth.

13        Q.   Mr. Kwok, the funds held by -- in that

14   Bravo Luck account on your behalf at UBS came from

15   Eastern Profit Corporation in the amount of

16   370 million and Hong Kong International in the

17   amount of 150 million, both entities that you owned

18   and controlled, correct?

19             MR. ROMNEY:   Object to the form.

20        A.   The Fifth.

21             MR. LUFT:   I'll ask the court reporter to

22        mark, as Kwok PJR Deposition Exhibit 3, a

23        document Bates-stamped UBS02746.

24             (Kwok PJR Exhibit 3 was received and

25        marked for identification, as of this date.)

```
1                        H. Kwok

2  BY MR. LUFT:

3      Q.   This shows the UBS wire transfer of

4  25 million for purposes of purchasing the Lady May?

5           MR. ROMNEY:  Is that a question?  I didn't

6      know if you were talking.

7           MR. LUFT:  I'm just setting it up.  I will

8      ask him a question once he can see it, Aaron.

9           MR. ROMNEY:  Yeah, yeah.  That's -- I just

10      wanted clarification.  Thank you.

11           MR. LUFT:  Fine.  I didn't want to ask him

12      the question before he could see the document.

13           MR. ROMNEY:  Yep.

14           Could you make that a bit bigger, please.

15           Thank you.

16  BY MR. LUFT:

17      Q.   Mr. Kwok, first of all, if we scroll down,

18  do you recognize the signature on the document?

19      A.   The Fifth.

20      Q.   Mr. Kwok, that's your signature, correct?

21      A.   The Fifth.

22      Q.   Mr. Kwok, this is a UBS wire transfer

23  document showing the transfer of $25 million of

24  funds from the UBS bank account we just saw a

25  statement for in Exhibit 2 that were used for
```

1                        H. Kwok

2   purchases of acquiring the Lady May for you,

3   correct?

4        A.   The Fifth.

5             MR. ROMNEY:  Avi, has this Exhibit 2 been

6        produced to the parties in this adversary

7        proceeding?

8             MR. LUFT:  I'll have to get back to you on

9        that.

10            MR. ROMNEY:  Okay.  Thank you.

11  BY MR. LUFT:

12       Q.   Mr. Kwok, you had exclusive control over

13  the UBS bank account that we have been discussing,

14  correct?

15       A.   The Fifth.

16       Q.   Mr. Kwok, your son Mileson Kwok had no

17  involvement in any transaction relating to

18  HK International's acquisition of the Lady May,

19  correct?

20       A.   The Fifth.

21            MR. LUFT:  Aaron, it is 1:22.  Do you guys

22       want to take a lunch break?  Do you want to

23       keep going?

24            I'm also conscious of the court reporter

25       and the videographer -- and the translator.

1              H. Kwok

2    Sorry, Jingyi.

3         MR. ROMNEY:  What's your over/under on

4    what you've got left for the day?

5         (A discussion was held off the record.)

6         THE VIDEOGRAPHER:  We're going off the

7    record at 1:22 p.m.

8         (At 1:22 p.m. a luncheon recess was

9    taken.)

10         (At 2:00 p.m. the deposition resumes.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           H. Kwok

2     ************************************************

3            A F T E R N O O N    S E S S I O N

4     ************************************************

5            THE VIDEOGRAPHER:  We're back on the

6     record at 2:00 p.m.

7     BY MR. LUFT:

8         Q.   Good afternoon, Mr. Kwok.

9         A.   Good afternoon.

10        Q.   Mr. Kwok, you're familiar with the

11    proposed Chapter 11 plan that was submitted in your

12    Chapter 11 case, correct?

13        A.   The Fifth.

14        Q.   Mr. Kwok, you're aware that under the plan

15    proposed and put forth by your counsel at

16    Brown Rudnick, there was a reference to there being

17    a quote-unquote "boat contribution," correct?

18        A.   The Fifth.

19        Q.   Mr. Kwok, under the plan for the boat

20    contribution, that provided for the Lady May to be

21    contributed to a creditor trust, correct?

22        A.   The Fifth.

23        Q.   Mr. Kwok, at the time the Chapter 11 plan

24    was proposed, including the boat contribution, you

25    were the beneficial owner and controlled the

1                        H. Kwok

2   Lady May, correct?

3        A.   The Fifth.

4        Q.   Mr. Kwok, the boat contribution under the

5   proposed plan was not actually a contribution to be

6   made by HK USA because your estate already

7   beneficially owned and controlled the Lady May,

8   correct?

9             MR. ROMNEY:  Object to the form.

10       A.   The Fifth.

11  BY MR. LUFT:

12       Q.   Mr. Kwok, you're aware that HK USA filed

13  an adversary proceeding against you claiming

14  ownership of the Lady May, correct?

15       A.   The Fifth.

16       Q.   Mr. Kwok, you're aware that that adversary

17  proceeding was filed by HK USA so that the Lady May

18  would be treated as a contribution by HK USA and

19  your daughter Mei Guo for purposes of justifying

20  them receiving a release under the plan, correct?

21            MR. ROMNEY:  Object to the form.

22       A.   The Fifth.

23  BY MR. LUFT:

24       Q.   Mr. Kwok, the plan to file the adversary

25  proceeding simultaneous with the boat contribution

1                          H. Kwok

2    under the plan was a joint plan arrived at by your

3    counsel as well as counsel for HK USA, correct?

4         A.   The Fifth.

5         Q.   Mr. Kwok, you were represented by a man

6    named Aaron Mitchell for purposes of these

7    proceedings, correct?

8         A.   The Fifth.

9         Q.   Mr. Mitchell was simultaneously serving as

10   counsel to HK USA and Mei Guo, correct?

11              MR. ROMNEY:   Object to the form.

12        A.   The Fifth.

13   BY MR. LUFT:

14        Q.   For purposes of representing you for your

15   Chapter 11 proceeding and HK USA and Mei Guo in

16   connection with the Chapter 11 proceeding in the

17   adversary action, you believe there to be no

18   conflict of interest for Mr. Mitchell because you

19   beneficially owned and controlled both your estate

20   and HK USA and the Lady May, correct?

21        A.   The Fifth.

22              MR. LUFT:   I'm going to ask that Kwok

23        PJR Deposition Exhibit 4 -- let me strike that.

24              I'm going to ask that ECF299 -- which is

25        the stipulated order compelling

1                          H. Kwok

2          HK International Funds Investments (USA)

3          Limited, LLC to transport and deliver that

4          Certain Yacht, the "Lady May" -- be marked as

5          Kwok PJR Deposition Exhibit No. 4, and that it

6          be shown to the witness.

7                  (Kwok PJR Exhibit 4 was received and

8          marked for identification, as of this date.)

9     BY MR. LUFT:

10         Q.   Mr. Kwok, through your counsel, you've

11    agreed to be bound by this order, correct?

12         A.   I don't understand the English.

13         Q.   My question is did you direct your counsel

14    to agree that you'd be bound by this stipulated

15    order which has been marked as Exhibit 4?

16         A.   The Fifth.

17         Q.   Mr. Kwok, you directed counsel for HK USA

18    to agree to be bound by this agreement, correct?

19         A.   The Fifth.

20         Q.   Mr. Kwok, as the beneficial owner and the

21    person in control of HK USA, you instructed your

22    daughter to agree to be bound by this agreement,

23    correct?

24         A.   The Fifth.

25         Q.   Mr. Kwok, you agreed for William Je to

1                            H. Kwok

2    send $37 million to be posted as a bond on April 13,

3    2022, correct?

4         A.   The Fifth.

5         Q.   Mr. Kwok, the loan agreement between

6    Mr. Je's -- let me strike that.

7              Mr. Kwok, the loan agreement between

8    Himalaya Capital and HK USA, both entities that you

9    own and control, was agreed to on April 19, 2022,

10   correct?

11             MR. ROMNEY:  Object to the form.

12        A.   The Fifth.

13   BY MR. LUFT:

14        Q.   Mr. Kwok, you directed both HK USA and

15   Himalaya Capital to enter into the $37 million loan

16   agreement, correct?

17        A.   The Fifth.

18        Q.   Mr. Kwok, sorry.  I have been referring to

19   them as "Himalaya International Capital."  What I

20   meant was Himalaya International Financial Group

21   Limited.

22             Does that correction change any of your

23   answers?

24             MR. ROMNEY:  Objection.

25        A.   The Fifth.

1                          H. Kwok

2    BY MR. LUFT:

3         Q.    For clarity, Mr. Kwok, you owned and

4    controlled Himalaya International Financial Group in

5    April 2022, correct?

6              MR. ROMNEY:   Asked and answered.

7         A.    The Fifth.

8    BY MR. LUFT:

9         Q.    Mr. Kwok, the terms set out in Exhibit 4,

10   which is the stipulated order compelling

11   HK International Funds Investments to transport and

12   deliver the Lady May, were irrelevant to your

13   decision to have Himalaya International Financial

14   Group loan $37 million to HK USA, correct?

15             MR. ROMNEY:   Object to the form.

16        A.    The Fifth.

17   BY MR. LUFT:

18        Q.    Mr. Kwok, you would have had -- sorry.

19   Let me strike that.

20             Mr. Kwok, HK USA entered into the

21   $37 million loan with Himalaya International

22   Financial Group Limited at your direction regardless

23   of any terms that were to be agreed to regarding the

24   stipulated order compelling the return of the

25   Lady May, correct?

```
 1                         H. Kwok
 2        A.    The Fifth.
 3              MR. ROMNEY:  Could I have that question
 4        read back?
 5              THE WITNESS:  Sorry.  I think I had --
 6        perhaps I had something bad for lunch.  I'm
 7        feeling uncomfortable and I need to use the
 8        bathroom and it might take a while.
 9              MR. LUFT:  Mr. Kwok, that's fine.  Take
10        care of whatever needs that you have and I will
11        be here when you get back.
12              THE VIDEOGRAPHER:  We're going off the
13        record at 2:18 p.m.
14              (Recess.)
15              THE VIDEOGRAPHER:  We're back on the
16        record at 2:27 p.m.
17   BY MR. LUFT:
18        Q.    Mr. Kwok, prior to Himalaya International
19   Financial Group Limited, the party -- the entity
20   that was going to loan HK USA the $37 million was
21   ACA Capital Group Limited, correct?
22        A.    The Fifth.
23        Q.    Mr. Kwok, you're the exclusive beneficial
24   owner of ACA Capital Group Limited, correct?
25        A.    The Fifth.
```

1                          H. Kwok

2        Q.    Mr. Kwok, you have exclusive control over

3   ACA Capital Group Limited, correct?

4        A.    The Fifth.

5        Q.    Mr. Kwok, you're the beneficial owner of

6   all assets of ACA Capital Group Limited, correct?

7        A.    The Fifth.

8        Q.    And Mr. Kwok, you have exclusive control

9   over the assets of ACA Capital Group Limited,

10  correct?

11       A.    The Fifth.

12       Q.    Mr. Kwok, you have exclusive control over

13  Saraca Media Group Limited, correct?

14       A.    The Fifth.

15       Q.    Mr. Kwok, you have exclusive beneficial

16  ownership of Saraca Media Group, correct?

17             Mr. Kwok, you have exclusive beneficial --

18  you're the exclusive beneficial owner of

19  Saraca Media Group, correct?

20       A.    The Fifth.

21       Q.    Mr. Kwok, the reason you had $37 million

22  sent over to post as a bond was so that you could

23  stay out of jail, correct?

24             MR. ROMNEY:  Object to the form.

25       A.    The Fifth.

1                          H. Kwok

2  BY MR. LUFT:

3       Q.   Mr. Kwok, because you're motivated by

4  staying out of jail, you would have had the

5  $37 million sent over to post as a bond regardless

6  of any terms associated with its return or how it

7  would be handled once the Lady May arrived, correct?

8            MR. ROMNEY:   Object to the form.

9       A.   The Fifth.

10           MR. LUFT:   Mr. Kwok, I want to show you

11       what I'll mark as an exhibit, a video from Vice

12       that I'll ask my colleague to play.  It will be

13       marked as Exhibit 5.

14           (Kwok PJR Exhibit 5 was received and

15       marked for identification, as of this date.)

16           THE WITNESS:   Is there a question?

17           MR. LUFT:   I'm sorry, Mr. Kwok, there was

18       not.  There was not any audio.  Once I can get

19       it to play, I'll ask you a question.

20           Anyone hear sound?

21           MR. ROMNEY:   We do not hear any sound.

22           MR. FARMER:   Sound issue.  Sorry.

23           MR. LUFT:   Take your time, Will.

24           THE WITNESS:   There's no sound.

25           MR. FARMER:   In that case, we may need to

1                            H. Kwok

2        return to this exhibit and I'll investigate how

3        to adjust the audio.

4            MR. LUFT:  Why don't we play it through

5        once without the sound and we will do what we

6        can do and, Will, you can work on it.

7            Will, could you play Exhibit 5.

8            MR. FARMER:  (Complies.)

9            (Video played without audio.)

10   BY MR. LUFT:

11       Q.   Mr. Kwok, do you recognize that you are

12   one of the people in that video?

13       A.   The Fifth.

14       Q.   Mr. Kwok, while we could not hear the

15   audio, under the subtitles there were repeated

16   references by you saying -- referring to "my yacht,"

17   correct?

18       A.   The Fifth.

19       Q.   And Mr. Kwok, the yacht you were referring

20   to when you told the interviewer from Vice News

21   about "my yacht" was the Lady May, correct?

22       A.   The Fifth.

23       Q.   Mr. Kwok, Exhibit 5 appears to be a true

24   and accurate copy of your interview with Vice News,

25   correct?

1                        H. Kwok

2        A.    The Fifth.

3              MR. LUFT:  Will, could I ask you to put up

4        the next video.  And we'll mark it as

5        Exhibit 6.

6              (Kwok PJR Exhibit 6 was received and

7        marked for identification, as of this date.)

8              (Video played with audio.)

9    BY MR. LUFT:

10       Q.    Mr. Kwok, you are the person speaking in

11   the video that is Exhibit 6, correct?

12       A.    The Fifth.

13       Q.    Mr. Kwok, you were aboard the Lady May at

14   the time of the video, correct?

15       A.    The Fifth.

16       Q.    Mr. Kwok, this video was created in

17   November of 2022, correct?

18       A.    The Fifth.

19       Q.    Mr. Kwok, this video was posted on Vetter

20   (phonetic) social media network you own and control,

21   correct?

22       A.    The Fifth.

23       Q.    Mr. Kwok, the video that has been marked

24   as Exhibit 6 is a true and accurate copy of you

25   speaking on the deck of the Lady May in November of

1                          H. Kwok

2    2022, correct?

3          A.    The Fifth.

4                MR. LUFT:  Will, could I ask you to play

5          the next video, which we'll mark as Kwok

6          PJR Deposition Exhibit No. 7.

7                (Kwok PJR Exhibit 7 was received and

8          marked for identification, as of this date.)

9                (Video played with audio.)

10   BY MR. LUFT:

11         Q.    Mr. Kwok, the person speaking in that

12   video is you, correct?

13         A.    The Fifth.

14         Q.    And in the video, Mr. Kwok, that's a true

15   and accurate copy of an interview you gave,

16   Mr. Kwok?

17         A.    The Fifth.

18         Q.    Mr. Kwok, in the video you talk about

19   selling the Lady May, correct?

20         A.    The Fifth.

21         Q.    Mr. Kwok, in the video you talk about how

22   when you purchased the Lady May in 2015, it was

23   delivered to Miami at that time, correct?

24         A.    The Fifth.

25         Q.    Mr. Kwok, the Lady May has been in the

1                        H. Kwok

2   United States since 2015, correct?

3        A.   The Fifth.

4        Q.   Mr. Kwok, you have been in the

5   United States the entire time that the Lady May has

6   been in the United States, correct?

7             Let me strike that.

8             Mr. Kwok, you have been residing in the

9   United States since 2015, correct?

10       A.   The Fifth.

11       Q.   Mr. Kwok, your daughter Mei Guo did not

12   come to the United States until 2017, correct?

13            MR. ROMNEY:   Object to the form.

14       A.   The Fifth.

15   BY MR. LUFT:

16       Q.   Mr. Kwok, when the Lady May was purchased

17   in 2015, it was not delivered to the location where

18   Mei Guo was living but, in fact, was delivered to

19   the United States where you were living, correct?

20       A.   The Fifth.

21       Q.   Mr. Kwok, between the time the boat was

22   delivered to Miami in 2015 and June of 2017, you

23   used -- you boarded and sailed on the Lady May

24   frequently, correct?

25       A.   The Fifth.

1                          H. Kwok

2        Q.    Mr. Kwok, at no time during this period

3   did your daughter, Mei Guo, ever step foot on the

4   Lady May, correct?

5        A.    The Fifth.

6        Q.    Mr. Kwok, your use of the Lady May between

7   2015 and June 2017 is no different than your use of

8   the Lady May from June 2017 until the present,

9   correct?

10           MR. ROMNEY:  Object to the form.

11       A.    The Fifth.

12           THE WITNESS:  Ms. Wang, I need to go to

13       the bathroom again.  I'm feeling uncomfortable.

14           MR. LUFT:  Let's take a break so that you

15       can do so.

16           THE WITNESS:  I'm really sorry.

17           MR. LUFT:  No.  Please, take care of

18       yourself.

19           THE VIDEOGRAPHER:  We're going off the

20       record at 2:49 p.m.

21           (Recess.)

22           THE VIDEOGRAPHER:  We're back on the

23       record at 2:54 p.m.

24   BY MR. LUFT:

25       Q.    Mr. Kwok, I'm going to ask my colleague to

1                          H. Kwok

2     put back up Exhibit 5, which I'm told now we have

3     audio for.

4              MR. FARMER:  One moment.

5              (Video played with audio.)

6     BY MR. LUFT:

7        Q.    Mr. Kwok, now that you could hear the

8     audio of that video, do you agree that that is a

9     true and accurate copy of the interview that you

10    gave with Vice News?

11       A.    The Fifth.

12       Q.    Mr. Kwok, you heard in that video which is

13    Exhibit 5 multiple references to "my yacht,"

14    correct?

15       A.    The Fifth.

16       Q.    And Mr. Kwok, the yacht that you were

17    referencing in Exhibit 5 repeatedly as "my yacht" is

18    the Lady May, correct?

19       A.    The Fifth.

20              MR. LUFT:  I'll ask my colleague, Will

21         Farmer, to post the next video, which we'll

22         mark as Exhibit 8 for this deposition.

23              (Kwok PJR Exhibit 8 was received and

24         marked for identification, as of this date.)

25              (Video played with audio.)

1                        H. Kwok

2    BY MR. LUFT:

3        Q.   Mr. Kwok, you see yourself in the top

4    left-hand corner of that call -- the video of that

5    call, with the name Miles under you?

6        A.   The Fifth.

7        Q.   Mr. Kwok, this is a true and accurate copy

8    of a call that you conducted, correct?

9        A.   The Fifth.

10       Q.   Mr. Kwok, on that call, you were telling

11   participants that if they had any questions, they

12   should reach out to William Je, correct?

13       A.   The Fifth.

14       Q.   And Mr. Kwok, in this video of the call

15   you conducted, you were telling the participants

16   that if they had questions relating to transferring

17   funds to entities you own and control, they should

18   speak to your agent, William Je, correct?

19       A.   The Fifth.

20           MR. LUFT:  Will, could you please -- I'll

21       ask you to mark as Exhibit 9, the next exhibit,

22       which, I believe, is a Tweet dated

23       May 10, 2017.

24           (Kwok PJR Exhibit 9 was received and

25       marked for identification, as of this date.)

1                         H. Kwok

2    BY MR. LUFT:

3         Q.   Mr. Kwok, do you recognize yourself in

4    this exhibit?

5         A.   The Fifth.

6         Q.   Mr. Kwok, this is a true and accurate copy

7    of the Tweet you posted, correct?

8         A.   The Fifth.

9         Q.   And in this Tweet, Mr. Kwok, from May 10,

10   2017, you state that you're posting photos of "the

11   yacht I gave to my daughter and named after her,"

12   correct?

13        A.   The Fifth.

14        Q.   Mr. Kwok, in this Tweet you also wrote

15   that "I bought the Lady May for EUR 41 million,"

16   correct?

17        A.   The Fifth.

18        Q.   Mr. Kwok, you see below it, if we could

19   scroll down, there's another Tweet from August 27,

20   2017.

21             Do you see that Mr. Kwok?

22        A.   Ms. Wang, what is the question?

23        Q.   Whether you see the Tweet from

24   August 27, 2017 below the one where that is a

25   picture of you?

1                          H. Kwok

2          A.    The Fifth.

3          Q.    Do you see -- and this is a true and

4    accurate copy of the Tweets you posted on August 27,

5    2017, Mr. Kwok?

6          A.    The Fifth.

7          Q.    Mr. Kwok, in this Tweet you refer to the

8    Lady May as "my ship," correct?

9          A.    The Fifth.

10         Q.    And you wrote those words, correct, Mr.

11   Kwok?

12         A.    The Fifth.

13         Q.    Mr. Kwok, in this Tweet you also write

14   "This was two years ago, when I was in Miami, when I

15   had just signed the most important investment

16   contract of my life," exclamation point.

17               Do you see that?

18         A.    The Fifth.

19         Q.    Mr. Kwok, who did you sign the most

20   important investment contract of your life with?

21         A.    The Fifth.

22         Q.    Mr. Kwok, you signed that investment

23   contract on your own behalf, not acting as anyone

24   else's agent, correct?

25         A.    The Fifth.

1                              H. Kwok

2        Q.    Mr. Kwok, what did you do with the assets

3   you received from signing that investment contract?

4        A.    The Fifth.

5        Q.    Mr. Kwok, you own and control an entity

6   called "HCHK Property Management Inc.," correct?

7        A.    The Fifth.

8        Q.    Mr. Kwok, and for the record, when

9   referencing the video exhibits I've shown you today,

10   your answers would not change if I was describing

11   the videos as true and correct recordings as opposed

12   to true and correct copies, correct?

13        A.    In this one, what's the question?

14        Q.    When referencing the video exhibits we've

15   looked at today, meaning Exhibits 5, 6, 7, and 8, I

16   asked you if they were true and correct copies.

17              And what I want to know is, your answers

18   would not change if I also asked you the same

19   question as to whether they're true and accurate

20   recordings of those videos, correct?

21        A.    The Fifth.

22        Q.    Mr. Kwok, you own and control a property

23   called "HCHK Technologies Inc.," correct?

24              THE INTERPRETER:  HCHK Technologies, Inc.,

25        is that the company's name?

1                            H. Kwok

2              MR. LUFT:  Yes, ma'am.

3        A.    The Fifth.

4   BY MR. LUFT:

5        Q.    Mr. Kwok, a man named Elliot Dordick is

6   affiliated with HCHK Technologies, Inc., and HCHK

7   Property Management, Inc., correct?

8        A.    The Fifth.

9        Q.    Mr. Kwok, all actions and statements made

10  and taken by Mr. Dordick in relation to the

11  Chapter 11 trustee in this case, (indiscernible),

12  have been done at your direction and under your

13  control?

14              MR. ROMNEY:  I'm going to object.  Again,

15        we seem to be getting pretty far outside the

16        scope of anything in this adversary proceeding.

17              Go ahead an answer this one, but absent an

18        offer of proof, I'm going to start instructing

19        the witness not to answer to this line.

20              Go ahead.

21        A.    The Fifth.

22  BY MR. LUFT:

23        Q.    Mr. Kwok, in addition to the Lady May, you

24  also own and control a second boat named the

25  Lady May II, correct?

```
 1                        H. Kwok

 2        A.    The Fifth.

 3        Q.    The Lady May II, like the Lady May, is

 4   also an asset of your estate, correct?

 5              MR. ROMNEY:   Object to the form.

 6        A.    The Fifth.

 7   BY MR. LUFT:

 8        Q.    Mr. Kwok, where is the Lady May II

 9   currently located?

10        A.    The Fifth.

11        Q.    Mr. Kwok, Daniel Podhaskie served as your

12   counsel previously, correct?

13        A.    The Fifth.

14        Q.    Mr. Podhaskie was your employee, correct?

15        A.    The Fifth.

16        Q.    Mr. Kwok, Mr. Podhaskie has acted as your

17   agent, correct?

18        A.    The Fifth.

19        Q.    Mr. Kwok, all actions Mr. Podhaskie took

20   as counsel to Golden Spring were, in fact, actions

21   taken at your direction and for your benefit,

22   correct?

23        A.    The Fifth.

24        Q.    Mr. Kwok, all actions taken by Daniel

25   Podhaskie relating to Golden Spring, Leading Shine
```

1           H. Kwok

2    Limited, Saraca Media Group, Greenwich Land LLC,

3    Rule of Law Society, and the Sherry-Netherland

4    apartment were all taken at your direction, correct?

5         A.   The Fifth.

6         Q.   Mr. Kwok, Anthony D'Battista is also an

7    employee of yours, correct?

8         A.   The Fifth.

9         Q.   Mr. D'Battista acts as your agent in

10   connection with his work related to all the G

11   entities in Saraca Media, correct?

12             (Reporter clarification.)

13   BY MR. LUFT:

14        Q.   Mr. Kwok, Mr. D'Battista acts as your

15   agent and under your direction in connection with

16   all of his activities related to the G entities, by

17   which I mean, G Fashion G Music G Club, Getter, as

18   well as Saraca Media, correct?

19        A.   The Fifth.

20        Q.   Mr. Kwok, you know who Fiona Yu is,

21   correct?

22        A.   The Fifth.

23        Q.   You directed Fiona Yu to speak as your

24   agent in connection with seeking legal advice

25   related to hiding the Lady May from your creditors

1                        H. Kwok

2   when she discussed this with your counsel, Hodgson

3   Russ, correct?

4        A.   The Fifth.

5        Q.   Mr. Kwok, similarly, Ms. Yu took all

6   actions related to ACA Capital Group Limited at your

7   direction, correct?

8        A.   The Fifth.

9        Q.   And Mr. Kwok, you installed Fiona Yu as

10  the company secretary of ACA Capital Group Limited,

11  an entity you own and control, correct?

12       A.   The Fifth.

13       Q.   Mr. Kwok, Karen Maistrello is another

14  person who acts as your agent in connection with

15  your business transactions, correct?

16       A.   The Fifth.

17            MR. LUFT:  And for the record, Maistrello

18       is spelled M-A-I-S-T-R-E-L-L-O.

19            THE WITNESS:  Do I need to answer?

20            MR. LUFT:  No.  I'm just providing that

21       information to the Court Reporter, Mr. Kwok.

22       There's nothing for you to do.

23  BY MR. LUFT:

24       Q.   Mr. Kwok, Ms. Maistrello was an employee

25  of yours, correct?

1                       H. Kwok

2        A.    The Fifth.

3        Q.    Mr. Kwok, you're aware of a man named Han

4    Chunguang?

5        A.    The Fifth.

6        Q.    Mr. Kwok, Eastern Profit Limited is an

7    entity in the name of your daughter Mei Guo,

8    correct?

9        A.    The Fifth.

10        Q.    And Mr. Kwok, all actions taken by

11    Mr. Chunguang as relate to Eastern Profit are taken

12    at your direction, correct?

13             MR. ROMNEY:   Object to the form.

14        A.    The Fifth.

15    BY MR. LUFT:

16        Q.    Mr. Kwok, Mr. Chunguang acts as your agent

17    in connection with all endeavors related to any

18    entities related to you, correct?

19             MR. ROMNEY:   I'm going to object.  We're,

20        once again, getting pretty far afield of the

21        relatively narrow allegations back and forth in

22        the HK adversary proceeding.

23             MR. LUFT:   I disagree.  This is another

24        entity in the name of Ms. Guo.

25             MR. ROMNEY:   Another entity?

1           H. Kwok

2           MR. LUFT:  Right.  Consistent with a

3       pattern and practice of activities.

4           MR. ROMNEY:  You can answer the question.

5       I guess, getting pretty far afield, I have not

6       yet directed the witness not to answer a

7       question.  Based on relevance, I'm telling you

8       we're getting pretty close on this one.

9           Go ahead.

10      A.   The Fifth.

11  BY MR. LUFT:

12      Q.   And I apologize to Mr. Han.  I'm told Han

13  is his last name.

14           Mr. Kwok, you understood who I was

15  referring to when I said Han Chunguang, that Han is

16  the last name?

17      A.   The Fifth.

18      Q.   And with that clarification, Mr. Kwok,

19  would that change any of the answers you've

20  previously given with regard to Mr. Han Chunguang?

21      A.   The Fifth.

22      Q.   Ms. Kwok, the Lady May was not the only

23  one of -- is not the only vehicle you owned and

24  controlled that you put in the name of your

25  daughter, correct?

1                        H. Kwok

2              MR. ROMNEY:  Object to the form.

3         A.   The Fifth.

4    BY MR. LUFT:

5         Q.   Mr. Kwok, you, as a beneficial owner

6    and -- control Whitecroft Shores Limited, which is a

7    BVI corporation in the name of your daughter?

8              MR. ROMNEY:  The audio got muffled on that

9         one.

10             MR. LUFT:  Sure.  I'm happy to ask it

11        again.

12   BY MR. LUFT:

13        Q.   Mr. Kwok, you beneficially owned and

14   controlled Whitecroft Shore Limited, a BVI

15   corporation that is listed in the name of your

16   daughter Mei Guo, correct?

17             MR. ROMNEY:  Object to the form.

18        A.   The Fifth.

19   BY MR. LUFT:

20        Q.   Mr. Kwok, you placed your asset Bombardier

21   Global XRS with the -- a plane, with the serial

22   number 9189, into Whitecroft Shore Limited, correct?

23        A.   The Fifth.

24        Q.   Mr. Kwok, despite this plane being listed

25   under the name of Whitecroft Shore Limited at all

1                         H. Kwok

2      times, you were the beneficial owner and controlled

3      that plane, correct?

4           A.    The Fifth.

5           Q.    Mr. Kwok, you're similarly the beneficial

6      owner and control an airbus, ACJ319, correct?

7           A.    The Fifth.

8           Q.    Mr. Kwok, all funds used to purchase the

9      Bombardier Global XRS and airbus ACJ319 belong to

10     you, correct?

11          A.    The Fifth.

12               MR. ROMNEY:   Avi, I do think we need to

13          start moving on.  I get your point and

14          understand your point.  You're trying to prove

15          some sort of course of conduct.  I'm not saying

16          I agree with it, but I understand the concept

17          that you're doing.  But I think delving into

18          multiple layers that are of multiple entities

19          in questions that are nearly identical is

20          becoming extremely redundant, going outside the

21          rule -- of the scope of Rule 26, and getting to

22          the point of harassment-like behavior.

23               And I'm not saying that to be

24          disrespectful; I'm just saying that so we can

25          all move on with our lives after today or move

1                           H. Kwok

2        on with our lives today, because this is

3        getting extremely far outside the scope.

4             MR. LUFT:  Okay.  I hear your point.  I

5        don't agree with you.  That said, I think you

6        understand the point I'm trying to make and why

7        I think that's pertinent.

8             I will try to move through.  I don't think

9        there's very much more, and I'll try to move

10       through it quickly.

11            MR. ROMNEY:  Thank you.

12            MR. LUFT:  Okay.

13            MR. ROMNEY:  All right.

14            MR. LUFT:  Just a couple more entities and

15       a couple more people, and I think we'll be

16       okay.

17  BY MR. LUFT:

18       Q.   Mr. Kwok, you're familiar with a person

19  named Zhang Wei, correct?

20       A.   The Fifth.

21       Q.   Mr. Kwok, any actions taken by Zhang Wei

22  related to any assets or entities related to you are

23  taken at your direction and under your control,

24  correct?

25            MR. ROMNEY:  Object to the form.

1                          H. Kwok

2        A.   The Fifth.

3   BY MR. LUFT:

4        Q.   Mr. Kwok, Zhang Wei was never the owner of

5   Genever Holdings LLC, correct?

6             (Reporter clarification.)

7   BY MR. LUFT:

8        Q.   Zhang Wei was never the owner of Genever,

9   G-E-N-E-V-E-R, Holdings LLC, correct?

10            MR. ROMNEY:  Object to the question.  It

11       is related to another ongoing proceeding to

12       which Ms. Guo and HKI are already obviously

13       parties.  It's outside the scope of this

14       adversary proceeding.

15   BY MR. LUFT:

16       Q.   You can answer, Mr. Kwok.

17       A.   The Fifth.

18       Q.   Mr. Kwok, we talked about Bravo Luck

19   Limited earlier.

20            Mr. Zhang Wei never was the owner of

21   Bravo Luck Limited, correct?

22       A.   The Fifth.

23       Q.   Last question with regard to this and I'll

24   move on.

25            Mr. Zhang Wei was never the owner of

1                          H. Kwok

2   Genever Holdings Corporation, correct?

3        A.   The Fifth.

4        Q.   Mr. Kwok, you're the beneficial owner and

5   control Greenwich Land LLC, correct?

6             MR. ROMNEY:  I'm going to object and

7        direct the witness not to answer.  That is --

8        that entity doesn't relate to any party in this

9        adversary proceeding at all.

10            MR. LUFT:  So, Aaron, let me lay more of a

11       foundation and then, hopefully, you'll

12       understand, okay?

13            MR. ROMNEY:  Okay.

14   BY MR. LUFT:

15       Q.   Mr. Kwok, Max Krasner and Yvette Wang both

16   took actions related to the Lady May in connection

17   with their roles on your behalf with Golden Spring,

18   correct?

19            MR. ROMNEY:  Object to the form.

20       A.   The Fifth.

21   BY MR. LUFT:

22       Q.   Mr. Kwok, Mr. Krasner and Ms. Wang also

23   hold, at the same time, positions with Greenwich

24   Land LLC, correct?

25                THE WITNESS:  Sorry.  I need to go to the

1                         H. Kwok

2      bathroom again.  My belly is making some noises

3      again.

4           MR. LUFT:  Okay.  Mr. Kwok, I just need

5      you to answer this question because we can't

6      take a break while a question is pending, but

7      then I'll let you take a break.

8      A.   I've just answered this, the Fifth.

9           MR. LUFT:  Okay.  Let's take a break so

10     you can go to the bathroom.

11          THE VIDEOGRAPHER:  We're going off the

12     record at 3:37 p.m.

13          (Recess.)

14          THE VIDEOGRAPHER:  We're back on the

15     record at 3:43 p.m.

16   BY MR. LUFT:

17     Q.   Mr. Kwok, I'm going to ask you again, you

18   are the beneficial owner and control Greenwich Land

19   LLC, correct?

20     A.   The Fifth.

21     Q.   Okay.  Mr. Kwok, I'm going to ask that the

22   document --

23          MR. LUFT:  Will, if you could mark as Kwok

24     PJR Deposition Exhibit 10 -- Will, if you could

25     put up a document titled "Declaration of Trust

1                          H. Kwok

2          and Agreement."  That's at tab 211.

3               (Kwok PJR Exhibit 10 was received and

4          marked for identification, as of this date.)

5               MR. LUFT:  Will, if you go to the last

6          page.

7     BY MR. LUFT:

8          Q.   Mr. Kwok, do you recognize this document?

9          A.   The Fifth.

10         Q.   Mr. Kwok, do you see your signature on

11    this page -- on the last page?

12         A.   The Fifth.

13         Q.   Mr. Kwok, this trust agreement, which

14    is -- purported trust agreement, which has been

15    marked as Exhibit 10, did not exist as of March 6,

16    2015, when closing occurred for the purchase of the

17    Sherry-Netherland apartment, correct?

18              MR. ROMNEY:  I'm going to object.  This

19         document, again, is the subject of a dispute.

20         It's directly at issue in another adversary

21         proceeding to which the parties are not here.

22         I don't see any significance or any relevance

23         whatsoever to this document to HK USA or

24         Ms. Guo.

25              MR. LUFT:  Well, the entity that entered

1              H. Kwok

2       into Bravo Luck Limited is the same entity that

3       purportedly funded the purchase of the Lady May

4       and the Sherry-Netherland apartment.  I think

5       it's directly relevant.  I'm happy not to spend

6       a lot of time on it, but I would like an answer

7       to my question.

8       A.   The Fifth.

9            MR. LUFT:  Mr. Kwok, why don't we take a

10      five-minute break.  I may be done.  So let me

11      just check my notes.  Is that okay?

12           THE VIDEOGRAPHER:  We're going off the

13      record at 3:47 p.m.

14           (Recess.)

15           THE VIDEOGRAPHER:  We're back on the

16      record at 3:54 p.m.

17           MR. LUFT:  Mr. Kwok, your counsel and I

18      have discussed the idea that if the Court is

19      amenable, that in lieu of you giving live

20      testimony at the PJR hearing, that we can use

21      this deposition transcript.  I hope the Court

22      will agree to that.

23  BY MR. LUFT:

24      Q.   But let me just ask, if for whatever

25  reason you were to have to give live testimony at

1                          H. Kwok

2   this hearing and were asked the identical questions

3   that you were asked today, would you give the same

4   answers to them?

5           MR. ROMNEY:  Am I correct that the

6           question assumes the absence of an objection or

7           an objection that was not sustained?

8           Is that a fair qualification on the

9           question?

10          MR. LUFT:  My question assumes no waiver

11          of your right to object to any questions that

12          you objected to today.

13          MR. ROMNEY:  Thank you.

14          THE INTERPRETER:  The witness said "yes"

15          just now.  That didn't get interpreted.

16          MR. LUFT:  Okay.

17  BY MR. LUFT:

18          Q.  Just so we're clear Mr. Kwok, your answer

19  to my question is "yes"?

20          A.  Yes.

21          MR. LUFT:  Mr. Kwok, I have no further

22          questions for you at this time.  I thank you

23          very much for the time you've given us today.

24          MR. ROMNEY:  Thank you.  I have no

25          questions for the witness.

1              H. Kwok

2       THE WITNESS:  I wanted to take this

3   opportunity to also thank you -- say thank you

4   to everybody here today.  I'm sorry that

5   because I was feeling uncomfortable, so I

6   wasted quite a bit of everybody's time.

7       But I want to say thank you for all the

8   professional questions, and I also want to

9   extend my thanks to you, the Interpreters,

10  including Ms. Wang and Luyi, as well as the

11  Court Reporter and all of the counsels present

12  today as well as our videographer.

13      And I also want to say hello, please, to

14  pass on my greetings to the trust and Mr. Luc.

15      MR. LUFT:  I will definitely pass those

16  greetings along, Mr. Kwok, and I will echo your

17  thanks to the Court Reporter, the videographer

18  and the translator, who all did a tremendous

19  job today.  Thank you.

20      THE VIDEOGRAPHER:  This marks the end of

21  the deposition.  We're going off the record at

22  3:59 p.m.

23      (Deposition continues - Next page)

24

25

1

2          MR. LUFT:  Standing order.

3          MR. ROMNEY:  We'll take a copy but no

4      rough.

5          MS. SONG:  Same thing.

6          MR. ROMNEY:  We will also ask for a copy

7      of the video as well.

8

9          (Time noted:  3:59 p.m.)

10

11

12          _____

13                 HO WAN KWOK

14

15  Subscribed and sworn to

16  before me this    day

17  of          2023.

18  _____

19

20

21

22

23

24

25

1

2                              CERTIFICATE

3

4    STATE OF CONNECTICUT )

5                         :   ss

6            I, Angela M. Shaw-Crockett, a Certified Court

7    Reporter, Registered Merit Reporter and Notary Public within

8    and for the States of New York, New Jersey and Connecticut,

9    do hereby certify:

10           That HO WAN KWOK, the witness whose deposition is

11   hereinbefore set forth, was duly sworn by me and that such

12   deposition is a true record of the testimony given by such

13   witness.

14           I further certify that I am not related to any of

15   the parties to this action by blood or marriage and that I

16   am in no way interested in the outcome of this matter.

17           In witness whereof, I have hereunto set my hand

18   this 2nd day of March, 2023.

19                        *Angela Shaw Crockett*

20           ----------------------------------------
             ANGELA M. SHAW-CROCKETT, CCR, CRR, RMR, CSR
21           LICENSE NO. XI00218400

22

23

24

25

1

2                    C O N T E N T S

3    MR. LUFT                                          7

4                    E X H I B I T S

5          (Retained by the court reporter)

6    DEPOSITION            EXHIBIT                    PAGE

7    Exhibit 1   Declaration of Trust                 19

8    Exhibit 2   UBS Account Statement, Bravo Luck     62
                 Ltd., Bates UBS00137
9
     Exhibit 3   Wire Transfer, 15 March 2015, Bates   63
10               UBS02746

11   Exhibit 4   Stipulated Order                      69

12   Exhibit 5   Video from Vice                       74

13   Exhibit 6   Video                                 76

14   Exhibit 7   Video                                 77

15   Exhibit 8   Video                                 80

16   Exhibit 9   Tweet, dated May 10, 2017             82

17   Exhibit 10  Declaration of Trust and Agreement    97

18

19

20

21

22

23

24

25

1

2    NAME OF CASE:  In Re: Ho Wan Kwok

3    DATE OF DEPOSITION:  March 2, 2023

4    NAME OF WITNESS:  Ho Wan Kwok

5    Reason Codes:

6        1.  To clarify the record.
         2.  To conform to the facts.
7        3.  To correct transcription errors.

8    Page _____ Line _____ Reason _____
     From _____ to _____
9

10   Page _____ Line _____ Reason _____
     From _____ to _____
11

12   Page _____ Line _____ Reason _____
     From _____ to _____
13

14   Page _____ Line _____ Reason _____
     From _____ to _____
15

16   Page _____ Line _____ Reason _____
     From _____ to _____
17

18   Page _____ Line _____ Reason _____
     From _____ to _____
19

20   Page _____ Line _____ Reason _____
     From _____ to _____
21

22   Page _____ Line _____ Reason _____
     From _____ to _____
23

24        _____
                   HO WAN KWOK
25