```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                         BRIDGEPORT DIVISION

In Re                              *   Case No. 22-50073 (JAM)
                                   *
HO WAN KWOK and GENEVER            *
 HOLDINGS CORPORATION,             *   Bridgeport, Connecticut
                                   *   May 10, 2023
              Debtor.              *
                                   *
* * * * * * * * * * * * * * * *

                          TRANSCRIPT OF
#1744     MOTION FOR ORDER AUTHORIZING OPERATIONS OF
          LADY MAY II
#1758     MOTION FOR ORDER AUTHORIZING TRANSFER OF LADY
          MAY TO FOREIGN-TRADE ZONE
            BEFORE THE HONORABLE JULIE A. MANNING
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


Chapter 11 Trustee:              LUC A. DESPINS, ESQ.
                                 Paul Hastings
                                 200 Park Avenue
                                 New York, NY  10166

For the Chapter 11 Trustee:      G. ALEXANDER BONGARTZ, ESQ.
                                 Paul Hastings LLP
                                 200 Park Avenue
                                 New York, NY  10166

                                 PATRICK R. LINSEY, ESQ.
                                 Neubert Pepe & Monteith, PC
                                 195 Church Street
                                 New Haven, CT  06510




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES: (Cont'd)

For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the United States
                                  Trustee
                               The Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510

For the Creditor, Pacific      STUART SARNOFF, ESQ.
 Alliance Asia Opportunity     O'Melveny & Myers LLP
 Fund L.P.:                    Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               ANNECCA H. SMITH, ESQ.
                               Robinson & Cole
                               28 Trumbull Street
                               Hartford, CT  06103

For HK International Funds     SAM DELLA FERA, JR., ESQ.
 Investments, LLC and          Chiesa Shanhinian &
 *Mei Guo:                      Giantomasi, P.C.
                               105 Eisenhower Parkway
                               Roseland, NJ  07068
```

1          (Proceedings commenced at 1:05 p.m.)
2               THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan
3     Kwok.
4               THE COURT:  Good afternoon.  If we could have
5     appearances for the record starting with the Chapter 11
6     Trustee, please.
7               MR. DESPINS:  Good afternoon, Your Honor.  Luc
8     Despins, Chapter 11 Trustee.
9               MR. LINSEY:  Good afternoon, Your Honor.  Patrick
10    Linsey for the Trustee.
11              MR. BONGARTZ:  Good afternoon, Your Honor.  This
12    is Alex Bongartz, from Paul Hastings, also for the Chapter
13    11 Trustee.
14              THE COURT:  Good afternoon.
15              And then I'm just looking at people in order.  I'm
16    just looking at how you appear.
17              Of the Office of the United States Trustee?
18              MS. CLAIBORN:  Good afternoon, Your Honor.  Holley
19    Claiborn for the U.S. Trustee.
20              THE COURT:  Counsel for PAX?
21              MR. SARNOFF:  Good afternoon, Your Honor.  Stuart
22    Sarnoff, counsel for PAX, of O'Melveny & Myers.  With me is
23    local counsel, Annecca Smith, from Robinson & Cole.
24              THE COURT:  Good afternoon.
25              MS. SMITH:  Good afternoon, Your Honor.

1           THE COURT:  Counsel for the Committee?

2           MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

3   Mayhew, Pullman & Comley, on behalf of the Creditors

4   Committee.

5           THE COURT:  And counsel for the debtor and/or --

6           Who are appearing on behalf of today, Mr. Della

7   Fera?

8           MR. DELLA FERA:  Good afternoon, Your Honor.  Sam

9   Della Fera, Chiesa Shanhinian & Giantomasi, on behalf of Mei

10  Guo and Hong Kong International Funds Investments Limited,

11  LLC.

12          THE COURT:  Okay.  Thank you.

13          So no one is appearing for the debtor, is that

14  correct?

15          Trustee Despins, do you expect anyone for the

16  debtor appearing?

17          MR. DESPINS:  No, Your Honor.  Not aware.

18          THE COURT:  Okay.  All right.  Well, there are two

19  motions on the calendar today, the motion for order

20  authorizing operation of the Lady May II and the motion for

21  order authorizing the transfer of the Lady May to the

22  Foreign-Trade Zone.

23          So please proceed however you wish to proceed,

24  Trustee Despins.

25          MR. DESPINS:  Mr. Bongartz will be handling these

1  matters, Your Honor.  Thank you.

2             THE COURT:  Okay.  Thank you.

3             Mr. Bongartz, before you start, we just had a

4  little bit of difficulty hearing you when you made your

5  appearance --

6             MR. BONGARTZ:  Okay.

7             THE COURT:  -- so I would just note that.  And you

8  might need to get closer to the microphone or whatever the

9  situation may be.  Okay?

10            MR. BONGARTZ:  Of course, Your Honor.  Let me just

11 repeat my appearance again, and I hope this works better.

12            THE COURT:  It does.

13            MR. BONGARTZ:  If it doesn't, please let -- okay.

14            This is Alex Bongartz, of Paul Hastings, for the

15 Chapter 11 Trustee.

16            As Your Honor noted, we have two matters going

17 forward at today's hearing.  I don't have a particular

18 preference, but I will start in the order they were filed.

19 The first one being the motion related to certain agreements

20 and other operational issues concerning the Lady May II.

21            Just to briefly recap, much of the focus to date

22 has been on the Lady May.  Obviously, Your Honor will recall

23 that you had approved a motion authorizing the Trustee to

24 enter into a yacht management agreement with Yachtzoo as

25 well as a crew provision agreement.  You had also authorized

1	the Trustee to retain Edmiston as sales broker. And you
2	would also recall you had authorized relocating the Lady May
3	to the navigable waters of Rhode Island, in particular the
4	shipyard in Newport.
5	          Today, I'll be turning now to the Lady May II.
6	And I think the easiest way to present this motion is to
7	look at the four aspects of the motion on which -- in which
8	we're seeking relief.
9	          The first one is very straightforward. We simply
10	seek to add the Lady May II to the agreement that had
11	already been approved with respect to the Lady May, in
12	particular, the management agreement with Yachtzoo and the
13	crew provision agreement with FDS. And the addenda had been
14	attached to the motion. And as I stated, they simply add
15	the Lady May II to those agreements.
16	          And I should also note that with respect to the
17	yacht management agreement Yachtzoo will not charge any
18	additional monthly fees.
19	          As it relates to the crew provision agreement, by
20	virtue of the fact that there will be a new captain for the
21	Lady May II, the number of crew members, the total number of
22	crew members across both yachts will actually increase from
23	five to six, which results in a small increase of a monthly
24	fees of around $900 to around $1200.
25	          And that actually brings me to the second aspect

1   of the relief we're seeking in this motion, and that is the
2   employment of the captain for the Lady May II.  I want to be
3   very precise.  The Trustee is not himself engaging or hiring
4   the captain.  The captain would be hired by FDS through the
5   crew provision agreement which I just covered.
6              But we still want the Court to be aware that there
7   is a captain that is being selected and hired here and we
8   want authorization for the Trustee to direct FDS to then go
9   out and hire the captain.
10             In particular, we have selected Mr. William Burke,
11  who has substantial maritime experience as we have described
12  in the motion.
13             And of particular note he would only be hired on a
14  part-time basis.  I think the -- well, we detailed in the
15  motion that the daily fee would be $300 and we're expecting
16  him to be on the boat and working there for around two to
17  three days per week.
18             That now brings me to the third aspect and that is
19  the Lady May II is currently dry docked in Mamaroneck.
20  She's currently sitting under a plastic wrap.
21             And in order to be able to sell her we need to
22  commission her, which essentially just means putting her
23  back into the condition that she can be returned into the
24  water.
25             There is seasonal maintenance that will need to be

1   done in connection with that, but all in we believe that
2   this work absolutely has to be done in order for the Lady
3   May to be returned into the water and ultimately to be
4   marketed for sale.
5       We had attached a work order with the Safe Harbor
6   facility in Mamaroneck. That's the location where the Lady
7   May II is currently located. And that work order has a cost
8   estimate for the commissioning of the Lady May of
9   approximately $10,300.
10      And that brings me to the fourth aspect, and that
11  is the funding of these expenses and other operation and
12  maintenance expenses with respect to the Lady May II.
13      We're requesting that as with the Lady May the
14  Trustee be authorized to use again up to $500,000 that the
15  Court had previously authorized out of the repair reserve to
16  fund the operation and maintenance of the Lady May and now
17  by extension also of the Lady May II.
18      I should note that there has been no objection to
19  any aspect of the relief and we would ask that Your Honor
20  grant the relief requested. Thank you.
21      THE COURT: Thank you.
22      Does anyone else wish to be heard with regard to
23  the motion for order authorizing the operation of the Lady
24  May II?
25      (No response)

1    THE COURT: Okay. Hearing nothing, then I am --
2    Attorney Bongartz, I'm looking at your proposed
3    order.
4    MR. BONGARTZ: Yes.
5    THE COURT: And it does authorize the Trustee to
6    instruct FDS to employ Mr. Burke as the captain. It does do
7    exactly the things that you outlined in your presentation
8    with regard to the motion.
9    I agree that no one has filed any written
10   objection to your motion and there is no one participating
11   in this hearing today that is objecting to this motion.
12   For all those reasons, the motion for order
13   authorizing operation of the Lady May II is granted and the
14   proposed order that you submitted can enter.
15   MR. BONGARTZ: Thank you very much, Your Honor.
16   THE COURT: Thank you.
17   Now would you like to move to the next motion?
18   MR. BONGARTZ: Your Honor, yes, of course.
19   The second motion concerns the Lady May. And we
20   had previewed the relief sought in this motion on several
21   occasions before and now we are finally ready to formally
22   request the Court authorize the Lady May to be transferred
23   into the Foreign-Trade Zone at the Newport shipyard.
24   I want to reiterate a point that I had made at the
25   prior hearing. This does not involve a physical movement of

1   the Lady May.  It is stated a legal designation and we've
2   confirmed with the shipyard that the Lady May will stay even
3   at the same dock.
4              Now, the benefit of the Foreign-Trade Zone is the
5   ability to avoid the payment of excise taxes.  The Foreign-
6   Trade Zone exempts U.S. residents from having to buy -- for
7   having to pay custom taxes in connection with the purchase.
8              And, in fact, unless we were -- unless the estate
9   were to pay custom duties to import the Lady May into the
10  United States, we couldn't even market the yacht to U.S.
11  residents.
12             To be also very clear, as we laid out in our
13  motion, the cost of such duties would be approximately
14  $400,000.  That is not an insignificant cost.  And it's
15  substantial if you compare to the incremental costs and fees
16  that would be incurred with transferring the Lady May into
17  the FTZ.
18             Specifically, we've been informed by the Safe
19  Harbor shipyard in Newport that there would be an
20  incremental monthly fee of approximately $11,000 to dock the
21  Lady May within the, again, legal designation, of the FTZ.
22             There is also an indemnity bond that is required
23  under FTZ regulations.  We've been informed and we've also
24  attached a copy of the invoice for that indemnity bond.
25  That the bond will cost approximately $5,900 and change.

And we've also attached the application in unsigned form to our motion. Our intention is that as soon as the Court grants, or assuming the Court grants the motion, the Trustee will sign and then submit the application to the surety.

The final point I want to note in our motion is that as with the prior operating expenses for the Lady May, as well as the operating expenses for the Lady May II, we're requesting that the incremental fees, as well as the cost of the indemnity bond be funded out of the previously approved $500,000 from the repair reserve.

I note that there were no objections. There was one reservation of rights filed by HK USA, but they did not take a position on the motion and we don't view that as in any way an objection to the relief sought.

Thank you, Your Honor. That was all from my end.

THE COURT: Thank you.

I just have a question with regard to both motions that I should have asked with regard to the prior motion.

Assuming this motion is also granted, how much money will be left in the $500,000 account out of the repair reserve if these costs are paid?

MR. BONGARTZ: We have drawn down approximately 300 to 350,000 out of the repair -- out of the $500,000 set aside to date. The large majority of that amount was

1   actually for insurance premiums that had to be paid for the
2   Lady May.  So there should be approximately 150, 180,000 or
3   so left.  And that's -- I don't have the precise math, but
4   that's just approximately.
5               THE COURT:  Okay.  Thank you.
6               Does anyone else wish to be heard on the motion
7   for order authorizing transfer of the Lady May to the
8   Foreign-Trade Zone?
9        (No response)
10              THE COURT:  Okay.  Hearing nothing, then I have
11  reviewed the motion.
12              I understand the reason why the -- the reasons why
13  the Chapter 11 Trustee is moving for this order authorizing
14  the transfer of the Lady May to the Foreign-Trade Zone,
15  which appears to obviously benefit the estate because there
16  will be less costs associated with possible sale of the Lady
17  May if the Lady May is in the Foreign-Trade Zone.  No one
18  has filed any -- and there are other benefits as well, but
19  that is one of the obvious benefits.
20              I understand that the Trustee has to also apply
21  for and obtain an indemnity bond, and that all related fees,
22  including the fee for the bond and the incremental dockage
23  fees -- which are not substantial, Attorney Bongartz,
24  correct?  I think you just stated that on the record that
25  the dockage fees are not substantial.

1            MR. BONGARTZ:  The incremental dockage fees are
2      11,000 per month.
3            THE COURT:  Right.
4            MR. BONGARTZ:  As noted.
5            THE COURT:  And that no one has filed any written
6      objection to this motion.  There's no one participating in
7      this hearing that is objecting to this motion.
8            And for all those reasons, the motion is granted
9      and the proposed order that was submitted with the motion
10     can enter.
11           MR. BONGARTZ:  Thank you, Your Honor.
12           THE COURT:  Okay.
13           MR. BONGARTZ:  I would like to just add one more
14     point.  It has nothing to do with the relief sought, but I
15     wanted Your Honor to be aware.
16           As we had mentioned previously, the repair of the
17     sea valve is currently being postponed.  It's not being done
18     at this time.
19           And if and when it were to go forward we obviously
20     will need additional resources beyond the 500,000.  But we
21     would obviously come back to Your Honor in that event and
22     hopefully there would also by then be other resources
23     available in the estate.
24           But as of right now there is only a de minimis
25     amount of cash in the estate, so we'll have to come back.

1            THE COURT:  Okay.  Thank you.

2            All right.  With regard to these two motions today

3    then, we have resolved those motions.  They've been granted,

4    the proposed orders have entered.

5            I have an issue that I wanted to talk to the

6    parties about.

7            And I thought someone from the debtor might be

8    here today.  So they're not.  So you'll have to, Trustee

9    Despins, and Attorney Bongartz, Attorney Linsey, report to

10   the debtor about an issue which is not controversial.  It's

11   just something.

12           I got and I received notification that in

13   adversary 22-5032, which is the preliminary injunction

14   social media doxxing adversary proceeding that PAX commenced

15   in which we had the four-day trial in December that the

16   designation of the record has been transferred to the

17   district court.

18           And the issue that appears to be -- needs to be

19   adjusted and corrected from the Court's perspective is that

20   the designated items on both parties' designation of record

21   of items for the record on appeal do not include the

22   corrected transcripts of the hearings that were held the

23   first three days in December.  So I think that's the 5th,

24   6th and 7th, although I could be wrong about those exact

25   dates.  But, in any event, there are three transcripts that

1  were filed after the fact by the reporter which included
2  corrections that were listed in errata sheets.
3           So the transcripts that are not part of the
4  designation of the record on appeal in adversary 22-5032 are
5  ECF Nos. 192, 193 and 194.
6           And the reason that the Court wants the parties to
7  include those transcripts in the designation of the record
8  is because if the district court uses the original
9  transcripts, 104, 105, 106, which were redacted, they don't
10 match up with the errata sheets.
11          And it would be confusing to the district court I
12 think to be trying to match up those transcripts, 104, 105
13 and 106, with the errata sheets because the lines don't
14 match up.
15          Originally what the reporter did in 104, 105 and
16 106 when information or exhibits or testimony was redacted
17 they just said redacted.  They didn't account for lines in
18 the transcripts or pages in the transcripts.
19          But the transcripts 192, 193 and 194 are -- do
20 match up insofar as they include the corrected information
21 in the errata sheets.  Okay?
22          So someone needs to alert the district court to
23 that because I think there could be a lot of confusion.  And
24 that doesn't make a lot of sense to me.
25          Now, it's true that the preliminary injunction

1   decision issued by the Court in January relied on 104, 105
2   and 106 because 192, 193 and 194 weren't available yet.
3           So, Trustee Despins, I --
4           Well, actually, I supposed I should actually be
5   talking to Mr. Sarnoff.  I mean, he's the -- he was the
6   plaintiff.  He represented PAX who was the plaintiff.  And I
7   know the debtor isn't here.
8           But I think something needs to be filed in the
9   district court indicating that 192, 193 and 194 should be
10  part of the designation of the record and there should be
11  some explanation as to why, because otherwise I think it
12  could be very confusing.
13          MR. LINSEY:  Well, Your Honor, I apologize.  I
14  believe, Your Honor, there's a mechanism under Rule 8009 to
15  supplement and correct the record, so we can speak with
16  counsel for the debtor about that.
17          THE COURT:  Right.  Right.  No.  I understand
18  that.
19          MR. LINSEY:  Yes.
20          THE COURT:  But I'm saying you need to do it,
21  someone needs to do that.
22          MR. LINSEY:  Yes.
23          THE COURT:  That's the point.  Okay?
24          MR. LINSEY:  Yes.
25          THE COURT:  Because otherwise --

1     MR. LINSEY:  Thank you for bringing it up.

2     THE COURT:  -- I think it will be very -- it could

3  be very confusing to the district court.  And in four days

4  of trial, three of which the transcripts don't match up with

5  the errata sheets, I think, you know, someone would have a

6  headache and we don't want that to happen obviously.  Okay?

7     But, Mr. Sarnoff?

8     MR. SARNOFF:  Mm-hmm.  Yes.  Thank you, Your

9  Honor.

10    Your bringing something to our attention that I

11 think we either omitted or were not aware of and we can --

12 we can speak both with debtor's counsel and Trustee's

13 counsel and make sure that the record is amplified and

14 corrected and (indiscernible).

15    THE COURT:  Great.  I appreciate that.  And I

16 think the district court would appreciate that as well.

17 Okay?

18    MR. SARNOFF:  We'll try it as they say.

19    THE COURT:  Thank you.

20    All right.  Is there anything else we need to

21 address this afternoon, Trustee Despins?

22    MR. DESPINS:  No, Your Honor.  Just two updates,

23 major updates.

24    First, we want to make sure Your Honor knew that

25 we had filed a notice of default regarding an objection we

1    had filed against a claim lodged by the debtor's son in the
2    Genever Holdings case.  That's at Docket 1766.  We filed
3    that last Friday.  And we want to make sure that it is on
4    Your Honor's radar screen.
5               And the other -- it's really in the nature of a
6    question, Your Honor, and I'm kind of reluctant to ask it,
7    but on the work plan planning issue, I'm sure Your Honor
8    knows that our work plan is dependent on funding.  And for
9    planning purposes, it would be helpful for us to understand
10   when the Court is expected to rule on the summary judgment
11   count 2 and so, therefore, you know, I'm raising the issue,
12   Your Honor.
13              THE COURT:  I understand your question and I will
14   -- we will -- I will be ruling as soon as I possibly can.
15   We have looked -- I am -- when I say that, am I working on
16   it?  Yes.
17              MR. DESPINS:  That's why I said I hesitated in
18   asking the question.  I was forced to ask by my team.  I
19   apologize.  Thank you, Your Honor.
20              THE COURT:  Thank you.
21              Is there anything else --
22              MR. DESPINS:  That's all I had.
23              THE COURT:  -- we need to address this afternoon?
24              MR. DESPINS:  Not from our perspective, no.  Thank
25   you.

1         THE COURT: Okay. I noticed that, and we don't
2    have to address this right at the moment, but I think just
3    it may be I thought there were two matters scheduled for
4    hearing on April -- I'm sorry, May 23rd. And I only see one
5    at the moment and it's an application to employ. But I
6    thought there were two. I don't know.
7         But if for some reason the matters on the 23rd you
8    want to continue them to the 30th when there are other
9    matters already scheduled, that's fine. You know, figure
10   that out. And if you want to do that, file a motion. Or if
11   you just want to go through with whatever's on on the 23rd,
12   we can do that too. I just point that out. I'm just
13   looking at things that are already scheduled for hearing.
14        MR. DESPINS: Understood, Your Honor.
15        THE COURT: Okay.
16        MR. DESPINS: We may very well do that.
17        THE COURT: Okay. All right. Then I think that
18   completes today's hearings in this matter and we will see
19   you I'm sure soon.
20        MR. DESPINS: Thank you, Your Honor.
21        THE COURT: Okay. Thank you all.
22        ALL COUNSEL: Thank you, Your Honor.
23        THE COURT: Take care. Court is adjourned.
24        (Proceedings concluded at 1:31 p.m.)
25

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Christine Fiore*

May 17, 2023

Christine Fiore, CERT