**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| Ho Wan Kwok *et al.*,[1] | 22-50073 (JAM) |
| Debtors. | Jointly Administered |

**PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.'S OBJECTION
TO GENEVER HOLDINGS LLC'S APPLICATION FOR AUTHORIZATION TO
RETAIN AFFILIATED ADJUSTMENT GROUP, LTD. AS PUBLIC ADJUSTER**

TO THE HONORABLE JULIE A. MANNING,
UNITED STATES BANKRUPTCY JUDGE:

Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), by and through its undersigned

counsel, respectfully submits this objection (the "Objection") to the *Application of Genever*

*Holdings LLC for Authorization to Retain and Employ Affiliated Adjustment Group, Ltd. as Public*

*Adjuster* [ECF No. 1749] (the "Application").[2] In support of this Objection, PAX respectfully

states as follows:

**BACKGROUND**

1.      The Application seeks to retain Affiliated Adjustment Group, Ltd. ("AAGL") to

"assist in the adjustment, negotiation, and/or settlement of Genever (US)'s claim [] for the loss or

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) ("Kwok" or the "Individual Debtor"), Genever Holdings Corporation ("Genever BVI"), and Genever Holdings LLC (last four digits of tax identification number: 8202) ("Genever (US)"). The mailing address for the Trustee, Genever BVI, and Genever US is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Capitalized terms used but not defined in this reply shall have meanings given to such terms in the Application. Unless otherwise noted all emphasis is added and all citations and quotations are omitted.

damage sustained at the 18th floor apartment at the Sherry Netherland Hotel." Application at ¶ 1.

The Application proposes that AAGL will perform the following services (the "Services"):

- Preparation, presentation, adjustment, and negotiation, or effecting a settlement, of the claim for the loss or damage by a covered peril or perils sustained in the Apartment. Application at ¶ 19(a).

- Preparation and delivery of periodic reports to Genever (US) with respect to (i) the cost of immediate remediation/abatement, (ii) the cost of repairs using different assumptions as to the state of repair, and (iii) the length of repairs or renovations. Application at ¶ 19(b).

- Providing expert testimony before a court of competent jurisdiction as to the aforementioned matters (i.e., the cost of immediate remediation/abatement, the cost of repairs using different assumptions, and the length of repairs or renovations). Application at ¶ 19(c).

2.      In exchange for performance of the Services, the Application proposes a contingency fee arrangement that binds Genever (US) to pay AAGL (a) 5% of any settlement proceeds from the claim up to $3 million, (b) 4% of any settlement proceeds greater than $3 million but less than $15 million, and (c) 3% of any settlement proceeds greater than $15 million but less than $50 million. Application at ¶ 21.

3.      At the April 27, 2023 hearing, the Trustee expressed that Genever (US) would need to hire a law firm that is specialized on insurance coverage disputes in light of the fire at the Sherry Netherland apartment (the "Fire"). Accordingly, Genever (US) hired Saxe Doernberger & Vita, P.C., an elite law firm with a singular focus on insurance coverage law, which filed an adversary complaint on behalf of Genever (US) against AIG Property Casualty Company ("AIG") on May 12, 2023. [3]   ECF 1787.

---

[3] It is PAX's understanding that a formal application to retain Saxe Doernberger & Vita, P.C. is forthcoming.

4.      At the May 10, 2023 hearing, the Trustee also informed the Court that it had hired Find the Cause Investigations LLC to investigate the cause of the Fire.  The Trustee also stated that this was a one-off engagement, costing only a few thousand dollars.

## ARGUMENT

5.      As the moving party, Genever (US) bears the burden of proving that that the terms and conditions of the proposed retention of professionals are in the best interests of the estate.  *See In re Gillett Holdings*, Inc., 137 B.R. 452, 455 (Bankr. D. Colo. 1991) ("[T]he burden of proof to establish that proposed terms and conditions of employment are reasonable is on the moving party. The Court must be persuaded that the terms and conditions are in the interest of the estate.").  To meet this burden, Genever (US) must provide "specific facts showing the necessity" for AAGL's retention.   Fed. R. Bankr. P. 2014; *see also In re High Voltage Eng'g Corp*., 311 B.R. 320, 334-35 (Bankr. D. Mass. 2004) (denying retention application where, *inter alia*, the "Court ha[d] been given no information about the specific scope and complexity of the assignment or specialized skills needed for it."); *see also In re Trans. Nat. Commc'ns Int'l*, *Inc*., 462 B.R. 339, 347 (Bankr. D. Mass. 2011) (denying retention application where it did not supply detailed information regarding the proposed retention).

6.      Genever (US) also bears the burden of proving that the retention of AAGL would not be "duplicative of the services to be performed by" other retained professionals.  *In re Wang Labs., Inc.,* 143 B.R. 794, 795 (Bankr. D. Mass. 1992) (denying application to retain financial advisor as duplicative of the services to be performed by a law firm or an accounting firm);  *In re Saxon Indus., Inc.,* 29 B.R. 320, 322 (Bankr. S.D.N.Y. 1983) (finding that a party's request for independent professional services should be denied if such services are duplicative and wasteful).

7.      The Application should be denied, because Genever (US) cannot meet either of these two burdens.

8.      *First*, the Application does not demonstrate that retaining AAGL is in the best interests of the estate.  *High Voltage* is instructive.  There, the debtor provided a list of generic financial advisory services in connection with its application to retain Evercore.  *High Voltage*, 311 B.R. at 327.  In denying the debtor's application, the court found that it was "not in a position to gauge the reasonableness of the terms and conditions of Evercore's employment" based on the "vague descriptions of the tasks Evercore intends to perform."  *Id*. at 335.  Here too, the short list of anticipated adjustor services in the Application suffers the same vagueness and ambiguity, and should therefore be denied.  For example, the Application fails to articulate the need for "periodic reports" and does not explain why a contingency fee structure serves the best interests of the estate.

9.      Instead, the most efficient and cost-effective solution would be (i) to direct already-retained insurance counsel, Saxe Doernberger & Vita, P.C., to represent the Debtor and provide advice regarding claim submission and settlement negotiation; and (ii) to engage experts on an *ad hoc* basis to assess the damage sustained in the Fire, provide an evaluation of the cost of repairs, and prepare reports or testify as to these matters as events unfold.  These counsel and experts could be paid an hourly rate, if and as needed, as opposed to prematurely binding the estate to pay a public adjuster an amount that could turn out to be a far larger for a scope of work that is ambiguous and potentially unnecessary.

10.     *Second*, the Application fails to demonstrate why AAGL's services would not be duplicative of those that insurance counsel or other experts could provide on an as-needed basis. For example, Saxe Doernberger & Vita, P.C. can perform the usual insurance counsel functions of evaluating the claim, negotiating with insurers, and effecting a settlement should the opportunity

arise. *See* Application ¶ 19(a). And if it turns out to be necessary, Genever (US) could retain experts akin to Find the Cause Investigations LLC to provide reports and/or expert testimony as to "the cost of immediate remediation/abatement, the cost of repairs using different assumptions, and the length of repairs or renovations." Application at ¶ 19(b)–(c). At this juncture, the retention of AAGL appears to be "duplicative" of what insurance counsel and other experts could provide, and the Application should therefore be denied. *In re Wang Labs.,* 143 B.R. at 795 (Bankr. D. Mass. 1992).

## CONCLUSION

The Trustee has the obligation to look for less expensive ways to obtain a settlement of claims relating to the Fire. This goal could and should be accomplished using professionals that (i) have already been retained by the estate or (ii) could be retained less expensively on an *ad hoc* basis, making the retention of AAGL duplicative and likely unduly costly. For the reasons stated above, PAX respectfully requests that the Application be denied.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 19, 2022
Hartford, Connecticut

**Pacific Alliance Asia Opportunity Fund L.P.**

*By*: /s/Patrick M. Birney
Patrick M. Birney (CT No. 19875)
Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
      asmith@rc.com

-and-

Peter Friedman (admitted *pro hac vice*)
Stuart M. Sarnoff (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email:  pfriedman@omm.com
      ssarnoff@omm.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2022, a copy of the foregoing was filed electronically through the Court's CM/ECF System.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties in interest may access this filing through the Court's CM/ECF System.

/s/Patrick M. Birney
Patrick M. Birney