UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                          *  Case No. 22-50073 (JAM)
                               *
HO WAN KWOK and GENEVER        *
 HOLDINGS CORPORATION,         *  Bridgeport, Connecticut
                               *  May 23, 2023
            Debtor.            *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


Chapter 11 Trustee:            LUC A. DESPINS, ESQ.
                               Paul Hastings
                               200 Park Avenue
                               New York, NY  10166


For the Chapter 11 Trustee:    G. ALEXANDER BONGARTZ, ESQ.
                               Paul Hastings LLP
                               200 Park Avenue
                               New York, NY  10166

                               PATRICK R. LINSEY, ESQ.
                               Neubert Pepe & Monteith, PC
                               195 Church Street
                               New Haven, CT  06510


For the U.S. Trustee:          HOLLEY L. CLAIBORN, ESQ.
                               Office of the United States
                                 Trustee
                               The Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES: (Cont'd)


For the Creditor, Pacific        STUART SARNOFF, ESQ.
 Alliance Asia Opportunity       MIA GONZALEZ, ESQ.
 Fund L.P.:                      O'Melveny & Myers LLP
                                 Times Square Tower
                                 7 Times Square
                                 New York, NY  10036

                                 PATRICK M. BIRNEY, ESQ.
                                 Robinson & Cole
                                 28 Trumbull Street
                                 Hartford, CT  06103


For HK International Funds        SAM DELLA FERA, JR., ESQ.
 Investments, LLC and            Chiesa Shanhinian &
 Mei Guo:                        Giantomasi, P.C.
                                 105 Eisenhower Parkway
                                 Roseland, NJ  07068


For the Creditors Committee:     IRVE GOLDMAN, ESQ.
                                 Pullman & Comley
                                 850 Main Street
                                 Bridgeport, CT  06601
```

1          (Proceedings commenced at 1:02 p.m.)

2               THE CLERK:  Case Number 22-50073, Ho Wan Kwok and

3     Genever Holdings, LLC.

4               THE COURT:  Good afternoon.  If we could have

5     appearances for the record, starting with the Chapter 11

6     trustee, please?

7               MR. DESPINS:  Good afternoon, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9               MR. LINSEY:  Good afternoon, Your Honor.  Patrick

10    Linsey for the trustee.

11              MR. SARNOFF:  Good afternoon, Your Honor.  Stuart

12    Sarnoff, O'Melveny & Meyers, for creditor, PAX.

13              MS. GONZALEZ:  Mia Gonzalez, O'Melveny & Myers for

14    PAX.

15              MR. BIRNEY:  Patrick Birney, Robinson & Cole for

16    PAX.

17              MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

18    Goldman, Pullman and Comley for the Creditor's Committee.

19              MR. DELLA FERA:  Good afternoon, Your Honor.  Sam

20    Della Fera, Chiesa Shanhinian & Giantomasi, for Mei Guo and

21    Hong Kong -- HK International Funds Investments USA Limited,

22    LLC.

23              MS. CLAIBORN:  And good afternoon, Your Honor.

24    Holley Claiborn for the U. S. Trustee.

25              THE COURT:  Good afternoon.  So everyone on the

1    remote hearing -- Attorney Claiborn is here in the

2    courtroom.  She was here for other matters today, so just so

3    you know, I think you can kind of see her, but in any event,

4    Attorney Claiborn is in the courtroom.

5           Okay.  Trustee Despins, you asked for this status

6    conference regrading a possible --

7           MR. DESPINS:  Yes, Your Honor.

8           THE COURT:  -- sale of the Lady May, so please

9    proceed.

10          MR. DESPINS:  And first, thank you very much, Your

11   Honor, for allowing this status conference on such short

12   notice.

13          And I am going to try to cover these points fairly

14   quickly, and I'm going to address -- to be clear, the Lady

15   May only, not the Lady May II.  The Lady May II is being

16   prepared for I guess launch.  There's a part that's missing

17   for the repairs.  That should be completed by next week.  So

18   we're talking only about the Lady May.

19          So as Your Honor knows, we moved the Lady May to

20   Newport.  In fact, it was first in the regular zone, but it

21   was transferred to the free-trade zone on May 17th, and it

22   remains docked there.

23          In terms of the sale process, Your Honor will

24   recall that you approved the retention of Edmonson as the

25   broker and the broker has engaged in various -- this is on

1    Page 2 of the presentation.

2              Actually, Your Honor, I want to make sure if --

3    can we put this up?  Do we have control over -- we need to

4    have control.  Mr. Bongartz needs to be given control of the

5    screen, Your Honor, so we can put up those slides if it's

6    possible.

7              THE COURT:  Okay.  Just give us a moment, please.

8              MR. DESPINS:  Thank you.

9              THE COURT:  We're working on that.

10             MR. DESPINS:  And then we also sent these to the

11   courtroom deputy probably an hour or so ago. And the people

12   on the phone all have copies of that -- of that

13   presentation.

14             THE COURT:  All right.  It's not loading at the

15   moment, Attorney -- Trustee Despins, so give us a second and

16   we'll see what we can do.

17             MR. DESPINS:  Okay.

18             THE COURT:  What about Attorney Baumgartz?  If we

19   give him control --

20             MR. DESPINS:  Yes, if you could do that.

21             THE COURT:  -- can he share his screen?

22        (Pause)

23             MR. DESPINS:  Mr. Bongartz is prepared to post if

24   he's given control of the screen.

25             THE COURT:  We can -- we can do that?

1          THE COURT:  Okay.  Give us a moment.  We should be

2     able to give Attorney Bongartz control.

3          (Pause)

4          THE COURT:  I think if we -- I think I've now

5     given Attorney Bongartz some --

6          MR. DESPINS:  I think we have it.

7          THE COURT:  I got it.  Yep.  I did it.

8          MR. DESPINS:  We have it, Your Honor.

9          THE COURT:  I got him to share the screen.  Okay.

10    It's taken care of.

11         MR. DESPINS:  Okay.  Great.  Okay.  Apologies for

12    the interruption, Your Honor.

13         So we're on Page 2 of the presentation, talking

14    about .2, the sale process.  Edmonson has done various --

15    has taken various steps to market the Lady May, contacted

16    all the brokers, the yacht brokers through email and other

17    communications.  Also listed the Lady May on YACTCO.  YATCO

18    is really the equivalent of multiple listing system for real

19    estate, but it's for luxury yachts, so it was posted there.

20    And there's an electronic brochure for the Lady May that

21    includes photographs and specification that was circulated

22    -- widely circulated to brokers around the world.

23         To date, Your Honor, we have received five formal

24    offers from prospective buyers, both U.S. residents and

25    non-U.S. residents.  There have been several showings of the

1    Lady May to prospective buyers or their brokers, and we -- I

2    want to say, we countered these five offers, but -- turning

3    to Page 3, we need a catalyst in the sense that these five

4    bidders know that there are other bidders.  Some have moved,

5    but not sufficiently in our view, and we need a catalyst to

6    force people to put their final and best foot forward,

7    essentially.

8         And I know, Your Honor, that in Connecticut you

9    have a very elaborate set of rules governing sales of assets

10   in bankruptcy cases, and I know right up front, and I've

11   been cautioned both by Mr. Linsey and by Mr. Goldman, that

12   we're not compliant with all these rules.

13        And we're not asking for relief now, but that's

14   certainly the goal of this status conference is to get Your

15   Honor up to speed so that we don't proceed in a direction

16   that you would find unacceptable.

17        So I'll say right off the bat, what we're

18   proposing is neither a sole private sale, nor a full public

19   sale.  It's a hybrid.  And as I said, we need a catalyst to

20   force people to put their best bid forward.

21        After extensive discussion with the broker, the

22   sort of the conclusions reached are that the five bidders

23   are highly motivated.  They're not offering us the price

24   that we want at this stage.  As I said before in court,

25   there's always that -- or, you know, a bankruptcy sale,

1   therefore discounted prices, and you know, we want to

2   counter that to the extent we can.

3          But these five bidders will not stay around the

4   hoop, for a lack of better expression, in an -- for an

5   indefinite period of time.

6          They need to see a path towards a final process

7   and that's what we want to offer them.  And the broker is

8   really of the view that we need to move quickly.  Quickly

9   being defined as asking them, and also the rest of the

10  world, and I'll describe what we're going to do there, to

11  put final and best bids forward by May 30th, which is

12  Tuesday of next week, at 5:00 p.m.

13         But we want to provide guidance to the bidders so

14  that we're not wasting our time with bids that turn out

15  later to be illusory or not serious, and therefore, we're

16  putting the guidance that's on that page, Page 3, and so

17  that only offers in excess of 20 million will be considered,

18  and that gives Your Honor a sense of where we are in terms

19  of the offer received.

20         Bids must be based on the former purchase

21  agreement to be provided by the trustee to prospective

22  bidders or buyers.

23         That's very important because the typical yacht

24  sale agreement, Your Honor, allows the buyer to change their

25  mind for whatever reason until a date which is referred to

1    as the -- the date at which the evaluation, the review

2    process that's called the survey, is completed.

3         So I want to be precise.  Under the customary

4    agreement as a buyer, you can change your mind for whatever

5    reason, I don't like the color anymore or something like

6    that, while the survey is ongoing.

7         So it's not only that you need to raise issues

8    that are -- that come to light as a result of a survey, you

9    can change your mind for any reason.

10        That doesn't work, obviously, from the bankruptcy

11   point of view, and we told the broker that so we're going to

12   have a tailor made agreement that would basically say,

13   you're going to sign an agreement, you're going to be bound

14   by that agreement, you need to put a 20 percent deposit,

15   cash deposit, early on by June 1st.

16        And yes, there will be a survey.  It's called a

17   survey, but it's really like a house inspection, Your Honor.

18   It takes typically three weeks, but we're giving them --

19   essentially, we're giving them three weeks to complete the

20   survey.

21        By the way, the ship needs to be taken out of the

22   water for that inspection.

23        And they cannot change their mind during that

24   survey period except that if it turns out that -- I'm making

25   this up now -- that one of the engines is defective, they

1    can raise their hand and say, no, I'm not going to buy it at

2    the price that I bid, because of that problem.

3            And this is like a home.  You know, I'm sure Your

4    Honor has been through this.  There's two negotiations. The

5    purchase price and there's the inspection negotiation where

6    people find all sorts of problems.

7            I'm not saying that would be the case here, but

8    that's the nature of the beast and we want to be protected

9    against that, and I'll explain to Your Honor how we're going

10   to be protected against that later, but one of the reasons

11   we would protect against that is that, we can only walk as a

12   result of issues raised in the survey and they need to

13   document that, and we have the ability if they want, to

14   purchase the survey from them.

15           So typically -- the survey process typically costs

16   $40,000, and you might say, wow, you're out of money, why

17   are you spending $40,000?

18           It's potentially spending $40,000, but that allows

19   us to take the survey and go to other bidders and say, look,

20   this is the -- this is the problem, or whatever the problem

21   was.  Are you ready to proceed accordingly?  That allows us

22   to pivot, Your Honor, in terms of switching bidders, much

23   faster than if we didn't have that provision that allows us

24   to essentially get the survey at cost.

25           And so the survey would have to be completed by

1    June 28th, and the -- as I said, the purchase agreement

2    would have to be signed by June 9th, so that's very soon.  I

3    had left -- we've left blank there on Page 4 as to when the

4    closing would take place, because that really depends not

5    entirely but in part, on Your Honor in the sense that one of

6    the things that we put in there at the end is that the

7    winning bid is subject to bankruptcy court approval.  We all

8    know what that means.  That means that anything could happen

9    at that hearing in terms of additional bids being submitted.

10          But the point is that we need to understand how

11   quickly, assuming we have a binding bid, the survey is

12   completed and all that, how quickly we could proceed.

13          The intent would be to file the motion to approve

14   the transaction while the survey is ongoing, because we have

15   the ability to pivot to another buyer.

16          And basically what we would do is that if Buyer

17   Number 1 doesn't come through for some reason, or he

18   exaggerates the issues in the survey, we would amend the

19   motion to say we're selling to Bidder Number 2 at the

20   following price, et cetera, et cetera.

21          So the idea is to get the process going so that we

22   can pivot quickly, because Your Honor knows, it's costing us

23   a fortune to own that ship.

24          So now the question you probably are asking in

25   your mind about ruling it, there are all these procedures

1    and all that.  We don't have a court order approving these

2    procedures, which I note, Your Honor, as I've sold many

3    assets in bankruptcy before, I know that getting a court

4    order with a breakup fee, expense reimbursement, and the

5    whole panoply of protections is the norm.  I understand

6    that, Your Honor.

7          But after talking to the broker, the conclusion

8    was that we would lose a lot of bidders in this process in

9    the sense that (indiscernible) to explain that, but this is

10   not your typical buyer, real estate, or a building, or a

11   company.

12         These are very rich people that obviously if you

13   own a boat like that you have to have a lot of money.  They

14   don't have an appetite to be involved with bankruptcy

15   lawyers on negotiating all these provisions.

16         And therefore I realize, Your Honor, that this is

17   a hybrid process that technically it would be preferable in

18   a normal case to have all of the bells and whistles covered

19   through an interim bidding procedure order, et cetera, but

20   in this case, given where we are, given the interest, given

21   the risk of losing bidders that are interested today if we

22   prolong the process, the conclusion that I reached in

23   support of the discussions, extensive discussions with the

24   broker, that it is better to pursue it like this knowing

25   that, you know, it's not your standard procedure, Your

1    Honor.

2              So again, I have no motion on file.  I am doing

3    this largely because it is a hybrid procedure.  I think that

4    this will maximize value, and so that's really the

5    presentation, Your Honor.

6              I'm sure I'm hitting you with a lot of new issues,

7    concepts, but we think that the -- one, there needs to be a

8    catalyst for people to put up their best bid.

9              Two, that catalyst must be soon, fairly soon,

10   meaning a week or so from today.  And remember, it's subject

11   to bankruptcy court approval.

12             So if somebody shows up at the hearing and says,

13   I'll bid 30 million for that ship, I'm sure Mr. Goldman

14   would be standing up and saying, Your Honor, don't listen to

15   the trustee, you should approve that other bid.

16             So the point is, there is a failsafe built in

17   protection despite the fact that we don't have a -- we

18   wouldn't have a bidding procedure order specifically.  And

19   oh, by the way, I have socialized this issue with PAX and

20   with the creditor's committee, so they may have views as

21   well.  I don't want to preempt them, but that's the --

22   that's what I wanted to cover today, Your Honor.

23             THE COURT:  Okay.  Well, I, as you correctly

24   noted, am just learning of all this and there are a lot of

25   issues associated with it, which may or may not need to be

1    addressed.  I'm not certain.  But I do have a few questions.

2              MR. DESPINS:  Sure.

3              THE COURT:  When I'm looking at this presentation,

4    you're not asking the Court to enter an order with regard to

5    what you plan on doing next Tuesday, which is obtain the

6    best offer from these five bidders that you have in place.

7    Is that correct?

8              MR. DESPINS:  Yes, that's correct, but it's not

9    only the five bidders, it's the rest of the world as well.

10   Yes.

11             THE COURT:  Well, so my question is, to me, and

12   maybe I'm wrong, again, I haven't really had any time to

13   think about it, but aren't you just really trying to get a

14   stalking horse bidder.

15             By getting the five people to give you their best,

16   you're going to then take that person, and that's going to

17   be -- or whatever it is, you know, whoever the bidder is.

18   That's going to be the bid that is subject to the sale

19   motion and to approval unless somebody outbids them.  Is

20   that how you see this unfolding?

21             MR. DESPINS:  Yes, except I would not describe it

22   as a stalking horse.  I would describe it, you know, with

23   the caveat that it's subject to bankruptcy court approval,

24   and they know that coming in, they understand that --

25             THE COURT:  Okay.

1          MR. DESPINS:  -- and but in -- so the broker will

2     -- they will be known to not only the losing four bidders,

3     but to the rest of the world, what this ship is going to

4     sell for, which allows anyone in the world to come in and do

5     their thing.

6          But I don't -- that's the issue -- I know it

7     sounds a bit opaque, but it's -- the broker doesn't think

8     it's in our interest to go and explain to them that -- this

9     sole stalking horse concept, because we will lose them in

10     that context.

11          Just, if we tell them to put your best foot

12     forward and then we'll take the highest bid, highest and

13     best bid, and then you're absolutely right that the

14     consequence of the fact that there is subsequent court

15     approval is what it is, which is that there's always the

16     possibility of someone else showing up with more.

17          THE COURT:  Well, okay.  So let me go to the next

18     question.  So I'm not -- you're not asking the Court to

19     enter any kind of order with regard to your proposed process

20     to obtain what would be in your judgment the highest and

21     best bid, which would then become subject of a motion to

22     sell?

23          MR. DESPINS:  Correct.

24          THE COURT:  Okay.

25          MR. DESPINS:  It would be --

1      THE COURT:  Okay.

2      MR. DESPINS:  -- to file a motion to sell after

3  that.  So, yes.

4      THE COURT:  Okay.  And then -- okay.  That -- I'm

5  with you.  I -- okay.

6      So then the motion to sell gets filed and you say

7  in that motion, ABC Company has bid $20 million to buy the

8  Lady May.

9      The trustee is -- supports that bid and will be

10  proceeding to take any steps necessary to have that bid be

11  the successful bid and have a closing of the sale on X date,

12  but on Y date, there will be a hearing prior to that closing

13  date to approve that bid subject to any other bids that

14  might be received by the trustee and deemed to be a higher

15  or better offer for the sale of the yacht.  Is that what

16  you're contemplating?

17      MR. DESPINS:  Practically, yes, but I don't think

18  that I would -- I would just say subject to bankruptcy court

19  approval, which is implicit.  What you're saying is

20  absolutely implicit.  I have a fiduciary duty to get the

21  highest price possible at any given time, and that may

22  evolve, you know, over time.  But you're correct, that --

23      THE COURT:  Go ahead.  I'm sorry.

24      MR. DESPINS:  No.  You're correct that the

25  practical implication of that is that somebody else could

1    show up, and as long as it's a real bid that has -- and

2    they're willing to close, you know, on the same terms and

3    conditions and all that, if it's higher -- and by the way,

4    you said 20.  That's a minimum that we would --

5              THE COURT:  No, I'm just using --

6              MR. DESPINS:  -- agree to 20 --

7              THE COURT:  -- an example.

8              MR. DESPINS:  Yes.  Yes.  Yes.  Yes.  Yes.

9              THE COURT:  I'm not saying that that's the amount.

10    I'm just --

11              MR. DESPINS:  No.  No.  Yes.  Yes.  So yes, at

12    that point I think that if I didn't go in that direction,

13    Mr. Goldman would be standing up and saying, Your Honor, we

14    need to override the trustee's business judgment here

15    because there's a higher bid.

16              THE COURT:  All right.  Then --

17              MR. DESPINS:  And I think you would grant that

18    relief.

19              THE COURT:  So let's continue down the path.  So

20    what happens if the bid that you deem to be the highest and

21    best offer, purchase price for the yacht after next Tuesday,

22    doesn't close for whatever reason?

23              So say they do the survey and they find something,

24    they can walk away.  Are you in a position -- is there

25    another bidder that's in place of the original five, or do

1   you have to start all over again?

2           MR. DESPINS:  Well, technically, I don't have a

3   backup bidder, which is what you're referring to, that is

4   bound to close.  I don't have that, because I would have to

5   pay for that through some kind of fee, and I really -- and

6   also, it's not only the fee but the complications that we

7   just -- and spook these types of bidders.

8           But, Your Honor is correct.  Technically, I don't

9   have a backup bidder, but that's why I have the option to

10  buy the survey, because I don't want to have another bidder

11  with a new survey that would take another three or four

12  weeks.  We want to be in a position to pivot and to amend

13  the motion to say, we're going to Bidder Y from Bidder X,

14  and we also -- we have the 20 percent deposit, Your Honor.

15          So if the -- there -- if they're not closing

16  because they just changed their mind, or they're raising

17  issues that are exaggerated or non-existent, 20 percent --

18  you know, they're going to forfeit their deposit and Your

19  Honor is going to have exclusive jurisdiction over the

20  contract, over enforcement of the contract.  That's our

21  protection.

22          But you're right that -- I know that.  Typically

23  you have a backup bidder that's bound to close, but you need

24  to pay them for that and then the buyer number one will say,

25  well, if you have that, I won't be compensated if I get

1    topped.  So now we get into --

2              THE COURT:  I understand.

3              MR. DESPINS:  -- permutations around three percent

4    -- well, you understand.  Okay.  Sorry.

5              THE COURT:  Okay.  I understand.  All right.  So

6    then let's -- I'm not doing anything as far as an order is

7    concerned for your plan between now and next Tuesday.

8              MR. DESPINS:  Okay.

9              THE COURT:  So then I would assume you'll be

10   filing a motion by the end of next week with regard -- maybe

11   even, you know, on Wednesday, I don't know, with regard to

12   --

13             MR. DESPINS:  Well, it would be -- the scheduling,

14   Your Honor, would be first they need -- we need to have a

15   contract signed, and then once they have the contract signed

16   and 20 percent deposit, then we'd file our motion as soon as

17   possible.

18             THE COURT:  Okay.  And then -- okay.  Then once

19   you file that motion, are you looking for a truncated

20   process for a hearing?

21             MR. DESPINS:  Well, that's one of the -- that's

22   why we left some of these dates as blanks because -- you

23   know, just to give an example.  Let's assume everything goes

24   well, we have a signed purchase agreement on June 9th, which

25   is Friday -- no, sorry.  It's Friday -- so two weeks.  Two

1    weeks.

2           We would file our sale motion on Monday the 12th,

3    and in theory, 21 days from there brings you to July 5th

4    because of the July 4th holiday.  That's 21 days.

5           The feedback I'm getting from the broker is these

6    people don't need financing.  They all have sums of money

7    and they're hot to close and that's always a good thing and

8    should never lose advantage of that.

9           So that if we can shorten that by a bit, not too

10   much because if there's somebody that for some reason has

11   not heard of this sale -- and by the way, it's been widely

12   advertised -- but you know, they need to have the ability to

13   try to top it.  And so we would, you know, maybe look for an

14   objection deadline of maybe the 30th instead of the 5th.  So

15   shortened, but not in a massive way.

16           THE COURT:  Okay.  And then have a hearing when?

17   If you have an objection deadline of June 30th, when would

18   you expect to have a hearing?

19           MR. DESPINS:  Maybe on July 6th or something or

20   other.

21           THE COURT:  Okay.  Hold on a second.  Let me just

22   -- okay.  That looks possible.  I'm just -- let me just

23   check another source and -- I'm asking because I need -- you

24   know, there's a lot of things already scheduled for June.

25           MR. DESPINS:  I know.

1          THE COURT:  So I want to make sure that -- yeah,

2     July the 6th is definitely possible if -- assuming the time

3     frame that you set forth.  And then that would be the sale

4     -- that would be the -- that would be the hearing on the

5     sale, to approve the sale and --

6          MR. DESPINS:  Correct.

7          THE COURT:  And then you would close after that.

8          MR. DESPINS:  Correct, Your Honor.

9          THE COURT:  Okay.  So under our, you know, local

10    rules, you would -- you are proposing to move differently

11    than our local rules, so you'll have to ask for relief from

12    the local rules to do that, if -- and see whether or not

13    that's acceptable, right?  Number one.

14         Number two, what we do in this district -- you

15    know, many other districts do it as well.  Let's assume you

16    file this motion to approve a sale by June -- on June 9th,

17    on or around June 9th, and the hearing then would be

18    scheduled, let's assume, for July 6th.

19         What we do, but you might need to talk to the

20    broker and/or tell us that we're wrong in this circumstance

21    -- and again, you'd need relief is -- you'd have to file a

22    document that gets put on the Court's website that shows

23    that this is an asset for sale and, you know, set forth its

24    general terms and conditions and things like that, because

25    I'm not saying that would happen in this case, but in many

1      other cases, not the sale of a yacht, but posting that on

2      the court's website has resulted in higher purchase price

3      for assets, believe it or not, because I guess people, you

4      know, out there look at court web sites for sales of assets.

5      They're -- you know, that's what they do.

6              So that you would have to do along with filing

7      your motion on or around June 9th so that it's out there to

8      provide another source of essentially marketing, that then

9      also would become part of the evidentiary record at your

10     hearing to approve the sale to show what was done to obtain

11     the highest and best price for the asset.

12             I have no idea, and I'm not suggesting you need to

13     answer the question now, but I'm just telling you, that's

14     how it normally works, and that's how the clerk's office

15     would handle it.  They'd say, oh, they didn't file a notice,

16     that's a deficiency.  You know, and that could stop the

17     process down -- that could slow it down.  So I'm throwing

18     that out to you to think about, okay?

19             MR. DESPINS:  We can file that notice, Your Honor.

20             THE COURT:  Okay.  And then as far as the time

21     frame that you set forth, are you -- you are anticipating

22     that you'll have some -- you'll have what you, as the -- in

23     your business judgment determine is the highest and best

24     offer by next Tuesday, and then you believe you're going to

25     be filing -- you hope and believe you're going to be filing

1    a motion to approve a sale under Section 363.

2              Now I have no idea, but I mean, I have a thought,

3    but are there -- is anyone -- I'm sure you have, but there

4    are no liens on this property, are there?

5              MR. DESPINS:  No, Your Honor.

6              THE COURT:  Not even like -- not even a, you know,

7    a maritime lien or anything with regard to any unpaid

8    dockage fees or anything like that?

9              MR. DESPINS:  I should have answered, no liens

10   known.  So we will --

11             THE COURT:  Right.

12             MR. DESPINS:  -- we will check on that.

13             THE COURT:  Right.  Because obvious --

14             MR. DESPINS:  But a lien would attach to the

15   proceeds in any event, so I don't think that would stop it.

16             THE COURT:  True.  But there's a notice issue,

17   right?  Notice and service on the people that if they had a

18   lien, right?

19             MR. DESPINS:  Yes.  Yes, Your Honor.

20             THE COURT:  That you might need to make -- because

21   if you're going to need to make the presentation that

22   everybody was served, they were served appropriately, they

23   had the opportunity to object, if they have an interest in

24   the property, they know all those kind of things, right?

25             MR. DESPINS:  Absolutely.

1          THE COURT:  So then, who else -- well, I shouldn't

2     say who else because you didn't tell me, so I'm jumping

3     ahead a little bit.

4          In addition to the notice that would be filed in

5     the case and then on the court's website, you're obviously

6     going to have to have the broker show whatever the broker

7     did, right, to market the property.

8          And that may include serving parties who are not

9     parties in this case with the motion to sell and/or related

10    documents, such as the other four bidders that you don't

11    choose as the highest and best, but not only the other four

12    bidders, right?

13         I mean, you know, there may be a need to show that

14    it was whatever -- however the broker markets that it's

15    really been out there to everyone that might have an

16    interest in purchasing it.

17         So I just -- again, I'm highlighting that issue

18    because that's an expectation that the -- that presentation

19    on the sale will include all of that information as well,

20    because you're asking the Court to make those findings,

21    right?  So every finding that you're asking the Court to

22    make would have to be substantiated with some evidence.

23    Okay?

24         MR. DESPINS:  Yes, Judge.

25         THE COURT:  And so one of the -- just to follow

1    this through, and then I think this is my last question for

2    now.  The motion to sell gets filed, an objection deadline

3    is set, a hearing date is set, and the closing date is after

4    that hearing date.

5           One of the four bidders who did not -- whose bid

6    was not chosen on May 30, comes to court and says they'll --

7    no contingencies, ready to close,  accept the survey that

8    the bidder -- that the bidder -- the original purchaser had

9    undertaken and wants to outbid -- you know, pay a higher

10   price.

11          What do we do at that point in time?  You're

12   saying, I just have to make the determination as to whether

13   or not I'll allow that based upon what the parties -- what

14   everyone in the courtroom has to say about that?

15          MR. DESPINS:  Yes.  I don't want to be flippant

16   about that, but we owe no duties to the -- to bidders.  We

17   owe duty to the estate, Mr. Goldman and I owe a duty to the

18   estate and to maximize value, and we'll have to adjust our

19   thinking based on what happens at that hearing.  If -- and

20   that will be a good problem to have frankly, Your Honor, but

21   that's --

22          THE COURT:  I under -- I agree with that, but I

23   want to at least think it through.  I don't see that I'm

24   entering any kind of order until --

25          MR. DESPINS:  That precludes that, no.

1      THE COURT:  -- until the hearing on July -- if

2  it's, for example, July 6th, right?

3      MR. DESPINS:  That's correct.

4      THE COURT:  So if I'm not entering any kind of

5  order, then I don't see how anyone's precluded from coming

6  in and trying to purchase it at a higher price.

7      MR. DESPINS:  That's correct, Your Honor.

8      THE COURT:  Okay.  All right.  I don't have any

9  other questions at the moment, but I -- doesn't mean I might

10  not after I hear what other people have to say, so who would

11  like to be heard?

12      MR. GOLDMAN:  Good afternoon.  I just wanted to

13  add to what Mr. Despins had presented.

14      THE COURT:  Attorney Goldman, will you just do me

15  a favor and just state your name for the record, because

16  we're on -- you know, we're on audio.  And also, for some

17  reason, you're a little muffled in your voice.  I don't know

18  if you can get closer to your microphone.

19      MR. GOLDMAN:  Is this better, Your Honor?

20      THE COURT:  A little better.

21      MR. GOLDMAN:  Okay.  I'll get closer.  Irve

22  Goldman, Pullman Comley, for the creditor's committee.

23      You know, I just wanted to add to what Mr. Despins

24  had presented.  He was good enough to include me in the

25  discussions and the thinking that led to what he's presented

1    as the preferred way of going about selling this asset.  And

2    I know we're all used to the typical breakup fee, sales

3    procedure order, which I view as serving really two

4    purposes.

5           One is to protect the highest bidder with a

6    breakup fee, and the other is to, you know, establish a

7    benchmark of interest per the asset and create interest in

8    others for that asset.

9           Now from the estate's point of view, we're not

10   necessarily interested in protecting the buyer, and so that

11   purpose of the breakup fee clearly is inapplicable.

12          To the extent that it's used to create interest in

13   others, from what I've heard so far, due to the unique

14   nature of this asset and the unique nature of the market for

15   it, I am convinced, at least at this point, that what they

16   have said about what will maximize value in terms of this

17   particular procedure is really going to substitute for what

18   a sales procedure order and a breakup fee would do.  And so

19   that's the committee's thinking at this point of view.

20          So at this preliminary stage, you know, we have no

21   objection to his going forward in the way that he presented

22   it, and -- but we'll -- as Your Honor said, you know, we'll

23   have to see how the evidence comes out at the sale hearing.

24   But I just wanted Your Honor to understand our way of

25   thinking on this.

1          THE COURT:  Okay.  Thank you.  Does PAX wish to be

2     heard?

3          MR. SARNOFF:  Your Honor, only that -- excuse me.

4     My daughter's wedding was this weekend and I have no voice

5     left, so I apologize.  Stuart Sarnoff on behalf of Creditor,

6     PAX.

7          Mr. Despins was good enough to, as he did with Mr.

8     Goldman, to sort of preview his thinking, and at this point

9     we concur with Mr. Goldman that we're on board at this

10     stage.

11          THE COURT:  Okay.  Thank you.  And I hope you had

12     a wonderful time, even if your voice is gone, which probably

13     means you did have a wonderful time.

14          MR. SARNOFF:  I may have had too good a time, but

15     thank you.  Thank you very much, Your Honor.

16          THE COURT:  Okay.  That's nice to hear.

17          Does counsel for HK International wish to be

18     heard?

19          MR. FERA:  Your Honor, Sam Della Fera for HK and

20     Ms. Guo.

21          As the Court may recall, we reserved -- we

22     reserved the right to -- of our client to connect to any

23     sale and, you know, we're prepared to address any proposed

24     sale at the time that the motion described by the trustee is

25     filed.

1        THE COURT:  Okay.  Thank you.  Attorney Claiborn,

2    is there anything that you'd like to say to the Court on

3    this issue?

4        MS. CLAIBORN:  No, Your Honor.

5        THE COURT:  Okay.  Well, I understand, Trustee

6    Despins, what you're proposing, and I -- the time frames

7    that you've laid out appear to be fine.

8            Again, as I stated, you'll have to, in your

9    motion, you know, seek relief from following the processes

10   under our local rules, and you'll have -- you know, you'll

11   address those things but you'll need to do that and you'll

12   need to be prepared to have, you know, evidence submitted at

13   the sale hearing so that the Court can determine that all

14   the procedural and substantive issues have been properly

15   addressed.

16           I don't think there's anything else that we can

17   talk about with regard -- I have other things to talk to you

18   about today, but not with regard to the Lady May and the

19   proposed sale.  So unless anyone else wishes to be heard

20   about the Lady May the proposed sale, then I do have a few

21   things that I wanted to talk about.

22           Okay.  Hearing nothing, then I received yesterday,

23   I believe, the-- now I'm turning completely to the AIG

24   Adversary proceeding, okay?  And I received -- or I was

25   forwarded, which was appropriate, an email from Attorney

1    O'Connor, that says that AIG is voluntarily extending the

2    cancellation date to the end -- of that insurance policy to

3    the end of June, and that there's going to be some informal

4    discovery conducted, and that AIG will file its opposition

5    to the preliminary injunction motion by May 31st, and that

6    Genever will file its reply by June 6th, and both parties

7    will file their witness lists and exhibits by June 13th.

8         And then it said Genever has a preference for June

9    20 or 21st on -- based on the -- excuse me, I'm sorry -- on

10   the availability of counsel for a hearing.  Unfortunately,

11   the Court is not available on June 20 or 21st.  Those dates

12   do not work.  So we need to figure out when we could have a

13   hearing before the expiration of the policy.

14        So I'm going to need you, Trustee Despins, to have

15   some discussions with Attorney O'Connor, because I can't --

16   we don't have the availability.  We just don't.  There are

17   scheduling conflicts throughout the month of June.

18        It is possible that -- and Attorney Claiborn is in

19   the courtroom right now, and I had alerted her this morning

20   that there might be -- something that she has scheduled on

21   the 28th and 29th of June might need to be continued if we

22   have that preliminary injunction hearing in the AIG

23   adversary proceeding on the 28th and 29th of June.

24        But you'll have to contact him, Trustee Despins,

25   and find out whether or not -- I don't even know if that

1    works for you, but if it doesn't, then we're into July and

2    then you've got an issue of, will they consent to a further

3    extension of time before they believe -- they assert that

4    the policy is canceled.  I don't know.  But -- so I need you

5    to have that discussion and then someone get back to us

6    through the courtroom deputy box as soon as you can so that

7    I can schedule things.  Okay?

8              MR. DESPINS:  Yes, Your Honor.  So just to be

9    clear, you're not available in the week before the 19th,

10   like from the 12th or the 16th?

11             THE COURT:  The 14th, and 15th, and 16th, I am not

12   available, and the 20th, 21st, and 22nd, I am not available.

13             MR. DESPINS:  And the 19th?

14             THE COURT:  That's a Monday.

15             MR. DESPINS:  Oh, you have your regular docket.

16             THE COURT:  And we're closed, because that's a

17   federal holiday.  That's Juneteenth.

18             MR. DESPINS:  Okay.  Oh, yes.  Of course.  Okay.

19   So we really have to move this to July.  Okay.  Let me --

20   let me come back to Your Honor on this.  Thank you.

21             THE COURT:  Thank you.  It just is what it is.  We

22   have things scheduled that -- and/or that I have to be

23   places that I have no control over, and it's not for a

24   wedding or anything fun like that, so that -- so I don't

25   have a lot of availability in June, unfortunately.

1          MR. DESPINS:  Understood.

2          THE COURT:  At the early part, it's better, but

3     that's not going to work for you because you won't even have

4     -- you and Attorney O'Connor wont even have addressed your

5     discovery issues at that point.  So that's the first issue.

6          Then there is, I believe, some pending 2004

7     examination motions and objections that haven't been

8     scheduled yet for a hearing, and I think there's a couple of

9     motions still outstanding, a motion to seal and a motion to

10    compel compliance with other 2004 issues.  I don't know

11    where that stands.

12         And then also in *HK v. Despins*, 22-5003, there was

13    -- as you know, there have been orders granting partial

14    summary judgment on the first and second counterclaims, but

15    I don't know where we're going from there.  Are we

16    scheduling a pretrial conference?  There's -- to see where

17    we are with regard to the remaining counterclaims or -- I

18    don't know, but we already have something scheduled on July

19    18th on another adversary, I think it is.  Let me take a

20    look.

21         Yes, in *Despins v. Mei Guo, et al*, 23-5008,

22    there's a pretrial conference set at 1:30 on July 18th, and

23    then in -- then -- and there is a pretrial conference -- the

24    original pretrial conference that would be -- would have

25    been set by the clerk's office in the ordinary course of

1      *business in the* Genever v. AIG adversary, which may or may

2      not be necessary depending upon what happens with the

3      preliminary injunction hearing and ruling.  So those are

4      what I see as outstanding issues.

5              MR. DESPINS:  The we need to -- I mean, Mr. Linsey

6      is handling some of the 2004, but on the adversary

7      proceeding that includes our counterclaims against HK and

8      Mei Guo, I think it's okay to move that pretrial to July

9      18th, because as Your Honor pointed out in your decision

10     last week, you know, clearly there is an appeal pending, but

11     the more appeals pending -- and the other counts should

12     probably be dormant until those are resolved, but -- and

13     again, I am speaking out turn here because I need to talk to

14     my colleagues, but I believe that moving that pretrial to

15     July 18th would be fine, but Mr. Linsey, I'm assuming is

16     handling some of the 2004 that you eluded to.

17             THE COURT:  Okay.

18             MR. LINSEY:  As far as the 2004 motion goes, Your

19     Honor, there are objections from (indiscernible)and from the

20     debtor.  I was involved in the meet and confers yesterday

21     regarding those objections.

22             I don't want to argue those, the merits, or really

23     get too much into it because counsel aren't on, but I can

24     say I'm comfortable that Your Honor is familiar and has

25     dealt with the issue before, that is raised in those papers,

1    and we would like to get Your Honor's ruling on that motion

2    resolved as soon as we can so as not to delay progress in

3    the estate.

4           I don't anticipate that matter -- those objections

5    to the 2004 motion being substantially time consuming.  I

6    know that we had dates on -- for various matters on May

7    30th, and I believe again on June 6th.  I would be prepared

8    to go forward with those on May 30th, Your Honor.

9           THE COURT:  I don't think we will be prepared to

10   go forward with those matters on the 30th, though, so it may

11   be June 6th.

12          MR. LIEBMAN:  Understood, Your Honor.

13          THE COURT:  Then what about the motion to compel

14   compliance and a motion to stay that have been -- I mean,

15   sealed, that have been out there?

16          MR. LIEBMAN:  As far as compliance is -- with

17   respect to UBS, I am engaging in sort of day-by-day

18   negotiations with UBS, and we have hit some points of

19   disagreement.

20          What I told UBS's counsel, and actually I told her

21   this yesterday, is that we think that June 6th is time

22   enough to figure out whether we can move forward

23   cooperatively with a communications production, search

24   procedure, and package, or whether we need the Court's

25   intervention and not my -- the estate's intention, or that

1    there is not at least a framework of an understanding with

2    UBS that we're going to file something next week, whether

3    that's in the form of a sort of a supplemental memorandum

4    with respect to the pending cross-motion to compel, or

5    whether that's an amended cross-motion to compel.

6          We will file something next week so that the Court

7    has some -- has the benefit of a document that lets the

8    Court know exactly where things stand, rather than looking

9    at papers that are several months old when we move into a

10   hearing on June 6th.

11         But the estate believe the UBS discovery is

12   important (indiscernible).

13         THE COURT:  I lost you, Mr. Linsey.  We can't hear

14   you.  Can they not hear us?

15         THE CLERK:  I don't know what --

16         THE COURT:  They can't hear us.  Hold on.

17   Everybody stop.  Stop.

18         THE CLERK:  That's weird.

19         THE COURT:  Stop.  Stop.  We can't hear you.  We

20   can't hear you.  Hold on.

21      (Pause)

22         THE COURT:  I'm going to say something.  Mr.

23   Linsey, can you hear me?  Nope, he can't hear.

24         (Off the record 1:38 p.m. to 2:04 p.m.)

25         MR. DESPINS:  And what was the -- what was the

1    question?  We're ready to proceed on that at the Court's

2    earliest convenience.

3         THE COURT:  So that needs to be scheduled for a

4    hearing is what I'm asking.

5         MR. DESPINS:  Correct, Your Honor.

6         THE COURT:  Okay.  And then there's a motion to

7    seal that's out there.  We'll take a look at that too, and

8    probably the 2004 examination issues that we talked about

9    before the connection was lost, and now the motion to compel

10   compliance on the latest 2004 issues regarding G-Club and

11   others, and the motion to seal will likely all get set the

12   same date and time, and that may be June 6th.  We'll take a

13   look at that after we're done here today.  Okay?

14        MR. DESPINS:  Yes, Your Honor.

15        MR. LIEBMAN:  Thank you, Your Honor.

16        THE COURT:  All right.  Let me make sure there

17   isn't anything I'm -- I have forgotten to ask you about, but

18   I think that I am okay.

19        Yeah, I think that is it.  Those are the things

20   that I wanted to ask while we were in this status

21   conference.

22        Is there anything else anyone would like to add

23   for the record today before we conclude the status

24   conference?

25        MR. DESPINS:  Your Honor, Your Honor.  Very

1    briefly and this goes under the rubric of nothing is easy in

2    this case.

3                Your Honor entered a decision on Count 2 of the --

4    on our summary judgment, Count 2 of the counterclaims, and

5    the order was pretty precise in terms of the experts on the

6    Kwok estate as to the funds, et cetera, but those funds are

7    held by an escrow agent and --

8                THE COURT:  Yes, we know.

9                MR. DESPINS:  -- I'm quoting them now and

10   basically they're saying, well, we're like -- we're like a

11   machine.  We don't think.  You need to point us to

12   provisions of the escrow agreement that allows us to turn

13   this over to you.  And of course we tell them, then -- well,

14   there's a court order that says that we need to do that, and

15   they're looking in that.

16               So the point to this, Your Honor, is that we may

17   be back in front of Your Honor to get the escrow agent to

18   transfer the money to us.

19               Obviously, from their point of view, they're not

20   in law.  They don't want any exposure.  This could be

21   resolved by a joint letter, by us and by HK International or

22   only HK International, so we'll reach out to them.  To be

23   fair, we have not reached out to them yet, but -- so that

24   issue is percolating in the background and --

25               THE COURT:  Well, it's not --

1    MR. DESPINS:  -- I understand from --

2    THE COURT:  -- as though we didn't think about

3    that issue when the decision was being issued, but there was

4    nothing in any of the papers submitted that talked about

5    directing the escrow agent to do -- specifically to do

6    anything or be served with any of these issues, because we

7    didn't know -- I don't know what this communications, if

8    any, were had with the escrow agent.

9         And so it's not in that order purposefully,

10   because there was nothing that I saw in any of the papers

11   that would have either specified specific sections of the

12   escrow agreement, or that had the escrow agent under --

13   aware that there was -- I have no idea if they know even

14   about this adversary proceeding.

15        MR. DESPINS:  They know now, but the point is that

16   the order clearly says the escrow funds belong to the estate

17   --

18        THE COURT:  I agree.

19        MR. DESPINS:  -- so if there's a plumbing issue --

20   I understand that there's plumbing that needs to be -- to be

21   dealt with, so we hopefully --

22        THE COURT:  Right.  And I didn't think I should be

23   the plumber, so I --

24        MR. DESPINS:  Correct.  Understood.

25        THE COURT:  -- we didn't put that in, because I

1    had no idea what discussions, if any, you might -- all of

2    you might be having with the escrow agent.  I have no -- I

3    had no idea and so I was not going to put anything in that

4    could impede or -- you know, any discussions or negatively

5    impact any discussions.  So I understand what your point is,

6    though, clearly.

7              MR. DESPINS:  Yeah.

8              THE COURT:  And we'll see what happens whenever

9    whatever happens, happens, and you'll let the Court know.

10   But I agree that the order --

11             MR. DESPINS:  Will do.

12             THE COURT:  -- clearly states that the escrowed

13   funds are property of the Chapter 11 estate of the

14   individual debtor.

15             MR. DESPINS:  Okay.  Thank you, Your Honor.

16   That's all we have for today.

17             THE COURT:  Okay.  Thank you all, then, and --

18             MR. DESPINS:  Thank you.

19             THE COURT:  -- we'll issue -- I'm sure there will

20   be a few -- there will probably be an order scheduling that

21   pretrial conference in the *HK USA v. Despins* adversary

22   proceeding for July 18, and then we'll look to schedule

23   hearings on the other matters we discussed regarding the

24   discovery this afternoon.  Okay?

25             MR. DESPINS:  Your Honor, just one last thing.  I

1    apologize.  The hearing tomorrow on AIG, could we keep that

2    as a Zoom for scheduling purposes only so that -- that

3    facilitates the -- everyone can get on the --

4              THE COURT:  Yes.

5              MR. DESPINS:  -- line and then we can talk about

6    -- -okay.

7              THE COURT:  Yes, so --

8              MR. DESPINS:  So therefore --

9              THE COURT:  -- I think it's scheduled --

10             MR. DESPINS:  -- it should go forward --

11             THE COURT:  -- it's scheduled at 10:00 tomorrow,

12   correct?

13             MR. DESPINS:  Correct.  But it needs to be turned

14   into a Zoom hearing.

15             THE COURT:  Yes.  We'll -- we will -- we will do

16   that.  I just want you to know, we've got another matter at

17   11:00, because I knew you weren't going forward with the

18   preliminary injunction hearing, so I would ask you to --

19             MR. DESPINS:  Yeah.

20             THE COURT:  -- talk to Attorney O'Connor and let

21   both of you -- both of you be aware that we've got another

22   conference at 11:00 a.m.

23             MR. DESPINS:  Yes.  And hopefully one hour will be

24   more than enough for us to figure out scheduling issues, but

25   one never knows.

1          THE COURT:  Maybe it will only be --

2          MR. DESPINS:  Thank you, Your Honor.

3          THE COURT:  -- maybe it will only be three minutes

4     because you'll have already figured them out.

5          MR. DESPINS:  Right.  Okay.  Thank you, Your

6     Honor.

7          THE COURT:  Okay.  All right.  Thank you.  Then

8     that is the last matter on the calendar today, so court is

9     adjourned.

10          MR. DESPINS:  Thank you.

11          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13        (Proceedings concluded at 2:10 p.m.)

14

15          I, CHRISTINE FIORE, court-approved

16     transcriber and certified electronic reporter and

17     transcriber, certify that the foregoing is a correct

18     transcript from the official electronic sound recording of

19     the proceedings in the above-entitled matter.

20

21     *Christine Fiore*

22     _____        May 30, 2023

23        Christine Fiore, CERT

24

25