UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK and GENEVER | * | |
| HOLDINGS CORPORATION, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| HK INTERNATIONAL FUNDS | * | Adv. Proc. No. 22-05003 |
| INVESTMENTS (USA) LIMITED, | * | |
| | * | Bridgeport, Connecticut |
| Plaintiff, | * | June 6, 2023 |
| | * | |
| v. | * | |
| | * | |
| LUC A. DESPINS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * *

TRANSCRIPT OF

#1789  FIFTH OMNIBUS MOTION FOR EXAM MOTION FOR 2004 EXAM
       OF ADDITIONAL ENTITIES AND INDIVIDUALS AFFILIATED
       WITH DEBTOR AND ENTITIES DOING BUSINESS W/DEBTOR AND
       AFFILIATED ENTITIES
#1805  SECOND OMNIBUS MOTION TO COMPEL COMPLIANCE W/RULE
       2004 SUBPOENAS
#1806  MOTION TO SEAL
#1845  MOTION TO EXTEND TIME TO RESPOND TO TRUSTEE'S MOTION
       TO COMPEL COMPLIANCE W/RULE 2004 EXAM SUBPOENA TO
       AUGUST 7, 2023
#1850  CONSENTED TO MOTION OF HUDSON DIAMOND NY LLC AND
       HUDSON DIAMOND HOLDING TO ADJOURN HEARING ON MOTION
       OF CHAPTER 11 TRUSTEE FOR ENTRY OF AN ORDER HOLDING
       HUDSON DIAMOND NY LLC AND HUDSON DIAMOND HOLDING LLC
       IN CIVIL CONTEMPT FOR FAILING TO RESPOND TO RULE
       2004 SUBPOENAS
#1864  ORDER SETTING STATUS CONFERENCE
# 227  ORDER SETTING STATUS CONFERENCE
            BEFORE THE HONORABLE JULIE A. MANNING
               UNITED STATES BANKRUPTCY JUDGE

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:

| | |
|---|---|
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ.<br>Paul Hastings<br>200 Park Avenue<br>New York, NY  10166 |
| For the Chapter 11 Trustee: | NICHOLAS A. BASSETT, ESQ.<br>AVRAM EMMANUEL LUFT, ESQ.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY  10166 |
| | PATRICK R. LINSEY, ESQ.<br>Neubert Pepe & Monteith, PC<br>195 Church Street<br>New Haven, CT  06510 |
| For the U.S. Trustee: | HOLLEY L. CLAIBORN, ESQ.<br>Office of the United States<br>    Trustee<br>The Giaimo Federal Building<br>150 Court Street, Room 302<br>New Haven, CT  06510 |
| For the Creditor, Pacific<br> Alliance Asia Opportunity<br> Fund L.P.: | STUART SARNOFF, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| | TREVOR L. BRADLEY, ESQ.<br>Robinson & Cole<br>28 Trumbull Street<br>Hartford, CT  06103 |
| For HK International Funds<br> Investments, LLC and<br> Mei Guo: | MELISSA I. FALK WERNICK, ESQ.<br>Chiesa Shanhinian &<br>Giantomasi, P.C.<br>105 Eisenhower Parkway<br>Roseland, NJ  07068 |
| | AARON ROMNEY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th Floor<br>Bridgeport, CT  06604 |
| For the Creditors Committee: | KRISTEN MAYHEW, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |

APPEARANCES:  (Cont'd)

For the Defendant, Hing Chi          CHRISTOPHER J. MAJOR, ESQ.
Ngok:                                Meister Seelig & Fein LLP
                                     125 Park Avenue
                                     New York, NY  10017

For G Clubs Operations, LLC:         JEFFREY M. SKLARZ, ESQ.
                                     KELLIANNE BARANOWSKY, ESQ.
                                     Green & Sklarz, LLC
                                     One Audubon Street
                                     New Haven, CT  06511

                                     CAROLINA FORNOS, ESQ.
                                     Pillsbury Winthrop Shaw Pittman
                                     31 West 52nd Street
                                     New York, NY  10019

1          (Proceedings commenced at 1:07 p.m.)

2          THE CLERK:  22-50073, Ho Wan Kwok and Genever

3     Holding, LLC, and Adversary Proceeding 22-05003,

4     HK International Funds Investment USA Limited vs. Despins.

5          THE COURT:  Okay.  Before we take appearances, I

6     just want to note for the record that -- as I've noted in

7     the past, that the federal government has determined that

8     there's no longer a pandemic, and so hearings are in person

9     unless there's cause for someone to appear remotely.  And

10    I've granted motions today for people to appear remotely

11    when there was a reason given.  And I granted one when there

12    wasn't a reason given.

13         Just being an out-of-state lawyer is not a reason

14    to appear remotely.  So if you are not able to appear in

15    person, and your reason is that you're an out-of-state

16    lawyer, your motion to appear remotely will be denied.  So I

17    just want everyone to be aware of that.

18         So let's take appearances for the record, starting

19    with the Chapter 11 trustee, please.

20         MR. DESPINS:  Good afternoon, Your Honor.  Luc

21    Despins, Chapter 11 trustee.

22         MR. BASSETT:  Good afternoon, Your Honor.  Nick

23    Bassett from Paul Hastings on behalf of the Chapter 11

24    trustee.

25         MR. LUFT:  Good morning, Your Honor.  Avi Luft of

1    Paul Hastings on behalf of the Chapter 11 trustee.

2              MR. LINSEY:  Good afternoon, Your Honor.  Patrick

3    Linsey for the trustee.

4              MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

5    Claiborn for the U.S. Trustee in the main case.

6              MR. ROMNEY:  Good afternoon, Your Honor.  Aaron

7    Romney --

8              MR. SARNOFF:  Stuart Sarnoff --

9              THE COURT:  Hold on, Attorney Sarnoff.  We're

10   going to take people in the courtroom first, please.

11             Go ahead.

12             MR. ROMNEY:  Aaron Romney, Zeisler & Zeisler, on

13   behalf of the debtor, HK International, Mei Guo, and the

14   Hudson Diamond entities.

15             THE COURT:  Good afternoon.

16             MR. ROMNEY:  Good afternoon.

17             MR. MAJOR:  Good afternoon, Your Honor.  Chris

18   Major, Meister Seelig & Fein.  We represent Ms. Ngok and

19   Greenwich Land, LLC.

20             THE COURT:  Good afternoon.

21             Before we take appearances of people who are

22   appearing remotely, is there anyone else in the courtroom

23   who would like to note their appearance?

24             MR. BRADLEY:  Good afternoon, Your Honor.  Trevor

25   Bradley from Robinson and Cole, Connecticut counsel for

1    Pacific Alliance Asia Opportunity Fund.  Thank you.

2            THE COURT:  Good afternoon.  Attorney Bradley, you

3    may have done that, but have you filed a notice of

4    appearance yet in the case?

5            MR. BRADLEY:  Yes, Your Honor.  This morning.

6            THE COURT:  Okay.  Thank you.  I just haven't had

7    an opportunity to see that.

8            MS. MAYHEW:  Good afternoon, Your Honor.  Kristin

9    Mayhew on behalf of the creditors' committee, appearing in

10   the main case, not in the adversary proceeding.

11           THE COURT:  Good afternoon.

12           MR. SKLARZ:  Good afternoon, Your Honor.  Jeffrey

13   Sklarz, Green & Sklarz, for G Club Operations, LLC, with

14   Kelli Baranowsky from my office and Carolina Fornos of

15   Pillsbury Winthrop who was admitted pro hac vice I believe

16   yesterday and will be getting her appearance on file as soon

17   as possible.

18           MS. FORNOS:  Yes,  Your Honor.

19           THE COURT:  Thank you.

20           MR. SKLARZ:  In the main case only.

21           THE COURT:  Thank you.  Good afternoon.  Welcome.

22           MS. FORNOS:  Good afternoon.

23           THE COURT:  All right.  So I think we've taken all

24   appearances of counsel in the courtroom.  We've now taken --

25   obviously, I asked Trustee Despins to note his appearance

1    first.  So then I'll turn to Attorney Sarnoff and Attorney

2    Wernick.  So go right ahead, please.

3            MR. SARNOFF:  Thank you, Your Honor.  Stuart

4    Sarnoff on behalf of Creditor PAX in the main case.

5            MS. WERNICK:  And good afternoon, Your Honor.

6    Melissa Wernick of CSG Law on behalf of Ms. Guo and HK USA.

7            THE COURT:  Good afternoon.

8            All right.  There are, as I noted, several matters

9    on the calendar today, one in the HK International Funds

10   Investment Adversary Proceeding, 22-5003, and then several

11   matters in the main case of the individual debtor and the

12   related corporate entities, which is 22-50073.

13           There is one matter that it's on the calendar that

14   I think is consented to, but I don't know if I'm correct,

15   which is 1850, which is a consented-to motion of Hudson

16   Diamond and -- LLC and -- oh, I'm sorry.  I know that's not

17   consented to is what I should say, right?  Isn't that the

18   situation where there was a dispute upon whether there was

19   really consent to an adjournment of a hearing?

20           Is that what I'm -- I'm going to ask you first,

21   Attorney Romney, and then -- okay.  Go ahead.

22           MR. ROMNEY:  Yes, Your Honor.  Aaron Romney for

23   the record.  You are correctly describing the matter.  As I

24   stated in my reply, I'm not -- I don't understand the basis

25   of the dispute given what I understand we agree on.  I'm

1  certainly here to work that out.

2          I've always understood Attorney Luft to be an

3  extremely reasonable person, so I don't know what to say.

4  He disagrees with something we've written.  I was happy to

5  correct it.  But I don't understand it, so I'm here to work

6  this out.

7          THE COURT:  So has it been corrected, whatever the

8  "it" might be?  And I'm not sure, Attorney Romney, what the

9  "it" is, but I know if I -- you refresh my recollection.

10          MR. ROMNEY:  Your Honor, from my perspective,

11  originally I was unable to ascertain what the "it" was,

12  because I was reading back what our agreement was from the

13  other side.  And I was not understanding what the source of

14  the contention was.

15          As of yesterday evening, I was able to ascertain

16  one discrepancy which was the date by which a -- the hearing

17  would be adjourned to in the event that compliance was not

18  satisfactory.  I was able to pick up on that.  I put in my

19  reply, as well as attempted to make contact with Attorney

20  Luft but was unsuccessful with that, that we're certainly

21  amenable to some earlier date.  It was not an intentional

22  one-over on the trustee.

23          So I'm here to work this out.

24          THE COURT:  Okay.

25          MR. ROMNEY:  I don't want to make a big issue out

1    of this.  There was no intent to be deceptive.  Had there

2    been something I could have ascertained, I would have

3    corrected the record myself as I informed Attorney Luft.

4    But there appears to be a miscommunication.  Thank you.

5              THE COURT:  Okay.  Thank you.

6              Attorney Luft?

7              MR. LUFT:  Your Honor, I'll ask you your

8    preference.  If you'd like to address this issue now, I'm

9    happy to do it.  I'm also happy to do it in the context of

10   the motion to compel, whichever is the Court's preference.

11             THE COURT:  Well --

12             MR. LUFT:  But --

13             THE COURT:  -- I don't know if I have a preference

14   at the moment.  But what I would like to determine is with

15   regard to -- it seemed to me, anyway, so just understand

16   that I could be incorrect, that there was some form of an

17   agreement on continuing this hearing on the contempt.  Is

18   that correct, or am I wrong about that?

19             MR. LUFT:  Your Honor, there was what I thought

20   was an agreement based on terms of a negotiation.

21             THE COURT:  Okay.

22             MR. LUFT:  Unfortunately, what was filed with the

23   Court on a consent motion that we were never shown does not

24   express the terms of what was agreed to.

25             THE COURT:  Okay.

1      MR. LUFT:  And that's what we said.  So while --

2  and when I've asked for that to be corrected and to -- for

3  the filing to be fixed to match those terms, the other side

4  has declined.  So I don't know whether we have an agreement

5  with regard to what we did.

6      THE COURT:  Well, here's what we're going to do.

7  I'm going to have you and Attorney Romney go out and talk

8  about it for a few minutes, and I bet you're going to come

9  back with an agreement.

10      MR. LUFT:  I would appreciate that, Your Honor.

11      THE COURT:  Okay?  Because I think it's an issue

12  that can be resolved.  And if it can't be resolved, then

13  I'll resolve it, and we'll move on to other things.  Okay?

14      MR. LUFT:  Thank you, Your Honor.

15      THE COURT:  I understand both of what you're both

16  saying, but I think we're all at a point where we can agree.

17  And if we can't agree, then I will rule.  It's just that

18  simple.

19      So why don't you -- I mean, with regard to the

20  other matters on the calendar, is it going to be detrimental

21  if the two of you step out of the courtroom right now and --

22  while the other matters are addressed?

23      MR. DESPINS:  Well, Your Honor, if I could?  This

24  is Luc Despins.  I tried to address that, because I would

25  really appreciate the Court's indulgence in going into the

1    status conference regarding the stay pending appeal.  So I

2    don't know whether that's going to be the Vartan firm or

3    Mr. Romney who's going to handle that.

4              THE COURT:  Or Mr. Romney?  Okay.

5              MR. ROMNEY:  Attorney Wernick will be handling

6    that, so --

7              THE COURT:  Okay.  So Attorney Wernick's going to

8    handle that issue.  So I think, Mr. Romney, then it would be

9    okay if you were -- and you and Attorney Luft were to go out

10   and talk.

11             MR. ROMNEY:  Certainly from my perspective.

12             THE COURT:  Okay.  Why don't you do that.  And

13   then we'll turn to the stay pending appeal issue.  Because

14   Attorney Wernick is going to address that with -- I don't

15   know if you, Mr. Despins, are going to address that or

16   Mr. Bassett --

17             MR. DESPINS:  Yeah, I will.

18             THE COURT:  -- or Mr. Linsey are going to address

19   that.

20             MR. DESPINS:  I will, Your Honor.

21             THE COURT:  All right.  So why don't you two go

22   see what you can accomplish.  If you can't accomplish

23   something, I'll just rule.  But I would think -- I

24   understand -- you know, I think we can agree that maybe

25   things -- there wasn't a complete meeting of the mind before

1    things were filed and things were shown or not shown.  But

2    we're here now, so let's just resolve it.  Okay?

3            MR. ROMNEY:  Thank you very much, Your Honor.

4            THE COURT:  All right.

5            MR. LUFT:  Your Honor, if there's any -- I will be

6    handling the whole motion to compel which has other parts.

7    So if that could be put to the end --

8            THE COURT:  We're not getting there yet.  Yeah.

9            MR. LUFT:  -- I would appreciate that.

10           THE COURT:  Yeah.  We're not going to get to the

11   motion to compel yet.

12           MR. ROMNEY:  Thank you, Your Honor.

13           THE COURT:  Okay?  All right.  Thank you.

14           MR. ROMNEY:  Thank you, Your Honor.

15           THE COURT:  Appreciate it.

16           All right.  So with regard to 1850, we're just not

17   going to address that at the moment.  What we are going to

18   address is, I believe, Trustee Despins is in the adversary

19   proceeding, the motion for stay pending appeal of the status

20   conference request.  Is that what you're suggesting we turn

21   to now?

22           MR. DESPINS:  If Your Honor will allow this, yes.

23           THE COURT:  Yes.  Please proceed.

24           MR. DESPINS:  Okay.  So, Your Honor, more than two

25   weeks ago, I believe, you entered an order that is very

1    clear, had various findings including the fact that the

2    escrowed funds were property of the estate, including

3    directing the debtor's daughter and old HK USA to transfer

4    all property of HK USA to us by June 2nd, and none of that

5    occurred despite the fact that we prompted the -- you know,

6    both the Zeisler firm and the Vartan firm to do that.  And

7    on Friday, they filed a motion for a stay pending appeal.

8    And, you know, left to their own devices, they would have

9    this motion heard like probably two months from now.

10        The point is that right now there's an enforceable

11    order, and you were very specific about the fact that the

12    order is effective immediately.  There had been a breach of

13    that from day from day one after entering the order.

14    They're still in breach of it.

15        And the fact that we filed a motion for a stay

16    pending appeal does not excuse noncompliance.  And what we

17    want is to schedule a hearing, because -- on the stay

18    pending appeal for -- obviously subject to Your Honor's

19    availability, for next week, because we think there needs to

20    be a full airing of some issues, including the issue of --

21    and I'm not suggesting a stay should issue.  But Your Honor

22    has the ability to not only deny the stay but also to deny

23    the stay and say and if the stay were to be granted I would

24    impose a bond requirement of X dollars.

25        And that's what we think there should be evidence

1    on which is the detriment to the estate of the stay being in

2    place with respect to that order.  And so, therefore, we

3    would -- just the punchline is we would like to file our

4    objection, our response to this by Monday morning at 9 a.m.

5    and subject to Your Honor's availability next week, you

6    know, to be heard on Tuesday or Wednesday of next week so

7    that this stay issue can be resolved one way or another.

8    Because there's just delay at this point and enforcement of

9    an order that is enforceable, we believe, according to its

10   terms.

11        THE COURT:  Okay.  I'm just taking a look at

12   something while you're saying that.

13        MS. WERNICK:  And, Your Honor, I'm prepared to

14   respond whenever the Court's ready.

15        THE COURT:  Thank you.  Yes.  I just need a

16   minute, Attorney Wernick.  I just wanted to look at one

17   thing, please.  Thank you.

18        (Pause)

19        THE COURT:  Okay, Attorney Wernick.  Thank you.

20   You may respond.

21        MS. WERNICK:  Thank you, Your Honor.  So first, I

22   would just say while we certainly disagree with the

23   trustee's statement that there has been any delay or that

24   this matter presents an emergent issue, you know, we

25   certainly have no issue with the Court scheduling a hearing

1    in connection with the motion sometime next week at the

2    Court's convenience.  But what I do have an issue with and

3    which I think is really separate from the motion to stay

4    which is pending is the notion that there hasn't been

5    compliance with the order.

6              As the trustee well knows, and I think the dispute

7    really centers upon the escrow funds, because I don't think

8    there's anything else to turn over, is that HK and Ms. Guo

9    don't have control over the escrow funds.  They're held in

10   escrow by the escrow agent.

11             And both our firm, the Zeisler firm, and the

12   trustee received correspondence by counsel for the escrow

13   agent indicating that from the escrow agent's perspective,

14   there has not been an identified event calling for the

15   release of the escrow funds because the Court's summary

16   judgment order is currently not a final non-appealable

17   order.

18             So by operation of that order, it certainly, you

19   know, would be our position that the trustee has -- you

20   know, already has to the effect -- you know, HK's rights

21   under the escrow agreement, but the escrow agent is taking

22   the position that it's not a final non-appealable order such

23   that the funds can be released.  So the objection to the

24   presentation this morning is really one of compliance.

25             MR. DESPINS:  Okay.  So, Your Honor, this is easy.

1   This is like the Lady May II.  They say that they've

2   complied.  So why don't we just send a joint letter from the

3   Vartan, Zeisler firm and from Paul Hastings to the escrow

4   agent saying we hereby direct you to transfer the funds to

5   the trustee account.  I assume that that's something that,

6   obviously, if you're in compliance, you would be happy to

7   send that letter -- that joint letter to the escrow agent,

8   correct?

9            MS. WERNICK:  Well, so, no.  It's a different

10   issue, though, right?  So right now, the escrow agreement --

11   and by virtue of the escrow agreement, the funds are to be

12   released on a final non-appealable order and --

13            MR. DESPINS:  No, no, no --

14            THE COURT:  It doesn't say just that, Attorney

15   Wernick.

16            MR. DESPINS:  Your Honor --

17            THE COURT:  It does say or court order.  It

18   doesn't say a final --

19            MR. DESPINS:  Oh, but, Your Honor --

20            THE COURT:  -- non-appealable order of summary

21   judgment on an alter ego claim.  It doesn't say that.  But

22   with regard to --

23            MR. DESPINS:  But, Your Honor --

24            THE COURT:  Hold on a second, Trustee Despins.

25            MR. DESPINS:  Okay.

1          THE COURT:  With regard to Trustee Despins'

2     suggestion, why -- first of all, where is -- do you have a

3     letter from U.S. Bank -- aren't they the escrow agent --

4     saying they won't release the money?

5          MS. WERNICK:  We have a letter from counsel to the

6     escrow agent.

7          THE COURT:  All right.  Has that been filed on the

8     docket of this case?

9          MR. DESPINS:  No.

10          MS. WERNICK:  I don't know that it has.

11          THE COURT:  Okay.  Well, I would like to see that.

12          MR. DESPINS:  Your Honor, this is very simple.

13          THE COURT:  I'd like to see that.  Okay?  I --

14          MR. DESPINS:  But --

15          THE COURT:  Hold on a second, Trustee Despins.  So

16     I -- I'm ordering you to file that letter on the docket of

17     this adversary proceeding by 9:00 a.m. tomorrow morning.

18     Okay?  That's first and foremost, number one.

19          Number two, as you know, and Attorney -- Trustee

20     Despins already raised the issue.  But everybody knows that

21     if you got a stay pending appeal, you may be required to

22     post a bond.  So if the $37 million isn't going to be turned

23     over because of the appeal, then you may have to post a bond

24     for 37 million or more.  And HK USA asserts it has no other

25     property.  So how are you going to address the -- I mean,

1    the rules talk about a bond.  How are you going to address

2    that issue while an appeal is pending?

3            MS. WERNICK:  Yeah.  Certainly, Your Honor, in

4    certain circumstances a bond may be directed by the Court in

5    order to obtain a stay pending appeal.  And if that's

6    something that the trustee intends to put forward in their

7    opposition papers, you know, obviously we'll have to respond

8    to it at that time.

9            It sounds like the trustee is indicating that

10   that's a condition that they are going to be seeking.  But I

11   think that would be more appropriately addressed at the

12   hearing on the motion once there is papers and that we can

13   have to respond to.

14           MR. DESPINS:  Your Honor, if I may?

15           THE COURT:  Well, I don't -- I -- well, okay.  I

16   understand what you just said, except that you filed a

17   motion under Rule 8007 for a stay pending appeal.  And it

18   says -- initial motion in the bankruptcy court.

19           It says, "Ordinarily, a party must move first in

20   the bankruptcy court for the following relief: a stay of a

21   judgment order or decree of the bankruptcy court pending

22   appeal, the approval of a bond or other security provided to

23   obtain a stay of judgment."

24           So I don't know that it's the trustee's burden.

25   It's your burden.  You're the moving party.  The rule --

1    you're the party that's seeking the stay, not the trustee,

2    right?  So under Rule 8007, you're going to have to address

3    the issue of a bond.

4            MS. WERNICK:  Certainly.  But it's not as though a

5    bond is required in each and every case in order to obtain a

6    stay pending appeal.

7            THE COURT:  Well, in this case, though, counsel,

8    the -- what you're not turning over is $37 million, right?

9    So and we have no idea how long the appeal will last, right?

10   And this is a situation where the arguments have been

11   made -- and you've made them.  You've represented your

12   clients on behalf of the arguments that have been made.  And

13   those arguments have not been found to be persuasive.

14           And this -- and you argued and briefed and put

15   forth -- I don't mean you necessarily only personally, I'm

16   saying on behalf of your clients -- the arguments to attempt

17   to defeat summary judgment on the second counterclaim in

18   which the Court found after extensive briefing and arguments

19   of the parties that HK International Funds Investment USA

20   Limited is and was at all relevant times the alter ego of

21   Mr. Ho Wan Kwok and that all of the property of HK USA,

22   including the Lady May, the Lady May II, and the escrowed

23   funds, constituted and constitute as applicable property of

24   the individual bankruptcy debtor's Chapter 11 estate.

25           So that's what this Court found.  You absolutely

1    have the right to appeal it, and you are, and that's fine.

2    But if you want a stay pending appeal, your stay pending

3    appeal, absent a bond, would -- your argument is you don't

4    have to turn over the 37 million while there's an appeal

5    pending unless you get a stay.

6         MS. WERNICK:  I --

7         THE COURT:  Well, maybe you would get a stay, but

8    you're going to have to -- it seems to me that if -- you're

9    trying to -- and I don't mean trying -- you are arguing that

10   you need a stay of that order because you don't want to turn

11   over the escrowed funds.  That's the only thing left, right?

12   As far as we've been told, the only assets of the Lady -- of

13   HK USA are the Lady May, the Lady May II, and the escrowed

14   funds.

15        We know -- I think we generally all know where the

16   Lady May is and what's happening with that.  We know a

17   little bit about the Lady May II.  And your clients have

18   stipulated that the trustee has control over the Lady May

19   II.

20        Now the Court has found that the escrow funds

21   constitute and constituted properties of the individual

22   Chapter 11 estate of the debtor and that on or before June

23   2nd, which was last Friday, that your client, Ms. Guo and HK

24   USA, shall deliver all property to Mr. Despins not in his

25   personal capacity but as the Chapter 11 trustee.  And that

1     hasn't been done.  And there was no stay pending appeal, and

2     there still is no stay pending appeal, in place at this

3     time.

4            So your clients are already -- have not -- are

5     already in violation of an order even if it's on appeal.

6            MS. WERNICK:  So, again, Your Honor -- right.  So,

7     again, Your Honor, I would just go back -- and I will, per

8     the Court's directive, make sure that the letter from the

9     escrow agent is, you know, immediately filed on the docket

10    so Your Honor has the benefit of that.

11           But second and, you know, why I would take, you

12    know, issue with the notion of a separate bond being

13    provided pending appeal here is the fact that -- escrow

14    funds are there.  They're currently being held in escrow.

15    You know, ordinarily, when you're seeking a bond pending an

16    appeal, it's to ensure that a judgment amount is ultimately

17    going to be available.  Here, we know that those funds are

18    going to be available, because they're sitting in escrow.

19           And so I think that presents, you know, a unique

20    circumstance of litigation that would obviate the need for a

21    bond.

22           MR. DESPINS:  Your Honor --

23           THE COURT:  Well, they're not going to be

24    available if you get a stay pending appeal, because you're

25    not going to turn them over.  So they're not going to be

1    available.

2              MR. DESPINS:  Exactly.

3              THE COURT:  So that argument is -- I mean, I

4    understand your argument, but I'm not sure it's persuasive.

5    You want a stay pending appeal.  And I understand this.  I

6    understand your position.  You want a stay pending appeal so

7    you don't have to have the $37 million turned over to

8    Trustee Despins.  I completely understand that.

9              But then you basically have taken the order

10   granting the motion for summary judgment, which you had

11   every opportunity to defend, which you did, and have it have

12   no effect unless and until the appeal is resolved, which we

13   have no idea when that will be.  No idea.  And this trustee

14   has duties under the Bankruptcy Code which he's been

15   attempting to carry out for some time now.  We're almost at

16   a year.

17             And so, you know, you can say they're available.

18   So what happens if they're available and you lose your

19   appeal?  So what's the damages to the estate then for the

20   loss of that money during that time?  Doesn't the Court have

21   to consider that?

22             MS. WERNICK:  And so perhaps -- again, you know, I

23   would like the benefit of the trustee's position on all of

24   this.  You know, and, again, certainly there are certain

25   circumstances where a bond may be posted pending appeal.

1    But I would certainly take the position given that the funds

2    are in escrow there would be no need for a bond approaching

3    the amount of the escrow funds to address that concern.

4              THE COURT:  Okay.  But that doesn't answer my

5    question --

6              MR. DESPINS:  Your Honor?

7              THE COURT:  -- right, which is doesn't the Court

8    have to consider that if you obtain a stay pending appeal

9    without a bond and you lose your appeal, what are the

10   damages -- we all know why the bond has to be posted.  It

11   has to be posted to protect against damages that the other

12   party suffers if the stay pending appeal is not granted -- I

13   mean, is granted.

14             And so what happens if you get a stay pending

15   appeal without a bond and then the trustee -- and the

16   trustee wins on appeal, but it takes two years or three

17   years from now for that to happen?  What are the damages

18   then?  Doesn't the trustee and the estate have damages for

19   the loss of the use of the $37 million or some other form of

20   security while the appeal is pending?

21             MS. WERNICK:  I don't know that the trustee does.

22   And I -- you know, I would leave it to the trustee to make

23   that argument.

24             THE COURT:  No.  I think you have to make that

25   argument.  Remember, you filed the motion.  Read Rule 8007.

1   You filed the motion.  It's your burden.  It's not the

2   trustee's burden.

3           You're seeking an extraordinary remedy, a stay

4   pending appeal of a decision that states that the order goes

5   into effect immediately.  And the compliance was required

6   last Friday.  And there is no stay pending appeal right now.

7   So your clients are already in violation of that order.

8           So anyway --

9           MS. WERNICK:  So again, Your Honor, that --

10          THE COURT:  Anyway, I hear everything you said.

11  And I'm sure you'll consider what I've said, and we'll hear

12  all about it.  And we'll make a determination.  Okay?

13          MR. DESPINS:  But, Your Honor, if I may be heard

14  briefly?

15          THE COURT:  Yes.  We affirmatively opposed the

16  release of the funds from the escrow.  There was an email

17  from Mr. Kindseth saying the funds should not be released.

18  That's number one.  Okay?

19          THE COURT:  Where is that?  Where is that email?

20          MR. DESPINS:  While there's an order saying --

21          THE COURT:  Where is that email?

22          MR. DESPINS:  That email?  That will be produced

23  with the other email where the bank says, well, it looks

24  like there's a dispute here, so I'm not going to

25  distribute -- disburse the funds.  There was an email saying

1    there's no final order, don't -- you know, basically,

2    there's no requirement to disburse the money.  That's number

3    one.

4            Number two is there -- you're absolutely right.

5    There's damage to the estate for the -- not being able to

6    use the funds.  There's definitely damage to the estate for

7    not being able to use the funds.

8            And right now, as I said, they're in violation of

9    a court order that's immediately effective, and they -- it's

10   very simple how to resolve this.  They say, oh, we've

11   complied, we've complied.  Let's send a joint letter,

12   Zeisler, Paul Hastings, and the Vartan firm, to the escrow

13   agent saying all three parties and the creditors' committee,

14   we have no objection to the funds being transferred to the

15   trustee account.  That will be compliance with the order.

16           And so -- but, of course, not doing that is not

17   being compliant in the sense that let's just assume for a

18   second that the escrow was created on -- in March of last

19   year, March 1st.  Let's assume the parties, which are HK

20   International and the creditors' committee, agreed the next

21   day, you know what, we don't need this escrow; U.S. Bank,

22   turn over the money to HK USA.  You think that the bank

23   would go, oh, I can't do that; I don't have a final order?

24   Both parties that are parties to the agreement say turn over

25   the money to HK USA.

1          That's exactly what they could make happen today,

2     but they're not, because they are interfering, and they're

3     exercising control of the property of the estate.  And

4     that's -- Your Honor, I'm sorry to say that that's

5     sanctionable.  Violation of the automatic stay.  This is an

6     individual case.  There can be multiple damages awarded on

7     that.  (Indiscernible) be awarded more than that.

8          Because they are exercising control over property

9     of the estate.  You found it's property of the estate.  And

10    by their inaction, and more than inaction, by saying to the

11    trustee -- to the escrow agent don't distribute, they are

12    violating the stay, because that's exercising control of the

13    property.

14         And as Your Honor knows, counsel have been -- you

15    know, and situations like this, I have been sanctioned in

16    other cases for clear violations for less than that.  Even

17    sending a letter demanding payment can be a violation of the

18    stay.  Here, they're doing worse than that.  They're telling

19    the escrow agent don't distribute.  And it's within their

20    control.

21         I guarantee you that if both Zeisler, Vartan, and

22    Paul Hastings and (indiscernible) sends a letter to U.S.

23    Bank tomorrow saying we all agree that the funds can be

24    transferred to the trustee subject to the right of HK USA or

25    Ms. Guo to appeal that the money would come to our account

1     the next day.  But they're not doing that, because they're

2     exercising control over the property of the estate.  And

3     that's a violation of the stay, Your Honor.

4              So I think this is really fundamental.  I'm not

5     asking you to rule on that now.  But I want to make sure

6     that you are aware of all the facts.  They have the ability

7     to undo the escrow with us, but they're not, because they

8     are interfering -- not only not complying with your order

9     but they're interfering with property of the estate.

10             So I'm really upset about this.  And I'm sorry if

11    I interrupted people, but I thought that these points are

12    very important to be made.  Thank you, Your Honor.

13             THE COURT:  Thank you.

14             Does anyone else wish to be --

15             MS. WERNICK:  And, Your Honor --

16             MR. DESPINS:  So, Your Honor --

17             THE COURT:  Oh, I'm sorry.  Go ahead --

18             MR. DESPINS:  Sorry.

19             THE COURT:  -- Attorney Wernick.  Were you going

20    to say something?  I apologize.

21             MS. WERNICK:  Yes.  No problem, Your Honor. I just

22    wanted to follow up.  The email that the trustee is

23    referencing from Mr. Kindseth is appended to the letter from

24    the escrow agent.  And I think it was, you know, somewhat

25    mischaracterized in the trustee's presentation.  But, you

1    know, the Court will see it when it's filed on the docket.

2              THE COURT:  Okay.  Thank you.

3              MR. DESPINS:  Oh, that letter doesn't say we

4    consent, right?  It says the opposite of consent.

5              THE COURT:  Well, we'll --

6              MR. DESPINS:  So --

7              THE COURT:  Let me take a look at it.

8              MS. WERNICK:  It presents facts.

9              THE COURT:  Let me take a look at it --

10             MR. DESPINS:  Yeah.

11             THE COURT:  -- and we'll see where things go.

12   Okay?

13             MR. DESPINS:  So, Your Honor, we wanted --

14             THE COURT:  With --

15             MR. DESPINS:  The other thing we want is to

16   schedule a hearing --

17             THE COURT:  I understand.

18             MR. DESPINS:  -- and to get a deadline --

19             THE COURT:  I understand.  I understand.

20             Okay.  I think, Attorney Sarnoff, were you going

21   to say something?

22             MR. SARNOFF:  I'm sorry, Your Honor.  I was not.

23             THE COURT:  Okay.  Thank you.

24             Does anyone else wish to be heard?  This is a

25   status conference only on the motion for stay pending

1  appeal.  Right now, the request is that -- the Chapter 11

2  trustee's request is that the motion for stay pending appeal

3  be set for hearing next week subject to the Court's

4  availability and that the trustee have -- I think you said,

5  Trustee Despins, until 9 a.m. on Monday, July -- June 12th

6  to file a reply to the motion for stay pending appeal.  Is

7  that what -- was that your request?

8        MR. DESPINS:  Correct, Your Honor.

9        THE COURT:  Okay.  Does anyone else wish to be

10 heard?  All right.  Hearing nothing, then the motion to stay

11 pending appeal filed on behalf of Mei Guo and HK Funds -- HK

12 International Funds Investment USA Limited, LLC, which is

13 ECF Number 227 in Adversary Proceeding 22-00 -- I'm sorry --

14 22-05003 will be set for hearing.

15        I need to look at the calendar.  So if you'll --

16 you'll all have to bear with me for a moment.

17                    (Pause)

18        THE COURT:  Well, we already have matters

19 scheduled at 1:00 on June 13th in this case, in the main

20 case, and so we can -- we will schedule in this adversary

21 proceeding the hearing on the motion for stay pending appeal

22 for June 13th at 1 p.m.

23        MR. DESPINS:  Thank you, Your Honor.

24        THE COURT:  And the reply of the trustee to the

25 motion for stay pending appeal, which was filed on Friday, I

1   believe, June 2nd, ECF-227, will -- the trustee will have

2   until 9 a.m. on June 12th to file the response to the motion

3   for stay pending appeal.

4          MS. WERNICK:  Might we also have until 9 a.m. on

5   the 13th to submit any reply?

6          THE COURT:  No.  But you can have until 6 p.m. on

7   the 12th.

8          MS. WERNICK:  Okay.  Thank you, Your Honor.

9          THE COURT:  Okay?  Thank you.  I'm just making a

10  note, so please just bear with me for a moment.  So that

11  addresses the status conference on the motion for stay

12  pending appeal in the HK International vs. Despins adversary

13  proceeding.

14         I see that Attorney Romney and Attorney Luft are

15  back in the courtroom, so I'm interested to hear what

16  progress you made with regard to the motion of Hudson

17  Diamond to adjourn the hearing on the trustee's motion for

18  an order holding the Hudson Diamond entities in contempt.

19         MR. LUFT:  Your Honor, I'm happy to report that we

20  have an agreement.  I have language which I could read to

21  the Court and that, if the Court wishes, we could then put

22  into a proposed order for you to sign if that's helpful.

23         THE COURT:  We definitely need an order.  But are

24  you -- I would assume that includes a hearing date and time.

25  Is that true?

1          MR. LUFT:  Your Honor, it does, although I think

2    that will be contingent on -- the agreement in short, which

3    I'll get to the details, is that we will give them two weeks

4    to fully comply.  They have agreed to raise no objections

5    other than as to privilege as to the subpoenas.  So my hope

6    is that all that will go well and that, ultimately, we may

7    not need any hearing.  But we have language which addresses

8    that, but that is the very short version of what we're

9    aiming for.

10          If Your Honor would like, I could read the

11   language which we've agreed to.

12          THE COURT:  Well, let me just -- before you do

13   that --

14          MR. LUFT:  Sure.

15          THE COURT:  -- let's, just for the sake of

16   argument, assume that there is no compliance.  What hearing

17   date -- did you -- the two of you discuss an eventual

18   hearing date?

19          MR. LUFT:  We did, Your Honor.

20          THE COURT:  And what is that?

21          MR. LUFT:  Without consulting the Court's

22   calendar, so I apologize if it conflicts with yours, we

23   talked about June 21st as a date with the idea being that

24   Mr. Romney's clients would have until June 15th to complete

25   their production.  That would allow them to do so and give

Ho Wan Kwok - June 6, 2023

32

1   the parties a chance to see what was actually produced

2   before having to come to the Court if necessary.

3            THE COURT:  The 21st, unfortunately, does not

4   work.

5            MR. LUFT:  Okay.

6            THE COURT:  So we'd have to -- we've already

7   scheduled -- well, let's just -- we could schedule something

8   on June 26th, but it would have to be in the afternoon.

9            MR. LUFT:  Your Honor, do you mind if I check my

10  calendar?

11           THE COURT:  No.  Go right ahead.

12           MR. LUFT:  I have no problem with that date, Your

13  Honor, and the afternoon is fine.

14           THE COURT:  Thank you.

15           Attorney Romney, does June 26th in the

16  afternoon -- and I'm probably talking about 2 or 3:00,

17  because we have a contested matter on in the morning.  I

18  don't think it's going to go until 2:00, but it could, so --

19           MR. ROMNEY:  Yes, Your Honor.  The short answer

20  is -- I have a medical appointment in the morning, but I

21  should be out by the afternoon.  And if not, I'm sure I can

22  get either a colleague from Zeisler & Zeisler or CSG to

23  cover that hearing.

24           THE COURT:  Well, what about if we say 3 p.m. to

25  be on the safe side.

1              MR. ROMNEY:  I think if I'm not out by 3 a.m., I

2       have --

3              THE COURT:  3 p.m.

4              MR. ROMNEY:  I'm sorry, 3 p.m., I have bigger

5       problems than this.

6              THE COURT:  Well, hopefully that is not the case,

7       so --

8              MR. ROMNEY:  I don't expect it to be, but thank

9       you.

10             THE COURT:  So let's schedule -- when you -- I

11      want you to put together this order and include in that

12      order the hearing date -- the continued hearing date on the

13      motion of June 26th at 3 p.m.  Okay?

14             MR. LUFT:  Yes, Your Honor.

15             THE COURT:  Now, go ahead and tell me what your

16      agreement is, please.

17             MR. LUFT:  Yes, Your Honor.  I'll read it in.  The

18      parties have no reason to and, therefore, do not dispute

19      that the Hudson entities were properly served with the Rule

20      2004 subpoenas directed to each of them through a statutory

21      service agent.  However, the Hudson entities contend that

22      the relevant individual at the Hudson entities was not

23      actually made aware of the subpoenas until after the filing

24      of the motion, a contention the trustee is in no position to

25      admit or deny.

1          Having now been apprised of the subpoenas and the

2     motion, the Hudson entities agree that they will fully

3     comply with the subpoenas and agree to raise no objections

4     to the subpoenas other than to issues of privilege.  The

5     parties agree that, based on the Hudson entities' agreement

6     to fully comply with the subpoenas, to not raise any

7     non-privilege objections to them.  The Hudson entities will

8     have until June 15, 2023, to complete their production to

9     the trustee.

10          Accordingly, the parties request that the motion

11     hearing be adjourned until June 26, 2023.  The parties agree

12     that should the motion hearing be deemed by the parties to

13     no longer be necessary, the parties will promptly inform the

14     clerk of the court.

15          THE COURT:  Okay.  And, actually, you wouldn't

16     inform the clerk of the court.  You'd just inform the

17     courtroom deputy, just so you know.  Okay?

18          MR. LUFT:  Yes, Your Honor.

19          THE COURT:  Because the clerk of the court might

20     not see it, and the courtroom deputy will.

21          MR. LUFT:  Okay.

22          THE COURT:  So I'd rather that be handled that

23     way.  Okay?

24          MR. LUFT:  Yes, Your Honor.

25          MR. ROMNEY:  For the record, that recitation was

1    accurate, Your Honor.

2              THE COURT:  Thank you, Attorney Romney.

3              Okay.  So then you'll get that order in, in the

4    next day or two?

5              MR. LUFT:  Yes, Your Honor.

6              THE COURT:  Okay.  All right.  So let's just note

7    for the record that 1850 -- we should just continue that to

8    the June 26th at 3 p.m., but you're going to be submitting a

9    stipulated order.  And, obviously, if there's some agreement

10   or resolution, then you'll let the courtroom deputy know,

11   and there won't be a hearing on June 26th at 3 p.m.  Okay?

12             MR. LUFT:  Thank you, Your Honor.

13             THE COURT:  All right.  Thank you, both.

14             All right.  So let's turn to the remaining matters

15   on today's calendar.

16             MR. DESPINS:  And, Your Honor, I'm sorry to

17   interrupt.  I just want to mention that, first of all, thank

18   you for letting me appear via Zoom.  I need to go back to my

19   trial.  It starts at 2:30 again.  So I may disappear.  So I

20   don't want to be rude, but I may just sign off during the

21   next ten minutes or so.  So I didn't want you to take that

22   as I was just not interested.  And I apologize.  I need to

23   run eventually.  Thank you.

24             THE COURT:  I understand.  Thank you.

25             All right.  So we have a few more matters on the

1    calendar: the fifth omnibus motion for examination, the 2004

2    examinations, the second omnibus motion to compel compliance

3    with subpoenas, motion to seal, the motion to extend time to

4    respond to the trustee's motion to compel.  Is that -- filed

5    by G Club?  Is that an agreed-upon motion or not?

6         UNIDENTIFIED SPEAKER:  No, Your Honor, it's not.

7         THE COURT:  Okay.  All right.  So before --

8    counsel, before we talk -- don't go away.  I just have one

9    other question, though, while the trustee's still here with

10   us.

11        With regard to the main case, before we address

12   some of the other motions, there's also a status conference

13   in the main case scheduled for today.  Is there something

14   else that you want to report to the Court with regard to the

15   main case?

16        MR. DESPINS:  No, Your Honor.  Not at this time.

17        THE COURT:  Okay.  All right.  So then we're not

18   going to worry about anything else in the main case other

19   than the specific matters we're going to address now.  Okay?

20   Just give me one moment, please.

21        All right.  So let's turn to that motion for

22   extension of time to respond to the trustee's motion to

23   compel that's been filed on behalf of G Club Operations, LLC

24   in the main case, which is ECF-1845.

25        MS. FORNOS:  Good afternoon, Your Honor.  Carolina

1    Fornos of Pillsbury Winthrop, and I'm here with Kelli

2    Baranowsky --

3              THE COURT:  Good afternoon.

4              MS. FORNOS:  -- of Green & Sklarz.

5              MS. BARANOWSKY:  Good afternoon, Your Honor.

6    Jeffrey Sklarz entered an appearance earlier, but he had to

7    excuse himself due to an unmovable medical appointment this

8    afternoon.

9              THE COURT:  Okay.  Thank you very much.

10             MS. FORNOS:  And, Your Honor, just for the record,

11   the notice of appearance has been filed.

12             THE COURT:  Thank you.

13             MS. FORNOS:  And we appreciate the Court's

14   approval of the pro hac vice.

15             THE COURT:  Thank you.

16             MS. FORNOS:  With respect to the request for

17   adjournment, as we stated in our papers, Your Honor, we have

18   requested a 60-day adjournment of the motion to compel

19   hearing.  The reason for that adjournment is quite

20   straightforward.  G Club Operations did not have anyone to

21   direct counsel until recently when it had an independent

22   director appointed, an independent manager.  We stated in

23   our papers it has officially been appointed as of June 1st.

24             I have spoken with that manager.  That manager

25   specifically requested a 60-day adjournment.  The reason for

1    that adjournment is the manager needs to, for obvious

2    reasons, understand the operations of the company, meet with

3    employees of the company, understand where the records are

4    kept.

5            And, as we have represented to the trustee, we

6    want to comply with the request.  It is not a matter of not

7    wanting to comply.  It is over broad, and we can address

8    that issue at a separate time.  But all we have wanted for

9    now is a 60-day adjournment of the motion to compel, because

10   it's premature.

11           Once the independent manager is able to assess, we

12   can have discussions.  We can certainly commence rolling

13   production.  But we think that the 60-day adjournment is

14   reasonable, Your Honor.

15           THE COURT:  I just want you to know, just so you

16   know, because you may not know, because you haven't been in

17   this case for -- you know, this is your -- the Court has

18   been told by parties in the past that they would produce

19   rolling production to the trustee, and they did not do so.

20   So I just want you to understand that if any party makes any

21   representation to the Court that rolling production is going

22   to be made and it isn't made, that's going to be a problem

23   for that party.  Okay?

24           MS. FORNOS:  Understood, Your Honor.  And part of

25   the reason for the adjournment is so that we can have the

1    independent manager have the time he needs to assess what

2    documents are responsive and available.  And certainly, we

3    hope, the trustee will be more reasonable than to ask for

4    every single document in G Club Operation's possession.

5             We also note, Your Honor, I had also asked for an

6    extension, because I did have a personal conflict.  I was

7    supposed to be in trial in the Western District of Texas.

8    That was resolved yesterday.  I was in court yesterday.  I

9    flew in last night to make sure that I could be here today.

10   Thank you.

11            THE COURT:  Appreciate that.  Thank you.

12            Attorney Luft?

13            MR. LUFT:  Your Honor, may I approach?

14            THE COURT:  Yes.

15            MR. LUFT:  Thank you, Your Honor.  Avi Luft on

16   behalf of the Chapter 11 trustee.  What you just heard is a

17   request saying that they want to comply, that there is no

18   one who could have answered these questions, and that they

19   want to be reasonable.  What that does is leaves out the

20   most important thing.

21            This new trustee -- this new independent -- what

22   is he referred to -- manager was appointed, we're told, on

23   June 1st.  The subpoena and the order in connection with it

24   was filed on December 2, 2022.

25            Ms. Fornos contacted me on December 21st saying

1    that she needed a 14-day extension to respond.  Then on

2    January 4th asked for another three days to respond.  Then

3    on January 9th filed response and objections to the Rule

4    2004 subpoena with nothing but boilerplate objections

5    indicating that they would not produce a single document in

6    response to a Rule 2004 subpoena of G Club.

7         We had our first meeting to confer on February

8    9th.  I was told what you just heard.  Well, the subpoena is

9    a little broad.  We'd like to comply.

10         But do you know why it's too broad?  Because the

11   debtor really just has a very tangential relationship to G

12   Club.  I believe the phrase told to me is he's just an

13   unpaid spokesperson.

14         Now, by this point, Your Honor had already entered

15   an order in connection with the preliminary injunction

16   hearing that G Club was one of the G Series entities, as

17   they were referred to, which already had been found to be

18   controlled by the debtor.  I told Ms. Fornos that based on

19   that and other information that we had, it was not

20   reasonable for them to contend to us that they weren't --

21   that the subpoena was over broad or that they shouldn't

22   produce any documents based on the idea that they debtor

23   really has a very tangential relationship.

24         She told me she'd go back and look at that, and

25   she wanted to consider it.  And we said we would see how we

1  could prioritize our requests.  Not waive any of them but

2  prioritize so we can get the most important information.

3         Now, on March 7th -- now we're three months past

4  when we served our subpoena.  There was a second meet and

5  confer.  And on that meet and confer, I was not on it, but

6  my colleagues were.

7         I am told that Ms. Fornos responded that G Club

8  was so offended by the idea that I said that the debtor has

9  been found to have a connection to G Club that they were no

10  longer interested in participating in discovery and that

11  they would come to Your Honor to seek relief and that they

12  would do so by March 10th, because the -- to clarify this

13  incorrection (sic) that there was a connection between the

14  debtor and G Club.

15         March 10th came and went.  Nothing was filed with

16  Your Honor.  And once again, we were left to reach out again

17  to say what is going on.  Where are -- we need to comply

18  with this.

19         By that point, the debtor had been indicated.  The

20  SEC had filed a complaint.  And lo and behold, what is

21  central to that SEC complaint as well as the indictment is

22  that G Club is a central part of the debtor's operations

23  and, at least according to the indictment and the SEC

24  complaint, his fraud.

25         What does G Club do?  It sells discounted

1    membership in G Coin, G Fashion, unregistered securities for

2    the debtor, all the debtor's entities.  As far as I know,

3    G Club has no business other than the debtor.

4         So the notion that they stalled for months based

5    on the idea that this has nothing to really do with them or

6    he's just an unpaid spokesperson who happens to like a

7    company that's not really related to them wasn't true.  And

8    shortly thereafter, we got a new story from the debtor is

9    not really involved to, it turns out, because of these

10   filings all senior leadership has abandoned the company.  No

11   one can be found anymore.  Because, presumably, the debtor

12   was so intertwined that whoever they are is in hiding.

13        I will note I never got a name of who are these

14   people who disappeared.  I don't know who they are.  I don't

15   have a name of an independent manager.  I don't know if

16   they're the same person.  What I know is now, all of a

17   sudden, the debtor was so involved.

18        And so this is what we were told on April 11th at

19   the third meet and confer, that there had been resignations

20   in light of the SEC complaint.

21        We asked them specifically please prioritize the

22   trustee's request for bank accounts, assets, and transfers,

23   so we can understand what's going on with this entity which

24   clearly is deeply involved with the debtor and that the SEC

25   and the U.S. Attorney's office allege tens of millions of

1    dollars were going through to fund the debtor's personal

2    lavish lifestyle.

3           On April 25th, I got a message that said in an

4    email that Ms. Fornos was optimistic that they would have an

5    independent director in place next week.  So that's one week

6    from April 25th.

7           On April 29th, there was a call in which they said

8    we think the independent director will be in place in the

9    next couple days.  No later than May 3rd we'll get back to

10   you.

11          May 8th, we haven't heard anything.  We have to

12   call again.  May 9th, we get -- receive a message from

13   Ms. Fornos that says, "FG Club Operations continues to

14   actively work to engage an independent director.  Although

15   that effort is far along, it's not yet concluded.  Once

16   concluded, addressing the trustee's requests is a top

17   priority."

18          Now, Your Honor, that's the last communication we

19   got until we got their objections when, lo and behold, the

20   independent manager was appointed on the very day they had

21   to file an objection to our motion to compel.  And now they

22   come to you and say we're totally reasonable.  We just need

23   two more months, accounting for eight months total, to

24   respond to a subpoena.  And we'll make a rolling production.

25   Your Honor, they could have started making a rolling

1    production to us in January.

2            These subpoena (sic) goes to the heart of what's

3    going on here.  This is clearly a Kwok-controlled entity.

4    It only does business with other entities this Court has

5    found to be controlled.

6            I told Ms. Fornos that this Court has already made

7    findings about this.  I've pointed to it.  To turn up now

8    and just say we just need two more months for some unnamed

9    independent manager to "get up to speed" is not reasonable.

10           We have spent six months chasing them for what

11   should have never been in dispute.  There is no plausible

12   basis to argue that G Club was not alleged -- related to the

13   debtor, to make up that they were so offended about the

14   suggestion that they wouldn't even participate, and then

15   later to -- what has now been three months of we'll appoint

16   an independent manager in a day or two of just waiting on

17   that.

18           So, look, I know that Ms. Fornos also filed an

19   objection to the scope of the subpoena.  I'm more than happy

20   to address that if we're going to move ahead with that

21   hearing when we do.  But the notion that there should be any

22   further delay I have to strongly object to, Your Honor.

23           G Club has wasted substantial trustee time and

24   resources hounding them for this.  And the fact that they

25   are so deeply involved in what is an alleged fraud that both

1  the SEC and the U.S. Attorney are involved in, that they

2  have to -- that their management is either here or there or

3  who knows about it is not a basis to deny the trustee the

4  documents.  It's, in fact, a basis to expedite this.

5          And I -- quite frankly, I'd ask that they complete

6  their production by the end of the week.  We have chased

7  this forever, Your Honor.

8          THE COURT:  When you say conclude the production,

9  though, there hasn't been any production really, correct?

10         MR. LUFT:  Correct, Your Honor.

11         THE COURT:  I just want to be --

12         MR. LUFT:  I mean start --

13         THE COURT:  I just want to be clear about that.

14         MR. LUFT:  Absolutely.  I have not gotten a single

15  document from G Club.  So you're right to point that out.

16  I'd like it started and completed by the end of the week.  I

17  think the trustee owes it.

18         And I'll note to the extent we're going to hear

19  that's unreasonable, how could we get things done, the

20  manager was just appointed on June 1st, they managed to get

21  two filings -- the lawyers were able to work to get two

22  objections on file on June 1st.  They could have spent some

23  of that time getting us the documents we were owed.

24         Nothing stopped them from getting those documents

25  during the time it was an obligation.  The company didn't go

1    out of business.  The idea that no one was there, it's just

2    a black box.  We're just told no one could do anything.

3          They had a valid subpoena.  They didn't come to

4    the Court and seek leave and ask for relief because of what

5    was going on.  All they did was string us along.  Two more

6    days, two more days, call me in a week.  Oh, I'll get back

7    to you.

8          It's us who continually had to make contact.  It's

9    us who continually chased.  Your Honor knows that there's a

10   lot going on in this case, that we are in desperate need of

11   actual documents, because the debtor refuses to produce

12   almost anything to us.  When we have to spend six months

13   just to start getting the documents, it is a true damage to

14   the creditors and the estate.

15         Thank you, Your Honor.

16         THE COURT:  Thank you.

17         Attorney Fornos, would you like to respond?

18         MS. FORNOS:  Yes, Your Honor.  I most certainly

19   would like to respond.  I'd like the record to reflect that

20   this is the first time that G Club Operations is entering an

21   appearance in this case.  It has never appeared before.  It

22   has not had --

23         THE COURT:  And that's completely fair.  But do

24   you disagree with anything that Attorney Luft said about

25   your prior representations about production of documents and

1    when the independent director would be appointed and that it

2    would be the independent director's -- well, he said a lot

3    of things, actually.

4            MS. FORNOS:  Yes.  I'm happy to address them, Your

5    Honor.  I --

6            THE COURT:  Well, did anything he say -- was

7    anything he said inaccurate?

8            MS. FORNOS:  Other than the dates, I think the

9    characterizations of everything he said is inaccurate.

10   First of all, the issue that we have is that the trustee --

11   first, he's not the SEC.  He's not the Department of

12   Justice.  I do strongly recommend that the trustee carefully

13   review those papers,  because the way he's characterizing

14   what G Club Operations is and its allegations of its

15   relationships to the debtor are incorrect.

16           What I specifically told the trustee is that the

17   debtor was the ambassador -- the brand ambassador to G Club

18   Operations.  And G Club Operations is a membership

19   organization.  It operates -- sells memberships to the -- to

20   individuals who want to participate and get benefits in the

21   luxury lifestyle business.  His characterization of G Clubs

22   are improper, particularly when this entity has never

23   appeared before Your Honor and had an opportunity to defend

24   itself.

25           Now, with respect to the dates --

1          THE COURT:  Well, that's a different issue.  Okay?

2     Hold -- just step back for a second.  I understand what

3     you're saying.  But G Club was served with a subpoena, and

4     they didn't respond, and they didn't move to quash, and they

5     didn't move for a protective order.  So why do they get to

6     do that now?

7          MS. FORNOS:  Here's why.  When we first received

8     the broad, overarching subpoena --

9          THE COURT:  That's not the issue.  That's not the

10    question.

11         MS. FORNOS:  Yes.  Understood, Your Honor.  But --

12         THE COURT:  The question is -- my question was a

13    very direct question.  No one -- they were served with a

14    subpoena.  They didn't respond.  They didn't move to quash.

15    They didn't move for a protective order.  So why should you

16    be able to do that now?  There were people -- you've

17    admitted that there were people there --

18         MS. FORNOS:  Yes.

19         THE COURT:  -- right?  That it's an operation?

20         MS. FORNOS:  Yes.

21         THE COURT:  So why should you now get to respond

22    because an independent director has been appointed as of

23    June 1st when there were already people that were in control

24    of that entity that chose not to respond to the subpoena?

25         MS. FORNOS:  No.  Your Honor, we did respond to

1   the subpoena, and we filed objections.  The hope was --

2              THE COURT:  Only you did and just now.

3              MS. FORNOS:  No.  I'm sorry, Your Honor.  We

4   served objections and -- to the Rule 2004 to the trustee.

5   We weren't just silent.  We responded and objected to the

6   broad requests.

7              THE COURT:  Yeah.  But you didn't file a motion

8   for a protective order under the Federal Rules of Civil

9   Procedure.

10             MS. FORNOS:  No, Your Honor.

11             THE COURT:  Okay.

12             MS. FORNOS:  And we -- and --

13             THE COURT:  See, that's a problem.

14             MS. FORNOS:  Understood, Your Honor.  And we would

15   beg the Court's indulgence in this, because we were in the

16   process of doing that when the indictments were filed and

17   the SEC was -- complaint was filed.  And that --

18             THE COURT:  The subpoena was issued in December.

19   Mr. Kwok wasn't indicted until March 15th.

20             MS. FORNOS:  Yes, Your Honor.

21             THE COURT:  And the only reason I know that is

22   because we were about to start a trial that morning.  Okay?

23   And I was told by people -- everyone in the courtroom when I

24   thought we were going to call the first witness that that --

25   I believe that was the date.  I could be wrong, but I think

1   it was March 15th.

2          MS. FORNOS:  Your Honor is correct.

3          THE COURT:  We were scheduled for trial, right?

4   So all I'm saying to you is I understand your argument --

5          MS. FORNOS:  Uh-huh.

6          THE COURT:  -- but there hasn't been compliance

7   with the Federal Rules of Civil Procedure.  And your

8   client -- and you may not have been involved or may have

9   been involved, I don't know -- you know, takes that risk.

10          MS. FORNOS:  Understood, Your Honor.  And we hear

11   the Court.  But we did try to negotiate the scope with the

12   trustee.  The trustee was adamant and unwavering in its

13   position that G Club Operations is one and the same as the

14   debtor and, therefore, they're entitled to everything,

15   basically akin to a forensic analysis of this entity.

16   And --

17          THE COURT:  Well, a Rule 2004 examination, you

18   know, you could argue that it is that.  I'm sure you know

19   what the case law says.  It's akin to a fishing expedition.

20   It's not a deposition.  It's not a notice of deposition.

21   It's a Rule 2004 examination.

22          MS. FORNOS:  Your Honor, then -- Your Honor, we do

23   respectfully submit that there are boundaries to it.

24          THE COURT:  I'm not saying there aren't.  I'm just

25   saying when you say -- I agree that there can be boundaries

1    on a Rule 2004 examination.  I'm not suggesting that there

2    can never be a boundary.  But it's not the same argument

3    with regard to a Rule 2004 examination as it is with regard

4    to a notice of deposition.

5            This 2004 examination process is part of the

6    Federal Rules of Bankruptcy Procedure that are there to

7    allow parties to investigate.  This trustee was appointed

8    specifically to investigate the affairs of the debtor.  You

9    can argue and you might be right about the scope.  But you

10   have to do that under the Federal Rules of Civil Procedure

11   and timely under the Federal Rules of Civil Procedure.  And

12   that didn't happen in this case.

13           MS. FORNOS:  And, Your Honor, we are before the

14   Court now asking for that adjournment.  And we do have a

15   situation --

16           THE COURT:  Seven months after the subpoena was

17   served.

18           MS. FORNOS:  Understood, Your Honor.  But we do

19   now have a situation where the independent manager is not

20   able -- he just got appointed on June 1st.

21           THE COURT:  Well, he -- maybe they shouldn't have

22   taken on the job.

23           MS. FORNOS:  Your Honor, respectfully, this is not

24   your run-of-the-mill case.  This is a unique situation.  And

25   we -- the rules are simple.  There are limits to how much

1   they can get.  They want everything without any boundaries.

2            THE COURT:  I'm not -- we can address that.

3            MS. FORNOS:  It is costly.  It's expensive.

4            THE COURT:  I'm not worried about that, counsel.

5   I really am not.  You know, I will listen to your issues

6   about boundaries.  That's not the problem.  The problem is

7   you're now seeking a motion to extend time to compel

8   compliance with a subpoena that your clients are already in

9   violation of.

10            MS. FORNOS:  Your Honor, understood.  But we did

11   respond to the trustee.  The trustee until now has not filed

12   a motion to compel.  This is what we're addressing now.  And

13   the motion to compel that is presently before the Court is

14   one that we simply ask that the Court adjourn for 60 days to

15   enable someone who needs to get up to speed to respond to

16   the trustee.

17            It is fairness.  It is absolutely not feasible to

18   comply when someone just took this position June 1st.  And

19   it's an issue, at the end of the day, of practicality.  We

20   would like the trustee to be more reasonable and certainly

21   pare down their request.

22            THE COURT:  Well --

23            MS. FORNOS:  And we would like to work with them

24   to try to respond.

25            THE COURT:  What documents do you have right now

1    that you haven't produced?  What documents do you have right

2    now?

3              MS. FORNOS:  We have corporate formation

4    documents.  We have email --

5              THE COURT:  Okay.  And what's unreasonable about

6    that request?

7              MS. FORNOS:  Your Honor, I have -- Your Honor --

8              THE COURT:  No, no.  I'm asking --

9              MS. FORNOS:  Yeah.

10             THE COURT:  -- a question.

11             MS. FORNOS:  As counsel --

12             THE COURT:  This is a 2004 examination of an

13   entity that I'm not sure if I know exactly the proper

14   corporate name, so --

15             MS. FORNOS:  Sure.

16             THE COURT:  But of the G Club entity --

17             MS. FORNOS:  Operations.

18             THE COURT:  -- that -- Operations that they're

19   asking -- the trustee, who is appointed to investigate the

20   affairs of the debtor --

21             MS. FORNOS:  Yeah.

22             THE COURT:  -- is asking to see the corporate

23   records of this entity, right?  And you just told me you

24   have corporate formation documents.  So what's unreasonable?

25   Because that's what I'd have to find, right?  Wouldn't I

1       have to find under the rules that --

2                    MS. FORNOS:  Yes.

3                    THE COURT:  -- the request is reasonable or

4       unreasonable?

5                    MS. FORNOS:  Sure.  You --

6                    THE COURT:  Whether it's scope or in time.

7                    MS. FORNOS:  Yes.

8                    THE COURT:  So what's unreasonable about asking

9       about the corporate formation -- for the corporate formation

10      documents?

11                   MS. FORNOS:  Well, we can certainly turn over

12      corporate formation documents, but that's not what he's

13      asking.

14                   THE COURT:  But why haven't you.  Well, yes,

15      you -- you just said he was asking for it.

16                   MS. FORNOS:  No.  He's asking for all financial

17      records, and I do not have all financial records.  And the

18      independent manager --

19                   THE COURT:  Okay.

20                   MS. FORNOS:  The independent manager is the person

21      who has to authorize me.  Your Honor, I as counsel cannot

22      act unless I have a client who authorizes me to act on their

23      behalf.

24                   THE COURT:  Yeah.  But you have to advise your

25      client --

1          MS. FORNOS:  Yes.

2          THE COURT:  -- how your client should act to be in

3     compliance with the law, right?

4          MS. FORNOS:  And they're --

5          THE COURT:  And they might not agree with you.

6          MS. FORNOS:  And --

7          THE COURT:  But you still have to advise them.

8          MS. FORNOS:  Exactly, Your Honor.  And that is why

9     the time is needed.  June 1st, there's a new person that is

10    in charge.

11         And I have represented to the trustee that the

12    independent manager knows this is a priority.  I have

13    personally made that clear.  I do have to advise our client.

14    But at the end of the day, I can only act once our client

15    gives me the authority.

16         Now, here the independent manager specifically

17    said I need to understand what records there are.  And, yes,

18    we will work towards this production.

19         THE COURT:  Who's -- I don't need to know the

20    person's name.  I'm not -- but is the -- the independent

21    manager, I assume, has -- is a businessperson?

22         MS. FORNOS:  It is.

23         THE COURT:  Okay.  So I would think that that

24    businessperson has a pretty good idea of what kinds of books

25    and records and information should be included in a

1   corporate entity, right?

2           MS. FORNOS:  Understood.

3           THE COURT:  Okay.

4           MS. FORNOS:  And they need the time -- this is --

5   and, also, I should make this clear.  This is an entity in

6   Puerto Rico, Your Honor.  Its office is in Puerto Rico.

7   It's --

8           THE COURT:  Okay.

9           MS. FORNOS:  Understood.  I just want to make sure

10  that the Court understands --

11          THE COURT:  That doesn't matter, though, with a

12  subpoena.

13          MS. FORNOS:  Yes, Your Honor.  That wasn't my

14  issue.  My concern is one of logistics and practicality.  We

15  need time for the independent manager to get -- to assess

16  what's available so that we can respond.  And that's all

17  we're asking the Court.

18          THE COURT:  Are the books and records in Puerto

19  Rico?

20          MS. FORNOS:  Yes.  Everything is in Puerto Rico.

21          THE COURT:  So he's in physical possession and

22  control of the books and records?

23          MS. FORNOS:  Not -- shortly, yes.  He has been

24  in -- he has been appointed to make sure that he can review

25  this.

1          THE COURT:  Right.  So as of today -- today is

2     June 6th.

3          MS. FORNOS:  Uh-huh.

4          THE COURT:  So as of today, as we sit here right

5     now, this independent director -- I don't know if it's a he

6     or a she.  I'm sorry.  I don't know.  I'm just going to say

7     this independent director, that person --

8          MS. FORNOS:  Yes.

9          THE COURT:  -- is in possession and control of the

10    books and records of the G Club entity.  And I apologize

11    again.  I don't know specifically.  You just said it.

12    Operations?  Is that --

13         MS. FORNOS:  Yes.

14         THE COURT:  -- correct?

15         MS. FORNOS:  Yes, Your Honor.  It's G Clubs

16    Operations.

17         THE COURT:  Oh, here it is.  G Club Operations,

18    LLC.  Okay?  So he's in possession and control of those

19    documents?

20         MS. FORNOS:  He is in the process of becoming in

21    possession and control, right?  He needs to review this.

22    And I -- we are --

23         THE COURT:  Well, I don't -- I --

24         MS. FORNOS:  -- assisting with this.

25         THE COURT:  That's not what I'm asking.  I'm

1    saying if I walked over to the director, right, if I were

2    you and I went to Puerto Rico and I walked into the director

3    and I'd say where are the records of this company, does he

4    know where they are?

5            MS. FORNOS:  I can't answer for him --

6            THE COURT:  Okay.

7            MS. FORNOS:  -- right now, Your Honor.

8            THE COURT:  Does he have a key to a safe or a

9    cabinet where all the records are?

10           MS. FORNOS:  Your Honor, I don't -- I cannot

11   answer --

12           THE COURT:  Okay.  Well, I think --

13           MS. FORNOS:  -- for the independent manager.

14           THE COURT:  I think that's the point, right?

15   You're going to have to answer those questions.

16           MS. FORNOS:  And we need the time.  Exactly.  And

17   we need those -- that time so that --

18           THE COURT:  Well, except the problem that you have

19   on that --

20           MS. FORNOS:  Uh-huh.

21           THE COURT:  -- is, according to Mr. Luft anyway,

22   which I'll give you the opportunity to refute, you've been

23   saying for some months now that you've been having

24   conversations about these documents.  And now you want an

25   additional 60 days to just respond to the motion.

1    You're not even saying you're going to produce --

2    well, you did say, and I cautioned you, because I had a

3    situation in this case already about somebody telling me

4    they were going to make a rolling production.

5    MS. FORNOS:  Uh-huh.

6    THE COURT:  And because of that representation of

7    counsel --

8    MS. FORNOS:  Yeah.

9    THE COURT:  -- I -- the Court acted -- ordered

10   something to happen based upon that --

11   MS. FORNOS:  Sure.

12   THE COURT:  -- representation which was not true

13   and did not happen.  Okay?

14   So and, aside from all that, you and trustee's

15   counsel as well have obligations as officers of the Court to

16   address discovery disputes and not involve the Court unless

17   it's absolutely necessary.  Because those obligations exist

18   independent of the Court under the Federal Rules of Civil

19   Procedure.

20   So, you know, if you're telling me you're going to

21   make a rolling production of documents, I want to know when

22   and what documents.

23   MS. FORNOS:  Your Honor, may I clarify one issue?

24   We were asking for a 60-day adjournment of the hearing.  The

25   hope is that this hearing would be moot, because

1   hopefully --

2           THE COURT:  But what if it's not?  I understand

3   the hope, and I want the parties to work together.  I'm not

4   suggesting that you don't -- that that couldn't happen.  But

5   what if it's not?  What am I going to do 60 days from now?

6           MS. FORNOS:  But the idea is to have the hearing

7   in 60 days.  And if Mr. -- if the trustee stands in front of

8   you in 60 days and says they've done nothing, Your Honor,

9   then I think that's a different situation.  But that's not

10  what I'm envisioning in 60 days.

11          And, again, it's adjourning the hearing for 60

12  days so that we can have the opportunity to hopefully moot

13  all of this and not waste the Court's time.

14          THE COURT:  I understand what you're saying.  I

15  understand.  There's just been -- unfortunately, there have

16  been -- the Court has had to be involved in too many --

17          MS. FORNOS:  Uh-huh.

18          THE COURT:  -- discovery disputes in this case.

19  Okay?  And here's another one where there are

20  representations being made that the -- well, I know -- I can

21  see from the docket and from the information filed that the

22  subpoena was served in December of 2022.  It's June of 2023.

23  That's not -- that's a problem.

24          MS. FORNOS:  And,  Your Honor, if we perhaps can

25  ask the Court to consider that in this particular case this

1    entity after losing management following what most people

2    wouldn't want to deal with -- these are directors.  These

3    are officers.  These are general counsel of the company.

4            This company has undertaken an independent

5    manager.  And for the record, this is not some relative of

6    anybody.  This is an independent company that specializes in

7    coming in, assessing, taking stock of where the company is.

8    That's what's happened.  And that is an effort to ensure

9    compliance.

10           We cannot make a better representation than the

11   fact that an independent company has been hired to come in

12   and do this.  And that's a good faith effort to ensure that

13   documents are preserved and obligations are met.  And that's

14   why we're asking the Court for the adjournment.

15           THE COURT:  I understand.

16           MS. FORNOS:  It's for the independent manager.

17           THE COURT:  I understand.  I'm just somewhat

18   concerned about the series of unfortunate events, if we want

19   to call that -- call it that, that's led up to this, which

20   is that, at least according to Attorney Luft --

21           MS. FORNOS:  Uh-huh.

22           THE COURT:  -- okay, there was a meet and confer

23   on February 9th.  Then there was a second meet and confer on

24   March 2nd.  And at that meet and confer, he said that you

25   said that G Club was offended that it would be -- somehow

1    have connection to the debtor.  And then on the third meet

2    and confer on April 11, which is more than two months --

3    almost two months ago, everyone resigned.

4           And then there's going to be this independent

5    director shortly thereafter, but it doesn't happen until

6    June 1.  Those are factors that the Court -- I mean, facts,

7    unless disputed, the Court has to take into consideration.

8           MS. FORNOS:  Well, Your Honor, if the Court may

9    indulge me, because the characterizations is what's

10   troublesome here.  The issue is that we did try to negotiate

11   to try to -- I explained to the trustee you're asking for

12   everything.  And his position was very simple.  I'm not

13   going to back down from everything that I'm asking, because

14   I'm entitled to everything that I'm asking, because there's

15   findings that apparently G Club, which has never entered an

16   appearance, is somehow, findings, part of the debtor's

17   network.

18          THE COURT:  No one has to enter an appearance for

19   a Court to make findings about another party.

20          MS. FORNOS:  Your Honor, all we're stating is that

21   I wanted the time to understand how it is that the trustee

22   can take the position that he's entitled to everything down

23   to a forensic examination of our entity and that there's

24   allegedly findings.  All we have asked is for an

25   opportunity --

1          THE COURT:  Well, there are --

2          MS. FORNOS:  -- to narrow --

3          THE COURT:  There are -- they're not -- allegedly

4     are findings.  There are findings.  This Court made

5     findings --

6          MS. FORNOS:  Your Honor, I --

7          THE COURT:  -- in connection with a preliminary

8     injunction.  You can disagree with them.  And I believe

9     that's on appeal and all those other things.  But that's

10    what I did.

11         MS. FORNOS:  Your Honor, respectfully, I did

12    review that ruling, and there is only one reference, one

13    reference to G Club Operations.  I realize that there were a

14    lot of other references to a lot of G entities, and I

15    realize that the trustee's position is that anything that's

16    a G entity is apparently a Kwok-affiliated entity.

17         We don't need to take up that fight right now.

18    For the record, we dispute the allegations of the trustee.

19         THE COURT:  I'm sure you do.

20         MS. FORNOS:  And we -- but the issue that's before

21    the Court today is a request from an independent manager

22    through counsel to please allow the independent manager to

23    have the time to organize, understand so that they can

24    comply and hopefully moot further appearances before the

25    Court.  That's the representation that I'm making to the

1    Court.

2            THE COURT:  Okay.  Thank you.

3            Attorney Luft?

4            MR. LUFT:  Yes, Your Honor.  I'll try to be short

5    about this, but I did want to highlight a couple things.  I

6    think your inquiry about what documents they have and don't

7    have is quite telling.

8            Not only were they -- was G Club Operations served

9    and the order entered on December 2nd, but Ms. Fornos has

10   been their attorney since December 21st at least.  That's at

11   least when we knew.  Yet seemingly no one seems to know what

12   documents they have.  Now, even if you put out to when the

13   debtor was indicted on March 15th, that would have been

14   three months of not examining anything.

15           Now, what I told her is what it is.  Your Honor

16   made findings about G Club.  In fact, Your Honor -- it's

17   referenced in paragraph 2 of the order in which it is stated

18   as part -- being part of the G series.  So while the name G

19   Club is only referenced once, G series is referenced

20   multiple times.  I don't think that changes anything.

21           And certainly the fact that I didn't apprise the

22   other side of a court order is not a basis to say that they

23   won't comply.  We have six months -- they had months when

24   they could have -- management was there and could have

25   complied.  Then we've had since at least April until June

1    1st of repeated references to the fact that an independent

2    manager is about to be hired.

3            She says we did not move prior.  That was because

4    we were trying to work it out, each time asking, requesting,

5    being told we're just a day away, we're going to comply.

6            If this is the professional organization that she

7    asserts, then they should be very up to speed on how to deal

8    with these things.  The independent manager himself does not

9    need to personally review any record.  He's obviously had

10   counsel on retainer for six months working this case.

11           They should be prepared to move ahead and proceed.

12   I don't understand what is the issue that a manager has to

13   get up to speed on other than being told we have a subpoena,

14   we are out of compliance, we haven't complied for a long

15   time, we need to comply.

16           Ms. Fornos wants to make arguments as to what the

17   scope of the subpoena should be.  I'm more than happy to

18   address it.  But we certainly do not need to wait two months

19   for the independent manager to presumably take stock of what

20   it means to have received the subpoena.

21           Thank you, Your Honor.

22           MS. FORNOS:  Your Honor, just briefly.  The

23   trustee acts like all they're asking for are corporate

24   formation documents.  I want to be clear that what they're

25   asking for is everything: membership, every money, every

1    dollar, every dime that came from members, all bank

2    accounts, all financial transactions, tax, audits, et

3    cetera.  It's limitless.

4              THE COURT:  When was G Club Operations, LLC

5    formed?

6              MS. FORNOS:  It was formed in October of 2020,

7    Your Honor.

8              THE COURT:  Okay.  So we're talking about

9    documents that are less than three years old, right?

10             MS. FORNOS:  Your Honor, that would be correct.

11   But what they're asking for is a lot more than just

12   corporate --

13             THE COURT:  That's not my question.  You're

14   talking about -- you say they want everything.

15             MS. FORNOS:  Yeah.

16             THE COURT:  That's one thing.  But you said

17   timing.  Well, the corporation was filed less than three

18   years ago.  That's not unreasonable, not from this Court's

19   perspective.

20             Whether or not the scope -- the -- what they're

21   asking for, that may be something that I can review.  But if

22   the corporation was filed in October of 2020, and the

23   trustee is conducting his investigation as he is required to

24   do under the Bankruptcy Code, then, you know, I think that

25   your client has got to make this more of a priority.  This

1    is --

2              MS. FORNOS:  Understood.

3              THE COURT:  This is not a situation -- I

4    understand your arguments, but this is a situation where the

5    trustee's efforts to investigate in this Chapter 11 case

6    have been -- I mean, we've said it -- I've said it before --

7    have been met with resistance at almost, if not every, step

8    in the process.

9              And now I hear that with regard to a subpoena that

10   was served on an entity that was created in October of 2020

11   and there were people there who got the subpoena and didn't

12   do anything, even though I guess you represented them at the

13   time, that's what the representation is, they want 60 days

14   to figure out what they need to do.  That seems to me to be

15   not reasonable.

16             MS. FORNOS:  Your Honor, I have to reiterate the

17   issue is the independent manager who has just been onboarded

18   on June 1st.

19             THE COURT:  I understand all that.  I understand.

20   Hey, he takes it -- what he finds --

21             MS. FORNOS:  He does.

22             THE COURT:  -- when he came there, right?

23             MS. FORNOS:  Yes, Your Honor.

24             THE COURT:  So he or she or -- you know, the

25   independent director -- I understand everything you're

1    saying.  However, what else does the independent director

2    have to worry about right now?

3              MS. FORNOS:  He needs to understand where these

4    documents are and operations.

5              THE COURT:  Well, you just told me --

6              MS. FORNOS:  But I --

7              THE COURT:  -- everything is in Puerto Rico, and

8    he's in Puerto Rico.

9              MS. FORNOS:  Yeah.  But --

10             THE COURT:  Or he or -- the independent director.

11   I don't know who the person is.  I'm sorry.

12             MS. FORNOS:  Your Honor --

13             THE COURT:  But that -- so what's he --

14             MS. FORNOS:  -- this company to understand --

15             THE COURT:  I understand that.  What's the company

16   doing?  Isn't it -- I have to --

17             MS. FORNOS:  Your Honor --

18             THE COURT:  I understand that the company is a

19   company and maybe it has some business operations.  I don't

20   know what its business -- I mean, I know what has been put

21   forth before the Court and, apparently, what's been pled

22   by -- in case -- in the indictment and in the matter from

23   the Securities and Exchange Commission.

24             MS. FORNOS:  Uh-huh.

25             THE COURT:  But what's before this Court is why

1   haven't they produced the documents.

2           MS. FORNOS:  And what we're representing to this

3   Court is that the hope is if we have this adjourned for 60

4   days that will be time --

5           THE COURT:  Yeah, but I don't --

6           MS. FORNOS:  -- sufficient time --

7           THE COURT:  I can't live -- we're not living on

8   hope, right?

9           MS. FORNOS:  Yes, Your Honor.

10          THE COURT:  The Federal Rules of Civil Procedure,

11  I don't think I've ever seen the word "hope" in there.

12          MS. FORNOS:  Your Honor --

13          THE COURT:  I think there's requirements, right?

14          MS. FORNOS:  Yes, Your Honor.  And part of that

15  requirement is making sure they comply.  And part of that

16  compliance is having an independent manager who is onboarded

17  and can do this and meet the deadlines and meet the

18  requirements that need to be satisfied.  And that is why we

19  are requesting the time.

20          THE COURT:  Okay.

21          MS. FORNOS:  Thank you, Your Honor.

22          THE COURT:  Thank you.

23          All right.  Anybody -- would anyone else wish to

24  be heard on the motion to extend time filed on behalf of G

25  Club Operations, LLC?  Okay.

1          I'm going to take the matter under advisement, and

2     I will rule accordingly.

3          MS. WERNICK:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MS. FORNOS:  Thank you, Your Honor.

6          THE COURT:  Thank you.

7          MS. FORNOS:  We appreciate the Court's time.

8          THE COURT:  Thank you.

9          All right.  Then the other matters on the calendar

10    today relate to 2004 examination issues and a motion to

11    seal.  So how are we proceeding?

12         MR. LUFT:  Your Honor?

13         THE COURT:  Yes?

14         MR. LUFT:  Can I?  We have the other -- there

15    are -- on the motion to compel, there are a number of

16    parties that just didn't respond.

17         THE COURT:  Oh, yes.  That's fair.  But go ahead.

18    Sorry.

19         MR. LUFT:  So I believe that's what's left in

20    terms of the motion to compel.  So I'll start with the happy

21    news.  One of the entities, US Himalaya Capital, has reached

22    out to us.  They have told us they will comply.  So at this

23    point, Your Honor, provided that they stay true to their

24    word and that we continue to work forward with them, I would

25    ask that we hold off on the contempt relief that we sought

1    as to them, because they are seeking to comply.

2                Otherwise, if Your Honor will indulge me, I would

3    like to address the other parties who have chosen not to

4    appear or say anything in our motion, if that's okay with

5    the Court.

6                THE COURT:  Just give me one second to catch up

7    with you.

8                MR. LUFT:  Of course, Your Honor.

9                THE COURT:  I'm trying to find your motion.  Are

10   you talking about 805, you mean the omnibus -- 1805, the

11   omnibus motion to compel compliance?

12               MR. LUFT:  Yes.

13               THE COURT:  Oh.

14               MR. LUFT:  1805.  Yes, Your Honor.

15               THE COURT:  Okay.  All right.  Go right ahead

16   then, please.

17               MR. LUFT:  May I approach?

18               THE COURT:  Yes, please.

19               MR. LUFT:  Thank you, Your Honor.  Your Honor, I

20   will take it in two batches as to the remaining entities.

21   The first batch is Saraca and GTV Media Group.

22               THE COURT:  They haven't complied, right?

23               MR. LUFT:  They have not complied, Your Honor.

24   They have a somewhat unique circumstance in that they had a

25   counsel, a man named Jeremy Tempkin at the Morvillo firm who

1    represented them for a few months.  They negotiated with us.

2    They did not produce any documents, but they said that they

3    were willing to.  They said they had a database which may

4    produce documents based on what they had to produce to the

5    SEC.

6         We told them that we'd be happy to take a look at

7    it.  But, notably, one of the people involved with it was

8    Aaron Mitchell, who Your Honor has probably heard that name

9    before.  He was a director of GTV.  He was not included.

10   And we specifically told Mr. Tempkin at the time that we

11   were happy to consider the database, but it certainly would

12   not be sufficient, to our view, if it didn't even include

13   the emails and the documents of one of the directors,

14   particularly Mr. Mitchell.

15        We hit the point where we told Mr. Tempkin, look,

16   we either need to reach a resolution where you're going to

17   produce or we need to move ahead.  So Mr. Tempkin informed

18   us on late November, November 29th, abruptly right when we

19   were saying we were going to -- either we have to produce or

20   we have to move ahead that his firm was withdrawing, and

21   they were not representing either of these entities prior to

22   a single -- either one of them producing a single document.

23        Mr. Tempkin would not --

24        THE COURT:  So this is GTV and Saraca?

25        MR. LUFT:  And Saraca.

1      THE COURT:  Okay.  Go ahead.

2      MR. LUFT:  Yes, Your Honor.  And for some context,

3  GTV was the media entity that ran Mr. Guo's rights.  Saraca

4  is the parent to GTV.  It also paid at least $2 million

5  towards the purchase of Mr. Kwok's home.  Saraca owns the

6  trademark to Mr. Kwok's name and has been -- is one of the

7  entities that Your Honor found in the preliminary injunction

8  hearing, along with GTV Media, to be ones that Mr. Kwok

9  controls.

10     At that -- I asked Mr. Tempkin on what basis he

11  was withdrawing or whether he had been fired.  He would not

12  give me any details.  He simply wrote to me on December 14,

13  2022.  This is Exhibit E1 to 1805: "I suggest you direct

14  further inquiries regarding GTV and Saraca to Aaron

15  Mitchell."

16     Your Honor will recall that Mr. Mitchell is

17  Mr. Kwok's consigliere and house attorney, whatever is the

18  role he has at that moment.  We did.  We reached out to

19  Mr. Mitchell.  Mr. Mitchell has proceeded to respond to us

20  to say I don't know why Mr. Tempkin told you that.  I have

21  no -- I'm not representing either entity.  Nor can I tell

22  you who -- first he -- sorry.  First he told us he would

23  tell us who is representing them as soon as he knew.  And

24  now he says he doesn't.

25     And since December, we have been left with no one.

1    No one to speak to at any -- at either entity.  No one

2    saying anything.

3          So we went from what I would say is a motion to

4    compel type situation where we at least have an adversary

5    who we're dealing with, who we're trying to get information

6    from, to once again when it's time to produce documents,

7    poof.  At the Kwok entities, everyone disappears.  There's

8    no one to speak to.

9          Now, here, Mr. Mitchell is found.  He continues to

10   be involved in this case for Mr. Kwok.  And while he says

11   that he is not personally involved, Mr. Tempkin specifically

12   said that it would be Mr. Mitchell to speak to, which

13   strongly suggests that it's Mr. Mitchell who is involved in

14   the Morvillo firm dropping out.  And more so, Your Honor,

15   Mr. Mitchell was also a director of GTV.  But he is not

16   responding.

17         We need someone to deal with.  We keep running up

18   against the wall, as we'll get to in a minute, of entities

19   who clearly were involved with regard to the debtor's

20   estate.  And then when time comes, there's no one to speak

21   to.  We've had this -- we've talked about this with Golden

22   Spring and Lamp Capital previously on motions to compel.

23   These entities are doing all these things, and then when the

24   time comes, all of a sudden, no one responds anymore, and

25   they just take a default.  And at the same time, we're told

1    that each of these entities are the ones that actually have

2    the documents.

3           So with regard to those two entities, Your Honor,

4    aside from the contempt finding for noncompliance, I'm here

5    to ask for a little bit of extraordinary relief.

6    Mr. Mitchell's involved in this case.  Mr. Tempkin clearly

7    pointed to him as the person who would know about it.  He

8    was previously a director if not he's currently a director.

9    I don't know if anyone is a director of any of these

10   entities anymore at GTV.

11          Let him come in.  Let someone come and speak to

12   this Court and say here's who runs these entities.  Here's

13   where their documents are.  Because right now, I can't get

14   information if there's no one to speak to.  And it's quite

15   convenient that the people seem to evaporate every time it's

16   time to produce the documents.

17          So that's where we stand with GTV and Saraca,

18   entities that had significant involvement with the debtor

19   and his estate where actual funds flowed through.  Because

20   we don't have any documents from them, I can't tell you if

21   they still have millions of dollars in their accounts or

22   not.

23          But I do know that we at least have one person at

24   those entities who seems to be able to know something about

25   the information.  He continues to represent the debtor and

1   Ms. Guo, Mei Guo, to this day.  I think he should have to

2   come forward to this Court and explain to the Court where --

3   who's in charge, where these documents are so that we have a

4   chance to get some information.

5          With regard to the remaining entities, Your Honor,

6   there are two other G Club -- there's G Club US Operations

7   LLC, G Club US Operations Inc.  My understanding is they are

8   not represented by Pillsbury.  They have just defaulted on

9   their subpoenas.  No one has responded to those.

10          There is G Fashion and G News who obviously have

11   been involved and seem every -- the debtor was happy with

12   taking money from their operations until it was time for a

13   subpoena.  And, once again, no response.  They just seem

14   willing to take a default.  They should be in contempt.

15          New York MOS Himalaya LLC.  No response.  Crane

16   Advisory Group, no response.  Mei Weng Trading, LLC, no

17   response.  And, again, this is no response both to the

18   subpoenas and then a motion to compel which was also served

19   upon them which we don't have any response to.

20          So we are in a tough place, as I said, where -- in

21   the case of Saraca and GTV where Mr. Mitchell seems to be

22   involved and know something.  I'd ask that as an officer of

23   the Court who's involved in this case he should come forward

24   and help provide that information.

25          With regard to them and the other entities, they

1    should be held in contempt.  Look, what I'd love to do is

2    wave a magic wand and say, great, now there's someone who we

3    can deal with and we can actually get the documents.  I

4    don't think there's much question that they're involved with

5    the debtor.  The problem is, there's no one.  They're just

6    not responding.

7            So I would ask that we be able to -- a contempt

8    finding be found for them.  I'd ask that if we move forward

9    with these cases and ultimately make a motion to -- with --

10    an adversary proceeding or some action with regard to them

11    that they should not be able to play games and appear when

12    they want to appear.  But and I -- otherwise, I'd ask the

13    Court to allow us just to reserve to the extent we think we

14    can find these documents to get further aid later.  And

15    that's where we are with the remainder of that motion, Your

16    Honor.

17            THE COURT:  So with regard to the noncompliant

18    respondents, G Club Operations LLC obviously seeking an

19    extension of time to comply.  GT Media -- GTV Media and

20    Saraca Media have not complied --

21            MR. LUFT:  Correct, Your Honor.

22            THE COURT:  -- in any way, shape, or form.

23            MR. LUFT:  Other than they originally hired

24    counsel --

25            THE COURT:  Originally had a lawyer who they

1      don't --

2                  MR. LUFT:  -- but since then --

3                  THE COURT:  So --

4                  MR. LUFT:  And we have no documents.  Not one.

5                  THE COURT:  So aren't they the -- aren't they

6      defaulting respondents at this time too?

7                  MR. LUFT:  In my view, they are, Your Honor, at

8      this point.

9                  THE COURT:  All right.  So then with regard to the

10     entities that you noticed as defaulting respondents, the

11     Hudson Diamond entities you've worked out an agreement with.

12                 MR. LUFT:  Yes.

13                 THE COURT:  So they're not subject to any kind of

14     an order at this time.  And the -- you said the US

15     Himalaya --

16                 MR. LUFT:  US Himalaya Capital seems to be working

17     with us, Your Honor.

18                 THE COURT:  Okay.

19                 MR. LUFT:  So we'd (indiscernible).

20                 THE COURT:  But everybody else is still -- all the

21     other parties that you've listed in your motion are still

22     defaulting respondents.  They haven't done anything?

23                 MR. LUFT:  Correct, Your Honor.

24                 THE COURT:  So your -- my read of your motion is

25     that you want the Court to enter an order with regard to the

1    defaulting respondents to give them an additional three days

2    to comply or they'll be held in contempt?

3              MR. LUFT:  Correct, Your Honor.

4              THE COURT:  And then with regard to the

5    noncompliant respondents, which really is only G Club at

6    this time, but they're asked for a motion for -- they've

7    asked for a motion for extension of time.  But you wanted

8    those parties to comply within 14 days according to your

9    motion?

10              MR. LUFT:  Yes, Your Honor.

11              THE COURT:  Okay.  So I have to just go back and

12    look at and see if I agree with your orders, and then I'll

13    figure out what to do.  In the past when people have not

14    complied with the subpoenas and there have been a motion to

15    compel compliance, I believe that we've given them one last

16    opportunity before being held in contempt, which is what

17    you're saying insofar as you'd give them an additional

18    period of time to comply, a short period of time but a

19    period of time to comply.  And if not, they'll be held in

20    contempt.

21              Golden Spring and Lamp Capital, I -- were

22    different.  I'm thinking about what we've done in other

23    situations in this case were a little bit different, because

24    they had had appearances in this case.  And they were

25    represented by counsel in this case.

1          MR. LUFT:  Previously before going dark, yes, Your

2     Honor.

3          THE COURT:  Yes.  None of the other entities

4     except for G Club Operations LLC today has filed any -- and

5     the Hudson entities that Mr. Romney's filed an appearance on

6     behalf of have filed -- there's no lawyers that I'm aware

7     of, is that correct, that have filed an appearance on behalf

8     of any of these parties?

9          MR. LUFT:  Your Honor, I'm not aware of whether

10     they have, whether G Fashion and G News ever had --

11          THE COURT:  I'm talking about in this case or

12     any --

13          MR. LUFT:  No.  I'm saying --

14          THE COURT:  Nothing in this case?

15          MR. LUFT:  Not that I'm aware of, Your Honor.  I

16     don't remember if in the context of the PI where they were

17     specifically at issue they had an appearance, but I'm not

18     aware of it.

19          Look, Your Honor, it won't come as a surprise that

20     it is the trustee's view that these entities, particularly

21     these G entities, all have -- Mr. Kwok's counsel is

22     effectively, particularly through Aaron Mitchell, overseeing

23     all of these entities.  So I think they have notice.  But

24     have they come before you and said something?  No.

25          That's part of the big problem we're having, which

1    is there seems to be shadow counsel outside the -- of this

2    Court who makes decisions or doesn't show up, and then they

3    hire outside counsel who, you know, does their best but

4    isn't really aware of what is happening.

5           So I am not aware of those entities actually

6    having someone made an appearance.  I do believe that they

7    are all strongly linked to the debtor.  And given his active

8    involvement in every aspect of our attempts to get

9    information about this, my gut is that they're of course

10   aware of what's going on.  But that is just gut, Your Honor.

11          MR. ROMNEY:  Your Honor, may I be heard briefly?

12          THE COURT:  On behalf of whom?

13          MR. ROMNEY:  On behalf of the debtor.

14          THE COURT:  For what purpose?  None of these

15   subpoenas are issued to the debtor.  None of --

16          MR. ROMNEY:  And I --

17          THE COURT:  None of the relief that's sought is

18   sought against the debtor.

19          MR. ROMNEY:  I understand that, and I have no

20   objection to any of the relief sought against any of the

21   entity -- any of these entities, none of whom I represent.

22   I do take issue with characterizations of the debtor's

23   relationship to these entities of which I certainly have no

24   knowledge.  And I don't believe, at least with respect to

25   some of them, there's been any evidentiary foundation for

1    that.  And with respect to the rest of them, I believe those

2    are all on appeal.

3          So just for the record, I'm objecting to any

4    characterization of a legal relationship between the debtor

5    and these entities.  I also would object to the

6    characterization of Mr. Mitchell as the debtor's

7    "consigliere."  I don't know what that means.  Again, I'm

8    not sure that's relevant to any of the relief being

9    requested.

10          But to the extent the relief being requested is

11   based on an established relationship with the debtor, I

12   object solely on that basis.  Thank you.

13          THE COURT:  Thank you.

14          MR. LUFT:  Of course, Your Honor, I don't --

15          THE COURT:  You know, every -- I'm not worried

16   about anything that I -- people make arguments, and I give

17   it whatever weight I think it is appropriate.  Okay?

18          UNIDENTIFIED SPEAKER:  Of course, Your Honor.

19          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

20          THE COURT:  All right.  Thank you.

21          All right.  So with regard to 1805, the second

22   omnibus motion to compel compliance with Rule 2004

23   subpoenas, does anyone else wish to be heard?  Okay.

24   Hearing nothing.  Then the Court will take that matter under

25   advisement and will rule accordingly.  But I -- again, I

1    believe that will be a ruling that we'll issue in short

2    order.  Okay?

3                 MR. LUFT:  Thank you, Your Honor, for your time.

4                 THE COURT:  Thank you.

5                 Now, with regard to -- there's, I think, two more

6    matters.  I need to -- just hold on one second.  Okay?

7                               (Pause)

8                 THE COURT:  There's a fifth omnibus motion for

9    2004 examination and a motion to seal.  Before I address

10   those, no -- I have to take a one-minute break, because I've

11   been told I need to look at something.  So I'm going to do

12   that.  And I'm going to come right back.  So no one should

13   leave the courtroom.  I shouldn't be more than a minute or

14   two.  So Court will be in very short recess.

15                THE CLERK:  All rise.

16               (Court recessed from 2:50 p.m. to 2:55 p.m.)

17                THE CLERK:  Back on the record.

18                THE COURT:  Thank you.  Sorry about that.

19                We only then have to address, I believe, and so

20   everyone please correct me if I'm wrong, the fifth omnibus

21   motion for 2004 examination of additional entities and the

22   motion to seal.  Is that correct?

23                UNIDENTIFIED SPEAKER:  Yes, Your Honor.

24                THE COURT:  Okay.  So however you want to proceed,

25   please proceed.

1          MR. LUFT:  Your Honor, maybe we could just do the

2     motion to seal, because I'm hoping it'll be very quick.

3          THE COURT:  Sure.

4          MR. LUFT:  I believe the motion to seal is in

5     connection with our motion to compel.  And, quite frankly,

6     all it does is that there were documents produced to us with

7     a confidentiality designation pursuant to the protective

8     order.  Accordingly, we've filed them under seal to comply

9     with that order.  We'd ask that the motion to seal just be

10     granted for that.

11          THE COURT:  Okay.  Thank you.

12          Does anyone else wish to be heard on the -- excuse

13     me -- the motion to seal?

14          And are -- I'm just looking -- I don't know if I

15     see the proposed order on the motion to seal yet.  Give me

16     one moment, please.  I think in the past -- but, again, I --

17     I'm not sure I can recall at the moment if under these

18     circumstances, because you're dealing with the provisions of

19     the protective order and the confidentiality order, that

20     we've just entered your proposed order, I think.  But I'm

21     not sure I'm right on that.  Since there are 1,800 entries

22     on this docket, I sometimes don't remember.

23          Okay.  There is a proposed order attached to the

24     motion to seal.  It appears at pages 10 through 12 of ECF

25     1806.  The only thing I would ask you to do is just note

1    today's hearing date on the top of the second page of the

2    order which is page 11 of the ECF document.  It says, "And

3    good cause having thereby and otherwise been shown" -- I

4    would say, you know, following a hearing held on June 6,

5    2023, so it's clear we had a hearing.  And then the order

6    can enter.  Okay?

7              MR. LUFT:  Thank you, Your Honor.

8              THE COURT:  All right.  So with regard to 1806,

9    the motion is granted.  The motion to seal is granted, and

10   the proposed order with the minor changes noted on the

11   record will enter.  Okay?

12             So that leaves for this afternoon the Rule 2004

13   examination motion which is the fifth omnibus motion for

14   2004 examinations of additional entities which is ECF Number

15   1789.  So who will be handling that matter?

16             MR. BASSETT:  I'll be handling that one for the

17   trustee, Your Honor.

18             THE COURT:  Okay.  Go right ahead then, Attorney

19   Bassett.

20             MR. BASSETT:  Your Honor, may I use the podium?

21             THE COURT:  Yes, please.

22             MR. BASSETT:  Again, just for the record, Nick

23   Bassett from Paul Hastings on behalf of the trustee.  So,

24   Your Honor, I think, unfortunately, there's been a bit of a

25   theme in the matters that have been presented to the Court

1    today.  And, unfortunately, it's not one of parties

2    complying with their discovery obligations under Rule 2004.

3    Frankly, it's actually a little odd that we're even here on

4    this one today on a contested basis.  And I'll explain that

5    in a second.

6           But this motion is, as you said, the fifth motion

7    the trustee has filed to seek 2000 (discovery).  It covers,

8    I believe, eight additional parties that the trustee has

9    identified either through his ongoing investigation or

10    through other recent developments as having, in the

11    trustee's view, relevant information that is subject to

12    examination under Rule 2004.

13           The reason why I say it's odd that we're here

14    today on a contested basis is that not a single one of the

15    eight targets of the investigation has filed an objection to

16    the motion.  The only two objections that have been filed

17    are by the debtor and then another objection by the debtor's

18    wife and Greenwich Land, LLC.

19           These objections purport to object to discovery in

20    the case of the debtor that the trustee is seeking from an

21    entity called Nodal Partners LLC, which has been disclosed

22    in a filing to this Court as an entity responsible for

23    providing the source of compensation to the debtor's

24    counsel.  Also noted in that disclosure is that this entity

25    apparently has some relationship to the debtor's daughter, I

1    believe.

2         The objection filed by the debtor's wife in

3    Greenwich Land is purportedly on behalf of an entity called

4    Bento Technologies which is a spending management platform,

5    as we understand it, which has in the past received monies

6    from, among other sources, Greenwich Land and Golden Spring.

7    To the extent that we get into specific issues with respect

8    to the debtor's wife's and Greenwich Land's objection and

9    Bento Technologies, Mr. Linsey will actually be handling

10   that.  So I'll spend the balance of my time addressing the

11   debtor's objection that relates to Nodal Partners LLC.

12        There are two issues that the debtor raises in

13   that objection -- or the two issues, I guess, not that the

14   debtor raises but two issues -- I'm sorry, Your Honor.  Yes.

15   Two issues that the debtor raises.  One of them actually is

16   separate from Nodal Partners.

17        The first issue is, in fact, whether discovery

18   from Nodal Partners under 2004 is appropriate.  The debtor

19   takes the view that it's not.  The second issue relates to

20   the debtor's ability to participate in 2004 examinations if

21   they have notice of those examinations.  I'll get to that in

22   a second after I address the Nodal Partners issue.

23        As to the Nodal Partners discovery, I think it's

24   easy to dispense with this objection because the debtor

25   simply does not have standing to be heard to raise an

Ho Wan Kwok - June 6, 2023                                    88

1    objection to this discovery.  I think that's true for two

2    separate reasons.  First, if you look at the basis for the

3    objection -- I think this is kind of remarkable.  If you

4    look at the objection -- and this is the first paragraph --

5    the debtor says he's objecting to the discovery sought from

6    Nodal Partners on the grounds that it is "broad, invasive,

7    and burdensome."

8           I have no idea how the debtor is able to stand

9    here before the Court and assert a burdensomeness objection

10   on behalf of a party who itself has not appeared and

11   objected and taken the position that the discovery is

12   burdensome.  The debtor simply has no basis whatsoever to

13   make that argument.

14          And the fact that the debtor is here objecting and

15   making that kind of argument frankly should make it all the

16   more apparent why there must be a reason for that and why

17   there must be a reason that the discovery the trustee is

18   seeking from this entity is critically important, especially

19   when it is the source of funding of the debtor's counsel.

20          The second reason that the debtor does not have

21   standing is because, as Your Honor has already found, this

22   is not a case where there is a reasonable prospect of there

23   being a surplus.  The debtor could theoretically have argued

24   in response to our 2004 motion that he thinks some or all of

25   the motion is unnecessary and, therefore, a cost that should

1       not be expended on behalf of the estate by the trustee.

2               But the debtor has no basis to make that kind of

3       objection, because he has no economic interest in this

4       bankruptcy case, because there's no prospect of a surplus.

5       So I think we can just stop there as it relates to this

6       objection at least -- if not entirely, at least as it

7       relates to Nodal Partners and dispense with it, because the

8       debtor cannot possibly have standing to be heard.

9               If we want to go further and look at, okay, let's

10      assume the debtor does have standing to be heard, is this

11      discovery appropriate, I think there's no question that the

12      discovery is appropriate.  Again, this is an entity that --

13      this is in ECF 1774 filed on May 9th.  The debtor disclosed

14      to the Court $256,000 in compensation from this entity.

15              And to the extent the debtor is suggesting --

16      which I can't tell, frankly, because there are inconsistent

17      statements in what the debtor has filed.  But to the extent

18      the debtor is suggesting that he's being paid by this entity

19      but yet this entity has no relationship whatsoever to the

20      debtor and, therefore, there's no basis under the extremely

21      broad rubric of 2004 which allows a fishing expedition for

22      the trustee to get the discovery, I think that is just not

23      at all believable.  It's completely incorrect on the law.

24              As the Court well knows, entities that have funded

25      the debtor in the past, most notably Golden Spring, have

1    obvious connections to the debtor.  I don't think anybody is

2    disputing that.  And I don't think anybody is seriously

3    suggesting that this entity, Nodal Partners, LLC, is

4    randomly paying the debtor's counsel's expenses out of the

5    goodness of its heart.  The trustee is entitled to discovery

6    of the relationship that the debtor has with that entity

7    under Rule 2004.

8         And as it relates to what -- you know, what does

9    this entity really do, what is its connection to the debtor,

10   I just want to point out, because I think this is -- it's

11   very troubling to me, and I think it should be for the

12   Court, a couple of things.  If you look at paragraph 3 of

13   the debtor's objection, there's a line where the debtor

14   says -- one second, Your Honor.  There's a line where the

15   debtor says, "Publicly available information establishes

16   that Nodal is an operating company located in Austin, Texas

17   that is managed by established and well-educated

18   professionals and has no apparent connection to the debtor."

19        Similarly, in the fee disclosure that I mentioned

20   earlier that was filed on May 9th, the debtor in a footnote

21   said that upon information and belief, the -- someone

22   affiliated with or somebody in control of this entity is a

23   friend of the debtor's daughter.  What I think is remarkable

24   about both of these statements is that the debtor is

25   pretending to have no knowledge of whether he has a

1    connection.

2            I think more likely what it is, is it's counsel

3    submitting papers, doing research online to try to figure

4    out what this entity is and not actually confirming it with

5    anybody.  Zeisler & Zeisler represents Mei Guo.  Why they

6    have to allege on information and belief that there's a

7    relationship is beyond me.  There either is or there isn't,

8    and they should know the nature of that relationship.

9            And as it relates to the connection that this

10   entity has to the debtor, I don't know why they would need

11   to say it has no apparent connection to the debtor.  It

12   either does or it doesn't.  And they should be able to make

13   a representation in that regard.  It's not going to change

14   whether we need discovery, but the fact that they're not

15   even able to get that level of information to the Court is

16   very troubling.

17           So for those reasons, I think it's -- there

18   shouldn't be any doubt at all that this discovery is

19   appropriate.  But the debtor shouldn't have an opportunity

20   to object to it in the first place.  So I think that deals

21   with the issue of discovery from Nodal Partners.

22           The other issue that the debtor raises relates to

23   his complaint that he has not received advance notice of all

24   of the examinations or, more specifically, depositions that

25   the trustee has taken pursuant to this court's past Rule

1     2004 orders.  A few responses to this argument.

2              First of all, for arguments I'll get to, it's just

3     wrong on the law.  But I think, up front, it's been waived.

4     The trustee began this investigation -- I was looking back

5     before the hearing and, remarkably, we're almost coming up

6     to the one-year mark -- about ten months ago.  And the Court

7     began entering 2004 orders shortly thereafter, which, as the

8     debtor acknowledges in his objection, are -- were all the

9     same form of order that has been entered subsequently in the

10    additional motions that the trustee has filed.

11             And the trustee, by the way, has been taking

12    depositions, examinations for months.  If the debtor's

13    position was that he all along was entitled to advanced

14    notice of every deposition and entitled to participate, I

15    submit that's an issue that he should have raised a long

16    time ago and not nearly a year later or ten months later.

17             As to the merits of the argument, the debtor

18    relies on Local Rule 2004-1(b) as supporting his position

19    that the debtor, along with certain other notice parties, is

20    entitled to advance notice of every deposition and

21    apparently entitled to participate in those depositions as

22    well.  This is a facially wrong reading of the rule, because

23    Section 2004-1(b) makes clear that it does not apply to this

24    situation.  Local Rule --

25             THE COURT:  Doesn't it only apply if there's some

1    kind of an agreement?

2            MR. BASSETT:  Exactly, Your Honor.  Local Rule

3    2004-1(b) applies -- and the framework of the rule --

4            THE COURT:  If there's an agreement without a need

5    for a motion even, right?

6            MR. BASSETT:  That's exactly right.

7            THE COURT:  Yeah.

8            MR. BASSETT:  And the --

9            THE COURT:  That's my recollection of the rule.

10           MR. BASSETT:  And the framework of the rule --

11           THE COURT:  Yeah.

12           MR. BASSETT:  -- makes perfect sense when you read

13   it in context.  So 2004-1(b) says if there is a private

14   agreement between two parties for a 2004 examination which

15   would not require the filing of a motion, and therefore

16   inherently would not require any notice to anyone, in that

17   situation notice must be given to the debtor, the trustee,

18   and certain other notice parties.  I think a creditor's

19   committee is in there.  Has to give notice to those parties.

20   And it specifies what kind of notice.  And it does say with

21   respect to examinations a certain number of days, et cetera.

22           But the next part of the rule applies to

23   situations where there has been a motion for 2004 discovery

24   filed.  That's 2004-1(c).  And in that case, obviously, the

25   filing of the motion itself is done pursuant to the Court's

1    rules and practices that require notice to the various

2    parties in the case.

3              So it is already assumed for purposes of 2004-1(c)

4    that's built into the rule that all these parties are going

5    to get notice of the motion.  And Mr. Romney would say,

6    well, you need to imply based on 2004-1(b) that, you know,

7    the -- whoever -- the drafters of the rules must have

8    thought that that same additional notice requirement for

9    examinations also applies when there's a motion.  First of

10   all, they could have said that.  The rule does not say that

11   at all.

12             Second of all, it makes perfect sense that it was

13   done the way it is, because once there's a 2004 motion

14   filed, and people have been -- have had the opportunity to

15   object to both the motion and to whatever proposed order is

16   attached to the motion, and an order is granted, it is, of

17   course, that order which governs what else must be done in

18   order to carry out the investigation.  And to the extent

19   the debtor from the very beginning had wanted an order

20   entered in response to our 2004 motions that said additional

21   notice must be given to the debtor and other parties, that

22   was the time to ask for it.

23             And that's why the framework of the rule makes

24   sense.  Because when you're going by motion, you have a

25   motion and you have an order, the order governs.  You don't

1    need to refer back to inapplicable notice provisions of

2    2004-1(b) which only apply where there's an agreement.

3            The next point I would make, Your Honor, is even

4    if the debtor had an argument that he should be given notice

5    and should have the ability to at least make the case to the

6    Court that he's entitled to participate, I think that is

7    entirely -- with a narrow exception that I will mention, I

8    think that is entirely not necessary and inappropriate in

9    this case.  I don't believe the debtor has cited any case

10   standing for the proposition that a debtor, particularly a

11   debtor out of possession, is entitled to notice and an

12   opportunity to participate in every deposition that a

13   trustee would take when investigating the debtor's affairs,

14   particularly as, here, when this is a case that's not likely

15   to have a surplus and, therefore, the debtor can't be

16   participating to protect an economic interest.

17           And, in fact, I think the opposite is true in a

18   case like this where the trustee has been appointed for the

19   very purpose of investigating the debtor's affairs.  There

20   have been all kinds of allegations and findings by the Court

21   of concealment of assets.  I mean, the entire track of the

22   trustee's investigation and the entire theme of this case is

23   trying to untangle the web of entities and individuals that

24   this debtor has used to hold his assets, to hide his funds.

25           And the trustee is very concerned.  And I think

1    there's examples of this kind of thing continuing while this

2    case is proceeding.  And if the debtor were able to attend

3    every deposition that the trustee is taking of somebody

4    trying to figure out what's happening to assets, the debtor

5    is only going to be left with a roadmap to understand where

6    the trustee is going with his investigation and, therefore,

7    stay one step ahead of where the trustee is going next.  It

8    would be completely counterproductive.

9         In addition to that, as Your Honor well knows

10   based on its finding in connection with the preliminary

11   injunction motion that was filed related to the protests at

12   the end of last year, there are individuals who are very

13   fearful of intimidation and retaliation, et cetera, by the

14   debtor.  And allowing these individuals -- allowing even a

15   representative of the debtor to attend these depositions of

16   some of these parties may, in fact, have a chilling effect

17   on their willingness to cooperate.  I think that's a real

18   concern as well.

19        The one exception that I had mentioned was that,

20   and there's been one exception like this to date, we deposed

21   Williams & Connolly, which was one of the debtor's former

22   law firms.  And Williams & Connolly had expressed a concern

23   to us about making sure the debtor was present at that

24   deposition for purposes of being able to assert limited

25   privilege objections in accordance with this Court's earlier

1    privileges order which preserved the debtor's ability to

2    potentially make objections based on information that, if

3    disclosed, could result in personal harm to the debtor.

4              In that case, understanding of that, which I

5    thought -- which we thought was a reasonable request, the

6    trustee did allow Mr. Romney to participate and he did, in

7    fact, participate.  And the trustee is willing to, I think,

8    consider that in depositions of counsel on a case-by-case

9    basis moving forward, but that is the only situation that I

10   can think of where it would be potentially appropriate for

11   the debtor to have representation at these examinations.

12             So that concludes like the issues on the debtor's

13   objections, Your Honor.  If you want to hear from Mr. Linsey

14   on the debtor's wife's and Greenwich Land's objection, I

15   think he can address that now or potentially in response to

16   Mr. Romney.

17             THE COURT:  Well, they're two separate pleadings,

18   right?  I mean, so why don't we just take it a pleading at a

19   time insofar as with regard to Nodal.  Or I'm not sure I'm

20   pronouncing it right, but --

21             MR. BASSETT:  That's how I would pronounce it, but

22   I'm not sure either, Your Honor.

23             THE COURT:  Mr. Romney filed that objection,

24   correct?

25             MR. BASSETT:  That's correct.

1        THE COURT:  And then with respect to the other

2    entities, I think it's Attorney Major that filed that

3    objection, correct?

4        MR. BASSETT:  That's correct.

5        THE COURT:  Okay.  So I'd rather -- if you

6    don't -- I'd rather --

7        MR. BASSETT:  Sure.

8        THE COURT:  -- hear from Mr. Romney first so I can

9    address the debtor's objection first.  And then we'll go

10   from there.

11       MR. BASSETT:  Thank you, Your Honor.

12       THE COURT:  Okay?  And then we'll hear from

13   Mr. Linsey and Mr. Major.

14       MR. BASSETT:  Thank you, Your Honor.

15       THE COURT:  Thank you.

16       Mr. Romney?

17       MR. ROMNEY:  Thank you, Your Honor.  For the

18   record, Aaron Romney, Zeisler & Zeisler, on behalf of the

19   debtor.  I'll begin by saying -- expressing my respect and

20   admiration for the trustee and his counsels' talented

21   advocacy and taking things entirely out of context.

22       The basis for the debtor's motion to the 2004 exam

23   motion with respect -- or I apologize -- the debtor's

24   objection with respect to the trustee's motion with Nodal

25   Partners is not based on the fact that the debtor and his

1   daughter have no connection with Nodal Partners.  In fact,

2   that is the basis for our objection.

3            The connection between the debtor and the debtor's

4   daughter and Nodal Partners has been publicly acknowledged

5   on this docket by my office in a disclosure of compensation.

6   That connection is the fact that Nodal Partners has

7   gratuitously paid some of the debtor's legal expenses to my

8   firm.  And one of the principals of Nodal Partners is a

9   friend of my client, Mei Guo.  And as I've stated, I

10  believe, in the objection, they're supporters of Mr. Kwok's

11  political causes.

12           There is no objection on the part of the debtor

13  certainly.  I can't speak for Nodal Partners, who I don't

14  represent.  And it is Nodal is my understanding, for the

15  record.

16           THE COURT:  Say it again.

17           MR. ROMNEY:  Nodal.

18           THE COURT:  Nodal?

19           MR. ROMNEY:  Yeah.

20           THE COURT:  Like D-A-L?  So emphasize the A?

21           MR. ROMNEY:  Correct.

22           THE COURT:  Okay.  Go ahead.  Thank you.

23           MR. ROMNEY:  There is no objection to -- on the

24  part of the debtor to the trustee inquiring or examining

25  into the connections between Nodal Partners and the debtor,

1    some of which have been disclosed.  But, obviously, they do

2    not need to take our word for it.  We do not object to a

3    subpoena going to Nodal Partners to inquire into their

4    affairs.

5            What we object to based upon this subpoena is

6    based solely on a connection to the debtor which has been

7    publicly disclosed voluntarily -- well, I guess I shouldn't

8    say that, because it was required by the rules.  But on our

9    own initiative, it was disclosed by the debtor.  We further

10   disclosed the personal relationship between Nodal's

11   principal and Ms. Guo.

12           The trustee is now seeking to inquire into every

13   aspect of Nodal Partners' business without requiring a

14   connection to the debtor.  Our issue with these subpoenas,

15   Your Honor, is that we believe the trustee is intending to

16   send a message that anybody who supports the debtor, anybody

17   who has any acknowledgment of a connection to the debtor

18   that is not adverse would be subject to a subpoena that

19   requires Nodal Partners to disclose every asset that it has,

20   the source of every asset that it has, and all of its use of

21   credit without the hook that it -- that there be a

22   connection to the debtor.

23           In this particular case, that -- the scope of that

24   subpoena is all the more outrageous given that it does not

25   take a tremendous amount of effort for one with publicly

1　available information to look up and see what Nodal is.  It

2　is a internationally renowned mechanical engineering firm

3　with principals that all have either PhDs or higher-level

4　education.

5　　　　　　My understanding is that it is a

6　government-approved contractor that does substantial

7　business with the United States Government such that making

8　the disclosures required by -- or purportedly required by

9　the subpoena would certainly be very problematic and overly

10　burdensome.

11　　　　　　THE COURT:  All right.

12　　　　　　MR. ROMNEY:  And so --

13　　　　　　THE COURT:  Well, let me stop you right there.

14　Because now you're making -- you're representing Nodal.  But

15　you're not representing Nodal.  So I don't want to hear that

16　argument.

17　　　　　　MR. ROMNEY:  Well --

18　　　　　　THE COURT:  But the argument I do want to hear,

19　though, is you say that there has to be some connection to

20　the debtor.  So where in Rule 2004 does it say that?

21　Because the first sentence of Rule 2004 says on motion of

22　any party in interest, the Court may order the examination

23　of any entity.  That's what it says.  It doesn't say

24　anything about it has to have a connection with the debtor.

25　　　　　　MR. ROMNEY:  May relate to acts, conducts, or

1   property or to the liabilities and financial conditions of

2   the debtor or to --

3           THE COURT:  Where are you reading?  What section?

4           MR. ROMNEY:  I'm referring to Section 2004(b).

5           THE COURT:  The scope of the examination?

6           MR. ROMNEY:  That's correct.

7           THE COURT:  Right.  That's the scope.  Right.

8           MR. ROMNEY:  That's correct.

9           THE COURT:  That's the scope of the examination.

10          MR. ROMNEY:  Correct.

11          THE COURT:  So how does this -- the -- how does --

12  first of all, when was the subpoena served on Nodal, before

13  you disclosed that they were paying the attorney's fees or

14  after?

15          MR. ROMNEY:  After.

16          THE COURT:  Okay.

17          MR. ROMNEY:  I believe after.

18          THE COURT:  I don't know for sure, honestly,

19  because I think this happened in the pretty recent past,

20  right?  This --

21          MR. ROMNEY:  I -- the --

22          THE COURT:  Was it before or after?  I'm asking

23  the trustee's counsel.

24          UNIDENTIFIED SPEAKER:  There's actually no

25  subpoena, because the motion has not been granted.  But the

1    motion was filed --

2              THE COURT:  Oh, yeah.  This is just the 2004

3    examination.  I'm sorry.  I'm getting ahead of myself.  I'm

4    sorry.

5              UNIDENTIFIED SPEAKER:  But the --

6              UNIDENTIFIED SPEAKER:  They are served with the

7    motion.

8              UNIDENTIFIED SPEAKER:  Yeah.  Exactly, Your Honor.

9              THE COURT:  Yeah.  They were served with the

10   motion.

11             UNIDENTIFIED SPEAKER:  And the motion was filed on

12   the 15th of May.  So it would have --

13             THE COURT:  Before the disclosure?

14             UNIDENTIFIED SPEAKER:  It would have been six days

15   after.

16             THE COURT:  After the disclosure.

17             UNIDENTIFIED SPEAKER:  I think the disclosure was

18   on May 9th.

19             THE COURT:  Okay.

20             UNIDENTIFIED SPEAKER:  The motion refers to the

21   disclosure, Your Honor.

22             THE COURT:  Okay.  Okay.  I'm sorry.  It is

23   difficult to keep all the entities and requests in order

24   given the -- as I've -- I mean, it's -- I'm not -- I'm just

25   saying it's difficult.  There's 1,800 docket entries.  Okay?

1          MR. ROMNEY:  I can relate, Your Honor.

2          THE COURT:  And every motion is substantial,

3     right?  I don't think I've had any -- I don't think there's

4     been a motion under three pages, right --

5          MR. ROMNEY:  I --

6          THE COURT:  -- in a -- in more than a year.  So in

7     any event, okay, so you're talking about the scope of the

8     examination.  Okay?

9          MR. ROMNEY:  Yes.  And --

10          THE COURT:  And so the scope of the examination

11     says in (b) -- it says -- and as you know, Attorney Romney,

12     very well -- you know this.  We all know this, that the

13     scope of the 2004 examination can be very broad.  In fact,

14     case law has stated all over the country that it's akin to a

15     fishing expedition.  We've already -- we've had that

16     discussion on many times.

17          But it does say, "relates to the acts, conduct, or

18     property or to the liabilities and financial condition of

19     the debtor or to any matter which might affect the

20     administration of the debtor's estate or to the debtor's

21     right to a discharge."  Okay?

22          So there's a disclosure that's made that this

23     entity, Nodal, has -- is paying -- and is it your firm's

24     legal -- I don't recall.  I know there was a disclosure with

25     regard to the criminal attorney's fees.  This is your

1    firm's?

2              MR. ROMNEY:  That's correct.

3              THE COURT:  Okay.  Okay.

4              MR. ROMNEY:  It was Zeisler & Zeisler's

5    disclosure --

6              THE COURT:  Okay.

7              MR. ROMNEY:  -- that referenced --

8              THE COURT:  So --

9              MR. ROMNEY:  -- Nodal Partners.

10             THE COURT:  So what you're arguing, it doesn't say

11    -- it says the examination of an entity under this rule or

12   of the debtor -- well, we're not examining the debtor in

13   this motion, the motion is directed to Nodal -- may relate

14   only to the acts, conduct, or property or to the liabilities

15   and financial condition of the debtor and to any other

16   matter that may affect the administration of the debtor's

17   estate.

18             So you have disclosed properly that you're being

19   paid by this entity.  I think --

20             MR. ROMNEY:  That we have been paid in one

21   instance we disclosed.

22             THE COURT:  Okay.  Okay.  Then the trustee is

23   seeking to examine that entity, which 2004(a) allows on its

24   face.  I mean, if the Court grants it, right?  It's an

25   examination of any entity.  And they're -- and the trustee

1    is arguing that it may affect the administration of the

2    debtor's estate.  And it may relate to the acts, conduct, or

3    property of -- or to the liabilities and financial

4    conditions of the debtor.  Because, for example, I have no

5    idea what this agreement is, but maybe Mr. Kwok is supposed

6    to pay the -- these people back.  Has that --

7             MR. ROMNEY:  That --

8             THE COURT:  Maybe I'm wrong.  Have you disclosed

9    that the monies that are paid to you never have to be a

10   liability of Mr. Kwok?

11            MR. ROMNEY:  We have not disclosed that.  I don't

12   believe Attorney Kindseth did the disclosure.  But I -- as

13   best as I can recall, I don't believe so.

14            THE COURT:  Okay.  So all I'm saying is, so that's

15   a relevant area of inquiry, right --

16            MR. ROMNEY:  Certainly.  I --

17            THE COURT:  -- for the trustee to know whether or

18   not Mr. Kwok has any liability -- has incurred any liability

19   to Nodal for Nodal's agreement to pay attorney's fees of

20   Mr. Kwok in this case.  I think that's a legitimate inquiry.

21            MR. ROMNEY:  I agree.

22            THE COURT:  Okay.

23            MR. ROMNEY:  I completely agree, Your Honor.

24            THE COURT:  Okay.  So then your problem is that

25   Nodal is a big corporation, has government contracts -- and

1    I don't mean that -- I'm trying to understand your

2    objection -- and that that shouldn't be allowed?

3              MR. ROMNEY:  Yes.  That --

4              THE COURT:  That's Nodal's argument, not your

5    argument.

6              MR. ROMNEY:  Well, if I may explain why I believe

7    it's my argument, Your Honor?

8              THE COURT:  Yeah.  Go ahead.

9              MR. ROMNEY:  So the issue is, is that Nodal --

10   during a time when many people, as you've heard throughout

11   this -- for many counsel today, many people are no longer

12   around who were formerly working with various entities that

13   at least have some connection to the debtor.  It is clear

14   that many people who once wanted something to do with him no

15   longer do.

16             And if anybody who expresses support for the

17   debtor is subject to subpoenas that have limitless breadth

18   without regard to qualifying them as a connection to the

19   debtor, then everyone is going to refuse to have anything to

20   do with him because of fear of persecution from the trustee.

21   And that is the basis of our objection, which is that

22   facially a subpoena issued because of support for the debtor

23   should at least be tied on its face to a connection to the

24   debtor and the estate.

25             This one does not.  And it's actually evident from

1    the face of the proposed subpoena itself.  Some of the

2    requests are properly drafted such as all documents

3    regarding any income or asset of the debtor, the debtor's

4    estate, or an associated entity.  Others are not, such as

5    documents sufficient to show all of your assets and sources

6    of income or funding.  There is no qualification connected

7    to the debtor in that.

8          And when you're talking about whether it's a

9    natural person or an entity that is supportive of the

10    debtor, they should not be subject to a subpoena, even on

11    its face a subpoena that requires court approval, that

12    doesn't have that hook of connection to the debtor.  And I

13    say that because my understanding is that complying with

14    this subpoena or objecting to this subpoena based on the

15    stakes that this subpoena requires, requires a massive

16    undertaking.

17          And to the extent my objection is not sustained,

18    my guess is somebody else will be standing in this chair,

19    and it will be their argument at that time.  However, the

20    point is there is a chilling effect on even allowing a court

21    authorized Rule 2004 examine that doesn't purport to even

22    require a connection to the debtor.  And that's all that

23    we're saying.

24          We're not saying there's no -- that a 2004 exam

25    shouldn't issue to Nodal.  And if it gets within the scope

1    of reasonableness then, yes, that will be their fight to

2    either work something out on consent or stand before Your

3    Honor and respond to an order.  I don't know how that

4    conversation is going to go.

5         My sole issue, Your Honor, is the chilling effect

6    on personal relationships with the debtor and his family

7    based upon the appearance that the Court is willing to

8    authorize blanket examinations into all affairs of anybody

9    who has any connection to the debtor when those examinations

10   are not limited to connections to the debtor.  That's the

11   sole basis of my objection with respect to the scope of

12   Nodal.

13        THE COURT:  Okay.

14        MR. ROMNEY:  Thank you, Your Honor.

15        THE COURT:  Thank you.

16        Mr. Bassett --

17        MR. ROMNEY:  May I respond to the issue of notice,

18   Your Honor?  Or if Attorney --

19        THE COURT:  Sure.  Go ahead.

20        MR. ROMNEY:  Okay.  With regard to the issue of

21   notice, I guess a -- several things.  And I guess I will

22   start near the end of where Attorney Bassett left off, which

23   is something that I heard for the first time today.  And I'm

24   not saying that this goes far enough but saying that,

25   perhaps, when we're talking about the debtor's former

1   counsel whom the debtor has a right to assert personal harm

2   privileges with respect, that they should have notice of

3   2004 exams, the time and place that they're actually going

4   to occur.  Because as has been pointed out and -- with

5   respect to the consent privilege order, the debtor is the

6   person who has to have the reasonable belief under the

7   Court's interpretation of the language, which has been

8   followed in this case, to assert the personal harm.

9          The debtor, through his counsel -- through his

10  current counsel, whether myself or one of my colleagues,

11  cannot assert a privilege argument in a 2004 examination

12  deposition when we don't know it's happening and we're not

13  present.  So what we're then left with is a conundrum where

14  the benefits that were negotiated before this Court -- and

15  thank you for Your Honor's efforts in getting us here and

16  having a consensual order on this.  But the benefits that

17  were negotiated many, many months ago are being superceded

18  if the debtor is the one that needs to make the objection

19  and the debtor is not aware of the time and place of that --

20  of when the deposition is taking place.

21         So certainly the most important thing going

22  forward is that -- from the debtor's perspective is that the

23  debtor be given notice of depositions where there could be a

24  conceivable privilege objection.  In this particular Rule

25  2004 exam, I believe the only one of those where there could

1    be a potential privilege objection would be the

2    Ernst & Young firm.  But I don't know that for a fact.

3            Point number two is that notice of something

4    happening, even if one assumes at face value that the debtor

5    is not entitled to participate and -- or the debtor's

6    counsel is not entitled to participate in every 2004 exam --

7    and I think it's highly unlikely that the debtor or the

8    debtor's counsel, whether me or somebody else, would want to

9    participate in many 2004 exams.

10           But notice of something happening, the right to

11   participate, and actual participation are three separate

12   things and particularly when you're talking about a former

13   professional of the debtor or evidence that the trustee

14   intends to offer in a pending adversary proceeding or

15   subsequent adversary proceeding but the party is known.

16   There's no harm from notice.  It's not even saying that

17   notice is the right to appear at this stage.

18           But if we don't have notice, we can't ask Your

19   Honor's permission to attend.  And what's the harm of notice

20   and giving us the right to ask?  And Your Honor can say no.

21           THE COURT:  Well, let me ask you a question about

22   that.  You get every motion that's filed that lists who

23   they're going to -- they're trying to seek an order to

24   conduct a 2004, so why do you need advance notice?  You get

25   notice.  Why couldn't you say -- with regard to that, why

1    couldn't you respond and say I want to appear at these

2    depositions, can I?

3              MR. ROMNEY:  Well, Your Honor, I would say --

4              THE COURT:  At these 2004 examinations, I should

5    say.

6              MR. ROMNEY:  I would say two things to that.  One,

7    that's exactly what I'm doing right now.  I'm responding to

8    a 2004 exam that has proposed subpoenas attached to it, and

9    I'm saying I am -- object to this to the extent that the

10   trustee, unbeknownst to me until a few weeks ago -- and I

11   understand this was a miscommunication.  I'm not -- there's

12   no allegation of anything here.

13             But I'm saying in the very context that counsel

14   just said the point should be raised which is when they get

15   notice of these subpoenas or proposed subpoenas, they should

16   have said something then.  Well, this is now.  Now is then

17   in this context.

18             THE COURT:  Okay.  So I'm listening.  You're being

19   heard.

20             MR. ROMNEY:  And what I'm saying is, their

21   proposed order, we've never construed it to allow

22   particularly a professional's depositions to go forward

23   without providing notice.  You know, what's done is done.

24   You know, what -- the use of those depositions that we

25   weren't present there is a different issue that is not

1   before the Court.  And we haven't raised it before the

2   Court.

3          What I'm asking, Your Honor, is to the extent --

4   and I imagine Your Honor will grant these examinations at

5   least to a large extent, because there isn't an objection

6   with respect to many of them.  What I'm asking is that the

7   trustee be required to provide us with notice of the actual

8   time and place of the depositions.  And if the trustee at

9   that time wants to object to our participation, we can deal

10  with that at the time.  If the trustee wants to allow our

11  participation, and we want to participate, that's great.

12         That's what ultimately happened with the Williams

13  & Connolly deposition, albeit at the request of Williams &

14  Connolly and albeit on approximately six days' notice for a

15  deposition in D.C., which was a little bit of a crunch.  So

16  we'd like a little bit more than that.

17         But I'm not here to worry about --

18         THE COURT:  Well, but you can't have it that way,

19  right?  You want notice.  You can't control their schedule,

20  you know?  You're either available or you're not.

21         MR. ROMNEY:  Well --

22         THE COURT:  I mean, I'm not going to have them

23  change their deposition schedule, because you or somebody

24  else wants to attend.  I mean, that's not -- there's nowhere

25  in the rules that require that, especially when you're not

1    the party to whom the subpoena is served.

2              MR. ROMNEY:  But, Your Honor, I'm not suggesting

3    that I should be --

4              THE COURT:  Well, you just an example that it was

5    tight.  Too bad.

6              MR. ROMNEY:  Well --

7              THE COURT:  This isn't discovery directed to you,

8    to your client.

9              MR. ROMNEY:  Your Honor, if I may clarify what I

10   was --

11             THE COURT:  Okay.

12             MR. ROMNEY:  -- attempting to say, apparently not

13   very artfully.  My understanding is that deposition had been

14   scheduled for considerably more than six days in advance.  I

15   was given six days' notice of it is the point that I was

16   attempting to --

17             THE COURT:  But where in the Code does it say that

18   the debtor gets to know about every single 2004 examination

19   and that you somehow have to be made aware of that?  I don't

20   think I've ever seen a case that's even come -- it certainly

21   doesn't state it anywhere in the rules or the Code.

22             So the only place that it would come up would be

23   in a case.  So where is a case that says that?

24             MR. ROMNEY:  Well, Your Honor, certainly it's

25   common practice to provide other parties notice of subpoenas

1    served in a case.  And when a deposition is rescheduled,

2    it's re-noticed.

3              THE COURT:  A common practice where?  How many

4    common -- how many Chapter 11 cases is there a trustee

5    appointed in to investigate the affairs of the debtor where

6    the debtor gets prior notice of every deposition that the

7    trustee's conducting to investigate his affairs?  Tell me

8    that.

9              MR. ROMNEY:  This is the first case I've ever been

10   involved in with a --

11             THE COURT:  Right.

12             MR. ROMNEY:  -- Chapter 11 trustee.  So I can't

13   answer that.

14             THE COURT:  Yeah.  Well, I'm telling you, I

15   just -- I mean, I hear what you're saying.  But there is

16   some unreasonableness associated with that.

17             MR. ROMNEY:  Well --

18             THE COURT:  You're not going to control the

19   trustee's investigation and schedule of examinations that

20   the trustee is going to conduct.  You're not going to do

21   that.  I mean, it's not going to happen.

22             So the issue is, is there an ability to come to

23   some kind of an agreement when you get served with a -- and

24   you have.  You're objecting to this one.  So I assume that

25   you're saying that you want to attend the Nodal deposition

1    when that occurs.  Is that correct?

2            MR. ROMNEY:  I'm not even saying that --

3            THE COURT:  I mean, the 2004?

4            MR. ROMNEY:  -- at this point in time.  What I'm

5    saying is --

6            THE COURT:  Well, you got to say it at this point

7    in time, or you lose, right?  Otherwise -- insofar as you're

8    not going to be able to come in and say I, Judge, want to

9    know exactly when that deposition is going to be.  You need

10   to -- no.  You have to say -- you have to show a reason why

11   you should be able to be at that deposition -- that 2004

12   examination, right?

13           MR. ROMNEY:  Ultimately.  Because I'm not asking

14   for the right to attend.  I'm asking for the right to have

15   notice of something.  I suppose, I mean --

16           THE COURT:  Well, what do you -- you don't need

17   notice of it if you're not going to attend.  What do you

18   need notice of?  That's what I'm --

19           MR. ROMNEY:  Because --

20           THE COURT:  -- I'm struggling with your argument.

21   Because what -- you know they're going to take their

22   deposition.  You've already gotten -- a 2004 examination.

23   You've already -- well, assuming the order enters, right,

24   they're going to take their 2004 examination.  That's what

25   they're going to do.  So you have notice of it.

1            MR. ROMNEY:  Right.  I don't have notice of when

2     they're going to take it --

3            THE COURT:  And I'm telling you you're not going

4     to get that unless you specifically ask and obtain it,

5     because you're not going to control the trustee's discovery

6     schedule.

7            MR. ROMNEY:  Well --

8            THE COURT:  You're not going to do that.

9            MR. ROMNEY:  Well, Your Honor --

10           THE COURT:  Show me a case where that's happened,

11    Attorney Romney, please.  Even in not a Chapter 11 trustee

12    appointed case.  You're not going to find one.

13           MR. ROMNEY:  Your Honor, I don't believe that I

14    need to go beyond to case law.  I can't -- as I sit here, I

15    can't comprehend the reason why the parties would be

16    entitled to notice of the time and location of an

17    examination if that time and location is reached by

18    agreement but not pursuant to motion.  It's the same notice,

19    time and location of examination.

20           Presumably, if there were a motion, the time and

21    location would come out through the order.  The order's --

22           THE COURT:  That's not how the 2004 process works.

23    And our local rule doesn't require that.  And our local rule

24    has a two-step process.  You file the motion.  People can

25    object to the motion.  The motion gets granted or denied.

1    If the motion gets granted, the subpoenas issue, and the

2    person to whom the subpoena is directed gets to object to

3    that subpoena under the applicable rules of the Federal

4    Rules of Civil Procedure and our local rules.  That's the

5    process.

6            MR. ROMNEY:  And then subpoenas are served, Your

7    Honor, and --

8            THE COURT:  No.  I was already presuming they were

9    served.  That's my point.

10           MR. ROMNEY:  Well --

11           THE COURT:  The other gets entered.  Our local

12   rule process is a two-step process.  You don't have to

13   object to the motion for 2004 examination if you don't want

14   to.  But that's what the rule says.

15           The order can issue authorizing a party to conduct

16   the Rule 2004 examination.  But if that party then serves a

17   subpoena, the party -- the person to whom the subpoena is

18   served on or the entity still has the right under the

19   Federal Rules of Civil Procedure to object to that subpoena.

20   That's specifically what the bar of the Bankruptcy --

21   Commercial Law and Bankruptcy Section of the Connecticut Bar

22   Association authored the Rule 2004 examination rules for

23   that very purpose.

24           That it was a two-step process.  That you didn't

25   have to object to the motion to begin with.  And that your

1    rights with regard to the subpoena and to move to quash or

2    for a protective order or anything along those lines were

3    preserved once and only if the subpoena is served, right?

4            So that's how it works.  That's how it works in

5    our district, which all the Connecticut Bar Association are

6    the people and the representatives that crafted that rule

7    that was then out for comment to the bar for quite some time

8    and then to the public for quite some time.  And there were

9    no objections to that process.

10           And the United States District Court for the

11   District of Connecticut voted to approve those rules.  So

12   that's the rules.

13           MR. ROMNEY:  I understand that.  I'm very familiar

14   with many of the people who were part of that process.  I

15   wasn't.  Many of them share my reading of the rule, but I

16   suppose that's neither here nor there.

17           Your Honor, it seems like a very light ask to have

18   notice of when depositions are taking place -- of when 2004

19   examination depositions are taking place.  Certainly, I

20   mean, Rule 2004 itself expressly requires notice to all the

21   parties when --

22           THE COURT:  Of the motion --

23           MR. ROMNEY:  -- when --

24           THE COURT:  -- which you got.

25           MR. ROMNEY:  As well as of the subpoena --

1        THE COURT:  Where does -- no, it doesn't.  Where

2    does it say that you -- there's notice -- the subpoena has

3    to be -- first of all, the subpoena isn't -- it tells you

4    that the subpoena -- you have to review your subpoena rules,

5    which is there's nothing in the 2004 rule that's -- of the

6    Federal Rules of Bankruptcy Procedure.  And then our local

7    rule refers to the subpoena rule which is, what, 9016 --

8        MR. ROMNEY:  16.

9        THE COURT:  -- right?

10       MR. ROMNEY:  Yeah.

11       THE COURT:  And 9016 says --

12       MR. ROMNEY:  It requires notice of subpoenas that

13   require -- that request documents.

14       THE COURT:  Yeah.  To be served on whom?

15       MR. ROMNEY:  On the parties.

16       THE COURT:  Right.  The party.  No, the party to

17   whom the subpoena is directed.

18       MR. ROMNEY:  I --

19       THE COURT:  It doesn't say he's got to serve it on

20   anybody -- what would be the point of serving it on anybody

21   else?  They wouldn't have a right to object or move to quash

22   or move for a protective order.

23       MR. ROMNEY:  Well, sorry.  Federal Rule 9016

24   incorporates Federal Rule 45.

25       THE COURT:  Yep.  It sure does.

1          MR. ROMNEY:  Which requires notice to the parties.

2          THE COURT:  Which requires notice to the party

3     upon whom the subpoena is served.

4          MR. ROMNEY:  It requires notice to other parties

5     before service, though granted that the --

6          THE COURT:  Where?  Tell me where you're reading

7     that, Attorney Romney, because I'm not with you.

8          MR. ROMNEY:  And as I was attempting to finish my

9     sentence, that does specifically on its face just refer to

10    the inspection of documents.  But it's Rule 45(a)(4).

11         THE COURT:  Notice to other parties before

12    service.  "If the subpoena commands the production of

13    documents, electronically stored information, or tangible

14    things or the inspection of premises before trial" -- before

15    trial -- "then before it is served on the person to whom it

16    is directed, a notice and a copy of the subpoena must be

17    served on each party."

18         Well, that's already happened, because you've

19    already gotten the motion, and you've gotten the subpoena

20    that's going to be served on Nodal.  So that's been complied

21    with.

22         MR. ROMNEY:  Well, no.  The subpoena hasn't been

23    served.  I don't think that's disputed.  And --

24         THE COURT:  Well, and the rule you just recited

25    presumes exactly what you just said, that the subpoena

1   hasn't been served.  Then before it is served on the person

2   to whom it is directed, a notice and a copy of the subpoena

3   must be served on each party.  That's already occurred.

4   They've already --

5           MR. ROMNEY:  Right.  Except --

6           THE COURT:  They've already complied with Rule

7   45(a)(4).

8           MR. ROMNEY:  Except that the proposed subpoenas,

9   as my best of recollection, and I won't recall, but is blank

10  with respect to time of performance.  So it's not the

11  subpoena.  It's a proposed subpoena that has not yet been

12  authorized by the Court.

13          THE COURT:  Okay.  Go ahead.  Keep going.

14          MR. ROMNEY:  That's what I got for you, Your

15  Honor, at this time.

16          THE COURT:  Okay.

17          MR. ROMNEY:  I think fundamental principles of

18  fairness entitle the debtor's counsel to have notice of Rule

19  2004 exams, particularly when we're talking about the

20  debtor's professionals.  And I think that it would be far

21  more efficient for the trustee to just provide us notice

22  than for us to go through this exercise each time the

23  trustee files a motion for Rule 2004 exam.  And then we

24  could deal with it only -- if and when -- only if the

25  debtor --

1           THE COURT:  Well, maybe you can come to some kind

2     of agreement on that with regard to professionals.  But

3     Nodal isn't a professional.

4           MR. ROMNEY:  That's correct.  Ernst & Young is.

5     And --

6           THE COURT:  Well, maybe you can come to an

7     agreement on that.

8           MR. ROMNEY:  I attempted to come to an agreement

9     as set forth affidavit.

10           THE COURT:  Well, maybe you can keep trying after

11     today's hearing.

12           MR. ROMNEY:  I would love to.  I love agreements.

13           THE COURT:  Maybe you can do that.

14           MR. ROMNEY:  Thank you.

15           THE COURT:  Okay?  But what I'm saying to you is,

16     right now, I believe that the trustee has complied with Rule

17     2004 and our Local Rule 2004-1 processes in our district.  I

18     have to rule on whether or not your objection is sustained

19     or overruled.

20           And I have to -- I'm going to go back and look at

21     everything.  I'm not going to rule right now, because I had

22     to hear from you.  I've heard from you.  I understand your

23     arguments.  And I'm not going to rule today.

24           I hope I'm going to rule tomorrow, Thursday, or

25     Friday, right?  Real soon.  Because I -- you know, these

1    kind of issues have to be ruled on so the parties know where

2    they stand and what next steps, if any, can be taken.  Okay?

3    But I understand --

4              MR. ROMNEY:  Thank you very much, Your Honor.

5              THE COURT:  I understand your argument.  Okay?

6              MR. ROMNEY:  I appreciate it.

7              THE COURT:  All right.

8              MR. ROMNEY:  Thank you for hearing me today.

9              THE COURT:  Thank you.

10             All right.  So this matter is -- the motion for

11   examination and the objection by the debtor is taken under

12   advisement.

13             Now, we only have the remaining issue of the

14   deposition -- the 2004 -- excuse me, that the -- that

15   Mr. Major's clients have objected to.  So, Mr. Linsey, you

16   go ahead and make your argument, please, and then I'm going

17   to hear from Attorney Major.

18             MR. LINSEY:  Thanks, Your Honor.  I'm going to try

19   to be brief, because, as I think we stated in our reply, the

20   trustee's position is this issue has really been argued

21   before.  The objection that was filed by Greenwich Land and

22   by Mrs. Ngok takes issue with Rule 2004 discovery that's

23   sought with respect to Bento Technologies.

24             Our understanding is Bento Technologies is a --

25   essentially like a corporate Venmo.  It's a system for

1    corporations to track their transfer of funds and transfer

2    funds to other corporations.  As we said in the 2004 exam

3    motion, Greenwich Land is one of the entities that we

4    believe was involved with payments that the debtor had an

5    interest in that went through this system.

6         We certainly don't think Greenwich Land is the

7    only one.  You heard Mr. Bassett say that we believe Golden

8    Spring is another one.  And the experience and the trustee's

9    investigation to date tends to suggest that when we believe

10   there are a couple, oftentimes there are more.

11        Greenwich Land and Ms. Ngok filed an objection,

12   and in their objection they cite the pending action

13   doctrine.  If that sounds familiar, that's because six

14   months ago an objection was filed by the debtor's daughter

15   and by HK USA that made exactly the same legal argument with

16   respect to discovery that was sought from a yacht company

17   and a law firm that was involved in the sale of the Lady

18   May.

19        And they made the argument that there's a pending

20   adversary proceeding concerning ownership of the Lady May

21   and, therefore, the trustee was not entitled to get

22   discovery -- 2004 discovery from entities that are not

23   parties to the lawsuit because of this pending action

24   doctrine.  They cited a number of cases.

25        The issue was extensively briefed.  Your Honor had

1    a long hearing, and Your Honor entered a ruling determining

2    that issue.  And that ruling determined that the pending

3    action doctrine does not block the trustee's Rule 2004

4    investigation with respect to non-parties to any adversary

5    proceeding.  Your Honor cited case law to that effect.  It's

6    consistent with the case law.

7            Apparently, the debtor's wife and Greenwich Land

8    do not like that decision and disagree with it and want

9    another bite at the apple.  But, Your Honor, that's law of

10   the case at this point.  You know, the law is clear that

11   when a legal determination is made in a case, it should

12   continue to control unless there is some manifest change in

13   the law or factual circumstances in the case.

14       And certainly, in a case like this where we hear

15   affiliate after affiliate after affiliate come to court and

16   make the same objections and the same complaints and the

17   same -- everybody says they're trying to cooperate.  Bou

18   know, if people were cooperating, you'd think there'd be

19   more cooperation.  It's pulling teeth to get any document.

20           We can't have the same arguments recycled over and

21   over and over again.  This issue has been dispensed with.

22   Your Honor ruled.  There's already been prejudice to the

23   trustee from this objection, because it's delayed the

24   issuance of the subpoena.  We need to move forward.

25           To the extent that Your Honor would even consider

1    and entertain the merits of the objection, I would just note

2    that as a payment transfer and management program, to the

3    extent that Greenwich Land was somehow involved with this --

4    with transfers, it ought to have had the records.  Those

5    records ought to have already been produced to the trustee

6    in accordance with the trustee's subpoenas to Ms. Ngok and

7    Greenwich Land.  The notion that they're somehow prejudiced

8    that we could get this from another source is fanciful.

9          And to the extent that Greenwich Land legitimately

10   believes that it needs discovery and to participate in

11   discovery in order to determine what its own financial

12   conduct is, because, I mean, that seems to be the practical

13   meaning of the argument, nothing here is stopping Greenwich

14   Land from taking its own discovery under the Part -- Part 7

15   of the Bankruptcy Rules in the adversary proceeding.

16         So unless Your Honor has any questions, that's all

17   we have to say about the Greenwich Land objection.

18         THE COURT:  I don't have any at the moment.  Thank

19   you.

20         MR. LINSEY:  Thank you, Your Honor.

21         THE COURT:  Attorney Major, go right ahead.

22         MR. MAJOR:  Good afternoons, Your Honor.  Chris

23   Major, Meister Seelig & Fein.  We represent Greenwich Land

24   LLC and Ms. Ngok.

25         Counsel for the trustee just indicated that they

1    were prejudiced by the fact that we objected to the Rule

2    2004 motion, which, of course, was our right.  But the only

3    delay that was caused is because the trustee chose not to

4    serve a subpoena under Rule 45 which he was free to do in

5    the context of the adversary proceeding where our clients

6    are the defendants.

7         A Rule 2004 exam, to start from the top, the

8    only -- relevance is not the only question.  It's up to the

9    trustee to demonstrate first that the information that the

10   trustee is seeking is relevant but then also, as the case we

11   cite in our opposition establishes, the trustee must

12   establish that either the 2004 is necessary or that without

13   it the trustee would suffer undue hardship or injustice.

14        The trustee has only identified Greenwich Land as

15   the relevant entity for which it believes it -- he needs

16   discovery under Rule 2004.  I know that counsel for the

17   trustee just indicated that they believe there are others.

18        The only thing they've said in their papers,

19   they've done a year-long investigation.  We've heard about

20   it all day.  The only thing they say is in their opening

21   Rule 2004 motion where they spend a grand total of a

22   paragraph describing the relevance of Bento.  And they say

23   on page 5 "potentially other affiliates of the debtor

24   including, among others, Golden Spring."  The trustee can't

25   use speculation, which is all that the papers reveal, to

1   establish that, well, we're not just seeking it in terms of

2   Greenwich Land.  In their reply, they only mention Greenwich

3   Land, and they identify no other entities despite all of the

4   2004s that have been done, despite a year-long

5   investigation.

6          The discovery that they --

7          THE COURT:  It's not quite a year, just to be

8   clear for the record.

9          MR. MAJOR:  I'm sorry?

10          THE COURT:  It's not quite a year, just to be

11   clear for the record.  I don't --

12          MR. MAJOR:  Oh, just about.

13          THE COURT:  I believe that the trustee was not

14   appointed until July of last year.  So go right ahead.

15          MR. MAJOR:  Understood, Your Honor.  The discovery

16   that the trustee wants can be had in the context of the

17   adversary proceeding.  And it's easy for the trustee to do.

18   He just has to serve a Rule 45 subpoena.  He does have to,

19   obviously, give us a copy of the subpoena before it's served

20   under the Federal Rules of Civil Procedure which

21   unquestionably govern the adversary proceeding.  And then he

22   would have to serve us with the notice of deposition

23   providing us with the date and time of the deposition.

24          The Court and the trustee have both described

25   today the nature of a 2004 exam and that courts refer to it

1    as being permissible to conduct a fishing expedition.  Well,

2    that's not the case in an adversary proceeding --

3              THE COURT:  I understand.

4              MR. MAJOR:  -- which is a lawsuit.

5              THE COURT:  I understand.

6              MR. MAJOR:  And the trustee is not seeking to

7    examine the affairs of the debtor here.  He's not seeking to

8    see if he has a claim.  He told this Court he had a claim.

9    He filed the lawsuit.  Not only did he do that, he obtained

10   ex parte relief, a temporary restraining order, and

11   certified that he had sufficient information for doing so.

12             So he's already charted the course here, which

13   he's suing our clients in order to take back Ms. Ngok's

14   home.  And he's established -- or asserted to the Court that

15   he has -- already has the evidence of that.  He's identified

16   Bento, and the only entity that he's affirmatively connected

17   it to is Greenwich Land which is a defendant in the

18   adversary proceeding.

19             There's no question that this discovery is being

20   taken for that purpose.  And, therefore, our client is

21   entitled to participate in that deposition and to have

22   advanced notice of it.  The discovery cannot be taken under

23   Rule 2004.

24             I just refer the Court also back to last week when

25   we were before Your Honor on the scheduling issues when

1    Mr. Luft said that everything the trustee's doing in terms

2    of his investigation is work product, which means he's going

3    to argue -- when I serve the trustee with discovery, he's

4    going to argue I'm not entitled to it and that he can go

5    take discovery, which he's representing to the Court is

6    relevant to my client in a pending adversary proceeding.

7    He's going to take the position that I'm not entitled to see

8    that.

9           And I think that that's not only improper but

10   grossly unfair under the circumstances.  He hasn't attempted

11   a showing that he can't get this discovery through the

12   adversary proceeding.  And I think that's what he would have

13   to do to meet the standard that he'd suffer undue hardship

14   or injustice if he can't get the 2004.

15          He can get this discovery.  I'm not contesting the

16   discovery.  In fact, I want to participate in the discovery.

17   But he can't get it under the -- in the context of a Rule

18   2004 exam.

19          I think also it's worth pointing out that the

20   pending action doctrine, there is no case cited by the

21   trustee where an objecting party in an adversary proceeding

22   was unable to participate in the discovery.  The purpose of

23   the doctrine is to prevent the lack of application of the

24   Federal Rules of Civil Procedure to the discovery.  The

25   Federal Rules of Civil Procedure are not limited to party

1    discovery.  They apply, of course, to third-party discovery

2    which is what this is going to be.

3          And Rule 45 is the particular rule.  That rule has

4    to be enforced in the context of the adversary proceeding.

5    This motion was filed long after the trustee filed the

6    adversary proceeding and could have even without filing this

7    motion -- they don't need the permission of this Court at

8    this point to take the deposition testimony of Bento if they

9    have a reasonable belief that it has some connection to

10   Greenwich Land.

11         They just had to serve the subpoena which could

12   have been done long ago.  So any delay here is the cause of

13   the trustee trying to take discovery with broader than

14   permissible rules in the context of an adversary proceeding

15   and outside the purview of our client participating in it

16   and being able to enforce their rights in connection with

17   the discovery.

18         The last thing I'd like to address, Your Honor, is

19   the law of the case.  The Court's ruling, which is quoted in

20   the trustee's reply, was that "Upon consideration of the

21   pleadings, the arguments advanced at the hearing, the facts

22   and circumstances of this case, and of the applicable law,

23   the Court finds that the pending proceeding doctrine is not

24   a bar to the examinations of Apsley Yachts Limited and DWF

25   LLP, because they are not parties to the pending adversary,

1    HK International Funds Investments USA Limited v. Despins,"

2    and it cites the main Kwok case at that point in time.

3            There was not a ruling as to Bento.  There was not

4    a ruling as to our client's particular objection.  The law

5    of the case doctrine is designed to take specific rulings

6    and make sure that those are consistent if -- and it's on a

7    mandatory basis if it comes from an appellate court in that

8    case.  And it's on a discretionary basis if it's from the

9    trial court in that particular case.

10           Our clients obviously did not participate in

11   whatever the prior hearing was.  The issues that are before

12   the Court right now, which is you have a witness identified

13   who is identified and only tied affirmatively by the trustee

14   through allegations in a pleading, not in -- not with any

15   proof, tied to the defendant in the adversary proceeding, I

16   think on the facts that are now before the Court -- I don't

17   think the law of the case doctrine bars it.  But on the

18   facts that are now before the Court, my clients are entitled

19   to participate in the discovery.  And it can be done in the

20   context of the adversary proceeding with a plain vanilla

21   Rule 45 subpoena with the federal rules governing it.

22           If the Court finds that the law of the case is

23   implicated here, the case law that's been cited, including

24   by the trustee in In Re ServiCom and many, many other cases

25   establish that the Court is not -- the law of the case

1    doctrine at most in this context, which I don't think it

2    applies, but even if the Court finds that it applies, it at

3    most should be part of the guide of the Court's discretion.

4         Well, what I would ask the Court to do is to look

5    at the facts and circumstances.  Look at the words that the

6    trustee wrote in the motion papers where the only

7    affirmative tie is to Greenwich Land and to note that not

8    only did the trustee feel comfortable enough to file the

9    lawsuit, he felt comfortable enough to get ex parte

10   extraordinary relief in the form of a temporary restraining

11   order and prejudgment attachment on the basis of his belief

12   that he had enough to bring that lawsuit and to get that

13   extraordinary relief.

14        And so for all of those reasons, Your Honor, I

15   think under the facts and circumstances of this case and the

16   adversary proceeding that is a separate adversary proceeding

17   from the other case, the Court should require the trustee to

18   take the discovery under Rule 45 and not under Rule 2004,

19   because we do have a pending lawsuit where the federal rules

20   apply.

21        THE COURT:  Thank you.

22        MR. MAJOR:  Thank you, Your Honor.

23        THE COURT:  Any response, Attorney Linsey?

24        MR. LINSEY:  Yes.  Just briefly, Your Honor.  A

25   couple things.  First of all, Mr. Major is correct that the

1 scope of a Rule 2004 examination is broader than Rule 45

2 subpoena discovery in an adversary proceeding.  And that's

3 important here, because the subpoena that the trustee wishes

4 to issue to Bento addresses subject matter that is

5 substantially broader than the existing adversary

6 proceeding.

7 　　　　　We have seen enough of the trustee's -- rather the

8 debtor's entities and affiliates in this case to understand

9 how the economics of these entities work.  Assets and cash

10 flow through these entities like water.  There are numerous

11 transfers between these entities.

12 　　　　　Bento was the tool that was apparently used to

13 make some of these transfers.  And so it is obvious the

14 facts and the records that we are seeking from Bento are

15 going to have implication far beyond this one existing

16 adversary proceeding that's impossible to cabin the scope of

17 the Rule 2004 subpoena that the trustee wishes to issue into

18 45 discovery in an adversary proceeding.

19 　　　　　The Court has looked at this specific legal issue

20 before.  And at ECF Number 1184, the Court has ruled on it.

21 And if every time we have a new omnibus Rule 2004 motion

22 we're going to have to have the same arguments again and

23 it's going to be held up every time, it just adds further

24 expense and delay to this case.

25 　　　　　And, again, the trustee has been specifically --

1    has specific knowledge through the trustee's investigation

2    that Bento was used by entities other than Greenwich Land.

3    So to the extent that Greenwich Land believes that it needs

4    to obtain Rule -- rather it needs to obtain discovery from

5    Bento, it's free to do that under the Part 7 rules.  It

6    ought to have those records.  Because there's -- I have a

7    Venmo account, Your Honor.  I can tell you any money that I

8    send or is sent to me through my Venmo account.  It ought to

9    be able to do the same thing.

10           It should have produced those records a long, long

11   time ago.  It's not -- it shouldn't be using procedural

12   technicalities now to try to constrain what is a

13   multifaceted investigation where the trustee is going to

14   obstruct it at every turn.  Thank you, Your Honor.

15           THE COURT:  Thank you.

16           MR. LUFT:  Your Honor, may I address one small

17   issue?

18           THE COURT:  Yes.

19           MR. LUFT:  Thank you, Your Honor.  Avi Luft.  I

20   just -- there was a reference made to what we had last week

21   with regard to the Greenwich Land proceeding and the idea of

22   work product.  I just want to touch on this for one moment.

23   This sort of hits the nail on the head.

24           Mr. Major is free to take whatever discovery he

25   wants of Bento if he thinks it's pertinent to his case.  And

1    just as the trustee would be free to take discovery in that

2    case of Bento to the extent he thinks it's pertinent in that

3    case.  And we'll -- and the normal rules in an adversary

4    proceeding would apply.

5            What I heard Mr. Major complaining about was the

6    idea that I've indicated that he can't just call the trustee

7    and say I'd like your work product.  I'd like to see what

8    you're developing in your investigation.  And I worry that

9    that's where we're heading.

10           And I don't want to come back in front of you for

11   no reason, so I'll be very clear.  That's right, Your Honor.

12   I do not have any intention of handing my work product over

13   to Mr. Major.  If he'd like to know anything about Bento, he

14   is welcome to seek discovery from them.

15           Now, what Mr. Linsey was just talking about was a

16   scope -- 2004 examination, because Bento seems to be

17   involved with multiple aspects of the debtor's case.  That's

18   what we'll be searching for.  The admissibility and

19   usefulness of that information will be addressed at the

20   time.  If it's inadmissible, then we will have to go get it

21   another way with regard to the other case.

22           But, quite frankly, that shouldn't have any

23   bearing on the trustee's ability to investigate.  And the

24   fact that Mr. Major is -- doesn't get a free preview of what

25   we're investigating through our work product should also

1    have no bearing, Your Honor.

2            THE COURT:  Okay.  Thank you.

3            Mr. Major, any response?

4            MR. MAJOR:  Your Honor, I'll just respond briefly

5    on one point, which is the pending action doctrine exists

6    for a reason.  And the reason for that is to make sure that

7    the federal rules apply to the discovery in an already filed

8    action.  And that's what we have here.

9            We've addressed the case law.  There is no basis

10   for the trustee here to take discovery.  Which they keep

11   saying there are all these entities that are involved.  They

12   haven't identified a single one beyond Greenwich Land.  They

13   only said potentially others.  They're saying here that

14   there are many others.  You know, the words are changing a

15   little bit.

16           But at the end of the day, the trustee could have

17   very easily either today stood up and identified somebody or

18   put something in the papers or demonstrated it otherwise

19   very easily.  I don't think that our clients and the Court,

20   frankly, should have to just take the trustee's word for it

21   on all of these various issues.  He's not being deprived at

22   all of discovery if he follows the rules, and we just ask

23   that the Court require he do so.

24           THE COURT:  Okay.  Thank you.

25           MR. MAJOR:  Thank you.

1          THE COURT:  All right.  What I'm going to do with

2     this motion is I'm going to, again, take this under

3     advisement.  I need to think about the arguments that were

4     made by counsel today and -- but, again, my goal is to rule

5     on this quickly.  That's what I'm hoping to do.  There are

6     several discovery matters today that I have to rule on, so

7     that is what I will do.

8              Anything further from anyone else this afternoon?

9     Okay.  Then I believe we have addressed all of the matters

10    on today's calendar.  And for that reason, Court is

11    adjourned.

12             IN UNISON:  Thank you, Your Honor.

13             THE CLERK:  All rise.  Court is adjourned.

14        (Proceedings concluded at 4:10 p.m.)

15

16

17

18

19

20

21

22

23

24

1

2                    I, CHRISTINE FIORE, court-approved

3       transcriber and certified electronic reporter and

4       transcriber, certify that the foregoing is a correct

5       transcript from the official electronic sound recording of

6       the proceedings in the above-entitled matter.

7

8       *Christine Fiore*

9       _____          June 13, 2023

10          Christine Fiore, CERT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25