**Exhibit 23**



# International Yacht Brokers Association, Inc.
## PURCHASE AND SALE AGREEMENT FOR BROKERAGE VESSEL

| BUYER: | | SELLER: LUC A. DESPINS, AS CH11 TRSTEE OBO HO WAN KWOK |
|---|---|---|
| Address | | Address: C/O PAUL HASTINGS LLP |
| | | 200 PARK AVENUE, NEW YORK, NY 10166 |
| Nationality: | | Nationality: |
| **VESSEL NAME:** LADY MAY | | **MANUFACTURER:** FEADSHIP |
| Model: CUSTOM | | Length Overall: 46.2 M |
| Year: 2014 | | ☐ Doc or ☑ Reg No.: 745195    Flag: CAYMAN |
| Hull No.: 688 | | Engine Description: |
| Selling Broker: | | Listing Broker: DIRK JOHNSON - EDMISTON |
| **IMPORTANT DATES** | | **PURCHASE PRICE** |
| Offer Date: MAY 17, 2023 | | Purchase Price: $18,500,000 |
| Offer Expiration Date: MAY 29, 2023 | | Less Deposit: $3,700,000 |
| Accept/Reject Date: June 6, 2023 | | Less Trade Allowance (see Addendum): |
| Closing Date: JUNE 21, 2023 | | Balance: $14,800,000 |

*Delivery Location:* BERMUDA OR AS MUTUALLY AGREED BETWEEN THE PARTIES
*Note: If Vessel is to be moved to the Delivery Location, such location must be specified with precision.*

ADDITIONAL REGISTERED VESSELS INCLUDED ☑ Yes ☐ No

1. **Agreement**. Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which it has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five (5) days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit**. Within ____3____ business days (or 3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey**. Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) **Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable**, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay **all** costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. ***An acceptance subject to any conditions will be deemed a proposal to amend this PSA and will not preclude Buyer from accepting the Vessel unconditionally on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have rejected the Vessel if it fails to give timely written notice of its acceptance.*** Upon Buyer's acceptance of the Vessel, Seller will



Buyer's Initials _____    ©2022 International Yacht Brokers Association. All rights reserved.    Seller's Initials: _____/_____
Page 1 of 4    Rev. 2.1.22
*This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.*

not make any use of the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable title to Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. **Brokers**. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those Encumbrances that will be paid in full at Closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6 incorporating the litigation costs, attorney's fees, governing law and dispute resolution provisions in this PSA, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents, (iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; *Force Majeure***. Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable control (*"Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, plagues, pandemics, epidemics, infectious disease outbreaks, or other natural disasters of any type (without limitation), quarantines, travel restrictions, whether declared by a governmental authorities or a non-governmental organization, interruptions of

regular transportation, civil disobedience, piracy, and hostilities of any type (without limitation), affecting the timely performance by either party of its obligations herein. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure Event* delays the Closing Date for a period of at more than 60 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default**. ***Notwithstanding anything herein to the contrary, if the Deposit is not paid when due*** or Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES**. SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS **"AS IS"** CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, ***ALL OF WHICH ARE DISCLAIMED.***

11. **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds**. The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms**. ADDENDUM ONE FORMS AN INTEGRAL PART OF THIS AGREEMENT.
_____



Buyer's Initials:
Page 3 of 4



©2022 International Yacht Brokers Association. All rights reserved.

Seller's Initials: _____/_____
Rev. 2.1.22

16. **Miscellaneous**. This PSA, including its exhibits and schedules, is the ***entire agreement*** between the parties pertaining to the subject matter hereof and ***supersedes*** all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, except in writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, email, or other electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim or right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicable except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

17. **Governing Law and Dispute Resolution**. ***Check (a) or (b). If none checked, (a) will apply***. The parties shall resolve any dispute arising from this PSA by: (a) [✓] binding arbitration pursuant to the rules of the International Yacht Arbitration Council ("IYAC") in force when the arbitration is commenced in Fort Lauderdale [ ], London [ ], or Monaco [ ] (if none checked, Fort Lauderdale); or (b) [ ] binding arbitration in London, England under the rules of the London Maritime Arbitrators Association ("LMAA"). ***If (a) is selected***: this PSA will be governed by and interpreted according to Florida law [✓] or English law ____ (if none checked, Florida) regardless of the principles of conflicts-of-laws adopted by such jurisdiction. ***If (b) is selected***: (i) this PSA will be governed by and interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any dispute arising out of or in connection with this PSA shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) the arbitration shall be conducted in accordance with the rules of the LMAA current when the arbitration is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while if greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. ***Whatever option is selected***: the parties irrevocably submit to the exclusive jurisdiction of such arbitral forum, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the proceeding will be decided only in such arbitral forum and, further, not to bring any claim relating to this PSA in any other court or arbitral forum. Any claims by the Buyer against any of the Brokers, shall be resolved pursuant to the terms of this PSA. Judgment on the award rendered by the arbitrator may be entered as final judgment in any court having jurisdiction thereof. ***The parties, having had the opportunity to seek legal counsel, waive trial by jury for claims arising under this PSA.***

**BUYER:**

Print: ███████████
Title: _____
Date: _____

**BUYER:**

Print: _____
Title: _____
Date: _____

**SELLER:**

Print: _____
Title: _____
Date: _____

**SELLER:**

Print: _____
Title: _____
Date: _____

**SELLING BROKER DEPOSIT CONFIRMATION** (Subject to clearance of funds)

Print Name/Title: ███████████

Amount: _____
Date: _____



This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.

## Addendum

This Addendum is made to the Purchase and Sale Agreement for Brokerage Vessel dated May 5, 2023 (the "**Agreement**"), between ▮▮▮▮▮ and/or assigns ("**Buyer**"), and Luc A. Despins, as Chapter 11 Bankruptcy Trustee for the Estate of Ho Wan Kwok ("**Seller**").

The parties supplement and amend the Agreement as follows:

1. **Interpretation of This Addendum.** Capitalized terms in this Addendum have the same meanings as in the Agreement unless separately defined herein.

2. **Escrow Agent.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Escrow Agent"), shall hold and disburse the Deposit, and any other money and documents deposited by Buyer and Seller, in accordance with the Agreement. Every reference in the Agreement to the Selling Broker as the holder of the Deposit, and any other money and documents, will be interpreted to refer to the Escrow Agent. The Seller and the Buyer acknowledge that the Escrow Agent is the law firm representing the Buyer and agree that the Escrow Agent may continue to represent the Buyer in this transaction and in any dispute arising between the parties.

3. **Closing Documents.** At or before Closing, Buyer and Seller shall deliver to each other the documents listed in the attached Exhibit 1.

4. **Due Diligence.** Buyer, Seller, and Brokers each shall, upon request, provide any information or documents reasonably required by the requesting party's bank to establish the identity, residency, and source of funds of its beneficial owner or owners.

5. **Inconsistency.** This Addendum governs over any inconsistent terms in the Agreement, which, as amended hereby, is declared to be in full force and effect.

6. **Signing of This Addendum.** An electronic signature of this Addendum will have the same effect as a handwritten signature. This Addendum may be signed in counterparts, which, together, will constitute a single instrument. A signed copy of this Addendum sent by email, facsimile, or other electronic means will be deemed an original for all purposes.

**Signatures appear on following page.**

Buyer's Initials:     1    Seller's Initials: _____

| Buyer: | Seller: |
|---|---|
| ■■■■■■■■■■■■ | Estate of Ho Wan Kwok |
|  | _____ |
|  | By: Luc A. Despins |
|  | Its: Trustee |

**Escrow Agent:**

The Escrow Agent shall hold and disburse the Deposit, and any other money and documents deposited with the Escrow Agent, in accordance with this Agreement.

■■■■■■■■■■■■■■■■

_____

By: ■■■■■■

Title: ■■■■

482731　　　　　　　　　　　　　　　　　　　　　2

## Exhibit 1: Document List

At or before Closing, Seller shall deliver the following documents to Buyer:

**Registration Documents**

1. Certificate of British Registry for the Vessel;

2. transcript of title for the Vessel, showing title to the Vessel in Seller, free and clear of any recorded liens, claims, or encumbrances, dated no more than three business days before Closing;

3. three original bills of sale for the Vessel warranting that the Vessel is transferred to Buyer free and clear of any lien, claim, or encumbrance, in a form recordable in the registry designated by Buyer;

4. two original bills of sale for each of the Vessel's tenders and toys warranting that each is transferred to Buyer free and clear of any lien, claim, or encumbrance, in a form recordable in the registry designated by Buyer;

5. original endorsed titles, registrations, manufacturers' statements of origin, and statements of non-registry, as applicable, for the Vessel's tenders and toys, in a form recordable in the registry designated by Buyer;

**Technical Documents and Certificates**

6. Classification Certificate, if issued and in Seller's possession or control, or if expired, the last expired version;

7. Confirmation of Class Certificate, if applicable, dated no more than seven business days before Closing;

8. Any class and flag state certificates confirming the Vessel's commercial compliance, if issued and in Seller's possession or control, or if expired, the last expired version;

9. the Vessel's logbooks and all plans, blueprints, handbooks, manuals, warranties, and technical data in Seller's possession relating to the Vessel and her machinery and equipment (which will be delivered on board the Vessel), or if issued and in Seller's possession or control, or if expired, the last expired version;

**Corporate Authorization**

10. an order entered by the bankruptcy court in accordance with bankruptcy code section 363, free and clear of all liens, encumbrances, and interests;

At or before Closing, Buyer shall deliver the following documents to Seller:

11. assignment of contract;

Buyer's Initials: ███    3    Seller's Initials: _____

12. certificate of status for Buyer from the appropriate authority in Buyer's jurisdiction, dated no more than five business days before Closing;

13. copies of the certificate of formation, articles of organization, and operating agreement, or equivalent organizational documents, for Buyer, certified by a manager of Buyer to be true copies

14. certificate of incumbency for Buyer, stating the members, managers, and officers, or equivalents, of Buyer; and

15. written consent of the managers of Buyer authorizing the purchase of the Vessel from Seller and confirming the authority of any person signing documents on Buyer's behalf, together with the original of any power of attorney referred to in this consent.

Buyer's Initials: _█████          4          Seller's Initials: _____