**Exhibit 25**

## Bongartz, Alex

| | |
|---|---|
| **From:** | ▮ |
| **Sent:** | Tuesday, May 30, 2023 3:12 PM |
| **To:** | ▮; DAJ@edmiston.com |
| **Cc:** | Despins, Luc A.; Bongartz, Alex |
| **Subject:** | [EXT] Re: Lady May Terms |
| **Attachments:** | ▮Offer LADY MAY - May 30 2023.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

### --- External Email ---

You don't often get email from ▮.  Learn why this is important

Dear Dirk,

On behalf of my client, please find attached an offer for LADY MAY. I understand that the offer is below threshold that the trustees were looking for, however I have a duty to my client to present it.

From previous transactions, the client moves very quickly, and I think he would close well before the July 20th date.

RE the addendum, apologies as we did not receive a clean copy – the signed version is the redline version.

Thank you in advance for your consideration and please do not hesitate to reach out with any questions. I wish you the best of luck with the sale.

Regards,



Begin forwarded message:

> **From:** "Bongartz, Alex" <alexbongartz@paulhastings.com>
> **Date:** May 26, 2023 at 10:56:41 AM EDT
> **To:** Dirk Johnson <DAJ@edmiston.com>, ▮
> **Cc:** "Despins, Luc A." <lucdespins@paulhastings.com>
> **Subject: RE: Lady May Terms**
>
> Dear ▮:
>
> Further to my email below, please see attached an updated draft of the Addendum (clean and redline marked to show changes against the version I had sent you yesterday afternoon).

The only change to the Addendum is the addition of Section 19, which clarifies that the Seller (not the Selling Broker) would confirm receipt of the Deposit (consistent with our other modifications to the PSA, providing that the Deposit is sent to the Seller's account).

Best regards,

Alex

---

**From:** Bongartz, Alex
**Sent:** Thursday, May 25, 2023 5:07 PM
**To:** 'Dirk Johnson' <DAJ@Edmiston.com>; ▮▮▮▮▮
**Cc:** Despins, Luc A. <lucdespins@paulhastings.com>
**Subject:** RE: Lady May Terms

Dear ▮▮▮▮:

Further to Dirks' email below, please see attached:

1. The standard-form of purchase and sale agreement (the "PSA"), with the boxes on top of page 1 and Section 15 filled in (but otherwise not reflecting any modifications);
2. The addendum to the PSA (the "Addendum"), which sets forth our modifications to the PSA; and
3. A clean and redline of a conformed copy of the PSA, showing the modifications we made to the body of the PSA.

We created the redline of the conformed PSA to illustrate our modifications, and it is probably the most useful document to review. However, the operative documents would be standard-form PSA together with the Addendum.

As Dirk mentioned in his email below, to the extent you intend to modify the form of PSA, please include a mark-up of the agreement as part of your bid (such modifications, if any, will be evaluated in determining the highest and/or best offer).

Please contact me if you have any questions.

Best regards,

Alex

---

**G. Alexander Bongartz** | **Of Counsel** | **Financial Restructuring Group**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6472 | Main: +1.212.318.6000 | Fax: +1.212.303.7072 | [alexbongartz@paulhastings.com](mailto:alexbongartz@paulhastings.com) | [www.paulhastings.com](http://www.paulhastings.com)

**From:** Dirk Johnson <DAJ@Edmiston.com>
**Sent:** Wednesday, May 24, 2023 1:06 PM
**To:** ▮
**Cc:** Despins, Luc A. <lucdespins@paulhastings.com>; Bongartz, Alex <alexbongartz@paulhastings.com>
**Subject:** [EXT] Lady May Terms

### --- External Email ---

Dear ▮,

On behalf of trustee representing the Lady May in the chapter 11 cases currently pending in the District of Connecticut, we appreciate your previous offer and interest in the 46m 2014 Feadship Lady May. Due to the fact that the Lady May has received offers from several potential buyers, we are inviting all interested parties to present their best and final offer prior to **Tuesday, May 30th at 5:00 p.m. (EST)**. Such offers should be addressed to the trustee at lucdespins@paulhastings.com. In order to expedite the process, the terms of such offers should include the following:

- Only offers with a purchase price in excess of $20,000,000 will be considered by the trustee;
- Offers must be based on the trustee's form of purchase agreement (we will provide you with the form of agreement by end of day tomorrow, Thursday, May 25);
    - To the extent you intend to modify such form of purchase agreement, please include a mark-up of the agreement as part of your bid (such modifications, if any, will be evaluated in determining the highest and/or best offer);
- The winning bid must provide for a 20% deposit, which deposit must be received within 48 hours after such bid has been selected as the winning bid;
    - The 20% deposit will be forfeited if winning bidder fails to close on purchase of Lady May in accordance with terms of purchase agreement (to be clear, the purchase agreement will allow buyer to terminate the agreement if the survey reveals a defect affecting the operational integrity of the Lady May or her machinery or her systems or renders the Lady May unseaworthy);
- The purchase agreement must be executed by June 9th;
- Acceptance/rejection (based on results of survey) to occur by June 28th;
    - In the event the winning bidder does not close on the purchase at the price set forth in the purchase agreement, the chapter 11 trustee may, at his option, purchase the survey from the buyer, at cost;
- Closing to take place as soon as practical on or before July 20th; and
- All offers are subject to bankruptcy court review and approval.

Thank you for your interest in Lady May. Please do hesitate to call me for questions.

Kind regards,
Dirk Johnson
Edmiston

### Dirk Johnson
Sales Broker

T +1 401 619 2200
M +1 401 965 9189

**Edmiston**
Two Marina Plaza
Goat Island
Newport
Rhode Island, 02840, USA

SALES | CHARTER | NEW CONSTRUCTION | MANAGEMENT

**CYBER FRAUD WARNING** – PLEASE DO NOT ACCEPT ANY NOTICE OF A CHANGE OF ACCOUNT DETAILS BY EMAIL WITHOUT FIRST CONFIRMING WITH US IN PERSON. EDMISTON WILL NOT ACCEPT RESPONSIBILITY FOR FUNDS TRANSFERRED TO THE INCORRECT ACCOUNT.

**Legal Notice**
The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access to this e-mail by anyone else is unauthorised. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be

taken in reliance on it is prohibited and may be unlawful. If you receive this email unintentionally please delete it and contact the sender immediately.

*******************************************************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

**IYBA** INTERNATIONAL YACHT BROKERS ASSOCIATION

# PURCHASE AND SALE AGREEMENT FOR BROKERAGE VESSEL

| BUYER: | SELLER: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok |
|---|---|
| Address: | Address: c/o Paul Hastings LLP, 200 Park Avenue |
|  | New York, New York 10166 |
| Nationality: | Nationality: U.S. |
| **VESSEL NAME:** Lady May | **MANUFACTURER:** Feadship |
| Model: Semi displacement motor yacht | Length Overall: 44.25m |
| Year: 2014 | ☐ Doc or ☑ Reg No.: 745195    Flag: Cayman Is. |
| Hull No.: 688 | Engine Description: Diesel (Caterpillar) |
| Selling Broker: | Listing Broker: Edmiston & Company Limited |
| **IMPORTANT DATES** | **PURCHASE PRICE** |
| Offer Date: May 30, 2023 | Purchase Price: $16,100,000.00 |
| Offer Expiration Date: June 9, 2023 | Less Deposit: $3,220,000.00 [20% of Purchase Price] |
| Accept/Reject Date: June 28, 2023 | Less Trade Allowance (see Addendum): Not applicable |
| Closing Date: on or before July 20, 2023 | Balance: $12,880,000.00 |

**Delivery Location:** International waters, off the coast of Rhode Island
*NOTE: If Vessel is to be moved to the Delivery Location, such location must be specified with precision. The mere listing of a port or city is insufficient.*

ADDITIONAL REGISTERED VESSELS INCLUDED ☑ Yes ☐ No

1. **Agreement.** Buyer agrees to purchase, and Seller agrees to sell, all right, title and interest to and in the Vessel described above on the terms and conditions set forth in this Purchase and Sale Agreement ("PSA"). Capitalized terms used in this PSA refer to the corresponding terms in the table above unless otherwise defined herein. The "Effective Date" of this PSA is the date on which is has been signed by both parties. "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel. Listing Broker and Selling Broker shall be referred to herein as the "Brokers." If there is a Trade Allowance, the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum. If either party fails to sign this PSA and deliver it to the other party on or before the Offer Expiration Date, this PSA will be ineffective.

2. **Deposit.** Within _____ business days (3 business days if left blank) following Seller's signature of this PSA, Buyer shall pay the Deposit to the Selling Broker's account, as acknowledged below, as a deposit toward the Purchase Price to be held subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspections of the Vessel until the Deposit has cleared into the Selling Broker's escrow account.

3. **Survey Option; Acceptance of Vessel; Conditions of Survey.** Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction, in Buyer's sole discretion, with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected. If inspected: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) *Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable*, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay *all* costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Selling Broker on or before the Accept/Reject Date. **Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have accepted the Vessel if it fails to give timely written notice of its acceptance. Upon Buyer's acceptance of the Vessel, Seller will not make** the Vessel pending Closing (defined in Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer

Buyer's Initials: ___   Seller's Initials: ___

This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.

rejects or is deemed to reject the Vessel, after all expenses incurred on Buyer's behalf have been paid, (i) the Selling Broker shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

4. **Closing**. The transfer of Vessel's ownership ("Closing") will occur on the Closing Date at the Delivery Location simultaneously with payment of all funds due from the Buyer and delivery of originals of all other documents necessary for transfer of good and marketable titleto Buyer. If the Vessel must move to the Delivery Location, Seller should not deliver Vessel to the Closing Location unless funds have been paid in full or are being held subject to an escrow conditioned only upon delivery of the Vessel to the Delivery Location and release of title documents to the Buyer. Closing may be facilitated by overnight courier or electronic means. Seller shall deliver the Vessel (as defined in Paragraph 1) to Buyer at the Delivery Location except for fuel consumed during the trial run and any voyage to the Delivery Location. On or before the Closing Date, Seller must deliver to the Selling Broker all documents necessary to transfer title to the Vessel (and all other items hereby required to be delivered) to Buyer. At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) and/or to the Selling Broker for onward transfer to Seller by wire transfer. Any funds Seller owes to (i) the Brokers for the commission, storage, insurance, repairs and/or other items or (ii) the holder of any other Encumbrance, will be deducted from the amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof.

5. **Brokers**. The parties acknowledge that the Selling Broker and Listing Broker are the only brokers that procured this PSA. If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability; provided, however, that in such instance the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price. If the Listing Broker and the Selling Broker are different, the Listing Broker will represent Seller only and owe no duties, fiduciary or otherwise, to Buyer, and the Selling Broker will represent Buyer only and owe no duties, fiduciary or otherwise, to Seller (though paid by Seller). The Brokers are obligated to perform only the duties expressly set forth herein and no implied duties or obligations may be read into this PSA. Seller shall be solely responsible for payment of commission due to the Brokers in connection with the sale of the Vessel as set forth herein. Each party represents and warrants to the other that he has not employed or dealt with any other broker, agent or finder in carrying out the negotiations relating to the sale of the Vessel to Buyer and acknowledges that the Brokers are third-party beneficiaries to this PSA.

6. **Seller's Representations; Requirements for Closing**. Seller represents and warrants that it will transfer to Buyer good and marketable title to the Vessel, free and clear of all debts, claims, maritime or common law liens, security interests, encumbrances, excise taxes, and any other applicable taxes, customs' duties, or tariffs due to any state, country, regulatory and/or taxing authority of any kind whatsoever (collectively, "Encumbrances"). No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing), (c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6, and (e) copies of any other documents necessary for transfer of good and marketable title to Buyer. Seller shall pay any cost associated with, and shall cooperate fully to obtain, any authorization for sale required from any governing authority. Any party which is a legal entity will provide to the other prior to Closing (i) proof that it is in good standing under the laws of the State or other jurisdiction under which the entity has been formed, (ii) a consent action or resolution demonstrating the entity's duly authorized decision to purchase or sell the Vessel as well as the authority of the individual delivering or accepting the Vessel and/or executing this PSA and/or purchase and sales documents,(iii) a power of attorney demonstrating the authority of the individual delivering or accepting the Vessel and (iv) as to Seller, its wire transfer information.

7. **Risk of Loss; *Force Majeure*.** Seller will bear the risk of loss of or damage to the Vessel prior to Closing. If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then (a) Seller must repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, (b) Buyer must pay the Balance and take delivery of the Vessel as repaired, and (c) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel. Either party's obligation to perform will be suspended to the extent required to accommodate unforeseeable events beyond that party's reasonable contro ("*Force Majeure* Events"), including, without limitation, acts of God, acts of terrorism, strikes, lockouts, riots, acts of war, fire, communication line failures, computer viruses, power failures, accidents, tropical storms, hurricanes, earthquakes, or other natural disasters. If a *Force Majeure* Event occurs, the time periods referred to in this PSA, including, without limitation, the Closing Date, will be deemed extended by the time necessary to permit the affected party to perform in accordance with this PSA; provided, however, if the *Force Majeure* Event delays the Closing Date for a period of at more than 30 days, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

8. **Default**. ▇▇▇▇tanding anything herein to the contrary, **if the Deposit is not paid when due** or Closing is not consummated due to Buyer's non▇▇▇▇nce, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the

Buyer's Initials: ▇▇▇▇                                                                                                                                   Seller's Initials: _____

purchase by the Closing Date: (i) the Deposit shall be retained by (or if the Deposit was not paid, Buyer shall pay a like amount to) Seller and the Brokers as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA. Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed.

9. **Sales and Use Taxes**. Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the Selling Broker at Closing. Buyer hereby indemnifies and holds harmless Seller and the Brokers against and from any sales or use taxes for which Buyer is responsible.

10. **REPRESENTATIONS AND WARRANTIES.** SELLER AND THE BROKERS BELIEVE THAT ANY INFORMATION ANY OF THEM HAS PROVIDED ON THE VESSEL IS GOOD AND CORRECT AND OFFER THE INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF SUCH INFORMATION. BUYER WARRANTS AND REPRESENTS, AS OF THE TIME OF CLOSING, THAT IT (A) WILL HAVE FULLY INSPECTED AND MADE A TRIAL RUN OF THE VESSEL (OR HAVE VOLUNTARILY WAIVED THESE RIGHTS) AND (B) IS NOT RELYING ON ANY ADVERTISEMENTS, PROMISES, DESCRIPTIONS, AFFIRMATIONS, OR REPRESENTATIONS (WHETHER ORAL OR WRITTEN, PRIOR TO OR CONTEMPORANEOUS WITH THIS PSA) PROVIDED BY THE SELLER OR BROKERS. UPON CLOSING, BUYER WILL BE DEEMED TO HAVE ACCEPTED THE VESSEL IN ITS *"AS IS"* CONDITION. SELLER AND THE BROKERS HAVE GIVEN NO WARRANTY, EITHER EXPRESSED OR IMPLIED, AND MAKE NO REPRESENTATION AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR MERCHANTABILITY, *ALL OF WHICH ARE DISCLAIMED.*

11. **Financing**. Buyer's obligations are not contingent upon Buyer's obtaining financing. Buyer represents that it will arrange financing, if necessary. Buyer and Seller acknowledge that the Brokers have made no representations or warranties with respect to Buyer's ability to obtain financing, Buyer's qualifications to obtain any type of mortgage on the Vessel, or Buyer's ability to document or register the Vessel in any jurisdiction.

12. **Counterparts**. The parties may sign this PSA in any number of identical counterparts, each of which will be deemed an original (including signatures evidenced via facsimile, email or other electronic means) as if the signatures were upon the same instrument.

13. **Binding Effect; Contemporaneous Contracts; Future Sales**. This PSA is binding on all parties, their heirs, personal representatives and/or assigns. Seller shall not sell the Vessel or enter into any contract for the sale of the Vessel while this PSA is in effect. If a sale is not consummated in accordance with the terms of this PSA, and Buyer and Seller enter into a contract between themselves for the sale of the Vessel, whether directly or through an entity under a party's ownership or control, within two years after this PSA is terminated, Seller agrees to pay the Brokers an amount identical to the commission the Brokers would have received had the transaction contemplated under this PSA closed.

14. **Escrowed Funds**. The parties acknowledge that (a) the Selling Broker will not be responsible for the Deposit until the funds have cleared into the Selling Broker's account, (b) the Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that party, (c) the Selling Broker may retain the commission due the Brokers prior to disbursement of the Deposit or Balance to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment, to have engaged in willful misconduct or acted with gross negligence.

15. **Additional Terms**. See Addendum.

16. **Miscellaneous**. This PSA, including its exhibits and schedules, is the *entire agreement* between the parties pertaining to the subject matter hereof and *supersedes* all prior and contemporaneous negotiations, agreements, representations, warranties, and understandings pertaining thereto, be they in writing, oral, or otherwise. If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall be entitled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings. If any term, condition, or provision of this PSA is held to be unenforceable for any reason, it shall be interpreted to achieve the intent of the parties to this PSA to the extent possible rather than avoided. In any event, all other terms, conditions and provisions of this PSA shall be deemed valid and enforceable. There are no ▮▮▮▮ties, obligations, liabilities, or warranties, implied or otherwise, except as set forth herein. This PSA may not be amended or modified, ▮▮▮▮ writing, signed by Buyer and Seller. Notice and delivery given by or to the attorney or Broker representing any party shall be as e▮▮▮▮s if given by or to that party. All notices must be in writing and may be made by personal delivery, overnight courier, facsimile, em▮▮▮▮her electronic means, and shall be effective upon delivery with proof of delivery retained. Buyer may assign this PSA to

Buyer's Initials: ▮▮▮▮                                                                                                                                              Seller's Initials: _____

any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family Otherwise, neither party may assign this PSA without the other party's consent, which consent shall not be unreasonably withheld. No claim o right arising out of this PSA can be waived or discharged by one party, in whole or in part, unless in writing, nor shall any waiver be applicabl except in the specific instance for which it is given. Paragraph headings are informational and included only for convenience.

17. **Governing Law and Dispute Resolution**. Check (a), (b) or (c). If none checked, (a) will apply.  Any dispute involving this Agreement wil be resolved: **(a)** ☐ in the courts located in the State of _____ (Florida, if left blank), **(b)** ☐ by binding arbitration in the State o _____ (Florida, if left blank), **(c)** ☐ by binding arbitration in London, England. *If (a) or (b) is selected*: (i) this Agreement will b governed by and interpreted according to the law of the State of _____ (Florida, if left blank) regardless of its principles of conflicts-of laws and (ii) the proceedings will be conducted in the county of the main office of the Selling Broker, or if the Selling Broker has no office i Florida, in _____ (Fort Lauderdale, Florida, if no other city indicated). *If (b) is selected*, the Commercial Arbitration Rules o the American Arbitration Association ("AAA") in force when the arbitration is commenced will apply unless the followin rules apply: _____. If the amount in controvery including counterclaims is not more than USI $1,000,000.00, the parties shall jointly select a single arbitrator from the list of arbitrators maintained by the International Yacht Broker Association ("IYBA") within twenty (20) days of the giving of notice of arbitration. If the parties are unable to agree upon the arbitrator, th IYBA shall have the power to make the appointment of the single arbitrator. If the amount in controversy is greater, the parties shall eacl appoint one arbitrator and the two arbitrators will jointly appoint a third arbitrator. If they cannot agree on the third arbitrator within 14 days either party may request that the IYBA appoint the third arbitrator from the list of arbitrators maintained by the IYBA. The decision of th single arbitrator, or if a three abitrator panel, any two of them will be final and binding on the parties. An action may be brought in any cour of competent jurisdiction to enforce any arbitral award or compel arbitration. If (c) is selected: (i) this Agreement will be governed by an interpreted in accordance with English law regardless of its principles of conflicts-of-laws, (ii) the parties irrevocably agree that any disput arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 o any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Paragraph, (iii) th arbitration shall be conducted in accordance with the rules of London Maritime Arbitrators Association ("LMAA") current when the arbitratio is commenced, (iv) if the amount in dispute (including counterclaims) is less than USD$100,000, its Small Claims Procedure will apply, while i greater than or equal to USD$100,000 and less than USD$400,000, its Intermediate Claims Procedure will apply. Whatever option is selected the parties irrevocably submit to the exclusive jurisdiction of such court or arbitral forum, waive any objection they now or hereafter may hav to venue or c_____ of forum, agree that all claims relating to the proceeding will be decided only in such court or arbitral forum and further, not t_____ aim relating to this Agreement in any other court or arbitral forum. The parties, having had the opportunity to seel legal counsel, _____ y jury for claims arising under this Agreement, whether against each other or any Broker.

**BUY[REDACTED]**

Print: _____
Title: _____
Date: _____

**SELLER:**

Print: _____
Title: _____
Date: _____

**SELLING BROKER DEPOSIT CONFIRMATION (Subject to clearance of funds)**

Print: _____
Title: _____

Amount: _____
Date: _____

Buyer's Initials: _____        Seller's Initials: _____

This form was prepared for the exclusive use and benefit of the members of the IYBA. The parties and Brokers hereby release the IYBA from any liability for damages resulting from or related to its use. The IYBA expressly disclaims any and all warranties, including merchantability and fitness for a particular purpose, related to the use of this form.

**Addendum to Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, Between (i) Luc A. Despins, as the Chapter 11 Trustee for the Estate of Ho Wan Kwok and (ii) ▮▮▮▮▮▮▮▮▮▮▮▮ (the "Addendum")**

Capitalized terms used but not defined herein have the meanings set forth in the Purchase and Sale Agreement for Brokerage Vessel, executed on May 30, 2023, with respect to the Lady May (the "PSA"). For the avoidance of doubt, any reference to the PSA (whether in this PSA or the Addendum) shall be to the PSA as modified by this Addendum.

1. Luc A. Despins is party to the PSA solely in his capacity as the chapter 11 trustee for the estate of Ho Wan Kwok, and not in his personal capacity. Accordingly, no claim whatsoever may be asserted by Buyer against Mr. Luc A. Despins in his personal capacity or Paul Hastings LLP.

2. The PSA and all terms in the PSA are subject to approval of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), in which court the chapter 11 case of Ho Wan Kwok, Case No. 22-50073 (the "Chapter 11 Case"), is pending.

3. Notwithstanding anything in the PSA to the contrary, the Bankruptcy Court shall have exclusive jurisdiction over any claim or dispute in respect of or arising out of the PSA, and the parties and the Brokers irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court, waive any objection they now or hereafter may have to venue or convenience of forum, agree that all claims relating to the PSA will be decided in such court, and, further, not to bring any claim relating to the PSA in any other court. For the avoidance of doubt, all provisions in Section 17 of the PSA regarding the arbitration of any dispute involving the PSA are hereby deleted.

4. Notwithstanding anything in the PSA to the contrary, the PSA is governed by and interpreted according to the law of the State of New York regardless of its principles of conflicts-of-laws.

5. The fourth and fifth sentences in Section 1 of the PSA are hereby modified as follows:

    "Vessel" also includes all gear, machinery, equipment, furniture, fuel, consumables, and all registered or unregistered tenders, toys, articles and appurtenances on board the Vessel and/or included on the Vessel's listing specification as of the date of this **PSA. There will be no Exclusions List.** ~~Agreement, except for items listed on the Exclusions List provided by the Seller or Listing Broker on the earlier of (a) five days from the Effective Date or (b) the Accept/Reject Date, which items are not included in the sale. Buyer will be deemed to have accepted the Exclusion List if it accepts the Vessel.~~ **For the avoidance of doubt, the Lady May II is not included as part of the sale of the Vessel pursuant to this PSA.**

6. The eighth sentence in Section 1 of the PSA is hereby modified as follows:

1

**There shall be no** ~~If there is a~~ Trade Allowance **in connection with the sale of the Vessel pursuant to this PSA**, ~~the conditions of the trade-in will be governed by the attached Trade-In Vessel Addendum.~~

7. Section 2 of the PSA is hereby modified as follows:

   ~~Within _____ business days (3 business days if left blank)) following Seller's signature of this PSA,~~ **On [-----], 2023,** Buyer **paid**~~shall pay~~ the Deposit to the **Seller's**~~Selling Broker's~~ account, as acknowledged below, as a deposit toward the Purchase Price to be held **in escrow** subject to the terms of this PSA. Seller may refuse to permit Buyer to proceed with the trial run, survey and other inspection of the Vessel until the Deposit has cleared into the **Seller's**~~Selling Broker's~~ escrow account.

8. Section 3 of the PSA is hereby modified as follows:

   Buyer's obligation to purchase the Vessel is subject to Buyer's satisfaction~~, in Buyer's sole discretion,~~ with a trial run and survey of the Vessel though Buyer may elect not to have the Vessel inspected**; provided, however, that Buyer may only reject the Vessel if the surveyor (who shall be a duly qualified marine surveyor whose day-to-day business is occupied with surveying of vessels of a similar quality to and value of the Vessel) certifies in writing that it discovered defects that affect the operational integrity of the Vessel or her machinery or her systems or renders the Vessel unseaworthy. For the avoidance of doubt, Buyer may not reject the Vessel on any other grounds.** If **the Buyer decides to have a survey conducted**~~inspected~~: (a) Buyer will select the surveyor, (b) the surveyor, and not the Brokers, will be the sole party responsible for any errors or omissions with respect to the survey, notwithstanding that the Brokers may have provided information to and assisted Buyer with hiring the surveyor, (c) Seller shall make the Vessel available and Buyer shall complete the trial run and survey as soon as practicable**, such that the survey is completed prior to the Accept/Reject Date**, (d) Seller shall pay all running expenses for, and assume the risks associated with, the trial run, and Buyer shall pay all costs of the survey, including associated costs, e.g., haul-out, dry dock, and subcontractors' charges, (e) Buyer and its surveyor will be solely responsible for determining the scope of the survey and the trial run to assess the Vessel's conformity with Buyer's requirements and (f) Buyer shall deliver written notice of rejection or acceptance of the Vessel to Seller or the Listing Broker on or before the Accept/Reject Date. Whether or not Buyer has inspected the Vessel, Buyer will be deemed to have **accepted**~~rejected~~ the Vessel if it fails to give timely written notice of its **rejection**~~acceptance~~ **in accordance with this PSA**. Upon Buyer's acceptance of the Vessel, Seller will not make any use of the Vessel pending Closing (defined in

2

Paragraph 4) except to move the Vessel to the Delivery Location. If Buyer rejects or is deemed to reject the Vessel **in accordance with this PSA and is not otherwise in breach of this PSA**, ~~after all expenses incurred on Buyer's behalf have been paid,~~ (i) the **Seller**~~Selling Broker~~ shall return the Deposit to Buyer, (ii) this PSA will terminate, and (iii) the parties and the Brokers will be released from any further liability hereunder. The Brokers will not be responsible for the cost to correct any defects or deficiencies noted during the trial run and survey.

9. The sixth sentence in Section 4 of the PSA is hereby modified as follows:

    At Closing, Buyer shall pay the Balance to Seller (subject to Paragraph 6) **and the Deposit shall be released to Seller, subject to the deduction in the immediately following sentence**~~and/or to the Selling Broker for onward transfer to Seller by wire transfer~~. Any funds Seller owes to ~~(i)~~ the Brokers for the commission, storage, insurance, repairs and/or other items **(which are subject to approval of the Bankruptcy Court)**~~or (ii) the holder of any other Encumbrance,~~ will be deducted from the ~~amount due Seller by the Selling Broker prior to disbursement of funds to Seller, which hereby irrevocably instructs any Deposit holder to pay the Commission from the Deposit to the Brokers pursuant to the terms hereof~~**Deposit and paid to the Brokers prior to the release of the Deposit to Seller. For the avoidance of doubt, the order of the Bankruptcy Court approving the sale of the Vessel to Buyer shall provide that the Vessel is being sold free and clear of any Encumbrances, with any Encumbrances attaching to the proceeds of the sale.**

10. The second sentence of Section 5 of the PSA is hereby modified as follows:

    If the Listing Broker and the Selling Broker are the same brokerage, the parties consent to that Broker acting as a dual-agent in this transaction, i.e., representing both Buyer and Seller~~, and the Broker may disclose to both parties facts known to the Broker materially affecting the Vessel's value or desirability~~; provided, however, that in such instance **(a)** the Broker shall not, without Seller's consent, disclose to Buyer that Seller is willing to sell the Vessel for an amount less than the asking price **and (b) the Broker have no duties to the Buyer in connection with the sale of the Vessel**~~or, without Buyer's consent, disclose to Seller that Buyer is willing to pay a price greater than the offering price~~.

11. The second sentence of Section 6 of the PSA is hereby modified as follows:

    No less than two (2) business days before Closing, Seller shall deliver to Buyer (a) satisfactory evidence of title, (b) proof of payment or removal of all Encumbrances (except for those encumbrances that will be paid in full at closing)**, which proof may be the order entered by the**

3

**Bankruptcy Court approving the sale of the Vessel (and which order shall provide that the Vessel is being sold to Buyer free and clear of any Encumbrances)**, ~~(c) a guaranty and indemnification from Seller guaranteeing Seller's representations and warranties in this Paragraph 6, (d) if Seller is a legal entity, a personal guaranty and indemnification from Seller's beneficial owner(s) guaranteeing Seller's representations and warranties in this Paragraph 6,~~ and (**c**~~e~~) copies of any other documents necessary for transfer of good and marketable title to Buyer.

12. The second and third sentences of Section 7 of the PSA are hereby modified as follows:

    If the Vessel is damaged subsequent to Buyer's acceptance and the necessary repairs will cost less than five percent (5%) of the Purchase Price and require fewer than 30 days to complete, then**, at the Seller's option,** ~~(a)~~ Seller **may**~~must~~ repair the damage prior to Closing in accordance with sound marine practices to the standard of the Vessel immediately prior to the damage and Buyer may inspect such repair, **in which case (a**~~b~~) Buyer **shall**~~must~~ pay the Balance and take delivery of the Vessel as repaired~~,~~ and (**b**~~e~~) the Closing Date will be extended by the length of the repair period. If the Vessel is damaged to a greater extent subsequent to Buyer's acceptance **or Seller does not exercise the option in the foregoing sentence**, either party may terminate this PSA with the same consequences as if Buyer had rejected the Vessel.

13. Section 8 of the PSA is hereby modified as follows:

    Notwithstanding anything herein to the contrary, if ~~the Deposit is not paid when due or~~ Closing is not consummated due to Buyer's non-performance, including, without limitation, failure to pay the Balance or execute all documents necessary for completion of the purchase by the Closing Date: (i) the Deposit shall be retained by ~~(or if the Deposit was not paid, Buyer shall pay a like amount to)~~ Seller ~~and the Brokers~~ as liquidated and agreed damages, as consideration for the execution of this PSA, in full settlement of all claims between the parties, (ii) the Selling Broker shall return to Buyer any other funds received from Buyer, and (iii) the parties will be relieved of all obligations under this PSA**, provided, however, that in the event that, after the Bankruptcy Court has approved this PSA, the Closing is not consummated due to Buyer's non-performance, Seller shall pay to the Listing Broker an amount equal to $200,000 out of the Deposit, which amount shall count against, and reduce, any commission that the Listing Broker may earn (in accordance with its engagement letter with Seller) if a sale of the Vessel is consummated with a different buyer**. ~~Buyer and Seller agree that the Deposit will be applied first to payment of any unpaid costs or expenses that Buyer or Broker incurred against the Vessel and then divided fifty percent (50%) to the Seller and fifty percent (50%) to the Brokers, which the Brokers shall divide in the same~~

4

proportions as the commission would have been divided had a sale been consummated. If the Closing is not consummated due to Seller's non-performance **(which, for the avoidance of doubt, shall not include the Bankruptcy Court declining to approve this PSA)**, the Deposit, and any other money paid or deposited by Buyer, pursuant to this PSA, will be returned to Buyer upon demand or Buyer will have the right of specific performance. Seller agrees that specific performance is reasonable in light of the uniqueness of the Vessel, difficulty of proof of loss, and the inconvenience or impossibility of otherwise obtaining an adequate remedy. **If Closing is not consummated due to Seller's non-performance** On Seller's default, Seller shall forthwith pay the Brokers the same commission otherwise payable had the transaction closed**; provided, however, that the Bankruptcy Court declining to approve this PSA shall not constitute non-performance on the part of Seller. In the event the Bankruptcy Court does not approve this PSA, this PSA shall be deemed terminated with the same consequences as if Buyer had rejected the Vessel in accordance with this PSA. Notwithstanding anything in this PSA to the contrary, if the Closing is not consummated for any reason (including (a) due to the Buyer's non-performance of its obligations under this PSA, (b) the Bankruptcy Court does not approve this PSA, or (c) the Buyer rejects the Vessel in accordance with this PSA), Seller shall have the option to purchase the survey from Buyer at cost and, if the Seller exercises this option, Buyer shall provide the complete survey to Seller immediately upon payment of the cost of such survey.**

14. The first sentence of Section 9 of the PSA are hereby modified as follows:

    Sales or use taxes payable on Buyer's purchase of the Vessel, if applicable, are Buyer's responsibility, and Buyer shall pay the taxes due to the **Trustee** Selling Broker at Closing.

15. The following sentence is hereby added after the first sentence of Section 11 of the PSA:

    **Buyer represents and warrants that it has sufficient cash and/or financing to fund the Purchase Price at Closing. Buyer also represents and warrants that it is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok.**

16. Section 14 of the PSA are hereby modified as follows:

    The parties acknowledge that (a) the **Seller** Selling Broker will not be responsible for the Deposit until the funds have cleared into the **Seller's** Selling Broker's account, (b) the **Seller** Selling Broker shall hold the Deposit in escrow once the funds have cleared and any other funds received by either Broker from any party will be held in trust for that

5

party, (c) the **Seller**~~Selling Broker~~ **shall pay, in accordance with this PSA,** ~~may retain~~ the commission due the Brokers prior to **the release**~~disbursement~~ of the Deposit ~~or Balance~~ to Seller, and (d) in any dispute involving any funds held by the Brokers, Buyer and Seller will indemnify the Brokers for legal fees and costs relating in any way to the dispute, including those incurred in any appeals (which obligation is secured by a lien on the escrowed funds) and those relating to a claim for a commission, except as to a Broker found, in a final non-appealable judgment **of the Bankruptcy Court**, to have engaged in willful misconduct or acted with gross negligence.

17. The second and third sentences of Section 16 of the PSA are hereby modified as follows:

    If a Broker becomes a party to any litigation involving this PSA, the Broker shall be reimbursed for their reasonable costs and attorney's fees, at all pretrial, trial and appellate levels, by the party or parties found to have breached this PSA**, unless such Broker is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**. In the event of any dispute between the parties hereto arising out of the subject matter of this PSA, the prevailing party (including the Brokers) shall been titled to recover reasonable expenses, attorney's fees and costs for all pretrial, trial and appellate proceedings**, unless such prevailing party is found, in a final non-appealable judgment of the Bankruptcy Court, to have engaged in willful misconduct or acted with gross negligence**.

18. The ninth and tenth sentences of Section 16 of the PSA are hereby modified as follows:

    ~~Buyer may assign this PSA to any member(s) of Buyer's immediate family or any entity owned or controlled by Buyer and/or any member(s) of his immediate family. Otherwise,~~ **N**~~n~~either party may assign this PSA without the other party's consent~~, which consent shall not be unreasonably withheld~~.

19. In the signature block on page 4 of the PSA, the phrase "Selling Broker Deposit Confirmation (Subject to clearance of funds)" is hereby modified to read: "Seller Deposit Confirmation (Subject to clearance of funds)".

**Seller**

By: _____

Name: Luc A. Despins, as chapter 11 trustee for the estate of Ho Wan Kwok

Date: _____

6

**Buyer**

By: ███

Name: ███

Title: ███

Date: ███

7