UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*,[1] | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC AND MEI GUO TO TRUSTEE'S MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002, 6004(c), AND 9014, AND LOCAL RULES 6004-1 AND 6004-2, SEEKING ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF THE LADY MAY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

HK International Funds Investments (USA) Limited, LLC and Mei Guo (collectively, the "HK Parties"), by and through their undersigned counsel, hereby object to the Motion of Luc A. Despins, Chapter 11 Trustee (the "Trustee"), Pursuant to Bankruptcy Code Sections 105 and 363, Bankruptcy Rules 2002, 6004(c), and 9014, and Local Rules 6604-1 and 6004-2, Seeking Entry of an Order: (i) Authorizing and Approving Sale of the *Lady May* Free and Clear of Liens, Claims, Interests, and Encumbrances; (ii) Authorizing and Approving Purchase and Sale Agreement, and (iii) Granting Related Relief (the "Sale Motion"), and in support thereof, states as follows:

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

**INTRODUCTION**

1.    The Trustee's Sale Motion presents the following question to the Court: under what circumstances may a trustee unilaterally impose a marketing and bidding process without affording advance notice to all parties-in-interest and an opportunity to object, without full compliance with Local Bankruptcy Rule 6004-2(d) and (e), and without this Court's imprimatur, only to seek after-the-fact approval of its self-invented sale procedure?

2.    The Trustee has offered no legitimate justification to disregard the universally accepted practice of seeking *pre*-approval for his sale process. There is no Luc A. Despins, Trustee or Paul Hastings LLP exception. Sale procedures are intended to protect the integrity of the sale process and the interests of creditors. They should have been approved in advance before being implemented by the Trustee. They should have conformed with LBR 6004-2(d) and (e). The Sale Motion should be denied because the Trustee did not follow the rules.

3.    The Sale Motion also should be denied because the Trustee has failed to allow any discovery of his communications with his Broker (defined below), prospective purchasers, the few bidders who submitted formal offers, and the Buyer (as defined below). There has been no ability to test whether the Trustee obtained the maximum value for one of the most significant assets of the of the bankruptcy estate, nor to determine whether the final discounted, below list price offer, obtained after a remarkably short period, is fair and reasonable.

4.    Without parties in interest having had any prior opportunity to discover necessary and critical facts about the sale process, and in light of the known defects in that process highlighted below, the Court should not be persuaded by the Trustee's untested submissions at the sale hearing regarding value and reasonableness, and should deny the Sale Motion.

**BACKGROUND**

5.  The Trustee filed the Sale Motion on June 2, 2023 (Docket No. 1858). By the Sale Motion, as amended, the Trustee seeks this Court's approval for the sale of the *Lady May* to Herb Chambers Yachting, LLC (the "Buyer"), for $23,150,000.

6.  The list price initially agreed upon between the Trustee and his retained broker for the yacht, Edmiston and Company Limited (the "Broker"), was $26,500,000. Declaration of Dirk Johnson in Support of the Sale Motion (the "Broker's Declaration") at 2, ¶ 4 (Docket No. 1858). No rationale for that list price has been provided by the Trustee or the Broker. Moreover, contrary to Rule 6004-2(b)(4) of this Court's Local Rules, the Trustee has failed to obtain any appraisal or other formal valuation of the *Lady May*.

7.  In addition to the above shortcomings, the Trustee did not obtain advance Court approval of the bidding procedures relating to his solicitation of offers to purchase the *Lady May*. Sale Motion at 4, ¶ 6. No minimum bid amount, bid deadline, form of purchase agreement, or other common bid procedures were disclosed by the Trustee in advance to the Court or parties in interest for review. Instead, the Trustee -- no doubt desperate to generate sale proceeds quickly to fund his enormous legal fees -- orchestrated a sale process hidden from view.

8.  In support of his unusual actions, the Trustee relies almost exclusively on grandiose descriptions of his Broker's "extensive marketing campaign" conducted "[c]onsistent with best industry practices," including contact with "approximately 10,000 clients and other potentially interested parties…." Sale Motion at 2-3, ¶¶ 2-3; at 9, ¶¶ 23-24. For all such effort, from these thousands of contacted parties, only five bidders emerged. And of the five bidders, only one, the bidder deemed unilaterally by the Trustee to have submitted the highest and best offer, has been identified.

9. During the closed-door bidding process, the Trustee submits that he countered the five bids he received, each of which was materially below the list price, with a proposed sale price of $23 million. No basis for a counteroffer in that amount has been offered by the Trustee or the Broker.

10. The Trustee then unilaterally imposed a final bid deadline within about a month after the commencement of marketing and with only six days' notice to bidders. Sale Motion at ¶28 (email notice to bidders of the May 30, 2023 deadline sent on May 24).

11. At a hearing conducted in this case on April 27, 2023, the Trustee conceded that he was likely to receive "very low bids from some … bottom fishers." Transcript of April 27, 2023 hearing, p. 23 (Docket No. 1754). He then represented to the Court that he "was not in a rush to sell" the *Lady May* and that similar vessels "don't get sold on two-weeks, three-weeks, or two-months notice. It can be a long process." *Id*. at p. 24. The Sale Motion was filed a mere 36 days later, only five weeks after the Broker's retention was approved. (Docket No. 1717).

12. As initially filed, the Sale Motion sought approval of a sale in the amount of $24 million. On June 19, 2023, however, the Trustee filed a Supplement to the Sale Motion (Docket No. 1913), stating that the Buyer had conducted a survey of the ship, as permitted in the sale contract, which uncovered certain alleged defects. As a result, the Trustee negotiated a reduction of the purchase price with the Buyer.

13. The Trustee asserts in the Supplement (at 2, ¶ 3), that he will further explain and offer evidence of the circumstances that resulted in the price reduction, but to date he has not provided creditors, other parties-in-interest, or the Court with any relevant facts – not a copy of the Buyer's survey, not an explanation of the defects, and not a basis for the reasonableness of the

$850,000 reduction in the purchase price, which already was $2,500,000 less than the list price. Instead, the Trustee has actively sought to avoid providing the HK Parties with that information.[2]

14. On June 14, 2023, nearly two weeks before the scheduled hearing on the Sale Motion, the HK Parties sent subpoenas to the Trustee and the Broker, seeking basic deposition and document discovery regarding the sale, including with respect to the sale timing, marketing, bidding conditions, and negotiation of price and other terms.

15. The subpoenas seek customary information about a sale of a significant asset by a bankruptcy trustee, including copies of communications between and among the Trustee, the Broker, and potential buyers. The HK Parties sought to question the Trustee and the Broker regarding, among other things, the undisclosed other bidders and bids, the basis for the initial listing price and the Trustee's counteroffer, the timing of the sale, and other information relevant to the reasonableness of the sale process, the Buyer's good faith, and the other statutory requisites of 11 U.S.C. § 363.

16. Rather than provide the HK Parties with the information requested by the subpoenas, on June 19, 2023, the Trustee filed an Emergency Motion for Entry of Order, Pursuant to Bankruptcy Rules 9014(c) and 9016, Quashing Subpoenas and Confirming that HK Parties Are

---

[2] The HK Parties are creditors and parties-in-interest who have standing to be heard on the Sale Motion. 11 U.S.C. § 1109(b). The HK Parties' claims arose post-bankruptcy, when HK USA was stripped of its title ownership of the *Lady May*, and Ms. Guo became potentially liable as the guarantor of the loan that funded the escrow to secure the return of the *Lady May* to Connecticut—funds over which the Trustee seeks to take control to pay administrative and other claims.

The Trustee has argued in the Motion to Quash (defined below) that HK USA "has no ability to exercise legal rights in litigation ... without the Trustee's permission...." Motion to Quash at 9, ¶ 25. But the Trustee misconstrues the effect of the Alter Ego SJ Order (as defined in the Motion to Quash). That decision, which is not a final order, nowhere finds that the individual debtor and HK USA are "one and the same," or that the Trustee has any beneficial or other ownership of HK USA. Notwithstanding the Alter Ego SJ Order, HK USA has continued to appear on its own behalf in this bankruptcy case and in related adversary proceedings and appeals. The Trustee cannot deny HK USA its right to do so.

Not Entitled to Discovery in Connection with Trustee's *Lady May* Sale Motion (the "Motion to Quash") (Docket No. 1912).[3]

17.     The Court should deny the Sale Motion at this time.  Among other things, the Trustee has failed to (a) obtain a formal valuation of the Lady May; (b) justify his self-invented and extraordinarily expedited bid process, including the bases for the list price, bidding schedule, accelerated bid requirements, and his counteroffer; and (c) disclose (i) his communications with the Broker and interested bidders, (ii) the identity of the unsuccessful bidders and the amount of their bids, and (iii) the alleged defects that resulted in a reduction to the purchase price and the basis for the amount thereof.

## LEGAL ARGUMENT

### A.     Applicable Legal Standards

18.     Section 363(b)(1) of the Bankruptcy Code provides for the use, sale or lease of property of the bankruptcy estate outside of the ordinary course of business under appropriate circumstances.  In order for a sale to be approved, the Trustee must demonstrate and the Court must find a "sound business reason" for the proposed transaction.  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (reversing sale order where court did not articulate business justification for the sale); *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 410 (Bankr. S.D. Tex. 2009) (rejecting sale motion where "debtors have not demonstrated a substantial business reason" for the sale).

19.     In addition to finding that a sound business justification exists, the Court "must be satisfied that 'the proposed sale price is fair and reasonable.…'"  *In re Boston Generating, LLC*, 440 B.R. 302, 330 (Bankr. S.D.N.Y. 2010) (emphasis added) (citing *In re General Motors Corp.*,

---

[3] Copies of the HK Parties' subpoenas are attached to the Motion to Quash as Exhibits B and C, and attached to each subpoena is a Schedule of Documents to be produced by each of the parties with regard to the sale of the *Lady May*.

407 B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009). The burden of proof is on the Trustee. *See In re Flour City Bagels, LLC*, Docket No. 16-20213-PRW, 2016 Bankr. LEXIS 3231, at *81 (U.S. Bankr. W.D.N.Y. Sep. 2, 2016) (denying motion to sell free and clear where debtor had "failed to carry its burden to introduce evidence to prove the value of Flour City's assets in proportion to the proposed sale price"); *see also In re Taylor*, 198 B.R. 142, 157 (Bankr. D.S.C. 1996); *WBQ Ptnr. v. Va. Dept. of Medical Assistance Servs. (In re WBQ Ptnr.)*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

20. When, pursuant to section 363 of the Bankruptcy Code, "a [trustee] desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold. In general, to receive approval of a proposed sale of assets, the debtor will need to demonstrate to the bankruptcy court that the proffered purchase price is the highest and best offer." *In re Integrated Resources*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd* 147 B.R. 650 (S.D.N.Y. 1992).

21. Simply put, the Trustee owes a fiduciary duty to creditors of the bankruptcy estate in selling the estate's property. *See In re Flour City Bagels, LLC*, 2016 Bankr. LEXIS 3231, at *64; *In re Family Christian, LLC*, 533 B.R. 600, 621 (Bankr. W.D. Mich. 2015). In order to fulfill his fiduciary duty, the Trustee must demonstrate, and the Court must determine, that the sale is designed to obtain the maximum economic value. *In re Family Christian, LLC*, 533 B.R. at 621; *see also Douglas v. Stamco*, 363 F. App'x 100, 103 (2d Cir. 2010).

22. A typical method of maximizing value is to hold a competitive and transparent sale for the subject property. The price achieved at auction through "competition by an appropriate number of bidders" is ordinarily assumed to approximate market value. *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288-90 (B.A.P. 9th Cir. 2005).

Bankruptcy courts will reject sale procedures that preclude or inhibit competitive bidding. *See Pacificorp Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.)*, 233 B.R. 739, 751 (W.D. Ky. Dec. 14, 1998); *In re Bidermann Indus. U.S.A.*, 203 B.R. 547, 550 (Bankr. S.D.N.Y. 1997). Bankruptcy sales should be conducted to "drum up the best price obtainable for the creditors" rather than to "cut off other possible sales." *In re Bidermann Indus. U.S.A.*, 203 B.R. at 552.

23. Thus, courts often prefer public bankruptcy sales that provide for multiple parties to bid, ensuring that the maximum value is realized. *In re Planned Systems, Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988) (denying motion to conduct private sale, because of insufficient evidence of property's value and noting that the court "generally favors a public sale of property of the estate as opposed to a private sale"); *see also Bank of Am. Nat. Trust and Sav. Ass'n v. 203 N. La Salle P'ship*, 526 U.S. 434, 457, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999) ("the best way to determine value is exposure to a market" rather than a determination by a bankruptcy judge); *In re Excello Press, Inc.*, 890 F.2d 896, 905 (7th Cir. 1989) (price obtained from commercially reasonable auction is the market value). To be meaningful, the duration of the marketing and bid processes should be sufficient to provide prospective buyers with a full and fair opportunity to learn about the sale and meaningfully participate.

**B.      The Trustee Failed to Maximize Value and Cannot Demonstrate that the Consideration to Be Paid by the Buyer Is Fair and Reasonable**

      **(i)      The Trustee Failed to Properly Market the *Lady May***

24. The Trustee purports to have extensively marketed the *Lady May,* but his effort lasted just slightly more than a month after the Broker was retained on April 27, 2023, through the unilaterally imposed bid deadline of May 30, 2023.

25. The Trustee has refused to respond to discovery requests from the HK Parties that would allow them to investigate the Trustee's bidding process, instituted without prior disclosure or Court approval. The HK Parties were not permitted to explore whether the Trustee seriously considered any other available sale alternatives, including a longer marketing period to generate more than a handful of interested parties and more robust bidding. Unsurprisingly, and based on the Trustee's abbreviated timeframe related to the sale, the Trustee chose to file the Motion to Quash the subpoenas served on him and his Broker. It begs the question why the Trustee has conducted such an abbreviated sale process – roughly a month from the Broker's retention – to sell the largest asset in the estate.

26. The Sale Motion does disclose that of the 10,000 or more potential purchasers contacted by the Broker, only five prospective buyers emerged, and those few made offers anywhere from $6,500,000 to $8,500,000 below list price. Sale Motion at 10, ¶26. Notwithstanding that only a handful of below list price offers were received, rather than continuing to market the yacht the Trustee countered the bottom-fishing bidders with a proposed sale price of $23 million, resulting in one bidder increasing its bid to only $20 million. *Id*. Apparently becoming desperate, the Trustee thereafter imposed an arbitrary deadline for prospective bidders to submit final and best bids, with a minimum bid of $20 million. Sale Motion at 10, ¶28.

27. According to the Sale Motion, the Trustee then again received five formal bids, two of which did not meet the minimum bid price of $20 million. Sale Motion at 10, ¶29. After speaking privately with the three remaining bidders, one bidder eventually increased its proposed purchase price to $24 million. Sale Motion at 10, ¶30. It appears that the only actual proposal the Trustee seriously considered was from the Buyer.

### (ii) The Trustee Has Not and Cannot Demonstrate That the Consideration Paid Is Fair and Reasonable

28. The Trustee cannot meet his burden of demonstrating that the consideration to be paid by the Buyer to the estate is "fair and reasonable." *See In re Boston Generating, LLC*, 440 B.R. 302, 330 (Bankr. S.D.N.Y. 2010) (emphasis added) *citing In re General Motors Corp.*, 407 B.R. at 493-94. Under appropriate circumstances, the fair and reasonable value of property to be sold may be ascertained through a competitive bidding process. *See Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288-90 (B.A.P. 9th Cir. 2005). But the complete absence of any disclosures and communications from the Trustee and the Broker regarding the prospective bidders and unsuccessful bidders, including the amount of their bids and the extraordinarily limited duration of the marketing and bidding process, supports a conclusion that the sale process was not fairly designed to maximize value. The Trustee's disclosure of a single proposal from the Buyer cannot support a finding that the offer price is fair and reasonable. *See In re Nicole Energy Servs.*, 385 B.R. 201, 234 (Bankr. S.D. Ohio 2008).

29. Nor does the Sale Motion supply any other basis to determine the reasonableness of the consideration to be paid by the Buyer in exchange for the *Lady May*. The Trustee has not obtained an appraisal or any type of valuation of the *Lady May*. The sole basis for the reasonableness of the proposed purchase price in the Sale Motion is a purportedly robust marketing process that was needlessly accelerated and that the Trustee has failed to expose to pre-hearing discovery.

30. As an additional protection to ensure the realization of maximum value, Local Bankruptcy Rule 6004-1(a) provides for the appraisal of property to be sold outside of the ordinary course. If there was ever a case when an appraisal is absolutely warranted, it is when,

as here, there has been no pre-approved sale process to encourage competitive bidding and the timeframe for the process to take place is substantially abbreviated.

31. The efforts by the Trustee to ignore the protections afforded to the estate's creditors under Local Bankruptcy Rule 6004-1(a) is one more reason that a Court-sanctioned sale process needs to be conducted and the Sale Motion must be denied.

### C. The Trustee Conducted an Unauthorized Auction Sale in Contravention of Applicable Rules and the Protections Offered to Creditors and the Estate

32. The Trustee's after-the-fact characterization of the proposed transaction as a "private" sale is completely disingenuous. It cannot seriously be disputed that the Trustee unilaterally imposed a public sale/competitive bidding/auction process, which should be subject to applicable rules, including Local Bankruptcy Rule 6004-2(d) and (e). This Court need look no further than the representations and arguments made by the Trustee himself in the Sale Motion.

33. The Trustee seeks approval precisely because the sale was public and the product of competitive bidding. The Trustee touts having "secured a winning bid for the Sale of the Lady May." Sale Motion ¶ 1. That bid "represents the highest and best bid obtained after an extensive marketing campaign conducted by the Trustee's yacht broker, … followed by a competitive bidding process among multiple bidders." *Id*.

34. Initially, five prospective buyers submitted formal offers (the "Initial Bids"). *Id*. at ¶ 3. Then, the Trustee unilaterally established a bid deadline "to submit best and final bids." *Id*. at ¶ 4. "This bid deadline was designed to maintain maximum momentum with the Initial Bidders and other interested parties." *Id*. The Trustee unilaterally imposed bidding conditions. *Id*. at ¶¶ 4 and 27. The bidding terms and deadline were marketed to more than 1,857 other yacht brokers and on Yatco.com. *Id*. at ¶ 28. The Trustee then received five formal bids by the bid deadline he established. *Id*. ¶¶ 5 and 29. He attempted to negotiate with each of them, one increased their

offer, and then the Trustee selected that offer as the highest and best bid now presented to this Court for approval. *Id*. ¶¶ 5 and 30.

35. It also cannot be seriously disputed that the universally accepted practice is to seek and obtain prior approval, after due notice and a hearing, for marketing and bidding procedures to facilitate the sale of property of the estate. *See, e.g., In re Sakon*, 2023 Bankr. LEXIS 1584, No. 19-21691(JJT) (Bankr. D. Conn. June 16, 2023) (Tancredi, J.). In this district, the sale procedures should further conform with the specific requirements set forth in Local Bankruptcy Rule 6004-2(d) and (e).

36. The Trustee's attempt to justify not seeking pre-approval of his sale procedures is nonsensical and patently false. He argues that a competitive bidding process would have discouraged bidding, only to then argue that the competitive bidding process he unilaterally imposed maximized value. The Trustee contends that

> conducting an auction would likely have discouraged potential buyers from bidding and/or making their best offer. Potential buyers would likely not have participated in a process that would have exposed them to the risk of overpaying (if selected as the winning bidder in an auction), and, to the extent they would have participated in such a process, they would likely have discounted their bids to reflect that risk.

Sale Motion at ¶ 38; *see also id*. at ¶¶ 6 and 39. Of course, the Trustee engaged in a public sale process through a broker, which culminated in a sealed bid auction through the bid deadline he imposed. The submission of sealed bids poses the greatest risk that bidders overpay because they do not know the amount of the bids they are competing against. And yet, five bidders submitted such bids. Directly undermining his feigned excuse for not seeking this Court's pre-approval, the Trustee argues repeatedly that the sale was the result of a competitive bidding process. *See id*. at ¶¶ 7 and 41.

37. The Trustee's claim that pre-approval of his sale procedures would have delayed the sale process is equally unavailing. He has obtained from this Court numerous expedited hearings, and there is no reason to believe this Court would have denied him such a request with respect to his proposed sale procedures for the *Lady May*. Approval could have been obtained in a matter of days as has been done in so many other instances in this case. In fact, if this Court had denied him an expedited hearing, presumably the Court would have been justified in doing so. The Court would also have been justified if it had imposed—perhaps even at the request of other parties-in-interest, such as HK USA, who asserts a disputed ownership interest in the Lady May– a more comprehensive sale process than then one unilaterally imposed by the Trustee. For the same reason, the Trustee's concern over "the delay associated with pursuing an auction process would also require the Trustee to continue incurring the substantial cost of maintaining the Lady May," *id*. at ¶ 40, is entirely pretextual. Again, pre-approval would have required only days unless this Court was fully justified in imposing a longer marketing and bid submission process.

38. It is plain and simple. The Trustee did not want to comply with Local Bankruptcy Rule 6004-2(d) and (e). The Trustee did not want other parties to be heard, or this Court, perhaps persuaded by the arguments of others, to alter his unilaterally determined sale procedures. That is the abundantly obvious reason that he did not seek this Court's approval. This Court should not find that acceptable. To approve the Sale under these circumstances would establish an extremely unfortunate precedent in this district. The Sale Motion should be denied.

**CONCLUSION**

39. The Trustee should not be rewarded for his failure to follow basic bankruptcy sale procedures, and for his utter lack of transparency in the sale process. The HK Parties should be given a reasonable opportunity to determine the reasonableness of the sale negotiations and final sale terms, and advocate for an alternative sale process than the one unilaterally imposed by the Trustee.

40. In addition, given the indisputable deficiencies in the sale process, the untested assertion that the Buyer "may attempt to walk and terminate [its] obligations to purchase the Lady May," Sale Motion at 28, ¶55, and the distinct possibility that the Trustee can do better if that happens, the Court should not waive the stay of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure but allow the HK Parties the appropriate time to consider an appeal of any sale approval.

41. Finally, if a sale of the *Lady May* ultimately is approved, the Court should order that the sale proceeds be escrowed pending a final determination of the competing interests in the *Lady May*, and continue to be subject to such competing interests including those held by HK USA.

Dated: June 23, 2023  
Roseland, New Jersey

*/s/ Sam Della Fera, Jr.*
Sam Della Fera, Jr. (admitted *pro hac vice*)
sdellafera@csglaw.com
Lee Vartan (admitted *pro hac vice*)
lvartan@csglaw.com
Melissa F. Wernick (admitted *pro hac vice*)
mwernick@csglaw.com
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 325-1500
Facsimile: (973) 325-1501
*Attorneys for Mei Guo and HK International Funds Investments (USA) Limited, LLC*

*and*

Aaron A. Romney (ct28144)
aromney@zeislaw.com
James M. Moriarty (ct21876)
jmoriarty@zeislaw.com
**ZEISLER & ZEISLER PC**
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5485
*Local Counsel for Mei Guo and HK International Funds Investments (USA) Limited, LLC*

4886-3868-3499.v1

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: June 23, 2023  
Roseland, New Jersey

/s/ Sam Della Fera, Jr.  
Sam Della Fera, Jr. (admitted *pro hac vice*)  
sdellafera@csglaw.com  
Lee Vartan (admitted *pro hac vice*)  
lvartan@csglaw.com  
Melissa F. Wernick (admitted *pro hac vice*)  
mwernick@csglaw.com  
**CHIESA SHAHINIAN & GIANTOMASI PC**  
105 Eisenhower Parkway  
Roseland, NJ 07068  
Telephone: (973) 325-1500  
Facsimile: (973) 325-1501  
*Attorneys for Mei Guo and HK International Funds Investments (USA) Limited, LLC*

and

Aaron A. Romney (ct28144)  
aromney@zeislaw.com  
James M. Moriarty (ct21876)  
jmoriarty@zeislaw.com  
**ZEISLER & ZEISLER PC**  
10 Middle Street, 15th Floor  
Bridgeport, CT 06604  
Telephone: (203) 368-4234  
Facsimile: (203) 368-5485  
*Local Counsel for Mei Guo and HK International Funds Investments (USA) Limited, LLC*

4886-3868-3499.v1