**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                             :

In re:                       :    Chapter 11
                           :

HO WAN KWOK, *et al*.,[1]     :    Case No. 22-50073 (JAM)
                           :

        Debtors.        :    (Jointly Administered)
                           :
-------------------------------------------------------x

**TRUSTEE'S REPLY IN SUPPORT OF MOTION, PURSUANT TO**
**BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002,**
**6004(c), AND 9014, AND LOCAL RULES 6004-1 AND 6004-2, SEEKING ENTRY**
**OF ORDER: (I) AUTHORIZING AND APPROVING SALE OF THE LADY MAY**
**FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES,**
**(II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT,**
**AND (III) GRANTING RELATED RELIEF**

Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the

chapter 11 case of Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel,

hereby files this reply (the "Reply") in support of the *Trustee's Motion, Pursuant to Bankruptcy*

*Code Sections 105 and 363, Bankruptcy Rules 2002, 6004(c), and 9014, and Local Rules 6004-1*

*and 6004-2, Seeking Entry of Order: (I) Authorizing and Approving Sale of the Lady May Free*

*and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing and Approving*

*Purchase and Sale Agreement, and (III) Granting Related Relief* [Docket No. 1858] (as

supplemented on June 19, 2023, the "Sale Motion")[2] and in response to (i) the objection of HK

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation.  The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not defined herein shall having the meanings set forth in the Sale Motion, including the supplement thereto [Docket No. 1913] (the "Supplement").

1

International Funds Investments (USA) ("HK USA") and Mei Guo (together with HK USA, the "HK Parties") to the Sale Motion [Docket No. 1939] (the "HK Objection") and (b) the objection of Jenny Li [Docket No. 1933] (the "Jenny Li Objection" and, together with the HK Objection, the "Objections").  In addition, the Trustee has attached hereto as **Exhibit A** a revised proposed order (the "Revised Proposed Order") reflecting the terms of the Second Addendum to the PSA and certain minor clarifications requested by the Buyer.[3]  In further support of the Sale Motion, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.     Given this Court's summary judgment ruling that the Lady May is property of the estate, the HK Parties—who are not and never have been creditors of the estate—have no interest in ensuring that the Lady May is sold in a value-maximizing sale, which is the Trustee's sole objective here.  In fact, the HK Parties seek the exact opposite result: to prevent a sale of the Lady May to anyone at all costs while they pursue their appeal of this Court's summary judgment ruling.  But the only way for the HK Parties to obtain the relief they seek is through a stay pending appeal, not through a meritless collateral attack on the Sale Motion, which they lack standing to pursue.[4]  For this reason alone, the HK Parties' objection should be overruled.

2.     But even if the HK Parties had standing (which they do not), the Court should overrule the HK Objection on the merits.  As detailed in the Sale Motion, and as will be

---

[3]    A redline of the Revised Proposed Order marked to show changes against the proposed order attached to the Sale Motion is attached hereto as **Exhibit B**.  One of the clarifications requested by the Buyer concerns the guest tender for the Lady May that is stored inside the Lady May.  There is no question that this guest tender is part and parcel of the Lady May (indeed, it is registered as such with the Cayman Islands registry), but the Buyer requested that the sale order make clear that the Buyer is acquiring this guest tender as part of the Sale.  To be clear, this tender is **not** the Lady May II.

[4]    *See* Motion to Quash (as defined below) (explaining the HK Parties cannot seek discovery because they have not obtained stays of the Court's Lady May SJ Order and Alter Ego SJ Order, which terminate any stake the HK Parties may have had in the Lady May and any authority to issue subpoenas related to the Sale).

2

demonstrated in further detail at the hearing on the Sale Motion (the "Sale Hearing"), the sale process conducted by the Trustee and his yacht broker, Edmiston and Company Limited ("Edmiston"), was thorough, consistent with industry standards, and has achieved a resoundingly successful result that is in the best interests of the estate.  Perhaps most tellingly, ***no party in interest***, including those parties who clearly ***do*** have an economic interest in the sale, such as the creditors' committee and the estate's largest unsecured creditor, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has raised any objection or even concern regarding the sale and marketing process or the proposed Sale by the Trustee to the Buyer.[5]

3.      Moreover, while the Trustee did not conduct a public auction of the Lady May, there is no requirement—whether under the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules—that a sale under section 363 of the Bankruptcy Code must be at a public auction. Nor do the Local Rules require (contrary to the HK Parties' assertion) that bankruptcy sales must be preceded by court-approved bidding procedures.  Instead, Local Rule 6004-2(d) merely set forth the provisions to be contained in a sale procedures motion, ***if one is filed***.

4.      Here, after consultation with his broker, Edmiston, the Trustee determined that, given the nature of the property to be sold (*i.e.*, a luxury superyacht) and the fairly small universe of potential bidders (*i.e.*, high net-worth individuals), a public auction would not have been the best course of action.  In a public auction, all bidders would have seen each others' bids, which would have caused bidders to discount their bids so as to avoid overpaying.  However, the Trustee's role and approach is the exactly the opposite, *i.e.*, to maximize value for the estate.  To that end, only the Trustee, but not other bidders, should have all the information regarding bids,

---

[5]    As detailed below, the objection filed by Jenny Li mistakenly assumes that ***Mr. Kwok*** is trying to sell the Lady May.  Obviously, if that were the case, the Trustee would be the first to oppose any such attempts.  However, in reality, it is the Trustee who is seeking to sell the Lady May for the benefit of Mr. Kwok's creditors.

so that the Trustee can give guidance to bidders, but use the information imbalance to his advantage in negotiations.  Accordingly, as will be further explained at the Sale Hearing, the Trustee pursued a sale process with features designed to ensure active participation by prospective buyers, including a May 24, 2023 deadline to submit final and best bids, making this, in effect, a "hybrid" private/public sale.  All of this was previewed with the Court at the May 23, 2023 status conference and disclosed to all interested parties a week before the bid deadline. Moreover, this hybrid approach was designed to maximize value to give creditors and parties in interest comfort that the critical aspects of a public sale were incorporated.  Indeed, because the winning bid is subject to bankruptcy court approval, it was generally understood that the Trustee would have to consider higher and/or better offers (as noted in the Sale Motion).  Thus, everyone had an opportunity to show up in this Court and top the winning bidder—but no one has, which provides strong support that the best price was obtained.

5.      The HK Parties' purported "concerns" with the process—for example, that out of the thousands of brokers contracted only "five" interested parties submitted bids or that the bid deadline was set only one month after Edmiston had been retained—are red herrings.  Putting aside that a total of seven (not five) interested parties submitted letters of intent or formal bids during the sale process, there is nothing "suspicious" about the fact that only a handful of parties ultimately submitted formal bids.  This is simply a function of the limited universe of potential buyers who have the financial wherewithal and interest in purchasing a superyacht.  In any event, in a typical sale of a superyacht of the size of the Lady May, it is customary that only two or three parties submit bids (not five, let alone seven, parties).

6.      Nor was the sale process "rushed."  In fact, the Lady May has been on-and-off the market since 2016 (with multiple brokers), so that interested buyers in this market were already

generally familiar with the Lady May.[6]  Regardless, high net-worth individuals seeking to purchase a superyacht like the Lady May are fully capable of making a quick decision and, in fact, expect to be able to close quickly on a sale once they have made an offer.  The best example of this is the Buyer here, who requires a closing by June 30, 2023.

7.      Finally, and again contrary to the HK Parties' assertion, the Local Rules do not require the Trustee to first obtain an appraisal of the Lady May to establish its value.  As explained in the Sale Motion, Local Rule 6004-2(b)(4) merely requires that the Trustee put forth a "description of the means by which the movant determined the fair market value of  the property to be sold."  The Trustee submits that, by exposing the Lady May to an extensive and competitive sale process, the purchase price reflected in the PSA (as supplemented on June 19, 2023) is the best evidence of market value.

8.      For all these reasons, and as further detailed below, the Objections should be overruled and the Trustee respectfully requests that the Court enter the Revised Proposed Order approving the Sale of the Lady May to the Buyer.

## ADDITIONAL RELEVANT BACKGROUND

### A.    HK Parties' Ongoing Efforts to Prevent Sale

9.      Since the filing of the Sale Motion, the HK Parties have sought to impede the Sale through discovery and other motion practice.  On June 14 and 16, 2023, the HK Parties emailed the Trustee's counsel subpoenas demanding depositions and document productions "in connection with the Lady May Sale" from the Trustee and the Trustee's broker.  The dates for the proposed depositions were June 20 and 21, respectively.  Because the HK Parties lack

---

[6]    The Lady May's long history of being marketed for sale should also put to bed any argument that the Lady May has any sort of "sentimental value" for Mei Guo.

standing to be heard on the Sale Motion, the Trustee filed a motion on June 19, 2023 [Docket No. 1912] (the "Motion to Quash") seeking to quash the Subpoenas.  On June 22, 2023, the HK Parties filed their objection to the Motion to Quash and moved for an adjournment of the sale hearing [Docket No. 1926] ("Objection to Motion to Quash"), and on June 25, 2023, the Trustee filed his reply in further support of the Motion to Quash [Docket No. 1942].  The hearing on the Motion to Quash has been scheduled for June 27, 2023 at 11:00 a.m. (ET).

10.     In addition, on June 19, 2023—*i.e.*, almost ***three months*** after entered the order declaring that the Lady May is property of the Debtor's estate (the "Lady May SJ Order") [Docket No. 172 in Adv. Proc. No. 22-5003], more than ***two months*** after the HK Parties filed their notice of appeal from the Lady May SJ Order [Docket 197 in Adv. Proc. No. 22-5003]—the HK Parties filed their motion to stay the Lady May SJ Order pending their appeal [Docket No. 239 in Adv. Proc. No. 22-5003] (the "Stay Motion").

11.     The HK Parties inexplicably delayed filing their Stay Motion even though the Trustee has made abundantly clear for several months now, including in court filings as early as April 5, 2023 [Docket No. 1637], that he intended to sell the Lady May.  *See also* Docket Nos. 1675, 1696, 1744, 1758.  On June 23, 2023, the Trustee filed his objection to the Stay Motion [Docket No. 246 in Adv. Proc. No. 22-5003].  As of the date of this Reply, no stay has been entered with respect to the Lady May SJ Order.

**B.     Survey of Lady May and Agreed-Upon Reduction in Purchase Price**

12.     As noted in the Sale Motion, the PSA allows the Buyer to reject the Lady May following the completion of the survey, but only if the surveyor certifies in writing that it

discovered "defects that affect the operational integrity of the [Lady May] or her machinery or her systems or renders the [Lady May] unseaworthy."[7]

13.    Between June 12 and 16, 2023, Patton Marine of Miami, Florida, performed a survey of the Lady May for the Buyer.  The Trustee's expert, Dexter White of Engineering Operations & Certification Service, LLC ("EOCS"), attended the survey on June 13 and June 14 to review the deficiencies found during the inspection of the Lady May and witness the Lady May's performance during the sea trial.  EOCS was able to validate deficiencies identified by Patton Marine with respect to the following items: the sanitary management system (black water tank), electrical shore power converters, diesel generators, and the navigation data system.[8]

14.    Because certain of these defects, in the view of the Buyer, arguably affect the operational integrity of the Lady May's systems (which would have allowed the Buyer to rejected the Lady May and terminate the PSA), the Trustee entered into negotiations with the Buyer regarding a reduction of the Purchase Price.  These negotiations resulted in an agreed-upon reduction of the Purchase Price by $850,000, *i.e.*, from $24 million to $23.15 million, as reflected in the second addendum to the PSA (the "Second Addendum").[9]  This reduction is consistent with the estimated cost of correcting the above deficiencies.

15.    But the cost estimate is ultimately irrelevant.  If the Buyer could establish, as certified by a qualified marine surveyor, that these deficiencies "affect the operational integrity of the [Lady May] or her machinery or her systems," then the Buyer would have been able to

---

[7]    As further explained in the Sale Motion, this language was added by the Trustee in order to limit a buyer's ability to reject the Lady May following the completion of a survey of the Lady May.  Under the standard IYBA Form, a buyer may reject a vessel for ***any*** reason following the completion of a survey.

[8]    The Trustee will provide additional evidence regarding the nature and scope of these deficiencies at the Sale Hearing.

[9]    A copy of the Second Addendum is attached as Exhibit A to the Supplement.

terminate the PSA.  Such termination would have been value destructive for the estate, as it is highly uncertain whether the Trustee would be able to sell the Lady May for a purchase price of more than $20 million to another bidder.  In fact, following agreement on the Second Addendum, the Trustee reached out to the next highest bidder to inquire whether he would be interested in purchasing the Lady May at a price higher than $23.15 million, but the bidder declined.  The Trustee is also informed that the third highest bidder has determined to purchase a different yacht and is no longer interested in purchasing the Lady May.  The Trustee's decision to sell to the Buyer at the reduced Purchase Price is thus clearly in the estate's best interests.

16.     On June 19, 2023, the Trustee filed the Supplement to the Sale Motion advising the Court and parties in interest of the reduction in the Purchase Price and attaching a copy of the Second Addendum.

## **REPLY**

### A.     **HK Parties Lack Standing to Object to Sale Motion**

17.     As the Trustee explained in his Motion to Quash, neither HK Party is a creditor of the Debtor's estate or otherwise a party in interest who has legally cognizable interests in this chapter 11 case.  Section 1109(b) of the Bankruptcy Code defines "party in interest" to include the debtor, any trustee, creditors, and any official committees.  11 U.S.C. § 1109(b).  Although this list of persons is not exhaustive, the law is clear that "party in interest" status is limited to those persons who have "a direct financial stake in the [particular] proceeding in which [they] seek[] to be heard."  *In re China Fishery Grp. Ltd. (Cayman)*, No. 16-11895 (JLG), 2018 WL 6824074, at *3 (Bankr. S.D.N.Y. Dec. 27, 2018).

18.     This Court has already ruled, in the Lady May SJ Order, that the HK Parties have no ownership interest in the Lady May, and that order was effective immediately upon entry and, hence, final.  Accordingly, the HK Parties have no stake in the sale of the Lady May.  They are

8

not creditors who stand to benefit from the estate's receipt of the sale proceeds, nor do they have any other interest in the outcome of the Sale. Thus, they have no right to be heard.[10]  Indeed, as demonstrated by the HK Objection and the HK Parties' various attempts to derail the Sale of the Lady May, the interests of the HK Parties are diametrically opposed to the interest of the Debtor's estate and his creditors.

19.     The conclusion that the HK Parties do not have standing is not affected by the HK Parties' pending appeal of the Lady May SJ Order.  In the absence of a stay pending appeal (as is the case here), it cannot be disputed that once the court has rejected a party's claimed basis for having an interest in a chapter 11 case, such party no longer has the right to be heard in that case. *See In re Kreisler Group, Inc.*, 648 F.2d 86, 88 (2d Cir. 1981) ("We think that with respect to these and Seventh Avenue's other objections to the confirmation of the plan of arrangement, Seventh Avenue now has no standing to object, in view of the valid determination that it is not a creditor.").  Accordingly, because the HK Parties have not obtained a stay, the fact that they have appealed the Lady May SJ Order is meaningless.  *See In re Bicoastal Corp.*, 146 B.R. 492, 494 (Bankr. M.D. Fla. 1992) ("Since the last controlling Order entered by this Court is one which disallowed the claims of California and Mathews and there is no stay granted pending appeal, neither California nor Mathews have at this time an allowed claim and, therefore, they do not have a right to vote. The fact that the Order of Disallowance is challenged on appeal is of no

---

[10]   For the same reasons, the HK Parties also do not have constitutional standing or prudential standing to object to the Sale.  The doctrine of prudential standing is a threshold issue that bars litigants from asserting the rights of others in an effort to obtain relief for injury to themselves. *Motors Liquidation*, 580 B.R. at 340 (quoting *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 643 (2d Cir. 1988)) (citations omitted). Similar to the prudential standing requirements, for constitutional standing, "[a] party can only assert its own legal rights and cannot assert the rights of third parties." *Id.* at 341.  "To establish Article III [constitutional] standing, a party must show (1) an injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) the injury is fairly traceable to the conduct complained of, and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *In re Copperfield Investments, LLC*, 421 B.R. 604, 610 (Bankr. E.D.N.Y. 2010).

moment because no stay pending appeal was sought or obtained.").  Unless and until the HK Parties prevail on their appeal of the Lady May SJ Order or obtain a stay of such order pending its appeal, they plainly have no standing to be heard on the Sale Motion.

20.     The Trustee anticipates (based on the HK Parties objection to the Motion to Quash) that they will claim that Mei Guo must have standing because she now faces liability as guarantor of the alleged "loan" HK USA received from the Debtor's criminal co-conspirator, William Je, a/k/a "Uncle William."  But even assuming that the loan is real (which it is not), Mei Guo has not even attempted to file a proof of claim, contingent or otherwise, based on her alleged guarantor liability.[11]

21.     Moreover, HK USA cannot oppose the Sale Motion in light of the Court's May 18 ruling that the Debtor owns and controls HK USA as his alter ego (the "<u>Alter Ego SJ Order</u>"). The HK Parties can, of course, pursue their appeal of the Alter Ego SJ Order, and the Trustee has never contended otherwise.  However, the HK Parties cannot—absent a stay pending appeal— take any other actions that are inconsistent with the Court's ruling, including exercising other legal rights that are now property of the estate, such as objecting to a sale motion.  *See* Motion to Quash ¶ 25.  Otherwise, any creditor whose claim is disallowed could continue to be heard in a chapter 11 case potentially for years, even though such creditor has no legal stake in the case.

22.     For all these reasons, the HK Parties do not have standing to object to the Sale Motion, and, therefore, their objection should be overruled.

---

[11]   The argument that Mei Guo's alleged guarantee of the purported loan gives her standing is also inconsistent with the HK Parties' argument that the Court's ruling on the Trustee's *alter ego* claim does not collapse HK USA into the estate but, rather, merely renders the estate the owner of HK USA's assets. *See* Objection to Motion to Quash ¶¶ 10-11.  If that is the result of the Court's *alter ego* ruling, then any claim Mei Guo may end up holding on account of her alleged guarantee liability would be a claim against HK USA, not against the chapter 11 estate.

**B.**     **Sale of Lady May Does Not Require a Full Public Auction Pursuant to Court-Approved Bidding Procedures**

23.     The HK Parties' argue that the Trustee conducted an unauthorized public sale in contravention of applicable Local Rules.  The crux of their argument is that the Sale supposedly was a *de facto* public sale that required the Court's pre-approval and compliance with Local Rules 6004-2(d) and (e).  The HK Parties are wrong.

24.     As an initial matter, Local Rule 6004-2(d) does not provide that every sale requires pre-approval of sale procedures.  Nor is there anything in the Local Rules that would have required pre-approval of bidding procedures even if the Trustee had conducted a public auction.  Instead, Local Rule 6004-2(d) merely sets forth the provisions that should be included in a sale procedures motion *if* a trustee or debtor seeks approval of such procedures.  Here, the Trustee did *not* seek approval of bidding procedures because he determined that a full public auction was not in the best interest of the estate and would not have resulted in a value-maximizing sale.  Instead, for the reasons already explained in the Sale Motion and as will be further detailed at the Sale Hearing, the Trustee determined, after consultation with Edmiston, that a "hybrid" sale would yield the best result for the estate.  Adding certain features of an auction process, such as setting a bid deadline and a minimum bid does not transform the sale process into a full public auction.  Indeed, a party conducting a private sale is free to impose a reasonable process to consummate the sale in the best interests of the estate, as the Trustee did here.

25.     In particular, in order to maximize value for the estate, only the Trustee, but not other bidders, should have all the information regarding bids, so that the Trustee can give guidance to bidders, but use the information imbalance to his advantage in negotiations.  Moreover, given the types of bidders involved here (*i.e.*, high net-worth individuals), a full

public auction where bidders would have seen each other's bids would have help bidders achieve their goal of not overpaying, which, again, would have been inconsistent with the Trustee's objective of maximizing value of the estate. And, crucially, the sale process here ensured that bidders have the opportunity to top the winning bidder before the Sale Hearing—but no one has, which is strong support for the conclusion that the Purchase Price is the highest and best offer.

26.     Furthermore, contrary to the HK Parties assertion, the Trustee is not seeking to preclude parties in interest from being heard on the adequacy of the sale process. Quite the contrary. The Sale Motion and the Johnson Declaration lay out in detail the process undertaken by the Trustee and Edmiston to achieve the Sale now before the Court. All parties in interest had an opportunity to review these materials and, if they had any concerns, could have objected to the Sale Motion. However, ***no party in interest***, including the creditors' committee and the estate's largest unsecured creditor, PAX, has raised any objections or concerns with respect to the marketing process or the proposed Sale by the Trustee to the Buyer. And this is hardly surprising, given that the sale process conducted here achieved a resoundingly successful result with a purchase price much better than anyone could have expected.

27.     The HK Parties further assert that the "universally accepted practice is to seek and obtain prior approval, after due notice and a hearing, for marketing and bidding procedures to facilitate the sale of property of the estate." HK Objection ¶ 35. However, the case they rely on in support of this statement, *i.e.*, *In re Sakon*, No. 19-21691(JJT), 2023 WL 4056936 (Bankr. D. Conn. June 16, 2023), involved a sale of ***real property***, which, under the Local Rules, ***requires*** a public sale (absent relief from the court). There is nothing in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules that would require a public auction for the sale of personal property such as the Lady May.

28.     For all these reasons, the Trustee submits that the sale process conducted here was proper and did not violate Local Rules 6004-2(d) and (e).

**C.     Sale of Lady Maximizes Value and Complies With Other Local Rules**

29.     The Court should reject the remaining arguments raised by the HK Parties seeking to cast doubt on the value-maximizing nature of the Sale.  Contrary to the HK Parties' assertions, an appraisal of the Lady May is not required by Local Rule 6004-1(a) or necessary under the circumstances to prove the reasonableness of the Sale.  Local Rule 6004-1(a) provides that a party selling estate property must provide "evidence of value of the property."  By exposing the Lady May to the superyacht marketplace through Edmiston's connections, and by providing evidence of such exposure, the Trustee has more than sufficiently demonstrated the value of the Lady May through a robust marketing campaign and competitive bidding process.  Regardless, at the Sale Hearing, the Trustee's yacht broker will provide his views on the value of the Lady May.

30.     The HK Parties' other purported "concerns" with the sale process are inapposite and, if anything, demonstrate a lack of understanding of the market for luxury superyachts.  For one, it is not at all surprising that, even though thousands of brokers were contacted by Edmiston, only a handful of bidders ultimately emerged.  This is simply a function of the limited universe of potential buyers who have the financial wherewithal and interest in purchasing a superyacht such as the Lady May.  In fact, participation was more than robust.  In a typical sale of a superyacht of the size of the Lady May, it is customary that only two or three parties submit bids (not five, let alone seven, parties).

31.     Nor was the sale process "rushed."  In fact, the Lady May has been on-and-off the market for several years now, meaning that interested buyers in this market were already generally familiar with the Lady May.  In any event, high net-worth individuals seeking to

purchase a superyacht like the Lady May are fully capable of making a quick decision and, in fact, expect to be able to close quickly on a sale once they have made an offer.

32.     Finally, there is nothing suspicious about the agreed-upon reduction in the Purchase Price from $24 million to $23.15 million following the completion of the Buyer's survey.  The Trustee submits that the agreed-upon Purchase Price reduction of $850,000 is commensurate with the cost of repairing the deficiencies identified during the survey.  But, as noted, the cost estimate is ultimately irrelevant.  Unless the deficiencies revealed by the survey were addressed, the Buyer could arguably have rejected the Lady May and terminated the PSA (which would have also required the return of the Deposit).  In that event, the Trustee would have lost the Sale, and, moreover, would have had to restart the marketing and sale process, which would have been value destructive for the estate.  As noted above, following agreement on the Second Addendum, the Trustee reached out to the next highest bidder to inquire whether he would be interested in purchasing the Lady May at a price higher than $23.15 million, but the bidder declined.  The Trustee is also informed that the third highest bidder has determined to purchase a different yacht and is no longer interested in purchasing the Lady May.  And the next highest formal bid received was approximately $16 million.  While the Trustee would, of course, reach out again to other parties, there can be no assurance that such parties would be interested in bidding on the Lady May, much less at or near the Purchase Price under the PSA.

**D.      Jenny Li Objection Should Be Overruled**

33.     The objection filed by creditor Jenny Li also lacks merit and, therefore, should be overruled.  The Trustee appreciates the concerns raised by Ms. Li regarding the Sale, but it is apparent that her objection mistakenly assumes that the Sale before the Court is a sale by ***Mr. Kwok***.  That is obviously not the case.  In fact, if Mr. Kwok were to try to sell the Lady May or

14

the sale had been orchestrated by him or his proxies, the Trustee would be the first one to vigorously oppose such a sale.  For that reason, the Trustee insisted that the PSA include a representation by the Buyer that he "is not affiliated with or related to Ho Wan Kwok and/or is not acting on behalf of or at the behest of Ho Wan Kwok."

34.    Here, as the Court is aware, the ***Trustee*** is requesting approval to sell the Lady May for the benefit of the Debtor's estate and his creditors.  For these reasons, the Jenny Li Objection should be overruled.

## CONCLUSION

35.    For all these reasons, the Trustee respectfully submits that the Court should grant the Sale Motion, overrule the Objections, and enter the Revised Proposed Order.

*[Remainder of Page Intentionally Left Blank.]*

Dated: June 26, 2023

LUC A. DESPINS
CHAPTER 11 TRUSTEE

By: */s/ G. Alexander Bongartz*

G. Alexander Bongartz (admitted *pro hac vice*)
Douglass Barron (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
alexbongartz@paulhastings.com
douglassbarron@paulhastings.com

    *and*

Nicholas A. Bassett (admitted *pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

    *and*

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
HO WAN KWOK, *et al*.,[1]                              :    Case No. 22-50073 (JAM)
                                                       :
                    Debtors.                           :    (Jointly Administered)
                                                       :
-------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 26, 2023, the foregoing Supplement was electronically filed. Notice of this filing was sent by e-mail to all parties to the above-captioned chapter 11 case by operation of the Court's electronic filing ("<u>CM/ECF</u>") system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Dated:      June 26, 2023              By: */s/ G. Alexander Bongartz*
            New York, New York             G. Alexander Bongartz (admitted *pro hac vice*)
                                           PAUL HASTINGS LLP
                                           200 Park Avenue
                                           New York, New York 10166
                                           (212) 318-6079
                                           alexbongartz@paulhastings.com

                                           *Counsel for the Chapter 11 Trustee*

---

[1]   The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## Exhibit A

**Revised Proposed Order (clean)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------x
                          :

In re:                      :    Chapter 11
                          :

HO WAN KWOK, *et al.*,[1]    :    Case No. 22-50073 (JAM)
                          :

        Debtors.        :    (Jointly Administered)
                          :
---------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363, BANKRUPTCY RULES 2002 AND 6004(c) AND LOCAL RULES 6004-1 AND 6004-2, (I) AUTHORIZING AND APPROVING SALE OF THE LADY MAY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), pursuant to pursuant to sections 105, 363(b), and 363(f) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6004-2 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut (the "Local Rules"), seeking entry of an order (i) authorizing and approving the Trustee's sale (the

---

[1]    The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2]    Capitalized terms used but not defined herein shall having the meanings set forth in the Motion or the PSA, as applicable; provided, however, no capitalized terms used herein shall in any way be modified, amended, or supplemented in the PSA after this Order becomes final.

"Sale") of the Lady May[3] to Herb Chambers Yachting, LLC (the "Buyer") free and clear of all liens, claims, interests and encumbrances pursuant to that certain purchase and sale agreement, dated May 30, 2023, by and among the Buyer and the Trustee (together with the related addenda, dated May 30, 2023 and dated June 19, 2023, the "PSA"), (ii) authorizing and approving the PSA, and (iii) granting related relief, all as further detailed in the Motion; and hearing on the Motion having been held (the "Hearing"); and this Court having reviewed and considered the Motion, the declaration of Dirk Johnson (the "Johnson Declaration") in support of the requested relief, and all objections thereto, and the arguments made by counsel and evidence adduced at the Hearing; and it appearing the terms of the PSA are in the best interests of the Debtor, the estate, creditors and other parties in interest; and after due deliberation thereon, and good cause appearing therefor,

**THE COURT HEREBY FINDS THAT**:[4]

### Jurisdiction and Final Order

A.      This Court has jurisdiction to hear and determine the approval of the Sale and the PSA under 28 U.S.C. §§ 1334 and 157, and the *Standing Order of Reference* from the United States District Court for the District of Connecticut.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]     For purposes of the sale under the PSA, the term "Lady May" consists all assets to be sold pursuant to the PSA, including all gear, machinery, equipment, furniture, fuel, consumables, all registered or unregistered tenders, toys, articles and appurtenances on board the Lady May and/or included on the Lady May's listing specification as of the date of the PSA (*i.e.*, May 30, 2023).  For the avoidance of doubt, the Lady May II is not included as part of the Sale.

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary under Bankruptcy Rule

9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy

Rule 7054, this Court expressly finds that there is no just reason to delay the implementation of

this Order, and expressly directs entry of judgment as set forth herein.  The Buyer, being a good

faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated

by the PSA at any time after the entry of this Order and shall not be subject to the stay provided

by Bankruptcy Rules 6004(h).

### Notice of Sale

C.      Actual written notice of the Motion, the Hearing, and a reasonable opportunity to

object or be heard with respect to the Motion and the relief requested therein, has been afforded

to all known interested persons or entities.

D.      As evidenced by the certificates of service previously filed with this Court: (i)

due, proper, timely, adequate and sufficient notice of the Motion, the Hearing, the entry of this

Order, the Sale, and the relevant objection deadlines has been provided to all parties-in-interest;

(ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this

chapter 11 case, provided a fair and reasonable opportunity for parties-in-interest to object, and

to be heard, with respect thereto, and was provided in accordance with the Bankruptcy Code,

Bankruptcy Rules, and the applicable Local Rules; and (iii) no other or further notice of such

matters is necessary or shall be required.

### Business Judgment

E.      The Trustee has demonstrated good, sufficient, and sound business purposes and

justifications for, and compelling circumstances to promptly consummate, the Sale and such

action is an appropriate exercise of the Trustee's business judgment and in the best interests of

the Debtor, his estate, and his creditors.  Such business reasons include, but are not limited to, the

facts that: (i) the Purchase Price and the other terms set forth in the PSA constitute the highest or

otherwise highest and best offer received for the Lady May; (ii) the Sale on the terms set forth in

the PSA presents an orderly and expeditious sale of the Lady May and the best opportunity to

maximize the value of the Lady May; and (iii) unless the Sale is concluded expeditiously as

provided for in this Order and pursuant to the PSA, potential creditor recoveries may be

substantially diminished.

## **Marketing Process**

F.      As demonstrated by the Motion, the Johnson Declaration, the testimony and other

evidence proffered or adduced at the Hearing, and the representations of the Trustee and his

counsel made on the record at the Hearing: (i) the Trustee and his broker, Edmiston and

Company Limited ("Edmiston"), engaged in a robust and extensive marketing and sale process;

(ii) the Trustee and his advisors conducted a fair and open sale process; (iii) the sale process was

non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to

make an offer to purchase the Lady May; and (iv) the process conducted by the Trustee obtained

the highest and best value for the Lady May for the Trustee and the Debtor's estate.

## **Fair Consideration; Highest or Best Value**

G.      The consideration to be provided by the Buyer under the PSA is fair and

reasonable consideration for the Lady May and constitutes (i) reasonably equivalent value under

the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable

Transactions Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii)

reasonably equivalent value, fair consideration, and fair value under any other applicable laws of

the United States, any state, territory or possession or the District of Columbia. Such consideration constitutes the highest and best bid for the Lady May. No other person or entity or group of persons or entities has offered to purchase the Lady May for an amount that would give equal or greater value to the Debtor's estate than the value provided by the Buyer pursuant to the PSA. Prompt approval of the Sale is the only means to maximize the value of the Lady May.

### Good Faith

H.      The PSA and the Sale were negotiated, proposed, and entered into, and are being undertaken by the Trustee and the Buyer in good faith, without collusion, and from arms' length bargaining positions. Likewise, the value that the Debtor's estate will receive on consummation of the Sale is the product of arms' length negotiations between the Trustee, the Buyer, and their respective representatives and advisors.

I.      The Buyer is purchasing the Lady May in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full rights, benefits, privileges, and protections of that provision and any other applicable or similar bankruptcy and non-bankruptcy law.

J.      Neither the Buyer nor the Trustee have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the PSA or to the consummation of the Sale.

K.      The Buyer proceeded in good faith in all respects in connection with the Sale and this proceeding in that, among other things: (a) the Buyer's bid was the result of a competitive bidding process; (b) all payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer in connection with the Sale set forth in the PSA, have

been disclosed; and (c) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction.

L.     The Buyer is not an insider or an affiliate (as that term is defined in sections 101(2) and 101(31) of the Bankruptcy Code) of the Debtor.

**Section 363(f) of the Bankruptcy Code Is Satisfied**

M.     The Trustee is authorized to sell the Lady May free and clear of liens, claims, interests, and encumbrances against the Debtor or his estate, because one of more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.     Those holders of liens, claims, interests, or encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Motion have either consented to or are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  In addition, one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and, therefore, holders of liens, claims, interests, or encumbrances in the Lady May are adequately protected by having their liens, claims, interests, or encumbrances in the Lady May attach solely to the proceeds of the Sale in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale.

O.     The Buyer would not have entered into the Sale and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor's estate and his creditors, (i) if the sale of the Lady May was not free and clear of all liens, claims, interests, and encumbrances or (ii) if the Buyer would, or in the future could, be liable for any such liens, claims, interests, and encumbrances.  The total consideration to be provided under the PSA reflects the Buyer's reliance on this Order to provide it with title to and possession of the Lady

May free and clear of all liens, claims, interests, and encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

## **Validity of Transfer**

P.      The transfer of the Lady May to the Buyer will be a legal, valid, and effective transfer of the Lady May, and will vest the Buyer with any legal, equitable and beneficial right, title, and interest of the Debtor in and to the Lady May, free and clear of all liens, claims, interests, and encumbrances.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  Subsequent to the Closing, the Debtor's estate will be relieved of all liability or other obligation of any kind with respect to claims arising from or related to the Buyer's post-Closing operation and/or ownership of the Lady May.

## **Waiver of Bankruptcy Rules 6004(h)**

Q.      The sale of the Lady May must be approved and consummated promptly.  The Trustee and the Buyer intend to close the Sale on or before June 30, 2023.  The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the PSA.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) with regard to the transactions contemplated by this Order.

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES:**

1.      The Motion is GRANTED and approved in all respects, and any objections thereto that have not been otherwise withdrawn, waived, or settled are overruled.

2.      The PSA is hereby approved as set forth herein.

3.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Sale of the

Lady May to the Buyer pursuant to the PSA free and clear of all liens, claims, encumbrances,

and other interests is approved in all respects.  For the avoidance of doubt, the Lady May shall

include the guest tender stored inside the Lady May, *i.e.*, the 2017 Williams Diesel Jet 625 with

Serial Number WTPD40471718.

4.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the

Trustee is authorized to transfer the Lady May in accordance with the terms of the PSA and this

Order.  The transfer of the Lady May by the Trustee to the Buyer in accordance with the PSA

shall: (a) be valid, legal, binding, and effective; (b) vest the Buyer with all right, title, and interest

of the Trustee in and to the Lady May; and (c) be free and clear of all liens, claims, interests, and

encumbrances against the Lady May, in accordance with section 363(f) of the Bankruptcy Code.

5.      Pursuant to section 363 of the Bankruptcy Code, this Order shall and does, as of

the Closing, divest the Debtor and his estate of all right, title, and interest in and to the Lady

May.

6.      The consideration provided by the Buyer for the Lady May under the PSA is fair

and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value,

fair value, and fair consideration under the Bankruptcy Code and any other applicable law, and

the Sale may not be avoided or rejected, or costs or damages imposed or awarded against the

Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

7.      The Trustee is authorized and directed to take any and all actions necessary or

appropriate to (a) consummate the Sale concerning the transfer of the Lady May to the Buyer at a

closing in accordance with the Motion, the PSA and this Order, (b) perform, consummate,

implement, and close fully the PSA together with all additional instruments and documents that may be reasonably necessary or desirable to implement this Order, and the PSA, and (c) perform the obligations contemplated by this Order, and the PSA, including all actions reasonably requested by the Buyer in regard thereto.

8.     The sale of the Lady May by the Trustee to the Buyer shall constitute a legal, valid and effective transfer of the Lady May, notwithstanding any requirement for approval or consent by any person, and vest the Buyer with all rights, title, and interests in the Lady May, subject to the terms of the PSA.

9.     All liens, claims, interests, and/or encumbrances in, on, or against the Lady May shall automatically attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Lady May, subject to any claims and defenses the Trustee or the Debtor's estate may possess with respect thereto.  This Order shall be effective as a determination that, on and as of the Closing, all liens, claims, interests, and/or encumbrances of any kind or nature whatsoever in, on, or against the Lady May have been unconditionally released, discharged, and terminated.  The provisions of this Order authorizing and approving the transfer of the Lady May free and clear of liens, claims, encumbrances, and other interests shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order and the PSA.

10.    Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Trustee to sell and transfer the Lady May to the Buyer, (b) with the ability of the Buyer to acquire, take possession

of, use and operate the Lady May in accordance with the terms of the PSA and this Order, and (c) with the ability of the Trustee and the Buyer to perform their respective obligations thereunder; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

11.     The Purchaser is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.  The Sale contemplated by the PSA and this Order are undertaken by the Buyer in good faith, as that term is used in section 363(b) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization is duly stayed pending such appeal prior to the Closing.  For the avoidance of doubt, the pendency of an appeal of this Order, absent a stay of this Order pending appeal, shall not constitute a basis not to consummate the Sale.

12.     The failure specifically to include any particular provisions of the PSA in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the PSA and each and every provision, term, and condition thereof (including, for the avoidance of doubt, the addendum thereto) be, and therefore is, authorized and approved in its entirety; provided, however that the PSA may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, without further notice to or order of this Court, provided that any such modification, amendment, or supplementation does not have a material adverse effect on the Debtor's estate, unless approved by order of this Court.

13.     The provisions of this Order, the PSA, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any

chapter 11 plan, or which may be entered converting this chapter 11 case from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing this chapter 11 case, and the terms and provisions of the PSA, as well as the rights and interests granted pursuant to this Order, the PSA, shall continue in this chapter 11 case or any superseding cases and shall be specifically performable and enforceable against and binding upon the Trustee, the Debtor, his estate, all creditors, all holders of claim(s) (whether known or unknown) against the Debtor, all holders of liens, claims, interests, and/or encumbrances (whether known or unknown) against, in, or on all or any portion of the Lady May, the Buyer and its respective successors and permitted assigns, and any other trustee or other fiduciary hereafter appointed or elected as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in this chapter 11 case.

14.     This Order is and shall be binding upon and govern the acts of all persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Lady May.  Each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the liens, claims, interests, and encumbrances against the Lady May or to otherwise consummate the Sale contemplated by this Order, and the PSA.  All liens, claims, interests, and encumbrances of record as of the date of this Order shall be forthwith

deemed removed and stricken as against the Lady May.  All persons and entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, interests, and encumbrances against the Lady May from their records, official and otherwise.

15.     The terms and provisions of the PSA and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Trustee, the Debtor's estate and its creditors, the Buyer and its affiliates, successors, and assigns, and any affected third parties, including all persons asserting liens, claims, interests, or encumbrances in, on, or against the Lady May, notwithstanding any subsequent appointment of any other trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Trustee, the Debtor, his estate, his creditors or any such trustee, examiner, or receiver.

16.     Upon the Closing, the Trustee is authorized to pay the Full Fee (as defined in the Edmiston Retention Order) equal to 5% of the Purchase Price, *i.e.*, $1,157,500.00 to Edmiston. In addition, (a) if the Closing is not consummated due to the Trustee's non-performance, the Trustee shall pay the aforementioned Full Fee to Edmiston and (b) if the Closing is not consummated due to the Buyer's non-performance, the Trustee shall pay to Edmiston an amount equal to $200,000 out of the Deposit, which amount will count against, and reduce, any commission that Edmiston may earn (in accordance with its engagement letter with the Trustee) if a sale of the Lady May is consummated with a different buyer.

17.     For the avoidance of doubt, no estate causes of action are being sold as part of the Sale.

18.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply.  The Trustee and the Buyer intend to close the Sale on or before June 30, 2023.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

19.     Nothing in this Order shall modify or waive any closing conditions or termination rights in the PSA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

20.     As of the Closing, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the Sale, including, without limitation, the transfer of the Lady May to the Buyer and the occurrence of the Closing.

21.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

22.     To the extent necessary, the requirements of Local Rule 6004-2(b) are hereby waived.

23.     To the extent that there is a conflict between the provisions of this Order and the PSA, this Order shall prevail.

24.     This Court shall retain jurisdiction to, among other things, (a) interpret, enforce, and implement the terms and provisions of this Order and the PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in

connection therewith) and (b) adjudicate disputes related to this Order and the PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

**<u>Exhibit B</u>**

**Revised Proposed Order (redline)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

-------------------------------------------------------x
                                                    :
In re:                                              :    Chapter 11
                                                    :
HO WAN KWOK, *et al.*,[1]                           :    Case No. 22-50073 (JAM)
                                                    :
            Debtors.                                :    (Jointly Administered)
                                                    :
-------------------------------------------------------x

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363,**
**BANKRUPTCY RULES 2002 AND 6004(c) AND LOCAL RULES 6004-1 AND**
**6004-2, (I) AUTHORIZING AND APPROVING SALE OF THE LADY MAY FREE**
**AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES,**
**(II) AUTHORIZING AND APPROVING PURCHASE AND SALE**
**AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Luc A. Despins, in his capacity as the chapter 11

trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"),

pursuant to pursuant to sections 105, 363(b), and 363(f) of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 6004(c), and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6004-2 of the Local Rules of

Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut (the

"Local Rules"), seeking entry of an order (i) authorizing and approving the Trustee's sale (the

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] Capitalized terms used but not defined herein shall having the meanings set forth in the Motion or the PSA, as applicable; provided, however, no capitalized terms used herein shall in any way be modified, amended, or supplemented in the PSA after this Order becomes final.

"Sale") of the Lady May[3] to Herb Chambers Yachting, LLC (the "Buyer") free and clear of all

liens, claims, interests and encumbrances pursuant to that certain purchase and sale agreement,

dated May 30, 2023, by and among the Buyer and the Trustee (together with the related

~~addendum~~addenda, dated May 30, 2023 and dated June 19, 2023, the "PSA"), (ii) authorizing

and approving the PSA, and (iii) granting related relief, all as further detailed in the Motion; and

hearing on the Motion having been held (the "Hearing"); and this Court having reviewed and

considered the Motion, the declaration of Dirk Johnson (the "Johnson Declaration") in support of

the requested relief, and all objections thereto, and the arguments made by counsel and evidence

adduced at the Hearing; and it appearing the terms of the PSA are in the best interests of the

Debtor, the estate, creditors and other parties in interest; and after due deliberation thereon, and

good cause appearing therefor,

**THE COURT HEREBY FINDS THAT**:[4]

<u>**Jurisdiction and Final Order**</u>

A.      This Court has jurisdiction to hear and determine the approval of the Sale and the

PSA under 28 U.S.C. §§ 1334 and 157, and the *Standing Order of Reference* from the United

States District Court for the District of Connecticut.  This is a core proceeding under 28 U.S.C. §

157(b).  Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]   For purposes of the sale under the PSA, the term "Lady May" consists all assets to be sold pursuant to the PSA, including all gear, machinery, equipment, furniture, fuel, consumables, all registered or unregistered tenders, toys, articles and appurtenances on board the Lady May and/or included on the Lady May's listing specification as of the date of the PSA (*i.e.*, May 30, 2023).  For the avoidance of doubt, the Lady May II is not included as part of the Sale.

[4]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).
Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary under Bankruptcy Rule
9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy
Rule 7054, this Court expressly finds that there is no just reason to delay the implementation of
this Order, and expressly directs entry of judgment as set forth herein.  The Buyer, being a good
faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated
by the PSA at any time after the entry of this Order and shall not be subject to the stay provided
by Bankruptcy Rules 6004(h).

## Notice of Sale

C.      Actual written notice of the Motion, the Hearing, and a reasonable opportunity to
object or be heard with respect to the Motion and the relief requested therein, has been afforded
to all known interested persons or entities.

D.      As evidenced by the certificates of service previously filed with this Court: (i)
due, proper, timely, adequate and sufficient notice of the Motion, the Hearing, the entry of this
Order, the Sale, and the relevant objection deadlines has been provided to all parties-in-interest;
(ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this
chapter 11 case, provided a fair and reasonable opportunity for parties-in-interest to object, and
to be heard, with respect thereto, and was provided in accordance with the Bankruptcy Code,
Bankruptcy Rules, and the applicable Local Rules; and (iii) no other or further notice of such
matters is necessary or shall be required.

## Business Judgment

E.      The Trustee has demonstrated good, sufficient, and sound business purposes and
justifications for, and compelling circumstances to promptly consummate, the Sale and such

action is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, his estate, and his creditors.  Such business reasons include, but are not limited to, the facts that: (i) the Purchase Price and the other terms set forth in the PSA constitute the highest or otherwise highest and best offer received for the Lady May; (ii) the Sale on the terms set forth in the PSA presents an orderly and expeditious sale of the Lady May and the best opportunity to maximize the value of the Lady May; and (iii) unless the Sale is concluded expeditiously as provided for in this Order and pursuant to the PSA, potential creditor recoveries may be substantially diminished.

### Marketing Process

F.      As demonstrated by the Motion, the Johnson Declaration, the testimony and other evidence proffered or adduced at the Hearing, and the representations of the Trustee and his counsel made on the record at the Hearing: (i) the Trustee and his broker, Edmiston and Company Limited ("Edmiston"), engaged in a robust and extensive marketing and sale process; (ii) the Trustee and his advisors conducted a fair and open sale process; (iii) the sale process was non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Lady May; and (iv) the process conducted by the Trustee obtained the highest and best value for the Lady May for the Trustee and the Debtor's estate.

### Fair Consideration; Highest or Best Value

G.      The consideration to be provided by the Buyer under the PSA is fair and reasonable consideration for the Lady May and constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of

the United States, any state, territory or possession or the District of Columbia.  Such consideration constitutes the highest and best bid for the Lady May.  No other person or entity or group of persons or entities has offered to purchase the Lady May for an amount that would give equal or greater value to the Debtor's estate than the value provided by the Buyer pursuant to the PSA.  Prompt approval of the Sale is the only means to maximize the value of the Lady May.

### <u>Good Faith</u>

H.      The PSA and the Sale were negotiated, proposed, and entered into, and are being undertaken by the Trustee and the Buyer in good faith, without collusion, and from arms' length bargaining positions.  Likewise, the value that the Debtor's estate will receive on consummation of the Sale is the product of arms' length negotiations between the Trustee, the Buyer, and their respective representatives and advisors.

I.       The Buyer is purchasing the Lady May in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full rights, benefits, privileges, and protections of that provision and any other applicable or similar bankruptcy and non-bankruptcy law.

J.      Neither the Buyer nor the Trustee have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the PSA or to the consummation of the Sale.

K.      The Buyer proceeded in good faith in all respects in connection with the Sale and this proceeding in that, among other things: (a) the Buyer's bid was the result of a competitive bidding process; (b) all payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer in connection with the Sale set forth in the PSA, have

been disclosed; and (c) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction.

L.      The Buyer is not an insider or an affiliate (as that term is defined in sections 101(2) and 101(31) of the Bankruptcy Code) of the Debtor.

### Section 363(f) of the Bankruptcy Code Is Satisfied

M.      The Trustee is authorized to sell the Lady May free and clear of liens, claims, interests, and encumbrances against the Debtor or his estate, because one of more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.      Those holders of liens, claims, interests, or encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Motion have either consented to or are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  In addition, one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and, therefore, holders of liens, claims, interests, or encumbrances in the Lady May are adequately protected by having their liens, claims, interests, or encumbrances in the Lady May attach solely to the proceeds of the Sale in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale.

O.      The Buyer would not have entered into the Sale and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor's estate and his creditors, (i) if the sale of the Lady May was not free and clear of all liens, claims, interests, and encumbrances or (ii) if the Buyer would, or in the future could, be liable for any such liens, claims, interests, and encumbrances.  The total consideration to be provided under the PSA reflects the Buyer's reliance on this Order to provide it with title to and possession of the Lady

May free and clear of all liens, claims, interests, and encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

### Validity of Transfer

P.      The transfer of the Lady May to the Buyer will be a legal, valid, and effective transfer of the Lady May, and will vest the Buyer with any legal, equitable and beneficial right, title, and interest of the Debtor in and to the Lady May, free and clear of all liens, claims, interests, and encumbrances.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  Subsequent to the Closing, the Debtor's estate will be relieved of all liability or other obligation of any kind with respect to claims arising from or related to the Buyer's post-Closing operation and/or ownership of the Lady May.

### Waiver of Bankruptcy Rules 6004(h)

Q.      The sale of the Lady May must be approved and consummated promptly.  The Trustee and the Buyer intend to close the Sale on or before June 30, 2023.  The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the PSA.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) with regard to the transactions contemplated by this Order.

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES:**

1.      The Motion is GRANTED and approved in all respects, and any objections thereto that have not been otherwise withdrawn, waived, or settled are overruled.

2.      The PSA is hereby approved as set forth herein.

3.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Sale of the Lady May to the Buyer pursuant to the PSA free and clear of all liens, claims, encumbrances, and other interests is approved in all respects.  For the avoidance of doubt, the Lady May shall include the guest tender stored inside the Lady May, *i.e.*, the 2017 Williams Diesel Jet 625 with Serial Number WTPD40471718.

4.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Lady May in accordance with the terms of the PSA and this Order.  The transfer of the Lady May by the Trustee to the Buyer in accordance with the PSA shall: (a) be valid, legal, binding, and effective; (b) vest the Buyer with all right, title, and interest of the Trustee in and to the Lady May; and (c) be free and clear of all liens, claims, interests, and encumbrances against the Lady May, in accordance with section 363(f) of the Bankruptcy Code.

5.      Pursuant to section 363 of the Bankruptcy Code, this Order shall and does, as of the Closing, divest the Debtor and his estate of all right, title, and interest in and to the Lady May.

6.      The consideration provided by the Buyer for the Lady May under the PSA is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided or rejected, or costs or damages imposed or awarded against the Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

7.      The Trustee is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale concerning the transfer of the Lady May to the Buyer at a closing in accordance with the Motion, the PSA and this Order, (b) perform, consummate,

implement, and close fully the PSA together with all additional instruments and documents that may be reasonably necessary or desirable to implement this Order, and the PSA, and (c) perform the obligations contemplated by this Order, and the PSA, including all actions reasonably requested by the Buyer in regard thereto.

8.      The sale of the Lady May by the Trustee to the Buyer shall constitute a legal, valid and effective transfer of the Lady May, notwithstanding any requirement for approval or consent by any person, and vest the Buyer with all rights, title, and interests in the Lady May, subject to the terms of the PSA.

9.      All liens, claims, interests, and/or encumbrances in, on, or against the Lady May shall automatically attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Lady May, subject to any claims and defenses the Trustee or the Debtor's estate may possess with respect thereto.  This Order shall be effective as a determination that, on and as of the Closing, all liens, claims, interests, and/or encumbrances of any kind or nature whatsoever in, on, or against the Lady May have been unconditionally released, discharged, and terminated.  The provisions of this Order authorizing and approving the transfer of the Lady May free and clear of liens, claims, encumbrances, and other interests shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order and the PSA.

10.     Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Trustee to sell and transfer the Lady May to the Buyer, (b) with the ability of the Buyer to acquire, take possession

of, use and operate the Lady May in accordance with the terms of the PSA and this Order, and (c) with the ability of the Trustee and the Buyer to perform their respective obligations thereunder; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

11.    The Purchaser is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.  The Sale contemplated by the PSA and this Order are undertaken by the Buyer in good faith, as that term is used in section 363(b) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization is duly stayed pending such appeal prior to the Closing.  For the avoidance of doubt, the pendency of an appeal of this Order, absent a stay of this Order pending appeal, shall not constitute a basis not to consummate the Sale.

12.    The failure specifically to include any particular provisions of the PSA in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the PSA and each and every provision, term, and condition thereof (including, for the avoidance of doubt, the addendum thereto) be, and therefore is, authorized and approved in its entirety; provided, however that the PSA may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, without further notice to or order of this Court, provided that any such modification, amendment, or supplementation does not have a material adverse effect on the Debtor's estate, unless approved by order of this Court.

13.    The provisions of this Order, the PSA, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any

chapter 11 plan, or which may be entered converting this chapter 11 case from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing this chapter 11 case, and the terms and provisions of the PSA, as well as the rights and interests granted pursuant to this Order, the PSA, shall continue in this chapter 11 case or any superseding cases and shall be specifically performable and enforceable against and binding upon the Trustee, the Debtor, his estate, all creditors, all holders of claim(s) (whether known or unknown) against the Debtor, all holders of liens, claims, interests, and/or encumbrances (whether known or unknown) against, in, or on all or any portion of the Lady May, the Buyer and its respective successors and permitted assigns, and any other trustee or other fiduciary hereafter appointed or elected as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in this chapter 11 case.

14.    This Order is and shall be binding upon and govern the acts of all persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Lady May.  Each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the liens, claims, interests, and encumbrances against the Lady May or to otherwise consummate the Sale contemplated by this Order, and the PSA.  All

liens, claims, interests, and encumbrances of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Lady May. All persons and entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, interests, and encumbrances against the Lady May from their records, official and otherwise.

15.     The terms and provisions of the PSA and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Trustee, the Debtor's estate and its creditors, the Buyer and its affiliates, successors, and assigns, and any affected third parties, including all persons asserting liens, claims, interests, or encumbrances in, on, or against the Lady May, notwithstanding any subsequent appointment of any other trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Trustee, the Debtor, his estate, his creditors or any such trustee, examiner, or receiver.

16.     Upon the Closing, the Trustee is authorized to pay the Full Fee (as defined in the Edmiston Retention Order) equal to 5% of the Purchase Price, *i.e.*, $~~1,200,000~~1,157,500.00 to Edmiston. In addition, (a) if the Closing is not consummated due to the Trustee's non-performance, the Trustee shall pay the aforementioned Full Fee to Edmiston and (b) if the Closing is not consummated due to the Buyer's non-performance, the Trustee shall pay to Edmiston an amount equal to $200,000 out of the Deposit, which amount will count against, and reduce, any commission that Edmiston may earn (in accordance with its engagement letter with the Trustee) if a sale of the Lady May is consummated with a different buyer.

17.     For the avoidance of doubt, no estate causes of action are being sold as part of the Sale.

18.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply.  The Trustee and the Buyer intend to close the Sale on or before June 30, 2023.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

19.     Nothing in this Order shall modify or waive any closing conditions or termination rights in the PSA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

20.     As of the Closing, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the Sale, including, without limitation, the transfer of the Lady May to the Buyer and the occurrence of the Closing.

21.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

22.     To the extent necessary, the requirements of Local Rule 6004-2(b) are hereby waived.

23.     To the extent that there is a conflict between the provisions of this Order and the PSA, this Order shall prevail.

24.     This Court shall retain jurisdiction to, among other things, (a) interpret, enforce, and implement the terms and provisions of this Order and the PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in

connection therewith) and (b) adjudicate disputes related to this Order and the PSA (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).